Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Attorneys for Debtors

**E-FILED ON APRIL 14, 2006**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06- |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | **DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF DEBTORS' MOTION FOR ORDER AUTHORIZING (I) THE EMPLOYMENT AND RETENTION** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC AS CRISIS MANAGERS FOR THE** |
| Affects:<br>☒  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | **DEBTORS, AND (II) THE DESIGNATION OF THOMAS J. ALLISON OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC AS CHIEF RESTRUCTURING OFFICER FOR** |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

**THE DEBTORS AND THE EMPLOYMENT OF CERTAIN TEMPORARY EMPLOYEES**

Date:
Time:

I, Thomas J Allison, hereby state and declare:

1.     I am a Senior Managing Director of Mesirow Financial Interim Management, LLC ("MFIM"), a professional services firm engaged in the business of providing interim management services. MFIM is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc., a diversified financial services firm which also offers financial consulting, investment management, insurance services, investment services, investment banking and real estate services (collectively "Mesirow Financial"). I submit this Declaration on behalf of MFIM in support of the motion (the "Motion")[1] of the above captioned debtors and debtors-in-possession herein (the "Debtors") for entry of an Order, pursuant to sections 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), authorizing (i) the employment and retention of MFIM as crisis managers for the Debtors, and (ii) the designation of Thomas J. Allison of MFIM as Chief Restructuring Officer of the Debtors, and the employment of the Temporary Employees, as of the Petition Date. Although MFIM is not being retained as a professional in this case, it is nonetheless filing this Declaration to disclose any connections with the Debtors, creditors and other parties in interest as required by section 327(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1(d) of the Local Bankruptcy Rules for the District of Nevada (the "Local Bankruptcy Rules"). I have personal knowledge of the matters set forth herein, and if called as a witness, would testify competently thereto.[2]

---

1     Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Motion.

2     Certain of the disclosures herein relate to matters within the knowledge of other professionals at MFIM.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**QUALIFICATIONS OF PROFESSIONALS**

2.     MFIM is a firm offering interim management services to financially distressed and troubled companies.

3.     The Debtors have selected MFIM because of the firm's diverse experience and extensive knowledge in the field of insolvency and reorganization cases.

4.     The Debtors require assistance in (a) developing and implementing case management strategies, tactics and later developing a plan of reorganization, (b) managing their professionals in the reorganization process, (c) managing and developing business plan, (d) communicating with creditors and other parties-in-interest to the case, (e) representing the Debtors during communications with the Securities and Exchange Commission and the Nevada Mortgage Lending Division, (f) providing the Debtors with any Investigative Services, Accounting Analyses, and Transaction Tracing, (g) supervising the preparation of periodic reporting required by the Bankruptcy Court, and (h) providing other necessary or appropriate services as agreed by the Debtors and MFIM.   Both myself and the professionals of MFIM have considerable experience with rendering such services to debtors and other parties in numerous Chapter 11 cases.  As such, both MFIM and I are qualified to perform the services contemplated herein.

5.     The engagement letter between the Debtors and MFIM is attached as <u>Exhibit A</u> hereto.  My resume is attached as <u>Exhibit B.</u>

**<u>DISINTERESTEDNESS OF PROFESSIONALS</u>**

6.     Based upon information supplied by the Debtors, MFIM searched its records and certain records of Mesirow Financial[3] to identify any connection or relationship with the following entities:

a.     The Debtors and its affiliates;

b.     The Debtors' officers and directors;

---

3     MFIM does not intend to suggest that Bankruptcy Rule 2014 requires that a professional seeking retention under the Bankruptcy Code must disclose any connections that an ***affiliate*** of the professional may have to the creditors or other parties-in-interest in the bankruptcy case.  Rather, out of an abundance of caution, MFIM has

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

c.    The equity shareholders known to own more than twenty percent (20%) of outstanding stock of the Debtors;

d.    The Debtors' major secured creditors;

e.    The Debtors' twenty (20) largest unsecured creditors;

f.    Counsel to the Debtors and certain other parties-in-interest.

7.    The names provided to MFIM by the Debtors are set forth in Exhibit C attached hereto.  Based upon the database search described above, MFIM does not represent any other entity having an adverse interest in connection with this case, and does not represent or hold an interest adverse to the interests of the estate with respect to the matter on which MFIM will be employed, in accordance with section 363 of the Bankruptcy Code.

8.    Other than my proposed role as the Chief Restructuring Officer (including my appointment as the Chief Restructuring Officer and the other Temporary Employees to be provided to the Debtors post petition date), MFIM is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b), of the Bankruptcy Code, given that, to the best of my information and belief, MFIM:

a.    is not a creditor, an equity security holder, or an insider of the Debtors;

b.    is not and was not, within two (2) years before the commencement of this Chapter 11 case, a director, officer or employee of the Debtors; and

c.    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

9.    To the best of my knowledge, except as set forth herein and in Exhibit D attached hereto and subject to the limitations discussed herein, (a) MFIM has no connections with the Debtors, creditors, and any other party-in-interest, or their respective attorneys and accountants; and (b) the MFIM professionals working on this matter are not relatives of the United States

---

searched Mesirow Financial's database and made appropriate disclosures of relationships, with the exception of those relationships described below.

C:\Sms Documents\Project Park\Administrative\Employment Application Declaration of TJA of Mesirow Financial Final.doc

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Trustee of the District of Nevada or of any known employee in the office thereof, or any United

2  States Bankruptcy Judge of the District of Nevada.

3       10.    MFIM, and in some cases Mesirow Financial, may have in the past been retained

4  by, and presently and likely in the future may provide services for, certain creditors of the Debtors,

5  other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such

6  parties' claims against the Debtors or interests in these Chapter 11 cases.

7       11.    As part of its practice, MFIM appears in many cases, proceedings, and transactions

8  involving many different law firms, financial consultants, and investment bankers in matters

9  unrelated to this bankruptcy.  MFIM has not identified any material relationships or connections

10  with any law firm, financial consultant or investment banker involved in these Chapter 11 cases

11  that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other

12  party-in-interest, or that would otherwise affect MFIM's judgment or ability to perform services

13  for the Debtors.

14       12.    MFIM has not provided, and will not provide, any professional services to any of

15  the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to

16  any matter related to these Chapter 11 cases.

17         **ETHICAL WALL AND TRADING WALL PROCEDURES**

18       13.    Mesirow Financial has established an "Ethical Wall" between MFIM and the other

19  subsidiaries, divisions and units of Mesirow Financial.  The Ethical Wall prohibits MFIM from

20  sharing confidential or non-public information concerning the Debtors and this case with any other

21  employees of Mesirow Financial (other than employees of Mesirow Financial Consulting, LLC).

22  Likewise, the Ethical Wall prohibits any employees of Mesirow Financial from sharing

23  confidential or non-public information concerning the Debtors and this case with any employee of

24  MFIM.  Mesirow Financial and MFIM have informed all employees of the Ethical Wall

25  procedures.

26       14.    In addition to the Ethical Wall, Mesirow Financial has also established a "Trading

27  Wall."  In the ordinary course of business, Mesirow Financial, Inc. ("MFI"), Mesirow Financial's

28  affiliated broker-dealer, may purchase or sell securities on a principal or agency basis.  MFI also

executes securities transactions on behalf of clients of introducing broker-dealers or unaffiliated investment advisors.[4]    In the ordinary course of business, Mesirow Financial's affiliated investment advisor subsidiaries, together with MFI (collectively, the "Mesirow BD/IA Subsidiaries"), may purchase securities, sell securities and/or provide investment advice to retail or institutional clients on a non-discretionary or discretionary basis.  The securities transacted by the Mesirow BD/IA Subsidiaries may include securities issued by creditors, stakeholders or other parties-in-interest in this case ("Related Securities").

15.    Mesirow Financial has implemented certain "Trading Wall" procedures to ensure that information concerning transactions by the Mesirow BD/IA Subsidiaries in Related Securities, as well as other securities transactions by the Mesirow BD/IA Subsidiaries, will not be available to the employees of MFIM.  These Trading Wall procedures also permit the Mesirow BD/IA Subsidiaries to act in the best interest of their clients and in accordance with securities laws.  The Mesirow BD/IA Subsidiaries are operated as separate and distinct subsidiaries from MFIM.  Mesirow Financial has informed the employees of the Mesirow BD/IA Subsidiaries and MFIM of the Trading Wall procedures.

### COMPENSATION

16.    MFIM's requested compensation for services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  The Debtors have agreed to compensate MFIM for services rendered at its normal and customary hourly rates as follows.

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

4    MFI provides clearing services for introducing broker-dealers as well as custodial and execution services for unaffiliated investment advisors.  In connection with these services, all investment decisions occur between the introducing broker-dealer and unaffiliated investment advisor and their respective clients.

| | |
|---|---|
| Senior Managing Directors/Managing Directors | $620 - $690 |
| Senior Vice Presidents | $530 - $590 |
| Vice Presidents | $430 - $490 |
| Senior Associates | $330 - $390 |
| Associates | $190 - $290 |
| Paraprofessionals | $150 |

17.    MFIM will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing services.

18.    MFIM will apply to the Court for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  MFIM has agreed to accept as compensation such sums as may be allowed by the Court.  MFIM understands that interim and final fee awards are subject to approval by this Court.

19.    Prior to the commencement of this case MFIM, was employed as financial advisor to the Debtors.  MFIM was paid a retainer in the sum of $150,000, which remained unapplied as of the Petition Date. MFIM will hold the unapplied retainer and only apply such retainer to its final compensation and expense reimbursement allowed by this Court.  MFIM will return any unused balance to the Debtors.

20.    In addition to the foregoing unapplied retainer, prior to the Petition Date, MFIM was paid $250,000 on account of services rendered by MFIM leading up to the Chapter 11 filing. MFIM will account for its services pre-petition and apply any remaining balance as an additional retainer for post-petition services.

21.    All fees paid to MFIM were paid by the USA Commercial Mortgage Company.

22.    In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between MFIM and any other entity for the sharing of compensation received or to be received for services rendered in connection with this case.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief.

Dated:  April 13, 2006.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

2

3

Thomas J. Allison
4
Senior Managing Director
Mesirow Financial Interim Management, LLC
5
Chicago, IL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

# EXHIBIT "A"



April 13, 2006

Mr. Joseph D. Milanowski - President
USA Commercial Mortgage Company
USA Capital Realty Advisors, LLC
USA Securities, LLC
4484 South Pecos Road
Las Vegas, NV 89121

Dear Mr. Milanowski:

This letter agreement (the "Agreement") confirms and sets forth the terms and conditions of the engagement between Mesirow Financial Interim Management, LLC ("MFIM") and USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC and USA Securities LLC (individually, a "Company", collectively the "Companies" or "Clients" or "Debtors") wherein MFIM will be retained as Crisis Managers for the Companies. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Companies and MFIM.

    1.   <u>Scope of Services</u>

        a.   <u>Personnel</u>. As requested by the Boards of Directors of the Companies (the "Board"), MFIM shall make available to the Companies the following individuals:

            (i)   Thomas J. Allison to serve as Chief Restructuring Officer of the Companies (the "CRO"). He will be solely responsible for his duties relating to the Companies and shall have the right to attend any meetings of the Board as an observer only. The duties of the CRO shall include the following:

                A.   Develop and implement case management strategies and tactics, and later develop a plan of reorganization;

                B.   Manage the professionals who are advising and assisting the Debtors' in their reorganization process to ensure the individual work product is consistent with the Debtors' overall restructuring goals;

                C.   Lead management with the development of a business plan, and such other related forecasts as may be required by the Debtors to support the reorganization and related negotiations with stakeholders;

D. Communicate and/or negotiate with creditors, their advisors, and other outside stakeholders;

E. Serve as the representative for the Debtors during communications with the Securities and Exchange Commission and the Nevada Mortgage Lending Division;

F. Provide the Debtors with any investigative services, accounting analyses, and transaction tracing, as may be deemed necessary or appropriate;

G. Supervise the preparation of periodic reporting required by the Bankruptcy Court and/or the US Trustee, manage the claim reconciliation process, and provide testimony before the Bankruptcy Court on matters that are within MFIM's area of expertise; and render such other service as may be deemed necessary as part of the reorganization process; and

H. Perform such other necessary or appropriate services as may be agreed to by MFIM and the Companies

The CRO may be supported by other employees of MFIM (collectively, the "Temporary Employees"). We will keep the Board informed as to the Temporary Employees assisting the CRO and the areas of responsibility being filled by such Temporary Employees.

2. No Assurance on Financial Data; Reliance; Limitation of Duties.

Because of the time and scope implicit in this Agreement, the depth of our analyses and verification of the data is significantly limited. It is understood that neither the CRO, the Temporary Employees nor MFIM are being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. The CRO will, however, sign SEC filings on behalf of the Companies, as appropriate. The services to be rendered by the CRO and the Temporary Employees may, however, include the preparation of analyses, projections, other forward-looking statements and settlement proposals, and the Companies understand that numerous factors can affect the actual results achieved, which may materially and adversely differ from any such analyses, projections, other forward-looking statements and settlement proposals. In addition, the CRO and the Temporary Employees will be relying on information provided by the Companies, including the Companies' other officers, directors, former employees, advisors, counsel,

professionals, representatives and agents, in the preparation of those analyses, projections, other forward-looking statements and settlement proposals. The CRO and the Temporary Employees are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by the Companies' other officers, directors, former employees, advisors, counsel, professionals, representatives and agents. Neither the CRO nor the Temporary Employees will be under any obligation to update any data submitted to them or extend their activities beyond the scope set forth herein, unless they agree to do so upon your specific request. Further, due to the factors referenced in this paragraph, any periodic oral and/or written reports provided by the CRO or the Temporary Employees will not provide assurances concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based.

3.  Compensation

    a.  MFIM shall be compensated by the Companies for those services rendered by the CRO at a rate of $650 per hour or such other rate for the CRO as adjusted by MFIM in the ordinary course of its business (with at least 30 days notice to the Companies).

    b.  The Companies shall compensate MFIM for services rendered by other Temporary Employees at those hourly rates currently in effect for such Temporary Employees. Hourly billing rates for Temporary Employees by staff classification for this engagement are as follows:

| | |
|---|---|
| Senior Managing Directors and Managing Directors | $620 - $690 |
| Senior Vice-Presidents | $530 - $590 |
| Vice-Presidents | $430 - $490 |
| Senior Associates | $330 - $390 |
| Associates | $190 - $290 |
| Paraprofessionals | $150 |

These hourly rates are adjusted annually on April 1 of each year in the ordinary course of MFIM's business and MFIM will bill at the rates in effect at the time the services are rendered.

    c.  In addition, MFIM will be reimbursed by the Companies for the reasonable out-of-pocket expenses of the CRO and the Temporary Employees incurred in connection with this assignment, such as travel, lodging, photocopying, computer research, messenger and

telephone charges as well as for the reasonable fees and expenses of its counsel incurred in connection with the preparation, negotiation and enforcement of this Agreement.  All fees and expenses due to MFIM will be billed on a bi-weekly basis or, at MFIM's reasonable discretion, more frequently and such invoices shall be due upon receipt.

d.  In accordance with our customary practice, we require payment of an advance payment retainer of $150,000.  We will hold this retainer and apply it to the final bill for this engagement.  This retainer is not intended to be an estimate for the total cost of work to be performed.  An invoice for the retainer is enclosed.

4.  Term

The Agreement will commence as of the date hereof and shall continue until termination by either party.  This Agreement may be terminated by either party without cause by giving thirty (30) days' written notice to the other party, and the termination will be effective on the 30th day after the date of the written notice (the "Termination Date").  In the event of such termination, any fees and expenses due to MFIM through and including the Termination Date shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

5.  No Third Party Beneficiary.

The Companies acknowledge that all advice (written or oral) given by the CRO, the Temporary Employees or MFIM to the Companies in connection with this engagement is intended solely for the benefit and use of the Companies (limited to its Board and management) in considering the matters to which this engagement relates.  The Companies agree that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without MFIM's prior approval (which shall not be unreasonably withheld), except as required by law.

6.  Conflicts.

MFIM performed an internal search for any potential conflicts of interest based upon the names of the parties the Companies provided.  MFIM has not found any conflict of interest with respect to any of these parties.  MFIM cannot assure that, following our employment by you, an

engagement will not be accepted by us for another party that may bear on this engagement. Should a potential conflict of interest come to our attention, the engagement team will advise you within a reasonable time.

7. Confidentiality.

MFIM shall keep as confidential all non-public information ("Information") received from the Companies or its outside counsel or other advisors in conjunction with this engagement, except (i) as requested by the Companies or their legal counsel; (ii) if required by court order, subpoena or otherwise by law; provided, however, that in such case MFIM shall give the Companies ten (10) days notice prior to any such disclosure to allow the Companies the opportunity to intervene and protect its interests in the Information, or (iii) as reasonably required in the performance of this engagement and in furtherance of Companies' interests. However, the CRO and Temporary Employees may make reasonable disclosures of Information to third parties in connection with the obligations and assignments hereunder. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8. Indemnification.

The Companies shall indemnify and hold harmless the CRO, the Temporary Employees and MFIM as set forth in Exhibit A hereto, which is incorporated herein by reference as if fully restated herein.

The Companies have acquired a director and officer liability insurance policy in the amount of $5,000,000 and the Companies have caused the CRO to be covered by that insurance policy. In the event that other Temporary Employees become officers of the Companies, such individuals will be entitled to the same insurance benefits as the CRO hereunder. MFIM requires that this director and officer liability policy remain in effect at all times during the term of this Agreement.

The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Companies' charters, bylaws, operating agreements or other organizational documents or policies shall affect the CRO's, Temporary Employees' or MFIM's rights hereunder and the provisions of this section 8 shall survive termination of this Agreement.

9.  Limitation of Liability

Subject to the indemnification provisions set forth in Exhibit A, MFIM shall not be liable to the Companies for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Agreement for an aggregate amount in excess of the fees paid to MFIM for services rendered by MFIM under the Agreement. In no event shall MFIM be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Section 9 shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort or otherwise.

10.  Miscellaneous

(a) This Agreement shall (together with the attached indemnity provisions) be governed and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof.

(b) This Agreement incorporates the entire understanding of the parties with respect to the subject matter thereof.

(c) This Agreement may not be amended or modified except in writing executed by each of the parties hereto.

(d) If any provision of this Agreement shall be deemed invalid or unenforceable, in whole or in part, then such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excluded from this Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law as if such provision had been originally incorporated herein as so modified or as if such provision had not been originally incorporated herein, as applicable.

(e) All notices required or permitted to be delivered under this Agreement shall be sent, if to MFIM, to the address set forth above to the attention of Thomas Allison, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given upon actual receipt.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Mesirow Financial Interim Management, LLC

By: _____

Thomas J. Allison
Senior Managing Director

Agreed to and Accepted:
USA Commercial Mortgage Company USA Capital Realty Advisors, LLC and USA Securities, LLC

By: _____
Date: _____ 4/13/06 _____

Agreed to and Accepted:
USA Commercial Mortgage Company

By: _____
Date: _____ 4/13/06 _____

Agreed to and Accepted:
USA Capital Realty Advisors, LLC

By: _____
Date: _____ 4/13/06 _____

Agreed to and Accepted:
USA Securities, LLC

By: _____

Date: _____

## INDEMNIFICATION AGREEMENT

This indemnity agreement (the "Indemnity Agreement"), is entered into Mesirow Financial Interim Management, LLC ("MFIM"), Thomas J. Allison, in his capacity as Chief Restructuring Officer of the Companies (the "CRO") and USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC and USA Securities LLC (individually, a "Company", collectively the "Companies" or "Clients") in connection with that certain letter agreement (the "Engagement Letter") dated as of April 13, 2006 for services to be rendered to the Companies by MFIM. The Engagement Letter and the Indemnification Agreement shall be collectively referred to as the "Agreement".

A.      The Companies agree to indemnify and hold harmless MFIM, the CRO, the Temporary Employees (as such term is defined in the Engagement Letter) and MFIM's shareholders, affiliates, principals, members, managers, officers, directors, employees, subcontractors, attorneys, professionals, representatives and agents (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including, without limitation, the costs, fees and expenses for counsel or others (including employees of MFIM, based on their then current hourly billing rates) in investigating, preparing or defending any loss, damage, liability, expense, action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability, action or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Companies also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Companies for or in connection with the engagement of the CRO, the Temporary Employees or MFIM, except to extent of any final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Companies further agree that they will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding, unless otherwise agreed to by the Indemnified Parties.

B.     These indemnification provisions shall be in addition to any liability which the Companies may otherwise have to the Indemnified Parties.

C.     If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Companies with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Companies will not relieve the Companies from their obligations hereunder.   The Companies shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Companies hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Companies, the Companies may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Companies, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party, on one hand, and the Companies, on the other hand, such counsel is unable to represent both the Indemnified Party and the Companies, the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Companies shall promptly pay the reasonable fees and expenses of such separate counsel upon submission of invoices therefor.   Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Companies will be liable for any settlement of any claim against an Indemnified Party made with the Companies' written consent, which consent shall not be unreasonably withheld.

D.     In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Companies, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually

received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      If multiple claims are brought against any Indemnified Party or Indemnified Parties in any proceeding related to, arising out of or in connection with the Agreement, with respect to at least one of which such claims indemnification is permitted and provided for under the Agreement, the Companies agree that any judgment, arbitration award or other ruling shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for under the Agreement, except to the extent such judgment, arbitration award or ruling expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is unavailable.

F.      In the event the Companies, on the one hand, and MFIM, on the other hand, seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which the CRO or MFIM would continue to be engaged by the Companies as part of a bankruptcy filing, the Companies shall promptly pay the fees and expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any such motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Companies will also promptly pay the Indemnified Parties for any fees and expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

G.      Neither termination of the Agreement nor termination of MFIM's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

H.      In addition to the indemnification rights herein, MFIM, the CRO and any Temporary Employees serving as officers of the Companies shall be entitled to the benefit of the most favorable indemnification provided by the Companies to its officers and directors, whether under the certificate of incorporation or bylaws of the Companies, any other agreements, any vote of stockholders, members or disinterested directors of the Companies, any insurance policy, any applicable law or otherwise.

Agreed to and Accepted:

Mesirow Financial Interim Management, LLC

By: _____

Thomas J. Allison
Senior Managing Director


Thomas J. Allison, in his capacity Chief Restructuring Officer of the Companies

By: _____

Thomas J. Allison


USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC and USA Securities, LLC

By: _____

Date: __4 / 4 / 06_____


Agreed to and Accepted:
USA Commercial Mortgage Company

By: _____

Date: __4 / 4 / 06_____


Agreed to and Accepted:
USA Capital Realty Advisors, LLC

By: _____

Date: __4 / 4 / 06_____

Agreed to and Accepted:
USA Securities, LLC

By: _____

Date: _____

# EXHIBIT "B"



## Thomas J. Allison
### Executive Vice President & Senior Managing Director
### Mesirow Financial Consulting

321 N. Clark Street
Chicago, IL  60610

Telephone:  312-595-8550
Fax:  312-644-8927
tallison@mesirowfinancial.com

Tom Allison joined Mesirow Financial Consulting in March 2006 as one of the members of the senior leadership team.  He has primary responsibility for Mesirow Financial Consulting's interim management, debtor, and restructuring capabilities on a national basis.

One of the foremost professionals in the restructuring and turnaround field, Tom has been managing complex turnaround situations since 1979 and has been an advisor on major reorganizations and insolvencies.  Tom's industry expertise includes airlines, transportation, retail, consumer products, general manufacturing, importing, distribution, high technology, healthcare, food and paper and packaging.

Most recently, Tom was the national restructuring practice leader at Huron Consulting.  Previously he served as the partner in charge of Arthur Andersen LLP's Chicago-based central region restructuring practice.  He has represented a significant number of debtors. He has extensive experience in negotiating loan agreements and placing loans to companies in financial distress.  Tom has also worked with major financial institutions throughout his career, including Bank of America, Deutsche Bank, JP Morgan Chase & Co., Citigroup, Van Kampen Funds Inc., ABN AMRO, and La Salle Bank.

Tom has served in interim management and chief restructuring officer roles for several companies.  He has been the chief financial officer of two NYSE healthcare companies, FPA Medical Management, Inc., a national PPM that contracts with HMO's to provide healthcare services to its members, and United American Healthcare, a provider of comprehensive management and consulting services to managed care organizations.

A founder and former chairman of the Association for Certified Turnaround Professionals (ACTP), Tom is a director and past chairman of the Turnaround Management Association (TMA). He is a frequent lecturer on turnaround management across the country and has written several articles on quality standards for the industry. He has testified on modifications to bankruptcy law and served as an advisor to President Clinton's Economic Council (Bankruptcy Working Group). He is also currently the Trustee in the bankruptcy of an asbestos product manufacturer.

**EDUCATION**
M.B.A., Finance & Accounting, DePaul University

B.S., Management, DePaul University

**PROFESSIONAL CERTIFICATION**
Certified Turnaround Professional

**PROFESSIONAL ASSOCIATIONS**
Member, Turnaround Management Association

Member, Commercial Finance Association

Member, American Bankruptcy Institute

Member, Robert Morris Associates



© 2006 Mesirow Financial Holdings, Inc.  All rights reserved.

# EXHIBIT "C"

**EXHIBIT C**

This information is being provided in connection with the Affidavit of Thomas J. Allison in support the Application for Order Authorizing the Retention and Employment of Thomas J. Allison of Mesirow Financial Interim Management LLC. The following names were compared to MFIM's and Mesirow Financial 's client database to identify any connection or relationship:

| | |
|---|---|
| USA Commercial Mortgage Company | Debtor |
| USA Securities, LLC | Debtor |
| USA Capital Realty Advisors, LLC | Debtor |
| USA Capital Diversified Trust Deed Fund, LLC | Debtor |
| USA Capital First Trust Deed Fund, LLC | Debtor |
| USA Investment Partners, LLC | Affiliated Entities |
| USA Commercial Real Estate Group | Affiliated Entities |
| Joseph D. Milanowski | Owners/Directors |
| Thomas A. Hantges | Owners/Directors |
| Paul S. Hamilton | Owners/Directors |
| Ray Quinney & Nebeker | Outside Counsel |
| Schwartzer & McPherson Law Firm | Outside Counsel |
| Nevada State Bank | Unsecured Creditors |
| Pecos Professional Park | Unsecured Creditors |
| Wells Fargo Bank | Unsecured Creditors |
| Bank of America | Unsecured Creditors |
| Haspinov, LLC. | Unsecured Creditors |
| USA Capital RE Group | Unsecured Creditors |
| Citibank | Unsecured Creditors |
| US Bank | Unsecured Creditors |
| Advanced Information Systems | Unsecured Creditors |
| Goold Patterson Ales & Day | Unsecured Creditors |
| West Coast Life Insurance Company | Unsecured Creditors |
| RD Advertising | Unsecured Creditors |
| Redwood Prop | Unsecured Creditors |
| Special Order Systems | Unsecured Creditors |
| Scotsman Publishing, Inc. | Unsecured Creditors |

# EXHIBIT "D"

**EXHIBIT D**

This information is being provided in connection with the Affidavit of Thomas J. Allison in support the Application for Order Authorizing the Retention and Employment of Thomas J. Allison of Mesirow Financial Interim Management LLC. MFIM, MFC or Mesirow Financial currently renders or has previously rendered services in matters unrelated to these Chapter 11 cases for the following entities:

| | |
|---|---|
| Wells Fargo Bank | Unsecured Creditors |
| Bank of America | Unsecured Creditors |
| Citibank | Unsecured Creditors |