Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

E-FILED ON APRIL 14, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                         Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>**MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363 APPROVING DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET**<br><br>Date:<br>Time: |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                         Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                         Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                         Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                         Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

1

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated debtors, which are USA Securities, LLC ("USAS"), USA Capital Realty Advisors, LLC ("USARA"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), and USA Capital First Trust Deed Fund, LLC ("First Deed Fund") (collectively, the "Debtors"), hereby moves the Court for an order under 11 U.S.C. §§ 105(a), 345, and 363 approving the Debtors' proposed cash management procedures and interim use of cash in accordance with the proposed cash budget for the first 90 days of this case, which budget is attached hereto as **Exhibit A**. This Motion seeks immediate entry of an order approving cash management procedures and the use of cash for the later of the first 7 days of the case or until a hearing on interim use of cash is held and, after notice and a hearing, a further order approving the cash management procedures and the use of cash for the first 90 days of the case. In support of this Motion, USACM represents as follows:

## FACTUAL BACKGROUND

1. The Declaration of Thomas J. Allison ("Allison") provides background information concerning the Debtors, their current status and problems (including substantial commingling of funds, which is also discussed below), and the pressing need for the limited use of cash to preserve the value of the loan portfolio serviced by USACM for the benefit of all creditors of and investors in the Debtors as a unified enterprise.

2. Allison, who upon the filing of the bankruptcy petitions was installed as the new, independent management for each of the Debtors, now serves as the sole Manager of the four Debtors who are limited liability companies (USAS, USARA, Diversified Fund, and First Deed Fund), and as the president of the corporate debtor USACM, with full authority to oversee the restructuring and reorganization of the Debtors' unified business enterprise. Prior to the petition date, Allison and other restructuring professionals from Mesirow Financial had an opportunity, although limited, to investigate the facts and circumstances surrounding the Debtors, their joint business enterprise, and their books and records. Therefore, although the representations and conclusions stated in this Motion and in the related papers filed herewith are of necessity preliminary in nature, the Debtors, acting through Allison as their new chief restructuring officer, strongly believe that the relief requested in this Motion is warranted and is in the best interest of

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

all parties in interest.

3. As of the bankruptcy petition date, USACM was the servicer for a loan portfolio of approximately 100 open commercial mortgage loans (the "Loan Portfolio"). A substantial portion of the loans in the Loan Portfolio have been divided into fractionalized shares that are held by many different noteholders. The noteholders of the loans in the Loan Portfolio fall into three main categories: (1) Diversified Fund holds a 100% interest in some of the loans, and only fractionalized shares in some others; (2) First Deed Fund holds a 100% interest in some of the loans, and only fractionalized shares in some others; and (3) various groups of individual investors hold 100% interests in some of the loans, and only fractionalized shares in many others. Of the approximately 100 loans in the Loan Portfolio, approximately 20 are owned 100% by Diversified Fund and/or First Deed Fund (collectively, the "Funds"), approximately 30 others are owned 100% by various groups of investors not including the Funds, and the remaining approximately 50 loans are held in fractional shares by one or both of the Funds along with various groups of individual investors.

4. There are approximately 1,900 members owning the membership interests in the Diversified Fund, approximately 1,300 members owning the membership interests in the First Deed Fund, and approximately 3,600 direct investors (other than the Funds) who own fractional shares of various loans in the Loan Portfolio, with substantial overlap among the members of the Funds and the individual investors holding direct investments in loans within the Loan Portfolio. In other words, a substantial number of the 3,600 individual investors who directly hold the portions of the Loan Portfolio that are not owned by either of the Funds are the same individuals who also invested indirectly in the Loan Portfolio by purchasing membership interests in one or both of the Funds.

5. Prior to April 2006, the individual holders of the direct interests in the notes in the Loan Portfolio and the individual owners of the membership interests in the Funds (collectively, the "Investors"), received interest payments from the Debtors each month—whether or not the interest payments had been collected from the borrowers on the loans in the Loan Portfolio. Furthermore, it appears that when borrowers paid down principal or paid off loans within the Loan

3

Portfolio, the principal payments received by USACM as loan servicer were not returned to the borrowers but were held and used in some cases to fund interest payments to Investors holding interests in non-performing loans.

6. Based on payments made to Investors whether or not they were entitled to receive payments, and based on loans being paid off and collateral being released without the loan-payoff amounts being remitted to Investors, many or most of the Investors probably owe money to or are owed money by the Debtors, or both. However, because the Debtors' financial records did not accurately match the receipts of loan payments and disbursements of funds to Investors, and because funds were commingled in various accounts, it is difficult to determine the actual amounts owed to and/or owed by each Investor. Under new management, the Debtors believe that the cash management procedures proposed in this Motion affords the Debtors the best chance of sorting out these issues as quickly as possible under the circumstances, and of preserving the value of the Loan Portfolio for the benefit of all Investors.

7. Some of the loans in the Loan Portfolio are construction and/or development loans in which there are ongoing funding commitments. If remaining committed amounts are not funded for these loans, collecting the outstanding loan balance on these loans for the benefit of Investors may become much more difficult. It appears that such loans are held in the portion of the Loan Portfolio held by the Funds as well as in the portion held only by the direct Investors.

8. It appears that non-performing loans exist in the portion of the Loan Portfolio held by the Funds as well as in the portion held only by the direct Investors. Limited collection activity appears to have taken place on these non-performing loans. Collecting the outstanding interest and matured principal is a top priority in preserving value for all Investors.

9. It appears that prior to April 2006, USACM as servicer for the entire Loan Portfolio did not carefully distinguish between the loans that were held directly by the Funds and the loans in which the Funds had no interest. USACM and the other Debtors apparently treated all Investors and the entire Loan Portfolio as if they were part of a single business enterprise.

10. As servicer for the entire Loan Portfolio, USACM was contractually entitled to collect a serving fee from the incoming loan payments, but apparently did not regularly collect the

4

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

fee.

11. Although separate bank accounts exist for each of the five Debtors, funds received by the Debtors from interest, loan payments and loan payoffs were commingled primarily into a "Collection Trust Account" held in the name of USACM, and funds from this bank account were used to make monthly interest payments to Investors as well as to fund the ongoing operations and overhead of the Debtors' joint business enterprise. The separate bank accounts of the Funds were used as disbursement vehicles for interest payments to the Fund investors. USACM maintains operational bank accounts for operating expenses, loan closings and other business purposes. The bank accounts of the other Debtors were rarely used. A list of bank accounts is attached as **Exhibit B**. **Exhibit C** is a diagram which shows how the Debtors used a collection account and an investor account to collect from all borrowers no matter which party had made the loan and no matter which entity was making the loans.

### PROPOSED CASH MANAGEMENT PROCEDURES

In order to preserve the value of the Loan Portfolio for the benefit of all Investors, and to provide the Debtors, which are under new management, with a limited period of time and limited funds to promptly investigate and sort out the issues that need to be immediately addressed relating to the Loan Portfolio and the accounts of each of the Investors, the Debtors proposed the following cash management procedures:

a. The Debtors will establish a new, Debtor-In-Possession bank account (the "DIP Collection Account") at Wells Fargo Bank that will have the ability to accept "lock-box" payments from the borrows on the loans within the Loan Portfolio (the "Borrowers").

b. The Debtors will maintain the so-called "Collection Trust Account" of USACM at Wells Fargo Bank (the "Collection Account") to facilitate the continuing receipt of wire transfer payments from the Borrowers. This account receives all interest and principal payments from the loans for which USACM serves as servicing agent. Most of these payments are made electronically by the borrowers. Closing this account would require all borrowers to alter or modify their wiring instructions which could result in delays in expected cash flow, as well as miscommunication on the application of funds received. Loan Payments, loan payoffs, and all

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

1  other amounts existing or received into the Collection Account will be transferred promptly to the
2  DIP Collection Account. As of the petition date, Wells Fargo will be instructed to reject all
3  checks, wires and ACHs presented for payment from this account and the Debtors will cease all
4  electronic payments from this account.

5        c.      The Debtors will maintain detailed records concerning the source (including
6  identification of the specific borrow and specific loan to which the payment relates, if applicable)
7  of each payment coming into the Collection Account and the DIP Collection Account.

8        d.      USACM maintains an operating account at Wells Fargo Bank from which ADP
9  will draw the necessary payroll funds on April 17. In addition, that account is set up to receive
10 certain wire transfers. While the Debtors will open a separate "DIP Operating Account" from
11 which the business and administrative expenses of the Debtors will be paid, it will not be possible
12 to transfer the ADP ACH payment to a new account prior to the payroll date. Accordingly, the
13 Debtors request permission to allow existing operating account at Wells Fargo to remain open,
14 with instructions to the bank to refuse to honor checks, and allow the deposit of funds for this
15 current payroll cycle and the ACH withdrawal by ADP. It is anticipated that the transfer of ADP
16 instructions to the DIP Operating Account will be completed before the following payroll cycle,
17 allowing the closure of the existing operating account.

18       e.      All other bank accounts that exist in the name of any of the Debtors will be closed,
19 and the funds will be transferred to a respective DIP Account, so that each Debtor maintains a DIP
20 account. The only bank accounts which are anticipated to have funds for these Debtors will be the
21 DIP Collection Account, the Collection Account, and the DIP Operating Account (collectively the
22 "DIP Accounts").

23       f.      The aggregate amount of the line items in the cash budget attached hereto as
24 **Exhibit A** (the "Budget") for each week will be transferred from the DIP Collection Account to
25 the DIP Operating Account, to be used only for payment of the expenses and costs set forth in the
26 Budget to the extent approved by the Court. The Budget anticipates that operating expenses will
27 be required in order to (a) continue servicing the loan portfolio; (b) analyze and investigate the
28 amounts owed to or from each Investor; (c) collect amounts due from borrowers including

6

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

commencing foreclosure proceedings or other collection expenses. These necessary activities will inure to the benefit of all Investors in maintaining the value of the Loan Portfolio and in determining the proper amounts due to and from all Investors.

  g. All rights, if any, of the Investors, including indirect rights as members of the Funds and direct rights as holders of other notes (or fractional interests in notes) in the Loan Portfolio or in the proceeds thereof will attach to the DIP Accounts except that the amounts in the Court-approved budget may be transferred to the DIP Operating Account as set forth above for the benefit of all Investors.

## CONCLUSION

Based on the foregoing, the Debtors respectfully request this Court to approve the Debtors' proposed cash management procedures and interim use of cash in accordance with the proposed budget, for such purposes and on such terms as set forth herein.

Respectfully submitted this 14 day of April, 2006.

_____
Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308

Attorneys for Debtors

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

# EXHIBIT A

USA Commercial Mortgage Company, et al.
13-Week Cash Forecast
($ in thousands)

13-Week Cash Forecast

| | 4/22/2006 | 4/29/2006 | 5/6/2006 | 5/13/2006 | 5/20/2006 | 5/27/2006 | Week Ending 6/3/2006 | 6/10/2006 | 6/17/2006 | 6/24/2006 | 7/1/2006 | 7/8/2006 | 7/15/2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | |
| *USA Commercial Mortgage - Wells Fargo* | | | | | | | | | | | | | |
| Loan Closing Fees | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $900.0 | $0.0 | $0.0 |
| Extension Fees | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Other Income | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 26.6 | 0.0 | 0.0 |
| Total Cash Receipts (USACMC - Wells Fargo) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $926.6 | $0.0 | $0.0 |
| *USA Commercial Mortgage - LaSalle* | | | | | | | | | | | | | |
| Loan Closing Fees - Perm | $25.0 | $0.0 | $7.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Appraisal revenue - Perm | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Cash Receipts (USACMC - LaSalle) | $25.0 | $0.0 | $7.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| *Collections Trust Account* | | | | | | | | | | | | | |
| Estimated Interest Return | $0.0 | $0.0 | $0.0 | $5,895.7 | $0.0 | $0.0 | $0.0 | $5,623.2 | $0.0 | $0.0 | $0.0 | $0.0 | $5,649.8 |
| Expected Returned Principal | 0.0 | 0.0 | 0.0 | 4,828.0 | 0.0 | 0.0 | 26,950.0 | 0.0 | 10,679.1 | 23,683.7 | 0.0 | 0.0 | 0.0 |
| Expected Outstanding Fee Return | 0.0 | 0.0 | 0.0 | 146.3 | 0.0 | 0.0 | 222.8 | 0.0 | 314.0 | 320.0 | 0.0 | 0.0 | 0.0 |
| Expected Outstanding Interest Return | 0.0 | 0.0 | 0.0 | 813.2 | 0.0 | 0.0 | 904.5 | 0.0 | 57.4 | 20.4 | 0.0 | 0.0 | 0.0 |
| Expected Cash Collections | $0.0 | $0.0 | $0.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $0.0 | $0.0 | $5,649.8 |
| Total Cash Receipts - Filed Entities | $25.0 | $0.0 | $7.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $926.6 | $0.0 | $5,649.8 |
| **Cash Disbursements** | | | | | | | | | | | | | |
| *USA Commercial Mortgage - Wells Fargo* | | | | | | | | | | | | | |
| Total Selling Expense | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $6.9 | $0.0 | $0.0 |
| Administrative Expenses | | | | | | | | | | | | | |
| Salaries & Wages | 203.6 | 0.0 | 80.0 | 0.0 | 77.8 | 0.0 | 0.0 | 80.0 | 0.0 | 77.8 | 0.0 | 80.0 | 0.0 |
| Payroll Related Benefits | 14.5 | 0.0 | 27.9 | 0.0 | 14.5 | 0.0 | 13.4 | 14.5 | 0.0 | 14.5 | 13.4 | 14.5 | 0.0 |
| Rent | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 |
| Total Legal | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 3.9 | 3.9 | 3.9 | 3.9 |
| Total Other Administrative Expenses | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 |
| Total Administrative Expenses | $258.0 | $40.0 | $205.0 | $40.0 | $132.3 | $40.0 | $110.5 | $134.5 | $40.0 | $136.2 | $114.4 | $138.4 | $43.9 |
| Total Other Expense | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $2.9 | $0.0 | $0.0 |
| Total Cash Disbursements (USA CMC - Wells Fargo) | $258.0 | $40.0 | $205.0 | $40.0 | $132.3 | $40.0 | $110.5 | $134.5 | $40.0 | $136.2 | $124.1 | $138.4 | $43.9 |
| *USA Capital Realty Advisors* | | | | | | | | | | | | | |
| Marketing | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 |
| Total Legal | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 |
| Total Other | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 |
| Total Cash Disbursements (USA Capital Realty) | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 |
| Total Cash Disbursements - Filed Entities | $270.1 | $52.1 | $217.1 | $52.1 | $144.4 | $52.1 | $122.6 | $146.6 | $52.1 | $148.3 | $136.2 | $150.5 | $56.0 |
| **Net Change in Cash USA Commercial Mortgage Related Entities** | | | | | | | | | | | | | |
| Total Cash Receipts | $25.0 | $0.0 | $7.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $926.6 | $0.0 | $5,649.8 |
| Total Cash Disbursements | 270.1 | 52.1 | 217.1 | 52.1 | 144.4 | 52.1 | 122.6 | 146.6 | 52.1 | 148.3 | 136.2 | 150.5 | 56.0 |
| Net Change in Cash Before Bankruptcy Related Fees | ($245.1) | ($52.1) | ($210.1) | $11,631.1 | ($144.4) | ($52.1) | $27,954.6 | $5,476.6 | $10,998.5 | $23,875.8 | $790.3 | ($150.5) | $5,593.8 |

USA Commercial Mortgage Company, et al.
13-Week Cash Forecast
($ in thousands)

### 13-Week Cash Forecast

| | 4/22/2006 | 4/29/2006 | 5/6/2006 | 5/13/2006 | 5/20/2006 | 5/27/2006 | Week Ending 6/3/2006 | 6/10/2006 | 6/17/2006 | 6/24/2006 | 7/1/2006 | 7/8/2006 | 7/15/2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy Related Costs** | | | | | | | | | | | | | |
| Debtor Professional Fees | | | | | | | | | | | | | |
| Financial Advisor Fees & Expenses | $160.6 | $160.6 | $151.8 | $148.8 | $145.9 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 |
| Legal Counsel Fees & Expenses | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 |
| Local Counsel | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 |
| PR Firm | 1.3 | 1.3 | 1.3 | 1.3 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 |
| Other Professionals | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Committee Professionals | | | | | | | | | | | | | |
| Legal Counsel Fees & Expenses | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 |
| Financial Advisor Fees & Expenses | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 |
| Total Bankruptcy Professional Fees | $228.5 | $228.5 | $219.7 | $266.7 | $263.3 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 |
| Cash Payment for Bankruptcy Professional Fees | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $541.4 | $0.0 | $0.0 | $0.0 | $0.0 | $803.5 | $0.0 |
| Other | | | | | | | | | | | | | |
| Employee Retention Costs | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Noticing Agent | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 15.0 | 0.0 | 0.0 | 0.0 | 15.0 | 0.0 | 0.0 |
| Other (security) | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Post-Petition Financing | | | | | | | | | | | | | |
| Post-Petition Financing | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Fees for Post-Petition Financing | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Legal Counsel Fees & Expenses | 0.0 | 0.0 | 250.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Bankruptcy Related Fees | $10.0 | $10.0 | $260.0 | $10.0 | $10.0 | $10.0 | $566.4 | $10.0 | $10.0 | $10.0 | $25.0 | $813.5 | $10.0 |
| NET CHANGE IN CASH | ($255.1) | ($62.1) | ($470.1) | $11,621.1 | ($154.4) | ($62.1) | $27,388.2 | $5,466.6 | $10,988.5 | $23,865.8 | $765.3 | ($964.0) | $5,583.8 |
| **CASH** | | | | | | | | | | | | | |
| Total Cash and Cash Equivalents at Beginning of Period | $10,154.2 [a] | $9,899.1 | $9,837.0 | $9,366.9 | $20,988.0 | $20,833.6 | $20,771.5 | $48,159.7 | $53,626.3 | $64,614.8 | $88,480.6 | $89,245.9 | $88,281.9 |
| Pre-Petition Cash Payments | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Net (Decrease) Increase in Cash and Cash Equivalents | (255.1) | (62.1) | (470.1) | 11,621.1 | (154.4) | (62.1) | 27,388.2 | 5,466.6 | 10,988.5 | 23,865.8 | 765.3 | (964.0) | 5,583.8 |
| Total Cash and Cash Equivalents at End of Period | $9,899.1 | $9,837.0 | $9,366.9 | $20,988.0 | $20,833.6 | $20,771.5 | $48,159.7 | $53,626.3 | $64,614.8 | $88,480.6 | $89,245.9 | $88,281.9 | $93,865.7 |

Notes:
(a) Cash Balance as of 4/12/06

# EXHIBIT B

## Debtor Bank Accounts

| Company Name | Bank | Bank Account # | Account Type | Bank Phone # | Account Purpose |
|---|---|---|---|---|---|
| USA Capital Diversified Trust Deed Fund, LLC | Nevada State Bank | 552016670 | Analyzed Business Checking | (702) 383-0009 | General Operating Account |
| USA Capital Diversified Trust Deed Fund, LLC | Nevada State Bank | 85904514 | Accessor US Govt MM Fund | (702) 383-0009 | Money Market Account |
| USA Capital First Trust Deed Fund, LLC | Nevada State Bank | 552024218 | Analyzed Business Checking | (702) 383-0009 | General Operating Account |
| USA Capital Realty Advisors, LLC | Community Bank of Nevada | 10303691 | CB Business Account | (702) 222-9800 | General Operating Account |
| USA Commercial Mortgage Company | Wells Fargo | 083-4610149 | Choice IV Commercial Checking | (800) 225-5935 | General Operating Account/Payroll |
| USA Commercial Mortgage Company-Exclusive Account | Wells Fargo | 5627688186 | Basic Business Checking | (800) 225-5935 | Pass-through Permanent Loans |
| USA Commercial Mortgage Company | LaSalle Bank | 5800349150 | Basic Business Checking | (312) 904-6100 | Permanent Loan Brokers/Closing Fees |
| USA Commercial Mortgage Company | BankOne | 6349120067 | Checking Trust for HMA | (800) 404-4111 | HMA Investor Payments |
| USA Commercial Mortgage Company dba USA Capital | CitiBank | 500078217 | CitiBusiness | (877) 528-0990 | Citibank Credit Line Interest Payment |

# EXHIBIT C



# USA Commercial Mortgage Company




USA Commercial Mortgage Company
Loan Servicing Cash Management System

Privileged and Confidential




USA Commercial Mortgage Company

Privileged and Confidential