Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

E-FILED ON APRIL 13, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                Debtor. | Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06-<br>Case Nos. BK-S-06- |
| In re:<br>USA SECURITIES, LLC,<br>                                                Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                Debtor. | **DECLARATION OF THOMAS J. ALLISON** |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                Debtor | Date:<br>Time: |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

I, Thomas J. Allison, hereby declare, verify and state as follows:

1. I make this Declaration in support of various motions. My Declaration is based upon personal knowledge of the facts set forth herein.

2. I am currently Executive Vice President and Senior Managing Director of Mesirow Financial Interim Management, LLC ("MFIM"). MFIM has been employed by the Members of the Debtors (defined below) to serve as financial advisors to evaluate restructuring alternatives, including filing a petition for relief under Chapter 11, Title 11 of the United States Code, for USA Securities, LLC, USA Capital Reality Advisors, LLC, USA Commercial Mortgage Company, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively, the "Debtors"). As an officer of MFIM, I have acted as lead consultant on the engagement.

3. Pursuant to a resolution entered into by each of the Debtors, in the event of a bankruptcy filing, the Debtors' current members and managers have determined that it would be in the best interests of the Debtors to immediately appoint me as the sole Manager of the four Debtors who are limited liability companies (USA Securities, USA Realty, Diversified Fund, and First Deed Fund), and as the president of the corporate debtor USA Commercial, with full authority to oversee the restructuring and reorganization of the Debtors' unified business enterprise, to make all business and financial decisions for the Debtors, including taking control of all bank accounts and other assets of these Debtors. The Debtors have filed an Application in this Chapter 11 case to employ me in that capacity.

4. MFIM's engagement on behalf of the Debtors commenced on April 1, 2006. As lead consultant on that engagement, my staff and I have spent the last two weeks evaluating, examining and analyzing the Debtors' books and records, financial data, cash management system, loan portfolios, mortgages, agreements and all other documents made available to my staff.

5. The Debtors' business operations are best described as originating, underwriting, brokering and servicing commercial loans or fractional interests therein.

6. I understand from my examination of the Debtors' books, records and financial

data, that a group of approximately 3,600 investors have made individual investments in loans originated by USA Commercial Mortgage Company ("USACM") and those investors have participated in fractional loans on various real estate development and real property.

7. Two other groups of investors totaling approximately 3,200 investors own membership interests in USA Capital Diversified Trust Deed Fund, LLC ("Diversified Trust Deed Fund") and USA Capital First Trust Deed Fund, LLC ("First Trust Deed Fund"). The Diversified Trust Deed Fund and the First Trust Deed Fund are sometimes collectively referred to as the "Funds." Those 3,200 investors in the Funds, own membership interests in the two Funds which in turn hold commercial loans, or shares of commercial loans along with other investors, including the individual investors noted above. The Funds are managed by USA Realty Advisors, LLC ("USARA"), and USACM serves as the serving agent.

8. In the past, USACM received cash from investors including cash from the Funds and deposited these monies into an investor account. From this account, USACM funded the commercial loans it originates and underwrites. These loans are not owned by USACM except in a few cases where USACM owns a fractionalized interest in the commercial loan. USACM received a loan origination fee on each commercial loan it originated and funds with investors' money.

9. As the borrowers pay interest on their commercial loans or repay principal, the funds are deposited by USACM into a collection account. In the past, it appears that interest was disbursed to the investors and the Funds each month. The investors received their contractual interest payment regardless of whether or not the underlying borrower had made payments on their loans. There was no distinction in the treatment of the 3,600 investors who hold fractional interests in specific loans and the 3,200 investors who own membership interests in the Funds. All are identified and treated the same; all have been paid interest in the same manner, without tracing, and irrespective of the source of the funds.

10. Further, from my examination, evaluation and analysis of the Debtors' books and records I have preliminarily concluded that funds of all Debtor entities have historically been substantially commingled in an account held by USACM. Funds held in that account have then

been paid to investors without regard to such investor's alleged entitlement to specific distributions from the collateral held by any given investor and without regard to the legal interest held by such investors. As a consequence, certain investors may have been overpaid, while others may not have been paid all the amounts allegedly owed them for their interest entitlement. The complexity of the Debtors' books and records have not allowed me, in the short period of time my staff and I have had access to them, to determine which of the investors may have been overpaid and which may have been underpaid.

11. In my opinion, the only way to enable MFIM personnel and the Debtors' employees to determine which investors are entitled to payments and which investors have been overpaid is to maintain all funds the in the current commingled account and to leave the loan portfolio intact. The Debtors' have historically operated their businesses and maintained their accounts in this manner and it will be impossible to trace payments and match investors to specific loans and without time to investigate and temporarily administer the funds jointly pending such determination. Indeed, in my opinion, the only way to ensure that maximum value is preserved for the benefit of investors and creditors is to maintain the *status quo* with respect to the Debtors' accounts and loan portfolio and to permit MFIM personnel sufficient time to undertake the arduous task of tracing payments that have been made to investors by the Debtors, identifying investors to specific loans, where appropriate, and administering funds in the Debtors' accounts for the benefit of investors and creditors. At the same time, Mr. Allison, as the new management must be afforded the opportunity to take action to collect payments from delinquent borrowers, particularly given that the incidence of delinquencies is already high and is likely to increase upon the filing of the Debtors' bankruptcies. In this way, the value of the Debtors' business operations and loan portfolios will be preserved.

11. In order to perform these important tasks for the benefit of investors and creditors, in my opinion, it is imperative that the Debtors' be authorized to use cash on hand as it is currently held in a single account for all tasks necessary for these related Debtors, subject to approval by the Court, so that the tasks of tracing and matching, administering existing loans and seeking to collect delinquent loan payments can begin expeditiously and in earnest. Only in that way, will

4

value be preserved for creditors and investors. Based on my evaluation of the Debtors' financial information, the Debtors own certain of the cash in the accounts based on origination and servicing fees earned by USACM and the right of USARA as sole manager of the Funds to retain and use the cash for collection purposes. In any event, that cash and other cash on hand, must be made available to carry out these important tasks, subject, of course, to the budget prepared by the Debtors which is limited to accounting, administrative, investigative, and collection tasks and to approval by the Court. In addition, in the near future, it may be necessary to use a portion of the cash on hand to complete projects that are under development to maximize the value of those projects for investors. If the projects cannot be completed, borrowers may cease paying on their loans, to the detriment of the Debtors and investors.

12. I also believe that it is critical that the Debtors' employees be retained to preserve the value of the Debtors' business operations for investors and creditors. The Debtors currently have 32 employees and 12 independent contractors performing important operational functions. If the Debtors cannot obtain approval to pay these employees on normal paydays in the customary amounts, including benefits, up to the 11 U.S.C. §507(a)(3) and (a)(4) priority amounts, I believe the Debtors may lose employees which will hinder our efforts to maximize values for the benefit of investors and creditors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 13, 2006.

Thomas J. Allison
Senior Managing Director
Mesirow Financial Interim Management, LLC
Chicago, IL