Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors

E-FILED ON APRIL 21, 2006

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

USA COMMERCIAL MORTGAGE COMPANY,

Debtor.

Case Nos. BK-S-06-10725 LBR

Chapter 11

**DEBTOR'S EX PARTE APPLICATION FOR ORDER APPROVING EMPLOYMENT OF BMC GROUP, INC. AS THE CLAIMS AGENT FOR DEBTOR'S ESTATE**

Date: n/a
Time: n/a

USA Commercial Mortgage Company (the "Debtor"), by and through its counsel, submits this application (the "Application") for an order pursuant to 28 U.S.C. § 156(c) approving an agreement with BMC Group, Inc. ("BMC") and appointing BMC as the claims and noticing agent of the Bankruptcy Court. This Application seeks immediate entry of an order granting the Application and is brought on an emergency basis on expedited notice under Fed.R.Bankr.P. 2002

1  to avoid immediate and irreparable harm to the Debtor's estate.

## POINTS AND AUTHORITIES

### Factual Background

1. The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on April 13, 2006 (the "Petition Date"). The Debtor continues to operate its business and possess its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. This Court has jurisdiction over this Chapter 11 proceeding under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

3. The Debtor operates its business and maintains its headquarters in Las Vegas, Nevada. Accordingly, venue of the Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are 28 U.S.C. § 156(c) and Rule 2002 of the Federal Rules of Bankruptcy Procedure.

5. In support of this Application, the Debtor incorporates the factual statements set forth in the Declaration of Thomas J. Allison.

6. The Debtor seeks an order authorizing it to retain and employ BMC as its claims and noticing agent to perform services, which are anticipated to include, among other things: (i) serving as the Court's notice agent to mail notices to the estate's creditors and parties in interest, (ii) providing expertise, consultation and assistance in claim and ballot processing and with other administrative matters with respect to the Debtor's bankruptcy case, (iii) providing expertise, consultation and assistance with the preparation of schedules, statements of financial affairs and master creditor lists, if necessary, and any amendments thereto, and (iv) processing, imaging and docketing all proofs of claim filed in the court's Case Management/Electronic Case Filing system (CM/ECF) through the CM/ECF Limited Use Registration to ensure that all claims received are recorded and available for public reference.

7. The Debtor has identified approximately 6900 creditors, equity security holders and other parties in interest to whom certain notices, including the notice of the commencement of these

chapter 11 cases, and voting documents, must be sent.

8. The office of the Clerk of the Bankruptcy Court for the District of Nevada is not equipped to docket and maintain the extremely large number of proofs of claim that are likely to be filed in the Debtor's case. Moreover, the sheer magnitude of the number of parties in interest makes it impracticable for the Clerk's office to send out all the required notices in these cases.

9. The most effective and efficient manner by which to accomplish the process of sending out the notice of commencement of the case, and dealing with the large numbers of proofs of claim that will likely be filed is for the Debtor to employ an independent third party to act as an agent for the Court.

10. BMC is a company that specializes in noticing, claims processing, and other administrative tasks in chapter 11 cases. The Debtor believes that BMC is well qualified and has the necessary expertise to provide the services set forth above. Indeed, BMC has assisted and advised numerous chapter 11 debtors in connection with noticing, claims administration and reconciliation, and administration of plan votes. BMC has provided identical or substantially similar services in many other chapter 11 cases in a variety of jurisdictions. See, e.g., In re VSS Enterprises, LLC, No 03-17939 (Bankr. D. Nevada); In re Musicland Holding Corp., et al.; No 06-10064 (SMB) Jointly Administered (Bankr. S.D. NY); In re Dana Corporation, No. 06-10354 (BRL) (Bankr. S.D. NY).

### Memorandum of Law

Fed.R.Bankr.P. 2002 generally regulates the notices that must be provided to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002, the Court may direct that a person other than the Clerk of the Court give notice of the various matters described therein. Further, 28 U.S.C. § 156(c), which governs staffing and expenses of the Bankruptcy Court, states in pertinent part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the cost of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

3

P:\USA Commercial Mortgage\Pleadings\Application Employ BMC Group.doc

1  28 U.S.C. § 156(c).

2      The Debtor's engagement of BMC is therefore expressly authorized under Bankruptcy Rule 2002 and 28 U.S.C. § 156(c), and the Debtor believes that engaging BMC will expedite the service of Rule 2002 notices, streamline the claims administration process, and permit the Debtor to focus on their reorganization efforts.

    The Debtor proposes to retain BMC on substantially the terms and conditions set forth in the agreement (the "Services Agreement") and accompanying fee schedule which are attached hereto as **Exhibit "A."**

    Under the Services Agreement, and in compliance with the Guidelines for a Claims Agent that have been adopted by this Court, the Debtor anticipates that BMC will perform the following services as the claims and noticing agent at the request of the Debtor or the Clerk's office:

    a. Prepare and serve required notices in Debtor's case, including but not limited to:

        i) notice to all creditors of the filing of the bankruptcy petition and of the setting of the first meeting of creditors, pursuant to 11 U.S.C. Section 341(a), under the proper provision of the Bankruptcy Code;

        ii) notice of the claims bar date;

        iii) notices of objections to claim; and

        iv) notices of any hearings on a disclosure statement and confirmation of a plan of reorganization;

    b. Furnish a last date for the filing of a proof of claim and a form for filing a proof of claim to each creditor notified of the filing;

    c. Maintain an up-to-date copy of Debtor's schedules that list the creditors and the amounts owed;

    d. Provide the creditor with the scheduled amount and classification, and the Debtor entity in which the creditor is scheduled;

    e. File with the clerk a certificate of service within 10 days, which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order by last name or company name), and the date mailed;

    f. Image the proofs of claim and all attachments in PDF format (not to exceed 3 MG in size per image), make the electronic docket entry into the Court's CM/ECF docketing system of each proof of claim including the entry of the creditor's name and address, if necessary, and attach that image to the appropriate proof of claim docket entry to enable to electronic viewing of said documents by court personnel, counsel, and the public;

g. Cause to be forwarded all proofs of claim and transfer of claims from the office of the clerk to the outside claims agent through a messenger service or postage paid envelopes;

h. Once imaged, maintain any hard copies of proofs of claim originally recorded in paper format for the life of the case, or until otherwise ordered by the Court:

    i) in correct claim number order;

    ii) in an environmentally secure area and protect the integrity of these original documents from theft and/or alteration.

i. Maintain an official claims register in CM/ECF by docketing all proofs of claim on a claims register including but not limited to, the following information:

    i) the name and address of claimant and the agent, if agent filed proof of claim;

    ii) the date received;

    iii) the claim number assigned (CM/ECF assigns a claim number automatically; the assigned claim number is to be written on the hard copy of the claim in the lower right hand corner); and

    iv) the amount and classification asserted by such claimant;

j. Have the option to send at the discretion of the Debtor or clerk, an acknowledgment letter to the creditor when its claim is processed;

k. Maintain a telephone staff to handle inquiries as related to procedures about filing proofs of claim;

l. Record all transfers of claims pursuant to FRBP 3001(e):

    i) by electronically filing and docketing all transfers of claim in the Court's CM/ECF docketing system;

    ii) provide notice of the transfer as required by FRBP 3001(e) and electronically file and docket the notice of transfer; and

    iii) after said electronic docketing, write the document number in the lower right hand corner of the document, and deliver the original document to the Clerk's office by hand delivery or by mail for filing with other original non-proof of claim paper documents;

m. Make changes in claims register pursuant to court order;

n.  Make all original documents available to the clerk on an expedited immediate basis;

o.  Not employ any past or present employees of the debtor for work on the particular case involving that debtor;

p.  Provide notices, at the expense of the Debtor's estates, to any entities, not limited to creditors, that the Debtor or the Court deems necessary for an orderly administration of the above captioned bankruptcy cases;

q.  At the close of the case, box and ship all original documents in proper format, as provided by the clerk's office, to the office address of the Clerk of the Bankruptcy Court;

r.  Insure that no notices or forms are sent on behalf of the Debtor without prior approval of the clerk; and

s.  Be responsible for regular contact with the Debtor's counsel to insure that any changes in the claims that appear on the docket, i.e., withdrawals, transfers, etc. be transmitted to the claims agent for electronic recordation on the claims register and the case docket, as appropriate.

BMC further agrees that:

a.  In the exercise of any privilege granted by these guidelines, it shall comply with all applicable state, municipal and local laws, and the rules, orders, regulations and requirements of federal governmental departments and bureaus;

b.  It shall promptly comply with such further conditions and requirements as the clerk may hereafter prescribe;

c.  It will not consider itself employed by the federal government or the United States Bankruptcy Court, and in its capacity as claims and noticing agent in these chapter 11 cases, it is not an official representative of the United States and is not acting on behalf of the United States;

d.  It will not provide legal or financial advice about the interpretation or settlement of proofs of claim;

e.  It will not misrepresent its authority to any person, entity or government agency; and

f.  The outside claims agent is not employed by the government and shall not seek any compensation from the government. By accepting appointment to the case, BMC shall waive any right to receive compensation from the government.

///

The Debtor requests that the fees and expenses of BMC incurred in the performance of the above services be treated as an administrative expense of the Debtor's chapter 11 estate and be paid by the Debtor in the ordinary course of business. BMC will submit to the Office of the United States Trustee, on a monthly basis, copies of the invoices it submits to the Debtor for services rendered. To the best of the Debtor's knowledge, neither BMC nor any employee thereof has any connection with the Debtor, its creditors, or any other parties in interest, they are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and they do not hold or represent any interest adverse to the Debtor's estate.

Debtor requests that upon approval of this Ex Parte Application, notice of the order be limited and served upon counsel for the United States Trustee, and all parties in interest that have filed special notice of appearance or requests to receive notices and pleadings in the above-entitled cases to date.

## CONCLUSION

WHEREFORE, the Debtor requests that the Court enter its order approving this Ex Parte Application and grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 21st day of April, 2006.

    Annette W. Jarvis, Utah Bar No. 1649
    RAY QUINNEY & NEBEKER P.C.
    36 South State Street, Suite 1400
    P.O. Box 45385
    Salt Lake City, Utah 84145-0385
    Telephone: (801) 532-1500
    Facsimile: (801) 532-7543
    Email: ajarvis@rqn.com
    and

    /s/ Jeanette E. McPherson
    Lenard E. Schwartzer, Nevada Bar No. 0399
    Jeanette E. McPherson, Nevada Bar No. 5423
    SCHWARTZER & MCPHERSON LAW FIRM
    2850 South Jones Boulevard, Suite 1
    Las Vegas, Nevada 89146
    Telephone: (702) 228-7590
    Facsimile: (702) 892-0122
    Email: www.lawyers.com/schwartzermcpherson

# EXHIBIT "A"

## AGREEMENT FOR SERVICES

This Agreement (the "Agreement") dated as of April 17, 2006, is entered between USA Commercial Mortgage Company and its related affiliates ("Customer") and BMC Group, Inc. ("BMC"). The services rendered by BMC pursuant to this Agreement will commence on the date first set forth above and will continue until the Agreement is terminated as set forth below

### TERMS AND CONDITIONS

**I.  SERVICES**

In accordance with the terms and conditions contained in this Agreement and in the Fee Schedule annexed hereto, BMC agrees to provide services as follows: (a) assisting the Customer, Counsel and Office of the Clerk with noticing and claims handling and (b) assisting Customer with the compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the bankruptcy case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve those notices required in the bankruptcy case(s); (2) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the bankruptcy case(s); (3) create and maintain the official claims register(s); (4) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (5) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy case(s); (6) assist Customer and Counsel with the administrative management of claims; (7) mail and tabulate ballots for purposes of plan voting; (8) assist with the production of reports, exhibits and schedules of information for use by the Customer, Counsel or to be delivered to the Court, the Clerk's Office, the U.S. Trustee or third parties; (9) provide other technical and document management services of a similar nature requested by the Customer or the Clerk's office; (10) facilitate or perform distributions; and (11) maintain a Customer call center and public website

**II.  TECHNOLOGY SUPPORT**

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, data base modification, and/or other features.

**III.  PRICES, CHARGES AND PAYMENT**

A.  BMC agrees to charge, and Customer agrees to pay, BMC's standard prices for its services, expenses and supplies at the rates or prices in effect on the day such services and/or supplies are provided to the Customer, in accordance with the Fee Schedule annexed hereto.

B.  BMC raises its rates from time to time and generally does so each January to reflect changes in the business and economic environment.

C.  Customer agrees to pay BMC for reasonable out-of-pocket expenses for transportation, lodging, meals and related items

D.  In connection with noticing services, upon BMC's request, Customer agrees to prepay BMC estimated postage amounts with respect to each notice or shall authorize BMC to cause the courier's charges (such as UPS or FedEx) to be stated to Customer's own account with such courier.

E.  BMC agrees to invoice Customer for fees and expenses and Customer agrees that the amount invoiced is due and payable upon its receipt of the invoice. In the case of a dispute in the invoice amount, notice shall be given to BMC within twenty (20) days of receipt of the invoice by Customer. Interest shall not accrue on any amounts in dispute. The balance of the invoice amount is due and payable in the normal course.

F.  BMC will look only to the Customer for payment of invoices and in no event shall Counsel be liable for any of BMC's invoices in connection with this Agreement.

## IV.  RIGHTS OF OWNERSHIP

A   The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B.  Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed by BMC during the course of this Agreement shall be the exclusive property of BMC.

C.  Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the non-proprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full unless otherwise ordered by a court of competent jurisdiction, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

D   Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

## V.  NON-SOLICITATION

Customer agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement, unless mutually agreed upon by both parties.

## VI. CONFIDENTIALITY

BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors to, safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section VI "Confidentiality" (the "Confidential Information"). BMC will use the Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to, keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Agreement.

## VII. TERMINATION

A.  This Agreement shall remain in full force and effect until terminated by Customer on twenty (20) days' prior written notice received by BMC, or, by BMC upon thirty (30) days' prior written notice received by the Customer. In the event the Customer files for bankruptcy protection, the Agreement shall not be terminated without the consent of the Clerk of the United States Bankruptcy Court unless the party or parties seeking termination receive the court's authorization to terminate the agreement.

B.  In the event that this Agreement is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

## VIII. SYSTEM IMPROVEMENTS

BMC's policy is to provide continuous improvements in the quality of service to the Customer. BMC, therefore, reserves the right to make changes in operation procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminals and other equipment and the BMC data center serving the Customer.

## IX. LIMITATIONS OF LIABILITY AND INDEMNIFICATION

Except with respect to breaches under Section VI "Confidentiality" above, Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. Except with respect to breaches under Section VI "Confidentiality" above, BMC shall be without liability to Customer with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. Except with respect to breaches under Section VI "Confidentiality" above, in

no event shall liability to Customer for any losses or damages, whether direct or indirect, arising out of this Agreement exceed the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage. Except with respect to breaches under Section VI "Confidentiality", in no event shall BMC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

## X. INDEPENDENT CONTRACTORS

Customer and BMC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XI. NOTICES

All notices in connection with this Agreement shall be given or made upon the respective parties in writing by facsimile or overnight courier and shall be deemed as given, if by facsimile, on the business day immediately following confirmed transmission, or if by courier, on the day it is delivered by such courier to the appropriate address set forth below:

| The BMC Group, Inc.<br>Attn: Tinamarie Feil<br>720 Third Avenue, 23rd Floor<br>Seattle, WA 98104<br><br>Telephone (206) 516-3300<br>Fax (206) 516-3304 | Name:<br>Title:<br>Address: |
|---|---|

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XII. APPLICABLE LAW

This Agreement shall be construed in accordance with the laws of the State of Washington and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

## XIII. ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Agreement may be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, and understands it may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer's bankruptcy case(s), the terms of the order shall govern.

XIV. ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by BMC to a wholly owned subsidiary of BMC.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

| BMC Group, Inc. | USA Commercial Mortgage Company |
|---|---|
| By: *Tinamarie Feil* | By: *[signature]* |
| Name: Tinamarie Feil | Name: Thomas J. Allison |
| Title: Vice-President | Title: Chief Restructuring Officer |
| Date: April 17, 2006 | Date: April 17, 2006 |

# BMC Fee Structure

### Print Mail and Noticing Services

| | |
|---|---|
| Document/Mail File Production Setup | $0 - $25 per file |
| Copy/Print | $.08 - $.15 per page or volume quote |
| Finishing (Fold, Insert, Label, Envelope) | Varies based on requirements |
| Postage | At cost |
| Certified Electronic Noticing | $40 per 1000 |
| Certified Fax Service | $.15 per page |
| Legal Notice Publication | Quote |

### Claims Management

| | |
|---|---|
| Claim Receipt, Processing, Docketing | $45 per hour |
| Claim Analysis and Reconciliation | at applicable engagement support rate |
| b-Linx User fee unlimited on-line access | $35 per user per month |
| b-Linx Hosting | $850 per month |

### Information Management

| | |
|---|---|
| Call Center | $45 per hour |
| Public Website Hosting | $250 per month |
| b-Worx Hosting | $250 per month |

### Solicitation

| | |
|---|---|
| Securities Research, Consulting | $275 per hour |
| Production/Mailing of Solicitation Materials | Quote |
| Call Center | $45 per hour |
| Bar Coded Ballot Tabulation | $.50 each |

### Distribution

| | |
|---|---|
| Check issuance; tax reporting | Quote |
| Issuance Stock, Notes, Warrants | Quote |
| Registrar | Quote |

### Document Management Services

| | |
|---|---|
| Imaging and storage | $0.25 per image |
| Physical Document Storage | $1.45 per box |
| Upload/Download | $.08 per page (max $2.40 each) |

### Consulting Support

| | |
|---|---|
| Average Hourly Rate | < $135 |
| Seniors/Principals | $180 - $275 per hour |
| Consultants | $100 - $175 per hour |
| Case Support | $65 - $95 per hour |
| Data Entry/Administrative Support | $45 per hour |

BMC Group                                                                 January 2006