# ATTACHMENT NO. 4

Documents and all accrued and unpaid interest and other sums in respect thereof, to be due and payable immediately, and upon any such declaration the principal of the Note and any sums due under the other Loan Documents and said accrued and unpaid interest and other sums shall become and be immediately due and payable, anything herein or in the Note or the other Loan Documents to the contrary notwithstanding.

(14)   During the continuance of any such Event of Default, Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Premises and each and every part thereof, and is hereby given a right and license to do so, and may exclude Mortgagor, its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Premises and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, Mortgagee, at the expense of the Mortgagor, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, may complete the construction of the Improvements and in the course of such completion may make such changes in the contemplated Improvements as it may deem desirable and may insure the same; and likewise, from time to time, at the expense of the Mortgagor, Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may seem advisable; and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of Mortgagor with respect thereto either in the name of Mortgagor or otherwise as it shall deem best; and Mortgagee shall be entitled to collect and receive the Rents and every part thereof, all of which shall for all purposes constitute property of Mortgagor; and in furtherance of such right Mortgagee may collect the rents payable under all leases of the Premises directly from the lessees thereunder upon notice to each such lessee that an Event of Default exists hereunder accompanied by a demand on such lessee for the payment to Mortgagee of all rents due and to become due under its lease, and Mortgagor FOR THE BENEFIT OF MORTGAGEE AND EACH SUCH LESSEE hereby covenants and agrees that the lessee shall be under no duty to question the accuracy of Mortgagee's statement of default and shall unequivocally be authorized to pay said rents to Mortgagee without regard to the truth of Mortgagee's statement of default and notwithstanding notices from Mortgagor disputing the existence of an Event of Default such that the payment of rent by the lessee to Mortgagee pursuant to such a demand shall constitute performance in full of the lessee's obligation under the lease for the payment of rents by the lessee to Mortgagor; and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements

16

and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of Mortgagee and for all attorneys, counsel, agents, clerks, servants and other employees by it engaged and employed, Mortgagee shall apply the moneys arising as aforesaid, to the payment of all sums due hereunder, under the Note, and under the other Loan Documents in such order and proportions as Mortgagee shall elect.

(15)   Mortgagee, either with or without entry or taking possession of the Mortgaged Property as provided in this Mortgage or otherwise, personally or by its agents or attorneys, may, in addition to any other remedies provided by law and/or equity:

(A)   without prejudice to the right to bring an action for foreclosure of this Mortgage, sell the Mortgaged Property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedure set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title and interest, claim and demand therein, and right of redemption thereof, at one (1) or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law; or

(B)   institute proceedings for the complete or partial foreclosure hereof; or

(C)   take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or herein, or the other Loan Documents or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect.

(b)   <u>Other Matters Concerning Sales.</u>

(1)   Mortgagee may adjourn from time to time any sale by it to be made hereunder or by virtue hereof by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

17

(2)    Upon the completion of any sale or sales made by Mortgagee under or by virtue of this Article II, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument or instruments conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Mortgagee is hereby appointed the true and lawful attorney irrevocable of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Mortgagor, if requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Mortgagee, for the purpose, and as may be designated in such request. Any such sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(3)    In the event of any sale or sales made under or by virtue of this Article II (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the entire principal of, and interest and other sums on, the Note, if not previously due and payable, and all other sums required to be paid by Mortgagor pursuant hereto, immediately thereupon shall, anything in any of said documents to the contrary notwithstanding, become due and payable.

(4)    The purchase money, proceeds or avails of any sale or sales made under or by virtue of this Article II, together with any other sums which then may be held by Mortgagee hereunder, whether under the provisions of this Article II or otherwise, shall be applied as follows:

(i)   To the payment of the costs and expenses of such sale, including reasonable compensation to Mortgagee, its agents and counsel, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Mortgagee hereunder, together with interest at the Default Rate on all advances made by Mortgagee, and of all taxes, assessments or other charges, except any taxes, assessments or

18

other charges subject to which the Mortgaged Property shall have been sold.

(ii)  To the payment of the whole amount of principal and interest then due, owing or unpaid under all the Loan Documents with interest on the unpaid principal at the Default Rate from and after the happening of any Event of Default until the same is paid, in such order and amounts as Mortgagee may elect.

(iii)  To the payment of any other sums required to be paid by Mortgagor pursuant to any provision hereof or of the Note or the other Loan Documents.

(iv)  To the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same.

(5)    Upon any sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured hereby the net sales price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct hereunder.

(c)    <u>Payment of Amounts Due</u>.

(1)    In case an Event of Default shall have happened and be continuing, then, upon demand of Mortgagee, Mortgagor will pay to Mortgagee the whole amount which then shall have become due and payable hereunder, under the Note and the other Loan Documents, for principal or interest or both, as the case may be, and after the happening of said Event of Default will also pay to Mortgagee interest at the Default Rate on the then unpaid principal of the Note, and the sums required to be paid by Mortgagor pursuant to any provision hereof and of the other Loan Documents, and in addition thereto such further amount as shall be sufficient to cover the reasonable costs and expenses of collection, including reasonable compensation to Mortgagee, its agents and counsel and any expenses incurred by Mortgagee hereunder. In the event Mortgagor shall fail forthwith to pay all such amounts upon such demand, Mortgagee shall be entitled and empowered to institute such action or proceedings at law or in equity as may be advised by its counsel for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect, out of the property of Mortgagor wherever situated, as well as out of the Mortgaged Property, in any manner provided by law, moneys adjudged or decreed to be payable.

19

(2)     Mortgagee shall be entitled to recover judgment as aforesaid either before, after or during the pendency of any proceedings for the enforcement of the provisions hereof; and the right of Mortgagee to recover such judgment shall not be affected by any entry or sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions hereof, or the foreclosure of the lien hereof; and in the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale, as herein provided, to the payment of the debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Note, and to enforce payment of all other charges, payments and costs due hereunder, and shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest at the Default Rate. In case of proceedings against Mortgagor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets, then Mortgagee shall be entitled to prove the whole amount of principal, interest and other sums due upon the Note to the full amount thereof, and all other payments, charges and costs due hereunder, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property, provided, however, that in no case shall Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of Mortgagor.

(3)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien hereof upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(4)     Any moneys thus collected by Mortgagee under this Section 2.03 shall be applied by Mortgagee in accordance with the provisions of clause (d) of Section 2.02 hereof.

(d)     Actions; Receivers. After the happening of any Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by Mortgagee to obtain judgment for the principal of, or interest on, the Note and other sums required to be paid by Mortgagor pursuant to any provision hereof or of the other Loan Documents, or of any other nature in aid of the enforcement of the Note or of the other Loan Documents, Mortgagor will, if required by Mortgagee, consent to the appointment of a receiver or receivers of all or part of the Mortgaged Property and of any or all of the Rents in respect thereof. After the happening of any Event of Default and during its continuance, or upon the commencement of any proceedings to foreclose this Mortgage or to enforce the specific performance hereof or in aid thereof or upon the commencement of any other judicial proceeding to enforce any right of Mortgagee, Mortgagee shall be entitled, as

20

a matter of right, if it shall so elect, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the indebtedness secured hereby, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of such a receiver or receivers.

(e)    Mortgagee's Right to Possession. Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of its property, or of the Mortgaged Property or any part thereof, Mortgagee shall be entitled to retain possession and control of all property now or hereafter held hereunder.

(f)    Protective Advances by Mortgagee. If Mortgagor shall fail to perform any of the covenants contained in this Mortgage or the other Loan Documents, after the expiration of any applicable notice and cure periods, Mortgagee may make advances to perform the same on its behalf and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Mortgagor will repay on demand all sums so advanced on its behalf together with interest thereon at the Default Rate. The provisions of this Section shall not prevent any default in the observance of any covenant contained in this Mortgage or the other Loan Documents from constituting an Event of Default.

(g)    Remedies Cumulative. No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute. No delay or omission of Mortgagee to exercise any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default or any acquiescence therein; and every power and remedy given hereby to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee. Nothing herein or in the Note or the other Loan Documents shall affect the obligation of Mortgagor to pay the principal of, and interest and other sums due under the Loan Documents in the manner and at the time and place therein respectively expressed.

(h)    Moratorium Laws; Right of Redemption. Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance hereof, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof and Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Mortgaged Property marshaled upon any foreclosure hereof.

21

(i)    <u>Mortgagor's Use and Occupancy after Default</u>. During the continuance of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Premises, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Premises or any portion thereof which are in its possession for such period and, upon default of any such payment, will vacate and surrender possession of the Premises to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery of possession of premises for non-payment of rent, however designated.

(j)    <u>Mortgagee's Rights Concerning Application of Amounts Collected</u>. Notwithstanding anything to the contrary contained herein, upon the occurrence and continuance of an Event of Default, Mortgagee may apply, to the extent permitted by law, any amount collected hereunder to principal, interest or any other sum due under the Note or the other Loan Documents or otherwise in respect of the Loan in such order and amounts, and to such obligations, as Mortgagee shall elect in its sole and absolute discretion.

## III. MISCELLANEOUS

(a)    <u>Assignment of Rents</u>. This Mortgage is intended to constitute a present, absolute and irrevocable assignment of all of the Rents now or hereafter accruing, and Mortgagor, without limiting the generality of the Granting Clause hereof, specifically hereby presently, absolutely and irrevocably assigns all of the Rents now or hereafter accruing to Mortgagee. The aforesaid assignment shall be effective immediately upon the execution hereof and is not conditioned upon the occurrence of any Event of Default hereunder or any other contingency or event, <u>provided, however</u>, that Mortgagee hereby grants to Mortgagor the right and license to collect and receive the Rents as they become due, and not in advance, so long as no Event of Default exists hereunder. Immediately upon the occurrence of any such Event of Default, and for so long as such Event of Default shall continue, the foregoing right and license shall be automatically terminated and of no further force or effect. Nothing contained in this Section or elsewhere herein shall be construed to make Mortgagee a mortgagee in possession unless and until Mortgagee actually takes possession of the Mortgaged Property, nor to obligate Mortgagee to take any action or incur any expense or discharge any duty or liability under or in respect of any leases or other agreements relating to the Mortgaged Property or any part thereof.

(b)    <u>Security Agreement</u>. This Mortgage constitutes a security agreement under the applicable Uniform Commercial Code with respect to the Chattels and such other of the Mortgaged Property which is personal property. In addition to the rights and remedies granted to Mortgagee by other applicable law or hereby, Mortgagee shall have all of the rights and remedies with respect to the Chattels and such other personal property as are granted to a secured party under the applicable Uniform Commercial Code. Upon Mortgagee's request, Mortgagor shall promptly and at its expense assemble the Chattels and such other personal property and make the same available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand, with interest at the Default Rate, any and all expenses, including reasonable attorneys' fees, incurred by Mortgagee in protecting its interest in the Chattels and such other personal property and in enforcing its rights with respect thereto. Any notice of sale, disposition or other intended action by Mortgagee

22

with respect to the Chattels and such other personal property sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action shall constitute reasonable notice to Mortgagor. The proceeds of any such sale or disposition, or any part thereof, may be applied by Mortgagee to the payment of the indebtedness secured hereby in such order and proportions as Mortgagee in its discretion shall deem appropriate.

(c)     Application of Certain Payments.  In the event that all or any part of the Mortgaged Property is encumbered by one or more mortgages held by Mortgagee, Mortgagor hereby irrevocably authorizes and directs Mortgagee to apply any payment received by Mortgagee in respect of any note secured hereby or by any other such mortgage to the payment of such of said notes as Mortgagee shall elect in its sole and absolute discretion, and Mortgagee shall have the right to apply any such payment in reduction of principal and/or interest and in such order and amounts as Mortgagee shall elect in its sole and absolute discretion without regard to the priority of the mortgage securing the note so repaid or to contrary directions from Mortgagor or any other party, except that, with respect to any mortgages constituting collateral mortgages, any payments received by Mortgagee thereunder shall only be applied to the payment of the sums secured thereby after payment of the sums secured hereby.

(d)     Severability.  In the event any one or more of the provisions contained herein or in the Note or the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

(e)     Modifications and Waivers in Writing.  No provision hereof may be changed, waived, discharged or terminated orally or by any other means except an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought. Any agreement hereafter made by Mortgagor and Mortgagee relating hereto shall be superior to the rights of the holder of any intervening or subordinate lien or encumbrance.

(f)     Notices.  All notices, demands, consents, approvals and statements ("Notices") required or permitted hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when (a) presented personally, (b) received by registered or certified mail, postage prepaid (receipt shall be evidenced by the confirmation of receipt returned to the U.S. Post Office), (c) received by a nationally recognized overnight courier service (receipt shall be evidenced by the confirmation returned to such courier service), or (d) actually received by Mortgagor or Mortgagee, if to Mortgagor or to Mortgagee, at its address stated above, or at such other address of which a party shall have notified the party giving such notice in accordance with the provisions of this Section, provided that the inability to deliver Notices because of a changed address of which no Notice was given, or rejection or refusal to accept any Notice offered for delivery shall be deemed to be receipt of the Notice as of the date of such inability to deliver or rejection or refusal to accept delivery.

(g)     Successors and Assigns.  All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of, the

23

respective successors and assigns of Mortgagor and Mortgagee.

(h)    Limitation on Interest.  Anything herein or in any of the other Loan Documents to the contrary notwithstanding, the obligations of Mortgagor hereunder and under the other Loan Documents shall be subject to the limitation that payments of interest shall not be required to the extent that receipt of any such payment by Mortgagee would be contrary to provisions of law applicable to Mortgagee limiting the maximum rate of interest that may be charged or collected by Mortgagee.

(i)    Mortgagee's Sale of Interests in Loan.  Mortgagor recognizes that Mortgagee may sell and transfer interests in the Loan to one or more participants or assignees and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to Mortgagor, any Guarantor or the Loan, may be exhibited to and retained by any such participant or assignee or prospective participant or assignee.

(j)    No Merger of Interests.  Unless expressly provided otherwise, in the event that ownership hereof and title to the fee and/or leasehold estates in the Premises encumbered hereby shall become vested in the same person or entity, this Mortgage shall not merge in said title but shall continue to be and remain a valid and subsisting lien on said estates in the Premises for the amount secured hereby.

(k)    CERTAIN  WAIVERS.    MORTGAGOR  HEREBY  EXPRESSLY  AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY FORECLOSURE OR SIMILAR ACTION OR PROCEDURE (INCLUDING ANY CLAIM AND COUNTERCLAIM RELATED THERETO) BROUGHT BY MORTGAGEE ASSERTING AN EVENT OF DEFAULT HEREUNDER, ANY AND EVERY RIGHT IT MAY HAVE TO A TRIAL BY JURY. NOTHING IN THIS SECTION SHALL PREVENT OR PROHIBIT MORTGAGOR FROM INSTITUTING OR MAINTAINING A SEPARATE ACTION AGAINST MORTGAGEE WITH RESPECT TO ANY ASSERTED CLAIM.

(l)    New York Provisions.    Mortgagor hereby makes the following statement: "This Mortgage does not cover real property principally improved or to be improved by one (1) or more structures containing in the aggregate not more than six (6) residential dwelling units, each having its own separate cooking facilities." The covenants and conditions contained herein, other than those included in the New York Statutory Short Form of Mortgage, shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

24

IN WITNESS WHEREOF, this Mortgage has been duly executed and delivered by Mortgagor and Mortgagee.

ONE POINT STREET, INC.

By: _____
R. Karim Chowdhury, Vice-President

USA COMMERCIAL MORTGAGE COMPANY, on behalf of itself and as agent for one or more others

By: _____
Joseph D. Milanowski, President

STATE OF NEVADA            )
                           )ss
COUNTY OF CLARK            )

On the ___ day of January, 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared Joseph D. Milanowski, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity shown, and that by his signature on the instrument, the persons and entities upon behalf of which he acted, executed the instrument.


_____
Notary Public

25

STATE OF NEW YORK )

)ss

COUNTY OF WESTCHESTER )

On the 12th day of January, 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared R. Karim Chowdhury, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity shown, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Lekhram Boodhoo_

Notary Public

LEKHRAM BOODHOO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 03-4993375
QUALIFIED IN BRONX COUNTY
COMMISSION EXPIRES MARCH 16, 2006

OFFICIAL SEAL
LEKHRAM BOODHOO
NOTARY PUBLIC
STATE OF NEW YORK
Comm. Expires March 16, 2006

26

## EXHIBIT "A"

### MORTGAGEES

| | Names | Amount |
|---|---|---|
| 1. | Joseph R. Agliolo Trustee of The 1991 Agliolo Revocable Living Trust | $50,000 |
| 2. | Stanley Alexander Trustee of the Stanley Alexander Trust | $100,000 |
| 3. | Rod Arbogast & Donna Arbogast Trustees of the Arbogast Family Trust | $250,000 |
| 4. | B.E.A. Family, Inc., a Nevada corporation | $50,000 |
| 5. | Robert J. Asselin & Mary E. Asselin Trustees of the 1994 Robert Asselin & Mary Asselin Family Trust | $50,000 |
| 6. | Laila Aziz, a single woman | $50,000 |
| 7. | Peter L. Backes Trustee of the Peter L. Backes Trust | $50,000 |
| 8. | William A. Banos & Angel J. Banos Co-Trustees of the Mirtha M. Banos Family Trust F/B/O William A. Banos, as his undivided one-half interest & Angel J. Banos, as his undivided one-half interest | $95,000 |
| 9. | Frank J. Belmonte Trustee of the Belmonte Family Trust | $50,000 |
| 10. | Jay Betz & Joy Betz Trustees of the Betz Family Trust | $50,000 |
| 11. | Thomas E. Bishofberger & Betty T. Bishofberger Trustees of the Bishofberger Restated Family Trust U/A 9/8/95 | $50,000 |
| 12. | Daryl L. Blanck & Yvonne M. Blanck Trustees of the Daryl Blanck & Yvonne Blanck Trust dated 3/23/94 | $50,000 |
| 13. | James R. Bonfiglio & Donna M. Bonfiglio Trustees of the Bonfiglio Family Limited Partnership | $100,000 |
| 14. | John Borkoski & Kathleen Borkoski, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 15. | Kathleen K. Borkoski Trustee of the Austin John Borkoski Trust dated 12/10/92 | $50,000 |
| 16. | Kathleen K. Borkoski Trustee of the Kali Gene Borkoski Trust dated 12/21/89 | $75,000 |
| 17. | Charles E. Borom & Lanna G. Borom, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 18. | Helena A. Bova, a single woman | $50,000 |
| 19. | Kathleen A. Boyce Trustee of the Boyce 1989 Trust dated 6/12/89 | $200,000 |
| 20. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $50,000 |
| 21. | June Brehm, a unmarried woman | $50,000 |
| 22. | Michael M. Bright & Anne E. Bright, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 23. | Gary S. Brill Trustee of the Gary S. Brill Living Trust dated 9/21/83 as amended & restated on 3/20/88 | $100,000 |
| 24. | Penny L. Brock Trustee of the Brock Family Trust dated 5/25/95 | $50,000 |
| 25. | Marlo Brooke | $60,000 |
| 26. | Martin E. Brown Trustee of the Martin E. Brown Family Survivor's Trust & Exempt Trust dated 3/21/95 | $100,000 |

| | | |
|---|---|---|
| 27. | R. Gene Brown & Jagoda Brown, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 28. | Raymond E. Brown, a single man dealing with his sole & separate property | $140,000 |
| 29. | Bruce Bryen, an unmarried man transferrable on death to Erica Bryen, an unmarried woman | $50,000 |
| 30. | First Savings Bank Custodian For Bruce Bryen IRA | $50,000 |
| 31. | Janet Buckalew Trustee of the Buckalew Trust | $100,000 |
| 32. | Neil G. Buckwald Trustee of the Buckwald Revocable Trust dtd 2/11/92 | $50,000 |
| 33. | Cynthia Burdige Trustee of the Cynthia Burdige Trust U/A dated 4/13/00 | $100,000 |
| 34. | Donald E. Burt & Connie L. Cejmer Trustees of the Burt Family Trust | $50,000 |
| 35. | Eugene W. Cady & Sandra L. Cady Trustees of the Eugene W. Cady & Sandra L. Cady Trust dated 9/24/85 | $50,000 |
| 36. | Ralph F. Cameron Trustee of the Cameron Survivors Trust dtd 12/22/97 For the Benefit of his children John Cameron & Katherine Cameron-Hoffman | $50,000 |
| 37. | Peter W. Capone & Deidre D. Capone, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 38. | AJC Realty & Consulting Inc. | $50,000 |
| 39. | Jennifer Chun, an unmarried woman & Vernon Chun, a married man dealing with his sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 40. | Stella P. Ciadella Trustee of the Ciadella Living Trust dated 2/8/99 | $150,000 |
| 41. | Billie R. Cislaghi Trustee of the Billie R. Cislaghi Trust | $100,000 |
| 42. | Jack R. Clark & Linda C. Reid, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 43. | Rosanne L. Clark, a single woman | $50,000 |
| 44. | Raymond J. Clay Jr. & Joan Marie Clay, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 45. | George S. Cohan Trustee of the George S. Cohan & Natalie H. Cohan Family Trust dated 4/1/03 | $200,000 |
| 46. | Pamela Conboy, an unmarried woman | $50,000 |
| 47. | Harold Corcoran & Joyce Corcoran, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 48. | James B. Corison Trustee of the James B. Corison Trust dated 12/3/98 | $50,000 |
| 49. | Jacqueline Corkill, an unmarried woman & David Corkill, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 50. | Sam Costanza Trustee of the Costanza 1987 Survivor's Trust dtd 3/12/87 | $50,000 |
| 51. | Sam Costanza Trustee of The Costanza 1987 Decedent's Trust | $50,000 |
| 52. | David C. Coulson & Maria V. Ardila-Coulson, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 53. | Melanie Cowan, a single woman | $50,000 |
| 54. | Gary W. Crowe & Susan R. Crowe Trustees of the Crowe 1989 Family Revocable Trust dated 6/29/89 | $100,000 |

28

| | | |
|---|---|---|
| 55. | Chesley R. Davies & Mary E. Davies, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 56. | Chesley R. Davies Trustee of the Chesley R. Davies, MD Chtd. PSP | $100,000 |
| 57. | Cynthia G. Davis Trustee of the Cynthia G. Davis Living Trust | $50,000 |
| 58. | Martin A. Davis & Virginia Lee Davis Trustees of the Davis Family 2000 Trust | $100,000 |
| 59. | Evie Dean Trustee of the Evie Dean 2000 Trust dated 12/12/00 | $150,000 |
| 60. | Tracy A. DeBerry | $50,000 |
| 61. | Norma M. Deull, an unmarried women | $50,000 |
| 62. | Pat A. Dolce, a married man dealing with his sole & separate property | $100,000 |
| 63. | Arthur T. Donaldson, a married man dealing with his sole & separate property | $300,000 |
| 64. | Panagiotis Dovanidis, a single man & Dimitra Dovanidou, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 65. | Daniel Drubin & Laura Drubin, husband & wife, as joint tenants with right of survivorship | $70,000 |
| 66. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 67. | Edward D. Earl, an unmarried man | $100,000 |
| 68. | First Savings Bank Custodian For Mary H. Earp IRA | $80,000 |
| 69. | Robert Roy Ecker, a single man | $50,000 |
| 70. | Allan R. Eisenbach & Jayne M. Eisenbach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 71. | Benjamin F. Elias & Sophie Elias Trustees of the Benjamin F. Elias & Sophie Elias Living Trust dated 4/24/00 | $65,000 |
| 72. | Donna M. Elias Successor Trustee of the Elias Family Trust dated 5/19/04 | $50,000 |
| 73. | Robert Essaff & Cindy H. Essaff Trustees of the Essaff Family Trust dated 6/18/02 | $100,000 |
| 74. | Una B. Essaff Trustee of the Una B. Essaff Trust dated 10/23/96 | $50,000 |
| 75. | Richard David Estevez & Melinda Estevez, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76. | Ian A. Falconer, a single man | $50,000 |
| 77. | Julia Farrah Trustee of the Julia Farrah Revocable Living Trust dtd 10/8/92 | $100,000 |
| 78. | Ronald G. Finkel & Karen B. Finkel, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 79. | Grant J. Fischer, a married man dealing with his sole & separate property | $50,000 |
| 80. | First Savings Bank Custodian For Anne Flannery IRA | $50,000 |
| 81. | Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $130,000 |
| 82. | Kevin L. Foster & Allison J. Foster Trustees of the Kevin & Allison Foster Family Trust dated 1/20/99 | $150,000 |
| 83. | Gregory L. Freeman Trustee of the Lillian M. Freeman Trust dtd 5/31/85 | $55,000 |
| 84. | Mary Betty French, an unmarried woman transferrable on death to Joyce A. Abraham | $50,000 |

29

| | | |
|---|---|---|
| 85. | Christian Geisser & Hildegard Geisser, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 86. | Roger L. Ghormley & Frances L. Ghormley, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 87. | James J. Goertz & Phyllis A. Goertz Trustees of the Goertz Family Trust dated 1/31/03 | $50,000 |
| 88. | Gonska Foundation, LLC, a Nevada limited liability company | $50,000 |
| 89. | John Goode, a widow | $50,000 |
| 90. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $150,000 |
| 91. | Jean Greco Trustee of the Jean V. Greco Living Trust dated 1/22/02 | $50,000 |
| 92. | First Savings Bank Custodian for Michael H. Greeley IRA | $50,000 |
| 93. | David M. Greenblatt, an unmarried man transferrable on death to Karl Greenblatt | $100,000 |
| 94. | Dixie Gross Trustee of the Dixie B. Gross Revocable Trust | $100,000 |
| 95. | Martin N. Haas Trustee of the Martin N. Haas Living Trust dtd 8/7/03 | $100,000 |
| 96. | Thomas Halvorson & Joanne Halvorson, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 97. | MLH Family Investment Limited, a Texas company | $250,000 |
| 98. | Leslie Harkins & Linda Harkins, Trustees of the Harkins 2001 Revocable Trust dated 8/23/01 | $50,000 |
| 99. | T. Claire Harper Trustee of the Harper Family Trust dated 2/28/84 | $50,000 |
| 100. | Kay Hart, an unmarried woman | $50,000 |
| 101. | Harold G. Hartwell, an unmarried man | $50,000 |
| 102. | Kimberly Havins Trustee of the Paepae Estate Trust dated 05/01/00 | $150,000 |
| 103. | Stephen L. Hawley & Sidney A. Hawley Trustees of the Hawley Family Trust dated 8/15/96 | $100,000 |
| 104. | Linda M. Herdman Trustee for the Linda M. Herdman Family Trust dated 12/11/03 | $100,000 |
| 105. | Marilyn Hilborn Trustee of the Marilyn Hilborn Trust dated 11/18/93 | $50,000 |
| 106. | Michael Hilgenberg & Shellie Hilgenberg, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 107. | William J. Hinson, Jr., an unmarried man | $50,000 |
| 108. | James A. Hodgson & Cynthia H. Hodgson Trustees of the Hodgson Loving Trust dated 1/12/90 | $100,000 |
| 109. | Wallace Hollander Trustee of the P & W Trust dated 8/19/93 | $50,000 |
| 110. | Delwin C. Holt, an unmarried man | $50,000 |
| 111. | Homfeld II, LLC, a Florida limited liability company | $200,000 |
| 112. | First Savings Bank Custodian for Sylvia Hooks IRA | $50,000 |
| 113. | Patrick J. Horgan, a single man | $50,000 |
| 114. | Rochelle Hornsby Trustee of the Rochelle Hornsby Trust dated 1/92 | $50,000 |
| 115. | Rodney G. Huppi & Virginia M. Huppi Trustees of the Huppi Trust dated 1/30/92 | $50,000 |
| 116. | Richard Ianni, an unmarried man | $100,000 |

30

117.  John A. Ippolito & Patricia M. Ippolito Trustees of the Ippolito Family
      Trust dated 8/31/89                                                    $75,000
118.  Janet P. Johnson & Charles E. Johnson Trustees of the Janet P. Johnson
      Living Trust dated 7/15/04                                             $100,000
119.  Delbert T. Johnston, Jr. & Rebecca J. Johnston Trustees of the Johnston
      Estate Revocable Trust dated 5/17/94                                   $50,000
120.  Everett H. Johnston Trustee of the Everett H. Johnston Family Trust dated
      1/24/90                                                                $100,000
121.  Steven B. Kaplan, a unmarried man                                     $150,000
122.  William Kayser & Kristie Kayser, husband & wife, as joint tenants with
      right of survivorship                                                  $70,000
123.  Arthur E. Kebble & Thelma M. Kebble Trustees of the Arthur E. Kebble
      & Thelma M. Kebble Family Trust dated 5/19/95                          $50,000
124.  Mohammad Kianjah                                                       $50,000
125.  Lawrence A. Kirkham & Kathleen B. Sanginiti Trustees of the Kirkham
      & Sanginiti Trust dated 2/29/96                                        $50,000
126.  Norman Kiven, a married man dealing with his sole & separate property  $50,000
127.  Freedom Properties, Inc.                                              $50,000
128.  Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust
      dated 10/10/86                                                         $50,000
129.  Gregor Kloenne & Otilla M. Kloenne Trustees of the Kloenne Living Trust
      dated 3/11/87                                                          $75,000
130.  Kenneth W. Koerwitz & Jan Case Koerwitz Trustees of the Kenneth W.
      Koerwitz & Jan Case Koerwitz Family Trust dated 5/13/03                $50,000
131.  David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family
      Revocable Trust under agreement dated 12/9/99                          $50,000
132.  Ronald Kreykes & Linda Kreykes, husband & wife, as tenants in common  $200,000
133.  Trust Company of the Pacific Custodian for Arthur I. Kriss IRA         $75,000
134.  Marshall D. Kubly & Kathleen Kubly, husband & wife, as joint tenants
      with right of survivorship                                             $60,000
135.  Mary Kunis-Bidegary Trustee of the Desert Rose Estate Trust
      dated 12/01/04                                                         $50,000
136.  Dina Ladd, a single woman                                             $50,000
137.  Paul A. Stewart Trustee, for Pulmonary Associates Profit Sharing Plan
      FBO Robert M. Lampert Restated dated 01/01/03                          $50,000
138.  Floyd H. Lander Trustee of the Floyd H. Lander Living Trust U-A 4/23/99 $100,000
139.  Raymond Nunez & Sandra L. Lawson Trustees of the The Raymond &
      Sandra Nunez Family Trust                                              $50,000
140.  Martin N. Leaf, an unmarried man                                      $50,000
141.  Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann
      Family Trust 4/19/96                                                   $50,000
142.  First Regional Bank for the Benefit of Irwin Levine IRA                $100,000
143.  James H. Lidster & Phyllus M. Lidster Trustees of the James H. Lidster
      Family Trust dated 1/20/92                                             $50,000

31

| | | |
|---|---|---|
| 144. | Jay Lim & Kim M. Lim, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 145. | Daniel Lisek, Claire Lisek & Gayle Harkins Trustees of the Lisek Family Trust dated 1/29/92 | $50,000 |
| 146. | Douglas Littrell & Joani Littrell, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 147. | Area 2 L.L.C., a Nevada limited liability company | $50,000 |
| 148. | William Lukasavage & Joanne Lukasavage, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 149. | The Church of Movement of Spiritual Inner Awareness | $100,000 |
| 150. | Barbara Susan Malkoff, a single woman | $100,000 |
| 151. | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 152. | JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000 |
| 153. | Don P. Marshall Trustee of the Don P. Marshall Trust dated 7/18/95 | $50,000 |
| 154. | Joseph V. Marson & Veronica M. Marson Trustees of the Marson Family Trust dated 1/18/95 | $350,000 |
| 155. | Jerrold T. Martin, a single man & James T. Martin, a married man dealing with his sole & separate property, as joint tenant with right of survivorship | $60,000 |
| 156. | Jayem Family LP, a Nevada limited partnership | $100,000 |
| 157. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 158. | Sandra O. Masters Trustee of the Charles T. Masters & Sandra O. Masters Family Trust dated 10/9/92 | $100,000 |
| 159. | Martin W. McColly & Carmen Garcia McColly Trustees of the Martin W. McColly & Carmen Garcia McColly Revocable Trust Agreement dated 5/27/03 | $100,000 |
| 160. | First Savings Bank Custodian for Gary McMahon SEP IRA | $50,000 |
| 161. | Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000 |
| 162. | Bradford A. McMullin, a single man | $75,000 |
| 163. | William L. McQuerry Trustee of the McQuerry Family Partnership | $100,000 |
| 164. | Rudy Leroy McTee & Sharon Kaye McTee Trustees of the R & S McTee 1995 Trust dated 4/20/95 | $50,000 |
| 165. | Robert E. Meldrum, a married man dealing with his sole & separate property | $50,000 |
| 166. | D.G. Menchetti Trustee of the D.G. Menchetti LTD Pension Plan | $200,000 |
| 167. | Jack R. Mennis & Susan A. Mennis, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 168. | ACS Properties, Inc. | $100,000 |
| 169. | Michaelian Holdings, LLC, a Nevada limited liability company | $100,000 |
| 170. | Connie Mihos & Ivan Loebs, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 171. | Irene M. Miller Trustee of the Irene M. Miller Revocable Trust dated 12/14/00 | $50,000 |

| | | |
|---|---|---|
| 172. | Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $50,000 |
| 173. | Katherin Mirzaian, an unmarried woman | $100,000 |
| 174. | Monighetti, Inc., a Nevada corporation | $50,000 |
| 175. | Angela Mosinskis Trustee of the Angela G. Mosinskis Family Trust dated 11/18/02 | $50,000 |
| 176. | GSL Investments LLC, a Nevada limited liability company | $50,000 |
| 177. | John F. Mount & L. Kay Schultz Mount Trustees of the John & Kay Mount Living Trust dated 9/25/95 | $100,000 |
| 178. | Herbert Mueller & Linda Mueller Trustees of the Herbert & Linda Mueller Trust dated 2/10/93 | $50,000 |
| 179. | Roger Najarian & Janice Najarian Trustees of The Najarian Family Revocable Living Trust dated 7/9/04 | $50,000 |
| 180. | Lelia Yvonne Needens Trustee of the Needens 1997 Living Trust | $75,000 |
| 181. | Alan Newman & Judith Wolfe-Newman Trustees of the Alan Newman & Judith Wolfe-Newman Family Trust dated 7/19/04 | $50,000 |
| 182. | Freda Newman Trustee of the Freda Newman Trust dated 7/26/84 | $50,000 |
| 183. | Larry J. Newman & Elsie D. Newman Trustees of the Newman Family Trust dated 9/30/97 | $50,000 |
| 184. | Marvin Lynn Nicola Trustee of the Marvin Lynn Nicola Family Trust dated 6/13/78 | $50,000 |
| 185. | Allen M. Nirenstein & Dorothy H. Nirenstein Trustees of the Allen M. Nirenstein & Dorothy H. Nirenstein 1992 Revocable Trust dated 3/4/92 | $50,000 |
| 186. | John Nix & Lisa Nix, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 187. | Stanley M. Novara Trustee under The Stanley M Novara Family Trust dated 11/12/04 | $50,000 |
| 188. | John E. O'Riordan & Sonhild A. O'Riordan, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 189. | Jay A. Pandaleon & Leigh B. Pandaleon Co-trustees of the Jay A. Pandaleon Profit Sharing Trust dated 1/1/75 | $50,000 |
| 190. | Robert Patterson-Rogers & Joyce Patterson-Rogers, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 191. | Henry E. Pattison & Ruth V. Pattison, as joint tenants with right of survivorship | $50,000 |
| 192. | Jennefer C. Peele Trustee of the Peele Spousal Trust dated 2/10/87 | $50,000 |
| 193. | Shimon Peress & Hannah Peress Trustees of the Shimon Peress & Hannah K. Peress Trust dated 4/17/01 | $50,000 |
| 194. | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 195. | Nicholas Perrone Trustee of the Nicholas Perrone Trust dated 7/12/99 | $200,000 |
| 196. | Karen Petersen Tyndall Trustee of the Karen Petersen Tyndall Trust dated 3/9/94 | $75,000 |
| 197. | Andrew Peterson & Sharon Peterson Trustees of the Andrew R. Peterson & Sharon Peterson 1991 Living Trust dated 11/22/91 | $50,000 |

33

| | | |
|---|---|---|
| 198. | Vickie Pieper, an unmarried woman | $50,000 |
| 199. | Michael E. Pile, a single man | $50,000 |
| 200. | Sonja Plesko | $70,000 |
| 201. | Stephen Polacheck Trustee of the Polacheck & Associates, Inc. Profit Sharing Plan dated 2/20/73 | $100,000 |
| 202. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000 |
| 203. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 204. | Michael J. Pulley & Deborah A. Pulley Trustees of the Pulley Living Trust dated 4/30/01 | $50,000 |
| 205. | Dennis Raggi, a married man dealing with his sole & separate property | $100,000 |
| 206. | First Savings Bank FBO Robert E. Ray IRA | $50,000 |
| 207. | Elan Reddell Trustee of the Elan Reddell Revocable Living Trust dated 8/4/03 | $100,000 |
| 208. | First Savings Bank Custodian For Linda S. Reed IRA | $65,000 |
| 209. | First Savings Bank Custodian for Thomas Rehn IRA | $50,000 |
| 210. | Greg Revers, a married man dealing with his sole & separate property | $50,000 |
| 211. | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $100,000 |
| 212. | Cassandra Robbins, an unmarried woman | $50,000 |
| 213. | Judd Robbins & Lin Van Heuit-Robbins Trustee of the Tesseract Trust dated 3/31/04 | $50,000 |
| 214. | George A. Roberts & Sharon D. Roberts Trustees of the Roberts Trust dated 3/11/03 | $150,000 |
| 215. | Sarah R. Roberts Trustee of the Roberts Family Trust dated 4/28/04 | $50,000 |
| 216. | Robert Roeder & Patricia Roeder, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 217. | James William Rogers, an unmarried man | $100,000 |
| 218. | First Savings Bank Custodian For L. Earle Romak IRA | $200,000 |
| 219. | Toby Lee Rosenblum Trustee of the Toby Lee Rosenblum Trust dated 9/11/95 | $100,000 |
| 220. | Arnold Rosenthal, a single man | $50,000 |
| 221. | David Rosner Trustee of the David Rosner Revocable Trust dtd 01/05/05 | $50,000 |
| 222. | Burton M. Sack, a married man dealing with his sole & separate property | $250,000 |
| 223. | Taylor Samuels Trustee of the Samuels 1999 Trust | $100,000 |
| 224. | First Savings Bank Custodian For Randy Sanchez IRA | $50,000 |
| 225. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 226. | Kenneth B. Schulz & Mary Kay Bryan-Schulz, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 227. | Walter E. Seebach Trustee of the Walter E. Seebach Living Trust dated 11/1/85 | $100,000 |
| 228. | David W. Sexton & Pamela K. Sexton, husband & wife, as joint tenants with right of survivorship | $50,000 |

| | | |
|---|---|---:|
| 229. | Andrew H. Shahin Trustor & Trustee of The Andrew H. Shahin Trust dated 6/6/94 | $50,000 |
| 230. | Louis H. Shahin Trustor & Trustee of The Louis H. Shahin Trust dated 6/9/94 | $50,000 |
| 231. | Rifqa Shahin Trustor & Trustee of The Rifqa Shahin Trust 6/8/94 | $50,000 |
| 232. | Sandra A. Shankle, an unmarried woman | $50,000 |
| 233. | H. Lee Shapiro, a single man | $100,000 |
| 234. | First Savings Bank Custodian For James W. Shaw IRA | $50,000 |
| 235. | Salvatore Siciliano, an unmarried man | $200,000 |
| 236. | Dennis Sipiorski & Donna Sipiorski, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 237. | Emery T. Smith & Mary C. Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 238. | Oliver F. Smith Trustee of the Oliver F. Smith Incorporated Profit Sharing Plan | $50,000 |
| 239. | Steven M. Smith Trustee of the Steven M. Smith 1999 Living Trust Agreement dated 4/7/99 | $50,000 |
| 240. | Thomas N. Smith & Deborah L. Bertossa, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 241. | Herbert Sonnenklar & Norma R. Sonnenklar, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 242. | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $60,000 |
| 243. | T. Dwight Sper & Bonnie J. Sper Trustees of the T.D.S. Revocable Family Trust dated 9/29/98 | $100,000 |
| 244. | Gilbert L. Sperry Trustee of the Sperry Family Trust UDO 4/15/97 | $50,000 |
| 245. | Peter E. Sprock Trustee of the Peter E. Sprock 2001 Trust | $50,000 |
| 246. | Mark A. Stephens | $75,000 |
| 247. | Michael D. Stewart & Mary Jude Stewart Trustees of the Stewart Family Trust dated 1/15/98 | $100,000 |
| 248. | Shiqi Charlie Sun & Jianzhen Jean Sun, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 249. | Janie C. Tammadge, a married woman dealing with her sole separate property | $250,000 |
| 250. | Preswick Corp., a Nevada corporation | $350,000 |
| 251. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 252. | William Taylor & Lyla Taylor Trustees of the Taylor Family Trust dated 12/23/86 | $50,000 |
| 253. | Gary A. Thibault & Sandra C. Thibault, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 254. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 255. | Louis H. Turner & Shirley M. Turner Trustees of the Louis H. & Shirley M. Turner Family Trust dated 9/9/97 | $50,000 |
| 256. | Thomas Turner & Judy K. Turner Trustees of the T.J. Trust dated 7/24/97 | $50,000 |

| | | |
|---|---|---|
| 257. | Ann Ulfelder & Leonard Ulfelder, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 258. | Pensco Trust Co. Inc. Custodian For Robert William Ulm IRA | $50,000 |
| 259. | USA Capital First Trust Deed Fund | $965,000 |
| 260. | USA Commercial Mortgage | $325,000 |
| 261. | Judy A. Van Winkle Trustee of the Judy A. Van Winkle 1994 Trust dated 3/25/94 | $50,000 |
| 262. | Marietta Voglis, a married woman dealing with her sole & separate property | $65,000 |
| 263. | Madeline P. Von Tagen Trustee of the Von Tagen Trust dated 5/2/96 | $50,000 |
| 264. | Morningstar Limited Partnership | $50,000 |
| 265. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust under Trust dated 10/4/99 | $125,000 |
| 266. | Adrian P. Walton & Amy J. Walton, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 267. | Damon Paul Walton & Rebecca Jean Walton, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 268. | Delbert Watkins & Mary Ann Watkins Trustees of the Watkins Family Trust dated 7/24/92 | $50,000 |
| 269. | Robert S. Watson & Joyce A. Watson, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 270. | Dick Wiechers Trustee of the Wiechers Family Trust | $100,000 |
| 271. | Eugene C. Wiehe Trustee of the Eugene C. Wiehe Trust dated 10/31/85 | $50,000 |
| 272. | David R. Wilson, an unmarried man | $50,000 |
| 273. | Carmel Winkler Trustee of the Winkler Family Trust UTD 3/13/86 | $50,000 |
| 274. | Rudolf Winkler & Carmel Winkler Trustees for the benefit of Winkler Family Trust dated 3/13/86 | $50,000 |
| 275. | Arthur Withop & Thelma Withop Trustees of the Kamelot Trust dated 3/9/99 | $50,000 |
| 276. | Stanley C. Witt & Lois J. Witt Trustees of the Stanley C. Witt & Lois J. Witt Revocable Trust dated 4/13/92 | $50,000 |
| 277. | Robert R. Wright & Betty M. Wright Trustees of the Wright Trust | $50,000 |
| 278. | Ken Wyatt Enterprises, Inc., a Nevada corporation | $50,000 |
| 279. | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $100,000 |
| 280. | Spectrum Capital, LLC, a California limited liability company | $50,000 |
| 281. | Bruce A. Zebott & Sally R. Zebott Trustees of the Bruce & Sally Zebott Living Trust dated 9/28/04 | $50,000 |
| 282. | David A. Zook Trustee of the Zook Revocable Living Trust for the benefit of Emily J. Zook (a minor) | $50,000 |
| | TOTAL | $23,000,000 |

EXHIBIT "B"

DESCRIPTION OF PROPERTY

**Parcel A:**      (Section 2, Block 2114, Lots 20-35)

All that certain plot, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being bounded and described as follows:

Beginning at the corner formed by the intersection of the Southerly side of Point Street with the Westerly side of Ravine Avenue;
Running thence along the Westerly side of Ravine Avenue, South 11° 58' 47" West 180.67 feet to the Northerly line of the land now or formerly of Clyne P. Starke;
Thence Westerly along the Northerly line of said land now or formerly of Clyne P. Starke and City of Yonkers, North 72° 43' 13" West 241.76 feet to the Easterly side of Glenwood Terrace;
Thence Northerly along the Easterly side of Glenwood Terrace along a curve to the right having a radius of 3953.00 feet, a distance of 184.89 feet to the Southerly side of Point Street;
Thence along the Southerly side of Point Street, South 72° 43' 13" East 267.60 feet to the point or place of beginning.

**Parcel B:**      (Section 2, Block 2114, Lot 17)

All that certain piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, bounded and described as follows:

Beginning at a point on the Easterly side of lands of the New York Central Railroad Company said Easterly side of said lands is intersected or would be intersected by the prolongation Westerly of the Southerly side of Point Street; and
Running thence South 72° 43' 13" East, along the Southerly side of, or the prolongation Westerly of, the Southerly side of Point Street 25.55 feet to the Westerly side of Glenwood Terrace;
Thence Southerly along the Westerly line of Glenwood Terrace on a curve to the left having a radius of 3,978 feet an arc distance of 184.84 feet to the lands now or formerly of the City of Yonkers;
Thence North 72° 43' 36" West, along said lands now or formerly of the City of Yonkers, 25.82 feet to a point in the Easterly side of the lands of The New York Central Railroad Company;
Thence Northerly, along the Easterly side of lands of The New York Central Railroad Company on a curve to the right having a radius of 4,003 feet an arc distance of 184.77 feet to the point or place of beginning.

**Parcel C:**      (Section 2, Block 2620, Lots 35 and 40; Section 2, Block 2625, Lots 15, 17, 21
                     and 23; and Section 2, Block 2630, Lots 1, 2, 3 and 10)

All that certain polt, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, bounded and described as follows:

37

Beginning at a point of intersection of the Westerly side of Polychrome Place formerly Alexander Street with the Westerly prolongation of the centerline of Babcock Place;
Running thence along the Westerly prolongation of the center line of Babcock Place, North 81° 29' 30" West 156.41 feet to the Easterly line of land conveyed by Phelps Dodge Industries, Inc. to Samuel Cohen, Sally Cohen, Michael Cohen and Arleen Neustein by deed dated 7/16/76 and recorded in the Westchester County Clerk's Office on 8/3/76 in Deed Liber 7342 cp 797;
Running thence along said land conveyed, North 10° 18' 30" East 590.98 feet; North 81° 29' 30" West 152.79 feet; and South 14° 40' 08" West 35.21 feet to the point on the Westerly prolongation of the Southerly line of Lamartine Avenue;
Thence Westerly along the Westerly prolongation of the Southerly side of Lamartine Avenue, North 81° 29' 30" West 516.42 feet to the Pierhead and Bulkhead line established by the US War Department on July 11, 1919;
Thence along said Pierhead and Bulkhead line; North 13° 02' 36" East 1,838.73 feet to a point on the Westerly prolongation of the Northerly line of a Grant of land under water granted to the India Rubber and Gutta Percha Insulating Company by the State of New York by Letters Patent dated October 31, 1898 and recorded in the Office of the Secretary of State in Book of Patents No. 50 at page 203;
Thence along the Northerly line of said grant, South 76° 48' 38" East 611.48 feet to the Westerly line of the New York Central Railroad (Hudson Division);
Thence along land of the Railroad the following courses and distances:
In a Southerly direction along a curve to the left having a radius of 4066.00 feet a distance of 224.47 feet; South 18° 50' 15" West 45.65 feet; South 81° 14' 40" East 12.85 feet; South 10° 09' 46" West 137.98 feet; South 10° 49' 13" West 174.04 feet; South 17° 56' 37" West 167.48 feet; South 01° 19' 29" West 392.15 feet; South 09° 08' 17" West 157.55 feet; South 03° 42' 00" East 140.01 feet; and South 01° 48' 22" West 73.26 feet to the Northeasterly corner of land described in Liber 8922 page 54;
Thence along said land the following courses and distances:
South 86° 25' 30" West 93.11 feet and South 10° 26' 00" West 506.56 feet;
Thence South 10° 36' 00" West, along the Westerly line of lands now or formerly of Babcock Place Associates, a distance of 260.23 feet;
Thence South 81° 29' 30" East, along the Southerly line of lands now or formerly of Babcock Place Associates, a distance of 115.68 feet to the Westerly side of Polychrome Place;
Thence South 08° 30' 30" West, along the Westerly side of Polychrome Place, a distance of 50.00 feet to the point and place of beginning.

Together with the benefits and subject to the burdens of the agreements between Habirshaw Wire Company and New York Central and Hudson River Railroad in Liber 1983 cp 364 and Liber 2022 cp 64 with regard to the erection and maintenance of a footbridge from Parcel "C" to Parcel "B" above described.

Address Supplement

The street addresses of the parcels comprising the Real Property are:

76 Point Street, Yonkers, New York - Westchester County - Section 2, Block 2114, Lot 17;

60 Point Street, Yonkers, New York - Westchester County - Section 2, Block 2114, Lot 20,35;

Babcock Place, Yonkers, New York - Westchester County - Section 2, Block 2620, Lot 35;

39 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2620, Lot 40;

398 Water Street, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 15;

40 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 17;

41 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 21;

41 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 23;

42 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 1;

422 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 2;

423 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 3;

41 Water Grant-Rear, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 10

## EXHIBIT "B"

### DESCRIPTION OF PROPERTY

**Parcel A:**      (Section 2, Block 2114, Lots 20-35)

All that certain plot, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being bounded and described as follows:

Beginning at the corner formed by the intersection of the Southerly side of Point Street with the Westerly side of Ravine Avenue;
Running thence along the Westerly side of Ravine Avenue, South 11° 58' 47" West 180.67 feet to the Northerly line of the land now or formerly of Clyne P. Starke;
Thence Westerly along the Northerly line of said land now or formerly of Clyne P. Starke and City of Yonkers, North 72° 43' 13" West 241.76 feet to the Easterly side of Glenwood Terrace;
Thence Northerly along the Easterly side of Glenwood Terrace along a curve to the right having a radius of 3953.00 feet, a distance of 184.89 feet to the Southerly side of Point Street;
Thence along the Southerly side of Point Street, South 72° 43' 13" East 267.60 feet to the point or place of beginning.

**Parcel B:**      (Section 2, Block 2114, Lot 17)

All that certain piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, bounded and described as follows:

Beginning at a point on the Easterly side of lands of the New York Central Railroad Company said Easterly side of said lands is intersected or would be intersected by the prolongation Westerly of the Southerly side of Point Street; and
Running thence South 72° 43' 13" East, along the Southerly side of, or the prolongation Westerly of, the Southerly side of Point Street 25.55 feet to the Westerly side of Glenwood Terrace;
Thence Southerly along the Westerly line of Glenwood Terrace on a curve to the left having a radius of 3,978 feet an arc distance of 184.84 feet to the lands now or formerly of the City of Yonkers;
Thence North 72° 43' 36" West, along said lands now or formerly of the City of Yonkers, 25.82 feet to a point in the Easterly side of the lands of The New York Central Railroad Company;
Thence Northerly, along the Easterly side of lands of The New York Central Railroad Company on a curve to the right having a radius of 4,003 feet an arc distance of 184.77 feet to the point or place of beginning.

**Parcel C:**      (Section 2, Block 2620, Lots 35 and 40; Section 2, Block 2625, Lots 15, 17, 21 and 23; and Section 2, Block 2630, Lots 1, 2, 3 and 10)

All that certain polt, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, bounded and described as follows:

28

Beginning at a point of intersection of the Westerly side of Polychrome Place formerly Alexander Street with the Westerly prolongation of the centerline of Babcock Place;

Running thence along the Westerly prolongation of the center line of Babcock Place, North 81° 29' 30" West 156.41 feet to the Easterly line of land conveyed by Phelps Dodge Industries, Inc. to Samuel Cohen, Sally Cohen, Michael Cohen and Arleen Neustein by deed dated 7/16/76 and recorded in the Westchester County Clerk's Office on 8/3/76 in Deed Liber 7342 cp 797;

Running thence along said land conveyed, North 10° 18' 30" East 590.98 feet; North 81° 29' 30" West 152.79 feet; and South 14° 40' 08" West 35.21 feet to the point on the Westerly prolongation of the Southerly line of Lamartine Avenue;

Thence Westerly along the Westerly prolongation of the Southerly side of Lamartine Avenue, North 81° 29' 30" West 516.42 feet to the Pierhead and Bulkhead line established by the US War Department on July 11, 1919;

Thence along said Pierhead and Bulkhead line; North 13° 02' 36" East 1,838.73 feet to a point on the Westerly prolongation of the Northerly line of a Grant of land under water granted to the India Rubber and Gutta Percha Insulating Company by the State of New York by Letters Patent dated October 31, 1898 and recorded in the Office of the Secretary of State in Book of Patents No. 50 at page 203;

Thence along the Northerly line of said grant, South 76° 48' 38" East 611.48 feet to the Westerly line of the New York Central Railroad (Hudson Division);

Thence along land of the Railroad the following courses and distances:

In a Southerly direction along a curve to the left having a radius of 4066.00 feet a distance of 224.47 feet; South 18° 50' 15" West 45.65 feet; South 81° 14' 40" West 12.85 feet; South 10° 09' 46" West 137.98 feet; South 10° 49' 13" West 174.04 feet; South 17° 56' 37" West 167.48 feet; South 01° 19' 29" West 392.15 feet; South 09° 08' 17" West 157.55 feet; South 03° 42' 00" East 140.01 feet; and South 01° 48' 22" West 73.26 feet to the Northeasterly corner of land described in Liber 8922 page 54;

Thence along said land the following courses and distances:

South 86° 25' 30" West 93.11 feet and South 10° 26' 00" West 506.56 feet;

Thence South 10° 36' 00" West, along the Westerly line of lands now or formerly of Babcock Place Associates, a distance of 260.23 feet;

Thence South 81° 29' 30" East, along the Southerly line of lands now or formerly of Babcock Place Associates, a distance of 115.68 feet to the Westerly side of Polychrome Place;

Thence South 08° 30' 30" West, along the Westerly side of Polychrome Place, a distance of 50.00 feet to the point and place of beginning.

Together with the benefits and subject to the burdens of the agreements between Habirshaw Wire Company and New York Central and Hudson River Railroad in Liber 1983 cp 364 and Liber 2022 cp 64 with regard to the erection and maintenance of a footbridge from Parcel "C" to Parcel "B" above described.

Address Supplement

The street addresses of the parcels comprising the Real Property are:

76 Point Street, Yonkers, New York - Westchester County - Section 2, Block 2114, Lot 17;

60 Point Street, Yonkers, New York - Westchester County - Section 2, Block 2114, Lot 20,35;

Babcock Place, Yonkers, New York - Westchester County - Section 2, Block 2620, Lot 35;

39 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2620, Lot 40;

398 Water Street, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 15;

40 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 17;

41 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 21;

41 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2625, Lot 23;

42 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 1;

422 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 2;

423 Water Grant, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 3;

41 Water Grant-Rear, Yonkers, New York - Westchester County - Section 2, Block 2630, Lot 10