# ATTACHMENT NO. 3

| 55. | Chesley R. Davies & Mary E. Davies, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 56. | Chesley R. Davies Trustee of the Chesley R. Davies, MD Chtd. PSP | $100,000 |
| 57. | Cynthia G. Davis Trustee of the Cynthia G. Davis Living Trust | $50,000 |
| 58. | Martin A. Davis & Virginia Lee Davis Trustees of the Davis Family 2000 Trust | $100,000 |
| 59. | Evie Dean Trustee of the Evie Dean 2000 Trust dated 12/12/00 | $150,000 |
| 60. | Tracy A. DeBerry | $50,000 |
| 61. | Norma M. Deull, an unmarried women | $50,000 |
| 62. | Pat A. Dolce, a married man dealing with his sole & separate property | $100,000 |
| 63. | Arthur T. Donaldson, a married man dealing with his sole & separate property | $300,000 |
| 64. | Panagiotis Dovanidis, a single man & Dimitra Dovanidou, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 65. | Daniel Drubin & Laura Drubin, husband & wife, as joint tenants with right of survivorship | $70,000 |
| 66. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 67. | Edward D. Earl, an unmarried man | $100,000 |
| 68. | First Savings Bank Custodian For Mary H. Earp IRA | $80,000 |
| 69. | Robert Roy Ecker, a single man | $50,000 |
| 70. | Allan R. Eisenbach & Jayne M. Eisenbach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 71. | Benjamin F. Elias & Sophie Elias Trustees of the Benjamin F. Elias & Sophie Elias Living Trust dated 4/24/00 | $65,000 |
| 72. | Donna M. Elias Successor Trustee of the Elias Family Trust dated 5/19/04 | $50,000 |
| 73. | Robert Essaff & Cindy H. Essaff Trustees of the Essaff Family Trust dated 6/18/02 | $100,000 |
| 74. | Una B. Essaff Trustee of the Una B. Essaff Trust dated 10/23/96 | $50,000 |
| 75. | Richard David Estevez & Melinda Estevez, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76. | Ian A. Falconer, a single man | $50,000 |
| 77. | Julia Farrah Trustee of the Julia Farrah Revocable Living Trust dtd 10/8/92 | $100,000 |
| 78. | Ronald G. Finkel & Karen B. Finkel, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 79. | Grant J. Fischer, a married man dealing with his sole & separate property | $50,000 |
| 80. | First Savings Bank Custodian For Anne Flannery IRA | $50,000 |
| 81. | Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $130,000 |
| 82. | Kevin L. Foster & Allison J. Foster Trustees of the Kevin & Allison Foster Family Trust dated 1/20/99 | $150,000 |
| 83. | Gregory L. Freeman Trustee of the Lillian M. Freeman Trust dtd 5/31/85 | $55,000 |
| 84. | Mary Betty French, an unmarried woman transferrable on death to Joyce A. Abraham | $50,000 |

9

| 85. | Christian Geisser & Hildegard Geisser, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 86. | Roger L. Ghormley & Frances L. Ghormley, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 87. | James J. Goertz & Phyllis A. Goertz Trustees of the Goertz Family Trust dated 1/31/03 | $50,000 |
| 88. | Gonska Foundation, LLC, a Nevada limited liability company | $50,000 |
| 89. | John Goode, a widow | $50,000 |
| 90. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $150,000 |
| 91. | Jean Greco Trustee of the Jean V. Greco Living Trust dated 1/22/02 | $50,000 |
| 92. | First Savings Bank Custodian for Michael H. Greeley IRA | $50,000 |
| 93. | David M. Greenblatt, an unmarried man transferrable on death to Karl Greenblatt | $100,000 |
| 94. | Dixie Gross Trustee of the Dixie B. Gross Revocable Trust | $100,000 |
| 95. | Martin N. Haas Trustee of the Martin N. Haas Living Trust dtd 8/7/03 | $100,000 |
| 96. | Thomas Halvorson & Joanne Halvorson, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 97. | MLH Family Investment Limited, a Texas company | $250,000 |
| 98. | Leslie Harkins & Linda Harkins, Trustees of the Harkins 2001 Revocable Trust dated 8/23/01 | $50,000 |
| 99. | T. Claire Harper Trustee of the Harper Family Trust dated 2/28/84 | $50,000 |
| 100. | Kay Hart, an unmarried woman | $50,000 |
| 101. | Harold G. Hartwell, an unmarried man | $50,000 |
| 102. | Kimberly Havins Trustee of the Paepae Estate Trust dated 05/01/00 | $150,000 |
| 103. | Stephen L. Hawley & Sidney A. Hawley Trustees of the Hawley Family Trust dated 8/15/96 | $100,000 |
| 104. | Linda M. Herdman Trustee for the Linda M. Herdman Family Trust dated 12/11/03 | $100,000 |
| 105. | Marilyn Hilborn Trustee of the Marilyn Hilborn Trust dated 11/18/93 | $50,000 |
| 106. | Michael Hilgenberg & Shellie Hilgenberg, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 107. | William J. Hinson, Jr., an unmarried man | $50,000 |
| 108. | James A. Hodgson & Cynthia H. Hodgson Trustees of the Hodgson Loving Trust dated 1/12/90 | $100,000 |
| 109. | Wallace Hollander Trustee of the P & W Trust dated 8/19/93 | $50,000 |
| 110. | Delwin C. Holt, an unmarried man | $50,000 |
| 111. | Homfeld II, LLC, a Florida limited liability company | $200,000 |
| 112. | First Savings Bank Custodian for Sylvia Hooks IRA | $50,000 |
| 113. | Patrick J. Horgan, a single man | $50,000 |
| 114. | Rochelle Hornsby Trustee of the Rochelle Hornsby Trust dated 1/92 | $50,000 |
| 115. | Rodney G. Huppi & Virginia M. Huppi Trustees of the Huppi Trust dated 1/30/92 | $50,000 |
| 116. | Richard Ianni, an unmarried man | $100,000 |

| 117. | John A. Ippolito & Patricia M. Ippolito Trustees of the Ippolito Family Trust dated 8/31/89 | $75,000 |
| 118. | Janet P. Johnson & Charles E. Johnson Trustees of the Janet P. Johnson Living Trust dated 7/15/04 | $100,000 |
| 119. | Delbert T. Johnston, Jr. & Rebecca J. Johnston Trustees of the Johnston Estate Revocable Trust dated 5/17/94 | $50,000 |
| 120. | Everett H. Johnston Trustee of the Everett H. Johnston Family Trust dated 1/24/90 | $100,000 |
| 121. | Steven B. Kaplan, a unmarried man | $150,000 |
| 122. | William Kayser & Kristie Kayser, husband & wife, as joint tenants with right of survivorship | $70,000 |
| 123. | Arthur E. Kebble & Thelma M. Kebble Trustees of the Arthur E. Kebble & Thelma M. Kebble Family Trust dated 5/19/95 | $50,000 |
| 124. | Mohammad Kianjah | $50,000 |
| 125. | Lawrence A. Kirkham & Kathleen B. Sanginiti Trustees of the Kirkham & Sanginiti Trust dated 2/29/96 | $50,000 |
| 126. | Norman Kiven, a married man dealing with his sole & separate property | $50,000 |
| 127. | Freedom Properties, Inc. | $50,000 |
| 128. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $50,000 |
| 129. | Gregor Kloenne & Otilla M. Kloenne Trustees of the Kloenne Living Trust dated 3/11/87 | $75,000 |
| 130. | Kenneth W. Koerwitz & Jan Case Koerwitz Trustees of the Kenneth W. Koerwitz & Jan Case Koerwitz Family Trust dated 5/13/03 | $50,000 |
| 131. | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 132. | Ronald Kreykes & Linda Kreykes, husband & wife, as tenants in common | $200,000 |
| 133. | Trust Company of the Pacific Custodian for Arthur I. Kriss IRA | $75,000 |
| 134. | Marshall D. Kubly & Kathleen Kubly, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 135. | Mary Kunis-Bidegary Trustee of the Desert Rose Estate Trust dated 12/01/04 | $50,000 |
| 136. | Dina Ladd, a single woman | $50,000 |
| 137. | Paul A. Stewart Trustee, for Pulmonary Associates Profit Sharing Plan FBO Robert M. Lampert Restated dated 01/01/03 | $50,000 |
| 138. | Floyd H. Lander Trustee of the Floyd H. Lander Living Trust U-A 4/23/99 | $100,000 |
| 139. | Raymond Nunez & Sandra L. Lawson Trustees of the The Raymond & Sandra Nunez Family Trust | $50,000 |
| 140. | Martin N. Leaf, an unmarried man | $50,000 |
| 141. | Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | $50,000 |
| 142. | First Regional Bank for the Benefit of Irwin Levine IRA | $100,000 |
| 143. | James H. Lidster & Phyllus M. Lidster Trustees of the James H. Lidster Family Trust dated 1/20/92 | $50,000 |

11

| | | |
|---|---|---|
| 144. | Jay Lim & Kim M. Lim, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 145. | Daniel Lisek, Claire Lisek & Gayle Harkins Trustees of the Lisek Family Trust dated 1/29/92 | $50,000 |
| 146. | Douglas Littrell & Joani Littrell, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 147. | Area 2 L.L.C., a Nevada limited liability company | $50,000 |
| 148. | William Lukasavage & Joanne Lukasavage, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 149. | The Church of Movement of Spiritual Inner Awareness | $100,000 |
| 150. | Barbara Susan Malkoff, a single woman | $100,000 |
| 151. | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 152. | JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000 |
| 153. | Don P. Marshall Trustee of the Don P. Marshall Trust dated 7/18/95 | $50,000 |
| 154. | Joseph V. Marson & Veronica M. Marson Trustees of the Marson Family Trust dated 1/18/95 | $350,000 |
| 155. | Jerrold T. Martin, a single man & James T. Martin, a married man dealing with his sole & separate property, as joint tenant with right of survivorship | $60,000 |
| 156. | Jayem Family LP, a Nevada limited partnership | $100,000 |
| 157. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 158. | Sandra O. Masters Trustee of the Charles T. Masters & Sandra O. Masters Family Trust dated 10/9/92 | $100,000 |
| 159. | Martin W. McColly & Carmen Garcia McColly Trustees of the Martin W. McColly & Carmen Garcia McColly Revocable Trust Agreement dated 5/27/03 | $100,000 |
| 160. | First Savings Bank Custodian for Gary McMahon SEP IRA | $50,000 |
| 161. | Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000 |
| 162. | Bradford A. McMullin, a single man | $75,000 |
| 163. | William L. McQuerry Trustee of the McQuerry Family Partnership | $100,000 |
| 164. | Rudy Leroy McTee & Sharon Kaye McTee Trustees of the R & S McTee 1995 Trust dated 4/20/95 | $50,000 |
| 165. | Robert E. Meldrum, a married man dealing with his sole & separate property | $50,000 |
| 166. | D.G. Menchetti Trustee of the D.G. Menchetti LTD Pension Plan | $200,000 |
| 167. | Jack R. Mennis & Susan A. Mennis, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 168. | ACS Properties, Inc. | $100,000 |
| 169. | Michaelian Holdings, LLC, a Nevada limited liability company | $100,000 |
| 170. | Connie Mihos & Ivan Loebs, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 171. | Irene M. Miller Trustee of the Irene M. Miller Revocable Trust dated 12/14/00 | $50,000 |

| | | |
|---|---|---|
| 172. | Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $50,000 |
| 173. | Katherin Mirzaian, an unmarried woman | $100,000 |
| 174. | Monighetti, Inc., a Nevada corporation | $50,000 |
| 175. | Angela Mosinskis Trustee of the Angela G. Mosinskis Family Trust dated 11/18/02 | $50,000 |
| 176. | GSL Investments LLC, a Nevada limited liability company | $50,000 |
| 177. | John F. Mount & L. Kay Schultz Mount Trustees of the John & Kay Mount Living Trust dated 9/25/95 | $100,000 |
| 178. | Herbert Mueller & Linda Mueller Trustees of the Herbert & Linda Mueller Trust dated 2/10/93 | $50,000 |
| 179. | Roger Najarian & Janice Najarian Trustees of The Najarian Family Revocable Living Trust dated 7/9/04 | $50,000 |
| 180. | Lelia Yvonne Needens Trustee of the Needens 1997 Living Trust | $75,000 |
| 181. | Alan Newman & Judith Wolfe-Newman Trustees of the Alan Newman & Judith Wolfe-Newman Family Trust dated 7/19/04 | $50,000 |
| 182. | Freda Newman Trustee of the Freda Newman Trust dated 7/26/84 | $50,000 |
| 183. | Larry J. Newman & Elsie D. Newman Trustees of the Newman Family Trust dated 9/30/97 | $50,000 |
| 184. | Marvin Lynn Nicola Trustee of the Marvin Lynn Nicola Family Trust dated 6/13/78 | $50,000 |
| 185. | Allen M. Nirenstein & Dorothy H. Nirenstein Trustees of the Allen M. Nirenstein & Dorothy H. Nirenstein 1992 Revocable Trust dated 3/4/92 | $50,000 |
| 186. | John Nix & Lisa Nix, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 187. | Stanley M. Novara Trustee under The Stanley M Novara Family Trust dated 11/12/04 | $50,000 |
| 188. | John E. O'Riordan & Sonhild A. O'Riordan, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 189. | Jay A. Pandaleon & Leigh B. Pandaleon Co-trustees of the Jay A. Pandaleon Profit Sharing Trust dated 1/1/75 | $50,000 |
| 190. | Robert Patterson-Rogers & Joyce Patterson-Rogers, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 191. | Henry E. Pattison & Ruth V. Pattison, as joint tenants with right of survivorship | $50,000 |
| 192. | Jennefer C. Peele Trustee of the Peele Spousal Trust dated 2/10/87 | $50,000 |
| 193. | Shimon Peress & Hannah Peress Trustees of the Shimon Peress & Hannah K. Peress Trust dated 4/17/01 | $50,000 |
| 194. | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 195. | Nicholas Perrone Trustee of the Nicholas Perrone Trust dated 7/12/99 | $200,000 |
| 196. | Karen Petersen Tyndall Trustee of the Karen Petersen Tyndall Trust dated 3/9/94 | $75,000 |
| 197. | Andrew Peterson & Sharon Peterson Trustees of the Andrew R. Peterson & Sharon Peterson 1991 Living Trust dated 11/22/91 | $50,000 |

13

| | | |
|---|---|---|
| 198. | Vickie Pieper, an unmarried woman | $50,000 |
| 199. | Michael E. Pile, a single man | $50,000 |
| 200. | Sonja Plesko | $70,000 |
| 201. | Stephen Polacheck Trustee of the Polacheck & Associates, Inc. Profit Sharing Plan dated 2/20/73 | $100,000 |
| 202. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000 |
| 203. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 204. | Michael J. Pulley & Deborah A. Pulley Trustees of the Pulley Living Trust dated 4/30/01 | $50,000 |
| 205. | Dennis Raggi, a married man dealing with his sole & separate property | $100,000 |
| 206. | First Savings Bank FBO Robert E. Ray IRA | $50,000 |
| 207. | Elan Reddell Trustee of the Elan Reddell Revocable Living Trust dated 8/4/03 | $100,000 |
| 208. | First Savings Bank Custodian For Linda S. Reed IRA | $65,000 |
| 209. | First Savings Bank Custodian for Thomas Rehn IRA | $50,000 |
| 210. | Greg Revers, a married man dealing with his sole & separate property | $50,000 |
| 211. | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $100,000 |
| 212. | Cassandra Robbins, an unmarried woman | $50,000 |
| 213. | Judd Robbins & Lin Van Heuit-Robbins Trustee of the Tesseract Trust dated 3/31/04 | $50,000 |
| 214. | George A. Roberts & Sharon D. Roberts Trustees of the Roberts Trust dated 3/11/03 | $150,000 |
| 215. | Sarah R. Roberts Trustee of the Roberts Family Trust dated 4/28/04 | $50,000 |
| 216. | Robert Roeder & Patricia Roeder, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 217. | James William Rogers, an unmarried man | $100,000 |
| 218. | First Savings Bank Custodian For L. Earle Romak IRA | $200,000 |
| 219. | Toby Lee Rosenblum Trustee of the Toby Lee Rosenblum Trust dated 9/11/95 | $100,000 |
| 220. | Arnold Rosenthal, a single man | $50,000 |
| 221. | David Rosner Trustee of the David Rosner Revocable Trust dtd 01/05/05 | $50,000 |
| 222. | Burton M. Sack, a married man dealing with his sole & separate property | $250,000 |
| 223. | Taylor Samuels Trustee of the Samuels 1999 Trust | $100,000 |
| 224. | First Savings Bank Custodian For Randy Sanchez IRA | $50,000 |
| 225. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 226. | Kenneth B. Schulz & Mary Kay Bryan-Schulz, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 227. | Walter E. Seebach Trustee of the Walter E. Seebach Living Trust dated 11/1/85 | $100,000 |
| 228. | David W. Sexton & Pamela K. Sexton, husband & wife, as joint tenants with right of survivorship | $50,000 |

14

| | | |
|---|---|---|
| 229. | Andrew H. Shahin Trustor & Trustee of The Andrew H. Shahin Trust dated 6/6/94 | $50,000 |
| 230. | Louis H. Shahin Trustor & Trustee of The Louis H. Shahin Trust dated 6/9/94 | $50,000 |
| 231. | Rifqa Shahin Trustor & Trustee of The Rifqa Shahin Trust dated 6/8/94 | $50,000 |
| 232. | Sandra A. Shankle, an unmarried woman | $50,000 |
| 233. | H. Lee Shapiro, a single man | $100,000 |
| 234. | First Savings Bank Custodian For James W. Shaw IRA | $50,000 |
| 235. | Salvatore Siciliano, an unmarried man | $200,000 |
| 236. | Dennis Sipiorski & Donna Sipiorski, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 237. | Emery T. Smith & Mary C. Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 238. | Oliver F. Smith Trustee of the Oliver F. Smith Incorporated Profit Sharing Plan | $50,000 |
| 239. | Steven M. Smith Trustee of the Steven M. Smith 1999 Living Trust Agreement dated 4/7/99 | $50,000 |
| 240. | Thomas N. Smith & Deborah L. Bertossa, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 241. | Herbert Sonnenklar & Norma R. Sonnenklar, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 242. | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $60,000 |
| 243. | T. Dwight Sper & Bonnie J. Sper Trustees of the T.D.S. Revocable Family Trust dated 9/29/98 | $100,000 |
| 244. | Gilbert L. Sperry Trustee of the Sperry Family Trust UDO 4/15/97 | $50,000 |
| 245. | Peter E. Sprock Trustee of the Peter E. Sprock 2001 Trust | $50,000 |
| 246. | Mark A. Stephens | $75,000 |
| 247. | Michael D. Stewart & Mary Jude Stewart Trustees of the Stewart Family Trust dated 1/15/98 | $100,000 |
| 248. | Shiqi Charlie Sun & Jianzhen Jean Sun, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 249. | Janie C. Tammadge, a married woman dealing with her sole separate property | $250,000 |
| 250. | Preswick Corp., a Nevada corporation | $350,000 |
| 251. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 252. | William Taylor & Lyla Taylor Trustees of the Taylor Family Trust dated 12/23/86 | $50,000 |
| 253. | Gary A. Thibault & Sandra C. Thibault, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 254. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 255. | Louis H. Turner & Shirley M. Turner Trustees of the Louis H. & Shirley M. Turner Family Trust dated 9/9/97 | $50,000 |
| 256. | Thomas Turner & Judy K. Turner Trustees of the T.J. Trust dated 7/24/97 | $50,000 |

15

| | | |
|---|---|---|
| 257. | Ann Ulfelder & Leonard Ulfelder, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 258. | Pensco Trust Co. Inc. Custodian For Robert William Ulm IRA | $50,000 |
| 259. | USA Capital First Trust Deed Fund | $965,000 |
| 260. | USA Commercial Mortgage | $325,000 |
| 261. | Judy A. Van Winkle Trustee of the Judy A. Van Winkle 1994 Trust dated 3/25/94 | $50,000 |
| 262. | Marietta Voglis, a married woman dealing with her sole & separate property | $65,000 |
| 263. | Madeline P. Von Tagen Trustee of the Von Tagen Trust dated 5/2/96 | $50,000 |
| 264. | Morningstar Limited Partnership | $50,000 |
| 265. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust under Trust dated 10/4/99 | $125,000 |
| 266. | Adrian P. Walton & Amy J. Walton, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 267. | Damon Paul Walton & Rebecca Jean Walton, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 268. | Delbert Watkins & Mary Ann Watkins Trustees of the Watkins Family Trust dated 7/24/92 | $50,000 |
| 269. | Robert S. Watson & Joyce A. Watson, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 270. | Dick Wiechers Trustee of the Wiechers Family Trust | $100,000 |
| 271. | Eugene C. Wiehe Trustee of the Eugene C. Wiehe Trust dated 10/31/85 | $50,000 |
| 272. | David R. Wilson, an unmarried man | $50,000 |
| 273. | Carmel Winkler Trustee of the Winkler Family Trust UTD 3/13/86 | $50,000 |
| 274. | Rudolf Winkler & Carmel Winkler Trustees for the benefit of Winkler Family Trust dated 3/13/86 | $50,000 |
| 275. | Arthur Withop & Thelma Withop Trustees of the Kamelot Trust dated 3/9/99 | $50,000 |
| 276. | Stanley C. Witt & Lois J. Witt Trustees of the Stanley C. Witt & Lois J. Witt Revocable Trust dated 4/13/92 | $50,000 |
| 277. | Robert R. Wright & Betty M. Wright Trustees of the Wright Trust | $50,000 |
| 278. | Ken Wyatt Enterprises, Inc., a Nevada corporation | $50,000 |
| 279. | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $100,000 |
| 280. | Spectrum Capital, LLC, a California limited liability company | $50,000 |
| 281. | Bruce A. Zebott & Sally R. Zebott Trustees of the Bruce & Sally Zebott Living Trust dated 9/28/04 | $50,000 |
| 282. | David A. Zook Trustee of the Zook Revocable Living Trust for the benefit of Emily J. Zook (a minor) | $50,000 |
| | TOTAL | $23,000,000 |

# EXHIBIT 3



*450320262MTG4*


COPY

| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 450320262 | 2005032-000109 | MTG |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
*** DO NOT REMOVE ***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

TYPE OF INSTRUMENT <u>MTG - MORTGAGE</u>
FEE PAGES  43          TOTAL PAGES  43

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $129.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| **TOTAL FEES PAID** | **$154.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE          04/04/2005
            TIME          10:44:00

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 01/11/2005 |
| MORTGAGE AMOUNT | $24,000,000.00 |
| EXEMPT | No |
| COUNTY TAX | $60,000.00 |
| YONKERS | $120,000.00 |
| BASIC | $120,000.00 |
| ADDITIONAL | $60,000.00 |
| SUBTOTAL | $360,000.00 |
| MTA | $0.00 |
| SPECIAL | $60,000.00 |
| **TOTAL PAID** | **$420,000.00** |

SERIAL NUMBER          CV84848
DWELLING          Not 1- 6 Family
THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:

**CITY OF YONKERS**

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano* (signature)

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
**USA CAPITAL**
**4484 SOUTH PECOS RD**

**LAS VEGAS, NV 89121**

Date:  As of January 11, 2005

MORTGAGE, ASSIGNMENT OF LEASES
AND RENTS AND SECURITY AGREEMENT

FROM

ONE POINT STREET, INC,
a Delaware corporation,

Address of Mortgagor:

c/o Homes for America Holdings, Inc.
One Odell Plaza
Yonkers, New York 10701

TO

USA COMMERCIAL MORTGAGE COMPANY,
Agent for Mortgagees shown on Exhibit "A" hereto

Address of Mortgagee:

4484 South Pecos Road
Las Vegas, Nevada 89121

Mortgage Amount:  $24,000,000

---

This instrument affects real and personal property all situated in the State of New York, County of Westchester, in Section 2, Blocks 2114, 2620, 2625, and 2630, as more particularly described on Exhibit "B" hereto, located at the street addresses shown on **Exhibit "B"**, located in Yonkers, New York.

After recording please return this instrument to:

USA Capital
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn:  Thomas Rondeau

1

THIS MORTGAGE COVERS REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX RESIDENTIAL DWELLING UNITS EACH HAVING THEIR OWN SEPARATE COOKING FACILITIES.

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (this "Mortgage") made as of the 11th day of January, 2005 by and between One Point Street, Inc., a Delaware corporation, having an address at One Odell Plaza, Yonkers, New York 10701 ("Mortgagor"), and USA Commercial Mortgage Company ("USA"), having an address at 4484 South Pecos Road, Las Vegas, Nevada 89121, on behalf of itself and as agent for one or more others (collectively, "Mortgagee").

RECITALS

WHEREAS Mortgagor is on the date of this Mortgage the owner of fee title to the Premises (hereinafter defined) located in the City of Yonkers, County of Westchester, State of New York;

WHEREAS, immediately prior to the execution by Mortgagor and Mortgagee of this Mortgage, Mortgagor has borrowed from Mortgagee the sum of $24,000,000 (the "Indebtedness"), being the unpaid principal amount evidenced by a promissory note of even date herewith between Mortgagor and Mortgagee (the "Note");

WHEREAS, Mortgagor has duly executed and delivered the Note to Mortgagee, and has duly authorized the execution and delivery to Mortgagee of this Mortgage;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, and in order to effect and further confirm the mortgaging to Mortgagee and its successors and assigns of the property described on **Exhibit "A"** hereto, Mortgagor has delivered this Mortgage for recording.

CERTAIN DEFINITIONS AND RULES OF CONSTRUCTION

Capitalized terms used herein without definition have the meanings assigned to them in the Loan Agreement.

Except as expressly indicated otherwise, when used in this Mortgage (i) "or" is not exclusive, (ii) "hereunder", "herein", "hereof" and the like refer to this Mortgage as a whole, (iii) "Article", "Section" and "Schedule" refer to Articles, Sections and Schedules of this Mortgage (iv) terms defined in the singular have a correlative meaning when used in the plural and vice versa, (v) a reference to a law or statute includes any amendment or modification to, or replacement of, such law or statute and (vi) a reference to an agreement, instrument or document means such agreement, instrument or document as the same may be amended, modified or supplemented from time to time in accordance with its terms and as permitted by this Mortgage and other documents executed or delivered to Mortgagee in connection with the Loan. The cover page and all Schedules hereto are incorporated herein and made a part hereof. Any table of contents and the headings and captions herein are for convenience only and shall not affect the interpretation or construction hereof.

2

## GRANTING CLAUSE

NOW, THEREFORE, Mortgagor, in consideration of the premises and in order to secure the payment of the principal of, and the interest and any other sums payable under the Note, this Mortgage and the other Loan Documents and the performance and observance of all the provisions hereof and of the Note and the other Loan Documents hereby gives, grants, bargains, sells, warrants, aliens, remises, releases, conveys, assigns, transfers, mortgages, hypothecates, deposits, pledges, sets over and confirms unto Mortgagee, all Mortgagor's estate, right, title and interest in, to and under any and all of the following described property (hereinafter, the "Mortgaged Property") whether now owned or held or hereafter acquired:

(i)      the Premises;

(ii)     the Improvements;

(iii)    the Chattels;

(iv)     all rents, royalties, issues, profits, revenue, income, recoveries, reimbursements and other benefits of the Premises (hereinafter, the "Rents") and all leases of the Premises or portions thereof now or hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms, and including any guaranties of such leases and any lease cancellation, surrender or termination fees in respect thereof, all subject, however, to the provisions of Section 3.01 hereof;

(v)      all (a) development work product prepared in connection with the Premises, including, but not limited to, engineering, drainage, traffic, soil and other studies and tests; water, sewer, gas, electrical and telephone approvals, taps and connections; surveys, drawings, plans and specifications; and subdivision, zoning and platting materials; (b) building and other permits, rights, licenses and approvals relating to the Premises; (c) contracts and agreements (including, without limitation, contracts with architects and engineers, construction contracts and contracts for the maintenance or management of the Premises), "air rights" (i.e., an amount of floor area equal to the difference between (x) the amount of floor area for the improvements permitted under the New York City Zoning Resolution and (y) the floor area of the improvements as constructed) or any transferable development rights, contract rights, logos, trademarks, trade names, copyrights and other general intangibles used or useful in connection with the ownership, operation or occupancy of the Premises or any part thereof, and the goodwill of the business to which each relates; and (d) financing commitments (debt or

3

equity) issued to Mortgagor in respect of the Premises and all amounts payable to Mortgagor thereunder;

(vi)    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards, and all rights of Mortgagor to refunds of real estate taxes and assessments;

TO HAVE AND TO HOLD unto Mortgagee, its successors and assigns, forever.

## I. COVENANTS OF MORTGAGOR

Mortgagor represents, warrants, covenants and agrees as follows:

(a)    <u>Warranty of Title; Power and Authority</u>. Mortgagor warrants that it has a good and marketable title to an indefeasible fee estate in the Premises subject to no lien, charge or encumbrance except such as are listed as exceptions to title in the title policy insuring the lien hereof; that it owns the Chattels, all leases and the Rents in respect of the Premises and all other personal property encumbered hereby free and clear of liens and claims; and that this Mortgage is and will remain a valid and enforceable lien on the Mortgaged Property subject only to the exceptions referred to above. Mortgagor has full power and lawful authority to mortgage the Mortgaged Property in the manner and form herein done or intended hereafter to be done. Mortgagor will preserve such title, and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

(b)    <u>Hazardous Materials</u>. Mortgagor represents and warrants that the Property is subject to a Proposed Remedial Action Plan issued by the New York State Department of Environmental Conservation, Division of Environmental Remediation entitled "Proposed Remedial Action Plan BICC Cables, Site No. 360051" (the "PRAP") dated December, 2004. To the best of Mortgagor's knowledge after diligent inquiry, the PRAP accurately and completely describes both the environmental contamination on the Property and the approved method of clean up thereof. Mortgagor hereby promises Mortgagee and USA that it will diligently and faithfully take all necessary actions to effect the remediation plan as described in the PRAP, and as otherwise required by applicable federal or state law.

(c)    <u>Flood Hazard Area</u>. Mortgagor represents that neither the Premises nor any part thereof is located in an area identified by the Secretary of the United States Department of Housing and Urban Development or by any applicable federal agency as having special flood hazards or, if it is, Mortgagor has obtained the insurance required by Section 1.09.

(d)    <u>Further Assurances</u>. Mortgagor will, at its sole cost and expense, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto

4

Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms hereof, or for filing, registering or recording this Mortgage and, on demand, will execute and deliver, and hereby authorizes Mortgagee to execute and file in Mortgagor's name, to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence or perfect more effectively Mortgagee's security interest in and the lien hereof upon the Chattels and other personal property encumbered hereby.

(e)    <u>Information Reporting and Back-up Withholding</u>. Mortgagor will, at its sole cost and expense, do, execute, acknowledge and deliver all and every such acts, information reports, returns and withholding of monies as shall be necessary or appropriate to comply fully, or to cause full compliance, with all applicable information reporting and back-up withholding requirements of the Internal Revenue Code of 1986 (including all regulations now or hereafter promulgated thereunder) in respect of the Mortgaged Property and all transactions related to the Mortgaged Property and will at all times provide Mortgagee with satisfactory evidence of such compliance and notify Mortgagee of the information reported in connection with such compliance.

(f)    <u>Filing and Recording of Documents</u>. Mortgagor forthwith upon the execution and delivery hereof, and thereafter from time to time, will cause this Mortgage and any security instrument creating a lien or evidencing the lien hereof upon the Chattels and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien hereof upon, and the interest of Mortgagee in, the Mortgaged Property.

(g)    <u>Filing and Recording Fees and Other Charges</u>. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the execution and acknowledgment hereof, any mortgage supplemental hereto, any security instrument with respect to the Chattels, and any instrument of further assurance, and any out-of-pocket expenses (including, without limitation, reasonable attorneys' fees and disbursements) actually incurred by Mortgagee in connection with the Loan, and will pay all federal, state, county and municipal stamp taxes and other similar taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Chattels or any instrument of further assurance.

(h)    <u>Payment and Performance of Loan Documents</u>. Mortgagor will punctually pay the principal and interest and all other sums to become due in respect hereof and of the Note and the other Loan Documents at the time and place and in the manner specified therein, according to the true intent and meaning thereof, all in currency of the United States of America which at the time of such payment shall be legal tender for the payment of public and private debts. Mortgagor will duly and timely comply with and perform all of the terms, provisions, covenants and agreements contained in said documents and in all other documents or instruments executed or delivered by Mortgagor to Mortgagee in connection with the Loan.

(i)    <u>Maintenance of Existence; Compliance with Laws</u>. Mortgagor, if other than a natural

5

person, will, so long as it is owner of all or part of the Mortgaged Property, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, partnership, limited liability company, trust or other entity under the laws of the state of its formation. Mortgagor will duly and timely comply with all Requirements of any governmental authority or court applicable to it or to the Mortgaged Property or any part thereof.

(j)    After-Acquired Property.  All right, title and interest of Mortgagor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Mortgaged Property, hereafter acquired by, or released to, Mortgagor or constructed, assembled or placed by Mortgagor on the Premises and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, conveyance, assignment or other act by Mortgagor, shall become subject to the lien hereof as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described in the Granting Clause hereof, but at any and all times Mortgagor will execute and deliver to Mortgagee any and all such further assurances, mortgages, conveyances or assignments thereof as Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien hereof.

(k)    Payment of Taxes and Other Charges.  Mortgagor, from time to time when the same shall become due and payable, will pay and discharge all taxes of every kind and nature (including real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. Mortgagor will, upon Mortgagee's request, deliver to Mortgagee receipts evidencing the payment of all such taxes, assessments, levies, fees, rents and other public charges imposed upon or assessed against it or the Mortgaged Property or any portion thereof.  Mortgagee may, at its option, upon thirty (30) days' notice to Mortgagor, require the deposit by Mortgagor with Mortgagee, at the time of each payment of an installment of interest or principal under the Note (but no less often than monthly), of an additional amount sufficient to discharge the obligations under this clause (a) when they become due. The determination of the amount so payable and of the fractional part thereof to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its sole discretion. Such amounts shall be held by Mortgagee without interest and applied to the payment of the obligations in respect of which such amounts were deposited or, at Mortgagee's option, to the payment of said obligations in such order or priority as Mortgagee shall determine, on or before the respective dates on which the same or any of them would become delinquent. If one (1) month prior to the due date of any of the aforementioned obligations the amounts then on deposit therefor shall be insufficient for the payment of such obligation in full, Mortgagor within five (5) days after demand shall deposit the amount of the deficiency with Mortgagee. Nothing herein contained shall be deemed to affect any right or remedy of Mortgagee under any provisions hereof or of any statute or rule of law to pay any such amount and to add the amount so paid, together with interest at the Default Rate, to the

6

indebtedness hereby secured.

(l)  <u>Payment of Mechanics and Materialmen</u>.  Mortgagor will pay, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part thereof, and in general will do or cause to be done everything necessary so that the lien hereof shall be fully preserved, at the cost of Mortgagor and without expense to Mortgagee.

(m)  <u>Good Faith Contests</u>.  Nothing in this Section 1.07 shall require the payment or discharge of any obligation imposed upon Mortgagor by this Section so long as Mortgagor shall in good faith and at its own expense contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale or forfeiture of the Mortgaged Property or any part thereof to satisfy the same; <u>provided, however</u>, that (i) during such contest Mortgagor shall, at Mortgagee's option, provide security reasonably satisfactory to Mortgagee, assuring the discharge of Mortgagor's obligation hereunder and of any additional charge, penalty or expense arising from or incurred as a result of such contest and (ii) if at any time payment of any obligation imposed upon Mortgagor by clause (a) above shall become necessary to prevent the delivery of a tax deed or other instrument conveying the Mortgaged Property or any portion thereof because of non-payment, then Mortgagor shall pay the same in sufficient time to prevent the delivery of such tax deed or other instrument.

(n)  (Intentionally Omitted)

(o)  <u>Taxes on Mortgagee</u>.  Mortgagor will pay all mortgage recording taxes and fees, and any taxes enacted from and after the date hereof, except income taxes, that are imposed on Mortgagee by reason of its ownership of the Note or this Mortgage.

(p)  <u>Insurance</u>.  Mortgagor will at all times provide, maintain and keep in force:

(1)  policies of insurance insuring the Premises, Improvements and Chattels against loss or damage by fire and lightning; against loss or damage by other risks embraced by coverage of the type now known as All Risk Replacement Cost Insurance with agreed amount endorsement, including but not limited to riot and civil commotion, vandalism, malicious mischief and theft; and against such other risks or hazards as Mortgagee from time to time reasonably may designate in an amount sufficient to prevent Mortgagee or Mortgagor from becoming a co-insurer under the terms of the applicable policies, but in any event in an amount not less than 100% of the then full replacement cost of the Improvements (exclusive of the cost of excavations, foundations and footings below the lowest basement floor) without deduction for physical depreciation;

(2)  if all or part of the Premises are located in an area identified by the Secretary of the United States Department of Housing and Urban Development or by

7

any applicable federal agency as a flood hazard area, flood insurance in an amount at least equal to the maximum limit of coverage available under the National Flood Insurance Act of 1968, provided, however, that Mortgagee reserves the right to require flood insurance in excess of said limit if such insurance is commercially available up to the amount provided in clause (i) above;

(3)     commercial public liability insurance on an "occurrence" basis against claims for "personal injury" liability, including, without limitation, bodily injury, death or property damage liability, containing minimum limits per occurrence of $2,000,000 and $5,000,000 in the aggregate for any policy year. In addition, at least $200,000,000 excess and/or umbrella liability insurance shall be obtained and maintained for any and all claims, including all legal liability imposed upon Mortgagor and all court costs and attorneys' fees incurred in connection with the ownership, operation and maintenance of the Mortgaged Property. Such policies shall name Mortgagee as additional insured by an endorsement, and shall contain cross-liability and severability of interest clauses, all satisfactory to Mortgagee; and

(4)     such other insurance (including, but not limited to, earthquake insurance), and in such amounts, as may from time to time be reasonably required by Mortgagee against the same or other insurable hazards.

(5)     All policies of insurance required under this Section shall be issued by companies having Best's ratings and being otherwise acceptable to Mortgagee, shall be subject to the reasonable approval of Mortgagee as to amount, content, form and expiration date and, except for the liability policies described in clauses (a)(v) and (vi) above, shall contain a Non-Contributory Standard Mortgagee Clause and Lender's Loss Payable Endorsement, or their equivalents, in favor of Mortgagee, and shall provide that the proceeds thereof shall be payable to Mortgagee. Mortgagee shall be furnished with the original of each policy required hereunder, which policies shall provide that they shall not lapse, nor be modified or canceled, without thirty (30) days' written notice to Mortgagee. At least thirty (30) days prior to expiration of any policy required hereunder, Mortgagor shall furnish Mortgagee appropriate proof of issuance of a policy continuing in force the insurance covered by the policy so expiring. Mortgagor shall furnish to Mortgagee, promptly upon request, receipts or other satisfactory evidence of the payment of the premiums on such insurance policies. In the event that Mortgagor does not deposit with Mortgagee a new certificate or policy of insurance with evidence of payment of premiums thereon at least thirty (30) days prior to the expiration of any expiring policy, then Mortgagee may, but shall not be obligated to, procure such insurance and pay the premiums therefor, and Mortgagor agrees to repay to Mortgagee the premiums thereon promptly on demand, together with interest thereon at the Default Rate.

8

(6)     Mortgagor hereby assigns to Mortgagee all proceeds of any insurance required to be maintained by this Section which Mortgagor may be entitled to receive for loss or damage to the Premises, Improvements or Chattels. All such insurance proceeds shall be payable to Mortgagee, and Mortgagor hereby authorizes and directs any affected insurance company to make payment thereof directly to Mortgagee. Mortgagor shall give prompt notice to Mortgagee of any casualty, whether or not of a kind required to be insured against under the policies to be provided by Mortgagor hereunder, such notice to generally describe the nature and cause of such casualty and the extent of the damage or destruction. Mortgagor may settle, adjust or compromise any claims for loss, damage or destruction, regardless of whether or not there are insurance proceeds available or whether any such insurance proceeds are sufficient in amount to fully compensate for such loss or damage, subject to Mortgagee's prior consent. Notwithstanding the foregoing, Mortgagee shall have the right to join Mortgagor in settling, adjusting or compromising any loss of $250,000 or more. Mortgagor hereby authorizes the application or release by Mortgagee of any insurance proceeds under any policy of insurance, subject to the other provisions hereof. The application or release by Mortgagee of any insurance proceeds shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(7)     In the event of the foreclosure hereof or other transfer of the title to the Mortgaged Property in extinguishment, in whole or in part, of the indebtedness secured hereby, all right, title and interest of Mortgagor in and to any insurance policy, or premiums or payments in satisfaction of claims or any other rights thereunder then in force, shall pass to the purchaser or grantee notwithstanding the amount of any bid at such foreclosure sale. Nothing contained herein shall prevent the accrual of interest as provided in the Note on any portion of the principal balance due under the Note until such time as insurance proceeds are actually received and applied to reduce the principal balance outstanding.

(8)     Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section unless Mortgagee is included thereon as a named insured with loss payable to Mortgagee under standard mortgage endorsements of the character and to the extent above described. Mortgagor shall promptly notify Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to Mortgagee the policy or policies of such insurance.

(9)     Any and all monies received as payment which Mortgagor may be entitled to receive for loss or damage to the Premises, Improvements or Chattels under any insurance maintained pursuant to this Section (other than proceeds under the policies required by clause (a)(ii) above, shall be paid over to

9

Mortgagee and, provided (i) no Event of Default is then outstanding, (ii) sufficient funds are unconditionally available from such proceeds of insurance and/or from funds of Mortgagor deposited with Mortgagee to enable Mortgagor promptly to commence, and thereafter diligently to prosecute to completion, the restoration of the Mortgaged Property in accordance with all applicable Requirements to the value, condition, character and general utility existing prior to such damage or destruction, and (iii) such restoration will not result in the completion of the Improvements being delayed beyond the Completion Date (as defined in the Building Loan Agreement) and will be completed no later than six (6) months prior to the Maturity Date (as defined in the Note), as same may be extended, then, such funds shall be disbursed from time to time to Mortgagor in reimbursement of its costs and expenses incurred in the restoration of the Improvements in the same manner and subject to the same terms and conditions as advances of proceeds of the Building Loan are made by Mortgagee under the Building Loan Agreement, in either case, less Mortgagee's reasonable expenses for collecting and, if applicable, disbursing the insurance proceeds, or otherwise incurred in connection therewith.

(10)     The provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall not apply to the Loan or this Mortgage.

To the extent possible, these insurance requirements may be satisfied by making Mortgagee a named insured under the AIG Environmental policy of insurance issued to Blackacre Partners OPS, LLC.

(q)     _Visitation and Inspection_.  Mortgagor will keep adequate records and books of account in accordance with generally accepted accounting principles and will permit Mortgagee, by its agents, accountants and attorneys, to visit and inspect the Mortgaged Property and examine its records and books of account and make copies thereof or extracts therefrom, and to discuss its affairs, finances and accounts with the officers, managing members or general partners, as the case may be, of Mortgagor, at such reasonable times as may be requested in advance by Mortgagee.

(r)     _Financial and Other Information_. Mortgagor and Guarantor will deliver to Mortgagee with reasonable promptness (i) after the close of their respective fiscal years a balance sheet and statement of profit, loss and cash flow, in each case audited by an accounting firm reasonably satisfactory to Mortgagee and setting forth, in comparative form, figures for the preceding fiscal year, (ii) after the close of each quarter of their respective fiscal years the aforesaid financial information setting forth in each case, in comparative form, figures for the corresponding period in the preceding fiscal year, (iii) if Mortgagor or any Guarantor is an individual, complete copies of its federal and state income tax returns when filed (in lieu of the reports described in clauses (i) and (ii) hereof) and (iv) such other information with respect to Mortgagor, Guarantor, the Premises as Mortgagee may reasonably request from time to time. All financial statements of Mortgagor or Guarantor shall be prepared in accordance with generally accepted accounting principles and, in the

10

case of Mortgagor, shall be accompanied by the certificate of a principal financial or accounting officer, managing member or general partner, as the case may be, of Mortgagor, dated within five (5) days of the delivery of such statements to Mortgagee, stating that he or she knows of no Event of Default, nor of any event which after notice or lapse of time or both would constitute an Event of Default, which has occurred and is continuing, or, if any such event or Event of Default has occurred and is continuing, specifying the nature and period of existence thereof and what action Mortgagor has taken or proposes to take with respect thereto, and, except as otherwise specified, stating that, to the best of such individual's knowledge, Mortgagor has fulfilled all of its obligations hereunder and otherwise in respect of the Loan which are required to be fulfilled on or prior to the date of such certificate.

(s)     Estoppel Certificates.  Mortgagor, within five (5) days upon request in person or within seven (7) days upon request by mail, will furnish a statement, duly acknowledged, of the amount due whether for principal or interest on this Mortgage and whether any offsets, counterclaims or defenses exist against the indebtedness secured hereby.

(t)     Maintenance of Premises and Improvements.  Mortgagor will not commit any physical waste on the Premises or make any change in the use of the Premises which will in any way increase any ordinary fire or other hazard arising out of construction or operation. Mortgagor will, at all times, maintain the Premises, Improvements and Chattels in good operating order and condition and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements in connection therewith which are needful or desirable to such end. The Premises and Improvements shall not be demolished or substantially altered, nor shall any Chattels be removed without Mortgagee's prior consent except (i) where appropriate replacements free of superior title, liens and claims are immediately made of value at least equal to the value of the removed Chattels or (ii) in connection with the construction contemplated by the Building Loan Agreement.

(u)     Condemnation.  Mortgagor, immediately upon obtaining knowledge of the institution or pending institution of any proceedings for the condemnation of the Premises, or any portion thereof, will notify Mortgagee thereof. Mortgagee may participate in any such proceedings and may be represented therein by counsel of its selection. Mortgagor from time to time will deliver to Mortgagee all instruments requested by it to permit or facilitate such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Mortgagee.  Mortgagee shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. The proceeds of any award or compensation so received shall, provided (i) no Event of Default is then outstanding and (ii) sufficient funds are unconditionally available from such awards and/or from funds of Mortgagor deposited with Mortgagee to enable Mortgagor promptly to commence, and thereafter diligently to prosecute to completion, the restoration of the Mortgaged Property in accordance with applicable Requirements to the value, condition, character and general utility existing prior to such damage or destruction, shall be disbursed to Mortgagor from time to time for restoration of the Improvements in the same manner and subject to the same terms and conditions as advances of proceeds of the Building Loan are made by Mortgagee under the Building Loan Agreement, in either case, less Mortgagee's reasonable expenses for collecting and, if applicable,

11

disbursing the award, or otherwise incurred in connection therewith.

(v)    Leases. (a) Mortgagor will not (i) execute an assignment of the rents or any part thereof from the Premises without Mortgagee's prior consent, (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Premises or of any part thereof, now existing or hereafter to be made, having an unexpired term of one (l) year or more, provided, however, that any lease may be canceled if promptly after the cancellation or surrender thereof a new lease is entered into with a new lessee having a credit standing, in the reasonable judgment of Mortgagee, at least equivalent to that of the lessee whose lease was canceled, on substantially the same terms as the terminated or canceled lease, (iii) modify any such lease so as to shorten the unexpired term thereof or so as to decrease, waive or compromise in any manner the amount of the rents payable thereunder or materially expand the obligations of the lessor thereunder, (iv) accept prepayments of any installments of rents more then one (1) month in advance to become due under such leases, except prepayments in the nature of security for the performance of the lessees thereunder, (v) modify, release or terminate any guaranties of any such lease or (vi) in any other manner impair the value of the Mortgaged Property or the security hereof.

Mortgagor will not execute any lease of all or a substantial portion of the Premises except for actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, in all material respects, all of the covenants, conditions and agreements contained in all leases of the Premises or portions thereof now or hereafter existing, on the part of the lessor thereunder to be kept and performed and will at all times do all things reasonably necessary to compel performance by the lessee under each lease of all obligations, covenants and agreements by such lessee to be performed thereunder. If any of such leases provide for the giving by the lessee of certificates with respect to the status of such leases, Mortgagor shall exercise its right to request such certificates within five (5) days of any demand therefor by Mortgagee and shall deliver copies thereof to Mortgagee promptly upon receipt.

Each lease of the Premises or of any part thereof, shall provide that, in the event of the enforcement by Mortgagee of the remedies provided for hereby or by law, the lessee thereunder will, upon request of any person succeeding to the interest of Mortgagor as a result of such enforcement, automatically become the lessee of said successor in interest, without change in the terms or other provisions of such lease, provided, however, that said successor in interest shall not be bound by (i) any payment of rent or additional rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee of its obligations under said lease or (ii) any amendment or modification of the lease made without the consent of Mortgagee or such successor in interest. Each lease shall also provide that, upon request by said successor in interest, such lessee shall execute and deliver an instrument or instruments confirming such attornment.

Reference is hereby made to Section 291-f of the Real Property Law of the State of New York for the purpose of obtaining for Mortgagee the benefits of said Section in connection herewith.

Mortgagor shall furnish to Mortgagee, on a monthly basis, a certified leasing status report in respect of the Premises and a certified rent roll containing the names of all lessees of the

12

Premises, the terms of their respective leases, the space occupied and the rentals payable thereunder, together with copies, certified to be true and complete, of such leases as may be requested by Mortgagee.

(w)    <u>Trust Fund; Lien Laws</u>. Mortgagor will receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied for the purposes of paying the cost of the improvements and will apply the same first to the payment of the cost of improvements before using any part of the total of the same for any other purpose and, in the event all or any part of the Premises is located in the State of New York, will comply with Section 13 of the New York Lien Law. Mortgagor will indemnify and hold Mortgagee harmless against any loss or liability, cost or expense, including, without limitation, any judgments, reasonable attorney's fees, costs of appeal bonds and printing costs, arising out of or relating to any proceeding instituted by any claimant alleging a violation by Mortgagor of any applicable lien law including, without limitation, any section of Article 3-A of the New York Lien Law.

## II. EVENTS OF DEFAULT AND REMEDIES

(a)    <u>Events of Default and Certain Remedies</u>. If one or more of the following Events of Default shall happen:

(1)    if (i) default shall be made in the payment of any principal, interest, fees or other sums under this Mortgage, the Note or the Loan Agreement or the other Loan Documents, in any such case, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any payment or prepayment or otherwise, and such default shall have continued for a period of five (5) days after the date due, without notice from Mortgagee or (ii) default shall be made in the payment of any tax or other charge required by this Mortgage to be paid and said default shall have continued for a period of five (5) days; or

(2)    if default shall be made in the due observance or performance of any covenant, condition or agreement in the Note, this Mortgage, or any of the other Loan Documents, any guaranty executed by Guarantor or in any other document executed or delivered to Mortgagee in connection with the Loan, and such default shall have continued for a period of thirty (30) days after notice thereof shall have been given to Mortgagor by Mortgagee of such defaults under the Note and this Mortgage and after such notice or grace period as is provided in the other Loan Documents, if any (in no event however, shall any such notice in any of other Loan Documents be cumulative with the notice in this Mortgage); or

(3)    if any representation or warranty made to Mortgagee in this Mortgage, any guaranty executed by Guarantor, or in any other document, certificate or statement executed or delivered to Mortgagee in connection with the Loan

13

shall be incorrect in any material respect when made or remade; or

(4)    if by order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of Mortgagor shall be appointed and such order shall not be discharged or dismissed within ninety (90) days after such appointment; or

(5)    if Mortgagor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Federal Bankruptcy Act or any similar federal or state law, or if, by decree of a court of competent jurisdiction, Mortgagor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property; or

(6)    if any of the creditors of Mortgagor (other than Mortgagee) shall file a petition in bankruptcy against Mortgagor or for reorganization of Mortgagor pursuant to the Federal Bankruptcy Act or any similar federal or state law, and if such petition shall not be discharged or dismissed within ninety (90) days after the date on which such petition was filed; or

(7)    if final judgment for the payment of money shall be rendered against Mortgagor and Mortgagor shall not discharge the same or cause it to be discharged within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal; or

(8)    if any of the events enumerated in clauses (4) through (7) of this Section shall, after the date hereof, happen to Guarantor or any of its property; or

(9)    if it shall be illegal for Mortgagor to pay any tax referred to in Article I hereof or if the payment of such tax by Mortgagor would result in the violation of applicable usury laws; or

(10)    if there shall occur a default which is not cured within the applicable grace period, if any, under any mortgage or other security instrument encumbering all or part of the Mortgaged Property regardless of whether any such mortgage or other security instrument is prior or subordinate hereto; it being further agreed by Mortgagor that an Event of Default hereunder shall constitute an Event of Default under any such mortgage, deed of trust or other security instrument held by Mortgagee; or

(11)    if Mortgagor shall transfer, or agree to transfer (or suffer or permit the transfer or agreement to transfer), in any manner, either voluntarily or

14

involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest or rights therein (including air or development rights) without, in any such case, Mortgagee's prior consent, except as permitted herein or under the other Loan Documents. As used in this clause, "transfer" shall include, without limitation, any sale, assignment, lease or conveyance except leases for occupancy subordinate hereto and to all advances made and to be made hereunder or, in the event Mortgagor or Guarantor (or a general partner or coventurer of either of them) is a partnership, joint venture, limited liability company, trust or closely-held corporation, the sale, conveyance, transfer or other disposition of more than 25%, in the aggregate, of any class of the issued and outstanding capital stock of such closely-held corporation or of the beneficial interest of such partnership, venture, limited liability company or trust, or a change of any general partner, joint venturer, member or beneficiary, as the case may be. In the event Mortgagor or Guarantor is a limited liability company, and so long as a member has contributed to (or remains personally liable for) the present and future membership capital contributions required of such member by the operating agreement, such member may sell, convey, devise, transfer or dispose of all or a part of his membership interest to his spouse, children, grandchildren or a family trust in which his spouse, children or grandchildren are sole beneficiaries; or

(12)    if Mortgagor shall encumber, or agree to encumber, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest or rights therein (including air or development rights) without, in any such case, Mortgagee's prior consent, other than in connection with any other mortgages made in favor of Mortgagee. As used in this clause, "encumber" shall include, without limitation, the placing or permitting the placing of any mortgage, deed of trust, assignment of rents or other security device. (Mortgagee may grant or deny its consent under this clause and the immediately preceding clause in its sole discretion and, if consent should be given, any such transfer or encumbrance shall be subject hereto and to any other documents which evidence or secure the Loan, and, if a transfer, any such transferee shall assume all of Mortgagor's obligations hereunder and thereunder and agree to be bound by all provisions and perform all obligations contained herein and therein; consent to one such transfer or encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive transfers or encumbrances);

then and in every such case:

(13)    During the continuance of any such Event of Default, Mortgagee, by notice to Mortgagor, may declare the entire principal of the Note then outstanding (if not then due and payable), and any sums due under the other Loan

15