1   GORDON & SILVER, LTD.                              E-Filed On 4/28/06
    GERALD M. GORDON, ESQ., NV Bar No. 229
2   E-mail: gmg@gordonsilver.com
    WILLIAM M. NOALL, ESQ., NV Bar No. 3549
3   E-mail: wmn@gordonsilver.com
    THOMAS H. FELL, ESQ., NV Bar No. 3717
4   E-mail: thf@gordonsilver.com
    BRIGID M. HIGGINS, ESQ., NV Bar No. 5990
5   E-mail: bmh@gordonsilver.com
    GREGORY M. GARMAN, ESQ., NV Bar No. 6654
6   E-mail: geg@gordonsilver.com
    MATTHEW C. ZIRZOW, ESQ., NV Bar No. 7222
7   E-mail: mcz@gordonsilver.com
    3960 Howard Hughes Pkwy., 9th Floor
8   Las Vegas, Nevada 89109
    Telephone (702) 796-5555
9   Facsimile (702) 369-2666
    Attorneys for the Buckalew Trust, and the
10  Kevin J. Higgins & Ana Marie Higgins Family Trust

11                    **UNITED STATES BANKRUPTCY COURT**

12                      **FOR THE DISTRICT OF NEVADA**

13  In re:                                    |  Case No.: 06-10725-LBR
                                              |  Chapter 11
14  USA COMMERCIAL MORTGAGE
    COMPANY,
15
                   Debtor.                    |  Date:  May 3, 2006
16  _____          |  Time:  9:30 a.m.

17  **OPPOSITION TO MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363**
    **APPROVING DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND**
18  **INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET**

19          The Buckalew Trust (the "Buckalew Trust") and the Kevin J. Higgins & Ana Marie

20  Higgins Family Trust (the "Higgins Trust" and, together with the Buckalew Trust, hereinafter

21  collectively referred to as the "Movants"),[1] by and through their counsel, the law firm of Gordon

22  & Silver, Ltd., hereby submit their Opposition ("Opposition") to Motion for Order Under 11

23  U.S.C. §§ 105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and

24  Interim Use of Cash in Accordance with Proposed Cash Budget ("Motion").[2]

25  _____

26  [1] An Ad Hoc Committee of Direct Lenders (as hereinafter defined) is in the process of being
    formed, and it is contemplated that the Movants will be members. Gordon & Silver, Ltd., as
27  counsel for the Ad Hoc Committee, will be filing an appropriate statement pursuant to Fed. R.
    Bankr. P. 2019.

28  [2] Movants have filed this same Opposition in each of the Debtors' five (5) bankruptcy cases.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

This Opposition is made and based on the points and authorities which follow, the pleadings and papers contained in the Court's file, judicial notice of which is hereby requested, and any evidence or oral argument presented at the time of the hearing in this matter.

## POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

**A.    Debtors' Bankruptcy Proceedings To Date.**

1.    On April 13, 2006 (the "Petition Date"), the following five (5) Nevada entities filed their voluntary Chapter 11 bankruptcy petitions: USA Commercial Mortgage Company ("USA Commercial"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("Realty Advisors"), USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Fund"), and USA Capital Trust Deed Fund, LLC (the "Trust Deed Fund" and, together with USA Commercial, USA Securities, Realty Advisors, and Diversified Funds, hereinafter collectively referred to as the "Debtors"). Each of these Debtors is more specifically described below.

2.    No official committees have been appointed in Debtors' bankruptcy cases, and no requests have been made for the appointment of trustees or examiners.

3.    Debtors' bankruptcy cases are not currently being jointly administered.

4.    On April 14, 2006, Debtors filed their Motion for Order Under 11 U.S.C. §§ 105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and Interim Use of Cash in Accordance with Proposed Cash Budget (the "Cash Management Motion"). See Case No. 06-10725-LBR, Docket No. 8. Debtors' Cash Management Motion seeks to have all collections continue to be commingled into one account in the name of USA Commercial post-petition, and to use such monies to fund Debtors' bankruptcy case.

5.    Also on April 14, 2006, Debtors also filed a Declaration of Thomas J. Allison (the "Allison Declaration") in support of their Cash Management Motion. See Case No. 06-10725-LBR, Docket No. 9. Mr. Allison is associated with Mesirow Financial Interim Management, LLC, who are Debtors' proposed financial advisors. Mr. Allison is now the sole manager and/or

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

2

100911.001-01/399701_3.doc

1   president of each of the Debtors.

2       6.      On April 19, 2006, the Court entered an <u>Interim Order</u> approving the Cash

3   Management Motion on a limited basis pending a further hearing on May 3, 2006. <u>See</u> Case No.

4   06-10725-LBR, Docket No. 32.

5   **B.      Identification Of The Debtors And The Direct Lenders.**

6       7.      **USA Commercial.**  A review of the pleadings and public filings by Debtors

7   indicate that USA Commercial is an entity owned by Thomas A. Hantges ("Hantges"), Joseph D.

8   Milanowski ("Milanowski"), Paul S. Hamilton ("Hamilton"), and Red Granite, LLC (owned by a

9   former spouse of one of the other owners).  USA Commercial is the primary business entity

10  which the various investors and lenders commonly identify with.  Its actual business is that of a

11  mortgage broker.  It is the entity which solicited investors and lenders and brought them together

12  with various borrowers seeking loans for real estate projects.  The loans varied from acquisition,

13  development, construction and bridge financing.   The types of projects included residential,

14  commercial, mixed use and unimproved land.  Typically, USA Commercial would receive up to

15  10 points on each loan as its fee, either paid in full out of the loan proceeds or a portion of it

16  being an interest in the loan.  Additionally, USA Commercial would act as the servicing agent

17  for the various loans, collecting monthly interest payments or loan payoffs and distributing them

18  to the beneficiaries under the various notes.  USA Commercial was generally granted a power of

19  attorney by individual investors or lenders for the purpose of managing each loan and protecting

20  the rights of the individual investors or lenders.  Thus, it would appear that USA Commercial's

21  primary sources of revenue were the origination fees generated from each loan as well as the

22  loan servicing fees.

23      8.      **USA Securities.**  USA Securities is owned by Milanowski and Hamilton.  USA

24  Securities' sole business purpose appears to be acting as the sales agent for the two funds (the

25  "Funds") described below.  For its efforts, USA Securities received a 3% commission for the

26  sale of the units in the Funds.  As both Funds appear to have stopped selling additional units in

27  2005, USA Securities appears to be a non-operating business at this time.

28      9.      **Realty Advisors.**  Realty Advisors is owned by Hantges, Milanowski and

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

3

1    Hamilton and managed by USA Investment Partners, LLC, which is owned by the same

2    individuals. Realty Advisors' business purpose appears to be simply to act as the manager of the

3    two Funds described below. As the manager of these Funds, Realty Advisors is entitled to

4    receive a management fee pursuant to the funds' operating agreements as discussed below.

5    Those management fees are in excess of $1 million per year.

6         10.    **Diversified Fund.** The Diversified Fund was apparently created for the purposes

7    of pooling investors monies and spreading them out over a range of loans brokered by USA

8    Commercial. Rather than investors owning a direct interest in the specific notes and deeds of

9    trust, investors purchased LLC membership interest, and the LLC itself was the beneficiary

10   under specific notes and deeds of trust. As such, the investors in this fund are apparently equity

11   security holders of this Debtor. The Diversified Fund apparently has approximately 1,900

12   individual investors in an unknown amount of outstanding loans. The Diversified Fund was

13   limited to Nevada investors only and thus avoided SEC oversight. Pursuant to its operating

14   agreement, Realty Advisors is the manager and receives a management fee of 1% per annum of

15   the assets under management (i.e., outstanding loans).[3]  In the summer of 2005, the Diversified

16   Fund announced that it was ceasing its investment activities and would be liquidated.

17        11.    **Trust Deed Fund.** The Trust Deed Fund is nearly identical in form and purpose

18   to the Diversified Fund, with the exception that because it was intended for out-of-state

19   investors, it is an SEC reporting company. The Trust Deed Fund has approximately 1,300

20   individual investors and approximately $60 million outstanding in various loans, of which 76.4%

21   are fractional interests and 23.6% are whole loans. As such, the investors in this Fund also

22   appear to be equity security holders of this Debtor. It is not current with its SEC filings, and it,

23   along with the Debtors and other non-debtor affiliates, has apparently been under investigation

24   by the SEC for sometime. The most recent filing for the Trust Deed Funds was its Form 10Q for

25   the period ending September 30, 2005. It too is managed by Realty Advisors, for which Realty

26

27   _____

28   [3]  Pursuant to the Diversified Fund's operating agreement, however, the manager may be removed with an affirmative vote of 75% of the outstanding membership interest.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

1  Advisors receives a 1½% management fee per year of the assets under management.[4]  The Trust

2  Deed Fund has three different classes of units, A, B and C, which pay interest or preferred

3  distributions equal to 9%, 10%, and 11% respectively.  This is due to the different holding

4  periods required for each class, that being 12 months, 24 months, and 36 months, respectively.

5          12.    **Direct Lenders.**    Finally, there are approximately 3,600 direct lenders (the

6  "Direct Lenders"), who are parties who have lent monies directly in joint loans, which loans are

7  serviced by USA Commercial.  Critically, these Direct Lenders are not simply purchasers of

8  LLC membership interest in Debtors like the investors in the two Funds, but rather are direct,

9  joint lenders in one or more loans.  With respect to a loan made by the Direct Lenders (which

10 may include fractionalized interests of the Funds as well), the Direct Lenders are listed as direct

11 lenders on their applicable loan agreements and notes, and as direct beneficiaries on their

12 applicable mortgages and/or deed of trusts.  For example, copies of the Buckalew Trust's Loan

13 Agreement, Promissory Note, and Mortgage are attached hereto as Exhibits "1," "2" and "3,"

14 respectively.   Each of these loan documents lists the Buckalew Trust as a lender and/or

15 mortgagee.

16         13.    Debtors receive the payments on the loans on behalf of the various investors and

17 Direct Lenders pursuant to Loan Servicing Agreements, and these parties have also apparently

18 executed Declarations of Agency and/or Limited Powers of Attorney in favor of USA

19 Commercial.  The loan payments received by Debtors pre-petition were all collected into a

20 combined, commingled "Collection Trust Account" at Wells Fargo Bank in the name of USA

21 Commercial, and Debtors' Cash Management Motion seeks to continue commingling all loan

22 payments received post-petition into a combined "DIP Collection Account."

23 . . .

24 . . .

25 . . .

---

[4] Pursuant to the Trust Deed Fund's operating agreement, however, the manager may be removed by a majority vote of the outstanding units.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

## II.
## LEGAL ARGUMENT

The distinction between the investors in the Funds, and the Direct Lenders who actual made direct loans serviced by USA Commercial, is critical in this case. Payments received by Debtors from loans involving Direct Lenders are clearly not property of Debtors' bankruptcy estates (except to the extent of a Debtor's servicing fees or to the extent they are also a direct lender in one of the loans). Focusing on what is, and, more importantly, what is not property of the Debtors' bankruptcy estates is crucial, because non-estate property is not subject to this Court's jurisdiction and cannot be hijacked, like Debtors' Cash Management Motion seeks to do, for the claimed "greater good" of Debtors' reorganization efforts.

Section 541(a)(1) of the Bankruptcy Code provides that a debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ." 11 U.S.C. § 541(a)(1). What constitutes property of the estate within the meaning of Section 541 of the Bankruptcy Code is a question of federal law, see Chicago Board of Trade v. Johnson, 264 U.S. 1 (1924), however, "[p]roperty interests are created and defined by state law" and "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 55 (1979).

The case at hand is very similar to the situation at issue in Golden Mortgage Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.), 171 B.R. 79 (B.A.P. 9th Cir. 1994). In Golden Triangle, the BAP held that funds which a loan servicing agent received from a lender for disbursement to a borrower were held in trust, and therefore were not property of the loan servicing agent's bankruptcy estate. See id. at 83. The BAP reasoned that the parties entered into a relationship that the court characterized as an express trust, and that the parties only intended legal title to pass to the loan servicing agent. See id. at 82-83. The BAP noted that the loan servicing agent never had rights in the funds, and was instead intended to be a mere "conduit" for the funds. See id. at 83.

At best, Debtors' bankruptcy estates have bare legal title to the payments received on the

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

6

1  Direct Lenders' loans, and not any equitable interest (other than the loan servicing fees or to the

2  extent the Funds are also Direct Lenders in such loans).  Section 541(d) of the Bankruptcy Code

3  provides as follows:

4        (d)    Property in which the debtor holds, as of the commencement of the
   case, only legal title and not an equitable interest, such as a mortgage

5  secured by real property, or an interest in such a mortgage, sold by the
   debtor but as to which the debtor retains legal title to service or supervise

6  the servicing of such mortgage or interest, becomes property of the estate
   under subsection (a)(1) or (2) of this section only to the extent of the

7  debtor's legal title to such property, but not to the extent of any equitable
   interest in such property that the debtor does not hold.

8  11 U.S.C. § 541(d).

9      The Direct Lender's loans do not appear to be the type of secondary market mortgage

10 "participation" transactions given as the example in Section 541(d) of the Bankruptcy Code.

11 See, e.g., In re Lemons & Assocs., Inc., 67 B.R. 198 (Bankr. D. Nev. 1986); In re Mortgage

12 Funding, Inc., 48 B.R. 152 (Bankr. D. Nev. 1985).  Generally, loan "participations" involve

13 arrangements where a lender, after making the loan, sells undivided partial interests in the loan to

14 one or more participants.  The loan documents in a participation are exclusively between the

15 borrower and the original lender, and the participation of the other lenders is evidenced by a

16 participation agreement between the lead lender and the loan participants.

17     By contrast, "syndicated" or "joint" loans, like the loans involving the Direct Lenders in

18 the case at hand, involve multiple lenders on a loan from the start, where the multiple lenders

19 will be actual parties to the loan documents (although one member may ultimately serve as the

20 "lead" bank or collateral agent on behalf of the others).  In contrast to participations, in multiple

21 lender syndicated arrangements, the syndicate members have direct contractual privity with the

22 borrower--like the loans involving the Direct Lenders in the case at hand--and any funds that

23 flow through the lead agent are held in trust by him until disbursement to the syndicate members.

24     If anything, "joint" or "syndicated" loans like the ones the Direct Lenders have in the

25 case at hand (e.g., as opposed to the participations the Funds are in) are an even stronger case for

26 why the proceeds generated from the Direct Lenders' loans are excluded from property of the

27 Debtors' bankruptcy estates pursuant to Section 541(d) of the Bankruptcy Code.  In short, if

28

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

7

100911.001-01/399701_3.doc

1   secondary market mortgage transactions are excluded from property of a debtor's bankruptcy

2   estate, then certainly the underlying transactions would be as well.  Secondary market mortgage

3   transactions are only one example of the types of transactions, similar to the case at hand, that

4   may be included within the ambit of Section 541(d) of the Bankruptcy Code, and thus excluded

5   from property of a debtor's bankruptcy estate.  See, e.g., In re Cheqnet Sys., Inc., 246 B.R. 873

6   (Bankr. E.D. Ark. 2000) (proceeds of checks which debtor held, prior to its Chapter 7 filing, only

7   as collection agent with right to retain $7 on each check as fee, were included in "property of the

8   estate" only to extent of debtor's $7 per check interest); Rine & Rine Auctioneers, Inc. v.

9   Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 857 (8th

10  Cir. 1996) (if property is in the debtor's hands as agent, the property or proceeds therefrom is not

11  treated as property of the debtor's bankruptcy estate).

12       Debtors' request in its Cash Management Motion to commingle all post-petition loan

13  payments received in one consolidated "DIP Collection Account," and to use such proceeds to

14  fund operating expenses of the Debtors going forward (as opposed to returning such monies

15  immediately to Direct Lenders), also violates NRS §§ 645B.165 through 645B.175.  These

16  Nevada statutes govern the handling of monies received by a mortgage broker and his or her

17  mortgage agents, and require the segregation of monies for loan acquisitions, from monies

18  belonging to the mortgage broker, and from payments on loans.  See NRS § 645B.175.  In effect,

19  Debtors' Cash Management Motion seeks the Court's blessing to continue violating Nevada law

20  post-petition.

21       Finally, Debtors' request pursuant to Section 363 of the Bankruptcy Code must be denied

22  because this applies, by its own terms, to property "in which the estate [has] an interest" pursuant

23  to Section 363(a) of the Bankruptcy Code, and to "property of the estate" pursuant to Section

24  363(b)(1) of the Bankruptcy Code.  With respect to monies Debtors were holding in their

25  Collection Trust Account as of the Petition Date, which monies have been commingled, this may

26  require difficult accounting and tracing issues.  Loan payments received post-petition for loans

27  involving Direct Lenders, however, can very clearly be attributed to specific loans, should be

28  segregated, and should not used to fund Debtors' reorganization.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc

8

### III.
### CONCLUSION

WHEREFORE, Movants respectfully request that the Court enter order as follows:

1.     Denying Debtors' Cash Management Motion with respect to any payments Debtors received post-petition for any loans involving Direct Lenders;

2.     Sequestering any payments Debtors received post-petition for any loans payments involving Direct Lenders, and prohibiting any such monies, except for any loan servicing fees, from being used to fund Debtors' operations or reorganization; and

3.     Granting the Direct Lenders such other and further relief as is just and proper.

DATED this 28th day of April, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
WILLIAM M. NOALL, ESQ.
THOMAS H. FELL, ESQ.
BRIGID M. HIGGINS, ESQ.
GREGORY M. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Attorneys for the Buckalew Trust, and the
Kevin J. Higgins & Ana Marie Higgins Family Trust

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100911.001-01/399701_3.doc