JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone:  775-786-5000
Fax:  775-786-1177
Email:  jlc@jonesvargas.com
   and    tbw@jonesvargas.com
   and    lbubala@jonesvargas.com

Attorneys for Direct Lenders/Beneficiaries

*Electronically Filed on:*
*May 1, 2006*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No.      BK-S-06-10725-LBR<br>Chapter        11<br><br>**DIRECT LENDERS/BENEFICIARIES' OPPOSITION TO DEBTOR'S PROPOSED CASH MANAGEMENT PLAN**<br><br>Hearing Date:    May 3, 2006<br>Hearing Time:    9:30 a.m. |

Jones Vargas represents numerous direct lenders who are named beneficiaries ("Direct Lenders/Beneficiaries") of certain loans which were originated and serviced by Debtor USA Commercial Mortgage Co. (hereinafter, "Debtor" or "USA Commercial").[1] Direct Lenders/Beneficiaries hereby oppose Debtor's Proposed Cash Management Plan (Ct. Dkt. #8).

///

///

///

---

[1] Four related entities also filed concurrent Chapter 11 petitions in this Court: *In re USA Capital Reality Advisors, LLC*, Case No. BK-S-10726-LBR; *In re USA Capital Diversified Trust Deed Fund, LLC*, Case No. BK-S-10727-LBR; *In re USA Capital First Trust Deed Fund, LLC*, Case No. BK-S-10728-LBR; *In re USA Sec., LLC*, Case No. BK-S-10729-LBR.  Debtors moved for joint administration without substantial consolidation (Ct. Dkt. #4).

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Direct Lenders/Beneficiaries oppose Debtor's proposed cash management plan. The plan is inappropriate in at least three regards and violates the Direct Lenders/Beneficiaries' property rights. The core of the problem is that the borrower payments that Debtor receives as servicing agent for the Direct Lenders/Beneficiaries are not property of Debtor's estate. The same applies for lender funds received by Debtor that have not yet been used to fund a loan. In both cases, Debtor is a conduit to handle the administrative aspects as money flows between the lenders and the borrowers. To be sure, in the case of the Direct Lenders/Beneficiaries, borrowers simply make payments to Debtor in order to pay off the amount loaned by the Direct Lenders/Beneficiaries. Debtor has no rights in the borrower payments. Therefore, the Direct Lenders/Beneficiaries oppose Debtor's plans to use the borrower payments for Debtor's own benefit as proposed in the cash management plan.

## II. BACKGROUND

### A. Procedural Background

On April 14, 2006, Debtor filed a proposed cash management order (Ct. Dkt. #8). On April 17, 2006, the Court heard the proposed order and other certain first-day motions (Ct. Dkt. #12). Janet L. Chubb of Jones Vargas appeared at the hearing on behalf of the Direct Lenders/Beneficiaries and opposed the proposed order. The Court continued the hearing until 9:30 a.m., May 3, 2006 (Ct. Dkt. #16), and entered an interim order approving Debtor's cash management plan (Ct. Dkt. #32). Ms. Chubb hereby submits written opposition to the proposed cash management order on behalf of the Direct Lenders/Beneficiaries represented by Jones Vargas.

### B. Factual Background

As Debtor acknowledges, there are thousands of lenders and investors involved in its loans (Ct. Dkt. #8 at ¶4). Therefore, the Direct Lenders/Beneficiaries use David A. Souza's loan in the Oak Mesa project as a representative example of the loan process.

1  On May 25, 2004, Mr. Souza signed a loan servicing agreement with USA Commercial. Ex. 1. The agreement stated that USA Commercial is a mortgage broker and servicing agent, that Mr. Souza wishes to lend funds to borrowers for loans arranged by USA Commercial, and that Mr. Souza seeks to retain USA Commercial as a servicing agent. *Id.* at Recitals A-C. USA Commercial agrees to provide the services necessary to arrange and service the loan, including: account records on each note and the sums collected; diligent collection of all payments and prompt payment of the lender; at least quarterly statements regarding loan collections; and foreclosure or other necessary actions in the event of borrower non-payment. *Id.* at §§ 1-2.

The agreement does not explicitly state so, but it is apparent that Mr. Souza is one of many lenders whose funds are pooled to fund the loan. Thus, if USA Commercial fails to act on the lenders' behalf, the lenders may designate another to act on their behalf with approval of at least at least fifty-one percent (51%) of the holders of the beneficial interest. *Id.* at § 3(a). The lenders also may terminate the agreement with thirty-days notice. *Id.* at § 8.

On May 28, 2004, Mr. Souza signed a Declaration of Agency/Limited Power of Attorney. Ex. 2. The declaration specifies that USA Commercial is Mr. Souza's "agent to accept delivery of the Note and to hold same on [his] behalf throughout the term of the loan." *Id.* at § 1. Mr. Souza also appoints USA Commercial as his agent "to ask, demand, sue for, recover, collect and receive each and every sum of money, debt, account and demand, . . . [that] belong[s] to or [is] claimed by [Mr. Souza] in connection with the Loan." *Id.* at § 2(a). USA Commercial may not "use or release any money in which Lender holds a beneficial interest under the Deed of Trust for any purpose not directly related to servicing the Loan." *Id.* at § 3.

On July 15, 2004, Mr. Souza executed a loan agreement, promissory note, and deeds of trusts with Oak Mesa Investors, LLC.[2] Ex. 3-6, respectively, Loan Agreement; Promissory Note Secured; Deed of Trust-Riverside; and Deed of Trust-San Bernardino. The lenders agree to provide the borrower with $20.5 million, and the borrowers agree to repay the loan with interest.

---

[2] The Declaration of Agency is for a loan to Oak Valley Land Investors, LLC, but the subsequent documents reflect a loan to Oak Mesa Investors, LLC.

1  Ex. 3, Loan Agreement at § 3.1. Mr. Souza is among 236 lenders listed in the loan agreement and secured as direct beneficiaries in the promissory note and deeds of trust in an amount proportional to their contribution to the loan. *E.g., id.* at 1 & Ex. A.

### III. ARGUMENT

#### A. Property of Debtor's Estate

##### 1. Standard to Determine Property of Debtor's Estate--11 U.S.C. § 541(a)(1)

A debtor's estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Ninth Circuit Bankruptcy Appellate Panel addressed the estate of a debtor loan servicing agent in *Golden Mortgage Fund #14 v. Kennedy* (*In re Golden Triangle Capital, Inc.*), 171 B.R. 79 (1994). Specifically, *Golden Mortgage* asked whether pre-petition loan funds held by a debtor servicing agent are part of its estate. The lender provided the servicing agent with a cashiers check to fund the loan, but the agent filed for bankruptcy before distributing the money to the borrower. *Id.* at 80-81. The lender filed a complaint for declaratory relief to determine the entitlement to the loan funds. *Id.* at 81. The BAP held that the lender and debtor servicing agent intended to enter into an express trust, that the servicing agent held the loan funds in a resulting trust, and that the funds were not part of the debtor servicing agent's estate. *Id.* at 81, 82-83.

The Court explained its decision by first discussing estates in general. "It is well settled that property in the debtor's hands that belongs to another does not become property of the estate under § 541(a)." *Id.* at 81. "Under subsection (b), property held by the debtor solely for the benefit of another does not constitute property of the state. The legislative history of subsection (b) manifests Congressional concern that funds which the debtor holds in constructive trust for another should not be parceled out among the creditors." *Id.*, *quoting In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986).

The Court then considered the law of trusts. The Court explained that a resulting trust is implied by law when a transaction fails to effectuate the inferred intent of the parties. *Id.* at 82 (under California law); *see Bemis v. Estate of Bemis*, 114 Nev. 1021, 1026-27 & n.4, 967 P.2d 437, 441 & n.4 (1998) (same under Nevada law); *Hatoff v. Lemons & Assocs., Inc.* (*In re Lemons*

4

1   *& Assocs., Inc.*), 67 B.R. 198, 212 (Bankr. D. Nev. 1986) (noting trust implied by circumstances).

2   The Court also noted that property in a resulting trust is not part of the recipient debtor's estate.

3   *Golden Mortgage*, 171 B.R. at 82; *see also Airwork Corp. v. Markair Express, Inc.* (*In re Markair,*

4   *Inc.*), 172 B.R. 638, 641-42 (B.A.P. 9th Cir. 1994) (R.C. Jones, J.) (same).

5        Finally, the Court considered the relationship between the lender and the servicing agent.

6   Since the servicing agent accepted a check from the lender to fund the loan, yet never distributed

7   the funds to the borrower, the Court implied a resulting trust. *Golden Mortgage*, 171 B.R. at 82-

8   83 ("[I]t is apparent that the parties intended to enter into a brief relationship that must be

9   characterized as an express trust."). The Court also found that the lender never entered into a

10  credit relationship with the servicing agent. *Id.* at 83. Therefore, "the funds never became

11  property of the estate since [the servicing agent] was only a conduit for the funds; except for its

12  nominal fee, the [servicing agent] never had rights in the funds." *Id.*

13       *Golden Mortgage* is consistent with other decisions involving bankrupt servicing agents.

14  In *Bear v. Coben* (*In re Golden Plan of Calif., Inc.*), the Ninth Circuit Court of Appeals noted that

15  the ownership interest in notes and trust deeds belonged to the lenders named as payees and

16  beneficiaries, not the debtor mortgage broker/servicing agent. 829 F.2d 705, 707-08 & n.1 (9th

17  Cir. 1987) (reciting undisputed District Court holding not at issue on appeal). Similarly, the

18  Bankruptcy Court for the District of Delaware held that when the debtor originated and sold loans,

19  its ongoing role as servicing agent did not provide legal or equitable title to funds owed on the

20  loans. *DVI Fin. Servs., Inc. v. Nat'l Med. Imaging, LLC* (*In re DVI, Inc.*), 305 B.R. 414, 417

21  (Bankr. D. Del. 2004).

22       **2. The Borrower Payments Are Not Property of Debtor's Estate**

23       At stake are the rights to the payments made to USA Commercial, both lender payments to

24  fund as-yet unfunded loans originated by USA Commercial, and the borrower payments owed to

25  the lenders on loans organized and serviced by USA Commercial. *Golden Mortgage*, *Bear*, and

26  *DVI Financial* make it clear that when a mortgage servicing agent files for bankruptcy, the funds

27  its receives as the agent—both pre- and post-petition—are not property of the debtor's estate. The

28  servicing agents in the prior cases did not have rights in the pass-through payments they received.

JONES VARGAS  
100 W. Liberty Street, 12th Floor  
P.O. Box 281  
Reno, Nevada 89504-0281  
Tel: (775) 786-5000  Fax: (775) 786-1177

5

Thus, in the present case, USA Commercial does not have nay rights to the payments it receives from lenders for future loans, or the payments it receives from borrowers to satisfy their loan obligations to the Direct Lenders/Beneficiaries.

The Direct Lenders/Beneficiaries have real concerns about the use of their property, that is, the borrower payments. USA Commercial proposes using borrower payments received in its collection account to fund its ongoing operational costs (Ct. Dkt. #8 at 6-7), yet it has no rights in these funds beyond the fee it collects as the servicing agent. Indeed, USA Commercial is prohibited by contract from "us[ing] or release[ing] any money in which Lender holds a beneficial interest under the Deed of Trust for any purpose not directly related to servicing the Loan." Ex. 2, Declaration of Agent at § 3. Since USA Commercial does not have rights in the payments, the Direct Lenders/Beneficiaries oppose USA Commercial's proposed cash management plan.

### 3. Opposition to Debtor's Proposed Cash Management Plan

The Direct Lenders/Beneficiaries do not object to Debtors (1) opening a new debtor-in-possession account ("DIP Collection Account"), or (2) retaining the existing wire transfer "Collection Account" to receive payments as the servicing agent on the Direct Lenders/ Beneficiaries' promissory notes (Ct. Dkt. #8 at 5). However, the Direct Lenders/Beneficiaries' property—the borrower payments on the promissory notes—should not be constrained by the new DIP accounts or the pre-existing wire account. Finally, Direct Lenders/Beneficiaries oppose any attempt to hire an appraiser to evaluate the property underlying performing notes.

#### a. The New DIP Collection Account

Debtors do not have any interest in the notes or the payments on them. As noted above, USA Commercial's receipt of the borrower payments as a servicing agent does not provide it with any rights to the funds. *Golden Mortgage*, 171 B.R. at 80-83; *Bear*, 829 F.2d at 707-08 & n.1; and *DVI Financial*, 305 B.R. at 417. USA Commercial is merely a conduit handling administrative aspects as the payments move from the borrowers to the Direct Lenders/Beneficiaries, who hold all rights to such payments. As such, the notes and payments are not property of the Debtors' estates, and they should not be included in the new DIP accounts.

Instead, any borrower payments that Debtors receive for the Direct Lenders/Beneficiaries

1  should be placed in a separate trust account. Debtors need not open separate trust accounts for
2  each loan, as long as Debtors keep records of the payments into the trust account to trace the
3  proceeds from specific borrowers to the correct Direct Lenders/Beneficiaries.
4      The borrower payments should be fully segregated from Debtors' accounts since they are
5  not property of the estate. The separation of accounts is important in several respects. First, since
6  Debtors do not have any rights in the payments, separate DIP and Direct Lender/Beneficiary
7  accounts avoid any risk that the payments are improperly used to fund Debtors' ongoing
8  operations. USA Commercial, as the servicing agent, already is under a contractual obligation
9  with the Direct Lenders/Beneficiaries to keep appropriate accounting records. Ex. 1, Loan Serv'g
10 Agrmt. at § 2(b). The separation of DIP and Direct Lender/Beneficiary accounts assures that
11 Debtors properly account for borrower payments and do not misuse them.
12     Separate accounts also prevents commingling of borrower payments and Debtors' assets.
13 If borrower payments and Debtors' assets commingle, the Direct Lenders/Beneficiaries may be
14 required to trace the collections in Debtors' hands. Moreover, the Direct Lenders/Beneficiaries'
15 secured rights to the borrower payments could be limited if the payments are commingled and
16 inappropriately used by Debtors. To the extent the Direct Lenders/Beneficiaries could secure their
17 rights with attachments on Debtors' assets, as Debtors propose (Ct. Dkt. #8 at 7), such a
18 requirement places an unnecessary and undue burden on the Direct Lenders/Beneficiaries. Again,
19 USA Commercial already is contractually obligated to maintain accounting records. Separate DIP
20 and Direct Lender/Beneficiary accounts assures that Debtors account for borrower payments, and
21 eliminates the burden of tracing or attachment.

### b. Collection Trust Account for Wire Transfers

23     The Direct Lenders/Beneficiaries also recognize the administrative benefit of Debtors'
24 continued use of existing wire transfer "Collection Account." However, if borrowers continue to
25 make payments through this "Collections Account," the Direct Lenders/Beneficiaries oppose
26 Debtors' proposal to immediately transfer the funds to the new "DIP Collection Account."
27 Debtors should be required to immediately move those funds to the separate trust account
28 proposed for the benefit of the Direct Lenders/Beneficiaries. Again, the payments are not Debtors'

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

7

1  property, and they should be handled separately for the reasons stated above.

### c. Hiring an Appraiser

3  The Direct Lenders/Beneficiaries oppose any attempt by the Debtors to hire an appraiser to evaluate the properties securing the loans made by the Direct Lenders/Beneficiaries. At the minimum, any decision on the proposal appraisals should be delayed until after the court determines whether to grant the Direct Lenders/Beneficiaries with relief from the automatic stay (The Direct Lenders/Beneficiaries will file a motion on Tuesday, May 2, 2006, for relief from the stay in order to exercise their contractual right to replace USA Commercial as the servicing agent).

As an initial matter, it appears Debtors may be trying to hire an appraiser by using the borrower payments it receives (Ct. Dkt. #8 at 6-7). Again, these funds are not the Debtors' property and should properly be passed through to the Direct Lenders/Beneficiaries. Even if the an appraisal might be proper under the loan servicing agreement, it should be at least delayed until Debtors or the Direct Lenders/Beneficiaries can determine if loan is performing. If the loan is performing, there is no need for an appraisal. Any appraisal also should be delayed until the Court considered whether to grant the Direct Lenders/Beneficiaries with relief from the automatic stay to hire a new servicing agent. As noted above, Debtors have been delinquent in their duties under the servicing contract, and the Direct Lenders/Beneficiaries may decide to hire a new agent prior to any property appraisal on a non-performing loan.

### III. CONCLUSION

USA Commercial Mortgage Company helped originate and fund loans for commercial developments. However, now that USA Commercial is in bankruptcy, its proposed cash management plan inappropriately asserts ownership rights over the payments it receives as the servicing agent on those loans. Jones Vargas represents numerous direct lenders who are named beneficiaries on those loans, and these Direct Lenders/Beneficiaries hold the rights to those payments. USA Commercial simply receives the payments as a conduit to move the money from borrower to lender, and the payments in USA Commercial's hands should not be held to be part of USA Commercial's debtor estate. Therefore, the Direct Lenders/Beneficiaries oppose the

8

proposed management plan and request that borrower payment be placed in a new trust account separate and apart from any DIP accounts, that borrower payments received through the existing wire transfer account be immediately transferred to the separate trust account, and that USA Commercial be prohibited incurring the unnecessary cost of retaining an appraiser, at least until after the Court determines the rights of the lenders.

DATED this 1st day of May, 2006.

JONES VARGAS

By:  \_\_\_\_//s// Janet L. Chubb_____
     JANET L. CHUBB, ESQ.
     LOUIS M. BUBALA, ESQ.

Attorneys for Direct Lenders/Beneficiaries

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

## CERTIFICATE OF SERVICE

1.  On May 1, 2006, I served the following document(s):

    **DIRECT LENDERS/BENEFICIARIES' OPPOSITION TO DEBTOR'S PROPOSED CASH MANAGEMENT PLAN**

2.  I served the above-named document(s) by the following means to the persons as listed below:

    **:** a.  **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

- **FRANKLIN C. ADAMS**
  franklin.adams@bbklaw.com arthur.johnston@bbklaw.com
- **KELLY J. BRINKMAN**
  kbrinkman@gooldpatterson.com
- **CANDACE C CARLYON**
  ltreadway@sheacarlyon.com
  ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rsmith@sheacarlyon.com
- **CICI CUNNINGHAM**
  bankruptcy@rocgd.com
- **THOMAS H. FELL**
  THF@GORDONSILVER.COM BANKRUPTCYNOTICES@GORDONSILVER.COM
- **EDWARD J. HANIGAN**
  haniganlaw@earthlink.net haniganlaw1@earthlink.net
- **ROBERT R. KINAS**
  rkinas@swlaw.com
  mstrand@swlaw.com;jlustig@swlaw.com;lholding@swlaw.com;imccord@swlaw.com
- **ROBERT C. LEPOME**
  robert@robertlepome.com susan@robertlepome.com
- **RICHARD MCKNIGHT**
  mcknightlaw@cox.net
  gkopang@lawlasvegas.com;cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JEANETTE E. MCPHERSON**
  jmcpherson@s-mlaw.com bkfilings@s-mlaw.com
- **LENARD E. SCHWARTZER**
  bkfilings@s-mlaw.com
- **MATTHEW C. ZIRZOW**
  bankruptcynotices@gordonsilver.com

    ❾ b.  **United States mail, postage fully prepaid** (list persons and addresses):

    ❾ c.  **Personal Service** (list persons and addresses):
    I personally delivered the document(s) to the persons at these addresses:

    ❾   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

10

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

❾ For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

: d. **By direct email (as opposed to through the ECF System**) (list persons and email addresses):

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

ANNETTE W. JARVIS, ESQ.
Ray Quinney & Nebeker P.C.
Email:  ajarvis@rqn.com

THOMAS J. ALLISON
Mesirow Financial Interim Management
Email:  tallison@mesierowfinancial.com

AUGUST LANDIS, ESQ.
Office of the U.S. Trustee
Email:  augie.landis@usdoj.gov.

❾ e. **By fax transmission** (list persons and fax numbers):

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

❾ f. **By messenger**:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed blow and providing them to a messenger for service. (A declaration by the messenger must be attached to this Certificate of Service).

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 1st day of May, 2006.

| Tawney Waldo | //s// Tawney Waldo |
|---|---|
| Name | Signature |