**ORIGINAL**

Gregory J. Walch
Nevada Bar Number 4780
Email: GWalch@Nevadafirm.com
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

RECEIVED & FILED

'06 MAY -1 P2 :21

U.S. BANKRUPTCY COURT
PATRICIA GRAY, CLERK

*Attorney for Gregory J. Walch and Shauna M. Walch,
Trustees of the Gregory J. and Shauna M. Walch
Family Trust*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No.: 06-10725-LBR<br>Chapter 11<br><br>**PARTIAL OPPOSITION TO "DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET"**<br><br>Date of Hearing: May 3, 2006<br>Time of Hearing: 9:30 a.m.<br>Place: Courtroom No. 1, Third Floor<br>Foley Federal Building<br>300 Las Vegas Blvd., S.<br>Las Vegas, NV 89101<br><br>Judge: Hon. Linda Riegle |

Gregory J. Walch and Shauna M. Walch, Trustees of the Gregory J. and Shauna M. Walch Family Trust ("the Trust"), by and through their undersigned attorney, hereby oppose "Debtors' Proposed Cash Management Procedures And Interim Use Of Cash In Accordance With Proposed Cash Budget" (the "Interim Request") insofar as the Interim Request seeks to use assets belonging to the Trust, and not the estate, to fund ongoing Debtor operations.

### Background[1]

The Trust is a direct lender in four loans (the "Loans") arranged by USA Commercial

---

[1] See Declaration of Gregory J. Walch attached hereto as Exhibit 1.

01969-00/78100.doc

Mortgage Company ("UCM") between March 2005 and January 2006.[2] In each case, UCM's broker approached the Trust about making a loan to a borrower with real estate to pledge as security for the loan. The Trust evaluated each prospective loan on its merits, reviewing appraisals, income statements, rent rolls where applicable, the likelihood of obtaining applied for entitlements and approvals, and the borrowers' respective personal guarantees. In one instance, the Trust did not enter into a prospective loan because the stated valuation of an apartment complex appeared too optimistic given the annualized net income and prevailing capitalization rates.

In each loan the Trust did choose to make, however, the Trust sent a check to UCM for which the Trust obtained a receipt; the loan was made to the borrower; the borrower gave a note reflecting the correct amount of the loan from the Trust; the borrower executed a deed of trust securing the note and setting forth the correct sum owing the Trust; and the deed of trust was duly recorded.[3]

The Loan Servicing Agreement between the Trust and UCM provided, among other things, that UCM would collect interest and, if applicable, principal owed by the borrowers to the Trust on a monthly basis from each of the Loans, charge a service fee of up to 3% per annum (netting the Trust between 12% and 12.5% yield), and distribute the payment to the Trust and other direct lenders. Other than the described servicing arrangement, there was no other arrangement between the Trust and UCM. The Trust did not invest in UCM, the affiliated pooled real estate lending funds, or borrowers.

## Argument

Debtor's Interim Request seeks to perpetuate the wrongful commingling, misuse, and possible conversion of lender funds that brought UCM to this court in the first place and must to that extent be rejected. While the Trust does not take issue with the opening of the new DIP

---

[2] While the term "Direct Investor" has been used throughout the case by Debtor, it is misleading. The Trust did not invest in UCM, any UCM affiliate real estate lending fund, or indeed any borrower. The Trust made loans, the values of which were at most indirectly related to borrower financial capacity. But in no sense was the value of any loan dependant upon Debtor's financial condition or that of Debtor's affiliates.

[3] To the extent possible and subject to the accuracy of records posted on various county recorder websites, the Trust has independently confirmed that the Trust is recorded into each of the Loans in the appropriate amount.

- 2 -

01969-00/78100.doc

Collection Account as described in the Interim Request, the Trust does not consent to having Trust property contained in the DIP Collection Account converted for use by Debtor to finance the investigation of, or resolve the mess created by, UCM and its affiliates. Specifically, the Trust opposes any use of Trust money held in the DIP Collection Account or other accounts to fund operating expenses of Debtor or its affiliates as contemplated in paragraphs "f" and "g" of the Interim Request. Having said that, with proper accounting procedures in place, the Trust has no objection to the Debtor deducting from the DIP Collection Account applicable Loan servicing fees and the amounts to which the two UCM affiliate pooled funds may be entitled as fractional payees on the Loan notes. Everything else collected from borrowers on the Loans prior to and after the petition, however, is not property of the estate under 11 U.S.C. § 541 and cannot be re-characterized as such merely because Debtor happens to be the addressee for the borrowers' payments on the Loans and Debtor thinks it's more expedient to take the Trust's money than get appropriate post-petition financing.

While the Interim Request would be egregious enough were the issue only lender money held in the DIP Collection Account as a result of borrower <u>interest</u> payments, it would be a monumental injustice to the Trust (and presumably every other similarly situated lender) if nest egg <u>principal</u> paid back by borrowers was used to fund the operating budget of an entity -- Debtor - in which the Trust has no interest. With due respect for the employees involved, the Trust remains at best ambivalent about whether the Debtor even remains a going concern. Any one of a number of entities could be used to service and collect the Loans or foreclose if necessary. If Debtor needs cash, it must secure it from someone other than the Trust.

Moreover, Debtor has no right to withhold and must immediately distribute to the Trust the funds to which the Trust is entitled as a result of any payments by borrowers on the Loans before or after the petition. While Debtor may wish for more time to search for pre-petition over-payments to lenders, the effort is of no consequence because any such over-payments cannot be used as a setoff against Debtor's post-petition obligation to release to lenders according to their interests the principal and interest paid by borrowers (less service fees). 11 U.S.C. § 553(a). In addition to both obligations not being pre-petition as is required for a setoff

of debts under 11 U.S.C. § 553(a), Debtor and UCM are not the same person and therefore lack the requisite mutuality for a setoff. Accordingly, any amounts paid by Loan borrowers must be timely released to the Trust according to the Trust's interest in the various Loan notes.

The Trust evaluated and accepted the risk associated with each Loan. If a Loan went bad, the Trust anticipated foreclosure, possible fractionalized ownership of land in Texas, Indiana, or California, and a sale – hopefully yielding all or the bulk of the original principal based on good loan to value ratios and borrower guarantees. The Trust did not, however, invest in or otherwise loan money to UCM or its affiliates, and certainly did not take the risk that Trust income on the Loans that remain in good standing would be intercepted by a Debtor in Possession and used to float a bunch of companies in which the Trust has no interest.

### Conclusion

The Trust respectfully requests that the Interim Request be denied insofar as the Interim Request seeks permission to use the Trust's share of interest or principal payments held or received by Debtor on the Loans, and requests further that such interest or principal payments be distributed to the Trust according to its interest on the 10th day of each month as required by UCM's service agreement.

Dated this _1st_ day of _May_, 2006.

_____
Gregory J. Walch, Esq.
Nevada Bar Number 4780
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorney for Gregory J. Walch and Shauna M. Walch, Trustees of the Gregory J. and Shauna M. Walch Family Trust*

- 4 -

01969-00/78100.doc

# EXHIBIT

# 1

Gregory J. Walch
Nevada Bar Number 4780
Email: GWalch@Nevadafirm.com
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:   702/791-0308
Facsimile:   702/791-1912

*Attorney for Gregory J. Walch and Shauna M. Walch,*
*Trustees of the Gregory J. and Shauna M. Walch*
*Family Trust*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No.: 06-10725-LBR<br>Chapter 11<br><br>**DECLARATION OF GREGORY J. WALCH IN SUPPORT OF PARTIAL OPPOSITION TO "DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET"**<br><br>Date of Hearing:   May 3, 2006<br>Time of Hearing:   9:30 a.m.<br>Place: Courtroom No. 1, Third Floor<br>            Foley Federal Building<br>            300 Las Vegas Blvd., S.<br>            Las Vegas, NV 89101<br><br>Judge: Hon. Linda Riegle |

1. I am an attorney licensed to practice law in the State of Nevada and am a co-trustee of the Gregory J. and Shauna M. Walch Family Trust ("the Trust"). I am submitting this declaration in support of the Trust's Partial Opposition to "Debtors' Proposed Cash Management Procedures And Interim Use Of Cash In Accordance With Proposed Cash Budget" ("Interim Request"), and make this declaration based upon my personal knowledge.

2. The Trust is a direct lender in four loans (the "Loans") arranged by USA Commercial Mortgage Company ("UCM") between March 2005 and January 2006. The Trust loaned $150,000 to Roam Development Group, LP, for acquisition and conversion to condominiums of

01969-00/78400.doc

an apartment complex near Galveston, Texas in March 2005; $75,000 to Binford Medical Developers, LLC, in connection with the development of a medical office complex in Indiana on August 31, 2005; $75,000 to MS Acquisition Company, LLC, for development of a mixed-use redevelopment project in Los Angeles on December 27, 2005; and $200,000 to several Fox Hills LLC entities that were to develop Phase II of a master planned community in central California in January 2006. In each case, UCM's broker approached the Trust about making a loan to a borrower with real estate to pledge as security for the loan. The Trust evaluated each prospective loan on its merits, reviewing appraisals, income statements, rent rolls where applicable, the likelihood of gaining applied for entitlements and approvals, and the borrowers' respective personal guarantees. In one instance, the Trust did not enter into a prospective loan because the stated valuation of an apartment complex appeared too optimistic given the annualized net income and prevailing capitalization rates.

3. In each loan the Trust did choose to make, however, the Trust sent a check to UCM for which the Trust obtained a receipt; the loan was made to the borrower; the borrower gave a note reflecting the correct amount of the loan from the Trust; the borrower executed a deed of trust securing the note and setting forth the correct sum owing the Trust; and the deed of trust was duly recorded. To the extent possible and subject to the accuracy of records posted on various county recorder websites, the Trust has independently confirmed that the Trust is recorded into each of the Loans in the appropriate amount.[1]

4. I executed on behalf of the Trust a Loan Servicing Agreement between the Trust and UCM, which provided, among other things, that UCM would collect interest and, if applicable, principal owed by the borrowers to the Trust on a monthly basis from each of the Loans, charge a service fee of up to 3% per annum (netting the Trust between 12% and 12.5% yield), and distribute the payment to the Trust and other direct lenders. A copy of the Loan Servicing Agreement is attached at tab 1. Other than the described Loan Servicing Agreement and

---

[1] The only deed of trust sent to me by UCM after recording that I have not been able to independently verify is the deed of trust recorded against the Binford Medical complex near Indianapolis. The recorder's stamp on the copy sent to me by UCM, however, appears authentic.

- 2 -

01969-00/78400.doc

accompanying powers of attorney for each Loan (which basically allowed UCM to foreclose and take other actions consistent with its servicing duties), a representative copy of which is attached at tab 2, there was no other arrangement between the Trust and UCM. The Trust did not invest in UCM, the affiliated pooled real estate lending funds, or borrowers.

4. The Trust does not consent to the Debtor's Interim Request insofar as it seeks to perpetuate the wrongful commingling, misuse, and possible conversion of lender funds that brought UCM to this court in the first place. Specifically, the Trust opposes any use of Trust money held in the DIP Collection Account or other accounts to fund operating expenses of Debtor or its affiliates as contemplated in paragraphs "f" and "g" of the Interim Request. Having said that, with proper accounting procedures in place, the Trust has no objection to the Debtor deducting from the DIP Collection Account applicable Loan servicing fees and the amounts to which the two UCM affiliate pooled funds may be entitled as fractional payees on the Loan notes. Everything else collected from borrowers on the Loans prior to and after the petition, however, is not property of the estate under 11 U.S.C. § 541 and cannot be re-characterized as such merely because Debtor happens to be the addressee for the borrowers' payments on the Loans and Debtor thinks it's more expedient to take the Trust's money than get appropriate post-petition financing.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 1st day of May, 2006.

_____
Gregory J. Walch, Esq.

01969-00/78400.doc

# EXHIBIT

# 1

# LOAN SERVICING AGREEMENT

This Loan Servicing Agreement ("Agreement") is made as of the ___7th___ day of ___March___, 2004, between USA Commercial Mortgage Company ("USA") and <u>Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04</u> ("Lender").

**RECITALS**

A.      USA is a mortgage broker and loan servicer in Clark County, Nevada.

B.      Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans are arranged by USA and are secured by interests in real and/or personal property.

C.      Lender wishes to retain the services of USA in connection with making and servicing a loan or loans ("Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      <u>Services in Connection with Arranging the Loans</u>. USA will perform the following services in connection with arranging each Loan:

(a)     Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b) below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

(b)     Obtain a deed of trust, assignment of rents and security agreement executed by Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be properly recorded.

(c)     Obtain one or more personal or corporate guaranties, if applicable and as determined by USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used by USA.

(d)     If USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

(e)     Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the initial principal amount of the note and showing as exceptions only those items approved by USA and its counsel.

(f)     Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the

v.1 Rev. 8/04

1

encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee.

(g) Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

(h) Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

(i) Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest.

(j) All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request. Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

(k) Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

2. <u>Services of USA in Connection with Servicing the Loans</u>. Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

(a) Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage. USA will hold for the Lender's account such policies and renewals thereof.

(b) Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts. Those records will be available for review by the Lender during regular business hours at USA's corporate office.

(c) Until the total amount due under each note is paid in full:

(i) Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

(ii) In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

v.1 Rev. 8/04

2

(iii) In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

(iv) In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

(d) Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

(e) Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. Notwithstanding the foregoing or any other provision contained herein, USA may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

3. <u>Rights of Lender if USA Fails to Act</u>.    Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

(a) the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and

(b) the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

v.1 Rev. 8/04

4. **Legal Proceedings.** USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure; provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5. **Compensation to USA for Loan Servicing.** Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed three percent (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) and default interest collected from the Borrower pursuant to the terms of the Note. Notwithstanding the foregoing, it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6. **USA's Right to Delegate.** Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7. **No Legal Advice.** Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter.

8. **Termination.** Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

v.1 Rev. 8/04

9. <u>Lender's Registration</u>. Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

10. <u>Integration Clause</u>. This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof).

11. <u>Limited Power of Attorney</u>. With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan. Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder. No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder. All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12. <u>Notices.</u> All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

    If to USA:         USA Commercial Mortgage Company
                            4484 S. Pecos Road
                            Las Vegas, Nevada 89121-5030
                            Attention:

    If to Lender:



                            Attention:

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

13. <u>Governing Law</u>. This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

v.1 Rev. 8/04

14. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

15. <u>Attorney's Fees.</u> In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the party against whom judgment is rendered in such action shall be liable to the other for reimbursement of its costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal,

16. <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

17. <u>Headings.</u> Sections headings used in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement.

18. <u>Authority.</u> Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement.

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written.

LENDER: Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04

By: _____
Name: Gregory J. Walch
Title: Trustee

By: _____
Name: _____
Title: _____


USA COMMERCIAL MORTGAGE COMPANY

By: _____
    Joseph D. Milanowski, President


v.1 Rev. 8/04

6

# EXHIBIT

# 2

**Investor: Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04**

## SPECIAL POWER OF ATTORNEY

The undersigned, does hereby appoint USA Commercial Mortgage Company my true and lawful attorney to perform services related to the following loan in which I own a beneficial interest. A loan is being made to **Roam Development Group, LP** (the "Borrower") in an amount up to Twenty-seven Million Two Hundred Thousand Dollars ($27,200,000). In connection with the Loan, the Borrower executed a promissory note (the "Note") and a Deed of Trust and Assignment of Rents (the "Deed of Trust") to _____ as Trustee, in favor of Lender as beneficiary. The Deed of Trust was dated as of _____ and recorded on _____ as Instrument No. _____ in Book _____ in the Official Records of _____ County, Texas. Capitalized terms used herein and not otherwise defined herein are used with the meanings given them in the Note and Deed of Trust.

The services to be performed are described below:

    a.    To ask, demand, sue for, recover, collect and receive each and every sum of money, debt, account and demand, (which is now due or hereafter shall become due, owing and payable) belonging to or claimed by it in connection with the Loan, and to use and take any lawful means for the recovery thereof by legal process or otherwise, and to execute and deliver a satisfaction or release therefor;

    b.    To exercise any or all of the following powers as to the Deed of Trust, and the real property and personal property encumbered thereby:

    (1)    To execute and deliver notices of default under the Deed of Trust,

    (2)    To execute and deliver notice(s) of breach and election to sell and all other necessary documents in connection with a trustee's sale under the Deed of Trust,

    (3)    To execute and deliver full and/or partial reconveyances of the Deed of Trust upon the payment therefor to the undersigned, as required by the Deed of Trust, which payments to the undersigned are to be made directly to the undersigned, in proportion to their respective interests, and not to said attorney-in-fact; and

    (4)    In the event of a foreclosure of the Deed of Trust, to sell the real property for the satisfaction of the indebtedness secured by it;

    (5)    To execute any and all the subdivision map(s) affecting the real

v.2 Rev. 10/04          1

**Investor: Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04**

property encumbered by the Deed of Trust; and to execute any certificates or documents to permit the recording of covenants, conditions, and restrictions of record (CC & R's) affecting the real property encumbered by the Deed of Trust, or any amendments or revocations thereof, that are appropriate or necessary for the development of the real property;

(c)     To modify and amend the Note or Deed of Trust on such terms and conditions as required by the Loan Agreement, subject to the provisions of this Declaration.

This power of attorney shall not be effective to authorize any transaction that subordinates the priority of the recorded deed of trust that secures this loan unless accompanied by a writing issued by the undersigned that consents to such subordination.

This power of attorney shall not be effective to authorize the use or release of money in which the undersigned owns a beneficial interest for any purpose except for the provision of the services described above relating to the loan described above unless accompanied by written authorization by the undersigned for the use or release of money for the other purpose.

This power of attorney is effective for the term of the loan after the date executed but may be extended for additional increments not to exceed six (6) months each if authorized in writing by the undersigned. Only one such authorization may be given for an extension during each extension period.

I give and grant to my said attorney full power to execute in my name contracts, escrow instructions, conveyances, mortgages, deeds of trust, and all other documents necessary to carry out the services described herein as fully to all intents and purposes as the undersigned might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do, or cause to be done, by virtue of these presents.

(Signature page or pages follow. This document is invalid if anything other than the signature page or pages [including the notary jurat] follow this page)

**Investor:** Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04

WITNESS MY HAND this 7th day of March, 2005.

**LENDER:** Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04

_____
Gregory J. Walch, Trustee

STATE OF Nevada      )
                     ) ss.
COUNTY OF Clark      )

On 3/7, 2005, before me, TA Stewart, a Notary Public in and for said State, personally appeared **Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature

(Seal)
**T. A. STEWART**
Notary Public, State of Nevada
Appointment No. 96-1080-1
My Appt. Expires May 9, 2007

v.2 Rev. 10/04                3