Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Proposed Attorneys for Debtor and Debtor-in-Possession

E-FILED ON MAY 2, 2006

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos. BK-S-06-10725-lbr<br><br>Chapter 11<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363 APPROVING DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET**<br><br>Hearing Date: May 3, 2006<br>Hearing Time: 9:30 a.m. |

/ / /

/ / /

/ / /

/ / /

1

USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated debtors, which are USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively, the "Debtors"), submits this Brief in support of the Debtors' Motion for Order Under 11 U.S.C. §§ 105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and Interim Use of Cash in Accordance With Proposed Cash Budget (the "Motion") and in reply to the objections to the Motion that have been filed.

## INTRODUCTION

The Debtors filed this Motion for permission to use cash collected by the Debtors in its "Collection Account," meaning the account in which payments from Borrowers are collected, in accordance with and as limited by the Budget attached to the Motion, as modified in the Revised Budget attached to the Supplemental Declaration of Thomas J. Allison (the "Supplemental Allison Declaration"). For clarification, the money the Debtors collected pre-petition in the Investors Account, meaning money that was collected to fund new loans, is not implicated by this Motion as this Motion does not propose to use any cash held in that account.

As explained to the Court at the initial hearing, the 90-day Revised Budget is limited solely to accomplishing two things. First, the Revised Budget includes costs, including professional and attorneys fees, associated with administering the loan portfolio, including monitoring and collecting monthly payments, negotiating and providing documentation necessary to collect these payments, and taking all necessary enforcement actions on non-performing loans. The taking of these actions are mandated by the Loan Servicing Agreements entered into between USACM and each investor, and are necessary to preserve each investor's rights in the loans in question. Further, as set forth more fully below, the expenditures projected in the Revised Budget do not exceed the sum of the servicing and other contractual fees and costs that the Debtors are allowed to assess against and collect from the investors and the other amounts the Debtors are entitled to collect directly from borrowers and other sources.

Second, the Revised Budget includes costs, including professional and attorneys fees, associated with administering the case, including sorting out claims of investors in light of the fact

2

P:\USA Commercial Mortgage\Pleadings\Cash Management Motion\RQNDOCS-#872589-v1-
Reply_Brief_in_Support_of_Motion_to_Approve_Cash_Management_and_Use_Cash (2)- final.DOC

that the past practice of the Debtors has been to make interest payments to all investors whether or not money was collected on the underlying loan. These practices have resulted in some investors being paid more than they were entitled to under their contracts and some investors being paid less than they were entitled to under their contracts. Because many individual investors invested in more than one loan and invested both in direct loans and through the USA Capital First Trust Deed Fund, LLC and the USA Diversified Trust Deed Fund, LLC (collectively the "Funds"), numerous investors fall into both the categories of having been both overpaid and underpaid with respect to the different loans in which they invested. Further, in order to keep up the interest payments, USACM, on many occasions, paid its own money to investors -- money that USACM was entitled to collect as servicing and other fees and costs and as to which it needs to now recover from investors that were wrongfully paid. It is critical that the Debtors make this analysis so that no money is paid post-petition to investors who are not entitled to receive the money and in order to preserve offset rights USACM has against investors both on its own account and for the account of other investors. The keeping of appropriate account records is required by the Loan Servicing Agreements entered into between USACM and each investor as part of servicing these loans, and such records are necessary to insure proper distribution of funds.

As set forth more fully below, the expenditures in the Revised Budget do not require USACM to use any funds collected on behalf of investors beyond the amounts it is entitled to retain by contract and by statute for servicing and related contractual fees and costs that the Debtors are allowed to assess against the investors, thus making this portion of the money collected clearly property of the estate under Section 541 of the Bankruptcy Code that can be used by the Debtors as requested in the Motion.

### STATEMENT OF FACTS

Every investor, including the Funds and investors investing directly or through the Funds, whether investing directly or through the Funds, signed a Loan Servicing Agreement with USACM. The Loan Servicing Agreement provides that USACM is authorized and instructed to "keep appropriate accounting records on each note and the sums collected thereon," [LSA ¶ 2(b)], to "[p]roceed diligently to collect all payments due under the terms of the note and promptly pay

3

1  the proper parties, when and if due, principal, interest, late charges, insurance and other specified
2  funds," [LSA ¶ 2(c)(i) (emphasis added)] , and to "[p]rovide the Lender with regular statements
3  regarding loan collections . . . ." [LSA ¶ 2(d)].

4        The Loan Servicing Agreement also requires USACM to "take steps to collect" payments
5  when "the Borrower fails to make any payment to USA." [LSA ¶ 2(c) (ii)] This includes, but is
6  not limited to, authorization to obtain "representation for Lender in litigation and bankruptcy
7  proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect
8  the interests of the Lender, *and of all Lenders in the loan*." [LSA ¶ 2(c) (ii) (emphasis added)].

9        In paragraph 4, the Loan Servicing Agreement goes on to set forth the obligations and
10 rights of USACM in the event legal proceedings are instituted. This provision provides that legal
11 proceedings instituted under this agreement "may be pursued in USA's name only or as agent for
12 Lender," thus granting to USACM the sole standing to bring actions to collect on the loans in
13 question. [LSA ¶ 4] Further, USA is granted the right to "retain attorneys on Lender's behalf"
14 and the investor (or "Lender"), "[u]pon demand by USA . . . agrees to promptly pay, either in
15 advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred,
16 including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay
17 such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA
18 may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of
19 foreclosure; provided, however that any fees advance by USA shall be paid back from the
20 proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected
21 with respect to such Loan before any payments are made to Lender." [LSA ¶ 4].

22       In addition to the right given in paragraph 4 to require the investors to pay for the costs of
23 collection, including attorney's fees, by payments directly to USACM or by offset against
24 amounts that would otherwise be payable to investors, the Loan Servicing Agreement provides for
25 an annual servicing fee to be paid to USACM. In paragraph 5, the Loan Servicing Agreements
26 provide, in addition to loan origination fees (that USACM is entitled to collect directly from
27 borrowers, along with certain other fees such as loan extension fees and exit fees), for an annual
28 servicing fee, payable on a monthly basis, which in some earlier Loan Servicing Agreements was

4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

stated as not to exceed 1% per annum of the maximum principal amount of each loan and in later Loan Servicing Agreements was stated as not to exceed 3% per annum of the maximum principal amount of each loan. [LSA, ¶ 5]   While USACM had been collecting some servicing fees in the past, prior to the bankruptcy petition date it was not collecting the full servicing fee to which it was entitled.  It some instances, it was not accruing or collecting any servicing fee, and in other instances it was accruing only 0.5% or 1.0% of the loan balances but not collecting the accrued amounts.  In any event, USACM was not collecting the full amount of the annual loan servicing fees it was entitled to collect under the Loan Servicing Agreements.  A principal reason USACM was not diligent in collecting loan servicing fees prior to the petition date was that in order to make interest payments every month to all investors, USACM paid out what it was entitled to take as a servicing fee to investors when not enough money was collected to make the interest payments.  Consequently, USACM has the right to collect the uncollected servicing fees from past or future monies collected on behalf of those investors that have received overpayments from USACM's own money.  The Debtors' cash management motion proposes to use past due, currently owed, and future servicing fees, which are property of USACM, along with enforcing its right to hire attorneys and obtain payment or reimbursement of the same from the lenders, to fund the operations of these Debtors in accordance with the Revised Budget.

Finally, paragraph 5 of the Loan Servicing Agreement also allows USA to keep all late charges and default interest collected from the borrowers.  As noted above, late charges are referenced in paragraph 2(c)(i) with respect to USACM's obligation to make certain that the amounts collected are paid to the "proper parties," which, because of paragraph 5, means USACM.  Paragraph 5 also allows USACM to assist lenders in finding potential buyers for their interests and charge a 5% assignment fee based on the remaining balance of the lender's undivided interest in the note, and to charge and keep all extension fees in the event an extension with a borrower is negotiated. [LSA ¶5]   These funds are also property of USACM and will be used to fund the operations of these Debtors in these bankruptcy cases.

In addition to the fees allowed USACM under the Loan Servicing Agreements with investors, USA Capital Realty Advisors, LLC ("USACRA") is entitled to be paid a monthly

5

management fee pursuant to the Second Amended and Restated Operating Agreement of USA Capital First Trust Deed Fund, LLC (the "First Trust Deed Agreement") and the Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Trust Deed Agreement").  This fee amounts to an annual fee of 1% of the funds managed under the Diversified Trust Deed Agreement, and an annual fee of 1.5% of the funds managed under the First Trust Deed Agreement.  As Manager, USACRA is required, under paragraph 3.1 of the First Trust Deed Agreement and under paragraph 3.01 of the Diversified Trust Deed Agreement, to "prosecute . . . compromise . . . or adjust any and all claims . . . for . . . the Company," to "employ, at the expense of the Company, such agents, employees, independent contractors, attorneys, and accountants, as the Manager deems reasonable and necessary for any Company purpose, to "enforce loan documents" and to "retain such advisors and professionals . . . and do all other things that are, in the sole business judgment of the Manager, necessary or appropriate to effectuate any of the foregoing."  In accordance with this contractual right to collect this fee and in furtherance of its duties as the Manager of these two funds, the Revised Budget includes management fees paid by the Funds to USACRA from cash currently on hand, which is then contributed by USACRA to USACM to reimburse USACM for carrying out the duties of USACRA in enforcing and administering the loans in which the Funds are invested.

The Supplemental Declaration of Thomas J. Allison sets forth certain other relevant facts in support of this Motion and is incorporated by reference herein.

**ARGUMENT**

**I.  FUNDS SUFFICIENT TO COVER THE REVISED BUDGET ARE PROPERTY OF USACM'S ESTATE AND MAY PROPERLY BE USED BY USACM IN ACCORDANCE WITH THE MOTION.**

Property of the estate includes "all legal or equitable interests of the debtor in property" as of the bankruptcy petition date.  11 U.S.C. § 541(a).  While USACM in its capacity as loan servicer is holding and collecting certain funds on behalf of the loan investors, the portion of those funds representing the full contractual servicing fees and other fees which USACM is entitled to collect and funds which can be used to pay for attorneys fees and other costs of collection on the

1  non-performing loans clearly are property of the estate under Section 541(a) which can be used, in
2  accordance with Revised Budget, to administer the estate, enforce the loans, and create appropriate
3  accounting records for each note and the sums collected on each note, all of which is allowed and
4  required of USACM under the Loan Servicing Agreements.

5  In the case of *In re Mortgage Funding Inc.,* 48 B.R. 152 (Bankr. Ct. D. Nev. 1985), the
6  Court denied motions for relief from the stay brought by investors who funded loans to borrowers
7  serviced by the debtor, a mortgage broker. In that case, the debtor was entitled to "retain" the
8  "difference between the higher return on the assigned note and the lower return on the new note"
9  as a "servicing fee." *Id.* at 153. The Court found that the "debtor has an interest in the assigned
10 notes and deeds of trust" to the extent that "servicing fee" and that "the debtor's limited interest in
11 the assigned notes and deeds of trust passed to the debtor's estate on the date the petition was
12 filed." *Id.* at 155-156. Consequently, the Court held that "the trustee shall retain the difference
13 between the amounts collected on the assigned notes and the amounts paid on the notes issued by
14 the debtor, for the benefit of the estate." *Id.* at 156.

15 In connection with the Motion, the Debtors are asking for permission to use funds
16 collected on behalf of investors only to the extent of the "debtor's limited interest" in the funds
17 collected. This money is property of the estate pursuant to Section 541(a) and is properly used for
18 administrative and collection purposes as proposed in the motion. Moreover, USACM has other
19 sources of funds, including deferred loan origination fees for loans closed pre-petition (USACM
20 has not originated any new loans since the petition date and will not do so without Court approval)
21 and other loan fees, such as loan extension fees and loan exit fees, that USACM is entitled to
22 collect directly from borrowers. One of the Debtors, USA Capital Realty Advisors, is also entitled
23 to charge its contractual management fee to the two Funds it manages, as explained above. The
24 Revised Budget proposes to use approximately $4.2 million in cash over a three-month period.
25 When combined with the Debtors' sources of funds other than those collected on behalf of the
26 loan investors, the monthly loan servicing fee of 1/12 of 1% or 3% of the outstanding loan
27 balances which USACM is entitled to retain from loan payments it collects as loan servicer is
28 adequate to cover the expenditures set forth in the Motion and Revised Budget. As such, the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

7

1 Motion seeks to use only what is clearly property of the Debtor's estate and should be granted.

2 **II.  THE RELIEF REQUESTED IN THE MOTION IS CONSISTENT WITH THE NEVADA STATUTE GOVERNING TRUST FUNDS HELD BY MORTGAGE BROKERS.**

Even if the funds in question are eventually determined to be funds held in trust by USACM as a mortgage broker under Nev. Rev. Stat. § 645B.175, the use of cash as requested in the Motion complies with that statute. Nev. Rev. Stat. § 645B.175 (5) (a) provides that monies held in trust by a mortgage broker must be released to investors only after "the deduction and payment of any fee or service charge due the mortgage broker." Thus, as this statute applies under the current circumstances, the statute acknowledges and allows for USACM, as the mortgage broker, to take money out of the collection account to pay its own contractually allowed fees and charges. Since USACM is not seeking by its Motion to use any monies USACM has collected as loan servicer on behalf of loan investors other than the statutorily allowed amounts, the relief requested in the Motion complies with the statute.[1]

**III.  REPLY TO SPECIFIC OBJECTIONS FILED.**

Several objections to the Motion have been filed as of May 1, 2006, and others may be filed. The Loan Investors and/or Fund Members making the objections appear to fall into two main categories: (1) investors claiming a right to funds in the USACM "Investors Account" (funds which the Debtors are *not* seeking to use pursuant to the Motion) due to certain recent assignments made just prior to the Petition Date of certain interests in Serviced Loans; and (2) investors who have an interest in one or more Nonperforming Loans who actually owe money to USACM for monthly overpayments they received from USACM to which they were not entitled. Each of the

---

[1] While this will be addressed in more detail in the Debtors' Motion to Temporarily Hold All Funds Pending a Determination of the Proper Recipients, the Debtors would further note that Nev. Rev. Stat. § 645B.175 (5)(b) also prohibits a mortgage broker from releasing money held in trust to "any investor who owns a beneficial interest in the loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial interest in the loan." Thus, while objections raised by individual investors to the Motion argue for an immediate distribution of funds held on account of their fractionalized interests in a loan, under this statute, such a distribution cannot be made until distributions can be made to every investor in a loan, including to investors owing money to the estate for prior improper distributions and to the Funds as investors.

8

specific objections that appears on the Court's docket in the USACM case as of May 1, 2006 is addressed briefly below. The status of a particular loan as performing or nonperforming, the amount of interest in arrears, and other information about specific loans referred to below, is given in the spreadsheet attached as Exhibit A to the Supplemental Allison Declaration.

        1.      <u>Alexander Objection</u>. Pursuant to an objection filed April 25, 2006, the Stanley Alexander Trust, Stanley Alexander, and Florence Alexander (collectively, the "Alexanders") assert that they invested approximately $1.8 million in loans brokered or to be brokered by USACM. Apparently, $100,000 of those funds was invested in a check that cleared the day before the Petition Date. To the extent any of the Alexanders' funds invested prior to the Petition Date was in USACM's "Investors Trust" account on the Petition Date, the Alexanders' objection is not a proper objection to the Motion. As explained above and in the Motion, the Debtors' Motion does not request authority to use any of the funds held in the "Investors Trust" account as of the Petition Date, and USACM will continue to hold such funds pursuant to Nevada state law and other applicable law pending a determination by this Court as to the proper disposition of such funds. To the extent the Alexanders' objection alleges that USACM has no interest in loan payments collected by USACM on loans in which they may have a small fractional interest, and that the promissory notes should be released to them for collection, the objection lacks merit. As explained above, USACM has a contractual right as well as a contractual and statutory duty to service the loans on behalf of Alexanders and all other Loan Investors holding fractional interests in those same loans, and the contractual servicing fee and other fees to which USACM is entitled to collect from Alexanders and others under the LSAs is property of USACM's bankruptcy estate. Furthermore, of the loans listed on Exhibit E to the Alexanders' objection, the following are currently Nonperforming Loans: (1) Marquee Hotel Palms; (2) Placer Vineyards; (3) One Point St., LLC (aka "HFA – North Yonkers"); (4) Roam Investment (Development); (5) Rivera Homes; and (6) HFA – Clear Lake. Thus, to the extent the Alexanders received interest payments to which they were not entitled on their investments in Nonperforming Loans, they owe a debt to USACM for the overpayments.

        2.      <u>Benincasa Objection</u>. Focerfida Benincasa and Jasper Benincasa Jr. (the

"Benincasas") filed an objection on April 27, 2006. Apparently, the Benincasas made their one and only investment through USACM by investing $110,000 with a check deposited to USACM's "Investors Trust" account that cleared one day prior to the Petition Date. As stated above, to the extent the funds were in the "Investors Trust" account on the Petition Date, the Benincasas' objection is not a proper objection to the Motion.[2] To the extent the funds were invested in one of the Serviced Loans as of the Petition Date, USACM is entitled to charge the servicing fee and other fees set forth in the LSA, and such amounts are property of the estate.

3. <u>Objection of Sandler, Gackenbach, Steins, and Rowley</u>. An objection to the Motion was filed April 27, 2006 by the Sandler Revocable Trust ("Sandler"), Gackenbach Revocable Trust and David Gackenbach IRA (collectively, "Gackenbach"), Susan Stein Trust and Susan Gackenbach IRA (collectively, "Susan Stein"), various Jay Stein trusts and IRA (collectively, "Jay Stein"), and the Rowley Living Trust ("Rowley"). In the objection, the objectors admit that USACM is entitled to use funds for the purposes set forth in the Motion to the extent of the servicing fee USACM is entitled to collect. This is all that is sought in the Motion. Further, the objection argues that what "should be Debtors' first and most immediate priority is determining the performing or non-performing status of each loan in the portfolio." Objection at 3. This is exactly what USACM is doing, and is part of the budgeted amount and part of the services contemplated under the LSAs for which USACM is entitled to collect its contractual fees. In fact, USACM has determined that the objectors, who each signed a Declaration that is part of the Exhibit A attached to the objection, have each invested in at least one Nonperforming Loan and thus may owe a debt to USACM for interest overpayments. The Nonperforming Loans referred to in the objectors' Declarations include: (1) Shamrock Tower, LP (which is $1.5 million

---

[2] USACM is aware that approximately $1.9 million in new funds from investors was deposited into the "Investors Trust" account shortly before the Petition Date, and that such funds were intended to be used to purchase assignments of interests in some of the Serviced Loans that certain Loan Investors desired to sell and assign. Apparently, the Petition Date intervened after the assignment documents were executed and the checks were issued to the sellers/assignors but before the checks cleared. USACM understands that the assignees (such as, apparently, the Alexanders and the Benincasas) and the assignors (such as the Ronnings, as discussed below) may have competing claims to the funds in the "Investors Trust" account. USACM will not disburse any funds from that account until the competing claims are determined by the Court.

P:\USA Commercial Mortgage\Pleadings\Cash Management Motion\RQNDOCS-#872589-v1-
Reply_Brief_in_Support_of_Motion_to_Approve_Cash_Management_and_Use_Cash (2)- final.DOC

in arrears); (2) Gramercy Court Ltd. ($750,000 in arrears); (3) Palm Harbor One, LLC ($20,000 arrearage); (4) Fox Hills 216, LLC ($299,000 arrearage); (4) Fox Hills 185, LLC ($675,000 arrearage); (5) Oak Mesa Investors, LLC ($3.6 million arrearage); and (6) Marlton Square Associates, LLC ($975,000 arrearage).

4.  <u>Objection of Buckalew Trust and Higgins Trust</u>.   The Buckalew Trust and Higgins Trust filed an objection on April 28, 2006.  The objectors falsely alleged that the relief requested in the Motion violates Nevada mortgage broker laws (Nev. Rev. Stat. §§ 645B.165 to .175), and that the Motion seeks in effect "the Court's blessing to continue violating Nevada law post-petition."  Objection at 8.  To the contrary, the Motion clearly explains that under the Debtors' cash management proposal, payments collected on Serviced Loans will go in to the DIP Collection Account and remain segregated there from any amounts belonging to USACM and from any amounts received for new investments (if any) with USACM, all in full compliance with Nev. Rev. Stat. § 645B.175(4).  Under the statute and to the extent approved by this Court pursuant to the Motion, USACM is then entitled to deduct and transfer to its DIP Operating Account (as requested in the Motion) the full amount of "any fee or service charge due to the mortgage broker."  *Id.* § 645B.175(5).   The objection acknowledges that USACM is entitled to use "monies . . . for any loan servicing fees" pursuant to the Motion.  *See* Objection at 9.  As explained above, the limited amounts set forth in the Revised Budget do not exceed the contractual servicing fees to which USACM is entitled under the LSAs.  Moreover, the Buckalew Trust is invested in the One Point Street, LLC loan (aka "HFA-North Yonkers"), which is a Nonperforming Loan having approximately $3.7 million in unpaid interest due as of March 31, 2006.  Thus, the Buckalew Trust may owe a debt to USACM for the monthly payments of interest to which the Buckalew Trust was not entitled.  The objection does not indicate what investment was made by the Higgins Trust and, as Merisow has not yet completed its work in preparing investor-by-investor account reconciliations, USACM cannot at this time readily determine whether the Higgins Trust invested in any Nonperforming Loans.

5.  <u>Eight Separate Objections Filed May 1, 2006 by Attorney Robert LePome for Various Investors</u>.  On May 1, 2006, attorney Robert LePome filed eight separate objections on

11

1. behalf of various investors, including Richard Williams, Carole Talan, and Hans Prakelt (USACM
2. docket no. 94); Church of the Movement of Spiritual Inner Awareness (docket no. 95); Nancy
3. Golden (docket no. 96); Marilyn Molitch, Matthew Molitch, and Molitch 97 Trust (docket no. 97);
4. Phillips Family Trust, Frances Phillips, and Stephen Phillips (docket no. 98); Spectrum Capital,
5. LLC (docket no. 99); Bosworth Family Trust, Crosbie Ronning, Wild Water Ltd. Partnership, and
6. Grable Ronning (docket no. 100); and Patrick Davis IRA, Susan Davis, and Patrick Davis (docket
7. no. 101).  It appears that each of these objections raises similar legal issues, although USACM has
8. not yet had time to review in detail these objections to determine that status of the investments
9. made by these investors.  The form of these objections is nearly identical to the Alexanders'
10. objection discussed above, which was also filed by attorney Robert LePome, and it appears that at
11. least some of these objectors have both fractional interests in Serviced Loans as well as claims to
12. funds held in the "Investors Trust" account, as the Alexanders do.  However, there is an important
13. distinction between the Alexanders' position (and that of the Benincasas, above) and the position
14. of the Ronnings (and possible others of these May 1, 2006 objections):  while the Alexanders have
15. a claim on the "Investors Trust" account based on their status as an assignee/purchaser of a
16. fractionalized loan interest just prior to the Petition Date, the Ronnings apparently have a claim on
17. the same "Investors Trust" account based on their status as an assignor/seller of a fractionalized
18. loan interest just prior to the Petition Date.  Although, as noted above in connection with the
19. Alexanders' and the Benincasas' objections, the competing claims to the funds in the "Investors
20. Trust" account are not relevant in considering the relief requested by the Motion, the competing
21. claims of Mr. LePome's clients do highlight a conflict of interest between assignees and assignors
22. of loan interests having competing claims on the "Investors Trust" account.  USACM will attempt
23. to determine the status of the loan interests held by the investors objecting in these eight
24. objections and present such information at the hearing on the Motion.
25.       Each of Mr. LePome's clients also attempts in the objections to unilaterally terminate the
26. powers of attorney appointing USACM to act with regards to their individal investments.  These
27. powers of attorney give USACM specific valuable rights and should be considered as property of
28. the estate.  *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications,*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*Inc.)*, 824 F.2d 725, 729 (9th Cir. 1987) (although the definition of property under Section 541 neither explicitly includes or excludes contract rights, the definition does include "all legal or equitable interests of the debtor in the property as of the commencement of the case." )(quoting 11 U.S.C. §541(a)(1)); *see also In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986) (holding that insurance contracts are also considered to be property of the estate). Because the powers of attorney should be considered as property of the estate, the objecting parties' efforts to unilaterally terminate them are a violation of the automatic stay. *See Codex*, 824 F.2d at 731 ("Codex violated the automatic stay statue by terminating its contract unilaterally rather than applying for relief from the bankruptcy court."); *see also In re Bobbit*, 174 B.R. 548, 554 (Bankr. N.D. Cal. 1993) ("[U]nilateral termination of a contract by a creditor requires relief from the automatic stay."). Actions in violation of the stay are void. Moreover, even if objectors could properly terminate their powers of attorney granted to USACM, the servicing rights they granted to USACM under their Loan Servicing Agreements are similar to (but broader than) those addressed in the power of attorney agreement, and cannot be terminated without 30 days' advance notice.

6. <u>Objection by Attorney Janet Chubb on Behalf of Unidentified Investors</u>. On May 1, 2006, attorney Janet Chubb filed an objection to the Motion on behalf of "numerous direct lenders who are named beneficiaries . . . of certain loans which were originated and serviced" by USACM. Objection at 1. In form and substance, the objection is similar to other objections discussed and responded to above. Furthermore, the objection fails to reveal the names of any of Ms. Chubb's clients on whose behalf the objection is filed. In addition, it does not appear that Ms. Chubb has filed with the Court the verified statement required by Fed. R. Bankr. P. 2019(a) when an entity or committee (other than an official committee appointed under 11 U.S.C. § 1102 or 1114) is representing more than one creditor or equity security holder. The objection does indicate that the numerous (but unidentified) objectors represented by Ms. Chubb "use David A. Souza's loan in the Oak Mesa project as a representative example of the loan process." Objection at 2. Although it is not clear whether David A. Souza is in fact one of the numerous objectors represented by Ms. Chubb, USACM has determined that the Serviced Loan in which Mr. Souza

has a fractional interest, the Oak Mesa / Oak Valley loan (aka "Fiesta Oak Valley"), is a Nonperforming Loan having delinquent unpaid interest of approximately $3.6 million. Thus, to the extent Mr. Souza (or any of the "numerous" but unidentified objectors having an interest in this loan) received monthly interest payments from USACM while the borrower was not making interest payments to USACM, Mr. Souza owes a debt to USACM for the amount of the overpaid interest.

7.   <u>Objection of Richard McKnight.</u>   The final objection to the Motion that appeared on the USACM electronic docket on May 1, 2006, is an objection by the Richard and Sheila McKnight Family Trust and the Richard McKnight SEP-IRA (collectively, "McKnight"). In form and substance, the McKnight objection is similar to many of the other objections discussed and responded to above. The Serviced Loans listed on the last page of the objection in which McKnight has an interest includes the following Nonperforming Loans: (1) Roam Development; and (2) Eagle Mountain Development. To the extent McKnight received monthly interest payments from USACM while the borrowers on the Nonperforming Loans were not making interest payments to USACM, McKnight owes a debt to USACM for the amount of the overpaid interest.

## CONCLUSION

The proposed use of USACM's portion of the funds held in the Collection Account allows USACM to fulfill its obligations under the Loan Servicing Agreement, including creating the proper accounting records to make sure that any payments made are made to the "proper" parties and allowing for the enforcement of loans and the preservation of collateral for the benefit of substantially all of the investors. This proposed use is appropriate, given that this involves only the Debtors' property under Section 541(a) of the Bankruptcy Code, is in compliance with Nev. Rev. Stat. § 645B.175, and is consistent with general equitable principles allowing for surcharging similar funds for administrative purposes only. Further, the granting of this Motion is in the best interests of all of the investors and the Debtors' creditors because, absent funding for USACM to take the actions proposed in accordance with the Revised Budget, the individual investors and the investors in the Funds, nearly all of which have only small fractional interests in certain loans, will

1  not be able to promptly and adequately protect their fractionalized interests, the majority of which
2  appear to be in non-performing loans.  This problem is highlighted by the fact that virtually all of
3  the investors objecting to this Motion have invested in non-performing loans, which need the
4  immediate servicing and collection attention of USACM in order for their rights to be preserved.
5  Further, in the Loan Servicing Agreement, each individual investor recognized and, in essence,
6  agreed to not advance their fractionalized interest in a loan in a way that would harm the other
7  owners of the loan.  All investors agreed that only USACM, not any of them individually, could
8  sue on behalf of all owners of the loan.  All investors agreed that attorneys could be retained
9  where as may be deemed "necessary or appropriate by USA" to fully protect the interests" not
10 only of themselves as a Lender, but "of all Lenders in the loan."  This agreement on the part of the
11 investors is in accordance with the prohibition found in Nev. Rev. Stat. § 645B.175 (5) (b), which
12 requires equal treatment of all investors in a loan with respect to distributions allowed.  Protecting
13 the interests of *"all Lenders"* in each loan is exactly what USACM is proposing to do under the
14 Motion and Revised Budget in accordance with its contracts and *out of its own money*.  USACM
15 should be allowed to do so over the objections of a minority of investors, allegedly holding
16 fractionalized interests of some of these loans, where the claims of these investors to proceeds of
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

P:\USA Commercial Mortgage\Pleadings\Cash Management Motion\RQNDOCS-#872589-v1-
Reply_Brief_in_Support_of_Motion_to_Approve_Cash_Management_and_Use_Cash (2)- final.DOC

the loans, net of USACM's contractually entitled fees, is not being affected. To do otherwise severely prejudices the silent majority of investors whose rights, along with the vocal minority, are being fully protected by USACM in accordance with their contracts and Nevada law.

DATED this 2nd day of May, 2006.

        Annette W. Jarvis, Utah Bar No. 1649
        RAY QUINNEY & NEBEKER P.C.
        36 South State Street, Suite 1400
        P.O. Box 45385
        Salt Lake City, Utah 84145-0385

        and

        _____
        Lenard E. Schwartzer, Esq.
        Jeanette E. McPherson, Esq.
        Schwartzer & McPherson Law Firm
        2850 South Jones Boulevard, Suite 1
        Las Vegas, Nevada 89146-5308

        Proposed Attorneys for Debtor and Debtor-In-Possession

P:\USA Commercial Mortgage\Pleadings\Cash Management Motion\RQNDOCS-#872589-v1-Reply_Brief_in_Support_of_Motion_to_Approve_Cash_Management_and_Use_Cash (2)- final.DOC

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122