1  Annette W. Jarvis, Utah Bar No. 1649
   RAY QUINNEY & NEBEKER P.C.
2  36 South State Street, Suite 1400            **E-FILED ON MAY 8, 2006**
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
4  Telephone: (801) 532-1500
   Facsimile: (801) 532-7543
5  Email: ajarvis@rqn.com
6  and
7  Lenard E. Schwartzer
   Nevada Bar No. 0399
8  Jeanette E. McPherson
   Nevada Bar No. 5423
9  Schwartzer & McPherson Law Firm
10 2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada  89146-5308
11 Telephone:  (702) 228-7590
   Facsimile:  (702) 892-0122
12 E-Mail:  bkfilings@s-mlaw.com
13 Proposed Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

14 **DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | **DEBTORS' MOTION TO TEMPORARILY HOLD FUNDS PENDING A DETERMINATION OF THE PROPER RECIPIENTS, AND MEMORANDUM OF POINTS AND AUTHORITIES (AFFECTS ALL DEBTORS)** |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br><br>USA SECURITIES, LLC,<br><br>Debtor. | Date:  June 5, 2006<br>Time:  9:30 a.m. |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

*Left margin (vertical):* SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

1  Debtors, USA Commercial Mortgage Company ("USACM"), USA Securities, LLC

2 ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified

3 Trust Deed Fund ("USA Diversified"), and USA Capital First Trust Deed Fund ("USA First")

4 (collectively referred to as "Debtors"), by and through their counsel, Ray Quinney & Nebeker P.C.

5 and Schwartzer & McPherson Law Firm, hereby file this Motion To Temporarily Hold Funds

6 Pending A Determination Of The Proper Recipients, And Memorandum Of Points And

7 Authorities (the "Motion"). This Motion requests an Order from the Court permitting USACM to

8 temporarily hold funds USACM has collected and continues to collect from borrowers in its

9 capacity as the loan servicer on approximately 115 commercial loans, pending a further order of

10 the Court to be entered on or after July 25, 2006 (the date the Court is scheduled to conduct a

11 further hearing on this matter).[1] This Motion is supported by the Supplemental Declaration of

12 Thomas J. Allison in Support of Debtors' Motions (the "Supplemental Allison Declaration") filed

13 May 2, 2006, and the Memorandum of Points and Authorities set forth, the pleadings on file, and

14 any oral argument at the time of the hearing of this Motion.

15  This Motion seeks limited authority to continue to collect and hold loan payments and loan

16 payoffs (net of amounts permitted to be used pursuant to the Cash Motion) in USACM's separate

17 "DIP Collection Account" (defined below) until the hearing scheduled for July 25, 2006, pending

18 completion of Mr. Allison's investigation, analysis, and report to the Court recommending the

19 proper disbursement of the funds, and until the Court thereafter orders that distributions of the

20 funds begin to the proper recipients.

21  The Court recently granted Debtors' motion to approve cash management procedures and

22 Debtors' limited use of cash (the "Cash Motion"), pursuant to a revised cash budget for a period of

23 approximately ninety (90) days after commencement of Debtors' bankruptcy cases, in order to

24 allow Debtors to preserve the value of the loan portfolio being serviced by USACM and to

25 accomplish other key account reconciliation and loan servicing activities for the benefit of all

26

27 _____

28 [1] Debtors expect to complete initial investigations, analyses, and reconciliations in these cases by July 16, 2006, and to make a report to the Court and investors regarding this matter prior to the hearing scheduled for July 25, 2006.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   investors.  Pursuant to the present Motion, USACM requests authority to continue to hold and

2   collect funds in its capacity as the loan servicer on behalf of investors during the initial phase of

3   these cases until a hearing scheduled for July 25, 2006 takes place, and thereafter until the Court

4   orders the disposition of the funds to the proper recipients.  Accordingly, USACM also seeks this

5   Court's order that it not be required to disburse or distribute any funds to investors until USACM,

6   through new management, is able to thoroughly investigate and evaluate the Debtors' files and

7   records and determine, among other things, what portion of the funds held by USACM represent

8   unpaid servicing and loan origination fees, which investors have been overpaid as a result of

9   USACM's pre-petition practice of making regular monthly interest payments regardless of the

10  status of the underlying loan, and which investors have been underpaid, including investors to

11  whom principal repayments were not remitted when collateral was released pre-petition.

12          Further complicating this investigative effort is that apparent fact, as described below, that

13  more than 60% of the Debtors' investors were invested in more than one loan.  Thus, any

14  individual investor may have been overpaid on a non-performing loan, on the one hand, and may

15  have been under-paid or properly paid on a performing loan, on the other.  Until the Debtors are

16  able to determine the individual status of each investor in each loan and the net amounts due to or

17  from investors on all loans in the portfolio, it makes no sense to distribute funds only to be

18  required at a later date to seek disgorgement from investors for post-petition payments that should

19  not have been made.  Indeed, the Debtors have an equitable interest in the funds until a

20  determination is made by the Court as to their ultimate disposition in this case.  That disposition is

21  not a foregone conclusion because, until the affairs of the Debtors are sorted out, the Debtors

22  cannot tell which of the possible precedents with respect to distributions to investors it should

23  advocate in order to insure a fair and equitable treatment of investors, nor can the Court make such

24  a determination except on complete and fully presented facts.  Because the full and complete facts

25  are not yet known, and given the current situation, the only approach that is in accordance with the

26  governing contracts and the law, and the only equitable approach which will benefit all investors

27  fairly, is to permit the Debtors to hold funds and make no disbursements to investors until the new

28  management of the Debtors has sorted out the full underlying facts and, depending on the facts

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

1    found, has sought appropriate relief from this Court, which will be addressed at the hearing

2    scheduled for July 25, 2006.

3                                **POINTS AND AUTHORITIES**

4                                  **Factual Summary**

5          The facts supporting this motion are set forth in the Supplemental Allison Declaration and

6    in the entire record in these cases.  The key facts are summarized below.

7          The Debtors filed voluntary petitions for relief on April 13, 2006 (the "Petition Date").

8    Prior to the Petition Date, USACM was primarily in the business of originating, brokering, and

9    servicing commercial real estate loans and fractional interests therein.  Under prior management,

10   pre-petition irregularities occurred in servicing the loans.  On the Petition Date, Thomas J. Allison

11   ("Allison") of Mesirow Interim Financial Management became the President of USACM and the

12   Manager of the four remaining Debtors who are limited liability companies.  In an order entered

13   April 19, 2006, this Court authorized the Debtors' employment of Allison as the Chief

14   Restructuring Officer for an interim period until July 27, 2006.

15         Under their new management since the Petition Date, the Debtors have worked hard to

16   begin analyzing and unraveling the problems the Debtors face arising from past business practices

17   and irregularities.  USACM has not originated or brokered any new loans since the Petition Date,

18   and will not do so without Court approval.  USACM continues to be the loan servicer for

19   approximately 115 commercial loans having a combined outstanding balance of approximately

20   $962 million (the "Serviced Loans"), nearly all of which are secured by various real estate projects

21   or developments.  The loan documents and other records of USACM indicate that there are

22   approximately 3,600 investors (the "Direct Lenders")[2] whose names appear as a "Lender" for one

23   or more of the Serviced Loans.  Typically, there are dozens or even hundreds of Direct Lenders on

24   a particular loan, with each lender having only a small fractionalized share.  Among the Direct

25   Lenders are two of the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and

26

27   ────────────────
     [2] Although the Supplemental Allison Declaration used the term "Loan Investors" for this group, the Court at the
28   hearing held May 3, 2006 on the Cash Motion expressed a preference for the term "Direct Lenders."

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

                                        4

USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds"). Diversified has approximately 1,900 LLC members and Capital First has approximately 1,300 members (collectively, the "Fund Members"). There is substantial overlap among the Direct Lenders and the Fund Members.

As of the Petition Date, a significant portion of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans"). Further, a significant portion of the Serviced Loans were made to borrowers affiliated with the former senior management of the Debtors. Despite the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents, USACM continued to pay regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether or not USACM had actually collected payments from the borrowers. The Debtors have claims against each Direct Lender and Fund Member who received overpayments from USACM or the Funds. No interest payments have been made to the Direct Lenders or the Fund Members since the Petition Date.

The Debtors are holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds) in a new, post-petition Debtor-in-Possession DIP Collection Account (the "DIP Collection Account") pursuant to the Cash Motion. No funds from any other sources have been commingled with or placed in the DIP Collection Account since the Petition Date. The Debtors maintain operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative duties. At a hearing on the Cash Motion held May 3, 2006, the Court granted approval of the Debtors' motion requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors pursuant to a revised cash budget through July 16, 2006. This initial time period of cash use was requested by the Debtors in order to enable USACM, which has the right and obligation under its servicing agreements with the Direct Lenders and under Nevada state law, to perform appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the extent and effect of the overpayments, underpayments, and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

collateral releases.  The present Motion requests that pending the results of this investigation and pending further order of the Court, the Debtors be allowed to temporarily hold all funds collected, net of the funds authorized to be used in accordance with the Cash Motion.

<strong>Memorandum of Law</strong>

**A.     Various Rights to Funds in the DIP Collection Account Must Be Determined Before Any Distributions to Investors Can Be Made.**

A large portion of the Direct Lenders and Fund Members received monthly interest payments that they were not entitled to receive because they were invested (directly or indirectly) in loans that were not paying interest.  USACM potentially has a claim against each Direct Lender who received overpayments from USACM.  Moreover, even if USACM did not have direct claims for such overpayments, Direct Lenders who did not receive all of the payments to which they were entitled on account of the Serviced Loans may have claims against USACM.  USACM, having the right and the obligation under its servicing agreements with the Direct Lenders and under Nevada state law to perform appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the extent of the overpayments and underpayments, should be entitled to hold the funds in the DIP Collection Account, make a recommendation to the Court regarding the disposition of the funds, and obtain a Court determination before being required to release the funds.  To the extent the Debtors may have claims against certain Direct Lenders and Fund Members, it would be impracticable and inequitable to require USACM to immediately release funds to those Direct Lenders (including the Funds) who claim an interest in the funds and then require the Debtors to later sue those same Direct Lenders and Fund Members to retrieve the funds to the extent it is ultimately determined that they were overpaid.

Furthermore, USACM may have a claim on the a portion of the funds in the DIP Collection Account beyond the amounts requested for use in the Cash Motion due to the fact that USACM did not collect the full amount of servicing fees and other contractual fees it was entitled to charge to and collect from the Direct Lenders, including the Funds.  USACM should be allowed to continue to hold and collect funds in the DIP Collection Account from the borrowers on the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Serviced Loans for the limited period requested by this Motion so that USACM may determine the

2   extent of USACM's interest in the funds.

3           In the analogous context of a receivership, the Nevada Supreme Court, in *Ex Rel. Irving*

4   *National Bank v. District Court*, 217 P. 962 (1923), concluded that parties were protected by

5   maintaining property in the hands of a receiver pending determination of rights to the property.   In

6   *Irving National Bank*, a receiver was appointed to take control of property of an insolvent mining

7   company.  The appointed receiver seized the property in contravention of an attempted levy and

8   sale by Irving National Bank, a judgment creditor of the insolvent.  Several days later, the receiver

9   issued a receiver's certificate in the amount of $15,000, which certificate became a first lien on the

10  property.  Irving National Bank petitioned the court, seeking to enjoin the receiver and for return

11  of the property.

12          The *Irving National Bank* court observed that while in the hands of the receiver, any

13  claims to the property would be preserved: "It is a well-established rule that the receiver's

14  possession is subject to all valid and existing liens upon the property at the time of his

15  appointment, and does not divest a lien previously acquired in good faith." *Id*. at 963 (citations

16  omitted).  The Court further noted that pending resolution of the competing claims to the property,

17  the property should remain in the hands of the receiver: "'This exclusive possession of the receiver

18  . . . does not interfere with or disturb any preexisting liens, preferences or priorities, but simply

19  prevents their execution *by holding all property intact until the relative rights of all parties can be*

20  *determined*.'"  *Id*. at 964 (quoting *Pelletier v. Greenville Lumber Co.*, 31 S.E. 855) (emphasis

21  added).  In the instant case, too, USACM should be authorized to retain funds in its possession

22  until a determination of the relative rights of parties can be made.  This principle is particularly

23  applicable in a situation such as the present one where the competing claims are many, the

24  underlying records voluminous, and the legal and equitable interests in the funds held by USACM

25  on the Petition Date and in the loans serviced by USACM (including the proceeds of such loans)

26  are unclear.

27  / / /

28  / / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**B.      USACM Has Contractual and Statutory Obligations Not to Release the Funds Until the Rightful Ownership Is Established.**

Under the Loan Servicing Agreement that each Direct Lender entered into with USACM, USACM is required, among other things, to keep appropriate accounting records and ensure that the loan payments it collects as servicer are paid out only to the "proper parties" entitled to receive such payments.  *See* Loan Servicing Agreement ¶ 2(c)(i).  Under its new management, USACM is working hard to review, verify, and establish appropriate accounting records that will accurately reflect the proper amounts owed to or from each Direct Lender (including the Funds) with respect to each of the Serviced Loans, for the benefit of all Direct Lenders and Fund Members.  Further, since the Petition Date, USACM under its new management has begun to aggressively collect past-due amounts owed on the Nonperforming Loans for the benefit of all Direct Lenders having an interest in one or more of the Nonperforming Loans, which includes both of the Funds and nearly all other Direct Lenders as well.

USACM also has a statutory duty under Nevada law respecting mortgage brokers to ensure that no payments it collects as mortgage servicer are released to any owners of fractional interests in a particular Serviced Loan unless the same amount "is also released to every other investor who owns a beneficial interest in the loan."  Nev. Rev. Stat. § 645B.175(5).  Thus, although some investors holding an interest in a particular loan may believe they are entitled to have the loan payments released immediately to them, it is in the best interests of other investors in that same loan, and is statutorily required, to allow USACM to hold all collected amounts for the limited period requested in the Motion so that the respective rights of all parties may be clarified before any disbursements are made.  Under the statute, USACM is not authorized to release fractional loan payments to only those investors, if any, who may be invested solely in performing loans, because other investors in the same performing loans may have invested also in non-performing loans and thus cannot be paid until the analyses and reconciliations are completed.

/ / /

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**C.    Until Various Rights to Funds in the DIP Collection Account are Determined, the Debtors have an Equitable Interest in the Notes and Mortgages to Administer Them, Making the Funds Property of the Estate as to Which No Immediate Distribution Should be Required.**

In *In re Builders Capital Services, Inc.*, 317 B.R. 603 (Bankr. W.D.N.Y. 2004), the court determined that a mortgage servicer/debtor had an "equitable interest" in notes and mortgages to administer them, thus rendering the notes and mortgages property of the estate.  In *Builders Capital*, debtor solicited investors to provide funds which would be pooled for the purpose of funding short term construction loans.  Investors' funds were commingled, and subsequently loaned to construction borrowers.   As part of the transaction, investors were required to appoint Builders Capital, the debtor, as agent under the notes and accompanying mortgages.  When interest or other payments were made by borrowers on the loans, those funds, too, were commingled with the debtor's operating funds.  Based on several articulated factors and equitable considerations, the court concluded that the notes and mortgages were property of the estate and characterized the controversy between investors and the trustee over the notes and mortgages as "a dispute among equitable interests and a choice between equitable remedies."  *Id*. at 609.   The court concluded that "[t]o the extent that Builders Capital could best fulfill its responsibilities to investors, the 'demands of justice' would recognize an equitable interest to administer the notes and mortgages." *Id*. at 612.

In this case, where there has been substantial commingling of the Debtors funds and of the Direct Lenders' (including the Funds') funds pre-petition, and where the "demands of justice" make it necessary for the Debtors to exercise control over the funds to "best fulfill its responsibilities to investors," this Court should also recognize an "equitable interest" of the Debtors in the funds "to administer the notes and mortgages" pending a determination by the Court as to the ultimate disposition of the funds made after this initial administration by the Debtors.  Further, while the *Builders Capital* case ended up with a determination of a pro rata sharing of the proceeds of the notes and mortgages among the investors, the Debtors have made no determination as to whether similar circumstances exist in this case, or whether this approach is warranted and should be advocated by the Debtors under the facts and the equities of the case

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

9

1  when considering the interests of all Direct Lenders and Fund Members.  The Debtors are merely

2  seeking recognition of their equitable interests in these funds to hold these funds pending a

3  determination by the Court as to their ultimate disposition.

4  **D.    Under Certain Circumstances, Direct Lenders May Be Deemed to Be Creditors of**
   **USACM rather than Lenders on Particular Loans and the Loans May be Deemed to Be**
5  **Property of USACM's Estate.**

6

7         It may be that the substance of the transactions and interrelations among USACM, the

8  other Funds and other Debtors, the Direct Lenders, and the Fund Members created a situation

9  under the law in which the Direct Lenders (including the Funds) as well as the Fund Members

10 should be treated as lenders to USACM rather than lenders to the underlying borrowers on the

11 Serviced Loans.  The Debtors are aware that under certain circumstances, the case precedents have

12 concluded that the true economic substance of the overall transaction will prevail over the form of

13 the transaction according to the transaction documents.  The Debtors have made no determination

14 as to whether such circumstances exist in this case, or whether this approach is warranted and

15 should be advocated by the Debtors under the facts and the equities of the case when considering

16 the interests of all Direct Lenders and Fund Members, but the Debtors believe it would be unwise

17 and inequitable to immediately distribute funds held in the DIP Collection Account before such a

18 determination is made.

19         Numerous decisions have considered whether a given transaction between an investor and

20 a debtor mortgage broker constitutes a true mortgage participation or, in fact, a loan to the debtor.

21 *See, e.g., In re Corporate Financing, Inc.*, 221 B.R. 671 (Bankr. E.D.N.Y. 1998); *In re Sprint*

22 *Mortgage Bankers Corp.*, 164 B.R. 224 (Bankr. E.D.N.Y. 1994).  In *Sprint Mortgage*, investors

23 sought on summary judgment a determination of their rights to certain notes and proceeds of notes

24 secured by deeds of trust on real property.  The debtor made loans as a mortgage broker to various

25 third parties with funds obtained from private investors.  The private investors in that case

26 invested funds and obtained assignments of mortgage notes and deeds of trust.   After considering

27 the effect of 11 U.S.C. §541(d) and after articulating and weighing the factors to consider in

28 determining whether the transaction were "true mortgage participations" or loans to the debtor, the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   *Sprint Mortgage* court determined that the transactions at issue were loans by the participants, and

2   thus the mortgages were property of the debtor.  *See also In re The Woodson Co.*, 813 F.2d 266,

3   271 (9th Cir. 1987).

4           Among the factors considered in the *Sprint Mortgage* case in determining if an alleged

5   mortgage participation is most likely a loan were whether the transaction included a guarantee of

6   payment, whether the terms of the underlying obligation were different than the terms of the

7   agreement with the investor, and the substance of the relationship between the investor and the

8   debtor.   Based on the facts currently known to the Debtors' new management, it is possible that

9   the results of the new management's investigation could lead to the conclusion that the

10  investments by investors possess the earmarks of loans, rather than mortgage participations,

11  making the loans property of the estate and the claims of Direct Lenders and Fund Members

12  unsecured claims against the Debtors.  This would result in a pro rata sharing of assets in the loan

13  portfolio with other Direct Lenders and Fund Members.  However, the Debtors' new management

14  do not yet possess information necessary to make an informed decision as to whether this would

15  be an equitable result for which they should advocate.  In the interim, and pending the gathering of

16  information to determine whether the factors relied on in these cases are present, the Debtors are

17  simply requesting to be able to hold the funds so as to maintain the status quo pending a

18  determination by the Court as to the proper distribution of the funds in this case.

19  **E.      The Debtors May Have Equitable Claims or Liens on the Collateral for the Benefit of
          All Direct Lenders, Warranting a Temporary Freeze on the Distribution of any Proceeds.**
20

21          Due to pre-petition irregularities in the accounting and loan servicing practices of

22  USACM, the extent of insider loans in the portfolio of the Serviced Loans, and other significant

23  problems under USACM's prior management, one possible equitable result under applicable law

24  may be that USACM could be deemed to have equitable claims or liens on all of the collateral

25  securing the Serviced Loans on behalf of all Direct Lenders and Fund Investors, entitling all Direct

26  Lenders and Fund Investors to a pro-rata share in the ultimate distributions to be made from the

27  DIP Collection Account and from the Debtors' estate.  *See, e.g., In re Lemons & Assocs., Inc.*, 67

28  B.R. 198 (Bankr. Nev. 1986).  The Debtors have made no determination as to whether such

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    circumstances exist in this case, or whether this approach is warranted and should be advocated by

2    the Debtors under the facts and the equities of the case when considering the interests of all Direct

3    Lenders and Fund Members, but the Debtors believe it would be unwise and inequitable to

4    immediately distribute funds held in the DIP Collection Account before such a determination is

5    made.

6         Indeed, facts may ultimately be adduced which would compel the Court to distribute

7    available funds to investors on a pro rata basis on the theory that all investors are essentially

8    similarly situated and should share equally the burden of the Debtors' pre-bankruptcy

9    irregularities.  Such was the result in *In re Lemons & Associates, Inc.*, 67 B.R. 198 (Bankr. Nev.

10   1986).  The *Lemons* Court noted that the concept of equal sharing was "one of the strongest

11   policies behind bankruptcy law" and recognized that where, "from an equitable point of view," the

12   results of which investor received interests in actual performing notes was essentially "fortuitous,"

13   the Court concluded that "pro rata distribution will be the rule when necessary to achieve an

14   equitable result" because in that circumstance, "[e]quality is equity.'" *Id.* 212-214.  *See also In re*

15   *Builders Capital Services, Inc.*, 317 B.R. 603, 612 (Bankr. W.D.N.Y. 2004) (the court concluded

16   that "under these difficult circumstances, equity commands that every investor share both the pain

17   and an equal prospect for recovery.").

18        The new management of the Debtors may conclude, among other things, that there is an

19   inability to trace or that such tracing would be completely inequitable, given that principal

20   payments were accepted by the Debtors pre-petition and collateral released without any payment

21   to the enumerated lenders on the loans involved. The distinctions among the Direct Lenders and

22   Fund Investors are not readily apparent at this point in time, and, at the end of the day, the Court

23   may well determine that all investors should be treated pro rata, as the Court in *Lemons* ultimately

24   determined.

25                                              **CONCLUSION**

26        Based on the foregoing, the Supplemental Allison Declaration, and all matters of record in

27   the Debtors' bankruptcy cases, USACM requests that the Court grant a limited period of time,

28   until the July 25, 2006 hearing and until the Court thereafter enters an appropriate order, during

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   which USACM may continue to hold and collect all amounts it collects in the DIP Collection

2   Account as servicer of the Serviced Loans (net of amounts in the DIP Collection Account the

3   Debtors are permitted to transfer to an operating account pursuant to the Cash Motion), pending

4   the Debtors' prompt investigation and analysis of the issues addressed herein and the Debtors'

5   prompt preparation of the loan and investor accounting and reconciliation information for the

6   benefit of all Direct Lenders (including the Funds) and Fund Members, as detailed in the

7   Supplemental Allison Declaration.  On or before July 25, 2006, the Debtors will file a report with

8   the Court respecting these issues and will make a further motion to or pleading with the Court with

9   respect to the relief the Debtors will be requesting based on the findings in the report.

10          DATED this 8th day of May, 2006.

11

12                                  /s/ Jeanette E. McPherson
                                    Lenard E. Schwartzer, Esq.
13                                  Jeanette E. McPherson, Esq.
                                    Schwartzer & McPherson Law Firm
14                                  2850 South Jones Blvd., Suite 1
                                    Las Vegas, Nevada 89146
15                                  Proposed Attorneys for Debtors
                                    and Debtors-in-Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122