1  Annette W. Jarvis, Utah Bar No. 1649

   RAY QUINNEY & NEBEKER P.C.

2  36 South State Street, Suite 1400

   P.O. Box 45385                                      **E-FILED ON MAY 9, 2006**

3  Salt Lake City, Utah 84145-0385

4  Telephone: (801) 532-1500

   Facsimile: (801) 532-7543

5  Email: ajarvis@rqn.com

6  and

7  Lenard E. Schwartzer

   Nevada Bar No. 0399

8  Jeanette E. McPherson

   Nevada Bar No. 5423

9  Schwartzer & McPherson Law Firm

10 2850 South Jones Boulevard, Suite 1

   Las Vegas, Nevada  89146-5308

11 Telephone:  (702) 228-7590

   Facsimile:  (702) 892-0122

12 E-Mail:  bkfilings@s-mlaw.com

   Proposed Attorneys for Debtors and Debtors-in-Possession

13                    **UNITED STATES BANKRUPTCY COURT**

14                          **DISTRICT OF NEVADA**

15 | In re: | Case No. BK-S-06-10725 LBR |

16 | USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
   | | Case No. BK-S-06-10727 LBR |
   | Debtor. | Case No. BK-S-06-10728 LBR |

17 | In re: | Case No. BK-S-06-10729 LBR |

18 | USA CAPITAL REALTY ADVISORS, LLC, | |
   | Debtor. | Chapter 11 |

19 | In re: | |

20 | USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | **Jointly Administered Under** |
   | Debtor. | **Case No. BK-S-06-10725 LBR** |

21 | In re: | |

22 | USA CAPITAL FIRST TRUST DEED FUND, LLC, | **DECLARATION OF DOUGLAS MONSON IN SUPPORT OF EMERGENCY MOTION** |
   | Debtor. | **FOR ORDER TO COMPEL FIDELITY** |

23 | In re: | **NATIONAL TITLE INSURANCE COMPANY TO MAKE DISBURSEMENTS** |

24 | USA SECURITIES, LLC, | **FROM LOAN FUNDS BEING HELD BY FIDELITY AS DISBURSEMENT AGENT** |
   | Debtor. | **AND IN SUPPORT OF MOTION FOR** |

25 | Affects: | **EXPEDITED HEARING (AFFECTS USA COMMERCIAL MORTGAGE COMPANY)** |
   | ☐ All Debtors | |

26 | ☒ USA Commercial Mortgage Company | Date:  OST Requested |
   | ☐ USA Securities, LLC | Time:  OST Requested |

27 | ☐ USA Capital Realty Advisors, LLC | |

28 | ☐ USA Capital Diversified Trust Deed Fund, LLC | |
   | ☐ USA First Trust Deed Fund, LLC | |

*(Left margin, vertical text)* SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Douglas M. Monson, Esq. of Ray Quinney & Nebeker P.C., attorneys for the above captioned debtor and debtor-in-possession (the "Debtor"), under penalties of perjury, hereby declares on this 9th day of May, 2006 that:

1.     Debtor has authorized the filing of an Emergency Motion To Compel Fidelity National Title Insurance Company To Make Disbursements From Loan Funds Being Held By Fidelity As Disbursement Agent (the "Emergency Motion"). The Emergency Motion requests that the Court enter an order granting the Emergency Motion to prevent further damages to Debtor and to the borrowers (the "Borrowers") on five loans originated by Debtor (the "Five Loans") from the unilateral decision by Fidelity National Title Insurance Company ("Fidelity") to stop making disbursements on the Five Loans from loan funds being held by Fidelity as disbursement agent because of the filing of Debtor's Chapter 11 bankruptcy petition. The Five Loans are the Meadow Creek Loan, the Binford Medical Loan, the ComVest Capital Loan, the Palm Harbor One Loan, and the Brookmere Loan. Debtor has also authorized the filing of a Motion for Expedited Hearing on Emergency Motion To Compel Fidelity National Title Insurance Company To Make Disbursements From Loan Funds Being Held By Fidelity As Disbursement Agent (the "Motion for Expedited Hearing").

2.     I have been in contact with Robert Bozarth, Senior Vice President and NTS Counsel for Fidelity, with respect to Fidelity's decision to stop making disbursements on the Five Loans. Attached hereto as Exhibits "A" and "B" and incorporated herein are true and correct copies of two letters that I forwarded on behalf of the Debtor to Robert Bozarth of Fidelity on May 5, 2006, demanding that Fidelity immediately begin making disbursements on the Five Loans.

3.     As of 10:30 a.m. Mountain Daylight Time on May 9, 2006, Fidelity had not responded to my May 5, 2006 demand letters, and had not agreed to begin making disbursements on the Five Loans.

4.     I spoke by telephone with Robert Bozarth, attorney for Fidelity, on Friday afternoon on May 5, 2006, after I sent to Robert Bozarth my first letter to him dated May 5, 2006. The only reason that Robert Bozarth gave to me for Fidelity's unilateral decision to stop making disbursements on the Five Loans was Fidelity's concern that there may be a precedent set for the

return of loan proceeds to investors at the hearing scheduled for May 18, 2006, on the Debtor's Motion for Order Authorizing the Return to Investors of Certain Escrowed Funds Intended for the Bundy Canyon Project (the "Bundy Canyon Motion") that was e-filed in Bankruptcy Case No. BK-S-06-10725 on April 27, 2006.

5.      As explained in my second letter to Robert Bozarth dated May 5, 2006, which is attached hereto as Exhibit "B," the Bundy Canyon Motion addresses a completely separate issue from the disbursement issues for the Five Loans for which Fidelity is acting as disbursement agent.  The funds involved in the Bundy Canyon Motion had been deposited with a title company in an escrow account, but the loan had not been closed or funded when Debtor's Chapter 11 bankruptcy petition was filed, and the Debtor determined to not complete the loan transaction, so the loan was never consummated.

6.      As stated in the Bundy Canyon Motion, "[i]n the event that a loan is not consummated, Nevada law requires the funds held in the Escrow Account to be returned to the investors. Nev. Rev. Stat. 645B.175(2)(b)."  Because the Bundy Canyon loan was not consummated, the Bundy Canyon Motion explains that the Bundy Canyon funds were never funded to a disbursement agent such as Fidelity, and were in a position to be returned to the investors on an unfunded loan.  The Bundy Canyon Motion does not have any impact on the Five Loans, which have been consummated, with the associated loan funds having been sent to Fidelity, which is acting as disbursement agent.

Respectfully submitted on May 9, 2006.


_Douglas M. Monson_

Douglas M. Monson, Utah Bar No. 2293
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Attorneys for Debtor and Debtor-In-Possession

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT "A"

**RAY QUINNEY & NEBEKER**

May 5, 2006

Via Facsimile & Via E-Mail

Robert Bozarth
Fidelity National Title
Senior Vice President and NTS Counsel
7130 Glen Forest Dr., Suite 403
Richmond, VA  23226
Fax No. (804) 673-3318
Fax No. (804) 673-2219
Regular No. (804) 287-0905

SALT LAKE CITY OFFICE
PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 TEL
801 532-7543 FAX
www.rqn.com

PROVO OFFICE
86 North University Ave.
Suite 430
Provo, Utah
84601-4420

801 342-2400 TEL
801 375-8379 FAX

Re:    In re USA Commercial Mortgage Company
       Bankruptcy No. BK_S-06-10725 LBR (Bankr. D. Nevada)

Dear Bob:

I have not heard back from you with respect to our phone discussion earlier this week.  Could you please call me immediately about the serious breaches of contract being committed by Fidelity National Title Insurance Company ("Fidelity") in failing to make disbursements to the Borrowers under the various Construction Disbursement Agreements (the "Disbursement Agreements") entered into by Fidelity with respect to loans originated by USA Commercial Mortgage Company ("USA")?  Fidelity's failure to disburse is creating enormous problems for the Borrowers under these Disbursement Agreements and is impairing the ability of USA as debtor-in-possession to conduct its operations in the ordinary course of business.  Moreover, we understand that Fidelity is also failing to disburse interest payments from interest reserves being held by Fidelity to USA as servicing agent for the investors in the various loans originated by USA ("Servicer"), which is creating additional problems for USA.

Article II, Section (d)(4) of the Construction Disbursement Agreements prepared by Fidelity clearly states:  "On the Disbursement Date, if (i) all the terms and conditions of the Loan Agreement and this Agreement have been complied with by Borrower, (ii) no Default or Event of Default exists under the Loan Agreement, (iii) [USA as Servicer] has approved the Request for Disbursement and sent to CDS [Fidelity] Instructions to Disburse, and (iv) CDS [Fidelity] has received the Disbursement from [USA as Servicer] and all of the documents and information required herein, **then CDS [Fidelity] shall disburse the requested Disbursement** (less any required Retainage and less amounts payable to and advanced by [USA as Servicer] to the Contractors entitled to payments thereunder)." (Emphasis added).  Nothing could be plainer.  In those cases where USA as Servicer has approved the Request for Disbursement and sent to Fidelity the required Instructions to Disburse under a Disbursement

ATTORNEYS AT LAW
Clark P. Giles
Herschel J. Saperstein
Narriel E. Hall
Douglas W. Morrison
Herbert C. Livsey
D. Jay Curtis
Gerald T. Snow
Jonathan A. Dibble
Scott Hancock Clark
Steven H. Gunn
James S. Jardine
Allan T. Brinkerhoff
Janet Hugie Smith
Douglas Matsumori
Robert P. Hill
A. Robert Thorup
Annette W. Jarvis
Larry G. Moore
Bruce L. Olson
John A. Adams
Douglas M. Monson
Craig Carlile
Jeffrey W. Appel
Ellen J. D. Toscano
Kevin G. Glade
Lester K. Essig
Ira B. Rubinfeld
Steven T. Waterman
Stephen C. Tingey
John R. Madsen
Keith A. Kelly
Michael W. Spence
Scott A. Hagen
Mark M. Bettilyon
Rick L. Rose
Rick B. Hoggard
Lisa A. Yerkovich
Brent D. Wride
Michael E. Blue
Steven W. Call
Cameron M. Hancock
Elaine A. Monson
Mark A. Cotter
R. Gary Winger
Kelly J. Applegate
Justin T. Toth
Steven C. Strong
Robert O. Rice
Arthur B. Berger
Frederick R. Thaler, Jr.
John W. Mackay
McKay M. Pearson
Mark W. Pugsley
Gary L. Longmore
Michael D. Creer
Samuel C. Straight
Matthew R. Lewis
Paul C. Burke
Elaina M. Maragakis
D. Zachary Wiseman
Michael D. Mayfield
Scott B. Finlinson
Bryan K. Bassett
Janelle P. Eurick
Gregg D. Stephenson
Mark L. Smith (California Only)
Kristine M. Larsen
Gregory S. Roberts
Christopher N. Nelson
Jacquelyn D. Rogers
Benjamin J. Kotter
Angelina Tsu
Richard H. Madsen, II
Carolynn Clark
Jonathan G. Pappasideris
Daren G. Mortensen
Daniel W. Bower
Charles H. Livsey
Blake R. Bauman

OF COUNSEL
Alonzo W. Watson, Jr.
Stephen B. Nebeker
Robert M. Graham
M. John Ashton
Nancy A. Eccles
Leroll S. Stevens
Melissa Herring Bailey

Robert Bozarth
Fidelity National Title
May 5, 2006
Page 2

Agreement, and Fidelity has received the disbursement amount from USA as
Servicer and all other documents and information required by the Disbursement
Agreement, **then Fidelity is obligated to comply with the terms of the
Disbursement Agreement and immediately make the required
disbursements both to the Borrower and to USA as Servicer for interest
payments from interest reserves.**

We note that Article III, Section (a) of the Disbursement Agreement
provides: "CDS [Fidelity] further agrees to indemnify, hold harmless and
defend [USA as Servicer] and its successors and assigns from and against any
and all claims, losses, costs or damages, including attorney's fees, caused by,
incurred or resulting from CDS's [Fidelity's] gross negligence and/or intentional
misconduct in connection with any activities performed by CDS [Fidelity]
pursuant to this Agreement." It is USA's view that Fidelity's failure to disburse
constitutes gross negligence as well as a serious breach of contract.

We do not understand why Fidelity is not following USA's disbursement
instructions and making disbursements to the Borrower and to USA as Servicer.
This breach by Fidelity is causing significant damages to both the Borrowers
and to USA. For example, we have been advised that the Borrower on the
Binford Medical Developers loan is being threatened with mechanic's liens for
unpaid contractor bills that may cause the project to be shut down. We have
also been advised that Fidelity's failure to make disbursements on the Palm
Harbor One, LLC loan is creating operational problems for that condo
conversion project, and that Fidelity's failure to forward interest payments from
the interest reserve has caused this loan to fall into a non-performing status.

If your client is concerned that the necessary authorizations for
disbursements have not been given by the authorized officers for USA as
Debtor-in-Possession, we have enclosed a copy of the Interim Order
Authorizing the Employment and Retention of Thomas J. Allison of Mesirow
Financial Interim Management, LLC as Chief Restructuring Officer for the
Debtors and Debtors-in-Possession, which was entered by the Bankruptcy Court
on April 19, 2006. Mr. Allison ratifies previous authorizations given by USA
for the disbursements under the Disbursement Agreements to continue,
consistent with the terms of the Disbursement Agreements. If Fidelity needs
additional written authorization from Mr. Allison, please let me know
immediately.

We can only assume that Fidelity mistakenly believes that USA's
bankruptcy filing has suspended Fidelity's obligations under the Disbursement
Agreements, and that Fidelity can safely sit back and do nothing until the
Bankruptcy Court tells Fidelity what to do. That is not correct. Bankruptcy
Court authorization and directions to Fidelity are not necessary under these
circumstances.

Robert Bozarth
Fidelity National Title
May 5, 2006
Page 3

Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession authorized to operate its business under 11 U.S.C. § 1108 "may enter into transactions, including the sale or lease of property of the estate, **in the ordinary course of business**, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." (Emphasis added). While the Bankruptcy Code and the legislative history of Section 363(c) do not define "ordinary course of business," the Ninth Circuit (controlling law for the United States Bankruptcy Court for the District of Nevada where USA's bankruptcy case is pending) has stated that the courts interpreting this section have provided helpful and persuasive guidelines under two tests: "(1) [the] vertical dimension or creditor's expectation test and (2) [the] horizontal dimension test." *Burlington Northern Railroad Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 704 (9th Cir. 1988).

The horizontal dimension test measures "an industry-wide perspective in which the debtor's business is compared to other like businesses. In this comparison, the test is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Id.* Under the horizontal dimension test, "a transaction occurs in the debtor-in-possession's ordinary course of business when there is a showing that the transaction is the sort occurring in the day-to-day operation of debtor's business." *Id.*

Under the vertical dimension test, a transaction is viewed from the vantage point of a hypothetical creditor, and inquiry is made whether the transaction subjects such creditor to economic risks of a nature different from those he or she accepted when he or she decided to extend credit to the debtor. *Id.* at 705. Under this test, some transactions by their very size or nature are not within the day-to-day operations of the debtor's business and are therefore considered to be extraordinary and not ordinary course of business transactions. *Id.* The debtor-in-possession's prepetition business activities are compared to its postpetition transactions under the vertical dimension or creditor's expectation test to determine if the postpetition transactions are in the ordinary course of business. *Id.*

Under either the horizontal dimension test or the vertical dimension test, USA's acts in authorizing disbursement agents such as Fidelity to continue to make disbursements to the Borrowers and to USA as Servicer under written Disbursement Agreements are clearly in the "ordinary course of business" for USA as Debtor-in-Possession. Providing such disbursement authorizations is clearly the sort of activity that mortgage servicing businesses such as USA engage in on a daily basis. Likewise, USA was routinely engaging in these same activities during its prepetition existence as a Servicer. These activities are not extraordinary, but are the types that are customarily expected of mortgage servicers such as USA.

Robert Bozarth
Fidelity National Title
May 5, 2006
Page 4


      We expect and demand that Fidelity immediately make the disbursements under its Disbursement Agreements that have been previously authorized by USA as Servicer. If Fidelity fails to do so immediately, Fidelity will be held accountable for the damages that it is causing for all parties. If for any reason you are unable to reach me today, you can also speak to my colleague, Steven Strong, at the same general number for our firm. Please call us as soon as possible **today** and let us know that Fidelity has started making the authorized disbursements under the Disbursement Agreements.

                    Very truly yours,

                    RAY QUINNEY & NEBEKER P.C.

                    Douglas M. Monson

Enclosure
cc:   Thomas J. Allison (via e-mail, w/encl.)
      Monty Kehl (via e-mail, w/encl.)
      John W. Graub II (Attorney for Binford Medical Developers) (via e-mail,
         w/encl.) (E-mail: jwg@hostetler-kowalik.com)
      Kevin Doig (Regional Manager for Palm Harbor One, LLC) (via e-mail,
         w/encl.) (E-mail: kdoig@cypressfallscondos.com)
      Annette W. Jarvis w/encl. via e-mail
      Steven C. Strong w/encl. via e-mail

873762 v1

Entered on Docket
April 19, 2006

_Bruce A. Markell_

Hon. Bruce A. Markell
United States Bankruptcy Judge

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No. BK-S-06-10725 LBR<br>Chapter 11<br>**INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THOMAS J. ALLISON OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**<br>Date: April 17, 2006<br>Time: 1:30 p.m. |

*Left margin:*
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Before the Court is the Motion of USA Commercial Mortgage Company ("USACM"), on

2    behalf of itself and its affiliated debtors, which are USA Securities, LLC ("USAS"), USA Capital

3    Realty Advisors, LLC ("USARA"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified

4    Fund"), and USA Capital First Trust Deed Fund, LLC ("First Deed Fund") (collectively, the

5    "Debtors"), requesting authority to retain and employ Thomas J. Allison ("Allison") of Mesirow

6    Financial Interim Management, LLC ("MFIM") as chief restructuring officer of the Debtors, (the

7    "Motion") pursuant to the terms of the Agreement attached to the Allison Declaration as Exhibit

8    "A" (the Agreement"). Based upon the Motion, the attachments thereto, and the Declaration of

9    Thomas J. Allison (the "Allison Declaration"), and it appearing that the relief sought in the Motion

10   is appropriate and warranted,

11        IT IS HEREBY ORDERED that:

12        1.      The Motion is GRANTED and the employment of Allison and MFIM as provided

13   in the Agreement is approved.

14        2.      From the date of the filing of the petition until July 27, 2006, the Debtors are

15   authorized to employ Allison as Chief Restructuring Officer ("CRO"), and other employees of

16   MFIM will be employed as temporary employees.  Allison will have complete and exclusive

17   charge of the management and operation of the Debtors' business, including hiring and firing

18   employees and agents, paying the wages and other compensation of all of the Debtors' employees

19   and agents, and controlling all bank accounts and financial affairs of the Debtors, paying all bills,

20   expenses and other charges incurred or payable with respect to the operation of the Debtors'

21   business.

22        3.      As provided in the Agreement, the professional services that Allison, with the

23   support of MFIM, will render include the following:

24        a.  Develop and implement case management strategies, tactics and later develop a plan of
            reorganization;

25

26        b.  Manage the professionals who are advising and assisting the Debtors in the
            reorganization process to ensure the individual work product is consistent with the

27            Debtors' overall restructuring goals;

28

2

c.  Lead management with the development of a business plan, and such other related forecasts as may be required by the Debtors to support the reorganization and related negotiations with stakeholders;

d.  Communicate and/or negotiate with creditors, equity security holders, their advisors, and other outside stakeholders;

e.  Serve as the representative for the Debtors during communications with the Securities and Exchange Commission and the Nevada Mortgage Lending Division;

f.  Provide the Debtors with any Investigative Services, Accounting Analyses, and Transaction Tracing, as may be deemed necessary or appropriate;

g.  Supervise the preparation of periodic reporting required by the Bankruptcy Court and/or the US Trustee, manage the claim reconciliation process, and provide testimony before the Bankruptcy Court on matters that are within MFIM's area of expertise; and render such other service as may be deemed necessary as part of the reorganization process.

4.    Allison and MFIM are required to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and Orders of this Court. Subject to this Court's approval and as provided in the Agreement, the Debtors propose to pay Allison and MFIM at their customary hourly rates in effect from time to time as set forth in the Allison Declaration, and as may be directed and allocated by Court order.

5.    The retainer that MFIM received shall be held and applied to its allowed final compensation and expense reimbursement and any unused portion shall be returned to the USACM. MFIM applied $250,000 to pre-petition services. Any amounts in excess of pre-petition fees will be held as an additional retainer. The fees for pre-petition services as well as the fees for post-petition services are subject to review and approval by this Court.

6.    In addition to the fees and retainer, the Debtors are authorized to pay an insurance premium in the amount of $550,000 to obtain directors' & officers' liability coverage for Allison in his capacity as CRO.

7.    Debtors shall indemnify and hold harmless MFIM and its shareholders, affiliates, principals, members, managers, officers, directors, employees, subcontractors, attorneys, professionals, representatives and agents against any and all losses, claims, damages, liabilities,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1 | penalties, obligations and expenses, including, without limitation, the costs and expenses for
2 | counsel and others (including employees of MFIM), based on their then current hourly billing
3 | rates in investigating, preparing or defending any action or claim, all as set forth in detail in the
4 | Standard Terms and Conditions attached to the Allison Declaration.

5 |         8.     The Court will consider an extension of the employment of Allison and MFIM on
6 | July 27, 2006 at 9:30 a.m.

7 |         9.     Notice of this Order and the hearing on July 17, 2006 shall be given by first class
8 | mail to all creditors of each of the Debtors, all investors in First Deed Fund and Diversified Fund,
9 | and to all investors whose loans are being serviced by USACM.

10 | Submitted by:

11 |

12 | Lenard E. Schwartzer
13 | Nevada Bar No. 0399
   | Jeanette E. McPherson
14 | Nevada Bar No. 5423
   | Schwartzer & McPherson Law Firm
15 | 2850 South Jones Boulevard, Suite 1
   | Las Vegas, Nevada 89146-5308
16 | Attorneys for Debtors

17 | Approved/Disapproved by:

18 |

19 |

20 | Office of the U.S. Trustee
   | 300 Las Vegas Boulevard South, Suite 4300
21 | Las Vegas, NV 89101

22 |

23 |                                     ###

24 |

25 |

26 |

27 |

28 |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

4

# EXHIBIT "B"

**RAY QUINNEY & NEBEKER**

ATTORNEYS AT LAW
Clark R. Giles
Herschel J. Saperstein
Nannie E. Hall
Douglas W. Morrison
Herbert C. Livsey
D. Jay Curtis
Gerald T. Snow
Jonathan A. Dibble
Scott Hancock Clark
Steven H. Gunn
James S. Jardine
Allan T. Brinkerhoff
Janet Hugie Smith
Douglas Matsumori
Robert P. Hill
A. Robert Thorup
Annette W. Jarvis
Larry G. Moore
Bruce L. Olson
John A. Adams
Douglas M. Monson
Craig Carlile
Jeffrey W. Appel
Ellen J. D. Toscano
Kevin G. Glade
Lester K. Essig
Ira B. Rubinfeld
Steven T. Waterman
Stephen C. Tingey
John R. Madsen
Keith A. Kelly
Michael W. Spence
Scott A. Hagen
Mark M. Bettilyon
Rick L. Rose
Rick B. Hoggard
Lisa A. Yerkovich
Brent D. Wride
Michael E. Blue
Steven W. Call
Cameron M. Hancock
Elaine A. Monson
Mark A. Cotter
R. Gary Winger
Kelly J. Applegate
Justin T. Toth
Steven C. Strong
Robert O. Rice
Arthur B. Berger
Frederick R. Thaler, Jr.
John W. Mackay
McKay M. Pearson
Mark W. Pugsley
Gary L. Longmore
Michael D. Creer
Samuel C. Straight
Matthew R. Lewis
Paul C. Burke
Elaina M. Maragakis
D. Zachary Wiseman
Michael D. Mayfield
Scott B. Finlinson
Bryan K. Bassett
Janelle P. Eurick
Gregg D. Stephenson
Mark L. Smith (also admitted)
Kristine M. Larsen
Gregory S. Roberts
Christopher N. Nelson
Jacquelyn D. Rogers
Benjamin J. Kotter
Angelina Tsu
Richard H. Madsen, II
Carolynn Clark
Jonathan G. Pappasideris
Daren G. Mooreson
Daniel W. Bower
Charles H. Livsey
Blake R. Bauman

OF COUNSEL
Alonzo W. Watson, Jr.
Stephen B. Nebeker
Robert M. Graham
Jt. John Ashton
Kate A. Eccles
Lesal B. Stevens
Melissa Fleming Bailey

SALT LAKE CITY OFFICE
PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 TEL
801 532-7543 FAX
www.rqn.com

PROVO OFFICE
86 North University Ave.
Suite 430
Provo, Utah
84601-4420

801 342-2400 TEL
801 375-8379 FAX

May 5, 2006

<u>Via Facsimile & Via E-Mail</u>

Robert Bozarth
Fidelity National Title
Senior Vice President and NTS Counsel
7130 Glen Forest Dr., Suite 403
Richmond, VA  23226
Fax No. (804) 673-3318
Fax No. (804) 673-2219
Regular No. (804) 287-0905
E-Mail:  robert.bozarth@fnf.com

Re:    <u>In re USA Commercial Mortgage Company</u>
        Bankruptcy No. BK-S-06-10725 LBR (Bankr. D. Nevada)

Dear Bob:

        This is a follow-up letter to my letter earlier today, and also our discussions this afternoon.

        I have been receiving repeated phone calls on these disbursement issues from Ken Schmidt, the principal for Binford Medical Developers.   His project has been threatened with an immediate shutdown because of the failure of Fidelity National Title Insurance Company ("Fidelity") to honor its disbursement obligations under Binford's Construction Disbursement Agreement (the "Disbursement Agreement").   Moreover, Mr. Schmidt advises me that he has not received a single notice from Fidelity under the terms of his Disbursement Agreement, as Fidelity is obligated to do.  Likewise, I am not aware of any written notice ever having been provided to USA Commercial Mortgage Company ("USA") as to Fidelity's reasons for not disbursing.  It is astounding to us that Fidelity would take the actions that it has taken without providing any notice to any of the affected parties.

        Even now, the only reason that we can discern for Fidelity's breach of contract is that Fidelity is uncomfortable in having to deal with a debtor-in-possession.  Fidelity should not be uncomfortable because these disbursement issues are clearly in the ordinary course of business for a debtor-in-possession such as USA.  I have previously cited to you the controlling case law in the Ninth Circuit on ordinary course of business transactions, which do not require any Bankruptcy Court approval.

        You mentioned to me and Steve Strong this afternoon that Fidelity is concerned about the possible precedent from the "Motion for Order Authorizing

Robert Bozarth
Fidelity National Title
May 5, 2006
Page 2

the Return to Investors of Certain Escrowed Funds Intended for the Bundy
Canyon Project" (the "Bundy Canyon Motion") that was filed in USA's
Bankruptcy Case. I have attached a copy of the Bundy Canyon Motion.

Please note that it was **USA as Debtor-in-Possession, not any investor,**
that filed the Bundy Canyon Motion. If USA as debtor-in-possession believed
that the loan funds being held by Fidelity for disbursement to the borrowers
belonged to the investors being serviced by USA, USA would hardly be
demanding that Fidelity start making disbursements again to the borrowers.

As you can see from reading the Bundy Canyon Motion, it addresses a
completely separate issue from the disbursement issues for the Meadow Creek,
Binford Medical, ConVest Capital, Palm Harbor One, and Brookmere loans for
which Fidelity is acting as disbursement agent. The funds involved in the
Bundy Canyon Motion had been deposited with a title company in an escrow
account, but the loan had not been closed or funded when USA's bankruptcy
petition was filed, and USA determined to not complete the loan transaction, so
the loan was never consummated.

As stated in the Bundy Canyon Motion, "[i]n the event that a loan is not
consummated, Nevada law requires the funds held in the Escrow Account to be
returned to the investors. Nev. Rev. Stat. 645B.175(2)(b)." Because the Bundy
Canyon loan was not consummated, the Bundy Canyon funds were never funded
to a disbursement agent such as Fidelity, and were in a position to be returned to
the investors on an unfunded loan. The Bundy Canyon Motion does not have
any impact on the Meadow Creek, Binford Medical, ConVest Capital, Palm
Harbor One, and Brookmere loans, which have been consummated, with the
associated loan funds having been sent to Fidelity, which is acting as
disbursement agent.

You should also be advised that if Fidelity continues to exercise control
over the interest reserves being held by Fidelity from which interest payments
are to be made to USA as Servicer (and from which USA as Servicer is entitled
to deduct its servicing fees), such acts to obtain possession of or to exercise
control over property of USA's bankruptcy estate constitute a violation of the
automatic stay under 11 U.S.C. § 362(a)(3) (the automatic stay went into effect
upon the filing of USA's Chapter 11 bankruptcy petition). USA will hold
Fidelity responsible for this violation of the automatic stay.

In addition, one of the related Debtors to USA in another bankruptcy
case filed in Nevada, Capital First Trust Deed Fund, LLC, is a major investor in
three of the loans for which Fidelity is acting as disbursement agent, Binford
Medical, ConVest, and Brookmere. Fidelity's actions are damaging the
collateral securing these loans and the interests of Capital First Trust Deed Fund,
LLC, in these loans, for which Fidelity will also be responsible. As stated

Robert Bozarth
Fidelity National Title
May 5, 2006
Page 3

before, USA demands that the authorized disbursements be made by Fidelity
immediately.

Very truly yours,

RAY QUINNEY & NEBEKER P.C.

Douglas M. Monson

Enclosure
cc:    Thomas J. Allison (via e-mail, w/encl.)
       Monty Kehl (via e-mail, w/encl.)
       Tom Barry (via e-mail, w/encl.)
       John W. Graub II (Attorney for Binford Medical Developers) (via e-mail,
          w/encl.) (E-mail: jwg@hostetler-kowalik.com)
       Kevin Doig (Regional Manager for Palm Harbor One, LLC) (via e-mail,
          w/encl.) (E-mail: kdoig@cypressfallscondos.com)
       Annette W. Jarvis w/encl. via e-mail
       Steven C. Strong w/encl. via e-mail

873762 v1

1   Annette W. Jarvis, Utah Bar No. 1649
2   RAY QUINNEY & NEBEKER P.C.
    36 South State Street, Suite 1400                    E-FILED ON APRIL 27, 2006
3   P.O. Box 45385
    Salt Lake City, Utah 84145-0385
4   Telephone: (801) 532-1500
    Facsimile: (801) 532-7543
5   Email: ajarvis@rqn.com

6   and

7   Lenard E. Schwartzer
    Nevada Bar No. 0399
8   Jeanette E. McPherson
    Nevada Bar No. 5423
9   Schwartzer & McPherson Law Firm
    2850 South Jones Boulevard, Suite 1
10  Las Vegas, Nevada  89146-5308
    Telephone:  (702) 228-7590
11  Facsimile:  (702) 892-0122
    E-Mail:  bkfilings@s-mlaw.com
12
13  Attorneys for Debtors

14              UNITED STATES BANKRUPTCY COURT

15                    DISTRICT OF NEVADA

16  In re:                                | Case No. BK-S-06-10725 LBR

17  USA COMMERCIAL MORTGAGE               | Chapter 11
    COMPANY,
18
                                  Debtor. |
19                                        | **MOTION FOR ORDER AUTHORIZING THE**
20                                        | **RETURN TO INVESTORS OF CERTAIN**
                                          | **ESCROWED FUNDS INTENDED FOR THE**
21                                        | **BUNDY CANYON PROJECT**
22
23
24                                        | Hearing Date:  OST PENDING
                                          | Hearing Time:  OST PENDING
25

26          USA Commercial Mortgage Company ("USACM"), the chapter 11 debtor in the above-

27  captioned bankruptcy case, hereby moves this Court for authority to return to investors $8.9

28  million in funds that are being held by a title company in an escrow account.  In support of this

*(left margin)* SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

Motion, USACM represents as follows.

## POINTS AND AUTHORITIES

### Facts

1.     On April 13, 2006 (the "Petition Date"), USACM and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code.

2.     Shortly before the Petition Date, USACM, acting as a mortgage broker, raised $8.9 million from 117 investors (the "Investors") in amounts ranging from $50,000 to $300,000. The $8.9 million, which was deposited in a USACM bank account referred to as the "Investors Trust" account on various dates from March 27, 2006 through April 6, 2006, was intended to be invested as a secured loan to Bundy Canyon Land Development, LLC (the "Borrower") for a real estate project hereinafter referred to as the "Bundy Canyon Project" in Riverside County, California. A schedule of the Investors and the amounts invested is attached hereto as Exhibit A.

3.     On April 6, 2006, the $8.9 million deposited with USACM from the Investors was transmitted by wire transfer from USACM's "Investors Trust" account to an escrow account of Orange Coast Title Company (the "Title Company") in San Bernardino, California (the "Escrow Account"). A copy of the wire transfer report is attached hereto as Exhibit B.

4.     On and after the Petition Date, the $8.9 million raised from the Investors has remained in the Escrow Account. Since the Petition Date, USACM, through its court-approved Chief Restructuring Officer, Thomas Allison, has determined that the Borrower is approximately 70% owned and/or controlled, directly or indirectly, by two former officers and principals of USACM, and that it would be in the best interest of the Debtors not to complete the loan transaction and not to release the $8.9 million to the Borrower.

5.     The Nevada Mortgage Lending Division ("MLD"), a state regulatory body within the Nevada Department of Business & Industry, has requested that USACM immediately return the $8.9 million in the Escrow Account to the Investors. USACM believes that because the funds in the Escrow Account are directly traceable to the amounts invested by the Investors shortly before the Petition Date, from March 27, 2006 through April 6, 2006, and because USACM has determined not to fund the $8.9 million loan to the Borrower, a return of the funds in the Escrow

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Account to the Investors is appropriate.

<u>Memorandum of Law</u>

Nevada law requires that funds received by a mortgage broker from investors to acquire ownership or a beneficial interest in a loan secured by real estate must deposit the funds in: (a) a financial institution and be kept separate from money belonging to the mortgage broker, or (b) an escrow account controlled by an independent party. Nev. Rev. Stat. 645B.175(1). In this case, USACM, apparently, followed this rule. Therefore, the funds in the Escrow Account at the Title Company are directly traceable to specific investors. These funds are not property of the bankruptcy estate.

In the event that a loan is not consummated, Nevada law requires the funds held in the Escrow Account to be returned to the investors. Nev. Rev. Stat. 645B.175(2)(b).

## CONCLUSION

WHEREFORE, USACM respectfully requests that the Court enter an order authorizing the Title Company to release the $8.9 million held in the Escrow Account to USACM, and authorizing USACM to promptly return the $8.9 million to the 117 Investors and in the amounts set forth on Exhibit A.

Dated: April 27, 2006.

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

 /s/ Jeanette E. McPherson, Esq.
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3