JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: 775-786-5000
Fax: 775-786-1177
Email: jlc@jonesvargas.com
  and  tbw@jonesvargas.com
  and  lbubala@jonesvargas.com

Attorneys for Direct Lenders

*Electronically Filed on:*
*May 11, 2006*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In re: | |
|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, Debtor. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, Debtor. | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, Debtor. | |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, Debtor. | **DIRECT LENDERS' MOTIONS:**<br>1. **TO COMPEL DEBTOR TO CONTINUE TO FORWARD LENDER PAYMENTS TO DIRECT LENDERS; and**<br>2. **TO DELAY OR PROHIBIT APPRAISALS ON PERFORMING LOANS (AFFECT USA COMMERCIAL MORTGAGE CO.)** |
| USA SECURITIES, LLC, Debtor. | |
| Affects:<br>☐ All Debtors<br>■ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Hearing Date: June 5, 2006<br>Hearing Time: 9:30 a.m. |

1

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Mtn, Continue Paymts & No Appraisal\Mtn, Continue Pymts & Prohibit Appraisal 5.11.06.doc

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  Jones Vargas represents numerous direct lenders who are named beneficiaries ("Direct Lenders") of certain loans which were originated and serviced by Debtor USA Commercial Mortgage Co. (hereinafter, "Debtor" or "USA Commercial"). These Motions are made pursuant to Fed. R. Bankr. P. 9013 and 11 U.S.C. § 541(a)(1), and are based upon the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and any other material this Court may wish to consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELIEF SOUGHT

The Direct Lenders move the Court to order Debtor USA Commercial Mortgage, as servicing agent, to continue to forward all borrower payments to the Direct Lenders on all performing loans. On any borrower payments on non-performing or delinquent loans, Direct Lenders also move for an order that USA Commercial continue to forward such payments subject to a later possible setoff for previous overpayments that USA Commercial may be able to assert. Finally, the Direct Lenders move for an order that USA Commercial either delay or not order appraisals of property held as security for performing loans without Direct Lenders consents, unless USA Commercial agrees that it will not levy surcharges or other fees against the Direct Lenders for such appraisals.

### II. INTRODUCTION

The Direct Lenders bring these motions because they—and not USA Commercial—hold all rights in the borrower payments and the underlying loans, promissory notes, and securing deeds of trust. To understand how these rights arise, it is important to understand the relationships between Debtor and the Direct Lenders. Debtor is, in part, a mortgage broker that solicits funding from private, non-bank lenders to directly finance commercial developments. *See* Debtor's Motion For Order Under 11 U.S.C. Sections 105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and Interim Use Of Cash In Accordance With Proposed Cash Budget, Ct. Dkt. #8 at Ex. C at 3 ("Third Party Investors"). To be clear, Debtor does not finance the loans originally, then bring in the Direct Lenders as investors to back its loans. Once Debtor secures sufficient lenders to fund a project, Debtor prepares the loan agreements, promissory

2

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Mtn, Continue Paymts & No Appraisal\Mtn, Continue Pymts & Prohibit Appraisal 5.11.06.doc

1   notes, deeds of trust, and other related documents for the transaction. The documents specify the
2   amount each lender loans the borrower, and each lender is secured as a direct beneficiary in the
3   promissory note in an amount proportional to its contribution to the loan. After the documents are
4   executed, USA Commercial's only relationship to the transaction is as an agent for the Direct
5   Lenders, who contractually retain Debtor as their loan servicing agent.[1]

6   USA Commercial, as the originating mortgage broker and servicing agent, does not have
7   any interest in the transaction beyond the fees it collects as servicing agent.[2] Debtor holds neither
8   legal nor equitable title; it is merely a conduit for the borrower payments on the promissory notes
9   and owed to the Direct Lenders. Therefore, the borrower payments, loans, promissory notes, and
10  securing deeds of trust are not USA Commercial's property. As such, the Direct Lenders move for
11  orders compelling USA Commercial to continue to forward borrower payments to them, and to
12  delay or prohibit USA Commercial from appraising properties securing performing loans without
13  an agreement that USA Commercial will not asses them the cost.

## I. BACKGROUND

15  As Debtor acknowledges, there are thousands of lenders and investors involved in its loans
16  (Ct. Dkt. #8 at ¶4). Therefore, as an overview, the Direct Lenders present a representative
17  example of a lender-loan package: Mojave Canyon, Inc.'s (J.B. Partain, principal) loan in what is
18  referred to as the Roam Development Group, L.P., project. Although this loan was non-
19  performing as of April 13, 2006, the loan used USA Commercial's standard forms and can,
20  therefore, be representative of performing loans as well as non-performing loans. *See* Ct. Dkt.
21  #130, Supplemental Declaration of Thomas J. Allison & Ex. A, discussing loan performance.

22  On or about February 28, 2005, Mr. Partain as an officer of Mojave Canyon, Inc., signed a
23  generalized Loan Servicing Agreement ("Agreement") with USA Commercial. See Ex. 1. The
24  Agreement states that USA Commercial is a mortgage broker and servicing agent, that Mojave

---

[1] Although USA Commercial allegedly contributed money to some of the loans it services, it is not a lender in the Roam Development loan described below.

[2] Again, USA Commercial allegedly may be an Insider Direct Lender in some projects, it is not a lender in the loan described below.

3

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Mtn, Continue Paymts & No Appraisal\Mtn, Continue Pymts & Prohibit Appraisal 5.11.06.doc

Canyon, Inc., wishes to lend funds to borrowers for loans brokered by USA Commercial, and to retain USA Commercial as a servicing agent. *Id.* at Recitals A-C. The Agreement is not specific to any individual project. *Id.* USA Commercial agrees to provide the services necessary to broker and service loans, which include, without limitation, maintaining account records on each note and the sums collected, diligent collection of all payments and prompt payment to the lender, at least quarterly statements regarding loan collections, and foreclosure or other necessary actions in the event of borrower non-payment. *Id.* at ¶¶ 1-2. USA Commercial is compensated with an annual service fee of up to one percent of the maximum principal loan amount, payable in a pro-rated monthly amount for each month serviced. *Id.* at ¶ 5.

The Agreement does not explicitly state so, but it is apparent that Mojave Canyon, Inc., is one of many lenders whose funds are pooled to fund loans. If USA Commercial fails to perform its obligations on the Agreement, any lender may, upon thirty (30) days written notice, pursuant to paragraph 8, terminate the Agreement. Under paragraph 3, and upon USA Commercial's failure to act in the event of a default, any lender, with the approval of fifty-one percent (51%) or more of the holders of the beneficial interest of record, may designate a new servicing agent to enforce the rights of the beneficiaries.

On or about February 28, 2005, Mr. Partain, as an officer of Mojave Canyon, Inc. signed a Declaration of Agency/Limited Power of Attorney for a loan to Roam Development Group, L.P. ("Declaration"). A copy of an unsigned version is attached as Exhibit 2. The Declaration specifies that USA Commercial is the Direct Lenders' "agent to accept delivery of the Note and to hold same on [his] behalf throughout the term of the loan." *Id.* at ¶ 1. The Direct Lenders also appointed USA Commercial as his/their/its agent "to ask, demand, sue for, recover, collect and receive each and every sum of money, debt, account and demand, . . . [that] belong[s] to or [is] claimed by [the Direct Lender] in connection with the Loan." *Id.* at ¶ 2(a). USA Commercial may not "use or release any money in which Direct Lender holds a beneficial interest under the Deed of Trust for any purpose not directly related to servicing the Loan." *Id.* at ¶ 3. Mojave Canyon, Inc., provided USA Commercial with the power of attorney for the length of the loan, as defined by the

4

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Mtn, Continue Paymts & No Appraisal\Mtn, Continue Pymts & Prohibit Appraisal 5.11.06.doc

maturity date specified in the promissory note, unless such power is extended in writing to cover an extension of and/or a monetary addition to the loan. *Id.*

On or about February 28, 2005, Mojave Canyon, Inc., became a party to the Loan Agreement, Promissory Note, and Deed of Trust with Roam Development Group, L.P., copies of which are attached as Exhibits 3-5, respectively. Mojave Canyon, Inc., contributed $100,000 toward the $25.7 million loan, is among nearly 300 lenders listed in the loan documents, and is secured as beneficiary to the Promissory Note and Deed of Trust in an amount proportional to its contribution to the loan. See Ex. 3, Loan Agreement at ¶ 3.1 (Amount of Loan) & Ex. A, p. 32; See also Ex. 4, Promissory Note at Ex. A, p. 12, and Ex. 5, Deed of Trust at Ex. A, p. 29.

The borrower agreed to repay the loan at twelve-percent annual interest with interest-only payments until the loan matured eighteen months after the Deed of Trust was recorded. Ex. 3, Loan Agreement at ¶ 1.1 (Defined Terms, "Maturity Date") & ¶ 3.1 (Amount of Loan); Ex. 4, Promissory Note at Recital and ¶¶ 1-3 (Note Amount, Interest Rate, Payments, and Maturity Date). Lenders recorded the Deed of Trust March 31, 2005. Ex. 5. Based on the Loan Agreement and Promissory Note, the loan will mature on or about September 30, 2006, eighteen months after lenders recorded the Deed of Trust.

### III.  ARGUMENT

#### A.  The Borrower Payments Are Not Property of Debtor's Estate

##### 1.  Standard to Determine Property of Debtor's Estate--11 U.S.C. § 541(a)(1)

A debtor's estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Ninth Circuit Bankruptcy Appellate Panel addressed the estate of a debtor loan servicing agent in *Golden Mortgage Fund #14 v. Kennedy* (*In re Golden Triangle Capital, Inc.*), 171 B.R. 79 (1994). Specifically, *Golden Mortgage* asked whether pre-petition loan funds held by a debtor servicing agent are part of its estate. In that case the lender provided the servicing agent with a cashiers check to fund the loan, but the agent filed for bankruptcy before distributing the money to the borrower. *Id.* at 80-81. The lender filed a complaint for declaratory relief to determine the entitlement to the loan funds. *Id.* at 81. The BAP held that the lender and debtor servicing agent

5

intended to enter into an express trust, that the servicing agent held the loan funds in a resulting trust, and that the funds were not part of the debtor servicing agent's estate. *Id.* at 81, 82-83.

The Court explained its decision by first discussing estates in general. "It is well settled that property in the debtor's hands that belongs to another does not become property of the estate under § 541(a)." *Id.* at 81. "Under subsection (b), property held by the debtor solely for the benefit of another does not constitute property of the state. The legislative history of subsection (b) manifests Congressional concern that funds which the debtor holds in constructive trust for another should not be parceled out among the creditors." *Id.*, quoting *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986).

The Court then considered the law of trusts. The Court explained that a resulting trust is implied by law when a transaction fails to effectuate the inferred intent of the parties. *Id.* at 82 (under California law); *see Bemis v. Estate of Bemis*, 114 Nev. 1021, 1026-27 & n.4, 967 P.2d 437, 441 & n.4 (1998) (same under Nevada law); *Hatoff v. Lemons & Assocs., Inc.* (*In re Lemons & Assocs., Inc.*), 67 B.R. 198, 212 (Bankr. D. Nev. 1986) (noting trust implied by circumstances). The Court also noted that property in a resulting trust is not part of the recipient debtor's estate. *Golden Mortgage*, 171 B.R. at 82; *see also Airwork Corp. v. Markair Express, Inc.* (*In re Markair, Inc.*), 172 B.R. 638, 641-42 (B.A.P. 9th Cir. 1994) (R.C. Jones, J.) (same).

Finally, the Court considered the relationship between the lender and the servicing agent. Since the servicing agent accepted a check from the lender to fund the loan, yet never distributed the funds to the borrower, the Court implied a resulting trust. *Golden Mortgage*, 171 B.R. at 82-83 ("[I]t is apparent that the parties intended to enter into a brief relationship that must be characterized as an express trust."). The Court also found that the lender never entered into a credit relationship with the servicing agent. *Id.* at 83. Therefore, "the funds never became property of the estate since [the servicing agent] was only a conduit for the funds; except for its nominal fee, the [servicing agent] never had rights in the funds." *Id.*

*Golden Mortgage* is consistent with other decisions involving bankrupt servicing agents. In *Bear v. Coben* (*In re Golden Plan of Calif., Inc.*), the Ninth Circuit Court of Appeals noted that the ownership interest in notes and trust deeds belonged to the lenders named as payees and

beneficiaries, not the debtor mortgage broker/servicing agent. See 829 F.2d 705, 707-08 & n.1 (9th Cir. 1987) (reciting undisputed District Court holding not at issue on appeal). Similarly, the Bankruptcy Court for the District of Delaware held that when the debtor originated and sold loans, its ongoing role as servicing agent did not provide legal or equitable title to funds owed on the loans. *DVI Fin. Servs., Inc. v. Nat'l Med. Imaging, LLC* (*In re DVI, Inc.*), 305 B.R. 414, 417 (Bankr. D. Del. 2004).

### 2. The Borrower Payments Are Not Property of Debtor's Estate

At stake are the rights to the payments made to USA Commercial, both lender payments to fund as-yet unfunded loans originated by USA Commercial, and the borrower payments owed to the lenders on loans organized and serviced by USA Commercial. *Golden Mortgage*, *Bear*, and *DVI Financial* make it clear that when a mortgage servicing agent files for bankruptcy, the funds its receives as the agent—both pre- and post-petition—are not property of the debtor's estate. The servicing agents in the prior cases did not have rights in the pass-through payments they received. Thus, in the present case, USA Commercial does not have any rights to the payments it receives from lenders for future loans, or the payments it receives from borrowers to satisfy their loan obligations to the Direct Lenders.

### B. USA Commercial Should Forward Payments to Direct Lender

The Direct Lenders seek protection of their property—the borrower payments—that is temporarily in the hands of USA Commercial as their servicing agent. Therefore, The Direct Lenders move for an order that USA Commercial Mortgage Co. continue to forward all borrower payments to the Direct Lenders on all performing loans. On any borrower payments on non-performing or delinquent loans, Direct Lenders also move for an order that USA Commercial continue to forward such payments subject to any possible later setoff for previous overpayments that USA Commercial may be able to assert.

### C. USA Commercial Should At Least Delay Appraisal on Performing Loans

The Direct Lenders also seek to protect their property rights in the borrower payments by delaying or preventing USA Commercial from conducting appraisals of properties securing performing loans, if USA Commercial intends to surcharge the Direct Lenders. However, there

7

are no grounds to appraise property at this time if the loans are performing. The Direct Lenders consent to appraisals on performing loans only if USA Commercial agrees that it will not charge the Direct Lenders in any way for the cost of the appraisals.

### III. CONCLUSION

USA Commercial Mortgage Company helped originate and arrange funding from the Direct Lenders for commercial developments. However, USA Commercial's only role today is as a loan servicing agent. USA Commercial has no ownership rights in the borrower payments it receives as the servicing agent on those loans. USA Commercial simply receives the payments as a conduit to move the money from borrower to lender, and the payments belong to the Direct Lenders.

Therefore, the Direct Lenders moves for an order that USA Commercial continue to forward borrower payments to the Direct Lenders as required by the loan servicing agreements. The Direct Lenders also move for an order that delays or prohibits USA Commercial from appraising properties securing performing loans, unless USA Commercial agrees not to surcharge the Direct Lenders for appraisal costs.

DATED this 11th day of May, 2006.

JONES VARGAS

By:   //s// Janet L. Chubb
      JANET L. CHUBB, ESQ.
      LOUIS M. BUBALA, ESQ.

Attorneys for Direct Lenders

# CERTIFICATE OF SERVICE

1. On May 11, 2006, I served the following document(s):

**DIRECT LENDERS' MOTIONS: 1. TO COMPEL DEBTOR TO CONTINUE TO FORWARD LENDER PAYMENTS TO DIRECT LENDERS; and
2. TO DELAY OR PROHIBIT APPRAISALS ON PERFORMING LOANS**

2. I served the above-named document(s) by the following means to the persons as listed below:

   : a. **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

- **FRANKLIN C. ADAMS**
  franklin.adams@bbklaw.com arthur.johnston@bbklaw.com
- **KELLY J. BRINKMAN**
  kbrinkman@gooldpatterson.com
- **CANDACE C CARLYON**
  ltreadway@sheacarlyon.com
  ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rsmith@sheacarlyon.com
- **CICI CUNNINGHAM**
  bankruptcy@rocgd.com
- **LAUREL E. DAVIS**
  bklsclv@lionelsawyer.com
  ldavis@lionelsawyer.com;gbagley@lionelsawyer.com;ldavisesq@aol.com
- **THOMAS H. FELL**
  thf@gordonsilver.com bankruptcynotices@gordonsilver.com
- **SCOTT D. FLEMING**
  sfleming@halelane.com dbergsing@halelane.com,ecfvegas@halelane.com
- **EDWARD J. HANIGAN**
  haniganlaw@earthlink.net haniganlaw1@earthlink.net
- **ROBERT R. KINAS**
  rkinas@swlaw.com
  mstrand@swlaw.com;jlustig@swlaw.com;lholding@swlaw.com;imccord@swlaw.com
- **NILE LEATHAM**
  nleatham@klnevada.com ckishi@klnevada.com;bankruptcy@klnevada.com
- **ROBERT C. LEPOME**
  robert@robertlepome.com susan@robertlepome.com
- **RICHARD MCKNIGHT**
  mcknightlaw@cox.net
  gkopang@lawlasvegas.com;cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JEANETTE E. MCPHERSON**
  jmcpherson@s-mlaw.com bkfilings@s-mlaw.com
- **DONNA M. OSBORN**
  jinouye@marquisaurbach.com
  dosborn@marquisaurbach.com;tszostek@marquisaurbach.com;jcrowe@MarquisAurbach.com;kgallegos@MarquisAurbach.com

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

- **LENARD E. SCHWARTZER**
  bkfilings@s-mlaw.com
- **CARYN S. TIJSSELING**
  cst@beesleyandpeck.com aha@beesleyandpeck.com
- **MATTHEW C. ZIRZOW**
  bankruptcynotices@gordonsilver.com

❾ b.     **United States mail, postage fully prepaid** (list persons and addresses):

Annette W Jarvis
P O Box 45385
36 South State Street, #1400
Salt Lake City, UT 84145-0385

Nicholas J Santoro, Esq.
Santoro Driggs et al.
400 S Fourth St 3rd Floor
Las Vegas, NV 89101

Bradley J Stevens, Esq.
3300 N Central Ave
Phoenix, AZ 85012

Peter Susi, Esq.
Michaelson, Susi & Michaelson
7th West Figueroa St 2nd Floor
Santa Barbara, CA 93101

Gregory J Walch, Esq.
400 S Fourth St. 3rd Floor
Las Vegas, NV 89101

❾ c.     **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

❾     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

❾     For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

: d.     **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time

10

|   |   |   |
|---|---|---|
| 1 | | after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| 2 | ❾ e. | **By fax transmission** (list persons and fax numbers): |
| 3 | | Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission is attached. |
| 4 | ❾ f. | **By messenger**: |
| 5 | | I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed blow and providing them to a messenger for service.  (A declaration by the messenger must be attached to this Certificate of Service). |

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 11th day of May, 2006.

| _J. Englehart & Tawney Waldo_ | _//s// Tawney Waldo & J. Englehart_ |
|---|---|
| Name | Signature |

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

11

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Mtn, Continue Paymts & No Appraisal\Mtn, Continue Pymts & Prohibit Appraisal 5.11.06.doc