# Exhibit 5

# Exhibit 5



When Recorded, Return To:  USA Capital
4484 South Pecos Road
Las Vegas, NV 89121

This is hereby certified to be a true and correct copy
of the original as recorded in the Galveston County
Recorder's Office on March 31, 2005 as
Instrument No. 2005019772.
By:

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust"), made this 23rd day of March, 2005, by and between Roam Development Group, L.P., a Texas limited partnership ("Trustor"), Scott K. McDonald, Esq, whose address is 2626 Cole Avenue, Suite 900, Dallas, Texas 75204 ("Trustee"), and those persons listed on **Exhibit "A"** attached hereto ("Beneficiary"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in that certain Loan Agreement ("Loan Agreement") of even date herewith between Trustor and Beneficiary

### WITNESSETH:

That for good and valuable consideration, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, and for the purpose of securing, in such priority as Beneficiary may elect, each of the following:

1      The due, prompt and complete payment, observance, performance and discharge of each and every obligation, covenant and agreement contained in Trustor's promissory note of even date herewith in the initial principal amount of Twenty-Five Million Seven Hundred Thousand Dollars ($25,700,000) (the "Note"), together with interest thereon specified therein, payable to the order of Beneficiary and any and all modifications, extensions or renewals thereof, whether hereafter evidenced by the Note or otherwise, and whether advanced now or in the future; and

2      The payment of all other sums, with interest thereon at the rate of interest provided for herein or in the Note, becoming due or payable under the provisions of this Deed of Trust, the Loan Agreement or any other instrument or instruments heretofore or hereafter executed by Trustor having reference to or arising out of or securing the indebtedness represented by the Note; and

3.      The payment of such additional sums and interest thereof which Beneficiary may hereafter loan to Trustor, or to its successors or assigns, whether or not evidenced by a promissory note or notes which are secured by this Deed of Trust; and

1

4.      The due, prompt and complete observance, performance and discharge of each and every obligation, covenant and agreement of Trustor contained in the Loan Agreement, the Note, this Deed of Trust or any other Loan Document; and

TRUSTOR DOES HEREBY irrevocably grant, transfer, bargain, sell, convey and assign to Trustee, in trust, with power of sale and right of entry and possession, and does grant to Beneficiary a security interest for the benefit and security of Beneficiary under and subject to the terms and conditions hereinafter set forth, in and to any and all of the following described property which is (except where the context otherwise requires) herein collectively called the "Mortgaged Property" whether now owned by Trustor or held or hereafter acquired by Trustor and wherever located, including any and all substitutions, replacements and additions to same:

(a)      That certain real property located in Galveston County, State of Texas and more particularly described in Exhibit "B," attached hereto and incorporated herein by this reference, together with all of the easements, rights, privileges, franchises, appurtenances thereunto belonging or in any way appertaining to the real property, including specifically but not limited to all appurtenant water, water rights and water shares or stock of Trustor, any and all general intangibles relating to the use and/or development of the real property, including development allotments, governmental permits, approvals, authorizations and entitlements, agreements to provide necessary utility or municipal services, all engineering plans and diagrams, surveys and/or soil and substrata studies, and all other rights, privileges and appurtenances related to the said real property and all of the estate, right, title, interest, claim and demand whatsoever of Trustor therein or thereto, either in law or in equity, in possession or in expectancy, now owned or hereafter acquired (hereinafter referred to as the "Property");

(b)      All structures, buildings and improvements of every kind and description now or at any time hereafter located on the Property (hereinafter referred to as the "Improvements"), including all equipment, apparatus, machinery, fixtures, fittings, and appliances and other articles and any additions to, substitutions for, changes in or replacements of the whole or any part thereof, now or at any time hereafter affixed or attached to and which are an integral part of the Improvements or the Property or any portion thereof, and such Improvements shall be deemed to be fixtures and an accession to the freehold and a part of the Property as between the parties hereto and all persons claiming by, through or under such parties except that same shall not include such machinery and equipment of Trustor, its contractors or subcontractors, or any tenant of any portion of the Property or Improvements, which is part of and/or used in the conduct of the normal business of Trustor or its tenant conducted upon the Mortgaged Property, which is distinct and apart from the ownership, operation and maintenance of the Mortgaged Property

(c)      All articles of tangible personal property and any additions to, substitutions for, changes in or replacements of the whole or any part thereof other than personal property which is or at any time has become toxic waste, waste products or hazardous substances (hereinafter referred to as the "Personal Property"), including without limitation all wall-beds, wall-safes, built-in furniture and installations, shelving, partitions, door-tops, vaults, elevators, dumb-waiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets

2

and boxes for the same, fire sprinklers, alarm systems, drapery rods and brackets, screens, water heaters, incinerators, wall coverings, carpeting, linoleum, tile, other floor coverings of whatever description, communication systems, all specifically designed installations and furnishings, office maintenance and other supplies and all of said articles of property, the specific enumerations herein not excluding the general, now or at any time hereafter placed upon or used in any way in connection with the ownership, operation or maintenance of the Property or the Improvements or any portion thereof which Trustor owns or in which Trustor now has or hereafter acquires an interest, and all building materials and equipment now or hereafter delivered to the Property and intended to be installed or placed in or about the Improvements Such tangible, personal property shall, in addition to all other tangible, personal property herein described or defined, specifically include each and every item of tangible, personal property and any substitutions for, changes in or replacements thereof which are used in the operation of the Improvements. Notwithstanding the breadth of the foregoing, the Personal Property shall not include (i) personal property which may be owned by lessees or other occupants of the Mortgaged Property; (ii) inventory of any lessee or occupant of the Mortgaged Property used in the normal course of the business conducted thereon; (iii) material, equipment, tools, machinery, or other personal property which is brought upon the Mortgaged Property only for use in construction, maintenance or repair and which is not intended to remain after the completion of such construction, maintenance or proper maintenance, of the Mortgaged Property; or (iv) such items of tangible personal property which have not been purchased or installed with proceeds of the Note and for which Beneficiary shall have executed such documents as may be required to subordinate to the lien or security interest of any purchase money lender or supplier of such tangible personal property;

       (d)    All right, title and interest of Trustor, now owned or hereafter acquired in and to and lying within the right-of-way of any street, road, alley or public place, opened or proposed, vacated or extinguished by law or otherwise, and all easements and rights of way, public or private, tenements, hereditaments, appendages, rights and appurtenances how or hereafter located upon the Property or now or hereafter used in connection with or now or hereafter belonging or appertaining to the Property; and all right, title and interest in the Trustor, now owned or hereafter acquired, in and to any strips and gores adjoining or relating to the Property;

       (e)    All judgments, awards of damages, settlements and any and all proceeds derived from such hereafter made as a result of or in lieu of any taking of the Mortgaged Property or any part thereof, interest therein or any rights appurtenant thereto under the power of eminent domain, or by private or other purchase in lieu thereof, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the Improvements thereon, including change of grade of streets, curb cuts or other rights of access for any public or quasi-public use or purpose under any law;

       (f)    All rents, incomes, issues and profits, revenues, royalties, bonuses, rights, accounts, contract rights, insurance policies and proceeds thereof, general intangibles and benefits of the Mortgaged Property, or arising from any lease or similar agreement pertaining thereto (the "Rents and Profits"), and all right, title and interest of Trustor in and to all leases of

3

the Mortgaged Property now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether said cash or securities are to be held until the expiration of the terms of said leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of said terms with the right to receive and apply the same to said indebtedness, and Trustee or Beneficiary may demand, sue for and recover such payments but shall not be required to do so; and

        (g)    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims

      Trustor makes the foregoing grant to Trustee for the purposes herein set forth; provided, however, that if the Trustor shall pay or cause to be paid to the holder of the Note all amounts required to be paid under the provisions of the Note, this Deed of Trust or any other Loan Documents, and at the time and in the manner stipulated therein, and shall further pay or cause to be paid all other sums payable hereunder and all indebtedness hereby secured, then, in such case, the estate, right, title and interest of the Trustee and Beneficiary in the Mortgaged Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Beneficiary that all amounts due to be paid under the Note have been paid or satisfied, and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by Trustee or Beneficiary, and of any other sums as herein provided, the Trustee shall, upon receipt of the written request of the Beneficiary, cancel, reconvey and discharge this Deed of Trust.

TO HAVE AND TO HOLD THE MORTGAGED PROPERTY UNTO THE TRUSTEE ITS SUCCESSORS AND ASSIGNS FOREVER, ALL IN ACCORDANCE WITH THE PROVISIONS HEREOF.

ARTICLE 1
TRUSTOR'S COVENANTS

Trustor covenants, warrants and agrees with Trustee and Beneficiary as follows:

    1.1    Payment of Note.  Trustor shall pay the principal and interest and other sums coming due with respect to the Note, this Deed of Trust or any of the Loan Documents at the time and place in the manner specified in and according to the terms thereof.

    1.2    Title.  The Trustor warrants that:

        (a)    Trustor has indefeasible title to fee simple estate in the Property described in Exhibit "B", subject only to those liens, charges or encumbrances set forth as Permitted Exceptions in the Loan Agreement; that Trustor has full power and authority to grant, bargain, sell and convey the Mortgaged Property in the manner and form herein done or intended hereafter to be done; that this Deed of Trust is and shall remain a valid and enforceable lien on

4

the Mortgaged Property subject only to the Permitted Exceptions; that Trustor and its successors and assigns shall preserve its title and interest in and title to the Mortgaged Property and shall forever warrant and defend the same and shall warrant and defend the validity and priority of the lien hereof forever against all claims and demands of all persons whomsoever, and that this covenant shall not be extinguished by any exercise of power of sale or foreclosure sale hereof, but shall run with the land; and

        (b)    Trustor has and shall maintain indefeasible title to the Improvements and Personal Property, including any additions or replacements thereto, free of all security interests, liens and encumbrances, if any, except the Permitted Exceptions, or as otherwise disclosed to and accepted by Beneficiary in writing, and has good right to subject the Improvements and Personal Property to the security interest created hereunder  If the lien of this Deed of Trust on any Improvements or Personal Property be subject to a lease agreement, conditional sale agreement or chattel mortgage covering such property, then in the event of any default hereunder all the rights, title and interest of the Trustor in any and all deposits made thereon or therefor are hereby assigned to the Trustee, together with the benefit of any payments now or hereafter made thereon. Trustor hereby also transfers, sets over and assigns to Trustee, its successors and assigns, all of Trustor's right, title and interest in and to the Project Documents, and all leases and use agreements of machinery, equipment and other personal property of Trustor in the categories hereinabove set forth, under which Trustor is the lessee of, or entitled to use such items, and Trustor agrees to execute and deliver to Trustee or Beneficiary all such Project Documents, leases and agreements when requested by Trustee or Beneficiary  Trustor hereby covenants and agrees to well and punctually perform all covenants and obligations under such Project Documents, leases or agreements as it so chooses, but nothing herein shall obligate Trustee or Beneficiary to perform any obligations of Trustor under such Project Documents, leases or agreements unless Trustee or Beneficiary shall so choose; and

        (c)    Trustor will, at its own cost without expense to Trustee or Beneficiary, do, execute, acknowledge and deliver all and every such further act, deed, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as Trustee or Beneficiary shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Trustee and Beneficiary the property and rights hereby conveyed or assigned or intended now or thereafter so to be, or which Trustor may be or hereafter become bound to convey or assign to Beneficiary for the intention of facilitating the performance of the terms of this Deed of Trust or for the filing, registering, perfecting or recording of this Deed of Trust and any other Loan Document and, on demand, Trustor will execute, deliver and file or record one or more financing statements, chattel mortgages or comparable security instruments more effectively evidencing the lien hereof upon the Personal Property

       1 3   <u>Business Existence.</u> Trustor shall do all things necessary to preserve and keep in full force and effect its rights and privileges to do business and to conduct its business in the State of Texas, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to the Trustor

5

1.4    Payment of Taxes, Assessments, Insurance Premiums and Charges    Trustor shall pay, prior to delinquency, all insurance premiums that become due and payable on any insurance policies required hereunder, and all taxes, assessments, charges and levies imposed by any Governmental Agency which are or may become a lien affecting the Property or any part of it, including without limitation assessments on any appurtenant water stock; except that Trustor need not pay and discharge any tax, assessment, charge or levy that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay such contested liabilities in accordance with generally accepted accounting principles and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited

1.5    Maintenance and Repair.    The Trustor shall, at its sole cost and expense, keep the Mortgaged Property in good operating order, repair and condition and shall not commit or permit any waste thereof, which condition, during the course of any construction or reconstruction of the Improvements, shall be subject to the normal constraints and effects of construction or reconstruction.    Trustor shall make all repairs, replacements, renewals, additions and improvements and complete and restore promptly and in good workmanlike manner any Improvements which may be damaged or destroyed thereon, and pay when due all costs incurred therefor  Trustor shall not remove or demolish any of the Mortgaged Property conveyed hereby, nor demolish or materially alter the Mortgaged Property without the prior written consent of the Beneficiary  Trustor shall permit Trustee or Beneficiary or their agents the opportunity to inspect the Mortgaged Property, including the interior of any structures, at any reasonable times upon twenty-four (24) hours telephonic notice

1.6    Compliance with Laws.    The Trustor shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property or the operation thereof, and shall pay all fees or charges of any kind in connection therewith: except that Trustor shall not be required to pay and discharge any fee or charge that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles, and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited

1.7    Insurance.    Trustor shall be responsible to provide, maintain and keep in force or to cause to be maintained or kept in force, all policies of insurance on the Mortgaged Property as required by the Loan Agreement.

1.8    Casualty    The Trustor will give the Beneficiary prompt notice of damage to or destruction of any Improvements on the Property and in case of loss covered by policies of insurance, Trustor hereby authorizes Beneficiary to make proof of loss if not made promptly by the Trustor or any lessee.  Any expenses that the Beneficiary incurs in the collection of insurance proceeds, together with interest thereon from date of any such expense at the per annum interest rate set forth in the Note, shall be added to and become a part of the indebtedness secured hereby  Trustor shall reimburse such expenses to Beneficiary, together with accrued interest

6

thereon, no later than seven (7) days after demand therefor  Upon the occurrence of damage to or destruction of any Improvements, if Beneficiary shall so elect in its sole and unfettered discretion, Beneficiary shall make the net proceeds of insurance available for repair, restoration and/or reconstruction under the conditions and in the manner specified in the following paragraph  If Beneficiary shall otherwise determine, then Beneficiary shall apply such insurance proceeds to reduce the indebtedness secured hereby then most remotely to be paid    The foregoing notwithstanding, Beneficiary must apply insurance proceeds to the repair, restoration, and/or reconstruction of the Improvements unless the Beneficiary reasonably determines that the Mortgaged Property, so repaired, restored or reconstructed, will be of insufficient value or condition to adequately secure the Trustor's obligations hereunder  If the Beneficiary shall require that the Improvements be repaired or rebuilt then the repair, restoration, replacement or rebuilding of the Improvements shall be to a condition of at least equal value as prior to such damage or destruction

Insurance proceeds made available for restoration, repair, replacement or rebuilding of the Improvements shall be disbursed from time to time (provided no default exists in the Note or this Deed of Trust or any other Loan Document at the time of each such disbursement), in the manner set forth in the Loan Agreement  The Beneficiary may require that plans and specifications for the restoration, repair, replacement or rebuilding be submitted to and approved by the Beneficiary prior to the commencement of the work  Beneficiary, at its option, may apply any surplus which may remain out of said insurance proceeds after payment of costs of building and restoration either on account of the indebtedness secured hereby then most remotely to be paid, or pay it to any person or persons entitled thereto  Application or release of proceeds under the provisions hereby shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice  No interest shall be allowed on account of any such proceeds or any other funds held in the hands of the Beneficiary or the disbursing party hereunder

1 9    Condemnation  The Trustor, promptly upon learning of any proceeding for the condemnation of the Mortgaged Property or any portion of it, shall notify Beneficiary thereof  The Trustor hereby assigns, transfers and sets over unto the Beneficiary all compensation, rights of action and the entire proceeds of any award, up to the maximum amount of all amounts then due and payable under the Note and the Loan Documents, including, without limitation, all interest, costs, expenses and Advances (as that term is defined in Section 1 16, below), and any claim for damages for any of the Mortgaged Property taken or damaged under the power of eminent domain or by condemnation or by sale in lieu thereof  Beneficiary may, at its option, commence, appear in and prosecute, in its own name, any action or proceeding, or make any compromise or settlement, in connection with such condemnation, taking under the power of eminent domain or sale in lieu thereof, and hereby appoints Beneficiary as its true and lawful attorney-in-fact for such purposes, such power being coupled with an interest  After deducting therefrom all of its expenses, including attorneys fees, the Beneficiary may elect, in its sole discretion and notwithstanding the fact that the security given hereby may not be impaired by a partial condemnation, to apply any part or all of the proceeds of the award, in such order as Beneficiary may determine, upon or in reduction of the indebtedness secured hereby whether due or not  Any application of all or a portion of the proceeds of any such award to the indebtedness

7

shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice    Trustor agrees to execute such further assignments of any compensation, award, damages, right of action and proceeds as Beneficiary may require

1 10    Indemnification    The Trustor shall appear in and defend any suit, action or proceeding that might in any way, in the reasonable judgment of Beneficiary, materially and detrimentally affect the value of the Mortgaged Property, the title to the Mortgaged Property or the rights and powers of Trustee or Beneficiary    Trustor shall, at all times, indemnify, hold harmless and on demand reimburse Beneficiary for any and all loss, damage, reasonable expense or cost, including cost of evidence of title and reasonable attorneys fees, arising out of or incurred in connection with any such suit, action or proceeding, and the sum of such expenditures shall be secured by this Deed of Trust and shall accrue interest at the "Default Rate" as that term is defined in the Note and shall be due and payable on demand    Trustor shall pay costs of suit, cost of evidence of title and reasonable attorneys' fees in any proceeding or suit brought by Trustee or Beneficiary to foreclose this Deed of Trust

1 11    Sale of Premises or Additional Financing Not Permitted    In order to induce Beneficiary to make the loan secured hereby Trustor specifically agrees that:

(a)    if the Mortgaged Property or any part thereof or any interest therein, shall be sold, assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Trustor whether voluntarily or involuntarily or by operation of law, without the prior written consent of Beneficiary, except as shall be specifically hereinafter permitted, then Beneficiary, at its option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable    Except as shall be otherwise specifically provided herein, (a) a change in the legal or equitable ownership of the Property whether or not of record, or (b) a change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Property; provided, however, that any transfer of the Property or any interest therein to an entity which controls, is controlled by or is under common control with Borrower shall not be considered a transfer hereunder; and further provided that transfer of no more than 25% of the ownership (aggregate during the term of this Loan) shall not require Lender's approval so long as the control of Borrower remains in Tracy Suttles    In connection herewith, the financial stability and managerial and operational ability of Trustor is a substantial and material consideration to Beneficiary in its agreement to make the loan to Trustor secured hereby    The transfer of an interest in the Mortgaged Property may materially alter and reduce Beneficiary's security for the indebtedness secured hereby    Moreover, Beneficiary has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof    Therefore, it will be a diminution of Beneficiary's security if junior financing, except as shall be permitted by Beneficiary, or if other liens or encumbrances should attach to the Mortgaged Property

(b)    Trustor may request Beneficiary to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Trustor under the Loan

8

Documents (the "Purchaser")  Beneficiary shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same.  However, upon such request, Beneficiary may impose limiting conditions and requirements to its consent to an assumption  In connection with any such transfer or assumption, Trustor agrees to pay a fee of two percent (2%) of the amount of the indebtedness secured by this deed of trust at the time of the transfer or assumption

(c)     In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Trustor, the Beneficiary may deal with such successor or successors in interest with reference to the Note or this Deed of Trust in the same manner as with Trustor, without in any way releasing, discharging or otherwise affecting the liability of Trustor under the Note, this Deed of Trust or the other Loan Documents  No sale of Trustor's interest in the Mortgaged Property, no forbearance on the part of Beneficiary, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Beneficiary shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Trustor herein, either in whole or in part  Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Trustor's obligations under the Note, this Deed of Trust and all other Loan Documents  In the event such deed shall not contain such assumption, Beneficiary shall have all rights reserved to it hereunder in the event of a default or if Beneficiary shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless assume such obligations by acquiring the Mortgaged Property or such portion thereof subject to this Deed of Trust  Nothing contained in this section waives the restrictions against the transfer of the Mortgaged Property contained in Section 1 11(a)

1 12    Transfer of Personal Property  Trustor shall not voluntarily, involuntarily or by operation of law sell, assign, transfer, hypothecate, pledge or otherwise dispose of the Personal Property or any interest therein and shall not otherwise do or permit anything to be done or occur that may impair the Personal property as security hereunder, except that so long as this Deed of Trust is not in default, Trustor shall be permitted to sell or otherwise dispose of the Personal Property when absolutely worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property or in the conduct of the business of Trustor, upon replacing the same or substituting for the same other Personal Property at least equal in value to the initial value of that disposed of and in such a manner so that said Personal Property is sold in connection with the sale of the Property.

1 13    Title to Replacements and Substitutions  All right, title and interest of Trustor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to the Personal Property, Improvements or the Mortgaged Property which Trustor hereafter acquires, receives by release, constructs, assembles or places on the Mortgaged Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further deed of trust, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Deed of Trust as fully and completely, and with the same effect and in the same priority as the lien of this Deed of Trust

9

shall have attached to the item so replaced or substituted immediately prior to such replacement of substitution, as though now owned by Trustor and specifically described in the granting clause hereof, but at any and all times Trustor will execute and deliver to Trustee any and all such further assurances, deeds of trust, conveyances or assignments thereof as Trustee or Beneficiary may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust

1.14    Security Agreement    This Deed of Trust shall be self-operative and shall constitute a Security Agreement and a Construction Mortgage as those terms are defined in the Nevada and Texas Uniform Commercial Codes (the "Codes") with respect to all of those portions of the Mortgaged Property which constitute personal property or fixtures governed by the Codes, provided, however, Trustor hereby agrees to execute and deliver on demand and hereby irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor (such power coupled with an interest) to execute, deliver and, if appropriate, to file with agreement, financing statement or other instruments as Beneficiary may request or require in order to impose or perfect the lien or security interest hereof more specifically thereon. Notwithstanding the above, this Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the Codes. This filing is to be recorded in the real estate records in the county in which the Mortgaged Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | Trustor |
| Address of Debtor: | See Section 5.12 |
| Name of Secured Party: | Beneficiary |
| Address of Secured Party: | See Section 5.12 |

1.15    Management. The Trustor agrees that the Beneficiary shall have and reserves the right to install professional management of the Mortgaged Property upon the occurrence of an Event of Default as defined herein. Such installation shall be at the sole discretion of the Beneficiary and nothing herein shall obligate the Beneficiary to exercise its right to install professional management. The cost of such management shall be borne by Trustor and shall be treated as an Advance under Section 1.16. Nothing contained herein shall limit Beneficiary's rights in equity to obtain a receiver for the Mortgaged Property

1.16    Advances. If Trustor shall fail to perform any of the covenants herein contained or contained in any other Loan Document, the Beneficiary may, but is not obligated to, pay any and all amounts necessary to perform same or cause same to be performed on behalf of Trustor, and all sums so expended by Beneficiary for payment of any item whatsoever, including, but not by limiting the generality of the foregoing, payment of taxes, insurance premiums, lien claimants or assessments shall be secured by this Deed of Trust and each such payment shall be and all such payments shall be collectively referred to herein as an "Advance." The Trustor shall repay to Beneficiary on demand each and every Advance and the sum of each such Advance shall accrue interest at the Default Rate, as that term is defined in the Note, from the date of each

10

Advance until repaid to Beneficiary  Nothing herein contained, including the payment of such amount or amounts by Beneficiary, shall prevent any such failure to perform on the part of Trustor from constituting an Event of Default as defined herein  Any Advance shall be deemed to be made under an obligation to do so

      1 17    <u>Time</u>  The Trustor agrees that time is of the essence hereof in connection with all obligations of the Trustor herein, in the Note or any other Loan Documents

      1 18    <u>Estoppel Certificates</u>  The Trustor within ten (10) days after written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust, and stating either that no setoffs or defenses exist against the Deed of Trust debt, or, if such setoffs or defenses are alleged to exist, the nature thereof

      1 19    <u>Records</u>  The Trustor agrees to keep adequate books and records of account in accordance with generally accepted accounting principles consistently applied and will permit the Beneficiary and Beneficiary's agents, accountants and attorneys, to visit and inspect the Mortgaged Property and examine its books and records of account in respect to the Mortgaged Property, and to discuss its affairs, finances and accounts with the Trustor, at such reasonable times as Beneficiary may request upon twenty-four (24) hours telephonic notice

      1.20    <u>Assignment of Rents and Profits</u>  Trustor does hereby assign to Beneficiary all Rents and Profits as follows:

      (a)    The Rents and Profits are hereby unconditionally assigned, transferred, conveyed and set over to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note, and all other sums payable under this Deed of Trust  Prior to the happening of any Event of Default as set forth in Article 2 hereof, Trustor shall have a license to collect and receive all Rents and Profits  If an Event of Default has occurred and is continuing, Trustor's right to collect and receive Rents and Profits shall cease and Beneficiary shall have the sole right, with or without taking possession of the Property, to collect all Rents and Profits, including those past due and unpaid   Any Rents and Profits received by Trustor after an Event of Default has occurred and is continuing shall be deemed to be received by Trustor in trust as trustee for Beneficiary and for the benefit of Beneficiary  Trustor shall be required to account to Beneficiary for any rents and profits not applied in accordance with the provisions of the Loan Documents  Nothing contained in this Section 1.20(a) or elsewhere in this Deed of Trust shall be construed to make Beneficiary a "mortgagee in possession" unless and until Beneficiary actually takes possession of the Mortgaged Property either in person or through an agent or receiver

      (b)    Trustor agrees to execute such other assignments of Rents and Profits applicable to the Mortgaged Property as the Beneficiary may from time to time request while this Deed of Trust and the debt secured hereby are outstanding  Trustor shall not (i) execute (except as noted above) an assignment of any of its right, title or interest in the Rents and Profits or any portion thereof, (ii) execute any lease of any portion of the Mortgaged Property without

11

Beneficiary's prior approval; or (iii) in any other manner impair the value of the Mortgaged Property or the security of the Beneficiary for the payment of the indebtedness

(c)    Trustor covenants and agrees that it shall at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all leases of the Mortgaged Property now or hereafter existing, on the part of the lessor thereunder to be kept and performed.

(d)    Nothing herein shall obligate the Beneficiary to perform the duties of the Trustor as landlord or lessor under any such leases or tenancies

(e)    The Trustor shall furnish to the Beneficiary, within fifteen (15) days after a request by the Beneficiary to do so, a written statement, certified as true and correct by the Trustor, containing the names of all lessees, if any, or occupants of the Mortgaged Property, the terms of their respective leases or tenancies, the spaces occupied and the rentals paid

1 21    Compliance with Covenants.  Trustor warrants that it is not in violation of any covenant, condition or restriction regarding the ownership, use or occupancy of the Mortgaged Property and that the use of the Improvements, upon completion thereof, shall not constitute a violation of any such covenant, condition or restriction   If Trustor shall fail to perform any obligations set forth in such covenants, conditions or restrictions, the Beneficiary may, but is not obligated to, pay any and all amounts necessary to perform same or cause another to perform same on behalf of Trustor, and this Deed of Trust shall secure all sums that Beneficiary expends for any such payment or performance, which sums shall be an Advance under the terms of this Deed of Trust  Trustor's failure to perform its obligations under any such declaration or mutual arrangement shall constitute an Event of Default

ARTICLE 2
DEFAULT

2 1    Events of Default   The occurrence of any of the following events shall be an Event of Default: (a) default in the payment or performance of any obligations secured hereby or contained herein, subject to the cure period set forth in Section 7 1(b) of the Loan Agreement; or (b) the occurrence of any "Event of Default" pursuant to the Loan Agreement or the Note

ARTICLE 3
REMEDIES

Upon the occurrence of any Event of Default and the expiration of a 10-day written notice and cure period, Trustee and Beneficiary shall have the following rights and remedies:

3 1    Acceleration of Maturity   Beneficiary may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Trustor hereunder or under the Note, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued

12

and unpaid interest, and all other amounts to be paid under the Note, this Deed of Trust or any other Loan Document shall become and be immediately due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding

    3.2    <u>Default Interest</u>.  Irrespective of whether Beneficiary exercises any other right set forth in this Article 3, after the Maturity Date or any acceleration thereof, or upon any Event of Default, through and including the date such default is cured, the entire principal balance under the Note shall thereafter earn interest at the Default Rate, as defined in the Note.

    3.3    <u>Operation of Mortgaged Property</u>  Beneficiary in person or by agent may, but is not obligated to, and without notice or demand upon, or consent from, Trustor and without releasing Trustor from any obligation hereunder; (i) make any payment or do any act which Trustor has failed to make or do; (ii) enter upon, take possession of, manage and operate the Mortgaged Property or any part thereof; (iii) make or enforce, or if the same be subject to modification or cancellation, modify or cancel leases upon such terms or conditions as Beneficiary deems proper; (iv) obtain and evict tenants, and fix or modify rents, make repairs and alterations and do any acts which Beneficiary deems proper to protect the security hereof; and (v) with or without taking possession, in its own name or in the name of Trustor, use or otherwise collect and receive the Rents and Profits and all other benefits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection. including reasonable attorneys fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine

    3 4    <u>Judicial Remedies</u>.  Beneficiary may bring an action in any court of competent jurisdiction to foreclose this Deed of Trust or to enforce any of the covenants and agreements hereof and to take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note, this Deed of Trust or any other Loan Document, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as the Beneficiary shall elect.

    3 5    <u>Maintenance of Mortgaged Property</u>  Beneficiary may have a receiver appointed by a court of competent jurisdiction for the purpose of collecting rents and managing the Mortgaged Property, and Trustor hereby consents in advance to such appointment.  The Trustee or Beneficiary personally, or by their agents or attorneys, or by the receiver appointed by the court, may enter into and upon all or any part of the Mortgaged Property, and may exclude the Trustor, its agents and servants wholly therefrom, and having and holding the same, may use. operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers  Upon every such entry, any party occupying the Mortgaged Property in accordance with this Article 3, at the expense of the Mortgaged Property or Trustor, may from time to time maintain and restore the Mortgaged Property or any part thereof either by purchase, repair or construction, and in the course of such purchase, repair or construction may make such changes in the Improvements as it may deem desirable and may insure the same  Likewise, from time to time, at the expense of the Mortgaged Property, the Trustee or Beneficiary or any such party may make all necessary or

13

proper repairs, renewals and replacements of the Personal Property and such useful alterations, betterments and improvements thereto and thereon as to it may seem advisable  In every such case the Trustee or Beneficiary or any such party shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of the Trustor with respect thereto either in the name of the Trustor or otherwise, as it shall deem best, and shall be entitled to collect and receive the Rents and Profits of the Mortgaged Property and every part thereof and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the agents, clerks, servants and other employees by it properly engaged and employed, the Beneficiary shall apply the monies arising as aforesaid, in the order as is set forth in the Note

    3.6   <u>Rights of Secured Party</u>  Beneficiary shall have all of the remedies of a Secured Party under the Code, including without limitation, the right and power to sell, or otherwise dispose of the Personal Property or any part thereof, and for that purpose may take immediate and exclusive possession of the Personal Property, or any part thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Beneficiary's option Trustor shall assemble the Personal Property and make it available to the Beneficiary at the place and the time designated in the demand  Beneficiary shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale  Beneficiary, without removal of the Personal Property from the Mortgaged Property, may render the Personal Property inoperable and dispose of the Personal Property on the Mortgaged Property  To the extent permitted by law, Trustor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Beneficiary existing after default hereunder, and to the extent any such notice is required and cannot be waived, Trustor agrees that as it relates to this Section 3 6 only, if such notice is mailed, postage prepaid, to the Trustor at the address set forth in Section 5.12 hereof at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of said notice

    3.7   <u>Foreclosure</u>  All rights, powers and privileges granted to or conferred upon a beneficiary and trustee under a deed of trust in accordance with the laws of the State of Nevada are hereby adopted and incorporated into this Deed of Trust by this reference and in accordance with such rights, powers and privileges:

       (a)   The Trustee may, and upon the written request of Beneficiary shall, with or without entry, personally or by its agents or attorneys insofar as applicable pursuant to and in accordance with the laws of Texas:

          (i)   subject to the provisions of the Loan Agreement, cause any or all of the Mortgaged Property to be sold under the power of sale granted by this

14

Deed of Trust or any of the other Loan Documents in any manner permitted by applicable law. For any sale under the power of sale granted by this Deed of Trust, Trustee or Beneficiary must record and give all notices required by law and then, upon the expiration of such time as is required by law, may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Trustor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property (and, to the extent permitted by applicable law, may elect to deem all of the Mortgaged Property to be real property for purposes thereof), and at such time or place and upon such terms as Trustee and Beneficiary may determine and shall execute and deliver to the purchaser or purchasers thereof a deed or deeds conveying the property sold, but without any covenant or warranty, express or implied, and the recitals in the deed or deeds of any facts affecting the regularity or validity of a sale will be conclusive against all persons. In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Deed of Trust shall continue as a lien and security interest on the remaining portion of the Mortgaged Property; or

(ii)        institute proceedings for the complete or partial foreclosure of this Deed of Trust as a mortgage; and in this connection Trustor does hereby expressly waive to the extent permitted by law its right of redemption after a mortgage foreclosure sale; or

(iii)        apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Mortgaged Property and of all the earnings, revenues, rents, issues, profits and income thereof, which appointment is hereby consented to by Trustor; or

(iv)        take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Deed of Trust, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Beneficiary shall select.

(b)        The Trustee may adjourn from time to time any sale by it made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or sales and, except as otherwise provided by any applicable provision of law, the Trustee without further notice or publication, may make such sale at the time and place to which the sale shall be so adjourned;

(c)        Upon the completion of any sale or sales made by the Trustee under or by virtue of this Section, the Trustee shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold,

15

but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof to the extent permitted by law. Any such sale or sales made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against the Trustor and against any and all persons claiming or who may claim the same, or any part thereof from through or under the Trustor.

(d)     In the event of any sale made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the entire principal of and interest on the Note and all accrued interest on the Note, and all other sums required to be paid by the Trustor pursuant to the Note and this Deed of Trust shall be due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding

(e)     The purchase money proceeds or avails of any sale made under or by virtue of this Section, together with any other sums which then may be held by the Trustee or Beneficiary under this Deed of Trust whether under the provisions of this Section or otherwise, shall be applied as required by Lender or applicable law, if any

(f)     Upon any sale made under or by virtue of this Section, whether made under the power of sale herein granted or granted in accordance with the laws of the state in which the Property is located or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness of the Trustor secured by this Deed of Trust the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which the Beneficiary is authorized to deduct under this Deed of Trust. The Beneficiary upon so acquiring the Mortgaged Property, or any part thereof shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

3.8     Sales of Lots.  (Intentionally deleted)

3.9     Action by Beneficiary or Agent.  Subject to and in accordance with applicable law, Beneficiary may take any of the actions referred to in this Article, either in person or by agent, with or without bringing any action or proceeding, as may a receiver appointed by a court, and they may take any such action irrespective of whether any notice of default or election to sell has been given hereunder and without regard to the adequacy of the security for the indebtedness hereby secured.

3.10  Marshalling of Assets.  To the extent allowed by applicable law, Trustor on its own behalf and on behalf of its successors and assigns hereby expressly waives all rights to require a marshalling of assets by Trustee or Beneficiary or to require Trustee or Beneficiary to first resort to the sale of any portion of the Mortgaged Property which Trustor might have been retained

16

before foreclosing upon and selling any other portion as may be conveyed by Trustor subject to this Deed of Trust

3.11 Occupancy by Trustor  If at the time of a trustee's sale hereunder Trustor occupies the portion of the Mortgaged Property so sold or any part thereof, Trustor shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either the tenant or any such purchaser, at a reasonable rental per day based upon the value of the portion of the Mortgaged Property so occupied, such rental to be due and payable daily to the purchaser  An action of unlawful detainer shall lie if the tenant holds over after a demand in writing from the purchaser for possession of such Mortgaged Property.

3.12 Non-Waiver of Default   The entering upon and taking possession of the Mortgaged Property, the collection of any Rents or Profits or other benefits and the application thereof, as aforesaid, shall not cure or waive any default, whenever occurring, or affect any notice of default hereunder or invalidate any act done pursuant to such notice; and, notwithstanding continuance in possession of the Mortgaged Property, or any part thereof by Beneficiary, Trustee or a receiver and the collection, receipt and application of Rents and Profits or other benefits, Beneficiary shall be entitled to exercise every right provided for in this Deed of Trust or by law upon or after the occurrence of a default, including the right to exercise the power of sale.

3.13 Remedies Cumulative.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to exclude any other remedy herein or by law provided, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute   No delay or omission of Trustee or Beneficiary to exercise any right or power accruing upon any Event of Default shall impair any right or power or shall be construed to be a waiver of any Event of Default or any acquiescence therein; and every power and remedy given by this Deed of Trust to Trustee or Beneficiary may be exercised from time to time as often as Trustee or Beneficiary deem expedient   If additional security exists for the performance of the obligations secured hereby, to the extent permitted by law, the holder of the Note, at its sole option, and without limiting or affecting any of the rights or remedies hereunder, may exercise any of the rights and remedies to which it may be entitled hereunder either concurrently with whatever rights it may have in connection with such other security or in such order as it may determine.   Nothing in this Deed of Trust shall affect the obligation of Trustor to pay the principal and interest due under the Note in the manner and at the time and place specified therein.

ARTICLE 4
TRUSTEE

4 1    Acceptance of Trust, Notice of Indemnification  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, becomes a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee is a party, and Trustee shall not be obligated to perform any act required of it hereunder unless the performance

17

of such act is requested in writing in the manner required by law and Trustee is reasonably indemnified against loss, cost, liability and expense.

4.2    <u>Substitution of Trustee</u>    From time to time with or without cause for whatever reason, by a writing signed and acknowledged by Beneficiary and filed for record in the Office of the Recorder of the County in which the Mortgaged Property is situated, Beneficiary may appoint another trustee to act in the place of Trustee or any successor    Such writing shall refer to this Deed of Trust and set forth the date, book and page of its recordation    The recordation of such instrument of substitution shall discharge trustee herein named and shall appoint the new trustee as the Trustee hereunder with the same effect as if originally named herein    A writing recorded pursuant to this paragraph shall be conclusive proof of the proper substitution of such new trustee.

4.3    <u>Trustee's Powers</u>    At any time, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of the Note secured hereby, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of said Mortgaged Property, Trustee may (i) reconvey any part of said Mortgaged Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement or any agreement subordinating the lien or charge hereof.

4.4    <u>Release of Deed of Trust</u>    After all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note or notes secured hereby for cancellation and retention and payment of its fees, Beneficiary shall execute a release of lien with respect to this Deed of Trust    The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof    The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

4.5    <u>Indemnification of Trustee</u>    Trustee may rely on any document that he believes in good faith to be genuine.    All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon    Trustor shall indemnify Trustee against all liability and expenses which he may incur in the performance of his duties hereunder, except for its own negligence.

## ARTICLE 5
## MISCELLANEOUS

5.1    <u>Non-Waiver</u>    By accepting payment of any sum secured hereby after its due date or by accepting late performance of any obligation secured hereby, Beneficiary shall not waive its right against any person obligated directly or indirectly hereunder or on any indebtedness hereby secured, either to require prompt payment when due of all other sums so secured or to declare a default for failure to make payment except as to such payment that Beneficiary accepts    No exercise of any right or remedy by Trustee or Beneficiary hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law

18

No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or constitute a waiver of any default or acquiescence therein

Receipts of rents, awards, and any other monies or evidences thereof, pursuant to the provisions of this Deed of Trust and any disposition of the same by Trustee or Beneficiary shall not constitute a waiver of the power of sale or right of foreclosure by Trustee or Beneficiary in the event of a default or failure of performance by Trustor of any covenant or agreement contained herein or the Note secured hereby.

5.2    Right to Release    Without affecting the liability of any other person for the payment of any indebtedness herein mentioned (including Trustor should it convey said Mortgaged Property) and without affecting the lien or priority hereof upon any property not released, Beneficiary may, without notice, release any person so liable, extend the maturity or modify the terms of any such obligation, or grant other indulgences, release or reconvey or cause to be released or reconveyed at any time all or any part of the Mortgaged Property, take or release any other security or make compositions or other arrangements with debtors Beneficiary may also accept additional security, either concurrently herewith or hereafter, and sell same or otherwise realize thereon either before, concurrently with, or after sale hereunder

5.3    Protection of Security    Should Trustor fail to make any payment or to perform any covenant as herein provided, Beneficiary may (but without obligation so to do, without notice to or demand upon Trustor, and without releasing Trustor from any obligation hereof): (i) make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof, and Trustor hereby authorizes Beneficiary to enter upon the Mortgaged Property for such purposes; (ii) commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary; and/or (iii) pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of Beneficiary is prior or superior hereto and, in exercising any such power, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title and reasonable attorneys' fee.  Any expenditures in connection herewith shall be deemed an Advance and shall constitute part of the indebtedness secured by this Deed of Trust

5.4    Rules of Construction.    When the identity of the parties hereto or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  The headings of each article, section or paragraph are for information and convenience only and do not limit or construe the contents of any provision hereof

5.5    Severability    If any term of this Deed of Trust or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Deed of Trust shall be valid and enforceable to the fullest extent.

19

5 6    <u>Successors in Interest</u>  This Deed of Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their heirs, executors, administrators, successors and assigns  All obligations of Trustor hereunder are joint and several  The term "Beneficiary" shall mean the holder and owner, including pledges, of the Note secured hereby, whether or not named as Beneficiary herein and any owner or holder of the beneficial interest under this Deed of Trust.

5.7    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>

(a)    This Deed of Trust shall be construed according to and governed by the laws of the State of Nevada, without regard to choice of law provisions, except for the remedy of foreclosure, which shall be governed by the laws of the State of Texas.

(b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM)  BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 5.12 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER,

20

IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

5.8     Modifications.  This Deed of Trust may only be amended, modified or changed, and any waiver of any provision hereof shall only be effective, if memorialized in a writing signed by the party against whom enforcement of any such waiver, amendment, change, modification or discharge is sought

5.9     No Merger   If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Mortgaged Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger, and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates.  In addition, upon the foreclosure of the lien created by this Deed of Trust on the Mortgaged Property pursuant to the provisions hereof, any leases or subleases then existing shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect   No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall have given written notice thereof to such tenant or subtenant

5.10    Attorneys' Fees  Trustor agrees to pay the reasonable costs or expenses, including attorneys' fees, that Beneficiary reasonably incurs for any of the following relating to this Deed of Trust (or any other instrument evidencing or securing this loan): (a) the interpretation, performance or enforcement thereof; (b) the enforcement of any statute, regulation or judicial decision; (c) any collection effort; or (d) any suit or action for the interpretation, performance or enforcement thereof, whether Beneficiary commences or defends it, or, any other judicial or nonjudicial proceeding instituted by Beneficiary or any other person, to reclaim, seek relief from a judicial or statutory stay, sequester, protect, preserve or enforce Beneficiary's interest in this Deed of Trust or any other security for the Note, including but not limited to proceedings under federal bankruptcy law, in eminent domain, under the probate code, or in connection with any state or federal tax lien, regardless of whether suit or action is commenced or defended as to (a), (b), and (c)   Such fees and costs shall be added to the principal of the Note and shall bear interest at the Default Rate.   The foregoing notwithstanding, in any action commenced by Trustor or Beneficiary against the other to enforce the provisions of this Deed of Trust or any other instrument evidencing or securing this loan, the prevailing party of such action shall be entitled to recover its reasonable attorneys' fees (as set forth above) from the non-prevailing party and the non-prevailing party shall not be entitled to recover its attorneys' fees

5.11    Conflict   If the term of any other Loan Document, except the Note, shall be in conflict with this Deed of Trust, then this Deed of Trust shall govern to the extent of the conflict If the term of this Deed of Trust shall be in conflict with the Note, the Note will then govern to the extent of the conflict

21

5.12 <u>Notices</u>. All notices to be given pursuant to this Deed of Trust shall be sufficient if given by personal service, by guaranteed overnight delivery service, telecopy or telegram, or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telecopy or telegram or three (3) days after mailing certified or registered mail.

**TRUSTOR'S ADDRESS:**           Roam Development Group, L.P.
                                 808 Travis Street, Suite 2600
                                 Houston, Texas 77002
                                 Attn. Roni Amid

**BENEFICIARY'S ADDRESSES:**     USA Commercial Mortgage Company
                                 4484 South Pecos Road
                                 Las Vegas, Nevada 89121
                                 Attn. Joseph D. Milanowski

5.13 <u>Request for Notice of Default</u>. Trustor requests that a true and correct copy of any notice of default and any notice of sale be sent to Trustor at the address set forth in Section 5.12 hereof

5.14 <u>Late Charges</u>. As set forth and defined in the Note, there shall be due to Beneficiary a Late Charge of five percent (5%) of the amount of any payment which is received by Beneficiary so as to incur a Late Charge, and all such Late Charges are secured hereby

5.15 <u>Statutory Covenants</u>. Where not inconsistent with the above. the following covenants, Nos. 1; 2 (full replacement value); 3; 4 (twenty percent [20%] per annum); 5; 6; 7 (a reasonable percentage); 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust

5.16 <u>Non-Assumption</u>. Notice is hereby given that Trustor's obligations under this Deed of Trust may not be assumed except as permitted by Section 1.11 hereof. Unless otherwise provided herein, any transfer of Trustor's interest in the Mortgaged Property or any attempted assumption of Trustor's obligations under the Deed of Trust not so approved shall constitute a default hereunder and shall permit Beneficiary to accelerate the Maturity Date of the Note Reference to applicable sections of the Loan Documents must be made for the full text of such provisions

5.17 <u>Review of Covenants, Conditions and Restrictions</u> No covenant, condition or restriction or any rule or regulation or any other document or agreement, however, denominated, which shall purport to apply to the ownership, operation, maintenance or governance of the Mortgaged Property or any part thereof, nor any article of incorporation bylaw or any other document or agreement, however denominated, which shall purport to establish an organization

22

for the operation, maintenance of governance of the Mortgaged Property or any part thereof, shall be approved, executed and/or recorded without the express prior written consent of Beneficiary. The foregoing restriction shall not apply to tenant leases, employment agreements with Borrower's management personnel, agreements to pay brokers in connection with tenant leases, or operating and/or service agreements involving routine maintenance, goods or services commonly used by an owner of a shopping mall.

5.18  Loan Agreement.  Performance of Trustor's obligations under that certain Loan Agreement of even date herewith by and between Trustor and Beneficiary are secured by this Deed of Trust, and a default thereunder shall constitute an Event of Default under this Deed of Trust.

5.19  Partial Release Provisions.  Beneficiary shall release from the lien of the Deed of Trust individual condominium units (and, upon repayment in full of the Loan Amount, the entire Property) upon payment to Beneficiary of 90% of the net proceeds from each sale thereof (the "Release Price"); provided, however, that Trustor may release the first 89 units without paying to Beneficiary any Release Price.

For the purpose of this section, the term "net proceeds" means the total consideration paid for the unit less reasonable and customary closing costs and real estate brokerage commissions; provided, however, that if a real estate brokerage commission is payable to Trustor or an affiliate of Trustor, then the amount that may be deducted from the gross sale price shall be the lesser of the actual commission paid or two percent (2%) of the total consideration paid for the unit.  If a real estate commission is payable to Trustor or an affiliate of Trustor and to an independent broker, then the amount that may be deducted from the gross sale price on account of the commission paid to Trustor or its affiliate shall be the lesser of the actual commission paid or one percent (1%) of the total consideration paid for the unit.

5.20  Minimum Sale Prices.  Borrower may not, without the written consent of Lender, sell any unit for less than the prices set out below:

| UNIT TYPE | MINIMUM SALES PRICE |
|---|---|
| Champions | $93,470 |
| Augusta | $81,942 |
| Pebble Beach | $88,152 |
| St. Andrews | $115,560 |
| Doral | $125,235 |
| Bayhill | $130,755 |
| Pinehurst | $144,210 |

23

IN WITNESS WHEREOF, the undersigned have caused this instrument to be signed as of the date first above written.

TRUSTOR:  Roam Development Group, L.P.
By: Rodev, G.P., L.L.C., General Partner

By: _____
Roni Amid, Managing Member

STATE OF NEVADA          )
                         ) ss
COUNTY OF CLARK          )

On March 23, 2005, before me, ___Lynda Stewart___, a Notary Public, personally appeared Roni Amid, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary Public

> LYNDA STEWART
> Notary Public, State of Nevada
> Appointment No. 94-5533-1
> My Appl. Expires Feb. 4, 20__

24

EXHIBIT "A"

<u>LENDER</u>

| | Names | Amount |
|---|---|---|
| 1 | Wara L.P , a Pennsylvania limited partnership | $200,000 |
| 2 | Mark S. Acri & Sherri L. Acri, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 3 | Herman M. Adams, Brian M. Adams & Anthony G. Adams, as joint tenants | $195,000 |
| 4 | First Savings Bank Custodian for Kenneth Addes IRA | $100,000 |
| 5 | George Adornato & Arlene Adornato, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 6 | Drs. Stanley Alexander & Florence Alexander, husband & wife, as joint tenants with right of survivorship | $92,000 |
| 7. | Arnold Alves & Agnes Alves Trustees of the Alves Family Trust dated 10/27/89 | $100,000 |
| 8. | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $100,000 |
| 9. | Rita P. Anderson Trustee For the Benefit of Rita P. Anderson Trust | $100,000 |
| 10. | Joseph J. Argier & Janice G. Argier, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 11. | Nancy L. Argier, an unmarried woman | $50,000 |
| 12. | Jeffrey E. Barber & Suzanne M. Barber Trustees of the Barber Family Trust dated 4/24/98 | $75,000 |
| 13. | Clark Rex Baron & Joyce Payne Baron Trustees of the Baron Family Trust dated 2/9/05 | $60,000 |
| 14. | Gary R. Barton & Mavis J. Barton, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 15. | Bay Area Capital, LLC, an Oregon limited liability company | $50,000 |
| 16. | Joseph C. Bellan & Verna J. Bellan Trustees of the Joseph C. Bellan & Verna J. Bellan Revocable Living Trust dated 2/4/00 | $50,000 |
| 17. | Stanley Belnap & Gloria Belnap, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 18. | David P. Betteridge, a single man | $100,000 |
| 19. | Jamie R. Bianchini, an unmarried man | $50,000 |
| 20 | Gerald L. Bittner, Sr. DDS Inc. Profit Sharing Plan & Trust dated 1/15/91 | $50,000 |
| 21 | James R. Bonfiglio & Donna M. Bonfiglio Trustees of the Bonfiglio Family Limited Partnership | $100,000 |
| 22 | Kathleen K. Borkoski Trustee of the Austin John Borkoski Trust dated 12/10/92 | $50,000 |
| 23 | Kathleen K. Borkoski Trustee of the Kali Gene Borkoski Trust dated 12/21/89 | $50,000 |
| 24 | Glen J. Brecht & Janine K. Brecht Trustees of the Glen J. Brecht Trust dated 1/24/86 | $75,000 |

25

| 25 | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $50,000 |
|----|----|----|
| 26 | Michael R. Brines & Cindy G. Brines Trustees of the Michael R. Brines & Cindy G. Brines Revocable Family Trust U/A dated 11/5/94 | $50,000 |
| 27 | Charles R. Brooks & Wendy S. Brooks, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 28 | Robert E. Brooks, a married man dealing with his sole & separate property & Candith Brooks, an unmarried woman, as joint tenants with the right of survivorship | $50,000 |
| 29 | Jaeeck M. Brown, an unmarried man transfer on death to Jagoda Brown | $100,000 |
| 30 | Larry M. Brown & Marie S. Brown, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 31 | Martin E. Brown Trustee of the Martin E. Brown Family Survivor & Exempt Trusts dated 3/21/95 | $200,000 |
| 32 | Glenn Bullock & Sherry Bullock Trustees of the Bullock Family Trust dated 8/7/97 | $90,000 |
| 33 | Dr. Joselito Tan Burgos, a single man | $50,000 |
| 34 | June Y. Burlingame & David B. Burlingame, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 35 | Noel L. Campbell, an unmarried man | $50,000 |
| 36 | Louis Cangiano, Jr. & Nancy E. Cangiano Trustees of The Cangiano Trust dated 3/30/90 | $50,000 |
| 37 | Doyne J. Carson & Elsie L. Carson Trustees of the Carson Family Trust dated 11/19/04 | $50,000 |
| 38. | Unique Concept Design, Inc. | $100,000 |
| 39 | Robert T Chylak & Barbara M Chylak Trustees of the Robert T Chylak & Barbara M Chylak Family Trust dated 10/30/90 | $50,000 |
| 40 | Stella P. Ciadella Trustee of the Ciadella Living Trust dated 2/8/99 | $150,000 |
| 41. | James D. Climo & Dolores J. Climo Trustees of the Climo Family Trust dated 2/6/92 | $100,000 |
| 42 | Norris R. Coit Trustee of the Norris R. Coit Family Trust dated 5/19/04 | $50,000 |
| 43. | June Cook Trustee of the Alvin Broido Marital Trust U/A dated 4/24/72 | $50,000 |
| 44 | Jacqueline Corkill, an unmarried woman & David Corkill, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 45. | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | $50,000 |
| 46. | Troy Allen Cox, a widower | $108,000 |
| 47 | Mary H. Cross Trustee of The Mary H. Cross Trust dated 12/29/88 | $50,000 |
| 48 | Loyal Crownover & Lora Crownover Trustees of the Lora & Loyal Crownover Family Trust | $200,000 |
| 49. | Malden Ventures Ltd | $100,000 |
| 50 | S & P Davis Limited Partnership, a Texas Partnership | $100,000 |
| 51. | Rena F. De Hart Trustee of the A. Robert De Hart Trust C dated 1/21/93 | $65,000 |
| 52 | Ross Deller, Sr., an unmarried man | $120,000 |
| 53 | Gary Deppe, A single man | $100,000 |
| 54 | James D. Dery & Ann R. Dery, husband & wife | $50,000 |

| | | |
|---|---|---|
| 55 | Pat A Dolce & Lora Dean Dolce, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 56. | Joseph Donnolo & Loretta Donnolo Trustees of the Donnolo Family Trust dated 8/24/88 | $1,200,000 |
| 57. | Mark Daniel Donnolo, an unmarried man | $600,000 |
| 58. | Daniel Drubin & Laura Drubin, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 59 | First Savings Bank Custodian For Daniel Drubin IRA | $50,000 |
| 60 | Ford S  Dunton, a married man dealing with his sole & separate property | $50,000 |
| 61. | Wayne A  Dutt & Cynthia Deann Dutt Trustees of the Wayne A. Dutt Trust | $200,000 |
| 62 | Edward D  Earl, an unmarried man | $75,000 |
| 63 | Schwartz & Earp Joint Venture | $50,000 |
| 64 | Thomas C. Eastland & Christiana Eastland Trustees of the Eastland Joint Living Trust dated 10/8/01 | $50,000 |
| 65. | Kenneth S. Eckstein & Judy A. Eckstein, husband & wife, as joint tenants with right of survivorship | $125,000 |
| 66 | David Edwards & Marcy Edwards Trustees of the David & Marcy Edwards Family Trust | $50,000 |
| 67 | Ruth A. Errington Trustee of the Ruth A. Errington Living Trust dated 11/22/04 | $50,000 |
| 68 | Daniel L  Everett & Sandra M  Everett, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 69 | Edward E  Eyre, Jr  & Carol C  Eyre Co-Trustees of the Edward E  Eyre, Jr. 1998 Trust dated 12/31/98 | $100,000 |
| 70 | Marguerite Falkenborg Trustee of the Marguerite Falkenborg 2000 Trust dated 6/20/00 | $100,000 |
| 71 | Joseph A  Farrah & Emily T  Farrah Trustees of the Farrah Family Trust dated 9/18/03 | $50,000 |
| 72 | James Feeney Trustee of the E & M Hardware Profit Sharing Plan | $100,000 |
| 73 | Benjamin J Feldman & Evelyn Feldman Trustees of The Feldman Family Trust dated 01/01/93 | $50,000 |
| 74. | Lewis Fine & Arlene J  Fine, husband & wife | $50,000 |
| 75 | Ronald G  Finkel & Karen B  Finkel, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76 | Carol A  Fischer Trustee of the Fischer Trust dated 1/6/92 | $50,000 |
| 77. | David E  Fischer | $125,000 |
| 78. | Sharon R  Fitzgerald, a married woman dealing with her sole & separate property | $50,000 |
| 79. | Daniel K  Fix & Barbara J  Fix Trustees of the Daniel K. Fix & Barbara J. Fix Family Trust | $50,000 |
| 80. | John R  Fleiner & Karen M  Fleiner, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 81. | Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $80,000 |

| 82 | Betty A. Fraley, an unmarried woman | $50,000 |
| 83 | Fraley Limited Partnership, a Nevada limited partnership | $200,000 |
| 84 | Michael S. Freedus & Helen C. Freedus, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 85. | Glenn W. Gaboury & Sharon M. Gaboury, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 86. | Barry Gambarana, an unmarried man | $50,000 |
| 87 | Mary F. Gambosh, a married woman dealing with her sole and separate property | $50,000 |
| 88. | Leonard Georges & Jean Georges Co-Trustees of the Georges 1987 Trust dated 12/23/87 | $200,000 |
| 89. | Stanley C. Germain & Dorothy Germain, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 90 | Roger L. Ghormley & Frances L. Ghormley, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 91 | Nancy Golden, a married woman dealing with her sole & separate property | $50,000 |
| 92. | Barry J. Goldstein & Patricia B. Goldstein, as joint tenants with right of survivorship | $75,000 |
| 93 | Nicole Dana Gottlieb, a married woman dealing with her sole & separate property | $75,000 |
| 94. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $100,000 |
| 95 | First Savings Bank Custodian for Michael H. Greeley IRA | $50,000 |
| 96 | Clarence J. Greenwald & Gertrude R. Greenwald Trustees of the Greenwald Living Trust dated 5/8/90 | $50,000 |
| 97 | Clifford Hagberg & Claire F. Hagberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 98. | Bryan Hall, a single man | $50,000 |
| 99 | Daniel R. Halseth & Sandra K Halseth Trustees of the Halseth Family Trust restated 4/21/00 | $100,000 |
| 100 | S. A. Hanes Trustee of the S.A. Hanes Profit Sharing Plan | $50,000 |
| 101. | MLH Family Investment Limited, a Texas company | $250,000 |
| 102 | Paul Hargis & Susan Gail Hargis, husband & wife, as joint tenants with right of survivorship | $150,000 |
| 103 | Charles Harper & Evangeline Harper, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 104 | Kay J. Hart, an unmarried woman | $50,000 |
| 105 | Duane R. Haugarth & Nancy K. Haugarth, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 106 | Roger N. Havekost, a married man dealing with his sole & separate property | $50,000 |
| 107 | Raymond G. Hawkins, an unmarried man | $250,000 |
| 108 | Michael Hedlund & Carol Hedlund, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 109 | Pahrump Valley LLC | $1,000,000 |

| | | |
|---|---|---|
| 110. | Patrick Henry & Cynthia B. Henry, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 111. | Kay M. Cantrell, an unmarried woman & Donald L. Hess, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 112. | India C. High, a single woman | $50,000 |
| 113 | Marilyn Hilborn Trustee of the Marilyn Hilborn Trust dated 11/18/93 | $50,000 |
| 114 | Gary L. Hilgenberg & Judith W. Hilgenberg, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 115 | William J. Hinson, Jr., an unmarried man | $50,000 |
| 116 | Farrah M. Hobbs Trustee of the Farrah M. Hobbs Revocable Trust dated 3/12/04 | $50,000 |
| 117 | Ralph C. Holder & Naomi S. Holder Trustees of the Holder Revocable Trust dated 10/21/91 | $60,000 |
| 118. | Marjorie Anne Holler, an unmarried woman & Debra Underwood, a married woman with her sole & separate property | $60,000 |
| 119 | Delwin C. Holt, an unmarried man | $50,000 |
| 120 | Homfeld II, LLC, a Florida limited liability company | $100,000 |
| 121 | Jan Houston Properties Inc., a Nevada corporation | $50,000 |
| 122 | Francis Howard Trustee of the Jaime Kefalas Trust | $50,000 |
| 123 | George W. Hubbard & Carol N. Hubbard Trustees of the Hubbard Trust dated 7/29/98 | $50,000 |
| 124 | Robert E. Hughes, an unmarried man | $50,000 |
| 125 | Mary Jean Ignacio Trustee of the MJI Trust | $50,000 |
| 126. | Robert W. Inch & Jennie R. Inch Trustees of the Inch Family Trust dtd 04/19/95 | $50,000 |
| 127 | Richard L. Jagodzinski Trustee of the Richard L. Jagodzinski Trust dated 4/8/97 | $50,000 |
| 128 | First Savings Bank Custodian for Mary Jellison IRA | $60,000 |
| 129. | Charles A. Jensen & Shirley Cupp-Doe Co-Trustees of the Ronald G Doe G.S.T dated 1/6/95 | $125,000 |
| 130 | Charles A. Jensen & Frances Jensen, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 131 | Jon Paul Jensen & Tamara Lee Jensen, husband & wife, as joint tenants with right of survivorship | $85,000 |
| 132 | Ronald A. Johnson & Janice Burgarello Trustees of the Jeffrey S. Johnson Trust dated 1/10/93 | $50,000 |
| 133 | Ronald Johnson Trustee of the C I B B, Inc Pension Plan | $50,000 |
| 134 | Delbert T. Johnston, Jr. & Rebecca J. Johnston Trustees of the Johnston Estate Revocable Trust dated 5/17/94 | $50,000 |
| 135. | Milton P Kaplan, MD Trustee of the Milton P Kaplan Profit Sharing Plan dated 10/1/77 | $50,000 |
| 136. | Thomas J Kapp & Cynthia S Roher Trustees of T & C Kapp Family Trust | $200,000 |
| 137 | Clas G Karlberg & Ulla G Karlberg, husband & wife, as joint tenants with right of survivorship | $50,000 |

29

| | | |
|---|---|---|
| 138. | Stewart Karlinsky & Hilary Karlinsky, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 139 | F R. Inc  dba Bombard Electric, a Nevada corporation | $325,000 |
| 140. | Kevin Kehl, a married man dealing with his sole & separate property | $150,000 |
| 141 | Melvin W  Kerner Trustee of the Kerner Revocable Trust B dated 3/16/81 | $50,000 |
| 142 | Mildred P. Kesler Trustee of the Lindsey H  Kesler Family Revocable Trust dated 10/15/80 | $50,000 |
| 143 | Frederick W  Kewell Trustee of the Barbara J  Kewell Trust dated 7/18/89 | $50,000 |
| 144 | Linda Kiel, a single woman | $85,000 |
| 145 | Ronald D  Kiel, Trustee of the Ronald D  Kiel Trust dated 6/2/93 | $50,000 |
| 146 | Davis Kindred & Kathleen Kindred Trustees of the Kindred Family Trust dated 9/19/96 | $100,000 |
| 147. | G. R.  & F. A. Kindred Trustees of the Kindred Family Trust dtd 3/17/97 | $100,000 |
| 148. | Kenneth Kistinger & Tina Kistinger, husband & wife, as joint tenants with right of survivorship | $175,000 |
| 149 | Freedom Properties, Inc | $50,000 |
| 150. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $75,000 |
| 151. | Carmen Kozlowski Trustee of the Carmen Kozlowski Trust dated 5/12/94 | $50,000 |
| 152 | Donald H  Kwiatkowski & Sandra L  Kwiatkowski, husband & wife, as joint tenants with right of survivorship | $55,000 |
| 153 | Gerard Labossiere & Lucille Labossiere Trustees of the Labossiere Family Trust dated 3/20/87 | $60,000 |
| 154. | Milton W  Laird & Beverly J  Laird, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 155. | Robert M  Lampert Trustee of the Pulmonary Associates Profit Sharing Plan #002 for the Benefit of Robert M. Lampert dated 01/01/03 | $50,000 |
| 156 | John D  Lane & Laura Jane Lane Trustees of the John D  Lane & Laura Jane Lane Revocable Trust dated 3/7/03 | $100,000 |
| 157 | Raymond Nunez & Sandra L  Lawson Trustees of the The Raymond & Sandra Nunez Family Trust | $100,000 |
| 158. | First Regional Bank for the Benefit of Irwin Levine IRA C/O Pollycomp | $100,000 |
| 159. | William Lukasavage & Joanne Lukasavage, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 160. | Church of The Movement of Spiritual Inner Awareness | $100,000 |
| 161 | B & W Precast Construction, Inc , a California corporation | $200,000 |
| 162 | Thomas D. Lynch Trustee of The Thomas D  Lynch 1995 Revocable Living Trust | $200,000 |
| 163. | Philip Lyons & Dora Lyons Trustees of the Philip & Dora Lyons Trust UA 8/9/99 | $50,000 |
| 164. | Tony T  Macey, an unmarried man | $50,000 |
| 165 | John M. Marston & Linda S. Marston, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 166 | Norman Martineau & Kathryn J  Martineau, husband & wife, as joint tenants with right of survivorship | $100,000 |

30

| 167. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 168. | Paul M. McAffee, an unmarried man | $50,000 |
| 169. | Barbara McClaflin Trustee of the Revocable Living Trust Agreement of Barbara Fay McClaflin | $50,000 |
| 170. | Martin W. McColly & Carmen Garcia McColly Trustees of the Martin W. McColly & Carmen Garcia McColly Revocable Trust Agreement dated 5/27/03 | $75,000 |
| 171. | Donald N. McCord, a single man | $50,000 |
| 172. | Chester R. McDowell, a single man. | $100,000 |
| 173. | Premier Trust, Inc. Custodian for Richard McKnight, IRA | $100,000 |
| 174. | Ronnie McLemore & Peggy McLemore, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 175. | Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000 |
| 176. | William G. McMurtrey & Janet L. McMurtrey, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 177. | Harvey J. McShaffrey & Christina F. McShaffrey Trustees of the McShaffrey Living Trust dated 3/27/81 | $50,000 |
| 178. | D. Nathan Meehan, a married man dealing with his sole & separate property | $50,000 |
| 179. | Robert E. Meldrum, a married man dealing with his sole & separate property | $50,000 |
| 180. | Teri L. Melvin, a single woman | $100,000 |
| 181. | Gary A. Michelsen, an unmarried man | $75,000 |
| 182. | Harold L. Miller Trustee of the Art-Kay Family Trust | $50,000 |
| 183. | George Minar & Virginia Minar Trustees for the benefit of The Virginia & George Minar Living Trust | $50,000 |
| 184. | Equity Trust Company Custodian FBO Gary Moberly beneficiary IRA of Charles Moberly Deceased | $71,500 |
| 185. | Matthew Molitch Trustee of the Molitch 1997 Trust | $200,000 |
| 186. | Monighetti, Inc., a Nevada corporation | $50,000 |
| 187. | William Moore & Judy Moore Trustees of the Moore Family Trust dated 9/5/96 | $100,000 |
| 188. | Walter Musso & Barbara Musso Trustees of the Musso Living Trust dated 11/30/92 | $50,000 |
| 189. | NBNA Unique Properties, LLC, an Washington State limited liability company | $150,000 |
| 190. | Erven J. Nelson & Frankie J. Nelson Trustees of the Erven J. Nelson & Frankie J. Nelson Trust | $100,000 |
| 191. | Leonard Jay Nevins & Ruth Nevins Trustees of the Nevins Family Trust dated 6/9/00 | $50,000 |
| 192. | Dell R. Nielson & Penny Nielson Trustees of the Nielson Family Trust dated 3/9/78 | $50,000 |
| 193. | Philip A. Palmintere & Nanci S. Palmintere Trustees of the Palmintere Revocable Trust dated 6/19/98 | $50,000 |

31

| | | |
|---|---|---|
| 194 | Jay A. Pandaleon & Leigh B. Pandaleon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 195 | Cynthia Ann Pardee Trustee of the Cynthia Ann Pardee Trust dtd 6/20/03 | $50,000 |
| 196 | Mojave Canyon, Inc., a Nevada Corporation | $100,000 |
| 197 | Shimon Peress & Hannah Peress Trustees of the Shimon Peress & Hannah K. Peress Trust dated 4/17/01 | $50,000 |
| 198 | Ronald K. Peters Trustee of the Peters Family Trust dated 7/22/00 | $50,000 |
| 199 | Andrew Peterson & Sharon Peterson Trustees of the Andrew R. Peterson & Sharon Peterson 1991 Living Trust dated 11/22/91 | $50,000 |
| 200 | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $200,000 |
| 201 | Hans J. Prakelt, an unmarried man | $100,000 |
| 202 | Michael L. Price & Susan M. Price, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 203 | Dennis Raggi, a married man dealing with his sole & separate property | $200,000 |
| 204 | Maria Adelaide Rayment transfer on death to Paul Rayment | $50,000 |
| 205 | Richard Retin, a married man dealing with his sole and separate property | $100,000 |
| 206 | Jean G. Richards Trustee of the Jean G. Richards Trust dated 9/30/99 | $50,000 |
| 207 | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $125,000 |
| 208 | Alan Robinson & Gail Robinson, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 209 | Darrell Rogers & Patricia Rogers Trustees of the Rogers Revocable Living Trust dated 04/10/00 | $50,000 |
| 210 | Saul Roisentul & Ilene Roisentul Trustees of the Roisentul Family Trust | $50,000 |
| 211 | Grable B. Ronning, an unmarried woman | $100,000 |
| 212 | The Wild Water Limited Partnership, a Nevada limited partnership | $50,000 |
| 213 | Thalia Nicholas Routsis Trustee of the Thalia Routsis Family Trust dated 7/24/90 | $50,000 |
| 214 | Burton M. Sack, a married man dealing with his sole & separate property | $200,000 |
| 215 | Taylor Samuels Trustee of the Samuels 1999 Trust | $50,000 |
| 216 | Randy M. Sanchez & Sharon Sanchez Trustees of the Sanchez Living Trust dated 10/13/03 | $60,000 |
| 217 | Mark Scheiner Trustee of the Mark Scheiner Living Trust | $100,000 |
| 218 | Robert A. Schell & Ruth M. Schell Trustees of the Schell Family Trust dated 8/21/92 | $50,000 |
| 219 | Irwin Schneider & Ursula Schneider, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 220 | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 221 | Marion C. Sharp Trustee of the Marion C. Sharp Trust | $75,000 |
| 222 | Donald E. Shoup & Sharon K. Shoup, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 223 | Michael R. Shuler Trustee of the Shuler Revocable Trust | $70,000 |

32

| | | |
|---|---|---:|
| 224 | First Savings Bank Custodian for Robert L. Shurley IRA | $75,000 |
| 225 | Carey B. Sigmen & Lisa K. Sigmen Trustees of The Carey B. Sigmen & Lisa K. Sigmen Trust dated 3/3/97 | $100,000 |
| 226 | Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 227 | Alan Simon & Carol Simon Trustees of the Simon Family Trust 2000 | $50,000 |
| 228 | Leon E. Singer & Suzy Singer Trustees of the Leon E. Singer & Suzy Singer Revocable Trust dated 6/30/99 | $50,000 |
| 229 | Dennis Sipiorski & Donna Sipiorski, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 230 | Herbert Slovis, a single man & Julie B. Slovis, a single woman as joint tenants with right of survivorship | $100,000 |
| 231 | Bradford H. Smith & Maggie Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 232 | Bruce Sonnenberg & Rosemary Sonnenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 233 | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $50,000 |
| 234 | Clifton H. Spindle & Verna R. Spindle, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 235 | Joseph Sterling & Theresa Sterling Trustees of the Sterling Family Trust dated 6/14/02 | $50,000 |
| 236. | Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpson Family Trust | $50,000 |
| 237. | Tony Suarez, an unmarried man | $50,000 |
| 238. | Hans - Ueli Surber, a married man dealing with his sole and separate property | $65,000 |
| 239 | Leland K. Swanson Trustee of the Alvin M. Swanson & Grace E. Swanson Living Trust dated 6/26/01 | $100,000 |
| 240. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 241. | Wilma Jean Thompson, an unmarried woman | $50,000 |
| 242 | Raymond Troll Trustee of the Raymond Troll Trust | $1,150,000 |
| 243 | Rolf Tschudi and Louise Tschudi, Trustees of the Rolf Tschudi and Louise Tschudi 1989 Revocable Trust dated 8/22/89 | $150,000 |
| 244 | Thomas Turner & Judy K. Turner Trustees of the T J. Trust dated 7/24/97 | $50,000 |
| 245 | David P. Ulrich, an unmarried man | $50,000 |
| 246 | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $50,000 |
| 247 | USA Capital First Trust Deed Fund | $578,500 |
| 248. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $150,000 |
| 249. | First Savings Bank Custodian For Melissa A. Virts IRA | $50,000 |
| 250. | Barbara J. Vivero Trustee of the Barbara J. Vivero Revocable Trust | $50,000 |
| 251. | Marietta Voglis, a married woman dealing with her sole & separate property | $50,000 |
| 252 | Madeline P. Von Tagen Trustee of the Von Tagen Trust dated 5/2/96 | $100,000 |

| | | |
|---|---|---|
| 253. | Norma Wagman Trustee of the Wagman Family Trust dated 8/13/93 | $50,000 |
| 254. | Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04 | $150,000 |
| 255. | Diana F. Weiland Trustee for the benefit of Gerald R. Weiland & Dinna F. Weiland Trust | $100,000 |
| 256. | Dick Wiechers Trustee of the Wiechers Family Trust | $100,000 |
| 257. | David Kennedy Wingo, an unmarried man transferable on death to Kinsey Jones Wingo | $50,000 |
| 258. | Rudolf Winkler & Carmel Winkler Trustees for the benefit of Winkler Family Trust dated 3/13/86 | $100,000 |
| 259. | Jerry Woldorsky, a married man dealing with his sole & separate property | $50,000 |
| 260. | Wendy E. Wolkenstein Trustee of the Wendy E. Wolkenstein Trust | $60,000 |
| 261. | Richard D. Wood Trustee of the Wood Living Trust dated 10/1/99 | $175,000 |
| 262. | Michael Woolard, Vice President of Spinal Logic Systems, Inc., a Nevada corporation | $60,000 |
| 263. | First Savings Bank Custodian For Kenneth H. Wyatt IRA | $50,000 |
| 264. | First Savings Bank Custodian For Phyllis P. Wyatt IRA | $50,000 |
| 265. | Dennis G. Yoder & Janice L. Yoder Trustees of the Yoder Living Trust | $100,000 |
| 266. | Zawacki, a California LLC | $290,000 |
| 267. | Stanley Ziskin & Mary C. Ziskin, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 268. | Raymond J. Zurfluh, Jr. & Shirley J. Zurfluh, husband & wife, as joint tenants with right of survivorship | $60,000 |
| | TOTAL | $25,700,000 |

34

EXHIBIT "B"

DESCRIPTION OF PROPERTY

Being a 22.158 acre tract of land situated in the Michael Muldoon Two League Grant, Abstract No 18, Galveston County, Texas, and being part of Clear Lake Apartments, a 25.283 acre subdivision of record in Volume 18, pages 836-837 of the Galveston County Map Records, said 22.158 acre tract being more particularly described by metes and bounds as follows:

Bearing orientation is based on the record call of N 00° 35' 57" W along the easterly line of reserve "C" South Shore Harbour Section 13 as recorded in Volume 18, page 337 of the Galveston County Map Records and found monumented on the ground as noted below:

COMMENCING at a 5/8-inch iron rod with plastic cap stamped "Clark Survey" found for the northeast corner of Reserve "C" South Shore Harbour Section 13 as recorded in Volume 18, page 337 of the Galveston County Map Records (G.C.M.R.), and being the northwest corner of Unrestricted Reserve "A" of said Clear Lake Apartments, being in the southerly line of Marina Bay Drive (also known as F.M. 2094) 114 foot wide right-of-way;

THENCE, with said southerly right-of-way line in a northeasterly direction 325.11 feet along the arc of a curve to the right having a radius of 2,026.57 feet, a central angle of 09° 11' 30" and whose chord bears N 80° 19' 49" E, a distance of 324.76 feet to a 5/8 inch iron rod with plastic cap stamped "Brown & Gay" found for the POINT OF BEGINNING of the herein described 22 158 acre tract,

THENCE, continuing along the line common to said southerly right-of-way line and said Clear Lake Apartments subdivision following two (2) courses:

> In a northeasterly direction 344.28 feet along the arc of said curve to the right having a radius of 2026.57 feet, a central angle of 90° 44' 01" and whose chord bears N 89° 47' 34" E, a distance of 343.87 feet to the TxDOT monument found for the point of tangency;

> S 85° 20' 26" E, at 170.84 feet passing though a TxDOT monument (57.00-foot offset right of centerline engineers station 180+00), at 270.19 feet passing through a TxDOT monument on said common line and continuing for a total distance of 804.07 feet to a 5/8 inch iron rod found for the northeast corner of herein described 22.158 acre tract;

THENCE leaving said southerly right-of-way line and with the common line to said Clear Lake Apartments subdivision and the remainder of a called 1,105.863 acre track described as tract "C" in Special Warranty Deed to South Shore Harbour Development, Limited and recorded under Galveston County Clerk's File No. 8534585 the following four (4) courses:

> S 04° 40' 02" W, a distance of 160.18 feet to a 5/8 inch iron rod found for an angle point;

35

S 49° 54' 38" W, a distance of 708.68 feet to a 5/8 inch iron rod found for an angle point;

N 66° 00' 06" W, a distance of 203.24 feet to a 5/8 inch iron rod found for an interior ell corner of herein described tract;

S 43° 35' 35" W, a distance of 799.95 feet to a 5/8 inch iron rod with cap stamped "BROWN & GAY" found in the south right-of-way line of Courageous Drive (70' wide) per plat of South Shore Harbour Business Park, Section One recorded in Volume 18, Page 276 G.C.M.R., from which a 5/8 inch iron rod, found for the southeast corner of said South Shore Harbour Business Park, Section One, bears S 43° 35' 35" W, 70.04 feet;

THENCE, in a northwesterly direction, 203.80 feet along the southwesterly line of said Clear Lake Apartments and the northwesterly line of a 0.218 acre tract dedicated to the public for right-of-way purposes (Courageous Drive cul-de-sac) and with the arc of a curve to the left having a radius of 50.00 feet, a central angle of 233° 32' 16" and a chord which bears N 73° 10' 34" W, 89.23 feet to a 5/8 inch iron rod with cap stamped "BROWN & GAY" found at the point of reverse curvature;

THENCE in a southwesterly direction, 23.20 feet along said common line with the arc of a curve to the right having a radius of 25.00 feet, a central angle of 53° 10' 41" and a chord which bears S 16° 38' 38" W, 22.38 feet to a 5/8 inch rod with cap stamped "BROWN & GAY" found in the north right-of-way line of said Courageous Drive;

THENCE, N 25° 42' 07" W, a distance of 316.49 feet continuing along said common line to a 5/8 inch iron rod found for an angle point;

THENCE, N 30° 22' 22" W, at 170.00 feet passing through the easterly corner common to said South Shore Harbour Business Park and Reserve "D" of said South Shore Harbour, Section 13 and continuing for a total distance of 444.27 feet to a 5/8 inch iron rod with plastic cap stamped "Clark Survey" found for the corner common to said Reserve "D" and said Reserve "C"

THENCE with the line common to said Reserve "C" South Shore Harbour, Section 13 and said Clear Lake Apartments the following three (3) courses:

N 89° 24' 03" E, a distance of 134.99 feet to a 5/8 inch iron rod with plastic cap stamped "Clark Survey" found for corner;

N 00° 35' 57" W, a distance of 75.00 feet to a 5/8 inch iron rod with plastic cap stamped "Clark Survey" found for corner;

N 89° 24' 03" E, a distance of 150.50 feet to a 5/8 inch iron rod with plastic cap stamped "Clark Survey" found for the southeast corner of said Reserve "C";

36

THENCE leaving the easterly line of said Reserve "C" South Shore Harbour, Section 13 and with the southerly and easterly lines of Unrestricted Reserve "A", Clear Lake Apartments the following four (4) courses:

S 00° 35' 57" E, a distance of 42.92 feet to a 5/8 inch iron rod with plastic cap stamped "Brown & Gay" found for corner;

N 89° 24' 03" E, a distance of 144.82 feet to a 5/8 inch iron rod with plastic cap stamped "Brown & Gay" found for an angle point;

N 43° 35' 35" E, a distance of 252.31 feet to a 5/8 inch iron rod with plastic cap stamped "Brown & Gay" found for corner;

N 00° 35' 57" W, a distance of 284.63 feet to the POINT OF BEGINNING and containing 22.158 acres of land

37