1  Gregory J. Walch
   Nevada Bar Number 4780
2  Email: GWalch@Nevadafirm.com
   400 South Fourth Street, Third Floor
3  Las Vegas, Nevada 89101
   Telephone:   702/791-0308
4  Facsimile:   702/791-1912

5  *Attorney for Gregory J. Walch and Shauna M. Walch,*
   *Trustees of the Gregory J. and Shauna M. Walch*
6  *Family Trust*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA Commercial Mortgage Company<br>06-10725 – Lead Case<br><br>USA Capital Realty Advisors, LLC<br>06-10726<br><br>USA Capital Diversified Trust Deed Fund, LLC<br>06-10727<br><br>USA Capital First Trust Deed Fund, LLC<br>06-10728<br><br>USA Securities, LLC<br>06-10729<br><br>Debtors. | Jointly Administered<br>Chapter 11 Cases<br>Judge Linda B. Riegle Presiding<br><br>**PARTIAL OPPOSITION TO DEBTOR'S MOTION AUTHORIZING DEBTOR, PURSUANT TO 11 U.S.C. §§ 105 AND 363(B)(1), TO ACCEPT LOAN PAYMENT PROCEEDS AND PROVIDE PARTIAL RELEASES OR FULL RELEASES IN CONNECTION WITH THE SALE OF PROPERTIES SECURING LOANS ORIGINATED BY THE DEBTOR TO THIRD PARTY BORROWERS, AND TO RATIFY PARTIAL RELEASES PREVIOUSLY PROVIDED BY THE DEBTOR**<br><br>Date of Hearing:   May 3, 2006<br>Time of Hearing:   9:30 a.m.<br><br>Affecting:<br>[] All Cases<br>Or only:<br>[X] USA Commercial Mortgage Company<br>[] USA Capital Realty Advisors, LLC<br>[] USA Capital Diversified Trust Deed Fund, LLC<br>[] USA Capital First Trust Deed Fund, LLC |

Gregory J. Walch and Shauna M. Walch, Trustees of the Gregory J. and Shauna M. Walch Family Trust ("the Trust"), by and through their undersigned attorney, hereby oppose DEBTOR'S MOTION AUTHORIZING DEBTOR, PURSUANT TO 11 U.S.C. §§ 105 AND 363(B)(1), TO ACCEPT LOAN PAYMENT PROCEEDS AND PROVIDE PARTIAL

01969-00/81351.doc

RELEASES OR FULL RELEASES IN CONNECTION WITH THE SALE OF PROPERTIES SECURING LOANS ORIGINATED BY THE DEBTOR TO THIRD PARTY BORROWERS, AND TO RATIFY PARTIAL RELEASES PREVIOUSLY PROVIDED BY THE DEBTOR (the "Security Release Request") because the Security Release Request: (1) violates the agreements Direct Lenders had with USA Commercial Mortgage Company ("UCM") inasmuch as Debtor has refused to immediately distribute such proceeds to the Direct Lenders entitled to same or indeed even to earmark such funds for distribution to the correct Direct Lenders once Debtor's accounting is done in June; and (2) -- perhaps more importantly -- invites Direct Lenders to revoke the powers of attorney granted to UCM to protect their security in deeds of trust and principal payments to which they are entitled. In short, the Security Release Request is an invitation to the kind of chaos that will make it difficult for Mr. Allison's group to conduct business, do its promised reconciliations, and collect loan proceeds. Under the circumstances, the Security Release Request should only be granted with the assurance to Direct Lenders that interest and principal proceeds will be distributed to Direct Lenders in accordance with their loan servicing agreements and powers of attorney.

## Background[1]

The Trust is a direct lender in four loans (the "Loans") arranged by USA Commercial Mortgage Company ("UCM") between March 2005 and January 2006. The Loan Servicing Agreement between the Trust and UCM provided, among other things, that UCM would collect interest and, if applicable, principal owed by the borrowers to the Trust on a monthly basis from each of the Loans, charge a service fee of up to 3% per annum (netting the Trust between 12% and 12.5% yield), and distribute the payment to the Trust and other Direct Lenders. A copy of a representative Loan Servicing Agreement is attached to the Declaration of Gregory J. Walch at Tab 1. The Trust also executed a "Special Power of Attorney" to enable UCM to fulfill its obligations under the Loan Servicing Agreement(s), a representative copy of which is attached to the Declaration of Gregory J. Walch at Tab 2.

---

[1] See Declaration of Gregory J. Walch attached hereto as Exhibit 1.

Pursuant to the Special Power of Attorney, the Trust gave UCM certain limited powers, including the following:

> b.(3) To execute and deliver full and/or partial reconveyances of the Deed of Trust **upon the payment therefore to the undersigned**, as required by the Deed of Trust, **which payments to the undersigned are to be made directly to the undersigned, in proportion to their respective interests, and not to said attorney in fact**. (Emphasis added).

The Special Power of Attorney also provides that:

> This power of attorney **shall not be effective to authorize the use or release of money in which the undersigned owns a beneficial interest for any purpose except for the provision of the services described above relating to the loan** described above unless accompanied by written authorization by the undersigned for the use or release of money for the other purpose. (Emphasis Added).

Pursuant to the Special Power(s) of Attorney, UCM is expressly forbidden from: (1) reconveying collateral securing the Trust's Loans in the absence of simultaneous payment to the Trust of the Trust's proportionate share of principal; (2) accepting principal payments in the name of UCM rather than the Trust; or (3) converting Trust money from each Loan for use by UCM and now Debtor for any matters unrelated to UCM's service obligations under that specific Loan.

The loan documents entered into by borrowers and Direct Lenders are consistent with the Special Power of Attorney provisions requiring that payments be made directly to the Trust, and not to UCM. See "Loan Agreement", "Promissory Note Secured by Deed of Trust", and "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" for the Roam Development Group loan (referred to in Debtor's Security Release Request at page 11, paragraph 21) attached to the Declaration of Gregory J. Walch at Tab 3. The Loan Agreement and Note both define the Trust and the other Direct Lenders (and not UCM) as "**Lenders**" and require that payments under the Note be made "**to Lenders**".[2] Accordingly, the relevant

---

[2] For purposes of defining the location where notices and payments are to be received, the Note provides a Lender address at UCM's offices. See Section 13 of the Note. However, because the Direct Lenders, including the Trust, have a right under the

- 3 -

01969-00/81351.doc

documents (Loan Servicing Agreement, Power of Attorney, Loan Agreement, Note, and Deed of Trust) prohibit Debtor from executing partial or full security releases in the absence of direct payments to the Trust in proportion to its ownership interest in the Loans.

### Argument

While Debtor's Security Release Motion has the appearance of an innocuous procedural request, read in conjunction with Debtor's Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients ("Motion to Hold Funds"), Debtor's Security Release Request is in fact a request to expand greatly and without Trust consent the limited powers granted UCM by the Trust. Further, it glosses over and seeks to transform the true relationship between Direct Lenders and UCM and threatens to undermine what might be a worthwhile goal of keeping UCM in business.

A. <u>The Relevant Documents Forbid Debtor From Receiving Principal and Interest Payments in UCM's and now Debtor's Name</u>.

Debtor selectively quotes from several sections of the Loan Servicing Agreement, apparently as support for the propositions that: (1) the Trust and other Direct Lenders authorized UCM to collect principal payments in UCM's own name; (2) reconveyances in connection with such practices post-petition should be "ratified"; and (3) future reconveyances should be authorized by the Court. Debtor's Security Release Request at 4, paragraph 6. Debtor conspicuously omitted, however, both the Loan Servicing Agreement provision dealing directly with the Special Power(s) of Attorney granted by the Trust, and, not surprisingly given its rather manifest conflict with Debtor's proposed conduct, the Special Power of Attorney itself.

Section 11 of the Loan Servicing Agreement provides that UCM may require lenders to execute a "Declaration of Agency and Limited Power of Attorney, and that "**No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for USA's authority hereunder**." (Emphasis added). As set forth in the Special Power of Attorney, principal payments in exchange for full or partial releases "are to be made directly to

──────────── (continued)
Note to direct borrower from time to time to make payments elsewhere, it's clear the address for notice and payment purposes does not give UCM the right to receive payments in its own name. See Section 2 of the Note.

- 4 -

01969-00/81351.doc

the [the Trust], in proportion to [the Trust's] respective interests, and not to [UCM/Debtor]." Because there is no authority granted UCM within the Special Power of Attorney to partially or fully reconvey collateral securing the Loans in the absence of a simultaneous payment of principal <u>directly</u> to the Trust (and <u>not</u> to UCM), Section 11 of the Loan Servicing Agreement makes clear that no such authority exists. For this reason, Debtor's Security Release Motion must be denied.

    B.  <u>Debtor's Security Release Request Glosses Over the True Nature of the Trust's Relationship With UCM.</u>

Despite unequivocal and consistent language in each Loan document providing that borrowers are to pay principal and interest to Direct Lenders (and not UCM), Debtor endeavors to reshape the Direct Lender/Loan Servicer relationship by asserting some vague potential future equitable interest in the payments (See Sections D and E of the Motion to Hold Funds) or some entitlement to continue receiving same because that allegedly was past practice (See Security Release Motion). For instance, Debtor argues in support of its motion that "purchasers of real property, the borrowers on the secured loans, title and escrow companies, and senior lenders, <u>continue to raise questions about the Debtor's authorization to provide partial releases and full releases and to accept the loan repayment proceeds from such closing to which the Debtor is entitled under the terms of the loan documentation</u>." Debtor's Security Release Request at 5, lines 22-26 (emphasis added).

Debtor should not be surprised that borrowers and buyers are asking about "Debtor's authorization" because it simply doesn't exist. None of the Trust's Loan documents (including the Power(s) of Attorney and Loan Servicing Agreement) entitle Debtor to repayment proceeds. None of the Trust's Loan documents allow Debtor to grant partial or full releases of security without obtaining payment **directly to the Trust** of the Trust's pro-rata share in any particular Loan payment. And none of the Trust's Loan documents allow borrower payments received as a result of a full or partial release of security to be put to use for anything other than UCM's and now Debtor's service obligations under the Loan Servicing Agreement for each Loan. Moreover, NRS 645B.175 prohibits Debtor from commingling money received in exchange for

- 5 -

01969-00/81351.doc

full or partial lien releases in an account that contains Debtor money. The easiest way to avoid violating Nevada law would be to not unilaterally alter the terms of the Special Power(s) of attorney and other Loan documents. Therefore, to the extent Debtor is authorized to give full or partial releases on the Loans, Debtor should be required to abide by the conditions upon which the Trust granted such authority in the first place; namely, receipt of payments only in the Trust's name and prompt payments of same to the Trust.

C. <u>The Court Should not Ratify Full or Partial Releases Given by Debtor to Date Unless Debtor Earmarks the Appropriate Principal Amounts for Immediate Delivery to the Trust</u>.

The Trust has no way of knowing whether Debtor has given partial or full releases of security on any of the Loans without collecting proceeds in the name of the Trust, because Debtor has not made the information available. To the extent, however, that Debtor has given such reconveyances in direct contravention of the Power(s) of Attorney, the Court should not countenance this past conduct as requested. Instead, the Court should ratify past reconveyances only upon a showing by Debtor that the Trust has received its share of the proceeds as contemplated in each of the Loan documents.

D. <u>The Debtor is not in a Position to ask for Patience While Simultaneously Undermining Direct Lender Security Interests</u>.

Finally, if Debtor's Security Release Motion is granted, the Trust, and presumably many other Direct Lenders, may lose confidence that it will receive the principal to which it is entitled under its Loan documents. Chipping away at Direct Lender rights at a time when Debtor has argued in a companion Motion to Hold Funds that Debtor wants to keep its options open to convert Trust principal to Debtor property likely will result in numerous Power(s) of Attorney revocations, motions to compel rejection or acceptance of the Loan Servicing Agreements, and general disorder. The Trust agreed with the Court's admonition to Direct Lenders not to jump ship on May 3, particularly in light of Mr. Allison's testimony that he was aggressively collecting loans. However, Debtor's Motion to Hold Funds floated the concept that Debtor might seek to use principal payments from borrowers in ways never agreed to or imagined by the Trust under the Loan documents and in violation of Nevada law. Under the circumstances, the

Trust cannot sit idly by while Debtor seeks to reform the Direct Lender/Servicer relationship, erode away contracted for protections in the Loan documents one motion or provision at a time, and release security belonging to the Trust without obtaining payments in the Trust's name.

## Conclusion

The Trust respectfully requests that the Security Release Request be denied to the extent Debtor remains unwilling to abide by the terms of the Power(s) of Attorney granted to UCM by the Trust, which requires that Debtor may only release security in exchange for payment **directly** to the Trust, in the Trust's name, and **not** in the name of UCM or Debtor.

Dated this 15th day of May, 2006.

/s/ Gregory J. Walch
Gregory J. Walch, Esq.
Nevada Bar Number 4780
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorney for Gregory J. Walch and Shauna M. Walch, Trustees of the Gregory J. and Shauna M. Walch Family Trust*

01969-00/81351.doc