Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Proposed Attorneys for Debtors and Debtors-in-Possession

E-FILED ON MAY 17, 2006

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **REPLY MEMORANDUM IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY AND RETAIN RAY QUINNEY & NEBEKER P.C. AS COUNSEL FOR THE DEBTORS AND IN RESPONSE TO VARIOUS OBJECTIONS (APPLIES TO ALL DEBTORS)** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date: May 18, 2006<br>Time: 9:30 a.m. |

1
Reply In Support Re Employment Application For RQN

Debtors, USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, and USA Capital First Trust Deed Fund (collectively referred to as "Debtors"), by and through their counsel, Ray Quinney & Nebeker P.C. ("RQN"), hereby submit their Reply Memorandum in Support of Application to Employ Ray, Quinney & Nebeker, PC as Counsel for the Debtors and in Response to Various Objections. In support of this Reply Memorandum, the Debtors represent as follows:

## POINTS AND AUTHORITIES

### Factual Background

1. On April 13, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. With respect to the continued operation and management of the Debtors' businesses, the Court appointed Thomas J. Allison of Mesirow Interim Financial Management, Inc. ("Mesirow") to serve as the Debtors' Chief Restructuring Officer initially until July 27, 2006.

2. The Debtors' filed an Application to Employ and Retain Ray Quinney & Nebeker, P.C. as Counsel for the Debtors (the "Application") on April 18, 2006. The Application is supported, inter alia, by the Declaration of Thomas J. Allison dated April 13, 2006 (the "Allison Declaration") and the Supplemental Declaration of Thomas J. Allison dated May 2, 2006 (the "Allison Supplemental Declaration").

3. In his Declarations, Mr. Allison, among other things, sets forth the composition of the investor pools, the status of the various loans at issue and whether these loans are performing or non-performing. Mr. Allison also describes USA Commercial Mortgage Company, Inc.'s servicing of the loans and its historical practice of making regular interest payments to investors irrespective of the performing or non-performing status of the underlying loan, as well as the participation of USA Capital Diversified Trust Deed Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("Capital First") in the investor pool. Mr. Allison further describes a significant inter-company receivable owed by a non-debtor, USA Investment Partners, to USACM

1  and possibly to other Debtors. However, the Declarations indicate that the work completed by Mr.
2  Allison and Mesirow to date is preliminary and an immense amount of work remains to be done to
3  examine the various investments and to determine the final amounts, if any, owing to and/or
4  owing by the investors, including Diversified and Capital First.

5      4.      As indicated in the Allison Declaration, all of the funds collected by the Debtors
6  from the date of the filing of the petition will be deposited into a collection account and will not be
7  used to pay claims or make distributions except as authorized by the Court (e.g. in accordance
8  with the approved budget). Rather, the Debtors will hold the Debtors' funds in the collection
9  account and to recommend appropriate distributions upon completion of the work being
10 performed by Mesirow as described in the Allison Supplemental Declaration.

11     5.      During the important early stages of this case, RQN and its team of attorneys have
12 provided critical advice to the Debtors and the Mesirow team respecting a myriad of legal issues,
13 have effectively represented the Debtors' positions in court, and have fielded countless inquiries
14 from various parties in interest. RQN, working in concert with Mesirow during these crucial early
15 stages, has also acquired substantial and critical knowledge about the Debtors' business operations
16 and the various investor obligations.

17     6.      The employment of separate legal counsel for each of the Debtors at this stage of
18 the proceedings will result in significant expense to the Debtors' estates and could result in the
19 interruption of the orderly administration of these jointly administered cases during the next few
20 critical months.

21     7.      To date, only three objections have been lodged to the Debtors' Application to
22 employ RQN. The United States Trustee has objected to RQN's retention by all of the Debtors
23 because of the alleged existence of an actual conflict of interest under 11 U.S.C. § 327 due to
24 inter-company obligations between the Debtors. That objection is echoed by an opposition filed
25 by the Margaret B. McGimsey Trust, Jerry McGimsey, Bruce McGimsey, Sharon McGimsey and
26 Johnny Clark (the "McGimsey Group"). Finally, the Official Committee of Equity Security
27 Holders of Capital First (the "First Trust Deed Committee") has filed a limited objection to the
28 Application, in which it does not oppose the retention of RQN, but only the approval of the

perceived terms of RQN's employment under 11 U.S.C. § 328.

**Memorandum of Law**

**I.   THE UNITED STATES TRUSTEE AND THE McGIMSEY GROUP OBJECTIONS SHOULD BE DENIED**

The objections filed by the United States Trustee and the McGimsey Group to the Application filed by the Debtors to employ RQN should be denied for the following reasons: (a) many courts have permitted the representation of affiliated debtors by a single law firm in similar situations; (b) the existence of the potential debts between affiliated debtors in the circumstances of this case does not create an actual conflict of interest under 11 U.S.C. § 327; and (c) consistent with the Court's earlier ruling allowing the initial retention of Mr. Allison and Mesirow, the representation of all of the Debtors by RQN during this interim period, through July 27, 2006, will allow RQN to assist Mr. Allison and Mesirow to complete their initial investigation and report to the Court in order to provide the Court and parties in interest with full information to determine whether there are any actual, as opposed to merely potential, conflicts of interest necessitating separate professionals, including separate counsel.

**A.   Many Courts Have Permitted the Representation of Affiliated Debtors by a Single Law Firm in Similar Situations.**

Many courts have permitted the representation of affiliated or related debtors by a single attorney or law firm. For instance, in In re O.P.M. Leasing Services, Inc., 16 B.R. 932 (Bankr. S.D.N.Y. 1982), the bankruptcy court appointed a single attorney to oversee five related chapter 11 reorganization cases. The attorney subsequently made a full disclosure of all of the potential conflicts of interest to the bankruptcy court. The court held that the mere multiple representations of the related debtors by a single attorney were insufficient to disqualify the attorney unless an actual conflict of interest could be shown. Id. at 941. Since the potential conflicts were decidedly more apparent than real, the bankruptcy court found that there was no impropriety in permitting the same attorney to represent multiple related debtors under the guidance of a single trustee. Id. See also In re Stamford Color Photo, Inc. 98 B.R. 135, 137-38 (Bankr. D. Conn. 1989) (emphasizing that "there is a difference between potential and actual conflict" between affiliated

or related parties); <u>In re Waterfall Village of Atlanta</u>, 103 B.R. 340, 345 (Bankr. N.D. Ga. 1989), (noting that a potential conflict of interest between affiliated or related parties does not necessarily create an actual conflict requiring disqualification).

While the United States Trustee argues that some cases stand for the proposition that any conflict of interest (whether it be an actual or a potential conflict) between affiliated or related debtors should disqualify a single law firm from representing all of those debtors, this is not consistent with the plain language of the statute or the better reasoned view that a single law firm should not be precluded from representing affiliated or related debtors without a showing of an actual, present conflict of interest between those debtors that is incapable of any other equitable resolution.[1] By permitting multiple representations of affiliated or related entities the courts who follow this view recognize the considerable economies to the estate as well as the knowledge and familiarity with all aspects of the debtors' condition that a single law firm can bring to the case. Indeed, these courts have found that in the absence of an actual conflict of interest, a single law firm can adequately represent multiple affiliated debtors.  This is a logical conclusion when considering the significant expense that would be incurred if the prevailing rule was that each debtor in a multi-debtor enterprise must be represented by separate counsel.

Indeed, the Debtors will significantly benefit in this case if RQN is permitted to serve as counsel for all of the Debtors during at least this initial period.  Those benefits include the following:  (a) RQN has acquired significant and critical knowledge about each of the Debtors'

---

[1] In fact, some of the main cases cited by the United States Trustee in support of his position actually appear to support the proposition that a single law firm can represent multiple affiliated debtors.  For instance, in <u>In re Wheatfield Bus. Park, LLC</u>, 286 B.R. 412 (Bankr. C.D. Cal. 2002), the court found that while there is a presumption against employment of a single attorney or law firm to represent related entities that have filed Chapter 11 petitions that have potential claims against each other, that presumption can be avoided with appropriate notice to creditors.  Accordingly, the court in <u>Wheatfield</u> found that before it would permit the same law firm to represent related debtors with potential claims against one another, notice of the proposed retention and of the known potential conflicts of interest had to be given to all creditors.  <u>Id</u>. at 426.  Likewise, in <u>In re Interwest Business Equipment, Inc.</u>, 23 F.3d 311 (10th Cir. 1994), the court stated that "[b]y our decision today, we do not hold such simultaneous representation of related estates in bankruptcy per se prohibited.  Instead, each such application must be evaluated on its own merits." <u>Id</u>. 319.  Indeed, the court seemed to infer earlier in its decision that had applications for employment and accompanying affidavits established that there was no actual conflict of interest between the affiliated debtors, then the representation of multiple affiliated debtors may have been permitted.  <u>Id</u>. at 318.

business operations and the various investor loans at issue during the past few months; (b) it would be difficult for new counsel to acquire all of this same information during the upcoming weeks which is the critical time period the Court has designated to sort out the Debtors' financial affairs; (c) the Debtors' estate will realize significant savings by RQN's single representation of all of the Debtors because it will not have to pay for multiple attorneys; (d) duplication of efforts will be avoided; (e) Tom Allison and the Mesirow team will not have to consult with different groups of attorneys about the business affairs of each of the individual Debtors; and (f) any confusion, overlap and contradiction that might be created by the retention of multiple attorneys is avoided.

**B.    The Existence of Potential Debts Between Affiliated Debtors In The Circumstances of This Case Does Not Create an Actual Conflict of Interest Under 11 U.S.C. § 327.**

Many courts have also found that the existence of debts between affiliated debtors in and of itself does not create an "actual conflict" of interest under 11 U.S.C. § 327. For instance, in In re Global Marine, Inc., 108 B.R. 998 (Bankr. S.D. Tex. 1987), a law firm represented both a parent company and its subsidiaries in a consolidated Chapter 11 proceeding. The parent company owed one of its subsidiaries the sum of $170 million dollars which arose from pre-bankruptcy activity. As a result, a creditors' committee asserted that the existence of this debt represented an impermissible actual conflict of interest under Section 327(c), and requires that the law firm's interim application for fees be reduced or denied. However, the Global Marine court found that the dual representation of related entities with potential claims against each other did not, in and of itself, create an actual conflict of interest. Id. at 1002. The court's decision was premised on its view that there should be a fundamental distinction between the potential conflicts of interest that could arise in every instance of joint representation of affiliated entities and the actual conflict of interest envisioned by § 327(c). Id. at 1004. The court acknowledged the existence of a potential conflict of interest in its case, but held that because that conflict was "dormant" as opposed to "open and ongoing," there was not yet an actual conflict of interest that required disqualification. Id. The court then went on to hold that potential conflicts of interest do not violate § 327(c). Id. See also In re International Oil Co., 427 F.2d 186, 187 (2d Cir. 1970)

(the presence of an inter-company claim does not create a per se actual conflict of interest.

The language of 11 U.S.C. § 327(c) likewise seems to indicate that, even if one debtor entity is the creditor of the other, courts are only required to disqualify counsel from representing these multiple affiliated entities if the court also finds that this debtor-creditor relationship creates an "actual conflict" of interest between the entities. Section 327(c) states:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case **the court shall disapprove such employment if there is an <u>actual conflict</u> of interest**.

(Emphasis added). Consequently, the plain language of the statute indicates that a debtor-creditor relationship does not, per se, create an actual conflict of interest.

Notwithstanding the foregoing, the United States Trustee and the McGimsey Group seek the denial of the Debtors' Application to Employ RQN as counsel for all of the Debtors because of two types of inter-company obligations which they contend create "actual conflicts" of interest between the Debtors under § 327. Specifically, the United States Trustee and the McGimsey Group assert that the loan servicing fees under the Debtors loan servicing agreements, and the amounts purportedly due to USACM from Diversified and Capital First as a result of monthly payments that were made by USACM prior to bankruptcy constitute "actual conflicts" of interest between the Debtors. The foregoing obligations are currently being investigated by Mesirow such that it is virtually impossible to know at this time whether there are obligations which create actual conflicts of interest between the Debtors. Indeed, the Debtors will not know for approximately two months the results of Mesirow's investigation of its financial affairs, and correspondingly, the nature and magnitude of the inter-company debts.

Furthermore, since the petition date, the Debtors have collected approximately $11 million in interest on the non-performing loans. This collection of past-due interest on non-performing loans may very well result in eliminating the obligations which may now or potentially be owed to USACM by Diversified and Capital First as a result of the payments made pre-petition in connection with certain non-performing loans. Accordingly, at most the inter-company obligations

identified above only constitute potential conflicts of interest at this time and, pursuant to <u>Global Marine</u> line of cases, as well as the express language of § 327(c), the existence of a potential conflict of interest, as opposed to an actual conflict of interest, is not sufficient to deny the Application.

The United States Trustee also infers in his objection that the $58 million inter-company receivable owed by a non-debtor entity, USA Investment Partners, LLC to USACM (and possibly to some or all of the other Debtors) could create an actual conflict of interest that should disqualify RQN from representing all of the Debtors. However, that transaction clearly does not create an actual conflict of interest between the Debtors because it was between a non-debtor entity and one or more of the Debtors, as opposed to being between the Debtors themselves. Mesirow is currently in the process of trying to document and trace the proceeds of that transaction. Once that occurs, the Debtors will request that the transaction be properly accounted for on the Debtors books and records and the appropriate Debtor(s) be entitled to receive those funds. However, the existence and investigation of this transaction does not require the denial of the Application.[2]

**C.    The Investors and Other Parties in Interest Will Not be Harmed by RQN's Representation of All of the Debtors For An Interim Retention Period Through July 27, 2006.**

At this time, RQN is only seeking court approval for its retention as counsel for all of the Debtors for an interim time period which runs from the petition date through July 27, 2006. This is the same time period approved by the Court for Mesirow's employment while it sorts out the Debtors' financial affairs. Accordingly, the Application also should be granted for this initial

---

2 The United States Trustee's objection also makes reference to the $210,000 retainer received by RQN as well as the application of $129,572.83 of that amount for services performed by RQN for the Debtors during the twelve months prior to the filing of the Debtors bankruptcy petitions. With respect to the $210,000 retainer, RQN understands that $170,000 came from USA Capital Realty Advisors, LLC, $20,00 came from USACM and $20,000 came from USA Securities, LLC. The services performed by RQN do not create any conflict of interest between RQN and the Debtors because they were all in preparation for the Debtors bankruptcy filings in the weeks just prior to the petition date. RQN will provide a detailed summary of the types of services performed, the dates the services were performed, the amount of time needed to perform the services, as well as the cost of the services performed at the time it files its first fee application.

period because, consistent with the Court's earlier ruling allowing the initial retention of Mr. Allison and Mesirow, the representation of all of the Debtors by RQN during this interim period, through July 27, 2006, will allow RQN to assist Mr. Allison and Mesirow to complete their initial investigation and report to the Court in order to provide the Court and parties in interest with full information to determine whether there are any actual, as opposed to merely potential, conflicts of interest necessitating separate professionals, including separate counsel.  During this initial limited retention period sought by RQN's application, it is clear that the investors and other parties in interest will not be harmed by RQN's representation of all of the Debtors.  All of the funds that have been and are being collected by the Debtors post-petition are being deposited into a collection account, and no distributions are going to be made to the Debtors or other parties in interest, unless specifically authorized by the Bankruptcy Court.  Moreover, no plan of reorganization is going to be confirmed during the time period in question.  Four committees have been appointed to oversee the activities of the Debtor.  Mesirow will continue its investigation of the Debtors business affairs, the collection of past-due loans, and the restoration of regular and necessary business activities of the debtors with RQN assisting in that process, as well as with the administration of the Debtors' estates.  Upon the completion of Mesirow's investigation, sufficient facts should be available to permit all interested parties to weigh in on the issue as to whether multiple representation of the Debtors is needed due to actual conflicts of interest that could be found to exist between the Debtors, as opposed to only potential conflicts of interest that may exist at the present time.  Until that time, the multiple representation of the Debtors should not be required, and in fact, would only cause substantial and unnecessary expense and delay to be incurred by the Debtors' estate.

**II.    THE FIRST TRUST DEED COMMITTEE LIMITED OBJECTION IS BASED ON A MISUNDERSTANDING OF THE TERMS OF THE RETENTION SOUGHT BY RQN AND SHOULD BE OVERRULED.**

The First Trust Deed Committee filed a limited objection to the Application in which it did not oppose the retention of RQN, but only the approval of the terms of RQN's employment under 11 U.S.C. § 328.  Specifically, the First Trust Deed Committee appears to be concerned that the

Debtors' proposed compensation to RQN would not be subject to further review if it is approved under § 328. However, the Application makes it clear in paragraph 14 that RQN's compensation is subject to the prior approval by the Court, after a notice and a hearing in accordance with 11 U.S.C. § 328. Paragraph 14 provides in pertinent part as follows:

> 14.    . . . Ray Quinney will keep detailed records of time spent and any expenses incurred in the context of this representation. Ray Quinney will abide by the Bankruptcy Code and provisions and any order of [sic] this Court may enter in relation to fee application procedures and **will apply to the Court for allowance of any compensation and reimbursement in this matter. The firm understands that its compensation in this case is subject to the prior approval of this Court, after notice and a hearing, in accordance with §§ 328(a)** and 331(a) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and applicable guidelines issued by the Office of the United States Trustee.

(Emphasis added). Based on the foregoing, the First Trust Deed Committee's concern that RQN's compensation will not be subject to further review should be satisfied, and therefore, its limited objection should be overruled.

## CONCLUSION

Based on the foregoing, the Debtors' respectfully request that the objections filed by the United States Trustee, the McGimsey Group and the First Trust Deed Committee be overruled, and that the Application to Employ and Retain Ray Quinney & Nebeker, P.C. as Counsel for the Debtors be granted.

DATED this 17th day of May, 2006.

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Esq.
Jeanette E. McPherson, Esq.
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146
Proposed Attorneys for Debtors
and Debtors-in-Possession

10
Reply In Support Re Employment Application For RQN