Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Proposed Attorneys for Debtors and Debtors-in-Possession

**E-FILED ON MAY 17, 2006**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **REPLY BRIEF IN SUPPORT OF**<br>**DEBTORS' MOTION FOR ORDER** |
| In re:<br><br>USA SECURITIES, LLC,<br>Debtor. | **AUTHORIZING REIMBURSEMENT OF**<br>**DUE DILIGENCE EXPENSES OF**<br>**POTENTIAL POST-PETITION LENDER**<br>**[AFFECTS ALL DEBTORS]** |
| Affects:<br>☒  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | Date:  May 18, 2006<br>Time:  9:30 a.m. |

1

USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated debtors, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC ("Diversified"), and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Debtors"), submit this Reply Brief in support of the Debtors' "Motion for Order Authorizing Reimbursement of Due Diligence Expenses of Potential Post-Petition Lender" (the "Due Diligence Expenses Motion" or the "Motion"), and also in reply to the objections to the Motion that have been filed.

## INTRODUCTION

1.      The Debtors filed this Motion in order to seek Court approval for the Debtors to provide a cash deposit (the "Deposit") in the amount of $150,000, to be applied by the proposed lender for the proposed post-petition loan (the "Post-Petition Loan"), Fortress Credit Corp. ("Fortress"), towards the actual expenses incurred or to be incurred by Fortress in completing due diligence for the potential Post-Petition Loan. It is the Debtors' business judgment that the Deposit should be paid to Fortress to facilitate the anticipated Court approval and funding of the proposed Post-Petition Loan.

## SUPPLEMENTAL FACTS AND ARGUMENT

2.      As of April 13, 2006 (the "Petition Date"), USACM was acting as the loan servicer for approximately 115 separate loans (the "Serviced Loans") having a combined outstanding loan balance of approximately $962 million.  See Exhibit A to the Supplemental Declaration of Thomas J. Allison dated May 2, 2006 that was e-filed with the Court on May 2, 2006 (Docket No. 130).

3.      There are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" in the loan documents for one or more of the Serviced Loans.  Diversified and Capital First (collectively the "Funds") are included among the Direct Lenders.  See, Second Supplemental Declaration of Thomas J. Allison dated May 17, 2006 that is being e-filed with the Court contemporaneously with this Reply Brief (the "Second Supplemental Allison Declaration") at ¶ 3.  Capital First has approximately 1,300 members owning membership interests, and Diversified has approximately 1,900 members owning membership interests (collectively, the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   "Fund Members"). <u>See,</u> Second Supplemental Allison Declaration at ¶ 10.

2       4.      The Debtors have determined in their business judgment that it is in the best

3   interests of the Debtors to obtain post-petition, debtor-in-possession financing, for purposes of,

4   among other things, assisting in the funding of the Debtors' operational expenses and

5   administrative expenses, given the number and magnitude of non-performing loans that must be

6   collected, and providing a source of additional loan funds (if approved by the Court) for certain of

7   the Serviced Loans where the funding to date for construction loans is less than the full

8   construction budgets prepared by the Borrowers for the completed construction projects (the

9   "Projects") being built by such Borrowers (the "Construction Budget Shortfalls") and where such

10  funding is necessary or appropriate to maintaining and protecting the value of the collateral

11  securing these certain Serviced Loans. <u>See,</u> Second Supplemental Allison Declaration at ¶ 11.

12      5.      As a result of that business judgment, the Debtors negotiated with several debtor-

13  in-possession lenders for a Post Petition Loan. The Debtors selected Fortress from among several

14  other debtor-in-possession lenders as the lender from whom the Debtors should obtain a Post-

15  Petition Loan (after Court approval) because the draft Term Sheet of Fortress was, in the Debtors'

16  business judgment, more favorable than those proposed by other debtor-in-possession lenders.

17  <u>See,</u> Second Supplemental Allison Declaration at ¶ 12.

18      6.      When the Due Diligence Expenses Motion was filed on May 8, 2006, the

19  negotiations with Fortress were not yet completed. The parties anticipated that the terms in the

20  draft Term Sheet that was under consideration at that time might change prior to the issuance of a

21  firm commitment from Fortress, which was expected prior to the time the Due Diligence Expenses

22  Motion was set for hearing. <u>See,</u> Second Supplemental Allison Declaration at ¶ 13.

23      7.      A Commitment Letter (the "Commitment Letter") signed by Fortress and dated

24  May 12, 2006, has been delivered to the Debtors. As contemplated by the Due Diligence

25  Expenses Motion, a copy of the Commitment Letter was attached as Exhibit "1" to the "Notice of

26  Commitment Letter for DIP Financing" that was e-filed with the Court on May 16, 2006, as

27  Docket No. 254. <u>See,</u> Second Supplemental Allison Declaration at ¶ 14. A true and correct

28  additional copy of the Commitment Letter is also attached as <u>Exhibit A</u> to the Second

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Reply In Support Re Motion To Pay Due Diligence Fee (DIP)

1    Supplemental Allison Declaration.

2        8.        During the Debtors' negotiations with Fortress, before Fortress was willing to

3    commit additional time and resources to evaluating a potential Post-Petition Loan, Fortress stated

4    that it would require that the Debtor agree (with Court approval) to reimburse Fortress for actual

5    expenses (including Fortress's reasonable attorney fees) incurred by Fortress in connection with

6    completion of due diligence and other matters associated with the potential Post-Petition Loan.

7    Fortress has asked that the Debtors provide the Deposit in the amount of $150,000, to be applied

8    by Fortress toward actual expenses incurred or to be incurred in completing due diligence for the

9    potential Post-Petition Loan.  See, Second Supplemental Allison Declaration at ¶ 15.  The amount

10   of the Deposit was previously included in the Budget that was attached as Exhibit B to the

11   Supplemental Declaration of Thomas Allison dated May 2, 2006 that was e-filed with the Court

12   on May 2, 2006 (Docket No. 130).  Indeed, while Fortress has delivered a Commitment Letter to

13   the Debtors, the Commitment remains conditioned on the payment of the Deposit and the

14   completion of due diligence (including legal due diligence) which the Deposit will allow for and

15   facilitate.  As set forth in the Commitment Letter, if the Deposit is not approved by the Court on

16   May 18, 2006 and paid to Fortress by May 19, 2006, the Commitment Letter will terminate.  See,

17   Exhibit A to the Second Supplemental Allison Declaration.

18       9.        It is the Debtors' business judgment that the payment of due diligence expenses to

19   a debtor-in-possession lender is customary for debtor-in-possession financing transactions, and

20   that the amount of the Deposit is a reasonable estimate of the amount of due diligence expenses

21   that will reasonably be incurred by Fortress.  See, Second Supplemental Allison Declaration at ¶

22   17.

23       10.       It is the Debtors' business judgment that there are at least three valid business

24   reasons for obtaining the Post-Petition Loan for the Debtors:  (a) Debtors may need additional

25   sources of funds to pursue all necessary collection actions with respect to non-performing loans,

26   given the number and amount of non-performing loans which are currently not generating cash to

27   pay servicing fees to fund these actions; (b) Debtors may need additional liquidity to fund

28   administrative and operational expenses in the event that the timing of payments on the Serviced

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Loans from which Debtors' servicing fees and other contractual costs and fees are deducted (and

2    which the Court has approved as funding sources) are irregular and/or disrupted and do not match

3    the funding requirements for the timely payment of Debtors' administrative and operational

4    expenses; and (c) Debtors need a source of funding for additional loans to the Borrowers with

5    Construction Budget Shortfalls to allow such Borrowers to complete their Construction Projects if

6    the Debtors determine that additional funding is necessary or appropriate to preserve value of the

7    underlying collateral for the Serviced Loans for the Direct Lenders, the Funds, the Fund Members,

8    and USACM and such funding is then approved by the Court.  See, Second Supplemental Allison

9    Declaration at ¶ 18.

10        11.    The Debtors are engaged in various critical tasks that must be accomplished in

11   order to analyze and safeguard the interests of all Direct Lenders (including the interests of the

12   Funds as Direct Lenders) and Fund Members.  See, Second Supplemental Allison Declaration at ¶

13   ¶ 19-21, 23.

14        12.    The Debtors' Revised Budget (the "Budget"), which was attached as Exhibit B to

15   the Supplemental Declaration of Thomas J. Allison that was e-filed on May 2, 2006 (Docket No.

16   130), outlines the Budget that the Debtors have prepared for payment of the administrative costs

17   and collection costs that must be undertaken by the Debtors to preserve and increase value for the

18   Debtors, the Direct Lenders, and the Fund Members.  However, the Budget only contemplated the

19   appointment of one creditors committee for the five Debtors, so it is possible that the professional

20   fees associated with payment for counsel to the four committees that were just appointed by the

21   United States Trustee will be even higher than those contemplated by the Budget, requiring

22   additional sources of funds for the Debtors to operate in Chapter 11.  See, Second Supplemental

23   Allison Declaration at ¶ 24.

24        13.    If the Court approves the payment of the Deposit, the Deposit will be paid from the

25   sources outlined in and in accordance with the Budget.  The Debtors are not asking that other

26   funds being held by the Debtors be used to pay the Deposit, but only that the Deposit be paid from

27   those funding sources outlined in the Budget and previously approved by the Court.  See, Second

28   Supplemental Allison Declaration at ¶ 25.

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Reply In Support Re Motion To Pay Due Diligence Fee (DIP)

14.    As of the Petition Date, approximately 62 of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans"). The Nonperforming Loans represent 72% percent in outstanding loan balance of the Serviced Loans. See, Second Supplemental Allison Declaration at ¶ 4.

15.    The Debtors have initiated measures for collecting unpaid interest on the Nonperforming Loans, as well as implementing improved loan servicing procedures. However, even with these operational changes, the regular payment streams of payments being made to USACM as Servicer of the Serviced Loans have been disrupted because of the filing of the bankruptcy petitions for the Debtors. Moreover, interest is not being paid on a regular basis on the large number of Nonperforming Loans. Therefore, the Debtors cannot currently count on a regular stream of payments being made to USACM as Servicer from which the servicing fees and other contractual costs and fees that will be used to fund the Budget will be deducted. See, Second Supplemental Allison Declaration at ¶ 26.

16.    The Debtors are in need of additional liquidity in the form of the Post-Petition Loan in order to be able to timely pay their administrative expenses and operational expenses as they are incurred on a regular basis, as contemplated by the Budget. To the extent that there are insufficient funds on hand on any particular date from the funds which the Court has authorized the Debtors to use for payment of administrative and operational expenses incurred to collect unpaid interest and principal on the Serviced Loans, the Debtors can draw on the Post-Petition Loan in order to cover any such insufficiency. See, Second Supplemental Allison Declaration at ¶ 27.

17.    Attached as Exhibit B to the Second Supplemental Allison Declaration is a list prepared by Mesirow of thirty (30) of the Serviced Loans which have Construction Budget Shortfalls. The amount of the Construction Budget Shortfall for each of these 30 Serviced Loans (the "Shortfall Loans") is listed on Exhibit B to the Second Supplemental Allison Declaration. The total amount of the Construction Budget Shortfalls is $73,122,216. See, Second Supplemental Allison Declaration at ¶ 28.

18.    It is the Debtors' understanding that the Borrowers for the Shortfall Loans

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    requested loan funding for only a portion of the construction budgets for their various Projects

2    because they wanted to avoid having to pay interest from the inception of the Shortfall Loans on

3    the full amount of the loan funds needed to cover their entire construction budgets for their

4    completed Projects.  It is the Debtors' understanding that the Borrowers for the Shortfall Loans are

5    planning to build their Projects in stages, and are looking to obtain additional loan funding for the

6    future stages of their Projects from USACM.  See, Second Supplemental Allison Declaration at ¶

7    29.

8        19.    The Projects for which the Shortfall Loans are being used for construction purposes

9    are not completed Projects.  It is the Debtors' business judgment that most, if not all, of the

10   Borrowers for the Shortfall Loans will need additional loan funding of up to the amount of the

11   Construction Budget Shortfalls for each Shortfall Loan in order to complete their Projects.  See,

12   Second Supplemental Allison Declaration at ¶ 30.

13       20.    It is the Debtors' business judgment that the value of the collateral for the Shortfall

14   Loans will be preserved and greatly enhanced for the benefit of the Direct Lenders, the Funds, the

15   Fund Members, and the Debtors if the Projects can be completed as contemplated by their

16   Borrowers.  A completed construction project that is a candidate for a sale to an investor or a take-

17   out loan from a permanent financing source is much more likely to generate the funds needed to

18   pay off the Shortfall Loans in full than an uncompleted construction project that is likely to be

19   encumbered with mechanic's liens and embroiled in other litigation.  See, Second Supplemental

20   Allison Declaration at ¶ 31.

21       21.    It is the Debtors' belief that USAMC does not have the obligation, but has the right,

22   with Court approval, to fund additional loan funds in the amount of the Construction Budget

23   Shortfalls for each of the Shortfall Loans.  It is the Debtors' business judgment that USAMC

24   should seek Court approval (in connection with the Court approval of the Post-Petition Loan) to

25   use some of the proceeds from the Post-Petition Loan to fund the Construction Budget Shortfalls

26   for most, if not all, of the Shortfall Loans.  USAMC will make its determination whether or not to

27   seek Court approval to fund a particular Construction Budget Shortfall from the Post-Petition

28   Loan based upon appraisals and other customary due diligence lending standards to be applied by

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  the Debtor to each Shortfall Loan and each Project, including whether or not the particular

2  Shortfall Loan is a Nonperforming Loan.  See, Second Supplemental Allison Declaration at ¶ 32.

3       23.  USACM has filed a Motion seeking authority to engage an outside appraisal firm to

4  evaluate all of the real estate collateral securing the Serviced Loans. These appraisals will assist

5  USACM in its due diligence determination whether or not to fund a particular Construction

6  Budget Shortfall for a particular Project.  See, Second Supplemental Allison Declaration at ¶ 33.

7       24.  In its Limited Opposition to the Motion, the Official Committee of Equity Security

8  Holders of USA Capital First Trust Deed Fund, LLC (the "First Trust Deed Committee") objected

9  to the Motion because of the Committee's contention that the Debtors had not yet articulated a

10  sound business justification for paying the due diligence expenses of Fortress.  The Canepa

11  Group's Opposition to the Motion also contends that the Motion lacks sufficient evidentiary and

12  legal support. The Debtors respectfully submit that the foregoing supplemental statement of facts,

13  accompanied by the filed Second Supplemental Allison Declaration, provide the requisite

14  evidentiary basis for the Debtors' statement in the Motion that it is their business judgment that

15  obtaining debtor-in-possession financing will be beneficial to the bankruptcy estates of the

16  Debtors and to all parties in interest.  The foregoing sound business justifications support the

17  Debtors' need for the payment of the Deposit so that Fortress can complete its due diligence and a

18  motion to approve the Post-Petition Loan can be filed and noticed and set for hearing.

19       25.  The First Trust Deed Committee also objected to the Motion because the Debtors

20  had not yet identified the terms and conditions of the proposed Post-Petition Loan.  The Fortress

21  Commitment Letter is now on file with the Court, and is attached to the Second Supplemental

22  Allison Declaration.  The Debtors are not asking that the Deposit be paid in a vacuum, and submit

23  that the Court can now determine, based upon the reasons outlined above, that the payment of the

24  Deposit "makes sense."

25       26.  The Canepa Group has also objected to the Motion.  The Canepa Group incorrectly

26  contends that counsel for the Debtors verbally requested at the May 3, 2006 hearing approval of a

27  $50,000 advance on the Deposit, and that this Court denied such verbal request.  This is not

28  correct.  Counsel for the Debtors at the May 3, 2006 hearing explained that the $150,000 Deposit

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   amount was included in the Budget that was being considered at the May 3, 2006 hearing, similar

2   to the professional fees that are also included in the Budget, but that both would be subject to

3   further Court approval.  The Debtors did not ask for pre-approval of those professional fees, but

4   just explained that they were included in the Budget for informational purposes.  Similarly, the

5   Debtors did not ask for pre-approval of the Deposit, but just explained that the Deposit was

6   included in the Budget for informational purposes, and would be requested to be authorized by

7   separate Motion in the future upon Court approval.

8            27.      The Canepa Group also argues that the Motion is premature.  The Second

9   Supplemental Allison Declaration amply demonstrates the critical and urgent need for the Post-

10  Petition Loan now.  The Canepa Group suggests that protracted litigation may be needed in order

11  to sort out the consequences of the Debtors' pre-petition activities. The Debtors are hopeful that

12  such protracted litigation will not be needed, and that the Direct Lenders and Fund Members will

13  recognize that the actions being taken by the Debtors are intended to preserve value for the Direct

14  Lenders and Fund Members as well as the Debtors.  In any event, the Debtors simply cannot wait

15  for every detail of the Debtor's pre-petition conduct to be examined and sorted out.  The need for a

16  Post-Petition Loan is immediate and the consequences for the Debtors, and indeed for all Direct

17  Lenders and Fund Members, if they do not have adequate funds could be dire.

18           28.      The Canepa Group contends that USACM is not in compliance with NRS

19  645B.175.  The Canepa Group evidently objects to the Debtors' request that the Court authorize

20  USAMC to hold the Serviced Loan repayment funds being received by USACM until the hearing

21  before the Court on July 25, 2006, to allow the Debtors to sort out and report to the Court on any

22  overpayments that any of the Direct Lenders may have received before the Petition Date.  This is a

23  matter that has been noticed up for hearing on June 2, 2006.  It is not necessary for the Court to

24  address this issue in the context of this motion.

25           29.      In any case, the Debtors assert that they are in full compliance with NRS 645B.175.

26  The Debtors assert that USAMC's payment obligations are governed by Nevada Revised Statutes

27  645B.175, Subsection 9, which provides: "9.  If a mortgage broker or a mortgage agent receives

28  any money pursuant to this section, the mortgage broker or mortgage agent, after the deduction

and payment of any fee or service charge due the mortgage broker, shall not release the money to: (a) Any person who does not have a contractual or legal right to receive the money; or (b) Any person who has a contractual right to receive the money if the mortgage broker or mortgage agent knows or, in light of all the surrounding facts and circumstances, reasonably should know that the person's contractual right to receive the money violates any provision of this chapter or a regulation adopted pursuant to this chapter."

30.    The Debtors assert that USAMC may not be allowed under the governing Nevada statute to make payments to any Direct Lenders unless and until USAMC can determine that such Direct Lender has not been overpaid prior to the Petition Date the amounts that such Direct Lender was contractually and legally entitled to receive.  The Debtors contend that until USAMC can make this determination, which it plans to be able to make by July 25, 2006, the governing Nevada statute prohibits USAMC from making payments to any Direct Lenders.

31.    The Serviced Loan repayments that USAMC is receiving from the Borrowers are being held in a separate bank account established by USAMC, and the Debtors are keeping accurate accounting records to account for such loan repayments on a Serviced Loan by Serviced Loan basis.  The servicing fees and other contractual fees and costs that the Court has authorized to be used by the Debtors are being deducted from these loan repayments and are being deposited into a separate Debtor-in-Possession bank account, and are not being commingled with the net Serviced Loan repayments that are held in a separate account.  See, Second Supplemental Allison Declaration at ¶ 34.  Again, The Debtors assert that they are in full compliance with all requirements of NRS 645B.175.

## CONCLUSION

The Debtors clearly have demonstrated that there is a sound business justification for payment of the Deposit in order to induce Fortress to complete its due diligence and proceed forward with the filing of a motion to approve the anticipated Post-Petition Loan.  The payment of the Deposit is well within the sound discretion of the Debtors' business judgment, and they have exercised that business judgment by requesting that the Court approve the payment of the Deposit. The Debtors have provided an ample evidentiary and legal basis for granting the Motion.  The

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Debtors respectfully request that the Limited Opposition of the First Trust Deed Committee and

2    the Opposition of the Canepa Group be overruled, and that the Motion be granted.

3            Respectfully submitted on May 17, 2006.

4

5                                                    /s/ Jeanette E. McPherson

6                                                    Lenard E. Schwartzer, Esq.
                                                     Jeanette E. McPherson, Esq.
7                                                    SCHWARTZER & MCPHERSON LAW FIRM
                                                     2850 South Jones Boulevard, Suite 1
8                                                    Las Vegas, Nevada   89146
                                                     Proposed Attorneys for Debtors
9                                                    and Debtors-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply In Support Re Motion To Pay Due Diligence Fee (DIP)

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122