Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
and
Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

E-FILED on May 17, 2006

Proposed Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date: May 18, 2006<br>Time: 9:30 a.m. |

Reply Brief in Support of Employment Applications

1

**REPLY BRIEF IN SUPPORT OF APPLICATION BY DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORIZATION TO RETAIN AND EMPLOY SCHWARTZER & McPHERSON LAW FIRM AS COUNSEL UNDER GENERAL RETAINER**

The Debtors and Debtors-in Possession ("Debtors" or "DIP"), by and through their counsel, Jeanette E. McPherson, Esq. of Schwartzer & McPherson Law Firm (the "Firm"), hereby files their Reply Brief In Support Of Application By Debtor And Debtor-in-Possession For Authorization To Retain And Employ Schwartzer & McPherson Law Firm As Counsel Under General Retainer. This Brief is made and based upon the Points And Authorities set forth herein, the pleadings on file, and any argument and evidence presented at the time of hearing.

## POINTS AND AUTHORITIES

### Facts

1. The Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on April 13, 2006 (the "Petition Date"), and the Debtors continue to operate its business and possess their property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial Management became the President of USA Commercial Mortgage Company ("USACM") and the Manager of the four remaining Debtors who are limited liability companies. In an order entered April 19, 2006, this Court authorized the Debtors' employment of Allison as the Chief Restructuring Officer for an interim period until July 27, 2006.

3. On April 18, 2006, an Application By Debtor And Debtor-in-Possession For Authorization To Retain And Employ Schwartzer & McPherson Law Firm As Counsel Under General Retainer was filed ("Application"). As set forth in the Application, the Firm received a $75,000 retainer from USA Commercial Mortgage Company ("USACM"). As this retainer was received from USACM, the Firm will only use this retainer for services rendered for the benefit of USACM.

4. Prior to the Petition Date, USACM was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. Under prior management, pre-petition irregularities occurred in servicing the loans.

2
Reply Brief in Support of Employment Applications

5. Under their new management since the Petition Date, the Debtors have worked hard to begin analyzing and unraveling the problems the Debtors face arising from past business practices and irregularities. USACM has not originated or brokered any new loans since the Petition Date, and will not do so without Court approval. USACM continues to be the loan servicer for approximately 115 commercial loans having a combined outstanding balance of approximately $962 million (the "Serviced Loans"), nearly all of which are secured by various real estate projects or developments. The loan documents and other records of USACM indicate that there are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" for one or more of the Serviced Loans. Typically, there are dozens or even hundreds of Direct Lenders on a particular loan, with each lender having only a small fractionalized share.

6. Among the Direct Lenders are two of the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds"). Diversified has approximately 1,900 members and Capital First has approximately 1,300 members (collectively, the "Fund Members"). There is substantial overlap among the Direct Lenders and the Fund Members.

7. As of the Petition Date, significant portions of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans"). Further, significant portions of the Serviced Loans were made to borrowers affiliated with the former senior management of the Debtors. Despite the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents, USACM continued to pay regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether or not USACM had actually collected payments from the borrowers. The Debtors have claims against each Direct Lender and Fund Member who received overpayments from USACM or the Funds. No interest payments have been made to the Direct Lenders or the Fund Members since the Petition Date.

8. The Debtors are holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds) in a new, post-

1. petition Debtor-in-Possession DIP Collection Account (the "DIP Collection Account") pursuant to the Cash Motion. No funds from any other sources have been commingled with or placed in the DIP Collection Account since the Petition Date.

9. The Debtors maintain operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative duties. At a hearing on the Cash Motion held May 3, 2006, the Court granted approval of the Debtors' motion requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors pursuant to a revised cash budget through July 16, 2006. This initial time period of cash use was requested by the Debtors in order to enable USACM, which has the right and obligation under its servicing agreements with the Direct Lenders and under Nevada state law, to perform appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the extent and effect of the overpayments, underpayments, and collateral releases.

10. Based upon the foregoing, it is obvious that Mr. Allison is still sorting out all of the Debtors' information and the potential for claims against other debtor entities exists. However, merely because of the existence of these potential claims, the Firm should not be automatically disqualified. As stated, funds will not be used to pay claims or make distributions except as authorized by the Court, and the Debtors will hold the Debtors' funds in the collection account and recommend appropriate distributions upon completion of the work being performed by Mesirow. Mr. Allison has been employed through July 27, 2006. The Firm requests that it be employed as Debtors' counsel for the same period of time.

11. The employment of the Firm is not per se prohibited, and the employment of the Firm would serve to alleviate duplicative efforts and avoid the fees and expenses incurred by five separate sets of counsel. Requiring the Debtors to each have separate counsel would be a waste of the Debtors' scarce resources, be unnecessarily duplicative, and financially disabling. In addition, Tom Allison, the Chief Restructuring Officer of all debtor entities, would be required to also duplicate his time discussing issues with each of the Debtors' counsel and familiarizing them with broad issues relevant to the Debtors as a whole. The Debtors are already concerned by the substantial financial burden arising from the duplicative efforts and fees and costs incurred by the

Reply Brief in Support of Employment Applications

four separate committees that have been appointed. While having separate counsel for each Debtor and Committee may be the easiest approach to take mechanically, it does not provide the best practical solution economically and one that serves the best interests of creditors and investors.

### Memorandum of Law

A bankruptcy court has broad discretion over the appointment of professionals to work on behalf of a bankruptcy estate. See <u>Harold & Williams Dev. Co. v. United States Trustee (In re Harold & Williams Dev. Co.)</u>, 977 F.2d 906, 909 (4th Cir. 1992). However, attorneys for a debtor in possession must "not hold or represent an interest adverse to the estate," and must be "disinterested persons." 11 U.S.C. § 327(a). There is no statutory exception for jointly representing affiliated corporate debtors. However, whether joint representation is appropriate depends upon the fact of the particular cases at issue, and the number of related cases may be so large that "an inflexible rule would be totally unworkable." <u>In re Wheatfield Business Park LLC</u>, 286 B.R. 412, 423 (Bankr. C.D. Cal. 2002).

Some courts strictly construe the disinterestedness requirements of 11 U.S.C. §§ 327, 328(c), and 1107(b) and disqualify counsel based on the potential for conflicts and appearance because dual loyalty may exist.[1] Other courts have disqualified counsel from representing related entities on evidence of actual adverse interests among them.[2] While other courts have required

---

[1] See, e.g., <u>In re Middleton Arms, Ltd. Partnership</u>, 934 F.2d 723 (6th Cir. 1991) (strict construction of disinterestedness; court cannot use § 105 powers to disregard that criterion); <u>In re W.F. Development Corp.</u>, 905 F.2d 883 (5th Cir. 1990) (no hearing necessary as to general partner/limited partner, since always a conflict); <u>In re Pierce</u>, 809 F.2d 1356 (8th Cir. 1987) (only Congress, not courts, can change disinterestedness requirements); <u>In re Ginco, Inc.</u>, 105 B.R. 620 (D. Colo. 1988); In <u>re Amdura Corp.</u>, 121 B.R. 862 (Bankr. D. Colo. 1990) (following *Ginco*); <u>In re Kendavis Industries Intern., Inc.</u>, 91 B.R. 742 (Bankr. N.D. Tex. 1988); <u>In re Glenn Elec. Sales Corp.</u>, 99 B.R. 596 (D.N.J. 1988); <u>In re Star Broadcasting, Inc.</u>, 81 B.R. 835 (Bankr. D.N.J. 1988); <u>In re Al Gelato Continental Desserts, Inc.</u>, 99 B.R. 404 (Bankr. N.D. Ill. 1989); <u>In re B.E.S. Concrete Products, Inc.</u>, 93 B.R. 228 (Bankr. E.D. Cal. 1988); <u>Roger J. Au & Son, Inc. v. Aetna Ins. Co.</u>, 64 B.R. 600 (N.D. Ohio 1986).

[2] <u>In re Interwest Business Equipment, Inc.</u>, 23 F.3d 311 (10th Cir. 1994); <u>In re First Ambulance Center of Tennessee, Inc.</u>, 181 B.R. 323 (Bankr. M.D. Tenn. 1995); <u>In re Green Street</u>, 132 B.R. 460 (Bankr. D. Utah 1991), aff'd, 23 F.3d 311 (10th Cir. 1994) (inter-estate claims created *per se* conflict); <u>In re Roberts</u>, 46 B.R. 815 (Bankr. D. Utah 1985), aff'd in part, modified in part and rev'd in part on other grounds, 75 B.R. 402 (D. Utah 1987) (cannot represent DIPs owing each other); <u>In re Watson Seafood & Poultry Co., Inc.</u>, 40 B.R. 436 (Bankr. E.D.N.C. 1984); see <u>In re N.S. Garrott & Sons</u>, 63 B.R. 189 (Bankr. E.D. Ark. 1986)

5

Reply Brief in Support of Employment Applications

1  such evidence of actual adversity before disqualifying joint counsel, deeming this a more flexible

2  approach to economic and efficient estate administration.³  Ethical rules authorize counsel to

3  represent an organization and its constituents, such as its shareholders, when the representation of

4  one will not adversely affect the other.⁴  According to at least one court, representation of more

5  than one entity is "an ethical trap" where the only truly safe harbor is to represent only a single

---

(describing conflicts resulting from representing related entities, one insolvent and indebted to the other solvent debtor, in Chapter 11 cases).  See also In re Freedom Solar Center, Inc., 776 F.2d 14 (1st Cir. 1985) (attorney disqualified from representing Chapter 7 debtor along with its sole shareholder and another corporation owned by the same shareholder which was purchasing the estate's assets).  One court has adopted a presumption against a single law firm, trustee or creditors' committee in most related cases. In re Wheatfield Business Park LLC, 286 B.R. 412 (Bankr. C.D. Cal. 2002). In re Lee, 94 B.R. 172 (Bankr. C.D. Cal. 1988).

³ See In re Renfrew Center of Florida Inc., 195 B.R. 335 (Bankr. E.D. Pa. 1996)(reading *In re B H & P, Inc.,* 949 F.2d 1300 (3d Cir.1991) as rejecting any *per se* rule and requiring "an objective approach which requires the Court's consideration of factors such as whether there has been complete disclosure of the potential conflict, whether the interest of the related estates are parallel or conflicting and the nature of the inter debtor claims made."); In re Brennan, 187 B.R. 135 (Bankr. D.N.J. 1995); In re Palumbo Family Ltd. Partnership, 182 B.R. 447 (Bankr. E.D. Va. 1995); In re Professional Development Corp., 140 B.R. 467 (W.D. Tenn. 1992); In re Howell, 148 B.R. 269 (Bankr. S.D. Tex. 1992) ("mom and pop" and their corporation); In re Creative Restaurant Management, Inc., 139 B.R. 902 (Bankr. W.D. Mo. 1992); In re Vanderbilt Associates, Ltd., 117 B.R. 678 (D. Utah 1990) (two Chapter 11 limited partnership having a common general partner); In re Global Marine, Inc., 108 B.R. 998 (Bankr. S.D. Tex. 1987), appeal dismissed, 108 B.R. 1007, 1009 (S.D. Tex. 1988) (reading Matter of Consolidated Bancshares, Inc., 785 F.2d 1249 (5th Cir. 1986) as requiring evidence of an actual conflict and finding in this case that debtors functioned as one enterprise, operated with singleness of purpose for benefit of the whole); In re Kelton Motors, Inc., 109 B.R. 641 (Bankr. D. Vt. 1989); In re Huddleston, 120 B.R. 399 (Bankr. E.D. Tex. 1990) (reading In re W.F. Development Corp., 905 F.2d 883 (5th Cir. 1990) as limited to partnership and not requiring disqualification of counsel for a corporate debtor and its shareholder); In re O. P. M. Leasing Services, Inc., 16 B.R. 932 (Bankr. S.D.N.Y. 1982) (same trustee and counsel authorized for parent and wholly owned subsidiary debtors where common goals, despite debt of subsidiary to parent); In re Waterfall Village of Atlanta, Ltd., 103 B.R. 340 (Bankr. N.D. Ga. 1989); In re Tiffany Square Associates, Ltd., 103 B.R. 337 (Bankr. N.D. Ga. 1988); In re Stamford Color Photo, Inc., 98 B.R. 135 (Bankr. D. Conn. 1989); In re Lee Way Holding Co., 102 B.R. 616 (S.D. Ohio 1988); In re Carrousel Motels, Inc., 97 B.R. 898 (Bankr. S.D. Ohio 1989); In re Microwave Products of America, Inc., 104 B.R. 900 (Bankr. W.D. Tenn. 1989); In re O'Connor, 52 B.R. 892 (Bankr. W.D. Okla. 1985); see also In re Martin, 817 F.2d 175 (1st Cir. 1987) (court is to decide whether potential conflict carries sufficient threat of material adversity to warrant prophylactic action); In re International Oil Co., 427 F.2d 186 (2d Cir. 1970); In re Guy Apple Masonry Contractor, Inc., 45 B.R. 160 (Bankr. D. Ariz. 1984); see also In re Harold & Williams Development Co., 977 F.2d 906 (4th Cir. 1992) (court should be flexible in exercising discretion to the extent not restricted by absolute Code provisions).

⁴ Model Rules 1.13, 1.7. In dealing with the entity's constituents, counsel is to explain the identity of his or her client, the organization, when it is apparent that the interests are adverse. Model Rule 1.13(d).

6

Reply Brief in Support of Employment Applications

client in bankruptcy.[5]  Courts have also addressed concerns that joint counsel for related debtors might not vigorously pursue claims of one against the other by hiring special counsel to evaluate and pursue inter-estate claims, or employing an examiner to evaluate them.[6]

At the time of employment, the Firm disclosed its belief that there were no conflicts of interest based upon an investigation of the facts it had at the time.  However, since this time, these potential conflicts have been disclosed by Debtors' counsel in several pleadings.  The Firm requests that it be allowed to continue to represent all of the Debtors for the same period of employment of Tom Allison, July 27, 2006, the Chief Restructuring Officer.  During this time, Mr. Allison can work with one set of attorneys for all Debtors while sorting out the most pressing affairs of these Debtors and while sorting out any specific conflicts of interest among the Debtors.  This is the most effective and efficient manner in handling the issues in these cases.  Further, as necessary, any conflicts of issue that must be addressed during this time frame can be referred to special counsel.

The Firm believes that its employment under these terms is appropriate in these circumstances due to the expense involved in hiring new general counsel for each Debtor compared to the benefits.  Hiring separate counsel for each of the Debtors will be much more expensive due to the likely duplication of legal services and fees and the additional costs (notably two of the Debtors do not have funds to pay attorneys' fees and costs).  In addition, there is likely to be a significant interruption in the orderly administration of these cases.  Further, there must be consideration given to the ultimate goal of bankruptcy, one of which is to maximize the distribution to all creditors as quickly as possible.  To determine otherwise, and to rigidly follow cases disqualifying counsel due to potential conflicts of interest, serves no purpose for creditors

---

[5] In re Grabill Corp., 113 B.R. 966 (Bankr. N.D. Ill. 1990), decision aff'd, 135 B.R. 835 (N.D. Ill. 1991), aff'd, 983 F.2d 773 (7th Cir. 1993).

[6] In re Global Marine, Inc., 108 B.R. 998 (Bankr. S.D. Tex. 1987), appeal dismissed, 108 B.R. 1007, 1009 (S.D. Tex. 1988); In re Chicago South Shore and South Bend R.R., 101 B.R. 10 (Bankr. N.D. Ill. 1989); In re Hurst Lincoln Mercury, Inc., 80 B.R. 894 (Bankr. S.D. Ohio 1987); In re O'Connor, 52 B.R. 892 (Bankr. W.D. Okla. 1985); but see In re Amdura Corp., 121 B.R. 862 (Bankr. D. Colo. 1990) (relationship of firm to party adverse to debtor, and adverse party's role in the case, may be so important special counsel cannot relieve the problem).

7
Reply Brief in Support of Employment Applications

and will be financially disastrous. This employment serves as the most cost effective and efficient means of administering these cases while arranging for any potential conflict issues.

## CONCLUSION

Based upon the foregoing, the Firm respectfully requests that this Court determine that the Firm be allowed to continue to represent all of the Debtors until July 27, 2006.

Respectfully submitted this 17th day of May, 2006.

>Annette W. Jarvis, Utah Bar No. 1649
>RAY QUINNEY & NEBEKER P.C.
>36 South State Street, Suite 1400
>P.O. Box 45385
>Salt Lake City, Utah 84145-0385
>Email: ajarvis@rqn.com
>
>and
>
>
>/s/      JEANETTE E. MCPHERSON
>Lenard E. Schwartzer, Nevada Bar No. 0399
>Jeanette E. McPherson, Nevada Bar No. 5423
>SCHWARTZER & MCPHERSON LAW FIRM
>2850 South Jones Boulevard, Suite 1
>Las Vegas, Nevada   89146
>Email:  www.lawyers.com/schwartzermcpherson