Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Proposed Attorneys for Debtors and Debtors-in-Possession

E-FILED ON MAY 17, 2006

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                              Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                              Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                              Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                              Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                              Debtor. | **ERRATA RE NOTICE OF COMMITMENT LETTER FOR DIP FINANCING  AND RE SECOND SUPPLEMENTAL DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF DEBTORS' MOTIONS [AFFECTS ALL DEBTORS]** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date:  May 18, 2006<br>Time:  9:30 a.m. |

1

On May 16, 2006, USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated debtors, which are USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC ("Diversified"), and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Debtors"), filed a "Notice of Commitment Letter for DIP Financing" as Docket No. 254. Exhibit "1" to the "Notice of Commitment Letter for DIP Financing" is a copy of a Commitment Letter. On May 17, 2006, the Debtors filed the Second Supplemental Declaration of Thomas J. Allison in Support of Debtors' Motions" as Docket No. 267. Exhibit "A" to the Second Supplemental Declaration of Thomas J. Allison is also a copy of a Commitment Letter. Notice is hereby given that the version of the Commitment Letter that was attached to these two pleadings (Docket No. 254 and Docket No. 267) is not the final version of the Commitment Letter. The Commitment Letter that is attached as Exhibit "A" to this Notice of Errata is the final correct version of the Commitment Letter, and should be substituted for the incorrect version of the Commitment Letter that was attached to Docket No. 254 and Docket No. 267.

Respectfully submitted on May 17, 2006.

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Proposed Attorneys for Debtor
and Debtor-in-Possession

# EXHIBIT "A"

Fortress Credit Corp
1345 Avenue of the Americas
46th Floor
New York, New York 10105
(212)798-6100
Facsimile: (212) 798-6099
Attention: Constantine Michael Dakolias and Joseph Tansey

## COMMITMENT LETTER
### May 12, 2006

**USA Commercial Mortgage Company, et al – Debtor-in-Possession Credit Facility**

Reference is made to that certain Term Sheet dated as of April 21, 2006, executed by USA Commercial Mortgage Company; USA Capital Realty Advisors, LLC; USA Securities, LLC; USA Capital First Trust Deed Funding, LLC, and USA Capital Diversified Trust Deed Funding, LLC, all jointly and severally, as Debtors-in-Possession in Case Nos. BK-S-06-10725, BK-S-06-10726, BK-S-06-10727, BK-S-06-10728 and BK-S-06-10729 (joint administration proposed under Case No. BK-S-06-10725), filed April 13, 2006, in the United States Bankruptcy Court for the District of Nevada (Las Vegas Division) executed by Borrowers on May 2, 2006, and by Fortress Credit Corp. on May 3, 2006 (the "Term Sheet"). A copy of the Term Sheet executed by Fortress Credit Corp and by Borrowers is attached to this Commitment Letter and is incorporated and made a part hereof, as though set forth in full herein. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Term Sheet.

As you know, Fortress has commenced its due diligence activities notwithstanding that Borrowers have not yet paid the Initial Deposit. Such activities have including reviewing Borrowers' files in Las Vegas, interviewing certain of Borrowers' employees and site visits to ten (10) properties representing loans with aggregate stated unpaid principal balances of approximately $107 million. Based upon such preliminary due diligence activities, and subject to the terms and conditions set forth herein and in the Term Sheet, DIP Lenders are pleased to issue this Commitment to make the DIP Revolving Loan described in the Term Sheet, as contemplated by the section of the Term Sheet captioned "Commitment" appearing at page 11 of the Term Sheet. Accordingly, the Term Sheet is now a Commitment to make the DIP Loan subject to the occurrence and satisfaction of the conditions precedent set forth therein, excluding from said conditions precedent item 12 ("such other conditions as Fortress may determine").

We note that because of the timing of the hearings as ordered by the Bankruptcy Court, the following dates are now deemed inserted in the Term Sheet for purposes of this Commitment.

| Term Sheet Caption: | Date: |
|---|---|
| **Closing Date** | July 7, 2006 |

**Other Terms and Conditions**

LA1 785309v.2

**(Condition #2)**

| | |
|---|---|
| **Approval of Term Sheet** | June 5, 2006 |
| **Approval of Final Financing Order** | June 23, 2006 |
| **Closing** | July 7, 2006 |
| **Final Financing Order** | June 23, 2006 |
| **Exclusivity** | 10 days following Bankruptcy Court Approval of Term Sheet |
| **Termination** | June 5, 2006 |
| **(Termination Date and Bankruptcy Court Approval of Term Sheet and Commitment Letter)** | |
| **Acceptance** | May 19, 2006 |

This Commitment will become effective upon your acceptance hereof, Bankruptcy Court approval of your payment to Fortress of the Initial Deposit, and actual payment of the Initial Deposit, all on or before May 19, 2006. If such acceptance is not received, Bankruptcy Court approval of payment of the Initial Deposit is not obtained, or payment of the Initial Deposit is not effected, by the close of business on May 19, 2006, the Term Sheet will terminate and this Commitment Letter will be of no further force or effect.

Very truly yours,

Fortress Credit Corp.

By: _____
  Constantine Michael Dakolias
Its: _____
  Chief Credit Officer

**AGREED AND ACCEPTED AS OF THIS ____ DAY OF MAY, 2006:**

USA COMMERCIAL MORTGAGE COMPANY, LLC

USA SECURITIES, LLC

USA CAPITAL REALTY ADVISORS, LLC

USA CAPITAL FIRST TRUST DEED FUNDING, LLC

USA CAPITAL DIVERSIFIED TRUST DEED FUNDING, LLC

By: _____
    Name: Thomas J. Allison
    Title: Chief Executive Officer of all such entities

<u>*Confidential -- For Discussion Purposes Only – Not a Commitment to Lend*</u>

**Fortress Credit Corp**
1345 Avenue of the Americas
46th Floor
New York, New York 10105
(212)798-6100
Facsimile: (212) 798-6099
Attention: Constantine Michael Dakolias and Joseph Tansey

**TERM SHEET**

**April 24, 2006**

**USA Commercial Mortgage Company, et al – Debtor-in-Possession Credit Facility**

*The terms and conditions summarized below do not represent a financing commitment from Fortress. Such terms and conditions are intended as a summary outline of a commitment which is conditioned in all respects upon completion of due diligence, negotiation of definitive documentation and final approval by Fortress, and do not purport to summarize all of the conditions, covenants, representations, warranties and other provisions which would be contained in definitive documentation satisfactory in form and substance to Fortress. This Term Sheet is not a commitment to make a loan and Fortress shall not be under any obligation to do so. Rather, upon acceptance of this Term Sheet and payment of the required deposit, this Term Sheet shall evidence the intention of Fortress to commence its due diligence and its internal financing approval process. Any provision of financial accommodations under such debtor-in-possession credit facility shall be further subject to the terms and conditions as set forth below, and Bankruptcy Court approval.*

I. **General Terms**

| | |
|---|---|
| **Borrowers:** | USA Commercial Mortgage Company; USA Capital Realty Advisors, LLC; USA Securities, LLC; USA Capital First Trust Deed Funding, LLC, and USA Capital Diversified Trust Deed Funding, LLC, all jointly and severally, as Debtors-in-Possession in Case Nos. BK-S-06-10725, BK-S-06-10726, BK-S-06-10727, BK-S-06-10728 and BK-S-06-10729 (joint administration proposed under Case No. BK-S-06-10725), filed April 13, 2006, in the United States Bankruptcy Court for the District of Nevada (Las Vegas Division). |
| **DIP Lender(s):** | Fortress Credit Corp. and its affiliates, designees and participants (collectively, "<u>Fortress</u>"), and third parties reasonably acceptable to Fortress (collectively with Fortress, the "<u>DIP Lenders</u>"). |
| **DIP Agent:** | Fortress, in such capacity as DIP Agent. |

LA1 777500v.4

| | |
|---|---|
| **DIP Revolving Loan:** | DIP Lenders to provide Borrowers with a $25,000,000 revolving credit facility (the "<u>DIP Loan</u>") as limited by the Collateral Maintenance Covenants (as defined below). |
| **Minimum Advance:** | $1,000,000. |
| **Maximum Committed Amount:** | $25,000.000. |
| **Use of Proceeds:** | To pay (i) operating expenses, limited capital expenditures and other amounts for general corporate and ordinary course purposes of the Borrowers as approved by DIP Agent and DIP Lenders and (ii) such other administrative payments as may be authorized under the Final Financing Order (as defined below), including ongoing administrative expenses associated with the chapter 11 case, all as authorized by the DIP Loan. |
| **Operating Budget:** | The operating budget, subject to the approval of the DIP Agent and the DIP Lenders, to consist of the Borrowers' estimated projected cash flow position on a rolling 13-week basis, commencing as of the Closing of the DIP Loan (the "<u>Budget</u>") and to include, on a line-item basis, projected weekly cash receipts and expenditures and a weekly reconciliation report which compares the actual cash flow results (receipts and disbursements) against the prior week's cash flow projections (receipts and disbursements, indicating the cumulative percentage variance, if any, of actual results versus projections for such week as set forth therein, together with management's explanation for such variance, such variance not to exceed 5% on a cumulative basis). Upon approval of DIP Agent and the DIP Lenders to the Budget, any subsequent changes to the Budget may be made only on approval of the DIP Agent and DIP Lenders. Budget to include monthly reimbursement of the reasonable fees and expenses of the professionals of DIP Agent and DIP Lenders. |
| **Maturity, Extension, Fee:** One Extension | The DIP Loan to be repaid in full in immediately available funds on the Maturity Date, to be defined as the earlier of (i) twelve (12) months after the initial loan closing, subject to one six-month extension upon payment of an Extension Fee in an amount equal to one percent of the Maximum Committed Amount, and subject to satisfaction of customary conditions for the extension of a revolving credit facility of like size and nature to the DIP Loan, (ii) conversion of any of the Borrowers' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, and (iii) confirmation of Borrowers' plan of reorganization and Borrowers' emergence from Chapter 11 on the effective date of such plan (the "<u>Maturity Date</u>"). |

2

| | |
|---|---|
| **Interest:** | Interest shall be payable in cash on the outstanding amount of the DIP Loan monthly in arrears on the first business day of each month at a rate equal to LIBOR + 3.50% per annum. |
| **Default Interest:** | Upon the occurrence and during the continuance of any event of default under the DIP Loan and at the election of the DIP Lenders, interest to be payable on the outstanding amount of the DIP Loan at 3.0% above the then applicable interest rate. |

| | |
|---|---|
| **Closing Date:** | The date of the closing of the DIP Loan is expected to be 30 days after the execution of this Term Sheet, but in no event shall such closing occur later than [*****], 2006, or such other date as Borrowers and DIP Lenders may agree in writing (the "<u>Closing</u>" or "<u>Closing Date</u>"). |
| **Origination Fee:** | Borrowers shall authorize DIP Lenders to withhold from the original proceeds of the DIP Loan a non-refundable origination fee discount of 1.50% of the Maximum Committed Amount, which shall be fully earned at the initial loan closing. |
| **Unused Facility Fee:** | 50 basis points (0.50%) of Maximum Committed Amount per annum on the unused amount of the Maximum Committed Amount payable monthly in arrears during the term of the DIP Loan based on the average outstanding balance of the DIP Loan during the preceding month. |
| **Collateral Management Fee:** | $10,000 per calendar quarter or portion thereof, payable to DIP Agent on Closing Date and on first day of each calendar quarter thereafter until the DIP Loan is fully repaid. |
| **Nature of Fees:** | All fees shall be paid in immediately available funds on their respective due dates and shall be fully earned when due and shall be non-refundable when paid. |
| **ROFO on Future Funding Obligations, Additional DIP Loans:** | Fortress to have a ten (10) business day right of first offer on all of Borrowers' future funding obligations with respect to existing loans as of the Petition Date (the aggregate amount of which Borrowers have identified as being $68,106,500), and Fortress will consider funding such future advances on a loan by loan basis, in Fortress' sole and absolute discretion and subject in each instance to Bankruptcy Court approval (each such funding by Fortress, an "<u>Additional DIP Loan</u>"). It is understood that, pursuant to Bankruptcy Court order, each Additional DIP Loan will prime prior advances under the existing loan or loans, but will not participate in collateral for the DIP Loan. The Additional DIP Loans will be term loans, with expected origination fees of between one and two percent of face amount, interest rates of between LIBOR plus 3.00% and LIBOR plus 10.00%, depending on the particular risks involved, with all of DIP Lenders' expenses to be reimbursed, and other terms and conditions as customary for loans of similar risk profile, amount and tenor. |

II. **Additional Terms**

| | |
|---|---|
| **Amortization:** | None – aggregate principal amount due on Maturity Date. |
| **Optional Prepayment:** | Borrowers to have the right to voluntarily repay any or all advances under the DIP Loan at any time without premium or penalty in |

4

LA1 777500v.4

|   |   |
|---|---|
|   | minimum increments to be agreed upon, but subject to payment of the Unused Facility Fee for the balance of the remaining stated term of the DIP Loan. Prepayment of Additional DIP Loans shall be in accordance with their respective terms and may include customary make-whole provisions. |
| **Mandatory Prepayments:** | Mandatory prepayments of the DIP Loan shall be made upon the occurrence of certain events (e.g., asset dispositions and insurance claims), equity issuances, changes of control and other circumstances to be negotiated and subject to approval of the DIP Agent and DIP Lenders. |
| **Security:** | To secure all of the obligations under the DIP Loan, DIP Agent, for the benefit of the DIP Lenders, to receive, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the Final Financing Order and the definitive DIP Loan documents, valid, enforceable, and fully perfected security interests in and liens upon all prepetition and postpetition assets of the Borrowers, whether now existing or hereafter acquired or arising (collectively, the "DIP Collateral"), which liens shall have the priority set forth below. DIP Collateral to include any proceeds from avoidance actions recovered or voided under chapter 5 of the Bankruptcy Code). DIP Collateral subject to carve-out of customary administrative expenses expressly approved by the Bankruptcy Court, in amounts to be negotiated. |
|   | Liens and security interests with respect to DIP Collateral not to be subject to challenge and to attach and become valid and perfected immediately upon entry of the Final Financing Order (as defined below) without the requirement of any further action by DIP Agent or DIP Lenders. DIP Collateral to be free and clear of other liens, claims and encumbrances, except valid, perfected, enforceable and unavoidable liens in existence as of the petition date, if any, and other permitted liens and encumbrances acceptable to DIP Agent and DIP Lenders. |
|   | All obligations of Borrowers under and with respect to the DIP Loan (the "DIP Obligations") to enjoy superpriority administrative expense status under Section 364(c)(1) with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 or any other provisions of the Bankruptcy Code, subject to the carve-out as authorized and approved by DIP Agent and the DIP Lenders under the Budget. |
| **Representations and Warranties:** | The documentation for the DIP Loan and related collateral matters shall contain such representations and warranties as are customary |

5

|  |  |
|---|---|
|  | for DIP loan transactions and investments of a similar size and nature, including but not limited to representations regarding due organization, enforceability, litigation and claims, environmental, taxes, other debts, leases and material contracts, affiliate transactions, compliance with laws, and no brokers. |
| **Financial Covenants:** | The documentation for the DIP Loan shall contain customary financial covenants for DIP loan transactions and investments of a similar size and nature and will be set to a discount (in an amount to be negotiated and acceptable to DIP Agent and DIP Lenders) of Borrowers' monthly cash flow projections submitted to the Bankruptcy Court. |
| **Collateral Maintenance Covenants:** | Borrowers shall at all times maintain a minimum of $1,000,000 in cash. |
| **Negative Covenants:** | The documentation for the DIP Loan shall contain negative covenants of Borrowers customary for loan transactions and investments of a similar size and nature, including, but not limited to, the following: |

1. No debt other than the DIP Loan (except as may be expressly permitted in the DIP Loan Agreement);

2. No liens except existing liens acceptable to Fortress and the liens securing the DIP Loan;

3. No changes in the operations of Borrowers;

4. No capital expenditures above specified levels;

5. No transactions with or payments to affiliates, subsidiaries, equity owners or related parties;

6. No changes in structure or jurisdiction of organization;

7. No new loans made by Borrowers; and

8. No mergers or acquisitions or sales of assets outside the ordinary course of business.

**Affirmative Covenants:** The documentation for the DIP Loan shall include affirmative covenants of Borrowers, customary for loan transactions and investments of a similar size and nature including, but not limited to, covenants requiring Borrowers to:

1. In addition to updating the Budget on a weekly basis, provide monthly financial statements, monthly compliance

6

|           | certificates, annual audits, projections, copies of material agency and litigation filings, copies of all pleadings and documents filed in the bankruptcy case as well as other information that DIP Agent or DIP Lenders may request from time to time; |

2. Maintain adequate hazard, property & casualty, and business interruption insurance;

3. Protect its intellectual property; and

4. Provide DIP Lenders access to Borrowers' information.

**Defaults:** The DIP Loan shall include Events of Default customary for DIP loan transactions of a similar size and nature, including, but not limited to:

1. Failure to pay interest and principal when due with respect to any portion of the DIP Loan;

2. Failure to comply with or observe covenants, including compliance with the Budget taking into account authorized variances;

3. Default under other debt (as may be permitted under the DIP Loan Agreement);

4. Material Adverse Change;

5. Misrepresentation or breach of warranty;

6. Dismissal of any of the Borrowers' bankruptcy cases, conversion of any of the Borrowers' bankruptcy cases to a case under chapter 7 of the Bankruptcy Code, or the appointment of a trustee or examiner in any of the Borrowers' bankruptcy cases with any powers to operate or manage the financial affairs of one or more Borrowers.

7. The Bankruptcy Court enters a final order that in any way modifies the Final Financing Order without consent of DIP Agent and the DIP Lenders, or the Final Financing Order ceases to be in full force and effect.

8. Borrowers file a motion or other pleading with the Bankruptcy Court seeking to obtain additional financing *pari passu* or senior to the DIP Loan.

9. The entry of any order of the Bankruptcy Court confirming

7

LA1 777500v.4

       any plan of reorganization that does not contain a provision for termination of the DIP Loan and repayment in full in cash of all of the DIP Obligations under the DIP Loan on or before the effective date of such plan.

10. Such other defaults as are customary for loan transactions and investments of a similar size and nature.

The DIP Loan and each DIP Lender's interest therein shall be freely transferable by the DIP Lenders to their affiliates and to other financial institutions.

**Remedies on Default:** Final Financing Order to provide that, upon the occurrence and during the continuation of an Event of Default under the DIP Loan, the DIP Agent, at the direction of the DIP Lenders, may declare the principal of and accrued interest on the outstanding borrowings to be immediately due and payable along with acceleration of the other DIP Obligations and terminate, as applicable, any further commitment to lend to the Borrowers.

III. **Other Terms**

**Conditions Precedent:** The Closing shall be subject to various conditions precedent customary for loan transactions and investments of a similar size and nature, including but not limited to:

1. Full, immediate and complete access to all of Borrowers' books and records, including collateral files;

2. Satisfactory completion of legal and collateral due diligence and transaction structuring, including due diligence concerning the Borrowers' bankruptcy process and the receipt of all required court approvals for the DIP Loan, including approval of this Term Sheet by no later than May [*****], 2006, approval of the Final Financing Order by no later than [*****], 2006, and closing of the transactions contemplated thereby by no later than [*****], 2006;

3. Satisfactory completion of business due diligence, including but not limited to (i) a review of Borrowers' books and records by an independent third party, retained by DIP Agent and acceptable to Borrowers, (ii) review of Borrowers' material agreements, including but not limited to collective bargaining and pension agreements, (iii) review of Borrowers' cash flow projections and the underlying assumptions and (iv) review of mortgage collateral, including without limitation status as valid perfected

8

      mortgage liens, lender's right of access to underlying properties pursuant to the applicable loan documents in order to verify, among other things, environmental and structural condition, and verification of outstanding principal balance of loans;

4. Execution of definitive agreements, instruments, mortgages, and documents related to the DIP Loan (including without limitation the Final Financing Order), each satisfactory in form and substance to Fortress in its sole and absolute discretion, including a satisfactory cash management system;

5. The absence of any material adverse change in the business or financial condition of Borrowers or the capital markets from the date of this DIP Term Sheet until the Closing;

6. Satisfactory completion of the investment committee approval process of Fortress;

7. Satisfactory security in all relevant jurisdictions;

8. Completion, receipt and review by the DIP Agent of all lien search reports and lien perfection documentation as may be satisfactory to the DIP Agent with respect to the DIP Collateral and satisfactory perfection of Lender's security interest in the underlying collateral supporting the DIP Loan, including cash, marketable securities, litigation claims, mortgage collateral and real estate;

9. Receipt of satisfactory legal opinions;

10. Reimbursement in full in cash of all of DIP Lenders' fees, costs and expenses;

11. No litigation commenced which has not been stayed by the Bankruptcy Court and which, if successful, would have a material adverse impact on the Borrowers, their business or ability to repay the DIP Loan, or which would challenge the transactions under consideration; and

12. Such other conditions as Fortress may determine.

**Final Financing Order:**    A financing order in form and substance acceptable to DIP Agent and DIP Lenders to be entered on the docket of the Bankruptcy Court by no later than May [*****,] 2006 ("Final Financing Order"), such order to include, without limitation, provisions (i) modifying the automatic stay to the extent necessary to permit or

LA1 777500v.4

|  |  |
|---|---|
|  | effectuate the terms of the Final Financing Order and DIP Loan documents, (ii) providing for automatic relief from such stay to permit the enforcement of DIP Agent's and the DIP Lenders' remedies under the DIP Loan, (iii) prohibiting the incurrence of debt with priority equal to or greater than that of the DIP Agent or the DIP Lenders, and (iv) prohibiting any granting or imposition of liens other than the permitted liens and other liens acceptable to DIP Agent. |
| **Expenses:** | An initial expense deposit of $150,000 (the "Initial Deposit") in cash shall be paid to Fortress upon execution hereof in accordance with the approval procedures set forth below (the "Deposit"). Such Deposit will be applied by Fortress toward completion of due diligence and other matters with respect to this transaction, including, but not limited to legal (including reasonable fees and expenses of Sidley Austin LLP, counsel to the DIP Agent), compliance audits, appraisals, consulting, and travel expenses, whether or not the transactions contemplated herein are consummated. In the event that the costs, fees and expenses incurred by Fortress in connection with its due diligence and any other matters relating to this transaction exceed the amount of the Deposit, the Borrowers hereby agree to promptly reimburse Fortress for such reasonable costs, fees and expenses in the amount of such excess, whether or not the transactions contemplated herein shall have been, or are, consummated (and Fortress may request additional expense advances hereunder). If Fortress concludes for any reason (in its sole and absolute discretion) not to proceed with the transactions contemplated hereby, Fortress will notify Borrowers and will promptly return the balance of the Deposit by Borrowers, after deducting all costs and expenses (including without limitation fees and costs of consultants and attorneys involved in the drafting of this proposed Term Sheet, long form documentation and the due diligence process actually incurred by Fortress in connection with its review and documentation of this transaction). The Deposit will not be segregated and may be commingled with other funds of Fortress, and Borrowers will not be entitled to receive interest on the Deposit if returned to Borrowers. |
| **Exclusivity:** | For a period of ten (10) days following acceptance of this Term Sheet, neither Borrowers nor any affiliate shall (nor will they permit its officers, directors, agents, brokers, representatives or affiliates to), directly or indirectly, solicit, initiate, engage in or encourage any negotiations or discussions with respect to any offer or proposal to make an investment, loan or other commitment of capital for Borrowers with the potential effect of reducing or |

LA1 777500v.4

eliminating the financing contemplated by this Term Sheet.

**Procedural Terms:** This Term Sheet is not a commitment to make a loan or an investment and Fortress shall not be under any obligation to do so. Rather, upon acceptance of this Term Sheet and payment of the required Deposit, this Term Sheet shall evidence the intention of Fortress to commence its due diligence and its internal financing approval process, and shall evidence Borrowers' agreement to pay and reimburse Fortress as provided herein, whether or not any financing is ultimately consummated.

**Commitment:** Within ten (10) days of the execution of this Term Sheet by Borrowers and Fortress, and Borrowers having provided Fortress with immediate and full access to all bankruptcy pleadings and documentation and evidence of outstanding principal balance of selected major loans to Fortress' satisfaction in its sole and absolute discretion, Fortress will either terminate this Term Sheet or advise Borrowers in writing that this Term Sheet is now a Commitment to make the DIP Loan subject to the occurrence and satisfaction of each of the Conditions Precedent set forth above.

**Termination:** Except for the obligation of Borrowers to reimburse Fortress for its fees and expenses, indemnification and the obligations of Borrowers under the exclusivity provisions above (all of which obligations shall survive the expiration of this Term Sheet), this Term Sheet automatically shall expire and be of no further force or effect as of May [*****], 2006 (the "Termination Date") or upon the occurrence of any of the following events:

1. Borrowers fail timely to obtain Bankruptcy Court approval to, or otherwise execute this Term Sheet by May [*****], 2006;

2. Prior to any such acceptance, Fortress notifies Borrowers that this Term Sheet is withdrawn;

3. Fortress notifies Borrowers that the results of its due diligence are unsatisfactory for any reason; or

4. Fortress notifies Borrowers that it has decided not to proceed with the transaction for any reason in its sole and absolute discretion.

**Indemnification:** Borrowers hereby agree to indemnify and hold harmless Fortress and each of the DIP Lenders and each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors and representatives (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities and

11

expenses (including, without limitation, fees and disbursements of counsel and other authorized agents and representatives), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), arising out of or in connection with or by reason of the transactions contemplated hereby, except to the extent arising from an Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by Borrowers, any of their respective directors, security holders or creditors (including any official committee), an Indemnified Party or any other person or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to Borrowers, any of their affiliates or any of their respective security holders or creditors for or in connection with the transactions contemplated hereby, except for direct damages (as opposed to special, indirect, consequential or punitive damages, including, without limitation, any loss of profits, business or anticipated savings) determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

**Confidentiality:** Except as required by law or in connection with the implementation of this Term Sheet, the terms hereof will be kept strictly confidential by the Borrowers and may only be disclosed to the Borrowers' affiliates, legal counsel, financial advisors, financing sources and consultants who have been informed of, and agree to abide by, the confidentiality of this Term Sheet. To the extent that any disclosure becomes legally required, Fortress shall be notified promptly and before the required disclosure is made.

**Governing Law, Waiver of Jury Trial:** This Term Sheet shall be governed by the laws and rules applicable to Borrowers' federal bankruptcy proceedings, including the United States Bankruptcy Code (11 U.S.C. § 101 et seq.), the Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Nevada. The definitive transaction documents will be governed by such law and the laws of the State of New York applicable to contracts made and to be performed in that State. **EACH PARTY HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY OR ANY CLAIM OR CAUSE OF ACTION ARISING IN CONNECTION WITH THIS TERM**

        SHEET, THE DIP LOAN OR ANY OTHER RELATED FINANCING, WHETHER ARISING IN CONTRACT, TORT OR OTHERWISE.

**Acceptance:** Borrowers shall promptly seek Bankruptcy Court approval to execute this Term Sheet and to become bound by the terms hereof (including provisions for expense reimbursement), such Bankruptcy Court order to be signed, filed and entered on the docket within fifteen (15) days of the date hereof, and in any event by no later than May [*****], 2006. Upon entry of an order approving Borrowers' execution of this Term Sheet, the expense reimbursement advance shall be promptly wired to Fortress upon further instruction. If such Bankruptcy Court order is not entered on or before such date, unless such date is extended by Fortress in writing in its sole and absolute discretion, this Term Sheet shall automatically terminate and be without further effect.

If Borrowers determine in good faith that Bankruptcy Court approval is not required to execute this Term Sheet, then with the consent of DIP Agent (such consent to be granted or withheld in DIP Agent's sole and absolute discretion), Borrowers shall accept such terms by returning a fully executed copy hereof by facsimile to (212) 798-6099, attention Constantine Michael Dakolias and Joseph Tansey, email addresses ddakolias@fortressinv.com, and jtansey@fortressinv.com, c/o Fortress Credit Corp, with a copy to counsel for Fortress, attention Joel G. Samuels and Marc I. Hayutin, facsimile number (213) 896-6600, e-mail addresses jsamuels@sidley.com, and mhayutin@sidley.com, and wiring the expense advance to Fortress's account pursuant to further instruction. All notices, notifications, amendments, extensions and waivers hereunder must be signed and in writing to be effective. The provisions herein under the headings Indemnification, Governing Law, Exclusivity, Confidentiality, Procedural Terms and Expenses are binding and shall survive the termination of this Term Sheet.

**Miscellaneous:** This summary of terms and conditions does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions which would be contained in definitive credit documentation for the DIP Loan contemplated hereby.

13

**AGREED AND ACCEPTED:**

FORTRESS CREDIT CORP.

By: _____
Name: Constantine Michael Dakolias
Title: Chief Credit Officer

USA COMMERCIAL MORTGAGE COMPANY, LLC

USA SECURITIES, LLC

USA CAPITAL REALTY ADVISORS, LLC

USA CAPITAL FIRST TRUST DEED FUNDING, LLC

USA CAPITAL DIVERSIFIED TRUST DEED FUNDING, LLC

By: _____
Name: Thomas J. Allison
Title: Chief Executive Officer of all such entities

14

LA1 777500v.4