Robert C. LePome, Esq.                                          E-Filed May 18, 2006
330 S. Third St. #1100B
Las Vegas, NV 89101
(702) 385-5509
Nevada Bar #1980
Attorney for Interested Parties

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In re: | ) | BK-S-06-10725-LBR |
|---|---|---|
|  | ) | Chapter 11 |
| USA COMMERCIAL MORTGAGE COMPANY | ) |  |
| Debtor | ) |  |
| In re: | ) | BK-S-06-10726-LBR |
|  | ) | Chapter 11 |
| USA CAPITAL REALTY ADVISORS, LLC, | ) |  |
| Debtor | ) |  |
| In re: | ) | BK-S-06-10727-LBR |
|  | ) | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | ) |  |
| Debtor | ) |  |
| In re: | ) | BK-S-06-10728-LBR |
|  | ) | Chapter 11 |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | ) |  |
| Debtor | ) |  |
| In re: | ) | BK-S-06-10729-LBR |
|  | ) | Chapter 11 |
| USA SECURITIES, LLC, | ) |  |
| Debtor | ) |  |
| Affects: | ) |  |
| ■ All Debtors | ) |  |
| ☐ USA Commercial Mortgage Co. | ) |  |
| ☐ USA Securities, LLC | ) |  |
| ☐ USA Capital Realty Advisors, LLC | ) | DATE:    6-5-06 |
| ☐ USA Capital Diversified Trust Deed | ) | TIME:    9:30 AM |
| ☐ USA First Trust Deed Fund, LLC | ) |  |
|  | ) |  |

OPPOSITION TO DEBTOR'S MOTION TO TEMPORARILY HOLD FUNDS PENDING A DETERMINATION OF THE PROPER RECIPIENTS, AND MEMORANDUM OF POINTS AND AUTHORITIES (AFFECTS ALL DEBTORS)

COME NOW STANLEY ALEXANDER TRUST; DRS. STANLEY ALEXANDER and FLORENCE ALEXANDER; PATRICK DAVIS; SUSAN DAVIS; FIRST SAVINGS BANK, CUSTODIAN FOR PATRICK DAVIS IRA; GRABLE B. RONNING; THE WILD WATER LIMITED PARTNERSHIP; CROSBIE B. RONNING; and THE BOSWORTH 1988 FAMILY TRUST; SPECTRUM CAPITAL, LLC, STEPHEN PHILLIPS; FRANCES PHILLIPS; PHILLIPS FAMILY TRUST DATED OCTOBER 24, 1989; MATTHEW MOLITCH; MARILYN MOLITCH; MOLITCH 97 TRUST; NANCY GOLDEN; CHURCH OF THE MOVEMENT OF SPIRITUAL INNER AWARENESS; MARK R. CAMPBELL; HANS J. PRAKELT; DR. CAROLE TALAN; RICHARD WILLIAMS; NORMA DEULL; MARTIN LEAF; MARK OLDS; SALLY OLDS; JEROME BLOCK; CHARMA BLOCK, WOLF DIETER VOSS; CLAUDIA VOSS; VOSS FAMILY TRUST; ROBIN B. GRAHAM, CELIA ALLEN-GRAHAM; GRAHAM FAMILY TRUST DATED 10/26/78; PAMELA MARTON; JAMES DICKINSON; JEFF KARR; PHYLLIS KARR; PATRICIA A. PONTAK; DARRELL M. WONG; PONTAK WONG REVOCABLE TRUST DATED JAN. 19, 2004; JAMES R. CIELEN; and JAMES R. CIELEN, IRA; by and through their attorney, ROBERT C. LEPOME, ESQ., and hereby oppose the Debtor's Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients, and Memorandum of Points and Authorities (Affects all Debtors).

. . .

. . .

This Opposition is based upon the Points and Authorities attached hereto.

Robert C. LePome, Esq.

/s/ Robert C. LePome, Esq
Robert C. LePome, Esq.
330 S. Third St. #1100B
Las Vegas, NV 89101
(702) 385-5509
Nevada Bar #1980
Attorney for Interest Parties

POINTS AND AUTHORITIES

The Law

In support of its Motion to Temporally hold Funds of the Direct Investors, Debtor cites the case of In Re Builder's Capital and Services, Inc., 317 B.R. 603 (Bkrtcy. W.D.N.Y. 2004).

Builder's Capital acted like a bank. All depositor funds were pooled and used for operating expenses and loans. Banks, of course, are regulated by the Federal Deposit Insurance Corporation, and to a lessor extent by the Comptroller of the Currency. One of the first things that a bank examiner does is ask to look at the non-performing loans. The examiner knows from experience that a well-run bank will have 1% to 2% of its loans in a delinquent (over 30 days past due), in a pre-foreclosure status 60 - 90 days past due) or in a foreclosure status (over 90 days past due).

In the State of Arizona, examination of the delinquent loans is routine for state

licensed mortgage companies, but it is not ordinarily followed in Nevada.[1] In Nevada the negligence or gross negligence of the State of Nevada is not actionable. As a result Nevada is less concerned with the number and quality of its inspectors. In "hard money" loans a delinquency rate of 10% is not unusual. A State inspector would know this. The defaulted loans[2] should result in stopped payments to the investors in these instruments and they have to wait through the foreclosure and resale process until they learn whether they made a good deal and actually realized more than their principal plus interest due to a substantial profit on the resale or whether they recovered less than they were owed due to a resale that produced less than the total principal plus interest.

The procedures followed in <u>Builders Capital</u> were very close to those followed

---

[1] Counsel for these appearing parties is intimately familiar with the reason for the difference. When the State of Arizona was sued in the Lincoln Thrift failure, the Courts of Arizona held that the State was liable for the negligence of its agent-examiners. In the All-State Thrift case tried by present counsel, the Nevada Courts held that although there was lack of proper supervision such supervision or lack thereof was a "discretionary function" of the State and therefore relief was denied.

[2] Loans which earn above-average interest and are made in consideration of substantial points are made to sub-standard borrowers and thus a 10% default rate is normal. Many mortgage companies use third party collection services such as Weststar or U.S. Loan Services. This Debtor did not do so because its principals were also borrowers on 42 loans. Such things are not allowed at most brokerages due to the inherent conflict of interest. If any such loans existed a competent auditor would look at those immediately after the non-performing loan files. If a competent state auditor were told "we have <u>no</u> non-performing loans and we have not had a foreclosures in 6 years" the only thing that a competent auditor would <u>know for sure</u> is that he was being lied to. Remember even our best run banks have 1 - 2% in a defaulted/foreclosure status. If a bank doesn't have 1 - 2% in default it is turning down too many good loans.

by a bank. In such a case the courts properly held that the investors in individual loans did not own the Notes and Deeds of Trust. The <u>Builder's</u> Court would have came down exactly the opposite with our facts. Let's examine why. We will use our lead clients as an example.

First, our investors performed due diligence. Dr. Alexander's resume is attached as Exhibit "A". Several of the other represented Direct Lenders are retired bankers. They also did the usual due diligence. They obtained copies of each Note and Deed of Trust and compared the appraised value with the proposed loan amount. This was not done in <u>Builder's</u>.

Second, each of our investors received specific reports showing the allocation of their investment in each individual Deed of Trust. See Exhibits "E", "F" and "G". It is difficult to understand how Debtor can cite <u>Builders</u> without pointing out that <u>Builder's</u> does not support the Debtor's position.

Third, in <u>Builder's</u>, the mortgage payments were co-mingled into Debtor's general account. In our case none of the interest payments went into the general account. All interest went into the investors' separate account.

Fourth, in <u>Builder's</u> there was no agency agreement or power of attorney executed. In our case each investor issued a separate power of attorney for each individual Note and Deed of Trust. All four (4) of these differences are contained in the first paragraph of page 607 of the <u>Builders</u> opinion, a copy of which is attached hereto as Exhibit "B".

5

Fifth, while still on page 607 but in another paragraph we hear that in <u>Builder's</u> the defendants did not know how their funds were being used or to whom their funds were lent. In our case each investor knew to whom their funds were lent and how they were used. All of the investors represented by this attorney even put the name of the borrower on the "for" portion of each check. The checks of Alexander and other investors represented by this attorney are so noted and are attached to various motions filed herein.

Sixth, while still on page 607, <u>Builder's Capital</u> allowed its investors to withdraw principal without regard to the status, maturity date, or other disposition of any particular loan. This is the exact opposite of the facts in our case. She declined to allow the extension of her $50,000.00 loan to Fiesta Murrieta. Examine the check of investor Grable. Exhibit "C". Debtor solicited another investor's $50,000.00 who participated in that extension request.

Seventh, while still on page 607, all <u>Builder's</u> investors shared the risks for the entire pool of loans. In our case there were two types of investments. An investor could invest in a "pool" of loans, but they had to be a Nevada Resident. As we saw earlier, if you were a Nevada Resident you would expect no protection from the State of Nevada and your only "protection" would be the shared risk much like an insurance company or a bank, or thrift institution spreads the risk inherent in the individual loans. The individual investors looked to their borrowers for payment. If the loan is due, they demanded and they received their principal. It only came when the individual loan was

due. If it was not paid to them when it was paid and instead was misappropriated by Debtor then Debtor must answer for its larceny. If it was not paid when due then the direct lender has his recourse to the security and may foreclose.

Finally, the Builder's Court at page 607 finds that the facts in Builder's are unique and these facts compel the conclusion reached by the Builder's Court. The individual Builder's investors Ilga Rubino and Sylvia Weisefeld had facts which are closely aligned to a loan to Builder's. Our facts are just the opposite. The Builder's Court implied that it would reach a completely different result if the facts were like ours. When examining cases like ours, the Court noted on the first paragraph of page 608 when the Court states that "None of these cases, [cited by Rubino], however, involved notes and mortgages given to a purported agent acting without authority from the investor. There lies the distinguishing factor that compels the present ruling." Naturally, given the facts in Builder's the Court ruled "that the Trustee as a fiduciary for all creditors may properly administer these assets for the benefit of every creditor". The Builder's Court given our facts would have denied such authority. In our facts we have identified people like Dr. Alexander as "Direct Lenders" and indeed that is exactly what they were.

### The "Advances" Re: Non Performing Loans

At page 5, lines 7-8 of his Points and Authorities, Debtor addresses the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents and worse that many of the defaulted loans were

made to borrowers affiliated with the former senior management of the Debtors. Debtor accurately points out that despite the fact that many of the borrowers were not making their monthly payments on their loans as required by the relevant documents, USACM continued to <u>forward funds</u> (Debtors used the word "<u>pay</u>") [representing] regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether of note USACM had actually collected payments from the borrowers."  Those are the stated facts which with the words "forwarded funds" substituted for the word "pay".  The use of the work "pay" is misleading.  It may not be intentionally misleading but given the zeal which attorneys bring to their arguments and the duty that they owe to their client, they become (at least) "lax" with the English language.  There is no "payor - payee" relationship between the Debtor and the Direct Lenders.  The Power of Attorney is clear and precise.  Any funds collected on behalf of the Direct Lenders must be <u>forwarded</u> to the Direct Lenders.  To do otherwise is to violate the Power of Attorney and to commit a fraud while in a fiduciary capacity.  Such a Debtor cannot stand before this Court and claim to be a "good faith debtor".  That is the reason why counsel for Debtor hired a new "face" on the eve of bankruptcy.  This procedure is no different than a bad faith debtor transferring assets to a newly created entity solely for the purpose of filing bankruptcy.  This attorney has been involved in too many cases before this court (as have all counsel who have appeared herein) to suggest that this court would not immediately see through such a shell-game.  Yet it was done here.

The next sentence propounded by this bad-faith Debtor is completely without legal foundation and is a complete misrepresentation bordering on the intentional.

Debtors state (without authority) that they have claims against each Direct Lender and Fund Member who received overpayments from USACM on the Funds. This is a complete lie. Debtors have no claims against the Direct Lenders or for that matter against the Fund Members. It is the Direct Lenders who have claims against the Debtors. These claims are for malfeasance, fraud, and misappropriation by trick[3] The Debtors did not advance their funds to the Direct Investors. They had no power to do this. Had the Direct Investors known of such a thing they would not have permitted it. They cannot be put into that position by this dishonest Debtor - whether or not he has a new "face". Furthermore, the Debtor had no power to "divert funds" from one Direct Investor to another Direct Investor. Had the Direct Investors known of such a thing they would not have permitted it. They cannot be put into that position by this dishonest Debtor - whether or not he has a new face.

## The Law

The Reinstatement of Contracts states that the Debtor can recover the Transfer only if the benefit to the Transferee was conferred as a result of fraud or mistake. See

---

[3] These are the same claims that Counsel collected and formulated into an Indictment with Affidavits of Witnesses attached in the All-State Thrift case. The D.A. who was otherwise "too busy" to spend a great deal of time on single case took the indictment prepared by counsel and presented it to the grand jury. Not a single word or comma was changed. Sam Kugg, former Chairman, President and CEO of All-State Thrift served two years. They were served concurrently with a federal conviction since counsel also "silver plattered" the evidence to the United States Attorney.

Reinstatement of Contracts § 140.   None of the represented Direct Lenders engaged in any fraud and they perpetrated no mistake.

A Washington D.C. case involved transfer to a limited partner of bank funds which were improperly approved by the General Partner.  The Court held that the limited partner's good faith receipt of the funds that were transferred voluntarily by the correspondent bank was not conversion.  Restitution was denied because the funds transferred by the bank had been received in good faith in the regular course of business.  <u>Chase Manhattan Bank v. Burden</u>, 489 A.2d 494, 497, D.C. App 1985.

Another case had facts even closer to ours.  Escrow agent that prematurely paid off from its own account prior mortgages encumbering properties that secured two mortgage refinance loans purchase by lender on secondary mortgage market sued lender for unjust enrichment, after uncertified checks issued to escrow agent by seller of the loans to pay off the prior mortgages bounced.  Affirming the district court's grant of summary judgment for defendant, this court held, inter alia, that defendant [Direct Lender] had no duty of restitution, where it made no misrepresentation and had no notice of plaintiff's mistaken payments from which it benefitted.  <u>Greenwald v. Chase Manhattan Mortg. Corp.</u>, 241 F.3d 76, 79 (C.A.1, 2001).

## Argument

What then, could the Debtor do.  He did only what he could legally do as respects to the Direct Investors.  <u>The Debtor effectively loaned its own money to the borrowers as an advance to the borrowers.</u>  It had the power to do this and only this.

10

Accordingly, this is exactly what it did <u>as a matter of law</u>. The actions of the Debtor in their reports to the Nevada Commissioner of Mortgage Lending categorized some non-performing loans as "performing". This supports the conclusion that they advanced the interest to the borrower and not the Direct Lender. The Debtor has certain rights of course. It can reimburse itself from funds that it advanced to the borrower so that the borrower could make his payments. This reimbursement can occur at the time that the loan reinstated or paid in full or even "off the top" from the proceeds for the foreclosure. The Direct Lenders owe the Debtors nothing except honest testimony at the potential criminal trials of the former managers. The Debtor's suggestion that these Direct Lenders may "owe money to Debtor" is ludicrous and is a scare tactic intended to silence the direct lenders so that they will permit Mr. Allison to have continued employment.

The Direct Investors should give a new power of attorney appointing U.S. Loan Services, Inc., or some other collector (who will work for .75% for <u>honest</u> service. Once Mr. Allison has completed his accounting there will be no need for Debtor's collection service and the collections moved. All parties are aware of this. A letter to all other counsel has been drafted to get this contingency in place. See Exhibit "D". If Allison were thinking the matter through he would sign the letter urging a new Power of Attorney so that if he is unsuccessful in attracting an institutional investors with $100,000,000.00 then the direct lenders would be empowered to take the next step. The Court cannot do this because with our facts only the investors can do this.

The process is already started.  It does not mean that the trigger will be pulled.  The Powers of Attorney need to be collected as a stop-gap measure.  It is better to have them and not need them than to need them and not have them.  It should not seen as a threat to Mr. Allison.  He is not the enemy of the Direct Lenders and they are not his enemy.  Both should be preparing for any foreseeable contingency.

## Conclusion

The Debtor has no ownership in the Notes of the Direct Lenders.  The Direct Lenders are the holders.  The Debtor is now a mere servicer, who has not performed his duty faithfully.  The Court should not sanction further delay in keeping the owners of the performing notes from their interest or principal.

Robert C. LePome, Esq.

/s/ Robert C. LePome, Esq  
Robert C. LePome, Esq.  
330 S. Third St. #1100B  
Las Vegas, NV 89101  
(702) 385-5509  
Nevada Bar #1980  
Attorney for Interest Parties

## CERTIFICATE OF SERVICE

I, Susan Stanton, hereby certify that a true and correct copy of the aforegoing was forwarded to:

FRANKLIN C. ADAMS    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com

KELLY J. BRINKMAN    kbrinkman@gooldpatterson.com,

CANDACE C CARLYON    ltreadway@sheacarlyon.com,

ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rsmith@sheacarlyon.com

JANET L. CHUBB    tbw@jonesvargas.com

CICI CUNNINGHAM    bankruptcy@rocgd.com

LAUREL E. DAVIS    bklsclv@lionelsawyer.com, ldavis@lionelsawyer.com;gbagley@lionelsawyer.com;ldavisesq@aol.com

THOMAS H. FELL    BANKRUPTCYNOTICES@GORDONSILVER.COM

EDWARD J. HANIGAN    haniganlaw@earthlink.net, haniganlaw1@earthlink.net

ANNETTE W JARVIS    ,

ROBERT R. KINAS    rkinas@swlaw.com, mstrand@swlaw.com;jlustig@swlaw.com;lholding@swlaw.com;imccord@swlaw.com

NILE LEATHAM    nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

ROBERT C. LEPOME    robert@robertlepome.com, susan@robertlepome.com

RICHARD MCKNIGHT    mcknightlaw@cox.net, gkopang@lawlasvegas.com;cburke@lawlasvegas.com,sforemaster@lawlasvegas.com

JEANETTE E. MCPHERSON    bkfilings@s-mlaw.com

LENARD E. SCHWARTZER    bkfilings@s-mlaw.com

CARYN S. TIJSSELING    cst@beesleyandpeck.com, aha@beesleyandpeck.com

U.S. TRUSTEE - LV - 11    USTPRegion17.lv.ecf@usdoj.gov,

MATTHEW C. ZIRZOW    bankruptcynotices@gordonsilver.com

by electronic service on the 18th day of May, 2006 and to the following by regular mail on the 18th day of May, 2006

NICHOLAS J SANTORO
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

BRADLEY J STEVENS
3300 N CENTRAL AVE
PHOENIX, AZ 85012

PETER SUSI
MICHAELSON, SUSI & MICHAELSON
7TH WEST FIGUEROA ST 2ND FLOOR
SANTA BARBARA, CA 93101

GREGORY J WALCH
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

                /s/ Susan Stanton
                Employee of Robert C. LePome, Esq.