# **<u>EXHIBIT G</u>**

*E-FILED ON MAY 2, 2006*

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case Nos. BK-S-06-10725-lbr |
| USA COMMERCIAL MORTGAGE COMPANY,<br>    Debtor. | Chapter 11 |
| | **SUPPLEMENTAL DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF DEBTORS' MOTIONS** |
| | Hearing Date: May 3, 2006<br>Hearing Time: 9:30 a.m. |

I, Thomas J. Allison, hereby declare, verify and state as follows:

1.    I make this Declaration as supplemental support for various motions of USA Commercial Mortgage Company ("USACM") and its four affiliates who filed bankruptcy petitions in this Court on April 13, 2006 (collectively, the "Debtors"), including the motion seeking approval of the proposed cash management procedures and limited use of cash

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

1

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

1  (the "Motion"). My Declaration is based upon personal knowledge and the facts set forth

2  herein.

3                              THE SERVICED LOANS

4         2.    It appears that as of April 13, 2006 (the "Petition Date"), USACM was

5  acting as the loan servicer for 115 separate loans (the "Serviced Loans") having a

6  combined outstanding loan balance of approximately $962 million. Attached hereto as

7  Exhibit A is spreadsheet created under my direction by the Mesirow team providing

8  preliminary information for each of the Serviced Loans, including the loan name, whether

9  the loan is performing or non-performing, number of investors, origination date,

10  outstanding balance, unpaid interest, and the percentage of the loan held by each of the two

11  "Funds" (as defined below), by USACM, and by other "Loan Investors" (as defined

12  below).

13        3.    I have directed that the Mesirow team review the loan files for each of the

14  Serviced Loans. Based on that review, it appears that each loan is secured by a trust deed

15  on commercial real estate, except for two loans that may have been made on an unsecured

16  basis and one loan for which the security interest may not have been properly perfected.

17  The loan files indicate that one of approximately 93 discrete commercial real estate

18  projects/developments serves as collateral for each the Serviced Loans that is secured (in

19  some instances more than one loan is secured by the same real estate). USACM intends to

20  seek authority to engage an outside appraisal firm to evaluate all of the real estate

21  collateral securing the Serviced Loans.

22        4.    It appears that as of the Petition Date approximately 62 of the Serviced

23  Loans were delinquent in the payment of interest or otherwise could be considered non-

24  performing (the "Nonperforming Loans"). The Nonperforming Loans represent 54%

25  percent in number, and 72% percent in outstanding loan balance, of the Serviced Loans.

26        5.    There are approximately 3,600 investors (the "Loan Investors") who names

27  appear as a "Lender" in the documents for one or more of the Serviced Loans. Among the

28

2

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

1  Loan Investors are two of the Debtors in these related bankruptcy cases, USA Capital First
2  Trust Deed Fund, LLC ("Capital First") and USA Capital Diversified Trust Deed Fund,
3  LLC ("Diversified") (collectively, the "Funds").

4      6.    Prior to April 2006, USACM regularly made interest payments to Loan
5  Investors each month regardless of whether the particular loans relating to each Loan
6  Investor were performing or nonperforming. For example, during the first three months of
7  2006, USACM collected on average approximately $5.3 million per month in interest
8  payments on the Serviced Loans but paid out on average approximately $9.7 million per
9  month to the Loan Investors. In order to make these interest payments, USACM at times
10  deferred the collection of its service fee.

11      7.    More than 60% of the Loan Investors invested in more than one of the
12  Serviced Loans. Further, although Mesirow has not completed its investor-by-investor
13  analysis of the loans in which each investor is listed as a "Lender" in a loan agreement, it
14  appears likely that for a substantial portion of the Loan Investors who invested only in a
15  single loan, that loan may be a Nonperforming Loan. The practical result of these facts is
16  that a large portion of the Loan Investors received monthly payments from USACM that
17  they were not entitled to receive (because they were invested, at least in part, in one or
18  more Nonperforming Loans), and thus such investors owe a debt to USACM for the
19  amounts overpaid to them.

20  THE FUNDS

21      8.    Capital First has an interest as a Loan Investor in 53 of the Serviced Loans --
22  in 45 loans it owns only a fractional interest along with other Loan Investors, and in 8
23  loans it is the sole investor. In other words, 90% in number of the Serviced Loans in
24  which Capital First has an interest are loans in which other Loan Investors also have an
25  interest. Further, of the 53 total loans in which Capital First has an interest, 29 (55% in
26  number) are Nonperforming Loans.

27

28

3

9.    Diversified has an interest as a Loan Investor in 23 of the Serviced Loans -- in 16 loans it owns only a fractional interest along with other Loan Investors, and in 7 loans it is the sole investor. In other words, 70% in number of the Serviced Loans in which Capital First has an interest are loans in which other Loan Investors also have an interest. Further, of the 23 total loans, 20 (87% in number) are Nonperforming Loans.

10.    The extent of the nonperforming loan problem is substantially the same for the Funds in their capacity as Loan Investors as it is for other Loan Investors. Because most of the Nonperforming Loans have one or both of the Funds as investors along with other Loan Investors, the administrative and servicing activities, appraisals, collection activities and foreclosure proceedings will benefit both the Funds and the other Loan Investors.

11.    All of the Funds' loans are serviced by USACM and are part of the Serviced Loans, as noted above. No distinctions were made in how monthly payments were remitted to the Funds (for further distribution to their members) versus remittances to other Loan Investors. Each of the Funds is and was treated as a single Loan Investor and the monthly payments were made to it as if it were a single Loan Investor.

12.    Capital First has approximately 1,300 members owning membership interests in that LLC entity, and Diversified has approximately 1,900 members owning membership interests in that LLC entity (collectively, the "Fund Members"). Mesirow has not yet completed its analysis of the extent to which particular Fund Members may have membership interests in both of the Funds, nor the extent to which particular Fund Members may also be Loan Investors, but it appears that there may be substantial overlap.

CRUCIAL WORK COMMENCED AND NEEDED DURING 90-DAY PERIOD

13.    As set forth in the Motion, there are certain critical tasks that Mesirow, with assistance from USACM's personnel and attorneys, must accomplish during the first 90 days of the Debtors' bankruptcy cases in order to analyze and safeguard the investments of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

all Loan Investors and Fund Members. Such tasks include, but are not limited to, those discussed below.

14.    Mesirow is engaging in a loan-by-loan credit and collateral evaluation, arranging for appropriate appraisals and checks on collateral, and commencing collection activities on Nonperforming Loans and determining the most appropriate way to bring each loan to a performing status. If foreclosures are necessary, USACM will commence such actions as it deems necessary as authorized in the Loan Servicing Agreement that USACM obtained from each of the Loan Investors at the time each investor first invested through USACM. Most of the delinquent loans received little or no collection efforts prior to the Petition Date, and USACM's new management intends to demonstrate to these borrowers that such delinquency will not be tolerated and that appropriate collection and foreclosure activities and other remedies, including collection on guarantees, will be pursued.

15.    Mesirow is preparing a ledger for each loan as requested by the SEC and the Nevada Mortgage Lending Division. These ledgers will allow Loan Investors to determine the status of each loan in their portfolios.

16.    Mesirow is preparing an account reconciliation for each Loan Investor and for each Fund Member (to the extent there are Fund Members who are not also Loan Investors). These reconciliations will indicate amounts due to the Loan Investors on account of each loan in their portfolios, as well as amounts that have been overpaid on Nonperforming Loans. Principal payments received by USACM but not remitted will also be indicated. The reconciliations for the Fund Members will indicate the positions of the respective Funds with regard to each loan in their portfolios, as well as the Fund Members' percentage ownership interests in the Funds.

17.    Mesirow is instituting appropriate internal financial and accounting controls and loan servicing audit trails so that the problems that resulted in the Debtors' bankruptcy filings will not recur.

18.    Mesirow is attempting to trace all intercompany transactions so that any dealings with insiders or affiliates are publicly disclosed and investors will have knowledge of such dealings to inform their decisions respecting their investments. Mesirow will follow up to enforce and collect any intercompany, insider, or affiliate debts owed the Debtors.

19.    Each of these activities is necessary and vital to each Loan Investor and Fund Members. Because only in rare cases does any one investor hold more than a small fractional share of any particular loan, the costs to any one Loan Investor of collecting payments from the borrowers on Nonperforming Loans and otherwise monitoring and enforcing the Lenders' rights under the loan agreements would be prohibitive, and borrowers are not likely to cooperate with such fractionalized collection efforts in any event.

20.    There is a significant intercompany receivable owed to USACM (and possibly to other Debtors) by USA Investment Partners, LLC ("IP"), which is a non-debtor entity related to USACM. It appears that the amount of the receivable exceeds $58 million, and that this obligation owed by IP to the Debtors is unsecured and was not formally documented. At my direction, USACM's bankruptcy counsel has prepared documents intended to properly document and secure this obligation of IP, and I believe I am close to obtaining IP's agreement to execute these documents for the benefit of the Debtors, the Loan Investors, and the Fund Members.

21.    During the first two weeks of the case, Mesirow has initiated measures for collecting unpaid interest on the Nonperforming Loans. Meetings have been held with four borrowers regarding the payment of approximately $13 million of past-due interest, and $2.1 million in past-due interest has been collected since the Petition Date. In addition, loan servicing procedures have been established and implemented with the management of USACM. These procedures allow for the identification and pursuit of

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

6

delinquent loans. These efforts benefit the Funds and other Loan Investors due to their investment in Nonperforming Loans.

## COSTS OF ESSENTIAL ACTIVITIES / REVISED BUDGET

22. The Revised Budget, a copy of which is attached hereto as Exhibit B, has been carefully constructed to allow USACM to provide the limited services necessary in administering the Debtors' bankruptcy estates, with a particular focus on servicing the loans to preserve or increase the value of the underlying collateral and on reconciling the individual accounts of the Loan Investors and Fund Members – all for the benefit of the investors and the Debtors. Mesirow and Debtors' counsel are undertaking a monumental effort to obtain and present the correct loan and investor information to the parties in interest and to maximize the value of the Serviced Loans and underlying collateral, in order to maximize the return that ultimately will be made to investors and creditors according to their respective legal and/or equitable entitlements.

23. While USACM's brokers and principal insiders have been terminated, USACM's accounting department, IT department and loan servicing department are needed in order to obtain the necessary information from the systems to prepare the Loan Ledgers, the Investor Statements, and loan and collection activity histories to date. Payroll is estimated to be $85,000 twice a month.

24. Operating costs include the electricity, rent, office supplies and other costs to keep the USACM offices open during this period for the benefit of all of the Debtors, Loan Investors, and Fund Members.

25. Other budgeted costs include the costs of bankruptcy administration, such as for a noticing agent, for bankruptcy counsel and professionals and some costs of official committees that may be appointed in the Debtors' cases.

26. The Debtors intend to pursue their motion for joint administration or for at least joint noticing to reduce the unnecessary and duplicative costs of separate

administration.  For example, a recent noticing required that packages of information, including a Notice of Commencement of the Cases (including notice of the May 17, 2006 meeting of creditors) and notices of hearings set for May 3, 2006 and May 18, 2006, were mailed to approximately 8,000 Loan Investors, Fund Members, creditors, and other parties in interest.  As for the notices, because separate notices of hearing were required to be filed in each of the 5 cases of the Debtors, 5 separate notices of hearing that were identical except for the case caption were  mailed to each of the approximately 8,000 recipients. The mailing by BMC was estimated to cost $48,000, but if duplicate notices could have been eliminated, the cost for the noticing would have been closer to $20,000.

27.    Because of the substantial overlap among the Loan Investors and Fund Members, the common nonperforming loan problems of the Funds and the other Loan Investors, and the common informational and accounting needs of the Loan Investors and Fund Members, I believe it would be unnecessary and duplicative to have separate official committees for USACM and the Funds.  Further, based on my examination of the financial status of the Debtors, while recognizing that this is in the purview of the U.S. Trustee, I believe that the expense of three or more separate committees would make it impossible for the Debtors to reorganize or even to realize the maximize the value of the Serviced Loans, most of which are held jointly by Loan Investors, including the Funds.  The Revised Budget does not include expenses for any more that one committee with appropriate professionals.  In the event that more than one committee is appointed, the Revised Budget will need to be increased.

28.    Attached hereto as <u>Exhibit C</u> is a copy of an executed Loan Servicing Agreement ("LSA") that is typical of the LSAs entered into by USACM and each of the Loan Investors.  The "annual loan servicing fee," according to paragraph 5 of the attached LSA, is not to exceed "three percent (3%) per annum of the maximum principal amount of each of the Loans."  I understand that at some point in the past USACM's standard form of LSA included a nearly identical provision except that the annual loan servicing fee was not

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

to exceed 1% of each loan, and that USACM's standard form of LSA was changed in 2004 to increase the percentage from 1% to 3%. The Revised Budget only includes the annual loan servicing fees at the 1% per annum level even though USACM will be entitled to, and will collect, the higher percentage servicing fee where contractually allowed.

29.    In addition to servicing fees, USACM is entitled to collect and keep late fees, default interest, origination fees, deferred origination fees, extension fees, exit fees, past uncollected servicing fees, and out-of-pocket costs and expenses incurred, including attorney's fees, trustee's fees and foreclosure costs pursuant to the LSA and the loan origination agreements. Expected origination fees for loans originated prior to the bankruptcy filing, deferred origination fees, extension fees and exit fees have been included in the Revised Budget. The Revised Budget does not include past uncollected servicing fees, which are still in the process of being determined, or any out-of-pocket costs and expenses incurred, which USACM may seek to collect at a later time.

30.    In addition to the fees allowed USACM under the Loan Servicing Agreements with investors, USA Capital Realty Advisors, LLC ("USACRA") is entitled to be paid a monthly management fee pursuant to the Second Amended and Restated Operating Agreement of USA Capital First Trust Deed Fund, LLC (the "First Trust Deed Agreement") and the Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Trust Deed Agreement"). This fee amounts to an annual fee of 1% of the funds managed under the Diversified Trust Deed Agreement, and an annual fee of 1.5% of the funds managed under the First Trust Deed Agreement.  Management fees payable from cash on hand at the Funds on the petition date is included in the Revised Budget.

31.    The expenditures included in the Revised Budget do not exceed the contractual fees that the Debtors are entitled to collect and expect to collect within the budgeted period, as more fully described herein and in the Revised Budget.

9

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

## POTENTIAL CONSEQUENCES IF THE MOTION IS NOT APPROVED

32.    USACM cannot operate on the funds available in the current DIP Operating Account (which is separate from the Collection Account). USACM needs access to funds which are currently held in the Collection Account or are to be paid into the Collection Account by borrowers to the extent of the servicing fees and other contractual costs and fees to which it is entitled in order to operate and administer its estate. The current funds in the DIP Operating Account, which account has not received any funds from the Collection Account since the bankruptcy filing, are sufficient to fund only this week's payroll and expenses. Without USACM's accounting, IT and loan servicing staff, it will not be possible to obtain sufficient information regarding the loans and investor accounts, to prepare the Ledgers and Account Reconciliations, to collect the past due interest, or to determine what steps have been and need to be taken to collect the Nonperforming Loans.

33.    If the Revised Budget is not approved, the professionals necessary to guide the Debtors through these complex proceedings, to satisfy the informational requirements of the Court, the SEC and the Nevada Mortgage Lending Division, and to enforce the collection of the Nonperforming Loans to return the maximum amounts of interest and principal back to the investors in due course will not be able to continue working, and all of these efforts will come to a halt. The delinquent borrowers will no doubt be less willing to bring their loans current if there is no oversight of these loans.

34.    Apart from the enormous practical difficulties, I believe that I may not be allowed under the USACM form loan agreement, which was used for many or most of the Serviced Loans and which recognizes USACM as the loan servicer, or under the governing Nevada statute, to allow an individual Loan Investor holding only small fractionalized interest in a Serviced Loan to attempt to collect directly from the borrower the fractional share of any loan payments owing. Even if this could be allowed, it would be inefficient and costly to Loan Investors as a whole. I believe the most cost-effective and efficient

10

way to collect on these loans is to allow USACM to collect on these loans for the benefit of all Loan Investors in the loan as provided in and agreed to in the Loan Servicing Agreements.

Executed this 2nd day of May, 2006.

Thomas J. Allison

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

11

# Exhibit A

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Performing | 3685 San Fernando Road Partners | 83 | 8/2/05 | 7,350,000 | - | | 1.12% | | 98.54% |
| Performing | 5055 Collwood, LLC | 33 | 2/24/06 | 1,500,000 | | | | | 100.00% |
| Performing | 5252 Orange, LLC | 66 | 12/22/05 | 3,800,000 | | | | | 100.00% |
| Performing | 60th Street Venture, LLC | 49 | 12/22/05 | 3,700,000 | | | | | 100.00% |
| Non-Performing | 6425 Gess, LTD | 286 | 4/14/05 | 26,500,000 | 1,946,126 | | 2.63% | | 97.37% |
| Non-Performing | Amesbury/Hatters Point | 393 | 12/16/02 | 18,552,955 | 1,837,338 | 15.18% | 1.72% | 0.25% | 82.31% |
| Non-Performing | Anchor B, LLC | 50 | 5/31/05 | 5,835,422 | 578,273 | | 33.36% | | 66.64% |
| Non-Performing | Ashby Financial $7,200,000 | 73 | 5/3/04 | 7,200,000 | 1,665,600 | 2.08% | | | 97.92% |
| Performing | B & J Investments[1] | 1 | 9/29/99 | 653,125 | 477,034 | | | | 100.00% |
| Non-Performing | BatUSA/$15,300,000 | 221 | 11/24/03 | 15,300,000 | 544,617 | | | 0.07% | 99.93% |
| Non-Performing | Bay Pompano Beach | 407 | 6/20/05 | 16,285,686 | 20,413 | 0.47% | 1.20% | | 98.33% |
| Non-Performing | Beastar, LLC[1] | 84 | 5/2/05 | 3,125,000 | | | 5.93% | | 94.07% |
| Non-Performing | Beau Rivage Homes/$8,000,000 | 157 | 1/2/03 | 432,349 | 202,076 | | | | 99.38% |
| Performing | Binford Medical Developers | 92 | 8/31/05 | 7,450,000 | - | | 17.25% | | 82.75% |
| Performing | Boise/Gowen 93 | 17 | 8/26/05 | 2,425,000 | | | | | 100.00% |
| Performing | Brookmere/Matteson $27,050,000 | 229 | 10/29/03 | 5,929,393 | - | | 34.20% | | 65.80% |
| Performing | Bundy Canyon $1,050,000 | 1 | 1/6/06 | 1,050,000 | | | | | 100.00% |
| Performing | Bundy Canyon $2,500,000 | 34 | 5/2/05 | 2,300,000 | - | | | | 100.00% |
| Performing | Bundy Canyon $5,000,000 | 43 | 9/28/05 | 4,250,000 | | | | 0.71% | 99.29% |
| Non-Performing | Bundy Canyon $5,725,000 | 53 | 1/14/05 | 5,725,000 | 60,282 | | | | 100.00% |
| Performing | Bundy Canyon $7,500,000 | 83 | 8/17/05 | 6,700,000 | | | | | 100.00% |
| Performing | Bundy Canyon $8.9 | 117 | 4/5/06 | 8,900,000 | | | | | 100.00% |
| Performing | BySynergy, LLC $4,434,446 | 3 | 2/3/06 | 4,434,446 | - | 51.48% | 35.34% | 13.18% | 100.00% |
| Non-Performing | Cabernet | 65 | 2/17/05 | 3,000,000 | | | | | |
| Non-Performing | Castaic Partners II, LLC | 57 | 7/11/05 | 5,600,000 | 137,553 | 7.59% | | | 92.41% |
| Performing | Castaic Partners III, LLC | 65 | 9/22/05 | 4,675,000 | - | 0.53% | | 1.07% | 98.40% |
| Performing | Charlevoix Homes, LLC | 40 | 4/3/06 | 3,400,000 | | | | | 100.00% |
| Performing | Clear Creek Plantation | 36 | 3/15/05 | 2,900,000 | - | | 3.45% | | 96.55% |
| Performing | Cloudbreak LV | 2 | 12/17/03 | 3,800,000 | | 0.49% | 99.51% | | 0.00% |
| Non-Performing | Colt DIV added #1[1] | 1 | Undetermined | 1,500,000 | 736,776 | 100.00% | | | |
| Performing | Colt DIV added #2[1] | 1 | Undetermined | 3,100,000 | 1,078,165 | 100.00% | | | |
| Non-Performing | Colt Gateway | 3 | 1/17/03 | 3,514,069 | 3,220,735 | 42.53% | | | 57.47% |
| Non-Performing | Colt Second TD | 1 | 8/19/03 | 1,000,000 | 484,412 | | 100.00% | | |
| Performing | Columbia Managing Partners | 1 | 9/1/05 | 2,210,000 | | | | 100.00% | |
| Performing | ComVest Capital | 56 | 1/11/06 | 4,125,000 | - | 17.82% | | | 82.18% |
| Performing | Copper Sage Commerce Center Phase II | 51 | 3/1/06 | 3,550,000 | - | | | 1.83% | 98.17% |
| Non-Performing | Copper Sage Commerce Center, LLC | 28 | 6/9/04 | 179,106 | 9,226 | | | | 99.38% |
| Performing | Comman Toltec 160, LLC | 96 | 6/24/05 | 6,375,000 | - | | | 0.08% | 99.92% |
| Non-Performing | Cottonwood Hills, LLC | 21 | 6/14/05 | 4,000,000 | 48,222 | | 25.00% | | 75.00% |
| Non-Performing | CREC Building Colt[1] | 1 | Undetermined | 3,718,777 | 1,650,349 | 100.00% | | | |

* Preliminary Analysis as of 04/27/2006.

Prepare by MFIM, LLC

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Performing | Del Valle - Livingston | 239 | 8/25/05 | 19,250,000 | | | 0.67% | | 99.33% |
| Performing | Del Valle Isleton | 76 | 3/22/05 | 6,520,000 | - | | 2.90% | | 97.10% |
| Non-Performing | Eagle Meadows Development | 295 | 10/19/05 | 31,050,000 | 9,019 | | 11.76% | | 88.24% |
| Performing | Elizabeth May Real Estate | 147 | 2/24/06 | 10,050,000 | - | | 1.19% | | 98.81% |
| Non-Performing | EPIC Resorts[1] | 1 | Undetermined | 18,915,000 | undetermined | 100.00% | | | |
| Performing | Fiesta Development $6.6 | 1 | 11/14/05 | 6,600,000 | - | | 100.00% | | |
| Non-Performing | Fiesta Development McNaughton[1] | 1 | 1/10/05 | 6,000,000 | undetermined | 100.00% | | | |
| Performing | Fiesta Murrieta | 69 | 4/14/05 | 6,500,000 | | | | 1.46% | 98.54% |
| Non-Performing | Fiesta Oak Valley | 227 | 6/15/04 | 20,500,000 | 3,597,750 | | | 0.05% | 99.95% |
| Non-Performing | Fiesta USA/Stoneridge | 100 | 9/22/03 | 10,000,000 | 2,376,004 | | | | 100.00% |
| Performing | Fiesta/Beaumont $2.4m | 36 | 9/17/04 | 2,400,000 | - | | | | 100.00% |
| Performing | Foxhill 216, LLC | 300 | 2/23/06 | 25,980,000 | - | | 0.10% | | 99.90% |
| Non-Performing | Franklin - Stratford Investments, LLC | 2 | 3/30/05 | 5,225,000 | 17,873 | | 80.67% | | 0.00% |
| Non-Performing | Freeway 101[1] | 57 | 8/8/04 | 3,750,000 | 38,750 | | | | 100.00% |
| Performing | Gateway Stone | 161 | 11/18/05 | 13,185,000 | - | | 0.76% | | 99.24% |
| Non-Performing | Gilroy | 59 | 11/23/04 | 4,950,000 | 309,031 | | 5.56% | | 94.44% |
| Performing | Glendale Tower Partners | 95 | 6/9/05 | 6,500,000 | - | | | 1.32% | 98.68% |
| Non-Performing | Golden State Investments II | 37 | 6/27/05 | 2,850,000 | 95,032 | | 8.77% | | 91.23% |
| Performing | Goss Road | 20 | 11/2/04 | 1,000,000 | - | | | 0.25% | 99.75% |
| Non-Performing | Gramercy Court Condos | 332 | 6/25/04 | 34,884,500 | 749,341 | | 13.10% | | 86.90% |
| Non-Performing | Harbor Georgetown | 103 | 8/16/04 | 8,800,000 | 333,402 | | 5.80% | | 94.20% |
| Non-Performing | Hasley Canyon | 114 | 3/3/04 | 11,700,000 | 1,287,450 | | | | 100.00% |
| Performing | Hespena II | 65 | 4/1/05 | 4,250,000 | - | | | | 100.00% |
| Non-Performing | HFA- Clear Lake | 207 | 1/6/05 | 16,050,000 | 2,404,286 | 0.88% | | | 98.81% |
| Non-Performing | HFA- North Yonkers | 298 | 1/11/05 | 24,000,000 | 3,710,069 | | 3.71% | | 96.08% |
| Non-Performing | HFA- Riviera 2nd | 99 | 4/29/04 | 8,000,000 | 2,478,060 | | | | 100.00% |
| Non-Performing | HFA- Windham | 74 | 11/15/04 | 5,550,000 | 893,767 | | | | 100.00% |
| Non-Performing | HFA-Clear Lake 2nd | 36 | 6/24/05 | 2,750,000 | 347,275 | | | 0.29% | 99.71% |
| Non-Performing | HFAH/Monaco | 4 | 12/19/03 | 4,000,000 | 1,236,000 | | 100.00% | | |
| Performing | Huntsville | 116 | 3/31/04 | 10,475,000 | 813,061 | 5.96% | 4.77% | | 89.27% |
| Performing | I-40 Gateway west | 46 | 1/11/05 | 4,530,000 | - | | | | 92.27% |
| Performing | I-40 Gateway West, LLC 2nd | 23 | 3/1/06 | 1,065,000 | - | | | | 100.00% |
| Non-Performing | Interstate Commerce Center Phase II | 2 | 8/11/04 | 1,855,606 | 20,375 | 13.72% | 86.28% | | 0.00% |
| Non-Performing | Interstate Commerce Center | 4 | 2/20/04 | 2,391,355 | 114,357 | 98.72% | | 1.28% | 0.00% |
| Performing | J. Jireh's Corporation | 105 | 9/2/05 | 8,825,000 | - | | 3.00% | | 97.00% |
| Performing | La Hacienda Estate, LLC | 83 | 11/11/04 | 6,255,000 | - | | | 0.80% | 99.20% |
| Non-Performing | Lake Helen Partners | 35 | 12/7/04 | 3,129,499 | 38,953 | 7.26% | 27.56% | 0.90% | 64.28% |
| Non-Performing | Lenn Hills | 130 | 12/7/05 | 10,350,000 | 129,167 | | | | 100.00% |
| Non-Performing | Margarita Annex | 105 | 7/26/04 | 12,000,000 | 255,667 | | 25.67% | | 74.33% |

* Preliminary Analysis as of 04/27/2006.

Prepare by MFIM, LLC

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Non-Performing | Marlton Square | 272 | 8/11/05 | 30,000,000 | 975,000 | | 0.39% | 0.89% | 98.71% |
| Non-Performing | Marlton Square 2nd | 108 | 8/11/05 | 6,000,000 | 204,000 | | | | 100.00% |
| Non-Performing | Marquis Hotel | 169 | 3/29/05 | 13,500,000 | 2,515,500 | | | 0.71% | 99.29% |
| Performing | Meadow Creek Partners, LLC | 103 | 2/23/06 | 8,250,000 | | | 0.87% | | 99.13% |
| Non-Performing | Midvale Marketplace, LLC | 49 | 6/30/05 | 4,075,000 | 205,298 | | 7.61% | | 92.39% |
| Non-Performing | Mountain House Business Park | 202 | 6/10/04 | 16,800,000 | | 0.30% | 5.21% | 0.17% | 94.33% |
| Non-Performing | Oak Shores II | 176 | 6/6/05 | 12,150,000 | 132,907 | 0.07% | 1.49% | | 98.44% |
| Performing | Ocean Atlantic | 32 | 11/1/05 | 2,700,000 | | | | | 100.00% |
| Performing | Ocean Atlantic $9,425,000 | 105 | 1/23/06 | 8,925,000 | | | 14.61% | | 85.39% |
| Non-Performing | Opaque/Mt. Edge $7,350,000 | 95 | 11/5/03 | 4,827,970 | 813,163 | | | | 100.00% |
| Non-Performing | Palm Harbor One | 309 | 12/14/05 | 28,480,000 | 14,723 | | 5.60% | | 94.40% |
| Non-Performing | Placer Vineyards | 343 | 12/10/04 | 31,500,000 | 1,567,682 | | | | 100.00% |
| Non-Performing | Placer Vineyards 2nd | 118 | 12/10/04 | 6,500,000 | 349,556 | | | | 100.00% |
| Performing | Preserve at Galleria, LLC | 73 | 10/6/05 | 4,393,250 | | | | 0.11% | 99.89% |
| Non-Performing | Redwood Properties $269,641[1] | 1 | 11/15/05 | 269,641 | undetermined | | | | 100.00% |
| Performing | Rio Rancho Executive Plaza, LLC | 32 | 1/17/06 | 2,250,000 | | | 3.11% | | 96.89% |
| Non-Performing | Rivera - Homes for America Holdings, L.L.C. | 90 | 6/24/05 | 5,000,000 | 637,500 | | | | 100.00% |
| Non-Performing | Roam Development Group | 291 | 3/23/05 | 26,251,945 | 173,806 | | 2.37% | | 97.63% |
| Non-Performing | Saddleback[1] | 1 | Undetermined | 375,000 | 9,849 | | | | 0.00% |
| Non-Performing | Shamrock Tower, LP | 87 | 8/5/04 | 10,500,000 | 1,590,927 | | 31.43% | | 68.57% |
| Non-Performing | Sheraton Hotel[1] | 1 | Undetermined | 6,845,000 | 896,084 | 100.02% | | | -0.02% |
| Non-Performing | Slade Development | 40 | 12/5/05 | 3,525,000 | | | | 1.42% | 98.58% |
| Performing | Southern California Land 2nd | 33 | 8/3/05 | 2,800,000 | | | | 1.25% | 98.75% |
| Performing | Standard Property Development | 115 | 2/27/06 | 9,640,000 | | | 6.96% | | 93.04% |
| Performing | SVRB $4,500,000 | 67 | 4/27/05 | 1,424,082 | | | | | 100.00% |
| Performing | SVRB 2nd $2,325,000 | 25 | 4/27/05 | 2,325,000 | | | | | 90.32% |
| Non-Performing | Tapia Ranch | 179 | 9/28/04 | 22,000,000 | 595,433 | | 1.43% | | 98.57% |
| Non-Performing | Ten-Ninety, Ltd./$4,150,000 | 18 | 12/30/02 | 4,150,000 | 1,775,764 | 20.48% | | | 79.52% |
| Performing | Ten-Ninety[1] | 1 | Undetermined | 55,113,781 | undetermined | 100.00% | | | |
| Performing | The Gardens Phase II | 1 | 3/31/06 | 2,500,000 | | | 100.00% | | 100.00% |
| Performing | The Gardens, LLC $2,425,000 | 34 | 8/15/05 | 1,961,000 | | | 1.52% | 4.01% | 94.47% |
| Non-Performing | The Gardens, LLC Timeshare | 51 | 3/24/04 | 5,300,000 | 250,458 | 5.43% | 31.03% | | 63.53% |
| Performing | Universal Hawaii[1] | 127 | 8/6/04 | 5,166,413 | undetermined | | 100.00% | | 100.00% |
| Non-Performing | University Estates | 1 | 4/11/05 | 3,835,400 | 1,763 | | | | 100.00% |
| Performing | Urban Housing Alliance - 435 Lofts | 110 | 7/13/05 | 8,150,000 | | 0.37% | 0.37% | 0.40% | 99.23% |
| Non-Performing | Wasco Investments | 86 | 11/23/04 | 6,450,000 | 407,535 | | 3.02% | | 96.98% |
| | | 10,546 | | $962,064,768 | $49,068,852 | | | | |

[1] Status of these loans is undetermined due to bankruptcy, foreclosures, change of ownership, etc. More research is being performed.

* Preliminary Analysis as of 04/27/2006.

Prepare by MFIM, LLC