

# PROMISSORY NOTE
# SECURED BY DEED OF TRUST

$4,500,000

Las Vegas, Nevada
September 22, 2005

This Promissory Note ("Note") is made and delivered by Castaic Partners III, LLC, a California limited liability company ("Borrower"), in favor of the persons listed on **Exhibit "A"** hereto ("Lender"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in that certain Loan Agreement ("Loan Agreement") of even date herewith between Borrower and Lender.

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Four Million Five Hundred Dollars ($4,500,000.00) (the "Note Amount"), together with interest as provided herein.

1. <u>Interest Rate</u>. Interest shall accrue on the outstanding portion of the Note Amount, from the earlier of: (a) the closing date of the Loan; or (b) the date all funds and Loan Documents have been deposited into escrow, whether or not the Loan has been recorded, until the date the Note Amount is paid in full, at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. Accrued but unpaid interest shall be compounded monthly.

2. <u>Payments</u>. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears. For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day. All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3. <u>Maturity Date</u>. If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on or before the date which is twelve months a after the Deed of Trust is recorded (the "Maturity Date").

4. <u>Application of Payments</u>. All payments on this Note shall, at the option of the Lender hereof, be applied first to the payment of accrued interest then payable.

5. <u>Prepayment</u>. Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Borrower may prepay this Note in full or in part at any time; provided, however, that if Borrower repays the Loan within the first one hundred twenty (120) days after the Effective Date (whether

voluntarily or as a result of default), then Borrower shall pay to Lender a prepayment fee equal to all interest which would accrue on the full Loan Amount during said one hundred twenty (120) day period, less all interest previously paid. Notwithstanding anything to the contrary hereunder, Lender shall receive a minimum of one hundred twenty (120) days' interest on the full Loan Amount.

6. <u>Collateral</u>. This Note is secured by a deed of trust encumbering real property located in Los Angeles County, California.

7. <u>Defaults; Acceleration</u>. The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder. Upon the occurrence of an Event of Default, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately. Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a) Borrower shall fail to pay when due any amount due pursuant to the Note; or

(b) Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have thirty (30) days after written notice to effect the cure (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c) any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made; or

(d) Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e) Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any

2

bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within thirty (30) calendar days after such issue or levy; or

(f) there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion; or

(g) any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h) all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i) Borrower is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or the Guarantors are sold or otherwise transferred without Lender's written consent; or

(j) any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(k) any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

8. Late Charge. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to

3

expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the Lender hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any accelerated amount. Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9. <u>Default Rate</u>. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10. <u>Waivers</u>. Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11. <u>Costs of Collection</u>. Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this

4

Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12. Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

13. Notices. All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**     Castaic Partners III, LLC
7541 Eads Avenue, Suite F
La Jolla, California 92037
Attn. William J. Barkett

**LENDER'S ADDRESS:**     c/o USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn. Joseph D. Milanowski

**WITH A COPY TO:**     Goold Patterson Ales & Day
4496 South Pecos Road
Las Vegas, Nevada 89121
Attn. Bryan K. Day, Esq.

14. Assignment By Lender. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15. Multiple Parties. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16. Construction. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience

5

only and in no way define, limit, extend, or modify the scope of intent of this Note.

17. <u>Partial Invalidity</u>. If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

18. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b) BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL: (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c) BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

BORROWER: Castaic Partners III, LLC

By: _____
William J. Barkett, Manager

# EXHIBIT "A"

## LENDERS

Castaic Partners III, LLC

| Vested AS | Dollars |
|---|---|
| Adib M. Al-Awar & Ellen A. Al-Awar Trustees of the Al-Awar Living Trust dated 04/05/01 | $200,000.00 |
| Allen Cohen, a married man dealing with his sole & separate property | $100,000.00 |
| Alneil Associates, Neil Tobias General Partner | $75,000.00 |
| Angela Bauer & Timothy James Bauer, husband and wife as joint tenants with the right of survivorship | $60,000.00 |
| Annemarie Rehberger, Trustee of the Acres Profit Sharing Plan | $50,000.00 |
| Arnold Stairman Trustee of the Arnold Stairman Profit Sharing Plan | $50,000.00 |
| Arthur V. Adams Trustee of the Arthur V. Adams Trust dated 9/12/97 | $50,000.00 |
| BFW Group a Nevada Partnership | $100,000.00 |
| Capital Mortgage Investors, Inc., a Florida Corporation | $50,000.00 |
| Chris F. Lapacik, a married man dealing with his sole and separate property | $100,000.00 |
| Christina Reale, a married woman dealing with her sole & separate property | $50,000.00 |
| Cynthia Burdige Trustee of the Cynthia Burdige Trust U/A dated 4/13/00 | $50,000.00 |
| Daniel D. Newman Trustee of the Daniel D. Newman Trust dated 11/1/92 | $60,000.00 |
| Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $100,000.00 |
| Dennis Raggi, a married man dealing with his sole & separate property | $50,000.00 |
| Desert Commercial Sweeping Inc., a Nevada corporation | $70,000.00 |
| Dorothy J. Keeth, an unmarried woman by Gary Keeth with Power of Attorney | $83,000.00 |
| Dr. Louis Rotola & Bridget Rotola, husband & wife as joint tenants with rights of survivorship | $75,000.00 |
| Edward J. Scheidegger, Trustee of the Scheidegger Family Trust dated 12/26/01 | $50,000.00 |
| Eric S. Perlman, an unmarried man | $150,000.00 |
| First Savings Bank Custodian for Kristie Kayser IRA | $100,000.00 |
| First Savings Bank Custodian for Willard Arledge IRA | $100,000.00 |
| Frank Kern, an unmarried man | $90,000.00 |
| Frieda Moon Trustee of The Decedent's Trust of the Restated Moon 1987 Irrevocable Trust dated 6/12/87 | $50,000.00 |
| G. Robert Knoles and Christina G. Knoles, husband and wife, as joint tenants with the rights of survivorship | $50,000.00 |
| Gary I. Miller & Barbara L. Miller Trustees of the Gary I. & Barbara L. Miller Trust dated 08/13/87 | $50,000.00 |
| George F. Stone and Margaret A. Stone, husband and wife as joint tenants with the right of survivorship | $50,000.00 |
| Irwin Cohen & Marilyn T. Cohen Trustees of the Cohen Living Trust dated 3/6/90 | $50,000.00 |
| Jack L. Dysart, a married man dealing with his sole & separate property | $50,000.00 |
| Jerome L. Block & Charma N. Block, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Jorge M. Acosta & Giorgina Acosta Trustees of the Acosta Family Trust dtd 02/06/1992 | $50,000.00 |
| Joseph F. McMullin & Pearl A. McMullin, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Joyce E. Smith Trustee of the Joyce E. Smith Trust dated 11/3/99 | $100,000.00 |

Castaic Partners III, LLC

| Vested AS | Dollar |
|---|---|
| Karl Eisele & Margaret Eisele, husband & wife, as joint tenants with right of survivorship | $105,000.0 |
| Kaye Hutchison, a married woman dealing with her sole & separate property | $50,000.0 |
| Kenneth R. Becker & Joanne T. Becker, husband & wife, Grace Becker & Sarah Becker, their minor children with right of survivorship | $100,000.0 |
| Lauren Reale, a single woman | $50,000.0 |
| Lawrence A. Kirkham & Kathleen B. Sanginiti Trustees of the Kirkham & Sanginiti Trust dated 2/29/96 | $50,000.0 |
| Lori Dietzman and William Dietzman, wife and husband as joint tenants with right of survivorship | $50,000.00 |
| Manuel F. Rendon & Constance M. Rendon, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Marie K. Carano, a single woman | $100,000.00 |
| Mazal Yerushalmi, an unmarried woman | $100,000.00 |
| Monroe Mayo & Louise Mayo Trustees of the Mayo Family Trust | $87,000.00 |
| Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $50,000.00 |
| Norma Lamb-Groves Trustee of the Norma Lamb-Groves Trust dated 2/18/03 | $100,000.00 |
| Norman Kiven, a married man dealing with his sole & separate property | $100,000.00 |
| Paul Seyb & Wendy M. Seyb husband and wife as joint tenants with right of survivorship | $120,000.00 |
| Philip Castiglia and Alis Kurtliyan-Castiglia, Trustees of the Castiglia Family Trust dated 11-10-04 | $50,000.00 |
| Richard F. Casey, III & Kathryn A. Casey Trustees of the Casey Family Trust | $50,000.00 |
| Richard McKnight and Sheila J. McKnight, Trustees of the McKnight 2000 Family Trust, dated 4/20/00 | $100,000.00 |
| Robert G. Fuller Trustee of the RGF Revocable Trust | $90,000.00 |
| Shelley Wike Cranley Trustee of The S.W. Cranley Revocable Trust dated 2/20/03 | $100,000.00 |
| Stanley Ziskin & Mary C. Ziskin, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Stefan R. Cavin Trustee of the Stefan R. Cavin Revocable Living Trust dated 05/26/2004 | $75,000.00 |
| T. Claire Harper Trustee of the Harper Family Trust dated 2/28/84 | $100,000.00 |
| Thomas B. Harrison & Marguerite F. Harrison Trustees of the Harrison Family Trust dated 7/27/99 | $60,000.00 |
| Thomas F. Fallon, a married man dealing with his sole and separate property | $50,000.00 |
| Todd Sinett & Wendy Sinett, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Universal Management, Inc., a Nevada Corporation | $100,000.00 |
| USA Commercial Mortgage | $50,000.00 |
| Wald Financial Group Inc. Defined Benefit Pension Trust 2 | $50,000.00 |
| *Exhibit 'A' for   61 people with a total $ value of* | $4,500,000.00 |