**MATTHEW Q. CALLISTER, ESQ.**
Nevada Bar # 000827
**Callister & Reynolds**
823 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (702) 385-3343
Facsimile: (702) 382-5774
mqc@callister-reynolds.com

**Attorneys for Project Disbursement Group, Inc.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | **BK-**06-10075-lbr<br>Chapter 11<br><br>EMERGENCY MOTION FOR ORDER REGARDING PROJECT DISBURSEMENT GROUP, INC.'S DISBURSEMENT OF INTEREST PAYMENTS TO DEBTOR<br><br>Date:  OST Requested<br>Time:  OST Requested |

PROJECT DISBURSEMENT GROUP, INC. ("PDG"), by and through its counsel, Matthew Q. Callister of the Law Firm of Callister & Reynolds, hereby files this Emergency Motion For An Order Regarding PDG's Disbursement of Interest Payments to Debtor (the "Motion"). The Motion is based on the Points and Authorities set forth herein, including any pleadings on file, as well as any argument presented at the time of hearing.

PDG requests that the Motion be granted and an Order entered directing PDG with regards to certain interest payments from the interest reserve portions of various loans (the "Interest Payments") for which PDG services on behalf of Debtor. PDG and Debtor have executed a stipulation with regards to the Interest Payments (the "Stipulation")and PDG seeks further guidance from this Court as to whether PDG should make the Interest Payments to Debtor as set forth in the Stipulation, retain the payments, make payments to another third party as

directed by this Court, or file a motion to interplead these funds.

**Points and Authorities**

**I.     Factual Background**

1. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

2. Prior to the Petition Date, PDG and Debtor entered into several written agreements entitled "Control Account Escrow Agreement and Security Agreement" (the "Escrow Agreements").

3. The parties of the Escrow Agreements consisted of: 1) PDG, 2) the Debtor as authorized Agent and Servicer for certain loan investors, and 3) certain borrowers (the "Borrowers").

4. Prior to the Petition Date, PDG and Debtor entered into written agreements entitled "Agreement for Construction Control Services" (the "Control Services Agreements").

5. The parties of the Control Services Agreements consisted of 1) PDG, and 2) Debtor, and related to loans to the Borrowers.

6. PDG acted and acts as disbursement agent for the Debtor and in some instances for the Borrower in connection with loans that were originated and are serviced by the Debtor.

7. Pursuant to the terms of the Escrow Agreements and the Control Services Agreements, the Debtor, as Servicer forwarded to PDG prior to the Petition Date, certain loan funds: (1) to be held by PDG as interest reserves to be disbursed periodically to the Debtor (in its capacity as Agent and Servicer) as interest payments for the loans, and (2) in some cases, to be held by PDG as construction funds to be disbursed as directed by the Borrowers, with the consent of the Debtor as Servicer, as construction advances in connection with the Loans.

8. PDG is still holding some of the loan funds to be disbursed pursuant to the Escrow Agreements and Control Services Agreements.

9. PDG, after the Petition Date, continued to disburse loan funds as directed by the Borrowers, with the consent of the Debtor as Servicer, as construction advances in connection with the Loans.

1  10. After the Petition Date, PDG was informed by investors that interest payments made by PDG to Debtor on or about March 2006 were not subsequently disbursed by Debtor to said investors, and thus, PDG temporarily ceased from disbursing funds as interest payments to Debtor as Servicer from the interest reserve portions of the Loans.

11. Debtor asserted and asserts that it is authorized under the terms of the Loan Servicing Agreements entered into between the Debtor as Servicer and various loan investors for the Loans (the "Investor Servicing Agreements") to provide periodic disbursement authorizations to PDG for the payment of interest on the Loans from the interest reserves being held by PDG and, in some cases, for construction funding on the Loans, consistent with the Escrow Agreements and Control Services Agreements, and the disbursement terms of the executed loan documents for the Loans.

12. Debtor further asserts that its bankruptcy filing does not relieve PDG from any of its obligations under the Escrow Agreements and Control Services Agreements, including its obligation to disburse interest payments from the interest reserves and claims that such disbursement authorizations to PDG are in the ordinary course of Debtor's business.

13. On or about May 12, 2006, Debtor and PDG executed the Stipulation and Interim Order authorizing PDG to continue making payments under the Escrow Agreements and Control Services Agreements.

**Memorandum of Law**

PDG has acted as the disbursement agent under the various Escrow Agreements and Control Services Agreements with Debtor. Subsequent to the Petition Date, various investors have contacted PDG requesting that PDG cease from disbursing payments from the interest reserves.

As argued in Debtor's Emergency Motion for Order to Compel Fidelity National Title Insurance Company to Make Disbursements From Loan Funds Being Held by Fidelity as Disbursement Agent filed with this Court on May 9, 2006, Debtor asserts that under Section 105(a) of the Bankruptcy Code, "the Court has expansive powers to fashion any order or decree that is in the interest of preserving or protecting the value of the debtor's assets." See, Debtor's

Motion at pp. 11-12. Debtor further asserts that pursuant to Section 363(c)(1) of the Bankruptcy Code, that it is allowed to operate in the ordinary course of its business, without notice or hearing.

PDG has currently stipulated with Debtor to continue making all payments under the Escrow Agreements and the Control Services Agreements. However, PDG seeks a permanent order from this Court directing PDG to continue making payments as agreed in the Stipulation, to retain the funds, to pay the funds to another party whom this Court directs, or to file a motion to interplead the funds with this Court.

DATED this 22nd day of May, 2006.

/s/ Matthew Callister
MATTHEW Q. CALLISTER, ESQ.
Nevada Bar # 000827
Callister & Reynolds
823 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Attorneys for PDG