Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                                                Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**OPPOSITION TO MOTIONS FOR RELEASE OF FUNDS FROM INVESTOR ACCOUNT FILED BY: (1) STANLEY ALEXANDER TRUST, ET AL., (2) GRABLE B. RONNING, ET AL., AND (3) JASPER BENINCASA, ET AL. (AFFECTS USA COMMERCIAL MORTGAGE CO.)**<br><br>Date:<br>Time: |

1

Opposition to Motions for Release Of Investor Account Funds

1   USA Commercial Mortgage Company ("Debtor" or "USA"), by and through its undersigned counsel, hereby responds in opposition to the following motions requesting release of certain funds now held in USA's debtor-in-possession investor account (the "DIP Investor Account"): (1) Motion for Order Authorizing Return of Non-Invested Funds of Stanley Alexander Trust, Drs. Stanley Alexander and Florence Alexander (docket no. 155, filed May 5, 2006) (the "Alexander Motion"); (2) Motion for Order Authorizing Return of Non-Invested Funds of Grable B. Ronning, The Wild Water Limited Partnership, Crosbie B. Ronning and The Bosworth 1988 Family Trust (docket no. 194, filed May 9, 2006) (the "Ronning Motion"); and (3) Motion for Order Authorizing Return of Non-invested Funds of Jasper Benincasa Jr. and Flocerfida Benincasa (docket no. 233, filed May 12, 2006) (the "Benincasa Motion") (collectively, the "Motions").

The Motions are premature, contradictory, and should be denied without prejudice until all of the competing claims on the funds in the DIP Investor Account can be fully presented and resolved. This Opposition is supported by the Declaration of Thomas J. Allison in Support of Debtor's Opposition to Alexander, Ronning, and Benincasa Motions ("Allison Declaration") to be filed, the prior declarations of Mr. Allison on file in this case, the arguments set forth below, and other relevant items of record before this Court in the Debtor's bankruptcy case.

## SUMMARY OF FACTS

USA, along with four related entities, USA Capital Realty Advisors, LLC, USA Capital First Trust Deed Fund, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Securities, LLC (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court on April 13, 2006 (the "Petition Date"), which cases are being jointly administered as captioned above. Prior to the Petition Date, USA was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. Under prior management, pre-petition irregularities occurred in servicing the loans. On the Petition Date, Thomas J. Allison of Mesirow Interim Financial Management became the President of USA and the Manager of the four remaining Debtors who are limited liability companies. In an order entered April 19, 2006, this Court authorized the Debtors'

1  employment of Allison as Chief Restructuring Officer for an interim period until July 27, 2006.
2  *See* Second Supplemental Declaration of Thomas J. Allison, filed May 17, 2006 ("May 17
3  Declaration").

4      Under their new management since the Petition Date, the Debtors have worked hard to
5  begin analyzing and unraveling the problems the Debtors face arising from past business practices
6  and irregularities. USA has not originated or brokered any new loans (or brokered any
7  assignments of interests in existing loans) since the Petition Date, and will not do so without Court
8  approval. USA continues to be the loan servicer for approximately 115 commercial loans having a
9  combined stated outstanding balance of approximately $950 million (the "Serviced Loans"),
10 nearly all of which are secured by various real estate projects or developments. The loan
11 documents and other records of USA indicate that there are approximately 3,600 investors (the
12 "Direct Lenders") whose names appear as a "Lender" for one or more of the Serviced Loans.
13 Typically, there are dozens or even hundreds of Direct Lenders on a particular loan, with each
14 lender having only a small fractionalized share. Among the Direct Lenders are two of the Debtors,
15 USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC
16 ("First Deed") (collectively, the "Funds"). Diversified has approximately 1,900 LLC members
17 and First Deed has approximately 1,300 members (collectively, the "Fund Members"). There is
18 substantial overlap among the Direct Lenders and the Fund Members. *See* May 17 Declaration.

19     One of the services USA provided prior to the Petition Date was to broker assignments of
20 fractional loan interests from Direct Lenders who desired to liquidate certain of their interests
21 ("Assignors") to other Direct Lenders who desired to acquire fractional loan interests
22 ("Assignees"). On the Petition Date, USA was holding a total of $1,784,971.99, plus some
23 accrued interest, in its pre-petition "Investors Trust Account" at Wells Fargo Bank (the "WFB
24 Investor Account") in connection with such assignments.[1] Although USA is still investigating the
25 details relating to the $1,784,971.99 amount, it appears that the amount represents funds that

---

[1] The WFB Investor Account was separate from USA's collection account used to receive loan payments on the Serviced Loans, and separate from its business operating accounts. As noted below, on May 2, 2006, USA closed the WFB Investor Account and opened the DIP Investor Account at Bank of America in its stead.

1. Assignees transmitted for investment to the WFB Investor Account shortly before the Petition
2. Date that were in turn transmitted to Assignors in checks drawn on the WFB Investor Account that
3. had not cleared as of the Petition Date. USA had sent the checks to the Assignors upon receipt
4. from the Assignors of an executed and notarized document entitled "Assignment of Beneficial
5. Interest in Deed of Trust" ("Assignment") specifying the name of the intended Assignee and the
6. amount of the fractional loan interest assigned. When the checks from USA to the Assignors were
7. presented for payment from the WFB Investor Account shortly after the Petition Date, they did not
8. clear due to the filing of USA's bankruptcy petition. Later, on April 19, 2006, Wells Fargo Bank
9. permitted one of the checks in the amount of $100,000, which had been re-deposited, to clear the
10. bank. On May 2, 2006, USA transferred $1,877,080.27, which was the entire balance of the WFB
11. Investor Account on that date, consisting of the $1,784,971.99 amount discussed above, plus
12. accrued interest of $192,108.28, less the $100,000 check Wells Fargo Bank allowed to clear post-
13. petition, to USA's new DIP Investor Account at Bank of America, where the funds are still being
14. held. A spreadsheet providing a reconciliation of these amounts, along with information
15. concerning the Assignors, Assignees, and Serviced Loans involved, is attached as Exhibit A to the
16. Declaration of Thomas J. Allison in Support of Debtor's Opposition to Alexander, Ronning, and
17. Benincasa Motions ("Allison Declaration") filed herewith.

### ARGUMENT IN OPPOSITION TO THE MOTIONS

19. Pursuant to the Motions, the movants request that they be paid immediately certain
20. amounts that they believe are being held on their behalf in the DIP Investor Account. However,
21. most of the investments made by the movants that are addressed in the Motions have no
22. connection to the funds currently being held in the DIP Investor Account, as explained below.
23. Moreover, to the extent the movants may have claims on the funds in the DIP Investor Account,
24. they fail to realize that both Assignors and Assignees may have competing claims to the same
25. funds, and that USA cannot pay the funds to both the Assignors and the Assignees. USA intends

to file, on or before June 5, 2006, an interpleader[2] action with this Court so that the proper entitlements to the funds in the DIP Investor Account can be determined. Prior to a judicial resolution of the competing claims, USA should not be compelled to release funds to the Assignors or the Assignees, and the Motions should be denied without prejudice.

### A.   The Alexander Motion

The Alexander Motion seeks recovery of a total of $378,000 invested in four separate checks. However, only one of those checks, Check # 339 for $100,000 that cleared April 12, 2006, has any connection to the DIP Investor Account. Stanley and Florence Alexander were Assignees as to that amount, and the corresponding $100,000 check made payable to the Assignor, Robert W. Ulm as Trustee of the Ulm Living Trust ("Ulm"), was one of the checks that issued from but failed to clear the WFB Investor Account prior to the Petition Date. *See* Exhibit A to Allison Declaration. The relevant Assignment, signed April 4, 2006 by Ulm assigning a $100,000 fractional loan interest to the Alexanders, is attached as Exhibit B to the Allison Declaration. Thus, any competing claims between the Assignor and the Assignee as to this $100,000 amount should be resolved in the interpleader action. The other three checks addressed in the Alexander Motion, checks from the Alexander movants in the amounts of $53,000, $100,000, and $125,000, respectively, were pre-petition investments having no connection to the funds that are now the DIP Investor Account. The documents attached as Exhibit C to the Allison Declaration indicate the Serviced Loans in which the Alexander movants acquired an interest prior to the Petition Date on account of these three checks.

### B.   The Ronning Motion

The Ronning Motion seeks recovery of a total of $200,000 for three pre-petition checks the Ronning movants received as Assignors but that failed to clear the WFB Investor Account post-petition, plus an additional $150,000 for three $50,000 checks the Ronning movants invested approximately 2-3 weeks prior to the Petition Date. Apparently, the Ronning investors were Assignors intending to liquidate $200,000 of their interests in the Fiesta Development Loan, while

---

[2] A Debtor-in-possession can bring an interpleader action. In re Preston Trucking Co., Inc. 333 B.R. 315, 327

at about the same time were acquiring $150,000 in beneficial interests in different loans. The $200,000 in returned checks from the WFB Investor Trust Account that the Ronning movants hold as Assignors is traceable to funds being held in the DIP Investor Account, but the $150,000 in new money the Ronning movants invested is not.

The fact that the Ronning movants have a claim for $200,000 on the DIP Investor Account as Assignors, while the Alexander movants have a claim on that same account as Assignees, demonstrates why these competing claims must be resolved in an interpleader action that gives all Assignors and all Assignees having a legitimate claim on the funds in the DIP Investor Account an opportunity to be heard on this issue before any of the funds in the account are released. Interestingly, the Alexander movants and the Ronning movants are represented by the same attorney, Robert C. LePome, who may have a disabling conflict of interest that would prohibit him from continuing to pursue this dispute on behalf of both the Alexander movants as Assignees and the Ronning movants as Assignors.

Copies of the three Assignments totaling $200,000 that were executed by the Ronning movants as Assignors relating to funds in the DIP Investor Account are attached as Exhibit D to the Allison Declaration. Attached as Exhibit E to the Allison Declaration are copies of documents indicating that the remaining $150,000 amount addressed by the Ronning Objection are not connected to funds being held in the DIP Investor Account, including two pre-petition Assignments made to the Ronning movants as Assignees totaling $100,000, plus selected pages from the First Amendment to Deed of Trust dated March 21, 2006 and recorded April 5, 2006, evidencing the $50,000 completed investment by The Wild Water Limited Partnership (one of the Ronning movants).

C.    The Benincasa Motion

The Benincasa movants invested $110,000 by transmitting a check in that amount dated April 11, 2006 to USA's WFB Investor Trust Account, which check cleared April 12, 2006. Pursuant to two Assignments executed by separate Assignors prior to the Petition Date, one for

---

(Bankr. D.Md. 2005)

Opposition to Motions for Release Of Investor Account Funds

1  $50,000 and one for $25,000, copies of which Assignments are attached as Exhibit F to the
2  Allison Declaration, the Benincasa movants became Assignees as to $75,000 in funds traceable to
3  the DIP Investor Account.  *See also* Exhibit A to the Allison Declaration.  A copy of the third
4  Assignment evidencing the remaining $35,000 amount invested by the Benincasa movants that is
5  not traceable to the DIP Investor Account is attached hereto as Exhibit G.

6  In conclusion, because both the Assignors and the Assignees who may have a direct
7  connection to the funds that were transferred from the WFB Investment Account to the DIP
8  Investment Account may have legitimate claims to those funds, the Court should deny the Motions
9  and allow the matter to be resolved in an interpleader action involving all relevant Assignors and
10 Assignees.  Further, the Motions should be denied because all other amounts addressed in the
11 Motions have no connection to such funds.

12 Respectfully submitted this _____ day of May, 2006.

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

Attorneys for Debtors and Debtors-in-Possession