Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON May 26, 2006

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                               Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                               Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                               Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                               Debtor. | **OPPOSITION TO DIRECT LENDERS' MOTIONS:** |
| In re:<br>USA SECURITIES, LLC,<br>                                                               Debtor. | **1. TO COMPEL DEBTOR TO CONTINUE TO FORWARD LENDER PAYMENTS TO DIRECT LENDERS; and** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **2. TO DELAY OR PROHIBIT APPRAISALS ON PERFORMING LOANS**<br><br>**(AFFECTS USA COMMERCIAL MORTGAGE)**<br><br>Date:  June 5, 2006<br>Time:  9:30 a.m. |

USA Commercial Mortgage Company ("USACM"), by and through its undersigned counsel, hereby responds in opposition to the "Direct Lenders": 1. To Compel Debtor to Continue to Forward Lender Payments to Direct Lenders (the "Direct Lender Payment Motion"); and 2. To Delay or Prohibit Appraisals on Performing Loans (the "Appraisal Motion") (docket no. 215, filed May 11, 2006), as well as the Joinder in Direct Lenders' Motions: to Compel Debtor to Continue to Forward Lender Payments to Direct Lenders; and to Delay or Prohibit Appraisal on Performing Loans (docket no. 319, filed, May 22, 2006).

The Direct Lender Payment Motion is premature and should be denied until USACM, under its new, post-petition management, completes its reconciliation of all of the investor accounts and loan ledgers, as more specifically described in the Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients and Memorandum of Points and authorities (the "Motion to Hold Funds") (docket no. 173) filed on May 8, 2006. Furthermore, the Direct Lender Payment Motion should be denied because USACM does not yet know the serviced loans in which the unidentified Direct Lenders claim to hold an interest, the extent of that interest, or the specific collateral at issue. Likewise, the Appraisal Motion should be denied because the appraisals which USACM's Chief Restructuring Officer, Thomas Allison, seeks to obtain are necessary to assess and preserve the value of the serviced loans, the costs associated with obtaining appraisals on the properties securing the loans will be reduced or eliminated where possible, it would not be possible for Thomas Allison to seek approval from each of the Direct Lenders for every appraisal he seeks to obtain, and appraisals are permitted under the Loan Servicing Agreement to facilitate the collation of a loan. This Opposition is supported by the Declarations of Thomas J. Allison on file in this case, the arguments set forth below, and other relevant items of record before this Court in the Debtor's bankruptcy case.[1]

/ / /

/ / /

---

[1] It should be noted that the Direct Lender Payment Motion and the Appraisal Motion, while being couched as new motions, in reality appear to be oppositions to the Motion to Hold Funds and the Debtors' Application for and Order Authorizing Employment of Hilco Real Estate LLC/Hilco Real Estate Appraisal, LLC as Debtors Real Estate Appraisers which was filed on May 8, 2006.

# STATEMENT OF FACTS

1. The jointly administered Debtors, including USACM, filed voluntary petitions for relief on April 13, 2006 (the "Petition Date").

2. Prior to the Petition Date, USACM was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. USACM has not originated or brokered any new loans since the Petition Date, and will not do so without Court approval.

3. On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial Management ("Mesirow") became the President of USACM and the Manager of the four remaining Debtors captioned above who are limited liability companies. In an order entered April 19, 2006, this Court authorized the Debtors' employment of Allison as the Chief Restructuring Officer for an interim period until July 27, 2006.

4. Since the Petition Date, the Debtors, under their new management, have worked hard to begin analyzing and unraveling the problems the Debtors face which have arisen as a result of past business practices and irregularities in servicing the loans.

5. USACM continues to be the loan servicer for approximately 115 commercial loans having a combined outstanding balance of approximately $962 million (the "Serviced Loans"), nearly all of which are secured by various real estate projects or developments. The loan documents and other records of USACM indicate that there are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" for one or more of the Serviced Loans.

6. Typically, there are dozens or even hundreds of Direct Lenders on a particular loan, with each lender having only a small fractionalized share. Among the Direct Lenders are two of the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds"). Diversified has approximately 1,900 LLC members and Capital First has approximately 1,300 members (collectively, the "Fund Members"). There is substantial overlap among the Direct Lenders and the Fund Members.

7. As of the Petition Date, a significant portion of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans"). Despite the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents, pre-petition (under the prior management) USACM continued to pay regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether or not USACM had actually collected payments from the borrowers. As a result, the Debtors have substantial claims for reimbursement against each Direct Lender and possibly, from each Fund Member who received overpayments from USACM or the Funds.

8. No interest payments have been made to the Direct Lenders or the Fund Members since the Petition Date. Instead, USACM is holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds) in a new, post-petition Debtor-in-Possession DIP Collection Account (the "DIP Collection Account"). No funds from any other sources have been commingled with or placed in the DIP Collection Account since the Petition Date.

9. The Debtors maintain operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative duties.

10. On May 24, 2006, the Court entered an order approving the Debtors' motion requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors pursuant to a revised cash budget through July 16, 2006. This initial time period of cash use was requested by the Debtors in order to enable USACM, which has the right and obligation under its servicing agreements with the Direct Lenders and under Nevada state law, to perform appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the extent and effect of the overpayments, underpayments, and collateral releases.

11. On May 8, 2006, the Debtors filed the Motion to Hold Funds which requests an Order from the Court permitting USACM to temporarily hold the funds USACM has collected and continues to collect from borrowers in its capacity as the loan servicer pending the completion of Mesirow's investigation, analysis and report to the Court recommending the proper

1 disbursement of the funds, and pending the Court order on or after July 25, 2006 relating to the
2 distribution of the funds to the proper recipients.

3      12.   On May 8, 2006, the Debtors also filed an Application for an Order Authorizing Employment of Hilco Real Estate LLC/Hilco Real Estate Appraisal, LLC as Debtors Real Estate Appraisers (the "Hilco Application") (docket no. 172) seeking the employment of Hilco Real Estate, LLC and Hilco Real Estate Appraisal, LLC (collectively referred to as "Hilco") to provide real estate appraising and related services to the Debtors in connection with the real estate that secures the Serviced Loans.

      13.   On May 11, 2006, the Direct Lenders filed the Direct Lender Payment Motion seeking: (1) to compel USACM to forward all payments owed to the Direct Lenders on both performing and non-performing loans subject to any setoff rights that USACM may later assert for overpayments to the Direct Lenders, and (2) the delay or prohibition on appraisals on any of the property securing the performing loans, unless consented to by the Direct Lenders, or USACM agrees that it will not levy any surcharges or fees against the Direct Lenders for such appraisals.

## ARGUMENT IN OPPOSITION TO THE MOTIONS

### I.   THE DIRECT LENDER PAYMENT MOTION SHOULD BE DENIED

The Direct Lender Payment Motion requests that certain unidentified Direct Lenders be immediately paid all amounts that are owed to them on both performing and non-performing loans, subject to any setoff rights that USACM may later assert for overpayments to the Direct Lenders. In response, USACM incorporates by reference those arguments that are set forth in the Motion to Hold Funds.[2] A summary of those arguments is as follows. First, USACM should not be required to disburse or distribute any funds to the investors until USACM, through its new management, is able to thoroughly investigate and evaluate the Debtors' files and records and determine, among other things, what portions of the funds held by USACM represent unpaid servicing and loan origination fees, which investors have been overpaid as a result of USACM's pre-petition practice of making regular monthly interest payments regardless of the status of the

---

[2] The Debtors also plan to file a reply memorandum in support of the Motion to Hold Funds at the appropriate time which will further address the issues being raised by those parties who have filed oppositions thereto.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  underlying loan, and which investors have been underpaid, including investors to whom principal
2  repayments were not remitted when collateral was released pre-petition.  Second, USACM has a
3  contractual obligation under paragraph 2(c)(i) of the loan servicing agreements and a statutory
4  obligation under Nev. Rev. Stat. § 645B.175(5) not to release the funds being held by USACM
5  until their rightful ownership is determined.  Third, until various rights to the funds in the DIP
6  Collection Account are determined, the Debtors may have an equitable interest in the notes and
7  mortgages to administer them, possibly making the funds property of the estate to a limited extent
8  so that no immediate distribution should be made.  Fourth, it may be possible that the Direct
9  Lenders may be deemed to be creditors of USACM rather than lenders on particular loans, and
10 thus, those loans may be deemed to be property of USACM's estate.  Fifth, the Debtors may have
11 an equitable claim or liens on the collateral securing the Serviced Loans for the benefit of all of the
12 Direct Lenders, thereby warranting a temporary freeze on the distribution of any of the funds.

13       The Direct Lender Payment Motion should also be denied because USACM has not yet
14 been able to ascertain in which of the specific Serviced Loans the Direct Lenders claim to hold an
15 interest, the extent of that interest, or the collateral at issue.  Rule 2019(a) of the Bankruptcy
16 Rules contemplates that in a chapter 11 reorganization case, every entity representing more than
17 one creditor or equity security holder must provide, inter alia, the name and address of the creditor
18 or equity security holder whom they represent, and the nature and amount of the claim or interest.
19 Furthermore, the Court specifically directed at the May 18, 2006 hearing that all parties in interest,
20 including Direct Lenders, comply with the requirements of Rule 2019.

21       Rule 2019(b) states that if a bankruptcy court determines that the requirements of
22 subsection (a) have not been met, then it can refuse to permit the entity representing the creditor or
23 equity security holder to be heard.  In this instance, at USACM's request, Jones Vargas recently
24 provided to USACM's counsel the names of the Direct Lenders who it is representing in
25 connection with the Direct Lender Payment Motion and the Appraisal Motion.[3]  However, Jones

---

[3] The Direct Lenders represented by Jones Vargas in connection with the Motion for Relief include Andrew Dauscher, Ellen Dauscher, Evelyn Asher Sheerin, Trustee for the Benefit of the Chris H. Sheerin (deceased) and Evelyn Asher Sheerin 1984 Trust Dated 5/31/84, Evelyn Asher Sherrin, Trustee of the Chris and Evelyn Sheerin 1990 Trust, Sheerins Inc., Fertitte Enterprises, and Mojave Canyon, Inc.

Vargas still has not provided to USACM any information about the identity of the specific Serviced Loans in which the Direct Lenders claim an interest, the extent of that interest, or the collateral at issue, nor have they otherwise complied with the requirements of Rule 2019. The Direct Lender Payment Motion is silent on these critical issues and instead only states that "Jones Vargas represents numerous direct lenders who are named beneficiaries ("Direct Lenders") of certain loans which were originated and serviced by Debtor USA Commercial Mortgage Co. . . ." See Direct Lender Payment Motion and Appraisal Motion at p. 2. This statement clearly is not sufficient to satisfy the requirements or Rule 2019(a), nor can USACM reasonably be expected to adequately respond to the Direct Lenders Payment Motion when the loans, the collateral and the payment amounts that are at issue have not been disclosed.

## II. THE DIRECT LENDER APPRAISAL MOTION SHOULD BE DENIED

In the Appraisal Motion, the unidentified Direct Lenders request that USACM be delayed or prevented from conducting appraisals of properties securing performing loans unless the Direct Lenders consent thereto, or USACM agrees that it will not surcharge the Direct Lenders for such appraisals. This motion should be denied for several reasons.

First, these appraisals are necessary to assess and preserve the value of the Serviced Loans, to engage in meaningful negotiations with delinquent borrowers, and to make decisions or recommendations relating to the preservation and protection of the value of the collateral. As noted above, USACM has identified approximately 115 separate loans that may involve as many as 6,800 direct or indirect investors. In reviewing these loans, USACM has determined that some of the loan files contain no appraisals, others contain outdated appraisals or appraisals that appear to be unreliable, other appraisals relate to properties securing non-performing or under-performing loans, and still others involve properties in which former principals of the Debtors are investors. Additionally, some "performing" loans are deemed performing because interest payments are being made out of escrowed interest reserves. These loans may become non-performing when the interest reserves are used up. Accordingly, USACM believes that it is necessary, in some instances, to either obtain an initial appraisal on those properties securing the Serviced Loans for which there is no existing appraisal, or to obtain a new or updated appraisal to determine the

validity and accuracy of the appraisals which do exist in the loan files. Obtaining these appraisals is critical because USACM's new management must have access to current and reliable valuation reports in order to fully assess and preserve the value of the loans being serviced by USACM. Furthermore, in order to engage in meaningful negotiations with delinquent borrowers regarding the resumption of interest payments, or the completion of the principal payments, management must have available to it current and reliable appraisals of the underlying properties.

Second, USACM is cognizant of the Direct Lenders concerns about the costs that are being incurred to unravel the problems and irregularities which arose as a result of the Debtors past business practices. In that regard, USACM does not anticipate that a full fledged appraisal will be needed on every loan, and in particular on performing loans in which valid appraisal information is contained in the loan files. Rather, with respect to those properties which secure performing loans that do not appear to have a risk of becoming non-performing in the near future, or appear to have been the subject of recent or otherwise relatively reliable appraisals, USACM acknowledges that those properties may require a less rigorous valuation report. In those instances, USACM plans to request that Hilco produce a reliable valuation report based on information that is publicly available, without the need for a time consuming and expensive site inspection. Accordingly, the Direct Lenders concerns about the cost of the appraisals have already been considered by USACM and will be reduced or eliminated where possible.

Third, it is important that Mr. Allison have the requisite discretion to determine which type of appraisal, if any, is necessary on the properties securing the Serviced Loans. It simply would not be possible for Allison to obtain specific approval from each of the Direct Lenders before going forward with each and every appraisal he determines is necessary. Given that Allison's employment was approved through July 27, 2006, and he and the Mesirow team are working diligently to assess and preserve the value of the Serviced Loans, and to submit a report and recommendation to the Court regarding the proper distribution of the funds collected and held in the DIP Collection Account within that time frame, long delays in obtaining the necessary appraisals would prove devastating to those efforts.

Fourth, where an appraisal is deemed to be necessary to help facilitate the collection of the loan, it is properly chargeable to the specific loan at issue under the Loan Servicing Agreement. Fifth, it is not reasonable for the Direct Lenders to request that they not be surcharged for the appraisals when USACM does not even know whether these Direct Investors have an interest in a performing or non-performing loan, or both.

## CONCLUSION

Based on the foregoing, USACM respectfully requests that the Court deny the Direct Lender Payment Motion and the Appraisal Motion.

Respectfully submitted this 26th day of May, 2006.

/s/    JEANETTE E. MCPHERSON
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

876593.01