JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: 775-786-5000
Fax: 775-786-1177
Email: jlc@jonesvargas.com
  and  tbw@jonesvargas.com
  and  lbubala@jonesvargas.com

Attorneys for Direct Lenders Mojave Canyon, Inc.;
Andrew and Ellen Dauscher; Gary A. Sheerin;
Robert Cowman; and James Machetta

*Electronically Filed on May 26, 2006*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                        Debtor.<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                        Debtor.<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                        Debtor.<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                        Debtor.<br><br>USA SECURITIES, LLC,<br>                                                        Debtor.<br><br>Affects:<br>■ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR<br><br>Chapter     11<br><br><br>**DIRECT LENDERS' OPPOSITION TO DEBTORS' MOTION TO TEMPORARILY HOLD FUNDS (AFFECTS ALL DEBTORS)**<br><br><br>Hearing Date: June 5, 2006<br>Hearing Time: 9:30 a.m. |

1

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

Jones Vargas represents numerous direct lenders who are named beneficiaries ("Direct Lenders") of certain loans which were originated and serviced by Debtor USA Commercial Mortgage Co. (hereinafter, "Debtor" or "USA Commercial"). The Direct Lenders represented by Jones Vargas are among the roughly 3,600 direct lenders who provided funds for loans originated and serviced by USA Commercial. The Direct Lenders hereby filed their Opposition to Debtors' Motion to Temporarily Hold Funds (Ct. Dkt. #173, Motion), based upon the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and any other material this Court may wish to consider.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Direct Lenders object Debtors' continued attempts to withhold borrower payments. Debtors' motion contains serious failings. Debtors selectively cite from cases, omitting critical facts that make the decisions inapplicable to the case at hand. Debtors also rely on legal theories that turn on facts that they admit they have not yet even investigated. These speculative arguments are made without any evidentiary support. Finally, the Nevada Revised Statutes require USA Commercial to distribute the payments to the Direct Lenders. Debtors argue to the contrary, but the statutes are unambiguous: If the mortgage agent collects its servicing fees, it must immediately distribute the borrower payment to the lenders.

### II. DISCUSSION AND ARGUMENT

**A. The Direct Lenders Are Not "Investors" in Debtors or Their Property**

As an initial matter, the Direct Lenders must make the record clear that they are not investors in USA Commercial, any of the other debtors, or their property. Despite this Court's directive that the direct lenders are, in fact, lenders, USA Commercial continually confuses matters by referring to direct lenders as "investors," and stating that the direct lenders "invested" their funds. *See* Ct. Dkt. #173, Motion to Temporarily Hold *passim*. USA Commercial's characterization is simply wrong.

As the Direct Lenders and others have reiterated, the general name "direct lenders" arises because they directly lent funds to borrowers in loans arranged by USA Commercial. *E.g.,* Ct.

2

1  Dkt. #215 Direct Lender Motion to Compel Debtor to Continue to Forward Payments; Ct. Dkt.
2  #281, Alexander Trust Opposition to Motion to Temporarily Hold; Ct. Dkt. #323, McKnight Trust
3  Opposition to Motion to Temporarily Hold.  The direct lenders and borrowers are the named
4  parties in the loan agreements, promissory notes, and deeds of trust.  After USA Commercial
5  brought the lenders and borrowers together, its only remaining role is as a servicing agent, nothing
6  more than an administrative intermediary to accept payments from borrowers and distribute the
7  payments to the direct lenders.

8  USA Commercial recognizes that direct lenders are just that—lenders, not investors.  As
9  USA Commercial stated in a motion, "The loan documents and other records of USACM indicate
10 that there are approximately 3,600 investors (the 'Direct Lenders') whose names appear as a
11 'Lender' for one or more of the Serviced Loans."  Ct. Dkt. #173, Motion to Temporarily Hold at
12 4:21-23.  The quoted language even contains a footnote, recognizing that the Court has "expressed
13 a preference for the term 'Direct Lenders'" rather than "Loan Investors."  *Id.* at 4 n.2, *citing* May
14 3, 2006, hearing.  Yet USA Commercial continues to refer to the direct lenders as investors.
15 Debtors' Motion to Temporarily Hold contains 58 references to "investors" who "invested" their
16 funds, rather than as lenders who lent their money.  *Id. passim.*

17 USA Commercial's misstatement is not inconsequential, especially now that it asserts the
18 direct lenders may, in fact, be investors.  USA Commercial states that the substance of the
19 transactions may require the Court to treat direct lenders as investors in its loan, rather than direct
20 lenders to the borrowers.  Ct. Dkt. #173, Motion to Temporarily Hold at 10.  The Direct Lenders
21 do not dispute the Court's ability to evaluate a transaction to determine its nature.  *Bear v. Coben*
22 (*In re Golden Plan of Calif., Inc.*), 829 F.2d 705, 709 (9th Cir. 1987).

23 However, Debtors' argument is wholly speculative.  Not only do Debtors provide no
24 evidence, but they have not even made a "determination as to whether such circumstances exist in
25 this case, or whether this approach is warranted and should be advocated by Debtors."  Ct. Dkt.
26 #173 at 10.  Debtors' authority for their "argument" also is distinguishable.  In *Ryan v. Zinker* (*In*
27 *re Sprint Mortgage Bankers Corp.*), the lenders/investors were not perfected, an issue not at
28 question with the perfected Direct Lenders.  Ct. Dkt. #173 at 10, *citing* 164 B.R. 224, 229 (Bankr.

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

3

1  E.D.N.Y. 1994). Debtors also cite but do not discuss *Corporate Financing, Inc. v. Fidelity National Title Insurance Co.* (*In re Corporate Financing, Inc.*), perhaps because it involved an originator and lender that formed a joint venture to fund the loan, unlike anything at issue with the Direct Lenders. *Id.* at 10, *citing* 221 B.R. 671, 674 (Bankr. E.D.N.Y. 1998). Finally, the only cited Ninth Circuit authority, relegated to an undiscussed "see also" cite, involved investors in debtor's corporate entity that had already funded loans. *Id.* at 11, *citing Fireman's Fund Ins. Cos. v. Grover* (*In re Woodson Co.*), 813 F.2d 266, 267 (9th Cir. 1987). This describes financing like the investors in Debtors USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC—not the direct lenders who funded loans arranged by USA Commercial.

Debtors continually misuse the term investors to describe the Direct Lenders, and there is no basis for their assertion that the Direct Lenders might actually be investors due to the nature of the transaction. Debtors should ensure that their language and arguments are consistent with the facts of the case.

**B. Debtors Have No Right to Withhold Post-Petition Loan Payments from Direct Lenders**

Debtors rely on inapposite authority to support their theory that they have rights to withhold the borrowers' loan payments from the Direct Lenders. The Direct Lenders hold all property rights in the ongoing loan payments, and USA Commercial's sole role as servicing agent is to collect the payments from borrowers and forward the funds to the Direct Lenders. Regardless of Debtors' arguments that they are somehow entitled to hold onto the ongoing borrower loan payments, Debtors have no rights in the payments and must continue to redistribute them to the Direct Lenders.

Debtors implicitly assert a setoff right in post-petition loan payments to recover any pre-petition overpayments and uncollected fees owed to USA Commercial as the servicing agent. Ct. Dkt. #173 at 6-7. Aside from the fact that any overpayments or uncollected fees are solely the result of USA Commercial's own malfeasance, Debtors cite no direct authority that entitles them to setoff rights in bankruptcy. Debtors instead cite state receivership law, in what appears to be an attempt to avoid the Bankruptcy Code's unambiguous language that prevents an offset between pre-petition and post-petition claims.

4

1    The setoff statute allows a creditor to "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under the title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). Given the statutory language, a setoff is impossible in this case. The statute clearly applies only when a debtor and creditor owe funds to each other pre-petition, and the Ninth Circuit has held that offsetting mutual debts "must be incurred prior to the filing of a bankruptcy petition." *Sims v. U.S. Dep't of Health & Human Servs.* (*In re TLC Hosps., Inc.*), 224 F.3d 1008, 1011 (9th Cir. 2000). Given the mixed pre-petition, post-petition nature of Debtors' arguments, the setoff statute is not applicable.

Even if this simply involved a pre-petition matter, a setoff is inapplicable because USA Commercial and the Direct Lenders do not have mutual debts. For the sake of argument, assume USA Commercial is a creditor against the Direct Lenders for overpayment on underperforming loans or for uncollected service fees. There still must be a corollary situation in which the Direct Lenders are creditors of USA Commercial. This requires USA Commercial to owe a debt to the Direct Lenders. But a creditor-debtor relationship does not exist between the Direct Lenders and USA Commercial for the ongoing loan payments that USA Commercial receives as servicing agent. To be sure, the debtor-creditor relationship for underperforming loans is between the Direct Lenders and the borrowing party. USA Commercial, as the servicing agent, has no rights in the ongoing borrower payments on the performing loans; it is merely a conduit to move the payments to the Direct Lender. Thus, there is no mutuality of debt, and the setoff statute does not apply.

**C. Debtors Do Not Have Contractual or Statutory Obligations to Withhold Payments**

**1. Debtors Do Not Identify a Contractual Obligation that Requires Withholding**

Debtors do not specify a contractual obligation that requires them to withhold the post-petition payments from the Direct Lenders. Debtors simply state that the loan-servicing agreement requires USA Commercial to forward the borrower payments to the "proper parties." Ct. Dkt. #173 at 8. While true, it is irrelevant. There is no allegation that USA Commercial forwarded borrower payments to improper parties pre-petition. Even if such a claim existed, it

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

simply provides the basis for an adversary proceeding to recover payments made to an improper party. The "proper parties" provision does not stop USA Commercial from continuing to pass on the borrower loan payments to the Direct Lenders identified as the secured lenders in the loan agreements, promissory notes, and deeds of trust. Nothing in the loan-servicing agreement requires or permits USA Commercial to withhold ongoing post-petition borrower payments from the Direct Lenders.

**2. Nevada Statutes Require Distribution, not Withholding**

Debtors also misconstrue the Nevada Revised Statutes in their attempt to hold the post-petition borrower payments which belong to the Direct Lenders. Debtors are correct that Nevada prevents a mortgage servicing agent from distributing borrower payments to some, but not all, lenders in a discrete project. NRS 645B.175(5)(b). But the statute does not prevent USA Commercial from continuing to forward the ongoing, post-petition borrower payments to the Direct Lenders and all other direct lenders. Indeed, the statute requires mortgage brokers and agents to continue to distribute the borrower payments.

NRS 645B.175 reads in relevant part (emphasis added):

> 4. Except as otherwise provided in this section, **all money paid to a mortgage broker and his mortgage agents by a person in full or in partial payment of a loan secured by a lien on real property, must:**
>
>    **(a) Be deposited in:**
>       **(1) An insured depository financial institution; or**
>       **(2) An escrow account** which is controlled by a person who is subject to instructions regarding the account which are approved by the parties.
>
>    (b) Be kept separate from money:
>       (1) Belonging to the mortgage broker in an account appropriately named to indicate that it does not belong to the mortgage broker.
>       (2) Received pursuant to subsection 1.
>
> 5. Except as otherwise provided in this section, **the amount held in trust pursuant to subsection 4:**
>
>    **(a) Must be released, upon the deduction and payment of any fee or service charge due the mortgage broker,** to each investor who owns a beneficial interest in the loan in exact proportion to the beneficial interest that he owns in the loan; and
>
>    (b) Must not be released, in any proportion, to an investor who owns a beneficial interest in the loan, unless the amount described in paragraph (a) is

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

> also released to every other investor who owns a beneficial interest in the loan.

A plain reading of the statute mandates USA Commercial release the funds to each Direct Lender "upon the deduction and payment of any fee or servicing charge due the mortgage broker."[1] NRS 645B.175(5)(a). So if USA Commercial collects its servicing fees, the Nevada legislature requires it to immediately distribute the borrower payments to the Direct Lenders. Moreover, USA Commercial, as debtor in possession, must comply with Nevada's laws. 28 U.S.C. § 959(b) ("[A] debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated."); *see Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc.* (*In re. Megafoods, Inc.*), 163 F.3d 1063, 1070-72 (9th Cir. 1998) (applying Section 959(b) to require compliance with state law).

Given Debtors' status in bankruptcy, the Direct Lenders must conclude that USA Commercial collecting its servicing fees to support Debtors' ongoing operations. If so, the USA Commercial must distribute the borrower payments to the Direct Lenders represented by Jones Vargas and all other direct lenders in those projects. Contrary to Debtors claims that it is statutorily required to withhold the borrower payments, the Nevada Revised Statutes require USA Commercial to distribute the borrower payments to the Direct Lenders, now.

**D. Debtors Do Not Have an Equitable Interest in the Borrower Payments**

Debtors assert they have an equitable interest in the post-petition borrower payments, but they ignore the fundamental facts of this case to provide the supporting authority for their argument. Ct. Dkt. #173 at 9-10. Debtors' entire argument is premised on one case, an out-of-circuit, bankruptcy court decision, *Gaffney v. Rubino* (*In re Builders Capital & Services, Inc.*), 317 B.R. 603 (Bankr. W.D.N.Y. 2004). *Gaffney* is not precedential, and its holding lacks any

---

[1] The word "upon" commonly means immediately, such that the legislature's use of the word in the statute requires USA Commercial to immediately distribute of borrower payments when it collects its servicing fee. *See, e.g., Pelegrini v. Principi*, 18 Vet. App. 112, 119 (2004) (defining "upon" to mean "on the occasion of, at the time of, or immediately thereafter"), citing Webster's College Dictionary 1465 (Random House 1992); *Columbus, Ga. Consol. Gov't v. Schmidt*, 507 S.E.2d 435, 436 & n.2 (Ga. 1998) ("on the occasion of: at the time of"), citing Webster's Third New Int'l Dictionary 2518 (1961); *Ferris v. Coleman Co.*, 611 N.Y.S.2d 752, 753 (N.Y. Sup. Ct. 1994) ("with little or no interval after"), citing Websters New Int'l Dictionary (2d ed., Unabridged).

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  persuasive value because the case is premised on facts that are unrelated to Debtors' situation.

2  *Gaffney* involved a dispute over notes and mortgages made in the name of the mortgage brokerage's principal. *Id.* at 605-06. While the court found that the mortgage brokerage/servicing agent retained an equitable interest in the transactions, it noted substantial differences from the USA Commercial-Direct Lender situation. The court found that the "individual investors provided capital to the debtor [mortgage brokerage, which] never segregated those investments but commingled them into its general accounts." *Id.* at 610. The court then held that the mortgage brokerage retained an equitable interest in the notes because the funds came from its account, even though the notes and mortgages were in the principal's name. *Id.* Thus, *Gaffney* found the mortgage brokerage had an equitable interest in the transaction because the brokerage—not the investors—funded the loans.

Once again, Debtors' cited authority involves facts akin to the investors in Debtors USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, not the direct lenders who funded loans arranged by USA Commercial. The mortgage brokerage in *Gaffney* had legal title to the money used to fund the loans. If the brokerage's principal had not conducted the transactions in his own name, the brokerage would have had legal title to the notes and mortgages too. *Id.* at 610. The only reason the court found the brokerage held equitable title was because the brokerage's principal converted the brokerage's funds to his own name. In contrast, the Direct Lenders directly funded the loans arranged by USA Commercial, and the Direct Lenders were named on the loan agreements, notes, and deeds of trust. Given that the Direct Lenders funded the loans, and the loans were made in their names, the only conclusion is that the Direct Lenders—not USA Commercial—holds all legal and equitable rights in the transactions.

**E. The Potential Pro Rata Distribution Provides No Basis for Withholding Payments**

The Debtors again make a purely speculative legal argument to support their motion to temporarily withhold distributing borrower payments to the Direct Lenders. Debtors assert a legal theory that pre-petition irregularities may require an equitable, pro rata distribution. Ct. Dkt. #173 at 11, citing *Hatoff v. Lemons & Assoc., Inc.* (*In re Lemons & Assoc., Inc.*), 67 B.R. 198 (Bankr.

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

D. Nev. 1986). However, the "Debtors have made no determination as to whether such circumstances exist in this case, or whether this approach is warranted or should be advocated by the Debtors." *Id.* at 11-12. If the Debtors themselves are unaware of any evidence to support such a theory, the Direct Lenders fails to see how this tentative argument could possible provide a basis for Debtors' continued withholding of post-petition borrower payments.

### III.  CONCLUSION

Debtors fail to provide any precedential or persuasive authority to support their claim that they should be allowed to retain the borrower payments. Debtors have carefully edited their citations to support their arguments, but a closer review of their cited cases show they involve facts completely inapposite to the loans funded by the Direct Lenders. Debtors also repeatedly assert legal theories without any evidentiary support. Finally, the Nevada Revised Statutes <u>require</u> USA Commercial to distribute the payments to the Direct Lenders immediately. Debtors' motion to temporarily withhold funds should be denied.

DATED this 26th day of May, 2006.

JONES VARGAS

By:     //s// Janet L. Chubb
        JANET L. CHUBB, ESQ.
        LOUIS M. BUBALA, ESQ.

Attorneys for Direct Lenders

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

# CERTIFICATE OF SERVICE

1. On May 26, 2006, I served the following document(s):
   **DIRECT LENDERS' OPPOSITION TO DEBTORS'
   MOTION TO TEMPORARILY HOLD FUNDS
   (AFFECTS ALL DEBTORS)**

2. I served the above-named document(s) by the following means to the persons as listed below:

   : a. **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

- **FRANKLIN C. ADAMS**
  franklin.adams@bbklaw.com arthur.johnston@bbklaw.com
- **KELLY J. BRINKMAN**
  kbrinkman@gooldpatterson.com
- **MATTHEW Q. CALLISTER**
  mqc@callister-reynolds.com maggie@callister-reynolds.com
- **CANDACE C CARLYON**
  ltreadway@sheacarlyon.com
  ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rsmith@sheacarlyon.com
- **KEVIN B. CHRISTENSEN**
  kbchrislaw@aol.com
- **JEFFREY A. COGAN**
  jeffrey@jeffreycogan.com sarah@jeffreycogan.com
- **CICI CUNNINGHAM**
  bankruptcy@rocgd.com
- **LAUREL E. DAVIS**
  bklsclv@lionelsawyer.com
  ldavis@lionelsawyer.com;gbagley@lionelsawyer.com;ldavisesq@aol.com
- **THOMAS H. FELL**
  THF@GORDONSILVER.COM BANKRUPTCYNOTICES@GORDONSILVER.COM
- **SCOTT D. FLEMING**
  sfleming@halelane.com dbergsing@halelane.com,ecfvegas@halelane.com
- **TALITHA B. GRAY**
  tbg@gordonsilver.com bankruptcynotices@gordonsilver.com
- **EDWARD J. HANIGAN**
  haniganlaw@earthlink.net haniganlaw1@earthlink.net
- **CHRISTOPHER D JAIME**
  cjaime@waltherkey.com kbernhar@waltherkey.com
- **EVAN L. JAMES**
  ejameslv@earthlink.net kbchrislaw@aol.com
- **ROBERT R. KINAS**
  rkinas@swlaw.com
  mstrand@swlaw.com;jlustig@swlaw.com;lholding@swlaw.com;imccord@swlaw.com
- **NILE LEATHAM**
  nleatham@klnevada.com ckishi@klnevada.com;bankruptcy@klnevada.com

- **ROBERT C. LEPOME**
  robert@robertlepome.com susan@robertlepome.com
- **WILLIAM L. MCGIMSEY**
  lawoffices601@lvcoxmail.com
- **RICHARD MCKNIGHT**
  mcknightlaw@cox.net
  gkopang@lawlasvegas.com;cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JEANETTE E. MCPHERSON**
  jmcpherson@s-mlaw.com bkfilings@s-mlaw.com
- **DAVID MINCIN**
  mcknightlaw@cox.net
  gkopang@lawlasvegas.com;dmincin@lawlasvegas.com,cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JOHN F MURTHA**
  jmurtha@woodburnandwedge.com
- **DONNA M. OSBORN**
  jinouye@marquisaurbach.com
  dosborn@marquisaurbach.com;tszostek@marquisaurbach.com;jcrowe@MarquisAurbach.com;kgallegos@MarquisAurbach.com
- **DONALD T. POLEDNAK**
  sandplegal@yahoo.com spbankruptcy@yahoo.com
- **SUSAN WILLIAMS SCANN**
  sscann@deanerlaw.com palexander@deanerlaw.com
- **LENARD E. SCHWARTZER**
  bkfilings@s-mlaw.com
- **SHLOMO S. SHERMAN**
  ssherman@sheacarlyon.com
  aboehmer@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;ltreadway@sheacarlyon.com;mmallet@sheacarlyon.com;rsmith@sheacarlyon.com
- **JEFFREY G. SLOANE**
  gjklepel@yahoo.com rmcconnell@kssattorneys.com
- **PETER SUSI**
  cheryl@msmlaw.com msm@msmlaw.com
- **CARYN S. TIJSSELING**
  cst@beesleyandpeck.com aha@beesleyandpeck.com
- **JOAN C WRIGHT**
  jwright@allisonmackenzie.com jbrooks@allisonmackenzie.com
- **MATTHEW C. ZIRZOW**
  bankruptcynotices@gordonsilver.com

: b. **United States mail, postage fully prepaid** (list persons and addresses):

```
JOSHUA D BRYSK
LAW OFFICES OF JAMES G SCHWARTZ
7901 STONERIDGE DRIVE, SUITE 401
PLEASANTON, CA 94588
```

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

11

```
ANNETTE W JARVIS
POB 45385
36 SOUTH STATE STREET, #1400
SALT LAKE CITY, UT 84145-0385

RICHARD J. MASON
130 PINETREE LANE
RIVERWOODS, IL 60015

REGINA M. MCCONNELL
1389 GALLERIA DRIVE
SUITE 200
HENDERSON, NV 89052

ERVEN T NELSON
6060 W. ELTON AVENUE, SUITE A
LAS VEGAS, NV 89107

NICHOLAS J SANTORO
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

MICHAEL M. SCHMAHL
MCGUIREWOODS LLP
77 W. WACKER DRIVE, SUITE 4100
CHICAGO, IL 60601

JAMES G SCHWARTZ
7901 STONERIDGE DR #401
PLEASANTON, CA 94588

PATRICIA K. SMOOTS
318 N GROVE
OAK PARK, IL 60302

BRADLEY J STEVENS
3300 N CENTRAL AVE #1800
PHOENIX, AZ 85012

GREGORY J WALCH
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

WILLIAM E WINFIELD
POB 9100
OXNARD, CA 93031
```

❾ c.    **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

❾    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

❾    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

❾ d.    **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

12

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

❾ e.  **By fax transmission** (list persons and fax numbers):

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

❾ f.  **By messenger**:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed blow and providing them to a messenger for service. (A declaration by the messenger must be attached to this Certificate of Service).

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 26th day of May, 2006.

| J. Englehart & Tawney Waldo | //s// Tawney Waldo & J. Englehart |
|---|---|
| Name | Signature |

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

13

H:\Fs1Wp51\Direct Lenders-Beneficiaries\Pleadings\Oppos D's Mtn, Temp Hold Funds\Opp, Temp Hold Funds 5.24.06.doc