# EXHIBIT 1

# AMENDED AND RESTATED REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT

This Amended and Restated Agreement is entered into as of May 1, 2006, by and between Hilco Real Estate, LLC and Hilco Real Estate Appraisal, LLC (collectively, "Hilco") on the one hand, and USA Commercial Mortgage Company; USA Capital Realty Advisors, LLC; USA Securities, LLC; USA Capital First Trust Deed Fund, LLC and USA Capital Diversified Trust Deed Fund, LLC (collectively, the "Companies" or "Debtors") on the other hand, which have filed voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Nevada (the "Bankruptcy Court"), subject to notice and Bankruptcy Court approval, and the Debtors hereby agree to retain Hilco with respect to the valuation of certain real estate serving as collateral for loans originated by the Debtors, expert witness and consulting and advisory services relating to the Debtors' real estate loans analysis ~~and disposition of Company's right, title and interest in any owned properties that the Debtors may acquire through foreclosures or otherwise in their chapter 11 cases~~.

Recitals:

A.  The Companies are in the business of originating, underwriting, brokering and servicing commercial loans or fractional interests therein.

B.  The Companies desire to retain a real estate services firm to provide the Debtors with valuation services, expert witness and consulting and advisory services ~~and disposition services~~ in connection with the real estate projects that serve as collateral for the loans they have made. ~~The valuation services are also necessary in connection with the Debtors' debtor-in-possession financing efforts.~~ The Debtors require such services to maximize the value of the estates.

C.  Hilco is one of the leading national providers of real estate valuation, consulting and advisory and ~~disposition services and~~ the Debtors desire to retain Hilco on the terms set forth herein to perform such services in their chapter 11 cases.

Agreement:

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Hilco agree as follows:

1.  Valuation Services.  At the Debtors' request, Hilco shall perform valuations of all of the real estate serving as collateral for the loans made by the Debtors (the "Valuation Services").

2.  Expert Witness, Consulting and Advisory Services.  At the Debtors' request, Hilco shall provide real estate consulting and advisory services in connection with assisting the Debtors' maximizing the value of their estates.  Such services may include collectively, the "Expert Witness, Consulting and Advisory Services"):

USA Capital
391322v~~1~~3

(a) preparing for and providing expert witness testimony before the Bankruptcy Court on real estate matters including depositions;

(b) consulting with the Debtors' on the status of various real estate projects on which the Debtors have made loans;

(c) consulting with the Debtors on the real estate aspects of any defaulted loans; and

(d) advising the Debtors' as to the real estate aspects of making further loans with respect to specific projects.

~~3.   Disposition Services.  At the Debtors' request as to any specific properties, serve as the Debtors' real estate disposition agent in connection with any designated property that the Debtors may gain control or ownership of in connection with the workout of any defaulted loans during their chapter 11 cases.  Such services may include (collectively, the "Disposition Services"):~~

~~(a) Developing and designing a marketing program for the sale and/or assignment of the designated properties.~~

~~(b) In conjunction with the Debtors, Hilco will coordinate and organize any bidding procedures and sale process in order to maximize the attendance of all interested bidders for the sale and assignment of any of the designated properties.~~

~~(c) At the Debtors direction, negotiate the terms of the purchase agreements for the sale and assignment of the designated properties.~~

~~(d) Reporting periodically to Company regarding the status of negotiations as to the designated properties.~~

3.   ~~4.~~ Term.  Subject to the entry of an order of the Bankruptcy Court (the "Order"), ~~the term of~~ this Agreement shall commence upon the execution hereof and shall ~~expire 12 months from the date of this Agreement; provided, however, that Hilco or the Company may terminate this Agreement for cause upon~~ continue unless either Hilco or the Companies give thirty (30) days prior written notice of termination to the other~~, without prejudice to Hilco's rights pursuant to Section 6 below and subject to payment of all fees and expenses then due and owing~~.

~~5.   Authority.  Hilco shall have the sole and exclusive authority to offer the any properties for which the Debtors gain control of or acquire ownership of through foreclosure or otherwise on an "exclusive right to sell" basis, subject to the terms hereof.  Hilco shall promptly advise the Companies and their counsel of all offers made with respect to such properties, and the Debtors shall retain the sole and exclusive discretion to accept or reject any proposal and Hilco shall have no authority to bind the Debtors without the Debtors' express written approval.  Hilco is authorized only to negotiate the terms of the  sale/assignment agreements at the direction and on the behalf of the Debtors, but not to commit the Debtors to any such agreement or~~

~~arrangement or to sign any instrument on behalf of the Debtors without the Debtors' express consent.~~  Upon any termination, the provisions of paragraphs 4 and 5 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination and expenses incurred on or before the effective date of termination.

  4. ~~6.~~ Compensation. As compensation for Hilco's services, Hilco shall be paid the following fees:

   (a) <u>Valuation Services</u>. For the Valuation Services, Hilco shall be paid a fee of $300,000 (the "Base Valuation Fee"). Included within the Base Fee is a desk-top valuation review of all the real estate projects serving as collateral for the Debtors' loans and a full written valuation report on up to 40 projects. In the event that the Debtors require as part of the Valuation Services that Hilco perform full written report valuations on more than 40 projects, then in addition to the Base Valuation Fee, Hilco shall be paid an additional fee of $5,000 per project. The Base Valuation Fee shall be paid in three monthly increments of $100,000 on May 31, 2006, June 30, 2006 and July 31, 2006. Any additional fees shall be paid within 30 days of the delivery of the written reports.

   (b) <u>Expert Witness, Consulting and Advisory Services</u>. For the Expert Witness, Consulting and Advisory Services, Hilco shall be paid on an hourly fee basis utilizing the following hourly rates for its employees:

    (i) Senior Professionals: $450 per hour

    (ii) Midlevel Professionals: $350-400 per hour

    (iii) Junior Level Professionals: $250-300 per hour

    (iv) Administrative Staff: $100 per hour.

The fees for the Expert Witness, Consulting and Advisory Services shall be invoiced on a monthly basis and paid in accordance with the interim and final professional fee payment procedures approved by the Bankruptcy Court in the Debtors' chapter 11 cases.

   ~~(c) Disposition Services. For the Disposition Services, Hilco shall be paid a disposition fee on a sliding scale basis out of gross proceeds of any particular sale of a property for which the Debtors' have requested Hilco to perform disposition services determined as follows:~~

| ~~Gross Proceeds~~ | ~~Fee~~ |
|---|---|
| ~~$0-$5,000,00~~ | ~~5%~~ |

USA Capital  
391322v~~1~~3

3

| | |
|---|---|
| ~~$5,000,001-$10,000,000~~ | ~~4%~~ |
| ~~$10,000,001-$20,000,000~~ | ~~3%~~ |
| ~~$20,000,001 and over~~ | ~~1.5%~~ |

~~"Gross Proceeds" shall mean the total amount of cash paid by the buyer(s) of any designated properties. In the event that the method of selling real estate for which the Debtors' have requested Hilco to perform disposition services to an end user or real estate investor is through the sale of a loan, then Gross Proceeds shall mean the amount of cash paid by the buyer for such loan; provided, however that Hilco shall not be entitled to any disposition fees on the sale of loans to other lenders or investors in loans, but only when such loans sales are the vehicle to accomplish the transfer of control of real estate to an end user or real estate investor. The amounts owing to Hilco for the disposition of the Properties shall be paid directly out of Gross Proceeds at the time of closing of the disposition transaction for such property. As an example of how the above fee structure works, if the Gross Proceeds for the sale of a property is $6,000,000, Hilco would be entitled to a fee of $290,000 (calculated as $5 million times 5% plus $1 million times 4%).~~

5.    ~~7.~~ Costs.  All Expenses (defined below) shall be borne by the ~~Company~~Companies and Hilco shall be entitled to reimbursement from the ~~Company~~Companies for all Expenses. Billing shall be monthly and invoices are due not later than thirty (30) days after the date of invoice. "Expenses" means all reasonable out-of-pocket expenses incurred by Hilco in connection with its performance of its services hereunder. Expenses shall include, without limitation: reasonable expenses of all advertising, marketing, coach travel and transportation, including, the cost of out-of-town travel, long distance telephone charges and postage and courier/overnight express fees, and other expenses incurred in connection with performing the services required by this Agreement.

~~8.    Survival.  If within one hundred and twenty (120) days after the expiration of the term of this Agreement, or any extension thereof, the Company and any third party should enter into a written agreement providing for the sale and/or assignment or other disposition of a Property (as to which such agreement was not entered into during the term hereof) Hilco shall be entitled to a fee in accordance with the terms of this Agreement.~~

6.    ~~9.~~ Successors and Assigns.   Hilco shall be entitled to compensation for services rendered and this Agreement shall be binding upon the ~~Company~~Companies or any successor or assignee including but not limited to, a Chapter 11 or 7 trustee, examiner or liquidator.

7.    ~~10.   Exclusive.  During the term of this Agreement, Hilco shall be the sole and exclusive valuation and disposition agent retained by the Debtors.  The Company acknowledges~~Non-Exclusivity.  The Companies acknowledge that Hilco or its affiliated entities may be engaged to sell or market similar assets by other persons or entities, and that any such engagement shall not constitute or be deemed to be a violation of this Agreement.

USA Capital                                         4
391322v~~1~~3

8. <s>11.</s> <u>Indemnification</u>.

   (a) The Companies shall indemnify and hold harmless the Hilco, its officers, employees, members, affiliates, successors and assigns, (collectively, the "Hilco Indemnitees") from any and all attorneys' fees, causes of action, claims, contentions, contracts, costs, covenants, damages, demands, expenses, injuries, liabilities losses and obligations (collectively, the "Claims"), actually incurred by the Hilco Indemnitees which may hereinafter be asserted or arise in connection with the Agreement; except those that may be subsequently determined by a court of competent jurisdiction to have been caused by Hilco's gross negligence or willful misconduct. Moreover, the Companies agree and covenants to defend the Hilco Indemnitees from any and all of the Claims and to pay all reasonable litigation costs and expenses associated therewith, including the actual attorneys' fees incurred by counsel selected by Hilco. The foregoing indemnification shall survive the expiration or termination of this Agreement.

   (b) The Hilco shall indemnify and hold harmless the Companies, their officers, employees, members, affiliates, successors and assigns, (collectively, the "Company Indemnitees") from any and all attorneys' fees, causes of action, claims, contentions, contracts, costs, covenants, damages, demands, expenses, injuries, liabilities losses and obligations (collectively, the "Claims"), actually incurred by the Companies Indemnitees which may hereinafter be asserted or arise in connection with Hilco's retention of brokers, agents or other representatives who thereafter assert any claims against the <s>Company</s><u>Companies</u> relating to the services to be provided by Hilco hereunder.

12. <u>General Provisions</u>.

   (a) The <s>Company</s><u>Companies</u> and Hilco shall deal with each other fairly and in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

   (b) The effectiveness of this Agreement is subject to and contingent upon the entry of the Order under section 327 and 328 of the Bankruptcy Code, in form and substance acceptable to Hilco, authorizing the Debtor's entry into this Agreement, which Debtor agrees to use its reasonable efforts to obtain.

   (c) The <s>Company recognizes</s><u>Companies recognize</u> and <s>acknowledges</s><u>acknowledge</u> that except as to the Expert Witness, Consulting and Advisory Services, the services to be provided by Hilco pursuant to this Agreement are, in general, transactional in nature, and

    Hilco will not be billing the ~~Company~~Companies by the hour or maintaining time records.  As for the Expert Witness, Consulting and Advisory Services, Hilco shall maintain contemporaneous hourly time records.  As to the Valuation Services ~~and the Disposition Services~~, it is agreed that Hilco is not requested or required to maintain such time records and that its compensation will be fixed on the fees set forth herein in Section 4(a) and (c) above.

(d)  Any correspondence or required notice shall be addressed as follows:

  If to Hilco:  Hilco Real Estate, LLC
    5 Revere Drive
    Suite 320
    Northbrook, Illinois 60062
    Tel. (847) 714-1288
    Fax (847) 714-1289
    Attn: Mitchell P. Kahn

  If to the Companies:  USA Capital
    4484 South Pecos Road
    Las Vegas, Nevada 89121
    Tel. (702) 734-2400
    Fax (702) 967-6897
    Attn: Thomas Allison

(e)  This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

(f)  Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this Agreement or Hilco's services hereunder, shall be settled by the Bankruptcy Court.

(g)  By executing or otherwise accepting this Agreement, ~~Company~~the Companies and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

~~(h)  The Parties hereto agree, and the Company hereby expressly acknowledges, that Hilco has not guaranteed the Company any return with respect to the disposition of any properties.~~

(h)  ~~(i)~~ This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

USA Capital    6
391322v~~1~~3

(i)     ~~(j)~~ This Agreement creates no third-party beneficiaries.

\*          \*          \*

IN WITNESS WHEREOF, ~~Company~~<ins>the Companies</ins> and Hilco have executed and delivered this Agreement as of the date first above written.

| | |
|---|---|
| **USA COMMERCIAL MORTGAGE COMPANY**, | **HILCO REAL ESTATE, LLC**, |
| On Behalf of the Debtors | |
| By: _____ | By: _____<br>　　　Mitchell P. Kahn |
| Title: _____ | Title:  President |
| Date: _____ | Date: _____ |

Document comparison done by DeltaView on Friday, May 26, 2006 9:13:45 AM

| Input: | |
|---|---|
| Document 1 | iManageDeskSite://STGINT/iManage/391322/1 |
| Document 2 | iManageDeskSite://STGINT/iManage/391322/3 |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 48 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 71 |