GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
GREGORY M. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mcz@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Telephone (702) 796-5555
Facsimile (702) 369-2666
[Proposed] Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-Filed On May 26, 2006

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | Date: June 5, 2006<br>Time: 9:30 a.m. |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

**OPPOSITION TO DEBTORS' MOTION TO TEMPORARILY HOLD FUNDS PENDING A DETERMINATION OF THE PROPER RECIPIENTS**

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Official Direct Lender Committee"), by and through their proposed counsel, the law firm of Gordon & Silver, Ltd. ("G&S"), hereby submits its Opposition (the "Opposition") to Debtors' Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients (the "Motion"). See Docket No. 173.

This Opposition is made and based on the points and authorities which follow, the pleadings and papers contained in the Court's file, judicial notice of which is hereby requested, and any evidence or oral argument presented at the time of the hearing in this matter.

## POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

1. On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Fund"), and USA Capital Trust Deed Fund, LLC (the "Trust Deed Fund"), all filed their voluntary Chapter 11 petitions for relief in this Court.

2. USACM, USA Securities, USA Realty, the Diversified Fund, and the Trust Deed Fund are all hereinafter collectively referred to as the "Debtors."

3. The Diversified Fund and Trust Deed Fund are hereinafter collectively referred to as the "Funds." Parties, to the extent they have invested in the Funds, are hereinafter collectively referred to as "Investors." Borrowers, to the extent they have received loans from the Funds, are hereinafter collectively referred to as the "Funds Borrowers," and their loans, collectively, as the "Funds Loans." The Investors have only participations in the Funds Loans.

4. The Official Direct Lender Committee, by contrast, represents approximately 3,600 parties to the extent these parties have individually lent monies directly (the "Direct Lenders") to various borrowers, for which USACM is only a loan servicer. Borrowers, to the extent they have received loans from Direct Lenders, are hereinafter collectively referred to as the "Direct Borrowers," and their loans, collectively, as the "Direct Loans." The Direct Lenders are in joint

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

2

loans pursuant to which they have direct contractual privity with the Direct Borrowers.

5. On May 8, 2006, Debtors filed their instant Motion, which requests an order "permitting USACM to temporarily hold funds USACM has collected and continues to collect from borrowers in its capacity as the loan servicer on approximately 115 commercial loans, pending further order of the Court to be entered on or after July 25, 2006 . . . ." Motion, p. 2.

6. Debtors' Motion seeks the Court's permission to continue holding all collections "pending completion of Mr. Allison's investigation, analysis, and report to the Court recommending the proper disbursement of the funds, and until the Court thereafter orders that distributions of the funds begin to the proper recipients." Id.

7. Debtors' Motion also seeks an order "that it not be required to disburse or distribute any funds to investors until USACM, through new management, is able to thoroughly investigate and evaluate the Debtors' files and records and determine" various matters, including the following:

> (a) "[W]hat portion of the funds by USACM represent unpaid servicing and loan origination fees,"
>
> (b) "[W]hich parties investors have been overpaid [and underpaid] as a result of USACM's pre-petition practice of making regular monthly interest payments regardless of the status of the underlying loan," and
>
> (c) "[W]hich investors have been underpaid, including investors whose principal payments were not remitted[,] when collateral was released pre-petition."

Id.

8. On May 10, 2006, the U.S. Trustee filed his Notice of Appointment of the Official Direct Lender Committee pursuant to 11 U.S.C. §§ 1102(a)(1) and (2). See Docket No. 202. Official Committees were also formed for each of the two Funds, and for the unsecured creditors of USACM. See Docket Nos. 201, 203, 204.

9. On May 26, 2006, G&S filed an Application Of The Official Committee Of Holders Of Executory Contract Rights Through USA Commercial Mortgage Company To Employ Gordon & Silver, Ltd.

. . .

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/404430_3

3

## II.
## LEGAL ARGUMENT

A. **Introduction.**

The continued "freeze" on distribution of post-petition loan distributions that Debtors' Motion seeks to perpetuate has and continues to do real harm to real people. The time for Debtors' emergency or "interim" relief is over. USACM has always been only a loan servicer for the Direct Loans, and is both legally and contractually obligated to distribute to Direct Lenders the principal and interest it receives.

The Official Direct Lender Committee requests that the Court deny the relief requested in Debtors' Motion, and instead, immediately order USACM to adhere to controlling Nevada law and their contractual obligations to the Direct Lenders by adhering to the following simple procedure: (a) look at each Direct Loan on a "stand alone" basis; (b) if the specific Direct Loan is "performing," take USACM's service fee; and (c) immediately make pro rata distributions of all post-petition interest and principal received from Direct Borrowers. In no event does the Official Committee of Direct Lenders consent to the surcharge of the Direct Lenders' property or otherwise.

To the extent improprieties occurred pre-petition, distributions can and should be made with a full reservation of rights. However, simply because the Debtors allegedly engaged in misconduct on a pre-petition basis, should not serve as a basis to prevent distributions on a pre-petition basis to the great majority of Direct Lenders in Direct Loans that are performing.

B. **Rights To Funds Collected Post-Petition In The DIP Collection Account.**

1. **Initial Comments.**

The Official Direct Lender Committee understands that what may have been collected pre-petition by USACM from the Direct Loan Borrowers may, in certain circumstances, have been improperly diverted to non-performing loans. This pre-petition morass, however, does not entitle Debtors, on a post-petition basis, to hold on to payments received from Direct Loan Borrowers on performing loans for which it is only a loan servicer.

Debtors' Motion is conspicuously absent of a citation to any provision of the Bankruptcy

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

4

Code, Federal Rules of Bankruptcy Procedure or applicable Nevada law to support its requested relief. This begs the question: on what authority do Debtors base their request for relief? The Official Direct Lenders Committee submits that there is no authority allowing the Debtors to hold captive non-estate property pending an investigation of alleged potential avoidance actions, outside the context of an adversary proceeding, and in fact, Nevada law requires Debtors to immediately distribute the funds.

There is no legal theory to support the proposition that potential avoidance claims give rise to a basis for Debtors to hold onto property that is not property of the estate. There is no adversary proceeding pending as required by Fed. R. Bankr. P. 7001 to assert such rights against Direct Lenders. Debtors' Motion essentially seeks summary relief outside the scope of an adversary proceeding (and the due process requirements that flow from an adversary proceeding), and thus their request violates Fed. R. Bankr. P. 7001.

Debtors' attempted analogy to the 1923 Nevada receivership case of <u>Irving National Bank v. District Court</u>, 217 P. 962 (Nev. 1923), is inapposite. <u>Irving National Bank</u> involved various secured creditors with lien rights in property held by a receiver.[1] As discussed herein, the Direct Lenders are not secured creditors in property of the Debtors, but rather are parties to Direct Loans with liens on property owned by third parties, for which USACM merely acts as only a loan servicer.

2.     **Payments On Direct Loans Are Not Property Of The Bankruptcy Estate.**

Section 541(a)(1) of the Bankruptcy Code provides that a debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ." 11 U.S.C. § 541(a)(1).

Section 541(d) of the Bankruptcy Code, however, excludes from the bankruptcy estate the following:

> (d)    Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor

---

[1] Receiverships are expressly prohibited under the Bankruptcy Code. See 11 U.S.C. § 105(b).

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

5

> retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

Nevada law specifically provides that USACM holds all payments it receives from Direct Borrowers "in trust" for the benefit of the Direct Lenders. See NRS § 645B.174(5).

The case at hand is very similar to the situation at issue in Golden Mortgage Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.), 171 B.R. 79 (B.A.P. 9th Cir. 1994). In Golden Triangle, the BAP held that funds which a loan servicing agent received from a lender for disbursement to a borrower were held in trust, and therefore were not property of the loan servicing agent's bankruptcy estate. See id. at 83. The BAP reasoned that the parties entered into a relationship that the court characterized as an express trust, and that the parties only intended legal title to pass to the loan servicing agent. See id. at 82-83. The BAP noted that the loan servicing agent never had rights in the funds, and was instead intended to be a mere "conduit" for the funds. See id. at 83.

Similarly, in the case at hand, Debtors' bankruptcy estates hold the payments received from Direct Borrowers in trust for the benefit of the Direct Lenders, and solely as an agent of the Direct Lenders. "Joint" loans, like the Direct Lender Loans, involve multiple lenders on a loan from the start, where the lenders are individually identified on the notes and trust deeds, and thus have direct contractual privity with their respective Direct Borrowers. Debtors' Motion continues to ignore the BAP's Golden Triangle decision even though it was cited by several parties, including first G&S in its opposition to Debtors' Cash Management Motion. See Docket No. 80, p. 6.

Other authority is also in accord. See, e.g., In re Cheqnet Sys., Inc., 246 B.R. 873, 877-78 (Bankr. E.D. Ark. 2000) (proceeds of checks which debtor held, prior to its Chapter 7 filing, only as collection agent with right to retain $7 on each check as fee, were included in "property of the estate" only to extent of debtor's $7 per check interest); Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 857 (8th

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/404430_3

6

Cir. 1996) (if property is in the debtor's hands as agent, the property or proceeds therefrom is not treated as property of the debtor's bankruptcy estate).

### C. Contractual And Statutory Requirements For The Immediate Distributions To Direct Lenders.

#### 1. Nevada Law.

Debtors' Motion argues that they are prohibited by Nevada law from making distributions. This is not the case with respect to the Direct Lenders and in fact, Nevada law requires just the opposite.

Specifically, NRS § 645B.175(4) provides certain depository and sequestering requirements with respect to "all money paid to a mortgage broker and his mortgage agents by a person in full or in partial payment of a loan secured by a lien on real property." Importantly, NRS § 645B.175(5) provides as follows:

> 5. Except as otherwise provided in this section, the amount <u>held in trust</u> pursuant to subsection 4:
>
> (a) <u>Must be released</u>, upon the deduction and payment of any fee or service charge due the mortgage broker, to each investor who owns a beneficial interest in the loan in exact proportion to the beneficial interest that he owns in the loan; and
>
> (b) Must not be released, in any proportion, to an investor who owns a beneficial interest in the loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial interest in the loan.

NRS § 645B.175(5) (emphases added).

Each Direct Loan should and can very easily be viewed on a "stand-alone" basis. The statute only speaks in terms on a single loan, and this is how the statute should be construed. There is no basis for Debtors' reading of this statute.

Similarly, NRS § 645B.175(9) does not permit the relief requested by Debtors. Although not referenced by Debtors, NRS § 645B.175(9) provides as follows:

> 9. If a mortgage broker or a mortgage agent receives any money pursuant to this section, the mortgage broker or mortgage agent, after the deduction and payment of any fee or service charge due the mortgage broker, shall not release the money to:

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

7

> (a) Any person who does not have a contractual or legal right to receive the money; or
>
> (b) Any person who has a contractual right to receive the money if the mortgage broker or mortgage agent knows or, in light of all the surrounding facts and circumstances, reasonably should know that the person's contractual right to receive the money violates any provision of this chapter or a regulation adopted pursuant to this chapter.

NRS § 645B.175(9).

How exactly do the Debtors believe that any of the Direct Lender's "contractual right to receive the money violates any provision of this chapter or a regulation adopted pursuant to this chapter"? Absent Debtors' ability to articulate to what specific provision of NRS Chapter 645B distributions to Direct Lenders from post-petition payments received from Direct Borrowers would violate, Debtors cannot withhold such payments on the basis on Nevada law.

### 2. The Loan Documents And Loan Servicing Agreements.

The Loan Servicing Agreements between the Direct Lenders and USACM provide, among other things, that USACM would collect interest and, if applicable, principal owed by the Direct Borrowers to the Direct Lenders on a monthly basis from each of the Direct Loans, charge a service fee, and distribute the payment to the applicable Direct Lenders on the appropriate Direct Loan. The Direct Lenders also executed a "Special Power of Attorney" to enable USACM to fulfill its obligations under the Loan Service Agreements.

Pursuant to the Special Powers of Attorney, the Direct Lenders gave USACM certain limited powers, including the following:

> b.(3) To execute and deliver full and/or partial reconveyances of the Deed of Trust <u>upon the payment therefore to the undersigned,</u> as required by the Deed of Trust, <u>which payments to the undersigned are to be made directly to the undersigned, in proportion to their respective interests, and not said attorney in fact.</u>

(emphases added).

The Special Power of Attorney also provides that:

> This power of attorney <u>shall not be effective to authorize the use or release of money in which the undersigned owns a beneficial interest for any purpose except for the provision of the services

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

8

<u>described above relating to the loan</u> described above unless accompanied by written authorization by the undersigned for the use or release of money for the other purpose.

(emphasis added.)

Pursuant to the Special Powers of Attorney, USACM is expressly forbidden from: (1) reconveying collateral securing the Direct Loans in the absence of simultaneous payment to the Direct Lenders of their proportionate share of principal; (2) accepting principal payments in the name of USACM rather that the Direct Lenders; or (3) converting the Direct Lenders' money from each Direct Loan for use by USACM for any matters unrelated to USACM's service obligations under that specific Direct Loan.

The loan documents entered into by borrowers and Direct Lenders are consistent with the Special Power of Attorney provisions requiring that payments be made directly to the Direct Lenders, and <u>not</u> to USACM. The Loan Agreement and Note both define the Direct Lenders (and not USACM) as "Lenders" and require that payments under the Note be made "to Lenders." Accordingly, the relevant documents (e.g., the Loan Servicing Agreements, Powers of Attorney, Loan Agreements, Notes and Deeds of Trust/Mortgages) prohibit Debtors from executing partial or full security releases in the absence of direct payments to the Direct Lenders in proportion to their ownership interest in the Direct Loans.

Despite unequivocal and consistent language in each Loan document providing that borrowers are to pay principal and interest to Direct Lenders (and not USACM), Debtor endeavors to reshape the Direct Lender/Loan Servicer relationship by asserting some vague potential future equitable interest in the payments or some entitlement to continue receiving same because that allegedly was past practice. None of the Direct Lenders' loan documents (including the Powers of Attorney and Loan Servicing Agreements) entitle Debtors to repayment proceeds. None of the Direct Lenders' Loan documents allow Debtors to grant partial or full releases of security without obtaining payment directly to the Direct Lenders of the Direct Lenders' pro-rata share in any particular loan payment. And none of the Direct Lenders' loan documents allow Direct Borrower payments received as a result of a full or partial release of security to be put to use for anything other that USACM's service obligations under the Loan

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

9

Servicing Agreement for each Direct Loan. Therefore, to the extent Debtors are authorized to give full or partial releases on the Direct Loans, Debtors should be required to abide by the conditions upon which the Direct Lenders granted such authority in the first place; namely, receipt of payments only in the Direct Lenders' name and prompt payments of same to the Direct Lenders.

D. **Debtors Have No "Equitable Interest" In The Direct Lender's Notes And Deeds Of Trust.**

Debtors cite to In re Builders Capital Services, Inc., 317 B.R. 603 (Bankr. W.D.N.Y. 2004), in support of their argument that they may have an "equitable interest" in the Notes and Deeds of Trust/Mortgages, which thereby render these property of the estate. Builders Capital involved a Ponzi scheme in which the notes and mortgages issued by the Debtor were "given to a purported agent acting without authority from the investor," which fact invalidated the mortgages under New York law. Id. at 608-09. The Court described this as the "distinguishing factor that compels the present ruling." Id. at 608 (explicitly distinguishing both the Sprint Mortgage Brokers and Corporate Financing, Inc. cases).

Interpreting New York law regarding mortgages, the Builders Capital Court held that "[n]either the debtor nor any individual investor holds a valid legal interest in the disputed notes and related mortgages." Id. at 609. As a result, the Court ruled, on the "unique facts" of that case, that the disputed notes and related mortgages were assets of the bankruptcy estate. With respect to the Direct Lenders in the case at hand, however, there is no such evidence or even allegations to those raised in Builders Capital, and thus the case has no application herein.

E. **The Direct Lenders Cannot Be "Deemed" Creditors, And The Payments Received On Direct Loans Cannot Be "Deemed" Property Of The Estate.**

Debtors cite to In re Corporate Financing, Inc., 221 B.R. 671 (Bankr. E.D.N.Y. 1998); In re Sprint Mortgage Bankers Corp., 164 B.R. 224 (Bankr. E.D.N.Y. 1994); and Fireman's Fund Insurance Cos. V. Grover (In re Woodson Co.), 813 F.2d 266, 271 (9th Cir. 1987). These cases are not applicable, however, because these Courts found that there were not even true mortgage participation loans, but instead unsecured loans based upon repayment guarantees when the loans

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

10

were in non-performing status. In the case at hand, however, there are no such written, contractual, enforceable repayment guarantees, and thus these cases have no application to the case at hand.

F. **Debtors Have No "Equitable Claims Or Liens On The Collateral For The Benefit Of All Direct Lenders."**

Debtors cite to In re Lemons & Associates, Inc., 67 B.R. 198 (Bankr. D. Nev. 1986), to argue that they may have an "equitable interest or liens" in the collateral securing the Direct Lender's Direct Loans. Lemons involved a situation where the Court found that the transactions between the mortgage company and investors were not loans by investors secured by interests in notes, but rather sales of interests entitling investors to claim only equitable ownership interests in notes. In other words, Lemons (and Builders Capital) also involved sales of loan "participations," as opposed to the Direct Lenders who are identified as lenders on the Notes and beneficiaries on the Deeds of Trust. Debtors' argument is contrary to a plain reading of the applicable loan documents, which list the Direct Lenders as the actual lenders, and the Loan Servicing Agreement, which indicates that USACM is only a loan servicer. There is no basis to "pool" all of the separate Direct Loans into one aggregate; rather, each Direct Lender must look to its respective Direct Borrower for satisfaction of payment.

## III.
## CONCLUSION

WHEREFORE, the Official Direct Lender Committee respectfully requests that the Court order as follows:

1. Deny Debtors' Motion to the extent it seeks to hold or continue holding any post-petition payments received from Direct Borrowers on Direct Loans.

2. Order USACM to adhere immediately to the following procedure: (a) look at each Direct Loan on a "stand alone" basis; (b) if the specific Direct Loan is "performing," take USACM's service fee; and (c) immediately make pro rata distributions of all post-petition interest and principal received from Direct Borrowers.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

11

3.  Grant the Direct Lenders such other and further relief as is just and proper.

DATED this 26 day of May, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
GREGORY M. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109

[Proposed] Attorneys for the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/404430_3

12