1   Annette W. Jarvis, Utah Bar No. 1649                    **E-FILED ON May 26, 2006**
    RAY QUINNEY & NEBEKER P.C.
2   36 South State Street, Suite 1400
    P.O. Box 45385
3   Salt Lake City, Utah 84145-0385
    Telephone: (801) 532-1500
4   Facsimile: (801) 532-7543
    Email: ajarvis@rqn.com
5          and
6   Lenard E. Schwartzer, Nevada Bar No. 0399
    Jeanette E. McPherson, Nevada Bar No. 5423
7   SCHWARTZER & MCPHERSON LAW FIRM
    2850 South Jones Boulevard, Suite 1
8   Las Vegas, Nevada  89146-5308
    Telephone:  (702) 228-7590
9   Facsimile:  (702) 892-0122
    E-Mail:  bkfilings@s-mlaw.com
10
    Attorneys for Debtors and Debtors-in-Possession
11

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

12              **UNITED STATES BANKRUPTCY COURT**

                    **DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><div align=right>Debtor.</div> | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><div align=right>Debtor.</div> | Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><div align=right>Debtor.</div> | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><div align=right>Debtor.</div> | |
| In re:<br>USA SECURITIES, LLC,<br><div align=right>Debtor.</div> | **OPPOSITION TO DIRECT LENDERS'<br>MOTION FOR RELIEF FROM THE<br>AUTOMATIC STAY (AFFECTS USA<br>COMMERCIAL MORTGAGE)** |
| Affects:<br>☐  All Debtors<br>☒  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | Date:  June 5, 2006<br>Time:  9:30 a.m. |

28

USA Commercial Mortgage Company ("USACM"), by and through its undersigned counsel, hereby responds in opposition to the Direct Lenders' Motion For Relief From the Automatic Stay (the "Motion for Relief) (docket no. 208, filed May 11, 2006).

The Motion for Relief should be denied because the Direct Lenders have failed to comply with Rule 2019 of the Fed.R.Bankr.P. and the Court's directive[1], the specific requirements set forth in the Loan Servicing Agreement to remove USACM as loan servicer have not been met, and the Direct Lenders have not established "cause" under 11 U.S.C. § 362(d) to obtain relief from the stay. This Opposition is supported by the Declarations of Thomas J. Allison on file in this case, the arguments set forth below, and other relevant items of record before this Court in the Debtor's bankruptcy case.

## STATEMENT OF FACTS

1. The jointly administered Debtors, including USACM, filed voluntary petitions for relief on April 13, 2006 (the "Petition Date").

2. Prior to the Petition Date, USACM was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. USACM has not originated or brokered any new loans since the Petition Date, and will not do so without Court approval.

3. On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial Management ("Mesirow") became the President of USACM and the Manager of the four remaining Debtors who are limited liability companies. In an order entered April 19, 2006, this Court authorized the Debtors' employment of Allison as the Chief Restructuring Officer for an interim period until July 27, 2006.

4. Since the Petition Date, the Debtors, under Allison, have worked hard to begin analyzing and unraveling the problems the Debtors face which have arisen as a result of past business practices and irregularities in servicing the loans. Specifically, Allison and his Mesirow team are thoroughly investigating and evaluating the Debtors' files and records to determine,

---

[1] To the extent the Direct Lenders provide the information required under Rule 2019, USACM reserves the right to supplement its opposition to the Motion for Relief.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

among other things, what portion of the funds held by USACM represent unpaid servicing and loan origination fees, which investors have been overpaid as a result of USACM's pre-petition practice of making regular monthly interest payments regardless of the status of the underlying loan, and which investors have been underpaid, including investors to whom principal repayments were not remitted when collateral was released pre-petition.  Further complicating this investigative effort is that it appears that more than 60% of the Debtors' investors were invested in more than one loan.  Thus, any individual investor may have been overpaid on a non-performing loan, on the one hand, but under-paid or properly paid on a performing loan.  Accordingly, the Debtors are attempting to determine the individual status of each investor in each loan and the net amounts due to or from investors on all loans in the portfolio.

5.    USACM continues to be the loan servicer for approximately 115 commercial loans having a combined outstanding balance of approximately $962 million (the "Serviced Loans"), nearly all of which are secured by various real estate projects or developments.  The loan documents and other records of USACM indicate that there are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" for one or more of the Serviced Loans.

6.    Typically, there are dozens or even hundreds of Direct Lenders on a particular loan, with each lender having only a small fractionalized share.  Among the Direct Lenders are two of the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds") and it appears that the Funds had an interest in many of the Serviced Loans.  Diversified has approximately 1,900 LLC members and Capital First has approximately 1,300 members (collectively, the "Fund Members").  There is substantial overlap among the Direct Lenders and the Fund Members.

7.    At the time that the investors contracted to participate as lenders of fractional interests in the Serviced Loans, they also entered into an individual loan servicing agreement (the "Loan Servicing Agreement") whereby they authorized and empowered USACM, on behalf of each investor, to obtain the necessary documents to effectuate and secure the Serviced Loans, as well as to service them.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.    Attached as Exhibit A to the Motion for Relief is a copy of a Loan Servicing Agreement that was executed by Mojave Canyon, Inc.[2]  This Loan Servicing Agreement is dated February 28, 2006 and is representative of a loan servicing agreement that was executed by an investor participating in a loan brokered by USACM.

9.    As of the Petition Date, a significant portion of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans").  Despite the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents, USACM continued to pay regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether or not USACM had actually collected payments from the borrowers.  As a result, the Debtors may have claims against each Direct Lender and Fund Member who received overpayments from USACM or the Funds.

10.    No interest payments have been made to the Direct Lenders or the Fund Members since the Petition Date.  Instead, USACM is holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds) in a new, post-petition Debtor-in-Possession DIP Collection Account (the "DIP Collection Account"), except for the servicing fees and other fees USACM is contractually entitled to collect and that have been approved by the Court pursuant to the Debtors' revised cash budget.  No funds from any other sources have been commingled with or placed in the DIP Collection Account since the Petition Date.

11.    The Debtors maintain operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative duties.

12.    On May 24, 2006, the Court entered an order approving the Debtors' motion requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors pursuant to a revised cash budget through July 16, 2006.  This initial time period of cash use was requested by the Debtors in order to enable USACM, which has the right and obligation under its

[2] Mojave Canyon, Inc. is one of the Direct Lenders represented by Jones Vargas, and the Loan Servicing Agreement it executed was attached by Jones Vargas as a representative example of the form of loan servicing agreement that was

1    Loan Servicing Agreements with the Direct Lenders and under Nevada state law, to perform

2    appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the

3    extent and effect of the overpayments, underpayments, and collateral releases.

4    13.    On May 8, 2006, the Debtors filed a Motion to Temporarily Hold Funds Pending a

5    Determination Of The Proper Recipients and Memorandum of Points and Authorities (the

6    "Motion to Hold Funds") (docket no. 173).  The Motion to Hold Funds requests an Order from the

7    Court permitting USACM to temporarily hold the funds USACM has collected and continues to

8    collect from borrowers in its capacity as the loan servicer pending the completion of Mesirow's

9    investigation, analysis and report to the Court recommending the proper disbursement of the

10    funds, and pending the Court's order on or after July 25, 2006 relating to the distribution of the

11    funds to the proper recipients.

12    14.    On May 11, 2006, certain Direct Lenders, who are not specifically identified, filed

13    the Motion for Relief seeking relief from the automatic stay, pursuant to Fed. R. Bankr. P. 9013

14    and 11 U.S.C. § 362(d), to permit them to remove USACM as the loan servicing agent under the

15    terms of the Loan Servicing Agreement, and specifically paragraphs 3 and 8 thereof.

16    **MEMORANDUM OF LAW**

17    **I.    THE MOTION FOR RELIEF SHOULD BE DENIED BECAUSE THE DIRECT
18    LENDERS HAVE FAILED TO COMPLY WITH RULE 2019 OF THE
      FED.R.BANKR.P AND THE COURT'S DIRECTIVE**

19    As a preliminary matter, the Motion for Relief should be denied because USACM is

20    unable to ascertain the specific Serviced Loans in which the Direct Lenders claim to hold an

21    interest or the extent of that interest.   Rule 2019(a) of the Bankruptcy Rules contemplates that in a

22    chapter 11 reorganization case, every entity representing more than one creditor or equity security

23    holder must provide, inter alia, the name and address of the creditor or equity security holder

24    whom they represent, and the nature and amount of the claim or interest.  Furthermore, the Court

25    specifically directed at the May 18, 2006 hearing that all parties in interest, including the Direct

26    Lenders who may or may not also be creditors, comply with the requirements of Rule 2019.

27

28    _____

      typically executed by an investor.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Rule 2019(b) states that if a bankruptcy court determines that the requirements of subsection (a) have not been met, then it can refuse to permit the entity representing the creditor or equity security holder to be heard. In this instance, only after USACM's counsel demanded disclosure of the represented parties did Jones Vargas provide to USACM's counsel the names of the Direct Lenders who it is representing in connection with the Motion for Relief.[3] However, Jones Vargas still has not provided to USACM any of the other information required by Rule 2019, and has not provided any information about the identity of the specific Serviced Loans in which the Direct Lenders are claiming an interest or which could be affected by this Motion for Relief, or the extent of that interest. The Motion for Relief is silent on these critical issues and instead only states that "Jones Vargas represents numerous direct lenders who are named beneficiaries under recorded deeds of trust (hereinafter "Direct Lenders"), of certain loans which were originated and serviced by Debtor USA Commercial Mortgage Co. . . ." See Motion for Relief at p. 2. This statement clearly is not sufficient to satisfy the requirements of Rule 2019(a) or the Court's directive at the May 18, 2006 hearing. It also does not give adequate notice to all parties (including other lenders in the relevant loans) that might be affected by this Motion for Relief so that they have the opportunity to file a response thereto. Furthermore, USACM cannot reasonably be expected to be able to adequately respond to the Motion for Relief when it does know what Serviced Loans are at issue, or the Direct Lenders interest in those loans. On this basis alone, the Motion for Relief should be denied.

## II. THE MOTION FOR RELIEF MUST BE DENIED BECAUSE THE SPECIFIC REQUIREMENTS SET FORTH IN THE LOAN SERVICING AGREEMENT TO REMOVE USACM AS SERVICER HAVE NOT BEEN ESTABLISHED

The Direct Lenders seek relief from the automatic stay to permit it to remove USACM as the servicer of unidentified Serviced Loans in which the Direct Lenders claim to hold a fractional interest. In the Motion for Relief, the Direct Lenders rely on paragraphs 3 and 8 of the Loan Servicing Agreement as the contractual authority which allegedly permits them to take the action

---

[3] By letter dated May 25, 2006, Jones Vargas identified Andrew Dauscher, Ellen Dauscher, Evelyn Asher Sheerin, Trustee for the Benefit of the Chris H. Sheerin (deceased) and Evelyn Asher Sheerin 1984 Trust Dated 5/31/84, Evelyn Asher Sherrin, Trustee of the Chris and Evelyn Sheerin 1990 Trust, Sheerins Inc., Fertitte Enterprises, and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   requested.  However, a review of those provisions, along with other pertinent portions of the Loan

2   Servicing Agreement, indicate that the Motion for Relief must be denied because the specific

3   requirements set forth in the Loan Servicing Agreement which would allow the removal of

4   USACM as the loan servicer have not been established by the Direct Lenders.

5         Paragraph 8 of the Loan Servicing Agreement states as follows:

6         8.    Termination.  Lender may, by 30 days written notice to USA, terminate
    this agreement, and the power of attorney granted, if one is granted, under Section
7   11 of this Agreement, if USA fails to perform its obligations hereunder.

8

9         However, when the practical application of the Direct Lenders' suggested interpretation of

10  paragraph 8 is considered, and particularly when it is analyzed in context with some of the other

11  provisions of the Loan Servicing Agreement, it becomes apparent that paragraph 8 does not govern

12  the removal of USACM as the loan servicer of one of the Serviced Loans.  For instance, if

13  paragraph 8 could be used by any Direct Lender to remove USACM as the loan servicer of a

14  Serviced Loan (as suggested in the Motion for Relief), the practical effect of such an interpretation

15  would be that either multiple servicers would be servicing the same loan, or no entity would be

16  servicing a fractionalized interest in the loan.  Such an interpretation of paragraph 8 is not only

17  impractical but Nevada law is clear that the interpretation of contract provisions must be fair and

18  reasonable, as opposed to harsh and unreasonable.  See Shelton v. Shelton, 78 P.3d 507, 510 (Nev.

19  2003).[4]

20

21  Mojave Canyon, Inc. as the Direct Lenders represented in connection with the Motion for Relief.  As a consequence
    of this late disclosure, USACM cannot adequately respond to the Motion for Relief.

22  [4] Nevada law requires that contractual provisions should be harmonized whenever possible and construed to reach a

23  reasonable solution.  See Eversole v. Sunrise Villas VIII Homeowners, Ass'n, 925 P.2d 505, 509 (Nev. 1996).
    Therefore, perhaps paragraph 8 was intended to govern those situations in which the Direct Lender desires to

24  terminate USACM's services in connection with the making and servicing of future loans, or where the Direct Lender
    desires to sell all or a part of its interest in one of the Serviced Loans.  For instance, paragraph B states that "[Direct]

25  Lender lends, or wishes to lend, money to various borrowers . . . from time to time, which loans are arranged by USA
    and are secured by interests in real and/or personal property."  (Emphasis added).  Likewise, paragraph C states that

26  "[Direct] Lender wishes to retain the services of USA in connection with making and servicing a loan or loans . . .
    including all Loans heretofore or hereafter placed by Lender through USA . . . "  (Emphasis added).  It is apparent

27  from these provisions that the Loan Servicing Agreement was not intended to apply to just a single loan, but rather
    was also intended to apply to those situations in which the Direct Lender decided to participate in multiple loans

28  brokered or arranged by USA.  Accordingly, to the extent that any Direct Lender determined that it no longer desired
    USACM to act as its agent in arranging or servicing future loans, then paragraph 8 might be utilized to terminate
    USACM's ability to do so.  Furthermore, the second section of paragraph 5 specifically contemplates that if a Direct

1    Furthermore, paragraph 3 of the Loan Servicing Agreement specifically identifies the

2    circumstances in which USACM can be removed as the loan servicer of one of the Serviced Loans.

3    Therefore, even if the language of paragraph 8 could be interpreted as also covering the removal of

4    USACM as the loan servicer, the broader language of paragraph 8 would be trumped by the more

5    specific language of paragraph 3.  Indeed, it is also well settled that where a contract contains two

6    conflicting provisions, the more specific provision will govern.  See Shelton v. Shelton, 78 P.3d at

7    510; Alamo Rent-A-Car, Inc. v. State Farm Mut. Auto. Ins., Co., 953 P.2d 1074 (Nev. 1998)(more

8    specific language contained in one insurance policy prevailed over the other insurance policy).

9    Paragraph 3 of the Loan Servicing Agreement, which contains the more specific provision

10    governing the removal of USACM as the loan servicer, states as follows:

11        3.    Rights of Lender if USA Fails to Act.  Pursuant to NAC 645B.073, in the
         event of default, foreclosure, or other matters that require action, if for any reason
12       USA fails to act on Lender's behalf as authorized herein, then [Direct] Lender
         may, **with approval of fifty-one percent (51%) or more of all of the holders of**
13       **the beneficial interest of record in the Loan**, act on behalf of all such holders of
         beneficial interest of record.  These actions may include, but are not limited to:
14

15            (a)    **the designation of the mortgage broker, servicing agent or**
               **other person to act on behalf of the holders of the beneficial interests**
16             **in the loan**; and
               (b)    the sale, encumbrance or lease of real property owned by the
17             holders resulting from a foreclosure or the receipt of a deed in lieu of a
               foreclosure.
18

19    (Emphasis added).

20    However, the Direct Lenders also cannot rely on paragraph 3 to obtain relief from the

21    automatic stay for the purpose of removing USACM as the loan servicer because the main

22    requirement set forth therein, i.e. fifty-one percent (51%) or more of all of the holders of the

23    beneficial interest of record have approved the removal, has not been established by the Direct

24    Lenders.  While USACM recently learned the identity of the Direct Lenders who filed the Motion

25    for Relief, they learned little else, such as the specific Serviced Loans in which the Direct Lenders

26    _____

27    Lender ever desires to sell all or any part of its interest in a Serviced Loan, then USACM will assist the Direct Lender
      in finding a potential buyer and completing the necessary documentation for that transaction.  Under that
28    circumstance, a Direct Lender might utilize paragraph 8 to terminate USACM's servicing obligations when the Direct
      Lender is going to sell its interest in a Serviced Loan.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   hold a fractionalized interest, or the extent of that interest. Having failed to identify the specific

2   Serviced Loans at issue or to establish that 51% or more of the holders of the beneficial interest in

3   those loans have approved the removal of USACM as the loan servicer, the Direct Lenders have

4   not carried their burden of proof and established sufficient cause to grant the Motion for Relief.

5   Accordingly, it must be denied.

6   **III.    THE DIRECT LENDERS HAVE NOT ESTABLISHED "CAUSE" UNDER 11**
        **U.S.C. § 362(D) FOR RELIEF FROM THE STAY TO BE GRANTED**
7

8          The Direct Lenders assert that relief from the automatic stay should be granted "for cause"

9   under 11 U.S.C. § 362(d)(1). That sub-section provides:

10              (d)  On request of a party in interest and after notice and a hearing, the
         court shall grant relief from the stay provided under subsection (a) of this section,
11       such as by terminating, annulling, modifying, or conditioning such stay –

12              (1) for cause, including the lack of adequate protection of an
         interest in property of such party in interest;
13

14  The Bankruptcy Code does not define "cause", and therefore, whether relief from the stay should

15  be granted is subject to the court's discretion and is determined on a case by case basis.  See In re

16  Beguelin, 220 B.R. 94, 97-98 (9th Cir. BAP (Nev.) 1998).

17         In this case, the Direct Lenders contend that "cause" exists as a result of USACM's

18  mismanagement under the Loan Servicing Agreement. Specifically, the Direct Lenders contend

19  that USACM did not keep proper account records, did not diligently collect all payments and

20  promptly pay each lender, and did not foreclose or take other necessary action when certain

21  borrowers failed to pay on their loans. See Motion for Relief at p. 5. While USACM's new

22  management has acknowledged that certain irregularities occurred under the watch of the prior

23  management, the extent of those irregularities and their full impact is not known at this time.

24  Indeed, Allison and the Mesirow team are now in the process of thoroughly investigating and

25  evaluating the Debtors' files and records to determine, among other things, the status of each loan,

26  the value of the collateral securing the loan, the amount of unpaid servicing and loan origination

27  fees, and which investors have been overpaid as a result of USACM's pre-petition practice of

28  making regular monthly interest payments regardless of the status of the underlying loan, and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   which investors have been underpaid.  Because the full and complete facts are not yet known, it is

2   premature to determine at this time whether sufficient "cause" exists under § 362(d)(1) to grant the

3   Motion for Relief, nor at this time have the Direct Lenders carried their burden of proof that such

4   cause exists.

5          Furthermore, even assuming that there was significant mismanagement on the part of the

6   Debtors former management, courts have found that pre-petition mismanagement does not

7   necessarily constitute sufficient "cause" for relief from the automatic stay to be granted under §

8   362(d).  Indeed, if that were the prevailing rule, then arguably "cause" to grant relief from the

9   automatic stay would exist in virtually every bankruptcy case.  For example, in <u>Matter of Holly's,</u>

10  <u>Inc.</u>, 140 B.R. 643 (Bankr. W.D.Mich. 1992), the court found that the pre-petition mismanagement

11  in that case should not be considered sufficient "cause" to grant relief from the automatic stay

12  under § 362(d)(1) even where the mismanagement included such things as (1) failure to pay pre-

13  petition real and personal property taxes; (2) failure to pay withholding and payroll taxes; (3)

14  failure to pay trade creditors; (4) failure to establish a separate account for the Crowne Plaza as

15  required by the management agreement; (5) commingling the funds of the partnership and another

16  entity; and (6) the general disregard for certain requirements of the management agreement and

17  the loan documents.  <u>Id</u>. at 688-89.  In reaching this conclusion, the court was largely persuaded

18  by the fact that the current management was not involved in those activities and was making on-

19  going efforts towards correcting the past mismanagement.   <u>Id</u>. at 690.  <u>See also</u> <u>In re Forest</u>

20  <u>Ridge, II. Ltd. Parnership</u>, 116 B.R. 937, 946 (Bankr. W.D.N.C. 1990)(movant did not carry

21  burden on its allegation of mismanagement sufficient to constitute cause under § 362(d)).

22         Likewise, in this case, all of the alleged wrongs asserted by the Direct Lenders occurred

23  pre-petition and were undertaken by management that is no longer in place.  As of the Petition

24  Date, Thomas Allison was appointed as the chief restructuring officer of USACM and the other

25  Debtors, and since that time he has undertaken significant measures to rectify the organizational

26  defects that created the problems that led to the Debtors' bankruptcy filings.  Specifically, the

27  Debtors are holding payments that have been collected and continue to be collected from the

28  borrowers on behalf of the Direct Lenders in the new DIP Collection Account.  No funds from any

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  other sources have been commingled with or placed in the DIP Collection Account since the

2  petition date.  The Debtors are also maintaining operating accounts separate from the DIP

3  Collection Account for use in facilitating their business operations and administrative duties.

4  Allison and the Mesirow team are also keeping proper accounting records and they are contacting

5  borrowers whose loans are delinquent with the result being that millions of dollars have been

6  brought into the estate post-petition from non-performing loans.  Accordingly, because the source

7  of the alleged mismanagement is no longer involved in the Debtors' management and the current

8  management is operating effectively and responsibly, "cause" does not exist to grant relief from

9  the stay.

10         At this early stage, the Motion for Relief also undermines one of the main purposes of the

11  automatic stay which is to permit debtors a limited period of time to try and sort out their business

12  affairs, propose a plan of reorganization to payoff creditors, and undertake efforts to see if the

13  business can be saved.  See In re Sherman, 441 F.3d 794, 814 (9th Cir. 2006) ("Indeed, the

14  legislative history of the Bankruptcy Code makes clear that one of the purposes of the automatic

15  stay is to give a debtor a 'breathing spell from his creditors' during which the debtor can 'attempt a

16  repayment . . . plan, or simply . . . be relieved of the financial pressures that drove him into

17  bankruptcy'").  The Debtors, under their new management, are working very hard to analyze the

18  loans at issue, and to get a report filed with the Court by the end of July which will recommend the

19  proper distribution of the funds being collected to the investors and other parties in interest.  There

20  is no question but that granting the Motion for Relief will have a significant negative effect on

21  those efforts.

22         Furthermore, the legislative history of the Bankruptcy Code makes it clear that one of the

23  other purposes of the automatic stay is to protect creditors by providing for "an orderly liquidation

24  procedure under which all creditors are treated equally" rather than "a race of diligence by

25  creditors for the debtor's assets."  See In re Sherman, 441 F.3d at 814, citing, H.R. Rep. No.

26  950595 at 340 (1977), as reprinted in 1978 U.S.C.C.A. 5963, 6296-97.  In this case, the Motion for

27  Relief has the potential to significantly harm other investors, because it will cut off a portion of the

28  revenue stream (i.e., servicing fees) which is funding the work being undertaken by current

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  management, and it may compromise the Debtors ability to collect amounts that have been

2  overpaid to certain investors as a result of USACM's pre-petition practice of making regular

3  monthly interest payments to the investors regardless of the status of the underlying loan.  There is

4  no question that if the Motion for Relief is granted, the Direct Lenders may give notice under the

5  Loan Servicing Agreement that they are removing USACM as the servicing agent for the

6  unidentified performing loans even though the Direct Lenders and the other investors in the loans

7  still owe money to the estate, thereby harming its creditors.  In addition, the Direct Lenders may

8  request the removal of USACM as servicing agent for any non-performing loans in which they

9  hold an interest in an attempt to avoid paying back any over-payments they received on those non-

10  performing loans.  Some investors have suggested that the funds currently being collected and held

11  by the Debtors in the DIP Collection Account should simply be turned over to them subject to the

12  Debtors' setoff, recoupment or other rights.  However, that solution is not workable because even

13  if the Debtors did turn over those funds but retained their setoff, recoupment or other rights,

14  undoubtedly a significant portion (if not most) of the Direct Lenders would not return those funds

15  willingly.  This would then result in the Debtors having to file needless litigation which would

16  result in significant expense to the Debtors' estate which they cannot afford.  Given the current

17  situation, the only approach that will benefit all investors fairly is to not grant the relief being

18  requested by the Direct Lenders, and instead permit the Debtors to collect and hold the funds from

19  the loans in the DIP Collection Account until the new management of the Debtors has sorted out

20  the full underlying facts and made its report to the Court in July.

21  / / /

22

23  / / /

24

25  / / /

26

27  / / /

28  / / /

## CONCLUSION

Based on the foregoing, USACM respectfully requests that the Court deny the Direct Lenders' Motion for Relief from the Automatic Stay.

Respectfully submitted this 26th day of May, 2006.

/s/    JEANETTE E. MCPHERSON
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

877195.01

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122