AUGUST B. LANDIS, Assistant United States Trustee
State Bar # IA PK9228
SCOTT ANDREW FARROW, Attorney
State Bar # WI 1000609
scott.a.farrow@usdoj.gov
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600 Attorney Ext. 224
Facsimile: (702) 388-6658

E-Filed on May 26, 2006

Attorneys for the Acting United States Trustee
    SARA L. KISTLER

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>**USA Commercial Mortgage Company**<br>    **06-10725 -- Lead Case**<br>**USA Capital Realty Advisors, LLC**<br>    06-10726<br>**USA Capital Diversified Trust Deed Fund, LLC**<br>    06-10727<br>**USA Capital First Trust Deed Fund, LLC**<br>    06-10728<br>**USA Securities, LLC**<br>    06-10729       Debtors | **Jointly Administered**<br>Chapter 11 Cases<br>Judge **Linda B. Riegle** Presiding<br><br>Date: **May 18, 2006**<br>Time: **9:30 a.m.**<br>**Affecting:**<br>☐ All Cases<br>**or Only:**<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA Capital First Trust Deed Fund, LLC |

# THE UNITED STATES TRUSTEE'S OPPOSITION TO APPLICATION TO EMPLOY SHEA & CARLYON, LTD. AS SPECIAL COUNSEL

To the Honorable **LINDA B. RIEGLE**, United States Bankruptcy Judge:

The United States Trustee opposes the Application to Employ Shea & Carlyon, Ltd. as Special Counsel, filed in connection with:

In re USA Commercial Mortgage Company, Case No. 06-10725;

In re USA Capital Diversified Trust Deed Fund, LLC, Case No. 06-10727; and

In re USA Capital First Trust Deed Fund, LLC, Case No. 06-10728.

The retention proposed in the application is inconsistent with the provisions of 11 U.S.C. § 1103(b), and would exacerbate actual and create potential conflicts of interest in the administration of the three separate estates affected by the application. This opposition is supported by the pleadings and papers comprising the official Court files in the three Chapter 11 cases identified in the caption, and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the applications and this opposition pursuant to 28 U.S.C. §§ 1334(a) and (b), and 28 U.S.C. §§ 157(a) and (b)(1).

2. The application and this opposition are premised upon 11 U.S.C. § 1103, and present the Court with a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

3. Venue is appropriate in the District of Nevada pursuant to 28 U.S.C. § 1409(a).

## FACTS

4. On April 13, 2006, separate Chapter 11 bankruptcy petitions were filed in each of the five cases identified in the caption. As a result, there are five separate cases, five separate debtors, and five separate bankruptcy estates before the Court as of the filing of this opposition.[1] Three of those separate cases are affected by the application and this opposition.

5. On May 9, 2006, the Court entered its Order Regarding Joint Administration Without Substantive Consolidation, noting "the potential conflicts of interest among the Debtors." *See* Docket # 184.

6. On May 10, 2006, the United States Trustee filed the following committee appointment papers relevant to this opposition:

    a. Notice of Appointment of Official Committee of Holders of Executory Contract Rights Through USA Commercial Mortgage Company [Docket # 202];

    b. Notice of Appointment of Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC [Docket # 203]; and

---

[1] *See, e.g.,* In re Interwest Bus. Equip., Inc., 23 F. 3d 311, 316 n. 9 (10th Cir. 1994).

c. Notice of Appointment of Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC [Docket # 204].

7. On May 17, 2006, each of the official committees identified in the preceding paragraph held separate organizational meetings.

8. On May 19, 2006, the Shea firm filed the application.

## CONTROLLING STATUTES AND POLICIES

9. Committees stand as fiduciaries with respect to the class of interests they represent, and their principal function is to advise the members of that class of interests of their rights and the proper course of action in bankruptcy proceedings. In re Caldor, Inc., 193 B.R. 165, 169 (Bankr. S.D.N.Y. 1996)(citations omitted).

10. In the discharge of their duties, committees are expressly authorized to retain counsel pursuant to 11 U.S.C. § 1103(a). The application, requesting authorization for the Shea firm to jointly represent all three of the separate committees, is based upon that section.

11. Committees' authority to retain counsel under 11 U.S.C. § 1103(a) is limited by 11 U.S.C. § 1103(b), which generally provides that counsel for a committee "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case."

12. An attorney retained by a committee owes a fiduciary duty to that committee. The limitations on committees' authority to retain counsel established by 11 U.S.C. § 1103(b) "'serve the important policy of ensuring that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" In re Greystone Holdings, L.L.C., 305 B.R. 456, 460 (Bankr. N.D. Ohio 2003), *quoting* In re Crivello, 134 F.3d 831, 836 (7th Cir. 1998) *and* Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994).

13. The restrictions on committees' authority to retain counsel imposed by 11 U.S.C. § 1103(b) are intended to maintain the integrity of the bankruptcy system, and professionals retained by committees must not "place themselves in a situation where their independence, loyalty and integrity can be questioned by the unsecured creditor body whom they represent."

1  Greystone, 305 B.R. at 460, *quoting* In re Oliver's Stores, Inc., 79 B.R. 588, 597 (Bankr. D.N.J.
2  1987).

3      14. The disclosures required of a professional seeking employment by a committee
4  under 11 U.S.C. § 1103 are set forth in Fed. R. Bankr. P. 2014(a).

## AUTHORITY AND ARGUMENT

### BECAUSE THE COMMITTEES ARE SEPARATE ENTITIES, AND ADVERSE INTERESTS EXIST BETWEEN THEM, THE JOINT COMMITTEE RETENTION PROPOSED IN THE APPLICATION SHOULD BE DENIED.

8      15. The term "adverse interest" used in the text of 11 U.S.C. § 1103(b) is not defined in
9  the Bankruptcy Code. In re Greystone Holdings, L.L.C., 305 B.R. 456, 461 (Bankr. N.D. Ohio
10 2003), *citing* In re Caldor, Inc., 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996); *see generally*, 7
11 ALAN N. RESNICK ET AL., COLLIER ON BANKRUPTCY ¶ 1103.04[2] (15th ed. 2006)("The Code
12 does not define adverse interest, and the concept has been left to the development of case law.").

13     16. Various courts have held that "adverse interest" means "(1) to possess . . . an
14 economic interest that would tend to lessen the value of the bankruptcy estate or that would
15 create either an actual or potential dispute in which the estate is a rival claimant; or (2) to
16 possess a predisposition under circumstances that render such a bias against the estate.
17 Greystone, 305 B.R. at 461, *quoting* In re Fretter, 219 B.R. 769, 777 (Bankr. N.D. Ohio 1998)
18 *and* In re Roberts, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985), *rev'd in part on other grounds,*
19 75 B.R. 402 (D. Utah 1987).

20     17. An "adverse interest" is sufficient to disqualify counsel where the proposed
21 representation gives rise to "'either a meaningful incentive to act contrary to the best interest of
22 the [committee] -- an incentive sufficient to place those parties at more than acceptable risk -- or
23 the reasonable perception of one.'" Greystone at 461, *quoting* In re Caldor, Inc., 193 B.R. at 171
24 *and* In re Martin, 817 F.2d 175, 180 (1st Cir. 1987). When it is plausible that representation of a
25 committee will cause proposed counsel to act any differently than they would if they did not
26 represent the committee, then an "adverse interest" is present, and a disqualifying conflict of
27 interest exists. Greystone at 461, *quoting* In re Leslie Fay Co., Inc., 175 B.R. 525, 533 (Bankr.
28 S.D.N.Y. 1994).

18. The Official Committee of Holders of Executory Contract Rights Through USA Commercial Mortgage Company is comprised and representative of parties whose investment monies were used to fund a particular commercial development project, in exchange for which they apparently received a fractional share of the related promissory note and first trust deed in that particular commercial development project. The Court has previously referred to these parties as "Direct Investors."

19. The official equity security holder committees appointed in the USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, cases are comprised and representative of parties who received an ownership interest in the debtor Fund LLCs in exchange for their investment money, not a lien against a particular commercial development project. The Court has previously referred to these parties as "Fund Investors." The debtor Fund LLCs used the Fund Investors' money to finance a number of different commercial development projects, in exchange for which the debtor Fund LLCs apparently received fractional shares of the related promissory notes and first trust deeds for the benefit of the Fund Investors.

20. The most recent Declaration of Thomas J. Allison in Support of Debtors' Motions [Docket # 130] reveals that certain commercial development projects have been funded using money made available both by Direct Investors and by money the debtor Fund LLCs received from the Fund Investors; that in some instances, "more than one loan is secured by the same real estate"; and that "a large portion of the Loan Investors received monthly payments from USACM that they were not entitled to receive (because they were invested, at least in part, in one or more Nonperforming Loans), and thus such investors owe a debt to USACM for the amounts overpaid to them." *See* Allison Declaration at ¶¶ 3 - 12.

21. There is an unsecured and improperly documented $58 million intercompany receivable owed by a non-debtor entity, USA Investment Partners, LLC, to USA Commercial Mortgage "and possibly to other Debtors", which Allison is purportedly close to having executed "for the benefit of the Debtors, the [Direct Lenders], and the Fund Members." Allison Declaration at ¶ 20.

22. The status of intercompany transactions between the various debtors is under investigation, and has not yet been disclosed to the Court or parties in interest. Allison Declaration at ¶ 18.

23. Some Direct Investors, whose interests are aligned with those parties represented by the Official Committee of Holders of Executory Contract Rights Through USA Commercial Mortgage Company, are currently seeking to:

    a. Compel USA Commercial Mortgage to forward borrower payments immediately to the relevant Direct Investors, arguing that only the loan servicing fee components of those payments are property of any of the bankruptcy estates identified in the caption; *see, e.g.,* Docket # 209; and

    b. Obtain relief from the automatic stay to terminate USA Commercial Mortgage as their loan servicer; *see, e.g.,* Docket # 208.

24. For their part, all five of the Debtors have asked for permission from the Court to "temporarily" collect and hold significantly all payments received from borrowers under the loans at issue in these cases, until a July 25, 2006 hearing can be held to determine who is entitled to the money: The Direct Investors, the Fund Investors, and/or one or more of the Debtors. *See* Debtors' Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients, and Memorandum of Points and Authorities [Docket # 173].

25. When the contents of the motions referenced above are read together with the Allison Declaration, the following are only some of the "adverse interests" that become evident, such that the proposed retention of the Shea firm by more than one committee is prohibited by 11 U.S.C. § 1103(b):

    a. Where borrowers have made payments on a loan funded by Direct Investors, and the payments were improperly used to make interest payments on loans funded by the debtor Fund LLCs, the interests of the Direct Investors would be served by pursuing recovery from the Fund LLCs. Such claims by the Direct Investors would "tend to lessen the value of the [Fund LLCs'] bankruptcy estate, in a manner detrimental to the interests of [the Fund Investors and] the committees appointed to represent them." The reverse is also true. *See* Greystone, 305 B.R. at 461.

    b. In those instances where more than one loan is secured by the same real estate, and all investors believe that they held an interest in a *first* trust deed in the real estate, there is an actual or potential priority dispute in which the Direct Investors and the estates of the Fund LLCs are rival claimants. *See* Allison Declaration at ¶ 3; Greystone, 305 B.R. at 461.

      c.    Ultimately, to the extent that there is insufficient money recovered to pay all of the claims of all of the Direct Investors, the Fund Investors, and the Debtors (to the extent they hold any valid claims to the money), there is an actual or potential priority dispute in which the Direct Investors and the estates of the Fund LLCs are rival claimants. It is likely, not uncertain, that such will prove to be the case, as "Nonperforming Loans represent 54% in number, and 72% in outstanding loan balance, of the Serviced Loans." *See* Allison Declaration at ¶ 4; Greystone, 305 B.R. at 461.

26. Finally, Allison's Declaration posits that there are at least two types of prepetition debts owed by two of the debtors (USA Capital Diversified Trust Deed Fund and USA Capital First Trust Deed Fund) to another debtor (USA Commercial Mortgage Company):

      a.    Loan servicing fees under the debtors' Loan Servicing Agreements; and

      b.    Amounts purportedly due to USA Commercial Mortgage Company from USA Capital Diversified Trust Deed Fund and USA Capital First Trust Deed Fund as a result of monthly payments made by USA Commercial Mortgage Company in connection with one or more nonperforming loans prior to bankruptcy.

*See* Allison Declaration at ¶¶ 5-9, 11, and 28 - 30.

27. An actual conflict of interest exists, and counsel should be prohibited from representing multiple committees in related bankruptcy cases pursuant to 11 U.S.C. § 1103(b), when "each committee potentially [holds] an interest in each case adverse to the others' committees by virtue of the fact that each debtor was a creditor of the others." *See* In re Caldor, Inc., 193 B.R. 165, 177-78 (Bankr. S.D.N.Y. 1996), *citing* In re Proof of the Pudding, Inc., 3 B.R. 645, 646-48 (Bankr. S.D.N.Y. 1996).

## CONCLUSION

In summary, 11 U.S.C. § 1103(b) constitutes "a blanket prohibition on representing another entity . . . in connection with the case at the same time that the professional is representing the committee." 7 ALAN N. RESNICK ET AL., COLLIER ON BANKRUPTCY ¶ 1103.04[2] (15th ed. 2006). Allowing the Shea firm to represent multiple committees in these interrelated bankruptcy cases is entirely inconsistent with the "blanket prohibition" established by the provisions of 11 U.S.C. § 1103(b).

The United States Trustee therefore respectfully requests that the Court enter an order denying the application, and granting such other and additional relief as is just and equitable.

Respectfully submitted,

**SARA L. KISTLER
ACTING UNITED STATES TRUSTEE
REGION 17**

By: */s/ August B. Landis*
    August B. Landis, Assistant United States Trustee
    United States Department of Justice

# **CERTIFICATE OF SERVICE**

I, the undersigned, certify that on this date I served the United States Trustee's Opposition to Application to Employ Shea & Carlyon, Ltd. as Special Counsel:

1. Electronically upon all counsel and parties in interest on the CM/ECF service list as of May 26, 2006; and

2. By depositing an envelope in the United States Mail, first class postage fully prepaid and addressed to each of the parties listed below, each of which contained a true and correct copy of the United States Trustee's Opposition to Application to Employ Shea & Carlyon, Ltd. as Special Counsel:

Annette W. Jarvis
P.O. Box 45385
36 South State Street, #1400
Salt Lake City, UT 84145-0385

Bradley J. Stevens
3300 North Central Avenue
Phoenix, AZ 85012

Gregory J. Walch
400 South Fourth Street, 3rd Floor
Las Vegas, NV 89101

Nicholas J. Santoro
400 South Fourth Street, 3rd Floor
Las Vegas, NV 89101

Peter Susi
Michaelson, Susi & Michaelson
7th West Figueroa Street, 2nd Floor
Santa Barbara, CA 93101

Dated: May 26, 2006

**OFFICE OF THE UNITED STATES TRUSTEE**

SARA L. KISTLER
ACTING UNITED STATES TRUSTEE
REGION 17

By:     */s/ August B. Landis*
        August B. Landis
        Assistant United States Trustee
        Las Vegas, Nevada

# # #