Goldsmith & Guymon, P.C.
Marjorie A. Guymon
Nevada Bar No. 4983
2055 N. Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 873-9500
Facsimile: (702) 873-9600
E-mail: mguymon@goldguylaw.com
Attorneys for Mountain West Mortgage, LLC

E-Filed on

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>    Debtor.<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>    Debtor.<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>    Debtor.<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>    Debtor.<br><br>USA SECURITIES, LLC,<br><br>    Debtor.<br><br>Affects:<br>■  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed fund, LLC | BK-S-06-10725 LBR<br>BK-S-06-10726 LBR<br>BK-S-06-10727 LBR<br>BK-S-06-10728 LBR<br>BK-S-06-10729 LBR<br><br>Chapter 11<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Hearing Date: June 5, 2006<br>Hearing Time: 9:30 a.m. |

**MOUNTAIN WEST MORTGAGE, LLC'S JOINDER IN OPPOSITIONS TO DEBTORS'**
**MOTION TO TEMPORARILY HOLD FUNDS PENDING A DETERMINATION OF**

-1-

**THE PROPER RECIPIENTS, AND MEMORANDUM OF POINTS AND AUTHORITIES
(AFFECTS ALL DEBTORS)**

Mountain West Mortgage, LLC, by and through counsel, GOLDSMITH & GUYMON, P.C., hereby submits its Joinder in Opposition to Debtors' Motion to Temporarily Hold Funds Pending a Determination of the Proper Recipients, and Memorandum of Points and Authorities (Affects All Debtors) (hereinafter "Opposition"). Said Opposition is made and based upon the accompanying Memorandum of Points and Authorities, and the oral argument of counsel upon hearing.

DATED this 28th day of May, 2006.

**GOLDSMITH & GUYMON, P.C.**

Marjorie A. Guymon
Marjorie A. Guymon, Esq.
2055 N. Village Ctr. Circle
Las Vegas, Nevada 89134
Attorneys for Mountain West Mortgage, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

Mountain West Mortgage, Inc. (hereinafter "MWM") is the mortgage company under which several entities and individuals conjointly lent two loans as direct lenders, through USA Commercial Mortgage Company (hereinafter "USACMC"), the loan service provider. More particularly, the Lerin Hills project and Marlton Square project were both funded with second deeds of trust through funds generated by MWM, and arranged and serviced by USACMC. Each of these projects consists of a Loan Agreement, Promissory Note, Deed of Trust, and Guaranty. A copy of the respective projects' loan documents are attached for the Court's reference as follows:

1. Lerin Hills:

    Exhibit 1, Loan Agreement

    Exhibit 2, Promissory Note Secured by Deed of Trust

    Exhibit 3, Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

Exhibit 4, Unconditional Repayment and Completion Guaranty

2.  Marlton Square:

Exhibit 5, Construction Loan Agreement

Exhibit 6, Promissory Note Secured by Deed of Trust

Exhibit 7, Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

Exhibit 8, Unconditional Repayment and Completion Guaranty

Also a part of each of these projects is the Service Contract between MWM and USACMC. They are attached as Exhibits 7 and 8. All exhibits are incorporated herein by reference.

1.  Interest Reserves Should Be Sufficient to Pay Amounts Due.

Both the Lerin Hills and Marlton Square loans required interest reserves be deposited into a Control Account and used to make the monthly interest payments. See paragraph 3.3 on Exhibits 1 and 5. Additionally, the monies funded on each project by the direct lenders of MWM were to be held in the Control Account. See paragraph 3.3 of Exhibit 1 and paragraph 3.4(b) of Exhibit 5. The Control Account was to be held and managed by the Disbursement Agent, named as Project Disbursement Group, Inc. ("PDG"), Builders Control Service Co., or some other licensed construction control company. See paragraph 1.1 Defined Terms, and paragraph 3.3 of Exhibit 1; and paragraph 1.1 Defined Terms and paragraph 3..3 of Exhibit 5.

With regard to the Lerin Hills matter, the project called for a $12,900,000 note. The original amount of the loan was in the principal amount of $10,000,000, plus a $2,900,000 increase. The Note calls for 15% interest and is dated December 7, 2005. See Exhibit 2. USA Commercial Mortgage Company is a direct lender in the amount of $2,900,000, the amount of the increase. It is unknown whether USACMC actually contributed $2,900,000. However, the $10,000,000 was contributed by MWM direct lenders.

The interest reserves were properly collected, and per Debtors' counsel, Tom Barry at USA Commercial Mortgage has confirmed the interest reserves for Lerin Hills are presently being held by PDG. There is a Motion for Order Regarding Project Disbursement Group, Inc.'s Disbursement

of Interest Payments to Debtor filed by PDG ("PDG Motion") set for hearing on June 15, 2006 at the hour of 10:00 a.m. MWM requests that this Court deny the Motion as it relates to Lerin Hills, approve the PDG Motion, and instruct the Debtors to immediately disburse the interest payments to MWM as originally contemplated. Suffice it to say, there should be sufficient funds held in interest reserves to pay the interest as originally contemplated by Exhibit 1 and the accompanying exhibits. To require MWM direct lenders to wait for payment seems unnecessary since the interest reserves were in fact properly deposited into a Control Account and managed by the Disbursing Agent, easily identifiable as Lerini Hills funds and available for disbursement. Those funds may be disbursed to USACMC and thereafter directed to MWM. However, an alternative would be to direct PDG to disburse directly to MWM. Under either scenario, there is no reason for delay in disbursement.

Similarly, the Marlton Square project called for a $30,000,000 note. The original amount of the loan was in the principal amount of $23,000,000, plus a $7,000,000 increase. The Note calls for 13% interest and is dated August 11, 2005. See Exhibit 6. $23,000,000 was contributed by MWM direct lenders. It appears that interest reserves of $150,000 were forwarded to Builders Control Service, and an additional $547,181.98 was disbursed to USA Commercial Mortgage Company. See Exhibit 9. Pursuant to Exhibit 5, all additional advances were to be accompanied by a withhold of appropriate interest reserves. See Paragraph 3.3, Page 7 of Exhibit 5. In fact, Exhibit C of Exhibit 5, Disbursement Schedule, requires that at closing $194,000 was to be held back for interest reserves, and $22,806,000 advanced to the borrower. An additional $1,536,000 in interest reserves was to be withheld upon the additional advance of $7,000,000, for a total of $1,720,000 in interest reserves. Debtors' counsel has advised that Tom Barry at USA Commercial Mortgage reports the interest reserves have been depleted, but that the principal of the borrower on these two loans was made aware of the interest deficiency and would bring the loans current by the end of May. The interest reserves were to have been held back and made available for payments during the course of construction. The Note, Exhibit 6, matures one year from date of recordation

of the Deed of Trust, Exhibit 7, which was recorded on September 19, 2005. There should have been sufficient interest reserves to pay the interest until maturity of the note. MWM requests that the Debtor immediately account for the interest reserves and why they were not held back, or if they were held back identify where the funds have been applied, recover or replace these interest reserves, and immediately distribute the same to MWM.

2.          Accountings Under the Loan Servicing Agreements Should Be Given.

        Since this instant bankruptcy filing, no accounting of the monthly interest has been given. The standard Service Agreement requires at a minimum quarterly. See Loan Servicing Agreement, attached hereto as Exhibit 10, Paragraph 2(d), Page 3. Debtors should immediately provide the anticipated accountings for each loan, immediately compel the Disbursing Agents to utilize the interest reserves as originally contemplated and begin disbursing monthly interest payments therefrom, for the benefit of the direct lenders involved in these projects, or this Court should order that the respective Disbursing Agents disburse directly to MWM.

        The funds held either by the Disbursing Agent(s) in the Control Account(s) or subsequently paid over to USACMC as the servicing agent are readily traceable to MWM direct lenders and are not property of the bankruptcy estate. At best, only a small portion of these funds are in fact property of the estate. Pursuant to the service agreement, USACMC was entitled to take a servicing fee, and did so at the beginning of each loan. See Exhibit 10, Paragraph 5, Page 4. As such, none of the monthly interest reserves being held by the Disbursing Agent(s) belongs to USACMC. There is no legal or equitable interest held by the Debtors in these funds unless the funds are collected and disbursed to the direct lenders pursuant to Exhibit 10. As such to require the Court to hold these funds is unnecessary, illegal, and would cause undue hardship to the direct lenders, many of whom rely upon these funds to provide their monthly income. MWM joins in the numerous Oppositions to the Motion filed on this basis.

        Additionally, it is unlikely that the direct lenders will receive any anticipated monetary compensation for receiving late payments should it be determined that, in fact, the borrower timely

paid (ie the funds were in the interest reserves), the Disbursing Agent timely distributed from the Control Account, and yet USACMC failed to timely tender payment as required under the service agreement.

WHEREFORE, based upon the argument that there are sufficient interest reserves which have been paid by MWM to third party Disbursing Agents who are holding the interest reserves in separate Control Accounts, said funds are not property of the bankruptcy estate and, as such, are not subject to this Court's jurisdiction, nor subject to the Debtors' request to be held. There is no need to delay in determining the proper recipients of the funds, as the funds are easily traceable. The only question left for the Court is where the interest reserves paid to the Debtors on the Marlton Square property were held, and why they were disbursed to the Debtors and not held by the Disbursing Agent. As such, MWM requests that the Debtors' Motion be denied as to MWM in its entirety, and that USACMC be required to immediately surrender the funds collected an not yet turned over to MWM relative to the Lerin Hills and Marlton Square projects. Furthermore, MWM should be given an accounting of all funds disbursed through close of escrow and collected by Debtors, and all funds thereafter collected by Debtors, as anticipated in the Loan Servicing Agreement.

DATED this 28th day of May, 2006.

**GOLDSMITH & GUYMON, P.C.**

Marjorie A. Guymon
Marjorie A. Guymon, Esq.
Nevada Bar No. 4983
2055 N. Village Center Circle
Las Vegas, Nevada  89134
Attorneys for Mountain West Mortgage, LLC

\\Gngdc\data\MAG\Client Matters\BK Clients\Mountain West Mortgage, LLC\opp2motion2holdfunds.wpd