## UNCONDITIONAL REPAYMENT
## AND COMPLETION GUARANTY

Pursuant to a promissory note ("Note") dated December 7, 2005, **Lerin Hills, LTD.**, a Texas limited partnership ("Borrower"), is indebted to those persons listed on **Exhibit "A"** attached hereto ("Lender") in the principal amount of up to Twelve Million Nine Hundred Thousand Dollars ($12,900,000). The Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), covering the real property ("Real Property") owned by the Borrower, located in Kendall County, Texas (which Real Property is more particularly described in the Deed of Trust), and the improvements erected, or to be erected thereon. The Note, Deed of Trust and this Guaranty are executed pursuant to that certain Loan Agreement of even date herewith between Lender and Borrower (the "Loan Agreement"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in the Loan Agreement, as amended. In further consideration of the loan evidenced by the Note, and for other good and valuable consideration, the sufficiency of which hereby is acknowledged, the undersigned (collectively, the "Guarantor"), jointly and severally agree with you as follows:

Section 1. Terms of Guaranty.

(a) Guarantor unconditionally guarantees that all sums of whatever character, stated in the Note or the Deed of Trust to be payable by the Borrower, including, without limitation, actual attorneys' fees whether or not suit is filed, and whether or not denied by a court in an action between Lender and Borrower, or between Lender and anyone else with respect to enforcing Borrower's obligations under the Loan Documents, will be promptly paid in full when due, whether by acceleration or otherwise, in accordance with the provisions thereof. This Guaranty is unconditional, absolute and continuing, and if for any reason any such sum shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to the provisions of the Note and Deed of Trust, respectively, as may be applicable, including principal and interest, as if such sums constituted the direct and primary obligation of Guarantor, regardless of any defenses or rights of set off or counterclaim which Borrower may have or assert, and regardless of whether any person shall have taken any steps to enforce any rights against Borrower or the property covered by the Deed of Trust or any other person to collect such sum, and regardless of any other condition or contingency.

(b) Guarantor hereby irrevocably and unconditionally guarantees and agrees that if for any reason Borrower fails to fulfill all of its obligations under the Loan Agreement or otherwise fails to complete or to diligently proceed with the construction of the Improvements within the time limits specified in the Loan Agreement, free and clear of all mechanics' and materialmen's liens, or fails to pay all costs of construction, or if Borrower in any manner defaults under the Loan Agreement or the other Loan Documents, then, within ten (10) calendar days after written demand by Lender, Guarantor will immediately assume all responsibility for the timely and lien-free completion of the Improvements in accordance with the plans therefor and all applicable Laws. If Guarantor does not assume such responsibility and obligations within such 10-day period, or thereafter does not

1

faithfully and diligently discharge the same, Lender may elect, without further notice to Guarantor, to take any action Lender believes necessary to complete the Improvements but with the further right to suspend or terminate such actions at any time. No such actions by Lender shall release or limit the liability of Guarantor, and Guarantor agrees to repay Lender no later than seventy-two (72) hours after demand all sums expended by Lender in undertaking to complete the Improvements, including any sums expended in excess of the principal amount of the Loan, whether or not construction is actually completed. The obligation of Guarantor to complete construction of the Improvements pursuant to this Section 1(b) is in addition to the obligation of Guarantor to pay to Lender the indebtedness pursuant to Section 1(a) hereof.

(c) Guarantor unconditionally guarantees that Borrower will perform and observe each agreement, covenant, term and condition of the Note and the Deed of Trust to be performed or observed by Borrower, and upon Borrower's failure to do so, Guarantor will promptly perform and observe, or will cause to be promptly performed and observed, such agreement, covenant, term or condition. Guarantor acknowledges that he has reviewed the Loan Agreement, and hereby represents that all covenants and representations therein attributable to Guarantor are true and correct.

(d) The obligations, covenants, agreement and duties of Guarantor under this Guaranty shall in no way be affected or impaired by reason of the happening from time to time of any of the following with respect to the Note or the Deed of Trust or this Guaranty (all being collectively referred to herein as the "Instruments"), although without notice to or the further consent of Guarantor thereto:

(i) The waiver by Lender of the performance or observance by Borrower of any agreement, covenant, term or condition to be performed or observed by it;

(ii) The extension of the time for the payment of any sums owing or payable under the Instruments or the time for the performance of any other obligation under or arising out of or on account of the Instruments;

(iii) The supplementing, modification or amendment (whether material or otherwise) of any of the Instruments or any of the obligations of the Borrower set forth in the Instruments;

(iv) Any failure, omission, delay or lack on the part of the Lender or any other person to enforce, assert or exercise any right, power or remedy conferred on such person in any of the Instruments or any action on such person's part granting indulgence or extension in any form;

(v) The release of any security under the Deed of Trust or the release, modification, waiver or failure to enforce any other guaranty, pledge indemnity or security device whatsoever;

(vi) The voluntary or involuntary liquidation, dissolution, sale of any or

2

substantially all of the property described in the Deed of Trust by private power of sale or otherwise, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar proceeding affecting the Borrower or any of its assets;

(vii)   The release of the Borrower from performance or observance of any of the agreements, covenants, terms or conditions contained in the Instruments by operation of law.

(e)   In the event Borrower is not liable on the Note because the act of creating the indebtedness evidenced thereby and/or execution and delivery of the Instruments is ultra vires, or because the officers executing same acted without authority, or if Borrower be not liable for any other reason, or in the event the Note cannot be enforced against the Borrower, then, and in any such event, such facts shall in no manner affect the liability of Guarantor hereunder.

(f)   Guarantor's obligations hereunder shall be joint and several between themselves, and joint and several and independent of those of Borrower or of any other guarantor of Borrower's obligations under the Note and Deed of Trust.

(g)   Guarantor's liability under this Guaranty shall continue until all sums due under the Note have been paid in full and until all obligations to Lender under the Instruments have been satisfied.

(h)   The liability of Guarantor under this Guaranty is a guarantee of payment and performance and not of collectability, and is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Loan Documents or other instruments relating to the creation or performance of the obligations guaranteed hereby or the pursuit by Lender of any remedies which it now has or may hereafter have with respect thereto under the Loan Documents, at law, in equity or otherwise. Guarantor hereby agrees that Guarantor's liability may be larger in amount and more burdensome than that of Borrower. Guarantor's liability hereunder shall not be limited or affected in any way by any impairment or any diminution or loss of value of any security or collateral for the Loan, whether caused by hazardous substances, impaired soil characteristics or otherwise, Lender's failure to perfect a security interest in such security or collateral or any disability or other defense of Borrower or any other guarantor.

Section 2.   Covenants and Warranties.

(a)   There is no action or proceeding pending or, to the knowledge of Guarantor, threatened against Guarantor before any court or administrative agency which might result in any material adverse change in the business or condition of Guarantor or in the property of Guarantor.

(b)   Guarantor has filed all Federal and State income tax returns which are required to be filed, and has paid all taxes shown on said returns and on all assessments received by him to the extent that such taxes have become due.

3

(c) Guarantor is not a party to any contract or agreement which materially and adversely affects his business, property or assets or financial condition. Neither the execution nor delivery of this Guaranty nor fulfillment of nor compliance with the terms and provisions hereof will conflict with, or result in a breach of the terms, conditions or provisions of, or constitute a default under or result in the creation of any lien, charge or encumbrance upon any property or assets of Guarantor under any other agreement or instrument to which Guarantor is now a party or by which Guarantor may be bound.

(d) Guarantor is a member of a partner of Borrower and agrees that Lender's agreement to make the Loan to Borrower is of substantial and material benefit to Guarantor. Thus, Guarantor has received adequate consideration for the execution and delivery of this Guaranty.

(e) If Guarantor is an individual, Guarantor represents and warrants to Lender that Guarantor has disclosed to Lender, in writing, any Trusts to which Guarantor has transferred any of his assets (without receiving in return full fair market value therefor), and Guarantor further represents and warrants that he will not transfer any of his assets to a trust (without receiving in return full fair market value therefor), or make a gift (or gifts totalling) more than 5% of Guarantor's net worth, during the term of this Guaranty without Lender's prior written consent. Guarantor also agrees that any personal or family trusts of which Guarantor is trustee shall be bound by this Guaranty, and that any such trusts shall be a co-guarantor of the Loan.

Section 3. Events of Default.

If any of the following events occur or be continuing:

(a) An event of default occurs under the terms of the Note or the Deed of Trust; or

(b) If any representation or warranty made by the Guarantor herein or in any writing furnished in connection with or pursuant to this Guaranty shall be false in any material respect on the date as of which made; or

(c) If the Guarantor defaults in the performance or observance of any agreement, covenant, term or condition contained herein; or

(d) If the Guarantor makes an assignment for the benefit of creditors; or

(e) If the Guarantor petitions or applies to any tribunal for the appointment of a trustee or receiver of his business, estate or assets or of any substantial part thereof, or commences any proceedings relating to him under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether or not hereafter in effect; or

(f) If any such petition or application is filed or any such proceedings are commenced against the Guarantor and the Guarantor by any act indicates his approval thereof, consent thereto, or acquiescence therein, or an order is entered appointing any such trustee or receiver, or

4

adjudicating the Guarantor bankrupt or insolvent, or approving the petition in any such proceedings; unless, within sixty (60) days of the filing of any such petition, application, or order, the same is not withdrawn, dismissed, released, or vacated, as the case may be; THEN an event of default under this Guaranty shall have occurred and the holders of the Note, may, at its or their option, declare the Note and the Deed of Trust to be, and the Note and the Deed of Trust shall thereupon be and become immediately due and payable together with interest accrued thereon, under the terms of and with the effect provided in this Guaranty.

Section 4. <u>Miscellaneous</u>.

(a) All guarantees, covenants and agreements contained in this Guaranty shall bind the successors and assigns of Guarantor and Borrower and shall inure to the benefit of the Lender and all future holders of the Note or any part thereof, whether so expressed or not.

(b) The Guaranty shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to its choice of law provisions.

(c) In the event that the Lender shall receive any payments on account of any of the obligations hereby guaranteed, whether directly or indirectly, and it shall subsequently be determined that such payments were for any reason improper, or a claim shall be made against them that the same were improper, and they either voluntarily or pursuant to court order shall return the same, Guarantor shall be liable, with the same effect as if the same payments had never been paid to, or received by, the Lender for the amount of such repaid or returned payments, notwithstanding the fact that they may theretofore have been credited on account of the obligations hereby guaranteed or any of them.

(d) No delay on the part of the Lender in exercising any power or right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right hereunder or the failure to exercise same in any instance preclude other or further exercise thereof or the exercise of any other power or right; nor shall the Lender be liable for exercising or failing to exercise any such power or right; the rights and remedies hereunder expressly specified are cumulative and not exclusive of any rights or remedies which the Lender may or will otherwise have.

(e) The Guarantor irrevocably and unconditionally:

(i) Consents to the in personam jurisdiction of the courts of the State of Nevada.

(ii) Waives any objection which the Guarantor may now or hereafter have to the laying of venue of any actions, suits, or proceedings arising out of or in connection with this Guaranty brought in any such State's courts, and waives and agrees not to plead or claim that any such action, suit, or proceeding brought in any court has been brought in an inconvenient forum;

5

      (iii)    Waives any and all legal requirements that the Lender, its successors or assigns, institute any action or proceedings at law or in equity against the Borrower or anyone else with respect to the Note, the Letter Agreement, the Deed of Trust or this Guaranty or with respect to any other security held by the Lender, as a condition precedent to bringing any action against the Guarantor upon this Guaranty.

      (iv)    Waives notice of acceptance of this Guaranty, presentment, demand for payment, protest, notice of default or nonpayment, notice of dishonor, and all other notices and demands.

      (v)    Guarantor hereby expressly waives any rights and defenses he may have pursuant to the provisions of Sections 40.430, 100.040 and 100.050 of the Nevada Revised Statutes.

      (vi)    Guarantor expressly waives any claim, right or remedy which Guarantor may now have or hereafter acquire against Borrower that arises hereunder and/or from the performance by Guarantor of its obligations hereunder including, without limitation, any claim, remedy, or right of subrogation, reimbursement, exoneration, contribution, indemnification or participation in any claim, right or remedy of Lender against Borrower or any security which Lender now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise;

(f)    Any and all notices, demands and/or communications described herein, or which may be necessary or appropriate hereunder, shall be valid if delivered personally, or if deposited in the U.S. mail, postage prepaid, certified mail, return receipt requested, to the following addresses:

| | |
|---|---|
| If to Guarantor: | J. Abel Godines<br>4820 Bacon Road<br>San Antonio, Texas 78249 |
| If to Lender: | USA Commercial Mortgage Company<br>4484 South Pecos Road<br>Las Vegas, Nevada 89121<br>Attn: Joseph D. Milanowski |
| With a copy to: | Goold Patterson Ales & Day<br>4496 South Pecos Road<br>Las Vegas, Nevada 89121<br>Attn: Bryan K. Day, Esq. |

6

Any notice, demand or communication deposited in the U.S. mail as aforesaid shall be deemed received on the earlier of three (3) business days after deposit in the U.S. mail, or upon actual receipt.

(g) Until the payment and performance in full of all Obligations, the Guarantors shall not exercise any rights or remedies against Borrower arising as a result of payment by the Guarantors hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with Lender in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantors shall not claim any set-off or counterclaim against Borrower in respect of any liability of the Guarantors to Borrower; and the Guarantors hereby waive any benefit of and any right to participate in any collateral which may be held by Lender. The payment of any amounts due with respect to any indebtedness of Borrower now or hereafter held by the Guarantors is hereby subordinated to the prior payment in full of the Obligations. The Guarantors agree that after the occurrence of any default in the payment or performance of the Obligations, the Guarantors will not demand, sue or otherwise attempt to collect any such indebtedness of Borrower to the Guarantors until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantors shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantors as trustee for Lender and be paid over to Lender on account of the Obligations without affecting in any manner the liability of the Guarantors under the other provisions of this Guaranty. The provisions of this paragraph 23 shall be supplemental to and not in derogation of any rights and remedies of Lender under any separate subordination agreement which Lender may at any time and from time to time enter into with the Guarantors.

IN WITNESS WHEREOF the undersigned have executed this Guaranty the date first set forth above.

**GUARANTOR:**

_____
J. Abel Godines

7

STATE OF NEVADA     )
                    ) ss.
COUNTY OF CLARK     )

This instrument was acknowledged before me on this 7th day of December, 2005 by J. Abel Godines.

*Margaret M Stone*
Notary Public
(My Commission Expires: 4/27/09)

MARGARET M. STONE
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 04-27-2009
Certificate No: 05-96400-1

8

# EXHIBIT "A"

## LENDERS

|  | NAME | Amount |
|---|---|---|
| 1 | Drs. Stanley Alexander and Florence Alexander husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 2 | Pensco Trust Company Inc. Custodian for Robert S. Angel IRA | $25,000 |
| 3 | Rod Arbogast & Donna Arbogast Trustees of the Arbogast Family Trust | $250,000 |
| 4 | Kenneth R. Becker & Joanne T. Becker husband & wife Grace Becker & Sarah Becker their minor children with right of survivorship | $50,000 |
| 5 | First Savings Bank Custodian for Paula S. Bender IRA | $98,000 |
| 6 | Paul Bloch Trustee of the Paul Bloch Living Trust UA 10/29/02 | $150,000 |
| 7 | First Savings Bank Custodian for Paul Bloch IRA | $150,000 |
| 8 | John Borkoski & Kathleen Borkoski husband & wife as joint tenants with rights of survivorship | $60,000 |
| 9 | Ashley Brooks a single woman | $75,000 |
| 10 | Donna J. Brooks a single woman | $25,000 |
| 11 | First Savings Bank Custodian For John W. Brouwers MD SEP IRA | $50,000 |
| 12 | John P. Brouwers Trustee of the Brouwers Family Trust dated 1/11/1995 | $50,000 |
| 13 | Bruce D. Bryen an unmarried man transfer on death to Erica Bryen an unmarried woman | $25,000 |
| 14 | PLB Enterprises LLC | $25,000 |
| 15 | Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $50,000 |
| 16 | Margaret M. Cangelosi an unmarried woman | $50,000 |
| 17 | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 18 | Ronald M. Cetovick and Barbara Cetovick husband and wife as joint tenants with the rights of survivorship | $60,000 |
| 19 | Pat M. Chiappetta & Joann Chiappetta Trustees of The Chiappetta Trust dated 4/1/03 | $30,000 |
| 20 | Terry Coffing a married man dealing with his sole and separate property | $50,000 |
| 21 | Penny Lee Comsia Trustee of the Penny Lee Comsia Revocable Trust UDT 4/10/00 | $50,000 |
| 22 | Sam Costanza Trustee of The Costanza 1987 Decedent's Trust | $50,000 |
| 23 | Deborah A. Daniel A single woman | $50,000 |
| 24 | Frank Davenport a single man | $100,000 |
| 25 | Panagiotis Dovanidis a single man & Dimitra Dovanidou a married woman dealing with her sole & separate property as joint tenants with right of survivorship | $50,000 |
| 26 | Mark L. Eames & Sandy K. Eames husband & wife as joint tenants with right of survivorship | $50,000 |
| 27 | Aurora Investments Limited Partnership | $1,000,000 |

Lerin Hills
12/14/05

Page 1 of 5

| | | |
|---|---|---|
| 28 | John R. Emery & Sandra Kipp Emery Trustees of the Emery Living Trust dated 6/04/91 | $50,000 |
| 29 | Samuel Evans & Beverly Evans Trustees of the Samuel & Beverly Evans Living Trust | $125,000 |
| 30 | Denise F. Fager Trustee of the Denise F. Fager Revocable Trust under agreement dated 2/28/03 | $50,000 |
| 31 | Patrick F. Fenlon and Angela B. Fenlon husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 32 | Maurice Fink Trustee of the Maurice Fink Trust | $300,000 |
| 33 | Dennis Flier Trustee of the Dennis Flier Inc. Defined Benefit Trust dated 6/29/87 | $50,000 |
| 34 | Dennis Flier & Carol Flier Trustees of the Flier Family Trust dated 1/21/98 | $50,000 |
| 35 | Bruce Francis and Tamara Francis Trustees of the Francis Family Trust Dtd 11/10/98 | $50,000 |
| 36 | John R. Frederickson and Michele L. Frederickson Trustees of the Frederickson Trust dated 10/02/03 | $35,000 |
| 37 | Glenn W. Gaboury and Sharon M. Gaboury husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 38 | Sylvia Goldenthal & Jack Goldenthal husband & wife as joint tenants with right of survivorship | $100,000 |
| 39 | Gonska Foundation LLC a Nevada limited liability company | $50,000 |
| 40 | Patrick Gonzales and Rosemary Gonzales husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 41 | William Harrison Goulding and Elizabeth R. Goulding husband & wife as joint tenants with right of survivorship | $100,000 |
| 42 | Stacy Grant Trustee of The Stacy Grant Revocable Trust | $100,000 |
| 43 | Gail A. Gray and Robert W. Gray Trustees of the Robert W. & Gail A. Gray Revocable Trust | $40,000 |
| 44 | Toby Gunning an unmarried man | $45,000 |
| 45 | Larry E. Hanan Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02 | $50,000 |
| 46 | MLH Family Investment Limited a Texas company | $150,000 |
| 47 | Lynn J. Hansen Trustee of the Reynold E. Palesh Trust dated 6/17/01 | $50,000 |
| 48 | Gayle Harkins a married woman dealing with her sole & separate property | $25,000 |
| 49 | Jennifer J. Harmon a single woman and Cheryl Hoff a married woman dealing with her sole and separate property as joint tenants with the rights of survivorship | $25,000 |
| 50 | James F. Heaton and Nadine B. Heaton Trustees of The Heaton Family Trust Dated December 4 1995 | $100,000 |
| 51 | Virgil P. Hennen & Judith J. Hennen husband and wife as joint tenants with the right of survivorship | $50,000 |
| 52 | Richard Holeyfield and Marsha Holeyfield Trustees of the Holeyfield Family Trust dated 01/12/01 | $25,000 |

Lerin Hills
12/14/05

Page 2 of 5

| | | |
|---|---|---|
| 53 | Delwin C. Holt an unmarried man | $50,000 |
| 54 | Edward W. Homfeld an unmarried man | $400,000 |
| 55 | Kathy John an unmarried woman & Tina Eden as unmarried woman as joint tenants with right of survivorship | $25,000 |
| 56 | John W. Keith & Kathleen B. Keith Trustees of the John & Kathleen Keith Living Trust dated 8/19/02 | $50,000 |
| 57 | Carol A. Kelly a single woman | $50,000 |
| 58 | Freedom Properties Inc. | $50,000 |
| 59 | Gail Klevay a married woman dealing with her sole & separate property | $30,000 |
| 60 | First Savings Bank Custodian for Stephen V. Kowalski IRA | $30,000 |
| 61 | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 62 | Chris F. Lapacik and Rosemary D. Lapacik husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 63 | Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000 |
| 64 | Hans J. Leer & Carolyn F. Leer as joint tenants with right of survivorship | $30,000 |
| 65 | Henry L. Letzerich and Norma W. Letzerich husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 66 | Daniel B. Lisek Claire Lisek & Gayle Harkins Trustees of the Lisek Family Trust dated 1/29/92 | $75,000 |
| 67 | Nicholas Loader Trustee of the Nicholas Loader Trust U/A | $50,000 |
| 68 | Ben Lofgren & Dana Lofgren Husband and wife as joint tenants with right of survivorship | $50,000 |
| 69 | Scott Machock & Heidi Machock Husband and wife as joint tenants with right of survivorship | $70,000 |
| 70 | Samuel A. Mammano and Karen M. Mammano husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 71 | Melissa Mamula a single woman | $25,000 |
| 72 | Lily Markham a married woman dealing with her sole & separate property & Irene Anne Markham-Tafoya a married woman dealing with her sole & separate property | $25,000 |
| 73 | Barbara McClaflin Trustee of the Revocable Living Trust Agreement of Barbara Fay McClaflin | $25,000 |
| 74 | Don D. Meyer an unmarried man & Dennis E. Hein an unmarried man as joint tenants with right of survivorship | $25,000 |
| 75 | Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $25,000 |
| 76 | W. L. Montgomery Jr. Guaranty Loan Account | $250,000 |
| 77 | KM Financials LLC. a Utah corporation | $50,000 |
| 78 | Marvin Myers & Valliera Myers Trustees of the Marvin & Valliera Myers Trust | $35,000 |
| 79 | D & K Partners Inc. a Nevada corporation | $200,000 |

| | | |
|---|---|---|
| 80 | Howard Nehdar Custodian for Kyle Nehdar UGMA | $50,000 |
| 81 | Gloria J. Nelson a married woman dealing with her sole & separate property | $50,000 |
| 82 | John Nix & Lisa Nix husband & wife as joint tenants with right of survivorship | $100,000 |
| 83 | James W. Pengilly and Amanda M. Pengilly husband and wife as joint tenants with right of survivorship | $50,000 |
| 84 | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 85 | Petuck Capital Corporation a Nevada Corporation | $50,000 |
| 86 | Holly J. Pickerel a single woman | $75,000 |
| 87 | Patricia A. Pontak and Darrell M. Wong Trustees of the Pontak Wong Revocable Trust dated Jan 19 2004 | $100,000 |
| 88 | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 89 | Hans J. Prakelt an unmarried man | $50,000 |
| 90 | James P. Randisi and Mary M. Randisi husband and wife as joint tenants with the rights of survivorship | $25,000 |
| 91 | First Savings Bank Custodian For Noel E. Rees IRA | $30,000 |
| 92 | Michael H. Ricci a married man dealing with his sole & separate property | $50,000 |
| 93 | Rulon D. Robison Trustee of the Rulon D. Robison Profit Sharing Plan | $50,000 |
| 94 | Robert R. Rodriguez an unmarried man | $50,000 |
| 95 | Rodney L. Roloff & Sharyn A. Roloff Trustees of the R & S Roloff Trust dated 9/20/03 | $50,000 |
| 96 | Robert F. Samuels & Linda M. Samuels husband & wife as joint tenants with right of survivorship | $25,000 |
| 97 | William J. Sandberg & Shang'Ling J. Tsai husband and wife as joint tenants with the right of survivorship | $50,000 |
| 98 | Robert B. Sandler & Patricia D. Sandler Trustees of the Sandler Living Trust dated August 29 2005 | $25,000 |
| 99 | William E. Schnadt & Janet E. Schnadt Trustees of the Schnadt Trust dated 6/18/93 | $25,000 |
| 100 | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 101 | Edward L. Schoonover & Susan A. Schoonover Co-Trustees of The Schoonover Family Trust dated 2/23/04 | $25,000 |
| 102 | Ira Jay Shapiro an unmarried man & Blanche Shapiro an unmarried woman as joint tenants with the right of survivorship | $25,000 |
| 103 | Billy Shope Jr. Family LP a Nevada limited partnership | $100,000 |
| 104 | Carol J. Simcock a single woman | $50,000 |
| 105 | First Savings Bank Custodian For Carol J. Simcock IRA | $70,000 |
| 106 | Michael S. Simcock & Dina M. Simcock husband & wife as joint tenants with right of survivorship | $50,000 |
| 107 | Alan R. Simmons & Judith B. Simmons husband & wife as joint tenants with right of survivorship | $25,000 |

Lerin Hills
12/14/05

Page 4 of 5

| # | Name | Amount |
|---|---|---|
| 108 | Joyce E. Smith Trustee of the Joyce E. Smith Trust dated 11/3/99 | $50,000 |
| 109 | Bruce A. Smith & Annina M. Smith husband & wife as joint tenants with right of survivorship | $100,000 |
| 110 | Rocklin/Redding LLC | $270,000 |
| 111 | Kerry S. Taylor & Joyce L. Taylor Trustees of the Taylor Living Trust dated 2/27/98 | $50,000 |
| 112 | Alneil Associates Neil Tobias General Partner | $200,000 |
| 113 | Neil Tobias a married man | $50,000 |
| 114 | Anton Trapman an unmarried man | $25,000 |
| 115 | John M. Tripp Trustee of the Tripp Family Trust 1997 | $35,000 |
| 116 | Robert W. Ulm Trustee of the Robert W. Ulm Living Trust dated 4/11/05 | $25,000 |
| 117 | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $50,000 |
| 118 | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dated 5/20/99 | $200,000 |
| 119 | Roy R. Ventura Jr. & Nancy B. Ventura husband & wife as joint tenants with right of survivorship | $35,000 |
| 120 | Marietta Voglis a married woman dealing with her sole & separate property | $25,000 |
| 121 | Frank Weinman Trustee of the Weinman Family Trust dated 9/6/96 | $150,000 |
| 122 | Rachel Wheeler Trustee of the Rachel Wheeler Trust | $25,000 |
| 123 | Work Holdings Inc. an Arizona corporation | $100,000 |
| 124 | Dwight J. Yoder & Nancy E. Yoder Trustees of the Yoder Family Trust dated 10/25/00 | $50,000 |
| 125 | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $147,000 |
| 126 | Spectrum Capital LLC a California limited liability company | $50,000 |
| 127 | Shahriar Zavosh an unmarried man | $50,000 |
| 128 | USA Commercial Mortgage Company | $2,900,000 |
|  | TOTAL | $12,900,000 |