Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(n)     any Governmental Agency condemns, seizes or appropriates all or a substantial portion of the Property, except in accordance with the Redevelopment Agreement; or

(o)     any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(p)     any default occurs in any Loan Document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any Loan Document regarding any loan or other obligation secured by the Property or any portion thereof.

7.2     <u>Remedies Upon Default</u>. Upon the occurrence of any Event of Default, Lender may, at its option, do any or all of the following:

(a)     declare the principal of all amounts owing under the Note, this Agreement and the other Loan Documents and other obligations secured by the Security Documents, together with interest thereon, and any other obligations of Borrower to Lender to be forthwith due and payable, regardless of any other specified maturity or due date, without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, and without the necessity of prior recourse to any security;

(b)     <u>(Intentionally Omitted)</u>

(c)     terminate all Disbursements from the Control Account Funds and immediately demand from the Disbursement Agent all of the Control Account Funds then on deposit with Disbursement Agent;

(d)     terminate all rights of Borrower and obligations of Lender under the Loan Documents;

(e)     exercise its right and power to sell, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of the Personal Property, or any part thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Lender's option Borrower shall assemble the Personal Property and make it available to the Lender at the place and the time designated in the demand; and

(f) exercise any and all of its rights under the Loan Documents, including but not limited to the right to take possession of and foreclose on any security, and exercise any other rights with respect to any security, whether under the Security Documents or any other agreement or as provided by Law, all in such order and in such manner as Lender in its sole discretion may determine.

7.3 Cumulative Remedies; No Waiver. All remedies of Lender provided for herein are cumulative and shall be in addition to any and all other rights and remedies provided in the other Loan Documents or provided by Law from time to time. The exercise of any right or remedy by Lender hereunder shall not in any way constitute a cure or waiver of any default hereunder or under any of the other Loan Documents, nor invalidate any notice of default or any act done pursuant to any such notice, nor prejudice Lender in the exercise of any rights hereunder or under the Loan Documents. No waiver by Lender of any default by Borrower hereunder shall be implied from any omission by Lender to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default expressly made the subject of the waiver. Any such express waiver shall operate only for the time and to the extent therein stated. Any waiver of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. Lender's consent to or approval of any act by Borrower requiring further consent or approval shall not waive or render unnecessary consent to or approval of any subsequent act.

7.4  Notice of Default and Foreclosure

Anything in the Loan Documents to the contrary, USA, as agent for Lender, hereby agrees to give notice of any Event of Default that it gives to Borrower to 3901 Santa Rosalia, LLC and to 3916 MLK, LLC (the "subordinate lenders"), and shall give the subordinate lenders ten (10) days to cure such default. So long as no monetary default is continuing, Lender shall not commence a foreclosure of its Deed of Trust, and shall permit the subordinate lender(s) to conduct a foreclosure under their deeds of trust if, and only if, the foreclosing lender(s) pursue in good faith and with due diligence the cure of any non-monetary default, and make all payments timely that are due under any of the Loan Documents that Borrower fails to make. Should either subordinate lender complete a foreclosure, then Lender shall require the buyer at the foreclosure sale to execute an assumption agreement prepared by Lender's counsel that requires that buyer to assume all of Borrower's obligations and duties under the Loan Documents. Lender will not require any assumption fee in this case, and will thereafter treat the assuming party as the Borrower under the Loan Documents.

Should Borrower file a bankruptcy, the foregoing agreement shall be void during the pendency of the bankruptcy.

## SECTION 8: MISCELLANEOUS.

8.1  Performance by Lender. In the event that Borrower shall default in or fail to perform any of its obligations under the Loan Documents, Lender, without limiting any of its rights, may,

but is not obligated to, perform the same, and Borrower agrees to pay to Lender, within five (5) business days after written demand, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.2     Actions. Provided Borrower has not promptly so acted, Lender shall have the right to commence, appear in, and defend any action or proceeding purporting to affect the rights or duties of the parties hereunder or the payment of any funds, and in connection therewith Lender may pay necessary expenses, employ counsel, and pay reasonable attorneys' fees. Borrower agrees to pay to Lender, within five (5) business days after written demand, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.3     Advances Obligatory. Anything herein to the contrary notwithstanding, the parties specifically understand and agree that any advances that Lender makes pursuant to this Agreement, including, but not limited to, all funds advanced by Lender, other than advances pursuant to Section 3.2 hereof, shall be advanced under an obligation to do so, regardless of the person or entity to whom such advance is made. Advances made in the reasonable exercise of Lender's judgment that such are necessary to complete the Improvements or to protect its security are obligatory advances hereunder and are to be secured by the Note and Deed of Trust, and such security shall relate back to the original recording of the Deed of Trust.

8.4     Nonliability of Lender. Borrower acknowledges and agrees that:

(a)     any inspections of the Property, or of the demolition of the Improvements made by or through Lender are for purposes of administration of the Loan only and Borrower is not entitled to rely upon the same with respect to the quality, adequacy or suitability of materials or workmanship, conformity to the plans therefor, state of completion or otherwise; Borrower shall make its own inspections of such construction to determine that the quality of the Improvements and all other requirements of such construction are being performed in a manner satisfactory to Borrower and as required by the Improvement Plans and all applicable Laws; and Borrower shall immediately notify Lender, in writing, should the same not conform to the plans therefor and all applicable laws;

(b)     by accepting or approving anything required to be observed, performed, fulfilled or given by or to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss or other financial statement, survey, appraisal, lease or insurance policy, Lender does not thereby warrant or represent the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not constitute a warranty or representation to anyone with respect thereto by Lender;

(c)     Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of any matter in connection with the Project, including without limitation matters relating to the quality, adequacy or suitability of: (i) any plans or specifications, (ii) architects, contractors, subcontractors and materialmen employed or utilized in connection with the construction of the Improvements, or the

workmanship of or the materials used by any of them, or (iii) the progress or course of any construction and its conformity or nonconformity with the plans therefor. Borrower shall rely entirely upon its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or information that Lender supplies to Borrower in connection with such matters is for the protection of Lender only and neither Borrower nor any third party is entitled to rely thereon;

(d) Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction;

(e) Borrower and Lender's relationship under the Loan Documents is, and at all times shall remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any other Person with respect to the Property or Loan, except as expressly provided in the Loan Documents. Notwithstanding any other provision of the Loan Documents: (i) Lender is not, and shall not be construed as, a partner, joint venturer, alter-ego, manager, controlling person or an insider or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with the Loan Documents shall not be "outside the scope of the activities of a lender of money" under Nevada law, as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property or Improvements; and (iii) Lender shall not be responsible for or a participant in any acts, omissions or decisions of Borrower; and

(f) Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any Person or property arising from any construction on, or occupancy or use of, any of the Property, whether caused by, or arising from: (i) any defect in any building, structure, soil condition, grading, fill, landscaping, or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on any of the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower, any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain any of the Property in a safe condition; and (v) any nuisance made or suffered on any part of the Property.

8.5    No Third Parties Benefitted. This agreement is made for the purpose of defining and setting forth certain obligations, rights and duties of Borrower, Lender and USA in connection with the Loan. It constitutes a supplement to the Note and the Security Documents, and is not a modification of the Note or the Security Documents, except as provided herein. It is made for the sole protection of Borrower, Lender, and USA, and their successors and assigns. No other Person shall have any rights of any nature hereunder of by reason hereof.

8.6    Indemnity. Borrower indemnifies Lender against, and holds Lender harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, cause of action (whether legal, equitable or administrative), judgments, court costs and legal or other

32

expenses, including attorneys' fees, which Lender may suffer or incur as a direct or indirect consequence of: (a) Lender's performance of this Agreement or any of the Loan Documents, including, without limitation, Lender's exercise or failure to exercise any rights, remedies or powers in connection with this Agreement or any of the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon the Lender in the normal course of the Lender's business such as taxes and regulatory fees; (b) Borrower's failure to perform any of Borrower's obligations as and when required by this Agreement or any of the other Loan Documents, including, without limitation, any failure, at any time, of any representation or warranty of Borrower to be true and correct and any failure by Borrower to satisfy any condition; (c) any claim or cause of action of any kind by any Person to the effect that Lender is in any way responsible or liable for any act or omission by Borrower, whether on account of any theory of derivative liability or otherwise, including but not limited to any claim or cause of action for fraud, misrepresentation, tort or willful misconduct; (d) any act or omission by Borrower, any contractor, subcontractor or material supplier, engineer, architect, or any other Person with respect to any of the Property or Improvements; or (e) any claim or cause of action of any kind by any Person which would have the effect of denying Lender the full benefit or protection of any provision of this Agreement or the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon Lender in the normal course of Lender's business such as taxes and regulatory fees. Lender's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Lender's conduct is active, passive or subject to any other classification or that Lender is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Borrower or any other Person. Notwithstanding the foregoing, Borrower shall not be obligated to indemnify, defend or hold harmless Lender with respect to any intentional tort or act of negligence which Lender is personally determined by the judgment of a court of competent jurisdiction (sustained on appeal, if any) to have committed, or as a result of a default by Lender under the Loan Documents. Borrower shall pay any indebtedness arising under this indemnity to Lender immediately within five (5) Business Days after written demand therefor by Lender together with interest thereon from the date such indebtedness arises until paid at the Default Rate. Borrower's duty to defend and indemnify Lender shall survive the release and cancellation of the Note and the release and reconveyance or partial release and reconveyance of the Deed of Trust.

8.7     Commissions. Provided that Lender pays from the Loan proceeds at closing the amount due to Partners Realty Capital as shown on **Exhibit "B"** hereto, Borrower hereby indemnifies Lender from the claim of any Person for a commission or fee in connection with the Loan.

8.8     Lenders' Representative. The persons and entities which comprise Lender hereby collectively appoint USA Commercial Mortgage Company ("USA") to administer the Loan on their behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder.

8.9     Binding Effect; Assignment. This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns; however, except as provided herein, Borrower may not assign its rights or interest or delegate any of its duties under

33

this Agreement or any of the other Loan Documents without prior written consent of Lender.

8.10 Amendments; Consents. No amendment, modification, supplement, termination or waiver of any provision of this Agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, may, in any event, be effective unless in writing signed by Lender, and then only in the specific instance and for the specific purpose given.

8.11 Costs, Expenses and Taxes. Borrower shall pay to Lender, within seventy-two (72) hours after demand therefor:

(a) the actual attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Documents and any matter related thereto;

(b) the actual costs and expenses of Lender in connection with any modification of any Loan Document or in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the actual fees and out-of-pocket expenses, reasonably incurred, of any legal counsel, independent public accountants and other outside experts retained by Lender; and

(c) all costs, expenses, fees, premiums and other charges relating or arising with respect to the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including, without limitation, the Disbursement Agent's fee, appraisal fees, inspection fees, cost review fees, recording fees, filing fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums that Lender pays or expends under the terms of this Agreement and the other Loan Documents are a part of the Loan. Except as otherwise specifically stated herein, all such sums shall be secured by the Security Documents, shall bear interest from the date of expenditure as if such sums were advances under the Note, and shall be immediately due and payable by Borrower within five (5) Business Days after written demand therefor.

8.12 Survival of Representations and Warranties. All representations and warranties of Borrower and the Guarantors contained herein or in any other Loan Document shall survive the making of the Loan and execution and delivery of the Note, are material, and Lender has or will rely upon them, notwithstanding any investigation made by or on behalf of Lender. For the purpose of the foregoing, all statements contained in any certificate, agreement, financial statement, or other writing delivered by or on behalf of Borrower or the Guarantors pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby constitute representations and warranties of Borrower or the Guarantors contained herein or in the other Loan Documents, as the case may be.

8.13 Notices. All notices to be given pursuant to this Agreement shall be sufficient if given by personal service, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the

addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**    MS Acquisition Company, LLC
c/o Marlton Square Associates, LLC
3055 Wilshire Boulevard, Suite 1120
Los Angeles, California 90010
Attn. Chris Hammond

**WITH A COPY TO:**    Lefeba J. Gougis, Jr.
Attorney at Law
3055 Wilshire Boulevard, Suite 1120A
Los Angeles, California 90010

and

Lee Marlton, LLC
310 Washington Boulevard, Suite P214
Marina Del Ray, California 90292
Attn. Jeff Lee

**LENDER'S ADDRESS:**    USA Commercial Mortgage Company.
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn: Joe Milanowski

8.14    Further Assurances. Borrower shall, at its sole expense and without expense to Lender, do such further acts and execute and deliver such additional documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest or lien under any Security Document.

8.15    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    The laws of the State of Nevada, without regard to its choice of law provisions, shall govern the construction and enforcement of the Loan Documents.

(b)    **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE**

35

ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 8.13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

8.16    Severability of Provisions. Any provision in any Loan Document that is held to be inoperative, unenforceable or invalid shall be inoperative, unenforceable or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

8.17    Assignment or Sale of Participation by Lender; Advertising. Lender may, at any time, sell, transfer, assign or grant participation in the Loan and in the Loan Documents and Lender may forward to its partners or to such participant and prospective participant all documents and information relating to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable. Lender and USA may also reasonably divulge and advertise the making of the Loan and the amount thereof.

8.18    Headings. Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

36

    8.19   <u>Time of the Essence</u>. Time is of the essence with respect to all duties and obligations of Borrower under any Loan Document.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**     **MS Acquisition Company, LLC**
                        By: Marlton Square Associates, LLC, Managing Member
                        By: Capital Vision Equities, LLC, its Managing Member

                        By: _____
                            Christopher Hammond, Managing Member

**LENDER:**

By: _____         By:_____

## EXHIBIT "A"

## LENDERS

| | NAME | AMOUNT |
|---|---|---|
| 1. | Robert L. Allgeier & Donna L. Allgeier Trustees of the R. L. Allgeier Family Trust dated 10/4/97 | $50,000 |
| 2. | Karen R. Allison | $50,000 |
| 3. | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $100,000 |
| 4. | Lynda Gay Anderson, Trustee of the Lynda Gay Anderson Trust dated 7/7/04 | $50,000 |
| 5. | Rita P. Anderson Trustee For the Benefit of Rita P. Anderson Trust | $100,000 |
| 6. | Albert Daniel Andrade, a married man dealing with his sole and separate property | $50,000 |
| 7. | Lowell V. Andrews, an unmarried man | $50,000 |
| 8. | Larry Apigian & Leona Apigian, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 9. | Joan M. Arends Trustee of the Arends Family Trust | $50,000 |
| 10. | Sigfried Baker transfer on death to Annee Nounna | $50,000 |
| 11. | First Savings Bank Custodian For John Bauer IRA | $100,000 |
| 12. | Harriet Bender Trustee of the Bender Family Trust dtd 7/30/92 Survivors Trust | $50,000 |
| 13. | Philip Benjamin and Maureen Benjamin, husband and wife, as joint tenants with the right of survivorship | $50,000 |
| 14. | RBR Partnership | $50,000 |
| 15. | Robert Bennett & Michele Bennett, Husband and wife as joint tenants with right of survivorship | $60,000 |
| 16. | John A. & April D. Blevins, husband & wife as joint tenants with right of survivorship | $100,000 |
| 17. | Paul Bloch Trustee of the Paul Bloch Living Trust UA 10/29/02 | $250,000 |
| 18. | Patricia Boschetto, an unmarried woman | $50,000 |
| 19. | Robert Eric Brandin and Evelyn Mary Brandin, Trustees of The Brandin Family Trust dated December 1980 as updated. | $50,000 |
| 20. | Suzanne Brehmer, a single woman | $50,000 |
| 21. | Patricia M. Briggs Trustee of the John McGarry and Maxine McGarry 1990 Trust dated August 17, 1990 and amended August 1, 1999 | $50,000 |
| 22. | John S. Broders, an unmarried man | $50,000 |
| 23. | Howard D. Brooks & Doreen C. Brooks Trustees of the Brooks Living Trust dated 6/30/97 | $50,000 |
| 24. | First Savings Bank Custodian For John W. Brouwers MD SEP IRA | $100,000 |
| 25. | John P. Brouwers Trustee of the Brouwers Family Trust dated 1/11/1995 | $50,000 |
| 26. | JWB Investments, Inc. Pension Plan | $100,000 |
| 27. | Zoe Brown Trustee of the Zoe Brown 1989 Family Trust | $50,000 |

| | | |
|---|---|---|
| 28. | Fertitta Enterprises, Inc. | $3,000,000 |
| 29. | J. Laurel Bushman Trustee of the Grant M. & J. Laurel Bushman Family Trust | $75,000 |
| 30. | Keith J. Cale Trustee of the Cale Family Trust dated 11/16/88 | $100,000 |
| 31. | Peter W. Capone & Deidre D. Capone, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 32. | James Cardwell & Reba Cardwell Trustees of the Cardwell Family Trust | $100,000 |
| 33. | Roland Chavez, Administrator of the Roland Chavez & Assoc., Inc. Defined Benefit Pension Plan | $50,000 |
| 34. | Teresa Conger, an unmarried woman | $75,000 |
| 35. | James A. Coy & Margaret G. Coy Trustees of the James A. Coy & Margaret G. Coy Revocable Trust dated 9/27/00 | $50,000 |
| 36. | Shirley Cupp-Doe & Charles A. Jensen Co-Trustees for the Ronald G. Doe Marital Trust DTD 1-6-95 | $300,000 |
| 37. | Wen Dai & Zhimin Chen, husband & wife as joint tenants with the right of survivorship | $50,000 |
| 38. | Andrew Dauscher & Ellen Dauscher, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 39. | Ellen Dauscher in trust for Carleigh Joy, Alexandra Zoe and Julian Grace Dauscher | $100,000 |
| 40. | Martin A. Davis & Virginia Lee Davis Trustees of the Davis Family 2000 Trust | $100,000 |
| 41. | Angela Jane Deglandon, an unmarried woman | $50,000 |
| 42. | DeHart/Hooks, L.P., a Nevada limited partnership | $50,000 |
| 43. | First Savings Bank Custodian For Gary DeMaine IRA | $50,000 |
| 44. | Marion B. Dittman, an unmarried woman | $50,000 |
| 45. | David B. Doutt Sr. and Johnine M. Doutt, husband and wife as joint tenants with the right of survivorship | $50,000 |
| 46. | Dennis Duesing & Cherie Duesing Trustees of the Duesing 1994 Trust | $100,000 |
| 47. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 48. | Mary H. Earp, a married woman dealing with her sole & separate property | $50,000 |
| 49. | Maurice Fink Trustee of the Maurice Fink Trust | $250,000 |
| 50. | Ronald G. Finkel & Karen B. Finkel, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 51. | Fred J. Foxcroft & Roberta Foxcroft Trustees of the Foxcroft Living Trust dated 1/10/02 | $75,000 |
| 52. | Eric B. Freedus and Linda P. Freedus, husband and wife, as joint tenants with the right of survivorship | $50,000 |
| 53. | What's On LP, a Nevada limited partnership | $100,000 |
| 54. | First Savings Bank Custodian For James D. Gillmore IRA | $50,000 |
| 55. | M. W. Gorts & Company | $100,000 |

| # | Name | Amount |
|---|---|---|
| 56. | Nelson R. Greene & Eunice A. Greene Trustees of the Greene Family Trust dated 4/25/91 | $100,000 |
| 57. | Dixie Gross Trustee of the Dixie B. Gross Revocable Trust | $100,000 |
| 58. | Charles T. Hamm and Sandra L. Hamm, Trustees of the Hamm Trust dated 3/17/05 | $50,000 |
| 59. | Dwight W. Harouff & Maryann Harouff, joint tenants with right of survivorship | $125,000 |
| 60. | Gold Plated LLC, Dwight W. Harouff, Manager | $110,000 |
| 61. | Third Party Nevada Services | $250,000 |
| 62. | Suze Harrington, an unmarried woman | $100,000 |
| 63. | Raymond E. Harshman & Margaret E. Harshman Trustees of the Raymond E. & Margaret Elise Harshman Family Trust dated 3/4/87 | $100,000 |
| 64. | Roderick J. Harvey, Sr. and Pauline W. Harvey, Trustees of the Harvey Family Trust, dated 4/13/87 | $50,000 |
| 65. | Nancy K. Haugarth Trustee of the Nancy K. Haugarth Revocable Trust | $65,000 |
| 66. | David R. Hays and Sue Hays, Trustees of the Hays Revocable Trust | $100,000 |
| 67. | Terry Helms Trustee of the Terry Helms Living Trust dated 11/11/94 | $1,000,000 |
| 68. | Virgil P. Hennen & Judith J. Hennen, husband and wife as joint tenants with the right of survivorship | $50,000 |
| 69. | Robert W. Hill, a married man, dealing with his sole & separate property | $100,000 |
| 70. | Gail Hodes Trustee of the Gail Hodes Living Trust dated 9/10/03 | $50,000 |
| 71. | John A. Hoglund & Patricia O. Hoglund, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 72. | Nienke Hohmann, an unmarried woman | $50,000 |
| 73. | Homfeld II, LLC, a Florida limited liability company | $100,000 |
| 74. | Terence C. Honikman & Jane I Honikman, Trustees of the Honikman 1992 Trust dated 12/28/92 | $100,000 |
| 75. | Mila Horak, an unmarried woman | $50,000 |
| 76. | First Savings Bank Custodian For George W. Hubbard Roth IRA | $100,000 |
| 77. | Edwin Isenberg, a married man dealing with his sole and separate property | $50,000 |
| 78. | Evelyn A. Ives Trustee of the Melvin J. Ives & Evelyn A. Ives Bypass Trust dated 1/6/93 | $75,000 |
| 79. | Jon Paul Jensen & Tamara Lee Jensen, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 80. | Delbert T. Johnston, Jr. & Rebecca J. Johnston Trustees of the Johnston Estate Revocable Trust dated 5/17/94 | $50,000 |
| 81. | K. Ken Kaneda & Brigitte Arend-Kaneda Trustees of the Kaneda Living Trust dated 5/30/02 | $50,000 |
| 82. | Dr. Gary Kantor, a married man dealing with his sole and separate property | $500,000 |
| 83. | Gary L. Kantor Trustee for the benefit of Kantor Nephrology Consultants Ltd./Renal Dialysis Center of LV, Ltd. Employee Pension Plan | $500,000 |

| # | Name | Amount |
|---|---|---|
| 84. | Dr. Dana D. Keith, DDS a married man dealing with his sole and separate property | $250,000 |
| 85. | Jerry Kirk and Luci Kirk, Trustees of the Kirk Revocable Trust dated 2/10/84 | $90,000 |
| 86. | Freedom Properties, Inc. | $50,000 |
| 87. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $50,000 |
| 88. | Klaus Kopf & Colette Kopf, husband & wife | $50,000 |
| 89. | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 90. | Richard N. Krupp a married man dealing with his sole & separate property | $250,000 |
| 91. | First Savings Bank Custodian For Harriet Kutzman IRA | $50,000 |
| 92. | Donald H. Kwiatkowski & Sandra L. Kwiatkowski, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 93. | Jor Law, a single man | $50,000 |
| 94. | Stephen R. Lima and Paulette C. Lima, husband and wife, as joint tenants with the right of survivorship | $100,000 |
| 95. | Portal Venture, LLC, a California limited liability company | $100,000 |
| 96. | Leona Lubliner Trustee of the Leona Lubliner Living Trust U/A dated 7/16/96 | $50,000 |
| 97. | Erin E. MacDonald Trustee of the Erin E. MacDonald Revocable Living Trust | $100,000 |
| 98. | MacDonald Center for the Arts and Humanities | $525,000 |
| 99. | Lynn M. Kantor, a married woman dealing with her sole and separate property | $65,000 |
| 100. | Helen C. Makepeace Trustee of the Helen C. Makepeace Survivor's Trust UAD 06/18/97 | $50,000 |
| 101. | Leo G. Mantas, an unmarried man | $150,000 |
| 102. | Jerome Marshall & Rochelle Marshall, husband & wife, as Tenants in Common | $50,000 |
| 103. | Richard P. Marson & Mary I. Marson Trustees of the Marson Family Trust dated 6/9/86 | $50,000 |
| 104. | Jerrold T. Martin, a single man & James T. Martin, a married man dealing with his sole & separate property, as joint tenant with right of survivorship | $50,000 |
| 105. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 106. | Yukiyo Matsumura and Machi Liu, mother and daughter as joint tenants with the right of survivorship | $50,000 |
| 107. | Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000 |
| 108. | Joann L. McQuerry Trustee of the McQuerry Family Partnership | $50,000 |
| 109. | D. Nathan Meehan, a married man dealing with his sole & separate property | $50,000 |
| 110. | Shahnaz I. Memon and Mohammed I. Memon, husband and wife, as joint tenants with right of survivorship | $50,000 |

41

| | | |
|---|---|---|
| 111. | D. G. Menchetti, an unmarried man | $250,000 |
| 112. | R. G. Messersmith & Deaun Messersmith, as joint tenants with right of survivorship | $50,000 |
| 113. | Gary I. Miller & Barbara L. Miller Trustees of the Gary I. & Barbara L. Miller Trust dated 08/13/87 | $50,000 |
| 114. | Mae Mineo Trustee of the Mae Mineo Trust dated 3/23/00 | $50,000 |
| 115. | Matthew Molitch Trustee of the Molitch 1997 Trust | $300,000 |
| 116. | Anne Marie Mueller Trustee of the Anne Marie Mueller Trust | $100,000 |
| 117. | NBNA Unique Properties, LLC, an Washington State limited liability company | $100,000 |
| 118. | Troy A. Nearpass and Brenda L. Nearpass, husband and wife, as joint tenants with the right of survivorship | $50,000 |
| 119. | Oakwood Financial, LLC | $50,000 |
| 120. | First Savings Bank Custodian For Marvin Nicola, IRA | $50,000 |
| 121. | Douglas O'Herron & Nancy O'Herron Trustees of the Douglas & Nancy O'Herron Revocable Trust dated 4/2/02 | $150,000 |
| 122. | Robert L. Ogren Trustee for the benefit of the Robert L. Ogren Trust dated 6/30/92 | $50,000 |
| 123. | John F. Okita & Michiko M. Yamamoto, as joint tenants with right of survivorship | $50,000 |
| 124. | Aaron I. Osherow, Trustee of the Osherow Trust dated 9/11/89 | $50,000 |
| 125. | Paul Oster, an unmarried man | $50,000 |
| 126. | Sierra Health Services, Inc., a Nevada corporation | $1,000,000 |
| 127. | Anthony Pasqualotto & Alicia Pasqualotto Trustees of the Anthony Pasqualotto & Alicia Pasqualotto 1997 Trust | $150,000 |
| 128. | Robert L. Pech & Judith G. Pech Trustees of the Robert L. Pech & Judith G. Pech Family Trust dated 9/5/96 | $100,000 |
| 129. | DCGT FBO Claude M. Penchina Roth IRA, Account #13909452 | $50,000 |
| 130. | Shimon Peress & Hannah Peress Trustees of the Shimon Peress & Hannah K. Peress Trust dated 4/17/01 | $50,000 |
| 131. | Karen Petersen Tyndall Trustee of the Karen Petersen Tyndall Trust dated 3/9/94 | $150,000 |
| 132. | First Savings Bank Custodian For Cesari Piazza IRA | $85,000 |
| 133. | Holly J. Pickerel, a single woman | $100,000 |
| 134. | Ali Pirani and Anisha Pirani, husband and wife, as joint tenants with the right of survivorship | $50,000 |
| 135. | Arthur Polacheck and Glorianne Polacheck, Husband and wife as joint tenants with right of survivorship | $1,000,000 |
| 136. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $200,000 |
| 137. | Portnoff Building | $75,000 |
| 138. | Rains Properties, LP, a Nevada limited partnership | $350,000 |
| 139. | William S. Reeves, a married man | $50,000 |
| 140. | Annemarie Rehberger, Trustee of the Rehberger Family Trust dated 6/17/92 | $50,000 |

| | | |
|---|---|---|
| 141. | Joseph N. Rizzuto & Dorothy Rizzuto Trustees of the Joseph N. Rizzuto Family Trust dated 4/24/89 | $50,000 |
| 142. | Eleanor L. Rogers Trustee of the Eleanor L. Rogers 1991 Revocable Living Trust dated 7/3/91 | $100,000 |
| 143. | Rebecca A. Rogers Trustee of the Rebecca A. Rogers Trust dated 9/18/96 | $50,000 |
| 144. | Toby Lee Rosenblum Trustee of the Toby Lee Rosenblum Trust dated 9/11/95 | $50,000 |
| 145. | David Rosner Trustee of the David Rosner Revocable Trust dated 01/05/2005 | $50,000 |
| 146. | Robert J. Rowley and Kathleen M. Rowley, Trustees of The Robert J. Rowley and Kathleen M. Rowley Living Trust | $60,000 |
| 147. | Mark A. Sauceda, an unmarried man | $100,000 |
| 148. | Douglas Gregg Schulze & Doreen L. Schulze, husband & wife, as joint tenants with right of survivorship | $150,000 |
| 149. | Andrew H. Shahin Trustor & Trustee of The Andrew H. Shahin Trust dated 6/6/94 | $50,000 |
| 150. | Louis H. Shahin Trustor & Trustee of The Louis H. Shahin Trust dated 6/9/94 | $50,000 |
| 151. | Rifqa Shahin Trustor & Trustee of The Rifqa Shahin Trust dated 6/8/94 | $50,000 |
| 152. | Suhayla Shahin, Trustee of The Suhayla Shahin Living Trust dated 7-09-02 | $50,000 |
| 153. | Phillip Eugene Shelton, Trustee of the Restated Shelton Revocable Trust dated 1/19/96 | $50,000 |
| 154. | Billy Shope, Jr. Family, LP, a Nevada limited partnership | $100,000 |
| 155. | Bartolo F. Simari & Sandra K. Simari Trustees of the Simari Revocable Trust dated 4/25/96 | $50,000 |
| 156. | Larry Simon & Lori Simon Trustees of the Simon Family Trust | $500,000 |
| 157. | Sheldon Sinett & Annette Sinett, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 158. | Barbara Sklar Trustee of the Barbara Sklar Revocable Living Trust dated 8/31/01 | $50,000 |
| 159. | Joyce E. Smith Trustee of the Joyce E. Smith Trust dated 11/3/99 | $125,000 |
| 160. | Joseph F. Sparks and Marcia A. Sparks, Trustees of The Joseph F. and Marcia A. Sparks Revocable Family Trust dated 12-11-03 | $50,000 |
| 161. | T. Dwight Sper & Bonnie J. Sper Trustees of the T.D.S. Revocable Family Trust dated 9/29/98 | $100,000 |
| 162. | Justin W. States and Gia M. States, Trustees of the States Living Trust dated 9/29/03 | $50,000 |
| 163. | Naomi F. Stearns Trustee of the Naomi F. Stearns Trust Dated 8/9/1985 | $50,000 |
| 164. | Duane Steward and Diane J. Steward, husband and wife, as joint tenants with the right of survivorship | $100,000 |
| 165. | Sharon D. Tarpinian Trustee of the Sharon D. Tarpinian Revocable Living Trust dated 12/17/2002 | $100,000 |
| 166. | Luther E. Tate, an unmarried man | $50,000 |

| | | |
|---|---|---|
| 167. | Gary N. Taylor Trustee of the Gary N. Taylor PSP | $100,000 |
| 168. | Bryan M. Thomas and Lori M. Thomas, husband and wife, as joint tenants with the right of survivorship | $50,000 |
| 169. | Hillari Tischler payable on death to Howard Tischler | $50,000 |
| 170. | Alneil Lipp, LLC, Neil Tobias, Manager | $200,000 |
| 171. | Deal Investment Club, LLC, Vivian Tobias, Manager | $50,000 |
| 172. | Gary E. Topp, a married man dealing with his sole & separate property | $100,000 |
| 173. | Gary E. Tucker & Linda L. Tucker, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 174. | USA Capital First Trust Deed Fund | $50,000 |
| 175. | Dean Valentino & Nora Valentino, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 176. | Frank Valentino & Stella Valentino, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 177. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dated 5/20/99 | $125,000 |
| 178. | Malden Ventures Ltd. | $100,000 |
| 179. | Marietta Voglis, a married woman dealing with her sole & separate property | $50,000 |
| 180. | Marcia Sweany-Volpe, a married woman dealing with her sole & seperate property transfer on death to Linda St. Pierre | $50,000 |
| 181. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust Under Trust dated 10/4/99 | $60,000 |
| 182. | Bunny C. Vreeland, an unmarried woman | $50,000 |
| 183. | First Savings Bank Custodian For Gary D. Ward IRA | $75,000 |
| 184. | Linda D. Waterhouse, an unmarried woman | $50,000 |
| 185. | Eugene C. Wiehe Trustee of the Eugene C. Wiehe Trust dated 10/31/85 | $75,000 |
| 186. | First Savings Bank Custodian For Dianna Wilkinson, IRA | $55,000 |
| 187. | Richard D. Wood Trustee of the Wood Living Trust dated 10/1/99 | $55,000 |
| 188. | Richard G. Worthen and La Rue S. Worthen Trustees of the Richard G. Worthen Family Trust | $200,000 |
| 189. | Richard S. Worthen and Stephany Worthen, Trustees of the Richard S. Worthen Family Trust dated 5/4/05 | $100,000 |
| 190. | Kem Yee, an unmarried woman, and Emmelene Yee, an unmarried woman, as joint tenants with the right of survivorship | $50,000 |
| 191. | Spectrum Capital, LLC, a California limited liability company | $50,000 |
| 192. | Zawacki, a California LLC | $70,000 |
| 193. | Evo Zepponi and Billie Zepponi, Trustees of The Evo E. Zepponi and Billie D. Zepponi Family Trust Under Agreement Dated 2/9/1993 | $100,000 |
| | TOTAL | $23,000,000 |

## EXHIBIT "B"

## APPROVED BUDGETS

| ITEM | AMOUNT |
|---|---|
| Land Acquisition | $24,980,000 |
| Relocation of Tenants | $ 500,000 |
| Interest Reserve | $ 1,720,000 |
| Soft Costs | $ 1,400,000 |
| Closing Costs | $ 50,000 |
| Partners Realty Capital | $ 300,000 |
| Loan Fees | $ 1,050,000 |
| TOTAL: | $30,000,000 |

45