Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date: June 5, 2006<br>Time: 9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **THIRD SUPPLEMENTAL DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF DEBTORS' MOTIONS (AFFECTS ALL DEBTORS)** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

1

I Thomas J. Allison, hereby declare, verify and state as follows:

1. I make this Third Supplemental Declaration as additional support for various motions of USA Commercial Mortgage Company ("USACM") and its four affiliates who filed bankruptcy petitions in this Court on April 13, 2006 (collectively, the "Debtors"), including the Application for an Order Authorizing the Employment of Hilco Real Estate LLC/Hilco Real Estate Appraisal, LLC as Debtors' Real Estate Appraiser (the "Hilco Application"). My Third Supplemental Declaration is based upon personal knowledge and the facts set forth herein.

2. I directed the Mesirow team, as well as the Debtors' attorneys, to review the loan files for each of the 115 loans at issue in this case (the "Serviced Loans"). That review indicates, among other things, the following:

   a. Each of the loans is secured by a trust deed on commercial real estate, except for two loans that may have been made on an unsecured basis and one loan for which the security interest may not have been properly perfected. One of approximately 99 discrete commercial real estate projects/developments serves as collateral for each of the Serviced Loans that is secured (in some instances more than one loan is secured by the same real estate).

   b. As of May 26, 2006, it appears that 50 of the Serviced Loans are non-performing (i.e. they were delinquent in the payment of interest or otherwise could be considered non-performing), 53 were performing, 9 had been repaid and the status of 3 had not been determined due to bankruptcy, foreclosures, change of ownership, etc. As a result, the non-performing loans now represent approximately 43% of the Serviced Loans.

   c. However, the interest reserves that are currently being used to keep the interest payments current on several of the performing loans (e.g., the Bundy project/development) will run out in the next few months thereby turning more of the Serviced Loans from performing to non-performing.

   d. Of the 99 commercial real estate projects/developments that serve as

2

collateral for the Serviced Loans, the loan files do not contain appraisals for approximately 23 of those projects/developments, and approximately 32 of the appraisals were obtained prior to the year 2005.

e. The appraisals were provided by a number of different entities. Therefore, it is uncertain if the appraisals are based on common valuation methods or common criteria.

f. Former principals of the Debtors are investors in 42 of the Serviced Loans, and of that number, 16 are non-performing loans as of May 26, 2006.

g. Many of the projects/developments are in various stages of development and many of them are not yet completed.

3. I have determined in my best business judgment that it is necessary and in the best interest of the Debtors' estates to employ a real estate appraiser who can provide appraisal and consulting services. The reasons supporting that determination, include, but are not necessarily limited to the following: (a) to obtain sufficient information to best determine how to proceed in connection with each Serviced Loan, i.e., should the collateral be foreclosed, should a loan extension be considered, is there sufficient equity in the property such that another lender may want to re-finance the loan, etc.; (b) so that foreclosure proceedings can begin on certain projects/developments; (c) so that the estate will have appraisals on all of the properties that are current and are based on common valuation methods; (d) to assist in the development of a plan of reorganization and to provide the requisite information that will be required in the accompanying disclosure statement; (e) so that a more complete response can be provided to requests for information from parties in interest about the properties/developments and the status of the Serviced Loans; (f) to facilitate negotiations with borrowers, and in particular those with delinquent loans or loans that may become delinquent in the near future, (g) to ascertain the validity and accuracy of appraisals obtained on properties in which the former principals of the Debtors are investors, and (h) to obtain appraisals on properties securing Serviced Loans for which there are currently no appraisals in the loan files.

4. Upon determining that real estate appraisal and consulting services were needed, I

3

contacted multiple real estate appraisal companies and interviewed three of the companies who I believed were the best qualified, one of which was Hilco Real Estate LLC/Hilco Real Estate Appraisal, LLC ("Hilco").

5. Following those interviews, I decided it would be in the best interest of the Debtors' estates to retain Hilco to provide the appraisal and consulting serviced needed because of their experience and qualifications, and because they offered to provide the services at the most economical price.

6. I was also able to obtain a better economic deal for the Debtors by negotiating for a base price that covered comprehensive appraisal services, as opposed to contracting for appraisals on a project-by-project basis. A copy of the Real Estate Consulting and Advisory Services Agreement between the Debtors and Hilco is attached to the Hilco Application as Exhibit B (the "Hilco Agreement"). It is anticipated that the Hilco Agreement will be amended to delete the disposition services that are currently referenced therein.

7. The Hilco Agreement provides, among other things, that Hilco will be paid a base fee of $300,000 which will include at least a desk-top valuation review of all the real estate projects/developments serving as collateral for the Serviced Loans and a full written valuation report on up to 40 of those projects/developments. An additional fee of $5,000 has been negotiated for any full written valuation beyond the 40 already contemplated. The Hilco Agreement also provides, to the extent it is determined to be necessary, for the payment of expert, witness, consulting and advisory fees at various hourly rates.

8. I am aware of the concerns expressed by parties in interest with respect to the appraisal and consulting fees and will make every effort to minimize or exclude those costs where possible. In that regard, in determining whether a project/development merits a full written valuation I will consider the following factors: (a) the current status of the Serviced Loan, i.e. whether it is performing or non-performing; (b) in the case of Serviced Loan that is performing, whether it is likely to become a non-performing loan in the near future; (c) whether an appraisal is contained in the loan file; (d) the date the appraisal was obtained; (e) the apparent reliability of the appraisal, (f) whether any significant development has occurred on the project/development since the appraisal was obtained, (g) whether former principals of the Debtors have an interest in the

Serviced Loan, (h) whether the appraised collateral secures several of the Serviced Loans, and (i) whether the value of the collateral impacts or is impacted by other pieces of collateral.

Executed this 2nd day of June, 2006.

_/s/ Thomas J. Allison_
Thomas J. Allison

877607 01

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122