Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
    and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON JUNE 2, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                     Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE LOAN SERVICING AGREEMENT FOR DIRECT LOAN TO BOISE/GOWAN, LLC(AFFECTS USA COMMERCIAL MORTGAGE)**<br><br>Date:  June 15, 2006<br>Time: 9:30 a.m. |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                     Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                     Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                     Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                     Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

USA Commercial Mortgage Company ("USACM"), by and through its undersigned counsel, hereby responds in opposition to the Motion for Relief From the Automatic Stay to Terminate Loan Servicing Agreement for Direct Loan to Boise/Gowan, LLC (the "Motion for Relief") (docket no. 292, filed May 18, 2006) filed by Scott K. Canepa ("Canepa").

The Motion for Relief should be denied because Canepa has not established "cause" under 11 U.S.C. § 362(d) to obtain relief from the stay. Moreover, the specific requirements set forth in the Loan Servicing Agreement to remove USACM as loan servicer have not been met. This Opposition is supported by the Declarations of Thomas J. Allison on file in this case, the arguments set forth below, and other relevant items of record before this Court in the Debtors' bankruptcy cases.

**STATEMENT OF FACTS**

1. The jointly administered Debtors, including USACM, filed voluntary petitions for relief on April 13, 2006 (the "Petition Date").

2. Prior to the Petition Date, USACM was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. USACM has not originated or brokered any new loans since the Petition Date, and will not do so without Court approval.

3. On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial Management ("Mesirow") became the President of USACM and the Manager of the four remaining Debtors who are limited liability companies. In an order entered April 19, 2006, this Court authorized the Debtors' employment of Allison as the Chief Restructuring Officer for an interim period until July 27, 2006.

4. Since the Petition Date, the Debtors, under Allison, have worked hard to begin analyzing and unraveling the problems the Debtors face which have arisen as a result of past business practices and irregularities in servicing the loans. Specifically, Allison and Mesirow are thoroughly investigating and evaluating the Debtors' files and records to determine, among other things, what portion of the funds held by USACM represent unpaid servicing and loan origination fees, which investors have been overpaid as a result of USACM's pre-petition practice of making

1  regular monthly interest payments regardless of the status of the underlying loan, and which
2  investors have been underpaid, including investors to whom principal repayments were not
3  remitted when collateral was released pre-petition. Further complicating this investigative effort is
4  that it appears that more than 60% of the Debtors' investors were invested in more than one loan.
5  Thus, any individual investor may have been overpaid on a non-performing loan, on the one hand,
6  but under-paid or properly paid on a performing loan. Accordingly, the Debtors are attempting to
7  determine the individual status of each investor in each loan and the net amounts due to or from
8  investors on all loans in the portfolio.

9      5.    As of the petition date, USACM was the loan servicer for approximately 115
10 commercial loans having a combined outstanding balance of approximately $962 million (the
11 "Serviced Loans"). Nearly all of the Serviced Loans are secured by various real estate projects or
12 developments. The loan documents and other records of USACM indicate that there are
13 approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" for one
14 or more of the Serviced Loans.

15     6.    Typically, there are dozens or even hundreds of Direct Lenders on a particular loan,
16 with each lender having only a small fractionalized share. Among the Direct Lenders are two of
17 the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First
18 Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds") and it appears that the Funds
19 had an interest in many of the Serviced Loans. Diversified has approximately 1,900 LLC
20 members and Capital First has approximately 1,300 members (collectively, the "Fund Members").
21 There is substantial overlap among the Direct Lenders and the Fund Members.

22     7.    At the time that the investors contracted to participate as lenders of fractional
23 interests in the Serviced Loans, they also entered into an individual loan servicing agreement (the
24 "Loan Servicing Agreement") whereby they authorized and empowered USACM, on behalf of
25 each investor, to obtain the necessary documents to effectuate and secure the Serviced Loans, as
26 well as to service them.

27     8.    Attached as Exhibit A to the Declaration of Thomas J. Allison (which is attached as
28 Exhibit E to the Motion for Relief) is a copy of a Loan Servicing Agreement that was adopted by

- 3 -

1  Canepa as being representative of the Loan Servicing Agreement he entered into with USACM,
2  except for the 3% servicing fee set forth therein.[1]

3      9.      As of the Petition Date, a significant portion of the Serviced Loans were delinquent
4  in the payment of interest or otherwise could be considered non-performing (the "Nonperforming
5  Loans"). Despite the fact that many of the borrowers were not making monthly payments on their
6  loans as required by the relevant loan documents, USACM continued to pay regular monthly
7  interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly
8  payments to the Fund Members) whether or not USACM had actually collected payments from
9  the borrowers. As a result, the Debtors may have claims against each Direct Lender and Fund
10  Member who received overpayments from USACM or the Funds.

11      10.      No interest payments have been made to the Direct Lenders or the Fund Members
12  since the Petition Date. Instead, USACM is holding payments that have been collected and
13  continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds)
14  in a new, post-petition Debtor-in-Possession DIP Collection Account (the "DIP Collection
15  Account"), except for the servicing fees and other fees USACM is contractually entitled to collect
16  and that have been approved by the Court pursuant to the Debtors' revised cash budget. No funds
17  from any other sources have been commingled with or placed in the DIP Collection Account since
18  the Petition Date.

19      11.      The Debtors maintain operating accounts separate from the DIP Collection
20  Account for use in facilitating their business operations and administrative duties.

21      12.      On May 24, 2006, the Court entered an order approving the Debtors' motion
22  requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors
23  pursuant to a revised cash budget through July 16, 2006. This initial time period of cash use was
24  requested by the Debtors in order to enable USACM, which has the right and obligation under its
25  Loan Servicing Agreements with the Direct Lenders and under Nevada state law, to perform

---

[1] Canepa has not been able to locate a copy of the Loan Servicing Agreement that he executed in connection with the Boise/Gowan loan in his files.

- 4 -

1  appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the
2  extent and effect of the overpayments, underpayments, and collateral releases.

3     13.   On May 8, 2006, the Debtors filed a Motion to Temporarily Hold Funds Pending a
4  Determination Of The Proper Recipients and Memorandum of Points and Authorities (the
5  "Motion to Hold Funds") (docket no. 173). The Motion to Hold Funds requests an Order from the
6  Court permitting USACM to temporarily hold the funds USACM has collected and continues to
7  collect from borrowers in its capacity as the loan servicer pending the completion of Mesirow's
8  investigation, analysis and report to the Court recommending the proper disbursement of the
9  funds, and pending the Court's order on or after July 25, 2006 relating to the distribution of the
10 funds to the proper recipients.

11    14.   On May 18, 2006, Canepa filed the Motion for Relief seeking relief from the
12 automatic stay, pursuant to 11 U.S.C. § 362(d), Fed. R. Bankr. P. 9014 and 4001(a) to permit him
13 to change USACM as the loan servicing agent and terminate his Loan Servicing Agreement with
14 respect to the Boise/Gowan loan.

15    15.   Canepa is one of 17 different parties that each hold a beneficial interest in the
16 Boise/Gowan loan, although Canepa asserts that the amount he invested in the Boise/Gowan loan
17 represents 58% of the total dollar amount borrowed by Boise/Gowan.

18    16.   The Boise/Gowan loan is currently a performing loan, and Canepa acknowledges
19 that the only two months in which he has not received a payment is in April and May of 2006.

20    17.   Canepa apparently has begun contacting potential loan servicers and has indicated
21 that prior to the hearing on the Motion for Relief he "will serve and file a supplemental declaration
22 that will identify the new loan servicing agent and provide relevant contact information."

**MEMORANDUM OF LAW**

**I.   CANEPA HAS NOT ESTABLISHED "CAUSE" UNDER 11 U.S.C. § 362(D) FOR RELIEF FROM THE STAY TO BE GRANTED**

Canepa's Motion for Relief cannot be granted because he has not established sufficient "cause" under 11 U.S.C. § 362(d)(1). That sub-section provides:

> (d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

The Bankruptcy Code does not define "cause," and therefore, whether relief from the stay should be granted is subject to the court's discretion and is determined on a case by case basis.  See In re Beguelin, 220 B.R. 94, 97-98 (9th Cir. BAP (Nev.) 1998).

In this case, Canepa contends that "cause" exists as a result of USACM's mismanagement under the Loan Servicing Agreement.  Specifically, Canepa points to USACM's purported breaches of its contractual obligations under the Loan Servicing Agreement, as well as its failure to make Canepa's March and April 2006 payments as the grounds for cause.  See Motion for Relief at p. 5.  While USACM's new management has acknowledged that certain irregularities occurred under the watch of the prior management, the extent of those irregularities and their full impact is not known at this time.  Indeed, under Allison's direction, Mesirow is now in the process of thoroughly investigating and evaluating the Debtors' files and records to determine, among other things, the status of each loan, the value of the collateral securing the loan, the amount of unpaid servicing and loan origination fees, and which investors have been overpaid as a result of USACM's pre-petition practice of making regular monthly interest payments regardless of the status of the underlying loan, and which investors have been underpaid.  Because the full and complete facts are not yet known, it is premature to determine at this time whether sufficient "cause" exists under § 362(d)(1) to grant the Motion for Relief, nor at this time has Canepa carried his burden of proof that such cause exists.

Furthermore, even assuming that there was significant mismanagement on the part of the Debtors former management, courts have found that pre-petition mismanagement does not necessary constitute sufficient "cause" for relief from the automatic stay to be granted under § 362(d).  Indeed, if that were the prevailing rule, then arguably "cause" to grant relief from the automatic stay would exist in virtually every bankruptcy case.  For example, in Matter of Holly's, Inc., 140 B.R. 643 (Bankr. W.D.Mich. 1992), the court found that the pre-petition mismanagement

in that case should not be considered sufficient "cause" to grant relief from the automatic stay under § 362(d)(1) even where the mismanagement included such things as: (1) failure to pay pre-petition real and personal property taxes; (2) failure to pay withholding and payroll taxes; (3) failure to pay trade creditors; (4) failure to establish a separate account for the Crowne Plaza as required by the management agreement; (5) commingling the funds of the partnership and another entity; and (6) the general disregard for certain requirements of the management agreement and the loan documents. Id. at 688-89. In reaching this conclusion, the court was largely persuaded by the fact that the current management was not involved in those activities and was making on-going efforts towards correcting the past mismanagement. Id. at 690. See also In re Forest Ridge, II. Ltd. Parnership, 116 B.R. 937, 946 (Bankr. W.D.N.C. 1990)(movant did not carry burden on its allegation of mismanagement sufficient to constitute cause under § 362(d)).

Likewise, in this case, the alleged breaches under the Loan Servicing Agreement on which Canepa mainly relies to support his Motion for Relief occurred pre-petition and were undertaken by management that is no longer in place. As of the Petition Date, Thomas Allison was appointed as the chief restructuring officer of USACM and the other Debtors, and since that time he has undertaken significant measures to rectify the organizational defects that created the problems that led to the Debtors' bankruptcy filings.

Furthermore, Canepa implies that since he did not receive his April and May 2006 payments from USACM, this alone constitutes sufficient cause under § 362. However, presuming that the April and May payments were made on the Boise/Gowan loan by the borrower to USACM as servicer, these payments have not been lost or dissipated, they are merely being held by the Debtors for a short period of time while the Debtors reconcile accounts and determine the proper parties to receive payment from the funds it is holding and the proper amounts to forward to each party. Specifically, the Debtors are holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders in the new DIP Collection Account. No funds from any other sources have been commingled with or placed in the DIP Collection Account since the petition date. The Debtors are also maintaining operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative

1  duties. Allison and Mesirow are also keeping proper accounting records and they are contacting
2  borrowers whose loans are delinquent with the result being that millions of dollars have been
3  brought into the estate post-petition from non-performing loans. Accordingly, because the source
4  of the alleged mismanagement is no longer involved in the Debtors' management and the current
5  management is operating effectively and responsibly, "cause" does not exist to grant relief from
6  the stay.

7  At this early stage, the Motion for Relief also undermines one of the main purposes of the
8  automatic stay which is to permit debtors a limited period of time to try and sort out their business
9  affairs, propose a plan of reorganization to payoff creditors, and undertake efforts to see if the
10 business can be saved. See In re Sherman, 441 F.3d 794, 814 (9th Cir. 2006) ("Indeed, the
11 legislative history of the Bankruptcy Code makes clear that one of the purposes of the automatic
12 stay is to give a debtor a 'breathing spell from his creditors' during which the debtor can 'attempt a
13 repayment . . . plan, or simply . . . be relieved of the financial pressures that drove him into
14 bankruptcy'"). The Debtors, under their new management, are working diligently to analyze the
15 loans at issue, and to get a report filed with the Court by early July which will recommend the
16 proper distribution of the funds being collected. There is no question but that granting the Motion
17 for Relief, and similar types of motions, will have a significant negative effect on those efforts.
18 Furthermore, the legislative history of the Bankruptcy Code makes it clear that one of the other
19 purposes of the automatic stay is to protect creditors by providing for "an orderly liquidation
20 procedure under which all creditors are treated equally" rather than "a race of diligence by
21 creditors for the debtor's assets." See In re Sherman, 441 F.3d at 814, citing, H.R. Rep. No.
22 950595 at 340 (1977), as reprinted in 1978 U.S.C.C.A. 5963, 6296-97. In this case, the Motion for
23 Relief has the potential to significantly harm other investors because it will cut off a portion of the
24 revenue stream (i.e., servicing fees) which is funding the work being undertaken by current
25 management, and it may compromise the Debtors' ability to collect amounts that have been
26 overpaid to certain investors as a result of USACM's pre-petition practice of making regular
27 monthly interest payments to the investors regardless of the status of the underlying loan.
28

There is no question that if the Motion for Relief is granted, Canepa will give notice under the Loan Servicing Agreement that he is removing USACM as the servicing agent for the Boise/Gowan loan even though there may be Direct Lenders (including possibly Canepa) who still owe money to the estate, thereby harming its creditors. In addition, Canepa may request the removal of USACM as servicing agent for any non-performing loans in which he holds an interest in at attempt to avoid paying back any over-payments he may have received on those non-performing loans. Given the current situation, the only approach that will benefit all investors fairly is to not grant the relief being requested by Canepa, and instead permit the Debtors to collect and hold the funds from the loans in the DIP Collection Account until the new management of the Debtors has sorted out the full underlying facts and made its report to the Court in early July.

## II. THE MOTION FOR RELIEF SHOULD BE DENIED BECAUSE THE SPECIFIC REQUIREMENTS SET FORTH IN THE LOAN SERVICING AGREEMENT TO REMOVE USACM AS SERVICER HAVE NOT BEEN ESTABLISHED.

Canepa seeks relief from the automatic stay to permit him to remove USACM as the servicer of the Boise/Gowan loan in which Canepa holds a fractional interest. In the Motion for Relief, Canepa relies on paragraphs 3 and 8 of the Loan Servicing Agreement as the contractual authority which allegedly permits him to take the action requested. However, a review of those provisions, along with other pertinent portions of the Loan Servicing Agreement, indicate that the Motion for Relief should be denied because the specific requirements set forth in the Loan Servicing Agreement which would allow the removal of USACM as the loan servicer have not been established by the Direct Lenders.

Paragraph 8 of the Loan Servicing Agreement states as follows:

> 8. <u>Termination</u>. Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

However, when the practical application of the Direct Lenders' suggested interpretation of paragraph 8 is considered, and particularly when it is analyzed in context with some of the other provisions of the Loan Servicing Agreement, it becomes apparent that paragraph 8 does not govern the removal of USACM as the loan servicer of one of the Serviced Loans. For instance, if

- 9 -

paragraph 8 could be used by any Direct Lender to remove USACM as the loan servicer of a Serviced Loan (as suggested in the Motion for Relief), the practical effect of such an interpretation would be that either multiple servicers would be servicing the same loan, or no entity would be servicing a fractionalized interest in the loan. Such an interpretation of paragraph 8 is not only impractical but Nevada law is clear that the interpretation of contract provisions must be fair and reasonable, as opposed to harsh and unreasonable. See Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003).

Furthermore, paragraph 3 of the Loan Servicing Agreement specifically identifies the circumstances in which USACM can be removed as the loan servicer of one of the Serviced Loans. Therefore, even if the language of paragraph 8 could be interpreted as also covering the removal of USACM as the loan servicer, the broader language of paragraph 8 would be trumped by the more specific language of paragraph 3. Indeed, it is also well settled that where a contract contains two conflicting provisions, the more specific provision will govern. See Shelton v. Shelton, 78 P.3d at 510; Alamo Rent-A-Car, Inc. v. State Farm Mut. Auto. Ins., Co., 953 P.2d 1074 (Nev. 1998)(more specific language contained in one insurance policy prevailed over the other insurance policy). Paragraph 3 of the Loan Servicing Agreement, which contains the more specific provision governing the removal of USACM as the loan servicer, states as follows:

> 3. **Rights of Lender if USA Fails to Act**. Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then [Direct] Lender may, **with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan**, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:
>
> (a) **the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan**; and
> (b) the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

(Emphasis added).

However, the plain language of this provision does not support the Motion for Relief because the main requirement set forth therein, i.e., that fifty-one percent (51%) or more of all of

the <u>holders</u> of the beneficial interest of record have approved the removal, has not been established. Canepa is only one of 17 different parties that hold a beneficial interest in the Boise/Gowan loan. Even if he did contribute 58% of the total loan amount he still has failed to establish that 51% or more of the 17 holders (i.e. at least 9 of the 17 holders) of the beneficial interest in the Boise/Gowan loan have approved the removal of USACM as the loan servicer. Accordingly, Canepa has not carried his burden of proof and established sufficient cause to grant the Motion for Relief. Accordingly, it must be denied.

**CONCLUSION**

Based on the foregoing, USACM respectfully requests that the Court deny Canepa's Motion for Relief.

Respectfully submitted this 2nd day of June, 2006.

*/s/     LENARD E. SCHWARTZER*
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

877769.01

- 11 -