ELECTRONICALLY FILED
JUNE 7, 2006

1  STUTMAN, TREISTER & GLATT, P.C.
   FRANK A. MEROLA (CA Bar No. 136934)
2  EVE H. KARASIK (CA Bar No. 155356),
   CHRISTINE M. PAJAK (CA Bar No. 217173)
3  1901 Avenue of the Stars, 12th Floor
   Los Angeles, California 90067
4  Telephone: (310) 228-5600
   Facsimile: (310) 228-5788
5  E-mail:      fmerola@stutman.com
                ekarasik@stutman.com
6                cpajak@stutman.com
   Counsel for the Official Committee of Equity Security
7  Holders of USA Capital First Trust Deed Fund, LLC

8  GORDON & SILVER, LTD
   GERALD M. GORDON, ESQ. (NV Bar No. 229)
9  GREGORY E. GARMAN, ESQ.
   (NV Bar No. 6654)
10 3960 Howard Hughes Pkway, 9th Floor
   Las Vegas, NV 89109
11 Telephone: (702) 796-5555
   Facsimile: (702) 369-2666
12 E-mail:    gmg@gordonsilver.com
              geg@gordonsilver.com
13 Counsel for Official Committee of Holders of Executory
   Contract Rights of USA Commercial Mortgage
14 Company

LEWIS AND ROCA, LLP
ROB CHARLES, ESQ. (NV Bar No. 6593)
SUSAN M. FREEMAN, ESQ.
(AZ Bar No. 004199)
3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89109
Facsimile (702) 949-8321
Telephone (702) 949-8320
E-mail:    rcharles@lrlaw.com
           sfreeman@lrlaw.com
[Proposed] Counsel for Official Committee of
Unsecured Creditors of USA Commercial Mortgage
Company

ORRICK, HERRINGTON & SUTCLIFFE LLP
MARC A. LEVINSON, ESQ. (CA Bar No. 57613)
LYNN TRINKA ERNCE, ESQ. (CA Bar No.
179212)
400 Capitol Mall, Suite 3000
Sacramento, California 95814
Telephone: (916) 447-9200
Facsimile: (916) 329-4900
E-mail:    malevinson@orrick.com
           lernce@orrick.com

[Proposed] Counsel for Official Committee of Equity
Security Holders of USA Capital Diversified Trust Deed
Fund, LLC

16  **JOINT MOTION OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA
    CAPITAL FIRST TRUST DEED FUND, LLC, THE OFFICIAL COMMITTEE OF HOLDERS
17  OF EXECUTORY CONTRACT RIGHTS THROUGH USA COMMERCIAL MORTGAGE
    COMPANY, THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA
18  CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, AND THE OFFICIAL UNSECURED
    CREDITORS' COMMITTEE FOR USA COMMERCIAL MORTGAGE COMPANY
19  PURSUANT TO 11 U.S.C. §§ 105(a), 107(b), 1102(b)(3)(A) AND 1103(c), FOR NUNC PRO TUNC
    ORDER CLARIFYING REQUIREMENT TO PROVIDE ACCESS TO INFORMATION
20                              (AFFECTS ALL DEBTORS)**

391649v6

1

2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

3

4

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>      Debtor. | ) BK-S-06-10725-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>      Debtor. | ) BK-S-06-10726-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>      Debtor. | ) BK-S-06-10727-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>      Debtor. | ) BK-S-06-10728-LBR<br>) Chapter 11<br>) |
| In re:<br>USA SECURITIES, LLC,<br>      Debtor. | ) BK-S-06-10729-LBR<br>) Chapter 11<br>) |
| Affects<br>☒ All Debtors<br>☐ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☐ USA First Trust Deed Fund, LLC | )<br>)<br>)<br>)<br>) Date:  June 15, 2006<br>) Time:  9:30 a.m.<br>) Place:  Courtroom #2<br>)<br>)<br>)<br>) |

5

6

7

8

9

10

11

12

13

14

15

16

**JOINT MOTION OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC, THE OFFICIAL COMMITTEE OF HOLDERS OF EXECUTORY CONTRACT RIGHTS THROUGH USA COMMERCIAL MORTGAGE COMPANY, THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, AND THE OFFICIAL UNSECURED CREDITORS' COMMITTEE FOR USA COMMERCIAL MORTGAGE COMPANY PURSUANT TO 11 U.S.C. §§ 105(a), 107(b), 1102(b)(3)(A) AND 1103(c), FOR NUNC PRO TUNC ORDER CLARIFYING REQUIREMENT TO PROVIDE ACCESS TO INFORMATION (AFFECTS ALL DEBTORS)**

17

18

19

20

21

22

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

23

     The Official Committee of Equity Security Holders of USA Capital First Trust

24

Deed Fund, LLC (the "First Trust Deed Committee"), the Official Committee of Holders of

25

Executory Contract Rights through USA Commercial Mortgage Company (the "Direct Lender

26

Committee"); the Official Committee of Equity Security Holders of USA Capital Diversified

27

Trust Deed Fund, LLC (the "Diversified Trust Deed Committee"); and the Official Unsecured

28

Creditors' Committee for USA Commercial Mortgage Company (the "Unsecured Creditors'

1  Committee" and together with the First Trust Deed Committee, the Direct Lender Committee,

2  and the Diversified Trust Deed Committee, the "Committees") appointed in the above-captioned

3  bankruptcy cases (the "Chapter 11 Cases"), hereby jointly move this Court (the "Joint Motion")

4  for an order, pursuant to sections 105(a), 107(b), 1102(b)(3)(A) and 1103(c) of title 11 of the

5  United States Code (the "Bankruptcy Code"), (i) clarifying and providing that the Committees

6  are not authorized or required, pursuant to newly enacted section 1102(b)(3)(A) of the

7  Bankruptcy Code, to provide access to confidential and other non-public proprietary information,

8  or to privileged information, to their respective constituencies; and (ii) establishing certain

9  procedures by which the Committees may provide information to and solicit and receive

10 comments from their respective constituencies and thereby satisfy their duty under section

11 1102(b)(3) of the Bankruptcy Code.  In support of the Joint Motion, the Committees respectfully

12 represent as follows:

### I.    BACKGROUND

14        1.     On April 13, 2005 (the "Petition Date"), USA Commercial Mortgage

15 Company ("USA Mortgage"), USA Securities, LLC ("USA Securities"), USA Capital Realty

16 Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("USA

17 Diversified"), and USA Capital First Trust Deed Fund, LLC ("USA First" and, collectively

18 with USA Mortgage, USA Securities, USA Realty, and USA Diversified, the "Debtors") filed

19 voluntary petitions for relief under chapter 11 the Bankruptcy Code.

20        2.     Thereafter, on May 9, 2006, this Court entered its <u>Order Regarding Joint</u>

21 <u>Administration Without Substantive Consolidation</u> [docket no. 184] whereby the Court

22 ordered that the foregoing Chapter 11 Cases be jointly administered under the name of USA

23 Commercial Mortgage Company, bankruptcy case number BK-S-06-10725-LBR.

24        3.     No trustee or examiner has been appointed in the Chapter 11 Cases.

25 Rather, the Debtors continue to operate their businesses as debtors in possession pursuant to

26 sections 1107 and 1108 of the Bankruptcy Code.

27        4.     On May 10, 2006, the Office of the United States Trustee (the

28 "U.S. Trustee") appointed four separate committees in these Chapter 11 Cases: (i) the First

391649v6                                          3

1   Trust Deed Committee; (ii) the Diversified Trust Deed Committee; (iii) the Direct Lender
2   Committee; and (iv) the Unsecured Creditors' Committee.

3       5.    The First Trust Deed Committee represents the interests of those persons
4   who invested in USA First (the "First Investors"), and the Diversified Trust Committee
5   represents the interests of those persons who invested in USA Diversified (the "Diversified
6   Investors").

7       6.    The Direct Lender Committee represents approximately three thousand
8   six hundred (3,600) parties-in-interest (the "Direct Lenders") that have individually lent
9   monies directly to various borrowers, for which USA Mortgage is the loan servicer.

10      7.    Finally, the Unsecured Creditors' Committee represents the interests of
11  those individuals who assert general unsecured claims against USA Mortgage.

12      8.    At the hearing held on June 5, 2006, both the First Trust Deed
13  Committee and the Direct Lender Committee indicated that each committee would be filing
14  motions with the Court to address how each respective committee planned to communicate
15  with its own constituency.  Expressing concern that the Committees work together in an effort
16  to save costs to the Debtors' estates, the Court suggested that the two committees develop a
17  joint motion.

18      9.    Following the hearing, the Diversified Trust Deed Committee and the
19  Unsecured Creditors' Committee also expressed interest in participating in a joint motion.
20  Thereafter, the four Committees consensually worked together to prepare this Joint Motion.

21                      **II.    JURISDICTION**

22      10.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157
23  and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this
24  Court pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicate for the relief sought
25  herein are sections 105(a), 107(b), 1102 and 1103(a) of the Bankruptcy Code.

26                  **III.    RELIEF REQUESTED**

27      11.   Pursuant to section 1103(c), the Committees are authorized, among other
28  things, to consult with the Debtors, investigate the Debtors, participate in the formulation of a

plan and perform such other services as are in the interests of their respective constituencies.  In addition, as part of the Committees' duties, pursuant to section 1102(b)(3)(A), the Committees are required to provide access to information to and solicit and receive comments from their respective constituencies.

12.     By this Joint Motion, the Committees jointly seek entry of an order: (i) confirming that section 1102(b)(3)(A) of the Bankruptcy Code does not authorize or require the Committees to provide access to Confidential Information (as defined below) to their respective constituencies; (ii) clarifying that the Committees are not authorized or required to provide access to Privileged Information (as defined below) to their respective constituencies; and (iii) establishing certain procedures by which the Committees may provide information to and solicit and receive comments from their respective constituencies and thereby satisfy their duties under section 1102(b)(3)(A) and (B) of the Bankruptcy Code.  The relief requested herein will help ensure that confidential, privileged, proprietary and/or material non-public information will not be disseminated to the detriment of the Debtors' estates and will aid the Committees in performing their statutory duties while ensuring that the Committees comply with section 1102(b)(3) of the Bankruptcy Code.  In filing this motion jointly, the Committees aim to avoid redundancy and to establish uniform procedures, thereby minimizing expense to the Debtors' estates and making efficient use of judicial resources.

## IV.     BASIS FOR RELIEF

### A.     Section 1102(b)(3) of the Bankruptcy Code Requires Undefined "Access to Information."

13.     On April 20, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress enacted new section 1102(b)(3) of the Bankruptcy Code.  That section states:

A committee appointed under [§ 1102(a)] shall –

(A) **provide access to information** for creditors who –

(i) hold claims of the kind represented by that committee; and

(ii) are not appointed to the committee;

(B) **solicit and receive comments** from the creditors described in

subparagraph (A); and

        (C) be subject to a court order that compels any additional report or

disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3) (emphasis added).

        14.    New section 1102(b)(3)(A) does not indicate how a committee appointed

under section 1102(a) of the Bankruptcy Code should provide "access to information", and, more

importantly, does not indicate the nature, scope, or extent of the "information" that a committee

must provide to those its constituency.  The legislative history of section 1102(b)(3) does not

provide any guidance on the application of this new provision.  <u>See</u> H.R. Rep. No. 109-31, 109th

Cong., 1st Sess. 87 (2005).

        15.    The lack of specificity in new section 1102(b)(3)(A) creates significant

issues for debtors and committees appointed under 1102(a) of the Bankruptcy Code.  Typically, a

debtor and other parties in interest will share various confidential and other non-public

proprietary information with an official committee (the "Confidential Information")[1] to facilitate

---

[1] For purposes of this Motion, the term "Confidential Information" shall have the meaning set forth in the respective confidentiality agreements, if any, that each Committee enters into with the Debtors, and shall also mean any nonpublic information of the Debtors or any of the Committees, including, without limitation, information concerning the Debtors' assets, liabilities, business operation, projections, analyses, compilations, studies, and other documents prepared by the Debtors, any of the Committees, or their respective advisors or other agents, which is furnished, disclosed, or made known to any of the Committees, whether intentionally or unintentionally and in any manner, including written form, orally, or through any electronic, facsimile or computer-related communication.  Confidential Information shall include (a) any notes, summaries, compilations, memoranda, or similar written materials disclosing or discussing Confidential Information; (b) any written Confidential Information that is discussed or presented orally; (c) actions, deliberations, and discussions of any of the Committees, (d) information or analyses prepared by any of the Committees or their respective retained professionals, (e) minutes of any of the Committees' meetings; and (f) any other Confidential Information conveyed to any of the Committees orally that the Debtors, the other Committees, or their respective advisors or other agents advise the recipient Committee should be treated as confidential.

Notwithstanding the foregoing, Confidential Information shall not include any information or portions of information that: (i) is or becomes generally available to the public or is or becomes available to any of the Committees on an non-confidential basis, in each case to the extent that such information became so available other than by a violation of a contractual, legal, or fiduciary obligation to the Debtors or any of the Committees; (ii) was in the possession of the recipient Committee(s) prior to its disclosure by the Debtors or the disclosing Committee(s), and is not subject to any other duty or obligation to maintain confidentiality; or (iii) information that lawfully becomes available to the Committees or

1   a committee's performance of its statutory duties, which include, among other things,

2   investigating the acts, conduct, assets and liabilities of a debtor.  See 11 U.S.C. § 1103(c)(2).

3   Similarly, where, as in the Chapter 11 Cases, more than one official committee has been

4   appointed, official committees may have joint privilege agreements and may share Confidential

5   Information with each other.  Official committees use this information to assess, among other

6   things, a debtor's capital structure, asset values, opportunities for the restructuring of the debtor's

7   business in chapter 11, the results of any revised operations of the debtor in the bankruptcy case,

8   and the debtor's overall prospects for reorganization under a chapter 11 plan.  In addition, official

9   committees typically execute confidentiality agreements or enter into other similar arrangements

10  with debtors and/or other official committees.  Through these agreements and other

11  arrangements a debtor or committee can ensure that a recipient committee's members will keep

12  its information confidential and will not use Confidential Information except in connection with

13  the Chapter 11 Cases and on terms acceptable to the Debtors and the Committees.  And, of

14  course, as an inherent aspect of performing its statutory duties, an official committee (and its

15  professionals) will discuss, deliberate on, analyze, and synthesize Confidential Information,

16  thereby creating additional Confidential Information.

17          16.    Because new section 1102(b)(3)(A) of the Bankruptcy Code is silent as to

18  the treatment of Confidential Information, it raises the issue of whether an official committee

19  could be required to share Confidential Information with any non-committee members.  Nothing

20  in the statute requires such a result, and nothing in the legislative history of section 1102(b)(3)

21  implies that an official committee has such an obligation.  Nevertheless, in the absence of

22  appropriate protections for Confidential Information, a debtor might be unwilling to share such

23  information with a committee, which, in turn, would undoubtedly impede such committee's

24  ability to do its work and impair the working relationship between the debtor and the committee.

25  Also, the Committees, themselves, may be hesitant to consider valuable Confidential Information

26

27

28  their respective retained professionals both on a nonconfidential basis and through a means
    other than a breach of either a Committee confidentiality agreement or any other
    confidentiality agreement.

in their respective analyses and deliberations absent some form of protection. Furthermore, if Confidential Information is not protected where, as here, multiple official committees are appointed, official committees will face significant impediments to working together to maximize the value of the Debtors' estates. Given the importance of this issue, the Committees are seeking an order of the Court confirming that section 1102(b)(3)(A) does not require the Committees to provide access to Confidential Information to any person of the Committees' respective constituencies; provided however, that nothing contained herein shall limit a Committee's ability to provide access to or distribute information to its constituents as it deems appropriate except as otherwise set forth in any confidentiality agreement or joint privilege agreement entered into between any Committee and the Debtors or other Committee, any Committee bylaws, or applicable law, if any.

17.    The enactment of new section 1102(b)(3)(A) also raises the issue of whether an official committee could be required to share with any person holding interests of a kind that the committee represents information subject to the attorney-client, the work-product privilege, or some other state, federal, or other jurisdictional law privilege, whether such privilege is solely controlled by the committee or is a joint privilege with the debtor or some other party (collectively, "Privileged Information"). Given the importance of this issue, the Committees are seeking clarification that the Committees are not authorized or required to provide access to Privileged Information to any person of the Committees' respective constituencies. Of course, each Committees would be permitted, but not required, to provide access to Privileged Information to any party so long as (a) such Privileged Information is not, and does not contain, Confidential Information, and (b) the relevant privilege is held and controlled solely by the disclosing Committee.

B.    **Authority Supporting Relief Requested with Respect to Confidential Information and Privileged Information.**

18.    When a statute is clear and unambiguous, "the sole function of the courts is to enforce it according to its terms." U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). However, in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the

391649v6

8

intention of its drafters… the intention of the drafters, rather than the strict language, controls." Id. at 242043 (citing Griffin v. Oceanic Contractors, Inc., 458, U.S. 564 (1982) (internal quotations omitted)).

19.     The Committees respectfully submit that section 1102(b)(3)(A) is unclear and ambiguous. The statute simply requires a committee "to provide access to information," yet sets forth no guidelines as to the type, kind and extent of the information to be provided. In its extreme, section 1102(b)(3)(A) could be read as requiring a committee to provide access to all information provided to it by a debtor, or developed through exercise of its investigative or deliberative function, regardless of whether the information is confidential, privileged, proprietary or material non-public information and regardless of whether disseminating such information implicates securities laws disclosure requirements. See 17 C.F.R. §§ 243.100 to 243.103 (2005). Although the Committees do not believe that such an interpretation of section 1102(b)(3)(A) can be supported, there is a need to clarify the scope of this new section so as to ensure the Committees have not and do not violate section 1102(b)(3)(A). Indeed, courts that have considered this matter have issued orders clarifying that official committees are not authorized or required to provide access to confidential or privileged information. See e.g., In re LG Philips Displays USA, Inc., Case No. 06-10245 (BLS) (Bankr. D. Del. May 18, 2006); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. February 15, 2006);  In re Refco, Inc., 336 B.R. 187, 197-98 (Bankr. S.D.N.Y. 2006); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Nov. 17, 2005).

20.     As noted above, the legislative history does not provide any further guidance on this point and merely reiterates the language of section 1102(b)(3). See H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition the committee must solicit and receive comments for these creditors and, pursuant to court order, make additional reports and disclosures available to them.")

21.     Given the ability to share information through the Internet or otherwise, the drafters of section 1102(b)(3) likely intended this provision to mean that a committee's

1    constituency should have easier access to relevant public information about a debtor without the

2    burden of retaining counsel to monitor the numerous proceedings within a bankruptcy case.

3    Congress could not have intended for a committee to be required to provide unfettered access to

4    every type and kind of information that a committee receives from a debtor.  If this had been the

5    intention, section 1102(b)(3) would frustrate numerous provisions of the Bankruptcy Code.

6            22.    Furthermore, section 107(b)(1) of the Bankruptcy Code provides that "on

7    request of a party in interest, the bankruptcy court shall … protect an entity with respect to a

8    trade secret or confidential research, development, or commercial information."[2]  As a result,

9    under section 107(b)(1) and Bankruptcy Rule 9018, this Court is empowered and required, upon

10    request, to protect Confidential Information and Privileged Information from disclosure to

11    creditors, equity security holders, and Direct Lenders.  See Video Software Dealers Ass'n v.

12    Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994) (providing that the protections of section

13    107(b)(1) are mandatory upon request).

14            23.    Finally, under section 105(a) of the Bankruptcy Code, the Court may

15    "issue any order … that is necessary or appropriate to carry out the provisions of this title."  The

16    Committees believe that the relief requested herein is necessary for the Committees to fulfill

17    their respective statutory duties as contemplated by section 1103(c) of the Bankruptcy Code.

18    **C.    Harmonizing Regulation FD With The First Trust Deed Committee's**
      **Duties Under 11 U.S.C. § 1103(b)(3).[3]**

19

20            24.    Importantly, with respect to public companies, the Securities and

21    Exchange Commission ("SEC") has adopted Regulation Fair Disclosure ("Regulation FD"),

22    which is a disclosure rule that addresses selective disclosure of material non-public information.

23    17 C.F.R. §§ 243.100 to 243.103 (2005).  The regulation provides that, when an issuer, or person

24    _____

25    [2]  Section 107(b)(1) is further supported by Bankruptcy Rule 9018, which states, in relevant
      part, that "on motion or on its own initiative, with or without notice, the court may make any

26    order which justice requires to protect the estate or any entity in respect of a trade secret or
      other confidential research, development, or commercial information…"  Fed. R. Bankr. P.

27    9018.

28    [3]  This section pertains only to the First Trust Deed Committee because USA First is the only
      Debtor that is a public company subject to SEC regulations.

391649v6                              10

1    acting on behalf of such issuer, has disclosed material non-public information to certain persons,

2    such issuer must make public disclosure of that information. Id. at § 243.100(a).  Regulation FD

3    enumerates certain categories of persons to whom selective disclosure may not be made (i.e.,

4    certain security market professionals and holders of the issuer's securities). Id. at § 243.100(b).

5              25.    Regulation FD contains, however an important exception that – prior to

6    the enactment of section 1102(b)(3) – likely exempted communications by debtor-issuers with

7    statutory committees without significant complication.  Specifically, Regulation FD provides:

8              Paragraph (a) [public disclosure requirements] of this section shall
               not apply to a disclosure made:
9

10             To a person who expressly agrees to maintain the disclosed
               information in confidence.
11

     17 C.F.R. § 243.100(b)(2).
12

13             26.    Thus, even if Regulation FD would not require the Debtors to make public

14   disclosures of information shared with the First Trust Deed Committee, provided the First Trust

15   Deed Committee agreed, in its bylaws[4], to maintain such information in confidence, Regulation

16   FD may be triggered if the First Trust Deed Committee was required to share such information

17   with its First Investor constituency.  Unless clarified by this Court, section 1102(b)(3) of the

18   Bankruptcy Code has the potential to trigger Regulation FD when material non-public

19   information is disseminated to a limited group of persons – the particular equity security holder

20   constituency (which would undoubtedly include one or more of the persons which Regulation

21   FD was intended to cover) – without disseminating such information to the public generally.

22             27.    Any argument that this Court could impose a general materiality standard

23   for deciding what information can and cannot be shared is simply too vague a standard and

24   would be too hard to enforce.  Unlike with Regulation FD where the SEC has delineated the

25   types and kinds of information that it considers material, the Bankruptcy Code provides no

26   guidance and, certainly, the Debtors would hesitate to share, and the First Trust Deed Committee

27
     _____
28   [4]  On May 26, 2006, the First Trust Deed Committee approved its bylaws (the "First Bylaws"),
         which provides that the First Trust Deed Committee maintain the confidentiality of certain
         information.

1    would be concerned to receive, information that may be deemed material if there is any room for

2    First Investors to take the position that it is not material.  Under Regulation FD it would be the

3    Debtors who would potentially incur liability under the securities laws.  For these reasons too,

4    the Debtors are likely to be reluctant to share confidential, proprietary or material non-public

5    information with the First Trust Deed Committee without assurances that such information

6    would be kept confidential.

7            28.      Accordingly, the First Trust Deed Committee respectfully requests that

8    this Court clarify the requirements of section 1102(b)(3) consistent with the terms of this Motion

9    and enter an order adopting the Information Protocol (as defined below).

10       **D.**    **Denying the Relief Requested with Respect to Confidential
11   Information and Privileged Information Will Damage the Debtors'
     Estates, Will Impede the Relationship (i) Between the Debtors and the
     Committees and (ii) Among The Four Committees, and Will Impinge
12   On The Committees' Abilities To Perform Their Duties.**

13           29.      The dissemination of Confidential Information and Privileged Information

14   to parties who are not bound by any confidentiality agreement or joint privilege agreement

15   directly to one or more of the Committees or to the Debtors could harm the Debtors as well as

16   impinge on the Committees' performance of their statutory duties.  If a First Investor, a

17   Diversified Investor, Direct Lender, or Unsecured Creditor could require the applicable

18   Committee to give it access to Confidential Information and Privileged Information in possession

19   of that Committee, such information could easily become public immediately thereafter.

20           30.      Of course, if there was a risk that the Confidential Information and

21   Privileged Information provided to any of the Committees by the Debtors, another Committee(s),

22   or a third-party would have to be turned over to any of such Committee's constituents upon

23   request, the Debtors, other Committee(s), and third-parties would be highly reluctant to provide

24   Confidential Information to that Committee in the first place.  In fact, the Debtors, other

25   Committee(s), or such third parties might conclude that they could not give such information to

26   the requesting Committee at all.  Moreover, even if the requesting Committee were able to obtain

27   Confidential Information from the Debtors or other Committee(s), the recipient Committee

28   would be concerned that the fruits of its investigations may be disseminated to inappropriate

391649v6                                        12

1   parties. The Committees also need the benefit of the relief requested in this Motion to ensure

2   that they can perform their statutory duties for the benefit of their respective constituents.[5]

3        31.     Finally, the risk to the Debtors and the Committees of having to provide

4   access to Privileged Information to their respective constituencies creates obvious and serious

5   problems. If the Debtors and the Committees believed that there could be a risk that the

6   Privileged Information would need to be turned over to anyone of their respective constituents,

7   with the possible loss of the relevant privilege at that time, the entire purpose of such privilege

8   would be eviscerated, and the Debtors and the Committees would likely be unable to obtain the

9   independent and unfettered advice and consultation that such privileges are designed to foster as

10  well as the benefits of proceeding collaboratively in the Chapter 11 Cases. Indeed, unless it is

11  made clear that risk of dissemination of Privileged Information does not exist, the estate

12  representation structure envisioned by the Bankruptcy Code would be rendered meaningless.

13       32.     The disclosure of Confidential Information or Privileged Information to

14  such persons will likely cause serious harm to the Debtors' estates as well as impinge on the

15  Committees' abilities to perform their duties. Therefore, pursuant to section 105(a), 107(b)(1),

16  and 1102(b)3)(A) of the Bankruptcy Code, in order to protect and maximize the value of the

17  estates, the Committees respectfully request that the relief requested herein be granted.

18  **E.     Procedures by Which the Committees Propose to Satisfy Their Duties
19         Under 11 U.S.C. § 1102(b)(3).**

20       33.     The Committees propose to satisfy the requirements of section 1102(b)(3)

21  by instituting the information protocol (the "Information Protocol") substantially in the form that

22

---

23  [5] Furthermore, as discussed above, the First Bylaws contain confidentiality provisions
24  designed to permit the First Trust Deed Committee to receive, discuss, analyze, and
    synthesize critical information and developments in the Chapter 11 Cases. The bylaws of the
25  Unsecured Creditors' Committee similarly contains confidentiality provisions for the same
    purpose, and the Diversified Trust Deed Committee also contemplates that its bylaws will
26  contain similar confidentiality provisions.

27  These Committees also need the benefit of the relief sought in this Joint Motion to ensure
    that they do not breach the confidentiality agreements contained in their bylaws. None of the
28  Committees should be put in a position of either violating section 1102(b)(3) of the
    Bankruptcy Code or breaching confidentiality agreements and thereby subjecting itself to suit
    by the Debtors and potentially other parties.

391649v6                          13

follows:[6]

    a.    <u>Access to Information</u>:  In satisfaction of the Committees' obligations to provide access to information to and to solicit and receive comments from persons that hold claims or interests of a type the Committees respectively represent in accordance with 11 U.S.C. § 1102(b)(3)(A) and (B), each of the Committees shall, until the earliest to occur of dissolution of that Committee, dismissal of the Chapter 11 Cases, or conversion of the Chapter 11 Cases, establish and maintain an Internet-accessed website[7] (collectively, the "Committee Websites") that provides, without limitation:[8]

        (1) a link to the Debtors' website, at which general information concerning the Chapter 11 Cases, including case dockets, access to docket filings, the claims docket as and when established, answers to frequently asked questions, and general information concerning significant parties in the cases, is available;

        (2) contact information for the Debtors (and any hotlines they may establish), the Debtors' counsel and counsel for each of the Committees;

        (3) a general overview of the chapter 11 reorganization process;

        (4) no less frequently than monthly, written reports by the Committee summarizing recent proceedings, significant events, and public financial information;

---

[6]  The Information Protocol is subject to change based on subsequent agreements among the Committees and the Debtors.

[7]  In the alternative, one or more of the Committees may create a single website containing information common to all creditors, equity security holders, and Direct Lenders, and, in addition, each Committee will maintain its own website which will provide such Committee's constituency with access to information particular to that Committee.  For example, each Committee needs its own website to solicit and receive comments from its constituents.

[8]  Notwithstanding any construction of section 1102(b) of the Bankruptcy Code and in light of the following Information Protocol, the individual members of each of the Committees shall not be required to, but may in their discretion, respond to any telephone calls, facsimiles, email communications, correspondence, or other communications from the Committees' respective constituencies.

391649v6

(5) a calendar of upcoming significant events in the Chapter 11 Cases;

(6) copies of monthly operating reports filed by the Debtors;

(7) when appropriate, a copy of any plan or reorganization and disclosure statement, and any voting deadline(s);

(8) press releases (if any) issued by each of the Committees and/or the Debtors;

(9) establish and maintain an electronic mail address through which individuals of the Committee's respective constituency may submit questions, comments, and requests for more information and, in addition, create a non-public form that individuals of the Committee's respective constituency may access to submit questions, comments, and request for more information that will be sent to such electronic mail address;

(10) responses to questions, comments and requests for access to information from the Committee's respective constituency; provided that the Committee may privately provide such responses in the exercise of its reasonable discretion, including in the light of the nature of the information request and agreements to appropriate confidentiality and trading constraints;

(11) answers to frequently asked questions;

(12) links to other relevant websites, including but not limited to other Committee Websites (to the extent that such websites are available publicly), the Bankruptcy Court's website, and the U.S. Trustee's website; and

(13) any other non-Confidential and non-Privileged Information, as defined herein, that the Committee or its counsel, at their sole discretion, deem appropriate to the restrictions and limitations set forth herein.

b.    <u>Privileged and Confidential Information</u>:  A Committee shall not be required to disseminate to any entity (all references to "entity" herein shall be defined in section 101(15) of the Bankruptcy Code, "Entity"): (i) without further order of the Court, Confidential Information, Privileged Information, proprietary information, or other non-public information concerning the Debtors, such

Committee, or any other Committee, including (without limitation) with respect to the acts, conduct, assets, liabilities and financial condition of the Debtors, the operation of the Debtors' business and the desirability of the continuance of such business, or any other matter relevant to these cases or to the formulation of one or more chapter 11 plan (including any and all confidential, proprietary, or other nonpublic materials of such Committee) whether provided (voluntarily or involuntarily) by or on behalf of the Debtors, any other Committee, or by any third party or prepared by or for such Committee or (ii) any other information if the effect of such disclosure would constitute a general waiver of the attorney-client, work-product, or other applicable privilege possessed by such Committee.

c.      Information Requests:  If a member of a Committee's constituency (the "Requesting Constituent") submits a written request (including on the non-public forms or by electronic mail) (the "Information Request") to the appropriate Committee to disclose information, such Committee shall as soon as practicable and use its best efforts to respond no more than twenty (20) days after receipt of the Information Request, provide a response to the Information Request (the "Response"), including providing access to the information requested or the reasons why the Committee cannot provide such requested information.  If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information or Privileged Information that need not be disclosed pursuant to the terms of a Court order or otherwise under 11 U.S.C. § 1102(b)(3)(A), or that the Information Request is unduly burdensome, the Requesting Constituent may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion.  Such motion shall be served and hearing on such motion shall be noticed pursuant to the Case Management Order.

        In its Response to an Information Request for access to Confidential

Information or Privileged Information, an Committee shall consider whether (a) the Requesting Constituent is willing to agree to reasonable confidentiality and trading restrictions with respect to such Confidential Information or Privileged Information and represents that such trading restrictions and any information-screening process complies with securities laws (if applicable); and (b) under the particular facts, such agreement and any information-screening process that it implements will reasonably protect the confidentiality of such information; provided, however, that if the Committee elects to provide access to the Confidential Information or Privileged Information on the basis of such confidentiality and trading restrictions, the Committee shall have no responsibility for the Requesting Constituent's compliance with, or liability for violation of, applicable securities or other laws.  Any disputes with respect to this paragraph shall be resolved as provided in the preceding paragraph.

d.      Limitation on Access to Information: Nothing set forth herein requires a Committee to provide access to information or solicit comments from any person or entity that has not demonstrated to the satisfaction of such Committee, in its sole discretion, or the Bankruptcy Court, that it holds an equity security interest, claim, and/or is a Direct Lender in connection with the appropriate Debtor.

Likewise, nothing herein shall prejudice the rights of the Committees, in their sole discretion, to: (i) provide access to information to their constituency, or (ii) solicit and receive comments from their respective constituents, except as otherwise set forth in any confidentiality agreements or joint privilege agreements entered into between any Committee and the Debtors or another Committee, any Committee bylaws, or applicable law, if any.

e.      Exculpation:  None of the Debtors, the Committees or any of their respective directors, officers, employees, members, attorneys, consultants, advisors, and agents (acting in such capacity) (collectively, the "Exculpated Parties") shall have or incur any liability to any entity (including the Debtors) for

391649v6

1   any act taken or omitted to be taken connection with the preparation,

2   dissemination, or implementation of the Information Protocol, the Committee

3   Websites, and other information to be provided pursuant to section 1102(b)(3) of

4   the Bankruptcy Code.  Without limiting the foregoing, the exculpation provided

5   in this paragraph shall be coextensive with any Exculpated Party's qualified

6   immunity under applicable law.

7       f. Retroactivity.  Any conduct taken by any of the Committees since their

8   inception that is consistent with the relief sought herein shall be ratified by the

9   entry of the requested order.

10      **WHEREFORE**, the Committees hereby requests that the Court enter an Order (i)

11  confirming that section 1102(b)(3)(A) of the Bankruptcy Code does not require any Committee

12  to provide access to Confidential Information to any individual of such Committee's

13  constituency; (ii) clarifying that that section 1102(b)(3)(A) of the Bankruptcy Code does not

14  authorize or require any Committee to provide access to Privileged Information to any individual

15  of such Committee's constituency; (iii) approving and establishing the Information Protocol as

16  the means by which the Committees are to provide information to and receive and solicit

17  comments from the respective members of each Committee's constituency and thereby satisfy

18  their duties under section 1102(b)(3)(A) and (B) of the Bankruptcy Code; and (iv) grant the

19  Committees such other and further relief as the Court deems just and proper.

20

21  Respectfully submitted this 7th day of June, 2006.

22

23

24

25

26

27

28

391649v6                                18

SUBMITTED BY:

STUTMAN, TREISTER & GLATT, P.C.

CHRISTINE M. PAJAK, ESQ.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Counsel for the Official Committee of Equity
Security Holders of USA Capital First Trust
Deed Fund, LLC

SUBMITTED BY:

LEWIS AND ROCA, LLP

ROB CHARLES, ESQ.
SUSAN M. FREEMAN, ESQ.
3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89109

[Proposed] Counsel for Official Committee of
Unsecured Creditors of USA Commercial
Mortgage Company

SUBMITTED BY:

GORDON & SILVER, LTD

GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
3960 Howard Hughes Pkwy, 9th Floor
Las Vegas, NV 89109

Counsel for Official Committee of Holders of
Executory Contract Rights of USA Commercial
Mortgage Company

SUBMITTED BY:

ORRICK, HERRINGTON & SUTCLIFFE LLP

MARC A. LEVINSON, ESQ.
LYNN TRINKA ERNCE, ESQ.
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4407

[Proposed] Counsel for Official Committee of
Equity Security Holders of USA Capital
Diversified Trust Deed Fund, LLC

391649v6

19

1  SUBMITTED BY:                                    SUBMITTED BY:

2  STUTMAN, TREISTER & GLATT, P.C.                  GORDON & SILVER, LTD

3

4  CHRISTINE M. PAJAK, ESQ.                         GERALD M. GORDON, ESQ.
5  1901 Avenue of the Stars, 12th Floor             GREGORY E. GARMAN, ESQ.
6  Los Angeles, CA 90067                            3960 Howard Hughes Pkway, 9th Floor
                                                    Las Vegas, NV 89109
7  Counsel for the Official Committee of Equity
   Security Holders of USA Capital First Trust      Counsel for Official Committee of Holders of
8  Deed Fund, LLC                                   Executory Contract Rights of USA Commercial
                                                    Mortgage Company
9

10 SUBMITTED BY:                                    SUBMITTED BY:

11 LEWIS AND ROCA, LLP                              ORRICK, HERRINGTON & SUTCLIFFE LLP

12

13 ROB CHARLES, ESQ.                                MARC A. LEVINSON, ESQ.
14 SUSAN M. FREEMAN, ESQ.                           LYNN TRINKA ERNCE, ESQ.
15 3993 Howard Hughes Parkway, 6th Floor            400 Capitol Mall, Suite 3000
   Las Vegas, Nevada 89109                          Sacramento, California 95814-4407
16
   [Proposed] Counsel for Official Committee of     [Proposed] Counsel for Official Committee of
17 Unsecured Creditors of USA Commercial            Equity Security Holders of USA Capital
   Mortgage Company                                 Diversified Trust Deed Fund, LLC
18

19

20

21

22

23

24

25

26

27

28

391649v6                              19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUBMITTED BY:

STUTMAN, TREISTER & GLATT, P.C.

CHRISTINE M. PAJAK, ESQ.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Counsel for the Official Committee of Equity
Security Holders of USA Capital First Trust
Deed Fund, LLC

SUBMITTED BY:

LEWIS AND ROCA, LLP

       /s/ Rob Charles
ROB CHARLES, ESQ.
SUSAN M. FREEMAN, ESQ.
3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89109

[Proposed] Counsel for Official Committee of
Unsecured Creditors of USA Commercial
Mortgage Company

SUBMITTED BY:

GORDON & SILVER, LTD

GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
3960 Howard Hughes Pkway, 9th Floor
Las Vegas, NV 89109

Counsel for Official Committee of Holders of
Executory Contract Rights of USA Commercial
Mortgage Company

SUBMITTED BY:

ORRICK, HERRINGTON & SUTCLIFFE LLP

MARC A. LEVINSON, ESQ.
LYNN TRINKA ERNCE, ESQ.
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4407

[Proposed] Counsel for Official Committee of
Equity Security Holders of USA Capital
Diversified Trust Deed Fund, LLC

391649v6

19

| | |
|---|---|
| SUBMITTED BY: | SUBMITTED BY: |
| STUTMAN, TREISTER & GLATT, P.C. | GORDON & SILVER, LTD |

CHRISTINE M. PAJAK, ESQ.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Counsel for the Official Committee of Equity
Security Holders of USA Capital First Trust
Deed Fund, LLC

GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
3960 Howard Hughes Pkway, 9th Floor
Las Vegas, NV 89109

Counsel for Official Committee of Holders of
Executory Contract Rights of USA Commercial
Mortgage Company

SUBMITTED BY:

LEWIS AND ROCA, LLP

ROB CHARLES, ESQ.
SUSAN M. FREEMAN, ESQ.
3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89109

[Proposed] Counsel for Official Committee of
Unsecured Creditors of USA Commercial
Mortgage Company

SUBMITTED BY:

ORRICK, HERRINGTON & SUTCLIFFE LLP

MARC A. LEVINSON, ESQ.
LYNN TRINKA ERNCE, ESQ.
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4407

[Proposed] Counsel for Official Committee of
Equity Security Holders of USA Capital
Diversified Trust Deed Fund, LLC

391649v6                                19