**LEWIS AND ROCA LLP LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89109
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Proposed Attorneys for Official Committee of Unsecured Creditors

E-Filed on June 9, 2006

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>**USA Commercial Mortgage Company**<br>    06-10725 – Lead Case<br><br>**USA Capital Realty Advisors, LLC**<br>    06-10726<br><br>**USA Capital Diversified Trust Deed Fund, LLC**<br>    06-10728<br><br>**USA Capital First Trust Deed Fund, LLC**<br>    06-10728<br><br>**USA Securities, LLC**<br>    06-10729<br>                                    **Debtors.** | Jointly Administered<br><br>Chapter 11 Cases<br><br>Judge Linda B. Riegle Presiding<br><br>**Omnibus Response To Motions For Relief From The Automatic Stay For The Purpose of Terminating Loan Servicing Agreements**<br><br>Date: June 15, 2006<br>Time: 10:00 a.m.<br>**Affecting:**<br>☒ All Cases<br>or Only:<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC |

The Official Committee of Unsecured Creditors of USA Commercial Mortgage Company (the "Unsecured Committee"), responds to the several motions for relief from the automatic stay by alleged direct lenders in order to terminate the lenders' Loan Servicing Agreement and Power of Attorney with USA Commercial Mortgage Company ("Commercial Mortgage"), and asks that the motions be denied, or set for a final hearing. So long as Commercial Mortgage accounts to the direct lenders for post-petition

201082.1

collections and otherwise properly collects amounts due on the loans for later disbursement, there is no cause for termination of the stay. On the other hand, termination of the stay would be damaging and quite possibly ruinous to all of the Debtors' estates and their creditors.

This omnibus response is directed to the following motions:

- Motion for Relief from Stay Property: Various Real Property [DE 208, 215]
- Motion for Relief from Stay Property: Loan Servicing Agreement for Direct Loan to Boise/Gowan, LLC [DE 292]
- Joinder [DE 319]

## Background

Each of the movants asserts it is a direct lender to one or more borrowers under loans originated by Commercial Mortgage. Each seeks modification of the stay to terminate Commercial Mortgage's rights under a Loan Servicing Agreement to service the loan(s), as well as the associated Power of Attorney through which Commercial Mortgage acts on behalf of the lenders, which may number in the dozens for a particular loan.

## Argument

We accept as common ground that the stay relief motions ask this Court to exercise its discretion. That discretion is exercised on a case by case basis.[1] In this type of motion, the Court balances the hardship upon the Debtors, their estates and the creditors against the hardship allegedly suffered by the movants.[2] The movants have not demonstrated cause for stay relief here, and are not likely to do so at a final hearing on the motions.

---

[1] *In re Delaney-Morin*, 304 B.R. 365, 369 (9th Cir. B.A.P. 2003); *In re Beguelin*, 220 B.R. 94, 97-98 (9th Cir. B.A.P. 1998).

[2] *In re Wintroub*, 283 B.R. 743, 745 (8th Cir. B.A.P. 2002) (request for stay relief to permit litigation in non-bankruptcy court to proceed); *In re Ramkaran*, 315 B.R. 361, 364 (D. Md. 2004), citing *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *In re American Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003) (request for stay relief in favor of arbitration).



The Unsecured Committee joins in Debtors' statement of the obvious – prepetition contract defaults, by themselves, are not cause for stay relief.[3] We write separately to address the three additional reasons the direct lenders offer for relief from the stay: i) absent bankruptcy some of the lenders could replace the servicing agent if they obtain threshold acquiescence by a sufficient number of lenders, ii) the lenders have not received payments since the petition date, although funds may have been collected, and iii) a competing servicing agent might handle the matter for less than Commercial Mortgage under its prepetition contracts.

## I. COMMERCIAL MORTGAGE IS NOT DAMAGING LENDERS BY CONTINUING TO SERVICE THE LOANS

First, the movants have not shown entitlement as a matter of contract to terminate the Loan Servicing Agreements and replace Commercial Mortgage as servicing agent. As Debtors have explained, reading the provisions of the standard Loan Servicing Agreement together in order to harmonize its several provisions, a Lender may act to terminate the role of Commercial Mortgage only:

**IF** Commercial Mortgage fails to act on the Lenders' behalf, in the event of default, foreclosure, or other matters that require action;

**AND** 51% or more of the holders of the beneficial interest of record approve,[4]

**AND** each Lender gives Commercial Mortgage 30 days' written notice of termination of the Agreement and associated power of attorney.[5]

None of the movants have established that 51% of the holders of any loan have joined in their request for relief from stay to serve the required notices. The record before this Court does not demonstrate that Commercial Mortgage has failed to act on behalf of

---

[3] *Matter of Holly's, Inc.*, 140 B.R. 643, 689 (Bankr. W.D. Mich. 1992); *In re Tashjian*, 72 B.R. 968, 973-74 (Bankr. E.D. Pa. 1987).
[4] Loan Servicing Agreement ¶ 3.
[5] Loan Servicing Agreement ¶ 8.

201082.1

any Lender with respect to any loan, either. To the contrary, Mr. Allison is vigorously seeking to collect the loans. There is no question but that he and others at Mesirow are diligently and carefully safeguarding funds and exercising sound business judgment about servicing the loans.

Commercial Mortgage has delayed transmitting funds to direct lenders, but it has committed to make payments as soon as the relevant facts are determined to ensure that money is correctly paid and not overpaid. Commercial Mortgage is not seeking to retain more than it is contractually entitled to keep. It expects to begin disbursement of funds after the hearing on July 25, 2006, so that the direct lenders will have suffered at most 3 ½ months of delay with respect to loan funds collected on the petition date, and less for subsequent collections. Delay is inherent in any bankruptcy case. This one is moving quickly due to extraordinary efforts by the Debtors' new management. The delay is minimal, and bearable.

One group of direct lenders has suggested the possibility of replacement of Commercial Mortgage on that lender's loans with a competing servicing company, and suggested a lower servicing fee. With respect, that lender's submission says nothing about the servicing agent's willingness to waive a set up fee, or willingness to accept loans with the confusion caused by Debtor's prior management's poor record-keeping. The Unsecured Committee doubts that the direct lenders would reap significant savings by transferring their loans immediately, or that they can demonstrate true harm from inability to do so.

## II. WITHDRAWING LOANS, PARTICULARLY PERFORMING LOANS, FROM THE PORTFOLIO, WILL DAMAGE DEBTORS, THEIR ESTATES AND CREDITORS

Commercial Mortgage will suffer damage to the extent its servicing fee income is terminated. That is an important source of the funds it needs to investigate the Debtors' transactions, determine entitlements and claims, and return the Debtors to the point of

201082.1

profitable operation that would enable the direct lenders and the creditors and other parties in interest to recover through a sale or other reorganization.

Allowing some direct lenders to pull their loans might well prompt others to seek comparable relief, to the detriment of all. Reorganization of Commercial Mortgage as a loan servicing business is impossible if its portfolio ceases to exist. But even if only some of the servicing contracts are removed from the estate, the Debtors and all parties in interest will suffer substantial harm.

For example, termination of any significant number of loan servicing agreements will incrementally increase the Debtor's burden of administering remaining loans. There are economies of scale in a single servicing agent, Commercial Mortgage, having 115 loans in a pool on 99 properties. Further, a substantial number of the loans serviced by Commercial Mortgage are multiple loans on a project, or loans to related borrowers. Fragmenting loan management, and loan enforcement, is inefficient at best and likely to result in delays and increased costs. Some direct lenders, through a new servicing agent, would be competing with Commercial Mortgage on behalf of other direct lenders, in dealing with the same borrower or guarantors with respect to advancing funds and with respect to collection. The break-up of loan servicing into several companies is also likely to inhibit as well as delay advancement of additional funds needed to complete such projects.

If the direct lenders located other servicing agents that would perform the same services for a lower cost, it would probably be because they would be moving the best-performing loans, those that are easier to collect and quicker to generate servicing fees. This would leave the Debtors with the less-effectively performing and nonperforming (most difficult to collect) loans with Commercial Mortgage. This too, damages the bankruptcy estate and all parties in interest.

201082.1

If direct lenders are allowed to terminate their loan servicing agreements, there is a risk that Commercial Mortgage will have to sue some of the lenders for overpayments rather than recoup from future payments. That may be in the best interest of those direct lenders, but it is not in the best interest of the estate. It is not in the best interest of the vendors and other unsecured creditors, who would bear the delays and damages and risks, and who would lose the oversight of the Committees, the United States Trustee and the Court, and would lose an easily accessible forum and full reporting and protection of collected funds.

### III. BALANCE OF HARDSHIPS TIPS IN FAVOR OF DENYING RELIEF

On balance, the direct lenders are suffering a short delay in payment of sums due to them. But if they are granted relief, Commercial Mortgage cannot protect the interests of all direct lenders, will be impaired in administration of its portfolio, and may not be able to reorganize. The balance of hardships tips against granting relief.

### Conclusion

The Committee requests that the Court either deny the motions at the June 15 preliminary hearing, or set the motions for a final hearing and deny relief after consideration of evidence.

Dated June 9, 2006.

LEWIS AND ROCA LLP

By /s/ RC (#006593)
Susan M. Freeman, AZ 4199 (pro hac vice)
Rob Charles, NV 6593
*Proposed Attorneys for Official Committee of Unsecured Creditors*

201082.1