Thomas J. Gilloon, Esq.
State Bar No. 000578
330 S. Third Street #900
Las Vegas, Nevada 89101
Phone: 702-388-7185
Fax: 702-388-0108
mcknightlaw@cox.net

E-filed on June 9, 2006.

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>　　　　　　　　　　　　　　　Debtor.<br><br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC.,<br>　　　　　　　　　　　　　　　Debtor.<br><br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC.,<br>　　　　　　　　　　　　　　　Debtor.<br><br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC.,<br>　　　　　　　　　　　　　　　Debtor.<br><br>In re:<br>USA SECURITIES, LLC.,<br>　　　　　　　　　　　　　　　Debtor.<br><br>Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR<br><br>Chapter 11<br><br>**Jointly Administered Under<br>Case No. BK-S-06-10725-LBR**<br><br>Date: June 15, 2006<br>Time: 10:00 a.m. |

**SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO TEMPORARILY HOLD FUNDS PENDING A DETERMINATION OF PROPER RECIPIENTS AND IN SUPPORT OF DIRECT LENDER'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND DIRECT LENDER'S MOTION TO CONTINUE TO FORWARD LENDER PAYMENTS TO DIRECT LENDERS**

A. <u>The Debtor Has No Legal Basis For Continuing To Withhold Payment Of The Funds of The Direct Lenders.</u>

The justification offered by the Debtor-In-Possession for withholding *all* of the funds due the Direct Lenders on their loans simply does not withstand any reasoned analysis. The DIP asserts that it may have some ill-defined 'equitable' interest in the balance of the funds due to the Direct Lenders post-petition because of allegations that interest payments were made to some lenders whose loans were non-performing loans prior to the filing of the bankruptcy petition. What that has to do with the post-petition payments properly due the holders of *performing* loans after the petition for relief was filed is left entirely to the imagination. In fact, the DIP theory that it can proceed on some constructive trust theory against innocent investors, particularly those who were direct lenders, is fundamentally flawed.

In *Mitsubishi Int'l. Corp. v. Cardinal Textile Sales, Inc*., 14 F.3d 1507 (11th Cir., 1994), the Eleventh Circuit stated that "[i]t is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Id*., at 1518. In that case, which the appellate court characterized as an action for money damages on an open account, Mitsubishi alleged that the defendants had engaged in a continuing scheme to obtain funds involving phony invoices for goods allegedly shipped to Mitsubishi's customers. On the plaintiff's application for preliminary injunctive relief, the district court imposed a constructive trust upon the assets of the defendants and appointed a receiver to manage the assets of several of the defendants. *Id*., at 1510. Mitsubishi's complaint included a slew of state law claims including a claim for imposition of a constructive trust. The appellate court held that the district court did not have lawful authority to impose the constructive trust or issue what amounted to a prejudgment attachment of the defendants assets.

The appellate court rejected Mitsubishi's argument that imposition of a constructive trust by means of a preliminary injunction was necessary to assure that funds would be available to satisfy any judgment that might eventually be entered. The court stated as follows:

> Mitsubishi's argument on appeal is premised upon a mistaken and overly rigid view of constructive trusts: that Mitsubishi has an absolute and immediate right under Georgia constructive trust law to trace and recover any assets that were derived from Mitsubishi funds involved in the textile transactions described in part I. Because a constructive trust is deemed to arise at the time of a fraudulent misappropriation, Mitsubishi contends that it was entitled to an immediate injunction preventing the dissipation of those assets--including payment of appellees' counsel fees--as well as the opportunity to seek disgorgement of any transferred funds. *This position, however, fails to recognize that constructive trusts are not automatically impressed whenever one party owes another money, and it apparently overlooks the essence of the remedy--that constructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law*.

*Id*., at 1518 (emphasis added). The Court emphasized that imposition of a constructive trust is not normally available where the remedy sought is the recovery of money.

> Cases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity, 1 Pomeroy, supra, § 178, at 229, and the imposition of a constructive trust generally will not be the appropriate remedy. This principle holds even when the cause of action implicates fraud or some other characteristic that would otherwise trigger equity jurisdiction.

*Id*., at 1519-1520. The court also stated that the temporary injunction entered in the district court was "akin to a prejudgment writ of attachment, presented in the form of an injunction against the defendants." *Id*., at 1520.

Two facts have emerged in this case which are not going to change. First, none of the direct lenders, save possibly insiders, had any part in any diversion of funds and the DIP has made no showing that any of the Direct Lenders is judgment proof. Second, the principles of the DIP who did in fact divert funds from the estate are not judgment proof as evidenced by Thomas

Allison's declarations that he was negotiating with those principals to pledge collateral to secure a $57,000,000 loan obtained in 2002. In this case, the DIP has numerous avenues to recover funds that may have been diverted from the estate. It is clear that the DIP plainly has *several* adequate remedies at law and there is no basis for resort to such extreme remedies as simply seizing all of the funds due the Direct Lenders.

B. The DIP Has Not Demonstrated That The Pre-Petition Payments Are Preferential.

Further, the payments made to the investors with non-performing loans must be analyzed for what they were, i.e., advances to the *borrowers* made by USA. The payment made on behalf of the borrowers plainly created an equivalent account receivable in favor of the debtor that is owed by the borrower, not the investors. In *In re Coast Grain Co.*, 317 B.R. 796, (Bkrtcy. E.D.Cal.,2004), the bankruptcy court recognized that '[a] transfer which creates an equivalent account receivable, or other form of contract right, does not diminish the estate." *Id.*, at 803. It is premature to simply *assume* that the missed payments are not going to be recovered. The DIP is plainly free to set off the amounts that were paid to investors against the final amount each investor is entitled to receive when the loans are repaid or the collateral for the loan sold following foreclosure. Accounting for the additional sums due on the fifty nonperforming loans will be far simpler than bringing adversary proceedings against each of the investors or defending against a conversion claim against the estate. Cf. *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir., 1967)(holding that the bankruptcy trustee was not immune from suit in a state court for the wrongful conversion of a third party's personal property). Further, having advanced funds for the payments to the borrowers, USACM is likely subrogated to whatever rights the direct lenders have to payments received in the future on the loans in question.

In addition, in *In re M & L Business Machine Co., Inc.*, 84 F.3d 1330 (10th Cir.1996), the

appellate court held that even an investor in a Ponzi scheme that cash post-dated checks within ninety days of the filing of a bankruptcy petition had a claim for restitution against the debtor after being fraudulently induced to invest. The $43,500 the investor realized when he cashed several post-dated checks reduced the amount of his restitution claim against the debtor and was treated by the court as "reasonably equivalent value under 11 U.S.C. § 548(a)(2). *Id*., at 1341. Clearly, the Direct Lenders can likewise assert a claim for fraud based on the false statements in in the loan servicing agreement that funds would be segregated as provided by Nevada law. Thus, there is nothing in the Bankruptcy Code's preference provisions that authorize avoidance of the payments to the direct lenders even though the loans were non-performing.

**CONCLUSION**

The funds collected on the Direct Loans are and remain property held in trust by the debtor and are clearly not property of the estate under 11 U.S.C. §541(d). The DIP's action in simply holding on to those funds on the pretext that the estate has some 'equitable interest' in the ongoing stream of payments is at best an unlawful conversion of the Direct Lender's property administrative expenses. The DIP should be ordered to resume payments the Direct lender on all performing loans and refund the amounts withheld since the filing of the petition.

Respectfully submitted this 9th day of June 2006.

THE LAW OFFICES OF RICHARD MCKNIGHT, P.C.

By:    /s/ Thomas J. Gilloon
       Thomas J. Gilloon, Esq.
       State Bar No. 000578
       330 S. Third Street #900
       Las Vegas, Nevada 89101
       Attorneys for McKnight 2000 Family Trust