**LEWIS AND ROCA LLP**
LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89109
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Proposed Attorneys for Official Committee of Unsecured Creditors

E-Filed on June 9, 2006

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Jointly Administered |
|---|---|
| **USA Commercial Mortgage Company**<br>06-10725 – Lead Case | Chapter 11 Cases |
| **USA Capital Realty Advisors, LLC**<br>06-10726 | Judge Linda B. Riegle Presiding |
| **USA Capital Diversified Trust Deed Fund, LLC**<br>06-10728 | **Omnibus Response To Motions For Immediate Payment to Direct Lenders and Joinder in Debtors' Motion To Temporarily Hold Funds Pending A Determination Of The Proper Recipients** |
| **USA Capital First Trust Deed Fund, LLC**<br>06-10728 | Date: June 15, 2006<br>Time: 10:00 a.m.<br>**Affecting:**<br>☒ All Cases<br>or Only: |
| **USA Securities, LLC**<br>06-10729<br>Debtors. | ☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC |

The Official Committee of Unsecured Creditors of USA Commercial Mortgage Company (the "Unsecured Committee"), responds to the several motions for immediate payment to direct lenders of funds under loans serviced by USA Commercial Mortgage Company ("Commercial Mortgage"). The Unsecured Committee supports Debtors' Motion To Temporarily Hold Funds Pending A Determination Of The Proper Recipients

201089.1

[DE 173] (the "Hold Motion").[1]

This omnibus response is directed to the Hold Motion, and the following motions:

- Motion to Compel Debtor to Continue to Forward Lender Payments to Direct Lenders [DE 209, 215]

- Motion Directing Payments To Direct Lenders [DE 336]

## Background

Commercial Mortgage asks for limited authority to hold funds it collects as servicing agent pending a hearing on July 25, 2006. Commercial Mortgage expresses its intent to ask at that hearing for authority to make payments to direct lenders except to the extent necessary to recover Commercial Mortgage's prior overpayments to any of those lenders. Commercial Mortgage does not seek a determination from the Court that the funds being held are property of the estate, or that the servicing agent has any right in the funds other than the servicing and other fees and charges payable under the Loan Servicing Agreements.

## Argument

### I. ALLOWING COMMERCIAL MORTGAGE TO HOLD FUNDS TEMPORARILY UNTIL IT IS CERTAIN WHOM SHOULD BE PAID IS CONSISTENT WITH COMMERCIAL'S MORTGAGE'S LEGAL OBLIGATIONS

Commercial Mortgage is servicing 115 loans on 99 projects where 3,600 direct lenders, and two funds with collectively 3,200 members, have interests. Commercial Mortgage points out that almost all of the direct lenders have interests in numerous loans. Its financial advisors at Mesirow have been working constantly since their employment to reconstruct accurate loan files as well as records of each individual investor's account.

---

[1] Certain direct lenders filed responses to Debtors' motion and "counter-motions" for the opposite relief. This Court has indicated that it will not consider, and the Unsecured Committee opposes such "counter-motions."

LEWIS
AND
ROCA
LLP
LAWYERS

Simultaneously, Mr. Allison's team as the Debtors' new management and Debtors' counsel have been working to collect current and past due interest and principal on Commercial Mortgage's loan portfolio. They report significant collections since the petition date. While some are busy collecting money, others are reconstructing books and records to understand the flow of funds and determine entitlement to amounts available for use and payments. It is neither novel nor improper to acknowledge that accurately determining the interest of each direct lender and investor, and the amount owed to each from accumulated loan collections, takes time.

Obtaining relative certainty with respect to the millions of dollars to be disbursed before that money leaves estate coffers and control is not only reasonable, but also necessary to protect the creditors of this estate. If inaccuracies in Commercial Mortgage's records are not corrected, and if a lender is overpaid, the money may never be recovered and the estate certainly will bear the cost of collection efforts. If inaccuracies result in a lender being underpaid the amount it is due, that lender may assert an expense of administration. Commercial Mortgage may earn 1 to 3% in servicing fees, but its improper payments after the petition date could result in a 100% liability to creditors' detriment.

While the records are being studied and reconstructed, Commercial Mortgage and Mr. Allison have committed to faithfully account for every dollar collected, to segregate all such collections in excess of contractually-entitled fees, and to promptly recommend to the Court a fair means of resuming principal and interest payments to the direct lenders. The Unsecured Committee both encourages and demands that these commitments be promptly fulfilled.

## II. THE COURT NEED NOT DECIDE ANY OF THE ISSUES RAISED BY THE DIRECT LENDERS, AS THEY REQUEST ADVISORY OPINIONS

In the Hold Motion, Debtors articulate a number of issues that might be affected by Mesirow's ongoing factual investigation. Some of those potential theories, none of which

201089.1

Debtors urge as a basis for relief, have drawn intense direct lender opposition, including those raising the issue of whether the loans, collateral or loan payments are property of the Commercial Mortgage estate, or whether there are equitable bases for the estates to assert an interest in such property. With respect to both Debtor's explanation of possibilities and the direct lenders' concerns, the Unsecured Committee respectfully suggests that the tempest over these issues is, at this time, outside the jurisdiction of a federal court. The Ninth Circuit explained the principle:

> The "basic rationale" of Article III ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Accordingly, "ripeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974), and a federal court normally ought not resolve issues "involv[ing] 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)). In the absence of an immediate and certain injury to a party, a dispute has not "matured sufficiently to warrant judicial intervention." *See Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975).[2]

Except for the narrow request to hold distributions until late July, the Hold Motion does not seek relief from the direct lenders. By attacking the alternatives posed by Debtors, the objecting direct lenders are seeking, in effect, a request for an advisory opinion.[3] There is no case or controversy on any of these points, the facts have not been developed to indicate whether there is any justification for any of the potential arguments, and the Court simply lacks jurisdiction over these hypothetical disputes.[4]

---

[2] *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996).

[3] *See In re MacNeil*, 907 F.2d 903 (9th Cir. 1990) (bankruptcy court lacked jurisdiction to render advisory opinion of relative priority of superpriority claims).

[4] *In re Lowenschuss*, 170 F.3d 923, 932 (9th Cir. 1999) (issue that is contingent upon future events, here an appeal, is not ripe for decision); *Acequia*, 94 F.3d at 572 (whether one party would breach a contract in the future or not was not a ripe issue, thus outside the jurisdiction of federal courts).

201089.1

Some direct lenders assert that a Commercial Mortgage overpayment to them of interest when the underlying borrower had not made a corresponding payment, cannot be recovered for creditors' benefit. The Unsecured Committee believes that there are various legal theories that might warrant such a recovery, at least on behalf of lenders whose moneys were misappropriated by Debtors' prior management,[5] but until the Court and all parties see Mesirow's accounting of loans and investors, as well as the schedules of assets and liabilities and statement of financial affairs, no one has the facts upon which to decide who owes what to whom, and how such debts should be repaid.

## Conclusion

The Unsecured Committee requests that the Court grant Commercial Mortgage until the hearing on July 25, 2006 to present both a complete and accurate accounting and a proposal to resume payments of interest and principal to the direct lenders who are entitled to payment.

Dated June 9, 2006.

**LEWIS AND ROCA LLP**

By /s/ RC (#006593)
Susan M. Freeman, AZ 4199 (pro hac vice)
Rob Charles, NV 6593
*Proposed Attorneys for Official Committee of Unsecured Creditors*

---

[5] E.g., Restatement of Restitution §§ 1, 202 (1937).