Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**E-FILED on June 9, 2006**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><div align="right">Debtor.</div> | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | Date:  OST Pending<br>Time:  OST Pending |
| In re:<br>USA SECURITIES, LLC,<br><div align="right">Debtor.</div> | **DEBTORS' MOTION FOR ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **(AFFECTS ALL DEBTORS)** |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Pursuant to Federal Rule of Bankruptcy Procedure 9019, USA Commercial Mortgage

2  Company ("USACM"), USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital

3  Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively,

4  the "Debtors") hereby respectfully move this Court for entry of an order approving the security

5  agreement and related promissory note recently given by USA Investment Partners, LLC

6  ("Investment Partners") to document a $58.3 million obligation owed by Investment Partners and

7  to provide collateral for that obligation (and other obligations owed by Investment Partners).  In

8  support of this motion, the Debtors in these jointly administered cases respectfully represent as

9  follows:

10                    **POINTS AND AUTHORITIES**

11  **I.     FACTUAL BACKGROUND**

12    1.    The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code

13  with this Court on April 13, 2006 (the "Petition Date"), which cases are being jointly administered

14  as captioned above.

15    2.    Prior to the Petition Date, USACM was primarily in the business of originating,

16  brokering and servicing commercial real estate loans and fractional interests therein.

17    3.    Under prior management, pre-petition irregularities occurred in servicing the loans.

18    4.    On the Petition Date, Thomas J. Allison of Mesirow Interim Financial Management

19  became the President of USACM and the Manager of the four remaining Debtors who are limited

20  liability companies.  Thereafter, the Court entered an order appointing Mr. Allison as the interim

21  Chief Restructuring Officer of each of the Debtors.

22    5.    Under their new management since the Petition Date, the Debtors have worked

23  diligently to analyze and unravel the problems the Debtors face arising from past business

24  practices and irregularities.

25    6.    USACM business records reflect pre-petition receivables and debts owed by

26  Investment Partners.  USACM contends that the receivables and debts owed by Investment

27  Partners are immediately due and payable.  Investment Partners, in an attempt to prevent the

28  immediate collection of the receivables and debts owed to USACM and the other Debtors, offered

1  to execute a promissory note documenting at least some of those obligations to USACM and to

2  provide collateral for all debts and obligations owed to Debtors.  As of May 31, 2006, in an

3  attempt to compromise, Investment Partners executed a promissory note to USACM (the

4  "Promissory Note") in the principal sum of $58,374,918.81 documenting at least a portion of the

5  outstanding receivables and debts owed to USACM.  A copy of the Promissory Note is attached

6  hereto as **Exhibit A** and incorporated herein by reference.

7        7.      Also as of May 31, 2006, Investment Partners granted each of the Debtors a

8  security interest in certain of its assets securing the repayment of the Promissory Note and other

9  obligations described therein (the "Security Agreement").  A copy of the Security Agreement is

10  attached hereto as **Exhibit B** and incorporated herein by reference.

11  **II.      MEMORANDUM OF LAW**

12        8.      Rule 9019(a) provides authority for this Court to approve a compromise or

13  settlement.  The acceptance of the Promissory Note and Security Agreement is in the best interest

14  of the Debtor's estates, because it provides collateral for a previously unsecured debt, and thus

15  should be approved.  *See, e.g., In re Healthco Int'l,* 136 F.3d 45, 50-52 (9th Cir. 1998) (discussing

16  "best interests" standard applicable under Rule 9019).

17        9.      As explained above, USACM is the payee on a $58,374,918.81 Promissory Note

18  that was entered into by Investment Partners in an effort to compromise the immediate right of

19  USACM to sue and collect at least some of the debts and obligations owed by Investment Partners

20  to USACM.  The Security Agreement grants each of the Debtors a security interest in certain

21  property to secure repayment of any other subsequently discovered obligations owed by

22  Investment Partners.

23        10.     Obtaining a security interest to secure repayment of such a substantial obligation is

24  certainly in the best interest of the Debtors' estates.

25        11.     The only right USACM is compromising is the right to immediately sue Investment

26  Partners for recovery of those receivables and debts now evidenced by the Promissory Note.  All

27  other rights of the Debtors against Investment Partners are retained.

28  / / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

III.    CONCLUSION

For the reasons set forth above, the Debtors respectfully requests that the Court grant this Motion and enter an order approving the acceptance of the Promissory Note and Security Agreement by the Debtors.

Respectfully submitted this 9th day of June, 2006.

/s/     LENARD E. SCHWARTZER
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# Exhibit A

## Promissory Note

$58,374,918.81                                                          May 31, 2006

FOR VALUE RECEIVED, and in an attempt to compromise a disputed claim, **USA Investment Partners, LLC,** a Nevada limited liability company (the "Borrower"), promises to pay to the order of **USA Commercial Mortgage Company,** a Nevada corporation (the "Lender") at its offices at 4484 South Pecos Road, Las Vegas, Nevada 89121, or at such other place as the Lender may from time to time designate in writing, the principal sum of Fifty-Eight Million, Three Hundred Seventy-Four Thousand, Nine Hundred Eighteen Dollars and Eighty-One Cents ($58,374,918.81). Interest on this Note will accrue at the per annum rate of seven and three-fourths of one percent (7.75%) compounded annually. The principal balance of this Note and all interest accrued hereunder shall be due and payable in full on May 31, 2007. In addition, during the term of this Note, Borrower agrees to pay Lender (and Lender is entitled to receive), in reduction of the sums due hereunder, all proceeds from the liquidation of certain assets of Borrower pledged pursuant to the security interest that secures this Note, as more fully set forth in the Security Agreement executed herewith (the "Security Agreement").

Provided there is no Event of Default, as defined in the Security Agreement, and provided that Lender has received by May 31, 2007 from the proceeds of the collateral encumbered by the Security Agreement (net of the Expense Carve-Out described in the Security Agreement) an amount in cash or promissory notes (if each such promissory note is made in an arms-length, commercially reasonable transaction) equal to at least Twenty Million Dollars ($20,000,000), regardless of how applied by the Secured Party under the Security Agreement, Lender agrees to extend the maturity date of this Note to May 31, 2008, to be evidenced by a note modification agreement.

In no event will the rate or amount of interest paid by the Borrower under this Note exceed the maximum amount permissible under any applicable law. In the event that a court determines that the Lender has received interest hereunder in excess of the maximum amount permitted by such law, (i) the Lender will apply such excess to any unpaid principal owed by the Borrower to the Lender or, if the amount of such excess exceeds the unpaid balance of such principal, the Lender will promptly refund such excess interest to the Borrower and (ii) the provisions hereof will be deemed amended to provide for such permissible rate.

Upon an Event of Default, as defined in the Security Agreement, at Lender's election Borrower immediately shall pay in full the entire outstanding principal amount under this Note, together with all unpaid accrued interest, together with all other monetary obligations owed in connection with this Note and the Security Agreement. Nothing in this Note shall affect or limit the right of Lender to receive and apply all proceeds from collateral granted by the Security Agreement to the amounts outstanding under

this Note, as set forth in the Security Agreement. All payments and proceeds received by Lender shall be applied first to reasonable costs and expenses incurred by Lender pursuant to the Security Agreement, then to accrued interest, and then to principal.

This Note is secured by a Security Agreement of even date herewith, together with any other collateral documents that are or may be executed as security for this Note. Upon the failure of Borrower to pay this Note pursuant to its terms and the terms of the Security Agreement, the Lender may, at its option, without additional demand, notice or legal process of any kind, exercise any and all rights and remedies granted to it by the Security Agreement or by any other agreement now or hereafter existing between the Lender and the Borrower, and the Lender may at its option exercise from time to time any other rights and remedies available to it under the Uniform Commercial Code or other laws of the State of Nevada.

The remedies of the Lender are be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Lender. No act of omission or commission of the Lender, including specifically any failure to exercise any right, remedy or recourse, will be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by the Lender and then only to the extent specifically recited therein. A waiver or release with reference to any one event will not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

The Borrower waives presentment, demand and protest, notice of protest, notice of presentment and all other notices and demands in connection with the enforcement of the Lender's rights hereunder, and hereby consents to, and waives notice of, the release, addition, or substitution, with or without consideration, of any collateral or of any person liable for payment of this Note. Any failure of the Lender to exercise any right available hereunder or otherwise will not be construed as a waiver of the right to exercise the same or as a waiver of any other right at any other time.

The Borrower agrees to pay all reasonable expenses and costs, including without limitation attorneys' fees, court costs, and similar expenses, paid or incurred in enforcing any of the Lender's rights hereunder or in connection with any of the collateral securing this Note, including without limitation all such expenses and costs incurred by Lender in enforcing its rights in a bankruptcy or insolvency proceeding

This Note shall be governed by the laws of Nevada. Each provision of this Note will be interpreted in such manner as to be effective and valid under Nevada law, but if any provision of the Note will be prohibited by or invalid under such law, such provision will be severable, and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note.

The obligations of the Borrower under this Note are in addition to the obligations owed by the Borrower to USA Capital Diversified First Trust Deed Fund with respect to a Loan Agreement dated as of April 10, 2002, as amended by a First Amendment thereto dated October 6, 2003, between 10-90, Inc. as lender and the Borrower as borrower, and all related promissory notes or notes, as assigned by 10-90, Inc. to USA Capital Diversified First Trust Deed Fund pursuant to an Agreement for Transfer of Promissory Note dated January 1, 2005.

THE BORROWER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION TO ENFORCE OR DEFEND ANY MATTER ARISING FROM OR RELATED TO THIS NOTE.

The Borrower and the Lender agree that this Promissory Note is being executed in an attempt to compromise a disputed claim, and is not admissible against the Borrower or the undersigned for any purpose other than to enforce obligations under this Note and the Security Agreement, pursuant to this agreement and Nev. Rev. Stat. 548.105 (2006) and Fed. R. Evid.408.

USA Investment Partners, LLC, A Nevada
limited liability company, as Borrower

By: _____
Name: Joseph D. Milanowski
Title: Manager

878194.01

3

# Exhibit B

## Security Agreement

This Security Agreement ("Agreement") is made as of May 31, 2006, by and between **USA Investment Partners, LLC**, a Nevada limited liability company (the "Debtor"), in favor of **USA Commercial Mortgage Company**, a Nevada corporation; **USA Capital Diversified Trust Deed Fund, LLC**, a Nevada limited liability company; **USA Capital First Trust Deed Fund, LLC**, a Nevada limited liability company; **USA Securities LLC**, a Nevada limited liability company; and **USA Capital Realty Advisors, LLC**, a Nevada limited liability company (USA Commercial Mortgage Company; USA Capital Diversified Trust Deed Fund, LLC; USA Capital First Trust Deed Fund, LLC; USA Securities LLC; and USA Capital Realty Advisors, LLC shall be individually and collectively referred to as the "Secured Party").

WHEREAS, Debtor is obligated to Secured Party with respect to advances, loans, obligations, liabilities, indemnifications and claims payable by Debtor to Secured Party, including without limitation the obligations owed by Debtor to USA Commercial Mortgage Company evidenced by a Promissory Note made by Debtor of even date herewith in the stated principal amount of $58,374,918.81; and

WHEREAS, Debtor has agreed to grant to Secured Party a security interest in certain of Debtor's assets, whether now owned or hereafter acquired, as security for the repayment of all advances, loans, obligations, liabilities, indemnifications and claims that are owed by Debtor to Secured Party whether now existing or hereafter arising.

NOW, THEREFORE, in an attempt to compromise a disputed claim, and in consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Definitions. All terms defined in the Nevada Uniform Commercial Code, as may be amended, and used herein shall have the same definitions herein as specified therein. In addition to the foregoing, the following terms as used herein are defined as follows:

1.1    Obligations. Means, collectively, (a) the payment of the Promissory Note (the "Note") of even date herewith executed by Debtor and payable to the order of USA Commercial Mortgage Company in the stated principal amount of $58,374,918.81, together with interest thereon and charges with respect thereto; (b) any and all obligations owed by Debtor to USA Capital Diversified Trust Deed Fund with respect to a Loan Agreement dated as of April 10, 2002, as amended by a First Amendment thereto dated October 6, 2003, between 10-90, Inc. as lender and Debtor as borrower, and all related promissory notes or notes, as assigned by 10-90, Inc. to USA Capital Diversified Trust Deed Fund pursuant to an Agreement for Transfer of Promissory Note dated January 1, 2005 (the "10-90 Loan"); (c) any and all other advances, loans, obligations, liabilities, indemnifications and claims now or hereafter owed or payable by Debtor to Secured Party, in addition to the Note, whether represented by agreement or book-entry, whether now or hereafter due, whether matured or unmatured, whether contingent or non-contingent, whether

disputed or liquidated (with the principal amount of the Note not intended by Secured Party to be an admission of all such obligations owed to Secured Party); (d) all of the terms, conditions, agreements, stipulations, covenants, and provisions of this Agreement and any other agreement, document or instrument executed by Debtor for the benefit of Secured Party (and any and all renewals, replacements, amendments, modifications or extensions thereof); (e) payment of all sums reasonably advanced by Secured Party to protect the Collateral with interest thereon equal to the rate of interest applicable under by the Note; and (f) all reasonable costs and expenses incurred by Secured Party in the enforcement and collection of the foregoing, including without limitation all attorneys' fees and costs incurred by Secured Party.

      1.2    Event of Default. Means any failure of Debtor to pay or perform any of the Obligations as and when due to be paid or performed, including without limitation those Obligations due under the terms of the Note, where such failure remains uncured for ten (10) days with respect to a monetary Obligation and thirty (30) days with respect to a non-monetary Obligation after written notice of default from Secured Party to Debtor.

      2.    Grant of Security Interest/Liquidation of Collateral. Debtor hereby grants to Secured Party, to secure the payment and performance in full of all of the Obligations, a security interest in and therewith pledges and assigns to Secured Party the following properties, assets and rights of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all of Debtor's membership interests and all other interests in, or granted by, the entities (the "LLCs") listed on Exhibit "A" attached hereto and incorporated, together with any of the following owned by Debtor: all instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property and general intangibles related to or arising from one or more of the LLCs, together with all supporting obligations.

      3.    Authorization to File Financing Statements. Debtor hereby irrevocably authorizes Secured Party at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral and (b) provide any other information required by part 5 of Article 9 of the Nevada Uniform Commercial Code or such other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment, including whether Debtor is an organization, the type of organization and any organizational identification number issued to Debtor. Debtor agrees to furnish any such information to Secured Party promptly upon Secured Party's request. Debtor also ratifies its authorization for Secured Party to have filed in any Uniform Commercial Code jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

      4.    Other Actions. To further the attachment, perfection and first priority of, and the ability of Secured Party to enforce, Secured Party's security interest in the Collateral, and without limitation on Debtor's other obligations in this Agreement, Debtor agrees, in each case at Debtor's expense, to take the following actions with respect to the following Collateral:

4.1     Promissory Notes and Tangible Chattel Paper. If Debtor shall at any time hold or acquire any promissory notes or tangible chattel paper, Debtor shall forthwith endorse, assign and deliver the same to Secured Party, accompanied by such instruments of transfer or assignment duly executed in blank as Secured Party may from time to time specify.

4.2     Other Actions as to Any and All Collateral. Debtor further agrees, at the request and option of Secured Party, to take any and all other actions Secured Party may determine to be necessary or useful for the attachment, perfection and first priority of, and the ability of Secured Party to enforce, Secured Party's security interest in any and all of the Collateral, including, without limitation, (a) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code, to the extent, if any, that Debtor's signature thereon is required therefor, (b) causing Secured Party's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of Secured Party to enforce, Secured Party's security interest in such Collateral, (c) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Secured Party to enforce, Secured Party's security interest in such Collateral, (d) using diligent, good faith efforts to obtain governmental and other third party waivers, consents and approvals in form and substance satisfactory to Secured Party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, (e) using diligent, good faith efforts to obtain waivers from mortgagees and landlords in form and substance satisfactory to Secured Party and (f) taking all actions reasonably within Debtor's control under any earlier versions of the Uniform Commercial Code or under any other law, as reasonably determined by Secured Party to be applicable in any relevant Uniform Commercial Code or other jurisdiction, including any foreign jurisdiction.

4.3     LLCs. Without limiting Secured Party's rights under Section 13, Borrower shall use diligent, good faith efforts to obtain the written acknowledgment of each LLC as to the terms of this Agreement and an agreement from each LLC that all distributions and other payments otherwise payable to Borrower shall be paid directly to Secured Party for immediate application to the Obligations (subject to the Expense Carve-Out as described in Section 13). The form of each such acknowledgment shall be reasonably acceptable to Secured Party.

5.     Relation to Other Security Documents; Mortgage Loans. The provisions of this Agreement supplement the provisions of any other security or collateral document granted by Debtor to Secured Party that secures the payment or performance of any of the Obligations. Nothing contained in any such document shall limit or affect the rights or remedies of Secured Party hereunder. In addition, nothing in this Agreement or the Note is intended (i) to limit, affect or waive the rights and remedies, including foreclosure remedies and other collection remedies, of any lender or lenders holding a

3

mortgage or trust deed lien interest against a property owned by one of the LLCs, including the rights and remedies of Secured Party in such capacity or (ii) to limit, affect or waive the rights of Secured Party as loan servicer or attorney-in-fact with respect to any such mortgage or trust deed loan.

      6.    Representations and Warranties Concerning Debtor's Legal Status. Debtor represents and warrants to Secured Party as follows: (a) Debtor's exact legal name is that indicated in the introductory paragraph hereto and on the signature page hereof, (b) Debtor is an organization of the type, and is organized in the jurisdiction set forth in the introductory paragraph hereto and on the signature page hereof, (c) the signature page hereto accurately set forth Debtor's organizational identification number or accurately state that Debtor has none, and (d) the signature page hereto accurately set forth Debtor's place of business or, if more than one, its chief executive office, as well as Debtor's mailing address, if different.

      7.    Covenants Concerning Debtor's Legal Status. Debtor covenants with Secured Party as follows: (a) without providing at least thirty (30) days' prior written notice to Secured Party, Debtor will not change its name, its place of business or, if more than one, chief executive office, or its mailing address or organizational identification number if it has one, (b) if Debtor does not have an organizational identification number and later obtains one, Debtor shall forthwith notify Secured Party of such organizational identification number, and (c) Debtor will not change its type of organization, jurisdiction of organization or other legal structure.

      8.    Representations and Warranties Concerning Collateral, etc. Debtor further represents and warrants to Secured Party as follows: (a) Debtor is the owner of or has other rights in or power to transfer the Collateral, free from any right or claim or any person or any adverse lien, security interest or other encumbrance, except for (i) the security interest created by this Agreement and other liens permitted by Secured Party in writing, and (ii) the provisions of the operating agreements of the LLCs, (b) none of the account debtors or other persons obligated on any of the Collateral is a governmental authority covered by the Federal Assignment of Claims Act or like federal, state or local statute or role in respect of such Collateral, and (c) to the best of Debtor's knowledge, Debtor holds no commercial tort claim except as indicated to Secured Party in writing. Secured Party acknowledges that Debtor has granted or will grant to USA Capital Diversified Trust Deed Fund a security interest in Debtor's membership interest in Capital Land Investors, LLC; Random Developments, LLC; Ashby USA, LLC; Oak Mesa Investors, LLC; and Buffalo Land Developments, LLC, in connection with obligations owed to USA Capital Diversified Trust Deed Fund including the 10-90 Loan.

      9.    Covenants Concerning Collateral, etc. Debtor further covenants with Secured Party as follows: (a) except for the security interest herein granted, liens permitted hereby, and the provisions of the operating agreements of the LLCs, Debtor shall be the owner of or have other rights in the Collateral free from any right or claim of any other person, lien, security interest or other encumbrance, and Debtor shall defend the same against all claims and demands of all persons at any time claiming the same or any interests therein adverse to Secured Party, (b) Debtor shall not pledge, mortgage or

4

create, or suffer to exist any right of any person in or claim by any person to the Collateral, or any security interest, lien or encumbrance in the Collateral in favor of any person, other than Secured Party, (c) Debtor will permit Secured Party, or its designee, to inspect the Collateral at any reasonable time, wherever located, (d) Debtor will pay promptly when due all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, and (e) except as contemplated by this Agreement, Debtor will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein.

10.    Insurance.

10.1    Maintenance of Insurance.  Debtor will cause the LLCs to maintain, with financially sound and reputable insurers, insurance with respect to their respective properties and business against such casualties and contingencies as shall be in accordance with general practices of businesses engaged in similar activities in similar geographic areas. Such insurance shall be in such minimum amounts that each respective LLC will not be deemed a co-insurer under applicable insurance laws, regulations and policies and otherwise shall be in such amounts, contain such terms, be in such forms and be for such periods as maintained by prudent businesspersons engaged in similar businesses in similar geographic areas.

10.2    Insurance Proceeds.  All proceeds of any casualty insurance distributed to Debtor in respect of any casualty loss of any of the Collateral shall, subject to the rights, if any, of other parties with an interest having priority in the property covered thereby and subject to the Expense Carve-Out described in Section 13, be delivered to Secured Party to be applied to the Obligations.

10.3    Continuation of Insurance.  In the event of failure by Debtor to provide and maintain insurance as herein provided, Secured Party may, at its option, provide such insurance and charge the amount thereof to Debtor. Within thirty (30) days after the execution hereof, Debtor shall furnish Secured Party with certificates of insurance and policies evidencing compliance with the foregoing insurance provision.

11.    Collateral Protection Expenses; Preservation of Collateral.

11.1    Expenses Incurred by Secured Party.  In Secured Party's discretion, if Debtor fails to do so within ten (10) days after written demand from Secured Party to Debtor, Secured Party may discharge taxes and other due and payable encumbrances at any time levied or placed on any of the Collateral, maintain any of the Collateral, make repairs thereto and pay any necessary filing fees or insurance premiums. Debtor agrees to reimburse Secured Party on demand for all expenditures so made. Secured Party shall have no obligation to Debtor to make any such expenditures, nor shall the making thereof be construed as the waiver or cure of any Default or Event of Default (except that if Debtor reimburses Secured Party for any such expenditure

5

made by Secured Party, Debtor shall be deemed to have cured any default arising from Debtor's initial failure to make such expenditure).

11.2    Secured Party's Obligations and Duties.  Debtor shall remain obligated and liable under each contract or agreement comprised in the Collateral to be observed or performed by Debtor thereunder.  Secured Party shall not have any obligation or liability under any such contract or agreement by reason of or arising out of this Agreement or the receipt by Secured Party of any payment relating to any of the Collateral, nor shall Secured Party be obligated in any manner to perform any of the obligations of Debtor under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment received by Secured Party in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to Secured Party or to which Secured Party may be entitled at any time or times. Secured Party's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Nevada Uniform Commercial Code or otherwise, shall be to deal with such Collateral in a reasonable manner.

12.    Securities and Deposits.  Secured Party may at any time following and during the continuance of an Event of Default, at its option, transfer to itself or any nominee any securities constituting Collateral, receive any income thereon and apply it to the Obligations.  Following and during the continuance of an Event of Default, Secured Party may demand, sue for, collect, or make any settlement or compromise which it deems desirable in its reasonable judgment with respect to the Collateral.  Regardless of the adequacy of Collateral or any other security for the Obligations, any sums at any time credited by or due from Secured Party to Debtor shall be applied to or set off against any of the Obligations.

13.    Notification to Account Debtors and Other Persons Obligated on Collateral; Application to Obligations; Expense Carve-Out.  Debtor shall notify the LLCs of the security interest of Secured Party in the membership interests of Debtor in the LLCs and that payment of all distributions to Debtor shall be made directly to Secured Party, and Secured Party may itself, without notice to or demand upon Debtor, so notify the LLCs. Debtor shall hold all proceeds of collection of the membership interests and any related accounts, chattel paper, general intangibles, or instruments received by Debtor as trustee for Secured Party and shall immediately turn the same over to Secured Party, together with any necessary endorsements or assignments.  Secured Party shall apply the proceeds of collection of the LLC membership interests and any related accounts, chattel paper, general intangibles or instruments received by Secured Party to the Obligations, regardless of whether there is an Event of Default, such proceeds to be immediately credited after final payment in cash or other immediately available funds of the items giving rise to them. Notwithstanding the foregoing and so long as there is no Event of Default, Secured Party agrees that Debtor may receive from the proceeds of the Collateral and otherwise payable to Secured Party hereunder an amount no greater than ten percent (10%) of all such aggregate proceeds, regardless of whether such proceeds are cash or non-cash proceeds (with that ten

6

percent (10%) portion being referred to as the "Expense Carve-Out"); provided that the Expense Carve-Out consists only of (a) the reimbursement to Debtor of documented, out-of-pocket and other direct expenses incurred by Debtor in efforts to liquidate or collect any of the Collateral and (b) the remittance to Debtor of funds to permit the payment of income tax liability resulting directly from the liquidation or collection of any the Collateral. Provided there is no Event of Default, upon each event in which proceeds with respect to an LLC membership interest or other Collateral are paid, as required above, to Secured Party, Debtor may receive payment of the Expense Carve-Out up to (a) ten percent (10%) of such proceeds, and (b) any amount by which all previous payments of the Expense Carve-Out to Debtor fall short of 10% of all previous proceeds of the Collateral. With respect to non-cash proceeds, such as promissory notes, Debtor shall have the right to receive up to 10% of the proceeds thereof, in payment of the Expense Carve-Out, as and when such non-cash proceeds become liquid. The Expense Carve-Out may be paid directly from the distribution event provided that Debtor has provided to Secured Party and Secured Party has approved prior to the event a written summary and supporting documents of the items comprising the Expense Carve-Out. Subsequent payment of the Expense Carve-Out shall be made in a similar manner with each such distribution event. With each request for payment of the Expense Carve-out, Debtor shall provide to Secured Party an updated written summary and supporting documents of the items comprising the Expense Carve-Out.

14.    Power of Attorney.

14.1    Appointment and Powers of Secured Party. With respect to the rights of Secured Party under Section 13 and, otherwise, upon the occurrence of an Event of Default, Debtor hereby irrevocably constitutes and appoints Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Debtor or in Secured Party's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorneys the power and right, on behalf of Debtor, without notice to or assent by Debtor, to do the following:

(a)    upon the occurrence and during the continuance of an Event of Default, generally to sell, transfer, pledge, make any agreement with respect to or otherwise dispose of or deal with any of the Collateral in such manner as is consistent with the Nevada Uniform Commercial Code and as fully and completely as though Secured Party were the absolute owner thereof for all purposes, and to do, at Debtor's expense, at any time, or from time to time, all acts and things which Secured Party deems necessary or useful to protect, preserve or realize upon the Collateral and Secured Party's security interest therein, in order to effect the intent of this Agreement, all at least as fully and effectively as Debtor might do, including, without limitation, (i) the filing and prosecuting of registration and transfer applications with the appropriate federal, state, local or other agencies or authorities with respect to trademarks, copyrights and patentable inventions and processes, (ii) upon

7

written notice to Debtor, the exercise of voting rights with respect to voting securities, which rights may be exercised, if Secured Party so elects, with a view to causing the liquidation of assets of the issuer of any such securities, and (iii) the execution, delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral; and

(b)    to the extent that Debtor's authorization given in Section 3 is not sufficient, to file such financing statements with respect hereto and amendments thereto.

14.2    Irrevocable. This power of attorney is a power coupled with an interest and is irrevocable.

14.3    No Duty on Secured Party. The powers conferred on Secured Party hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers Secured Party shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to Debtor for any act or failure to act, except for Secured Party's own willful misconduct.

15.    Rights and Remedies. If an Event of Default shall have occurred and be continuing, Secured Party, without any other notice to or demand upon Debtor, have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Nevada Uniform Commercial Code and any additional rights and remedies which may be provided to a secured party in any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose Secured Party may, so far as Debtor can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom. Secured Party may in its discretion require Debtor to assemble all or any part of the Collateral at such location or locations within the jurisdiction(s) of Debtor's principal office(s) or at such other locations as Secured Party may reasonably designate. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party shall give to Debtor at least ten days prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made. Debtor hereby acknowledges that ten Business Days prior written notice of such sale or sales shall be reasonable notice. In addition, Debtor waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of Secured Party's rights and remedies hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies with respect thereto.

16.    Standards for Exercising Rights and Remedies. Secured Party shall exercise its rights and remedies in accordance with applicable law.

8

17.    No Waiver by Secured Party, etc. Secured Party shall not be deemed to have waived any of its rights or remedies in respect of the Obligations or the Collateral unless such waiver shall be in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All rights and remedies of Secured Party with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or papers, shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as Secured Party deems expedient.

18.    Suretyship Waivers by Debtor. Debtor waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other reasonable action taken in reliance hereon and all other demands and notices of any description. With respect to both the Obligations and the Collateral, Debtor assents to any reasonable extension or postponement of the time of payment or any other indulgence, to any reasonable substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the reasonable settlement, compromising or adjusting of any thereof, Secured Party shall have no duty as to the collection or protection of the Collateral or any income therefrom, the preservation of rights against prior parties, or the preservation of any rights pertaining thereto beyond the safe custody thereof as set forth in Section 11.2.

19.    Marshalling. Secured Party shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, Debtor hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of Secured Party's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, Debtor hereby irrevocably waives the benefits of all such laws.

20.    Proceeds of Dispositions, Expenses. Debtor shall pay to Secured Party any and all reasonable expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Secured Party in protecting, preserving or enforcing Secured Party's rights and remedies under or in respect of any of the Obligations or any of the Collateral. After deducting all of said expenses, the residue of any proceeds of collection or sale or other disposition of the Collateral shall, to the extent actually received in cash, be applied to the payment of the Obligations in such order or preference as Secured Party may determine, proper allowance and provision being made for any Obligations not then due. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments

9

required by Sections 9-608(a)(1)(C) or 9-615(a)(3) of the Nevada Uniform Commercial Code, any excess shall be returned to Debtor. In the absence of final payment and satisfaction in full of all of the Obligations, Debtor shall remain liable for any deficiency.

21.    Overdue Amounts. Until paid, all amounts due and payable by Debtor hereunder shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the rate of interest applicable under the Note.

22.    Governing Law. The validity of this Agreement, the construction, interpretation, and enforcement hereof and thereof, and the rights of the parties hereto and thereto with respect to all matters arising hereunder or thereunder or related hereto or thereto shall be determined under, governed by, and construed in accordance with the laws of the State of Nevada without giving effect to conflict of laws principles.

23.    Waiver of Right to Jury Trial. DEBTOR HEREBY UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY PRESENT OR FUTURE CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THE OBLIGATIONS, ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THE OBLIGATIONS, OR IN ANY WAY CONNECTED WITH OR RELATED TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE OBLIGATIONS OR ANY DOCUMENTS EXECUTED IN CONNECTION THEREWITH. IF ANY DISPUTE IN CONNECTION WITH THE OBLIGATIONS OR THIS AGREEMENT IS DECIDED BY LITIGATION, SUCH DISPUTE SHALL BE DECIDED BY A COURT TRIAL WITHOUT A JURY.

24.    Miscellaneous. The headings of each section of this Agreement are for convenience only and shall not define or limit the provisions thereof. This Agreement and all rights and obligations hereunder shall be binding upon Debtor and its respective successors and assigns, and shall inure to the benefit of Secured Party and its successors and assigns. If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein. Debtor acknowledges receipt of a copy of this Agreement. All notices required or permitted hereunder shall be made in the manner required or permitted by the Nevada Uniform Commercial Code and otherwise in accordance with the terms and at the addresses set forth below.

25.    Offer of Compromise. The Debtor and the Secured Party agree that this Security Agreement is being executed in an attempt to compromise a disputed claim, and is not admissible against the Debtor or the undersigned for any purpose other than to enforce obligations under this Agreement or the Note, pursuant to this Agreement and Nev. R. Stat. 48.105 (2006) and Fed. R. Evid. 408.

26.    Approval. This Agreement, and the Note, which is one of the obligations it secures, at the option of Secured Party, may be submitted for approval by the U.S. Bankruptcy Court for the District of Nevada in Secured Party's bankruptcy case (Case No.

06-10725-LBR, jointly administered), which option and submission shall not affect the immediate enforceability of this Agreement and the Note.

[Remainder of Page Intentionally Left Blank]

11

IN WITNESS WHEREOF, intending to be legally bound, Debtor has caused this Agreement to be duly executed as of the date first above written.

USA Investment Partners, LLC, a Nevada limited liability company

By: _____
Name: Joseph D. Milanowski
Its: Manager

### Certain Information Regarding Debtor

Debtor's Jurisdiction of Organization: Nevada

Debtor's Organizational Type: Limited Liability Company

Debtor's Organizational Identification No.: LLC8055-1999

Debtor's Employer Identification No.: 88-04399 20

Debtor's Place of Business or
Chief Executive Office:
    4525 Sandhill Road
    Las Vegas, NV  89121

Debtor's mailing address:
    4525 Sandhill Road
    Las Vegas, NV  89121

With a copy to:
    Goold Patterson Ales & Day
    4496 South Pecos Road
    Las Vegas, Nevada  9121

12

Exhibit "A"

List of Limited Liability Companies

1.    Capital Land Investors, LLC, a California limited liability company

2.    Ashby USA, LLC, a California limited liability company

3.    Placer County Land Investors. LLC, a California limited liability company (f/k/a Placer County Land Speculators, LLC)

4.    Oak Mesa Investors, LLC, a California limited liability company

5.    HMA Sales LLC, a Nevada limited liability company

6.    Tanamera Properties, LLC

7.    Random Developments, LLC, a California limited liability company

8.    Buffalo Land Developments, LLC, a California limited liability company

878193.01

13