**EXHIBIT 2**

## NINTH AMENDMENT TO LOAN DOCUMENTS

Reference is made to that certain loan agreement (the "Loan Agreement"), dated as of March 30, 2005 by and between **Franklin/Stratford Investments LLC**, an Idaho limited liability company ("Borrower"), and those persons listed on Exhibit "A" thereto ("Lenders"). Capitalized terms used but not otherwise defined herein are used with the same meanings assigned to them in the Loan Agreement.

### RECITALS

A. WHEREAS Section 3.2 of the Loan Agreement provides for increases in the Loan Amount up to $6,200,000; and

B. WHEREAS the Loan is evidenced by a Note dated March 30, 2005 in the principal amount of $2,500,000 which Note is secured by a Deed of Trust of even date therewith, recorded on or about March 31, 2005 in the Official Records of Ada County, State of Idaho; and

C. WHEREAS Borrower has requested an increase in the Loan Amount of $300,000; and

D. WHEREAS USA is willing to and has arranged for an increase in the Loan Amount of $300,000;

E. WHEREAS the Deed of Trust provides for the lien created thereby to secure all future amounts advanced to Trustor pursuant to the Loan Agreement; and

F. WHEREAS Robert A. Russell ("Guarantor") guaranteed the Loan, and explicitly agreed that its guaranty would remain valid and enforceable in the event the Loan was modified;

NOW, THEREFORE, Lender, Borrower, Guarantor, and USA hereby agree as follows:

1. Increase in Note Amount. The amount of the Note is hereby increased from $4,925,000 to $5,225,000. Interest on the additional $300,000 shall begin to accrue at the close of escrow.

2. Amendment of Note. The Note is hereby amended by adding thereto a new Exhibit "A," in the form attached hereto describing the Lenders.

3. Amendment of Deed of Trust. The Deed of Trust is hereby amended to add the new Beneficiaries to include the new investors and reflect the revised percentage interests on each in the amount secured, and to add a new Exhibit "A" to reflect these changes. In connection therewith, Borrower agrees to execute and deliver for recording an amendment to the Deed of Trust in the form annexed hereto as Exhibit "B." Borrower also agrees to pay all costs and expenses in connection with recording the amendment, as well as the cost of an endorsement to the Title Insurance Policy to reflect these changes.

4. Incorporation with Loan Documents. This Amendment modifies the Loan Documents as specifically recited herein, and is incorporated as an amendment to the Note, Deed of Trust, and

1

Loan Agreement. Except as modified hereby, all terms, covenants and conditions of the Loan Documents remain unchanged.

5. Affirmation of Guaranty. Guarantors hereby reaffirm that their Guaranty remains in full force and effect, as expressly set forth therein, after this Amendment becomes effective.

6. Validity of Loan Documents; No Defenses. Borrower represents and acknowledges that the Deed of Trust and all other Loan Documents are in full force and effect, and that Borrower has no knowledge of any defense to the validity or enforceability of any of them.

Dated this _17_ day of _March_ , 2006.

**BORROWERS:**    **Franklin/Stratford Investments LLC**

By: _____

Robert A. Russell, Manager

**GUARANTORS:**

_____

Robert A. Russell

**LENDER:**    USA Commercial Mortgage Company, Attorney-in-Fact

By: _____

Joseph D. Milanowski, President

2

## EXHIBIT "A"

## LENDERS

NAME

AMOUNT

1.   USA Capital First Trust Deed Fund
2.   USA Capital Diversified Trust Deed Fund

$4,215,000
$1,010,000

TOTAL

$5,225,000

3

## EXHIBIT "B"

## NINTH AMENDMENT TO DEED OF TRUST

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Trustor hereby agrees to the execution, delivery, and recording of this Amendment to that certain Deed of Trust, Assignments of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") dated March 30, 2005, executed by Franklin/Stratford Investments LLC, an Idaho limited liability Company to Pioneer Title Company of Ada County, an Idaho corporation, as Trustee, in favor of those persons listed on Exhibit "A" as Beneficiaries. The Deed of Trust was recorded on March 31, 2005 as Document No.105038725 in the Official Records of Ada County, State of Idaho; a First Amendment to Deed of Trust was recorded on July 25, 2005, as Document No. 105101445 in the Official Records of Ada County, State of Idaho; a Second Amendment to Deed of Trust was recorded on August 10, 2005, as Document No.105118167 in the Official Records of Ada County, State of Idaho; a Third Amendment to Deed of Trust was recorded on October 11, 2005 as Document No. 105151199 in the Official Records of Ada County, State of Idaho; a Fourth Amendment to Deed of Trust was recorded on November 2, 2005 as Document No. 105165869 in the Official Records of Ada County, State of Idaho; a Fifth Amendment to Deed of Trust was recorded on December 13, 2005 as Document No.105189370 in the Official Records of Ada County, State of Idaho; a Sixth Amendment to Deed of Trust was recorded on January 13, 2006 as Document No. 106006482 in the Official Records of Ada County, State of Idaho; a Seventh Amendment to Deed of Trust was recorded on February 9, 2006 as Document No.106021071 in the Official Records of Ada County, State of Idaho; and an Eighth Amendment to Deed of Trust was recorded on March _____, 2006 as Document No. _____ in the Official Records of Ada County, State of Idaho.

Said Deed of Trust is hereby amended to increase the amount secured thereby from $4,925,000 to $5,225,000 to add a new Exhibit "A" (in the form attached hereto) thereto to reflect the present Beneficiaries.

Said Deed of Trust affects the real property described on Exhibit "B" hereto.

Dated this _____ day of _____, 2006.

TRUSTOR:  Franklin/Stratford Investments LLC

By: _____
    Robert A. Russell, Manager

BENEFICIARY:    USA Commercial Mortgage Company, Attorney-in-Fact

By:_____
    Joseph D. Milanowski, President

4

**EXHIBIT 3**

## FRANKLIN/STRATFORD INVESTMENTS LLC
## CONSTRUCTION RECONCILIATION

|  | Scheduled Contract Price | Paid to date | Balance Remaining |
|---|---|---|---|
| Building 1 | $    693,622.11 | $    619,902.25 | $   73,719.86 |
| Building 2 | $    626,213.82 | $    551,242.08 | $   74,971.74 |
| Building 3 | $ 1,006,954.00 | $    290,708.93 | $ 716,245.07 |
|  | $ 2,326,789.93 | $ 1,461,853.26 | $ 864,936.67 |

**EXHIBIT 4**

# AGREEMENT OF SALE

This Agreement of Sale (the "Agreement") is made and entered into by and between the Franklin/Stratford Investments LLC an Idaho Limited Liability Company ("Seller"), and SBR/PS, LLC an Idaho Limited Liability Company, its successors or assigns ("Buyer").

## ARTICLE I

### DEFINED TERMS

1.1    Definitions.  As used herein, the following terms shall have the meanings respectively indicated:

"Business Day" means any day on which business is transacted by federal banking institutions in Boise, ID.

"Closing" means the consummation of the purchase of the Property by Buyer from Seller in accordance with the terms and provisions of Article IX.

"Closing Date" means the date specified in Section 9.1 on which the Closing will be held.

"Earnest Money Deposit" means that portion of the Purchase Price deposited by Buyer in escrow with the Title Company at the time and in the form and amount specified in Section 3.2 plus any interest accrued thereon.

"Effective Date" means the date on which the last of the Buyer or Seller execute this Agreement.

"Land" means all of that certain lot, tract or parcel of land containing approximately 2.51 net acres, more or less, located at the fronting Franklin Road one lot East of Stratford Rd in the City of Boise, ID, and being more fully described in the legal description attached as Exhibit A, together with all and singular the rights and appurtenances to that Land, including, but not limited to, all water and mineral rights.

"Permitted Exceptions" means those exceptions or conditions that affect or may affect Seller's title to or use of the Property that are approved or deemed to be approved by Buyer in accordance with Section 4.1:

"Property" means the Land.

"Purchase Price" means the total consideration to be paid by Buyer to Seller for the purchase of the Property.

"Title Company" means Title One Corporation.

"Title Exception" means any lien, mortgage, security interest, encumbrance, pledge, assignment, claim, charge, lease (surface, space, mineral, or otherwise), condition, restriction, option, conditional sale contract, right of first refusal, restrictive covenant, exception, easement (temporary or permanent), right-of-way, encroachment, overlap, or other outstanding claim, interest, estate, or equity of any nature which affects the Property.

"Title Underwriter" means First American Title Company or any other Insurance company issuing an Owners Title Policy in the State of Idaho.

1.2     Other Defined Terms. Certain other defined terms shall have the respective meanings assigned to them elsewhere in this Agreement.

## ARTICLE II

## AGREEMENT OF PURCHASE AND SALE

On the terms and conditions stated in this Agreement, Seller hereby sells and agrees to convey the Property to Buyer, and Buyer hereby agrees to purchase and acquire the Property from Seller.

## ARTICLE III

## PURCHASE PRICE

3.1     Purchase Price. The Purchase Price to be paid by Buyer to Seller shall be EIGHT HUNDRED TEN THOUSAND DOLLARS ($810,000.00) The Purchase Price shall be paid at the Closing, in good funds, by wire transfer, or Cashier's check, on the Closing Date.

3.2     Earnest Money Deposit. Within two (2) business days after the Effective Date, Buyer shall deliver the Earnest Money Deposit to the Title Company, and the Earnest Money Deposit shall thereafter be held by the Title Company in escrow to be applied or disposed of by it as is provided in this Agreement. The Earnest Money Deposit shall be in the amount of $5,000.00. All interest earned shall become part of the Earnest Money Deposit to be applied or disposed of in the same manner as the Earnest Money Deposit, as provided in this Agreement. If the purchase and sale hereunder is consummated, then the Earnest Money Deposit shall be applied to the Purchase Price at the Closing. In all other events, the Earnest Money Deposit shall be disposed of by the Title Company as provided in this Agreement.

3.3 Additional Earnest Money Deposit: Upon waiver of contingencies as stated in Paragraph 4.1, 4.3 and 5.1 and Buyers election not to terminate the contract under said paragraphs, then in such event, Buyer shall place an additional Earnest Money deposit in the amount of $5,000 with the Title Company. If the purchase and sale hereunder is consummated, then the earnest money deposit amount shall apply to the purchase price at closing. In all other events, the Earnest Money Deposit shall be disposed of by the Title Company as provided in this agreement.

3.4 Payment of Purchase Price. The Purchase Price shall be payable to Seller through the Title Company in cash or other immediately available United States Federal funds at Closing.

## ARTICLE IV

## TITLE AND SURVEY

4.1 Title Commitment; Exception Documents.

(a) Seller shall deliver to Buyer within fifteen (15) days from the Effective Date) Commitment for Title Insurance (the "Commitment") for the Property, countersigned by the Title Company, as agent for the Title Underwriter, and real estate tax certification for the Property. The Commitment shall contain the express commitment of the Title Company to issue an Idaho Standard Form Owners Policy of Title Insurance to the extent permitted by Idaho law. The Commitment shall be accompanied by legible copies of all instruments that create or evidence title exceptions affecting the Property. If Buyer has an objection to items disclosed in such Commitment report or the Survey (as hereinafter defined), Buyer shall have ten (10) days after receipt of the last of such instruments to make written objections to the Seller ("Buyer's Notice"), which Buyer's Notice shall identify any matter disclosed in the Commitment or the Survey (as hereinafter defined) to which Buyer objects (the "Defects"). If Seller gives Buyer written notice (the "Seller's Notice") after Seller receives Buyer's Notice and states that Seller will not cure or remove any such Defects on or before the Closing Date, Buyer shall have the option either to: (i) to close the purchase of the Property on the terms of this Agreement by waiving such Defects, or (ii) to terminate this Agreement by delivery of written notice of such election to terminate to Seller, whereupon the Title Company shall deliver the Earnest Money Deposit in full to the Buyer and upon such delivery neither party to this Agreement shall have any further liability to the other under this Agreement.

(b) All matters disclosed on the Commitment shall be deemed to be "Permitted Exceptions" except for such exceptions as constitute Defects. Buyer's failure to send the Buyer's Notice to Seller in a timely manner shall be considered to

be Buyer's approval of all items disclosed in the Commitment and the Survey (as hereinafter defined).

**4.2 Survey**

(a) Within ten (10) days after the Effective Date, Seller shall deliver to Buyer an ALTA survey of the Property (the "Survey") currently in its possession, prepared or updated by a licensed professional surveyor reasonably approved by the Buyer and the Title Company (the "Surveyor"), showing all easements, roadways, encroachments, rights of way, etc. Seller agrees to provide Buyer at Sellers expense, copies of the final recorded plat and all engineering documents in Sellers possession.

4.3 **Title Policy**. At the Closing, Seller, at Seller's cost expense, shall cause a Standard Form Idaho Owner's Policy of Title Insurance with deletions of the Standard Exceptions (the "Title Policy") to be furnished to Buyer at the Closing. The Title Policy shall be issued by the Title Underwriter, in the amount of the Purchase Price, and insuring that Buyer has good and indefeasible fee simple title to the Property, subject only to the Permitted exceptions. The Title Policy shall contain no exceptions (other that (i) Permitted Exceptions, and (ii) the standard printed exceptions required under Idaho Law). The tax exception shall be limited to taxes for the year of Closing and subsequent years not yet due and payable and subsequent assessments for prior years due to change in land usage or ownership. Any additional coverages/endorsements that are required by the Buyer in excess of what is provided for under the cost of the Standard Form Idaho Owners Policy of Title Insurance shall be paid for by the Buyer.

**ARTICLE V**

**FEASIBILITY STUDY AND INSPECTION**

5.1 **Feasibility Study and Inspection**. Buyer is granted the right to conduct an engineering and/or market and economic feasibility study and physical inspection of all land being sold hereby (all collectively referred to as the "Feasibility Study") of the Property. Buyer shall have until 5:00 p.m., M.S.T., on the Fifteenth (15th) day after the Effective Date ("Feasibility Study Period") to perform such Feasibility Study and in this regard, Buyer or his designated agents may enter upon the Property for purposes of such analysis, or other tests and inspections which may be deemed necessary by the Buyer, to be made during normal business hours after first notifying Seller of the time and date of such study or inspection. If Buyer determines, in his sole judgment, that the Property is not suitable for Buyer's intended use or purpose, or is not in satisfactory condition, or for any reason, or for no reason whatsoever, then Buyer shall, on written notice to Seller prior to the end of the Feasibility Study Period, terminate this Agreement, and this Agreement shall be terminated and the Earnest Money Deposit shall be returned to the Buyer. If the written notice is not given to the Seller within such period, this condition and any and all objections with respect to

the Feasibility Study shall be deemed to have been waived by the Buyer for all purposes. In the event this Agreement shall not close, Buyer shall restore the Property to its original condition, if changed due to the test(s) and inspection(s) performed by the Buyer and shall provide Seller with a copy of the results of any test(s) and inspection(s) made by Buyer. The Feasibility Study shall be at the expense of the Buyer. Buyer agrees to indemnify and hold Seller harmless from and against any liens, claims, or damages, including, without limitation, any and all demands, actions or causes of actions, assessments, losses, costs, liabilities, interest and penalties, and reasonable attorneys' fees suffered or incurred by Seller as a result of Buyer's conduct of the Feasibility Study. Buyer shall repair or cause to be repaired any damages caused by Buyer's review. The indemnification obligations of the Buyer in this section shall survive the termination of this Agreement. If Buyer elects to terminate this Agreement, Buyer shall deliver copies of all reports and studies in Buyer's possession to the Seller, without representation or warranty regarding the contents of the copies or Seller's ability to use the reports.

## ARTICLE VI

## SELLER'S REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS

6.1    Representations, Warranties, covenants and Agreements by Seller. Seller herby represents and warrants, to the best of Seller's knowledge, without the duty for further investigation, to and covenants and agrees with Buyer, the following, with the understanding and intention that Buyer is relying upon the accuracy of such representations and warranties, and the agreement of Seller to comply with and perform such covenants and agreements, which representations and warranties, covenants and agreements as set forth in this Agreement shall be deemed to be made by Seller to Buyer as of the Effective Date and as of the Closing and thereafter (it being understood that such representation, warranties, covenants and agreements shall not be merged into the documents to be executed at the Closing, thus specifically surviving the Closing for a period of on (1) year from the Closing and this Agreement is contingent upon and subject to the truth and accuracy of such representations and warranties, and the full and complete satisfaction of such covenants and agreements.

     (a)    Seller shall convey to Buyer by Special Warranty Deed (the "Deed"), fee simple title to the Property, subject to the Permitted exceptions

     (b)    Seller has the full, right, power and authority to sell and convey the Property as provided in this Agreement and to carry out Seller's obligations hereunder, and that all requisite action necessary to authorize Seller to enter into this Agreement and to carry out Seller's obligations hereunder has been, or on the Closing Date will have been, taken.

(c)    Seller is not a foreign person, as that term is defined in Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended, and regulations promulgated thereunder.

(d)    As of the Closing, Seller shall have a Fee simple title to the Property, free and clear of all restrictions, liens, leases, encumbrances, rights-of way, easements, encroachments, exceptions and other matters affecting title, except for the Permitted Exceptions. Other than the Permitted Exceptions, there are no leases, subleases, surface, subsurface or aerial use agreements, tenancy arrangements, service contracts, management agreements, or other agreements, instruments or encumbrances which will be in force or effect as of the Closing that grant to any person whomsoever or any entity whatsoever, any right, title, interest or benefit in or to all or any part of the Property or any right relating to the ownership, use, operation, management, maintenance or repair of all or any part of the Property. There are not parties in possession of any portion of the Property as lessees, tenants at sufferance, trespassers of otherwise.

(e)    No person, firm or entity has any rights in, or right or option to acquire, the Property or any part thereof.

(f)    There has been no material or labor furnished for the Property for which payment has not been made and there are no mechanic's or material man's liens or claims filed against the Property, and Seller has received no notices of any claims of non-payment or claims of liens by any contractors, subcontractors, suppliers, mechanics, material men and artisans relating to the Property which claims relate to periods of time prior to the Closing.

(g)    At no time during the time period Seller has owned the Property has the Property been treated for ad valorem tax purposes under any applicable law in such a manner as to defer assessment and/or payment of taxes attributable to any period prior to Closing to a date subsequent to the Closing.

(h)    As of the Closing, there is no actual, pending, or threatened action, suit, claim, litigation or proceeding by any entity, individual or governmental agency affecting Seller or the Property which would in any way constitute a lien, claim or obligation of any kind against the Property, and there is no such action, suit, claim, litigation or proceeding contemplated. Seller agrees to indemnify and hold Buyer harmless from and against any and all debts, expenses, claims, demands, judgments and/or settlements arising there from and to prevent the filing of any liens, lis pendens, or other encumbrances against the Property as a result thereof. In the event such liens or encumbrances are so filed. Seller shall cause the same to be cancelled or discharged of record by bond or otherwise within five (5) days after written notice from Buyer.

(i)    There are no pending or threatened condemnation or similar proceedings or assessments affecting the Property or any part thereof,

nor to the best knowledge and belief of Seller, are any such assessments or proceedings contemplated by any governmental authority.

(j)    Seller is not in breach or violation of any law, statue, code, act, ordinance, rule permit license or regulation, or under any order of any court or federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, wherever located, with respect to the Property or the Seller's present use and operation of the Property, of which Seller has receive notice or otherwise has knowledge thereof, including, without limitation, those currently relating to fire, safety, environmental protection, convention, parking, architectural barriers to the handicapped, zoning and building.

(k)    There is no significant adverse fact or condition known by Seller relating to the condition of the Property, which has not been specifically disclosed in writing by Seller to Buyer.

(l)    Seller is a duly formed Limited Liability Company and validly existing under the laws of the State of Idaho, and has all requisite power and authority to carry on its business as it is now being conducted and to enter into and perform this Agreement. The execution of this Agreement, the consummation of the transactions herein contemplated, and the performance or observance of the obligations of Seller hereunder and under any and all other agreements and instruments herein mentioned to which Seller is a party have been duly authorized by a requisite action and are enforceable against seller in accordance with their respective terms. The individuals executing this Agreement on behalf of Seller are authorized to act for and on behalf of and to bind Seller in connection with this Agreement.

(m)    No Representation, warranty or statement of Seller in this Agreement or in any document, certificate, or schedule furnished, or to be available to Buyer pursuant hereto contains any misleading statements or facts or will omit to state a material fact necessary to make the statements or facts contained therein not misleading. All such representations, warranties, or statements of Seller are based upon current, accurate and complete information as of the time of their making, and there has been no material adverse change in any such information subsequent thereto.

6.2    Covenants and agreements of Seller. Seller covenants and agrees with Buyer as follows:

    (a)    Within ten (10) days from the Effective Date, Seller will deliver to Buyer, or allow Buyer reasonable access to, the Property, true copies of the following:

        (i)    All available real estate and personal property tax statements for the year prior to Closing with respect to the Land and, if received by Seller, the valuation notice issued with respect to the Land for the year of Closing

        (ii)    Copies of all surveys and Property reports in Seller's possession.

(iii) All other information concerning the Property in Sellers possession which Buyer, its attorneys, accountants or other representatives, shall reasonably request.

In the event any of the foregoing material is not delivered within ten (10) days from the Effective Date, then Buyer may terminate this agreement by notice thereof in writing to Seller, or may accept the Property with such deficiencies or unacceptable matters outstanding, or at Buyers option, the feasibility study period will be extended by one day for each day of delay in providing said materials. In the event of termination, the parties shall have no further right or obligation hereunder.

(b) From the Effective Date until the Closing Date or earlier termination of this Agreement, Seller shall maintain the Property in the same condition it was in by the Seller prior to the Effective Date of this Agreement

(c) From the Effective Date hereof until Closing, Seller shall not:

    (i) Further encumber the Property or any portion thereof, or voluntarily allow the Property or any portion thereof to be encumbered unless said encumbrances are to be discharged at closing; nor

    (ii) Enter into any leases, or other agreements of sale with respect to the Property without the express written consent of the Buyer except for "back-up" offers of sale in the event this contract is cancelled

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES OF BUYER

7.1    Representations and Warranties of Buyer. Buyer represents, warrants, covenants, and agrees with Seller as of the Effective Date and as of the Closing Date, except where specific reference is made to another date or dates, that:

    (a)    Buyer has the full right, power, and authority to purchase the Property from Seller as provided in this Agreement and to carry out Buyer's obligations under this Agreement, and all requisite action necessary to authorize Buyer to enter into this Agreement and to carry out Buyer's obligations hereunder has been, or on or before Closing, will have been taken.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO BUYER'S AND SELLER'S PERFORMANCE

8.1    Conditions Precedent to Buyer's Obligations. Buyer shall not be obligated to consummate the transaction described in his Agreement unless: '

    (a)    Seller shall have performed in all material respects its covenants and agreements pursuant to this Agreement. In addition, Seller shall not have executed any new easement with respect to the

Property. Nor shall Seller have executed without Buyer's prior written consent any new service contracts that are not cancelable by Buyer at any time after Closing upon thirty (30) days prior written notice.

(b)     All representations and warranties made by Seller hereunder shall be true, complete and accurate in all material respects as of the Closing Date (except for such representation and/or warranty, which is not true, complete and accurate in all material respects and prior to the completion of the Feasibility Study Period) either (i) learns of such untruth. Incompleteness or inaccuracy, or (ii) is notified by Seller of such untruth, incompleteness or inaccuracy.

(c)     The Title Company shall be prepared to deliver at Closing, or within a reasonable time after Closing, the Title Policy described in Section 4.3.

(d)     The physical condition of the Property is the same as it was at the end of the Feasibility Study Period except that there is currently a detention basin on the property servicing another development of the Seller. Seller is moving this detention basin off the property and shall be regrading that portion of the site affected by the current location of said detention basin. Seller warrants that the detention basin will be moved and regraded prior to the closing date.

8.2     Termination if Condition Precedent not satisfied or Waived. If any of the conditions precedent to the performance of Buyer's obligations under this Agreement have not been satisfied, waived, or deemed waived by Buyer on the Closing Date, then Buyer may, at its option, by written notice delivered to Seller, terminate this Agreement, in which event the Earnest Money Deposit shall be returned to Buyer (except as herein expressly provided) and Buyer and Seller shall have no further obligations, on to the other, with respect to the subject matter of this Agreement.

## ARTICLE IX

## CLOSING

9.1     Date and Place of Closing. The Closing shall take place in the offices of the Title Company unless otherwise specified by Buyer. The Closing Date shall take place Fifteen (15) days after the satisfactory completion of the Feasibility Study, or an earlier date as is mutually agreed on in writing by Seller and Buyer.

9.2     Items to be Delivered at the Closing.

(a) Seller. At the Closing, Seller shall deliver or cause to be delivered to Buyer the following items:

   (i)   The Deed duly executed by Seller and acknowledged, subject to the Permitted Exceptions

   (ii)  An affidavit in compliance with section 1445 of the Internal Revenue Code of 1986, as amended, and any regulations promulgated hereunder, stating the Seller's United States identification number and that Seller is not a "Foreign person" as that term is defined in Section 1445, duly executed by Seller and acknowledged;

   (iii) Evidence of appropriate authorization, for (x) the sale of the Property in accordance with this agreement, (y) the execution and delivery of this Agreement on behalf of Seller, and (z) the consummation of the Transactions contemplated by this Agreement on behalf of Seller; and

   (iv)  Other items reasonably requested by the Title Company as administrative requirements for consummating the Closing.

(b) Buyer. At the Closing, Buyer shall deliver or cause to be delivered to seller or the Title Company;

   (i)   The cash sum required by Section 3.1;

   (ii)  Evidence of appropriate authorization, satisfactory to Seller and the Title Company, in their reasonable discretion, for (x) the purchase of the property in accordance with this Agreement, (y) the execution and delivery of this Agreement on behalf of Buyer, and (z) the consummation of the transactions contemplated by this Agreement on behalf of Buyer; and

   (iii) Other items reasonably requested by the Title Company as administrative requirements for consummating the Closing.

9.2 Prorations. Assessments, current taxes, and any rents, and maintenance fees shall be prorated to the date of Closing. If ad valorem taxes for the year in which the sale is closed are not available on the Closing Date, proration of taxes shall be made on the basis of taxes assessed in the previous year, with subsequent cash adjustment of such proration to be made between Seller and Buyer, if necessary, when actual tax figures are available. Any special assessments applicable to the Property for improvements previously made to benefit the Property shall be paid by the Seller. All costs of releasing existing loans and recording the releases, Owners Title Policy, tax statements, preparation of deed, other expenses stipulated to be paid by Seller under other provisions of this Agreement shall be paid for by the Seller. All escrow fees of

the Title Company, copies, of restrictions, easements, reservations or conditions affecting the Property, cost of the Survey, and other expenses stipulated to be paid by the Seller under the provisions of this Agreement shall be paid for by the Seller,

9.3    Possession at Closing. Possession of the Property shall be delivered to Buyer by Seller at the Closing, free and clear of any liens, encumbrances that have not been approved by the Buyer, and free and clear of any and all tenants.

9.4    Costs of Closing. Each party is responsible for paying the legal fees of its counsel in negotiating, preparing, and closing the transaction contemplated by this Agreement. Seller is responsible for paying fees, costs, and expenses identified herein as being the responsibility of Seller. Buyer shall be responsible for paying fees, costs and expenses identified herein as being the responsibility of Buyer, including the additional premium for any deletion from the Title policy. All other expenses shall be allocated between the parties in the customary manner for closings of real property similar to the property in the area in which the Property is located.

## ARTICLE X
## DEFAULTS AND REMEDIES

10.1    Seller's Default; Buyer's Remedies.

(a)    Seller's Default. Seller is in default under this Agreement if any one or more of the following shall occur and remain uncured and unsatisfied for ten (10) days after Seller's receipt of specific written notice from Buyer thereof;

(i)    Seller fails to meet, comply with, or perform in any material respect any covenant, agreement, or obligation on Seller's part required within the time limits and in the manner required in this Agreement; or

(ii)    If seller fails to consummate this Agreement for any reason except Buyer's default hereunder or the termination of this Agreement by Buyer or Seller pursuant to a right granted under the terms and provisions hereof.

(b)    Buyer's Remedies. If Seller is in default hereunder, Buyer shall, as Buyer's sole and exclusive remedy, have any one or more of the following, but only the following (Buyer waives and releases all other remedies):

(i)    Terminate this Agreement by written notice delivered to Seller on or before the Closing Date, in which event the Earnest money Deposit shall be returned to Buyer and Buyer is reimbursed all its actual costs incurred during the feasibility study by the Seller.

        (ii)    Enforce specific performance of this Agreement against
Seller.

10.2    Buyer's Default: Seller's Remedies

    (a) Buyer's Default. Buyer is in default under this Agreement if
any one or more of the Following shall occur and remain
uncured for ten (10) days after Buyer's receipt of specific
written notice from Seller thereof.

    (i)    Buyer fails to meet, comply with, or perform in any material
respect any covenant, agreement, or obligation on Buyer's
part required within the time limits and in the manner
required in this Agreement; or

    (ii)    If Buyer fails to consummate this agreement for any reason
except Seller's default hereunder of the termination of this
Agreement by Buyer or Seller pursuant to a right granted
under the terms and provisions hereof.

    (b) Seller's Remedies. If Buyer is in default under this agreement,
Seller may terminate this Agreement and receive the Earnest
Money Deposit form the Title Company, as the Seller's sole
and exclusive remedy. Buyer and Seller hereby acknowledge
and agree that Seller's damage in the event of default by the
Buyer would be difficult or impossible to determine and the
Earnest Money Deposit is the Parties' best and most accurate
estimate of the damages Seller would suffer in the event the
transaction provided for in this Agreement fails to close by
reason of default by the Buyer. Seller waives and all other
remedies, at law or in equity.

    (c) Payment of earnest Money Deposit. Upon the occurrence of
any event deemed to be a default by Buyer hereunder, the
Earnest Money Deposit shall be forthwith tendered by the Title
Company to Seller. Buyer shall, promptly on written request
from Seller, execute and deliver any documents necessary to
cause the Title Company to deliver the Earnest Money Deposit
to Seller. Failure to deposit the Earnest Money Deposit with
the Title Company within two (2) business days after the
Effective date hereof, the Seller shall have the right to
terminate this Agreement.

## ARTICLE XI
## BROKERAGE COMMISSIONS

11.1    Colliers International represents the Buyer. Seller is represented by Gary
Buentgen of Intermountain Commercial Real Estate. The Seller agrees to pay a real

estate commission in the amount of three percent (3%) of the gross sales price to Colliers International out of the closing proceeds and three percent (3%) of the gross sales price to Intermountain Commercial Real Estate out of the closing proceeds. Robert A. Russell is a licensed real estate broker in Arizona and New Mexico and is the Manager of the Seller. The Seller is 100% owned by family members of Russell.

## ARTICLE XII

## MISCELLANEOUS

12.1     Notices. All notice Demands, requests, and other communications required or permitted hereunder shall be in writing, and shall be deemed to be delivered on receipt if delivered by hand delivery, or whether actually received or not, upon the deposit of both the original and the copy, as provided blow, with the Federal Express Corporation or in a regularly maintained receptacle for the United State mail, registered or certified, return receipt requested, postage prepaid, addresses as follows:

If to Buyer:

Carl Gerber
Industrial West Group
2430 Midtown Place NE
Albuquerque, NM
Fax 505-343-1183
Carl@industrialwest.com

With a copy to:

If to Seller:

Robert A. Russell
Russell AD Development Group LLC
8585 E. Hartford Dr
Suite 500
Scottsdale, AZ 85255
Fax 480-505-4049
r.russell@equityadvisorsgroup.com

12.2     Governing Law.     This Agreement is being executed and delivered, and is intended to be performed, in the State of Idaho, and the laws of Idaho shall govern the validity, construction, enforcement, and interpretation of this Agreement, unless otherwise specified herein. This Agreement is performable in,

and the exclusive venue for any action brought with respect hereto, shall lie in, Ada County, Idaho.

12.2   Entirety and Amendments. This Agreement embodies the entire agreement between the parties and supersedes all prior agreements, representations or warranties, and understandings, if any, relating to the property, and may be emended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

This Agreement is binding on and insures to the benefit of Seller and Buyer, and their respective heirs, executors, administrators, successors and assigns.

12.3   Further Acts. In addition to the acts and deeds recited in this Agreement and contemplated to be performed, executed, and/or delivered under this Agreement, Seller and Buyer agree to perform, execute, and/or deliver or cause to be performed, executed and/or delivered at the Closing or after the Closing all further acts, deeds and assurances reasonably necessary to consummate the transactions contemplated hereby.

12.4   Multiple Counterparts. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same agreement, and any of the parties to this agreement may execute the Agreement by signing any of the counterparts.

12.5   Time of the Essence. It is expressly agreed by Seller and Buyer that time is of the essence with respect to this Agreement.

12.6   Exhibits. The Exhibits which are referenced in, and attached to, this Agreement are incorporated in, and made a part of, this agreement for all purposes.

12.7   Assignment. This Agreement is assignable by Buyer.

12.8   Attorneys' Fees. If either party hereto employs an attorney to enforce or defend its rights hereunder, the prevailing party shall be entitled to recover its reasonable attorneys' fees

12.9   Disclosures.

12.10   Offer. If this Agreement is not executed and delivered to the Title Company by 5:00 p.m. Boise, MDT time on the 3rd day of May, 2006, this offer shall terminate.

Executed by Seller on the ____
Day of _May 19_, 2006

SELLER:

Franklin/Stratford Investments LLC

By: _____
(Name): Robert A Russell
(Title): Manager

BUYER:

Executed by Buyer on the 7
Day of _may_, 2006

SBR/FS, LLC

By: _____
(Name): Carl Gerber
(Title): Manager