LAUREL E. DAVIS, ESQ., Nevada Bar No. 3005
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV  89101
Telephone:  (702) 383-8888
Facsimile:  (702) 383-8845
Email:  Ldavis@lionelsawyer.com

E-Filed on June 13, 2006

Attorneys for SCOTT K. CANEPA

## UNITED STATE BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>    Debtor.<br>_____ | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>    Debtor.<br>_____ | Chapter 11<br><br>**Jointly Administered Under**<br>**Case No. BK-S-06-10725-LBR** |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>    Debtor.<br>_____ | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>    Debtor.<br>_____ | |
| In re:<br>USA SECURITIES, LLC,<br>    Debtor.<br>_____ | |
| Affects:<br>  [ ]  All Debtors<br>  [x]  USA Commercial Mortgage Company<br>  [ ]  USA Securities, LLC<br>  [ ]  USA Capital Realty Advisors, LLC<br>  [ ]  USA Capital Diversified Trust Deed Fund, LLC<br>  [ ]  USA First Trust Deed Fund, LLC | Date:   June 15, 2006<br>Time:   10:00 a.m. |

**REPLY IN SUPPORT OF**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**TO TERMINATE LOAN SERVICING AGREEMENT**
**FOR DIRECT LOAN TO BOISE/GOWAN, LLC**

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

SCOTT K. CANEPA, a Direct Lender holding over 51% of the beneficial interest in the promissory note secured by deed of trust signed by BOISE/GOWAN, LLC ("Boise/Gowan"), submits these reply points and authorities, accompanying Supplemental Declaration and attached Exhibits in support of his motion for relief from the automatic stay (Docket Entries "DE" 292, 293) to terminate the Loan Servicing Agreement with respect to the Boise/Gowan loan which has the support of the Official Committee of Executory Contract Holders ( DE 406), and was opposed by USA Commercial Mortgage Company ("USA Commercial") (DE 468); Donna Cangelosi (DE 503), and by the USA Commercial Official Committee of Unsecured Creditors (DE 566).

## POINTS AND AUTHORITIES

### A.    SUMMARY OF ARGUMENT

Mr. Canepa's Direct Loan to Boise/Gowan is unique and well insulated from the deluge of "potential issues" and loan "irregularities" raised by USA Commercial regarding the loan portfolio. Boise/Gowan is the only existing Direct Loan made by Mr. Canepa in his name that is serviced by USA Commercial. The Boise/Gowan loan is listed by USA Commercial as a performing loan, and all 17 of the Direct Lenders in the Boise/Gowan loan are third parties, consisting of 17 persons and entities that do not include any of the debtors before this Court. *See* accompanying Supplemental Declaration of Scott Canepa ("Suppl. Decl.") ¶ 3. Hence, even if USA Commercial were justified in its efforts to somehow withhold payment due Mr. Canepa on the Boise/Gowan loan based upon inchoate causes of action, alleged setoff or other rights – which alleged "rights" are vehemently opposed here and in response to the Motion to Hold Funds – USA Commercial lacks the requisite factual basis upon which to assert those claims.

This Court is not required to reach the fine points of whether or not 51% of the dollar amount or 51% of the number of beneficial interest holders under Paragraph 3 of the Loan Servicing Agreement and NAC 245B.073, raised by USA Commercial's inaccurate interpretation of the contract and Administrative Code Section and characterized by the Committee as "obvious" reasons to deny this Motion in its untimely opposition. Mr. Canepa's Motion, proposed termination of the Loan Servicing Agreement and transfer to a new loan servicing agent of the Boise/Gowan loan has the support and consent of 10 of the 17 holders of beneficial interests, who represent $1,910,000 of

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-1-

the $2,425,000 loan amount. Suppl. Dec. ¶11 and Exhibit L. This means that more than 51% of the holders with over 75% of the loan amount support the Motion, proposed contract termination and transfer of the loan to a new loan servicing agent. *See* Exhibit L to Supplemental Canepa Declaration in Support. What is "obvious" is that both interpretations of the 51% requirement are amply satisfied, indeed exceeded.

In order to grant this Motion, the Court is likewise not required to construe the Loan Servicing Agreement's termination provisions, determine whether or not USA has, in fact, breached the Agreement, reach the ridiculous arguments that granting the Motion might result in the employment of several different loan servicing agents for the Boise/Gowan loan or that Mr. Canepa, who is far from judgment-proof, has the darker motive of filing future motions to terminate non-performing loans to avoid his presumed "liability" for repayment of funds USA Commercial claims were erroneously made to Direct Lenders. These and similar arguments proceed on the erroneous and unsupported assumption that USA Commercial has the unquestioned right to retain money belonging to third parties that it collected and currently holds until some time after it determines the dollar amounts which it will unilaterally withhold as compensation for its pre-petition "irregularities." These arguments persist, despite the admission that post-petition funds are not commingled and post-petition tracing issues do not exist. USA must first establish the prequisite factual and legal bases that remain conspicuously absent from its Motion to Hold Funds and its opposition to this Motion, and are not available in a Contested Matter, without due process of law or satisfying Fed.R.Bankr.P. 7001, 7064, 7065 or Nevada state law on writs of attachment.

Mr. Canepa has satisfied his burden of proof of "cause" for relief from stay by demonstrating a "colorable basis" to terminate the Loan Servicing Agreement, which he is not permitted to unilaterally terminate without violating the automatic stay. Mr. Canepa's proposed termination of the Boise/Gowan Loan Servicing Agreement has the support of a recent opinion issued by the Nevada Mortgage Lending Commission, Suppl. Decl. Exhibit O, which this Court should adopt. Finally, Mr. Canepa has also established sufficient "cause" to terminate the Loan Servicing Agreement and move the Boise/Gowan loan to a new loan servicing agent, even though he need not do so to prevail on the Motion. "Cause" for relief from stay and "cause" to terminate the Loan

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-2-

Servicing Agreement have both been amply proved, and the Motion must therefore be granted.

### B. LEGAL ARGUMENT

#### 1. USA Commercial Holds a Very Limited Property Interest

At the outset, the Court and counsel must have a clear focus of what is, and more importantly for this Motion, what is not, "property of the estate" as defined by the Bankruptcy Code, and the scope of the automatic stay. Property of the USA Commercial estate here consists solely of its: (1) contract rights in the Loan Servicing Agreements;[1] and (2) the proceeds of those rights, to-wit: (a) fees for brokering loans; and (b) fees for servicing loans. The nearly one billion dollar loan portfolio itself, and more pertinent to this Motion, the $2,425,000 in principal loaned by the Direct Lenders to Boise/Gowan, the interest reserve established by the loan,[2] and the interest due and received on behalf of the Direct Lenders, albeit collected and presently held by USA Commercial, are clearly not property of the estate, but property of third parties merely in the possession of the debtor. Consequently, USA Commercial holds Direct Lender funds without legal title;[3] it has only physical

---

[1] The Loan Servicing Agreements are executory contracts under the Countryman definition. See In re Select-A-Seat Corp., 625 F.2d 290 (9th Cir. 1980). See also Loan Servicing Agreement, Canepa Declaration, DE 293, Exhibit E, USA Executory Obligations (¶2 service loans, ¶4 assist lender in legal proceedings, ¶5 retain fees and assist in sale of lender interest, and ¶11 perform under powers of attorney) and Lender Executory Obligations (¶2(e) consent to or oppose USA Commercial's proposed increases in principal amount or maturity date, ¶3 rights in the event of default, ¶8 termination rights, and ¶11 grant/deny initial and subsequent powers of attorney to USA Commercial). Assumption under § 365 requires a cure of both pre- and post-petition defaults, In re Emerald Forest Construction, Inc., 226 B.R. 659 (Bankr. D. Mt. 1998), and the contract itself must either be rejected as a whole or assumed as a whole, Id., citing In re Caravansary, Inc., 67 B.R. 469, 473 (9th Cir. BAP 1986). Consequently, existing defaults must be cured and each executory contract must be formally "assumed" as a whole in accordance with 11 U.S.C. §§365(a) and 365(b)(1) before USA Commercial can rely upon any Loan Servicing Agreement or its proceeds as property of the estate. See e.g., In re Lovitt, 757 F.2d 1035 (9th Cir. 1985) (executory contract is not property of the estate until assumed pursuant to Section 365); and In re Qintex Entertainment, Inc., 950 F.2d 1492 (9th Cir. 1991) (same).

[2] Project Disbursement Group, Inc. ("PDG") holds the interest reserve for the Boise/Gowan loan, and it is unclear whether or not those funds are in the possession of PDG or USA Commercial. However, PDG seeks only an order of the Court to transfer those funds to USA Commercial, or if this Motion is granted, to a new servicing agent. See DE 324, 510 and 535.

[3] Because the Notes and Deeds of Trust on Direct Loans are held in the names of the Direct Lenders, Legal Title is not an issue. However, Direct Investors in Case Nos. BK-S-06-10727

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-3-

1  possession.

2  Section 541(a)(1) of the Bankruptcy Code defines a debtor's bankruptcy estate as comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Although federal law defines what is and is not property of the bankruptcy estate, *see* Chicago Board of Trade v. Johnson, 264 U.S. 1 (1924), "[p]roperty interests are created and defined by state law" and "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 55 (1979). Property comes into the estate only to the extent of the debtor's interest, subject to any pre-petition limitations. *Accord,* Matter of TTS, Inc., 158 B.R. 583, 585 (D. Del. 1993) *citing* Universal Bonding v. Gittens & Sprinkle Enterprises, Inc., 960 F.2d 366, 371 (3d Cir. 1992). "[T]he rule is elementary that the estate succeeds to only the title and rights in the property that the debtor possessed." The debtor's "right to those monies did not change the moment that [the debtor] filed its bankruptcy petition." *Id*.

Here, USA Commercial is merely a conduit for payment of funds to the Direct Lenders with a contractual right to charge a servicing fee, just like the servicing agent in the BAP decision of In re Golden Triangle Capital, Inc., 171 B.R. 79 (9th Cir. BAP 1994). Funds collected by USA Commercial therefore "never became property of the estate" because USA Commercial is "only a conduit for the funds; except for its nominal fee," USA Commercial "never had rights in the funds." Golden Triangle, 171 B.R. at 82-83. *See also* In re Golden Plan of Calif., Inc., 829 F.2d 705, 707-9, n.1 (9th Cir. 1987) (notes and trust deeds are owned by lenders named as payees and beneficiaries, not servicing agent); In re DVI, Inc., 305 B.R. 414, 417 (Bankr. D. Del. 2004) (debtor who originated and sold loans, in its current role of servicing agent did not hold legal or equitable title to amounts owed on loans); In re Cheqnet Sys., Inc., 246 B.R. 873 (Bankr. E.D. Ark. 200) (as collection agent, debtor held only possession of proceeds of checks and "property of the estate" existed only for the $7 per check fee charged by debtor); and In re Rine & Rine Auctioneers, Inc., 74 F.3d 854, 857 (8th Cir. 1996) (proceeds of property held by debtor as agent is not treated as

---

and 06-10728 herein, may face this issue. *See* In re Lemmons & Associates, 67 B.R. 198, 208-209 (Bankr. D. Nev. 1986).

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-4-

property of debtor's estate).

## 2. General Equitable Principles Cannot Expand that Property Interest

The Court's general powers under 11 U.S.C. § 105 do not somehow expand the property rights of an entity once it files for chapter 11 relief and becomes a debtor in possession. Section 105(a) of the Bankruptcy Code gives the court equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It has long been recognized that "Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.' " FDIC v. Colonial Realty Co., 966 F.2d 57, 59 (2d Cir.1992) *quoting* Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, (1988)). It does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir.1986).

In considering a relief from stay motion, the Court should be careful to avoid an expansive interpretation of "property of the estate" in an effort to convert non-core, related state law issues into a core proceeding and to avoid implicating constitutional concerns. In re Tucson Estates, Inc., 912 F.2d 1162, 1167-69 (9th Cir. 1990), *citing* In re Castlerock Properties, 781 F.2d 159, 162 (9th Cir. 1986) (state law contract claims raised by way of counterclaim are non-core, related claims, not core). *Accord,* In re Conejo Enterprises, Inc., 96 F.3d 346, 353-4 (9th Cir. 1996), *majority and dissent* (filing proof of claim may waive right to jury trial, but it does not convert a non-core proceeding into a core proceeding).

Each of these principles applies with equal force here to demonstrate the lack of authority which justifies the amorphous "equitable relief" and request for an impermissible "roving commission to do equity" sought by USA Commercial in its Motion to Hold Funds, opposition to this Motion, blatant post-petition breaches of the Loan Service Agreements and complete failure to recognize and perform its contractual and statutory fiduciary duties. There is no State or Federal statute or case which authorizes USA Commercial to perform only the provisions of the Loan Service Agreements that it wants to and then breach with impunity those that it does not, while remaining in possession of millions of dollars of third parties' property until the "full and complete

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-5-

facts are known," without satisfying the most basic principles of fairness or due process of law under the guise of preserving setoff rights which cannot be unilaterally exercised outside the context of an appropriate adversary proceeding brought pursuant to Fed.R.Bankr.P. 7001.[4] Extensive forensic accounting work may be necessary and appropriate here, based upon the pre-petition "irregularities" committed by debtors' former management and readily admitted by debtors' current management. However, retention of millions of dollars in the <u>property</u> of third parties until this work is completed and to somehow secure a right to repayment by offset or other basis for withholding payment by USA Commercial is wholly inappropriate and not sanctioned by State or Federal law.

   **3.    Relief from Stay is Necessary to Terminate the Loan Servicing Agreement, Obtain Possession of the Boise/Gowan Loan Documents, Financial Records and Funds for Delivery to the New Agent**

Section 362 of the Code "gives the bankruptcy court wide latitude in crafting relief from the automatic stay." <u>In re Kissinger</u>, 72 F.3d 107 (9th Cir. 1995) (bankruptcy court had power to grant relief from stay retroactive to date of jury verdict), *citing* <u>In re Schwartz</u>, 954 F.2d 569, 571 (9th Cir. 1992). Actions taken in violation of the automatic stay are void, not voidable, <u>Schwartz</u>, 954 F.2d at 571, and efforts to terminate an executory contract with a debtor-in-possession, regardless of whether it is assumable, without first obtaining relief from the automatic stay are met with severe sanctions, <u>In re Computer Communications</u>, 824 F.2d 725 (9th Cir. 1987) (unilateral contract termination met with judgment for $4,750,000 in general and $250,000 in punitive damages). A third party must therefore obtain relief from stay prior to terminating an executory contract with a debtor-in-possession.

Even if certain property in the debtor's possession is not "property of the estate," but is

---

[4] Indeed, post-petition, USA Commercial has been careful to segregate and account for Direct Lender Funds in its possession (and in its constructive possession through escrow agents), thereby eliminating commingling or tracing issues inherent with many of the cases it has cited. This removes concerns that interpleader regarding post-petition funds might be necessary, or that some other more involved proceeding might be required. USA Commercial holds Direct Lender funds in trust for their benefit, in an identifiable *res*, and there is no "out of trust situation" which would provide any basis upon which to engage in a collective process such as that in the <u>Lemmons</u> case cited *supra*. At most, USA Commercial holds a chose in action arising from pre-petition claims against Direct Lenders who were allegedly overpaid pre-petition. Those claims are not dependent upon retaining possession of the funds collected post-petition.

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-6-

instead property of a third party, the automatic stay still applies because the third party's property is in the possession of the debtor. Subsection 362(a)(3) of the Bankruptcy Code provides that the filing of a chapter 11 petition operates as a stay of "[a]ny act to obtain possession of property of the estate or of property from the estate." [Emphasis added.] "The operation of the automatic stay does not depend on the debtor having either a legal or equitable interest in the property, but applies to property merely in the debtor's possession at the time of filing, and remains in effect until and unless the debtor abandons such property or relief from the stay is sought." In re Turbowind, Inc., 42 B.R. 579 (Bankr. S.D. Calif. 1984); *citing* In re Zartun, 30 B.R. 543 (9th Cir. BAP 1983).

### 4. "Cause" Exists for Relief from Stay

"Although § 362(d)(1) more commonly comes into play when the court is called upon to consider the rights of secured creditors, it is not limited to those situations." In re Consolidated Industries Corp., 330 B.R. 227, 233 (Bankr. N.D. Ind. 2001), *citing* In re Hinders, 22 B.R. 810, 811-12 (Bankr. S.D. Ohio 1982). The Bankruptcy Code's only suggestion of what "for cause" stands for is "lack of adequate protection"[5] of a creditor's interest. *See* 11 U.S.C. § 362(d)(1). Other than lack of adequate protection, "cause" under § 362(d)(1) has no "clear definition and is determined on a case-by-case basis." In re Conejo Enterprises, Inc., 96 F.3d at 352, *citing* In re Tucson Estates, Inc., 912 F.2d at 1166. "The legislative history of § 362(d) elucidates, as follows: ... The lack of adequate protection of an interest in property ... is only one cause for relief, but not the only cause. ... The facts of each request will determine whether relief is appropriate under the circumstances." Hinders, 22 B.R. at 811-812.

The Consolidated Industries case is instructive here. In Consolidated, the former parent of a corporate chapter 7 debtor filed an adversary complaint seeking a declaration of its rights under a contract for sale of the debtor's stock to a third party, based upon the third party's material breaches

---

[5] Although Mr. Canepa is not a creditor of USA Commercial, he does hold a property interest which lacks adequate protection – Mr. Canepa's "cash collateral" consisting of the funds on deposit in the USA Commercial DIP account (or the PDG escrow) to which both Mr. Canepa (Direct Loan proceeds, interest and principal) and USA Commercial (servicing fee) both have an interest, §§ 363(a), 361. Mr. Canepa has objected to USA Commercial's use of his cash collateral, § 363(c)(2)(A), and USA Commercial does not have an order authorizing use of that cash collateral, § 363(c)(2)(B).

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-7-

in failing to reimburse the debtor's former parent, Endois, for costs incurred in maintaining products liability insurance for the debtor, Consolidated, for a period of three years. Consolidated, 330 B.R. 229-30. The Court next examined Indiana law on breach of contract, suspension of performance in the face of a material breach of contract and the need for a non-breaching party to mitigate damages, and concluded that "but for" the bankruptcy filing of Consolidated, the former parent of Consolidated would be justified in refusing to perform its contractual obligations and it would be able to take action to cancel the insurance policy. 330 B.R. 231-32. However, "[b]ecause they provide coverage for the debtor, that insurance represents property of the bankruptcy estate and the automatic stay prevents Endois from taking any action to exercise control over such property." Id. The Court then properly characterized the adversary complaint as a request for "relief from the automatic stay so that Endois can be free to enforce its rights under non-bankruptcy law." 330 B.R. 232-33.

While acknowledging the very unique factual situation with which it was presented, in analyzing "cause" for relief from stay under §362(d)(1), the Consolidated court found similarities between Endois' position and that of a secured creditor facing the continued decline in the value of its collateral. The Court recognized that Endois' was subjected to continuing losses in an ever increasing amount "seemingly without limit," thrusting Endois into the position of a creditor with a pre-petition line of credit who is forced to continue to provide loans post-petition despite the prohibition of § 365(c)(2) against assumption of an executory contract to make a loan. 330 B.R. 233-34. Although the Consolidated court was quick to recognize that § 365(c)(2) does not "directly address the issue before it, the policy it represents – that, after bankruptcy, a creditor should not be required to continue to lend money to a debtor – does offer some illumination," finding that Enodis' continued payment of premiums for the benefit of the debtor without reimbursement placed Endois in the position of being forced to loan money to the debtor, post-petition, "after § 365(c)(2) indicates that Congress was not willing to permit this." Id. See also In re Sun Runner Marine, Inc., 945 F.2d 1089 (9th Cir. 1991).

The Consolidated court then concluded that reading §§ 362(d)(1) and 365(c)(2) together "reveal[s] an underlying policy that a creditor's potential losses should not increase during a bankruptcy proceeding, but should, instead be fixed as of the date of the petition." 330 B.R. 234.

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-8-

Applying this underlying policy to the facts before it, the court reasoned by analogy that Endois' increasing obligations to pay premiums for the benefit of the debtor resulted in a forced loan that increased Endois' exposure in a fashion that was similar to that of a secured creditor whose collateral is declining in value. The court then concluded that Endois was entitled to relief from stay in order to minimize its continuing losses by "exercising its opportunity to cancel the insurance policies generating them." *Id*.

Notwithstanding the fact that the Consolidated court engaged in a lengthy examination of Indiana contract law in reaching its decision, the court was careful to delineate that the moving party's [Endois'] burden of proof was limited to establishing that it has a "'colorable claim' concerning the opportunity" to cancel the insurance policies. The court made no ruling with respect to the merits of whether or not Endois may actually succeed in canceling the policies. "The court holds only that [Endois] has established a colorable claim that it may do so." 330 B.R. 233. In doing so, the Consolidated court recognized the long-standing rule that motions for stay relief are summary proceedings, In re Johnson, 756 F.2d 738, 740 (9th Cir.1985), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), and stay litigation is confined to the issues of "'lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay.' " Computer Communications, 824 F.2d 725, at 729 (9th Cir. 1987), quoting legislative history; Johnson, 756 F.2d at 740 (the "validity of the claim or contract underlying the claim is not litigated during the hearing"); In re Wade, 115 B.R. 222, 230 (9th Cir. BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991) ("the assertion of counterclaims in relief from stay litigation is improper").

    **5.  Canepa Has Established a Colorable Claim Constituting "Cause"**

Application of these principles and policies to this Motion demonstrates that Mr. Canepa should be given his opportunity to cancel the Boise/Gowan Loan Servicing Agreement, especially in light of the overwhelming support of 10 of the 17 holders of Direct Loans totalling $1,910,000 of the $2,425,000 Boise/Gowan loan. *See* Suppl. Decl. ¶ 11, Exhibit L. "But for" the chapter 11 petition filed by USA Commercial, Mr. Canepa and the 16 other Direct Lenders to Boise/Gowan would: (1) be able to exercise their contractual rights to terminate the Loan Servicing Agreement;

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-9-

(2) not be required to expend funds to retain counsel and appear in the USA Commercial bankruptcy case to protect their rights and recover their property held by USA Commercial; (3) not be subjected to potential further expense as an involuntary lender to USA Commercial by the possible surcharge or charge back of the costs of administration of the USA Commercial case, including professional fees such as the Hilco appraisal objected to by Mr. Canepa; and (4) not suffer damages resulting from the unilateral breach of USA Commercial's duties under the Loan Servicing Agreement and Nevada law.

Contrary to USA Commercial's opposition, Mr. Canepa does not need to prove the underlying facts which justify his termination of the Loan Servicing Agreement. Unlike the lengthy and interesting yet inapposite case of Matter of Holly's Inc., 140 B.R. 643 (Bankr. W.D. Mich. 1992), Mr. Canepa is not a secured creditor of the debtor, holding a perfected security interest in all of the assets of the estate (a Holiday Inn in Grand Rapids, Michigan), seeking relief from stay to appoint a receiver and foreclose on the hotel within two months after the filing of a chapter 11 petition, based upon breaches arising from mismanagement and violation of a subordination agreement which prevented payment of management fees prior to the secured loan. Nor is Mr. Canepa attempting to demonstrate that the USA Commercial chapter 11 case should be dismissed on grounds of a bad faith filing, as was argued in In re Forest Ridge, II Ltd. Partnership, 116 B.R. 937, 946 (Bankr. W.D.N.C. 1990), by the undersecured creditor of a 330 unit apartment complex who failed to properly perfect its security interest in rents and failed to sustain its burden of proving "cause" arising from post-petition mismanagement in the face of a 10% increase in occupancy post-petition. Mr. Canepa is not required to prove, and this Court is not required to determine, the underlying merits of whether or not Mr. Canepa can terminate the Loan Servicing Agreement. Mr. Canepa has amply satisfied his burden of proving that he has a "colorable claim" to terminate the Loan Servicing Agreement, with overwhelming support under either interpretation of the 51% requirement, sufficient to establish "cause" for relief from stay.

**6.  The Balance of Hardships Tips in Favor of Granting the Motion**

Contrary to the arguments of USA Commercial and the untimely and non-specific opposition filed by the USA Official Unsecured Creditor's Committee, as demonstrated by this Motion, the

Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Phone 702.383.8888
Fax 702.383.8845

-10-

balance of hardships favor Mr. Canepa and the other Direct Lenders to Boise/Gowan. They are not creditors. USA Commercial is their agent with limited powers, yet it continues its unjustified refusal to perform its contractual and statutory fiduciary duties, pursuant to a license obtained from and regulated by the State of Nevada. <u>Most of the Direct Lender money held by USA Commercial belongs to similarly situated third parties. It is not property of the estate</u>. Mr. Canepa and the Boise/Gowan Direct Lenders are not willing participants in a collective bankruptcy process designed to benefit debtors and creditors alike, fostering the joint policies of debtor rehabilitation and orderly liquidation or reorganization, and general bankruptcy principles therefore provide no solace. While the Bankruptcy Code and process may include "inevitable, minimal and bearable delay" for creditors of the estate, those justifications do not apply here. No comfort or protection is gained from the fact that an investigation has been undertaken by new management, Mr. Allison and Meisrow, who are competent forensic accountants but undertake those efforts as independent contractors of the debtors, and they do so without the expansive powers or bonded protections of a receiver, bankruptcy examiner or bankruptcy trustee. As a debtor-in-possession and fiduciary under the Loan Servicing Agreement who license is granted and regulated by Nevada law, holding millions of dollars of other people's money, outside the scope of an adversary proceeding, without injunction, bond or writ of attachment is in clear violation of State and Federal law, and there is simply no bankruptcy exception, "roving commission to do equity" or overriding justification to violate those authorities.

With the above-cited case authority and principles firmly in mind, an analysis in dollars and cents of the respective property interests implicated by this Motion is instructive and demonstrates that the Direct Lenders have considerably more at stake in this Motion than does USA Commercial. Much has been made of the potential loss of revenue to the bankruptcy estate if the Boise/Gowan Loan Servicing Agreement is terminated by the Direct Lenders. Under Paragraph 5 of the Loan Servicing Agreeement, Canepa Decl., <u>Exhibit E</u>, ¶ 5, USA Commercial is entitled to collect: (a) a loan servicing "which <u>shall not exceed</u> one percent (1%) [for Mr. Canepa, or in some instances three percent (3%)] per annum of the maximum principal amount of each of the Loans," any late charges and default interest under the Note; (b) a fee of five percent (5%) for handling the sale and transfer of a Direct Loan; and (c) if a loan extension is negotiated, a fee to the <u>borrower</u> per their separate

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-11-

agreement, all of which is then <u>qualified</u> by the following statement: "it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower." Canepa Decl.(DE 293) <u>Exhibit E</u>, ¶ 5 (emphasis added). *See also* Supp. Decl., <u>Exhibits H, F</u>.

However, during USA Commercial's course of performance of its duties as the loan servicing agent on the Boise/Gowan loan, USA has <u>not</u> taken even a full one percent loan servicing fee. It has, in fact, restricted the Boise/Gowan loan servicing fee to $12,125, or about $1,010 per month. USA has accepted the difference between the Promissory Note interest rate of 12.5% (<u>Exhibit E</u>) and the guaranteed return to investors rate of 12% (<u>Exhibit N</u>) as its loan servicing fee herein.[6] This number is calculated by determining annual interest on $2,425,000 at 12.5%, which is $303,125, and then deducting the guaranteed return to investors of 12% interest which is $291,000, resulting in an annual loan servicing fee of $12,125, and a monthly loan servicing fee of about $1,010. Because the Boise/Gowan loan matures at the end of August, 2006 and the petitions herein were filed on April 13, 2006, USA Commercial would be entitled to collect a maximum of four months' servicing fees, $4,010. Mr. Allison lists the Boise/Gowan loan as a performing loan, so there are no late fees or default interest due as additional loan servicing fees. There are no loan extension fees Mr. Allison is not permitted to extend the maturity date of the Boise/Gowan loan without the consent of the Direct Lenders, and Mr. Canepa will not consent, Suppl. Dec. ¶¶ 5-6, 12(c).[7] Consequently, the maximum financial impact to the USA Commercial bankruptcy estate from the removal of the Boise/Gowan loan is a loss of loan servicing fees somewhere in the range of $4,010. Supp. Decl. ¶12(h). Indeed, the professional fees and costs incurred in fighting over this issue exceeded the

---

[6] Indeed, if USA Commercial were to demand a loan servicing fee for an amount higher than what has been charged to date on the Boise/Gowan loan, USA Commercial would thereby reduce the 12% interest guaranteed as a return to investors, thus raising various state law waiver and estoppel issues, but more importantly, give rise to breach of certain other fiduciary obligations arising under Nevada law. *See*, NRS 645B, *et seq*.

[7] USA Commercial must not increase the loan amount unless Direct Lenders consent. However, that prohibition did not prevent two pre-petition Supplemental Deeds of Trust evidencing loan advances in breach of the Loan Servicing Agreement and Loan Agreement, Suppl. Dec. ¶¶4-9, <u>Exhibits H, I and J</u>. Mr. Allison appears poised to repeat these pre-petition breaches post-petition, by his testimony that an additional $125,000 must be funded. Suppl. Decl. ¶12(b).

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-12-

maximum dollar amount a long time ago.

The financial impact on the Direct Lenders is significantly more harsh, especially in light of the uncertainties Direct Lenders have encountered thus far, and their other concerns. The Boise/Gowan loan bears interest at the rate of 12% per annum, and this interest is the property of the Direct Investors, Canepa Decl., Exhibit C; Suppl. Decl. Exhibit I and Exhibit J. Based upon the current principal amount of $2,425,000, annual interest at 12% is $291,000, with monthly interest of $24,250. The loan matures August 26, 2006, at which time four months interest of $97,000 will be due the Direct Lenders, plus the $2,425,000 in principal, for a total amount of $2,522,000 due the Direct Lenders. Mr. Canepa is very concerned that if USA Commercial remains as the loan servicing agent, even if the Boise/Gowan loan is timely paid in full, those funds will not be immediately disbursed to Direct Lenders.[8] Other significant concerns are the potential that USA Commercial and its management may inappropriately extend the maturity date of the loan, or with their significant duties and responsibilities in this and the four related cases, will not timely proceed to foreclose on the Boise/Gowan loan. Suppl. Decl. ¶¶12(c) and (d).

Additionally, even though they are not creditors of the estate, these 17 Direct Lenders face the real possibility that over their vehement objections, they will be forced to pay a surcharge, charge back or fee assessment for the costs of administering the USA Commercial bankruptcy estate, and in effect become involuntary post-petition lenders to possibly all five bankruptcy estates. The Direct Lenders do not want to become further embroiled in these proceedings, nor do they wish to be compelled to waive their Constitutional and other protections by consenting to this Court's jurisdiction.[9] On June 5, 2006, this Court approved USA Commercial's Motion to Retain Hilco to

---

[8] Indeed, this concern is not unfounded and has already been realized by two other members of the Canepa Group (Evelyn Canepa Trust and Louis Canepa Trust) in conjunction with the loan to Opaque Land Development, LLC, which was paid in full on April 27, 2006. Mr. Allison continues to withhold funds of $6,925,000 from the Direct Lenders on the Opaque Loan, pending conclusion of his "investigation" and determination of who is entitled to receive the funds. Despite numerous Direct Lender objections, the Court sanctioned this delay. See DE 135, 236, 239, 240, 258.

[9] See discussion of In re Tucson Estates, Inc., 912 F.2d 1162, 1167-69 (9th Cir. 1990); In re Castlerock Properties, 781 F.2d 159, 162 (9th Cir. 1986); and In re Conejo Enterprises, Inc.,

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

1  complete appraisals, DE 172, and at USA Commercial's request, the Court has "left for another day"
2  the determination of whether and how much of the costs of those appraisals will be charged back to
3  Direct Lenders under the Loan Servicing Agreements, when Mr. Canepa objected to a new appraisal
4  on Boise Gowan, DE 346. Moreover, with the very substantial costs of employment of Mr. Allison,
5  Meisrow, Hilco, the four committees appointed in these jointly administered cases and the
6  professionals who have been and will be employed on behalf of those four committees, Mr. Canepa
7  and the Canepa Group have a realistic concern that they will be required to subsidize these chapter
8  11 proceedings that they were dragged into based upon USA Commercial's continued refusal to
9  perform its contractual and statutory obligations arising under the loan servicing agreements. Suppl.
10 Dec. ¶¶ 7-12. The untold and potentially very significant dollar amounts of these additional costs
11 to the Boise/Gowan Direct Lenders must also be considered in addition to the unpaid principal and
12 interest estimated as $2,522,000 above.
13         Further, the business and personal questions raised by Donna Cangelosi are not relevant or
14 dispositive here. Mr. Canepa has borne the substantial costs of this Motion seeking to terminate the
15 Loan Servicing Agreement for the Boise/Gowan loan and engage a new loan servicing agent. He
16 does not seek reimbursement from Ms. Cangelosi or anyone. Even if additional loan funding in the
17 amount of $125,000 is required under the Loan Documents (which it is not), because of the
18 conditions imposed on the loan broker's license of USA Commercial, Supp. Decl. ¶10, <u>Exhibit K</u>,[10]
19 and despite the fact that Mr. Canepa is ready, willing and able to fund any additional advance that
20 is, in fact, required to be made, Suppl. Decl. ¶12(b), USA Commercial cannot broker any loan
21 funded by a non-institutional lender. A fully licensed broker, such as US Loan Servicing, the new
22 loan servicing agent proposed by Mr. Canepa, would instead be required to handle that advance from
23 an individual. In addition to the limits on its mortgage broker's license, USA Commercial has no
24 funds secured from an institutional lender for such an advance which would fund before the
25 Boise/Gowan loan matures on August 26, 2006. Suppl. Decl. ¶¶ 12(b), 14. Finally, the new loan

---

96 F.3d 346, 353-4 (9th Cir. 1996), at page 6, *supra.*

[10]    Mr. Canepa requests judicial notice of Exhibits K and O, FRE 201.

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-14-

1  servicing agent will charge no setup or transfer costs, and it will charge the same fee which has been
2  charged by USA Commercial for the Boise/Gowan loan. Suppl. Decl. ¶¶ 14, 15.

3      Finally, the Nevada Division of Mortgage Lending, which grants and regulates USA
4  Commercial's licenses to broker and service loans, has opined that Nevada law supports termination
5  of the Boise/Gowan Loan Servicing Agreement herein. The Commissioner was requested to provide
6  an opinion on the questions of whether or not USA Commercial's pre- and post-petition conduct
7  constitutes a breach of its obligations and fiduciary responsibilities as a loan servicing agent under
8  Nevada law. Commissioner Bice responded with his June 12, 2006 opinion construing NAC
9  645B.073 and the Loan Servicing Agreement herein, an authentic copy of which is attached as
10 Exhibit O. In that opinion, Commissioner Bice concluded:

> Notwithstanding the petitions and arguments offered by the Debtor in Possession of USA <u>it is clear that USA through testimony and known facts violated many provisions of NRS 645B as well as the corresponding regulations; therefore, breaching its fiduciary responsibilities and obligations as set forth in the Loan Servicing Agreements and as such Canepa as a direct lender has the right to terminate the agreement and seek a new loan servicer</u>.

15 Suppl. Decl., ¶15, Exhibit O, p. 2 (emphasis added). This Court should adopt Commissioner Bice's
16 findings and conclusions on this point and Order relief from stay to terminate the Boise/Gowan Loan
17 Servicing Agreement.

18 **CONCLUSION**

19     The Motion should there be granted, and an Order entered which: (1) Permits Mr. Canepa
20 to exercise his contractual rights to terminate the Loan Servicing Agreement and retain a new loan
21 servicing agent; (2) Facilitates transfer to the new Agent of the Boise/Gowan loan proceeds and all
22 Boise/Gowan loan and accounting documents in USA Commercial's possession and/or PDG's
23 possession; and (3) for such other and further relief justified under the circumstances.

24     Respectfully submitted,

25     LIONEL SAWYER & COLLINS

26     /s/ Laurel E. Davis
27     By _____
    Laurel E. Davis
    Attorneys for SCOTT K. CANEPA

28

LIONEL SAWYER & COLLINS
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
PHONE 702.383.8888
FAX 702.383.8845

-15-