Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

E-FILED on June 13, 2006

Attorneys for Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>    Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>    Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>    Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>    Debtor. | Date: June 15, 2006<br>Time: 10:00 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>    Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **REPLY IN SUPPORT OF DEBTORS'<br>MOTION TO TEMPORARILY HOLD<br>FUNDS PENDING A DETERMINATION<br>OF THE PROPER RECIPIENTS**<br><br>**(AFFECTS ALL DEBTORS)** |

1   USA Commercial Mortgage Company ("USA"), USA Securities, LLC, USA Capital
2   Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First
3   Trust Deed Fund, LLC (collectively, the "Debtors") submit this reply memorandum in support of
4   Debtors' Motion to Temporarily Hold Funds Pending a Determination of Rightful Owners (the
5   "Motion to Hold Funds") filed May 8, 2006 (docket no. 173), and in reply to various oppositions
6   or other responses that have been filed to the Holds Funds Motion.  The responses include: (1) the
7   Opposition filed by the Stanley Alexander Trust and others (docket no. 281); (2) the Limited
8   Opposition filed by James Corison (docket no. 285); (3) the Opposition filed by Richard
9   McKnight, co-trustee (docket no. 323); (4) the Joinder filed by Gregory and Shauna Walch,
10  trustees, in various Oppositions (docket no. 340); (5) the Joinder filed by Nicholas Santoro, co-
11  trustee, to various Oppositions (docket no. 342); (6) the Opposition filed by the Canepa Group
12  (docket no. 345); (7) the Opposition filed by Norman Kiven (docket no. 366); (8) the Statement
13  filed by the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund,
14  LLC (docket no. 376); and (9) the Opposition filed by certain Direct Lenders (docket no. 377).[1]

## REPLY ARGUMENTS

16  The principal arguments raised in the responses can be summarized as follows:  first, that
17  the loan payments being made to USA as servicer are not property of the Debtors' estates and
18  thus, holding these funds temporarily is not allowed; second, that the cases in the Motion to Hold
19  Funds as support for the proposition that a pro-rata distribution of loan proceeds may in some
20  cases be an appropriate equitable result are distinguishable on the facts, thus providing no basis for
21  temporarily holding funds; third, that the Debtors cannot hold these funds because the Debtors are
22  not entitled to offset claims they may have against certain direct lenders for interest overpayments
23  against loan payments collected on behalf of those direct lenders; fourth, that the relief requested
24  in the Motion to Hold Funds is available only through an adversary proceeding, not by motion;

---

[1] A late opposition was filed May 28, 2006, by Mountain West Mortgage, LLC (docket no. 396).  The Mountain West opposition appears to raise many of the same arguments set forth in the other oppositions. It also appears that a portion of the Mountain West opposition is in the nature of an inappropriate countermotion seeking affirmative relief, and thus it violates the Court's proscription against countermotions.  The unique issues of the Mountain West opposition are for another day and the Debtors request an opportunity to reply later to the Mountain West opposition.

- 2 -

1  and fifth, that the applicable statute and the provisions of the loan servicing agreements require
2  that USA promptly forward all loan payments it collects to the direct lenders and that this Court
3  cannot order otherwise, even on a temporary basis.

4        Each of these arguments fails to acknowledge the very narrow and limited relief sought in
5  the Motion to Hold Funds.  The Debtors seek permission only to continue to collect loan payments
6  on behalf of the Direct Lenders and to hold the funds collected for a very limited period until the
7  loan-by-loan account reconciliations, including individual lender reconciliations, are completed.
8  The Debtors intend to distribute funds to the Direct Lenders and Fund Members as required and
9  necessary to effectuate the servicing agreements.  Debtors' new post-petition management is
10 sensitive to the many compelling reasons why these reconciliations need to be completed as soon
11 as possible, and the Mesirow team has accelerated these efforts (the detailed and time-consuming
12 reconciliations are expected to be completed by late June, rather than in mid-July).  By the
13 beginning of July, the Debtors intend to have investor-by-investor reconciliations completed
14 through nearly the end of June.  Thus, the Debtors will file a motion requesting permission to
15 begin distributing the funds held to the appropriate Direct Lenders and Fund Members as soon as
16 possible after the reconciliations are completed to permit the motion to distribute to be heard at the
17 hearing scheduled for July 25, 2006.  If an order granting the motion to distribute is granted and
18 entered promptly thereafter, the Debtors will be able to begin making distributions to Direct
19 Lenders and Fund Members in late July.  The intent of this Motion is to prepare the accountings to
20 facilitate distributions, not to withhold payment.

21     I.      THE MOTION TO HOLD FUNDS DOES NOT SEEK FACTUAL FINDINGS
22           OR LEGAL DETERMINATIONS.

23       The first four areas of the oppositions focus on reasons why factual findings or legal
24 conclusions by this Court are inappropriate in connection with the Motion to Hold Funds.  All of
25 the responses emphasize the need for the development of facts and the Debtors concur.  The
26 Debtors do not seek any factual determinations or legal conclusions to be made by the Court
27 pursuant to the Motion to Hold Funds.  The Debtors have merely suggested that multiple issues
28 exist and that time will benefit all parties to determine key facts and the applicable legal issues.

1  Accordingly, the Debtors request that the order specifically state that no factual findings and no
2  legal conclusions as to applicable law on the ultimate disposition of the funds held are being made
3  by the Court in connection with the Motion to Hold Funds. The Debtors believe that, with this
4  baseline understanding, most of the objections of the respondents are rendered moot.

     II.     THE LIMITED RELIEF REQUESTED IN THE MOTION TO HOLD FUNDS IS CONSISTENT WITH APPLICABLE CONTRACTUAL AND STATUTORY PROVISIONS.

The Debtors seek limited relief, a short period of time, to ascertain the key accounting facts. The Debtors-in-possession have an explicit duty to be accountable for all property received and to furnish information thereof to this Court and parties in interest. 11 U.S.C. §§ 1107, 1106(a)(1), 704(a)(2), (7) & (8). This short period of time will allow the Debtors to carry out this duty and will inure to the benefit of not only the Debtors but also to the benefit of each of the Direct Lenders and Fund Members, creditors of the estates, and the borrowers under the various loans. The Debtors-in-possession have a responsibility to protect and preserve the assets of the estate, including the estates' servicing rights. Under their servicing obligations, the Debtors in possession need to protect and preserve the loans of the Direct Lenders and Fund Members, and their collateral security. All of these duties are better accomplished with a short period of breathing room to prepare accountings, and the proper and informed actions can be taken by the Debtors under the servicing agreements.

An accounting is needed for each loan to be collected from borrowers. A servicing agent, the Debtors, is needed to collect the loans from borrowers. An accounting is needed to establish the Direct Lender and Fund Member relationships on each loan. An accounting is needed to establish the degree to which the Debtors have advanced monies to the Direct Lenders of the Fund Members, not paid by the loan borrowers.

Much discussion is expended in the responses as to applicable case law. As previously stated, no legal conclusions are requested by the Motion to Hold Funds but the Debtors respond briefly to allay the fears of the Direct Lenders. In the motion(s) to distribute funds that the Debtors will soon file, the Debtors do not intend to seek affirmative recovery of monies from the Direct Lenders. Rather, the Debtors are legally or equitably subrogated to the Direct Lenders'

1  claims against the borrowers and the Debtors have a right to reimbursement from payments that
2  may have been paid or will be paid subsequently by the loan borrowers in reimbursement of those
3  advances. Subrogation is "an equitable doctrine created to accomplish what is just and fair as
4  between parties." *AT&T Tech., Inc. v. Reid*, 855 P.2d 533, 595 (Nev. 1993) (citations and internal
5  quotation omitted). Under Nevada law, the doctrine of equitable subrogation is applicable
6  "whenever one person, not acting as a mere volunteer or intruder, pays a debt for which another is
7  primarily liable, and which in equity and good conscience should have been discharged by the
8  latter." *Mort v. United States,* 86 F.3d 890, 894 (9th Cir. 1996) (citations and internal quotation
9  omitted). "Equitable subrogation exists independent of any contractual relation between parties."
10 *AT&T Tech*, 855 P.2d at 596. Courts have applied the doctrine liberally stating that it is "a broad
11 equitable remedy." *Mort,* 86 F.3d at 894. The Ninth Circuit has stated that the doctrine of
12 equitable subrogation is "sufficiently elastic to take within its remedy cases of first instance which
13 fairly fall within it." *Han v. United States,* 944 F.2d 526, 529 (9th Cir. 1991). The Debtors believe
14 that the current facts fall fairly within the doctrine of equitable subrogation.
15     In these cases, Debtors paid monies to Direct Lenders in excess of the funds collected from
16 the loan borrowers. Those monies were the primary obligation of the loan borrowers and should
17 have, in equity and good conscience, been discharged by the loan borrowers. In order to
18 "accomplish what is just and fair," the Debtors are entitled to be reimbursed by the loan borrowers
19 for monies advanced by the Debtors to the Direct Lenders that are in excess of funds collected
20 from the loan borrowers, under the doctrine of legal or equitable subrogation. This is an issue to
21 be resolved at a later time but is property of the estates and entitled to the protection of the
22 automatic stay. 11 U.S.C. § 362(a)(3).[2]

---

[2] The actions of the "Interested Parties" as identified in the Stanley Alexander Trust Opposition (docket no. 281), contains blatant violations of 11 U.S.C. § 362(a)(3) as an attempt to obtain possession and to exercise control over the Debtors' servicing rights, as well as an improper solicitation under 11 U.S.C. § 1125(b). Further, the collected funds held are property that is in the possession of Debtors, which is protected by 11 U.S.C. § 362(a)(3). See, 3 Collier on Bankruptcy ¶ 362.03[5], at 362-20 (15th ed.rev. 2006). These violations may be the subject of a separate motion.

- 5 -

## CONCLUSION

No factual findings or legal conclusions are requested by the Debtors. The Debtors intend to distribute funds as soon as it has prepared its accountings. The Debtors' Motion to Hold Funds seeks to preserve the status quo pending completion of an initial accounting, which accountings will inure to the benefit of the Direct Lenders, Fund Members, and creditors, as well as the Debtors. A short period of time is reasonable to accomplish this objective. The Motion to Hold Funds seeks cooperation, not litigation, in the best interests of all parties and to accomplish that which is fair and equitable.

WHEREFORE, the Debtors respectfully request this Court to enter an order permitting the estates to hold funds in its possession until the hearing on July 25, 2006, or such other date as this Court may establish.

Respectfully submitted this 13th day of June, 2006.

/s/     JEANETTE E. MCPHERSON
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

877764