E-Filed On 6-19-06

GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
TALITHA B. GRAY, ESQ.
Nevada Bar No. 9040
E-mail: tbg@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                    Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                    Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                    Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                    Debtor. | **OFFICIAL COMMITTEE OF HOLDERS OF EXECUTORY CONTRACT RIGHTS THROUGH USA COMMERCIAL MORTGAGE COMPANY'S RESPONSE TO THE DEBTORS' MOTION TO APPROVE AGREEMENT WITH INVESTMENT PARTNERS** |
| In re:<br>USA SECURITIES, LLC,<br>                    Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date: June 21, 2006<br>Time: 9:30 a.m. |

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Direct Lender Committee"), by and through its attorneys,

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407001_2.doc

the law firm of Gordon & Silver, Ltd., hereby respectfully submits its response (the "Response") to Debtors'[1] Motion to Approve Agreement With Investment Partners (the "Motion") in the above-referenced cases.

This Response is made and based on the points and authorities listed herein, the Declaration of Talitha B. Gray, Esq. In Support Of Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company's Opposition To The Debtors' Motion to Approve Agreement With Investment Partners (the "Gray Declaration"), filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

DATED this 19th day of June, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
TALITHA B. GRAY, ESQ.

## I.
## LEGAL ARGUMENT

**A.    The Legal Standard for Approval of Compromises.**

The approval of compromises or settlements in bankruptcy proceedings is governed by Fed. R. Bank. P. 9019(a), which provides the following:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). "It is clear that there must be more than a mere good faith negotiation of a settlement…in order for the bankruptcy court to affirm a compromise agreement." Martin v.

---

[1] On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USA Mortgage"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Deed Fund, LLC ("Diversified Fund"), and USA Capital Trust Deed Fund, LLC ("Trust Deed Fund," and collectively with USA Mortgage, USA Securities, USA Realty, and the Diversified Fund, the "Debtors") all filed their voluntary Chapter 11 petitions for relief in this Court, thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases").

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407001_2.doc

2

Kane (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986). The Debtors bear the burden of demonstrating that the proposed compromise is "fair and equitable." Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 414 (1967).

The Ninth Circuit has enunciated that "in order to determine whether a proposed settlement or compromise is fair and equitable, the bankruptcy court must consider four factors: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." See In re Stein, 236 B.R. at 37; see also In re A&C Properties, 784 F.2d at 1381; Schmitt v. Ulrich, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997).

As aptly stated by the Supreme Court and quoted by the Ninth Circuit:

> [t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collection on any judgment which might be obtained, and all the factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

In re A&C Properties, 784 F.2d at 1382 (quoting TMT Trailer, 390 U.S. at 424-25).

**B.    The Motion Should be Granted on an Interim Basis Subject to Certain Limitations.**

The Motion was filed on June 9, 2006 on shortened time and scheduled to be heard at the June 21, 2006 Omnibus Hearing. Pursuant to this Court's order at the June 15, 2006 Omnibus Hearing, the deadline to file a response to the Motion is June 19, 2006. In light of these time constraints, the Direct Lender Committee has been unable to obtain sufficient information to determine whether the Debtors' proposed comprise is in fact fair and equitable and should be approved on a permanent basis.

Nonetheless, the Direct Lender Committee appreciates that under certain circumstances the proposed compromise, which entails, *inter alia*, the obtainment of the Promissory Note and the acquisition of the security interest memorialized in the Security Agreement in exchange for

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/407001_2.doc

3

the right to immediately sue USA Investment Partners, LLC ("Investment Partners"), may be fair and equitable and in the best interest of the Debtors' estates (the "Estates"). However, the four-page Motion, regardless of attaching as exhibits the Promissory Note and the Security Agreement, fails to adequately answer a number of critical questions, the answers to which will dictate whether the proposed compromise is fair and equitable and should be approved on a permanent basis. Notwithstanding the lack of available information, the Direct Lender Committee appreciates the potential benefit of promptly obtaining the Promissory Note and the Security Agreement and on that basis would request that the proposed compromise be approved on an interim basis subject to two conditions discussed more fully herein.

1.    **The Proposed Compromise.**

Based on the Promissory Note, the Security Agreement, and the Motion, the proposed compromise, although only vaguely discussed in the Motion, appears to be based on the proposition that Investment Partners is indebted to USA Mortgage in an amount exceeding Fifty Million Dollars ($50,000,000.00), that such sum is presently due and owing to USA Mortgage, and that Investment Partners desires to prevent immediate collection of such due and owing sums. The proposed compromise, at its essence, provides that in exchange for not seeking to collect such amounts as are presently due and owing, Investment Partners will execute the Promissory Note and Security Agreement. The Promissory Note provides that Investment Partners will pay the principle sum of Fifty-Eight Million, Three Hundred Seventy-Four Thousand, Nine Hundred Eighteen Dollars and Eighty-One Cents ($58,374,918.81), together with interest accruing at the rate of seven and three-fourths of one percent (7.75%) compounded annually, to USA Mortgage by May 31, 2007, except that the maturity date may be extended as set forth therein. During the pendency of the Promissory Note, Investment Partners is obligated to pay USA Mortgage all proceeds, minus a limited carve-out, from the liquidation of certain assets pledged as security, as set forth in the Security Agreement. However, if USA Mortgage has received Twenty Million Dollars ($20,000,000.00) from the proceeds of the collateral encumbered by the Security Agreement by May 31, 2007, then the terms of the Promissory Note are extended, and the Promissory Note will not mature until May 31, 2008. See Promissory

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407001_2.doc

Note, attached as Exhibit "A" to the Motion.

Investment Partners will further grant the Debtors, not just USA Mortgage, the following security interest:

> Debtor [Investment Partners] hereby grants to Secured Party, to secure the payment and performance in full of all of the Obligations, a security interest in and therewith pledges and assigns to Secured Party the following properties, assets and rights of Debtor [Investment Partners], wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all of Debtor's [Investment Partners'] membership interests and all other interest in, or granted by, the entities (the "LLCs") listed in Exhibit "A" attached hereto and incorporated [Exhibit A lists: Capital Land Investors, LLC, a limited liability company; Ashby USA, LLC a California limited liability company, Placer County Land Investors, LLC, a California limited liability company, (fka Placer County land Speculators, LLC), Oak Mesa Investor, LLC, a California limited liability company, Tanamera Properties, LLC, Random Developments, LLC a California limited liability company, and Buffalo Land Developments, LLC, a California limited liability company], together with any of the following owned by Debtor [Investment Partners]: all instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property and general intangibles related to or arising from one or more of the LLCs, together with all supporting obligations.

See Security Agreement, ¶ 2, at Exhibit "B" to the Motion. Notably, this security interest secures all of Investment Partners obligations to all of the Debtors, including, but not limited to the payment obligation evidenced by the Promissory Note.

### 2. The Numerous Unanswered Questions Necessitate That Approval of the Proposed Compromise Occur Solely On An Interim Basis.

Although the Motion references "pre-petition receivables and debts owed by Investment Partners," there is no indication of why Investment Partners owes USA Mortgage in excess of Fifty Million Dollars ($50,000,000.00). See Motion ¶ 6. What was the source of these funds? Was it USA Mortgage's funds or those of Direct Lenders[2]? Are any of the Direct Lender's loans presently or were they previously related to this debt? Was the debt incurred pursuant to a contract? If so, what are the terms of that contract?

The Motion further states that Investment Partners sought to prevent the immediate

---

[2] "Direct Lenders" refers to parties that have individually lent monies directly to various borrowers for which USA Mortgage is only a loan servicer. This would include the Funds since they lent monies directly to various borrowers for which USA Mortgage may or may not be a loan servicer.

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/407001_2.doc

5

collection of the receivables and debts, and, in furtherance of this, offered to execute a promissory note "documenting at least some of those obligations to USACM [USA Mortgage] and to provide collateral for all debts and obligations owed to Debtors" (the "Promissory Offer"). See id. However, there is absolutely no explanation for why or how Investment Partners sought to "prevent immediate collection" of this debt. Furthermore, the Motion does not explain why only a portion of Investment Partners' obligation is documented or the circumstances in which the Promissory Offer was made. Why is it that the entire obligation due and owing is not documented? Was a demand made on Investment Partners to promptly pay the debt that exceeds Fifty Million Dollars? If a demand was made, did Investment Partners refuse to pay the amount that the Debtors unequivocally state is "immediately due and payable"? Can the Debtors immediately collect the amount due and owing? If the Debtors do not believe immediate collection is possible, what facts support this belief? Is there a dispute as to the sums owed by Investment Partners? If so, what is the basis of this dispute?

Thereafter, pursuant to the Motion, "in an attempt to compromise," the Debtors accepted the Promissory Offer and "Investment Partners executed a promissory note to USACM [USA Mortgage]…in the principle sum of $58,374,918.81 documenting at least a portion of the outstanding receivables and debts owed" to USA Mortgage. See id. However, the Motion neglects to indicate what negotiations occurred and why the Promissory Offer was accepted. Would litigation be necessary to obtain payment of the amounts due and owing? If so, how complex is the anticipated litigation? If litigation would be necessary, is there a concern that USA Mortgage may not be successful in litigating and obtaining a judgment in the amount actually due and owing? Are there concerns regarding collection once a judgment is entered?

Furthermore, it is entirely unclear what protection the Security Agreement truly provides. What is the present value of the collateral pledged? If Investment Partners defaults on the Promissory Note, what is the likely recovery if the Debtors seek to liquidate the pledged collateral? What is the marketability of the pledged collateral? Is the Promissory Note non-recourse? Moreover, it is unclear how the proposed compromise will impact the Debtors' numerous creditors, collectively and individually.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407001_2.doc

6

### 3. The Proposed Compromise May Prejudice Certain Direct Lenders' Rights Under Their Respective Loan Agreement and Guarantees.

As this Court is aware, there are approximately three thousand six hundred (3,600) Direct Lenders. Joseph Milanowski, Thomas Hantges, and their entities executed personal guarantees for a number of these loans, as well as loans due the Funds.[3] As such, dependent upon the applicable state law for the jurisdiction in which the collateral is located, certain Direct Lenders (including the Funds) are in the unique position of being able to seek repayment directly from these guarantors under the terms of their respective loan and guarantee agreements. As Investment Partners is a Nevada limited-liability company of which Mr. Milanowski and Mr. Hantges are the sole managers,[4] it is possible that pursuant to certain loan and guarantee agreements, certain Direct Lenders' rights may be prejudiced by the granting of the security interest memorialized in the Security Agreement. Specifically, the Direct Lender Committee is concerned that by granting the Debtors the above-stated security interest, the Debtors are effectively usurping assets that may otherwise be available to those Direct Lenders who, in order to protect their interests, negotiated and obtained guarantees.

In light of the existence of the afore-mentioned guarantees, it is possible, if not probable, that certain Direct Lenders may be rendered unable to collect on their guarantees due to the expanse of the security interest provided to the Debtors through the Security Agreement. However, more information is necessary before it can be ascertained whether and to what extent the rights of certain Direct Lenders, and potentially other creditors, are being prejudiced by the proposed compromise.

### 4. The Relief Requested In Light Of The Foregoing Concerns.

The foregoing issues and concerns can be addressed, while preserving the potential benefit of the compromise, by entering an order that provides: The proposed compromise is approved on an interim basis, provided, however, that (1) if after information sufficient to answer the questions raised in the Motion is provided, any Direct Lender believes that the

---

[3] To date, the Debtors have refused to provide the Direct Lender Committee with sufficient information for it to ascertain what precisely the individual guarantee agreements state and whether and to what extend the proposed compromise may impact the Direct Lenders.

[4] See Gray Declaration ¶ 3; see also Exhibit "1" to the Gray Declaration.

compromise prejudices their rights, such Direct Lender may file a motion and obtain a hearing at which time the Court will address such party's informed concerns and determine whether approval of the compromise should be revoked; and (2) the security interest in the collateral granted to the Debtors through the Security Agreement is without prejudice to any Direct Lender's right to recover or set aside under any appropriate state or federal avoidance statutes and pursuant to the terms of such Direct Lender's individual loan and guarantee agreements.

## II.
## CONCLUSION

WHEREFORE, the Direct Lender Committee hereby respectfully requests that the Motion be granted on the limited basis set forth herein and for such further and other relief as the Court deems just and proper.

DATED this 196th day of June, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
TALITHA B. GRAY, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

100933-001/407001_2.doc