GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
THOMAS H. FELL, ESQ.
Nevada Bar No. 3717
E-mail: thf@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-Filed On 6-19-06

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **OFFICIAL COMMITTEE OF HOLDERS OF DIRECT LENDERS' OPPOSITION TO MOTION FOR EMERGENCY INTERIM AND PERMANENT ORDERS AUTHORIZING THE DEBTORS TO OBTAIN POST PETITION FINANCING** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date: June 21, 2006<br>Time: 9:30 a.m. |

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company ("Official Committee of Direct Lenders"), by and through its counsel, the law firm of Gordon & Silver, Ltd., hereby submits its opposition (the "Opposition") to Debtors'[1] Motion for Emergency Interim and Permanent Order Authorizing Debtors to Obtain Post Petition Financing (the "Motion"). This Opposition is made and based upon the points and authorities which follow, the pleadings and papers contained in the Court's file, and any evidence or oral argument presented at the time of the hearing on the Motion.

DATED this 19 day of June, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
THOMAS H. FELL, ESQ.
GREGORY E. GARMAN, ESQ.

## I.
## POINTS AND AUTHORITIES

The Motion seeks approval of the Financing Facility[2] from CapitalSource which contains three distinct components: (1) a revolving credit facility of up to $15,000,000.00, (2) a right of first offer for additional funding of construction projects, and (3) a right to fund new loan originations generated by USA Mortgage. Although the Financing Facility may be in Debtors' best interests, the Motion is deficient in the following respect; (1) regarding the justification for the Financing Facility; (2) the urgency which requires interim relief to be heard on an order shortening time; and (3) and a specific description of the collateral being pledged to secure the Financing Facility. Furthermore, approval of the second and third elements of the Financing Facility is premature at this time, as even the Debtors correctly recognize that any subsequent financing would require further court approval after notice and hearing.

---

[1] On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USA Mortgage"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Deed Fund, LLC ("Diversified Fund"), and USA Capital Trust Deed Fund, LLC ("Trust Deed Fund," and collectively with USA MORTGAGE, USA Securities, USA Realty, and the Diversified Fund, the "Debtors") all filed their voluntary Chapter 11 petitions for relief in this Court, thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases").

[2] All capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Motion.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

2

Although the Debtors desire to obtain additional working capital by way of the revolving credit line of up to $15,000,000.00, it is unclear from the Motion: (1) why such a revolving line of credit is needed during the thirteen week budgeted period contained in the Debtors' Notice of Filing of Amended Thirteen Week Cash Forecast filed on June 9, 2006 ("Budget"), (2) which of the Debtors requires the use of such revolving line of credit, and (3) what is being pledged to secure the revolving line of credit. Rather, Debtors simply state, "In order to continue to operate in chapter 11, a post petition credit facility is critical." Motion p. 6. ll. 1-2. They further state, "Without the Financing Facility, the Debtors may not have sufficient income to perform all of the administrative tasks and investigative analysis that need to be completed with respect to the Serviced Loans, and will not have sufficient funds to fund the Construction Budget Shortfalls that are necessary to maintain, protect and enhance the value of the collateral securing the Shortfall Loans." Motion p. 11, ll. 8-12. The Motion does not state that absent the Financing Facility the Debtors (or which of the Debtors) are administratively insolvent and will be forced to shut down. Rather, Debtors simply say that they may not be able to perform "all" of the tasks they desire to perform.

Federal Rule of Bankruptcy Procedure Rule 4001(c)(2) specifically provides:

> . . . If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Debtors are seeking interim approval of the Financing Facility pending a final hearing to be heard on July 25, 2006. However, as set forth above, the Debtors have failed to establish, let alone allege, that the interim relief is necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing as required by Rule 4001(c).[3]

Most troubling to the Official Committee of Direct Lenders is the complete lack of description of the collateral being pledged for the revolving line of credit. It appears to be a

---

[3] The Official Committee of Direct Lenders is informed and believes that it is the Debtors' desire to immediately use approximately $3 to $5 million of the Financing Facility to commence enforcement actions on the nonperforming loans. Although the Official Committee of Direct Lenders supports the commencement of enforcement actions on nonperforming loans, such information is not contained in the Motion or any other competent evidence before this Court.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

3

blanket lien on all of the Debtors' assets in existence or subsequently acquired, but what those assets are is simply unclear. The Official Committee of Direct Lenders is informed and believes that the Debtors intend to only pledge estate assets. But, while it is generally known that, for example, USA Mortgage has some direct interests in various notes, and that it is entitled to collect servicing fees pursuant to the various servicing agreements, which interests and fees are assets that potentially could be pledged, such a blanket lien should not be construed to grant CapitalSource a lien in any funds presently held or received by the Debtors which may belong to direct lenders and not the estates. For example, the Official Committee of Direct Lenders believes that the line item contained in the Budget titled "Collection of Prepaid Interest from Borrowers" represents funds that belong to direct lenders and not the estates. Additionally, the Debtors appear to be claiming interest earned upon direct lenders monies held in separate collections account is property of the Estates; again, contrary to the position of the Official Committee of Direct Lenders. Issues regarding what is and what is not property of the estates will undoubtedly be determined at a later date under the various contracts, notes and deeds of trust. The approval of an interim dip loan with a vague grant of a security interest is all property of the estate cannot carry with it a definitive determination of property of the estate based upon a budget put forth by Mesirow.

Additionally, without a specific definition of the collateral, it is unclear whether or not Section 364(d) is at issue and whether or not the Motion has been properly noticed. Section 364(d) provides:

> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof of the issue of adequate protection.

11 U.S.C. § 364(d).

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

Since the Motion references Section 364(d), it appears that the revolving line of credit is to prime any other secured creditors with respect to the collateral. However, the Debtors state that they "do not believe that the revolving credit portion of the Financing Facility will require a priming lien, and therefore, the Debtors do not believe that the requirements of Section 364(d)(1)(B) are implicated at this time." See Motion, p. 12, ll. 15-17. To the extent that a priming lien is at issue, clearly the Debtors must delineate which secured creditors are so affected and give notice to all such secured creditors pursuant to F.R.B. P. Rule 9014.

Regarding the second element of the Financing Facility, which is CapitalSource's right of first offer on all of Debtors' remaining funding for the original construction budget with respect to existing loans as of the petition date, the Official Committee of Direct Lenders does not oppose granting CapitalSource such right of first offer. However, the Official Committee of Direct Lenders reserves any and all objections to any such future loans which USA Mortgage may bring to this Court for approval. Approval of such right of first offer at this time must not be interpreted by anyone as consent to USA Mortgage brokering such loans nor approval of the terms and conditions of such loans, including the priming of prior existing loans. The Debtors readily acknowledge that such priming loans will implicate Section 364(d), and all lenders which are sought to be primed, including each and every direct lender under a promissory note must be given proper notice. This right of first offer cannot include a right of pre-approval.

With respect to the third element of the Financing Facility, CapitalSource's right on a case by case basis in its sole discretion to fund new loan originations generated by USACM, is an issue for another day when such loan is appropriately brought before this Court for approval. The Official Committee of Direct Lenders hereby reserves any and all rights to object to such loans as it deems appropriate. Again, the approval of the Financing Facility pursuant to the present Motion should not be deemed a consent or authorization for USA MORTGAGE to broker new loans.

The Financing Facility is also conditioned upon being accorded super priority under Section 364(c) over any and all administrative expenses subject to a carve-out for certain professional fees and U.S. Trustee's fees. There is no explanation by the Debtors as to which

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

5

certain professional fees this is meant to encompass, whether it is all court approved professional fees, or if not, why not and which ones are intended to be included in the carve-out. The Official Committee of Direct Lenders also notes that the Financing Facility provides for the reimbursement of costs associated with establishing the revolving credit line, and while the Official Committee of Direct Lenders does not necessary oppose the reimbursement of reasonable costs, the Motion is silent as to an estimate of such costs or a cap of such costs.

## II.
## CONCLUSION

WHEREFORE, the Official Committee of Direct Lenders hereby respectfully requests that the Court deny the Motion as presented on an interim basis without a further showing by the Debtors of the need for immediate funds to avoid immediate and irreparable harm to the estate pending the final hearing, and without a further clarification of the collateral being pledged to secure the Financing Facility does not include the Direct Lenders assets.

DATED this _19_ day of June, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
THOMAS H. FELL, ESQ.
GREGORY E. GARMAN, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/407279.doc

6