**LEWIS AND ROCA LLP**
LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89109
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Attorneys for Official Committee of Unsecured Creditors

E-Filed on June 19, 2006

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>**USA Commercial Mortgage Company**<br>**06-10725 – Lead Case**<br><br>**USA Capital Realty Advisors, LLC**<br>**06-10726**<br><br>**USA Capital Diversified Trust Deed Fund, LLC**<br>**06-10728**<br><br>**USA Capital First Trust Deed Fund, LLC**<br>**06-10728**<br><br>**USA Securities, LLC**<br>**06-10729**<br>                                                      **Debtors.** | Jointly Administered<br><br>Chapter 11 Cases<br><br>Judge Linda B. Riegle Presiding<br><br>**Response to Motion for Emergency Interim and Permanent Orders Authorizing the Debtors to Obtain Post-Petition Financing**<br><br>Date: June 21, 2006<br>Time: 9:30 a.m.<br>Affecting:<br>☒ All Cases<br>or Only:<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC |

The Official Committee of Unsecured Creditors of USA Commercial Mortgage Company (the "Committee") believes that there is merit in Debtors' request for post-petition financing pursuant to 11 U.S.C. § 364, and supports Debtors' ongoing exercise of business judgment through Mr. Allison, but the Committee respectfully submits that further information needs to be provided before the hearing on June 21. We detail our major concerns for the convenience of the Debtors and the Court.

201468.1

LEWIS
AND
ROCA
LLP
LAWYERS

1. *How Much Is Needed and When?*

Debtors' Amended 13-Week Cash Forecast filed on June 9, 2006 [DE 557] indicates that during the forecast period through August 27, 2006, the lowest point in the "Total Cash DIP Operating Account at End of Period" is $11.8 million this week. Debtors indicate they need up to $3 million in availability under the proposed DIP loan by July 25, 2006. The forecast does not explain when funds are needed. If there is an amended forecast, the Committee would like to see it.

The Committee does not dispute that a DIP loan for the purposes of evening out cash flow to pay expenses of administration, including loan enforcement actions, makes sense. Nor does the Committee disagree that the relatively small additional advance such as the $125,000 on the Boise/Gowan project to complete funding and satisfy a potential mechanics' lien claim makes sense. The Committee simply notes that Debtors have not indicated that they need the DIP, when they need the funds, and what they intend to draw on an interim basis.

Conversely, the Committee would be prepared to approve the DIP on an interim basis, with the requested $3 million treated as an operating reserve, subject to the Committee's prior consent if the Debtors propose to draw down on the DIP Loan.

2. *What Is The Carve-Out For Certain Professional Fees And U.S. Trustee Fees Referred To In Both The Motion And The Term Sheet?*

We understand that this amount is subject to further negotiation and look forward to seeing the details and hopefully approving them.

3. *Has The DIP Lender Approved The Rolling 13-Week Cash Flow Budget (Or Is There Another)?*

If the DIP Lender has agreed to fund a particular rolling 13-week cash flow budget, then the Court and parties have some assurance that those aspects of Debtors' administration will be funded on an interim basis.

201468.1

4. *When Will The Parties Have An Opportunity To Review "Such Loan And Security Agreements, Notes, Mortgages, Deeds Of Trust, Instruments, Documents, Certificates, Opinions, Environmental Indemnities, Fraud Guaranties, Third Party Reports And Assurances As Are Reasonable And Customary For Similar Loans, And As Lender May Reasonably Require In Connection With The Closing"?*

These documents govern the loan, may create events of default that could create an immediate obligation to repay the DIP Loan, and need to be available for review by Debtors, the Committees and the United States Trustee before the loan closes on an interim or permanent basis.

5. *How Will The Loan Be Repaid Among The Debtors?*

The motion suggests that the assets of USA Capital Diversified Trust Deed Fund, LLC and USA Capital First Trust Deed Fund, LLC (together, the "Funds") and those of USA Commercial Mortgage Company are primary collateral for the DIP Lender, subject to agreements among the Debtors as to contribution or subrogation concerning loan repayment, which agreements have not been outlined, much less disclosed. This issue may be resolved before the final hearing.

6. *Are the Minimum Terms of the Shortfall Loans Market Terms?*

The Committee does not oppose the DIP Lender's opportunity to fund Shortfall Loans on a right of first offer basis, upon prior notice and opportunity for objection on the terms of any such proposed loan.

The right of first offer granted to the DIP Lender on Shortfall Loans contains a floor of origination fees of 1.50% of the face amount of each such loan, and interest rates of no more than LIBOR plus 7.50%, with expense reimbursement and ordinary terms. The only concession by Debtors appears to be the origination fee and Debtors should demonstrate that this is a market-based term. The interest rate cap from the DIP Lender

appears to be a benefit for Debtors. In any event, these loans would not occur without prior notice and consideration by interested parties and the Court.

7. *The DIP Lender Should Be Entitled To A Fee For Financing Debtors' Exit From Bankruptcy Only If Debtors Request And Accept A Commitment For Such Exit Financing.*

This may be implicit, but should be explicit in the loan documents.

8. *Can the Closing Date Be Extended?*

The outside date for Closing is June 30, 2006, but the loan can not be finally approved under Bankr. R. 4001(c) until a final hearing that requires not less than 15 days notice. A June 30, 2006 closing date seems impossible to meet.

9. *What Is The Overadvance Facility Referred To In The Motion And The Term Sheet?*

There are references to an "Overadvance Facility" in the documents, which Debtors indicate is simply a typographical error.

## Conclusion

The Committee wants to support Debtors' collection activities and its business judgment, and looks forward to resolving these concerns with Debtors before the hearing.

Dated June 19, 2006.

**LEWIS AND ROCA LLP**

By /s/ RC (#006593)
Susan M. Freeman, AZ 4199 (pro hac vice)
Rob Charles, NV 6593
*Attorneys for Official Committee of Unsecured Creditors*

201468.1