GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
KONRAD PILATOWICZ
Nevada Bar No. 9651
E-mail: kpilatowicz@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Telephone (702) 796-5555
Facsimile (702) 369-2666

E-FILED ON JUNE 19, 2006

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR ORDER TO REMOVE FERTITTA ENTERPRISES, INC. AS MEMBER OF OFFICIAL COMMITTEE OF HOLDERS OF EXECUTORY CONTRACT RIGHTS**<br><br>Date: June 21, 2006<br>Time: 9:30 a.m. |

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Official Committee of Direct Lenders"), by and through its counsel, the law firm of Gordon & Silver, Ltd. ("G&S"), hereby submits its opposition (the "Opposition") to <u>Motion for Order to Remove Fertitta Enterprises, Inc. as Member of Official Committee of Holders of Executory Contract Rights</u> (the "Motion").

The Opposition is made and based on the points and authorities which follow, the <u>Declaration of William J. Bullard in Support of the Opposition to Motion for Order to Remove Fertitta Enterprises, Inc. as Member of Official Committee of Holders of Executory Contract Rights</u> (the "Bullard Declaration"), filed herewith, the pleadings and papers contained in the Court's file, judicial notice of which is hereby requested, and any evidence or oral argument presented at the time of the hearing in this matter.

DATED this 19th day of June, 2006.

GORDON & SILVER, LTD.

By: /s/
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
KONRAD PILATOWICZ, ESQ.

**POINTS AND AUTHORITIES**

## I.
## INTRODUCTION

By way of its Motion, USA Mortgage has sought to gerrymander the Official Direct Lender Committee in a blatant attempt to alter and influence its future decisions. The Motion is ripe with unsubstantiated speculation and hyperbole and short on evidence to support its illogical conclusion that the Direct Lenders are not being represented by Mr. Bullard. Quite to the contrary, Mr. Bullard, a respected member of the Las Vegas business community, has acted in all respects as a fiduciary for his constituency. The irony is that Mesirow attempts to tarnish the reputation of Fertitta and Mr. Bullard by alleging <u>potential</u> conflicts of interest when it in fact has

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

2

an actual conflict of interest by virtue of it being the custodian for an IRA which is a Direct Lender in addition to possibly being not disinterested.[1]

As set forth herein, USA Mortgage's Motion contains material misstatements, unsupported conjecture and is based upon an absolute lack of admissible evidence. Therefore, USA Mortgage's Motion must be denied.

## II.
## STATEMENT OF FACTS

1. On April 13, 2005 (the "Petition Date"), USA Commercial Mortgage Company ("USA Mortgage"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("USA Diversified"), and USA Capital First Trust Deed Fund, LLC ("USA First" and, collectively with USA Mortgage, USA Securities, USA Realty, and USA Diversified, the "Debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code.

2. On May 11, 2006, the Office of the United States Trustee (the "US Trustee") appointed several members to the Official Direct Lender Committee. See Notice Of Appointment Of Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company, docket no. 202. Consistent with 11 U.S.C. §1102(b)(1), the members of the Official Committee of Direct Lenders hold the seven largest Direct Lender claims.

3. Shortly thereafter, William J. Bullard ("Bullard"), on behalf of Fertitta Enterprises, Inc. ("Fertitta"), was elected by his fellow committee members to serve as the Chairman of the Official Committee of Direct Lenders. See Bullard Declaration, ¶ 4.

4. Bullard is exceptionally qualified to serve as Chairman of the Official Committee of Direct Lenders. He received a degree in accounting and finance from New Mexico State

---

[1] Mesirow Financial Interim Management, LLC, was forced to disclose for the first time that they are both representatives of the estate and simultaneously custodians for accounts of at least one Direct Lender. See First Supplemental Declaration Of Thomas J. Allison In Support Of Debtors' Motion For Order Authorizing (I) The Employment And Retention Of Mesirow Financial Interim Management, LLC As Crisis Managers For The Debtors, And (II) The designation Of Thomas J. Allison Of Mesirow Financial Interim Management, LLC As Chief Restructuring Officer For The Debtors And The Employment Of Certain Temporary Employees, docket no. 631

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

3

University in 1980. He is a Certified Public Accountant by professional background with over 10 years practicing with the accounting firm of Arthur Andersen, LLP. For the past 13 years, he has served as Chief Financial Officer of Fertitta, a private investment company with extensive holdings in public and private equity and debt securities, commercial and residential real estate developments, and controlling interests in privately held operating companies. For the past six years, he has been a member of the Board of Directors of Nevada First Bank, serving as its Chairman for the past three years. See Bullard Declaration, ¶ 5.

5.   Fertitta is a Direct Lender associated with multiple promissory notes brokered by USA Mortgage, including the Hasely Canyon Note and Tapia Ranch Note identified in USA Mortgage's Motion. USA Mortgage has incorrectly claimed that Fertitta received "highly selective and favorable treatment . . . including a higher rate paid to Fertitta on the Hasely Canyon and Tapia loans . . ." See Motion, p. 3, ¶ 7. True and correct copies of the Hasely Canyon Note and Tapia Ranch Note are attached to the Bullard Declaration as Exhibits "A" and "B" respectively. Additionally, true and correct copies of the Hasely Canyon Loan Agreement and Tapia Ranch Loan Agreement are attached to the Bullard Declaration as Exhibits "C" and "D" respectively. See Bullard Declaration, ¶ 6.

6.   The Hasely Canyon Note and Tapia Canyon Note clearly evidence that all the Direct Lenders receive identical rates of interest at 18% and 13% respectively (not the 17% and 12.5 as represented by USA Mortgage) from the borrowers. See Hasely Canyon Note, attached as Exhibit "A" to the Bullard Declaration; Tapia Ranch Note, attached as Exhibit "B" to the Bullard Declaration.

7.   If it is true that USA Mortgage has not been paying other Direct Lenders the proper interest due them (which has not yet been established), Bullard and Fertitta were unaware of such misconduct by the USA Mortgage. Furthermore, Bullard has never negotiated for a rate of interest greater than that of other Direct Lenders. In fact, Fertitta was solicited by USA Mortgage (the "Solicitation") to become a Direct Lender in Hasely Canyon and Tapia Ranch at the interest rate set in the Solicitation which was non-negotiable. A true and correct copy of the Solicitation received by Fertitta related to Hasely Canyon is attached to the Bullard Declaration

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

4

as Exhibit "E". As set forth therein, the Solicitation clearly identifies an interest rate of 18%. See Bullard Declaration, ¶ 8; Solicitation, attached as Exhibit "E" to the Bullard Declaration.

8. USA Mortgage attempts to make great significance out of two letter agreements dated March 10, 2004 (the "Hasely Letter Agreement") and September 28, 2004 (the "Tapia Letter Agreement", collectively the "Letter Agreements"). Given the size of Fertitta's loans, USA Mortgage benefited in the form of a substantial cost saving on the transactions in which Fertitta participated. Among other benefits obtained by USA Mortgage, the funds provided by Fertitta were not subject to the payment of sales commissions to individual brokers, and it negated the necessity to raise small amounts of money from a vast number of individual Direct Lenders. Because of its cost savings associated with the Fertitta loans, upon the repayment of the Hasely Canyon and Tapia Ranch loans and reconveyance of the accompanying deeds of trust, USA Mortgage offered to pay Fertitta a pro rata share of the exit fees due from the borrowers. In each instance, and only upon the repayment of the loans and the reconveyance of the related deeds of trust, Fertitta will receive a pro rata share on an exit fee of approximately one-quarter of one percent. See Bullard Declaration ¶ 9.

9. Without any evidence, USA Mortgage attempts to insinuate a "close relationship" between Bullard and Fertitta and USA Mortgage's former management. See Motion, p. 5, ll. 8-9. However, neither Bullard nor Fertitta have a personal relationship with USA Mortgage's prior management, specifically including Joseph Milanowski and Tom Hantges, in any capacity other than as a Direct Lender. See Bullard Declaration, ¶ 10.

10. In the interests of full disclosure, on May 22, 2006, Bullard contacted August B. Landis, Assistant U.S. Trustee (the "Trustee") to disclose the existence of the Letter Agreements and their content. After evaluating the Letter Agreements, the Trustee indicated that he believed Fertitta remained representative of other Direct Lenders in that they all share an interest in receiving full payment of their interest and principal. See Bullard Declaration, ¶ 11.

11. On May 23, 2006, the Official Direct Lenders Committee met for its initial meeting. Bullard placed the Letter Agreements before the committee as the first act of business. Bullard provided a copy of the Letter Agreements to each member of the Official Direct Lenders

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

Committee and suggested that the Official Direct Lenders Committee call the Trustee to discuss any conflict of interest the Letter Agreements may pose. Bullard then left the room to allow the Official Direct Lenders Committee to discuss the Letter Agreements without his presence. The Official Direct Lenders Committee unanimously concluded that the interests of Fertitta and other Direct Lenders are identical in that they seek the repayment of their principal and interest in full. See Bullard Declaration, ¶ 12.

12. Bullard is fully aware of his fiduciary duty as a member of the Official Direct Lender Committee and fulfilled those duties to the best of his ability. Furthermore, there have been no allegations that Bullard has failed to fulfill any of his fiduciary duties. See Bullard Declaration, ¶ 13.

### III.
### LEGAL ARGUMENT

**A.    There Is No Conflict Of Interest Between Fertitta and the Direct Lenders**

USA Mortgage alleges that a conflict of interest exists between Fertitta and the Direct Lenders, and therefore, Bullard does not adequately represent the Direct Lenders and should be removed from the Official Direct Lender Committee. However, as set forth below, these claims are unfounded and, as with all of USA Mortgage's assertions, not supported by the slightest shred of evidence.

**B.    Legal Standard**

The Bankruptcy Code does not "mandate a committee must faithfully reproduce the exact complexion of the creditor body." In re: Hills Stores Co., 137 B.R. 4, (Bankr. S.D. N.Y. 1992) Instead, the Bankruptcy Code requires "that conflicting groups of creditors have a voice through adequate representations on a committee." Id. "Adequate representation exists for a single committee as long as the diverse interest in the various creditor groups are represented on and have participated in the committee." In re: Sharon Steel Corp. 100 B.R. 767, 777-778 (Bankr. W.D. Pa. 1989). In fact, members of committees need not have parallel interest in order to qualify for membership. Rather, the Bankruptcy Code recognizes that members may disagree on strategy and objectives, and those conflicts must be resolved through committee's decision-

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

6

making process. <u>In re Barney's, Inc.</u> 197 B.R. 431, 434 (Bankr. S.D.N.Y. 1996). Here, the USA Mortgage has missed the mark in that it seeks to focus on a single member instead of looking to the membership as a whole as contemplated by section 1102(a)(4) which provides:

> On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern (as described in section 3(a)(1) of the Small Business Act), if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate amount of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.

11 U.S.C.A. § 1102(a)(4).

The test for altering a committee is whether as a body, the committee adequately represents the interests of its constituents. Moreover, even upon such a showing, the available remedy is not for a debtor to pick and choose the members it prefers, but defer to the United States Trustee to reconstitute the committee. "For a particular group of creditors to be adequately represented by an existing committee, it is not necessary for the committee to be an exact reflection of that committee's designated constituents. Instead, adequate representation exists if the interests of that particular group of creditors have a meaningful voice on the committee in relation to their posture in the case." <u>In re Dow Corning Corp.</u>, 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), <u>overruled on other grounds by</u> 212 B.R. 258 (E.D. Mich. 1997).

Here, there has been no allegation that the Official Direct Lender Committee as a whole is not representative, only that Fertitta and Bullard have a <u>potential</u> conflict of interest. However, the standard to remove an individual committee member is exceptionally high. <u>In Re American Federation of Television and Radio Artists</u>, 30 B.R. 772, 776 (Bankr. N.Y. 1983) ("There is no basis to remove Tuesday from membership on the Committee because of any conflict of interest … as a result of an affiliation or close alliance with the debtor."); <u>In re First RepublicBank Corp.</u>, 95 B.R. 58, 61 (Bankr. N.D. Tex. 1988) ("A conflict of interest that amounts to a breach of that fiduciary duty constitutes the type of conflict that would mandate removal of the creditor

from the committee."); In re Laclede Cab Co, 145 B.R. 308 (Bankr. E.D. Mo. 1992) ("Courts should not remove a member from a creditors committee in the absence of specific evidence which supports a finding that the member has breached or is likely to breach a fiduciary duty to, or has an actual impermissible conflict of interest with, the class of creditors represented by that member.") In re Penn-Dixie Industries, Inc., 9 B.R. 936 (S.D.N.Y. 1981) (One of larger equity shareholders of debtor under this chapter could properly serve on equity security holders committee where debtor failed to produce any evidence establishing that its charges of shareholder's future misconduct arising out of possible conflict of interest were anything more than speculative.)

Here, the interests of Fertitta, the other members of the Official Direct Lender Committee and the interests of the Direct Lenders are identical, to obtain full payment of their interest and principal. In fact, there is not a single case in which a committee member has been removed for a "potential conflict of interest". Unlike the USA Mortgage's representatives who are subject to the "disinterested" standard contained in section 327[2], official committee members are not held to such a high standard. Because it has not, and will not be shown that Fertitta does not "adequately represent" the interests of the Direct Lenders, there is no basis for Bullard's removal from the Official Direct Lender Committee.

1. **Interest Received By Fertitta on the Notes**

By way of the Motion, USA Mortgage alleges that Fertitta was receiving "favorable treatment" on the Hasely Canyon and Tapia loans. See Motion, p. 3, ll. 22-23. While receiving favorable treatment is not grounds for removal from the Official Direct Lender Committee, such allegations are completely false. There is no special arrangement or side agreement that gives Fertitta a higher interest rate and Fertitta has no knowledge that it may receive a higher interest

---

[2] The Official Committee of Direct Lenders finds it ironic that shortly after filing the motion, Mesirow Financial Interim Management, LLC, was forced to disclose for the first time that they are both representatives of the estate and simultaneously custodians for accounts of at least one Direct Lender. See First Supplemental Declaration Of Thomas J. Allison In Support Of Debtors' Motion For Order Authorizing (I) The Employment And Retention Of Mesirow Financial Interim Management, LLC As Crisis Managers For The Debtors, And (II) The designation Of Thomas J. Allison Of Mesirow Financial Interim Management, LLC As Chief Restructuring Officer For The Debtors And The Employment Of Certain Temporary Employees, docket no. 631.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

8

rate. Fertitta became a Direct Lender by way of the Solicitation. The Solicitation included a set interest rate, which was not negotiated and identical to that of other Direct Lenders. Furthermore, the Notes, which were conveniently not attached to the Motion, have only one interest rate payable to all the Direct Lenders, 13 and 18 percent respectively. There is no mention anywhere of a different interest rate for Fertitta than the other Direct Lenders. Therefore, the evidence shows that there is no different interest rate for Fertitta, and if there is, Fertitta was not aware of it.

Regardless of whether Fertitta is receiving a higher interest rate or not, there is no basis under applicable case law to remove Bullard or Fertitta. As set forth in the <u>Hills Stores</u> opinion, committee members need not have identical interests to those of its constituents. Here, 3600 Direct Lenders are represented by a seven (7) member committee.[3] The members of the committee do not hold investments in amounts or interest rates equal to those of all of their constituents or their fellow committee members. However, they all have the same primary goals of maximizing recovery on account of their loans. Here, Fertitta shares the same interests and there is no reason to believe that its actions have (or will) be anything other than in the best interests of Direct Lenders. Bullard has both the experience and qualifications to carry out his fiduciary duties, and there are no allegations that he has failed to do so. Fertitta, like the rest of the Direct Lenders, will only recover its investment if the Notes are repaid. Therefore, no matter what the interest rate is on the Notes, the common goal is to be repaid on the Notes. Fertitta and the Direct Lenders are in the same position when it comes to recovering any of their investments. Therefore, the interests of the Direct Lenders and Fertitta are aligned. There is no conflict of interest and the Motion should be denied.

2. **The Letter Agreements and Fertitta's Percentatge of the Exit Fee**

USA Mortgage claims that the Letter Agreements create a conflict of interest between Fertitta and the other Direct Lenders. <u>See</u> Motion, p. 5, ll. 3-5. Under the Letter Agreements,

---

[3] At the hearings conducted before this Court on June 15, 2006, counsel for the Debtors in opposing various motions by Direct Lenders for relief from the automatic stay relied in part on the fact that the Direct Lenders are not similarly situated.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

9

Fertitta is awarded a small fraction of the exit fees received by USA Mortgage from the borrowers upon payoff of the notes. If the notes are paid in full, the percentage of the exit fees paid to Fertitta will amount to approximately one quarter of one percent (00.25%) of the loan payoff or sale proceeds. Furthermore, Fertitta only receives its fraction of the exit fees when the corresponding note is repaid and the deed of trust reconveyed. Therefore, it is in Fertitta's interest for the notes to be repaid. Similarly, it is in the best interest of the other Direct Lenders to have the Notes repaid in full. Hence, the Letter Agreements actually strengthens the common interests of Fertitta and the other Direct Lenders. This Court should not second guess the conclusion of the Trustee and the Official Direct Lenders Committee that Fertitta holds no conflict of interest and that it is in the best interests of the Direct Lenders to retain a qualified and capable member like William Bullard.

### 3. Fertitta's Relationship with USA Mortgage's Former Management

USA Mortgage alleges a "close relationship" between Fertitta and USA Mortgage's former management. See Motion, p. 5, ll. 10-11. The assertion of a close relationship between Fertitta and the USA Mortgage's former management is completely false and without merit. USA Mortgage presents no evidence to support such a claim. Instead, USA Mortgage relies on the existence of the Letter Agreements as basis for reckless speculation and innuendo. As set forth in the Bullard Declaration, there is simply no special relationship between Bullard or Fertitta and USA Mortgage's former management.

### C. USA Mortgage Provides No Admissible Evidence To Support Its Claims

Fed. R. Bankr. P. 9017 establishes the rule for evidence on motions in bankruptcy proceedings. Fed. R. Bankr. P. 9017 incorporates Rule 43 of the Federal Rules of Civil Procedure Rule 43(e) provides:

> When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.

Fed. R. Civ. P. 9017(e)(emphasis added).

There is no evidence in the record to support a finding that Fertitta has a conflict of

100933-001/406875

interest with the Direct Lenders and therefore, does not adequately represent their interests.

Pursuant to the Local Rules of Practice for the United States District Court for the District of Nevada, USA Mortgage was required to marshal its evidence and submit it in conjunction with the Motion. Specifically, LR 9014 provides as follows:

> (d)   Contents of motion; affidavits and declarations.
>
> (1)   <u>The motion must state the facts upon which it is based</u> and contain a legal memorandum. <u>If affidavits/declarations are used, they must be filed with the motion, attached as exhibits and tabbed appropriately.</u>
>
> (2)   Affidavits and declarations failing to comply substantially with all of the requirements of subsection (d) of this rule may be stricken in whole or in part upon the request of an opposing party or upon the judge's own initiative. <u>A motion, supported by affidavits and declarations, shall be made under penalty of perjury, shall</u>:
>
> (A)   Identify the affiant, the party on whose behalf the affidavit is submitted, and the motion to which it pertains;
>
> (B)   Contain only factual evidentiary matter or expert opinion, conform as far as possible to the requirements of Fed. R. Civ. P. 56(e), and avoid mere general conclusions or arguments;
>
> (C)   Specify the source and basis of any statement made on information and belief, and the reasons why it cannot be made upon personal knowledge;
>
> (D)   <u>Identify and authenticate documents and exhibits offered in support of the motion or opposition,</u> unless such documents are already in the record and are specifically referred to and identified in the motion or opposition. . .

LR 9014(d)(emphasis added).

USA Mortgage has failed to submit any admissible evidence supporting the claims made in the Motion. The Motion was submitted in contravention of the Local Rules. Therefore, the Motion is entirely based on inadmissible evidence and must be denied.

## IV.
## CONCLUSION

WHEREFORE, the Official Direct Lender Committee respectfully requests that the Court

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

11

1  deny the Motion and for such other relief that is just and proper.

2  DATED this 19th day of June, 2006.

GORDON & SILVER, LTD.

By: /s/
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
KONRAD PILATOWICZ, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/406875

12