Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

  and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON June 20, 2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                           Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                           Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                           Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                           Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                           Debtor. | **DEBTORS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **(AFFECTS ALL DEBTORS)**<br><br><br>Date:  June 21, 2006<br>Time:  9:30 a.m |

- 1 -

1   USA Commercial Mortgage Company ("USA"), USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively, the "Debtors") hereby file their reply memorandum in support of the Debtors' Motion for Order Approving Agreement with Investment Partners seeking Court approval of a security agreement and related promissory note recently given by USA Investment Partners, LLC ("Investment Partners") to document a $58.3 million obligation owed by Investment Partners and to provide collateral for that obligation (and other obligations owed by Investment Partners). In support of this motion, the Debtors in these jointly administered cases respectfully represent as follows.

**I.   The Promissory Note Makes No Determination or Allocation of the Debt Among the Debtors**

1.   The Promissory Note is payable to USA but it does not make any determination or allocation of the debt among the Debtors.

2.   The investigation into the complex financial and business transactions pre-petition is ongoing and the Debtors have not yet determined the proper allocation among the Debtors of the amounts owing by Investment Partners.

3.   As more fully explained herein, because of need to obtain security for the debt owing in a timely manner, the Promissory Note was made payable solely to USA. However, the determination to make the Promissory Note payable solely to USA is without prejudice to any subsequent determination or adjudication that the amounts owed by Investment Partners, under the Promissory Note or otherwise, are to be allocated in a different amount among the various Debtors.

**II.  Neither the Promissory Note Nor Security Agreement Compromise Any of the Debtors' Claims Against Investment Partners**

4.   As evidenced by the pre-petition books and records of the Debtors, significant funds were distributed from USA to Investment Partners resulting in a large receivable owing USA.

5. As a result of the large amount owing by Investment Partners to the Debtors, USA entered into negotiations with Investment Partners to secure repayment of the outstanding obligations. As a result of those negotiations, Investment Partners agreed to sign the Promissory Note and Security Agreement. Importantly, the Security Agreement secures not only the Promissory Note, but also the so called "10-90" loan, as well as any and all other obligations owing by Investment Partners to any of the Debtors. See Security Agreement, §1.1.

6. It cannot be stated emphatically enough that neither the Promissory Note nor the Security Agreement compromise or waive any monetary claim of the Debtors against Investment Partners. Rather, the Debtors have obtained security for a large debt that was previously completely unsecured.

### III. The Debtors' Decision to Forbear Immediate Collection of the Amount Owing is in the Best Interest of the Debtors' Estates and is Reasonable, Fair and Equitable

7. The Debtors' decision not to immediately pursue collection of the amounts owing the Debtors from Investment Partners is in the best interest of the Debtors' estates and meet the standards of Fed. R. Bankr. P. 9019.

8. In approving a settlement under Rule 9019, "[r]ather than an exhaustive investigation or a mini-trial on the merits, the [trial court] need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." In re Pacific Gas & Electric Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004) (citing Martin v. Kane (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986)).

9. In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court's proper role is to "'canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" Id. (quoting In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 396-97 (Bankr. S.D.N.Y. 1991).

10. In canvassing these issues, the Court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their

reasonable views in the premises." In re A&C Properties, 784 F.2d at 1381. "It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." In re Pacific Gas & Electric Co., 304 B.R. at 417 (citing In re WCI Cable, Inc., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

11. As set forth in the Motion, the Debtors assert that there is no basis for disputing the amounts owing the Debtors from Investment Partners, thus, there is a likelihood of success in the litigation. However, in litigation, Investment Partners may assert disputes and defenses, and that litigation would not be without risks, most substantial of which is the ability of the Debtors to collect any judgment against Investment Partners. Indeed, to the Debtors' knowledge, Investment Partners has no unencumbered real property assets which could be executed upon to satisfy any judgment.

12. Furthermore, during the pendency of the litigation, the assets which Investment Partners current holds, interests in various limited liability companies which own real estate development projects (the very assets Investment Partners has agreed to pledge as security for the Promissory Note) could greatly dissipate through the sale of the underlying real estate development projects. The Promissory Note and Security Agreement provide an avenue for the Debtors to claim for the benefit of creditors the funds that would be owed to Investment Partners from the sale of those real estate developments.

13. In addition, although "creditors' objections to a compromise must be afforded due deference, such objections are not controlling…." In re A&C Properties, 784 F.2d at 1382 (citations omitted). Importantly, the Rule 9019 considerations are not be looked at in a vacuum. The First Circuit has recognized that in the Rule 9019 settlement context, the "bankruptcy court essentially is expected to 'assess[ ] and balance the value of the claim[s] … being compromised against the value … of the compromise proposal." Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Intern., Inc.), 136 F.3d 45, 50 (1st Cir. 1998).[1]

---

[1] Because of a typographical error, the Debtor's Motion mistakenly cited In re Healthco Intern., Inc. as a decision of the Ninth Circuit Court of Appeals. The United States Trustee's response also cites the case as from the Ninth Circuit.

- 4 -

14. In this case, as mentioned above, the Debtors are not compromising any right or claim they have against Investment Partners. Instead, in exchange for an agreement to not immediately seek collection of the obligation (which, as explained below, is not in the best interest of the Debtors' estates in any case), the Debtors obtained security for a large debt owing by Investment Partners that was previously unsecured.

15. On information and belief, Investment Partners transferred the funds it received from the Debtors to various entities, including but not limited to the limited liability companies identified in the Security Agreement in which Investment Partners was a member.

16. Investment Partners advanced these funds to various entities to fund the construction of various developments. When completed, these developments would then be sold and the funds previously advanced by Investment Partners would be repaid pursuant to their terms.

17. Because the greatest value for these real estate developments is obtained when they are sold upon completion, the Debtors' decision not to pursue immediate collection of the debts owing results in increased benefit to the Debtors' estates by maximizing the return to the respective LLC.

18. Furthermore, several of the development projects funded by Investment Partners are nearing completion and are expected to be sold in the next 60-90 days. By agreeing not to immediately pursue collection and having the Promissory Note and Security Agreement in place, the Debtors will maximize the value of the collateral securing the repayment of the Promissory Note and likewise maximize the recovery to the Debtors' estates.

**IV.    The Promissory Note and Security Agreement Provide a Tangible Benefit to the Estate**

19. By obtaining the Promissory Note and Security Agreement, the Debtors have obtained security for each of the Debtors for a large debt owing by Investment Partners that was previously completely unsecured.

20. As mentioned above, to the Debtors' knowledge, Investment Partners has no unencumbered real property assets which could provide additional security for the amounts owing Debtors, under the Promissory Note or otherwise. Indeed, Investment Partners' only assets,

1  to Debtors' knowledge, are its membership interests in various limited liability companies,
2  including those identified in the Security Agreement.

3      21.    Just like any other entity, Investment Partners is incapable of granting
4  security interests in anything other than its own assets.  It is simply impractical to require that
5  Investment Partners grant Debtors' security interest in the real property developments owned by
6  the limited liability companies of which Investment Partners is a member.  To do so would require
7  the consent of the other members of each limited liability company with no evidence of debts
8  owed to the Debtors by such other members.

9      22.    The Promissory Note is payable in full on May 31, 2007.  If USA has
10 received prior to May 31, 2007

> from the proceeds of the collateral encumbered by the Security Agreement (net of the Expense Carve-Out described in the Security Agreement) an amount in cash or promissory notes (if each such promissory note is made in an arms-length, commercially reasonable transaction) equal to at least Twenty Million Dollars ($20,000,000) regardless of how applied by the [Debtors] under the Security Agreement, Lender agrees to extend the maturity date of this Note to May 31, 2008….

16 Promissory Note, p.1, ¶2.

17     23.    As reflected by the terms of the Promissory Note itself, if promissory notes
18 are offered the Debtors, they must be "promissory note[s] … made in an arms length,
19 commercially reasonable transaction."  Id.  They cannot simply be replacement promissory notes
20 from Mr. Milanowski or any other insider and must be of a commercially reasonable transaction
21 such that any such promissory note may be further negotiated for value.

22     24.    Additionally, the Promissory Note and Security Agreement also provide a
23 fixed interest rate of 7.75%, compounded annually, whereas, previously, no interest rate was in
24 place.

25 / / /
26 / / /
27 / / /
28 / / /

- 6 -

**Conclusion**

For the reasons set forth above, those presented in the Debtors' Motion, and based upon the arguments of counsel to be presented at the hearing, the Debtors respectfully requests that the Court grant this Motion and enter an order granting the requested relief.

Respectfully submitted this 20th day of June, 2006.

/s/     JEANETTE E. MCPHERSON
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

880047