Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

   and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON JUNE 20, 2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **REPLY IN SUPPORT OF MOTION FOR ORDER TO REMOVE FERTITTA ENTERPRISES, INC. AS  MEMBER OF OFFICIAL COMMITTEE OF HOLDERS OF EXECUTORY CONTRACT RIGHTS** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>□  All Debtors<br>☒ USA Commercial Mortgage Company<br>□ USA Capital Realty Advisors, LLC<br>□ USA Capital Diversified Trust Deed Fund, LLC<br>□ USA Capital First Trust Deed Fund, LLC<br>□ USA Securities, LLC | **(AFFECTS USA COMMERCIAL MORTGAGE COMPANY)**<br><br>Date: June 21, 2006<br>Time: 9:00 a.m. |

- 1 -

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    USA Commercial Mortgage Company ("USA"), through its undersigned counsel, submits

2  this Reply in support of its MOTION FOR ORDER TO REMOVE FERTITTA ENTERPRISES,

3  INC. AS MEMBER OF OFFICIAL COMMITTEE OF HOLDERS OF EXECUTORY

4  CONTRACT RIGHTS (the "Non-Representative Committee Member Motion") and in reply to the

5  oppositions filed by the office of the United States Trustee (the "US Trustee") (docket no. 704)

6  and by the Executory Contracts Committee (the "ECC") (docket no. 722) (collectively, the

7  "Oppositions").  This Reply is supported by the supplemental Declaration of Thomas Allison filed

8  herewith (the "Allison Decl."), prior declarations of Mr. Allison on file with the Court, and the

9  entire record of before the Court.

10    The Oppositions fail to address the central concern raised by the Motion to Remove, which

11  is that Fertitta is not representative of the hundreds if not thousands of direct lenders on loans

12  serviced by USA whose principal repayments were diverted pre-petition and thus are among the

13  largest true creditors of USA.  The special exit fee agreements and uniquely favorable interest

14  rates (which meant Fertitta was paying no servicing fees whatsoever on two large loans) establish

15  that Fertitta was more of a co-broker with USA rather than a typical direct lender.  As best

16  illustrated by the fervent arguments of Fertitta's counsel at the June 15, 2006 hearing, Fertitta has

17  no interest whatsoever in these cases other than "getting its loans out" of the control of this

18  Bankruptcy Court and forcing the Debtors to sue Fertitta in some other forum to recover moneys

19  overpaid to Fertitta.[1]  Thus, Fertitta cannot adequately represent the direct lenders who are the true

20  creditors of USA.

21

22

23  [1] At the June 15, 2006 hearing, the Court warned counsel for the ECC that it was the Court's view that

24  committee counsel should not represent any individual committee member with respect to any issue in
these cases.  Despite the Court's warning, the ECC's counsel, Gordon & Silver, filed an opposition in

25  the name of the ECC espousing various positions and arguments on behalf of Fertitta (including
categorical denials that Fertitta received any "favorable treatment" from USA and that Fertitta had a

26  "close relationship" with USA's former management).  *See* ECC Opposition at 8-10.  Fertitta's
separate counsel in these cases, Jones Vargas, filed only an untimely joinder to the US Trustee's

27  opposition.  Gordon & Silver's actions in defending Fertitta as an advocate rather than taking an
independent view on behalf of the interests of the ECC's creditor constituents as a whole is troubling,

28  and is further evidence that Fertitta's influence over the ECC is unusual and not representative of the
direct lenders as a whole.

- 2 -

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    1.  Fertitta is not representative of direct lenders who are creditors of USA due to the

2 unusual exit-fee agreements Fertitta was able to extract from USA. The Declaration of William J.

3 Bullard ("Bullard Declaration") attempts to downplay the significance of the unusual side-

4 agreements Fertitta obtained to share exit fees with USA. *See* Bullard Declaration at p. 3.

5 However, Mr. Bullard cannot deny that the questionable exit-fee agreements grant Fertitta a large

6 percentage of the exit fees owed to USA under the loan agreements for the Hasley Canyon and

7 Tapia Ranch loans. In fact, according to Section 3.8 of the Hasley Canyon (Los Valles) loan

8 agreement attached as Exhibit C to the Bullard Declaration, USA is entitled to a 1.5% exit fee of

9 the gross sales price as each lot is sold. With a note amount of $11.7 million, USA's total exit fee

10 under this provision would be at least $175,500. The side-agreement between Fertitta and USA

11 purports to give Fertitta a 26.35% share of the exit fee, which would be a total of at least

12 $46,244.25. Similarly, Section 3.6 of the Tapia Ranch (Castaic Partners) loan agreement (Exhibit

13 D to the Bullard Declaration) provides for a 1.5% exit fee in connection with an $18.5 million

14 loan, and Fertitta's purported 22.73% share would be at least $63,075.75. There were other

15 groups of direct lenders who invested large sums in the Hasley Canyon and Tapia Ranch loans,

16 but there is no evidence of USA agreeing to share any exit fees on those loans with any direct

17 lender other than Fertitta. *See* Exhibits C and D to the Non-Representative Committee Member

18 Motion. Although USA has not completed its investigation of Fertitta's connections with USA's

19 former management, it is apparent that USA's exit fee agreements with Fertitta were not based

20 solely on the amount of funds direct lenders invested in the loans.

21    2.  Fertitta is not representative of direct lenders who are creditors of USA due to the

22 higher interest rates and no loan servicing fees paid by Fertitta on the loans in question. Both

23 Oppositions complain that the Non-Representative Committee Member Motion does not allege

24 that Fertitta actually received interest at a higher percentage rate than other investors in the Hasley

25 Canyon and Tapia Ranch loans. At the time the motion was filed, USA had only recently

26 discovered the favorable treatment of Fertitta, and wanted to bring the issue to this Court's

27 attention promptly. USA has now confirmed that Fertitta did in fact receive monthly interest

28 payments at the increased rates stated in the spreadsheets attached as Exhibits C and D to the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    motion, and that other direct lenders on those same loans received the lower interest rates specified

2    in those spreadsheets.  *See* Allison Decl.   The loan documents attached to the Bullard Declaration

3    confirm that Fertitta received the <u>full</u> interest rate stated in the notes and loan agreements on those

4    two loans without the standard deduction for the loan servicing fee that the other direct lenders

5    paid.  Thus, it appears that Fertitta did not pay any amount whatsoever for loan servicing on these

6    two loans.  Further, there is no evidence to support Mr. Bullard's bald assertion the "funds

7    provided by Fertitta were not subject to the payment of sales commissions to individual brokers"

8    or that there were any other "cost savings associated with the Fertitta loans."   Bullard Declaration

9    at ¶ 9.  Instead, the evidence suggests that no other direct lender on those loans was able to obtain

10    such "free servicing" arrangements.  Although USA has not completed its investigation of

11    Fertitta's connections with USA's former management, it is apparent that the willingness of

12    USA's former management to pay elevated interest rates to Fertitta was not based solely on the

13    amount of funds direct lenders invested in the loans.

14         3.    <u>Fertitta's counsel clearly stated why Fertitta is not representative of the direct</u>

15    <u>lenders who are true creditors in this case.</u>  As noted above, Fertitta's counsel of record in these

16    cases, Jones Vargas, in response to a direct question from the Court at the June 15, 2006 hearing,

17    stated unequivocally that the Jones Vargas clients (including Fertitta) had only one desire in these

18    bankruptcy cases:  to take their loans out of the control of this Court and make the Debtors pursue

19    them in a different forum for any and all amounts they may owe on account of overpayments they

20    may have received from USA.  Thus, Fertitta, through its counsel, has admitted that it has

21    absolutely no interest in representing the interests of true creditors of USA who are direct lenders

22    whose principal repayments were diverted pre-petition.  Previous testimony and declarations of

23    Mr. Allison indicate that the amount of such principal diversions is approximately $50 million,

24    and that the direct lenders whose principal was diverted are among the largest true creditors of

25    USA.  The ability of these direct lenders to maximize their recovery from these bankruptcy cases

26    depends heavily on the success of the Debtors' reorganization efforts.  As this Court has

27    recognized in its previous rulings in these cases, direct lenders who want nothing other than to get

28    their fractional loan interests out from under this Court's jurisdiction are directly adverse to, and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    certainly not representative of, the direct lenders who have real claims against these estates.  The

2    arguments in the Oppositions to the effect that a creditors' committee need not approve every

3    action of the debtor-in-possession miss the point.  USA has never asserted that the ECC must

4    approve of every action taken or proposed by the Debtors.  Rather, USA asserts and the plain

5    language of the applicable statute provides that the Court may order the US Trustee to remove a

6    member of an official creditors' committee when "necessary to ensure adequate representation of

7    creditors."  To the extent direct lenders such as Fertitta are not "creditors" of USA and instead owe

8    large sums to USACM's estate, they have no standing to be on any official committee of creditors

9    and certainly cannot be deemed to be "representative" of the direct lenders as a whole in this case.

10    Nor is USA requesting that Fertitta be removed simply because of some "potential" conflict of

11    interest.[2]  Fertitta should be removed and replaced with a direct lender who is an actual creditor of

12    USA with a real financial stake in the success or failure of these cases.  The Court, not the US

13    Trustee, is vested with authority to make this determination.

14         WHEREFORE, USA respectfully requests that the Court order the US Trustee to change

15    the composition of the ECC by removing Fertitta as a member of the ECC and appointing a

16    replacement.

17         Respectfully submitted this 20th day of June, 2006.

18                                             /s/      JEANETTE E. MCPHERSON
                                             Lenard E. Schwartzer, Nevada Bar No. 0399
19                                             Jeanette E. McPherson, Nevada Bar No. 5423
                                             SCHWARTZER & MCPHERSON LAW FIRM
20                                             2850 South Jones Boulevard, Suite 1
                                             Las Vegas, Nevada  89146
21

22                                             and

23                                             Annette W. Jarvis, Utah Bar No. 1649
                                             RAY QUINNEY & NEBEKER P.C.
24                                             36 South State Street, Suite 1400
                                             P.O. Box 45385
25                                             Salt Lake City, Utah 84145-0385

26

27    [2] In any event, the cases cited in the Oppositions on this issue were all decided prior to the 2005
      amendments adding Section 1102(a)(4) to the Bankruptcy Code, and thus are not authoritative to the
28    extent they suggest that actual conflicts of interest are the only reason committee members can be
      removed from an official committee.