Annette W. Jarvis, Utah Bar No. 1649
Douglas M. Monson, Utah Bar No. 2293
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors and Debtors-in-Possession

E-FILED ON JUNE 20, 2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **REPLY BRIEF IN SUPPORT OF DEBTORS' MOTION FOR AUTHORITY TO FORBEAR AND TO PROVIDE FURTHER FUNDING FOR CERTAIN OUTSTANDING LOANS [AFFECTS DEBTOR USA COMMERCIAL MORTGAGE COMPANY, DEBTOR USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, AND DEBTOR USA CAPITAL FIRST TRUST DEED FUND, LLC]** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date of Hearing: June 21, 2006<br>Time of Hearing: 9:00 a.m. |

1  Debtors USA Commercial Mortgage Company ("USACM"), USA Capital Diversified
2  Trust Deed Fund, LLC ("Diversified Trust Deed Fund"), and USA Capital First Trust Deed Fund,
3  LLC ("First Trust Deed Fund") (collectively, the "Debtors"), submit this Reply Brief in support of
4  the Debtors' "Motion for Authority to Forbear and to Provide Further Funding for Certain
5  Outstanding Loans" (the "Motion"), and also in reply to the objections to the Motion that have
6  been filed.

## INTRODUCTION

The Debtors filed the Motion in order to seek Court approval (to the extent that the following are not transactions in the ordinary course of business) for the Debtors to do the following: (a) for the Debtors to provide their consent to the sale of excess collateral securing the Franklin/Stratford Loan and to the disbursement to the general contractor of the net proceeds as a source of funding to pay for the completion of the Franklin/Stratford Project; (b) for Debtor USACM to make an additional loan advance of $125,000 on the Boise/Gowan Loan; (c) for Debtor USACM as Servicer to provide partial releases in connection with the sales of three condominium units that are collateral for the Amesbury Nonperforming Loan; and (d) for Debtor USACM as Servicer to agree to forbear until January 1, 2007, on declaring any default on four Nonperforming HFA Loans. It is the Debtors' business judgment that all four of these actions are in the best interests of the Debtors and the affected Direct Lenders and are prudent actions that should be taken to preserve the collateral for the affected Loans and to enhance the likelihood of repayment in full of such Loans (or in the case of the Amesbury Loan, the realization of full value from the sale of 3 condominium units securing the Amesbury Loan).

**I.  REPLY TO LIMITED OPPOSITION BY McKNIGHT 2000 FAMILY TRUST**

On June 15, 2006, the McKnight 2000 Family Trust ("McKnight") filed a Limited Opposition to the Motion (Docket No. 670). In its Limited Opposition, McKnight concedes that "[t]he McKnight 2000 Family Trust is not a direct lender with regard to any of the loans in question and does not take issue with the particular transactions that are at issue here." Docket No. 670 at p. 2. McKnight evidently filed its Limited Opposition because it was concerned that the Court's ruling on the Motion might be applied to other Loans. McKnight contends that

- 2 -

1  "[e]ach loan transaction or loan restructuring, however, should properly be considered on its
2  merits." *Id.* Debtors assert that the merits of each of the transactions outlined in the Motion stand
3  on their own, and that the Debtors have demonstrated that they have properly exercised their
4  business judgment in proposing the transactions outlined in the Motion.

**II.    REPLY TO OBJECTION BY OFFICIAL EQUITY COMMITTEE OF FIRST TRUST DEED FUND**

7  On June 19, 2006, the Official Committee of Equity Security Holders of USA Capital First
8  Trust Deed Fund, LLC (the "First Trust Deed Fund Committee") filed its Limited Opposition to
9  the Motion (Docket No. 720), stating that the Committee supports the proposed Franklin/Stratford
10 Loan and Amesbury Loan transactions, but objects to the Boise/Gowan Loan transaction and the
11 proposed forbearance for the HFA Loans.  The First Trust Deed Fund Committee concedes that
12 the First Trust Deed Fund is not a Direct Lender in the Boise/Gowan Loan, but argues that the
13 Debtors should have negotiated a better deal with Boise/Gowan by requiring that Borrower to
14 fund some or all of the requested $125,000 additional loan advance.  However, the Debtors are not
15 required to show that they have negotiated the very best possible deal in order to meet the business
16 judgment test.  Debtors need only show that there is a sound business purpose justifying the
17 actions for which the Debtors are seeking Court approval.  Advancing additional loan funds to
18 Boise/Gowan in order to prevent the filing of liens and to enhance the likelihood of the sale of the
19 Boise/Gowan Project (which should result in the pay off of the Boise/Gowan Loan in full) clearly
20 has a sound business justification.

21 Likewise, the requested forbearance for the four remaining HFA Loans is intended by the
22 Debtors to facilitate the efforts by the HFA Borrowers to immediately refinance these HFA Loans
23 so that they can be paid off in full.  The First Trust Deed Fund Committee argues that the Debtors
24 should have extracted some additional consideration from the HFA Borrowers for the requested
25 forbearance.  Again, the argument that the Debtors should have driven a harder bargain (which
26 assumes that the HFA Borrowers would have agreed to a more onerous arrangement) is not the
27 standard by which the Debtors' business judgment is tested.  HFA has already informed the
28 Debtors that it desires to pay off all of the loans to all of the HFA affiliates by the end of 2006, and

has shown its good faith by already paying off three of these loans **in full,** which is the ultimate goal of all of the parties in these bankruptcy cases. HFA's good faith effort to seek immediate refinancing for the remaining four HFA Loans should be consideration enough for the limited forbearance requested by HFA. Notwithstanding speculation by the First Trust Deed Fund Committee, the requested limited forbearance is not intended to benefit any insiders or guarantors, but is intended to enable the HFA Borrowers to pay off the remaining four HFA Loans in full.

### III.    REPLY TO OBJECTION BY UNITED STATES TRUSTEE

On June 19, 2006, the United States Trustee filed his Opposition to the Motion (Docket No. 706). In his Opposition, the United States Trustee properly reminded the Debtors that this Court has ordered that notice be given to any party directly affected by a motion filed with this Court. However, the required notice of the Motion at issue has been given by the Debtors. On June 19, 2006, BMC Group, Inc., the Claims and Noticing Agent for the Debtors, filed its Certificate of Mailing (Docket No. 721), certifying that Docket No. 644, the Notice and Hearings Regarding the Motion for Authority to Forbear and to Provide Further Funding for Certain Outstanding Loans (and other Motions also set for hearing on June 21, 2006) was served on June 14, 2006, to the 957 parties listed in the Certificate of Mailing. These parties included counsel for the First Trust Deed Fund Committee and counsel for the Diversified Trust Deed Fund Committee (which are the only Direct Lenders for the Franklin/Stratford Loan and the HFA Monaco Loan), the 17 Direct Lenders for the Boise/Gowan Loan, the 393 Direct Lenders for the Amesbury Loan, the 207 Direct Lenders for the HFA Clear Lake Loan, the 36 Direct Lenders for the HFA Clear Lake 2nd Loan, and the 74 Direct Lenders for the HFA Windham/Asylum Loan, as well as the parties on the limited mailing matrix for these bankruptcy cases. Therefore, the necessary notice of their opportunity to object and be heard has been given to the affected Direct Lenders.

The United States Trustee appears to read the Motion as requesting authority (after the fact) for USACM's acceptance of the full payoffs of the three HFA Loans that were repaid in full in May of 2006. Seeking such authority is not required for a full payment payoff. Acceptance of full payoffs of Loans is clearly in the ordinary course of business for Debtor USACM, and the Debtors will not burden this Court by seeking authority for such acts when they are clearly

- 4 -

authorized by 11 U.S.C. §363(c)(1). The United States Trustee also contends that the Debtors "have already entered into agreements that materially affect the rights of the parties holding direct interests in those loans." Docket No. 706, p. 3. The Motion makes clear that any agreements with the Borrowers outlined in the Motion have always been subject to Court approval.

The United States Trustee is concerned that the closing date for the sale of excess collateral for the Franklin/Stratford Loan was set for June 19, 2006, two days prior to the date of the hearing on the Motion; however, that closing date was set by the Borrower without any input from the Debtors, and the Debtors have not yet given their consent to that sale, pending approval of the Motion. The United States Trustee also assumes that the payoffs of the three HFA Loans were tied to or conditioned upon the approval of the forbearance for the four remaining HFA Loans outlined in the Motion. That is not the case. The earlier payoffs were not conditioned upon the approval of the forbearance requested in the Motion. However, such payoffs prior to the maturity dates of the three HFA Loans does provide support for the Debtors' belief that HFA in good faith is doing all that it can to refinance the remaining Four HFA Loans before the end of 2006. Such refinancings will inure to the benefit of all parties without the expense of collection actions which the United States Trustee evidently believes should be pursued instead.

The United States Trustee argues that the Debtors should be required to present evidence that the property involved in the transactions outlined in the Motion are "property of the estate" under Section 363(b)(1). The contractual rights that the Debtors are seeking authority to exercise, along with the undivided interests held by the First Trust Deed Fund and the Diversified Trust Deed Fund in some of the Loans at issue in the Motion, amply demonstrate that "property of the estate" is involved. Finally, the United States Trustee questions whether or not any of the former insiders of the Debtors will benefit from any of the transactions for which approval is being sought. The benefits that the Debtors intend to result from approval of the Motion are the preservation of collateral for the affected Loans and the ultimate repayment in full of such Loans (or in the case of the Amesbury Loan, the realization of full value from the sale of 3 condominium units). The Debtors are not intending to benefit any former insiders of the Debtors, and the

collection and foreclosure rights that the Debtors have against the Borrowers and any guarantors are not being waived or compromised.

### IV. REPLY TO OBJECTION BY THE OFFICIAL COMMITTEE OF DIRECT LENDERS

On June 19, 2006, the Official Committee of Holders of Executory Contract Rights Through USA Commercial Mortgage Company (the "Direct Lenders Committee") filed its Opposition to the Motion (Docket No. 713). The Direct Lenders Committee also argue that the Motion should be denied because the Direct Lenders for the affected Loans have not been given proper notice of the Motion. As outlined above in the Reply to the Objection by the United States Trustee, the proper notice was given to the affected Direct Lenders on June 14, 2006.

The Direct Lenders Committee argues that there is insufficient evidence presented to the Court to show that the Debtors have properly exercised their sound business judgment. This is not true. The Motion is supported by the Declarations of Robert Russell and Gary Buentgen that were filed with the Motion, as well as the Declaration and Supplemental Declarations of Thomas Allison on file with this Court. These Declarations provide ample evidence that the Debtors have properly exercised their business judgment in connection with the Motion.

The Direct Lenders Committee asserts that USACM is attempting to take actions without required Direct Lenders consent under Section 2(e) of the Loan Servicing Agreement. However, the Debtors are not proposing that any interest rate be changed, nor proposing the forgiveness of payment of principal or interest, nor proposing the extension of the maturity date of any Loan. Likewise, the Debtors are not proposing that the outstanding principal amount of any Loan be changed. The $125,000 additional loan advance requested for the Boise/Gowan Loan is within the maximum possible principal amount set forth in the Boise/Gowan Loan Agreement, to which the Direct Lenders for the Boise/Gowan Loan as parties to such Loan Agreement agreed. The Debtors are not proposing any loan advance that exceeds the maximum possible principal Loan Amount of $2,550,000 in the Boise/Gowan Loan Agreement. As stated in Section 3.2 of the Boise/Gowan Loan Agreement, both the Direct Lenders **and** USACM had the exclusive right, but not the

obligation, to increase the Boise/Gowan Loan Amount to the maximum possible amount of $2,550,000, which will occur when the $125,000 additional loan advance is approved and funded.

The Direct Lenders Committee contends that under USACM's current mortgage broker's license, USACM "may only make loans secured by liens on real property funded by institutional investors." Docket No. 713 at p. 9. The Debtors are concurrently seeking Court approval for debtor-in-possession funding from an institutional lender (the "DIP Loan"). Debtor USACM agrees that the requested $125,000 additional loan advance for the Boise/Gowan Loan should be funded from the DIP Loan (assuming Court approval of the DIP Loan), not from the existing operating funds of Debtor USACM.

The Direct Lenders Committee incorrectly asserts that the funding of the $125,000 additional loan advance will subordinate the interests of the existing Direct Lenders in the Boise/Gowan Loan. The existing Direct Lenders have known and agreed from the very beginning of their involvement in the Boise/Gowan Loan that the maximum possible principal amount of the Boise/Gowan Loan was $2,550,000, and that if they did not fund the future increases in the Boise/Gowan Loan Amount, that other Direct Lenders (including Debtor USACM) would fund those increases and participate in the Boise/Gowan Loan and the related collateral on a pari passu basis. This result, which was clearly agreed to by the existing Direct Lenders, is not a subordination of their interests. All Direct Lenders will share pro rata in the payments made on the Boise/Gowan Loan, including the proceeds from any realization on the collateral for the Boise/Gowan Loan.

The Direct Lenders Committee also contends that funding the $125,000 additional loan advance will materially and adversely affect the security for the Boise/Gowan Loan held by the Direct Lenders. However, it is clear that the additional funding, which will help prepare the Boise/Gowan Project for sale (with resulting payoff of the Boise/Gowan Loan) and prevent liens from being filed which might impair the sale efforts for the Boise/Gowan Project, actually enhances the security for the Boise/Gowan Loan.

The Direct Lenders Committee also objects to the Amesbury Loan proposed partial releases, contending that USACM no longer has authority to act under the Loan Servicing

1  Agreements or related powers of attorney because NRS §645B.330 provides that a mortgage
2  servicer's power of attorney is effective only for the "term of the specific loan."  The Direct
3  Lenders Committee points out that the Amesbury Loan matured on June 30, 2005, and asserts
4  under a strained interpretation of NRS §645B.330 that USACM's authority as Servicer expired on
5  that date.  However, it is clear that the proper interpretation of "term of the specific loan" relates to
6  the repayment of a specific loan, not to its maturity.  NRS §645B.330 cannot reasonably be
7  interpreted as mandating that the mortgage servicer's authority expires at the time that a loan
8  matures, even if the loan is not paid at maturity, unless additional authority is obtained from the
9  private investors.  The collection efforts of a mortgage servicer (which in USACM's case are
10 carefully delineated in the Loan Servicing Agreements) are critical at the maturity of a loan if the
11 loan is not paid at that time.  The statute should not be interpreted to eliminate the mortgage
12 servicer's authority at the very time when immediate action by the servicer is needed the most.

13 The Direct Lenders Committee also attacks the Debtors' business judgment that it is
14 prudent to grant a limited forbearance for the Four HFA Loans while these Borrowers seek
15 refinancing.  Debtors' business reasons for agreeing to the limited forbearance have already been
16 outlined above.  Debtors' goal is to have all of the HFA Loans repaid in full, and the limited
17 forbearance is intended to further that goal.  There is no plan by the Debtors to favor one group of
18 Direct Lenders over another.  If foreclosure or other collection efforts (which are not being waived
19 or compromised) are ultimately necessary in order to achieve repayment of the four remaining
20 HFA Loans, Debtor USACM will do what is necessary to collect on these Loans.  However, it is
21 USACM's business judgment at this time that it will be more fruitful (and less costly in terms of
22 time and money) for all parties to allow HFA a limited amount of time to refinance.

23 Finally, the Direct Lenders Committee objects to the Debtors' request that the 10 day stay
24 imposed by Bankruptcy Rule 6004(g) be waived because of the immediate and urgent need for the
25 Debtors to implement the approvals requested in the Motion.  This objection is based upon the
26 mistaken assumption that the Direct Lenders affected by the Motion were not provided notice,
27 which is not true, as outlined above.
28 / / /

- 8 -

## V. REPLY TO OBJECTION BY SCOTT CANEPA

On June 19, 2006, Direct Lender Scott Canepa ("Canepa") filed his Opposition to the Motion (Docket No. 717). Canepa, who is a Direct Lender in the Boise/Gowan Loan, objects to the $125,000 additional loan advance for the Boise/Gowan Loan. Canepa contends that this additional loan advance cannot be made from USACM's operating funds because of the limitations imposed on its mortgage broker's license. As outlined above in the Reply to the Direct Lenders Committee's Objection, Debtor USACM agrees that the requested $125,000 additional loan advance for the Boise/Gowan Loan should be funded from the DIP Loan (assuming Court approval of the DIP Loan), not from the existing operating funds of Debtor USACM. However, Debtor USACM still requests approval of its business judgment that the $125,000 additional loan advance should be made, contingent upon approval of the DIP Loan.

Canepa also asserts that the $125,000 additional loan advance is contrary to the terms of the Boise/Gowan Loan Agreement, the Loan Servicing Agreement, and the related Special Powers of Attorney. Specifically, Canepa quotes from his Special Power of Attorney, which authorizes USACM as Servicer to modify and amend the Boise/Gowan Note and Deed of Trust on such terms and conditions as required by the Loan Agreement. As outlined above in the Reply to the Direct Lenders Committee's Objection, the Boise/Gowan Loan Agreement, to which Mr. Canepa is a party, specifically contemplates that the maximum possible Loan Amount of the Boise/Gowan Loan was $2,550,000, and the additional $125,000 additional loan advance will bring the funding of the Boise/Gowan Loan exactly to that level. Documenting the additional $125,000 loan advance by amendments to the existing Boise/Gowan Note and Trust Deed will exactly conform to the terms and conditions outlined in and required by the Boise/Gowan Loan Agreement.

Finally, Canepa inaccurately states that "[a]s a condition of continuing the hearing date [on Canepa's Motion for Relief From Stay] to August 4, the Bankruptcy Court ordered the parties to maintain the status quo on the [Boise/Gowan] loan, which includes: (a) no additional advances to the borrower; and (b) no extension of the August 26, 2006 loan maturity date." Docket No. 717, p. 4. This Court did state that no further action should be taken on the Boise/Gowan Loan without further Court order, but this Court did not rule that no additional advances could be made, which

1  would have been a ruling on the current Motion.  The current Motion was on file on June 15,
2  2006, but was not scheduled to be heard on June 15, 2006.

## CONCLUSION

The Debtors clearly have demonstrated that there are sound business justifications for the transactions that the Debtors are requesting be approved pursuant to the Motion.  These transactions are well within the sound discretion of the Debtors' business judgment, and they have exercised that business judgment by requesting that the Court approve these transactions.  The Debtors have provided an ample evidentiary and legal basis for granting the Motion.  The Debtors respectfully request that the objections to the Motion be overruled, that the Motion be granted, and that the 10 day stay period under Bankruptcy Rule 6004(g) be waived.

Respectfully submitted on June 20, 2006.

Annette W. Jarvis, Utah Bar No. 1649
Douglas M. Monson, Utah Bar No. 2293
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

/s/     JEANETTE E. MCPHERSON
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Attorneys for Debtors