# EXHIBIT "1"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

**E-FILED ON APRIL 14, 2006**

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | **MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363 APPROVING DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND INTERIM USE OF CASH IN ACCORDANCE WITH PROPOSED CASH BUDGET** |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br><br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date:<br>Time: |

C:\temp\OLK2S\Motion Re Cash Management v3 - 041406.DOC

1    USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated

2    debtors, which are USA Securities, LLC ("USAS"), USA Capital Realty Advisors, LLC

3    ("USARA"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), and USA

4    Capital First Trust Deed Fund, LLC ("First Deed Fund") (collectively, the "Debtors"), hereby

5    moves the Court for an order under 11 U.S.C. §§ 105(a), 345, and 363 approving the Debtors'

6    proposed cash management procedures and interim use of cash in accordance with the proposed

7    cash budget for the first 90 days of this case, which budget is attached hereto as **Exhibit A**. This

8    Motion seeks immediate entry of an order approving cash management procedures and the use of

9    cash for the later of the first 7 days of the case or until a hearing on interim use of cash is held and,

10    after notice and a hearing, a further order approving the cash management procedures and the use

11    of cash for the first 90 days of the case.   In support of this Motion, USACM represents as follows:

## FACTUAL BACKGROUND

13    1.    The Declaration of Thomas J. Allison ("Allison") provides background information

14    concerning the Debtors, their current status and problems (including substantial commingling of

15    funds, which is also discussed below), and the pressing need for the limited use of cash to preserve

16    the value of the loan portfolio serviced by USACM for the benefit of all creditors of and investors

17    in the Debtors as a unified enterprise.

18    2.    Allison, who upon the filing of the bankruptcy petitions was installed as the new,

19    independent management for each of the Debtors, now serves as the sole Manager of the four

20    Debtors who are limited liability companies (USAS, USARA, Diversified Fund, and First Deed

21    Fund), and as the president of the corporate debtor USACM, with full authority to oversee the

22    restructuring and reorganization of the Debtors' unified business enterprise.  Prior to the petition

23    date, Allison and other restructuring professionals from Mesirow Financial had an opportunity,

24    although limited, to investigate the facts and circumstances surrounding the Debtors, their joint

25    business enterprise, and their books and records.  Therefore, although the representations and

26    conclusions stated in this Motion and in the related papers filed herewith are of necessity

27    preliminary in nature, the Debtors, acting through Allison as their new chief restructuring officer,

28    strongly believe that the relief requested in this Motion is warranted and is in the best interest of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2

1  all parties in interest.

2      3.      As of the bankruptcy petition date, USACM was the servicer for a loan portfolio of

3  approximately 100 open commercial mortgage loans (the "Loan Portfolio"). A substantial portion

4  of the loans in the Loan Portfolio have been divided into fractionalized shares that are held by

5  many different noteholders. The noteholders of the loans in the Loan Portfolio fall into three main

6  categories: (1) Diversified Fund holds a 100% interest in some of the loans, and only

7  fractionalized shares in some others; (2) First Deed Fund holds a 100% interest in some of the

8  loans, and only fractionalized shares in some others; and (3) various groups of individual investors

9  hold 100% interests in some of the loans, and only fractionalized shares in many others. Of the

10  approximately 100 loans in the Loan Portfolio, approximately 20 are owned 100% by Diversified

11  Fund and/or First Deed Fund (collectively, the "Funds"), approximately 30 others are owned

12  100% by various groups of investors not including the Funds, and the remaining approximately 50

13  loans are held in fractional shares by one or both of the Funds along with various groups of

14  individual investors.

15      4.      There are approximately 1,900 members owning the membership interests in the

16  Diversified Fund, approximately 1,300 members owning the membership interests in the First

17  Deed Fund, and approximately 3,600 direct investors (other than the Funds) who own fractional

18  shares of various loans in the Loan Portfolio, with substantial overlap among the members of the

19  Funds and the individual investors holding direct investments in loans within the Loan Portfolio.

20  In other words, a substantial number of the 3,600 individual investors who directly hold the

21  portions of the Loan Portfolio that are not owned by either of the Funds are the same individuals

22  who also invested indirectly in the Loan Portfolio by purchasing membership interests in one or

23  both of the Funds.

24      5.      Prior to April 2006, the individual holders of the direct interests in the notes in the

25  Loan Portfolio and the individual owners of the membership interests in the Funds (collectively,

26  the "Investors"), received interest payments from the Debtors each month—whether or not the

27  interest payments had been collected from the borrowers on the loans in the Loan Portfolio.

28  Furthermore, it appears that when borrowers paid down principal or paid off loans within the Loan

3

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Portfolio, the principal payments received by USACM as loan servicer were not returned to the

2  borrowers but were held and used in some cases to fund interest payments to Investors holding

3  interests in non-performing loans.

4     6.     Based on payments made to Investors whether or not they were entitled to receive

5  payments, and based on loans being paid off and collateral being released without the loan-payoff

6  amounts being remitted to Investors, many or most of the Investors probably owe money to or are

7  owed money by the Debtors, or both.  However, because the Debtors' financial records did not

8  accurately match the receipts of loan payments and disbursements of funds to Investors, and

9  because funds were commingled in various accounts, it is difficult to determine the actual amounts

10  owed to and/or owed by each Investor.  Under new management, the Debtors believe that the cash

11  management procedures proposed in this Motion affords the Debtors the best chance of sorting out

12  these issues as quickly as possible under the circumstances, and of preserving the value of the

13  Loan Portfolio for the benefit of all Investors.

14     7.     Some of the loans in the Loan Portfolio are construction and/or development loans

15  in which there are ongoing funding commitments.  If remaining committed amounts are not

16  funded for these loans, collecting the outstanding loan balance on these loans for the benefit of

17  Investors may become much more difficult.  It appears that such loans are held in the portion of

18  the Loan Portfolio held by the Funds as well as in the portion held only by the direct Investors.

19     8.     It appears that non-performing loans exist in the portion of the Loan Portfolio held

20  by the Funds as well as in the portion held only by the direct Investors.  Limited collection activity

21  appears to have taken place on these non-performing loans.  Collecting the outstanding interest

22  and matured principal is a top priority in preserving value for all Investors.

23     9.     It appears that prior to April 2006, USACM as servicer for the entire Loan Portfolio

24  did not carefully distinguish between the loans that were held directly by the Funds and the loans

25  in which the Funds had no interest.  USACM and the other Debtors apparently treated all Investors

26  and the entire Loan Portfolio as if they were part of a single business enterprise.

27     10.     As servicer for the entire Loan Portfolio, USACM was contractually entitled to

28  collect a serving fee from the incoming loan payments, but apparently did not regularly collect the

4

1    fee.

2        11.    Although separate bank accounts exist for each of the five Debtors, funds received

3    by the Debtors from interest, loan payments and loan payoffs were commingled primarily into a

4    "Collection Trust Account" held in the name of USACM, and funds from this bank account were

5    used to make monthly interest payments to Investors as well as to fund the ongoing operations and

6    overhead of the Debtors' joint business enterprise. The separate bank accounts of the Funds were

7    used as disbursement vehicles for interest payments to the Fund investors. USACM maintains

8    operational bank accounts for operating expenses, loan closings and other business purposes. The

9    bank accounts of the other Debtors were rarely used. A list of bank accounts is attached as **Exhibit**

10   **B**. **Exhibit C** is a diagram which shows how the Debtors used a collection account and an

11   investor account to collect from all borrowers no matter which party had made the loan and no

12   matter which entity was making the loans.

**PROPOSED CASH MANAGEMENT PROCEDURES**

14       In order to preserve the value of the Loan Portfolio for the benefit of all Investors, and to

15   provide the Debtors, which are under new management, with a limited period of time and limited

16   funds to promptly investigate and sort out the issues that need to be immediately addressed

17   relating to the Loan Portfolio and the accounts of each of the Investors, the Debtors proposed the

18   following cash management procedures:

19       a.    The Debtors will establish a new, Debtor-In-Possession bank account (the "DIP

20   Collection Account") at Wells Fargo Bank that will have the ability to accept "lock-box"

21   payments from the borrows on the loans within the Loan Portfolio (the "Borrowers").

22       b.    The Debtors will maintain the so-called "Collection Trust Account" of USACM at

23   Wells Fargo Bank (the "Collection Account") to facilitate the continuing receipt of wire transfer

24   payments from the Borrowers. This account receives all interest and principal payments from the

25   loans for which USACM serves as servicing agent. Most of these payments are made

26   electronically by the borrowers. Closing this account would require all borrowers to alter or

27   modify their wiring instructions which could result in delays in expected cash flow, as well as

28   miscommunication on the application of funds received. Loan Payments, loan payoffs, and all

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  other amounts existing or received into the Collection Account will be transferred promptly to the

2  DIP Collection Account.  As of the petition date, Wells Fargo will be instructed to reject all

3  checks, wires and ACHs presented for payment from this account and the Debtors will cease all

4  electronic payments from this account.

5         c.      The Debtors will maintain detailed records concerning the source (including

6  identification of the specific borrow and specific loan to which the payment relates, if applicable)

7  of each payment coming into the Collection Account and the DIP Collection Account.

8         d.      USACM maintains an operating account at Wells Fargo Bank from which ADP

9  will draw the necessary payroll funds on April 17.  In addition, that account is set up to receive

10  certain wire transfers.  While the Debtors will open a separate "DIP Operating Account" from

11  which the business and administrative expenses of the Debtors will be paid, it will not be possible

12  to transfer the ADP ACH payment to a new account prior to the payroll date.  Accordingly, the

13  Debtors request permission to allow existing operating account at Wells Fargo to remain open,

14  with instructions to the bank to refuse to honor checks, and allow the deposit of funds for this

15  current payroll cycle and the ACH withdrawal by ADP.  It is anticipated that the transfer of ADP

16  instructions to the DIP Operating Account will be completed before the following payroll cycle,

17  allowing the closure of the existing operating account.

18         e.      All other bank accounts that exist in the name of any of the Debtors will be closed,

19  and the funds will be transferred to a respective DIP Account, so that each Debtor maintains a DIP

20  account.  The only bank accounts which are anticipated to have funds for these Debtors will be the

21  DIP Collection Account, the Collection Account, and the DIP Operating Account (collectively the

22  "DIP Accounts").

23         f.      The aggregate amount of the line items in the cash budget attached hereto as

24  **Exhibit A** (the "Budget") for each week will be transferred from the DIP Collection Account to

25  the DIP Operating Account, to be used only for payment of the expenses and costs set forth in the

26  Budget to the extent approved by the Court.  The Budget anticipates that operating expenses will

27  be required in order to (a) continue servicing the loan portfolio; (b) analyze and investigate the

28  amounts owed to or from each Investor; (c) collect amounts due from borrowers including

6

1    commencing foreclosure proceedings or other collection expenses.  These necessary activities will

2    inure to the benefit of all Investors in maintaining the value of the Loan Portfolio and in

3    determining the proper amounts due to and from all Investors.

4        g.    All rights, if any, of the Investors, including indirect rights as members of the

5    Funds and direct rights as holders of other notes (or fractional interests in notes) in the Loan

6    Portfolio or in the proceeds thereof will attach to the DIP Accounts except that the amounts in the

7    Court-approved budget may be transferred to the DIP Operating Account as set forth above for the

8    benefit of all Investors.

9                                **CONCLUSION**

10       Based on the foregoing, the Debtors respectfully request this Court to approve the Debtors'

11   proposed cash management procedures and interim use of cash in accordance with the proposed

12   budget, for such purposes and on such terms as set forth herein.

13       Respectfully submitted this _14_ day of April, 2006.

14

15                          Annette W. Jarvis, Utah Bar No. 1649
                            RAY QUINNEY & NEBEKER P.C.
16                          36 South State Street, Suite 1400
                            P.O. Box 45385
17                          Salt Lake City, Utah 84145-0385

18
                            and
19
20                          Lenard E. Schwartzer
                            Nevada Bar No. 0399
21                          Jeanette E. McPherson
                            Nevada Bar No. 5423
22                          Schwartzer & McPherson Law Firm
                            2850 South Jones Boulevard, Suite 1
23                          Las Vegas, Nevada  89146-5308

24
                            Attorneys for Debtors
25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

C:\temp\OLK28\Motion Re Cash Management v3 - 041406.DOC

# EXHIBIT A

USA Commercial Mortgage Company, et al.
13-Week Cash Forecast
*($ in thousands)*

**13-Week Cash Forecast**

| | | | | | | | Week Ending | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4/22/2006 | 4/29/2006 | 5/6/2006 | 5/13/2006 | 5/20/2006 | 5/27/2006 | 6/3/2006 | 6/10/2006 | 6/17/2006 | 6/24/2006 | 7/1/2006 | 7/8/2006 | 7/15/2006 |
| **Cash Receipts** | | | | | | | | | | | | | |
| USA Commercial Mortgage - Wells Fargo | | | | | | | | | | | | | |
| Loan Closing Fees | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $900.0 | $0.0 | $0.0 |
| Extension Fees | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Other Income | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 26.6 | 0.0 | 0.0 |
| Total Cash Receipts (USA/CMC - Wells Fargo) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $926.6 | $0.0 | $0.0 |
| USA Commercial Mortgage - LaSalle | | | | | | | | | | | | | |
| Loan Closing Fees - Perm | $25.0 | $0.0 | $7.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Appraisal revenue - Perm | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Cash Receipts (USA/CMC - LaSalle) | $25.0 | $0.0 | $7.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Collections Trust Account | | | | | | | | | | | | | |
| Estimated Interest Return | $0.0 | $0.0 | $0.0 | $5,895.7 | $0.0 | $0.0 | $0.0 | $5,623.2 | $0.0 | $0.0 | $0.0 | $0.0 | $5,648.8 |
| Expected Returned Principal | 0.0 | 0.0 | 0.0 | 4,828.0 | 0.0 | 0.0 | 26,950.0 | 0.0 | 10,679.1 | 23,683.7 | 0.0 | 0.0 | 0.0 |
| Expected Outstanding Fee Return | 0.0 | 0.0 | 0.0 | 146.3 | 0.0 | 0.0 | 222.8 | 0.0 | 314.0 | 320.0 | 0.0 | 0.0 | 0.0 |
| Expected Outstanding Interest Return | 0.0 | 0.0 | 0.0 | 813.2 | 0.0 | 0.0 | 994.5 | 0.0 | 57.4 | 20.4 | 0.0 | 0.0 | 0.0 |
| Expected Cash Collections | $0.0 | $0.0 | $0.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $0.0 | $0.0 | $5,648.8 |
| Total Cash Receipts - Filed Entities | $25.0 | $0.0 | $7.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $926.6 | $0.0 | $5,648.8 |
| **Cash Disbursements** | | | | | | | | | | | | | |
| USA Commercial Mortgage - Wells Fargo | | | | | | | | | | | | | |
| Total Swing Expense | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $6.9 | $0.0 | $0.0 |
| Administrative Expenses | | | | | | | | | | | | | |
| Salaries & Wages | 203.6 | 0.0 | 80.0 | 0.0 | 77.8 | 0.0 | 0.0 | 80.0 | 0.0 | 77.8 | 0.0 | 80.0 | 0.0 |
| Payroll Related Benefits | 14.5 | 0.0 | 27.9 | 0.0 | 14.5 | 0.0 | 13.4 | 14.5 | 0.0 | 14.5 | 13.4 | 14.5 | 0.0 |
| Rent | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 | 0.0 | 57.1 | 0.0 | 0.0 |
| Total Legal | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 3.9 | 3.9 | 3.9 | 3.9 |
| Total Other Administrative Expenses | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 |
| Total Administrative Expenses | $258.0 | $40.0 | $205.0 | $40.0 | $132.3 | $40.0 | $110.5 | $134.5 | $40.0 | $136.2 | $114.4 | $138.4 | $43.9 |
| Total Other Expense | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $2.9 | $0.0 | $0.0 |
| Total Cash Disbursements (USA CMC - Wells Fargo) | $258.0 | $40.0 | $205.0 | $40.0 | $132.3 | $40.0 | $110.5 | $134.5 | $40.0 | $136.2 | $124.1 | $138.4 | $43.9 |
| USA Capital Realty Advisers | | | | | | | | | | | | | |
| Marketing | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 | $3.7 |
| Total Legal | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 |
| Total Other | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 |
| Total Cash Disbursements (USA Capital Realty) | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 | $12.1 |
| Total Cash Disbursements - Filed Entities | $270.1 | $52.1 | $217.1 | $52.1 | $144.4 | $52.1 | $122.6 | $146.6 | $52.1 | $148.3 | $136.2 | $150.5 | $55.0 |
| **Net Change in Cash USA Commercial Mortgage Related Entities** | | | | | | | | | | | | | |
| Total Cash Receipts | $25.0 | $0.0 | $7.0 | $11,683.2 | $0.0 | $0.0 | $28,077.2 | $5,623.2 | $11,050.6 | $24,024.1 | $926.6 | $0.0 | $5,648.8 |
| Total Cash Disbursements | 270.1 | 52.1 | 217.1 | 52.1 | 144.4 | 52.1 | 122.6 | 146.6 | 52.1 | 148.3 | 136.2 | 150.5 | 55.0 |
| Net Change in Cash Before Bankruptcy Related Fees | ($245.1) | ($52.1) | ($210.1) | $11,631.1 | ($144.4) | ($52.1) | $27,954.6 | $5,476.6 | $10,998.5 | $23,875.8 | $790.3 | ($150.5) | $5,593.8 |

**USA Commercial Mortgage Company, et al.**
13-Week Cash Forecast
($ in thousands)

13-Week Cash Forecast

| | | | | | | | Week Ending | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4/22/2006 | 4/29/2006 | 5/6/2006 | 5/13/2006 | 5/20/2006 | 5/27/2006 | 6/3/2006 | 6/10/2006 | 6/17/2006 | 6/24/2006 | 7/1/2006 | 7/8/2006 | 7/15/2006 |
| **Bankruptcy-Related Costs** | | | | | | | | | | | | | |
| Debtor Professional Fees | | | | | | | | | | | | | |
| Financial Advisor Fees & Expenses | $160.6 | $160.6 | $151.8 | $148.8 | $145.9 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 | $119.8 |
| Legal Counsel Fees & Expenses | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 |
| Local Counsel | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 |
| PR Firm | 1.3 | 1.3 | 1.3 | 0.0 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 |
| Other Professionals | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Committee Professionals | | | | | | | | | | | | | |
| Legal Counsel Fees & Expenses | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 |
| Financial Advisor Fees & Expenses | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 |
| Total Bankruptcy Professional Fees | $228.5 | $228.5 | $219.7 | $266.7 | $263.3 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 | $237.2 |
| Cash Payment for Bankruptcy Professional Fees | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $541.4 | $0.0 | $0.0 | $0.0 | $0.0 | $803.5 | $0.0 |
| Other | | | | | | | | | | | | | |
| Employee Retention Costs | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Noticing Agent | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 15.0 | 0.0 | 0.0 | 0.0 | 15.0 | 0.0 | 0.0 |
| Other (security) | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Post-Petition Financing | | | | | | | | | | | | | |
| Post-Petition Financing | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Fees for Post-Petition Financing | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Legal Counsel Fees & Expenses | 0.0 | 0.0 | 250.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Bankruptcy Related Fees** | $10.0 | $10.0 | $260.0 | $10.0 | $10.0 | $10.0 | $566.4 | $10.0 | $10.0 | $10.0 | $25.0 | $813.5 | $10.0 |
| **NET CHANGE IN CASH** | ($255.1) | ($62.1) | ($470.1) | $11,621.1 | ($154.4) | ($62.1) | $27,388.2 | $5,466.6 | $10,988.5 | $23,865.8 | $765.3 | ($964.0) | $5,593.8 |
| **CASH** | | | | | | | | | | | | | |
| Total Cash and Cash Equivalents at Beginning of Period | $10,154.2 [a] | $9,899.1 | $9,837.0 | $9,366.9 | $20,988.0 | $20,833.6 | $20,771.5 | $48,159.7 | $53,626.3 | $64,614.8 | $88,480.6 | $89,245.9 | $88,281.9 |
| Pre-Petition Cash Payments | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Net (Decrease) Increase in Cash and Cash Equivalents | (255.1) | (62.1) | (470.1) | 11,621.1 | (154.4) | (62.1) | 27,388.2 | 5,466.6 | 10,988.5 | 23,865.8 | 765.3 | (964.0) | 5,593.8 |
| **Total Cash and Cash Equivalents at End of Period** | $9,899.1 | $9,837.0 | $9,366.9 | $20,988.0 | $20,833.6 | $20,771.5 | $48,159.7 | $53,626.3 | $64,614.8 | $88,480.6 | $89,245.9 | $88,281.9 | $93,855.7 |

Notes:
(a) Cash Balance as of 4/2/06

# EXHIBIT B

**Debtor Bank Accounts**

| Company Name | Bank | Bank Account # | Account Type | Bank Phone # | Account Purpose |
|---|---|---|---|---|---|
| USA Capital Diversified Trust Deed Fund, LLC | Nevada State Bank | 552010670 | Analyzed Business Checking | (702) 383-0009 | General Operating Account |
| USA Capital Diversified Trust Deed Fund, LLC | Nevada State Bank | 86904514 | Accessor US Gov't MM Fund | (702) 383-0009 | Money Market Account |
| USA Capital First Trust Deed Fund, LLC | Nevada State Bank | 552024218 | Analyzed Business Checking | (702) 383-0009 | General Operating Account |
| USA Capital Realty Advisors, LLC | Community Bank of Nevada | 10303691 | CB Business Account | (702) 222-9800 | General Operating Account |
| USA Commercial Mortgage Company | Wells Fargo | 083-4610149 | Choice IV Commercial Checking | (800) 225-5935 | General Operating Account/Payroll |
| USA Commercial Mortgage Company-Exclusive Account | Wells Fargo | 5627688186 | Basic Business Checking | (800) 225-5935 | Pass-through Permanent Loans |
| USA Commercial Mortgage Company | LaSalle Bank | 5800349150 | Basic Business Checking | (312) 904-8100 | Permanent Loan Brokers/Closing Fees |
| USA Commercial Mortgage Company | BankOne | 634912067 | Checking Trust for HMA | (800) 404-4111 | HMA Investor Payments |
| USA Commercial Mortgage Company dba USA Capital | CitiBank | 500078217 | CitiBusiness | (877) 528-0990 | Citibank Credit Line Interest Payment |

C:\temp\OLK6E\Filing Entities Bank Account List

# EXHIBIT C



# USA Commercial Mortgage Company

# USA Commercial Mortgage Company
## Loan Servicing Cash Management System



Privileged and Confidential



# USA Commercial Mortgage Company



Privileged and Confidential

# EXHIBIT "1"

1   Annette W. Jarvis, Utah Bar No. 1649
    RAY QUINNEY & NEBEKER P.C.
2   36 South State Street, Suite 1400                **E-FILED ON MAY 2, 2006**
    P.O. Box 45385
3   Salt Lake City, Utah 84145-0385
4   Telephone: (801) 532-1500
    Facsimile: (801) 532-7543
5   Email: ajarvis@rqn.com

6   and

7   Lenard E. Schwartzer
    Nevada Bar No. 0399
8   Jeanette E. McPherson
    Nevada Bar No. 5423
9   Schwartzer & McPherson Law Firm
    2850 South Jones Boulevard, Suite 1
10  Las Vegas, Nevada  89146-5308
11  Telephone:  (702) 228-7590
    Facsimile:  (702) 892-0122
12  E-Mail:  bkfilings@s-mlaw.com

13  Proposed Attorneys for Debtor and Debtor-in-Possession

14          **UNITED STATES BANKRUPTCY COURT**

15              **DISTRICT OF NEVADA**

16  In re:                          | Case Nos. BK-S-06-10725-lbr

17  USA COMMERCIAL MORTGAGE          | Chapter 11
    COMPANY,
18                                   | **REPLY BRIEF IN SUPPORT OF MOTION**
                          Debtor.    | **FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345,**
19                                   | **AND 363 APPROVING DEBTORS'**
                                     | **PROPOSED CASH MANAGEMENT**
20                                   | **PROCEDURES AND INTERIM USE OF CASH**
                                     | **IN ACCORDANCE WITH PROPOSED**
21                                   | **CASH BUDGET**
22

23                                   | Hearing Date:  May 3, 2006
24                                   | Hearing Time: 9:30 a.m.

25  / / /

26  / / /

27  / / /

28  / / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

1    USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated

2  debtors, which are USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital

3  Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively,

4  the "Debtors"), submits this Brief in support of the Debtors' Motion for Order Under 11 U.S.C. §§

5  105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and Interim

6  Use of Cash in Accordance With Proposed Cash Budget (the "Motion") and in reply to the

7  objections to the Motion that have been filed.

8                          **INTRODUCTION**

9    The Debtors filed this Motion for permission to use cash collected by the Debtors in its

10  "Collection Account," meaning the account in which payments from Borrowers are collected, in

11  accordance with and as limited by the Budget attached to the Motion, as modified in the Revised

12  Budget attached to the Supplemental Declaration of Thomas J. Allison (the "Supplemental Allison

13  Declaration"). For clarification, the money the Debtors collected pre-petition in the Investors

14  Account, meaning money that was collected to fund new loans, is not implicated by this Motion as

15  this Motion does not propose to use any cash held in that account.

16    As explained to the Court at the initial hearing, the 90-day Revised Budget is limited solely

17  to accomplishing two things. First, the Revised Budget includes costs, including professional and

18  attorneys fees, associated with administering the loan portfolio, including monitoring and

19  collecting monthly payments, negotiating and providing documentation necessary to collect these

20  payments, and taking all necessary enforcement actions on non-performing loans. The taking of

21  these actions are mandated by the Loan Servicing Agreements entered into between USACM and

22  each investor, and are necessary to preserve each investor's rights in the loans in question.

23  Further, as set forth more fully below, the expenditures projected in the Revised Budget do not

24  exceed the sum of the  servicing and other contractual fees and costs that the Debtors are allowed

25  to assess against and collect from the investors and the other amounts the Debtors are entitled to

26  collect directly from borrowers and other sources.

27    Second, the Revised Budget includes costs, including professional and attorneys fees,

28  associated with administering the case, including sorting out claims of investors in light of the fact

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   that the past practice of the Debtors has been to make interest payments to all investors whether or

2   not money was collected on the underlying loan.  These practices have resulted in some investors

3   being paid more than they were entitled to under their contracts and some investors being paid less

4   than they were entitled to under their contracts.  Because many individual investors invested in

5   more than one loan and invested both in direct loans and through the USA Capital First Trust

6   Deed Fund, LLC and the USA Diversified Trust Deed Fund, LLC (collectively the "Funds"),

7   numerous investors fall into both the categories of having been both overpaid and underpaid with

8   respect to the different loans in which they invested.  Further, in order to keep up the interest

9   payments, USACM, on many occasions, paid its own money to investors -- money that USACM

10  was entitled to collect as servicing and other fees and costs and as to which it needs to now

11  recover from investors that were wrongfully paid.   It is critical that the Debtors make this analysis

12  so that no money is paid post-petition to investors who are not entitled to receive the money and in

13  order to preserve offset rights USACM has against investors both on its own account and for the

14  account of other investors.  The keeping of appropriate account records is required by the Loan

15  Servicing Agreements entered into between USACM and each investor as part of servicing these

16  loans, and such records are necessary to insure proper distribution of funds.

17          As set forth more fully below, the expenditures in the Revised Budget do not require

18  USACM to use any funds collected on behalf of investors beyond the amounts it is entitled to

19  retain by contract and by statute for servicing and related contractual fees and costs that the

20  Debtors are allowed to assess against the investors, thus making this portion of the money

21  collected clearly property of the estate under Section 541 of the Bankruptcy Code that can be used

22  by the Debtors as requested in the Motion.

23                          **STATEMENT OF FACTS**

24          Every investor, including the Funds and investors investing directly or through the Funds,

25  whether investing directly or through the Funds, signed a Loan Servicing Agreement with

26  USACM.  The Loan Servicing Agreement provides that USACM is authorized and instructed to

27  "keep appropriate accounting records on each note and the sums collected thereon," [LSA ¶ 2(b)],

28  to "[p]roceed diligently to collect all payments due under the terms of the note and promptly pay

3

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   the proper parties, when and if due, principal, interest, late charges, insurance and other specified

2   funds," [LSA ¶ 2(c)(i) (emphasis added)] , and to "[p]rovide the Lender with regular statements

3   regarding loan collections . . . ." [LSA ¶ 2(d)].

4          The Loan Servicing Agreement also requires USACM to "take steps to collect" payments

5   when "the Borrower fails to make any payment to USA." [LSA ¶ 2(c) (ii)] This includes, but is

6   not limited to, authorization to obtain "representation for Lender in litigation and bankruptcy

7   proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect

8   the interests of the Lender, *and of all Lenders in the loan.*" [LSA ¶ 2(c) (ii) (emphasis added)].

9          In paragraph 4, the Loan Servicing Agreement goes on to set forth the obligations and

10  rights of USACM in the event legal proceedings are instituted.  This provision provides that legal

11  proceedings instituted under this agreement "may be pursued in USA's name only or as agent for

12  Lender," thus granting to USACM the sole standing to bring actions to collect on the loans in

13  question.  [LSA ¶ 4]  Further, USA is granted the right to "retain attorneys on Lender's behalf"

14  and the investor (or "Lender"), "[u]pon demand by USA . . . agrees to promptly pay, either in

15  advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred,

16  including attorney's fees, trustee's fees and foreclosure costs.  In the event that Lender fails to pay

17  such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA

18  may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of

19  foreclosure; provided, however that any fees advance by USA shall be paid back from the

20  proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected

21  with respect to such Loan before any payments are made to Lender."  [LSA ¶ 4].

22         In addition to the right given in paragraph 4 to require the investors to pay for the costs of

23  collection, including attorney's fees, by payments directly to USACM or by offset against

24  amounts that would otherwise be payable to investors, the Loan Servicing Agreement provides for

25  an annual servicing fee to be paid to USACM.  In paragraph 5, the Loan Servicing Agreements

26  provide, in addition to loan origination fees (that USACM is entitled to collect directly from

27  borrowers, along with certain other fees such as loan extension fees and exit fees), for an annual

28  servicing fee, payable on a monthly basis, which in some earlier Loan Servicing Agreements was

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    stated as not to exceed 1% per annum of the maximum principal amount of each loan and in later

2    Loan Servicing Agreements was stated as not to exceed 3% per annum of the maximum principal

3    amount of each loan.  [LSA, ¶ 5]   While USACM had been collecting some servicing fees in the

4    past, prior to the bankruptcy petition date it was not collecting the full servicing fee to which it

5    was entitled.  It some instances, it was not accruing or collecting any servicing fee, and in other

6    instances it was accruing only 0.5% or 1.0% of the loan balances but not collecting the accrued

7    amounts.  In any event, USACM was not collecting the full amount of the annual loan servicing

8    fees it was entitled to collect under the Loan Servicing Agreements.  A principal reason USACM

9    was not diligent in collecting loan servicing fees prior to the petition date was that in order to

10   make interest payments every month to all investors, USACM paid out what it was entitled to take

11   as a servicing fee to investors when not enough money was collected to make the interest

12   payments.  Consequently, USACM has the right to collect the uncollected servicing fees from past

13   or future monies collected on behalf of those investors that have received overpayments from

14   USACM's own money.  The Debtors' cash management motion proposes to use past due,

15   currently owed, and future servicing fees, which are property of USACM, along with enforcing its

16   right to hire attorneys and obtain payment or reimbursement of the same from the lenders, to fund

17   the operations of these Debtors in accordance with the Revised Budget.

18          Finally, paragraph 5 of the Loan Servicing Agreement also allows USA to keep all late

19   charges and default interest collected from the borrowers.  As noted above, late charges are

20   referenced in paragraph 2(c)(i) with respect to USACM's obligation to make certain that the

21   amounts collected are paid to the "proper parties," which, because of paragraph 5, means

22   USACM.  Paragraph 5 also allows USACM to assist lenders in finding potential buyers for their

23   interests and charge a 5% assignment fee based on the remaining balance of the lender's undivided

24   interest in the note, and to charge and keep all extension fees in the event an extension with a

25   borrower is negotiated. [LSA ¶5]  These funds are also property of USACM and will be used to

26   fund the operations of these Debtors in these bankruptcy cases.

27          In addition to the fees allowed USACM under the Loan Servicing Agreements with

28   investors, USA Capital Realty Advisors, LLC ("USACRA") is entitled to be paid a monthly

5

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    management fee pursuant to the Second Amended and Restated Operating Agreement of USA

2    Capital First Trust Deed Fund, LLC (the "First Trust Deed Agreement") and the Operating

3    Agreement of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Trust Deed

4    Agreement").  This fee amounts to an annual fee of 1%  of the funds managed under the

5    Diversified Trust Deed Agreement, and an annual fee of 1.5% of the funds managed under the

6    First Trust Deed Agreement.  As Manager, USACRA is required, under paragraph 3.1 of the First

7    Trust Deed Agreement and under paragraph 3.01 of the Diversified Trust Deed Agreement, to

8    "prosecute . . . compromise . . . or adjust any and all claims . . . for . . . the Company," to "employ,

9    at the expense of the Company, such agents, employees, independent contractors, attorneys, and

10    accountants, as the Manager deems reasonable and necessary for any Company purpose, to

11    "enforce loan documents" and to "retain such advisors and professionals . . . and do all other

12    things that are, in the sole business judgment of the Manager, necessary or appropriate to

13    effectuate any of the foregoing."  In accordance with this contractual right to collect this fee and in

14    furtherance of its duties as the Manager of these two funds, the Revised Budget includes

15    management fees paid by the Funds to USACRA from cash currently on hand, which is then

16    contributed by USACRA to USACM to reimburse USACM for carrying out the duties of

17    USACRA in enforcing and administering the loans in which the Funds are invested.

18        The Supplemental Declaration of Thomas J. Allison sets forth certain other relevant facts

19    in support of this Motion and is incorporated by reference herein.

20                                    **ARGUMENT**

21    **I.    FUNDS SUFFICIENT TO COVER THE REVISED BUDGET ARE PROPERTY OF
             USACM'S ESTATE AND MAY PROPERLY BE USED BY USACM IN**
22    **ACCORDANCE WITH THE MOTION.**

23

24        Property of the estate includes "all legal or equitable interests of the debtor in property" as

25    of the bankruptcy petition date.  11 U.S.C. § 541(a).  While USACM in its capacity as loan

26    servicer is holding and collecting certain funds on behalf of the loan investors, the portion of those

27    funds representing the full contractual servicing fees and other fees which USACM is entitled to

28    collect and funds which can be used to pay for attorneys fees and other costs of collection on the

6

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   non-performing loans clearly are property of the estate under Section 541(a) which can be used, in

2   accordance with Revised Budget, to administer the estate, enforce the loans, and create appropriate

3   accounting records for each note and the sums collected on each note, all of which is allowed and

4   required of USACM under the Loan Servicing Agreements.

5        In the case of *In re Mortgage Funding Inc.,* 48 B.R. 152 (Bankr. Ct. D. Nev. 1985), the

6   Court denied motions for relief from the stay brought by investors who funded loans to borrowers

7   serviced by the debtor, a mortgage broker.  In that case, the debtor was entitled to "retain" the

8   "difference between the higher return on the assigned note and the lower return on the new note"

9   as a "servicing fee." *Id.* at 153.  The Court found that the "debtor has an interest in the assigned

10  notes and deeds of trust" to the extent that "servicing fee" and that "the debtor's limited interest in

11  the assigned notes and deeds of trust passed to the debtor's estate on the date the petition was

12  filed." *Id.* at 155-156.  Consequently, the Court held that "the trustee shall retain the difference

13  between the amounts collected on the assigned notes and the amounts paid on the notes issued by

14  the debtor, for the benefit of the estate." *Id.* at 156.

15       In connection with the Motion, the Debtors are asking for permission to use funds

16  collected on behalf of investors only to the extent of the "debtor's limited interest" in the funds

17  collected.  This money is property of the estate pursuant to Section 541(a) and is properly used for

18  administrative and collection purposes as proposed in the motion.  Moreover, USACM has other

19  sources of funds, including deferred loan origination fees for loans closed pre-petition (USACM

20  has not originated any new loans since the petition date and will not do so without Court approval)

21  and other loan fees, such as loan extension fees and loan exit fees, that USACM is entitled to

22  collect directly from borrowers.  One of the Debtors, USA Capital Realty Advisors, is also entitled

23  to charge its contractual management fee to the two Funds it manages, as explained above.  The

24  Revised Budget proposes to use approximately $4.2 million in cash over a three-month period.

25  When combined with the Debtors' sources of funds other than those collected on behalf of the

26  loan investors, the monthly loan servicing fee of 1/12 of 1% or 3% of the outstanding loan

27  balances which USACM is entitled to retain from loan payments it collects as loan servicer is

28  adequate to cover the expenditures set forth in the Motion and Revised Budget.  As such, the

1    Motion seeks to use only what is clearly property of the Debtor's estate and should be granted.

2    **II.    THE RELIEF REQUESTED IN THE MOTION IS CONSISTENT WITH THE**
     **NEVADA STATUTE GOVERNING TRUST FUNDS HELD BY MORTGAGE**
3    **BROKERS.**

4

5          Even if the funds in question are eventually determined to be funds held in trust by

6    USACM as a mortgage broker under Nev. Rev. Stat. § 645B.175, the use of cash as requested in

7    the Motion complies with that statute.  Nev. Rev. Stat. § 645B.175 (5) (a) provides that monies

8    held in trust by a mortgage broker must be released to investors only after "the deduction and

9    payment of any fee or service charge due the mortgage broker."   Thus, as this statute applies

10   under the current circumstances, the statute acknowledges and allows for USACM, as the

11   mortgage broker, to take money out of the collection account to pay its own contractually allowed

12   fees and charges.  Since USACM is not seeking by its Motion to use any monies USACM has

13   collected as loan servicer on behalf of loan investors other than the statutorily allowed amounts,

14   the relief requested in the Motion complies with the statute.[1]

15   **III.    REPLY TO SPECIFIC OBJECTIONS FILED.**

16          Several objections to the Motion have been filed as of May 1, 2006, and others may be

17   filed.  The Loan Investors and/or Fund Members making the objections appear to fall into two

18   main categories: (1) investors claiming a right to funds in the USACM "Investors Account" (funds

19   which the Debtors are *not* seeking to use pursuant to the Motion) due to certain recent assignments

20   made just prior to the Petition Date of certain interests in Serviced Loans; and (2) investors who

21   have an interest in one or more Nonperforming Loans who actually owe money to USACM for

22   monthly overpayments they received from USACM to which they were not entitled.  Each of the

23   _____

24   1  While this will be addressed in more detail in the Debtors' Motion to Temporarily Hold All Funds Pending a
     Determination of the Proper Recipients, the Debtors would further note that Nev. Rev. Stat. § 645.175 (5)(b) also
25   prohibits a mortgage broker from releasing money held in trust to "any investor who owns a beneficial interest in the
     loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial
26   interest in the loan."  Thus, while objections raised by individual investors to the Motion argue for an immediate
     distribution of funds held on account of their fractionalized interests in a loan, under this statute, such a distribution
27   cannot be made until distributions can be made to every investor in a loan, including to investors owing money to the
     estate for prior improper distributions and to the Funds as investors.
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8

1    specific objections that appears on the Court's docket in the USACM case as of May 1, 2006 is

2    addressed briefly below.  The status of a particular loan as performing or nonperforming, the

3    amount of interest in arrears, and other information about specific loans referred to below, is given

4    in the spreadsheet attached as Exhibit A to the Supplemental Allison Declaration.

5        1.    Alexander Objection.  Pursuant to an objection filed April 25, 2006, the Stanley

6    Alexander Trust, Stanley Alexander, and Florence Alexander (collectively, the "Alexanders")

7    assert that they invested approximately $1.8 million in loans brokered or to be brokered by

8    USACM.  Apparently, $100,000 of those funds was invested in a check that cleared the day before

9    the Petition Date.  To the extent any of the Alexanders' funds invested prior to the Petition Date

10   was in USACM's "Investors Trust" account on the Petition Date, the Alexanders' objection is not

11   a proper objection to the Motion.  As explained above and in the Motion, the Debtors' Motion

12   does not request authority to use any of the funds held in the "Investors Trust" account as of the

13   Petition Date, and USACM will continue to hold such funds pursuant to Nevada state law and

14   other applicable law pending a determination by this Court as to the proper disposition of such

15   funds.  To the extent the Alexanders' objection alleges that USACM has no interest in loan

16   payments collected by USACM on loans in which they may have a small fractional interest, and

17   that the promissory notes should be released to them for collection, the objection lacks merit.  As

18   explained above, USACM has a contractual right as well as a contractual and statutory duty to

19   service the loans on behalf of Alexanders and all other Loan Investors holding fractional interests

20   in those same loans, and the contractual servicing fee and other fees to which USACM is entitled

21   to collect from Alexanders and others under the LSAs is property of USACM's bankruptcy estate.

22   Furthermore, of the loans listed on Exhibit E to the Alexanders' objection, the following are

23   currently Nonperforming Loans: (1) Marquee Hotel Palms; (2) Placer Vineyards; (3) One Point

24   St., LLC (aka "HFA – North Yonkers"); (4) Roam Investment (Development); (5) Rivera Homes;

25   and (6) HFA – Clear Lake.  Thus, to the extent the Alexanders received interest payments to

26   which they were not entitled on their investments in Nonperforming Loans, they owe a debt to

27   USACM for the overpayments.

28       2.    Benincasa Objection.  Focerfida Benincasa and Jasper Benincasa Jr. (the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

9

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    "Benincasas") filed an objection on April 27, 2006.  Apparently, the Benincasas made their one

2    and only investment through USACM by investing $110,000 with a check deposited to USACM's

3    "Investors Trust" account that cleared one day prior to the Petition Date.  As stated above, to the

4    extent the funds were in the "Investors Trust" account on the Petition Date, the Benincasas'

5    objection is not a proper objection to the Motion.[2]  To the extent the funds were invested in one of

6    the Serviced Loans as of the Petition Date, USACM is entitled to charge the servicing fee and

7    other fees set forth in the LSA, and such amounts are property of the estate.

8        3.    Objection of Sandler, Gackenbach, Steins, and Rowley.  An objection to the

9    Motion was filed April 27, 2006 by the Sandler Revocable Trust ("Sandler"), Gackenbach

10   Revocable Trust and David Gackenbach IRA (collectively, "Gackenbach"), Susan Stein Trust and

11   Susan Gackenbach IRA (collectively, "Susan Stein"), various Jay Stein trusts and IRA

12   (collectively, "Jay Stein"), and the Rowley Living Trust ("Rowley").  In the objection, the

13   objectors admit that USACM is entitled to use funds for the purposes set forth in the Motion to the

14   extent of the servicing fee USACM is entitled to collect.  This is all that is sought in the Motion.

15   Further, the objection argues that what "should be Debtors' first and most immediate priority is

16   determining the performing or non-performing status of each loan in the portfolio."  Objection at

17   3.  This is exactly what USACM is doing, and is part of the budgeted amount and part of the

18   services contemplated under the LSAs for which USACM is entitled to collect its contractual fees.

19   In fact, USACM has determined that the objectors, who each signed a Declaration that is part of

20   the Exhibit A attached to the objection, have each invested in at least one Nonperforming Loan

21   and thus may owe a debt to USACM for interest overpayments.  The Nonperforming Loans

22   referred to in the objectors' Declarations include: (1) Shamrock Tower, LP (which is $1.5 million

23   _____

24   2 USACM is aware that approximately $1.9 million in new funds from investors was deposited into the "Investors
     Trust" account shortly before the Petition Date, and that such funds were intended to be used to purchase assignments
25   of interests in some of the Serviced Loans that certain Loan Investors desired to sell and assign.  Apparently, the
     Petition Date intervened after the assignment documents were executed and the checks were issued to the
26   sellers/assignors but before the checks cleared.  USACM understands that the assignees (such as, apparently, the
     Alexanders and the Benincasas) and the assignors (such as the Ronnings, as discussed below) may have competing
27   claims to the funds in the "Investors Trust" account.  USACM will not disburse any funds from that account until the
     competing claims are determined by the Court.
28

10

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  in arrears); (2) Gramercy Court Ltd. ($750,000 in arrears); (3) Palm Harbor One, LLC ($20,000

2  arrearage); (4) Fox Hills 216, LLC ($299,000 arrearage); (4) Fox Hills 185, LLC ($675,000

3  arrearage); (5) Oak Mesa Investors, LLC ($3.6 million arrearage); and (6) Marlton Square

4  Associates, LLC ($975,000 arrearage).

5          4.    <u>Objection of Buckalew Trust and Higgins Trust</u>.    The Buckalew Trust and

6  Higgins Trust filed an objection on April 28, 2006.  The objectors falsely alleged that the relief

7  requested in the Motion violates Nevada mortgage broker laws (Nev. Rev. Stat. §§ 645B.165 to

8  .175), and that the Motion seeks in effect "the Court's blessing to continue violating Nevada law

9  post-petition."  Objection at 8.  To the contrary, the Motion clearly explains that under the

10  Debtors' cash management proposal, payments collected on Serviced Loans will go in to the DIP

11  Collection Account and remain segregated there from any amounts belonging to USACM and

12  from any amounts received for new investments (if any) with USACM, all in full compliance with

13  Nev. Rev. Stat. § 645B.175(4).  Under the statute and to the extent approved by this Court

14  pursuant to the Motion, USACM is then entitled to deduct and transfer to its DIP Operating

15  Account (as requested in the Motion) the full amount of "any fee or service charge due to the

16  mortgage broker."  *Id.* § 645B.175(5).   The objection acknowledges that USACM is entitled to

17  use "monies . . . for any loan servicing fees" pursuant to the Motion.  *See* Objection at 9.  As

18  explained above, the limited amounts set forth in the Revised Budget do not exceed the contractual

19  servicing fees to which USACM is entitled under the LSAs.  Moreover, the Buckalew Trust is

20  invested in the One Point Street, LLC loan (aka "HFA-North Yonkers"), which is a

21  Nonperforming Loan having approximately $3.7 million in unpaid interest due as of March 31,

22  2006.  Thus, the Buckalew Trust may owe a debt to USACM for the monthly payments of interest

23  to which the Buckalew Trust was not entitled.  The objection does not indicate what investment

24  was made by the Higgins Trust and, as Merisow has not yet completed its work in preparing

25  investor-by-investor account reconciliations, USACM cannot at this time readily determine

26  whether the Higgins Trust invested in any Nonperforming Loans.

27          5.    <u>Eight Separate Objections Filed May 1, 2006 by Attorney Robert LePome for</u>

28  <u>Various Investors</u>.  On May 1, 2006, attorney Robert LePome filed eight separate objections on

11

behalf of various investors, including Richard Williams, Carole Talan, and Hans Prakelt (USACM

docket no. 94); Church of the Movement of Spiritual Inner Awareness (docket no. 95); Nancy

Golden (docket no. 96); Marilyn Molitch, Matthew Molitch, and Molitch 97 Trust (docket no. 97);

Phillips Family Trust, Frances Phillips, and Stephen Phillips (docket no. 98); Spectrum Capital,

LLC (docket no. 99); Bosworth Family Trust, Crosbie Ronning, Wild Water Ltd. Partnership, and

Grable Ronning (docket no. 100); and Patrick Davis IRA, Susan Davis, and Patrick Davis (docket

no. 101).  It appears that each of these objections raises similar legal issues, although USACM has

not yet had time to review in detail these objections to determine that status of the investments

made by these investors.  The form of these objections is nearly identical to the Alexanders'

objection discussed above, which was also filed by attorney Robert LePome, and it appears that at

least some of these objectors have both fractional interests in Serviced Loans as well as claims to

funds held in the "Investors Trust" account, as the Alexanders do.  However, there is an important

distinction between the Alexanders' position (and that of the Benincasas, above) and the position

of the Ronnings (and possible others of these May 1, 2006 objections):  while the Alexanders have

a claim on the "Investors Trust" account based on their status as an assignee/purchaser of a

fractionalized loan interest just prior to the Petition Date, the Ronnings apparently have a claim on

the same "Investors Trust" account based on their status as an assignor/seller of a fractionalized

loan interest just prior to the Petition Date.  Although, as noted above in connection with the

Alexanders' and the Benincasas' objections, the competing claims to the funds in the "Investors

Trust" account are not relevant in considering the relief requested by the Motion, the competing

claims of Mr. LePome's clients do highlight a conflict of interest between assignees and assignors

of loan interests having competing claims on the "Investors Trust" account.  USACM will attempt

to determine the status of the loan interests held by the investors objecting in these eight

objections and present such information at the hearing on the Motion.

Each of Mr. LePome's clients also attempts in the objections to unilaterally terminate the

powers of attorney appointing USACM to act with regards to their individal investments.  These

powers of attorney give USACM specific valuable rights and should be considered as property of

the estate.  *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications,*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    *Inc.)*, 824 F.2d 725, 729  (9th Cir. 1987) (although the definition of property under Section 541

2    neither explicitly includes or excludes contract rights, the definition does include "all legal or

3    equitable interests of the debtor in the property as of the commencement of the case." )(quoting 11

4    U.S.C. §541(a)(1)); *see also In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.

5    1986) (holding that insurance contracts are also considered to be property of the estate).  Because

6    the powers of attorney should be considered as property of the estate, the objecting parties' efforts

7    to unilaterally terminate them are a violation of the automatic stay.  *See Codex*, 824 F.2d at 731

8    ("Codex violated the automatic stay statue by terminating its contract unilaterally rather than

9    applying for relief from the bankruptcy court."); *see also In re Bobbit*, 174 B.R. 548, 554 (Bankr.

10   N.D. Cal. 1993) ("[U]nilateral termination of a contract by a creditor requires relief from the

11   automatic stay.").  Actions in violation of the stay are void.  Moreover, even if objectors could

12   properly terminate their powers of attorney granted to USACM, the servicing rights they granted

13   to USACM under their Loan Servicing Agreements are similar to (but broader than) those

14   addressed in the power of attorney agreement, and cannot be terminated without 30 days' advance

15   notice.

16        6.    Objection by Attorney Janet Chubb on Behalf of Unidentified Investors.  On May

17   1, 2006, attorney Janet Chubb filed an objection to the Motion on behalf of "numerous direct

18   lenders who are named beneficiaries . . . of certain loans which were originated and serviced" by

19   USACM.  Objection at 1.  In form and substance, the objection is similar to other objections

20   discussed and responded to above.  Furthermore, the objection fails to reveal the names of any of

21   Ms. Chubb's clients on whose behalf the objection is filed.  In addition, it does not appear that Ms.

22   Chubb has filed with the Court the verified statement required by Fed. R. Bankr. P. 2019(a) when

23   an entity or committee (other than an official committee appointed under 11 U.S.C. § 1102 or

24   1114) is representing more than one creditor or equity security holder.  The objection does indicate

25   that the numerous (but unidentified) objectors represented by Ms. Chubb "use David A. Souza's

26   loan in the Oak Mesa project as a representative example of the loan process."  Objection at 2.

27   Although it is not clear whether David A. Souza is in fact one of the numerous objectors

28   represented by Ms. Chubb, USACM has determined that the Serviced Loan in which Mr. Souza

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

13

1    has a fractional interest, the Oak Mesa / Oak Valley loan (aka "Fiesta Oak Valley"), is a

2    Nonperforming Loan having delinquent unpaid interest of approximately $3.6 million.  Thus, to

3    the extent Mr. Souza (or any of the "numerous" but unidentified objectors having an interest in

4    this loan) received monthly interest payments from USACM while the borrower was not making

5    interest payments to USACM, Mr. Souza owes a debt to USACM for the amount of the overpaid

6    interest.

7            7.    <u>Objection of Richard McKnight.</u>   The final objection to the Motion that appeared

8    on the USACM electronic docket on May 1, 2006, is an objection by the Richard and Sheila

9    McKnight Family Trust and the Richard McKnight SEP-IRA (collectively, "McKnight").  In form

10   and substance, the McKnight objection is similar to many of the other objections discussed and

11   responded to above.  The Serviced Loans listed on the last page of the objection in which

12   McKnight has an interest includes the following Nonperforming Loans:  (1) Roam Development;

13   and (2) Eagle Mountain Development.  To the extent McKnight received monthly interest

14   payments from USACM while the borrowers on the Nonperforming Loans were not making

15   interest payments to USACM, McKnight owes a debt to USACM for the amount of the overpaid

16   interest.

17                              **CONCLUSION**

18          The proposed use of USACM's portion of the funds held in the Collection Account allows

19   USACM to fulfill its obligations under the Loan Servicing Agreement, including creating the

20   proper accounting records to make sure that any payments made are made to the "proper" parties

21   and allowing for the enforcement of loans and the preservation of collateral for the benefit of

22   substantially all of the investors.  This proposed use is appropriate, given that this involves only

23   the Debtors' property under Section 541(a) of the Bankruptcy Code, is in compliance with Nev.

24   Rev. Stat. § 645B.175, and is consistent with general equitable principles allowing for surcharging

25   similar funds for administrative purposes only.  Further, the granting of this Motion is in the best

26   interests of all of the investors and the Debtors' creditors because, absent funding for USACM to

27   take the actions proposed in accordance with the Revised Budget, the individual investors and the

28   investors in the Funds, nearly all of which have only small fractional interests in certain loans, will

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

14

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   not be able to promptly and adequately protect their fractionalized interests, the majority of which

2   appear to be in non-performing loans.  This problem is highlighted by the fact that virtually all of

3   the investors objecting to this Motion have invested in non-performing loans, which need the

4   immediate servicing and collection attention of USACM in order for their rights to be preserved.

5   Further, in the Loan Servicing Agreement, each individual investor recognized and, in essence,

6   agreed to not advance their fractionalized interest in a loan in a way that would harm the other

7   owners of the loan.  All investors agreed that only USACM, not any of them individually, could

8   sue on behalf of all owners of the loan.  All investors agreed that attorneys could be retained

9   where as may be deemed "necessary or appropriate by USA" to fully protect the interests" not

10   only of themselves as a Lender, but "of all Lenders in the loan."  This agreement on the part of the

11   investors is in accordance with the prohibition found in Nev. Rev. Stat. § 645B.175 (5) (b), which

12   requires equal treatment of all investors in a loan with respect to distributions allowed.  Protecting

13   the interests of *"all Lenders"* in each loan is exactly what USACM is proposing to do under the

14   Motion and Revised Budget in accordance with its contracts and *out of its own money*.  USACM

15   should be allowed to do so over the objections of a minority of investors, allegedly holding

16   fractionalized interests of some of these loans, where the claims of these investors to proceeds of

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

15

1    the loans, net of USACM's contractually entitled fees, is not being affected.  To do otherwise

2    severely prejudices the silent majority of investors whose rights, along with the vocal minority, are

3    being fully protected by USACM in accordance with their contracts and Nevada law.

4    　　　　DATED this 2nd day of May, 2006.

5    　　　　　　　　　　　　　　　　　Annette W. Jarvis, Utah Bar No. 1649

6    　　　　　　　　　　　　　　　　　RAY QUINNEY & NEBEKER P.C.
　　　　　　　　　　　　　　　　　　　36 South State Street, Suite 1400

7    　　　　　　　　　　　　　　　　　P.O. Box 45385
　　　　　　　　　　　　　　　　　　　Salt Lake City, Utah 84145-0385

8

9    　　　　　　　　　　　　　　　　　and

10   　　　　　　　　　　　　　　　　　/s/ Jeanette E. McPherson
　　　　　　　　　　　　　　　　　　　Lenard E. Schwartzer, Esq.

11   　　　　　　　　　　　　　　　　　Jeanette E. McPherson, Esq.
　　　　　　　　　　　　　　　　　　　Schwartzer & McPherson Law Firm

12   　　　　　　　　　　　　　　　　　2850 South Jones Boulevard, Suite 1
　　　　　　　　　　　　　　　　　　　Las Vegas, Nevada  89146-5308

13

14   　　　　　　　　　　　　　　　　　Proposed Attorneys for Debtor and Debtor-In-
　　　　　　　　　　　　　　　　　　　Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

16