# EXHIBIT "1"

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

USA COMMERCIAL MORTGAGE COMPANY,

    Debtor.

Case Nos. BK-S-06-10725-lbr

Chapter 11

**SUPPLEMENTAL DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF DEBTORS' MOTIONS**

Hearing Date: May 3, 2006
Hearing Time: 9:30 a.m.

I, Thomas J. Allison, hereby declare, verify and state as follows:

1.    I make this Declaration as supplemental support for various motions of USA Commercial Mortgage Company ("USACM") and its four affiliates who filed bankruptcy petitions in this Court on April 13, 2006 (collectively, the "Debtors"), including the motion seeking approval of the proposed cash management procedures and limited use of cash

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

1

(the "Motion").  My Declaration is based upon personal knowledge and the facts set forth herein.

THE SERVICED LOANS

2.      It appears that as of April 13, 2006 (the "Petition Date"), USACM was acting as the loan servicer for 115 separate loans (the "Serviced Loans") having a combined outstanding loan balance of approximately $962 million.  Attached hereto as Exhibit A is spreadsheet created under my direction by the Mesirow team providing preliminary information for each of the Serviced Loans, including the loan name, whether the loan is performing or non-performing, number of investors, origination date, outstanding balance, unpaid interest, and the percentage of the loan held by each of the two "Funds" (as defined below), by USACM, and by other "Loan Investors" (as defined below).

3.      I have directed that the Mesirow team review the loan files for each of the Serviced Loans.  Based on that review, it appears that each loan is secured by a trust deed on commercial real estate, except for two loans that may have been made on an unsecured basis and one loan for which the security interest may not have been properly perfected. The loan files indicate that one of approximately 93 discrete commercial real estate projects/developments serves as collateral for each the Serviced Loans that is secured (in some instances more than one loan is secured by the same real estate).  USACM intends to seek authority to engage an outside appraisal firm to evaluate all of the real estate collateral securing the Serviced Loans.

4.      It appears that as of the Petition Date approximately 62 of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans").   The Nonperforming Loans represent 54% percent in number, and 72% percent in outstanding loan balance, of the Serviced Loans.

5.      There are approximately 3,600 investors (the "Loan Investors") who names appear as a "Lender" in the documents for one or more of the Serviced Loans.  Among the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

2

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590    Fax: (702) 892-0122

1    Loan Investors are two of the Debtors in these related bankruptcy cases, USA Capital First

2    Trust Deed Fund, LLC ("Capital First") and USA Capital Diversified Trust Deed Fund,

3    LLC ("Diversified") (collectively, the "Funds").

4        6.    Prior to April 2006, USACM regularly made interest payments to Loan

5    Investors each month regardless of whether the particular loans relating to each Loan

6    Investor were performing or nonperforming.  For example, during the first three months of

7    2006, USACM collected on average approximately $5.3 million per month in interest

8    payments on the Serviced Loans but paid out on average approximately $9.7 million per

9    month to the Loan Investors.  In order to make these interest payments, USACM at times

10   deferred the collection of its service fee.

11       7.    More than 60% of the Loan Investors invested in more than one of the

12   Serviced Loans.  Further, although Mesirow has not completed its investor-by-investor

13   analysis of the loans in which each investor is listed as a "Lender" in a loan agreement, it

14   appears likely that for a substantial portion of the Loan Investors who invested only in a

15   single loan, that loan may be a Nonperforming Loan.  The practical result of these facts is

16   that a large portion of the Loan Investors received monthly payments from USACM that

17   they were not entitled to receive (because they were invested, at least in part, in one or

18   more Nonperforming Loans), and thus such investors owe a debt to USACM for the

19   amounts overpaid to them.

20                                 THE FUNDS

21       8.    Capital First has an interest as a Loan Investor in 53 of the Serviced Loans --

22   in 45 loans it owns only a fractional interest along with other Loan Investors, and in 8

23   loans it is the sole investor.  In other words, 90% in number of the Serviced Loans in

24   which Capital First has an interest are loans in which other Loan Investors also have an

25   interest.  Further, of the 53 total loans in which Capital First has an interest, 29 (55% in

26   number) are Nonperforming Loans.

27

28

                                    3

9.    Diversified has an interest as a Loan Investor in 23 of the Serviced Loans -- in 16 loans it owns only a fractional interest along with other Loan Investors, and in 7 loans it is the sole investor. In other words, 70% in number of the Serviced Loans in which Capital First has an interest are loans in which other Loan Investors also have an interest. Further, of the 23 total loans, 20 (87% in number) are Nonperforming Loans.

10.    The extent of the nonperforming loan problem is substantially the same for the Funds in their capacity as Loan Investors as it is for other Loan Investors. Because most of the Nonperforming Loans have one or both of the Funds as investors along with other Loan Investors, the administrative and servicing activities, appraisals, collection activities and foreclosure proceedings will benefit both the Funds and the other Loan Investors.

11.    All of the Funds' loans are serviced by USACM and are part of the Serviced Loans, as noted above. No distinctions were made in how monthly payments were remitted to the Funds (for further distribution to their members) versus remittances to other Loan Investors. Each of the Funds is and was treated as a single Loan Investor and the monthly payments were made to it as if it were a single Loan Investor.

12.    Capital First has approximately 1,300 members owning membership interests in that LLC entity, and Diversified has approximately 1,900 members owning membership interests in that LLC entity (collectively, the "Fund Members"). Mesirow has not yet completed its analysis of the extent to which particular Fund Members may have membership interests in both of the Funds, nor the extent to which particular Fund Members may also be Loan Investors, but it appears that there may be substantial overlap.

## CRUCIAL WORK COMMENCED AND NEEDED DURING 90-DAY PERIOD

13.    As set forth in the Motion, there are certain critical tasks that Mesirow, with assistance from USACM's personnel and attorneys, must accomplish during the first 90 days of the Debtors' bankruptcy cases in order to analyze and safeguard the investments of

all Loan Investors and Fund Members.  Such tasks include, but are not limited to, those discussed below.

14.    Mesirow is engaging in a loan-by-loan credit and collateral evaluation, arranging for appropriate appraisals and checks on collateral, and commencing collection activities on Nonperforming Loans and determining the most appropriate way to bring each loan to a performing status.  If foreclosures are necessary, USACM will commence such actions as it deems necessary as authorized in the Loan Servicing Agreement that USACM obtained from each of the Loan Investors at the time each investor first invested through USACM.  Most of the delinquent loans received little or no collection efforts prior to the Petition Date, and USACM's new management intends to demonstrate to these borrowers that such delinquency will not be tolerated and that appropriate collection and foreclosure activities and other remedies, including collection on guarantees, will be pursued.

15.    Mesirow is preparing a ledger for each loan as requested by the SEC and the Nevada Mortgage Lending Division.  These ledgers will allow Loan Investors to determine the status of each loan in their portfolios.

16.    Mesirow is preparing an account reconciliation for each Loan Investor and for each Fund Member (to the extent there are Fund Members who are not also Loan Investors).  These reconciliations will indicate amounts due to the Loan Investors on account of each loan in their portfolios, as well as amounts that have been overpaid on Nonperforming Loans.  Principal payments received by USACM but not remitted will also be indicated.  The reconciliations for the Fund Members will indicate the positions of the respective Funds with regard to each loan in their portfolios, as well as the Fund Members' percentage ownership interests in the Funds.

17.    Mesirow is instituting appropriate internal financial and accounting controls and loan servicing audit trails so that the problems that resulted in the Debtors' bankruptcy filings will not recur.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

18.    Mesirow is attempting to trace all intercompany transactions so that any dealings with insiders or affiliates are publicly disclosed and investors will have knowledge of such dealings to inform their decisions respecting their investments. Mesirow will follow up to enforce and collect any intercompany, insider, or affiliate debts owed the Debtors.

19.    Each of these activities is necessary and vital to each Loan Investor and Fund Members. Because only in rare cases does any one investor hold more than a small fractional share of any particular loan, the costs to any one Loan Investor of collecting payments from the borrowers on Nonperforming Loans and otherwise monitoring and enforcing the Lenders' rights under the loan agreements would be prohibitive, and borrowers are not likely to cooperate with such fractionalized collection efforts in any event.

20.    There is a significant intercompany receivable owed to USACM (and possibly to other Debtors) by USA Investment Partners, LLC ("IP"), which is a non-debtor entity related to USACM. It appears that the amount of the receivable exceeds $58 million, and that this obligation owed by IP to the Debtors is unsecured and was not formally documented. At my direction, USACM's bankruptcy counsel has prepared documents intended to properly document and secure this obligation of IP, and I believe I am close to obtaining IP's agreement to execute these documents for the benefit of the Debtors, the Loan Investors, and the Fund Members.

21.    During the first two weeks of the case, Mesirow has initiated measures for collecting unpaid interest on the Nonperforming Loans. Meetings have been held with four borrowers regarding the payment of approximately $13 million of past-due interest, and $2.1 million in past-due interest has been collected since the Petition Date. In addition, loan servicing procedures have been established and implemented with the management of USACM. These procedures allow for the identification and pursuit of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

6

1    delinquent loans. These efforts benefit the Funds and other Loan Investors due to their

2    investment in Nonperforming Loans.

## COSTS OF ESSENTIAL ACTIVITIES / REVISED BUDGET

22.    The Revised Budget, a copy of which is attached hereto as <u>Exhibit B</u>, has been carefully constructed to allow USACM to provide the limited services necessary in administering the Debtors' bankruptcy estates, with a particular focus on servicing the loans to preserve or increase the value of the underlying collateral and on reconciling the individual accounts of the Loan Investors and Fund Members – all for the benefit of the investors and the Debtors. Mesirow and Debtors' counsel are undertaking a monumental effort to obtain and present the correct loan and investor information to the parties in interest and to maximize the value of the Serviced Loans and underlying collateral, in order to maximize the return that ultimately will be made to investors and creditors according to their respective legal and/or equitable entitlements.

23.    While USACM's brokers and principal insiders have been terminated, USACM's accounting department, IT department and loan servicing department are needed in order to obtain the necessary information from the systems to prepare the Loan Ledgers, the Investor Statements, and loan and collection activity histories to date. Payroll is estimated to be $85,000 twice a month.

24.    Operating costs include the electricity, rent, office supplies and other costs to keep the USACM offices open during this period for the benefit of all of the Debtors, Loan Investors, and Fund Members.

25.    Other budgeted costs include the costs of bankruptcy administration, such as for a noticing agent, for bankruptcy counsel and professionals and some costs of official committees that may be appointed in the Debtors' cases.

26.    The Debtors intend to pursue their motion for joint administration or for at least joint noticing to reduce the unnecessary and duplicative costs of separate

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

administration. For example, a recent noticing required that packages of information, including a Notice of Commencement of the Cases (including notice of the May 17, 2006 meeting of creditors) and notices of hearings set for May 3, 2006 and May 18, 2006, were mailed to approximately 8,000 Loan Investors, Fund Members, creditors, and other parties in interest. As for the notices, because separate notices of hearing were required to be filed in each of the 5 cases of the Debtors, 5 separate notices of hearing that were identical except for the case caption were mailed to each of the approximately 8,000 recipients. The mailing by BMC was estimated to cost $48,000, but if duplicate notices could have been eliminated, the cost for the noticing would have been closer to $20,000.

27. Because of the substantial overlap among the Loan Investors and Fund Members, the common nonperforming loan problems of the Funds and the other Loan Investors, and the common informational and accounting needs of the Loan Investors and Fund Members, I believe it would be unnecessary and duplicative to have separate official committees for USACM and the Funds. Further, based on my examination of the financial status of the Debtors, while recognizing that this is in the purview of the U.S. Trustee, I believe that the expense of three or more separate committees would make it impossible for the Debtors to reorganize or even to realize the maximize the value of the Serviced Loans, most of which are held jointly by Loan Investors, including the Funds. The Revised Budget does not include expenses for any more that one committee with appropriate professionals. In the event that more than one committee is appointed, the Revised Budget will need to be increased.

28. Attached hereto as Exhibit C is a copy of an executed Loan Servicing Agreement ("LSA") that is typical of the LSAs entered into by USACM and each of the Loan Investors. The "annual loan servicing fee," according to paragraph 5 of the attached LSA, is not to exceed "three percent (3%) per annum of the maximum principal amount of each of the Loans." I understand that at some point in the past USACM's standard form of LSA included a nearly identical provision except that the annual loan servicing fee was not

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8

to exceed 1% of each loan, and that USACM's standard form of LSA was changed in 2004 to increase the percentage from 1% to 3%. The Revised Budget only includes the annual loan servicing fees at the 1% per annum level even though USACM will be entitled to, and will collect, the higher percentage servicing fee where contractually allowed.

29.    In addition to servicing fees, USACM is entitled to collect and keep late fees, default interest, origination fees, deferred origination fees, extension fees, exit fees, past uncollected servicing fees, and out-of-pocket costs and expenses incurred, including attorney's fees, trustee's fees and foreclosure costs pursuant to the LSA and the loan origination agreements. Expected origination fees for loans originated prior to the bankruptcy filing, deferred origination fees, extension fees and exit fees have been included in the Revised Budget. The Revised Budget does not include past uncollected servicing fees, which are still in the process of being determined, or any out-of-pocket costs and expenses incurred, which USACM may seek to collect at a later time.

30.    In addition to the fees allowed USACM under the Loan Servicing Agreements with investors, USA Capital Realty Advisors, LLC ("USACRA") is entitled to be paid a monthly management fee pursuant to the Second Amended and Restated Operating Agreement of USA Capital First Trust Deed Fund, LLC (the "First Trust Deed Agreement") and the Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Trust Deed Agreement"). This fee amounts to an annual fee of 1% of the funds managed under the Diversified Trust Deed Agreement, and an annual fee of 1.5% of the funds managed under the First Trust Deed Agreement. Management fees payable from cash on hand at the Funds on the petition date is included in the Revised Budget.

31.    The expenditures included in the Revised Budget do not exceed the contractual fees that the Debtors are entitled to collect and expect to collect within the budgeted period, as more fully described herein and in the Revised Budget.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

9

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## POTENTIAL CONSEQUENCES IF THE MOTION IS NOT APPROVED

32.    USACM cannot operate on the funds available in the current DIP Operating Account (which is separate from the Collection Account). USACM needs access to funds which are currently held in the Collection Account or are to be paid into the Collection Account by borrowers to the extent of the servicing fees and other contractual costs and fees to which it is entitled in order to operate and administer its estate. The current funds in the DIP Operating Account, which account has not received any funds from the Collection Account since the bankruptcy filing, are sufficient to fund only this week's payroll and expenses. Without USACM's accounting, IT and loan servicing staff, it will not be possible to obtain sufficient information regarding the loans and investor accounts, to prepare the Ledgers and Account Reconciliations, to collect the past due interest, or to determine what steps have been and need to be taken to collect the Nonperforming Loans.

33.    If the Revised Budget is not approved, the professionals necessary to guide the Debtors through these complex proceedings, to satisfy the informational requirements of the Court, the SEC and the Nevada Mortgage Lending Division, and to enforce the collection of the Nonperforming Loans to return the maximum amounts of interest and principal back to the investors in due course will not be able to continue working, and all of these efforts will come to a halt. The delinquent borrowers will no doubt be less willing to bring their loans current if there is no oversight of these loans.

34.    Apart from the enormous practical difficulties, I believe that I may not be allowed under the USACM form loan agreement, which was used for many or most of the Serviced Loans and which recognizes USACM as the loan servicer, or under the governing Nevada statute, to allow an individual Loan Investor holding only small fractionalized interest in a Serviced Loan to attempt to collect directly from the borrower the fractional share of any loan payments owing. Even if this could be allowed, it would be inefficient and costly to Loan Investors as a whole. I believe the most cost-effective and efficient

10

1  way to collect on these loans is to allow USACM to collect on these loans for the benefit

2  of all Loan Investors in the loan as provided in and agreed to in the Loan Servicing

3  Agreements.

4      Executed this 2nd day of May, 2006.

5

6      Thomas J. Allison

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit A**

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Performing | 3685 San Fernando Road Partners | 83 | 8/2/05 | 7,350,000 | - | | 1.12% | | 98.54% |
| Performing | 5055 Collwood, LLC | 33 | 2/24/06 | 1,500,000 | | | | | 100.00% |
| Performing | 5252 Orange, LLC | 66 | 12/22/05 | 3,800,000 | | | | | 100.00% |
| Performing | 60th Street Venture, LLC | 49 | 12/22/05 | 3,700,000 | | | | | 100.00% |
| Non-Performing | 6425 Gess, LTD | 286 | 4/14/05 | 26,500,000 | 1,946,126 | 15.18% | 2.63% | 0.25% | 97.37% |
| Non-Performing | Amesbury/Hatters Point | 393 | 12/16/02 | 18,552,955 | 1,837,338 | | 1.72% | | 82.31% |
| Performing | Anchor B, LLC | 50 | 5/31/05 | 5,835,422 | 578,273 | | 33.36% | | 66.64% |
| Non-Performing | Ashby Financial $7,200,000 | 73 | 5/3/04 | 7,200,000 | 1,665,600 | 2.08% | | | 97.92% |
| Non-Performing | B & J Investments[1] | 1 | 9/29/99 | 653,125 | 477,034 | | | | 100.00% |
| Non-Performing | BarUSA/$15,300,000 | 221 | 11/24/03 | 15,300,000 | 544,617 | | | 0.07% | 99.93% |
| Non-Performing | Bay Pompano Beach | 407 | 6/20/05 | 16,285,686 | 20,413 | 0.47% | 1.20% | | 98.33% |
| Non-Performing | Beastar, LLC[1] | 84 | 5/2/05 | 3,125,000 | - | | 5.93% | | 94.07% |
| Performing | Beau Rivage Homes/$8,800,000 | 157 | 1/2/03 | 432,349 | 202,076 | | | | 99.38% |
| Performing | Binford Medical Developers | 92 | 8/31/05 | 7,450,000 | - | | 17.25% | | 82.75% |
| Performing | Boise/Gowen 93 | 17 | 8/26/05 | 2,425,000 | | | | | 100.00% |
| Performing | Brookmere/Matteson $27,050,000 | 229 | 10/29/03 | 5,929,393 | - | | 34.20% | | 65.80% |
| Performing | Bundy Canyon $1,050,000 | 1 | 1/6/06 | 1,050,000 | | | | | 100.00% |
| Performing | Bundy Canyon $2,500,000 | 34 | 5/2/05 | 2,300,000 | | | | | 100.00% |
| Performing | Bundy Canyon $5,000,000 | 43 | 9/28/05 | 4,250,000 | | | | 0.71% | 99.29% |
| Non-Performing | Bundy Canyon $5,725,000 | 53 | 1/14/05 | 5,725,000 | 60,282 | | | | 100.00% |
| Performing | Bundy Canyon $7,500,000 | 83 | 8/17/05 | 6,700,000 | | | | | 100.00% |
| Performing | Bundy Canyon $8.9 | 117 | 4/5/06 | 8,900,000 | | | | | 100.00% |
| Performing | BySynergy, LLC $4,434,446 | 3 | 2/3/06 | 4,434,446 | | 51.48% | 35.34% | 13.18% | 100.00% |
| Performing | Cabernet | 65 | 2/17/05 | 3,000,000 | | | | | 100.00% |
| Non-Performing | Castaic Partners II, LLC | 57 | 7/11/05 | 5,600,000 | 137,553 | | 7.59% | | 92.41% |
| Performing | Castaic Partners III, LLC | 65 | 9/22/05 | 4,675,000 | - | | 0.53% | 1.07% | 98.40% |
| Performing | Charlevoix Homes, LLC | 40 | 4/3/06 | 3,400,000 | | | | | 100.00% |
| Performing | Clear Creek Plantation | 36 | 3/15/05 | 2,900,000 | - | | 3.45% | | 96.55% |
| Performing | Cloudbreak LV | 2 | 12/17/03 | 3,800,000 | - | 0.49% | 99.51% | | 0.00% |
| Non-Performing | Colt DIV added #1[1] | 1 | Undetermined | 1,500,000 | 736,776 | 100.00% | | | |
| Non-Performing | Colt DIV added #2[1] | 1 | Undetermined | 3,100,000 | 1,078,165 | 100.00% | | | |
| Non-Performing | Colt Gateway | 3 | 1/17/03 | 3,514,069 | 3,220,735 | 42.53% | | | 57.47% |
| Non-Performing | Colt Second TD | 1 | 8/19/03 | 1,000,000 | 484,412 | | | | |
| Performing | Columbia Managing Partners | 1 | 9/1/05 | 2,210,000 | - | | | 100.00% | |
| Performing | ComVest Capital | 56 | 1/11/06 | 4,125,000 | - | | 17.82% | | 82.18% |
| Performing | Copper Sage Commerce Center Phase II | 51 | 3/1/06 | 3,550,000 | - | | | 1.83% | 98.17% |
| Performing | Copper Sage Commerce Center, LLC | 28 | 6/9/04 | 179,106 | 9,226 | | | | 99.38% |
| Performing | Comman Toltec 160, LLC | 96 | 6/24/05 | 6,375,000 | | | | 0.08% | 99.92% |
| Non-Performing | Cottonwood Hills, LLC | 21 | 6/14/05 | 4,000,000 | 48,222 | | 25.00% | | 75.00% |
| Non-Performing | CREC Building Colt[1] | 1 | Undetermined | 3,718,777 | 1,650,349 | 100.00% | | | 100.00% |

* Preliminary Analysis as of 04/27/2006.

Prepare by MFIM, LLC

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Performing | Del Valle - Livingston | 239 | 8/25/05 | 19,250,000 | - | | 0.67% | | 99.33% |
| Performing | Del Valle Iselton | 76 | 3/22/05 | 6,520,000 | - | | 2.90% | | 97.10% |
| Non-Performing | Eagle Meadows Development | 295 | 10/19/05 | 31,050,000 | 9,019 | | 11.76% | | 88.24% |
| Performing | Elizabeth May Real Estate | 147 | 2/24/06 | 10,050,000 | - | | 1.19% | | 98.81% |
| Non-Performing | EPIC Resorts[1] | 1 | Undetermined | 18,915,000 | undetermined | 100.00% | | | |
| Non-Performing | Fiesta Development $6.6 | 1 | 11/14/05 | 6,600,000 | - | | 100.00% | | |
| Non-Performing | Fiesta Development McNaughton[1] | 1 | 1/10/05 | 6,000,000 | undetermined | 100.00% | | | |
| Performing | Fiesta Murrieta | 69 | 4/14/05 | 6,500,000 | - | | | 1.46% | 98.54% |
| Non-Performing | Fiesta Oak Valley | 227 | 6/15/04 | 20,500,000 | 3,597,750 | | | 0.05% | 99.95% |
| Non-Performing | Fiesta USA/Stoneridge | 100 | 9/22/03 | 10,000,000 | 2,376,004 | | | | 100.00% |
| Non-Performing | Fiesta/Beaumont $2.4m | 36 | 9/17/04 | 2,400,000 | - | | | | 100.00% |
| Performing | Foxhill 216, LLC | 300 | 2/23/06 | 25,980,000 | - | | 0.10% | | 99.90% |
| Non-Performing | Franklin - Stratford Investments, LLC | 2 | 3/30/05 | 5,225,000 | 17,873 | 19.33% | 80.67% | | 0.00% |
| Non-Performing | Freeway 101[1] | 57 | 8/9/04 | 3,750,000 | 38,750 | | | | 100.00% |
| Performing | Gateway Stone | 161 | 11/18/05 | 13,185,000 | - | | 0.76% | | 99.24% |
| Non-Performing | Gilroy | 59 | 11/23/04 | 4,950,000 | 309,031 | | 5.56% | | 94.44% |
| Performing | Glendale Tower Partners | 95 | 6/9/05 | 6,500,000 | - | | | 1.32% | 98.68% |
| Non-Performing | Golden State Investments II | 37 | 6/27/05 | 2,850,000 | 95,032 | | 8.77% | | 91.23% |
| Performing | Goss Road | 20 | 11/2/04 | 1,000,000 | - | | | 0.25% | 99.75% |
| Non-Performing | Gramercy Court Condos | 332 | 6/25/04 | 34,884,500 | 749,341 | 13.10% | | | 86.90% |
| Non-Performing | Harbor Georgetown | 103 | 8/16/04 | 8,800,000 | 333,402 | | 5.80% | | 94.20% |
| Non-Performing | Hasley Canyon | 114 | 3/3/04 | 11,700,000 | 1,287,450 | | | | 100.00% |
| Performing | Hesperia II | 65 | 4/1/05 | 4,250,000 | - | | | | 100.00% |
| Non-Performing | HFA- Clear Lake | 207 | 1/6/05 | 16,000,000 | 2,404,286 | 0.88% | | | 98.81% |
| Non-Performing | HFA- North Yonkers | 298 | 1/11/05 | 24,000,000 | 3,710,069 | | 3.71% | | 96.08% |
| Non-Performing | HFA- Riviera 2nd | 99 | 4/29/04 | 8,000,000 | 2,478,080 | | | | 100.00% |
| Non-Performing | HFA- Windham | 74 | 11/15/04 | 5,550,000 | 893,767 | | | | 100.00% |
| Non-Performing | HFA-Clear Lake 2nd | 36 | 6/24/05 | 2,750,000 | 347,275 | | | 0.29% | 99.71% |
| Non-Performing | HFAH/Monaco | 1 | 12/19/03 | 4,000,000 | 1,236,000 | | 100.00% | | |
| Non-Performing | Huntsville | 116 | 3/31/04 | 10,475,000 | 813,061 | 5.96% | 4.77% | | 89.27% |
| Performing | I-40 Gateway west | 46 | 1/11/05 | 4,530,000 | - | | | | 92.27% |
| Performing | I-40 Gateway West, LLC 2nd | 23 | 3/1/06 | 1,065,000 | - | | | | 100.00% |
| Non-Performing | Interstate Commerce Center Phase II | 2 | 8/11/04 | 1,855,606 | 20,375 | 13.72% | 86.28% | | 0.00% |
| Non-Performing | Interstate Commerce Center | 4 | 2/20/04 | 2,391,355 | 114,357 | 98.72% | | 1.28% | 0.00% |
| Performing | J. Jireh's Corporation | 105 | 9/2/05 | 8,825,000 | - | | 3.00% | | 97.00% |
| Performing | La Hacienda Estate, LLC | 83 | 11/11/04 | 6,255,000 | 38,953 | | | 0.80% | 99.20% |
| Non-Performing | Lake Helen Partners | 35 | 12/7/04 | 3,129,499 | 38,953 | 7.26% | 27.56% | 0.90% | 64.28% |
| Non-Performing | Lenn Hills | 130 | 12/7/05 | 10,350,000 | 129,167 | | | | 100.00% |
| Non-Performing | Margarita Annex | 105 | 7/26/04 | 12,000,000 | 255,667 | | 25.67% | | 74.33% |

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DTF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Non-Performing | Marlton Square | 272 | 8/11/05 | 30,000,000 | 975,000 | | 0.39% | 0.89% | 98.71% |
| Non-Performing | Marlton Square 2nd | 108 | 8/11/05 | 6,000,000 | 204,000 | | | | 100.00% |
| Non-Performing | Marquis Hotel | 169 | 3/29/05 | 13,500,000 | 2,515,500 | | | 0.71% | 99.29% |
| Performing | Meadow Creek Partners, LLC | 103 | 2/23/06 | 8,250,000 | | | 0.87% | | 99.13% |
| Non-Performing | Midvale Marketplace, LLC | 49 | 6/30/05 | 4,075,000 | 205,298 | | 7.61% | | 92.39% |
| Performing | Mountain House Business Park | 202 | 6/10/04 | 16,800,000 | | 0.30% | 5.21% | 0.17% | 94.33% |
| Non-Performing | Oak Shores II | 176 | 6/6/05 | 12,150,000 | 132,907 | 0.07% | 1.49% | | 98.44% |
| Performing | Ocean Atlantic | 32 | 1/1/05 | 2,700,000 | | | | | 100.00% |
| Performing | Ocean Atlantic $9,425,000 | 105 | 1/23/06 | 8,925,000 | | | 14.61% | | 85.39% |
| Non-Performing | Opaque/Mt. Edge $7,350,000 | 95 | 11/5/03 | 4,827,970 | 813,163 | | | | 100.00% |
| Non-Performing | Palm Harbor One | 309 | 12/14/05 | 28,480,000 | 14,723 | | 5.60% | | 94.40% |
| Non-Performing | Placer Vineyards | 343 | 12/10/04 | 31,500,000 | 1,567,682 | | | | 100.00% |
| Non-Performing | Placer Vineyards 2nd | 118 | 12/10/04 | 6,500,000 | 349,556 | | | | 100.00% |
| Performing | Preserve at Galleria, LLC | 73 | 10/6/05 | 4,393,250 | | | | 0.11% | 99.89% |
| Non-Performing | Redwood Properties $269,641[1] | 1 | 11/15/05 | 269,641 | undetermined | | | | 100.00% |
| Performing | Rio Rancho Executive Plaza, LLC | 32 | 1/17/06 | 2,250,000 | | | 3.11% | | 96.89% |
| Non-Performing | Riviera - Homes for America Holdings, L.L.C. | 90 | 6/24/05 | 5,000,000 | 637,500 | | | | 100.00% |
| Non-Performing | Roam Development Group | 291 | 3/23/05 | 26,251,945 | 173,806 | | 2.37% | | 97.63% |
| Non-Performing | Saddleback[1] | 1 | Undetermined | 375,000 | 9,849 | | | | 0.00% |
| Non-Performing | Shamrock Tower, LP | 87 | 8/5/04 | 10,500,000 | 1,590,927 | | 31.43% | | 68.57% |
| Non-Performing | Sheraton Hotel[1] | 1 | Undetermined | 6,845,000 | 896,084 | 100.02% | | | -0.02% |
| Performing | Slade Development | 40 | 12/5/05 | 3,525,000 | | | | 1.42% | 98.58% |
| Performing | Southern California Land 2nd | 33 | 8/3/05 | 2,800,000 | | | | 1.25% | 98.75% |
| Performing | Standard Property Development | 115 | 2/27/06 | 9,640,000 | | | 6.96% | | 93.04% |
| Performing | SVRB $4,500,000 | 67 | 4/27/05 | 1,424,082 | | | | | 100.00% |
| Performing | SVRB 2nd $2,325,000 | 25 | 4/27/05 | 2,325,000 | | | | | 90.32% |
| Non-Performing | Tapia Ranch | 179 | 9/28/04 | 22,000,000 | 595,433 | | 1.43% | | 98.57% |
| Non-Performing | Ten-Ninety, Ltd./$4,150,000 | 18 | 12/30/02 | 4,150,000 | 1,775,764 | 20.48% | | | 79.52% |
| Non-Performing | Ten-Ninety[1] | 1 | Undetermined | 55,113,781 | undetermined | 100.00% | 100.00% | | 100.00% |
| Performing | The Gardens Phase II | 1 | 3/31/06 | 2,500,000 | | | 100.00% | | 100.00% |
| Performing | The Gardens, LLC $2,425,000 | 34 | 8/15/05 | 1,961,000 | | | 1.52% | 4.01% | 94.47% |
| Non-Performing | The Gardens, LLC Timeshare | 51 | 3/24/04 | 5,300,000 | 250,458 | 5.43% | 31.03% | | 63.53% |
| Non-Performing | Universal Hawaii[1] | 127 | 8/6/04 | 5,166,413 | undetermined | | 100.00% | | 100.00% |
| Non-Performing | University Estates | 1 | 4/11/05 | 3,835,400 | 1,763 | | | | 100.00% |
| Performing | Urban Housing Alliance - 435 Lofts | 110 | 7/13/05 | 8,150,000 | | | 0.37% | 0.40% | 99.23% |
| Non-Performing | Wasco Investments | 86 | 11/23/04 | 6,450,000 | 407,535 | | 3.02% | | 96.98% |
| | | 10,546 | | $962,064,768 | $49,068,852 | | | | |

[1] Status of these loans is undetermined due to bankruptcy, foreclosures, change of ownership, etc. More research is being performed.

* Preliminary Analysis as of 04/27/2006.

Prepare by MFIM, LLC

**Exhibit B**

**USA Commercial Mortgage Company, et al.**
13-Week Cash Forecast
($ in thousands)

13-Week Cash Forecast

| | | | | | | | Week Ending | | | | | | | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 5/7/2006 | 5/14/2006 | 5/21/2006 | 5/28/2005 | 6/4/2006 | 6/11/2006 | 6/18/2006 | 6/25/2006 | 7/2/2006 | 7/9/2006 | 7/16/2006 | 7/23/2006 | 7/30/2006 | 13 Weeks |
| **Cash Collections** | | | | | | | | | | | | | | |
| **USA Commercial Mortgage** | | | | | | | | | | | | | | |
| Loan Origination Fees | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $900.0 | $0.0 | $0.0 | $900.0 |
| Total Other Collections | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 14.1 | 0.0 | 0.0 | 14.1 |
| Permanent Loan Closing Fees | 7.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 7.0 |
| Reimbursed Expenses from USA Capital Realty | 120.0 | 105.6 | 0.0 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 436.9 |
| **Loan Servicing Collections** | | | | | | | | | | | | | | |
| Estimated Service Fees | 475.3 [a] | 430.9 | 0.0 | 37.5 | 17.8 | 457.1 | 8.0 | 11.3 | 0.0 | 0.0 | 480.1 | 0.0 | 10.3 | 1,928.3 |
| Outstanding Origination, Extension and Closing Fees | 146.3 | 0.0 | 0.0 | 0.0 | 222.8 | 36.5 | 277.5 | 320.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 1,003.1 |
| **Total Cash Collections Operating Accounts** | $748.7 | $536.6 | $0.0 | $37.5 | $240.6 | $599.2 | $285.5 | $331.3 | $0.0 | $105.6 | $1,394.1 | $0.0 | $10.3 | $4,289.4 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Origination Disbursements | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Salaries & Wages | 85.0 | 85.0 | 85.0 | 0.0 | 0.0 | 85.0 | 0.0 | 85.0 | 0.0 | 85.0 | 0.0 | 85.0 | 0.0 | 510.0 |
| Payroll Related Benefits | 14.5 | 14.5 | 14.5 | 0.0 | 11.0 | 14.5 | 0.0 | 14.5 | 11.0 | 14.5 | 0.0 | 14.5 | 0.0 | 108.7 |
| Rent | 0.0 | 0.0 | 0.0 | 0.0 | 57.0 | 0.0 | 0.0 | 0.0 | 47.0 | 0.0 | 0.0 | 0.0 | 0.0 | 104.7 |
| Office Operating Disbursements | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 130.0 |
| Other Operating Disbursements | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 325.0 |
| **Total Operating Disbursements** | $134.5 | $134.5 | $134.5 | $35.0 | $103.0 | $134.5 | $35.0 | $134.5 | $93.0 | $134.5 | $41.5 | $134.5 | $35.0 | $1,184.2 |
| **Bankruptcy Related Disbursements** | | | | | | | | | | | | | | |
| Professional Fees (see schedule for detail) | $0.0 | $0.0 | $0.0 | $0.0 | $541.4 | $0.0 | $0.0 | $0.0 | $765.9 | $0.0 | $0.0 | $0.0 | $843.7 | $2,181.0 |
| Trustee Fees | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 9.0 | 9.0 |
| **Other** | | | | | | | | | | | | | | |
| Employee Retention Costs | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Noticing Agent | 0.0 | 82.0 | 0.0 | 0.0 | 0.0 | 0.0 | 25.0 | 0.0 | 0.0 | 0.0 | 5.0 | 0.0 | 0.0 | 112.0 |
| Appraisal Fees | 0.0 | 0.0 | 100.0 | 100.0 | 0.0 | 0.0 | 0.0 | 0.0 | 100.0 | 0.0 | 0.0 | 0.0 | 0.0 | 300.0 |
| Other (security) | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 130.0 |
| **Post-Petition Financing** | | | | | | | | | | | | | | |
| Fees for Post-Petition Financing | 150.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 150.0 |
| Legal Counsel Fees & Disbursements | 0.0 | 50.0 | 50.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 100.0 |
| **Total Bankruptcy Related Disbursements** | $160.0 | $142.0 | $60.0 | $110.0 | $551.4 | $10.0 | $35.0 | $10.0 | $905.9 | $10.0 | $15.0 | $10.0 | $952.7 | $2,982.0 |
| **Total Cash Disbursements Operating Accounts** | $294.5 | $177.0 | $194.5 | $145.0 | $654.4 | $144.5 | $70.0 | $144.5 | $998.9 | $144.5 | $56.5 | $144.5 | $997.7 | $4,166.2 |
| **NET CHANGE IN CASH** | $454.2 | $359.6 | ($194.5) | ($107.5) | ($413.8) | $454.8 | $215.5 | $186.9 | ($998.9) | ($38.9) | $1,337.6 | ($144.5) | ($587.4) | $123.1 |
| **Cash Position - DIP Accounts** | | | | | | | | | | | | | | |
| Total Cash and Cash Equivalents at Beginning of Period | $276.6 [b] | $732.8 | $1,092.4 | $897.9 | $790.4 | $376.6 | $831.4 | $1,046.9 | $1,233.8 | $234.9 | $196.0 | $1,533.6 | $1,389.1 | $276.6 [b] |
| Pre-Petition Cash Payments | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Net (Decrease) Increase in Cash and Cash Equivalents | 456.2 | 359.6 | (194.9) | (107.5) | (413.8) | 454.8 | 215.5 | 186.9 | (998.9) | (38.9) | 1,337.6 | (144.5) | (987.4) | 123.1 |
| **Total Cash and Cash Equivalents at End of Period** | $732.8 | $1,092.4 | $897.9 | $790.4 | $376.6 | $831.4 | $1,046.9 | $1,233.8 | $234.9 | $196.0 | $1,533.6 | $1,389.1 | $401.7 | $401.7 |

Notes:
(a) Includes April collections of service fees
(b) Opening Cash Balance as of 5/2/06 less $150,000 for Wells Fargo account offset

**USA Commercial Mortgage Company, et al.**
13-Week Cash Forecast
*($ in thousands)*

13-Week Cash Forecast

| | 5/7/2006 | 5/14/2006 | 5/21/2006 | 5/28/2006 | 6/4/2006 | 6/11/2006 | 6/18/2006 | 6/25/2006 | 7/2/2006 | 7/9/2006 | 7/16/2006 | 7/23/2006 | 7/30/2006 | Total 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Additional Schedules** | | | | | | | | | | | | | | |
| **USA Capital Realty Advisors** | | | | | | | | | | | | | | |
| Beginning Cash Balance | $122.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $122.7 |
| Management Fees Collected (DTDF) | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 316.9 |
| Expense Reimbursement due USA CMC | (120.0) | (105.6) | 0.0 | 0.0 | 0.0 | (105.6) | 0.0 | 0.0 | 0.0 | (105.6) | 0.0 | 0.0 | 0.0 | (436.9) |
| Ending Cash Balance | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 | $2.7 |
| **Collections and Disbursements for Trusts and Funds** | | | | | | | | | | | | | | |
| Estimated Interest Collections for USA CRA | $0.0 | $4.0 | $0.0 | $0.0 | $4.4 | $4.4 | $0.0 | $0.0 | $0.0 | $0.0 | $4.8 | $0.0 | $0.0 | $13.2 |
| Estimated Interest Collections for USA CMC | 0.0 | 18.4 | 0.0 | 0.0 | 20.1 | 20.1 | 0.6 | 0.0 | 0.0 | 0.0 | 21.2 | 0.0 | 0.0 | 60.3 |
| Estimated Interest Collections for USA CMC | 0.0 | 738.7 | 0.0 | 0.0 | 805.9 | 805.9 | 0.6 | 0.0 | 0.0 | 0.0 | 872.5 | 0.0 | 0.0 | 2,417.6 |
| Estimated Interest Collections for DTDF | 0.0 | 345.3 | 0.0 | 6.7 | 373.2 | 373.2 | 1.6 | 0.0 | 0.0 | 0.0 | 388.0 | 0.0 | 9.4 | 1,157.6 |
| Estimated Interest Collections for FTDF | 0.0 | 4,711.7 | 0.0 | 491.1 | 4,969.7 | 4,969.7 | 97.5 | 144.8 | 0.0 | 0.0 | 5,191.8 | 0.0 | 124.7 | 16,424.2 |
| Estimated Interest Collections for Others | 473.8 | 0.0 | 22,090.0 | 4,950.0 | 179.1 | 10,500.0 | 16,285.7 | 0.0 | 0.0 | 0.0 | 5,600.0 | 0.0 | 64,342.8 | |
| Expected Principal Return | 4,828.0 | | | | | | | | | | | | | |
| Total Trust Account Collections | $5,301.8 | $5,818.2 | $0.0 | $22,505.8 | $6,352.4 | $16,612.2 | $16,432.7 | $0.0 | $0.0 | $6,486.2 | $0.0 | $5,734.1 | 84,415.9 | |
| **Total Trust Account Collections** | | | | | | | | | | | | | | |
| Interest Payments to DTDF Investors | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | |
| Interest Payments to FTDF Investors | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| Interest Payments to Direct Investors | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| Service Fees to USA CMC | 475.3 | 430.9 | 0.0 | 37.5 | 457.1 | 457.1 | 8.0 | 11.3 | 0.0 | 480.1 | 0.0 | 10.3 | 1928.3 | |
| Total Interest Disbursements | $475.3 | $430.9 | $0.0 | $37.5 | $17.8 | $457.1 | $8.0 | $11.3 | $0.0 | $480.1 | $0.0 | $10.3 | $1,928.3 | |
| Management Fees Paid by DTDF | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 105.6 | 0.0 | 0.0 | 0.0 | 316.9 | |
| Management Fees Paid by FTDF | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| **Cash Position - Trust Accounts (week end)** | | | | | | | | | | | | | | |
| Cash Balance DTDF | $929.1 | $723.4 | $723.4 | $723.4 | $723.4 | $617.8 | $617.8 | $617.8 | $617.8 | $512.2 | $512.2 | $512.2 | $512.2 | |
| Cash Balance FTDF | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| Cash Balance Collections Trust | 21,907.7 | 27,295.1 | 27,295.1 | 49,763.4 | 54,918.1 | 60,813.4 | 71,417.6 | 87,839.0 | 87,839.0 | 67,839.0 | 93,845.2 | 93,845.2 | 99,568.9 | |
| Cash Balance Investors Trust | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | 1,877.1 | |
| **Debtor Professional Fees (as incurred)** | | | | | | | | | | | | | | |
| Financial Advisor Fees & Disbursements | $160.0 | $160.0 | $155.0 | $150.0 | $145.0 | $130.0 | $130.0 | $130.0 | $130.0 | $130.0 | $130.0 | $130.0 | $130.0 | $1,810.0 |
| Legal Counsel Fees & Disbursements | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 650.0 |
| Local Counsel | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 16.7 | 216.7 |
| FR Firm | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 10.0 |
| Other Legal Professionals | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 162.5 |
| **Committee Professionals** | | | | | | | | | | | | | | |
| Legal Counsel Fees & Disbursements | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 250.0 |
| Financial Advisor Fees & Disbursements | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 250.0 |
| Accrual Amount for Bankruptcy Professional Fees | $240.0 | $240.0 | $235.0 | $280.0 | $274.9 | $259.9 | $259.9 | $259.9 | $259.9 | $259.9 | $259.9 | $259.9 | $259.9 | $3,349.1 |
| Cash Payment for Bankruptcy Professional Fees | $0.0 | $0.0 | $0.0 | $0.0 | $541.4 | $0.0 | $0.0 | $0.0 | $795.9 | $0.0 | $0.0 | $0.0 | $843.7 | $2,181.0 |

5 of 5

**Exhibit C**

# LOAN SERVICING AGREEMENT

This Loan Servicing Agreement ("Agreement") is made as of the ___9th___ day of ___November___, 2004, between USA Commercial Mortgage Company ("USA") and _Patrick F. Fenlon and Angela B. Fenlon, husband and wife as joint tenants with the rights of survivorship_ ("Lender")

## RECITALS

A.    USA is a mortgage broker and loan servicer in Clark County, Nevada.

B.    Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans are arranged by USA and are secured by interests in real and/or personal property.

C.    Lender wishes to retain the services of USA in connection with making and servicing a loan or loans ("Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Services in Connection with Arranging the Loans.  USA will perform the following services in connection with arranging each Loan:

(a)    Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b) below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

(b)    Obtain a deed of trust, assignment of rents and security agreement executed by Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be properly recorded.

(c)    Obtain one or more personal or corporate guaranties, if applicable and as determined by USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used by USA.

(d)    If USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

(e)    Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the initial principal amount of the note and showing as exceptions only those items approved by USA and its counsel.

v.1 Rev. 8/04                                            1

        (f)     Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee

        (g)     Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

        (h)     Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

        (i)     Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest

        (j)     All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request. Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

        (k)     Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

   2.     <u>Services of USA in Connection with Servicing the Loans</u>. Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

        (a)     Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage. USA will hold for the Lender such policies and renewals thereof

        (b)     Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts. Those records will be available for review by the Lender during regular business hours at USA's corporate office.

        (c)     Until the total amount due under each note is paid in full:

           (i)     Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds

           (ii)     In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including

but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

(iii)    In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

(iv)    In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

(d)    Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

(e)    Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. Notwithstanding the foregoing or any other provision contained herein, USA may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

3.    **Rights of Lender if USA Fails to Act.**    Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

(a)    the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and

(b)    the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

4.    Legal Proceedings    USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure; provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5.    Compensation to USA for Loan Servicing    Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed three percent (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) and default interest collected from the Borrower pursuant to the terms of the Note. Notwithstanding the foregoing, it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6.    USA's Right to Delegate.    Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7    No Legal Advice    Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any

questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter

8.    Termination.  Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

9    Lender's Registration.  Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

10.    Integration Clause.  This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties.  The invalidity of any portion of this agreement shall in no way affect the balance thereof.  This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof)

11.    Limited Power of Attorney.  With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan  Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder.  No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder  All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12 Notices.  All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

> If to USA:          USA Commercial Mortgage Company
>                     4484 S. Pecos Road
>                     Las Vegas, Nevada 89121-5030
>                     Attention:
>
>
> If to Lender:
>
>
>                     Attention:

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice

13.    Governing Law.    This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

14    Counterparts.    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

15.    Attorney's Fees.    In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the party against whom judgment is rendered in such action shall be liable to the other for reimbursement of its costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal,

16.    Successors and Assigns.    This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

17.    Headings.    Sections headings used in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement.

18    Authority.    Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written

LENDER: Patrick F. Fenlon and Angela B. Fenlon, husband and wife as joint tenants with the rights of survivorship

By: _____
Name: Patrick F. Fenlon
Title:  Husband

By: _____
Name: Angela B. Fenlon
Title:  Wife

USA COMMERCIAL MORTGAGE COMPANY

By: _____
Joseph D. Milanowski, President

6

v.1 Rev. 8/04

# EXHIBIT "1"



**Entered on Docket**
**May 22, 2006**

Hon. Linda B. Riegle
United States Bankruptcy Judge

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
and
Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Proposed Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case Nos. BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Chapter 11 |
| | **SECOND ORDER APPROVING DEBTORS' PROPOSED CASH MANAGEMENT PROCEDURES AND CASH USAGE** |
| Debtor. | |
| | Date: May 3, 2006<br>Time: 9:30 a.m. |

- 1 –

Second Order Approving Debtors' Proposed Cash Management Procedures And Cash Usage

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Before the Court is the Debtors' Motion for Order Approving Debtors' Proposed Cash

2    Management Procedures and Interim Use of Cash filed April 14, 2006 (the "Motion").  The

3    Motion sought approval of the Debtors' proposed cash management procedures and the Debtors'

4    limited use of cash for a limited period pursuant to the cash budget (the "Initial Budget") attached

5    as Exhibit A to the Motion.  On April 19, 2005, the Court entered an Interim Order approving the

6    Motion and the Debtors' interim use of cash, for the purposes and on the terms set forth in the

7    Motion and the Initial Budget until May 3, 2006 when the Motion was to be considered further at

8    a hearing.  On May 2, 2006, the Debtors filed a Reply Brief (the "Reply") and a Supplemental

9    Declaration of Thomas J. Allison in support of the Motion, including a revised cash budget (the

10   "Revised Budget") attached as Exhibit B to the Supplemental Declaration.  Several objections to

11   the Motion were filed on or before May 3, 2006.  At the hearing held May 3, 2006, numerous

12   appearances were made upon the record, testimony and other evidence were presented and

13   arguments were made concerning the Motion.

14       The Court having considered the declarations of Thomas J. Allison and exhibits thereto in

15   support of the Motion, the arguments set forth in the Motion and in the Reply, the evidence

16   presented and arguments made at the May 3, 2006 hearing, and other facts of record in the

17   Debtors' bankruptcy cases, and finding that notice of the Motion was adequate and proper,  it is

18   hereby

19       ORDERED that the Motion is GRANTED in that:

20       1)    The Debtors' proposed cash management procedures set forth in the

21   Motion, as clarified in the Reply, the Revised Budget, and the proceedings of the May 3, 2006

22   hearing, are approved; and

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Second Order Approving Debtors' Proposed Cash Management Procedures And Cash Usage

1         2)    The Debtors' use of cash to the extent and for the purposes reflected in the

2   Revised Budget through July 16, 2006 is approved, except that, consistent with the clarifications

3   made by the Debtors at the hearing on May 3, 2006, post-petition financing and professional fees

4   may not be disbursed without further Court order.

5   Submitted by:

6   Annette W. Jarvis, Utah Bar No. 1649
    RAY QUINNEY & NEBEKER P.C.

7   36 South State Street, Suite 1400
    P.O. Box 45385

8   Salt Lake City, Utah 84145-0385

9   and

10

11

12  Lenard E. Schwartzer
    Nevada Bar No. 0399

13  Jeanette E. McPherson
    Nevada Bar No. 5423

14  Schwartzer & McPherson Law Firm
    2850 South Jones Boulevard, Suite 1

15  Las Vegas, Nevada 89146-5308

16  Proposed Attorneys for Debtors

17

    Approved/Disapproved by:

18

19

20  Office of the U.S. Trustee
    300 Las Vegas Boulevard South, Suite 4300

21  Las Vegas, NV 89101

22                                              # # #

23

24

25

26

27

28

Second Order Approving Debtors' Proposed Cash Management Procedures And Cash Usage

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122