J. Stephen Peek, Esq., NV. Bar No. 1758
Elissa F. Cadish, Esq., NV Bar No. 8834
Scott D. Fleming, Esq., NV Bar No. 5638
Matthew J. Kreutzer, Esq., NV Bar No. 8834
Hale Lane Peek Dennison and Howard
3930 Howard Hughes Parkway, Fourth Floor
Las Vegas, Nevada  89169
Telephone: (702) 222-2500
Facsimile:  (702) 365-6940
Email:  mkreutzer@halelane.com

Attorneys for Rolland P. Weddell
And Spectrum Financial Group

ELECTRONICALLY FILED July 12, 2006

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | |
| USA COMMERCIAL MORTGAGE COMPANY<br>Debtor. | Bankruptcy No. BK-S-06-10725-LBR |
| | Bankruptcy No. BK-S-06-10726-LBR |
| In re: | Bankruptcy No. BK-S-06-10727-LBR |
| USA CAPITAL REALTY ADVISORS, LLC<br>Debtor. | Bankruptcy No. BK-S-06-10728-LBR |
| In re: | Bankruptcy No. BK-S-06-10729-LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC<br>Debtor. | (Jointly Administered)<br>Chapter 11 |
| In re: | |
| USA CAPITAL FIRST TRUST DEED FUND, LLC<br>Debtor. | **MOTION FOR RELIEF FROM AUTOMATIC STAY**<br>(Affects:  All Debtors) |
| In re: | |
| USA SECURITIES, LLC<br>Debtor. | Hearing Date:  August 4, 2006<br>Hearing Time:  1:30 p.m. |

Rolland P. Weddell and Spectrum Financial Group (collectively, "Movants") hereby move, pursuant to § 362(d)(1), for an Order modifying the automatic stay on actions with respect to debtor USA Commercial Company ("USA") to permit litigation currently pending in the United States District Court for the District of Nevada, Case No. 2:01-cv-0355-KJD-LRL (the "Action") to continue. As described below, USA has asserted counterclaims in the Action against the Movants, and as such, USA has an interest in liquidating those claims.  Allowing the District Court to resolve the Action,

1  which has been pending for almost five years and has involved substantial motion practice, is the most
2  efficient and reasonable method for resolving all of USA's, and Movants', claims.

3  This motion is made and based upon the following points and authorities, and supporting
4  documentation, the papers and pleadings on file in this action, and any oral argument this Court may
5  allow.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**I.**

**INTRODUCTION AND FACTUAL BACKGROUND**

**A.    The Pending Federal Court Litigation**

On March 29, 2001, the moving parties, Rolland P. Weddell and Spectrum Financial Group (collectively, "Movants") brought an action against USA Commercial Mortgage Company ("USA") in the United States District Court for the District of Nevada. Included among the other defendants in that action are USA's former chief executive officer, Thomas A. Hantges ("Hantges"), its former president and treasurer, Joseph Milanowski ("Milanowski"), and USA's former Vice President, Richard Kropp ("Kropp"). *See* Fourth Amended Complaint, attached hereto as **"Exhibit B."** Also named as defendants in that lawsuit are Amblamo, LLC ("Amblamo"), a lender and beneficiary of certain loans made by USA, and Housing Partners LLC ("Housing Partners"), which is an affiliate of USA, Hantges, and Milanowski. *Id.* That lawsuit, which is still ongoing, is captioned *Rolland P. Weddell, et al. v. USA Commercial Mortgage, et al.*, case number 2:01-CV-0355 KJD (LRL) (the "Action"). *Id.*

The Action relates to a series of loans made by USA and its related parties, Amblamo and Housing Partners. Specifically, USA, Amblamo, and Housing Partners loaned money to the Movants' former co-plaintiff American Communities, LLC ("American Communities"), and its related entities, which included the now-bankrupt Principle Centered, Inc. ("PCI"). Exhibit B, at ¶¶ 20-142. In order to induce American Communities into taking out a series of loans from USA, USA, Hantges, Milanowski and Kropp made a series of false representations to American Communities regarding, among other things, the financial status of a prospective candidate for merger with American

Communities. *Id.*, at ¶¶ 29-37. As a precondition for certain of the USA-brokered loans, Hantges, as a shareholder of the merger candidate, demanded that American Communities purchase all of his stock in the target company for greater than face value. *Id.*, at ¶ 45.

### B.   USA Wrongfully Seizes Control Of American Communities

Eventually, American Communities learned that all representations made by USA, Hantges, Milanowski and Kropp regarding the target company were false, and that the target company was ready to file for bankruptcy protection. Exhibit B, at ¶¶ 50-52. As a result, American Communities opted not to go forward with the merger and began to pursue additional equity opportunities with third parties; USA, however, effectively "quashed" these efforts when USA itself promised to become American Communities' equity partner. *Id.*, at ¶ 56. Instead of providing American Communities with equity, it simply created more loans – which American Communities, its affiliates, and subsidiaries could not afford. *Id.*, at ¶ 58.

Hantges and Milanowski abused the opportunity created by American Communities' weak financial position by seizing the controls of the company without permission or authority. Exhibit B, at ¶¶ 64-78. Hantges and Milanowski, individually and as principals of USA, began committing American Communities to harmful business deals, which further injured American Communities economically. *Id.* After intentionally weakening American Communities with these deals, USA and Hantges informed American Communities that American Communities would have no choice but to deed all of its assets directly to USA. *Id.*, at ¶ 82.

Certain of the American Communities entities became unable to make payments on their USA-brokered loans. Exhibit B, at ¶¶ 99, 109, 110. In 1999, without the knowledge of the Porters, USA and Housing Partners utilized a loan to American Communities to make payments to the beneficiaries of certain loans, so that the loans did not go into default. *Id.* USA has, through this bankruptcy proceeding, explicitly admitted to engaging in this practice. *See* Reply Brief in Support of Motion for Order Under 11 U.S.C. §§ 105(a), 345, And 363, attached as **"Exhibit C,"** at 3:1-11 ("the past practice of the Debtors has been to make interest payments to all investors whether or not money was collected

on the underlying loan"). Even though USA and Housing Partners had made these payments, USA and Housing Partners falsely characterized the loans as being in default and initiated foreclosure proceedings. Exhibit B, at ¶¶ 94-101.

### C. The Debt Restructuring Agreement

In January of 2000, Movants Rolland Weddell ("Weddell") and Spectrum Financial Group, LLC ("Spectrum"), along with the Porters, formed PCI to take over and develop most of American Communities' projects and entered into a Debt Restructuring Agreement with USA and Housing Partners relating to various loans. Exhibit B, at ¶¶ 117-120. USA, however, refused to comply with the terms of the Debt Restructuring Agreement, and, once again, improperly claimed that PCI and its guarantors owed additional fees to USA. *Id.*, at ¶¶ 137-141, 147-163. The actions by USA and its principals caused other potential lenders, contractors, and suppliers to refuse to do business with American Communities or the PCI entities, which ultimately caused those businesses to fail. *Id.*, at ¶ 164.

### D. The Claims Asserted By Movants And USA

In their Complaint, Movants, along with American Communities, the Porters, and PCI and its subsidiaries, allege that USA and the other defendants conspired with one another in devising a scheme that involved a series of fraudulent transactions designed to bilk the plaintiffs out of millions of dollars. *See Id.* In 2003, American Communities and the Porters settled their claims. PCI and its subsidiaries filed for bankruptcy, pursuant to which this Court held an auction for the sale of claims held by those entities. Movants successfully bid on and were assigned PCI's (and PCI's subsidiaries') claims, and have asserted the assigned claims in the Action. *See* Order Approving Sale of Claims to Spectrum Financial Group, dated November 18, 2002, attached as **"Exhibit D."**

In their Fourth Amended Complaint, Movants assert claims for, *inter alia*, violation of federal and state RICO laws, intentional and negligent misrepresentation, defamation, tortious interference with contractual relations, breach of contract, false light, invasion of privacy, and abuse of process.

*See, e.g.,* Exhibit B. USA and Housing Partners filed counterclaims against Movants, alleging (among other things) that Spectrum, as the successor in interest to the loans made by USA to the PCI subsidiaries, breached various loan agreements. USA's Counterclaims are attached hereto as **"Exhibit E."** Further, USA alleges that Weddell breached various guaranties that he executed on several of the loans made to PCI and its subsidiaries, and claims that Weddell breached the covenant of good faith and fair dealing in connection with the guaranties he executed with USA. *Id.*

USA played a critical role in the events giving rise to the Action. As discussed below, the automatic stay imposed as to USA should be modified because: (1) USA has an interest in having a judicial determination regarding the value, if any, of its counterclaims against Movants; (2) USA is accused in the Complaint of defrauding Movants by filing Notices of Default regarding loans held by Movants, even though the loans were current because USA paid the beneficiaries on those loans (as it has admitted to doing in this case); and (3) USA has, in connection with the PCI bankruptcy, specifically refused to stipulate to conducting in this Court a jury trial (which Movants seek) on the claims asserted in the Action.

Moreover, because of the complexity of the Action, the stay that is currently imposed upon USA will amount to a massive waste of judicial and the parties' resources if the parties are required to try the Action twice – once against Hantges, Milanowski, Kropp, Housing Partners, and Amblamo, and once against USA. USA's participation in discovery – either as a party or through third-party subpoena practice by the remaining parties – will be substantial, and compelled third-party discovery against USA will also amount to a waste of USA's resources if it is not a direct participant in the Action.

For the reasons discussed herein, Movants respectfully request that this Court order that the bankruptcy stay for USA be modified as to the Action.

/ / /

# III.

# ARGUMENT

## A. Legal Standard

Section 362(d) of the U.S. Bankruptcy Code governs the standard for modifying the automatic stay imposed in a bankruptcy case. That section provides, in relevant part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C.A. § 362.

In general, the decision whether to modify the stay for cause "is within the discretion of the bankruptcy judge and may be reversed only for an abuse of discretion." *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992) (citing *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir.1989)). The party seeking relief from the automatic stay bears the burden of demonstrating a *prima facie* case for cause. *In re Stranahan*, 67 B.R. at 836-37 (1985).

A request for relief for cause "must be considered on its own facts." *In re Mac Donald*, 755 F.2d 715 (9th Cir.1985). The court "must appropriately consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest." *Hohol*, 141 B.R. at 297. In this regard, courts have stated that the purpose of the automatic stay is "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured." *Matter of Holtkamp*, 669 F.2d 505, 508 (D. Ind. 1982) (citing H.R.Rep.No.595, 95th Cong., 1st Sess. 340 (1977)). This procedure is designed to prevent a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Id.* (citing *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981)).

The automatic stay imposed by the Code was not intended to apply universally to every case; instead, the legislative history of the Code indicates that "Congress recognized that the stay should be modified in appropriate circumstances." *Holtkamp*, 669 F.2d at 508. Specifically, Congress

recognized that in certain circumstances, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Id.*, citing S.Rep.No.989, 95th Cong., 2d Sess. 50, reprinted in (1978) U.S.Code Cong. & Ad.News 5836.

As shown below, adequate "cause" exists to modify the automatic stay to permit the Action to continue with USA's involvement, so that USA and the Movants may pursue their claims to final judgment. Once liquidated, Movants' and USA's claims may be administered through the pending bankruptcy case.

### B. The Balance of Hardships Favors Modifying the Automatic Stay

As stated above, Movants here seek relief from the automatic stay as to USA because there is sufficient "cause" to do so within the meaning of 11 U.S.C.A. § 362(d)(1). "Cause" has been found to exist where, as here, "the matter in dispute would be resolved more economically, conveniently, and quickly in a nonbankruptcy forum." See **In re Westwood Broadcasting, Inc.**, 35 B.R. 47 (Bankr. D. Hawaii 1983). Indeed, courts have regularly granted relief from the automatic stay in cases involving unsecured creditors where, as here, those cases were initiated prior to the bankruptcy filing. *See, e.g.,* **Holtkamp**, 669 F.2d at 508 (citations omitted).

The test for determining whether an automatic stay should be modified to allow continuation of a pending lawsuit is whether:

> a) Any "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit,
>
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
> c) the creditor has a probability of prevailing on the merits of his case.

**In re Pro Football Weekly, Inc.**, 60 B.R. 824, 826 (N.D. Ill. 1986) (citing **In re Bock Laundry Machine Co.**, 37 B.R. 564, 566 (Bkrtcy.N.D.Oh.1984); *see also* **In re Continental Airlines, Inc.**, 152 B.R. 420, 424 (D.Del. 1993). Here, all three factors clearly weigh in favor of modifying the stay imposed as to the Action. Accordingly, this Court should grant Movants relief from the automatic stay as requested herein.

(1) No "great prejudice" to USA will result from continuation of the Action

Here, USA will not suffer any "great prejudice" if this Court decides to modify the automatic stay and allow USA to continue litigating the Action. Instead, USA will be able to have a final judicial determination, and, accordingly, certainty, regarding its long-raging dispute with Movants. Also, modifying the stay will allow USA to litigate and liquidate its counterclaims against Movants, which are based on alleged breaches of the underlying loan agreements.

Where, as here, litigation has been pending for a substantial length of time, "[t]he question is what will be the most expeditious and fair way to liquidate that claim." *In re Philadelphia Athletic Club, Inc.*, 9 B.R. 280, 282 (Bkrtcy.Pa. 1981). In the *Philadelphia Athletic Club* case, the court modified the stay where the debtor had been involved in lengthy proceedings in the state court. The court found that "[t]o require the state court plaintiff to start those proceedings all over again in this court will clearly be a waste of judicial and legal time and effort." *Id.* Here, particularly in light of the substantial resources the parties have already spent and the substantial motion practice that has already taken place in the Action, the most expeditious way to proceed is clearly to allow the Action to continue before United States District Judge Dawson and be fully and finally resolved between the parties in the United States District Court.

Moreover, allowing the dispute between Movants and USA to proceed in the Action will not prejudice USA because USA has, in the past, opposed resolution of the claims in this bankruptcy court. Specifically, during the bankruptcy proceedings for the PCI entities, those entities offered to allow this Court to finally adjudicate all claims in the Action. USA and its co-defendants, however, specifically refused to consent. *See* Order dated January 17, 2002 (attached as **"Exhibit F"**), at 3: 17-19. ("The Plaintiffs in the [Action] will consent to jurisdiction in the Bankruptcy Court and will agree to entry of final orders by the Bankruptcy Court on all claims. The Defendants in the [Action] will not so consent"). Because USA has indicated its strong preference that its dispute against Movants be resolved in the United States District Court, instead of this Court, allowing those claims to proceed in USA's chosen forum strongly supports modifying the stay. *See, e.g., Pro Football Weekly*, 60 B.R. at 827 (modifying automatic stay because it would allow claims to proceed in debtor's chosen forum).

Importantly, while modifying the stay in such circumstances will, as of necessity, lead to

additional litigation costs for the bankrupt debtor, "such cost in and of itself should not and does not bar modification of the stay." ***Westwood Broadcasting***, 35 B.R. at 49 (citing ***In Re Gerald P. McGraw,*** 18 B.R. 140 (Bkrtcy. W.D.Wis. 1982)); *see also* ***In re Hoffman***, 33 B.R. 937, 941 (Bkrtcy.Okl. 1983) ("the high cost of defending is not, by itself, 'great prejudice' which would bar modification of the stay"); ***In re Bock Laundry Mach. Co.*** 37 B.R. 564, 567 (Bkrtcy.Ohio 1984) ("Courts have not, however, ascribed much significance to the fact that the debtor will be required to participate in their defense").

Because USA has an interest in having a full and final resolution to the Action – including the counterclaims that it has brought therein -- and because USA has previously refused to agree to allow this Court to resolve the claims asserted in the Action, no "great prejudice" will be caused to USA by granting Movants relief from the automatic stay, as requested herein.

      (2)    <u>The hardship to Movants caused by leaving the automatic stay in place greatly outweighs any hardship to USA</u>

As discussed above, no significant hardship or prejudice will be caused to USA if this Court modifies the automatic stay by allowing the Action to proceed. Even assuming, however, that USA will suffer some hardship in those circumstances, that hardship is substantially outweighed by the significantly adverse effect on Movants that will be caused by leaving the stay in place.

Throughout the pendency of the Action, Movants have consistently contended that USA defrauded them by contending that certain loans were in default when, in fact, USA had been using the money from other loans issued to Movants, the PCI entities, American Communities, and the Porters, to make payments to lenders in USA-brokered loans. In this bankruptcy action, USA has admitted that it made payments to lenders on nonperforming loans, and has contended that those payments are owed back to USA through the bankruptcy proceeding. **Exhibit C,** at 3:1-16. In light of the discovery that will be conducted in this bankruptcy case into USA's payments it made on what it characterizes as "non-performing loans," the hardship to Movants that will be caused by having to "sit and wait" substantially outweighs any harm to USA.

Further, Movants contend that Hantges and Milanowski, through USA, specifically defrauded Movants and the PCI entities in some of the ways described in the factual background *supra*. Given

the recent facts that have surfaced about Hantges and Milanowski – both through this litigation and through the Securities and Exchange Commission investigation and prosecution – it appears that Movants are likely to succeed on their claims.

USA was a key participant in the conspiracy pled in the Action. The remaining parties to the Action – Weddell, Spectrum, Hantges, Milanowski, Kropp, Housing Partners, and Amblamo -- will not be able to fully and finally resolve their dispute without the direct participation of USA as a party. Moreover, because of the complexity of the litigation, the bankruptcy stay that is currently imposed upon USA in the Action will amount to a massive waste of judicial and the parties' resources if the parties are required to try the Action twice – once against Hantges, Milanowski, Kropp, Housing Partners, and Amblamo, and once against USA. USA's participation in discovery – either as a party or through third-party subpoena practice by the remaining parties – will be substantial, and compelled third-party discovery against USA will also amount to a waste of USA's resources if it is not a direct participant in the Action.

Particularly where, as here, multiple defendants other than the debtor are involved in a pending lawsuit, relief from the automatic stay will be appropriate. **Hoffman**, 33 B.R. at 941. In **Hoffman,** the court opined that "causing the Plaintiffs to proceed once against [the debtor] in a bankruptcy proceeding and then against [the debtor] and the co-defendants in District Court would result in an even greater prejudice to the Plaintiffs." *Id*. Importantly, that court said that "by modifying the stay, we are not abdicating our duty to determine the dischargeability of the debt. Rather, we are deferring that determination until the District Court determines liability." *Id.*, at 942.

In this case, like **Hoffman**, significant prejudice will be caused to the Movants if the stay remains in place, forcing Movants to conduct two separate proceedings. **Matter of Fernstrom Storage and Van Co.**, 938 F.2d 731, 737 (7th Cir. 1991) ("the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant 'to duplicate all of its efforts in the bankruptcy court"). Accordingly, this factor militates heavily in favor of modifying the stay as well.

(3)     Movants are likely to prevail in the Action

The third and final factor in the test for "cause" is whether the Movants are likely to prevail on the merits of their underlying claims. Importantly, where the other two factors weigh significantly in

favor of granting a relief from the automatic stay, "[e]ven a slight probability of success on the merits may be sufficient to support modifying an automatic stay in an appropriate case. . . [particularly where] the balance of hardships weighs in favor of [the moving party]." *Continental Airlines*, 152 B.R. at 426 (*citing* **In re Fernstrom Storage & Van Co.**, 938 F.2d at 737); *see also* **In re Rexene Prods. Co.**, 141 B.R. 574, 578 (Bankr.D.Del.1992) ("[t]he required showing is very slight").

As discussed above, Movants in the Action have alleged that, as part of USA's fraudulent scheme, USA committed fraud and breached loan agreements by contending that certain loans were in default when, in fact, USA had been using the money it was receiving from other loans to make payments to lenders. Exhibit B, at ¶¶ 94-101. In light of USA's admission in this bankruptcy case that it was regularly making such payments on what it characterizes as "nonperforming loans," it appears likely that Movants will succeed on the merits of their claims. Exhibit B, at 3:1-11. Even though USA and Housing Partners had made these payments, USA and Housing Partners falsely characterized the loans as being in default and initiated foreclosure proceedings. Exhibit B, at ¶¶ 94-101.

Accordingly, based on the standard set forth herein, Movants have shown appropriate "cause" for modifying the automatic stay as to USA, and Movants' motion should be granted.

## IV.

## CONCLUSION

Based on the foregoing, Movants' request for relief from the automatic stay imposed in favor of USA should be granted, and Movants should be permitted to proceed against USA in the case captioned *Rolland P. Weddell, et al. v. USA Commercial Mortgage, et al.*, case number 2:01-CV-0355 KJD(LRL), currently pending in the United States District Court for the District of Nevada.

DATED this 12th day of July, 2006.

/s/ Matthew J. Kreutzer
J. Stephen Peek, Esq.
Elissa F. Cadish, Esq.
Scott D. Fleming, Esq.
Matthew J. Kreutzer, Esq.
Hale Lane Peek Dennison and Howard
3930 Howard Hughes Parkway, Fourth Floor
Las Vegas, Nevada 89169

Attorneys for Rolland P. Weddell
And Spectrum Financial Group

# CERTIFICATE OF MAILING

I certify that on the 12th day of July, 2006, I served a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY** by depositing a copy of the same in a sealed envelope in the United States mail, Reno, Nevada, first-class postage fully prepaid, or by electronic notification and addressed to the persons as follows:  See attached list.

**Electronic notice to:**

- **FRANKLIN C. ADAMS** franklin.adams@bbklaw.com  arthur.johnston@bbklaw.com
- **KELLY J. BRINKMAN** kbrinkman@gooldpatterson.com
- **THOMAS R BROOKSBANK** brooksbankt1@sbcglobal.net kaya1@sbcglobal.net
- **MATTHEW Q. CALLISTER** mqc@callister-reynolds.com maggie@callister-reynolds.com
- **CANDACE C CARLYON** ltreadway@sheacarlyon.com ccarlyon@sheacarlyon.com; bankruptcyfilings@sheacarlyon.com;  rsmith@sheacarlyon.com
- **ROB CHARLES** rcharles@lrlaw.com cjordan@lrlaw.com
- **KEVIN B. CHRISTENSEN** kbchrislaw@aol.com
- **JANET L. CHUBB** jlc@jonesvargas.com tbw@jonesvargas.com
- **JEFFREY A. COGAN** jeffrey@jeffreycogan.com sarah@jeffreycogan.com
- **WILLIAM D COPE** cope_guerra@yahoo.com cope_guerra@yahoo.com
- **CICI CUNNINGHAM** bankruptcy@rocgd.com
- **LAUREL E. DAVIS** bklsclv@lionelsawyer.com ldavis@lionelsawyer.com; gbagley@lionelsawyer.com; ldavisesq@aol.com
- **THOMAS H. FELL** THF@GORDONSILVER.COM BANKRUPTCYNOTICES@GORDONSILVER.COM
- **SCOTT D. FLEMING** sfleming@halelane.com dbergsing@halelane.com, ecfvegas@halelane.com
- **GREGORY E GARMAN** bankruptcynotices@gordonsilver.com
- **WADE B. GOCHNOUR** wgochnour@hwmlvlaw.com donnat@hwmlvlaw.com
- **CARLOS A. GONZALEZ** carlos.gonzalez2@usdoj.gov Darlene.Ruckard@usdoj.gov; Eunice.Jones@usdoj.gov; Sue.Knight@usdoj.gov

::ODMA\PCDOCS\HLLASDOCS\216133\5

- **GERALD M GORDON** bankruptcynotices@gordonsilver.com
- **TALITHA B. GRAY** tbg@gordonsilver.com bankruptcynotices@gordonsilver.com
- **MARJORIE A. GUYMON** bankruptcy@goldguylaw.com ddias@goldguylaw.com
- **EDWARD J. HANIGAN** haniganlaw@earthlink.net haniganlaw1@earthlink.net
- **XANNA R. HARDMAN** xanna.hardman@gmail.com
- **STEPHEN R HARRIS** steve@renolaw.biz noticesbh&p@renolaw.biz
- **CHRISTOPHER D JAIME** cjaime@waltherkey.com kbernhar@waltherkey.com
- **EVAN L. JAMES** ejameslv@earthlink.net kbchrislaw@aol.com
- **ANNETTE W JARVIS**
- **TY E. KEHOE** TyKehoeLaw@aol.com
- **ROBERT R. KINAS** rkinas@swlaw.com mstrand@swlaw.com; jlustig@swlaw.com; lholding@swlaw.com; imccord@swlaw.com
- **NILE LEATHAM** nleatham@klnevada.com ckishi@klnevada.com; bankruptcy@klnevada.com
- **ROBERT C. LEPOME** robert@robertlepome.com susan@robertlepome.com
- **REGINA M. MCCONNELL** rmcconnell@kssattorneys.com
- **WILLIAM L. MCGIMSEY** lawoffices601@lvcoxmail.com
- **RICHARD MCKNIGHT** mcknightlaw@cox.net gkopang@lawlasvegas.com; cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JEANETTE E. MCPHERSON** bkfilings@s-mlaw.com bkfilings@s-mlaw.com
- **JEANETTE E. MCPHERSON** jmcpherson@s-mlaw.com bkfilings@s-mlaw.com
- **SHAWN W MILLER** bankruptcyfilings@sheacarlyon.com smiller@sheacarlyon.com; aboehmer@sheacarlyon.com; ltreadway@sheacarlyon.com; rsmith@sheacarlyon.com
- **DAVID MINCIN** mcknightlaw@cox.net gkopang@lawlasvegas.com; dmincin@lawlasvegas.com,cburke@lawlasvegas.com,sforemaster@lawlasvegas.com
- **JOHN F MURTHA** jmurtha@woodburnandwedge.com
- **ERVEN T. NELSON** erv@rlbolick.com susan@rlbolick.com
- **BOB L. OLSON** ecffilings@beckleylaw.com bolson@beckleylaw.com;

dgriffis@beckleylaw.com

- **DONNA M. OSBORN** jinouye@marquisaurbach.com dosborn@marquisaurbach.com; tszostek@marquisaurbach.com; kgallegos@MarquisAurbach.com
- **DONALD T. POLEDNAK** sandplegal@yahoo.com spbankruptcy@yahoo.com
- **PAUL C RAY** info@johnpeterlee.com
- **SUSAN WILLIAMS SCANN** sscann@deanerlaw.com palexander@deanerlaw.com
- **LENARD E. SCHWARTZER** bkfilings@s-mlaw.com
- **SHLOMO S. SHERMAN** ssherman@sheacarlyon.com aboehmer@sheacarlyon.com; bankruptcyfilings@sheacarlyon.com; ltreadway@sheacarlyon.com; mmallet@sheacarlyon.com; rsmith@sheacarlyon.com
- **JEFFREY G. SLOANE** gjklepel@yahoo.com rmcconnell@kssattorneys.com
- **PETER SUSI** cheryl@msmlaw.com msm@msmlaw.com
- **JEFFREY R. SYLVESTER** jeff@sylvesterpolednak.com David@sylvesterpolednak.com
- **CARYN S. TIJSSELING** cst@beesleymatteoni.com aha@beesleymatteoni.com
- **JOAN C WRIGHT** jwright@allisonmackenzie.com jbrooks@allisonmackenzie.com
- **MATTHEW C. ZIRZOW** bankruptcynotices@gordonsilver.com
- **U.S. TRUSTEE - LV - 11**    USTPRegion17.lv.ecf@usdoj.gov,

**and mailed to:**

NICHOLAS J SANTORO
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

BRADLEY J STEVENS
3300 N CENTRAL AVE
PHOENIX, AZ 85012

GREGORY J WALCH
400 S FOURTH ST 3RD FLOOR
LAS VEGAS, NV 89101

GREG GARMAN
3960 Howard Hughes Parkway
9th Floor
Las Vegas, NV 89109

PAUL A. JACQUES
810 SE 7th Street A-103
Deerfield Beach, FL 33441

SCOTT K. CANEPA
CANEPA, RIEDY & RUBINO
851 S. Rampart Blvd., #160
Las Vegas, NV 89145

        /s/ Cyndy Arnold
Employee of Hale Lane Peek Dennison and Howard

::ODMA\PCDOCS\HLLASDOCS\216133\5