# EXHIBIT "C"

# EXHIBIT "C"

1    Annette W. Jarvis, Utah Bar No. 1649
     RAY QUINNEY & NEBEKER P.C.
2    36 South State Street, Suite 1400                    **E-FILED ON MAY 2, 2006**
     P.O. Box 45385
3    Salt Lake City, Utah 84145-0385
     Telephone: (801) 532-1500
4    Facsimile: (801) 532-7543
     Email: ajarvis@rqn.com
5
6    and

7    Lenard E. Schwartzer
     Nevada Bar No. 0399
8    Jeanette E. McPherson
     Nevada Bar No. 5423
9    Schwartzer & McPherson Law Firm
     2850 South Jones Boulevard, Suite 1
10   Las Vegas, Nevada 89146-5308
     Telephone: (702) 228-7590
11   Facsimile: (702) 892-0122
     E-Mail: bkfilings@s-mlaw.com
12
13   Proposed Attorneys for Debtor and Debtor-in-Possession

14                **UNITED STATES BANKRUPTCY COURT**

15                     **DISTRICT OF NEVADA**

16   In re:                                    | Case Nos. BK-S-06-10725-lbr

17   USA COMMERCIAL MORTGAGE                    | Chapter 11
     COMPANY,
18                                              | **REPLY BRIEF IN SUPPORT OF MOTION**
19                              Debtor.         | **FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345,**
                                                | **AND 363 APPROVING DEBTORS'**
20                                              | **PROPOSED CASH MANAGEMENT**
                                                | **PROCEDURES AND INTERIM USE OF CASH**
21                                              | **IN ACCORDANCE WITH PROPOSED**
                                                | **CASH BUDGET**
22
23                                              |
                                                | Hearing Date: May 3, 2006
24                                              | Hearing Time: 9:30 a.m.

25   ///

26   ///

27   ///

28   ///

                                    1

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated

2   debtors, which are USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital

3   Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively,

4   the "Debtors"), submits this Brief in support of the Debtors' Motion for Order Under 11 U.S.C. §§

5   105(a), 345, and 363 Approving Debtors' Proposed Cash Management Procedures and Interim

6   Use of Cash in Accordance With Proposed Cash Budget (the "Motion") and in reply to the

7   objections to the Motion that have been filed.

8                                    **INTRODUCTION**

9           The Debtors filed this Motion for permission to use cash collected by the Debtors in its

10  "Collection Account," meaning the account in which payments from Borrowers are collected, in

11  accordance with and as limited by the Budget attached to the Motion, as modified in the Revised

12  Budget attached to the Supplemental Declaration of Thomas J. Allison (the "Supplemental Allison

13  Declaration"). For clarification, the money the Debtors collected pre-petition in the Investors

14  Account, meaning money that was collected to fund new loans, is not implicated by this Motion as

15  this Motion does not propose to use any cash held in that account.

16          As explained to the Court at the initial hearing, the 90-day Revised Budget is limited solely

17  to accomplishing two things. First, the Revised Budget includes costs, including professional and

18  attorneys fees, associated with administering the loan portfolio, including monitoring and

19  collecting monthly payments, negotiating and providing documentation necessary to collect these

20  payments, and taking all necessary enforcement actions on non-performing loans. The taking of

21  these actions are mandated by the Loan Servicing Agreements entered into between USACM and

22  each investor, and are necessary to preserve each investor's rights in the loans in question.

23  Further, as set forth more fully below, the expenditures projected in the Revised Budget do not

24  exceed the sum of the  servicing and other contractual fees and costs that the Debtors are allowed

25  to assess against and collect from the investors and the other amounts the Debtors are entitled to

26  collect directly from borrowers and other sources.

27          Second, the Revised Budget includes costs, including professional and attorneys fees,

28  associated with administering the case, including sorting out claims of investors in light of the fact

2

1    that the past practice of the Debtors has been to make interest payments to all investors whether or

2    not money was collected on the underlying loan.  These practices have resulted in some investors

3    being paid more than they were entitled to under their contracts and some investors being paid less

4    than they were entitled to under their contracts.  Because many individual investors invested in

5    more than one loan and invested both in direct loans and through the USA Capital First Trust

6    Deed Fund, LLC and the USA Diversified Trust Deed Fund, LLC (collectively the "Funds"),

7    numerous investors fall into both the categories of having been both overpaid and underpaid with

8    respect to the different loans in which they invested.  Further, in order to keep up the interest

9    payments, USACM, on many occasions, paid its own money to investors -- money that USACM

10   was entitled to collect as servicing and other fees and costs and as to which it needs to now

11   recover from investors that were wrongfully paid.   It is critical that the Debtors make this analysis

12   so that no money is paid post-petition to investors who are not entitled to receive the money and in

13   order to preserve offset rights USACM has against investors both on its own account and for the

14   account of other investors.  The keeping of appropriate account records is required by the Loan

15   Servicing Agreements entered into between USACM and each investor as part of servicing these

16   loans, and such records are necessary to insure proper distribution of funds.

17          As set forth more fully below, the expenditures in the Revised Budget do not require

18   USACM to use any funds collected on behalf of investors beyond the amounts it is entitled to

19   retain by contract and by statute for servicing and related contractual fees and costs that the

20   Debtors are allowed to assess against the investors, thus making this portion of the money

21   collected clearly property of the estate under Section 541 of the Bankruptcy Code that can be used

22   by the Debtors as requested in the Motion.

23                                    **STATEMENT OF FACTS**

24          Every investor, including the Funds and investors investing directly or through the Funds,

25   whether investing directly or through the Funds, signed a Loan Servicing Agreement with

26   USACM.  The Loan Servicing Agreement provides that USACM is authorized and instructed to

27   "keep appropriate accounting records on each note and the sums collected thereon," [LSA ¶ 2(b)],

28   to "[p]roceed diligently to collect all payments due under the terms of the note and promptly pay

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

1   the proper parties, when and if due, principal, interest, late charges, insurance and other specified

2   funds," [LSA ¶ 2(c)(i) (emphasis added)] , and to "[p]rovide the Lender with regular statements

3   regarding loan collections . . . ." [LSA ¶ 2(d)].

4          The Loan Servicing Agreement also requires USACM to "take steps to collect" payments

5   when "the Borrower fails to make any payment to USA." [LSA ¶ 2(c) (ii)] This includes, but is

6   not limited to, authorization to obtain "representation for Lender in litigation and bankruptcy

7   proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect

8   the interests of the Lender, *and of all Lenders in the loan.*" [LSA ¶ 2(c) (ii) (emphasis added)].

9          In paragraph 4, the Loan Servicing Agreement goes on to set forth the obligations and

10  rights of USACM in the event legal proceedings are instituted.  This provision provides that legal

11  proceedings instituted under this agreement "may be pursued in USA's name only or as agent for

12  Lender," thus granting to USACM the sole standing to bring actions to collect on the loans in

13  question.  [LSA ¶ 4]  Further, USA is granted the right to "retain attorneys on Lender's behalf"

14  and the investor (or "Lender"), "[u]pon demand by USA . . . agrees to promptly pay, either in

15  advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred,

16  including attorney's fees, trustee's fees and foreclosure costs.  In the event that Lender fails to pay

17  such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA

18  may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of

19  foreclosure; provided, however that any fees advance by USA shall be paid back from the

20  proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected

21  with respect to such Loan before any payments are made to Lender."   [LSA ¶ 4].

22         In addition to the right given in paragraph 4 to require the investors to pay for the costs of

23  collection, including attorney's fees, by payments directly to USACM or by offset against

24  amounts that would otherwise be payable to investors, the Loan Servicing Agreement provides for

25  an annual servicing fee to be paid to USACM.  In paragraph 5, the Loan Servicing Agreements

26  provide, in addition to loan origination fees (that USACM is entitled to collect directly from

27  borrowers, along with certain other fees such as loan extension fees and exit fees), for an annual

28  servicing fee, payable on a monthly basis, which in some earlier Loan Servicing Agreements was

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  stated as not to exceed 1% per annum of the maximum principal amount of each loan and in later

2  Loan Servicing Agreements was stated as not to exceed 3% per annum of the maximum principal

3  amount of each loan. [LSA, ¶ 5]   While USACM had been collecting some servicing fees in the

4  past, prior to the bankruptcy petition date it was not collecting the full servicing fee to which it

5  was entitled.  It some instances, it was not accruing or collecting any servicing fee, and in other

6  instances it was accruing only 0.5% or 1.0% of the loan balances but not collecting the accrued

7  amounts.  In any event, USACM was not collecting the full amount of the annual loan servicing

8  fees it was entitled to collect under the Loan Servicing Agreements.  A principal reason USACM

9  was not diligent in collecting loan servicing fees prior to the petition date was that in order to

10  make interest payments every month to all investors, USACM paid out what it was entitled to take

11  as a servicing fee to investors when not enough money was collected to make the interest

12  payments.  Consequently, USACM has the right to collect the uncollected servicing fees from past

13  or future monies collected on behalf of those investors that have received overpayments from

14  USACM's own money.  The Debtors' cash management motion proposes to use past due,

15  currently owed, and future servicing fees, which are property of USACM, along with enforcing its

16  right to hire attorneys and obtain payment or reimbursement of the same from the lenders, to fund

17  the operations of these Debtors in accordance with the Revised Budget.

18        Finally, paragraph 5 of the Loan Servicing Agreement also allows USA to keep all late

19  charges and default interest collected from the borrowers.  As noted above, late charges are

20  referenced in paragraph 2(c)(i) with respect to USACM's obligation to make certain that the

21  amounts collected are paid to the "proper parties," which, because of paragraph 5, means

22  USACM.  Paragraph 5 also allows USACM to assist lenders in finding potential buyers for their

23  interests and charge a 5% assignment fee based on the remaining balance of the lender's undivided

24  interest in the note, and to charge and keep all extension fees in the event an extension with a

25  borrower is negotiated. [LSA ¶5]  These funds are also property of USACM and will be used to

26  fund the operations of these Debtors in these bankruptcy cases.

27        In addition to the fees allowed USACM under the Loan Servicing Agreements with

28  investors, USA Capital Realty Advisors, LLC ("USACRA") is entitled to be paid a monthly

5

1    management fee pursuant to the Second Amended and Restated Operating Agreement of USA

2    Capital First Trust Deed Fund, LLC (the "First Trust Deed Agreement") and the Operating

3    Agreement of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Trust Deed

4    Agreement"). This fee amounts to an annual fee of 1% of the funds managed under the

5    Diversified Trust Deed Agreement, and an annual fee of 1.5% of the funds managed under the

6    First Trust Deed Agreement. As Manager, USACRA is required, under paragraph 3.1 of the First

7    Trust Deed Agreement and under paragraph 3.01 of the Diversified Trust Deed Agreement, to

8    "prosecute . . . compromise . . . or adjust any and all claims . . . for . . . the Company," to "employ,

9    at the expense of the Company, such agents, employees, independent contractors, attorneys, and

10    accountants, as the Manager deems reasonable and necessary for any Company purpose, to

11    "enforce loan documents" and to "retain such advisors and professionals . . . and do all other

12    things that are, in the sole business judgment of the Manager, necessary or appropriate to

13    effectuate any of the foregoing." In accordance with this contractual right to collect this fee and in

14    furtherance of its duties as the Manager of these two funds, the Revised Budget includes

15    management fees paid by the Funds to USACRA from cash currently on hand, which is then

16    contributed by USACRA to USACM to reimburse USACM for carrying out the duties of

17    USACRA in enforcing and administering the loans in which the Funds are invested.

18        The Supplemental Declaration of Thomas J. Allison sets forth certain other relevant facts

19    in support of this Motion and is incorporated by reference herein.

20                      **ARGUMENT**

21    **I.**      **FUNDS SUFFICIENT TO COVER THE REVISED BUDGET ARE PROPERTY OF**

22           **USACM'S ESTATE AND MAY PROPERLY BE USED BY USACM IN ACCORDANCE WITH THE MOTION.**

23

24        Property of the estate includes "all legal or equitable interests of the debtor in property" as

25    of the bankruptcy petition date. 11 U.S.C. § 541(a). While USACM in its capacity as loan

26    servicer is holding and collecting certain funds on behalf of the loan investors, the portion of those

27    funds representing the full contractual servicing fees and other fees which USACM is entitled to

28    collect and funds which can be used to pay for attorneys fees and other costs of collection on the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    non-performing loans clearly are property of the estate under Section 541(a) which can be used, in

2    accordance with Revised Budget, to administer the estate, enforce the loans, and create appropriate

3    accounting records for each note and the sums collected on each note, all of which is allowed and

4    required of USACM under the Loan Servicing Agreements.

5        In the case of *In re Mortgage Funding Inc.,* 48 B.R. 152 (Bankr. Ct. D. Nev. 1985), the

6    Court denied motions for relief from the stay brought by investors who funded loans to borrowers

7    serviced by the debtor, a mortgage broker. In that case, the debtor was entitled to "retain" the

8    "difference between the higher return on the assigned note and the lower return on the new note"

9    as a "servicing fee." *Id.* at 153. The Court found that the "debtor has an interest in the assigned

10   notes and deeds of trust" to the extent that "servicing fee" and that "the debtor's limited interest in

11   the assigned notes and deeds of trust passed to the debtor's estate on the date the petition was

12   filed." *Id.* at 155-156. Consequently, the Court held that "the trustee shall retain the difference

13   between the amounts collected on the assigned notes and the amounts paid on the notes issued by

14   the debtor, for the benefit of the estate." *Id.* at 156.

15       In connection with the Motion, the Debtors are asking for permission to use funds

16   collected on behalf of investors only to the extent of the "debtor's limited interest" in the funds

17   collected. This money is property of the estate pursuant to Section 541(a) and is properly used for

18   administrative and collection purposes as proposed in the motion. Moreover, USACM has other

19   sources of funds, including deferred loan origination fees for loans closed pre-petition (USACM

20   has not originated any new loans since the petition date and will not do so without Court approval)

21   and other loan fees, such as loan extension fees and loan exit fees, that USACM is entitled to

22   collect directly from borrowers. One of the Debtors, USA Capital Realty Advisors, is also entitled

23   to charge its contractual management fee to the two Funds it manages, as explained above. The

24   Revised Budget proposes to use approximately $4.2 million in cash over a three-month period.

25   When combined with the Debtors' sources of funds other than those collected on behalf of the

26   loan investors, the monthly loan servicing fee of 1/12 of 1% or 3% of the outstanding loan

27   balances which USACM is entitled to retain from loan payments it collects as loan servicer is

28   adequate to cover the expenditures set forth in the Motion and Revised Budget. As such, the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

7

1   Motion seeks to use only what is clearly property of the Debtor's estate and should be granted.

2   **II.    THE RELIEF REQUESTED IN THE MOTION IS CONSISTENT WITH THE
        NEVADA STATUTE GOVERNING TRUST FUNDS HELD BY MORTGAGE
3       BROKERS.**

4

5        Even if the funds in question are eventually determined to be funds held in trust by

6   USACM as a mortgage broker under Nev. Rev. Stat. § 645B.175, the use of cash as requested in

7   the Motion complies with that statute.  Nev. Rev. Stat. § 645B.175 (5) (a) provides that monies

8   held in trust by a mortgage broker must be released to investors only after "the deduction and

9   payment of any fee or service charge due the mortgage broker."  Thus, as this statute applies

10  under the current circumstances, the statute acknowledges and allows for USACM, as the

11  mortgage broker, to take money out of the collection account to pay its own contractually allowed

12  fees and charges.  Since USACM is not seeking by its Motion to use any monies USACM has

13  collected as loan servicer on behalf of loan investors other than the statutorily allowed amounts,

14  the relief requested in the Motion complies with the statute.[1]

15  **III.    REPLY TO SPECIFIC OBJECTIONS FILED.**

16       Several objections to the Motion have been filed as of May 1, 2006, and others may be

17  filed.  The Loan Investors and/or Fund Members making the objections appear to fall into two

18  main categories: (1) investors claiming a right to funds in the USACM "Investors Account" (funds

19  which the Debtors are *not* seeking to use pursuant to the Motion) due to certain recent assignments

20  made just prior to the Petition Date of certain interests in Serviced Loans; and (2) investors who

21  have an interest in one or more Nonperforming Loans who actually owe money to USACM for

22  monthly overpayments they received from USACM to which they were not entitled.  Each of the

23  _____

24  1 While this will be addressed in more detail in the Debtors' Motion to Temporarily Hold All Funds Pending a
25  Determination of the Proper Recipients, the Debtors would further note that Nev. Rev. Stat. § 645B.175 (5)(b) also
    prohibits a mortgage broker from releasing money held in trust to "any investor who owns a beneficial interest in the
26  loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial
    interest in the loan."  Thus, while objections raised by individual investors to the Motion argue for an immediate
27  distribution of funds held on account of their fractionalized interests in a loan, under this statute, such a distribution
    cannot be made until distributions can be made to every investor in a loan, including to investors owing money to the
28  estate for prior improper distributions and to the Funds as investors.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    specific objections that appears on the Court's docket in the USACM case as of May 1, 2006 is

2    addressed briefly below.  The status of a particular loan as performing or nonperforming, the

3    amount of interest in arrears, and other information about specific loans referred to below, is given

4    in the spreadsheet attached as Exhibit A to the Supplemental Allison Declaration.

5        1.    Alexander Objection.  Pursuant to an objection filed April 25, 2006, the Stanley

6    Alexander Trust, Stanley Alexander, and Florence Alexander (collectively, the "Alexanders")

7    assert that they invested approximately $1.8 million in loans brokered or to be brokered by

8    USACM.  Apparently, $100,000 of those funds was invested in a check that cleared the day before

9    the Petition Date.  To the extent any of the Alexanders' funds invested prior to the Petition Date

10   was in USACM's "Investors Trust" account on the Petition Date, the Alexanders' objection is not

11   a proper objection to the Motion.  As explained above and in the Motion, the Debtors' Motion

12   does not request authority to use any of the funds held in the "Investors Trust" account as of the

13   Petition Date, and USACM will continue to hold such funds pursuant to Nevada state law and

14   other applicable law pending a determination by this Court as to the proper disposition of such

15   funds.  To the extent the Alexanders' objection alleges that USACM has no interest in loan

16   payments collected by USACM on loans in which they may have a small fractional interest, and

17   that the promissory notes should be released to them for collection, the objection lacks merit.  As

18   explained above, USACM has a contractual right as well as a contractual and statutory duty to

19   service the loans on behalf of Alexanders and all other Loan Investors holding fractional interests

20   in those same loans, and the contractual servicing fee and other fees to which USACM is entitled

21   to collect from Alexanders and others under the LSAs is property of USACM's bankruptcy estate.

22   Furthermore, of the loans listed on Exhibit E to the Alexanders' objection, the following are

23   currently Nonperforming Loans: (1) Marquee Hotel Palms; (2) Placer Vineyards; (3) One Point

24   St., LLC (aka "HFA – North Yonkers"); (4) Roam Investment (Development); (5) Rivera Homes;

25   and (6) HFA – Clear Lake.  Thus, to the extent the Alexanders received interest payments to

26   which they were not entitled on their investments in Nonperforming Loans, they owe a debt to

27   USACM for the overpayments.

28        2.    Benincasa Objection.  Focerfida Benincasa and Jasper Benincasa Jr. (the

9

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    "Benincasas") filed an objection on April 27, 2006. Apparently, the Benincasas made their one

2    and only investment through USACM by investing $110,000 with a check deposited to USACM's

3    "Investors Trust" account that cleared one day prior to the Petition Date. As stated above, to the

4    extent the funds were in the "Investors Trust" account on the Petition Date, the Benincasas'

5    objection is not a proper objection to the Motion.[2] To the extent the funds were invested in one of

6    the Serviced Loans as of the Petition Date, USACM is entitled to charge the servicing fee and

7    other fees set forth in the LSA, and such amounts are property of the estate.

8        3.    Objection of Sandler, Gackenbach, Steins, and Rowley. An objection to the

9    Motion was filed April 27, 2006 by the Sandler Revocable Trust ("Sandler"), Gackenbach

10   Revocable Trust and David Gackenbach IRA (collectively, "Gackenbach"), Susan Stein Trust and

11   Susan Gackenbach IRA (collectively, "Susan Stein"), various Jay Stein trusts and IRA

12   (collectively, "Jay Stein"), and the Rowley Living Trust ("Rowley"). In the objection, the

13   objectors admit that USACM is entitled to use funds for the purposes set forth in the Motion to the

14   extent of the servicing fee USACM is entitled to collect. This is all that is sought in the Motion.

15   Further, the objection argues that what "should be Debtors' first and most immediate priority is

16   determining the performing or non-performing status of each loan in the portfolio." Objection at

17   3. This is exactly what USACM is doing, and is part of the budgeted amount and part of the

18   services contemplated under the LSAs for which USACM is entitled to collect its contractual fees.

19   In fact, USACM has determined that the objectors, who each signed a Declaration that is part of

20   the Exhibit A attached to the objection, have each invested in at least one Nonperforming Loan

21   and thus may owe a debt to USACM for interest overpayments. The Nonperforming Loans

22   referred to in the objectors' Declarations include: (1) Shamrock Tower, LP (which is $1.5 million

23

24   _____

25   2 USACM is aware that approximately $1.9 million in new funds from investors was deposited into the "Investors
     Trust" account shortly before the Petition Date, and that such funds were intended to be used to purchase assignments

26   of interests in some of the Serviced Loans that certain Loan Investors desired to sell and assign. Apparently, the
     Petition Date intervened after the assignment documents were executed and the checks were issued to the

27   sellers/assignors but before the checks cleared. USACM understands that the assignees (such as, apparently, the
     Alexanders and the Benincasas) and the assignors (such as the Ronnings, as discussed below) may have competing

28   claims to the funds in the "Investors Trust" account. USACM will not disburse any funds from that account until the
     competing claims are determined by the Court.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  in arrears); (2) Gramercy Court Ltd. ($750,000 in arrears); (3) Palm Harbor One, LLC ($20,000

2  arrearage); (4) Fox Hills 216, LLC ($299,000 arrearage); (4) Fox Hills 185, LLC ($675,000

3  arrearage); (5) Oak Mesa Investors, LLC ($3.6 million arrearage); and (6) Marlton Square

4  Associates, LLC ($975,000 arrearage).

5          4.  <u>Objection of Buckalew Trust and Higgins Trust.</u>  The Buckalew Trust and

6  Higgins Trust filed an objection on April 28, 2006. The objectors falsely alleged that the relief

7  requested in the Motion violates Nevada mortgage broker laws (Nev. Rev. Stat. §§ 645B.165 to

8  .175), and that the Motion seeks in effect "the Court's blessing to continue violating Nevada law

9  post-petition." Objection at 8. To the contrary, the Motion clearly explains that under the

10  Debtors' cash management proposal, payments collected on Serviced Loans will go in to the DIP

11  Collection Account and remain segregated there from any amounts belonging to USACM and

12  from any amounts received for new investments (if any) with USACM, all in full compliance with

13  Nev. Rev. Stat. § 645B.175(4). Under the statute and to the extent approved by this Court

14  pursuant to the Motion, USACM is then entitled to deduct and transfer to its DIP Operating

15  Account (as requested in the Motion) the full amount of "any fee or service charge due to the

16  mortgage broker." <u>Id.</u> § 645B.175(5). The objection acknowledges that USACM is entitled to

17  use "monies . . . for any loan servicing fees" pursuant to the Motion. <u>See</u> Objection at 9. As

18  explained above, the limited amounts set forth in the Revised Budget do not exceed the contractual

19  servicing fees to which USACM is entitled under the LSAs. Moreover, the Buckalew Trust is

20  invested in the One Point Street, LLC loan (aka "HFA-North Yonkers"), which is a

21  Nonperforming Loan having approximately $3.7 million in unpaid interest due as of March 31,

22  2006. Thus, the Buckalew Trust may owe a debt to USACM for the monthly payments of interest

23  to which the Buckalew Trust was not entitled. The objection does not indicate what investment

24  was made by the Higgins Trust and, as Merisow has not yet completed its work in preparing

25  investor-by-investor account reconciliations, USACM cannot at this time readily determine

26  whether the Higgins Trust invested in any Nonperforming Loans.

27          5.  <u>Eight Separate Objections Filed May 1, 2006 by Attorney Robert LePome for</u>

28  <u>Various Investors.</u> On May 1, 2006, attorney Robert LePome filed eight separate objections on

11

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    behalf of various investors, including Richard Williams, Carole Talan, and Hans Prakelt (USACM

2    docket no. 94); Church of the Movement of Spiritual Inner Awareness (docket no. 95); Nancy

3    Golden (docket no. 96); Marilyn Molitch, Matthew Molitch, and Molitch 97 Trust (docket no. 97);

4    Phillips Family Trust, Frances Phillips, and Stephen Phillips (docket no. 98); Spectrum Capital,

5    LLC (docket no. 99); Bosworth Family Trust, Crosbie Ronning, Wild Water Ltd. Partnership, and

6    Grable Ronning (docket no. 100); and Patrick Davis IRA, Susan Davis, and Patrick Davis (docket

7    no. 101). It appears that each of these objections raises similar legal issues, although USACM has

8    not yet had time to review in detail these objections to determine that status of the investments

9    made by these investors. The form of these objections is nearly identical to the Alexanders'

10    objection discussed above, which was also filed by attorney Robert LePome, and it appears that at

11    least some of these objectors have both fractional interests in Serviced Loans as well as claims to

12    funds held in the "Investors Trust" account, as the Alexanders do. However, there is an important

13    distinction between the Alexanders' position (and that of the Benincasas, above) and the position

14    of the Ronnings (and possible others of these May 1, 2006 objections): while the Alexanders have

15    a claim on the "Investors Trust" account based on their status as an assignee/purchaser of a

16    fractionalized loan interest just prior to the Petition Date, the Ronnings apparently have a claim on

17    the same "Investors Trust" account based on their status as an assignor/seller of a fractionalized

18    loan interest just prior to the Petition Date. Although, as noted above in connection with the

19    Alexanders' and the Benincasas' objections, the competing claims to the funds in the "Investors

20    Trust" account are not relevant in considering the relief requested by the Motion, the competing

21    claims of Mr. LePome's clients do highlight a conflict of interest between assignees and assignors

22    of loan interests having competing claims on the "Investors Trust" account. USACM will attempt

23    to determine the status of the loan interests held by the investors objecting in these eight

24    objections and present such information at the hearing on the Motion.

25        Each of Mr. LePome's clients also attempts in the objections to unilaterally terminate the

26    powers of attorney appointing USACM to act with regards to their individal investments. These

27    powers of attorney give USACM specific valuable rights and should be considered as property of

28    the estate. *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications,*

12

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    *Inc.)*, 824 F.2d 725, 729  (9th Cir. 1987) (although the definition of property under Section 541

2    neither explicitly includes or excludes contract rights, the definition does include "all legal or

3    equitable interests of the debtor in the property as of the commencement of the case." )(quoting 11

4    U.S.C. §541(a)(1)); *see also In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.

5    1986) (holding that insurance contracts are also considered to be property of the estate).  Because

6    the powers of attorney should be considered as property of the estate, the objecting parties' efforts

7    to unilaterally terminate them are a violation of the automatic stay.  *See Codex*, 824 F.2d at 731

8    ("Codex violated the automatic stay statue by terminating its contract unilaterally rather than

9    applying for relief from the bankruptcy court."); *see also In re Bobbit*, 174 B.R. 548, 554 (Bankr.

10    N.D. Cal. 1993) ("[U]nilateral termination of a contract by a creditor requires relief from the

11    automatic stay.").  Actions in violation of the stay are void.  Moreover, even if objectors could

12    properly terminate their powers of attorney granted to USACM, the servicing rights they granted

13    to USACM under their Loan Servicing Agreements are similar to (but broader than) those

14    addressed in the power of attorney agreement, and cannot be terminated without 30 days' advance

15    notice.

16        6.    Objection by Attorney Janet Chubb on Behalf of Unidentified Investors.    On May

17    1, 2006, attorney Janet Chubb filed an objection to the Motion on behalf of "numerous direct

18    lenders who are named beneficiaries . . . of certain loans which were originated and serviced" by

19    USACM.  Objection at 1.  In form and substance, the objection is similar to other objections

20    discussed and responded to above.  Furthermore, the objection fails to reveal the names of any of

21    Ms. Chubb's clients on whose behalf the objection is filed.  In addition, it does not appear that Ms.

22    Chubb has filed with the Court the verified statement required by Fed. R. Bankr. P. 2019(a) when

23    an entity or committee (other than an official committee appointed under 11 U.S.C. § 1102 or

24    1114) is representing more than one creditor or equity security holder.  The objection does indicate

25    that the numerous (but unidentified) objectors represented by Ms. Chubb "use David A. Souza's

26    loan in the Oak Mesa project as a representative example of the loan process."  Objection at 2.

27    Although it is not clear whether David A. Souza is in fact one of the numerous objectors

28    represented by Ms. Chubb, USACM has determined that the Serviced Loan in which Mr. Souza

13

1    has a fractional interest, the Oak Mesa / Oak Valley loan (aka "Fiesta Oak Valley"), is a

2    Nonperforming Loan having delinquent unpaid interest of approximately $3.6 million. Thus, to

3    the extent Mr. Souza (or any of the "numerous" but unidentified objectors having an interest in

4    this loan) received monthly interest payments from USACM while the borrower was not making

5    interest payments to USACM, Mr. Souza owes a debt to USACM for the amount of the overpaid

6    interest.

7        7.    Objection of Richard McKnight.  The final objection to the Motion that appeared

8    on the USACM electronic docket on May 1, 2006, is an objection by the Richard and Sheila

9    McKnight Family Trust and the Richard McKnight SEP-IRA (collectively, "McKnight"). In form

10   and substance, the McKnight objection is similar to many of the other objections discussed and

11   responded to above. The Serviced Loans listed on the last page of the objection in which

12   McKnight has an interest includes the following Nonperforming Loans: (1) Roam Development;

13   and (2) Eagle Mountain Development. To the extent McKnight received monthly interest

14   payments from USACM while the borrowers on the Nonperforming Loans were not making

15   interest payments to USACM, McKnight owes a debt to USACM for the amount of the overpaid

16   interest.

**CONCLUSION**

18       The proposed use of USACM's portion of the funds held in the Collection Account allows

19   USACM to fulfill its obligations under the Loan Servicing Agreement, including creating the

20   proper accounting records to make sure that any payments made are made to the "proper" parties

21   and allowing for the enforcement of loans and the preservation of collateral for the benefit of

22   substantially all of the investors. This proposed use is appropriate, given that this involves only

23   the Debtors' property under Section 541(a) of the Bankruptcy Code, is in compliance with Nev.

24   Rev. Stat. § 645B.175, and is consistent with general equitable principles allowing for surcharging

25   similar funds for administrative purposes only. Further, the granting of this Motion is in the best

26   interests of all of the investors and the Debtors' creditors because, absent funding for USACM to

27   take the actions proposed in accordance with the Revised Budget, the individual investors and the

28   investors in the Funds, nearly all of which have only small fractional interests in certain loans, will

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

14

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    not be able to promptly and adequately protect their fractionalized interests, the majority of which

2    appear to be in non-performing loans.  This problem is highlighted by the fact that virtually all of

3    the investors objecting to this Motion have invested in non-performing loans, which need the

4    immediate servicing and collection attention of USACM in order for their rights to be preserved.

5    Further, in the Loan Servicing Agreement, each individual investor recognized and, in essence,

6    agreed to not advance their fractionalized interest in a loan in a way that would harm the other

7    owners of the loan.  All investors agreed that only USACM, not any of them individually, could

8    sue on behalf of all owners of the loan.  All investors agreed that attorneys could be retained

9    where as may be deemed "necessary or appropriate by USA" to fully protect the interests" not

10   only of themselves as a Lender, but "of all Lenders in the loan."  This agreement on the part of the

11   investors is in accordance with the prohibition found in Nev. Rev. Stat. § 645B.175 (5) (b), which

12   requires equal treatment of all investors in a loan with respect to distributions allowed.  Protecting

13   the interests of *"all Lenders"* in each loan is exactly what USACM is proposing to do under the

14   Motion and Revised Budget in accordance with its contracts and *out of its own money*.  USACM

15   should be allowed to do so over the objections of a minority of investors, allegedly holding

16   fractionalized interests of some of these loans, where the claims of these investors to proceeds of

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

P:\USA Commercial Mortgage\Pleadings\Cash Management Motion\RQNDOCS-#872589-v1-
Reply_Brief_in_Support_of_Motion_to_Approve_Cash_Management_and_Use_Cash (2)- final.DOC

1  the loans, net of USACM's contractually entitled fees, is not being affected.  To do otherwise

2  severely prejudices the silent majority of investors whose rights, along with the vocal minority, are

3  being fully protected by USACM in accordance with their contracts and Nevada law.

4          DATED this 2nd day of May, 2006.

5                                              Annette W. Jarvis, Utah Bar No. 1649
                                             RAY QUINNEY & NEBEKER P.C.
6                                             36 South State Street, Suite 1400
                                             P.O. Box 45385
7                                             Salt Lake City, Utah 84145-0385

8
                                             and
9

10                                            /s/ Jeanette E. McPherson
                                             Lenard E. Schwartzer, Esq.
11                                            Jeanette E. McPherson, Esq.
                                             Schwartzer & McPherson Law Firm
12                                            2850 South Jones Boulevard, Suite 1
                                             Las Vegas, Nevada  89146-5308
13

14                                            Proposed Attorneys for Debtor and Debtor-In-
                                             Possession
15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

# EXHIBIT "D"

# EXHIBIT "D"

1  LISOWSKI LAW FIRM, CHTD.
   James F. Lisowski, Sr., Esq.                          '02  NOV 18  A7 :50
2  Nevada Bar No.: 4321
3  1771 E. Flamingo Rd., #115-B
   Las Vegas, NV  89119
4  (702) 737-6111
5  Attorneys for Chapter 7 Trustee, Richard A. Davis

6              UNITED STATES BANKRUPTCY COURT
7                    DISTRICT OF NEVADA

8  In Re:                                )
   PRINCIPLE CENTERED, INC., a           )    CASE NO.: BK-S-01-11719 RCJ
9  Nevada Corporation,                   )    Chapter 7 - Jointly Administered
                        Debtor.          )
10 EIN: 88-0453436                       )

   In Re:                                )
11 AMERICAN DESTINATION, II, LLC, a      )    CASE NO.: BK-S-01-11720 RCJ
12 Nevada Limited Liability Company,     )    Chapter 7 - Jointly Administered
                        Debtor.          )
13 EIN:  88-0453561                      )

   In Re:                                )
14 AMERICAN ENCHANTMENT, II, LLC, a      )    CASE NO.: BK-S-01-11721 RCJ
15 Nevada Limited Liability Company,     )    Chapter 7 - Jointly Administered
                        Debtor.          )
16 EIN:  88-0453439                      )

   In Re:                                )
17 AMERICAN HARMONY, II, LLC, a          )    CASE NO.: BK-S-01-11722 RCJ
18 Nevada Limited Liability Company,     )    Chapter 7 - Jointly Administered
                        Debtor.          )
19 EIN:  88-0453439                      )

   In Re:                                )
20 AMERICAN INSPIRATION, LLC, a          )    CASE NO.: BK-S-01-11723 RCJ
21 Nevada Limited Liability Company,     )    Chapter 7 - Jointly Administered
                        Debtor.          )
22 EIN:  88-0445974                      )

   In Re:                                )    CASE NO.: BK-S-01-11724 RCJ
23 AMERICAN IMAGINATION, LLC, a          )    Chapter 11-Jointly Administered
   Nevada Limited Liability Company,     )
24                      Debtor.          )    Date:  October 21, 2002
25 EIN: 88-0445976                       )    Time:  1:30 p.m.

26 ORDER APPROVING SALE OF CLAIMS TO SPECTRUM FINANCIAL GROUP, LLC

27     THIS MATTER having come on for hearing on this 21st day of October 2002, at the hour

28 of 1:30 p.m., the Trustee, Richard Davis, appearing by and through his attorney, James F. Lisowski,

Sr., Esq.; parties in interest, Rolland Weddell, William Schiltz and Spectrum Financial Group, LLC, ("Spectrum") appearing by and through their attorney, Elissa Cadish, Esq.; parties in interest, USA Commercial Mortgage Company, et al, (as listed on Exhibit A hereto) appearing by and through their attorneys, Anthony A. Zmaila, Esq., Victoria Nelson, Esq., and Ty Kehoe, Esq.; party in interest, Tom Gonzales, appearing by and through his attorney, Thomas Fell, Esq., the Court having examined the pleadings including the Trustee's Motion to Approve Settlement Agreement Between Debtor's Trustee and USA Commercial Mortgage Company, et al, the Objection thereto filed by Weddell and Spectrum and the Opposition filed by R&K Door & Trim, etc., having entertained oral arguments and having conducted an auction in open court; and the Court being well and sufficiently advised as to all matters hereto Orders as follows;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Trustee shall be permitted to sell all of the estate's rights, title and interest in any and all claims that the Debtor's entities, Principle Centered, Inc., American Destination II, LLC, American Enchantment II, LLC, American Harmony II, LLC, American Inspiration, LLC, and American Imagination, LLC, have or may have, against USA Commercial Mortgage Company, et al, to Spectrum, for the sum of two hundred sixty thousand dollars ($260,000.00). Said sum shall be paid in its entirety, in cash, by Spectrum on the tenth day following the entry of this order. All claims are being sold "as is" and "where is" without any warranties or representations as to their value or validity.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Spectrum shall post a one hundred thousand dollar ($100,000.00) bond with the registry of the Court for purposes of indemnifying the Trustee against any potential claims or counter-claims asserted by USA Commercial Mortgage Company, et al, against the Debtors or the Trustee. The bond shall cover any actual amounts that would otherwise have to be paid out by the estate under a normal distribution as a result of the claims or counter-claims together with any Trustee's fees or Trustee's Attorney's

1  fees that may be incurred or ordered paid as a result of their participation in the lawsuits and or

2  claims of the parties against one another, up to $100,000.00. Such bond would include, but not be

3  limited to, any fees incurred as a result of an appeal of this order.

4

5  **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this order shall be

6  stayed for ten (10) days from the entry date of this Order to allow USA Commercial Mortgage

7  Company, et al, to file an appeal of this order if they should so choose and to obtain a stay of this

8  Order from the Appellate Court. This Court will not grant any further stays of this Order.

9

  **IT IS SO ORDERED.**

10
  DATED this /8 day of  Nov            2002.

11

12

13                                HONORABLE ROBERT C. JONES
                                 United States Bankruptcy Judge
14

15  Submitted By:

16  LISOWSKI LAW FIRM, CHTD.                    APPROVED/DISAPPROVED

17

18  By: _____         By: _____
19    JAMES F. LISOWSKI, SR., ESQ.              THOMAS FELL, ESQ.
      Nevada Bar No.: 4321                      Nevada Bar No.: 3717
20    1771 E. Flamingo Rd., Suite 115-B         GORDON & SILVER
      Las Vegas, Nevada 89119                   3960 Howard Hughes 9th Flr
21    (702) 737-6111                            Las Vegas, NV 89109

22  APPROVED/DISAPPROVED                        APPROVED/DISAPPROVED

23

24  By: _____         By: _____
25    ELISSA F. CADISH, ESQ.                    ANTHONY A. ZMAILA, ESQ.
      Nevada Bar No.: 4273                      Nevada Bar No.: 2319
26    Hale, Lane, Peek, Dennison,               Santoro, Driggs, Walch, Kearney,
      Howard & Anderson                         Johnson & Thompson
27    2300 W. Sahara Ave, # 800 Box 8           400 Fourth St., 3rd Floor
      Las Vegas, NV 89102                       Las Vegas, NV 89101

28

1   fees that may be incurred or ordered paid as a result of their participation in the lawsuits and or

2   claims of the parties against one another, up to $100,000.00. Such bond would include, but not be

3   limited to, any fees incurred as a result of an appeal of this order.

4

5        **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this order shall be

6   stayed for ten (10) days from the entry date of this Order to allow USA Commercial Mortgage

7   Company, et al, to file an appeal of this order if they should so choose and to obtain a stay of this

8   Order from the Appellate Court. This Court will not grant any further stays of this Order.

9

10        **IT IS SO ORDERED.**

11   **DATED** this ___ day of _____ 2002.

12

13

14                                 **HONORABLE ROBERT C. JONES**
                              United States Bankruptcy Judge

15   Submitted By:

16   LISOWSKI LAW FIRM, CHTD.                        APPROVED/DISAPPROVED

17

18   By: _____            By: _____
19       JAMES F. LISOWSKI, SR., ESQ.              THOMAS FELL, ESQ.
    Nevada Bar No.: 4321                      Nevada Bar No.: 3717
20       1771 E. Flamingo Rd., Suite 115-B         GORDON & SILVER
    Las Vegas, Nevada 89119                   3960 Howard Hughes 9th Flr
21       (702) 737-6111                            Las Vegas, NV 89109
22       APPROVED/DISAPPROVED                      APPROVED/DISAPPROVED

23

24   By: _____            By: _____
25       ELISSA F. CADISH, ESQ.                    ANTHONY A. ZMAILA, ESQ.
    Nevada Bar No.: 4273                      Nevada Bar No.: 2319
26       Hale, Lane, Peek, Dennison,               Santoro, Driggs, Walch, Kearney,
    Howard & Anderson                        Johnson & Thompson
27       2300 W. Sahara Ave, # 800 Box 8.          400 Fourth St, 3rd Floor
    Las Vegas, NV 89102                      Las Vegas, NV 89101
28

1   fees that may be incurred or ordered paid as a result of their participation in the lawsuits and or

2   claims of the parties against one another, up to $100,000.00. Such bond would include, but not be

3   limited to, any fees incurred as a result of an appeal of this order.

4       **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this order shall be

5   stayed for ten (10) days from the entry date of this Order to allow USA Commercial Mortgage

6

7   Company, et al, to file an appeal of this order if they should so choose and to obtain a stay of this

8   Order from the Appellate Court. This Court will not grant any further stays of this Order.

9       **IT IS SO ORDERED.**

10

11  DATED this ___ day of _____ 2002.

12

13                                         _____
                                           HONORABLE ROBERT C. JONES
14                                         United States Bankruptcy Judge

15  Submitted By:

16  LISOWSKI LAW FIRM, CHTD.                  APPROVED/DISAPPROVED

17

18  By: _____            By: _____
19      JAMES F. LISOWSKI, SR., ESQ.             THOMAS FELL, ESQ.
        Nevada Bar No.: 4321                      Nevada Bar No.: 3717
20      1771 E. Flamingo Rd., Suite 115-B        GORDON & SILVER
        Las Vegas, Nevada 89119                  3960 Howard Hughes 9th Flr
21      (702) 737-6111                           Las Vegas, NV 89109

22      APPROVED/DISAPPROVED                     APPROVED/DISAPPROVED

23

24  By: _____            By: _____
        ELISSA F. CADISH, ESQ.                   ANTHONY A. ZMAILA, ESQ.
25      Nevada Bar No.: 4273                      Nevada Bar No.: 2319
        Hale, Lane, Peek, Dennison,              Santoro, Driggs, Walch, Kearney,
26      Howard & Anderson                        Johnson & Thompson
        2300 W. Sahara Ave. # 800 Box 8          400 Fourth St., 3rd Floor
27      Las Vegas, NV 89102                      Las Vegas, NV 89101

28