Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

E-FILED ON JULY 24, 2006

and

Lenard E. Schwartzer
Nevada Bar No. 0399J
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC<br>                                                Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                Debtor. | **DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF APPLICATION BY DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORIZATION TO FORBEAR ON FOUR HFA LOANS (AFFESTS USA COMMERCIAL MORTGAGE, USA CAPITAL DIVERSIFIED TRUST DEED FUND AND USA CAPITAL FIRST TRUST DEED FUND)** |
| In re:<br>USA SECURITIES, LLC,<br>                                                Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA First Trust Deed Fund, LLC | Date: July 25, 2006<br>Time: 9:30 a.m. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

C:\Documents and Settings\mkels\Project Park\Pleading Redlines\Supp Declaration of Allison 072306 (mlk comments).DOC

THOMAS J. ALLISON states and declares as follows:

1. I am the Chief Restructuring Officer of USA Commercial Mortgage Company ("USACMC") and its affiliates USA Capital First Trust Deed Fund ("FTD Fund") and USA Capital Diversified Trust Deed Fund "("DTD Fund") and state the following based on personal knowledge.

2. Since becoming the Chief Restructuring Officer of USACMC and its affiliates, I have attempted to maximize the recovery of all loans held either the benefit of USACMC, FTD Fund, DTD Fund or Direct Lenders. In making these efforts, I have applied the business knowledge and acumen acquired from years of working in restructuring and in managing problem loan portfolios.

3. Among the loans in the USACMC loan portfolio were a series of loans to Homes for America Holdings, Inc. ("HFAH") and its affiliates.

4. I have had extensive negotiations with HFAH which have resulted in the full payoff of three loans. Specifically, HFA Riviera repaid in full a loan owed to 90 non-Debtor Direct Lenders by paying the principal sum of $5,000,000, plus interest in the amount of $767,361. HFA North Yonkers (One Point Street, Inc.) repaid in full a loan owed to Debtor First Trust Deed Fund as a Direct Lender and 297 other non-Debtor Direct Lenders by paying the principal sum of $24,000,000, plus interest in the amount of $4,168,403. HFA Riviera 2nd also repaid in full a loan owed to 99 non-Debtor Direct Lenders by paying the principal sum of $8,000,000, plus interest in the amount of $2,698,080.

5. There are four more loans which HFA is not ready to pay off. These loans are:

| | Borrower | Principal | Interest* | Beneficiary |
|---|---|---|---|---|
| a. | HFA Monaco | $4,000,000 | $1,279,500 | First TDF |
| b. | HFA Clear Lake | $16,050,000 | $2,642,136 | 207 Direct Lenders |
| c. | HFA Clear Lake 2nd | $2,750,000 | $386,233 | 36 Direct Lenders |
| d. | HFA Windham | $5,550,000 | $951,580 | 74 Direct Lenders |

Taken from Loan Summary filed on May 31, 2006.

All these loans are non-performing.

6. As mentioned above in paragraph 4, in May of 2006, three HFAH loans were paid in full by HFAH or its affiliates, prior to the stated maturity of these loans, and the loan repayment proceeds were delivered to USACM as Servicer. HFAH and its affiliates still are indebted on four secured loans serviced by USACM (the "Four HFA Loans").

7. In connection with the arrangements for HFA or its affiliates to make the early payments in full on three loans, USACM as Servicer agreed pursuant to authorities given to the Servicer under Section 2(e) of the Loan Servicing Agreements to "enter into forbearance and other settlement-related agreements"; and, dependent upon approval of the Court (if such action were deemed to not be an ordinary course of business transaction), to forbear from declaring a default and to forbear from exercising remedies on the HFA Monaco Loan, the HFAH Clear Lake, the HFAH Clear Lake 2nd Loan and the HFAH Windham/Asylum Loan (the "Four HFA Loans"), until January 1, 2007, even though the Four HFA Loans are Nonperforming Loans. No claims are being released or waived against the Borrowers or any Guarantors of the Four HFA Loans.

8. HFA and its affiliates requested this forbearance for the Four HFA Loans to facilitate the refinancing of the Four HFA Loans or the sale of the collateral for the Four HFA Loans to allow them to be repaid, which HFA hopes to have accomplished by the end of 2006.

9. HFA or its affiliates related to the Four HFA Loans have been engaged in negotiations with several new lenders in connection with the refinancing of the Four HFA Loans. Each new lender is unwilling to pursue a refinancing given the potential that existing lenders may declare a default and proceed with an exercise of remedies, including potential foreclosure.

10. This forbearance will facilitate the refinancing of the Four HFA Loans by permitting HFA or its affiliate to represent to the new lender that HFA or its affiliates is not in material breach under any of the Four HFA Loans.

11. Based upon my experience in restructuring and managing problem loan portfolios I believe that granting the forbearance agreements is in the best interest of USACMC and its affiliates because it will create conditions that make it easier for HFAH to refinance the Four HFA

Loans in the near future. To take any negative action against HFAH (such sending notices of default or beginning foreclosure) at this time is likely to delay payoff of the Four HFA Loans.

12. Contrary to the inference made in the Supplemental Response of the Official Committee of Equity Security Holders of FTD Fund, my staff and the Debtors' counsel have spent an extensive amount of time answering the questions and requests for documentation of counsel and advisors for that Committee, including the facilitation of a call on July 20, 2006 between HFA and Greg Gotthardt with Alvarez and Marsal, financial advisors to the Official Committee of Equity Security Holders of FTD Fund. It is difficult to understand why the Committee, its counsel and its advisors cannot understand why it is beneficial for a lender to attempt to create conditions under which the borrower is more likely to pay off a loan than go directly to foreclosure or litigation. My purpose is to maximize recovery of principal and interest for all the lenders involved in these loans while avoiding the cost, delay and uncertainty of foreclosure.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief.

DATED: July 24, 2006.

THOMAS J. ALLISON

C:\Documents and Settings\mkehl\Project Park\Pleading Redlines\Supp Declaration of Allison 072306 (mlk comments).DOC