ELECTRONICALLY FILED
July 27, 2006

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
CHRISTINE M. PAJAK
(CA State Bar No. 217173)
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone:  (310) 228-5600
Facsimile:   (310) 228-5788
Email:   fmerola@stutman.com
            ekarasik@stutman.com
            cpajak@stutman.com

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
233 South Fourth Street, Second Floor
Las Vegas, Nevada 89101
Telephone:  (702) 471-7432
Facsimile:   (702) 471-7435
Email:   jshea@sheacarlyon.com
            ccarlyon@sheacarlyon.com
            ssherman@sheacarlyon.com

Counsel for the Official Committee Of Equity Security
Holders Of USA Capital First Trust Deed Fund, LLC

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br>☐ All Debtors<br>☒ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed<br>☒ USA First Trust Deed Fund, LLC | Date: August 4, 2006<br>Time: 9:30 a.m. |

**RESPONSE OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC TO DEBTORS' MOTION TO DISTRIBUTE FUNDS AND TO GRANT ORDINARY-COURSE RELEASES AND DISTRIBUTE PROCEEDS (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY, USA CAPITAL FIRST TRUST DEED FUND, LLC AND USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC)**

398964v2

The Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") appointed in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), by and through its undersigned counsel, files this response (the "Response") to the "Debtors' Motion To Distribute Funds And To Grant Ordinary-Course Releases And Distribute Proceeds" (the "Motion to Distribute")[1] and the "Supplement to Debtors' Motion to Distribute Funds" (the "Supplement"), filed by USA Commercial Mortgage Company ("USACM"), USA Capital First Trust Deed Fund, LLC (the "FTDF") and USA Capital Diversified Trust Deed Fund, LLC ("Diversified" and, together with FTDF, the "Funds"), certain of the above-captioned debtors and debtors and possession (the "Debtors").

This Response is based on the Memorandum of Points and Authorities attached hereto; the pleadings, papers, and records on file in this action; and any argument to be entertained at the time of the hearing on the Motion to Distribute.

_/s/ Frank A. Merola_

FRANK A. MEROLA (CA State Bar No. 136934),
EVE H. KARASIK (CA State Bar No. 155356), and
CHRISTINE M. PAJAK (CA State Bar No. 217173),
Members of
STUTMAN, TREISTER & GLATT, P.C.

and

CANDACE C. CARLYON
SHEA & CARLYON, LTD.

COUNSEL FOR THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS OF
USA CAPITAL FIRST TRUST DEED FUND, LLC

---

[1] Terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion to Distribute.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**BACKGROUND**

1. On July 7, 2006, the Debtors filed the Motion to Distribute seeking two different types of relief: (i) Court authority to make distributions to investors, including distributions to Fund Members and (ii) Court authority for the Debtors to grant ordinary-course releases and distribute related proceeds.

**A.  Distributions to Investors.**

2. As the Debtors have explained in numerous pleadings filed with the Court, USACM, prior to the Petition Date, made regular monthly payments to investors regardless of whether the underlying loan was performing. As a result, it appears that some investors may have been overpaid.

3. Pursuant to the Motion to Distribute, the Debtors seek Court authority to recover pre-petition overpayments against payments currently due to investors on an investor-by-investor basis, as opposed to a loan-by-loan basis.[2] Specifically, payments would be offset based on an investor's "vesting name", not by a customer's identification number.[3]

4. As the Funds, themselves, are direct lenders, their estates would receive distributions to the extent that monies are available after USACM has made the applicable offsets. In addition, the Debtors also request Court authority to make monthly distributions to Fund Members to the extent that monies are available in the respective Fund.

5. While the Motion to Distribute indicates that the Debtors would make an initial distribution followed by subsequent monthly distributions, the FTDF Committee now

---

[2] For example, suppose Investor A invested in 2 different loans – Loan #1 and Loan #2. Before the Petition Date, Investor A was overpaid $50 with respect to Loan #1 and did not receive any overpayments with respect to Loan #2. After the Petition Date, the Debtors still did not collect anything with respect to Loan #1 but collected $200 on Loan #2. Under the Motion to Distribute, the Debtors are seeking Court authority to pay Investor A $150.

[3] Investors use an investment vehicle – i.e., a "vesting name" – to make investments through USACM. Some investors have multiple vesting names, such as "John Doe" and "John Doe IRA", that are all tied to the same contact name, which the Debtors have tracked by using a customer identification number.

398964v2                                    3

understands that the Debtors anticipate modifying their request for relief. The Debtors have indicated that, after the initial distribution, no subsequent distribution would be made to investors until a continued hearing is held on subsequent distributions, which would be scheduled for the August 31, 2006 omnibus hearing date.

6.  Pursuant to the Supplement, USACM anticipates that the aggregate amount of the initial distribution is approximately $64.7 million, which includes a distribution to FTDF of approximately $1.8 million. According to the Supplement, after making adjustments for applicable offsets, no monies would be distributed to Diversified.

### B.  Request to Grant "Ordinary Course" Releases.

7.  The Motion to Distribute also seeks authority to grant partial and full releases to borrowers and to disburse funds that the Debtors receive in the Collection Account from loan payment proceeds in connection with the partial release or full release on loans.

8.  The Debtors set forth a mechanism, by which they would be authorized to unilaterally grant partial releases to borrowers, which is identical to the procedures set forth in the Partial Release Order previously entered by this Court, and distribute related proceeds to investors. The Partial Release Order authorized the Debtors to grant releases on nine specific loans and, now, the Debtors seek authority to apply these procedures to other loans, as needed, on a going forward basis.

## II.

## ARGUMENT

### A.  The FTDF Committee Supports Distributions to Investors, Subject To Adequate Amounts Being Held Back to Pay for Necessary Expenses.

9.  The FTDF Committee strongly supports the Debtors' request to distribute funds to investors. Investors have not received distributions on their investments for several months, causing great hardship to many. As the Debtors' budget indicates that the Collection Account now holds over $90 million, nothing justifies withholding distributions to investors at this time.

10. Distributions to investors, however, should not be made in a vacuum. They should be carefully crafted to take into consideration the many concerns and expenses of these bankruptcy cases.

**1. FTDF Committee Supports The Debtors' Request to Offset Pre-Petition Overpayments Against Payments Currently Due To Investors On An Investor-By-Investor Basis.**

11. As this Court is aware, it appears that many investors were overpaid prior to the Petition Date. It makes little sense for USACM to make distributions to investors who owe an obligation back to the Debtors' estates. Allowing distributions to go forward without making offsets on an investor-by-investor basis would likely result in a myriad of lawsuits. Despite receiving a larger distribution, individual investors would now face the additional expense of hiring counsel to defend their interests in numerous lawsuits. Moreover, this litigation would likely involve the pursuit of pre-judgment attachments against investors to ensure that sufficient funds are available to satisfy any resulting judgment. Thus, the practical effect of not allowing offsets for overpayments could have a very real and detrimental economic impact on investors and may result in little, if any, funds being retained by investors.

12. Offsetting on an investor-by-investor basis ensures that USACM will be able to recover a larger amount of overpayments, as opposed to offsetting on a "loan-by-loan" basis, and would minimize investors' risk of being sued.

13. The FTDF Committee also supports offsetting by an investor's vesting name as opposed to an investor's client identification number. An investor makes investments through its vesting name – i.e., "John Doe" or "John Doe IRA". The Debtors, however, group investors by their contact information under a client identification number. In other words, if different vesting names all have the same contact information, such names would be grouped under one client identification number. While offsets might be legally appropriate across some vesting names, this may not be the case across other vesting names.

14. The FTDF Committee understands that offsetting overpayments based on a customer identification number, not vesting name, would result in the Debtors retaining a maximum amount of $3 million. Given this relatively small figure and taking into consideration

that there are likely legally separate entities among the vesting names that could not be included in the offsets (thereby reducing the $3 million figure) as well as the time and expense of determining whether offsets can be legally made across different vesting names, the FTDF Committee supports the Debtors' method of offsetting by vesting name, on an investor-by-investor basis.

### 2. The Debtors Should Make Appropriate Holdbacks Before Distributing Funds to Investors.

15. As currently contemplated, distributions will be made without regard as to how USACM will pay for the fees and expenses it has incurred in maximizing the value of loans that it services on behalf of the Direct Lenders. Under the standard loan servicing agreement, USACM is entitled to seek from each Direct Lender its pro rata share of "attorney's fees, trustee's fees and the foreclosure costs" and may holdback payments on investors' loans until such payments have been made. See Loan Servicing Agreement, § 4. In other words, Direct Lenders are contractually obligated to pay for all appraisals and collection costs, including attorney fees. In addition, USACM should also hold back the appropriate amount to cover the costs of its administration of these bankruptcy cases, including fees and costs incurred by counsel for the Direct Lender Committee

16. While, at this time, no determination is being made as to whether these expenses will ultimately be shared by the Direct Lenders on a pro rata basis, it is appropriate, in connection with an interim distribution, to withhold these amounts to ensure that such a "fair share" allocation is not precluded, as a practical matter, by making distributions to investors.

### 3. The FTDF Committee Supports Distributions to Fund Investors.

17. The FTDF Committee joins the Debtors' request to make distributions to Fund Members. As explained in the Motion to Distribute, this Court has the authority to order distributions to Fund Members prior to plan confirmation. See Motion to Distribute, p. 12-14.

18. As this Court is aware, this is not a typical bankruptcy case. Thousands of individuals have been adversely affected. As the Debtors stressed in their Motion to Distribute:

> it would be inequitable for the Debtors to make distributions to some, not all, investors. As the Debtors have repeatedly emphasized, it is their goal to pay investors – all investors, not just the Direct Lenders. If only Direct Lenders receive distributions from the Collection Account but money is not also released from the Funds to the Fund Members, the approximately 3,200 Fund Members will be adversely affected. The Fund Members, like their Direct Lender counterparts, rely and depend on their monthly distribution they expect to receive from the Funds. It is now over four months since Fund Members have received a distribution, and many are now suffering the consequences of losing their only source of income. To the extent the Funds will hold excess cash, there is simply no reason why these monies should not be made available to the Fund Members.

Motion to Distribute, p. 13 (lines 15-24).

19.     In fact, the Debtors anticipate making an approximate $1.8 million distribution to FTDF. With a holdback of $800,000 (i) to cover the fees and expenses of the FTDF Committee professionals through the end of June 30, 2006 and (ii) to establish a reserve for the current amount of outstanding pre-petition claims[4], the FTDF Committee expects that about $1 million will be available for distributions to FTDF Members.

### 4.  The FTDF Committee Supports Continuing Monthly Distributions.

20.     The FTDF Committee also supports the Debtors' request to make ongoing monthly distributions to investors, subject to the Debtors withholding the appropriate amounts as described above. The Debtors have completed their forensic accounting and now have accurate records. Nothing should prevent ongoing distributions to investors. Moreover, it is critical that investors, who have come to rely on monthly distributions, receive those distributions in a timely manner, subject to the appropriate holdbacks.

---

[4] According to FTDF's schedule of assets and liabilities, FTDF has $226,000 in unsecured claims (which the FTDF Committee reserves its right to contest). In addition, approximately 27 claims have been filed against FDTF. The FTDF Committee will shortly be filing an objection to the vast majority of these claims and scheduling a hearing on such objection for August 31, 2006, which, if sustained, would result in only $25,000 in additional unsecured (non-scheduled) claims being asserted against the FTDF estate.

21. The FTDF Committee, however, has no objection to the Debtors' proposal to bifurcate the relief requested in the Motion to Distribute so as to go forward on the initial distribution portion on August 4, 2006 and continuing the hearing on subsequent, monthly distributions until August 31, 2006. In fact, continuing the hearing on ongoing distributions should not affect future distributions as the hearing would be held prior to the Debtors making its next monthly distribution (should the Court approve ongoing distributions).

22. In sum, the FTDF Committee supports the relief requested in the Debtors' Motion to Distribute but urges the Court to require the Debtors to hold back sufficient funds to be distributed to cover the costs that USACM has incurred for (i) appraisals and (ii) collection costs as well as a fair share of the costs incurred in administering these bankruptcy cases.

**B. The FTDF Committee Supports the Debtors' Request to Grant "Ordinary Course" Releases and Distribute Proceeds, Subject to the Debtors Applying Holdbacks to Any Such Distributions.**

23. As noted above, the Debtors seek authority to grant ordinary-course releases and distribute related proceeds. With respect to granting "ordinary-course" releases, the Debtors' proposed mechanism is identical to the relief granted in the Partial Releases Order. As the FTDF Committee supported the Partial Releases Order, the FTDF Committee does not oppose the Debtors' request to grant ordinary-course partial and full releases as set forth in the Motion to Distribute.

24. With respect to the Debtors' request to distribute proceeds that they receive in connection with granting such releases to borrowers, the FTDF Committee believes that any such distributions should also be subject to the holdbacks as described above.

For the reasons stated above, the FTDF Committee supports (i) the Debtors making distributions to investors, including the Fund Members, as set forth in the Motion to Distribute but urges the Court to require the Debtors to hold back sufficient funds to be distributed to cover the costs that USACM has incurred for (a) appraisals and (b) collection costs as well as the fair share of the costs incurred in administering these bankruptcy cases; and (ii) the Debtors' proposed mechanism to grant ordinary-course releases and distribute related proceeds, provided that any such distributions of proceeds are also subject to holdbacks as set forth herein.

Respectfully submitted this 27th day of July, 2006.

FRANK A. MEROLA (CA State Bar No. 136934),
EVE H. KARASIK (CA State Bar No. 155356), and
CHRISTINE M. PAJAK (CA State Bar No. 217173),
Members of
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067
Telephone:  (310) 228-5600

and

CANDACE C. CARLYON
SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, NV  89101
Telephone:  (702) 471-7432
COUNSEL FOR THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS OF
USA CAPITAL FIRST TRUST DEED FUND, LLC