Erven T. Nelson, Esq.
Nevada Bar #2332
Bolick & Boyer
6060 W. Elton Avenue, Suite A
Las Vegas, NV  89107
Tel:  (702) 870-6060
Fax: (702) 870-6090
Email:  erv@rlbolick.com

*Elecontronically filed*
*July 27, 2006*

Attorneys for Leo G. Mantas and Others

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **In re:**<br>**USA COMMERCIAL MORTGAGE COMPANY,**<br>                                        **Debtor.** | **Case No. BK-S-06-10725 LBR**<br>**Case No. BK-S-06 10726 LBR**<br>**Case No. BK-S-06 10727 LBR** |
| **In re:**<br>**USA CAPITAL REALTY ADVISORS, LLC,**<br>                                        **Debtor.** | **Case No. BK-S-06-10728 LBR**<br>**Case No. BK-S-06-10729 LBR** |
| **In re:**<br>**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,**<br>                                        **Debtor.** | **Chapter 11**<br><br>**Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| **In re:**<br>**USA CAPITAL FIRST TRUST DEED FUND, LLC,**<br>                                        **Debtor.** | **Hearing Date:  August 4, 2006**<br>**Hearing Time:  9:30 a.m.** |
| **In re:**<br>**USA SECURITIES, LLC,**<br>                                        **Debtor.** | |
| **Affects:**<br>___    **All Debtors**<br> _x_  **USA Commercial Mortgage Company**<br>___    **USA Securities, LLC**<br>___    **USA Capital Realty Advisors, LLC**<br> _x_  **USA Capital Diversified Trust Deed Fund, LLC**<br> _x_  **USA First Trust Deed Fund, LLC** | **MANTAS GROUP'S JOINDER IN STANLEY ALEXANDER AND OTHER INTERESTED PARTIES' PARTIAL OPPOSITION TO DEBTOR'S MOTION TO DISTRIBUTE FUNDS AND TO GRANT ORDINARY COURSE RELEASES AND DISTRIBUTE PROCEEDS.** |

Come now the Mantas Group in Joinder with the Partial Opposition to Debtor's Motion to Distribute Funds and to Grant Ordinary Course Releases and Distribute Proceeds filed by Stanley Alexander and

1

others by and through their attorney, Robert C. LePome, Esq., and hereby partially oppose the Debtor's Motion to Distribute Funds and to Grant Ordinary Course Releases and Distribute Proceeds. This Joinder is based upon the Points and Authorities attached hereto.

BOLICK & BOYER

By: /s/ Erven T. Nelson
ERVEN T. NELSON
6060 W. Elton Ave., Suite A
Las Vegas, Nevada  89107
Nevada Bar # 2332
Attorney for Mantas Group

**POINTS AND AUTHORITIES**

**The Law**

I. **Trust Law**.

In support of it's Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds filed July 7, 2006, the Debtor cites § 254 of the Restatement of Trusts. The section provides as follows:

> If the trustee has made a payment out of trust property to one of several beneficiaries <u>to which the beneficiary was not entitled</u>, such beneficiary is personally liable for the amount of such overpayment, and his beneficial interest is subject to a charge for the repayment thereof, <u>unless he has so changed his position that it is inequitable to compel him to make repayment</u>. (Emphasis supplied).

The Debtor relies on the above provision as support for its argument that funds rightfully due to lenders but which have yet to be paid should be offset by past advances allegedly made in respect of non-performing loans. But, the Lenders (i) did not receive funds they were not entitled to receive, and (ii) have changed their positions by using the funds for living expenses. Assuming without conceding that the Loan Services Agreements

("Agreements") entered into between USA Commercial Mortgage Company ("USA") and various direct lenders served to create a trust relationship such that trust principles are applicable to the present case, it is respectfully submitted that Debtors have misinterpreted the legal significance of the above provision.

Section 254 of the Restatement of Trusts applies to payments of trust property made to "one of several beneficiaries". In the present case, if USA does hold funds paid by borrowers as a trustee for a lender, it does so as trustee of over 100 parallel trusts arising from over 100 separate loans. If, for example, one lender in a specific loan had received more than it was entitled to receive vis-à-vis the other lenders in that specific loan, then § 254 would require the overpaid lender to disgorge funds unless it had changed its position so as to make repayment inequitable. There is nothing explicit in the Agreement, or implicit in the financial arrangements between USA, the lenders and the borrowers pursuant thereto, however, that could support a finding that each individual lender is one of a larger group of beneficiaries consisting of all the lenders in over 100 loans with whom USA had contracted; merely sharing a common trustee does not create such a result. Thus, § 254 of the Restatement of Trusts is inapplicable to the present situation.

Furthermore, the policy reasons that support the principle annunciated in § 254 as it applies to "one of several beneficiaries" do not apply to the present case. In this regard, it is important to note that a trustee has a duty to administer a trust solely for the benefit of the beneficiaries of that specific Trust. Section 170 of The Restatement of Trusts provides as follows:

> (1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

To allow a trustee to require a particular beneficiary ("Beneficiary A") who is one of a group of beneficiaries in a specific Trust to account for any payments received to which it was not entitled is consistent with the fiduciary duties owned by that trustee to each of the beneficiaries of the trust. However, to allow a trustee to recoup monies it paid out to a Beneficiary A so that it can pay beneficiaries from a separate trust which also happens to

3

be administered by the same trustee, at the expense of Beneficiary A, would be a breach of the trustee's duty to act in the best interest of Beneficiary A.  This is particularly so in the present case where any "overpayments" made to Beneficiary A were made in breach of USA's own contractual obligations pursuant to paragraph 2(c)(i) of the Agreement and fiduciary duties under trust and agency law.  The paragraph states as follows, in part:

> (2)  **Services of USA in Connection with Servicing the Loans.**  Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:
> …
> (c) Until the total amount due under each note is paid in full:
> 
> (i)    Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, *when and if due*, principal, interest, late charges, insurance and other specified funds.    (emphasis added)

The suggested offsetting of payments which are now rightfully due to a lender from a particular borrower, with payments made by USA which that lender received in good faith, has no basis in trust law and would, in effect, force individual lenders to pay for USA's failure to live up to its own contractual obligations.

II.  **Agency Law.**

The recoupment proposed by the debtor likewise finds no legal justification in agency law.  The scope of USA's authority as agent of the lenders was specifically outlined in paragraphs 1 and 2 of the Agreement.  The proposed offsetting of payments rightfully due to a lender with payments that the lender received in good faith in the past would be outside of the authority granted to USA as set out in the Agreement.  On this point, the Restatement (Second) Agency, § 33 (1958) states as follows:

> An agent is authorized to do, and to do only, what is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts.

Thus, established principles of agency law preclude USA from taking any action beyond that which the lenders desire.  Furthermore, when an agreement specifies particular powers of an agent, as in the

4

present case, courts are loathe to expand such powers beyond those enumerated. This general rule has been stated in a number of ways. In *2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment §§ 81, pp. 82-83*, the law is stated as follows:

> Appropriate guidelines for the scope of the respondents' fiduciary duty can be drawn from the law governing powers of attorney and from the law of insurance. The scope of a power of attorney depends on the language of the instrument, which is strictly construed.

Likewise in *Schmitz v. Firstar Bank Milwaukee*, 260 Wis.2d 24 36 (2003), the Court noted:

> [T]he general rule of interpretation is that powers of attorney are to be strictly construed and interpreted to grant only those powers that are clearly delineated or specified.

Nothing in the Loan Servicing Agreement specifically authorizes USA to proceed with the proposed offsetting of funds or recoupment. Based on the above, a strict reading of the powers specified in paragraphs 1 and 2 precludes extending USA's powers as agent so as to allow the proposed offsetting.

III. **Conclusion.**

No offsetting should be allowed as to these objecting parties.

Dated: July 27, 2006

                                                __/s/ Erven T. Nelson__
ERVEN T. NELSON
Nevada Bar #2332
**Bolick & Boyer**
6060 W. Elton, Suite A
Las Vegas, NV 89107
Attorneys for Leo G. Mantas and Others

###

5