GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
BRIGID M. HIGGINS, ESQ.
Nevada Bar No. 5990
E-mail: bmh@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mcz@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-Filed On 7-28-06

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                       Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>                       Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>                       Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                       Debtor. | **OFFICIAL COMMITTEE OF DIRECT LENDERS' LIMITED OPPOSITION TO MOTION TO DISTRIBUTE FUNDS AND TO GRANT ORDINARY-COURSE RELEASES AND DISTRIBUTE PROCEEDS** |
| In re:<br>USA SECURITIES, LLC,<br><br>                       Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date: August 4, 2006<br>Time: 1:30 p.m. |

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Official Committee of Direct Lenders"), by and through its counsel, the law firm of Gordon & Silver, Ltd., hereby submits its Limited Opposition (the "Opposition") to Debtors' Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds (the "Motion to Distribute"), see Docket No. 847, and the Supplement filed thereto, see Docket No. 880. This Opposition is made and based upon the points and authorities which follow, the pleadings and papers contained in the Court's file, judicial notice of which is requested, and any evidence or oral argument presented at the time of the hearing on this matter.[1]

# I.
# LEGAL ARGUMENT

**A.    Introduction.**

The Official Committee of Direct Lenders fundamentally disagrees with Debtors' right to assert "holdbacks" and the legal analysis upon which their flawed conclusions are based. The monies Debtors seek to hold do not constitute property of the estate and Debtors have misapplied the concept of recoupment. Nevertheless, the Official Committee of Direct Lenders supports interim distributions on a monthly basis so long as certain safeguards are implemented. Specifically, the Official Committee of Direct Lenders seeks, and the Debtors have agreed, that the relief requested by the Motion to Distribute constitutes interim relief and the Court is not being asked to make findings or conclusions that such funds constitute property of the estate or that recoupment is a remedy available to Debtors. Additionally, the Debtors have agreed that any holdbacks shall be placed in Debtors' DIP Collection Account and will not be used to fund operational expenses without further order of this Court.

. . .

. . .

. . .

---

[1] Pursuant to a stipulation between the Official Committee of Direct Lenders and Debtors, certain matters at issue in the Debtors' Motion to Distribute have been resolved, and the Debtors have allowed the Committee to file this Limited Opposition at this time, which is one day after the original deadline for all oppositions.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

2

B.  **The Monies Being Held By USACM Received From Direct Borrowers On Direct Loans Are Not Property Of Its Bankruptcy Estate.**

1. **Bankruptcy Law.**

Critically, the monies being held by USACM that it received on Direct Loans are not property of its bankruptcy estate pursuant to Section 541(d) of the Bankruptcy Code. Specifically, Section 541(d) of the Bankruptcy Code excludes from the bankruptcy estate the following:

> (d)  Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

NRS § 645B.175(5) specifically provides that USACM holds all payments it receives from Direct Borrowers "in trust" for the benefit of the Direct Lenders. The case at hand is very similar to the situation in Golden Mortgage Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.), 171 B.R. 79 (B.A.P. 9th Cir. 1994). In Golden Triangle, the BAP held that funds which a loan servicing agent received from a lender for disbursement to a borrower were held in trust, and therefore were not property of the loan servicing agent's bankruptcy estate. See id. at 83. The BAP reasoned that the parties entered into a relationship that the court characterized as an express trust, and that the parties only intended legal title to pass to the loan servicing agent. See id. at 82-83. The BAP noted that the loan servicing agent never had rights in the funds, and was instead intended to be a mere "conduit" for the funds. See id. at 83.[2]

Similarly, in the case at hand, USACM's bankruptcy estate holds the payments received from Direct Borrowers in trust for the benefit of the Direct Lenders, and solely as an agent of the

---

[2] Other authority is also in accord. See, e.g., In re Cheqnet Sys., Inc., 246 B.R. 873, 877-78 (Bankr. E.D. Ark. 2000) (proceeds of checks which debtor held, prior to its Chapter 7 filing, only as collection agent with right to retain $7 on each check as fee, were included in "property of the estate" only to extent of debtor's $7 per check interest); Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 857 (8th Cir. 1996) (if property is in the debtor's hands as agent, the property or proceeds therefrom is not treated as property of the debtor's bankruptcy estate).

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/412331_7.doc

3

Direct Lenders. "Joint" loans, like the Direct Lender Loans, involve multiple lenders on a loan from the start, where the lenders are individually identified on the notes and trust deeds, and thus have direct contractual privity with their respective Direct Borrowers.[3]

### 2. Contractual And Statutory Requirements For Distributions.

There are also contractual and statutory requirements for the immediate distributions to Direct Lenders. NRS § 645B.175(4) provides certain depository and sequestering requirements with respect to "all money paid to a mortgage broker and his mortgage agents by a person in full or in partial payment of a loan secured by a lien on real property." Importantly, NRS § 645B.175(5) provides as follows:

> Except as otherwise provided in this section, the amount <u>held in trust</u> pursuant to subsection 4:
>
> (a) <u>Must be released</u>, upon the deduction and payment of any fee or service charge due the mortgage broker, to each investor who owns a beneficial interest in the loan in exact proportion to the beneficial interest that he owns in the loan; and
>
> (b) Must not be released, in any proportion, to an investor who owns a beneficial interest in the loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial interest in the loan.

NRS § 645B.175(5) (emphases added). Each Direct Loan should and can very easily be viewed on a "stand-alone" basis. The statute only speaks in terms on a single loan, and this is how the statute should be construed.

### 3. The Loan Documents And Loan Servicing Agreements.

The Loan Servicing Agreements[4] between the Direct Lenders and USACM provide, among other things, that USACM would collect interest and, if applicable, principal owed by the Direct Borrowers to the Direct Lenders on a monthly basis from each of the Direct Loans, charge a service fee, and distribute the payment to the applicable Direct Lenders on the appropriate

---

[3] The Direct Lenders' secured lending position with the Direct Borrowers (i.e., who are non-debtors) is in direct contrast to the Investors in the two (2) Funds, which Investors are merely equity participants and who chose a much riskier, unsecured investment vehicle.

[4] A copy of an example of a Loan Servicing Agreement is attached to Debtors' Motion to Distribute as Exhibit "A."

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

4

Direct Loan.[5]

The Direct Lenders also executed a "Special Power of Attorney"[6] to enable USACM to fulfill its obligations under the Loan Service Agreements. Pursuant to the Special Powers of Attorney, the Direct Lenders gave USACM certain limited powers, including the following:

> b.(3) To execute and deliver full and/or partial reconveyances of the Deed of Trust <u>upon the payment therefore to the undersigned</u>, as required by the Deed of Trust, <u>which payments to the undersigned are to be made directly to the undersigned, in proportion to their respective interests, and not said attorney in fact</u>.

(emphases added).

The Special Power of Attorney also provides that:

> This power of attorney <u>shall not be effective to authorize the use or release of money in which the undersigned owns a beneficial interest for any purpose except for the provision of the services described above relating to the loan</u> described above unless accompanied by written authorization by the undersigned for the use or release of money for the other purpose.

(emphasis added.)

Pursuant to the Special Powers of Attorney, USACM is expressly forbidden from: (1) reconveying collateral securing the Direct Loans in the absence of simultaneous payment to the Direct Lenders of their proportionate share of principal; (2) accepting principal payments in the name of USACM rather that the Direct Lenders; or (3) converting the Direct Lenders' money from each Direct Loan for use by USACM for any matters unrelated to USACM's service obligations under that specific Direct Loan.

The loan documents entered into by Direct Borrowers and Direct Lenders are consistent with the Special Power of Attorney provisions requiring that payments be made directly to the Direct Lenders, and <u>not</u> to USACM.[7] The Loan Agreement and Note both define the Direct

---

[5] The Loan Servicing Agreements have been used against the Direct Lenders for noticing purposes in objecting to the forbearance in the HFA loans, recognizing the Direct Lenders' rights and responsibilities under that document as they relate to an individual loan. Yet, USACM continues to breach its fiduciary duty by failing to turnover monies on a loan-by-loan basis pursuant to the Loan Servicing Agreements.

[6] A copy of an example of a Special Power of Attorney is attached as Exhibit "2" to the Walch Partial Opposition to Debtors' "Cash Management" Motion. See Docket No. 108.

[7] An example of a Direct Lenders' loan documents is attached to the Official Committee of Direct Lenders' Opposition to Debtors' original "Cash Management" Motion. See Docket No. 80.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

5

Lenders (and not USACM) as "Lenders" and require that payments under the Note be made "to Lenders." Accordingly, the relevant documents (e.g., the Loan Servicing Agreements, Powers of Attorney, Loan Agreements, Notes and Deeds of Trust/Mortgages) prohibit USACM from executing partial or full security releases in the absence of direct payments to the Direct Lenders in proportion to their ownership interest in the Direct Loans.

None of the Direct Lenders' loan documents (including the Powers of Attorney and Loan Servicing Agreements) entitles USACM to repayment proceeds, none of the Direct Lenders' Loan documents allows USACM to grant partial or full releases of security without obtaining payment directly to the Direct Lenders of the Direct Lenders' pro-rata share in any particular loan payment, and none of the Direct Lenders' loan documents allow Direct Borrower payments received as a result of a full or partial release of security to be put to use for anything other that USACM's service obligations under the Loan Servicing Agreement for each Direct Loan.

4. **The Direct Lenders Are Not Principally Asserting A Bankruptcy Claim Against The Estate For The Withheld Monies.**

The Direct Lenders do not principally have claims that will share pro rata in the bankruptcy estate; rather, the Direct Lenders are principally seeking the return of non-estate assets wrongfully being withheld by the Debtors. USACM does not "owe" the Direct Lenders this money in the sense the USACM has a countervailing claim subject to recoupment. The foregoing distinction results in the Direct Lenders' demands for the money in the DIP Collection Account not being claims in the bankruptcy case, asserted against the bankruptcy estate and property of the estate, and thus also not subject to disallowance, as USACM argues, pursuant to Section 502(d) of the Bankruptcy Code. Section 502(d) of the Bankruptcy Code provides as follows:

> (d)    Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522 (f), 522 (h), 544, 545, 547, 548, 549, or 724 (a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522 (i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/412331_7.doc

6

As noted herein, the Direct Lenders are not principally seeking to assert a claim in the bankruptcy for their money, they are seeking the return of their money that does not belong to the Debtors. The payments held by USACM and proposed to be paid pursuant to the Motion to Distribute do not belong to USACM. USACM is merely holding those funds in trust for the Direct Lenders and, other than its entitlement to servicing fees, the Debtors do not have any right to the funds. USAC cannot recoup monies USACM claims are owed to it by the Direct Lenders for the "prepaid interest" against monies <u>owned</u> by the Direct Lenders.

### 5. USACM's Requested Relief Is Tantamount To A Pre-Judgment Writ Of Attachment Without Proper Proof.

Debtors' requested holdbacks or "netting," while innocent sounding, are really just a procedurally deficient request for pre-judgment attachment for potential, unasserted, and unproven future avoidance actions. Fed. R. Civ. P. 64, as it incorporates state law, governs such pre-judgment procedures, and Debtors have not made any showing for such a dramatic remedy. In fact, Debtors' Motion to Distribute readily admits that their extraordinary request would require pre-judgment attachment, and that this would require the filing of numerous lawsuits. <u>See</u> Motion to Distribute, p. 9. Quite unbelievably, however, Debtors argue that so-called "practical considerations" should absolve them of having to actually commence such actions (and apparently prove their entitlement to recoupment in the first place), so as to avoid the due process protections inherent in such a proceeding.

If Debtors believe their recoupment defense is meritorious, then they should commence adversary proceedings against the various Direct Lenders and prove their entitlement. At least in such an adversary proceeding, the Direct Lenders could dispute the validity of Debtors' avoidance action allegations, including but not limited to whether forwarding money to the Direct Lenders that always belonged to the Direct Lenders is really a "transfer of an <u>interest of the debtor</u> in property" pursuant to Section 547(b) of the Bankruptcy Code, whether such a transfer to the Direct Lenders of their own property really had preferential effect pursuant to Section 547(b)(5) of the Bankruptcy Code, and, finally, whether the Direct Lenders had any other preference defenses pursuant to Section 547(c) of the Bankruptcy Code.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

7

C. **Debtors Have No Right To Their Requested Holdbacks Or "Netting."**

Debtors' Motion to Distribute alleges that they have the right to holdback or "net" significant portions of the Direct Lenders' monies based on a vague theory of recoupment, trust law and/or claim disallowance pursuant to 11 U.S.C. § 502(d). As a matter of law, Debtors have no right to their claimed holdbacks or the ability to "net" as their Motion seeks.[8]

1. **Recoupment.**

The BAP has explained recoupment as follows:

> Equitable recoupment is a common law doctrine that is not expressly recognized in the Bankruptcy Code, but is preserved through judicial decisions. . . .
>
> Recoupment is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim. . . .
>
> In recoupment, the respective claims may arise either before or after the commencement of the bankruptcy case, but they must arise out of the same transaction.

Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan), 270 B.R. 749, 753-54 (B.A.P. 9th Cir. 2001) (citations and quotations omitted, emphases added).

The party alleging a right of recoupment has the burden of proving the applicability of the doctrine of recoupment by a preponderance of the evidence. See Leonard v. Optimal Payments, Ltd. (In re National Audit Defense Network), 332 B.R. 896, 913 (Bankr. D. Nev. 2005).

2. **Same Transaction "Logical Relationship" Requirement For Recoupment.**

In order for USACM to recoup against the Direct Lenders, USACM must demonstrate that its claims against the Direct Lenders arose out of the "same transactions." See Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 1996); Madigan, 270 B.R. at 754-55; see also Vari-Build, Inc. v. City of Reno, 622 F. Supp. 97, 100 (D. Nev. 1985) (applying

---

[8] As the Official Committee of Direct Lenders believes it is in the best interests of the Direct Lenders to begin receiving payments, and because the parties agree that no formal determinations are being made on recoupment, the Committee is not including herein every possible argument against recoupment. However, issues which have not been fully analyzed include whether recoupment is allowed under an executory contract (the Loan Servicing Agreement), which has not been assumed.

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89109
(702) 796-5555

100933-001/412331_7.doc

8

Nevada law).

In order to determine if two claims arose from the "same transaction" for purposes of recoupment, a court must apply the "logical relationship" test. See Sims v. United States Department of Health and Human Services (In re TLC Hosps., Inc.), 224 F.3d 1008, 1012 (9th Cir. 2000); Newbery, 95 F.3d at 1403; Madigan, 270 B.R. at 754; see also Vari-Build, Inc., 622 F. Supp. at 100.

As explained by the BAP in Madigan:

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

Id. (quoting Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992)). The Ninth Circuit has applied the "logical relationship" test in two (2) salient cases. In TLC Hospitals, Inc., the Ninth Circuit expressly cautioned that in the commercial setting, the "logical relationship" concept should not be applied "so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." 224 F.3d at 1012.

More recently, in In re Coast Grain Co., 317 B.R. 796 (Bankr. E.D. Cal. 2004), the Court noted that "the concept of a 'logical relationship' is not unrestrained." Id. at 807. In that case, the Bankruptcy Court denied recoupment because the debtor's obligation to its customer in connection with prepayment of more than $1 million that customer had made pursuant to debtor's prepayment program did not arise out of "same transaction" as the customer's obligation to the debtor for dairy feed that it later purchased on the "spot market." The Court noted that in Newbery Corp., the Ninth Circuit, in essence, applied a "proximate cause" test to connect the competing claims (i.e., but for Newbery's breach of the construction contract, Fireman's Fund would not have had to rent the equipment).

In the case at hand, the separate and distinct lending relationships between each of the non-Debtor borrowers and the Direct Lenders on each distinct loan do not constitute the "same transaction" under even the broadest definition of transaction as the Loan Servicing Agreement between the Direct Lenders and USACM. Debtors attempt to point to the Loan Servicing

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

9

Agreements each Direct Lender executed as the operative contract under which the obligations arise. USACM's obligations to the Direct Lenders arise under NRS § 645B.175(5) and the Loan Servicing Agreements, which provide that the funds are held in trust. The Direct Lenders' loans are not interconnected--each Direct Loan has separate, different borrowers, evidenced by separate notes with different terms, secured by different collateral located in numerous states, with separate valuations, separate financial issues, separate co-lenders and, in some cases, guarantors, and thus separate risks. Debtors have failed to show as a matter of state law, that all of the different loans that a Direct Lender may have been involved should be considered one transaction under applicable state law.

For the same reasons as set forth above, the Official Committee of Direct Lenders also objects to Debtors' attempt to "net" various sums globally across different loans. Each loan should be viewed on a standalone basis as this is how the transactions and loan documents were structured with respect to each Direct Lender.

### 3.    Recoupment Is A Discretionary, Equitable Doctrine That Is Inapplicable To Remedy The Debtors' Pre-Petition Fraudulent Acts.

Recoupment is an _equitable_ doctrine. See Newbery Corp., 95 F.3d at 1401; Madigan, 270 B.R. at 756 (noting that under the "logical relationship" requirement for recoupment "courts evaluate the equities of the case"); Coast Grain Co., 317 B.R. at 806 ("Recoupment is an equitable doctrine"). For example, in Coast Grain Co., the Court held that "[t]he recoupment doctrine draws its authority from principles of equity and is thereby subject to the facts in each individual case." 317 B.R. at 806. The Court in Coast Grain Co. noted further that even if a party demonstrated a "logical relationship" necessary for recoupment, that "[r]ecoupment is an equitable doctrine which may be denied based on the parties' conduct or other "equitable" factors which the court does not need to address here." Id. at 809 n.7 (emphasis added).

As such, in the case at hand, even if USACM can prove that it satisfies the "logical relationship" test necessary for recoupment, which the Official Committee of Direct Lenders disputes, the Court should still, in its discretion, given the inequitable conduct, deny USACM such relief. Despite the attempt to cleanse itself of the Debtors' fraudulent pre-petition acts, the

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

10

bankruptcy estate steps into the shoes of the Debtors. After admittedly committing fraud (and most likely criminal acts) against the Direct Lenders, the Debtors cannot be allowed to invoke equity against the innocent Direct Lenders.

4. **Recoupment Is A Defense That Must Be Raised In A Proper Proceeding.**

Debtors' Motion to Distribute admits that recoupment is a "defense" to the Direct Lenders' claims against the Debtors. See Motion to Distribute, p. 7. As a matter of procedure, recoupment must be raised as a defense by the Debtors in an objection to the allowance of a proof of claim (i.e., a contested matter), or within the context of an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

For example, the BAP in Madigan specifically noted that a recoupment defense was a proceeding to obtain equitable relief, which requires an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(7). See 270 B.R. at 752 n.5. In Madigan, however, neither party raised this procedural defect, and thus the Court held that it was waived. See id. Other cases cited by Debtors and/or the Committee herein all involved recoupment raised as a defense in the context of adversary proceedings. See, e.g., Newbery Corp., 95 F.3d 1392 (9th Cir. 1996) (adversary proceeding); Coast Grain Co., 317 B.R. 796 (Bankr. E.D. Cal. 2004) (preference adversary proceeding, recoupment raised as defense); National Audit Defense Network, 332 B.R. at 913 ("[r]ecoupment is in the nature of a defense, the purpose of which is to do justice viewing one transaction as a whole.").

In the case at hand, the Official Committee of Direct Lenders demand that these matters be heard in an adversary proceeding in accordance with Fed. R. Bankr. P. 7001 so as to properly protect the Direct Lenders' due process rights. Debtors' attempt to raise recoupment and other arguments, when neither of these proceedings is pending, is procedurally improper.

D. **The Committee Supports Making At Least Some Distributions.**

Notwithstanding the foregoing, the Official Committee of Direct Lenders has been assured that the Debtors' Motion to Distribute does not seek any formal or final determinations regarding the validity of Debtors' claimed holdbacks or their entitlement to recoupment, and that the monies being held back will remain in the DIP Collection Account and not be used for

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

11

operations. Based upon this assurance, the Official Committee of Direct Lenders does not object to at least making the limited distributions requested in Debtors' Motion (currently and on a monthly basis going forward) so that the Direct Lenders can get at least some relief from the Debtors' withholding of their monies since the bankruptcy cases were filed. The validity of the Debtors' holdbacks and recoupment are issues for another day and another proceeding, and it is thus in the best interest of the Direct Lenders to make distributions to them forthwith and on a continuing monthly basis going forward.

## II.
## CONCLUSION

WHEREFORE, the Official Committee of Direct Lenders hereby respectfully requests that the Court allow the distributions proposed in Debtors' Motion to Distribute, but clearly indicate in any such order approving such distributions that the holdback monies attributable to each Direct Lenders' loan be accounted for separately, and that the Court is not approving or deciding the validity of the Debtors' claimed holdbacks.

DATED this 28th day of July, 2006.

GORDON & SILVER, LTD.

By: /s/ 
GERALD M. GORDON, ESQ.
BRIGID M. HIGGINS, ESQ.
GREGORY E. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

100933-001/412331_7.doc

12