Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: ajarvis@rqn.com

  and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date:  August 4, 2006<br>Time:  9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **REPLY IN SUPPORT OF MOTION FOR ORDER APPROVING CONTINUED USE OF CASH THROUGH OCTOBER 29, 2006 PURSUANT TO THIRD REVISED BUDGET (AFFECTS ALL DEBTORS)** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

1

RQNDOCS-#885601-v1-Reply_in_Support_of_Motion_to_Use_Cash

1  USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty
2  Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust
3  Deed Fund, LLC (collectively, the "Debtors"), by and through their counsel, hereby file this Reply
4  in Support of Motion for Order Approving Continued Use of Cash Through October 29, 2006
5  Pursuant to Third Revised Budget (docket no. 846, filed July 7, 2006) (the "Motion to Use Cash").
6  The Motion to Use Cash is supported by the Declaration of Thomas J. Allison in Support of
7  Debtors' Motions to be heard on August 4, 2006, the arguments set forth below, and other relevant
8  items of record before this Court in the Debtors' bankruptcy cases.

## POINTS AND AUTHORITIES

### Facts

11  1. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code
12  on April 13, 2006. By order entered June 9, 2006, the Court approved the joint administration of
13  the Debtors' bankruptcy cases.
14  2. On July 7, 2006, the Debtors filed their Motion to Use Cash which sought approval of the
15  Debtors' limited use of cash through October 29, 2006, in accordance with a cash budget that was
16  to be filed by July 19, 2006.
17  3. On July 19, 2006, the Debtors filed a Notice of Filing of Third Revised Budget Applicable
18  to Motion for Order Approving Continued Use of Cash Through October 29, 2006 Pursuant to
19  Third Revised Budget (docket no. 906, dated July 19, 2006), which included as Exhibit A thereto
20  a copy of the proposed Third Revised Budget.
21  4. On July 27, 2006, the Committee of Holders of Executory Contract Rights Through USA
22  Commercial Mortgage Company (the "ECC"), filed an opposition to the Motion to Use Cash
23  (docket no. 997) to the extent the Debtors are seeking to use the Third Revised Budget as a means
24  to obtain Court approval to enter into loan extensions or exercise remedies against direct lenders
25  or pre-paid interests.
26  5. On July 27, 2006, the Unsecured Creditors' Committee for USA Commercial Mortgage
27  Company (the "UCC") filed a limited opposition to the Motion to Use Cash (docket no. 992) on
28  the grounds that: (a) any approval of the Third Revised Budget should not be deemed to also be

an approval of the professional fees and distributions to lenders referenced therein; and (b) any approval of the Third Revised Budget should be conditioned on a requirement that the Debtors provide to all of the committees a weekly report comparing actual expenditures to the budgeted expenditures.

6. On July 27, 2006, The Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDC") and The Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC (the "DTDC") (these two committees shall collectively be referred to as the "Funds Committees")[1] filed a joint limited objection to the Motion to Use Cash (docket no. 998) on the grounds that: (a) the Court should not approve the payment of management fees that are set forth in the Third Revised Budget; (b) the Third Revised Budget should not be approved absent the allocation of the Debtors' professional fees and expenses across the Debtors' estates; (c) the funds in the Collection Account characterized as "estate funds" should not be deemed to be property of USACM's estate absent a court determination; (d) there are issues relating to the proposed distributions to investors; (e) the Third Revised Budget does not provide for adequate holdbacks before making distributions to investors; (f) the Third Revised Budget does not accurately reflect the estimated amounts for fees and expenses of the FTDC; and (g) the Court should condition approval of the Third Revised Budget on requiring the Debtors to provide the Committees with weekly cash flow reports comparing the Debtors actual cash flow against their budgeted cash flow.

**RESPONSE TO THE COMMITTEES' OBJECTIONS**

The Debtors submit the following responses to the various objections asserted by the Committees.

A. **The Motion to Use Cash Does Not Seek Approval of the Amounts for the Payment of Professional Fees Set Forth Therein**.

The UCC has objected to the Motion to Use Cash on the ground that any approval of the Third Revised Budget should not be deemed to also be an approval of the amounts attributed to the

---

[1] The UCC, the ECC, the FTDC and DTDC shall collectively be referred to as the "Committees."

payment of professionals referenced therein. The Debtors acknowledge that the approval of professional fees will need to be determined by the Court pursuant to separate applications that are anticipated to be filed by the end of August. To the extent the Court approves different amounts for the payment of professional fees, the Third Revised Budget will be revised accordingly.

The Funds Committees object to the approval of the Third Revised Budget absent the allocation of the Debtors' professional fees across the Debtors' estates. Debtors' counsel has already agreed with the Committees' counsel that the invoices covering Debtors' professional fees and expenses through June 30, 2006 will be reviewed, and the Committees will be provided with an allocation of the professional fees and expenses by August 11, 2006. The Debtors have also requested that by August 11th, the Committees deliver copies of the invoices showing the fees and expenses of their professionals through June 30, 2006.

Debtors' counsel has further agreed with the Committees that interim fee applications covering the period through July 31, 2006 (which will also show an allocation of professional fees and expenses) will be filed by August 31, 2006, with a hearing anticipated on the approval of those applications in late September, 2006. In the meantime, to address the concerns raised by the Funds Committees about the allocation of professional fees and expenses, the Third Revised Budget will be revised to add a "place holder" line for the Debtors' professional fees and expenses in the expense lines for the First Trust Deed Fund and the Diversified Trust Deed Fund with an attached footnote indicating that those expenses will be allocated to those lines as soon as that information is available. Notwithstanding the foregoing, the Third Revised Budget is merely a forecast of the amount of professional fees that will be paid and is not determinative of the actual fees because that is subject to approval by this Court. Consequently, the proper allocation of the Debtors professional fees and expenses is not at issue in the Motion to Use Cash.

/ / /
/ / /
/ / /
/ / /
/ / /

The Funds Committees also object to the Motion to Use Cash on the basis that the Third Revised Budget does not accurately reflect the estimated amount for the fees and expenses of the FTDC. However, the budgeted amount for their fees and expenses came from the information that was provided to the Debtors by counsel for the FTDC.[2] To the extent counsel for the FTDC wants to provide the Debtors with updated figures, the Third Revised Budget will be adjusted accordingly.

Finally, to address the last concern raised by the Funds Committees about how their professional fees will be paid, footnote "a" on page 2 of the Third Revised Budget will be revised to delete any reference to paying the professional fees of the Funds Committees via a surcharge.

**B.  Distributions to Investors Will Be Made In Accordance With this Court's Ruling on the Distribution Motion and Will Be Made on a Monthly Rather Than Weekly Basis.**

The UCC has objected to the Motion to Use Cash on the ground that any approval of the Third Revised Budget should not be deemed to also be an approval of the amounts distributed to investors as referenced therein. The Debtors acknowledge this issue is being resolved pursuant to a separate Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds (the "Distribution Motion") (docket no. 847, dated July 7, 2006) that has been filed with the Court and is scheduled to be heard on August 4, 2006. Obviously, to the extent the Court approves a different amount for distributions to investors than as set forth in the Distribution Motion, the Third Revised Budget will be revised accordingly.

The Funds Committees also assert an objection to the approval of the Third Revised Budget because it contemplates distributions to investors of approximately $88.3 million during the week ending August 6, 2006. This figure was used because it was the total estimated amount of available funds at the time the Third Revised Budget was filed and the Debtors had not yet completed their netting analysis. However, the Debtors now intend to only seek approval to distribute the amount set forth in the Distribution Motion ($68.2 million) and will adjust the Third

---

[2] Stutman, Treister & Glatt provided Debtors with information relating to its actual fees and expenses but provided no projected amounts for its future fees and expenses. Shea & Carlyon, local counsel for the FTDC, did not provide to the Debtors any actual or projected fees and expenses.

1  Revised Budget to reflect the Court's ruling.

2  The Funds Committees also expressed concern because the Third Revised Budget does not
3  provide for any distribution to the First Trust Deed Fund or the Diversified Trust Deed Fund, and
4  because it contemplates making distributions on a weekly basis. As a result, the Third Revised
5  Budget will be revised to show that the First Trust Deed Fund and the Diversified Trust Deed
6  Fund will receive their share of the distribution (rather than all of the distributions being made
7  directly to investors). In addition, Debtors intended to make the distributions on a monthly rather
8  than a weekly basis and the Third Revised Budget will be revised accordingly.

**C.    The Debtors Are Willing to Provide to All of the Committees a Report Comparing the Actual Cash Expenditures to the Budgeted Cash Expenditures.**

The UCC and the Funds Committees have also objected to the Motion to Use Cash on the ground that the Third Revised Budget should not be approved unless the Debtors provide each of the Committees with a weekly cash report comparing the Debtors actual cash flow against their budgeted cash flow. The Debtors are willing to provide these reports although due to the many competing demands and other tasks that must be completed in the Debtors' bankruptcy cases, Debtors would request that such reports be provided to the Committees on a bi-weekly basis instead of a weekly basis.

**D.    USACM is Contractually Entitled to Receive the Management Fees That are Set Forth in the Third Revised Budget And Are Not Triple Charging the Funds.**

The Funds Committees assert that the Debtors are seeking to triple charge the estates of the First Trust Deed Fund and the Diversified Trust Deed Fund by 1) charging a loan servicing fee, 2) charging a management fee, and 3) allocating the professional fees and expense across the Debtors' five estates. Accordingly, the Funds Committees object to the payment of the management fees that are contained in the Third Revised Budget. However, both the First Trust Deed Fund and the Diversified Trust Deed Fund contractually agreed to pay the management fee.[3]

---

[3] Furthermore, although the Funds Committees infer that the management fees of one-percent (1%) and one and one-half percent (1.5%), respectively, under the two operating agreements is excessive, those percentages, if added to the

1   Specifically, Section 12.2 of the Second Amended and Restated Operating Agreement of USA
2   Capital First Trust Deed Fund, LLC provides as follows:

> <u>Asset Management Fee and Loan Servicing</u>.  The Manager may act as servicing agent with respect to all Company loans and may manage all of the Company's Property.  In consideration for such collection and management efforts, the Manager shall be entitled to receive a loan servicing and asset management fee equal to one and one-half percent (1.50%) per annum of the Assets Under Management, which shall be paid monthly at a rate of one-eighth of one percent (0.125%) of Assets Under Management as of the last day of each calendar month and be payable on or before the fifteenth (15th) day of the following calendar month.

Likewise, Section 10.02 of the Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC, provides as follows:

> 10.02  <u>Loan Servicing and Asset Management Fee</u>.  The Manager may act as servicing agent with respect to all Company loans and may manage all of the Company's assets.  In consideration for such collection and management efforts, the Manager shall be entitled to receive a monthly loan servicing and asset management fee equal to one-twelfth (1/12th) of one percent (0.16666%) of the Net Assets Under Management as of the last day of each calendar month, payable on or before the fifteenth (15th) day of the following calendar month.

To the extent the Funds Committees want to challenge the payment of the management fees pursuant to the foregoing contractual provisions, objecting to the Motion to Use Cash is not the appropriate forum to do so.

Furthermore, Debtors disagree that they are triple charging the estates of the First Trust Deed Fund and the Diversified Trust Deed Fund for the same services.   The two Funds are being charged a loan servicing fee and a management fee in accordance with the agreed contracts, but they are not also being charged for all of the professional fees and expenses that are being incurred by the Debtors for servicing and management activities that normally would be covered by these fees.  While it is anticipated that some of the professional fees and expenses will be allocated to

---

one-percent (1%) servicing fee that is currently being charged for services under their loan servicing agreements, is still a smaller percentage than the three-percent (3%) the Debtors are entitled to contractually charge under many of the loan servicing agreements.  Indeed, the loan servicing agreement entered into by the First Trust Deed Fund

7

RQNDOCS-#885601-v1-Reply_in_Support_of_Motion_to_Use_Cash

1  the First Trust Deed Fund and the Diversified Trust Deed Fund as the Court may allow, it is
2  anticipated that most of the professional fees and expenses will be paid from USACM's estate
3  because, in undertaking this allocation, the Debtors will take into account the loan servicing and
4  management fees that are being paid by the First Trust Deed Fund and the Diversified Trust Deed
5  Fund.

### E. The Debtors Will Be Filing A Motion to Determine Whether the Pre-Paid Interest Identified as "Estate Funds" In the Collection Account Belongs to USACM's Estate.

8  The analysis of the Collections Account in the Third Revised Budget is structured so that it
9  reflects those amounts in the Collection Account that the Debtors believe are investor funds and
10 those amounts collected from borrowers for pre-paid interest that the Debtors believe are estate
11 funds. The ECC, and the Funds Committees object to this characterization of the funds in the
12 Collection Account because there has not been a determination by the Court that the funds in the
13 Collection Account which are characterized as "estate funds" are actually property of the estate.
14 The Motion to Use Cash pursuant to the Third Revised Budget does not seek resolution of this
15 issue. Rather the characterization of the funds in the Collection Account in the Third Revised
16 Budget was done for informational purposes. The Debtors acknowledge they must file a motion
17 seeking court approval that the funds designated in the Collection Account as "estate funds" are
18 property of the estate. Debtors plan to file a motion to resolve this issue in the next few weeks so
19 that it can be heard at the September 13, 2006, hearing, which is prior to the date any of the funds
20 in the Collection Account will be needed to pay professional fees and expenses as currently
21 contemplated in the Third Revised Budget.[4]

22 / / /
23 / / /
24 / / /

---

provides that a servicing fee of up to three-percent can be charged to that fund and Debtors reserve their right to make that adjustment.

[4] In response to another concern raised by the ECC, the Debtors are also not seeking to use the approval of the Third Revised Budget as a means to obtain court approval to enter into loan extensions. Such actions will be handled

**F.  The Debtors are Agreeable to Making Adequate Holdbacks Prior to Making Distributions to Investors**.

The FTDC and the DTDC also object to the Motion to Use Cash on the ground that the Third Revised Budget contemplates that distributions will be made to investors without the Debtors holding back the necessary amounts to cover the estates' expenses.  This same argument is advanced by the Committees in response to the Debtors' Distribution Motion.  The Debtors have responded to this argument in their reply in support of the Distribution Motion and hereby incorporate that argument herein by reference.  In addition, the Third Revised Budget will be revised to reflect that the Debtors will hold the funds to be distributed to fund members of the First Trust Deed Fund and the Diversified Trust Deed Fund until appropriate holdback amounts to pay claims as well as professional and other expenses are determined by the Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court approve the continuing use of cash in the Debtors' estate through the week ending October 29, 2006, to the extent and for the purposes set forth in the Third Revised Budget.

Respectfully submitted this 2nd day of August, 2006.

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

separately with appropriate notice given to parties in interest.