Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
    and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON August 4, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                          Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                          Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                          Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                          Debtor. | **OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY ROLLAND P. WEDDELL AND SPECTRUM FINANCIAL GROUP**<br><br>**(AFFECTS USA COMMERCIAL MORTGAGE COMPANY)** |
| In re:<br>USA SECURITIES, LLC,<br>                                                          Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date: August 16, 2006<br>Time: 9:30 a.m. |

1    USA Commercial Mortgage Company ("USACM" or "Debtor"), debtor and debtor-in-
possession, by and through its undersigned counsel, opposes the Motion for Relief from
Automatic Stay filed by Rolland P. Weddell and Spectrum Financial Group (collectively "Claim
Assignees"). The grounds for the opposition are as follows:

1.    The alleged claims against the Debtor could be more economically handled by the Debtor as part of the claims process if and when there will be a distribution to unsecured creditors of this Debtor.

2.    The expenditure of funds for attorneys and the use of the Debtor's staff for discovery in this litigation at this time would be an improvident use of Debtor's resources because the Debtor should be concentrating on maximizing the recovery from its loan portfolio and reorganizing.

3.    The alleged claims involve the activities of Thomas Hantges, Joseph Milanowski and Richard Kropp, part of the Debtor's prior management, who are not available to the Debtor's present management making the litigation process particularly difficult at this time.

**FACTUAL BACKGROUND**

The Debtor's current management has no personal knowledge of the facts alleged in the Claim Assignee's complaint.[1] Current management has been informed by the Debtor's prior counsel that (1) there are good defenses to the allegations in the Complaint, and (2) the counterclaim (on personal guarantees of loans) are valid. At this time, the Debtor's current management (in consultation with various Official Committees) will have to investigate if it is the proper party to the Counterclaim or if some or all of the personal guarantees should be the subject of litigation for the benefit of Direct Lenders, who were investors in loans made to the various entities involved in the transactions mentioned in the Complaint. A review of the Fourth Amended

---

[1] The Fourth Amended Complaint contains twenty four Claims for Relief including allegations of Federal RICO, State RICO, Intentional Misrepresentation, Negligent Misrepresentation, Breach of Contract, Breach of Implied Convenant of Good Faith and Fair Dealing, Tortious Breach of Implied Covenant of Good Faith and Fair Dealing, Intentional Interference With Contractual Relations, Defamation, False Light-Invasion of Privacy, Intrusion Upon Seclusion-Invasion of Privacy, Abuse of Process, Slander of Title, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, Civil Conspiracy and Alter Ego.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Complaint shows that the litigation covers a lot of factual and legal issues which will require a large amount of time and money to resolve. The Debtor asserts that this is not the proper time to spend such resources.

## MEMORANDUM OF LAW

A.   Legal Standard

The Claim Assignees properly note that the decision to modify the automatic stay "is within the discretion of the bankruptcy judge" and it is well established that "because there is no clear definition of what constitutes "cause", discretionary relief from the stay must be determined on a case by case basis." *In re Castlerock Properties*, 792 F.2d 159, 163 (9th Cir. 1986)(quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)).

Denial of a motion to lift the stay and refusal to permit non-bankruptcy litigation can be appropriate. In *In re Conejo Enterprises, Inc.*, 96 F.3d 346 (9th Cir. 1996), the Court of Appeals for the 9th Circuit upheld the denial of a lift stay motion on the grounds that the Bankruptcy Court acted properly.

> The purpose of § 362(a)'s automatic stay is to protect both the debtor and his creditors. The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

96 F.3d at 351. As stated in *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557 (Bankr.C.D.Cal. 2004):

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, *when no great prejudice to the bankruptcy estate would result*, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere. H.R.Rep. No. 95-595, at 341 (1977); S.Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added). Judicial economy is a factor to be considered by bankruptcy courts when deciding lift stay issues. *See Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.*, 781 F.2d 159, 163 (9th Cir. 1986); *Kemble*. 776 F.2d at 807; Santa Clara, 180 B.R. at 566. However, a bankruptcy court must be cognizant "of the entire bankruptcy case and its progress," and adjudicate "stay relief issues from this perspective." *Santa Clara*, 180 B.R. at 567. The burden of proof on a motion to modify the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under § 362(d)(1). *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2nd Cir.1999); *Duvar Apt., Inc. v. Fed. Deposit Ins.*

*Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996); *FSFG Serv. Corp. v. Kim (In re Kim)*, 71 B.R. 1011, 1015 (Bankr.C.D.Cal.1987). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2nd Cir.2002); *Mazzeo*, 167 F.3d at 142; *Kim*, 71 B.R. at 1015.

(Emphasis added.)

In determining whether cause exists to lift the automatic stay to allow litigation to proceed in another tribunal, the Court of Appeals for the Second Circuit said that bankruptcy courts should consider the following factors:

> (1) whether relief would result in a partial or complete resolution of the issue;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interest of the creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether the movant's success in the other proceeding would result in a judicial lien avoidance action by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnox Industries, Inc. v. Tri Components Prods. Corp. (In re Sonnox Idustries, Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990)(citing *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)).

In *In re Johnson*, 115 B.R. 634, 636 (Bankr.D.Minn.1989), the Court identified seven factors, which were also relied upon the by court in *Edmondson v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 148 B.R. 920, 923-924 (Bankr.D.Ariz.1993). The *Johnson* list of factors is as follows:

> 1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;
> 2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made

against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter;

3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred;

4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;

5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit;

6. Whether the creditor has a probability of success of the merits;

7. And, as this Court now recognizes, whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issue sin the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

## ARGUMENT

This Debtor and its affiliates in these Chapter 11 proceedings are at a critical stage in their bankruptcy proceedings (less than four full months from filing) and are dealing with significant, time-sensitive issues that require the attention of management and counsel as well as a breathing spell from pre-petition litigation. Defending against the Claim Assignees' actions in federal District Court would impede the Debtor's efforts to maximize recovery for the Direct Lenders and Fund investors, and would impede the Debtor's efforts to emerge from Chapter 11. To allow the automatic stay to be lifted would require the Debtors' management to spend time and money on litigation which may or may not turn out useful to the administration of the estate.

In applying the *Sonnox* factors, the greater weight seems to fall on the side for denial of relief.

(1) Relief will not result in a complete resolution of the issues because the Bankruptcy Court will have to decide whether the Debtor's counterclaims belong to it or Direct Lenders;

(2) The time and expense involved in defending the case and prosecuting the counterclaim will interfere with the Debtor's ability to prosecute the Chapter 11 case;

(3) The litigation does not involve the Debtor as a fiduciary;

(4) No specialized tribunal with the specialized expertise has been established to hear the cause of action;

(5) There does not appear to be an insurer that has assumed responsibility for defending the litigation;

(6) The action does not, according to the Claim Assignees, primarily involve third parties;

(7) Litigation in another forum would prejudice the interest of Direct Lenders and other creditors who have no standing in the District Court litigation but who may have standing in the bankruptcy court to object to the Claim Assignee's claim;
(10) the interests of judicial economy will be served by leaving the stay in place until it is determined if there will be any distribution to unsecured creditors of the Debtor;
(11) The parties are not ready for trial in the other proceeding; and
(12) The continuation of the stay gives the Debtor "breathing room" to reorganize and mere deferral of the litigation does not harm the Claim Assignees.[2]

In applying the *Johnson* factors, the greater weight also seems to fall on the side for denial of relief.

1. There is no insurance coverage of the damages, no insurer with a duty of defense and the conduct of the defense will impose a financial burden on the Debtor's estate;
2. Judicial economy does not favor the continuation of the action in another tribunal until there is some determination that a distribution to unsecured creditors will be made;
3. The federal court litigation has not progressed to trial-readiness and there has been no showing that investment of resources in trial preparation would be wasted if trial were deferred;
4. The issues presented are not those to be adjudicated by a specialized tribunal;
5. The litigation does involve other parties over whom the Bankruptcy Court lacks jurisdiction and full relief can not be accorded to all such nondebtor parties on seven (of twenty four) claims for relief without the Debtor's presence in the lawsuit;
6. There has been no showing that the Claim Assignees have a probability of success of the merits;[3]
7. The interests of the Debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court (whether this Debtor and its affiliates can be reorganized and whether there will be any distribution to unsecured creditors such as the Claim Assignees) before the court and the parties address the issue of the forum where the claim against the Debtor is to be fixed and liquidated.

Until we know or, at least, have some assurance there will be some distribution to unsecured creditors of USACM, lifting the stay would simply require the parties to spend time and money on litigation with no ascertainable purpose. While USACM's Chapter 11 case is in its early

---

[2] The Claim Assignees are claiming that the claims they purchased from the Principle Centered, Inc. bankruptcy estate for $260,000 are worth many millions.

[3] The allegations in the complaint are not evidence.

1  stages, management should be concentrating on maximizing the recovery of loans and
2  reorganizing.  Litigation diverts resources from those efforts.

### CONCLUSION

4  The Motion for Relief from Automatic Stay filed by Rolland P. Weddell and Spectrum
5  Financial Group should be denied.

6  Respectfully submitted this 4th day of August, 2006.

/s/      Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

P:\USA Commercial Mortgage\Lift Stay Motions\Weddell, Spectrum\Opposition Motion for Relief from Stay 080406.DOC     - 7 -