E-FILED ON AUGUST 4, 2006

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Proposed Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                      Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                      Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                      Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                      Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                      Debtor. | **OPPOSITION TO STANDARD PROPERTY DEVELOPMENT'S MOTION FOR RELIEF FROM AUTOMATIC STAY [AFFECTS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND]** |
| Affects:<br>☐  All Debtors<br>☒  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☒  USA Capital First Trust Deed Fund, LLC | Date:  August 16, 2006<br>Time:  9:30 a.m. |

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

USA Commercial Mortgage Company ("USACM"), and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Debtors"), by and through their counsel, oppose the Motion for Relief from Automatic Stay (the "Motion") filed by Standard Property Development ("Standard") on the following grounds:

1. The Motion seeks permission for Standard to prosecute recently filed litigation (filed July 17, 2006) against the Debtors and Direct Lenders in Florida despite the fact that such litigation must be brought in Clark County, Nevada.

   a. The Promissory Note provides that "The venue of any action brought in connection with this Note shall be laid in Clark County, Nevada." See ¶ 18 of the Promissory Note.

   b. The Construction Loan Agreement provides that "BORROWER, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, … (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM OTHER THAN CLARK COUNTY, NEVADA…See ¶8.15 (b) of the Construction Loan Agreement.

2. Florida would also be an inconvenient forum because the relationship between Standard and the Debtors and the Direct Lenders is governed by Nevada law which this Court (or another Court in Clark County) is more familiar with than a Florida court would be.

   a. The Promissory Note provides: "This Note shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to choice of law provisions." See ¶ 16 of the Promissory Note.

   b. The Construction Loan Agreement provides: "The laws of the State of Nevada, without regard to its choice of law provisions, shall govern the construction and enforcement of the Loan Documents." See ¶ 8.15(a) of the Construction Loan Agreement.

3. Standard is alleging a meritless claim that the Debtors and the Direct Lenders have an obligation to provide additional financing for construction of Standard's condominium project

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 2 of 9

while the documents clearly state that any such funding is at option of the lenders. This claim is refuted by the loan documents.

    a.    The Construction Loan Agreement provides, at ¶ 3.2, that

> "3.2   <u>Increase in Loan Amount</u>. From the Effective Date through and including January 31, 2007, Lender and USA shall have the exclusive right, **but not the obligation**, to increase the Loan Amount in any amount but not in excess of [$17,750,000]."

    b.    The Mortgage Security Agreement also eliminates the ability of Standard to rely upon any pre-closing commitment. It provides, at ¶ 27(d), that

> (d)    The terms and conditions of the loan commitment letter, if any, between Mortgagor and Mortgagee are hereby incorporated into and made part of this Mortgage. In the event any terms or provisions of this Mortgage, the Note or any other Loan Collateral Documents[1] of even date herewith, conflict with any of the terms and provisions of the commitment letter, the terms and provisions of this Mortgage, the Note and Collateral Loan Documents will prevail.

The allegations of the complaint contradict the executed loan documents. Requiring the Debtors to spend time and money litigating these issues in Florida would be an improvident use of the Debtors' resources and the Debtors' management's time. In light of the choice of venue provisions of the loan documents, the Florida litigation should be dismissed[2] because Standard has not shown "cause" for granting relief from the automatic stay.

---

[1] The Collateral Loan Documents are, collectively, the Promissory Note, the Mortgage and any other instrument of indebtedness or security, and any extensions, modifications, renewals or amendments of the foregoing described documents. See ¶ 1 of the Mortgage Security Agreement.

[2] USACM is not, at this time, asking this Court to enjoin the Florida litigation but it is possible that such a request will be made based upon the relationship between USACM and the Direct Lenders.

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 3 of 9

In addition, Standard has not shown "cause" to disrupt the payment of interest from the interest reserve to USACM for the benefit of the 114 Direct Lenders and Capital First (the owner of a fractionalized interest in this loan).

## MEMORANDUM OF LAW

A.     Legal Standard

The decision to modify the automatic stay "is within the discretion of the bankruptcy judge", and it is well established that "[b]ecause there is no clear definition of what constitutes "cause", discretionary relief from the stay must be determined on a case by case basis." *In re Castlerock Properties*, 792 F.2d 159, 163 (9th Cir. 1986)(quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)).

Denial of a motion to lift the stay and refusal to permit non-bankruptcy litigation can be appropriate.  In *In re Conejo Enterprises, Inc.*, 96 F.3d 346 (9th Cir. 1996), the Court of Appeals for the 9th Circuit upheld the denial of a lift stay motion on the grounds that the Bankruptcy Court acted properly.

> The purpose of § 362(a)'s automatic stay is to protect both the debtor and his creditors.  The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

96 F.3d at 351. As stated in *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557 (Bankr.C.D.Cal. 2004):

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, *when no great prejudice to the bankruptcy estate would result*, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere. H.R.Rep. No. 95-595, at 341 (1977); S.Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added).  Judicial economy is a factor to be considered by bankruptcy courts when deciding lift stay issues. *See Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.*, 781 F.2d 159, 163 (9th Cir. 1986); *Kemble*. 776 F.2d at 807; Santa Clara, 180 B.R. at 566.  However, a bankruptcy court must be cognizant "of the entire bankruptcy case and its progress," and adjudicate "stay relief issues from this perspective." *Santa Clara*, 180 B.R. at 567.  The burden of proof on a motion to modify the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under § 362(d)(1). *Mazzeo v. Lenhart (In re*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 4 of 9

*Mazzeo)*, 167 F.3d 139, 142 (2nd Cir.1999); *Duvar Apt., Inc. v. Fed. Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996); *FSFG Serv. Corp. v. Kim (In re Kim)*, 71 B.R. 1011, 1015 (Bankr.C.D.Cal.1987). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2nd Cir.2002); *Mazzeo*, 167 F.3d at 142; *Kim*, 71 B.R. at 1015.

(Emphasis added.)

In determining whether cause exists to lift the automatic stay to allow litigation to proceed in another tribunal, the Court of Appeals for the Second Circuit said that bankruptcy courts should consider the following factors:

> (1) whether relief would result in a partial or complete resolution of the issue;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interest of the creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether the movant's success in the other proceeding would result in a judicial lien avoidance action by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnox Industries, Inc. v. Tri Components Prods. Corp. (In re Sonnox Idustries, Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990) (citing *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)).

In *In re Johnson*, 115 B.R. 634, 636 (Bankr.D.Minn.1989), the Court identified seven factors, which were also relied upon the by court in *Edmondson v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 148 B.R. 920, 923-924 (Bankr.D.Ariz.1993). The *Johnson* list of factors is as follows:

> 1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 5 of 9

2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter;

3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred;

4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;

5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit;

6. Whether the creditor has a probability of success of the merits;

7. And, as this Court now recognizes, whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issue sin the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

## ARGUMENT

This Debtor and its affiliates in these Chapter 11 proceedings are at a critical stage in their bankruptcy proceedings (less than four full months from filing) and are dealing with significant, time-sensitive issues that require the attention of management and counsel as well as a breathing spell from pre-petition litigation. Defending against Standard's action in a Florida court would impede the Debtor's efforts to maximize recovery for the Direct Lenders and Fund investors, and would impede the Debtor's efforts to emerge from Chapter 11. To allow the automatic stay to be lifted would require the Debtors' management to spend time and money on litigation which may or may not turn out to be useful to the administration of the estate.

Standard's request to be allowed to notify PDG not to make interest payments from the interest reserve is a violation of the loan documents. The purpose of the loan reserve was to assure 114 Direct Lenders that interest would be paid on their loan during the development stage of Standard's project when the project had no cash flow. The termination of interest payments would harm Direct Lenders who, based upon the total lack of evidence to the contrary, have neither knowledge of nor any duty to make additional loans to Standard.

Standard's request to be allowed to join USACM and Capital First to the Florida litigation should be denied. The most obvious reason is that any claim against the Debtors for

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 6 of 9

breach of contract is an unsecured claim which has to be filed and allowed in the Bankruptcy Court. In addition, the loan documents clearly require any such litigation to be brought in Clark County, Nevada, not across the country, in Florida. Finally, the claim appears to be specious as the loan documents clearly state (a) that any additional loan is at the option of the lenders but "not the obligation" of the lenders or USACM and (b) any prior loan commitment obligation was subordinated to the loan documents.

In applying the *Sonnox* factors, the greater weight seems to fall on side for denial of relief.

(1) Relief will not result in a complete resolution of the issues because the Bankruptcy Court will have to decide how to deal with the inevitable cross-claims of the Direct Lenders against the Debtors[3].
(2) The time and expense involved in defending the case and prosecuting the counterclaim will interfere with the Debtors' ability to prosecute of the Chapter 11 case;
(3) The litigation does not involve the Debtors as a fiduciary (Standard's main claim is one for breach of a loan commitment);
(4) No specialized tribunal with the specialized expertise has been established to hear the cause of action;
(5) There is no insurer that has assumed responsibility for defending the litigation;
(6) The action does involve third parties but the main claim is that USACM breached a loan commitment;
(7) Litigation in the Florida court would prejudice the interest of Direct Lenders because (a) it is inconvenient in location, (b) it is not familiar with Nevada law and (c) the Direct Lenders have a belief that USACM has an obligation to represent the Direct Lenders in the litigation[4];
(10) the interests of judicial economy will be served by leaving the stay in place until it is determined if there will be any distribution to holders of unsecured claims against the Debtors whether it be the claims of Standard or the Direct Lenders;
(11) The parties are not ready for trial in the other proceeding (the Florida litigation was filed last month); and
(12) The continuation of the stay gives the Debtor "breathing room" to reorganize and mere deferral of the litigation does not harm Standard as (a) no additional loan can be made by USACM or, most likely, by the Direct Lenders, (b) the parties have not begun any discovery, and (c) Standard has not filed a proof of claim which would give a right to, participate in any distribution to unsecured creditors.

---

[3] The Bankruptcy Court would be the most appropriate court to determine the validity of Direct Lenders' claims against USACM, if any are made.

[4] This is another issue that only the Bankruptcy Court can determine.

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 7 of 9

In applying the *Johnson* factors, the greater weight also seems to fall on the side for denial of relief.

>1. There is no insurance coverage of the damages, no insurer with a duty of defense and the conduct of the defense will impose a financial burden on the Debtors' estates;
>2. Judicial economy does not favor the continuation of the action in another tribunal until there is some determination that a distribution to unsecured creditors will be made and judicial economy does not favor useless litigation in an incorrect forum;
>3. The Florida litigation was filed last month and there has been no showing that investment of resources in trial preparation would be wasted if trial were deferred;
>4. The issues presented are not those to be adjudicated by a specialized tribunal;
>5. The litigation does not involve other non-debtor parties over whom the Bankruptcy Court has jurisdiction (the Direct Lenders), these non-debtor parties will have a cross-claim against the Debtors and full relief can be accorded to all such non-debtor parties only in the Bankruptcy Court;
>6. There has been no showing that Standard has a probability of success of the merits, and in fact, based upon the loan documentation, Standard's claim has been filed in the wrong court and lacks merit;
>7. The interests of the Debtors and the estates would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court (whether these Debtors can be reorganized and whether there will be any distribution to unsecured creditors such as Standard) before the court and the parties address the issue of the forum where the claims and cross-claims against the Debtors are to be fixed and liquidated.

Until we know or at least have some assurance there will be some distribution to unsecured creditors of USACM, lifting the stay would simply require the parties to spend time and money on litigation with no ascertainable purpose. While USACM's Chapter 11 case is in its early stages, management should be concentrating on maximizing the recovery of loans and reorganizing. Litigation diverts resources from those efforts.

/ / /

/ / /

/ / /

/ / /

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 8 of 9

## CONCLUSION

The Motion for Relief from Automatic Stay filed by Standard Property Development should be denied.

Respectfully submitted on August 4, 2006.

          /s/    Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Attorneys for Debtor
and Debtor-in-Possession

P:\USA Commercial Mortgage\Pleadings\Motion to Lift Stay - Standard Property Dev\OPP Motion to Lift Stay-Standard 080406.DOC

Page 9 of 9