1  Thomas J. Allison                                    *E-FILED AUGUST 31, 2006*
   Senior Managing Director
2  Mesirow Financial Interim Management, LLC
   321 North Clark Street
3  Chicago, IL 60610
   Telephone: (312) 595-6200
4  Facsimile: (312) 644-8927
   Email: tallison@mesirowfinancial.com
5  Crisis Managers for the Debtors, Designated
   Chief Restructuring Officer for the Debtors and
6  the Employment of Certain Temporary Employees
7

8                    UNITED STATES BANKRUPTCY COURT
9
                            DISTRICT OF NEVADA
10

11 | In re: | Case No. BK-S-06-10725 LBR |
   | USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
12 | Debtor. | Case No. BK-S-06-10727 LBR |
   | | Case No. BK-S-06-10728 LBR |
13 | In re: | Case No. BK-S-06-10729 LBR |
14 | USA CAPITAL REALITY ADVISORS, LLC, | |
   | Debtor. | Chapter 11 |
15

16 In re:                                 Jointly Administered Under
   USA CAPITAL DIVERSIFIED TRUST DEED      Case No. BK-S-06-10725 LBR
17 FUND, LLC,
                           Debtor.
18                                         **FIRST INTERIM APPLICATION FOR**
   In re:                                  **COMPENSATION AND REIMBURSEMENT**
19 USA CAPITAL FIRST TRUST DEED FUND,      **OF EXPENSES FOR (I) MESIROW**
   LLC,                                    **FINANCIAL INTERIM**
20                                         **MANAGEMENT, LLC AS CRISIS**
                           Debtor.         **MANAGERS FOR THE DEBTORS, AND (II)**
21                                         **THOMAS J. ALLISON OF MESIROW**
   In re:                                  **FINANCIAL INTERIM MANAGEMENT,**
22 USA SECURITIES, LLC,                    **LLC AS CHIEF RESTRUCTURING**
                                           **OFFICER FOR THE DEBTORS AND THE**
23                         Debtor.         **EMPLOYMENT OF CERTAIN**
                                           **TEMPORARY EMPLOYEES FOR THE**
24                                         **PERIOD APRIL 14, 2006 THROUGH JULY**
   Affects:                                **31, 2006**
25 ☒ All Debtors
   ☐ USA Commercial Mortgage Company
26 ☐ USA Securities, LLC
   ☐ USA Capital Realty Advisors, LLC
27 ☐ USA Capital Diversified Trust Deed Fund, LLC
   ☐ USA First Trust Deed Fund, LLC
28

Mesirow Financial Interim Management, LLC ("MFIM"), crisis managers to the above captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), and Thomas J. Allison of MFIM, designated Chief Restructuring Officer of the Debtors (together with certain temporary employees provided by MFIM, the "Applicant") hereby present this first interim application (the "First Interim Application" or the "Application") for: (a) allowance of reasonable interim compensation in the amount of $3,324,284 for 8,198.9 hours of professional services rendered by Applicant on behalf of the Debtors, and (b) reimbursement of $213,812 in actual and necessary expenses and disbursements incurred for the period of April 14, 2006 through July 31, 2006 (the "Application Period"). In addition, the Applicant also seeks payment for services performed on behalf of the Official Committee of Holders of Executory Contract Rights appointed for these cases (the "Direct Lenders Committee") in the amount of $40,114 for 84.0 hours. Thus the Applicant is seeking interim compensation in the amount of $3,364,398 for 8,282.9 hours of professional services rendered and reimbursement of $213,812.00 in actual and necessary expenses and disbursements incurred during the Application Period. This First Interim Application is filed pursuant to 11 U.S.C. §§ 328, 329, 330, 331 and 503, Fed.R.Bankr.P. 2002 and 2106, and the Guidelines of the United States Department of Justice, Office of the United States Trustee (the "Guidelines"). In support of this First Interim Application, MFIM states the following:

## NOTICE

1. A copy of the Application and the Notice of the Application will be served on the United States Trustee at or about the time the Application is filed. Guidelines § 1.1.

2. A copy of the Application and the Notice of the Application will be served upon the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company, the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company, the Official Committee of Security Holders of USA Capital Trust Deed Fund, LLC and the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC (together, "the Committees") at or about the time the Application is filed.

3.      A copy of the Notice of the Application filed in connection with the Application identifying Applicant and the amounts requested, will be served on the Debtors and all identified creditors and parties-in-interest. Fed.R.Bankr.P. 2002(a) and (c)(2).

## BACKGROUND

4.      On April 13, 2006, (the "Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 ("Chapter 11") of the United States Code (the "Bankruptcy Code").

5.      Since the commencement of these cases the Debtors continue to operate their businesses as debtors and debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

6.      This Court has jurisdiction over this motion under 28 U.S.C § 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

7.      The statutory predicate for the relief requested herein is section 363(b) of the Bankruptcy Code.

8.      The Debtors are Nevada corporations with their principal place of business located at 4484 S. Pecos Las Vegas, Nevada. The USA Capital group of companies operates in the commercial mortgage business. Prior to the Petition Date, USA Commercial Mortgage Company ("USACM") primarily was in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein. USACM has not originated or brokered any new loans since the Petition Date. USA Capital Reality Advisors, LLC ("USACRA") is the sole manager of two investment funds, USA Capital First Trust Deed Fund, LLC ("FTDF") and USA Diversified Trust Deed Fund, LLC ("DTDF"). USA Securities, LLC ("USASA") served as a sales agent for the investments. USACM continues to provide servicing for the various loans for FTDF, DTDF and other investors.

9.      Additionally, as of the Petition Date, USACM was the loan servicer for approximately 115 commercial loans having a combined outstanding balance of approximately $962 million (the "Serviced Loans"), most of which were secured by various real estate projects or developments.

10.     There are approximately 3,600 loan investors (the "Direct Lenders") who own

fractional shares of the Serviced Loans and whose names appear as a "Lender" for one or more of the Serviced Loans. Among the Direct Lenders are two of the Debtors, DTDF and FTDF (collectively, the "Funds"). DTDF has approximately 1,900 members and FTDF has approximately 1,300 members.

11. Pursuant to certain orders of this Court respecting the use of cash, USACM has been transferring certain funds from the Collection Account (primarily loan servicing fees) to its operating account for use in administering these cases and in operating the Debtors' business. Since the petition date, MFIM has caused USACM to continue and indeed accelerate its efforts to collect payments owed on the Serviced Loans.

12. On April 13, 2006, the Managers and Boards of Directors of the Debtors executed an agreement with MFIM (the "Agreement") setting forth the terms and conditions for the retention of MFIM as Crisis Managers for the Debtors. The Agreement outlined the designation of Thomas J. Allison as Chief Restructuring Officer for the Debtors (the "CRO") as well as the assignment of other employees of MFIM to assist Mr. Allison as Temporary Employees. Contemporaneously, the Managers and Boards of Directors of the Debtors appointed Mr. Allison as President, Vice-President, Secretary and Manager for the Debtors.

13. On April 14, 2006, the Debtors filed an application (the "Employment Application") for authorization of (i) the employment and retention of MFIM as crisis managers to the Debtors, and (ii) the designation of Thomas J. Allison of MFIM as Chief Restructuring Officer of the Debtors and the employment of certain temporary employees provided by MFIM. On April 14, 2006, Mr. Allison filed a Declaration in Support of the Employment Application (the "Allison Declaration"). On April 19, 2006, this Court entered an order (the "First Interim Employment Order") authorizing the Debtors to (i) the employ and retain MFIM as crisis managers to the Debtors, and (ii) designate Thomas J. Allison of MFIM as Chief Restructuring Officer of the Debtors and the employment of certain temporary employees for an interim period until July 27, 2006, pursuant to a hearing held on April 17, 2006. On August 11, 2006, this Court entered an order (the "Second Interim Employment Order") authorizing the Debtors to (i) the employ and retain MFIM as crisis managers to the Debtors, and (ii) designate Thomas J. Allison of MFIM as Chief Restructuring Officer of the Debtors and the employment of

certain temporary employees for an interim period until October 2, 2006, pursuant to a hearing held on July 25, 2006.    The Employment Application, the Allison Declaration, the First Interim Employment Order and the Second Interim Employment Order state the terms and conditions of MFIM's employment and are incorporated herein by reference.

14.    On May 10, 2006, the United States Trustee appointed the following four Committees for these cases: 1) the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company, 2) the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company, 3) the Official Committee of Security Holders of USA Capital Trust Deed Fund, LLC, and 4) the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC.    Shortly thereafter, the Court approved applications by each of the committees to employ legal counsel and the applications of three of the four committees to employ financial advisors (the Executory Contract Rights Committee has not asked to employ a financial advisor).

## MESIROW FINANCIAL INTERIM MANAGEMENT, LLC QUALIFICATIONS

15.    MFIM is a firm with substantial experience in providing interim management services to financially distressed and troubled companies.    The Debtors selected MFIM because of the firm's diverse experience and extensive knowledge in the field of insolvency and reorganization cases. MFIM is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc., a diversified financial services firm which also offers financial consulting, investment management, insurance services, investment banking and real estate services. The MFIM professionals have extensive knowledge and experience in performing the requisite services, including in connection with bankruptcy cases and restructurings.    MFIM has highly credentialed professionals that including Certified Public Accountants, Certified Financial Analysts, Certified Turnaround Professionals, Certified Insolvency and Restructuring Advisors, Certified Fraud Examiners and numerous other experienced business professionals.  MFIM professionals have provided services in some of the largest and most complex cases in the United States including UAL Corporation, Delta Airlines, Inc., Delphi Corporation, and many other cases.  MFIM professionals are experienced in serving in interim management capacities

1  including the role of Chief Restructuring Officer in many cases. In addition, the MFIM professionals

2  are familiar with the Debtors' businesses and the issues in these cases. As such, MFIM is qualified to

3  perform the work required in these cases. Appendix I lists the experience and qualifications of the

4  MFIM professionals rendering services to the Debtors during the Application Period.

**FEES AND EXPENSES INCURRED DURING THE PERIOD**

**APRIL 14, 2006 THROUGH JULY 31, 2006**

8  16.    This First Interim Application of MFIM for allowance and payment of compensation

9  for professional services rendered in the amount of $3,364,398 for services performed on behalf of

10  the Debtors and Direct Lenders Committee and for reimbursement of actual and necessary expenses

11  in the amount of $213,812. Thus, Applicant seeks to have the Court allow and seeks to be paid by

12  the Debtors is a total amount of $3,578,210. Applicant expended a total of 8,282.9 hours during the

13  Application Period at an average blended hourly rate of approximately $406. Fees and expenses

14  incurred during the Application Period on behalf of each of the Debtors and the Direct Lenders

15  Committee are set up in the table below:

| | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| USA Commercial Mortgage Company | 7,632.1 | $3,084,227 | $213,812 | $3,298,039 |
| USA Capital Realty Advisors, LLC | 41.9 | 14,433 | -0- | 14,433 |
| USA Capital Diversified Trust Deed Fund, LLC | 231.6 | 104,376 | -0- | 104,376 |
| USA Capital First Trust Deed Fund, LLC | 230.8 | 98,861 | -0- | 98,861 |
| USA Securities, LLC | 62.5 | 22,387 | -0- | 22,387 |
| Subtotal | 8,198.9 | 3,324,284 | 213,812 | 3,538,096 |
| Direct Lenders Committee | 84.0 | 40,114 | -0- | 40,114 |
| **Total** | **8,282.9** | **$3,364,398** | **$213,812** | **$3,578,210** |

24  17.    Although certain information in the Application has been presented on a consolidated

25  basis, MFIM understands that fees and expenses will be paid by the Debtor for which such fees and

26  expenses were incurred. This compensation will occur to the extent that the Court approves the

27  Application and that funds are available in each Debtor for the purpose of paying administrative

1  costs.    In addition, the amounts sought in this application include fees incurred on behalf of the

2  Official Committee of Holders of Executory Contract Rights of USA Commercial Mortgage

3  Company. MFIM will await a ruling from the Court as to the source of payment for these fees.

4         18.    The Applicant has made no previous request for compensation.

5         19.    In accordance with paragraph #19 of the Declaration of Thomas J. Allison in support

6  of the Employment Application (the "Declaration"), the Debtors paid a retainer to MFIM for post

7  petition services of $150,000 (the "Retainer").    MFIM intends to apply this Retainer to the final

8  amounts sought and approved for at the end of this Case or such other time as this Court orders.

9         20.    The standard hourly rates charged by professionals providing services in this Chapter

10  11 matter were previously disclosed in the Employment Application (see paragraph #16 in the

11  Declaration) and subsequently approved by the Court in the First Interim Employment Order and

12  Second Interim Employment Order.    The standard hourly rates charged by MFIM for the

13  professionals assigned to this matter are provided below:

|  | Range of Hourly Rates |
|---|---|
| Managing Directors/Senior Managing Directors | $620-$690 |
| Senior Vice Presidents | $530-$590 |
| Vice Presidents | $430-$490 |
| Senior Associates | $330-$390 |
| Associates | $190-$290 |
| Paraprofessionals | $150 |

21         21.    MFIM's time entries are recorded contemporaneously with the rendition of services

22  and are maintained by one-tenth of an hour (0.10 hour) increments.

23         22.    Due to the special circumstance and location of this case, MFIM has not billed for the

24  travel and commuting time its professionals incurred in connection with providing services to the

25  Debtors.  To the extent MFIM professionals were engaged in productive activity (for the benefit of

26  the Debtors) while traveling or commuting, such time was billed.

27         23.    Given the breadth of MFIM's role in this matter, a reasonable amount of time and

28  effort has been invested in the administration and management of the engagement.    Considerable

effort has been expended to ensure that each duty and task performed by MFIM was performed by a professional/paraprofessional who is qualified to render such service and that there was no duplication of efforts among MFIM personnel or between MFIM personnel and those of the Debtors' other professional advisors.  MFIM professionals have delegated responsibility (where appropriate) to utilize the services of professionals/paraprofessionals who bill at lower hourly rates.  MFIM is of the opinion that there has been no duplication of time or effort amongst its personnel.

24.    In circumstances where more than one person may have attended a client meeting or participated in a teleconference, such participation was required as a result of the different projects involved and/or differing expertise of the persons participating.  Other meetings or discussions may have been required as a result of a primary engagement person obtaining specialized data or information from someone not otherwise assigned to the engagement or as a result of having a more senior person review the work product of a more junior person.  In all cases, such attendance at meetings and/or review of work product was not a duplication of effort, but was necessary to adequately represent the interests of the Debtors' estate.

25.    Fees and expenses for which MFIM seeks payment, as outlined in this First Interim Application, are believed to comply with the Guidelines unless specifically noted otherwise.  The compensation MFIM seeks is reasonable and is for actual and necessary services rendered.  The types of services performed by MFIM were previously approved by the Court through its Employment Order.  MFIM believes that all of the services performed by its professionals/paraprofessionals have been beneficial to the Debtors' estate, as well as to the interested parties to these proceedings, and have substantially contributed to the cases.  All expenses incurred by MFIM were necessarily incurred.  The Application includes allocations for fees incurred during activities benefiting several of the Debtors or the Direct Lender Committee. In those instances, the activity description notes contained in Exhibits to this application indicate that fees have been equally divided and assessed to each entity.

26.    There is no agreement or understanding between MFIM and any other person, other than the members, associates and employees of MFIM, for the sharing of compensation received, or to be received, for services rendered in connection with this matter.

27.     MFIM has not entered into any agreement, expressed or implied, with any parties-in-interest to the cases (other than the Debtors), for the purpose of fixing the fees or other compensation to be paid to MFIM for services rendered to the Debtors.

28.     The policies employed by MFIM for seeking reimbursement for out-of-pocket expenses are as follows:

a.     **Airfare** - Costs incurred (if any) by personnel when traveling to/from other cities on behalf of the Debtor were incorporated into this First Interim Application.  To the extent any MFIM professional flew first class or business class, the incremental cost of such service upgrade has not been incorporated into the amounts being sought for reimbursement;

b.     **Lodging** - Lodging and related costs, to the extent incurred by personnel while rendering services in connection with this Chapter 11 matter, were incorporated into this First Interim Application;

c.     **Transportation** – Expenses incurred by MFIM professionals for local transportation while outside of their home cities were incorporated into this First Interim Application.  Such costs consist primarily of rental car fees shared among two or three people to the extent possible and taxi-cab fares to and from the Debtor's offices.  In addition, reimbursement is sought for ground transportation to and from airports associated with air travel by MFIM professionals from other cities.  Reimbursement of taxi-cab fares for reasons other than transportation to the office during the engagement (dinner in the evening, etc.) are not being sought in this application;

d.     **Parking** - Parking expenses incurred by MFIM personnel as a result of travel on client matters is reimbursed to MFIM personnel.  Costs related to parking at airports while traveling out of town on client matters are also incorporated herein for reimbursement;

e.     **Out of Town Meals** – Costs incurred by MFIM professionals for dinners while traveling outside of their home cities (on matters related to these

1           Chapter 11 cases) are incorporated into this First Interim Application. MFIM

2           has not sought reimbursement for "luxury meals" in this First Interim

3           Application (the costs of all dinners were limited to $60 per person). Also,

4           MFIM has not sought reimbursement for breakfasts or lunches for MFIM

5           professionals while traveling outside of their home cities;

6      f.      **Communication/Telephone** – MFIM is not seeking the reimbursement for

7           costs associated with necessary long distance and wireless phone calls

8           directly related to this matter;

9      g.     **Postage/Overnight Mail/Couriers** - Costs incurred in connection with

10          same-day and over-night courier and delivery services (for materials directly

11          related to this matter) were incorporated into this First Interim Application.

12          MFIM has not sought reimbursement for costs associated with first-class

13          postage incurred in the normal course of its activities in this matter.

14          However, postage costs incurred in connection with the required servicing of

15          notices and other documents filed with the Court may be included herein;

16          and,

17      h.     **Duplication/Reprographics** - To the extent incurred, charges for

18          photocopying jobs performed by a third party were charged at the cost of

19          such services.

20     29.    Attached as Exhibit A1 hereto are the names, titles, hourly rates, and a summary of

21 hours charged and the total compensation sought for the professionals whose services are being billed

22 during the Application Period in connection with USACM. Attached as Exhibit B1 hereto is a

23 summary schedule of hours and fees incurred by category of services in connection with USACM.

24 Attached as Exhibits C1-A through C1-V are the detailed daily descriptions of services rendered by

25 each professional in connection with USACM during the Application Period, including the hours

26 incurred with respect to each task and the resultant fees.

27     30.    Attached as Exhibit A2 hereto are the names, titles, hourly rates, and a summary of

28 hours charged and the total compensation sought for the professionals whose services are being billed

during the Application Period in connection with USACRA. Attached as Exhibit B2 hereto is a summary schedule of hours and fees incurred by category of services in connection with USACRA. Attached as Exhibits C2-A through C2-D are the detailed daily descriptions of services rendered by each professional in connection with USACRA during the Application Period, including the hours incurred with respect to each task and the resultant fees.

31.    Attached as Exhibit A3 hereto are the names, titles, hourly rates, and a summary of hours charged and the total compensation sought for the professionals whose services are being billed during the Application Period in connection with DTDF. Attached as Exhibit B3 hereto is a summary schedule of hours and fees incurred by category of services in connection with DTDF. Attached as Exhibits C3-A through C3-M are the detailed daily descriptions of services rendered by each professional in connection with DTDF during the Application Period, including the hours incurred with respect to each task and the resultant fees.

32.    Attached as Exhibit A4 hereto are the names, titles, hourly rates, and a summary of hours charged and the total compensation sought for the professionals whose services are being billed during the Application Period in connection with FTDF. Attached as Exhibit B4 hereto is a summary schedule of hours and fees incurred by category of services in connection with FTDF. Attached as Exhibits C4-A through C4-L are the detailed daily descriptions of services rendered by each professional in connection with FTDF during the Application Period, including the hours incurred with respect to each task and the resultant fees.

33.    Attached as Exhibit A5 hereto are the names, titles, hourly rates, and a summary of hours charged and the total compensation sought for the professionals whose services are being billed during the Application Period in connection with USASA. Attached as Exhibit B5 hereto is a summary schedule of hours and fees incurred by category of services in connection with USASA. Attached as Exhibits C5-A through C5-D are the detailed daily descriptions of services rendered by each professional in connection with USASA during the Application Period, including the hours incurred with respect to each task and the resultant fees.

34.    Attached as Exhibit A6 hereto are the names, titles, hourly rates, and a summary of hours charged and the total compensation sought for the professionals whose services are being billed

during the Application Period in connection with the Direct Lenders Committee. Attached as Exhibit B6 hereto is a summary schedule of hours and fees incurred by category of services in connection with the Direct Lenders Committee. Attached as Exhibit C6-A are the detailed daily descriptions of services rendered by each professional in connection with the Direct Lenders Committee during the Application Period, including the hours incurred with respect to each task and the resultant fees.

35.    Attached as Exhibit D hereto is a summary schedule of actual and necessary expenses incurred during the Application Period.

36.    Attached as Exhibit E is a detailed description of the actual and necessary expenses incurred during the Application Period.

## SUMMARY OF SERVICES PROVIDED

37.    The following is a summary of the categories used to identify the professional services rendered by MFIM during the period April 14, 2006 to July 31, 2006. These descriptions are separated into the following matters:

*Analyzing/Evaluating Restructuring Alternatives*

MFIM conducted a review of the Debtors' business, business environment and current strategic position to identify potential alternatives for restructuring. As a part of this review, each alternative was evaluated for implementation risks, likely outcomes and other meaningful parameters. During the Application Period, services provided under this category focused on the sale of all or significant portions of the Debtors' businesses and assets.

MFIM's efforts in this regard benefited the Debtors by identifying alternatives to restructure the Debtors thereby attempting to maximize the return to the creditors and other constituencies of these cases.

MFIM incurred a total of 176.0 hours and $94,381 of fees with regard to Analyzing/Evaluating Restructuring Alternatives during the Application Period.

*Bankruptcy Motions/Filings*

MFIM planned, reviewed and analyzed first day motions with the Debtors' counsel. In support of these pleadings, we prepared fact sets for first day motions and subsequent motions including the continued use of cash, the motion to hold funds and the motion to disburse funds. MFIM reviewed and analyzed objections to motions so that we were able to prepare documentation and fact sets for replies from counsel. In addition, we researched and prepared documentation requested by U.S. Trustee's office.

MFIM's efforts in this regard benefited the Debtors by moving the bankruptcy cases forward in a timely manner and allowing the Debtors to perform certain functions necessary to maintain the business as a going concern during the cases.

MFIM incurred a total of 165.3 hours and $97,137 of fees with regard to Bankruptcy Motions/Filings during the Application Period.

*Bankruptcy Schedules and SOFA's*

As part of our support of the Debtors' management, MFIM provided assistance with the preparation and review of the Schedules of Assets and Liabilities and Statement of Financial Affairs of each Debtor. We facilitated and participated in meetings and discussions with Debtors' management, employees, and counsel to facilitate the compilation of the Schedules and Statement of Financial Affairs. In addition, we analyzed the Debtors' financial statements and records to identify data to be filed on the Schedules and Statement of Financial Affairs.

MFIM's efforts in this regard benefited the Debtors by filing the requisite schedules and statements and thus providing information relating to the Debtors' operations and financial affairs to interested parties in the cases.

MFIM incurred a total of 359.1 hours and $133,089 of fees with regard to Bankruptcy Schedules and SOFA's during the Application Period.

*Case Administration*

Case administration involved implementation of efficient project management and administration of the overall case activities. Specific tasks related to coordination of meetings with parties-of-interest, document management, preparation of budgets and work plans, review of confidentiality agreements, and review of general case filings and press articles. MFIM assisted the Debtors to establish a methodology for responding to questions from borrowers and investors. In addition, we assisted the Debtors with the creation and review of mailing lists for noticing. Finally, we prepared documents for discussions with U.S. Trustee.

MFIM's efforts in this regard benefited the Debtors by facilitating the efficient management of the businesses and the cases.

MFIM incurred a total of 182.3 hours and $75,744 of fees with regard to Case Administration during the Application Period.

*Cash Flow Analysis & Monitoring*

MFIM prepared, reviewed, and analyzed weekly cash forecasts for each of the Debtors. We participated in weekly meetings with the Debtors to identify payments to be made for the week, analyzed cash balances, analyzed forecasting assumptions and methodology in connection with cash flow forecasting and prepared sensitivity analyses.

MFIM's efforts in this regard benefited the Debtors by: 1) establishing a framework for forecasting the Debtors' cash flows, 2) increasing the understanding of the Debtors' cash needs and 3) managing cash disbursements of the Debtors. These outcomes have minimized the financial resources required for administration of the cases and operation of the Debtors.

MFIM incurred a total of 152.6 hours and $74,622 of fees with regard to Cash Flow Analysis & Monitoring during the Application Period.

*Committee Issues and Requests*

MFIM responded to questions and requests from constituents of the four committees appointed in this case,including counsel, financial advisors and individual committee members; MFIM prepared and presented financial and operating information designed to assist the committees' analysis and assessment of Debtors' financial condition, operations, and transactions. We also met with the individual committees and/or their advisors as requested on an ongoing basis.

MFIM's efforts in this regard benefited the Debtors by providing information to each committee appointed in the cases so that they could perform analyses and make decisions to benefit their constituencies.

MFIM incurred a total of 543.1 hours and $241,001 of fees with regard to Committee Issues and Requests during the Application Period.

*Company Administration*

MFIM has assisted and advised the Debtors' management with issues related to operating the ongoing business. Specific issues addressed during this period include administration of cash management systems, issues related to corporate insurance coverage, review of the impact of certain bankruptcy issues on the Debtors' operations, systems, and employee benefits.

MFIM's efforts in this regard benefited the Debtors by allowing them to continue efficiently as going concerns.

MFIM incurred a total of 31.3 hours and $18,761 of fees with regard to Company Administration during the Application Period.

*Court Hearings/Preparation*

During the course of the cases, MFIM has prepared for and attended various court hearings. Preparation consisted of calls and meetings with the Debtors' counsel as well as the production of information and analysis needed for each hearing.

MFIM's efforts in this regard benefited the Debtors by providing declarations and testimony for motions filed by the Debtors and providing information as the Court considered these and other motions presented for the cases. MFIM's participation allowed the Court and other constituencies of the cases to efficiently administer and consider these issues.

MFIM incurred a total of 176.0 hours and $98,714 of fees with regard to Court Hearings/Preparation during the Application Period.

## *DIP Financing / Cash Collateral*

MFIM has solicited proposals for Debtor in Possession ("DIP") financing. This funding was deemed necessary to provide funding to allow the Debtors to pay their operating and administrative expenses and to manage cash resources allowing the Debtors the flexibility to consider restructuring alternatives. Furthermore, additional funding was needed by projects for certain of the loans. MFIM assisted with preparation and distribution of financial and operational information for review by potential lenders. We responded to questions arising from due diligence activities of potential lenders and assisted with negotiations of borrowing terms and conditions and analysis of proposals received.

MFIM's efforts in this regard benefited the Debtors by identifying sources of funds to allow the entities as going concerns and allow for the completion of the cases to a plan of reorganization. In addition, these efforts lead to a set of third parties interested in bidding on the Debtors thereby making that process more efficient.

MFIM incurred a total of 129.7 hours and $72,042 of fees with regard to DIP Financing/Cash Collateral during the Application Period.

## *Disclosure Statement/Plan of Reorganization*

Activities for this category included the initial development of the plan of reorganization and disclosure statement as well as the review of information received from counsel relating to the construction of these documents

MFIM's efforts in this regard benefited the Debtors by timely initiating the process for the description of and approval for the Debtors' reorganization and exit from this proceeding.

MFIM incurred a total of 13.8 hours and $8,703 of fees with regard to Disclosure Statement/Plan of Reorganization during the Application Period.

## *Employment/Fee Applications*

MFIM prepared monthly statements and the Application as required in order to comply with the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Procedures for Interim Compensation and other guidelines governing the payment of professionals in these cases.

As a result of MFIM's efforts relating to the monthly statement and application processes, the creditors, UST, the Court and other parties-of-interest are aware of the work performed, fees generated and expenses incurred by MFIM.

MFIM incurred a total of 119.9 hours and $18,690 of fees with regard to Employment/Fee Applications during the Application Period.

*Financial Analyses*

During the Application Period, MFIM analyzed and summarized the status of the loans serviced by USACM. We calculated the fees due to USACM under its loan servicing agreements. MFIM analyzed the Debtors' historical financial transactions. In addition, we analyzed variances between actual performance and budget. MFIM prepared statements for the investors in each loan in the portfolio.

MFIM's efforts in this regard benefited the Debtors by allowing for a better understanding of historical and current financial and operating performance as well as the changing status of the loan portfolio. This knowledge has allowed the Debtors and other parties-of-interest in the cases to make decisions and to take actions to maximize the return to all constituencies.

MFIM incurred a total of 592.2 hours and $246,990 of fees with regard to Financial Analyses during the Application Period.

*Forensic Loan Accounting*

During the initial investigation, MFIM established that the internally developed loan servicing system was subject to error and mishandling of data. MFIM researched the source documentation including bank records, loan documentation, assignments of ownership and other related data to reconstruct the proper accounting for each current loan. A detailed analysis of each loan was constructed by MFIM including the initial funding from the Lenders, the initial funding to the Borrower, and each subsequent transaction including accruals of interest, transfers of ownership, payments of principal or interest by the Borrower, and additional fundings. MFIM is also investigated the transfer of funds between related party entities, including tracing the cash disbursements to related parties.

This work has allowed for an accurate understanding of the status of each loan and investor which allowed a distribution to investors during August, 2006 of money collected by USACM.

MFIM incurred a total of 4,156.0 hours and $1,528,168 of fees with regard to Forensic Loan Accounting during the Application Period.

*Investor Issues and Requests*

Activities for Investor Issues and Requests included researching and replying to investor inquiries regarding their accounts. MFIM responded to inquiries about their statements, their accounts and their loan portfolios.

MFIM's efforts in this regard benefited the Debtors by increasing the information to investors and thereby increasing understanding of their understanding of the case.

MFIM incurred a total of 48.9 hours and $14,575 of fees with regard to Investor Issues and Requests during the Application Period.

*Leases, Executory Contracts and Agreements*

MFIM located and identified the Debtors' leases and executory contracts. We performed various analyses of executory contracts and related cure amounts and estimated/calculated lease rejection damages in association with certain lease agreements. In certain instances, we identified contracts for rejection including contracts signed for the benefit of related parties and prepared analyses pertaining to the Debtors' motion to reject certain leases.

MFIM's efforts in this regard benefited the Debtors by allowing for the identification and rejection of contracts not needed for the efficient operation of the Debtors.

MFIM incurred a total of 387.4 hours and $83,762 of fees with regard to Leases, Executory Contracts and Agreements during the Application Period.

*Liquidation Analysis*

MFIM prepared initial liquidation assessments of assets for each of the Debtors. Our process included discussions with management and review of existing appraisals as well as the utilization of our business judgment.

MFIM's efforts in this regard benefited the Debtors by providing an assessment of one potential outcome for the cases. This assessment is useful for comparison with other alternatives as well as required as part of the Disclosure Statement.

MFIM incurred a total of 21.9 hours and $11,896 of fees with regard to Liquidation Analysis during the Application Period.

*Loan Portfolio*

MFIM assisted USACM with the management of loans as Servicing Agent. We calculated default interest and assisted in the preparation of demand letters for borrowers. After reviewing and analyzing settlement proposals and other pertinent information, we engaged in settlement discussions with borrowers. MFIM examined various characteristics of loan documentation and the supporting collateral for the loan portfolio.

MFIM's efforts in this regard benefited the Debtors by facilitating maximum recovery of principal, interest and fees due from borrowers.

MFIM incurred a total of 462.5 hours and $238,302 of fees with regard to Loan Portfolio during the Application Period.

*Management of the Estates by CEO/CRO*

In conjunction with the bankruptcy filings, Tom Allison was retained by the Debtors as Chief Restructuring Officer and was also appointed President, Vice President, Secretary and Manager. In his role, Mr. Allison has many ongoing management responsibilities including but not limited to

development and implementation of case management strategies; organization, management and communications with Debtors' professionals, management team and other parties of interest in the cases; analysis as Loan Servicer; and generally determination of for the various course of action undertaken by the Debtors to maximize the values of the Estates.

MFIM's efforts in this regard benefited the Debtors by utilizing Mr. Allison's experience to manage the business and the myriad of bankruptcy related issues in an efficient manner.

MFIM incurred a total of 245.9 hours and $159,835 of fees with regard to Management of the Estates by CEO/CRO during the Application Period.

*Meetings/Teleconferences*

During the period, MFIM participated in conference calls and meetings with the Debtors, Debtors' Counsel, and other significant parties of interest regarding multiple issues, topics, preparation of interim reports and various other analyses. These meetings and discussions with the Debtors, Debtors' Counsel and other significant parties of interest were in conjunction with regular communications with the Debtors' counsel are essential to effectively communicating analyses, reports and other relevant information on a real-time basis and enabling the Debtors to evaluate issues and make informed decisions in this cases.

As a result of these interactions, MFIM was able to efficiently respond to and management various efforts on behalf of the Debtors.

MFIM incurred a total of 59.7 hours and $37,728 of fees with regard to Meetings/Teleconferences during the Application Period.

*Monthly Operating Reports*

MFIM assisted the Debtors by reviewing, analyzing and preparing various information included in the monthly operating reports
.

MFIM's efforts in this regard benefited the Debtors by providing information relating to the Debtors to interested parties in the cases as required by the bankruptcy code.

MFIM incurred a total of 62.2 hours and $23,982 of fees with regard to Monthly Operating Reports during the Application Period.

*Strategic Management*

MFIM prepared analyses and assisted the Debtors with decisions to right size the business to operate efficiently during these proceedings. We also assisted with analyzing the Debtors relationship with companies owned by the equity holders of USACM. This assistance included the negotiation and execution of a security agreement with USA Investment Partners in support of the amounts it owes to USACM.

MFIM's efforts in this regard benefited the Debtors by sustaining and maximizing their value so that potential recovery is increased to creditors and other parties-of-interest in the cases.

MFIM incurred a total of 65.3 hours and $37,763 of fees with regard to Strategic Management during the Application Period.

### *Valuation Analyses / Appraisal*

MFIM performed various assessments of the value of the assets belonging to the estates as well as the value of assets serving as collateral for the loan for which USACM serves as Loan Servicer.  Tasks included the retention of an appraisal firm, support of that firm's activities as well as review of their appraisal reports.

MFIM's efforts in this regard benefited the Debtors by providing a source of updated and reliable information used for making decisions related to disposition or, in the case of loans serviced by USACM, settlement negotiations.

MFIM incurred a total of 131.8 hours and $48,513 of fees with regard to Valuation Analyses / Appraisal during the Application Period.

| | | |
|---|---|---|
| **Total Hours and Fees** | **8,282.9** | **$ 3,364,398** |

## CASE ACHIEVMENTS TO DATE

38.    During the Application Period, the Applicant has achieved the following significant results on behalf of the Debtors:

### *Debtors' Use of Cash*

If the Debtors were not able to use the cash in the Debtors' bankruptcy estates, the Debtors would be unable to collect amounts owed from borrowers on outstanding loans and unable to continue other business operations essential in attempting to maximize the return to creditors, direct lenders, and fund members in these bankruptcy cases.  In response to periodic motions made by the Debtors requesting permission to continue using cash for the essential operations and administrative expenses of the Debtors, the Court entered orders on April 19, May 9, May 22, July 25, and during August, 2006, allowing Debtors to continue using cash in the Bankruptcy estates pursuant to proposed cash budgets prepared by MIFM.

### *Motion to Hold Funds*

On May 8, 2006, USACM filed a motion requesting permission to temporarily hold funds pending a determination of the proper recipients.  USACM filed this motion, as directed by the Court, to obtain permission from the Court to continue holding funds in USACM's loan servicing collection account

until USACM could complete its review and restatement of the Debtors' loan servicing records. After considering all of the responses and oppositions to the motion were filed, the Court granted USACM's motion in an order entered July 7, 2006. Although the Court approved USACM's request to continue to hold the funds temporarily, the Court did not make any rulings respecting the rights of any party to the funds that were being held.

_Construction of Loan General Ledgers_

Thomas J. Allison and MFIM investigated the allegations of improper accounting for the Serviced Loans to reconstruct the books and records of the loan portfolio in order to properly account for the payments and disbursements made with respect to each loan in the portfolio. The reconstruction effort focused on accounting for each loan on a separate basis. This effort necessarily included an analysis of the position of each Direct Lender in each specific loan. Under Thomas Allison's direction, USACM prepared a Loan Summary as of the Petition Date containing various data respecting approximately 115 loans that constitute the Serviced Loans. To obtain the information necessary for the Loan Summary, as well as for the Debtors' Schedules and Statement of Financial Affairs, and the Direct Lender Statements prepared as of the Petition Date, it was first necessary to obtain, analyze and reconstruct the loan data. This process began with analyzing the existing USACM database containing data from 2004-2006. As of the Petition Date, USACM's loan servicing database contained substantial errors, including but not limited to the following: (a) some borrower payments were not entered into the system; (b) most interest payments from borrowers were not posted in a timely manner; (c) payments were not applied according to the governing loan documents, which indicate that payments are applied first to outstanding interest, then principal; (d) the amount of interest owed by borrowers was not calculated with correct days or correct amount of principal owing; (e) check numbers used were not in sequence or were used multiple times; and (f) servicing fees were not charged, or were calculated incorrectly using an interest rate "spread" rather than the loan service fee allowed pursuant to the Servicing Agreements signed by each Direct Lender. The research of USACM's books and records also revealed that the historical data prior to 2004 were kept in Access or Excel electronic files that were overwritten as they were updated, leaving no historical or audit trail. In addition, there was no reliable system for tracking the numerous assignments in and out of various loans. Thus, in order to reconstruct the accounting for each loan, it was necessary to review and analyze the source documentation of Direct Lenders' deposits of investment funds, fundings to the borrowers, and assignments of Direct Lenders in or out of a loan. Bank deposits, deposit or clear dates from bank statements, and Assignments were reviewed and documented. A Loan Ledger was prepared for each of the Serviced Loans using the source data and the applying the correct interest rate and days outstanding, applying payments first to outstanding interest then to principal, correcting to use actual dates for the receipt of interest payments, calculating the amount of unpaid interest owed to Direct Lenders as the promissory note interest rate less the 1% loan servicing fee allowed under the Servicing Agreements, tracking assignments in and out of various loans, and recharacterizing payments made to Direct Lenders on a particular loan after the borrower had repaid the loan as principal repayments, not interest payments (because interest was no longer due from the borrower).

*Debtors' Bankruptcy Statements and Schedules*

On June 15, 2006, each of the Debtors filed its Statement of Financial Affairs and its Schedules of Assets and Liabilities, as required by the Bankruptcy Code, and on June 23, 2006, certain amendments to the Statements and Schedules were filed. Given the pre-petition loan servicing irregularities and problems with the Debtors' accounting records, the preparation and filing of the Statements and Schedules represented a major effort by the Debtors and MFIM.

*Investor Statements Mailed to All Direct Lenders and Fund Members*

Although not filed with the Court, Investor Statements were prepared and mailed to all direct lenders and fund members on July 10, 2006, and this was another major milestone in the Debtors' cases. After completing the accounting investigations and restatements necessary to produce and file the Statements and Schedules, the Debtors were then able to prepare and mail Investor Statements for each Direct Lender indicating their positions with respect to each loan in which they had an interest as of the Petition Date. Investor Statements were also prepared and mailed for the Fund Members indicating their respective interests in each of the two Funds. Shortly thereafter, the Debtors were able to able to update the loan accounting records for each Direct Lender through June 30, 2006, and updated Investor Statements were mailed out on July 27, 2006.

*$64 Million Distribution Approved by Court and Mailed to Investors in August*

One of the primary goals of Debtors was to distribute to investors, as promptly as possible after the initial accounting work and reconstruction of the loan records was completed, a significant portion of the funds USACM had collected and was holding. The Applicant's reconstruction of the loan ledgers and subsequent investor statement analyses during the Application Period (resulting in accurate and reliable information) made this distribution possible.

*Collection Efforts*

USACM, as directed by Mr. Allison and assisted by MFIM, has also focused its efforts on collecting the loans in the portfolio. USACM determined that there were loans past maturity as well as loans with uncollected interest. A team consisting of USACM staff and MFIM staff has worked diligently to collect the monies due the Direct Lenders, including the Funds. As of July 31, the team has collected $103 million, consisting of $13 million in past due interest, $75 million in principal, and $15 million in current interest. In addition, MFIM will continue to diligently pursue past due and delinquent and anticipates continuing success in collecting significant amounts for the benefit of the investors in the loans serviced by USACM.

*Identification of Potential DIP Lenders*

MFIM worked diligently to locate a source for funding for the Debtors in this case. To that end, we spoke to a large number of potential lenders and executed confidentiality agreements with eight of those firms. We supported the potential lenders' due diligence efforts and negotiated terms for the

financing. These efforts resulted in the receipt of two commitment letters which were presented in separate motions to the court.

*Sales Process*

The Applicant conducted an extensive sales process in an effort to provide a viable restructuring alternative for the Debtors. We identified well qualified bidders and executed confidentiality agreements with fourteen potential purchasers. As part of the process, we responded to extensive due diligence requests from the fourteen potential bidders through the production of information, participation in presentations and discussions as well as facilitation of communications with borrowers and other parties-in-interest. We initiated a process that which allowed for evaluating and comparing preliminary bids. These efforts resulted in a vibrant solicitation process which introduced a sale alternative as part of a reorganization for consideration by the Debtors and creditors of the estates.

## CONCLUSION

39.     As outlined herein, MFIM believes its efforts have facilitated and will continue to facilitate the Debtors' efforts to bring about a resolution to this matter in a manner which maximizes the value of the Debtors. Accordingly, the MFIM believes its services have been, and will continue to be, beneficial to the Debtors' estate and the various interested parties, thereby satisfying the requirements provided by Bankruptcy Code §330-331.

WHEREFORE, MFIM prays for an Order Awarding Interim Compensation in the total amount of $3,364,398 representing fees incurred during the period from April 14, 2006 through July 31, 2006 in the amount of $213,812 and actual and necessary expenses incurred during the same time period totaling $3,578,210.

DATED:      August 31, 2006.

Respectfully submitted

Thomas A. Allison
Senior Managing Director
Mesirow Financial Interim Management, LLC
Chicago, IL 60610