LEWIS
AND
ROCA
LLP
L A W Y E R S

Efiled on 9/1/06

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona  85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5311

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Attorneys for Official Unsecured Creditors' Committee for USA
Commercial Mortgage Company

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** | Jointly Administered |
| **USA Commercial Mortgage Company** <br> **06-10725 – Lead Case** | Chapter 11 Cases |
| **USA Capital Realty Advisors, LLC** <br> **06-10726** | Judge Linda B. Riegle Presiding |
| **USA Capital Diversified Trust Deed Fund, LLC** <br> **06-10728** | **Motion to Amend Debtor's Protocol for Continuing Distributions and Interim Holdbacks** |
| **USA Capital First Trust Deed Fund, LLC** <br> **06-10728** | Date:           September 13, 2006 <br> Time:           9:30 a.m. <br> **Affecting:** <br> ☐ All Cases |
| **USA Securities, LLC** <br> **06-10729** <br>                                  **Debtors.** | **or Only:** <br> ☒ USA Commercial Mortgage Company <br> ☐ USA Capital Realty Advisors, LLC <br> ☒ USA Capital Diversified Trust Deed Fund, LLC <br> ☒ USA Capital First Trust Deed Fund, LLC <br> ☐ USA Securities, LLC |

The Official Unsecured Creditors' Committee for USA Commercial Mortgage Company ("Unsecured Committee") moves this Court for approval of an order which grants the request for continuing authority to make payments as requested in the Debtors' Motion To Distribute Funds And To Grant Ordinary Course Releases And Distribute Proceeds  (the "Distribution Motion") [DE 847] and Debtors' Modification to Motion to Distribute Funds and Proposed Procedures for Ongoing Distributions [DE 1203]

LEWIS
AND
ROCA
LLP
L A W Y E R S

("Debtors' Modification"), but which also holds back for resolution by further order of this Court certain amounts for the reasons stated in the Unsecured Committee's Response to Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds [DE 995], which was supported by the Declaration of Edward M. Burr [DE 996] as well as the response to the Distribution Motion filed by the Diversified Fund.

Discussion[1]

In essence, this motion concurs with the Debtors' Modification concerning holdbacks, and adds detail and rationales for continuing to withhold an additional 2% calculated as a servicing fee (resulting in 3% total) pending a determination of entitlement to such amount, and sets a deadline for filing motions to make such determinations. It also spells out how costs of collection tie into the Monthly Interim Distribution computations.

First, the additional 2% Holdback is to be withheld from Monthly Interim Distributions of interest as well as principal, just like the 1% servicing fee. The Debtors have clarified to the committees that was their intent in the Debtors' Modification. The 2% Holdback is calculated on a per annum basis on the remaining principal balance of each Loan, but is payable each month with the rest of the servicing fee. That is in accord with the Loan Servicing Agreement ("LSA") terms, which provide for the "up to 3%" servicing fees to be charged monthly. The Debtors have agreed to review the LSAs to determine which include "up to 3%" terms, and to file a motion by September 30, 2006, asserting entitlement to retain the full 3% on those Loans, so that all parties in interest can brief that issue and the Court can rule on it in the near future.

Second, one rationale for the 2% Holdback is the potential use of part of that money to pay the professional fees and costs of counsel for the Committee of Holders of Executory Contract Rights of USACM ("Direct Lenders Committee"). In cases where there are discrete groups of creditors with conflicting interests, represented by different

---

[1] Any terms used in this Motion as defined terms are either defined in this Motion or in the Distribution Motion or Debtors' Modification.

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

committees, other courts have held that the fees of professionals for the separate

committees are payable from the separate groups' recoveries only.  For example, in the

*Farmland Industries* case, an appellate court upheld a bankruptcy court's order that

professional fees of an unsecured creditors committee's financial advisor would be

payable as an administrative expense, but payable from the recovery to unsecured

creditors, while professional fees of a bondholders committee were payable from the

recovery to the bondholders.  *In re Farmland Industries, Inc.*, 296 B.R. 188 (8th Cir. BAP

2003).

In *Farmland Industries*, the bondholders committee hired professionals under an

agreement to pay them from the bondholder constituents' share of estate funds.  The court

ruled that the unsecured creditors committee's professionals should likewise be paid from

distributions to the unsecured creditors.  The appellate court explained that:

- …"[the financial advisor] is working specifically for the benefit of those creditors, not for the benefit of all creditors or the overall benefit of the bankruptcy estate."

- …"[the financial advisor's fee] was bargained for by the Creditors' Committee on behalf of the general unsecured creditors, that body, and not the general creditor body, should be responsible for paying for any benefits of their bargain."

- "This seems especially fair since there is another group of unsecured creditors, the Bondholders, who will be paying their consultant from their recovery."

- …"although the efforts of [the financial advisor] may produce some benefits for the general creditor body, [its] allegiance is to the Creditors' Committee and its transaction fees are based on what it helps to recover for them."

296 B.R. at 193.

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

Whether some amount, *e.g.* 0.5%, should be charged against all the distributions to direct lenders, including those with a 1% service fee in their LSAs as well as those with LSAs agreeing to a fee of up to 3%, is an issue that will be briefed and decided by the Court shortly. The Court is not asked to decide entitlement to such a surcharge now, but merely to order a holdback until that issue is decided, pursuant to a motion that the Debtors and the Unsecured Committee commit to file by September 30, 2006, and full briefing by other parties and a hearing thereafter.

Third, the Unsecured Committee requests that the order providing for Monthly Interim Distributions clarify that costs of collection charged to Borrowers will include fees and costs of Mesirow and the Debtors' attorneys that are incurred in efforts to collect specific loans. The Unsecured Committee had expected that to be taking place all along, and is troubled by the extent to which fees of Mesirow and Debtors' counsel are being sought from the USACM bankruptcy estate generally, imposing that substantial cost on the unsecured creditors of USACM. One avenue to reduce that burden is to demand that Borrowers pay Mesirow and counsel fees attributable to efforts to collect specific loans. The Debtors have lauded the fact that Mesirow has pressed delinquent Borrowers for collection of loans and succeeded in extracting payments. All parties in interest appreciate those efforts, but the time spent in doing so (compared to time reconstructing records and other tasks not directed to collecting specific loans) should be sought from those Borrowers as part of payment in full, in accordance with Loan documents that require Borrowers to pay costs of collection. The Unsecured Committee is not precluding the Debtors from entering into settlements with Borrowers for less than the full amount due, if that is the best they can accomplish.

Necessarily, the amount attributable to costs of collection will be deducted from the gross proceeds received from Borrowers. The order for ongoing Monthly Interim Distributions should set forth procedures for ensuring that costs of collection are sought,

4

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

and are deducted from the gross proceeds when those costs of collection are paid by the Borrowers.  In those circumstances, there is no change in the amount that would otherwise be payable to the Lenders.  The costs of collection are added to the Borrowers' payoff, and deducted to reimburse the USACM estate for that expense.  When costs of collection are not paid for some reason, however, there is no such deduction.  The Debtors are to provide all of the committees with an accounting for each proposed Loan payoff, showing the detail that will enable the committees to understand what has been done.

To implement these requests, the Unsecured Committee asks that the Monthly Interim Distribution order provide as follows:

Proposed Monthly Interim Distributions Order

To the extent applicable, USA Commercial Mortgage Company ("USACM") is authorized to make an interim distributions on a monthly basis ("Monthly Interim Distribution") to each of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Fund"), USA Capital First Trust Deed Fund, LLC (the "FTD Fund" and, together with Diversified Fund, the "Funds") and each of the other Direct Lenders (collectively, "Lenders" and each a "Lender") as set forth below:

1.    Monthly Interim Distributions to the Lenders (including the Funds) in any given month shall be made from the post-petition collections deposited in the Collection Account that relate to such Lenders' subject Loans for the period through the end of the prior month (the "Subject Month") as calculated by USACM less the amounts set forth below:

1.1.    Fees actually collected from the borrower that consist of (A) USACM's servicing fees (*i.e.*, the 1% servicing fee that the Debtors requested in the Distribution Motion which shall be transferred to the Debtors' operating account) and (B) all other fees and costs charged and collected pursuant to the applicable Loan Servicing Agreement(s) ("LSA") (collectively the "Fee Reduction"), provided that costs of

5

collection charged to and obtained from a borrower in accordance with the underlying loan documentation will be retained by the Debtors and shall not reduce the distribution of principal and interest, less the servicing fee collected pursuant to section (1)(A) of this paragraph, to the applicable Lender;

1.2.    an additional 2% of principal on all payments of Loans collected (calculated on a per annum basis and on the same basis as servicing fees are charged and collected under the LSAs) during the Subject Month (the "2% Holdback"), pending Debtors' review of the LSAs to determine whether 1% or up to 3% is authorized to be charged under the applicable LSA, and pending the entry of a Court order(s) that authorizes the Debtors:

1.2.1.    to pay or reimburse the USACM estate for the fees and costs incurred by the professionals of the Committee of Holders of Executory Contract Rights of USACM ("Direct Lenders Committee") from the 2% Holdback (the "Surcharge") on Monthly Interim Distributions to Direct Lenders (but not the Funds); and

1.2.2.    to collect and retain  more than a 1% servicing fee as applicable (the "Additional Servicing Fee"),

after which review and entry of Court orders, the 2% Holdback or a portion thereof will either be transferred to the Debtors' Operating Account as part of its Additional Servicing Fee or Surcharge, as applicable, or released to the applicable Lenders as part of the continuing Monthly Interim Distributions, subject to the procedures set forth herein; provided that, the Debtors shall seek entry of such Court orders on the Surcharge and Additional Servicing Fee by no later than September 30, 2006;

1.3.    the costs of the Hilco appraisals allocated evenly among the projects appraised with such costs to be deducted from the principal collected on a loan by loan basis (the "Hilco Holdback"), and

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1.4.    any remaining amounts that each Lender received pre-petition from USA on non-performing loans (the "Offsets"), as reflected by the sum of the amounts to be remitted by USA {due from the Lender} as shown on the Direct Lender Statements prepared for each Lender by account number for the month in question.[2]

2.    Not later than the 25th day of the month after a month's end (except that for July 2006, collections, the scheduled distribution date shall be not later than September 25, 2006),

2.1.    Debtors shall distribute to a designated representative for each of the four Official Committees appointed in these cases (collectively, the "Reviewing Parties") a schedule (the "Schedule") that contains the following information:

2.1.1.  the post-petition collections deposited in the Collection Account during the Subject Month, separately identifying principal, interest, fees and costs of collection paid,

2.1.2.  the identity and corresponding principal amount of the Loans that were fully paid off post-petition during the Subject Month,

2.1.3.  the amount of the 2% Holdback,

2.1.4.  the amount of the Hilco Holdback, and

2.1.5.  the amount of the net Offsets to be held back by USACM.

2.2.    Each Reviewing Party shall have seven (7) business days to review the Schedule (the "Objection Deadline").  If none of the Reviewing Parties object as provided in paragraph 2.2.1 below, USACM shall proceed in making the Monthly Interim Distribution as set forth herein.

2.2.1.  In the event a Reviewing Party determines that the Monthly Interim Distribution and/or Schedule is inappropriate or inaccurate, or that the numbers or

---

[2] For example, if a particular Lender invested in five different loans under a single vesting name, the amounts (which may be positive or negative) shown on Line 12 of each of the five Lender Statements for that vesting name will be netted together and the resulting amount, if positive, will be available for distribution to the Lender.

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

calculations are incorrect, such Reviewing Party, on or before the Objection Deadline, shall send a writing to the Debtors, and the other Reviewing Parties setting forth the precise nature of the objection and the amount at issue (the "Objection"). Thereafter, the objecting party and the Debtors shall meet and confer in an attempt to reach an agreement regarding the Objection. If an agreement cannot be reached or if no meeting or conference takes place within five (5) business days of the Objection Deadline, any Reviewing Party may file a motion with the Court to have the dispute heard at the next omnibus hearing date that is at least ten (10) business days after the date such motion is filed.[3] In addition, if an agreement is reached regarding an Objection, the parties to the Objection shall submit an explanation of the resolution to the other Reviewing Parties.

3.      Debtors' professionals will review their time and expense records for the period through July and thereafter and identify time and expense incurred in collecting specific Loans. The time and expense incurred in collecting Loans will be allocated on a Loan-by-Loan basis. Where time and expense incurred in collecting Loans is related to more than one borrower, such time and expense will be allocated on a reasonable basis. The actual amount of such allocated time and expense will be charged to the applicable borrower as a cost of collection in accordance with the underlying loan documentation, and shall be distributed as set forth in paragraph 1.1.

4.      All amounts held back by USACM pursuant to these procedures shall be held and segregated in the Collection Account unless otherwise provided herein, with the rights and legal positions of all parties, including the Debtors or any Lender, reserved in such funds and shall not be further disbursed absent an applicable order of the Court. Such funds held and segregated in the Collection Account shall be deemed to be not commingled.

---

[3] The Debtors and Reviewing Parties, hereby, consent to Objections being heard on shortened time provided that any such hearing is held at least ten (10) business days after the filing of the motion.

8

LEWIS
AND
ROCA
LLP
L A W Y E R S

5.      Upon the FTD Fund receiving its share of the Monthly Interim Distribution, the FTD Fund is hereby authorized, after establishing a reserve that the FTD Fund, Debtor and the FTD Fund Committee deem to be sufficient to pay all accrued administrative expenses through the end of the Subject Month and all scheduled or asserted unsecured claims (excluding any filed proofs of claim that are asserting amounts

5.1.    for equity interests or

5.2.    on behalf of investments by direct lenders in individual loans and deeds of trust),

to distribute remaining available funds to Fund Members of the FTD Fund (the "Monthly FTDF Distribution"), in accordance with the terms of the Second Amended and Restated Operating Agreement of the FTD Fund; provided, however, that any such distribution is without prejudice to the right of any party in interest to claim and assert an interest in such distributed funds.

6.      Upon the Diversified Fund receiving its share of the Monthly Interim Distribution, the Diversified Fund is hereby authorized, after establishing a reserve that the Diversified Fund, Debtor and the Diversified Fund Committee deem to be sufficient to pay all accrued administrative expenses through the end of the Subject Month and all scheduled or asserted unsecured claims (excluding any filed proofs of claim that are asserting amounts

6.1.    for equity interests or

6.2.    on behalf of investments by direct lenders in individual loans and deeds of trust),

to distribute remaining available funds to Fund Members of the Diversified Fund (the "Monthly Diversified Fund Distribution"), in accordance with the terms of the Second Amended and Restated Operating Agreement of the Diversified Fund; provided, however,

9

205896.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1  that any such distribution is without prejudice to the right of any party in interest to claim

2  and assert an interest in such distributed funds.

3         7.    The Monthly Interim Distribution, the Monthly FTDF Distribution and the

4  Monthly Diversified Fund Distribution are made without waiving the rights or claims of

5  any party in interest, including the rights or claims of any Debtor, creditor or Lender in

6  connection with (i) USACM's calculation of the amounts distributed, (ii) USACM's right

7  to collect servicing fees and other fees provided under the LSA's and other applicable

8  agreements and court orders, (iii) USACM's right to net all amounts that may be owed to

9  and from a Lender, (iv) the right or claims discussed in the limited opposition filed by the

10  Diversified Fund Committee (Docket 987); and (v) all other rights and arguments,

11  specifically including, without limiting the foregoing, any rights USACM may have to file

12  a motion with the Court requesting additional holdbacks for foreclosure or other collection

13  costs under the LSA's, and to recover from any Lender to the extent the Lender receives a

14  distribution under any Monthly Interim Distribution that is ultimately determined to be

15  greater than such Lender had a right to receive, and the right of any Lender to recover any

16  amounts from any Offsets which are finally determined to be improper, incorrect or

17  contrary to applicable law.

18         8.    The Monthly Interim Distribution, the Monthly FTDF Distribution and the

19  Monthly Diversified Fund Distribution are preliminary in nature and the payment of such

20  will not finally determine the rights of any party with respect to such distributions.  Any

21  final determination with respect to any Monthly Interim Distribution, Monthly FTDF

22  Distribution or Monthly Diversified Fund Distribution and any Offsets, 2% Holdbacks and

23  Hilco Holdbacks related thereto, including any factual findings and legal rulings, shall be

24  made upon appropriate notice and in such additional proceedings as to be determined by

25  the Court.

26

10

205896.1

L E W I S
AND
R O C A
LLP
L A W Y E R S

Conclusion

The proposed holdbacks and procedures described above have been reached by consensus with negotiations among Debtors, the Unsecured Committee, the Direct Lenders Committee, FTD Fund Committee and Diversified Fund Committee.  The Unsecured Committee believes that the language set forth above satisfies the concerns raised by each of the foregoing parties.  It is possible that there will be some further negotiations or dispute over specific terms before a final form of order is presented to the Court at the hearing on this motion, however.

Dated September 1, 2006.

**LEWIS AND ROCA LLP**

By /s/ RC (#006593)
Susan M. Freeman, AZ 4199 (pro hac vice)
Rob Charles, NV 6593
*Attorneys for Official Unsecured Creditors' Committee for USA Commercial Mortgage Company*

11

205896.1