1

```
 1              UNITED STATES BANKRUPTCY COURT

 2                    DISTRICT OF NEVADA

 3                    LAS VEGAS, NEVADA

 4  In re:  USA COMMERCIAL MORTGAGE     )  AUGUST 4, 2006
    COMPANY,                           )  E-Filed:  09/07/06
 5                                      )
              Debtor.                   )  Case No.
 6                                      )  BK-S-06-10725-LBR
    _____)  Chapter 11
 7

 8                 TRANSCRIPT OF PROCEEDINGS
                            OF
 9        MOTION FOR RELIEF FROM STAY, NO. 863
                           AND
10           MOTION TO DISTRIBUTE FUNDS
        AND TO GRANT ORDINARY-COURSE RELEASES
11         AND DISTRIBUTE PROCEEDS, NO. 847
                           AND
12        MOTION FOR RELIEF FROM STAY, NO. 903
                        VOLUME 1
13        BEFORE THE HONORABLE LINDA B. RIEGLE
             UNITED STATES BANKRUPTCY JUDGE
14
              Wednesday, August 16, 2006
15
                      9:30 a.m.
16

17

18

19

20

21

22

23

24  Court Recorder:        Helen C. Smith

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```

CLINE TRANSCRIPTION SERVICES  (702) 644-1123

2

```
1    APPEARANCES:

2    For the Debtor:            LENARD E. SCHWARTZER, ESQ.
                                Schwartzer & McPherson Law Firm
3                               2850 South Jones Boulevard
                                Suite 1
4                               Las Vegas, Nevada 89146

5                               ANNETTE W. JARVIS, ESQ.
                                Ray, Quinney & Nebeker, P.C.
6                               36 South State 1400
                                Salt Lake City, Utah 84145
7
     For the Official          CANDACE C. CARLYON, ESQ.
8    Committee of Equity        Shea & Carlyon, Ltd.
     Security Holders           233 South Fourth Street
9    of USA Capital            Suite 200
     First Trust Deed Fund,     Las Vegas, Nevada 89101
10   LLC:

11   For the Official          GREGORY E. GARMAN, ESQ.
     Committee of Executory     Gordon & Silver, Ltd.
12   Contract Holders of        3960 Howard Hughes Parkway
     USA Commercial             Ninth Floor
13   Mortgage Company:          Las Vegas, Nevada 89109

14   For Diversified Trust      ANNE M. LORADITCH, ESQ.
     Deed Fund Committee:       Beckley Singleton, Chtd.
15                              530 Las Vegas Boulevard South
                                Las Vegas, Nevada 89101
16
     For Standard Property      ANDREW M. BRUMBY, ESQ.
17   Development, LLC:          Shutts & Bowen, LLP
                                300 South Orange Avenue
18                              Suite 1000
                                Orlando, Florida 32801
19
                                DAVID A. STEPHENS, ESQ.
20                              Stephens, Gourley & Bywater, P.C.
                                3636 North Rancho Drive
21                              Las Vegas, Nevada 89130

22   For the Jones Vargas       JANET L. CHUBB, ESQ.
     Direct Lenders:           Jones Vargas
23                              100 West Liberty
                                Twelfth Floor
24                              Reno, Nevada 89501

25
```

```
 1    APPEARANCES (Cont.):

 2    For Rolland P. Weddell        ELISSA F. CADISH, ESQ.
      and Spectrum Financial        Hale, Lane, Peek, Dennison
 3    Group:                           & Howard
                                    3930 Howard Hughes Parkway
 4                                  Fourth Floor
                                    Las Vegas, Nevada 89109
 5
      For Peter Bolino:             JOHN J. LAXAGUE, ESQ.
 6                                  Cane Clark, LLP
                                    3273 East Warm Springs Road
 7                                  Las Vegas, Nevada 89120

 8    For Don Smith,                M. BEN BATEMAN, ESQ.
      et al.:                       Amarillo, Texas
 9
10    For the Unsecured             ROB CHARLES, JR., ESQ.
      Creditors Committee           Lewis and Roca, LLP
11    of USA Commercial             3993 Howard Hughes Parkway
      Mortgage Company:             Suite 600
12                                  Las Vegas, Nevada 89109

13    For the United States         BARRY H. JENKINS, ESQ.
      Trustee:                      Office of the United States Trustee
14                                  300 Las Vegas Boulevard South
                                    Suite 4300
15                                  Las Vegas, Nevada 89101

16    For Dr. Stanley               ROBERT C. LePOME, ESQ.
      and Others:                   Law Offices of Robert C. LePome
17                                  330 South Third Street
                                    1100-B
18                                  Las Vegas, Nevada 89101

19    Also Present:                 DUSTIN A. JOHNSON

20

21

22

23

24

25
```

4

```
1           (Court convened at 09:43:35 a.m.)
2               THE CLERK:  All rise.  Bankruptcy court is now in
3    session.
4               THE COURT:  Be seated.  Okay.
5       USA Commercial.
6       Appearance, please.
7               MR. SCHWARTZER:  Lenard Schwartzer and
8    Annette Jarvis for the debtors.
9               MS. CARLYON:  Good morning, your Honor.
10   Candace Carlyon of Shea & Carlyon on behalf of the First
11   Trust Deed Fund Committee.
12              MR. GARMAN:  Your Honor, Greg Garman on behalf of
13   the Official Committee of Executory Contract Holders.
14              MS. LORADITCH:  Good morning, your Honor.
15   Anne Loraditch of Beckley Singleton on behalf of Diversified
16   Trust Fund Committee.
17              MR. BRUMBY:  Good morning, your Honor.  My name is
18   Andy Brumby.  I'm with a law firm called Shutts & Bowen in
19   Orlando, Florida.  I'm here on behalf of Standard Property
20   Development, LLC.
21              MR. STEPHENS:  Good morning, your Honor.
22   David Stephens, Standard Property.
23              MS. CHUBB:  Good morning.  Janet Chubb for the
24   Jones Vargas Direct Lenders.
25              MS. CADISH:  Good morning, your Honor.
```

1    Elissa Cadish on behalf of Rolland Weddell and Spectrum

2    Financial Group.

3            MR. LAXAGUE:  Good morning, your Honor.

4    Joe Laxague on behalf of Peter Bolino, one of the individual

5    defendants in the Standard Property Development lawsuit.

6            MR. BATEMAN:  Good morning, your Honor.

7    Ben Bateman on behalf of Don Smith (phonetic), et al.

8        (Colloquy not on the record.)

9            THE COURT RECORDER:  I'm sorry.  Would you spell

10   your last name for the record, please?

11           MR. BATEMAN:  Bateman is B-a-t-e-m-a-n.

12           THE COURT RECORDER:  Thank you.

13           MR. BATEMAN:  Thank you.

14           MR. CHARLES:  Rob Charles from Lewis and Roca.  We

15   represent the Unsecured Creditors Committee.  One of the

16   committee members is a defendant in the Florida lawsuit.

17   Obviously, we do not represent them in that capacity.

18           MR. JENKINS:  Barry Jenkins for the U.S. Trustee.

19           THE COURT:  Okay.  We don't have either of the

20   Fund attorneys here today, right?

21       (Colloquy not on the record.)

22           THE COURT:  Yes.

23           MR. SCHWARTZER:  Yes.  They're --

24           THE COURT:  Oh, Fund.  That's right.

25           MS. CARLYON:  Actually, Ms. Loraditch and I are

1    actual attorneys, your Honor, so --

2              THE COURT:  I'm sorry.  I had you with a different

3    group.

4              MS. CARLYON:  It's been hard to tell.

5              THE COURT:  No.  No.  I keep forgetting that

6    you -- I keep putting you with the hairball committee, the

7    HEI (sic), but Mr. Garman's committee.  I'm sorry.

8         (Colloquy not on the record.)

9              MS. CARLYON:  Oh, yeah.  I feel much better.

10             MR. GARMAN:  Wait now.

11             MS. CARLYON:  Thank you, your Honor.

12             UNIDENTIFIED SPEAKER:  I want to give you a

13   (indiscernible).

14             THE COURT:  The only reason --

15        (Colloquy not on the record.)

16             THE COURT:  The only reason I say that is the

17   initials HE, Holders of Executory --

18             MR. GARMAN:  I gave up and go with direct lenders.

19             UNIDENTIFIED SPEAKER:  HE --

20             THE COURT:  Right.  HEC --

21             UNIDENTIFIED SPEAKER:  HEC, yeah.

22             THE COURT:  Right.  If you try to pronounce that,

23   you get an odd-sounding sound.  That's the only reason I

24   said that.  I apologize.  You're right.

25        The reason I asked was if I take on our status -- and

1    I'm going to have Mr. Schwartzer, of course, give us an

2    overview first.

3        But if I take the motion to distribute first, would

4    that enable you -- do you have any interest in the lift-stay

5    motion such you'd be able to then leave after -- or that.

6    I'm just trying to do order.  I'm trying to conserve your

7    time.

8            MS. CARLYON:  Join us at the adult table,

9    Mr. Garman.

10            THE COURT:  Yeah.

11            MS. CARLYON:  Your Honor, we filed an opposition

12    to the Standard Property lift-stay motion.  We are

13    interested in that one.  I do plan to monitor the entire

14    hearing.

15            THE COURT:  Okay.

16            MS. LORADITCH:  And, your Honor, we did not file

17    any pleadings with --

18            THE COURT RECORDER:  I'm sorry, Counsel.  I need

19    you to speak into a microphone, please.

20            THE COURT:  And it's all right if you're seated.

21        Thank you.

22            MS. LORADITCH:  We did not file.  The Diversified

23    Committee didn't file any pleadings with respect to the stay

24    motions, but I do intend to stay for the duration --

25            THE COURT:  Okay.

1          MS. LORADITCH:  -- so that we can monitor as well.

2          THE COURT:  Okay.  All right.  That's fine.

3          MS. LORADITCH:  Thank you.

4          MR. SCHWARTZER:  Well, good morning, your Honor.

5     On behalf of the debtors, I'd like to report the following:

6     With regard to the motion for relief from stay filed by

7     Standard Property, there is an agreement with Mr. Brumby to

8     continue that to September 28th to allow some time for

9     negotiations.

10         The basic problem Standard Property has is that they

11    have a condominium-conversion project to purchase in

12    first -- a first construction draw were made.

13         And they were looking forward to additional funding

14    which USA Commercial Mortgage at this time can't provide

15    without some arrangements with one finding a source of

16    funding which may be available and, number two, getting some

17    approval from the mortgage-lending division similar to what

18    we did with regard to the Rio Rancho property where we got

19    the Fertitta Enterprises to make the additional loan to

20    complete the construction, and we're going to be working

21    towards a solution; however, we're continuing here, so we're

22    continuing the motion to lift stay until September 28th.

23         There is also an agreement by Mr. Brumby that the

24    individual direct lenders who are currently defendants in

25    the lawsuit filed in Florida will have until October 10th

1    before they have to file any answers.

2        There's also an agreement that if we file a complaint

3    and a motion for a preliminary injunction against the

4    litigation in Florida that we have to give Mr. Brumby

5    25-days' notice.

6        So, for example, if we want that heard on

7    September 28th, we'd have to file it no later than

8    September 3rd I think is the last date because of the

9    weekend, holiday weekend.

10        In addition, we've agreed to provide Standard

11    Properties with an accounting of the funds held in the

12    interest-reserve account in escrow, and we will do that

13    shortly.  I don't recall if there's a time on that.

14            MS. JARVIS:  Next week.

15            MR. SCHWARTZER:  Next week?

16            MS. JARVIS:  Next week.

17            MR. SCHWARTZER:  Next week.  So on that basis, the

18    motion to lift stay regarding Standard Property should be

19    continued to September 28th.

20            THE COURT:  All right.  Thank you.

21            MR. GARMAN:  Yeah.  I --

22            MR. SCHWARTZER:  The next item I --

23            THE COURT:  Wait.

24        Mr. Garman, do you have a --

25            MR. GARMAN:  I have some comments on the Standard

1    motion.

2            THE COURT:  Even though it's going to be

3    continued?

4            MR. GARMAN:  Well, there are a few difficulties

5    from our side.  I think we're 90 percent there.  I don't --

6            THE COURT:  Have you --

7            MR. GARMAN:  -- know --

8            THE COURT:  -- talked about it first?

9            MR. GARMAN:  It was brought up to me five minutes

10   before the hearing.  And until you took the bench, we were

11   talking about, and I think we've worked through most of it.

12           THE COURT:  Oh, all right.

13           MR. GARMAN:  But --

14           THE COURT:  Well, what we'll do is before we do

15   that I'll take a recess at some point, so you can talk about

16   it some more.

17       I mean, I certainly have no problem resolving the

18   issues that need to be resolved, but I don't want to just be

19   the person who sits here while you two negotiate back and

20   forth, so --

21           MR. SCHWARTZER:  The second item I have on the

22   agenda is Mr. LePome's motion on to obtain information, and

23   I noticed a withdrawal of that motion was filed on

24   August 15th, so that should no longer be on calendar.

25           THE COURT:  Okay.  And just as a side note -- and

1   this has really not so much to do with this case, but just

2   the problems that we have with notices of withdrawal, in

3   general.

4        (Colloquy not on the record.)

5        THE COURT:  Among the judges, we were sort of

6   talking yesterday of what do we do when motions are

7   withdrawn, A, on a calendar matter and, B, should they just

8   be taken off.

9        And we basically decided that we're not going to

10  actually withdraw motions from calendars in any case, not

11  just this case, unless somebody files a motion to withdraw

12  before the answer, responsive pleading, is filed or they

13  state in there they have the consent of the opposing party.

14       Again, this is not so much to do with this case.  It

15  happens, oftentimes, for example, on a routine motion for

16  lift stay.

17       Somebody files a motion for relief from stay.  Somebody

18  files an opposition.  24 hours before, they withdraw it.

19  This is after the debtor has spent all this time and money

20  saying you were absolutely wrong, and they agree they're

21  wrong.

22       So this is just sort of just to let you know if anybody

23  wants to take off a motion in the future, and I do

24  appreciate the fact that you let us know, so we don't

25  prepare.

```
 1        But as far as withdrawing motions -- and this is going

 2   to apply to all cases -- if you just file some -- it's sort

 3   of a 7041 issue.

 4        In other words, under 7041, one can't just dismiss a

 5   complaint after an answer's been filed without the consent,

 6   so it will stay on calendar.

 7             MR. SCHWARTZER:  It sounds --

 8             THE COURT:  If --

 9             MR. SCHWARTZER:  It sounds --

10             THE COURT:  If you don't mind it being on

11   calendar, that's not a problem.

12             MR. SCHWARTZER:  It sounds like a new local rule,

13   your Honor --

14             THE COURT:  It is, a new --

15             MR. SCHWARTZER:  -- or --

16             THE COURT:  -- secret --

17             MR. SCHWARTZER:  -- or --

18             THE COURT:  -- local rule.

19             MR. SCHWARTZER:  Oh, it's a secret local rule

20   which we will not allow the out-of-state counsel to know

21   about, your Honor.

22             THE COURT:  That's right.  It's a secret local --

23             MR. SCHWARTZER:  So I'm sure --

24             THE COURT:  But it will still --

25             MR. SCHWARTZER:  -- they will forget it in --
```

1          THE COURT:  It's not a problem --

2          MR. SCHWARTZER:  -- (indiscernible).

3          THE COURT:  -- because it will just stay on

4    calendar, but that will explain why it's on calendar, and,

5    again, we'll be issuing an administrative order, but I

6    appreciate the fact that it's withdrawn.  It's noted it will

7    be withdrawn.  I assume you've consented.

8          MR. SCHWARTZER:  That leaves two things on

9    calendar for this Court.  One is a report with regard to the

10   motion to distribute funds.

11       If the Court recalls, there was an issue with regard to

12   I think approximately $9,000,000 in funds that were in the

13   account on the date of the filing of the petition.

14       And there was a question of whether those funds should

15   be included in the distribution to the direct lenders.

16   Ms. Jarvis will report on that.

17       And then the final thing which is still contested,

18   your Honor, is the motion for relief from stay filed by

19   Rolland Weddell and the Spectrum Financial Group to continue

20   litigation in the United States District Court.

21          THE COURT:  Okay.

22          MR. BRUMBY:  Your Honor, may I approach?

23          THE COURT:  Yes.  Although, I have no problem with

24   that, but, perhaps, we should wait 'til you've had a chance

25   to talk to Mr. Garman, so that we're not --

1        MR. BRUMBY:  Yes, ma'am.

2        THE COURT:  -- saying things that he gets up and

3   says, wait a minute, I don't agree, and we start a fight we

4   don't need to start.

5        MR. BRUMBY:  Well, that's the sole purpose for why

6   we're continuing this is to try to avoid a fight we don't

7   need to have.

8        THE COURT:  Okay.  Great.  So what we'll do is

9   after I hear the Spectrum -- oh, well, no.  Mr. Garman needs

10  to stay here, doesn't he --

11       MR. BRUMBY:  Okay.

12       THE COURT:  -- because he wants to hear the

13  Spectrum matter.  I was going to say I could suggest that

14  you recess now.  We'll just take a recess later, so you can

15  work it out --

16       MR. BRUMBY:  Thank you, ma'am.

17       THE COURT:  -- whatever's easiest.  Okay.

18     Ms. Jarvis, on the motion to distribute.

19     MS. JARVIS:  As you recall, your Honor, the

20  amount, approximate amount, we had asked to be able to

21  distribute was 68.1 million dollars.

22     But of that amount, there was $9,000,000 that had been

23  collected prepetition that the Diversified and Unsecured

24  Creditors Committee asked for further time to review and go

25  over carefully to make sure that there was no dispute with

1    respect to how that was accounted for.

2         There have been numerous discussions in the interim.

3    And with respect to that approximately $9,000,000, there is

4    an agreement on $6,000,000 of that that it should be

5    distributed as originally requested by the debtors.

6         The other $3,000,000 is still under discussion.  It's

7    not that it may not be agreed to.  It's simply that the

8    accounting issues are a little more complex, and it will

9    take us a little bit more time to walk them through it.

10        So what we are asking in order to not delay the initial

11   distribution any further is we will ask for the distribution

12   to be made of the approximately $65,000,000 reserving the

13   $3,000,000 that we're still in discussions with the

14   committees over until the next subsequent distribution which

15   is to be heard on August 31st.

16            THE COURT:  Okay.  Good.  While I have you, is

17   there any updates concerning status of performing loans,

18   nonperforming, taking actions against nonperforming loans,

19   collection of funds --

20            MS. JARVIS:  Well --

21            THE COURT:  -- anything we need to add to the

22   status?

23            MS. JARVIS:  No.  We have continued.  We have

24   continued collection efforts.  I think as I mentioned we

25   were in the process of sending out default letters the last

1    time we were here in court.

2        Those have been sent out as well as the new statements

3    to borrowers that were created from the recreation of the

4    record, so we are moving forward on that as well as on

5    pursuing, you know, loans that are currently in default.

6        I also should report maybe briefly on the status of

7    plan negotiations.  We did reach agreement with the four

8    committees to continue the exclusivity period until

9    August 31st.

10        That was in order to be able to try to work together to

11    hopefully have, you know, some consensus on a plan moving

12    forward.

13        We are continuing to have meetings with them.  We have

14    meetings scheduled for today and tomorrow and are working

15    towards trying to quickly reach some resolution on a pathway

16    for it.

17        (Colloquy not on the record.)

18        MS. JARVIS:  We again reiterate that, you know, we

19    feel it's very important.  The debtors feel it's very

20    important that we move this plan forward to a conclusion

21    quickly because the estate simply cannot bear these

22    administrative expenses, and there are business reasons for

23    the need to move that forward quickly as well.

24        THE COURT:  Okay.  And I believe you anticipated

25    sending the first checks out based upon my last distribution

1    this week; is that correct?

2            MS. JARVIS:  Well, the one issue we have is we've

3    been going back and forth on the form of the order.  I think

4    we've got now an agreed form of order.  I think we're in the

5    process of sending out kind of the final version today on

6    that.

7        We also were waiting to figure out the amount that we

8    had to put in based on this $9,000,000 dispute, so my

9    anticipation is that we would lodge that order with the

10   court hopefully as early as tomorrow.

11       The problem we've got then is whether we need to wait

12   for the ten-day period, you know, before we send out the

13   checks or not.

14       It will take us a little bit of time to send them out,

15   but it will be done as promptly as possible, but it may not

16   be until 11 days after the order is entered both for

17   practical reasons and for just --

18            THE COURT:  Well, I guess what you could do --

19            MS. JARVIS:  -- safety reasons.

20            THE COURT:  -- is start cutting the checks.

21            MS. JARVIS:  Yes.

22            THE COURT:  And then --

23            MS. JARVIS:  Yes.  And then we will proceed

24   forward to get everything ready to go, so that on that 11th

25   day we're ready to send everything out.

1    THE COURT:  And let me suggest to speed up these

2    orders -- and, please, when you do the order, don't call me

3    up after you guys have waited a week and tell me I have to

4    sign it right away.  That doesn't help matters.

5         One thing to make a fact -- it's one thing when you're

6    negotiating back and forth, but, you know, the procedure

7    allows that you can certify --

8         MS. JARVIS:  Um-h'm.

9         THE COURT:  -- that the following parties have

10   agreed, so you don't have to send around the actual copy.

11   All you need to do is, for example, E-mail the order.

12        The person E-mails back I agree, then you certify in

13   the order the following parties have agreed.  I mean, I

14   think that will save you some time.

15        MS. JARVIS:  Okay.  We will --

16        THE COURT:  And that's part of the local rule as

17   part of the procedure you can use.  It is very important

18   that we know that everybody -- that is everybody meaning the

19   committee -- does agree, so that we can rely on that's the

20   order that was entered or that the parties have agreed to,

21   and that, indeed, was the true reflection of the hearing,

22   rather than my taking the transcript and going back through

23   it.

24        And, of course, if there's a dispute, then I'll go back

25   through the transcript and review it and enter the

1    appropriate order.

2              MS. JARVIS:  And what we've been trying to do is

3    short-circuit that last end to try to resolve the disputes

4    up-front --

5              THE COURT:  Exactly.

6              MS. JARVIS:  -- so that before we submit it the

7    Court can know that this is an order that's been --

8              THE COURT:  Exactly.

9              MS. JARVIS:  -- negotiated and agreed to --

10             THE COURT:  So please --

11             MS. JARVIS:  -- on by the parties.

12             THE COURT:  -- upload that tomorrow.  Let me --

13    it's kind of --

14             MS. JARVIS:  Okay.

15             THE COURT:  I think it's important that you get

16    that uploaded tomorrow.

17             MS. JARVIS:  I agree.

18             MS. CARLYON:  Your Honor, as this is an interim

19    distribution, and the bulk of it was approved at the last

20    hearing, we would certainly favor a waiver of the ten-day

21    period with respect to the distribution, so that these

22    investors can get their money sooner than later.  It is a

23    fairly-dire circumstance for many of them.

24             THE COURT:  If I have the ability to waive the

25    period, I would.  Let's see.  I'm not even sure there would

1    be.  It's an interim distribution and interlocutory.

2         (Colloquy not on the record.)

3         MS. JARVIS:  And, your Honor, the debtor is

4    obviously in favor of getting this distribution sent out as

5    soon as possible.

6         (Colloquy not on the record.)

7         THE COURT:  It seems to me it would certainly be

8    interlocutory.

9         MS. JARVIS:  Yeah.

10        THE COURT:  I don't think there would be a stay.

11   If everybody's -- well, you may have people appealing I

12   guess, but it's an interlocutory order, so it would be up to

13   them to -- I don't have anything before me.

14        I mean, all I could do is offer my, quote, "advisory

15   opinion" which isn't worth anything.  If you want to file a

16   motion to ask me to waive it, if I have the power to waive

17   it, I could do it, but that's going to take time, too, so

18   I'll just --

19        MS. JARVIS:  Well --

20        THE COURT:  -- leave it to your best discretion.

21        MS. JARVIS:  Yeah.  We'll work towards a procedure

22   that will get these out as soon as possible, your Honor.

23        THE COURT:  Well, maybe if the parties that

24   objected would just agree that there is no stay or that

25   they'd waive their right to a stay as to this distribution,

1    that would solve that problem as well because that's a

2    limited parameter of people that objected, so --

3            MS. JARVIS:  Well, we'll work on that, your Honor.

4            THE COURT:  Okay.  Good.  Thank you.

5            MS. CHUBB:  Can we do that on the record?  Can we

6    waive that on the record?

7            THE COURT RECORDER:  I'm sorry, Counsel.

8            THE COURT:  Sure.  Ms. Chubb, do you want to come

9    forward?  We can't hear.  You've got to be at a microphone

10   because of the transcription.

11           MS. CHUBB:  I was just suggesting that we could

12   waive that on the record, and then they could go forward,

13   and maybe that will save a few days and some grief --

14           THE COURT:  Okay.

15           MS. CHUBB:  -- on the part of some people.  My

16   group will certainly waive that.

17           THE COURT:  All right.

18           MR. CHARLES:  Rob Charles for the Unsecured

19   Creditors Committee.  So will the committee.

20           THE COURT:  Okay.

21           MR. GARMAN:  Greg Garman.  We supported more

22   money, so we would waive.

23           THE COURT:  All right.

24           MS. CARLYON:  The First Trust Deed Committee,

25   also.  This is Candace Carlyon.

1          MS. LORADITCH:  Anne Loraditch for Diversified

2     Committee also waives.

3          THE COURT:  Okay.  So I guess that leaves the only

4     parties Mr. LePome and Mr. Mincin, and they're not --

5          THE CLERK:  Mr. LePome had a matter before

6     Judge Markell --

7          THE COURT:  Oh, okay.

8          THE CLERK:  -- (indiscernible).

9          THE COURT:  So maybe you can ask him, and he can

10    come over here, then.

11        And so I think Mr. Mincin was the only other opposing

12    party I believe.  You can check your list.

13         MS. JARVIS:  We'll check our list, and we'll try

14    to get everyone to agree, and I think, your Honor, if

15    everyone would agree we could probably get these checks out

16    as possibly as soon as Friday, certainly by early next week.

17         THE COURT:  Okay.  All right.  Good.  All right.

18    Okay.

19        Now, on the motion for relief from stay on Spectrum.

20         MS. CADISH:  Good morning, your Honor.

21    Elissa Cadish on behalf of Rolland Weddell and Spectrum

22    Financial Group.

23        This is our motion for relief from the stay to continue

24    on with the litigation that's pending in the United States

25    District Court before Judge Dawson where, in fact, that case

1    has been pending for five years now.

2        And just when we were about to get into the homestretch

3    of discovery and bring this case to a conclusion is when

4    this bankruptcy was filed.

5        As we indicated in our motion, there are not only

6    claims that my clients have against USA Commercial Mortgage

7    Company.

8        We also have claims against several other defendants,

9    some companies that were related to the USA Commercial

10    Mortgage Company and the individuals who were the principals

11    of that company.

12        It seems to make sense not only from our perspective,

13    but, also, from the bankruptcy perspective to resolve all of

14    the claims together and have all of the parties addressed

15    together, rather than having to try one case there against

16    Mr. Hantges and Mr. Milanowski which will inevitably involve

17    at least discovery related to USA and then have to

18    separately proceed in this court with USA directly.  It

19    makes sense to do all of that together.

20        And, in fact, my clients' predecessors were the PCI

21    entities.  They had previously been in a bankruptcy.  And

22    during the course of that bankruptcy which was before then

23    Bankruptcy Judge Jones, USA had actually objected to having

24    this litigation proceed in the bankruptcy court, so it went

25    forward in the district court.

1      It's pending there before Judge Dawson who is very

2  familiar with the facts of this case as complicated --

3          THE COURT:  Well --

4          MS. CADISH:  -- as they may be.

5          THE COURT:  But what relevance does that have once

6  you get to a trial?  Once you get to a trial, everything

7  starts over, so what relevance does it have that somebody

8  would be familiar, allegedly familiar, with the facts of the

9  case?

10         MS. CADISH:  Well, your Honor, it is a complex

11  series of fact.  And so to try a case before a judge who is

12  already up to speed on them, it certainly saves judicial

13  time and effort to have a judge who --

14         THE COURT:  Well, I think that's often a misnomer

15  that attorneys have in the sense that our job is to take the

16  facts that are presented at trial.

17      And once you start to presume that we, quote, "know

18  some facts" from a summary-judgment motion we've heard along

19  with 300 other cases that we have, it kind of does two

20  things.

21      It presumes too much of the judge and takes away the

22  fact the judge has got to rule on the facts that are

23  presented at trial and only those facts that are presented

24  at trial.

25         MS. CADISH:  I understand, your Honor.  I guess,

1    you know, just like the fourth lawyer, I mean, I would think

2    that for a judge who has considered numerous substantive

3    motions on the case I would think it would be of some help

4    in preparing for the trial, but your point is well-taken.

5    Obviously, during the trial, you have to weigh the evidence

6    presented at the trial.

7         USA Commercial Mortgage Company has asserted

8    counterclaims in that litigation based on loans to the PCI

9    entities and the guarantees of those loans made by

10   Mr. Weddell and Spectrum Financial Group.

11        Now, in the opposition filed by USA Commercial Mortgage

12   here, the debtor, they say they want to focus on their goal

13   of maximizing the recovery on loans.  It would seem that

14   pursuing and going forward with those counterclaims would

15   serve that purpose --

16             THE COURT:  Well, PCI --

17             MS. CADISH:  -- rather than --

18             THE COURT:  -- is a --

19             MS. CADISH:  -- countervening it.

20             THE COURT:  -- bankrupt entity, right?

21             MS. CADISH:  PCI is, and Spectrum Financial

22   Group -- Spectrum Financial Group acquired and paid for in

23   that bankruptcy the claims that the PCI debtors had against

24   USA Commercial Mortgage.

25             THE COURT:  Okay.  So the counterclaims that the

1    debtor now has are valueless, this debtor has are now

2    valueless.

3              MS. CADISH:  No.

4              THE COURT:  The counterclaims this debtor has --

5              MS. CADISH:  Not to the -- well, I think the --

6              THE COURT:  Assuming --

7              MS. CADISH:  -- the claims --

8              THE COURT:  -- they win, yeah.  I --

9              MS. CADISH:  The claims --

10             THE COURT:  I apologize.

11             MS. CADISH:  -- based on the guarantees, not -- I

12   mean, I understand, your Honor.  What --

13             THE COURT:  Assuming they had won on the money.

14   As far as collecting money, that's what I meant to say.

15             MS. CADISH:  No.  Because my clients aren't the

16   PCI bankrupt entities.  My clients are Rolland Weddell and

17   Spectrum Financial Group.  They were guarantors of the loans

18   even if the actual underlying borrowers are gone --

19             THE COURT:  Okay.

20             MS. CADISH:  -- and no longer.

21             THE COURT:  So it's only the guarantee that's any

22   good.

23             MS. CADISH:  Yes, your Honor.

24             THE COURT:  Well, how hard --

25             MS. CADISH:  Both Mr. --

1          THE COURT:  -- is it to sue on a guarantee?  I

2     mean, you just sue on a guarantee.  You don't have to go

3     through all the facts of -- you know, under Nevada law, a

4     guarantee is you sign the guarantee, and there aren't many

5     defenses.

6          MS. CADISH:  Well, your Honor, I would agree, and

7     I guess I'm a little confused about why the debtor seems

8     unable to state whether, in fact, they have those claims or

9     don't have those claims.

10          THE COURT:  But why should the debtor want to

11     go -- how many weeks of trial do you think it's going to

12     take?

13          MS. CADISH:  Trial could easily take three weeks,

14     four weeks.

15          THE COURT:  Three weeks at $100,000 a day?

16          MS. CADISH:  Yes.  Well, considering there's

17     already about $500,000 a week being incurred.

18          THE COURT:  So --

19          MS. CADISH:  Yes.  But, your Honor --

20          THE COURT:  So why should the estate have to sit

21     through this when all you have to do is file your proof of

22     claim?

23          MS. CADISH:  We have to file the proof of claim

24     here to pursue the claim against USA --

25          THE COURT:  Sure.

```
1          MS. CADISH:  -- and pursue --

2          THE COURT:  You file --

3          MS. CADISH:  -- a separate trial --

4          THE COURT:  -- your proof of claim.

5          MS. CADISH:  -- before Judge Dawson against

6   Mr. Hantges and Mr. Milanowski and --

7          THE COURT:  So why is that --

8          MS. CADISH:  -- Blamo (phonetic) and --

9          THE COURT:  -- so hard, though?

10         MS. CADISH:  What's that?

11         THE COURT:  Why is that so hard?  You file your

12  proof of claim here.  It's kind of unlike -- I mean, they

13  may file an objection to proof of claim, but the point is

14  there may not be any assets, anyway.

15         MS. CADISH:  Well, your Honor, I guess what we

16  wanted to do and what we were hoping to accomplish is to

17  resolve all of it together, rather than having to go through

18  two separate proofs because -- and if I'm mistaken, that's

19  fine, but I was expecting an objection to the proof of

20  claim, and so I was expecting to have to go through it.

21      And if I'm mistaken about that -- and I know that the

22  deadline for the proofs of claim has been vacated for now,

23  and so maybe it will get to a point that that won't be the

24  case.

25      But we certainly were concerned about having to
```

1    litigate in two different places and the lack of efficiency

2    of such a process --

3            THE COURT:  Sure.

4            MS. CADISH:  -- particularly given as you've

5    pointed out the expense and length of a trial like that and

6    the discovery that will be involved.

7            THE COURT:  Well, isn't the claims against the

8    individuals are what makes this case complicated?

9            MS. CADISH:  It's really it's the under -- it's

10   the background facts that are complicated.  It's not that

11   the claims themselves are, I mean, you know, claims for

12   fraud and claims for RICO.

13       USA is involved I believe in the RICO conspiracy claim;

14   otherwise, it wouldn't be under the 1962(c) claims where you

15   sue the person operating the entity through a pattern of

16   racketeering.

17       But, you know, obviously, we're seeking to move forward

18   to liquidate the claim over there and to have it all move

19   forward together and get a resolution, and, you know, I

20   guess -- and I'll just say one more time.

21       And, your Honor, I understand, you know, the points

22   that you're raising today, but I really don't understand why

23   the debtor seems unable to state at this point whether

24   they're even the proper party to assert the counterclaims

25   that are pending in the U.S. District Court.

1        It's certainly involved in pursuing recovery on the

2   other loans in the course of this bankruptcy proceeding, and

3   I have talked to counsel for the debtors going back a couple

4   of months now about the pending litigation.

5        And so if, in fact, that those counterclaims that USA

6   has asserted don't belong to USA, that's certainly something

7   we want to know and need to be able to act upon.

8             THE COURT:  Okay.  Thank you.

9             MS. CADISH:  Thank you.

10            THE COURT:  Opposition.

11            MR. SCHWARTZER:  I think the key here is sort of

12  obvious.  We have a debtor who has filed its Chapter 11

13  about four months ago.  We have an extension of exclusivity

14  until August 31st.

15       We're working on putting together a plan.  It may get

16  done by August 31st.  It may be that we'll have enough

17  progress that all the parties will agree that exclusivity

18  should be extended, but, clearly, the focus of this case

19  should be on working on the reorganization of the debtor.

20       And the idea of having the debtor, the current

21  management of the debtor, having to probably employ another

22  set of counsel for litigation purposes, spend very large

23  sums of money on preparing for a trial when we don't even

24  know if there will be a distribution to unsecured creditors

25  becomes a major, major problem.

1        And I guess it basically goes down to why the automatic

2    stay is in place.  It's to give the breathing room to a

3    debtor to see if it could reorganize.

4        We're in I think it's fair to stay a critical stage of

5    working on reorganization.  And at this point in time, the

6    debtor does not want to be diverted from focussing on

7    reorganization to focussing on very major substantial

8    litigation that's involved here.

9        In addition, when the movants talk about the economics

10    of it, it's clear that the only economics they're worried

11    about which is their prerogative is their economics.

12        It doesn't help the debtor at all to be involved in

13    this litigation in the U.S. District Court.  It's clearly

14    going to be more economical for the debtor to deal with this

15    issue as a claims issue.

16        And if Spectrum and Weddell don't file a proof of

17    claim, they have no claim in this bankruptcy case.  We may

18    have to then look at the guarantees and go forward and sue

19    on the guarantees outside of the bankruptcy court or have a

20    question about the proper jurisdiction on the guarantees,

21    but there is a real issue here.

22        USA Commercial Mortgage is the servicer on the loans.

23    The actual lenders were direct lenders.  As we stand here

24    right now, we don't know who wound up owning this loan and

25    who has the right to go forward because the PCA Properties

1    (phonetic) as I understood it got foreclosed on during the

2    PCI bankruptcy a couple of years ago.

3        So there's no loans there.  It's only on the

4    guarantees, and we'd have to see what came out of those

5    properties and was paid to direct lenders.  We don't know if

6    the direct lenders still have an interest in the guarantees,

7    things like that.

8        And I'm sure the Direct Lenders Committee will want to

9    say, well, if you collect money on the guarantees it goes to

10    the direct lenders.  It's not property of the bankruptcy

11    estate.  That issue has to be determined.

12        We haven't even focussed on that issue.  It's something

13    that may be part of a plan of reorganization to determine

14    who has a right to go after these guarantees where there

15    were loans by direct lenders.

16        So at this point in time, we would really be struggling

17    with bankruptcy issues to determine who should be handling

18    this litigation.

19        If it is litigation that's only going to benefit direct

20    lenders, there may be a real question of whether the

21    debtor's estate should even be involved in going forward on

22    the counterclaims.

23        If the estate is not going to be involved in the

24    counterclaims, benefit from the counterclaims, it's very

25    clear, then we really should just leave this as a claims

1    process to see if there's any money for distribution to

2    unsecured creditors.

3        Also, I think the Court should consider the factor that

4    what this lawsuit is about.  You read through the complaint,

5    and what they're saying is USA Commercial tricked these

6    people into borrowing too much money.

7        And then when they were in trouble Tom Hantges and

8    Joe Milanowski walked in the door and took over in what

9    appears to be an effort to protect the direct lenders who

10    had made the loans on the properties involved in the PCI

11    bankruptcy.

12        The counterclaims are fairly clear and easy.  Spectrum

13    borrowed some of the money and signed notes.

14    Rolland Weddell gave his personal guarantee on the notes.

15    But as I said, I'm not sure who's supposed to get the money

16    collected from them if there is money still owed.

17        We are going to be -- the debtor is going to be

18    prejudiced if we go forward by the fact that we're going to

19    have to spend time and effort now litigating.

20        We think that it is clear to us that it would be more

21    economical to allow the claim to be handled as a claims

22    process because, number one, there's no jury, so that

23    shortens the time for any trial if there is an objection to

24    the claim.

25        The fact that previously in the PCI bankruptcy USA

1    Commercial Mortgage didn't want a bankruptcy judge to make

2    the determination really isn't a factor here.

3        In this case, USA Commercial is the debtor and would

4    prefer the claims process to be handled in the bankruptcy

5    court because of the economics and also because of the

6    timing.

7        We don't have to file an objection to their claim until

8    we see if there's going to be a distribution to unsecured

9    creditors, and there's some reason to spend the time and

10   effort on the objection to claim.

11       We would also ask, your Honor, to note -- and I think

12   you already noted -- that the fact that Judge Dawson is

13   familiar with the case is pretty irrelevant to the fact

14   because they're asking for a jury trial in U.S. District

15   Court, so the jury is the one who's going to have to hear

16   all the facts, and, obviously, they're not familiar with any

17   of the facts.

18       And then, of course, you know, as I said as this case

19   has been admitted, this case is not ready for trial.  It's

20   not like we're on the eve of trial in the U.S. District

21   Court.  Clearly, this bankruptcy wasn't filed just to stay

22   this litigation.

23       There's discovery that has to be done by all the

24   parties.  We don't want to spend the time doing it.  We

25   don't know if prior counsel who was handling it as to USA

1   Commercial which I think was the Santoro, Driggs firm would

2   be available to be counsel at this time.

3       We may have to as I said make a whole new set of

4   counsel.  We may have to have counsel learn everything from

5   the base up to start this, and it just would be an expensive

6   proposition.

7       So it doesn't appear to be this is the kind of case and

8   certainly not the time in this case to lift the automatic

9   stay to let the litigation go forward.

10      Thank you.

11          THE COURT:  Okay.  Any other opposition?

12      Hold on.  I want to get the other --

13          MS. CADISH:  Okay.

14          THE COURT:  -- see if there's any opposition

15  first.

16          MS. CADISH:  I apologize --

17          THE COURT:  You're not --

18          MS. CADISH:  -- your Honor.

19          THE COURT:  There's a cast of thousands in this

20  case, so, yeah, I know you're used to just -- well, that's

21  right.  We have multiple parties.  You're used to casts of

22  thousands.

23          MS. CADISH:  I am.  Thank you.

24          MR. CHARLES:  Your Honor, the committee, the

25  Unsecured Creditors Committee, filed a joinder really just

1    to accentuate one point Mr. Jarvis (sic) made which is we

2    are sensitive to the expense.  And on the other side of that

3    is it's sensitive to the limited sources of funds to pay

4    expense.

5         If you kind of step back and look at the big picture,

6    the implication of how you're going to be paying

7    professional fees at this point is looking at least as to

8    professionals employed through the USA Commercial estate

9    looking at its limited liquidity.

10        When you look at the reports that are provided by

11   Mesirow, there is very limited liquidity now.  The funds

12   that are being held back from direct lenders (indiscernible)

13   prepaid interest when that is determined to be unencumbered

14   funds is going to be the most likely source of payment for

15   professionals.

16        And even that at the rate that funds are being

17   collected and expended is a very finite resource, and that's

18   also one of the two principal sources of repayment for

19   unsecured creditors at all.

20        So our committee, universally, is terrified about the

21   ongoing expense, and adding another black hole of district

22   court litigation without understanding what the benefit is

23   for the estate literally terrified our committee, and we

24   opposed the motion for stay relief.

25             THE COURT:  Okay.

1        MR. GARMAN:  Your Honor, I want to address one

2   very small point in their reply.  I join in Mr. --

3        THE COURT:  You probably need to move the

4   microphone up.

5        MR. GARMAN:  I join --

6        THE COURT:  There you go.

7        MR. GARMAN:  I join in Mr. Schwartzer and

8   Mr. Charles' arguments.  But in the reply, the last couple

9   of paragraphs indicate that USA should be required to

10  identify who owns these claims.  That's a complicated

11  process.

12      And, clearly, I just want to make sure that direct

13  lenders' rights aren't implicated, and there's no final

14  determination here that may affect direct lenders on a

15  going-forward basis.

16        THE COURT:  Okay.  All right.  Now, a reply.  Now

17  we can put --

18        MS. CADISH:  We --

19        THE COURT:  And, you know, this one's

20  counterintuitive.  The up is down, and the down is up.

21      MS. CADISH:  Thank you.  I think you understand

22  the issues, so I'm not going to spend a whole lot more time

23  up here.

24      I guess what I would say is -- and this seems obvious,

25  certainly, to your Honor.  But up 'til now, the entire

1    district court case has been stayed, in other words, not

2    just as to USA.

3        But Judge Dawson has stayed the entire case basically

4    waiting to see what was going to happen over here because it

5    was his goal I think to try to keep the case together.

6        And so what I would ask, your Honor, is just that it be

7    clear today, and I think that it should be that to the

8    extent this motion may be denied today that there's

9    certainly no reason arising out of this bankruptcy court why

10   that case couldn't continue as to all the other --

11             THE COURT:  Okay.

12             MS. CADISH:  -- defendants.

13       Thank you.

14             THE COURT:  Thank you.

15             THE CLERK:  Judge, we understand that the call

16   dropped off, so what do we (indiscernible)?

17             THE COURT:  Oh, okay.  Well, this is a good chance

18   for you to take your five minutes and talk about the other

19   matter I guess?

20             UNIDENTIFIED SPEAKER:  Okay.

21             THE COURT:  Okay.

22             THE CLERK:  All rise.

23             THE COURT:  I did have a question before you go.

24   You may have to ask someone.  The question I had is to what

25   extent, if at all, is USA Commercial providing insurance

1  that's impacted by defending the former insiders and does

2  the debtor care in that regard.

3      In other words, clearly, there's no stay against the

4  insiders unless somehow the insurance might be implicated.

5  That wasn't raised in your opposition, but I just want to --

6  so we're not back on that issue.

7      (Colloquy not on the record.)

8      MS. CARLYON:  Thank you, your Honor.

9      (Recess at 10:21:10 a.m.)

10      (Court reconvened at 10:39:05 a.m.)

11      THE CLERK:  Bankruptcy court is now in session.

12      (Colloquy not on the record.)

13      THE COURT:  Be seated.

14      (Colloquy not on the record.)

15      THE COURT:  Okay.  Let me finish -- oh, on the

16  issue of the insurance.  Well, let me finish this up first,

17  Mr. LePome, unless you wanted to leave.

18      (Colloquy not on the record.)

19      THE COURT:  I just want to finish this one motion,

20  and then we'll put your comment on --

21      MR. LePOME:  Okay.

22      THE COURT:  -- about the other issue, and I

23  understand you were in court next-door, so that's not a

24  problem.

25      MR. SCHWARTZER:  The answer to your question is

1    there is no insurance.  We wish there was.

2                THE COURT:  Okay.

3                MR. SCHWARTZER:  But that's one of the main

4    reasons for not lifting the stay because it will be the cost

5    of the defense as well as prosecution of counterclaims will

6    be an out-of-pocket expense for the bankruptcy estate.

7                THE COURT:  Okay.  All right.  Well, I'm going to

8    deny the motion for relief from stay.  You know, going back

9    to the whole kind of basic points of bankruptcy is one of

10   the quintessential elements of bankruptcy is the fresh start

11   and the breathing space required in order to get the fresh

12   start.

13         And then, also, it is a very important process that

14   instead of having the debtor have to defend itself in

15   numerous jurisdictions and numerous places that's why we

16   have the whole claims process.

17         The claims process is very valuable because, first of

18   all, it's one forum to decide what the claims are.

19   Secondly, it becomes a very pragmatic forum because in this

20   manner a creditor can file its claim, and the debtor may or

21   may not object to the claim based upon practical

22   considerations such as whether or not it's cost-efficient to

23   object to the proof of claim.

24         In some cases, for example, in Chapter 7's, for

25   example, of even corporations, proofs of claims are filed,

1    and then there's no objections made because the reality is

2    the assets aren't sufficient to go down the chain, so it

3    would be useless to spend the money to litigate it.  In this

4    case, we don't know what is going to happen, yet, with the

5    unsecured-claim issue.

6         Now, in usually most cases, this is a benefit to

7    creditors as well because they now have an end in sight, and

8    they know there's a place to litigate their claims, and

9    they're not wasting their money prosecuting a claim for

10   which there's no recovery in the end.

11        But, conversely, third parties are not covered by the

12   stay.  Parties who are not the debtor are not covered by the

13   stay or this case is a little easier in the sense that we're

14   not talking about whether or not property of the estate's

15   involved, et cetera, because we're not in this particular

16   issue here, so prosecution against the former insiders is

17   not barred.

18        And in any case just to make it clear, to the extent

19   there is a stay, I'll lift the stay against all of the other

20   remaining defendants.

21        And let me kind of be clear on that, so we're not -- is

22   that a correct statement that all of the other defendants --

23   I don't have it handy.

24        Mr. Schwartzer --

25             MR. SCHWARTZER:  I just want to look --

1          THE COURT:  -- from your standpoint?

2          MR. SCHWARTZER:  -- at the complaint and make sure

3    on the complaint.  The complaint names --

4       (Colloquy not on the record.)

5          THE COURT:  There it is.

6          MR. SCHWARTZER:  The only --

7          MS. CARLYON:  They're the nondebtor defendants.

8          MR. SCHWARTZER:  Yeah.  All the other defendants

9    other than USA Commercial Mortgage are --

10         THE COURT:  All right.  Fine.

11         MR. SCHWARTZER:  -- nondebtors.

12         THE COURT:  Okay.

13         MR. SCHWARTZER:  They may be affiliates or

14   related, but they're nondebtors.

15         THE COURT:  All right.  Fine.

16         MS. JARVIS:  That's correct.

17         THE COURT:  So the stay is lifted as to all of

18   those defendants.  Again, we have not yet set a

19   proof-of-claim bar date.

20      But, again, those are the kind of things that are

21   better adjudicated as to the debtor in this proceeding, so,

22   therefore, I'll deny the motion for lift of stay as to this

23   debtor.

24      Now, Mr. LePome, on the --

25         MR. LePOME:  Your Honor, I thank you for the

1    accommodation.  I'm counsel for the debtor on Greystone

2    Holdings which is right next-door.

3         I waive the -- on behalf of all of my clients,

4    Dr. Stanley and others -- and they've been identified in

5    various pleadings -- waive the ten-day rule, so that we can

6    get a distribution with the safeguards previously made of

7    record.

8              THE COURT:  All right.  Thank you very much.

9              MR. LePOME:  Thank you.

10             THE COURT:  Okay.  Now, on the Standard

11   Properties, have we resolved their issues there or what

12   issues are remaining on that?

13             MR. SCHWARTZER:  My understanding of the only

14   remaining issue was the Direct Lenders Committee wants the

15   right to bring litigation in this court to enjoin the

16   Florida litigation if the debtor doesn't bring that

17   complaint and motion for a preliminary injunction.

18        We said we'd discuss it with them.  I could tell you

19   that our intention is, number one, to try and find a way to

20   negotiate, so there's no litigation.

21        But, number two, if that's not successful, it's the

22   intent of the debtor to file that complaint and that motion

23   for a preliminary injunction and set it for a hearing on

24   September 28th to enjoin the Florida litigation on behalf of

25   USA Commercial and on behalf of the direct lenders it

```
1    represents under the various loan-servicing --
2              THE COURT:  Well, can you --
3              MR. SCHWARTZER:  -- agreements.
4              THE COURT:  -- do this?  Can you let Mr. Garman
5    know by September 1st what your intentions are, and then if
6    their intention is is at that stage not to you can bring
7    your motion to file that lawsuit which could be heard on
8    that --
9              MR. SCHWARTZER:  On September --
10             THE COURT:  -- September date as well, and I'd
11   give you an order shortening time.
12             MR. GARMAN:  Okay.
13             THE COURT:  Does that work?
14             MR. GARMAN:  That works from our perspective,
15   your Honor, yeah.
16             MR. SCHWARTZER:  That will be fine.
17             THE COURT:  Mr. -- I'm sorry.
18             MR. BRUMBY:  Mr. Brumby.
19             THE COURT:  Brumby.  Sorry.
20             MR. BRUMBY:  Yes, ma'am.  That's acceptable to me.
21   I've told Mr. Garman that whatever their resolution was I
22   wasn't going to consent that they had standing, but I didn't
23   object.  I'd just like the opportunity to be heard on the
24   matter --
25             THE COURT:  Exactly.
```

1          MR. BRUMBY:  -- if it arose.  The only other

2     matter that I think was lingering, Mr. Garman -- the whole

3     purpose here, your Honor, is before we get off into the

4     world of litigation --

5          THE COURT:  Exactly.  Is make the project work.

6          MR. BRUMBY:  -- to try to find a way to make the

7     project work and try to find a way to make everybody as I

8     say when I mediate things either equally unhappy or equally

9     happy and to provide a breathing time to do that.

10         Originally, the motion to lift stay was going to get

11    carried to September the 13th, but I know your Honor

12    probably would have preferred to hear them both together.

13         I wanted 25-days' notice at least of the injunction.

14    That's why I went to the 28th, and so I'm not going to

15    oppose the 28th.

16         I'm happy to report that Ms. Jarvis has told me she's

17    going to telephone me tomorrow with a date that my client's

18    representatives could meet with the debtor's representatives

19    next week in Chicago.

20         The only other lingering issue was the answer date with

21    respect to the direct lenders in the start of litigation.

22    I've already agreed with Ms. Jarvis' office to September the

23    15th.

24         I agreed this morning with Mr. Garman that I would

25    extend that because of the September 28th anticipated

1    hearing date if we can't find a resolution to October the

2    10th.

3        He has some concerns remaining that it may not be

4    enough time.  I have told him that on September the 28th if

5    you are not inclined to grant the injunction, I mean, if

6    they want to ask you to kindly direct me to give them more

7    time I'll abide by whatever your wishes are.

8            THE COURT:  Okay.  All right.

9            MR. GARMAN:  Yeah.  I get to --

10           THE COURT:  Fine.

11           MR. GARMAN:  I get to come back and argue if

12   necessary.  Just to clarify what we've agreed to further,

13   the deadline, the extended answer deadline, is to answer or

14   otherwise plead, correct?

15           MR. BRUMBY:  Yes.  Yes, it is.

16           MR. GARMAN:  And the debtor has agreed to

17   cooperate with the Direct Lenders Committee in sending out a

18   communication and putting those folks that have been served

19   with these complaints in connection with one another, so

20   they can pick their own destiny to a certain extent.

21           THE COURT:  Okay.

22           MR. GARMAN:  So --

23           THE COURT:  Now, since you mentioned mediation, we

24   have Judge Glover here in September and November.

25       (Colloquy not on the record.)

1          THE COURT:  Don't we have him in November?

2          THE CLERK:  Yes, Judge.

3          THE COURT:  Okay.

4      (Colloquy not on the record.)

5          THE COURT:  So to the extent there are any of

6   these kind of discrete adversaries or issues that you think

7   would be helpful, Judge Glover's a bankruptcy judge from the

8   Western District of Washington.

9          He acts as a mediator slash settlement judge.  I guess

10  "mediator" is a better term because settlement judgment

11  implies a little more.

12         He acts as a mediator for us.  He's been quite

13  successful about making everybody equally unhappy, and the

14  best part is he's free as opposed to having to pay a

15  mediator.

16         So if you wish to avail yourself of that, just let us

17  know sufficiently in advance, so that we can put you into

18  the process.  Okay.

19         One other housekeeping matter is we have to set new --

20  we need to set October.  Let's set October, November,

21  December dates.

22         Hopefully, we might not need to use them.  But if we

23  don't set them, then my calendar fills.  You need to make

24  transportation.

25         Oh, one other comment -- and especially since I missed

1    Ms. Loraditch and Ms. Carlyon before -- I do appreciate the

2    fact that your committees are staffing this appropriately

3    and having just one attorney on each side appear at these

4    kind of hearings, and I think it's very appropriate.

5        I know local counsel is an integral part of this

6    process, and I very much appreciate the fact that you're

7    here, and that we haven't incurred the expense of, you know,

8    out-of-state counsel, so I was just I guess half asleep when

9    I was listening to appearances.  I apologize.

10        MS. CARLYON:  Thank you, your Honor.

11        THE COURT:  Okay.  October, here's some ideas.

12    What do you think about October 19th in the morning?  Does

13    that work?  Our hearing in September is September 28th.

14        Arguably, I could give you -- well, and then the next

15    date would be October 30th.  Now, arguably, I could give you

16    October 18th and switch my motion calendar over.

17        And with any luck, we'd have a new judge to hear my

18    Chapter 7's.  But if the 19th is better, that's a little

19    easier for me.  Does the 19th work?

20        MS. JARVIS:  Yeah.

21        THE COURT:  That's --

22        MS. JARVIS:  That's fine.

23        THE COURT:  That will be like a fairly-long time

24    between your hearings.

25        UNIDENTIFIED SPEAKER:  That's all right.

49

```
1              THE COURT:  But okay.  And then October 30th,

2    then --

3              THE CLERK:  At 9:30, Judge?

4              THE COURT:  At 9:30 and keep the whole day clear

5    on the 30th.

6              THE CLERK:  Pardon me?

7              THE COURT:  Keep the whole day clear on the 30th.

8              THE CLERK:  Okay.

9              THE COURT:  The 19th, you will probably only have

10   the morning.  If there are a lot of matters that must be

11   heard, I could get somebody else to do the Chapter 13

12   calendar, but I prefer to keep it in the morning.  But if we

13   can't, we can make due.

14       How about November -- you could have November 13th,

15   14th for the next one?  The 13th's a Monday.  The 14th's a

16   Tuesday.  Does anybody care?

17       (Colloquy not on the record.)

18              MR. SCHWARTZER:  The 14th, your Honor.

19              THE COURT:  The 14th?

20              MR. CHARLES:  I care a little bit.  I teach

21   Tuesdays and Thursdays at the Law School Reorganization.  So

22   the days that I can't be here, Ms. Freeman will be.  It's

23   easier for the committee if I am here.  I'm cheaper.

24              THE COURT:  Okay.  So you would rather -- the

25   13th's better for you?
```

1          MR. CHARLES:  Yes, ma'am.

2      (Colloquy not on the record.)

3          THE COURT:  Okay.  The 13th.  Is that all right

4  with you all?  We'll keep the whole day.

5      Then how do you feel about November 28th?  That's the

6  Tuesday after Thanksgiving.  Oh, that's a Tuesday.  Is that

7  all right, though, Mr. -- oh, you're probably on vacation

8  over Thanksgiving, aren't you?

9          MR. CHARLES:  We live to serve the Court.

10         THE COURT:  Okay.  I hate to do it the Monday

11  after Thanksgiving.  People have plans, et cetera, so let's

12  do it that Tuesday.

13         THE COURT RECORDER:  (Indiscernible).

14         THE COURT:  Hopefully, you'll be out of here in

15  time to teach.

16         THE CLERK:  Set aside the whole day, Judge?

17         THE COURT:  Yeah.

18      Then how do you feel about December 15th?

19      (Colloquy not on the record.)

20         MR. SCHWARTZER:  I think that's the AB -- oh,

21  that's the National Association of Bankruptcy Trustees

22  meeting --

23         THE COURT RECORDER:  Counsel, would you move --

24         MR. SCHWARTZER:  -- which I'm going --

25         THE COURT RECORDER:   -- the microphone a little

1    bit closer, please?

2           MR. SCHWARTZER:  That's the --

3           THE COURT RECORDER:  Thank you.

4           MR. SCHWARTZER:  December 15th is I -- no.  That's

5    an available date.

6           THE COURT:  Okay.

7           MR. SCHWARTZER:  I'm sorry.

8           THE COURT:  The 15th's all right, then?  You know,

9    these far-out dates are enough that we could -- they're a

10   little flexible for the, you know, major attorneys.

11       Now, I don't think any of us want to be here the week

12   between Christmas and New Year's, so we won't set one there.

13   But, you know, if things -- I think every year I've had some

14   crisis the last week of December, so I am sure what's going

15   to happen is there will be some major crisis that last week,

16   so --

17           MR. SCHWARTZER:  Well, your Honor, maybe you want

18   to set a date, but just say you really don't want to use it,

19   and we all can hear that.

20           THE COURT:  Well, the only problem with that is

21   then people will fill it up, so let's not set it now, but

22   we'll revisit the issue in November, but let's give you a

23   January date, though, the first week in January.

24           THE CLERK:  (Indiscernible).

25           THE COURT:  And I don't have -- do you have an '07

```
1    calendar around here, Eileen?

2              THE CLERK:  No, Judge.  Let me pull one up for

3    you.

4              THE COURT:  I've got my '05 calendar year here.

5    Oh, there's an '07.

6              THE CLERK:  I have --

7              MR. SCHWARTZER:  Oh.

8              THE CLERK:  I have the '07.  I have the '07

9    calendar here on (indiscernible).

10             THE COURT:  So December.  Can you make it show on

11   my screen?

12             THE CLERK:  I'm going to make a copy for you.

13             THE COURT:  So December 5th maybe or maybe closer

14   in the week like December --

15             THE CLERK:  January?

16             THE COURT:  January 2nd maybe?  Is that too soon

17   after the new -- no.  Everybody's shaking their head.  Well,

18   I mean -- sorry.  January 3rd, how does that work, the

19   middle of the week?

20             UNIDENTIFIED SPEAKER:  That's better.

21        (Colloquy not on the record.)

22             THE COURT:  Okay.  So January 3rd.

23             THE CLERK:  January 3rd all day?

24             THE COURT:  Yeah.

25             MS. CARLYON:  Your Honor, just as a housekeeping
```

1  matter, the administrative order setting response and reply

2  dates I think had an error in it based on the Court's

3  ruling.

4       I brought it to Mr. Schwartzer's attention.  I'm hoping

5  we can clarify that when we do the order that contains these

6  dates.

7                 THE COURT:  Okay.  Fine.

8                 MS. CARLYON:  So if we could just circulate that

9  order to the committee --

10                 THE COURT:  Sure.

11                 MS. CARLYON:  -- that would be great.

12                 THE COURT:  Sure.  Do you want to set it

13  January 17th as well?  So January 17th and January 31st.

14                 THE CLERK:  Instead of the 3rd?

15                 THE COURT:  Sorry.  3rd, 17th, and 31st.

16                 MS. CARLYON:  All at 9:30, your Honor?

17                 THE COURT:  Does that work?  We don't know what

18  we're going to do next year for --

19                 THE CLERK:  Well, you know what?  No, we don't.

20  And, right now, on Wednesday, if we do have a motion

21  calendar, we could set that over to (indiscernible).

22                 THE COURT:  Yeah.  Okay.

23       So at least, you could schedule it in.  That way, it

24  keeps my calendar clear.  You know, hopefully, we don't need

25  all those times.  But at least, we've got them.  Okay.

1          Any other housekeeping matters?  Okay.  Okay.

2               MS. CADISH:  Your Honor, I just wanted to clarify

3    whether the court minutes will adequately reflect your

4    ruling or if you need --

5               THE COURT:  Oh, I am sorry.

6               MS. CADISH:  -- an order submitted.

7               THE COURT:  I made my oral findings and

8    conclusions on the record, and I guess Mr. Schwartzer will

9    submit the order, and he'll pass it by you.

10              MS. CADISH:  That's fine.

11              THE COURT:  Okay.  Thank you.

12              MR. SCHWARTZER:  Thank you.

13              THE COURT:  All right.

14              MS. CARLYON:  Thank you, your Honor.

15              THE COURT:  Thank you, everybody.

16              UNIDENTIFIED SPEAKER:  Thank you.

17         (Colloquy not on the record.)

18              THE CLERK:  All rise.

19         (Court concluded at 10:53:53 a.m.)

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2   from the electronic sound recording of the proceedings in

3   the above-entitled matter.

4

5

6   /s/ Lisa L. Cline                          09/07/06

7   Lisa L. Cline, Transcriptionist                 Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25