1  Annette W. Jarvis, Utah Bar No. 1649
   RAY QUINNEY & NEBEKER P.C.
2  36 South State Street, Suite 1400
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
4  Facsimile: (801) 532-7543
   Email: ajarvis@rqn.com
5
      and
6  Lenard E. Schwartzer, Nevada Bar No. 0399
   Jeanette E. McPherson, Nevada Bar No. 5423
7  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
8  Las Vegas, Nevada  89146-5308
   Telephone:  (702) 228-7590
9  Facsimile:  (702) 892-0122
   E-Mail:  bkfilings@s-mlaw.com
10

E-FILED ON September 15, 2006

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **MOTION TO INCREASE THE DEBTORS' 180-DAY EXCLUSIVE PERIOD TO CONFIRM PLANS OF REORGANIZATION TO DECEMBER 31, 2006 (AFFECTS ALL DEBTORS)** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | Date: OST PENDING<br>Time: OST PENDING |

1. USA Commercial Mortgage Company ("USACM"), on behalf of itself and its affiliated debtors, which are USA Securities, LLC ("Securities"), USA Capital Realty Advisors, LLC ("Realty"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), and USA Capital First Trust Deed Fund, LLC ("First Deed Fund") (collectively, the "Debtors"), hereby move the Court for an order under 11 U.S.C. § 1121(d) to increase the 180-day period under 11 U.S.C. § 1121(c)(3) that the Debtors have to confirm a plan of reorganization. In support of this Motion, Debtors represent as follows.

**POINTS AND AUTHORITIES**

FACTUAL BACKGROUND

1. The Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2006.

2. Mesirow Financial Interim Management, LLC ("Mesirow") and Thomas J. Allison ("Allison") were installed as the new, independent management for each of the Debtors, and now Allison serves as the sole Manager of the four Debtors who are limited liability companies (Securities, Realty, Diversified Fund, and First Deed Fund), and as the president of the corporate debtor USACM, with full authority to oversee the restructuring and reorganization of the Debtors' unified business enterprise.

3. As of the bankruptcy petition date, USACM was the servicer for a loan portfolio of approximately 115 commercial mortgage loans (the "Loan Portfolio"). A substantial portion of the loans in the Loan Portfolio have been divided into fractionalized shares that are held by many different noteholders. The noteholders of the loans in the Loan Portfolio fall into three main categories: (1) Diversified Fund holds a 100% interest in some of the loans, and only fractionalized shares in some others; (2) First Deed Fund holds a 100% interest in some of the loans, and only fractionalized shares in some others; and (3) various groups of individual investors hold 100% interests in some of the loans, and only fractionalized shares in many others. Of the approximately 115 loans in the Loan Portfolio, approximately 20 are owned 100% by Diversified Fund and/or First Deed Fund (collectively, the "Funds"), approximately 30 others are owned 100% by various groups of investors not including the Funds, and the remaining approximately 50

loans are held in fractional shares by one or both of the Funds along with various groups of individual investors.

4. There are approximately 1,900 members owning the membership interests in the Diversified Fund, approximately 1,300 members owning the membership interests in the First Deed Fund, and approximately 3,600 direct investors (other than the Funds) who own fractional shares of various loans in the Loan Portfolio, with substantial overlap among the members of the Funds and the individual investors holding direct investments in loans within the Loan Portfolio. In other words, a substantial number of the 3,600 individual investors who directly hold the portions of the Loan Portfolio that are not owned by either of the Funds are the same individuals who also invested indirectly in the Loan Portfolio by purchasing membership interests in one or both of the Funds.

5. The Office of the United States Trustee appointed four (4) separate official committees in these cases, as follows:

 a. Official Committee of Unsecured Creditors of USA Commercial Mortgage Company;

 b. Official Committee of Holders of Executory Contract Rights of USA Commercial Mortgage Company;

 c. the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC; and

 d. the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC.

6. The Debtors' new management has focused on three issues:

 a. Reconstituting the Debtors' accounting system so that it accurately reflects past and current collections and disbursement of funds;

 b. Collection of past due interest and principal from borrowers to maximize the recovery from the loan portfolio; and

   c. Working with the four (4) official committees (i) to find potential buyers or partners to fund a plan of reorganization and (ii) to negotiate and prepare a consensual plan of reorganization.

7. The Debtors have a working accounting system and are working on collection of loans. There is a potential buyer for a substantial portion of the Debtors' assets. The Debtor has prepared a plan of reorganization and a disclosure statement for filing. The plan does not have the consent of the official committees and the disclosure statement will be subject to revision to reflect issues that are important to the official committees and parties in interest.

8. The Debtors' 120 day exclusive period to file a plan of reorganization was extended by this Court with the consent of the four (4) official committees to September 15, 2006. Unless the four (4) official committees consent and the Court extends this exclusive period, the Debtors will file their plan of reorganization and disclosure statement on September 15, 2006.

9. The 180 day exclusive period to obtain acceptance of the proposed plan of reorganization by each class of claims or interests that is impaired under the plan will expire on or about October 13, 2006. There is no possibility that the Debtors will be able to obtain approval of the disclosure statement and solicit votes by October 13, 2006. The process will take, at least 90 days and, in a case this size, more likely an additional 120 days.

10. Based on these factors, the Debtors request this Court grant them, at least, until December 31, 2006 the exclusive right to confirm a plan of reorganization conditioned on (a) the Debtors filing of a plan of reorganization and disclosure statement by September 15, 2006 or such later date as the Court allows with the consent of the four (4) official committees and (b) the approval of the Debtors' disclosure statement by November 30, 2006. The Debtors are reserving the right to request a further extension of the 180-day exclusivity if the circumstances warrant it.

## MEMORANDUM OF LAW

Bankruptcy Code §1121 provides for a period time when only the debtor in possession can file a plan of reorganization. Subsection (c) provides:

> (c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—

(1) a trustee has been appointed under this chapter;
(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

Subsection (d) provides:

(d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120- day period or the 180-day period referred to in this section.
    (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
      (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

"Cause" is not defined by the Code.  Courts have struggled with the definition.  One district court stated:

A review of the case law indicates that, although there are a large number of potential factors that have been identified by various courts as being pertinent to a determination of whether cause has been shown, many courts have chosen to rely upon relatively few factors --- albeit different ones --- to determine whether the necessary cause exists to alter the statutory time period set forth in 11 U.S.C. § 1121. See, e.g., In re Amko Plastics, Inc., 197 B.R. at 77 (relying solely upon the debtor's rapid turn-around effort, the lack of prejudice to the creditors, and the absence of an impermissible motivation for the debtor's request for an extension, to conclude that the requisite cause had been shown); In the Matter of Lake in the Woods, 10 B.R. 338, 345 (E.D.Mich.1981) (relying solely upon the legislative history of § 1121(d) to conclude that the requisite cause had not been shown). Furthermore, it appears that the choice of pertinent factors depends largely upon the factual nature of the case before the court. See In re Amko Plastics, Inc., 197 B.R. at 76 ("We are of the opinion ... that the debate by the parties regarding size and complexity is beside the point and does not fairly deal with the thrust of the evidence. Different considerations should be applied in this case.").
Thus, a bankruptcy court faced with the issue of whether the necessary "cause" exists to extend the exclusivity period has a high degree of flexibility in fashioning the appropriate test to be applied, and is not required to apply any particular set of factors, or number of factors, in every case. See In re Public Serv. Co. of New Hampshire, 88 B.R. 521, 534 (Bankr.D.N.H.1988) ("the legislative intent [behind § 1121(d) ] has been construed to leave the question [of cause] to the reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings").

*In re Elder-Beerman Stores Corp.,* 1997 WL 1774880 (S.D.Ohio 1997). Another Court stated as follows:

> The Code does not define "cause" for reducing the exclusivity period. Courts have specified the following factors for determining whether to terminate the exclusivity period: 1) the debtor's use of exclusivity period to force creditors to accept an unsatisfactory or unconfirmable plan; 2) the debtor's delay in filing a plan; 3) gross mismanagement of the debtor's operations; and 4) "acrimonious relations" between the debtor's principals.

*In re Situation Management Systems, Inc.,* 252 B.R. 859, 863 (Bankr. D.Mass. 2000) (citations omitted).

In this case, the Debtors and the four Official Committees have worked diligently to prepare a joint plan and to avoid the potential expense, litigation and delay which would be caused by competing plans. While there is no guarantee of successful conclusion of the joint plan process, a continuance of exclusivity would provide the time for the process to be completed. The facts are that: 1) the Debtors are not using exclusivity to force creditors to accept anything; 2) the Debtors have not delayed filing a plan except to consummate negotiations with the Committees; 3) there is no allegation of mismanagement by the Debtors' current management; and 4) there is no problem between Debtors' principals delaying a plan.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court ratify the approval of the Stipulated Order and extend the Debtors' exclusivity period for obtaining acceptance of a plan from each class of claims or interests that is impaired under the plan to, at least, December 31, 2006 conditioned on (a) the Debtors filing of a plan of reorganization and disclosure statement by September 15, 2006 or such later date as the Court allows with the consent of the four (4) official

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  committees, and (b) the approval of the Debtors' disclosure statement by November 30, 2006.

2  Dated: September 15, 2006

3  /s/     Jeanette E. McPherson
Lenard E. Schwartzer, Esq.
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

Attorneys for Debtor and Debtor-In-Possession