1  Annette W. Jarvis, Utah Bar No. 1649
   Steven C. Strong, Utah Bar No. 6340
2  RAY QUINNEY & NEBEKER P.C.
   36 South State Street, Suite 1400
3  P.O. Box 45385
   Salt Lake City, Utah 84145-0385
4  Telephone: (801) 532-1500
   Facsimile: (801) 532-7543
5  Email: ajarvis@rqn.com

6  Lenard E. Schwartzer, Nevada Bar No. 0399
   Jeanette E. McPherson, Nevada Bar No. 5423
7  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
8  Las Vegas, Nevada 89146-5308
   Telephone: (702) 228-7590
9  Facsimile: (702) 892-0122
   E-Mail: bkfilings@s-mlaw.com
10
   Attorneys for Debtors and Debtors-in-Possession
11

12              **UNITED STATES BANKRUPTCY COURT**

13                      **DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. BK-S-06-10725 LBR |
| 14 USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
| Debtor. | Case No. BK-S-06-10727 LBR |
| 15 In re: | Case No. BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | Case No. BK-S-06-10729 LBR |
| 16 Debtor. | |
| 17 In re: | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Jointly Administered Under |
| 18 Debtor. | Case No. BK-S-06-10725 LBR |
| 19 In re: | |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | Date: |
| 20 Debtor. | Time: |
| 21 In re: | |
| USA SECURITIES, LLC, | |
| 22 Debtor. | **DISCLOSURE STATEMENT FOR** |
| Affects: | **DEBTORS' JOINT PLAN OF** |
| 23 ☒ All Debtors | **REORGANIZATION** |
| ☐ USA Commercial Mortgage Company | **DATED SEPTEMBER 15, 2006** |
| 24 ☐ USA Securities, LLC | |
| ☐ USA Capital Realty Advisors, LLC | |
| 25 ☐ USA Capital Diversified Trust Deed Fund, LLC | **(AFFECTS ALL DEBTORS)** |
| 26 ☐ USA First Trust Deed Fund, LLC | |

27

28

(Left margin, vertical text) SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# I.    INTRODUCTION

USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC (the "Debtors" or the "Plan Proponents") jointly prepared this Disclosure Statement to assist with solicitation of acceptances of the Debtors' Joint Plan of Reorganization Dated September 15, 2006 (The "Plan").  Current management of the Debtors was appointed as of April 13, 2006, the date (the "Petition Date") on which the Debtors' voluntary petitions for relief under Chapter 11 of the Bankruptcy Code were filed in the U.S. Bankruptcy Court for the District of Nevada (the "Court").  Current management has expended great efforts to carefully reconstruct the records of the Debtors to enable the Debtors to present the information contained in this Disclosure Statement and has made reasonable efforts to present information that is as accurate as is reasonably possible.  Nonetheless, because current management has no historical connection with the Debtors, current management cannot verify that any of the information contained herein that is outside of its personal knowledge is accurate or correct.  Unless otherwise defined herein, capitalized terms have the same meaning as in the Plan, a copy of which is attached hereto as *Exhibit 1*.

The Court's approval of this Disclosure Statement constitutes neither a certification that the factual information contained in this Disclosure Statement is accurate nor an endorsement of the Plan.  Certain materials in this Disclosure Statement are taken from other readily available documents or are digests of such documents.  Although efforts have been made to convey accurately the contents of such documents, you are urged to examine the documents themselves and to use the descriptions of documents contained in this Disclosure Statement only after having conducted such an examination.

The purpose of this Disclosure Statement is to assist those who vote on the Plan to make an informed decision whether to vote to accept or reject the Plan.  This Disclosure Statement is not the Plan.  The Plan is summarized in this Disclosure Statement, but the summary is qualified by the terms of the Plan itself.  If there are any inconsistencies

between the Plan and the summary of the Plan contained in this Disclosure Statement, the Plan controls. The Plan should be read in its entirety in conjunction with this Disclosure Statement. No representations are made concerning the Debtors, their business operations, the value of their property, or the value of benefits offered to creditors or other parties in interest in connection with the Plan other than as set forth in this Disclosure Statement. You should not rely on any representations or inducements made to obtain your acceptance or rejection of the Plan that are contrary to the information contained in this Disclosure Statement.

This Disclosure Statement has been prepared by the Plan Proponents in an effort to solicit creditors and equity interest holders to vote to accept the Plan. The Debtors believe that the Plan provides a comprehensive, workable solution to the many complex issues that resulted from the pre-petition irregularities that occurred in the Debtors' businesses – a solution that is the in best interests of the Debtors' creditors, fund members, direct lenders, and other parties in interest. The Plan effectuates a sale of certain assets of USA Commercial Mortgage Company and USA Capital First Trust Deed, LLC, puts in place a mechanism for maximizing the recovery on other assets and claims held by the Debtors, provides for the ongoing servicing and collection of the loans of direct lenders, and provides for an equitable distribution of the proceeds of the Debtors' assets to creditors and fund members.

## II.    VOTING

### A.    Deadline for Receipt of Ballots, and Admonition to Vote If Eligible

ALL BALLOTS MUST BE RECEIVED BY [month] [day], 2006, OR THEY WILL NOT BE COUNTED. As delays in the delivery of mail can occur, the Plan Proponents urge you to mail or deliver your ballots well in advance of the voting deadline.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

IT IS IMPORTANT THAT YOU VOTE.  VOTING ON THE PLAN WILL AFFECT YOUR RIGHTS AND THE EXPENSES INCURRED TO ADMINISTER THIS CASE UNDER THE BANKRUPTCY CODE.  DETERMINING THE OUTCOME OF BALLOTING ON THE PLAN REQUIRES A CALCULATION THAT CONSIDERS THE VOTES OF THOSE CREDITORS AND EQUITY INTEREST HOLDERS (IF ENTITLED TO VOTE) WHO ACTUALLY VOTED ON THE PLAN.  FURTHER, IF THE PLAN IS CONFIRMED, IT IS BINDING ON ALL CREDITORS AND EQUITY INTEREST HOLDERS, WHETHER OR NOT YOU VOTED OR WHETHER OR NOT YOU VOTED FOR OR AGAINST THE PLAN.  THUS, YOUR RIGHTS MAY BE AFFECTED EVEN IF YOU DO NOT VOTE ON THE PLAN.  YOUR OPPORTUNITY TO HAVE THE OUTCOME YOU DESIRE WILL LIKELY BE ENHANCED IF YOU VOTE.   THE PLAN PROPONENTS REQUEST, THEREFORE, THAT YOU VOTE IF YOU ARE ENTITLED TO DO SO AND THAT YOU TAKE STEPS TO INSURE THAT YOUR BALLOT IS RECEIVED IN TIME TO BE COUNTED.

**B.    Entities Entitled to Vote**

Only creditors and equity interest holders whose claims and interests have been both allowed for purposes of voting and are "impaired" by the Plan are entitled to vote on the Plan.  For a claim to be allowed for voting purposes, the claim must be listed in the Debtors' Chapter 11 Bankruptcy Schedules and must not be listed as "disputed," "contingent" or "unliquidated."  If a claim in the Schedules is listed as "disputed," "contingent" or "unliquidated," the holder of the claim will not be entitled to vote absent the timely filing of a Proof of Claim.

If a claim is not listed or is listed as "disputed," "contingent" or "unliquidated," the holder of the claim must have filed a Proof of Claim on or before the bar date set by the Court, which is November 13, 2006, (or one or more of the Debtors must have filed a Proof of Claim for that creditor as permitted by the Federal Rules of Bankruptcy Procedure) for that creditor to be entitled to vote.  Moreover, no holder of a claim will be entitled to vote if any party in interest objects to that claim before balloting on the Plan or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    any amended Plan occurs, unless the Court enters an order allowing the claim for voting

2    purposes notwithstanding the objection.

3        For an equity interest to be allowed, the equity interest holder's asserted interest

4    must appear in the Debtors' Schedules (or be deemed, pursuant to a Court order, to be

5    listed in the Debtors' Schedules), or the holder of the equity interest must have filed a

6    proof of interest before the bar date set by the Court, which is November 13, 2006.  In

7    addition, no entity claiming to hold an equity interest may vote if any party in interest has

8    objected to the allowance of the asserted interest prior to voting on the Plan or any

9    amended Plan, unless the Court enters an order allowing the interest for voting purposes

10   notwithstanding the objection.

11       In addition to the foregoing criteria for voting eligibility, only classes in which the

12   claims or interests of creditors and equity interest holders are "impaired" by the Plan (i.e.,

13   those whose claims or interests are altered or who will not receive the allowed amount of

14   their claims in cash pursuant to the original terms of their agreements) are entitled to vote

15   to accept or reject the Plan.  Holders of claims that are not "impaired" are deemed to have

16   accepted the Plan as a matter of law.  The Plan designates which classes are "impaired"

17   under, and thus entitled to vote on, the Plan.

18       If the claim or interest you hold has been classified in one of the impaired classes of

19   claims or interests created by the Plan, it is important that you vote.  In addition, if you

20   hold more than one claim or interest classified as "impaired" under the Plan, it is important

21   that you vote with respect to each such claim or interest.

22       **C.    Voting Instructions**

23           1.    The Voting Record Date

24       The Bankruptcy Court has approved [month] [day], 2006, as the record date for

25   purposes of determining which creditors and equity interest holders are entitled to vote on

26   the Plan (the "Voting Record Date").

27           2.    The Voting Deadline

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**The Bankruptcy Court has approved [month] [day], 2006 at 4:00 p.m. prevailing Pacific time as the voting deadline (the "Voting Deadline").** To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by (a) first class mail; (b) overnight courier; or (c) personal delivery, **so that they are actually received**, in any case, by the Debtors' solicitation agent, BMC Group, Inc. (the "Solicitation Agent"), at the appropriate address below, no later than the Voting Deadline:

If by first class mail:

BMC Group
Attn: USACM Solicitation Agent
P. O. Box 911
El Segundo, CA 90245-0911
BMC Group

If by overnight courier or personal delivery:

BMC Group
Attn: USACM Solicitation Agent
1330 East Franklin Avenue
El Segundo, CA 90245

AS MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DEADLINE SPECIFIED ABOVE. BALLOTS RECEIVED AFTER THE DEADLINE WILL NOT BE COUNTED.

Each creditor or equity interest holder entitled to vote should receive a ballot for each separately classified, impaired claim or interest held. If you do not receive the required number of ballots with your copy of the Court-approved Disclosure Statement, immediately notify the Solicitation Agent for the Plan Proponents by contacting BMC Group by telephone, toll-free at 888-909-0100.

**D.      Results of Balloting Determined by Class**

Votes on the Plan are determined by class. In general, a class of claimants accepts the Plan if the creditors who vote to accept the Plan hold at least two-thirds (2/3) in dollar

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

amount and constitute more than one-half (1/2) in number of the allowed claims in the class actually voting on the Plan.  In general, a class of equity interest holders accepts the Plan if it accepted by those who hold at least two-thirds (2/3) of the allowed interests in the class actually voting on the Plan.  A class that is not "impaired" under the Plan, and each holder of a claim or interest in that class, are "conclusively presumed" to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.  A class in which the holders of such claims or interests will not receive or retain any property under the Plan on account of their claims or interests is deemed not to have accepted the Plan under Section 1126(g) of the Bankruptcy Code.

E.    **Confirmation Based Upon Acceptance of Plan by All Impaired Classes**

One of the statutory requirements that must be met under Section 1129 of the Bankruptcy Code for the Plan to be confirmed is that each of the impaired classes of claims or interests must have accepted the Plan or, if all impaired classes do not accept the Plan, certain additional requirements are met (including that the Plan is accepted by at least one impaired class of claims as to each of the Debtors) allowing the Plan Proponents to seek to confirm the Plan over the negative vote of one or more classes of claims or interests.

F.    **Confirmation Over the Objections of One or More Impaired Classes**

If the Plan is rejected by one or more impaired classes of claims or interests, but at least one impaired class with respect to each of the Debtors has accepted the Plan, the Plan may still be confirmed by the Court at the request of the Plan Proponents.  To grant such a request, the Court must find, among other things, that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting, impaired class of claims or interests.

The phrases "discriminate unfairly" and "fair and equitable" are defined in Section 1129(b) of the Code and the case law interpreting that statute.  In other words, those phrases are "terms of art" denoting specific criteria for confirmation which the Plan must

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   satisfy to be confirmed by the Court if any impaired class of claims or equity interests

2   rejects the Plan.

3   The Plan Proponent believes the Plan satisfies the statutory criteria required by Section

4   1129(b) of the Code, and the Plan Proponents intend to request confirmation of the Plan in

5   the event it is rejected by any impaired class.

6   **III.    DEADLINE FOR FILING APPLICATIONS OR OTHER REQUESTS FOR PAYMENT OF ADMINISTRATIVE EXPENSES**

7

8           The Plan establishes a deadline for the filing of applications or other requests for

9   payment of administrative expenses.  Generally, administrative expenses are certain types

10  of claims that arise only after the Petition Date and do not include claims that existed as of

11  the Petition Date.  If you have a claim for the payment of administrative expenses under

12  Sections 503(b) and 507(a)(2) of the Bankruptcy Code, you must file with the Court an

13  application or request for payment of such administrative expense on or before the

14  Administrative Expense Claims Bar Date.  If you do not timely file an application or

15  request for payment of an administrative expense claim before that date, your

16  administrative expense claim will not receive any distribution under the Plan and will be

17  discharged and forever barred.

18          Consequently, if you have a claim for payment of an administrative expense, review

19  the provisions of the Plan and this Disclosure Statement and timely file an application or

20  request for payment of such administrative expense to which you may be entitled with the

21  Clerk of the Court at the following address, or your claim will be forever barred:

22          U.S. Bankruptcy Court
            Foley Federal Building
23          300 Las Vegas Boulevard South
            Las Vegas, NV 89101
24

25  In addition, send a copy of the application or request to attorneys for the Plan Proponents:

26          Annette W. Jarvis
            Steven C. Strong
27          36 South State Street, Suite 1400
            P.O. Box 45385
28          Salt Lake City, Utah 84145-0385

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**IV.    DEADLINE FOR FILING PROOFS OF CLAIM ARISING FROM REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

The Plan provides that all remaining unexpired leases or executory contracts are rejected, as permitted by Sections 365 and 1123 of the Bankruptcy Code, other than any executory contract or unexpired lease set forth on a schedule to be filed with the Court by the Plan Proponents by no later than 15 days prior to the voting deadline on the Plan. Although they reserve their right to do so, the Plan Proponents do not currently anticipate listing any additional executory contracts or unexpired leases to be assumed under the Plan. If you have an unexpired lease or an unfulfilled executory contract with any of the Debtors that has been or is thus rejected, you have until thirty days after the Confirmation Date, or, in other words, thirty days after the date that the Confirmation Order is entered, to file with the Court a claim for damages arising from the rejection of the unexpired lease or executory contract. If you do not timely file a claim within this time period, you will not receive any distribution on your claim under the Plan and your claim will be discharged and forever barred.

If you have such a contract or lease with one of the Debtors, review the provisions of the Plan and this Disclosure Statement and timely file a proof of any claim to which you may be entitled with the Clerk of the Court at the following address or your claim will be forever barred:

U.S. Bankruptcy Court
Foley Federal Building
300 Las Vegas Boulevard South
Las Vegas, NV 89101

In addition, send a copy of the proof of claim to attorneys for the Plan Proponents:

Annette W. Jarvis
Steven C. Strong
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

## V.    DATE AND TIME OF HEARING ON CONFIRMATION OF THE PLAN

A copy of the Plan is attached as *Exhibit 1* to this Disclosure Statement.  The Court has scheduled a hearing to consider Confirmation of the Plan on [month] [day], 2006 at [time] in the courtroom of the Honorable Linda Reigle.  The Court has ordered that objections, if any, to confirmation of the Plan be filed on or before [month] [day], 2006 and served on the attorneys for the Plan Proponents at the following address:

> Annette W. Jarvis
> Steven C. Strong
> 36 South State Street, Suite 1400
> P.O. Box 45385
> Salt Lake City, Utah 84145-0385

The date of the Confirmation Hearing may be continued to such later time(s) as the Court may announce during the Confirmation Hearing without further written notice.

## VI.    DESCRIPTION OF THE DEBTORS AND THEIR BUSINESSES

### A.    USA Commercial Mortgage Company

USA Commercial Mortgage Company ("USACM"), which sometimes did business under the trade name "USA Capital," is a Nevada corporation with its main office in Las Vegas.  Public records of the Nevada Secretary of State indicate that USACM was organized as of February 28, 1989.  Prior to the Petition Date, USACM was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by undeveloped land and residential and commercial developments, both on behalf of investors and for its own account.  USACM has been licensed as a mortgage broker by the State of Nevada since January 11, 1990, although its license has been limited after the Petition Date to exclude raising investment funds from individual investors.

The primary shareholders of USACM are Thomas A. Hantges, Joseph D. Milanowski and Paul S. Hamilton, and they also managed USACM as officers and its board of directors prior to the Petition Date.  As of the Petition Date, they relinquished management authority to Thomas J. Allison of Mesirow Financial Interim Management, LLC ("MFIM"), who became the President, Chief Restructuring Officer, and Chief

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Executive Officer of USACM on that date and continues to serve in that capacity. The other principal officers of USACM appointed after the Petition Date are Mark L. Olson, Vice President and Chief Operating Officer; Robert A. Hilson, Treasurer and Chief Financial Officer; and A. Faisal Siddiqui, Vice President and Chief Technology Officer. As of the Petition Date, the loan portfolio USACM was servicing consisted of approximately 115 loans having a combined outstanding balance of approximately $960 million. Since the Petition Date, USACM's new management has aggressively engaged in efforts to collect outstanding loan amounts. As of July 31, 2006, the total outstanding balance of the serviced loans was approximately $846 million. A loan summary spreadsheet created by MFIM providing information as of August 13, 2006 concerning each of the serviced loans is attached hereto as *Exhibit 2*. Similar loan summaries created by MFIM as of earlier dates, including April 26, 2006, May 26, 2006, and June 30, 2006, are available for review on USACM's website, usacapitalcorp.com.

Prior to the Petition Date, USACM's business included soliciting individual investors to purchase fractional interest in loans, as well as originating and servicing the loans. As of the Petition Date, there were approximately 3,600 investors whose names appear as a "Lender" in the documents for one or more of the serviced loans. In the Debtors' bankruptcy cases and in the Plan, the loan investors have been referred to as "Direct Lenders." Many of the Direct Lenders invested in more than one of the serviced loans, with the average being approximately 3 to 4 loans for each Direct Lender. Along with being the servicer, USACM is itself a Direct Lender having an aggregate investment of approximately $2 million as of June 30, 2006 in the serviced loans. Two of the other Debtors, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, are also Direct Lenders having interests in certain of the serviced loans, as explained below.

## B.    USA Capital Diversified Trust Deed Fund, LLC

USA Capital Diversified Trust Deed Fund, LLC ("DTDF") is a Nevada limited liability company organized as of February 3, 2000. It appears that the purpose of DTDF

1  was to allow USACM to offer investors (in Nevada only) the opportunity to invest by

2  purchasing membership interests in a fund that invested in various loans, rather than (or in

3  addition to) investing directly in the loans.  Because DTDF was not a fund registered with

4  the U.S. Securities and Exchange Commission, it could not solicit investors beyond the

5  State of Nevada.  DTDF's stated purpose was to make or purchase entire or fractional

6  interests in acquisition, development, construction, bridge or interim loans secured by first

7  deeds of trust, among other things, on undeveloped land and residential and commercial

8  developments located primarily in the United States.  There was a continuous offering of

9  membership interests (known as "units") in DTDF from May 2000 to July 2004.  In July

10 2004, DTDF stopped offering the sale of membership units, and on September 27, 2005

11 the investors were notified that DTDF would be liquidating.  DTDF had approximately

12 1,350 members as of the Petition Date.  The aggregate outstanding balance owed to DTDF

13 on its loan investments as of July 31, 2006 was $106,040,773, consisting of 23 loans in

14 which DTDF invested as a Direct Lender.  The loans were all originated by USACM.

15      Prior to the Petition Date, the manager of DTDF was another of the Debtors, USA

16 Capital Realty Advisors, LLC (described below).  On and after the Petition Date and

17 pursuant to resolutions filed with DTDF's bankruptcy petition, Thomas J. Allison of

18 MFIM became the sole manager of DTDF, and pursuant to an Order of the Court, Mr.

19 Allison is also serving as the chief restructuring officer of DTDF as well as the four other

20 Debtors.

21      C.      USA Capital First Trust Deed Fund, LLC

22      USA Capital First Trust Deed Fund, LLC ("FTDF") is a Nevada limited liability

23 company organized as of February 16, 2001.  It appears that the purpose of FTDF was to

24 allow USACM to offer investors throughout the United States (not just in Nevada, as was

25 the case with DTDF) the opportunity to invest by purchasing membership interests in a

26 fund that invested in various loans, rather than (or in addition to) investing directly in the

27 loans.  Prior to the Petition Date, FTDF filed reports and disclosures with the SEC.

28 FTDF's stated purpose was to make or purchase entire or fractional interests in acquisition,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

12

development, construction, bridge or interim loans secured by first deeds of trust, among other things, on undeveloped land and residential and commercial developments located primarily in the United States.  FTDF had approximately 950 members as of the Petition Date.  The aggregate outstanding balance owed to FTDF on its loan investments as of July 31, 2006 was $62,653,825, consisting of 47 loans in which FTDF invested as a Direct Lender.  The loans were all originated by USACM.

FTDF offered four classes of membership, Class A, B, C and D.  Class A Members agreed to commit their capital contributions for a period of twelve (12) months and were to receive the "Class A Preferred Return" defined as "nine percent (9%) per annum, or such other percentage determined by the Manager from time to time, in its sole and absolute discretion, without reinvesting."  See Second Amended and Restated Operating Agreement of FTDF, dated as of June 1, 2003 ("FTDF Operating Agreement") ¶¶ 1.13, 1.14, & 1.15. Class B Members agreed to commit their capital contributions for a period of twenty-four (24) months and were to receive the "Class B Preferred Return" defined as "ten percent (10%) per annum, or such other percentage determined by the Manager from time to time, in its sole and absolute discretion, without reinvesting."  See FTDF Operating Agreement ¶¶ 1.16, 1.17, & 1.18.  Class C Members agreed to commit their capital contributions for a period of thirty-six (36) months and were to receive the "Class C Preferred Return" defined as "eleven percent (11%) per annum, or such other percentage determined by the Manager from time to time, in its sole and absolute discretion, without reinvesting."  See FTDF Operating Agreement ¶¶ 1.19, 1.20, & 1.21.  The Class D Member of FTDF is USA Securities, LLC (see below), and does not receive the returns described above for Class A Members, Class B Members, and Class C Members.

Prior to the Petition Date, the manager of FTDF was USA Capital Realty Advisors, LLC (described below).  On and after the Petition Date and pursuant to resolutions filed with FTDF's bankruptcy petition, Thomas J. Allison of MFIM became the sole manager of FTDF, and pursuant to an Order of the Court, Mr. Allison is also serving as the chief restructuring officer of FTDF as well as the four other Debtors.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

### D.    USA Securities, LLC

2    USA Securities, LLC ("USA Securities") is a Nevada limited liability company

3    organized as of March 3, 1999.  The Company is a registered broker-dealer under SEC

4    Rule 15c3-1(a)(2)(vi) and was a member of the National Association of Securities Dealers

5    (NASD).  It appears that the primary business of USA Securities was to sell membership

6    interests in FDTF.  USA Securities is dormant and has conducted no business on or after

7    the Petition Date.

8        Prior to the Petition Date, the sole members and co-managers of USA Securities

9    were Joseph Milanowski and Paul Hamilton.  On and after the Petition Date and pursuant

10    to resolutions filed with USA Securities' bankruptcy petition, Thomas J. Allison of MFIM

11    became the sole manager of USA Securities, and pursuant to an Order of the Court, Mr.

12    Allison is also serving as the chief restructuring officer of USA Securities as well as the

13    four other Debtors.

14

### E.    USA Capital Realty Advisors LLC

15    USA Capital Realty Advisors LLC ("Realty Advisors") is a Nevada limited liability

16    company organized as of January 18, 2001.  USA Capital Realty Advisors LLC is a

17    Nevada limited-liability company and is the manager of USA Capital First Trust Deed

18    Fund and USA Capital Diversified Trust Deed Fund.  In turn, USA Capital Realty

19    Advisors LLC is managed by USACM.  USA Capital Realty Advisors LLC is owned by

20    USA Investment Partners.

21        Prior to the Petition Date, the members of Realty Advisors were Joseph Milanowski

22    and Paul Hamilton, and the sole managing member was Joseph Milanowski. On and after

23    the Petition Date and pursuant to resolutions filed with Realty Advisors' bankruptcy

24    petition, Thomas J. Allison of MFIM became the sole manager of Realty Advisors, and

25    pursuant to an Order of the Court, Mr. Allison is also serving as the chief restructuring

26    officer of Realty Advisors as well as the four other Debtors.

27

### F.    Other Related Entities

28    Attached hereto as *Exhibit 3* is a chart showing relationships among the five

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Debtors and certain related non-debtor entities.

2        **G.    Factors Precipitating Debtors' Bankruptcy Filings**

3        Prior to April 2006, it appears that USACM regularly made monthly interest

4    payments to Direct Lenders regardless of whether the particular loans in which the Direct

5    Lenders had an interest were performing or nonperforming.  For example, during the first

6    three months of 2006, USACM collected on average approximately $5.3 million per month

7    in interest payments on the serviced loans but paid out on average approximately $9.7

8    million per month to the Direct Lenders.  MFIM has determined that as of the Petition

9    Date, USACM made approximately $39.5 million in such "pre-paid" interest payments to

10   Direct Lenders.  USACM did not have sufficient funds to make monthly interest payments

11   to all Direct Lenders in April 2006, and therefore did not make the March 2006 payments

12   to any of the Direct Lenders.  USACM's inability to continue making monthly payments to

13   all Direct Lenders was a significant contributing factor to the Debtors' decision to file for

14   bankruptcy protection.

15       Another significant contributing factor was an investigation by the U.S. Securities

16   & Exchange Commission ("SEC").  Prior to the Petition Date, USACM and FTDF

17   received notice from the SEC that they were the subject of a Regulatory Investigation.  The

18   Debtors believed that a reorganization under Chapter 11 of the Bankruptcy Code would

19   result in a greater return to creditors of their estates and to Direct Lenders than would a

20   potential receivership by the SEC.

21   **VII.    POST-PETITION DEVELOPMENTS**

22       **A.    Investigating and Restating Debtors' Loan Records**

23       On April 13, 2006 the Debtors filed for bankruptcy protection.  Thomas J. Allison

24   of MIFM was appointed by the Board of Directors as the President, Chief Executive

25   Officer, and Chief Restructuring Officer of USACM, and as the Manager and Chief

26   Restructuring Officer of the other Debtors (which are limited liability companies).  Mr.

27   Allison's first action was to terminate the employment of Joseph Milanowski and Thomas

28   Hantges as the principal officers and management of USACM.  Mr. Allison and MFIM

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

next began an intensive review and investigation of the books and records of USACM and the related Debtors. USACM was the loan servicer for the portfolios of the Direct Lenders, including FTDF and DTDF. To date, the post-petition investigation of the Debtors, which is ongoing, indicates that USACM made monthly payments to the Direct Lenders and the two Funds regardless of whether the borrower had paid the interest due. Full principal repayments by at least four borrowers were collected by USACM but not disbursed to the appropriate Direct Lenders. Evidence of other irregularities includes a lack of any attempt to obtain collateral to secure at least one loan, loans without properly perfected security interests, loans secured by second liens and other potential violations of the Nevada mortgage lending statute. In addition, many of the loans appear to have been extended to borrowers who were affiliated or otherwise related to USACM's pre-petition management, such that the owners and officers of USACM were partial owners of the borrower entities through one or more of their various entities. Many of these loans were non-performing loans in that the underlying borrower had not paid the interest due.

Further investigation and analysis has continued. To date, the history of fundings, assignments of fractional interests in an out of loans, interest paid and received and principal payments has been reconstructed for 110 of the 115 loans. Five loans are still under investigation due to lack of records, foreclosure, litigation, or other special situations. This reconstruction identified over 25 loans which were seriously delinquent (over 6 months past due). Collection efforts have focused on these 25 loans, and other past due loans.

**B.    Significant Post-petition Motions and Other Court Filings**

Many significant motions and other papers have been filed with and ruled on by the Court in the Debtors' jointly administered bankruptcy cases. As of August 28, 2006, the Court's docket in the jointly administered case (Bankruptcy Case No. 06-10725) contains 1,196 entries. The full docket and copies of all of the significant filings and orders in the Debtors' bankruptcy cases are publicly available free of charge through the Debtors' website, usacapitalcorp.com (click on "Filings"). Several of the most significant Court

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    rulings to date are detailed below.

2         1.    Orders Approving Debtors' Use of Cash.  If the Debtors were not able

3    to use the cash in the Debtors' bankruptcy estates, the Debtors would be unable to collect

4    amounts owed from borrowers on outstanding loans and unable to continue other business

5    operations essential in attempting to maximize the return to creditors, direct lenders, and

6    fund members in these bankruptcy cases.  In response to periodic motions made by the

7    Debtors requesting permission to continue using cash for the essential operations and

8    administrative expenses of the Debtors, the Court entered orders on April 19, May 9, May

9    22, July 25, and September 14, 2006, allowing Debtors to continue using cash in the

10   Bankruptcy estates pursuant to proposed cash budgets prepared by MIFM.  A copy of the

11   most recent cash budget approved by the Court, which projects cash usage through

12   October 29, 2006, is attached hereto as *Exhibit 4*.

13        2.    Orders Approving Debtors' Employment of Professionals.  The

14   Debtors filed applications requesting authority to retain Thomas J. Allison as chief

15   restructuring officer, MIFM as restructuring and financial advisors, Ray Quinney &

16   Nebeker P.C. as general bankruptcy counsel, and Schwartzer-McPherson Law Firm as

17   local Nevada bankruptcy counsel.  On April 19, 2006, the Court entered an order granting

18   interim approval through July 27, 2006 for the Debtors to employ Mr. Allison and MIFM.

19   On June 5, 2006, the Court entered its orders granting interim approval through July 27,

20   2006 for the Debtors to employ the two law firms as legal counsel.  On August 11, 2006,

21   the Court entered a further order granting approval for the continued retention of the

22   Debtors' professionals through October 2, 2006.

23        3.    Four Official Committees and Their Professionals.  On May 10, 2006,

24   the U.S. Trustee's office filed notices indicating that four committees had been formed in

25   the Debtors' cases: (a) the Official Committee of Unsecured Creditors of USA

26   Commercial Mortgage Company; (b) the Official Committee of Holders of Executory

27   Contract Rights Through USA Commercial Mortgage Company; (c) the Official

28   Committee of Equity Security Holders of USA Capital Diversified Trust Fund, LLC; and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(d) the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC.  Shortly thereafter, the Court approved applications by each of the committees to employ legal counsel and the applications of three of the four committees to employ financial advisors (the Executory Contract Rights Committee has not employed a financial advisor).  Each of the committees has established a website containing further information that is available through a link on the usacapital.com website.

4.      Approval of Motion to Hold Funds.    On May 8, 2006, USACM filed a motion requesting permission to temporarily hold funds pending a determination of the proper recipients.  USACM filed this motion, as directed by the Court, to obtain permission from the Court to continue holding funds in USACM's loan servicing collection account until USACM could complete its review and restatement of the Debtors' loan servicing records.  After considering all of the responses and oppositions to the motion, the Court granted USACM's motion in an order entered July 7, 2006.  Although the Court approved USACM's request to continue to hold the funds temporarily, the Court did not make any rulings respecting the rights of any party to the funds that were being held.

5.      Debtors' Bankruptcy Statements and Schedules.  On June 15, 2006, each of the Debtors filed its Statement of Financial Affairs and its Schedules of Assets and Liabilities, as required by the Bankruptcy Code, and on June 23, 2006, certain amendments to the Statements and Schedules were filed.  Given the pre-petition loan servicing irregularities and problems with the Debtors' accounting records, the preparation and filing of the Statements and Schedules represented a major effort by the Debtors' new management and MFIM.

6.      Investor Statements Mailed to All Direct Lenders and Fund Members.  Although not filed with the Court, Investor Statements as of the Petition Date were prepared and mailed to all direct lenders and fund members on July 10, 2006, and this was a major milestone in the Debtors' cases.  After completing the accounting investigations and restatements necessary to produce and file the Statements and Schedules, the Debtors

1    were then able to prepare and mail these Investor Statements for each Direct Lender

2    indicating their positions with respect to each loan in which they had an interest as of the

3    Petition Date.  Investor Statements were also prepared and mailed for the Fund Members

4    indicating their respective interests in the two Funds.  Shortly thereafter, the Debtors were

5    able to update the loan accounting records for each Direct Lender through June 30, 2006,

6    and on July 27, 2006 mailed out the updated Investor Statements as of June 30, 2006 to all

7    Direct Lenders.

8            7.     <u>$65 Million Distribution Approved by Court and Mailed to Investors</u>.

9    One of the primary goals of Debtors' new, post-petition management was to distribute to

10   investors, as promptly as possible after the initial accounting work and reconstruction of

11   the loan records was completed, a significant portion of the funds USACM had collected

12   and was holding.  The Debtors accomplished this goal through their Motion to Distribute

13   Funds, which elicited numerous responses and oppositions but which was approved by the

14   Court at a hearing held August 4, 2006.  The Court's order granting the motion was

15   entered on August 24, 2006, and the distributions, totaling approximately $65 million,

16   were mailed to Direct Lenders on August 25, 2006.  Shortly thereafter, FTDF distributed

17   the approved portion of the payments it received to its Fund Members.

18   **VIII.   DESCRIPTION OF POST-PETITION OPERATIONS**

19           Thomas J. Allison and the MFIM staff investigated the allegations of improper

20   accounting for the Serviced Loans to reconstruct the books and records of the loan

21   portfolio in order to properly account for the payments and disbursements made with

22   respect to each loan in the portfolio.  The reconstruction effort focused on accounting for

23   each loan on a separate basis.  This effort necessarily included an analysis of the position

24   of each Direct Lender in each specific loan.  Under Thomas Allison's direction, USACM

25   prepared a Loan Summary as of the Petition Date containing various data respecting the

26   115 loans that constitute the Serviced Loans.  To obtain the information necessary for the

27   Loan Summary, as well as for the Debtors' Schedules and Statement of Financial Affairs,

28   and the Investor Statements prepared as of the Petition Date, it was first necessary to

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  obtain, analyze and reconstruct the loan data.  This process began with analyzing the

2  existing USACM database containing data from 2004-2006.  As of the Petition Date,

3  USACM's loan servicing database contained substantial errors, including but not limited to

4  the following:  (a) some borrower payments were not entered into the system; (b) most

5  interest payments from borrowers were not posted in a timely manner; (c) payments were

6  not applied according to the governing loan documents, which indicate that payments are

7  applied first to outstanding interest, then principal; (d) the amount of interest owed by

8  borrowers was not calculated with the correct number of days outstanding or correct

9  amount of principal owing; (e) check numbers used were not in sequence or were used

10  multiple times; and (f) servicing fees were not charged, or were calculated incorrectly

11  using an interest rate "spread" rather than the loan service fee allowed pursuant to the

12  Servicing Agreements signed by each Direct Lender.  The research of USACM's books

13  and records also revealed that the historical data prior to 2004 were kept in Access or

14  Excel electronic files that were overwritten as they were updated, leaving no historical data

15  or audit trail.  In addition, there was no reliable system for tracking the numerous

16  assignments in and out of various loans. Thus, in order to reconstruct the accounting for

17  each loan, it was necessary to review and analyze the source documentation of Direct

18  Lenders' deposits of investment funds, fundings to the borrowers, and assignments of

19  Direct Lenders in or out of a loan.  Bank deposits, deposit or clear dates from bank

20  statements, and Assignments were reviewed and documented.  A Loan General Ledger

21  was prepared for each of the Serviced Loans using the source data and applying the correct

22  interest rate and days outstanding, applying payments first to outstanding interest then to

23  principal, correcting to use actual dates for the receipt of interest payments, calculating the

24  amount of unpaid interest owed to Direct Lenders as the promissory note interest rate less

25  a 1% loan servicing fee allowed under the Servicing Agreements, tracking assignments in

26  and out of various loans, and recharacterizing payments made to Direct Lenders on a

27  particular loan after the borrower had repaid the loan as principal repayments, not interest

28  payments (because interest was no longer due from the borrower).

1    USACM, as directed by Mr. Allison has also focuses its efforts on collecting the

2    loans in the portfolio.  USACM determined that there were loans that had matured as well

3    as loans with uncollected interest.  A team consisting of USACM staff and MFIM staff has

4    worked diligently to collect the monies due the Direct Lenders, including the Funds.  As of

5    July 31, the team has collected $103 million, consisting of $12 million in past due interest,

6    $75 million in principal, and $16 million in current interest.  In addition, MFIM estimates

7    that 10 loans should be collected in the next 90 days, including at least 3 with substantial

8    amounts of past due interest.

9

10    [*Remainder of page intentionally left blank.*]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

The total amount in the Collection Account as of August 24, 2006 includes the following amounts received from borrowers since April 13, 2006 on loans that were repaid in full (no principal balance remains):

*Loans Collected in Full After*
*the Petition Date*

| Loan Name | Principal repaid | Interest repaid | Date |
|---|---|---|---|
| Opaque/Mt Edge | $4,827,970.00 | $856,614.77 | 4/28/2006 |
| Del Valle Isleton | $6,420,000.00 | $123,604.23 | 5/23/2006 |
| HFA North Yonkers | $24,000,000.00 | $4,168,402.75 | 5/26/2006 |
| HFA Riviera 2nd | $5,000,000.00 | $767,361.09 | 5/26/2006 |
| Riviera Homes For America | $8,000,000.00 | $2,698,080.00 | 5/26/2006 |
| Golden State | $2,850,000.00 | $173,041.84 | 6/5/2006 |
| 5252 Orange | $3,800,000.00 | $62,965.56 | 6/9/2006 |
| Copper Sage | $179,105.65 | $14,508.78 | 6/22/2006 |
| Gilroy | $4,950,000.00 | $494,247.79 | 6/30/2006 |
| Midvale Market Place | $4,075,000.00 | $366,232.33 | 7/14/2006 |
| Fiesta Beaumont | $2,400,000.00 | $17,499.93 | 7/21/2006 |
| Roam Dev. (may have small remaining principal balance) | $24,528,806.77 | $272,868.36 | 8/2/2006 |
| Glendale Partners | $6,500,000.00 | $288,580.07 | 8/21/2006 |
| Urban Housing Alliance | $8,150,000.00 | $261,473.35 | 8/21/2006 |
| TOTALS: | $105,680,882.42 | $9,742,559.07 | |

## IX.    SUMMARY OF THE PLAN

This part of the Disclosure Statement summarizes the provisions of the Plan.  The Plan, after it has been confirmed, will constitute a contract between the Debtors and their creditors and equity security holders.  If confirmed, the Plan will be binding on all parties in interest in the case.  The Plan will be binding on all creditors and equity security holders, whether or not they voted for the Plan.  It is therefore advisable, as mentioned

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

22

above, that they review the Plan carefully for the full details of the treatment of creditors and equity interest holders and seek the assistance of their own counsel and other professionals as each party may deem appropriate to ensure they adequately understand the Plan and its consequences.

### A.    Overview of the Plan

All capitalized terms used in this section of the Disclosure Statement are defined in the Plan.

On the Effective Date, USACM and First Trust will sell the Acquired Assets, free and clear of Liens and Interests, to the Asset Acquirer for the Total Cash Purchase Price pursuant to the terms of an Asset Purchase Agreement and Article V of the Plan. The First Trust Purchase Price along with First Trust's Expense Reserve will be deposited into the FT Distribution Account, and the Expense Reserves of each of the other Debtors will be deposited into their respective Distribution Accounts. Unclassified Claims and Allowed Class 1 Claims for each Debtor, if any, will be paid by the Applicable Debtor on the Effective Date from its Distribution Account. On the Initial Distribution Date, the Debtors will distribute the Cash in their Distribution Accounts, net of any Payment Reserves and amounts to be contributed to the USACM, First Trust, or USA Securities Liquidation Trusts or to be retained by the Diversified Post-Effective Date Estate, including any Net Expense Reserves, to Holders of Allowed Claims and Holders of Allowed Interests in the priority and amounts and pursuant to the procedures specified in the Plan.

Within thirty (30) days of the Effective Date, and in accordance with Article V of the Plan and the USACM, First Trust, and USA Securities Liquidation Trust Agreements and the Diversified Liquidation Agreement, (A) the First Trust Excluded Assets, including its Net Expense Reserve, will be transferred to the First Trust Liquidation Trust; (B) the USACM Excluded Assets, including its Net Expense Reserve, will be transferred to the USACM Liquidation Trust, (C) the USA Securities Estate, including its Net Expense Reserve, will be transferred to the USA Securities Liquidation Trust, and (D) the Diversified Excluded Assets will be retained by the Diversified Post-Effective Date Estate.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

The Trust Estates of the each of the Liquidation Trusts and the Diversified Post-Effective Date Estate will be liquidated by separate Estate Administrators and Advisory Committees pursuant to the Plan and the Applicable Liquidation Trust or Liquidation Trust Agreement. The liquidation proceeds will be distributed to Beneficiaries of the Applicable Liquidation Trusts or to the Holders of Allowed Claims and Allowed Interests of the Diversified Estate in the priority and amounts specified herein, and pursuant to the procedures set forth herein and in the Liquidation Trust, the Liquidation Trust Agreements, or the Diversified Liquidation Agreement.

In the event that the sale of the Acquired Assets to the Asset Acquirer does not close as the result of a condition of sale not being met or for any other reason on or before 120 days following the Due Diligence Completion Date, as defined in the Silver Point Term Sheet, as the same may be extended by agreement between the Debtors and the Asset Acquirer, the First Trust Assets will be transferred to the First Trust Liquidation Trust and the USACM Assets will be transferred to the USACM Liquidation Trust for liquidation by those Trusts pursuant to the terms of the Applicable Liquidation Trust Agreements and the Plan.

The USA Capital Realty Estate will be liquidated under the Plan and Cash, if any, will be deposited in Distribution Account of USA Capital Realty for distribution in accordance with the terms of the Plan.

**B.    Unclassified Claims and Treatment**

The Plan addresses certain unclassified claims for which treatment is mandated under the Bankruptcy Code.  These include Administrative Expense Claims under Sections 503(b) and 507(a) (1), and Priority Tax Claims under Section 507(a)(8) of the Bankruptcy Code.  Administrative Expense Claims will be paid in full if the Plan is confirmed and fully implemented.  The Administrative Expense Claims include the allowed professional fees and costs of the Debtors' professionals and of the four official committees appointed by the U.S. Trustee's office in these cases.  To the extent there are any Priority Tax Claims (which would be unsecured tax claims) under Section 507(a) (8) of the Bankruptcy Code,

1   they will be paid in full as provided in the Plan.

2       **C.    Specific Classes of Claims and Interests, and Treatment of Each Class**

3       While this Disclosure Statement provides a brief description of the types of

4   potential Claims to receive treatment under the Plan, NOTHING IN THIS DISCLOSURE

5   STATEMENT OR IN THE PLAN IS INTENDED TO, NOR DOES IT, CONSTITUTE

6   AN ADMISSION THAT ANY CLAIM OR EQUITY INTEREST IS OR SHOULD BE

7   ALLOWED.  THE DEBTORS RESERVE ALL RIGHTS TO OBJECT TO ANY AND

8   ALL CLAIMS OF ANY CREDITOR OR EQUITY INTEREST HOLDER UNDER THE

9   PLAN.

10      A table indicating each of the specified classes under the Plan and a brief summary

11  of the proposed treatment for each class is attached hereto as *Exhibit 5*.

12      **D.    Pre-Paid Interest**

13      Prior to the Confirmation Date, as one of the various theories the Debtors can

14  present with respect to the collected Pre-Paid Interest, the Debtors intend to file a

15  disparities pleading related to the Debtors' right to retain and use the Pre-Paid Interest

16  collected from Borrowers to date as property of the estate.  With respect to any Pre-Paid

17  Interest collected or which could be collected from Borrowers that is not the subject of any

18  filed pleading as of the Confirmation Date or as to which has not been ruled on as of the

19  Confirmation Date, any Lender claiming an interest in such funds that have been or could

20  be collected from a Borrower must file an adversary proceeding within thirty (30) days

21  following the Confirmation Date identifying the specific right such Lender has to any

22  specific money collected or to be collected from a specific Borrower on an identified Loan,

23  the amount of such Claim by the Lender, and the Loan into which the Lender believes it

24  can trace or otherwise assert an individual right to recover such amount upon collection

25  from the specific Borrower on the identified Loan (the "Lender Claim").  The Debtors or

26  an Estate Administrator, as appropriate, will reserve the amounts claimed currently or as

27  collected by a Lender unless and until a Final Order is entered with respect to the Lender

28  Claim.  In responding to the Lender Claim, the Debtors or an Estate Administrator reserves

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the right to assert any and all legal and factual theories available to the USACM Estate to defeat the Lender Claim.  All Pre-Paid Interest collected from Borrowers by the Asset Acquirer after the closing of the transfer of the USACM Assets to the Asset Acquirer shall be paid to the USACM Liquidation Trust, subject to the Court's final determination on any Lender Claim relating to the Pre-Paid Interest collected.  As part of the Confirmation Order, the Court shall order the Asset Acquirer to pay the post-closing Pre-Paid Interest to the USACM Liquidation Trust in accordance with this paragraph.

Pending the occurrence of the Effective Date or an earlier dispositive ruling, USACM shall continue to net USACM's claims for Pre-Paid Interest against distributions to the Lenders pursuant to Debtors' Motion to Distribute Funds and hold such netted Cash, separately accounted for, in the Debtors' Collection Account.  Unless a dispositive pleading is filed by the Debtors and ruled on by the Bankruptcy Court prior to the later of (i) the 120th day after the Confirmation Date or (ii) the Effective Date, with respect to the funds netted against distributions to Lenders pursuant to the Debtors' Motion to Distribute Funds and this Plan, Cash held by USACM from distributions to Lenders to cover potential recoupment and other claims of USACM for recovery of Pre-Paid Interest not yet paid by a Borrower as of the Confirmation Date will be held for the later of (i) 120 days after the Confirmation Date, or (ii) the Effective Date.  If, at the end of the later of (i) the 120th day after the Confirmation Date, or (ii) the Effective Date, the Pre-Paid Interest to which this Cash relates has not yet been paid by the relevant Borrower, USACM or the USACM Liquidation Trust will recoup the amount of unpaid Pre-Paid Interest from each Lender and, as necessary, will provide written instruction to the Third Party Servicer to pay Pre-Paid Interest collected thereafter from the Borrower (which has already been recouped from the Lender) to the Lender.  During this 120-day period, the Lenders shall not be either sued or recoupment made of the Cash held back to pay the Pre-Paid Interest. As to any Pre-Paid Interest that is not collected from the Borrower or from the Lender through the recoupment process within 120 days after the Confirmation Date, USACM or, if the USACM Estate Administrator has been appointed, the USACM Estate Administrator

1    may, at its, his, or her option and discretion, pursue any such claims or causes of action on

2    behalf of USACM or the USACM Liquidation Trust and pursuant to the time table

3    determined to be appropriate by the Estate Administrator at his or her discretion.

4        **E.**    **Assumption or Sale of the Loan Servicing Agreements**

5           Effective on the Effective Date, pursuant to §§ 365 and 1123(b)(2) or §§ 363 and

6    1123(a)(5) of the Bankruptcy Code, the Loan Servicing Agreements identified as part of

7    the USACM Assets shall either be transferred to the Asset Acquirer pursuant to the Plan

8    and the Confirmation Order free and clear of Liens, Claims, and Interests, including any

9    alleged Claims under § 503(b) of the Bankruptcy Code, or through a process mutually

10   agreeable to the Asset Acquirer and the Debtors, as may be set forth in the definitive Asset

11   Purchase Agreement; provided, however, that no process will be agreed to that would

12   result in the assertion of any Claims under § 503(b) of the Bankruptcy Code that could

13   arise out of the transfer of the Loan Servicing Agreements.  With respect to the Loans that

14   are part of the Diversified Excluded Assets and the First Trust Excluded Assets or in the

15   event of a self-liquidation, the First Trust Liquidating Trust (with respect to the First Trust

16   Excluded Assets, or, in the event of a self liquidation, the First Trust Serviced Loans), the

17   Diversified Post-Effective Date Estate (with respect to the Diversified Excluded Assets),

18   and the USACM Liquidating Trust (with respect to the Serviced Loans) the Loan

19   Servicing Agreements shall, except with respect to Loans that are wholly owned by

20   Diversified or First Trust, the Debtors shall have the option to retain and then transfer to

21   the USACM Liquidating Trust their respective Loan Servicing Agreements, collect the

22   contractual fees and service the loans covered by such Agreements or, as part of this Plan,

23   to transfer the Loan Servicing Agreements to a licensed and, in the business judgment of

24   the Debtors, properly capitalized Third Party Servicer.  With respect to Loans that are

25   wholly owned by Diversified or First Trust, the First Trust Estate Administrator and the

26   Diversified Estate Administrator respectively shall make the determination as to whether

27   the Loans are serviced by the First Trust Liquidating Trust or the Diversified Post-

28   Effective Date Estate respectively or a Third Party Servicer of the respective Estate

Administrator's choice.

**F.    Assumption of General Executory Contracts**

Not later than ten (10) days prior to the Final Hearing on the Disclosure Statement, the Debtors shall file a list of any General Executory Contracts to be assumed or assumed and assigned under the Plan pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code.

**G.    Rejection of Certain Executory Contracts**

On the Effective Date, unless assumed or assumed and assigned in this Plan or by separate Order of the Bankruptcy Court, all General Executory Contracts, including all written employment agreements, severance contracts (except with respect to employees employed on the Confirmation Date) and employee benefit or retirement or supplemental retirement benefit plans and agreements and unexpired leases of the Debtor shall be deemed rejected by the Debtors as of the Petition Date.

**H.    Claims for Rejection Damages**

Each Person who is a party to an executory contract or unexpired lease which is rejected pursuant to this Plan, shall be entitled to file, a proof of Claim for damages alleged to have arisen from the rejection of the executory contract or unexpired lease to which such Person is a party.  All proofs of Claim with respect to Claims arising from the rejection of any executory contracts or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of: (i) the date that an Order rejecting the executory contract or unexpired lease is entered, or (ii) the Confirmation Date.  Objections to any such proof of Claim shall be filed by the Claims Objection Bar Date.  All Claims arising out of the rejection of executory contracts or unexpired leases shall be General Unsecured Claims.

**I.    Binding Nature of the Plan and Injunction Included in Plan**

As provided in § 1141(a) of the Bankruptcy Code, upon entry of the Confirmation Order, the Plan shall bind the Debtors, all Entities that are to acquire any property either directly or indirectly under the Plan, and all Holders of Claims and Interests, whether or not their Claims and/or Interests are impaired under the Plan and whether or not they have

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    accepted the Plan.

2    Unless otherwise provided in the plan or in the confirmation order, all injunctions or

3    stays provided for in the Chapter 11 cases under §§ 105 or 362 of the Bankruptcy Code or

4    otherwise and existing on the confirmation date (excluding any injunctions or stays

5    contained in the plan or the confirmation order), shall remain in full force and effect until

6    the effective date of the plan.

7    While under § 1141(d) of the bankruptcy code one or more of the debtors may not

8    qualify for a discharge, all parties (including all holders of claims and/or interests) bound

9    by the plan pursuant to § 1141(a) of the bankruptcy code will be permanently enjoined, on

10   and after the effective date of the plan, from:

11   (i)    commencing or continuing in any manner any action or other proceeding of

12   any kind against the debtors, the liquidating trust, the estate representative, the estates, the

13   estates' assets, the trust estate, or assets of the trust estates with respect to any such claim

14   or interest;

15   (ii)    enforcing, attaching, collecting, or recovering by any manner or means of

16   any judgment, award, decree, or order against the debtors, the liquidating trust, the estate

17   representative, the estates, the estates assets, the trust estate, or assets of the trust estate on

18   account of any such claim or interest;

19   (iii)    creating, perfecting, or enforcing any encumbrance of any kind against the

20   debtors, the liquidating trust, the estate representative, the estates, the estates' assets, the

21   trust estate or the assets of the trust estate, or against the property or interests in property of

22   the debtors, the liquidating trusts, estate representative, the estates, the trust estates on

23   account of any such claim or interest;

24   (iv)    asserting any right of setoff, subrogation, or recoupment of any kind against

25   any obligation due from the debtors, the trustee, the estates, the assets of the estates, the

26   liquidating trust, the estate representative, the trust estate or the assets of the trust estate on

27   account of any such claim or interest; and

28   (v)    taking any action that would interfere with the consummation of the plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

X.    **ALTERNATIVES TO THE PLAN, AND LIQUIDATION ANALYSIS**

A.    **Alternatives to the Plan**

The Debtors have carefully considered all reasonable alternatives to the organized liquidation alternative that was selected and is set forth in the Plan.  During the first several months of these cases, the Debtors diligently sought to obtain post-petition financing that might have allowed USACM to reorganize and remain in business as a loan originator and loan servicer.  However, after the Debtors' unsuccessful attempts to obtain Court approval for two different term sheets for post-petition financing from two reputable lenders, the Debtors were unable to obtain further reasonable proposals from potential lenders for such financing.  The Debtors then diligently marketed the significant assets available for sale to various potential acquirers, and the result of those intensive efforts was the term sheet from SPCP Group, LLC that was accepted by the Debtors on September 12, 2006, and the final bidding process that will bring forth the highest and best offer to acquire the assets of USACM and FTD Fund identified for sale pursuant to the Plan.  Further, extensive negotiations with the Committees resulted in the proposed structure for the organized liquidation of remaining assets and the potential recovery of other assets that is also carried out through the Plan.

Debtors believe that if the Plan is not confirmed, a reasonably likely alternative is that the cases will be converted to liquidation cases under Chapter 7 of the Bankruptcy Code.  As discussed below, the Debtors believe that the Chapter 7 alternative in not in the best interest of any of the creditors, equity interest holders, or other parties in interest in these cases.

B.    **Liquidation Analysis and Best Interest of Creditors Test**

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide that creditors and holders of equity interests will receive at least as much under the Plan as they would receive in a liquidation of the Debtors under Chapter 7 of the Bankruptcy Code (the "Best Interest Test").  The Best Interest Test with respect to each impaired class requires that each holder of a claim or equity interest of such class

either (a) accepts the plan or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the holders of claims in each class of creditors or equity interests equals or exceeds the value that would be allocated to such holders in liquidation under Chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan meets the Best Interest Test and provides value that is significantly greater than that which would be recovered by each such holder in a proceeding under Chapter 7 of the Bankruptcy Code.

The chart attached hereto as *Exhibit 6* provides a preliminary liquidation analysis for each of the five Debtors and, based on certain assumptions discussed below, supports the conclusion that a hypothetical liquidation under Chapter 7 of the Bankruptcy Code would return less value to each holder of a claim or equity interest in each Class under the Plan than would the proposed distributions to be made under the Plan. Further analysis, including calculation of recovery values under the Plan versus the Chapter 7 liquidation alternative, will be provided after all proofs of claim filed by the November 13, 2006 bar date are reviewed.

**C.    General Assumptions for the Liquidation Analysis**

The following general assumptions were made in preparing the liquidation analysis for each of the five Debtors.

1.    The Liquidation Analysis was prepared in accordance with section 1129(a)(7)(A)(ii) of the Bankruptcy Code to determine whether the Plan is in the interests of the Debtors' estates and creditors.

2.    The Liquidation Analysis is based upon a number of estimates and assumptions that, although considered reasonable by the Debtors, are subject to economic, business, governmental regulation and contingencies beyond the control of the Debtors. Accordingly, no assurances can be made. The Liquidation Analysis is subject to change. Nothing contained herein shall be used as an admission against the Debtors or any other

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Person.

2       3.      The Liquidation Analysis utilizes the Debtors' unaudited financial

3   statements as of July 31, 2006, and other figures estimated by the Debtors as a basis for

4   determining liquidation values.

5       4.      The Liquidation Analysis assumes a conversion to Chapter 7 on

6   November 15, 2006.

7   **D.      Notes to the Liquidation Analysis**

8       The following notes apply to the Liquidation Analysis for each of the five Debtors

9   that is attached hereto as *Exhibit 5*.  The notes below relate to specific asset categories

10  identified in the Liquidation Analysis and correspond to the "Note Reference" column in

11  that analysis.

12      A.  Cash and Cash Equivalents: Estimated recovery of Cash and Cash
        Equivalents on hand is assumed to be 100%.  The Liquidation Analysis assumes
13      that the Debtors will be entitled to any applicable servicing and interest revenue
        earned until 11/15/06.
14
15      B.  Investments in Loans: Estimated recoveries for Investments in Loans are
        based upon a loan by loan recovery analysis and current management estimates.
16      These recoveries are allocated in accordance with the loan documents.

17      C.  Principal in Collection Account:  Estimated recovery of Principal in
        Collection Account is assumed to be 100%.
18
19      D.  Accounts Receivable: Estimated recoveries for Accounts Receivable are
        based upon current management estimates.
20
21      E.  Prepaid Interest: The Liquidation Analysis assumes that the Court will allow
        USA Commercial Mortgage Company to retain Prepaid Interest (both the
        uncollected amounts and the funds in collection account).
22
23      F.  Notes Receivable: Estimated recoveries for Notes Receivable are based upon
        current management estimates.

24      G.  Prepaid Expenses: The Liquidation Analysis assumes no recovery for
        Prepaid Expenses.
25
26      H.  Property, Plant & Equipment: Estimated recoveries for Property, Plant &
        Equipment are based on appraisals and current management estimates.
27
        I.  Other Assets:  Estimated recoveries for Other Assets are based upon current
28      management estimates.

1    J.   Chapter 7 Expenses:  Chapter 7 Expenses are based upon a percentage of the
2    estimated recovery on assets liquidated and distributed.

3  **XI.    PLAN FEASIBILITY**

4    The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy

5  Court must find that confirmation of the Plan is not likely to be followed by a further

6  liquidation or need for further financial reorganization of the Debtors (the "Feasibility

7  Test").  For the Plan to meet the Feasibility Test, the Bankruptcy Court must find that the

8  Debtors will possess the resources and working capital necessary to meet its obligations

9  under the Plan.

10    The Debtors believe that the structure set forth in the Plan, as discussed above,

11  provides a feasible framework for the recovery of certain claims and assets held by the

12  Debtors and an orderly, phased liquidation of the Debtors and their assets, and that

13  confirmation of the Plan is not likely to be followed by any further liquidation or

14  reorganization of the Debtors.

15  **XII.    POTENTIAL MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF
16  THE PLAN**

17    PROVIDED BELOW IS A SUMMARY DESCRIPTION OF CERTAIN UNITED

18  STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE

19  DEBTORS AND TO CERTAIN HOLDERS OF ALLOWED CLAIMS OR INTERESTS.

20  THIS DESCRIPTION IS FOR INFORMATIONAL PURPOSES ONLY AND, DUE TO

21  A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY OR

22  INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST WITH RESPECT TO

23  VARIOUS TAX CONSEQUENCES OF THE PLAN AS DISCUSSED HEREIN.  ONLY

24  CERTAIN CONSEQUENCES OF THE PLAN FOR THE DEBTORS AND FOR

25  HOLDERS OF ALLOWED CLAIMS OR INTERESTS ARE DESCRIBED BELOW.

26  NO OPINION OF COUNSEL HAS BEEN SOUGHT OR OBTAINED WITH RESPECT

27  TO ANY TAX CONSEQUENCES OF THE PLAN.  NO RULINGS OR

28  DETERMINATIONS OF THE IRS OR ANY OTHER TAX AUTHORITIES HAVE

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

BEEN SOUGHT OR OBTAINED WITH RESPECT TO THE TAX CONSEQUENCES

OF THE PLAN, AND THE DISCUSSION BELOW IS NOT BINDING UPON THE IRS

OR SUCH OTHER AUTHORITIES.  THE DEBTORS ARE MAKING NO

REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF

THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY

HOLDER, AND NO PERSON IS RENDERING ANY FORM OF LEGAL OPINION AS

TO SUCH TAX CONSEQUENCES.  NO ASSURANCE CAN BE GIVEN THAT THE

IRS WOULD NOT ASSERT, OR THAT A COURT WOULD NOT SUSTAIN, A

POSITION DIFFERENT FROM ANY DISCUSSED HEREIN.

THE DISCUSSION OF UNITED STATES FEDERAL INCOME TAX

CONSEQUENCES BELOW IS BASED ON THE INTERNAL REVENUE CODE,

TREASURY REGULATIONS, JUDICIAL AUTHORITIES, PUBLISHED POSITIONS

OF THE IRS AND OTHER APPLICABLE AUTHORITIES, ALL AS IN EFFECT ON

THE DATE OF THIS DISCLOSURE STATEMENT, AND ALL OF WHICH ARE

SUBJECT TO CHANGE OR DIFFERING INTERPRETATIONS (POSSIBLY WITH

RETROACTIVE EFFECT).

THE FOLLOWING DISCUSSION DOES NOT ADDRESS FOREIGN, STATE

OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO

ADDRESS THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF

THE PLAN TO SPECIAL CLASSES OF TAXPAYERS SUBJECT TO SPECIAL TAX

RULES (E.G., BANKS AND CERTAIN OTHER FINANCIAL INSTITUTIONS,

INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, PERSONS WHOSE

FUNCTIONAL CURRENCY IS NOT THE UNITED STATES DOLLAR, DEALERS IN

SECURITIES OR FOREIGN CURRENCY, PERSONS WHO RECEIVED THEIR

ALLOWED CLAIMS OR INTERESTS PURSUANT TO THE EXERCISE OF AN

EMPLOYEE STOCK OPTION OR OTHERWISE AS COMPENSATION AND

PERSONS HOLDING ALLOWED CLAIMS OR INTERESTS AS A HEDGE

AGAINST, OR THAT ARE HEDGED AGAINST, CURRENCY RISK OR THAT ARE

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  PART OF A STRADDLE, CONSTRUCTIVE SALE OR CONVERSION

2  TRANSACTION).  FURTHERMORE, THE FOLLOWING DISCUSSION DOES NOT

3  ADDRESS UNITED STATES FEDERAL TAXES OTHER THAN INCOME TAXES.

4  EACH HOLDER IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR

5  REGARDING THE UNITED STATES FEDERAL, STATE, LOCAL AND ANY

6  FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN

7  AND IN THE PLAN.

8         **A.    Consequences to the Debtors**

9                1.    Sales of Acquired Assets

10        If the anticipated sales of acquired assets close as contemplated by the Plan, the sale

11 of each acquired asset will result in realization of a gain to the Debtor which sells such

12 asset in an amount equal to the excess of the proceeds received over the basis of the

13 acquired asset in the hands of the Debtor, or of a loss to the Debtor which sells such

14 acquired asset in an amount equal to the shortfall between such basis and the proceeds

15 received, respectively.  Gains and losses realized by the respective Debtors will be passed

16 through to their shareholders or members on Schedules K 1 and the latter will pay any

17 resulting tax as further explained in paragraph A.2. below.

18                2.    Partial Satisfaction of Indebtedness

19        The Debtors' transfers of their property to their respective Liquidation Trusts will

20 be treated as deemed two-step transfers to the shareholders or members of the Debtors,

21 respectively, followed by deemed transfers to the beneficiaries of those trusts in

22 satisfaction of the Debtors' obligations to the creditor beneficiaries in amounts up to the

23 fair market value of the transferred property on the Effective Date as determined and

24 reported by the Trustee of the respective Liquidating Trust.  The Debtors will recognize

25 gain or loss on those transfers in amounts up to the difference between that fair market

26 value and the Debtor's basis in the transferred property.

27        Any gain or loss realized by USACM (which is an S corporation Debtor) from those

28 transfers will pass through to the shareholders on Schedule K 1.  A shareholder who

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    recognizes taxable income or gain from those transfers or from any other source will pay

2    any resulting tax.

3         USA Capital Realty, USA Securities, USA Capital Trust Deed Fund, LLC and USA

4    Capital Diversified Trust Deed Fund, LLC are limited liability companies classified

5    directly or indirectly as partnerships.  A partnership is not taxed on its income but passes it

6    through on Forms K 1 to its partners.  Losses are similarly passed through to the partners.

7         S corporations and partnership entities do not have unused losses or carryforwards,

8    but the shareholders and partners may be unable to use losses from the corporation or

9    partnerships for any of several reasons, such as lack of basis, not being "at risk" on the

10   investment in the corporation or partnership, etc.

11              3.    Cancellation of Indebtedness Income ("COD")

12        Confirmation of the Plan can be expected to give rise to cancellation of

13   indebtedness income ("COD").  Under the Plan, each Debtor will generally realize COD in

14   an amount equal to the excess of the adjusted issue price of any of its indebtedness

15   exchanged or canceled (including any accrued but unpaid interest) over the fair market

16   value of any property transferred to its Liquidation Trust on the Effective Date, as

17   determined and reported by the Trustee.  Because the COD will arise in the course of a

18   proceeding pursuant to Chapter 11 of the Bankruptcy Code, the Debtors may not be

19   required to include such COD in distributable income on K 1 to shareholders or members.

20   Instead, certain shareholders or members of Debtors may be required to reduce certain of

21   their beneficial tax attributes by the amount of COD excluded from taxable income by

22   reason of the bankruptcy.  Such attribute reduction would first be applied to reduce the

23   shareholders' or members' NOLs, next to reduce certain other tax attributes of the Debtors

24   (such as capital loss carryforwards and the tax basis of certain property), and finally to

25   reduce some subsidiary attributes, if applicable.  If the amount of COD excluded from

26   taxable income by reason of the bankruptcy exceeds available tax attributes, the excess

27   would permanently escape taxation.

28              4.    Effects of Filing by Partnerships

36

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1　　　When a limited liability company classified as a partnership files for bankruptcy, no
2　new taxable entity is automatically created for federal income tax purposes, and the
3　partnership is not terminated under IRC section 708.  Therefore, each partnership is
4　considered as continuing until it is terminated.  Under IRC section 708(b) (in the absence
5　of special circumstances such as a merger or division), there are two ways for a partnership
6　to terminate.  First, a partnership will terminate if no part of any business, financial
7　operation or venture of the partnership continues to be carried on by any of its partners in a
8　partnership.  Until the partnership completely ceases all business activities and has no
9　assets, it should be treated as continuing.  Second, a partnership will terminate if, within
10　any 12-month period, there is a sale or exchange of 50% or more of the capital and profits
11　interests in the partnership.  Accordingly, since no transfers of ownership are anticipated,
12　each LLC Debtor will be treated as continuing for federal income tax purposes until it has
13　no assets and no business or financial operations.

14　　　Thus, the filing of a bankruptcy case alone does not result in recognition of income,
15　gain or loss by the partnership, depreciation recapture or deemed disposition of the
16　partnership's assets (so gain on any installment obligations held by the partnership is not
17　thereby accelerated), but the later transfer of all assets of a partnership to a liquidating trust
18　under the plan will probably trigger all of the foregoing consequences.  Each limited
19　liability company Debtor will probably be deemed to have terminated upon or shortly after
20　the transfer of all of its assets to a Liquidation Trust.

21　**B.　Tax Consequences to Creditors**

22　　　For United States federal income tax purposes, the Debtors' transfers of their
23　property to their respective Liquidation Trusts will be treated as deemed transfers to those
24　beneficiaries of those trusts who are creditors in satisfaction of the Debtors' obligations to
25　those creditors, followed by deemed transfers by the Creditors to the Liquidation Trusts.
26　The deemed transfers to the several respective classes of creditors will be treated as taxable
27　recognition events to those creditors, resulting in reportable gains or losses equal to the fair
28　market value of the creditors' interests in the transferred property on the Effective Date, as

37

1  determined and reported by the Trustee, reduced by the creditors' basis in their receivables

2  from the Debtors.

3      The deemed transfers from the several respective classes of creditors to the

4  Liquidating Trusts will be treated as creating grantor trusts, with the several respective

5  classes of creditors treated as grantors.  As grantors of such grantor trusts, the several

6  respective classes of creditors will report their pro-rata shares of all items of taxable

7  income, gains and losses of the creditors' trusts on their federal income tax returns, and

8  pay any resulting tax liability.

9      All of the several respective classes of creditors should consult their own tax

10  advisors for information that might be relevant to their particular situations and

11  circumstances and the particular tax consequences to them.

12      **C.      Tax Consequences to Stockholders and Members of the Debtors**

13      For United States Federal income tax purposes, the Debtors' transfer of their

14  property to their respective Liquidation Trusts will be treated as deemed transfers to those

15  beneficiaries' who are shareholders and/or members of the Debtors, followed by deemed

16  transfers by the shareholders and/or members to the respective Liquidation Trusts.  The

17  deemed transfer to the shareholders of USACM will be treated as exchanges in redemption

18  of their shares of stock of USACM.  Any excess of the value of assets, except for assets

19  classified as inventory, received through the deemed distribution over a shareholder's basis

20  in those shares will generally be taxable long or short term capital gain.  The deemed

21  transfers of assets, except for assets classified as inventory, to members of the other

22  Debtors, which are classified as partnerships, will be treated as distributions of capital

23  which will be tax free until a member has recovered its basis in its membership interest.

24  Any excess of the value of capital assets received through the deemed distribution over a

25  member's basis in its membership interest will generally be taxable as long or short term

26  capital gain.  Assets classified as inventory generally generate ordinary income when

27  distributed to shareholders or members.  Shareholders and members should consult their

28  own tax advisors for further information.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

XIII.  **CONCLUSION**

The Debtors believe that the Plan offers a fair and comprehensive solution to the numerous complex and difficult issues presented in these bankruptcy cases, fairly addresses the rights of all creditors and parties in interest, and provides a significant recovery for creditors and loan investors that is greater than other reasonably likely alternatives.  The Debtors therefore urge that you vote to accept the Plan.

Dated this 15th day of September, 2006.

THE DEBTORS:

USA Commercial Mortgage Company
USA Securities, LLC
USA Capital Realty Advisors, LLC
USA Capital Diversified Trust Deed Fund, LLC
USA First Trust Deed Fund, LLC


By: _____
        Thomas J. Allison
        Chief Restructuring Officer


Respectfully submitted,


/s/ Lenard E. Schwartzer
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

892157v1

39