Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>          Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>          Debtor. | Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>          Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>          Debtor. | Date:  June 15, 2006<br>Time:  10:00 a.m. |
| In re:<br><br>USA SECURITIES, LLC,<br><br>          Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **DEBTORS' JOINT PLAN OF REORGANIZATION**<br><br>**(AFFECTS ALL DEBTORS)** |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

The Debtors hereby propose the following Joint Plan of Reorganization pursuant to Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

## ARTICLE I

## DEFINITIONS

For the purpose of the Plan, except as expressly provided otherwise or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan. Whenever the context requires, such terms shall include the plural and the singular number. The masculine gender as used in the Plan shall, unless the context otherwise requires, include the feminine gender, and the feminine gender shall, likewise, include the masculine. All legal terms not specifically defined herein shall have the meanings ascribed to them by the Bankruptcy Code and the Bankruptcy Rules.

1.1    Acquired Assets.   "Acquired Asserts" means the First Trust Assets and the USACM Assets, described as "Assets" in the Silver Point Term Sheet.

1.2    Administrative Expense Claim.   "Administrative Expense Claim" means any Claim constituting a cost or expense of administration of and in these Chapter 11 cases incurred on or after the Petition Date of the kind described in § 503(b) of the Bankruptcy Code, including, without limitation, (A) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (B) taxes described in § 503(b)(1)(B) of the Bankruptcy Code; (C) any fees or expenses of the Professionals employed at the expense of the Estates allowable under §§ 330(a) or 331 of the Bankruptcy Code; (D) all fees and charges assessed against the Estates under 28 U.S.C. § 1930; and (E) cure amounts, if any, for executory contracts and unexpired leases assumed or assigned either pursuant to a separate Order of the Bankruptcy Court or under the Plan.

1.3    Administrative Expense Claim Bar Date.   "Administrative Expense Claim Bar Date" means the date established in an Order of the Bankruptcy Court as the deadline for filing Administrative Expense Claims, except for Ordinary Course Administrative Expense Claims.

1.4    Advisory Committee.   "Advisory Committee" means the USACM Advisory Committee, the First Trust Advisory Committee, the Diversified Advisory Committee, and/or the USA Securities Advisory Committee, depending on the context in which the term is used.

1.5    Affiliate.   "Affiliate" has the meaning set forth in § 101(2) of the Bankruptcy Code.

1.6    Allowed . . . Claim.   "Allowed . . . Claim" means any Claim against a Debtor (A) that is listed in the schedules of liabilities filed with the Court by or on behalf of the Debtors and not listed as disputed, contingent or unliquidated; and/or (B) proof of which is filed before the Bar

Date applicable to such Claim and no objection to the allowance thereof has been or will be interposed, or as to any such objection there has been a Final Order entered allowing such Claim; or (C) any Claim which has been allowed by a Final Order of the Court. An "Allowed . . . Claim" is the total amount of the Claim less distributions or payments made after the Petition Date by the Debtors to the Holder of the Allowed . . . Claim pursuant to any Order of the Bankruptcy Court.

1.7    Allowed Interest.  "Allowed Interest" means (A) an Interest proof of which is filed before the Bar Date and no objection to the allowance thereof has been or will be interposed, or as to any such objection there has been a Final Order entered allowing such Interest; or (B) any Interest which has been allowed by a Final Order of the Court. An Allowed Interest is the total amount of the Interest less distributions or payments made after the Petition Date by the Debtors to the Holder of the Allowed Interest pursuant to any Order of the Bankruptcy Court.

1.8    Allowed Offset.  "Allowed Offset" means the offsetting of the Unremitted Principal Claim of the Diversified Estate against the Pre-Paid Interest Claim held by USACM Estate against the Diversified Estate. The Pre-Paid Interest Claim held by USACM against the Diversified Estate shall be determined as of the Effective Date of the Plan when considering all reference to all amounts collected from Borrowers prior to the Effective Date. The Allowed Offset shall occur automatically on the Effective Date and prior to the Initial Distribution Date and shall reduce the Unremitted Principal Claim of the Diversified Estate against the USACM Estate. The Allowed Offset shall be allowed as part of the compromise and settlement of claims as set forth in Article XII of the Plan.

1.9    Applicable Debtor.  "Applicable Debtor" means (A) USACM in regard to those Holders of Allowed Claims or Allowed Interests against the USACM Estate, the USACM Liquidation Trust, Beneficiaries of the USACM Liquidation Trust, or the USACM Estate Administrator; (B) First Trust in regard to those Holders of Allowed Claims or Allowed Interests against the First Trust Estate, the First Trust Liquidation Trust, Beneficiaries of the First Trust Liquidation Trust, or the First Trust Estate Administrator; (C) Diversified in regard to those Holders of Allowed Claims or Allowed Interests against the Diversified Estate, the Diversified Post-Effective Date Estate, and the Diversified Estate Administrator; (D) USA Capital Realty in regard to those Holders of Allowed Claims or Allowed Interests against the USA Capital Realty Estate; or (E) USA Securities in regard to those Holders of Allowed Claims or Allowed Interests against the USA Securities Estate, the USA Securities Liquidation Trust, Beneficiaries of the USA Securities Liquidation Trust, or the USA Securities Estate Administrator.

1.10    Applicable Liquidation Trust.  "Applicable Liquidation Trust" means (A) the First Trust Liquidation Trust in regard to First Trust, Holders of Allowed Claims or Allowed Interests against First Trust or the First Trust Estate, Beneficiaries of the First Trust Liquidation Trust, the First Trust Estate Administrator or the First Trust Advisory Committee; (B) the USACM Liquidation Trust in regard to USACM, Holders of Allowed Claims or Allowed Interests against USACM or the USACM Estate, Beneficiaries of the USACM Liquidation Trust, the USACM Estate Administrator or the USACM Advisory Committee; and (C) the USA Securities Liquidation Trust in regard to USA Securities, Holders of Allowed Claims or Allowed Interests against USA Securities or the USA Securities Estate, Beneficiaries of the USA Securities Liquidation Trust, the USA Securities Estate Administrator or the USACM Advisory Committee.

3

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.11    <u>Asset Acquirer.</u>  "Asset Acquirer" means Silver Point or any Third Party Bidder making a Higher and Better Offer which is accepted by the Debtors pursuant to the procedures set forth in the Buyer Protection and Bidding Procedures Order to purchase the Acquired Assets pursuant to the Asset Purchase Agreement, and which proceeds to close the transaction in accordance with this Plan and the Asset Purchase Agreement.

1.12    <u>Asset Purchase Agreement.</u>  "Asset Purchase Agreement" means an Agreement to acquire the Acquired Assets in a form mutually acceptable to the Debtors and Silver Point, entered into between the Debtors and Silver Point which substantially incorporates the terms set forth in the Silver Point Term Sheet, or any subsequent Asset Purchase Agreement, substantially in the same form, that is signed with any Third Party Bidder making a Higher and Better Offer which is accepted by the Debtors.  A copy of the Asset Purchase Agreement, once signed, will be filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code, and by reference is incorporated herein.  With respect to any inconsistencies between the terms of the Plan and the terms of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall control.

1.13    <u>Auction.</u>  "Auction" means the auction for the Acquired Assets held in accordance with the Buyer Protection and Bid Procedures Order.

1.14    <u>Bankruptcy Code.</u>  "Bankruptcy Code" means title 11, United States Code (11 U.S.C. § 101 *et seq.*), as in effect on the Petition Date and as amended and effective after the Petition Date and during the Chapter 11 Cases.

1.15    <u>Bankruptcy Rules.</u>  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, including Interim Bankruptcy Rules adopted by the Bankruptcy Court, as the same may be amended and modified from time to time, and as applicable to the Chapter 11 Cases.

1.16    <u>Bar Date.</u>  "Bar Date" means (A) with respect to Administrative Expense Claims, the Administrative Expense Claim Bar Date; (B) with respect to all other Claims against the Debtors, the date established by an Order of the Bankruptcy Court as the last date for filing proofs of Claims against the Debtors; and (C) with respect to Interests, the date established by an Order of the Bankruptcy Court as the last date for filing proofs of Interests against the Debtors.

1.17    <u>Base Recovery Percentage.</u>  "Base Recovery Percentage" shall be 73.2%, which is the gross percentage recovery by the Holders of Claims in the First Trust Estate, as the same may be adjusted for any increased recovery from a Higher and Better Offer under the Auction, net of any First Trust Settlement Payments.

1.18    <u>Beneficiary.</u>  "Beneficiary" means the Holder of an Allowed Claim or an Allowed Interest under or against any of the Liquidation Trusts.

1.19    <u>Borrower.</u>  "Borrower" means a borrower on one of the loans serviced by USACM as of the date of the filing of the Plan.

4

1.20    <u>Break-Up Fee and Expense Reimbursement.</u>  "Break-Up Fee and Expense Reimbursement" means the Break-Up Fee as defined in ¶ 10(b) of the Silver Point Term Sheet.

1.21    <u>Business Day.</u>  "Business Day" means any day other than a Saturday, a Sunday, or a "legal holiday" as that term is defined at Bankruptcy Rule 9006(a).

1.22    <u>Buyer Protection and Bidding Procedures Order.</u>  "Buyer Protection and Bidding Procedures Order" means a Final Order of the Bankruptcy Court, in form and substance reasonably acceptable to the Debtors, the Committees and Silver Point, establishing (A) a Break-up Fee and other protections to Silver Point for the purchase of the Acquired Assets in accordance with the provisions of the Silver Point Term Sheet, and (B) bidding procedures for the sale of the Debtors' assets, including procedures for accepting Higher and Better Offers.

1.23    <u>Cash.</u>  "Cash" means legal tender of the United States of America, or Cash equivalents, including currency, checks, and wire transfers of immediately available funds.

1.24    <u>Causes of Action.</u>  "Causes of Action" means all Claims and any and all manner of actions, causes of action in law or in equity, suits, adversary proceedings, contested matters, litigation, objections, debts, Liens, contracts, liabilities, demands, rights, obligations, damages, loses, fees, costs, expenses, set-offs, defenses, counter-claims, cross-claims, third-party claims, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, now owned or hereafter acquired by any one or all of the Debtors or their Estates, whether arising under any contract or under the Bankruptcy Code or other federal or state law, including without limitation, any Causes of Action arising under §§ 502, 506, 509, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553 or 554 of the Bankruptcy Code, regardless of whether or not such Causes of Action have been commenced, pursued or asserted prior to the Effective Date, and Causes of Action against Insiders and related to any of the Debtors' accounts and notes receivable, including the IP Causes of Action and the IP Receivable, regardless of whether or not such Causes of Action have been commenced, pursued or asserted prior to the Effective Date.

1.25    <u>Chapter 11 Cases.</u>  "Chapter 11 Cases" means the above-captioned cases under Chapter 11 of the Bankruptcy Code filed by the Debtors, including all adversary proceedings pending in connection therewith.

1.26    <u>Claim.</u>  "Claim" has the same meaning as that term is defined in § 101(5) of the Bankruptcy Code.

1.27    <u>Class.</u>  "Class" means any group of Holders of Claims or Interests as classified in Article 2 of the Plan.

1.28    <u>Closing Date.</u>  "Closing Date" means the date on which the Asset Acquirer closes on and acquires the Acquired Assets.

1.29    <u>Collateral.</u>  "Collateral" means any assets of a Debtor that serve to secure a Lien.

1.30    <u>Collection Account.</u>  "Collection Account" means the accounts held by the Debtors into which funds collected from Borrowers are deposited.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.31    <u>Commercial Mortgage Price.</u>  "Commercial Mortgage Price" has the meaning set forth in ¶ 1(c) of the Silver Point Term Sheet, including any reductions required under ¶ 2 to the Silver Point Term Sheet, as the same may be increased pursuant to the Auction.

1.32    <u>Committees.</u>  "Committees" means the First Trust Committee, the Executory Contract Holders Committee, the Diversified Trust Committee, and the Unsecured Creditors' Committee.

1.33    <u>Confirmation.</u>  "Confirmation" means entry of a Confirmation Order by the Bankruptcy Court, or other court of competent jurisdiction, in accordance with § 1129 of the Bankruptcy Code.

1.34    <u>Confirmation Date.</u>  "Confirmation Date" means the date of entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.35    <u>Confirmation Hearing.</u>  "Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of the Plan.

1.36    <u>Confirmation Order.</u>  "Confirmation Order" means the Order entered by the Bankruptcy Court or other court of competent jurisdiction, providing for the Confirmation of the Plan in accordance with the Bankruptcy Code.

1.37    <u>Court.</u>  "Court" means the United States Bankruptcy Court for the District of Nevada and any court having jurisdiction to hear appeals therefrom.

1.38    <u>Debtors.</u>  "Debtors" means USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC.

1.39    <u>Direct Lender.</u>  "Direct Lender" means all Lenders, other than USACM, Diversified and First Trust, who are Lenders under any of the Serviced Loans.

1.40    <u>Disputed . . . Claim.</u>  "Disputed Claim" means any Claim which is not an Allowed Claim, including, without limitation, (A) any Claim designated as disputed, contingent or unliquidated in Debtors' schedules filed in connection with the Chapter 11 Cases, (B) any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered; (C) any Claim which is the subject of one or more Causes of Action pending against the Holder of such Claim; or (D) any Claim disallowed pursuant to § 502(d) of the Bankruptcy Code.

1.41    <u>Disputed Interest.</u>  "Disputed Interest" means any Interest which is not an Allowed Interest, including, without limitation, (A) any Interest against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered; or (B) any Interest which is the subject of one or more Causes of Action pending against the Holder of such Interest.

1.42    Distribution Account.  "Distribution Account" means that account established by each of the Debtors pursuant to Article V of the Plan.  Each of the Debtors' Distribution Accounts, when referred to separately, shall be referred to hereafter as the "USACM Distribution Account," the "FT Distribution Account," the "DTF Distribution Account," the "CR Distribution Account," or the "S Distribution Account."

1.43    Diversified.  "Diversified" means USA Capital Diversified Trust Deed Fund, LLC., the Debtor in the Chapter 11 case, Case No. BK-S-06-10727 LBR.

1.44    Diversified Advisory Committee.  "Diversified Advisory Committee" means the advisory committee appointed pursuant to the Diversified Liquidation Agreement, which shall be effective on the Effective Date.

1.45    Diversified Estate.  "Diversified Estate" means the bankruptcy estate created in the Chapter 11 case of Diversified pursuant to § 541 of the Bankruptcy Code.

1.46    Diversified Estate Administrator.  "Diversified Estate Administrator" means the administrator appointed pursuant to the Diversified Liquidation Agreement to manage the Diversified Post-Effective Date Estate, with the assistance of the Diversified Advisory Committee, pursuant to the terms of this Plan and the Diversified Liquidation Agreement..

1.47    Diversified Excluded Assets.  "Diversified Excluded Assets" means all assets of Diversified, including without limitation litigation claims and causes of action, except for the Diversified Serviced Loans.

1.48    Diversified Liquidation Agreement.  "Diversified Liquidation Agreement" means the agreement that will govern the liquidation and wind down of the Diversified Post-Effective Date Estate to be executed by the Debtors, after consultation with the Diversified Trust Committee, and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.49    Diversified Post-Effective Date Estate.  "Diversified Post-Effective Date Estate" means the Diversified Estate post-Effective Date which shall consist of the Diversified Excluded Assets, the proceeds from the Diversified Serviced Loans, and the First Trust Settlement Payment, and which shall be controlled and liquidated by the Diversified Estate Administrator and the Diversified Advisory Committee pursuant to the terms of this Plan and the Diversified Liquidation Agreement.

1.50    Diversified Serviced Loans.  "Diversified Serviced Loans" means loans in which the Diversified Estate holds an interest that are listed on Exhibit B to the Silver Point Term Sheet.

1.51    Diversified Trust Committee.  "Diversified Trust Committee" means the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC appointed in the Chapter 11 Cases.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.52    Effective Date.  "Effective Date" means ten (10) Business Days after the conditions set forth in Article X of the Plan are satisfied or waived.

1.53    Entity.  "Entity" shall have the meaning assigned in § 101(15) of the Bankruptcy Code.

1.54    Estate.  "Estate" means the bankruptcy estate created in the Chapter 11 Case of each of the Debtors pursuant to § 541 of the Bankruptcy Code.

1.55    Estate Administrator.  "Estate Administrator" means the USACM Estate Administrator, the First Trust Estate Administrator, the USA Securities Estate Administrator, and/or the Diversified Estate Administrator, depending on the context in which the term is used.

1.56    Executory Contract Holders Committee.  "Executory Contract Holders Committee" means the Official Committee of Executory Contract Holders of USA Commercial Mortgage Company appointed in the Chapter 11 Cases.

1.57    Expense Reserve.  "Expense Reserve" as to each Debtor means the any Cash of the Applicable Debtor's Estate existing on the Confirmation Date.

1.58    Final Decree.  "Final Decree" means a Final Order of the Bankruptcy Court closing the Chapter 11 Cases; provided however, if a Final Decree is separately entered in one or more of the Debtors' Chapter 11 Cases, then "Final Decree" means a Final Order of the Bankruptcy Court closing a particular Chapter 11 Case.

1.59    Final Distribution.  "Final Distribution" means in regard to the Liquidation Trust, the distribution by the Estate Representative which exhausts the Trust Estate.

1.60    Final Fee Application.  "Final Fee Application" means an application filed by a Professional.

1.61    Final Order.  "Final Order" means, as to any court, administrative agency or other tribunal, an order or judgment of such court, agency, or tribunal as entered on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought, such order or judgment shall have been affirmed (or such appeal or petition has been dismissed) by the highest court (or other tribunal having appellate jurisdiction over the order or judgment) to which the order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.62    Final Tax Day.  "Final Tax Day" means, with respect to the Estates or the Trust Estate, the last day which shall be included in a taxable year for which an income tax return is

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

required to be filed by the Debtors on behalf of the Estates or the Estate Representative on behalf of the Trust Estate.

1.63    First Trust.    "First Trust" means USA Capital First Trust Deed Fund, LLC, the Debtor in the Chapter 11 Case, Case No. BK-S-06-10728 LBR.

1.64    First Trust Advisory Committee.    "First Trust Advisory Committee" means the advisory committee appointed pursuant to the First Trust Liquidation Trust Agreement.

1.65    First Trust Assets.    "First Trust Assets" means those assets of First Trust listed on Exhibit A to the Silver Point Term Sheet.

1.66    First Trust Committee.    "First Trust Committee" means the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC appointed in the Chapter 11 Cases.

1.67    First Trust Deed Fund Price.    "First Trust Deed Fund Price" has the meaning set forth in the Silver Point Term Sheet, including reductions to the Cash price set forth in ¶ 2 of the Silver Point Term Sheet.

1.68    First Trust Estate.    "First Trust Estate" means the bankruptcy estate created in the Chapter 11 case of First Trust pursuant to § 541 of the Bankruptcy Code.

1.69    First Trust Estate Administrator.    "First Trust Estate Administrator" means the estate administrator appointed to manage the First Trust Liquidation Trust, with the assistance of the First Trust Advisory Committee, pursuant to the terms of this Plan and the First Trust Liquidation Trust.

1.70    First Trust Excluded Assets.    "First Trust Excluded Assets" means those assets of the First Trust Estate that are not First Trust Assets, including the First Trust Non-Assignable Litigation and the Bisynergy Loan.

1.71    First Trust Liquidation Trust.    "First Trust Liquidation Trust" means the trust which will hold title to and control all of the First Trust Excluded Assets and the First Trust Deed Fund Price pursuant to the terms of this Plan and the First Trust Liquidation Trust Agreement.

1.72    First Trust Liquidation Trust Agreement.    "First Trust Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors, after consultation with the First Trust Committee, and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.73    First Trust Non-Assignable Litigation.    "First Trust Non-Assignable Litigation" means non-assignable Causes of Action of the First Trust Estate against the auditors or related to securities laws, which Causes of Action are not included in the Acquired Assets and are retained for the benefit of the First Trust Estate.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

9

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.74    First Trust Serviced Loans.  "First Trust Serviced Loans" means the Loans listed on Exhibit A of the Silver Point Term Sheet, also defined as the "First Trust Assets."

1.75    First Trust Settlement Payments.  "First Trust Settlement Payments" means $1 million paid by First Trust to the Diversified Post-Effective Date Estate (the "Initial First Trust Settlement Payment") plus 40% of the excess proceeds actually paid or payable to the First Trust Estate (net of the Break-Up Fee and Expense Reimbursement, as may be allowed pursuant to the Buyer Protection and Bidding Procedures Order) as a result of overbids of the bid of Silver Point contained in the Silver Point Term Sheet up to $1.5 million, subject to repayment under the conditions set forth herein (the "Loaned First Trust Settlement Payment").  If the assets contributed to and collected by the Diversified Post-Effective Date Estate within one year of the Effective Date, including the Initial First Trust Settlement Payment, equal $50 million, then 50% of the Loaned First Trust Settlement Payments shall be repaid to the First Trust Liquidation Trust without interest.  If, between one year after the Effective Date and the second anniversary of the Effective Date, the Diversified Post-Effective Date Estate collects greater than an additional $50 million, then 50% of the Loaned First Trust Settlement Payments shall be repaid to the First Trust Liquidation Trust without interest.  The First Trust Settlement Payments shall be made as part of the compromise and settlement of claims set forth in Article XII of the Plan.

1.76    Fund Member.  "Fund Member" means an equity holder of either the First Trust or Diversified.

1.77    General Aggregate Deficiency Investment Deficit.  "General Aggregate Deficiency Investment Deficit" means, on a Loan by Loan basis, in the case of a Direct Lender, principal and interest remaining unpaid after the Collateral and guarantees are exhausted, or, in the case of a Fund Member, any investment return remaining unpaid after liquidation of the assets of either First Trust or Diversified.

1.78    General Executory Contract.  "General Executory Contract" means any and all executory contracts and unexpired leases of the Debtors within the meaning of § 365 of the Bankruptcy Code, except to the extent applicable, the Loan Servicing Agreements.

1.79    General Unsecured Claim.  "General Unsecured Claim" means the principal amount (i.e., excluding interest) of a Claim arising on or before the Petition Date that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Late Claim, Penalty Claim or Subordinated Claim, and includes, without limitation, Unremitted Principal Claims, Unsecured Deficiency Claims, Proximately Caused Aggregate Investment Deficiency Claims, and Claims arising as a result of the rejection of any executory contract or unexpired lease.

1.80    Higher and Better Offer.  "Higher and Better Offer" means a bona fide offer made in accordance with the Buyer Protection and Bidding Procedures Order, which is determined by the Debtors to be a higher and better offer than any previously submitted bid in the Auction, including without limitation, the bid made pursuant to the Silver Point Term Sheet.

1.81    Holder.  "Holder" means the beneficial owner of any Claim or Interest.

1.82    Initial Distribution Date.  "Initial Distribution Date" means the date occurring as soon as practicable after the Effective Date, upon which distributions of Cash are made by the Applicable Debtors to Holders of Allowed Claims and/or Holders of Allowed Interests entitled to receive distributions under this Plan from the Distribution Accounts; provided however, that the Applicable Debtors shall use reasonable efforts to ensure that the Initial Distribution Date occurs on or before the 30th day following the Effective Date.

1.83    Insider.  "Insider" has the same meaning as that term is defined in § 101(31) of the Bankruptcy Code.

1.84    Insider Claims.  "Insider Claims" mean any Claims, causes of action or rights that have been or may be asserted by Insiders of the Debtors, including without limitation, (A) IP, and any of IP's Affiliates, other than the Debtors; (B) Paul S. Hamilton; (C) Joseph D. Milanowski; (D) Thomas A. Hantges; and (E) Red Granite, LLC, and any of its Affiliates.

1.85    Insider Guarantees.  "Insider Guarantees" mean guarantees made by Insiders, other than the Debtors.

1.86    Interest.  "Interest" means any equity security interest or membership interest in a Debtor.

1.87    Interim Distribution Order.  "Interim Distribution Order" means that Order entered by the Bankruptcy Court on August 24, 2006 in response to Debtors' Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds that was filed on July 7, 2006.

1.88    IP.  "IP" means USA Investment Partners, LLC, beneficial interests which are believed to be owned by Paul S. Hamilton, Joseph D. Milanowski, Thomas A. Hantges, and any of IP's Affiliates, other than the Debtors.

1.89    IP Causes of Action.  "IP Causes of Action" means all Causes of Action of whatever kind or nature that may exist or could be asserted on behalf of any one or more of the Debtors against IP and any of IP's Affiliates, other than the Debtors, which Causes of Action are included in the Causes of Action preserved under this Plan.

1.90    IP Receivable.  "IP Receivable" means that certain receivable reflected on the accounting records of USACM as being owed by IP, which receivable was memorialized and collateralized pursuant to that certain Promissory Note and Security Agreement approved by the Bankruptcy Court in an Order entered on July 24, 2006

1.91    Late Claim.  "Late Claim" means a Claim filed with the Bankruptcy Court after the Bar Date applicable to such Claim, but filed with the Bankruptcy Court before the Initial Distribution Date.

1.92    Lender.  "Lender" means a Direct Lender, First Trust or Diversified.

1.93    Lien.  "Lien" has the meaning set forth in § 101(37) of the Bankruptcy Code.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

11

1.94    <u>Liquidation Expenses.</u>  "Liquidation Expenses" means all costs, fees and expenses associated or incurred by each Estate in connection with the implementation and consummation of the Plan. In regard to the First Trust, USACM, or USA Securities Liquidation Trusts, it shall also mean all expenses, debts, charges, taxes, liabilities and obligations related to the Applicable Liquidation Trust and its administration, including without limitation, the compensation payable to the Estate Administrator and those professionals retained by the Estate Administrator to assist in the implementation and consummation of the terms and the Applicable Liquidation Trust and all costs, fees and expenses of (A) taking possession of, holding, maintaining, pursuing, liquidating or distributing the property belonging to Applicable Liquidation Trust, and (B) prosecuting, defending, settling or otherwise resolving any disputes regarding the Trust Estate or the Applicable Liquidation Trust and the distribution of assets from the Applicable Liquidation Trust. Without limiting the generality of the foregoing, Liquidation Expenses shall also mean and include, without limitation any and all costs, expenses and fees (including, without limitation, all reasonable professional fees) incurred by an Estate Administrator in performing his or her duties hereunder and pursuant to a Liquidation Trust Agreement or the Diversified Liquidation Trust Agreement.

1.95    <u>Liquidation Trusts.</u>  "Liquidation Trusts" mean the First Trust Liquidation Trust, the USACM Liquidation Trust, and the USA Securities Liquidation Trust created pursuant to this Plan and the Applicable Liquidation Trust's Liquidation Trust Agreement.

1.96    <u>Liquidation Trust Agreements.</u>  "Liquidation Trust Agreements" means the First Trust Liquidation Trust Agreement, the USACM Liquidation Trust Agreement, and the USA Securities Liquidation Trust Agreement.

1.97    <u>Loan Servicing Agreements.</u>  Any and all agreements entered into by USACM with Lenders relating to USACM's servicing of the Loans.

1.98    <u>Loan.</u>  "Loan" means a loan originated and serviced by USACM.

1.99    <u>Loan by Loan.</u>  "Loan by Loan" means, with respect to any particular calculation or issue, looking at each Loan independently of any other Loan.

1.100    <u>Minimum Incremental Bid Amount.</u>  "Minimum Incremental Bid Amount" means that amount set forth in the Buyer Protection and Bidding Procedures Order that is necessary to bid in excess of the last submitted bid (which shall initially be the bid submitted by the Silver Point Term Sheet) in the Auction to be considered a Higher and Better Offer.

1.101    <u>Net Expense Reserve.</u>  "Net Expense Reserve" as to each Debtor means the Debtor's Expense Reserve after payment of unclassified Claims and Claims classified under Class 1 for each of the Debtors, if any, and any other payments required to be made under the Plan.

1.102    <u>Non-Debtor Insider.</u>  "Non-Debtor Insider" means an Insider that is not one of the Debtors.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.103   <u>Objection Bar Date.</u>  "Objection Bar Date" means ninety (90) days after the Effective Date, as the same may be extended by the Bankruptcy Court after notice and a hearing, as the last day to file objections to any alleged Claims or Interest asserted in the Chapter 11 Cases.

1.104   <u>Ordinary Course Administrative Expense Claim.</u>  "Ordinary Course Administrative Expense Claim" shall be limited to Administrative Expense Claims incurred in the ordinary course of the Debtors' businesses and shall not include: (A) any postpetition obligations which are past due; (B) cure payments, if any, required to assume an executory contract or unexpired lease either in the Plan or by separate Order prior to the Effective Date of the Plan; (C) any fees or expenses, compensation or reimbursement requested pursuant to subsections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code; (D) any Taxes (including, without limitation, income, sales, use, property or other Taxes); (E) any Claims for breach of contract, tort, or other actionable conduct; (F) cure amounts for any assumed General Executory Contracts or any post-petition claim made under a General Executory Contract.

1.105   <u>Payment Reserves.</u>  "Payment Reserves" means those reserves, if any, for Disputed Claims, Disputed Interests or Taxes established by the Debtors under Article V of the Plan.

1.106   <u>Penalty Claim.</u>  "Penalty Claim" means a Claim, whether Secured or unsecured and which Claim is for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary lost suffered by the Holder of such Claim.

1.107   <u>Person.</u>  "Person" has the meaning assigned in § 101(41) of the Bankruptcy Code.

1.108   <u>Petition Date.</u>  "Petition Date" means April 13, 2006, the date the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

1.109   <u>Plan.</u>  "Plan" means this Plan of Reorganization, dated September 15, 2006, including any Exhibits annexed hereto and any documents delivered in connection herewith as the same may be amended, supplemented or otherwise modified from time to time by any duly authorized amendment or modification.

1.110   <u>Plan Proponents.</u>  "Plan Proponents" mean the Debtors, as the sole proponents of the Plan.

1.111   <u>Pre-Paid Interest.</u>  "Pre-Paid Interest" means Claims or Cash collected by the USACM either from a Borrower or from a Lender to reimburse or to recoup interest payments advanced by USACM prior to the Petition Date, whether collected by USACM prior to the Effective Date or by the Asset Acquirer after the Effective Date.

1.112   <u>Priority Non-Tax Claim.</u>  "Priority Non-Tax Claim" means a Claim that is entitled to priority under § 507(a) of the Bankruptcy Code, except Priority Tax Claims, Administrative Expense Claims, and Ordinary Course Administrative Expense Claims.

1.113   <u>Priority Tax Claim.</u>  "Priority Tax Claim" means a Claim entitled to priority under § 507(a) (8) of the Bankruptcy Code.

1.114  <u>Pro Rata.</u>  "Pro Rata" means, in the context of Allowed Claims, the ratio of an Allowed Claim in a particular Class and payable by an Applicable Debtor to the aggregate amount of all Allowed Claims in that Class and payable by the Applicable Debtor.  "Pro Rata" means, in the context of Allowed Interests, means the ratio of an Allowed Interest payable by an Applicable Debtor to the aggregate amount of all Allowed Interests payable by the Applicable Debtor.

1.115  <u>Professional.</u>  "Professional" means any professional or person employed or appointed in any one or all of the Debtors' cases pursuant to §§ 327, 330, 1103, or 1104 of the Bankruptcy Code or otherwise, and any Professional seeking compensation or reimbursement of expenses in connection with the Debtors' cases pursuant to § 503(b)(4) of the Bankruptcy Code.

1.116  <u>Proximately Caused Aggregate Investment Deficiency Claim.</u>  "Proximately Caused Aggregate Investment Deficiency Claim" means a General Aggregate Investment Deficiency that a Direct Lender or Fund Member (either directly or through the Diversified Estate or First Trust Estate) successfully has Allowed as a Claim by proving that the Claim is proximately caused by some act or failure to act by USACM in violation of a contractual or statutory duty.

1.117  <u>Sale Proceeds.</u>  "Sale Proceeds" means Cash and other gross proceeds of the sale of the Acquired Assets by the Debtors to the Asset Acquirer.

1.118  <u>Secured Claim.</u>  "Secured Claim" means a Claim secured, as determined in accordance with §§ 506(a) and 1111(b) of the Bankruptcy Code, by Collateral.

1.119  <u>Serviced Loan.</u>  "Serviced Loan" means those loans originated by USACM and serviced by USACM pursuant to a Loan Servicing Agreement, including without limitation the Diversified Serviced Loans, which are listed on Exhibit B to the Silver Point Term Sheet, and excluding the First Trust Assets listed on Exhibit A to the Silver Point Term Sheet.

1.120  <u>Silver Point.</u>  "Silver Point" means SPCP Group, LLC.

1.121  <u>Silver Point Term Sheet.</u>  "Silver Point Term Sheet" means the term sheet signed between the Debtors and Silver Point on September 12, 2006, a copy of which is attached to the Plan as Exhibit 1.  The terms of the Silver Point Term Sheet will be incorporated into an Asset Purchase Agreement, which is mutually acceptable to the Debtors and Silver Point and which, when executed, shall supersede and replace the Silver Point Term Sheet.

1.122  <u>Statement of Cure.</u>  "Statement of Cure" means a statement filed under Article VII of the Plan that is filed within the time set forth in the Plan or by Order of the Bankruptcy Court, but in no event later than fifteen (15) days after entry of an Order approving the adequacy of the Debtors' Disclosure Statement.

1.123  <u>Statutory Interest on Allowed General Unsecured Claims.</u>  "Statutory Interest on Allowed General Unsecured Claims" means the Federal Judgment Rate on the Effective Date determined from the Petition Date until such Allowed General Unsecured Claim is paid in full. The rate used to calculate "Statutory Interest on Allowed General Unsecured Claims" was

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

calculated in accordance with 28 U.S.C. § 1961 and is the interest rate allowed on any money judgment in a civil case recovered in a district court and is the interest rate that was in effect on the Petition Date and is the rate consistent with the rate established by § 726(a)(5) of the Bankruptcy Code.

1.124   <u>Subordinated Claim.</u>  "Subordinated Claim" means a Claim subordinated upon entry of the Confirmation Order pursuant to Article VI of the Plan, or a Claim subordinated pursuant to § 510(a), (b) or (c) of the Bankruptcy Code by a Final Order.

1.125   <u>Taxes.</u>  "Taxes" means all taxes, charges, fees, imposts, levies or other assessments, including, without limitation, all net income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, and property taxes, customs duties, fees, assessments and charges of any kind whatsoever, together with any interest and penalties, additions to tax or additional amounts imposed by any taxing authority (domestic or foreign) and any interest and penalties imposed with respect to the filing, obligation to file or failure to file any tax return, and shall include any transferee liability in respect to Taxes.

1.126   <u>Third Party Bidder.</u>  "Third Party Bidder" means an Entity, other than the Silver Point, who makes a Higher and Better Offer for the Acquired Assets and who complies with the procedures and requirements set forth in the Buyer Protection and Bidding Procedures Order.

1.127   <u>Third Party Servicer.</u>  "Third Party Servicer" means (A) if the First Trust Assets and the USACM Assets are sold to an Asset Acquirer, the Asset Acquirer or such other Entity as may be designated; or (B) if the First Trust Assets and the USACM Assets are not sold to an Asset Acquirer and are liquidated pursuant to this Plan, an Entity that is designated by the USACM Administrator to service the First Trust Serviced Loans and the Serviced Loans.

1.128   <u>Total Cash Purchase Price.</u>  "Total Cash Purchase Price" is the sum of the First Trust Deed Fund Price and the Commercial Mortgage Price, as the same may be increased through the Auction.

1.129   <u>Trust Account.</u>  "Trust Account," as to each Liquidation Trust, means the account established by the Estate Administrator for each Trust Estate pursuant to Article V of the Plan.

1.130   <u>Trust Estate.</u>  "Trust Estate" means all property of, vested in, controlled by, belonging to or in the possession of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, as the case may be.

1.131   <u>Unremitted Principal Claim.</u>  "Unremitted Principal Claim" means a General Unsecured Claim held against the USACM Estate as a result of USACM collecting principal from a Borrower under a Loan, but not remitting such principal to the Lender.

1.132   <u>Unsecured Creditors' Committee.</u>  "Unsecured Creditors' Committee" means the Official Committee of Unsecured Creditors for USA Commercial Mortgage Company appointed in the Chapter 11 Cases.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.133   Unsecured Deficiency Claim.  "Unsecured Deficiency Claim" means that portion of an Allowed Secured Claim in excess of the value of the Collateral securing such Secured Claim, as determined in accordance with § 506(a) of the Bankruptcy Code.

1.134   USACM.  "USACM" means USA Commercial Mortgage Company, the Debtor in the Chapter 11 Case, Case No. BK-S-060-10725 LBR.

1.135   USACM Advisory Committee.  "USACM Advisory Committee" means the advisory committee appointed pursuant to the USACM Liquidation Trust established on the Effective Date of the Plan.

1.136   USACM Assets.  "USACM Assets" means (A) all Loan Servicing Agreements for all Serviced Loans, and rights thereunder after the Closing Date as more fully set forth in the Silver Poitn Term Sheet, and (B) all personal property necessary for enforcement of Service Agreements, including, without limitation, all servicing and investor records, databases, and servicing and reporting software, as described in the Silver Point Term Sheet.

1.137   USACM Estate.  "USACM Estate" means the bankruptcy estate created in the Chapter 11 Case of USACM pursuant to § 541 of the Bankruptcy Code

1.138   USACM Estate Administrator.  "USACM Estate Administrator" means the estate administrator appointed pursuant to the USACM Liquidation Trust Agreement to manage the USACM Liquidation Trust, with the assistance of the USACM Advisory Committee, pursuant to the terms of this Plan and the USACM Liquidation Trust Agreement.

1.139   USACM Excluded Assets.  "USACM Excluded Assets" means those assets of the USACM Estate that are not Acquired Assets, including the IP Receivable and the IP Causes of Action.

1.140   USACM Liquidation Trust.  "USACM Liquidation Trust" means the trust which will hold title to and control all of the USACM Excluded Assets and the Commercial Mortgage Price pursuant to the terms of this Plan and the USACM Liquidation Trust Agreement.

1.141   USACM Liquidation Trust Agreement.  "USACM Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors, after consultation with the Unsecured Creditors' Committee, and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.142   USACM Unsecured Claims. "USACM Unsecured Claims" includes all Claims against USACM, excluding Secured Claims, Priority Claims, Administrative Expense Claims, and Subordinated Claims, but including without limitation, Unremitted Principal Claims and Proximately Caused Aggregate Investment Deficiency Claims.

1.143   USA Capital Realty.  "USA Capital Reality" means USA Capital Reality Advisors, LLC., the Debtor in the Chapter 11 Case, Case No. BK-S-06-10726 LBR.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.144   USA Capital Reality Estate.  "USA Capital Realty Estate" means the bankruptcy estate created in the Chapter 11 Case of USA Capital Realty pursuant to § 541 of the Bankruptcy Code

1.145   USA Securities.  "USA Securities" means USA Securities, LLC., the Debtor in the Chapter 11 Case, Case No. BK-S-06-10729 LBR.

1.146   USA Securities Advisory Committee.  "USA Securities Advisory Committee" means the advisory committee appointed pursuant to the USA Securities Liquidation Trust Agreement.  The USA Securities Advisory Committee may be, but is not required to be, the same as the USACM Advisory Committee.

1.147   USA Securities Estate.  "USA Securities Estate" means the bankruptcy estate created in the Chapter 11 Case of USA Securities pursuant to § 541 of the Bankruptcy Code.

1.148   USA Securities Estate Administrator.  "USA Securities Estate Administrator" means the estate administrator appointed to manage the USA Securities Liquidation Trust, with the assistance of the USACM Advisory Committee, pursuant to the terms of this Plan and USA Securities Liquidation Trust Agreement.  The USA Securities Estate Administrator may be, but is not required to be, the same person as the USACM Estate Administrator.

1.149   USA Securities Insurance Policy.  "USA Securities Insurance Policy" means that certain insurance policy covering Directors & Officers Liability ("D&O") and Employment Practices Liability ("EPL") issued by Illinois Union Insurance Company to USA Securities, which has been in place continuously since January 27, 2004, and which has separate limits of $1 million each for the D&O and EPL coverages.

1.150   USA Securities Liquidation Trust.  "USA Securities Liquidation Trust" means the trust which will hold title to and control all property of USA Securities and the USA Securities Estate pursuant to this Plan and the USA Securities Liquidation Trust Agreement, including without limitation, the USA Securities Insurance Policy.

1.151   USA Securities Liquidation Trust Agreement.  "USA Securities Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**   **Introduction**.

The Debtors are the Plan Proponents.

On the Effective Date, USACM and First Trust will sell the Acquired Assets, free and clear of Liens and Interests, to the Asset Acquirer for the Total Cash Purchase Price pursuant to

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the terms of an Asset Purchase Agreement and Article V of the Plan. The First Trust Purchase Price along with First Trust's Expense Reserve will be deposited into the FT Distribution Account, and the Expense Reserves of each of the other Debtors will be deposited into their respective Distribution Accounts. Unclassified Claims and Allowed Class 1 Claims for each Debtor, if any, will be paid by the Applicable Debtor on the Effective Date from its Distribution Account. On the Initial Distribution Date, the Debtors will distribute the Cash in their Distribution Accounts, net of any Payment Reserves and amounts to be contributed to the USACM, First Trust, or USA Securities Liquidation Trusts or to be retained by the Diversified Post-Effective Date Estate, including any Net Expense Reserves, to Holders of Allowed Claims and Holders of Allowed Interests in the priority and amounts and pursuant to the procedures specified herein.

Within thirty (30) days of the Effective Date, and in accordance with Article V of this Plan and the First Trust, USACM and USA Securities Liquidation Trust Agreements and the Diversified Liquidation Agreement, (A) the First Trust Excluded Assets, including its Net Expense Reserve, will be transferred to the First Trust Liquidation Trust; (B) the USACM Excluded Assets, including its Net Expense Reserve, will be transferred to the USACM Liquidation Trust, (C) the USA Securities Estate, including its Net Expense Reserve, will be transferred to the USA Securities Liquidation Trust, and (D) the Diversified Excluded Assets will be retained by the Diversified Post-Effective Date Estate. The Trust Estates of the each of the Liquidation Trusts and the Diversified Post-Effective Date Estate will be liquidated by separate Estate Administrators and Advisory Committees pursuant to the Plan and the Applicable Liquidation Trust or Liquidation Trust Agreement. The liquidation proceeds will be distributed to Beneficiaries of the Applicable Liquidation Trusts or to the Holders of Allowed Claims and Allowed Interests of the Diversified Estate in the priority and amounts specified herein, and pursuant to the procedures set forth herein and in the Liquidation Trust or Liquidation Trust Agreements, or the Diversified Liquidation Agreement.

In the event that the sale of the Acquired Assets to the Asset Acquirer does not close as the result of a condition of sale not being met or for any other reason on or before 120 days following the Due Diligence Completion Date, as defined in the Silver Point Term Sheet, as the same may

be extended by agreement between the Debtors and the Asset Acquirer, the First Trust Assets will be transferred to the First Trust Liquidation Trust and the USACM Assets will be transferred to the USACM Liquidation Trust for liquidation by those Trusts pursuant to the terms of the Applicable Liquidation Trust Agreements and the Plan.

The USA Capital Realty Estate will be liquidated under the Plan and Cash, if any, will be deposited in Distribution Account of USA Capital Realty for distribution in accordance with the terms of this Plan.

In accordance with §1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Ordinary Course Administrative Expense Claims, and Priority Tax Claims against each of the Debtors have not been classified, and the respective treatment of such unclassified Claims for each Debtor is set forth in section 3.1 of the Plan.

All other Claims and Interests against or in each of the Debtors have been classified as set forth in sections 2.2 and 2.3 of the Plan, and the treatment of such Claims and Interests is set forth in sections 3.2 and 3.3 of the Plan. A Claim or Interest against an Applicable Debtor is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim or Interest against an Applicable Debtor may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest against an Applicable Debtor is also placed in a particular class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

**2.2**    **Classification of Unimpaired Claims and Interests.**

(a)    *Priority Non-Tax Claims.*

(i)    *Class 1CM: Priority Non-Tax Claims Against USACM.*
Class 1CM consists of all Priority Non-Tax Claims against USACM.

(ii)    *Class 1FT:  Priority Non-Tax Claims Against First Trust.*
Class 1FT consists of all Priority Non-Tax Claims against First Trust.

(iii)    *Class 1DTF: Priority Non-Tax Claims Against Diversified.*
Class 1DTF consists of all Priority Non-Tax Claims against Diversified.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(iv)    *Class 1CR:  Priority Non-Tax Claims Against USA Capital Realty.*
Class 1CR consists of all Priority Non-Tax Claims against USA Capital Realty.

(v)    *Class 1S:  Priority Non-Tax Claims Against USA Securities.*
Class 1S consists of all Priority Non-Tax Claims against USA Securities.

**2.3    Classification of Impaired Claims and Interests.**

(a)    *Secured Claims.*

(i)    *Class 2CM: Secured Claims Against USACM.*
Class 2CM consists of all Secured Claims against USACM.

(ii)    *Class 2FT:  Secured Claims Against First Trust.*
Class 2FT consists of all Secured Claims against First Trust.

(iii)    *Class 2DTF: Secured Claims Against Diversified.*
Class 2DTF consists of all Secured Claims against Diversified.

(iv)    *Class 2CR:  Secured Claims Against USA Capital Realty.*
Class 2CR consists of all Secured Claims against USA Capital Realty.

(v)    *Class 2S:  Secured Claims Against USA Securities.*
Class 2S consists of all Secured Claims against USA Securities.

*(b)*    *General Unsecured Claims.*

(i)    *Class 3CM: General Unsecured Claims Against USACM.*
Class 3CM consists of all General Unsecured Claims against USACM.

(ii)    *Class 3FT:  General Unsecured Claims Against First Trust.*
Class 3FT consists of all General Unsecured Claims against First Trust.

(iii)    *Class 3DTF: General Unsecured Claims Against Diversified.*
Class 3DTF consists of all General Unsecured Claims against Diversified.

(iv)    *Class 3CR:  General Unsecured Claims Against USA Capital Realty.*
Class 3CR consists of all General Unsecured Claims against USA Capital Realty.

(v)    *Class 3S:  General Unsecured Claims Against USA Securities.*
Class 3S consists of all General Unsecured Claims against USA Securities.

*(c)*    *Late Claims.*

(i)    *Class 4CM: Late  Claims Against USACM.*
Class 4CM consists of all Late Claims against USACM.

(ii)    *Class 4FT:  Late Claims Against First Trust.*
Class 4FT consists of all Late Claims against First Trust.

(iii)    *Class 4DTF: Late Claims Against Diversified.*
Class 4DTF consists of all Late Claims against Diversified.

(iv)    *Class 4CR:  Late  Claims Against USA Capital Realty.*
Class 4CR consists of all Late Claims against USA Capital Realty.

(v)    *Class 4S:  Late Claims Against USA Securities.*
Class 4S consists of all Late Claims against USA Securities.

*(d)*    *Penalty Claims.*

(i)    *Class 5CM: Penalty Claims Against USACM.*
Class 5CM consists of all Penalty Claims against USACM.

(ii)    *Class 5FT:  Penalty Claims Against First Trust.*
Class 5FT consists of all Penalty Claims against First Trust.

(iii)    *Class 5DTF: Penalty Claims Against Diversified.*
Class 5DTF consists of all Penalty Claims against Diversified.

(iv)    *Class 5CR:  Penalty Claims Against USA Capital Realty.*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Class 5CR consists of all Penalty Claims against USA Capital Realty.

(v) *Class 5S:  Penalty Claims Against USA Securities.*
Class 5S consists of all Penalty Claims against USA Securities.

(e) *Subordinated Claims.*

(i) *Class 6CM: Subordinated Claims Against USACM.*
Class 6CM consists of all Subordinated Claims against USACM.

(ii) *Class 6FT:  Subordinated Claims Against First Trust.*
Class 6FT consists of all Subordinated Claims against First Trust.

(iii) *Class 6DTF: Subordinated Claims Against Diversified.*
Class 6DTF consists of all Subordinated Claims against Diversified.

(iv) *Class 6CR:  Subordinated Claims Against USA Capital Realty.*
Class 6CR consists of all Subordinated Claims against USA Capital Realty.

(v) *Class 6S:  Subordinated Claims Against USA Securities.*
Class 6S consists of all Subordinated Claims against USA Securities.

(f) *Interests.*

(i) *Class 7CM: Interests in USACM.*
Class 7CM consists of all Interests in USACM.

(ii) *Class 7FT:  Interests in First Trust.*
Class 7FT consists of all Interests in First Trust.

(iii) *Class 7DTF: Interests in Diversified.*
Class 7DTF consists of all Interests in Diversified.

(iv) *Class 7CR:  Interests in USA Capital Realty.*
Class 7CR consists of all Interests in USA Capital Realty.

(v) *Class 7S:  Interests in USA Securities.*
Class 7S consists of all Interests in USA Securities.

## **ARTICLE III**

## **TREATMENT OF CLAIMS AND INTERESTS**

**3.1** **Unclassified Claims.**

(a) *Administrative Expense Claims.*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Except with respect to Holders of Allowed Ordinary Course Administrative Claims and Allowed Priority Tax Claims, which are provided for in sections 3.1(b) and 3.1(c) below, Holders of Allowed Administrative Expense Claims against an Applicable Debtor shall receive, on account of such Claims, Cash in the full amount of the Allowed Administrative Expense Claim from the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date; (ii) the fifth Business Day after such Claim becomes an Allowed Administrative Expense Claim against the Applicable Debtor; or (iii) the date such Administrative Expense Claim becomes payable pursuant to any written agreement between the Applicable Debtor or the Estate Administrator and the Holder of such Administrative Expense Claim.

(b)     *Ordinary Course Administrative Expense Claims.*

Ordinary Course Administrative Expense Claims shall be paid by the Applicable Debtors in the ordinary course of business of the Applicable Debtors as and when incurred and due, subject to any applicable Order of the Bankruptcy Court.  Any such Ordinary Course Administrative Expense Claims incurred prior to the Effective Date, and for which consideration has been provided to an Applicable Debtor prior to the Effective Date, but which are not yet due in the ordinary course of business on the Effective Date, except with respect to Ordinary Course Administrative Expense Claims relating to the Acquired Assets, shall be paid when due by the Applicable Debtor from its Distribution Account.

(c)     *Priority Tax Claims*.

Holders of Allowed Priority Tax Claims against an Applicable Debtor shall receive, on account of such Claims, Cash in the full amount of the Allowed Priority Tax Claim from the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date; (ii) the fifth Business Day after such Claim becomes an Allowed Priority Tax Claim against the Applicable Debtor; or (iii) the date such Priority Tax Claim

1   becomes payable pursuant to any written agreement between the Applicable Debtor or the Estate

2   Administrator and the Holder of such Priority Tax Claim.

3   **3.2    Unimpaired Classes of Claims and Interests.**

4       *(a)    Priority Non-Tax Claims:    Classes 1CM, 1FT, 1DTF, 1CR and 1S.*

5   Holders of Allowed Priority Non-Tax Claims against an Applicable Debtor shall receive,

6   on account of such Claims, Cash in the full amount of the Allowed Priority Non-Tax Claim from

7   the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after,

8   the latest of: (i) the Effective Date; (ii) the fifth Business Day after such Claim becomes an

9   Allowed Priority Non-Tax Claim against the Applicable Debtor; or (iii) the date such Priority

10  Non-Tax Claim becomes payable pursuant to any written agreement between the Applicable

11  Debtor or the Estate Administrator and the Holder of such Administrative Expense Claim.

12  **3.3    Impaired Classes of Claims and Interests.**

13      *(a)    Secured Claims: Classes 2CM, 2FT, 2DTF, 2CR and 2S.*

14          (i)    <u>General.</u>  Each Holder of an Allowed Secured Claim shall receive, at the

15  option of the relevant Debtor, in full satisfaction, settlement, release and discharge of and

16  in exchange for such Allowed Secured Claim: (A) Cash from the Distribution Account of

17  the Applicable Debtor equal to the present value of the unpaid portion of such Allowed

18  Secured Claim calculated as of the Effective Date; (B) the return of the collateral securing

19  such Allowed Secured Claim; or (C) such other treatment as to which the Applicable

20  Debtor or Estate Administrator and such Holder shall have agreed upon in writing, or as

21  soon as reasonably practicable after, the latest of: (1) the Initial Distribution Date, if the

22  Collateral securing the Allowed Secured Claim is an Acquired Asset and a sale of the

23  Acquired Assets is closed; (2) at a date set by the applicable Estate Administrator for the

24  initial distributions in the relevant Estate on or after the Effective Date, if the Collateral

25  securing the Allowed Secured Claim is not an Acquired Asset or the sale of the Acquired

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Assets is not closed; (3) the fifth Business Day after such Claim becomes an Allowed Secured Claim; or (4) the date such Allowed Secured Claim becomes payable pursuant to any agreement between the Applicable Debtor or the Estate Administrator and the Holder of an Allowed Secured Claim.  Upon payment of its Allowed Secured Claim or return of the collateral securing the Allowed Secured Claim, the Allowed Secured Claim shall be considered fully satisfied and the Lien of the Holder of such Claim shall be released.

(ii)     Compliance with Applicable Agreements.  All distributions on Allowed Secured Claims made from the Liquidation Trusts or from the Diversified Post-Effective Date Estate shall be made in accordance with and pursuant to the Liquidation Trust Agreements or the Diversified Liquidation Agreement, as applicable, and shall be made by the Liquidation Trusts or the Diversified Post-Effective Date Estate at such times and in such amounts as the Estate Administrator shall determine.

(iii)     Claim Holders' Rights.  To the extent it is valid and enforceable, the Lien securing an Allowed Secured Claim shall continue against Collateral or any proceeds from the sale or liquidation thereof, including Sale Proceeds or proceeds obtained in liquidation, in the same order, priority and validity such Lien enjoyed on the Confirmation Date.  On and after the Effective Date, each Holder of an Allowed Secured Claim shall retain the aforementioned Lien upon its Collateral or the proceeds thereof securing such Allowed Secured Claim, including the Sale Proceeds or liquidation proceeds, until such time as the Holder of such Allowed Secured Claim has received Cash equal to the amount of its Allowed Secured Claim.  The Holders of Allowed Secured Claims shall retain their rights, if any, to fees, costs and charges as such may be allowable in accordance with § 506(b) of the Bankruptcy Code and any applicable Orders entered by the Bankruptcy Court.  The Debtors shall retain their rights, if any, to surcharge costs and expenses as may be allowable in accordance with § 506(c) of the Bankruptcy Code and any applicable Orders entered by the Bankruptcy Court.

(iv)    <u>Disputed Claims.</u>  In the event that a Claim in Classes 2CM, 2DTF, 2CR, 2FT, or 2S has not yet been determined to be an Allowed Secured Claim on the Effective Date, the Applicable Debtor shall, unless otherwise agreed with the Holder of such Claim or ordered by the Court, retain Sale Proceeds of the alleged Collateral in its Payment Reserve for Class 2 Claims until the entry of a Final Order determining the amount and extent of the Allowed Secured Claim, if any.

(b)    *General Unsecured Claims: Classes 3CM, 3FT, 3DTF, 3CR, 3S.*

(i)    <u>Class 3CM.</u>

(A)    <u>General.</u>  If the sale of the Acquired Assets closes, each Holder of an Allowed General Unsecured Claim in Class 3CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution, at the sole discretion of USACM or the USACM Estate Administrator, from the USACM Distribution Account up the full amount of the Allowed General Unsecured Claim after satisfaction in full by USACM of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that the sale of the Acquired Assets does not close or Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder's Allowed Claim in full, at such time as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed from the USACM Liquidation Trust up to the full amount of its Allowed Claim after satisfaction in full by USACM of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(B)    Statutory Interest.  Each Holder of an Allowed General Unsecured Claim in Class 3CM shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution, at the sole discretion of USACM or the Estate Administrator, from the USACM Distribution Account up to the full amount of the Statutory Interest on Allowed General Unsecured Claims after USACM satisfies in full all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Allowed Penalty Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(ii)    Class 3FT.

(A)    General.   If the sale of the Acquired Assets closes, each Holder of an Allowed General Unsecured Claim in Class 3FT shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution, at the sole discretion of First Trust or the Estate Administrator, from the FT Distribution Account up the full amount of the Allowed General Unsecured Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that that the sale of the Acquired Assets does not close or Cash in the FT Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed General Unsecured Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the FT Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by First Trust of all of its Liquidation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

(B) <u>Statutory Interest.</u> Each Holder of an Allowed General Unsecured Claim in Class 3FT shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution. at the sole discretion of First Trust or the Estate Administrator, from the FT Distribution Account, up to the full amount of the Statutory Interest on Allowed General Unsecured Claims after First Trust satisfies in full all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Allowed Penalty Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(iii)    <u>Class 3DTF.</u>

(A) <u>General.</u> Each Holder of an Allowed General Unsecured Claim in Class 3DTF shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the DTF Distribution Account, determined at the sole discretion of Diversified or the Estate Administrator, up the full amount of the Allowed General Unsecured Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that Cash in the DTF Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed General Unsecured Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash in the DTF Distribution Account

up to the full amount of its Allowed Claim after satisfaction in full by Diversified

of all of its Liquidation Expenses, Allowed Secured Claims, Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed

Priority Non-Tax Claims.

(B)    Statutory Interest.  Each Holder of an Allowed General Unsecured

Claim in Class 3DTF shall receive on account of the Statutory Interest on Allowed

General Unsecured Claims its Pro Rata share of all Cash available for distribution

from the DTF Distribution Account, determined in the sole discretion of

Diversified or the Estate Administrator, up to the full amount of the Statutory

Interest on Allowed General Unsecured Claims after Diversified satisfies in full all

of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative

Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims,

Allowed General Unsecured Claims, Allowed Late Claims, and Allowed Penalty

Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(iv)    Class 3CR.

(A)    General.  Each Holder of an Allowed General Unsecured Claim in

Class 3CR, if any, shall receive on the Initial Distribution Date its Pro Rata share of

all Cash available for distribution, determined at the sole discretion of USA Capital

Realty, from the CR Distribution Account up the full amount of the Allowed

General Unsecured Claim after satisfaction in full by USA Capital Realty of all of

its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative

Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax

Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(B)    Statutory Interest.  Each Holder of an Allowed General Unsecured

Claim in Class 3CR shall receive on account of the Statutory Interest on Allowed

General Unsecured Claims its Pro Rata share of all Cash available for distribution,

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

determined at the sole discretion of USA Capital Realty, from the CR Distribution Account, up to the full amount of the Statutory Interest on Allowed General Unsecured Claims after USA Capital Realty satisfies in full all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Allowed Penalty Claims.

(v)     Class 3S.

(A)     General.  Each Holder of an Allowed General Unsecured Claim in Class 3S shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution, determined at the sole discretion of USA Securities or the Estate Administrator, from the S Distribution Account up the full amount of the Allowed General Unsecured Claim after satisfaction in full by USA Securities of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that Cash in the S Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed General Unsecured Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the S Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by USA Securities of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

(B)     Statutory Interest.  Each Holder of an Allowed General Unsecured Claim in Class 3S shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution,

at the sole discretion of USA Securities or the Estate Administrator, from the S

Distribution Account, up to the full amount of the Statutory Interest on Allowed

General Unsecured Claims after USA Securities satisfies in full all of its

Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense

Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed

General Unsecured Claims, Allowed Late Claims, and Allowed Penalty Claims.

(c)    *Late Claims: Classes 4CM, 4FT, 4DFT, 4CR, and 4S.*

(i)    Class 4CM.  If the sale of the Acquired Assets closes, each Holder of an

Allowed Late Claim in Class 4CM shall receive on the Initial Distribution Date its Pro

Rata share of all Cash available for distribution from the USACM Distribution Account,

determined at the sole discretion of USACM or the Estate Administrator, up the full

amount of the Allowed Late Claim after satisfaction in full by USACM of all of its

Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims,

Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General

Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

To the extent that the sale of the Acquired Assets does not close or Cash in the USACM

Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of

an Allowed Late Claim in full, at such later times as may be determined by the Estate

Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the

USACM Distribution Account from the Trust Account up to the full amount of its Allowed

Claim after satisfaction in full by USACM of all of its Liquidation Expenses, Allowed

Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims,

Allowed Priority Non-Tax Claims and Allowed General Unsecured Claims.

(ii)    Class 4FT.  If the sale of the Acquired Assets closes, each Holder of an

Allowed Late Claim in Class 4FT shall receive on the Initial Distribution Date its Pro Rata

share of all Cash available for distribution from the FT Distribution Account, determined

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

at the sole discretion of First Trust or the Estate Administrator, up to the full amount of the Allowed Late Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that the sale of the Acquired Assets does not close or Cash in the FT Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the FT Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims.

(iii)     Class 4DTF.  Each Holder of an Allowed Late Claim in Class 4DTF shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the DTF Distribution Account, determined in the sole discretion of Diversified or the Estate Administrator, up the full amount of the Allowed Late Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the DTF Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash in the DTF Distribution Account up to the full amount of its Allowed Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax

Claims, and Allowed General Unsecured Claims.

(iv)    Class 4CR.  Each Holder of an Allowed Late Claim in Class 4CR, if any,

shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for

distribution from the CR Distribution Account, determined in the sole discretion of USA

Capital Realty, up the full amount of the Allowed Late Claim after satisfaction in full by

USA Capital Realty of all of its Liquidation Expenses, Allowed Secured Claims, Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-

Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(v)    Class 4S.  Each Holder of an Allowed Late Claim in Class 4S shall receive

on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from

the S Distribution Account, at the sole discretion of USA Securities or the Estate

Administrator, up the full amount of the Allowed Late Claim after satisfaction in full by

USA Securities of all of its Liquidation Expenses, Allowed Secured Claims, Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-

Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To

the extent that Cash in the S Distribution Account on the Initial Distribution Date is not

sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may

be determined by the Estate Representative, the Holder shall receive its Pro Rata share of

all Cash distributed to the S Distribution Account from the Trust  Account up to the full

amount of its Allowed Claim after satisfaction in full by USA Securities of all of its

Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims,

Allowed Priority Tax Claims, Allowed Priority Non Tax Claims, and Allowed General

Unsecured Claims.

(d)    *Penalty Claims: Classes 5CM, 5FT, 5DTF, 5CR and 5S.*

(i) <u>Class 5CM.</u> If the sale of the Acquired Assets closes, each Holder of an Allowed Penalty Claim in Class 5CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the USACM Distribution Account, determined at the sole discretion of USACM or the Estate Administrator, up the full amount of the Allowed Penalty Claim after satisfaction in full by USACM of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that the sale of the Acquired Assets does not close or Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Penalty Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the USACM Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by USACM  of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

(ii) <u>Class 5FT.</u> If the sale of the Acquired Assets closes, each Holder of an Allowed Penalty Claim in Class 5FT shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the FT Distribution Account, determined in the sole discretion of First Trust or the Estate Administrator, up the full amount of the Allowed Penalty Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims. To the extent that the sale of the Acquired Assets does not close or Cash in the FT Distribution Account on the Initial Distribution

34

Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the FT Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(iii)    Class 5DTF.    Each Holder of an Allowed Penalty Claim in Class 5DTF shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the DTF Distribution Account, as determined in the sole discretion of Diversified or the Estate Administrator, up to the full amount of the Allowed Penalty Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.    To the extent that Cash in the DTF Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash in the DTF Distribution Account up to the full amount of its Allowed Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

(iv)    Class 5CR.    Each Holder of an Allowed Penalty Claim in Class 5CR shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the CR Distribution Account, as determined in the sole discretion of USA

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Capital Realty, up to the full amount of the Allowed Penalty Claim after satisfaction in full

by USA Capital Realty of all of its Liquidation Expenses, Allowed Secured Claims,

Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority

Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

(v)      Class 5S.  Each Holder of an Allowed Penalty Claim in Class 5S shall

receive on the Initial Distribution Date its Pro Rata share of all Cash available for

distribution from the S Distribution Account, as determined in the sole discretion of USA

Securities or the Estate Administrator, up the full amount of the Allowed Penalty Claim

after satisfaction in full by USA Securities of all of its Liquidation Expenses, Allowed

Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims,

Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late

Claims.  To the extent that Cash in the S Distribution Account on the Initial Distribution

Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later

times as may be determined by the Estate Administrator, the Holder shall receive its Pro

Rata share of all Cash distributed to the S Distribution Account from the Trust Account up

to the full amount of its Allowed Claim after satisfaction in full by USA Securities of all of

its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense

Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General

Unsecured Claims, and Allowed Late Claims.

(e)      *Subordinated Claims: Classes 6CM, 6FT, 6DFT, 6CR, and 6S.*

(i)      Class 6CM.  If the sale of the Acquired Assets closes, each Holder of an

Allowed Subordinated Claim in Class 6CM shall receive on the Initial Distribution Date its

Pro Rata share of all Cash available for distribution from the USACM Distribution

Account, determined in the sole discretion of USACM or the Estate Administrator, up to

the full amount of the Allowed Subordinated Claim after satisfaction in full by USACM of

all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that the sale of the Acquired Assets does not close or Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Subordinated Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the USACM Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by USACM of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims.

(ii)     Class 6FT. If the sale of the Acquired Assets closes, each Holder of an Allowed Subordinated Claim in Class 6FT shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the FT Distribution Account, as determined in the sole discretion of First Trust or the Estate Administrator, up the full amount of the Allowed Subordinated Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that the sale of the Acquired Assets does not close or Cash in the FT Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Subordinated Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Cash distributed to the FT Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by First Trust of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims.

(iii)    Class 6DTF.  Each Holder of an Allowed Subordinated Claim in Class 6DTF shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the DTF Distribution Account, as determined in the sole discretion of Diversified or the Estate Administrator, up to the full amount of the Allowed Subordinated Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that Cash in the DTF Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Subordinated Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash in the DTF Distribution Account up to the full amount of its Allowed Claim after satisfaction in full by Diversified of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(iv)    Class 6CR.  Each Holder of an Allowed Subordinated Claim in Class 6CR shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the CR Distribution Account, as determined in the sole discretion of USA Capital Realty, up to the full amount of the Allowed Subordinated Claim after satisfaction in full by USA Capital Realty of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(v)    Class 6S.  Each Holder of an Allowed Subordinated Claim in Class 6S shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the S Distribution Account, as determined in the sole discretion of USA Securities or the Estate Administrator, up the full amount of the Allowed Subordinated Claim after satisfaction in full by USA Securities of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the S Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the Estate Administrator, the Holder shall receive its Pro Rata share of all Cash distributed to the S Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by USA Securities of all of its Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims.

(f)    *Interests: Classes 7CM, 7FT, 7DTF, 7CR, and 7S.*

(i)    <u>Class 7CM.</u>  Each Holder of an Allowed Interest in Class 7CM shall receive a Pro Rata share of any remaining Cash available for distribution from the USACM Distribution Account, as determined in the sole discretion of USACM or the Estate Administrator, including amounts distributed to the USACM Distribution Account from the Trust Account after satisfaction in full of all of USACM's Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Subordinated Claims.  Unless included in the Acquired Assets at the option of the Asset Acquirer, upon the Effective Date, all Interests in USACM shall be cancelled and USACM dissolved, with the cancelled Interests in USACM replaced solely by this right to payment of the remaining assets in accordance with this paragraph under the Plan.

(ii)    <u>Class 7FT.</u>  Subject to the Interim Distribution Order and reduced by payments received prior to the Effective Date pursuant to the Interim Distribution Order, each Holder of an Allowed Interest in Class 7FT shall receive a Pro Rata share of any remaining Cash available for distribution from the FT Distribution Account, as determined in the sole discretion of First Trust or the Estate Administrator, including amounts distributed to the FT Distribution Account from the Trust Account, after satisfaction in full of all of First Trust's Liquidation Expenses, Allowed Secured Claims, Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Subordinated Claims.  Upon the Effective Date, all Interests in First Trust shall be cancelled and replaced by the right to obtain distributions under and in accordance with this Plan.  Upon distribution in full of the Cash in the FT Distribution Account and after liquidation in full of all assets in the First Trust Liquidation Trust that may be payable to the FT Distribution Account, First Trust shall be dissolved.

(iii)    Class 7DTF.  Subject to the Interim Distribution Order and reduced by payments received prior to the Effective Date pursuant to the Interim Distribution Order, each Holder of an Allowed Interest in Class 7DTF shall receive a Pro Rata share of any remaining Cash available for distribution from the DTF Distribution Account, as determined in the sole discretion of Diversified or the Estate Administrator, after satisfaction in full of all of Diversified's Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Subordinated Claims.  Upon liquidation of all assets of the Diversified Estate and distribution in full of the Cash in the DTF Distribution Account, all Interests shall be cancelled and Diversified shall be dissolved.

(iv)    Class 7CR.  Holders of Allowed Interests in USA Capital Realty shall receive no distribution under the Plan.  All Interests in USA Capital Realty shall be cancelled on the Effective Date and USA Capital Realty shall be dissolved.

(v)    Class 7S.  Holders of Allowed Interests in USA Securities shall receive no

distribution under the Plan.  All Interests in USA Securities shall be cancelled on the Effective Date and replaced by the rights given under this Plan.  Upon distribution in full of the Cash in the S Distribution Account and after liquidation in full of all assets in the USA Securities Liquidation Trust that may be payable to the S Distribution Account, USA Securities shall be dissolved.

**3.4**    **Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan or the Asset Purchase Agreement, nothing shall affect the Debtors, the Estates, the Trust Estates, the Liquidation Trusts or an Estate Administrator's Causes of Action, Claims, and rights and defenses, both legal and equitable, with respect to any Claims or Interests filed or asserted against any one or all of the Debtors, the Estates, the Trust Estates or the Liquidation Trusts, including, but not limited to, all rights with respect to setoffs or recoupment and all legal and equitable defenses to alleged rights of setoff or recoupment and all such rights and defenses.  Instead, these Causes of Action, Claims, and rights and defenses of the Debtors and their Estates, shall be deemed specifically reserved and transferred to the Applicable Liquidation Trust or retained by the Diversified Post-Effective Date Estate on the Effective Date of the Plan.  Furthermore, these Causes of Action, Claims, and rights and defenses shall not be deemed waived or abandoned in the event an Applicable Debtor, Applicable Liquidation Trust or Estate Administrator makes a distribution upon a Claim or Interest and later learns of a Cause of Action, Claim, or right or defense of the Applicable Debtor, the Estate, the Trust Estate or the Applicable Liquidation Trust that otherwise negates or reduces such Claim or Interest.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**4.1    Impaired Classes of Claims and Interests Entitled to Vote.**

Holders of Allowed Claims and Interests in each Class of Claims or Interests that are impaired under the Plan are entitled to vote as a Class to accept or reject the Plan.

**4.2    Acceptance by an Impaired Class.**

In accordance with § 1126(c) and (d) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a Class of Claims or Interests that is impaired under the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims or Allowed Interests of such Class that have timely and properly voted to accept or reject the Plan.

**4.3    Presumed Acceptance of the Plan by Unimpaired Classes.**

In accordance with § 1124 of the Bankruptcy Code, Classes 1CM, 1FT, 1DTF, 1CR and 1S are not impaired by the Plan.  Under § 1126(f) of the Bankruptcy Code, Classes 1CM, 1FT, 1DTF, 1CR and 1S and each Holder of a Claim in those Classes is presumed to have accepted the Plan, and their votes will not be solicited.

**4.4    Presumed Rejection by Classes Receiving No Distribution.**

In accordance with § 1126(g) of the Bankruptcy Code, Classes 7CR and 7S are deemed not to have accepted the Plan because the Plan provides that Interests of such Classes do not entitle the Holders of such Interests to receive or retain any property under the Plan on account of such Interests.  Accordingly, the votes of Holders of Interests in Classes 7CR and 7S will not be solicited.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**4.5** **Summary of Classes Voting on the Plan.**

Only the votes of Holders of Allowed Claims in Classes 2CM, 2FT, 2DTF, 2CR, and 2S; Classes 3CM, 3FT, 3DTF, and 3CR, 3S; Classes 4CM, 4FT, 4DTF, 4CR, and 4S; Classes 5CM, 5FT, 5DTF, 5CR, and 5S; and Classes 6CM, 6FT, 6DTF, 6CR, and 6S; and Holders of Allowed Interests in Classes 7CM, 7FT, and 7DTF will be solicited with respect to this Plan.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1** **Implementation of the Plan.**

The Plan will be implemented and consummated through the means contemplated by §§ 1123(a)(5)(B) and (D), 1123(b)(2), 1123(3)(A) and (B), and 1123(b)(4) of the Bankruptcy Code, including by (i) the transfer of certain Loan Servicing Agreements as set forth in Article VII of the Plan; (ii) the sale of the Acquired Assets as set forth in section 5.2 of the Plan; (iii) pursuant to section 5.3 of the Plan, the establishment of and transfer to the Liquidation Trusts of certain assets of the Estates, including the Net Expense Reserves or, in the case of Diversified, the retention of certain Diversified Excluded Assets and the Net Expense Reserves which will be liquidated pursuant to the Plan and the Diversified Liquidation Agreement; and (iv) in the case of USA Capital Realty, liquidation and dissolution.

**5.2** **Sale of Assets.**

5.2.1.   Sale of the Acquired Assets.   On the Effective Date and pursuant to the Asset Purchase Agreement and §§ 363 and 1123(b)(4) of the Bankruptcy Code, the Acquired Assets shall be sold to (a) Silver Point; or (b) if a Higher and Better Offer is submitted by a Third Party Bidder, then to the Third Party Bidder with the Higher and Better Offer, for the Total Cash Purchase Price, as the Higher and Better Offer is determined in accordance with the Buyer

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Protection and Bidding Procedures Order that is accepted by the Debtors and approved by the

Bankruptcy Court and the Plan.

  5.2.2. <u>Allocation of Sale Proceeds.</u>

  The Total Cash Purchase Price shall be allocated amongst the Debtors as follows:

    (a)  Sale Proceeds in the total amount of Commercial Mortgage Price will be

    allocated to USACM for the purchase of the USACM Assets; and

    (b)  Sale Proceeds in the total amount of First Trust Deed Fund Price will be

    allocated to First Trust for the First Trust Assets.

  Any Higher and Better Offers that may be selected in accordance with the Buyer

Protection and Bidding Procedures Order and as may be approved by the Bankruptcy Court, will

be in substantially the same form with substantially the same terms and conditions as the bid of

Silver Point and will be allocated amongst USACM and First Trust as set forth in the Buyer

Protection and Bidding Procedures Order.

  5.2.3 <u>Sale Free and Clear.</u> Except as expressly agreed to otherwise by the Debtors and

the Asset Acquirer, the Acquired Assets will be sold free and clear of all Liens, Claims,

encumbrances, rights of third parties and Interests.  The Confirmation Order shall constitute an

Order pursuant to § 363(b) and (f) of the Bankruptcy Code authorizing the sale of the Estates'

interests in the Acquired Assets to the Asset Acquirer.  The Confirmation Order shall provide that

the Asset Acquirer is a good faith purchaser of assets within the meaning of § 363(m) of the

Bankruptcy Code and has paid fair consideration and reasonable equivalent value of the Acquired

Assets that are purchased.  Except as expressly agreed to by the Debtors and the Asset Acquirer,

the Asset Acquirer is not liable for any Claims or Interests.  Except as set forth in the Asset

Purchase Agreement and the Plan, the Asset Acquirer shall have no liability for Claims or

Interests against the Debtors (whether or not currently known) based on its purchase of assets in accordance with the Plan.

5.2.4.   <u>Distribution Account.</u>  On or prior to the Effective Date, the Debtors shall each establish a Distribution Account.  On the Effective Date, each of the Debtors shall deposit into its respective Distribution Account its Expense Reserve and Sales Proceeds, if any.  After the Effective Date, liquidation proceeds of Diversified and USA Capital Realty, if any, shall be deposited in their respective Distribution Accounts.  In accordance with section 5.3 of the Plan, Cash to be distributed from the Liquidation Trusts also shall be deposited into each Debtor's Distribution Account for distribution to the Holders of Allowed Claims and Interests in accordance with the Plan.  The Debtors shall make all payments required to be made by them under this Plan from checks drawn on their respective Distribution Accounts.  Each Distribution Account shall comply with § 345 of the Bankruptcy Code.  After the Effective Date and prior to the appointment of an Estate Administrator for the Diversified Post-Effective Date Estate or the Liquidation Trusts, Mr. Thomas J. Allison, as the Chief Restructuring Officer of the Debtors, shall make all distributions from each of the Applicable Debtor's Distribution Accounts.  To the extent applicable, after the appointment of an Estate Administrator, the Estate Administrator shall be required to make all distributions from the Applicable Debtor's Distribution Account.  The Estate Administrator shall be bonded as may be required by the Office of the United States Trustee.

5.2.5.   <u>Distribution Related to Sale.</u>

Distribution of Cash in each of the Distribution Accounts shall be made in accordance with the Plan and the Confirmation Order.

<i>(a)    Calculation of Pro Rata for Disputed Claims and Interests.</i>

(i)   <u>Disputed Claims.</u>  For purposes of calculating Pro Rata or any other distributions to be made under the Plan to Holders of Allowed Claims, the

calculation of the total Allowed Claims in a Class shall be computed as if all Disputed Claims within that Class then pending were allowed in the full amount thereof.

(ii)  Disputed Interests.  For purposes of calculating Pro Rata or any other distributions to be made under the Plan to Holders of Allowed Interests, the calculation of the total Allowed Interests shall be computed as if all Disputed Interests then pending were allowed in the full amount thereof.

*(b)      Initial Distribution Date.*

On or as soon as practicable after the Effective Date, with reasonable efforts made by the Debtors to do so no later than thirty (30) days after the Effective Date, and in accordance with the Plan, the Debtors shall distribute the Cash in their respective Distribution Accounts to the Holders of Allowed Claims and Holders of Interests that, as of the Initial Distribution Date, are Allowed Claims or Allowed Interests; provided that such distribution shall occur net of the Payment Reserve and, if applicable, net of assets contributed to the Liquidation Trusts.

*(c)      Estimation of Contingent or Unliquidated Disputed Claims and Disputed Interests.*

No payments or distributions shall be made by the Debtors from their respective Distribution Accounts on all or any portion of a Claim or Interest which does not constitute an Allowed Claim or Allowed Interest.  Each Debtor shall make provision for the payment of the Claims and/or Interests which may be determined to be entitled to receive distributions under the Plan but, as of the Initial Distribution Date, do not constitute Allowed Claims or Allowed Interests, by establishing separate Payment Reserves for each

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Class of Claims or Interests, including unclassified Claims, in which Disputed Claims or Disputed Interests exist.  The Applicable Debtor shall account separately for any such Payment Reserve and retain Cash in such Reserve equal to the amount of such distribution that would have been distributed to Holders of Disputed Claims or Disputed Interests in such Class if such Disputed Claim or Interest were an Allowed Claim or Interest in their full face amount on the Initial Distribution Date.  As to any Disputed or unliquidated Claim or Disputed Interest, each of the Debtors has the discretion to request estimation pursuant to § 502(c) of the Bankruptcy Code, and to set a Payment Reserve based on such estimation.

(d)    *Allowance of Disputed Claims and/or Disputed Interests.*

Within five (5) Business Days after the entry of a Final Order holding that a Disputed Claim and/or Disputed Interest is an Allowed Claim and/or an Allowed Interest, the Applicable Debtor shall use Cash from the appropriate Payment Reserve in its Distribution Account for payment of the Allowed Claim and/or Interest.  The amount of the Cash used from the Payment Reserve to make any distribution from the Distribution Account shall be calculated on a Pro Rata basis, so that the Holder of the subject Claim and/or Interest receives an initial distribution equal to the total percentage distributions made by the Applicable Debtor and/or the Estate Administrator prior to the date of such allowance on other Allowed Claims in its Class or Allowed Interests.

(e)    *Unclaimed Distributions.*

Pursuant to § 347(b) of the Bankruptcy Code, all unclaimed distributions made under the Plan from a Distribution Account on the Initial Distribution Date shall be re-deposited into the Distribution Account of the Debtor who made the distribution for

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

redistribution to Holders of Allowed Claims and Allowed Interests against or in that Debtor's Estate in accordance with the provisions of the Bankruptcy Code and this Plan.

(f)     *Termination of Payment Reserves.*

If all Disputed Claims or Disputed Interests within a Class are resolved by Final Order, and there remains Cash in an Applicable Debtor's Payment Reserve on account of such Class, the Applicable Debtor shall provide a final accounting to the Estate Administrator and the Advisory Committee, if any, of the completion of payments to Allowed Claims and Interests and the termination of any Payment Reserves with respect to that Class.

(g)     *Accounting.*

Pending the final determination of all Allowed Claims or Allowed Interests in a Class,  the Debtors shall each provide an accounting for each of its Payment Reserves to the Estate Administrator and the Advisory Committee, if any, for each calendar quarter, which accounting shall include (i) any payments made to Holders of Allowed Claims or Allowed Interests from the Payment Reserves, (ii) any amounts released from the Payment Reserve based on final determinations of Holders of Allowed Claims or Allowed Interests in each Class; (iii) the amount of remaining estimated Claims and Interests, if any, and (iv) the amount of each remaining Claim and/or Interest for which payment has been reserved in its Payment Reserve.

5.2.6.   Taxes.

To the extent that the sale of the Acquired Assets is subject under applicable law to sales, transfer, use, stamp or similar Taxes that are not exempt under § 1146(a) of the Bankruptcy Code, such Taxes shall be paid by the Applicable Debtor whose assets were sold.  Any amounts that may

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  be necessary to pay such Taxes shall be reserved in a Payment Reserve by the Applicable Debtor

2  prior to the Initial Distribution Date.

3  **5.3    The Liquidation Trusts and the Diversified Post-Effective Date Estate.**

4      5.3.1   Establishment and Applicable Agreements.

5          *(a)     The Liquidation Trusts.*

6

7          On the Effective Date, the Liquidation Trusts shall be created pursuant to the

   Liquidation Trust Agreements, the form of which will be filed with the Bankruptcy Court

8

9  no later than ten (10) days prior to the final hearing on the adequacy of the Debtors'

10  Disclosure Statement under § 1125 of the Bankruptcy Code.

11          *(b)     The Diversified Post-Effective Date Estate.*

12          The liquidation and the wind down of the Diversified Post-Effective Date Estate

13

14  shall be governed by the Diversified Liquidation Agreement, the form of which will be

15  filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the

16  adequacy of the Debtors' Disclosure Statement under § 1125 of the Bankruptcy Code.

17      5.3.2.  Appointment of the Advisory Committees and the Estate Administrators.

18  Each of the Liquidation Trusts and the Diversified Post-Effective Date Estate will be

19  managed as set forth in the Plan and, to the extent applicable, the Liquidation Trust Agreement or

20  the Diversified Liquidation Agreement by an Estate Administrator and an Advisory Committee

21  comprised of three (3) Persons, unless another number is established in a Liquidation Trust

22  Agreement or the Diversified Liquidation Agreement.  The First Trust Committee shall appoint

23  the Estate Administrator and the members of the First Trust Advisory Committee, the USACM

24  Committee shall appoint the Estate Administrator and the members of the USACM Advisory

25  Committee, the Diversified Committee shall appoint the Estate Administrator and members of the

26  Diversified Advisory Committee, and the Debtors shall appoint the Estate Administrator and

27

28

members of the USA Securities Advisory Committee, which may, at the Debtors' discretion, be the same Estate Administrator and Advisory Committee selected for the USACM Liquidation Trust.

5.3.3   Transfer of Property.

(a)     *Transfer of Assets of the Debtors' Estates on the Effective Date in the Event of Sale.*

(i)       In accordance with § 1141(c) of the Bankruptcy Code, in the event the sale under the Asset Purchase Agreement is closed, the Acquired Assets shall be transferred to the Asset Acquirer on the Effective Date, or as soon as practicable thereafter.

(ii)      The First Trust Excluded Assets, including any Net Expense Reserve but net of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the First Trust Liquidation Trust.

(iii)     The USACM Excluded Assets, including any Net Expense Reserve but net of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the USACM Liquidation Trust.

(iv)      The USA Securities Estate, including any Net Expense Reserve but net of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the USA Securities Liquidation Trust.

(v)       The Diversified Excluded Assets, including any Net Expense Reserve and the Payment Reserves, shall be retained by the Diversified Post-Effective Date Estate.

(b)     *Transfer of Assets of the Debtors' Estates on the Effective Date in the Event of Self-Liquidation.*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

In the event that the sale of the Acquired Assets to the Asset Acquirer does not close as the result of a condition of sale not being met or for any other reason on or before 120 days following the Due Diligence Completion Date, as defined in the Silver Point Term Sheet, as the same may be extended by agreement between the Debtors and the Asset Acquirer, the First Trust Assets shall be irrevocably assigned, transferred and conveyed to the First Trust Liquidation Trust and the USACM Assets shall be irrevocably assigned, transferred and conveyed to the USACM Liquidation Trust.  In such event, all Cash held in the Distribution Account of USACM will be transferred to the USACM Liquidation Trust as soon as practicable after the Effective Date to fund at least the following: (i) performance of USACM's obligations related to the Loans; (ii) pursuit of Causes of Action transferred to the USACM Liquidating Trust and any litigation surrounding the assets held by or to which a Claim lies on one or more of the Debtors; (iii) collection of Loans transferred to the USACM Liquidation Trust from the USACM Estate; (iv) collection of Loans of the Diversified Estate; (v) collection of Loans of the First Trust Estate; and (vi) to fund the Debtors' orderly wind down in accordance with the terms of the Liquidating Trust Agreements.  In this event, the USACM Estate Administrator, may, at her or her discretion and pursuant to this Plan, transfer to a Third Party Servicer the Loan Servicing Agreements for the Serviced Loans and the First Trust Serviced Loans.

> (c)    *Voluntary Transfer of Causes of Action and Claims of Direct Lenders on the Effective Date.*

In either the event of a sale of the Acquired Assets or self-liquidation as set forth in subsections (a) and (b) above, each Direct Lender shall have the option to transfer its Causes of Action against IP or its non-Debtor Affiliates, including any Causes of Action or Claims based on Insider Guarantees, to the USACM Liquidation Trust.  In the event a Direct Lender makes this election, the Direct Lender shall be entitled to a share of the

1    proceeds of the USACM Liquidation Trust as set forth in this Plan and the USACM

2    Liquidation Trust Agreement.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(d)    *Assets Vested in Liquidation Trusts.*

All assets irrevocably assigned, transferred and conveyed to the Liquidation Trusts as provided in subsections (a), (b) and (c) above shall be, except as otherwise provided in either the Plan or the Liquidation Trust Agreements, free and clear of all Liens, Claims, Interests and any other rights, obligations, or interests of any Person in, to or upon the those assets and any proceeds of the foregoing, and shall be deemed vested in and property of the Liquidation Trusts, subject to the terms of the Plan and in the Applicable Liquidation Trust Agreements.

5.3.4.    <u>Liquidation of Assets of the Trust Estates.</u>

On and after the Effective Date, the Liquidation Trusts or the Diversified Post-Effective Date Estate, acting through an Estate Administrator and Advisory Committee in accordance with the terms of the Plan and the Liquidation Trust Agreements, shall liquidate the Trust Estates, including the Causes of Action, by sale, collection, or other disposition, including the satisfaction of Allowed Secured Claims in accordance with the terms of this Plan.  In accordance with the terms of the Liquidation Trust Agreements or Diversified Liquidation Agreement, the Estate Administrator and Advisory Committee, subject to section 5.3.5 below, will determine (a) whether and when to liquidate the assets of the Trust Estates, and (b) whether to bring, settle, release, compromise, enforce or abandon Causes of Action and Claims and, except as otherwise provided herein, will not be required to seek further approval of the Bankruptcy Court for such action, unless required to do so under the Plan and, to the extent applicable, a Liquidation Trust Agreement or the Diversified Liquidation Agreement.  Each Estate Administrator has standing to and may pursue the Causes of Action and Claims in accordance with the best interests of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate.  In regard to Causes of Action and Claims pending on the Effective Date, the Estate Administrator and/or the Applicable

Liquidation Trust shall be deemed to be substituted as parties in the name and place of any one or all of the Debtors named in such Causes of Action or Claims.

      5.3.5   <u>Management and Power of Liquidation Trusts and the Diversified Post-Effective Date Estate.</u>

      *(a)    Management by the Estate Administrators.*

On and after the Effective Date, the affairs of each Liquidation Trust and the Diversified Post-Effective Date Estate and all assets held or controlled by the Liquidation Trust or Diversified Post-Effective Date Estate shall be managed under the discretion of an Estate Administrator and an Advisory Committee in accordance with the Plan and the Liquidation Trust Agreement of the Applicable Liquidation Trust or the Liquidation Agreement of the Diversified Post-Effective Date Estate.  Each Liquidation Trust and the Diversified Post-Effective Date Estate, acting through their respective Estate Administrators, shall be the representatives of the Applicable Debtors' Estates pursuant to § 1123 of the Bankruptcy Code and shall have all of the rights, powers and standing of a debtor in possession under § 1107 of the Bankruptcy Code, and such other rights, powers and duties incident to causing performance of the Applicable Debtors' obligations under the Plan as may be necessary.  The powers of each Liquidation Trust and the Diversified Post-Effective Date Estate, acting through its respective Estate Administrators, shall include, but not be limited to:

      (i)    Receiving and holding all the assets of Trust Estate and to having exclusive possession and control thereof as permissible under applicable law;

      (ii)    Managing, selling and converting all or any portion of the assets in the Trust Estate to Cash, and distributing the net distributable proceeds as specified in the Plan and the Liquidation Trust Agreement of the Applicable Liquidation Trust or the Liquidation Agreement of the Diversified Post-Effective Date Estate;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(iii)     Entering into, performing and exercising rights under contracts binding upon the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate (but not upon the Estate Administrator in his or her individual capacity) which are reasonably incident to the administration of the Liquidation Trust or the Diversified Post-Effective Date Estate and which the Estate Administrator, in the exercise of his or her best business judgment, reasonably believes to be in the best interests of the Liquidation Trust or the Diversified Post-Effective Date Estate;

(iv)     Establishing and maintaining accounts the Distribution Accounts and, in the case of the Liquidation Trusts, a Trust Account, consistent with the requirements of § 345 of the Bankruptcy Code, at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the Cash and other property of the Trust Estate may be deposited, drawing checks or making withdrawals from such accounts, and paying or distributing such amounts of the Liquidation Trust or the Diversified Post-Effective Date Estate as permitted or required under the Plan and the Liquidation Trust Agreements or the Diversified Liquidation Agreement;

(v)     Holding, operating, marketing, and leasing (for the purposes of holding for sale) the assets of the Liquidation Trust or the Diversified Post-Effective Date Estate, including without limitation, entering into servicing agreements to service the Loans transferred to the Applicable Liquidation Trust or retained by the Diversified Post-Effective Date Estate;

(vi)     Selling or otherwise disposing of the assets in of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate;

(vii)     Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, selling or

otherwise disposing of, and liquidating or converting to Cash, any assets of the Liquidation Trust or the Diversified Post-Effective Date Estate, either subject to or free of any Lien, or allocating and distributing all or any part of the property of the Liquidation Trust or the Diversified Post-Effective Date Estate among those having an interest in such property;

(viii)    Collecting and receiving any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Liquidation Trust or the Diversified Post-Effective Date Estate, and distributing the same to the Beneficiaries of the Liquidation Trust in accordance with the terms of the Plan and the Liquidation Trust Agreement, or to the Holders of Allowed Claims and Allowed Interests of the Diversified Post-Effective Date Estate in accordance with the terms of the Plan and the Diversified Liquidation Agreement;

(ix)    Paying any and all necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Trust Estate including, without limitation, paying the fees owing to the Estate Administrator as further described in the Liquidation Trust Agreement or the Diversified Liquidation Agreement;

(x)    Investigating, abandoning, filing, compromising, settling, withdrawing or litigating in any court of competent jurisdiction, any and all Claims, Causes of Action, or other rights belonging to the Liquidation Trust or the Diversified Post-Effective Date Estate;

(xi)    Suing or being sued in connection with any matter arising from or related to the Plan or the Liquidation Trust Agreement or in connection with any matter arising from or related to the Plan or the Diversified Liquidation Trust

Agreement that affects in any way, and to the extent applicable, the rights or obligations of the Liquidation Trust, the Diversified Post-Effective Date Estate, the Estate Administrator, or Beneficiaries;

(xii)    Representing the interests of the Beneficiaries with respect to any matters relating to the Plan, the Liquidation Trust or the Liquidation Trust Agreement, or representing the interests of the Holders of Allowed Claims or Allowed Interests with respect to any matters relating to the Plan, the Diversified Post-Effective Date Estate or the Diversified Liquidation Agreement;

(xiii)    Acting as representative of an Applicable Debtor's Estate, the Trust Estate or the Diversified Post-Effective Date Estate and investigating, abandoning, initiating, prosecuting, or settling or compromising any and all Causes of Action or Claims belonging to the Applicable Debtor's Estate, the Liquidation Trust, the Trust Estate, or the Diversified Post-Effective Date Estate;

(xiv)    If a Liquidation Trust or the Diversified Post-Effective Date Estate becomes subject to federal income tax or state tax, the Estate Administrator shall have the power, exercisable at his or her discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Trust Estate, including to any Beneficiaries of the Litigation Trust, and the Estate Administrator of the Liquidation Trust shall have the same power to take any action reasonably necessary to minimize any adverse federal or state income tax consequences resulting from any distribution made by the Liquidation Trust to Beneficiaries thereof;

(xv)    In general, without in any manner limiting any of the foregoing, or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the following, dealing with the Liquidation Trust and the Trust Estate or with the Diversified Post-Effective Date Estate, or any part or parts thereof, in all other ways as would be lawful for any Person owning the same to deal therewith; provided, however, that the investment powers of the Estate Administrator, other than those reasonably necessary to maintain the value of the Trust Estate and to further the liquidating purpose of the Liquidation Trust and the administration of the Diversified Post-Effective Date Estate, are limited to the power to invest in demand and time deposits, such as short-term certificates of deposit, in banks and other savings institutions, or other temporary, liquid investments, such as United States Treasury Bills and other investment vehicles authorized by § 345 of the Bankruptcy Code;

(xvi)    Doing any and all other things, not in violation of any other terms of the Plan, the Liquidation Trust Agreements, or the Diversified Liquidation Agreement, which, in the reasonable business judgment of the Estate Administrator, are necessary or appropriate for properly liquidating, managing, investing and distributing the assets of the Liquidation Trust or the Diversified Post-Effective Date Estate in accordance with the provisions of the Plan, the Liquidation Trust Agreements, or the Diversified Liquidation Agreement; and

(xvii)   At the appropriate time, asking the Bankruptcy Court to enter a Final Decree in each case.   Nothing in the Plan prevents the issuance of a Final Decree in each Chapter 11 Case at differing times, when the Plan has been fully implemented in the Chapter 11 Case at issue.

(b)      *Prosecution, Defense, Settlement, and Abandonment of Causes of Action, Claims and Other Rights.*

Subject to the powers and discretion granted to each Estate Administrator and Advisory Committee, the terms of the Liquidating Trust Agreements and the Diversified Liquidation Agreement and subsection (c) below, each Liquidation Trust or the Diversified Post-Effective Date Estate, acting through its respective Estate Administrator, shall have the full power and authority to prosecute, abandon, compromise or otherwise resolve any and all Causes of Action, Claims or other rights, belonging to or asserted against the Trust Estate, and distribute the proceeds related thereto in accordance with the Plan and the Liquidation Trust Agreement or the Diversified Liquidation Agreement.  Any and all fees, costs and expenses incurred in respect to the prosecution or defense of any Causes of Action, Claims and rights shall be payable and paid solely by the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, subject to the funding provided in connection with the compromises and settlements included in Article XII of the Plan. Each Liquidation Trust or the Diversified Post-Effective Date Estate, acting through its Estate Administrator, shall be authorized to prosecute or defend such Causes of Action, Claims and rights in the name of the Applicable Debtor, but at the expense of and for the benefit of the Liquidation Trust or the Diversified Post-Effective Date Estate, except as otherwise provided herein.  Nothing in this paragraph requires an Estate Administrator to pursue litigation if no funds are available to finance such litigation.  In such event, the Estate Administrator shall be entitled to abandon such litigation if no funding satisfactory to the Estate Administrator can be obtained.  An Estate Administrator may abandon any litigation in his or her final report or motion for a Final Decree if the Estate Administrator determines, in his or her sole discretion, that pursuit of any such litigation is not, for any

reason, warranted.

(c)    *Limitations.*

All of the powers and duties granted to each Estate Administrator under the Liquidation Trust Agreement of the Applicable Liquidation Trust or under the Diversified Liquidation Agreement shall be limited by and subject to the powers and discretion granted to an Advisory Committee by this Plan and the Liquidation Trust Agreement of the Applicable Liquidation Trust or the Diversified Liquidation Agreement.

(d)    *Employment and Payment of Professionals.*

Each Estate Administrator, on behalf of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, is authorized, without further Order of the Bankruptcy Court, to employ professionals, including attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters, actuaries, consultants or other Persons whose services may be necessary or advisable in the sole judgment of the Estate Administrator to advise or assist him or her in discharging his or her duties as Estate Administrator, or otherwise exercising any powers vested in the Estate Administrator.  The costs of such employment and other expenditures shall be paid from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate.  Such Persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis after submitting to the Estate Administrator and the Advisory Committee, detailed invoices at least ten (10) Business Days prior to payment from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate.  If approved by the Estate Administrator, such fees and expenses shall be paid without further notice, hearing or approval of the Bankruptcy Court.  Nothing in this

section of the Plan is meant to limit the authority of the Estate Administrator to employ different professionals for each Cause of Action.

5.3.6    <u>Governance of Advisory Committees.</u>

(a)    After the appointment of an Advisory Committee, in the event that any appointed member of the Committee resigns or, because of the transfer or payment in full of its Claims or Interests no longer represents the interests of the Trust Estate, then such member shall appoint a successor representative within thirty (30) days of resignation or the transfer or payment in full of its Claims or Interests.  If any member fails to appoint a successor representative within thirty (30) days after resignation or the occurrence of the event making the member no longer representative, then such member shall be replaced, if possible, by a successor to be elected by the remaining members of that Advisory Committee.

(b)    The Advisory Committee shall act by a majority vote.  If for any reason a majority cannot be reached, the Estate Administrator of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate shall cast a vote to form a majority.

(c)    Each Advisory Committee shall hold an organizational meeting as soon as practicable after the Effective Date.  At such meeting, a Chairperson shall be elected by a majority of the Advisory Committee members.  The Persons comprising the Advisory Committee shall provide one another with notice addresses and similar information.

(d)    Meetings of each Advisory Committee may be conducted in person or by conference telephone. The Advisory Committee may establish a schedule for regular meetings.  In addition to regular meetings, meetings of each Advisory Committee may be convened upon such notice as the Chairperson shall deem appropriate and necessary.  Notice

may be waived before, during or after a meeting by the Advisory Committee. Any Person on an Advisory Committee may designate a proxy for one or more meetings.

(e)     Each Advisory Committee may also act on the written or oral consent of a majority of the Persons serving on the Advisory Committee, without a meeting.

(f)     Neither an Advisory Committee nor any Person serving thereon nor any representative thereof, nor the agents of the Advisory Committee, nor the Advisory Committee's professionals shall be liable to the Debtors, any Beneficiary, any Holder of a Claim or Interest, any creditor or any other Person or Entity for an error of judgment or any act or omission other than willful misconduct, gross negligence or fraud. Each Person serving on an Advisory Committee shall be liable for its own willful misconduct, gross negligence or fraud. Except in the event of gross negligence or willful misconduct, no Persons serving on an Advisory Committee will be liable to any Person or Entity for any actions taken or committed by him or her on behalf of the Advisory Committee.

(g)     The Persons serving on an Advisory Committee shall serve without compensation, except for reimbursement of reasonable expenses necessarily incurred in the performance of their duties as members of the Advisory Committee. Each Advisory Committee shall be authorized to retain counsel as it shall be deem advisable, without further application to the Court. The fees of the professionals retained by the Advisory Committee shall be paid from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate only if the Estate Administrator determines such fees to be reasonable and necessary for the administration of the Liquidation Trust or the Diversified Post-Effective Date Estate.

(h)     If any matter to be addressed by an Advisory Committee involves the individual or personal rights or obligations of a Person on the Advisory Committee, that Person shall not participate in the deliberation or voting with respect to such matter.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(i)     Each Person on an Advisory Committee shall act in a fiduciary capacity for the interests of the applicable Trust Estate, but neither any decision of the Advisory Committee nor the vote of any one of the Advisory Committee members shall bind, limit or restrict the rights or obligations of any Advisory Committee member to or against the Debtors, the Estates or any third party.

(j)     Each Advisory Committee will be dissolved and its members discharged and released: (i) upon completion of the functions of the Advisory Committee and the entry of a Final Decree in the Applicable Debtors' Chapter 11 Case; (ii) upon the resignation of all members of the Advisory Committee and a failure to replace such resigning members in accordance with the provisions of the Plan; or, (iii) upon conversion to a Chapter 7 case, if the Advisory Committee votes to complete the liquidation of the Applicable Debtors' Chapter 11 Case through such conversion.

(k)     Each Advisory Committee shall have the standing to bring any matter or issue to the attention of the Bankruptcy Court for a determination and the entry of any appropriate Order by the Court and each Advisory Committee shall give notice of any such action to the Estate Administrator, the Debtors, the United States Trustee and to any Person who is directly affected by any such action, and to any other Person(s) who serves a written request upon the Liquidation Trust or the Diversified Post-Effective Date Estate to receive notices after the Effective Date.

5.3.7   Trust Accounts and Distribution Accounts.

Upon appointment, the Estate Administrators of the Liquidation Trusts shall establish a single Trust Account and shall, as set forth in section 5.2 above, take control of the Distribution Account of the Applicable Debtor.  Cash received by the Estate Administrator from the liquidation of the assets of the Trust Estate of the Applicable Liquidation Trust shall be immediately

deposited by the Estate Administrator or his or her nominee into the Trust Account. Upon

appointment, each Estate Administrator or his or her nominee shall serve as the disbursing agent

of the Applicable Liquidation Trust. Cash held in a Liquidation Trust's Trust Account shall be

transferred to the Applicable Debtor's Distribution Account for distribution. Each Estate

Administrator of the Liquidation Trusts and the Estate Administrator of the Diversified Post-

Effective Date Estate shall make all payments required to be made under this Plan from checks

drawn on the Distribution Account of the Applicable Debtor.

      5.3.8   <u>Tax Matters</u>.

      Each Liquidation Trust shall be treated as a grantor trust, for federal income tax purposes,

within the meaning of §§ 671 through 677 of the Internal Revenue Code. Pursuant to and in

accordance with the Plan, each Estate Administrator shall be responsible for all tax matters of the

Applicable Liquidation Trust and the Trust Estate, including, but not limited to, the filing of all tax

returns and other filings with governmental authorities on behalf of the Applicable Liquidation

Trust for time periods ending on or before the Final Tax Day, including the filing of tax returns for

the Applicable Liquidation Trust as a grantor trust pursuant to § 1.671-4(a) of the United States

Income Tax Regulations, the filing of determination requests under § 505 of the Bankruptcy Code,

and responding to any tax audits of the Trust Estate of the Liquidation Trust. Each Estate

Administrator shall provide such information to the Beneficiaries of the Applicable Liquidation

Trust as will enable them to properly file their separate tax returns and shall withhold and pay over

any amounts required by tax law. Each Estate Administrator is authorized to act as agent for the

Applicable Liquidation Trust in withholding or paying over any amounts required by law

(including tax law) to be withheld or paid by the Liquidation Trust in connection with the transfer

and assignment of the assets of the Estates to the Liquidation Trust pursuant to the Plan.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Except as otherwise set forth in the Plan or a Liquidation Trust Agreement, any items of income, deduction, credit, or loss of a Liquidation Trust shall be allocated for federal income tax purposes among the Beneficiaries of the Applicable Liquidation Trust Pro Rata on the basis of their beneficial interests; provided, however, that to the extent any item of income cannot be allocated in the taxable year in which it arises, each Liquidation Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of the Beneficiaries when such allocations are made.  Each Estate Representative shall be entitled to deduct any federal or state withholding taxes from any payments made with respect to Allowed Claims or Interests, as appropriate, and shall otherwise comply with § 346 of the Bankruptcy Code.

5.3.9    Quarterly Report.

As soon as practicable after each calendar quarter, and in no event later than thirty (30) Business Days after the end of each quarter, each Estate Administrator shall file with the Bankruptcy Court and submit to the United States Trustee, the Debtors, the Asset Acquirer, if any, the Advisory Committee of the Applicable Liquidation Trust and any Beneficiary of the Applicable Liquidation Trust who requests copies of such quarterly reports after the Confirmation Date, an unaudited written report and account showing: (a) the assets and liabilities of the Liquidation Trust, (b) any distributions made and Liquidation Expenses paid pursuant to the Plan and the Liquidation Trust Agreement, (c) any changes in the Trust Estate that have not been previously reported, and (d) any material action taken by the Estate Representative in the performance of his or her duties under the Liquidation Trust Agreement that has not been previously reported.

5.3.10   Termination of Liquidation Trusts.

(a)    Unless otherwise stated in the Litigation Trust Agreements, each Liquidation Trust shall terminate on such date when a Final Decree that is a Final Order

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

has been entered in the Applicable Debtors' Chapter 11 Case and when all assets held by the Liquidation Trust have been distributed and the Claims and Causes of Action of the Applicable Debtor or the Liquidation Trust have been pursued or abandoned pursuant to and in accordance with the Plan and the Liquidation Trust Agreement of the Applicable Liquidation Trust.  However, the term of any Liquidation Trust shall not exceed five (5) years from the Effective Date, provided that, upon a finding that an extension is necessary to the purpose of a Liquidation Trust and upon approval by the Bankruptcy Court, the term of a Liquidation Trust may be extended for a finite term based on the particular facts and circumstances.  Each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.

(b)    The Estate Administrators and the Advisory Committees of the Liquidation Trusts shall be discharged from their obligations under the Plan and the Liquidation Trust Agreements once the Applicable Liquidation Trust has terminated pursuant to the Litigation Trust Agreement, and at that time, the Estate Administrator and the Advisory Committee members shall be released from all liability related to each of their duties under the terms under the Plan and the Litigation Trust Agreement.

5.3.11    <u>Final Reports and Discharge of the Estate Administrator and the Advisory Committee for the Diversified Post-Effective Date Estate.</u>

(a)    *Final Reports.*

Upon the liquidation of all assets in a Liquidation Trust or all assets of the Diversified Post-Effective Date Estate and the distribution of all assets in the Applicable Debtor's Distribution Account in accordance with the Plan and, to the extent applicable, the Liquidation Trust Agreement of the Applicable Liquidation Trust or the Diversified Liquidation Agreement, the Liquidation Trust or the Diversified Post-Effective Date

Estate, acting through its Estate Administrator, shall then file a final report and account of all receipts and disbursements with the Bankruptcy Court, and serve that report on the United States Trustee and the applicable Advisory Committee.

      *(b)       Discharge of Estate Administrator and Diversified Advisory Committee.*

      The Estate Administrator and Advisory Committee of the Diversified Post-Effective Date Estate shall be discharged from their obligations under the Plan and the Diversified Liquidation Agreement once a Final Decree that is a Final Order is entered in the Diversified Case, and at that time unless the Advisory Committee is dissolved earlier under subsection 5.3.6 of the Plan, the Estate Administrator and the Advisory Committee members shall be released from all liability related to each of their duties under the terms under the Plan and the Diversified Liquidation Agreement.

**5.4**      **Cancellation of Certain Evidence of Claims and Interests.**

      Unless included in the Acquired Assets at the option of the Asset Acquirer and except to the extent otherwise provided under the Plan, any evidences of Claims or Interests shall, as of the Effective Date, represent only the right to participate in the distribution, if any, contemplated by the Plan and any documents exercised in the furtherance thereof.  All Liens and other evidence of Liens, all instruments and other evidence of Claims, and all evidence of Interests in the Debtors, shall be canceled and be of no further force and effect, without any additional action on the part of an Applicable Debtor, an Applicable Liquidation Trust, or the Diversified Post-Effective Date Estate.  As of the Effective Date, the Holders of Claims or Interests will have no rights against the Debtors, their Estates, or the Trust Estates arising from or relating to such Claims or Interests except the right, if any, to receive distributions of property from the Debtors, a Liquidation Trust, or the Diversified Post-Effective Date Estate in accordance with and under the terms of the Plan, a Liquidation Trust Agreement, or the Diversified Liquidation Agreement.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**5.5     Effect of Appeals.**

Unless the Confirmation Order is stayed pending appeal, at the option of the Debtors or an Estate Representative, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely filing and service of a motion under Bankruptcy Rule 7052, 8002, 8003, 8015, 9023 or 9024.

**ARTICLE VI**

**CLAIMS ISSUES**

**6.1     Treatment of Administrative Expense Claims.**

*(a)     Administrative Expense Claims Bar Date.*

Professionals employed by the Debtors and the Committees, whose employment was approved at or prior to the Confirmation Date, who perform services or advance costs prior to or on the Confirmation Date, shall file a Final Fee Application with the Bankruptcy Court seeking allowance of an Administrative Expense Claim for such services or advanced costs on or before the Administrative Expense Claims Bar Date.  Any such Professional who fails to file a Final Fee Application before or on the Administrative Expense Claims Bar Date shall be forever barred from seeking the allowance of its Administrative Expense Claim, and the Debtors, the Estates, each of the Trust Estates and each Liquidation Trust shall be discharged of any obligation on such Claim, or any other Claim related to the Professional's services or costs.

*(b)     Objections to Administrative Expense Claims.*

Objections to Administrative Expense Claims shall be filed in the time set by the Bankruptcy Court.  All Administrative Expense Claims which are not Allowed Administrative Expense Claims in the Plan shall be Allowed Administrative Expense Claims only to the extent allowed by the Bankruptcy Court in a Final Order.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(c)    *Administrative Expense Claims Incurred After the Confirmation Date.*

Professionals employed by the Debtors or a Committee, whose employment was approved at or prior to the Confirmation Date, who perform services or advance costs in connection with or in aid of consummation of the Plan after the Confirmation Date and prior to the entry of a Final Decree, shall file and serve monthly billing statements for such time period on the United States Trustee, the Applicable Debtor, and the Estate Administrator and Advisory Committee, if applicable, and any party requesting notice on or after the Effective Date.  If a written objection to a billing statement is made by any party, served within fifteen (15) days of service of the billing statement, the Bankruptcy Court shall determine whether the requested fees and costs are reasonable and may be paid by the Applicable Debtor as an Allowed Administrative Expense Claim under the Plan.  Absent objection, the amounts on a monthly billing statement may be treated as an Allowed Administrative Expense Claim for purposes of priority, and may be paid by the Applicable Debtor as an Allowed Administrative Expense Claim in accordance with the Plan. At the hearing on the motion for Final Decree, or at such earlier time as an Applicable Debtor or Estate Administrator in its sole discretion may choose, the Bankruptcy Court shall determine whether or not such payments shall be approved as reasonable if they have not been previously approved.  In determining the reasonableness of the payments made, the Bankruptcy Court may consider all payments made to Holders of Allowed Administrative Expense Claims, including those requested in the Final Fee Applications.

**6.2.    Subordinated Claims.**

Entry of the Confirmation Order shall be an Order of the Bankruptcy Court subordinating any and all Insider Claims.  These Claims shall be deemed subordinated as of the Confirmation Date without further Order.  Claims, other than the Claims listed in this section, shall not be Subordinated Claims until such time as a Final Order has been entered classifying such Claims as Subordinated Claims.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**6.3      Debtors' Retention of Claims Litigation.**

As of the Effective Date, all Debtors, prior to the wind down and dissolution pursuant to this Plan, and notwithstanding the transfer of Causes of Action to the Liquidation Trusts and the powers of the Liquidation Trust or any Estate Administrator, shall have the exclusive right, subject to any limitations in a Liquidation Trust Agreement or the Diversified Liquidation Agreement, to file, serve and prosecute objections to Disputed Claims and Disputed Interests.

**6.4.      Pre-Paid Interest**

(a)      Prior to the Confirmation Date, as one of the various theories the Debtors can present with respect to the collected Pre-Paid Interest, the Debtors intend to file a dispositive pleading related to the Debtors' right to retain and use the Pre-Paid Interest collected from Borrowers to date as property of the estate.  With respect to any Pre-Paid Interest collected or which could be collected from Borrowers that is not the subject of any filed pleading as of the Confirmation Date or as to which has not been ruled on as of the Confirmation Date, any Lender claiming an interest in such funds that have been or could be collected from a Borrower must file an adversary proceeding within thirty (30) days following the Confirmation Date identifying the specific right such Lender has to any specific money collected or to be collected from a specific Borrower on an identified Loan, the amount of such Claim by the Lender, and the Loan into which the Lender believes it can trace or otherwise assert an individual right to recover such amount upon collection from the specific Borrower on the identified Loan (the "Lender Claim").  The Debtors or an Estate Administrator, as appropriate, will reserve the amounts claimed currently or as collected by a Lender unless and until a Final Order is entered with respect to the Lender Claim. In responding to the Lender Claim, the Debtors or an Estate Administrator reserves the right to assert any and all legal and factual theories available to the USACM Estate to defeat the Lender Claim.  All Pre-Paid Interest collected from Borrowers by the Asset Acquirer after the closing of

the transfer of the USACM Assets to the Asset Acquirer shall be paid to the USACM Liquidation Trust, subject to the Court's final determination on any Lender Claim relating to the Pre-Paid Interest collected.  As part of the Confirmation Order, the Court shall order the Asset Acquirer to pay the post-closing Pre-Paid Interest to the USACM Liquidation Trust in accordance with this paragraph.

(b)        Pending the occurrence of the Effective Date or an earlier dispositive ruling, USACM shall continue to net USACM's claims for Pre-Paid Interest against distributions to the Lenders pursuant to Debtors' Motion to Distribute Funds and hold such netted Cash, separately accounted for, in the Debtors' Collection Account.  Unless a dispositive pleading is filed by the Debtors and ruled on by the Bankruptcy Court prior to the later of (i) the 120th day after the Confirmation Date or (ii) the Effective Date, with respect to the funds netted against distributions to Lenders pursuant to the Debtors' Motion to Distribute Funds and this Plan, Cash held by USACM from distributions to Lenders to cover potential recoupment and other claims of USACM for recovery of Pre-Paid Interest not yet paid by a Borrower as of the Confirmation Date will be held for the later of (i) 120 days after the Confirmation Date, or (ii) the Effective Date.  If, at the end of the later of (i) the 120th day after the Confirmation Date, or (ii) the Effective Date, the Pre-Paid Interest to which this Cash relates has not yet been paid by the relevant Borrower, USACM or the USACM Liquidation Trust will recoup the amount of unpaid Pre-Paid Interest from each Lender and, as necessary, will provide written instruction to the Third Party Servicer to pay Pre-Paid Interest collected thereafter from the Borrower (which has already been recouped from the Lender) to the Lender.  During this 120-day period, the Lenders shall not be either sued or recoupment made of the Cash held back to pay the Pre-Paid Interest.  As to any Pre-Paid Interest that is not collected from the Borrower or from the Lender through the recoupment process within 120 days after the Confirmation Date, USACM or, if the USACM Estate Administrator has been appointed, the USACM Estate Administrator may, at its, his, or her option and discretion, pursue

any such claims or causes of action on behalf of USACM or the USACM Liquidation Trust and pursuant to the time table determined to be appropriate by the Estate Administrator at his or her discretion.

**6.5     Time Limit for Filing Objections to Claims and Interests.**

(a)     Objections to Claims (other than Administrative Expense Claims) and Interests shall be filed with the Bankruptcy Court and served upon each Holder of the Claim or Interest to which objections are made not later than the Objection Bar Date, or such later date as the Bankruptcy Court may order with respect to a particular Claim or Interest or group of Claims or Interests.

(b)     The resolution of any objection to a Claim or Interest shall be governed by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, the Plan or such provisions as may be established by the Bankruptcy Court.

(c)     Any Claim or Interest as to which an objection is not timely filed shall be deemed an Allowed Claim or Interest, unless: (i) an extension of the Objection Bar Date is obtained from the Bankruptcy Court in accordance with Bankruptcy Rule 9006 or this Plan or by agreement regarding any particular Claim or Interest; or (ii) such Claim or Interest is subject to disallowance under § 502(d) of the Bankruptcy Code, in which case such Claim or Interest shall be deemed disallowed in accordance with § 502(d) of the Bankruptcy Code without the need for filing an objection thereto.

**6.6     Late Claims**.

No distribution shall be made on account of any Claims or Interests filed after the Initial Distribution Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## ARTICLE VII

## EXECUTORY CONTRACTS

**7.1**     **Assumption or Sale of the Loan Servicing Agreements.**

Effective on the Effective Date, pursuant to §§ 365 and 1123(b)(2) or §§ 363 and 1123(a)(5) of the Bankruptcy Code, the Loan Servicing Agreements identified as part of the USACM Assets shall either be transferred to the Asset Acquirer pursuant to the Plan and the Confirmation Order free and clear of Liens, Claims, and Interests, including any alleged Claims under § 503(b) of the Bankruptcy Code, or through a process mutually agreeable to the Asset Acquirer and the Debtors, as may be set forth in the definitive Asset Purchase Agreement; provided, however, that no process will be agreed to that would result in the assertion of any Claims under § 503(b) of the Bankruptcy Code that could arise out of the transfer of the Loan Servicing Agreements. With respect to the Loans that are part of the Diversified Excluded Assets and the First Trust Excluded Assets or in the event of a self-liquidation, the First Trust Liquidating Trust (with respect to the First Trust Excluded Assets, or, in the event of a self liquidation, the First Trust Serviced Loans), the Diversified Post-Effective Date Estate (with respect to the Diversified Excluded Assets), and the USACM Liquidating Trust (with respect to the Serviced Loans) the Loan Servicing Agreements shall, except with respect to Loans that are wholly owned by Diversified or First Trust, the Debtors shall have the option to retain and then transfer to the USACM Liquidating Trust their respective Loan Servicing Agreements, collect the contractual fees and service the loans covered by such Agreements or, as part of this Plan, to transfer the Loan Servicing Agreements to a licensed and, in the business judgment of the Debtors, properly capitalized Third Party Servicer. With respect to Loans that are wholly owned by Diversified or First Trust, the First Trust Estate Administrator and the Diversified Estate Administrator respectively shall make the determination as to whether the Loans are serviced by the First Trust Liquidating Trust or the Diversified Post-Effective Date Estate respectively or a Third Party Servicer of the respective Estate Administrator's choice.

**7.2**     **Assumption of General Executory Contracts.**

Not later than ten (10) days prior to the Final Hearing on the Disclosure Statement, the Debtors shall file a list of any General Executory Contracts to be assumed or assumed and assigned under the Plan pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code.

**7.3**     **Rejection of Certain Executory Contracts.**

On the Effective Date, unless assumed  or assumed and assigned in this Plan or by separate Order of the Bankruptcy Court, all General Executory Contracts, including all written employment agreements, severance contracts (except with respect to employees employed on the Confirmation Date) and employee benefit or retirement or supplemental retirement benefit plans and agreements and unexpired leases of the Debtor shall be deemed rejected by the Debtors as of the Petition Date.

**7.4**     **Claims for Rejection Damages.**

Each Person who is a party to an executory contract or unexpired lease which is rejected pursuant to this Plan, shall be entitled to file, a proof of Claim for damages alleged to have arisen from the rejection of the executory contract or unexpired lease to which such Person is a party. All proofs of Claim with respect to Claims arising from the rejection of any executory contracts or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of: (i) the date that an Order rejecting the executory contract or unexpired lease is entered, or (ii) the Confirmation Date.  Objections to any such proof of Claim shall be filed by the Claims Objection Bar Date.  All Claims arising out of the rejection of executory contracts or unexpired leases shall be General Unsecured Claims.

**ARTICLE VIII**

**PRESERVATION OF CLAIMS AND CAUSES OF ACTION**

**8.1    Preservation.**

Except as otherwise expressly agreed between the Debtors and the Asset Acquirer, all Claims, Causes of Action and rights of the Debtors or the Estates as of the Confirmation Date shall be preserved under the Plan, retained by the Estates, transferred to the Applicable Liquidation Trust or retained by the Diversified Post-Effective Date Estate pursuant to Article V of the Plan, and pursued by the Estate Administrator, in his or her sole discretion, as set forth in Article V of the Plan and in the Liquidation Trust or Liquidation Agreements.

**ARTICLE IX**
**CONFIRMATION PURSUANT TO § 1129(b) OF THE BANKRUPTCY CODE**

**9.1    Cram-Down.**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) of the Bankruptcy Code.  Further, as the Plan contains a Plan for five separate Debtors, the Debtors reserve the right to request confirmation of the Plan for one or more, but less than all  Debtors under § 1129(b).  In accordance with § 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including to amend or modify it to satisfy the requirements of § 1129(b) of the Bankruptcy Code for one or more of the Debtors covered by the Plan, if necessary its sole and absolute discretion.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**10.1    Conditions to Confirmation.**

Confirmation of the Plan shall not occur unless all of the requirements contained in the Bankruptcy Code have been satisfied.  In addition, Confirmation shall not occur unless each of the following conditions has occurred:

(a)    The Liquidation Trust Agreements and the Diversified Liquidation Agreement have been drafted and filed with the Bankruptcy Court in form and substance acceptable to the Applicable Debtors.

(b)    The Bankruptcy Court has entered an Order finding that the Disclosure Statement contains adequate information pursuant to § 1125 of the Bankruptcy Code;

(c)    The Plan is consistent with the terms of the Asset Purchase Agreement, which has been fully executed; and

(d)    The proposed Confirmation Order is in form and substance acceptable to the Debtors.

**10.2    Conditions to Effective Date.**

The Effective Date of the Plan shall not occur unless each of the following conditions has occurred:

(a)    The Confirmation Order shall have been entered by the Bankruptcy Court in a form and substance reasonably satisfactory to the Debtors, and, if applicable, the Asset Acquirer, and the same shall have become a Final Order; and

(b)    All actions, documents and agreements necessary to implement the Plan, including the Liquidation Trust Agreements and the Diversified Liquidation Agreement, shall have been effected or executed.

**10.3    Waiver of Conditions.**

Each of the conditions set forth in sections 10.1 and 10.2 of the Plan may be waived in whole or in part by the Debtors, and, if applicable, the Asset Acquirer.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure or such condition to be satisfied (including any action or inaction by the Debtors).  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right the may be asserted at any time.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

**11.1    Jurisdiction Retained.**

Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and assets and liabilities, the Estates, the Trust Estates, the Plan and the Acquired Assets to the fullest extent permitted by law, including, but not limited to:

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)    Hear and determine any and all Claims, Causes of Action or rights that may be asserted or commenced by the Debtors or an Estate Administrator against Persons, Entities or governmental units;

(c)    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under §§ 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Liquidating Trusts and the Diversified Post-Effective Date Estate shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(d)    Hear and determine the reasonableness and allowability of any principal Claim, attorney fee Claim, interest Claim or the charges asserted by a Secured Creditor against the Debtors, the Estates, the Liquidating Trusts or the Trust Estates;

(e)    Hear and determine all matters related to any General Executory Contract (including unexpired leases), Loan Servicing Agreement to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount or allowance of any Claims arising from the rejection therefrom;

(f)    Hear and determine all matters related to USACM's transfer of the Loan Servicing Agreements, if necessary, pursuant to the Asset Purchase Agreement;

(g)    Effectuate performance of and payments under the provisions of the Plan;

(i)    Hear and determine any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, under, related to, the Chapter 11 Cases;

(j)    Enter such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including a Liquidation Trust Agreement, the Diversified Liquidation Agreement, or the Asset Purchase Agreement;

(k)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(l)    Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(m)    Issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(n)    Enter and implement such Orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(o)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Liquidating Trust

Agreements, the Diversified Liquidation Agreement, the Asset Purchase Agreement or any other asset purchase agreement entered into by the Debtors and a Third Party Bidder;

(p)     Enforce all Orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(q)     Except as otherwise limited herein, recover all assets of the Debtors and property of the Estates or the Trust Estates, wherever located;

(r)     Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(s)     Hear and determine all questions and disputes regarding title to the assets to be administered pursuant to the Plan, including by a Liquidating Trust or the Diversified Post-Effective Date Estate, and the validity and/or priority of any Liens or secured Claims against those assets.

(t)     Hear and determine all questions and disputes as to whether the payment of any Claim under the Plan should be subordinated to the payment of other Claims;

(u)     Modify the Plan, a Liquidating Trust Agreement or the Diversified Liquidation Agreement at the request of the Debtors or an Estate Representative and as provided by applicable law;

(v)     Approve compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the Plan;

(w)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(x)     Hear and determine any matter relating the administration of a Trust Estate by an Estate Administrator including, without limitation, the determination of all

controversies, suits and disputes that may arise or be brought by any party in interest against the Estate Administrator in connection with his or her acts and activities in the Chapter 11 Cases and his or her administration of an Applicable Liquidation Trust or the Diversified Post-Effective Date Estate; and

(y)    Enter a Final Decree closing the Chapter 11 Cases.

11.2.    <u>Jurisdiction and Venue.</u>  The Debtors and the Asset Acquirer agree, notwithstanding any contrary statement in the Silver Point Term Sheet or any other term sheet of a Third Party Bidder, that the Bankruptcy Court to which the Chapter 11 Cases are assigned has personal jurisdiction over each of them and is the proper venue for any disputes between or among them concerning the Plan, the Acquired Assets, the Estates or any matter relating to the Debtors, their assets, and liabilities of the Estates.

**ARTICLE XII**

**CLAIMS, SETTLEMENTS AND COMPROMISES**

**12.1    Settlements and Compromises.**

As part of the Confirmation of this Plan, the Debtors will seek approval of the following settlements and compromises under Rule 9019 of the Bankruptcy Rules.  Approval of the following settlements and compromises is a condition to Confirmation of the Plan, which condition is waivable solely by the Debtors.

*(a) Diversified Estate*:  The Diversified Estate waives its Claims and Causes of Action for substantive consolidation or recharacterization of the Estates and agrees that the Direct Lenders' beneficial interest in Loans and all principal and interest proceeds thereof, except as may be ordered by the Bankruptcy Court in approving the settlements and compromises contained in this section 12.1, is not property of the Estates and that the beneficial interest of Funds in Loans and all principal and interest proceeds thereof are deemed to be property of their respective Estates, except

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1 as set forth in these settlements and compromises contained in this section 12.1 as approved by the

2 Bankruptcy Court in the Confirmation Order (the "Diversified Release").  In exchange for the

3 waiver of these Claims and Causes of Action, the Diversified Post-Effective Date Estate will

4 receive the following:  the Allowed Offset, the Bisynergy Loan, the First Trust Settlement

5 Payments, and Diversified's share of proceeds as set forth below.

6      *(b)  First Trust Estate:*  The First Trust Estate contributes the First Trust Settlement

7 Payments and the Bisynergy Loan to the Diversified Post-Effective Date Estate.  In exchange for

8 this contribution, the First Trust Estate receives the Diversified Release and the First Trust's share

9 of proceeds as set forth below.

10      *(c)  USACM Estate:*  The USACM Liquidation Trust receives the Diversified Release, the

11 Pre-Paid Interest , net of administrative expense costs and other priority claims in the USACM

12 Estate, the Lender Payments, the USACM Share of Joint Proceeds and the Insider Guarantees, as

13 may be voluntarily contributed by the Direct Lenders in section 5.3.3(c).  In exchange for these

14 contributions, the USACM Estate waives the right to collect servicing fees from Lenders for

15 amounts collected pre-petition with respect to which less than the full amount of the servicing fee

16 was collected from the Lenders and agrees to the shared proceeds as set forth below.

17      *(d)  Direct Lenders:*  If the Direct Lenders voluntarily contribute their Insider Guarantees to

18 the USACM Liquidating Trust, the Direct Lenders shall receive the Direct Lender's share of

19 proceeds as set forth below.

20 **12.2    Determination of Shared Proceeds.**

21      The various Portions of Shared Proceeds shall be determined as follows:

22      (a)    First, the First Trust Liquidating Trust, the USACM Liquidating Trust, and the

23 Diversified Post-Effective Date Estate shall liquidate, monetize, and determine its Net Realizable

24 Assets.  Realizable Assets means all assets of the Trusts or Estates as the same are reduced to Cash.

25 Net Realizable Assets means the Realizable Assets net of all costs of recovery (including the

26 allocated costs of the respective Chapter 11 Cases).  The liquidation and monetization of the assets

of each Estate in order to determine the Realizable Assets shall be left within the discretion of the Estate Administrator and Advisory Committee for each Trust or Estate to realize assets, whether by suit, compromise, release or otherwise by using reasonable efforts and exercising reasonable business judgment, which decisions shall not require Bankruptcy Court approval.  In determining the Realizable Assets for the Diversified Post-Effective Date Estate, the Allowed Offset and the $1 million initial payment included in the First Trust Deed Settlement Payments shall be considered as Realizable Assets.  Conversely, in determining the Realizable Assets for the First Trust Liquidation Trust, the $1 million initial payment included in the First Trust Deed Settlement Payments shall be subtracted from the Realizable Assets to the extent that it was initially included in determining that amount.   As long as proper accounting records are maintained, nothing in the paragraph prevents the distribution of assets to the Holders of Claims and Interests in each Estate on a regular basis, as determined to be appropriate by the Applicable Estate Administrator and Advisory Committee.

(b)     Second, the First Trust Deed Liquidating Trust, the USACM Liquidating Trust, and the Diversified Post-Effective Date Estate shall periodically determine the percentage recovery of the Holders of Unsecured Claims in the USACM Estate, the Holders of Interests in the First Trust Deed Estate, and the Holders of Interests in the Diversified Estate based on the Net Realizable Assets recovered.   Further, Direct Lenders who contribute Insider Guarantees shall also determine the General Aggregate Investment Deficit on each Loan on which each Lender contributed an Insider Guaranty.

(c)     If and when the USACM Holders of Allowed Unsecured Claims reach the present value of the Base Recovery Percentage from the USACM Liquidating Trust, then the proceeds of the USACM Liquidating Trust shall be distributed to the Diversified Post-Effective Date Estate until the Allowed Interests in that Estate reach the present value of the Base Recovery Percentage. Once these groups have reached the present value of the Base Recovery Percentage, the proceeds of the USACM Liquidating Trust shall be distributed to the Direct Lenders who contributed Insider Guarantees on their General Aggregate Investment Deficit until these Lenders have reached the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

present value of the Base Recovery Percentage.  Thereafter, all proceeds shall be distributed pro rata among all Beneficiaries of Allowed Claims and Interests in the Applicable Trusts and to the Allowed Holders of Interests of the Diversified Post-Effective Date Estate.

(d)     If and when the Diversified Holders of Allowed Interests reach the present value of the Base Recovery Percentage from the Diversified Post-Effective Date Estate, then the proceeds of the proceeds of the Diversified Post-Effective Date Estate shall be distributed to the USACM Liquidating Trust until the Allowed Unsecured Claims in that Estate reach the present value of the Base Recovery Percentage.  Once these groups have reached the present value of the Base Recovery Percentage, the proceeds of the Diversified Post-Effective Date Estate shall be distributed pro rata among all Beneficiaries of Allowed Claims and Interests in the Applicable Trusts and to the Allowed Holders of Interests of the Diversified Post-Effective Date Estate.

(e)     As the Base Recovery Percentage is determined on the recovery percentage to be obtained by the Allowed Interests in the First Trust Liquidating Trust, the Holders of Allowed Interest in this Trust shall not share in the proceeds of the USACM Liquidating Trust or the Diversified Post-Effective Date Estate unless and until the Holders of Allowed Unsecured Claims and Interest in those Estates first reach the present value of the Base Recovery Percentage and then only to the extent that this is a valid Allowed Claim against the USACM Estate.  The First Trust Liquidating Fund may pursue the Non-Assignable Securities Litigation, and if pursued and it results in additional Net Realizable Assets to the Holders of Allowed Interest in the First Trust Liquidating Trust, then the additional percentage recovery shall be added to the Base Recovery Percentage prior to the Beneficiaries and this shall become the new Base Recovery Percentage for purposes of the Beneficiaries of this Trust sharing in the proceeds of the USACM Liquidating Trust and the Diversified Post-Effective Date Estate.  Alternatively, if the USACM Liquidating Trust or the Diversified Post-Effective Date Estate agrees to fund the pursuit of the Non-Assignable Securities Litigation, then the litigation will be pursued and the proceeds of that Litigation shall be distributed in accordance with the funding agreement worked out between the Trusts or Estate.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**12.3    Lender Claims.**  For purposes of determining the Lender Claims against the USACM

Estate, all General Aggregate Investment Deficiency Claims are disallowed except for the

Proximately Caused Aggregate Investment Deficiency Claims.  Any disputes over what

constitutes a Proximately Caused Aggregate Investment Deficiency Claim as opposed to a General

Aggregate Investment Deficiency Claim shall be determined through mediation or arbitration as

will be more fully set forth in the USACM Liquidation Trust.  With respect to the Serviced Loans

and the Loans transferred as part of the purchase by the Asset Acquirer, payments made by the

loan servicer post-Effective Date to the Lenders shall continue in accordance with the terms of the

Loan Servicing Agreements and applicable law, subject to the terms of the Confirmation Order or

other Orders of the Bankruptcy Court.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**13.1    Documents and Agreements.**

All parties bound by this Plan shall execute all documents, releases, assignments or other

agreements necessary to implement the Plan or effectuate any transaction described in,

contemplated by, or incidental to performance under the Plan.  If any necessary party refuses or

fails to execute, deliver or join in the execution or delivery of any instrument required to effect a

transfer of property dealt with by the Plan or perform any other act, including the satisfaction of a

Lien, execution of any agreement necessary to consummation of the Plan, or execution of an

assignment pursuant to the Plan, the Bankruptcy Court may order the same, including the

execution of any document, release, assignment or other agreement.

**13.2    Performance on the Effective Date.**

Any act required by the Plan to be done on or after the Effective Date may be done within

a reasonable time (not exceeding twenty (20) days) thereafter without constituting default under

the Plan.  No party shall be entitled to assert default under the Plan until such party has given the

1    Debtors written notice of the alleged default and such default remains uncured for a period of

2    thirty (30) days.

3    **13.3    Substantial Consummation of Plan.**

4    On the Effective Date, the Plan shall be substantially consummated, as that term is used in

5    § 1127(b) of the Bankruptcy Code.

6    **13.4    Modifications and Amendments**.

7    The Debtors may alter, amend, or modify the Plan or any Plan exhibit under § 1127(a) of

8    the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and

9    prior to the substantial consummation of the Plan, as defined in § 1101(2) of the Bankruptcy Code

10   and this Plan, the Debtors may, under § 1127(b) of the Bankruptcy Code, institute proceedings in

11   the Bankruptcy Court to remedy any defect or omissions or reconcile any inconsistencies in the

12   Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary

13   to carry out the purposes and effects of the Plan and such proceedings do not materially adversely

14   affect the treatment of Holders of the Claims and Interests under the Plan; provided, however, that

15   prior notice of such proceedings shall be served in accordance with the Bankruptcy Code,

16   Bankruptcy Rules or Order of the Bankruptcy Court.

17   **13.5    Severability of Plan Provisions.**

18   If, prior to the Confirmation Date, any term or provision of the Plan is held by the

19   Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the

20   Debtors, shall have the power to alter and interpret such term or provision to make it valid or

21   enforceable to the maximum extend practicable, consistent with the original purpose of the term or

22   provision held to be invalid, void or unenforceable, and such term or provision shall then be

23   applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation,

24   the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.6    Headings.**

The headings used in the Plan are solely for the convenience of the reader and do not, in any way, limit, expand or modify the provisions of the Plan to which they refer.

**13.7    Limitation of Liability.**

(a)    Neither the Debtors, the Asset Acquirer nor the Committees, or their agents, attorneys, employees, officers, directors, or Professionals, shall have or incur any liability under the Plan to any Holder of a Claim or Interest or other party in interest by virtue of proposing or supporting the Plan or for any act taken or omitted to be taken in connection with or related to proposing or supporting the Plan or the formulation, preparation, dissemination, solicitation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any act taken or omitted to be taken in connection with the Plan or the Confirmation Order.

(b)    A Confirmation Order shall constitute a release discharge and forgiveness of all Claims, demands, Causes of Action which the Debtors or their Estates own, hold or are entitled to prosecute on behalf of any other party against the Chief Restructuring Officer, his, agents, attorneys, employees, officers, directors, or Professionals.  This release shall cover all Claims or actions, derivative or otherwise, which may be brought in the name of, on behalf of, or in the right of the Debtors or their Estates.

**13.8    No Admission or Waiver.**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Neither the filing of this Plan, nor any statement or provisions contained in this Plan or the Disclosure Statement, nor any action by any party with respect to this Plan shall be construed as an admission against interest or a waiver of any rights except as stated in this Plan, as the same may be finally confirmed. If this Plan is not confirmed, neither this Plan or any statement or provision contained herein or in the Disclosure Statement may be used or relied upon in any suit, action, controversy, or other proceeding.

**13.9    Determination of Tax Assessments.**

By the Plan, the Debtors seek a determination by the Bankruptcy Court, pursuant to § 505 of the Bankruptcy Code, of any and all Tax liabilities or Tax assessments of the Debtors arising on or prior to the Effective Date, whether or not paid.

**13.10    Successors and Assigns.**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**13.11    Binding Effect.**

(a)    Pursuant to § 1141(a) of the Bankruptcy Code and the terms of this Plan, the Plan shall be binding upon and inure to the benefit of the Debtors, the Asset Acquirer, all present and former Holders of Claims against and Interests in the Debtors, whether or not proof of such Claim or Interest has been filed, the Claim or Interest is Allowed or impaired and whether or not the Holder of the Claim or Interest has accepted the Plan, any one or all of the Debtors' respective successors and assigns, including, but no limited to, the Liquidating Trusts and the Estate Administrators, and all other parties-in-interest in these Chapter 11 Cases, including without limitation, any Person receiving or entitled to receive payments or property under the terms of this Plan.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(b)      In accordance with § 1142(b) of the Bankruptcy Code, on and after the Effective Date, the Debtors and each Estate Administrator shall be deemed authorized and empowered to execute or deliver or to join in the execution or delivery of any instrument (including without limitation the Liquidating Trust Agreements) required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

**13.12    Revocation, Withdrawal, Cram-Down or Non-Consummation.**

(a)      The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), rejection or assumption of any executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (y) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (z) constitute an admission of any sort by the Debtors or any other Person.

(b)      The Debtors reserve any and all rights they may have under § 1129(b) of the Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Interests. Additionally, the Debtors reserve their right to seek Confirmation of the Plan in fewer than all of these Chapter 11 Cases.  In other words, if the Bankruptcy Court determines that a cram-down of the Plan pursuant to § 1129(b) of the Bankruptcy Code is legally impermissible in regard to a particular Debtor and its Estate, then the Debtors will withdraw the Plan in regard to that particular

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor, its Estate and its Chapter 11 Case and the Debtors may then proceed to seek Confirmation of the Plan in those Chapter 11 Cases herein in which the cram-down provisions of § 1129(b) of the Bankruptcy Code may validly be exercised.

**13.13    Notices.**

      All notices required or permitted to be given under the Plan shall be in writing and shall be delivered personally, mailed by first class United States mail postage prepaid, sent by facsimile or e-mail, provided that if notice is given by e-mail, it shall only be effective upon confirmation of delivery, as follows:

      (a)    The Debtors:

            Annette W. Jarvis
            Steven C. Strong
            Ray Quinney & Nebeker, P.C.
            36 South State Street, Suite 1400
            P.O. Box 45385
            Salt Lake City, Utah  84145-0385
            Facsimile:  801-532-7543
            Email: ajarvis@rqn.com
            Email: sstrong@rqn.com

      (b)    Asset Acquirer:

            Michael Gatto
            Silver Point Capital
            Two Greenwich Plaza
            1st Floor
            Greenwich, CT  06830
            Facsimile: (203) 542-4100

      (c)    Holders of Allowed Claims or Interests.  Notices shall be sent to the address set forth in the matrix filed in the Chapter 11 Cases or such other addresses as the Holder of the Allowed Claim or Interest shall have listed on a proof of claim or interest, notice of appearance, or notice of change of address filed with the Bankruptcy Court and served on the Debtors.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(d)    <u>Estate Administrators and Advisory Committees.</u>  Notices to the Estate Administrators and Advisory Committees shall be sent to the address(es) listed on the statements that shall be filed in the Bankruptcy Court by each Estate Administrator and Advisory Committee within fifteen days (15) of their appointment.

**13.14  <u>Payments.</u>**

All payments to Holders of Allowed Claims or Interests or Beneficiaries shall be sent to the addresses described in section 13.13 of the Plan.

**13.15  <u>Prepayment.</u>**

Except as otherwise provided in this Plan, any ancillary documents entered into in connection therewith, or the Confirmation Order, the Debtors, the Liquidating Trusts and the Diversified Post-Effective Date Estate shall have the right to prepay, without penalty, all or any portion of an Allowed Claims at any time; provided, however, that any such prepayment shall not violate, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**13.16  <u>Payment of Statutory Fees.</u>**

All fees payable pursuant to § 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid on or before the Effective Date. All fees payable and arising after the Confirmation Hearing pursuant to 28 U.S.C. § 1930 shall be paid as required by applicable law and as further described in the Liquidating Trust Agreements.

**13.17  <u>Continued Existence of the Estate and Role of the Debtors Post-Effective Date.</u>**

The Estates shall continue to exist after the Effective Date, and except to the extent that assets of the Estates are transferred to and administered by a Liquidation Trust under the Plan and the Liquidation Trust Agreements, the Debtors shall implement the terms of the Plan on and after the Effective Date.

**13.18  <u>Dissolution of the Committees.</u>**

On the later of the Effective Date or the date that an Advisory Committee, if any, is appointed, the Committees shall dissolve and their members will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases.  The Professionals retained by the Committees and the members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered or costs incurred after the Effective Date. The Professionals retained by the Committee may, if appropriate, be retained by an Advisory Committee and compensated in accordance with a Liquidating Trust Agreement or the Diversified Liquidation Agreement.

**13.19    Injunctions or Stays.**

**UNLESS OTHERWISE PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER §§ 105 OR 362 OF THE BANKRUPTCY CODE OR OTHERWISE, AND EXISTING ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER), SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.  WHILE THE DEBTORS SHALL NOT RECEIVE A DISCHARGE UNDER § 1141 OF THE BANKRUPTCY CODE, ALL PARTIES (INCLUDING ALL HOLDERS OF CLAIMS OR INTERESTS) BOUND BY THE PLAN PURSUANT TO § 1141(a) OF THE BANKRUPTCY CODE ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM:**

**(a)    COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE ADMINISTRATOR, THE ESTATES, THE ESTATES'**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  ASSETS, A TRUST ESTATE, OR ASSETS OF A TRUST ESTATE WITH

2  RESPECT TO ANY SUCH CLAIM OR INTEREST;

3      (b)      THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR

4  RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD,

5  DECREE, OR ORDER AGAINST THE DEBTORS, THE DIVERSIFIED POST-

6  EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE

7  ADMINISTRATOR, THE ESTATES, THE ESTATES ASSETS, A TRUST

8  ESTATE, OR ASSETS OF A TRUST ESTATE ON ACCOUNT OF ANY SUCH

9  CLAIM OR INTEREST;

10

11      (c)      CREATING, PERFECTING, OR ENFORCING ANY

12  ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE DIVERSIFIED

13  POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE

14  ADMINISTRATOR, THE ESTATES, THE ESTATES' ASSETS, A TRUST

15  ESTATE OR THE ASSETS OF A TRUST ESTATE, OR AGAINST THE

16  PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS, THE

17  DIVERSIFIED POST-EFFECTIVE DATE ESTATE, THE LIQUIDATION

18  TRUSTS, ESTATE ADMINISTRATOR, THE ESTATES, THE TRUST ESTATES

19  ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST;

20

21      (d)      ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR

22  RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE

23  DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A

24  LIQUIDATION TRUST, THE ESTATES, THE ASSETS OF THE ESTATES, AN

25  ESTATE ADMINISTRATOR, A TRUST ESTATE OR THE ASSETS OF A TRUST

26  ESTATE ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; AND

27

28

1    **(e)    TAKING ANY ACTION THAT WOULD INTERFERE WITH THE**

2    **CONSUMMATION OF THE PLAN.**

3    DATED this 15th day of September, 2006.

4

5

6                                              Annette W. Jarvis, Utah Bar No. 1649

7                                              Steven C. Strong, Utah Bar No. 6340
                                               RAY QUINNEY & NEBEKER P.C.
8                                              36 South State Street, Suite 1400
                                               P.O. Box 45385
9                                              Salt Lake City, Utah 84145-0385

10

11                                             and

12

13                                             /s/ Lenard E. Schwartzer_____
                                               Lenard E. Schwartzer, Nevada Bar No. 0399
14                                             Jeanette E. McPherson, Esq., Nevada Bar No. 5423
                                               SCHWARTZER & MCPHERSON LAW FIRM
15                                             2850 South Jones Boulevard, Suite 1
                                               Las Vegas NV  89146
16                                             Attorneys for Debtors and Debtors-in-Possession

17

18

19

20

21

22

23

24

25

26

27    892155v1

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122