Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON September 25, 2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date:  September 28, 2006<br>Time:  9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | **OMNIBUS REPLY TO OBJECTIONS TO THE FIRST INTERIM APPLICATION OF RAY QUINNEY & NEBEKER P.C. FOR INTERIM COMPENSATION AND REIMBURSEMENT PURSUANT TO 11 U.S.C. §§ 330 AND 331 FOR THE PERIOD APRIL 13, 2006 THROUGH JULY 31, 2006** |

Ray Quinney & Nebeker P.C. ("Ray Quinney"), counsel for each of the above-captioned debtors (the "Debtors"), hereby responds to the objections made to the First Application of Ray Quinney & Nebeker P.C. for Interim Compensation and Reimbursement Pursuant to 11 U.S.C. §§ 330 and 331 for the Period April 13, 2006 through July 31, 2006 (the "Ray Quinney Application"). Despite the broad range of services provided by Ray Quinney at rates well below most professionals involved in this case that have unquestionably added a practically unquantifiable value to each of the bankruptcy estates, a few parties have now objected to the Ray Quinney Application. Ray Quinney is entitled to the fees and expenses incurred during the Application Period and responds to the various objections as follows:

## I. OFFICIAL UNSECURED CREDITORS' COMMITTEE'S OBJECTION TO DEBTORS' PROFESSIONALS' FEE APPLICATIONS

On September 15, 2006, the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company (the "Unsecured Committee") objected to each of the Debtors' professionals' fee applications (the "Committee's Objection"). The Committee's Objection centers primarily on the allocation of the Debtors' professionals' fees among the five debtors while also raising discrete issues as to lumping and Debtors' prosecution of the motion to disqualify Fertitta.

### A. Ray Quinney has Properly Allocated its Fees Among the Debtors Based upon the Loan Servicing Agreements

The Unsecured Committee has challenged the allocation of the Debtors' professionals' fees and expenses, including Ray Quinney's, among the Debtors. The Unsecured Committee argues that fees and expenses should be shifted from USA Commercial Mortgage Company ("USACM") to USA Capital Diversified Trust Deed Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("First Trust Deed"). However, Ray Quinney's fees and expenses have been properly allocated and should be allowed as reasonable compensation for the actual and necessary services rendered and as reimbursement for the actual, necessary expenses incurred during the Application Period.[1]

---

[1] Even if reallocation is deemed appropriate, it would not affect the allowance of fees, only the source of payment.

2

Ray Quinney allocated its fees in coordination with Mesirow Financial Interim Management, LLC ("Mesirow") which had been retained as crisis managers for each of the Debtors. Ray Quinney has used its judgment to allocate its fees and expenses in accordance with USACM's obligations under the Loan Servicing Agreements ("LSA"). Pursuant to the duties and obligations USACM has under the LSAs in this matter, the allocation of the majority of Ray Quinney's fees and expenses to USACM is appropriate.

As of the Petition Date, USACM was the loan servicer for approximately 115 loans having a combined balance of approximately $960 million (the "Serviced Loans"), most of which were secured by various real estate projects or investments. USACM is the loan servicer for approximately 3,600 loan investors (the "Direct Lenders") who own fractional interests in the Serviced Loans. Among the Direct Lenders are First Trust Deed and Diversified. The overwhelming majority of business, and the fees and expenses incurred by Ray Quinney are directly attributable to the ongoing business of USACM and assisting Mesirow, as crisis managers for the Debtors, to carry on and fulfill the contractual obligations imposed by the LSA upon USACM, including but not limited to the contractual obligation to "[p]roceed diligently to collect all payment due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds." Loan Service Agreement, ¶2(c)(1).[2]

USACM, in performing its obligations under the LSAs provided services which benefited First Trust Deed and Diversified as direct lenders. Indeed, the services provided by USACM benefited all Direct Lenders. However, the mere fact that First Trust Deed and Diversified may have benefited from USACM performing its contractual obligations does not made Ray Quinney's fees for services provided to USACM (in connection with USACM's obligations under the LSAs), allocable to First Trust Deed or Diversified. It was USACM that was the loan servicer for the Direct Lenders and it was USACM that was contractually obligated to perform the services. Indeed, the problematic nature of the Unsecured Committee's proposed allocation is the

---

[2] For example, the Motion to Hold Funds and the subsequent Motion to Distribute Funds were filed and prosecuted by Ray Quinney pursuant to fulfilling USACM's obligations under this provision of the LSAs and the costs of procuring these orders was a result of USACM's failure to pay "proper parties" pre-petition which necessitated substantial legal work by Ray Quinney on USACM's behalf.

3

1  willingness of the Unsecured Committee to allocate fees and expenses to First Trust Deed and
2  Diversified, but not to the remaining Direct Lenders.  This disparate treatment is unfounded and
3  highlights the improper basis upon which the Unsecured Committee is trying to reallocate Ray
4  Quinney's requested fees and expenses to First Trust Deed and Diversified.  If reallocation is
5  needed, it is an appropriate issue as a part of a plan, but it is not appropriate in the context of a fee
6  application.

7  Where fees were incurred outside of the LSAs, Ray Quinney allocated its time to the
8  debtor for which those specific services were provided.  For example, when Ray Quinney incurred
9  fees specific to a committee for a debtor, those fees were allocated entirely to that debtor.
10 Similarly, when fees were incurred relative to all of the committees (i.e., a committee call or
11 presentation), those fees were split evenly among the debtors for those committees.  Likewise, the
12 fees incurred relating to the preparation of the Debtors' statements and schedules were split among
13 all the debtors proportionately to the work performed.  Ray Quinney's allocation of its fees and
14 costs primarily to the USACM estate is based upon assisting USACM to fulfill its duties
15 obligations under the LSAs.  Ray Quinney's requested fees are reasonable compensation for
16 actual, necessary services and the requested reimbursement is for actual, necessary expenses, and
17 should be allowed as currently allocated.

18 Furthermore, a material alteration in the Debtors' professionals' fees and expense amounts
19 allocated between the Debtors impacts the Court's prior orders regarding distribution and interim
20 payments to professionals.  To the extent that the Court determines that the Debtors'
21 professionals' fees and expenses should be reallocated, Debtors must be given the right to exercise
22 their business judgment to hold sufficient funds in reserve to maintain operations.  This reserve,
23 will by necessity if the Committee's Objection and proposed allocation is adopted, preclude the
24 payment of distributions to some of the Direct Lenders as well as the payment of any
25 professional's fees at this time.  Practically, this places Debtors' professionals in the untenable
26 position of devoting substantial additional time and resources to this matter without adequate
27 assurance that their reasonable fees will be paid and expenses reimbursed any time in the near
28 future.  Accordingly, as the motion to distribute has been granted and the order authorizing

4

1   distribution has been submitted, Ray Quinney's allocation of its fees and costs during the
2   Application Period is appropriate and Ray Quinney's Application should be granted.

3       B.    <u>Ray Quinney's Fees are Reasonable and Reflect the Actual and Necessary Services
4            Provided by Ray Quinney</u>

5   As the Unsecured Committee correctly stated, "these cases pose difficult challenges for
6   Debtors' professionals … [who] have worked hard to provide five estates with the best results
7   possible." Committee's Objection, p. 6. Because of the multitude of complex issues faces by
8   Debtors and handled by Ray Quinney, the fees requested by Ray Quinney are not inconsequential,
9   but they are reasonable and reflect the actual and necessary services provided by Ray Quinney
10  during the Application Period.

11  This case has proceeded rapidly in the face of substantial opposition. This case has also
12  required Ray Quinney to devote substantial resources and has been, and continues to be, an
13  extremely time-consuming matter that has prevented Ray Quinney from performing legal work for
14  other clients. During the Application Period, Ray Quinney, together with the other professionals
15  for the Debtors, has worked diligently to maximize the potential recovery for creditors of each of
16  the estates and for direct lenders who may or may not be creditors. In the midst of the flurry of
17  work performed at a strenuous pace, Ray Quinney has kept detailed contemporaneous billing
18  records documenting the work performed and the benefit provided to the bankruptcy estates.

19      1.    <u>Ray Quinney has Not "Lumped" Entries</u>

20  The Unsecured Committee complains that Ray Quinney's billing records are "rife with
21  lumping." Committee's Objection, p. 10. However, the Unsecured Committee fails to identify
22  which specific time entries it deems to be objectionable. Bankruptcy Courts disfavor "lumping"
23  because it makes it more difficult for the Court to fulfill its statutory duties in evaluating
24  compensation requests. Ray Quinney's billings are, in contrast, extremely detailed and descriptive
25  in order to fully inform not only the Court, Trustee and the Committees, but also the literally
26  thousands of interested parties in these case. Ray Quinney has not impermissibly lumped entries
27  which would justify any reduction in the requested compensation. Furthermore, to the extent the
28  Trustee identifies the specific entries he deems objectionable, Ray Quinney will break out the

5

1  components of any lumped entry.

2. 2  <u>Fees Incurred Relative to the Motion to Disqualify Fertitta are Compensable</u>

3  The Unsecured Committee also complains that the Debtors' efforts to disqualify Fertitta from the Executory Contracts Committee were a "waste of time" and the fees incurred related thereto should be disallowed. Ray Quinney disagrees. First, for fees to be compensable, it is not necessary "that the services rendered by the debtor's attorney be successful in every circumstance." *In re Xebec*, 147 B.R. 518, 524 (9th Cir. BAP 1992) (citing *In re Sinor*, 87 B.R. 620, 624 (Bankr. E.D. Cal. 1988)). The Debtors asked RQN to bring a motion to remove Fertitta because Fertitta had special agreements with the pre-petition Debtors which precluded Fertitta from being representative of the hundreds of direct lenders whose principal repayments were diverted pre-petition. Although the motion itself was ultimately denied, changes to the official committees were made in order to insure that there was adequate representation of the constituency which prompted the Debtors to bring the motion. Because these services benefited the estates, "the services merit compensation." *In re Xebec*, 147 B.R. at 524. Since the Court's ruling, Debtors, with Ray Quinney's assistance, have worker cooperatively with Fertitta on various issues, including the Rio Rancho funding.

Accordingly, the Committee's Objection should be overruled and Ray Quinney's fees allowed in the amount requested. Ray Quinney's fees are reasonable and the billing statements attached to the Ray Quinney Application are detailed contemporaneous records which evidence the actual and necessary services rendered for which Ray Quinney is seeking compensation.

II. **OBJECTION OF JOSEPH MILANOWSKI AND THOMAS HANTGES TO THE APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

On September 19, 2006,[3] Joseph Milanowski ("Milanowski") and Thomas Hantges ("Hantges") filed their late objection to the various interim fee applications filed by the professionals in this case, including the Ray Quinney Application (the "Milanowski Objection"). The Milanowski Objection argues that there has been insufficient time to analyze the applications and there should be a hold back of some amount. Milanowski and Hantges also object to the

---

[3] The deadline for filing objection was September 15, 2006

1  extent fees may be paid from the USACM collection account.  The Milanowski Objection should
2  be overruled.
3      First, notice has been proper and sufficient.  The Federal Rules of Bankruptcy Procedures
4  require twenty-day notice of "a hearing on any entity's request for compensation or
5  reimbursement of expenses if the request exceeds $1,000." Fed. R. Bankr. P. 2002(a)(6).  The
6  Notice of Hearing, which identified each applicant, including Ray Quinney, and the amount
7  requested in accordance with Rule 2002(c)(2), was served on September 1, 2006, more than 20
8  days in advance of the September 28, 2006 hearing (*See* Certificate of Service, Dkt. No. 1250).
9  Service was also proper under the Second Amended Order Establishing Case Management
10 Procedures which required the Ray Quinney Application to be filed and served 25 days prior to
11 the hearing.  Accordingly, sufficient notice of the applications, including the Ray Quinney
12 Application was provided.
13     Second, Ray Quinney understands that its fees, as well as the other allowed professionals'
14 fees will be paid as priority administrative expenses under 11 U.S.C. §§ 503(b)(2) and 507(a)(1)
15 from the respective estate to which they are ultimately allocated and allowed by the Court.  Ray
16 Quinney does not suggest that without further court order, any of the direct lenders' funds in the
17 Collection Account will be used to pay its or any other professionals' fees.  Indeed, the Debtors
18 are limited by the Cash Management Order which limited the funds available to pay professionals'
19 fees, to loan servicing fees and other fees allowed under the LSAs, which makes this objection
20 irrelevant.

21 **III.    RESPONSE OF THE RICHARD AND SHEILA McKNIGHT 2000 FAMILY
            TRUST AND RICHARD McKNIGHT SEP-IRA TO FIRST INTERIM FEE AND
22          EXPENSE APPLICATION OF SHEA & CARLYON, LTD. SPEICAL (LOCAL)
            COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY
23          HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC**
24
25     On September 15, 2006, Richard and Sheila J. McKnight 2000 Family Trust and Richard
26 McKnight ("McKnight") filed an objection to the fees of Shea & Carlyon "and all other fee
27 applications which may be made" (the "McKnight Objection").  The McKnight Objection has no
28 objection to any fee application so long as the fees and expense reimbursement requested "are not

paid from any monies belonging to McKnight." As mentioned above, Ray Quinney understands that its fees, as well as the other allowed professional fees will be paid as priority administrative expenses under 11 U.S.C. §§ 503(b)(2) and 507(a)(1). These fees and expenses will not be paid from any "monies belonging to [McKnight]" absent further order of the Court other notice and hearing.

### IV. OMNIBUS RESPONSE OF JV DIRECT LENDERS TO FIRST INTERIM FEE AND EXPENSE ALLOCATIONS

On September 18, 2006,[4] the JV Direct Lenders filed their late response to the professionals' first interim fee applications, including the Ray Quinney Application, stating that, similar to the McKnight Objection, the JV Direct Lenders had no objection to the applications so long as the fees and expense reimbursements requested were not paid from monies belonging to the JV Direct Lenders. As mentioned above, Ray Quinney understands that its fees, as well as the allowed fees of other professionals will be paid as priority administrative expenses under 11 U.S.C. §§503(b)(2) and 507(a)(1) as allocated and allowed by the Court. These fees and expenses will not be paid from any "monies belonging to the JV Direct Lenders" absent further order of the Court after notice and hearing.

### V. RESPONSE TO INFORMAL OBJECTION OF THE UNITED STATES TRUSTEE

On September 15, 2006, Ray Quinney received the United States Trustee's Notice of Objection to the Initial Monthly Statement of Ray Quinney & Nebeker (the "Trustee's Objection"). The Trustee's Objection was not filed with the Court, but was served directly on Ray Quinney as a notice of objection to monthly fee statements under the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, entered on August 29, 2006 (the "Procedures Order"). The Procedures Order allows such informal objections to be heard at "the interim fee application hearing for the period at issue, at which time the Court will consider and resolve the objection." Procedures Order ¶1(b). Although the United States Trustee did not file the Trustee's Objection, and therefore arguably the Trustee may not have intended to pursue the objection at the hearing on the Ray Quinney

---

[4] The deadline for filing objections was September 15, 2006.

8

1 Application, Ray Quinney respectfully requests that the Court resolve the Trustee's Objection at

2 the hearing. For the convenience of the Court, the Trustee's Objection is attached hereto as

3 **Exhibit 1**. The Trustee also informally objected to the fee applications of Alvarez & Marisal,

4 Beckley Singleton, David Huston, Lewis and Roca, Mesirow Financial Interim Management,

5 Schwartzer & McPherson, Treister & Glatt, and Shea & Carylon. None of these objections were

6 filed with the Court. For the convenience of the Court, Ray Quinney has attached these objections

7 (collectively) as **Exhibit 2**, and when compared with the Trustee's Objection to Ray Quinney's

8 Application, the unequal treatment Ray Quinney's Application received is evident.

9     Ray Quinney responds to the Trustee's Objection as follows:

10     A.    <u>The Expenses Incurred by Ray Quinney During the Application Period are Actual and Necessary</u>

12     The United States Trustee objects to $51,295.91 (79%) of Ray Quinney's requested

13 reimbursement of $64,950.57 in expenses. The United States Trustee categorizes the objection as

14 to Travel Expenses ($18,906.87), Business Meals ($796.46), Paralegal Services ($3,750.50) and

15 Legal Research ($27,842.08).

16     1.    <u>Travel Expenses</u>

17     Ray Quinney has provided the Trustee with copies of the expense reimbursement forms

18 together with receipts, statements, and invoices documenting each requested reimbursement. This

19 documentation includes copies of the invoices from Ray Quinney's travel agent identifying each

20 attorney, the date traveled and expenses incurred (the billing statement only showed an American

21 Express (Ray Quinney's travel agent) charge). The Trustee also identified $2,312.60 in expenses

22 incurred prior to the bankruptcy filing and Ray Quinney's retention as counsel for the Debtors.

23 Ray Quinney has withdrawn its request for reimbursement for those pre-petition expenses at this

24 time. Accordingly, all of Ray Quinney's travel expenses, excluding the $2,312.60 in pre-petition

25 charges, should be reimbursed as actual and necessary expenses.

26     2.    <u>Business Meals</u>

27     The Trustee objected to $796.46 of "Business Meals." After further review of the bills

28 submitted with the Ray Quinney Application, Ray Quinney believes that these costs should have

been properly described as Travel Expenses as the expense was incurred by various attorneys while traveling to perform services on behalf of the Debtors. As reflected on the bills attached to the Ray Quinney Application, costs incurred for business meals unrelated to travel were written off and not charged to the estate. Ray Quinney has supplied the underlying documentation to the Trustee supporting these expenses. Accordingly, these expenses should be reimbursed and actual and necessary expenses.

### 3.     Paralegal Services

The Trustee also objects to $3,750.50 for paralegal services provided by a temporary employee between May 4 and 26, 2006. Cognizant of the administrative burden being placed upon the estates in this case, Ray Quinney has made every effort to push down work to the lowest appropriate level. Because paralegal services were needed, but there was not a paralegal currently employed by Ray Quinney that could devote all of the additional time needed on an immediate basis, Ray Quinney contracted to obtain those services. By so doing, Ray Quinney was able to provide the needed services at a rate beneficial to the estate. This was a reasonable, actual and necessary expense of the estate and should be allowed as a reimbursable expense.

### 4.     Legal Research

The Trustee objected to $27,842.08 in computerized legal research charges. The computerized invoices from Westlaw in the amount of $21,311.08 and Lexis in the amount of $6,531.00 have been provided to the Trustee. Ray Quinney does not mark-up any computerized legal research expense. Westlaw and Lexis charge Ray Quinney their customary rates and those charges are passed on to the client. Indeed, the cost itemization attached to Ray Quinney's Application specifically identifies the Westlaw and Lexis charges, date incurred, and the attorney performing the research. Ray Quinney understands that computerized legal research is expensive. However, it is a cost-effective and efficient use of time by reducing the amount of billable time spent researching by attorneys, thus resulting in a net benefit to the client. Accordingly, the computerized legal research charges incurred by Ray Quinney during the Application Period are actual and necessary expenses and should be allowed.

10

B.  The Fees Incurred by Ray Quinney are Reasonable and Should be Allowed

The Trustee also objects to $273,456.00 (29%) of Ray Quinney's requested compensation of $937,187.54 provided during the Application Period. The Trustee's Objection is categorized as Clerical Issues ($3,292), Lumping ($50,256), Research ($15,856), and Internal Conferencing ($204,052).

1.  Clerical Issues

The Trustee also objects to 13.1 hours ($3,292) spent on various tasks that "should have been delegated to a paralegal or billed at paralegal rates." The Trustee has not identified the specific entries to which he is objecting.[5] However, it appears that the Trustee has arbitrarily identified time and then simply multiplied that time by the blended hourly rate ($251.28) instead of the actual rate of the person performing the work. This is improper, and a review of the bills submitted with the Ray Quinney Application clearly show that such tasks were routinely performed by paralegals or associates (who billed at a rate comparable to paralegal rates at other professionals' firms). The Trustee's Objection is misleading, and as shown below illustrates a systemic problem with nearly all of the United States Trustee's objections to the Ray Quinney Application.

2.  Lumping

The Trustee objects to "approximately 200 obvious lumped hours billed ($50,256) by various attorneys." Trustee's Objection, p. 2. However, the Trustee fails to identify a single specific time entry that is objectionable, and consistent with the flawed methodology noted above, simply multiplies the claimed hours (in this case 200) by the blended rate ($251.28) to make the objection. Ray Quinney's attorneys, especially those with primary responsibility for this case (Annette W. Jarvis and Steven C. Strong), are experienced bankruptcy attorneys who are very familiar with the United States Trustee's fee guidelines and the importance of contemporary, detailed and descriptive time entries that describe in detail the work performed for the benefit of the estate for which compensation is sought and the specific time spent on each task. Ray Quinney believes that its time entries are as detailed and specific as any of the other professionals

11

1  in these cases, yet Ray Quinney's fees have been singled out by the Trustee for seemingly
2  disparate treatment. The Trustee's complaint that Ray Quinney's billing statements contain
3  lumped entries sufficient to justify any reduction in compensation is simply not supportable.

    3. <u>Research</u>

The Trustee also objected to 63.1 hours ($15,856) for research relating to 11 U.S.C. § 365 because there was no related motion, pleading, or argument evident from the docket. Trustee's Objection, p. 2. Once again the Trustee has not identified any specific objectionable time entry and simply multiplied the objected hours by the blended rate. However, it is clear from the billings attached to the Ray Quinney Application that the majority of hours spent researching 11 U.S.C. § 365 were performed by Angelina Tsu, an associate billing at $195 per hour.[6] Furthermore, worked performed researching Section 365 is of critical importance in this case, where the Loan Servicing Agreements and the rights and obligations under those agreements affect nearly every aspect of this case. It was and remains imperative that the Debtors understand completely the case law under the relevant Bankruptcy Code Sections (including Section 365) relating to the Loan Servicing Agreements and similar contracts of that sort. These fees were beneficial to the estate, were billed by an associate at a reasonable rate and were necessary given the multitude of complex issues which touch on the Loan Servicing Agreement on practically a daily basis. As such, these fees are compensable and should be allowed.

    4. <u>Internal Conferencing</u>

The Trustee also objects to 812.05 hours[7] ($204,052) of "internal conferencing." Once again, the Trustee does not identify a single specific objectionable time entry. Rather, the Trustee simply (and improperly) multiplies the claimed hours by the blended rate to create an objectionable fee amount. As the Court is aware, this case has moved forward at an extremely

---

[5] Ray Quinney asked the United States Trustee to provide additional information regarding all of the Trustee's objections to Ray Quinney's Application on Tuesday, September 19, 2006. To date, no additional information has been provided.

[6] Interestingly, although the Trustee notes that three associates at Lewis and Roca, counsel for the Unsecured Committee, billed approximately 180 hours of research time, with a blended associate rate of $258.40, the Trustee only objected to $6,646.50 for "vague time entry, lumping of research time, drafting time, and office conference time." United States Trustee's Objection to the Initial Monthly Statement of [Lewis and Roca], p. 2.

[7] Ray Quinney has requested that the United States Trustee identify the specific entries the Trustee finds objectionable. To date no such information has been provided and Ray Quinney remains unsure how the Trustee even calculated the number of hours the Trustee found objectionable and disputes that the number of hours is even accurate.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  rapid pace with Debtors' counsel being confronted with a myriad of complex legal issues.  In
2  order to adequately address and confront each of these issues, while cognizant of the
3  administrative burden all of the professional fees are placing on the estates, and consciously
4  delegating work to the lowest appropriate level, Ray Quinney has necessarily required a
5  significant amount of internal conferencing among Ray Quinney's professionals.  The touchstone
6  of whether fees are compensable is whether the services performed for which the fees were
7  incurred benefited the estate.  Clearly, the time spent conferencing benefited the estate by making
8  sure that complex issues were being dealt with in a timely manner and work was coordinated to a
9  consistent goal, by insuring that the case would move forward in a coordinated fashion, and that
10 necessary work was performed at the rate appropriate to the task.  In a case of this size and
11 magnitude, internal conferencing should be expected and is appropriate.  Indeed, none of the four
12 committees appointed by the Trustee objected to Ray Quinney's requested fees on the basis
13 asserted by the Trustee.
14       Perhaps what is most troubling about the Trustee's Objection is the apparent callousness
15 with which it has been made.  This has been a complex and difficult case for the Debtors and
16 Debtors' counsel and Ray Quinney has devoted a significant amount of its professionals' time and
17 resources into this case.  Yet the Trustee has objected to nearly 30% of Ray Quinney's fees
18 without making any effort to identify specific objectionable time entries and there has been a
19 deliberate misuse of the blended rate to give the appearance of higher objectionable amounts.
20 Furthermore, the Trustee has not been consistent in his objections and treatment of professionals
21 in this case, especially when it comes to objecting to internal conferences.  For example, a
22 preliminary review indicates that Orrick Herrington & Sutcliffe's billings reflect internal
23 conferencing of 82.6 hours valued at $40,829.50, Gordon & Silver's billings reflect internal
24 conferencing of 41.20 hours valued at $15,994.00, and Stutman Treister & Glatt's billings reflect
25 internal conferencing of 233.7 hours valued at $85,294.00.  The Trustee did not object to any of
26 these "conferencing" fees.  (See Exhibit 2).  Ray Quinney's billing descriptions, when compared
27 with the other professionals in this case, have been more detailed, more descriptive and more
28 revealing.  Ironically, it appears that this greater clarity, designed to aid the Court, the official

committees, and the literally thousands of parties-in-interest, in understanding what work has been performed, the United States Trustee has found objectionable.

## CONCLUSION

Much has been accomplished since the Debtors filed for bankruptcy protection only fives months prior. Ray Quinney has been instrumental in the progress made in this case during the Application Period. The services provided by Ray Quinney have benefited the estates, are reasonable given the work performed and were necessary. Accordingly, the objections to the Ray Quinney Application should be overruled and the Ray Quinney Application approved and the fees allowed in the amount of $937,187.54 and expenses reimbursed in the amount of $62,637.97 for a total of $999,825.51

DATED: September 25, 2006.

    /s/ Annette W. Jarvis
Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

Lenard E. Schwartzer, Nev. Bar No. 0399
Jeanette E. McPherson, Nev. Bar No. 5423
SCHWARTZER & MCPHERSON LAW
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146

Attorneys for Debtors and Debtors-in-Possession

893243