GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, NV 89169
Phone: (702) 792-3773
Fax: (702) 792-9002

E-FILED ON SEPTEMBER 25, 2006

Nancy A. Peterman
GREENBERG TRAURIG, LLP
77 W. Wacker Dr., Suite 2500
Chicago, IL 60601
Phone: (312) 456-8400
Fax: (312) 456-8435
Attorneys for Mesirow Financial Interim Management, LLC,
Crisis Managers for the Debtors, Designated
Chief Restructuring Officer for the Debtors and
the Employment of Certain Temporary Employees

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>              Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>              Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>              Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>              Debtor. | Date: September 28, 2006<br>Time: 9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>              Debtor. | **OMNIBUS RESPONSE OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC TO OBJECTIONS TO ITS INTERIM FEE APPLICATION** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | FILED BY ROY R. VENTURA, THE UNSECURED CREDITORS' COMMITTEE FOR USA COMMERCIAL MORTGAGE COMPANY, THE JV DIRECT LENDERS, MILANOWSKI AND HANTGES, THE RICHARD AND SHEILA J. MCKNIGHT 200 FAMILY TRUST AND RICHARD MCKNIGHT SEP-IRA, HARRY W. JESSUP AND HELEN JESSUP AND THE UNITED STATES TRUSTEE AND<br>IN SUPPORT OF ITS CONTINUED RETENTION |

1

Mesirow's Reply Re Objections To Fees

MFIM Financial Interim Management, LLC ("MFIM"), by and through the undersigned attorneys, hereby files this Omnibus Response (the "Response") to the following objections (the "Objections") to MFIM's first interim fee application filed by Roy R. Ventura ("Ventura"), the Unsecured Creditors' Committee for USA Commercial Mortgage Company (the "Creditors' Committee"), the JV Direct Lenders ("JV Direct"), Milanowski and Hantges (collectively, "Milanowski"), The Richard and Sheila J. McKnight 200 Family Trust and Richard McKnight Sep-Ira (collectively, "McKnight"), Harry W. Jessup and Helen Jessup (collectively, "Jessup") and the United States Trustee and in support of MFIM's continued retention. In support of its Response, MFIM respectfully state as follows:

## BACKGROUND

1.  The Debtors[1] are Nevada corporations with their principal place of business located at 4484 S. Pecos, Las Vegas, Nevada. The Debtors operate in the commercial mortgage business. USA Realty Advisors, LLC ("USARA") is the sole manager of two investment funds, USA Capital First Trust Deed Fund, LLC and USA Diversified Trust Deed Fund, LLC (collectively, the "Funds"). USA Securities, LLC served as a sales agent for the investments. USA Commercial Mortgage Company ("USACM") is the service agent for the Funds. In addition, USACM originates commercial mortgages, underwrites loans and services the various loans for other investors.

2.  On April 13, 2006, the Debtors filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On April 14, 2006, the Debtors filed a Motion for Joint Administration Without Substantive Consolidation of the Chapter 11 cases. On May 9, 2006, the Court granted the Debtors Motion for Joint Administration Without Substantive Consolidation.

3.  On April 14, 2006, the Debtors filed an Application to Employ Thomas J. Allison ("Allison") of MFIM as Chief Restructuring Officer and MFIM as Crisis Managers. On

---

[1] The "Debtors" consist of USA Capital Mortgage Company, USA Capital Realty Advisors, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC and USA Securities, LLC.

April 19, 2006, the Court entered an Interim Order Authorizing the Employment of Allison as Chief Restructuring Officer and MFIM as Crisis Managers. On August 11, 2006, the Court entered an Order authorizing the Employment of Allison as Chief Restructuring Officer and MFIM as Crisis Managers through October 2, 2006. The Court is to consider the continued employment of Allison and MFIM on September 28, 2006.

4. Pursuant to this Court's retention orders, Allison has complete and exclusive charge of the management and operations of the Debtors' daily businesses, oversees the hiring and firing of employees and agents and controls all of the Debtors' financial affairs including the opening and closing of bank accounts and paying all bills and expenses. MFIM was also hired to (a) develop and implement case management strategies; (b) manage the professionals who are advising the Debtors; (c) develop a business plan and other such related forecasts; (d) communicate and negotiate with creditors, stakeholders and their advisors; (e) serve as a representative for the Debtors during communications with the SEC and the Nevada Mortgage Lending Division; (f) provide the Debtors with investigative services, accounting analyses and transaction tracing; (g) supervise the periodic reporting required by the Bankruptcy Court; (h) manage the claim reconciliation process; (i) provide testimony before the Bankruptcy Court on matters within MFIM's area of expertise; and (i) such other necessary or appropriate services as agreed to by MFIM and the Debtors.

5. On August 31, 2006, after diligently working on the Debtors cases for five months and incurring over 8,200 in professional hours, Allison and MFIM filed their First Interim Application for Compensation and Reimbursement of Expenses for the period April 4, 2006 through July 31, 2006 (the "First Interim Fee Application") pursuant to 11 U.S.C. §§ 328, 329, 330, 331 and 503 and Federal Rules of Bankruptcy Procedure 2002 and 2016.

6. In rendering its services to the Debtors, MFIM dedicated significant time and resources, including staffing 24 professionals, many of whom were devoted solely to the Debtors' affairs and filled such critical roles (or will fill such critical roles) as Chief Executive Officer, Chief Financial Officer and Chief Operating Officer. Among the many services provided to the Debtors pursuant to the First Interim Fee Application, Allison and MFIM (a)

analyzed the Debtors' affairs and identified possible restructuring alternatives consistent with the Debtors' goals and the creditors' interests; (b) planned, reviewed and analyzed all of the Debtors' first day motions and aided Debtors' counsel in responding to the objections to Debtors' motions; (c) assisted in the preparation of the Debtors' schedules of assets and liabilities and Debtors' statement of financial affairs; (d) assisted the Debtors in creating a methodology for responding to questions from borrowers and investors; (e) coordinated meetings with parties-of-interest; (f) prepared budgets and work plans; (g) prepared documents for meetings with the United States Trustee; (h) prepared, reviewed and analyzed weekly cash flow forecasts for each of the Debtors; (i) participated in weekly meetings to identify payments made for the week, to analyze cash balances, to analyze forecasting assumptions and methodologies and prepare sensitivity analyses; (j) responded to questions posed by the four committees appointed to this case, including all questions posed by counsel, financial advisors and individual committee members; (k) administered the cash management systems, corporate insurance coverage and employee benefits; (l) prepared for and attended court hearings on behalf of the Debtors; (m) solicited DIP financing proposals; (n) began initial development of a plan of reorganization and disclosure statement; (o) prepared monthly statements and Fee Applications apprising all constituencies in the case of the work performed to date; (p) analyzed and summarized the status of the loans serviced by USACM; (q) performed forensic loan accounting determining that the internal loan servicing system was subject to error and mishandling of data; (r) researched and responded to investor inquiries regarding their accounts; (s) located and identified the Debtors' leases and executory contracts identifying necessary leases and contracts and establishing cure amounts; (t) prepared a liquidation analysis for the Debtors; (u) assisted USACM with the management of loans as Servicing Agent; (v) created monthly operating reports based on the Debtors' performance; (w) strategically managed the Debtor's everyday operations; and (x) performed valuation and appraisal services with respect to the Debtors' assets. In performing these services, MFIM incurred $3,324,284.00 in fees and $213,812.00 in expenses. All of the work is meticulously detailed in the Exhibits to the First Interim Fee Application.

Mesirow's Reply Re Objections To Fees

7. Allison and MFIM effectively stepped in and ran the Debtors' businesses in order to preserve the estates' value for all creditors and investors. Allison and MFIM continue to provide these services and continue to devote over 20 professionals to these cases, incurring significant fees and expenses.

8. Despite the multitude of services performed by Allison and MFIM and the incalculable value added to the Debtors' estates, numerous parties have now objected to the First Interim Fee Application.

9. In essence, all of the Objections object to payment of MFIM's fees and expenses from their estates and some propose that the payment of funds be allocated in various ways to different estates. MFIM allocated 91.6% of its fees and expenses to USACM. The balance of its fees and expenses were allocated among the other estates. MFIM believes that this allocation is appropriate under the circumstances.

10. MFIM is requesting this Court to allow its First Interim Fee Application and its continued employment, without the need for further court order, given the significant resources devoted to these cases by MFIM and this significant financial risk that the parties in interest are requesting MFIM to absorb.

**ARGUMENT**

I. **MFIM'S FEES ARE REASONABLE AND SHOULD BE ALLOWED ON AN INTERIM BASIS.**

11. "As the fact finder, the bankruptcy court must evaluate the sufficiency of the evidence provided by the professional in support of the application for compensation. . . In every case, a court should award fees only to the level proven to be actual, necessary and reasonable." *In re Circle K Corp.,* 294 B.R. 111, 114 (Bankr.D.Ariz. 2003). As a supplement to the First Interim Fee Application, MFIM included a 293 page exhibit with detailed time entries recorded by MFIM on the Debtors' cases. All the work performed was necessary, reasonable and benefited the Debtors' estates. As detailed above, MFIM has devoted significant time, resources and professionals to the Debtors' cases. Other than certain objections raised as to "lumped time entries" and other related matters, which are addressed below, no party in interest has objected to the allowance or reasonableness of the fees

requested.[2] Therefore, MFIM's fees and expenses should be allowed on an interim basis.

## II. MFIM'S ALLOCATION SHOULD STAND.

12. The Objections generally state that MFIM should not be paid or should not be paid from their estates. The Objections essentially requests that this Court deny the allocation proposed by MFIM in its First Interim Fee Application. As noted above, MFIM allocated 91.6% of its fees and expenses to USACM. The balance of its fees and expenses were allocated among the other estates. MFIM believes that this allocation is appropriate under the circumstances and that this allocation should be approved. Simply put, the Objections have offered no credible justification for denying interim compensation to the professionals in these cases. MFIM's fees and expenses should be paid in accordance with the allocation set forth in the First Interim Fee Application to the extent of available funds.

13. The issue of allocation is currently being negotiated by various parties in interest in their ongoing plan negotiations. These discussions are ongoing. To the extent that an allocation is agreed to through these plan negotiations and such allocation is acceptable to MFIM, the Court's allowance of MFIM's fees and the payment of such fees from available funds will in no way prejudice such parties. However, MFIM should not be held hostage to these negotiations and denied payment until such negotiations reach conclusion.

## III. MFIM CONTINUES TO INCUR FEES AND EXPENSES CREATING A SUFFICIENT SAFEGUARD TO PROTECT ALL INTERESTED PARTIES.

14. MFIM continues to incur additional fees and expenses each month. Given the additional fees and expenses being incurred, such unpaid amounts should be more than adequate to address any objections raised as to lumping of time entries or other similar objections.

## IV. MILANOWSKI'S CLAIM THAT IT HAS HAD INSUFFICIENT TIME TO REVIEW THE FIRST INTERIM FEE APPLICATION IS MOOT.

15. Milanowski also claims that it has not had sufficient time to review the First

---

[2] Certain alleged parties in interest have submitted letters to the court alleging that professionals should not be paid before their investments are returned. There is no legal basis provided for such objections. Therefore, the

6

Mesirow's Reply Re Objections To Fees

Interim Fee Application. There is no requirement under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure that parties be given a specific amount of time to review fee applications. MFIM has provided all interested parties with the 20 days' notice of a fee application hearing required under Federal Rule of Bankruptcy Procedure 2002(a)(6). No further notice or time is required and MFIM's requested compensation and expense reimbursement, on an interim basis, should not be further delayed. Milanowski may raise any undiscovered challenges to the requested fees and expenses at a final fee hearing, if appropriate.

### V. MESIROW UTILIZED THE PROPER LEVEL PERSONNEL IN PERFORMING FORENSIC ACCOUNTING SERVICES.

16. The United States Trustee objected on the grounds that, in performing forensic accounting services on the Debtors' loan servicing, MFIM should have used junior accountants. In performing forensic accounting services on the Debtors' businesses, MFIM determined that senior accountants were not only necessary, but vital to providing the Debtors' with the best possible service. As such, MFIM made a determination, in its own business judgment, to utilize higher level personnel. MFIM's informed judgment should not be overruled by opinion.

17. Additionally, the unpaid fees already incurred cover the $45,805.04 reduction proposed by the United States Trustee rendering it a nullity.

### VI. ISSUANCE OF DEFAULT NOTICES.

18. The Creditors' Committee raises an issue relating to the collection of default interest. MFIM objects to the allegations that MFIM somehow impacted the collection of default interest. To MFIM's knowledge, the Debtors, in the past, had not attempted to collect default interest. Upon being employed, MFIM did extensive forensic accounting work, including determining what loans were non-performing, and developed a plan for pursuing collection of the non-performing loans. The Debtors, in their business judgment, pursued and continue to pursue the settlement of certain non-performing loans. In addition, in certain circumstances, the Debtors have exercised their business judgment and issued default notices.

objections should be overruled.

19. MFIM expressly reserves the right to raise additional arguments at the hearing. Furthermore, MFIM expressly reserves the right to seek payment of any such fees under section 506(c) of the Bankruptcy Code or otherwise.

WHEREFORE, MFIM respectfully request entry of an Order (i) awarding interim compensation in the amount of $3,364,398 and expenses in the amount of $213,812; (ii) granting the continued employment of MFIM without the need for further court order; and (iii) any other relief the Court deems just and necessary.

Dated: September 25, 2006

/s/ Nancy A. Peterman
Nancy A. Peterman
GREENBERG TRAURIG, LLP
77 W. Wacker Dr., Suite 2500
Chicago, IL 60601

and

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, NV 89169

Attorneys for Mesirow Financial Interim Management, LLC, Crisis Managers for the Debtors, Designated Chief Restructuring Officer for the Debtors and the Employment of Certain Temporary Employees