GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
BRIGID M. HIGGINS, ESQ.
Nevada Bar No. 5990
E-mail: bmh@gordonsilver.com
GREGORY E. GARMAN, ESQ.
E-mail: geg@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-Filed On 9/26/03

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>      Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>      Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>      Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>      Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>      Debtor.<br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br>**OFFICIAL COMMITTEE OF DIRECT LENDERS' REPLY TO OFFICIAL UNSECURED CREDITORS' COMMITTEE'S OBJECTION TO DEBTOR'S PROFESSIONALS' FEE APPLICATIONS**<br><br>Date: September 28, 2006<br>Time: 9:30 a.m. |

  The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Direct Lenders Committee"), by and through its counsel, the law firm of Gordon & Silver, Ltd. ("G&S"), hereby submits its Reply (the "Reply") to the

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/425182.doc

Objection to Debtor's Professionals' Fee Applications (the "Objection") filed by the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company ("Unsecured Committee"). In the Objection, the Unsecured Committee does not object to the Direct Lenders Committee's professionals fee application, however, the Objection raises issues and requests relief which have serious implications for the Direct Lenders Committee and its constituency.

Throughout the Objection, the Unsecured Committee requests that the Debtors' professionals allocate their fees and costs to applicable loans so those fees and costs can be charged to and collected from Borrowers. In addition, the Unsecured Committee requests the allocation to the loans so that the Debtors are able to either charge those fees and costs to the Direct Lenders under ¶4 of the Loan Servicing Agreements or surcharge the Direct Lenders. See Objection, p. 7, ll. 20-24.

By itself, the Debtors' allocation of its professionals' fees and costs to specific loans (without more) appears innocent enough. However, there is little doubt about how the Unsecured Committee intends to proceed. The Unsecured Committee intends to push off those fees on the Borrower, and if the Borrower does not pay the fees and costs, then the Unsecured Committee will most certainly request that the Direct Lenders pay the fees and costs.

Upon reviewing the Objection, the Unsecured Committee suggests that all of the fees and costs related in any way to a specific loan should be allocated to (and then subsequently paid by the Direct Lenders associated with) that loan. This analysis fails to account for the servicing fee paid by the Direct Lenders under the Loan Servicing Agreement. Simply because a fee or cost can be associated with a certain loan, does not mean that the fee or cost should be charged to the Direct Lender (or in some instances even to the Borrower). USACM entered into the Loan Servicing Agreement with the Direct Lenders and charged the Direct Lender a servicing fee to service the loan, including but not limited to the following services:

(1) verify and hold insurance policies related to the property encumbered by the deed of trust;

(2) keep appropriate accounting records related to each note and sums collected;

(3) until the note is paid, proceed diligently to collect payments due under the note and promptly pay those payment to the proper parties (i.e. the Direct Lenders);

(4) in the event the Borrower fails to make any payment as required by the note, USACM agreed to take steps to collect the payment, including but not limited to, delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for the Direct Lenders in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA;

(5) provide Direct Lenders with regular statements (at least quarterly) regarding loan collections;

(6) execute and deliver payoff demands, as well as instruments related to releases or reconveyances;

(7) consent to modifications of loans that do not materially or adversely affect the security of the Direct Lenders;

(8) engage in settlement discussions and enter into forbearance or other settlement-related agreements;

(9) take title to the property in the name of the Direct Lender upon foreclosure or delivery of a deed-in-lieu.

See Loan Servicing Agreement, ¶2.[1]

The Loan Servicing Agreement provides that as "compensation for the services performed hereunder" the Direct Lenders authorize the retention of (1) a servicing fee which, according to USACM, varies from 1% to 3% per annum of the principal amount of the loan; (2) late charges collected from the Borrower; and (3) default interest collected from the Borrower. See Loan Servicing Agreement, ¶5. USACM acknowledges in the Loan Servicing Agreement that the bulk of its revenue is from the points it charges to the Borrowers. Id.

Paragraph 4 of the Loan Servicing Agreement is the only provision which discusses

---

[1] All of these actions are authorized on the condition that USACM may not permit a modification to any loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges and the difference between default and non-default interest ), change the outstanding principal amount, or extend the maturity date without the Direct Lender's prior consent. See Loan Servicing Agreement, ¶2.

100933-001/425182.doc

reimbursement from the Direct Lender for fees or costs. Generally, ¶4 provides that USACM may institute legal proceedings pursuant to the Loan Servicing Agreement as agent for the Direct Lenders. In its business judgment USACM may retain attorneys on the Direct Lender's behalf. The Direct Lenders agree to either advance or reimburse USACM for out-of-pockets costs incurred, including attorneys' fees, trustee's fees and foreclosure costs. In the event those fees are not paid by the Direct Lender, USACM may advance those fees and USACM shall be repaid from the proceeds of foreclosure or from any other monies collected with respect to such loan. See Loan Servicing Agreement, ¶4.

Other then the agreed-upon loan servicing fee, nothing in the Loan Servicing Agreement authorizes additional surcharge of the Direct Lenders' loan proceeds or requires reimbursement from the Direct Lender for USACM (and now Mesirow and Debtors' professionals) for administrative services such as reviewing loan documents related to the loans, reviewing the accounting on the loans, sending out statements, communicating with direct lenders (or the Direct Lenders Committee) on certain loans, preparing demand letters, or communicating with the state regulators.

Moreover, the Unsecured Committee takes the outrageous position that the Debtors' efforts to obtain DIP financing in the bankruptcy proceedings was done for the principal benefit of the Direct Lenders (as well as the Funds) and therefore, the Direct Lenders should potentially be surcharged for the related fees and costs. See Objection, p. 16, ll. 15-17. One of the stated reasons for the DIP financing by the Debtors in the Motion for Emergency Interim and Permanent Order Authorizing Debtors to Obtain Post Petition Financing, was so that the Debtors could continue "to perform all of the administrative tasks and investigative analysis that need to be completed with respect to the Serviced Loans". Docket No. 588, p. 11, ll. 8-10. These administrative and investigatory tasks related to the "Serviced Loans" were required by USACM under the Loan Servicing Agreements. Moreover, the Direct Lenders Committee objected to the DIP Financing. Docket No. 711. Finally, the Unsecured Committee ignores the obvious purpose for USACM's DIP Financing, to protect USACM's (and the Unsecured Committee's) interest in the loans as a lender and USACM's interest in the exit and/or success fees related to

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/425182.doc

4

the unfinished projects.

The Unsecured Committee complains that the Debtors should have charged collection costs, namely, Mesirow's time spent assessing the value of assets serving as collateral for the loans, to the Borrowers.  <u>See</u> Objection, p. 22, ll. 18-26, p. 23, ll. 1-7.  The Unsecured Committee further argues that because USACM did not charge the time spent assessing the valuation of assets on these loans to the Borrowers, that the Direct Lenders face potential surcharge for these costs.  The Direct Lenders Committee has not disputed USACM's seeking pro rata reimbursement for the Hilco appraisal costs from the loan proceeds to the extent that the Direct Lenders have access to those appraisals (and the Direct Lenders Committee agrees that these costs should be first borne by the Borrowers).  However, the Direct Lenders Committee does not agree that the administrative tasks undertaken by Mesirow in assessing those appraisals or other collateral valuation should be surcharged to the Direct Lenders.  Again, the Unsecured Committee ignores the benefit of such valuation to USACM by its interest in the loans and exit and/or success fees.  Moreover, the Direct Lenders should not bear the post-petition administrative costs resulting form USACM's prepetition failure to properly administer the loan portfolio.

Finally, the Unsecured Committee repeatedly takes the position that if certain fees and costs are not collected from the Borrowers pursuant to the terms of the related notes and other loan documentation by USACM, that somehow those costs should be surcharged to the Direct Lenders.  If USACM is entitled to collect its fees or costs from Borrowers under the related loan documentation, and fails to do so, those costs should not be paid by the Direct Lenders.  Unless expressly provided for in the Loan Servicing Agreement, there is simply no authority to do so.

DATED this 26 day of September, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
BRIGID M. HIGGINS, ESQ.
GREGORY E. GARMAN, ESQ.
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

5

100933-001/425182.doc

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555