Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED on September 27, 2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                                Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                                Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                                Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                                Debtor. | Date:  September 28, 2006<br>Time:  9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>                                                                Debtor. | **DEBTOR'S RESPONSE TO MOTION BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC TO COMPEL THE CONFIDENTIAL DISCLOSURE OF USA CAPITAL FIRST TRUST DEED FUND, LLC'S MEMBER LIST**<br><br>**(AFFECTS USA CAPITAL FIRST TRUST DEED FUND, LLC)** |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA Capital First Trust Deed Fund, LLC | |

USA Capital First Trust Deed Fund ("FTDFund"), by and through its undersigned counsel, hereby responds in opposition to the Motion by the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund LLC to Compel the Confidential Disclosure of USA Capital First Trust Deed Fund LLC's Member List (the "Motion to Compel) (filed September 14, 2006). The Motion to Compel raises issues concerning the confidentiality of nonpublic personal financial information of the investor/members of the FTDFund and the protection of that information. This Response is supported by the arguments set forth below, and other relevant items of record before this Court in the Debtors' Chapter 11 case.

**STATEMENT OF FACTS**

1. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2006. By order entered June 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases.

2. The FTDFund is a Nevada limited liability company.

3. Prior to the Petition Date, USA Commercial Mortgage Company ("USACM") was primarily in the business of originating, brokering, and servicing commercial real estate loans and fractional interests therein.

4. FTDFund has approximately 1300 members ("Members") who were sold membership interests/units in FTDFund through USACM and its broker USA Securities, LLC ("USA Securities").

5. On the Petition Date, FTDFund filed its matrix which included all the names and addresses of the Members shown on the books and records of FTDFund.

6. In addition, the FTDFund has filed schedules which list all the Members of FTDFund by name and address.

7. In the middle of September, the Debtors and the Official Committee of Equity Security Holders of the FTDFund (the "FTDFC") had discussions about formulating procedures for the scheduling and treatment of the Members' interests in the FTDFund while at the same time maintaining the confidentiality and identify of those Members. As a result of those discussions, the Debtors and the FTDFC agreed to a stipulated order that was entered by this Court on

September 15, 2006.

8. Notwithstanding the foregoing, the FTDFC requested access to a schedule of the amount of each Member's respective interest in the FTDFund. The FTDFund expressed reservations about turning over to the FTDFC the information relating to the amount of each Member's interest because: (a) it has received requests from Members of the FTDFund that their information be kept confidential; and (b) the Debtors did not want to be deemed to have violated any privacy laws by turning over such information.

9. As a result, on September 14, 2006, the FTDFC filed the Motion to Compel in which it requested the amount invested/units owned by each member "in order to provide meaningful oversight to the Debtors' treatment and scheduling of these Interests".

## MEMORANDUM

The FTDFund objects to the relief requested in the Motion for the reasons set forth below.

### A. **Members of the Fund Have Requested that the Debtors Keep Their Personal Information Private.**

The main reason the FTDFund does not want to turn over information to the FTDFC as to the amount of each Members interest in the FTDFund is that it has received several requests from Members (as well as from Members of the Diversified Fund and Direct Lenders who hold an interest in the loans being serviced by USACM) that they want their personal information kept confidential. For many of the Members, the amount of their interest in the Funds represents very personal financial information and represents a large chunk of their net worth or life savings. Given the unfortunate but alarming trend of identity theft in the United States, many Members simply do not want their information shared with anyone. Because of the stated desires of many Members of the FTDFund to keep their information confidential, and because the concerns raised by the FTDFund have already been addressed as set forth Point C below, the Debtors believe that it is not necessary to turn over the personal information of the Members to the FTDFund at this time.[1]

---

[1] The FTDFund acknowledges and appreciates the FTDFC's offer that if the information is provided, it will keep it confidential under an existing confidentiality agreement. However, the fact remains that the more people who have

**B.     FTDFund Does Not Want to Be Deemed to Have Violated Any Privacy Laws by Turning Over the Information to the FTDFC**.

The privacy of nonpublic personal financial information held by "financial institutions" is protected by the privacy provisions of the Gramm-Leach-Bliley Financial Modernization Act of 1999, 15 USC §§ 6801-6809 (the "GLB Act"). The GLB Act contains privacy protections relating to a consumer or customer's personal financial information and places restrictions on when a "financial institution"[2] may disclose a consumer/customer's financial information to non-affiliated third parties. Unless otherwise provided in the Act, a financial institution may not, directly or through an affiliate, disclose to a nonaffiliated third party "nonpublic personal information"[3] consumer/customer unless the consumer/customer first received a privacy notice explaining what nonpublic personal information will be disclosed, to whom, and under what circumstances, and then are given a chance to opt out of the disclosure.

Section 6802(e) of the GLB Act does contain exceptions to the foregoing provisions, and among them is an exception to allow compliance with federal and state law. It provides that the GLB Act "shall not prohibit the disclosure of nonpublic personal information -

> (8) to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

The FTDC notes that this exception was found applicable in a non-published opinion under Delaware law by the Delaware Chancery Court in *Arbor Place, L.P. v. Encore Opportunity Fund,*

---

access to confidential information, the more likely it is that a mistake could occur and the information could make it into the public domain.

[2] The term "financial institution" is defined very broadly and "means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12." 15 U.S.C. § 6809(3) (Supp. 2005). In turn, Section 1843(k) defines "financial activity" as including such activities as "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities;" "[i]nsuring, guaranteeing, or indemnifying against loss, harm, damage, illness, disability, or death;" "[p]roviding financial, investment, or economic advisory services, including advising an investment company;" and "[u]nderwriting, dealing in, or making a market in securities." 12 U.S.C. § 1843(k)(4).

1  *LLC,* 2002 WL 205681 (Del. Ch. 2002).  However, FTDFund has not found a bankruptcy case
2  which has so held.
3       The uncertainty of the application of the exception puts FTDFund's management in a
4  difficult position because compliance with the FTDFC's request may be deemed a violation of the
5  GLB Act.  It also appears that the mere filing of a bankruptcy petition does not prevent
6  enforcement of the GLB Act by the government regulators. *F.T.C. v. AmeriDebt, Inc.,* 343
7  F.Supp.2d 451, 457-8 (D.Md. 2004) (the automatic stay does not enjoin an FTC action to enforce
8  the GLB Act).
9       Moreover, while it is accepted that the GLB Act does not prohibit disclosures required by
10 Court order.  *See Chao v. Community Trust Co.,* 2005 WL 1084619 (E.D. Pa. 2005), *Ingersoll v.*
11 *Rolf,* 2005 WL 625096 (Minn. Ct. App. 2005), and *Martino v. Barnett,* 595 S.E.2d 65 (W.Va.
12 2004).  Mere discovery requests are not sufficient grounds for ignoring the requirements of the
13 GLB Act.  *Marks v. Global Mortgage Group, Inc.,* 218 F.R.D. 492 (S.D. W. Va. 2003) (this
14 exception in the GLB Act does allow compliance with discovery requests in civil litigation).

15  **C.   The FTDFC's Concerns as to Why it Needs the Requested Information Have Already Been Addressed, or Will be Addressed to the Extent a Member of the FTDFund Files a Proof of Interest that is Not in Accord with FTDFund's Books and Records.**

18      The reason that the FTDFC has given for wanting the information as to the amount of each
19 Member's interest in the FTDFund is to "provide meaningful oversight to the Debtors' treatment
20 and scheduling of these Interests."  However, the FTDFC's concerns have either already has been
21 addressed or will be addressed to the extent a Member of the FTDFund files a proof of interest
22 that is not in accord with FTDFund's books and records.  In order to address the FTDFC's concern
23 that it not be put in a position of defending against a claim by the Debtors that an interest holder is
24 barred from participation in the case due to a failure to be either on the schedules or through filed
25 proofs of interest, the Debtors, and the FTDFC (and also the Diversified Fund) agreed to a
26 stipulated order, that was entered by this Court on September 15, 2006, which provides that: (a)
27 the lists of Members with interests in the Diversified Fund and the FTDFund (collectively, the
28 "Funds") provided by the Debtors to BMC Group, shall constitute prima facie evidence of the

validity and amount of the equity security interest; (b) each Member would be given notice of the Debtor in which it has an interest, the amount of the interest, and if that interest is alleged to be disputed or contingent; (c) Members of such interests would not need to file a proof of interest, and (d) Members holding such interests would be deemed to have filed a proof of interest in the amount shown on the list provided to BMC Group.  As a result, the requirements of Bankruptcy Rule 1007(c) have been met in this case.

Furthermore, to address the FTDFC's concern that it have the requisite information to file a response to a Member's proof of interest, the Debtors have already indicated to the FTDFC that once a Member files a proof of interest, thereby voluntarily putting the amount of its interest into the public domain, the Debtors are willing at that time to provide to the FTDFC all of the information that is necessary for the FTDFC to file a response to the proof of interest.  Given these concessions by the Debtors, the Debtors see no need at this time to provide to the FTDFC the amount of each Members interest in the FTD Fund.  Rather, the Debtors contend that information should be kept confidential unless and until the Member decides to put its personal information into the public domain by filing a proof of interest.

**D.    The Request for Access to the Personal Member Information Has Been Made by the FTDFC Rather than From a Member of One of the Funds**.

The FTDFC cites paragraph 5.9 of the Second Amended and Restated Operating Agreement ("Operating Agreement") as further support for its request that it be given access to the amount of each Member's interest in the FTDFund.  Paragraph 5.9 provides in pertinent part that with prior notice of at least five (5) business days, "Members and their designated representatives shall have access to all books and records of the Company" and that "[a]n alphabetical list of the names and addresses of all Members, together with the number of Units held by each Member, shall be . . . [made] available upon the written request of any Member or such Member's representative for such stated purpose . . ."  However, the language in this paragraph does not help the FTDFC because it is not a Member of the FTDFund nor is it the personal representative of a specific Member of the First Trust Deed Fund.  In that regard, the Arbor Place case cited by the

FTDFC is inapposite because the limited partnership who made a request for the books and records of two limited liability companies ("LLC's") was actually a common member of those LLC's, unlike the FTDFC in this case. As such, the FTDFC cannot rely on the Operating Agreement to obtain the requested information.

## CONCLUSION

WHEREFORE, the FTDFund respectfully requests that the Court deny the Motion to Compel or require any disclosure of individual investor/member nonpublic personal financial information be kept confidential by the FTDFC, its counsel and financial advisor and not be further disclosed and find that such disclosure of individual investor/members nonpublic personal information will not be a violation of the Gramm-Leach-Bliley Act.

Respectfully submitted this 27th day of September, 2006.

/s/ Lenard E. Schwartzer, Esq.
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

893688.03