Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**E-FILED ON OCTOBER 3, 2006**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date: October 19, 2006<br>Time: 9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **MOTION FOR ORDER APPROVING RETENTION PLAN OF DEBTOR'S REMAINING EMPLOYEES** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

1

USA Commercial Mortgage Company ("USACM"), hereby submits this Motion for Order Approving Retention Plan of Debtor's Remaining Employees (the "Motion"). This Motion is made pursuant to 11 U.S.C. §§ 105 and 363 and is supported by the Declaration of Thomas J. Allison, the Memorandum of Points and Authorities set forth herein, the pleadings on file, and any oral argument at the time of the hearing of this Motion.

**STATEMENT OF FACTS**

1. On April 13, 2006 (the "Petition Date"), USACM and its above-captioned affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. By order entered June 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases.

2. Just prior to the filing of the Debtors' bankruptcy petitions, USACM employed approximately 54 persons, including 32 salaried employees, 17 persons who were contract or commissioned employees, and 5 hourly-wage employees.

3. On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial Management became the President and Chief Restructuring Officer of USACM and the Manager of the four remaining Debtors who are limited liability companies.

4. One of the first acts Mr. Allison performed as President and Chief Restructuring Officer of USACM was to terminate the employment of the brokers and executive management of USACM, totaling 19 people.

5. Since the Petition Date, an additional 22 employees have resigned.

6. Recently, USACM's Chief Operating Officer and its Loan Manager have both given notice of their resignations.

7. Currently, the accounting staff of USACM consists of the Controller, two senior accountants and the payroll/accounts payable clerk. The accounting staff keeps the books and records for all of the Debtors, prepares and pays the payroll and accounts payable, prepares the bank reconciliations, the ledgers and the financial statements (including the Monthly Operating Reports), and other reports required by management and applicable bankruptcy rules and procedures.

2

8. Currently, the loan servicing staff of USACM consists of the Loan Manager (who has resigned effective October 31, 2006), a paralegal, and a clerk. The Loan Manager has been responsible for contacting the borrowers, assisting with the negotiations for payment of the loans, determining the status of each project, and tracking extension agreements. The paralegal maintains the paperwork for transfers of interests, vesting name changes, direct lenders' responses to extension agreements, other changes in terms, and recording of assignments. The clerk has been the main person responsible for responding to investor requests for statements and documents.

9. The IT staff consists of A. Faisal Siddiqui, the Chief Information Officer, and one help desk technician. Other IT assistance is provided through contractors who program and maintain the in-house loan servicing system.

10. The management and administrative support staff consists of the Chief Operating Officer (who has resigned effective October 31, 2006), and three support positions, the receptionist, the file clerk, and the mail clerk.

11. When the two recent resignations become effective on October 31, 2006, the number of persons employed by USACM will be reduced to 11 individuals, ten of whom are clearly not "insiders" (as that term is defined in the Bankruptcy Code) of USACM. Furthermore, prior to the Petition Date, A. Faisal Siddiqui held the job title of Director of IP. After the Petition Date, Mr. Siddiqui was given the title of Chief Information Officer as an inducement to stay with USACM. However, even though the word "officer" appears in the job title of A. Faisel Siddiqui, he has never acted as a corporate officer in the traditional or legal sense because he does not make and never has made management decisions for USACM or any of the other Debtors.

12. While USACM's case is moving forward rapidly, the retention of the current employees of USACM is essential to the survival of USACM's business.

13. The prime requirement to encourage the 11 employees to remain in the employ of the Debtors is some assurance of steady employment through the effective date of the proposed Plan of Reorganization, as they cannot afford to be without a paycheck. Under the current scenario, where the proposed Plan of Reorganization is based on the sale of the servicing business

of USACM, the remaining employees understand that there is little assurance of long-term steady employment in their current positions.

14. USACM's management has prepared a retention plan to encourage the remaining employees to stay until the effective date of the Plan of Reorganization, a copy of which is attached hereto as Exhibit A (the "Retention Plan"). The proposed Retention Plan consists of three major components: a) a bonus; b) severance pay; and c) medical benefits, and is summarized as follows:

a. A bonus will be paid to each employee who remains actively employed by USACM on the "Bonus Days" of November 30, 2006, December 31, 2006, January 31, 2006 and February 28, 2006. The bonus to be paid on each Bonus Day shall consist of 5% of the employee's annual salary (calculated for the hourly employees as 5% of their hourly rate multiplied by 2080, which is a standard work year). If the effective date of the Plan of Reorganization is prior to February 28, 2006, any unpaid bonus amounts shall be paid to those employees employed by USACM on the effective date.

b. Severance pay shall be accrued at 2% of annual pay for each pay period beginning October 1, 2006, until an employee has accrued a maximum of 25% of annual salary (or in the case of hourly employees, 25% of their hourly rate multiplied by 2080). Severance pay shall be paid to the employee only if and when the employment is terminated by USACM. Employees shall receive at least 30 days notice of termination, through which time period the severance pay will continue to accrue.

c. If USACM terminates the employees' medical plan, no COBRA medical benefit will be available for former employees as they search for new jobs. Accordingly, the current medical plan will be continued until it is determined by management that it is no longer needed for USACM's employees. At that time, arrangements will be made with the medical plan provider to pre-pay the medical plan for a minimum of 6 months and a maximum of 12 months, so that the

4

Case 06-10725-gwz    Doc 1429    Entered 10/03/06 21:03:41    Page 5 of 11

1  remaining employees will be able to continue their medical coverage by paying the
2  same amount to the medical plan provider that they were previously paying to
3  USACM through withholding from their paychecks. If USACM is unable to obtain
4  such continuing coverage for the benefit of the terminated employees through the
5  medical plan provider, USACM may purchase separate individual insurance
6  policies for these terminated employees. The individual policies would be for at
7  least a six month term and provide substantially the same amount of benefits as the
8  medical plan it is replacing.

9  15.  It is estimated that the cost to USACM's estate if the Retention Plan is approved
10 will be approximately $136,000 for the bonus payments, $170,000 for the severance payment and
11 $37,000 for the medical benefits.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.  Sound Business Justification Exists to Approve the Retention Plan.**

11 U.S.C. § 363(b) of the Bankruptcy Code permits a debtor to use property of the estate "other than in the ordinary course of business" after a notice and a hearing. In addition, 11 U.S.C. § 105(a) provides that a court can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

In determining whether to authorize the use, sale or lease of property of the estate under the foregoing sections, courts generally require the debtor to demonstrate a sound business purpose. See In re Georgetown Steel Company, LLC, 306 B.R. 549, 555 (Bankr. D.S.C. 2004); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" See Montgomery Ward, 242 B.R. at 153, citing Collier on Bankruptcy § 363.02 (15th ed. 1997).

Applying the foregoing standards, courts have often approved various employee incentive plans to enable debtors to retain their key employees during the reorganization process. For instance, in Georgetown Steel, the district court upheld the decision of the bankruptcy court and found that the debtors had established a sound business purpose for their proposed retention,

5

severance, and retirement programs where the programs were needed to stabilize the employee turnover rate, boost employee morale, retain employees who would be essential to the debtors' reorganization, and were reasonable in light of the circumstances surrounding the debtors' bankruptcy.  See In re Georgetown Steel Company, LLC, 306 B.R. at 558.  Likewise, in Montgomery Ward, the bankruptcy court permitted the debtor to implement employee retention programs where the programs had the support of the debtor's principal secured creditors, the creditors committee and the United States Trustee, where the employees to be benefited were highly marketable and performed functions that were essential to the case, and where the amount of payments under the program were fair and reasonable.  See In re Montgomery Ward Holding Corp., 242 B.R. at 155.

Sound business justification exists in this case for the Court to approve the proposed Retention Plan.  First, the 11 employees who will be benefited are needed to run the Debtors business operations.  For instance, the accounting employees keep the books and records for all the Debtors[1], prepare and pay payroll and accounts payable, and prepare bank reconciliation and financial statements.  They also prepare other reports that may be needed by Debtors' management or are required pursuant to applicable bankruptcy law and procedures.  The loan service employees assist in contacting borrowers, negotiating payment of outstanding loans, determining the status of various projects, and responding to various investor requests for information, statements or documents.  The IT employees maintain the in-house computer system (including the loan service system) that is crucial to the operation of the Debtors' business.  Finally, the administrative employees sort and take care of the mail, and assist in keeping the Debtors' loan files and other records in an orderly fashion.  In short, without the foregoing employees, USACM could not function in its business operations, and it is already operating with a skeleton staff.

Second, if the Retention Plan is not approved, many, if not all, of the remaining employees will leave USACM for other work.  If that happens, then USACM will be forced to employ other

---

[1] The vast majority of work performed by the employees is for USACM but because of obligations under the loan servicing agreements, the employees do some work for the benefit of all of the Debtors such as keeping their books

1  individuals or consultants, at higher rates, to do the same work.  As a result, USACM's current
2  management believes that the better and less expensive option is to provide some incentives to
3  encourage the remaining employees to stay until the effective date of the Plan of Reorganization.
4  　　　Third, the Retention Plan is necessary to boost employ morale.  The remaining employees
5  know that there is little assurance of long term steady employment in their current positions.  They
6  should receive some benefit for remaining in this case and assisting USACM while it works
7  through the Plan of Reorganization process.
8  　　　Fourth, the total cost of the benefits being offered is reasonable.  USACM estimates that
9  the total cost to USACM's estate if the Retention Plan is approved will be approximately
10 $136,000 for the bonus payments, $170,000 for the severance payment and $37,000 for the
11 medical benefits.  This will be much less expensive than hiring other employees to do the same
12 work who would undoubtedly demand a higher wage due to the short term nature of the
13 employment, or hiring consultants at several hundred dollars an hour.  Moreover, new employees
14 or consultants will not have the same institutional knowledge of the current employees.
15 　　　Finally, none of the benefits are being offered to the former management team that created
16 the Debtors' business problems.

**B.    The Debtors Do Not Believe the New Requirements Set Forth in 11 U.S.C. § 503(c) Are Applicable Here.**

19 　　　The Debtors also do not believe that the recent changes to 11 U.S.C. § 503(c) apply in this
20 case.  Subsection 503(c) sets forth limitations on the payment or allowance of claims for retention
21 bonuses or severance pay to the debtor's "insiders."[2]  However, ten of the employees who will be
22 employed by the Debtors after October 31, 2006 clearly are not "insiders" because none of them is
23 a director, officer, person in control, a general partner of the Debtors, or a relative of a general
24 partner, director, officer, or person in control of the Debtors.  Prior to the Petition Date, A. Faisal

---

and records, and providing reports required under the Bankruptcy Code or other applicable law.
2 The term "insider" includes for a corporation under the Bankruptcy Code the following:  (a) a director of the debtor; (b)an officer of the debtor; (c) a person in control of the debtor; (d) a partnership in which the debtor is a general partner; (e) a general partner of the debtor; or (f) a relative of a general partner, director, officer, or person in control

7

1  Siddiqui held the job title of Director of IP. After the Petition Date, Mr. Siddiqui was given the
2  title of Chief Information Officer as an inducement to stay with USACM. However, even though
3  the word "officer" appears in the job title of A. Faisel Siddiqui, he has never acted as a corporate
4  officer in the traditional or legal sense because he does not make, and never has made, executive
5  management decisions for USACM or any of the other Debtors. As such, Debtors believe that the
6  requirements of Section 503(c) also do not apply to Mr. Siddiqui.

## CONCLUSION

Based upon the foregoing, USACM requests that the Court grant this Motion and that the proposed Retention Plan regarding USACM's remaining employees be approved.

Dated this _____ day of October, 2006.

        Annette W. Jarvis, Utah Bar No. 1649
        Steven C. Strong, Utah Bar No. 6340
        RAY QUINNEY & NEBEKER P.C.
        36 South State Street, Suite 1400
        P.O. Box 45385
        Salt Lake City, Utah 84145-0385

and

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Attorneys for Debtors and Debtors-in-Possession

28  of the debtor.

# EXHIBIT "A"

# EXHIBIT A
## Proposed Retention Plan

Management proposes the following plan to retain the remaining employees until the effective date of the Plan of Reorganization. This Retention Plan may be continued after the effective date by the Trustees of the various Trusts established under the Plan of Reorganization, as the employees may be needed to assist with claims reconciliation, litigation support and loan collection.

The proposed Retention Plan consists of three major components: a) a bonus; b) severance pay; and c) medical benefits.

    a.    Bonus

To encourage the employees to continue their employment with USACM throughout the bankruptcy process, a bonus will be paid to each employee who remains actively employed by USACM on the "Bonus Days" of November 30, 2006, December 31, 2006, January 31, 2006 and February 28, 2006. The bonus to be paid on each Bonus Day shall consist of 5% of the employee's annual salary (calculated for the hourly employees as 5% of their hourly rate times 2080, which is a standard work year). If the effective date of the Plan of Reorganization occurs prior to February 28, 2006, any unpaid bonus amounts shall be paid to those employees employed by USACM on the effective date.

    b.    Severance Pay

To encourage the employees to stay through the bankruptcy process and until it is determined that their services are not required by the Trusts or, if their services are required by the Trusts, to encourage them to stay to assist with the post confirmation work, severance pay shall be accrued at 2% of annual pay each pay period beginning October 1, 2006, until an employee has accrued a maximum of 25% of annual salary (or in the case of hourly employees 25% of their hourly rate times 2080). Severance pay shall be paid to the employee only if and when the employment is terminated by USACM. Employees shall receive at least 30 days notice of termination, through which time period the severance pay continues to accrue.

    c.    Medical Benefits

Many of the current employees are dependant upon USACM for their medical benefits. If USACM terminates the medical plan, no COBRA medical benefit continuation would be available for former employees as they search for new jobs. The current medical plan will be continued until it is determined by management that there is no further need for employees of USACM. At that time, arrangements will be made with the medical plan provider to pre-pay the medical plan for a minimum of 6 months and a maximum of 12 months, so that the remaining employees will be able to continue their medical coverage by paying the same amount to the medical plan provider that they were previously paying USACM through withholding from their paychecks. If USACM is unable to obtain such

894457

continuing coverage for the benefit of the these terminated employees through , the current medical plan provider, USACM may purchase separate individual policies for these terminated employees. The individual policies would be for at least six months terms and provide substantially the same amount of benefits as the plan it is replacing.

894457