Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                           Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                           Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                           Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                           Debtor. | Date: October 19, 2006<br>Time: 9:30 a.m. |
| In re:<br>USA SECURITIES, LLC,<br>                                                           Debtor. | **DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF MOTION FOR ORDER APPROVING RETENTION PLAN OF DEBTOR'S REMAINING EMPLOYEES** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

1

I, Thomas J. Allison, hereby declare, verify and states as follows:

1. I make this Declaration in support of the Motion for Order Approving Retention Plan of Debtor's Remaining Employees.

2. On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM") and its above-captioned affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. By order entered June 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases.

3. Just prior to the filing of the Debtors' bankruptcy petitions, USACM employed approximately 54 persons, including 32 salaried employees, 17 persons who were contract or commissioned employees, and 5 hourly-wage employees.

4. On the Petition Date, I became the President and Chief Restructuring Officer of USACM and the Manager of the four remaining Debtors who are limited liability companies.

5. One of the first acts I performed as President and Chief Restructuring Officer of USACM was to terminate the employment of the brokers and executive management of USACM, totaling 19 people.

6. Since the Petition Date, an additional 22 employees have resigned.

7. Recently, USACM's Chief Operating Officer and its Loan Manager have both given notice of their resignations.

8. Currently, the accounting staff of USACM consists of the Controller, two senior accountants and the payroll/accounts payable clerk. The accounting staff keeps the books and records for all of the Debtors, prepares and pays the payroll and accounts payable, prepares the bank reconciliations, the ledgers and the financial statements (including the Monthly Operating Reports), and other reports required by management and applicable bankruptcy rules and procedures.

9. Currently, the loan servicing staff of USACM consists of the Loan Manager (who has resigned effective October 31, 2006), a paralegal, and a clerk. The Loan Manager has

been responsible for contacting the borrowers, assisting with the negotiations for payment of the loans, determining the status of each project, and tracking extension agreements. The paralegal maintains the paperwork for transfers of interests, vesting name changes, direct lenders' responses to extension agreements, other changes in terms, and recording of assignments. The clerk has been the main person responsible for responding to investor requests for statements and documents.

10. The IT staff consists of A. Faisal Siddiqui, the Chief Information Officer, and one help desk technician. Other IT assistance is provided through contractors who program and maintain the in-house loan servicing system.

11. The management and administrative support staff consists of the Chief Operating Officer (who has resigned effective October 31, 2006), and three support positions, the receptionist, the file clerk, and the mail clerk.

12. When the two recent resignations become effective on October 31, 2006, the number of persons employed by USACM will be reduced to 11 individuals.

13. Prior to the Petition Date, A. Faisal Siddiqui held the job title of Director of IP. After the Petition Date, I gave Mr. Siddiqui the title of Chief Information Officer as an inducement to stay with USACM. However, even though the word "officer" appears in the job title of A. Faisel Siddiqui (the Chief Information Officer), he has never acted as a corporate officer in the traditional sense because he does not make and never has made management decisions for USACM or any of the other Debtors.

14. While USACM's case is moving forward rapidly, in my business judgment the retention of the current employees of USACM is essential to the survival of USACM's business.

15. In my business judgment, the prime requirement to encourage the 11 employees to remain in the employ of the Debtors is some assurance of steady employment through the effective date of the proposed Plan of Reorganization, as they cannot afford to be without a paycheck. Under the current scenario, where the proposed Plan of Reorganization is based

3

on the sale of the servicing business of USACM, the remaining employees understand that there is little assurance of long-term steady employment in their current positions.

16. At my direction, USACM's management has prepared a retention plan to encourage the remaining employees to stay until the effective date of the Plan of Reorganization, a copy of which is attached as Exhibit A to the Motion (the "Retention Plan"). The proposed Retention Plan consists of three major components: a) a bonus; b) severance pay; and c) medical benefits, and is summarized as follows:

   a. A bonus will be paid to each employee who remains actively employed by USACM on the "Bonus Days" of November 30, 2006, December 31, 2006, January 31, 2006 and February 28, 2006. The bonus to be paid on each Bonus Day shall consist of 5% of the employee's annual salary (calculated for the hourly employees as 5% of their hourly rate multiplied by 2080, which is a standard work year). If the effective date of the Plan of Reorganization is prior to February 28, 2006, any unpaid bonus amounts shall be paid to those employees employed by USACM on the effective date.

   b. Severance pay shall be accrued at 2% of annual pay for each pay period beginning October 1, 2006, until an employee has accrued a maximum of 25% of annual salary (or in the case of hourly employees, 25% of their hourly rate multiplied by 2080). Severance pay shall be paid to the employee only if and when the employment is terminated by USACM. Employees shall receive at least 30 days notice of termination, through which time period the severance pay will continue to accrue.

   c. If USACM terminates the employees' medical plan, no COBRA medical benefit will be available for former employees as they search for new jobs. Accordingly, the current medical plan will be continued until it is determined by management that it is no longer needed for USACM's employees. At that time, arrangements will be made with the medical plan provider to pre-pay

the medical plan for a minimum of 6 months and a maximum of 12 months, so that the remaining employees will be able to continue their medical coverage by paying the same amount to the medical plan provider that they were previously paying to USACM through withholding from their paychecks. If USACM is unable to obtain such continuing coverage for the benefit of the terminated employees through the medical plan provider, USACM may purchase separate individual insurance policies for these terminated employees. The individual policies would be for at least a six month term and provide substantially the same amount of benefits as the medical plan it is replacing.

17. The estimated cost to USACM's estate if the Retention Plan is approved will be approximately $136,000 for the bonus payments, $170,000 for the severance payment and $37,000 for the medical benefits.

18. I believe that sound business justification exists for the Retention Plan for the following reasons. First, the 11 employees who will be benefited are needed to run the Debtors' business operations. Second, if the Retention Plan is not approved, many, if not all, of the remaining employees will leave USACM for other work, and if that happens, USACM will be forced to employ other individuals or consultants, at higher rates, to do the same work. Third, the Retention Plan is necessary to boost employee morale. Fourth, in my business judgment the total cost of the benefits being offered is fair and reasonable. Fifth, none of the benefits are being offered to the former management team that created the Debtors' business problems.

Executed this 3rd day of October, 2006.

_____
Thomas J. Allison

894517

5