Annette W. Jarvis, Utah Bar No. 1649
Douglas M. Monson, Utah Bar No. 2293
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Attorneys for Debtors

E-FILED on October 4, 2006

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                           Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                           Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                           Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                           Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                                                           Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR<br>Chapter 11<br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**DECLARATION OF THOMAS J. ALLISON IN SUPPORT OF MOTION TO AUTHORIZE DEBTOR USA COMMERCIAL MORTGAGE COMPANY AS LOAN SERVICER TO APPROVE LOAN MODIFICATION FOR PALM HARBOR ONE LOAN, TO PROVIDE THE PREVIOUSLY AUTHORIZED SUBORDINATION OF THE MARLTON SQUARE 2ND LOAN  IN CONNECTION WITH THE PAYOFF OF THE MARLTON SQUARE 1ST LOAN, TO AUTHORIZE A SHORT-TERM FORBEARANCE FOR THE MARLTON SQUARE 1ST LOAN, AND TO GENERALLY AUTHORIZE SHORT-TERM LOAN FORBEARANCES AND FULL RELEASES AND RECONVEYANCES FOR LOANS PAID OFF IN FULL [AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC]**<br><br>Date of Hearing:  October 30, 2006<br>Time of Hearing:  9:30 a.m. |

889878                                                        - 1 -

I, Thomas J. Allison, hereby declare, verify and state as follows:

1. I am the President and Chief Restructuring Officer of Debtor USA Commercial Mortgage Company ("USACM" or "Debtor"). I make this Declaration in support of the "Motion To Authorize Debtor USA Commercial Mortgage Company as Loan Servicer to Approve Loan Modification for Palm Harbor One Loan, to Provide the Previously Authorized Subordination of the Marlton Square 2nd Loan in Connection with the Payoff of the Marlton Square 1st Loan, to Authorize a Short-Term Forbearance for the Marlton Square 1st Loan, and to Generally Authorize Short-Term Loan Forbearances and Full Releases and Reconveyances for Loans Paid Off in Full" that is being filed by the Debtor. This Declaration is based upon personal knowledge and the facts set forth herein.

2. The Motion requests that the Court authorize the Debtor to do the following:

A. Authorize the Debtor on behalf of the Direct Lenders for the loan on the Palm Harbor One Project (the "Palm Harbor One Loan") to modify the Palm Harbor One Loan (the "Loan Modification") to reduce the minimum sales prices (and corresponding partial release prices) for the condominium units for the Palm Harbor One Project by 20%. The Loan Modification has been proposed by Borrower Palm Harbor One, LLC, a Florida limited liability company ("Palm Harbor One"), as outlined below. The Palm Harbor One Loan is funding a condominium project in Palm Harbor, Florida (the "Palm Harbor One Project"). The Palm Harbor One Loan is secured by a first priority lien on the Palm Harbor One Project.

B. Authorize the Debtor on behalf of the Direct Lenders for the Marlton Square 2nd Loan (the "Marlton Square 2nd Loan") to execute the necessary documentation to put into effect the previously authorized subordination (the "Subordination") of the Marlton Square 2nd Loan to a new development or construction loan for the Marlton Square Project, which is located in Los Angeles, California. The Subordination will occur at the same time that the Marlton Square 1st Loan is paid in full, which is scheduled to occur on or before November 19, 2006. Borrower MS Acquisition Company, LLC, ("MS Acquisition") has requested that the Debtor confirm that it is authorized to provide the Subordination on behalf of the Direct Lenders for the Marlton Square 2nd Loan. The Marlton Square 2nd Loan is secured by a second priority lien

889878                                      - 2 -

on the Marlton Square Project.

      C.      Authorize the Debtor to forbear from exercising its collection remedies against the Marlton Square 1st Loan, which matured on September 19, 2006, until November 19, 2006, when Borrower MS Acquisition has promised that the Marlton Square 1st Loan will be paid in full through a refinance of the Marlton Square 1st Loan, and to grant a full reconveyance of the trust deed securing the Marlton Square 1st Loan in connection with such refinance.

      D.      Generally authorize the Debtor to agree to short-term forbearances for other Loans being serviced by the Debtor and to provide full releases and reconveyances for Loans that are being paid in full, whether through a sale of the underlying collateral or through the refinancing of the Loan, consistent with the terms of the Loan Servicing Agreements.

3.      The various Direct Lenders for the Palm Harbor One Loan, the Marlton Square 2nd Loan, and the Marlton Square 1st Loan entered into individual Loan Servicing Agreements (collectively the "Servicing Agreements") with Debtor USACM whereby they authorized and empowered the Debtor, on behalf of each Direct Lender, to undertake various servicing functions in connection with these Loans.

4.      Among other powers, the Debtor as Servicer is authorized pursuant to Section 2(e) of the Loan Servicing Agreements to do the following:  "(e)  Without limiting the generality of anything contained herein, [Direct] Lender hereby authorizes and empowers USA [CM], on [Direct] Lender's behalf, to:  (1) execute and deliver demands for payoff and beneficiary's/lender's statements of condition and the like; (2) execute and deliver any and all instruments [of] satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into

889878      - 3 -

forbearance and other settlement-related agreement (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of [Direct] Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof.  Notwithstanding the foregoing or any other provision contained herein, USA[CM] may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without [Direct] Lender's prior consent; provided, however, if [Direct] Lender fails to grant or deny its consent within three (3) business days after notice from USA[CM], [Direct] Lender shall be deemed to have conclusively given its consent."

## Loan Modification for Palm Harbor One Loan

5. The Palm Harbor One Loan was originated on December 15, 2005.  The Palm Harbor One Loan Agreement provides that the principal balance of the Palm Harbor One Loan could be increased up to $29,000,000.  The current principal balance of the Palm Harbor One Loan is $27,626,770.51.

6. The Guarantor of the Palm Harbor One Loan is Joseph Lilly.

7. There are currently 309 Direct Lenders for the Palm Harbor One Loan.  Debtor First Trust Deed Fund is a Direct Lender in the Palm Harbor One Loan in the amount of $1,518,519.74 (5.5% of the Palm Harbor One Loan).  Debtor Diversified Trust Deed Fund is not a Direct Lender in the Palm Harbor One Loan.

8. Under Section 3.6 of the Palm Harbor One Loan Agreement, Palm Harbor One is entitled to a release of an individual condominium unit upon payment by Palm Harbor One of a partial release price of 90% of the net proceeds from the sale of the unit, with the net proceeds to be the greater of the gross sale proceeds or the minimum sale prices for the units set forth in Section 3.6.  Palm Harbor One has requested that Section 3.6 be modified (the "Loan Modification") to reduce by 20% the minimum sale prices for the units (which would then reduce the partial release price for each unit).  The proposed 20% reduction is outlined below:

/ / /

| Square Footage Of Unit | Current Minimum Sale Price | Modified Minimum Sale Price (20% Reduction) |
|---|---|---|
| 630 | $104,400 | $ 83,520 |
| 650 | $108,000 | $ 86,400 |
| 775 | $117,000 | $ 93,600 |
| 860 | $122,400 | $ 97,920 |
| 900 | $135,900 | $108,720 |
| 930 | $134,100 | $107,280 |

9. Palm Harbor One has represented to the Debtor that this Loan Modification will help expedite the sales of the remaining 419 condominium units in the Palm Harbor One Project in order to allow Palm Harbor One to pay off the Palm Harbor One Loan in full by its maturity date. The Palm Harbor One Promissory Note states that the maturity date of the Loan is November 30, 2006, but the Palm Harbor One Loan Agreement states that the Loan matures one year after the recording of the Palm Harbor One Mortgage, which would be a maturity date of December 16, 2006 (the Palm Harbor One Mortgage was recorded on December 16, 2005). To avoid confusion or a dispute over this ambiguity, the Debtor is using the later date (December 16, 2006) as the maturity date for the Palm Harbor One Loan.

10. The Debtor's current Hilco appraisal information indicates that there should still be sufficient equity in the Palm Harbor One Project, even with the 20% reduction in the minimum sale prices under the Loan Modification, for the Palm Harbor One Loan to be paid off in full.

11. It is the Debtor's business judgment that the Loan Modification represents the most feasible means of facilitating the sales of condominium units for the Palm Harbor One Loan in order to allow the Palm Harbor One Loan to be repaid in full by its maturity date.

12. The Debtor is in the process of providing to each of the Palm Harbor One Direct Lenders the three business days consent notices contemplated by Section 2(e) of the Loan Servicing Agreement, which were mailed to the Palm Harbor One Direct Lenders on Friday, September 29, 2006. The Debtor will also require as part of the Loan Modification documentation that Palm Harbor One and the Guarantor acknowledge the continuing validity of their loan and guaranty obligations to the Palm Harbor One Direct Lenders and release any and all claims that they may have against the Debtor and the Palm Harbor One Direct Lenders.

**Subordination for Marlton Square 2nd Loan**

13. The Marlton Square 2nd Loan was originated on August 11, 2005. The Borrower of the Marlton Square 2nd Loan is MS Acquisition. The Guarantors of the Marlton Square 2nd Loan are Christopher Hammond, Marlton Square Associates, LLC, and Capital Vision Equities, LLC. The Marlton Square 2nd Construction Loan Agreement dated August 11, 2005 (the "Marlton Square 2nd Loan Agreement"), provides for a Loan of $6,000,000. The Maturity Date of the Marlton Square 2nd Loan is March 19, 2007 (18 months after the recording of the Marlton Square 2nd Trust Deed of September 19, 2005).

14. The Marlton Square 1st Loan (the "Marlton Square 1st Loan") was also originated on August 11, 2005, with MS Acquisition also as Borrower. The Guarantors of the Marlton Square 1st Loan are Christopher Hammond, Marlton Square Associates, LLC, and Capital Vision Equities, LLC. The Marlton Square 1st Loan is in the principal amount of $30,000,000. The Marlton Square 1st Loan matured on September 19, 2006.

15. The deed of trust securing the Marlton Square 1st Loan was recorded on September 19, 2005, the same day as the Marlton Square 2nd Loan Trust deed, but it was recorded immediately prior to the Marlton Square 2nd Loan Trust Deed (Instrument No. 05-2251101 for the Marlton Square 1st Loan Trust Deed for $30,000,000, and Instrument No. 05-2251102 for the Marlton Square 2nd Loan Trust Deed for $6,000,000), so the Marlton Square 2nd Loan for $6,000,000 is currently in subordinate position to the Marlton Square 1st Loan for $30,000,000.

16. There are 272 Direct Lenders for the Marlton Square 1st Loan. There are 108 Direct Lenders for the Marlton Square 2nd Loan. Debtor USACM is a Direct Lender in the Marlton Square 1st Loan in the amount of $267,500. Debtor First Trust Deed Fund is a Direct Lender in the Marlton Square 1st Loan in the amount of $118,000. Debtor First Trust Deed Fund is not a Direct Lender in the Marlton Square 2nd Loan. Debtor Diversified Trust Deed Fund is not a Direct Lender in either the Marlton Square 1st Loan or the Marlton Square 2nd Loan.

17. Borrower MS Acquisition has informed the Debtor that the Marlton Square 1st Loan will be paid off in full by a refinancing development loan on the Marlton Square Project on or before November 19, 2006. Borrower MS Acquisition has requested that the Debtor confirm

that the Marlton Square 2nd Loan will be subordinated to the refinancing development loan on the Marlton Square Project at the time that the Marlton Square 1st Loan is paid off in full.

18. Section 3.13 of the Marlton Square 2nd Loan Agreement provides that the Marlton Square 2nd Loan Trust Deed may be subordinated to a deed of trust securing a construction or development loan for the Marlton Square Project, provided that the amount of the construction or development loan does not exceed an 80% Loan to Value ratio. Section 3.13 states in part: "[Direct] Lender hereby agrees that the Deed of Trust securing this Loan [the Marlton Square 2nd Loan] may be subordinated to a deed of trust (or deeds of trust) securing a construction or development loan (or loans) on a lot or lots encumbered by the [Marlton Square 2nd Loan] Deed of Trust provided that the amount of the construction or development loan (or loans) does not exceed 80% of the value of the property subject to the construction loan (or loans). . . . [Direct] Lender further agrees that USA[CM] may, pursuant to a limited power of attorney given in connection with this Loan, sign for subordinations consistent with this section."

19. The Marlton Square 2nd Loan Agreement has been signed by all 108 Direct Lenders for the Marlton Square 2nd Loan. These signatures by the Marlton Square 2nd Loan Direct Lenders, agreeing to the provisions of Section 3.13 of the Marlton Square 2nd Loan Agreement, are sufficient in the Debtor's opinion to satisfy the Nevada statute on "Limitations on Use of Power of Attorney" found in NRS Section 645B.330(1)(b), which states in part:

"A mortgage broker or mortgage agent shall not engage in any act or transaction on behalf of a private investor pursuant to a power of attorney unless: . . . .

(b) The provisions of the power of attorney: . . . (2) Expressly prohibit the mortgage broker and his mortgage agents from engaging in any act or transaction that subordinates the priority of a recorded deed of trust **unless, before such an act or transaction, the mortgage broker obtains written approval for the subordination from the private investor**; . . . ." (Emphasis added).

20. In the Debtor's opinion, the Special Powers of Attorney for the Marlton Square 2nd Loan comply with the requirements of NRS Section 645B.330(1)(b), because they specifically state: "This power of attorney shall not be effective to authorize any transaction that subordinates

889878 - 7 -

1   the priority of the recorded deed of trust that secures this loan **unless accompanied by a writing
2   issued by the undersigned that consents to such subordination**."  (Emphasis added).  The
3   Marlton Square 2nd Loan Agreement, and specifically Section 3.13 of the Marlton Square 2nd Loan
4   Agreement, is the necessary other written authorization in the Debtor's opinion issued by the
5   Marlton Square 2nd Loan Direct Lenders that consents to the future subordination of the Marlton
6   Square 2nd Loan.

7       21.   Page 10 of the Marlton Square 2nd Loan Trust Deed also refers to the subordination
8   of the Marlton Square 2nd Loan Trust Deed to a construction or development loan in accordance
9   with Section 3.13 of the Marlton Square 2nd Loan Agreement.

10      22.   The Debtor will verify from information provided to the Debtor by Borrower MS
11  Acquisition or the new refinancing lender that the 80% Loan to Value requirement for
12  subordinating to the new loan under Section 3.13 of the Marlton Square 2nd Loan Agreement will
13  be satisfied for the new refinancing loan.  The Marlton Square 2nd Loan is currently
14  nonperforming, and the accrued and unpaid interest on the Marlton Square 2nd Loan as of
15  September 30, 2006, was $595,084.02.  The Debtor intends to provide the requested subordination
16  (following Court approval) only if the Marlton Square 2nd Loan is performing as of the date of the
17  requested subordination.

18      23.   The Debtor has authority under Section 2(e)(5) of the Loan Servicing Agreements
19  to enter into forbearance and other settlement-related agreements for the Loans that it is servicing,
20  and the Debtor asserts that doing so is an ordinary course of business transaction that does not
21  require Court approval under 11 U.S.C. § 363(c)(1).

22      24.   The Debtor also has authority under Section 2(e)(2) of the Loan Servicing
23  Agreements to execute and deliver full releases and reconveyances with respect to the related real
24  or personal property securing a Loan when such Loan is being paid in full, and the Debtor asserts
25  that doing so is also an ordinary course of business transaction that does not require Court
26  approval under 11 U.S.C. § 363(c)(1).

27      25.   Nevertheless, some of the borrowers for the Loans being serviced by the Debtor
28  have requested specific Court orders stating that the Debtor has authority to provide a full

889878                              - 8 -

1 reconveyance or release of collateral in connection with a payoff in full of the related Loan.

2     26. Pursuant to the Motion, the Debtor is requesting that the Court provide specific authorization for the Debtor to agree to a short-term, two month forbearance on exercising its remedies on the Marlton Square 1st Loan, which just matured, and also specifically authorize the Debtor to provide the requested full reconveyance of the Marlton Square Project from the lien of the Marlton Square 1st Loan Trust Deed upon payment in full of all amounts owed on the Marlton Square 1st Loan.

    27. The terms of the Marlton Square 1st Loan forbearance are that Debtor will not issue any notices of default and will not commence any foreclosure action on the Marlton Square 1st Loan Trust Deed prior to November 19, 2006, notwithstanding the maturity of the Marlton Square 1st Loan on September 19, 2006, but the Debtor will otherwise reserve all rights under the Marlton Square 1st Loan Agreement and other related Loan Documents and the Guarantees for the Marlton Square 1st Loan, including the right to claim default interest on the Marlton Square 1st Loan retroactive to the first event of default on the Marlton Square 1st Loan. The Debtor anticipates that the following amounts will be due on the Marlton Square 1st Loan as of November 15, 2006 (these figures are estimates only, neither this Declaration nor the Motion is an official pay off statement, and the Debtor reserves the right to adjust these numbers either upward or downward at the time of the actual payoff of the Marlton Square 1st Loan, based upon payments received after the date of this Motion, subsequent calculations or recalculations of amounts owing on the Marlton Square 1st Loan, or additional review of the applicable provisions of the Marlton Square 1st Loan Documents): Principal of $30,000,000.00, Interest Outstanding of $2,367,423.06 as of 9-30-06, Late Fees of $85,748.54 as of 9-30-06, Late Fee of $17,344.33 for October 2006, Late Fee of $18,116.77 for November 2006, Interest of $362,335.32 for October 2006, Interest of $177,286.19 for 11-1-06 through 11-15-06, Outstanding Origination Fee of $225,000.00, and Exit Fee of $300,000.00, for a total Estimated Payoff Amount of $33,553,254.20.

    28. Pursuant to the Motion, the Debtor is further requesting that the Court provide general authorization for the Debtor to agree to short-term forbearances on other unpaid Loans being serviced by the Debtor as an ordinary course of business transaction when the Debtor in its

1  business judgment concludes that such forbearance will enhance the prospects of payment of such
2  Loan, and also authorize the Debtor as an ordinary course of business transaction to provide a full
3  reconveyance and release of the related real and personal property collateral for a Loan when that
4  Loan is paid off in full, whether through a sale of the collateral or through a refinancing of the
5  Loan.

6      29.    Because the Marlton Square 2nd Loan Direct Lenders already consented in advance
7  to the subordination of the Marlton Square 2nd Trust Deed, and because the Loan Servicing
8  Agreement states that the Debtor can agree to a short-term forbearance on a Loan without the need
9  for Direct Lender consent, the Debtor is not planning to provide to the Direct Lenders for either
10 the Marlton Square 1st Loan or the Marlton Square 2nd Loan the three business days consent notice
11 contemplated by Section 2(e) of the Loan Servicing Agreement.

12     30.    The Debtor is engaged in the business of originating, underwriting, brokering and
13 servicing commercial loans or fractional interests therein.  As part of that business, the Debtor
14 sometimes receives requests for modifications and forbearances of Loans being serviced by the
15 Debtor, which the Debtor analyzes to determine if the loan modification or forbearance will
16 enhance the prospects of repayment of such Loans without the need for expensive and time
17 consuming collection activities.

18     31.    The Debtor has reviewed the proposed Loan Modification for the Palm Harbor One
19 Loan and concluded that the Loan Modification makes economic sense and will enhance the
20 likelihood of payment in full of the Palm Harbor One Loan.  It is the Debtor's business judgment
21 that the Loan Modification, if consented to by the Palm Harbor One Direct Lenders, should be
22 granted by the Debtor.

23     32.    The Debtor has also reviewed Borrower MS Acquisition's request for confirmation
24 that the previously approved Subordination for the Marlton Square 2nd Loan Trust Deed will be
25 provided in connection with the upcoming refinance and payment in full of the Marlton Square 1st
26 loan, and it is the Debtor's business judgment that the Debtor should honor the existing
27 agreements by the Marlton Square 2nd Loan Direct Lenders to give the requested Subordination, so
28 long as Borrower MS Acquisition and the refinancing lender comply with the terms and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

conditions for granting the Subordination. It is also the Debtor's business judgment that the Debtor should agree to a short-term forbearance until November 19, 2006, on the Marlton Square 1st Loan while awaiting payment in full of such Loan, and that the Debtor should be authorized to grant a full release and reconveyance of the Marlton Square Project from the lien of the Marlton Square 1st Loan Trust Deed in exchange for the payment in full of the Marlton Square 1st Loan in connection with the refinancing of the Marlton Square 1st Loan.

33. It is the Debtor's business judgment that it would be beneficial if the Debtor had general authorization from the Court for the Debtor to agree to short-term forbearances on other unpaid Loans being serviced by the Debtor as an ordinary course of business transaction when the Debtor in its business judgment concludes that such short-term forbearance will enhance the prospects of payment of such Loan, and that the Debtor also be authorized by the Court as an ordinary course of business transaction to provide a full reconveyance and release of the related real and personal property collateral for a Loan serviced by the Debtor when that Loan is paid off in full, including payment of any exit fees for such Loan, whether through a sale of the collateral or through a refinancing of the Loan.

34. Although these transactions arguably are in the ordinary course of Debtor's business that would require no Court approval, with the oversight being requested by the Four Official Committees and the United States Trustee, the Debtor has determined to file the Motion for Court approval.

/ / /

/ / /

/ / /

/ / /

/ / /

889878 - 11 -

35. Because of the immediate need to preserve value for the Palm Harbor One Loan outlined above, the Debtor is also requesting in the Motion that the Court order that the automatic 10 day stay under Bankruptcy Rule 6004(g) not apply to any Order granting the Motion, and that such Order be effective immediately upon entry of such Order.

36. To summarize, pursuant to the Motion, the Debtor is requesting that the Court: (a) authorize the Debtor to enter into the Loan Modification for the Palm Harbor One Loan; (b) authorize the Debtor to enter into the Subordination for the Marlton Square 2nd Loan if the conditions outlined in the Marlton Square 2nd Loan Agreement for providing the Subordination are satisfied; (c) authorize the Debtor to grant the short-term forbearance for the Marlton Square 1st Loan; (d) authorize the Debtor to provide a full reconveyance and release of the Marlton Square 1st Loan upon its payment in full by a refinancing loan; (e) authorize the Debtor generally to grant short-term forbearances on Loans being serviced by the Debtors without the need for further Court approval; (f) authorize the Debtor to provide a full reconveyance and release of the collateral for a Loan serviced by the Debtor when the Loan is repaid in full, whether through a sale of collateral or through a refinance; and (g) authorize the Debtor to execute all documents and take all other necessary steps required to implement any of the foregoing actions.

Executed this 4th day of October, 2006.

_____
Thomas J. Allison

894820.01/dmm

889878

- 13 -