Paul B. Lackey, Esq.
Texas Bar No. 00791061
Michael P. Aigen, Esq.
Texas Bar No. 24012196
Ross Mortillaro, Esq.
Texas Bar No. 24027531
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Avenue, #777
Dallas, Texas 75219
(214) 560-2201

CiCi Cunningham, Esq.
Nevada Bar No.: 4960
James A. Kohl, Esq.
Nevada Bar No.: 5692
RAWLINGS, OLSON, CANNON
GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, NV 89129
(702) 384-4012
Email: bankruptcy@rocgd.com

Attorneys for The Highland Funds

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR<br><br>Date: October 19, 2006<br>Time: 9:30 a.m.<br>Place: Courtroom #1<br><br>**DECLARATION OF DAVIS DEADMAN** |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND,LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |

1

STATE OF TEXAS §
§
COUNTY OF DALLAS §

Before me, the undersigned authority, personally appeared Davis Deadman, who, being by me duly sworn, deposed as follows:

1. My name is Davis Deadman. I am of sound mind, over the age of twenty-one (21), and I am fully competent to execute this Affidavit. I have never been convicted of a felony or a crime involving moral turpitude. The matters stated herein are true and correct and within my personal knowledge.

2. I was the Senior Portfolio Manager at Highland Capital Management, L.P. ("Highland"). Highland is a registered investment advisor specializing in credit and special situation investing. Highland is the investment advisor for Prospect High Income Fund, ML CBO IV Ltd., Pamco Cayman, Ltd., Pam Capital Funding, L.P., Highland Crusader Fund, Ltd., and PCMG Trading Partners XXIII, L.P. (the "Highland Funds").

3. I was the portfolio manager that oversaw and directed the Epic Resorts investment on behalf of the Highland Funds and the Highland Funds' involvement in the bankruptcy of Epic Resorts and all related litigation. As such, I have personal knowledge related to, among other things, Epic Resorts, the Highland Funds' investment in Epic Resorts, the bond offering by Epic Resorts, the bankruptcy of Epic Resorts, litigation related to Epic Resorts, and the Palm Springs property. Additionally, I have extensive experience evaluating and purchasing real estate.

4. On July 8, 1998, Epic Resorts, a holding company that owns and operates multiple subsidiaries, which in turn operate timeshare vacation resorts, issued $130 million aggregate principal amount of Senior Secured Redeemable Notes due in 2005 pursuant to an indenture dated July 8, 1998, as supplemented (the "Indenture"). Over time, the Highland Funds purchased approximately $93.767 million of the Bonds. (A true and correct copy of the Indenture is attached to the Bob L. Olson Declaration as Exhibit 4).

5. The Indenture contained three critical provisions. First, Epic Resorts was prohibited from borrowing additional funds. Specifically, Section 4.9 of the Indenture, Limitation on Indebtedness, states "the Company shall not, and shall not permit any of its Restricted Subsidiaries to, Incur any Indebtedness. . . ." Second, Epic Resorts would not encumber the Properties in favor of anyone else. Specifically, Section 4.12 of the Indenture, Limitation on Liens, states, "[Epic Resorts] will not and will not permit any Restricted Subsidiary to, directly or indirectly, create or permit to exist any Liens on any of its assets except for Permitted Liens." Third, the bondholders would get the benefit of a lien on the Properties.

6. Trust Deed Fund and Epic Resorts entered into a transaction whereby Trust Deed Fund would loan money to Epic Resorts and Trust Deed Fund would be granted a priority lien on the Palm Springs property. The loan closed on or about June 26, 2000.

7. Pursuant to the Bonds and the Indenture, Epic Resorts was required to make semi-annual payments on June 15 and December 15 of each year. On June 15, 2001, Epic Resorts did not make the required interest payment in the amount of $8,450,000. The grace period for this interest payment expired on July 15, 2001. On July 17, 2001, the bond trustee, on behalf of the bondholders, declared that an event of default existed under the Indenture and accelerated the entire amount due and owing under the Indenture and the Bonds. To date, the interest payment and the accelerated amount have not been paid in full.

8. Plaintiffs were hindered in their ability to recover the money they loaned to Epic Resorts because of Trust Deed Fund's lien. In direct interference with the proper execution of the Indenture's provisions, Trust Deed Fund entered into a "deed-in-lieu of foreclosure" with respect to the Palm Springs property. Among other things, Trust Deed Fund obtained an assignment of all leasehold and personal property located at the Palm Springs resort to Trust Deed Fund. Additionally, sixty-three unsold timeshare units remained at the Palm Springs resort. These sixty-three unsold units comprised almost half of the entire inventory of unsold units at all of the resorts owned by Epic Resorts. Trust Deed Fund transferred ownership of the sixty-three unsold timeshare units and all other personal property located in the Palm Springs property to itself.

9. As a result of the contractual provisions entered into by the Highland Funds and Epic Resorts, Plaintiffs had a right to expect and did expect that they would have a lien on the Palm Springs property and that Epic Resorts would not have incurred additional debt or further encumbered the Palm Springs property. However, because of Trust Deed Fund's illegal acts, the Highland Funds were not able to reap the benefits of the contract that they entered into with Epic Resorts.

10. In addition, even if the Highland Funds never perfected a lien, because of the other provisions limiting new indebtedness and liens on Epic Resorts, but for Trust Deed Fund's conduct, the Highland Funds would have received the value of this property in the bankruptcy. As a result of the illegal acts of Trust Deed Fund, the Highland Funds were not able to enforce this lien and, thus, have been damaged by at least $20 million. The Highland Funds are being damaged by not being able to receive that revenue.

This concludes my affidavit testimony.

_____
DAVIS DEADMAN

SUBSCRIBED AND SWORN TO before me, the undersigned notary public, on this ___ day of October, 2006, to certify which witness my hand and seal of office.



SUSIE F. PARKER
Notary Public, State of Texas
My Commission Expires
August 27, 2008

_____
Notary Public in and for the State of Texas

4