# EXHIBIT K

0054
ANTHONY A. ZMAILA, ESQ.
Nevada Bar No. 2319
Brian W. Boschee, Esq.
Nevada Bar No. 7612
RYAN T. SCHULTZ, ESQ.
Nevada Bar No. 8655
SANTORO, DRIGGS, WALCH,
KEARNEY, JOHNSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
Attorneys for Defendant
USA CAPITAL DIVERSIFIED TRUSTE DEED FUND, LLC

FILED

MAR  3  10 43 AM '05

Shirley B. Parraguirre
CLERK

## DISTRICT COURT

## CLARK COUNTY, NEVADA

PROSPECT HIGH INCOME FUND, A
Maryland Corporation; MLCBOIV (CAYMAN)
Ltd., a Cayman Island, LLC; PAMCO
CAYMAN, LTD., A Cayman Island, LLC; PAM
CAPITAL FUNDING, L.P., LTD.; A Cayman
Island, LLC; HIGHLAND CRUSADER FUND,
Ltd., a Bermuda Mutual Fund Company, and
PCMG TRADING PARTNERS XXIII, L.P. a
Delaware Limited Partnership,

Plaintiffs.

vs.

USA CAPITAL DIVERSIFIED TRUSTE DEED
FUND, LLC, a Nevada Limited Liability
Company; and JOHN ROGERS BURK, A
California Law Corporation,

Defendants.

Case No:      A453232
Dept. No:     III

**MOTION FOR SUMMARY JUDGMENT**

MARCH 29
9:00 a.m.

Defendant USA Capital Diversified Trust Deed Fund, LLC ("Trust Deed Fund"), moves for summary judgment on grounds of collateral estoppel. This Motion is made pursuant to Nev. R. Civ. P. 56 because there are no genuine issues of material fact and Trust Deed Fund is entitled to judgment as a matter of law. This Motion is based upon The Bank of New York, as Indenture Trustee v. USA Capital Diversified Trust Deed Fund, LLC, 290 B.R. 514 (Bankr. D. De. 2003), attached as **Exhibit 1** and The Bank of New York, as Indenture Trustee v. USA Capital Diversified Trust Deed Fund, LLC, 307 B.R. 767 (D. De. 2004) attached hereto as **Exhibit 2.**

1    Trust Deed Fund submits the pleadings and papers on file, the points and authorities that form

2    part of this Motion and the exhibits attached to this Motion in support of this Motion.   If

3    permitted Trust Deed Fund would offer oral argument of counsel at the hearing on this Motion.

4        DATED this 3rd day of March, 2005.

5                                    SANTORO, DRIGGS, WALCH,
6                                    KEARNEY, JOHNSON & THOMPSON

7

8                                    Anthony A. Zmaila, Esq.
                                     Nevada Bar No. 2319
9                                    Brian W. Boschee, Esq.
                                     Nevada Bar No. 7612
10                                   Ryan T. Schultz, Esq.
                                     Nevada Bar No. 8655
11                                   400 South Fourth Street, 3rd Floor
                                     Las Vegas, NV 89101
12                                   Attorneys for Defendant
                                     USA CAPITAL DIVERSIFIED
13                                   TRUST DEED FUND, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

1

## NOTICE OF MOTION

TO:    PROSPECT HIGH INCOME FUND; ML CBO IV (CAYMAN) LTD.; PAMCO CAYMAN, LTD.; PAM CAPITAL FUNDING, L.P.; HIGHLAND CRUSADER FUND, LTD.; and PCMG TRADING PARTNERS XXIII, L.P., Plaintiffs;

TO:    James R. Olson, Esq. and James A. Kohl, Esq., of the law firm of Rawlings, Olson, Cannon, Gormley & Desruisseaux, attorneys for Plaintiffs;

TO:    JOHN ROGERS BURK, Defendant; and

TO:    Eric Taylor, Esq. of the law firm of Alverson, Taylor, Mortensen, Nelson & Sanders, attorneys for Defendant John Rogers Burk:

YOU AND EACH OF YOU WILL PLEASE TAKE NOTICE that the undersigned will bring the foregoing MOTION FOR SUMMARY JUDGMENT BASED ON COLLATERAL ESTOPPEL on for hearing before the above-entitled Court on the 29th day of March, at 9:00 A.M. 2005, in Department III, or as soon thereafter as counsel may be heard.

DATED this 3rd day of March, 2005.

                         SANTORO, DRIGGS, WALCH,
                         KEARNEY, JOHNSON & THOMPSON


                         Anthony A. Zmaila, Esq.
                         Nevada Bar No. 2319
                         Brian W. Boschee, Esq.
                         Nevada Bar No. 7612
                         Ryan T. Schultz, Esq.
                         Nevada Bar No. 8655
                         400 South Fourth Street, 3rd Floor
                         Las Vegas, NV 89101
                         Attorneys for Defendant
                         USA CAPITAL DIVERSIFIED
                         TRUST DEED FUND, LLC

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

-3-

# I.
# INTRODUCTION

A.        THE DELAWARE LITIGATION

In July 2001, creditors of Epic Capital Corporation ("Epic Capital") filed an involuntary bankruptcy petition against Epic Capital and certain of Epic Capital's subsidiaries and affiliates in the United States Bankruptcy Court for the District of Delaware, In re Epic Capital Corporation, et al., Debtors, Case No. 01-2458. Asserting a lien on the real property of Epic Resorts Palm Springs Marquis Villas, LLC ("Epic Palm Springs"), Trust Deed Fund requested relief from the "automatic stay," 11 U.S.C. § 362, in order to foreclose on its collateral. The Bank of New York ("BONY"), in its capacity as an indenture trustee, objected to Trust Deed Fund's request for relief. BONY alleged that it possessed an equitable lien on Trust Deed Fund's collateral and that Trust Deed Fund's lien on the real property of Epic Resorts Palm Springs should be subordinated to BONY's alleged equitable lien.

BONY's objection resulted in litigation in the bankruptcy court in Delaware (the "Delaware Litigation"). BONY filed an adversary proceeding against Trust Deed Fund and Epic Palm Springs for equitable subordination pursuant to 11 U.S.C. § 510(c), and other relief. After discovery, motion practice and oral argument, the United States Bankruptcy Court for the District of Delaware held in favor of Trust Deed Fund and Epic Palm Springs. The bankruptcy court held: "Further, we cannot conclude that USA Capital tortiously interfered with the agreement between BONY and Resorts." In re Epic Capital Corp., 290 B.R. 514, 524. (Bankr. D. De. 2003).

BONY appealed to the United States district for the District of Delaware. On appeal the district court affirmed the decision of the bankruptcy court. The district court held:

> In sum, the Court concludes that the Bankruptcy Court's factual findings are supported by the record and are not clearly erroneous. Further, the Court concludes that the Bankruptcy Court correctly concluded as a matter of law that the facts and equities in this case do not warrant application of the doctrine of equitable subordination.

In re Epic Capital Corp., 307 B.R. 767, 772-773 (D. De. 2004).

C:\Documents and Settings\baxter\Local Settings\Temporary Internet Files\OLK380\MSJ AA2 RTS Final.doc

**B.**  THE NEVADA LITIGATION

Prospect High Income Fund, ML CBO IV (Cayman) Ltd., PAMCO Cayman Island, LLC, PAM Capital Funding L.P., Highland Crusader Fund, Ltd., and Trading Partners XXIII, L.P. (the "Nevada Plaintiffs") filed this action, <u>Prospect High Income Fund, et al v. USA Capital Diversified Trust Deed Fund, et al</u> (the "Nevada Litigation"), in July 2002. The Nevada Plaintiffs filed the Nevada Litigation approximately one year after assisting in filing the involuntary petition against Epic Capital, and during the pendency of the Delaware Litigation. The Nevada Plaintiffs are bondholders under the trust indenture for which BONY served as indenture trustee. Complaint, ¶¶ 1 – 7. As bondholders, the Nevada Plaintiffs are in privity with BONY.

The Nevada Plaintiffs alleged the claims for relief against Trust Deed Fund for tortious interference, Complaint, ¶¶ 40 – 45, conspiracy to commit tortious interference, Complaint, ¶¶ 47 – 53, and aiding and abetting, Complaint, ¶¶ 55 - 57. At its core, the Nevada Litigation raises the same issues as were raised in the Delaware Litigation by parties in privity with one another.

Trust Deed Fund brings this Motion based on the doctrine of collateral estoppel (or, issue preclusion) because:

1. BONY, plaintiff in the Delaware Litigation, represented the interests of the Nevada Plaintiffs.

2. Although BONY brought different claims for relief in the Delaware Litigation than the Nevada Plaintiffs bring in the Nevada Litigation, the issues raised in both the Delaware Litigation and the Nevada Litigation are identical.

3. The identical issues raised in the Nevada Litigation have already been decided in Trust Deed Fund's Favor in the Delaware Litigation.

4. The Nevada Plaintiffs are in privity with BONY.

5. The Delaware Litigation ended with a final judgment on the merits.

6. BONY and the Nevada Plaintiffs had a full and fair opportunity to litigate the issues.

## II.
## FACTS[1]

A.          TRUST DEED FUND OBTAINS A LIEN ON THE EPIC LEASEHOLD INTEREST

Epic Resorts, LLC ("Epic Resorts"), a Delaware limited liability company, which operates timeshare resorts, issued $130,000,000 worth of bonds pursuant to a Bond Indenture (the "Indenture"). To secure payment of the bonds, Epic granted liens on certain of its resorts in favor of the Trustee for the Indenture (the "Indenture Trustee"). Id. at 517-518.

Epic Resorts - Palm Springs Marquis Villas, LLC ("Epic Palm Springs"), an Epic Resorts' subsidiary, operates a timeshare resort in Palm Springs, California on real property leased from Native Americans, and administered by the Bureau of Indian Affairs ("BIA") (the "Epic Leasehold Interest"). Id.

Neither Epic nor Epic Palm Springs can grant a lien on the Epic Leasehold Interest without the approval of the BIA. Id. at 521, See 25 U.S.C. §415(a). The Indenture required Epic and Epic Palm Springs to use their reasonable best efforts to obtain consent from the BIA for the imposition of a leasehold mortgage on the Epic Leasehold Interest. Epic petitioned, but never secured, the BIA's consent to lien. The Indenture Trustee never obtained a lien on the Epic Leasehold Interest. Epic, 290 B.R. at 521-520.

Trust Deed Fund, a real estate finance company specializing in first trust deeds, loaned Epic Palm Springs $11,500,000 (the "Trust Deed-Fund Loan"). Epic Palm Springs promised a lien on the Epic Leasehold Interest as security for the Trust Deed Loan. Trust Deed Fund hired an attorney to opine on the loan and security. The attorney opined that the Trust Deed Fund Loan did not violate the terms of the Indenture. Epic Palms Spring's counsel confirmed that the Trust Deed Fund Loan did not violate the terms of the Indenture. Upon application, the BIA approved the lien on the Epic Leasehold Interest. Id. at 518, 522-523.

B.          TRUST DEED FUND PREVAILS IN THE DELAWARE LITIGATION

On July 19, 2001, creditors of Epic filed an involuntary bankruptcy petition against Epic Capital and certain of its subsidiaries in the United States Bankruptcy Court for the District of

---

[1] A full recitation of background facts can be found at Epic, 290 B.R. at 517-520.

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 - FAX (702) 791-1912

1    Delaware.

2        Trust Deed Fund filed a Motion for an Order "(i) Granting Relief from the Automatic

3    Stay, (ii) Directing the Trustee to Provide Trust Deed Fund with Adequate Protection, and (iii)

4    Directing the Debtor to Abandon Trust Deed Fund's Collateral" ("Trust Deed Fund's Motion").

5    The Indenture Trustee objected to Trust Deed Fund's Motion claiming that the Indenture Trustee

6    held an equitable lien or mortgage on the Epic Leasehold Interest and that Trust Deed Fund's

7    lien should be subordinated to BONY's equitable lien or mortgage. BONY also filed an

8    adversary proceeding against USA Capital and Epic Palm Springs to Determine Validity, Extent

9    and Priority of Liens, and for Equitable Subordination Pursuant to 11 U.S.C. § 510(c). Trust

10   Deed Fund filed a Motion for Summary Judgment and BONY responded with its Cross-Motion

11   for Summary Judgment in the Delaware Litigation. Id. at 517.

12       The Indenture Trustee conceded its failure to perfect a security interest in the Epic

13   Leasehold Interest. Finding that the Indenture did not convey a lien on the Epic Leasehold to

14   BONY or its predecessors, the Bankruptcy Court rejected BONY's claim to an equitable lien. Id.

15   at 521-522.

16       In support of its claim for relief for equitable subordination, BONY asserted that Trust

17   Deed Fund engaged in tortious interference with Epic in respect of the Indenture. Carefully

18   analyzing the elements of tortious interference, the bankruptcy court found "no evidence of

19   purposeful action on the part of [Trust Deed Fund] to harm the relationship between Resorts,

20   Capital and [Indenture Trustee]." Id.,. at 525.

21       The Bankruptcy Court granted summary judgment in favor of Trust Deed Fund.  BONY

22   appealed the Bankruptcy Court's decision to the District Court for the District of Delaware. The

23   District Court reviewed the bankruptcy court's findings of fact de novo. Epic, 307 B.R. at 771.

24   On March 23, 2004 District Court of Delaware affirmed the Bankruptcy Court's decision.

25   C.        CLAIMS ALLEGED IN THE DELAWARE LITIGATION

26       In the Delaware Litigation, BONY, on behalf of the bondholders, including the Nevada

27   Plaintiffs, alleged claims for relief (1) to determine the validity, extent and priority of the Trust

28

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

1   Deed Fund's Lien, and (2) for equitable subordination pursuant to 11 U.S.C. § 510(c). In the

2   Nevada Litigation, the Nevada Plaintiffs, privies of BONY, alleges claims for (1) tortious

3   interference, (2) conspiracy to commit tortious interference and (3) aiding and abetting. On their

4   respective faces, the claims for relief in the Delaware Litigation are different from the claims for

5   relief in the Nevada Litigation. However, the issues arising from the different claims for relief

6   are identical.

7   **D.**        ISSUES RAISED AND RESOLVED IN THE DELAWARE LITIGATION.

8        In the Delaware Litigation, the bankruptcy court summarized BONY's claim for

9   equitable subordination in the following passage:

10                 BONY argues that USA Capital satisfies the first prong because it
                   entered into a loan agreement with Epic Palm Springs, despite
11                 notice of the restrictive covenants in the Indenture [Footnote 7
                   omitted.] and the alleged equitable lien. BONY asserts that this
12                 conduct constituted tortious interference with the Indenture. It
                   argues that USA Capital's failure to investigate the underlying
13                 situation and its effort to take priority despite such notice provides
                   sufficient grounds for equitable subordination. [Footnote 8
14                 omitted.]

15   Epic, 290 B.R. at 524. Continuing its opinion on this issue, the bankruptcy court stated:

16                 We conclude that BONY failed to satisfy its burden of
                   demonstrating egregious conduct on the part of USA Capital, a
17                 non-insider. There is no evidence of fraud, illegality, breach of
                   fiduciary duties, undercapitalization, or use of Epic Palm Springs
18                 as a mere instrumentality or alter ego. While USA Capital has
                   admitted that it read the Indenture and the Prospectus prior to
19                 approving a loan to Epic Palm Springs, the Court does not find this
                   sufficient to rise to the level of egregious conduct.
20
     Id.
21

22       The bankruptcy court next analyzed BONY's claims for equitable subordination on the

23   alleged basis of tortious interference. The bankruptcy court wrote:

24                 Further, we cannot conclude that USA Capital tortiously interfered
                   with the agreement between BONY and Resorts. The elements of
25                 tortious interference of a business relationship are as follows: "(1)
                   the existence of a contractual, or prospective contractual relation
26                 between itself and a third party; (2) purposeful action on the part of
                   the defendant, specifically intended to harm the existing
27                 relationship, or to prevent the prospective relation from occurring;
                   (3) the absence of a privilege or justification on the defendant; (4)
28                 the occasioning of actual legal damage as a result of the

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

C:\Documents and Settings\jbaxter\Local Settings\Temporary Internet Files\OLK350\MSJ AAZ RTS Final.doc

1  defendants' conduct;   and (5) for prospective contracts, a
2  reasonable likelihood that the relationship would have occurred but
   for the interference of the defendant." LaBrum & Doak v. Brown
3  (In re LaBrum & Doak, LLP), 225 B.R. 93 (Bankr.E.D.Pa.1998).

   Id. at 524–525.

4

5      For a denoument, the bankruptcy court found no misconduct on the part of Trust Deed
6  Fund with this statement:

7        There is no evidence of purposeful action on the part of USA
         Capital to harm the relationship between Resorts, Capital and
8        BONY. Epic Palm Springs advised USA Capital that no other
         creditor held a lien on the lease. Although USA Capital had
9        knowledge of the restrictive covenants, Epic Palm Springs
         represented and warranted that the entry into the secured loan
10       transaction with USA Capital did "not and will not ... result in a
         breach or constitute a default under, ... or require any consent
11       under, any indenture...." See Loan Agreement at 5.2(e). In
         addition, USA Capital's report did not reveal any other liens on the
12       lease. Prior to consummating the transaction, USA Capital
         confirmed with the BIA that no other lien existed on the property.
13       **USA Capital's actions were not intended to harm any
         relationship between BONY and Resorts.**   Furthermore, the
14       relationship between Resorts, Capital and BONY was not altered;
         BONY did not have a lien on the leasehold prior to USA Capital's
15       loan to Epic Palm Springs and did not have one after the loan.

16   Id. At 525 (Emphasis added.)

17     In short, the bankruptcy court found that Trust Deed Fund did not (1) tortiously interfere
18  with the Indenture between BONY and Epic, and (2) did not intend to harm any relationship
19  between BONY and Epic, and (3) did not alter the relationship between Epic, Epic Capital and
20  BONY.

21  E.        CLAIMS ALLEGED IN THE NEVADA LITIGATION
22     The Nevada Plaintiffs allege claims for relief for tortious interference, conspiracy to
23  commit tortious interference, and aiding and abetting.  BONY did not specifically raise the same
24  claims in the Delaware Litigation, but the BONY claims raised the same issues of tortious
25  interference, conspiracy to commit tortious interference, and aiding and abetting as the Nevada
26  Plaintiffs now raise in the Nevada Litigation.  The issues raised in the Nevada Litigation are
27  identical to the issues that were resolved in favor of Trust Deed Fund in the Delaware Litigation.

28

-9-

## III.
## APPLICABLE LAW

A.          SUMMARY JUDGMENT.

A defendant may move for summary judgment "at any time." NRCP 56(b). Summary judgment is proper when, as a matter of law, the moving party is entitled to the judgment because there is no issue of material fact. See, Kopickov. Young, 114 Nev. 1333, 1334, 971 P.2d 789, 790-791 (1998). In order to defeat a motion for summary judgment, "the nonmoving party must show specific facts demonstrating the existence of a genuine issue for trial." Boland v. Nevada Rock and Sand Co., 111 Nev. 608, 614, 894 P.2d 988, 990 (1995).

Collateral Estoppel is a proper basis for granting summary judgment. See, LaForge v. State, Univ. and Community College Sys. of Nev., 116 Nev. 415, 419, 997 P.2d 130, 133 (2000).

B.          COLLATERAL ESTOPPEL.

"The doctrine of collateral estoppel operates to preclude the parties or their privies from relitigating issues previously litigated and actually determined in the prior proceeding." Marine Midland Bank v. Monroe, 104 Nev. 307, 308, 756 P.2d 1193, 1194 (1988) (citations omitted).

The doctrine of collateral estoppel is governed by the law of the federal court that issued the decision. Clark v. Columbia/HCA Info. Servs., Inc., 25 P.3d 215, 224 (2001). Since both the Bankruptcy court and the District Court of Delaware are located in the United States Court of Appeals for the Third Circuit, the Third Circuit's law regarding collateral estoppel will govern[2]. The Third Circuit set forth a four-part test to determine whether summary judgment may be granted on the basis of issue preclusion:

> (1) the identical issue was decided in a prior adjudication; (2)there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

---

[2] The Nevada Supreme Court's test to determine whether summary judgment may be granted on the basis of collateral estoppel is almost identical to the test of the Third Circuit. The Nevada Supreme Court requires that a party show: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation. LaForge, 116 Nev. at 419, 997 P.2d at 133 citing, Executive Management v. Ticor Title Ins. Co., 114 Nev. 823, 835-836, 963 P.2d 473, 473-474 (1998).

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 — FAX (702) 791-1912

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

1   Bd. of Trs. of Trucking Employees of N.J. Welfare Fund, Inc. v. Centra, 893 F.2d 495, 504 (3rd

2   Cir. 1992).  The doctrine of collateral estoppel, or issue preclusion[3], "may be implicated when

3   one or more of the parties to an earlier suit are involved in subsequent litigation on a different

4   claim."  Univ. of Nev. v. Tarkanian, 110 Nev. 580, 598-99, 879 P.2d 1180, 1191 (1994). An

5   issue is considered identical in two cases if there is "a substantial overlap between the evidence

6
7   or argument to be advanced in the two proceedings." Restatement (Second) Judgments §27 cmt.

8   c (1982), cited with approval in, Amtrak v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3rd Cir.

9   2002).  Issue preclusion may apply to different causes of action if the same fact issue is

10  presented. See, Laforge, 116 Nev. at 420, 997 P.2d at 134.

## IV.
## APPLICATION OF LAW TO FACTS

13      Trust Deed Fund is entitled to summary judgment as Plaintiffs are collaterally estopped.

14  The Bankruptcy Court and the District Court for the District of Delaware held in favor of Trust

15  Deed Fund on identical facts and issues as are raised in the Nevada Litigation.

16  A.          COLLATERAL ESTOPPEL BARS THE CLAIM FOR RELIEF FOR TORTIOUS
17              INTERFERENCE ALLEGED IN THE NEVADA LITIGATION

18          1.      The identical issues were decided in the Delaware Litigation.

19      In the Delaware Litigation, the bankruptcy court, analyzing the claim of tortious

20  interference, employed the following elements:

21              (1) the existence of a contractual, or prospective contractual
                relation between itself and a third party; (2) purposeful action on
22              the part of the defendant, specifically intended to harm the existing
                relationship, or to prevent the prospective relation from occurring;
                (3) the absence of a privilege or justification on the defendant; (4)
23              the occasioning of actual legal damage as a result of the
                defendants' conduct;     and (5) for prospective contracts, a
24              reasonable likelihood that the relationship would have occurred but
                for the interference of the defendant." LaBrum & Doak v. Brown
25              (In re LaBrum & Doak, LLP), 225 B.R. 93 (Bankr.E.D.Pa.1998).

26  Epic, 290 B.R. at 524 – 525.

27
    ───────────────────────
    [3] Collateral estoppel and issue preclusion are interchangeable terms.  See, University of Nevada v. Tarkanian, 110
28  Nev. 581, 598-599, 879 P 2d 1180, 1192 (1994).

C:\Documents and Settings\jbaxter\Local Settings\Temporary Internet Files\OLK38\MSJ AAZ RTS Final.doc

1    In the Nevada Litigation, under Nevada law, the Nevada Plaintiffs would be required to

2    prove the following elements:

3        1) a valid and existing contract; 2) the defendant's knowledge of
         the contract; 3) the intentional acts intended or designed to disrupt
4        the contractual relationship; 4) actual disruption of the contract;
         and 5) resulting damage.

5

6    Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 109 Nev. 1043, 862 P.2d 1207 (1993).

7    The Nevada Plaintiffs would be required to prove the identical elements that the bankruptcy

8    court found that BONY, the privy of the Nevada Plaintiffs, could not satisfy in the Delaware

9    Litigation. Thus, the identical issues were decided in the Delaware Litigation.

10        **2.    There was a final judgment on the merits in the Delaware Litigation.**

11    Bankruptcy court orders on core issues are considered final orders for purposes of

12    collateral estoppel. Robertson v. Isomedix, Inc. (In re Intl. Nutronics, Inc.), 28 F.3d 965 (9th Cir.

13    1994). Not only is a claim for equitable subordination a core proceeding, 28 U.S.C. § 157, but

14    the claim was adjudicated in an adversary proceeding, a lawsuit. The bankruptcy court, affirmed

15    on appeal, granted Trust Deed Fund judgment on the claims made by BONY. There was a final

16    judgment on the merits.

17        **3.    The party against whom the bar is asserted (the Nevada Plaintiffs)
         was a party or in privity with a party to the prior adjudication
18        (BONY).**

19    The Nevada Plaintiffs are in privity with BONY, the plaintiff in the Delaware litigation.

20    In the Delaware litigation BONY, the Indenture Trustee, represented the individual bond holders.

21    BONY, as the Indenture Trustee, was authorized under the Indenture to represent the

22    bondholders as their trustee in enforcing the terms of the Indenture on their behalf.  Section

23    11.05 of the Indenture states in relevant part:

24        The Trustee may, in its sole discretion and without the consent of
         the Security Holders, on behalf of the Security holders, take all
25        actions it deems necessary or appropriate in order to (a) enforce
         any of the terms of the Collateral Documents and (b) collect and
26        receive any and all amounts available in respect of the Obligations
         of the Subsidiary Guarantors hereunder.  The Trustee shall have
27        power to institute and to maintain such suits and proceedings as it
         may deem expedient to prevent any impairment of the Collateral
28        by any such acts that my be unlawful or in violation of the

-12-

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 ~ FAX (702) 791-1912

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 – FAX (702) 791-1912

1

2    Collateral Documents or this Indenture, and such suits and
     proceedings as the Trustee may deem expedient to preserve or
     protect its interests and the interests of the Security holders in the
3    Collateral....

4    The United States Supreme Court has stated:

5    It has been held that bondholders are not necessary parties to and
     are bound by the decree even if adverse to their interests in
6    litigation wherein an indenture trustee under a bond issue is a party
     and exercises in good faith and without neglect his contractual
     authority to represent and assert the lien securing the issue."
7

8    Kersh Lake Drainage v. Johnson, 309 U.S. 485, 491, 60 S.Ct. 640, 644 (1940) (footnote

9    omitted).

10       The Nevada Plaintiffs were in privity with BONY, the party to the Delaware Litigation,

11   the prior adjudication.

12           4.    **The party against whom the bar is asserted (the Nevada Plaintiffs)**
                   **had a full and fair opportunity to litigate the issue in question.**
13
         The bankruptcy court described the procedural history of the Delaware Litigation as
14
     follows:
15

16   Before the Court is the Amended Motion of USA Capital for Order
     (i) Granting Relief from the Automatic Stay, (ii) Directing the
17   Trustee to Provide USA Capital with Adequate Protection, and (iii)
     Directing the Debtor to Abandon USA Capital's Collateral ("the
18   Stay Motion"). Bank of New York ("BONY"), the Official
     Committee of Unsecured Creditors ("the Creditors' Committee")
19   and Anthony H.N. Schnelling, the chapter 11 trustee ("the
     Trustee"), filed objections to the Motion.

20   BONY objected on the grounds that it possessed an equitable lien
     or mortgage on USA Capital's collateral and that USA Capital's
21   lien position should be subordinated to BONY's lien position
     pursuant to 11 U.S.C. § 510(c). Evidentiary hearings on the Stay
22   Motion were held on April 30 and May 21, 2002. Post-trial briefs
     have been submitted.
23
     BONY also filed an adversary proceeding against USA Capital and
24   Epic Resorts Palm Springs Marquis Villas, LLC ("Epic Palm
     Springs") to Determine Validity, Extent and Priority of Liens, and
25   for Equitable Subordination Pursuant to 11 U.S.C. § 510(c). On
     July 10, 2002, USA Capital filed a Motion for Summary Judgment
26   in the adversary proceeding and on August 6, 2002, BONY filed
     its Cross-Motion for Summary Judgment. The Bankruptcy Court
27   decided

28       Since both the Stay Motion and the Summary Judgment Motions

> deal with the same issues, we decide them together. For the reasons set forth below, we grant the Stay Motion and USA Capital's Summary Judgment Motion and deny BONY's Cross-Motion for Summary Judgment.

Epic, 290 B.R. at 517–518.

On appeal, the District Court described the procedural history as follows:

> Pending before the Court is an appeal by The Bank of New York ("BNY"), as Successor Indenture Trustee, and a cross-appeal by USA Capital Diversified Trust Deed Fund, LLC ("USA Capital") from the February 27, 2003 Opinion and Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). In re Epic Capital Corporation, 290 B.R. 514 (Bankr.D.Del.2003). By its appeal, BNY contends that the Bankruptcy Court erred in granting summary judgment in favor of USA Capital and denying summary judgment in favor of BNY on the grounds that USA Capital's claim should be equitably subordinated to BNY's claim. By its cross-appeal, USA Capital contends that the Bankruptcy Court erred to the extent that it struck the testimony of Thomas A. Flatley. For the reasons discussed, the Court will affirm the February 27, 2003 Order of the Bankruptcy Court to the extent that it denied BONY's motion for summary judgment seeking equitable subordination of USA Capital's claim and struck the testimony of Thomas A. Flatley

Epic, 307 B.R. at 769.

BONY had two opportunities to present its case in the Delaware Courts. Thus, the Nevada Plaintiffs, through their privy, BONY, had a full and fair opportunity to litigate the issues in question.

**B.** **THE DERIVATIVE CLAIMS FOR RELIEF FOR CONSPIRACY AND AIDING AND ABETTING FAIL BECAUSE THE CLAIM FOR RELIEF FOR TORTIOUS INTERFERENCE IS BARRED**

**1.** **Plaintiffs' Claim for Civil Conspiracy Fails.**

The bankruptcy court found that Trust Deed Fund did not commit the tort of intentional interference. The Nevada Plaintiffs' claim for conspiracy to commit tortious must also fail. To establish civil conspiracy Plaintiffs must show "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Hilton, 109 Nev. at 1048, 862 P.2d at 1210. Plaintiffs must also show that each defendant's conduct was in itself tortious. Dow Chem. Co. v. Mahlum, 114 Nev. 1468, 1489, 970 P.2d 98,112 (1998), overruled in part by, GES, Inc. v.

-14-

1  Corbitt, 117 Nev. Adv. Op. No. 26, 21 P.3d 11 (2001). The Nevada Plaintiffs cannot make the

2  proper showing of tortious behavior by Trust Deed Fund. The bankruptcy court found that Trust

3  Deed Fund did not combine with another to accomplish tortious interference. In fact the

4  bankruptcy court stated:

5  There is no evidence of purposeful action on the part of USA
   Capital to harm the relationship between Resorts, Capital and
6  BONY.

7  Epic, 290 B.R. at 525.

8  ##        2.    Plaintiffs' Claim for Civil Aiding and Abetting Fails.

9  Plaintiffs cannot satisfy the elements needed to prove civil aiding and abetting. "Under

10  the Restatement, liability attaches for civil aiding and abetting if the defendant substantially

11  assists or encourages another's conduct in breaching a duty to a third person." Dow, 114 Nev. at

12  1490, 970 P.2d at 112. The Plaintiffs much prove three elements: (1) that Epic breached a

13  contractual duty it owed to the Nevada Plaintiffs, (2) that Trust Deed Fund was aware of its role

14  in substantially assisting or encouraging the breach of contract; and (3) that Trust Deed Fund

15  knowingly and substantially assisted Epic Resorts in breaching its contractual duties to the

16  Nevada Plaintiffs. Id.

17  The Bankruptcy Court ended the inquiry into "aiding and abetting" claim. It wrote:

18  Epic Palm Springs advised USA Capital that no other creditor held
   a lien on the lease. Although USA Capital had knowledge of the
19  restrictive covenants, Epic Palm Springs represented and warranted
   that the entry into the secured loan transaction with USA Capital
20  did "not and will not ... result in a breach or constitute a default
   under, ... or require any consent under, any indenture...." See Loan
21  Agreement at 5.2(e). In addition, USA Capital's report did not
   reveal any other liens on the lease. Prior to consummating the
22  transaction, USA Capital confirmed with the BIA that no other lien
   existed on the property. USA Capital's actions were not intended to
23  harm any relationship between BONY and Resorts. Furthermore,
   the relationship between Resorts, Capital and BONY was not
24  altered: BONY did not have a lien on the leasehold prior to USA
   Capital's loan to Epic Palm Springs and did not have one after the
25  loan.

26  Epic, 290 B.R. at 525.

27

28

-15-

# V.
## CONCLUSION

The Nevada Plaintiffs failed to secure a lien in collateral due to lack of diligence in gaining BIA approval. Had Plaintiffs obtained the proper BIA approval for their lien interest, Trust Deed Fund would have been noticed of the lien and loaned money to Epic at its own risk. Plaintiffs did not secure BIA permission, and have no lien interest in the Epic Leasehold Interest. The Nevada Plaintiffs' lack of diligence in obtaining a perfected secured interest should not be rewarded by this Court.

The Nevada Plaintiffs, through their privy, BONY, already tried to bring claims of tortious interference against Trust Deed Fund in Delaware and lost on summary judgment. The Nevada Plaintiffs appealed this ruling and again lost as the decision was affirmed. Collateral estoppel prevents Plaintiffs from having another bite at the apple, especially as Plaintiffs' argument is devoid of any legal basis or support.

For the forgoing reasons, Trust Deed Fund requests that this Court grant summary judgment in its favor.

DATED this ___ day of March, 2005.

Anthony A. Zmaila, Esq.
Nevada Bar No. 2319
Brian W. Boschee, Esq.
Nevada Bar No. 7612
Ryan T. Schultz, Esq.
Nevada Bar No. 8655
400 South Fourth Street, 3rd Floor
Las Vegas, NV 89101
Attorneys for Defendant
USA CAPITAL DIVERSIFIED
TRUST DEED FUND, LLC

SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
400 SOUTH FOURTH STREET, THIRD FLOOR, LAS VEGAS, NEVADA 89101
(702) 791-0308 ~ FAX (702) 791-1912

C:\Documents and Settings\baxter\Local Settings\Temporary Internet Files\OLK389\MSJ AAZ RTS Final.doc



**Westlaw.**

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

Page 1

**H**

United States Bankruptcy Court,
D. Delaware.

In re EPIC CAPITAL CORPORATION, et al.,
Debtors.
The Bank of New York, as Indenture Trustee,
Plaintiff,
v.
Epic Resorts--Palm Springs Marquis Villas, LLC,
and
USA Capital Diversified Trust Deed Fund, LLC,
Defendants.

Bankruptcy No. 01-2458 (MFW).
Adversary No. 02-3021(MFW).

Feb. 27, 2003.

Lender moved for relief from stay to exercise its
rights in property securing its claim, and indenture
trustee on bonds previously issued by debtor objected
based on its alleged prior interest in property and
sought to equitably subordinate lender's interest. The
Bankruptcy Court, Mary F. Walrath, J., held that: (1)
indenture trustee on bonds that resort owner had
issued to fund resort which it operated on Indian land
was not entitled to equitable lien on resort's leasehold
interest; (2) subsequent lender's knowledge of trust
indenture, at time it entered into agreement to provide
financing to debtors and obtained prior, perfected
security interest in leasehold interest, did not rise to
level of inequitable conduct and did not provide basis
for equitable subordination of its claim; but (3) resort
was necessary to debtors' effective reorganization, so
that stay would not be lifted based upon debtors' lack
of equity therein.

So ordered.

West Headnotes

**[1] Bankruptcy** 2439(2)
51k2439(2) Most Cited Cases

**[1] Bankruptcy** 2439(4)
51k2439(4) Most Cited Cases

Creditor moving for relief from stay to exercise its

rights in collateral, upon theory that debtor has no
equity therein and that collateral is not necessary for
debtor's effective reorganization, bears burden of
proving debtor's lack of equity, while nonmovant has
burden of proving all other issues, including
necessity of collateral to debtor's effective
reorganization. Bankr.Code, 11 U.S.C.A. §
362(d)(2).

**[2] Bankruptcy** 2439(1)
51k2439(1) Most Cited Cases

**[2] Bankruptcy** 2439(7)
51k2439(7) Most Cited Cases

To preclude lifting of stay as to certain collateral
based on its lack of equity therein, debtor need only
establish through prima facie evidence that collateral
will likely play significant role in its reorganization.
Bankr.Code, 11 U.S.C.A. § 362(d)(2).

**[3] Corporations** 473
101k473 Most Cited Cases

**[3] Indians** 16(3)
209k16(3) Most Cited Cases

**[3] Liens** 7
239k7 Most Cited Cases

Indenture trustee on bonds that resort owner had
issued to fund resort which it operated on Indian land
was not entitled to equitable lien on resort's leasehold
interest in such land, based on language in trust
indenture wherein resort owner agreed to use its best
efforts to obtain consent of the Bureau of Indian
Affairs (BIA) as to imposition of mortgage upon this
leasehold interest; such language did not manifest
intent by parties to grant security interest, as required
to support equitable lien, but at most manifested their
intent to try to convey security interest.

**[4] Corporations** 479
101k479 Most Cited Cases

**[4] Indians** 16(3)
209k16(3) Most Cited Cases

**[4] Liens** 7
239k7 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

[4] States ☜18.15
360k18.15 Most Cited Cases

Even assuming that language of trust indenture
sufficiently manifested intent by parties to convey
mortgage on resort's leasehold interest in Indian land
upon which it operated, which intent was frustrated
when resort owner failed to obtain consent of the
Bureau of Indian Affairs (BIA) to imposition of such
a mortgage, court would not recognize equitable lien
in indenture trustee's favor, as inconsistent with
federal law requiring the BIA's approval for any lien;
federal law preempted state equitable lien law as
regards unrecorded interest claimed by indenture
trustee, without the BIA's approval, in Indian land.

[5] Bankruptcy ☜2574
51k2574 Most Cited Cases

In bankruptcy, existence and power of liens is
controlled by state law, unless its application would
frustrate federal policy.

[6] Indians ☜15(1)
209k15(1) Most Cited Cases

[6] Indians ☜32(2)
209k32(2) Most Cited Cases

Federal law preempts state law as regards
encumbrance of Indian lands. 25 C.F.R. § 1.4.

[7] Liens ☜7
239k7 Most Cited Cases

While equitable lien doctrine has survived enactment
of the Uniform Commercial Code (UCC), it is
applied only in situations where a secured creditor is
prevented from perfecting its interest by
uncooperative debtor.

[8] Bankruptcy ☜2967.5
51k2967.5 Most Cited Cases

Subsequent lender's knowledge of trust indenture,
under which debtor had agreed to use its best efforts
to obtain consent of the Bureau of Indian Affairs
(BIA) to imposition of mortgage in indenture trustee's
favor upon its leasehold interest in Indian land, at
time it entered into agreement to provide financing to
debtors and obtained prior, perfected security interest
in leasehold interest, did not rise to level of
inequitable conduct and did not provide basis for

equitable subordination of its claim, where lender
entered into transaction with debtor in good faith and
after inquiring into existence of any prior liens.
Bankr.Code, 11 U.S.C.A. § 510(c).

[9] Bankruptcy ☜2967.5
51k2967.5 Most Cited Cases

When deciding whether claim of higher priority
should be equitably subordinated, bankruptcy court
considers (1) whether claimant has engaged in some
type of inequitable conduct; (2) whether this
misconduct has resulted in injury to other creditors
and conferred unfair advantage on claimant; and (3)
whether equitable subordination of claim is
consistent with provisions of the Bankruptcy Code.
Bankr.Code, 11 U.S.C.A. § 510(c).

[10] Bankruptcy ☜2972
51k2972 Most Cited Cases

Burden of proof that movant must satisfy in order to
equitably subordinate claim depends upon whether
claimant is insider or non-insider; burden of proof is
less demanding where claimant is insider.
Bankr.Code, 11 U.S.C.A. § 510(c).

[11] Bankruptcy ☜2972
51k2972 Most Cited Cases

Where party whose claim is to be equitably
subordinated is not an insider or fiduciary, movant
must prove with particularity egregious conduct, such
as fraud, spoliation or overreaching. Bankr.Code, 11
U.S.C.A. § 510(c).

[12] Bankruptcy ☜2967.5
51k2967.5 Most Cited Cases

There are three general categories of behavior that
may constitute "inequitable conduct," of kind
warranting equitable subordination of claim: (1)
fraud, illegality or breach of fiduciary duties; (2)
undercapitalization; and (3) claimant's use of the
debtor as mere instrumentality or alter ego.
Bankr.Code, 11 U.S.C.A. § 510(c).

[13] Torts ☜12
379k12 Most Cited Cases

Under Pennsylvania law, elements of tortious
interference with business relationship are as follows:
(1) existence of contractual, or prospective
contractual, relation between plaintiff and third party;

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

Page 3

(2) purposeful action on part of defendant specifically intended to harm existing relationship or to prevent prospective relationship from occurring; (3) absence of privilege or justification; (4) occasioning of actual legal damage as result of defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that relationship would have occurred but for defendant's interference.

[14] Bankruptcy ☜══2967.5
51k2967.5 Most Cited Cases

Equitable subordination of claims is extraordinary measure, which is not lightly invoked. Bankr.Code, 11 U.S.C.A. § 510(c).

[15] Bankruptcy ☜══2429(3)
51k2429(3) Most Cited Cases

Resort that was one of six resorts owned by Chapter 11 debtors and used by timeshare owners was asset necessary to debtors' effective reorganization, so as to preclude lifting of stay on motion of creditor with security interest therein despite debtors' lack of equity in property, given evidence that successful reorganization or sale depended upon debtors' retaining control of all of these resorts, and that settlement agreement negotiated by trustee made the reorganization or sale of debtors' assets as going concerns a reasonable prospect. Bankr.Code, 11 U.S.C.A. § 362(d)(2).

[16] Bankruptcy ☜══2430.1
51k2430.1 Most Cited Cases

Lack of adequate protection payments might constitute "cause" for lifting automatic stay, in order to permit undersecured creditor to exercise its rights in property securing its claim. Bankr.Code, 11 U.S.C.A. § 362(d)(1).

[17] Bankruptcy ☜══3062
51k3062 Most Cited Cases

Undersecured creditor whose collateral is decreasing in value is entitled to adequate protection payments.

[18] Bankruptcy ☜══2439(1)
51k2439(1) Most Cited Cases

Creditor can satisfy its initial burden of producing evidence of "cause" for relief from stay by introducing evidence of debtor's failure to make postpetition installment payments on secured debt.

Bankr.Code, 11 U.S.C.A. § 362(d)(1).
*516 Robin Keller, Ken Pasquale, Stroock & Stroock & Lavan, LLP, New York City, Kevin Gross, Herbert W. Mondros, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Counsel for Anthony H.N. Schnelling, Chapter 11 Trustee.

*517 Thomas Howley, Leonard M. Parkins, Haynes & Boone, LLP, Houston, TX, David M. Fournier, Aaron A. Garber, Pepper Hamilton, LLP, Wilmington, DE, Counsel for Bank of New York, As Successor Indenture Trustee.

W. Harding Drane, Laurie Selber Silverstein, William A. Hazeltine, Potter, Anderson & Corroon, LLP, Wilmington, DE, Counsel for the Official Committee of Unsecured Creditors.

Jeffrey A. Deller, James H. Joseph, Klett, Rooney, Lieber & Schorling, Pittsburgh, PA, Kathleen P. Makowski, Teresa K.D. Currier, Klett, Rooney, Lieber & Schorling, Wilmington, DE, Counsel for USA Capital Diversified Trust Deed Fund, LLC.

Julie L. Compton, Wilmington, DE, Office of the United States Trustee.

OPINION [FN1]

> FN1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Amended Motion of USA Capital for Order (i) Granting Relief from the Automatic Stay, (ii) Directing the Trustee to Provide USA Capital with Adequate Protection, and (iii) Directing the Debtor to Abandon USA Capital's Collateral ("the Stay Motion"). Bank of New York ("BONY"), the Official Committee of Unsecured Creditors ("the Creditors' Committee") and Anthony H.N. Schnelling, the chapter 11 trustee ("the Trustee"), filed objections to the Motion.

BONY objected on the grounds that it possessed an equitable lien or mortgage on USA Capital's collateral and that USA Capital's lien position should

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

be subordinated to BONY's lien position pursuant to 11 U.S.C. § 510(c). Evidentiary hearings on the Stay Motion were held on April 30 and .May 21, 2002. Post-trial briefs have been submitted.

BONY also filed an adversary proceeding against USA Capital and Epic Resorts Palm Springs Marquis Villas, LLC ("Epic Palm Springs") to Determine Validity, Extent and Priority of Liens, and for Equitable Subordination Pursuant to 11 U.S.C. § 510(c). On July 10, 2002, USA Capital filed a Motion for Summary Judgment in the adversary proceeding and on August 6, 2002, BONY filed its Cross-Motion for Summary Judgment.

Since both the Stay Motion and the Summary Judgment Motions deal with the same issues, we decide them together. For the reasons set forth below, we grant the Stay Motion and USA Capital's Summary Judgment Motion and deny BONY's Cross-Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Epic Resorts, LLC ("Resorts") is a holding company that, through its subsidiaries (collectively, "Epic"), owns and operates several vacation resorts in the United States, including resorts in Las Vegas, Nevada, Scottsdale, Arizona, Palm Springs, California, Daytona Beach, Florida, Lake Havasu City, Arizona, and Hilton Head, South Carolina. [FN2] One of these subsidiaries is Epic Palm Springs which owns and operates a 101 unit timeshare resort in Palm Springs, California ("the Property"). The land on which Epic Palm Springs operates its resort is land administered by the United *518 States Department of Interior, Bureau of Indian Affairs ("BIA"). Epic Palm Springs leases the Palm Springs resort under a ground lease approved by the BIA ("the Lease").

> FN2. Thomas F. Flatley ("Mr. Flatley") is the owner of Resorts and owns approximately 99% of the resorts.

Pursuant to a trust indenture dated July 8, 1998, Resorts and Epic Capital Corporation ("Capital") issued $130 million in Senior Secured Redeemable Bonds due by 2005. BONY is the current indenture trustee. The majority of the Bonds are held by the Highland Funds. The Indenture provided that Resorts and Capital would grant BONY a deed of trust in, *inter alia*, the Palm Springs resort. However,

this covenant could only be fulfilled after the BIA consented, which Resorts and Capital agreed to obtain within sixty days after closing. BIA's approval was never obtained.

Almost two years after closing on the Indenture, Epic Palm Springs approached USA Capital to borrow additional funds for working capital purposes. On or about June 26, 2000, USA Capital and Epic Palm Springs executed various documents ("the Loan Agreements") whereby USA Capital agreed to lend Epic Palm Springs $11.5 million. As security for the loan, Epic Palm Springs granted USA Capital a security interest in substantially all of its assets, including the Master Lease, the 66 condominium units in the Palm Springs resort that had not yet been sold as timeshares by Epic Palm Springs, and all common areas, equipment, personalty, fixtures, and rents related thereto, and all products and proceeds of the same (the "Collateral").

When Epic Palm Springs granted USA Capital a lien, Epic Palm Springs represented that no other creditor held a lien on the Collateral. USA Capital obtained a title examination on the Property and confirmed with the BIA that no other lien existed on it. Although obtained after the closing, USA Capital also obtained an opinion letter from Epic's counsel that the USA Capital transaction would not violate the terms of the Indenture and that no other lien encumbered the Palm Springs resort. The BIA approved the security interest granted to USA Capital on June 22, 2000, and USA Capital perfected its security interests in the Lease by recording its Leasehold Deed of Trust with the Official Records of Riverside County on July 5, 2000.

Thereafter, Epic Palm Springs committed numerous defaults under the USA Capital loan. In April of 2001, Epic Palm Springs was advised that it was in default of the Loan Agreements for failure to comply with the financial reporting and other covenants of the Loan Agreement. In June of 2001, Epic Palm Springs also failed to make requisite interest payments on the Bonds to the bondholders. Beginning in August 2001, [FN3] Epic Palm Springs failed to make the requisite payments due to USA Capital under the Loan Agreements. Epic Palm Springs also failed to timely and promptly pay all obligations that accrued under the Lease.

> FN3. As part of the $11.5 million loan made by USA Capital, $1.5 million was used to fund a reserve to make interest payments to

USA Capital. That reserve was exhausted in August, 2001.

Resorts and Capital also defaulted on their obligations to make an $8.45 million interest payment to their bondholders. At about the same time, Prudential Securities Corporation terminated the monetization facility that it had provided to Epic, thereby severely restricting its cash flow. As a result, the Highland Funds filed involuntary bankruptcy petitions against Resorts and Capital on July 19, 2001, and commenced involuntary bankruptcy proceedings *519 against Epic Palm Springs on November 9, 2001.

On October 15, 2001, Resorts and Capital consented to the entry of an Order for Relief under Chapter 11 of the Bankruptcy Code. On February 14, 2002, we granted the Motion of the Highland Funds for appointment of a Chapter 11 trustee.

As of April 30, 2002, the outstanding obligations owing from Epic Palm Springs to USA Capital totaled $13,804,833.66. The amount continues to accrue as to Epic Palm Springs and the Trustee have not made any post-petition adequate protection payments to USA Capital. In addition, approximately $310,000 in real estate taxes remain unpaid with respect to the Palm Springs resort thereby giving rise to at least $14.1 million of secured debt on the Collateral. The parties have stipulated that the Collateral is presently valued on $14,019,525.00.

Since the hearing on USA Capital's Motion, the Trustee has entered into a Settlement Agreement with Epic Vacation Club, Five Star Leisure Management LLC, Thomas Flatley, various Homeowner Associations and others that resolves all of the outstanding litigation between the trustee, various directors and insiders of the HOA's, the Creditors' Committee and various bondholders. The Settlement Agreement gives the Trustee control of the Vacation Club, the management company (Five Star) and the Homeowner Associations. This will allow the Trustee to operate the various resorts more effectively and position them for a sale as going concerns. The settlement was approved on December 12, 2002.

In addition, the Trustee has now obtained post petition financing for the various Debtors: a $5,969,000.00 post-petition loan that will be used to pay wages, salaries, operating expenses, accrued professional fees, and other expenses necessary to preserve their assets. Part of the loan proceeds ($500,000) was budgeted for expenses involving the Palm Springs lease, including rent, real estate taxes, utilities, payroll and insurance. However, no debt service will be paid to USA Capital. The post-petition financing was approved by Order dated December 12, 2002.

## II. JURISDICTION

The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § § 157(a) and 1334(b), and the standing order of reference of the district court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(G),(K) and (O).

## III. DISCUSSION

### A. Standard for Relief from Stay

Relief from the automatic stay is appropriate under section 362(d), under the following circumstances:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection(a) of this section, if--

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization....

11 U.S.C. § 362(d).

[1][2] A creditor seeking relief from the stay has the burden of proving the debtor's lack of equity. 11 U.S.C § 362(g)(1). See also In re Hanley, 102 B.R. 36, 37 (W.D.Pa.1989). The party opposing *520 the relief bears the burden of proving all other issues, including whether the collateral is necessary for an effective reorganization. 11 U.S.C. § 362(g). See also Nazareth National Bank v. Trina-Dee, Inc., 731 F.2d 170, 171 (3d Cir.1984). However, even if there is no equity, a debtor need only establish through prima facie evidence that the collateral will likely play a significant role in the reorganization. See In re Island Helicopter Corp. et al., 63 B.R. 809, 815 (Bankr.E.D.N.Y.1986).

### B. Equity in the Collateral

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

USA Capital argues that it has satisfied the requirements for relief from the stay under section 362(d)(2) because there is admittedly no equity in the Property. The Collateral is encumbered by at least $14.1 million of secured debt. This debt consists of USA Capital's secured claim of $13,804,833.66 as of April 30, 2002, and unpaid real estate taxes that approximate $310,000. The parties have stipulated that the Collateral is presently valued at $14,019,525.00. Thus, the estate lacks equity in the Property.

BONY opposed the Stay Motion by asserting that USA Capital's lien is subordinate to an equitable lien that BONY holds. Since BONY's asserted equitable lien was never perfected, it is avoidable by the Trustee who could nonetheless retain that equitable lien position vis-á-vis USA Capital thereby resulting in equity in the collateral for the estate. *See* 11 U.S.C. § § 544 & 551. The basis for BONY's asserted equitable lien is articulated in the complaint brought by it against USA Capital. That issue is ripe for decision as a result of the cross-Motions for Summary Judgment.

### 1. *Standard for Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" if the "pleadings, depositions, answers to interrogatories, and admissions on file" demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). Federal Rule of Bankruptcy Procedure 7056 provides that the Rule 56 applies to adversary proceedings.

According to the United States Supreme Court, "[s]ummary judgment ... is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) *quoting* Fed.R.Civ.P. 1.

### 2. *Equitable Lien*

[3][4] BONY argues that an equitable lien arose in the Palm Springs lease in its favor when the parties executed the Indenture Agreement even though they never obtained approval from the BIA. BONY further asserts that its equitable lien has priority over USA Capital's properly perfected security interest in the same property because BONY's interest in the

property arose before USA Capital's.

It is conceded by BONY that it failed to perfect a security interest in the Palm Springs lease when it closed the bond issue. However, BONY argues that, although it did not have a formal lien on the leasehold property, it obtained an equitable lien on the property because the parties *intended* for a security interest to be conveyed to it. BONY asserts the parties' intention is evidenced by several documents, including the Indenture, the Closing Index, the Purchase Agreement, and *521 the Offering Memorandum. [FN4]

> FN4. Mr. Flatley, Epic Palm Springs president, testified at trial that prior to the bond closing, Epic reached an oral agreement with BONY whereby Epic would grant a lien in a resort located in Daytona, Florida, rather than grant a lien in the Palm Springs lease. BONY moved to strike Mr. Flatley's testimony on the grounds that it violated the parol evidence rule. The Court agrees with BONY that the testimony is barred by the parol evidence rule because the oral agreement was allegedly made prior to the execution of the written contracts (the Indenture Agreement and other closing documents) and contradicts the language contained therein. We also have not found Mr. Flatley's testimony in this case to be credible.

[5] "In bankruptcy, the existence and power of liens is controlled by state law, unless its application would frustrate a federal policy." *Lewis v. Diethorn*, 893 F.2d 648 (3d Cir.1990), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). The parties disagree as to whether federal or state law applies. BONY argues that the dispute is governed by state law because the action relates to personal property of Epic Palm Springs and involves non-Indian, non-federal parties (BONY, USA Capital and Epic Palm Springs). USA Capital, on the other hand, argues that federal law, specifically the Supremacy and Indian Commerce Clauses of the United States Constitution, applies.

[6] The Court agrees with USA Capital that federal law preempts state law regarding encumbrances of Indian lands. *See* 25 C.F.R. § 1.4 (no state law governing, regulating or controlling the use or development of land shall apply to Indian lands). *See*

*also* 28 U.S.C. § 1360. Federal law preemption arises under the Supremacy Clause of the United States Constitution, U.S. Const., Art. VI, Cl.2 ("this Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land ..."), and the Indian Commerce Clause, *id.*, Art. I, Sec. 8, Cl. 3 ("the Congress shall have Power ... To regulate Commerce ... with Indian Tribes").

It is undisputed that the Palm Springs resort is located on Indian land and is administered by the BIA. The United States holds legal title to Indian lands in trust for the benefit of Native Americans. 25 U.S.C. § 348. Congress has authorized the leasing of property on Indian land, but approval of the Secretary of the Interior is required as a prerequisite to the execution of a valid and binding lease. 25 U.S.C. § 415(a). Further, if a lessee wishes to encumber his leasehold interest, the Secretary must also approve the encumbrance instrument. *Id.* Therefore, pursuant to applicable federal law, BONY cannot hold a valid lien on the leasehold absent the prior approval of the Secretary of the Interior of the United States Department of Interior, Bureau of Indian Affairs. The imposition of an equitable lien would conflict with Federal law requiring the BIA's approval of any lien.

[7] BONY nonetheless argues that it has an equitable lien on the lease. However, the application of the equitable lien doctrine is limited. "While the equitable lien doctrine has been held in this District to have survived the enactment of the Uniform Commercial Code, it has only applied in situations where a secured creditor is prevented from perfecting its interest by an uncooperative debtor." *In re Trim-Lean Meat Products, Inc.*, 10 B.R. 333 (D.Del.1981).

BONY argues that an equitable lien exists because the parties' Indenture agreement, the Closing Index, the Purchase Agreement, and the Offering Memorandum clearly reflect the parties' intention to convey a lien on the leasehold. However, *522 the language of those documents do not support such a conclusion. Section 11.01(e) of the Indenture states:

Each Issuer covenants and agrees that it will use its reasonable best efforts to obtain consent from the Department of Interior—Bureau of Indian Affairs (the "Bureau") to the imposition of a leasehold mortgage on the leasehold interest of Epic Resorts--Palm Springs Marquis Villas, LLC in the real property leased by it. Promptly upon receipt of such consent, the Issuers shall grant, or cause to be granted, such leasehold mortgage ... to the Trustee

to secure the Obligations of Epic Resorts—Palm Springs Marquis Villas, LLC under its subsidiary guaranty....

The Prospectus, prepared in connection with the Indenture Agreement, states, in relevant part:

In addition, with request to the proposed leasehold mortgage on the Palm Springs, Marquis Villas leasehold, no assurance can be given that the company will be able to obtain the approval of the Bureau of Indian Affairs to impose such a mortgage. If such approval is not obtained, the subsidiary guarantee of Epic Resorts-Palm Springs Marquis Villas, LLC will not be secured by any mortgage on such leasehold.

BONY relies on *Wal-Mart Stores, Inc. v. Carpenter (In re Carpenter)*, 252 B.R. 905 (E.D.Va.2000) to support its assertion. In *Carpenter*, the Court found that Wal-Mart had presented sufficient evidence to support the inference that the parties intended to convey a lien. *Id.* 252 B.R. at 911. We conclude that *Carpenter* is inapplicable. The Indenture and the Prospectus do not clearly express the parties' intention to convey a security interest. In the present case, the Indenture states "[e]ach Issuer covenants and agrees that *it will use its reasonable best efforts to obtain consent* from the Department of Interior-- Bureau of Indian Affairs to the imposition of a leasehold mortgage on the leasehold interest...." At most, this is an agreement to *try* to convey a security interest, not an agreement to convey a security interest. The documents acknowledge, in fact, that the approval of the BIA is necessary to convey a valid security interest to BONY. The Indenture Agreement does *not* contain language conveying a lien on the leasehold to the BONY; rather, the Prospectus clearly acknowledges that the bond issue was closed *without* a security interest being conveyed.

BONY argues that USA Capital had actual or inquiry notice of BONY's interest in the lease because it had received and reviewed the Indenture and the Prospectus prior to closing its loan with Epic Palm Springs. *See, e.g., Great American Ins. Co. v. Bailey (In re Cutty's-Gurnee, Inc.)*, 133 B.R. 934 (Bankr.N.D.Ill.1991) (lender who had actual notice that borrower agreed to give first lender a second mortgage upon refinancing was held to have inquiry notice of first lender's equitable mortgage). USA Capital argues that it acted in good faith and in a commercially reasonable manner and should not be penalized for BONY's failure to perfect a security interest in the leasehold.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

Page 8

" 'Inquiry notice' requires only notice of 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.' " _EBS Litig. LLC v. Barclays Global Investors, N.A._, 304 F.3d 302, 305 (3d Cir.2002) citing _Becker v. Hamada, Inc._, 455 A.2d 353, 356 (Del.1982). Although USA Capital had possession of the Indenture Agreement and Prospectus, the documents did not evidence that any liens had been granted to BONY, as noted above. At most, USA Capital was put on notice to inquire whether the lien anticipated by the *523 Indenture had, in fact, been granted. This USA Capital did. USA Capital performed a diligent inquiry to determine whether any prior liens existed. It ordered an independent third party to perform a title examination of the property. In addition, USA Capital required Epic Palm Springs to represent and warrant that the loan transaction with USA Capital did "not and will not ... result in a breach or constitute a default under, ... or require any consent, under, any indenture...." [FN5] See Loan Agreement at ¶ 5.2(e). As an additional precaution, USA Capital obtained an opinion letter from Epic's counsel, which stated that the lease was not encumbered by any security interest. [FN6] Thus, we conclude that USA Capital satisfied its duty to inquire whether there were any prior valid liens on the leasehold.

FN5. Cf. _Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)_, 237 B.R. 160, 170 (9th Cir. BAP 1999) ("lenders do not have to hire detectives before relying on borrowers' ... statements.... Although a creditor is not entitled to rely upon an obviously false representation of the debtor, this does not require him or her to view each representation with incredulity requiring verification.")

FN6. Although USA Capital received the attorney opinion letter _after_ the closing of the loan between USA Capital and Epic Palm Springs, in light of its other inquiries, we conclude that it did make reasonable efforts to assure itself there were no other liens on the Property.

The Court agrees with USA Capital's argument that, even if a valid security interest was created by language of the Indenture, the security interest would be invalid because the BIA's approval is required

before a lien interest can be conveyed. See 25 C.F.R. § 162.610.

In addition, the equities of the case do not favor BONY. If we were to grant an equitable lien to BONY on the Palm Springs lease, then it would have a lien without the BIA's approval, without recording any interest and without making reasonable efforts (over 2 years) to record its interest. See, e.g., _In re Trim-Lean Meat Products, Inc._ 10 B.R. 333, 335 (D.Del.1981) (court refused to recognize an equitable lien where the claimant has not "done everything reasonable under the circumstances to perfect its lien"). Under the Indenture, it was contemplated that the BIA's approval would be obtained within 60 days. It was not. Instead, BONY waited almost two years to assert a lien on the lease when it commenced the adversary complaint against USA Capital. We do not believe the circumstances of the case warrant ignoring state and federal requirements for perfection of a security interest. See, e.g., _In re Esta Later Charters, Inc._, 875 F.2d 234, 239 n. 11 (9th Cir.1989) ("vigilantibus non dormientibus aequitas subvenit," that is "equity aids the vigilant, not those who slumber on their rights").

3. _Equitable subordination_

[8] BONY also seeks to subordinate the secured claim of USA Capital to its own claim pursuant to section 510(c) of the Bankruptcy Code. 11 U.S.C. § 510(c) states, in pertinent part:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

[9] To determine whether a claim of higher priority should be equitably subordinated under section 510(c) three elements *524 are required: 1) the claimant has engaged in some type of inequitable conduct, 2) the misconduct has resulted in injury to other creditors or conferred an unfair advantage on the claimant, and 3) equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code. _Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims_, 160 F.3d 982, 986-987 (3d Cir.1998), citing _United States v. Noland_, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) and _In Re Mobile Steel Co._, 563 F.2d 692 (5th Cir.1977).

[10][11][12] The movant's burden depends on whether the respondent, whose claim might be subordinated, is an insider or non-insider. The burden of proof is less demanding when the respondent is an insider. *Ansel Properties v. Nutri/System of Florida Associates (In re Nutri/System of Florida Associates), 178 B.R. 645, 657 (E.D.Pa.1995).* If the respondent is not an insider or fiduciary, then the movant must prove with particularity "egregious conduct such as fraud, spoilation or overreaching." *Id. See also In re Vietri Homes, Inc., 58 B.R. 663, 665 (Bankr.Del.1986).* Courts recognize three general categories of behavior that may constitute inequitable conduct: 1) fraud, illegality, or breach of fiduciary duties; 2) undercapitalization; and 3) claimant's use of the debtors as a mere instrumentality or alter ego. *Nutri/System, 178 B.R. at 658.*

BONY argues that USA Capital satisfies the first prong because it entered into a loan agreement with Epic Palm Springs, despite notice of the restrictive covenants in the Indenture [FN7] and the alleged equitable lien. BONY asserts that this conduct constituted tortious interference with the Indenture. It argues that USA Capital's failure to investigate the underlying situation and its effort to take priority despite such notice provides sufficient grounds for equitable subordination. [FN8]

> FN7. The covenants prohibited the Debtors from incurring additional debt or additional security interests on the Epic Palm Springs Collateral.

> FN8. *See, e.g., Model Imperial, Inc., 250 B.R. 776 (Bankr.S.D.Fla.2000).* The Court in *Model Imperial* equitably subordinated the claims of a creditor who gave a revolving credit facility to the debtor despite having knowledge of negative covenants in loan documents with another creditor. *Id.* In *Model Imperial,* however, the creditor loaned money despite having knowledge that the debtor engaged in numerous fraudulent transactions that were illegal and economically unsound. *Id.* There is no evidence in the present case that USA Capital had any knowledge that Epic Palm Springs engaged in illegal business practices.

We conclude that BONY failed to satisfy its burden of demonstrating egregious conduct on the part of USA Capital, a non-insider. There is no evidence of fraud, illegality, breach of fiduciary duties, undercapitalization, or use of Epic Palm Springs as a mere instrumentality or alter ego. While USA Capital has admitted that it read the Indenture and the Prospectus prior to approving a loan to Epic Palm Springs, the Court does not find this sufficient to rise to the level of egregious conduct.

[13] Further, we cannot conclude that USA Capital tortiously interfered with the agreement between BONY and Resorts. The elements of tortious interference of a business relationship are as follows: "(1) the existence of a contractual, or prospective contractual relation between itself and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship, or to prevent the prospective relation from occurring; (3) the absence of a privilege or justification on the defendant; (4) the occasioning of actual legal damage as a result *525 of the defendants' conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant." *LaBrum & Doak v. Brown (In re LaBrum & Doak, LLP), 225 B.R. 93 (Bankr.E.D.Pa.1998).*

There is no evidence of purposeful action on the part of USA Capital to harm the relationship between Resorts, Capital and BONY. Epic Palm Springs advised USA Capital that no other creditor held a lien on the lease. Although USA Capital had knowledge of the restrictive covenants, Epic Palm Springs represented and warranted that the entry into the secured loan transaction with USA Capital did "not and will not ... result in a breach or constitute a default under, ... or require any consent under, any indenture...." *See* Loan Agreement at ¶ 5.2(e). In addition, USA Capital's report did not reveal any other liens on the lease. Prior to consummating the transaction, USA Capital confirmed with the BIA that no other lien existed on the property. USA Capital's actions were not intended to harm any relationship between BONY and Resorts. Furthermore, the relationship between Resorts, Capital and BONY was not altered: BONY did not have a lien on the leasehold prior to USA Capital's loan to Epic Palm Springs and did not have one after the loan.

BONY argues that inequitable conduct is not required, but rather that "[a]n inquiry must be made

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

on a case-by-case basis, focusing on fairness to the other creditors in light of all the circumstances, to determine whether subordination is appropriate absent creditor misconduct." *Cutty's-Gurnee,* 133 B.R. at 959.

Although some courts recognize "no fault" equitable subordination, even in those cases, "a court must 'explore the particular facts and circumstances presented in each case before determining whether subordination of a claim is warranted'." *Montgomery Ward Holding Corp. v. Robert Schoeberl,* 272 B.R. 836 (Bankr.Del.2001) *citing In re Burden v. United States,* 917 F.2d 115, 120 (3d Cir.1990).

[14] "Equitable subordination is an extraordinary measure which is not lightly invoked." *MB Limited Partnership, et al. v. NutriSystem, et al. (In re NutriSystem, Inc.),* 169 B.R. 854, 865 (Bankr.E.D.Pa.1994). The equities in this case do not warrant penalizing USA Capital by subordinating its claim when it took all the steps necessary to perfect its interest. Moreover, the fact that the BONY did not obtain the necessary BIA approval should not be held against USA Capital. USA Capital entered into the transaction with Epic Palm Springs in good faith and after inquiring into the existence of any prior liens. It relied on Epic Palm Springs' representation that the loan would not create a breach under the Indenture. BONY on the other hand, slept on its rights and is, therefore, not entitled to equitable relief.

As a result, USA Capital's lien remains as a first perfected lien in the Collateral. Since the parties concede that the value of the Collateral is less than the real estate liens and USA Capital's lien, the estate lacks equity in the Collateral.

## C. *Necessity for an Effective Reorganization.*

[15] USA Capital argues that the property is not necessary for an effective reorganization since Epic Palm Springs' operations are minimal and there is no post-petition financing. [FN9] The Trustee argues, *526 however, that Epic Palm Springs is necessary for an effective reorganization because it is integral to any reorganization of Epic Palm Springs individually, as well as any reorganization of the Epic family as a whole. In fact, Epic Palm Springs contains approximately 44% of the unsold inventory at all Epic properties. Further, Epic Palm Springs adds value to the overall enterprise since it is one of six resorts owned by the Debtors that can be accessed by timeshare owners. In pressing its litigation and seeking approval of the Settlement Agreement,

[FN10] the Trustee emphasized that a successful reorganization or sale of the Debtors was dependent on retaining control of *all* of the resort properties.

FN9. At the time USA Capital filed its Stay Motion this was the case. However, since then the Trustee has obtained post-petition financing, although it provides only $500,000 for Epic Palm Springs and no debt service payments are to be made to USA Capital.

FN10. USA Capital participated in the hearing on approval of the Settlement Agreement.

USA Capital argues that, even if the property is necessary for an effective reorganization, there is no prospect of reorganization within a reasonable time. The Trustee disagrees. Besides the post-petition financing, the Trustee argues that the Settlement Agreement reached with the various parties ending the pending litigation and management problems allows the Trustee to focus solely on rehabilitating and reorganizing the Debtors, including Epic Palm Springs. We agree with the Trustee that the Settlement Agreement demonstrates that there is now a reasonable prospect that these Debtors can be reorganized or sold as going concerns.

## D. *Cause for Stay Relief*

[16][17] USA Capital argues that if the Court finds that relief from the automatic stay is not warranted under section 362(d)(2), it is nonetheless entitled to relief under section 362(d)(1) because adequate protection payments have not been made to USA Capital and the value of the Collateral is deteriorating. Although USA Capital is an undersecured creditor, the Supreme Court has held that an undersecured creditor whose collateral is decreasing in value is entitled to adequate protection payments. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

[18] In the present case, however, there is no evidence demonstrating that the value of the Collateral is deteriorating. However, "[i]t is well established that a creditor can meet its initial burden of evidence production on the issue of 'cause' under § 362(d)(1) by introducing evidence of the debtor's

290 B.R. 514
40 Bankr.Ct.Dec. 263
(Cite as: 290 B.R. 514)

failure to make post-petition installment payments on a secured debt." *In re Hinchliffe, 164 B.R. 45, 48 (Bankr.E.D.Pa.1994).*

It is conceded that neither Epic Palm Springs nor the Trustee has made any payments to USA Capital. Nor does the Trustee's budget include any adequate protection payments to USA Capital from the post-petition loan. At the hearings concerning the post-petition financing, none of the parties provided any reason why adequate protection payments could not be made to USA Capital. We conclude that the lack of adequate protection payments may constitute "cause" for relief from the automatic stay. We will conduct a further evidentiary hearing on the amount of such payments.

IV. *CONCLUSION*

For the foregoing reasons, we deny BONY's cross-motion for Summary Judgment and grant USA Capital's Motion for *527 Summary Judgment. A further hearing to consider the amount of adequate protection payments which must be paid to USA Capital will be held on March 17, 2003, at 2:00 p.m.

290 B.R. 514, 40 Bankr.Ct.Dec. 263

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Westlaw.

307 B.R. 767
42 Bankr.Ct.Dec. 233
(Cite as: 307 B.R. 767)

Page 1

**H**

United States District Court,
D. Delaware.

In re EPIC CAPITAL CORPORATION, et al.,
Debtors.
The Bank of New York, as Successor Indenture
Trustee, Plaintiff/Appellant,
v.
Epic Resorts--Palm Springs Marquis Villas, LLC,
and USA Capital Diversified
Trust Deed Fund, LLC, Defendants/Appellees/Cross-
Appellants.

Bankruptcy No. 01-2458-MFW.
Adversary No. 02-03021-MFW.
Nos. CIV.A.03-360-JJF, CIV.A.03-361-JJF,
CIV.A.03-365-JJF.

March 23, 2004.

**Background:** Lender moved for relief from stay to
exercise its rights in property securing its claim, and
indenture trustee on bonds previously issued by
debtor objected based on its alleged prior interest in
property and sought to equitably subordinate lender's
interest. The Bankruptcy Court, Mary F. Walrath,
Chief Judge, 290 B.R. 514, entered summary
judgment in favor of lender and denied indenture
trustee's motion for summary judgment on ground
that lender had not engaged in any inequitable
conduct sufficient to warrant equitable subordination
of its claim. Appeal was taken.

**Holding:** The District Court, Farnan, J., held that
mere fact that, when lender advanced funds to debtor
and took security interest in substantially all of its
assets, it was aware of language in trust indenture
which debtors had executed in connection with
issuance of bonds that precluded debtors from
incurring any additional indebtedness or encumbering
their property, was insufficient to show that lender, in
advancing funds, had acted inequitably and
purposefully to injure bondholders, as required for
equitable subordination of its claim.

Affirmed.

West Headnotes

[1] Bankruptcy ☞3782
51k3782 Most Cited Cases

[1] Bankruptcy ☞3787
51k3787 Most Cited Cases

Abuse-of-discretion standard was not appropriate
standard for district court to apply in reviewing
bankruptcy court's denial of motion to equitably
subordinate creditor's claim; rather, district court
would review bankruptcy court's legal conclusions de
novo and its factual determinations for clear error.
Bankr.Code, 11 U.S.C.A. § 510(c); Fed.Rules
Bankr.Proc.Rule 8013, 11 U.S.C.A.

[2] Bankruptcy ☞3782
51k3782 Most Cited Cases

On appeal from district court's decision in its
bankruptcy appellate capacity, Court of Appeals
focuses on and reviews bankruptcy court's decision
on a de novo basis in first instance.

[3] Bankruptcy ☞2967.5
51k2967.5 Most Cited Cases

Three requirements must be met in order for claim to
be equitably subordinated: (1) claimant must have
engaged in some type of inequitable conduct; (2)
misconduct must have resulted in injury to other
creditors and conferred an unfair advantage on
claimant; and (3) equitable subordination of claim
cannot be inconsistent with provisions of Bankruptcy
Code. Bankr.Code, 11 U.S.C.A. § 510(c).

[4] Bankruptcy ☞2967.5
51k2967.5 Most Cited Cases

[4] Bankruptcy ☞2972
51k2972 Most Cited Cases

Where creditor whose claim is to be equitably
subordinated is not an insider or fiduciary of debtor,
party seeking to apply equitable subordination bears
higher burden of proof, under which he/she must
show that creditor engaged in egregious conduct,
such as fraud, spoilation or overreaching.
Bankr.Code, 11 U.S.C.A. § 510(c).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

307 B.R. 767
42 Bankr.Ct.Dec. 233
**(Cite as: 307 B.R. 767)**

Page 2

**[5] Bankruptcy** ⟲2967.5
51k2967.5 Most Cited Cases

Mere fact that, when lender advanced funds to debtor
and took security interest in substantially all of its
assets, it was aware of language in trust indenture
which debtors had executed in connection with
issuance of bonds that precluded debtors from
incurring any additional indebtedness or encumbering
their property, was insufficient to show that lender, in
advancing funds, had acted inequitably and
purposefully to injure bondholders, as required for
equitable subordination of its claim. Bankr.Code, 11
U.S.C.A. § 510(c).

**[6] Bankruptcy** ⟲2967.5
51k2967.5 Most Cited Cases

Equitable subordination of claims is extraordinary
remedy, which is applied sparingly. Bankr.Code, 11
U.S.C.A. § 510(c).

**[7] Evidence** ⟲397(2)
157k397(2) Most Cited Cases

**[7] Evidence** ⟲448
157k448 Most Cited Cases

To determine applicability of New York's parol
evidence rule, court must determine whether written
contract is integrated agreement and whether
language of written contract is clear or ambiguous; if
language is clear, then that language is applied, and
parol evidence is not admissible.

**[8] Evidence** ⟲401
157k401 Most Cited Cases

Under New York law, where trust indenture was
silent as to whether bondholders would receive
replacement collateral in event that necessary
approval could not be obtained to grant indenture
trustee a deed of trust on land administered by the
Bureau of Indian Affairs (BIA), testimony regarding
alleged oral agreement to swap collateral sought to
add term to trust indenture, and was inadmissible
under New York's parol evidence rule.

*769 David M. Fournier, Aaron A. Garber, Pepper
Hamilton, LLP, Wilmington, DE, Of Counsel: Tom
A. Howley, Mark D. Sherrill, Haynes and Boone,
LLP, Houston, TX, for The Bank of New York, as
Successor Indenture Trustee.

Teresa K.D. Currier, Klett, Rooney, Lieber &

Schorling, Wilmington, DE, Of Counsel: Rhonda L.
Payne Thomas, Mark R. Owens, Klett, Rooney,
Lieber & Schorling, Philadelphia, Pennsylvania.
Jeffrey A. Deller, Klett, Rooney, Lieber & Schorling,
Pittsburg, PA, for Appellee/Cross-Appellant, USA
Capital Diversified Trust Deed Fund, LLC.

**OPINION**

FARNAN, District Judge.

Pending before the Court is an appeal by The Bank
of New York ("BNY"), as Successor Indenture
Trustee, and a cross-appeal by USA Capital
Diversified Trust Deed Fund, LLC ("USA Capital")
from the February 27, 2003 Opinion and Order (the
"Order") of the United States Bankruptcy Court for
the District of Delaware (the "Bankruptcy Court").
In re Epic Capital Corporation, 290 B.R. 514
(Bankr.D.Del.2003). By its appeal, BNY contends
that the Bankruptcy Court erred in granting summary
judgment in favor of USA Capital and denying
summary judgment in favor of BNY on the grounds
that USA Capital's claim should be equitably
subordinated to BNY's claim. By its cross-appeal,
USA Capital contends that the Bankruptcy Court
erred to the extent that it struck the testimony of
Thomas A. Flatley. For the reasons discussed, the
Court will affirm the February 27, 2003 Order of the
Bankruptcy Court to the extent that it denied BNY's
motion for summary judgment seeking equitable
subordination of USA Capital's claim and struck the
testimony of Thomas A. Flatley. [FN1]

> FN1. The Bankruptcy Court's decision
> regarding the testimony of Mr. Flatley is not
> codified in its February 27, 2003 Order, but
> is mentioned in the body of the Opinion
> issued with the Order. Accordingly, to the
> extent that the Bankruptcy Court's Order
> granting USA Capital's motion for summary
> judgment and denying BNY's motion for
> summary judgment reflects its decision
> striking the testimony of Mr. Flatley, the
> Order will be affirmed.

**I. THE PARTIES' CONTENTIONS**

The appeal and cross-appeal arise in connection with
the Adversary Complaint filed by BNY against USA
Capital and the Debtor, Epic Resorts-Palm Springs
Marquis Villas, LLC ("Epic Palm Springs"). BNY is

307 B.R. 767
42 Bankr.Ct.Dec. 233
(Cite as: 307 B.R. 767)

Page 3

the successor indenture trustee under the Indenture dated July 8, 1998 and supplemented on January 7, 1999 and February 3, 1999. Under the terms of the Indenture, Epic Resorts, LLC ("Epic Resorts") *770 and Epic Capital Corp. ("Epic Capital") issued $130 million in Senior Secured Redeemable Notes due 2005 (the "Bonds"). The holder of the majority of the Bonds is a group of Bondholders that refer to themselves as the Highland Funds.

The Indenture also provided that Epic Resorts and Epic Capital would grant BNY a deed of trust in property known as the Palm Springs Resort. The Palm Springs Resort is on land administered by the United States Department of Interior, Bureau of Indian Affairs ("BIA"). As a result, BIA approval was required to grant BNY a deed of trust under the terms of the Indenture. However, BIA approval was never obtained for the Palm Springs Resort.

Two years after closing on the Indenture, Epic Resorts Palm Springs Marquis Villas, LLC ("Epic Palm Springs"), the subsidiary of Epic Resorts which operates the Palm Springs Resort, borrowed $11.5 million from USA Capital. As security for the loan, Epic Palm Springs granted USA Capital a security interest in substantially all of its assets including the Master Lease and time shares related to the Palm Springs Resort. The BIA approved the security interest granted to USA Capital.

Epic Palm Springs eventually defaulted on its loan with USA Capital, and Epic Resorts and Epic Capital defaulted on their obligation to make an $8.45 million interest payment to their Bondholders. As a result, the Highland Funds filed involuntary bankruptcy petitions against Epic Resorts, Epic Capital and Epic Palm Springs.

## A. The Appeal by BNY

By its appeal, BNY contends that the Bankruptcy Court erred in failing to equitably subordinate the claims of USA Capital to its own claims. BNY contends that it can establish the three part test for equitable subordination, and that the Bankruptcy Court erred in adding a fourth element requiring egregious conduct. BNY also contends that the Bankruptcy Court erred in concluding that USA Capital entered into the loan transaction with Epic Palm Springs in good faith. Specifically, BNY contends that USA Capital had actual knowledge of the contents of the Prospectus, referring to the proposed leasehold mortgage on the Palm Springs Resorts, and the Indenture, including the negative

covenants precluding Epic Resorts and Epic Capital from incurring additional indebtedness or encumbering their property, and that USA Capital ignored the provisions of these documents by recording a lien against the Palm Springs Resort. BNY contends that USA Capital's conduct was purposefully aimed to harm the contractual relationship between the Debtors and the Bondholders, and that the Bankruptcy Court should have found that USA Capital's conduct was purposeful and constituted tortious interference with the contractual rights of BNY. Thus, BNY maintains that the Bankruptcy Court erred as a matter of law in concluding that the equities did not weigh in favor of BNY.

In response, USA Capital contends, as a threshold matter, that the Bankruptcy Court's decision should be reviewed under an abuse of discretion standard, because the decision to equitably subordinate a claim falls within the sound discretion of the Bankruptcy Court. USA Capital contends that the Bankruptcy Court appropriately applied the standards for equitable subordination and points out that the test should be applied flexibly, because equitable subordination is an equitable remedy. USA Capital further contends that the Bankruptcy Court correctly rejected BNY's argument that USA Capital acted in bad faith and tortiously interfered with the Indenture. In the alternative, USA *771 Capital contends that even if BNY can establish the elements of equitable subordination, BNY cannot demonstrate a causal link between the complained of conduct and the alleged harm suffered by BNY and the Bondholders.

## B. The Cross-Appeal by USA Capital

By its cross-appeal, USA Capital contends that the Bankruptcy Court erred in striking the testimony of Thomas A. Flatley concerning an alleged oral agreement to swap the collateral under the Indenture from the Palm Springs Resort to the Daytona Property. USA Capital contends that Mr. Flatley's testimony is consistent with the terms of the Indenture, and therefore, does not violate the parol evidence rule. USA Capital also contends that Mr. Flatley's testimony is not hearsay. In this regard, USA Capital contends that Mr. Flatley's testimony reflects his understanding of the transaction, and to the extent that it pertains to statements made by the law firm of White & Case, such statements are admissions of a party opponent.

In response, BNY contends that the Bankruptcy Court correctly concluded that Mr. Flatley's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

testimony violates the parol evidence rule by seeking to add to the terms of the Indenture. BNY further points out that the Bankruptcy Court found that Mr. Flatley's testimony was not credible. In the alternative, BNY contends that Mr. Flatley's testimony is inadmissible hearsay.

## II. STANDARD OF REVIEW

[1] The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). As a threshold matter, USA Capital requests the Court to apply an abuse of discretion standard of review to the Bankruptcy Court's decision denying BNY's motion for equitable subordination, because the Bankruptcy Court reached its decision based upon the equities in this case.

[2] Based on the case law of this Circuit, the Court concludes that the abuse of discretion standard is not the appropriate standard of review. The cases cited by USA Capital involve equitable mootness, rather than equitable subordination. See Nordhoff Investments, Inc. v. Zenith Elec. Corp., 258 F.3d 180, 182-185 (3d Cir.2001); In re PWS Holding Corp., 228 F.3d 224, 228-232 (3d Cir.2000); In re Continental Airlines, 91 F.3d 553, 555-557 (3d Cir.1996). Further, in reviewing equitable subordination decisions, the Third Circuit has applied a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. See Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims, 323 F.3d 228, 232 (3d Cir.2003); Buncher Co. v. Official Committee of Unsecured Creditors of GenFarm Ltd., P'ship IV, 229 F.3d 245, 250 (3d Cir.2000). Accordingly, the Court will review the Bankruptcy Court's legal conclusions under the de novo standard of review and its factual determinations under the clearly erroneous standard of review. The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court's decision on a de novo basis in the first instance. In re Telegroup, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

A. Whether The Bankruptcy Court Erred In Denying BNY's Motion For Summary Judgment Seeking Equitable Subordination Of USA Capital's Claim

[3] Pursuant to Section 510(c) of the Bankruptcy Code, the Bankruptcy Court *772 may, after notice and a hearing, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim under the principles of equitable subordination. 11 U.S.C. § 510(c). To apply equitable subordination, three requirements must be met: (1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to other creditors and conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code. Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims, 160 F.3d 982, 986 (3d Cir.1998) (citing In the Matter of Mobile Steel Co., 563 F.2d 692, 699-700 (5th Cir.1977)).

[4] By its appeal, BNY contends that the Bankruptcy Court erroneously applied this test by requiring BNY to show egregious conduct. However, the applicable case law indicates that where, as here, the respondent is not an insider or fiduciary of the company, the party seeking to apply equitable subordination bears a higher burden of proof in which he or she must show that the respondent engaged in egregious conduct such as fraud, spoilation or overreaching. See In re Baker & Getty Financial Services, Inc., 974 F.2d 712, 718 (6th Cir.1992) (quoting In the Matter of Teltronics Serv., Inc., 29 B.R. 139, 169 (Bankr.E.D.N.Y.1983)); In re 604 Columbus Avenue Realty Trust, 968 F.2d 1332 (1st Cir.1992); In re M. Paolella & Sons, Inc., 161 B.R. 107, 117-119 (E.D.Pa.1993), aff'd 37 F.3d 1487 (3d Cir.1994); In the Matter of Century Glove, Inc., 151 B.R. 327, 335 (Bankr.D.Del.1993). The Bankruptcy Court recognized this principle in its decision and correctly applied a heightened standard of review to BNY's claim. Accordingly, the Court cannot conclude that the Bankruptcy Court erred in its decision.

[5] BNY next contends that the Bankruptcy Court erred in failing to conclude that the facts of this case warrant equitable subordination. BNY contends that USA Capital was on actual notice, or at the least, inquiry notice, of the Prospectus and the negative covenants in the Indenture, such that USA Capital should be said to have acted inequitably and purposefully to injure the Bondholders by entering into the loan agreement with Epic Palm Springs. The Bankruptcy Court thoroughly analyzed the facts of this case and found that despite USA Capital's actual knowledge of the restrictive covenants in the Indenture, USA Capital did not intend to harm any relationship between the Debtors and the Bondholders, and its conduct did not rise to the level required to equitably subordinate the claim of a non-

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

insider. As the Bankruptcy Court pointed out, Epic Palm Springs represented and warranted to USA Capital that the secured loan transaction would not result in a breach of the Indenture, USA Capital obtained an opinion letter from Epic Palm Spring's counsel confirming this point, and USA Capital confirmed that no other liens existed on the property. The information USA Capital obtained is consistent with the Prospectus, which expressly states that if approval from the BIA is not obtained, "the subsidiary guaranty of Epic Resorts Palm Springs Marquis Villas, LLC will not be secured by any mortgage on such leasehold." (Exhibit USA-13 at 22, Designation 19, Tab 15). In light of these circumstances, the Court agrees with the Bankruptcy Court's conclusions that the equitable subordination of USA Capital's lien is not warranted in this case.

[6] In sum, the Court concludes that the Bankruptcy Court's factual findings are supported by the record and are not *773 clearly erroneous. Further, the Court concludes that the Bankruptcy Court correctly concluded as a matter of law that the facts and equities in this case do not warrant application of the doctrine of equitable subordination. As the Bankruptcy Court recognized, equitable subordination is an extraordinary remedy which is applied sparingly. *See e.g. In re Fabricators, Inc.,* 926 F.2d 1458, 1464 (5th Cir.1991); *In re After Six, Inc.,* 177 B.R. 219, 232 (Bankr.E.D.Pa.1995); *In re Tinsley & Groom,* 49 B.R. 85, 90 (Bankr.W.D.Ky.1984). The Bankruptcy Court's decision is consistent with this principle and with the case law requiring a more egregious level of inequitable conduct to warrant the equitable subordination of a non-insider's claim. Accordingly, the Court will affirm the Bankruptcy Court's Order denying BNY's motion for summary judgment to the extent that BNY sought equitable subordination of USA Capital's claim.

B. *Whether The Bankruptcy Court Erred In Striking The Testimony Of Thomas Flatley*

[7] The parties agree that New York law applies to the question of whether the Bankruptcy Court erred in striking the testimony of Mr. Flatley. The parol evidence rule provides that "if the parties have reduced their agreement to writing, no evidence of any prior oral or written agreement may be offered to contradict, vary, add to or subtract from the terms of the writing." *In re WorldCorp, Inc.,* 252 B.R. 890, 895 (Bankr.D.Del.2000). To determine the applicability of the parol evidence rule, the Court must: (1) determine whether the written contract is

an integrated agreement; (2) determine whether the language of the written contract is clear or ambiguous; and (3) if the language is clear, that language is applied and the parol evidence is not admissible. *Municipal Capital Appreciation Partners I, L.P. v. Page,* 181 F.Supp.2d 379, 392 (S.D.N.Y.2002).

[8] USA Capital contends that Mr. Flatley's testimony is not precluded by the parol evidence rule, because it does not alter, vary or contradict the substance of the Indenture. The Court disagrees. Mr. Flatley's testimony is evidence of an alleged oral agreement to swap the Bondholder's collateral so that the Bondholders would have a lien in the Daytona Property rather than a lien in the Palm Springs Resort. The Indenture, however, is silent as to whether the Bondholders would receive replacement collateral in the event that the BIA did not approve the proposed leasehold in the Palm Springs Resort. Thus, in the Court's view, Mr. Flatley's testimony attempts to add a term to the Indenture, and therefore, the Court concludes that the Bankruptcy Court correctly concluded that his testimony was precluded by the parol evidence rule. Accordingly, the decision of the Bankruptcy Court to strike the testimony of Mr. Flatley will be affirmed.

CONCLUSION

For the reasons discussed, the Court will affirm the February 27, 2003 Order of the Bankruptcy Court denying BNY's motion for summary judgment seeking equitable subordination of USA Capital's claim and striking the testimony of Thomas A. Flatley.

An appropriate Order will be entered.

*FINAL ORDER*

At Wilmington, this 23rd day of March 2004, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that the February 27, 2003 Order of the Bankruptcy Court denying BNY's motion for summary judgment seeking equitable subordination *774 of USA Capital's claim and striking the testimony of Thomas A. Flatley is AFFIRMED.

307 B.R. 767, 42 Bankr.Ct.Dec. 233

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT L

# District Case Inquiry - Minutes

| Home | | |
|---|---|---|

| | | |
|---|---|---|
| Summary | **Case** 02-A-453232-C | **Status** INACTIVE |
| Case Activity | **Plaintiff** Prospect High Income Fund | **Attorney** Olson, James R. |
| Calendar | **Defendant** USA Capital Diversified Trust Deed | **Attorney** Zmalla, Anthony A. |
| Continuance | Fund | |
| Minutes | **Judge** Herndon, Douglas W | **Dept.** 3 |
| Parties | | |
| Judgments | | |

**District Case**
Party Search
Corp. Search
Atty. Search
Bar# Search
ID Search

Calendar Day
Holidays

Help
Comments &
Feedback
Legal Notice

| **Event** 04/05/2005 at 09:00 AM | | DEFT'S MOTION FOR SUMMARY JUDGMENT /15 | |
|---|---|---|---|

**Heard By** Herndon, Douglas W

**Officers** Carol Green, Court Clerk
        Yvonne Valentin, Reporter/Recorder

| **Parties** | 0001 - P1 | Prospect High Income Fund | No |
|---|---|---|---|
| | 005692 | Kohl, James A. | Yes |
| | 999197 | Lackey, Paul B. | Yes |
| | 0002 - D1 | USA Capital Diversified Trust Deed Fund | No |
| | 007612 | Boschee, Brian W. | Yes |
| | 0003 - P | ML CBO IV Cayman Ltd | No |
| | 0004 - P | Cayman Island LLC | No |
| | 0005 - P | Pamco Cayman Ltd | No |
| | 0006 - P | Pam Capital Funding LP | No |
| | 0007 - P | Highland Crusader Fund Ltd | No |
| | 0008 - P | PCMG Trading Partners XXIII LP | No |
| | 0009 - D | John Rodgers Burk | No |

Also present: Spencer Gunnerson, Esq. appearing for Mr. Taylor on behalf of
Defendnat John Rodgers Burk.

Argument by Mr. Boschee that these parties have litigated the same issues
and have received a final ruling in Delaware. Court stated that Delaware
determined no interference by USA as to Plaintiff's relationship with Epic
and no intent to interfere with that relationship. Further, this Court
previously recognized that issues were the same in this case and Delaware
case and this action was stayed pending final resolution in Delaware. Court
inquired as to the standard that the Delaware Court was looking at and if it
was different from here. Mr. Boschee responded that it was not and the same
five elements as to interference were determined by the Delaware Court.
Argument by Mr. Kohl as to lien action and different standard being applied
in Delaware. Mr. Kohl stated history of cases to the Court, and argued as
to merits of motion, specifically as to egregious conduct and aiding and
abetting claims. Argument in response by Mr. Boschee. Court stated that it
thinks Delaware standards were somewhat different, noting also that in a
previous hearing Judge Parraguirre stated that this is a complicated
scenario and not appropriate for summary judgment. Court agrees, whether
talking about Burke or Capital. COURT ORDERED, motion DENIED. Further, as

to request to Amend Complaint, Court stated it will not address at this time
and counsel should file appropriate motion.

**Due to time restraints and individual case loads, the above case record may not reflect all
information to date.**

Top Of Page

**Generated by BLACKSTONE ... the Judicial System
© 2006 All Rights Reserved, CMC Software**

# EXHIBIT M

COPY

**ORDD**
JAMES R. OLSON, ESQ.
State Bar No. 000116
JAMES A. KOHL
Nevada Bar No. 005692
RAWLINGS, OLSON, CANNON
GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, NV 89129
(702) 384-4012

PAUL B. LACKEY
Texas Bar No. 00791061
SCOTT S. HERSHMAN
Texas Bar No. 00793205
MICHAEL P. AIGEN
Texas Bar No. 24012196
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Avenue, #700
Dallas, Texas 75219
(214) 560-2201

Attorneys for Plaintiffs

F I L E D

SEP 1 3 26 PM '04

[signature]
CLERK

## DISTRICT COURT

## CLARK COUNTY, NEVADA

\*\*\*\*

Prospect High Income Fund, a Maryland
Corporation, ML CBO IV(Cayman) Ltd., a
Cayman Island, LLC, Pamco Cayman, Ltd., a
Cayman Island, LLC, Pam Capital Funding, L.P.,
a Cayman Island, LLC, Highland Crusader
Fund, Ltd., a Bermuda Mutual Fund Company,
and PCMG Trading Partners XXIII, L.P., a
Delaware Limited Partnership

        Plaintiffs,

    vs.

USA CAPITAL DIVERSIFIED TRUST DEED
FUND, LLC, a Nevada Limited Liability
Company and JOHN RODGERS
BURK a California Law Corporation

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: A453232
Dept. No.: III

## ORDER DENYING DEFENDANT JOHN ROGERS BURK'S MOTION FOR SUMMARY JUDGMENT

Defendant John Rogers Burk's Motion for Summary Judgment having come on for hearing

on the 30th day of August, 2004, John Rogers Burk having appeared by and through Ryan West, Esq.

RAWLINGS, OLSON, CANNON
GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   TELECOPIER (702) 385-6701

1     of Alverson, Taylor, Mortensen, Nelson & Sanders; Defendant USA Capital by and through Brian

2     Boschee, Esq. of Santoro, Driggs, Walch, Kearney, Johnson & Thompson; and Plaintiff having

3     appeared by and through James A. Kohl, Esq. of Rawlings, Olson, Cannon, Gormley &

4     Desruisseaux and Paul B. Lackey, Lackey Hershman, L.L.P.; the Court having considered the

5     papers and pleadings on file herein, together with the oral argument of counsel;

6         IT IS HEREBY ORDERED that Defendant John Rogers Burk's Motion for Summary

7     Judgment is denied with prejudice.

8         DATED this 9th day of September, 2004.

9

10                          BY THE COURT:

11

12                          RON PARRAGUIRRE

                              _____

13                          JUDGE RON PARRAGUIRRE

                         District Court Judge

14     SUBMITTED BY:

15

16     _____

      JAMES R. OLSON, ESQ.

      State Bar No. 000116

17     JAMES A. KOHL

      Nevada Bar No. 005692

18     RAWLINGS, OLSON, CANNON

      GORMLEY & DESRUISSEAUX

19     9950 West Cheyenne Avenue

      Las Vegas, NV 89129

20     (702) 384-4012

21     PAUL B. LACKEY

      Texas Bar No. 00791061

22     SCOTT S. HERSHMAN

      Texas Bar No. 00793205

23     MICHAEL P. AIGEN

      Texas Bar No. 24012196

24     LACKEY HERSHMAN, L.L.P.

      3102 Oak Lawn Avenue, #700

25     Dallas, Texas 75219

      (214) 560-2201

26

      Attorneys for Plaintiffs

27

28

Law Offices of
RAWLINGS, OLSON, CANNON
GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-0012    TELECOPIER (702) 383-0701

**CERTIFICATE OF SERVICE**

I hereby certify that on the $30$ day of August, 2004, I caused a true and correct copy of the foregoing **proposed** ORDER DENYING DEFENDANT JOHN ROGERS BURK'S MOTION FOR SUMMARY JUDGMENT, to be transmitted via first class, U.S. Mail, postage prepaid to the following, addressed as follows:

Eric Taylor, Esq.
Ryan West, Esq.
ALVERSON, TAYLOR, MORTENSEN,
    NELSON & SANDERS
7401 West Charleston
Las Vegas, Nevada 89117

Attorneys for Defendant
John Rogers Burk

Anthony A. Zmaila, Esq.
Brian W. Boschee, Esq.
SANTORO, DRIGGS, WALCH,
    KEARNEY, JOHNSON & THOMPSON
400 South Fourth, Third Floor
Las Vegas, Nevada 89010

Attorneys for Defendant
USA Capital Diversified Trust
Deed Fund, LLC

An Employee of Rawlings, Olson, Cannon,
Gormley & Desruisseaux

```
 1    NEOJ
      Eric Taylor, Esq.
 2    Nevada Bar No. 2275
      Ryan West, Esq.
 3    Nevada Bar No. 8721
      ALVERSON, TAYLOR, MORTENSEN,
 4     NELSON & SANDERS
      7401 West Charleston
 5    Las Vegas, Nevada 89117
      (702) 384-7000
 6    Attorneys for Defendant
      JOHN ROGERS BURK
 7

 8

 9                      DISTRICT COURT

10               CLARK COUNTY, NEVADA

11    PROSPECT HIGH INCOME FUND, a           )
      Maryland Corporation; ML CBO IV        )
12    (CAYMAN), LTD., a Cayman Island LLC.;  )
      PAMCO CAYMAN, LTD., a Cayman           )    CASE No. A453232
13    Island LLC.; PAM CAPITAL FUNDING,      )    DEPT. III
      L.P., a Cayman Island LLC.; HIGHLAND   )
14    CRUSADER FUND, LTD., a Bermuda         )
      Mutual Fund Company; and PCMG          )
15    TRADING PARTNERS XXIII, L.P., a        )
      Delaware Limited Partnership,          )
16                                           )
                     Plaintiffs,             )
17                                           )
                                             )
18        vs.                                )
                                             )
19    USA CAPITAL DIVERSIFIED TRUST          )
      DEED FUND, LLC., a Nevada Limited      )
20    Liability Company; and JOHN RODGERS    )
      BURK, a California Law Corporation,    )
21                                           )
                     Defendants.             )
                                             )
22    ───────────────────────────────────────

23                  NOTICE OF ENTRY OF ORDER

24        PLEASE TAKE NOTICE that on the 1st day of September, 2004,

25    an Order granting Defendant John Rogers Burk's Motion to Lift

26    .  .  .  .

27    .  .  .  .

28    .  .  .  .
```

1  Stay was entered in the above-entitled matter. A true and correct

2  copy of the same is attached hereto.

3      DATED this  3rd  day of September, 2004.

4                              ALVERSON, TAYLOR, MORTENSEN,
                                 NELSON & SANDERS.
5

6                          By
                                ERIC TAYLOR, ESQ.
7                              Nevada Bar No. 2275
                               Ryan West, Esq.
8                              Nevada Bar No. 8721
                               7401 West Charleston
9                              Las Vegas, Nevada 89117
                               (702) 384-7000
10                             Attorneys for Defendant JOHN
                               ROGERS BURK
11

                    CERTIFICATE OF SERVICE BY FACSIMILE TRANSMISSION
12

13      I hereby certify that on the  3d  day of August, 2004,

14  service of the foregoing was made by facsimile transmission only,

15  pursuant to the amendment to the Eighth Judicial District Court

16  Rule 7.26, this date by faxing a true and correct copy of the

17  same to each party addressed as follows:

18  Fax: 383-0701                    Fax: 791-1912
    James R. Olson, Esq.            Anthony A. Zmaila, Esq.
19  James A. Kohl, Esq.             Brian W. Boschee, Esq.
    RAWLINGS, OLSON, CANNON,        SANTORO, DRIGGS, WALCH,
20   GORMLEY & DESRUISSEAUX          KEARNEY, JOHNSON & THOMPSON
    9950 West Cheyenne Avenue       400 South Fourth, Third Floor
21  Las Vegas, Nevada  89129        Las Vegas, Nevada 89101
    Attorneys for Plaintiffs        Attorneys for Defendant USA
22                                  CAPITAL  DIVERSIFIED TRUST
                                    DEED FUND, LLC
23

24

25

26                              Employee of ALVERSON, TAYLOR,
                                MORTENSEN, NELSON & SANDERS
27

28  H:\TAYLORS\13500\13590\pleading\ancj.mot2llRstay.wpd

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117
(702) 384-7000

2

1 | **ORDR**
ALVERSON, TAYLOR, MORTENSEN,
2 | NELSON & SANDERS
Eric Taylor
3 | Nevada Bar No. 2275
Ryan West
4 | Nevada Bar No. 8721
7401 West Charleston
5 | Las Vegas, Nevada 89117
(702) 384-7000
6 | Attorneys for Defendant
JOHN ROGERS BURK
7

FILED

SEP 1 3 26 PM '04

*(signature)*
CLERK

8

9 | DISTRICT COURT

10 | CLARK COUNTY, NEVADA

11 | PROSPECT HIGH INCOME FUND, a
Maryland Corporqation; ML CBO IV
12 | (CAYMAN), LTD., a Cayman Island LLC.;
PAMCO CAYMAN, LTD., a Cayman
13 | Island LLC.; PAM CAPITAL FUNDING,
L.P., a Cayman Island LLC.; HIGHLAND
14 | CRUSADER FUND, LTD., a Bermuda
Mutual Fund Company; and PCMG
15 | TRADING PARTNERS XXIII, L.P., a
Delaware Limited Partnership,
16
17 | Plaintiffs,
18 | vs.
19 | USA CAPITAL DIVERSIFIED TRUST
DEED FUND, LLC., a Nevada Limited
20 | Liability Company; and JOHN RODGERS
BURK, a California Law Corporation,
21 | Defendants.
22

CASE No. A453232
DEPT. III

23 | **ORDER**

24 | This matter, having been considered by this Court, and there

25 | being no opposition filed as required by EDCR 2.20, the Court

26 | hereby orders as follows:

27 | / / / /

28 | / / / /

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117
(702) 384-7000

1    IT IS HEREBY ORDERED that Defendant Burk's Motion to Lift

2  Stay is Granted.

3         DATED this ___15th___ day of September, 2004.

4                                          RON PARRAGUIRRE

5  _____
                                    DISTRICT COURT JUDGE

6

7  Respectfully Submitted By:

8  ALVERSON, TAYLOR, MORTENSEN,
   NELSON & SANDERS

9

10

11  ALVERSON, TAYLOR, MORTENSEN,
    NELSON & SANDERS

12  Eric Taylor
    Nevada Bar No. 2275

13  Ryan West
    Nevada Bar No. 8721

14  7401 West Charleston
    Las Vegas, Nevada 89117

15  Attorneys for Defendant
    JOHN ROGERS BURK

16

17  I:\TAYLORE\13500\13596\pleading\Order - M2Lift Stay.wpd

18

19

20

21

22

23

24

25

26

27

28
                                      2