ELECTRONICALLY FILED
August 31, 2006

1   STUTMAN, TREISTER & GLATT, P.C.    SHEA & CARLYON, LTD.
   FRANK A. MEROLA    JAMES PATRICK SHEA
2   (CA State Bar No. 136934)    (Nevada State Bar No. 000405)
   EVE H. KARASIK    CANDACE C. CARLYON
3   (CA State Bar No. 155356)    (Nevada State Bar No. 002666)
   ANDREW M. PARLEN    SHLOMO S. SHERMAN
4   (CA State Bar No. 230429), Members of    (Nevada State Bar No. 009688)
   1901 Avenue of the Stars, 12th Floor    233 South Fourth Street, Second Floor
5   Los Angeles, California 90067    Las Vegas, Nevada 89101
   Telephone: (310) 228-5600    Telephone: (702) 471-7432
6   Facsimile: (310) 228-5788    Facsimile: (702) 471-7435
   Email:    fmerola@stutman.com    Email:    jshea@sheacarlyon.com
7       ekarasik@stutman.com       ccarlyon@sheacarlyon.com
      aparlen@stutman.com       ssherman@sheacarlyon.com
8

9   Counsel for the Official Committee Of
   Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

10

**UNITED STATES BANKRUPTCY COURT**

11

**DISTRICT OF NEVADA**

12

| | |
|---|---|
| In re: <br> USA COMMERCIAL MORTGAGE COMPANY, <br>      Debtor. | BK-S-06-10725-LBR <br> Chapter 11 |
| In re: <br> USA CAPITAL REALTY ADVISORS, LLC, <br>      Debtor. | BK-S-06-10726-LBR <br> Chapter 11 |
| In re: <br> USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, <br>      Debtor. | BK-S-06-10727-LBR <br> Chapter 11 |
| In re: <br> USA CAPITAL FIRST TRUST DEED FUND, LLC, <br>      Debtor. | BK-S-06-10728-LBR <br> Chapter 11 |
| In re: <br> USA SECURITIES, LLC, <br>      Debtor. | BK-S-06-10729-LBR <br> Chapter 11 |
| Affects <br> ☐ All Debtors <br> ☐ USA Commercial Mortgage Co. <br> ☐ USA Securities, LLC <br> ☐ USA Capital Realty Advisors, LLC <br> ☐ USA Capital Diversified Trust Deed <br> ☒ USA First Trust Deed Fund, LLC | Date:   September 28, 2006 <br> Time:   9:30 a.m. <br> Place:   Courtroom #1 |

26

**FIRST INTERIM APPLICATION OF STUTMAN, TREISTER & GLATT P.C. AS COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES FOR THE PERIOD FROM MAY 10, 2006 THROUGH JULY 31, 2006 (AFFECTS USA CAPITAL FIRST TRUST DEED FUND, LLC)**

402077v5

1    Stutman, Treister & Glatt Professional Corporation ("ST&G"), counsel for the

2    Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the

3    "FTD Fund Committee") in the above captioned chapter 11 cases (the "Chapter 11 Cases"), hereby

4    submits its First Interim Fee Application (the "Application"). By this Application, ST&G requests

5    approval of an interim award of $563,338.50 in compensation for services rendered and

6    reimbursement of $32,336.51 for costs incurred during ST&G's representation of the FTD Fund

7    Committee during the period from May 10, 2006 through July 31, 2006 (the "First Interim

8    Period").

9    This Application is made pursuant to sections 330 and 331 of Title 11 of the

10    United States Code ("Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy

11    Procedure ("Bankruptcy Rule"), Rule 2016 of the Local Rules of Bankruptcy Practice, and the

12    United States Trustee Guidelines for Reviewing Applications for Compensation and

13    Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "UST Guidelines") and is based

14    upon the points and authorities which follow, the exhibits annexed hereto, the pleadings, papers

15    or other matters contained in the Court's file, judicial notice of which is respectfully requested,

16    and any oral argument of counsel to be presented at the time of the hearing on this Application.

17

18    Respectfully submitted:

19

20    Dated: August 31, 2006

21    Andrew M. Parlen, Esq.
      Stutman, Treister & Glatt
22    Professional Corporation
      Counsel to the Official Committee of Equity
23    Security Holders of USA Capital First Trust Deed
      Fund, LLC

24

25

26

27

28

402077v5                                    2

# I.    SUMMARY OF APPLICATION

## A.    Summary of Fees Incurred from May 10, 2006 through July 31, 2006

| Name | Position | Hours Billed this Period | Rate | Total for Period |
|---|---|---:|---|---:|
| Jeffrey H. Davidson | Shareholder | 61.1 | $650.00 | $39,715.00 |
| George C. Webster | Shareholder | 4.0 | $640.00 | $2,560.00 |
| Frank A. Merola | Shareholder | 105.7 | $575.00 | $60,777.50 |
| Ronald L. Fein | Shareholder | 0.8 | $725.00 | $580.00 |
| Eve H. Karasik | Shareholder | 436.0 | $550.00 | $238,800.00 |
| George M. Treister | Of Counsel | 0.7 | $725.00 | $507.50 |
| Christine M. Pajak | Associate | 353.3 | $350.00 | $123,655.00 |
| Gina M. Najolia | Associate | 16.5 | $325.00 | $5,362.50 |
| Andrew M. Parlen | Associate | 250.2 | $295.00 | $73,809.00 |
| Alexander F. Porter | Law Clerk | 2.3 | $150.00 | $345.00 |
| David M. Telfer | Law Clerk | 1.3 | $150.00 | $195.00 |
| Kendra A. Johnson | Paralegal | 70.2 | $180.00 | $12,636.00 |
| Jeff M. Fleiss | Paralegal | 0.1 | $180.00 | $18.00 |
| Case Clerk | Case Clerk | 56.3 | $60.00 | $3,378.00 |

| Total Hours | Total Fees | Blended Rate (Including Paraprofessional Time) |
|---|---|---|
| 1,358.5 | $563,338.50 | $414.68 |

| Total Hours | Total Fees | Blended Rate (Excluding Paraprofessional Time) |
|---|---|---|
| 1,228.3 | $546,766.50 | $445.14 |

## B.    Summary of Expenses Incurred from May 10, 2006 through July 31, 2006

| Expense | Rate | Total |
|---|---|---:|
| Air Fare | Actual costs (coach class) | $2,292.70 |
| Air Freight | Actual costs | $179.17 |
| Airport Transportation | Actual costs | $681.20 |
| Business Meals | Actual costs | $183.19 |
| Car Rental | Actual costs | $359.14 |
| Computer Research Expense | Actual costs | $2,253.95 |
| Copy Production | $0.25 per page | $19,910.50 |
| Document Processing | Actual cost | $456.17 |
| Fax In/Fax Out | $0.50 per page | $86.00 |
| Hotel | Actual cost | $2,273.17 |
| Long Distance Telephone | Actual cost | $2,011.07 |
| Parking Expense | Actual cost | $157.32 |
| Parking Validation | Actual cost | $48.00 |
| Postage | Actual cost | $1,347.93 |
| Taxi | Actual cost | $55.00 |
| UCC Search | Actual cost | $42.00 |
| **Total** | | **$32,336.51** |

1

## POINTS AND AUTHORITIES

2

### II.    STATEMENT OF FACTS

3

**C.    General Background**

4      1.      On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage

5  Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty

6  Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC (the "DTD

7  Fund"), and USA Capital First Trust Deed Fund, LLC (the "FTD Fund" and collectively with

8  USA Mortgage, USA Securities, USA Realty, and the DTD Fund, the "Debtors") filed

9  voluntary petitions for relief under chapter 11 the Bankruptcy Code.

10      2.      Thereafter, on May 9, 2006, this Court entered its "Order Regarding

11  Joint Administration Without Substantive Consolidation" [docket no. 184] whereby the Court

12  ordered that the foregoing Chapter 11 Cases be jointly administered under the name of USA

13  Commercial Mortgage Company, bankruptcy case number BK-S-06-10725-LBR.

14      3.      No trustee or examiner has been appointed in the Chapter 11 Cases.

15  Rather, the Debtors continue to operate their businesses as debtors in possession pursuant to

16  sections 1107 and 1108 of the Bankruptcy Code.

17      4.      On May 10, 2006, the Office of the United States Trustee (the

18  "U.S. Trustee") appointed four separate committees in these Chapter 11 Cases: (i) the FTD

19  Fund Committee; (ii) the Official Committee of Holders of Executory Contract Rights

20  through USA Commercial Mortgage Company (the "Direct Lender Committee"); (iii) the

21  Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund,

22  LLC (the "DTD Fund Committee"); and (iv) the Official Unsecured Creditors' Committee for

23  USA Commercial Mortgage Company (the "Unsecured Creditors' Committee").[1]

24

25

26

27

28

[1] The FTD Fund Committee, the DTD Fund Committee, the Direct Lender Committee, and the Unsecured Creditors' Committee are collectively referred to herein as the "Committees." When referring to the Committees aside from the FTD Fund Committee, this Application uses the term "Other Committees." When referring to the Committees aside from the Unsecured Creditors Committee, this Application uses the term "Investor Committees."

5.      The FTD Fund Committee represents the interests of those persons who invested in the FTD Fund (the "FTD Fund Members"), while the DTD Fund Committee represents the interests of those persons who invested in the DTD Fund. The Direct Lender Committee represents approximately three thousand six hundred (3,600) parties-in-interest (the "Direct Lenders") that have individually lent monies directly to various borrowers, for which USACM is the loan servicer. Finally, the Unsecured Creditors' Committee represents the interests of those individuals who assert general unsecured claims against USACM.

6.      On May 18, 2006, the Investor Committees filed the "Application by the Official Investor Committees to Employ Stutman, Treister & Glatt P.C. as Counsel for Matters of Common Interest" (the "ST&G Employment Application") [Docket no. 280]. The ST&G Employment Application requested that the Court approve the employment of ST&G as counsel to the Investor Committees in matters of common interest *nunc pro tunc* as of May 10, 2006, or, in the alternative, that the Court approve the employment of ST&G as counsel to the FTD Fund Committee *nunc pro tunc* as of May 10, 2006.

7.      In light of potential conflicts of interest among the Investor Committees, the ST&G Employment Application was amended on May 26, 2006, which amendment requested that the Court authorize the FTD Fund Committee to employ ST&G as special bankruptcy counsel *nunc pro tunc* as of May 10, 2006 with compensation at the expense of the FTD Fund estate in such amount as the Court may allow upon notice and hearing [Docket no. 397]. By order dated June 19, 2006, the Court approved employment of ST&G as special bankruptcy counsel to the FTD Fund Committee effective May 10, 2006 under the terms set forth in the ST&G Employment Application, as amended [Docket no. 700].

8.      This Application contains the total amount owed to ST&G for services rendered and for reimbursement of expenses incurred as special bankruptcy counsel to the FTD Fund Committee for the First Interim Period. This is ST&G's first interim application for allowance and payment of compensation for professional services rendered and for reimbursement of actual and necessary costs incurred on behalf of the FTD Fund Committee

1    pursuant to 11 U.S.C. § 1103.[2]

2         9.    ST&G requests the allowance of $563,338.50[3] as interim compensation

3    for services rendered for the First Interim Period, together with interim costs in the sum of

4    $32,336.51, for a total interim award of $595,675.01.  ST&G requests that the FTD Fund pay

5    ST&G 100% of the unpaid balance of these fees and expenses.

6         10.   ST&G makes this Application pursuant to 11 U.S.C. §§ 330, 331 and

7    Bankruptcy Rule 2016(a).  This Court has jurisdiction to consider this Application pursuant to 28

8    U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper in this district pursuant to 28 U.S.C.

9    §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

10   **D.    Professional Services Rendered**

11        11.   These are complex chapter 11 cases, and the FTD Fund Committee has

12   been intimately involved in the proceedings thus far.  In order to avoid duplication, ST&G refers

13   the Court and parties in interest reviewing this Application to the case summary prepared by

14   Shea & Carlyon, Ltd. ("S&C"), the FTD Fund Committee's special (Nevada) counsel, which is

15   included in S&C's first interim fee application (the "S&C Application") filed on August 25, 2006

16   [Docket no. 1193].  As set forth in the S&C Application and as reflected in the task summaries

17   below, ST&G, along with S&C, has worked zealously to assist the FTD Fund Committee in

18   fulfilling its fiduciary duties in these cases, to respond promptly and effectively to events relating

19   to the FTD Fund's chapter 11 case, and to investigate potential avenues to achieving the highest

20   possible recovery for FTD Fund Members.  ST&G, along with S&C, has also worked diligently

21

22   [2] Pursuant to the "Administrative Order Establishing Procedures for Interim Compensation and

23   Reimbursement of Expenses of Professionals" (the "Interim Compensation Order"), ST&G's
     first fee statement (covering the period from May 10, 2006 through July 31, 2006) was

24   circulated on August 25, 2006 (the "Fee Statement").  Reviewing Parties (as defined in the
     Interim Compensation Order) have until September 15, 2006 to review and, if appropriate,

25   object to ST&G's Fee Statement.  ST&G has not yet been paid any fees or reimbursed for any

26   expenses on account of services rendered and expenses incurred as special bankruptcy counsel
     to the FTD Fund Committee.

27

28   [3] ST&G is seeking an additional $690.00 in fees for services rendered during the First Interim
     Period that were not previously included in ST&G's Fee Statement.

1    to avoid unnecessary duplicative efforts.

2            12.    Set forth below is a chart that summarizes the fees that ST&G has incurred

3    in providing services to the FTD Fund Committee during the First Interim Period and is

4    organized by the categories established by the UST Guidelines for billing in these Chapter 11

5    cases.

| Billing Category | Amount |
|---|---|
| Case Administration – 010 | $109,866.00 |
| Meetings and Communications with Creditors – 020 | $169,906.00 |
| General Business Operations – 030 | $7,595.00 |
| Fee/Employment Applications – 040 | $33,024.50 |
| Fee/Employment Objections – 050 | $16,452.00 |
| Financing – 060 | $33,668.50 |
| Claims Administration & Objections – 070 | $11,685.50 |
| Asset Analysis and Recovery – 080 | $51,367.00 |
| Asset Disposition – 090 | $51,246.00 |
| Plan/Disclosure Statement – 100 | $45,388.00 |
| Employee Benefits/Plans – 110 | $0.00 |
| Litigation - 120 | $29,212.00 |
| Relief from Stay Proceedings – 125 | $3,928.00 |
| **Total** | **$563,338.50** |

Detailed statements of professional services rendered and reimbursable expenses incurred for the

First Interim Period are attached respectively as Exhibits "1" and "2" hereto and incorporated

herein by reference.[4]  These statements are organized by the categories set forth below, and a

---

[4]    Some of the services rendered could reasonably be categorized in more than one of the billing categories.  Consequently, different attorneys sometimes billed their services on the same matter in different categories.  In no event were any time entries for a single task by one attorney duplicated.

1    narrative description of each such category as it relates to the entire First Interim Period follows:

2         **1.**      **Case Administration – 010**

3         13.     The "Case Administration" category includes services rendered in

4 connection with organization, coordination, and compliance activities. These activities include

5 the planning and coordination among the FTD Fund Committee and its professionals,

6 communications between ST&G and other parties in interest, and internal communications

7 between professionals, regarding the status of the numerous matters encountered in these cases,

8 the maintenance of administrative information and files, the rules governing the FTD Fund

9 Committee, the prevention of conflicts of interest, and other miscellaneous necessary tasks that

10 do not clearly fit within the scope of other activity categories.

11         14.     ST&G has diligently monitored the progress of the Chapter 11 Cases and

12 has kept the FTD Fund Committee organized and well-prepared throughout the First Interim

13 Period. In so doing, ST&G has carefully monitored the dockets of the Chapter 11 Cases and

14 maintained an internal case calendar and a comprehensive task list. ST&G also conferred

15 frequently with S&C and Debtors' counsel regarding the status of pending matters.

16         15.     ST&G was also responsible for serving nearly all of the pleadings filed by

17 the FTD Fund Committee, and, as such, spent time in this category preparing for and executing

18 service of dozens of pleadings and updating the Master Service List per numerous requests for

19 special notice. Moreover, ST&G has spent time in this category working with S&C to

20 coordinate the filing of pleadings that ST&G has drafted on behalf of the FTD Fund Committee.

21         16.     Additionally, members of the ST&G team periodically conducted internal

22 strategy or status conferences, as needed, to coordinate their efforts, update others on the status

23 of pending matters and allocate responsibilities. The frequency of such internal conferences

24 varied depending on the fluctuating demands of the Chapter 11 Cases. Because different matters

25 that arose in the Chapter 11 Cases were assigned to different ST&G attorneys, status conferences

26 were needed to ensure that all tasks were properly assigned and that no duplication of effort

27 occurred. In addition, status and strategy conferences enabled junior attorneys (with low billing

28

402077v5                           8

1  rates) to coordinate with senior attorneys (with higher billing rates) to ensure that all attorneys

2  were performing services appropriate to their respective billing rates.

3          17.    Some of the more time intensive tasks in this category also included

4  assisting in the analysis of the Debtors' schedules and monthly operating reports and analyzing

5  comprehensive memos drafted by S&C pertaining thereto. Another time intensive task within

6  this category is ST&G's participation in weekly conference calls hosted by the Debtors.

7          18.    Furthermore, ST&G spent substantial time preparing for, traveling to, and

8  appearing at omnibus hearings.[5] Members of ST&G prepared for, and appeared at, omnibus

9  hearings typically twice each month. A ST&G professional personally appeared at a particular

10 hearing only when the active participation of that professional with respect to one or more

11 matters at such hearing was required. Preparation for such hearings included reviewing

12 voluminous pleadings, conceptualizing oral arguments, general strategizing, and preparing

13 hearing binders for internal use.

14         19.    ST&G spent a total of 318.4 hours rendering services in this category, for

15 which it seeks compensation of $109,866.00. It should be noted that in order to minimize fees,

16 ST&G utilized associates, paralegals, and law clerks to perform these services to the fullest

17 extent possible.

18     **2.    Meetings and Communications with Creditors -- 020**

19         20.    The "Meetings of and Communications with Creditors" category relates

20 primarily to communications with the FTD Fund Committee, individual FTD Fund Committee

21 members, and counsel for the Other Committees. When the subject matter of such

22 communications is not predominantly or specifically attributable to another category, ST&G bills

23 the related time expended to this category.

24         21.    During the First Interim Period, ST&G spent a relatively significant

25 amount of time communicating with members of the FTD Fund Committee and other FTD Fund

26 members because of its role as counsel to the FTD Fund Committee. ST&G has organized and

27

28
_____
[5]    ST&G has not billed the FTD Fund Committee for non-working travel time.

1  attended weekly meetings of the FTD Fund Committee during the First Interim Period, in

2  addition to exchanging frequent telephone calls and correspondence with individual FTD Fund

3  Committee members.  ST&G has regularly prepared an agenda and minutes for each FTD Fund

4  Committee meeting.  Additionally, ST&G communicated with FTD Fund Committee members

5  (particularly the Chair) as needed in between meetings to discuss matters that required

6  immediate attention and could not be delayed until the next scheduled meeting.

7          22.    Similarly, ST&G spent a substantial amount of time during the First

8  Interim Period communicating and attending meetings with the Other Committees' professionals.

9  Such communications were often driven by the FTD Fund Committee's desires to efficiently

10  resolve issues in the Chapter 11 Cases as they arise and to coordinate activities among the

11  various professionals in the Chapter 11 Cases so as to avoid duplication of effort and

12  unnecessary administrative expenses.

13          23.    During the First Interim Period, ST&G also attended two general meetings

14  of creditors.  First, on May 17, 2006, ST&G attended the first meeting of creditors in Las Vegas,

15  Nevada, along with a member of S&C.  Subsequently, on July 12, 1006, a member of ST&G

16  prepared for and attended the Section 341(a) meeting of creditors in Las Vegas, Nevada.

17          24.    Additionally, ST&G spent time to protect confidential information

18  received by the FTD Fund Committee by preparing an initial draft of a confidentiality agreement

19  and subsequently negotiating such agreement with the Debtors, the form of which was

20  subsequently used by the Debtors with the Other Committees.  In that same vein, ST&G also

21  drafted and negotiated the terms of three separate joint privilege agreements that the FTD Fund

22  Committee entered into with the Debtors, the DTD Fund Committee, and the Direct Lender

23  Committee, respectively.

24          25.    In a task that demanded substantial effort during the First Interim Period,

25  ST&G, on behalf of the FTD Fund Committee, spearheaded the effort to negotiate and draft a

26  joint motion seeking an order setting forth procedures by which the Committees could ensure

27  that they were in compliance with the information access requirements 11 U.S.C. §

28  1102(b)(3)(A).  Initially, ST&G drafted such motion so as to apply only to the FTD Fund

402077v5                                                10

1   Committee, but when it became apparent that the Other Committees would likely be requesting

2   similar relief and in accordance with this Court's directive not to duplicate efforts among the

3   Committees, ST&G revised its draft motion to apply to all the Committees.  Substantial

4   negotiations followed among the Committees and the Debtors and, ultimately, on June 7, 2006,

5   the FTD Fund Committee filed the "Joint Motion Of Official Committee Of Equity Security

6   Holders Of USA Capital First Trust Deed Fund, LLC, The Official Committee Of Holders Of

7   Executory Contract Rights Through USA Commercial Mortgage Company, The Official

8   Committee Of Equity Security Holders Of USA Capital Diversified Trust Deed Fund, LLC, And

9   The Official Unsecured Creditors' Committee For USA Commercial Mortgage Company

10  Pursuant To 11 U.S.C. §§ 105(a), 107(b), 1102(b)(3)(A) And 1103(c), For Nunc Pro Tunc Order

11  Clarifying Requirement To Provide Access To Information" (the "Joint Information Motion")

12  [Docket no. 521].  In response to several oppositions to the Joint Information Motion, ST&G

13  drafted, coordinated the revision of, and served a joint reply on behalf of the Committees

14  [Docket no. 649].  Following a hearing on June 21, 2006, at which the Court orally granted the

15  Joint Information Motion, ST&G drafted and coordinated the revision of the proposed order

16  granting the Joint Information Motion, which order was entered by the Court on June 27, 2006

17  [Docket no. 803].

18          26.     Under the order granting the Joint Information Motion, the FTD Fund

19  Committee was required to establish and maintain a website providing access to certain

20  information about the Chapter 11 Cases.  ST&G was primarily responsible for developing the

21  format and content of the FTD Fund Committee website, and, since the website has gone live, is

22  responsible for maintaining website, which includes drafting summaries of hearings, explaining

23  key motions, updating the frequently asked questions section, and responding to FTD Fund

24  Member inquiries.

25          27.     ST&G spent a total of 364.6 hours rendering services in this category, for

26  which it seeks compensation in the amount of $169,906.00.

27      **3.    General Business Operations -- 030**

28          28.     Advocating for the interests of the FTD Fund Members has required

402077v5                                    11

1  ST&G's limited involvement in some of the Debtors' general business operations. Among other

2  things, ST&G spent time in this category analyzing various agreements that are critical to the

3  operations of the FTD Fund, including the servicing agreement between the FTD Fund and

4  USACM, the FTD Fund's operating agreement, and the FTD Fund's subscription agreements.

5  Additionally, ST&G dedicated efforts to understanding the general business model of the

6  Debtors and how the Debtors' management planned to operate the Debtors during the Chapter 11

7  Cases. More recently, ST&G has conferred internally, with members of the FTD Fund

8  Committee and with the Debtors regarding the need for the Debtors to provide statements to

9  investors and the form such statements should take.

10          29.    ST&G spent a total of 14.1 hours rendering services in this category, for

11  which it seeks compensation in the amount of $7,595.00.

12      **4.    Fee/Employment Applications – 040**

13          30.    This category includes services rendered in connection with preparing

14  and/or reviewing applications to employ professionals in the Chapter 11 Cases and preparation

15  of applications by such professionals. During the First Interim Period, ST&G prepared the

16  ST&G Employment Application, the amendment thereto, and the order granting the ST&G

17  Employment Application as amended.[6] Additionally, ST&G assisted S&C in the preparation of

18  pro hac vice applications and prepared monthly fee statements on its own behalf. Subsequently,

19  ST&G also worked with Debtors' counsel to draft an application by which the FTD Fund will

20  request that the Court employ ST&G as special counsel to the FTD Fund in connection with an

21  interpleader action brought by USACM in which the FTD Fund is a defendant that is seeking to

22  bring approximately $100,000.00 into the FTD Fund estate.

23          31.    ST&G also assisted in the FTD Fund Committee in selecting a firm to act

24  as financial advisor to the FTD Fund Committee. Once the FTD Fund Committee elected to

25  employ Alvarez & Marsal LLC ("A&M") as its financial advisor, ST&G assisted in the

26  preparation of A&M's retention documents, employment application, and employment order.

27  _____

28  [6]   ST&G has not billed for any time spent negotiating the joint retention of ST&G by the three
     Investor Committees.

402077v5                              12

32.     Additionally, ST&G spent time in this category reviewing the employment applications and terms of retention of the other professionals in the Chapter 11 Cases. To the extent that the FTD Fund Committee elected to respond to or oppose any employment application, time was billed in the "Fee/Employment Objections" category, which category is summarized below.

33.     Also included in this category is time related to analyzing the "Debtors' Application for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals" [Docket no. 570], assisting the DTD Fund Committee in drafting a joint response to such motion, and in negotiating the proposed interim compensation procedures with the Debtors.

34.     To minimize fees, most of the time billed in this category on account of reviewing and preparing employment applications and fee statements was incurred by associates. ST&G spent a total of 78.6 hours rendering services in this category, for which it seeks compensation in the amount of $33,024.50.

5.     **Fee/Employment Objections – 050**

35.     During the First Interim Period, ST&G closely reviewed the employment applications of the professionals in the Chapter 11 Cases and, when necessary, provided comments early to engage the Debtors and/or applicable committee in a process aimed at eliminating the need for the FTD Fund Committee to file formal objections. Although these efforts do not appear on the Court's docket, they have reduced the total fees incurred by the Debtors' estates. In the few instances in which professional applicants did not amend the proposed terms of their employment or otherwise alleviate the FTD Fund Committee's concerns, ST&G prepared oppositions and/or responses to the employment applications of such professionals. In particular, ST&G drafted limited oppositions to the employment applications of (1) Hilco Real Estate LLC as the Debtors' real estate appraiser [Docket no. 379] and (2) Gordon & Silver, Ltd. as counsel to the Direct Lender Committee [Docket no. 447].

36.     In another example of the FTD Fund Committee working together with the Other Committees to streamline efforts and minimize costs when possible, ST&G drafted a

402077v5                                    13

1 | joint omnibus response to the continued employment of the Debtors' professionals on behalf of

2 | the FTD Fund Committee, the DTD Fund Committee, and the Direct Lender Committee [Docket

3 | no. 944].

4 |         37.    ST&G also spent time in this category analyzing and responding to

5 | objections to the ST&G Employment Application.

6 |         38.    To minimize fees, most of the time billed in this category on account of

7 | objecting to employment applications was incurred by associates. ST&G spent a total of 45.1

8 | hours rendering services in this category, for which it seeks compensation in the amount of

9 | $16,452.00.

10 |       **6.    Financing – 060**

11 |         39.    This category includes services rendered by ST&G in analyzing the

12 | Debtors' financing. During the First Interim Period, the Debtors sought approval of three

13 | different cash management budgets. ST&G, on behalf of the FTD Fund Committee, evaluated

14 | each budget filed by the Debtors and discussed potential deficiencies with the FTD Fund

15 | Committee's financial advisor. After consultation with counsel for the DTD Fund Committee,

16 | ST&G took the lead in preparing joint objections to each of these three budgets. In response to

17 | the objections raised by the Fund Committees, the Debtors revised their budgets to reflect the

18 | fact that no monies that were collected on account of "pre-paid interest" would be used by the

19 | Debtors without a further Court order. In addition, the Debtors also revised their budgets to

20 | reflect appropriate accruals and payments to professionals of the Debtors' estates, among other

21 | line items.

22 |         40.    Also, during the First Interim Period, the Debtors sought to obtain debtor-

23 | in-possession financing ("DIP Financing"). In connection therewith, the Debtors first requested

24 | Court authority to pay the due diligence expenses of various parties who had expressed an

25 | interest in providing the Debtors with DIP Financing. ST&G, on behalf of the FTD Fund

26 | Committee, opposed this relief and the Court did not allow the Debtors to pay these due

27 | diligence expenses. The Debtors, then, filed a motion seeking Court approval of DIP Financing.

28 | ST&G, working together with S&C, filed an opposition to this motion, in which it argued that

1    the Debtors had yet to prove any need for DIP Financing and had failed to finalize any terms of

2    the proposed DIP Financing. The Court did not approve the Debtors' proposed DIP Financing

3    and continued the hearing thereon. The Debtors subsequently abandoned their efforts to seek

4    approval of DIP Financing.

5                41.    ST&G spent a total of 71.3 hours rendering services in this category, for

6    which it seeks compensation in the amount of $33,668.50.

7        **7.    Claims Administration & Objections – 070**

8                42.    The "Claims Administration & Objections" category refers to services

9    ST&G rendered in its analysis of claims against the FTD Fund and in filing objections to such

10   claims. During the First Interim Period, the ST&G prepared two omnibus claim objections

11   [Docket nos. 1064 and 1066] that were subsequently filed on August 1, 2006, by which the FTD

12   Fund Committee objected to 27 claims totaling approximately $1.6 million. ST&G also

13   prepared a claim objection to a litigation claim filed against the FTD Fund for $20 million

14   [Docket no. 1068].

15               43.    To minimize fees, nearly all of the time billed in this category was

16   incurred by associates and paralegals. ST&G spent a total of 43.4 hours rendering services in

17   this category, for which it seeks compensation in the amount of $11,685.50.

18       **8.    Asset Analysis and Recovery – 080**

19               44.    This category includes services rendered in connection with ST&G's

20   investigation and review of the assets of the FTD Fund and, at times, the other Debtors, to the

21   extent such activities did not at the time relate to potential litigation. One of the tasks to which

22   ST&G devoted substantial time in this category was with respect to the collection and analysis of

23   information relative to the FTD Fund loan portfolio in order to assess the size and nature of the

24   FTD Fund's assets. Similarly, ST&G spent time in this category discussing proposals to provide

25   additional funding to certain borrowers with the FTD Fund Committee, as well as the Debtors

26   and the Other Committees.

27               45.    Additionally, ST&G dedicated effort in this category to reviewing,

28   analyzing, and, when necessary, responding both formally and informally to, among other

402077v5                                            15

1    motions and related pleadings, the "Countermotion for Sequestering or Alternatively for Release

2    of Funds and for Revocation of Power of Attorney" [Docket no. 58], the "Debtors' Motion to

3    Temporarily Hold Funds Pending a Determination of the Proper Recipients" [Docket no. 173],

4    the "Debtors' Motion for Order Approving Agreement with Investment Partners" [Docket no.

5    575], and the "Motion for Authority to Forbear and Provide Further Funding for Certain

6    Outstanding Loans" [Docket no. 592]. In particular, ST&G sought to determine the impact that

7    such motions, if granted, would have on the FTD Fund's assets and, in turn, worked diligently to

8    ensure that the relief requested, if granted, would either benefit or have no impact upon the FTD

9    Fund's assets.

10         46.    ST&G spent a total of 118.3 hours rendering services in this category, for

11    which it seeks compensation in the amount of $51,367.00.

12    **9.    Asset Disposition – 090**

13         47.    Within this category, ST&G analyzed various documents, pleadings, data,

14    and correspondence and communicated frequently with the FTD Fund Committee, the Debtors,

15    and the Other Committees concerning the potential disposition of the Debtors' assets. Most

16    services rendered by ST&G within this category during the First Interim Period involved issues

17    pertaining to the treatment of principal and interest payments received by USACM after the

18    Petition Date. Specifically, ST&G spent substantial time researching how such funds should be

19    treated under applicable caselaw, analyzing how the treatment of the funds would affect the FTD

20    Fund and the FTD Fund Members, and discussing various alternatives for the treatment of the

21    funds with the FTD Fund Committee, its professionals, the Debtors, and the Other Committees.

22    On behalf of the FTD Fund Committee, ST&G shared portions of its research with the Debtors

23    so as to assist the Debtors in drafting the "Debtors' Motion to Distribute Funds and to Grant

24    Ordinary-Course Releases and Distribute Proceeds" (the "Motion to Distribute") [Docket no.

25    847]. ST&G was also instrumental in negotiating with the Debtors to ensure that the Motion to

26    Distribute included a request that distributions to FTD Fund Members, as opposed to just the

27    FTD Fund, be authorized. In fact, ST&G, along with counsel to the DTD Fund committee, took

28    primary responsibility for drafting the argument section on making distributions available to the

402077v5                                16

1    fund members.  Following the filing of the Motion to Distribute, ST&G drafted a brief in

2    response to the Motion to Distribute and analyzed the numerous responsive pleadings that other

3    parties in interest filed with respect to the Motion to Distribute.  Subsequently, in order to

4    emphasize the importance to the FTD Fund Committee and its constituency of the relief

5    requested in the Motion to Distribute, ST&G drafted a reply brief addressing the various

6    responsive pleadings that had been filed in opposition to the Motion to Distribute.

7          48.    Time spent in this category also includes ST&G's efforts in analyzing and

8    strategizing the ramifications of a potential sale of the FTD Fund's portfolio.

9          49.    To minimize fees, most of the time billed in this category was incurred by

10    associates.  ST&G spent a total of 142.3 hours rendering services in this category, for which it

11    seeks compensation in the amount of $51,246.00.

12          **10.    Plan/Disclosure Statement – 100**

13          50.    The "Plan/Disclosure Statement" category relates to services ST&G

14    rendered both in participating in the plan process and in planning a resolution to the Chapter 11

15    Cases that will achieve an optimal recovery for the FTD Fund Members.  ST&G has dedicated

16    substantial resources to identifying and analyzing exit strategies and plan structures that would

17    net the greatest return to FTD Fund Members.  To that end, ST&G has expended a relatively

18    significant amount of time analyzing prospective plan structures, communicating the resulting

19    theories to the FTD Fund Committee, and evaluating potential exit strategies.  These efforts have

20    entailed extensive research and collaboration with the FTD Fund Committee's other

21    professionals.  During the First Interim Period, ST&G has also participated in several meetings

22    with other constituencies in the Chapter 11 Cases regarding potential options for resolving the

23    Chapter 11 Cases, including meetings on July 11, 2006 and July 20, 2006.

24          51.    ST&G spent a total of 88.4 hours rendering services in this category, for

25    which it seeks compensation in the amount of $45,388.00.

26          **11.    Employee Benefits/Plans – 110**

27          52.    No time was billed to this category.

28          **12.    Litigation – 120**

53.     ST&G provided numerous services to the FTD Fund Committee in the Litigation category during the First Interim Period.  Among the tasks that necessitated the most time from ST&G in this category were (1) working with the FTD Fund Committee and the Other Committees to create a due diligence list; and (2) exploring various causes of action that the FTD Fund Committee could pursue to maximize the recovery to FTD Fund Members.  The latter task involved extensive legal research and analysis of data and documents.

54.     ST&G also spent time in this category analyzing and discussing with the FTD Fund Committee the complaint to recover property filed by Wells Fargo [Docket no. 733], the dischargeability complaint filed by Spectrum Financial Group and Roland Weddell [Docket no. 877], and the interpleader complaint filed by USACM [Docket no. 965].

55.     To minimize fees, most of the time billed in this category was incurred by associates.  ST&G spent a total of 64.4 hours rendering services in this category, for which it seeks compensation in the amount of $29,212.00.

**13.     Relief from Stay Proceedings – 125**

56.     Time spent in this category represents the review, analysis, and response to the several motions for relief from the automatic stay filed by Scott Canepa, certain direct lenders represented by Jones Vargas, Spectrum Financial Group, and Standard Property Development, LLC.

57.     ST&G spent a total of 9.6 hours rendering services in this category, for which it seeks compensation in the amount of $3,928.00.

**III.     REIMBURSEMENT OF EXPENSES**

58.     As is more fully reflected on the invoices as Exhibit "2" and expressly incorporated herein by reference, ST&G incurred $32,336.51 in expenses in connection with its performance of professional services on behalf of the FTD Fund Committee during the First Interim Period.  ST&G bills for expenses, including in-house photocopies ($0.25 per page), facsimile transmissions ($0.50 per page), postage (actual costs), coach airfare (actual cost), airport transportation (actual cost), computer research (actual cost), hotel accommodations in Las Vegas when attending hearings and/or case-related meetings (actual cost), and long distance

1  telephone charges (actual cost).  Such expenses were actually and necessarily incurred by ST&G,

2  and all expenses for which ST&G seeks reimbursement were incurred in the most economical

3  method available under the circumstances.

IV.    REQUEST FOR INTERIM COMPENSATION

**A.    Legal Standard.**

6      59.    Bankruptcy Code section 330(a)(1) allows the Court to award to

7  professionals employed pursuant to section 1103:

8      (A)    reasonable compensation for actual, necessary services
   rendered by the . . . professional person, or attorney and by
9  any paraprofessional person employed by any such person;
   and

10

11      (B)    reimbursement for actual, necessary expenses.

12  11 U.S.C. § 330(a)(1)(B).  In determining the amount of reasonable compensation to be awarded,

13  section 330 directs this Court to consider the nature, extent and value of the services by taking

14  into account all relevant factors which include:

15      (i) the time spent on such services; (ii) the rates charged for such
   services; (iii) whether the services were necessary in the
16  administration of, or beneficial at the time at which the services
   were rendered toward the completion of, a case under the
17  Bankruptcy Code; (iv) whether the services were performed within
   a reasonable amount of time commensurate with the complexity,
18  importance, and nature of the problem, issue or task addressed; and
   (v) whether the compensation is reasonable based upon the
19  customary compensation charged by comparably skilled
   practitioners in cases other than cases under [title 11].
20

21  11 U.S.C. § 330(a)(3).

22      60.    In addition, section 330 prohibits the Court from allowing compensation

23  for "unnecessary duplication of services" or "services that were not . . . reasonably likely to

24  benefit the debtor's estate . . . or . . . necessary to the administration of the case."  11 U.S.C.

25  § 330(a)(4)(A).

26      61.    In determining the award of compensation, courts generally consider "the

27  nature, the extent, and the value of the professional's services".  In re Auto Parts Club, Inc., 211

28  B.R. 29, 33 (B.A.P. 9th Cir. 1997).  "The primary method used to determine a reasonable

1   attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate."

2   In re Yermakov, 718 F.2d 1465, 1471 (9th Cir. 1983); In re Powerine. Oil Co., 71 B.R. 767, 772

3   (B.A.P. 9th Cir. 1986) (holding that the fees calculated by multiplying the number of hours by

4   the hourly rate creates a presumption of reasonableness); In re Montgomery Drilling Co., 121

5   B.R. 32, 39 (Bankr. E.D. Cal. 1990).

6       62.    Professional services rendered by ST&G during the First Interim Period

7   have been itemized by professional, noting each professional's rate, number of hours and total

8   compensation requested. See Exhibit "3." Each duty and task performed by ST&G has been

9   performed by the attorney most qualified to render such services at his or her ordinary hourly

10  rate in the most efficient manner as required by the circumstances of these cases. ST&G

11  reasonably expended this time in order to adequately represent and protect the interests of the

12  FTD Fund Committee in these cases.

13  **B.    Reasonableness of Compensation Requested**

14      63.    ST&G requests compensation for attorneys and paralegals at their

15  respective customary hourly rates. The hourly rate of each professional who rendered services in

16  connection with the Chapter 11 Cases during the First Interim Period is set forth in Exhibit "3."

17  ST&G regularly conducts a survey of hourly rates charged by law firms that routinely work in

18  large and complex chapter 11 cases. Based on the results of the most recent survey, ST&G

19  believes that the hourly rates charged for its members, paralegals, and law clerks are reasonable

20  and competitive with the hourly rates charged by law firms of comparable size and quality that

21  have similar expertise and experience level as ST&G.

22      64.    ST&G submits that, based upon the factors to be considered pursuant to

23  section 330 and section 331 of the Bankruptcy Code, the quality of the services provided and the

24  results that have been achieved to date justify allowance of the amounts requested.

25  **C.    Non-Duplication**

26      65.    Due to the sensitive nature of bankruptcy matters, it is not always possible

27  to delegate authority to persons with lower billing rates. However, ST&G has worked to avoid

28  duplication. Where more than one ST&G attorney attended a meeting or hearing, such

402077v5                                    20

attendance was not a duplication of effort, but was necessary to adequately represent the interests of the FTD Fund Committee. Moreover, the services provided by ST&G during the First Interim Period were not duplicative of the services provided by any of the Committee's other professionals: ST&G provided advice and services with respect to bankruptcy/reorganization matters, A&M provided financial advice, and S&C provided bankruptcy related services and guidance and insight on legal, economic and contextual matters that are either unique to this District or that ST&G and S&C had determined in advance were to be handled primarily by S&C.

**D.    Novelty And Difficulty of Legal Questions/Skill Requisite to Performing Legal Services**

66.    Because of the complex questions of law and fact involved in these proceedings, a high degree of skill is necessary to represent adequately the interests of the FTD Fund Committee. Expeditious action by ST&G has been necessary to maximize and preserve the assets of the estate for the benefit of unsecured creditors. Because of the complex nature of the transactions that will be involved in resolving the Chapter 11 Cases and the relationships, and the transactions that provide the factual background of the Debtors' current situation, it has been necessary that ST&G exercise considerable skill and expertise in addressing the issues that have already manifested and in planning for the issues that will foreseeably arise.

**E.    Experience, Reputation And Ability Of The Attorneys**

67.    ST&G has an excellent nation-wide reputation based upon its experienced and capable group of professionals. ST&G was selected as the FTD Fund Committee's counsel due to the experience and expertise of its attorneys in the areas of bankruptcy and other insolvency-related law. ST&G has represented creditors, debtors, creditors' committees and trustees in insolvency cases and adversary proceedings throughout the United States of America, and maintains an active insolvency practice. The professional services rendered have been performed by attorneys with broad expertise and a high level of skill in the areas for which they have been employed. A summary of the experience and qualifications of the ST&G professionals who rendered substantial services to the FTD Fund Committee during the First

1    Interim Period is attached hereto as Exhibit "4." Such experience and expertise has enabled this

2    case to progress in an efficient manner.

3          68.    ST&G has not entered into any arrangement or agreement with any person

4    or entity with respect to the sharing of fees and expenses for which ST&G is seeking

5    compensation and reimbursement as set forth in this Application, except as permitted by section

6    504(b)(1) of the Bankruptcy Code. ST&G has not entered into any agreement, express or

7    implied with any other party in interest, or any attorney or other party in interest for the purpose

8    of fixing fees or compensation and reimbursement of expenses incurred. As of the filing of this

9    Application, ST&G has not received any payment for its professional services nor any

10    reimbursement of its expenses during the pendency of the Chapter 11 Cases.

11          69.    ST&G submits that, based upon the factors to be considered pursuant to

12    section 330 and section 331 of the Bankruptcy Code, the quality of the services provided, and the

13    results that have been achieved to date more than justify allowance of the amounts requested.

14    The services of ST&G have resulted in significant benefit to the FTD Fund Committee, the FTD

15    Fund Members, the FTD Fund estate, and its creditors.

16          70.    Attorneys performing services in a bankruptcy proceeding should receive

17    compensation equal to that received by attorneys specializing in other areas. See, e.g., id. (citing

18    In re UNR Indus., Inc., 986 F.2d 207, 209-210 (7th Cir. 1993); In re Baldwin United Corp., 36

19    B.R. 401 (Bankr. S.D. Ohio 1984); In re Wilson Foods Corp., 36 B.R. 317 (Bankr. D. Okla.

20    1984); In re Atlas Automotive Inc., 27 B.R. 820, 822 (Bankr. E.D. Mich. 1983).

21          71.    In an effort to eliminate fees for inefficient or unnecessary services, ST&G

22    has voluntarily written off 375.7 hours of time that it would otherwise have billed at its

23    customary rates in the total amount of $128,871.50 plus costs in the amount of $4,206.95. In

24    particular, the majority of the services that have been voluntarily written off include time related

25    to ST&G's initial efforts to be employed by all three Investor Committees. In addition, ST&G

26    has written off certain attorney time where multiple attorneys attended the same meeting or

27    hearing, which did not require the participation of all attorneys present.

28

1

**V.    CONCLUSION**

2    72.    WHEREFORE, ST&G respectfully requests that the Court enter an order:

3    (i)    Approving this Application;

4    (B)    Authorizing $563,338.50 in fees and $32,336.51 in costs on an

5    interim basis;

6    (C)    Authorizing and directing the FTD Fund to pay the full amount of

7    fees and/or expenses incurred by ST&G during the First Interim Period;

8    and

9    (D)    Providing such other and further relief as the Court deems just and

10    appropriate.

11

12    Respectfully submitted this 31st day of August, 2006.

13

14

15    FRANK A. MEROLA (CA State Bar No. 136934),
EVE H. KARASIK (CA State Bar No. 155356), and

16    ANDREW M. PARLEN (CA State Bar No. 230429), Members of
STUTMAN, TREISTER & GLATT, P.C.

17    1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

18    Telephone: (310) 228-5600

19    COUNSEL FOR THE
OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

20    OF USA CAPITAL FIRST TRUST DEED FUND, LLC

21

22

23

24

25

26

27

28

402077v5                                          23