Bob L. Olson (Nevada Bar No. 3783)
Anne M. Loraditch (Nevada Bar No. 8164)
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard South
Las Vegas, NV 89101
Telephone: (702) 385-3373
Facsimile: (702) 385-5024
Email:   bolson@beckleylaw.com; aloraditch@beckleylaw.com

Electronically Filed October 12th, 2006

*Attorneys for the Official Committee of Equity
Security Holders of USA Capital Diversified
Trust Deed Fund, LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date:  October 19, 2006<br>Time:  9:30 a.m.<br>Place:  Courtroom #1 |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **REPLY TO HIGHLAND FUNDS' OPPOSITION TO DIVERSIFIED TRUST DEED FUND COMMITTEE'S OBJECTION TO PROOF OF CLAIM** |
| Affects:<br>☒  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | (Affects indicated Debtors) |

{00330833;}                                                  - 1 -

The Diversified Fund Committee,[1] by and through its counsel Beckley Singleton, Chtd.,[2] replies to the Highland Funds Opposition to Diversified Trust Deed Fund Committee's Objection to Proof of Claim ("Opposition").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

In their Opposition, the Highland Funds allege that the Diversified Fund Committee's Objection should not be sustained for five reasons, all of which this Court should reject.

First, the Highland Funds allege that the Nevada Court rejected Diversified's request that the Nevada Complaint be dismissed under the doctrine of "claim preclusion" on two occasions. Opposition, pp. 2, 14-16. This allegation is not entirely accurate. Diversified filed one motion for summary judgment, not two,[3] as the Highland Funds infer on page 2 of the Opposition, seeking dismissal of the Nevada Complaint under the doctrine of collateral estoppel or issue preclusion, rather than *res judicata* or claim preclusion.[4] *See* Exhibit K to the Declaration of Michael P. Aigen.[5] The Nevada Court's denial of Diversified's motion for summary judgment was not a final judgment. Since the denial of a motion for summary judgment is not a final order, it is not relevant for purposes of claim preclusion and issue preclusion.

///

---

[1] Unless noted otherwise, all capitalized terms in this Reply are defined in Diversified Trust Deed Fund Committee's Objection to Proof of Claim Filed by Prospect High Income Fund Et Al. that the Diversified Fund Committee filed on September 19, 2006.

[2] Orrick, Herrington & Sutcliff, LLP, did not participate in the preparation of the Objection or this Reply.

[3] John Rodgers Burk filed the other motion for summary judgment. He was not a party to the BONY Adversary Proceeding. He was the attorney who delivered the opinion letter to Diversified in connection with the encumbering of the Palm Springs Property.

[4] The distinction between collateral estoppel and issue preclusion, on the one hand, and res judicata and claim preclusion, on the other hand, is significant because *res judicata precludes litigation of claims for relief that could have or should have been brought in the earlier action but were not asserted.*

[5] All of the Exhibits the Highland Funds presented to the Court are lettered and are attached to the Declaration of Michael P. Aigen. All future references to the exhibits presented by the Highland funds will be described using the letter attributed to the exhibit in Aigen's declaration.

{00330833;}
US_WEST:260056390.6

-2-

Second, the Highland Funds allege that *Epic 1* and *Epic 2* have no preclusive effect in this case because they were decided under a different standard. Opposition, p. 15. This argument that the Highland Funds repeat *ad nauseam* is nothing more than a red herring. The Highland Funds seem to allege that the "differing burden of proof" is that the court in the Epic Bankruptcy and the BONY Adversary Proceeding employed an "egregious conduct standard" for the burden of proof. Opposition, pp. 3, 16-17. There is no such thing as an "egregious conduct standard" for a burden of proof. The burden of proof in the BONY Adversary, *Epic 1* and *Epic 2* was the same as that used in Nevada and by this Court – a preponderance of the evidence standard. The elements for a tortious interference claim in Nevada are the same elements that the Epic Bankruptcy Court applied. The Highland Funds seem to confuse the requirement that "egregious conduct" be demonstrated before punitive damages may be awarded in a tortious interference action,[6] or before a lien will be equitably subordinated,[7] with the burden of proof – a classic example of confusing apples with oranges.

Third, the Highland Funds allege that the issues in the Nevada Complaint were not fully and fairly litigated in the Epic Bankruptcy and the BONY Adversary Proceeding. Opposition, pp. 15, 18-19. This argument is incredible in that it ignores: (a) all of the papers that BONY filed in the BONY Adversary Proceeding and the appeal to the District Court for the District of Delaware; (b) the published decisions of *Epic 1* and *Epic 2*; and (c) the discovery that BONY conducted in the BONY Adversary Proceeding that the Highland Funds summarize on pages 3 through 11 of their Opposition.

Fourth, the Highland Funds argue that there was no privity between the Highland Funds and BONY. This argument defies: (a) the Indenture's unambiguous language empowering BONY, as indenture trustee, to act on behalf of all of the bondholders including the Highland Funds; (b) statements made by BONY in the BONY Adversary Proceeding; (c) all available

---

[6] Highland Funds' Opposition demonstrates this point by alleging that a court may find tortious interference upon a showing of intentional conduct but must find that egregious conduct is present before awarding punitive damages. Opposition, pp. 17-18, n. 10 (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1167, 1192 (3d Cir. 1993); *Fineman v. Armstrong World Indus.* 774 F. Supp. 225, 244 n.16 (D. N.J. 1991)).

[7] In *Epic 1* the Court held that Diversified was not an insider of Epic and that before Diversified's claim could be subordinated BONY would have to prove that Diversified engaged in "egregious misconduct such as fraud, spoliation or overreaching." *Epic 1*, 290 B.R. at 524. The Court then went on to find that Diversified made the loan to Epic in good faith and that "[t]here is no evidence of purposeful action on the part of [Diversified] to harm the relationship between Resorts, [Diversified] and BONY." *Id.* at 525. Thus, BONY did not demonstrate tortious conduct by Diversified, let alone egregious conduct.

legal authority holding that indenture trustees are in privity with bondholders; and (d) admissions of privity contained in the Opposition. For example, the Highland Funds admit, "the bond trustee, *on behalf of the bondholders*, declared that an event of default existed under the Indenture and accelerated the entire amount due and owing under the Indenture and the Bonds." Opposition, p. 12, lines 1-3 (emphasis added). The Opposition then goes on to state that "[t]he Highland Funds concede that the District Court affirmed the Bankruptcy Court's finding that the Indenture trustee, *and therefore the Highland Funds, do not have a property interest in the property* [the Palm Springs Property] *and that the conduct of Diversified was not sufficiently sufficient to warrant equitable subordination.*" Opposition, p. 17. lines 2-6 (emphasis added). These admissions demonstrate that BONY was acting as the virtual representative of the Highland Funds in the Epic Bankruptcy.

Finally, the Highland Funds allege that there is sufficient evidence supporting the claims asserted in the Nevada Complaint. This ignores the fact that *the tortious interference claim was tried and lost by BONY*, the Highland Funds' indenture trustee.

Notably, Highland Funds fail to address effect of the doctrine of *res judicata* (or claim preclusion) on this case. There is no dispute that the BONY Adversary Proceeding was predicated upon allegations that Diversified interfered with the Indenture by loaning money to Epic and accepting a security interest in the Palm Springs Property. The Nevada Complaint was predicated upon the same facts and allegations. Since the claims asserted in the Nevada Complaint could have been, but were not, raised in the BONY Adversary Proceeding, *res judicata* prohibits the Highland Funds from asserting those claims against Diversified.

For the reasons set forth below, the Diversified Fund Committee requests that this Court disallow the Claim in its entirety.

## II.

## SUPPLEMENTAL STATEMENT OF FACTS

The Highland Funds initially argue that the Indenture contained three provisions that Diversified aided Epic in violating. Opposition, pp. 3-4. Those provisions were: (a) a prohibition on Epic incurring further indebtedness; (b) a prohibition on Epic from further encumbering its properties; and (c) a prohibition on Epic allowing subsidiaries from permitting

any liens on any of its assets. *Id.* The Epic Bankruptcy Court considered and rejected BONY's allegations that Diversified tortiously interfered with those restrictive covenants.

There is no realistic dispute that BONY, acting on behalf of Highland Funds, sought relief against Diversified under the theory that it tortiously interfered with the Indenture's negative covenants. Highland Funds allegations' that the Diversified's allegedly tortious interference with the Indenture was not fully and fairly litigated[8] are simply false.

As is noted in the Objection, the law firm of Haynes and Boone, LLP, which represented both BONY and Highland Funds, filed the BONY Complaint against Diversified alleging it tortiously interfered with the Indenture. *See* Exhibit 5, BONY Complaint, ¶¶ 8-20, 32-50. BONY also briefed the tortious interference issue in the BONY Opposition. Exhibit 7, BONY Opposition at 25.

The Highland Funds' Statement of Facts only proves the great extent to which BONY went to present evidence of the alleged tortious interference to the Epic Bankruptcy Court. For example, Exhibits A, B and C consist of excerpts of transcripts from the depositions of Joseph D. Milanowski, Thomas Hantges and Thomas Rondeau in the Epic Bankruptcy. BONY lodged the Milanowski and Hantges transcripts with the Court in the BONY Adversary Proceeding. *See* the Appendix to the Bank of New York's Opposition to USA Capital's Motion for Summary Judgment and Memorandum in Support of the Bank of New York's Cross Motion for Summary Judgment ("BONY Opposition Appendix"), Appendix Tabs 7 and 12, a copy of which, without exhibits, is attached to the Supplemental Declaration of Bob Olson as **Exhibit "8"**.[9]

Furthermore, Exhibits D and E in support of the Opposition are transcripts of the trial held in the Epic Bankruptcy and the BONY Adversary Proceeding wherein testimony was solicited by BONY to support the tortious interference allegations.

There is no dispute that BONY plead tortious interference, conducted discovery to support allegations of tortious interference, briefed the tortious interference issue and introduced evidence at the trial to support its allegations of tortious interference. Notwithstanding BONY's

---

[8] *See* Opposition, pp. 18-19.

[9] All of the numbered Exhibits described herein are attached to the Declaration of Bob Olson that was filed on September 19, 2006, or the Supplemental Declaration of Bob Olson. All of the Exhibits are either published opinions or copies of papers filed in the Nevada Action, the Epic Bankruptcy and this case. This Court can and should take judicial notice of all of the Exhibits.

valiant efforts, the Epic Court found that the allegations of tortious interference with the indenture were without merit by stating:[10]

> *Further, we cannot conclude that [Diversified] tortiously interfered with the agreement between BONY and [Epic].* The elements of tortious interference of a business relationship are as follows: "(1) the existence of a contractual, or prospective contractual relation between itself and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship, or to prevent the prospective relation from occurring; (3) the absence of a privilege or justification on the defendant; (4) the occasioning of actual legal damage as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant . *LaBrum & Doak v. Brown (In re LaBrum & Doak, LLP)*, 225 B.R. 93 (Bankr. E.D. Pa. 1998).
>
> *There is no evidence of a purposeful action on the part of [Diversified] to harm the relationship between [Epic], Capital and BONY.* Epic Palm Springs advised [Diversified] that no other creditor held a lien on the lease. Although [Diversified] had knowledge of the restrictive covenants, Epic Palm Springs represented and warranted that the entry into the secured loan transaction with [Diversified] did "not and will not . . . result in a breach or constitute a default under, . . . or require any consent under, and indenture. . . . *See* Loan Agreement at ¶ 5.2(e). In addition, [Diversified's] report did not reveal any other liens on the lease. Prior to consummating the transaction, *[Diversified]* confirmed with the BIA that no other lien existed on the property. *[Diversified's] actions were not intended to harm any relationship between BONY and [Epic]. Furthermore, the relationship between [Epic], Capital and BONY were not altered: BONY did not have a lien on the leasehold prior to [Diversified's] loan to Epic Palm Springs and did not have one after the loan.*

*Epic 1*, 290 B.R. at 524-25 (emphasis added).

On appeal, BONY maintained in its opening brief that Diversified tortiously interfered with the Indenture and briefed that issue. For example, the Brief of the Appellant, the Bank of New York as Successor Indenture Trustee ("BONY Appellate Brief") entitled its argument:

> **The Bankruptcy Court's Conclusion that BNY Had Not Established that the Actions of USA Capital Constituted Tortious Interference With the Rights of BNY Is Incorrect as a Matter of Law.**

*See* **Exhibit "9,"** BONY Appellate Brief, p. 23 (emphasis original). Furthermore, BONY included copies of the hearing transcripts and the transcripts of the Hantges and Milanowski depositions with the District Court. *See,* Exhibit 6, BONY Appellate Brief, Appendix to Appellant's Opening Brief, p. 2A, items 11, 15, 19 and 22. Diversified dedicated approximately

---

[10] Highland Funds ignored this language even though it was set forth on pages 6 and 7 of the Objection.

{00330833;}
US_WEST:260056390.6

- 6 -

eight pages of its Brief to the tortious interference issue. See **Exhibit "10"**, Diversified Appellate Brief, at 33-40.

Notwithstanding BONY and Diversified having briefed the tortious interference issue on the appeal from *Epic 1*, the District Court affirmed *Epic 1* by stating:[11]

> The Bankruptcy Court thoroughly analyzed the facts of this case and found that despite [Diversified's] actual knowledge of the restrictive covenants in the Indenture, *[Diversified] did not intend to harm any relationship between the Debtors and the Bondholders*, . . . As the Bankruptcy Court pointed out, Epic Palm Springs represented and warranted to [Diversified] that the secured loan transaction would not result in a breach of the Indenture, [Diversified] obtained an opinion letter from Epic Palm Spring's counsel confirming this point, and [Diversified] confirmed that no other liens existed on the property. The information [Diversified] obtained is consistent with the Prospectus, which expressly states that if approval from the BIA is not obtained, "the subsidiary guaranty of Epic Resorts Palm Springs Marquis Villas, LLC will not be secured by any mortgage on such leasehold." (Exhibit USA-13 at 22, Designation 19, Tab 15). . . .

*Epic 2*, 307 B.R. at 772 – 73 (emphasis added).

BONY, who was represented by Highland Funds' counsel, fairly and fully litigated the allegations that Diversified tortiously interfered with the Indenture in the Epic Bankruptcy, the BONY Adversary Proceeding and the appeal from *Epic 1*. The Highland Funds allegations that the issue was not fully and fairly litigated are simply false.

### III.

### STATEMENT OF AUTHORITIES

**A.    THE STATE COURT'S DENIAL OF DIVERSIFIED'S MOTION FOR SUMMARY JUDGMENT IS OF NO RELEVANCE.**

Diversified filed a motion for summary judgment in the Nevada Court that sought dismissal of the Nevada Complaint under the doctrine of collateral estoppel or issue preclusion.[12] That motion was denied. The denial of that motion has no relevance to the Objection to the Claim.

///

---

[11] Highland Funds also ignored the following language even though it was set forth on page 7 of the Objection.

[12] The Motion for Summary Judgment was not based on *res judicata* or claim preclusion as the Highland Funds allege.

{00330833;}
US_WEST:260056390.6

- 7 -

The Nevada Court never entered an order denying Diversified's motion for Summary Judgment. The only evidence of denial of that motion is a minute order the Highland Funds submitted to the Court as Exhibit L. The basis for the denial of the motion appears to be that the trial court found that the Delaware standards were different than the standards used in Nevada – something that simply is not true.[13]

When a federal court considers the preclusive effect of a state court judgment, it must look to state law governing the finality of that judgment. *Brennan v. EMDE Medical Research, Inc.*, 652 F. Supp. 255, 260 (D. Nev. 1986). Under Nevada law, minute orders are of no precedential effect and cannot be appealed. *Division of Child and Family Services v. Eighth Judicial District Court*, 120 Nev. 445, 92 P.3d 1239, 1243 (2004)(stating that a minute order is "ineffective for any purpose"); *Musso v. Triplett*, 78 Nev. 355, 357, 372 P.2d 687, 689 (1962)(an appeal from a minute order granting a motion for summary judgment is not proper and must be dismissed). Even if an order had been entered denying Diversified's motion for summary judgment, that order would have been interlocutory rather than final. *See, e.g., Smith v. Hamilton*, 70 Nev. 212, 265 P.2d 214 (1953)(holding that an order denying a motion for summary judgment is not a final judgment subject to appeal); *Taylor Constr. Co. v. Hilton Hotels Corp.*, 100 Nev. 207, 678 P.2d 1152 (1984). Since the order denying a motion for summary judgment is not final or appealable, the trial court may reconsider the order at any time before a judgment is entered adjudicating all of the rights and remedies of the parties to the action. N.R.C.P. 54(b).

Furthermore, the minute order submitted in support of the Opposition as Exhibit L pertained to a hearing conducted on April 5, 2005. At that time, all summary judgment motions in Nevada were denied if the Court had the "slightest doubt" as to any issue of fact. The Nevada Supreme Court abandoned the "slightest doubt" standard on October 20, 2005, and now employs the more liberal *Celotex* standard used in federal court. *See Wood v. Safeway, Inc.*, 121 Nev. Adv. Op. 73 (October 20, 2005). This makes it more likely that the Nevada Court would grant Diversified's motion for summary judgment were heard today.

In any event, the denial of Diversified's motion for summary judgment by the Nevada Court has no precedential effect in this proceeding and is of no relevance to the Objection.

---

[13] *See* pages 8 - 12, below, for a discussion of how the burden of proof and the elements for a tortious interference claim are actually the same.

**B.  THE BURDEN OF PROOF AND ELEMENTS FOR A TORTIOUS INTERFERENCE ACTION ARE THE SAME IN NEVADA AS THE DISTRICT OF DELAWARE.**

Highland Funds allege *ad nauseam* that issue preclusion does not apply because the Epic Bankruptcy Court applied a different standard than that which should be applied by the Nevada Court. The Highland Funds, however, do not really explain what the difference is. The Highland Funds seem to allege that the heightened standard applied in the Epic Bankruptcy and the BONY Adversary Proceeding was an "egregious conduct" standard that is more stringent than the "intentional" standard the Nevada Court should apply. Opposition, pp.3, 16-18. Highland Funds seem to assert that this "egregious conduct" standard creates a "different burden of proof" that precludes application of claim or issue preclusion.

**1.  The Burden of Proof is by a Preponderance of Evidence.**

There is no such thing as an "egregious conduct" burden of proof. The general rule in civil cases is that the burden of proof is by a preponderance of evidence. *McCormick on Evidence*, § 339 at 956 (3d ed. 1984); *see also Prabhu v. Levine*, 112 Nev. 1538, 1546 n.1, 930 P.2d 103, 109 n.1 (1996)(affirming use of jury instruction stating that the burden of proof is by a preponderance of evidence). Indeed, the courts that have examined the burden of proof in tortious interference cases not involving fraud or defamation have held that the burden of proof is by a preponderance of the evidence.[14]

---

[14] Circuit Court of Appeals decisions include: **Fourth Circuit** *Charleston Area Medical Center, inc. v. Blue Cross and Blue Shield*, 6 F.3d 243, 248 (4th Cir. 1993); **Eighth Circuit** *Sawheny v. Pioneer Hi Bred Intern., Inc.*, 93 F.3d 1401, 1408 (8th Cir. 1996); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1509 (8th Cir. 1992); **Tenth Circuit** *Employers Liability Assur. Corp. v. Freeman*, 229 F.2d 547, 550 (10th Cir. 1955).

Federal District Court decisions include: **Florida** *Babbit Electronics, Inc. v. Dynascan Corp.*, 828 F.Supp. 944, 954 (S.D. Fla. 1993); **Illinois** *Athley Products Corp. V. Harris Bank Roselle*, 901 F.Supp. 1355, 1361 & n.4 (N.D. Ill. 1995); **Maine** *Sutton v. Culver*, 204 F. Supp. 2d 20, 36-37 n. 9 (D. Me. 2002); **Massachusetts** *Flab Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.*, 753 F.Supp. 1007, 1010 (D. Mass. 1991); **New Jersey** *United Food and Commercial Workers Union v. Fleming Foods East, Inc.*, 105 F.Supp.2d 379, 390 (D. N.J. 2000); **New York** *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 513 (S.D. N.Y. 1994); **North Carolina** *North Carolina Mut. Life Ins. Co. v. McKinley Financial Service, Inc.* 386 F.Supp.2d 648, 655 (M.D. N.C. 2005); **Pennsylvania** *Market Development Corp. v. Flame-Glo, Ltd.*, 1990 WL 116319 at 15 (E.D. Pa. 1990); **Rhode Island** *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield*, 692 F.Supp. 52, 73 (D. R.I. 1988).

Bankruptcy Court Decisions: **New York** *In re Bennett*, 154 B.R. 140, 155 (Bankr. N.D. N.Y. 1992); **Pennsylvania** *In re TM Carlton House partners, Inc.*, 108 B.R. 512, 521 (Bankr. E.D. Pa. 1989).

State Court decisions include: **Arizona** *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 496 n. 21, 38 P.3d 12, 34 n. 21 (2002); **Colorado** *Sherman Agency v. Carey*, 39 Colo. App. 246, 250-51, 568 P.2d 75, 78 (1977); **Connecticut** *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 761 A.2d 1268, 1273-75 (2000); **Delaware**

## 2. The Elements for Tortious Interference are the Same.

As was detailed in the Objection, in Nevada, tortious interference is comprised of two varieties: (1) interference with contractual relations; and (2) interference with prospective economic advantage. *See Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 862 P.2d 1207 (1993); *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 971 P.2d 1215 (1998). Highland Fund's tortious interference claim fails to specify which variety of the claim it is pursuing. To establish a claim for interference with contractual relations, a claimant must prove: 1) there exists a valid contract between the claimant and a third-party; 2) that the defendant knew about the contract; 3) that the defendant committed intentional acts intended or designed to disrupt the contractual relationship; 4) that there was an actual disruption of the contract; and 5) that the claimant sustained damages. *See Hotels Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 862 P.2d 1207 (1993). The elements of a claim for interference with prospective economic advantage are essentially the same, except the relationship between the plaintiff and a third-party is prospective. *See Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1180 (D. Nev. 2003) (citing *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 734 P.2d 1221, 1225 (1987)).

The Epic Bankruptcy Court required virtually the same showing. The *Epic 1* Court held that the elements for a tortious interference claim are:

---

*Stickney v. Goldstein*, 2002 WL 31999358 at 10 (Del. Com. Pl. 2002); **Idaho** *Boise Street Car Co. v. Van Avery*, 61 Idaho 502, 103 P.2d 1107 (1940); **Iowa** *Willey v. Riley*, 541 N.W.2d 521, 526 (Iowa 1995); **Maine** *Petit v. Key Bank of Maine*, 688 A.2d 427, 431 (Me. 1996)(citing *Harmon v. Harmon* 404 A.2d 1020, 1026 Me. 1979)); **Massachusetts** *Baker v. Parsons*, 434 Mass. 543, 553-53, 750 N.E.2d 953, 961-62 (2001); **Mississippi** *MBF Corp v. Century Business Communications, Inc.*, 663 So.2d 595, 598 (Miss. 1995); *Collins v. Collins*, 625 So.2d 786, 791 (Miss. 1993); **New York** *BGW Development Corp. v. Mount Kisco Lodge No. 1552*, 247 A.D.2d 565, 567-68, 669 N.Y.S.2d 56, 59 (1998); **Tennessee** *Mefford v. City of Dupontonia*, 49 Tenn. App. 349, 355, 354 S.W. 823, 825-26 (1961); **Texas** *Crest Const., Inc. v. Murra*, 888 S.W2d 931, 945 (Tex. App. 1994), *reversed on other grounds*, 900 S.W.2d 342 (Tex. 1995); *Edwards Transports, Inc. v. Circle S. Transports, Inc.*, 856 S.W.2d 783, 789 (Tex. App. 1993); **Wyoming** *Examination Mgmt. Serv., Inc. v. Kirschbaum*, 927 P.2d 686, 697 (Wyo. 1996); *First Wyoming Bank, Casper v. Mudge*, 748 P.2d 713, 716 (Wyo. 1988).

(1) the existence of a contractual, or prospective contractual relation between itself and a third party;[15]

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship, or to prevent the prospective relation from occurring;[16]

(3) the absence of a privilege or justification on the defendant;[17]

(4) the occasioning of actual legal damage as a result of the defendants' conduct;[18] and

(5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference for the defendant.[19]

*Epic 1*, 290 B.R. at 524-25.

Highland Funds have cited one case to support the proposition that if the court finds tortious interference and egregious conduct, it may award punitive damages. Opposition, p. 17 n. 10 (citing *Lightening Lube v. Witco Corp.*, 4 F.3d 1153, 1167, 1192 (3d Cir. 1993)). This does not elevate the burden of proof – it only adds an element that must be proven, after establishing tortious interference, to warrant punitive damages, an additional remedy.

///

---

[15] This is the same as the first element required in Nevada.

[16] This is the same as the second and third elements required in Nevada.

[17] Nevada treats this element as an affirmative defense. As was noted in the Objection at page 19, footnote 9, "Generally speaking, acts taken by a party acting to promote its own economic interests are privileged." 45 Am.Jur.2d *Interference* § 28 (footnote omitted). Furthermore, "[i]t is not necessary that the interferer's interest outweigh that of the party whose rights are interfered with, it being sufficient if the impetus of the interferer's conduct lies in a proper business interests [*sic*] rather than in wrongful motives." *Id.* (footnote omitted). With respect to prospective business advantage, the Nevada Supreme Court has recognized that "[p]erhaps the most significant privilege or justification for interference with a prospective business advantage is free competition." *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199, 591 P.2d 1135, 1136 (1979) (quotations omitted). Here, it is not clear which version of interference the Highland Fund alleges. To the extent it alleges interference with prospective economic advantage, Diversified's actions were absolutely privileged. *See id.* (holding that a competitor is privileged to divert business by fair and reasonable means). *See also Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003).

[18] This is the same as the fourth and fifth elements required in Nevada.

### 3. The Epic Court Found no Intentional Interference by Diversified.

After carefully considering the facts and applying them to these element, the *Epic 1* Court unambiguously held that there was no purposeful action on the part of Diversified to harm the relationship between Epic and BONY and there was not an alteration of the contractual relationship between Epic and BONY. *Epic 1*, 209 B.R. at 524-25. The District Court affirmed by specifically holding that Diversified did not intend to harm any relationship between the Debtor and the Bondholders that included the Highland Funds. *Epic 2*, 307 B.R. at 772-73.

### C. THE TORTIOUS INTERFERENCE CLAIM WAS FULLY AND FAIRLY LITIGATED.

There is no question that the tortious interference claims were fully and fairly litigated in the Epic Bankruptcy case and the BONY Adversary Proceeding. *See above* at section II, pages 4-7. Any allegations to the Contrary are disingenuous at best.

### D. HIGHLAND FUNDS ARE IN PRIVITY WITH BONY.

The Highland funds deny that they were in privity with BONY without offering any evidence or authority suggesting that indenture trustees are not in privity with bondholders when they take action to collect amounts owed to those bondholders under an indenture. Opposition, pp. 19-20. Notwithstanding this denial, Highland Funds literally admits privity at several points in the Opposition. For example, the Highland Funds admit, "the bond trustee, *on behalf of the bondholders*, declared that an event of default existed under the Indenture and accelerated the entire amount due and owing under the Indenture and the Bonds." Opposition, p. 12, lines 1-3 (emphasis added). The Opposition then goes on to state that "[t]he Highland Funds concede that

---

[19] Nevada treats this as the proof required for interference with a prospective contract.

the District Court affirmed the Bankruptcy Court's finding that the Indenture trustee, *and therefore the Highland Funds, do not have a property interest in the property* [the Palm Springs Property] *and that the conduct of Diversified was not sufficiently sufficient to warrant equitable subordination.*" Opposition, p. 17. lines 2-6 (emphasis added). These admissions demonstrate that BONY.

### 1. The Highland Funds Were In Contractual Privity with BONY.

It also cannot be disputed that BONY was contractually in privity with Highland Funds. Section 11.05 of the Indenture provides:[20]

> ***The Trustee may***, in its sole discretion and without the consent of the Security Holders, **on behalf of the Security Holders, take all actions it deems necessary or appropriate in order to (a) enforce any of the terms of the Collateral Documents and (b) collect and receive any and all amounts available in respect of the Obligations of the Subsidiary Guarantors hereunder. The Trustee shall have power to institute and maintain such suits and proceedings** as it may deem expedient to prevent any impairment of the Collateral by any such acts that may be unlawful or in violation of the Collateral Documents or this Indenture, and such suits and proceedings **as the Trustee may deem expedient to preserve or protect its interests and the interests of the Security Holders in the Collateral.** . . .

Exhibit 4, *Indenture*, § 11.05 (emphasis added).

The language in the Indenture is similar to the language in the Bond Resolution analyzed by the Court in *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992). Section 11.4 of the *City of Seattle* Bond Resolution provided the indenture trustee with authority to:

> Enforce its rights and the rights of the holders of the Bonds under the Resolution . . . in the enforcement of *any other legal or equitable rights* as the Bond Fund Trustee, being advised by counsel, shall deed most effectual to enforce any of its rights or the rights of the holders of the Bonds . . .

*Id.* at 1280 (emphasis original). After analyzing this language, the *City of Seattle Court* concluded that the trustee had power to bring tort and fraud claims on behalf of the bondholders

---

[20] This language was also reproduced in the Objection and appears to have been ignored by the Highland Funds.

{00330833;}
US_WEST:260056390.6

- 13 -

and bind them to the compromise it negotiated. *Id.* The Ninth Circuit also noted that a different reading of the Bond Resolution would allow a single dissenting bondholder to deny the trustee the ability to settle or compromise claims for the bondholders, "an interpretation which we find to be incongruous." *Id.* at 1281.

### 2. Available Case Law Holds that Indenture Trustees are In Privity with Bondholders.

The Highland Funds notably fail to refer the Court to even one case holding that an indenture trustee is not in privity with the bondholders whose interest that trustee represents. The reason for this omission is that such precedence probably does not exist.

As was detailed in the Objection, the U.S. Supreme Court has held for over a century that bondholders are bound by the authorized acts of their indenture trustees. *See, e.g., Kersh Lake Drainage Dist. Of Jefferson, Lincoln and Desha Counties v. Johnson*, 309 U.S. 485 (1940)(holding that ***"bondholders are not necessary parties to and are bound by the decree - even if adverse to their interests - in litigation wherein an indenture trustee under a bond issue is a party"***) (citing *Elwell v. Fosdick*, 134 U.S. 500 (1890); *Richter v. Jerome*, 123 U.S. 233 (1887)); *Shaw v. Railroad Co.* 100 U.S. 605, 611 (1879)(stating ***"the trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them"***). The reason for this rule is obvious: "It would be a new and very dangerous doctrine in equity practice to hold that the *cestui que trust* [beneficiary] is not bound by the decree against his trustee in the very matter of the trust for which he was appointed." *Corcoran v. Chesapeake and Ohio Canal Co.*, 94 U.S. 741, 745 (1876)

The Ninth Circuit has followed this general rule by holding that bondholders are bound by the acts of their indenture trustees on two occasions. *See, e.g., Class Plaintiffs v. City of Seattle,*

955 F.2d 1268 (9th Cir. 1992); *Stratosphere Litigation, LLC v. Grand Casinos, Inc.*, 298 F.3d 1137 (9th Cir. 2002).[21]

### 3. Highland Funds' and BONY's Common Counsel is Significant.

This Court cannot ignore the fact that Highland Funds and BONY had the same counsel in the Epic Bankruptcy. This is persuasive evidence of privity. *See Ungar v. North Dakota State University*, 721 N.W.2d 16, 21 (N.D. 2006)(holding that privity exists where the party to the subsequent action "actively exercised by prosecution of the [prior] action, [by] employment of counsel"); *Arkansas Department of Human Services v. Dearman*, 40 Ark. App. 63, 71-72, 842 S.W.2d 449, 454 (1992)(same); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 667, 677 (5th Cir.2003).

There is no doubt that BONY, acting through Highland Funds counsel, made a valiant effort to convince the Epic Bankruptcy Court that Diversified tortiously interfered with the Indenture. If that litigation were successful, the benefits received from that litigation would have inured to the Highland Funds. Thus, the BONY acted as the Highland Funds' virtual representative and diligently represented Highland Funds' interests.

The doctrine of "virtual representation" allows for the "preclusion of parties not present in the first case, provided that someone who was present had the same interest as the absent party and so had every reason to prosecute or defend the case as vigorously." *Petit v. City of Chicago*, 766 F.Supp. 607, 611 (N.D. Ill. 1991). Here there is no dispute that BONY acted as Highland Funds' virtual representative in the Epic Bankruptcy, especially given the fact that they had the same counsel.

///

---

[21] Highland Funds argue that *Stratosphere* does not apply to this case because it involved a confirmation order. There really is not dispute that a confirmation order is a final order for *res judicata* and collateral estoppel purposes, just like any other final order.

### E. *RES JUDICATA* REQUIRES THIS COURT TO DISALLOW THE CLAIM.

Amazingly, the Highland Funds virtually ignore *res judicata* in their Opposition. As was detailed in the Objection, "*Res Judicata*, commonly referred to as claim preclusion, prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceeding." Russell, *Bankruptcy Evidence Manual*, § 1:1 (2006 ed.). The modern view of claim preclusion is expansive, "embrac[ing] all grounds of recovery that were asserted in a suit, *as well as those that could have been asserted, and thus has a broader reach than collateral estoppel.*" *University of Nevada v. Tarkanian*, 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994) (citation omitted)(emphasis added); *see also CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 191 (3d Cir. 1999) (claim preclusion "bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action") (citations omitted). Moreover, "[t]he Restatement [of Judgments] observes that a claim extinguished by *res judicata* 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1998) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

All of the elements for application of *res judicata* are present in the case.[22] It cannot be disputed that the decisions of *Epic 1* and *Epic 2* were final decisions on the merits, that Highland Funds was in privity with BONY and that the Nevada Complaint arises from the same set of facts and allegations litigated in the BONY Adversary Proceeding. Thus, this Court should disallow the Highland Funds' Claim.

///

---

[22] *See* Opposition, pages 8-9, for a discussion of the elements for *res judicata*.

{00330833;}
US_WEST:260056390.6

- 16 -

### F. COLLATERAL ESTOPPEL REQUIRES THIS COURT TO DISALLOW THE CLAIM.

Here, it cannot be reasonably disputed that all four of the elements for collateral estoppel are present.[23] First, the issues presented by the Nevada Complaint arise from identical underlying events and are identical to the issues litigated in the BONY Adversary Proceeding. Both cases are predicated upon allegations that Diversified tortiously interfered with the Indenture by loaning funds to and accepting collateral from Epic Palm Springs. The Epic Bankruptcy Court held that Diversified did not tortiously interfere with the Indenture and the District Court for the District of Delaware affirmed that holding. *See Epic 1* and *Epic 2*. Second, *Epic 1* and *Epic 2* were clearly final judgments on the merits. Third, the Highland Funds and BONY were, without a question, in privity with one another. Fourth, there is no question that the Highland Funds, acting through BONY, had a full opportunity to litigate these questions. Not only did Highland Funds and BONY share the same counsel in the Epic Bankruptcy, the case was fully litigated and adjudicated at a hearing on a motion for summary judgment and appealed.

### G. HIGHLAND FUNDS CANNOT MAINTAIN A CLAIM FOR TORTIOUS INTERFERENCE AND THE DERIVATIVE CLAIMS IN ANY EVENT.

Given the unambiguous findings of the *Epic 1* Court, which were affirmed in *Epic 2*, it is clear that the Highland Funds cannot maintain a tortious interference action or any derivative actions, such as conspiracy and aiding and abetting, against Diversified. Since Diversified loans money to borrowers in the ordinary course of its business, the act of lending money to Epic and accepting a security interest in the Palm Springs Property was privileged.

///

///

---

[23] *See* Opposition, pages 16-17 for a discussion of the elements of collateral estoppel.

{00330833;}
US_WEST:260056390.6

- 17 -

## IV.

## CONCLUSION

There is no doubt that the $20,000,000 Claim asserted by the Highland Funds is barred by the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). For that reason this Court should disallow the Claim in its entirety.

Dated this 12th day of October 2006.

BECKLEY SINGLETON, CHTD.

By: /s/ Bob L. Olson
Bob L. Olson (Nevada Bar No. 3783)
Anne M. Loraditch (Nevada Bar No. 8164)
530 Las Vegas Boulevard South
Las Vegas, Nevada 89101

*Attorneys for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC*

###