Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

**E-FILED ON OCTOBER 18, 2006**

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **REPLY IN SUPPORT OF MOTION FOR ORDER SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN ASSETS, APPOINTING SPCP, LLC AS LEAD BIDDER, AND APPROVING BID PROCEDURES AND PROTECTIONS** |
| Affects:<br>☒  All Debtors<br>☐  USA Commercial Mortgage Company<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA Capital First Trust Deed Fund, LLC<br>☐  USA Securities, LLC | Date:  October 19, 2006<br>Time:  9:30 a.m. |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC ("Realty Advisors"), and USA Securities, LLC ("USA Securities") (collectively, the "Debtors"), respectfully submit this Reply Memorandum in support of their *Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC as Lead Bidder, and Approving Bid Procedures and Protections* (the "Bid Procedures and Protection Motion"),[1] filed September 22, 2006 (docket no. 1352).

The only timely objection to the Bid Procedures and Protection Motion was filed October 12, 2006 by Capital Crossing Bank ("CCB") (the "CCB Objection") (docket no. 1512), which was joined by a group of direct lenders known as the "JV Direct Lenders," who filed a simple one-sentence joinder in support of the CCB Objection (the "JV Lenders' Joinder") (docket no. 1536). The CCB Objection argues that: (1) the Break-Up Fee is unwarranted or excessive; (2) the initial overbid increment of $500,000 (the "Initial Overbid Increment") is excessive and should be reduced to $100,000; and (3) SPCP Group, LLC ("Silver Point") should be required to tender a cash deposit in advance of the Auction in the same amount as other Qualified Bidders.[2]

## PRELIMINARY STATEMENT

The Debtors and each of the four official committees appointed by the United States Trustee in these cases (collectively, the "Committees") support the Bid Procedures and Protection

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or in the Asset Purchase Agreement to be filed prior to the October 19, 2006 hearing.

[2] In addition, upon reviewing the proposed Bid Procedures, the Official Committee of Holders of Executory Contract Rights Through USA Commercial Mortgage Company ("ECC") and the Official Committee of Equity Security Holders of USA Capital Diversified Trust Fund, LLC ("Diversified Committee") requested that they be permitted, along with the Debtors, the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC ("FTDF Committee"), and the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company ("UCC"), to participate in the selection of the "Successful Bidder" and the "Next Highest Bidder," as contemplated in the Bid Procedures. In response to these concerns, the Debtors have revised the Bid Procedures to provide for the participation of all the Committees, as well as the Debtors, in the selection of the "Successful Bidder" and the "Next Highest Bidder" at the Auction. These changes are reflected in the revised Bid Procedures, which are attached hereto as **Exhibit "A."**

1   Motion.[3]  Through the Bid Procedures and Protection Motion, the Debtors and the Committees

2   jointly seek to establish a mechanism to monetize a substantial portion of the Debtors' assets (the

3   "Assets"), making possible a plan of reorganization that the Debtors believe represents the best

4   opportunity to achieve a maximum return for creditors and investors in these cases, in the shortest

5   time frame possible.  The Debtors actively marketed their assets, and through that process

6   identified Silver Point as having the best bid to purchase the Property on terms and for a price

7   acceptable to the Debtors and the Committees.

8          In the Debtors' business judgment, Silver Point also has the necessary skills and

9   experience to effectively manage the Debtors' servicing agreements, and has substantial lending

10  experience that will enable it to efficiently analyze and value the Debtors' various lending

11  arrangements.  The Debtors and Committees therefore believe that Silver Point's commitment to

12  provide the opening bid at the Auction (subject to the entry of an order approving the Bid

13  Procedures and Protection Motion) represents the Debtors' best opportunity to realize the

14  maximum value for the Property to be acquired through a competitive auction process.

15         Moreover, the CCB Objection is suspect and could serve to disrupt the Debtors' and the

16  Committees' efforts to achieve a favorable and expeditious resolution to these difficult cases.  In a

17  transparent attempt to create the requisite standing to oppose the Bid Procedures and Protection

18  Motion, on the day before it filed the CCB Objection, CCB filed two Notices of Transfer of Claim

19  indicating that CCB purchased a priority claim (which will be paid in full under a plan of

20  reorganization in any event) against USACM in the scheduled amount of $3,256.50, and a general

21  unsecured claim against USACM in the scheduled amount of $145.99.  CCB's objections clearly

22  are not made in its capacity as a "creditor" attempting to maximize the distribution on its *de*

23  *minimus* $145.99 general unsecured claim.  Rather, CCB is objecting to the Bid Procedures and

24  Protection Motion in its capacity as a potential bidder in order to try to gain an advantage in the

25  bidding process in an attempt to thwart the joint efforts of the Debtors and the Committees.  *See*

26

27  _____

28  [3]   The Bid Procedure and Protection Motion is further supported by the Declaration of Thomas J. Allison
    in Support of Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP
    Group, LLC, as Lead Bidder and Approving Bid Procedures and Protections (the "Allison Declaration")
    filed concurrently herewith.  Silver Point has also authorized the Debtors to represent that Silver Point also
    concurs with the substance of this pleading.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   *Figter Ltd. v. Teachers Ins. & Annuity Ass'n of America (In re Figter Ltd.)*, 118 F.3d 635, 639 (9th

2   Cir. 1997) ("Courts . . . have been sensitive to situations where a company, which was not a

3   preexisting creditor, has purchased a claim for the purpose of blocking an action against it.").

4   Accordingly, as a potential bidder, CCB is without standing to object to the Bid Procedures and

5   Protection Motion. *See, e.g., In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 (Bankr. W.D.

6   Tex. 2000) (holding that a competing bidder lacks standing to "even challenge a sale"); *Ordower*

7   *v. Martino*, 1993 WL 500813, *2 (N.D. Ill. Nov. 19, 1993) ("Statutes and rules governing asset

8   sales are designed to protect the estate, and not potential purchasers.") (quoting *In re HST*

9   *Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991)); *In re NEPSCO, Inc*., 36 B.R. 25, 27 (Bankr.

10  Me. 1983) (noting that nothing in the Bankruptcy Code "indicates that prospective purchasers are

11  within the zone of interests intended to be protected through [the] statutory scheme" governing

12  bankruptcy asset sales). For the foregoing reasons, as well as those discussed in more detail

13  below, the CCB Objection should be overruled.

## **REPLY ARGUMENT**

14

15  I.    THE BREAK-UP FEE IS NECESSARY TO MAXIMIZE VALUE FOR THE DEBTORS'
        ESTATES AND IS NOT EXCESSIVE.
16

17      The CCB Objection is not well founded and should be overruled by the Court. The

18  primary argument advanced by CCB is that the proposed Break-Up Fee should be "carefully

19  scrutinized" by the Court and should be rejected or reduced because it cannot withstand such

20  scrutiny. To the contrary, the Break-Up Fee is a proper exercise of Debtors' business judgment

21  and is reasonable and necessary under the circumstances to maximize the value of the Property

22  being sold for the benefit of the Debtors' estates. Even under careful scrutiny, the Break-Up Fee

23  should be approved.

24          A.    The Committees and Debtors Fully Support the Break-Up Fee.

25      All of the various constituencies in these cases, including direct lenders, unsecured

26  creditors, and fund members, have been aggressively represented by the various Committees. The

27  Committees and their professionals were intimately involved in the process of identifying

28  potential bidders who expressed an interest in acquiring the assets of the Debtors' estates, and in

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    negotiating the Offer Letter and the resulting Agreement with Silver Point. These negotiations

2    resulted in a proposed Break-Up Fee that is substantially less than the amount first sought by

3    Silver Point, and substantially less than the overbid protections that <u>any</u> other potential bidder

4    requested. Each of the Committees, on behalf of their constituencies, support the Break-Up Fee as

5    a reasonable and necessary component of the Bid Procedures that will facilitate the sale of the

6    Property by the Debtors to Silver Point or some other higher bidder that will provide the basis for

7    the Debtors' plan of reorganization.

8        B.    <u>The Break-Up Fee is Necessary In This Case and Is in the Best Interests of the
           Debtors' Estates and Their Respective Constituencies.</u>

9

10       In this case, as evidenced by the support of each of the Committees, the Break-Up Fee is in

11   the best interests of the Debtors' estates and their respective constituencies. As the Debtors

12   explained in the Bid Procedures and Protection Motion, the Break-Up Fee was a significant deal

13   point for Silver Point and, in its absence, the Debtors, along with the Committees, believe that

14   Silver Point would not have executed the Agreement (or incurred substantial costs related thereto),

15   and there would not have been a "stalking horse" bidder for the Property. *See* Allison Declaration

16   ¶¶ 9, 28. In fact, the evidentiary record clearly establishes that Silver Point was willing to come

17   forward and be identified as the lead bidder for the Property in large part because the Debtors

18   would seek Court approval of the Bid Procedures, including the Break-Up Fee. In particular, the

19   Debtors' Chief Restructuring Officer believes there is a significant risk that, if the Break-Up Fee is

20   not approved, Silver Point will walk away from its bid and significant time, effort, and money of

21   the Debtors' estates will have been wasted. Allison Declaration ¶¶ 9, 17, 19, 26, 27. There is no

22   assurance that if Silver Point withdraws, CCB or any other potential bidder will come forward and

23   propose to purchase the Property for an amount equal to or greater than the price offered by Silver

24   Point. In fact, <u>CCB has not submitted a written offer of any kind to the Debtors</u>, and no other

25   potential purchaser has submitted an offer that is as favorable in terms of economics and structure,

26   both of which are important to the Debtors and the Committees. *See* Allison Declaration ¶ 30.

27   The Debtors' estates simply cannot bear the risk or cost of further delaying the exit from these

28   chapter 11 cases.

The Silver Point transaction provides assurance of a solid floor price and may provide a basis for achieving an even higher return through the Auction process, thereby providing the key foundation for the Debtors' plan of reorganization. As there is significant risk that Silver Point may walk away from this transaction if it does not receive the bid protections it specifically negotiated, the Debtors, along with the Committees, fully support the Break-Up Fee component of the Bid Procedures as being in the best interests of the Debtors' estates.

   C. <u>The Cases CCB Relies Upon Are Factually Distinguishable From This Case</u>.

  In objecting to the Break-Up Fee, CCB relies on certain cases denying break-up fees that are inapposite to the facts at hand. In so doing, CCB refuses to acknowledge the realities of these cases, choosing instead to proceed with the flawed assumption that every sale process is the same and, therefore, that break-up fee case law may be uniformly applied. Indeed, given the facts of these cases, the Break-Up Fee withstands scrutiny under any of the cases cited by CCB.

  *Gey Assocs. Gen. P'ship v. 310 Assocs., L.P.*, 2002 U.S. Dist. LEXIS 20759 (October 23, 2002) is a glaring example of CCB misapplying case law in arguing against the Break-Up Fee. CCB cites *Gey* for the propositions that the Break-Up Fee should be denied because it will not encourage bidding or enhance the purchase price of the Property and quotes the *Gey* court's language that a break-up fee was unnecessary because "two buyers [were] drooling to make this purchase." Conveniently, CCB neglects to mention that the two potential purchasers in *Gey* had each entered into prepetition contracts to purchase the debtor's assets. Additionally, CCB fails to acknowledge that upon learning of the impending sale to the stalking horse bidder, the objecting potential purchaser offered, both privately and in open court, to purchase the debtor's assets for $3.2 million, which equaled the amount offered by the stalking horse bidder ($3.1 million) plus the proposed break-up fee of $100,000. While CCB may view itself as a buyer "drooling to make this purchase," CCB has done little to prove its firm commitment to purchase the Property. Unlike the objecting potential purchaser in *Gey*, CCB has done nothing to render the Break-Up Fee unnecessary, such as entering into an agreement to purchase the Property or offering to purchase the Property for the Purchase Price plus the Break-Up Fee. Rather, CCB simply remains an uncommitted potential purchaser of the Property that is looking to acquire the Property for as little

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   as possible without regard to whether the Auction actually takes place and the Sale, in turn, is

2   consummated.

3       CCB's reliance on *In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994),

4   is also misplaced.  In *America West,* the court specifically found that the proposed break-up fee

5   was "not in the best interest of the estate, the creditors or the equity holders."  166 B.R. at 913.

6   The *America West* court noted in particular that at the time the break-up fee was being considered,

7   the debtor "was a valuable going concern which is now on the verge of profitability" and therefore

8   there was "no need to induce bidding for this company."  *Id.*   In stark contrast to the debtor in

9   *America West*, the Debtors in this case certainly are not anywhere near "the verge of profitability,"

10  and there is an urgent need to conclude the Debtors' cases quickly with a confirmed plan of

11  reorganization that is based on the lead bid of Silver Point – the only potential bidder that was

12  willing to step forward as a stalking-horse bidder and offer a price and a deal structure that was

13  acceptable to the Debtors and the Committees.

14      Similarly, CCB argues that the Break-Up Fee would not  pass muster under the standard

15  adopted by the court in *In re Tiara Motorcoach Corp.*, 212 B.R. 133 (Bankr. N.D. Ind. 1997), that

16  bankruptcy courts should "carefully scrutinize" break-up fees to "insure that revenues are

17  maximized and that the best interests of the debtor's estates, creditors and equity holders are

18  furthered."  *Id.* at 137.  While the standard adopted by *Tiara*, which is the same as that relied upon

19  by *America West*, may be relevant to the Court's decision on the Break-Up Fee, the facts of *Tiara*

20  are not.  In *Tiara*, the debtor sought approval of a $200,000 break-up fee contained pursuant to a

21  prepetition letter of intent by which a prospective purchaser agreed to buy the debtor's assets for

22  $2.8 million plus assumption of certain liabilities.  Immediately after filing its chapter 11 petition,

23  the debtor moved to have the break-up fee approved on shortened time, but the debtor did not

24  provide bid procedures nor did it solicit post-petition bids.  Understandably, the debtor's motion

25  gave rise to five objections, including from the United States Trustee and the unsecured creditors'

26  committee because, among other things, the proposed *Tiara* break-up fee was nothing more than a

27  disguised penalty in the event that the debtor sold its assets to a different entity.  In contrast, the

28  Break-Up Fee is essential to securing Silver Point's bid and ensuring that the Property will be sold

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   pursuant to detailed, formal, and widely disseminated procedures.  Whereas the purpose of the

2   proposed break-up fee in *Tiara* was punitive, here the purpose of the Break-Up Fee is to enable the

3   Debtors to obtain the highest possible return for the Property on behalf of the Debtors' estates,

4   creditors, and equity interests.

5           In sum, CCB has failed to substantiate its argument that the Break-Up Fee should be

6   denied.  To the contrary, the Break-Up Fee, as supported by the Debtors and the Committees, is

7   necessary to facilitate an auction process that will allow the Debtors to maximize the value of the

8   Property being sold and will provide the Debtors with the best opportunity for obtaining timely

9   confirmation of a plan of reorganization.

10  II.      THE INITIAL OVERBID INCREMENT IS REASONABLE AS PROPOSED.

11          In light of a stalking horse bid in excess of $46.5 million, the initial overbid increment in

12  the amount of $500,000 (the "Initial Overbid Increment") is reasonable and will foster competitive

13  bidding at the Auction.  As set forth in the Bid Procedures, the initial Increased Bid will have an

14  increased cash component of $2 million, representing the Break-Up Fee and the Initial Overbid

15  Increment.  Far from being a barrier to entry, the Initial Overbid Increment represents just a 1%

16  increase to Silver Point's stalking horse bid and, when taken together with the amount of the

17  Break-Up Fee, represents an approximately 4% increase.  This relatively small initial incremental

18  overbid will not chill the bidding process.  Rather, it will ensure that Qualified Bidders who wish

19  to bid for the Property will have the resources to participate in the Auction and will provide the

20  basis for a competitive Auction that will allow the Debtors to receive the best possible price for

21  the Assets.

22          Having the Debtors and Committees participate in a formal auction process is not without

23  its costs to the Debtors' estates.  The Debtors and Committees negotiated with Silver Point and

24  agreed to an amount for the Initial Overbid Increment that would be sure to cover the potentially

25  very substantial costs to the estates of going through the auction process and, if Silver Point is not

26  ultimately the successful bidder, working with a new party to insure that it is able to ultimately

27  close the transaction.

28  / / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

III.    SILVER POINT WILL TENDER TO DEBTORS A CASH DEPOSIT IN THE SAME AMOUNT REQUIRED OF ALL QUALIFIED BIDDERS

CCB also objects to the Bid Procedures on the basis that Silver Point should be required to make a cash deposit in advance of the Auction in the same amount as that required of a "Qualified Bidder." This objection is now moot. Based upon continuing negotiations between the parties, Silver Point has agreed to tender to the Debtors a cash deposit in the amount of $2,350,000, which is the same amount required of all Qualified Bidders, which is now reflected in paragraph 3.v. of the Bid Procedures, a copy of which is attached hereto as **Exhibit "A."**

IV.    THE NOTICE OF SALE OF PROPERTY, BID PROCEDURES AND INVITATION FOR HIGHER AND BETTER OFFERS

The Bid Procedures and Protection Motion also seeks approval of the form of notice that will notify parties in interest, including potential bidders, of the Bid Procedures, including the date of the Auction, and will solicit the submission of higher and better Qualified Bids. In accordance with the Bid Procedures and Protection Motion, the Debtors hereby file a form of such a proposed notice, a copy of which is attached hereto as **Exhibit "B."**

## CONCLUSION

Based on the foregoing, Debtors and Committees respectfully request that the relief requested in the Bid Procedures and Protection Motion, as modified herein, be granted, and that the CCB Objection and the JV Lenders' Joinder be overruled.

DATED:  October 18, 2006.

Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
and

_/s/  Jeanette E. McPherson_
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Attorneys for Debtors and Debtors-in-Possession

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**CERTIFICATE OF SERVICE**

1.   On October 18, 2006, I served the following document(s):

a.   **REPLY IN SUPPORT OF MOTION FOR ORDER SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN ASSETS, APPOINTING SPCP, LLC AS LEAD BIDDER, AND APPROVING BID PROCEDURES AND PROTECTIONS**

2.   I served the above-named document(s) by the following means to the persons as listed below:

☒      a.     **By ECF System**:

FRANKLIN C. ADAMS      franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com

NANCY L ALLF     nallf@parsonsbehle.com,
klawrence@parsonsbehle.com;tthomas@parsonsbehle.com;ecf@parsonsbehle.com

OGONNA M. ATAMOH     oatamoh@nevadafirm.com,
bkecf@nevadafirm.com;paltstatt@nevadafirm.com;sliberio@nevadafirm.com

KERIANN M ATENCIO     ATENCIOK@GTLAW.COM

BMC GROUP, INC.     evrato@bmcgroup.com,
ecf@bmcgroup.com;jmiller@bmcgroup.com;jbartlett@bmcgroup.com

KELLY J. BRINKMAN     kbrinkman@gooldpatterson.com

THOMAS R BROOKSBANK     tom@tombrooksbank.com, renee@tombrooksbank.com

ANDREW M. BRUMBY     abrumby@shutts-law! .com, rhicks@shutts-law.com;lmackson@shutts-law.com

MATTHEW Q. CALLISTER     mqc@callister-reynolds.com, maggie@callister-reynolds.com

CANDACE C CARLYON     ltreadway@sheacarlyon.com,
ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rmsmith@sheacarlyon.com

ROB CHARLES     rcharles@lrlaw.com, cjordan@lrlaw.com

MICHAEL W. CHEN     yvette@ccfirm.com

KEVIN B. CHRISTENSEN     kbchrislaw@aol.com

JANET L. CHUBB     tbw@jonesvargas.com

JEFFREY A. COGAN     jeffrey@jeffreycogan.com, sarah@jeffreycogan.com

WILLIAM D COPE     cope_guerra@yahoo.com

CICI CUNNINGHAM     bankruptcy@rocgd.com

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    LA UREL E. DAVIS    bklsclv@lionelsawyer.com,
     ldavis@lionelsawyer.com;gbagley@lionelsawyer.com;ldavisesq@aol.com

2

3    DEBT ACQUISITION COMPANY OF AMERICA V, LLC (tf)    tfette@daca4.com

4    THOMAS H. FELL    BANKRUPTCYNOTICES@GORDONSILVER.COM

5    SCOTT D. FLEMING    sfleming@halelane.com, dbergsing@halelane.com,ecfvegas@halelane.com

6    GREGORY E GARMAN    bankruptcynotices@gordonsilver.com

7    WADE B. GOCHNOUR    wgochnour@hwmlvlaw.com, donnat@hwmlvlaw.com

8    CARLOS A. GONZALEZ    carlos.gonzalez2@usdoj.gov,
     Darlene.Ruckard@usdoj.gov;Eunice.Jones@usdoj.gov;Sue.Knight@usdoj.gov

9

10   GERALD M GORDON    bankruptcynotices@gordonsilver.com

11   R. VAUGHN GOURLEY    vgourley@lvcm.com

12   TALITHA B. GRAY    bankruptcynotices@gordonsilver.com

13   JAMES D. GREENE    bknotice@schrecklaw.com

14   MARJORIE A. GUYMON    bankruptcy@goldguylaw.com, ddias@goldguylaw.com

15   JEFFREY R. HALL    jhall@sheacarlyon.com,
     bankruptcyfilings@sheacarlyon.com;aboehmer@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sh
16   eacarlyon.com

17   XANNA R. HARDMAN    xanna.hardman@gmail.com

18   STEPHEN R HARRIS    noticesbh&p@renolaw.biz

19   BRIGID M. HIGGINS    bankruptcynotices@gordonsilver.com

20   DAVID W. HUSTON    dwh@hustonlaw.net, swaits@hustonlaw.net

21   CHRISTOPHER D JAIME    cjai! me@walth erkey.com, kbernhar@waltherkey.com

22   EVAN L. JAMES    ejameslv@earthlink.net, kbchrislaw@aol.com

23   TY E. KEHOE    TyKehoeLaw@aol.com

24   ROBERT R. KINAS    rkinas@swlaw.com,
     mstrand@swlaw.com;jlustig@swlaw.com;chaines@swlaw.com;imccord@swlaw.com
25

26   ZACHARIAH LARSON    ecf@lslawnv.com

27   JOHN J. LAXAGUE    jlaxague@caneclark.com

28   GEORGE C LAZAR    glazar@foxjohns.com, gclazar@sbcglobal.net

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    NILE LEATHAM    nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

2    ROBERT C. LEPOME    robert@robertlepome.com, susan@robertlepome.com

3    ANNE M. LORADITCH    ! ecffilings@beckleylaw.com,
     aloraditch@beckleylaw.com;pkois@beckleylaw.com
4

5    REGINA M. MCCONNELL    rmcconnell@kssattorneys.com

6    WILLIAM L. MCGIMSEY    lawoffices601@lvcoxmail.com

7    RICHARD MCKNIGHT    mcknightlaw@cox.net, gkopang@lawlasvegas.com;cburke@lawlasvegas.com

8    SHAWN W MILLER    bankruptcyfilings@sheacarlyon.com,
     smiller@sheacarlyon.com;aboehmer@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sheacarlyon.
9    com

10   DAVID MINCIN    mcknightlaw@cox.net,
     gkopang@lawlasvegas.com;dmincin@lawlasvegas.com,cburke@lawlasvegas.com
11

12   JOHN F MURTHA    jmurtha@woodburnandwedge.com!

13   ERVEN T. NELSON    erv@rlbolick.com, susan@rlbolick.com

14   VICTORIA L NELSON    bkecf@nevadafirm.com,
     vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rholley@nevadafirm.com;sliberio@nevadafirm.com

15   BOB L. OLSON    ecffilings@beckleylaw.com, bolson@beckleylaw.com;dgriffis@beckleylaw.com

16
     DONNA M. OSBORN    ebaker@marquisaurbach.com,
17   dosborn@marquisaurbach.com;tszostek@marquisaurbach.com;kgallegos@MarquisAurbach.com

18   ANDREW M. PARLEN    aparlen@stutman.com

19   DONALD T. POLEDNAK    sandplegal@yahoo.com, spbankruptcy@yahoo.com

20   PAUL C RAY    info@johnpeterlee.com

21   SUSAN WILLIAMS SCANN    sscann@deanerlaw.com, pale! xander@deanerlaw.com

22   JAMES PATRICK SHEA    bankruptcyfilings@sheacarlyon.com,
23   ltreadway@sheacarlyon.com;rmsmith@sheacarlyon.com

24   SHLOMO S. SHERMAN    ssherman@sheacarlyon.com,
     aboehmer@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sh
25   eacarlyon.com

26   AMBRISH S. SIDHU    ecf@lslawnv.com

27   JEFFREY G. SLOANE    gjklepel@yahoo.com, rmcconnell@kssattorneys.com

28   DAVID A. STEPHENS    dstephens@lvcm.com

1    PETER SUSI    cheryl@msmlaw.com, msm@msmlaw.com

2    JEFFREY R. SYLVESTER    jeff@sylvesterpolednak.com, David@sylvesterpolednak.c! om

3    CARYN S. TIJSSELING !    &n bsp cst@beesleymatteoni.com, aha@beesleymatteoni.com

4    AMY N TIRRE    atirre@kkbrf.com, ksims@kkbrf.com;lleverett@kkbrf.com

5    U.S. TRUSTEE - LV - 11    USTPRegion17.lv.ecf@usdoj.gov

6    GREGORY J. WALCH    GWalch@Nevadafirm.com

7    WHITNEY B. WARNICK    wbw@albrightstoddard.com, bstessel@albrightstoddard.com

8    JOAN C WRIGHT    jwright@allisonmackenzie.com, jbrooks@allisonmackenzie.com

9    MATTHEW C. ZIRZOW    bankruptcynotices@gordonsilver.com

10

11    ☐    b.    **By United States mail, postage fully prepaid**:
☐    c.    **By Personal Service**

12            I personally delivered the document(s) to the persons at these addresses:
☐    For a party represented by an attorney, delivery was made by handing the

13    document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or
other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place

14    in the office.
☐    For a party, delivery was made by handing the document(s) to the party or by

15    leaving the document(s) at the person's dwelling house or usual place of abode with someone of

16    suitable age and discretion residing there.

17    ☐    d.    **By direct email (as opposed to through the ECF System)**
            Based upon the written agreement to accept service by email or a court order, I

18    caused the document(s) to be sent to the persons at the email addresses listed below.  I did not
receive, within a reasonable time after the transmission, any electronic message or other indication

19    that the transmission was unsuccessful.

20

21    ☐    e.    **By fax transmission**
            Based upon the written agreement of the parties to accept service by fax

22    transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed
below.  No error was reported by the fax machine that I used.  A copy of the record of the fax

23    transmission is attached.

24    ☐    f.    **By messenger**
            I served the document(s) by placing them in an envelope or package addressed to

25    the persons at the addresses listed below and providing them to a messenger for service.

26    **I declare under penalty of perjury that the foregoing is true and correct.**

27    Signed on:    October 18, 2006

28    LIA DORSEY                                    /s/    *LIA DORSEY*
(Name of Declarant)                        (Signature of Declarant)

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*Exhibit A*

# BID PROCEDURES

The following procedures (the "Bid Procedures") shall apply in conducting an auction and identifying the "Successful Bidder" (as defined below) for certain assets (the "Property") to be sold in connection with a plan of reorganization in the jointly administered chapter 11 bankruptcy cases of USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC, and USA Securities, LLC (collectively "Debtors"). [These Bid Procedures have been approved and authorized by an order (the "Bid Procedures Order") of the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").]

1.    Property to be Sold. Pursuant to that certain Asset Purchase Agreement (the "Purchase Agreement") by and between SPCP Group, LLC ("Purchaser") and the Debtors, [which shall be filed with the Bankruptcy Court no later than three (3) business days prior to the October 19, 2006 hearing on the approval of the Bid Procedures], the Purchaser has agreed to purchase the Property, which is comprised of the First Trust Deed Property and the Commercial Mortgage Property (as those terms are defined in the Purchase Agreement). Copies of the Purchase Agreement and Bid Procedures Order are available electronically on the Debtors' website, www.usacapitalcorp.com. As provided in the Bid Procedures Order, the sale of the Property (the "Sale"), following the conclusion of the Auction (as defined below), is subject to Bankruptcy Court approval and will be considered at a hearing on the confirmation (the "Confirmation Hearing") of the Debtors' plan of reorganization (the "Plan"). The Purchaser shall be treated as a Qualified Bidder (as defined below) and the Purchase Agreement shall be treated as a Qualified Bid (as defined below) for all purposes under these Bid Procedures.

2.    Due Diligence and Preliminary Qualifications. In order for a potential bidder ("Potential Bidder") to perform due diligence and examine the Property, a Potential Bidder must first submit to the Debtors and each of the official committees appointed in these cases (the "Committees") the following:

i.    to the extent not previously provided to the Debtors, an executed confidentiality agreement (the form of which will be provided upon request) in form and substance satisfactory to the Debtors ("Confidentiality Agreement"),

ii.    satisfactory evidence of the Potential Bidder's financial ability to close the Sale, including, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current financial statements of the equity holder(s) of the Potential Bidder, and/or such other financial disclosures acceptable to, and requested by, the Debtors ("Financial Disclosures"),

iii.    A written statement of the Potential Bidder's intentions with respect to servicing the loans identified in the Purchase Agreement, and satisfactory evidence of the Potential Bidder's qualifications to act as a loan servicer, and its ability to perform the obligations under the Loan Servicing Agreements or, in the case of a Joint Bid (as defined below), the same information for at least one of the joint bidders.

1

The requirements of this Section 2 shall collectively constitute the "Preliminary Qualifications." The initial determination of whether a Potential Bidder has satisfied the Preliminary Qualifications is within the discretion of the Debtors, although the Debtors agree to consult with the Committees in making each determination. Within three (3) business days of a Potential Bidder submitting its Preliminary Qualifications, the Debtors shall notify the Potential Bidder of whether it has satisfied the Preliminary Qualifications. Any disputes as to whether a Potential Bidder has satisfied the Preliminary Qualifications (including if any of the Committees disagrees with the Debtors' determination) shall be resolved by the Bankruptcy Court. All reasonable efforts will be made to provide a Potential Bidder that satisfies the conditions of this Section 2 with such information as such Potential Bidder may determine is necessary or relevant to the formulation of its bid.

3.    Qualified Bidders. To be a "Qualified Bidder," a Potential Bidder which has received notice that it has satisfied the Preliminary Qualifications must submit to the Debtors, with copies to each of the Committees, a "Qualified Bid" consisting of all of the following items by no later than 4:00 p.m. prevailing Pacific Time on [November 28, 2006] (i.e., seven days prior to the scheduled Auction (as defined below)) (the "Qualification Deadline"):

i.    a letter setting forth the identity of the Potential Bidder (including, for a Joint Bid, the identity of each of the joint bidders), the contact information for such Potential Bidder, and full disclosure of any pre-petition or post-petition affiliation that the Potential Bidder may have with any of the: (a) Debtors or their retained professionals; (b) major creditors of the Debtors or such parties' retained professionals; (c) equity security holders of USACM or such parties' retained professionals; (d) any of the Debtors' former or current officers or directors or other insiders; or (e) any affiliates of the Debtors;

ii.    an executed letter acknowledging receipt of a copy of the Bid Procedures, and agreeing to accept and be bound by the Bid Procedures;

iii.    an executed asset purchase agreement (and a black-lined version of that agreement as compared with the Purchase Agreement) which shall contain terms and conditions for the purchase of the Property that are substantially identical to or better than those contained in the Purchase Agreement, which shall provide for a closing on the date required by the Purchase Agreement and which shall not contain any conditions to closing based upon the ability of the Potential Bidder to obtain financing, the outcome of unperformed due diligence by the Potential Bidder, or any reason other than those set forth in the Purchase Agreement;

iv.    a disclosure of the proposed purchase price, which must be equal to the Total Asset Purchase Price (as defined in the Purchase Agreement) offered by Purchaser on a basis no less favorable than the Purchase Agreement, and provided further that the assets being purchased must include the same Property being purchased in the Purchase Agreement, and that the proposed cash consideration must be equal to the cash component of the Total Asset Purchase Price (as defined in the Purchase Agreement), and that the proposed purchase is subject to the Auction bidding requirements set forth below in Section 4.v., and provided further that if there is no Minimum Incremental Overbid (as defined below) from a Qualified Bidder at the Auction, then the Purchaser shall be deemed the Successful Bidder (as defined below) at the Auction;

v.  a good faith cash or cash equivalent deposit in the amount equal to at least $2,325,000, which is the same amount that will be deposited with the Debtors by Purchaser (the "Deposit"), provided that for a Joint Bid (as defined below) this amount is collective and may be deposited jointly.  The Deposit shall be tendered by cashier's check and/or wire transfer into the Debtors' DIP Account.  The Potential Bidder shall forfeit the Deposit if the Potential Bidder is the Successful Bidder (as defined below) and:  (a) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale to such Potential Bidder; or (b) breaches the terms of the agreement pursuant to which the Potential Bidder has agreed to purchase the Property.  The Deposit shall be returned promptly to the Potential Bidder:  (a) if the Potential Bidder is determined by the Debtors not to be a Qualified Bidder; or (b) under the circumstances contemplated by Sections 7 and 8 hereof;

vi.  satisfactory evidence of the Potential Bidder's:  (a) financial ability to close the Sale, including current financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current financial statements of the equity holder(s) of the Potential Bidder, and/or such other financial disclosures acceptable to, and requested by, the Debtors; and (b) ability to consummate the Sale on the date and on terms and conditions no less favorable to the Debtors than as contemplated by the Purchase Agreement;

vii. a statement confirming that the bid is irrevocable through the conclusion of the Auction and that the Potential Bidder does not request nor is entitled to any break-up fee, termination fee, expense reimbursement or similar type of payment.

Notwithstanding anything set forth herein, two or more parties acting collectively may submit a bid for all of the Property (a "Joint Bid") and may together qualify as a Qualified Bidder, provided that any such Joint Bid must comply with the requirements of a Qualified Bid set forth above, including, without limitation, that the Joint Bid:  (a) be made for all of the Property; (b) include a disclosure of the proposed purchase price, which must be equal to the Total Asset Purchase Price (as defined in the Purchase Agreement) offered by Purchaser on a basis no less favorable than the Purchase Agreement; (c) meets the minimum cash requirements, including the Deposit; and (d) fully discloses the identity of each entity participating in such Joint Bid and discloses the terms of any such participation that, in the reasonable business judgment of the Debtors (in consultation with the Committees) are relevant to such Joint Bid.

The initial determination of whether a Potential Bidder is a Qualified Bidder is within the discretion of the Debtors, although the Debtors agree to consult with the Committees in making each determination, and shall be communicated to the Potential Bidder by no later than two (2) business days prior to the Auction.  Any disputes as to whether a Potential Bidder is a Qualified Bidder (including if any of the Committees disagrees with Debtors' determination) shall be resolved by the Bankruptcy Court.

4.    The Auction.  The auction shall commence and take place on [December 5, 2006] at 9:30 a.m. prevailing Pacific Time, before the Honorable Linda Riegle, United States Bankruptcy Judge, in Courtroom #2 of the United States Bankruptcy Court for the District of Nevada, Foley Federal Building, Las Vegas, Nevada (the "Auction").  The Auction shall be held in accordance with the following guidelines:

3

i.  Participation in the Auction shall be open only to Qualified Bidders.

ii.  The Auction will be transcribed by a certified court reporter and a transcript of the Auction will be available in time for the Confirmation Hearing.

iii.  All Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative or agent with actual authority to participate and bind such Qualified Bidder. Before the bidding begins, each individual that intends to participate in the Auction shall identify himself or herself and, if he or she intends to bid on behalf of another, the identity of the principal represented, and certify that such person or represented principal is a Qualified Bidder.

iv.  The Purchaser and each of the parties that submitted a Qualified Bid who are present at the Auction (each, an "Auction Participant") will draw lots to determine the bid order, with the final lot being assigned to the Purchaser (the "Bid Order").

v.  The opening bid to commence the Auction shall be the Qualified Bid of the Purchaser (the "Opening Bid"). During the Auction, any Qualified Bidder may submit an increased bid (an "Increased Bid") that satisfies the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price. The initial Increased Bid shall have an increased cash component of at least $2,000,000 (the "Minimum Incremental Overbid") more than the Opening Bid on a basis no less favorable than the Purchase Agreement. The $2,000,000 additional cash component is intended to pay the Break-Up Fee of $1,500,000 (as defined below) and the initial overbid increment of $500,000. Subsequent overbid increments ("Overbid Increment") (a) shall be not less than $100,000 and (b) shall be made to increase the Total Asset Purchase Price (as defined in the Purchase Agreement).[1] For the avoidance of doubt, including without limitation comparison to other Qualified Bidders' Increased Bids, any Increased Bid submitted by the Purchaser shall be calculated as the amount actually bid by the Purchaser, plus the amount of the Break-Up Fee.

vi.  Except for the Opening Bid, the bidding will proceed according to the Bid Order. In the first round, each Auction Participant must either: (a) increase its bid by the Minimum Incremental Overbid; or (b) pass. In each subsequent round, each Auction Participant who has not passed in a prior round must either: (a) increase its bid by the Overbid Increment; or (b) pass. Upon passing, the bid made by the passing Auction Participant in the immediately preceding round will be determined to be such party's final bid and the passing Auction Participant will not be permitted to bid in any later round(s).

vii. As time is of the essence, each Auction Participant must have present at the Auction any and all persons necessary to authorize Increased Bids. A time limit of 20 minutes (or such other time period as the Bankruptcy Court directs) will be imposed on each bid, and an

---

[1]  To clarify, during the Auction, bidders shall make Increased Bids with respect to the Total Asset Purchase Price and shall not allocate any Overbid Increment, including the Minimum Incremental Overbid, between the First Trust Deed Property and the Commercial Mortgage Property. The allocation of any such Overbid Increment, including the Minimum Incremental Overbid, shall be made in accordance with the terms of the Plan or subsequent order of the Bankruptcy Court.

4

Auction Participant's failure to timely submit a bid will be deemed to be a pass by the Auction Participant.

        viii.    The Auction will conclude when all but one of the Auction Participants has passed.

        ix. Upon the conclusion of the Auction, the Debtors and the Committees will collectively identify the Successful Bid (as defined below) and the Next Highest Bid (as defined below). No bids will be considered after the conclusion of the Auction.

        x. By no later than 5:00 p.m. on the first business day following the conclusion of the Auction, the Successful Bidder (as defined below) shall execute and deliver to the Debtors its asset purchase agreement, which shall reflect the name of the Successful Bidder (as defined below) and the successful bid price submitted at the Auction by the Successful Bidder.

        5.    <u>Break-Up Fee</u>. In the event the Purchaser is not the Successful Bidder (as defined below) at the conclusion of the Auction, the Purchaser will be entitled to a fee in the amount of $1,500,000 (the "Break-Up Fee"), as authorized by the Bid Procedures Order. The Purchaser is entitled, but not obligated, to submit Increased Bids at the Auction. The Break-Up Fee shall be payable to the Purchaser upon the closing of the Sale to the Successful Bidder from the sale proceeds paid by the Successful Bidder; provided, however, that the Break-Up Fee shall be reduced by any expense reimbursement actually paid to Purchaser, which expense reimbursement shall be limited to a maximum amount of actual and reasonable expenses incurred by Purchaser up to $500,000 (the "Expense Reimbursement"), as authorized by the Bid Procedures Order.

        6.    <u>Selection of Successful Bidder</u>. Upon conclusion of the Auction, the Debtors and the Committees shall collectively determine which of the Qualified Bid of the Purchaser and Increased Bids, if any, (each of which shall satisfy the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price, including, but not limited to, being on a basis no less favorable than the Purchase Agreement) constitutes the highest and otherwise best bid for the Property (the "Successful Bid"). Subject to the preceding sentence and compliance with these Bid Procedures, the bidder making the Successful Bid shall be considered the "Successful Bidder." To the extent there is any dispute about which bidder is the Successful Bidder the Bankruptcy Court shall make that determination.

        7.    <u>Selection of Next Highest Bidder</u>. After determining which bidder is the Successful Bidder, the Debtors and the Committees shall collectively determine which of the Qualified Bid of the Purchaser and Increased Bids, if any, (each of which shall satisfy the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price, including, but not limited to, being on a basis no less favorable than the Purchase Agreement) constitutes the next highest and otherwise best bid for the Property (the "Next Highest Bid"). Subject to the preceding sentence and compliance with these Bid Procedures, the bidder making the Next Highest Bid shall be considered the "Next Highest Bidder." To the extent there is any dispute about which bidder is the Next Highest Bidder the Bankruptcy Court shall make that determination.

If the bidder identified as the Next Highest Bidder agrees to maintain its status as the back-up bidder to the Successful Bidder, then it must also agree that its Next Highest Bid will remain irrevocable and subject to acceptance by the Debtors and the Committees, and the Debtors will retain its Deposit, until the earlier of (a) the closing and effectiveness of the transactions contemplated by the Successful Bid, or (b) five (5) business days following the termination of the purchase agreement evidencing the Successful Bid if the Debtors do not accept the Next Highest Bid.[2] If the Debtors and the Committees accept the Next Highest Bid, then by no later than 5:00 p.m. on the first business day following such acceptance, the Next Highest Bidder shall execute and deliver to the Debtors its asset purchase agreement, which shall reflect the name of the Next Highest Bidder and the Next Highest Bid price submitted at the Auction by the Next Highest Bidder and the Deposit shall be retained by the Debtors and applied against the purchase price of the Next Highest Bidder; provided however, that the Next Highest Bidder shall forfeit the Deposit if the Next Highest Bidder: (a) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale of the Property to such bidder; or (b) breaches the terms of the agreement pursuant to which the Next Highest Bidder has agreed to purchase the Property.

If the bidder initially identified as the Next Highest Bidder does not agree to such terms, then the Debtors and the Committees (and the Court, to the extent there is a dispute), may collectively identify the next highest or otherwise best bid as the Next Highest Bid, and may continue to do so until such a bidder who has submitted a bid agrees to become the Next Highest Bidder.

8.    Returns of Deposits. Within five (5) business days after the conclusion of the Auction, the Deposits submitted by all bidders shall be returned, except for (a) the Deposit of the Successful Bidder, in which case the Deposit will be applied to the purchase price for the Property; (b) the Deposit of the Next Highest Bidder, if any, subject to Section 7 hereof; and (c) any bidder that forfeits its Deposit under the provisions hereof. Except as otherwise provided for herein, in the event the Debtors terminate the proposed sale of the Property, the Deposits submitted by all bidders shall be returned promptly.

9.    Deliveries. Potential Bidders shall deliver their Preliminary Qualifications and their Qualified Bids by mail, hand-delivery or facsimile, provided that such information must be actually received by the respective deadlines set forth above at the following addresses by no later than the date and time (where applicable) of each applicable deadline, or the Preliminary Qualification and Qualified Bid information will be deemed not received, and the Potential Bidder shall not be a Qualified Bidder:

[Add contact information for Debtors and Committees]

---

[2]  For the avoidance of doubt, in the event the Next Highest Bidder is the Purchaser, nothing in Section 7 is intended to nor does it extend the Outside Approval Date as that term is defined in the Offer Letter.

If the bidder identified as the Next Highest Bidder agrees to maintain its status as the back-up bidder to the Successful Bidder, then it must also agree that its Next Highest Bid will remain irrevocable and subject to acceptance by the Debtors and the Committees, and the Debtors will retain its Deposit, until the earlier of (a) the closing and effectiveness of the transactions contemplated by the Successful Bid, or (b) five (5) business days following termination of the purchase agreement evidencing the Successful Bid if the Debtors do not accept the Next Highest Bid.[2]  If the Debtors and the Committees accept the Next Highest Bid, then by no later than 5:00 p.m. on the first business day following such acceptance, the Next Highest Bidder shall execute and deliver to the Debtors its asset purchase agreement, which shall reflect the name of the Next Highest Bidder and the Next Highest Bid price submitted at the Auction by the Next Highest Bidder and the Deposit shall be retained by the Debtors and applied against the purchase price of the Next Highest Bidder; provided however, that the Next Highest Bidder shall forfeit the Deposit if the Next Highest Bidder:  (a) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale of the Property to such bidder; or (b) breaches the terms of the agreement pursuant to which the Next Highest Bidder has agreed to purchase the Property.

If the bidder initially identified as the Next Highest Bidder does not agree to such terms, then the Debtors and the Committees (and the Court, to the extent there is a dispute), may collectively identify the next highest or otherwise best bid as the Next Highest Bid, and may continue to do so until such a bidder who has submitted a bid agrees to become the Next Highest Bidder.

8.    Returns of Deposits.  Within five (5) business days after the conclusion of the Auction, the Deposits submitted by all bidders shall be returned, except for (a) the Deposit of the Successful Bidder, in which case the Deposit will be applied to the purchase price for the Property; (b) the Deposit of the Next Highest Bidder, if any, subject to Section 7 hereof; and (c) any bidder that forfeits its Deposit under the provisions hereof.  Except as otherwise provided for herein, in the event the Debtors terminate the proposed sale of the Property, the Deposits submitted by all bidders shall be returned promptly.

9.    Deliveries.  Potential Bidders shall deliver their Preliminary Qualifications and their Qualified Bids by mail, hand-delivery or facsimile, provided that such information must be actually received by the respective deadlines set forth above at the following addresses by no later than the date and time (where applicable) of each applicable deadline, or the Preliminary Qualification and Qualified Bid information will be deemed not received, and the Potential Bidder shall not be a Qualified Bidder:

[Add contact information for Debtors and Committees]

891765.10

---

[2]  For the avoidance of doubt, in the event the Next Highest Bidder is the Purchaser, nothing in Section 7 is intended to nor does it extend the Outside Approval Date as that term is defined in the Offer Letter.

# *Exhibit B*

1  Annette W. Jarvis, Utah Bar No. 1649 (admitted pro hac vice)
   Steven C. Strong, Utah Bar No. 6340 (admitted pro hac vice)
2  RAY QUINNEY & NEBEKER P.C.
   36 South State Street, Suite 1400
3  P.O. Box 45385
   Salt Lake City, Utah 84145-0385
4  Telephone: (801) 532-1500
   Facsimile: (801) 532-7543
5  Email: ajarvis@rqn.com

6      and

7  Lenard E. Schwartzer, Nevada Bar No. 0399
   Jeanette E. McPherson, Nevada Bar No. 5423
8  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
9  Las Vegas, Nevada  89146-5308
   Telephone:  (702) 228-7590
10 Facsimile:  (702) 892-0122
   E-Mail:  bkfilings@s-mlaw.com
11
12 Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 14  In re:<br>15  USA COMMERCIAL MORTGAGE COMPANY,<br>                                        Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| 16  In re:<br>17  USA CAPITAL REALTY ADVISORS, LLC,<br>                                        Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| 18  In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>19                                          Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| 20  In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>21                                          Debtor. | **NOTICE OF SALE OF PROPERTY, BID PROCEDURES AND INVITATION FOR HIGHER AND BETTER OFFERS** |
| 22  In re:<br>USA SECURITIES, LLC,<br>                                        Debtor. | |
| 24  Affects:<br>   ☑All Debtors<br>25     ☐USA Commercial Mortgage Company<br>   ☐ USA Securities, LLC<br>26     ☐ USA Capital Realty Advisors, LLC<br>   ☐ USA Capital Diversified Trust Deed Fund, LLC<br>27     ☐ USA First Trust Deed Fund, LLC | **Qualified Bid Deadline: November 28, 2006**<br>(4:00 p.m. prevailing Pacific Time)<br>**Auction Date: December 7, 2006**<br>(9:30 a.m. prevailing Pacific Time) |

28

*(left margin, vertical text)* SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**PLEASE TAKE NOTICE** that at a hearing held on October 19, 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTD Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC ("Realty Advisors"), and USA Securities, LLC ("USA Securities" and collectively with USACM, DTD Fund, FTD Fund, and Realty Advisors, the "Debtors"), obtained Court approval to conduct an auction in connection with a contemplated sale (the "Sale") of substantially all of the assets of the FTD Fund (primarily its interests in a portfolio of loans) and certain assets of USACM (primarily those used to conduct its loan servicing business) (collectively, the "Assets") to SPCP Group, LLC ("Purchaser"), or to any successful overbidder in accordance with the terms of that certain Asset Purchase Agreement, dated as of _____, (the "Purchase Agreement") by and among (i) USACM and FTD Fund (together, the "Sellers"), (ii) DTD Fund, USA Securities, and Realty Advisors ("Acknowledging Parties"), and the Purchaser, which was submitted to the Court on _____. A copy of the Purchase Agreement is attached hereto as Exhibit "1".

**PLEASE TAKE FURTHER NOTICE** that the Assets will be auctioned in accordance with the bid procedures (the "Bid Procedures")[1] described in more detail in the "Order (A) Scheduling An Auction For The Sale Of Certain Assets; (B) Appointing SPCP Group, LLC, As Lead Bidder; And (C) Approving Bid Procedures And Protections" (the "Bid Procedures Order"), a copy of which is attached hereto as Exhibit "2".

**PLEASE TAKE FURTHER NOTICE** that parties wishing to bid for the Assets should review and comply with the Bid Procedures set forth in the Bid Procedures Order, including, among other things, (i) satisfying the Preliminary Qualifications set forth in the Bid Procedures and (ii) submitting a Qualified Bid to the Debtors and the Committees pursuant to the terms set

---

1    Any capitalized terms not defined in this notice are given the definitions set forth in the Bid Procedures.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

forth in the Bid Procedures on or before 4:00 p.m. prevailing Pacific Time on November 28, 2006.

A copy of the Bid Procedures Order and Purchase Agreement are also available at Debtors'

website www.usacapitalcorp.com.[2]

**PLEASE TAKE FURTHER NOTICE** that on [December 7, 2006] at 9:30 a.m.

prevailing Pacific Time, an auction for the Assets (the "Auction") will be conducted before the

Honorable Linda Riegle, United States Bankruptcy Judge, in Courtroom #2 of the United States

Bankruptcy Court for the District of Nevada, Foley Federal Building, 300 Las Vegas Blvd. South,

Las Vegas, Nevada. The Auction shall be conducted pursuant to the terms set forth in the Bid

Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** only a Qualified Bidder who has

submitted a Qualified Bid pursuant to the terms set forth in the Bid Procedures will be eligible to

participate at the Auction.

Dated this _____ day of October 2006.

<div style="text-align: left; margin-left: 50%;">

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

</div>

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

2    Interested parties without internet access may obtain a copy of the Bidding Procedures Order and/or the Purchase Agreement by written request to the Debtors' undersigned counsel.

3