CiCi CUNNINGHAM, ESQ.
Nevada Bar No.: 4960
JAMES A. KOHL, ESQ.
Nevada Bar No.: 5692
CHRISTINE A. ROBERTS, ESQ.
Nevada Bar No.: 6472
RAWLINGS, OLSON, CANNON,
GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, NV 89129
Phone: (702) 384-4012
Fax: (702) 383-0701
Email: bankruptcy@rocgd.com
Attorneys for Creditors,
Prospect High Income Fund,
ML CBO IV (Cayman) Ltd.,
PAMCO Cayman, Ltd.,
PAM Capital Funding, L.P.,
Highland Crusader Fund, Ltd.,
and PCMG Trading Partners XXII, L.P.

E-FILED ON: 10-18-06

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | CASE NO.: BK-S-06-10725-LBR<br>CASE NO.: BK-S-06-10726-LBR<br>CASE NO.: BK-S-06-10727-LBR<br>CASE NO.: BK-S-06-10728-LBR<br>CASE NO.: BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>Debtor. | **Jointly Administered Under<br>Case No. BK-S-6-10725-LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | ***MOTION FOR RELIEF FROM<br>THE AUTOMATIC STAY<br>(AFFECTS USA CAPITAL<br>DIVERSIFIED TRUST DEED<br>FUND, LLC)*** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>■ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC, | **HEARING:**<br>Date: November 13, 2006<br>Time: 9:30 a.m. |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, CiCi Cunningham, Esq., of Rawlings, Olson, Cannon, Gormley & Desruisseaux on behalf of Prospect High Income Fund, ML CBO IV (Cayman) Ltd., PAMCO Cayman, Ltd., PAM Capital Funding, L.P., Highland Crusader Fund, Ltd., and PCMG Trading Partners XXII, L.P. (hereinafter "the Highland Funds") and moves this Court for an order granting Relief from the Automatic Stay to proceed with State Court litigation. This Motion is based upon the entire case file, the points and authorities contained herein, and any oral argument that this Court may entertain.

## POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

**A.  State Court**

1. On or about July 12, 2002, the Highland Funds filed a complaint in the Eighth Judicial District Court, Clark County, Nevada (Case Number 02-A-453232) against Debtor USA Capital Diversified Trust Deed Fund, LLC (hereinafter referred to as "Debtor" or "Diversified"). (*See* 362 Information Sheet attached hereto and incorporated herein by reference as Exhibit "A".) This complaint was for tortious interference, conspiracy to commit tortious interference, and aiding and abetting.

2. The lawsuit is based on the fact that Diversified interfered with the Highland Fund's contractual rights with Epic Resorts.

3. To prosecute the Claim, the Highland Funds filed suit against Diversified.

**B.  The Highland Funds Purchase Bonds Issued By Epic Resorts.**

4. On or about July 8, 1998, Epic Resorts, a holding company that owns and operates multiple subsidiaries, which in turn operate timeshare vacation resorts, issued $130 million aggregate principal amount of Senior Secured Redeemable Notes due in 2005 pursuant to an indenture dated July 8, 1998, as supplemented (the "Indenture").

/ / /

/ / /

/ / /

**C.   The Indenture Has Three Critical Provisions That Protected The Highland Funds.**

5. As part of the bond offering, the Indenture contained three critical provisions:

   a. Epic Resorts was prohibited from borrowing additional funds;

   b. Epic Resorts would not encumber the Properties in favor of anyone else; and

   c. The bondholders would receive a lien in their favor on the Properties.

**D.   Diversified Conspired To Violate The Agreement**

6. In the first quarter of 2000, Diversified met with Epic Resorts about a potential loan to Epic Resorts.

7. During the course of its due diligence for the loan, Diversified requested and was provided with the Indenture.

**E.   Diversified Loaned The Money To Gain A Superior Lien On The Property.**

8. At some point during the negotiations, Diversified discovered that The Highland Funds' lien on the Palm Springs property had not been properly perfected.

9. With full knowledge of the agreement between Epic Resorts and the bondholders (as evidenced by the testimony of Diversified Principals Thomas Hantges, Joseph Milanowski, and Thomas Rondeau), Diversified and Epic Resorts entered into a transaction whereby Diversified would loan money to Epic Resorts and Diversified would be granted a priority lien on the Palm Springs property.

10. The loan documents were executed on or about June 26, 2000, and the loan closed on or about July 5, 2000.

///

///

///

**F.     Diversified Knew It Was Interfering With The Highland Funds' Contractual Rights.**

11.     At all relevant times, Diversified knew:

   a.   That Epic Resorts was contractually required to obtain a leasehold mortgage on the Palm Springs property for the Highland Funds;

   b.   That Epic Resorts was contractually prohibited from granting liens or agreeing to borrow additional money; and

   c.   That Epic Resorts was contractually required to perfect a lien on the Properties for the benefit of the bondholders.

12.     Notwithstanding that knowledge, Diversified loaned money to Epic Resorts and placed a lien on the Palm Springs property.

13.     Diversified entered into this scheme, despite full knowledge of Epic Resorts' contractual agreements with the bondholders; thus, Diversified tortiously interfered with the bondholders' agreements and/or participated in a conspiracy to tortiously interfere with the agreement.

**G.     Epic Resorts Stopped Paying Interest To The Bondholders.**

14.     Pursuant to the Bonds and the Indenture, Epic Resorts was required to make semi-annual payments on June 15 and December 15 of each year.

15.     On June 15, 2001, Epic Resorts did not make the required interest payment to the bondholders, including the Highland Funds, in the amount of $8,450,000.

16.     The grace period for this interest payment expired on July 15, 2001.

17.     On July 17, 2001, the bond trustee, on behalf of the bondholders, declared that an event of default existed under the Indenture and accelerated the entire amount due and owing under the Indenture and the Bonds.

18. To date, the interest payment and the accelerated amount have not been paid in full.

### H. The Highland Funds' Interests Were Hindered.

19. The Highland Funds were hindered in their ability to recover the money they loaned to Epic Resorts because of Diversified's lien.

20. In direct interference with the proper execution of the Indenture's provisions, Diversified entered into a "deed-in-lieu of foreclosure" with respect to the Palm Springs property.

21. Among other things, Diversified obtained a complete assignment of all leasehold and personal property located at the Palm Springs resort to Diversified.

22. Additionally, sixty-three unsold timeshare units remained at the Palm Springs resort.

23. These sixty-three unsold units comprised almost half of the entire inventory of unsold units available at all of the resorts owned by Epic Resorts.

24. Diversified transferred ownership of the sixty-three unsold timeshare units and all other personal property located in the Palm Springs property to itself.

### I. The Highland Funds Are Damaged.

25. As a result of the contractual provisions entered into by the Highland Funds and Epic Resorts, the Highland Funds had a right to expect that they would have a lien on the Palm Springs property or that Epic Resorts would not have incurred additional debt or further encumbered the Palm Springs property.

26. However, because of Diversified's illegal acts, the Highland Funds were not able to reap the benefits of the contract that they entered into with Epic Resorts.

///

///

27. Even if the Highland Funds never perfected it's lien, because the other provisions in the indenture prohibited new indebtedness and liens on Epic Resorts, but for Defendants' conduct, the Highland Funds would have received the full value of the Palm Springs property in the bankruptcy.

28. As a result of the illegal acts of Diversified, the Highland Funds were not able to enforce this lien and, thus, have been damaged by at least $20 million.

29. Additionally, the Palm Springs property is and could generate additional revenue.

30. Therefore, the Highland Funds are being damaged by not being able to receive that revenue.

**J.    Bankruptcy Court**

31. On or about April 13, 2006, the above-referenced Debtors, including Diversified, filed voluntary bankruptcy petitions under Chapter 11, Title 11 of the United States Code and an order for relief was entered.

32. On or about May 9, 2006, the Court entered an order jointly administering the above-referenced Debtors.

33. The Highland Funds are seeking relief from the automatic stay to pursue the state court action and to liquidate its claim.

**II. LEGAL ARGUMENT**

**A.    Standard**

The Highland Fund is requesting Court approval of the lifting of the stay to proceed with the State Court litigation case of Prospect High Income Fund et al vs USA Capital Diversified Trust Deed Fund, LLC et al, Case Number 02-A-453232, filed in the Eighth Judicial District Court, Clark County, Nevada. The standard for relief from the automatic stay can be found in 11 U.S.C. § 362(d). 11 U.S.C. § 362(d)(1) provides in pertinent part:

**11 U.S.C. § 362.    Automatic Stay.**

(d)    On Request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

(1)    **for cause**, including the lack of adequate protection of an interest in property of such party in interest.
[Emphasis Added]

The Court may lift the automatic stay for cause and may only be reversed for abuse of discretion. *In re Sherman (Sherman vs. SEC)*, 441 F.3d 794, 814 (9th Cir. 2006); *In re Beguelin (Beguelin vs Volcano Vision, Inc.)*, 220 B.R. 94, 97-98 (9th Cir. BAP 1998); *In re Mac Donald (Mac Donald vs. Mac Donald)*, 755 F.2d 715, 717 (9th Cir. 1985); *In re Kissinger (Mataya vs. Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995); *In re Hohol (Hohol, et al vs. Essex Industries, et al)*, 141 B.R. 293, 297 (M.D. Pa. 1992); *In re Dixie Broadcasting (Barclays-American/ Business Credit, Inc., et al vs. Radio WBHP)*, 871 F.2d 1023, 1026 (11th Cir. 1989); and *In re Frigitemp, Corp. (Litton Systems, Inc. vs Frigitemp Corp.)*, 8 B.R. 284, 289 (S.D.N.Y. 1981).

As the Code does not define "cause", a lift of the automatic stay must be considered on a case by case basis. *Mac Donald* at 717 and *Beguelin* at 97-98. In addition, the Court has "wide latitude in crafting relief from the automatic stay". *Kissinger* at 109. And accordingly, the decision to lift the automatic stay is discretionary with the Court. *Dixie Broadcasting* at 1023 and *Frigitemp, Corp.* at 289.

Cause exists to allow the Highland Fund to pursue the action in state court. Accordingly, the Highland Fund requests that this Court grant relief from stay and allow the action to proceed in state court.

///

///

### B. The Stay Should be Lifted for Judicial Economy

Cause exists in this matter as it would be more judicially economical for this to be heard in its original Court. "The Stay may be lifted as a matter of judicial economy." *In re Neal*, 176 B.R. 30, 34 (Bankr. D.Idaho 1994). It would be more appropriate for this matter to be heard in state court, where it has been ongoing for 4 years. Tortious interference is governed by state law. Therefore, it would be better that a state court apply that law in this case in an effort to maintain judicial economy. *In re Westwood Broadcasting, Inc.,* 35 B.R. 17 (Bankr. D. Hawaii 1983).

> It will often be **more appropriate to permit proceedings to continue in their place of origin**, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and **to relieve the bankruptcy court from many duties that be handled elsewhere**. *In re Holtkamp (Holtkamp vs Littlefield)*, 669 F.2d 505, 508 (7th Cir. 1982).

[Emphasis Added.]

The Ninth Circuit has held that "where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial". *In re Tucson Estates Inc.(Christensen vs Tuscon Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). The Court borrowed factors from the Texas Bankruptcy Court, one of which states: ". . .(2)   the extent to which state law issues predominate over bankruptcy issues . . ." *Tuscon Estates, Inc.* at 266-267.

The Bankruptcy Court for the Northern District of Ohio has proposed a test for lifting the automatic stay:

> a) Any "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit,
>
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
> c) the creditor has a probability of prevailing on the merits of his case.

*In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986), *citing In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Oh. 1982); *See also In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D.Del. 1993). The Highland fund believes that the test has been met in this case.

### 1. There is No Prejudice to the Bankruptcy Estate.

No prejudice will be caused to the Debtor from lifting of the stay to pursue this matter in state court. In fact, it would be to the Debtor's benefit to allow this matter to be resolved in state court. The Debtor will be able to finally resolve this matter that has been on-going since 2002. At this point, the Highland Fund's claim is still unliquidated. In order for the Debtor to proceed with this case, the Highland Fund's claim must be liquidated. It is important for the Debtor to resolve all claims as expeditiously and fairly as possible without forcing the parties to start this matter from the beginning. *In re Philadelphia Athletic Club, Inc. (Brodsky vs Philadelphia Athletic Club)*, 9 B.R. 280, 282 (Bankr. Pa. 1981).

### 2. The Highland Fund's Hardship Would Outweigh Any Potential Hardship of the Debtor.

The Highland Fund will experience greater hardships if the stay is not lifted then would be experienced by the Debtor due to the lifting of the stay. The Highland Fund will be forced to re-litigate what has happened in this case thus far in the Bankruptcy Court. This will cause great additional time and cost for the Highland Fund. "The attention paid to the stage to which the non-bankruptcy litigation has progressed is based on the sound principle that the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant to 'duplicate all of its efforts in the bankruptcy court.'" *In re Fernstrom Storage and Van Company (International Business Machines vs Fernstrom Storage and Van Company)*, 938 F.2d 731, 737 (7th Cir. 1991), *citing In re Murray Indus.*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990).

### 3. The Highland Fund Has a Likelihood of Success on the Merits.

The final factor for "cause" is the likelihood that the Highland Fund would prevail in the state court action. As detailed above, Highland Capital meets all of the Nevada State Law criteria for tortious interference, and conspiracy to commit tortious interference. The facts are all favorable to the Highland Funds. It is likely that the Highland Funds will be successful in this litigation. However, there need only be a "slight" probability of success to lift the stay. *In re Rexene Products Company (Izzarelli vs Rexene Products Company)*, 141 B.R. 574, 578 (Bankr. D. Del. 1992) and *In re Continental Airlines, Inc., (American Airlines, Inc. vs. Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993).

### C. Conclusion

The Highland Fund asserts that cause exists to lift the stay in the case and that lifting of the stay is both proper and a judicious use of Court resources. Accordingly, the Highland Funds should be granted an order lifting the stay in order to pursue the state court action and to liquidate its claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**WHEREFORE**, the Highland Funds pray that this Court lift the stay to proceed with the State Court litigation to determine Highland Fund's claims; that Highland Fund be granted immediate relief from the automatic stay; and grant any further relief this Court may deem just and proper in the premises.

DATED this 18th day of October, 2006.

Respectfully Submitted By:

*/s/ CiCi Cunningham*

CiCi Cunningham, Esq.
Nevada Bar No. 004960
RAWLINGS, OLSON, CANNON
GORMLEY & DESRUISSEAUX
9950 W. Cheyenne Ave.
Las Vegas, Nevada 89129
Attorneys for Creditors,
Prospect High Income Fund,
ML CBO IV (Cayman) Ltd.,
PAMCO Cayman, Ltd.,
PAM Capital Funding, L.P.,
Highland Crusader Fund, Ltd.,
and PCMG Trading Partners XXII, L.P.

## * * SECTION 362 INFORMATION SHEET * *

USA CAPITAL COMMERCIAL MORTGAGE CO.   BK-S-06-10725-LBR (LEAD CASE)
**DEBTOR**                             **BANKRUPTCY NO.**                **MOTION NO.**

THE HIGHLAND FUND                      CHAPTER  11
**MOVANT**

---

**Certification of Attempt to Resolve the Matter Without Court Action:**
Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(3), an attempt has been made to resolve this matter without court action, but Movant has been unable to do so.

Date: 10-18-06            Signature: _____
                                      CiCi Cunningham, Esq.

---

**LAWSUIT INVOLVED IN THIS MOTION:** A tortious interference complaint in the Eighth Judicial District Court, Clark County, Nevada (Case Number 02-A-453232) against Debtor USA Capital Diversified Trust Deed Fund, LLC.

**NOTICE SERVED ON:**   Debtor(s)        Debtor(s)' counsel        U.S. Trustee

**DATE OF SERVICE:**    10/18/06         10/18/06                  10/18/06

---

| DEBTOR'S CONTENTIONS: N/A | DEBTOR'S CONTENTIONS: N/A |
|---|---|
| The EXTENT and PRIORITY OF LIENS:<br>1st<br>2nd       N/A<br>3rd<br>4th<br>Other_____<br><br>Total Encumbrances:<br>**APPRAISAL or OPINION as to VALUE**<br>Wholesale Value: | The EXTENT and PRIORITY OF LIENS:<br>1st<br>2nd       N/A<br>3rd<br>4th<br>Other_____<br><br>Total Encumbrances:<br>**APPRAISAL or OPINION as to VALUE** |
| **TERMS OF MOVANT'S CONTRACT WITH DEBTOR:**<br>N/A<br>Amount of Note:<br>Interest Rate:          N/A<br>Duration:<br>Payment per Month:<br>Date of Default:<br>Amount of Arrears:<br><br>SPECIAL CIRCUMSTANCES:<br><br>SUBMITTED BY:<br><br>Signature: _____<br>CiCi Cunningham, Esq.<br>Nevada Bar No: 004960 | **DEBTOR'S OFFER OF "ADEQUATE PROTECTION" FOR MOVANT:** N/A<br><br>N/A<br><br><br><br><br><br>SPECIAL CIRCUMSTANCES: N/A<br><br>SUBMITTED BY:<br><br>Signature: _____ |

EXHIBIT "A"