Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**E-FILED ON October 18, 2006**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION (AFFECTS ALL DEBTORS)** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

The Debtors hereby propose the following First Amended Joint Plan of Reorganization pursuant to Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

**ARTICLE I**

**DEFINITIONS**

For the purpose of the Plan, except as expressly provided otherwise or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan. Whenever the context requires, such terms shall include the plural and the singular number. The masculine gender as used in the Plan shall, unless the context otherwise requires, include the feminine gender, and the feminine gender shall, likewise, include the masculine. All legal terms not specifically defined herein shall have the meanings ascribed to them by the Bankruptcy Code and the Bankruptcy Rules.

1.1 Acquired Assets. "Acquired Assets" means the First Trust Assets and the USACM Assets, described as "Assets" in the Silver Point Term Sheet.

1.2 Administrative Expense Claim. "Administrative Expense Claim" means any Claim against a Debtor constituting a cost or expense of administration of and in these Chapter 11 Cases incurred on or after the Petition Date of the kind described in § 503(b) of the Bankruptcy Code, including, without limitation, (A) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of a Chapter 11 Case; (B) taxes described in § 503(b)(1)(B) of the Bankruptcy Code; (C) any fees or expenses of Professionals allowable under §§ 330(a) or 331 of the Bankruptcy Code; (D) all Statutory Fees; and (E) cure amounts, if any, for executory contracts and unexpired leases assumed or assigned either pursuant to a separate Order of the Bankruptcy Court or under the Plan.

1.3 Administrative Expense Claim Bar Date. "Administrative Expense Claim Bar Date" means the dates established in section 3.1(a) of the Plan.

1.4 Advisory Committee. "Advisory Committee" means, the USACM Advisory Committee, the First Trust Advisory Committee, the Diversified Advisory Committee, and/or the USA Securities Advisory Committee, depending on the context in which the term is used.

1.5 Affiliate. "Affiliate" has the meaning set forth in § 101(2) of the Bankruptcy Code.

1.6 Allowed . . . Claim. "Allowed . . . Claim" means any Claim against a Debtor (A) as listed in the Applicable Debtor's schedules filed in its Chapter 11 Case, provided that the Claim is not listed therein as disputed, contingent or unliquidated; or (B) as stated in a proof of Claim which is filed before the Bar Date applicable to such Claim and to which no objection to the allowance thereof has been or will be interposed; or (C) as allowed by a Final Order of the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Bankruptcy Court. An "Allowed . . . Claim" is the total amount of the Claim less any distributions or payments made by an Applicable Debtor to the Holder of the Allowed . . . Claim after the Petition Date pursuant to any Order of the Bankruptcy Court, such as the Interim Distribution Order.

1.7 Allowed Interest. "Allowed Interest" means an Interest in a Debtor (A) as designated in the Applicable Debtor's List of Equity Security Holders filed in its Chapter 11 Case, including the Lists designated in the "Stipulated Order Re Proofs of Interest" entered by the Bankruptcy Court in the First Trust Case and the Diversified Case on September 15, 2006, provided that such Interest is not listed as disputed or contingent; (B) as stated in a proof of Interest which is filed before the expiration of the Bar Date and to which no objection to the allowance thereof has been or will be interposed; or (C) as allowed by a Final Order of the Bankruptcy Court. An Allowed Interest is the total amount of the Interest less any distributions or payments made by an Applicable Debtor to the Holder of the Allowed Interest after the Petition Date pursuant to an Order of the Bankruptcy Court, such as the Interim Distribution Order.

1.8 Applicable Debtor. "Applicable Debtor" means (A) USACM in regard to those Holders of Allowed Claims or Allowed Interests against the USACM Estate, the USACM Liquidation Trust, Beneficiaries of the USACM Liquidation Trust, or the USACM Estate Administrator; (B) First Trust in regard to those Holders of Allowed Claims or Allowed Interests against the First Trust Estate, the First Trust Liquidation Trust, Beneficiaries of the First Trust Liquidation Trust, or the First Trust Estate Administrator; (C) Diversified in regard to those Holders of Allowed Claims or Allowed Interests against the Diversified Estate, the Diversified Post-Effective Date Estate, Beneficiaries of the Diversified Post-Effective Date Estate, or the Diversified Estate Administrator; (D) USA Capital Realty in regard to those Holders of Allowed Claims or Allowed Interests against the USA Capital Realty Estate; or (E) USA Securities in regard to those Holders of Allowed Claims or Allowed Interests against the USA Securities Estate, the USA Securities Liquidation Trust, Beneficiaries of the USA Securities Liquidation Trust, or the USA Securities Estate Administrator.

1.9 Applicable Liquidation Trust. "Applicable Liquidation Trust" means (A) the First Trust Liquidation Trust in regard to First Trust, Holders of Allowed Claims or Allowed Interests against First Trust or the First Trust Estate, Beneficiaries of the First Trust Liquidation Trust, the First Trust Estate Administrator or the First Trust Advisory Committee; (B) the USACM Liquidation Trust in regard to USACM, Holders of Allowed Claims or Allowed Interests against USACM or the USACM Estate, Beneficiaries of the USACM Liquidation Trust, the USACM Estate Administrator or the USACM Advisory Committee; and (C) the USA Securities Liquidation Trust in regard to USA Securities, Holders of Allowed Claims or Allowed Interests against USA Securities or the USA Securities Estate, Beneficiaries of the USA Securities Liquidation Trust, the USA Securities Estate Administrator or the USACM Advisory Committee.

1.10 Applicable Liquidation Trust Agreement. "Applicable Liquidation Trust Agreement" means the Liquidation Trust Agreement of the Applicable Liquidation Trust.

1.11 Asset Acquirer. "Asset Acquirer" means Silver Point or any Third-Party Bidder making a Higher and Better Offer which is accepted by the Debtors pursuant to the procedures set forth in the Buyer Protection and Bidding Procedures Order to purchase the Acquired Assets

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

pursuant to the Asset Purchase Agreement, and which proceeds to close the transaction in accordance with this Plan and the Asset Purchase Agreement.

1.12 Asset Purchase Agreement. "Asset Purchase Agreement" means an Agreement to acquire the Acquired Assets in a form mutually acceptable to the Debtors and Silver Point, entered into between the Debtors and Silver Point which substantially incorporates the terms set forth in the Silver Point Term Sheet, or any subsequent Asset Purchase Agreement, substantially in the same form, that is signed with any Third-Party Bidder making a Higher and Better Offer which is accepted by the Debtors. A copy of the Asset Purchase Agreement, once signed, will be filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code, and by reference is incorporated herein. With respect to any inconsistencies between the terms of the Plan and the terms of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall control.

1.13 Auction. "Auction" means the auction for the Acquired Assets held in accordance with the Buyer Protection and Bid Procedures Order.

1.14 Bankruptcy Code. "Bankruptcy Code" means title 11, United States Code (11 U.S.C. § 101 *et seq.*), as in effect on the Petition Date and as amended and effective after the Petition Date and during the Chapter 11 Cases.

1.15 Bankruptcy Court. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada.

1.16 Bankruptcy Rules. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, including Interim Bankruptcy Rules adopted by the Bankruptcy Court, as the same may be amended and modified from time to time, and as applicable to the Chapter 11 Cases.

1.17 Bar Date. "Bar Date" means (A) with respect to Administrative Expense Claims, the Administrative Expense Claim Bar Date; (B) with respect to Lender Interest Claims, the Lender Interest Claim Bar Date; (C) with respect to Claims for damages resulting from the rejection of an executory contract or unexpired lease pursuant to Article VII of the Plan the date stated in section 7.3 of the Plan; and (D) with respect to all other Claims against and Interests in the Debtors, November 13, 2006, which is the date established by the "Order Setting Deadline to File Proofs of Claim and Proofs of Interest" entered by the Bankruptcy Court in the Chapter 11 Cases on September 14, 2006.

1.18 Beneficiary. "Beneficiary" means (A) with respect to USACM, the Holder of an Allowed Claim or an Allowed Interest under or against the USACM Liquidation Trust, (B) with respect to First Trust, the Holder of an Allowed Interest under or against the First Trust Liquidation Trust, (C) with respect to Diversified, the Holder of an Allowed Interest under or against the Diversified Post-Effective Date Estate, and (D) with respect to USA Securities, the Holder of an Allowed Claim under or against the USACM Liquidation Trust.

1.19 Bisynergy Loan. "Bisynergy Loan" means the Loan so identified by First Trust.

1.20 Borrower. "Borrower" means a borrower on a Serviced Loan as of the date of the filing of the Plan.

1.21 Break-Up Fee and Expense Reimbursement. "Break-Up Fee and Expense Reimbursement" means the Break-Up Fee as defined in ¶ 10(b) of the Silver Point Term Sheet.

1.22 Business Day. "Business Day" means any day other than a Saturday, a Sunday, or a "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.23 Buyer Protection and Bidding Procedures Order. "Buyer Protection and Bidding Procedures Order" means a Final Order of the Bankruptcy Court, in a form and substance reasonably acceptable to the Debtors, the Committees and Silver Point, establishing (A) a Break-up Fee and other protections to Silver Point for the purchase of the Acquired Assets in accordance with the provisions of the Silver Point Term Sheet, and (B) bidding procedures for the sale of the Debtors' assets, including procedures for accepting Higher and Better Offers.

1.24 Cash. "Cash" means legal tender of the United States of America, or Cash equivalents, including currency, checks, and wire transfers of immediately available funds.

1.25 Causes of Action. "Causes of Action" means all Claims and any and all manner of actions, causes of action in law or in equity, suits, adversary proceedings, contested matters, litigation, objections, debts, Liens, contracts, liabilities, demands, rights, obligations, damages, losses, fees, costs, expenses, set-offs, defenses, counter-claims, cross-claims, third-party claims, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, now owned or hereafter acquired by any one or all of the Debtors or their Estates, whether arising under any contract or under the Bankruptcy Code or other federal or state law, including without limitation, any Causes of Action arising under §§ 502, 506, 509, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553 or 554 of the Bankruptcy Code, regardless of whether or not such Causes of Action have been commenced, pursued or asserted prior to the Effective Date, and Causes of Action against Insiders and related to any of the Debtors' accounts and notes receivable, including the IP Causes of Action and the IP Receivable, regardless of whether or not such Causes of Action have been commenced, pursued or asserted prior to the Effective Date.

1.26 Chapter 11 Cases. "Chapter 11 Cases" means the above-captioned cases under Chapter 11 of the Bankruptcy Code filed by the Debtors, including all adversary proceedings pending in connection therewith.

1.27 Chief Restructuring Officer. "Chief Restructuring Officer" of the Debtors is Mr. Thomas J. Allison.

1.28 Claim. "Claim" has the same meaning as that term is defined in § 101(5) of the Bankruptcy Code.

1.29 Class. "Class" means any group of Holders of Claims or Interests as classified in Article 2 of the Plan.

1.30 Closing Date. "Closing Date" means the date on which the Asset Acquirer closes on and acquires the Acquired Assets.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.31 Collateral. "Collateral" means any assets of a Debtor that serve to secure a Lien.

1.32 Collection Account. "Collection Account" means any accounts held by a Debtor into which funds collected from Borrowers are deposited.

1.33 Commercial Mortgage Price. "Commercial Mortgage Price" has the meaning set forth in ¶ 1(c) of the Silver Point Term Sheet, including any reductions required under ¶ 2 to the Silver Point Term Sheet, as the same may be increased pursuant to the Auction.

1.34 Committees. "Committees" means the First Trust Committee, the Executory Contract Holders Committee, the Diversified Trust Committee, and the Unsecured Creditors' Committee.

1.35 Confirmation. "Confirmation" means entry of a Confirmation Order by the Bankruptcy Court, or other court of competent jurisdiction, in accordance with § 1129 of the Bankruptcy Code.

1.36 Confirmation Date. "Confirmation Date" means the date of entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.37 Confirmation Hearing. "Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of the Plan.

1.38 Confirmation Order. "Confirmation Order" means the Order entered by the Bankruptcy Court or other court of competent jurisdiction, providing for the Confirmation of the Plan in accordance with the Bankruptcy Code.

1.39 Court. "Court" means the Bankruptcy Court and any Court having jurisdiction to hear appeals therefrom.

1.40 Debtors. "Debtors" means USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC.

1.41 Designation Notice. "Designation Notice" means the notice filed by USACM or, once appointed, the USACM Estate Administrator as set forth in section 6.3(b) of the Plan designating the Claim of a Lender as a Claim

1.42 Direct Lender. "Direct Lender" means all Lenders, other than USACM, Diversified and First Trust, who are Lenders under any of the Serviced Loans.

1.43 Disclosure Statement. "Disclosure Statement" means the disclosure statement, including any Exhibits attached thereto, filed by the Debtors in the Chapter 11 Cases on September 15, 2006, as the same may be amended, supplemented or otherwise modified from time to time by any duly authorized amendment or modification.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.44 Disputed . . . Claim. "Disputed Claim" means any Claim against a Debtor which is not an Allowed Claim, including, without limitation, any Claim (A) designated as disputed, contingent or unliquidated in an Applicable Debtors' schedules filed in connection with its Chapter 11 Case, (B) to which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered; (C) which is subject of one or more Causes of Action pending against the Holder of such Claim; or (D) disallowed pursuant to § 502(d) of the Bankruptcy Code and under section 6.6 of the Plan.

1.45 Disputed Interest. "Disputed Interest" means any Interest in a Debtor which is not an Allowed Interest, including, without limitation, any Interest (A) to which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered; or (B) which is the subject of one or more Causes of Action pending against the Holder of such Interest.

1.46 Distribution Account. "Distribution Account" means that account established by each of the Debtors pursuant to Article V of the Plan. Each of the Debtors' Distribution Accounts, when referred to separately, shall be referred to hereafter as the "USACM Distribution Account," the "FT Distribution Account," the "DTF Distribution Account," the "CR Distribution Account," or the "S Distribution Account."

1.47 Diversified. "Diversified" means USA Capital Diversified Trust Deed Fund, LLC, the Debtor in the Chapter 11 Case, Case No. BK-S-06-10727 LBR.

1.48 Diversified Advisory Committee. "Diversified Advisory Committee" means the advisory committee appointed pursuant to the Diversified Liquidation Agreement.

1.49 Diversified Estate. "Diversified Estate" means the bankruptcy estate created in the Chapter 11 Case of Diversified pursuant to § 541 of the Bankruptcy Code.

1.50 Diversified Estate Administrator. "Diversified Estate Administrator" means the administrator appointed pursuant to the Diversified Liquidation Agreement to manage the Diversified Post-Effective Date Estate, with the assistance of the Diversified Advisory Committee, pursuant to the terms of this Plan and the Diversified Liquidation Agreement.

1.51 Diversified Excluded Assets. "Diversified Excluded Assets" means all assets of Diversified, including without limitation Causes of Action, except for the Diversified Serviced Loans.

1.52 Diversified Liquidation Agreement. "Diversified Liquidation Agreement" means the agreement that will govern the liquidation and wind down of the Diversified Post-Effective Date Estate to be executed by the Debtors, after consultation with the Diversified Trust Committee, and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.53 Diversified Post-Effective Date Estate. "Diversified Post-Effective Date Estate" means the Diversified Estate post-Effective Date which shall consist of the Diversified Excluded Assets, and the proceeds from the Diversified Serviced Loans, which shall be controlled and

liquidated by the Diversified Estate Administrator and the Diversified Advisory Committee pursuant to the terms of this Plan and the Diversified Liquidation Agreement.

1.54    Diversified Serviced Loans.  "Diversified Serviced Loans" means loans in which the Diversified Estate holds an interest that are listed on Exhibit B to the Silver Point Term Sheet.

1.55    Diversified Trust Committee.  "Diversified Trust Committee" means the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC appointed in the Chapter 11 Cases.

1.56    Due Diligence Completion Date.  "Due Diligence Completion Date" has the meaning set forth in the Silver Point Term Sheet, as the same may be extended by agreement between the Debtors and the Asset Acquirer.

1.57    Effective Date.  "Effective Date" means ten (10) Business Days after the conditions set forth in Article X of the Plan are satisfied or waived.

1.58    Entity.  "Entity" shall have the meaning assigned in § 101(15) of the Bankruptcy Code.

1.59    Estate.  "Estate" means the bankruptcy estate created in the Chapter 11 Case of each of the Debtors pursuant to § 541 of the Bankruptcy Code.

1.60    Estate Administrator.  "Estate Administrator" means the USACM Estate Administrator, the First Trust Estate Administrator, the USA Securities Estate Administrator, and/or the Diversified Estate Administrator, depending on the context in which the term is used.

1.61    Executory Contract Holders Committee.  "Executory Contract Holders Committee" means the Official Committee of Executory Contract Holders of USA Commercial Mortgage Company appointed in the Chapter 11 Cases.

1.62    Expense Reserve.  "Expense Reserve" as to each Debtor means all Cash of the Applicable Debtor's Estate, other than Sale Proceeds, if any, existing on the Confirmation Date.

1.63    Expense Retention Reserve.  "Expense Retention Reserve" means the portion of Diversified's Expense Reserve used to fund the Diversified Post-Effective Date Estate.

1.64    Final Decree.  "Final Decree" means a Final Order of the Bankruptcy Court closing the Chapter 11 Cases; provided however, if a Final Decree is separately entered in one or more of the Debtors' Chapter 11 Cases, then "Final Decree" means a Final Order of the Bankruptcy Court closing a particular Chapter 11 Case.

1.65    Final Distribution.  "Final Distribution" means in regard to a Liquidation Trust or the Diversified Post-Effective Date Estate, the distribution by the Estate Administrator which exhausts the Trust Estate.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.66 Final Fee Application. "Final Fee Application" means an application filed by a Professional seeking the allowance of an Administrative Expense Claim pursuant to section 3.1(a) of the Plan.

1.67 Final Order. "Final Order" means, as to any Court, administrative agency or other tribunal, an order or judgment of such Court, agency, or tribunal as entered on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought, such order or judgment shall have been affirmed (or such appeal or petition has been dismissed) by the highest Court (or other tribunal having appellate jurisdiction over the order or judgment) to which the order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.68 Final Tax Day. "Final Tax Day" means, with respect to an Estate or a Trust Estate, the last day which shall be included in a taxable year for which an income tax return is required to be filed by an Applicable Debtor on behalf of the Estate or an Estate Administrator on behalf of a Trust Estate.

1.69 First Trust. "First Trust" means USA Capital First Trust Deed Fund, LLC, the Debtor in the Chapter 11 Case, Case No. BK-S-06-10728 LBR.

1.70 First Trust Advisory Committee. "First Trust Advisory Committee" means the advisory committee appointed pursuant to the First Trust Liquidation Trust Agreement.

1.71 First Trust Assets. "First Trust Assets" means those assets of First Trust listed on Exhibit A to the Silver Point Term Sheet.

1.72 First Trust Committee. "First Trust Committee" means the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC, appointed in the Chapter 11 Cases.

1.73 First Trust Deed Fund Price. "First Trust Deed Fund Price" has the meaning set forth in the Silver Point Term Sheet, including reductions to the Cash price set forth in ¶ 2 of the Silver Point Term Sheet.

1.74 First Trust Estate. "First Trust Estate" means the bankruptcy estate created in the Chapter 11 Case of First Trust pursuant to § 541 of the Bankruptcy Code.

1.75 First Trust Estate Administrator. "First Trust Estate Administrator" means the estate administrator appointed to manage the First Trust Liquidation Trust, with the assistance of the First Trust Advisory Committee, pursuant to the terms of this Plan and the First Trust Liquidation Trust Agreement.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.76 First Trust Excluded Assets. "First Trust Excluded Assets" means those assets of the First Trust Estate that are not First Trust Assets, including Causes of Action, the First Trust Non-Assignable Litigation, the Bisynergy Loan, the First Trust Unremitted Principal Claims, and the First Trust Proximately Caused Aggregate Investment Deficit Claims.

1.77 First Trust Liquidation Trust. "First Trust Liquidation Trust" means the trust which will hold title to and control all of the First Trust Excluded Assets and the First Trust Deed Fund Price pursuant to the terms of this Plan and the First Trust Liquidation Trust Agreement.

1.78 First Trust Liquidation Trust Agreement. "First Trust Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors, after consultation with the First Trust Committee, and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.79 First Trust Non-Assignable Litigation. "First Trust Non-Assignable Litigation" means non-assignable Causes of Action of the First Trust Estate against auditors or related to securities laws, which Causes of Action are not included in the Acquired Assets and are retained for the benefit of the Trust Estate of the First Trust Liquidation Trust.

1.80 First Trust Serviced Loans. "First Trust Serviced Loans" means the Loans listed on Exhibit A of the Silver Point Term Sheet, also defined as the "First Trust Assets."

1.81 Fund Member. "Fund Member" means the Holder of an Allowed Interest in First Trust or Diversified.

1.82 General Aggregate Investment Deficit. "General Aggregate Investment Deficit" means, on a Loan by Loan basis, (A) in the case of a Direct Lender, principal and interest remaining unpaid after the Collateral and guarantees are exhausted, or (B) in the case of a Fund Member, any investment return remaining unpaid after the Applicable Litigation Trust is liquidated and Net Realizable Assets of that Trust or that Trust Estate are distributed pursuant to the Plan and Confirmation Order.

1.83 General Executory Contract. "General Executory Contract" means any and all executory contracts and unexpired leases of the Debtors within the meaning of § 365 of the Bankruptcy Code, except to the extent applicable, the Loan Servicing Agreements.

1.84 General Unsecured Claim. "General Unsecured Claim" means the principal amount (*i.e.,* excluding interest) of a Claim against a Debtor arising on or before the Petition Date that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Late Claim, Penalty Claim or Subordinated Claim, and includes, without limitation, any Unremitted Principal Claims, Unsecured Deficiency Claims, Proximately Caused Aggregate Investment Deficit Claims, and Claims arising as a result of the rejection of any executory contract or unexpired lease.

1.85 Higher and Better Offer. "Higher and Better Offer" means a bona fide offer made in accordance with the Buyer Protection and Bidding Procedures Order, which is determined by

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the Debtors to be a higher and better offer than any previously submitted bid in the Auction, including without limitation, the bid made pursuant to the Silver Point Term Sheet.

1.86 Holder. "Holder" means the beneficial owner of any Claim or Interest.

1.87 Initial Distribution Date. "Initial Distribution Date" means the date occurring as soon as practicable after the Effective Date, upon which Cash is distributed from a Distribution Account by an Applicable Debtor to Holders of Allowed Claims and/or Holders of Allowed Interests entitled to receive distributions under the Plan; provided however, that the Applicable Debtors shall use reasonable efforts to ensure that the Initial Distribution Date occurs on or before the 30th day following the Effective Date.

1.88 Insider. "Insider" has the same meaning as that term is defined in § 101(31) of the Bankruptcy Code.

1.89 Insider Claims. "Insider Claims" mean any Claims, causes of action or rights against a Debtor that have been or may be asserted by Insiders of the Debtors, including without limitation, by (A) IP, and any of IP's Affiliates, other than the Debtors; (B) Paul S. Hamilton; (C) Joseph D. Milanowski; (D) Thomas A. Hantges; and (E) Red Granite, LLC, and any of its Affiliates.

1.90 Insider Guarantees. "Insider Guarantees" mean guarantees made by Insiders, other than the Debtors.

1.91 Interest. "Interest" means any equity security interest or membership interest in a Debtor.

1.92 Interim Distribution Order. "Interim Distribution Order" means that "Order (A) Granting (i) Debtors' Motion to Distribute Funds; (ii) Debtors' Hold Funds Motion and (iii) the Compel Motion, and (B) Denying (i) the Lift Stay Motion and (ii) McKnight Motion" entered by the Bankruptcy Court in the Chapter 11 Cases on August 24, 2006.

1.93 IP. "IP" means USA Investment Partners, LLC, beneficial interests which are believed to be owned by Paul S. Hamilton, Joseph D. Milanowski, Thomas A. Hantges, and any of IP's Affiliates, other than the Debtors.

1.94 IP Causes of Action. "IP Causes of Action" means all Causes of Action of whatever kind or nature that may exist or could be asserted on behalf of any one or more of the Debtors against IP and any of IP's Affiliates, other than the Debtors, which Causes of Action are included in the Causes of Action preserved under this Plan.

1.95 IP Receivable. "IP Receivable" means that certain receivable reflected on the accounting records of USACM as being owed by IP, which receivable was memorialized and collateralized pursuant to that certain Promissory Note and Security Agreement approved in the "Order Approving Agreement With Investment Partners" entered by the Bankruptcy Court in the Chapter 11 Cases on July 24, 2006.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.96 Late Claim. "Late Claim" means a Claim against a Debtor proof of which is filed in a Chapter 11 Case before the Confirmation Date but after the Bar Date applicable to such Claim.

1.97 Lender. "Lender" means a Direct Lender, First Trust or Diversified.

1.98 Lender Interest Claim. "Lender Interest Claim" means a Claim against the USACM Estate made by a Lender for Pre-Paid Interest which Pre-Paid Interest is not the subject of an Order entered by the Bankruptcy Court prior to the Confirmation Date.

1.99 Lender Interest Claim Bar Date. "Lender Interest Claim Bar Date" means thirty (30) days after the Confirmation Date.

1.100 Lien. "Lien" has the meaning set forth in § 101(37) of the Bankruptcy Code.

1.101 Liquidation Expenses. "Liquidation Expenses" means all costs, fees and expenses associated or incurred by each Estate in connection with the implementation and consummation of the Plan after the Effective Date. In regard to the First Trust, USACM, or USA Securities Liquidation Trusts and the Diversified Post-Effective Date Estate, it shall also mean all expenses, debts, charges, taxes, liabilities, and obligations related to the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate and their administration, including without limitation, compensation payable to an Estate Administrator and those professionals retained by the Estate Administrator to assist in the implementation and consummation of the terms of the Plan, the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement and all costs, fees and expenses of (A) taking possession of, holding, maintaining, pursuing, liquidating or distributing the property belonging to Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, (B) prosecuting, defending, settling or otherwise resolving any disputes regarding the Trust Estate, the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, and (C) the distribution of assets from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate. Without limiting the generality of the foregoing, Liquidation Expenses shall also mean and include, without limitation any and all costs, expenses and fees (including, without limitation, all reasonable professional fees) incurred after the Effective Date by an Estate Administrator in performing his or her duties hereunder and pursuant to the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement.

1.102 Liquidation Trusts. "Liquidation Trusts" mean the First Trust Liquidation Trust, the USACM Liquidation Trust, and the USA Securities Liquidation Trust created pursuant to this Plan and the Applicable Liquidation Trust Agreement.

1.103 Liquidation Trust Agreements. "Liquidation Trust Agreements" means the First Trust Liquidation Trust Agreement, the USACM Liquidation Trust Agreement, and the USA Securities Liquidation Trust Agreement.

1.104 Loan Servicing Agreements. Any and all agreements entered into by USACM with Lenders relating to USACM's servicing of the Loans.

1.105 Loan. "Loan" means a loan originated and serviced by USACM.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.106 Loan by Loan. "Loan by Loan" means, with respect to any particular calculation or issue, looking at each Loan independently of any other Loan.

1.107 Net Realizable Assets. "Net Realizable Assets" means Realizable Assets, net of Liquidation Expenses.

1.108 Objection Bar Date. "Objection Bar Date" means ninety (90) days after the Effective Date, as the same may be extended by the Bankruptcy Court after notice and a hearing, as the last day to file objections to alleged Claims or Interest asserted against the Debtors in the Chapter 11 Cases, other than to alleged Administrative Expense Claims, alleged Lender Interest Claims, and alleged Claims based on a General Aggregate Investment Deficit.

1.109 Ordinary Course Administrative Expense Claim. "Ordinary Course Administrative Expense Claim" shall be limited to Administrative Expense Claims incurred in the ordinary course of the Debtors' businesses and shall not include: (A) any postpetition obligations of a Debtor which are past due; (B) cure payments, if any, required to assume an executory contract or unexpired lease either in the Plan or by separate Order of the Bankruptcy Court entered prior to the Effective Date; (C) any fees or expenses, compensation or reimbursement for which is requested pursuant to subsections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code; (D) any Taxes (including, without limitation, income, sales, use, property or other Taxes); and (E) any Claims against a Debtor for breach of contract, tort, or other actionable conduct.

1.110 Payment Reserves. "Payment Reserves" means those reserves, if any, for Disputed Claims, Disputed Interests, Taxes or unclaimed distributions established by the Debtors under Article V of the Plan, or for Lender Interest Claims established by the Debtors pursuant to Article VI of the Plan.

1.111 Penalty Claim. "Penalty Claim" means a Claim against a Debtor, whether Secured or unsecured and which Claim is for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary lost suffered by the Holder of such Claim.

1.112 Person. "Person" has the meaning assigned in § 101(41) of the Bankruptcy Code.

1.113 Petition Date. "Petition Date" means April 13, 2006, the date the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

1.114 Plan. "Plan" means this First Amended Joint Plan of Reorganization, dated October 17, 2006, including any Exhibits annexed hereto and any documents delivered in connection herewith as the same may be amended, supplemented or otherwise modified from time to time by any duly authorized amendment or modification.

1.115 Pre-Paid Interest. "Pre-Paid Interest" means Claims or Cash (A) collected by (i) USACM from a Borrower on or after the Petition Date and prior to the Closing Date or (ii) collected by the Asset Acquirer from a Borrower after the Closing Date, as reimbursement of interest that USACM paid to a Lender prior to the Petition Date but had not been remitted by the Borrower to USACM prior to the Petition Date, or (B) collected by USACM or the USACM

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Liquidation Trust from a Lender by recouping interest that USACM paid to the Lender but which had not been remitted by the Borrower to USACM prior to the Petition Date against amounts collected from a Borrower under a Loan in which the Lender has an interest after the Petition Date.

1.116   Priority Non-Tax Claim.  "Priority Non-Tax Claim" means a Claim against a Debtor that is entitled to priority under § 507(a) of the Bankruptcy Code, except Priority Tax Claims, Administrative Expense Claims, and Ordinary Course Administrative Expense Claims.

1.117   Priority Tax Claim.  "Priority Tax Claim" means a Claim against a Debtor entitled to priority under § 507(a) (8) of the Bankruptcy Code.

1.118   Pro Rata.  "Pro Rata" means, in the context of Allowed Claims, the ratio of an Allowed Claim in a particular Class and payable by an Applicable Debtor to the aggregate amount of all Allowed Claims in that Class and payable by the Applicable Debtor.  "Pro Rata" means, in the context of Allowed Interests, the ratio of an Allowed Interest payable by an Applicable Debtor to the aggregate amount of all Allowed Interests payable by the Applicable Debtor.

1.119   Professional.  "Professional" means any Person employed or appointed in any one or all of the Chapter 11 Cases pursuant to §§ 327, 330, 1103, or 1104 of the Bankruptcy Code or otherwise, and any Professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to § 503(b)(4) of the Bankruptcy Code.

1.120   Proximately Caused Aggregate Investment Deficit Claim.  "Proximately Caused Aggregate Investment Deficit Claim" means a Claim against USACM based on a General Aggregate Investment Deficit that a Direct Lender or Fund Member (either directly or through the Diversified Estate or First Trust Estate) proves was proximately caused by some act or failure to act by USACM in violation of a contractual or statutory duty.

1.121   Realizable Assets.  "Realizable Assets" means as to each Debtor, all assets of the Debtor's Estate or, if applicable, its Trust Estate, as the same are reduced to Cash.

1.122   Sale Proceeds.  "Sale Proceeds" means Cash and other gross proceeds of the sale of the Acquired Assets to the Asset Acquirer.

1.123   Secured Claim.  "Secured Claim" means a Claim against a Debtor secured, as determined in accordance with §§ 506(a) and 1111(b) of the Bankruptcy Code, by Collateral.

1.124   Serviced Loan.  "Serviced Loan" means those Loans originated by USACM and serviced by USACM pursuant to a Loan Servicing Agreement, including without limitation the Diversified Serviced Loans, which are listed on Exhibit B to the Silver Point Term Sheet, and excluding the First Trust Assets listed on Exhibit A to the Silver Point Term Sheet.

1.125   Silver Point.  "Silver Point" means SPCP Group, LLC.

1.126   Silver Point Term Sheet.  "Silver Point Term Sheet" means the term sheet signed between the Debtors and Silver Point on September 12, 2006, a copy of which is attached to the Plan as Exhibit 1.  The terms of the Silver Point Term Sheet will be incorporated into an Asset

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Purchase Agreement, which is mutually acceptable to the Debtors and Silver Point and which, when executed, shall supersede and replace the Silver Point Term Sheet.

1.127 Statutory Fees. "Statutory Fees" mean any fees payable in the Chapter 11 Cases under 28 U.S.C. § 1930.

1.128 Statutory Interest on Allowed General Unsecured Claims. "Statutory Interest on Allowed General Unsecured Claims" means the Federal Judgment Rate on the Effective Date determined from the Petition Date until such Allowed General Unsecured Claim is paid in full. The rate used to calculate "Statutory Interest on Allowed General Unsecured Claims" shall be calculated in accordance with 28 U.S.C. § 1961 and is the interest rate allowed on any money judgment in a civil case recovered in a district court and is the interest rate that was in effect on the Petition Date and is the rate consistent with the rate established by § 726(a)(5) of the Bankruptcy Code.

1.129 Subordinated Claim. "Subordinated Claim" means an Insider Claim against a Debtor subordinated upon entry of the Confirmation Order pursuant to section 6.1 of the Plan.

1.130 Taxes. "Taxes" means all taxes, charges, fees, imposts, levies or other assessments, including, without limitation, all net income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, and property taxes, customs duties, fees, assessments and charges of any kind whatsoever, together with any interest and penalties, additions to tax or additional amounts imposed by any taxing authority (domestic or foreign) and any interest and penalties imposed with respect to the filing, obligation to file or failure to file any tax return, and shall include any transferee liability in respect to Taxes.

1.131 Third-Party Bidder. "Third-Party Bidder" means an Entity, other than the Silver Point, who makes a Higher and Better Offer for the Acquired Assets and who complies with the procedures and requirements set forth in the Buyer Protection and Bidding Procedures Order.

1.132 Third-Party Servicer. "Third-Party Servicer" means (A) if the First Trust Assets and the USACM Assets are sold to an Asset Acquirer, the Asset Acquirer or such other Entity as may be designated; or (B) if the First Trust Assets and the USACM Assets are not sold to an Asset Acquirer and are liquidated pursuant to this Plan, an Entity selected to service the First Trust Serviced Loans and the Serviced Loans.

1.133 Total Cash Purchase Price. "Total Cash Purchase Price" is the sum of the First Trust Deed Fund Price and the Commercial Mortgage Price, as the same may be increased through the Auction.

1.134 Trust Account. "Trust Account," as to each Liquidation Trust, means the account established by the Estate Administrator for each Trust Estate pursuant to Article V of the Plan.

1.135 Trust Estate. "Trust Estate" means all property of, vested in, controlled by, belonging to or in the possession of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, as the case may be.

1.136 Trust Reserve. "Trust Reserve" means as to USACM, First Trust and USA Securities respectively, the portion of the Applicable Debtor's Expense Reserve used to fund the Applicable Liquidation Trust.

1.137 Unremitted Principal Claim. "Unremitted Principal Claim" means a General Unsecured Claim held against the USACM Estate as a result of USACM collecting principal from a Borrower under a Loan, but not remitting such principal to the Lender.

1.138 Unsecured Creditors' Committee. "Unsecured Creditors' Committee" means the Official Committee of Unsecured Creditors for USA Commercial Mortgage Company appointed in the Chapter 11 Cases.

1.139 Unsecured Deficiency Claim. "Unsecured Deficiency Claim" means that portion of an Allowed Secured Claim in excess of the value of the Collateral securing such Secured Claim, as determined in accordance with § 506(a) of the Bankruptcy Code.

1.140 USACM. "USACM" means USA Commercial Mortgage Company, the Debtor in the Chapter 11 Case, Case No. BK-S-060-10725 LBR.

1.141 USACM Advisory Committee. "USACM Advisory Committee" means the advisory committee appointed pursuant to the USACM Liquidation Trust.

1.142 USACM Assets. "USACM Assets" means (A) all Loan Servicing Agreements for all Serviced Loans, and rights thereunder after the Closing Date as more fully set forth in the Silver Point Term Sheet, and (B) all personal property necessary for enforcement of Service Agreements, including, without limitation, all servicing and investor records, databases, and servicing and reporting software, as described in the Silver Point Term Sheet.

1.143 USACM Estate. "USACM Estate" means the bankruptcy estate created in the Chapter 11 Case of USACM pursuant to § 541 of the Bankruptcy Code.

1.144 USACM Estate Administrator. "USACM Estate Administrator" means the estate administrator appointed pursuant to the USACM Liquidation Trust Agreement to manage the USACM Liquidation Trust, with the assistance of the USACM Advisory Committee, pursuant to the terms of this Plan and the USACM Liquidation Trust Agreement.

1.145 USACM Excluded Assets. "USACM Excluded Assets" mean those assets of the USACM Estate that are not Acquired Assets, including the IP Receivable and the IP Causes of Action.

1.146 USACM Liquidation Trust. "USACM Liquidation Trust" means the trust which will hold title to and control all of the USACM Excluded Assets and the Commercial Mortgage Price pursuant to the terms of this Plan and the USACM Liquidation Trust Agreement.

1.147 USACM Liquidation Trust Agreement. "USACM Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors, after consultation with the Unsecured Creditors' Committee, and filed with the Bankruptcy Court no later than ten (10) days

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

1.148 USA Capital Realty. "USA Capital Reality" means USA Capital Reality Advisors, LLC, the Debtor in the Chapter 11 Case, Case No. BK-S-06-10726 LBR.

1.149 USA Capital Realty Estate. "USA Capital Realty Estate" means the bankruptcy estate created in the Chapter 11 Case of USA Capital Realty pursuant to § 541 of the Bankruptcy Code.

1.150 USA Securities. "USA Securities" means USA Securities, LLC, the Debtor in the Chapter 11 Case, Case No. BK-S-06-10729 LBR.

1.151 USA Securities Advisory Committee. "USA Securities Advisory Committee" means the advisory committee appointed pursuant to the USA Securities Liquidation Trust Agreement. The USA Securities Advisory Committee may be, but is not required to be, the same as the USACM Advisory Committee.

1.152 USA Securities Estate. "USA Securities Estate" means the bankruptcy estate created in the Chapter 11 Case of USA Securities pursuant to § 541 of the Bankruptcy Code.

1.153 USA Securities Estate Administrator. "USA Securities Estate Administrator" means the estate administrator appointed to manage the USA Securities Liquidation Trust, with the assistance of the USACM Advisory Committee, pursuant to the terms of this Plan and USA Securities Liquidation Trust Agreement. The USA Securities Estate Administrator may be, but is not required to be, the same person as the USACM Estate Administrator.

1.154 USA Securities Insurance Policy. "USA Securities Insurance Policy" means that certain insurance policy covering Directors & Officers Liability ("D&O") and Employment Practices Liability ("EPL") issued by Illinois Union Insurance Company to USA Securities, which has been in place continuously since January 27, 2004, and which has separate limits of $1 million each for the D&O and EPL coverages.

1.155 USA Securities Liquidation Trust. "USA Securities Liquidation Trust" means the trust which will hold title to and control all property of USA Securities and the USA Securities Estate pursuant to this Plan and the USA Securities Liquidation Trust Agreement, including without limitation, the USA Securities Insurance Policy.

1.156 USA Securities Liquidation Trust Agreement. "USA Securities Liquidation Trust Agreement" means the Liquidation Trust Agreement to be executed by the Debtors and filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Disclosure Statement under § 1125 of the Bankruptcy Code.

/ / /

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# ARTICLE II

# CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1 Introduction.**

In accordance with §1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Ordinary Course Administrative Expense Claims, and Priority Tax Claims against each of the Debtors have not been classified, and the respective treatment of such unclassified Claims for each Debtor is set forth in section 3.1 of the Plan.

All other Claims against and Interests in each of the Debtors have been classified as set forth in sections 2.2 and 2.3 of the Plan, and the treatment of such Claims and Interests is stated in sections 3.2 and 3.3 of the Plan. A Claim against or Interest in an Applicable Debtor is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim against or Interest in an Applicable Debtor may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim against or Interest in an Applicable Debtor is also placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

**2.2 Classification of Unimpaired Claims and Interests.**

*(a) Priority Non-Tax Claims.*

(i) *Class 1CM: Priority Non-Tax Claims Against USACM.*

Class 1CM consists of all Priority Non-Tax Claims against USACM.

(ii) *Class 1FT: Priority Non-Tax Claims Against First Trust.*

Class 1FT consists of all Priority Non-Tax Claims against First Trust.

(iii) *Class 1DTF: Priority Non-Tax Claims Against Diversified.*

Class 1DTF consists of all Priority Non-Tax Claims against Diversified.

(iv) *Class 1CR: Priority Non-Tax Claims Against USA Capital Realty.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Class 1CR consists of all Priority Non-Tax Claims against USA Capital Realty.

(v) *Class 1S: Priority Non-Tax Claims Against USA Securities.*

Class 1S consists of all Priority Non-Tax Claims against USA Securities.

**2.3 <u>Classification of Impaired Claims and Interests.</u>**

*(a) Secured Claims.*

(i) *Class 2CM: Secured Claims Against USACM.*

Class 2CM consists of all Secured Claims against USACM.

(ii) *Class 2FT: Secured Claims Against First Trust.*

Class 2FT consists of all Secured Claims against First Trust.

(iii) *Class 2DTF: Secured Claims Against Diversified.*

Class 2DTF consists of all Secured Claims against Diversified.

(iv) *Class 2CR: Secured Claims Against USA Capital Realty.*

Class 2CR consists of all Secured Claims against USA Capital Realty.

(v) *Class 2S: Secured Claims Against USA Securities.*

Class 2S consists of all Secured Claims against USA Securities.

*(b) General Unsecured Claims.*

(i) *Class 3CM: General Unsecured Claims Against USACM.*

Class 3CM consists of all General Unsecured Claims against USACM.

(ii) *Class 3FT: General Unsecured Claims Against First Trust.*

Class 3FT consists of all General Unsecured Claims against First Trust.

(iii) *Class 3DTF: General Unsecured Claims Against Diversified.*

Class 3DTF consists of all General Unsecured Claims against Diversified.

(iv) *Class 3CR: General Unsecured Claims Against USA Capital Realty.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Class 3CR consists of all General Unsecured Claims against USA Capital Realty.

(v) *Class 3S: General Unsecured Claims Against USA Securities.*

Class 3S consists of all General Unsecured Claims against USA Securities.

*(c) Late Claims.*

(i) *Class 4CM: Late Claims Against USACM.*

Class 4CM consists of all Late Claims against USACM.

(ii) *Class 4FT: Late Claims Against First Trust.*

Class 4FT consists of all Late Claims against First Trust.

(iii) *Class 4DTF: Late Claims Against Diversified.*

Class 4DTF consists of all Late Claims against Diversified.

(iv) *Class 4CR: Late Claims Against USA Capital Realty.*

Class 4CR consists of all Late Claims against USA Capital Realty.

(v) *Class 4S: Late Claims Against USA Securities.*

Class 4S consists of all Late Claims against USA Securities.

*(d) Penalty Claims.*

(i) *Class 5CM: Penalty Claims Against USACM.*

Class 5CM consists of all Penalty Claims against USACM.

*(e) Subordinated Claims.*

(i) *Class 6CM: Subordinated Claims Against USACM.*

Class 6CM consists of all Subordinated Claims against USACM.

(ii) *Class 6FT: Subordinated Claims Against First Trust.*

Class 6FT consists of all Subordinated Claims against First Trust.

(iii) *Class 6DTF: Subordinated Claims Against Diversified.*

Class 6DTF consists of all Subordinated Claims against Diversified.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(iv) *Class 6CR: Subordinated Claims Against USA Capital Realty.*

Class 6CR consists of all Subordinated Claims against USA Capital Realty.

(v) *Class 6S: Subordinated Claims Against USA Securities.*

Class 6S consists of all Subordinated Claims against USA Securities.

*(f) Interests.*

(i) *Class 7CM: Interests in USACM.*

Class 7CM consists of all Interests in USACM.

(ii) *Class 7FT: Interests in First Trust.*

Class 7FT consists of all Interests in First Trust.

(iii) *Class 7DTF: Interests in Diversified.*

Class 7DTF consists of all Interests in Diversified.

(iv) *Class 7CR: Interests in USA Capital Realty.*

Class 7CR consists of all Interests in USA Capital Realty.

(v) *Class 7S: Interests in USA Securities.*

Class 7S consists of all Interests in USA Securities.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**3.1 Unclassified Claims.**

*(a) Administrative Expense Claims.*

(i) General.

Except with respect to Holders of Allowed Ordinary Course Administrative Claims and Allowed Priority Tax Claims, which are provided for in sections 3.1(b) and 3.1(c) below, Holders of Allowed Administrative Expense Claims against an Applicable Debtor shall receive, on account of such Claims, Cash in the full amount of the Allowed Administrative Expense Claim from the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date; (ii) the fifth

Business Day after such Claim becomes an Allowed Administrative Expense Claim against the Applicable Debtor; or (iii) the date such Administrative Expense Claim becomes payable pursuant to any written agreement between the Applicable Debtor or the Estate Administrator and the Holder of such Administrative Expense Claim.

(ii) Payment of Statutory Fees.

On or before the Effective Date, all Statutory Fees, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Applicable Debtor in Cash. All Statutory Fees payable and arising after the Confirmation Hearing shall be paid by the Applicable Debtor, the Diversified Post-Effective Date Estate or the Applicable Liquidation Trust as required by law and, if applicable, as further described in the Diversified Liquidation Trust Agreement or the Applicable Liquidation Trust Agreement.

(iii) Ordinary Course Administrative Expense Claims.

Ordinary Course Administrative Expense Claims shall be paid by an Applicable Debtor in the ordinary course of its business as and when incurred and due, subject to any applicable Order of the Bankruptcy Court. Any Ordinary Course Administrative Expense Claims incurred prior to the Effective Date, and for which consideration has been provided to an Applicable Debtor prior to the Effective Date, but which are not yet due in the ordinary course of business on the Effective Date, except with respect to Ordinary Course Administrative Expense Claims relating to the Acquired Assets, shall be paid when due by the Applicable Debtor from its Distribution Account.

(iv) Applicable Bar Dates.

(A) General.

All applications seeking the allowance of an Administrative Expense Claim, other than Administrative Expense Claims of Professionals provided for in subsection 3.1(a)(iv)(B) below and Ordinary Course Administrative Expense Claims, must be filed with the Bankruptcy Court and served on the Applicable Debtor and the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, to the extent applicable, by no later than thirty (30) days after the Effective

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Date. Any Holder of an Administrative Expense Claim who fails to file an application seeking to have its Claim allowed on or before the thirtieth day after the Effective Date shall be forever barred from seeking the allowance of its Administrative Expense Claim, and the Applicable Debtor, its Estate and the Trust Estate, if applicable, shall be discharged of any obligation on such Claim or any other Claim related to the Administrative Expense Claim.

(B) Professionals.

All Professionals or other entities requesting compensation or reimbursement of expenses under §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date (including any compensation requested by any Professional or other entity for making a substantial contribution in a Chapter 11 Case) must file with the Bankruptcy Court and serve on the Applicable Debtor and the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, to the extent applicable, a Final Fee Application seeking final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Any Professional who fails to file a Final Fee Application on or before the forty-fifth day after the Effective Date shall be forever barred from seeking the allowance of its Administrative Expense Claim or any other Claim, and the Applicable Debtor, its Estate and the Trust Estate, if applicable, shall be discharged of any obligation on such Claim or any other Claim related to the Professional's Claim.

*(b) Priority Tax Claims.*

Holders of Allowed Priority Tax Claims against an Applicable Debtor shall receive, on account of such Claims, Cash in the full amount of the Allowed Priority Tax Claim from the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date; (ii) the fifth Business Day after such Claim becomes an Allowed Priority Tax Claim against the Applicable Debtor; or (iii) the date such Priority Tax Claim

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

becomes payable pursuant to any written agreement between the Applicable Debtor or the Estate Administrator and the Holder of such Priority Tax Claim.

**3.2 Unimpaired Classes of Claims and Interests.**

*(a) Priority Non-Tax Claims: Classes 1CM, 1FT, 1DTF, 1CR and 1S.*

Holders of Allowed Priority Non-Tax Claims against an Applicable Debtor shall receive, on account of such Claims, Cash in the full amount of the Allowed Priority Non-Tax Claim from the Distribution Account of the Applicable Debtor on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date; (ii) the fifth Business Day after such Claim becomes an Allowed Priority Non-Tax Claim against the Applicable Debtor; or (iii) the date such Priority Non-Tax Claim becomes payable pursuant to any written agreement between the Applicable Debtor or the Estate Administrator and the Holder of such Administrative Expense Claim.

**3.3 Impaired Classes of Claims and Interests.**

*(a) Secured Claims: Classes 2CM, 2FT, 2DTF, 2CR and 2S.*

(i) General. Each Holder of an Allowed Secured Claim shall receive, at the option of the Applicable Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Secured Claim: (A) Cash from the Distribution Account of the Applicable Debtor equal to the present value of the unpaid portion of such Allowed Secured Claim calculated as of the Effective Date; (B) the return of the Collateral securing such Allowed Secured Claim; or (C) such other treatment as to which the Applicable Debtor or Estate Administrator and such Holder shall have agreed upon in writing, or as soon as reasonably practicable after, the latest of: (1) the Initial Distribution Date, if the Collateral securing the Allowed Secured Claim is an Acquired Asset and the Closing Date has occurred; (2) a date set by the applicable Estate Administrator for the initial distributions in the relevant Estate on or after the Effective Date, if the Collateral securing the Allowed Secured Claim is not an Acquired Asset or the Closing Date has not occurred; (3) the fifth Business Day after such Claim becomes an Allowed Secured Claim; or (4) the date such Allowed Secured Claim becomes payable pursuant to any agreement between the Applicable Debtor or an Estate Administrator and the Holder of an Allowed Secured

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Claim. Upon payment of its Allowed Secured Claim or return of the Collateral securing the Allowed Secured Claim, the Allowed Secured Claim shall be considered fully satisfied and the Lien of the Holder of such Claim shall be released.

(ii) Compliance with Applicable Agreements. All distributions on Allowed Secured Claims made from the Liquidation Trusts or from the Diversified Post-Effective Date Estate shall be made in accordance with and pursuant to the Liquidation Trust Agreements or the Diversified Liquidation Agreement, as applicable, and shall be made by the Liquidation Trusts or the Diversified Post-Effective Date Estate at such times and in such amounts as the Estate Administrator shall determine.

(iii) Claim Holders' Rights. To the extent it is valid and enforceable, the Lien securing an Allowed Secured Claim shall continue against Collateral or any proceeds from the sale or liquidation thereof, including Sale Proceeds or proceeds obtained in liquidation, in the same order, priority and validity such Lien enjoyed on the Confirmation Date. On and after the Effective Date, each Holder of an Allowed Secured Claim shall retain the aforementioned Lien upon its Collateral or the proceeds thereof securing such Allowed Secured Claim, including the Sale Proceeds or liquidation proceeds, until such time as the Holder of such Allowed Secured Claim has received Cash equal to the amount of its Allowed Secured Claim. The Holders of Allowed Secured Claims shall retain their rights, if any, to fees, costs and charges as such may be allowable in accordance with § 506(b) of the Bankruptcy Code and any applicable Orders entered by the Bankruptcy Court. The Debtors shall retain their rights, if any, to surcharge costs and expenses as may be allowable in accordance with § 506(c) of the Bankruptcy Code and any applicable Orders entered by the Bankruptcy Court.

*(b) General Unsecured Claims: Classes 3CM, 3FT, 3DTF, 3CR, 3S.*

(i) Class 3CM.

(A) General. Each Holder of an Allowed General Unsecured Claim in Class 3CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the USACM Distribution Account, determined

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

in the sole discretion of USACM or the USACM Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of such Holder's Allowed General Unsecured Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder's Allowed General Unsecured Claim in full, at such time as may be determined by the USACM Estate Administrator, the Holder shall receive a beneficial interest in the USACM Liquidation Trust, and on account of that interest such Holder may receive a Pro Rata share of all Cash distributed to the USACM Distribution Account from the Trust Account up to the full amount of such Holder's Allowed Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

(B) Statutory Interest. Each Holder of an Allowed General Unsecured Claim in Class 3CM shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution, determined in the sole discretion of USACM or the USACM Estate Administrator, from the USACM Distribution Account up to the full amount of the Statutory Interest on Allowed General Unsecured Claims satisfaction in full all of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Allowed Penalty Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(ii) Class 3FT.

(A) General. Each Holder of an Allowed General Unsecured Claim in Class 3FT shall receive on the Initial Distribution Date Cash from the FT

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Distribution Account equal to the full amount of such Holder's Allowed General Unsecured Claim after satisfaction in full by First Trust of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(B) Statutory Interest. On the Initial Distribution Date, each Holder of an Allowed General Unsecured Claim in Class 3FT shall receive Cash on account of its Statutory Interest on Allowed General Unsecured Claim in accordance with the Plan and the provisions of the Bankruptcy Code.

(iii) Class 3DTF.

(A) General. Each Holder of an Allowed General Unsecured Claim in Class 3DTF shall receive on the Initial Distribution Date Cash from the DTF Distribution Account equal to the full amount of such Holder's Allowed General Unsecured Claim after satisfaction in full by Diversified of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(B) Statutory Interest. On the Initial Distribution Date, each Holder of an Allowed General Unsecured Claim in Class 3DTF shall receive Cash on account of its Statutory Interest on Allowed General Unsecured Claim in accordance with the Plan and the provisions of the Bankruptcy Code.

(iv) Class 3CR.

(A) General. Each Holder of an Allowed General Unsecured Claim in Class 3CR, if any, shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the CR Distribution Account, determined in the sole discretion of USA Capital Realty after provision is made for Payment Reserves, if any, up the full amount of such Holder's Allowed General Unsecured

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Claim after satisfaction in full by USA Capital Realty of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(B)    Statutory Interest.  Each Holder of an Allowed General Unsecured Claim in Class 3CR shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution, determined in the sole discretion of USA Capital Realty, from the CR Distribution Account, up to the full amount of the Statutory Interest on Allowed General Unsecured Claims after USA Capital Realty satisfies in full any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

(v)    Class 3S.

(A)    General.  Each Holder of an Allowed General Unsecured Claim in Class 3S shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the S Distribution Account, determined in the sole discretion of USA Securities or the USA Securities Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of such Holder's Allowed General Unsecured Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.  To the extent that Cash in the S Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed General Unsecured Claim in full, at such later times as may be determined by the USA Securities Estate Administrator, the Holder shall receive a beneficial interest in the USA Securities Liquidation Trust, and on account of that interest such Holder may receive a Pro

Rata share of all Cash distributed to the S Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

(B) <u>Statutory Interest.</u> Each Holder of an Allowed General Unsecured Claim in Class 3S shall receive on account of the Statutory Interest on Allowed General Unsecured Claims its Pro Rata share of all Cash available for distribution, determined in the sole discretion of USA Securities or the USA Securities Estate Administrator, from the S Distribution Account, up to the full amount of the Statutory Interest on Allowed General Unsecured Claims after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

*(c) Late Claims: Classes 4CM, 4FT, 4DTF, 4CR, and 4S.*

(i) <u>Class 4CM.</u> Each Holder of an Allowed Late Claim in Class 4CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the USACM Distribution Account, determined in the sole discretion of USACM or the USACM Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of the Allowed Late Claim after satisfaction in full by USACM of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the USACM Estate Administrator, the Holder shall receive a beneficial interest in the USACM Liquidation Trust, and on account of that interest such Holder may receive Pro Rata share of all Cash

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

distributed to the USACM Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by the USACM Liquidation Trust of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed General Unsecured Claims.

(ii) Class 4FT. Each Holder of an Allowed Late Claim in Class 4FT shall receive on the Initial Distribution Date Cash from the FT Distribution Account equal to the full amount of such Holder's Allowed Late Claim after satisfaction in full by First Trust of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(iii) Class 4DTF. Each Holder of an Allowed Late Claim in Class 4DTF shall receive on the Initial Distribution Date Cash from the DTF Distribution Account in the full amount of such Holder's Allowed Late Claim after satisfaction in full by Diversified of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

(iv) Class 4CR. Each Holder of an Allowed Late Claim in Class 4CR, if any, shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the CR Distribution Account, determined in the sole discretion of USA Capital Realty after provision is made for Payment Reserves, if any, up the full amount of the Allowed Late Claim after satisfaction in full by USA Capital Realty of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(v) Class 4S. Each Holder of an Allowed Late Claim in Class 4S shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the S Distribution Account, determined in the sole discretion of USA Securities or the USA Securities Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of the Allowed Late Claim after satisfaction in full by USA Securities of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the S Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Late Claim in full, at such later times as may be determined by the USA Securities Estate Representative, the Holder shall receive a beneficial interest in the USA Securities Liquidation Trust and on account of that interest such Holder may receive a Pro Rata share of all Cash distributed to the S Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by the USA Securities Liquidation Trust of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non Tax Claims, and Allowed General Unsecured Claims.

*(d) Penalty Claims: Class 5CM.*

(i) Class 5CM. Each Holder of an Allowed Penalty Claim in Class 5CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the USACM Distribution Account, determined in the sole discretion of USACM or the USACM Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of the Allowed Penalty Claim after satisfaction in full by USACM of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Penalty Claim in full, at such later times as may be determined by the USACM Estate Administrator, the Holder shall receive a beneficial interest in the USACM Liquidation Trust and on account of that interest such Holder may receive a Pro Rata share of all Cash distributed to the USACM Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full by the USACM Liquidation Trust of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and Allowed Late Claims.

*(e) Subordinated Claims: Classes 6CM, 6FT, 6DTF, 6CR, and 6S.*

(i) Class 6CM. Each Holder of an Allowed Subordinated Claim in Class 6CM shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the USACM Distribution Account, determined in the sole discretion of USACM or the USACM Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up to the full amount of the Allowed Subordinated Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the USACM Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Subordinated Claim in full, at such later times as may be determined by the USACM Estate Administrator, the Holder shall receive a beneficial interest in the USACM Liquidation Trust and on account of that interest such Holder may receive a Pro Rata share of all Cash distributed to the USACM Distribution Account from the Trust Account up to the full amount of its Allowed Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Unsecured Claims, Allowed Late Claims, Allowed Penalty Claims, and Statutory Interest on Allowed General Unsecured Claims.

(ii) Class 6FT. Each Holder of an Allowed Subordinated Claim in Class 6FT shall receive a beneficial interest in the First Trust Liquidation Trust and on account of that interest may receive a Pro Rata share of all Cash distributed to the FT Distribution Account from the Trust Account up to the full amount of such Holder's Allowed Subordinated Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Interests in accordance with the Plan and the provisions of the Bankruptcy Code.

(iii) Class 6DTF. Each Holder of an Allowed Subordinated Claim in Class 6DTF shall receive a Pro Rata share of Cash from the DTF Distribution Account up to the full amount of such Holder's Allowed Subordinated Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Interests in accordance with the Plan and the provisions of the Bankruptcy Code.

(iv) Class 6CR. Each Holder of an Allowed Subordinated Claim in Class 6CR shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the CR Distribution Account, determined in the sole discretion of USA Capital Realty after provision is made for Payment Reserves, up to the full amount of the Allowed Subordinated Claim after satisfaction in full by USA Capital Realty of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(v) Class 6S. Each Holder of an Allowed Subordinated Claim in Class 6S shall receive on the Initial Distribution Date its Pro Rata share of all Cash available for distribution from the S Distribution Account, determined in the sole discretion of USA Securities or the USA Securities Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up the full amount of the Allowed Subordinated Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims in accordance with the Plan and the provisions of the Bankruptcy Code. To the extent that Cash in the S Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Subordinated Claim in full, at such later times as may be determined by the USA Securities Estate Administrator, the Holder shall receive a beneficial interest in the USA Securities Liquidation Trust and on account of that interest such Holder may receive a Pro Rata share of all Cash distributed to the S Distribution Account from the Trust Account up to the full amount of its Allowed Subordinated Claim after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims.

*(f) Interests: Classes 7CM, 7FT, 7DTF, 7CR, and 7S.*

(i) Class 7CM. Each Holder of an Allowed Interest in Class 7CM shall receive a beneficial interest in the USACM Liquidation Trust and on account of that interest may receive a Pro Rata share of any Cash distributed to the USACM Distribution Account from the Trust Account up to full amount of such Holder's Allowed Interest after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, Allowed Penalty

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Claims, Statutory Interest on Allowed General Unsecured Claims, and Allowed Subordinated Claims. Unless included in the Acquired Assets at the option of the Asset Acquirer, upon the Effective Date, all Interests in USACM shall be cancelled and USACM dissolved, with the cancelled Interests in USACM replaced solely by this right to payment of the remaining assets in accordance with this paragraph under the Plan.

(ii) Class 7FT. Subject to the Interim Distribution Order and reduced by any payments received prior to the Effective Date pursuant to the Interim Distribution Order, each Holder of an Allowed Interest in Class 7FT shall receive on the Initial Distribution Date a Pro Rata share of all Cash available for distribution from the FT Distribution Account, determined in the sole discretion of First Trust or the First Trust Estate Administrator after provision is made for a Trust Reserve and Payment Reserves, up to the full amount of such Holder's Allowed Interest after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims. To the extent that Cash in the FT Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Interest in full, at such time as may be determined by the First Trust Estate Administrator, Holders of Allowed Interests shall receive a beneficial interest in the First Trust Liquidation Trust and on account of that interest may receive a Pro Rata share of all Cash distributed to FT Distribution Account from the Trust Account up to full amount of its Allowed Interest after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims Upon the Effective Date, all Interests in First Trust shall be cancelled and replaced by the right to obtain distributions under and in accordance with this Plan. Upon distribution in full of the Cash in the FT Distribution Account and after liquidation in full of all assets in the First Trust Liquidation Trust that

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

may be payable to the FT Distribution Account, First Trust shall be dissolved.

(iii) Class 7DTF. Subject to the Interim Distribution Order and reduced by any payments received prior to the Effective Date pursuant to the Interim Distribution Order, each Holder of an Allowed Interest in Class 7DTF shall receive on the Initial Distribution Date a Pro Rata share of all Cash available for distribution from the DTF Distribution Account, determined in the sole discretion of Diversified or the Diversified Estate Administrator after provision is made for an Expense Retention Reserve and Payment Reserves, up to the full amount of such Holder's Allowed Interest after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims. To the extent that Cash in the DTF Distribution Account on the Initial Distribution Date is not sufficient to pay each Holder of an Allowed Interest in full, at such time as may be determined by the Diversified Estate Administrator, Holders of Allowed Interests shall receive a Pro Rata share of all Cash distributed from the DTF Distribution Account up to full amount of its Allowed Interest after satisfaction in full of any and all Liquidation Expenses, Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, Allowed Late Claims, and Statutory Interest on Allowed General Unsecured Claims. Upon liquidation of all assets of the Diversified Estate and distribution in full of the Cash in the DTF Distribution Account, all Interests shall be cancelled and Diversified shall be dissolved.

(iv) Class 7CR. Holders of Allowed Interests in USA Capital Realty shall receive no distribution under the Plan. All Interests in USA Capital Realty shall be cancelled on the Effective Date and USA Capital Realty shall be dissolved.

(v) Class 7S. Holders of Allowed Interests in USA Securities shall receive no distribution under the Plan. All Interests in USA Securities shall be cancelled on the Effective Date and replaced by the rights given under this Plan. Upon distribution in full

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

of the Cash in the S Distribution Account and after liquidation in full of all assets in the USA Securities Liquidation Trust that may be payable to the S Distribution Account, USA Securities shall be dissolved.

**3.4 Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan or the Asset Purchase Agreement, nothing shall affect the Debtors, the Estates, the Trust Estates, the Liquidation Trusts or an Estate Administrator's Causes of Action, Claims, or rights and defenses, both legal and equitable, with respect to any Claims or Interests filed or asserted against any one or all of the Debtors, the Estates, the Trust Estates or the Liquidation Trusts, including, but not limited to, all rights with respect to setoffs or recoupment and all legal and equitable defenses to alleged rights of setoff or recoupment and all such rights and defenses. Instead, these Causes of Action, Claims, or rights and defenses of the Debtors and their Estates, shall be deemed specifically reserved and transferred to the Applicable Liquidation Trust or retained by the USA Capital Realty Estate and the Diversified Post-Effective Date Estate on the Effective Date of the Plan. Furthermore, these Causes of Action, Claims, or rights and defenses shall not be deemed waived or abandoned in the event that an Applicable Debtor, Applicable Liquidation Trust or Estate Administrator makes a distribution upon a Claim or Interest and later learns of a Cause of Action, Claim, or right or defense of the Applicable Debtor, the Estate, the Trust Estate or the Applicable Liquidation Trust that otherwise negates or reduces such Claim or Interest.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1 Impaired Classes of Claims and Interests Entitled to Vote.**

Holders of Allowed Claims and Interests in each Class of Claims or Interests that are impaired under the Plan are entitled to vote as a Class to accept or reject the Plan.

**4.2 Acceptance by an Impaired Class.**

In accordance with § 1126(c) and (d) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a Class of Claims or Interests that is impaired under the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

dollar amount and more than one-half (1/2) in number of the Allowed Claims or Allowed Interests of such Class that have timely and properly voted to accept or reject the Plan.

**4.3 Presumed Acceptance of the Plan by Unimpaired Classes.**

In accordance with § 1124 of the Bankruptcy Code, Classes 1CM, 1FT, 1DTF, 1CR and 1S are not impaired by the Plan. Under § 1126(f) of the Bankruptcy Code, Classes 1CM, 1FT, 1DTF, 1CR and 1S and each Holder of a Claim in those Classes is presumed to have accepted the Plan, and their votes will not be solicited.

**4.4 Presumed Rejection by Classes Receiving No Distribution.**

In accordance with § 1126(g) of the Bankruptcy Code, Classes 7CR and 7S are deemed not to have accepted the Plan because the Plan provides that Interests of such Classes do not entitle the Holders of such Interests to receive or retain any property under the Plan on account of such Interests. Accordingly, the votes of Holders of Interests in Classes 7CR and 7S will not be solicited.

**4.5 Summary of Classes Voting on the Plan.**

Only the votes of Holders of Allowed Claims in Classes 2CM, 2FT, 2DTF, 2CR, and 2S; Classes 3CM, 3FT, 3DTF, 3CR, and 3S; Classes 4CM, 4FT, 4DTF, 4CR, and 4S; Class 5CM; Classes 6CM, 6FT, 6DTF, 6CR, and 6S; and Holders of Allowed Interests in Classes 7CM, 7FT, and 7DTF will be solicited with respect to this Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1 Introduction.**

The Plan will be implemented and consummated through the means contemplated by §§ 1123(a)(5)(B) and (D), 1123(b)(2), 1123(3)(A) and (B), and 1123(b)(4) of the Bankruptcy Code, including by:

(a) the transfer of certain Loan Servicing Agreements as set forth in Article VII of the Plan;

(b) (i) the sale of the Acquired Assets as set forth in section 5.2 of the Plan and disbursement of the Sale Proceeds and certain other Cash of the Estates in accordance with the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Plan, or alternatively, (ii) if the sale is not affected as required under the Plan and Asset Purchase Agreement, transfer of the Acquired Assets to Applicable Liquidation Trusts pursuant to section 5.3 of the Plan, liquidation of those Assets, and disbursement of Cash to Beneficiaries of the Applicable Liquidation Trusts in accordance with the Plan and the Applicable Liquidation Trust Agreement;

(c) the transfer of certain assets of the USACM, First Trust and USA Securities Estates to an Applicable Liquidation Trust pursuant to section 5.3 of the Plan, the liquidation of those assets by the Applicable Liquidation Trust, and the disbursement of Cash to Beneficiaries in accordance with the Plan and the Applicable Liquidation Trust Agreement;

(d) the retention of the Diversified Excluded Assets by the Diversified Post-Effective Date Estate pursuant to section 5.3 of the Plan, the liquidation of those Assets by the Diversified Post-Effective Date Estate, and the disbursement of Cash to Beneficiaries in accordance with the Plan and the Diversified Liquidation Agreement; and

(e) liquidation of the assets of the USA Capital Realty Estate, distribution of Cash to Holders of Allowed Claims against USA Capital Realty in accordance with the Plan, and dissolution of USA Capital Realty.

**5.2 <u>Sale of Assets.</u>**

5.2.1 <u>Sale of the Acquired Assets.</u> On the Effective Date and pursuant to the Asset Purchase Agreement and §§ 363 and 1123(b)(4) of the Bankruptcy Code, the Acquired Assets shall be sold to (a) Silver Point; or (b) if a Higher and Better Offer is submitted by a Third-Party Bidder, then to the Third-Party Bidder with the Higher and Better Offer, for the Total Cash Purchase Price, as the Higher and Better Offer is determined in accordance with the Buyer Protection and Bidding Procedures Order that is accepted by the Debtors and approved by the Bankruptcy Court and the Plan. In the event the Closing Date occurs, the Acquired Assets shall be transferred to the Asset Acquirer on the Effective Date, or as soon as practicable thereafter.

5.2.2 <u>Allocation of Sale Proceeds.</u>

The Total Cash Purchase Price shall be allocated amongst the Debtors as follows:

(a) Sale Proceeds in the total amount of Commercial Mortgage Price will be allocated to USACM for the purchase of the USACM Assets; and

(b) Sale Proceeds in the total amount of First Trust Deed Fund Price will be allocated to First Trust for the First Trust Assets.

Any Higher and Better Offers that may be selected in accordance with the Buyer Protection and Bidding Procedures Order and as may be approved by the Bankruptcy Court, will be in substantially the same form with substantially the same terms and conditions as the bid of Silver Point and will be allocated amongst USACM and First Trust as set forth in the Buyer Protection and Bidding Procedures Order.

5.2.3 Sale Free and Clear. Except as expressly agreed to otherwise by the Debtors and the Asset Acquirer, the Acquired Assets will be sold free and clear of all Liens, Claims, encumbrances, rights of third parties and Interests. The Confirmation Order shall constitute an Order pursuant to § 363(b) and (f) of the Bankruptcy Code authorizing the sale of the Estates' interests in the Acquired Assets to the Asset Acquirer. The Confirmation Order shall provide that the Asset Acquirer is a good faith purchaser of assets within the meaning of § 363(m) of the Bankruptcy Code and has paid fair consideration and reasonable equivalent value of the Acquired Assets that are purchased. Except as set forth in the Asset Purchase Agreement and the Plan, the Asset Acquirer shall have no liability for Claims or Interests against the Debtors (whether or not currently known) based on its purchase of Acquired Assets.

5.2.4 Taxes.

To the extent that the sale of the Acquired Assets is subject under applicable law to sales, transfer, use, stamp or similar Taxes that are not exempt under § 1146(a) of the Bankruptcy Code, such Taxes shall be paid by the Applicable Debtor whose assets were sold. Any amounts that may be necessary to pay such Taxes shall be reserved in a Payment Reserve by the Applicable Debtor prior to the Initial Distribution Date.

**5.3 The Liquidation Trusts and the Diversified Post-Effective Date Estate.**

5.3.1 Establishment and Applicable Agreements.

*(a) The Liquidation Trusts.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

On the Effective Date, the Liquidation Trusts shall be created pursuant to the Liquidation Trust Agreements, the form of which will be filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Debtors' Disclosure Statement under § 1125 of the Bankruptcy Code.

*(b) The Diversified Post-Effective Date Estate.*

The liquidation and the wind down of the Diversified Post-Effective Date Estate shall be governed by the Diversified Liquidation Agreement, the form of which will be filed with the Bankruptcy Court no later than ten (10) days prior to the final hearing on the adequacy of the Debtors' Disclosure Statement under § 1125 of the Bankruptcy Code.

5.3.2 Appointment of Advisory Committees and Estate Administrators.

Each of the Liquidation Trusts and the Diversified Post-Effective Date Estate will be managed as set forth in the Plan and, to the extent applicable, the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement by an Estate Administrator and an Advisory Committee comprised of three (3) Persons, unless another number is established in a Liquidation Trust Agreement or the Diversified Liquidation Agreement. The First Trust Committee shall appoint the Estate Administrator and the members of the First Trust Advisory Committee, the USACM Committee shall appoint the Estate Administrator and the members of the USACM Advisory Committee, the Diversified Committee shall appoint the Estate Administrator and members of the Diversified Advisory Committee, and the Debtors shall appoint the Estate Administrator and members of the USA Securities Advisory Committee, which may, at the Debtors' discretion, be the same Estate Administrator and Advisory Committee selected for the USACM Liquidation Trust.

5.3.3 Transfer of Property.

*(a) Transfer or Retention of Assets in the Event of Sale.*

(i) The First Trust Excluded Assets, including any Trust Reserve but net of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the First Trust Liquidation Trust.

(ii) The USACM Excluded Assets, including any Trust Reserve but net

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the USACM Liquidation Trust.

(iii) The USA Securities Estate, including any Trust Reserve but net of Payment Reserves, shall be irrevocably assigned, transferred and conveyed to the USA Securities Liquidation Trust.

(iv) The Diversified Excluded Assets shall be retained by the Diversified Post-Effective Date Estate.

*(b) Transfer of Assets in the Event of Self-Liquidation.*

In the event that the sale of the Acquired Assets to the Asset Acquirer does not close as the result of a condition of sale not being met or for any other reason on or before 120 days following the Due Diligence Completion Date, the First Trust Assets shall be irrevocably assigned, transferred and conveyed to the First Trust Liquidation Trust and the USACM Assets shall be irrevocably assigned, transferred and conveyed to the USACM Liquidation Trust. In such event, Cash held in the USACM Distribution Account will be used by the USACM Estate Administrator to fund at least the following: (i) performance of USACM's obligations related to the Loans; (ii) pursuit of Causes of Action transferred to the USACM Liquidation Trust; (iii) collection of Loans transferred to the USACM Liquidation Trust from the USACM Estate; (iv) collection of Loans of the Diversified Estate; (v) collection of Loans of the First Trust Estate; and (vi) to fund the Debtors' orderly wind down in accordance with the terms of the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement. In this event, the USACM Estate Administrator, may, at his or her discretion and pursuant to this Plan, transfer to a Third-Party Servicer the Loan Servicing Agreements for the Serviced Loans and the First Trust Serviced Loans.

*(c) Voluntary Transfer of Causes of Action and Claims of Direct Lenders.*

In either the event of a sale of the Acquired Assets or self-liquidation as set forth in subsections (a) and (b) above, each Direct Lender shall have the option to transfer any Causes of Action that such Direct Lender may have against IP or its non-Debtor Affiliates,

including any Causes of Action or Claims based on Insider Guarantees, to the USACM Liquidation Trust. In the event that a Direct Lender makes this election, the Direct Lender shall be entitled to a beneficial interest in the USACM Liquidation Trust as will be set forth in the USACM Liquidation Trust Agreement.

*(d) Assets Vested in Liquidation Trusts.*

Except as otherwise provided in the Plan or in an Applicable Liquidation Trust Agreement, all assets irrevocably assigned, transferred and conveyed to a Liquidation Trust as provided in subsections (a), (b) and (c) above shall be free and clear of all Liens, Claims, Interests and any other rights, obligations, or interests of any Person in, to or upon those assets and any proceeds of the foregoing, and shall be deemed vested in and property of the Applicable Liquidation Trust, subject to the terms of the Plan and the Applicable Liquidation Trust Agreement.

5.3.4 Liquidation of Assets of the Trust Estates.

On and after the Effective Date, the Liquidation Trusts and the Diversified Post-Effective Date Estate, acting through an Estate Administrator and Advisory Committee in accordance with the terms of the Plan and the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement, shall liquidate the Trust Estates, including the Causes of Action. In accordance with the terms of the Applicable Liquidation Trust Agreements or the Diversified Liquidation Agreement, the Estate Administrator and Advisory Committee, subject to section 5.3.5 below, will determine (a) whether and when to liquidate the assets of the Trust Estates, and (b) whether to bring, settle, release, compromise, enforce or abandon Causes of Action and Claims and, except as otherwise provided herein, will not be required to seek further approval of the Bankruptcy Court for such action, unless required to do so under the Plan or the Liquidation Trust Agreement or the Diversified Liquidation Agreement. Each Estate Administrator has standing to and may pursue Causes of Action and Claims in accordance with the best interests of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate. In regard to Causes of Action and Claims pending on the Effective Date, the Estate Administrator and/or the Applicable Liquidation Trust shall be deemed to be substituted as parties in the name and place of any one or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

all of the Debtors named in the Causes of Action or Claims.

5.3.5 Management and Power of Liquidation Trusts and the Diversified Post-Effective Date Estate.

*(a) Management by the Estate Administrators.*

On and after the Effective Date, the affairs of each Liquidation Trust and the Diversified Post-Effective Date Estate and all assets held or controlled by the Liquidation Trust or the Diversified Post-Effective Date Estate shall be managed under the discretion of an Estate Administrator and an Advisory Committee in accordance with the Plan and the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement. Each Liquidation Trust and the Diversified Post-Effective Date Estate, acting through their respective Estate Administrators, shall be the representatives of the Applicable Debtors' Estates pursuant to § 1123 of the Bankruptcy Code and shall have all of the rights, powers and standing of a debtor in possession under § 1107 of the Bankruptcy Code, and such other rights, powers and duties incident to causing performance of the Applicable Debtors' obligations under the Plan as may be necessary. The powers of each Liquidation Trust and the Diversified Post-Effective Date Estate, acting through its Estate Administrator, shall include, but not be limited to:

(i) Receiving and holding all the assets of Trust Estate and to having exclusive possession and control thereof as permissible under applicable law;

(ii) Managing, selling and converting all or any portion of the assets in the Trust Estate to Cash, and distributing the net distributable proceeds as specified in the Plan and the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement;

(iii) Entering into, performing and exercising rights under contracts binding upon the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate (but not upon the Estate Administrator in his or her individual capacity) which are reasonably incident to the administration of the Liquidation Trust or the Diversified Post-Effective Date Estate and which the Estate Administrator, in the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

exercise of his or her best business judgment, reasonably believes to be in the best interests of the Liquidation Trust or the Diversified Post-Effective Date Estate;

(iv) Establishing and maintaining the Distribution Accounts and, in the case of each of the Liquidation Trusts, a Trust Account, consistent with the requirements of § 345 of the Bankruptcy Code, at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the Cash and other property of the Trust Estate may be deposited, drawing checks or making withdrawals from such accounts, and paying or distributing such amounts of the Liquidation Trust or the Diversified Post-Effective Date Estate as permitted or required under the Plan and the Liquidation Trust Agreements or the Diversified Liquidation Agreement;

(v) Holding, operating, marketing, and leasing (for the purposes of holding for sale) the assets of the Liquidation Trust or the Diversified Post-Effective Date Estate, including without limitation, entering into servicing agreements to service the Loans transferred to the Applicable Liquidation Trust or retained by the Diversified Post-Effective Date Estate;

(vi) Selling or otherwise disposing of the assets in of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate;

(vii) Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, selling or otherwise disposing of, and liquidating or converting to Cash, any assets of the Liquidation Trust or the Diversified Post-Effective Date Estate, either subject to or free of any Lien, or allocating and distributing all or any part of the property of the Liquidation Trust or the Diversified Post-Effective Date Estate among those having an interest in such property;

(viii) Collecting and receiving any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Liquidation Trust or the Diversified Post-Effective Date Estate, and distributing the same to the Beneficiaries of the Liquidation Trust in accordance with the terms of the Plan and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the Liquidation Trust Agreement, or to the Holders of Allowed Interests of the Diversified Post-Effective Date Estate in accordance with the terms of the Plan and the Diversified Liquidation Agreement;

(ix) Paying any and all necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Trust Estate including, without limitation, paying the fees owing to the Estate Administrator as further described in the Liquidation Trust Agreement or the Diversified Liquidation Agreement;

(x) Investigating, abandoning, filing, compromising, settling, withdrawing or litigating in any court of competent jurisdiction, any and all Claims, Causes of Action, or other rights belonging to the Liquidation Trust or the Diversified Post-Effective Date Estate;

(xi) Suing or being sued in connection with any matter arising from or related to the Plan or the Liquidation Trust Agreement or in connection with any matter arising from or related to the Plan or the Diversified Liquidation Agreement that affects in any way, and to the extent applicable, the rights or obligations of the Liquidation Trust, the Diversified Post-Effective Date Estate, the Estate Administrator, or Beneficiaries;

(xii) Representing the interests of the Beneficiaries with respect to any matters relating to the Plan, the Liquidation Trust or the Liquidation Trust Agreement, or representing the interests of the Holders of Allowed Interests with respect to any matters relating to the Plan, the Diversified Post-Effective Date Estate or the Diversified Liquidation Agreement;

(xiii) Acting as representative of an Applicable Debtor's Estate, the Trust Estate or the Diversified Post-Effective Date Estate and investigating, abandoning, initiating, prosecuting, or settling or compromising any and all Causes of Action or Claims belonging to the Applicable Debtor's Estate, the Liquidation Trust, the Trust Estate, or the Diversified Post-Effective Date Estate;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(xiv) If a Liquidation Trust or the Diversified Post-Effective Date Estate becomes subject to federal income tax or state tax, the Estate Administrator shall have the power, exercisable at his or her discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Trust Estate, including to any Beneficiaries of the Liquidation Trust or the Diversified Post-Effective Date Estate, and the Estate Administrator shall have the same power to take any action reasonably necessary to minimize any adverse federal or state income tax consequences resulting from any distributions made;

(xv) In general, without in any manner limiting any of the foregoing or the following, dealing with the Liquidation Trust and the Trust Estate or with the Diversified Post-Effective Date Estate, or any part or parts thereof, in all other ways as would be lawful for any Person owning the same to deal therewith; provided, however, that the investment powers of the Estate Administrator, other than those reasonably necessary to maintain the value of the Trust Estate and to further the liquidating purpose of the Liquidation Trust and the administration of the Diversified Post-Effective Date Estate, are limited to the power to invest in demand and time deposits, such as short-term certificates of deposit, in banks and other savings institutions, or other temporary, liquid investments, such as United States Treasury Bills and other investment vehicles authorized by § 345 of the Bankruptcy Code;

(xvi) Doing any and all other things, not in violation of any other terms of the Plan, the Liquidation Trust Agreements, or the Diversified Liquidation Agreement, which, in the reasonable business judgment of the Estate Administrator, are necessary or appropriate for properly liquidating, managing, investing and distributing the assets of the Liquidation Trust or the Diversified Post-Effective Date Estate in accordance with the provisions of the Plan, the Liquidation Trust Agreements, or the Diversified Liquidation Agreement; and

(xvii) At the appropriate time, asking the Bankruptcy Court to enter a

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Final Decree in each Chapter 11 Case. Nothing in the Plan prevents the issuance of a Final Decree in each Chapter 11 Case at differing times, when the Plan has been fully implemented in the Chapter 11 Case at issue.

*(b) Prosecution, Defense, Settlement, and Abandonment of Causes of Action, Claims, and Other Rights.*

Subject to the powers and discretion granted to each Estate Administrator and Advisory Committee, the terms of the Liquidation Trust Agreements and the Diversified Liquidation Agreement and subsection (c) below, each Liquidation Trust or the Diversified Post-Effective Date Estate, acting through their respective Estate Administrators, shall have the full power and authority to prosecute, abandon, compromise or otherwise resolve any and all Causes of Action, Claims or other rights, belonging to or asserted against the Trust Estate, and distribute the proceeds related thereto in accordance with the Plan and the Liquidation Trust Agreement or the Diversified Liquidation Agreement. Any and all fees, costs and expenses incurred in respect to the prosecution or defense of any Causes of Action, Claims or rights shall be payable and paid solely by the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate. Each Liquidation Trust or the Diversified Post-Effective Date Estate, acting through its Estate Administrator, shall be authorized to prosecute or defend such Causes of Action, Claims or rights in the name of the Applicable Debtor, but at the expense of and for the benefit of the Liquidation Trust or the Diversified Post-Effective Date Estate, except as otherwise provided herein. Nothing in this subsection requires an Estate Administrator to pursue litigation if no funds are available to finance the litigation, and the Estate Administrator shall be entitled to abandon such litigation if no funding satisfactory to the Estate Administrator can be obtained. An Estate Administrator may abandon any litigation in his or her final report or motion for a Final Decree if the Estate Administrator determines, in his or her sole discretion, that pursuit of any such litigation is not, for any reason, warranted.

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*(c) Limitations.*

All of the powers and duties granted to each Estate Administrator under the Applicable Liquidation Trust Agreement or under the Diversified Liquidation Agreement shall be limited by and subject to the powers and discretion granted to an Advisory Committee by this Plan and the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement.

*(d) Employment and Payment of Professionals.*

Each Estate Administrator, on behalf of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, is authorized, without further Order of the Bankruptcy Court, to employ professionals, including attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters, actuaries, consultants or other Persons whose services may be necessary or advisable in the sole judgment of the Estate Administrator to advise or assist him or her in discharging his or her duties as Estate Administrator, or otherwise exercising any powers vested in the Estate Administrator. The costs of such employment and other expenditures shall be Liquidation Expenses paid from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate. Such Persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis after submitting to the Estate Administrator and the Advisory Committee detailed invoices at least ten (10) Business Days prior to payment from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate. If approved by the Estate Administrator, such fees and expenses shall be paid without further notice, hearing or approval of the Bankruptcy Court. Nothing in this section of the Plan is meant to limit the authority of the Estate Administrator to employ different professionals for each Cause of Action.

5.3.6 Governance of Advisory Committees.

(a) After the appointment of an Advisory Committee, in the event that any appointed member of the Committee resigns or, because of the transfer or payment in full of its Claims or Interests no longer represents the interests of the Trust Estate, then such

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

member shall appoint a successor representative within thirty (30) days of resignation or the transfer or payment in full of its Claims or Interests. If any member fails to appoint a successor representative within thirty (30) days after resignation or the occurrence of the event making the member no longer representative, then such member shall be replaced, if possible, by a successor to be elected by the remaining members of that Advisory Committee.

(b) The Advisory Committee shall act by a majority vote. If for any reason a majority cannot be reached, the Estate Administrator of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate shall cast a vote to form a majority.

(c) Each Advisory Committee shall hold an organizational meeting as soon as practicable after the Effective Date. At such meeting, a Chairperson shall be elected by a majority of the Advisory Committee members. The Persons comprising the Advisory Committee shall provide one another with notice addresses and similar information.

(d) Meetings of each Advisory Committee may be conducted in person or by conference telephone. The Advisory Committee may establish a schedule for regular meetings. In addition to regular meetings, meetings of each Advisory Committee may be convened upon such notice as the Chairperson shall deem appropriate and necessary. Notice may be waived before, during or after a meeting by the Advisory Committee. Any Person on an Advisory Committee may designate a proxy for one or more meetings.

(e) Each Advisory Committee may also act on the written or oral consent of a majority of the Persons serving on the Advisory Committee, without a meeting.

(f) Neither an Advisory Committee nor any Person serving thereon nor any representative thereof, nor the agents of the Advisory Committee, nor the Advisory Committee's professionals shall be liable to the Debtors, any Beneficiary, any Holder of a Claim or Interest, any creditor or any other Person or Entity for an error of judgment or any act or omission other than willful misconduct, gross negligence or fraud. Each Person serving on an Advisory Committee shall be liable for its own willful misconduct, gross negligence or fraud. Except in the event of gross negligence or willful misconduct, no

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Persons serving on an Advisory Committee will be liable to any Person or Entity for any actions taken or committed by him or her on behalf of the Advisory Committee.

(g) The Persons serving on an Advisory Committee shall serve without compensation, except for reimbursement of reasonable expenses necessarily incurred in the performance of their duties as members of the Advisory Committee. Each Advisory Committee shall be authorized to retain counsel as it shall be deem advisable, without further application to the Court. The fees of the professionals retained by the Advisory Committee shall be paid from the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate only if the Estate Administrator determines such fees to be reasonable and necessary for the administration of the Liquidation Trust or the Diversified Post-Effective Date Estate.

(h) If any matter to be addressed by an Advisory Committee involves the individual or personal rights or obligations of a Person on the Advisory Committee, that Person shall not participate in the deliberation or voting with respect to such matter.

(i) Each Person on an Advisory Committee shall act in a fiduciary capacity for the interests of the applicable Trust Estate, but neither any decision of the Advisory Committee nor the vote of any one of the Advisory Committee members shall bind, limit or restrict the rights or obligations of any Advisory Committee member to or against the Debtors, the Estates or any Third-Party.

(j) Each Advisory Committee will be dissolved and its members discharged and released: (i) upon completion of the functions of the Advisory Committee and the entry of a Final Decree in the Applicable Debtors' Chapter 11 Case; (ii) upon the resignation of all members of the Advisory Committee and a failure to replace such resigning members in accordance with the provisions of the Plan; or (iii) upon conversion to a Chapter 7 case, if the Advisory Committee votes to complete the liquidation of the Applicable Debtors' Chapter 11 Case through such conversion.

(k) Each Advisory Committee shall have the standing to bring any matter or issue to the attention of the Bankruptcy Court for a determination and the entry of any appropriate Order by the Court and each Advisory Committee shall give notice of any such action to the

Estate Administrator, the Debtors, the United States Trustee and to any Person who is directly affected by any such action, and to any other Person(s) who serves a written request upon the Liquidation Trust or the Diversified Post-Effective Date Estate to receive notices after the Effective Date.

5.3.7 Trust Accounts.

Upon appointment, each Estate Administrator of a Liquidation Trust shall establish a single Trust Account for that Liquidation Trust. Any and all Cash received by an Estate Administrator on behalf of the Applicable Liquidation Trust shall be immediately deposited by the Estate Administrator, or his or her nominee, into the Trust Account. Cash on deposit in a Trust Account to be distributed in accordance with the Plan and the Applicable Liquidation Trust Agreement shall be transferred by the Estate Administrator, or his or her nominee, to the Applicable Debtor's Distribution Account, and distributed by the Estate Administrator from that Distribution Account in accordance with section 5.4 of the Plan and the Applicable Liquidation Trust Agreement.

5.3.8 Tax Matters.

Each Liquidation Trust shall be treated as a grantor trust, for federal income tax purposes, within the meaning of §§ 671 through 677 of the Internal Revenue Code. Pursuant to and in accordance with the Plan, each Estate Administrator shall be responsible for all tax matters of the Applicable Liquidation Trust and the Trust Estate, including, but not limited to, the filing of all tax returns and other filings with governmental authorities on behalf of the Applicable Liquidation Trust for time periods ending on or before the Final Tax Day, including the filing of tax returns for the Applicable Liquidation Trust as a grantor trust pursuant to § 1.671-4(a) of the United States Income Tax Regulations, the filing of determination requests under § 505 of the Bankruptcy Code, and responding to any tax audits of the Trust Estate of the Liquidation Trust. Each Estate Administrator shall provide such information to the Beneficiaries of the Applicable Liquidation Trust as will enable them to properly file their separate tax returns and shall withhold and pay over any amounts required by tax law. Each Estate Administrator is authorized to act as agent for the Applicable Liquidation Trust in withholding or paying over any amounts required by law

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(including tax law) to be withheld or paid by the Liquidation Trust in connection with the transfer and assignment of the assets of the Estates to the Liquidation Trust pursuant to the Plan.

Except as otherwise set forth in the Plan or a Liquidation Trust Agreement, any items of income, deduction, credit, or loss of a Liquidation Trust shall be allocated for federal income tax purposes among the Beneficiaries of the Applicable Liquidation Trust Pro Rata on the basis of their beneficial interests; provided, however, that to the extent any item of income cannot be allocated in the taxable year in which it arises, the Applicable Liquidation Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of the Beneficiaries when such allocations are made. Each Estate Administrator shall be entitled to deduct any federal or state withholding taxes from any payments made with respect to Allowed Claims or Interests, as appropriate, and shall otherwise comply with § 346 of the Bankruptcy Code.

5.3.9 Quarterly Report.

As soon as practicable after each calendar quarter, and in no event later than thirty (30) Business Days after the end of each quarter, each Estate Administrator shall file with the Bankruptcy Court and submit to the United States Trustee, the Debtors, the Asset Acquirer, if any, the Advisory Committee and any Beneficiary who requests copies of such quarterly reports after the Confirmation Date, an unaudited written report and account showing: (a) the assets and liabilities of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, (b) any distributions made, including any Liquidation Expenses paid, pursuant to the Plan and the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement, (c) any changes in the Trust Estate that have not been previously reported, and (d) any material action taken by the Estate Administrator in the performance of his or her duties under the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement that had not been previously reported.

5.3.10 Final Report and Final Decree.

Upon the liquidation of all assets of a Trust Estate and a Final Distribution in accordance with the Plan and, to the extent relevant, the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement, the Applicable Liquidation Trust or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the Diversified Post-Effective Date Estate, acting through its Estate Administrator, shall file with the Bankruptcy Court a final report and account of all receipts and disbursements, and serve that report on the United States Trustee, the applicable Advisory Committee, and any other party entitled to service under any Bankruptcy Rules. Any such final report shall include a request that the Court enter a Final Decree in the Chapter 11 Case of the Applicable Debtor.

5.3.11 Termination of Liquidation Trusts and Discharge of the Estate Administrators and Advisory Committees.

(a) Unless otherwise stated in the Applicable Liquidation Trust Agreement, each Liquidation Trust shall terminate on such date when a Final Decree has been entered in the Applicable Debtor's Chapter 11 Case. In no event, however, shall the term of a Liquidation Trust exceed five (5) years from the Effective Date, unless an Order is entered by the Bankruptcy Court extending the five-year term of the Liquidation Trust for a finite period based on a finding that an extension of the term is necessary to the purpose of a Liquidation Trust. Each such extension must be approved by an Order of the Bankruptcy Court entered within six (6) months of the beginning of the extended term.

(b) The Estate Administrator and Advisory Committee of an Applicable Liquidation Trust shall be discharged from their obligations under the Plan and the Applicable Liquidation Trust Agreement on such date when a Final Decree is entered in the Applicable Debtor's Chapter 11 Case, and at that time, unless the Advisory Committee is dissolved earlier under subsection 5.3.6 of the Plan, the Estate Administrator and the Advisory Committee members shall be released from all liability related to each of their duties under the terms under the Plan and the Applicable Liquidation Trust Agreement.

5.3.12 Discharge of the Diversified Estate Administrator and the Diversified Advisory Committee.

The Diversified Estate Administrator and Diversified Advisory Committee shall be discharged from their obligations under the Plan and the Diversified Liquidation Agreement on such date when a Final Decree is entered in the Diversified Case, and at that

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

time, unless the Diversified Advisory Committee is dissolved earlier under subsection 5.3.6 of the Plan, the Diversified Estate Administrator and the Diversified Advisory Committee members shall be released from all liability related to each of their duties under the terms under the Plan and the Diversified Liquidation Agreement.

**5.4. Liquidation and Disbursements.**

5.4.1 Distribution Accounts.

*(a) Establishment of Distribution Accounts.*

On or prior to the Effective Date, the Debtors shall each establish a Distribution Account that complies with § 345 of the Bankruptcy Code.

*(b) Deposits.*

On the Effective Date, each of the Debtors shall deposit into its respective Distribution Account its Expense Reserve and Sales Proceeds, if any.

(i) Any Cash received by the Diversified Post-Effective Date Estate or USA Capital Realty on or after the Effective Date must be deposited into their respective Distribution Accounts.

(ii) Any Cash received by USACM, First Trust or USA Securities on or after the Effective Date, but prior to the establishment of the Trust Accounts as set forth in section 5.3.7 of the Plan, must be deposited into their respective Distribution Accounts. After the establishment of a Trust Account for an Applicable Liquidation Trust, any Cash received by the Liquidation Trust must be deposited into the Trust Account for the Applicable Liquidation Trust. When an Estate Administrator distributes Cash to Beneficiaries under the Plan and a Liquidation Trust Agreement, Cash from the Trust Account of the Applicable Liquidation Trust shall be withdrawn from that Account and deposited into the Applicable Debtor's Distribution Account for disbursement to Beneficiaries in accordance with subsection (c) below.

*(c) Disbursements.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Any and all Cash distributed by a Debtor, an Estate Administrator, a Liquidation Trust, or the Diversified Post-Effective Date Estate pursuant to the Plan, a Liquidation Trust Agreement or the Diversified Liquidation Agreement must be disbursed through checks drawn on the Applicable Debtor's Distribution Account. All disbursements made from a Distribution Account must be in accordance with the Plan and, if relevant, an Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement. No disbursements may be made from a Distribution Account to the Holder of a Claim or Interest any portion of which does not constitute an Allowed Claim or an Allowed Interest.

*(d) Persons Authorized to Make Disbursements*.

(i) The Debtors' Chief Restructuring Officer, or his nominee, is authorized to make all disbursements of Cash from the CR Distribution Account.

(ii) After the Effective Date and prior to the appointment of an Estate Administrator, the Debtors' Chief Restructuring Officer or his nominee, is authorized to make all distributions of Cash from the USACM Distribution Account, the FT Distribution Account and the S Distribution Account.

(iii) Upon the appointment of an Estate Administrator, the Estate Administrator for the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate, who shall be bonded if required by the Office of the United States Trustee, is the sole disbursing agent and is authorized make all distributions from the Applicable Debtor's Distribution Account.

5.4.2 <u>Distribution on the Initial Distribution Date.</u>

On or as soon as practicable after the Effective Date, with reasonable efforts made by the Debtors to do so no later than thirty (30) days after the Effective Date, and in accordance with the Plan, each Debtor shall distribute the Cash in its Distribution Account, net of any Payment Reserves or Trust Reserve, to the Holders of Allowed Claims and Holders of Interests that, as of the Initial Distribution Date, are Allowed Claims or Allowed Interests.

5.4.3 <u>Distribution After the Initial Distribution Date.</u>

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

After the Initial Distribution Date:

(a) Cash in the USACM Distribution Account, the FT Distribution Account, and the S Distribution Account shall be disbursed at times and in amounts to be determined within the sole discretion of the Estate Administrator of the Applicable Liquidation Trust in accordance with the Plan and the Applicable Liquidation Trust Agreement;

(b) Cash in the DTF Distribution Account shall be disbursed at times and in amounts to be determined within the sole discretion of the Estate Administrator of the Diversified Post-Effective Date Estate in accordance with the Plan and the Diversified Liquidation Agreement; and

(c) Cash in the CR Distribution Account, if any exists after the Initial Distribution Date, shall be disbursed at time and in amounts to be determined within the sole discretion of USA Capital Realty in accordance with the Plan.

5.4.4 Payment Reserves for Disputed Claims and Disputed Interests.

*(a) Establishment of Payment Reserves.*

Each Debtor must provide for the payment of the Claims and/or Interests which may be determined to be entitled to receive distributions under the Plan but, as of the Initial Distribution Date, do not constitute Allowed Claims or Allowed Interests, by establishing separate Payment Reserves for each Class of Claims or Interests, including unclassified Claims, in which Disputed Claims or Disputed Interests exist. The Applicable Debtor shall (a) maintain all Payment Reserves in its Distribution Account, (b) account separately for each Payment Reserve maintained; and (c) retain Cash in such Reserve equal to the amount of such distribution that would have been distributed to Holders of Disputed Claims or Disputed Interests in such Class if such Disputed Claim or Interest were an Allowed Claim or Interest in their full face amount on the Initial Distribution Date.

*(b) Estimation Request.*

As to any Disputed Claim or Disputed Interest, each of the Debtors has discretion to request estimation pursuant to § 502(c) of the Bankruptcy Code, and to set a Payment Reserve based on such estimation.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*(c) Distribution Upon the Allowance.*

Within five (5) Business Days after the entry of a Final Order holding that a Disputed Claim and/or Disputed Interest is an Allowed Claim and/or an Allowed Interest, Cash from the appropriate Payment Reserve in the Applicable Debtor's Distribution Account shall be released from the Payment Reserve and disbursed to the Holder of the Allowed Claim and/or Allowed Interest in accordance with the Plan and, if relevant, the Applicable Liquidation Trust Agreement or Diversified Liquidation Agreement. The amount of Cash released from the Payment Reserve to make such a distribution shall be calculated on a Pro Rata basis, so that the Holder of the subject Claim and/or Interest receives an initial distribution equal to the total percentage distributions made prior to the date of such allowance on other Allowed Claims in its Class or Allowed Interests.

*(d) Release of Cash From Payment Reserve.*

Upon the entry of a Final Order or execution of a written agreement disallowing a Disputed Claim or Disputed Interest, Cash in the Payment Reserve related to that Claim or Interest may be released from the Payment Reserve.

*(e) Accounting.*

Pending the final determination of all Allowed Claims or Allowed Interests in a Class, USACM, First Trust, Diversified and USA Securities shall provide to the Estate Administrator and the Advisory Committee, if any, an accounting every calendar quarter for each Payment Reserve, which accounting shall include (i) any Cash released from a Payment Reserve based on the entry of a Final Order or execution of a written agreement allowing or disallowing a Disputed Claim or a Disputed Interest, (ii) the amount of each remaining Disputed Claim and/or Disputed Interest for which payment has been reserved in its Payment Reserve; and (iii) the Cash balance of the Payment Reserve.

*(f) Termination of Payment Reserves.*

When all Disputed Claims or Disputed Interests within a Class are resolved by Final Order or written agreement, the Payment Reserve related to that Class shall be terminated. Any and all Cash remaining on account for that Payment Reserve shall be

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

released from the Payment Reserve. Within twenty (20) days of any such termination, the Applicable Debtor shall give notice of the termination to the Estate Administrator and the Advisory Committee of the Applicable Liquidation Trust or the Diversified Post-Effective Date Estate.

5.4.5 Payment Reserves for Unclaimed Distributions.

Pursuant to § 347(b) of the Bankruptcy Code, all Cash distributed from a Distribution Account that is unclaimed shall be re-deposited into the Distribution Account from which the disbursement was made. Such Cash shall be reserved in a Payment Reserve for unclaimed distributions. Any Cash not claimed by the intended recipient of the distribution within sixty (60) days of the date of distribution shall be released from the Payment Reserve.

5.4.6 Calculation of Pro Rata.

*(a) Disputed Claims.*

For purposes of calculating Pro Rata in conjunction with any distribution to be made under the Plan to Holders of Allowed Claims, the calculation of the total Allowed Claims in a Class shall be computed as if all Disputed Claims within that Class then pending were Allowed Claims in the full amount of the Disputed Claims.

*(b) Disputed Interests.*

For purposes of calculating Pro Rata in conjunction with any distribution to be made under the Plan to Holders of Allowed Interests, the calculation of the total Allowed Interests shall be computed as if all Disputed Interests then pending were Allowed Interests in the full amount of the Disputed Interests.

**5.5 Final Decree in the USA Capital Realty Case.**

Upon the liquidation of all assets of the USA Capital Realty Estate and a Final Distribution in accordance with the Plan, USA Capital Realty shall file with the Bankruptcy Court a final report and account of all receipts and disbursements, and serve that report on the United States Trustee and any other party entitled to service under any of the Bankruptcy Rules. Any such final report shall include a request that the Court enter a Final Decree in the Chapter 11 Case of USA Capital Realty.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## ARTICLE VI

## TREATMENT OF SPECIFIC TYPES OF CLAIMS AND PROPERTY, AND PROCEDURES RELATED TO CLAIMS

**6.1 Late Claims.**

No distribution shall be made on account of any Late Claim proof of which is filed in the Bankruptcy Court after the Confirmation Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

**6.2 Subordinated Claims.**

Entry of the Confirmation Order shall be an Order of the Bankruptcy Court subordinating any and all Insider Claims pursuant to § 510 of the Bankruptcy Court and any other applicable law. Any and all Insider Claims shall be deemed subordinated as of the Confirmation Date without further Order of the Bankruptcy Court.

**6.3 Lender Claims Based on General Aggregate Investment Deficits.**

*(a) Treatment.*

The Claim of a Lender against the USACM Estate based on a General Aggregate Investment Deficit is not an Allowed Claim, unless the Lender proves that the Claim is a Proximately Caused Aggregate Investment Deficit Claim. Proximately Caused Aggregate Investment Deficit Claims may, through the claims allowance process, become Allowed General Unsecured Claims against the USACM Estate.

*(b) Designation Notice.*

USACM, or, once appointed, the USACM Estate Administrator, may file a Designation Notice in the Bankruptcy Court designating the Claim of a Lender as a Claim based on a General Aggregate Investment Deficit, and serve the Designation Notice on the Lender who filed the Claim.

*(c) Objection to Designation Notice.*

(i) Objection.

Within thirty (30) days from the date of service of a Designation Notice, the Lender must file in the Bankruptcy Court an objection to the Designation Notice, and serve the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

objection on USACM, or if the Designation Notice was filed by the USACM Estate Administrator, on the USACM Estate Administrator. Such objection must set forth the basis for a Proximately Caused Aggregate Investment Deficit Claim. Any dispute as to whether the Claim constitutes a Claim based on a General Aggregate Investment Deficit or a Proximately Caused Aggregate Investment Deficit Claim shall be determined through mediation or arbitration in accordance with the procedures set forth in the USACM Liquidation Trust Agreement.

*(ii) Consequence of Failure to File a Timely Objection.*

If the Lender does not file an objection to the Designation Notice within thirty (30) days of service of the Designation Notice, its Claim shall be deemed to be one based on a General Aggregate Investment Deficit and shall be disallowed.

**6.4. <u>Treatment of Pre-Paid Interest.</u>**

*(a) Dispositive Pleading.*

Prior to the Confirmation Date, the Debtors may file a dispositive pleading in the Bankruptcy Court related to USACM's right to retain and use Pre-Paid Interest as property of the USACM Estate (the "Dispositive Pleading"). In the absence of the filing of a Dispositive Pleading prior to the Confirmation Hearing, this Plan shall be deemed to be the Dispositive Pleading, requesting that the Bankruptcy Court order as part of Confirmation that Pre-Paid Interest is property of the USACM Estate.

*(b) Lender Interest Claims.*

Any Lender making a Lender Interest Claim must file an adversary proceeding in the USACM Chapter 11 Case by no later than the Lender Interest Claim Bar Date. The Lender must specifically identify and plead the Pre-Paid Interest to which its Lender Interest Claim applies, the Loan into which the Lender asserts it can trace a Lender Interest Claim, and the amount of the Lender Interest Claim. Any Lender who fails to file an adversary proceeding asserting a Lender Interest Claim prior to the expiration of the Lender Interest Claim Bar Date shall be forever barred from seeking the allowance of its Lender Interest Claim, and USACM, the USACM Estate, the USACM Liquidation Trust, and the USACM Trust Estate shall be discharged of any obligation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

which could arise as a result of any such Lender Interest Claim that could have been asserted, or any other Claim related to any potential Lender Interest Claim. USACM and the USACM Estate Administrator reserve the right to assert any and all facts and legal theories available to the USACM Estate to defend against and to defeat any Lender Interest Claim.

*(c) Payment Reserve for Lender Interest Claims.*

Upon the filing of an adversary proceeding asserting a Lender Interest Claim as set forth in subsection (b) above, USACM or if the USACM Liquidation Trust is established, the USACM Estate Administrator, must establish a Payment Reserve in the amount of the alleged Claim; provided, however, that the amount of the Payment Reserve shall be limited to Pre-Paid Interest actually collected, if any, from the Borrower on the Loan identified and alleged in the Lender Interest Claim to be the Loan into which the Lender asserts that it can trace its Lender Interest Claim. Any Payment Reserve established under this section shall not be released until a Final Order is entered in the adversary proceeding, or a written agreement is executed by the applicable parties resolving the adversary proceeding.

*(d) Treatment of Unclaimed Pre-Paid Interest Collected by USACM.*

(i) Collected Pre-Paid Interest is Property of the Estate.

Any Pre-Paid Interest collected, or to be collected, from a Borrower on any Loan as to which (A) a Lender Interest Claim has not been filed by the Lender Interest Claim Bar Date or (B) the Pre-Paid Interest exceeds the amount of Lender Interest Claims asserted by Lender Interest Claim Bar Date, such Pre-Paid Interest shall automatically, without further notice, hearing or Order of the Bankruptcy Court, become property of the USACM Estate or, if the USACM Liquidation Trust is established, the USACM Trust Estate on the later of the Effective Date or the date such Pre-Paid Interest is collected from the Borrower.

(ii) Net Cash.

Until the earlier of the date that an Order related to the Dispositive Pleading is entered or the Effective Date, any distribution that the Bankruptcy Court authorizes USACM to make to Lenders shall be net of Pre-Paid Interest collected from Borrowers ("Net Cash"). USACM shall hold any such Net Cash in its Collection Account, and the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Net Cash must be accounted for separately. Any Net Cash which is not the subject of a Lender Interest Claim filed on or prior to the Lender Interest Claim Bar Date shall, in accordance with subsection (d)(i) above, automatically become property of the USACM Estate as of the Effective Date. Any Net Cash which is the subject of a Lender Interest Claim filed on or prior to the Lender Interest Claim Bar Date will be held as required under subsection (c) above.

*(e) Treatment of Pre-Paid Interest Collected by the Asset Acquirer.*

Any and all Pre-Paid Interest collected from a Borrower on a Loan by the Asset Acquirer after the Closing Date shall be paid by the Asset Acquirer to USACM or, if established, the USACM Liquidation Trust, whether or not a Lender Interest Claim has been made with respect to such Pre-Paid Interest. Upon payment, USACM or, if established, the USACM Liquidation Trust, must (i) hold the Pre-Paid Interest, or any portion thereof, in a Payment Reserve if required to do so under subsection (c) above, or alternatively, (ii) if the Pre-Paid Interest, or any portion thereof, need not be held in a Payment Reserve, such Pre-Paid Interest shall become property of the USACM Estate or, if applicable, the Trust Estate in accordance with subsection (d) above.

*(f) Treatment of Uncollected Pre-Paid Interest.*

(i) <u>Recoupment.</u>

On the later of the 90th day after (i) the Confirmation Date or (ii) the Effective Date, USACM or the USACM Liquidation Trust, if established, shall recoup Pre-Paid Interest from each Lender if the Borrower has not remitted Pre-Paid Interest to USACM or, if established, the USACM Liquidation Trust on or prior to that date; provided, however, that prior to that 90th day, no recoupment will be affected and Lenders from which funds have been reserved for potential repayment of Pre-Paid Interest shall not be sued for Pre-Paid Interest paid to them prior to the Petition Date and for which funds have been reserved for potential repayment.

(ii) <u>Collection Action.</u>

USACM or, if appointed, the USACM Estate Administrator, may, in its sole discretion and at any time that it deems appropriate, commence an action to collect any

Pre-Paid Interest that is not collected from a Borrower or from a Lender through the recoupment process during the ninety (90) day period referred to in subsection (f)(1) or thereafter.

(iii) Treatment Upon Collection.

If and when Pre-Paid Interest is collected in full from a Lender either through recoupment or when a Lender pays any judgment or settlement arising out of a collection action allowed under subsection (f)(ii) above, the Confirmation Order shall provide that the Third-Party Servicer, upon any necessary written instructions from USACM or, if established, the USACM Liquidation Trust, pay any Pre-Paid Interest thereafter collected from a Borrower to each such Lender.

**6.5 Debtors' Retention of Claims Litigation.**

As of the Effective Date, all Debtors, prior to the wind down and dissolution pursuant to this Plan, and notwithstanding the transfer of Causes of Action to the Liquidation Trusts and the powers of an Applicable Liquidation Trust or any Estate Administrator, shall have the exclusive right, subject to any limitations in an Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement, to file, serve and prosecute objections to Disputed Claims and Disputed Interests.

**6.6 Time Limit for Filing Objections to Claims and Interests.**

(a) Objections to Claims (other than Administrative Expense Claims, Lender Interest Claims, and Claims of a Lender based on a General Aggregate Investment Deficit) and Interests shall be filed with the Bankruptcy Court and served upon each Holder of the Claim or Interest to which objections are made not later than the Objection Bar Date, or such later date as the Bankruptcy Court may order with respect to a particular Claim or Interest or group of Claims or Interests.

(b) The resolution of any objection to a Claim or Interest shall be governed by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, the Plan, any Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement, or such provisions as may be established by the Bankruptcy Court.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(c) A Claim or Interest to which this section 6.6 applies shall be deemed an Allowed Claim or Allowed Interest, unless an objection to the Claim or Interest is filed by the Objection Bar Date, or: (i) an objection to the Claim or Interest is filed in accordance with any Order of the Bankruptcy Court made in accordance with applicable law, the Plan or any agreement between the Applicable Debtor and the Holder of the alleged Claim or Interest extending the Objection Bar Date; or (ii) such Claim or Interest is subject to disallowance under § 502(d) of the Bankruptcy Code, in which case such Claim or Interest shall be deemed disallowed in accordance with § 502(d) of the Bankruptcy Code without the need for filing an objection thereto.

## ARTICLE VII

## TREATMENT OF CERTAIN PROPERTY OF THE ESTATES AND EXECUTORY CONTRACTS

### 7.1 Transfer of the Loan Servicing Agreements.

Effective on the Effective Date, the Loan Servicing Agreements identified as part of the USACM Assets shall either be transferred to the Asset Acquirer pursuant to the Plan and the Confirmation Order free and clear of Liens, Claims, and Interests, including any alleged Claims under § 503(b) of the Bankruptcy Code, or through a process mutually agreeable to the Asset Acquirer and the Debtors, as may be set forth in the definitive Asset Purchase Agreement; provided, however, that no process will be agreed to that would result in the assertion of any Claims under § 503(b) of the Bankruptcy Code that could arise out of the transfer of the Loan Servicing Agreements. With respect to the Loans that are part of the Diversified Excluded Assets and the First Trust Excluded Assets or in the event of a self-liquidation, the First Trust Liquidation Trust (with respect to the First Trust Excluded Assets, or, in the event of a self liquidation, the First Trust Serviced Loans), the Diversified Post-Effective Date Estate (with respect to the Diversified Excluded Assets), and the USACM Liquidation Trust (with respect to the Serviced Loans) the Loan Servicing Agreements shall, except with respect to Loans that are wholly owned by Diversified or First Trust, have the option to retain and then transfer to the USACM Liquidation Trust their respective Loan Servicing Agreements, collect the contractual fees and service the Loans covered by such Agreements or, as part of this Plan, to transfer the Loan

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Servicing Agreements to a licensed and, in the business judgment of the Debtors, properly capitalized Third-Party Servicer. With respect to Loans that are wholly owned by Diversified or First Trust, the First Trust Estate Administrator and the Diversified Estate Administrator respectively shall make the determination as to whether the Loans are serviced by the First Trust Liquidation Trust or the Diversified Post-Effective Date Estate respectively, or a Third-Party Servicer of the respective Estate Administrator's choice.

**7.2 <u>Assumption of General Executory Contracts.</u>**

Not later than ten (10) days prior to a final hearing on the adequacy of the Disclosure Statement, each Debtor shall file with the Bankruptcy Court a statement listing any General Executory Contracts to be assumed or assumed and assigned under the Plan, or indicating that no General Executory Contracts will be assumed or assumed and assigned under the Plan. Unless a separate Order of the Bankruptcy Court is entered prior to the Effective Date, on the Effective Date, (i) all General Executory Contracts listed on the statement of the Applicable Debtor will be deemed assumed or assumed and assigned under the Plan upon the entry of a Confirmation Order pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code, and (ii) any and all General Executory Contracts not listed on the statement by the Applicable Debtor, including all written employment agreements, severance contracts (except with respect to employees employed on the Confirmation Date) and employee benefit or retirement or supplemental retirement benefit plans and agreements and unexpired leases of the Applicable Debtor, shall be deemed rejected by the Applicable Debtor as of the Petition Date.

**7.3 <u>Claims for Rejection Damages.</u>**

Each Person who is a party to an executory contract or unexpired lease which is rejected pursuant to this Plan, shall be entitled to file, a proof of Claim for damages alleged to have arisen from the rejection of the executory contract or unexpired lease to which such Person is a party. All proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of: (i) the date that an Order rejecting the executory contract or unexpired lease is entered, or (ii) the Confirmation Date. Objections to any such proof of Claim shall be filed by the Claims Objection

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Bar Date. All Claims arising out of the rejection of executory contracts or unexpired leases shall be General Unsecured Claims.

## ARTICLE VIII

## PRESERVATION OF THE DEBTORS' CLAIMS, CAUSES OF ACTION AND RIGHTS AND CANCELLATION OF EVIDENCES OF CLAIMS AND INTERESTS

### 8.1 Preservation.

Except as otherwise expressly agreed between the Debtors and the Asset Acquirer, all Claims, Causes of Action and rights of the Debtors or the Estates as of the Confirmation Date shall be preserved under the Plan and retained by the Estates. The Claims, Causes of Action and rights of USACM, First Trust and USA Securities shall be transferred to the Applicable Liquidation Trust and may be pursued by an Estate Administrator, in his or her sole discretion, as set forth in Article V of the Plan and Applicable Liquidation Trust Agreement. The Claims, Causes of Action and rights of Diversified shall be retained by the Diversified Post-Effective Date Estate and may be pursued by Diversified Estate Administrator, in his or her sole discretion, as set forth in Article V of the Plan and the Diversified Liquidation Agreement. The Claims, Causes of Action and rights of USA Capital Realty shall be retained by the USA Capital Realty Estate, and may be pursued by USA Capital Realty, in its sole discretion, as set forth in the Plan.

### 8.2 Cancellation of Certain Evidence of Claims and Interests.

Unless included in the Acquired Assets at the option of the Asset Acquirer and except to the extent otherwise provided under the Plan, any evidences of Claims or Interests shall, as of the Effective Date, represent only the right to participate in the distribution, if any, contemplated by the Plan and any documents exercised in the furtherance thereof. All Liens and other evidence of Liens, all instruments and other evidence of Claims, and all evidence of Interests in the Debtors, shall be canceled and be of no further force and effect, without any additional action on the part of an Applicable Debtor, an Applicable Liquidation Trust, or the Diversified Post-Effective Date Estate. As of the Effective Date, the Holders of Claims or Interests will have no rights against the Debtors, their Estates, or the Trust Estates arising from or relating to such Claims or Interests except the right, if any, to receive distributions of property from the Debtors, a Liquidation Trust,

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

or the Diversified Post-Effective Date Estate in accordance with and under the terms of the Plan, a Liquidation Trust Agreement, or the Diversified Liquidation Agreement.

## ARTICLE IX

## CONFIRMATION PURSUANT TO § 1129(b) OF THE BANKRUPTCY CODE

**9.1 Cram-Down.**

To the extent that any Class that is impaired within the meaning of the Bankruptcy Code rejects the Plan or is deemed to have rejected the Plan, the Debtors will request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) of the Bankruptcy Code. Further, as the Plan contains a Plan for five separate Debtors, the Debtors reserve the right to request confirmation of the Plan for one or more, but less than all Debtors under § 1129(b). In accordance with § 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including to amend or modify it to satisfy the requirements of § 1129(b) of the Bankruptcy Code for one or more of the Debtors covered by the Plan, if necessary its sole and absolute discretion.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**10.1 Conditions to Confirmation.**

Confirmation of the Plan shall not occur unless all of the requirements contained in the Bankruptcy Code have been satisfied. In addition, Confirmation shall not occur unless each of the following conditions has occurred:

(a) The Liquidation Trust Agreements and the Diversified Liquidation Agreement have been drafted and filed with the Bankruptcy Court in form and substance acceptable to the Applicable Debtors.

(b) The Bankruptcy Court has entered an Order finding that the Disclosure Statement contains adequate information pursuant to § 1125 of the Bankruptcy Code;

(c) The Plan is consistent with the terms of the Asset Purchase Agreement, which has been fully executed; and

(d) The proposed Confirmation Order is in form and substance acceptable to the Debtors.

**10.2 Conditions to Effective Date.**

The Effective Date of the Plan shall not occur unless each of the following conditions has occurred:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court in a form and substance reasonably satisfactory to the Debtors, and, if applicable, the Asset Acquirer, and the same shall have become a Final Order; and

(b) All actions, documents and agreements necessary to implement the Plan, including the Liquidation Trust Agreements and the Diversified Liquidation Agreement, shall have been effected or executed.

**10.3 Waiver of Conditions.**

Each of the conditions set forth in sections 10.1 and 10.2 of the Plan may be waived in whole or in part by the Debtors, and, if applicable, the Asset Acquirer. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure or such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right the may be asserted at any time.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1 Jurisdiction Retained.**

Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases, the assets and liabilities of the Estates and the Trust Estates, and the Plan to the fullest extent permitted by law, including, but not limited to:

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(a) Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim and resolving any objections to the allowance or priority of Claims or Interests;

(b) Hearing and determining any and all Claims, Causes of Action or rights that may be asserted or commenced by the Debtors or an Estate Administrator against Persons, Entities or governmental units;

(c) Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under §§ 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code, including the Final Fee Applications; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Liquidation Trusts and the Diversified Post-Effective Date Estate shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(d) Hearing and determining the reasonableness and allowability of any principal Claim, attorney fee Claim, interest Claim or the charges asserted by a Secured Creditor against the Debtors, the Estates, the Liquidation Trusts or the Trust Estates;

(e) Hearing and determining all matters related to any General Executory Contract (including unexpired leases) to which a Debtor is a party or with respect to which a Debtor may be liable;

(f) Hearing and determining all matters related to the transfer of the Acquired Assets to the Asset purchaser;

(g) Hearing and determining all matters related to Loan Servicing Agreements, including any transfer of any Loan Servicing Agreement to the Asset Acquirer;

(h) Effectuating performance of and payments under the provisions of the Plan;

(i) Hearing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Cases;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(j) Entering such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including an Applicable Liquidation Trust Agreement, the Diversified Liquidation Agreement, or the Asset Purchase Agreement;

(k) Hearing and determining disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan, such as the Liquidation Trust Agreements, the Diversified Liquidation Agreement and the Asset Purchase Agreement;

(l) Modifying the Plan, a Liquidation Trust Agreement or the Diversified Liquidation Agreement at the request of the Debtors or an Estate Representative and as provided by applicable law, including to cure any defect or omission, or to reconcile any inconsistencies in any Order of the Bankruptcy Court and the Plan, a Liquidation Trust Agreement or the Diversified Liquidation Agreement;

(m) Issuing injunctions, entering and implementing other Orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan, the Asset Purchase Agreement, or the Confirmation Order;

(n) Entering and implementing such Orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(o) Hearing and determining any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Liquidation Trust Agreements, the Diversified Liquidation Agreement, the Asset Purchase Agreement or any other asset purchase agreement entered into by the Debtors and a Third-Party Bidder;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(p) Enforcing all Orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(q) Except as otherwise limited herein, recovering all assets of the Debtors and property of the Estates or the Trust Estates, wherever located;

(r) Hearing and determining matters concerning state, local, and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(s) Hearing and determining all questions and disputes regarding title to the assets to be administered pursuant to the Plan, including by a Liquidation Trust or the Diversified Post-Effective Date Estate, and the validity and/or priority of any Liens or Secured Claims against those assets;

(t) Hearing and determining all questions and disputes as to whether the payment of any Claim under the Plan should be subordinated to the payment of other Claims;

(u) Approving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the Plan;

(v) Hearing and determining such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(w) Hearing and determining any matter relating the administration of a Trust Estate by an Estate Administrator including, without limitation, determining all controversies, suits and disputes that may arise or be brought by any party in interest against the Estate Administrator in connection with his or her acts and activities in the Chapter 11 Cases and his or her administration of an Applicable Liquidation Trust or the Diversified Post-Effective Date Estate; and

(x) Entering a Final Decree closing the Chapter 11 Cases.

**11.2. <u>Jurisdiction and Venue.</u>**

The Debtors and the Asset Acquirer agree, notwithstanding any contrary statement in the Silver Point Term Sheet or an agreement with a Third-Party Bidder, that the Bankruptcy Court to which the Chapter 11 Cases are assigned has personal jurisdiction over each of them and is the

proper venue for any disputes between or among them concerning the Plan, the Acquired Assets, the Estates or any matter relating to the Debtors, their assets, and liabilities of the Estates.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1     Documents and Agreements.**

All parties bound by this Plan shall execute all documents, releases, assignments or other agreements necessary to implement the Plan or effectuate any transaction described in, contemplated by, or incidental to performance under the Plan.  If any necessary party refuses or fails to execute, deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan or perform any other act, including the satisfaction of a Lien, execution of any agreement necessary to consummation of the Plan, or execution of an assignment pursuant to the Plan, the Bankruptcy Court may order the same, including the execution of any document, release, assignment or other agreement.

**12.2     Performance on the Effective Date.**

Any act required by the Plan to be done on or after the Effective Date may be done within a reasonable time (not exceeding twenty (20) days) thereafter without constituting default under the Plan.  No party shall be entitled to assert default under the Plan until such party has given the Debtors written notice of the alleged default and such default remains uncured for a period of thirty (30) days.

**12.3     Substantial Consummation of Plan.**

On the Effective Date, the Plan shall be substantially consummated, as that term is used in § 1127(b) of the Bankruptcy Code.

**12.4     Modifications and Amendments.**

The Debtors may alter, amend, or modify the Plan or any Plan exhibit under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of the Plan, as defined in § 1101(2) of the Bankruptcy Code and this Plan, the Debtors or the Estate Administrators may, under § 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omissions in the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Plan, the Disclosure Statement, or the Confirmation Order; to reconcile any inconsistencies in any of those documents or in any of those documents and the Asset Purchase Agreement, an Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement; or to attend to such matters as may be necessary to carry out the purposes and effects of the Plan; provide that such proceedings do not materially adversely affect the treatment of Holders of the Claims and Interests or Beneficiaries under the Plan, the Liquidation Trust Agreements or the Diversified Liquidation Agreement. Notice of such proceedings shall be served in accordance with the Bankruptcy Code, Bankruptcy Rules, or any applicable Order of the Bankruptcy Court.

**12.5 Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extend practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.6 Headings.**

The headings used in the Plan are solely for the convenience of the reader and do not, in any way, limit, expand or modify the provisions of the Plan to which they refer.

**12.7 Limitation of Liability.**

(a) Neither the Debtors, the Asset Acquirer nor the Committees, or their agents, attorneys, employees, officers, directors, or Professionals, shall have or incur any liability under the Plan to any Holder of a Claim or Interest or other party in interest by virtue of proposing or supporting the Plan or for any act taken or omitted to be taken in connection with or related to

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

proposing or supporting the Plan or the formulation, preparation, dissemination, solicitation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any act taken or omitted to be taken in connection with the Plan or the Confirmation Order.

(b) The Confirmation Order shall constitute a release discharge and forgiveness of all Claims, demands, Causes of Action which the Debtors or their Estates own, hold or are entitled to prosecute on behalf of any other party against the Chief Restructuring Officer, his, agents, attorneys, employees, officers, directors, or Professionals. This release shall cover all Claims or actions, derivative or otherwise, which may be brought in the name of, on behalf of, or in the right of the Debtors or their Estates.

**12.8 No Admission or Waiver.**

Neither the filing of this Plan, nor any statement or provisions contained in this Plan or the Disclosure Statement, nor any action by any party with respect to this Plan shall be construed as an admission against interest or a waiver of any rights except as stated in this Plan, as the same may be finally confirmed. If this Plan is not confirmed, neither this Plan or any statement or provision contained herein or in the Disclosure Statement may be used or relied upon in any suit, action, controversy, or other proceeding.

**12.9 Determination of Tax Assessments.**

By the Plan, the Debtors seek a determination by the Bankruptcy Court, pursuant to § 505 of the Bankruptcy Code, of any and all Tax liabilities or Tax assessments of the Debtors arising on or prior to the Effective Date, whether or not paid.

**12.10 Successors and Assigns.**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**12.11 <u>Binding Effect.</u>**

(a) Pursuant to § 1141(a) of the Bankruptcy Code and the terms of this Plan, the Plan shall be binding upon and inure to the benefit of the Debtors; the Asset Acquirer; all present and former Holders of Claims against and Interests in the Debtors, whether or not proof of such Claim or Interest has been filed, the Claim or Interest is Allowed or impaired and whether or not the Holder of the Claim or Interest has accepted the Plan; any one or all of the Debtors' respective successors and assigns, including, but not limited to, the Liquidation Trusts and the Estate Administrators; and any and all other parties-in-interest in these Chapter 11 Cases, including without limitation, any Person receiving or entitled to receive payments or property under the terms of this Plan.

(b) In accordance with § 1142(b) of the Bankruptcy Code, on and after the Effective Date, the Debtors and each Estate Administrator shall be deemed authorized and empowered to execute or deliver or to join in the execution or delivery of any instrument (including without limitation the Liquidation Trust Agreements) required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

**12.12 <u>Revocation, Withdrawal, Cram-Down or Non-Consummation.</u>**

(a) The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), rejection or assumption of any executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (y) prejudice in any manner the rights of the Debtors or any Person in

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

any further proceedings involving the Debtors, or (z) constitute an admission of any sort by the Debtors or any other Person.

(b) The Debtors reserve any and all rights they may have under § 1129(b) of the Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Interests. Additionally, the Debtors reserve their right to seek Confirmation of the Plan in fewer than all of these Chapter 11 Cases. In other words, if the Bankruptcy Court determines that a cram-down of the Plan pursuant to § 1129(b) of the Bankruptcy Code is legally impermissible in regard to a particular Debtor and its Estate, then the Debtors will withdraw the Plan in regard to that particular Debtor, its Estate and its Chapter 11 Case and the Debtors may then proceed to seek Confirmation of the Plan in those Chapter 11 Cases herein in which the cram-down provisions of § 1129(b) of the Bankruptcy Code may validly be exercised.

**12.13 Notices.**

All notices required or permitted to be given under the Plan shall be in writing and shall be delivered personally, mailed by first class United States mail postage prepaid, sent by facsimile or e-mail, provided that if notice is given by e-mail, it shall only be effective upon confirmation of delivery, as follows:

(a) The Debtors:

Annette W. Jarvis
Steven C. Strong
Ray Quinney & Nebeker, P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
Email: sstrong@rqn.com

(b) Asset Acquirer:

Michael Gatto
Silver Point Capital
Two Greenwich Plaza
1st Floor
Greenwich, CT 06830
Facsimile: (203) 542-4100

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(c) Holders of Allowed Claims or Interests and Beneficiaries. Notices shall be sent to the address set forth in the matrix filed in the Chapter 11 Cases or such other addresses as the Holder of the Allowed Claim or Interest or Beneficiary shall have listed on a proof of Claim or Interest, notice of appearance, or notice of change of address filed with the Bankruptcy Court and served on the Debtors.

(d) Estate Administrators and Advisory Committees. Notices to the Estate Administrators and Advisory Committees shall be sent to the address(es) listed on the statements that shall be filed in the Bankruptcy Court by each Estate Administrator and Advisory Committee within fifteen days (15) of the date of their appointment.

**12.14 Payments.**

All payments and disbursements made to Holders of Allowed Claims or Interests or Beneficiaries shall be sent to the addresses described in section 12.13 of the Plan.

**12.15 Prepayment.**

Except as otherwise provided in this Plan, any ancillary documents entered into in connection therewith, or the Confirmation Order, the Debtors, the Liquidation Trusts and the Diversified Post-Effective Date Estate shall have the right to prepay, without penalty, all or any portion of an Allowed Claims at any time; provided, however, that any such prepayment shall not violate, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**12.16 Continued Existence of the Estates and Role of the Debtors Post-Effective Date.**

The Estates shall continue to exist after the Effective Date, and except to the extent that assets of the Estates are transferred to and administered by a Liquidation Trust under the Plan and the Liquidation Trust Agreements, the Debtors shall implement the terms of the Plan on and after the Effective Date.

**12.17 Dissolution of the Committees.**

The Unsecured Creditors' Committee and the Executory Contract Holders Committee shall dissolve on the date that the USACM Advisory Committee is appointed. The First Trust Committee shall dissolve on the date that the First Trust Advisory Committee is appointed, and the Diversified Trust Committee shall dissolve on the date that the Diversified Advisory

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Committee is appointed. If for any reason an Advisory Committee is not appointed, the relevant Committee shall be deemed dissolved as of the Effective Date. When a Committee is dissolved, its members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases. The Professionals retained by a Committee and the members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered or costs incurred on or after the date that the Committee is dissolved as provided herein. The Professionals retained by a Committee may, if appropriate, be retained by an Advisory Committee and compensated in accordance with the Applicable Liquidation Trust Agreement or the Diversified Liquidation Agreement.

**12.18 Effect of Appeals.**

Unless the Confirmation Order is stayed pending appeal, at the option of the Debtors or an Estate Representative, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely filing and service of a motion under Bankruptcy Rule 7052, 8002, 8003, 8015, 9023, or 9024.

**12.19 Injunctions or Stays.**

**UNLESS OTHERWISE PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER §§ 105 OR 362 OF THE BANKRUPTCY CODE OR OTHERWISE, AND EXISTING ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER), SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. WHILE THE DEBTORS SHALL NOT RECEIVE A DISCHARGE UNDER § 1141 OF THE BANKRUPTCY CODE, ALL PARTIES (INCLUDING ALL HOLDERS OF CLAIMS OR INTERESTS) BOUND BY THE PLAN PURSUANT TO § 1141(a) OF THE BANKRUPTCY CODE ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM:**

**(a) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS,**

**THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE ADMINISTRATOR, THE ESTATES, THE ESTATES' ASSETS, A TRUST ESTATE, OR ASSETS OF A TRUST ESTATE WITH RESPECT TO ANY SUCH CLAIM OR INTEREST;**

**(b) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE ADMINISTRATOR, THE ESTATES, THE ESTATES ASSETS, A TRUST ESTATE, OR ASSETS OF A TRUST ESTATE ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST;**

**(c) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, AN ESTATE ADMINISTRATOR, THE ESTATES, THE ESTATES' ASSETS, A TRUST ESTATE OR THE ASSETS OF A TRUST ESTATE, OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, THE LIQUIDATION TRUSTS, ESTATE ADMINISTRATOR, THE ESTATES, THE TRUST ESTATES ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST;**

**(d) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE DIVERSIFIED POST-EFFECTIVE DATE ESTATE, A LIQUIDATION TRUST, THE ESTATES, THE ASSETS OF THE ESTATES, AN ESTATE ADMINISTRATOR, A TRUST ESTATE OR THE ASSETS OF A TRUST ESTATE ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; AND**

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**(e) TAKING ANY ACTION THAT WOULD INTERFERE WITH THE CONSUMMATION OF THE PLAN.**

DATED this 18th day of October, 2006

Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

*/s/ JEANETTE E. MCPHERSON*
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV 89146
Attorneys for Debtors and Debtors-in-Possession

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122