E-Filed On 10/18/06

SUSAN WILLIAMS SCANN, ESQ.
Nevada Bar No. 000776
PAUL R. CONNAGHAN, ESQ.
Nevada Bar No. 003229
DEANER, DEANER, SCANN, MALAN & LARSEN
720 South Fourth Street, Suite #300
Las Vegas, Nevada 89101 (702) 382-6911
Binford Medical Developers, LLC

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>_____Debtor_____ | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC.<br><br>_____Debtor_____ | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC.<br><br>_____Debtor_____ | Date of Hearing: October 19, 2006<br>Time of Hearing: 1:30p.m. |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC.<br><br>_____Debtor_____ | Affects:<br>☒USA Commercial Mortgage Company<br>☐USA Capital Diversified Trust Deed Fund, LLC<br>☐USA Capital First Trust Deed Fund, LLC<br>☐USA Securities, LLC |
| In re:<br>USA SECURITIES, LLC.<br><br>_____Debtor_____ | ☐USA Realty Advisors, LLC<br>☐All Debtors |

**LIMITED OPPOSITION TO THE MOTION SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN ASSETS, APPOINTING SPCP GROUP LLC AS LEAD BIDDER, AND APPROVING BID PROCEDURES AND PROTECTIONS**

COMES NOW, BINFORD MEDICAL GROUP, LLC. ("Binford"), a borrower of the above-named Debtors, by and through its attorney, SUSAN WILLIAMS SCANN, ESQ. of the law firm of DEANER, DEANER, SCANN, MALAN & LARSEN, and hereby files their Limited Opposition to the Motion Scheduling an Auction for The Sale of Certain Assets, Appointing SPCP Group LLC as Lead Bidder, and Approving Bid Procedures and Protections.

1. Debtors filed their Motion Scheduling an Auction for the Sale of Certain Assets, etc., and have sought the hearing on that Motion on shortened time for October 19, 2006.

2. Binford objects to the Motion to the extent that its construction loan in the amount of $8,375,000.00 has been inaccurately characterized in Debtors' moving papers. The actual principal balance is $7,450,000.00.

3. To clarify, in August, 2005, certain Debtors and Direct Lenders and Binford Medical Developers LLC entered into a $8,375,000.00 Construction Loan Agreement (the "USA Commitment"). USA Commercial Mortgage Company and Certain direct lenders, on information and belief (collectively, the "USA Lenders") have breached the USA commitment by failing to fund the final $925,000.00 and has caused, and continues to cause substantial damages to Binford. Binford has fully performed under the USA Commitment.

4. The USA Lenders are not entitled to claim default or entitlement to certain loan proceeds of $330,942.72 (presently on deposit with Fidelity National Title-the "Escrow") for at least two reasons:

(I) Any default by Binford has been caused by the default of the USA Lenders as detailed below;

Pursuant to the Agreement, effective August 30, 2005 (the "Agreement"), attached hereto as Exhibit "A" and incorporated by reference herein, under paragraph 3(a), "During the term of any default by USA hereunder, if such default causes an Event of Default by Borrower under the Loan Documents, USA (I) shall cause Lender to fully forebear from exercising any rights or remedies Lender may have against Borrower under the Loan Documents or applicable law; and, (ii), as servicing agent for the Loan shall forebear from exercising any right or remedies Lender may have against Borrower under the Loan Documents or applicable." Under sub-paragraph 3(b), "Borrower shall have ten (10) days after USA cures any default...within which to cure any Event of Default by Borrower under the Loan Documents caused by USA's default under this Agreement. USA shall cause Lender to grant Borrower the cure period provided in this paragraph 3(b).'"

(ii) Although Binford paid the entire loan fee of 5% on $8,375,000.00, up front,

*DEANER, DEANER, SCANN, MALAN & LARSEN*
*720 South Fourth Street, Suite 300*
*Las Vegas, Nevada 89101*
*Telephone (702)382-6911•Facsimile (702)366-0854*

and has diligently performed each and every obligation under the Loan Documents, the USA Lenders failed to fund the balance of $925,000.00 of the USA Commitment. By April of 2006, when the USA Lenders stopped funding nearly the entire USA Commitment should have been funded and disbursed, according to the Loan Documents. Although, since April, 2006, pursuant to Court Order, Binford had been paid on five draws out of Escrow, the USA Lenders have failed to deposit the loan commitment balance of $925,000.00.

5.  An additional $330,942.00 of the loans proceeds remains in escrow and have not been dispersed pursuant to the last draw request. Despite Binford's efforts to mitigate, it has suffered additional damages in the form of excess interest paid to borrow $330,000.00 to replace the money in escrow, loss of three significant tenants with the possible loss of a fourth, loss of permanent financing, difficulty attracting additional tenants and difficulty with its contractor due to payment problems.

## CONCLUSION

WHEREFORE, Binford respectfully request that Binford's loan be accurately characterized in any auction order.

Dated this 18th day of October, 2006.

DEANER, DEANER, SCANN,
MALAN & LARSEN

By: _____
SU$AN WILLIAMS SCANN, ESQ.
Nevada Bar No. 000776
PAUL R. CONNAGHAN, ESQ.
Nevada Bar No. 003229
720 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Attorney for Borrower
Binford Medical Developers, LLC

F:\OFFICE\CLIENTS\Binford Medical Developers, LLC\Opp.wpd

3

**EXHIBIT A**

## AGREEMENT

USA Commercial Mortgage Company, a Nevada corporation ("USA"), and Binford Medical Developers, LLC, an Indiana limited liability company ("Borrower"), make this Agreement effective this 30th day of August, 2005 (the "Effective Date").

## RECITALS

A.   As of the Effective Date, USA, as broker for Lender, has arranged a Loan from Lender in the Loan Amount of $4,250,000 (the "Initial Loan Amount") to Borrower. The Loan is evidenced by a Loan Agreement and other Loan Documents by and between Lender and Borrower of even date herewith. Capitalized terms used herein without definition have the meanings assigned to them in the Loan Agreement.

B.   The Loan Agreement provides for optional increases in the Loan Amount by Lender up to the limit of $8,375,000, as set out in Section 3.2 of the Loan Agreement.

C.   Borrower has requested that Lender commit to: increasing the Loan Amount to $8,375,000 (the "Maximum Loan Amount") and making the additional advances up to the Maximum Loan Amount, but Lender may not do so under Nevada law.

D.   USA, on its own behalf and not in its capacity as broker, has offered to increase the Loan Amount up to the Maximum Loan Amount and make the advances from USA's own funds or through alternative sources that it arranges, up to the Maximum Loan Amount to Borrower to place Borrower in the same position Borrower would be in had Lender obligated itself under Section 3.2 of the Loan Agreement to increase the Loan Amount to $8,375,000.

NOW, THEREFORE, USA and Borrower agree as follows:

## AGREEMENTS

1.   USA hereby agrees to cause the Loan Amount to be increased to $8,375,000. USA agrees to make, either with its own money or through alternative sources that it arranges, any and all advances provided for in Section 3.2 and Exhibit "C" of the Loan Agreement, in the manner as provided for in the Loan Agreement, if Lender, in the exercise of its absolute discretion under Paragraph 3.2 of the Loan Agreement, declines to make such additional advances. The Initial Loan Amount and all such advances shall not exceed the Maximum Loan Amount. Notwithstanding the foregoing, Borrower acknowledges that no such advances need be made when an Event of Default exists, unless such Event of Default was caused by a default by USA under this Agreement.

2.   Should USA not fully and timely make any advance that it has agreed to make in paragraph 1, above, Borrower hereby agrees and acknowledges that its sole remedy shall be an action against USA for damages, and that it shall at all times remain fully liable to Lender (even if USA is a Lender) for all amounts loaned (or advanced) by Lender under the Loan Documents, and that USA's failure to perform under this Agreement shall not negate, nullify, invalidate, or

in any way excuse or diminish Borrower's duties and obligations under the Loan Documents. In that regard, this Agreement is not a Loan Document.

3. USA hereby agrees as follows:

(a) During the term of any default by USA hereunder, if such default causes an Event of Default by Borrower under the Loan Documents, USA: (i) shall cause Lender to fully forbear from exercising any rights or remedies Lender may have against Borrower under the Loan Documents or applicable law; and (ii) as servicing agent for the Loan shall forebear from exercising any right or remedies Lender may have against Borrower under the Loan Documents or applicable law.

(b) Borrower shall have ten (10) days after USA cures any default under this Agreement within which to cure any Event of Default by Borrower under the Loan Documents caused by USA's default under this Agreement. USA shall cause Lender to grant Borrower the cure period provided in this paragraph 3(b). USA, as servicing agent for the Loan, shall observe the provisions of this paragraph 3(b).

4. In the event USA subsequently becomes a Lender under the Loan Documents, then in addition to USA's individual obligations hereunder, and USA's obligations as servicing agent for the Loan, the obligations of USA under this Agreement shall apply to USA in its capacity as a Lender.

5. The following provisions of the Loan Agreement are incorporated herein by reference: Articles 5, 6, and 7, and Sections 8.15, and 8.16.

6. This Agreement may be executed in counterparts.

USA:

USA Commercial Mortgage Company

By: _____
Joseph D. Milanowski, President

BORROWER:

Binford Medical Developers, LLC

By: _____
Kenneth E. Schmidt, Manager