# ATTACHMENT NO. 5

Legal Description
Exhibit "B"

Parcel 16

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

Lots 42, 43 and 44 of Tract 16050, in the city of Los
Angeles, as per map recorded in Book 370 Pages 44, 45
and 46 of Maps, in the office of the county recorder of
said county.

EXCEPT that portion of Lot 44 of Tract 16050, described
as follows:

Beginning at the most Westerly corner of said Lot 44;
thence along the Northwesterly boundary line of said Lot
44, North 30 degrees 49' 27" East 47.79 feet to the most
Northerly corner of said Lot 44; thence along the
Northeasterly boundary line of said Lot 44, South 52
degrees 56' 03" East 16.69 feet to a line that bears
North 50 degrees 39' 52" East from said point of
beginning; thence along said last mentioned line, South
50 degrees 39' 52" West 48.88 feet to said point of
beginning.

EXCEPT an undivided one-half interest of all petroleum,
oil, gas, naphtha, asphaltum, brea and other
hydrocarbon and all other minerals within or underlying
said above described land, as excepted by Chas H.
Church, Trustee under declaration of trust dated
November 30, 1948 in deed recorded May 19, 1949 in
Book 30124 Page 18 Official Records.

ALSO EXCEPT therefrom from all of the above described
lands, all the remaining oil, gas and other hydrocarbons
and minerals now or at any time hereafter situated
therein and thereunder or producible therefrom,
together with the free and unlimited right to mine, drill
and bore beneath the surface of said land at any level or
levels one hundred feet (100') or more below the
surface of said land for the purpose of development or
removal of such substances, provided that the surface
opening of such well and all other surface facilities shall
be located on land other than that described herein, and
shall not penetrate any part or portion of the above
described real property within one hundred feet of the
surface thereof and all of the rights so to remove such
substances are hereby specifically reserved, including
the right to drill for, produce and use water from said
real property in connection with such operation as
reserved in document recorded in Book 47380 Page 24
Official Records.

APN: 5032-006-016 and 5032-006-017

05 2251105

Legal Description
Exhibit "B"

Parcel 17

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

Lot 14 of Tract No. 16050, in the City of Los Angeles, as
per Map recorded in Book 370 Pages 44 to 46 inclusive
of Maps, in the office of the County Recorder of said
County.

EXCEPT therefrom all oil, gas, minerals, and other
hydrocarbon substances lying below the surface of said
land, but with no right of surface entry as provided in
deeds of record.

APN: 5032-004-019

05 2251105

Legal Description
Exhibit "B"

Parcel 18

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

Lot 15 of Tract No. 16050, in the City of Los Angeles, as per Map recorded in Book 370 Pages 44 through 46 inclusive of Maps, in the office of the County Recorder of said County.

Except therefrom an undivided one-half interest of all petroleum, oil, gas, naphtha, asphaltum, brea and other hydrocarbons and all other minerals, within or underlying said land, as excepted by Chas H. Church, Trustee under Declaration of Trust dated November 30, 1948 in Deed recorded May 19, 1949 as Instrument No. 806 in Book 30124 Page 18 Official Records.

The right to enter upon or use the surface of any part or portion of said land or the subsurface thereof to a depth of 200 feet from the surface for the purpose of exploring, drilling, developing or extracting any oil, gas, naphtha and other hydrocarbon and mineral substances was quitclaimed by a Deed executed by Chas H. Church, as Trustee, recorded in February 10, 1950 as Instrument No. 2316, Book 32246 Page 212 Official Records.

Also except from all of the above described lands all the remaining oil, gas, and other hydrocarbon and minerals now or at any time hereafter situated therein and thereunder or producible therefrom, together with the free and unlimited right to mine, drill and bore beneath the surface of said land at any level or levels 100 feet or more below the surface of said land for the purpose of development or removal of such substances, provided that the surface opening of such well and all other surface facilities shall be located on land other than that described therein, and shall not penetrate any part or portion of the above described real property within 100 feet of the surface and all of the rights so to remove such substances are hereby specifically reserved, including the right to drill, for produce and use water from said real property in connection with such operations, as reserved in the Deed from the Capital Company, recorded September 24, 1951 as Instrument No. 237 in Book 47213 Page 86 Official Records.

APN: 5032-004-003

05  2251105

Legal Description
Exhibit "B"

Parcel 19

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

Lot 17 of Tract No. 16050, in the City of Los Angeles, as
per Map recorded in Book 370 Pages 44 to 46 inclusive
of Maps, in the office of the County Recorder of said
County.

Except an undivided one-half interest of all petroleum,
oil, gas, naphtha, asphaltum, brea and other
hydrocarbons and all other minerals, within or
underlying said land, as excepted by Charles H. Church,
Trustee, under Declaration of Trust dated November 30,
1948 in Deed recorded May 19, 1949 as Instrument No.
806, in Book 30124 Page 18 Official Records.

The right to enter upon or use the surface of any part or
portion of said land or the subsurface thereof, to a depth
of 200 feet from the surface for the purpose of
exploring, drilling, developing or extracting any oil, gas,
naphtha and other hydrocarbons and mineral substances
was quitclaimed by a Deed executed by Charles H.
Church, as Trustee, recorded in Book 32246 Page 212
Official Records.

Also saving and excepting from all of the above
described lands, all the remaining oil, gas, and other
hydrocarbons and minerals now or at any time hereafter
situated therein and thereunder or producible therefrom,
together with the free and unlimited right to mine, drill
and bore beneath the surface of said land at any level or
levels 100 feet or more below the surface of said land
for the purpose of development or removal of such
substances, provided that the surface opening of such
well and all other surface facilities shall be located on
land other than that described herein, and shall not
penetrate any part or portion of the above described
real property within 100 feet of the surface thereof, and
all of the rights so to remove such substances are
hereby specifically reserved, including the right to drill,
for produce and use water from said real property in
connection with such operations, as reserved in the
Deed from the Capital Company, recorded May 20, 1955
in Book 47834 Page 272, Official Records.

APN: 5032-004-005

05  2251105

Legal Description
Exhibit "B"

Parcel 20

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

PARCEL A:

Lot 18 of Tract 16050, in the city of Los Angeles, as per
map recorded in Book 370 Pages 44, 45 and 46 of Maps,
in the office of the county recorder of said county.

EXCEPT an undivided one-half interest of all petroleum,
oil, gas, naphtha, asphaltum, brea and other
hydrocarbons and all other minerals within or underlying
said above described land, as excepted by Chas H.
Church, Trustee under Declaration of Trust dated
November 30, 1948 in deed recorded May 19, 1949 in
Book 30124 Page 18 of Official Records.

ALSO EXCEPT all the remaining oil, gas and other
hydrocarbons and minerals now or at any time hereafter
situated therein and thereunder or producible therefrom,
together with the free and unlimited right to mine, drill
and bore beneath the surface of said land at any level or
levels one hundred feet (100') or more below the
surface of said land for the purpose of development or
removal of such substances, provided that the surface
opening of such well and all other surface facilities shall
be located on land other than that described herein, and
shall not penetrate any part or portion of the above
described real property within one hundred feet of the
surface thereof and all of the rights so to remove such
substances are hereby specifically reserved, including
the right to drill for, produce and use water from said
real property in connection with such operations as
reserved in the deed recorded April 4, 1955 as
Instrument No. 342.

PARCEL B:

Lot 19 of Tract 16050, in the city of Los Angeles, as per
map recorded in Book 370 Pages 44 through 46 inclusive
of Maps, in the office of the county recorder of said
county.

EXCEPT an undivided one-half interest of all petroleum,
oil, gas, naphtha, asphaltum, brea and other
hydrocarbons and all other minerals within or underlying
said land, as excepted by Charles H. Church, Trustee
under Declaration of Trust dated November 30, 1948 in
deed recorded May 19, 1949 as Instrument No. 806, in
Book 30124 Page 18, Official Records.

The right to enter upon or use the surface of any part or

05 2251105

## Legal Description
## Exhibit "B"

portion of said land or the subsurface thereof to a depth
of 200 feet from the surface for the purpose of
exploring, drilling, developing or extracting any oil, gas,
naphtha and other hydrocarbon and mineral substances
was quitclaimed by a deed executed by Charles H.
Church, as trustee, recorded in Book 32246 Page 212,
Official Records.

ALSO saving and excepting unto the grantor herein, its
successors and assigns, from all of the above described
lands, all the remaining oil, gas and other hydrocarbons
and minerals now or at any time hereafter situated
therein and thereunder or producible therefrom,
together with the free and unlimited right to mine, drill
and bore beneath the surface of said land at any level or
levels 100 feet or more below the surface of said land
for the purpose of development or removal of such
substances, provided that the surface opening of such
well and all other surface facilities shall be located on
land other than that described herein, and shall not
penetrate any part or portion of the above described
real property within 100 feet of the surface thereof and
all of the rights so to remove such substances are
hereby specifically reserved, including the right to drill
for, produce and use water from said real property in
connection with such operation, as reserved in the deed
from the Capital Company, recorded May 10, 1955 as
Instrument No. 1609, Official Records, as to Lot 19 and
recorded April 4, 1953 as Instrument No. 342, Official
Records as to Lot 18.

APN:  5032-004-006 and 5032-004-007

05 2251105

09/19/05

## ACKNOWLEDGMENT

**STATE OF CALIFORNIA**       )

                                 ) SS.

**COUNTY OF LOS ANGELES**    )

On _____ before me, _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

NOTARY PUBLIC
State of California

---

ATTENTION NOTARY:   Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE **MUST** BE ATTACHED
TO THE DOCUMENT DESCRIBED AT RIGHT.

Title of Document Type: _____
Number of Pages: _____ Date of Document: _____
Signer(s) Other Than Named Above:

_____

412072 1 ~ 20204 004

05 2251105

09/19/05

## ACKNOWLEDGMENT

STATE OF CALIFORNIA      )
                              ) SS.

COUNTY OF LOS ANGELES    )

On _____ before me, _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
State of California

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE MUST BE ATTACHED   Title of Document Type: _____
TO THE DOCUMENT DESCRIBED AT RIGHT.  Number of Pages: _____ Date of Document: _____
                                     Signer(s) Other Than Named Above: _____

412072 1 -- 20204 004

05 2251105

09/19/05

ACKNOWLEDGMENT

STATE OF CALIFORNIA       )
                           ) SS.

COUNTY OF LOS ANGELES   )

On _____ before me, _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
State of California

---

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE **MUST** BE ATTACHED
TO THE DOCUMENT DESCRIBED AT RIGHT.

Title of Document Type: _____
Number of Pages: _____ Date of Document: _____
Signer(s) Other Than Named Above:
_____

412072 1 – 20204 004

**05 2251105**

09/19/05

ACKNOWLEDGMENT

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF LOS ANGELES        )

On _____ before me, _____, personally appeared
_____, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
State of California

ATTENTION NOTARY:  Although the information requested below is OPTIONAL, it could prevent
fraudulent attachment of this certificate to another document.

THIS CERTIFICATE **MUST** BE ATTACHED       Title of Document Type: _____
TO THE DOCUMENT DESCRIBED AT RIGHT.    Number of Pages: _____ Date of Document: _____
                                       Signer(s) Other Than Named Above:
                                       _____

412072 1 — 20204 004                                    05 2251105

09/19/05

**Exhibit "D"**

Junior Lender's Certification Under Section 10(i)

Junior Lender hereby certifies that the attached Junior Loan Documents are the final and complete set of executed Junior Loan Documents, and there are no other or different Junior Loan Documents and no other agreements between Junior Lender and Borrower. Lender certifies the foregoing under penalty of perjury.

**JUNIOR LENDER:**

3901 SANTA ROSALIA, LLC,
a California limited liability company

By:    Santa Rosalia Homes, LLC,
a California limited liability company, its manager

By:    Lee Group, Inc., a California Subchapter "S"
corporation

By:_____
Jeffrey Lee
President

4031115 2 – 20204 004                              1

05  2251105

09/19/05

**ACKNOWLEDGMENT**

**STATE OF CALIFORNIA**              )
                                     )  **SS.**
                                     )

**COUNTY OF LOS ANGELES**

On                              , before me,
, personally appeared                              , personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
**NOTARY PUBLIC**
State of California

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent
fraudulent attachment of this certificate to another document.

| THIS CERTIFICATE **MUST** BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT. | Title of Document Type: _____ |
|---|---|
| | Number of Pages: _____ | Date of Document: _____ |
| | Signer(s) Other Than Named Above: |

403115 2 – 20204 004                     1

**05 2251105**

09/19/05

## ACKNOWLEDGMENT

STATE OF CALIFORNIA        )
                           }  SS.
                           )

COUNTY OF LOS ANGELES

On _____ , before me, _____ , personally appeared _____ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
State of California

---

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE **MUST** BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT.

Title of Document Type: _____

Number of Pages: _____  Date of Document. _____

Signer(s) Other Than Named Above:
_____

412014 2 — 20204 004

2

05  2251105

09/19/05

**ACKNOWLEDGMENT**

**STATE OF CALIFORNIA**               )
                                      ) **SS.**
                                      )

**COUNTY OF LOS ANGELES**

     On                                   , before me,
, personally appeared                                  , personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

    WITNESS my hand and official seal.


_____
                NOTARY PUBLIC
                State of California

---

ATTENTION NOTARY:  Although the information requested below is OPTIONAL, it could prevent
fraudulent attachment of this certificate to another document.

| THIS CERTIFICATE **MUST** BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT. | Title of Document Type: _____ |
|---|---|
| | Number of Pages: _____ Date of Document: _____ |
| | Signer(s) Other Than Named Above: |

05  2251105

09/19/05

## ACKNOWLEDGMENT

STATE OF CALIFORNIA          }
                            } SS.
                            }
COUNTY OF Los Angeles

On _____ , before me, _____ , personally appeared _____ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
State of California

---

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

| THIS CERTIFICATE **MUST** BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT. | Title of Document Type: _____ |
|---|---|
| | Number of Pages: ____ Date of Document: ____ |
| | Signer(s) Other Than Named Above: |

412014 2 -- 20204 004

2

05 2251105

# EXHIBIT 4

**RECORDED BY:**
FIRST AMERICAN TITLE INSURANCE COMPANY                09/19/05
National Commercial Services
WHEN RECORDED MAIL TO:

Richard M. Foster, Esq.
Greenwald, Pauly, etal                          05  2251106
1299 Ocean Ave., #400
Santa Monica, CA 90401-1007

SPACE ABOVE THIS LINE RESERVED FOR RECORDER USE

# Subordination Agreement

APN    5032-006-015; 5032-006-014; 5032-006-013; 5032-006-012; 5032-006-011; 5032-006-010; 5032-006-009; 5032-006-008;
5032-006-007; 5032-006-006; 5032-006-004; 5032-006-003 & 002; 5032-003-016; 5032-003-014; 5032-003-010;
5032-006-016 & 017; 5032-004-019; 5032-004-003; 5032-004-005; 5032-004-006 & 007

105689-23
*b b M*
*M L K*

09/19/05

**RECORDING REQUESTED BY**
Richard M. Foster, Esq.
Greenwald, Pauly, Foster & Miller, APC
1299 Ocean Avenue, Suite 400
Santa Monica, California 90401-1007

**WHEN RECORDED RETURN TO**
Greenwald, Pauly, Foster & Miller, APC
1299 Ocean Avenue, Suite 400
Santa Monica, California 90401-1007
Attention: Richard M. Foster, Esq.

THE AREA ABOVE IS RESERVED FOR
RECORDER'S USE

## SUBORDINATION AGREEMENT

412016.2 -- 20204 004

05 2251106

09/19/05

## SUBORDINATION AGREEMENT

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN JUNIOR LENDER'S SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF ANOTHER SECURITY INSTRUMENT.**

This SUBORDINATION AGREEMENT (this "Agreement") is made as of this 11 day of August , 2005, by and among **MS ACQUISITION COMPANY, LLC,** a California limited liability company ("Borrower"), **3916 MLK, LLC,** a California limited liability company ("**Junior Lender**") and those persons and entities listed on **Exhibit "A"** attached hereto (collectively, "**Senior Lender**") by USA Commercial Mortgage Company ("USA Capital") as agent for Senior Lender, and is based upon the following recitals. USA Capital shall have the right, from time to time, to designate different or additional persons or entities to be part of the group comprising the "Senior Lender" and upon such designation, **Exhibit "A"** attached hereto shall be automatically amended to reflect such different or additional persons or entities, but such designation by USA Capital shall not otherwise modify this Agreement and, in particular, shall not modify or otherwise affect the rights of "Senior Lender" under this Agreement:

### R E C I T A L S

09/19/05

A. Immediately prior hereto, Borrower acquired certain real property located in the City of Los Angeles, County of Los Angeles, State of California, legally described in **Exhibit "B"** attached hereto and the buildings, structures and other improvements located thereon (collectively, the **"Property"**).

B. Immediately prior hereto, Senior Lender made a loan to Borrower in the original principal amount of up to $6,000,000 (the **"Senior Loan"**) in part to finance Borrower's acquisition of the Property, and in connection therewith Borrower executed in favor of Senior Lender that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, which was recorded in the official records of Los Angeles County on September 19, 2005 as Document No. ___*___. For the purpose of this Agreement, the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing immediately stated above, as it may from time to time be supplemented, modified, amended, renewed, or extended shall hereinafter be referred to as the **"Senior Deed of Trust"**. *Concurrently Herewith*

C. The Senior Loan was made pursuant to, and is evidenced by, in addition to the Senior Deed of Trust, various other documents executed by Borrower in favor of Senior Lender, including but not limited to a loan agreement, promissory note (the **"Senior Note"**), security agreements (including assignments and pledges of, among other things, various rights, permits, licenses, franchises, authorizations, contracts, plans, specifications, and drawings), financing statements, environmental indemnity agreements, guaranties and various other documents. For the purpose of this Agreement, the term **"Senior Loan Documents"** shall mean the Senior Deed of Trust and all the above documents described in this Recital C, and, in each case, as originally executed or as they may from time to time be supplemented, modified, amended, renewed or extended together with all other documents or instruments which may at any time be executed by Borrower in connection with the Senior Loan.

D. Under the Senior Loan, prior hereto Senior Lender made an initial advance to Borrower in the amount of $850,000 (the **"Initial Senior Advance"**).

E. Subsequent to the Senior Loan, Junior Lender made a loan to Borrower in the original principal amount of $4,500,000 (the **"Junior Loan"**) and in connection therewith Borrower executed in favor of Junior Lender that certain Subordinated Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, which was recorded in the official records of Los Angeles County after the Senior Deed of Trust, on September 19, 2005 as Document No. ___**___. For the purpose of this Agreement, the Subordinated Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing immediately stated above executed in favor of Junior Lender, as it may from time to time be supplemented, modified, amended, renewed, or extended shall hereinafter be referred to as the **"Junior Deed of Trust"**. ** *Concurrently Herewith*

F. The Junior Loan was made pursuant to, and is evidenced by, in addition to the Junior Deed of Trust, various other documents executed by Borrower in favor of Junior Lender, including but not limited to that certain Loan and Financing Agreement (the **"Junior Loan Agreement"**) a loan agreement, promissory note (the **"Junior Note"**), security agreements,

09/19/05

financing statements, environmental indemnity agreements, guaranties and various other documents. For the purpose of this Agreement, the term **"Junior Loan Documents"** shall mean the Junior Deed of Trust and all the above documents described in this Recital F, and, in each case, as originally executed or as they may from time to time be supplemented, modified, amended, renewed, or extended together with all other documents or instruments which may at any time be executed by Borrower in connection with the Junior Loan; provided that the definition of Junior Loan Documents and the language in this Recital F shall not in any way (a) modify Borrower's and Junior Lender's agreement in Section 2 by which the Borrower and Junior Lender have agreed not to amend, supplement or otherwise modify the Junior Loan Documents (subject to the exception set forth in Section 2 concerning the Retail Parcel, defined below), and (b) negate or otherwise limit Junior Lender's certification in Section 10(i), below. The Junior Loan Documents give Junior Lender an option to purchase a portion of the Property. (Any option to purchase granted to the Junior Lender in the Junior Loan Documents or otherwise shall be referred to herein as the **"Junior Purchase Option."**) The Junior Lender ultimately intends to be the developer of the Property (or a part thereof) in accordance with existing agreements between the Junior Lender and Borrower; thus it is the Borrower's and Junior Lender's intention that, at Junior Lender's option, Borrower will sell or otherwise transfer the Property (or part thereof) to Junior Lender in exchange for complete forgiveness of the Junior Loan (and a complete reconveyance of the Junior Deed of Trust and cancellation of the Junior Loan Documents), and that, accordingly, the funds loaned to Borrower under the Junior Loan will constitute the equity investment of Junior Lender in the Property (or a part thereof).

G. It is the intention of Borrower, Senior Lender and Junior Lender that (1) the Senior Deed of Trust at all times shall unconditionally be a lien or charge upon the Property prior to and superior to the lien or charge of the Junior Deed of Trust and the Junior Purchase Option; and (2) the Senior Loan Documents (and all Senior Lender's rights and security interests set forth therein) at all times shall unconditionally be senior to and superior in priority to the Junior Loan Documents (and all Junior Lender's rights and security interests set forth therein and the Junior Purchase Option).

H. Borrower and Junior Lender's execution of this Agreement and execution of other agreements set forth below are a condition precedent to Senior Lender agreeing to make the Senior Loan and, without this Agreement and such other agreements set forth below, Senior Lender would not make the Senior Loan.

I. It is for the mutual benefit of Borrower and Junior Lender that Senior Lender make the Senior Loan. In particular, but without limiting the foregoing, Junior Lender ultimately intends to be the developer of the Property (or part thereof) in accordance with existing agreements between Junior Lender and Borrower; thus, Junior Lender is depending upon the Senior Loan to provide financing to allow Borrower to complete certain work so that Borrower will be in a position to sell or otherwise transfer the Property (or part thereof) to Junior Lender in a condition required by Junior Lender. Without the Senior Loan, Junior Lender would not be able to realize its development opportunity with respect to the Property. Therefore, Junior Lender does not want, under any circumstances, for the Junior Loan or the Junior Lender in any way to interfere with the Senior Loan or the willingness of Senior Lender to loan funds to Borrower (including but not limited to the Initial Senior Advance and the Additional Senior

05 2251106

09/19/05

Advances, defined below), or otherwise to interfere or adversely affect the rights of Senior Lender in and to the Property (and the Retail Parcel, defined below) and under the Senior Loan Documents, which rights of the Senior Lender Junior Lender desires, understands and agrees will at all times be senior and of higher priority than Junior Lender's rights.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and in order to induce Senior Lender to make the Senior Loan, it is hereby declared, understood and agreed as follows:

1.    The Senior Deed of Trust, as to all obligations recited as being secured thereby (including but not limited to the Senior Note and all renewals, modifications and extensions thereof), is now and shall unconditionally be and remain at all times a lien or charge on the Property prior and superior to the lien or charge of the Junior Deed of Trust and prior and superior to the Junior Purchase Option.

2.    The Senior Loan Documents and all rights of Senior Lender thereunder (including all security interests created thereby) are now and shall unconditionally be and remain at all times prior and superior to the Junior Loan Documents and all rights of Junior Lender thereunder (including all security interests created thereby and the Junior Purchase Option).  Without limiting the foregoing, Junior Lender agrees that any rights of Junior Lender, whether now existing or later arising, to receive payment on account of any indebtedness (including interest) owed to it by Borrower or any subsequent owner of the Property, or to receive any other payment from Borrower or any subsequent owner of the Property or to pursue any rights or remedies under the Junior Loan Documents (except as provided below), shall at all times be subordinate as to lien and time of payment and in all other respects to the full and prior repayment of the Senior Loan and the rights and remedies of Senior Lender under the Senior Loan Documents.  Thus (without limiting the subordination above), until the Senior Loan is repaid in full (a) Junior Lender may not receive payments (and shall not be entitled to enforce any obligations to make any such payments) from Borrower or any subsequent owner of the Property in respect of the Junior Loan (or otherwise) and any amounts received by Junior Lender shall be held in trust for Senior Lender and promptly paid over to Senior Lender, (b) any impounded amounts for taxes and insurance or other impounded amounts deposited with Junior Lender under Section 3.7 of the Junior Deed of Trust (or otherwise) must be used solely to pay the costs for which the impounded amounts are given and no portion of such impounded amounts shall be paid to Junior Lender or any of its affiliates; and (c) Junior Lender may not pursue any monetary recourse against Borrower or anyone else liable under the Junior Loan.  In addition, until the Senior Loan is repaid in full, Junior Lender may not exercise the Junior Purchase Option (or any part thereof), except that Junior Lender may exercise the Junior Purchase Option with respect to any portion of the Property if Junior Lender or Borrower has notified Senior Lender in writing that Borrower (or someone on behalf of Borrower) will be paying the release price and Borrower will otherwise be complying with all obligations under the Senior Loan Documents required for the release of such portion of the Property from the lien of the Senior Deed of Trust, provided that, notwithstanding the exercise by Junior Lender of the Junior Purchase Option, such portion of the Property may not be transferred to Junior Lender or otherwise

09/19/05

until such time as Borrower (or someone on behalf of Borrower) has paid the release price and Borrower has otherwise complied with all other requirements under the Senior Loan Documents for the release of such portion of the Property from the lien of the Senior Deed of Trust. Further, Borrower and Junior Lender may not amend, supplement or otherwise modify the Junior Loan Documents from the final Junior Loan Documents existing as of the date of the recordation of the Junior Deed of Trust in the official records of Los Angeles County, California, except that Junior Lender shall have the right, upon compliance with the provisions of Section 7, below, to amend the Junior Deed of Trust to allow the Junior Deed of Trust to encumber the Retail Parcel (defined below) or parts thereof. Notwithstanding the foregoing (but without otherwise affecting the subordination set forth in this Agreement and without otherwise affecting any of Senior Lender's rights and remedies under the Senior Loan Documents), Junior Lender (a) at all times retains the right to foreclose upon the Property in the event of Borrower's default under the Junior Loan Documents, in accordance with the Junior Loan Documents; and (b) at all times may enforce its remedies against Jeffrey Lee, Michael Adler and BMLK, LLC, a California limited liability company in accordance with that certain Payment and Performance Guaranty dated as of the date hereof, which Payment and Performance Guaranty is one of the Junior Loan Documents.

3.    Junior Lender acknowledges and agrees that, as of the date of this Agreement, Senior Lender has made the Initial Senior Advance (in the amount of $850,000) and that Senior Lender has the right to make additional advances to Borrower under the Senior Loan, as further provided therein ("Additional Senior Advances"). Without limiting the provisions of Section 1 and 2, above, Junior Lender agrees that the lien or charge of the Senior Deed of Trust as to or arising out of all obligations in connection with the Additional Senior Advances, and each of them (including but not limited to any notes evidencing the Additional Senior Advances or modifications of the Senior Note arising from the Additional Senior Advances, or renewals, modifications and extensions thereof) automatically (and without further action being required) shall unconditionally be and remain at all times a lien or charge on the Property prior and superior to the lien or charge of the Junior Deed of Trust and prior to and superior to the Junior Purchase Option. Junior Lender acknowledges and agrees that Senior Lender would not make the Additional Senior Advances, or any of them, without the agreement set forth in this Section 3.

4.    Without limiting the provisions of Section 1 and 2, above, Junior Lender agrees that all rights of Senior Lender under the Senior Loan Documents (including all rights in connection with the Additional Senior Advances, and each of them, and including all security interests created by the Senior Loan Documents) are now and shall unconditionally be and remain at all times prior and superior to the Junior Loan Documents and all rights of Junior Lender thereunder (including the security interests created thereby and the Junior Purchase Option). Junior Lender acknowledges and agrees that Senior Lender would not make the Additional Senior Advances, or any of them, without the agreement set forth in this Section 4.

5.    In addition to Junior Lender's other obligations under this Agreement, and as an inducement (and in consideration for) Senior Lender making each Additional Senior Advance (which Additional Senior Advances will inure to the benefit of Junior Lender),

4120162 – 20204 004                              5                      05 2251106

09/19/05

Junior Lender agrees to sign any documents requested by Senior Lender at the time of each and every one of the Additional Senior Advances to confirm and document Junior Lender's agreements set forth in Sections 1, 2, 3 and 4, above. Without limiting the foregoing, at the time of each one of the Additional Senior Advances, Junior Lender shall execute a new subordination agreement in the form of **Exhibit "C"** attached hereto, with the incomplete items to be completed with information supplied by Senior Lender (each, a "**New Subordination Agreement**"), and Junior Lender authorizes Senior Lender to record each New Subordination Agreement in the official records of Los Angeles County. Junior Lender acknowledges that its agreement to provide a New Subordination Agreement at Senior Lender's request is a material and significant element of this Agreement and that if Junior Lender fails or refuses to provide a New Subordination Agreement when requested by Senior Lender, Senior Lender will suffer serious damages, for which Junior Lender will be personally responsible; and further, Senior Lender shall have the right to the remedy of specific performance to compel Junior Lender to comply with its obligations under this Section 5, and Junior Lender waives all defenses thereto.

6.     At Senior Lender's request, Junior Lender shall execute a UCC-3 Subordination Form, or other subordination form to expressly confirm that the rights and the security interests created by the Senior Loan Documents are now and shall unconditionally be and remain at all times a lien or charge on the applicable personal property assets, superior to the lien or charge of the security interests created by the Junior Loan Documents; and, at Senior Lender's request, concurrently with each one of the Additional Senior Advances and as an inducement (and in consideration for) Senior Lender making each Additional Senior Advance (which Additional Senior Advances will inure to the benefit of Junior Lender), Junior Lender shall execute a new UCC-3 Subordination Form or other subordination form, in form and content designated by Senior Lender, to confirm that rights and security interests created by the Senior Loan Documents are and remain prior and superior to the rights and security interests created by the Junior Loan Documents. The UCC-3 Subordination Forms (or other subordination forms) may be filed by Senior Lender with any governmental or other agency including the California Secretary of State.

7.     Borrower may be acquiring all or part of other property near or adjacent to the Property, which property is defined in the Junior Loan Agreement as the "Retail Parcel" (hereinafter the "Retail Parcel"). The Junior Loan Documents require that Borrower cause the lien of the Junior Deed of Trust to encumber those portions of the Retail Parcel acquired by Borrower. Without limiting Senior Lender's other rights under this Agreement, Junior Lender agrees that Senior Lender may amend the Senior Loan Documents, including the Senior Deed of Trust, to cause the lien of the Senior Deed of Trust to encumber those portions of the Retail Parcel acquired by Borrower. Further, without limiting any other provisions of this Agreement, and notwithstanding anything contained in the Junior Loan Documents, the Junior Lender agrees that the Senior Deed of Trust, as to all obligations recited as being secured thereby (including but not limited to the Senior Note, any notes evidencing the Additional Senior Advances or modifications of the Senior Note arising from the Additional Senior Advances, and all renewals, modifications and extensions thereof), shall unconditionally be and remain at all times a lien or charge on the Retail Parcel prior and superior to the lien or charge of the Junior Deed of Trust. Further, Junior Lender agrees that

412016 2 – 20204 004                                      6

05  2251106

09/19/05

if and when the Junior Lender and/or Borrower desire for the Junior Deed of Trust to encumber the Retail Parcel (or any part thereof), the Junior Lender will first execute all documents requested by Senior Lender in order to assure the lien priority of the Senior Deed of Trust and the Senior Loan Documents, respectively, over the Junior Deed of Trust and the Junior Loan Documents, respectively, and otherwise to confirm and document Junior Lender's agreements set forth above, including but not limited another subordination agreement in the form of this Agreement (as modified by Lender) (each, a "**Retail Parcel Subordination Agreement**") which shall include, among other things, a commitment in the future to sign a New Subordination Agreement with respect to Additional Senior Advances. Unless and until the Junior Lender signs the documents required above including the Retail Parcel Subordination Agreement when required above, the Junior Deed of Trust shall be deemed not to encumber the Retail Parcel (or any part thereof) notwithstanding the provisions of the Junior Loan Documents or any other agreements signed by Borrower.

8.      Junior Lender will execute all documents and take all other steps requested by Senior Lender to confirm the agreements set forth herein. Without limiting the foregoing, Junior Lender will assist Senior Lender to allow Senior Lender to obtain any title insurance endorsements requested by Senior Lender, including but not limited to endorsements to insure the continuing -lien priority of the Senior Deed of Trust, including signing all documents requested by any title company in connection therewith.

9.      This Agreement and the New Subordination Agreements (when executed) shall be the whole and only agreements with regard to the subordination of the Junior Deed of Trust to the Senior Deed of Trust and subordination of the Junior Loan Documents (and all rights thereunder) to the Senior Loan Documents (and all rights thereunder) and shall supersede and cancel any prior agreements as to such subordination, including but not limited to, provisions, if any, contained in the Junior Deed of Trust, which provide for the subordination of the lien or charge thereof to another deed or deeds of trust or to any other mortgage or mortgages.

10. Junior Lender further declares, agrees and acknowledge as follows:

(a) Junior Lender has received and reviewed each of the Senior Loan Documents in their entirety and Junior Lender consents to, approves, and fully understands all provisions of the Senior Deed of Trust and all other Senior Loan Documents (including but not limited to any loan or escrow agreements for the disbursement of the proceeds of any funds). Thus, the exact terms of the Senior Loan are known to, understood by, and approved by, Junior Lender. In particular, but without limiting the foregoing, Junior Lender understands, consents to, and approves, the interest rate, loan fees, prepayment penalties, financing charges, principal amount, maturity date, terms of repayment, mode of repayment, use of funds, and all other provisions of the Senior Loan Documents.

(b) Junior Lender agrees that the subordination created by this Agreement is fair and reasonable.

05 2251106

09/19/05

(c) Junior Lender intentionally and unconditionally waives, relinquishes and subordinates the lien or charge of the Junior Deed of Trust and the Junior Purchase Option in favor of the Senior Deed of Trust as to all obligations recited therein as being secured thereby (including but not limited to all obligations in connection with the Initial Senior Advance and all Additional Senior Advances, and the Senior Note and all amendments or endorsements thereto evidencing the Additional Senior Advances and modifications of the Senior Note arising out of the Additional Senior Advances, or renewals, modifications or extensions of any of the foregoing), and understands that in reliance upon and in consideration of this waiver, relinquishment and subordination specific loans (including but not limited to the Initial Senior Advance and all Additional Senior Advances) are being and will be made and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

(d) Junior Lender acknowledges and agrees that the Junior Loan Documents (and the agreements and security interests created thereby and the Junior Purchase Option) shall at all times unconditionally be subject and subordinate to, and of lower priority than, the Senior Loan Documents (and the agreements and security interests created thereby). Junior Lender knowingly waives all rights to claim that the Junior Loan Documents (or the agreements and security interests created thereby or the Junior Purchase Option) are prior or superior to the Senior Loan Documents (or the agreements and security interests created thereby) and understands that in reliance upon this waiver specific loans (including but not limited to the Initial Senior Advance and the Additional Senior Advances) are being and will be made and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver. Further, without limiting the foregoing, Junior Lender waives the right to receive any payments in respect of the Junior Loan, as further provided in Section 2, above.

(e) Borrower has not made any promises or other commitments that would limit or otherwise restrict the circumstances under which Junior Lender would be obligated to subordinate the Junior Deed of Trust and the Junior Loan Documents as provided in this Agreement. This Agreement is consistent with all agreements between Junior Lender and Borrower.

(f) Borrower may use the funds disbursed by Senior Lender (including the Initial Senior Advance and the Additional Senior Advances) for any and all purposes provided in the Senior Loan Documents and any other purposes as determined by Senior Lender. However, to the extent Senior Lender makes disbursements (including the Initial Senior Advance and the Additional Senior Advances) Senior Lender is under no obligation or duty to, nor has Senior Lender represented that it will, see to the application of such proceeds by the person or persons to whom Senior Lender disburses such proceeds, and any application or use of any such proceeds for purposes other than those provided for in any agreement shall not defeat the subordination provided herein in whole or in part.

4129162 – 20203.004

8

05  2251106

09/19/05

(g) To the extent that the Senior Loan Documents give Senior Lender any discretion or choices, Junior Lender agrees that Senior Lender may exercise such discretion and make such choices in Senior Lender's sole and absolute discretion, and Junior Lender waives all rights in connection therewith. Further, Senior Lender may, in its sole and absolute discretion, amend the Senior Loan Documents and waive any conditions in the Senior Loan Documents (including any conditions to disbursement of Additional Senior Advances) and such amendments and waivers shall not affect the subordination and other agreements made by Junior Lender hereunder. Senior Lender shall not be liable to Junior Lender for (i) any acts or omissions taken by Senior Lender with respect to the Senior Loan; (ii) Senior Lender's acts, statements, conduct, representations and omissions made in connection therewith; and (iii) any fact, matter, transaction or event related thereto, whether known or unknown.

(h) The subordination created hereby is unconditional and not dependent upon any other event, act or matter whatsoever. Without limiting the foregoing, Junior Lender shall not have any defense to the subordination including any defense based on lack of consideration or that Senior Lender has failed to comply with any obligations (whether express or implied) under the Senior Loan Documents.

(i) Junior Lender will, concurrently with the execution hereof, deliver to Senior Lender a full and complete set of executed Junior Loan Documents accompanied by a certificate in the form of Exhibit "D" attached hereto by which the Junior Lender will certify that the Junior Loan Documents provided to Senior Lender are the final and complete set of executed Junior Loan Documents, and there are no other or different Junior Loan Documents and no other agreements between Junior Lender and Borrower.

(j) An endorsement has been placed upon the Junior Note that the Junior Deed of Trust is and shall remain, by this Agreement and otherwise, subordinate to the lien or charge of the Senior Deed of Trust and that the rights of Junior Lender under the Junior Loan Documents are and shall remain, by this Agreement and otherwise, subordinate to the rights of Senior Lender under the Senior Loan Documents.

11.    The Recitals are hereby incorporated by reference and shall be included herein as part of the agreement between the parties hereto.

12.    Nothing in this Agreement shall impair or adversely affect any right, privilege, power or remedy of Senior Lender under or with respect to the Senior Loan, the Borrower or anyone else liable under the Senior Loan, or any assets of Borrower. If a dispute arises between Senior Lender and Junior Lender and the provisions of the Senior Loan Documents and the Junior Loan Documents conflict on the issues subject to such dispute, then the Senior Loan Documents shall govern and control, unless the provisions of this Agreement would require a different result (in which case, the provisions of this Agreement shall govern and control). Further, to the extent of any conflict between the terms and provisions of the Junior Loan Documents and this Agreement, the terms and provisions of this Agreement shall govern and control.

412016 2 -- 20204 004                9                05 2251106

09/19/05

13.    Senior Lender is a direct beneficiary of this Agreement and may enforce this Agreement and all provisions thereof. The obligations of this Agreement shall be binding on Borrower and Junior Lender and each of their successors and assigns; and the rights and benefits of this Agreement shall inure to the benefit of Senior Lender and its successors and assigns. The failure of Senior Lender to enforce, or the delay of Senior Lender in enforcing, any of its rights under this Agreement shall not be deemed a waiver thereof. This Agreement may not be amended or changed without Senior Lender's written consent.

14.    This Agreement shall be governed in all respects by the substantive laws of the State of Nevada, without regard to choice of law principles, and therefore, the law that shall apply is the substantive law applicable to parties solely domiciled in the State of Nevada, concerning transactions solely within the State of Nevada.

15.    Borrower and Junior Lender, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, (i) submit to personal jurisdiction in the State of Nevada, over any suit, action or proceeding by any person arising from or relating to this Agreement, (ii) agree that any such action, suit or proceeding may be brought in any state or federal court of competent jurisdiction only sitting in Clark County, Nevada, (iii) submits to the jurisdiction of such courts, and (iv) to the fullest extent permitted by law, agrees that it will not bring any action, suit or proceeding in any forum other than in Clark County, Nevada (but nothing herein shall affect the right of Senior Lender to bring any action, suit or proceeding in any other forum). Borrower and Junior Lender further consent and agree to service of any summons, complaint or other legal process in any such suit, action or proceeding by registered or certified U.S. mail, postage prepaid and consent and agree that such service shall constitute in every respect valid and effective service (but nothing herein shall affect the validity or effectiveness of process served in any other manner permitted by law).

16.    Should any provision of this Agreement or portion thereof be unenforceable or in conflict with applicable laws, then the validity of the remaining portions hereof shall not be affected by such unenforceability or conflict, and this Agreement shall be considered as if such provision, or portion thereof, were not contained herein.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON THE REAL PROPERTY SECURITY TO OBTAIN A LOAN, A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

412016.2 – 20204 004

05 2251106

09/19/05

**BORROWER:**

MS ACQUISITION COMPANY, LLC, a
California limited liability company

By:    Marlton Square Associates, LLC
       a California limited liability company, its
       co-manager

       By:    Capital Vision Equities, LLC, a California
              limited liability company, its managing member

              By:_____
                     Christopher Hammond
                     Managing Member

By:    Lee Marlton, LLC, a California limited liability
       company, its co-manager

       By:    Lee Group, Inc., a California Subchapter
              "S" corporation

              By:_____
                     Jeffrey Lee
                     President

**JUNIOR LENDER:**

3916 MLK, LLC,
a California limited liability company

By:    BMLK , LLC,
       a California limited liability company, its manager

       By:    Lee Group, Inc., a California Subchapter
              "S" corporation

              By:_____
                     Jeffrey Lee
                     President

412016 2 – 20204 004                          11                      05  2251106

CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

No 5907

State of _California_

County of _Los Angeles_

On _Sept. 6, 2005_ before me, _Laura A. Deyarmin_,
DATE                              NAME, TITLE OF OFFICER - E.G. "JANE DOE, NOTARY PUBLIC"

personally appeared _Jeffrey Lee_,
NAME(S) OF SIGNER(S)

☑ personally known to me - **OR** - ☐ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are
subscribed to the within instrument and ac-
knowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s),
or the entity upon behalf of which the
person(s) acted, executed the instrument.

LAURA A. DEYARMIN
Commission # 1329224
Notary Public --- California
Los Angeles County
My Comm. Expires Nov 20, 2005

WITNESS my hand and official seal.

SIGNATURE OF NOTARY

━━━━━ **OPTIONAL** ━━━━━

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent
fraudulent reattachment of this form.

## CAPACITY CLAIMED BY SIGNER

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)   ☐ LIMITED
              ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____

## DESCRIPTION OF ATTACHED DOCUMENT

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

05  2251106

©1993 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave , P O Box 7184 • Canoga Park, CA 91309-7184

09/19/05

**BORROWER:**

MS ACQUISITION COMPANY, LLC, a
California limited liability company

By:    Marlton Square Associates, LLC
       a California limited liability company, its
       co-manager

       By:    Capital Vision Equities, LLC, a California
              limited liability company, its managing member

              By: _____
                    Christopher Hammond
                    Managing Member

By:    Lee Marlton, LLC, a California limited liability
       company, its co-manager

       By:    Lee Group, Inc., a California Subchapter
              "S" corporation

              By: _____
                    Jeffrey Lee
                    President

**JUNIOR LENDER:**

3916 MLK, LLC,
a California limited liability company

By:    BMLK , LLC,
       a California limited liability company, its manager

       By:    Lee Group, Inc., a California Subchapter
              "S" corporation

              By: _____
                    Jeffrey Lee
                    President

412016 2 – 20204 004                    11

05 2251106

09/19/05

## ACKNOWLEDGMENT

STATE OF CALIFORNIA        )
                           ) SS.
                           )

COUNTY OF LOS ANGELES

On _Sept 7, 2005_ , before me, _connie chung_ ,
personally appeared _Christopher Hammond_ , personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

      WITNESS my hand and official seal.

```
CONNIE CHUNG
COMM. # 1383163
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
EXP. NOV. 4, 2006
```

_____
NOTARY PUBLIC
State of California

---

ATTENTION NOTARY:  Although the information requested below is OPTIONAL, it could prevent
fraudulent attachment of this certificate to another document

THIS CERTIFICATE <u>MUST</u> BE ATTACHED    Title of Document Type: _Subordination Agreement_
TO THE DOCUMENT DESCRIBED AT RIGHT.   Number of Pages: _____ Date of Document: _12_
                                      Signer(s) Other Than Named Above:

412016 2 – 20204 004                            2

05 2251106

09/19/05

"SENIOR LENDER"

USA COMMERCIAL MORTGAGE COMPANY,
AS AGENT FOR SENIOR LENDER

By: _____

Its: _____

05 2251106

09/19/05

## ACKNOWLEDGMENT

STATE OF NEVADA )
                          ) SS.
                          )

COUNTY OF CLARK

On September 6, 2005, before me, **Margaret M. Stone**, personally appeared **Joseph D. Milanowski, President of USA Commercial Mortgage Company,** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



MARGARET M STONE
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 04-27-2009
Certificate No 05-95400-1

_____
NOTARY PUBLIC
State of California

---

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

| THIS CERTIFICATE <u>MUST</u> BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT. | Title of Document Type: _____ |
| | Number of Pages: _____ Date of Document: _____ |
| | Signer(s) Other Than Named Above: _____ |

05 2251106

09/19/05

### Exhibit "A"

| LegalVesting | Amount |
|---|---|
| William A. Banos, a married man, as his sole and separate property & Angel J. Banos, an unmarried man, as joint tenants with right of survivorship | $25,000 |
| Nelson Chardoul & Virginia Chardoul Trustees of the Nelson & Virginia Chardoul Trust dated 10/7/91 | $25,000 |
| Arline L. Cronk & Edward H. Davies Trustees of the Arline L. Cronk & Edward H. Davies Living Trust dated 6/27/03 | $25,000 |
| Panagiotis Dovanidis, a single man & Dimitra Dovanidou, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $50,000 |
| Prince Emmanuel, a single man | $25,000 |
| Richard A. Johnson, a married man dealing with his sole & separate property | $25,000 |
| James F. Lawrence and Arla M. Lawrence, trustees of The James F. Lawrence and Arla Lawrence Revocable Trust Dated 1-19-04 | $100,000 |
| Sven-Eric Levin & Linda Levin Co-Trustees of the Sven-Eric & Linda Levin 1994 Trust dated 04/22/94 | $25,000 |
| Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| Aprille J. Pihl, an unmarried woman | $25,000 |
| Peter Valve Company, Inc., a Nevada corporation | $25,000 |
| Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $200,000 |
| First Savings Bank Custodian For Michael S. Simcock IRA | $50,000 |
| Carmine Spinelli & Anna Spinelli, husband & wife, as joint tenants with right of survivorship | $40,000 |
| Maria Spinelli, a single woman | $40,000 |
| Michael Spinelli, a single man | $70,000 |
| Jason C. Weber, an unmarried man | $25,000 |
| H. Daniel Whitman Trustee of the Whitman Trust dated 12/1/04 | $25,000 |
| Total | $850,000 |

05 2251106

Legal Description
Exhibit "B"

Parcel 1

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

Lot 41 of Tract 16050, in the city of Los Angeles, as per
map recorded in Book 370 Pages 44 to 46 inclusive of
maps, in the office of the county recorder of said county.

And that portion of Lot 44 described as follows:

Beginning at the most westerly corner of said Lot 44;
thence along the northwesterly boundary line of said Lot
44, North 30 deg 49' 27" east 47.79 feet to the most
northerly corner of said Lot 44; thence along the
northeasterly boundary line of said Lot 44, South 32 deg
56' 03" east 16.69 feet to a line that bears North 50 deg
39' 52" east from said point of beginning; thence along
said last mentioned line, south 50 deg 39' 52" west
48.65 feet to the said point of beginning.

Excepting all oil and mineral rights as previously
reserved under declaration of trust dated November 30,
1948 in deed recorded May 19, 1949 in Book 30124
Page 18, Official Records, as Instrument No. 806 with
subsequent quitclaim of surface rights, recorded in Book
32246 Page 212, Official Records, and as previously
reserved in deed recorded September 14, 1951 in Book
37205 Page 312, Official Records.

APN: 5032-006-015

05 2251106

**Legal Description**
**Exhibit "B"**

Parcel 2

Real property in the City of Los Angeles, County of Los
Angeles, State of California, described as follows:

Lot 40 of Tract No. 16050, in the city of Los Angeles, as
per map recorded in Book 370 Pages 44 45 and 46 of
Maps, in the office of the county recorder of said county.

Except therefrom an undivided one-half interest of all
petroleum, oil, gas, naphtha, asphaltum, brea and other
hydrocarbons and all other minerals, within or
underlying said above described land, as excepted by
Chas H. Church, Trustee under Declaration of Trust
dated November 30, 1949 in deed recorded May 19,
1949 in Book 30124 Page 18 Official Records.

The right to enter upon or use the surface of any part or
portion of said land or the subsurface thereof to a depth
of 200 feet from the surface for the purpose of
exploring, drilling, development or extracting any oil,
gas, naphtha and other hydrocarbon and mineral
substances was quitclaimed by a deed executed by Chas
H. Church, as trustee, recorded in Book 32246 Page 212
Official Records.

Also excepting all the remaining oil, gas and other
hydrocarbons and minerals now or at any time hereafter
situated therein and thereunder or producible therefrom,
together with the free and unlimited right to mine, drill
and bore beneath the surface of said land at any level or
levels 100 feet or more below the surface of said land
for the purpose of development or removal of such
substances, provided that the surface opening of such
well and all other surface facilities shall be located on
land other than that described therein, and shall not
penetrate any part or portion of the above described
real property within 100 feet of the surface thereof and
all of the rights so to remove such substances are
hereby specifically reserved, including the right to drill,
for produce and use water from said real property in
connection with such operations, as in deed by Capital
Company, recorded September 24, 1961 in Book 37262
Page 401 Official Records.

APN: 5032-006-014

05 2251106