Jeffrey B. Cohen, Chief Counsel
Israel Goldowitz, Deputy Chief Counsel
Karen Morris, Associate Chief Counsel
James Eggeman, Assistant Chief Counsel
Frank A. Anderson, Attorney, D.C. Bar No. 478234[*]
Erika E. Barnes, Attorney, Cal. Bar No. 197309[*]
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
Tel: (202) 326-4020, ext. 3759
Fax: (202) 326-4112
anderson.frank@pbgc.gov and efile@pbgc.gov

Attorneys for Pension Benefit Guaranty Corporation

Daniel G. Bogden
Nevada Bar No. 2137
United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Tel:  (702) 388-6336
Fax:  (702) 388-6787
Attorney for Pension Benefit Guaranty Corporation

Electronically Filed:
October 24, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
| Debtor. | Case No. BK-S-06-10727 LBR |
| In re: | Case No. BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC | Case No. BK-S-06-10729 LBR |
| Debtor. | |
| In re: | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | |
| Debtor. | Jointly Administered Under |
| In re: | Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | |
| Debtor. | |
| In re: | Hearing Date: November 13, 2006 |
| USA SECURITIES, LLC | Hearing Time: 9:30 a.m. |
| Debtor. | |

---

[*]Admitted *pro hac vice*.

**OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION DATED SEPTEMBER 15, 2006 (AFFECTS ALL DEBTORS)**

The Pension Benefit Guaranty Corporation ("PBGC") hereby files this objection, on behalf of the USA Commercial Mortgage Company Defined Benefit Pension Plan ("Pension Plan") and on its own behalf, in response to the adequacy of the Disclosure Statement for Debtors' Joint Plan of Reorganization Dated September 15, 2006 ("Disclosure Statement"), filed by USA Commercial Mortgage Co. (USACM), USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC (collectively "Debtors").  On October 12, 2006, Debtors agreed to provide PBGC with an extension until October 24, 2006, to file objections to the Disclosure Statement. In the Stipulation and Order entered on October 16, 2006, docket number 1543, in which Debtors provided various other parties with an extension to file objections until November 6, 2006, Debtors stated that they would file an amended disclosure statement on or before October 31, 2006.  PBGC has requested the same extension provided to the other parties, and has attempted to negotiate with Debtors regarding the provisions of the Disclosure Statement; however, Debtors have refused to provide any additional extension to PBGC and have not provided PBGC with the language to be included in the amended disclosure statement. Therefore, PBGC has filed these objections.

As PBGC demonstrates below, the Disclosure Statement should not be approved in its current form because it fails to provide adequate information as required under section 1125 of the Bankruptcy Code and reflects other defects that may render the Reorganization Plan unconfirmable.

### I.  PRELIMINARY STATEMENT

PBGC is a wholly-owned United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2000 & Supp. III 2003).  PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. When an underfunded plan terminates, PBGC generally becomes trustee of the plan and, subject to certain statutory limitations, pays the plan's unfunded benefits with its insurance funds.  *See* 29 U.S.C. §§ 1321-1322, 1342, 1361.

The Pension Plan is a single-employer defined benefit pension plan covered by Title IV of ERISA.  *See* 29 U.S.C. § 1321.  On information and belief, USACM and one or more debtor affiliates and/or non-debtor affiliates are contributing sponsors of the Pension Plan, as defined by 29 U.S.C. § 1301(a)(13), or are members of the contributing sponsor's controlled group, as defined by 29 U.S.C. § 1301(a)(14).  A controlled group under ERISA and the Internal Revenue Code includes a parent-subsidiary group of trades or businesses connected through ownership of at least an 80 percent controlling interest with a common parent organization.  *See* 29 U.S.C. § 1301(a)(14); 26 U.S.C. § 414(b) and (c); 26 C.F.R. §§ 1.414(b) and (c).  A controlled group also includes a brother-sister group of trades or businesses under the common control of the same five or fewer persons.  *Id*.

Upon termination of a pension plan covered by the PBGC insurance program, the plan's contributing sponsor and each member of the contributing sponsor's controlled group become jointly and severally liable to PBGC for the total amount of the pension plan's Unfunded Benefit Liabilities ("UBL").  29 U.S.C. § 1362(a).  UBL is the shortfall between a pension plan's benefit

liabilities and its assets at fair market value, computed as of the date of the pension plan's termination. 29 U.S.C. §§ 1301(a)(18), 1362(b); *see* 29 C.F.R. § 4044.41 *et seq*.

Each member of the contributing sponsor's controlled group is also jointly and severally liable to PBGC for insurance premiums, interest, and penalties (collectively, "premiums") with respect to the Pension Plans, 29 U.S.C. § 1307(e)(2), and to the Pension Plans for the Plan's minimum funding contributions.

PBGC intends to file proofs of claim with respect to the Pension Plan against the Debtors for: (1) UBL, (2) minimum funding contributions, and (3) premiums. PBGC intends to assert administrative priority for a portion of these claims.

## II.    OBJECTIONS

The Disclosure Statement fails to provide adequate information as required under 11 U.S.C. § 1125. Section 1125(a)(1) defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a . . . hypothetical investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The Disclosure Statement should, but does not, inform creditors of a number of important facts regarding the Debtors' obligations to the Pension Plan that may affect the value of creditors' recoveries and the feasibility of the Debtors' Plan of Reorganization.

Under 11 U.S.C. § 1129(a)(1), a plan of reorganization or liquidation cannot be confirmed unless it complies with all applicable provisions of the Bankruptcy Code. As discussed below, the proposed Debtors' First Amended Joint Plan of Reorganization ("POR") does not comply with certain provisions of the Bankruptcy Code, including 11 U.S.C. § 1125, § 1129(b), and § 524(e), and, therefore, cannot be confirmed. A disclosure statement cannot be

approved if the plan it describes is incapable of confirmation. *See In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed.")

      **A.**     **Disclosure Statement fails to provide adequate information regarding the Pension Plan.**

PBGC objects that the Disclosure Statement mischaracterizes and fails to provide adequate information regarding the Pension Plan. The Disclosure Statement improperly characterizes the Pension Plan as an executory contract which may be rejected. The Disclosure Statement specifically provides at that "all General Executory contracts, including all... employee retirement benefit plans and agreements... shall be deemed rejected by the Debtors as of the Petition Date." Disclosure Statement, Article IX, Section G. However, defined benefit pension plans are not executory contracts and may not be merely rejected. *See In re Philip Services Corp.*, 310 B.R. 802, 809 (Bankr.S.D.Tex. 2004). The exclusive means of terminating a pension plan are prescribed by ERISA. *See* 29 U.S.C. §§ 1341, 1342; *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999). PBGC has the authority to commence termination proceedings for a pension plan under certain circumstances. 29 U.S.C. § 1342; *see, e.g.,* 29 U.S.C. § 1342(a)(4) (authorizing PBGC-initiated plan terminations involving an unreasonable increase in risk to the Title IV insurance fund). ERISA also provides procedures for employer-initiated or voluntary termination proceedings. *See* 29 U.S.C. § 1341. Because the Debtors cannot reject the Pension Plan as an executory contract, the Disclosure Statement fails to provide adequate information concerning the Debtors' intentions for the Pension Plan.

For creditors to be able to make an informed judgment about the Debtors' proposed Plan, and about the likelihood of this Court's approving the POR on the terms outlined by the Debtors, PBGC asserts that the following information should be included in the Disclosure Statement:

> USA Commercial Mortgage Company established and maintained a pension plan for certain of its employees known as the USA Commercial Mortgage Company Defined Benefit Pension Plan (the "Pension Plan"). The Pension Plan is covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), (29 U.S.C. § 1301 et seq.).

> USA Commercial Mortgage Company and all members of its controlled group are obligated to contribute to the Pension Plan the amount necessary to satisfy ERISA's minimum funding standards, ERISA section 302; Internal Revenue Code section 412. The Pension Plan may be terminated only if the statutory requirements of either ERISA section 4041, 29 U.S.C. section 1341, or ERISA section 4042, 29 U.S.C. section 1342, are met. If the Pension Plan terminates, USA Commercial Mortgage Company and all members of its controlled group will be jointly and severally liable for the unpaid minimum funding contributions, premiums, and unfunded benefit liabilities of the Pension Plan. *See* 29 U.S.C. section 1362(a).

> The Pension Benefit Guaranty Corporation ("PBGC"), a United States Government corporation, guarantees the payment of certain pension benefits upon termination of a pension plan covered by Title IV of ERISA. PBGC has informed Debtors that, based on its estimates of the liabilities under the Pension Plan, PBGC intends to file in the bankruptcy proceedings estimated claims for unfunded benefit liabilities, contingent on plan termination, and claims for unpaid minimum funding contributions and premiums. PBGC asserts administrative priority for certain amounts of its claims under 11 U.S.C. sections 507(a)(2), 507(a)(5) and 507(a)(8).

> In the future, USA Commercial Mortgage Company may seek to terminate the Pension Plan under the requirements of ERISA section 4041, 29 U.S.C. section 1341 for Distress Terminations. However, unless the Pension Plan has been terminated prior to the effective date of the plan of reorganization, Debtors' liability to the Plan under ERISA, or their liability to the PBGC with respect to the Plan, shall not be affected in any way by this reorganization proceeding, confirmation of the Plan of Reorganization, or discharge in bankruptcy.

PBGC reserves all rights under 29 U.S.C. Sections 1341 and 1342 regarding the Pension Plan.

**B.     Third Party Releases, Discharges, Injunctions, and Exculpations are Impermissible.**

The Disclosure Statement discloses the Debtors' intent to effectively provide impermissible blanket releases to non-debtor third parties under the proposed Plan.  For example, the Disclosure Statement provides:

> all parties (including all holders of claims and/or interests) bound by the plan pursuant to § 1141(a) of the bankruptcy code will be permanently enjoined, on and after the effective date of the plan, from:
>
> (i)   commending or continuing in any manner any action or other proceeding of any kind against the debtors, the liquidating trust, the estate representative, the estates, the estates' assets, the trust estate, or assets of the trust estates with respect to any such claim or interest;
>
> (ii)  enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the debtors, the liquidating trust, the estate representative, the estates, the estates assets, the trust estate, or assets of the trust estate on account of any such claim or interest;
>
> (iii)  creating, perfecting, or enforcing any encumbrance of any kinds against the debtors, the liquidating trust, the estate representative, the estates, the estates' assets, the trust estate or the assets of the trust estate, or against the property or interests in property of the debtors, the liquidating trusts, estate representative, the estates, the trust estates on account of any such claim or interest;
>
> (iv)  asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the debtors, the trustee, the estates, the assets of the estates, the liquidating trust, the estate representative, the trust estate or the assets of the trust estate on account of any such claim or interest ...

Disclosure Statement, Article IX, Section I at 29.

Both the Disclosure Statement and the POR entirely fail to define "estate representative" or "trustee."  Providing sweeping releases to such poorly defined groups of non-debtors fails to provide creditors with sufficient information on which to consider the proposed POR.

Section 524(e) of the Bankruptcy Code states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e); *see also*, *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996) (non-debtor releases may not be allowed under any circumstances). The Disclosure Statement fails to discuss why such broad releases to third parties, including any non-debtors, such as estate representatives and trustees, are necessary.

Section 524(a)(2) of the Bankruptcy Code provides that discharge under the Code "operates as an injunction against the commencement or continuation of an action," but this section specifically limits this protection to the debtor. 11 U.S.C. § 524(a)(2). Moreover, as discussed above, because the Disclosure Statement improperly provides for the protection of non-debtors, it is also violative of section 524(e) of the Bankruptcy Code. The Disclosure Statement completely fails to inform creditors of the extraordinary nature of the injunction provision.

When read together, the release sections would provide sweeping relief from future claims to overly broad categories of persons and entities without any explanation of why they are needed or authorized. These provisions, if approved, could wipe out claims that parties may not even know they have.

Moreover, under ERISA, a blanket release of fiduciary breach claims is "void as against public policy." 29 U.S.C. § 1110(a). If PBGC becomes termination trustee of the Pension Plan, it may have claims — yet unknown — against present or former directors and officers of the Debtors or non-debtors for breach of fiduciary duty under ERISA, 29 U.S.C. § 1101-1114. Here, USA Commercial Mortgage, the sponsor of the Pension Plan, has appointed itself the sole trustee for the Pension Plan. Debtors, whose management was pushed out after allegations of

improprieties and very few of whose original employees remain, are in the extraordinary situation of being effectively managed and controlled by their bankruptcy attorneys and an outside financial advisor. These non-debtor individuals and entities are not only acting as independent advisors, they have effectively become the management of Debtors. The estate representative and trustee thus may have taken actions in a fiduciary capacity regarding the Pension Plan. At a minimum, the Disclosure Statement should include the following statement to clarify that the releases does not apply to any individuals or entities acting in the capacity of ERISA fiduciaries:

> Notwithstanding any provisions of the liquidating plan, nothing shall release any claim or claims of PBGC or any pension plan, currently or formerly sponsored by the Debtors against any person arising under 29 U.S.C. Sections 1104-1109 with respect to the pension plans.

**C.    Table indicating specified classes and summary of proposed treatment is not attached to the Disclosure Statement.**

PBGC objects that the Disclosure Statement does not even include information which it states it includes. The Disclosure Statement notes that it includes a "[t]able indicating each of the specified classes under the Plan and a brief summary of the proposed treatment for each class is attached hereto as *Exhibit 5*." Disclosure Statement, Article IX, Section C. However, no such table is attached to the Disclosure Statement. Instead, in place of a table at Exhibit 5, the Disclosure Statement includes an untitled pape which notes that Exhibit 5 "will be filed separately by no later than 10 days prior to the hearing on the Disclosure Statement." Here, the hearing on the Disclosure Statement is scheduled for November 13, 2006. Providing a section of the Disclosure Statement ten days prior to the hearing on the Disclosure Statement is insufficient where the deadline for objections to the Disclosure Statement - at least for PBGC - occurs weeks prior to that date. Disclosure Statement, Ex.5. PBGC reserves all rights concerning any document which purports to be a portion of the Disclosure Statement but which was not filed

with the Disclosure Statement. The Court should require that Debtors actually include all exhibits, tables, charts, attachments, and other information purported to be included in the Disclosure Statement and filed with sufficient time for all parties to review and object to such items prior to the hearing on the Disclosure Statement.

### III.  CONCLUSION

PBGC respectfully requests that the Court deny approval of the Disclosure Statement in its present form, or, alternatively, order the Debtors to amend the Disclosure Statement to provide adequate disclosure in accordance with the foregoing objections.

Dated: October 24, 2006

Respectfully Submitted,

/s/ Frank A. Anderson
Jeffrey B. Cohen, Chief Counsel
Israel Goldowitz, Deputy Chief Counsel
Karen Morris, Associate Chief Counsel
James Eggeman, Assistant Chief Counsel
Frank A. Anderson, Attorney,
D.C. Bar No. 478234
Erika E. Barnes, Attorney,
Cal. Bar No. 197309
PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
Tel: (202) 326-4020, ext. 3759
Fax: (202) 326-4112

Local Counsel:
Daniel G. Bogden
Nevada Bar No. 2137
United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Tel:  (702) 388-6336
Fax:  (702) 388-6787