1  AUGUST B. LANDIS, Assistant United States Trustee
   State Bar # IA PK9228                                   **E-Filed on October 24, 2006**
2  *augie.landis@usdoj.gov*
   **UNITED STATES DEPARTMENT OF JUSTICE**
3  Office of the United States Trustee
   300 Las Vegas Boulevard, So., Suite 4300
4  Las Vegas, Nevada 89101
   Telephone: (702) 388-6600 Attorney Ext. 235
5  Facsimile:  (702) 388-6658

6  Attorneys for the Acting United States Trustee
        SARA L. KISTLER
7
                 **UNITED STATES BANKRUPTCY COURT**
8
                       **DISTRICT OF NEVADA**
9
   In re:
10
   **USA Commercial Mortgage Company**
11       **06-10725 -- Lead Case**
                                              **Jointly Administered**
12 **USA Capital Realty Advisors, LLC**       Chapter 11 Cases
        06-10726                              Judge **Linda B. Riegle** Presiding
13
   **USA Capital Diversified Trust Deed Fund, LLC**  Date:   November 28, 2006
14       06-10727                             Time:   9:30 a.m.
15 **USA Capital First Trust Deed Fund, LLC**  Place:  Courtroom # 1
        06-10728
16                                            **Affecting:**
   **USA Securities, LLC**                    ☒ All Cases
17       06-10729              Debtors        **or Only:**
                                              ☐ USA Commercial Mortgage Company
18                                            ☐ USA Capital Realty Advisors, LLC
                                              ☐ USA Capital Diversified Trust Deed Fund,
19                                            LLC
                                              ☐ USA Capital First Trust Deed Fund, LLC
20                                            ☐ USA Securities, LLC

21       <u>**THE UNITED STATES TRUSTEE'S MOTION TO CONVERT CASES TO**</u>

22                  <u>**PROCEEDINGS UNDER CHAPTER 7**</u>

23 To the Honorable **LINDA B. RIEGLE**, United States Bankruptcy Judge:

24       The United States Trustee moves to convert these five separate but jointly administered

25 Chapter 11 cases to proceedings under Chapter 7 of the Bankruptcy Code.   During the pendency

26 of these cases, Debtors have generated income only from the collection of loans that existed pre-

27 petition, have not generated any income from post-petition operations, have failed to obtain

28 debtor-in-possession financing, have advised the Court of their intention to liquidate their loan

1  servicing operations and most solvent investment fund, and proved unable to successfully

2  negotiate and file a consensual plan approved by the official committees within the plan filing

3  exclusivity period established by 11 U.S.C. § 1121(b) as subsequently extended by orders of the

4  Court.   Cause exists for conversion to Chapter 7, as the ongoing expenses associated with

5  Debtors' efforts to liquidate estate assets through Chapter 11 proceedings constitute continuing

6  loss to or diminution of their estates.  The filing of a plan and other documents providing for

7  liquidation of Debtors' loan servicing operations and most solvent investment fund establish the

8  absence of any reasonable likelihood for rehabilitation of the Debtors.  This motion is supported

9  by the pleadings and papers comprising the official Court files in the five separate Chapter 11

10  cases identified in the caption, and the following Memorandum of Points and Authorities.

11  ### MEMORANDUM OF POINTS AND AUTHORITIES

12  ### JURISDICTION AND VENUE

13  1.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(a) and (b),

14  and 28 U.S.C. §§ 157(a) and (b)(1).

15  2.  This motion is premised upon 11 U.S.C. § 1112(b), and presents the Court with a core

16  proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

17  3.  Venue is appropriate in the District of Nevada pursuant to 28 U.S.C. § 1409(a).

18  ### FACTS

19  4.  On April 13, 2006, separate Chapter 11 bankruptcy petitions were filed in each of the

20  five cases identified in the caption.  As a result, there are five separate cases, five separate

21  debtors, and five separate bankruptcy estates before the Court as of the filing of this motion.

22  5.  Debtor USA Securities, LLC provided loan brokerage and sales services prior to

23  bankruptcy.  Pursuant to written resolutions and actions executed by USA Securities, LLC on

24  April 13, 2006, Thomas J. Allison of Mesirow Financial Interim Management, LLC, has served

25  as the manager of the company since it filed its bankruptcy petition.  All employees of USA

26  Securities, LLC were terminated upon the filing of these cases.  USA Securities, LLC has not

27  conducted any post-petition business operations, but has some insurance policies in place which

28  may provide coverage for certain claims arising from its pre-bankruptcy business operations.

6.  Debtor USA Capital Realty Advisors, LLC is the sole manager of, and purportedly provided management services for, Debtors USA Capital First Trust Deed Fund and USA Capital Diversified Trust Deed Fund.[1]  Pursuant to written resolutions and actions executed by USA Capital Realty Advisors, LLC on April 13, 2006, Thomas J. Allison of Mesirow Financial Interim Management, LLC, has served as the manager of the company since it filed its bankruptcy petition.

7.  Debtor USA Capital First Trust Deed Fund holds assets for the benefit of its equity security holders.  Its sole manager is USA Capital Realty Advisors, LLC, which is in turn managed by Thomas J. Allison of Mesirow Financial Interim Management, LLC.  USA Capital First Trust Deed Fund has no employees, and its portfolio consists of both performing and non-performing loans secured by full or fractional interests in deeds of trust.

8.  Debtor USA Capital Diversified Trust Deed Fund holds assets for the benefit of its equity security holders.  Its sole manager is USA Capital Realty Advisors, LLC, which is in turn managed by Thomas J. Allison of Mesirow Financial Interim Management, LLC.  It has no employees, and its portfolio consists largely of non-performing loans purportedly secured by full or fractional interests in deeds of trust, as well as a note receivable from a non-debtor entity, Ten-Ninety, Ltd., in the original principal amount of $58,374,918.81.

9.  Of the five separate Debtors, USA Commercial Mortgage Company is the only true operating entity.  Prior to bankruptcy, USA Commercial Mortgage Company was a commercial mortgage loan origination and servicing company that employed approximately 54 people, including 32 salaried employees, 17 contract or commissioned employees, and 5 hourly wage employees.  USA Commercial Mortgage Company proved unable to obtain debtor in possession financing, and has not originated any post-petition loans.  USA Commercial Mortgage

---

[1]Prior to the filing of these bankruptcy cases, the sole and managing member of USACapital Realty Advisors, LLC was the related non-debtor entity, USA Investment Partners, LLC.

Company's post-petition loan servicing income has been generated exclusively from collection of pre-petition loans.

10. On May 9, 2006, the Court entered its Order Regarding Joint Administration Without Substantive Consolidation, noting "the potential conflicts of interest among the Debtors." *See* Docket No. 184.

11. On September 15, 2006, Debtors filed their Joint Plan of Reorganization [Docket No. 1310]. The plan generally provides for the auction sale of all of the loan servicing assets of Debtor USA Commercial Mortgage Company, along with all of the assets held by Debtor USA Capital First Trust Deed Fund. The plan identifies SPCP Group, LLC as the Stalking Horse Bidder for the purchase of those assets at an opening cash bid of $46,500,000.00.

12. On September 22, 2006, as a predicate to confirmation of the plan, Debtors filed their Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC as Lead Bidder, and Approving Bid Procedures and Protections [Docket No. 1352].

13. Because USA Commercial Mortgage Company is the only operating entity among the five Debtors, if the sale procedures contemplated by the plan and related auction sale motion are approved and the attendant sale is completed, the Debtors' limited post-petition business operations will cease.

14. On October 3, 2006, USA Commercial Mortgage Company filed its Motion for Order Approving Retention Plan of Debtor's Remaining Employees [Docket No. 1429]. That motion reveals that USA Commercial Mortgage's employee base has declined from 54 people (32 salaried, 17 contract or commission, and 5 hourly wage) to 11 people, and that its Chief Operating Officer and Loan Manager have  resigned effective October 31, 2006.

15. On October 5, 2006, counsel for all of the Debtors filed a Motion to Exclude Debtors from Having to File Inter-Company Claims Against Each Other by the Bar Date, or Alternatively for the Immediate Appointment of Special Counsel to File and Pursue the Inter-Company Debtor Claims [Docket No. 1454]. In paragraph 6 of that motion, counsel for the Debtors openly discuss the presence of actual conflicts attendant to continued representation of their multiple clients, arising from "inter-company claims for things such as the diversion of principal

payments from loans, prepaid interest, mismanagement, breach of fiduciary duty, substantive

consolidation and the like."  Appointment of special counsel due to conflict of interest issues for

Debtors' counsel that have existed from the inception of these cases will add another layer to the

administrative expense burden borne by the Debtors' bankruptcy estates.

16.  The present status of  these cases is that:

a.    Debtors' liabilities outstrip their assets;

b.    Debtors' limited post-petition business operations will cease no later than
the date of the proposed auction sale;

c.    Debtors lack income, and have no legitimate prospect for continuing
income from a revenue-generating activity;

d.    Debtors lack capital and operating funds, as all efforts to obtain debtor-in-
possession financing have failed; and

e.    Debtors lack a sufficient employee base to continue meaningful business
operations.

## CONTROLLING STATUTORY PROVISIONS

17.  The United States Trustee's motion to convert these cases from proceedings under

Chapter 11 of the Bankruptcy Code to Chapter 7 is premised upon 11 U.S.C. § 1102(b).  That

section provides, in relevant part:

1112.  Conversion or dismissal

. . . . .

(b)(1)  Except as provided in paragraph (2) of this subsection, subsection

(c) of this section, and 1104(a)(3), on request of a party ain

interest, and after notice and a hearing, absent unusual

circumstances specifically identified by the court that establish that

the requested conversion or dismissal  is not in the best interests of

creditors and the estate, the court ***shall*** convert a case under this

chapter to a case under chapter 7 or dismiss a case under this

chapter, whichever is in the best interests of creditors and the

estate, if the movant establishes cause. [emphasis added]

. . . . .

(4)     For purposes of this subsection, the term "cause" includes - -

(A)     substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

18.     The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") modified the language of 11 U.S.C. § 1112(b) to make conversion or dismissal of a Chapter 11 case to Chapter 7 mandatory, not permissive, when "cause" is established. *See* 11 U.S.C. § 1112(b)(1), *supra* (court "shall" convert or dismiss a case if "cause" is established by the movant).[2]  The existence of "cause" for conversion or dismissal in the context of 11 U.S.C. § 1112(b)(4)(A) cannot be cured.  Motions alleging that "cause" for conversion or dismissal exists under 11 U.S.C. § 1112(b)(4)(A) are therefore expressly excepted from the scope of 11 U.S.C. § 1112(b)(2).  *See* 11 U.S.C. § 1112(b)(2)(B)(party seeking to avoid conversion or dismissal must establish "an act or omission of the debtor other than under paragraph (4)(A)[.]")

19.     The purpose of 11 U.S.C. § 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." In re Loop Corp., 379 F.3d 511, 516 (8th Cir. 2004), *cert. denied,* 543 U.S. 1055, 125 S. Ct. 915, 160 L. Ed. 2d 778 (2005), *citing* In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995).  Cause for conversion exists in these cases.

---

[2]Prior to the enactment of BAPCPA, the text of 11 U.S.C. § 1112(b) read:

1112.  Conversion or dismissal
. . . . .
(b)     Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court ***may*** convert a case under this chapter to a case under chapter 7 of this title or ***may*** dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause [emphasis added][.]

# ANALYSIS AND ARGUMENT

## I.

### The Debtors' Estates are Suffering Substantial and Continuing Loss and Diminution Through These Chapter 11 Proceedings.

20.    During the pendency of these cases, Debtors have generated income only from the collection of loans that existed pre-petition, have not generated any income from post-petition operations, and have failed to obtain debtor-in-possession financing.  While Debtors' pre-petition loan pool available for collection is shrinking, administrative expenses continue to accrue.

21.    The plan filed by Debtors in this case reveals that Debtors are in the process of liquidating the loan servicing operations of the only operating entity among the debtors (USA Commercial Mortgage Company), as well as the most solvent investment fund (USA Capital First Trust Deed Fund).  In the process, Debtors have continued to incur substantial administrative expenses, and have consistently generated negative cash flow.

22.    In determining whether conversion is appropriate under 11 U.S.C. § 1112(b), "[u]nder the interpretation of 11 U.S.C. § 1112(b)(1) consistently used in bankruptcy courts, [a] negative cash flow situation alone is sufficient to establish 'continuing loss or diminution of the estate.'" In re Loop, 379 F.3d at 515-16, *citing* In re Schriock Constr., Inc., 167 B.R. 569, 575 (Bankr. D.N.D. 1994)(continuing loss to or diminution of the estate can be established by showing that debtor incurred continuing losses or maintained negative cash flow after entry of the order for relief); Matter of 3868-70 White Plains Road, Inc., 28 B.R. 515, 518 (Bankr. S.D.N.Y. 1983)(continuing loss or diminution illustrated by debtor's continual negative cash flow); *see also* 7 ALAN N. RESNICK ET AL. COLLIER ON BANKRUPTCY ¶ 1112.04[5][a][I] (15th ed. 2004)("If the debtor is operating with a sustained negative cash flow after the entry of the order for relief, this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss to . . . the estate.'").

23.    Where, as here, "a debtor . . . has ceased business operations and liquidated virtually all of its assets, any negative cash flow - including that resulting only from

administrative expenses - effectively comes straight from the pockets of the creditors.  This is enough to satisfy the first element of § 1112(b)(1)."  Loop, 379 F.3d at 516, *citing* In re Citi-Toledo Partners, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994)(first requirement of § 1112(b)(1) satisfied because administrative expenses eroded the position of the estate's creditors and diminished the value of the estate).

24.     The Debtors in these jointly administered cases have effectively ceased ongoing business operations, and will certainly do so upon the sale of the loan servicing assets of USA Commercial Mortgage Company along with the assets held by USA Capital First Trust Deed Fund.  That fact, combined with their negative post-petition cash flow, establishes that the Debtors are indeed experiencing loss to or diminution of their bankruptcy estates, satisfying the first prerequisite to conversion under 11 U.S.C. § 1112(b)(1).

## II.

### There is No Reasonable Likelihood of Rehabilitating Debtors' Business Through These Chapter 11 Proceedings.

25.     In determining whether conversion is warranted under 11 U.S.C. § 1112(b), courts "have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."  Loop, 379 F.3d at 516, *citing* In re Gonic Realty Trust, 909 F.2d 624, 627 (1st Cir. 1990)("With no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business."); In re The Ledges Apartments, 58 B.R. 84, 87 (Bankr. D. Vt. 1986)("Reorganization encompasses rehabilitation and may contemplate liquidation.  Rehabilitation, on the other hand, may not include liquidation."); In re Wright Air Lines, Inc., 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985)("Rehabilitation as used in 11 U.S.C. Section 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis.").

26.     A reasonable likelihood of rehabilitation is lacking where, for example, a debtor lacks income, operating funds, employees, capital, or a continuing revenue-generating activity.  *See, e.g.,* In re Johnston, 149 B.R. 158, 160 (9th Cir. BAP 1992)(lack of income); In re Great American Pyramid Joint Venture, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992)(lack of

operating funds); <u>In re Citi-Toledo Partners</u>, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994)(lack of employees, capital, and revenue generation).

27.    As noted previously, Debtors have generated income only from the collection of loans that existed pre-petition, have not generated any income from post-petition operations, and have failed to obtain debtor-in-possession financing.  Their plan provides for the liquidation of the loan servicing operations of the only operating entity among the Debtors (USA Commercial Mortgage Company), as well as the most solvent investment fund (USA Capital First Trust Deed Fund).  Their employee base has shrunk by approximately 80% post-petition.  Under the facts of this case, there is simply no reasonable likelihood of rehabilitation of Debtors' business operations.  Conversion to Chapter 7 is therefore appropriate under 11 U.S.C. § 1112(b)(1).

### III.

### <u>The Debtors' Chapter 11 Cases Should Be Converted to Chapter 7 Proceedings Now</u>.

28.    Courts have recognized that "[t]he very purpose of 11 U.S.C. § 1112(b) is to cut short the plan and confirmation process where it is pointless."  <u>Loop</u>, 379 F.3d at 519, *citing* <u>Matter of Woodbrook Assocs.</u>, 19 F.3d 312, 317 (7th Cir. 1994).

29.    Where a court finds that no reasonable probability of reorganization exists, it need not delay conversion.  <u>In re Johnston</u>, 149 B.R. 158, 162 (9th Cir. BAP 1992).

30.    Because the ongoing expenses associated with Debtors' attempts to liquidate the assets of their estates through Chapter 11 proceedings constitute continuing loss to or diminution of the estate, and liquidation of Debtors' loan servicing operations and most solvent investment fund reveal that there is an absence of any reasonable likelihood rehabilitation of the Debtors, these jointly administered cases should be converted to Chapter 7 proceedings now.

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order converting the five jointly administered Chapter 11 cases identified in the caption to

1  proceedings under Chapter 7 of the Bankruptcy Code, and granting such other and additional

2  relief as is just and equitable.

3                                Respectfully submitted,

4                                **SARA L. KISTLER**
                                 **ACTING UNITED STATES TRUSTEE**
5                                **REGION 17**

6

7                                By: _/s/ August B. Landis_
                                     August B. Landis, Assistant United States Trustee
                                     United States Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28