ELECTRONICALLY FILED
October 27, 2006

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
ANDREW M. PARLEN
(CA State Bar No. 230429),
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788
Email:    fmerola@stutman.com
          ekarasik@stutman.com
          aparlen@stutman.com

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email:    jshea@sheacarlyon.com
          ccarlyon@sheacarlyon.com
          ssherman@sheacarlyon.com

Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>        Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>        Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>        Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>        Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>        Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br><br>☒ All Debtors<br>☐ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☐ USA First Trust Deed Fund, LLC | Date:  October 30, 2006<br>Time:  9:30 a.m. |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC TO UNITED STATES TRUSTEE'S MOTION TO CONVERT CASES TO PROCEEDINGS UNDER CHAPTER 7 (AFFECTS ALL DEBTORS)**

404393v2

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

In response to the "United States Trustee's Motion to Convert Cases to Proceedings Under Chapter 7" (the "Motion to Convert") filed by the United States Trustee (the "UST") on October 24, 2006, the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") hereby submits this opposition (the "Opposition") the Motion to Convert.[1]  As set forth below, the Motion to Convert is an ill-timed motion without any legal basis whatsoever that, if granted, would wreak havoc on the estates of the debtors (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") just as the Debtors and the four official committees appointed in the Chapter 11 Cases (the "Committees") are on the verge of finalizing a consensual chapter 11 liquidating plan that will maximize value for all estates.  In support of this Opposition, the FTDF Committee respectfully represents as follows:

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTS

On September 11, 2006, the Debtors and SPCP Group, LLC ("Silver Point") executed an offer letter (the "Offer Letter") that provided the basis for the Debtors' exit from the Chapter 11 Cases.  Pursuant to the Offer Letter, Silver Point offered to purchase substantially all of the assets of USA Capital First Trust Deed Fund, LLC (the "FTDF") and the rights to service the loan portfolio of USA Commercial Mortgage Company ("USACM"), which portfolio totals approximately $750 million, subject to an auction and overbid process (the "Auction").  The sale of these assets (the "Property") to Silver Point provides the mechanism for the transfer of the servicing operations of USACM to a qualified loan servicer, which operations are presently being performed by professional interim management at an exorbitant cost to all of the Debtors' estates.

---

[1] This Opposition also is in response to the joinder to the Motion to Convert filed by The Richard and Sheila J. McKnight 2000 Family Trust and Richard McKnight SEP-IRA [docket no. 1675].

404393v2                               2

1. On September 22, 2006, the Debtors filed the "Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC, as Lead Bidder, and Approving Bid Procedures and Protections" (the "Bid Procedures Motion"), by which the Debtors sought to schedule an auction and establish bid procedures and buyer protections for the sale of the Property. The bid procedures and buyer protections proposed by the Bid Procedures Motion were heavily negotiated among the Debtors, Silver Point, and the Committees.

On October 19, 2006, the Debtors and Silver Point executed an asset purchase agreement (the "APA") based on the Offer Letter, which the Debtors then filed. On the same day, the Court held an initial hearing on the Bid Procedures Motion, at which the Court expressed serious concern about the requested relief primarily due to a lack of evidence in the record. The Court continued the hearing six (6) days until October 25, 2006.

Prior to the continued hearing on October 25, 2006, the Debtors, the Committees, and Silver Point submitted significant uncontroverted evidence in support of the Bid Procedures Motion. Notably, the UST neither objected to the Bid Procedures Motion at the original hearing nor at the continued hearing. The Court orally granted the Bid Procedures Motion at the October 25, 2006 hearing, and the proposed order and amended APA will be submitted to the Court on Friday, October 27, 2006.

Simultaneous with the sale process preparation, the Committees have spent nearly three months negotiating a term sheet outlining the terms of a chapter 11 plan (the "Joint Plan Term Sheet"). The Joint Plan Term Sheet represents a consensual resolution of myriad intercompany claims and disputes. The Committees are on the verge of reaching a final agreement, with only a handful of issues left to resolve, that will result in a joint plan of reorganization that will maximize value for all of the Debtors, their estates, and those parties who have directly lent funds to borrowers through USACM (the "Direct Lenders"). The Joint Plan Term Sheet and the advanced state of these negotiations were discussed at length in the pleadings filed in support of the continued hearing on the Bid Procedures Motion.

Nevertheless, on the eve of the continued hearing on the Bid Procedures Motion after the submission of the multitude of pleadings and evidence and with no prior discussions

1  with or notice to the Debtors or the Committees, the UST filed the Motion to Convert. The
2  FTDF Committee has no idea as to what possessed the UST to take such action at this time in
3  these cases. Rather than support the joint, negotiated process that is geared to maximizing the
4  value for all constituents, the UST chose to file a motion that would likely damage the sale
5  process by chilling bids and potentially threatening the viability of Silver Point's stalking horse
6  bid. Moreover, the UST apparently believes that five (5) warring estates, with no cohesive
7  direction and whose disputes will strip all value for creditors, investors, and Direct Lenders alike
8  is better than the alternative of a jointly negotiated resolution through a liquidating chapter 11
9  plan.

## II.   ARGUMENT

**Conversion of a Chapter 11 Case to Chapter 7 is an Extreme Remedy that is Not Warranted in these Chapter 11 Cases.**

The Motion argues that the Court must convert the Chapter 11 Cases to cases under chapter 7 of the bankruptcy code pursuant to 11 U.S.C. § 1112(b)(1) because the UST has established "cause" as defined by 11 U.S.C. §1112(b)(4)(a). Specifically, the Motion asserts that because the Debtors' estates are experiencing substantial and continuing loss and diminution and have no reasonable likelihood of being rehabilitated, the Chapter 11 Cases must be converted to proceedings under chapter 7. In so arguing, however, the Motion misapplies section 1112(b) by ignoring facts of these cases and relies on the false premises that liquidating plans are not acceptable resolutions to chapter 11 cases.

A.   **The Motion to Convert Should Be Denied Because the UST Has Not Submitted any Evidence Showing Cause to Convert the Chapter 11 Cases to Chapter 7.**

Conversion of a chapter 11 case to chapter 7 is an extreme remedy that is not favored by the courts. For this reason, courts have recognized that "[c]onversion or dismissal of a Chapter 11 case is a drastic measure and the burden is on the movant to prove it is warranted and not pre-mature." See In re Sal Caruso Cheese, Inc., 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989); In re Lizeric Realty Corp., 188 B.R. 499, 503-04 (Bankr. S.D.N.Y. 1995). Because dismissal or conversion under Bankruptcy Code section 1112(b) is an extreme remedy, the courts have imposed the burden of proof squarely on the moving party. See First Jersey Nat'l Bank v.

1  Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991); In re Economy Cab & Tool Co., Inc., 44
2  B.R. 721, 724 (Bankr. D. Minn. 1983).
3      First and foremost, the UST has failed to meet its burden because the UST has not
4  submitted one iota of evidence in support of the Motion to Convert.  On this ground alone, the
5  Motion to Convert should be denied without any further consideration.

6  **B.**  **The Motion to Convert Should Be Denied Because Liquidating Chapter 11 Plans are Authorized.**
7

8      Even if the UST had submitted evidence in support of the Motion to Convert, the
9  grounds cited by the UST for cause, "continuing loss to or diminution of the estate" and "absence
10 of a reasonable likelihood of rehabilitation," fail to provide the necessary legal basis for such
11 relief since liquidating plans of reorganization (such as the plan contemplated by the Joint Plan
12 Term Sheet in these cases) are authorized and common-place in chapter 11 cases.
13     As noted above, the Motion to Convert is based on the false premise that
14 liquidation is not a permitted resolution of a chapter 11 bankruptcy case.  Nothing can be further
15 from the truth.  It is black letter law that a chapter 11 plan may provide for the orderly liquidation
16 of a debtor's assets.  In fact, Bankruptcy Code section 1123(b)(4) specifically authorizes debtors
17 to file and confirm liquidating plans and to remain in chapter 11 for that purpose, providing that
18 "a plan may… provide for the sale of all or substantially all of the property of the estate, and the
19 distribution of proceeds of such sale among holders of clams or interests."  See also In re
20 Klein/Ray Broad., 100 B.R. 509, 511 (9th Cir. BAP 1987) (holding that the Bankruptcy Code
21 contemplates that a corporation may liquidate in chapter 11); In re GPA Tech. Consultants, Inc.,
22 106 B.R. 139, 141-42 (Bankr. S.D. Ohio 1989); In re Schlangen, 91 B.R. 834, 838 (Bankr. N.D.
23 Ill. 1988) ("Liquidation is a legitimate purpose of chapter 11 case and a case should not be
24 dismissed simply because the Debtor contemplates a liquidating plan."); In re Naron & Wagner,
25 88 B.R. 85, 89 (Bankr. D. Md. 1988).  The mere fact that a debtor is no longer operating or will
26 not reorganize its business does not constitute "cause" for converting or dismissing a chapter 11
27 case.  See Toibb v. Radloff, 501 U.S. 157, 161, 111 S.Ct. 2197 (1991) (holding that the
28 Bankruptcy Code contains no ongoing business requirement to be a chapter 11 debtor); In re

404393v2                                        5

1  Jartran, Inc., 886 F.2d 859, 886-89 (7th Cir. 1989) (stating that under certain circumstances, a
2  liquidation in chapter 11 may be preferable to a chapter 7 liquidation).
3              In many instances, liquidation in chapter 11 is preferable to converting the case to
4  a case under chapter 7 of the Bankruptcy Code.  As one court found:

> In certain instances, a chapter 11 liquidating plan is preferable to a
> chapter 7 proceeding because the disposition of assets will be
> conducted in a less expensive, swifter and more orderly manner by
> a debtor in possession, as opposed to a trustee, who, while
> disinterested, is still a third party unfamiliar with the property of
> the estate.

9  In re Copy Crafters Quicksprint, Inc., 92 B.R. 973, 985-86 (Bankr. N.D.N.Y. 1988); In re
10 Denrose Diamond, 49 B.R. 754, 757 (Bankr. S.D.N.Y. 1985) (holding that conversion should not
11 be ordered when liquidation would proceed more expeditiously and less expensively under the
12 control of the debtor or chapter 11 trustee).
13             The forthcoming plan based on the Joint Plan Term Sheet is a prime example of a
14 chapter 11 liquidating plan that is preferable to a chapter 7 proceeding.  The plan, which has
15 been painstakingly negotiated by the Debtors and the Committees so as to maximize the return to
16 creditors and interest holders, contemplates effecting a sale of the Property and the settlement of
17 intercompany claims.  By taking advantage of certain synergies among the Debtors' assets and
18 adhering to an aggressive timeline, the plan's asset sale and global settlement will result in a
19 higher and more timely recovery for creditors and FTDF members, while Direct Lenders will be
20 ensured that their loans will continue to be serviced by a qualified entity and members of USA
21 Capital Diversified Trust Deed Fund, LLC may focus their efforts of their ongoing collection
22 efforts without any distractions from the administration of the Chapter 11 Cases.

**C.    Even if the UST Had Shown Cause, the Court May Deny the Motion to Convert.**

24             Though the UST would have the Court believe otherwise, even if the UST had
25 shown cause, the Court has discretion in deciding whether to convert a chapter 11 case: under
26 section 1112(b)(1), as revised by the Bankruptcy Abuse Prevention and Consumer Protection
27 Act of 2005, the Court "must convert or dismiss the case if the movant establishes cause unless
28 the court determines that unusual circumstances exists [sic] establishing that conversion or

404393v2                                    6

1  dismissal would not be in the best interests of creditors and the estate." 7 Collier on Bankruptcy,
2  ¶ 1112.04 (15th ed. revised 2006) (emphasis added).
3        Here, there are obvious circumstances that mitigate any showing of cause to
4  convert the Chapter 11 Cases to chapter 7. First, as is evidenced by the Offer Letter, the APA,
5  and forthcoming order granting the Bid Procedures Motion, the Debtors and the Committees
6  have made substantial progress in negotiating the sale of Property. The sale process is now
7  moving into its crucial final stage, in which potential bidders will be determining if and how
8  much they will be bidding for the Property. To convert the Chapter 11 Cases to chapter 7 at this
9  time would irrevocably damage the sale process. Not only would bidding be chilled, but Silver
10 Point's stalking horse bid may also be jeopardized. Any chilling of bidding would be harmful to
11 the Debtors' estates, while the loss of the stalking horse bid could prove disastrous. The Motion
12 to Convert should be denied so that the sale process may proceed unfettered to maximize value
13 for the estates and Direct Lenders.
14       Furthermore, converting the Chapter 11 Cases to chapter 7 would undermine the
15 joint plan process that the Debtors and Committees have worked so diligently to implement. As
16 explained in great detail in the "FTDF Committee Statement in Support of Motion for Order
17 Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC, as Lead
18 Bidder, and Approving Bid Procedures and Protections" (the "Bid Procedures Statement"), the
19 Debtors and the Committees have worked together to reach a global resolution of the Chapter 11
20 Cases that will be incorporated into a consensual chapter 11 liquidating plan. While a final
21 version of such plan has not yet been filed, the Debtors and the Committees are on the cusp of
22 resolving certain final issues. As soon as those issues are resolved, an amended plan will be filed
23 and the Debtors will move into the final stages of the Chapter 11 Cases in accordance with the
24 aggressive timeline detailed in the Bid Procedures Statement. As this approach maximizes the
25 value of the Debtors' estates by selling the Property to the highest bidder, settling intercompany
26 claims, and ending the Chapter 11 Cases and their administrative burden in a timely fashion, the
27 Court should find that these circumstances establish that conversion of the Chapter 11 Cases to
28

404393v2                                         7

1  chapter 7 are not in the best interests of the Debtors' estates, their creditors, and their equity
2  security holders.
3  In contrast, converting the Chapter 11 Cases to chapter 7 would harm the Debtors'
4  estates by disrupting the sale process and creating new obstacles to ending these bankruptcy
5  proceedings.  In a chapter 7 setting, a chapter 7 trustee would need to be employed for each of
6  the five Debtors.  Far from reducing administrative expenses, chapter 7 trustees would need to
7  expend time and effort familiarizing themselves with the state of the Debtors affairs and planning
8  a liquidation strategy.  It is highly unlikely that a chapter 7 liquidation could be accomplished
9  more quickly than the sale/plan process described above.  Moreover, conversion of the Chapter
10  11 Cases to chapter 7 would be highly disruptive to the sale of the Property.  As set forth in the
11  Bid Procedures Statement, the FTDF Committee believes that any substantial delay of the
12  Auction, such as the delay conversion would cause, will severely chill the bidding process.
13  Additionally, liquidating the Debtors' assets in a piecemeal fashion, as is likely to occur in
14  chapter 7, will make it much more difficult for potential purchasers to capitalize on the synergies
15  that exist in purchasing the Property in one package.  And, because under chapter 7 the Debtors'
16  estates simply will be liquidated, the numerous intercompany claims that the Debtors and
17  Committees anticipate will be resolved pursuant to a plan will have to be litigated.  Ultimately,
18  therefore, converting the Chapter 11 Cases to chapter 7 will do nothing but harm the Debtors's
19  estates, creditors, and equity security holders as conversion promises to prolong the Debtors'
20  bankruptcies, disrupt the sale of the Property, and set the stage for numerous intercompany
21  disputes.
22  **WHEREFORE,** the FTDF Committee requests that Court deny the Motion to
23  Convert.
24
25  Respectfully submitted this 27th day of October, 2006.
26
27  /s/ *Andrew M. Parlen*
28  FRANK A. MEROLA (CA State Bar No. 136934),
    EVE H. KARASIK (CA State Bar No. 155356), and
    ANDREW M. PARLEN (CA State Bar No. 230429), Members of

404393v2                                  8

1  STUTMAN, TREISTER & GLATT, P.C.
   1901 Avenue of the Stars, 12th Floor
2  Los Angeles, CA  90067
   Telephone:  (310) 228-5600
3

4  and

5  CANDACE C. CARLYON
   Shea & Carlyon, Ltd.
6  233 S. Fourth Street, Suite 200
7  Las Vegas, NV  89101
   Telephone:  (702) 471-7432
8  COUNSEL FOR THE
   OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
9  OF USA CAPITAL FIRST TRUST DEED FUND, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

404393v2                            9