Annette W. Jarvis, Utah Bar No. 1649
Douglas M. Monson, Utah Bar No. 2293
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors

**E-FILED ON OCTOBER 27, 2006**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☒ USA First Trust Deed Fund, LLC | Date of Hearing: October 30, 2006<br>Time of Hearing: 9:30 a.m. |

1

Marlton Square 2nd Subordination & General Forbearance

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**REPLY BRIEF IN SUPPORT OF MOTION TO AUTHORIZE DEBTOR USA COMMERCIAL MORTGAGE COMPANY AS LOAN SERVICER TO APPROVE LOAN MODIFICATION FOR PALM HARBOR ONE LOAN, TO PROVIDE THE PREVIOUSLY AUTHORIZED SUBORDINATION OF THE MARLTON SQUARE 2ND LOAN IN CONNECTION WITH THE PAYOFF OF THE MARLTON SQUARE 1ST LOAN, TO AUTHORIZE A SHORT-TERM FORBEARANCE FOR THE MARLTON SQUARE 1ST LOAN, AND TO GENERALLY AUTHORIZE SHORT-TERM LOAN FORBEARANCES AND FULL RELEASES AND RECONVEYANCES FOR LOANS PAID OFF IN FULL [AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC]**

Debtor in Possession USA COMMERCIAL MORTGAGE COMPANY ("USACM" or "Debtor"), hereby files its Reply Brief in support of the "Motion To Authorize Debtor USA Commercial Mortgage Company as Loan Servicer to Approve Loan Modification for Palm Harbor One Loan, to Provide the Previously Authorized Subordination of the Marlton Square 2nd Loan in Connection with the Payoff of the Marlton Square 1st Loan, to Authorize a Short-Term Forbearance for the Marlton Square 1st Loan, and to Generally Authorize Short-Term Loan Forbearances and Full Releases and Reconveyances for Loans Paid Off in Full" (the "Motion"), and also in reply to the objections to the Motion that have been filed.

## INTRODUCTION

The Motion was filed by USACM in order to seek Court approval (to the extent that the following are not transactions in the ordinary course of business) for USACM to do the following:

A.   On behalf of the Direct Lenders for the loan on the Palm Harbor One Project (the "Palm Harbor One Loan"), to modify the Palm Harbor One Loan (the "Loan Modification") to reduce the minimum sales prices (and corresponding partial release prices) for the condominium units for the Palm Harbor One Project by 20%. The Loan Modification has been proposed by Borrower Palm Harbor One, LLC, a Florida limited liability company ("Palm Harbor One").

B.   On behalf of the Direct Lenders for the Marlton Square 2nd Loan (the "Marlton Square 2nd Loan"), to execute the necessary documentation to put into effect the previously authorized subordination (the "Subordination") of the Marlton Square 2nd Loan to a new development or construction loan for the Marlton Square Project, which is located in Los Angeles, California. The Subordination will occur at the same time that the Marlton Square 1st Loan is paid

1  in full, which is scheduled to occur on or before November 19, 2006.  Borrower MS Acquisition
2  Company, LLC, ("MS Acquisition") has requested that USACM confirm that it is authorized to
3  provide the Subordination on behalf of the Direct Lenders for the Marlton Square 2nd Loan.  The
4  Marlton Square 2nd Loan is secured by a second priority lien on the Marlton Square Project.

      C.      To forbear from exercising collection remedies against the Marlton Square 1st Loan, which matured on September 19, 2006, until November 19, 2006, when Borrower MS Acquisition has promised that the Marlton Square 1st Loan will be paid in full through a refinance of the Marlton Square 1st Loan, and to grant a full reconveyance of the trust deed securing the Marlton Square 1st Loan in connection with such refinance.

      D.      To agree to short-term forbearances for other Loans being serviced by USACM and to provide full releases and reconveyances for Loans that are being paid in full, whether through a sale of the underlying collateral or through the refinancing of the Loan, consistent with the terms of the Loan Servicing Agreements.

It is USACM's business judgment that all four of these actions are in the best interests of the Debtors and the affected Direct Lenders and are prudent actions that should be taken to enhance the likelihood of the payoff in full of the Palm Harbor One Loan and the Marlton Square 1st Loan and to honor and carry out the contractual agreements of the Marlton Square 2nd Loan Direct Lenders to subordinate the Marlton Square 2nd Loan at the time that the Marlton Square 1st Loan is paid in full through a refinance.

**I.    REPLY TO OBJECTION BY OFFICIAL EQUITY COMMITTEE OF FIRST TRUST DEED FUND**

On October 23, 2006, the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") filed its Limited Objection to the Motion (Docket No. 1629).  First, while the FTDF Committee recognizes that authorizing USACM to agree to forbearances on loans being serviced by USACM may benefit the Debtors' estates, the FTDF Committee objects that the term "short-term" forbearance is too open ended.  The FTDF Committee recommends that USACM be authorized pursuant to the Motion to agree to forbearances for a finite limit, such as 60 days, without obtaining further Court approval.  In

3

Marlton Square 2nd Subordination & General Forbearance

1  response, USACM requests that it be authorized to agree to forbearances not to exceed 90 days
2  without obtaining further Court approval.
3       Second, the FTDF Committee is concerned that if USACM takes the actions requested in
4  the Motion, that USACM might unintentionally breach the Offer Letter and the Asset Purchase
5  Agreement with SPCP Group, LLC ("Silver Point").  USACM does not believe that the actions
6  requested in the Motion would breach the Offer Letter or the Asset Purchase Agreement, but in an
7  abundance of caution, USACM has forwarded the Motion and accompanying documentation to
8  Silver Point and requested Silver Point's approval.  If Silver Point's approval is not received prior
9  to the entry of the Order approving the Motion, again, in an abundance of caution, USACM will
10 continue to request Silver Point's approval and will not move forward absent such approval or
11 further Court order.

**II.   REPLY TO CONDITIONAL OBJECTION BY THE MACDONALD CENTER FOR THE ARTS AND HUMANITIES**

14 On October 23, 2006, the MacDonald Center for the Arts and Humanities (the
15 "MacDonald Center") filed its Conditional Objection to the Motion (Docket No. 1632).  The
16 MacDonald Center is a Direct Lender for $525,000 in the Marlton Square 1st Loan.  The
17 MacDonald Center's Conditional Objection states:  "Although MacDonald does not object to the
18 relief sought in the Motion, the Motion fails to address disbursement to the direct lenders of the
19 proceeds from the anticipated loan payoff in the amount of $33,553,254.20."  USACM's general
20 authorization to disburse to Direct Lenders the proceeds from loan payoffs on all loans being
21 serviced by USACM is addressed by other Orders of this Court, and does not need to be
22 specifically included in the Order approving the Motion.

**III.  REPLY TO RESPONSE TO MOTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF USA COMMERCIAL MORTGAGE COMPANY**

25 On October 24, 2006, the Official Committee of Unsecured Creditors of USA Commercial
26 Mortgage Company (the "UCC Committee") filed its Response to the Motion (Docket No. 1649).
27 The UCC Committee does not object to the relief requested in the Motion, but only questions why
28 default interest was not included in the estimated payoff amount of $33,553,254.20 for the

4
Marlton Square 2nd Subordination & General Forbearance

1  Marlton Square 1st Loan. As stated in the Motion, this estimated payoff amount is not an official
2  payoff statement, but was included in the Motion only to apprise parties in interest of the size of
3  the Marlton Square 1st Loan that is anticipated will be paid in full as of November 15, 2006.
4  USACM has reserved all of its rights under the Marlton Square 1st Loan, including the right to
5  claim default interest on the Marlton Square 1st Loan retroactive to the first event of default on the
6  Marlton Square 1st Loan.  See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶ 27.
7  USACM will recalculate the payoff statement at the time of closing and will include all applicable
8  default interest in accordance with the loan documents for the Marlton Square 1st Loan.

**IV.    REPLY TO OPPOSITION BY OFFICIAL COMMITTEE OF DIRECT LENDERS**

On October 24, 2006, the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Direct Lenders Committee") filed its Opposition to the Motion (Docket No. 1653).

**A.    Direct Lenders Committee General Objection to Notice of the Motion.**

The Direct Lenders Committee first objects by stating: "In the Motion, USACM states that it has not provided notice of any kind to the Direct Lenders involved in the Marlton Square 2nd Loan or requested consent of the Direct Lenders involved in the Marlton Square 2nd Loan for the requested relief USACM seeks." Direct Lenders Committee Opposition, p. 3, ¶ A(4). While it is true that USACM did not send to the Direct Lenders for the Marlton Square 1st Loan and Marlton Square 2nd Loan the three business days consent notice contemplated by Section 2(e) of the Loan Servicing Agreements, it is not true that no notice was given to these Direct Lenders. This Court has previously ordered that notice be given to any party directly affected by a motion filed with this Court. Consistent with this Court's order, USACM directed that copies of the Motion (Docket No. 1434), the related Declaration of Thomas J. Allison (Docket No. 1435), and the related Notice of Hearing for the Motion (Docket No. 1448) be served upon all of the Direct Lenders for the Palm Harbor One Loan, the Marlton Square 1st Loan, and the Marlton Square 2nd Loan.

On October 13, 2006, BMC Group, Inc., the Claims and Noticing Agent for the Debtors, filed its Certificate of Mailing (Docket No. 1531), certifying that the Motion (Docket No. 1434),

the related Declaration of Thomas J. Allison (Docket No. 1435), and the Notice of Hearing for the Motion (Docket No. 1448) were served on October 5, 2006, to the 984 parties listed in the Certificate of Mailing.  These parties included counsel for the FTDF Committee, the 309 Direct Lenders for the Palm Harbor One Loan, the 272 Direct Lenders for the Marlton Square 1st Loan, and the 108 Direct Lenders for the Marlton Square 2nd Loan, as well as the parties on the limited mailing matrix for these bankruptcy cases.  Therefore, the necessary notice of their opportunity to object and be heard has been given to all of the affected Direct Lenders, and none objected.

As outlined above, the MacDonald Center, which is a Direct Lender in the Marlton Square 1st Loan, did file a Conditional Objection to the Motion.  However, the MacDonald Center did not object to the forbearance authority for the Marlton Square 1st Loan requested in the Motion, but only requested that the Order approving the Motion include specific authorization for disbursement of the loan payment proceeds to the Direct Lenders.  As outlined below, the Canepa Group also filed a Joinder to the Opposition filed by the Direct Lenders Committee; however, the Canepa Group is not a Direct Lender in the Marlton Square 1st Loan, the Marlton Square 2nd Loan, or the Palm Harbor One Loan.  Canepa Group Joinder, p. 2, footnote 2.  Although the directly affected Direct Lenders for the Marlton Square 1st Loan, the Marlton Square 2nd Loan, and the Palm Harbor One Loan received notice of the Motion (for a much longer period of time than the three business days notice contemplated by Section 2(e) of the Loan Servicing Agreements) and an opportunity to object, none of these directly affected Direct Lenders have objected or requested to be heard.

**B.    Palm Harbor One Loan Modification Objections.**

The Direct Lenders Committee also objects to the "three-day negative notice set forth in Section 2(e) of the Loan Servicing Agreement to the Direct Lenders on the Palm Harbor One Loan."  Direct Lenders Committee Opposition, p. 4, ¶ B(5).  The Direct Lenders Committee acknowledges that the language of Section 2(e) of the Loan Servicing Agreements authorize USACM to send out the "three-day negative notice" in connection with the modification of a loan serviced by USACM.  However, the Direct Lenders Committee argues that "the intervention of USACM's bankruptcy and the corresponding confusion it has caused among the Direct Lenders

6

Marlton Square 2nd Subordination & General Forbearance

(through no fault of the Direct Lenders), along with the minimal information available to the Direct Lenders about the status of their respective loans, requires that USACM provide more complete disclosures to the Direct Lenders and that USACM request affirmative participation and consent (rather than the silent consent) for any loan modifications." Direct Lenders Committee Opposition, pp. 4-5, ¶ B(6).

USACM does not agree that the "three-day negative notice" no longer applies to the Direct Lenders, who agreed to these provisions when they signed their Loan Servicing Agreements. USACM satisfied its contractual obligations to the Palm Harbor One Loan Direct Lenders by sending them the "three-day negative notice," to which they did not object. In addition, the Direct Lenders Committee's suggestion that USACM request the affirmative participation of the Palm Harbor One Loan Direct Lenders in the loan modification process has already been satisfied. As outlined above, the Motion, the related Declaration of Thomas J. Allison, and the Notice of Hearing were all served on all of the Palm Harbor One Loan Direct Lenders on October 5, 2006. The Palm Harbor One Loan Direct Lenders were invited to participate in the hearing on the Motion if they felt it was necessary to protect their interests; however, none of them objected to the Motion. Notwithstanding the Direct Lenders Committee's argument that "USACM must bring the individual Direct Lenders into the process and the Direct Lenders must be allowed an opportunity to protect their own individualized interests", Direct Lenders Committee Opposition, p. 5, ¶ B(6), the Palm Harbor One Loan Direct Lenders have been brought into the process and given an opportunity to protect their own interests.

The Direct Lenders Committee complains that insufficient information has been given to the Palm Harbor One Loan Direct Lenders for them to make an informed decision. Direct Lenders Committee Opposition, pp. 5-6, ¶ B(7). Interestingly, none of the Palm Harbor One Loan Direct Lenders have made this argument or have requested additional information or have objected on the basis of insufficient information. USACM's business judgment in recommending the modification to the Palm Harbor One Loan is fully supported by the Declaration of Thomas J. Allison (Docket No. 1453). The Direct Lenders Committee expresses doubt that Palm Harbor One can sell sufficient condominium units in time to pay off the Palm Harbor One Loan by its

1   maturity date of December 16, 2006.  Direct Lenders Committee Opposition, p. 5, ¶ B(7)(a).

2   While USACM certainly is not a guarantor that the loans that it is servicing will pay off in full on

3   their maturity dates, since such payoffs are the obligations of the borrowers of the loans, the

4   likelihood of Palm Harbor One to be able to meet its payoff obligations is enhanced by its ability

5   to sell the condominium units at a price that is more in line with the current market conditions.

6       USACM provided additional appraisal information to the Palm Harbor One Direct Lenders

7   in the "three-day negative notices" that were mailed to the Palm Harbor One Direct Lenders on

8   September 29, 2006.  Even though this confidential appraisal information (including valuation

9   information) was provided to the Palm Harbor One Direct Lenders, USACM concluded that it

10  might be harmful to the interests of such Direct Lenders or to Borrower Palm Harbor One to

11  include such valuation information in the Motion or the Declaration of Thomas J. Allison, which

12  are public documents that are available to other parties, including competitors.

13      The Direct Lenders Committee argues that the Exit Fee for the Palm Harbor One Loan

14  should be disclosed to the Direct Lenders.  Direct Lenders Committee Opposition, p. 5, ¶ B(7)(d).

15  Pursuant to the Fee Agreement with Palm Harbor One dated November 28, 2005, the Exit Fee is

16  $290,000.  The Exit Fee has not been waived, and USACM will insist on collecting it.

17      The Direct Lenders Committee also asks if USACM intends to require the consent of the

18  $1,500,000 junior lender on the Palm Harbor One Loan in order to maintain the validity of the

19  Subordination Agreement of the junior lender.  Direct Lenders Committee Opposition, pp. 5-6, ¶

20  B(7)(e).  USACM will require the written consent of the junior lender.

21      **C.**    **Marlton Square 2nd Loan Subordination Objections.**

22      Notwithstanding its argument that the "three-day negative notice" no longer applies, the

23  Direct Lenders Committee also complains that the minimal "three-day negative notice" was not

24  given to the Marlton Square 2nd Loan Direct Lenders.  Direct Lenders Committee Opposition, p. 7,

25  ¶ C(4).  As explained in Paragraphs 18-20 and 29 of the Motion, the Marlton Square 2nd Loan

26  Direct Lenders already consented in advance to the subordination of the Marlton Square 2nd Trust

27  Deed by signing the Marlton Square 2nd Loan Agreement, which provides for the subordination

28  and outlines the subordination terms in Section 3.13 of the Marlton Square 2nd Loan Agreement.

1  Because consent has already been given in advance by the Marlton Square 2nd Direct Lenders, it is
2  not necessary for USACM to seek their consent a second time.  If anything, a "three-day negative
3  notice" to the Marlton Square 2nd Direct Lenders would have been confusing and ambiguous, and
4  would have implied that the Marlton Square 2nd Direct Lenders had the right to make a new (and
5  possibly contradictory) decision on the subordination issue, notwithstanding their prior agreement
6  to subordinate by signing the Marlton Square 2nd Loan Agreement.  Moreover, all of the Marlton
7  Square 2nd Loan Direct Lenders were served with copies of the Notice, the Declaration of Thomas
8  J. Allison, and the Notice of Hearing, and none of them objected to the requested approvals.

9     The Direct Lenders Committee argues that the Marlton Square 2nd Loan Direct Lenders'
10 pre-consent to the subordination provisions in the Marlton Square 2nd Loan Agreement may no
11 longer be applicable because the Marlton Square 2nd Loan is currently nonperforming.  Direct
12 Lenders Committee Opposition, pp. 7-8, ¶ C(7).  Interestingly, none of the Marlton Square 2nd
13 Loan Direct Lenders, who were served with the Motion, have objected on this basis or attempted
14 to argue that their pre-consent is no longer applicable.  The Marlton Square 2nd Loan Direct
15 Lenders' disinterest in advancing this argument, which would only invite litigation, is a much
16 wiser position by those who have more at stake in this issue than the theoretical argument
17 advanced by the Direct Lenders Committee.  Moreover, USACM has already stated that it intends
18 to provide the requested subordination (following Court approval) only if the Marlton Square 2nd
19 Loan is performing as of the date of the requested subordination.  See, Declaration of Thomas J.
20 Allison (Docket No. 1435) at ¶ 22.

21    The Direct Lenders Committee claims that the request for subordination of the Marlton
22 Square 2nd Loan is premature because it is the Committee's understanding that the proposed
23 refinancing loan for the Marlton Square 1st Loan has fallen through.  Direct Lenders Committee
24 Opposition, p. 8, ¶ C(8).  The Direct Lenders Committee does not present any evidence that the
25 proposed refinancing loan has fallen through.  Moreover, USACM has heard this same rumor, and
26 has been reassured by Borrower MS Acquisition that the refinancing is still on track.  In any event,
27 because of the length of time required under this Court's noticing requirements to obtain Court
28 approval, it is certainly prudent for USACM to seek advance Court approval for USACM to

1 implement the subordination agreement to which the Marlton Square 2nd Loan Direct Lenders
2 have already consented to in advance. It would be imprudent for USACM to allow a closing in
3 which a subordination might be requested to begin without USACM having first sought the
4 necessary Court approval to be able to participate on behalf of the Direct Lenders in such a
5 closing, both to receive payment of the Marlton Square 1st Loan in excess of $33 million and to
6 provide on behalf of the Marlton Square 2nd Loan Direct Lenders the requested subordination.

7 The Direct Lenders Committee argues that "it is impossible to [assess] whether the
8 subordination is prudent or in the best interests of the Direct Lenders." Direct Lenders
9 Committee Opposition, p. 8, ¶ C(8). The decision that such subordination was prudent and in the
10 best interests of the Direct Lenders was already made by the Marlton Square 2nd Loan Direct
11 Lenders (the directly affected parties) when they signed the Marlton Square 2nd Loan and thereby
12 pre-consented to the subordination provisions of Section 3.13. USACM is not asking this Court
13 for permission for USACM to substitute its judgment for the judgment that has already been
14 exercised by the Marlton Square 2nd Loan Direct Lenders. USACM is only asking that the Court
15 clarify that USACM is authorized to carry out the wishes of the Marlton Square 2nd Loan Direct
16 Lenders, as expressed in Section 3.13 of the Marlton Square 2nd Loan Agreement that they signed.

17 The Direct Lenders Committee states that "USACM must provide the Direct Lenders with
18 the assurances that the proposed development loan does not exceed 80% loan to value of the
19 Marlton Square Project." Direct Lenders Committee Opposition, p. 9, ¶ C(10). USACM has
20 already assured that it will verify compliance with the 80% Loan to Value requirement as well as
21 all other conditions to the subordination outlined in Section 3.13 of the Marlton Square 2nd Loan
22 Agreement. See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶¶ 18 and 22.

23 The Direct Lenders Committee also asks if USACM intends to require the consent of the
24 two junior lenders on the Marlton Square Project in order to maintain the validity of the
25 subordination agreements of the junior lenders to the Marlton Square 2nd Loan. Direct Lenders
26 Committee Opposition, p. 9, ¶ C(11). USACM will require the junior lenders' written consents.

27 D.  **Marlton Square 1st Loan Forbearance Objections.**
28 The Direct Lenders Committee complains that the minimal "three-day negative notice"

10
Marlton Square 2nd Subordination & General Forbearance

was not given to the Marlton Square 1st Loan Direct Lenders. Direct Lenders Committee Opposition, p. 7, ¶ C(4). As explained in Paragraph 29 of the Motion, the Loan Servicing Agreements provide that USACM can agree to a short-term forbearance on a loan without the need for Direct Lender consent. As outlined in Paragraph 4 of the Motion, the "three-day negative notice" provision in Section 2(e) of the Loan Servicing Agreements applies only to loan modifications that change the interest rate, forgive the payment of any principal or interest, change the outstanding principal amount, or extend the maturity date. Therefore, the "three-day negative notice" to the Marlton Square 1st Loan Direct Lenders was not required by the terms of the Loan Servicing Agreements. However, as outlined above, all of the Marlton Square 1st Loan Direct Lenders were served with copies of the Notice, the related Declaration of Thomas J. Allison, and the related Notice of Hearing, and none of them objected to the approvals requested in the Motion. By failing to object, their consent to the requested forbearance is implied.

The Direct Lenders Committee argues that because of the matured status of the Marlton Square 1st Loan, USACM might not have authority to do anything under the Loan Servicing Agreements without the 100% affirmative consent of the Direct Lenders. Direct Lenders Committee Opposition, p. 7, ¶ C(5). To impose a requirement for affirmative written consent on a loan servicer for 272 Direct Lenders would be extraordinary indeed. This argument is contradicted by the terms of the Loan Servicing Agreements, which specifically authorize USACM on behalf of the Direct Lenders without the need for further written authorization to institute foreclosure proceedings, obtain a deed-in-lieu for the property, engage in settlement discussions, enter into forbearance and other settlement–related agreements, and take title in the name of the Direct Lenders to the property upon a foreclosure or delivery of a deed-in-lieu. See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶ 4. The Loan Servicing Agreements do not distinguish between the exercise of these powers because of a maturity default under the Marlton Square 1st Loan or because of an acceleration of the maturity of the Marlton Square 1st Loan. In any event, it is clear that these powers, including the power to enter into forbearances and other settlement-related agreements, can still be exercised by USACM, notwithstanding the maturity of the Marlton Square 1st Loan.

1  The Direct Lenders Committee also argues that the requested forbearance is just a disguised extension of the maturity date of the Marlton Square 1st Loan. Direct Lenders Committee Opposition, p. 7, ¶ C(6). This argument is not true. The Loan Servicing Agreements clearly distinguish between forbearance agreements and other settlement-related agreements and loan modifications that extend the maturity date of the Marlton Square 1st Loan. USACM has not requested approval for a maturity date extension, and has only requested approval for a short-term forbearance. USACM will continue to deal with the Marlton Square 1st Loan as a matured loan (and not a loan with an extended maturity date), including listing the Marlton Square 1st Loan as a matured loan on its records. USACM has reserved all of its rights under the matured Marlton Square 1st Loan, including the right to claim default interest on the Marlton Square 1st Loan retroactive to the first event of default on the Marlton Square 1st Loan. See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶ 27.

### E.  Objection to General Authorization for Short-Term Forbearances.

The Direct Lenders Committee argues that USACM should provide more notice, not less notice, to the Direct Lenders in connection with any short-term forbearances, and that USACM should not be given general authorization by the Court to exercise the forbearance powers granted to USACM in the Loan Servicing Agreements. Direct Lenders Committee Opposition, pp. 9-10, ¶ D(1). The Direct Lenders Committee also argues that the relief requested by USACM is not authorized under the Loan Servicing Agreements, Nevada law or the relevant loan documents. Direct Lenders Committee Opposition, p. 10, ¶ D(2). These arguments run counter to the language of the Loan Servicing Agreements. The Direct Lenders agreed with USACM that specific loan modifications (not including forbearances) would be subject to the "three-day negative notice" requirements of Section 2(e) of the Loan Servicing Agreements; however, the Direct Lenders also agreed that USACM would have the general discretion customary for loan servicers to enter into forbearance and other settlement-related agreements without the need to seek additional consent from the Direct Lenders. See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶ 4. The relief requested by USACM is entirely consistent with the Loan Servicing Agreements, Nevada law, and the relevant loan documents.

1   Finally, the Direct Lenders Committee argues that the 10-day stay imposed by Bankruptcy
2   Rule 6004(g) should apply to any order granting the Motion because of "the lack of any notice on
3   the Marlton Square loans and the minimal three-day notice on the Palm Harbor One Loan". Direct
4   Lenders Committee Opposition, p. 10, ¶ D(3). However, as outlined above, the Motion,
5   Declaration, and Notice of Hearing were all served upon all of the Palm Harbor One Loan Direct
6   Lenders, the Marlton Square 1st Loan Direct Lenders, and the Marlton Square 2nd Loan Direct
7   Lenders. The directly affected Direct Lenders have not objected to the Motion, so there is no
8   prospect that such directly affected parties will consider appealing any order granting the Motion.

9   **V.   REPLY TO JOINDER IN OPPOSITION BY THE CANEPA GROUP**

10  On October 24, 2006, The Canepa Group ("Canepa") filed its Joinder (Docket No. 1658)
11  in the Opposition to the Motion filed by the Direct Lenders Committee. In addition to joining the
12  Direct Lenders Committee's Opposition, Canepa advances two additional arguments of its own.
13  Canepa first argues that USACM must comply with the Loan Servicing Agreements in
14  connection with any loan modification by first obtaining Direct Lender consent or providing each
15  Direct Lender with at least three business days' notice. Canepa Group Joinder, p. 2. It is not clear
16  why Canepa is making this argument, which applies only to the Palm Harbor One Loan, the only
17  loan for which a loan modification is requested for approval in the Motion. Canepa is not a Direct
18  Lender in the Palm Harbor One Loan, nor is Canepa a Direct Lender in the Marlton Square 1st
19  Loan or the Marlton Square 2nd Loan. Canepa Joinder, p. 2, footnote 2. Moreover, USACM
20  provided the required three business days' notice to the Palm Harbor One Loan Direct Lenders.
21  See, Declaration of Thomas J. Allison (Docket No. 1435) at ¶ 12. In addition, the Motion, related
22  Declaration, and associated Notice of Hearing were all served on all of the Palm Harbor One Loan
23  Direct Lenders on October 5, 2006, which is much more than three business days' notice.
24  Finally, Canepa objects to USACM's "request for general permission to accept loan
25  payment proceeds and provide partial and full releases." Canepa Joinder, p. 2. First, partial
26  release authorization is not requested in the Motion. Moreover, Canepa's argument that this type
27  of general authorization was denied at a fully contested hearing on May 18, 2006, and was granted
28  only with respect to nine specific loans outlined in the Court's Order entered on July 6, 2006 as

Docket No. 829, is outdated. Canepa evidently did not notice that general authorization to accept loan payment proceeds and provide full releases and reconveyances in connection with full loan payments was granted by this Court in the Court's "Order Authorizing Debtor USA Commercial Mortgage Company to Grant Ordinary Course Releases" entered on September 14, 2006 as Docket No. 1284, following a hearing on August 4, 2006 on USACM's related Motion filed on July 7, 2006, as Docket No. 847. The general authorization requested in the present Motion is intended only to clarify that the authorization to provide full releases and reconveyances in connection with full payoffs applies (under the same terms outlined in the Court's September 14, 2006 Order, Docket No. 1284) when a loan is repaid in full through a refinance (as contemplated for the Marlton Square 1st Loan) as well as through the sale of the collateral securing a loan.

## CONCLUSION

The various Objections to the Motion should either be denied or deemed to be satisfied pursuant to the clarifications outlined in this Reply Brief. USACM renews its request that the Motion be granted, and that the Court: (a) authorize USACM to enter into the Loan Modification for the Palm Harbor One Loan; (b) authorize USACM to enter into the Subordination for the Marlton Square 2nd Loan if the conditions outlined in the Marlton Square 2nd Loan Agreement for providing the Subordination are satisfied; (c) authorize USACM to grant the short-term forbearance for the Marlton Square 1st Loan; (d) authorize USACM to provide a full reconveyance and release of the Marlton Square 1st Loan upon its payment in full by a refinancing loan; (e) authorize USACM generally to grant short-term forbearances of up to ninety days on Loans being serviced by USACM without the need for further Court approval; (f) authorize USACM to provide a full reconveyance and release of the collateral for a Loan serviced by USACM when the Loan is repaid in full, whether through a sale of collateral or through a refinance; and (g) authorize USACM to execute all documents and take all other necessary steps required to implement any of

/ / /

/ / /

/ / /

/ / /

the foregoing actions.  USACM also requests that the automatic 10 day stay under Bankruptcy Rule 6004(g) not apply to any Order granting this Motion, and that such Order be effective immediately upon entry of such Order.

DATED: October 27, 2006.

Annette W. Jarvis, Utah Bar No. 1649
Douglas M. Monson, Utah Bar No. 2293
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

/s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV  89146
Attorneys for Debtors and Debtors-in-Possession