1   Annette W. Jarvis, Utah Bar No. 1649
    Steven C. Strong, Utah Bar No. 6340
2   RAY QUINNEY & NEBEKER P.C.                     **E-FILED ON OCTOBER 27, 2006**
    36 South State Street, Suite 1400
3   P.O. Box 45385
    Salt Lake City, Utah 84145-0385
4   Telephone: (801) 532-1500
    Facsimile: (801) 532-7543
5   Email: ajarvis@rqn.com

6       and

7   Lenard E. Schwartzer, Nevada Bar No. 0399
    Jeanette E. McPherson, Nevada Bar No. 5423
8   SCHWARTZER & MCPHERSON LAW FIRM
    2850 South Jones Boulevard, Suite 1
9   Las Vegas, Nevada 89146-5308
    Telephone: (702) 228-7590
10  Facsimile: (702) 892-0122
    E-Mail: bkfilings@s-mlaw.com
11

12  Attorneys for Debtors and Debtors-in-Possession

13              **UNITED STATES BANKRUPTCY COURT**

14                      **DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>　　　　　　　　　　　　　　　　Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>　　　　　　　　　　　　　　　　Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>　　　　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>　　　　　　　　　　　　　　　　Debtor. | Date: October 30, 2006<br>Time: 10:30 am |
| In re:<br>USA SECURITIES, LLC,<br>　　　　　　　　　　　　　　　　Debtor. | **DEBTORS' OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION TO CONVERT CASES TO PROCEEDINGS UNDER CHAPTER 7** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **(AFFECTS ALL DEBTORS)** |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

USA Commercial Mortgage Company ("USACM"); USA Securities, LLC; USA Capital Reality Advisors, LLC; USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"); and USA First Trust Deed Fund, LLC ("FTD Fund") (collectively the "Debtors") hereby file their opposition to The United States Trustee's Motion to Convert Cases to Proceedings Under Chapter 7 (the "Motion"). The United States Trustee ("UST") did not submit adequate evidence to support the Motion. The facts set forth in the Declaration of Thomas J. Allison in Opposition to the Motion ("Allison Declaration") filed herewith and summarized below clearly indicate that conversion of the cases is not in the best interests of creditors and the estates. Therefore, the Motion should be denied.

The Debtors, working closely with the four official committees that the UST appointed and oversees, have moved these chapter 11 cases forward rapidly toward completion and worked aggressively since the Petition Date to maximize the value of the assets of the estates for the benefit of all creditors, fund members, direct lenders, and other parties in interest. A conversion to chapter 7 at this time would be a disastrous result for creditors and other parties in interest, as discussed below, especially now that the Court has approved an auction process and procedures that will not only permit the sale of substantial all assets of the FTD Fund for at least $46 million and the sale of the servicing business of USACM to an established and proven loan servicer having the financial ability to fund the unfunded construction budget amounts that exist on many of the loans, but also will form the cornerstone for a comprehensive plan of reorganization that will maximize the significant value of the remaining assets of the estates.

## POINTS AND AUTHORITIES

### Facts

1. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date") and their cases are being jointly administered pursuant to an order of this Court. The UST appointed four official committees (the "Committees") in these cases.

2. On October 24, 2006, on the eve of the continued hearing on the Debtors' motion for approval of bid procedures and protections relating to the Debtors' proposed sale of assets

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   pursuant to an auction and in connection with a plan of reorganization, which motion was fully

2   supported by each of the four Committees appointed by the UST, the UST filed the motion

3   seeking to convert the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

4       3.   Conversion of the Debtors' cases to chapter 7 at this crucial stage would be a disastrous

5   event for creditors, fund members, direct lenders, and other parties in interest in these cases.  Now

6   that an asset purchase agreement ("APA") has been executed between the Debtors and SPCP

7   Group, LLC ("Silver Point"), and the Court has approved the bid procedures and protections

8   associated with subjecting Silver Point's bid to higher and better offers, and an auction has been

9   set for December 7, 2006 to establish the successful bidder for substantially all of the assets of

10  FTD Fund and the loan servicing business of USACM which is the cornerstone of the Debtors'

11  proposed plan of reorganization, these cases are on a fast track heading toward a confirmation

12  hearing on a consensual plan of reorganization.  Allison Declaration ¶ 4.  Indeed, the Debtors and

13  Committees are close to completing their negotiations for a comprehensive plan of reorganization

14  that will result in a much greater return to the creditors of the Debtors' estates and to the fund

15  members of FTD Fund and Diversified Fund (collectively, the "Funds"), as well as to the direct

16  lenders, than would a chapter 7 liquidation.  *Id.*

17      4.   If the Debtors' cases were to be converted to cases under chapter 7, there would be an

18  immediate and substantial decrease in the value of the estates of the three principal Debtors

19  (USACM, FTD Fund, and Diversified Fund) for several reasons.  Allison Declaration ¶ 5.  First,

20  certain synergies now exist from being able to package assets of the Debtors together in a sale that

21  are likely to be lost if a trustee or multiple trustees are appointed in these cases.  *Id.*  Indeed, if a

22  trustee is appointed, it is it is more likely the Debtors' assets will be sold in a piecemeal fashion

23  that will net less to the Debtors' estates.  Second, once a conversion occurs, it is likely that

24  potential purchasers would not be willing to pay as much for the Debtors' assets as they are now

25  because there is a common perception that once a case is converted to a chapter 7, the debtor's

26  assets will be available for sale at "fire sale" prices.  *Id.*  Third, administrative expenses will

27  continue to be significant if a new chapter 7 trustee (or multiple trustees) is appointed because the

28  chapter 7 trustee will have to employ new counsel and new financial advisors, and they will face a

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   lengthy and very steep learning curve to become familiar with the loans, the borrowers, the

2   collateral, the significant claims that exist against the Debtors' prior management, and all of the

3   relevant facts and circumstances necessary to maximize the value of the loan portfolios for the

4   benefit of the Funds' creditors and members.  *Id.*  Fourth, the further delay occasioned by the

5   appointment of a chapter 7 trustee (or trustees) and his/her need to get up to speed will further

6   decrease the value of the Debtors' loan portfolio because the development projects securing the

7   loans must immediately move forward and are not capable of withstanding further delay.  *Id.*

8   Indeed, the Debtors have already been sued twice for failing to fully fund the construction budgets

9   on two loans, and more litigation has been threatened.  Fifth, a chapter 7 trustee may be unwilling

10  or, given the dire financial circumstances of the Debtors, unable to collect any of the remaining

11  loans outstanding, or alternatively would likely have to accept substantial discounts in order to

12  liquidate the remaining loans.  Indeed, the two Funds' assets consist almost entirely of loan

13  receivables that will require substantial additional effort (and in some cases litigation) to collect.

14  *Id.*

15      5.  It is also likely that conversion would cause an immediate and substantial loss in the value

16  of the USACM estate due to a steep decrease in the value of USACM's loan servicing agreements

17  and its ability to collect the fees, costs and other income that it is contractually entitled to receive

18  under agreements with the borrowers and the direct lenders.  Allison Declaration ¶ 6.  For

19  example, borrowers will be resistant to compromise and will try to delay making payments that

20  are owed in order to see if the chapter 7 trustee (or trustees) runs out of money to collect the loans

21  or gets to a point where due to cost considerations he/she has no alternative but to take a

22  substantial discount on the loans.  Moreover, given that the Debtors' remaining employees

23  continue to leave for other work, it is questionable whether a chapter 7 trustee will have the

24  necessary resources so that USACM can continue to service the loans which could become very

25  problematic.  For instance, if USACM does not fulfill its post-petition obligations to collect loans,

26  the direct lenders might assert claims against USACM that could dilute the potential distributions

27  to other USACM creditors.  In addition, and perhaps most significantly, without the money in

28  place to fund a liquidating trust to pursue litigation as set forth in the proposed plan of

4

1    reorganization, it is questionable whether a chapter 7 trustee will have the necessary resources to

2    collect significant assets from the non-debtor entity USA Investment Partners ("USAIP"), which

3    owes a $58 million note to USACM secured by equity interests in a complicated web of entities

4    related to USAIP.  *Id.*

5        6.    According to Mr. Allison, the Debtors' post-petition Chief Restructuring Officer, the

6    Debtors' estates have increased in value since the Petition Date due to the post-petition operations

7    of the Debtors as chapter 11 debtors-in-possession.  Allison Declaration ¶ 7.  On the Petition Date,

8    USACM had not been fulfilling its obligations as manager of the Funds, or as the loan servicing

9    agent for the direct lenders.  The books and records of the companies were inaccurate, incomplete

10   and misleading, and that no collection efforts had been undertaken with respect to delinquent

11   borrowers.  Loan servicing fees were not being collected and that payments from borrowers on

12   performing loans were being diverted from the direct lenders on those loans to other direct lenders

13   who had an interest in non-performing loans.  Under these circumstances, USACM had no value

14   as an on-going entity, and that value has had to be re-created from post-petition efforts by the

15   Debtors and others.  *Id.*  Furthermore, on the Petition Date, the FTD Fund was under investigation

16   by the SEC, and the auditor could not complete the required audit of the books and records.  *Id.*

17   Moreover, the Diversified Fund consisted of 23 loans, 20 of which were non-performing.  While

18   the underlying assets of the Funds had value, this value could not be made available to the Fund

19   members absent substantial post-petition collection efforts.  *Id.*

20       7.    Although the administrative expenses of the Debtors' professionals and of the Committees

21   are substantial and cannot be borne by these estates indefinitely, other additional value created for

22   these estates during the initial six months of these cases, and continuing during the next few

23   months until a plan of reorganization can be confirmed, far exceed the administrative expenses

24   incurred.  Allison Declaration ¶ 8.  For example, Creditors of USACM have benefited from

25   USACM's aggressive post-petition collection efforts because under USACM's current

26   management it has collected contractual fees and costs for its own estate from the borrowers in

27   addition to principal and interest collected on behalf of the direct lenders.  *Id.*  Furthermore,

28   USACM was able to obtain a promissory note in the amount of $58 million from USAIP that is

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

secured by equity interests that USAIP holds in other projects that the Debtors believe can bring significant additional value into these estates.  Additionally, the Debtors have successfully collected, post-petition, nineteen (19) loans at par plus accrued interest and other loans appear to be in a position to pay off soon including the Marquis, Halsey Canyon and Sheraton loans.  *Id.* Moreover, the Debtors will have collected hundreds of millions owed on the outstanding loans by the end of the year.  Therefore, circumstances do not indicate that there has been any substantial or continuing loss to or diminution of the net assets of these estates since the Petition Date.  Rather, these and other activities, which were made possible only by the Debtors' incurring significant administrative expenses in their chapter 11 cases, have significantly increased the value of the Debtors' estates since the Petition Date.  *Id.*

8.   If this case is converted to a chapter 7 and a trustee (or multiple trustees) is appointed, all of the time, effort and substantial expense that has enabled the Debtor, in cooperation with the Committees, to negotiate the plan of reorganization as well as the APA with Silver Point will be wasted.[1]  Allison Declaration ¶ 9.  More importantly, the significant benefits that creditors and other parties in interest will realize from a consensual plan of reorganization that resolves the complex global issues in these bankruptcy cases will be lost.  For instance, if there is no plan of reorganization, the inter-company claims will have to be litigated between the Debtors which will result in significant additional expense to the Debtors' estates.  *Id.*  Furthermore, the substantial benefits that the Diversified Fund, the FTD Fund, USACM and the direct lenders will realize as a result of the execution of the APA with Silver Point will also be lost.[2]  *Id.*

9.   For these reasons and more, the conversion requested by the U.S. Trustee is definitely not in the best interest of creditors, the estates, the direct lenders, or the fund members, and in fact, if granted will harm the estates, the creditors and the equity security holders.  *Id.*

/ / /

---

1 An outline of all of the efforts undertaken to analyze the Debtors' assets, market those assets, and reach an agreement with Silver Point that is acceptable to the Debtors and the Committees is set forth in a prior Declaration of Thomas J. Allison dated October 23, 2006, a copy of which is attached hereto as Exhibit A and incorporated herein.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Opposition to Trustees Motion To Convert

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF LAW**

**I.    The United States Trustee Lacks Standing to Move for Conversion Under § 1112(b).**

The UST lacks standing to move for conversion under § 1112(b)(1).  Prior to the
amendments effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
("BAPCPA"), § 1112(b)(1) permitted either a party in interest or the UST to move for conversion
or dismissal.  BAPCPA, however, deleted the reference to the UST and now only a "party in
interest" can request conversion or dismissal under § 1112(b)(1).  *See* 11 U.S.C. § 1112(b)(1)
(2006).[3]

The UST is not a "party in interest" for purposes of § 1112(b)(1).  Section 1109(b) states
that a "party in interest" includes "the debtor, the trustee, a creditor's committee, an equity
security holders' committee, a creditor, an equity security holder, or any indenture trustee."
Although this list is not intended to be exhaustive, it does specifically exclude the United States
Trustee from the definition of a "party in interest."  *See* 7 COLLIER ON BANKRUPTCY ¶ 1109.03[2]
(stating that "although the United States trustee is an administrative officer with significant
supervisory responsibilities, the United States trustee is not a 'party in interest' under section
1109(b)").  A party in interest "is generally understood to include all persons whose pecuniary
interests are directly affected by the bankruptcy proceedings."  *In re E.S. Bankest, L.C.*, 321 B.R.
590, 594 (Bankr. S.D. Fla. 2005) (*citing Nintendo Co. Ltd. v. Patten (In re Alpex Computer
Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995)); *see also Yadkin Valley Bank & Trust Co. v. McGee (In
re Hutchison)*, 5 F.3d 750, 756 (4th Cir. 1993).  The UST has no pecuniary interest in these
proceedings and, therefore, is not a party in interest.  Since post-BAPCPA only a party in interest

---

2 A summary of the benefits that USACM, the Diversified Fund, the FTD Fund and the direct lenders will receive as a
result of the APA are set forth in Exhibits 1, 2, 3 and 4 of Exhibit A hereto.

3 BAPCPA's deletion of the UST's power to move for conversion or dismissal in § 1112(b)(1) was not the result of a
Congressional intent to remove redundancy in the Code.  Various other Code provisions including, for example, §§
330(a)(1), 707(b)(1), and 1307(c) make reference to both the party in interest and the UST as separate entities.  Had
Congress wanted to remove perceived redundancies from the Code, it presumably would have removed the reference
to the UST in these provisions as well.  Congress did not do this, however, and these provisions continue to reference
both a party in interest and the UST.  The only conclusion that can be drawn from this is that Congress intended to
rescind the UST's authority to move for conversion or dismissal under § 1112(b)(1) rather than to remove a possible

7

1    can bring a motion to convert or dismiss under § 1112(b)(1), the UST lacks standing to pursue the

2    Motion.

3          The removal of the UST's authority to move for conversion or dismissal under §

4    1112(b)(1) is consistent with the simultaneous limitation of the court's discretion regarding §

5    1112(b)(1) motions.  As the UST has correctly pointed out in the Motion, BAPCPA changed the

6    "may" to "shall" in § 1112(b)(1), thus requiring the court to dismiss or convert where cause has

7    been shown and unusual circumstances are absent.  It is significant to note that as Congress

8    limited the court's discretion under this section, it also rescinded the UST's authority to move for

9    conversion or dismissal.  These two amendments make sense together because if a court has

10   diminished discretion under § 1112(b), a motion to convert or dismiss should only be brought by

11   someone with a pecuniary interest in the outcome of the case (i.e., a party in interest).  As stated

12   above, the UST has no pecuniary interest in the case.  None of the four official committees, which

13   were appointed by the UST and have been actively involved in all aspects of these cases, has

14   moved to convert or dismiss the cases.  Further, no party with a pecuniary interest moved to

15   convert or dismiss the cases prior to the filing of the UST's Motion.[4]  Therefore, it is a wonder

16   why the UST should feel the need to move for conversion, and why at this critical juncture in

17   these cases.  The creditors and fund members, and their respective committees, certainly are

18   capable of defending their own interests without the unsolicited assistance of the UST.  Congress

19   has recognized this and correspondingly rescinded the UST's authority to move for conversion

20   under § 1112(b)(1).  Therefore, the UST lacks standing and the Court should deny the Motion.

21   **II.      The United States Trustee Has Not Established Cause for Converting to Chapter 7.**

22         Even if the Court finds that the UST has standing to move for conversion under

23   § 1112(b)(1), the UST has not established that there is cause for granting the Motion.  The UST,

24   who bears the burden of establishing cause, argues that it exists under § 1112(b)(4)(A).

25

26   _____

     redundancy.

27   [4]  A family trust and IRA controlled by Richard McKnight (an attorney who has represented Joseph Milanowski
     and/or a non-debtor entity Mr. Milanowski controls, USA Investment Partners, LLC) filed a Joinder to the Motion.  In

28   prior papers filed in these cases, Mr. McKnight has stated that his interest in these cases is as a direct lender.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Opposition to Trustees Motion To Convert

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Subsection (b)(4)(A) states that "cause" includes "substantial or continuing loss to or diminution

2  of the estate and the absence of a reasonable likelihood of rehabilitation."  As discussed below,

3  there is no substantial or continuing loss to or diminution of the estates.

4       The UST asserts that any time there is a negative cash flow, there is a substantial or

5  continuing loss under § 1112(b)(4)(A).  The cases relied on for this proposition are not binding on

6  this Court and were all decided pre-BAPCPA when courts had broader discretion in deciding

7  whether or not to grant a motion to convert or dismiss.  Since Congress has limited the court's

8  discretion under § 1112(b), the relevancy of these cases post-BAPCPA is questionable.  Applying

9  the UST's reasoning post-BAPCPA would mean that in every case involving a liquidating chapter

10  11 debtor, cause would exist and the court would be forced to convert or dismiss the case unless

11  unusual circumstances are present.  This is a harsh and inflexible outcome, and the plain language

12  of that statute does not indicate that Congress intended to subject liquidating chapter 11 debtors to

13  conversion or dismissal so readily.

14       A better approach post-BAPCPA would be to follow the reasoning of the court in *In re*

15  *Legacy Estate Group, LLC*, 2006 Bankr. LEXIS 2782 (Bankr. N.D. Cal. Oct. 9, 2006).  In that

16  case, which has facts similar to those before this Court, a single equity holder, over the objection

17  of all the other major constituencies, moved to convert to a chapter 7 on the basis that there was a

18  continuing loss to or diminution of the estate.  *See id*. at *4  The equity holder based his argument

19  for conversion solely on the fact that the debtor's operating reports, which reflected extraordinary

20  administrative expenses associated with the sale of the debtor's assets, showed an overall loss.

21  *See id*.  The court found that the administrative costs were necessary to consummate the sale of the

22  debtor's assets and that "[t]he sale has resulted in substantial enhancement of the estate over and

23  above its condition on the date the case was commenced."  *Id*. at *5.  As a result of this

24  enhancement of the estate, the court held that there was no continuing loss to or diminution of the

25  estate and the equity holder's motion was denied.  *See id* at *4-5.

26       Like the debtor in *Legacy Estate*, the Debtors in this case have incurred significant

27  administrative expenses.  However, as in *Legacy Estate*, the end result of these administrative

28  expenses and post-petition efforts of the Debtors and the committees is that the assets of the

9

1   estates have increased substantially in value over what the estates were worth on the Petition Date.

2   Thus the administrative expenses have the net result of actually *increasing* the value of the estates

3   and there is no cause to convert to chapter 7 under § 1112(b).  The UST has not met the burden of

4   establishing cause, and the Court should deny the Motion.

5   **III.    Unusual Circumstances Establish that it is in the Best Interest of Creditors and the**
         **Estates to Deny the United States Trustee's Motion to Convert.**

6

7           Even if "cause" did exist to convert these jointly administered cases to chapter 7, there are

8   unusual circumstances establishing that it is in the best interest of creditors and the estates to deny

9   conversion.  The post-BAPCPA version of subsection (b)(1) provides that the Court shall convert

10  or dismiss a case for cause only in the absence of "unusual circumstances specifically identified by

11  the court that establish that the requested conversion . . . is not in the best interests of creditors and

12  the estate."  § 1112(b)(1).  What is in the best interests of the creditors is "a simple matter:

13  creditors are best served by the course of action that results in the largest number of creditors

14  being paid the largest amount of money in the shortest amount of time."  *In re Rey*, 2006 Bankr.

15  LEXIS 1803 at *25 (Bankr. N.D. Ill. Aug. 21, 2006) (internal quotation omitted).  What is in the

16  best interests of the estate is an analysis that focuses "upon whether the economic value of the

17  estate is greater inside or outside of bankruptcy."  *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr.

18  E.D. Cal. 1992).

19          The circumstances of these cases are unique due to the unusual nature of the assets

20  involved:  loans having hundreds of fractional direct lenders, loan servicing rights and obligations

21  relating to thousands of direct lenders, and litigation claims that pose unique collection problems.

22  The value of these unique assets can best be maximized through these chapter 11 proceedings and

23  under the proposed plan of reorganization that incorporates the auction and sale procedure recently

24  approved by the Court.  Although it would not be true in all chapter 11 cases in which cause for

25  conversion might exist, in the unusual assets and unusual circumstances of the Debtors' cases

26  establish that the chapter 11 proceeding is the course of action that will result in the "largest

27  number of creditors being paid the largest amount of money in the shortest amount of time."  As

28  set forth above, the value of the estates is greatest not only inside of bankruptcy but also

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

10

1   specifically in this chapter 11 proceeding.  If these cases were to be converted to a chapter 7, the

2   estates would immediately diminish in value and the return to creditors would decrease

3   significantly.  The ensuing chaos of chapter 7 for these Debtors would also inevitably mean that

4   creditors would have to wait longer to receive payment.  Therefore, the unusual circumstances of

5   these cases establish that it is not in the best interest of creditors or the estates to convert to a

6   chapter 7, and the Court should deny the UST's Motion.  *See In re Legacy Estate Group, LLC*,

7   2006 Bankr. LEXIS at *5-6 (holding that unusual circumstances justifying a denial of conversion

8   existed where asset sale and proposed plan provided a significant return to creditors).

9           Finally, Section 1112(b)(2) has no bearing on the Motion.  Subsection (b)(2) states:

10          (2)  The relief provided in paragraph (1) shall not be granted absent unusual
            circumstances specifically identified by the court that establish that such relief is not in the
11          best interests of creditors and the estate, if the debtor or another party in interest objects
            and establishes that—
12
13          (A) there is a reasonable likelihood that a plan will be confirmed within the
            timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do
14          not apply, within a reasonable period of time; and

15          (B) the grounds for granting such relief include an act or omission of the debtor
            other than under paragraph (4)(A)—
16
17          (i) for which there exists a reasonable justification for the act or omission; and

18          (ii) that will be cured within a reasonable period of time fixed by the court.

19

20   11 U.S.C. § 1112(b)(1) (2006).  This subsection is another BAPCPA change to § 1112 and

21   because it is new, there apparently is no reported case law interpreting it, and no legislative history

22   can be found that provides insight into its meaning.  This is unfortunate because subsection (b)(2)

23   appears to suffer from serious drafting errors.  If read literally, it states that if a debtor *meets* the

24   requirements of (b)(2)(A) and (b)(2)(B), the court is *prohibited* from granting a motion to convert

25   or dismiss *unless* the movant can show that conversion or dismissal is *not* in the best interests of

26   creditors and the estate.  Thus, the literal language is absurd in suggesting that a movant can

27   succeed on a motion to dismiss or convert by successfully demonstrating that such relief would

28   *not* be in the best interest of creditors or the estate.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

11

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  "Interpretations of a statute which would produce absurd results are to be avoided if

2  alternative interpretations consistent with the legislative purpose are available."  *Griffin v. Oceanic*

3  *Contractors* 458 U.S. 564, 575 (1982); *see also United States v. Johnson Controls, Inc.* 457 F.3d

4  1009, 1014-15 (9th Cir. 2006).  A better reading of subsection (b)(2), and one that is consistent

5  with the legislative intent as demonstrated in the unambiguous subsection (b)(1), would be to

6  delete the first "not," and to replace the "if" with "unless," as follows:  "(2) The relief provided in

7  paragraph (1) shall ~~not~~ be granted absent unusual circumstances specifically identified by the

8  court that establish that such relief is not in the best interests of creditors and the estate, **if unless**

9  the debtor or another party in interest objects and establishes that . . . ."  This would provide a

10  further exception to mandatory conversion or dismissal, in addition to the "best interests of

11  creditors and the estate" exception already set out in subsection (b)(1), for debtors that can meet

12  the specified criteria.  In any event, this subsection (b)(2) exception is not available where the

13  motion to convert is based on cause set forth in subsection (b)(4)(A) and thus has no bearing in

14  these cases.

### CONCLUSION

16  Due to the BAPCPA amendments, the UST no longer has standing to bring a motion to

17  dismiss or convert under § 1112(b)(1).  Regardless, the UST has failed to demonstrate that there is

18  a continuing loss to or diminution of the estates, because the post-petition efforts of the Debtors

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

12

Opposition to Trustees Motion To Convert

1    and committees will result in an increase in the value of estates.  There are also unusual

2    circumstances establishing that is in the best interests of creditors and the estates not to convert

3    these cases.  For all these reasons, the Court should deny the Motion

4          Respectfully submitted this 27th day of October, 2006.

5

6                                         /s/ Jeanette E. McPherson
                                         Lenard E. Schwartzer, Nevada Bar No. 0399
7                                        Jeanette E. McPherson, Nevada Bar No. 5423
8                                        SCHWARTZER & MCPHERSON LAW FIRM
                                         2850 South Jones Boulevard, Suite 1
9                                        Las Vegas, Nevada  89146

10                                       and

11                                       Annette W. Jarvis, Utah Bar No. 1649
12                                       RAY QUINNEY & NEBEKER P.C.
                                         36 South State Street, Suite 1400
13                                       P.O. Box 45385
                                         Salt Lake City, Utah 84145-0385
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Opposition to Trustees Motion To Convert