1  Annette W. Jarvis, Utah Bar No. 1649
   RAY QUINNEY & NEBEKER P.C.
2  36 South State Street, Suite 1400
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
4  Facsimile: (801) 532-7543
   Email: ajarvis@rqn.com
5
6     and
7  Lenard E. Schwartzer, Nevada Bar No. 0399
   Jeanette E. McPherson, Nevada Bar No. 5423
8  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
9  Las Vegas, Nevada 89146-5308
   Telephone: (702) 228-7590
10 Facsimile: (702) 892-0122
   E-Mail: bkfilings@s-mlaw.com
11
   Attorneys for Debtors and Debtors-in-Possession
12
13              **UNITED STATES BANKRUPTCY COURT**

                     **DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Date: November 13, 2006<br>Time: |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | ) |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, the Debtors and Debtors in Possession in these jointly administered Chapter 11 Cases, propose the following joint chapter 11 Plan of reorganization pursuant to Section 1121(a) of Title 11 of the United States Code.

On April 13, 2006, the Debtors commenced their Chapter 11 Cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the Court and that is provided to help you understand the Plan. All Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. The Disclosure Statement for the Plan contains a summary of the Plan and discusses the Debtors' history, businesses, and assets. Reading the summary of the Plan contained in the Disclosure Statement, however, is not a substitute for reading the Plan. As the provisions of the Plan control, all Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to carefully read the Plan. No solicitation materials, other than the Disclosure Statement, the Exhibits attached hereto or thereto or referenced herein or therein, and the related materials transmitted herewith and therewith, have been approved by the Court for use in soliciting acceptances or rejections of the Plan.

## DEFINITIONS AND RULES OF CONSTRUCTION

**Defined Term.**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined):

1.      **"2% Holdback"** means sums withheld under Paragraph 1.2 of the Interim Distribution Orders.

2.      **"Acquired Assets"** means the FTDF Assets and the USACM Assets, described as "Assets" in the Asset Purchase Agreement.

3.      **"Adjusted FTDF Base Recovery Percentage"** means the percent recovery that DTDF or the Post-Effective Date DTDF must reach after the adjustment for an annual increase, made on each anniversary of the Effective Date, of an additional $5 million to DTDF's Investment in order to obtain the FTDF Base Recovery Percentage.

4.      **"Administrative Expense Claim"** means any Claim against a Debtor constituting a cost of expense of administration of and in these Chapter 11 Cases incurred on or after the Petition Date of the kind described in Section 503(b) of the Bankruptcy Code, including, without limitation, (A) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of a Chapter 11 Case; (B) Taxes described in Section 503(b)(1)(B) of the Bankruptcy Code; (C) any fees or expenses of Debtors' Professionals or Committee Professionals allowable under Sections 330(a) or 331 of the Bankruptcy Code; (D) all Statutory Fees; and (E) Cure Payments.

5.      **"Administrative Expense Claim Bar Date"** means the date(s) as set forth in section B of Art. II of the Plan.

6.      **"Affiliate"** has the meaning ascribed to that term in Section 101(2) of the Bankruptcy Code.

7.      **"Allocated Net Sale Proceeds"** means the net sale proceeds generated from the Asset Sale Transaction as allocated between USACM and FTDF in accordance with Art. II of the Plan.

8.      **"Allowed Administrative Expense Claim"** means all or that portion of an Administrative Expense Claim which has been Allowed pursuant to a Final Order.

9.      **"Allowed Claim" or "Allowed . . . Claim"** means any Claim against a Debtor (A) as listed in each Debtor's Schedules Filed in its Chapter 11 Case, provided that the Claim is not listed therein as disputed, contingent or unliquidated; (B) as stated in a proof of Claim which is Filed before the Bar Date applicable to such Claim and as to which no objection to the allowance thereof or a motion to estimate Claim pursuant to Section 502(c) of the Bankruptcy Code has been interposed on or before the dates set forth in section A Art. VII, of the Plan; or (C) as allowed by

Final Order.   An "Allowed . . . Claim" (a) is the total amount of the Claim less any distribution or payments made by a Debtor to the Holder of the Allowed . . . Claim after the Petition Date, pursuant to any Order of the Court, including without limitation, the Interim Distribution Orders, and (b) unless otherwise specified herein or by Final Order of the Court, an Allowed . . . Claim shall not include interest on such Claim accruing after the Petition Date; provided, however, that holders of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured Claims shall receive Postpetition Interest on such Allowed Claims as provided in section C of Art. II of the Plan, respectively.

10. **"Allowed Equity Interest"** means an Equity Interest in a Debtor (A) as designated in the Debtor's List of Equity Security Holders Filed in its Chapter 11 Case, including the Lists designated in the "Stipulated Order re Proofs of Interest" entered by the Court in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293], provided that such Equity Interest is not listed as disputed or contingent; (B) as stated in a proof of Interest which is Filed before the expiration of the General Bar Date and to which no objection to the allowance thereof or motion to estimate Claim under Section 502(c) of the Bankruptcy Code has been interposed on or before the date set forth in section A Art. VII, of the Plan.  An "Allowed Equity Interest" is the total amount of the Equity Interest less any distribution or payments made by a Debtor to the Holder of the Allowed Equity Interest after the Petition Date, pursuant to any Order of the Court, including without limitation, the Interim Distribution Orders.

11. **"Allowed Class . . . Claim" or "Allowed Class . . . Equity Interest"** means an Allowed Claim or Allowed Equity Interest, respectively, classified in the specified Class.

12. **"Alternative Dispute Resolution Agreement"** means the joint agreement by the Direct Lender Committee and the USACM Committee, which shall set forth the process by which objections to Direct Lender Unsecured Claims may be resolved.  This agreement will be Filed and served on all Direct Lenders as part of the Direct Lender Supplement as set forth in Art. I herein.

13. **"Asset Purchaser"** means SPCP Group, Inc., or a Third Party Bidder who is selected as the successful bidder as a result of the Auction and who acquires the Acquired Assets pursuant to the Bid Procedures Order and the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

14. **"Asset Purchase Agreement"** means the Revised First Amended And Restated Asset Purchase Agreement which will be dated as of November 7, 2006 between USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, which will be submitted to the Court on November 7, 2006, a copy of which will be Filed, as the same may be further amended pursuant to the terms of the Agreement, or any substantially similar agreement executed with a Third Party Bidder, if a Third Party Bidder is the Asset Purchaser.

15. **"Asset Sale Transaction"** means the sale of the Acquired Assets to the Asset Purchaser as set forth in the Asset Purchase Agreement to SPCP Group LLC , if SPCP Group, LLC is the Asset Purchaser, or as set forth in any substantially similar agreement executed with a Third Party Bidder, if a Third Party Bidder is the Asset Purchaser.

16. **"Auction"** means the auction that will be held pursuant to the Bid Procedures Order and conducted on December 7, 2006, as the same may be continued or rescheduled by the Court, in connection with the Asset Sale Transaction.

17. **"Avoidance Actions"** means all of the Debtors' and the Estates' rights and claims under Bankruptcy Code sections 541 through 558, inclusive, whether or not an action is initiated on, before or after the Effective Date.

18. **"Bankruptcy Code"** means title 11, United States Code (11 U.S.C. § 101 *et seq.*), as in effect on the Petition Date and as amended and effective after the Petition Date and during the Chapter 11 Cases.

19. **"Bankruptcy Rules"** means, collectively, (A) the Federal Rules of Bankruptcy Procedure, as amended from time to time, and (B) the Local Bankruptcy Rules applicable to cases pending before the Court, as now in effect or hereafter amended.

20. **"Bar Date"** means (A) with respect to Administrative Expense Claims, other than the ordinary Course Administrative Expense Class, the dates set forth in section B of Art. II of the Plan; (B) with respect to Claims for damages resulting from the rejection of an executory contract or unexpired lease pursuant to Art. III of the Plan, the date stated in section B of Art. III of the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Plan; and (C) with respect to all other Claims against and Equity Interests in a Debtor, the General Bar Date.

21.      **"Bid Procedures Order"** means the "Order (A) Scheduling an Auction for the Sale of Certain Assets; (B) Approving SPCP Group, LLC as Lead Bidder; and (C) Approving Bid Procedures and Protections," that has been filed with the Court.

22.      **"Borrower"** means the Borrower under any applicable Loan.

23.      **"Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

24.      **"Bysynergy Loan"** means FTDF's interest in the Loan, dated as of February 3, 2006, made and delivered by BySynergy, LLC, a Delaware limited liability company.

25.      **"Cash"** means legal tender of the United States of America, or cash equivalents, including currency and checks or wire transfers of immediately available funds.

26.      **"Chapter 11 Cases"** means the above-captioned cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date, and jointly administered under Case No. 06-10725.

27.      **"Claim"** has the meaning ascribed to it in Section 101 of the Bankruptcy Code.

28.      **"Class"** means a group of Claims or Equity Interests classified together in a class designated in Art. II of the Plan.

29.      **"Closing"** means the closing of the Asset Sale Transaction as provided in the Asset Purchase Agreement.

30.      **"Closing Date"** means the Effective Date.

31.      **"Committees"** means collectively the USACM Committee, DTDF Committee, FTDF Committee, and Direct Lender Committee as appointed by the U.S. Trustee pursuant to Bankruptcy Code Section 1102 to serve in these Chapter 11 Cases.

32.      **"Committee Professionals"** mean all professionals employed by the Committees in these Chapter 11 Cases.

33.      **"Confirmation"** means entry of a Confirmation Order by the Court in accordance with Section 1129 of the Bankruptcy Code.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

34.    **"Confirmation Date"** means the date on which the Clerk of the Court enters the Confirmation Order on its docket.

35.    **"Confirmation Hearing"** means the hearing before the Court to consider the confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code.

36.    **"Confirmation Order"** means the order entered by the Court confirming the Plan in accordance with the Bankruptcy Code.

37.    **"Court"** means the United States District Court for the District of Nevada, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code; or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or unit thereof that exercises jurisdiction over the Chapter 11 Cases in lieu thereof.

38.    **"Cure Payment"** means the amount, if any, that the Debtors must tender on the Effective Date in order to provide compensation in accordance with Sections 365(b)(1)(A) and (B) of the Bankruptcy Code to assume an unexpired lease or an executory contract as described in further detail in Art. IV of the Plan.

39.    **"Debtors"** means, collectively, USACM, USA Securities, USA Realty, DTDF, and FTDF.

40.    **"Debtors in Possession"** means any or all of the Debtors when acting in the capacity of representatives of their respective Estates in the Chapter 11 Cases.

41.    **"Debtors' Professionals"** mean all professionals employed by the Debtors in these Chapter 11 Cases, including professionals employed as ordinary course professionals.

42.    **"Direct Lender"** means each Entity who is a beneficiary under a Loan, excluding USACM and the Funds to the extent of their beneficial interests in a Loan.

43.    **"Direct Lender Committee"** means the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

44.    **"Direct Lender Loans"** means Loans in which the Direct Lenders have an

7

ownership interest.

45.    **"Direct Lender Supplement"** means the Loan Servicing Fee Schedule and the Alternative Dispute Resolution Agreement, referred to herein in section D of Art. I as amended from time to time, and which shall be Filed and served as soon as practicable after Court approval of the Disclosure Statement.

46.    **"Direct Lender Unremitted Principal Claims"** means all General Unsecured Claims of Direct Lenders against USACM for Loan payments received  prior to the Petition Date by USACM but not paid over to the Direct Lenders in the applicable Loan.

47.    **"Direct Lender Unsecured Claims"** means all General Unsecured Claims (whether under contract, tort or other legal theory against USACM) of Direct Lenders against USACM, excluding Direct Lender Unremitted Principal Claims.

48.    **"Disbursing Agent"** means the Entity appointed pursuant to the Plan to act in making distributions authorized under the Plan for each of the respective Estates on and after the Effective Date.

49.    **"Disclosure Statement"** means the Disclosure Statement, including any Exhibits attached thereto, Filed by the Debtors in the Chapter 11 Cases on September 15, 2006, as the same is amended, supplemented, or otherwise modified from time to time by any duly authorized amendment or modification.

50.    **"Disputed  . . . Claim"** means any Claim against a Debtor which is not an Allowed Claim, including, without limitation, any Claim (A) designated as disputed, contingent, unliquidated or unknown in a Debtor's Schedules Filed in its Chapter 11 Case, (B) to which an objection to the allowance thereof or motion to estimate Claim under Section 502(c) of the Bankruptcy Code has been interposed on or before the date set forth Art. III of the Plan; (C) which is the subject of one or more causes of action pending against the holder of such Claim; or (D) disallowed pursuant to Section 502(d) of the Bankruptcy Code or by Final Order.

51.    **"Disputed Equity Interest"** means any Equity Interest in a Debtor which is not an Allowed Equity Interest, including, without limitation, any Equity Interest (A) designated as disputed or contingent in a Debtor's List of Equity Security Holders Filed in its Chapter 11 Case,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    including the Lists designated in the "Stipulated Order Re Proofs of Interest" entered by the Court

2    in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293]; (B) to

3    which an objection to allowance thereof has been interposed on or before the date set forth in Art.

4    IV of the Plan; or (C) that is disallowed by Final Order.

5        52.    **"DTDF"** means USA Capital Diversified Trust Deed Fund, LLC.

6        53.    **"DTDF 85% Recovery"** means a recovery from all sources for DTDF and Post-

7    Effective Date DTDF for all Allowed Class C-5 Equity Interests equal to 85% of the DTDF

8    Investment, net of expenses.

9        54.    **"DTDF Administrator"** means the chief executive officer of Post-Effective Date

10    DTDF, which has the powers and responsibilities set forth in the Plan and the DTDF Amended

11    Operating Agreement, or any successor officer appointed pursuant to the DTDF Amended

12    Operating Agreement.

13        55.    "**DTDF Amended Operating Agreement**" means the DTDF Operating

14    Agreement, as amended, to provide for the wind down, liquidation and dissolution of

15    DTDF pursuant to the implementation of the Plan.

16        56.    "**DTDF Chapter 11 Case**" means the Chapter 11 Case of DTDF, Case No. BK-S-

17    06-10727 LBR.

18        57.    **"DTDF Committee"** means the Official Committee of Equity Security Holders of

19    USA Capital Diversified Trust Deed Fund, LLC as appointed by the U.S. Trustee pursuant to

20    Bankruptcy Code Section 1102 to serve in these Chapter 11 Cases.

21        58.    **"DTDF Investment"** means the amount that represents the equity investment in

22    DTDF as may be agreed to by the USACM Committee and the DTDF Committee by the date of

23    the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by

24    the Court after an evidentiary hearing between such Committees; provided however, that the

25    USACM Committee and DTDF Committee or, after the Effective Date, the Post-Effective Date

26    Entites, may agree at any time as to the amount that represents the equity investment in DTDF

27    without further Court order by filing a notice of such agreement with the Court; and provided

28    further, however, that prior to the Effective Date, the USACM Committee and DTDF Committee

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  shall consult with the FTDF Committee and the Direct Lender Committee regarding the amount

2  that represents the equity investment in DTDF.

3    59.    **"DTDF Loans"** means Loans in which DTDF has an ownership interest.

4    60.    **"DTDF Operating Agreement"** means the "Operating Agreement of USA Capital

5  Diversified Trust Deed Fund, LLC" made and entered into effective as of February 10, 2000.

6    61.    **"DTDF Post-Effective Date Committee"** means the oversight committee for

7  Post-Effective Date DTDF.

8    62.    **"DTDF Unremitted Principal Claim"** means the General Unsecured Claim of

9  DTDF against USACM for Loan payments received by USACM but not paid to DTDF prior to

10  the Petition Date.

11    63.    **"DTDF Unsecured Claim"** means the General Unsecured Claim of DTDF against

12  USACM, excluding the DTDF Unremitted Principal Claim, allowed in the amount as may be

13  agreed to by the USACM Committee and the DTDF Committee by the date of the commencement

14  of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined

15  by the Court after an evidentiary hearing between such Committees; provided, however, that the

16  USACM Committee and the DTDF Committee or, after the Effective Date, the Post-Effective

17  Date Entities, may agree at any time as to the amount that represents the DTDF Unsecured Claim

18  without further Court order by filing a notice of such agreement with the Court; and provided

19  further, however, that prior to the Effective Date, the USACM Committee and the DTDF

20  Committee shall consult with the FTDF Committee and the Direct Lender Committee regarding

21  the issue.

22    64.    **"Effective Date"** means the first Business Day (A) on which no stay of the

23  Confirmation Order is and remains in effect, and (B) that is at least one (1) Business Day after the

24  date on which the conditions specified in Art. VI of the Plan have been satisfied or waived.

25    65.    **"Entity"** has the meaning ascribed to this term in Section 101(15) of the

26  Bankruptcy Code.

27    66.    **"Equity Interest"** means the rights of owners of the issued and outstanding shares

28  of any class of stock, membership or other ownership interest in any of the Debtors.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

67. **"Estate"** or **"Estates"** means the bankruptcy estate created for each Debtor in these Chapter 11 Cases pursuant to Bankruptcy Code Section 541, or, collectively, the bankruptcy estates created for each of the Debtors, in these Chapter 11 Cases pursuant to Bankruptcy Code Section 541.

68. **"Excluded DTDF Loans"** means DTDF Loans whose Loan Servicing Agreements are not being transferred to the Asset Purchaser as part of the Asset Sale Transaction.

69. **"File," "Filed," "Files,"** or **"Filing"** means properly and timely filed with the Court in the Chapter 11 Cases, as reflected on the official docket of the Court for the Chapter 11 Cases, and served on Entities, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Court.

70. **"Final Decree"** means a Final Order of the Court closing the Chapter 11 Cases; provided, however, if a Final Decree is separately entered in one or more of the Debtors' Chapter 11 Cases, the "Final Decree" means a Final Order of the Court closing a particular Chapter 11 Case.

71. **"Final Order"** means an order or judgment of the Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors and the Committees or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

72. **"FTDF"** means USA Capital First Trust Deed Fund, LLC.

73. **"FTDF Base Recovery Percentage"** means the Pro Rata recovery by holders of Allowed Equity Interests in FTDF based on the ratio of (x) the net recovery to FTDF as calculated by adding (i) all post-Petition Date collections that FTDF received on account of the FTDF Loans

prior to the Closing to (ii) the sale proceeds that FTDF receives from the Asset Sale Transaction (including amounts received for any overbid) minus all payments made on account of (i) all classified and unclassified Claims against the FTDF Estate, (ii) all Allowed Administrative Expense Claims allocated to FTDF, (iii) all post-Effective Date costs and expenses incurred on behalf of either (a) FTDF or (b) the holders of Allowed Equity Interests in FTDF, (iv) any expense reimbursement or break-up fee paid pursuant to the Bid Procedures Order (unless reimbursed pursuant to the overbid process), and (iv) the FTDF Payment to DTDF to (y) the FTDF Investment.

74.    **"FTDF Chapter 11 Case"** means the Chapter 11 Case of FTDF, Case No. BK-S-06-10728 LBR.

75.    **"FTDF Committee"** means the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC as appointed by the U.S. Trustee pursuant to Bankruptcy Code Section 1102 to serve in these Chapter 11 Cases.

76.    **"FTDF Investment"** means the amount of $65,179,522.

77.    **"FTDF Litigation Claims"** means the Litigation Claims in which FTDF has an interest, including without limitation all Non-Debtor Insider Litigation in which FTDF has an interest.

78.    **"FTDF Loans"** means Loans in which FTDF has an ownership interest.

79.    **"FTDF Payment"** means the payment made by FTDF to DTDF on the Effective Date in the amount of (A) $500,000, and (B) an additional amount of up to $500,000 from 50% of any overbid increment actually paid and allocated to FTDF as part of the Closing of the Asset Sale Transaction, after taking into consideration any break-up fee (including any expense reimbursement) paid by FTDF.

80.    **"FTDF Transferred Assets"** means the assets transferred by FTDF to DTDF consisting of the FTDF Payment, the Bysynergy Loan, the FTDF Unremitted Principal Claim, and the proceeds of any non-assignable FTDF Litigation Claims.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

81.    **"FTDF Unremitted Principal Claim"** means the General Unsecured Claim of FTDF against USACM for Loan payments received by USACM but not paid over to FTDF prior to the Petition Date.

82.    **"FTDF Unsecured Claim"** means the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM Committee by the date of the commencement of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided however that the USACM Committee and the FTDF Committee or, after the Effective Date, the USACM Trust and FTDF may agree at any time as to the amount that represents the FTDF Unsecured Claim without further Court order by filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and the Direct Lender Committee regarding the issue.

83.    **"FTDF's Debtors' Professionals' Fee/Cost Allocation"** means the allocation to FTDF for the professional fees and costs incurred by the Debtors' Professionals in the Chapter 11 Cases of $125,000 per month commencing on the Petition Date and ending on the earlier of: (A) the Effective Date, or (B) January 31, 2007.

84.    **"Funds"** means FTDF and DTDF.

85.    **"General Bar Date"** means, except as to the claims of Direct Lenders and Intercompany Claims,  November 13, 2006, which is the date established by the "Order Setting Deadline to File Proofs of Claim and Proofs of Interest" entered by the Court in the Chapter 11 Cases on September 14, 2006.  With respect to the Claims of Direct Lenders, "General Bar Date" means January 13, 2007, which is the date established by the "Stipulation and Order to Extend Proof of Claim Bar Date for Direct Lenders Only" entered by the Court in the Chapter 11 Cases on November 6, 2006 [Docket No.1729]. With respect to Intercompany Claims, no bar date has been set in accordance with the "Order Granting Debtors' Motion to Exclude Intercompany Claims From the Bar Date" that has been filed with the Court.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

86.    **"General Unsecured Claim"** means a Claim against a Debtor arising on or before the Petition Date that is not an Administrative Expense Claim, Priority Tax Claim, Priority Unsecured Claim, Secured Claim, Secured Tax Claim or Subordinated Claim.

87.    **"Higher and Better Offer"** means a bona fide offer made in accordance with the Bid Procedures Order.

88.    **"Insider"** has the meaning ascribed to this term in Section 101(31) of the Bankruptcy Code.  For purposes of this definition, the term "affiliate" in Section 101(31)(E) has the meaning ascribed to that term in the Plan, and to the extent not included in the definition of "Affiliate" under the Plan, shall include any and all Persons whose business is owned or controlled by the Debtors or any of Insiders of the Debtors (as defined herein), or in which the Debtors or Insiders of the Debtors (as defined herein) have any ownership, participation, profit sharing or any other kind of interest whatsoever.

89.    **"Instruments of Transfer"** means any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan including the documents related to the Asset Sale Transaction.

90.    **"Interim Distribution Orders"** mean the (A) "Order (A) Granting (i) Debtors' Motion to Distribute Funds; (ii) Debtors' Hold Funds Motion and (iii) the Compel Motion, and (B) Denying (i) the Lift Stay Motion and (ii) McKnight Motion" entered by the Court on August 24, 2006 [Docket No. 1184]; and (B) "Modified Order Authorizing Interim Distribution and Holdbacks" entered by the Court on October 2, 2006 [Docket No. 1424].

91.    **"IP"** means USA Investment Partners, LLC.

92.    **"IP $58 Million Promissory Note"** means that certain promissory note dated as of May 31, 2006, in the original principal amount of $58,374,918.81 made by IP in favor of USACM (as modified by the "Order Approving Agreement with Investment Partners" entered by the Court on July 24, 2006 [Docket No. 946]).

93.    **"Lenders"** means Direct Lenders, USACM and the Funds.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

94.  **"Litigation Claims"** means any and all rights, causes of action, Claims, obligations, suits, debts, promises, agreements, judgments and demands of whatever kind or nature, whether know or unknown, suspected or unsuspected, whether at law or in equity, including, without limitation all Avoidance Actions, Non-Debtor Insider Litigation, recoupment, set off and equitable subordination, whether or not brought as of the Effective Date, which are the property of or may be asserted by any of the Debtors and their respective Estates, or the Post-Effective Date Entities and which have not been settled or otherwise resolved by Final Order as of the Effective Date.

95.  **"Loans"** means the loans originated by and serviced by USACM on behalf of the Lenders.  This definition of "Loans" is applicable solely to the Plan and does not apply to, nor supersede the definition of "Loans" in the Asset Purchase Agreement, which contains a different definition for "Loans."

96.  **"Loan Servicing Agreement"** means agreements entered into by USACM with Lenders relating to USACM's servicing of the Loans in effect at any time during the Chapter 11 Cases.

97.  **"Loan Servicing Fee Schedule"** means a schedule setting forth the amount of the servicing fees payable under each of the Loan Servicing Agreements, which will be transferred to the Asset Purchaser at Closing as part of the Asset Sale Transaction.

98.  **"Non-Debtor Insider"** means an Insider that is not a Debtor, and expressly includes USAIP Parties and any Affiliate of the Debtors and the USAIP Parties, including professionals of such Insiders or any Entity which has conspired with or aided and abetted an Insider that is not a Debtor.

99.  **"Non-Debtor Insider Litigation"** means all Litigation Claims against Non-Debtor Insiders and recoveries therefrom.  Solely to the extent necessary to pursue this Non-Debtor Insider Litigation, this definition shall also include Litigation Claims by Debtors against Debtors who are Insiders, which Litigation Claims by Debtors against Debtors, notwithstanding anything to the contrary in this Plan and solely to the extent necessary to pursue Litigation Claims against

Non-Debtor Insiders, shall survive the Confirmation of the Plan and the Effective Date and shall not be extinguished.

100. **"Ordinary Course Administrative Expense Claim"** means an Administrative Expense Claim incurred in the ordinary course of the Debtors' businesses prior to the Effective Date; provided, however, Ordinary Course Administrative Expense Claims expressly do not include: (A) any postpetition obligations of a Debtor which are past due; (B) cure payments, if any, required to assume an executory contract or unexpired lease either in the Plan or by separate order of the Court entered prior to the Effective Date; (C) any fees or expenses, compensation or reimbursement for which is requested pursuant to Subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code; (D) any Taxes (including without limitation, income, sales, use, property or other Taxes); and (E) any Claims against a Debtor for breach of contract, tort, or other actionable conduct.

101. **"Other Secured Claim"** means any Secured Claim other than a Secured Tax Claim.

102. **"Overbid Allocation"** means the allocation agreed to between USACM and FTDF for the overbid, breakup fee, and expense reimbursement (as those terms are used in the Bid Procedures Order) as described in the Plan below.

103. **"Penalty Claim"** means a Claim against a Debtor for a fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim or is asserted by a Governmental Unit.

104. **"Person"** has the meaning ascribed to this term in Section 101(41) of the Bankruptcy Code. To the extent not provided for in Section 101(41), the term "Person" as used herein includes limited partnerships, limited liability companies, associations, joint stock companies, joint ventures, and the Committees.

105. **"Petition Date"** means April 13, 2006, the date on which the Debtors Filed their voluntary petitions commencing the Chapter 11 Cases.

16

106. **"Plan"** means this Second Amended Joint Chapter 11 Plan of Reorganization, including any and all Exhibits annexed hereto, any and all documents incorporated herein by reference, and any and all documents incorporated by reference to the Plan Documents Supplement, either in their present form or as they may be altered, amended, or modified at any time prior to or as part of the Confirmation Hearing.

107. **"Plan Documents Supplement"** means the compilation of the forms of certain documents as specified in and required to be Filed in accordance with section C of Art. I herein.

108. **"Post-Effective Date DTDF"** means the DTDF after the Effective Date.

109. **"Post-Effective Date Entities"** means the USACM Trust and Post-Effective Date DTDF.

110. **"Postpetition Interest"** means all contractual or statutory interest to which holders of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured Claims have a legal right enforceable outside of the Chapter 11 Cases.  In the absence of any legal right to interest on any particular Allowed Claim in Class B-4 or Class C-4, "Postpetition Interest" shall mean 4.85%, the Federal Judgment Rate in effect as of the Petition Date.

111. **"Prepaid Interest"** means the Claims to recover principal and interest paid by USACM to Lenders  prior to the Petition Date and prior to payment by the underlying Borrower, generally identified by the Debtors in their Schedules B-18 and B-21 and the proceeds thereof (including offsets or holdbacks).

112. **"Priority Tax Claim"** means a Claim against a Debtor entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

113. **"Priority Unsecured Claim"** means a Claim against a Debtor that is entitled to priority under Section 507(a) of the Bankruptcy Code, other than Priority Tax Claims, Administrative Expense Claims, and Ordinary Course Administrative Expense Claims.

114. **"Professionals"** means those entities or firms who have been employed by the Debtors or the Committees pursuant to Bankruptcy Code Sections 327, 1103, and/or 1106.

115. **"Professionals Administrative Expense Claim Bar Date"** has the meaning ascribed to this term in section B of Art. II of the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

116.    **"Pro Rata," "Pro Rata Share,"** and **"Pro Rata Basis"** mean proportionately so that the ratio of (A) the amount of consideration (such as Cash) distributed on account of a particular Allowed Claim or Allowed Equity Interest, as applicable, to (B) the amount of such Allowed Claim or Allowed Equity Interest, as applicable, is the same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests, as applicable, of the Class or group of Classes in which the Allowed Claim or Allowed Equity Interest is classified to (y) the amount of all Allowed Claims or Allowed Equity Interests, as applicable, of that Class or group of Classes.

The Pro Rata ratio or formula is illustrated as follows:

| (a) | Amount of consideration distributed to holder of Allowed Claim or Allowed Equity Interest, as applicable | = | (x) | Total consideration available for distribution to holders of Allowed Claims or Allowed Equity Interests, as applicable, of that Class or group of Classes |
|---|---|---|---|---|
| (b) | Amount of such Allowed Claim or Allowed Equity Interest, as applicable | | (y) | Amount of all Allowed Claims of Allowed Equity Interest, as applicable, in that Class or group of Classes |

For purposes of the application of this definition, the amount of any Disputed Claim shall be the stated "face amount" of such Claim, unless such Claim is estimated by Final Order, in which case, the amount of such Disputed Claim shall be the estimated amount.

117.    **"Schedule of Executory Contracts and Unexpired Leases"** means the schedule which is part of the Direct Lender Supplement, and which is referred to in Art. III section A of the Plan.

118.    **"Schedules"** means the Schedules of assets and liabilities Filed by the Debtors as required by Bankruptcy Code Section 521(a)(1)(B)(i), Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

119.  **"Secured Claim"** means a Claim against the Debtors to the extent of the value of any interest in property of the Estates securing such Claim, as determined by the Court pursuant to Bankruptcy Code Sections 506(a) and 1111(b).

120.  **"Secured Tax Claim"** means a Claim of a governmental unit against the Debtors to the extent of the value of any interest in property of the Estates securing such Claim, as determined by the Court pursuant to Bankruptcy Code Section 506(a).

121.  **"Servicer Advances"** means advances by the servicing agent for legal fees, foreclosure costs and other expenses that may be recovered from a Lender under Paragraph 4 or any other similar Paragraph of the applicable Loan Servicing Agreement in the event that such amounts are not paid by the applicable Borrower.

122.  **"SPCP Group, LLC"** means the Entity described as the "Purchaser" in the Asset Purchase Agreement.

123.  **"Statutory Fees"** means those fees payable in the Chapter 11 Cases under 28 U.S.C. § 1930.

124.  **"Subordinated Claim"** means any and all Claims of Non-Debtor Insiders against USACM.

125.  **"Taxes"** means all taxes, charges, fees, imposts, levies or other assessments, including, without limitation, all net income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, and property taxes, customs duties, fees, assessments and charges of any kind whatsoever, together with any interest and penalties, additions to tax or additional amounts imposed by any taxing authority (domestic or foreign) and any interest and penalties imposed with respect to the filing, obligation to file or failure to file any tax return, and shall include any transferee liability in respect to Taxes.

126.  **"Third Party Bidder"** means an Entity, other than SPCP Group, LLC, who makes a Higher and Better Offer for the Acquired Assets pursuant to and in accordance with the terms of the Bid Procedures Order.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

127.    **"Unremitted Principal Claims"** means General Unsecured Claims against USACM for Loan payments received by USACM, but not paid over to applicable Lenders prior to the Petition Date, including without limitation, the FTDF Unremitted Principal Claim, the Direct Lender Unremitted Principal Claims, and the DTDF Unremitted Principal Claim.

128.    **"Unremitted Principal Direct Lenders"** means Direct Lenders holding Unremitted Principal Claims.

129.    **"USA Realty"** means USA Capital Realty Advisors, LLC.

130.    **"USA Securities"** means USA Securities, LLC.

131.    **"USACM"** means USA Commercial Mortgage Company.

132.    **"USACM Accounts"** means all accounts, notes or receivables of USACM, including USACM's share of the IP $58 Million Promissory Note.

133.    **"USACM Committee"** means the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company as appointed by the U.S. Trustee pursuant to Bankruptcy Code Section 1102 to serve in these Chapter 11 Cases.

134.    **"USACM Loans"** mean the Loans in which USACM has an ownership interest.

135.    **"USACM Trust"** means the trust created under the Plan and pursuant to the USACM Trust Agreement for the benefit of holders of Allowed USACM Unsecured Claims.

136.    **"USACM Trust Agreement"** means the trust agreement that will establish (along with the Plan) and govern the USACM Trust.

137.    **"USACM Trust Assets"** means those assets to be transferred or assigned to the USACM Trust, respectively, on the Effective Date of the Plan, free and clear of any liens or Claims that might otherwise have existed in favor of any party minus any Cash needed to make the payments required to be made on the Effective Date pursuant to the Plan or needed to fund the reserves required to be established on the Effective Date.

138.    **"USACM Trust Committee"** means the oversight committee for the USACM Trust established pursuant to the Plan and the USACM Trust Agreement.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

139. **"USACM Trustee"** means the trustee of the USACM Trust, which has the powers and responsibilities set forth in the Plan and the USACM Trust Agreement, or any successor trustee appointed pursuant to the USACM Trust Agreement.

140. **"USACM Unsecured Claims"** means all Allowed General Unsecured Claims against USACM, including Unremitted Principal Claims, the DTDF Unsecured Claim, the FTDF Unsecured Claim, and the Direct Lender Unsecured Claims.

141. **"USAIP Parties"** means Joseph Milanowski, Thomas Hantges, Paul Hamilton, and IP.

142. **"U.S. Trustee"** means the Office of the United States Trustee for the District of Nevada.

**Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**Plan Documents Supplement.**

The forms of the following documents are or will be contained in a separate Plan Documents Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

1. the USACM Trust Agreement; and

2. the DTDF Amended Operating Agreement.

In the event of a conflict between the terms of any of the documents contained in the Plan Documents Supplement and the Plan, the terms of the Plan shall govern.

The USACM Trust Agreement will be Filed by the USACM Committee with the Clerk of the Court and served on counsel for the Debtors and the other Committees and the U.S. Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing. The USACM Trust Agreement will identify the identity and affiliations of the USACM Trustee and the USACM

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Trust Committee as required by Section 1129(a)(5) of the Bankruptcy Code and will include all

2    other information required to comply with Section 1129(a)(4) of the Bankruptcy Code.

3        The DTDF Amended Operating Agreement will be Filed by the DTDF Committee with the

4    Clerk of the Court and served on counsel for the Debtors and the other Committees and the U.S.

5    Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing.  The

6    DTDF Amended Operating Agreement will identify the identity and affiliations of the DTDF

7    Administrator and the DTDF Post-Effective Date Committee as required by Section 1129(a)(5) of

8    the Bankruptcy Code and will include all other information required to comply with Section

9    1129(a)(4) of the Bankruptcy Code.

10        Once Filed, the Plan Documents Supplement may be inspected in the Office of the Clerk

11    of the Court during normal court hours.  The holders of Claims or Equity Interests may obtain a

12    copy of the Plan Documents Supplement or excerpts therefrom by (A) accessing the BMC Group

13    website for the Debtors at http://www.bmccorp.net/, (B) contacting the BMC Group by phone at

14    888-909-0100, or (C) by accessing the Debtors' website at www.usacapitalcorp.com.

15    **D.    Direct Lender Supplement.**

16        The forms of the following documents are or will be contained in a separate Direct Lender

17    Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

18        1.    the Loan Servicing Fee Schedule;

19        2.    the Alternative Dispute Resolution Agreement; and

20        3.    the Schedule of Executory Contracts and Unexpired Leases.

21        The Direct Lender Supplement will be Filed with the Clerk of the Court, and served on the

22    Committees, the U.S. Trustee and all Direct Lenders as soon as may be practicable for the Debtors

23    after the Court approves the Disclosure Statement, but in no event later than twenty (20) days prior

24    to the commencement of the Confirmation Hearing.  In addition the Schedule of Executory

25    Contracts and Unexpired Lease shall be served on all non-Debtor Entities who are parties to any

26    executory contracts or unexpired leases listed on that Schedule.

27        Once Filed, the Direct Lender Supplement may be inspected in the Office of the Clerk of

28    the Court during normal court hours.  The holders of Claims or Equity Interests may obtain a copy

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

of the Direct Lender Supplement or excerpts therefrom by (A) accessing the BMC Group website

for the Debtors at http://www.bmccorp.net/, (B) contacting the BMC Group by phone at 888-909-

0100, or (C) by accessing the Debtors' website at www.usacapitalcorp.com.

**E.      Exhibits.**

All Exhibits to the Plan and all documents contained in the Plan Documents Supplement

and the Direct Lender Supplement are incorporated into and are a part of the Plan as if set forth in

full herein.

**CLASSIFICATION AND TREATMENT OF
CLAIMS AND EQUITY INTERESTS**

**Summary.**

As discussed in section B of Art. IV of the Plan below, the Estates will not be substantively

consolidated.  Accordingly, holders of Allowed Claims or Allowed Equity Interests against a

particular Estate shall have their Claims or Equity Interests allowed and treated in such respective

Estate.  Further, within an Estate, an Allowed Claim or Allowed Equity Interest is placed in a

particular Class only to the extent that the Claim or Equity Interest falls within the description of

that Class.  However, an Allowed Claim or Allowed Equity Interest may be apportioned and

classified in more than one Class to the extent that portions of the Claim or Equity Interest fall

within the description of several different Classes.  An Allowed Claim or Allowed Equity Interest

is classified in a particular Class only to the extent that it has not already been paid, released or

otherwise satisfied before the Effective Date.  The following is a chart summarizing the

classification and treatment of unclassified Claims, classified Claims and Equity Interests in each

Estate:

| Claims | Treatment |
| --- | --- |
| **USACM** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|--------|-----------|
| **Classified Claims** | |
| A-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| A-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USACM: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USACM shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| A-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| A-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims, including the Unremitted Principal Claims, Allowed FTDF Unsecured Claims, the Allowed Direct Lender Unsecured Claims and the Allowed DTDF Unsecured Claim, shall receive a beneficial interest in the USACM Trust, and on account of their Allowed Claim may receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees, costs, and expenses of implementation of the USACM Plan and USACM Trust. Allowed Penalty Claims shall be subordinated in payment to the payment of the full amount of all Allowed General Unsecured Claims. |
| A-5: Direct Lender Compromise Claims | The Direct Lenders will be released by USACM, FTDF, USA Realty and USA Securities from all Claims including but not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of pre-petition accrued but unpaid fees due under Loan Servicing Agreements. In exchange (and as a compromise), Direct Lenders acknowledge and agree that the Prepaid Interest constitutes an asset of the USACM Estate or transfer their ownership rights, if any, in Prepaid Interest to the USACM estate, that USACM retains the maximum amount for servicing fees allowed and that $605,000 of the 2% Holdback can and will be used to reimburse USACM for the Allowed Professional fees and costs of the |

| Claims | Treatment |
|---|---|
| | Direct Lender Committee. |
| A-6: Subordinated Claims | All Subordinated Claims shall receive no distribution under the Plan. |
| A-7: Equity Interests | All Equity Interests in USACM, regardless of form, shall be cancelled and the holders of Equity Interests in USACM shall receive no distribution under the Plan. |
| **FTDF** | |
| | **Unclassified Claims** |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| B-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| B-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of FTDF: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** FTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| B-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| B-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date out of assets of the Estate, plus Postpetition Interest. |
| B-5: Equity Interests | After the FTDF Payment has been made, holders of Allowed Equity Interests shall retain all distributions received after the Petition Date and receive the remaining Allocated Net Sale Proceeds after satisfaction of |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
|  | all Allowed unclassified Claims, Allowed Class B-1, B-2, B-3 and B-4 Claims, and post-Effective Date fees, costs, and expenses of implementation of the Plan for FTDF.  Allowed Equity Interests shall receive a Pro Rata Share of the USACM Trust recoveries on account of the Allowed FTDF Unsecured Claim. |
| **DTDF** ||
|  | **Unclassified Claims** |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
|  | **Classified Claims** |
| C-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| C-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF: **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:**  Post-Effective Date DTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| C-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| C-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date out of the assets of the Estate, plus Postpetition Interest. |
| C-5: Equity Interests | Holders of Allowed Equity Interests shall retain their Equity Interests in DTDF and distributions received from the Petition Date, and after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
| | C-3 and C-4 Claims, and all post-Effective Date fees, costs and expenses of implementation of Plan for DTDF, shall receive shall receive a Pro Rata Share of the assets of Post-Effective Date DTDF and the USACM Trust recoveries on account of the Allowed DTDF Unsecured Claim. |
| **USA Realty** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| D-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| D-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Realty: **Option A:** Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USA Realty shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| D-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| D-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class D-1, D-2 and D-3 Claims. |
| D-5: Equity Interests | All Equity Interests in USA Realty, regardless of form, shall be cancelled and the holders of Equity Interests in USA Realty shall receive no distribution under the Plan. |

| Claims | Treatment |
|---|---|
| **USA Securities** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| E-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| E-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Securities: **Option A:** Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USA Securities shall surrender the property securing the Allowed Other USA Securities Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Securities shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| E-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| E-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class E-1, E-2 and E-3 Claims. |
| E-5: Equity Interests | All Equity Interests in USA Securities, regardless of form, shall be cancelled and the holders of Equity Interests in USA Securities shall receive no distribution under the Plan. |

**Unclassified Claims.**

Certain types of Claims are not placed into Classes that are entitled to vote to accept or reject this Plan; instead, such Claims are unclassified. Such Claims do not vote on the Plan because they are entitled to specific treatment provided for them in the Bankruptcy Code. As

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   such, the Debtors have <u>not</u> placed the following Claims in a Class.  The respective treatments for

2   these Claims are provided below.

3           **Administrative Expense Claims for Each Debtor.**

4                   <u>**General.**</u>

5           Each holder of an Allowed Administrative Expense Claim in a particular Estate shall be

6   paid in full, in Cash out of such Estate, on the later of: (i) the Effective Date, or (ii) the date such

7   Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in either

8   case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed

9   Administrative Expense Claim agrees to a different treatment.  The fees and costs of the counsel to

10  the Direct Lender Committee, to the extent Allowed, will be treated as an Administrative Expense

11  Claim against USACM, except to the extent covered by a surcharge on Direct Lenders authorized

12  by the Court and collected by USACM prior to the Effective Date.

13                  <u>**Payment Of Statutory Fees**</u>.

14          On or before the Effective Date, Statutory Fees for each Estate shall be paid in Cash, in full

15  when due.  To the extent there is any dispute as to the amount or payment of these Statutory Fees,

16  such dispute will be resolved by the Court at the Confirmation Hearing.

17                  <u>**Bar Dates Applicable To Administrative Expense Claims**</u>.

18                  <u>**General Administrative Expense Claims.**</u>

19          Except as provided (a) in section B Art. II of the Plan for Professionals or other Entities

20  requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331, 503(b)

21  and/or 1103 of the Bankruptcy Code for services rendered before the Effective Date (including

22  any compensation requested by any Professional or other Entity for making a substantial

23  contribution in the Chapter 11 Cases under Section 503(b)(3)(D) of the Bankruptcy Code), or (b)

24  in section B of Art. II of the Plan for Ordinary Course Administrative Expense Claims, requests

25  for payment of Administrative Expense Claims must be Filed and served on the Debtors and the

26  Post-Effective Date Entities by no later than thirty (30) days after the Effective Date, which shall

27  be the "Administrative Expense Claim Bar Date."  Any holder of an Administrative Expense

28  Claim who fails to file a request seeking to have its Claim Allowed on or before the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Administrative Expense Claim Bar Date shall be forever barred from seeking the allowance of its

2    Administrative Expense Claim, and the Debtor and its Estate, including any Post-Effective Date

3    Entities, if applicable, shall be discharged of any obligation on such Claim or any other Claim

4    related to the Administrative Expense Claim.

5                        **Professionals.**

6        All Professionals or other Entities requesting compensation or reimbursement of expenses

7    under Sections 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code for services

8    rendered before the Effective Date (including any compensation requested by any professional or

9    any other entity for making a substantial contribution in the Chapter 11 Cases under Section

10   503(b)(3)(D) of the Bankruptcy Code) shall File and serve on the Debtors and the Post-Effective

11   Date Entities an application for final allowance of compensation and reimbursement of expenses

12   no later than forty-five (45) days after the Effective Date, which shall be the "Professionals

13   Administrative Expense Claim Bar Date."  Any objections to such applications must be Filed and

14   served in accordance with Nevada District Court Local Rule 9014.  Any Professional who fails to

15   File a request for payment on or prior to the Professionals Administrative Expense Claim Bar Date

16   shall be forever barred from seeking the allowance of its Administrative Expense Claim or any

17   other Claim, and the Debtor, its Estate and any Post-Effective Date Entities, if applicable, shall be

18   discharged of any obligation on such Claim or any other Claim related to the Professional's Claim.

19                **Ordinary Course Administrative Expense Claims**.

20       Holders of Ordinary Course Administrative Expense Claims shall not be required to File

21   any request for payment of such Claims by the Administrative Expense Claim Bar Date.  Each

22   Ordinary Course Administrative Expense Claim shall be assumed and paid by the obligated Estate

23   under the terms and conditions of the particular transaction giving rise to that Ordinary Course

24   Administrative Expense Claim, without any further action by the holder of such Ordinary Course

25   Administrative Expense Claim.

26                    Effect of Claim Bar Dates.

27       All holders of Administrative Expense Claims (including without limitation, Professionals

28   requesting compensation or reimbursement of expenses), except holders of Ordinary Course

1   Administrative Expense Claims, are required to File a request for payment of such Claims in

2   accordance with the Plan.  Failure to File a request for payment of an Administrative Expense

3   Claim prior to the Administrative Expense Claim Bar Date or the Professionals Administrative

4   Expense Claim Bar Date, as applicable, shall be forever barred from asserting such Claims against

5   the Debtors, the Estates, the Post-Effective Date Entities and any other Entity or any of their

6   respective property, and the Debtors, the Estates and the Post-Effective Date Entities, to the extent

7   applicable, shall be discharged of any obligation on such Claim or any other Claim related to the

8   Administrative Expense Claim.

9        **Priority Tax Claims.**

10       Each holder of an Allowed Priority Tax Claim in a particular Estate shall be paid in full, in

11  Cash from such Estate, on the later of: (A) the Effective Date, or (B) the date such Priority Tax

12  Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is

13  practicable, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a

14  different treatment.

15  **Classified Claims And Equity Interests.**

16       **USACM – (Classes A-1 through A-6)**

17       **Class A-1: Secured Tax Claims**

18            i.      *Classification*:  Class A-1 consists of all Allowed Secured Tax

19  Claims against USACM.

20            ii.     *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

21  paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

22  Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class A-1 is

23  unimpaired, and the holders of Allowed Class A-1 Claims are presumed to vote in favor of the

24  Plan.

25       **Class A-2: Other Secured Claims**

26            i.      *Classification*:  Class A-1 consists of all Allowed Other Secured

27  Claims against USACM.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

ii.     *Treatment*:  Each holder of an Allowed Other Secured Claim shall be treated pursuant to Option A or Option B below, at the discretion of USACM.

**Option A:**  Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:**  USACM shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class A-2 is unimpaired, and the holders of Allowed Class A-2 Claims are presumed to vote in favor of the Plan.

**Class A-3: Priority Unsecured Claims**

i.     *Classification*:  Class A-3 consists of all Allowed Priority Unsecured Claims against USACM.

ii.     *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class A-3 is unimpaired, and the holders of Allowed Class A-3 Claims are presumed to vote in favor of the Plan.

**Class A-4: General Unsecured Claims**

i.     *Classification*:  Class A-4 consists of all Allowed General Unsecured Claims against USACM, including the Allowed Unremitted Principal Claims, the Allowed Direct Lender Unsecured Claims, the Allowed FTDF Unsecured Claims, the Allowed DTDF Unsecured Claims, and all Allowed Penalty Claims.

1      ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim

2  shall receive a beneficial interest in the USACM Trust, and on account of the Allowed Claim may

3  receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed

4  unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees,

5  costs, and expenses of implementation of the USACM Plan and USACM Trust.  Class A-4 is

6  impaired, and the holders of Allowed Class A-4 Claims are entitled to vote to accept or reject the

7  Plan.  All Allowed Penalty Claims shall be subordinated in payment to the payment in full of all

8  Allowed General Unsecured Claims.

9                      **Class A-5: Direct Lender Compromise Claims**

10      i.    *Classification*:  Class A-5 Consists of all Direct Lenders.

11      ii.    *Treatment*:  In exchange (and as a compromise) for the release by

12  USACM, FTDF, USA Realty, USA Securities of claims against the Direct Lenders under this

13  Plan, including Claims relating to surcharge, recharacterization of Direct Lender Loans, and the

14  collection of prepetition accrued but unpaid fees due under Loan Servicing Agreements, Direct

15  Lenders (a) acknowledge that the Prepaid Interest constitutes an asset of the USACM Estate (or

16  will otherwise transfer their ownership rights, if any, in the Prepaid Interest to the USACM

17  Estate); (b) agree that up to $605,000 of the 2% Holdback (on a Pro Rata basis based on unpaid

18  principal Loan balances of those Direct Lenders___ in the 2% Holdback) will be used to

19  reimburse USACM for the Allowed Administrative Expense Claims of Professionals employed by

20  the Direct Lender Committee; and (c) agree that, with respect to servicing fees accruing  prior to

21  the Effective Date, USACM will retain its contractual servicing fee due under the Loan Servicing

22  Agreements and, with respect to Loan Servicing Agreements which provide that USACM may

23  collect "up to" a maximum amount for such servicing fees, USACM will retain the maximum

24  amount for such servicing fees as provided under the Loan Servicing Agreement.  Class A-5 is

25  impaired, and the holders of Allowed Class A-5 Claims are entitled to vote to accept or reject the

26  Plan.

27                      **Class A-6: Subordinated Claims**

28      i.    *Classification:*  Class A-6 consists of all Subordinated Claims against USACM.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

ii.    *Treatment:*  Each holder of a Subordinated Claim shall receive no distribution under the Plan.

### Class A-7: Equity Interests

i.    *Classification*:  Class A-7 consists of all Equity Interests in USACM.

ii.    *Treatment*:  Any and all Equity Interests in USACM, regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will receive no distribution under the Plan.  Class A-7 is impaired, and the holders of Class A-7 Equity Interests are deemed to reject the Plan.

### FTDF – (Classes B-1 through B-5)

### Class B-1: Secured Tax Claims

i.    *Classification*:  Class B-1 consists of all Allowed Secured Tax Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class B-1 is unimpaired, and the holders of Allowed Class B-1 Claims are presumed to vote in favor of the Plan.

### Class B-2: Other Secured Claims

i.    *Classification*:  Class B-2 consists of all Allowed Other Secured Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed Other Secured Claim shall be treated pursuant to Option A or Option B below, at the discretion of FTDF.

**Option A:**  Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Option B:**  FTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class B-2 is unimpaired, and the holders of Allowed Class B-2 Claims are presumed to vote in favor of the Plan.

## Class B-3: Priority Unsecured Claims

i.    *Classification*:  Class B-3 consists of all Allowed Priority Unsecured Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class B-3 is unimpaired, and the holders of Allowed Class B-3 Claims are presumed to vote in favor of the Plan.

## Class B-4: General Unsecured Claims

i.    *Classification*:  Class B-4 consists of all Allowed General Unsecured Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim shall be paid in full on the Effective Date, plus Postpetition Interest.  Class B-4 is unimpaired, and the holders of Allowed Class B-4 Claims are presumed to vote in favor of the Plan.

## Class B-5: Equity Interests

i.    *Classification*:  Class B-5 consists of all Allowed Equity Interests in FTDF.

ii.    *Treatment*:  All holders of Allowed Equity Interests in FTDF shall (a) retain their Pro Rata Share of all distributions received after the Petition Date and, after

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

payment of the FTDF Payment, (b) receive a Pro Rata Share of Allocated Net Sale Proceeds after satisfaction of all Allowed unclassified Claims, all Allowed Class B-1, B-2, B-3 and B-4 Claims, and any and all post-Effective Date fees, costs and expenses of implementation of the Plan for FTDF, and (c) receive a Pro Rata Share of the USACM Trust recoveries (subject to the compromise with DTDF) on account of the Allowed FTDF Unsecured Claim.  Class B-5 is impaired, and the holders of Allowed Class B-5 Equity Interests are entitled to vote to accept or reject the Plan.

**DTDF – (Classes C-1 through C-5)**

**Class C-1: Secured Tax Claims**

i.    *Classification*:  Class C-1 consists of all Allowed Secured Tax Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class C-1 is unimpaired, and the holders of Allowed Class C-1 Claims are presumed to vote in favor of the Plan.

**Class C-2: Other Secured Claims**

i.    *Classification*:  Class C-2 consists of all Allowed Other Secured Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed Other Secured Claim against DTDF shall be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF.

**Option A:**  Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:**  Post-Effective Date DTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b)

fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class C-2 is unimpaired, and the holders of Allowed Class C-2 Claims are presumed to vote in favor of the Plan.

### Class C-3: Priority Unsecured Claims

i.    *Classification*:  Class C-3 consists of all Allowed Priority Unsecured Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class C-3 is unimpaired, and the holders of Allowed Class C-3 Claims are presumed to vote in favor of the Plan.

### Class C-4: General Unsecured Claims

i.    *Classification*:  Class C-4 consists of all Allowed General Unsecured Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim shall be paid in full on the Effective Date, plus Postpetition Interest.  Class C-4 is unimpaired, and the holders of Allowed Class C-4 Claims are presumed to vote in favor of the Plan.

### Class C-5: Equity Interests

i.    *Classification*:  Class C-5 consists of all Allowed Equity Interests in DTDF.

ii.    *Treatment*:  All holders of  Allowed Equity Interests shall (a) retain their interests in DTDF and any distributions received from the Petition Date, and, after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, C-3 C-4 Claims and the post-Effective Date costs, fees and expenses for implementation of the Plan for DTDF, including without limitation costs, fees, and expenses incurred by Post-Effective Date DTDF under the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   DTDF Amended Operating Agreement, (b) receive a Pro Rata Share of the assets of Post-

2   Effective Date DTDF, and (c) receive a Pro Rata Share in the USACM Trust recoveries on

3   account of the Allowed DTDF Unsecured Claim.  Class C-5 is impaired, and the holders of

4   Allowed Class C-5 Equity Interests are entitled to vote to accept or reject the Plan.

5           **USA Realty – (Classes D-1 through D-5)**

6           **Class D-1: Secured Tax Claims**

7                   i.      *Classification*:  Class D-1 consists of all Allowed Secured Tax

8   Claims against USA Realty.

9                   ii.     *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

10  paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

11  Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class D-1 is

12  unimpaired, and the holders of Allowed Class D-1 Claims are presumed to vote in favor of the

13  Plan.

14          **Class D-2: Other Secured Claims**

15                  i.      *Classification*:  Class D-2 consists of all Allowed Other Secured

16  Claims against USA Realty.

17                  ii.     *Treatment*:  Each holder of an Allowed Other Secured Claim against

18  USA Realty shall be treated pursuant to Option A or Option B below, at the discretion of USA

19  Realty.

20          **Option A:**  Allowed Other Secured Claims shall be paid in full on or before the

21  later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date

22  the Other Secured Claim becomes an Allowed Claim; or

23          **Option B:**  USA Realty shall surrender the property securing the Allowed Other

24  Secured Claim to the holder of such Claim by making the property reasonably available to such

25  holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

26  Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing

27  an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of

28  such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class D-2 is unimpaired, and the holders of Allowed Class D-2 Claims are presumed to vote in favor of the Plan.

### Class D-3: Priority Unsecured Claims

i. *Classification*: Class D-3 consists of all Allowed Priority Unsecured Claims against USA Realty.

ii. *Treatment*: Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise. Class D-3 is unimpaired, and the holders of Allowed Class D-3 Claims are presumed to vote in favor of the Plan.

### Class D-4: General Unsecured Claims

i. *Classification*: Class D-4 consists of all Allowed General Unsecured Claims against USA Realty.

ii. *Treatment*: Each holder of an Allowed General Unsecured Claim against USA Realty shall receive a Pro Rata Share of assets of the Estate of USA Realty after payment in full of all Allowed unclassified Claims, and all Allowed Class D-1, D-2 and D-3 Claims. Class D-4 is impaired, and the holders of Allowed Class D-4 Claims are entitled to vote to accept or reject the Plan.

### Class D-5: Equity Interests

i. *Classification*: Class D-5 consists of all Allowed Equity Interests in USA Realty.

ii. *Treatment*: Any and all Equity Interests in USA Realty, regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will receive no distribution under the Plan. Class D-5 is impaired, and the holders of Allowed Class D-5 Equity Interests are deemed to reject the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1     **USA Securities – (Classes E-1 through E-5)**

2          **Class E-1: Secured Tax Claims**

3                    i.      *Classification*:  Class E-1 consists of all Allowed Secured Tax

4     Claims against USA Securities.

5                    ii.     *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

6     paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

7     Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class E-1 is

8     unimpaired, and the holders of Allowed Class E-1 Claims are presumed to vote in favor of the

9     Plan.

10          **Class E-2: Other Secured Claims**

11                   i.      *Classification*:  Class E-2 consists of all Allowed Other Secured

12    Claims against USA Securities.

13                   ii.     *Treatment*:  Each holder of an Allowed Other Secured Claim against

14    USA Securities shall be treated pursuant to Option A or Option B below, at the discretion of USA

15    Securities.

16          **Option A:**  Allowed Other Secured Claims shall be paid in full on or before the

17    later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date

18    the Other Secured Claim becomes an Allowed Claim; or

19          **Option B:**  USA Securities shall surrender the property securing the Allowed Other

20    Secured Claim to the holder of such Claim by making the property reasonably available to such

21    holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

22    Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing

23    an Allowed Other Secured Claim has been lost or destroyed, USA Securities shall provide notice

24    of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall

25    constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of

26    this Option B.

27          Class E-2 is unimpaired, and the holders of Allowed Class E-2 Claims are

28    presumed to vote in favor of the Plan.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Class E-3: Priority Unsecured Claims**

i.    *Classification*:  Class E-3 consists of all Allowed Priority Unsecured Claims against USA Securities.

ii.    *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class E-3 is unimpaired, and the holders of Allowed Class E-3 Claims are presumed to vote in favor of the Plan.

**Class E-4: General Unsecured Claims**

i.    *Classification*:  Class E-4 consists of all Allowed General Unsecured Claims against USA Securities.

ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim against USA Securities shall receive a Pro Rata Share of the assets of the Estate of USA Securities after payment in full of all Allowed unclassified Claims, and all Allowed Class E-1, E-2 and E-3 Claims.  Class E-4 is impaired, and the holders of Allowed Class E-4 Claims are entitled to vote to accept or reject the Plan.

**Class E-5: Equity Interests**

i.    *Classification*:  Class E-5 consists of all Allowed Equity Interests in USA Securities.

ii.    *Treatment:* Any and all Equity Interests in USA Securities, regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will receive no distribution under the Plan.  Class E-5 is impaired, and the holders of Allowed Class E-5 Equity Interests are deemed to reject the Plan.

## III.

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Voting Classes.

Holders of Allowed Class A-4, A-5,  D-4 and E-4 Claims are entitled to vote to accept or reject the Plan.  Holders of Allowed Class B-5 and C-5 Equity Interests are entitled to vote to accept or reject the Plan.  Holders of Allowed Class A-1, A-2, A-3, B-1, B-2, B-3, B-4, C-1, C-2,

41

C-3, C-4, D-1, D-2, D-3, E-1, E-2, E-3 Claims are deemed to accept the Plan. Holders of Allowed Class A-6, D-5 and E-5 Equity Interests are deemed to have rejected the Plan. An Entity holding an Allowed Claim or Equity Interest in more than one Class is entitled to vote in each Class.

**B.      Voting Rights of Holders of Disputed Claims and Disputed Equity Interests.**

Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim or Disputed Equity Interest will not be counted for purposes of voting on the Plan to the extent it is Disputed, unless the Court enters an order temporarily allowing the Disputed Claim or Disputed Equity Interest for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is without prejudice to the holder of the Disputed Claim or Disputed Equity Interest's right to seek to have its Disputed Claim or Disputed Equity Interest, as the case may be, Allowed for purposes of distribution under the Plan.

**Acceptance by Impaired Classes.**

An impaired Class of Claims shall have accepted the Plan if (1) the holders (other than any holder designated under Bankruptcy Code Section 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such class have voted to accept the Plan, and (2) more than one-half in number of the holders (other than any holder designated under Bankruptcy Code Section 1126(e)) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

An impaired Class of Equity Interests shall have accepted the Plan if the holders (other than any holder designated under Bankruptcy Code Section 1126(e)) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class, or subclass, have voted to accept the Plan.

**Nonconsensual Confirmation.**

In the event that the Classes entitled to vote to accept or reject this Plan fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtors, with the agreement of the Committees, reserve the right to (i) request that the Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b) and/or (ii) modify the Plan in accordance with Bankruptcy Code Section 1127(a) and request confirmation of the modified Plan. Further, as the Plan contains

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

a Plan for each of the five separate Debtors, the Debtors, with the agreement of the Committees,

reserve the right to request confirmation of the Plan for one or more, but less than all Debtors

under Section 1129(b) of the Bankruptcy Code.  In accordance with Section 1127 of the

Bankruptcy Code, the Debtors, with the agreement of the Committees, reserve the right to alter,

amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including documents

in the Plan Documents Supplement and the Direct Lender Supplement, for one or more or all of

the Debtors, including to amend or modify the Plan to satisfy the requirements of Section 1129(b)

of the Bankruptcy Code for one or more of the Debtors covered by the Plan.  In the event the

Debtors, with the agreement of all of the Committees, modify the Plan by withdrawing the Plan

for less than all of the Debtors, the Plan, as modified, will remain intact and unchanged for all

non-withdrawing Debtors.

## IV.

## IMPLEMENTATION OF THE PLAN

### A.    General Means of Implementation.

The Plan will be implemented and consummated through the means contemplated by §§

1123(a)(5)(A), (B) and (D), 1123(b)(2), 1123(b)(3)(A) and (B), and 1123(b)(4) of the Bankruptcy

Code, including by:

(1)    the transfer of certain Loan Servicing Agreements pursuant to the Asset Purchase

Agreement;

(2)    the sale of the Acquired Assets as set forth in section C of Art. IV of the Plan and

disbursement of the Allocated Net Sale Proceeds and certain other Cash of the Estates in

accordance with the Plan;

(3)    the transfer of certain assets of USACM to the USACM Trust pursuant to section D of Art.

IV of the Plan, the liquidation of those assets by the USACM Trust, the disbursement of Cash to

holders of Allowed USACM Unsecured Claims as USACM Trust beneficiaries in accordance with

the Plan and the USACM Trust Agreement, and the dissolution of USACM;

(4)    the transfer of the FTDF Transferred Claims and the making of the FTDF Payment;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(5)    the retention by Post-Effective Date DTDF of assets of DTDF pursuant to section D of Art. IV of the Plan, the liquidation of those assets by the Post-Effective Date DTDF, the disbursement of Cash to holders of Allowed Equity Interests in DTDF in accordance with the Plan, and the dissolution of DTDF;

(6)    the distribution of FTDF's share of the Allocated Net Sale Proceeds after satisfaction of all Allowed Claims against FTDF and the dissolution of FTDF; and

(7)    the liquidation of any assets of the USA Realty Estate and the USA Securities Estate, distribution of Cash to holders of Allowed Claims against USA Realty and USA Securities, respectively, in accordance with the Plan, and the dissolution of USA Realty and USA Securities.

### B.    No Substantive Consolidation.

On the Effective Date, all of the assets of each Debtor shall be sold, transferred, distributed or retained by such respective Debtor Estates, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan, with all proceeds of sold, transferred, or liquidated assets of each Debtor being retained by the respective Debtor's Estate, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan.  All Claims against and Equity Interests in the Debtors and their respective Estates shall be retained by the holders of Allowed Claims and Allowed Equity Interests against and in the respective Estates, except as otherwise provided for under the Plan.  The allowance, voting, treatment and distributions on account of Allowed Claims and Allowed Equity Interests shall be as set forth in the Plan on an individual Estate basis.  Notwithstanding any inference to the contrary in this section, the Equity Interests in USACM, USA Securities and USA Realty shall be retained only until the Effective Date, at which date, these Equity Interests shall be cancelled on an individual Estate basis under the Plan.

### C.    Asset Sale Transaction.

The Plan will be implemented in part by the Asset Sale Transaction.  In implementation of the Asset Sale Transaction, USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, have entered into the Asset Purchase Agreement.  The Asset Purchase Agreement and the Bid Procedures Order provide that the Acquired Assets are sold to SPCP Group, LLC or, as part of the Auction, to a Third Party

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Bidder making a Higher and Better Offer.  Pursuant to the Asset Sale Transaction, the Asset

2    Purchaser (either SPCP Group, LLC or a Third Party Bidder as determined by the Auction) will

3    purchase the following Acquired Assets:

4            1.     FTDF's proportional interest in 44 different Loans for Cash consideration of

5    $46 million, subject to certain adjustments; and

6            2.     USACM's post-Closing rights to service Loans pursuant to the Loan

7    Servicing Agreements for the Loans and related personal property for Cash consideration based on

8    the future (A) collection of servicing fees, (B) collection of default rate interest, and (C) other

9    payments and obligations set forth in the Asset Purchase Agreement.

10        Except as expressly agreed to otherwise by the Debtors and the Asset Purchaser, the

11   Acquired Assets will be sold free and clear of all liens, Claims, encumbrances, rights of third

12   parties and interests.  The Confirmation Order shall constitute an Order pursuant to Section 363(b)

13   and (f) of the Bankruptcy Code authorizing the sale of the Estates' interests in the Acquired Assets

14   to the Asset Purchaser.  The Confirmation Order shall provide that the Asset Purchaser is a good

15   faith purchaser of assets within the meaning of Section 363(m) of the Bankruptcy Code and has

16   paid fair consideration and reasonable equivalent value of the Acquired Assets that are purchased.

17   Except as set forth in the Asset Purchase Agreement and the Plan, the Asset Purchaser shall have

18   no liability for Claims or Equity Interests against the Debtors (whether or not currently known)

19   based on its purchase of Acquired Assets.

20        After the Auction, the Asset Sale Transaction shall be approved in connection with

21   Confirmation of the Plan.  The Allocated Net Sale Proceeds from the Asset Sale Transaction shall

22   be distributed to FTDF and USACM Trust, respectively, on the Effective Date of the Plan.

23                **D.**     **Post-Effective Date Entities.**

24        **The USACM Trust.**

25        The USACM Trust shall be governed and created pursuant to the Plan and the USACM

26   Trust Agreement.  A copy of the proposed USACM Trust Agreement shall be included in the Plan

27   Documents Supplement.  The USACM Trust shall have the discretion, subject to review by the

28   USACM Trust Committee appointed in accordance with the USACM Trust Agreement, to retain

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    and compensate counsel, compensate the USACM Trustee, compensate the Debtors' Professionals

2    for any assistance of information requested of them by the USACM Trust, employ staff or agents,

3    object to Claims, realize assets, whether by suit, compromise, release or otherwise, and take all

4    actions reasonable to maximize the recovery to beneficiaries of the USACM Trust.  The USACM

5    Trust Agreement shall provide for all expense reserves necessary for the USACM Trust.

6            The USACM Trustee shall be approved by the Court at the Confirmation Hearing.  The

7    USACM Committee will propose the Person to serve as the USACM Trustee, after advice and

8    consent of USACM and the other Committees, and will provide all disclosures required respecting

9    the Person pursuant to Sections 1129(a)(4) and (a)(5) of the Bankruptcy Code, not less than ten

10   (10) days before the Confirmation Hearing.

11           The USACM Trust shall be funded with all assets of the USACM Estate not collected or

12   disposed of prior to the Effective Date, including Cash and noncash proceeds.  Assets of the

13   USACM Estate shall include the USACM Loans, the Prepaid Interest (including Prepaid Interest

14   collected by the Asset Purchaser post-Effective Date and including the DTDF Prepaid Interest,

15   subject to the objection of the DTDF Committee, which shall be determined by the Court if not

16   settled), the USACM Accounts (including USACM Estate's share of the IP $58 Million

17   Promissory Note), all Litigation Claims, including without limitation the Non-Debtor Insider

18   Litigation, belonging to the USACM Estate, and all servicing and related fees to be retained by

19   USACM as set forth in the Asset Purchase Agreement and which will be included in the Asset

20   Sale Transaction to the Asset Purchaser.  The USACM Trust shall receive its share of the Non-

21   Debtor Insider Litigation of the USACM Estate and may, without further order of the Court, enter

22   into a joint prosecution or sharing agreement with Post-Effective Date DTDF.

23           The beneficiaries of the USACM Trust will be holders of all Allowed USACM Unsecured

24   Claims, including the Allowed Unremitted Principal Claims, the DTDF Unsecured Claim, the

25   Direct Lender Unsecured Claims, and the FTDF Unsecured Claim.

26           Distributions from the USACM Trust shall be made directly to the holders of Allowed

27   USACM Unsecured Claims, including holders of Unremitted Principal Claims, holders of

28   Allowed Direct Lender Unsecured Claims and holders of Allowed Equity Interests in FTDF,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  except that distributions on account of the Allowed DTDF Unsecured Claim shall be made to the

2  Post-Effective Date DTDF, Pro Rata based upon the Allowed amount of such Claims; provided,

3  however, that distributions on account of the Allowed FTDF Unsecured Claim shall be transferred

4  to Post-Effective Date DTDF until Post-Effective Date DTDF obtains the DTDF 85% Recovery

5  and thereafter, distributions on account of the FTDF Unsecured Claim shall be made directly to

6  holders of Allowed Equity Interests in FTDF.  There shall be no separate trusts or Post-Effective

7  Date Entities for FTDF or the holders of Allowed Direct Lender General Unsecured Claims.  All

8  costs of distribution allocable to a particular group of beneficiaries shall be paid from such

9  respective distributions in accordance with the USACM Trust Agreement.

10         **Post-Effective Date DTDF.**

11         Post-Effective Date DTDF shall be governed pursuant to the Plan and the DTDF Amended

12  Operating Agreement.  A copy of the DTDF Amended Operating Agreement shall be included in

13  the Plan Documents Supplement.  Allowed Equity Interests in DTDF shall survive the Effective

14  Date, and be the sole beneficiaries of Post-Effective Date DTDF.

15         The DTDF Amended Operating Agreement will modify the DTDF Operating Agreement

16  to include, but not be limited to, the elimination of the management provisions and fees relating to

17  USA Realty.  The DTDF Amended Operating Agreement will also include all disclosures required

18  under Sections 1129(a)(4) and (a)(5) of the Bankruptcy Code.  Post-Effective Date DTDF, through

19  the DTDF Administrator, shall have the discretion, subject to review by the DTDF Post-Effective

20  Date Committee in accordance with the DTDF Amended Operating Agreement, to realize assets,

21  whether by suit, compromise, release or otherwise.  The DTDF Amended Operating Agreement

22  shall provide for all expense reserves necessary for Post-Effective Date DTDF.

23         The DTDF Committee will propose the Person to serve as the DTDF Administrator, after

24  advice and consent of DTDF, and will provide all disclosures required respecting the Person

25  pursuant to Sections 1129(a)(4) and (a)(5) of the Bankruptcy Code, not less than ten (10) days

26  before the Confirmation Hearing.  The DTDF Administrator shall be appointed by the Court at the

27  Confirmation Hearing.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Post-Effective Date DTDF shall retain the DTDF Estate and shall be funded by and consist of all assets of the DTDF Estate not collected or disposed of prior to the Effective Date, including all Cash and noncash proceeds.  The assets of the DTDF Estate retained by Post-Effective Date DTDF include the DTDF Loans (including but not limited to rights associated with the former Epic and Sheraton Loans and the Loan Servicing Agreements for the Excluded DTDF Loans), the FTDF Transferred Assets, all Litigation Claims, including without limitation the Non-Debtor Insider Litigation, belonging to the DTDF Estate, and the DTDF Estate's share of the IP $58 Million Promissory Note.  Post-Effective Date DTDF shall retain its share of the Non-Debtor Insider Litigation and may, without further order of the Court, enter into a joint prosecution or sharing agreement with the USACM Trust.  Post-Effective Date DTDF shall also be funded with Pro Rata distributions from the USACM Trust on account of the Allowed DTDF Unsecured Claim.

### E.    Intercompany Compromises.

The Plan will effect the following intercompany compromises:

1.    <u>The USACM/Direct Lender Compromise</u>

(A)    *Release*: USACM releases all Claims against Direct Lenders, including but not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of prepetition accrued but unpaid fees due under the Loan Servicing Agreements.

(B)    *Loan Servicing Agreements*:  All rights of USACM as servicer under the Loan Servicing Agreements transferred without modification pursuant to the Plan and the Asset Purchase Agreement shall be free and clear of all liens, Claims, interests, obligations and encumbrances whatsoever under Sections 363 and 1123 of the Bankruptcy Code and any other applicable Sections of the Bankruptcy Code.

(C)    *Tax Reporting*:  USACM shall prepare and timely transmit all required Forms 1098 and 1099 for calendar year 2006 in respect of the Acquired Assets.

(D)    *Prepaid Interest*:  Claims for Prepaid Interest, offsets, or holdbacks from Direct Lenders under the Plan (whether collected from the Borrowers or the Direct Lenders) shall be property of the USACM Estate free and clear of all liens, Claims and interests.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(i)  <u>Pre-Effective Date Prepaid Interest</u> – Claims for Prepaid Interest, offsets, or holdbacks from Direct Lenders collected through the Effective Date are retained by USACM, and will be used to satisfy Allowed unclassified Claims and Allowed Class A-1, A-2 and A-3 in accordance with the Plan, with any excess being contributed to the USACM Trust.

(ii)  <u>Post-Effective Date Prepaid Interest</u> – The Prepaid Interest shall be collected post-Effective Date through an assignment of Prepaid Interest to the USACM Trust, which shall survive the Effective Date, so that the Asset Purchaser or any substitute or subsequent servicer will continue to net Prepaid Interest sums due from Direct Lenders in accordance with the Plan and will collect Prepaid Interest from Borrowers, and remit those amounts to the USACM Trust, except as otherwise provided herein.

(iii)  <u>Post-Effective Date Causes of Action</u> – The statute of limitations for recovery of the Prepaid Interest as a fraudulent transfer shall be tolled for two (2) years.  Recovery of Prepaid Interest by USACM or the USACM Trust as a result of the payment of Prepaid Interest under the Plan via a pre-Effective Date or post-Effective Date netting shall be a complete defense to all claims for recovery of Prepaid Interest.

(E)  *2% Holdback*:  From the 2% Holdback, Direct Lenders shall reimburse USACM (on a Pro Rata basis based upon unpaid principal Loan balance of those Direct Lenders with funds in the 2% Holdback) for Allowed Administrative Expense Claims of Professionals employed by the Direct Lenders Committee up to a maximum amount cap of $605,000.  In addition to the foregoing, USACM will also retain its contractual servicing fees due under the Loan Servicing Agreements.

(F)  *Post-Effective Date Offsets*: The Direct Lenders may not offset sums due post-Effective Date to the servicing agent, *i.e.,* the Asset Purchaser, for Claims of Lenders against USACM.

(G)      *Pre-Effective Date Offsets*: The Direct Lenders may not offset pre-Effective Date accrued and unpaid servicing fees and sums under Paragraph 4 of the Loan Servicing Agreements (or any comparable paragraph that may be differently numbered) due to USACM against the Lenders' claims against USACM.

(H)      *Alternative Dispute Resolution*: There will be an Alternative Dispute Resolution option for objections to Direct Lender Unsecured Claims, objections to the Loan Servicing Fee Schedule, and any other litigation between Post-Effective Date DTDF and the USACM Trust.  The Alternative Dispute Resolution Agreement shall be Filed as part of the Direct Lender Supplement pursuant to section D of Art. I of the Plan.

2.      The USACM/FTDF Compromise.

(A)      *FTDF Unremitted Principal Claim*: The FTDF Unremitted Principal Claim shall be an Allowed General Unsecured Claim against USACM in the amount of $347,775 plus prepetition interest, if any.

(B)      *FTDF Unsecured Claim*: The FTDF Unsecured Claim against USACM is the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM Committee by no later than the date of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided, however, that the USCM Committee and the FTDF Committee or, after the Effective Date, the USACM Trust and the FTDF Committee, may agree at any time as to the amount that represents the FTDF Unsecured Claim without further Court order by filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and the Direct Lender Committee regarding the issue.

(C)      *FTDF Prepaid Interest*: The FTDF Prepaid Interest is $2,557,307 and has been netted against the post-Petition Date FTDF collections.  The FTDF Prepaid Interest is being held in the USACM collection account and, upon the Effective Date of the Plan, USACM shall be permitted to retain the FTDF Prepaid Interest as an unencumbered asset of the USACM Estate.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(D)     *FTDF Management Fee*: The FTDF management fee payable to USA Realty, and then payable to USACM, of approximately $78,000 per month shall be waived in full for both prepetition and postpetition periods, through the earlier of January 31, 2007, or the Effective Date.  Any management fees paid by FTDF to USA Realty or USACM since the Petition Date shall be applied to reduce any obligations of FTDF to USACM under the Plan, and any remaining management fees shall be repaid by USACM to FTDF on the Effective Date. Management fees from July 2006 until the Effective Date shall be deposited in the USA Realty account and transferred to FTDF on the Effective Date.

(E)     *FTDF Servicing Fee*: The FTDF Loan Servicing Agreement provides for an "up to 3%" annual servicing fee.  FTDF shall be charged a 1% annual servicing fee for the period of the Petition Date through June 30, 2006.  Commencing on July 1, 2006 and ending on the earlier of (i) the Effective Date or (ii) January 31, 2007, FTDF shall be charged a 2.5% annual loan servicing fee.  To the extent any prepetition servicing fees are outstanding, such prepetition servicing fees are waived in full by USACM.

(F)     *FTDF's Servicer Advances*:  FTDF shall pay its proportionate share of all Servicer Advances incurred by USACM prior to the Closing of the Asset Sale Transaction; provided, however, that if FTDF pays the FTDF Debtors' Professionals' Fee/Cost Allocation, FTDF shall not be responsible for reimbursing Servicer Advances incurred by the Debtors' Professionals, except, solely for Servicer Advances incurred by firms other than Ray Quinney & Nebeker P.C., Mesirow Interim Financial Management, LLC or Schwartzer & McPherson.  If USACM receives payment from any source for Servicer Advances that have been previously paid by FTDF (including proceeds from the sale of the respective secured real property), then USACM shall reimburse FTDF for such Servicer Advances paid by FTDF pursuant to this Paragraph.

(G)     *FTDF's Debtors' Professionals' Fee/Cost Allocation*:  FTDF's obligation for the Allowed Administrative Expense Claims of the Debtors' Professionals' shall be limited to the FTDF's Debtors' Professionals' Fee/Cost Allocation through the earlier of (i) the Effective Date or (ii) January 31, 2007.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(H)    *January 31, 2007*: In the event the Effective Date does not occur by January 31, 2007, the parties' settlement regarding FTDF's payment of servicing fees, Servicer Advances, the FTDF Management Fee, or the FTDF's Debtors' Professionals' Fees/Cost Allocation, as set forth in this Plan, shall no longer be enforceable as of February 1, 2007, and USACM and FTDF shall have reserved all of their rights with respect thereto for all periods after January 31, 2007, including the right of USACM to seek a Court order to compel FTDF's payment of such fees for all time periods after January 31, 2007.

(I)    *Overbid/Break-up Fee/Expense Reimbursement Allocation* : The Overbid Allocation shall be 85% to FTDF and 15% to USACM for any overbid consideration, and any incurred break-up fee or expense reimbursement obligation (as those terms are used in the Asset Purchase Agreement) shall be allocated in the same percentages, except as otherwise provided in the Stipulation memorializing the agreement between USACM and FTDF on the Overbid Allocation filed by the USACM Committee and the FTDF Committee with the Court, under seal, and served on the Debtors as confidential information, no later than ten (10) days prior to the Auction.

3.    <u>FTDF/DTDF Compromise</u>

(A)    *FTDF Payment:* On the Effective Date, FTDF shall pay the FTDF Payment to DTDF.

(B)    *DTDF Repayment of FTDF Payment*:  Upon achieving the FTDF Base Recovery Percentage (not as adjusted below), Post-Effective Date DTDF shall repay $500,000 of the FTDF Payment.  On each anniversary of the Effective Date, a further calculation shall be performed by increasing the dollar amount of the recovery that Post-Effective Date DTDF must obtain in order for Post-Effective Date DTDF to achieve the Adjusted FTDF Base Recovery Percentage.  Only upon achieving the Adjusted FTDF Base Recovery Percentage shall Post-Effective Date DTDF repay the balance of the FTDF Payment.

(C)    *Asset and Claims Transfer:* On the Effective Date, FTDF will transfer the FTDF Transferred Assets to Post-Effective Date DTDF.  Post-Effective Date DTDF (and not FTDF) shall bear the costs of pursuing a recovery on FTDF Transferred Assets.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    (D)    *FTDF Unsecured Claim Subordination:*  FTDF will transfer its Pro Rata

2    Share of the USACM Trust on account of the FTDF Unsecured Claim to DTDF until the Allowed

3    Equity Interests in DTDF receive the DTDF 85% Recovery.  After the DTDF 85% Recovery is

4    obtained, FTDF will retain its Pro Rata Share of the USACM Trust on account of the FTDF

5    Unsecured Claim.

6    **F.    Loan Distributions and Loan Servicing Agreements.**

7    After the Effective Date, the Direct Lenders and Post-Effective Date DTDF shall be

8    entitled to distributions from the Direct Lender Loans in accordance with the related Loan

9    Servicing Agreements and applicable Nevada law, by the Asset Purchaser, as the third party

10    servicer.  After the Effective Date, the Direct Lenders are obligated to comply with the terms of

11    the applicable Loan Servicing Agreements including the payment of fees as set forth on the Loan

12    Servicing Fee Schedule, subject to the resolution of any disputes regarding the same under the

13    Alternative Dispute Resolution option.  The Loan Servicing Fee Schedule shall be included in the

14    Direct Lender Supplement.

15    **G.    Preservation of Rights of Action and Defenses.**

16    Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are

17    expressly and specifically released in connection with the Plan or in any settlement agreement

18    approved during the Chapter 11 Cases, (1) any and all rights, Claims, causes of action, defenses,

19    and counterclaims accruing to or assertable by the Debtors or their Estates, including without

20    limitation Litigation Claims and Non-Debtor Insider Litigation,  shall remain assets of such

21    Estates or assertable by such Estates, and be transferred to any respective Post-Effective Date

22    Entity, whether or not litigation relating thereto is pending on the Effective Date, and whether or

23    not any such rights, Claims, causes of action, defenses, and counterclaims have been Scheduled or

24    otherwise listed or referred to in the Plan or Disclosure Statement, or any other document Filed

25    with the Court, and (2) neither the Debtors nor the Post-Effective Date Entities waive, relinquish,

26    or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim,

27    cause of action, defense, or counterclaim that constitutes property of such Debtor's Estate or is

28    assertable by such Estate: (A) whether or not such right, Claim, cause of action, defense, or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

counterclaim has been listed or referred to in the Schedules, the Plan, the Disclosure Statement, or any other document Filed with the Court, (B) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (C) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense, or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Debtors' Schedules, the Plan, the Disclosure Statement, or any other document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Post-Effective Date Entities' rights to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the Debtors or the Estates has or may have as of the Confirmation Date.  The Post-Effective Date Entities may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in accordance with what is in the best interests, and for the benefit, of the Post-Effective Date Entities.

### H.    Nondischarge of Debtors and Injunction.

**This Plan provides for an injunction of certain actions against the Debtors.  Holder of Claims against and Equity Interest in the Debtors may not pursue (1) property of the Estates other than through the Claims and Equity Interests allowance process; or (2) the Debtors or their agents.**

**Pursuant to Section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors.  However, no holder of a Claim or Equity Interest may receive any payment from or seek recourse against any assets that are distributed or to be distributed under the Plan, except for those assets**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**required to be distributed to such holder as expressly provided for in the Plan.  As of the Effective Date, all Entities are precluded from asserting against any assets that are distributed or to be distributed under the Plan any Claims, rights, causes of action, liabilities or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided in the Plan or Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity Interest and regardless of whether such an Entity has voted to accept the Plan.**

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability or Equity Interest against or in the Debtors that would be discharged upon confirmation of the Plan on the Effective Date but for the provisions of Section 1141(d)(3) of the Bankruptcy Code shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Equity Interest or right against assets or proceeds thereof that are to be distributed under the Plan, other than to enforce any right to a distribution with respect to such assets or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any assets to be distributed to creditors under the Plan, other than as permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets to be distributed under the Plan, other than as permitted by the Plan, provided that nothing contained herein shall limit the rights of any distributee under the Plan from taking any actions in respect of property distributed or to be distributed to it under the Plan.

## V.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Assumption.**

As part of the Direct Lender Supplement, the Debtors shall file a schedule of Executory Contracts and Unexpired Leases that shall set forth the executory contracts and unexpired leases

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

that are to be assumed or assumed and assigned effective upon the Effective Date and shall serve

such Schedule as provided in Art. I of the Plan governing the Direct Lender Supplement.  The

Schedule shall specify the Cure Payment, if any, that the Debtors believe must be tendered on the

Effective Date, in order to provide compensation in accordance with Section 365(b)(1)(A) and (B)

of the Bankruptcy Code.  The deadline for any objections to the assumption or the assumption and

assignment of such executory contracts or unexpired leases or to the proposed Cure Payment

amounts set forth in the schedule shall be the date for filing objections to the Plan, and no other

objections to the assumption and/or assumption and assignment of such executory contracts or

unexpired leases or to such Cure Payment amounts shall be timely.  In the event that any party to a

listed executory contract or unexpired lease objects to the assumption or the assumption and

assignment or to the proposed Cure Payment, such party must file with the Court and serve upon

counsel for the Debtors and the Committees a written objection and an accompanying declaration

in support thereof specifying the objection to the assumption and/or assignment and/or to the

amounts allegedly owing under Sections 365(b)(1)(A) and (B) of the Bankruptcy Code.  Failure to

timely file and serve such objection shall result in the determination that the assumption or

assumption and assignment is proper and that the tender of the Cure Payment, as specified in the

schedule shall provide, on the Effective Date, cure and compensation for any and all defaults and

unpaid obligations under such assumed executory contracts or unexpired leases.  The Debtors

reserve the right to respond and contest any objection filed by any party to an executory contract

or unexpired lease and, as part of the Confirmation Hearing, to request the Court for a

determination of the amount of the Cure Payment and/or the right of the Debtors to assume or

assume and assign such executory contract or unexpired lease.  If the other party to any executory

contract or unexpired lease establishes that the Cure Payment is greater than the amount listed by

the Debtors on the schedule, the Debtors reserve the right to respond to reject such executory

contract or unexpired lease or to assume such contract or unexpired lease by complying with

Bankruptcy Code section 365(b), at the Debtors' option.

Up to and until the day before the commencement of the Confirmation Hearing, the

Debtors may, by the Filing of an amended schedule served on the affected non-Debtor party to an

1   executory contract or unexpired lease, delete any executory contract or unexpired lease from the

2   previous schedule Filed with the Court.

3          Entry of the Confirmation Order shall constitute approval of the assumptions and

4   assignments under the Plan pursuant to Sections 365(a) and 365(f) of the Bankruptcy Code.  All

5   Cure Payments which may be required by Bankruptcy Code section 365(b)(1) shall be made on

6   the Effective Date or as soon thereafter as is practicable or as may otherwise be agreed by the

7   parties to any particular executory contracts or unexpired leases.

8   **Rejection.**

9          1.     __General__

10          Effective upon the Effective Date, the Debtors hereby reject all executory contracts and

11  unexpired leases that exist between the Debtors and any other Entities which have not previously

12  been rejected, except the Debtors do not reject those executory contracts and unexpired leases

13  (a) which are listed in the Schedule referred to in section A above and assumed on the Effective

14  Date, or (b) which are or have been specifically assumed, or assumed and assigned, by the Debtors

15  with the approval of the Court by separate proceeding in the Chapter 11 Cases.

16          All Allowed Claims arising from the rejection of executory contracts or unexpired leases,

17  whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims in

18  Class A-4 (USACM), Class B-4 (FTDF), Class C-4 (DTDF), Class D-4 (USA Realty) and

19  Class E-4 (USA Securities), respectively.

20          2.     __USACM Management and/or Operating Agreements__

21          USACM is a party to various management and/or operating agreements with non-Debtor

22  Entities.  Except as to the management and/or operating agreements with FTDF and DTDF which

23  are dealt with separately under this Plan, as part of the Schedule filed pursuant to the above section

24  A, USACM shall designate all such management and/or operating agreements that are to be

25  rejected, assumed or assumed and assigned under the Plan.  Notwithstanding the rejection of any

26  such management and/or operating agreement, USACM reserves the right to claim all fees or

27  other amounts owing USACM from the period prior to the date of the rejection.  All Allowed

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Claims arising from USACM's rejection of such executory contracts are General Unsecured

2    Claims of USACM and shall be treated under Class A-4 of the Plan.

3        **3.    Claims Bar Date**

4        A request for payment of any and all Claims allegedly arising from a Debtor's rejection of

5    executory contracts or unexpired leases under section B above, whether rejected under the Plan or

6    by separate proceeding, must be Filed with the Court on or before such date as the Court has fixed

7    or may fix by express order; provided, however, that if the Court has not entered an order fixing

8    such a date prior to the Confirmation Hearing, all such requests for payment must be made on or

9    before the first Business Day which is thirty (30) calendar days after the date of service of notice

10   of entry of the Confirmation Order.

11       All holders of Claims arising from the rejection of executory contracts or unexpired leases

12   under section B above, whether rejected under the Plan or by separate proceeding, must File a

13   request for payment in accordance with the Plan to have their Claims treated as Allowed Claims

14   hereunder.  Failure to File such a request for payment prior to the time set forth herein shall be

15   forever barred from asserting such Claims against the Debtors, the Estates, the Post-Effective Date

16   Entities and/or any other Entity or any of their respective property, and the Debtors, the Estates,

17   and the Post-Effective Date Entities, to the extent applicable, shall be discharged of any obligation

18   on such Claim or any other Claim related such Claim.

19

20       **CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

21   **Conditions to Confirmation.**

22       Confirmation of the Plan shall not occur unless and until each of the conditions set forth

23   below has been satisfied or duly waived by the Debtors.

24       1.    The USACM Trust Agreement and DTDF Amended Operating Agreement have

25   been Filed with the Court in form and substance acceptable to the Court, USACM, and DTDF,

26   respectively.

27       2.    The Plan is consistent with the terms of the Asset Purchase Agreement, except as

28   may be otherwise agreed to by the Asset Purchaser.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3. The Confirmation Order is in a form and substance acceptable to the Debtors and the Asset Purchaser.

4. The Court shall have entered the Confirmation Order.

**Conditions to Effective Date.**

The Effective Date of the Plan shall not occur unless and until each of the conditions set forth below has been satisfied or duly waived by the Debtors.

1. The Confirmation Order has been entered by the Court in a form and substance reasonably satisfactory to the Debtors, and the same is a Final Order.

2. All conditions precedent to the Closing of the Asset Sale Transaction have been satisfied or waived by the appropriate party and Asset Purchaser is prepared to, and does, close the Asset Sale Transaction on the Effective Date; and

3. The USACM Trust Agreement and the DTDF Amended Operating Agreement have been executed and approved by the Court, and there is sufficient Cash available to fund the Post-Effective Date Entities in accordance with the Plan in the amount necessary to pay all Claims that must be paid on the Effective Date.

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the USACM Trustee shall File and serve on each holder of a Claim or Equity Interest a written notice of the occurrence of the Effective Date.

### C. Waiver Of Conditions.

Except to the extent that a waiver would constitute a breach under the Asset Purchase Agreement or any substantially similar agreement with the Asset Purchaser, the Debtors may waive any of the above conditions to the Effective Date, in whole or in part and in their sole and absolute discretion, by Filing a written waiver. The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise thereto. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

### D.      Failure To Satisfy Conditions.

The Effective Date must occur on or before the later of: (1) February 16, 2007, or (2) such other date as may be agreed to between the Asset Purchaser and the Debtors or which is established by the Debtors, with the approval of the Court, after notice and a hearing.  If the Effective Date does not timely occur, the Confirmation Order shall automatically be vacated.  If the Confirmation Order is vacated, the Plan and the Confirmation Order shall be deemed null and void, of no force or effect and shall not be used by any party for any purpose and nothing in the Plan or the Confirmation Order shall prejudice or constitute a waiver or release of any right, Claim or remedy by or against the Debtors or any other party.

### DISTRIBUTION OF CONSIDERATION

**Objections To Claims.**

**Deadlines.**

Unless otherwise extended by the Court, objections to the allowance of Claims and Equity Interests shall be Filed and served upon the Entities asserting such Claims or Equity Interests as follows: (A) for any and all Claims and Equity Interests to which the General Bar Date applies, ninety (90) days after the Effective Date; (B) for any and all Claims to which the Administrative Claims Bar Date or the Professionals Administrative Bar Date applies,  thirty (30) days after the expiration of the respective Bar Date; and (C) for any and all Claims to which the Bar Date applicable under section B of Art. V of the Plan applies, thirty (30) days after the expiration of that Bar Date.

**Authority.**

The Post-Effective Date Entities, or, if there are no Post-Effective Date Entities, the Debtor or the FTDF Committee, shall be responsible for Filing objections to any and all Claims and Equity Interests that are Disputed Claims or Disputed Equity Interests asserted against its Estate. The Post-Effective Date Entities, or in the absence of the same,  the Debtors or the FTDF Committee have the authority to settle and compromise any objection to a Disputed Claim or Disputed Equity Interest, if appropriate, without further order of the Court, and they may assert

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  any and all Claims, rights of action, causes of action, counterclaims and defenses held by their

2  respective Estates.  The Estates, including the Post-Effective Date Entities, may, but shall not be

3  required to, set off or recoup against any Claim or Equity Interest and the distributions to made

4  pursuant to the Plan in respect of such Claim or Equity Interest, any counterclaims, setoffs, or

5  recoupments of any nature whatsoever that the Estates may have against the holder of the Claim or

6  Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest

7  shall constitute a waiver or release by the Estates or the Post-Effective Date Entities of any such

8  Claim, cause of action, setoff or recoupment.

9  **Disputed Claims And Equity Interests—Cash Reserves.**

10      **1.**    **General**

11      Except as may otherwise be agreed with respect to any Disputed Claim or Disputed Equity

12  Interest, no payment or distribution will be made with respect to all or a portion of any Disputed

13  Claim or Equity Interest until such Claim or Equity Interest is an Allowed Claim or Allowed

14  Equity Interest.  Payments and distributions to each holder of a Disputed Claim or Equity Interest

15  (to the extent that such Claim or Equity Interest, or any portion thereof, ultimately becomes an

16  Allowed Claim or Allowed Equity Interest) must be made in accordance with the Plan.

17      **2.**    **Establishment of Cash Reserves**

18      Prior to making any distribution on Allowed Claims and Equity Interests, the Post-

19  Effective Date Entities, or the Debtors, to the extent applicable, shall establish a Cash reserve for

20  each Disputed Claim and Equity Interest, including unclassified Claims.  Except as provided

21  below, the Cash reserve for a Disputed Claim or Equity Interest shall be equal the amount set forth

22  in the proof of Claim or Equity Interest, or if no proof of Claim or Equity Interest has been Filed,

23  the amount set forth for the Claim or Equity Interest on the Schedules.

24      **3.**    **Estimation**

25      As to any Disputed Claim or Disputed Equity Interest, the Post-Effective Date Entities, or

26  the Debtors, to the extent applicable, may request in their sole discretion that the Court estimate

27  such Claim or Equity Interest pursuant to Section 502(c) of the Bankruptcy Code, and set the Cash

28  reserve based on that estimation.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    **4.    Distribution Upon Allowance**

2    Within five (5) Business Days of a Disputed Claim or Disputed Equity Interest becoming

3    an Allowed Claim or Equity Interest, the holder of such Claim or Interest shall be paid in

4    accordance with the Plan from the Cash reserve.  The amount of Cash released from Cash reserve

5    to make such a distribution shall be calculated on a Pro Rata basis, so that the holder of the newly

6    Allowed Claim or Equity Interest receives a distribution equal to the total percentage distributions

7    made prior to the date that its Claim or Equity Interest was Allowed to the holders of other

8    Allowed Claims or Allowed Equity Interests in the same Class.

9    **5.    Release of Cash Reserves**

10    If a Disputed Claim or Disputed Equity Interest, or any portion thereof, is disallowed, the

11    Cash reserve shall be released for distribution to holders of Allowed Claims and Allowed Security

12    Interests in accordance with the Plan.  If a Disputed Claim or Disputed Equity Interest, or any

13    portion thereof becomes an Allowed Claim or an Allowed Equity Interest in an amount that is less

14    than the Cash reserve for such Claim or Equity Interest, the excess Cash reserve related to such

15    Claim or Equity Interest shall be released for distribution to holders of Allowed Claims and

16    Allowed Equity Interests in accordance with the Plan.

17    **Undeliverable or Returned Distributions.**

18    If (1) the Post-Effective Date Entities shall be unable, at the time that a distribution to

19    holders of Allowed Claims or Allowed Equity Interests is to be made under this Plan, to deliver

20    the portion of such distribution due a holder of an Allowed Claim or Allowed Equity Interest, (2)

21    any amount paid to the holder of an Allowed Claim or Allowed Equity Interest is returned as

22    undeliverable and the Post-Effective Date Entity is unable, with reasonable effort, to ascertain a

23    correct address for the holder entitled thereto within six (6) months of its return, or (3) any check

24    distributed in payment of an Allowed Claim or Allowed Equity Interest is neither returned nor

25    negotiated within six (6) months of the date distributed, then, in every such case, the Allowed

26    Claim or Allowed Equity Interest shall be deemed reduced to zero in amount and the holder

27    thereof shall have no further right to payment against or distribution from the Debtors, the Estates

28    or any Post-Effective Date Entities.  The Cash that, but for this Section, would have been payable

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   to the holders of such Allowed Claims or Allowed Equity Interests shall, to the extent applicable,

2   revert to the Post-Effective Date Entities, and will be available for application or distribution in

3   accordance with the terms of the Plan.

4           For purposes of this Paragraph, any undeliverable or returned distributions made by FTDF,

5   USA Securities and USA Realty, which Estates will have no Post-Effective Date Entities to act on

6   their behalf, shall be handled on behalf of those Debtors and their respective Estates by the

7   USACM Trust.

8   **De Minimis Distributions.**

9           No Cash payment of less than five (5) dollars shall be made by the Disbursing Agent for

10  each Estate.  Any Cash payment of less than five (5) dollars shall be held by the Disbursing Agent

11  of the relevant Estate, until a subsequent distribution, if any, results in an aggregate Cash payment

12  of over five (5) dollars.  To the extent that a final distribution would require a distribution of less

13  than five (5) dollars to a holder of an Allowed Claim against or Allowed Equity Interest in a

14  Debtor, such amount shall be deemed forfeited, and shall be redistributed to holders of Allowed

15  Claims against or Allowed Equity Interests in the Debtor who are to receive a final distribution in

16  excess of five (5) dollars on account of their Allowed Claim or Allowed Equity Interest.

17  **F.      Disbursing Agent.**

18          **1.      Disbursing Agent for Estates of FTDF, USA Securities, USA Realty**

19          In the Chapter 11 Cases of FTDF, USA Securities and USA Realty, the Debtors shall act

20  as Disbursing Agents under the Plan for their respective Estates and shall make all distributions

21  required under the Plan.  At any time after thirty (30) days following the Effective Date, such

22  Debtors may request that all future distributions of their respective Estates be handled by the

23  Disbursing Agent for the USACM Trust.

24          **2.      Disbursing Agent for the Estates of USACM and DTDF**

25          In the case of USACM and DTDF, the Post-Effective Date Entities shall act as Disbursing

26  Agents under the Plan for their respective Estates and shall make all distributions required under

27  the Plan.  Any Disbursing Agent may employ or contract with other Entities to assist in or perform

28  any distribution of property.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

### 3. Bond

Each Disbursing Agent shall serve without the posting of a bond, unless otherwise required by the Court or determined by FTDF, USA Securities, USA Realty or the Post-Effective Date Entities to be necessary.

### 4. Compensation

Whether the Disbursing Agents make distributions under the Plan themselves or they employ a third-party Entity to act on their behalf, the Disbursing Agents shall receive, without the need for Court approval, reasonable compensation for services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the relevant Estate or Post-Effective Date Entities on terms agreed to with the Post-Effective Date Entities or the relevant pre-Effective Date Committee, in the absence of a post-Effective Date Entity.

### G. Manner Of Payment Under The Plan.

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the applicable Disbursing Agent or by wire transfer from a domestic bank, at the option of such Disbursing Agent.

### H. Delivery Of Distributions.

Except as provided above for holders of unclaimed distributions, distributions to holders of Allowed Claims and Allowed Equity Interests shall be made by mail as follows: (1) at the addresses set forth on the respective proofs of Claim or Equity Interest by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Equity Interest; or (3) at the address reflected on the Schedules if no proof of Claim or Equity Interest is Filed and the Disbursing Agent has not received a written notice of a change of address.

### I. Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**J.      Old Instruments And Securities; Liens.**

**Rights of Persons Holding Instruments and Securities.**

Except as otherwise provided herein, as of the Effective Date, and whether or not surrendered by the holder thereof, all existing instruments and securities evidencing any Claims against or Equity Interests in the Debtors shall be deemed automatically cancelled and deemed void and of no further force or effect, without any further action on the part of any Person, and any Claims or Equity Interests under or evidenced by any instruments or securities shall be deemed discharged.  Notwithstanding the foregoing, the Equity Interests in DTDF shall survive the Effective Date and shall not be cancelled or discharged until the completion of the dissolution of DTDF as provided for in the Plan and the DTDF Amended Operating Agreement.

**Cancellation of Liens.**

Except as otherwise provided in the Plan or as necessary to evidence or secure the Loans, any lien securing any Secured Claim, shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such Person and to take such actions as may be requested by the Debtors or the Post-Effective Date Entities to evidence the release of such lien, including, without limitation, the execution, delivery and filing or recording of such releases as may be requested by the respective Debtors or Post-Effective Date Entities at the sole expense of such Post-Effective Date Entities or Estates.

**K.      Dates of Distribution.**

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after the Effective Date and, in any event, within thirty (30) days after the Effective Date.  Unless otherwise agreed by the applicable parties, any distribution required to be made upon a Disputed Claim or Disputed Equity Interest that becomes an Allowed Claim or Allowed Equity Interest shall be deemed timely made if made within five (5) Business Days of the Disputed Claim or Disputed Equity Interest or any portion thereof becoming an Allowed Claim or Allowed Equity Interest.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

2

3                                **Miscellaneous provisions**

4   **Limitation of Liability and Releases.**

5          On and after the Effective Date, none of the Debtors, the Debtors in Possession, the

6   Committees, the members of the Committees, nor any of their employees, officers, directors,

7   agents, or representatives, nor any Professionals employed by any of them, shall have or incur any

8   liability to any Entity for any authorized act taken or authorized omission made in good faith in

9   connection with or related to the Chapter 11 Cases or the Estates, including objections to or

10  estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances

11  or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or

12  document created in connection with the Plan.

13         Consistent with Section 1125(e) of the Bankruptcy Code, the Entities that have solicited

14  acceptances or rejections of the Plan and/or that have participated in the offer, issuance, sale, or

15  purchase of securities offered or sold under the Plan, in good faith and in compliance with the

16  applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or

17  participation, for violation of any applicable law, rule, or regulation governing the solicitation of

18  acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

19         As of the Effective Date, except for the objections to the allowance of the Direct Lender

20  Unsecured Claims, in consideration for the obligations, subordination, modifications of rights and

21  accommodations of the Direct Lenders and except as otherwise provided in the Plan, USACM,

22  FTDF, their Estates and the USACM Trust, on their own behalf (collectively, the "Debtor

23  Releasors"), shall be deemed to forever release, waive and discharge any and all Claims, demands,

24  debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings,

25  covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever

26  arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or

27  unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising

28  out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission,

66

1   transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including,

2   without limitation, in any way relating to the Direct Lenders, including any surcharge,

3   recharacterization, or substantive consolidation causes of action, or any other matter which any of

4   the Debtor Releasors or any person or entity claiming by, from, through, or under any of the

5   Debtor Releasors ever had, now has, or hereafter can, shall, or may have against the Direct

6   Lenders.  Notwithstanding the foregoing, nothing herein shall constitute a release of any

7   obligations under any Loan Servicing Agreement as to which USACM's servicing rights are being

8   transferred to the Asset Purchaser.

9          As of the Effective Date, in consideration for the obligations, subordination, modifications

10  of rights and accommodations of the Debtor Releasors and except as otherwise provided under the

11  Plan, the Direct Lenders, on their own behalf  (the "Direct Lender Releasors"), shall be deemed to

12  forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations,

13  actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts,

14  controversies, agreements, promises and rights whatsoever, whenever arising, whether known or

15  unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or

16  unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by

17  reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence,

18  fact or matter from the beginning of time to the Effective Date, including, without limitation, in

19  any way relating to the Debtor Releasors, the Debtor Releasors' Estates, the USACM and FTDF

20  Chapter 11 Cases, including any causes of action, or any other matter which any of the Direct

21  Lender Releasors or any person or entity claiming by, from, through, or under any of the Direct

22  Lender Releasors ever had, now has, or hereafter can, shall, or may have against the Debtor

23  Releasors.

24         As of the Effective Date, in consideration for the obligations, subordination, modifications

25  of rights and accommodations of FTDF, and the FTDF Estate, and except as otherwise provided

26  under the Plan, DTDF, the DTDF Estate, and Post-Effective Date DTDF on their own behalf ,

27  shall be deemed to forever release, waive and discharge any and all Claims, demands, debts,

28  liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever

2  arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or

3  unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising

4  out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission,

5  transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including,

6  without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case,

7  including any recharacterization, or substantive consolidation causes of action, or any other matter

8  which DTDF, the DTDF Estate, or Post-Effective Date DTDF or any Person or Entity claiming

9  by, from, through, or under any of DTDF, the DTDF Estate, or Post-Effective Date DTDF ever

10  had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

11        As of the Effective Date, in consideration for the obligations, subordination, modifications

12  of rights and accommodations of DTDF and the DTDF Estate and except as otherwise provided

13  under the Plan, FTDF and the FTDF Estate on their own behalf, shall be deemed to forever

14  release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions,

15  causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies,

16  agreements, promises and rights whatsoever, whenever arising, whether known or unknown,

17  suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured,

18  in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

19  connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter

20  from the beginning of time to the Effective Date, including, without limitation, in any way relating

21  to DTDF, the DTDF Estate, the DTDF Chapter 11 Case, including any recharacterization, or

22  substantive consolidation causes of action, or any other matter which FTDF, the FTDF Estate, or

23  any person or entity claiming by, from, through, or under any of FTDF or the FTDF Estate ever

24  had, now has, or hereafter can, shall, or may have against DTDF or the DTDF Estate.

25  **Execution of Documents and Corporate Action.**

26        The Debtors and Debtors in Possession, without any action by Equity Interests whatsoever,

27  shall execute such documents and take such other action as is necessary to effectuate the

28  transactions provided for in the Plan.

**C.     Notice of Effective Date.**

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the USACM Trustee shall File and serve on each holder of a Claim or Equity Interest a written notice of the occurrence of Effective Date.

**D.     Retention of Jurisdiction.**

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases, the assets and liabilities of the Estates and the Trust Estates, and the Plan to the fullest extent permitted by law, including, but not limited to:

1.     Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim or Equity Interest not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim and resolving any objections to the allowance or priority of Claims or Equity Interests;

2.     Hearing and determining any and all Claims, Causes of Action or rights that may be asserted or commenced by the Debtors or a post-Effective Date Entity against Persons, Entities or governmental units;

3.     Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Post-Effective Date Entities shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

4.     Hearing and determining the reasonableness and allowability of any principal Claim, attorney fee Claim, interest Claim or the charges asserted by a Secured Creditor against the Debtors, the Estates, or the Post-Effective Date Entities;

5.     Hearing and determining all matters related to any executory contracts and unexpired  leases to which a Debtor is a party or with respect to which a Debtor may be liable;

6.     Hearing and determining all matters related to the transfer of the Acquired Assets to the Asset Purchaser;

7.     Hearing and determining all matters related to Loan Servicing Agreements;

8.     Effectuating performance of and payments under the provisions of the Plan;

9.     Hearing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor Insider Litigation;

10.     Entering such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including USACM Trust Agreement and the DTDF Amended Operating Agreement;

11.     Hearing and determining disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan, such as the USACM Trust Agreement, the DTDF Amended Operating Agreement, and the Asset Purchase Agreement;

12.     Modifying the Plan, the USACM Trust Agreement or the DTDF Amended Operating Agreement at the request of the Debtors, the USACM Trustee or the DTDF Administrator and as provided by applicable law, including to cure any defect or omission, or to reconcile any inconsistencies in any order of the Court and the Plan, the USACM Trust Agreement or the DTDF Amended Operating Agreement;

13.     Issuing injunctions, entering and implementing other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan, the Asset Purchase Agreement, or the Confirmation Order;

14.     Entering and implementing such Orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

15.     Hearing and determining any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the USACM Trust Agreement, the DTDF Amended Operating Agreement, the Asset Purchase Agreement or any other asset purchase agreement entered into by the Debtors and a Third-Party Bidder;

16.     Enforcing all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

17.     Except as otherwise limited herein, recovering all assets of the Debtors and property of the Estates wherever located;

18.     Hearing and determining matters concerning state, local, and federal Taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

19.     Hearing and determining all questions and disputes regarding title to the assets to be administered pursuant to the Plan, and the validity and/or priority of any liens or Secured Claims against those assets;

20.     Hearing and determining all questions and disputes as to whether the payment of any Claim under the Plan should be subordinated to the payment of other Claims;

21.     Approving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the Plan;

22.     Hearing and determining such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

23.     Hearing and determining any matter relating the administration of the Estates by the Post-Effective Date Entities; and

24.     Entering a Final Decree closing the Chapter 11 Cases.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

### E.    Binding Effect.

The rights, benefits and obligations of any Entity or Person named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such Entity or Person.

### F.    Amendment, Modification and Severability.

1.    The Plan may be amended or modified before the Effective Date by the Debtors, with consent of the Committees, to the extent provided by Section 1127 of the Bankruptcy Code.

2.    The Debtors reserve the right to modify or amend the Plan upon a determination by the Court that the Plan, as it is currently drafted, is not confirmable pursuant to Section 1129 of the Bankruptcy Code.  To the extent such a modification or amendment is permissible under Section 1127 of the Bankruptcy Code, the Debtors reserve the right to sever any provisions of the Plan that the Court finds objectionable.

3.    Any modification of the USACM Trust by the beneficiaries thereof in accordance with the provisions of the USACM Trust Agreement shall not constitute a modification of the Plan under Section 1127 of the Bankruptcy Code.

### G.    Exhibits.

Any Exhibits to the Plan not Filed herewith will be Filed no later than ten (10) days prior to the commencement of the Confirmation Hearing.  The Exhibits will not be served with the Plan, but rather copies of all such Exhibits will be available upon written request to the Debtors' counsel.

### H.    No Admission.

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtors or the Estates with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estates.

### I.    1146(c) Exemption.

In accordance with Section 1146(c) of the Bankruptcy Code, the making delivery, filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  unrecorded) and/or the various instruments and documents of transfer as specified in or

2  contemplated by the Plan, including the documents related to the Asset Sale Transaction and/or

3  the exhibits thereto, are hereby exempt from taxation under any law imposing a recording tax,

4  stamp tax, transfer tax, or any similar tax.  The appropriate state or local government officers are

5  hereby directed to accept for filing or recording all Instruments of Transfer or other documents of

6  transfer to be filed and recorded in accordance with the Plan and the exhibits thereto, without

7  payment of any such tax or government assessment, and without the presentation of any affidavits,

8  instruments, or returns otherwise required for recording other than the Confirmation Order.  The

9  Court retains jurisdiction to enforce the foregoing direction by contempt proceedings or otherwise.

10  ### J.    General Authority.

11  The Debtors, the Committees, and the Post-Effective Date Entities shall execute such

12  documents, and take such other actions, as are necessary to effectuate the transactions provided for

13  in the Plan.

14  ### K.    Dissolution of Committees.

15  On the Effective Date, except as provided below, the Committees shall be disbanded and

16  their members shall be released and discharged from all rights and duties arising from, or related

17  to, the Chapter 11 Cases.  The USACM Committee and the DTDF Committee will not dissolve

18  unless and until the USACM Trustee and the DTDF Administrator are appointed and are

19  authorized to act.  The FTDF Committee will dissolve on the Effective Date, unless the FTDF

20  Committee is charged with prosecuting objections to Claims or any of the non-assignable FTDF

21  Litigation Claims on behalf of the FTDF Estate.

22  ### L.    Post-Effective Date Debtors.

23  ### 1.    USACM

24  USACM shall have authority to take actions on behalf of USACM and the USACM Estate

25  on and after the Effective Date until the date that the USACM Trustee is appointed for the

26  USACM Trust.  After the USACM Trust Assets are transferred to the USACM Trust and the

27  USACM Trust becomes effective in accordance with this Plan and the USACM Trust Agreement,

28  USACM shall be dissolved in accordance with the Confirmation Order and applicable state law.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2.    **DTDF**

On the Effective Date, Post-Effective Date DTDF shall have the exclusive authority to act on behalf of DTDF and the DTDF Estate. When the Plan has been fully implemented by Post-Effective Date DTDF and all assets of the DTDF Estate and Post-Effective Date DTDF have been fully liquidated and distributed and the DTDF Estate and Post-Effective Date DTDF fully administered, DTDF shall be dissolved in accordance with the Confirmation Order, the DTDF Amended Operating Agreement and applicable state law.

3.    **FTDF, USA Realty and USA Securities**

FTDF, USA Realty, and USA Securities shall have the authority to effect all transactions and take all actions required by the Plan on and after the Effective Date. FTDF and the FTDF Committee shall each have authority to prosecute (a) claim objections in the FTDF Estate, and (b) the non assignable FTDF Litigation Claims on behalf of FTDF subject to the compromise with DTDF set forth herein. After the actions set forth in this paragraph are completed, FTDF, USA Realty, and USA Securities shall be dissolved in accordance with the Confirmation Order and applicable state law.

## M.    Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Debtors, the Committees, the Post-Effective Date Entities, Direct Lenders, holders of Claims, holders of Equity Interests, and their respective successors and assigns.

## N.    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or by an express choice of law provision in any agreement, contract, document, or instrument provided for or executed in connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

### O.    Payment Dates.

Whenever any action, including any payment, distribution, or Filing of any objection, motion, or proof of Claim or Equity Interest is required to be made under the Plan on a day other than a Business Day, such payment, distribution, or filing shall instead be made, without interest, on the immediately following Business Day.

### P.    Headings.

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### Q.    No Waiver.

The failure of the Debtors or any other Entity to object to any Claim or Equity Interest for purposes of voting shall not be deemed a waiver of the Debtors' or the Post-Effective Date Entities' right to object to or examine such Claim or Equity Interest, in whole or in part.

### R.    Other Documents and Actions.

The Post-Effective Date Entities may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

### S.    Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of this Plan, the Court shall, with the consent of the Debtors and the Committees, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of this Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**T.** **Post-Confirmation Status Report.**

Within thirty (30) days of the Effective Date, the Debtors or a post-Effective Date Entity or the FTDF Committee, to the extent applicable, shall File a status report for each of the relevant Debtors setting forth what progress has been made toward the consummation of the confirmed Plan. The status report shall be served on the U.S. Trustee, the Debtors, prior to dissolution or transition to the Post-Effective Date Entities, the Post-Effective Date Entities, and any Entities who have Filed a request for such reports with the Court. Unless otherwise ordered, further status reports shall be Filed every ninety (90) days and served on the same Entities.

**U.** **Final Decree.**

Once each Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Post-Effective Date Entities, the Debtors, or another party, as the Court shall designate in the Confirmation Order, shall File a final report and account of all receipts and disbursements, and serve that report on the U.S. Trustee, and any other Entities entitled to service under any applicable law. Any such final report shall include a request that the Court enter a Final Decree in the Chapter 11 Case of the applicable Debtor.

**V.** **Revocation, Withdrawal, Cram-Down or Non-Consummation.**

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), rejection or assumption of any executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, any Debtor or any other Entity, (B) prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors, or (C) constitute an admission of any sort by the Debtors or any other Entity.

The Debtors reserve any and all rights they may have under Section 1129(b) of the Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Equity Interests.  Additionally, the Debtors reserve their right to seek Confirmation of the Plan in fewer than all of these Chapter 11 Cases.  In other words, if the Bankruptcy Court determines that a cram-down of the Plan pursuant to Section 1129(b) of the Bankruptcy Code is legally impermissible in regard to a particular Debtor and its Estate, then the Debtors will withdraw the Plan in regard to that particular Debtor, its Estate and its Chapter 11 Case and the Debtors may then proceed to seek Confirmation of the Plan in those Chapter 11 Cases herein in which the cram-down provisions of Section 1129(b) of the Bankruptcy Code may validly be exercised.

**W.    Notice to Certain Parties.**

All notices and documents to be effective for the following parties shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.    <u>The Debtors:</u>
Annette W. Jarvis, Esq.
Steven C. Strong, Esq.
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Facsimile:  (801) 532-7543
Email: ajarvis@rqn.com
Email: sstrong@rqn.com

    2.    <u>SPCP Group, LLC</u>

Michael Gatto
Silver Point Capital
Two Greenwich Plaza, 1st Floor
Greenwich, CT  06830
Facsimile: (203) 542-4100

and

James C. McCarroll, Esq.
Reed Smith, LLP

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

New York, NY 10022
Facsimile: (212) 521-5450

3.    <u>Direct Lender Committee</u>

Gerald M. Gordon, Esq.
Gregory E. Garman, Esq.
Gordon & Silver, Ltd.
3960 Howard Hughes Pkwy., Ninth Floor
Las Vegas, NV 89169
Facsimile: (702) 369-2666
Email: gmg@gordonsilver.com
Email: geg@gordonsilver.com

4.    <u>DTDF Committee</u>

Marc A. Levinson, Esq.
Orrick Herrington & Sutcliffe LLP
400 Capital Mall, Suite 3000
Sacramento, CA  95814-4497
Facsimile: (916) 329-4900
Email: malevinson@orrick.com

5.    <u>FTDF Committee</u>

Frank A. Merola, Esq.
Eve H. Karasik, Esq.
Stutman, Treister & Glatt, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Facsimile:  (310) 228-5788
Email:  fmerola@stutman.com
Email:  ekarasik@stutman.com

6.    <u>USACM Committee</u>

Rob Charles, Esq.
Lewis and Roca, LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
Facsimile:  (702) 949-8321
Email:  rcharles@lrlaw.com

1

2                         **REQUEST FOR CONFIRMATION**

3          The Debtors hereby request that the Court confirm the Plan pursuant to Bankruptcy Code

4   Section 1129(a), or, if necessary, pursuant to Bankruptcy Code Section 1129(b).

5   DATED: _____, 2006          **USA COMMERCIAL MORTGAGE COMPANY**

6                                        By: _____

7
                                         Its: _____
8   DATED: _____, 2006          **USA CAPITAL FIRST TRUST DEED FUND,**
                                         **LLC**
9
                                         By: _____
10
                                         Its: _____
11  DATED: _____, 2006          **USA CAPITAL DIVERSIFIED TRUST DEED**
                                         **FUND, LLC**
12
                                         By: _____
13
                                         Its: _____
14
15  DATED: _____, 2006          **USA CAPITAL REALTY ADVISORS, LLC**

16                                       By: _____

17
                                         Its: _____
18  DATED: _____, 2006          **USA SECURITIES, LLC**

19                                       By: _____

20                                       Its: _____

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122