1  Lenard E. Schwartzer, Nevada Bar No. 0399
2  Jeanette E. McPherson, Nevada Bar No. 5423                    **E-FILED ON NOVEMBER 7, 2006**
   SCHWARTZER & MCPHERSON LAW FIRM
3  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada  89146-5308
4  Telephone:  (702) 228-7590
   Facsimile:  (702) 892-0122
5  E-Mail:  bkfilings@s-mlaw.com

6  Attorneys for Debtors and Debtors-in-Possession

7                    **UNITED STATES BANKRUPTCY COURT**

8                          **DISTRICT OF NEVADA**

9

| | |
|---|---|
| 10  In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>11                                          Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| 12  In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>13                                          Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| 14  In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>15  FUND, LLC,<br>                                          Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| 16  In re:<br>USA CAPITAL FIRST TRUST DEED FUND,<br>17  LLC,<br>                                          Debtor. | **RESPONSE OF SCHWARTZER &<br>MCPHERSON LAW FIRM TO<br>OBJECTION TO ITS INTERIM FEE** |
| 18  In re:<br>USA SECURITIES, LLC,<br>19                                          Debtor. | **ORDER FILED BY THE<br>COMMITTEE FOR EQUITY<br>HOLDERS OF USA CAPITAL FIRST<br>TRUST DEED FUND, LLC (AFFECTS<br>ALL DEBTORS)** |
| 20  Affects:<br>       ☒ All Debtors<br>21     ☐ USA Commercial Mortgage Company<br>       ☐ USA Capital Realty Advisors, LLC<br>22     ☐ USA Capital Diversified Trust Deed Fund, LLC<br>       ☐ USA Capital First Trust Deed Fund, LLC<br>23     ☐ USA Securities, LLC | Date:  September 28, 2006<br>Time:  9:30 a.m. |

24

25      The Schwartzer & McPherson Law Firm (the "Firm"), attorneys for the "Debtors" hereby

26  files this Response to the objection to the Firm's proposed first interim fee order (the "Order")

27  filed by the Official Committee of Equity Holders of USA Capital First Trust Deed Fund, LLC

28  (the "Objection").  In support of its Response, the Firm respectfully states as follows:

SCHWARTZER & MCPHERSON LAW FIRM<br>2850 South Jones Boulevard, Suite 1<br>Las Vegas, Nevada 89146-5308<br>Tel: (702) 228-7590 · Fax: (702) 892-0122

1.      The Objection disputes the proposed allocation of fees and expenses to USA Capital First Trust Deed Fund, LLC (the "First Fund") and states that the Firm should allocate, on an interim basis 9.5% of its fees incurred in *all the cases* to First Fund.[1]  The Firm asserts (a) that its allocation to First Fund of 9% of the fees and costs previously allocated to USA Capital Commercial Mortgage, Inc. ("USACM") is appropriate (or, possibly, an underestimate) and (b) the difference is immaterial for a temporary allocation. In the original application, the Firm allocated 91.6% of its fees and expenses to USACM.  The balance of its fees and expenses were identified as being related to services for particular Debtors and allocated among the other estates. The Official Committee of Unsecured Creditors objected to this allocation. At the hearing, Ms. McPherson said, "[w]ith regard to the allocation issue,  we do believe our allocation that we have made is appropriate; however, we have also agreed to the temporary allocation of the fees that we have allocated to Commercial Mortgage, so that it's 80/10/10, and I'll go back and look at those fees again" (page 7, lines 14-18 of transcript of hearing).  There was no further comment on the allocation issue in this part of the hearing.  See partial transcript attached hereto as **Exhibit "1."**

2.      There are several alternatives the Court may consider:

a.      The proposed Order took 9% of the fees previously allocated to USACM ($244,438) and reallocated them to First Fund. Adding the 9% ($21,199.42) to the amounts previously identified as fees for services solely for the benefit of First Fund ($11,300) resulted in a fee allocation to First Fund of $33,291.46.

b.      If we took 10% of the fees previously allocated to USACM ($24,443) and reallocated them to First fund, the result would be a fee allocation to First Fund of $35,743.

c.      If we took 9.5% of the total fees allowed in the jointly administered cases ($265,016) and allocated them to First Fund, the result would be a fee allocation to First Fund of $25,176.52.

d.      If we took 10% of the total fees allowed in the jointly administered cases and allocated them to First Fund, the result would be a fee allocation to First Fund of $26,501.

---

[1] The wording in the Objection is "an amount not to exceed 9.5% of the fees sought by the debtors' professionals in the first interim fee application."

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    In addition, reimbursement of allowed costs in the amount of $5,465.09 should be

2    allocated in the same manner as the fees.

3    These alternatives all stay within the parameters of the *almost made* agreement of the

4    parties.  However, the Court, in its discretion could consider other alternatives. It is questionable

5    whether dealing with the very active First Fund Committee's counsel has only resulted in a 9.5%

6    increase in fees and costs in this case.  A 25% allocation (based upon there being four Official

7    Committees) would be more appropriate. An alternative would be to allocate the fees in proportion

8    to the fees generated  by each of the counsel for the four Official Committees on the assumption

9    that the more work performed by a Committee's counsel generates more work for Debtors'

10    counsel.

11    a.    Using the allocation pro rata based on the number of Committees, the allocation

12    would be:

13    (i)  USACM (2 Committees)                    $132,508

14    (ii)  First Fund (1 Committee)                 $66,254

15    (iii) Diversified Fund (1 Committee)           $66,254

16    b.    Using the allocation based on the amount of attorneys' fees incurred by the various

17    Committees for each entity, the allocation would be:

18    (i)  USACM ($485,637/$1,751,689x$265,016)        $73,473

19    (ii)  First Fund ($723,926/$1,751,689x$265,016)      $109,524

20    (iii) Diversified Fund ($542,126/$1,751,689x$265,016)   $82,019

21    3.    Based on the hearing transcript, there is a question of whether the 80/10/10

22    allocation was meant to apply to the total fees in the joint cases or only to the fees then allocated to

23    USACM.  Counsel for the Debtors intended one allocation method, counsel for the First Fund

24    Committee meant another. Counsel for the Debtors intended that the 80/10/10 allocation would be

25    made from the fees allocated to USACM because (a) Debtors' counsel had already made its own

26    allocation to each Debtor, i.e., fees had already been allocated to First Fund and Diversified Fund

27    for work that was solely related to those entities and (b) the 80/10/10 allocation was made at the

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  request of counsel for the USACM Unsecured Creditors Committee based upon that Committee's

2  belief that too much of the fees had been allocated to USACXM.

### POINTS AND AUTHORITIES

4  Joint administration is designed in large part to promote procedural convenience
   and cost efficiencies which do not affect the substantive rights of claimants or the
5  respective debtor estates. *Unsecured Creditors Committee v. Leavitt Structural
   Tubing Co.,* 55 B.R. 710 (N.D.Ill.1985), *aff'd,* 796 F.2d 477 (7th Cir.1986).

7  *In re McKenzie Energy Corp.*, 228 B.R. 854, 874 (Bankr. S.D.Tex. 1998).

8  The purpose of joint administration is to make case administration easier and less
   expensive than in separate cases, without affecting the substantive rights of
9  creditors (including inter-debtor claims). There is no merging of assets and
   liabilities of the debtors, and inter-entity claims survive. Creditors of each debtor
10 continue to look to that debtor for payment of their claims. The respective debtors
   are required to maintain separate banking and accounting records. **Any
11 professionals appointed in more than one related case must keep separate time
   and expense records, and must make separate applications for employment
12 and for compensation.**

14 *In re Parkway Calabasas Ltd.*, 89 B.R. 832, 836 (Bankr. C.D.Cal. 1988).

15 Even though three cases were administratively consolidated ("joint
   administration"), **"[a]ny professionals appointed in more than one related case
16 must keep separate time and expense records, and must make separate
   applications for employment and for compensation."** *In re Parkway Calabasas
17 Ltd.,* 89 B.R. 832, 836 (Bankr.C.D.Cal.1988). "The purpose of joint administration
   is to make case administration easier and less expensive than in separate cases,
18 without affecting the substantive rights of creditors (including inter-debtor claims).
   There is no merging of assets and liabilities of the debtors ...". *Id.*

20 *Matter of Hutter Const. Co., Inc.*, 126 B.R. 1005, 1012 (Bankr. E.D.Wis. 1991).

21 The Court's decision to approve joint administration was based on the expected savings of

22 administrative fees and costs. These savings are only possible by having one set of restructuring

23 personnel and attorneys even in the face of possible inter-company claims. *In re BH & P , Inc.*,

24 949 F.2d 1300, 1312 (3rd Cir. 1991) ("Considering the advantages of joint administration and the

25 place for single trustees in that process, we are not prepared to say that interdebtor claims mandate

26 disqualification of the trustee in every instance."). See also *In re Kliegl Bros. Universal Elec.*

27 *Stage Lighting Co., Inc.*, 189 B.R. 874, 881 (Bankr. E.D.N.Y. 1995) ("Finally, we note that

28 representation of a creditor and a debtor in the same case is not by itself a basis to deny fees under

SM's Reply To Objections To Proposed Order 110706       - 4 -

1    11 U.S.C. § 328(c). As set forth above, 11 U.S.C. § 327(c), which is incorporated into 11 U.S.C. §

2    328(c), provides that "a person is not disqualified for employment under this section solely

3    because of such person's employment by or representation of a creditor, unless there is an

4    objection by another creditor or the United States trustee, in which case the court shall disapprove

5    such employment if there is an actual conflict of interest.").

## CONCLUSION

7         A majority of the Firm's efforts in these cases has involved matters common to the three

8    estates (USACM, First Fund and Diversified Fund).[2]  This joint approach to administration has

9    saved an enormous amount of duplication of effort and expense to these three estates. In situations

10   where expenses of administration have not been clearly applicable to one estate, the Firm allocated

11   the fees of such USACM. All of the out of pocket expenses were also allocated to USACM.  By

12   using this approach to allocation, the Firm probably allocated all of the cost savings of joint

13   administration to First Fund and Diversified Fund.  A reallocation would be appropriate.  The

14   Firm attempted to do this by allocating 10% of USACM fees to First Fund and 10% to Diversified

15   Fund.

16        There is no dispute that the Court approved legal fees in the amount of $265,016.00 and

17   reimbursement for costs expended in the amount of $5,465.09 for a total of $270,481.09 for the

18   period April 13, 2006 through July 31, 2006, and authorized the Debtors to pay the fees and costs

19   allowed the Schwartzer & McPherson Law Firm.  From the Firm's point of view, there is no

20   conflict because each of these three Debtors has (or will have) the ability to pay administrative

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26

27   _____

28   [2] USA Capital Realty Advisors, LLC and USA Securities, LLC have few assets, no operations and
     few, if any, creditors other than investors who may claim mismanagement or misrepresentation.

SM's Reply To Objections To Proposed Order 110706      - 5 -

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   expenses. The question of allocation is left to the Court in the absence of a meeting of the minds

2   by the parties.

3           DATED: November 7, 2006

4                                                   Respectfully submitted by

5

6                                                   /s/ Jeanette E. McPherson
                                                    Lenard E. Schwartzer, Esq.
7                                                   Jeanette E. McPherson, Esq.
                                                    Schwartzer & McPherson Law Firm
8                                                   2850 South Jones Blvd., Suite 1
                                                    Las Vegas NV  89146
9                                                   Attorneys for Debtors and Debtors in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## CERTIFICATE OF SERVICE

1.   On November 7, 2006 I served the following document(s):

       a. RESPONSE OF SCHWARTZER & MCPHERSON LAW FIRM TO OBJECTION TO ITS INTERIM FEE ORDER FILED BY THE COMMITTEE FOR EQUITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC (AFFECTS ALL DEBTORS)

2.   I served the above-named document(s) by the following means to the persons as listed below:

☑     a.     **By ECF System**:

FRANKLIN C. ADAMS     franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com

NANCY L ALLF     nallf@parsonsbehle.com, klawrence@parsonsbehle.com;tthomas@parsonsbehle.com;ecf@parsonsbehle.com

FRANK A. ANDERSON     anderson.frank@pbgc.gov, efile@pbgc.gov

OGONNA M. ATAMOH     oatamoh@nevadafirm.com, bkecf@nevadafirm.com;paltstatt@nevadafirm.com;sliberio@nevadafirm.com

KERIANN M ATENCIO     ATENCIOK@GTLAW.COM

BMC GROUP, INC.     evrato@bmcgroup.com, ecf@bmcgroup.com;jmiller@bmcgroup.com;jbartlett@bmcgroup.com

KELLY J. BRINKMAN     kbrinkman@gooldpatterson.com

THOMAS R BROOKSBANK     tom@tombrooksbank.com, ! renee@tombrooksbank.com

ANDREW M. BRUMBY     abrumby@shutts-law.com, rhicks@shutts-law.com;lmackson@shutts-law.com

MATTHEW Q. CALLISTER     mqc@callister-reynolds.com, maggie@callister-reynolds.com

CANDACE C CARLYON     ltreadway@sheacarlyon.com, ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rmsmith@sheacarlyon.com

ROB CHARLES     rcharles@lrlaw.com, cjordan@lrlaw.com

MICHAEL W. CHEN     yvette@ccfirm.com

KEVIN B. CHRISTENSEN     kbchrislaw@aol.com

JANET L. CHUBB     tbw@jonesvargas.com

JEFFREY A. COGAN     jeffrey@jeffreycogan.com, sarah@jeffreycogan.com

WILLIAM D COPE     cope_guerra@yahoo.com

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   CICI CUNNINGHAM    bankruptcy@rocgd.com

2   LAUREL E. DAVIS    bklsclv@lionelsawyer.com,
    ldavis@lionelsawyer.com;gbagley@lionelsawyer.com;ldavisesq@aol.com
3

4   DEBT ACQUISITION COMPANY OF AMERICA V, LLC (tf)    tfette@daca4.com

5   THOMAS H. FELL    BANKRUPTCYNOTICES@GORDONSILVER.COM

6   SCOTT D. FLEMING    sfleming@halelane.com, dbergsing@halelane.com,ecfvegas@halelane.com

7   GREGORY E GARMAN    bankruptcynotices@gordonsilver.com

8   WADE B. GOCHNOUR    wgochnour@hwmlvlaw.com, donnat@hwmlvlaw.com

9   CARLOS A. GONZALEZ    carlos.gonzalez2@usdoj.gov,
    Darlene.Ruckard@usdoj.gov;Eunice.Jones@usdoj.gov;Sue.Knight@usdoj.gov
10

11  GERALD M GORDON    bankruptcynotices@gordonsilver.com

12  R. VAUGHN GOURLEY    vgourley@lvcm.com

13  TALITHA B. GRAY    bankruptcynotices@gordonsilver.com

14  JAMES D. GREENE    bknotice@schrecklaw.com

15  MARJORIE A. GUYMON    bankruptcy@goldguylaw.com, ddias@goldguylaw.com

16  JEFFREY R. HALL    jhall@sheacarlyon.com,
    bankruptcyfilings@sheacarlyon.com;aboehmer@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sh
17  eacarlyon.com

18  XANNA R. HARDMAN    xanna.hardman@gmail.com

19  STEPHEN R HARRIS    noticesbh&p@renolaw.biz

20  JEFFREY L HARTMAN    notices@bankruptcyreno.com

21  BRIGID M. HIGGINS    bankruptcyno! tices@go rdonsilver.com

22  DAVID W. HUSTON    dwh@hustonlaw.net, swaits@hustonlaw.net

23  CHRISTOPHER D JAIME    cjaime@waltherkey.com, kbernhar@waltherkey.com

24  EVAN L. JAMES    ejameslv@earthlink.net, kbchrislaw@aol.com

25  TY E. KEHOE    TyKehoeLaw@aol.com

26  ROBERT R. KINAS    rkinas@swlaw.com,
27  mstrand@swlaw.com;jlustig@swlaw.com;chaines@swlaw.com;imccord@swlaw.com

28  ZACHARIAH LARSON    ecf@lslawnv.com

1    JOHN J. LAXAGUE    jlaxague@caneclark.com

2    GEORGE C LAZAR    glazar@foxjohns.com, gclazar@sbcglobal.net

3    NILE LEATHAM    nleatham@klnevada.com, ckishi@klnevada.com;bank! ruptcy@klnevada.com

4    ROBERT C. LEPOME    robert@robertlepome.com, susan@robertlepome.com

5    ANNE M. LORADITCH    ecffilings@beckleylaw.com,
6    aloraditch@beckleylaw.com;pkois@beckleylaw.com

7    JAMES C. MCCARROLL    , dturetsky@reedsmith.com;aleonard@reedsmith.com

8    REGINA M. MCCONNELL    rmcconnell@kssattorneys.com

9    WILLIAM L. MCGIMSEY    lawoffices601@lvcoxmail.com

10    RICHARD MCKNIGHT    mcknightlaw@cox.net, gkopang@lawlasvegas.com;cburke@lawlasvegas.com

11    SHAWN W MILLER   &nb! sp bankruptcyfilings@sheacarlyon.com, smiller@sheacarlyon.com!
12    ;aboehme r@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sheacarlyon.com

13    DAVID MINCIN    mcknightlaw@cox.net,
     gkopang@lawlasvegas.com;dmincin@lawlasvegas.com,cburke@lawlasvegas.com

14    JOHN F MURTHA    jmurtha@woodburnandwedge.com

15    ERVEN T. NELSON    erv@rlbolick.com, susan@rlbolick.com

16    VICTORIA L NELSON    bkecf@nevadafirm.com,
17    vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rholley@nevadafirm.com;sliberio@nevadafirm.com

18    BOB L. OLSON    ecffilings@beckleylaw.com, bolson@beckleylaw.com;dgriffis@beckleylaw.com

19    DONNA M. OSBORN    ebaker@marquisaurbach.com,
20    dosborn@marquisaurbach.com;tszostek@marquisaurbach.com;kgallegos@MarquisAurbach.com

21    ANDREW M. PARLEN  !  aparlen@stutman.com

22    DONALD T. POLEDNAK    sandplegal@yahoo.com, spbankruptcy@yahoo.com

23    PAUL C RAY    info@johnpeterlee.com

24    SUSAN WILLIAMS SCANN    sscann@deanerlaw.com, palexander@deanerlaw.com

25    JAMES PATRICK SHEA    bankruptcyfilings@sheacarlyon.com,
26    ltreadway@sheacarlyon.com;rmsmith@sheacarlyon.com

27    SHLOMO S. SHERMAN    ssherman@sheacarlyon.com,
     aboehmer@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sh
28    eacarlyon.com

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    AMBRISH S. SIDHU      ecf@lslawnv.com

2    JEFFREY G. SLOANE      gjklepel@yahoo.com, rmcconnell@kss! attorneys.com

3    DAVID A. STEPHEN! S    dstephens@lvcm.com

4    PETER SUSI      cheryl@msmlaw.com, msm@msmlaw.com

5    JEFFREY R. SYLVESTER      jeff@sylvesterpolednak.com, David@sylvesterpolednak.com

6    CARYN S. TIJSSELING      ctijsseling@beckleylaw.com, aanthony@beckleylaw.com

7    AMY N TIRRE      atirre@kkbrf.com, ksims@kkbrf.com;lleverett@kkbrf.com

8    U.S. TRUSTEE - LV - 11      USTPRegion17.lv.ecf@usdoj.gov

9    GREGORY J. WALCH      GWalch@Nevadafirm.com

10   WHITNEY B. WARNICK      wbw@albrightstoddard.com, bstessel@albrightstoddard.com

11   JOAN C WRIGHT      jwright@allisonmackenzie.com, jbrooks@allisonmackenzie.com

12   MATTHEW ! C. ZIRZOW      bankruptcynotices@gordonsilver.com

☐    b.    **By United States mail, postage fully prepaid**:

☐    c.    **By Personal Service**

I personally delivered the document(s) to the persons at these addresses:

☐    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐    d.    **By direct email (as opposed to through the ECF System)**

Based upon the written agreement to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    e.    **By fax transmission**

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission is attached.

**I declare under penalty of perjury that the foregoing is true and correct.**
Signed on:      November 7, 2006

LIA DORSEY                                    _/s/      LIA DORSEY_
(Name of Declarant)                          (Signature of Declarant)

SM's Reply To Objections To Proposed Order 110706        - 10 -

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT "1"

1

```
1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF NEVADA
2                          LAS VEGAS, NEVADA
    In re:  USA COMMERCIAL MORTGAGE   )  SEPTEMBER 28, 2006
3   COMPANY,                          )  E-Filed:  11/01/06
                                      )
4            Debtor.                  )  Case No.
                                      )  BK-S-06-10725-LBR
5   _____)  Chapter 11
    USA COMMERCIAL MORTGAGE COMPANY,  )
6                                     )
             Plaintiff,               )
7                                     )
        vs.                           )  Adversary No.
8                                     )  06-01146-LBR
    WELLS FARGO BANK, N.A., et al.,   )
9                                     )
             Defendants.              )
10  _____)
    USA COMMERCIAL MORTGAGE COMPANY,  )
11                                    )
             Plaintiff,               )
12                                    )
        vs.                           )  Adversary No.
13                                    )  06-01179-LBR
    STANDARD PROPERTY DEVELOPMENT,    )
14  LLC,                              )
             Defendant.               )
15  _____)
    USA COMMERCIAL MORTGAGE COMPANY,  )
16                                    )
             Plaintiff,               )
17                                    )
        vs.                           )  Adversary No.
18                                    )  06-01167-LBR
    ROBERT J. KEHL, et al.,           )
19                                    )
             Defendants.              )
20  _____)
                 PARTIAL TRANSCRIPT OF PROCEEDINGS
21                             OF
        (06-01146) SCHEDULING CONFERENCE RE: COMPLAINT, NO. 10
22                            AND
             MOTION FOR RELIEF FROM STAY, NO. 1159
23                            AND
             INTERIM APPLICATION FOR COMPENSATION
24            FOR SHLOMO S. SHERMAN, ESQ., NO. 1232
                              AND
25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```

```
 1                      MOTION FOR AN ORDER
         PURSUANT TO 11, USC, SECTIONS 105(A), 327(A), AND 331
 2      AUTHORIZING RETENTION OF PROFESSIONALS UTILIZED BY DEBTORS
               IN THE ORDINARY COURSE OF BUSINESS, NO. 1205
 3                             AND
               INTERIM APPLICATION FOR COMPENSATION
 4          FOR STUTMAN, TREISTER & GLATT, P.C., NO. 1232
                               AND
 5             INTERIM APPLICATION FOR COMPENSATION
                FOR ALVAREZ & MARSAL, LLC, NO. 1232
 6                             AND
          INTERIM APPLICATION FOR COMPENSATION, NO. 1249
 7                             AND
               FIRST APPLICATION FOR COMPENSATION
 8        FOR THE PERIOD JUNE 1, 2006 THROUGH JULY 31, 2006,
           FOR ORRICK, HERRINGTON & SUTCLIFFE, LLP, NO. 1232
 9                             AND
                  APPLICATION FOR COMPENSATION
10              FOR GORDON & SILVER, LTD., NO. 1220
                               AND
11             FIRST APPLICATION FOR COMPENSATION
          FOR THE PERIOD JUNE 9, 2006 THROUGH JULY 31, 2006,
12             FOR BECKLEY SINGLETON, CHTD., NO. 1232
                               AND
13             FIRST APPLICATION FOR COMPENSATION
               AND REIMBURSEMENT OF EXPENSES FOR,
14         (1), MESIROW FINANCIAL INTERIM MANAGEMENT, LLC,
                AS CRISIS MANAGERS FOR THE DEBTORS
15                   AND, (2), THOMAS J. ALLISON
           OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC,
16           AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS
          AND THE EMPLOYMENT OF CERTAIN TEMPORARY EMPLOYEES
17       FOR THE PERIOD APRIL 14, 2006 THROUGH JULY 31, 2006,
        FOR MESIROW FINANCIAL INTERIM MANAGEMENT, LLC, NO. 1232
18                             AND
               FIRST APPLICATION FOR COMPENSATION
19               AND REIMBURSEMENT OF EXPENSES
                FOR LEWIS AND ROCA, LLP, NO. 1232
20                             AND
               FIRST APPLICATION FOR COMPENSATION
21               AND REIMBURSEMENT OF EXPENSES
            FROM APRIL 14, 2006 THROUGH JULY 31, 2006,
22           FOR SCHWARTZER & McPHERSON LAW FIRM, NO. 1232
                               AND
23             FIRST APPLICATION FOR COMPENSATION
             PURSUANT TO 11, USC, SECTIONS 330 AND 331
24       FOR THE PERIOD APRIL 13, 2006 THROUGH JULY 31, 2006,
              FOR RAY, QUINNEY & NEBEKER, P.C., NO. 1232
25                             AND
```

3

MOTION FOR APPROVAL OF APPOINTMENT OF A SUCCESSOR TRUSTEE
FOR ITS DEFINED BENEFIT PENSION PLAN
AND TO FREEZE THE PLAN EFFECTIVE SEPTEMBER 30, 2006,
NO. 1236
AND
FIRST INTERIM APPLICATION FOR COMPENSATION
FOR OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
OF USA CAPITAL FIRST TRUST DEED FUND, LLC,
FOR THE PERIOD MAY 10, 2006 THROUGH JULY 31, 2006, NO. 1241
AND
(06-01179) MOTION FOR PRELIMINARY INJUNCTION, NO. 5
AND
ORDER SHORTENING TIME RE: MOTION TO COMPEL
CONFIDENTIAL DISCLOSURE OF MEMBER LIST, NO. 1346
AND
APPLICATION TO EMPLOY THOMAS J. ALLISON
AND MESIROW FINANCIAL INTERIM MANAGEMENT, LLC,
AS CHIEF RESTRUCTURING OFFICER AND CRISIS MANAGERS
AND DEBTOR'S MOTION FOR ORDER AUTHORIZING,
(1), THE EMPLOYMENT AND RETENTION
OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC,
AS CRISIS MANAGERS FOR THE DEBTORS,
AND, (2), THE DESIGNATION OF THOMAS J. ALLISON
OF MESIROW FINANCIAL INTERIM MANAGEMENT, LLC,
AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS
AND THE EMPLOYMENT OF CERTAIN TEMPORARY EMPLOYEES, NO. 6
AND
(06-01167) MOTION FOR SUMMARY JUDGMENT
AND FOR ORDER DIRECTING RELEASE OF FUNDS, NO. 97
AND
APPLICATION TO EMPLOY SCHWARTZER & McPHERSON LAW FIRM
AS COUNSEL UNDER GENERAL RETAINER, NO. 21
AND
APPLICATION TO EMPLOY RAY, QUINNEY & NEBEKER, P.C.,
AS COUNSEL FOR THE DEBTOR, NO. 23
AND
MOTION TO REJECT PERSONAL PROPERTY LEASES, NO. 1131
VOLUME 1
BEFORE THE HONORABLE LINDA B. RIEGLE
UNITED STATES BANKRUPTCY JUDGE

Thursday, September 28, 2006

9:30 a.m.


Court Recorder:        Helen C. Smith

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

4

```
 1   APPEARANCES:

 2   For the Debtor and        ANNETTE W. JARVIS, ESQ.
     Ray, Quinney & Nebeker,   STEVEN C. STRONG, ESQ.
 3   P.C.:                     Ray, Quinney & Nebeker, P.C.
                               36 South State Street
 4                             Suite 1400
                               Salt Lake City, Utah 84145
 5
     For the First Trust       FRANK A. MEROLA, ESQ.
 6   Deed Fund Committee       ANDREW M. PARLEN, ESQ.
     and Stutman, Treister     Stutman, Treister & Glatt, P.C.
 7   & Glatt, P.C.:            1901 Avenue of the Stars
                               Twelfth Floor
 8                             Los Angeles, California 90067

 9   For the First Trust       CANDACE C. CARLYON, ESQ.
     Deed Fund Committee:      Shea & Carlyon, Ltd.
10                             233 South Fourth Street
                               Suite 200
11                             Las Vegas, Nevada 89101

12   For Diversified Trust     ANNE M. LORADITCH, ESQ.
     Deed Fund Committee:      BRETT A. AXELROD, ESQ.
13                             Beckley Singleton, Chtd.
                               530 Las Vegas Boulevard South
14                             Las Vegas, Nevada 89101

15   For the Debtor and        JEANETTE E. McPHERSON, ESQ.
     Debtor in Possession:     LENARD E. SCHWARTZER, ESQ.
16                             Schwartzer & McPherson Law Firm
                               2850 South Jones Boulevard
17                             Suite 1
                               Las Vegas, Nevada 89146
18
     For Diversified Trust     MARC A. LEVINSON, ESQ.
19   Deed Fund Committee       Orrick, Herrington & Sutcliffe, LLP
     and Orrick, Herrington    400 Capitol Mall
20   & Sutcliffe, LLP:         Suite 300
                               Sacramento, California 95814
21
     For USA Commercial        DAVID W. HUSTON, ESQ.
22   Mortgage Company          601 South Seventh Street
     in Interpleader Action:   Second Floor
23                             Las Vegas, Nevada 89101

24

25
```

5

```
 1    APPEARANCES (Cont.)

 2    For the Unsecured        SUSAN M. FREEMAN, ESQ.
      Creditors Committee      Lewis and Roca, LLP
 3    of USA Commercial        40 North Central Avenue
      Mortgage Company         Phoenix, Arizona 85004
 4    and Lewis and Roca,
      LLP:

 5
      For Standard Property    R. VAUGHN GOURLEY, ESQ.
 6    Development, LLC:         Stephens, Gourley & Bywater, P.C.
                               3636 North Rancho Drive
 7                             Las Vegas, Nevada 89130

 8    For Individual Direct    DUSTIN A. JOHNSON, ESQ.
      Lenders:                 Albright, Stoddard, Warnick
 9                               & Albright
                               801 South Rancho Drive
10                             Suite D-4
                               Las Vegas, Nevada 89106
11
      For Group of Direct      NANCY L. ALLF, ESQ.
12    Lenders, the Alexander   Parson, Behle & Latimer
      Group, and Several       411 East Bonneville Avenue
13    Defendants:              Suite 300
                               Las Vegas, Nevada 89101
14
                               ROBERT C. LePOME, ESQ.
15                             Law Offices of Robert C. LePome
                               330 South Third Street
16                             1100-B
                               Las Vegas, Nevada 89101
17
      For Mesirow Financial    F. CHRISTOPHER AUSTIN, ESQ.
18    Interim Management,      Greenberg Traurig, LLP
      LLC:                     3773 Howard Hughes Parkway
19                             Suite 500 North
                               Las Vegas, Nevada 89109
20
                               NANCY A. PETERMAN, ESQ.
21                             Greenberg Traurig, LLP
                               77 West Wacker Drive
22                             Suite 2500
                               Chicago, Illinois 60601
23
      For the Jones Vargas     JANET L. CHUBB, ESQ.
24    Direct Lenders,          Jones Vargas
      Kehl Family Group,       100 West Liberty
25    and Several Others:      Twelfth Floor
                               Reno, Nevada 89501
```

6

```
1    APPEARANCES (Cont.)

2    For the Direct            GERALD M. GORDON, ESQ.
     Lenders Committee:        GREGORY E. GARMAN, ESQ.
3                              Gordon & Silver, Ltd.
                               3960 Howard Hughes Parkway
4                              Ninth Floor
                               Las Vegas, Nevada 89109
5
     For Phillip N. Ralston,   VICTORIA L. NELSON, ESQ.
6    and Benita M. Ralston,    Santoro, Driggs, Walch, Kearney,
     Trustees Ralston            Johnson & Thompson
7    Family Trust,             400 South Fourth Street
     and Dina Ladd:            Third Floor
8                              Las Vegas, Nevada 89101

9    For Joseph Milanowski     RUSSELL S. WALKER, ESQ.
     and Thomas Hantges:       Woodbury, P.C.
10                             265 East 100 South
                               Suite 300
11                             Salt Lake City, Utah 84111

12   For Larson & Stephens     ZACHARIAH LARSON, ESQ.
     and James Feeney:         Larson & Stephens
13                             425 South Sixth Street
                               Las Vegas, Nevada 89101
14
     For Peter A. Bolino,      JOHN J. LAXAGUE, ESQ.
15   Fabiola A. Bolino,        Cane Clark, LLP
     John R. Mallin, Jr.,      3273 East Warm Springs Road
16   and Marie T. Mallin,      Las Vegas, Nevada 89120
     Trustees Mallin Family
17   Trust, Custodian for
     George J. Motto IRA,
18   Daniel Drubin,
     Laura Drubin,
19   and Beverly J. Stiles:

20   For Wells Fargo Bank,     JEFFREY R. HALL, ESQ.
     N.A.:                     Shea & Carlyon, Ltd.
21                             233 South Fourth Street
                               Suite 200
22                             Las Vegas, Nevada 89101

23
     For the United States     AUGUST B. LANDIS, ESQ.
24   Trustee:                  Office of the United States Trustee
                               300 Las Vegas Boulevard South
25                             Suite 4300
                               Las Vegas, Nevada 89101
```

7

1    APPEARANCES (Cont.)

2    Also Present:          THOMAS J. ALLISON
                            Mesirow Financial Interim
3                             Management, LLC

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Court previously convened at 09:44:25 a.m.)

2          (Partial transcript at 12:27:54 p.m.)

3          THE COURT:  Okay.  The Schwartzer McPherson.

4          (Colloquy not on the record.)

5          MS. McPHERSON:  Your Honor, this is our first

6     application for fees in the amount of $265,016, costs of

7     $5,465.09.

8          In light of the amount of time spent, the four months,

9     and the fact that we're representing five debtors, we

10    believe this amount is reasonable.

11         It's reasonable in light of that representation, the

12    amount of time, and also reasonable in light of the other

13    professionals' fees and costs in this case.

14         With regard to the allocation issue, we do believe our

15    allocation that we have made is appropriate; however, we

16    have also agreed to the temporary allocation of the fees

17    that we have allocated to Commercial Mortgage, so that it's

18    80/10/10, and I'll go back and look at those fees again.

19         Some of our time has been spent representing Commercial

20    Mortgage in litigation, so it really does clearly belong to

21    Commercial Mortgage.

22         With regard to the objections, we too have received an

23    objection from the U.S. Trustee's Office, and we have tried

24    to work out those issues with the U.S. Trustee and just have

25    not come to a resolution.

1          The U.S. Trustee has first noted or stated that we only

2   provided Mr. Schwartzer's rate in the employment

3   application.

4          We did provide the other rates in the declaration to

5   that employment application which provides for the rates of

6   other lawyers in the firm and for paralegals.

7          The next objection is to clerical issues.  The

8   objection is specifically to Mr. Schwartzer's time spent

9   talking with Clark Fenneran (phonetic) and rescheduling the

10  IDI (phonetic).  Point two hours was spent on that.

11         We feel that that time was de minimus and in light of

12  the fact that it probably got done much quicker with

13  Mr. Schwartzer talking to Mr. Fenneran and the fact that,

14  you know, the U.S. Trustee's Office often needs to talk to a

15  lawyer and actually make sure the debtor can appear and have

16  the debtor's representative there, so we don't believe that

17  objection is appropriate.

18         And, also, an objection is made to point 3 hours that

19  Mr. Schwartzer reviewed a newspaper article.  We believe

20  that time is appropriate.

21         In this case, we have investors calling.  We need to

22  know what information that they have read, and

23  Mr. Schwartzer has attended meetings with investors, so we

24  believe that time was spent appropriately because he needs

25  to be aware of what has been published about the case.

1          The next objection is to lumping of time in the total

2    amount of 4.9 hours.  With regard to this lumping issue,

3    it's similar to Ms. Jarvis in that the time that was entered

4    it may appear to be lumping; however, it is time that all

5    relates to one topic.

6          For instance, 1.9 hours was objected to on June 9th

7    where the time entered states work on DIP financing and then

8    a semicolon, E-mails regarding OST.  That's all relating to

9    the DIP-financing motion.

10          The next entry is 2.3 hours on the same date, June 9th,

11    2006, work on professional-payment protocol, E-mails re OST,

12    research, add legal authority.  That all relates to the

13    professional-payment protocol application.

14          The other objection to lumping is 1.2 hours on

15    May 10th.  The entry is review letter from J. Jorgenson

16    (phonetic) at Wells Fargo Bank, research issues, draft

17    letter to C. Carlyon, counsel for Wells Fargo, regarding the

18    collection account, E-mailed a client, review comments.

19    Again, that's all related to the Wells Fargo issue.  Now,

20    the --

21          THE COURT:  Now, on the Wells Fargo before I get,

22    I don't see any application for fees in the Wells Fargo case

23    for your attorneys fees.  Do you intend to apply for that

24    because you asked for it in the prayer?

25          MR. SCHWARTZER:  Your Honor, Mr. Huston is special

1    counsel in the interpleader action, and what happened is he

2    was not aware of the deadline for getting the application in

3    for today's hearing, but he would be covered by the

4    interim --

5            THE COURT:  But I meant --

6            MR. SCHWARTZER:  -- protocol.

7            THE COURT:  -- your fees.  You're billing for the

8    Wells Fargo action.

9            MS. McPHERSON:  Yes.

10            MR. SCHWARTZER:  Yes.

11            MS. McPHERSON:  Yes, your Honor.  We have put it

12    in our application.

13            THE COURT:  No.  My point is --

14            MS. McPHERSON:  Oh.

15            THE COURT:  -- why did -- all right.  In the

16    interpleader, asking in the interpleader for your fees.

17    You're entitled --

18            MS. McPHERSON:  You know, in --

19            THE COURT:  You --

20            MS. McPHERSON:  In the --

21            THE COURT:  The complaint asked for your attorneys

22    fees.

23            MS. McPHERSON:  Yeah.  Other than in the prayer?

24            THE COURT:  Right.

25            MS. McPHERSON:  Wait.

1      THE COURT:  No.  It's in the prayer, and that's

2  it, but nobody has done anything to -- usually, in an

3  interpleader, you make your motion for summary judgment and

4  get your fees in the beginning.

5      MR. SCHWARTZER:  Right now, I'm not representing

6  the debtor --

7      THE COURT:  Okay.

8      MR. SCHWARTZER:  -- in that.  Mr. Huston will, and

9  I think that's a very good idea that we will provide him

10  with a list of our fees that were incurred with regard to

11  the interpleader.  So when he --

12      THE COURT:  And I guess --

13      MR. SCHWARTZER:  -- does that motion, it will ask

14  for those funds.

15      THE COURT:  Now, you know, I don't want to

16  predetermine it, but the point is you had asked for it in

17  the prayer, and I guess, you know, I think under the regular

18  statutes you might be entitled to it.  But at least,

19  there's --

20      MR. SCHWARTZER:  Yes.

21      MS. McPHERSON:  Okay.

22      THE COURT:  -- an option there.

23      MS. McPHERSON:  Your Honor, we'll take care --

24      THE COURT:  And I guess --

25      MS. McPHERSON:  -- of that.

1          THE COURT:  -- I'm questioning, too, if Mr. Huston

2    is doing this case is why does your firm have so much time

3    on both of those litigation matters.

4          MR. SCHWARTZER:  Well, first of all, there was a

5    point in time when we hadn't made the decision that we were

6    going to hire special counsel for that purpose.

7        With the issue that was just -- the question that was

8    just made, that had to do with keeping the collection

9    account open at Wells Fargo --

10          THE COURT:  Oh.

11          MR. SCHWARTZER:  -- for an additional period of

12    time because it took awhile before the new accounts were

13    opened at Bank of America, and we didn't want the

14    Wells Fargo account --

15          THE COURT:  Okay.

16          MR. SCHWARTZER:  -- closed because some borrowers

17    might still only have the wiring instructions to the

18    Wells Fargo account.

19          THE COURT:  Okay.

20          MR. SCHWARTZER:  And that was accomplished, and

21    now the account is closed.

22          THE COURT:  Oh, okay.  I'm sorry.  Okay.  And on

23    the other litigation matter, what -- I thought I had your

24    application out here, so I'm going to have to remember my

25    notes on that, but the --

```
 1              MS. McPHERSON:  The Wells --

 2              THE COURT:  The other litigation matter that

 3   Mr. Huston is --

 4              MS. McPHERSON:  He --

 5              THE COURT:  There was a fair amount of time billed

 6   on that.  So if --

 7              MS. McPHERSON:  What --

 8              THE COURT:  -- independent counsel is doing that,

 9   why is your firm billing?

10              MS. McPHERSON:  Well --

11              MR. SCHWARTZER:  Your Honor --

12              MS. McPHERSON:  Yeah.

13              MR. SCHWARTZER:  -- again, to answer that

14   question, what we did is when we -- that action was to

15   recover $100,000 that was paid out postpetition --

16              THE COURT:  Uh-huh.

17              MR. SCHWARTZER:  -- on a check.  We considered

18   that a separate matter, but then we realized because it was

19   paid out of the investor account which is the account that's

20   their matter of dispute of the interpleader action --

21   really, the money only comes into these divided up in the

22   interpleader action.

23       We decided it made more sense to consolidate the two

24   actions, have Mr. Huston handle it all, and we did file, and

25   I think it was at the last omnibus hearing the Court granted
```

1     the motion to consolidate.

2                THE COURT:  Okay.

3                MR. SCHWARTZER:  And that's why, but we started

4     that -- actually, that action started before the

5     interpleader action --

6                THE COURT:  Oh, okay.

7                MR. SCHWARTZER:  -- had been started.

8                THE COURT:  All right.

9                MS. McPHERSON:  Your Honor, that Wells Fargo

10    action was filed about a month before the interpleader

11    action, and they have been consolidated.

12        With regard to the interpleader action, we did initiate

13    it, discovered one of the defendants is another debtor

14    entity.

15                THE COURT:  Okay.

16                MS. McPHERSON:  And that's why we stepped out at

17    that point, and then they have been consolidated.

18        The last objected-to entry is dated from April 20th for

19    2.6 hours.  The entry is work on motions to limit notice,

20    work on motion to extend time to file schedules, and employ

21    BMC, and those do appear to be lumped.

22        However, we believe in light of the amount of time

23    involved that it really is insignificant, and that it can be

24    really determined how much time was spent.

25        The next objection is to charges that the U.S.

1    Trustee's Office says are for nonlegal services.  On

2    June 15th, Mr. Schwartzer entered in time of 2.1 hours for

3    assisting in filing the schedules.  That really should be

4    more appropriately called reviewing the schedules that were

5    to be filed.

6        You'll recall that that's when the amendments were

7    filed, and they were quite massive, and they were coming in

8    on that day.

9        So those objections to fees total $3,187.  We don't

10   believe the objection is appropriate, and that we have

11   appropriately responded to any requests that need to be

12   addressed.

13       The next objections are to expenses billed.  We have an

14   objection to delivery charges of $267.50.  Our firm does not

15   have an in-house runner.  We use an outside service, and we

16   do not make money off of the delivery charges.

17       We pay a flat fee, and then we allocate it based on the

18   runs that are made, and we have determined that $5 is

19   appropriate, and we essentially break even at that point.

20       We'd also like to note that with regard to these

21   delivery charges we always put them in our fee applications.

22   They have been granted in the past, and other firms do in

23   the community.

24       And the U.S. Trustee's Office has not objected to other

25   fee applications that also contain these delivery charges of

1  either that amount or more.

2       And while we did have the opportunity to object to

3  those fees as the U.S. Trustee's Office has pointed out, we

4  don't believe they're unreasonable, and that's why we didn't

5  object.

6       But we do want some consistency on these objections,

7  and we believe that if one firm gets paid for delivery

8  charges all of the firms have to be paid for delivery

9  charges of similar amounts.

10      We've got an objection to the bill for a conference

11  room of $1,198.  We have submitted the invoice to that.  It

12  was money spent on a conference room for everybody to get

13  together and meet, and those were the actual charges.

14      The last objection to the expenses is for Westlaw,

15  $1,452.42.  We think this amount is reasonable for the four

16  months that we have been working on this case.

17      But, also, I want to note that the firm has a contract

18  with Westlaw.  We charge based on that special-pricing

19  contract.  If we charged outside of that contract, the

20  estate would have been billed $14,000, so this is not a --

21           THE COURT:  But isn't there an invoice that they

22  print that shows you all the charges that you can -- I guess

23  they're saying there's no invoice or a charge, so they can't

24  tell.

25           MS. McPHERSON:  We have provided them with

1  information showing that we used Westlaw for USA.  But

2  because it's a special-pricing contract, you can't allocate

3  a specific amount --

4           THE COURT:  They don't make you --

5           MS. McPHERSON:  -- to the --

6           THE COURT:  -- type in client and all of that when

7  you get into it?

8           MS. McPHERSON:  Yes.  Yes.  We type in client, and

9  that way if you stay within your plan which we usually do

10  it's part of your flat fee, and then it's up to the firm to

11  allocate it to all of the clients who had research.

12           THE COURT:  Okay.  So have they seen your

13  allocation, seen the bill on the allocation?

14           MS. McPHERSON:  Yes.

15           THE COURT:  Okay.

16           MS. McPHERSON:  The last objection is to PACER

17  charges, $1,565.05, and the contention is, well, you get it

18  for free, and so where is the charge coming from.

19      We do get the documents coming to us, and we get one

20  free look for ten days is my understanding.  But because of

21  the amount of pleadings in this case, we do not print off

22  everything nor do we download.  It would have just been --

23  it's just too taxing on our system.

24           THE COURT:  Can you look at it from BMC?  I mean,

25  you were paying for it a different way, but that doesn't

1    increase --

2              MS. McPHERSON:  We try to use --

3              THE COURT:  -- the BMC charge.

4              MS. McPHERSON:  -- BMC and also the U.S. Capital

5    Corp. Web site.  However, if we need to make sure that the

6    information is accurate, we do go to PACER to make sure that

7    we're looking at the official docket.

8         And, also, with regard to this PACER amount, when we do

9    have to copy these documents, we do charge our copy rate, so

10   we have put that in there.

11             THE COURT:  Oh, you charge a copy rate as opposed

12   to what PACER charged you?

13             MS. McPHERSON:  No.  No, no.  It's the PACER

14   charge --

15             THE COURT:  Oh, okay.  So this PACER --

16             MS. McPHERSON:  -- plus the --

17             THE COURT:  -- charge is exactly what PACER has

18   charged you, what you've paid the court.

19             MS. McPHERSON:  It's 8 cents when we have to print

20   it off.  And when we have to download it, it's 8 cents per

21   page and, you know, capped.

22        But, also, if we print it off, then we do charge a copy

23   charge because that would be a normal copy charge.  It's

24   just if you were running through the copy machine.

25             THE COURT:  Well, I can go to Costco and get the

1   paper pretty cheap, I mean, so I don't know.  And of this

2   PACER charge, how much of that -- I mean, we're such small

3   potatoes, but there's a principle involved.  How much did

4   PACER actually charge you?

5          MS. McPHERSON:  Your Honor, we would have to

6   actually go and calculate --

7          THE COURT:  Okay.  So this charge --

8          MS. McPHERSON:  -- that amount.

9          THE COURT:  -- includes your 8 cents a copy plus

10  what PACER charged you.

11         MS. McPHERSON:  Not in all instances.  Just --

12         THE COURT:  Okay.

13         MS. McPHERSON:  Just when if there is a print

14  charge when it was actually printed off, so we would

15  actually have to go through.  I requested that information.

16         THE COURT:  Okay.

17         MS. McPHERSON:  But it is a very long --

18         THE COURT:  Okay.

19         MS. McPHERSON:  -- process to determine the actual

20  amount.

21         THE COURT:  Okay.

22         MS. McPHERSON:  And in light of the amount, it

23  wasn't worth the --

24         THE COURT:  Yeah.  No.

25         MS. McPHERSON:  Okay.

21

1             THE COURT:  Exactly.  Okay.

2        Mr. Landis.

3             MR. SCHWARTZER:  Oh, your --

4             THE COURT:  Oh, sorry.

5             MR. SCHWARTZER:  Your Honor, I just wanted to add

6    one thing that I (indiscernible).  Because we're handling

7    some of the outside nonbankruptcy litigation, for example,

8    there's litigation in the U.S. District Court in Reno where

9    USA is a participant, some of these PACER charges -- and we

10   haven't done the allocation -- is based upon getting

11   documents from cases that are not the bankruptcy case, and

12   we don't get those --

13             THE COURT:  Right.

14             MR. SCHWARTZER:  -- even in the first instance for

15   free.  We have to go on-line with the U.S. District Court --

16             THE COURT:  Um-h'm.

17             MR. SCHWARTZER:  -- and get it.  For example, in

18   the two cases, there's the Weddell litigation that is

19   pending in district court.  They made a motion to lift stay

20   here.  I felt it was appropriate for me to review the

21   pleadings in that case.

22        And to do that, I had to get -- I went on PACER because

23   that's usually the fastest way of getting access to those

24   kinds of documents, and we didn't allocate it separately

25   from the --

1          THE COURT:  Um-h'm.

2          MR. SCHWARTZER:  -- bankruptcy.

3          MS. McPHERSON:  And most of those documents are

4    quite voluminous --

5          THE COURT:  Right.

6          MS. McPHERSON:  -- in the litigation.

7          THE COURT:  Okay.

8       Mr. Landis.

9          MR. LANDIS:  You're right.  It's not large

10   dollars, but there is a principle that we're required --

11         THE COURT:  You know what I would suggest --

12         MR. LANDIS:  -- to uphold.

13         THE COURT:  -- in this regard?  This sounds like

14   we need a U.S. Trustee's Office guideline in this regard

15   just like we used to do on copies because it's an issue I

16   never even thought about, and we need to make it the same

17   for everybody.

18      And on one hand, you want to say just charge for PACER,

19   but let me just say this.  I think it's appropriate that any

20   copy you download even though you get it for free the point

21   is you can only get it so long, so I have no problem with

22   whatever the actual PACER charges are.  Even if they could

23   get it for free, they get it.

24      The next question is how much should you allow for

25   printing the page out in your firm.  You know, like at

1    25 cents, I don't think so.

2        But, you know, there is some cost involved with the

3    paper and the machinery and the printer because we all

4    like -- that's the problem here.  We have to print

5    everything.

6        That's why I make you guys print this stuff out because

7    the court doesn't have enough money for paper and printers,

8    so there is some costs.

9        So this is such small potatoes, but I think this is

10   something good the U.S. Trustee's Office overall might look

11   at is now that we have a PACER society what is a fair charge

12   for everybody to charge for these kinds of things.

13            MR. LANDIS:  And, your Honor, you know, there are

14   a couple of things you need to be careful about, and one is

15   not awarding bad practices.

16       It's not just free for ten days, and you can download

17   it and save the PDF.  You may not ever need to print it.

18   But if you need to go back and look at it, you don't then

19   have to incur the 8-cents-per-page charge through PACER.

20   You simply go on your own system and look at it.

21       Now, I'm cognizant that we got 1300-plus docket entries

22   in this case.

23            THE COURT:  Oh, yeah.  By the way --

24            MR. LANDIS:  I --

25            THE COURT:  -- we're up to 1400 today.

1          MR. LANDIS:  1400 now?  Oh, all right.  You know,

2     if we wait a little longer, it will click up another, but

3     the fact of the matter remains this.

4          You don't download every single certificate of service.

5     You don't download docket entries.  You don't download

6     matters that aren't of significance to you as a litigant in

7     these cases.

8          When you do see something of substance, and you know

9     it's likely to come back, then you should download it and

10    save it in PDF format.  Then if you actually need to print

11    it, if you have a copy charge, that's a different matter.

12         Here is what we're faced with regarding PACER.  We

13    didn't know what the actual charge was, number one.  Number

14    two, we couldn't understand and still don't why it can't be

15    handled for free, and then last but not least there are

16    other available sources for these that don't cost money.

17    Especially, matters of substance are posted as the Court

18    noted on the BMC Web site, and so forth.

19         So we need to be careful not to give carte blanche to

20    in this case and every other situation that there is going

21    to be an acknowledged agreed amount that we can just accept

22    in PACER.  We ought to encourage good practices with respect

23    to the use of that system which is invaluable.

24         And we recognize that as a practical matter you're

25    going to have to go back and look at the docket to see when

1    something was filed, but that doesn't mean that you then

2    need to open up to view the document if you can

3    simply read --

4            THE COURT:  Well, in fairness --

5            MR. LANDIS:  -- the list.

6            THE COURT:  -- though, in the old days, you would

7    have automatically have had a paper copy to put in your file

8    because somebody would have served you with it.

9            MR. LANDIS:  That was then.  This is now, Judge.

10           THE COURT:  I know.

11           MR. LANDIS:  I can't argue --

12           THE COURT:  But the point is --

13           MR. LANDIS:  -- that point.

14           THE COURT:  -- you're cutting out the cost of

15   copying, and you would have had that, and, you know, hey, I

16   guess I am a troglodyte.

17       But, you know, you just can't read these things by

18   looking on-line, and you're going to have to print them out

19   sometime.  I mean, you're right.  Maybe you don't -- well,

20   even certificates of mailing.

21       The reason we have those is so that somebody can go

22   back and see was this thing served right.  I mean, that's

23   really important in this case.

24           MR. LANDIS:  Then you can look at the docket and

25   see, and --

1          THE COURT:  Oh, yeah, all 1400 entries.  But if
2   you've got, you know, when --
3          MR. LANDIS:  Well, but if you know when it was
4   served, you can narrow the search on CM/ECF.  You know that,
5   too, Judge.
6          THE COURT:  Yeah.  But --
7          MR. LANDIS:  And you can at least narrow it to
8   say --
9          THE COURT:  I'm not so sure that I want to
10  interfere with somebody's good case management.  If somebody
11  wants to -- it seems to me a reasonable way to manage a case
12  is to take every piece of paper and file it like you used to
13  with a good paralegal and like the appropriate motions.
14     Another way is to do it on your computer.  That's kind
15  of case management, but the bottom line is we're spending
16  more arguing about this with all the attorneys in here than
17  this is worth.
18          MR. LANDIS:  The --
19          THE COURT:  I think the answer is I would like
20  your office to come up with some protocol maybe in this case
21  and then, you know, really for all over.
22     What are other districts doing?  I mean, it's a
23  reasonable issue.  We now have PACER in place.  We now have
24  electronic filing in place.  It's a reasonable issue.
25     I'm going to go ahead and allow it for now.  Oh, I do

1    want an invoice, though, to see how much you charged and

2    then an explanation, subject to an explanation of why you

3    charged what you charged.

4                MR. LANDIS:  And going back through the

5    discussion, then, Judge, we do have Westlaw, and they have

6    yesterday provided us with the Westlaw charges.

7        My concern is is that this is overhead, Judge.  It's a

8    flat fee that they have for an amount of service, and

9    they're now trying to allocate it among various cases.

10       That I think under Gingy (phonetic) and the other cases

11   that have addressed the difference between overhead and

12   actual cost in a case --

13               THE COURT:  Well, gee --

14               MR. LANDIS:  -- have suggested this --

15               THE COURT:  -- unfortunately, Gingy was written in

16   the days since I've been here so long --

17               MR. LANDIS:  I know.

18               THE COURT:  -- before we had Westlaw as a common

19   practice.

20               MR. LANDIS:  It --

21               THE COURT:  I mean, Westlaw was new.

22               MR. LANDIS:  Yeah.

23               THE COURT:  I mean, the old idea was you don't

24   allocate for the libraries and whatever, and we did allow --

25   Westlaw has always been allowed.

1          So it doesn't make sense to say, all right, so you can

2      charge for -- you've got to charge on the billing rate which

3      makes it twice as high as if you did it conservatively and

4      just did it an overhead rate.

5                  MR. LANDIS:  Well, your Honor, the real question

6      is whether it's even compensable at all as overheard versus

7      whether it's attributable to this particular case.

8                  THE COURT:  Well, if you --

9                  MR. LANDIS:  We --

10                 THE COURT:  -- you want to spend the legal

11     research time (indiscernible) whether Westlaw is compensable

12     in this case, we're going to (indiscernible) on a lot of

13     fees.

14                 MR. LANDIS:  We want to raise the issue because

15     it --

16                 THE COURT:  I'm not doing --

17                 MR. LANDIS:  -- has to be raised.

18                 THE COURT:  -- the research.

19                 MR. LANDIS:  All right.  Fair enough, your Honor,

20     but the fact is is that we'll raise the issue now and deal

21     with it when it comes up again.

22                 THE COURT:  Well, no.  I mean, the point is if you

23     want to raise the issue -- now, I'm not saying it's not a

24     legitimate issue.  I'm just saying we got to keep

25     perspective in this case.

1          MR. LANDIS:  I understand, your Honor.

2          THE COURT:  And, also, in light of the fact that

3    the U.S. Trustee's Office guidelines haven't really I don't

4    think adequately dealt with this issue, I think before --

5    you know, if you want to make policy for the United States

6    and what happens with Westlaw, so be it.

7          And there is certainly a legitimate issue, but is it

8    appropriate to do it here as opposed to giving some

9    consideration about what should be done either on a national

10   level and a local level.  That's my --

11         MR. LANDIS:  I --

12         THE COURT:  -- comment.

13         MR. LANDIS:  I get the point, your Honor, and

14   we'll appreciate, actually, the invitation for additional

15   information, and I'll address it at an appropriate level.

16         I can guarantee you that I don't make policy for the

17   Office of the United States Trustee.  I can also assure you

18   that I believe that there is some pretty specific case law

19   in addition to Gingy at the Ninth Circuit level that makes

20   the distinction between what is overhead and what is, in

21   fact, an allocable cost in a particular case.

22         It strikes me that if Westlaw is a flat free, and there

23   is an effort to allocate it to this particular case that

24   takes it out of --

25         THE COURT:  But do we --

1          MR. LANDIS:  -- kind of --

2          THE COURT:  -- really want them to change their

3    contract, so that they now pay on a per-cost basis?

4          MR. LANDIS:  Your Honor, I --

5          THE COURT:  You go on-line, and you do it that

6    way.

7          MR. LANDIS:  I deal --

8          THE COURT:  Do we really want to encourage that?

9          MR. LANDIS:  I deal with the facts as they're

10   brought to me --

11         THE COURT:  No, no.

12         MR. LANDIS:  -- in a case.

13         THE COURT:  But I'm serious.  Do you really want

14   to deal -- I mean, you're right.  You're looking at the law

15   perspective.  Do you really want to do that?

16         MR. LANDIS:  Your Honor, the fact of the matter is

17   when the issue is presented as to whether an expense in a

18   case albeit a relatively-minor sum --

19         THE COURT:  Right.  But the --

20         MR. LANDIS:  -- it is --

21         THE COURT:  -- U.S. Trustee --

22         MR. LANDIS:  -- compensable or not as an

23   expense --

24         THE COURT:  Well --

25         MR. LANDIS:  In order for it to be compensated, it

1   has to not be overhead.

2           THE COURT:  Right.

3           MR. LANDIS:  That's my point --

4           THE COURT:  Um-h'm.

5           MR. LANDIS:  -- your Honor.

6           THE COURT:  Sure.  But the U.S. Trustee guidelines

7   are not done in a vacuum nor are our fee-applications

8   guideline.

9       It was easy in the old days to say a library was

10  overhead because you had to have this set of books

11  regardless.

12      Now, with electronic research, you look at a specific

13  issue, and you are charged for a specific amount of time

14  unless you have a contract which will make it cheaper.  Now,

15  it would certainly -- and is that overhead or is it not

16  overhead?

17      But it seems to me unfair to say if a person wants to

18  charge per research on every project, so they know they get

19  paid, and it costs everybody more is that really what you

20  want to encourage as opposed to people using flat rates.

21          MR. LANDIS:  I don't know that I'm going to

22  establish policy in this dialog with the Court in this case.

23  I understand and appreciate the concerns that you're

24  addressing.

25      I'm faced with just an application on these

1    particular --

2           THE COURT:  Okay.

3           MR. LANDIS:  -- sets of facts, and what I'm

4    suggesting to you is what we saw on our review --

5           THE COURT:  Sure.

6           MR. LANDIS:  -- indicates that it, in fact, is

7    overhead, therefore, not compensable under existing

8    Ninth Circuit law, not so much the guidelines.  That was the

9    reason for the objection, your Honor.

10        With respect to -- I just want to move quickly through

11   this --

12           THE COURT:  Um-h'm.

13           MR. LANDIS:  -- because it is not a huge sum.

14   With respect to the conference room, we have an invoice.  We

15   understand that now.

16        Delivery charges, that is a flat fee that they have

17   arranged.  That is within the scope of Gingy.  That is

18   overhead for purposes of our objection.

19        With respect to the fees objection, I think we've got

20   some explanation here now.  The question is whether or not

21   it's sufficient.  That's up to the Court to decide based on

22   your review of their application.

23        You have based on our summary only about -- what are we

24   talking about here -- seven hours, so it's not a huge amount

25   of money, but it is something that requires the Court's

33

1    consideration.

2        The total fees objected to are $3,187.  We believe that

3    the objection is viable based on the analysis that we have

4    put together.

5        And, Judge, for purposes of this hearing also and your

6    ease of review if you choose, we have prepared a similar

7    summary, a timekeeper summary, to what we did in a more

8    voluminous way in Ray, Quinney & Nebeker.

9        If I can approach?

10           THE COURT:  Okay.  But we just have this one

11    thing, right, two-tenths of an hour?

12           MR. LANDIS:  There is clerical, there is lumping,

13    and there is nonlegal services.

14           THE COURT:  Okay.

15           MR. LANDIS:  And I have broken them down for you

16    by detail.

17           THE COURT:  Okay.

18           MR. LANDIS:  So if you want to use it to compare

19    it, it basically will help you do it --

20           THE COURT:  Okay.

21           MR. LANDIS:  -- more quickly.

22        If I can approach?

23           THE COURT:  Um-h'm.

24        (Colloquy not on the record.)

25           THE COURT:  Okay.

1          (Colloquy not on the record.)

2              MR. LANDIS:  Again, Judge, this is simply a

3     summary of the items that we objected to based on the fee

4     application.

5          As a summary, we believe it's admissible under

6     Rule 1009.  We would move to have it admitted for

7     purposes --

8              THE COURT:  Okay.

9              MR. LANDIS:  -- of today's hearing.

10             THE COURT:  It's admitted.

11             MR. LANDIS:  Last but not least, Judge, you were

12    talking about having fees for Schwartzer & McPherson allowed

13    in connection with the interpleader action.  I'm very

14    concerned about that.

15         There is a special counsel that has been appointed to

16    serve in the interpleader action, and there is a reason for

17    that.

18         The reason for that is there is a conflict for the

19    Schwartzer & McPherson Law Firm.  They ought not be getting

20    paid in connection with the interpleader action.  I'm

21    concerned that the Court not lose track of that fact.

22    Mr. Huston exists because of the conflict.

23         And last but not least in connection with our objection

24    that wasn't addressed is we want to make certain that if

25    these fees are allowed at any amount that it's on an interim

1    basis and without prejudice to our continuing objection

2    regarding the conflict question.

3                THE COURT:  Okay.

4                MR. LANDIS:  Thank you, your Honor.

5                THE COURT:  All right.  I'm going to allow the

6    fees.  Again, as everybody knows in any case, these are all

7    interim fees.

8        On the clerical issues, though, I will overrule that

9    objection.  Arguably, the clerical person could have talked

10   to Mr. Fenneran, but it would have required Mr. Schwartzer

11   saying please give Mr. Fenneran a call.

12       And then the person would have responded back saying

13   Mr. Fenneran said X, so I don't think it would have saved

14   any time, two-tenths of an hour.  Also, I think Mr. Fenneran

15   deserves to be talked to by the attorney.

16       I mean, the news article, at first, that hits you in

17   the face, but, boy, you're absolutely right.  I mean, you

18   know, in the media coverage of this, it's important to know

19   whether or not how it's being covered, is it being covered

20   correctly.

21       Lumping, the explanation of these, I certainly

22   appreciate you bringing the issue to my attention.  The key

23   to my mind is can I tell what happened, and I think with

24   those explanations -- and I understand it required further

25   explanation.

36

1          With those explanations, I can understand what's

2     happening.  I can understand what tasks it should be billed

3     to, so that to me is sufficient.

4          Again, everybody keep in mind that to try and avoid

5     that nonlegal.  With the explanation that it was reviewing

6     the schedules, I'll allow that.

7          Now, on these expenses, I think the way to deal with

8     this is I'll temporarily allow them.  I think the U.S.

9     Trustee's Office should make overall a list of what you

10    believe is overhead and not overhead in the context of this

11    case that would be applicable to all the professionals, so

12    that we treat all the professionals alike.

13         And that if we have to have briefing at the end of the

14    case we can have one set of attorneys write one set of

15    briefs and resolve the issue and because they're certainly

16    legitimate issues, you know, and they do add up, and they're

17    important issues to bring up, but we must'nt lose

18    perspective.

19         And I think it would be good for your office to sit

20    down and take a look at in the changing world what is or is

21    not, and then that gives the attorneys the time to talk with

22    you and talk among themselves, so that's allowed.

23         But, again, all objections are preserved, but,

24    specifically, that objection is preserved, and we'll deal

25    with that if necessary at I guess probably the final

1   hearings.

2        So everybody need to keep in mind that that's going to

3   be one of the issues they're raising as to all of you,

4   PACER, Westlaw, delivery charges.  All right.

5        We need to take a half-hour break if we could.  We'll

6   come back probably about 45, a half hour to 45 minutes.

7   Which would you prefer, a half hour or 45 minutes?

8        (Colloquy not on the record.)

9             MS. CARLYON:  Tell us a time, and we'll be here.

10            THE COURT:  Okay.  A quarter of, then, sound good?

11            MS. CARLYON:  Thank you, your Honor.

12            UNIDENTIFIED SPEAKER:  Thank you, your Honor.

13            THE COURT:  Okay.  There's a --

14       (Colloquy not on the record.)

15            THE COURT:  -- cafeteria downstairs.  There's a

16   couple across the street.

17       (Colloquy not on the record.)

18            THE CLERK:  All rise.

19       (Recess at 12:59:05 p.m.)

20       (Thereupon, the portion requested to be transcribed

21        was concluded at 12:59:05 p.m.)

22

23

24

25

1    I certify that the foregoing is a correct transcript

2  from the electronic sound recording of the proceedings in

3  the above-entitled matter.

4

5

6  /s/ Lisa L. Cline                              11/01/06

7  Lisa L. Cline, Transcriptionist                  Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25