E-Filed On 11/7/06

1 **COMPLAINT**
SUSAN WILLIAMS SCANN, ESQ.
2 Nevada Bar No. 000776
PAUL R. CONNAGHAN, ESQ.
3 Nevada Bar No. 003229
DEANER, DEANER, SCANN, MALAN & LARSEN
4 720 South Fourth Street, Suite #300
Las Vegas, Nevada 89101 (702) 382-6911
5 Attorneys for Plaintiff Binford Medical Developers, LLC

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>———————— Debtor ————————<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC.<br><br>———————— Debtor ————————<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC.<br><br>———————— Debtor ————————<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC.<br><br>———————— Debtor ————————<br>In re:<br>USA SECURITIES, LLC.<br><br>———————— Debtor ————————<br><br>**BINFORD MEDICAL DEVELOPERS, LLC**, an Indiana Limited Liability Company,<br>                Plaintiff,<br>vs.<br>USA COMMERCIAL MORTGAGE COMPANY and FIDELITY NATIONAL TITLE GROUP<br>                Defendants | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>Adversary No.<br><br>Date of Hearing:<br>Time of Hearing:<br><br>Affects:<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC<br>☐ USA Realty Advisors, LLC<br>☐ All Debtors |

**ADVERSARY COMPLAINT**

COMES NOW, BINFORD MEDICAL DEVELOPERS, LLC, by and through its attorneys, SUSAN WILLIAMS SCANN, ESQ. and PAUL R. CONNAGHAN, ESQ. of the law firm of

DEANER, DEANER, SCANN, MALAN and LARSEN, and for its Complaint against the Defendants, USA COMMERCIAL MORTGAGE COMPANY, USA CAPITAL FIRST TRUST DEED FUND, LLC, FIDELITY NATIONAL TITLE GROUP, and alleges as follows:

## PARTIES

1. Plaintiff Binford Medical Developers, LLC is an Indiana limited liability company ("Binford") formed for the purpose of acquiring, developing and constructing office space known as the Binford Medical Complex ("the Property").

2. Defendant USA Commercial Mortgage Company ("USACM") is the Debtor entity in this jointly administered Chapter 11 proceeding. Fidelity National Title Group ("Fidelity") holds the construction funds for Binford and is being sued in interpleader, only in its capacity as construction disbursement service for those funds.

3. The direct lenders ("Direct Lenders") are a group of individuals, trusts, associations, or other interests which, pursuant to the terms of a Loan Servicing Agreement (the "LSA"), collectively through their duly authorized agent, USACM, entered into a lending arrangement with the Plaintiff for the acquisition and development of the Property (the "Loan" or "Construction Loan"). USACM was authorized by each of the Direct Lenders to undertake such actions, enter into such arrangements, and otherwise to perform such acts as were necessary or appropriate to enter into lending relationships with borrowers solicited and obtained by USACM including, in this instance, the Plaintiff. At all times pertinent, USACM was the duly authorized agent of the Direct Lenders for any and all purposes relating to such lending relationships, including that with Plaintiff.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. 151, 157 and 1334, and pursuant to one or any combination of the following: 11 U.S.C. 105, 541, 542, 543, 544, 545, 546, 547, 548, 549 and 550, Bankruptcy Rule 7001 and Local Rule 900, Local Rules of Practice, United States District Court, District of Nevada. This is a core proceeding over which this Court has jurisdiction under Title 28 U.S.C. 157(b). If any claim for relief is not a core

2

proceeding, Plaintiff hereby consents to determination of these claims by this Court.

5. The Defendant has sufficient minimum contacts with the District of Nevada to bring it within the jurisdiction of the courts of the District of Nevada.

## GENERAL ALLEGATIONS

## FACTUAL BACKGROUND

6. In 2005, Plaintiff approached the authorized agents of USACM (itself the duly authorized agent and representative of the Direct Lenders) to discuss and negotiate a loan sufficient to refinance and to undertake the requisite construction and development of the first building on the Property.

7. Negotiations continued between the representatives of the Plaintiff, and the duly authorized representatives and agents of USACM including, without limitation, Joseph D. Milanowski ("Milanowski"). At all times during such ongoing negotiations, Milanowski, and the other authorized agents and representatives of USACM (itself the duly authorized agent and representative of the Direct Lenders) were well aware of Plaintiff's borrowing needs and, accordingly, committed to fund the total Loan amount of $8,375,000.00.

8. Based upon the foregoing, Milanowski, and the other duly authorized agents and representatives of USACM with whom Plaintiff dealt (USACM being the duly authorized agent and representative of the Direct Lenders) well knew that the failure to fund all of the requested Loan would significantly harm and damage Plaintiff, prohibit the development and construction and would, in effect, destroy the purpose of the loan.

9. At all times throughout the negotiations, Milanowski, and the other duly authorized agents and representatives of USACM (itself the duly authorized agent and representative of the Direct Lenders) promised and assured the Plaintiff that the entire amount needed to construct the first building on the Property would, in fact, be funded. The proposed lending arrangement was otherwise a relatively high interest rate and with a relatively high origination fee of $418,750.00 which was paid in advance to USACM on the entire $8,375,000 budgeted loan amount.

10. In order to evidence the agreed lending relationship between the Direct Lenders, acting by and through their authorized agent and representative, USACM, and the Plaintiff, the following documents, among others, were executed:

    (a) The Construction Loan Agreement;

    (b) That certain Promissory Note Secured by Deed of Trust dated March 1, 2006, in the originally stated principal amount of $4,250,000.00 (the "Note");

    (c) That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated August 31, 2005, executed by the Plaintiff in favor of USACM, as agent for The Direct Lenders (the "Trust Deed"). USACM is also the servicer of the loan for the Direct Lenders.

11. In order to insure that the entire $8,375,000.00 would be advanced, Binford and USACM entered into a separate agreement whereby USACM committed to fund all amounts above the initial disbursement of $4,250,000.00 up to $8,375,000.00 from its own funds. USACM also committed to cause the Direct Lenders to forbear from exercising any rights or remedies during the term of any default by USACM. A true and correct copy of that agreement, dated August 30, 2005, is attached hereto as Exhibit 1 and incorporated by reference herein (the "USACM Agreement").

12. After the disbursement of the initial amount, Plaintiff encountered difficulties with its contractor and had to change contractors due to USACM'S practices, which resulted in an early deposit into the construction control fund of $500,000.00 and a delay of four months. The result of this was to prematurely deplete the interest portion of the loan. USACM, through Joseph Milanowski, committed to increase the loan amount an additional $1,000,000.00 to allow for funding for this extra interest.

13. Notwithstanding the Construction Loan Agreement, the Note and the Trust Deed, and USACM Agreement, only $7,450,000.00 was funded not $8,375,000.00 although the Plaintiff paid origination fees on the shortfall of $46,250.00 (5% of $925,000.00). At the

4

filing date $1,935,000.00 was on deposit in the Fidelity account. Approximately $330,000.00 of that $1,935,000.00 remains in the construction control account at Fidelity because USACM has demanded that it be disbursed to pay interest while USACM is in default under its obligations under the USACM Agreement. Fidelity will not release these funds without a court order.

14. Notwithstanding the implicit representations and commitments made by Milanowski and the other duly authorized agents and representatives of USACM of financial strength and stability, and unbeknownst to Plaintiff, USACM, and its affiliated entities, including without limitation, USA Capital First Trust Deed Fund, LLC (the "Fund"), were then in dire financial straights, with an ever-worsening financial condition. Unbeknownst to Plaintiff, USACM had apparently, among other things, pooled monies received as payments on various loans, and disbursed such amounts to investors on all loans regardless of the source of the actual payment; had compromised the total amount of certain indebtedness, or, at least, had not remitted the applicable amounts to the investors on any specific loan; had released collateral or comprised or satisfied certain debts without the knowledge of or payment to the applicable investors; and/or had engaged in other acts and practices, including the diversion of funds, from the appropriate, ultimate payee.

15. Upon information and belief, by the time the documents evidencing the Construction Loan between Plaintiff and the Direct Lenders were executed in August, 2005, the authorized agents and representatives, including Milanowski, of USACM (which itself was acting as the duly authorized agent and representative for the Direct Lenders) were well aware of the dire financial straights in which USACM and its affiliated entities, including the Trust, then existed; that existing management, including Milanowski, was likely to be replaced (and in fact has now been replaced by Thomas Allison ("Allison") of Mesirow Interim Financial Management, LLC) and that the filing of bankruptcy was likely if not imminent. All such authorized representatives and agents likewise knew that, upon the filing of bankruptcy, or, simply because of the deteriorating financial condition of USACM and its

affiliated entities, that the ultimate funding of the entire Construction Loan was in jeopardy to occur. Notwithstanding such knowledge, the authorized agents and representatives of USACM (itself the duly authorized agent and representative of the Direct Lenders) induced Plaintiff to close on the Construction Loan and to continue development of the Property, knowing the damage that would ensue from the later failure to fund. Upon information and belief, USACM, the duly authorized agent and representative of the Direct Lenders, undertook the actions and conduct described herein in order to obtain the origination fee and to provide additional monies as a source of funds to add to the pool for potential disbursement to the direct lenders on various loans.

16. On April 13, 2006, USACM and various other affiliated entities filed voluntary petitions under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada. All such cases remain pending. Since the filing of the bankruptcy cases, former management of USACM (including Milanowski) has been displaced and Allison appointed as the Chief Restructuring Officer of USACM and its affiliated debtors.

17. Consequently, and notwithstanding the promises, commitments, representations and agreements of the duly authorized agents and representatives, including Milanowski, of USACM (itself the duly authorized agent and representative of the Direct Lenders), and the terms of the Construction Loan Agreement and the USACM Agreement, USACM ceased further funding of the Construction Loan, despite Plaintiff's draw requests.

18. Because of the cessation of funding, construction at the Property has slowed, the general contractor and his sub-contractors have not been fully paid, Plaintiff has been forced to borrow short term funds at higher interest rates, and the project is at a substantial risk of becoming, and is likely to become, embroiled in significant construction and other litigation. Plaintiff has now likewise been advised that because of the delay in construction, if and when construction is able to be completed the cost of the required construction materials and labor will have increased by an amount in excess of several hundred thousand

6

to one million or more. Finally, and because of the slow down in construction as a result of USCAM'S cessation of funding, Plaintiff has lost most of its tenants, has been unable to close on its permanent financing and pay off the USACM loan.

19. Plaintiff has been required to retain the services of Deaner, Deaner, Scann, Malan and Larsen to enforce its rights and pursue the claims set forth herein, and has agreed to pay such attorneys a reasonable fee for their services.

20. All conditions precedent to the institution of this action have been waived, excused, or otherwise performed.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

21. Plaintiff realleges each and every allegation contained in Paragraphs 1 through 20 of their General Allegations and by this reference incorporate the same herein as though fully set forth herein.

22. This is an action for damages, in excess of $10,000.00 which includes delays, extra interest and lost tenants, exclusive of interest, fees and costs.

23. As set forth above, the failure of the USACM to fund the Construction Loan post-petition in its entirety, constitutes a breach of the Construction Loan Agreement and the USACM Agreement, and the overall loan commitment made to Plaintiff by the USACM.

24. As set forth above, the damage incurred by the Plaintiff as a result of the breach of the Construction Loan Agreement, the Note, and the USCAM Agreement is extensive, ongoing, and increasing.

25. USACM is liable to Plaintiff for the amount of its attorney's fees and expenses incurred in bringing this action and seeking the relief herein.

26. USACM is liable for such damage in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
(Breach of the Covenant of Good Faith and Fair Dealing)

27. Plaintiff realleges and incorporates all of the allegations contained in

Paragraphs 1 through 26 of General Allegations and the First Claim for Relief as though fully set forth herein.

28. This is an action for damages in excess of $10,000.00, exclusive of interest, fees and costs.

29. The Construction Loan Agreement and the USACM Agreement includes a covenant of good faith and fair dealing in the performance of each contractual obligation.

30. The failure by USCAM to fund the entire Construction Loan after inducing the Plaintiff into the Loan, constitutes a breach of the implied covenant of good faith and fair dealing.

31. As a consequence of the breach of such implied covenant of good faith and fair dealing, and as set forth above, Plaintiff has incurred extensive damage, which is ongoing and increasing.

32. USACM is liable to Plaintiff for such damages in an amount to be proven at trial.

33. USACM is liable to Plaintiff for the amount of the attorneys' fees and costs incurred by it in brining this action and seeking the relief herein.

### THIRD CLAIM FOR RELIEF
(Intentional Misrepresentations)

34. Plaintiff realleges and incorporates all of the allegations contained in Paragraphs 1 through 33 of the General Allegations, First and Second Claim for Relief as though fully set forth herein.

35. This is an action for damages in excess of $10,000.00 exclusive of interest, fees and costs.

36. As set forth above, Milanowski, and the other duly authorized agents and USACM (itself the duly authorized agent and representative of the Direct Lenders), repeatedly represented to the Plaintiff that the entire Construction Loan would be funded, notwithstanding any contrary language in the documents utilized by USACM in its business practices. Such representations

8

were made at a time when the duly authorized representatives of USACM knew that given the dire financial circumstances of USACM and its affiliated entities that the total Loan amount would likely not be funded. Such false representations were made in order to induce reliance thereon by Plaintiff. But for such materially false representations and inducements, Plaintiff would not have entered into the Loan and would have sought financing elsewhere.

37. Plaintiff did, in fact, rely upon such false, material representations and inducements in entering into the Loan, and in contracting and incurring the commencement of construction on the expenses in attempting to develop the Property.

38. Based upon such materially false representations and inducements by the duly authorized agents and representatives of the Direct Lenders, made with the intent that Plaintiff rely and upon which it did in fact rely, Plaintiff has incurred extensive damage, which is ongoing and increasing.

39. USACM is liable to Plaintiff for such damage in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(Declaratory Relief)

40. Plaintiff realleges and incorporates all of the allegations contained in Paragraphs 1 through 39 of the General Allegations, First, Second and Third Claim for Relief as though fully set forth herein.

41. The controversy arising in this matter and the terms of the Construction Loan and the USACM Agreement are ripe for declaratory relief.

42. The Court may declare based upon the Loan documents, and the USACM Agreement that Plaintiff is entitled to a declaratory judgment that until the loan is fully funded, USACM must forbear from collection and other activities until the loan is fully funded. Plaintiff is also entitled to a declaration that the funds on deposit with Fidelity belong to Plaintiff.

### FIFTH CLAIM FOR RELIEF
(Injunction)
(Interpleader)

43. Plaintiff realleges and incorporates all of the allegations contained in Paragraphs 1

through 42 of the General Allegations, First, Second, Third and Fourth Claim for Relief as though fully set forth herein.

44. The Debtors demand the application of the $330,000.00 in the Fidelity account to payment to interest but have failed to fund the balance of $925,000.00 and that the USA Defendants and the Direct Lenders forbear from taking any action to collect on the note and deed of trust until the loan is fully funded.

45. Plaintiff has no adequate remedy at law or otherwise for the harm or damage threatened to be done by the Defendants because the lack of these funds seriously jeopardizes Plaintiff's project. Plaintiff's remedy in the form of damages against USACM is clearly inadequate.

46. Plaintiff will suffer irreparable harm, damage, and injury unless a mandatory injunction issues to release to Plaintiff the funds remaining in the construction control account at Fidelity National Title Company.

WHEREFORE, Plaintiff demands judgment in its favor and against the Direct Lenders and the USA Defendants as follows:

(a) For damages against USACM in an amount to be proven at trial;
(b) For declaratory relief as described above;
(c) For an offset as described above;
(d) That all costs be taxed against the USACM and Direct Lenders;
(e) For the amount of attorneys' fees incurred in bringing this action and recovering the damages sought herein;
(f) Plaintiff demands judgment in its favor against USACM and the Direct Lenders enjoining preliminarily any foreclosure or other collection action against the Binford Loan until the final advances of $925,000.00 and $1,000,000.00 have been made;

. . .
. . .
. . .

(g) For damages in an amount to be proven at trial; and

(h) For such other and further relief this court deems just and proper.

DATED this 7th day of November, 2006

Respectfully Submitted,

DEANER, DEANER, SCANN, MALAN and LARSEN

By: _____
SUSAN WILLIAMS SCANN, ESQ.
Nevada Bar No. 000776
PAUL R. CONNAGHAN, ESQ.
Nevada Bar No. 003229
720 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Attorneys for Plaintiff
Binford Medical Developers, LLC

**EXHIBIT** 1

## AGREEMENT

USA Commercial Mortgage Company, a Nevada corporation ("USA"), and Binford Medical Developers, LLC, an Indiana limited liability company ("Borrower"), make this Agreement effective this 30th day of August, 2005 (the "Effective Date").

### RECITALS

A.  As of the Effective Date, USA, as broker for Lender, has arranged a Loan from Lender in the Loan Amount of $4,250,000 (the "Initial Loan Amount") to Borrower. The Loan is evidenced by a Loan Agreement and other Loan Documents by and between Lender and Borrower of even date herewith. Capitalized terms used herein without definition have the meanings assigned to them in the Loan Agreement.

B.  The Loan Agreement provides for optional increases in the Loan Amount by Lender up to the limit of $8,375,000, as set out in Section 3.2 of the Loan Agreement.

C.  Borrower has requested that Lender commit to: increasing the Loan Amount to $8,375,000 (the "Maximum Loan Amount") and making the additional advances up to the Maximum Loan Amount, but Lender may not do so under Nevada law.

D.  USA, on its own behalf and not in its capacity as broker, has offered to increase the Loan Amount up to the Maximum Loan Amount and make the advances from USA's own funds or through alternative sources that it arranges, up to the Maximum Loan Amount to Borrower to place Borrower in the same position Borrower would be in had Lender obligated itself under Section 3.2 of the Loan Agreement to increase the Loan Amount to $8,375,000.

NOW, THEREFORE, USA and Borrower agree as follows:

### AGREEMENTS

1.  USA hereby agrees to cause the Loan Amount to be increased to $8,375,000. USA agrees to make, either with its own money or through alternative sources that it arranges, any and all advances provided for in Section 3.2 and Exhibit "C" of the Loan Agreement, in the manner as provided for in the Loan Agreement, if Lender, in the exercise of its absolute discretion under Paragraph 3.2 of the Loan Agreement, declines to make such additional advances. The Initial Loan Amount and all such advances shall not exceed the Maximum Loan Amount. Notwithstanding the foregoing, Borrower acknowledges that no such advances need be made when an Event of Default exists, unless such Event of Default was caused by a default by USA under this Agreement.

2.  Should USA not fully and timely make any advance that it has agreed to make in paragraph 1, above, Borrower hereby agrees and acknowledges that its sole remedy shall be an action against USA for damages, and that it shall at all times remain fully liable to Lender (even if USA is a Lender) for all amounts loaned (or advanced) by Lender under the Loan Documents, and that USA's failure to perform under this Agreement shall not negate, nullify, invalidate, or

in any way excuse or diminish Borrower's duties and obligations under the Loan Documents. In that regard, this Agreement is not a Loan Document.

3. USA hereby agrees as follows:

(a) During the term of any default by USA hereunder, if such default causes an Event of Default by Borrower under the Loan Documents, USA: (i) shall cause Lender to fully forbear from exercising any rights or remedies Lender may have against Borrower under the Loan Documents or applicable law; and (ii) as servicing agent for the Loan shall forebear from exercising any right or remedies Lender may have against Borrower under the Loan Documents or applicable law.

(b) Borrower shall have ten (10) days after USA cures any default under this Agreement within which to cure any Event of Default by Borrower under the Loan Documents caused by USA's default under this Agreement. USA shall cause Lender to grant Borrower the cure period provided in this paragraph 3(b). USA, as servicing agent for the Loan, shall observe the provisions of this paragraph 3(b).

4. In the event USA subsequently becomes a Lender under the Loan Documents, then in addition to USA's individual obligations hereunder, and USA's obligations as servicing agent for the Loan, the obligations of USA under this Agreement shall apply to USA in its capacity as a Lender.

5. The following provisions of the Loan Agreement are incorporated herein by reference: Articles 5, 6, and 7, and Sections 8.15, and 8.16.

6. This Agreement may be executed in counterparts.

| USA: | BORROWER: |
|---|---|
| USA Commercial Mortgage Company | Binford Medical Developers, LLC |
| By: Joseph D. Milanowski, President | By: Kenneth E. Schmidt, Manager |