**Entered on Docket
November 08, 2006**

_____
**Hon. Linda B. Riegle
United States Bankruptcy Judge**

_____

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **ORDER (A) SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN ASSETS; (B) APPOINTING SPCP GROUP, LLC, AS LEAD BIDDER; AND (C) APPROVING BID PROCEDURES AND PROTECTIONS**<br><br>**(AFFECTS ALL DEBTORS)** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Date: October 19, 2006<br>Time: 9:30 a.m. |

At a hearing held on October 19, 2006, continued to October 25, 2006, the Court considered the "Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC, as Lead Bidder, and Approving Bid Procedures and Protections" (the "Bid Procedures Motion"), filed by USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTD Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC ("Realty Advisors"), and USA Securities, LLC ("USA Securities" and collectively with USACM, DTD Fund, FTD Fund, and Realty Advisors, the "Debtors"), in connection with a contemplated sale (the "Sale"), subject to an auction process described below, of substantially all of the assets of the FTD Fund (primarily its interests in a portfolio of loans) and certain assets of USACM (primarily those used to conduct its loan servicing business) (collectively, the "Assets") to SPCP Group, LLC ("Stalking Horse Bidder"), or to any successful overbidder in accordance with the terms of that certain Revised First Amended and Restated Asset Purchase Agreement dated as of November 7, 2006 to the Asset Purchase Agreement dated October 19, 2006 (the "Purchase Agreement") by and among (i) USACM and FTD Fund (together, the "Sellers"), (ii) DTD Fund, USA Securities, and Realty Advisors ("Acknowledging Parties"), and (iii) the Stalking Horse Bidder ("Purchaser"), which was submitted to the Court on November 7, 2006 (Docket No. 1750). Pursuant to the Bid Procedures Motion, the Debtors sought an order:

    1.    approving the Bid Procedures (attached hereto as <u>Exhibit A</u>, as revised),[1] which, among other things, (i) establish minimum qualifications for potential bidders to participate in the auction process, (ii) schedule an in-Court auction to obtain the highest and best offer for the Assets, and (iii) authorize the Debtors to determine, along with the four committees appointed in these cases (collectively, the "Committees"), the Successful Bid;

    2.    authorizing the Debtors to pay to the Stalking Horse Bidder: (i) a break-up fee in the amount of $1.5 million (the "Break-Up Fee"), payable under certain circumstances as described in the Purchase Agreement, which, if payable, shall be reduced by the amount of the Expense Reimbursement (defined below) actually paid to the Stalking Horse Bidder, and (ii) an

1  expense reimbursement, which shall be limited to actual and reasonable expenses incurred by the
2  Stalking Horse Bidder up to $500,000 (the "Expense Reimbursement"), payable under certain
3  circumstances as more particularly detailed in the Purchase Agreement; and

4   3. scheduling an auction (the "Auction") in accordance with the Bid
5  Procedures in order to identify the "Successful Bid" and the "Next Highest Bid" (as defined in the
6  Bid Procedures) for the Assets and approving the form of sale notice for the Auction (attached
7  hereto as Exhibit B).

8   Upon considering the Bid Procedures Motion, the statements of counsel made at
9  the hearing, the record in these cases, and any admissible evidence presented to the Court at or
10 prior to the hearing on the Bid Procedures Motion, the Court hereby finds as follows:

11 A. Notice of the Bid Procedures Motion and the hearing thereon were adequate and
12 proper under the circumstances;

13 B. The relief sought in the Bid Procedures Motion is reasonable, necessary and in the
14 best interests of the Debtors' respective estates, their creditors and interest holders; and

15 C. The proposed Sale may only be consummated pursuant to a confirmed Plan of
16 Reorganization approved by this Court after compliance with the applicable provisions of the
17 Bankruptcy Code and Rules, so that none of the protections attendant to a plan of reorganization
18 are being waived or modified in connection with the proposed sale.

19 Sufficient cause appearing therefor,

20  **IT IS HEREBY ORDERED THAT:**

21 1. The relief requested in the Bid Procedures Motion is hereby granted on the terms
22 and conditions set forth therein.

23 2. The Bid Procedures set forth in Exhibit A annexed hereto for use in connection
24 with parties making bids for the Assets and with conducting the Auction are hereby approved.
25 This Order shall control in the event that there are any discrepancies between this Order and the
26 Bid Procedures.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures.

3. Upon a Potential Bidder satisfying the Preliminary Qualifications set forth in the Bid Procedures, such Potential Bidder is entitled to the information provided to the Stalking Horse Bidder, pursuant to Sections 6.7(a) and (b) of the Purchase Agreement.

4. Upon a Potential Bidder satisfying the Preliminary Qualifications set forth in the Bid Procedures and submitting a Deposit to the Debtors, such Potential Bidder is entitled to the information provided to the Stalking Horse Bidder, pursuant to Sections 6.7(c) of the Purchase Agreement.

5. Upon a Potential Bidder becoming a Qualified Bidder, the Sellers are required to seek the consent of such Qualified Bidder in the same manner the Sellers are required to seek consent of the Stalking Horse Bidder pursuant to Section 6.2 of the Purchase Agreement, and the Sellers are required to consult with such Qualified Bidder in the same manner the Sellers are required to consult with the Stalking Horse Bidder pursuant to Section 6.3 of the Purchase Agreement.

6. The Stalking Horse Bidder is designated as the lead bidder for the purposes of the Auction, and the Qualified Bid of the Stalking Horse Bidder is designated as the Opening Bid to commence the Auction.

7. The Auction shall be held before the Honorable Linda Riegle, United States Bankruptcy Judge, on December 7, 2006, at 9:30 a.m., in the United States Bankruptcy Court for the District of Nevada, Foley Federal Building, 300 Las Vegas Boulevard South, Courtroom 1, Las Vegas, Nevada, at which time the Bankruptcy Court shall (i) conduct the Auction pursuant to the terms and conditions of this Order and the attached Bid Procedures, (ii) consider any issues or objections arising out of conduct of the Auction that are timely interposed by any party, and (iii) grant such other or further relief as the Bankruptcy Court may deem just or proper.

8. As part of the Bid Procedures, the Expense Reimbursement, which shall be limited to a maximum amount of actual and reasonable expenses incurred by Stalking Horse Bidder up to $500,000, is hereby approved as reasonable and necessary under the circumstances. The Expense Reimbursement shall be payable to Stalking Horse Bidder, unless otherwise waived by Stalking Horse Bidder in writing on or prior to February 16, 2007 (the "Outside Approval Date") ( i.e., 120

days following October 19, 2006, the date that on which Stalking Horse Bidder completed its final due diligence and executed the Purchase Agreement) and provided that Stalking Horse Bidder is not in breach of the Purchase Agreement, in the event that a plan of reorganization (the "Plan") effectuating the Sale to Stalking Horse Bidder is not confirmed by a final, non-appealable order on or before February 16, 2007. In the event that the Outside Approval Date passes and Stalking Horse Bidder has not waived compliance therewith, but it nonetheless thereafter acquires the Assets, then any Expense Reimbursement paid to Stalking Horse Bidder as a result of passage of the Outside Approval Date shall be repaid to USACM and the FTD Fund by Stalking Horse Bidder.

9. As part of the Bid Procedures, the Break-Up Fee in an amount equal to $1,500,000 is hereby approved as reasonable and necessary under the circumstances. The Break-Up Fee shall be paid to Stalking Horse Bidder from the sale proceeds paid by the Successful Bidder upon the closing of the Sale to a Successful Bidder other than the Stalking Horse Bidder; provided however, that the Break-Up Fee shall be reduced by any Expense Reimbursement actually paid to Stalking Horse Bidder. In addition, the Break-Up Fee shall be paid to Stalking Horse Bidder, reduced only by the amount paid to Stalking Horse Bidder in respect of the Expense Reimbursement, if within 9 months following the Outside Approval Date, any portion of the Assets is transferred to any party for a payment equal to or greater than the Total Asset Purchase Price set forth in the Purchase Agreement.

10. Only the estates of USACM and FTD Fund shall be liable for the Break-Up Fee or the Expense Reimbursement. The estates of USACM and FTD Fund shall share in any Overbid in the same proportion or in the same manner as they share in the liability for the Break-Up Fee or the Expense Reimbursement, and shall file a stipulation with the Court that sets forth such agreement under seal with the Court not less than 10 days before the Auction.

11. In the event that the Debtors receive from a Qualified Bidder other than the Stalking Horse Bidder a competing Qualified Bid that complies with the requirements of this Order and the attached Bid Procedures, the Stalking Horse Bidder shall be entitled, but not obligated, to submit successive Increased Bids at the Auction, which shall be calculated as the

1  amount actually bid by the Stalking Horse Bidder, plus the amount of the Break-Up Fee.

2      12.    Within three (3) business days following entry of this Order, the Debtors shall
3  serve upon all persons that Debtors believe may have an interest in submitting a Qualified Bid for
4  the Assets a Notice of Bid Procedures, and Invitation for Higher and Better Offers (the "Notice"),
5  substantially in the form attached hereto as <u>Exhibit B.</u>

6      13.    The Court at the Auction shall determine, to the extent there is a dispute, whether a
7  bidder is a Qualified Bidder and/or whether a bid is a Qualified Bid.

8      14.    The Court shall retain jurisdiction over any matter or dispute arising from or
9  relating to the implementation of this Procedures Order.

10     15.    The provisions of this Procedures Order, are binding on, and inure to the benefit of,
11 the successors and assigns of the Debtors and their estates, any trustee whether in chapter 11 or
12 chapter 7, any examiner with expanded powers, and any receiver for the Debtors or assignee for
13 the benefit of its creditors, and are binding on and inure to the benefit of the successors and
14 assigns of the Stalking Horse Bidder.

15     16.    The Bankruptcy Court, with input from the parties, shall determine all matters
16 relative to the conduct of the Auction at the time of the Auction.  Any objections to the Auction or
17 to matters arising under the approved Bid Procedures must be raised prior to the conclusion of the
18 Auction or shall be waived.

19     17.    The Debtors are authorized and empowered to take or perform such actions and
20 expend such funds as may be necessary to effectuate the terms of this Order.

| Submitted by: | Approved / Disapproved by<br>OFFICE OF THE U.S. TRUSTEE[*] |
|---|---|
| /s/  Jeanette E. McPherson<br>Lenard E. Schwartzer, Nevada Bar No. 0399<br>Jeanette E. McPherson, Nevada Bar No. 7423<br>SCHWARTZER & MCPHERSON LAW FIRM<br>2850 South Jones Boulevard, Suite 1<br>Las Vegas, Nevada   89146<br>  and<br>Annette W. Jarvis, Utah Bar No. 1649<br>RAY QUINNEY & NEBEKER P.C.<br>36 South State Street, Suite 1400<br>P.O. Box 45385<br>Salt Lake City, Utah 84145-0385 | By: _____<br>    Office of the U.S. Trustee |

**ORDER (A) SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN ASSETS; (B) APPOINTING SPCP GROUP, LLC, AS LEAD BIDDER; AND (C) APPROVING BID PROCEDURES AND PROTECTIONS (AFFECTS ALL DEBTORS)**

Approved/Disapproved by:
LEWIS AND ROCA, LLP*

By:_____
   SUSAN M. FREEMAN, ESQ.
   ROB CHARLES, ESQ.
*Counsel for the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company*

Approved/Disapproved by:
GORDON & SILVER, LTD.*

By:_____
   GERALD M. GORDON, ESQ.
   GREGORY E. GARMAN, ESQ.
*Counsel for the Official Committee of Holders of Executory Contract Rights of USA Commercial Mortgage Company*

Approved/Disapproved by:

ORRICK, HERRINGTON & SUTCLIFFE LLP and BECKLEY SINGLETON, CHTD.*

By:_____
   MARC A. LEVINSON, ESQ.
   LYNN TRINKA ERNCE, ESQ.
   BRETT A. AXELROD, ESQ.
   ANNE M. LORADITCH, ESQ.
*Counsel for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC*

Approved/Disapproved by:

STUTMAN TREISTER & GLATT, P.C. and SHEA & CARLYON, LTD.*

By:_____
   FRANK A. MEROLA, ESQ.
   EVE KARASIK, ESQ.
   CHRISTINE M. PAJAK, ESQ.
   CANDACE C. CARLYON, ESQ.
*Counsel for the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund LLC*

Approved/Disapproved by:
JONES VARGAS*

By:_____
   JANET CHUBB, ESQ.
*Counsel for Direct Lenders-Beneficiaries*

Approved/Disapproved by:
LAW OFFICE OF ROBERT LEPOME*

By:_____
   ROBERT LEPOME, ESQ.
*Counsel for Stanley Alexander, et al.*

Approved/Disapproved by:
SCHRECK BRIGNONE*

By:_____
   JAMES D. GREENE, ESQ.
*Counsel for Capital Crossing Bank*

                       # # #

---

* This order was previously submitted with "approved" signatures from all parties listed. However, the form of this order has been resubmitted to reference the corrected and revised name of the Purchase Agreement and its docket number. No substantive revisions have been made, and due to this fact and time restrictions, this order has not been recirculated for signature.

# EXHIBIT "A"

**BID PROCEDURES**

The following procedures (the "Bid Procedures") shall apply in conducting an auction and identifying the "Successful Bidder" (as defined below) for certain assets (the "Property") to be sold in connection with a plan of reorganization in the jointly administered chapter 11 bankruptcy cases of USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC, and USA Securities, LLC (collectively "Debtors"). These Bid Procedures have been approved and authorized by an order (the "Bid Procedures Order") of the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

1. <u>Property to be Sold</u>. Pursuant to that certain Revised First Amended and Restated Asset Purchase Agreement dated as of November 7, 2006 to the Asset Purchase Agreement dated October 19, 2006 (the "Purchase Agreement") by and among (i) USACM and FTD Fund (together, the "Sellers"), (ii) DTD Fund, USA Securities, and Realty Advisors ("Acknowledging Parties"), and (iii) the Stalking Horse Bidder ("Purchaser"), which was submitted to the Court on November 7, 2006 (Docket No. 1750), the Stalking Horse Bidder has agreed to purchase the Property, which is comprised of the First Trust Deed Property and the Commercial Mortgage Property (as those terms are defined in the Purchase Agreement). Copies of the Purchase Agreement and Bid Procedures Order are available electronically on the Debtors' website, www.usacapitalcorp.com. As provided in the Bid Procedures Order, the sale of the Property (the "Sale"), following the conclusion of the Auction (as defined below), is subject to Bankruptcy Court approval and will be considered at a hearing on the confirmation (the "Confirmation Hearing") of the Debtors' plan of reorganization (the "Plan"). The Stalking Horse Bidder shall be treated as a Qualified Bidder (as defined below) and the Purchase Agreement shall be treated as a Qualified Bid (as defined below) for all purposes under these Bid Procedures.

2. <u>Due Diligence and Preliminary Qualifications</u>. In order for a potential bidder ("Potential Bidder") to perform due diligence and examine the Property, a Potential Bidder must first submit to the Debtors and each of the official committees appointed in these cases (the "Committees") the following:

    i. to the extent not previously provided to the Debtors, an executed confidentiality agreement (the form of which will be provided upon request) in form and substance satisfactory to the Debtors ("Confidentiality Agreement"),

    ii. satisfactory evidence of the Potential Bidder's financial ability to close the Sale, including, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current financial statements of the equity holder(s) of the Potential Bidder, and/or such other financial disclosures acceptable to, and requested by, the Debtors ("Financial Disclosures"), which Financial Disclosures shall remain confidential and available only to the Debtors and Committees,

    iii. A written statement of the Potential Bidder's intentions with respect to servicing the loans identified in the Purchase Agreement, and satisfactory evidence of the

1

Potential Bidder's qualifications to act as a loan servicer, and its ability to perform the obligations under the Loan Servicing Agreements or, in the case of a Joint Bid (as defined below), the same information for at least one of the joint bidders.

The requirements of this Section 2 shall collectively constitute the "Preliminary Qualifications."  The initial determination of whether a Potential Bidder has satisfied the Preliminary Qualifications is within the discretion of the Debtors, although the Debtors agree to consult with the Committees in making each determination.  Within three (3) business days of a Potential Bidder submitting its Preliminary Qualifications, the Debtors shall notify the Potential Bidder of whether it has satisfied the Preliminary Qualifications.  Any disputes as to whether a Potential Bidder has satisfied the Preliminary Qualifications (including if any of the Committees disagrees with the Debtors' determination) shall be resolved by the Bankruptcy Court.  All reasonable efforts will be made to provide a Potential Bidder that satisfies the conditions of this Section 2 with such information as such Potential Bidder may determine is necessary or relevant to the formulation of its bid.

3. *Qualified Bidders*.  To be a "Qualified Bidder," a Potential Bidder which has received notice that it has satisfied the Preliminary Qualifications must submit to the Debtors, with copies to each of the Committees, a "Qualified Bid" consisting of all of the following items by no later than 4:00 p.m. prevailing Pacific Time on November 30, 2006 (i.e., seven days prior to the scheduled Auction (as defined below)) (the "Qualification Deadline"):

i. a letter setting forth the identity of the Potential Bidder (including, for a Joint Bid, the identity of each of the joint bidders), the contact information for such Potential Bidder, and full disclosure of any pre-petition or post-petition affiliation that the Potential Bidder may have with any of the:  (a) Debtors or their retained professionals; (b) major creditors of the Debtors or such parties' retained professionals; (c) equity security holders of USACM or such parties' retained professionals; (d) any of the Debtors' former or current officers or directors or other insiders; or (e) any affiliates of the Debtors;

ii. an executed letter acknowledging receipt of a copy of the Bid Procedures, and agreeing to accept and be bound by the Bid Procedures;

iii. an executed asset purchase agreement (and a black-lined version of that agreement as compared with the Purchase Agreement) which shall contain terms and conditions for the purchase of the Property that are substantially similar to or better than those contained in the Purchase Agreement, which shall provide for a closing on the date required by the Purchase Agreement and which shall not contain any conditions to closing based upon the ability of the Potential Bidder to obtain financing, the outcome of unperformed due diligence by the Potential Bidder, or any reason other than those set forth in the Purchase Agreement;

iv. a disclosure of the proposed purchase price, which must be at least equal to the Total Asset Purchase Price (as defined in the Purchase Agreement) offered by Stalking Horse Bidder on a basis no less favorable than the Purchase Agreement, and provided further that the assets being purchased must include at least the same Property being purchased in the Purchase Agreement, and that the proposed cash consideration must be equal to the cash component of the Total Asset Purchase Price (as defined in the Purchase Agreement), and that the proposed

purchase is subject to the Auction bidding requirements set forth below in Section 4.v., and provided further that if there is no Minimum Incremental Overbid (as defined below) from a Qualified Bidder at the Auction, then the Stalking Horse Bidder shall be deemed the Successful Bidder (as defined below) at the Auction;

      v. a good faith cash or cash equivalent deposit in the amount equal to at least $2,325,000, which is the same amount that will be deposited with the Debtors by Stalking Horse Bidder (the "Deposit"), provided that for a Joint Bid (as defined below) this amount is collective and may be deposited jointly. The Deposit shall be tendered by cashier's check and/or wire transfer into a segregated interest bearing escrow account, with all interest payable to the Potential Bidder, from the date of its submission to the Sellers. The Potential Bidder shall forfeit the Deposit if the Potential Bidder is the Successful Bidder (as defined below) and: (a) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale to such Potential Bidder; or (b) breaches the terms of the agreement pursuant to which the Potential Bidder has agreed to purchase the Property. The Deposit shall be returned promptly to the Potential Bidder: (a) if the Potential Bidder is determined by the Debtors not to be a Qualified Bidder; or (b) under the circumstances contemplated by Sections 7 and 8 hereof;

      vi. satisfactory evidence of the Potential Bidder's: (a) financial ability to close the Sale, including current financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current financial statements of the equity holder(s) of the Potential Bidder, and/or such other financial disclosures acceptable to, and requested by, the Debtors; and (b) ability to consummate the Sale on the date and on terms and conditions no less favorable to the Debtors than as contemplated by the Purchase Agreement;

      vii. a statement confirming that the bid is irrevocable through the conclusion of the Auction and that the Potential Bidder does not request nor is entitled to any break-up fee, termination fee, expense reimbursement or similar type of payment.

      Notwithstanding anything set forth herein, two or more parties acting collectively may submit a bid for all of the Property (a "Joint Bid") and may together qualify as a Qualified Bidder, provided that any such Joint Bid must comply with the requirements of a Qualified Bid set forth above, including, without limitation, that the Joint Bid: (a) be made for all of the Property; (b) include a disclosure of the proposed purchase price, which must be equal to the Total Asset Purchase Price (as defined in the Purchase Agreement) offered by Stalking Horse Bidder on a basis no less favorable than the Purchase Agreement; (c) meets the minimum cash requirements, including the Deposit; and (d) fully discloses the identity of each entity participating in such Joint Bid and discloses the terms of any such participation that, in the reasonable business judgment of the Debtors (in consultation with the Committees) are relevant to such Joint Bid.

      The initial determination of whether a Potential Bidder is a Qualified Bidder is within the discretion of the Debtors, although the Debtors agree to consult with the Committees in making each determination, and shall be communicated to the Potential Bidder by no later than two (2) business days prior to the Auction. Any disputes as to whether a Potential Bidder is a

3

Qualified Bidder (including if any of the Committees disagrees with Debtors' determination) shall be resolved by the Bankruptcy Court.

   4. <u>The Auction</u>.  The auction shall commence and take place on December 7, 2006 at 9:30 a.m. prevailing Pacific Time, before the Honorable Linda Riegle, United States Bankruptcy Judge, in Courtroom #2 of the United States Bankruptcy Court for the District of Nevada, Foley Federal Building, Las Vegas, Nevada (the "Auction").  The Auction shall be held in accordance with the following guidelines:

   i. Participation in the Auction shall be open only to Qualified Bidders.

   ii. The Auction will be transcribed by a court reporter and an official transcript of the Auction will be available in time for the Confirmation Hearing.

   iii. All Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative or agent with actual authority to participate and bind such Qualified Bidder.  Before the bidding begins, each individual that intends to participate in the Auction shall identify himself or herself and, if he or she intends to bid on behalf of another, the identity of the principal represented, and certify that such person or represented principal is a Qualified Bidder.

   iv. The Stalking Horse Bidder and each of the parties that submitted a Qualified Bid who are present at the Auction (each, an "Auction Participant") will draw lots to determine the bid order, with the final lot being assigned to the Stalking Horse Bidder (the "Bid Order").

   v. The opening bid to commence the Auction shall be the Qualified Bid of the Stalking Horse Bidder (the "Opening Bid").  During the Auction, any Qualified Bidder may submit an increased bid (an "Increased Bid") that satisfies the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price.  The initial Increased Bid shall have an increased cash component of at least $1,750,000 (the "Minimum Incremental Overbid") more than the Opening Bid on a basis no less favorable than the Purchase Agreement.  The $1,750,000 additional cash component is intended to pay the Break-Up Fee of $1,500,000 (as defined below) and the initial overbid increment of $250,000.  Subsequent overbid increments ("Overbid Increment") (a) shall be not less than $100,000 and (b) shall be made to increase the Total Asset Purchase Price (as defined in the Purchase Agreement).[1]  For the avoidance of doubt, including without limitation comparison to other Qualified Bidders' Increased Bids, any Increased Bid submitted by the Stalking Horse Bidder shall be calculated as the amount actually bid by the Stalking Horse Bidder, plus the amount of the Break-Up Fee.

---

[1] To clarify, during the Auction, bidders shall make Increased Bids with respect to the Total Asset Purchase Price and shall not allocate any Overbid Increment, including the Minimum Incremental Overbid, between the First Trust Deed Property and the Commercial Mortgage Property.  The allocation of any such Overbid Increment, including the Minimum Incremental Overbid, shall be made in accordance with the terms of the Plan or subsequent order of the Bankruptcy Court.

vi. Except for the Opening Bid, the bidding will proceed according to the Bid Order. In the first round and in each subsequent round, each Auction Participant must either: (a) increase its bid by the Minimum Incremental Overbid; or (b) pass.

vii. As time is of the essence, each Auction Participant must have present at the Auction any and all persons necessary to authorize Increased Bids. A time limit of 20 minutes (or such other time period as the Bankruptcy Court directs) will be imposed on each bid, and an Auction Participant's failure to timely submit a bid will be deemed to be a pass by the Auction Participant.

viii. The Auction will conclude if no Auction Participant submits an Increased Bid after the Opening Bid or when one of the Auction Participants has submitted an Increased Bid and all other Auction Participants have passed.

ix. Upon the conclusion of the Auction, the Debtors and the Committees will collectively identify the Successful Bid (as defined below) and the Next Highest Bid (as defined below). No bids will be considered after the conclusion of the Auction.

x. By no later than 5:00 p.m. on the first business day following the conclusion of the Auction, the Successful Bidder (as defined below) shall execute and deliver to the Debtors its asset purchase agreement, which shall reflect the name of the Successful Bidder (as defined below) and the successful bid price submitted at the Auction by the Successful Bidder.

5. <u>Break-Up Fee</u>. In the event the Stalking Horse Bidder is not the Successful Bidder (as defined below) at the conclusion of the Auction and subject to the closing of the Sale to the Successful Bidder, the Stalking Horse Bidder shall be paid from the sale proceeds paid by the Successful Bidder, a fee in the amount of $1,500,000 (the "Break-Up Fee"), as authorized by the Bid Procedures Order. The Stalking Horse Bidder is entitled, but not obligated, to submit Increased Bids at the Auction. The Break-Up Fee shall be payable to the Stalking Horse Bidder upon the closing of the Sale to the Successful Bidder from the sale proceeds paid by the Successful Bidder; provided, however, that the Break-Up Fee shall be reduced by any expense reimbursement actually paid to Stalking Horse Bidder, which expense reimbursement shall be limited to a maximum amount of actual and reasonable expenses incurred by Stalking Horse Bidder up to $500,000 (the "Expense Reimbursement"), as authorized by the Bid Procedures Order.

6. <u>Selection of Successful Bidder</u>. Upon conclusion of the Auction, the Debtors and the Committees shall collectively determine which of the Qualified Bid of the Stalking Horse Bidder and Increased Bids, if any, (each of which shall satisfy the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price, including, but not limited to, being on a basis no less favorable than the Purchase Agreement) constitutes the highest and otherwise best bid for the Property (the "Successful Bid"). Subject to the preceding sentence and compliance with these Bid Procedures, the bidder making the Successful Bid shall be considered the "Successful Bidder." To the extent there is any dispute about which bidder is the Successful Bidder the Bankruptcy Court shall make that determination.

7.  <u>Selection of Next Highest Bidder.</u>  After determining which bidder is the Successful Bidder, the Debtors and the Committees shall collectively determine which of the Qualified Bid of the Stalking Horse Bidder and Increased Bids, if any, (each of which shall satisfy the requirements of a Qualified Bid set forth in Section 3 above, except as to the proposed purchase price, including, but not limited to, being on a basis no less favorable than the Purchase Agreement) constitutes the next highest and otherwise best bid for the Property (the "Next Highest Bid").  Subject to the preceding sentence and compliance with these Bid Procedures, the bidder making the Next Highest Bid shall be considered the "Next Highest Bidder."  To the extent there is any dispute about which bidder is the Next Highest Bidder the Bankruptcy Court shall make that determination.

If the bidder identified as the Next Highest Bidder agrees to maintain its status as the back-up bidder to the Successful Bidder, then it must also agree that its Next Highest Bid will remain irrevocable and subject to acceptance by the Debtors and the Committees, and the Debtors will retain its Deposit, until the earlier of (a) the closing and effectiveness of the transactions contemplated by the Successful Bid, or (b) five (5) business days following the termination of the purchase agreement evidencing the Successful Bid if the Debtors do not accept the Next Highest Bid.[2]  If the Debtors and the Committees accept the Next Highest Bid, then by no later than 5:00 p.m. on the first business day following such acceptance, the Next Highest Bidder shall execute and deliver to the Debtors its asset purchase agreement, which shall reflect the name of the Next Highest Bidder and the Next Highest Bid price submitted at the Auction by the Next Highest Bidder and the Deposit shall be retained by the Debtors and applied against the purchase price of the Next Highest Bidder; provided however, that the Next Highest Bidder shall forfeit the Deposit if the Next Highest Bidder:  (a) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale of the Property to such bidder; or (b) breaches the terms of the agreement pursuant to which the Next Highest Bidder has agreed to purchase the Property.

If the bidder initially identified as the Next Highest Bidder does not agree to such terms, then the Debtors and the Committees (and the Court, to the extent there is a dispute), may collectively identify the next highest or otherwise best bid as the Next Highest Bid, and may continue to do so until such a bidder who has submitted a bid agrees to become the Next Highest Bidder.

8.  <u>Returns of Deposits</u>.  Within five (5) business days after the conclusion of the Auction, the Deposits submitted by all bidders shall be returned, except for (a) the Deposit of the Successful Bidder, in which case the Deposit will be applied to the purchase price for the Property; (b) the Deposit of the Next Highest Bidder, if any, subject to Section 7 hereof; and (c) any bidder that forfeits its Deposit under the provisions hereof.  Except as otherwise provided for herein, in the event the Debtors terminate the proposed sale of the Property, the Deposits submitted by all bidders shall be returned promptly.

---

[2]  For the avoidance of doubt, in the event the Next Highest Bidder is the Stalking Horse Bidder, nothing in Section 7 is intended to nor does it extend the Outside Approval Date as that term is defined in the Offer Letter.

6

9.    Deliveries.  Potential Bidders shall deliver their Preliminary Qualifications and their Qualified Bids by mail, hand-delivery or facsimile, provided that such information must be actually received by the respective deadlines set forth above at the following addresses by no later than the date and time (where applicable) of each applicable deadline, or the Preliminary Qualification and Qualified Bid information will be deemed not received, and the Potential Bidder shall not be a Qualified Bidder:

| | |
|---|---|
| Ray Quinney & Nebeker PC<br>36 S. State Street, Ste. 1400<br>P.O. Box 45385<br>Salt Lake City, UT 84145-0385<br>Fax: (801) 532-7543<br>Attn: Annette W. Jarvis, Esq.<br><br>Counsel for Debtors and Debtors-In-Possession | |
| Stutman, Treister & Glatt<br>1901 Avenue of the Stars, 12th Floor<br>Stutman, Treister & Glatt, P.C.<br>Los Angeles, CA 90067<br>Fax: (310) 228-5788<br>Attn: Frank A. Merola, Esq.<br><br>Counsel for the Official Committee of Equity Holders of USA Capital First Trust Deed Fund, LLC | Gordon & Silver, Ltd.<br>Gerald M. Gordon<br>3960 Howard Hughes Pkwy., 9th Floor<br>Las Vegas, NV 89109<br>Fax: (702) 796-5555<br>Attn: Gregory E. Garman<br><br>Counsel for the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company |
| Orrick, Herrington & Sutcliffe LLP<br>400 Capitol Mall, Suite 3000<br>Sacramento, CA 95814-4497<br>Fax: (916) 329-4900<br>Attn: Marc A. Levinson, Esq.<br><br>Counsel for the Official Committee of Equity Holders of USA Capital Diversified Trust Deed Fund, LLC | Lewis and Roca LLP<br>3993 Howard Hughes Pkwy., Suite 600<br>Las Vegas, NV 89109<br>Fax: (702) 949-8398<br>Attn: Rob Charles, Esq.<br><br>Counsel for the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company |

891765.09

# EXHIBIT "B"

Annette W. Jarvis, Utah Bar No. 1649 (admitted pro hac vice)
Steven C. Strong, Utah Bar No. 6340 (admitted pro hac vice)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **NOTICE OF SALE OF PROPERTY, BID PROCEDURES AND INVITATION FOR HIGHER AND BETTER OFFERS** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **Qualified Bid Deadline: November 30, 2006**<br>(4:00 p.m. prevailing Pacific Time)<br>**Auction Date: December 7, 2006**<br>(9:30 a.m. prevailing Pacific Time) |

- 1 -

404049v3

**PLEASE TAKE NOTICE** that at a hearing held on October 19, 2006, and continued to October 25, 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTD Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC ("Realty Advisors"), and USA Securities, LLC ("USA Securities" and collectively with USACM, DTD Fund, FTD Fund, and Realty Advisors, the "Debtors"), obtained Court approval to conduct an auction in connection with a contemplated sale (the "Sale") of substantially all of the assets of the FTD Fund (primarily its interests in a portfolio of loans) and certain assets of USACM (primarily those used to conduct its loan servicing business) (collectively, the "Assets") to SPCP Group, LLC ("Stalking Horse Bidder"), or to any successful overbidder in accordance with the terms of that certain Revised First Amended and Restated Asset Purchase Agreement dated as of November 7, 2006 to the Asset Purchase Agreement dated October 19, 2006 (the "Purchase Agreement") by and among (i) USACM and FTD Fund (together, the "Sellers"), (ii) DTD Fund, USA Securities, and Realty Advisors ("Acknowledging Parties"), and (iii) the Stalking Horse Bidder ("Purchaser"), which was submitted to the Court on November 7, 2006 (Docket No. 1750). A copy of the Purchase Agreement is attached hereto as Exhibit "1".

**PLEASE TAKE FURTHER NOTICE** that the Assets will be auctioned in accordance with the bid procedures (the "Bid Procedures")[1] described in more detail in the "Order (A) Scheduling An Auction For The Sale Of Certain Assets; (B) Appointing SPCP Group, LLC, As Lead Bidder; And (C) Approving Bid Procedures And Protections" (the "Bid Procedures Order"), a copy of which is attached hereto as Exhibit "2".

**PLEASE TAKE FURTHER NOTICE** that parties wishing to bid for the Assets should review and comply with the Bid Procedures set forth in the Bid Procedures Order, including, among other things, (i) satisfying the Preliminary Qualifications set forth in the Bid Procedures and (ii) submitting a Qualified Bid to the Debtors and the Committees pursuant to the terms set forth in the Bid Procedures on or before 4:00 p.m. prevailing Pacific Time on November 30, 2006.

---

[1] Any capitalized terms not defined in this notice are given the definitions set forth in the Bid Procedures.

- 2 -

404049v3

1  A copy of the Bid Procedures Order and Purchase Agreement are also available at Debtors'

2  website www.usacapitalcorp.com.[2]

3  **PLEASE TAKE FURTHER NOTICE** that on December 7, 2006 at 9:30 a.m. prevailing

4  Pacific Time, an auction for the Assets (the "Auction") will be conducted before the Honorable

5  Linda Riegle, United States Bankruptcy Judge, in Courtroom #2 of the United States Bankruptcy

6  Court for the District of Nevada, Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas,

7  Nevada. The Auction shall be conducted pursuant to the terms set forth in the Bid Procedures.

8  **PLEASE TAKE FURTHER NOTICE THAT** only a Qualified Bidder who has

9  submitted a Qualified Bid pursuant to the terms set forth in the Bid Procedures will be eligible to

10  participate at the Auction.

11  Dated this _____ day of November 2006.

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

---

[2] Interested parties without internet access may obtain a copy of the Bidding Procedures Order and/or the Purchase Agreement by written request to the Debtors' undersigned counsel.

- 3 -

404049v3