```
 1                UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF NEVADA
 2                    LAS VEGAS, NEVADA
    In re:  USA COMMERCIAL MORTGAGE   )  OCTOBER 19, 2006
 3  COMPANY,                          )  E-Filed:  11/06/06
                                      )
 4           Debtor.                  )  Case No.
                                      )  BK-S-06-10725-LBR
 5  _____ )  Chapter 11
    USA COMMERCIAL MORTGAGE COMPANY,  )
 6                                    )
             Plaintiff,               )
 7                                    )
        vs.                           )  Adversary No.
 8                                    )  06-01146-LBR
    WELLS FARGO BANK, N.A., et al.,   )
 9                                    )
             Defendants.              )
10  _____ )
    USA COMMERCIAL MORTGAGE COMPANY,  )
11                                    )
             Plaintiff,               )
12                                    )
        vs.                           )  Adversary No.
13                                    )  06-01167-LBR
    ROBERT J. KEHL, et al.,           )
14                                    )
             Defendants.              )
15  _____ )
    USA COMMERCIAL MORTGAGE COMPANY,  )
16                                    )
             Plaintiff,               )
17                                    )
        vs.                           )  Adversary No.
18                                    )  06-01179-LBR
    STANDARD PROPERTY DEVELOPMENT,    )
19  LLC,                              )
             Defendant.               )
20  _____ )

21            PARTIAL TRANSCRIPT OF PROCEEDINGS
                             OF
22        (06-01146) SCHEDULING CONFERENCE RE: COMPLAINT
     UNDER 11, USC, SECTIONS 105, 362, 542, 549, AND 550, NO. 38
23                            AND
           (06-01167) MOTION FOR SUMMARY JUDGMENT
24       AND FOR ORDER DIRECTING RELEASE OF FUNDS, NO. 97

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```

2

```
 1                    MOTION FOR SUMMARY JUDGMENT
         AND FOR ORDER DIRECTING RELEASE OF FUNDS, NO. 133
 2                              AND
                      MOTION FOR SUMMARY JUDGMENT
 3       AND FOR ORDER DIRECTING RELEASE OF FUNDS, NO. 148
                                AND
 4                    MOTION FOR SUMMARY JUDGMENT
         AND FOR ORDER DIRECTING RELEASE OF FUNDS, NO. 157
 5                              AND
                          STATUS HEARING
 6           RE: EMERGENCY MOTION FOR ORDER EXTENDING
         THE DEBTOR'S EXCLUSIVE PERIOD TO FILE A PLAN
 7              TO SEPTEMBER 15, 2006, NO. 1274
                                AND
 8           MOTION FOR RELIEF FROM STAY, NO. 1159
                                AND
 9          (06-10725) ORDER SHORTENING TIME
           RE: MOTION TO EXTEND EXCLUSIVITY PERIOD
10          TO CONFIRM PLANS OF REORGANIZATION
               TO DECEMBER 31, 2006, NO. 1357
11                              AND
     OBJECTION TO CLAIM 26 OF PROSPECT HIGH INCOME FUND, ET AL.,
12          IN THE AMOUNT OF 20,000,000, NO. 1345
                                AND
13                   ORDER SHORTENING TIME
           RE: MOTION FOR ORDER SCHEDULING AN AUCTION
14             FOR THE SALE OF CERTAIN ASSETS,
           APPOINTING SPCP GROUP, LLC, AS LEAD BIDDER,
15     AND APPROVING BID PROCEDURES AND PROTECTIONS, NO. 1381
                                AND
16      (06-01179) MOTION FOR PRELIMINARY INJUNCTION, NO. 20
                                AND
17                   ORDER SHORTENING TIME
           RE: MOTION FOR ORDER APPROVING RETENTION PLAN
18          OF DEBTOR'S REMAINING EMPLOYEES, NO. 1459
                                AND
19          (06-01167) MOTION FOR SUMMARY JUDGMENT
           AND FOR ORDER DIRECTING RELEASE OF FUNDS
20          WITH CERTIFICATE OF SERVICE, NO. 125
                                AND
21                   MOTION FOR SUMMARY JUDGMENT
           AND FOR ORDER DIRECTING RELEASE OF FUNDS
22          WITH CERTIFICATE OF SERVICE, NO. 128
                                AND
23                   FIRST INTERIM APPLICATION
           OF THE OFFICIAL COMMITTEE OF HOLDERS
24              OF EXECUTORY CONTRACT RIGHTS
           THROUGH USA COMMERCIAL MORTGAGE COMPANY
25     FOR REIMBURSEMENT OF EXPENSES OF COMMITTEE MEMBERS, NO. 1370
```

3

1                          VOLUME 2
         BEFORE THE HONORABLE LINDA B. RIEGLE
2             UNITED STATES BANKRUPTCY JUDGE

3              Thursday, October 19, 2006

4                       9:00 a.m.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Court Recorder:          Cathy Shim

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

```
1    APPEARANCES:

2    For USA Commercial        DAVID W. HUSTON, ESQ.
     Mortgage Company:         601 South Seventh Street
3                              Second Floor
                               Las Vegas, Nevada 89101
4
     For the Defendants,       JANET L. CHUBB, ESQ.
5    Robert Kehl and           Jones Vargas
     Ruth Kehl:                100 West Liberty
6                              Twelfth Floor
                               Reno, Nevada 89501
7
     For the First Trust       FRANK A. MEROLA, ESQ.
8    Deed Equity Committee:    Stutman, Treister & Glatt, P.C.
                               1901 Avenue of the Stars
9                              Twelfth Floor
                               Los Angeles, California 90067
10
     For John R. Mallin and    JOHN J. LAXAGUE, ESQ.
11   Marie T. Mallin,          Cane Clark, LLP
     Trustees of Mallin        3273 East Warm Springs Road
12   Family Trust,             Las Vegas, Nevada 89120
     Custodian for
13   George J. Motto IRA,
     Peter A. Bolino,
14   Fabiola A. Bolino,
     Daniel Drubin,
15   Laura Drubin, and
     Beverly J. Stiles:
16
     For Wells Fargo Bank,     JEFFREY R. HALL, ESQ.
17   N.A.:                     Shea & Carlyon, Ltd.
                               233 South Fourth Street
18                             Suite 200
                               Las Vegas, Nevada 89101
19
     For the Defendant,        STEPHEN R. HARRIS, ESQ.
20   Rocklin/Redding,          Belding, Harris & Petroni, Ltd.
     LLC:                      417 West Plumb Lane
21                             Reno, Nevada 89509

22   For James Feeney:         AMBRISH S. SIDHU, ESQ.
                               Larsen & Stephens
23                             425 South Sixth Street
                               Las Vegas, Nevada 89101
24

25
```

```
1    APPEARANCES (Cont.)

2    For the First Trust       CANDACE C. CARLYON, ESQ.
     Deed Fund Committee:      Shea & Carlyon, Ltd.
3                              233 South Fourth Street
                               Suite 200
4                              Las Vegas, Nevada 89101

5    For the Debtor and        LENARD E. SCHWARTZER, ESQ.
     Debtor in Possession:     Schwartzer & McPherson Law Firm
6                              2850 South Jones Boulevard
                               Suite 1
7                              Las Vegas, Nevada 89146

8    For Standard Property     ANDREW M. BRUMBY, ESQ.
     Development, LLC:         LEE D. MACKSON, ESQ.
9                              Shutts & Bowen, LLP
                               300 South Orange Avenue
10                             Suite 1000
                               Orlando, Florida 32801
11
     For Michael Hedlund,      SPENCER JUDD, ESQ.
12   Carol Hedlund, and        Albright, Stoddard, Warnick
     Albright, Stoddard,         & Albright
13   Warnick & Palmer:         801 South Rancho Drive
                               Suite D-4
14                             Las Vegas, Nevada 89106

15

16

17

18

19

20

21

22

23

24

25
```

6

```
1          (Court convened at 11:31:02 a.m.)

2              THE COURT:  Okay.  Now, this is on the Standard --

3              MR. SCHWARTZER:  Yes, your Honor.

4              THE COURT:  -- preliminary-injunction hearing.

5   This just relates to one matter, and that which is --

6              MR. SCHWARTZER:  Well, it relates to --

7              THE CLERK:  Which number are we on, Judge?

8              MR. SCHWARTZER:  Your Honor, it relates to one

9   entity, but there's two matters.

10             THE COURT:  Right.

11             MR. SCHWARTZER:  There is the motion for a

12  preliminary injunction --

13             THE COURT:  Which is No. 11.

14             MR. SCHWARTZER:  -- in the adversary proceeding,

15  and there is the continued hearing on the motion for relief

16  from automatic stay in the main case.

17             THE COURT:  Okay.

18             THE CLERK:  And that --

19             THE COURT:  All right.

20             THE CLERK:  That's No. 7.

21             THE COURT:  And appearance by Standard's counsel.

22             MR. BRUMBY:  Don't be confused by sitting on the

23  same side.

24             THE COURT:  I was going to say --

25             MR. BRUMBY:  I ran out of places to sit.
```

7

1                THE COURT:  Okay.

2                MR. BRUMBY:  Andy Brumby with Shutts & Bowen in

3     Orlando, your Honor.

4                THE COURT:  Okay.

5                MR. BRUMBY:  I'm here on behalf of Standard

6     Property Development.  With me is one of my partners,

7     Lee Mackson.

8                THE COURT:  Okay.  All right.  So let's go ahead

9     in the preliminary injunction first because I think that's a

10    better way to approach it.  It goes to the same issues.

11               MR. SCHWARTZER:  Your Honor, actually, I think

12    this is fairly well-briefed, and, basically, what you have

13    here is the complaint was filed by -- oh, the history is

14    that there was a loan obtained through USA Commercial

15    Mortgage as agent and loan servicer for a group of direct

16    lenders.  There's something like 114 direct lenders who were

17    involved in this.

18        And this loan was evidenced by a construction loan

19    agreement, a promissory note, and a mortgage security

20    agreement, and assignment of rents, all of which were signed

21    by Standard Property.

22        The agreement had provisions for a loan of I believe to

23    be I think it was $8,000,000 with the ability to then

24    increase the loan to $17,000,000, approximate amounts.

25        The loan agreements had specific while -- I assume

8

1    somebody from USA Mortgage and Mr. Venturella on behalf

2    Standard Property had discussions that the loan was going to

3    be used to purchase a hotel or apartment or something in

4    Florida and convert it to condominiums.

5         So the first part of the loan is for the purchase of

6    the building, and then there was an understanding that there

7    would be additional advances.

8         However, the loan documents have very specific

9    provisions with regard to a few things that make this action

10   -- that we'll discuss, yeah.

11        What happened is the loan was made before USA filed

12   this Chapter 11.  Subsequent to the time, Standard Property

13   has asked for additional draws.

14        As you know, USA Commercial Mortgage is not in a

15   position to fund additional moneys either from its own

16   resources or go to lenders, direct lenders, the individual

17   consumer lenders, and get loans because they're licensed

18   from the State of Nevada.  At this point, it is limited and

19   does not permit them to do that.

20        When the additional advances were not made, Standard

21   Property filed suit in Florida where the property is

22   alleging that there was a breach of an agreement.

23        Apparently, it's an argument that there is I would say

24   that -- and let me go through what the complaint is.  There

25   is a failure to fund which they allege is somehow a breach

1    of the loan agreement.  There's a breaching of an Implied

2    Covenant of Good Faith and Fair Dealing.

3        There's false representations by USA Commercial

4    Mortgage and false representations by USA Commercial

5    Mortgage that the loan would be funded in full or the loan

6    would be funded beyond the original amount than the first

7    draw.

8        In the complaint, in the Florida litigation that was

9    filed, the defendants are the direct lenders.  USA

10   Commercial and USA First Fund which are -- well, First Fund

11   is one of the direct lenders -- are not named because of the

12   automatic stay.

13       Companion with this preliminary injunction is the

14   motion for relief from the automatic stay to allow them to

15   be named as defendants and sued in the Florida litigation.

16       We filed the complaint to enjoin the litigation at this

17   point because we feel, the debtors feel, that it is clearly

18   closely related to the bankruptcy in that the litigation in

19   Florida raises issues that will ultimately have to be dealt

20   with in the bankruptcy because whatever claims that Standard

21   Property has against the direct lenders are solely based

22   upon the actions, statements, representations of officers

23   and employees of USA Commercial Mortgage.

24       There is no inference that any of the direct lenders

25   had any direct dealings or have any personal knowledge of

1   the transaction.  And, in fact, they probably didn't.  They

2   probably said here is the deal.

3       Now, with regard to that, we have alleged that it is

4   appropriate in this case to enjoin this because it serves a

5   purpose of the bankruptcy that's clearly enunciated in the

6   bankruptcy code.  That is the idea that the automatic stay

7   gives a debtor a breathing spell from its creditors, so he

8   could reorganize.

9       And in this case, we clearly have a debtor who is in a

10   fairly early stage where it's only six months into this case

11   and is I think the Court could see running like hell to try

12   and get reorganized as quickly as possible and should not be

13   sent off into Florida litigation, and --

14          THE COURT:  And as a part of that -- I don't have

15   the complaint handy.  As a part of that, do you intend to

16   have this issue determined --

17          MR. SCHWARTZER:  Well, you know --

18          THE COURT:  -- either by --

19          MR. SCHWARTZER:  -- I --

20          THE COURT:  -- removing that action here or

21   transferring venue here or fighting over --

22          MR. SCHWARTZER:  The --

23          THE COURT:  -- amending your complaint to include

24   those issues here?

25          MR. SCHWARTZER:  That's interesting, your Honor.

1   The answer is yes, and I think opposing counsels think that

2   you have mind-reading capacity because just earlier I was

3   mentioning to him the fact that I was going to file a motion

4   to amend to add a cause of action for declaratory relief

5   because we do believe the best place to have this issue

6   determined is in this court because this Court has

7   jurisdiction over the debtors, over the direct lenders,

8   and -- now, of course, Standard Property is here -- over

9   Standard Properties, so yes.

10          The answer is that would be our intention, your Honor,

11   because we recognize the fact that it made more sense to

12   have it determined here, too.

13          We basically want to point out that our feeling is that

14   we have shown that there would be irreparable harm.  There

15   is the declaration of the chief restructuring officer.

16          And we think the harm that's caused by the continuation

17   of this litigation would be the conflict, direct conflict,

18   it creates between USA Commercial Mortgage and the direct

19   lenders because there's an issue about -- well, obviously,

20   anything, any damages, awarded against the direct lenders

21   really results in them having a claim against USA Commercial

22   Mortgage because whatever was done was done by officers of

23   USA Commercial Mortgage.

24          Number two, it creates a problem because USA Commercial

25   Mortgage now has to elect between either saying it's your

1    problem direct lenders, you defend yourself in Florida, or

2    USA Commercial employing Florida counsel which it probably

3    can do under the servicing agreements which provide that it

4    has the right and, possibly, the obligation to appear for

5    the direct lenders in such litigation.

6        And we also have the burden.  The fact that not knowing

7    the results of this will possibly cause direct lenders --

8    the 114 people who have sued may want to file proofs of

9    claim for some unknown amount in this case because they may

10   have damages in the future.

11       We want to avoid all of that by centralizing this here

12   in the bankruptcy court and avoiding those potential

13   immediate damages.

14       We also believe that it is appropriate to issue this

15   preliminary injunction because this is a reorganization

16   case, and we believe there is a likelihood of

17   reorganization.  I think the Court as I said has seen that

18   we're running as fast as we can.

19       This is not a case that was filed to stop this

20   litigation.  The litigation was actually postpetition.  This

21   reorganization case is one that requires a lot of work, but

22   we are progressing towards a potential reorganization, so

23   there is a likelihood of reorganization.

24       And then you get to a balancing test that might be

25   applied, your Honor.  A balancing here is really Standard

1    Property's ability to sue now in the Florida court to

2    determine the amount of damages versus either having it

3    delayed in Florida or having those issues determined here in

4    the bankruptcy court.

5        Even if all we did was delay them, there's no

6    irreparable harm.  They're seeking monetary damages.

7    Monetary damages is something that you delay.

8        There's an obvious solution for the delay in collecting

9    monetary damages.  It's called interest.  That's what

10    interest is for.

11        The case law clearly shows that that's what interest is

12    for, so they don't have -- Standard Property will not suffer

13    irreparable harm.

14        Finally, the public interest here, if there is a public

15    interest, it's the public interest of those 114 direct

16    lenders who otherwise will have to employ counsel in

17    Florida.

18        Now, going beyond that, going beyond just the standard

19    tests, your Honor, we also think it is appropriate for this

20    Court to look at the complaint and look at the documents

21    involved.

22        And we feel that what we're seeing is a complaint that

23    should be dismissed in Florida, and the reason it should be

24    dismissed is because it is contrary to the terms of the loan

25    documents.

1          The first and most important thing is this action was

2     filed in Florida which completely contradicts the promissory

3     note and the construction loan agreement which specifically

4     provide that any action under those documents have to be

5     brought in Clark County.

6          As the construction loan agreement says in bold type,

7     "Borrower to the fullest extent permitted by law hereby

8     knowingly, intentionally, and voluntarily with and upon the

9     advice of competent counsel" -- subsection 4 -- "to the

10    fullest extent permitted by law agrees that it will not

11    bring any action, suit, or proceeding in any form, other

12    than Clark County, Nevada."  I don't think you can make it

13    clearer than that.

14         The promissory note provides, "The venue of any action

15    bought in connection with this note shall be laid in

16    Clark County, Nevada."

17              THE COURT:  And I guess since you're not a party,

18    yet, you couldn't move to transfer.  Nobody's made an

19    attempt to move to transfer.

20              MR. SCHWARTZER:  No.  Not that I know of,

21    your Honor.  Well, it's in Florida State Court, so what --

22              THE COURT:  Oh.

23              MR. SCHWARTZER:  -- you would have to do is --

24              THE COURT:  And --

25              MR. SCHWARTZER:  -- you would have to remove it --

1          THE COURT:  Remove it.

2          MR. SCHWARTZER:  -- to a bankruptcy court in

3    Florida and file a motion to change venue to the bankruptcy

4    court here, and that's possible.

5          But, obviously, there's a cost involved with doing

6    that, and this Court certainly solved the problem by issuing

7    the preliminary injunction.

8          In addition, we think that the suit by its very terms

9    is without merit, and, obviously, we're not asking you to

10    make that determination on the issuance of a preliminary

11    injunction.

12          But we do want you to get the flavor of it by noting

13    that the construction loan agreement says that the lender

14    and USA have the exclusive right but not the obligation to

15    increase the loan amount.

16          And the mortgage security agreement also says that, you

17    know, this mortgage is governed by the terms of the loan

18    documents, so you have to look.  What is the obligation that

19    anybody has?  And it really is not an obligation.  It's just

20    a right to increase the loan.

21          The other item that makes it very rational for this

22    case to be thrown out of Florida and not go forward in

23    Florida is the fact that the note, the construction loan

24    agreement, had very specific provisions that the note shall

25    be governed and construed in accordance with the laws of the

1    state of Nevada without regard to choice-of-law provisions.

2    The construction loan agreement has the same provision.

3        Your Honor, the law in the state of Nevada allows

4    parties to make those choices in their contracts.  The case

5    law of the state of Nevada says that we basically are going

6    to allow parties to knowingly make agreements, for

7    example -- and there's a case on point -- a case on labor of

8    juries.

9        And the point when the Court talked about can you waive

10   a jury in a contract, the answer is you can if you knowingly

11   do it.

12       Now, here we have I would have to suggest a

13   sophisticated borrower -- he's a real estate developer --

14   signing a bunch of loan documents in places we have

15   bold-type provisions.

16       We clearly have someone who either had or should have

17   had an attorney review his documents, and we have these

18   provisions in there.  And on that basis, they really don't

19   have a right to bring a suit in the state of Florida,

20   anyway.

21       So when we talk about irreparable harm and damages, we

22   would argue that the Florida litigation is probably subject

23   to dismissal in Florida, anyway.

24       We're not asking this Court to make that ruling, but

25   we're asking this Court to take that in consideration that

1    in issuing a stay of that litigation there's probably not a

2    lot of harm because these cases should not have been filed

3    in Florida to begin with.

4         For those reasons, your Honor, we would ask this Court

5    to issue a preliminary injunction staying this action, and I

6    will tell you, your Honor, I will be filing a motion to

7    amend the complaint to add a cause of action for declaratory

8    relief on some of these issues, so this Court can make that

9    determination particularly on the issue of whether or not

10   there was a legal obligation to make an additional loan.

11        If that determination is made -- and it will have to be

12   done either in the form of a motion for summary judgment or,

13   possibly, a trial -- this Court can make that determination

14   so it will affect both the debtor and the direct lenders,

15   and it will give Standard Property Development the full and

16   fair opportunity to present its case.

17        We don't want to take away their right to go to trial.

18   We're just saying we'd rather have it here because all the

19   parties can be here, rather than have it done in Florida

20   where it never, never should have been brought at all,

21   anyway.

22             THE COURT:  Okay.

23             MR. SCHWARTZER:  Thank you.

24             THE COURT:  Okay.  Response.

25             UNIDENTIFIED SPEAKER:  Mr. Garman --

1          THE COURT:  Oh, my --

2          UNIDENTIFIED SPEAKER:  -- apparently wanted to be

3    heard there.

4          MR. GARMAN:  Your Honor, I'd like to follow up,

5    briefly, on my August 7th pleading.  Your Honor, I stand

6    before you making a couple of comments from 40,000 feet.

7      I clearly don't represent the interests of any

8    individual direct lender, but it was the Direct Lenders

9    Committee who made the demand upon the debtor to seek to

10   enjoin this action because there is a great deal of

11   confusion out there on the direct lenders' side, and I see a

12   nightmare coming that I'd like to propose a solution to.

13     Standard Property is seeking stay relief to assert what

14   I believe should be a claim in this bankruptcy in a claims

15   proceeding brought against the debtor.

16     The flip side of that as it relates to the injunction

17   is that these direct lenders are going to be asserting if

18   this case goes forward breach of contract, indemnity,

19   contribution claims.

20     And I'm sure if a litigator got up to this podium there

21   would be about a dozen more, including I'm sure RICO or

22   something to that effect.

23     That directly impacts the claims proceeding that you

24   have before you and an impending deadline that we have

25   coming up in this case.

1    I'm very concerned that if we get delayed in these

2    actions in Florida it's going to impact the administration

3    of this case, and I think that the authority that's been put

4    before you is correct.

5    And I think the appropriate thing that should happen

6    under the circumstances are that there are claims that have

7    been asserted against direct lenders.  There are claims that

8    have been asserted against the debtors.

9    Certainly, the plaintiff can't be denied their right to

10    proceed to adjudication of those claims, but I think that

11    this Court should enjoin the Florida action, ask that the

12    plaintiff commence a new action in this bankruptcy case, a

13    new adversary proceeding here, reserve the direct lenders,

14    serve the debtors.  We can treat it as a claims proceeding

15    to the extent necessary.

16    And I think we'll avoid a great deal of confusion and

17    heartache on the direct-lender side as to whether or not my

18    committee is representing their interests, whether or not

19    they need to get their own independent counsel.

20    And it also at the same time will help us resolve the

21    contingent claims that each of the 114 direct lenders may

22    have against the estate in the plan process and what I

23    assume will be a much more expedited process.

24    THE COURT:  Okay.  All right.  Opposition.

25    MR. BRUMBY:  May it please the Court, first, let

1    me say, Judge, Gennemann sends her regards.  As I said

2    earlier, my name is Andy Brumby.  I'm with an Orlando law

3    firm called Shutts & Bowen.  We represent Standard Property

4    Development.

5        And if the Court will indulge me, I'll spend a few

6    minutes telling the Court what Standard is and what the

7    project is.

8        The project is a 162-unit hotel, former hotel, located

9    sort of diagonally across from one of the entrances to the

10   Disney property in Lake Buena Vista.

11       The property was acquired by Standard for the purpose

12   of converting it to a condominium.  That is a purpose that

13   at least for today's purposes that anyone disputes.

14       When Mr. Schwartzer was reciting what he contended to

15   be the facts, he indicated that there were various loan

16   documents signed at the time the loan was made, including

17   reciting the provision, a couple of provisions, in the loan,

18   construction loan agreement, about which much is made having

19   to do with a right but not an obligation to further fund and

20   the forum-selection clauses.

21       I'll also note for the Court that if you look at

22   Exhibit I believe it's 6 to Mr. Venturella's affidavit you

23   will see that one of the direct lenders has, in fact, filed

24   a motion to dismiss in the Florida litigation and attached

25   to that is a copy of what at least that direct lender

1    indicates is the only document he ever received in

2    connection with the solicitation for this loan, and that

3    solicitation only provided for a $17,000,000 investment.  It

4    never said anything about any lower amount.

5        Second, if you look at the promissory note, the

6    promissory note on its face is very clear.  It says that the

7    direct lenders -- and it identifies them by name -- are

8    going to fund $17,000,000.

9        And it shall be disbursed in accordance with Exhibit B

10   to the construction loan agreement which sets out how much

11   is going to be disbursed for what purpose.

12       The point is that there is a conflict between the

13   documents if you want to look at it that way depending upon

14   how you construe the sequence of events that occurred

15   thereafter.

16       The documents are dated February 27th.  On March 15th,

17   a closing actually occurred where money was disbursed.  And

18   on that same day not only was the so-called initial amount

19   disbursed, but a second amount of the first construction

20   funding was also done the same day.

21       I mean, you get to the provision in paragraph 3.2, and

22   it would be subject to several interpretations, 3.2 of the

23   construction loan agreement.

24       Is it read out altogether because it's inconsistent

25   with the remainder of the documents?  Do you read it to

1    provide that once you begin construction funding you're

2    obligated to the balance of the funding or any one of a

3    number of other constructions?

4        I can see that there is a dispute about how that is

5    going to be read, but I think that's a matter of state law

6    that's appropriately determined in the state forum.

7        Let's turn, then, to where we are today in the

8    injunction and the basis for the requested injunction.  It

9    is not clear to me what the movants contend to be the

10   appropriate standard.

11       I understand that Section 105 provides that this Court

12   may enter any order necessary to further the purposes of the

13   bankruptcy code.

14       But I don't believe that's the purpose even in

15   Crown Vantage, certainly, not in a case where there has not

16   been an order entered that's being sought to be supplemented

17   with an injunction that suggests that that is the sole

18   governing standard for the issuance of an injunction.

19       I think Judge Markell or Professor Markell as you

20   referred to him earlier more accurately stated it in the

21   PTI Holdings opinion.  There are still four elements --

22           THE COURT:  Well, then he was the judge as opposed

23   to just ruminating.  Before, he was ruminating.  Now he's

24   holding.

25           MR. BRUMBY:  And there are still four standards to

1    be applied and four elements to be addressed, imminent and

2    irreparable harm to the estate or the debtor's ability to

3    organize, a reasonable likelihood of successful

4    reorganization, an appropriate balancing of competing harms,

5    and public interest.

6        Let's take them one at a time, but with one thing --

7    let's keep two things in mind first.  First, Section 105

8    injunctions release -- in any context I've ever dealt with,

9    Section 105 injunctions are designed to protect the

10   reorganization process in the bankruptcy case and are not

11   designed to protect third parties.

12       I understand that the direct lenders are very

13   sympathetic individuals in this case.  Nobody disagrees with

14   that.

15       But the fact of the matter remains that they are -- as

16   I'm sure Mr. Garman has argued on many times and many

17   occasions in the case, they are distinct from the debtor.

18       They are not the debtor, and harm whatever it may be

19   alleged to the direct lenders is not harm to the bankruptcy

20   estate.

21       Second, as I understand Ninth Circuit law, under

22   Lowenshuss and American Hardwoods, permanent injunctions

23   prohibiting pursuit of the direct lenders or claims against

24   the direct lenders is not possible.  It can only be

25   preliminary.  Given where we are in the case, I think we

1    have to keep both of those things in mind.

2          Let's turn to the four elements.  The first one,

3    irreparable harm and the effect on the debtor's ability to

4    reorganize.

5          As I understand the debtor's papers and what

6    Mr. Schwartzer argued today, the alleged harm is that USA

7    Commercial Mortgage may have to make a decision as to

8    whether or not they will defend the direct lenders in the

9    Florida litigation.

10          First, I can tell the Court there's a gentleman in the

11    courtroom who has told me he represents 60 of them, so I

12    don't know that the debtor has to represent them at all.

13          But even if they do, as I understand it, that would be

14    based on an interpretation of a contractual obligation for

15    which the debtor is being paid.

16          And I had always understood that in Chapter 11 cases

17    the postpetition performance of contractual obligations is

18    what debtors are supposed to do, so I don't know that that's

19    irreparable harm.

20          Second, the direct lenders may file claims if they have

21    to defend themselves for the amount of their cost of

22    defense.

23          Well, first, at the moment, Judge, I'm not going to

24    pretend to kid you.  Everybody that's a defendant in that

25    case is going to file a motion to dismiss or a motion to

1    transfer venue based on the forum-selection clause.

2        One of them's already been filed, and I fully expect

3    everyone to file similar motions.  At the moment, the only

4    thing they're being asked to do is to convince a judge that

5    they are, in fact, correct.

6        Second, whether or not the litigation goes forward in

7    Florida or whether or not it goes forward in Nevada, whether

8    it goes forward immediately or whether it goes forward

9    postconfirmation, I would think the direct lenders would

10   still have to make claims against the debtor contingent,

11   unliquidated, or otherwise for what they may or may not have

12   to spend to defend themselves.  The point is there's no

13   difference.  They still have to make those claims.

14       Third, there's something of a red-herring nature to

15   this.  The debtor complains that it may have to hire counsel

16   and do some other things to defend the direct lenders.

17       But what nobody mentions is the fact that they've

18   already filed a motion -- and it may have even been granted

19   by now -- to retain Florida counsel to collect from the

20   borrowers, including the law firm, Bowie & Lardner

21   (phonetic), which has an office in Orlando four blocks down

22   from my office and three blocks up from the courthouse,

23   which, presumably, has been retained, in part, to try to sue

24   Standard in Florida which gets to the final point on

25   irreparable harm.

1    There is much made about the inconvenience of being in

2  Florida.  The fact of the matter is the property's in

3  Florida, and any attempt to foreclose on the property is

4  going to have to be in Florida, so there's no real

5  inconvenience because, eventually, they're going to have to

6  be there.

7    And they haven't asked you and they haven't suggested

8  to you that they don't intend to sue Standard.  If you

9  enjoin Standard today from proceeding in Florida, they

10  haven't suggested they don't intend to sue Standard

11  tomorrow.

12    THE COURT:  Is Florida a judicial-foreclosure

13  state or a trust-deed state?

14    MR. BRUMBY:  It's judicial, ma'am.  And all of the

15  claims that are affirmatively sought at the moment, they'll

16  all be defenses in a foreclosure case or versions of a

17  defense.

18    The point being they're coming to Florida.  They just

19  want to litigate part of it here which raises the question

20  of duplicity of suits.

21    The point is there has been no showing of harm to the

22  estate separate and apart from what may or may not exist for

23  the direct lenders.

24    And as a practical matter between now and the end of

25  the year when at least servicing rights may or may not

1   propose to be sold, the only thing that's going to happen is

2   a Florida state judge is going to decide whether or not to

3   dismiss the case and direct me to come to Nevada.  I would

4   contend, then, that they have failed on the first point, the

5   demonstration of irreparable harm.

6          With respect to the ability to reorganize, whether or

7   not the lawsuit occurs now or later, as your Honor pointed

8   out earlier, everyone's aware that there is claims and

9   defenses with respect to the paper by the borrowers.  It's

10  not going to affect their ability to reorganize.  The

11  potential buyers of the paper are well-aware of it.

12         And whether or not they have to participate and

13  litigate in Florida or participate in litigation here, it's

14  not going to impact planned negotiations.  It's not going to

15  impact what happens.  They've already done it.

16         THE COURT:  You're just seeking -- you're not

17  addressing -- you're seeking monetary damages against the

18  direct lenders, correct?

19         MR. BRUMBY:  Yes, ma'am.

20         THE COURT:  And there's no way you can argue

21  specific performance.

22         MR. BRUMBY:  I could, but I couldn't get back the

23  $8,000,000 as much as they -- oh, I can't argue specific

24  performance, and I can't rescind because I can't get back

25  the $8,000,000.

1        It's a monetary-damage claim.  I agree with that, but

2    it's against the direct lenders because they're the

3    contracting parties.

4        The second point with respect to the ability to

5    reorganize is this is a liquidation case, not a

6    reorganization case.

7        As I understand the plan -- and I can't say that I've

8    studied it even, perhaps, as diligently as the Court did,

9    but I read it to be a liquidation plan, and I don't think

10    reorganization is the same thing as liquidation.

11        And I cite a couple of cases in our paper that go off

12    on that point by Judge Paskay (phonetic), so I think they

13    have failed on the first prong of the test.

14        The second prong of the test, a reasonable likelihood

15    of successful reorganization, you come back first to the

16    point that this is a liquidation case, not a reorganization

17    case, but that looks a lot like the same thing as

18    irreparable harm.

19        I will agree that they are on track to confirm or

20    proceeding towards confirmation of a plan whether it's a

21    liquidation or a reorganization.  We could debate, but they

22    are on track to a confirmation of something.  I agree with

23    that.

24        The real issue here is harm to whom and harm to

25    Standard and the balancing of those harms.  Standard has a

1    project that is now closed.  The building is gutted, can't

2    get financing elsewhere.

3        The damages increase daily in a declining real estate

4    market with 144 defendants spread all over the country that

5    to this moment, Judge -- this lawsuit was filed July I want

6    to say 17th.  I've still got 10 or 15 more people still to

7    serve.

8        It's taken four months just to serve everyone meaning,

9    in part, Mr. Garman's suggestion that I refile here and

10   serve everybody for a reason I'll get to in a moment just,

11   practically, that doesn't really work very well.  Every day

12   that goes by, the damages increase.  The chances of

13   documents being lost increases.

14            THE COURT:  Well, but your client hasn't paid back

15   the loan, either.

16            MR. BRUMBY:  Ma'am?

17            THE COURT:  Your client hasn't paid the loan back,

18   either.

19            MR. BRUMBY:  No, ma'am.  But I presume we're going

20   to get sued pretty soon.  As you saw in one of the exhibits,

21   they sent a demand letter, and the demand letter seemed to

22   be pretty clear that they were going to sue to collect.

23        And I don't think anybody here is going to debate that

24   which, of course, sort of raises the fundamental-fairness

25   issue about all of this.

1      How is it that the direct lenders through whoever's

2  representation can sue to collect or sue to foreclose, but

3  Standard or any other borrower for that matter can't defend

4  itself and can't assert the claims it has against the direct

5  lenders?  How can that be?

6          THE COURT:  Well, nobody suggested you can't raise

7  a defense in a judicial foreclosure, right?

8          MR. BRUMBY:  What about if they sue on the note?

9  They sue on the guarantees --

10          THE COURT:  Yeah.  No --

11          MR. BRUMBY:  -- their compulsory counterclaims?

12          THE COURT:  Right.  Nobody has suggested that you

13  couldn't raise it as a compulsory counterclaim, have they?

14          MR. BRUMBY:  I presume that would be the effect

15  if, in fact, you grant a preliminary injunction prohibiting

16  Standard from as I had read the pleadings suing in Florida

17  and in any other court against the direct lenders.  I would

18  presume that would prohibit me from raising compulsory

19  counterclaims and, arguably, defenses.

20          THE COURT:  Okay.

21          MR. BRUMBY:  The harm to Standard as I said

22  increases daily.  There is a very, very severe as I just

23  pointed out fundamental-fairness question.

24          THE COURT:  Well, wait a minute.  You haven't paid

25  a dime back, so --

1          MR. BRUMBY:  We weren't --

2          THE COURT:  But the point is, I mean --

3          MR. BRUMBY:  We weren't supposed to pay a dime

4    back, yet.  We're supposed to still be getting money.

5          THE COURT:  So, I mean, I understand, but you

6    can't just claim that you're the only person that's lost.

7    Your client hasn't paid -- how much did they get,

8    $8,000,000?

9          MR. BRUMBY:  $8,000,000.

10          THE COURT:  Okay.  And they haven't paid anything

11    back.

12          MR. BRUMBY:  That is true.

13          THE COURT:  And they still own the property.

14          MR. BRUMBY:  That is true.

15          THE COURT:  Okay.

16          MR. BRUMBY:  That's not operating, and that --

17    and, well, probably, worth less than it was at the time they

18    bought it, then you get to the public interest.

19      Certainly, there is a public interest in

20    reorganization, and I don't dispute the fact the direct

21    lenders are sympathetic.  I said that earlier, but you have

22    competing victims here if you want to call it that.

23      And the reality is that USACM was the agent of the

24    direct lenders, not the agent of my client.  Standard is

25    only seeking its day in court in a forum that has

1    jurisdiction over the entire dispute.  Standard hasn't filed

2    claims in this court, yet.

3        I also would suggest that there would be a significant

4    jurisdictional issue with respect to the disputes between

5    the direct lenders and Standard in this court.

6        I don't believe that -- I think it's -- I don't see how

7    it's core, and I'm not convinced there's related-to

8    jurisdiction, and I'm struggling to find how it could

9    possibly be core.

10       Certainly, there's jury-trial questions that if we

11   haven't filed a claim or don't file a claim I'm not certain

12   that could be resolved here.

13       The point to all of that is there are multiplicity of

14   suit issues and a variety of other things in a context in

15   which the only thing that the direct lenders have to do at

16   the moment is to go convince a Florida judge they're

17   right -- that's all they have to do -- that the suit ought

18   to be brought here.

19       And the reality is between now and the end of the year

20   given calendars and otherwise that's probably all that's

21   going to happen, anyway.

22       And by the time the answers are due or the responses to

23   the complaint are due by the end of this month and the

24   20-day period for me to file a brief in response to the

25   motions to dismiss, by the time that got heard, we're

1    probably to the year-end, anyway.

2        In our perspective, we would like to move on, and we

3    would like to move on in one forum with the ability to

4    resolve all claims in the only place where all claims can

5    get resolved.

6        I want to say one thing about to the extent there is a

7    suggestion that I somehow tried to avoid this Court I filed

8    the motion to lift stay, in part, to bring the issue to you

9    because I knew that there would be a request for this sort

10   of relief.

11       And I didn't want the Court to think I had tried to

12   getting around the Court which is why I first filed the

13   motion to lift stay before the injunction was sought.  I

14   don't believe, your Honor, they have shown --

15           THE COURT:  Well, you couldn't have proceeded,

16   anyway.

17           MR. BRUMBY:  Ma'am?

18           THE COURT:  You couldn't have proceeded.  You got

19   one of the First Trust Deed Funds as one of the direct

20   lenders.

21           MR. BRUMBY:  Well, I didn't name them.

22           THE COURT:  And, I know, but don't you have little

23   indispensable-party problems?

24           MR. BRUMBY:  I think under indispensable-party law

25   to the extent I cannot name them I think that excuses the

1    Rule 19 issue.  I think that's how you get around it.

2         And there is no Court that -- without me filing a claim

3    here, again, your Honor, I'm not certain that the Court has

4    jurisdiction over the direct-lender dispute, and I certainly

5    don't believe it to be core, and I know.  I understand

6    you're not to resolve that today, but I believe that's a

7    significant issue.

8         And I disagree with Mr. Schwartzer that even to the

9    extent the Court attempts to resolve the question of the

10   enforceability of the forum-selection clause or the

11   choice-of-law provision -- and I've cited in our papers

12   Florida cases dealing with the circumstances under which

13   forum-selection clauses may not be enforceable -- whether it

14   is a matter of Florida public policy, whether or not it is

15   land-improvement litigation which this is, whether or not it

16   creates a multiplicity of suits choice of law gets into

17   issues of public policy.

18        As I pointed out in the papers, there's at least two

19   public-policy issues that are ongoing here, land-improvement

20   litigation and a potentially usury question under Florida

21   law, ultimately.

22        And I wrote down before I came today a chart of what I

23   -- reading the papers and reading these papers for the

24   adversary proceeding and reading the papers in connection

25   with the motion to lift stay what the alleged harms were and

1    what my response to each one is.

2         The first harm, the direct lenders have to defend in a

3    faraway land.  There's no harm to the estate, and they have

4    lawyers, both the estate and the direct lenders, and they

5    want to be there, anyway, because they want to foreclose.

6    It's a meritless suit.

7         Having to convince someone that that's true is not

8    irreparable injury.  Standard firmly believes it's not

9    meritless, anyway.  But if the claim is that it is, having

10   to convince a judge they're right isn't irreparable harm.

11        Third, the debtor must defend.  As I said earlier,

12   maybe, maybe not, but it's based on a contractual obligation

13   that they have, anyway, if that's, in fact, what they have

14   to do.

15        Fourth, the direct lenders may make a claim.  As I said

16   earlier, they have to do that, anyway, whether we sue now or

17   later.

18        To the extent there is a concern about issue

19   preclusions, as Judge Markell indicated, your Honor can

20   control the issue-preclusion effect.

21        This is not a case of management diversion.  The

22   players are all gone.  This is not a case of inhibiting

23   reorganization.  The plan has been done.  They're already

24   negotiating the final terms.  They can't absolve the claims

25   forever.

1      The eighth damage, diversion of money and resources,

2   that isn't this case.  The direct lenders aren't going to

3   contribute into a plan.  They're not participating in the

4   plan, other than just getting paid.

5      The sad reality of this case is you have two competing

6   victims.  The direct lenders are sympathetic.  I don't

7   disagree with that.

8      But you have borrowers in mid construction who have

9   been unable to finish and have damages as a result and the

10  contractual relationships that were created by the debtor

11  and the direct lenders.

12     Put the direct lenders in the contractual relationship.

13  That's the legal relationships that others created, and

14  that's the legal relationships we have to follow.

15     And at the end of the day, harm to the direct lenders

16  however sympathetic they may be is not harm to the estate.

17  I would, therefore, urge the Court to deny the motion for a

18  preliminary injunction.

19          THE COURT:  Okay.  Thank you.

20     Reply.

21     Oh, Ms. Carlyon.

22          MS. CARLYON:  Your Honor, we're obviously

23  indirectly involved in this.  The lift-stay motion put us on

24  notice that there's a claim against First Trust Deed Fund,

25  and they want to go sue us in Florida.

1        I just hope to address, briefly, this venue issue

2   because that's something that was raised in brief, not in

3   the context of this motion, but the lift-stay motion, and I

4   have a real concern about it.

5        In the reply on the lift-stay motion, it was asserted

6   for the first time that there is this public policy that

7   makes the choice-of-law forum unenforceable under Florida

8   law, and, your Honor, I think that's just inaccurate.

9        The only public policy is a Florida statute, a specific

10  statute, Section 47.025, which provides, "Any venue

11  provision, any contract for improvement to real property,

12  which requires legal action involving a resident contractor,

13  subcontractor, sub-subcontractor, or materialman to be

14  brought outside this state is void as a matter of public

15  policy."  That is the limit of the Florida public policy at

16  issue.

17       The case cited by Standard on this issue is the

18  Internal case, and then that case cited the two original

19  cases under Florida law.

20       The first is Producer Supply, Inc., versus Harts

21  (phonetic), 6 Southern .2d 375, Florida Supreme Court, 1942.

22  In that case, the Court specifically noted that -- and I

23  quote -- "It is settled law in this state that the parties

24  to an agreement may provide, therein, where suit may be

25  brought to enforce it."

1      Internal Marketing also cited to Deeb, Inc., v. Board

2  of Public Instruction of Columbia County (phonetic),

3  196 Southern .2d 22, Florida Appeals, 1967.

4      And there the Court stated, "That while Florida law

5  provides by statute for the appropriate venue of certain

6  action, quote 'this privilege of venue may be waived'" --

7  oh, and in that case, it was the appropriate venue for

8  certain corporate actions.

9      And it says, "This privilege of venue may be waived by

10  the corporation."  In that case, the contract provided the

11  place to bring the action.

12      And the Court stated, quote, "It is settled law in this

13  state that the parties to an agreement may provide, therein,

14  where suit may be brought to enforce it if such should

15  become necessary."  These cases are clearly distinguishable.

16      In addition, the Kerr Construction case involved

17  specifically a construction contract with the City of

18  Orlando, and the final case noted was the W.G. Mills case.

19      In that case, the Court on appeal said, "It appears to

20  us that the choice-of-venue provision should have been

21  enforced."  But because the record was insufficient to

22  consider the issue, they did not reverse.

23      There is no Florida law that I have been able to find

24  that would invalidate or even question this choice-of-venue

25  provision.

1    In fact, my fund is facing a potential lawsuit as are

2    all of the direct lenders not for anything that they did,

3    but for an allegation that there is a verbal loan contract

4    either in addition to or different from the terms of a

5    written contract.

6    And that the person who entered into that contract,

7    that verbal different contract than what's written down, is

8    the debtor, is USACM.  That's the only entity dealt with by

9    Standard Property.

10   And to subject my client or any of the 140-some direct

11   lenders to coming out of pocket to defend a suit in Florida

12   really adds insult to injury in this case.

13   My fund like the other direct lenders is already facing

14   huge losses on account of the conduct of USACM.  And to come

15   out of pocket to defend against a lawsuit in a place about

16   as far away as you can get from us in the Continental

17   United States despite the fact that the written contract

18   prohibits such a litigation from ever being brought there,

19   your Honor, I would ask you to grant the injunction.

20           THE COURT:  Okay.  All right.  Um-h'm.

21           MR. JUDD:  Your Honor, my name is Spencer Judd.

22   I'm with the firm of Albright, Stoddard.  We filed a joinder

23   in the motion to lift stay, and if I might address a couple

24   of issues since you're hearing both of them at the same time

25   here?

1          The plaintiff here or Standard Properties has indicated

2     that the only place where all claims can be heard is in a

3     Florida court.  I disagree with that, and --

4               THE COURT:  You mean --

5               MR. JUDD:  And --

6               THE COURT:  -- you filed a joinder in the

7     opposition, correct?

8               MR. JUDD:  Right.  That --

9               THE COURT:  Okay.

10              MR. JUDD:  USA Capital is an indispensable party

11    in this whole litigation.  And without them, you know,

12    there's a lot of claims that can't be made and can't be

13    litigated.

14         This court here would be the proper forum to hear all

15    of the items on the litigation as to the loan.  I think

16    Standard was right.

17         Anything having to do with foreclosure or the property

18    itself, the in rem arguments would have to be heard in

19    Florida, but that's a whole different case than what we're

20    talking about right here.

21         If it goes to foreclosure and if that does happen, that

22    will need to happen in Florida, but that's not what we're

23    talking about today.

24         The argument that they're putting forth has to do with

25    the loan, the advance of additional funds.  They talked

1    about the fact that there are two different loan documents.

2    There's a master note, and there's a construction contract.

3        And I would proffer to the Court that's analogous to

4    what happens every day in the real estate lending arena when

5    you have a home-equity loan.

6        With a home-equity loan, there's a master note.  And

7    every time that you go, and you draw more money down on

8    that, you add to the loan balance, but the lender does not

9    have an absolute obligation to give you additional money if

10   certain things are not met.

11       And that would be what we would argue in this court and

12   in Florida that has happened with the notes that were signed

13   by Standard Property when they took out the initial draw and

14   when they agreed to the note.

15       The language indicates that there is a forum-selection

16   clause.  That they've waived it.  Standard was represented

17   or had the opportunity to be represented by counsel prior to

18   entering into any loan agreements.  Whether or not they were

19   represented, they had that opportunity.

20       If they waived that opportunity and signed those loan

21   agreements, I think that they have waived any opportunity at

22   this point now to cite that forum-selection clause and say,

23   hey, we want to do it in Florida because of a law that may

24   or may not be applicable.

25       We would just ask the Court -- number one, we joined in

1  the motion to lift the stay because we believe that USA

2  Capital Mortgage is an indispensable party.

3      But we also agree with the debtor that an injunction is

4  proper, and anything that is heard on this matter should be

5  heard in this court.

6      Thank you.

7          THE COURT:  Okay.

8          THE CLERK:  Sir, could you state your name again,

9  please?

10          MR. JUDD:  Spencer Judd --

11          THE CLERK:  Okay.  J-u-d-d?

12          MR. JUDD:  -- J-u-d-d --

13          THE CLERK:  Thank you.

14          MR. JUDD:  -- Albright, Stoddard, Warnick &

15  Albright.

16          THE CLERK:  Thank you.

17          MS. CHUBB:  Your Honor, Janet Chubb.  We represent

18  approximately 15 direct lenders who have been sued.  I can

19  put them on the record if you like.

20          THE COURT:  That's fine.

21      Thanks.

22          MS. CHUBB:  And I would just say that we want to

23  join in the other direct-lenders' positions.

24      Thank you.

25          THE COURT:  Um-h'm.  Okay.  Any reply,

1   Mr. Schwartzer?

2           MR. SCHWARTZER:  No, your Honor.  I think you've

3   heard it all.  I'd be repeating it.

4           THE COURT:  Okay.  All right.  I'm going to grant

5   the preliminary injunction and deny the motion for summary

6   judgment.

7       And I apologize to the extent that I didn't get you to

8   actually argue the lift stay per se, but it's the flip side

9   of each other.

10      So in this case, I think the debtor -- there will be

11  irreparable injury because the direct lenders -- first, it's

12  questionable to me, even though they're all identified as

13  direct lenders, all identified as lenders of the notes of

14  deed of trust, is what obligation they even have to fund if

15  there's a second allowance of funds.

16      In other words, the agreements talk about they'll be

17  asked if they want to join in, and they can, so is there

18  even an obligation for them to even fund?  Is there even a

19  duty?

20      But, more importantly, the problem here is that if by

21  suing -- excuse me.  The irreparable harm is that all of the

22  direct lenders need to bring in U.S. Commercial Mortgage,

23  and they would because all the acts that were done were done

24  by U.S. Commercial Mortgage.

25      So the first thing that would happen is if a suit

1    wasn't enjoined is then the direct lenders would file a

2    motion to lift stay to bring in U.S. Commercial Mortgage and

3    we'd back to where we started from.

4         It makes more sense to first determine whether or not

5    there was a duty to lend which could be defended by USA

6    Commercial Mortgage and may, indeed, be their duty to

7    defend, and then if it turns out that there was an

8    obligation, then, arguably, the direct lenders could be

9    sued.

10        I also think that in balancing the harms and in

11   irreparable injury I think that the suit by Standard in

12   balancing the likelihood of success suffers from

13   difficulties that of venue and the parol-evidence rule.

14        So going back to the older standard where you looked at

15   weighing the likelihood of success on the merits, I think

16   it's questionable about whether or not Standard would be

17   successful on the merits of the action vis-a-vis the direct

18   lenders.

19        This will cause harm to the estate if it was not

20   enjoined because, again, the direct lenders would have to

21   defend, arguably.

22        Well, they'd have to defend.  They'd incur the cost,

23   and that would just increase the claims against the estate

24   without the estate having been made a formal party.

25        And I don't think it makes sense to bring the action in

1    Florida because that would take away from reorganization.

2    While it's true the current management knows nothing about

3    this, they would be forced to go to Florida to attend

4    depositions.  There would have to be counsel hired full

5    time, and it's unnecessary.

6        I will condition the preliminary injunction on the

7    complaint being amended to file a declaratory-relief action

8    within 30 days because it's correct.

9        This issue will have to be determined at some point,

10   and this would not deny -- balancing of harm, this approach

11   will not deny Standard their rights to defend.

12       If they think it's not a core, they can ask for the

13   reference to withdraw, and we can litigate that issue, but

14   there's no reason why it couldn't have been -- clearly, it

15   relates to property of the estate.

16       So I'm going to deny the preliminary injunction, no

17   bond to be posted, and the only condition being that the

18   declaratory relief be filed in 30 days.

19            MR. BRUMBY:  May I (indiscernible)?

20            THE COURT:  Yeah.  Sure.

21            MR. BRUMBY:  Does the preliminary injunction

22   include the point I raised earlier with respect to defenses

23   and counterclaims?  In the event whether it's --

24            THE COURT:  I would allow you to -- the injunction

25   will not prohibit you from if sued on the judgment to raise

1    the defenses to file an answer raising the defenses.

2             MR. BRUMBY:  Can I raise by the counterclaim?

3             THE COURT:  And file a counterclaim, but no

4    farther without a lift stay on those issues, but you could

5    raise the -- if sued, you could raise the defenses in the

6    counterclaim.  I don't see how you could counterclaim

7    against the direct lenders, though.

8             MR. BRUMBY:  It depends as a matter of Florida law

9    who's the proper party to bring the foreclosure action, and

10   I'm not going to -- the debtors and USACM and the direct

11   lenders have to make their own judgment on that one.

12            THE COURT:  Okay.

13            MR. BRUMBY:  But if, for example, the direct

14   lenders or USACM, either one, whoever brings it, I want

15   to --

16            THE COURT:  Sure.  So I --

17            MR. BRUMBY:  -- be sure I --

18            THE COURT:  -- would --

19            MR. BRUMBY:  -- can file a counterclaim.

20            THE COURT:  So I'll clarify it that an injunction

21   will not preclude you from if sued on the note from filing

22   an appropriate answer and appropriate counterclaim, but not

23   serving the answer and counterclaim on all the direct

24   lenders.

25        Can you do that in Florida?  That would toll it,

1    wouldn't it?  You serve it on U.S. Capital on behalf of all

2    the direct lenders.

3        I don't want -- my concern is all the direct lenders

4    receive these things.  And if the action's going to be

5    enjoined, that they not know how to proceed.  I think with

6    counsel you could probably work out the appropriate --

7            MR. BRUMBY:  I think we can --

8            THE COURT:  -- parameters.

9            MR. BRUMBY:  -- probably work out the parameters

10   of that.

11           THE COURT:  Right.

12           MR. BRUMBY:  I just want to --

13           THE COURT:  Because I --

14           MR. BRUMBY:  -- make sure I can --

15           THE COURT:  -- understand --

16           MR. BRUMBY:  I want to make sure I can defend

17   myself --

18           THE COURT:  Exactly.

19           MR. BRUMBY:  -- and raise my claims.

20           THE COURT:  Exactly.

21           MR. BRUMBY:  Okay.

22           THE COURT:  And I was going to indicate, too,

23   that, you know, this whole lawsuit is the best defense is a

24   good offense, and that's what I see this lawsuit to be.

25       So Judge Glover is going to be here in December.  This

1    is a kind of case that would a settlement conference be

2    useful?

3       I mean, what you need in this case is figuring out how

4    to get that property refinanced and how to do all that and

5    get all these claims resolved.  Do you want to set some time

6    for him?

7          MR. SCHWARTZER:  When would that be, in December?

8          THE COURT:  Um-h'm.  December what?

9          THE CLERK:  Let me find (indiscernible), Judge.

10         THE COURT:  Now, he would require counsel with

11    settlement authority -- excuse me -- the party with

12    settlement authority to be here.

13         MR. SCHWARTZER:  Well, the interesting thing on my

14    side, your Honor, is I could have Ms. Allison here.  But,

15    obviously, if the settlement involves affecting the rights

16    of 114 direct lenders, they're not going to be in the

17    settlement conference, so the answer is I think a settlement

18    conference would be appropriate.  One of the things the --

19         THE COURT:  Well, I'm thinking --

20         MR. SCHWARTZER:  -- debtor will be looking for is

21    finding a way to solve their problem --

22         THE COURT:  Right.

23         MR. SCHWARTZER:  -- because that's the way that --

24         THE COURT:  That solves your problem.

25         MR. SCHWARTZER:  Because it solves our problem.

1          THE COURT:  Exactly.

2          MR. SCHWARTZER:  So --

3          THE COURT:  Well, certainly, maybe the way to do

4    it is to invite to the settlement conference because under

5    the documents you've got the right to settle payments of the

6    loan.

7       But, certainly, the people that have counsel, already,

8    they'd be invited, and they could choose -- the direct

9    lenders could choose whether or not they wish their

10   representative client to be there.

11         MR. SCHWARTZER:  When in December, Judge?

12         THE COURT:  When will it be, Eileen?

13         THE CLERK:  December the 13th which is a Wednesday

14   at 9:30.

15         THE COURT:  We'll set that aside.  Let us know by

16   the 27th of October if that's acceptable.  If it's not,

17   we'll take it off.  If it is, we'll give you that time and

18   date.

19         MR. SCHWARTZER:  Which judge was that, your Honor?

20         THE COURT:  Glover.

21         MR. SCHWARTZER:  Judge Glover.

22         MS. CARLYON:  Just so the Court is aware, the

23   debtor actually does not have the ability to settle the

24   payment issues under Nevada law as well as the

25   loan-servicing agreement without sending the notice --

```
1              THE COURT:  Yes.
2              MS. CARLYON:  -- to the individual lenders, but I
3    think a settlement conference is appropriate.  It's the same
4    as if you settle with a government entity.  It has to be
5    ratified.
6              THE COURT:  Right.  Exactly.  Exactly.  Exactly.
7    In other words, you would have to -- in a sense, it's --
8    well, in a way, it's like any compromise because in a
9    bankruptcy context we know the trustee can't compromise it
10   without getting Court approval which requires notice and a
11   hearing.  This is just kind of like one --
12             MS. CARLYON:  One more constituency.
13             THE COURT:  -- slight step from there, yeah, so
14   all right.
15        Thank you.
16             MR. SCHWARTZER:  Thank you.
17             THE COURT:  All right.  Let's take a five-minute
18   recess, and then we'll do the Highland matter.  Anybody
19   who's not involved in the Highland matter can certainly
20   leave.
21             MS. CARLYON:  Thank you, your Honor.
22             THE CLERK:  All rise.
23        (Recess at 12:28:16 p.m.)
24        (Thereupon, the portion requested to be transcribed
25        was concluded.)
```

1        I certify that the foregoing is a correct transcript

2   from the electronic sound recording of the proceedings in

3   the above-entitled matter.

4

5

6   /s/ Lisa L. Cline                           11/06/06

7   _____            _____
    Lisa L. Cline, Transcriptionist               Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25