Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

   and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

E-FILED on November 15, 2006

Attorneys for Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**MOTION FOR APPROVAL OF PROCEDURES REGARDING ASSIGNMENTS OF DIRECT LENDERS' INTERESTS IN LOANS (AFFECTS USA COMMERCIAL MORTGAGE)**<br><br>Date: December 19, 2006<br>Time: 10:00 a.m. |
|---|---|
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

USA Commercial Mortgage Company ("USACM") hereby moves the Court for an order approving the proposed procedures set forth herein regarding USACM's and any Asset Purchaser's treatment and handling of notices of assignments of beneficial interests in deeds of trust received from third parties, requests to change account (aka legal vesting) names received from direct lenders, and similar situations involving transfers or assignments of direct lenders' interests in loans.

## STATEMENT OF FACTS

1. USACM, along with USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date"). By order entered June 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases.

2. Prior to the Petition Date, USACM was primarily in the business of originating loans secured by real estate and servicing those loans on behalf of investors. As of the Petition Date, USACM was acting as the loan servicer for approximately 115 separate loans (the "Serviced Loans") having a combined outstanding loan balance of approximately $962 million.

3. There are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" in the loan documents for one or more of the Serviced Loans. The Direct Lenders generally are listed in an "Exhibit A" to the loan agreement, promissory note, and deed of trust. In most instances a Direct Lender owns only an undivided fractional interest in a particular loan along with many other Direct Lenders. In most instances a Direct Lender is invested in more than one of the Serviced Loans, with each Direct Lender having on average an interest in approximately 4 loans.

4. USACM has asserted in these cases that in certain instances Direct Lenders on particular loans owe a reimbursement amount to USACM on account of monthly interest payments USACM made to the Direct Lenders on a regular basis even though the borrowers on the loans in question had not made corresponding payments to USACM. Such interest payments made by USACM to Direct Lenders in advance of the borrowers making the corresponding

1 payments to USACM have been referred to in these cases as "Prepaid Interest."

2   5. After the Petition Date, through USACM's new, post-petition management, USACM has continued to collect loan payments from borrowers on the Serviced Loans on behalf of the Direct Lenders. By orders entered July 6, 2006 (docket no. 836), August 24, 2006 (docket no. 1184) and October 2, 2006 (docket no. 1424) (the "Holdbacks and Distributions Orders"), the Court approved, among other things, USACM's proposal to net and hold back amounts that may be owed by a Direct Lender as Prepaid Interest against amounts that USACM has collected on behalf of the Direct Lender on a different loan within that Direct Lender's portfolio. In making its rulings that resulted in the Holdbacks and Distributions Orders, the Court recognized that allowing USACM to net the "due to" and "due from" amounts in the various loans held by each Direct Lender and to hold back the "due from" amounts to the extent there are available funds to accomplish this netting was justifiable and preferable to requiring USACM to commence legal actions against the Direct Lenders at this time to collect back the Prepaid Interest.

6. Prior to the Petition Date, USACM assisted Direct Lenders who desired to sell and assign their interest in a particular Serviced Loan to other Direct Lenders who desired to invest in that loan. USACM assisted in thousands of such assignments prior to the Petition Date. The standard Loan Servicing Agreement signed by the Direct Lenders addresses the subject of assignments as follows:

> Should Lender desire to sell all or any part of its interest in the note and deed of trust, [USACM] will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to [USACM] on all such assignments for which [USACM] locates the Assignee.

Loan Servicing Agreement ¶ 5.

7. Based on information and belief, USACM's post-petition management understands that prior to the Petition Date, such assignments by Direct Lenders in or out of the Serviced Loans were handled exclusively by and through USACM and were documented by USACM, and that USACM generally prepared and recorded a new "Exhibit A" respecting the subject loan which replaced the outgoing assignors' names with those of the incoming assignees. However, many

pre-petition assignments were recorded without a then current "Exhibit A" in an effort to save on recording fees.

8. After the Petition Date, USACM has become aware of certain third-party institutional investors approaching Direct Lenders and offering to purchase their fractional interests in particular loans at significantly discounted prices. Such third-party investors have not sought or obtained approval from the Court or from USACM to make such offers to the Direct Lenders.

9. Hall Financial Group, Ltd. ("Hall") and Debt Acquisition Company of America V, LLC ("DACA") recently have notified USACM that they have purchased interests in some of the Serviced Loans from certain Direct Lenders, and have prepared their own assignment documents entitled "Assignment of Note and Lien" (Hall) or "Assignment of Beneficial Interest in Mortgage" (DACA) in connection with these assignments. It appears that Hall and DACA have recorded or intend to record these assignment documents in the real property records relating to the loans at issue. Hall and DACA have requested that USACM recognize these assignments by adjusting their books and records accordingly and have further requested that USACM make all future distributions on account of the assigned interests to them as assignees rather than to the Direct Lenders who assigned and transferred their interests. USACM understands that there may be other third-party investors who are engaged in activities similar to Hall and DACA and who may be attempting to purchase interests from Direct Lenders in particular loans. All such third-party investors shall be referred to hereinafter as the "Third-Party Investors."

10. On information and belief, USACM's new, post-petition management understands that the Third-Party Investors are interested in obtaining positions only in certain loans rather than obtaining all of the loan interests owned by particular Direct Lenders. If USACM were required to recognize a Third-Party Investor's purchase of a Direct Lender's interest in a specific loan without regard to that Direct Lender's net position in other loans, USACM would risk losing the right to net the "due to" and "due from" amounts across all of the loans of that Direct Lender.

11. USACM's post-petition management has engaged in an intensive effort to reconstruct a loan accounting system to accurately account for payments received from borrowers

and to allow it, with Court approval, to make distributions to Direct Lenders from amounts USACM as servicer collects from the borrowers on the Serviced Loans.  As noted above, the loan accounting system now permits USACM to effect the netting and holdbacks that were approved by the Court in the Holdbacks and Distributions Orders.

12. At the omnibus hearing held in these cases on October 19, 2006, the Court observed that the administrative burden to USACM of handling and processing assignments of fractional interests in and out of the Serviced Loans resulting from the activity of Third-Party Investors was significant and expensive, and invited USACM to file the present motion to propose rules and procedures for dealing with requests for such post-petition assignments.

13. Furthermore, USACM needs rules and procedures to deal with transfers or assignments by or on behalf of a Direct Lender to a related Direct Lender in cases of death, divorce, or other types of requests by a Direct Lender to move an investment in a particular loan from one vesting name to another vesting name controlled by the Direct Lender.

14. The Debtors understand that the netting process will continue with the new loan servicing provider under the Asset Purchase Agreement and the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization.  Because the netting process will continue, the Debtors request that these proposed procedures and rules remain in place after the effective date of the Plan, subject to the right of the new loan servicing provider to seek modification or relief from these proposed rules and procedures.

**Proposed Rules and Procedures**

Based on the foregoing, USACM proposes that the Court approve the following rules and procedures.

**1. Assignments to Third-Party Investors.**

1.1 USACM shall not be required to recognize any assignments of an interest in a Serviced Loan by a Direct Lender to a Third-Party Investor unless and until the Third Party Investor: (a) either (i) purchases all of the Direct Lender's interests in all of the Serviced Loans held by that Direct Lender; or (ii) agrees that, in USACM's sole and absolute discretion, any or all of the "due from" amounts on account of Prepaid Interest that are associated with any other loans held by the Direct Lender, as indicated on USACM's books and records, will be transferred along with the assignment of the particular loan interest in question to the Third-Party Investor, and will be deemed to effect a permanent offset against the balance owed to the Third-Party Investor on account of the

assigned loan interest; and (b) agrees that the investment is subject to any and all holdbacks established by Court order in these cases that relate or may relate to the loan interest at issue.

1.2     The "Effective Date" of any assignment that meets the criteria set forth in Section 1.1 above shall be the first day of the month following the date on which the Third-Party Investor provides a copy of the assignment as recorded in the real property records relating to the loan in question to USACM and pays USACM the fee set forth below in Section 1.5.

1.3     Each Third-Party Investor shall be required to execute a standard USACM Loan Servicing Agreement containing a 3 % loan servicing fee provision ("LSA").

1.4     USACM shall not be required to distribute to a Third-Party Investor any loan payments received by USACM (as servicer) during any period prior to the Effective Date (as defined above). USACM may distribute such payments to the Direct Lender as indicated on USACM's books and records prior to the Effective Date in accordance with the Holdbacks and Distributions Orders. Further, USACM shall not be required to distribute any payment to a Third-Party Investor until the executed LSA is provided to USACM.

1.5     USACM's fee for processing transfers where the Third Party Investor has prepared and recorded the Assignment shall be $100 per loan. If USACM prepares the recording documents, an additional $250 per loan will be assessed. Neither USACM nor any subsequent loan servicing provider shall be liable for any defect or error in the recording documents other than for gross negligence or intentional misconduct.

**2.     Assignments or Transfers to Related Direct Lenders.**

2.1     For purposes of these procedures, "Related Direct Lenders" shall include (a) beneficiaries to a deceased Direct Lender; (b) transfers pursuant to a divorce decree or Qualified Domestic Relations Order ("QDRO"); and (c) transfers between account numbers but within the same client ID.

2.2     USACM shall not be required to recognize any assignments or to effect any transfers of an interest in a Serviced Loan by or on behalf of a Direct Lender to another Related Direct Lender unless: (a) satisfactory written evidence is providing to USACM authorizing the assignment or transfer in question on behalf of the assigning Direct Lender; and (b) either (i) the assigning Direct Lender agrees to transfer all of his/her/its interests in all of the Serviced Loans held by that Direct Lender such that principal, interest, netting and holdbacks are the same for the new Direct Lender; or (ii) agrees that, in USACM's sole and absolute discretion, any or all of the "due from" amounts on account of Prepaid Interest that are associated with any other loans held by the Direct Lender, as indicated on USACM's books and records, will be transferred along with the assignment of the particular loan interest in question to the related Direct Lender account, and will be deemed to effect a permanent offset against the balance owed to the Direct Lender on account of the assigned loan interest; and (c) agrees that the transferred Direct Lender loan interest is subject to any and all holdbacks established by Court order which have attached or may attach to this loan interest.

2.3     Each Direct Lender requesting such transfers shall be required to execute a standard USACM Loan Servicing Agreement containing a 3% loan servicing fee provision ("LSA").

2.4     The effective date of any assignment that meets the criteria set forth in Section 1.1 above shall be the first day of the month following the date on which the criteria are met and the assignor pays USACM the fee set forth below in Section 2.5

2.5     USACM's fee for processing assignments shall be $100 per loan. This fee shall be waived for transfers for a deceased Direct Lender. An additional $250 fee per loan will be assessed for recording the assignment on a new Exhibit A. Neither USACM nor any subsequent loan servicing provider shall be liable for any defect or error in the recording documents other than for gross negligence or intentional misconduct.

## MEMORANDUM OF LAW

This Court is explicitly authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. §105(a). "Th[is] statutory directive [is] consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships" *United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed. 2d 580 (1990). "The equitable origins of the bankruptcy power suggest substantial leeway to tailor situations to meet the diverse problems facing bankruptcy courts. Section 105 gives the bankruptcy court the power to fill in the gaps and further the statutory mandates of Congress in an efficient manner." 2 *Collier on Bankruptcy* §105.01[2] (15th ed. 2006).

Central to the Bankruptcy Code's workings and to any bankruptcy estate is the ability of the Court to maintain the integrity of the estate's assets and preserve those assets for the benefit of creditors. As explained above, the Third-Party Investors' actions in attempting to acquire loan interests from Direct Lenders directly impact USACM's ability to net the "due to" and "due from" amounts across all of the loans of a specific Direct Lender. These activities may run afoul of 11 U.S.C. §362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Whether or not these activities in fact violate the automatic stay, an appropriate use of the Court's equitable powers provided under 11 U.S.C. §105(a) is to establish the procedures set forth above regarding

USACM's treatment and handling of notices of assignments of beneficial interests in deeds of trust.

### CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court approve the proposed rules and procedures set forth herein.

Respectfully submitted this 15th day of November, 2006.

/s/  Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385