Russell S. Walker, Utah Bar No. 3363
Elizabeth R. Loveridge, Utah Bar No. 6025
Reid W. Lambert, Utah Bar No. 5744
WOODBURY & KELSER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84111
Telephone: (801) 364-1100
Facsimile: (801) 359-2320
Email:  rwalker@wklawpc.com

and

Joseph J. Huggins
Nevada Bar No. 4456
HUGGINS & ASSOCIATES
8275 S. Eastern Ave., Suite 200
Las Vegas, NV  89123
Telephone: (702) 371-3921
Facsimile: (702) 940-4088
Email: joehuggins@sbcglobal.net

**UNITED STATES BANKRUPCTY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No.: BK-S-06-10725 LBR<br>Case No.: BK-S-06-10726 LBR<br>Case No.: BK-S-06-10727 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | Case No.: BK-S-06-10728 LBR<br>Case No.: BK-S-06-10729 LBR<br>Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | **Jointly Administered Under**<br><br>**Case No. BK-S-06-10725 LBR** |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF USA INVESTMENT PARTNERS, LLC AND JOSEPH D. MILANOWSKI FOR THE ENDORSEMENT OF A PROTECTIVE ORDER** |
| In re:<br><br>USA SECURITIES, LLC,<br><br>Debtor. | Hearing Date:  January 3, 2007 |
| Affects:<br>        ☐ All Debtors<br>        ☐ USA Commercial Mortgage Company<br>        ☐ USA Securities, LLC<br>        ☐ USA Capital Realty Advisors, LLC<br>        ☐ USA Capital Diversified Trust Deed Fund, LLC<br>        ☐ USA Capital First Trust Deed Fund, LLC | Hearing Time:  9:30 a.m.<br>Place:     Courtroom 1<br>            Foley Federal Building<br>            300 Las Vegas Blvd. South |

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

1

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

This Memorandum is filed in support of the motion of USA Investment Partners, L.L.C. ("USAIP") and Joseph D. Milanowski ("Milanowski") (collectively "USAIP Parties") for the Court's endorsement of the enclosed protective order governing access to certain documents ("Protective Order").

### SUMMARY OF RELIEF SOUGHT

1.      The USAIP Parties are compelled to make this motion because the Debtors[1] in this proceeding have denied the USAIP Parties access to documents that either belong to USAIP, or over which USAIP has potential privilege claims.  The USAIP Parties have endeavored in good faith to reach a resolution without seeking relief from the Court.  As detailed below, however, repeatedly the USAIP Parties have acceded to one demand of the Debtors only to be met with another.  Most recently, the Debtors even attempted to extract commercial concessions from Mr. Milanowski as a condition of their approval of the proposed Protective Order.

2.      The Debtors' refusal to agree to the Protective Order has already had serious consequences to Mr. Milanowski personally.  Debtors are aware that Mr. Milanowski was served with a document subpoena by the Securities and Exchange Commission ("SEC") in July 2006, and that many of the documents that are the subject of the Protective Order are responsive to the subpoena. The Debtors' obstructionist tactics have severely prejudiced Mr. Milanowski's standing with the SEC, as several months have passed during which he has been unable to respond to the SEC subpoena.

3.      As explained more fully below, the Protective Order simply provides a mechanism by which the USAIP Parties and the Debtors can jointly review documents for privilege, and provides for duplication of all non-privileged documents and sharing of the copies among the parties.  This mechanism will ensure that all parties will have an opportunity to make privilege assertions, and it provides for shared access to the non-privileged documents.  The Protective Order, in short, provides a

---

[1] The Debtors include privately held entities known as USA Commercial Mortgage Company d/b/a USA Capital, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC and  USA Securities, LLC (collectively, the "Debtors").  (*See* accompanying declaration of Sarah E. O'Connell ("O'Connell Decl.") attached hereto as Exhibit 1 and incorporated herein by reference, ¶ 3).

reasonable and cost-effective mechanism by which the parties can protect their rights while minimizing the need to seek the intervention of the Court to resolve privilege and control issues. Accordingly, the USAIP Parties respectfully request that the Court endorse the Protective Order.

## FACTUAL SUMMARY

**A.    Background Facts**

4.    Mr. Milanowski is a manager and a controlling member of USAIP.  USAIP is the managing member of Debtor USA Capital Realty Advisors, LLC.  That entity, in turn, manages two Debtors funds, USA Capital Diversified Trust Deed Fund, LLC and USA Capital First Trust Deed Fund, LLC.  USAIP's funds and/or personnel were involved in managing most of the real estate ventures in which these funds were invested.  Mr. Milanowski also has an ownership interest in the other two Debtors, USA Capital and USA Securities, LLC.  (O'Connell Decl. ¶ 3).

5.    Mr. Milanowski and/or USAIP are also the managers and controlling members Non-Debtor entities ("Non-Debtor Entities").  Specifically, to the extent that Mr. Milanowski is not the manager or a controlling member of the Non-Debtor entities, USAIP is the manager or a controlling member of the Non-Debtor Entities.  Mr. Milanowski is also a significant shareholder of the Debtor entities.  (O'Connell Decl. ¶ 4).

6.    The Debtors filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code on April 13, 2006.  After the Debtors filed for bankruptcy protection the bankruptcy court appointed Mesirow Financial ("Mesirow"), a financial manager, to manage and control the activities and ongoing business and financial interests of the Debtors.  (O'Connell Decl. ¶ 5).

7.    From as early as 2001 through Spring of 2006, USAIP, the Non-Debtor Entities and the Debtors were all operated and managed by a common management team at a common location at 4485 South Pecos, Las Vegas, Nevada ("the Corporate Offices").  As a result, all of the documentation relating to USAIP, the Non-Debtor Entities and the Debtors was stored, filed and held at the Corporate

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

Offices.  In addition, the email systems and accounting systems for USAIP, the Non-Debtor Entities and the Debtors were common, shared systems.  (O'Connell Decl. ¶ 6).

8.    As explained more fully below, the issue of immediate concern is 144 boxes of materials located at the Corporate Offices.  (O'Connell Decl. ¶ 7).  These include the following types of materials:

(i)  <u>USAIP Parties' Documents</u>

9.    The documents include materials that relate solely to the business of USAIP or Mr. Milanowski's personal business matters.  Among these documents are corporate documents that relate solely to USAIP and the various Non-Debtor entities.  These include Articles of Organization and Incorporation for each of the Non-Debtor Entities, due diligence records and other documents relating to investments made, identification of investments and ownership interests which the Non-Debtor Entities may hold, payments made on accounts receivable and payments received from debtors of USAIP and the Non-Debtor Entities, and contracts between USAIP and other third party investors. (O'Connell Decl. ¶ 8).

10.    While the Debtors have not disputed the interest of the USAIP Parties in these documents, they have asserted an "interest" in a subset of what they have called "hybrid documents" solely on the grounds that they may have a financial interest, such as a loan or a lease, in a particular project or entity.  (O'Connell Decl. ¶ 9).

(ii)  <u>Joint Interest Documents</u>

11.    The 144 boxes also contain materials in which the Debtors plainly have an interest, but in which the USAIP Parties also claim joint control and/or a joint attorney-client privilege.  For example, this category includes privileged and non-privileged documents relating to lawsuits for which both a Debtor entity and Mr. Milanowski personally or USAIP have been named as parties. (O'Connell Decl. ¶ 10).

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

4

**B.**    **Summary of the Protective Order**

12.    To avoid the necessity of litigating but provide access to the documents, USAIP Counsel submits the enclosed protective order for the Court's endorsement.

13.    The Protective Order contemplates an initial review of the 144 boxes wherein the Parties (defined to include the Debtors and the USAIP Parties) will designate documents as privileged, confidential, or otherwise. Following this initial review, the originals of the non-privileged documents will be placed in a repository, and the Parties will receive electronic copies of those non-privileged documents. As such, the Protective Order ensures that all of the Parties will have access to electronic copies of the non-privileged documents, while the originals will be safely stored. In addition, any documents over which any Party asserts a privilege will be segregated. (O'Connell Decl. ¶ 11).

14.    The Protective Order also provides a mechanism for notification regarding subpoenas and document requests. Upon receipt of a subpoena or other legal process seeking the production of any document designated as privileged, the receiving party must not only notify the other parties, but shall notify the requesting party of the assertion of privilege and refrain from producing such document until authorized by the party asserting privilege or a court order. Upon receipt of a subpoena or other legal process seeking the production of any document designated as confidential, the receiving party must notify the other parties, who may then move to quash the subpoena or similar request. In addition, if any of the parties intend to file or submit any of the confidential documents to a court, the party may either notify the other parties at least five business days prior to any such proposed filing, or file the confidential document(s) under seal. (O'Connell Decl. ¶ 12).

15.    In addition, as explained below, there remain additional documents and computer files at the Corporate Offices to be reviewed and segregated. The Protective Order would govern those materials. (O'Connell Decl. ¶ 13).

16.    The Protective Order incorporates virtually all the terms requested by Debtors during the months of negotiations described below. Moreover, it permits the Parties to move forward without

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

having to seek relief from the Court to resolve at this juncture the various contested issues of control and privilege.   (O'Connell Decl. ¶ 14).

**C.**     **Efforts to Resolve Document Issues**

17.     In light of the size and scope of this matter, the USAIP Parties have had to retain regulatory counsel (as well as separate bankruptcy counsel) (collectively "USAIP Counsel").  USAIP's regulatory counsel has included Fulbright & Jaworski L.L.P., and Kesler & Rust (which replaced Woodbury & Kesler, P.C. as local regulatory counsel).  Shortly after the bankruptcy filing, USAIP Counsel entered into discussions with Debtors' counsel with the understanding that while Mr. Milanowski would no longer be working for the Debtors, he continued to need access to the Corporate Offices and to certain documents relating to USAIP and the Non-Debtor entities.  (O'Connell Decl. ¶ 15).

18.     USAIP Counsel also requested that the documents relating to the USAIP Parties be segregated and removed from the Corporate Offices.  Counsel for the Debtors agreed in principle, and for some time informal arrangements were made while a formal plan was negotiated.  (O'Connell Decl. ¶ 16).

19.     During the pendency of the bankruptcy proceeding, the United States Securities and Exchange Commission ("SEC") began investigating Mr. Milanowski and USAIP.  On April 21, 2006, the SEC served a subpoena on Milanowski seeking the production of documents as well as testimony. (O'Connell Decl. ¶ 17).

20.     Unbeknownst to USAIP Counsel, the Debtors unilaterally permitted SEC attorneys to visit the Corporate Offices to review documents.  During the review, the SEC designated certain documents for copying and production.  USAIP Counsel was not made aware of this review until after the fact and therefore had no opportunity to review documents to assert any applicable privileges. (O'Connell Decl. ¶ 18).

21.     Upon learning of the SEC review, on May 22, 2006, USAIP Counsel demanded that the Debtors provide USAIP Counsel with an opportunity to review the documents that the SEC had

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

identified during the review for copying and production.  Debtors' counsel agreed to the request and subsequently forwarded four boxes of documents that the SEC had requested.  (O'Connell Decl. ¶ 19).

22.    USAIP Counsel's review of the materials identified by the SEC confirmed its fears: the materials included documents belonging to USAIP and even some relating to personal business matters of Mr. Milanowski.  The materials even included documents covered by the attorney-client privilege.  It was apparent that the Debtors had made no effort to segregate the documents belonging to the USAIP Parties, much less to ensure that its privileged documents were protected.  (O'Connell Decl. ¶ 20).

23.    To remedy this situation, and with the full knowledge of the SEC and the Debtors, the USAIP Parties removed certain privileged documents and produced non-privileged documents to the SEC.  (O'Connell Decl. ¶ 21).

**D.    The August 7-8 Document Segregation**

24.    In light of the issues surrounding the SEC on-site review, the USAIP Parties renewed their request for access to their documents.  USAIP Counsel expressed the added urgency of resolving the issue after the SEC issued an additional subpoena to USAIP on July 25, 2006 (as well as a nearly identical subpoena to Mr. Milanowski).  USAIP Counsel explained that the files at the Corporate Offices contained responsive documents that needed to be reviewed for production in response to the SEC subpoena. In response, Debtors' counsel agreed that arrangements would be made to transfer and release all of the documents and information relating to the USAIP Parties to USAIP Counsel. Counsel would retain custody of the documents.  (O'Connell Decl. ¶ 22).

25.    Pursuant to this agreement and anticipated arrangements, Milanowski, together with USAIP Counsel and counsel for the Debtors, met at the Corporate Offices on August 7, 2006, and proceeded to review and segregate documents relating to the USAIP Parties.  USAIP Counsel included two attorneys from Fulbright & Jaworski L.L.P.'s New York office.  (O'Connell Decl. ¶ 23).

26.    The review proceeded without incident on August 7.  On August 8, however, additional counsel for the Debtors who had not been present during the review on August 7,

interrupted the review and raised a series of new objections to the review process, and specifically questioned the USAIP Parties' right to access to binders containing documents relating to both Debtor and Non-Debtor entities. USAIP Counsel acceded to this new demand and agreed that the binders would be placed in the boxes designated for transmission to USAIP Counsel, who would then either copy the documents relating to the Debtors or make them available for review by Debtors' counsel. (O'Connell Decl. ¶ 24).

27.    Upon completion of the review on August 8, one-hundred forty-four (144) boxes of documents relating to the USAIP Parties were designated for transmission to Milanowski's counsel. USAIP Counsel provided a Federal Express account number and shipping information. When USAIP Counsel left the Corporate Offices on August 8, they believed that the 144 boxes of documents would be sent to them shortly. (O'Connell Decl. ¶ 25).

28.    Even after the review on August 7 and 8, the segregation process was not complete. There were additional documents in the offices of certain accountants, as well as electronic records, that remained to be reviewed and segregated. (O'Connell Decl. ¶ 26).

**E.    The August 21-22 Document Segregation and The Three Categories of Documents**

29.    Just days after Debtors' counsel agreed to ship the 144 boxes of materials to USAIP Counsel, Debtors' counsel reversed course and informed USAIP Counsel that it would not permit the removal of the boxed materials. Debtors' counsel insisted that a second review be conducted on-site to segregate the documents according to the parties to which they related. Despite the added costs that Mr. Milanowski would be forced to incur, once again, USAIP Counsel accommodated this new demand and agreed to a second on-site review. The second review took place on August 21 and 22. (O'Connell Decl. ¶ 28).

30.    USAIP Counsel from New York traveled to the Corporate Offices for the review. At the insistence of Debtors' Counsel, USAIP Counsel was permitted only to observe, but not to participate in, the second-stage review of the materials on August 21. Rather, only employees of the Debtors and Mesirow participated in the review. They segregated the 144 boxes along the lines of the

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

8

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

categories outlined above.  These included a significant amount of materials over which, as the Debtors acknowledged, only the USAIP Parties had an interest.  As a second category, the Debtors identified a large number of documents (which they called "hybrid documents") that indisputably belong to the USAIP Parties, but over which the Debtors claimed a shared interest by virtue of a Debtor entity's loan, lease or other such interest in a particular project.  The third category included those documents that Debtors identified as belonging only to the Debtor, but as to which the USAIP Parties assert joint control or a joint attorney-client privilege.  (O'Connell Decl. ¶ 28).

31.     Because the parties had conflicting claims as to the materials in the third category of documents identified by the Debtors (*i.e.,* those identified by the Debtors as belonging solely to themselves), on August 22 counsel permitted USAIP Counsel to review a significant number of these boxes in a good faith effort to narrow the number of disputed documents.  In the course of the review, USAIP Counsel identified a number of documents that it agreed belonged solely to the Debtors and consented to the removal of those documents from the boxes and their return to regular circulation.  (O'Connell Decl. ¶ 29).

**F.     Attempts to Resolve the Issues Since August 22**

32.     At the conclusion of the meetings on August 22, however, Debtors' counsel refused to consent to the removal of any documents – even those that the Debtors conceded belong solely to the USAIP Parties.  Instead, Debtors' counsel insisted that the USA IP Parties obtain a court order for the production of the materials.  (O'Connell Decl. ¶ 30).

33.     Notwithstanding the prior agreement, in order to avoid costly litigation, USAIP Counsel proposed that both the Debtors and the USAIP Parties enter into an order on consent.  Debtors' counsel indicated that they would consider such a resolution.  (O'Connell Decl. ¶ 31).

34.     On September 22, 2006, USAIP Counsel met with Debtors' counsel to discuss a proposed Stipulation and Order.  USAIP Counsel then proposed a conference call on September 27, but Debtors' counsel stated that they had been unable to meet with their client to review the document and did not believe they would have client approval prior to September 29, 2006.  In order to facilitate

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

such a call, on September 29, USAIP Counsel circulated a revised draft addressing an issue that Debtors' counsel had raised.  In response to further requests for a conference call on September 29, Debtors' counsel stated that they had been unable to review the draft with their client and proposed a conference call on October 2.  (O'Connell Decl. ¶ 32).

35.    As both sides agreed that a privilege review would need to take place, USAIP Counsel proposed that both sides undertake such a review while negotiations regarding a stipulated protective order were ongoing.  Debtors' counsel did not respond to such proposal.  (O'Connell Decl. ¶ 33).

36.    On October 5, Debtors' counsel finally advised that they were available to discuss the proposed stipulation and protective order.  In substance, the Debtors rejected the proposal by USAIP Counsel and sought fewer restrictions on the review and use of the documents.  By means of a counter-proposal, Debtors' counsel forwarded certain points that they believed should be included.  In addition, in the course of these discussions, Debtors' counsel repudiated their earlier acknowledgement that some of the documents belonged solely to the USAIP Parties and now claimed that *all* the documents belonged to the Debtors.  (O'Connell Decl. ¶ 34).

37.    On October 10, USAIP Counsel circulated a revised draft representing a good faith effort to address the concerns outlined by the Debtors.  In response, USAIP Counsel requested that the Debtors' counsel advise whether a privilege review could commence on October 16.  (O'Connell Decl. ¶ 35).

38.    Rather than respond regarding the draft Stipulation and Order or the proposed privilege review, on October 13, counsel for the Debtors advised that they were not willing to enter into a stipulated protective order relating to the documents unless certain issues relating to the disposition of certain non-estate property were resolved to the Debtors' satisfaction.  In essence, the Debtors are holding the documents hostage, and have attempted to condition access to the documents on commercial concessions.  (O'Connell Decl. ¶ 36).

39.    On October 18, USAIP Counsel met with Debtors' counsel in Las Vegas in an attempt to resolve the commercial concerns raised by Debtors' counsel on October 13.  At the conclusion of

the meeting, the Debtors agreed that the commercial issues had been resolved, and therefore, they would respond to the USAIP Parties' most recent draft by October 15.  Not surprisingly, no response has been received to date.  (O'Connell Decl. ¶ 37).

**G.    Impact on Mr. Milanowski and USAIP**

40.    In recent weeks, the SEC has inquired as to the status of the USAIP Parties' compliance with the subpoenas.  USAIP Counsel has had to repeatedly advise the SEC that its access to the 144 boxes is being negotiated.  (O'Connell Decl. ¶ 38).

41.    In addition, on October 23, 2006, Mr. Milanowski received an additional subpoena requesting the production of documents by November 22, 2006.  Most of the documents in the 144 boxes, as initially segregated, appear to be responsive to this subpoena (O'Connell Decl. ¶ 39).

42.    USAIP and Mr. Milanowski are under a present obligation to produce documents pursuant to subpoenas issued by the SEC and others.  However, because of the Debtors' refusal to release the Documents to the possession of the USAIP Parties or further negotiate regarding a stipulation and protective order, they are prevented from responding to the outstanding subpoena and thereby may be subject to penalties or other actions by the issuing authorities.  (O'Connell Decl. ¶ 40).

43.    Furthermore, some of the Debtors' investments and loans were made with USAIP and thereafter, USAIP invested such monies with the Non-Debtor Entities.  In order to properly manage the businesses, their projects and investments, and maximize the potential return from the investments made, which return will ultimately benefits the creditors of the Debtors' estate, the USAIP Parties must have possession and control of their Documents.  (O'Connell Decl. ¶ 41).

## ARGUMENT

44.    Although there are competing claims of control and privilege with respect to the 144 boxes of materials at the Corporate Offices, the Court need not resolve those issues at this juncture. Instead the Court should, pursuant to Bankruptcy Rules 7206 and 9018 and Federal Rule of Evidence 501, endorse the Protective Order.  The Protective Order provides a reasonable and cost-effective

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

mechanism by which both the USAIP Parties and the Debtors can protect their claims of control and privilege which minimizing the need to seek the intervention of the Court to resolve these claims.

45.     While the Court need not resolve the control issues at this stage, it is evident that the USAIP Parties have established a *prima facie* showing of control with respect to the documents sufficient to warrant endorsement of the Protective Order.   A large percentage of the documents that reside at the Corporate Offices are subject to the control of the USAIP Parties.   Indeed, even the Debtors initially acknowledged that some of the documents belong to the USAIP Parties and they continue to characterize the vast majority as "hybrid" documents as to which there is a joint interest. The documents at issue relate to the business affairs of the USAIP Parties.   It is well-established that a party need not have actual possession of documents to be deemed to control them.   *See Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991).   A party need only have a legal right or a practical ability to obtain documents to be deemed to 'control' such documents.   *See Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998); *White v. Cinemark USA, Inc.*, No. 04-CV-0397, 2005 WL 3881658 (E.D. Cal. Mar. 28, 2005) (holding that if a party has "the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,'" even if the documents are in the possession of another party).

46.     Similarly, a substantial number of the documents that reside at the Corporate Offices are subject to claims of attorney-client privilege or attorney work product protection by the USAIP Parties.   The USAIP Parties can also assert any privilege held jointly by the USAIP Parties and the Debtors.   Because of the close relationship between the USAIP Parties and the Debtors, in many instances, in-house or outside counsel was retained to represent multiple entities, including the USAIP Parties, in connection with the real estate transactions and other matters in which the entities engaged. Because the USAIP Parties and the Debtors were co-clients, the Debtors "do[] not have authority to waive the privilege with respect to [the USAIP Parties'] communications to their common lawyer." RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 75 (2000).   Therefore, the USAIP Parties

may independently assert their privilege, even if the Debtors waive privilege on behalf of other entities.

47.    The Protective Order provides a mechanism by which all parties may make privilege assertions, and have shared access to the non-privileged documents.  It does this while avoiding the need to litigate control and privilege issues at this juncture.  The Protective Order, in short, provides a reasonable and cost-effective mechanism by which the parties can protect their rights while minimizing the need to seek the intervention of the Court to resolve privilege and control issues.

### CONCLUSION

48.    For the foregoing reasons, the USAIP Parties respectfully request that the Court endorse the Protective Order.

DATED this 21st day of November, 2006.

**WOODBURY & KELSER, P.C.**


_____/s/ Russell S. Walker_____
Russell S. Walker, Utah Bar No. 3363
Elizabeth R. Loveridge, Utah Bar No. 6025
Reid W. Lambert, Utah Bar No. 5744
WOODBURY & KELSER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84111

and

Joseph J. Huggins
Nevada Bar No. 4456
HUGGINS & ASSOCIATES
8275 S. Eastern Ave., Suite 200
Las Vegas, NV  89123

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

# EXHIBIT "1"

Kenneth M. Breen
David L. Barrack
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
kbreen@fulbright.com

Russell S. Walker
WOODBURY & KESLER, P.C.
265 East 100 South
Suite 300
Salt Lake City, UT 84111
Telephone: (801) 364-1100
Facsimile: (801) 359-2320
rwalker@wklawpc.com

Attorneys for Joseph D. Milanowski
and USA Investment Partners, LLC

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re USA COMMERCIAL MORTGAGE COMPANY,<br><br>_____ Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re USA CAPITAL REALTY ADVISORS, LLC,<br><br>_____ Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>_____ Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>_____ Debtor. | DECLARATION OF<br>SARAH E. O'CONNELL |
| In re USA SECURITIES, LLC<br><br>_____ Debtor. | |

SARAH E. O'CONNELL, declares as follows pursuant to 28 U.S.C. § 1746:

1.    I am associated with the firm of Fulbright & Jaworski L.L.P., 666 Fifth Avenue, New York, New York, 10103, and I am a member of the Bar of the State of New York. We are regulatory counsel to USA Investment Partners, L.L.C. ("USAIP") and Mr. Joseph D. Milanowski ("Milanowski") (collectively "USAIP Parties"). I make this declaration in support of the USAIP Parties' motion for the Court's endorsement of the enclosed protective order governing access to certain documents ("Protective Order").

2.    I make this declaration based on my personal involvement in the case, as well as discussions with other attorneys involved in the case.

## A.    **Background Facts**

3.    Mr. Milanowski is a manager and a controlling member of USAIP. USAIP is the managing member of Debtor[1] USA Capital Realty Advisors, LLC. That entity, in turn, manages two Debtor funds, USA Capital Diversified Trust Deed Fund, LLC and USA Capital First Trust Deed Fund, LLC. USAIP's funds and/or personnel were involved in managing most of the real estate ventures in which these funds were invested. Mr. Milanowski also has an ownership interest in the other two Debtors, USA Capital and USA Securities, LLC.

4.    Mr. Milanowski and/or USAIP are also the managers and controlling members Non-Debtor entities ("Non-Debtor Entities"). To the extent that Mr. Milanowski is not the manager or a controlling member of the Non-Debtor Entities, USAIP is the manager or a controlling member of the Non-Debtor Entities. Mr. Milanowski is also a significant shareholder of the Debtor entities.

---

[1] The Debtors include privately held entities known as USA Commercial Mortgage Company d/b/a USA Capital, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC and USA Securities, LLC (collectively, the "Debtors").

5.    The Debtors filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code on April 13, 2006.   After the Debtors filed for bankruptcy protection the bankruptcy court appointed Mesirow Financial ("Mesirow"), a financial manager, to manage and control the activities and ongoing business and financial interests of the Debtors.

6.    From as early as 2001 through Spring of 2006, USAIP, the Non-Debtor Entities and the Debtors were all operated and managed by a common management team at a common location at 4485 South Pecos, Las Vegas, Nevada ("the Corporate Offices").   As a result, all of the documentation relating to USAIP, the Non-Debtor Entities and the Debtors was stored, filed and held at the Corporate Offices.   In addition, the email systems and accounting systems for USAIP, the Non-Debtor Entities and the Debtors were common, shared systems.

7.    As explained more fully below, the issue of immediate concern is 144 boxes of materials located at the Corporate Offices.   These include the following types of materials:

(i)  USAIP Parties' Documents

8.    The documents include materials that relate solely to the business of USAIP or Mr. Milanowski's personal business matters.   These include corporate documents that relate solely to USAIP and the various Non-Debtor Entities.   Among these documents are Articles of Organization and Incorporation for each of the Non-Debtor Entities, due diligence records and other documents relating to investments made, identification of investments and ownership interests which the Non-Debtor Entities may hold, payments made on accounts receivable and payments received from debtors of USAIP and the Non-Debtor Entities, and contracts between USAIP and other third party investors.

9.    While the Debtors have not disputed the interest of the USAIP Parties in these documents, they have asserted an "interest" in a subset of what they have called "hybrid

documents" solely on the grounds that they may have a financial interest, such as a loan or a lease, in a particular project or entity.

(ii) Joint Interest Documents

10.    The 144 boxes also contain materials in which the Debtors plainly have an interest, but in which the USAIP Parties also claim joint control and/or a joint attorney-client privilege.  For example, this category includes privileged and non-privileged documents relating to lawsuits for which both a Debtor entity and Mr. Milanowski personally or USAIP have been named as parties.

**B.    Summary of the Protective Order**

11.    The Protective Order submitted herewith contemplates an initial review of the 144 boxes wherein the Parties (defined to include the Debtors and the USAIP Parties) will designate documents as privileged, confidential, or otherwise.  Following this initial review, the originals of the non-privileged documents will be placed in a repository, and the Parties will receive electronic copies of those non-privileged documents.  As such, the Protective Order ensures that all of the Parties will have access to electronic copies of the non-privileged documents, while the originals will be safely stored.  In addition, any documents over which any Party asserts a privilege will be segregated.

12.    The Protective Order also provides a mechanism for notification regarding subpoenas and document requests.  Upon receipt of a subpoena or other legal process seeking the production of any document designated as privileged, the receiving party must not only notify the other parties, but shall notify the requesting party of the assertion of privilege and refrain from producing such document until authorized by the party asserting privilege or a court order.  Upon receipt of a subpoena or other legal process seeking the production of any document designated as confidential, the receiving party must notify the other parties, who may then move

to quash the subpoena or similar request.  In addition, if any of the parties intend to file or submit any of the confidential documents to a court, the party may either notify the other parties at least five business days prior to any such proposed filing, or file the confidential document(s) under seal.

13.     In addition, as explained below, there remain additional documents and computer files at the Corporate Offices to be reviewed and segregated.  The Protective Order would govern those materials.

14.     The Protective Order incorporates virtually all the terms requested by the Debtors during the months of negotiations described below.  Moreover, it permits the Parties to move forward without having to seek relief from the Court to resolve at this juncture the various contested issues of control and privilege.

C.     **Efforts to Resolve Document Issues**

15.     In light of the size and scope of this matter, the USAIP Parties have retained, as regulatory counsel, my firm, Fulbright & Jaworski L.L.P., and Kesler & Rust (which replaced Woodbury & Kesler, P.C. as local regulatory counsel), as well as Woodbury & Kesler, P.C. as separate bankruptcy counsel (collectively "USAIP Counsel").  Shortly after the bankruptcy filing, USAIP Counsel entered into discussions with Debtors' counsel with the understanding that while Mr. Milanowski would no longer be working for the Debtors, he continued to need access to the Corporate Offices and to certain documents relating to USAIP and the Non-Debtor Entities.

16.     USAIP Counsel also requested that the documents relating to the USAIP Parties be segregated and removed from the Corporate Offices.  Counsel for the Debtors agreed in principle, and for some time informal arrangements were made while a formal plan was negotiated.

17.     During the pendency of the bankruptcy proceeding, the United States Securities and Exchange Commission ("SEC") began investigating Mr. Milanowski and USAIP. On April 21, 2006, the SEC served a subpoena on Milanowski seeking the production of documents as well as testimony.

18.     Unbeknownst to USAIP Counsel, the Debtors unilaterally permitted SEC attorneys to visit the Corporate Offices to review documents. During the review, the SEC designated certain documents for copying and production. USAIP Counsel was not made aware of this review until after the fact and therefore had no opportunity to review documents to assert any applicable privileges.

19.     Upon learning of the SEC review, on May 22, 2006, we demanded that the Debtors provide us with an opportunity to review the documents that the SEC had identified during the review for copying and production. Debtors' counsel agreed to the request and subsequently forwarded four boxes of documents that the SEC had requested.

20.     Our review of the materials identified by the SEC confirmed our fears:    the materials included documents belonging to USAIP and some relating to personal business matters of Mr. Milanowski. The materials even included documents covered by the attorney-client privilege. It was apparent that the Debtors had made no effort to segregate the documents belonging to the USAIP Parties, much less to ensure that its privileged documents were protected.

21.     To remedy this situation, and with the full knowledge of the SEC and the Debtors, the USAIP Parties removed certain privileged documents and produced non-privileged documents to the SEC.

**D.    The August 7-8 Document Segregation**

22.    In light of the issues surrounding the SEC on-site review, the USAIP Parties renewed their request for access to their documents.  USAIP Counsel expressed the added urgency of resolving the issue after the SEC issued an additional subpoena to USAIP on July 25, 2006 (as well as a nearly identical subpoena to Mr. Milanowski).  USAIP Counsel explained that the files at the Corporate Offices contained responsive documents that needed to be reviewed for production in response to the SEC subpoena. In response, Debtors' counsel agreed that arrangements would be made to transfer and release all of the documents and information relating to the USAIP Parties to us.  We would retain custody of the documents.

23.    Pursuant to this agreement and anticipated arrangements, I traveled with another associate in our Firm's New York office to the Corporate Offices.   We met with Mr. Milanowski, USAIP's local regulatory counsel, and Debtors' regulatory counsel at the Corporate Offices on August 7, 2006, and we proceeded to review and segregate documents relating to the USAIP Parties.

24.    The review proceeded without incident on August 7.   On August 8, however, additional counsel for the Debtors who had not been present during the review on August 7, interrupted the review and raised a series of new objections to the review process, and specifically questioned the USAIP Parties' right to access to binders containing documents relating to both Debtor and Non-Debtor Entities.  We acceded to this new demand and agreed that the binders would be placed in the boxes designated for transmission to us, who would then either copy the documents relating to the Debtors or make them available for review by Debtors' counsel.

25.    Upon completion of the review on August 8, one-hundred forty-four (144) boxes of documents relating to the USAIP Parties were designated for transmission to us.  I provided a

Federal Express account number and shipping information. When I left the Corporate Offices on August 8, I believed that the 144 boxes of documents would be sent shortly.

26.     Even after the review on August 7 and 8, the segregation process was not complete. There were additional documents in the offices of certain accountants, as well as electronic records, that remained to be reviewed and segregated.

**E.      The August 21-22 Document Segregation and The Three Categories of Documents**

27.     Just days after Debtors' counsel agreed to ship the 144 boxes of materials to us, Debtors' counsel reversed course and informed us that it would not permit the removal of the boxed materials. Debtors' counsel insisted that a second review be conducted on-site to segregate the documents according to the parties to which they related. Despite the added costs that Mr. Milanowski would be forced to incur, once again, we accommodated this new demand and agreed to a second on-site review. The second review took place on August 21 and 22.

28.     I traveled from New York to the Corporate Offices for the review. At the insistence of Debtors' Counsel, we were permitted only to observe, but not to participate in, the second-stage review of the materials on August 21. Rather, only employees of the Debtors and Mesirow participated in the review. They segregated the 144 boxes along the lines of the categories outlined above. These included a significant amount of materials over which, as the Debtors acknowledged, only the USAIP Parties had an interest. As a second category, the Debtors identified a large number of documents (which they called "hybrid documents") that indisputably belong to the USAIP Parties, but over which the Debtors claimed a shared interest by virtue of a Debtor entity's loan, lease or other such interest in a particular project. The third category included those documents that Debtors identified as belonging only to the Debtor, but as to which the USAIP Parties assert joint control or a joint attorney-client privilege.

29.     Because the parties had conflicting claims as to the materials in the third category of documents identified by the Debtors (*i.e.*, those identified by the Debtors as belonging solely to themselves), on August 22 counsel permitted us to review a number of these boxes in a good faith effort to narrow the number of disputed documents. In the course of the review, we identified a number of documents that we agreed belonged solely to the Debtors and consented to the removal of those documents from the boxes and their return to regular circulation.

F.     **Attempts to Resolve the Issues Since August 22**

30.     At the conclusion of the meetings on August 22, however, Debtors' counsel refused to consent to the removal of any documents – even those that the Debtors conceded belong solely to the USAIP Parties. Instead, Debtors' counsel insisted that the USAIP Parties obtain a court order for the production of the materials.

31.     Notwithstanding the prior agreement, in order to avoid costly litigation, we proposed that both the Debtors and the USAIP Parties enter into an order on consent. Debtors' counsel indicated that they would consider such a resolution.

32.     On September 22, 2006, USAIP Counsel met with Debtors' counsel to discuss a proposed Stipulation and Order. We then proposed a conference call on September 27, but Debtors' counsel stated that they had been unable to meet with their client to review the document and did not believe they would have client approval prior to September 29, 2006. In order to facilitate such a call, on September 29, we circulated a revised draft addressing an issue that Debtors' counsel had raised. In response to further requests for a conference call on September 29, Debtors' counsel stated that they had been unable to review the draft with their client and proposed a conference call on October 2.

33.     As both sides agreed that a privilege review would need to take place, we proposed that both sides undertake such a review while negotiations regarding a stipulated protective order were ongoing. Debtors' counsel did not respond to such proposal.

34.     On October 5, Debtors' counsel finally advised that they were available to discuss the proposed stipulation and protective order. In substance, the Debtors rejected the proposal by USAIP Counsel and sought fewer restrictions on the review and use of the documents. By means of a counter-proposal, Debtors' counsel forwarded certain points that they believed should be included. In addition, in the course of these discussions, Debtors' counsel repudiated their earlier acknowledgement that some of the documents belonged solely to the USAIP Parties and now claimed that *all* the documents belonged to the Debtors.

35.     On October 10, we circulated a revised draft representing a good faith effort to address the concerns outlined by the Debtors. In response, we requested that the Debtors' counsel advise whether a privilege review could commence on October 16.

36.     Rather than respond regarding the draft Stipulation and Order or the proposed privilege review, on October 13, counsel for the Debtors advised that they were not willing to enter into a stipulated protective order relating to the documents unless certain issues relating to the disposition of certain non-estate property were resolved to the Debtors' satisfaction. In essence, the Debtors are holding the documents hostage, and have attempted to condition access to the documents on commercial concessions.

37.     On October 18, USAIP Counsel met with Debtors' counsel in Las Vegas in an attempt to resolve the commercial concerns raised by Debtors' counsel on October 13. At the conclusion of the meeting, the Debtors agreed that the commercial issues had been resolved, and

therefore, they would respond to the USAIP Parties' most recent draft by October 15. Not surprisingly, no response has been received to date.

## G.    **Impact on Mr. Milanowski and USAIP**

38.    In recent weeks, the SEC has inquired as to the status of the USAIP Parties' compliance with the subpoenas. We have had to repeatedly advise the SEC that its access to the 144 boxes is being negotiated.

39.    In addition, on October 23, 2006, Mr. Milanowski received an additional subpoena requesting the production of documents by November 22, 2006. Most of the documents in the 144 boxes, as initially segregated, appear to be responsive to this subpoena.

40.    USAIP and Mr. Milanowski are under a present obligation to produce documents pursuant to subpoenas issued by the SEC and others. However, because of the Debtors' refusal to release the Documents to the possession of the USAIP Parties or further negotiate regarding a stipulation and protective order, they are prevented from responding to the outstanding subpoena and thereby may be subject to penalties or other actions by the issuing authorities.

41.    Furthermore, some of the Debtors' investments and loans were made with USAIP and thereafter, USAIP invested such monies with the Non-Debtor Entities. In order to properly manage the businesses, their projects and investments, and maximize the potential return from the investments made, which return will ultimately benefits the creditors of the Debtors' estate, the USAIP Parties must have possession and control of their Documents.

42.    For the foregoing reasons, the USAIP Parties respectfully request that the Court endorse the Protective Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2006
New York, New York

_____
Sarah E. O'Connell