ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
KEVIN A. DARBY, ESQ.
Nevada Bar No. 7670
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
Email: mail@asmithlaw.com

*Attorney for Donna Cangelosi*

**ELECTRONICALLY FILED** - November 27, 2006

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In Re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>    Debtor.<br>_____/<br>In Re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>    Debtor.<br>_____/<br>In Re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>    Debtor.<br>_____/<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>    Debtor.<br>_____/<br>In re:<br>USA SECURITIES, LLC,<br>    Debtor.<br>_____/<br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br>Hearing Date:  November 28, 2006<br>Hearing Time:  1:30 p.m.<br><br>**OPPOSITION TO JOINT MOTION OF THE FOUR OFFICIAL COMMITTEES TO APPROVE SUPPLEMENTAL DISCLOSURE PURSUANT TO 11 U.S.C. §1125** |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd

Donna Cangelosi (hereinafter "Cangelosi"), through her counsel, Alan R. Smith, Esq.[1], hereby opposes the Joint Motion Of The Four Official Committees To Approve Supplemental Disclosure Pursuant To 11 U.S.C. §1125 (the "Joint Motion"). This opposition is based on the following points and authorities, the pleadings and papers on file in these cases, and any or all arguments that may be presented at the hearing on this Motion.

## I.
## INTRODUCTION

The Joint Motion states that a certain letter from Donna Cangelosi to various investors (the "Cangelosi Letter") contains "factual inaccuracies and misstatements of law." The exact alleged misstatements are not specifically identified. The Joint Motion asserts that a Supplemental Disclosure should be sent to creditors to rectify the alleged wrong. As set forth below, the Cangelosi Letter does not contain factual inaccuracies or misstatements of law. Furthermore, the Supplemental Disclosure is itself incomplete, and inaccurate. It is in reality not informational, but an argument as to why creditors should vote for the Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization (the "Plan"). The Supplemental Disclosure should not be approved and should not be sent to creditors.

## II.
## LEGAL ARGUMENT

**A.    Ms Cangelosi's Letter To Fellow Creditors Was Well Within The Bounds Of Lawful Communications Between Creditors.**

It is interesting that the Committees, while charged with the duty of promoting the best interest of their constituents, seek to limit communications between those they are fiduciarily bound to protect.[2] Rather than encouraging open dialog between the truly interested parties, the

---

[1] Alan R. Smith has filed a 2016 Statement indicating that he represents Donna Cangelosi. It is anticipated that Alan R. Smith will represent numerous other investors. The 2016 Statement will be modified to reflect additional clients.

[2] A committee has a fiduciary responsibility to represent the best interests of their constituency. *Jacobson v. AEG Capital Corp.,* 50 F.3d 1493, 1500 (9th Cir. 1995).

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 2 -

Committees demand that their constituents remain silent. In essence, the Committees seek to gag their own members while requiring them to take the Debtors' word "as gospel" (at least as set forth in the Court approved Disclosure Statement) and only listen to communications from counsel for each committee. This position is not only contrary to controlling law, it also treads dangerously close to compromising the fiduciary duties by which the Committees are bound.

1. <u>The Law Is Clear: Once A Disclosure Statement Is Approved, Creditors Can Freely Communicate Their Opinions Regarding, And Circulate Opposition To, The Debtor's Proposed Plan.</u>

In attempting to stifle the voice of their constituents, the Committees mischaracterize Cangelosi's letter as an "unauthorized solicitation" and paint a misleading picture of applicable law. The Ninth Circuit has unequivocally acknowledged that, after a plan is unveiled, creditors "can circulate opposition to the debtor's plan." *Jacobson v. AEG Capital Corp.,* 50 F3d 1493, 1500 (9th Cir. 1995) (*Citing Century Glove, Inc. v. First Am Bank of New York,* 860 F.2d 94, 100 (3rd Cir. 1988). As noted by the *Jacobson* Court, a person who solicits rejection of a plan, in good faith and in compliance with applicable law, is not liable, on account of such solicitation, for violation of any applicable law or rule. *Jacobson,* 50 F.3d at 1496.

In *Century Glove,* the case the Ninth Circuit relied upon in *Jacobson,* the Third Circuit held that once adequate information has been provided to a creditor through a court approved disclosure statement, 11 U.S.C. 1125 (b) does not limit communications between creditors. *Century Glove,* 860 F.2d at 101. Under *Century Glove*, a creditor does not run afoul of § 1125 by circulating opposition to a plan because, rather than limiting information available to a creditor, § 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote. *Id.* at 100. In other words, § 1125 "sets a floor, not a ceiling." *Id.* Moreover, § 1125 "does not on its face empower the bankruptcy court to require that all communications between creditors be approved by the court. *Id.* Rather, courts have acknowledged that such prior restraint on speech – even commercial speech – is offensive to the First Amendment of the Constitution. *See, e.g., In re Mirant Corp.,* 334 B.R. 787, 792 (Bankr. N.D. Tex. 2005).

As explained by one commentator, these principles are not controversial. *See* Douglas G. Baird, *A Symposium On The Code After 25 Years: 1978 -2003,* 12 Am. Bankr. Inst. L. Rev. 69, 93

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd      - 3 -

1   (2004). A creditor can freely discuss a plan of reorganization with other creditors without fear of
2   violating § 1125. *Id.* A creditor may "urge creditors to vote against a plan on the ground that other
3   courses of action provide them a better pay-off." *Id.*

4       2.    <u>The *Trans Max Technologies* Case Confirms That Ms. Cangelosi's Letter Was A Lawful Communication Between Creditors.</u>

6   The Committees' summary of Judge Markell's opinion in *In re Trans Max Technologies,*
7   *Inc.,* 349 B.R. 80 (Bankr. D. Nev. 2006), paints an incomplete picture of that holding. First, it is
8   significant to note that the "solicitation" in *Trans Max* was by the debtor's counsel, and did not
9   involve communications between similarly situated creditors. *Trans Max,* 649 B.R. at 85. Second,
10  Judge Markell clearly adopted a position that allows creditors to "engage in discussions and
11  negotiations over a plan's fate." *Id.* at 87. Citing *Century Glove,* Judge Markell explained:

> [Once a disclosure statement is approved] the need addressed by Section 1125(b) has been met. Creditors possess a disclosure statement that the court has vetted, usually with assistance of interested party objections. Although not many courts have addressed this issue, those that have addressed it have recognized that not all post-approval solicitation must be court-approved.

15  *Id.* at 86-87.

16  In *Trans Max,* Judge Markell explained that the best analysis of when post-approval
17  communication is proper can be found in *In re Apex Oil Co.,* 111 B.R. 245 (Bankr. E.D. Mo. 1990).
18  Specifically, *Trans Max* adopted the *Apex* holding that soliciting parties need not obtain prior court
19  approval of communications so long as:

20      1)    the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations;

22      2)    the information is presented in good faith;

23      3)    the soliciting party does not propose or suggest an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels as dictated in the Bankruptcy Code.

25  *Trans Max,* at 87; *Citing Apex,* at 249. The *Apex Court* further explained that a soliciting party may
26  without prior court approval:

27      1)    offer a narrative, evidence, conclusions, or opinions contrary to that enunciated in the plan or disclosure statement;

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd          - 4 -

2)       assert positions, evidence, conclusions, or opinions of relevant matters which are not contained in the plan or court-approved disclosure statement;

3)       offer evidence or opinions of an alternative liquidation analysis, since the debtors have a liquidation analysis as part of their disclosure statement.

As fully detailed below, Ms. Cangelosi's letter: (1) contained no false or misleading statements of facts or law; (2) was presented in good faith; and (3) does not propose an alternative plan. Rather, as specifically authorized in *Apex,* the letter offers reasoned opinions and positions contrary to those of the Debtor (and apparently also contrary to the so-called Committees bound to promote the interests of all their constituents).

**B.    Cangelosi's Letter Sets Forth Lawful Statements Of Her Opinion And Conclusions, And Contains No False Or Misleading Information.**

Cangelosi is fully aware that this is a complicated case, and a great deal of effort has gone into the proposed plan of reorganization by the various counsel for the Committees and the Debtors. She has followed this case closely since the outset, and has appeared at nearly all of the hearings. However, Cangelosi is in a position different than the various counsel because these cases involve a substantial investment of her own personal money. Numerous investors have communicated with Cangelosi throughout these bankruptcy cases. As bothersome or irritable as it may seem to the various counsel, these are people with real money at stake, and they are entitled to be heard.

Cangelosi believes that some of the due process rights of investors have been glossed over by the proposed plan, and that legal rights have been traded for expediency by those who do not have investments at risk. As important as it is to confirm this plan, it cannot be done if it violates applicable law, even if it is only a single creditor that points out that violation. Nor can it be done by intimidation or providing inaccurate or incomplete information. Cangelosi submits that the plan proponents are guilty of the very misstatements of fact and law of which they accuse her. The following tracks the numbering contained in the proposed supplemental disclosure (the "Supplemental Disclosure").

1.    <u>Prepaid Interest</u>.

In addressing Prepaid Interest, the Supplemental Disclosure states "such funds became property of the USACM estate and are available to be distributed to all USACM creditors..." This

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd

- 5 -

statement is dead wrong. "Prepaid interest" is defined in Section 113 of the Debtor's Third Amended Joint Chapter 11 Plan Of Reorganization as falling within one of three categories.

First, it is defined as "all causes of action to recover principal or interest payments USACM paid in advance to the applicable Lender(s) before the Petition Date". These payments were actually in the hands of the various lenders prepetition. These payments are the lenders' money paid on their loans. This statement is at least correct in that the estate may have a cause of action to attempt to recover funds.

Second, it is defined as "all principal and interest payments USACM has collected (will continue to collect) postpetition from Borrowers for such advanced principal or interest payments". These payments are principal and interest on lender's loans, and clearly are the property of the lenders.

Third, it is defined as "all payments USACM has collected (and will continue to collect) postpetition on any Loan that would otherwise be payable to a Lender that received an advanced principal or interest payment from USACM prior to the Petition Date, but only to the extent of such advanced principal or interest payments." Similarly, these payments are principal and interest on lenders' loans, as the property of the lenders.

The Debtors state that they will shortly file a brief to address the issue. Although the brief will certainly be interesting, it cannot overcome the fundamental problem: the property of another cannot be taken through the bankruptcy process without due process. U.S. CONST. Amend. V.[3] Here, the Plan simply states that the estate is entitled to recover against the Direct Lenders, and self executes to secure that recovery. That simply cannot be done without an adversary proceeding. *In re Wheeler Technology, Inc.* 139 B.R. 235, 240 (B.A.P. 9th Cir. 1992) ("Rule 7001 requires an action to recover property to be brought as an adversary proceeding."). It cannot be done in a plan of

---

[3] *See also Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 588-89 (1935) (bankruptcy power of Congress limited by creditors Fifth Amendment rights). The two essential prerequisites to any invocation of constitutional due process protection are: (1) government action and (2) the deprivation of a constitutionally protected right or interest. Robert M. Lawless, *Realigning the Theory and Practice of Notice in Bankruptcy Cases,* 29 Wake Forrest L. Rev. 1215, 1225-27 (1994). The enforcement of Federal bankruptcy law by means of adjudication in federal courts constitutes government action. *Id.*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 6 -

reorganization. *In re Enewally,* 368 F.3d 1165 (9th Cir. 2004) ("[I]f an issue must be raised through an adversary proceeding, it is not part of the confirmation process, and unless it is actually litigated, confirmation will not have a preclusive effect."). A plan of reorganization restructures repayment of creditors. There is no authority that it can effectuate recovery of property belonging to others, even creditors. That fundamental problem cannot be overcome.

The lenders should be advised that no property can be taken from them, even Prepaid Interest, unless they each agree, or a lawsuit is brought against them. They should be advised that they are not bound to give up any property even if Class A-5 votes to accept the plan, unless they each individually agree to do so. The Supplemental Disclosure states that this is a compromise, and accordingly the legal standards for a compromise should govern. As compromise is premised on an agreement, it accordingly requires each lender to agree.

The Supplemental Disclosure threatens "hundreds or perhaps thousands of lawsuits" against the Direct Lenders, including actions based on "state and federal fraudulent conveyance law." This is certainly a frightening statement, especially to an investor merely looking for a return on his money. Nobody wants to be sued. And to a lay man, the word "fraudulent" has horrible connotations.

It is submitted that these types of intimidation tactics should not be used to confirm a plan, and should not be included in a supplemental disclosure. There may not be a fraudulent conveyance at all. Furthermore, investors [creditors] are not advised of what a "fraudulent conveyance" is, or how USACM might recover against them, or what defenses the Direct Lenders may have (which might include setoff, recoupment, or lack of standing). It seems that USACM cannot very well recover from the Direct Lenders payments that it was obligated to make – and if there was a fraudulent conveyance it was likely from one of the other debtors to USACM.

Section 1 of the Supplemental Disclosure is inaccurate, incomplete, argumentative and unfairly intimidating, and should not be sent to creditors and interested parties.

2. <u>Bankruptcy Code Mandates Distribution In A Specified Order</u>.

Although the general proposition that administrative expenses have first priority, the statements in this section of the Supplemental Disclosure are incomplete and therefore misleading.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 7 -

1  The statement leaves the reader with the impression that all administrative expenses in all of the
2  bankruptcy cases must be paid before the unremitted principal claims receive any recovery. Since
3  the cases have not been substantively consolidated, this is true only within each case. In other words,
4  unsecured creditors of USACM cannot be paid until the administrative claims of USACM are paid.
5  Furthermore, this section again implies that investors are obligated to give up their property to pay
6  administrative claims, which is completely untrue.

7  Finally, this section ends with the argument that if the cases are converted to Chapter 7,
8  additional expenses will be incurred, again falsely implying that the lenders/investors will have to
9  bear those expenses.

10       3.    <u>USACM Unsecured Claims Must Be Treated Alike</u>.

11  This section is correct in stating that all unsecured creditors of USACM must be treated alike,
12  including the DTDF unsecured claim of approximately $19 million. However, objections may be
13  filed to allowance of this claim. Similarly, an objection to the $370,000.00 claim of FTDF has been
14  filed. If the Supplemental Disclosure is going to mention these claims, it should disclose the
15  existence of objections, the possibility that other objections may be filed, the likelihood of the
16  allowance of the claim, and the fact that if the objections are successful, the Direct Lenders'
17  unsecured claims would constitute the vast majority of the unsecured creditors and would receive
18  payment after the administrative claims of only USACM are paid.

19       4.    <u>Servicing Fees</u>.

20  The statement in the Supplemental Disclosure is misleading because it implies that the 2%
21  holdback was a final order entered by the Bankruptcy Court, when, in fact, it was a temporary
22  measure "with the rights and legal position of all parties, including the Debtors, reserved in such
23  funds...." and contemplated "any final determination with respect to any distributions and any offsets
24  related thereto, including any factual findings and legal ruling, shall be made upon appropriate notice
25  and in such additional proceedings as to be determined by the Court." There has been no such
26  additional proceeding, nor has this Court determined what additional proceedings may be necessary.
27  The only "additional proceeding" is the Plan, which, as stated above, cannot by itself accomplish a
28  taking of property from the Direct Lenders.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 8 -

Furthermore, the 2% holdback is of the principal amount of the loans, whereas the servicing fees are a percentage of payments made (not the principal balances). Some of the service agreements provide that the servicing fees "shall not exceed" the specified percentage of 1% or 2%. Accordingly, it is erroneous to imply that the servicing agreements provide for a straight percentage. Finally, the Supplemental Disclosure threatens that if the Plan is not confirmed, it is very likely that USACM (or its trustee) will seek to collect unpaid but earned servicing fees. But there is no discussion that the Direct Lenders may have substantial defenses to payment of these fees since USACM may not be entitled to collect fees for severely mismanaging the accounts.

Based on the above, the section or servicing fees is incomplete and inaccurate, and accordingly should be distributed to creditors and interested parties.

5. <u>Collateral For 10-90 Loan And $58 Million Note.</u>

The Supplemental Disclosure is incorrect in that the Cangelosi Letter does not suggest that the new servicer will have recourse to the 10-90 Loan and the $58 Million Note. She simply says she does not know. The representations in the Cangelosi Letter are accurate.

6. <u>Recovery Estimates.</u>

The Supplemental Disclosure points out differences between the projected recoveries in the Disclosure Statement and those in the Cangelosi Letter. At the outset of her Letter, Cangelosi stated "The following is my opinion." The relevant "differences" are in the DTDF recovery, where Cangelosi says 15%, based on her concern over the collectibility of the 10-90 Loan and the $58 Million Note, as opposed to a minimum of 25% in the Disclosure Statement. That is her opinion. Cangelosi says that creditors in the FTDF will receive 60%+, whereas the Disclosure Statement says 67-70%. Again, this is her opinion based on information in the Disclosure Statement. There is no need for a supplemental disclosure on this issue.

7. <u>Professional Fees.</u>

It is clearly Cangelosi's opinion that a large part of this Plan is driven by the need to pay professionals. Indeed, the Plan does take the steps necessary to assure that most of the professionals are paid. Ms. Cangelosi simply objects that certain actions that lack legal and factual basis (such as taking the Prepaid Interest as estate property without due process) are undertaken to assure payment

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 9 -

1  of professionals. Ths conclusion is not farfetched, nor could it be considered a factual
2  mischaracterization. It is simply Ms. Cangelosi's opinion.

3           8.      Direct Lender Claims Against Debtor Entities

4  The Supplemental Disclosure apparently acknowledges that the Direct Lenders may have
5  claims against USA Realty, USA Securities, FTDF and DTDF as suggested by Ms. Cangelosi. The
6  Supplemental Disclosure goes on to state that this was the basis for the compromise. The Cangelosi
7  Letter is accurate, and the Supplemental Disclosure on this issue is not necessary.

8           9.      Recharacterization.

9  Ms. Cangelosi is entitled to her opinion that recharacterization is not a real threat. No
10 disclosure by the plan proponents ever explains recharacterization, or how it may be applicable. The
11 Supplemental Disclosure does not explain recharacterization, nor does it refute the opinion of Ms.
12 Cangelosi.

13          10.     $50 Million Note Collectible.

14 The Cangelosi Letter sates essentially that there is not an adequate mechanism in the Plan
15 to collect or secure the $58 Million Note. Cangelosi is entitled to her opinion. In fact, a pledge of
16 interests in certain limited liability companies seems far inferior to an actual lis pendens or deed of
17 trust. Furthermore, no action has yet been undertaken, and the Plan does not provide much detail
18 on how this might be done. Cangelosi's opinion is well founded. And the Supplemental Disclosure
19 is simply a rehash of the Disclosure Statement, and therefore unnecessary.

20          11.     Direct Lenders Settlement Standing.

21 The Cangelosi Letter is correct in that the Direct Lenders Committee cannot settle for the
22 Direct Lenders themselves. The Supplemental Disclosure is incomplete because it does not explain
23 that the Direct Lenders Committee cannot settle on behalf of the Direct Lenders, nor does it explain
24 that no Direct Lenders can be bound to give up any property under the Plan unless he or she
25 individually agrees. 7 Alan N. Resnick, et al. *1103 Collier on Bankruptcy 15th Edition p. 1103.05*
26 (2006) (*Citing In re Donlevy's Inc.*, 111 B.R. 1 (*Bankr. D. Mass 1990)*).

27 ///

28 ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 10 -

1. 12. <u>The Sale to Silver Point Capital Or An Overbidder</u>.

   The Cangelosi Letter simply says that there are factors to consider in connection with a sale of the FTDF portfolio. There is a reasonable basis for her opinion. The Supplemental Disclosure contains no additional disclosures, and is nothing more than a "sales pitch" to assure that the sale will be consummated.

2. 13. <u>Litigation Against Hantges, Milanowski and USAIP</u>.

   The Cangelosi Letter expresses frustration that there has been no active litigation against Milanowski, Hantges, or USAIP. That is her opinion. The Supplemental Disclosure again contains no new information, but is merely argument in favor of plan confirmation.

3. 14. <u>Alternatives to the Plan</u>.

   The Committees' attempt to make issue of the fact Cangelosi's Letter does not propose an alternative to the Plan is misleading and confusing. As fully detailed above, while Ms. Cangelosi is authorized under applicable law to communicate with fellow creditors, the law prohibits her from making specific proposed plan alternatives without subjecting such alternatives to the full disclosure statement process. Indeed, Ms. Cangelosi could potentially violate §1125 by proposing an alternative plan. She did not do so. Instead, Ms. Cangelosi merely expressed her opinions and conclusions of the Plan presently at bar.

## CONCLUSION

The Cangelosi Letter does not contain factual inaccuracies or misstatements of law. It contains the opinions of Cangelosi as clearly stated at the beginning of the letter. It offers conclusions or opinions contrary to that enunciated with Plan and Disclosure Statement, which is permissible under applicable law.

On the other hand, the Supplemental Disclosure is not even submitted by the plan proponents. It contains inaccurate and incomplete information. It is argumentative and intimidating, designed to garner votes for the Plan. It does not contain new "disclosures." It should not be disseminated to creditors and interested parties.

///

///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 11 -

1  **DATED** this 27th day of November, 2006.

LAW OFFICES OF ALAN R. SMITH

*/s/ Alan R. Smith*
By_____
ALAN R. SMITH, ESQ.
*Attorney for Donna Cangelosi*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Capital\Resp Mot Approv Supp Disclosure 112706-lpb.wpd    - 12 -