Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400          **E-FILED ON NOVEMBER 29, 2006**
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

  and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | Chapter 11<br><br>Jointly Administered Under |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10725 LBR |
| In re:<br>USA SECURITIES, LLC,<br><div align="right">Debtor.</div> | **DIRECT LENDER SUPPLEMENT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
| Affects:<br>☑ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

*Sidebar (left margin):* SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

RQNDOCS-#902864-v2-Direct_Lender_Supplement

USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC (collectively, the "Debtors"), by and through their counsel, hereby file the Direct Lender Supplement to Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Direct Lender Supplement").  As contemplated in Art. I, Section E of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), attached hereto is the Loan Servicing Fee Schedule (Exhibit A) and the Alternative Dispute Resolution Agreement (Exhibit B).

The attached Loan Servicing Fee Schedule is a summary of the loan servicing agreements applicable to each loan.  Due to privacy concerns, the detailed information disclosing the names of each Direct Lender and the loan servicing agreement(s) applicable to each Direct Lender, which information is contained in an expanded exhibit of approximately 205 pages in length, is not filed with this Direct Lender Supplement.  However, Debtors will request permission to file the expanded exhibit under seal.

Along with service of this Direct Lender Supplement to each Direct Lender, Debtors will provide a list of the loan servicing agreement(s) and related information, in the form attached hereto as Exhibit C, applicable to that specific Direct Lender.

Respectfully submitted this 29th day of November, 2006.

/s/ Lenard E. Schwartzer
Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146
Attorneys for Debtors and Debtors In Possession

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

RQNDOCS-#902864-v2-Direct_Lender_Supplement

# Exhibit A

**USA Commercial Mortgage Company**

**Loan Servicing Agreement Summary**

| Loan Name | Service Fee % | Number | Investment[1] | Monthly Accrual[2] | Service Fee Outstanding April-September 2006[3] |
|---|---|---|---|---|---|
| 3685 San Fernando Road Partners | 1.00% | 60 | $4,733,000.00 | $3,944.17 | $19,720.79 |
| 3685 San Fernando Road Partners | 3.00% | 23 | $2,617,000.00 | $6,542.50 | $41,435.85 |
| 5055 Collwood, LLC | 1.00% | 20 | $604,667.83 | $503.89 | $505.54 |
| 5055 Collwood, LLC | 3.00% | 13 | $360,227.65 | $900.57 | $5,999.93 |
| 5252 Orange, LLC | 0.25% | 1 | $0.00 | $0.00 | ($173.66) |
| 5252 Orange, LLC | 1.00% | 40 | $0.00 | $0.00 | $0.00 |
| 5252 Orange, LLC | 3.00% | 25 | $0.00 | $0.00 | $14,124.01 |
| 60th Street Venture, LLC | 1.00% | 31 | $2,130,000.00 | $1,775.00 | $5,246.80 |
| 60th Street Venture, LLC | 3.00% | 18 | $1,570,000.00 | $3,925.00 | $28,068.22 |
| 6425 Gess, LTD | 0.25% | 1 | $100,000.00 | $20.83 | $260.25 |
| 6425 Gess, LTD | 1.00% | 214 | $17,574,000.00 | $14,645.00 | $191,494.13 |
| 6425 Gess, LTD | 3.00% | 71 | $8,826,000.00 | $22,065.00 | $290,711.02 |
| Amesbury/Hatters Point | 1.00% | 362 | $17,848,523.48 | $14,873.77 | $79,528.72 |
| Amesbury/Hatters Point | 1.50% | 10 | $56,778.35 | $70.97 | $533.07 |
| Amesbury/Hatters Point | 3.00% | 21 | $1,336,900.34 | $3,342.25 | $29,544.04 |
| Anchor B, LLC | 0.25% | 2 | $150,000.00 | $31.25 | $498.96 |
| Anchor B, LLC | 1.00% | 32 | $2,681,000.00 | $2,234.17 | $35,672.25 |
| Anchor B, LLC | 3.00% | 16 | $3,004,422.00 | $7,511.06 | $117,159.07 |
| Ashby Financial  $7,200,000 | 1.00% | 67 | $0.00 | $0.00 | $0.00 |
| Ashby Financial  $7,200,000 | 1.50% | 1 | $0.00 | $0.00 | $567.20 |
| Ashby Financial  $7,200,000 | 3.00% | 6 | $0.00 | $0.00 | $14,861.65 |
| BarUSA/$15,300,000 | 1.00% | 185 | $12,881,000.00 | $10,734.17 | $0.00 |
| BarUSA/$15,300,000 | 1.50% | 1 | $50,000.00 | $62.50 | $198.92 |
| BarUSA/$15,300,000 | 3.00% | 35 | $2,369,000.00 | $5,922.50 | $38,617.03 |
| Bay Pompano Beach | 0.25% | 1 | $36,707.28 | $7.65 | ($52.14) |
| Bay Pompano Beach | 1.00% | 285 | $10,449,100.78 | $8,707.58 | $26,178.34 |
| Bay Pompano Beach | 3.00% | 121 | $4,198,395.01 | $10,495.99 | $55,213.45 |
| Binford Medical Developers | 1.00% | 59 | $4,245,000.00 | $3,537.50 | $16,968.90 |
| Binford Medical Developers | 3.00% | 33 | $3,205,000.00 | $8,012.50 | $70,399.64 |
| Boise/Gowen 93 | 1.00% | 14 | $0.00 | $0.00 | $0.00 |
| Boise/Gowen 93 | 3.00% | 3 | $0.00 | $0.00 | $1,468.38 |
| Brookmere/Matteson $27,050,000 | 0.25% | 1 | $246,583.53 | $51.37 | ($63.58) |
| Brookmere/Matteson $27,050,000 | 1.00% | 229 | $3,288,487.61 | $2,740.41 | $11,545.16 |
| Brookmere/Matteson $27,050,000 | 3.00% | 19 | $2,429,776.44 | $6,074.44 | $32,961.19 |
| Bundy Canyon $1,050,000 | 1.00% | 1 | $1,050,000.00 | $87,500.00 | $1,750.00 |
| Bundy Canyon $2,500,000 | 1.00% | 23 | $1,625,000.00 | $1,354.17 | $6,484.01 |
| Bundy Canyon $2,500,000 | 3.00% | 11 | $675,000.00 | $1,687.50 | $19,573.68 |
| Bundy Canyon $5,000,000 | 0.25% | 1 | $50,000.00 | $10.42 | ($169.17) |
| Bundy Canyon $5,000,000 | 1.00% | 31 | $2,905,000.00 | $2,420.83 | $11,913.71 |
| Bundy Canyon $5,000,000 | 3.00% | 11 | $1,295,000.00 | $3,237.50 | $32,121.93 |
| Bundy Canyon $5,725,000 | 0.25% | 1 | $100,000.00 | $20.83 | ($1,070.51) |
| Bundy Canyon $5,725,000 | 1.00% | 24 | $4,315,000.00 | $3,595.83 | $8,093.07 |
| Bundy Canyon $5,725,000 | 3.00% | 18 | $1,310,000.00 | $3,275.00 | $36,502.48 |
| Bundy Canyon $7,500,000 | 1.00% | 53 | $4,415,000.00 | $3,679.17 | $20,640.11 |
| Bundy Canyon $7,500,000 | 3.00% | 30 | $2,285,000.00 | $5,712.50 | $57,687.13 |
| Cabernet | 1.00% | 53 | $2,050,000.00 | $1,708.33 | $0.00 |
| Cabernet | 3.00% | 12 | $950,000.00 | $2,375.00 | $9,447.24 |
| Castaic Partners II, LLC | 0.25% | 1 | $150,000.00 | $31.25 | $247.13 |
| Castaic Partners II, LLC | 1.00% | 32 | $3,050,000.00 | $2,541.67 | $20,726.30 |
| Castaic Partners II, LLC | 3.00% | 24 | $2,400,000.00 | $6,000.00 | $49,722.58 |
| Castaic Partners III, LLC | 1.00% | 44 | $3,345,000.00 | $2,787.50 | $15,663.60 |
| Castaic Partners III, LLC | 3.00% | 21 | $1,330,000.00 | $3,325.00 | $25,872.92 |
| Charlevoix Homes, LLC | 1.00% | 15 | $1,184,000.00 | $986.67 | $986.65 |
| Charlevoix Homes, LLC | 3.00% | 25 | $2,216,000.00 | $5,540.00 | $23,637.35 |
| Clear Creek Plantation | 1.00% | 26 | $2,125,000.00 | $1,770.83 | $10,625.00 |
| Clear Creek Plantation | 3.00% | 10 | $775,000.00 | $1,937.50 | $12,916.65 |
| Cloudbreak LV | 1.00% | 1 | $26,325.41 | $21.94 | $24.75 |
| Cloudbreak LV | 3.00% | 1 | $3,773,674.59 | $9,434.19 | $48,472.75 |
| Colt Second TD | 1.00% | 1 | $1,000,000.00 | $83,333.33 | $31,129.03 |
| Colt DIV added #1 | 1.00% | 1 | $1,500,000.00 | $125,000.00 | $48,387.10 |
| Colt DIV added #2 | 1.00% | 2 | $3,100,000.00 | $2,583.33 | $77,500.00 |
| Colt Gateway | 0.25% | 1 | $2,587,737.03 | $215,644.75 | $9,922.04 |
| Colt Gateway | 1.00% | 5 | $3,040,591.00 | $2,533.83 | $46,782.28 |
| Columbia Managing Partners | 3.00% | 1 | $2,210,000.00 | $5,525.00 | $26,961.02 |

**USA Commercial Mortgage Company**

**Loan Servicing Agreement Summary**

| Loan Name | Service Fee % | Number | Investment[1] | Monthly Accrual[2] | Service Fee Outstanding April-September 2006[3] |
|---|---|---|---|---|---|
| ComVest Capital | 1.00% | 41 | $2,385,000.00 | $1,987.50 | $7,759.84 |
| ComVest Capital | 3.00% | 15 | $1,740,000.00 | $4,350.00 | $28,689.78 |
| Copper Sage Commerce Center Phase II | 1.00% | 33 | $2,500,000.00 | $2,083.33 | $9,771.54 |
| Copper Sage Commerce Center Phase II | 3.00% | 18 | $1,050,000.00 | $2,625.00 | $16,184.70 |
| Copper Sage Commerce Center, LLC | 1.00% | 18 | $0.00 | $0.00 | $0.00 |
| Copper Sage Commerce Center, LLC | 3.00% | 10 | $0.00 | $0.00 | $687.61 |
| Cornman Toltec 160, LLC | 1.00% | 63 | $4,095,000.00 | $3,412.50 | $3,412.63 |
| Cornman Toltec 160, LLC | 3.00% | 33 | $2,280,000.00 | $5,700.00 | $28,149.99 |
| Cottonwood Hills, LLC | 1.00% | 8 | $0.00 | $0.00 | $1,250.01 |
| Cottonwood Hills, LLC | 3.00% | 13 | $0.00 | $0.00 | $64,547.67 |
| Del Valle - Livingston | 1.00% | 152 | $12,339,000.00 | $10,282.50 | $21,059.16 |
| Del Valle - Livingston | 3.00% | 87 | $6,911,000.00 | $17,277.50 | $92,343.14 |
| Del Valle Isleton | 1.00% | 50 | $0.00 | $0.00 | $0.00 |
| Del Valle Isleton | 3.00% | 26 | $0.00 | $0.00 | $5,917.38 |
| Eagle Meadows Development | 1.00% | 180 | $17,278,000.00 | $14,398.33 | $86,725.13 |
| Eagle Meadows Development | 1.50% | 1 | $50,000.00 | $62.50 | $485.52 |
| Eagle Meadows Development | 3.00% | 114 | $13,672,000.00 | $34,180.00 | $320,039.93 |
| Eagle Meadows Development | 4.00% | 1 | $50,000.00 | $166.67 | $1,658.23 |
| Elizabeth May Real Estate | 1.00% | 91 | $6,304,500.00 | $5,253.75 | $30,266.35 |
| Elizabeth May Real Estate | 3.00% | 56 | $3,745,500.00 | $9,363.75 | $61,678.63 |
| Fiesta 6.6 | 3.00% | 1 | $6,600,000.00 | $16,500.00 | $82,500.00 |
| Fiesta Development McNaughton | 1.00% | 1 | $6,000,000.00 | $5,000.00 | $102,365.59 |
| Fiesta Murrieta | 0.25% | 1 | $240,000.00 | $50.00 | ($2,430.00) |
| Fiesta Murrieta | 1.00% | 43 | $4,045,000.00 | $3,370.83 | $3,370.83 |
| Fiesta Murrieta | 1.50% | 1 | $50,000.00 | $62.50 | $406.94 |
| Fiesta Murrieta | 3.00% | 24 | $2,165,000.00 | $5,412.50 | $69,155.13 |
| Fiesta Oak Valley | 1.00% | 208 | $17,270,000.00 | $14,391.67 | $352,728.73 |
| Fiesta Oak Valley | 3.00% | 20 | $3,230,000.00 | $4,912.50 | $69,318.57 |
| Fiesta USA/Stoneridge | 1.00% | 89 | $8,918,000.00 | $7,431.67 | $215,957.36 |
| Fiesta USA/Stoneridge | 3.00% | 11 | $1,082,000.00 | $2,705.00 | $60,681.92 |
| Fiesta/Beaumont $2.4m | 1.00% | 30 | $0.00 | $0.00 | $0.00 |
| Fiesta/Beaumont $2.4m | 1.50% | 1 | $0.00 | $0.00 | $96.77 |
| Fiesta/Beaumont $2.4m | 3.00% | 5 | $0.00 | $0.00 | $3,209.69 |
| Foxhill 216, LLC | 0.25% | 1 | $100,000.00 | $20.83 | ($31.50) |
| Foxhill 216, LLC | 1.00% | 176 | $13,882,000.00 | $11,568.33 | $66,716.70 |
| Foxhill 216, LLC | 1.50% | 1 | $50,000.00 | $62.50 | $411.00 |
| Foxhill 216, LLC | 3.00% | 122 | $11,948,000.00 | $29,870.00 | $219,625.28 |
| Franklin - Stratford Investments, LLC | 1.00% | 1 | $974,353.15 | $811.96 | $0.00 |
| Franklin - Stratford Investments, LLC | 3.00% | 1 | $4,066,236.14 | $10,165.59 | $49,429.16 |
| Gateway Stone | 1.00% | 111 | $9,470,000.00 | $7,891.67 | $47,316.18 |
| Gateway Stone | 1.50% | 1 | $50,000.00 | $62.50 | $395.69 |
| Gateway Stone | 3.00% | 49 | $3,665,000.00 | $9,162.50 | $60,852.86 |
| Gilroy | 1.00% | 19 | $0.00 | $0.00 | $0.00 |
| Gilroy | 3.00% | 40 | $0.00 | $0.00 | $23,711.55 |
| Glendale Tower Partners | 0.25% | 1 | $0.00 | $0.00 | ($352.82) |
| Glendale Tower Partners | 1.00% | 50 | $0.00 | $0.00 | $0.00 |
| Glendale Tower Partners | 1.50% | 1 | $0.00 | $0.00 | $117.61 |
| Glendale Tower Partners | 3.00% | 43 | $0.00 | $0.00 | $22,533.61 |
| Golden State Investments II | 1.00% | 24 | $0.00 | $0.00 | $0.00 |
| Golden State Investments II | 1.50% | 1 | $0.00 | $0.00 | $104.26 |
| Golden State Investments II | 3.00% | 12 | $0.00 | $0.00 | $7,357.90 |
| Goss Road | 1.00% | 18 | $912,500.00 | $760.42 | $760.43 |
| Goss Road | 3.00% | 2 | $87,500.00 | $218.75 | $1,093.75 |
| Gramercy Court Condos | 1.00% | 245 | $22,175,000.00 | $18,479.17 | $123,570.11 |
| Gramercy Court Condos | 3.00% | 87 | $12,709,500.00 | $31,773.75 | $242,298.42 |
| Harbor Georgetown | 1.00% | 92 | $7,715,000.00 | $6,429.17 | $56,313.54 |
| Harbor Georgetown | 3.00% | 11 | $1,085,000.00 | $2,712.50 | $49,127.26 |
| Hasley Canyon | 0.25% | 1 | $3,083,000.00 | $642.29 | ($17,814.61) |
| Hasley Canyon | 1.00% | 104 | $7,765,000.00 | $6,470.83 | $84,400.52 |
| Hasley Canyon | 3.00% | 9 | $852,000.00 | $2,130.00 | $40,043.58 |
| Hesperia II | 1.00% | 49 | $3,264,000.00 | $2,720.00 | $2,719.94 |
| Hesperia II | 1.50% | 1 | $50,000.00 | $62.50 | $414.58 |
| Hesperia II | 3.00% | 15 | $936,000.00 | $2,340.00 | $23,328.33 |

**USA Commercial Mortgage Company**

**Loan Servicing Agreement Summary**

| Loan Name | Service Fee % | Number | Investment[1] | Monthly Accrual[2] | Service Fee Outstanding April-September 2006[3] |
|---|---|---|---|---|---|
| HFA- Clear Lake | 0.25% | 1 | $50,000.00 | $10.42 | $212.70 |
| HFA- Clear Lake | 1.00% | 151 | $11,258,000.00 | $9,381.67 | $200,785.20 |
| HFA- Clear Lake | 3.00% | 55 | $4,742,000.00 | $11,855.00 | $206,455.21 |
| HFA- North Yonkers | 0.25% | 1 | $0.00 | $0.00 | ($1,026.21) |
| HFA- North Yonkers | 1.00% | 218 | $0.00 | $0.00 | $0.00 |
| HFA- North Yonkers | 1.50% | 1 | $0.00 | $0.00 | $342.07 |
| HFA- North Yonkers | 3.00% | 78 | $0.00 | $0.00 | $173,382.48 |
| HFA- Riviera 2nd | 1.00% | 89 | $0.00 | $0.00 | $0.00 |
| HFA- Riviera 2nd | 1.50% | 1 | $0.00 | $0.00 | $515.46 |
| HFA- Riviera 2nd | 3.00% | 9 | $0.00 | $0.00 | $20,775.74 |
| HFA- Windham | 1.00% | 64 | $4,810,000.00 | $4,008.33 | $83,459.24 |
| HFA- Windham | 3.00% | 10 | $740,000.00 | $1,850.00 | $44,854.12 |
| HFA-Clear Lake 2nd | 1.00% | 18 | $1,445,000.00 | $1,204.17 | $19,409.43 |
| HFA-Clear Lake 2nd | 3.00% | 18 | $1,305,000.00 | $3,262.50 | $43,439.73 |
| HFAH/Monaco | 3.00% | 1 | $4,000,000.00 | $10,000.00 | $262,338.31 |
| Huntsville | 1.00% | 104 | $9,325,000.00 | $7,770.83 | $78,724.73 |
| Huntsville | 3.00% | 12 | $1,150,000.00 | $2,875.00 | $34,630.59 |
| I-40 Gateway west | 0.25% | 1 | $81,977.71 | $17.08 | ($504.14) |
| I-40 Gateway west | 1.00% | 37 | $2,224,705.54 | $1,853.92 | $2,057.52 |
| I-40 Gateway west | 3.00% | 8 | $254,413.59 | $636.03 | $5,034.88 |
| I-40 Gateway West, LLC 2nd | 1.00% | 15 | $525,000.00 | $437.50 | $856.52 |
| I-40 Gateway West, LLC 2nd | 3.00% | 8 | $540,000.00 | $1,350.00 | $6,280.99 |
| Interstate Commerce Center | 1.00% | 3 | $1,149,022.59 | $957.52 | $0.00 |
| Interstate Commerce Center | 3.00% | 1 | $628.79 | $1.57 | $139.02 |
| Interstate Commerce Center Phase II | 1.00% | 1 | $210,942.74 | $175.79 | $0.00 |
| Interstate Commerce Center Phase II | 3.00% | 1 | $1,325,723.01 | $3,314.31 | $18,605.80 |
| J. Jireh's Corporation | 1.00% | 69 | $0.00 | $0.00 | $0.00 |
| J. Jireh's Corporation | 3.00% | 36 | $0.00 | $0.00 | $29,365.70 |
| La Hacienda Estate, LLC | 1.00% | 57 | $4,660,000.00 | $3,883.33 | $3,880.92 |
| La Hacienda Estate, LLC | 3.00% | 26 | $1,595,000.00 | $3,987.50 | $19,974.87 |
| Lake Helen Partners | 1.00% | 28 | $2,005,196.85 | $1,671.00 | $12,184.91 |
| Lake Helen Partners | 3.00% | 7 | $1,154,507.28 | $2,886.27 | $21,240.74 |
| Lerin Hills | 1.00% | 74 | $6,892,000.00 | $5,743.33 | $23,013.98 |
| Lerin Hills | 1.50% | 1 | $50,000.00 | $62.50 | $312.80 |
| Lerin Hills | 3.00% | 55 | $3,408,000.00 | $8,520.00 | $50,931.90 |
| Margarita Annex | 0.25% | 1 | $200,000.00 | $41.67 | ($1,685.48) |
| Margarita Annex | 1.00% | 78 | $6,845,000.00 | $5,704.17 | $34,225.00 |
| Margarita Annex | 3.00% | 26 | $4,955,000.00 | $12,387.50 | $239,973.67 |
| Marlton Square | 0.25% | 3 | $3,150,000.00 | $656.25 | ($7,375.31) |
| Marlton Square | 1.00% | 164 | $16,249,500.00 | $13,541.25 | $93,851.29 |
| Marlton Square | 3.00% | 105 | $10,600,500.00 | $26,376.25 | $285,325.42 |
| Marlton Square 2nd | 1.00% | 77 | $4,170,000.00 | $3,475.00 | $24,324.92 |
| Marlton Square 2nd | 1.50% | 1 | $50,000.00 | $62.50 | $590.73 |
| Marlton Square 2nd | 3.00% | 30 | $1,780,000.00 | $4,450.00 | $41,760.63 |
| Marquis Hotel | 1.00% | 152 | $11,815,000.00 | $9,845.83 | $230,557.93 |
| Marquis Hotel | 3.00% | 17 | $1,685,000.00 | $4,212.50 | $84,575.35 |
| Meadow Creek Partners, LLC | 1.00% | 54 | $4,828,000.00 | $4,023.33 | $16,093.40 |
| Meadow Creek Partners, LLC | 3.00% | 49 | $3,422,000.00 | $8,555.00 | $47,124.18 |
| Midvale Marketplace, LLC | 1.00% | 32 | $0.00 | $0.00 | $0.00 |
| Midvale Marketplace, LLC | 3.00% | 17 | $0.00 | $0.00 | $25,389.96 |
| Mountain House Business Park | 1.00% | 146 | $11,676,000.00 | $9,730.00 | $28,680.41 |
| Mountain House Business Park | 3.00% | 56 | $5,124,000.00 | $12,810.00 | $139,920.55 |
| Oak Shores II | 0.25% | 1 | $39,966.56 | $8.33 | ($240.26) |
| Oak Shores II | 1.00% | 117 | $7,963,595.32 | $6,636.33 | $22,994.43 |
| Oak Shores II | 3.00% | 58 | $4,146,438.13 | $10,366.10 | $115,057.44 |
| Ocean Atlantic | 1.00% | 30 | $2,650,000.00 | $2,208.33 | $4,416.69 |
| Ocean Atlantic | 3.00% | 2 | $50,000.00 | $125.00 | $666.66 |
| Ocean Atlantic $9,425,000 | 0.25% | 1 | $50,000.00 | $10.42 | $31.44 |
| Ocean Atlantic $9,425,000 | 1.00% | 68 | $5,296,500.00 | $4,413.75 | $26,500.80 |
| Ocean Atlantic $9,425,000 | 3.00% | 36 | $3,578,500.00 | $8,946.25 | $60,132.33 |
| Opaque/Mt. Edge $7,350,000 | 1.00% | 91 | $0.00 | $0.00 | $401.24 |
| Opaque/Mt. Edge $7,350,000 | 3.00% | 4 | $0.00 | $0.00 | $10,031.09 |
| Palm Harbor One | 1.00% | 203 | $15,870,964.12 | $13,225.80 | $0.00 |
| Palm Harbor One | 3.00% | 106 | $11,690,319.91 | $29,225.80 | $195,448.43 |
| Placer Vineyards | 1.00% | 237 | $22,405,000.00 | $18,670.83 | $196,200.47 |

**USA Commercial Mortgage Company**

**Loan Servicing Agreement Summary**

| Loan Name | Service Fee % | Number | Investment[1] | Monthly Accrual[2] | Service Fee Outstanding April-September 2006[3] |
|---|---|---|---|---|---|
| Placer Vineyards | 1.50% | 1 | $50,000.00 | $62.50 | $663.11 |
| Placer Vineyards | 3.00% | 105 | $9,045,000.00 | $22,612.50 | $243,316.15 |
| Placer Vineyards 2nd | 1.00% | 104 | $5,605,000.00 | $4,670.83 | $46,708.32 |
| Placer Vineyards 2nd | 1.50% | 1 | $50,000.00 | $62.50 | $625.00 |
| Placer Vineyards 2nd | 3.00% | 13 | $845,000.00 | $2,112.50 | $21,125.00 |
| Preserve at Galleria, LLC | 1.00% | 52 | $0.00 | $0.00 | $127.25 |
| Preserve at Galleria, LLC | 3.00% | 21 | $0.00 | $0.00 | $11,852.26 |
| Rio Rancho Executive Plaza, LLC | 1.00% | 24 | $5,403,000.00 | $4,502.50 | $5,376.74 |
| Rio Rancho Executive Plaza, LLC | 1.50% | 1 | $50,000.00 | $62.50 | $200.84 |
| Rio Rancho Executive Plaza, LLC | 3.00% | 7 | $570,000.00 | $1,425.00 | $6,738.74 |
| Riviera - Homes for America Holdings, L.L.C. | 0.25% | 1 | $0.00 | $0.00 | ($190.52) |
| Riviera - Homes for America Holdings, L.L.C. | 1.00% | 51 | $0.00 | $0.00 | |
| Riviera - Homes for America Holdings, L.L.C. | 3.00% | 38 | $0.00 | $0.00 | $30,190.49 |
| Roam Development Group | 0.25% | 1 | $3,908.16 | $0.81 | ($572.17) |
| Roam Development Group | 1.00% | 190 | $366,342.21 | $305.29 | $305.50 |
| Roam Development Group | 3.00% | 100 | $189,234.22 | $473.09 | $74,029.20 |
| Shamrock Tower, LP | 1.00% | 63 | $5,725,000.00 | $4,770.83 | $106,875.79 |
| Shamrock Tower, LP | 1.50% | 1 | $50,000.00 | $62.50 | $1,198.66 |
| Shamrock Tower, LP | 3.00% | 23 | $4,725,000.00 | $11,812.50 | $227,057.50 |
| Slade Development | 1.00% | 27 | $2,547,000.00 | $2,122.50 | $9,464.23 |
| Slade Development | 3.00% | 13 | $978,000.00 | $2,445.00 | $15,044.04 |
| Southern California Land 2nd | 1.00% | 15 | $845,000.00 | $704.17 | $704.19 |
| Southern California Land 2nd | 3.00% | 18 | $1,955,000.00 | $4,887.50 | $44,505.79 |
| Standard Property Development | 1.00% | 68 | $5,664,000.00 | $4,720.00 | $18,632.65 |
| Standard Property Development | 3.00% | 47 | $3,976,000.00 | $9,940.00 | $61,475.23 |
| SVRB $4,500,000 | 0.25% | 1 | $15,823.13 | $3.30 | ($19.80) |
| SVRB $4,500,000 | 1.00% | 48 | $1,036,414.87 | $863.68 | $2,351.81 |
| SVRB $4,500,000 | 3.00% | 18 | $371,843.50 | $929.61 | $4,334.94 |
| SVRB 2nd $2,325,000 | 1.00% | 21 | $2,190,000.00 | $1,825.00 | $5,475.00 |
| SVRB 2nd $2,325,000 | 3.00% | 4 | $135,000.00 | $337.50 | $4,177.49 |
| Tapia Ranch | 0.25% | 1 | $5,000,000.00 | $1,041.67 | $8,294.47 |
| Tapia Ranch | 1.00% | 137 | $13,256,000.00 | $11,046.67 | $92,552.59 |
| Tapia Ranch | 1.50% | 1 | $50,000.00 | $62.50 | $526.50 |
| Tapia Ranch | 3.00% | 40 | $3,694,000.00 | $9,235.00 | $78,212.20 |
| Ten-Ninety, Ltd./$4,150,000 | 1.00% | 17 | $4,150,000.00 | $3,608.33 | $157,048.12 |
| Ten-Ninety, Ltd./$4,150,000 | 3.00% | 1 | $4,060,000.00 | $3,383.33 | $155,248.12 |
| Ten Ninety, Inc. | 1.00% | 1 | $55,113,781.43 | $45,928.15 | $1,410,879.72 |
| The Gardens Phase II | 3.00% | 1 | $2,500,000.00 | $6,250.00 | $36,666.67 |
| The Gardens, LLC $2,425,000 | 1.00% | 28 | $1,538,557.88 | $1,282.13 | $3,532.93 |
| The Gardens, LLC $2,425,000 | 3.00% | 6 | $386,442.12 | $966.11 | $11,584.05 |
| The Gardens, LLC Timeshare | 0.25% | 2 | $124,563.00 | $25.95 | ($929.91) |
| The Gardens, LLC Timeshare | 1.00% | 37 | $1,793,707.21 | $1,494.76 | $3,036.99 |
| The Gardens, LLC Timeshare | 3.00% | 12 | $1,694,056.81 | $4,235.14 | $44,212.36 |
| University Estates | 3.00% | 1 | $4,775,354.61 | $11,938.39 | $58,414.99 |
| Urban Housing Alliance - 435 Lofts | 1.00% | 71 | $0.00 | $0.00 | $0.00 |
| Urban Housing Alliance - 435 Lofts | 3.00% | 40 | $0.00 | $0.00 | $26,560.47 |
| Wasco Investments | 1.00% | 59 | $4,325,000.00 | $3,604.17 | $43,675.87 |
| Wasco Investments | 1.50% | 1 | $50,000.00 | $62.50 | $742.52 |
| Wasco Investments | 3.00% | 26 | $2,075,000.00 | $5,187.50 | $58,964.94 |

[1] Investment with zero balances are repaid loans.

[2] Accruals with zero balances are no longer accruing service fees.

[3] If there is no amout due, the service fees have already been collected, negative amounts are owed back to the investor.

# Exhibit B

DRAFT

## ALTERNATIVE DISPUTE RESOLUTION AGREEMENT

## I.    PREAMBLE.

A.    *Overview*.  Pursuant to Section E of Article I of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), all objections to Direct Lender Unsecured Claims, objections to the Loan Servicing Fee Schedule, and any other litigation involving Direct Lenders and the Debtors or the USACM Trust (collectively, "ADR Litigation") shall be subject to the structured negotiation and alternative dispute resolution procedures (the "ADR Procedures") provided herein.  This Alternative Dispute Resolution Agreement (the "ADR Agreement") provides for structured negotiation and mediation of any ADR Litigation.

B.    *Defined Terms*.  Capitalized terms used in this ADR Agreement shall have the same meaning as defined in the Plan, except as otherwise set forth herein.

1.    *Objecting Party* means the party or parties that has or have filed an objection to a Direct Lender Unsecured Claim or to the Loan Servicing Fee Schedule, or who have initiated any litigation between Post-Effective Date DTDF and the USACM Trust.

2.    *Answering Party* means the party or parties that hold a Direct Lender Unsecured Claim to which an Objecting Party has filed an objection, that have filed a response regarding a Loan Servicing Fee Schedule to which a Direct Lender has filed an objection, or the Debtors or USACM Trustee to the extent they are defendants in litigation commenced by Direct Lenders.

3.    Hereafter in this ADR Agreement, *Direct Lender Unsecured Claims* means any Direct Lender Unsecured Claims as defined in the Plan that are the subject of objection by an Objecting Party.

4.    *Bankruptcy Court* means the United States Bankruptcy Court with jurisdiction over these Chapter 11 Cases and the Plan pursuant to which this ADR Agreement is being filed.

C.    *Effect of Confirmation Order*.  Entry of the Confirmation Order shall constitute approval and implementation of the terms of this ADR Agreement.  From and after the date of entry of the Confirmation Order, each Objecting Party and Answering Party shall be required to comply with the terms of this ADR Agreement.  Upon appropriate notice and hearing, any Direct Lender Unsecured Claim may be disallowed and expunged with prejudice in the event that a holder thereof fails to comply with the terms and procedures of this ADR Agreement.  Failure to comply with the ADR Procedures may also result in the sustaining of an objection or entry of a default

DRAFT

judgment against the Answering Party.  Failure by an Objecting Party to comply with the ADR Procedures may result in denial of objections or dismissal of litigation. Notwithstanding the foregoing, nothing contained in this ADR Agreement is intended to, nor shall it, alter or amend the injunction contained in section IV(H) of the Plan.

## II.    ADMINISTRATION.

A.    *USACM Trustee*.  The Trustee of the USACM Trust created under the Plan ("USACM Trustee") will be responsible for the administration and oversight of the ADR Procedures.

B.    *Selection of Mediators*.  Subject to the conditions set forth elsewhere herein, the process of mediation set forth herein (the "Mediation Procedure") shall be administered by disinterested and impartial mediators selected by the USACM Trustee. The procedure for selection of mediators will be dependent on the type of ADR Litigation involved.  A mediator selected to hear one type of ADR Litigation may not thereafter be used to hear another type of ADR Litigation involving the same parties unless the mediator has been selected to hear both types of ADR Litigation pursuant to the procedures set forth herein.

1.    *Objections to Direct Lender Unsecured Claims.*  If the ADR Litigation involves an objection to a Direct Lender Unsecured Claim, within 30 days of the initiation of the Mediation Procedure, the USACM Trustee shall provide the names of at least two proposed mediators to the Answering Party that is the holder of a Direct Lender Unsecured Claim and, if the USACM Trustee is not the Objecting Party, to the Objecting Party.  If the USACM Trustee is the Objecting Party, the Answering Party shall select one of the two proposed mediators within 30 days of receipt of the proposed names.  If the USACM Trustee is not the Objecting Party, the Answering Party and the Objecting Party shall inform the USACM Trustee within 30 days if either of the two mediators is unacceptable, and state the reasons therefore.  Based on such response, the USACM Trustee will select one of the two proposed mediators, or if neither are acceptable, will repeat the process with two new proposed mediators within 30 days of the receipt of all responses.  In the event that the Answering Party believes that none of the proposed mediators are disinterested and impartial, such Answering Party may seek an order of the Bankruptcy Court disqualifying such mediators.

2.    *Objections to Loan Servicing Fee Schedule*.  If the ADR Litigation involves an objection to the Loan Servicing Fee Schedule, within 30 days of the initiation of the Mediation Procedure, the USACM Trustee shall provide the names of at least two proposed mediators to the Objecting Party and, if the USACM Trustee is not the Answering Party, to the Answering Party.  If the USACM Trustee is the Answering Party, the Objecting Party shall select one of the two proposed mediators within 30 days of receipt of the proposed names.  If the USACM Trustee is not the Answering Party, the Objecting Party and the Answering Party shall inform the USACM Trustee within 30

DRAFT

days if either of the two mediators is unacceptable, and state the reasons therefore. Based on such response, the USACM Trustee will select one of the two proposed mediators, or if neither are acceptable, will repeat the process with two new proposed mediators within 30 days of the receipt of all responses. In the event that an Objecting Party believes that none of the proposed mediators are disinterested and impartial, such Objecting Party may seek an order of the Bankruptcy Court disqualifying such mediators.

       3.    *Litigation Claims By Direct Lenders Against Debtors or the USACM Trust.* If the ADR Litigation involves litigation by Direct Lenders against Debtors or the USACM Trust, within 30 days of the initiation of the Mediation Procedure, the USACM Trustee shall provide the names of at least two proposed mediators to the Objecting Party and to the Answering Party. If the USACM Trustee is a party, it need only provide the names of the mediators to the opposing party. If the USACM Trustee is a party, the opposing party shall select one of the two proposed mediators within 30 days of receipt of the proposed names. If the USACM Trustee is not a party, the Objecting Party and the Answering Party shall inform the USACM Trustee within 30 days if either of the two mediators is unacceptable, and state the reasons therefore. Based on such response, the USACM Trustee will select one of the two proposed mediators, or if neither are acceptable, will repeat the process with two new proposed mediators within 30 days of the receipt of all responses. In the event that the Objecting Party or Answering Party believes that none of the proposed mediators are disinterested and impartial, such Objecting Party or Answering Party may seek an order of the Bankruptcy Court disqualifying such mediators.

       C.    *Participation in the ADR Procedures.* Within 30 days of filing any objection or complaint commencing ADR Litigation, or within 30 days of the entry of the Confirmation Order, whichever is later, the Objecting Party shall serve upon each Answering Party or their counsel notice of the ADR Procedures, unless the Answering Party is the USACM Trustee or otherwise has sufficient notice of the ADR Procedures. In the case of an Objection to Direct Lender Unsecured Claims, participation in the Offer Exchange Procedure (Section III of this ADR Agreement) and Mediation Procedure (Section V of this ADR Agreement) is mandatory and service of such notice shall constitute initiation of the Mediation Procedure. In the case of Objections to Loan Servicing Fee Schedule or Litigation Claims By Direct Lenders Against Debtors or the USACM Trust, participation in the Offer Exchange Procedure is mandatory; but Mediation Procedure is voluntary and the Mediation Procedure shall be initiated only by the parties' mutual, written consent served on the USACM Trustee. Nothing in the ADR Procedures shall bar any party from seeking relief from a court of competent jurisdiction with respect to Litigation Claims By Direct Lenders Against Debtors or the USACM Trust.

## III.    OFFER EXCHANGE PROCEDURE – DIRECT LENDER UNSECURED CLAIMS

DRAFT

Subject to the procedures set forth herein, if the ADR Litigation involves an objection to a Direct Lender Unsecured Claim, in the first step of the ADR Procedure the Answering Party and the Objecting Party shall exchange offers in a good faith attempt to settle the Direct Lender Unsecured Claim.

A.    *Supporting Information.*.  Each Answering Party that is the holder of a Direct Lender Unsecured Claim shall provide to the Objecting Party within 30 days of receipt of an objection to the Direct Lender Unsecured Claim a proposal for allowance of the Direct Lender Unsecured Claim setting forth: (a) a caption setting forth the name of the Court, the name of the Debtor to which the Claim is directed, the case number and the title of the claim objection to which the response is directed; (b) the name of the Answering Party and a description of the basis for the amount of the claim; (c) a concise statement setting forth the reasons why the claim should not be disallowed, expunged, reduced, or reclassified for the reasons set forth in the claims objection, including, but not limited to, the specific factual and legal bases upon which the Answering Party will rely in opposing the claims objection; (d) all documentation or other evidence of the claim upon which the Answering Party will rely in opposing the Claims Objection to the extent not included with the Proof of Claim previously filed with the Court; (e) identification of each person who can testify in support of the claim (the foregoing is hereafter the "Supporting Information"); (f) to the extent that the claim is contingent or fully or partially unliquidated, the amount that the Answering Party believes would be the allowable amount of such claim upon liquidation of the claim or occurrence of the contingency, as appropriate (the "Proposed Amount"); (g) the address(es) to which the Objecting Party must deliver any reply to the Response, if different from the address(es) presented in the Proof of Claim; and (h) the name, address, and telephone number of the person (which may be the Answering Party or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the claim on behalf of the Answering Party.

B.    *Mandatory Meet and Confer.*  Upon production of the Confirmation of Loss by a Direct Lender, to the extent that a Contested Claim exceeds $100,000 or asserts unliquidated claims, the Objecting Party and Answering Party would be required to hold an in-person meet and confer (an "In-Person Meet and Confer") at a neutral location in Las Vegas, Nevada, or such other location as is reasonably acceptable to the Parties within 20 business days of service to the Objecting Parties of written notice of the Meet and Confer. To the extent that the asserted claim is less than or equal to $100,000 or asserts unliquidated claims and the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such claim shall be limited to a maximum of $100,000, and the Answering Party demonstrates good cause why an In-Person Meet and Confer would be unduly burdensome, the Parties would be required to hold telephonic meet and confer (a "Telephonic Meet and Confer" and, collectively with In-Person Meet and Confers, the "Meet and Confers") within 20 business days of service of the Objecting Parties notice of the meet and confer.  The following representatives of each of the

DRAFT

Objecting Party and Answering Party would be required to attend a Meet and Confer: (A) counsel for each of the parties, except for those proceeding *pro se*, and (B) a person possessing ultimate authority to reconcile, settle, or otherwise resolve the contested claim on behalf of the Objecting Party and Answering Party, respectively.

C.    *Evaluation of Claims*.  Where the USACM Trustee is an Objecting Party, the USACM Trustee shall evaluate the Direct Lender Unsecured Claim based upon all relevant factors under the traditional principles of damages under non-bankruptcy law applicable to each particular Direct Lender Unsecured Claim and any other relevant criteria generally utilized in the settlement of litigation involving similar claims.  For settlement purposes, the USACM Trustee shall review all materials submitted and in such consideration shall not be bound by the rules governing the admission of evidence in courts of law.

D.    *Objecting Party's Response*.  Within 30 days of receipt of the Proposed Amount and Supporting Information, the Objecting Party shall (a) request additional information from the Answering Party; (b) decline the Proposed Amount; (c) accept the Proposed Amount; (d) make an offer to settle the Direct Lender Unsecured Claim; or (e) request mediation of the Direct Lender Unsecured Claim as provided herein.

1.    *Additional Information*.  The Objecting Party may request supplementation or clarification of the Supporting Information to assist in a good faith evaluation of any particular Direct Lender Unsecured Claim.  If the Objecting Party requests such additional information, the time period within which the Objecting Party may otherwise respond to the Proposed Amount shall be extended until 30 days after the supplemental information is provided.

2.    *Decline of the Proposed Amount*.  If the Proposed Amount is declined by the Objecting Party, the Objecting Party shall so advise the holder of the Direct Lender Unsecured Claim or its counsel and shall provide a statement specifying the basis for his or her conclusion.  Upon such decline of the Proposed Amount by the Objecting Party, the Offer Exchange Procedure shall be terminated and the Direct Lender Unsecured Claim shall be immediately subject to the Mediation Procedure as set forth herein.

3.    *Acceptance of Proposed Amount*.  If, upon review of the Proposed Amount and Supporting Information, the Objecting Party accepts the position of the Answering Party and the Proposed Amount, the Objecting Party may accept the Proposed Amount.  In such event, the Proposed Amount shall constitute an Allowed Claim unless another party in interest has also objected to the Direct Lender Unsecured Claim, in which case such Direct Lender Unsecured Claim shall be subject to the mediation procedure set forth in herein, unless each other Objecting Party accepts the Proposed Amount.

DRAFT

4.    *Offer of Settlement*.  After reviewing the Proposed Amount, the Objecting Party may make a written good faith offer of settlement based upon their evaluation of such Direct Lender Unsecured Claim (the "Settlement Offer").  Such offer shall include a brief statement of the basis for such offer and shall be sent to Answering Party or such holder's counsel or designated representative.

E.    *Response of the Holder of a Direct Lender Unsecured Claim*.  Each Answering Party shall have 30 days after receipt of the Settlement Offer within which to respond.  The response to the Settlement Offer shall be in writing, and signed by the Answering Party or an authorized representative.

F.    *Acceptance or Rejection of Offer*.  If the Settlement Offer is accepted, the Direct Lender Unsecured Claim shall become an Allowed Claim unless another party in interest has also objected to the Direct Lender Unsecured Claim, in which case such Direct Lender Unsecured Claim shall be subject to the Mediation Procedure set herein, unless each other Objecting Party accepts the Settlement Offer.  If the Settlement Offer is rejected, the holder of the Direct Lender Unsecured Claim may make a good faith counteroffer simultaneously with rejection of the Settlement Offer (the "Counteroffer"), or terminate the Offer Exchange Procedure and commence the Mediation Procedure as set herein.

G.    *Response to Counteroffer*.  The Objecting Party shall have 15 days after receipt of a Counteroffer within which to respond.  If the Objecting Party accepts the Counteroffer, the Direct Lender Unsecured Claim shall become an Allowed Claim unless another party in interest has also objected to the Direct Lender Unsecured Claim, in which case such Direct Lender Unsecured Claim shall be subject to the Mediation Procedure set forth herein, unless each other Objecting Party accepts the Counteroffer.  If the Counteroffer is affirmatively rejected, there is no further requirement for exchange and consideration of offers of settlement, and the parties shall commence the Mediation Procedure as set forth in herein.  In the event the Objecting Party fails to respond to a Counteroffer within 15 business days, the Counteroffer shall be presumed to be rejected by the Objecting Party.  Nothing herein precludes the Objecting Party from making a counterproposal and the Answering Party responding to such counterproposal.

## IV.    OFFER EXCHANGE PROCEDURE – LOAN SERVICE FEE OR OTHER LITIGATION

Subject to the procedures set forth herein, if the ADR Litigation involves an objection to the Loan Servicing Fee Schedule, or any other litigation between Direct Lender and the Debtors or the USACM Trust other than an objection to a Direct Lender Unsecured Claim, in the first step of the ADR Procedure the Answering Party and the Objecting Party shall provide a concise statement setting forth the basis for their objection to the Loan Service Fee Schedule or affirmative claims and all documentation supporting their position.

DRAFT

      A.    *Answering Party's Response*.  Within 30 days of receipt of the objection or complaint, the Answering Party shall (a) request additional information from the Objecting Party; (b) dispute the Objecting Party's objection or complaint; (c) accept the Objecting Party's objection or complaint; (d) make an offer to settle the ADR Litigation; or (e) request mediation of the ADR Litigation as provided below.

      1.    *Additional Information*.  The Answering Party may request supplementation or clarification of the Supporting Information to assist in a good faith evaluation of any ADR Litigation.  If the Answering Party requests such additional information, the time period within which the Answering Party may otherwise respond to the Objecting Party's objection or complaint shall be extended until 30 days after the supplemental information is provided.

      2.    *Dispute of the Objection or Complaint*.  If the Answering Party disputes the objection or complaint, the Answering Party shall so advise the Objecting Party or its counsel and shall provide a statement specifying the basis for his or her conclusion.  Upon choosing to dispute the Objecting Party's objection or complaint, the Offer Exchange Procedure shall be terminated and the ADR Litigation shall be immediately subject to the Mediation Procedure as set forth below.

      3.    *Acceptance of the Objection or Complaint*.  If the Answering Party accepts the position of the Objecting Party, it may accept the objection or complaint.  In such event, the objection shall be sustained or a default judgment shall be entered in favor of the Objecting Party, subject to the approval of the Bankruptcy Court, unless another Answering Party has refused to accept the position of the Objecting Party, in which case such ADR Litigation shall be subject to the Mediation Procedure set forth below.

      4.    *Offer of Settlement*.  After reviewing the Objecting Party's objection or complaint, the Answering Party may make a written good faith offer of settlement based upon their evaluation of the ADR Litigation (the "ADR Settlement Offer").  Such offer shall include a brief statement of the basis for such offer and shall be sent to Objecting Party or such holder's counsel or designated representative.

      B.    *Response of the Objecting Party*.  Each Objecting Party shall have 30 days after receipt of the ADR Settlement Offer within which to respond.  The response to the ADR Settlement Offer shall be in writing, and signed by the Objecting Party or an authorized representative.

      C.    *Acceptance or Rejection of Offer*.  If the Settlement Offer is accepted, the objection shall be sustained or a default judgment shall be entered in favor of the Objecting Party to the extent of the Settlement Offer, subject to the approval of the Bankruptcy Court, unless other Objecting or Answering Parties have refused to accept the Settlement Offer, in which case such ADR Litigation shall be subject to the Mediation Procedure set forth below.  If the Settlement Offer is rejected, the Objecting

DRAFT

Party may make a good faith counteroffer simultaneously with rejection of the Settlement Offer (the "ADR Counteroffer"), or terminate the Offer Exchange Procedure and commence the Mediation Procedure as set forth below.

        D.     *Response to Counteroffer.*  The Answering Party shall have 15 days after receipt of a Counteroffer within which to respond.  If the Answering Party accepts the Counteroffer, the objection shall be sustained or a default judgment shall be entered in favor of the Objecting Party to the extent of the Counteroffer, subject to the approval of the Bankruptcy Court, unless other Objecting or Answering Parties have refused to accept the Counteroffer, in which case such ADR Litigation shall be subject to the Mediation Procedure set forth below.  If the Counteroffer is affirmatively rejected, there is no further requirement for exchange and consideration of offers of settlement, and the parties shall commence the Mediation Procedure as set forth below.  In the event the Answering Party fails to respond to a Counteroffer within 15 business days, the Counteroffer shall be presumed to be rejected by the Answering Party.  Nothing herein precludes the Answering Party from making a counterproposal and the Objecting Party responding to such counterproposal.

## V.    MEDIATION PROCEDURE.

        Upon termination of the Offer Exchange Procedure, as provided in above, or earlier upon consent of all parties, ADR Litigation shall be subject to the Mediation Procedure set forth in this Article V.  The USACM Trustee shall refer the ADR Litigation to a mediator selected as provided in Article II.B and II.C of these ADR Procedures.

        A.     *Mandatory Mediation of Direct Lender Unsecured Claims.*  Failure of the Offer Exchange Procedures to result in a compromise shall result in mandatory mediation in the case of Direct Lender Unsecured Claims.  However, failure of the Offer Exchange Program to resolve objections to the Loan Servicing Fee Schedule and Direct Lender Litigation Claims will result in mediation only if both the Objecting Party and Answering Party consent to mediation.  To the extent either the Objecting Party or Answering Party do not consent to mediation of an unresolved objection to the Loan Service Fee Schedule and Direct Lender Litigation Claims such dispute will immediately be returned to the Bankruptcy Court or other court of competent jurisdiction for resolution.

        B.     *Mediator.*  No person shall serve as a mediator, unless that person has been trained in mediation in a recognized program such as those of the American Arbitration Association or has equivalent practical experience in the field of mediation or is otherwise agreeable to the Objecting Party and the Answering Party.  Any person who serves as a mediator shall be an impartial, neutral person.  No person who has any financial or personal interest in the proceedings or, except where agreed by the parties, in any related matters, shall serve as a mediator.  Upon appointment, the prospective mediator shall disclose any circumstances likely to create a reasonable inference of bias or prevent a prompt conference with the parties.  The mediation shall be conducted in the

DRAFT

jurisdiction in Las Vegas, Nevada, or at such location as is mutually agreed by the Objecting Party and Answering Party.

C.    *Conduct of Mediation*.  ADR Litigation shall be handled by the mediator in the order received, to the extent practicable.  Any party may be represented by legal counsel, although the participation of legal counsel shall not be required for the conduct of the mediation.  The mediator shall meet with the parties and/or their respective legal representatives, individually and jointly for a conference or series of conferences as determined by the mediator.  The Objecting Party and the Answering Party, and/or their respective authorized representatives, must be physically present at the conference unless excused by the mediator.  Such conference shall be in the nature of a settlement conference.  The mediator may review the Direct Lender Unsecured Claims and objections, Loan Servicing Fee Schedule and objections, and documents filed initiating or responding to litigation between Direct Lenders and the Debtors and the USACM Trust, Supporting Information and the positions of the parties, the prior negotiations between the parties, all correspondence between the parties during the Offer Exchange Procedure, and such additional information as the parties may wish to submit as to a fair and equitable settlement.  At least 5 days prior to the initial mediation conference, the Objecting Party and the Answering Party shall each submit to the mediator a concise confidential statement outlining each party's position on settlement, including a position regarding settlement value in ADR Litigation involving Direct Lender Unsecured Claims.  All statements outlining each party's position on settlement shall be deemed to be privileged as compromise and settlement negotiations not subject to discovery and which shall not be admissible in any Court.

D.    *Mediated Settlement*.  The mediator will work with all parties to the contested matter arising from the ADR Claim in an effort to reach an acceptable, reasonable offer of settlement.  The mediator shall not have the authority to impose a settlement upon the parties.  Unless otherwise agreed by the Objecting Party and the Answering Party, the mediation process will terminate not later than 120 days after the date of the appointment of the mediator, or such later date as may be mutually agreed upon by the parties.  A settlement reached pursuant to mediation shall be binding, subject to approval of such compromise by the Bankruptcy Court, if required.  In ADR Litigation involving Direct Lender Unsecured Claims, a settlement reached through mediation shall be deemed an Allowed Claim.

E.    *Mediation Expenses*.  Each side shall pay its own attorneys fees and costs; fees and costs of mediation in ADR Litigation involving Direct Lender Unsecured Claims shall be paid by the USACM Trust; fees and costs of mediation in all other ADR Litigation shall be split evenly between the Objecting Party and Answering Party.

## VI.    FAILURE OF MEDIATION.

DRAFT

If the Mediation Procedure fails to resolve the ADR Litigation, the ADR Litigation will immediately be returned to the Bankruptcy Court or other court of competent jurisdiction for resolution.

## VII.  PAYMENT OF DIRECT LENDER UNSECURED CLAIMS.

If any Direct Lender Unsecured Claim shall become an Allowed Claim during the ADR Procedures, such Allowed Claim shall be treated on the terms set forth in the Plan.

## VIII.  CONFIDENTIALITY PROVISIONS.

A.      *Protection of Information Disclosed in Offer Exchange Procedures or Mediation Procedures*.  The parties, the mediator and the participants in mediation are prohibited from divulging any oral or written information disclosed by the parties or by witnesses in the course of the Offer Exchange Procedures or Mediation Procedures provided under this ADR Agreement.  No person may rely on or introduce as evidence in any arbitral, judicial, or other proceedings, evidence pertaining to any aspect of the Offer Exchange Procedures or mediation Procedures provided under this ADR Agreement, including but not limited to: (1) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (2) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (3) proposals made or views expressed by the mediator; (4) statements or admissions made by a party in the course of the Offer Exchange Procedures or Mediation Procedures provided under this ADR Agreement; and (5) documents prepared for the purpose of, in the course of, or pursuant to the Offer Exchange Procedures or Mediation Procedures provided under this ADR Agreement.  In addition, without limiting the foregoing, Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule, common law or judicial precedent relating to the privileged nature of settlement discussions, mediation or other alternative dispute resolution procedure shall apply. Information otherwise discoverable or admissible in evidence, however, shall not become exempt from discovery or inadmissible in evidence merely because it has been used by a party in the course of the Offer Exchange Procedures or Mediation Procedures provided under this ADR Agreement.  These provisions shall not preclude a party, its counsel, or the mediator from responding in confidence to appropriately conducted inquiries or surveys concerning the use of ADR Procedures generally.

B.      *Discovery from Mediator*.  Any mediator appointed under the Mediation Procedures provided under this ADR Agreement shall not be compelled to disclose to the court or to any person outside the mediation conference any of the records, reports, summaries, notes, communications, or other documents received or made by a mediator while serving in such capacity.  The mediator shall not testify or be compelled to testify in regard to the mediation in connection with any arbitral, judicial, or other proceeding. The mediator shall not be a necessary party in any proceeding relating to the mediation.

DRAFT

Nothing contained in this subsection shall prevent the mediator from reporting the status, but not the substance, of the mediation effort to the Bankruptcy Court if necessary.

      C.    *Protection of Proprietary Information*.  The parties, the mediator, and all mediation participants shall protect confidential or proprietary information during and after the ADR Procedure.

      D.    *Preservation of Privileges*.  The disclosure by a party of privileged information to the mediator or to another party shall not operate to waive or otherwise adversely affect the privileged nature of the information.

      E.    *Discovery*.  In order to avoid undue expense or delay, any materials, testimony, or other evidence submitted by either party during the course of the ADR Procedure, and of the kind normally available in discovery proceedings, may, upon agreement of the parties, be treated as if submitted in pretrial discovery proceedings.

Exhibit C

# USA COMMERCIAL MORTGAGE

### As Loan Servicing Agent for the Loans Listed Below

For:    Vesting Name
       Address
       Address

The records of USACM show the following Loan Servicing Agreements for you and the corresponding Service Fee percentage (s) and monthly servicing fees on such loan (s). Pursuant to the terms of the Plan of Reorganization, this is the amount of the monthly service fee (s) to be charged against your account from April 2006 forward.

To the extent you disagree with the Service Fee percentage (s) and/or monthly servicing fees set forth below, or to the extent you believe they are inconsistent with your Loan Service Agreement, you must object pursuant to the terms of the Plan and Alternative Dispute Resolution Agreement.

| Loan | Percentage | Monthly Service Fee |
|------|------------|---------------------|
| 3685 San Fernando Road Partners | 1% | $41.67 |