GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
ERIC J. VAN, ESQ.
Nevada Bar No. 10259
E-mail: evan@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-Filed On December 4, 2006

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                                Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                                Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                                Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                                                                Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                                                                Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br><br><br><br><br><br>Date: December 19, 2006<br>Time: 10:00 a.m. |

## OFFICIAL COMMITTEE OF DIRECT LENDERS' OPPOSITION TO MOTION FOR APPROVAL OF PROCEDURES REGARDING ASSIGNMENTS OF DIRECT LENDERS' INTERESTS IN LOANS

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Official Committee of Direct Lenders"), by and through its counsel, the law firm of Gordon & Silver, Ltd. ("G&S"), hereby submits its Opposition (the

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

"Opposition") to the <u>Motion for Approval of Procedures Regarding Assignments of Direct Lenders' Interests in Loans</u> (the "Motion") filed by USA Commercial Mortgage Company ("USACM").

This Opposition is made and based on the points and authorities which follow, the papers and pleadings contained in the Court's file, judicial notice of which is hereby requested.

WHEREFORE, the Official Committee of Direct Lenders respectfully requests that the Motion be denied.

DATED this 4th day of December, 2006.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
GREGORY M. GARMAN, ESQ.
ERIC J. VAN, ESQ.
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

# POINTS AND AUTHORITIES

## I.
## STATEMENT OF FACTS

1.  USACM, along with USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC (collectively, the "Debtors"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") on April 13, 2006 (the "Petition Date"). The cases are being jointly administered by the Court pursuant to an order entered June 9, 2006. See Motion, Docket No. 1805, at ¶ 1.

2.  Prior to the Petition Date, USACM had primarily engaged in the business of originating, brokering, and servicing commercial real estate loans between various borrowers and lenders (the "Direct Lenders"). USACM serviced loans for approximately 3,600 Direct Lenders, most of which owned fractional interests in loans and most of which invested in

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

2

multiple loans. See Motion, at ¶ 2-3.

3. USACM's servicing agreements (the "Servicing Agreements") authorized USACM to retain an annual servicing fee of either one percent or three percent on the Direct Lenders' loans, depending on which Servicing Agreement was executed. USACM currently collects only a one percent servicing fee from each loan payment received post-petition, because of USACM's inability to properly match the correct servicing fee on each Servicing Agreement to the corresponding Direct Lender. See Debtors' Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds, Docket No. 847, at 3.

4. USACM maintained a collection account into which it deposited payments from borrowers. Occasionally, USACM caused payments to be made to Direct Lenders as interest on loans to Direct Lenders when the borrowers on those loans had failed to make the interest payments in time. The Court has ordered that these early repayments ("Prepaid Interest") may be netted and held back against money that may be owed to an individual Direct Lender on other loans in that Direct Lender's portfolio. See Motion, at ¶ 4-5.

5. Apparently, since the Petition Date, certain third party institutional investors (the "Purchasers") and various Direct Lenders have engaged in transfers (the "Transfers") in which the Direct Lenders have conveyed their interests in loans to Purchasers. The Purchasers may have purchased all, none, or some of a Direct Lender's loans on which interest payments were paid with Prepaid Interest. These Purchasers have requested that USACM recognize the assignments. See Motion, at ¶ 8-9.

6. On November 16, 2006, USACM filed the Motion. In the Motion, USACM claimed that it risks losing the right to net Prepaid Interest across each one of the initial Direct Lenders' loans. USACM asserted that the handling and processing of assignments created "significant expenses," and therefore requested that the Court approve certain rules and procedures (the "Procedures") to apply to all transfers of interests in loans serviced by USACM. See Motion, at ¶ 10-12.

7. The Procedures require that if any Purchaser wishes to obtain any part of a Direct Lender's interests, they must purchase all of the Direct Lender's interests, or agree to be subject

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

3

to holdback on any loan transferred to the Purchaser up to the amount of Prepaid Interest on the Direct Lender's other loans. The Purchaser would also have to allow holdbacks on the loan interests it acquired. In other words, USACM is attempting to avoid the situation where a Direct Lender transfers to a third party an interest in a performing loan which will frustrate the ability of USACM to net, against that performing loan, money due for Prepaid Interest on another of that Direct Lender's loans. See Motion, at Proposed Rules and Procedures 1.1.

8. In order to provide compensation for these unstated and unquantified significant expenses, the Procedures require Purchasers to execute a Servicing Agreement with USACM, containing a 3% loan servicing fee. The Procedures further allow USACM to hold back distributions on Purchaser-held loans until the Procedures are complied with, and contain other provisions favorable to USACM. See Motion, at Proposed Rules and Procedures 1.3-1.5.

9. The Procedures also contain similar terms for transfers to "Related Direct Lenders," defined as beneficiaries of deceased Direct Lenders, recipients of transfers through divorce or domestic support order, or separate account numbers belonging to the same client ID. The Procedures require that a Related Direct Lender receive all of the Direct Lender's interests, or agree to be subject to holdback on any loan transferred to the Related Direct Lender up to the amount of Prepaid Interest on the Direct Lender's other loans. The Related Direct Lender would also have to allow holdbacks on the loan interests it acquired. The Procedures additionally require that any Direct Lender requesting such a transfer execute a Servicing Agreement with USACM, containing a 3% loan servicing fee. See Motion, at Proposed Rules and Procedures 2.1-2.5.

10. USACM defended these Procedures by claiming that the Court holds the power to require the Procedures under Section 105(a) of the Code, and that by approving the Motion, the Court would maintain the integrity of the estate's assets for the benefit of the estate's creditors. USACM claimed that the sale of loan interests to the Purchasers might violate the Code's prohibitions against acts to obtain property or control of property of the estate, pursuant to 11 U.S.C. § 362(a)(3). See Motion, at 7.

## II.
## LEGAL ARGUMENT

### A. Introduction

The Motion should be denied because the Procedures proposed by USACM cannot be authorized. Federal Rule of Bankruptcy Procedure ("Rule") 3001(e) and its corresponding case law indicates that the Direct Lenders may freely transfer their loan interests without restriction by USACM. USACM does not even have standing to interfere with the Transfers. Furthermore, there is no section in the Bankruptcy Code authorizing approval of the Procedures. In fact, the implementation of the Procedures would conflict with both the Code as an impermissible modification of executory contracts and non-bankruptcy law regarding the creation, modification, and assignment of contracts.

USACM argues that because the Transfers may involve Direct Lenders who have received Prepaid Interest on some loans, they will be unable to net the Prepaid Interest and hold back payments on the Direct Lenders' other loans. For example, if a Direct Lender transfers its interest in a loan on which Prepaid Interest was made, USACM fears that it will be unable to net that Prepaid Interest against the Purchaser, or against the Direct Lender if the Direct Lender has sold all of its loan interests. Conversely, if a Direct Lender transfers a loan interest on which Prepaid Interest was not made, USACM fears it will have one less loan in the Direct Lender's portfolio through which USACM can net Prepaid Interest against the Direct Lender.

However, while the Transfers may affect USACM's ability to net Prepaid Interest and hold back payments equivalent to that Prepaid Interest, the Court cannot approve Procedures that deprive the Direct Lenders of their right to freely transfer their interests, especially when such Procedures are advocated without basis as to either the movant's standing or its entitlement to police the Transfers. Netting and holdbacks are merely a mechanism through which the USACM estate can recover those funds that have been paid out in advance from the collection account in the form of Prepaid Interest. If the Transfers have any effect on USACM's netting scheme, USACM still has other methods through which it may recover Prepaid Interest for the estate, and should not be allowed to continue netting by imposing Procedures on the Direct Lenders and third parties that conflict with the Code, the Rules, and non-bankruptcy law.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

5

Finally, without any evidentiary support whatsoever, USACM asserts that this transfer process will cause it to incur "significant" expenses.[1] What USACM fails to disclose is that it is seeking to unilaterally change the provisions of existing Servicing Agreements which provide for transfers of beneficial interests in loans and the opportunity for USACM to collect a fee in this regard. See the Form of Servicing Agreement at ¶ 5, attached hereto as Exhibit "1".

**B.    The Direct Lenders' Interests May Be Freely Transferred Without USACM Interference Pursuant to FRBP 3001(e)**

Rule 3001(e) governs the transfer of claims. While Rule 3001(e) itself does not define the court's role in claim transfers, the Advisory Committee Note in the 1991 Amendments to the Rule provides the following:

> Subdivision (e) is amended to limit the court's role to the adjudication of disputes regarding transfers of claims. . . . If a claim has been transferred other than for security after a proof of claim has been filed, the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor. In that event, the clerk should note the transfer without the need for court approval. If a timely objection is filed, the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law. . . .

Fed. R. Bankr. P. 3001(e) advisory committee's note.

In light of this statement, courts have determined that the Code does not govern the rights of creditors to transfer nonestate property, and that creditors are generally free to do whatever they wish with any receipts from bankruptcy. Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1313 (1st Cir. 1993). If a right to receive payment is freely transferable and assignable under state law without debtor consent and without affecting the debtor's obligations, the transfer is valid. Id. An exception will only apply in circumstances such as bad faith, breach of fiduciary duty, or fraud. Id. at 1314.

In short, the Bankruptcy Courts' ability to police the transfer of claims has been severely restricted by the 1991 Amendments. See Resurgent Capital Services v. Burnett (In re Burnett), 306 B.R. 313, 319 (B.A.P. 9th Cir. 2004); In re Olson, 120 F.3d 98, 102 (8th Cir. 1997); 9 Collier on Bankruptcy ¶ 3001.08[1] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed.,

---

[1] While USACM cites to comments of this Court on October 19, 2006 as the basis for this additional request, something more than this Court's observations are necessary to establish the need for and the extent of the requested relief.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

6

2006).

Based on the foregoing, the Court should not interfere with any attempts by the Direct Lenders to sell their interests in loans, especially when the Servicing Agreements to which USACM is a party provide for this process and the Direct Lenders and Purchasers have complied with these terms. Rule 3001(e) applies to the Transfers by the Direct Lenders, because the Direct Lenders hold "claims," as defined under Section 101(5) of the Code, through their loan interests. Because Direct Lenders' loan interests are not property of the estate, the Court cannot govern the Direct Lenders' sale of their loan interests, except as may otherwise be provided in the applicable Servicing Agreement. There are also no extenuating circumstances, such as fraud, bad faith, or breach of fiduciary duty, involved in the Transfers.

Furthermore, the transfers are valid under nonbankruptcy law. In Nevada, a party may assign rights created by a contract, and the assignment is effective upon notice to the obligor. See Commercial Credit Corp. v. Matthews, 77 Nev. 377, 391, 365 P.2d 303, 310 (Nev. 1961); Wood v. Chicago Title Agency of Las Vegas, Inc., 109 Nev. 70, 72, 847 P.2d 738, 739-40 (Nev. 1993).

Therefore, based on recent interpretations of Rule 3001(e) and the Advisory Committee Note, the Court should not be able to approve the Motion and effectively defeat the Direct Lenders' ability to freely engage in Transfers, either prospectively or retroactively.

C. **USACM Has No Standing to Intervene in the Direct Lenders' Transfers**

Rule 3001(e) requires court intervention in claim transfers only if the transferor objects. Olson, 120 F.3d at 102; In re Alliance Aerospace, LLC, 280 B.R. 752, 755 (Bankr. M.D. Ga. 2002); see 9 Collier on Bankruptcy, supra, at ¶ 3001.08[1]. Neither the debtor nor other third parties have standing to object to a transfer of a claim. Nova Info. Sys., Inc. v. Premier Operations, Ltd. (In re Premier Operations), 294 B.R. 213, 219 (S.D.N.Y. 2003); In re Lynn, 285 B.R. 858, 859 (Bankr. S.D.N.Y. 2002).

Because a court may only intervene in a claim transfer if a transferor objects, the Court here cannot approve USACM's proposed court order. USACM is a third party to the Transfers. USACM's Motion for approval of the Procedures is, in effect, an objection to those Transfers

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

7

already made and those that are pending because it attempts to overturn Transfers unless made on the terms desired by USACM. Thus, USACM lacks standing to file its Motion and intervene in the Direct Lenders' rights to sell their loan interests to the Purchasers.

### D. There Is No Substantive Right Under the Code Through Which the Court May Invoke Its Section 105(a) Powers

USACM's argument that the Court's Section 105(a) powers allow it to set the Procedures is invalid because there is no right pursuant to which the Court may invoke Section 105(a).

Whatever equitable powers remain in the Bankruptcy Courts must and can only be exercised within the confines of the Code. SPM, 984 F.2d at 1311. A court cannot deprive creditors of rights or remedies available to them under the Code, and cannot create substantive rights otherwise unavailable under the Code or expand contractual obligations of parties. Id.

If USACM cannot find a statutory section in the Code granting it the substantive right to have the Procedures enforced, the Court may not use its Section 105(a) powers to enforce the Procedures. In the Motion, USACM represented that Section 362(a)(3) might provide such a substantive right, as such section prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (2006). In this instance, USACM is seeking Court approval for procedures which are directly contrary to and inconsistent with existing and controlling Servicing Agreements.

The Transfers are not acts to take property or control of property from the estate; they are primarily acts to sell loan interests to the Purchasers. Additionally, the fact that the Transfers might impact the ability to offset Prepaid Interest against other loan payments due to the Direct Lenders does not impact the estate because the offset and holdback of Prepaid Interest is only a mechanism to ensure properly accounted payments of the Direct Lenders' loans; the fact that some holdbacks may be disrupted does not affect the estate's property as a whole. While the Transfers might increase the difficulty of netting Prepaid Interest or even make it impossible for certain Direct Lenders, USACM still may pursue other options to offset the Prepaid Interest. Finally, the unsubstantiated increased cost to USACM of administering loan payments in light of the Transfers is irrelevant to Section 362(a)(3); while increased costs might expend property of the estate, they do not cause any party to obtain property or control of property of the estate.

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

100933-001/439896_2.doc

8

USACM did not state that any other sections in the Code provide substantive rights allowing the Court to use its Section 105(a) powers. This is because no such substantive rights exist, as the Direct Lenders have the right to freely transfer their loan interests to the Purchasers as they wish. Therefore, USACM's argument fails and the Motion has no basis for approval.

### E. The Procedures Are an Invalid Modification of Existing Executory Contracts

Section 365(a) of the Code states that a debtor "may assume or reject" any executory contract. 11 U.S.C. § 365(a). However, an executory contract may not be assumed in part and rejected in part. See Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996); Vilas & Sommer Inc. v. Mahony (In the Matter of SteelShip Corp.), 576 F.2d 128, 133 (8th Cir. 1978).

Here, each Direct Lender initially entered into a Servicing Agreement with USACM through which a loan servicing fee was set. Now, USACM is attempting to force Direct Lenders who request Transfers to execute a new Servicing Agreement with a 3% loan servicing fee. Some Direct Lenders originally entered into Servicing Agreements with 1% loan servicing fees; furthermore, at this time USACM is incapable of determining which Direct Lenders are being charged 1% loan servicing fees. Therefore, any new Servicing Agreement imposed on a Direct Lender is potentially an adjustment of the previous loan servicing fee withheld by USACM. The new Servicing Agreements are essentially a modification of the Direct Lenders' original Servicing Agreements, and are barred by Section 365(a) of the Code.

### F. The Procedures Are Invalid Under Non-bankruptcy Law

The Procedures are also invalid pursuant to non-bankruptcy law on a number of grounds.

#### 1. Interference with Assignment of Contracts

In Nevada, a party may assign rights created by a contract, and the assignment is effective upon notice to the obligor. See Commercial Credit Corp., 77 Nev. at 391, 365 P.2d at 310; Wood, 109 Nev. at 72, 847 P.2d at 739-40.

The Direct Lenders' Transfers are valid assignments of their contractual rights to the loan interests serviced by USACM. Because assignments may be freely made without consent of the obligor, USACM should not be allowed to interfere with the Transfers.

### 2. Invalid Modification of Existing Contracts

In Nevada, parties to an existing contract may subsequently enter into a valid agreement to modify the contract; however, for the subsequent agreement to be valid, it must be made with the mutual consent of the parties. Holland v. Crummer Corp., 78 Nev. 1, 7, 368 P.2d 63, 66 (Nev. 1962).

Here, the Direct Lenders have not consented to any modification of their Servicing Agreements. Any attempt by USACM to force a Servicing Agreement with a 3% loan servicing fee upon a Direct Lender, when the Servicing Agreement previously had a 1% loan servicing fee, is essentially a modification to the existing Servicing Agreement. To force the modification upon any transfer of claims by the Direct Lenders is therefore a unilateral modification that is barred by Nevada law.

Furthermore, the Procedures constitute a modification of any contracts to engage in Transfers already made between Direct Lenders and Purchasers. The Procedures attempt to effectively impose a requirement that the Purchasers buy all Direct Lender interests or allow netting on those loans the Purchasers do buy, essentially setting additional terms in the Transfers between the Direct Lenders and Purchasers. This is a modification without mutual consent of the parties to the contract, and is barred by Nevada law.

### 3. Imposition of Unilateral Contracts Without Consideration

Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration. May v. Anderson, 121 Nev. 668, 119 P.3d 1254, 1257 (Nev. 2005).

The Procedures attempt to require Purchasers to execute Servicing Agreements with USACM. Particularly where Purchasers have already engaged in Transfers with Direct Lenders, the imposition of the Procedures would force the Servicing Agreements upon the Purchasers, where the Purchasers have not accepted a contract offer, have not reached mutual assent regarding the Service Agreement, and have not received any consideration. Therefore, any additional contracts imposed by the Procedures are invalid under Nevada law.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

10

# III.
# CONCLUSION

WHEREFORE, the Official Committee of Direct Lenders respectfully requests the Motion be denied.

DATED this 4th day of December, 2006.

GORDON & SILVER, LTD.

By: /s/ Gerald M. Gordon
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
ERIC J. VAN, ESQ.
Attorneys for the Official Committee
of Holders of Executory Contract Rights
through USA Commercial Mortgage Company

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/439896_2.doc

11

# EXHIBIT 1

# LOAN SERVICING AGREEMENT



This Loan Servicing Agreement ("Agreement") is made as of the 18 day of February, 2004, between USA Commercial Mortgage Company ("USA") and _____ ("Lender").

**RECITALS**

A.  USA is a mortgage broker and loan servicer in Clark County, Nevada.

B.  Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans are arranged by USA and are secured by interests in real and/or personal property.

C.  Lender wishes to retain the services of USA in connection with making and servicing a loan or loans ("Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>Services in Connection with Arranging the Loans</u>. USA will perform the following services in connection with arranging each Loan:

    (a)  Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b) below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

    (b)  Obtain a deed of trust, assignment of rents and security agreement executed by Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be properly recorded.

    (c)  Obtain one or more personal or corporate guaranties, if applicable and as determined by USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used by USA.

    (d)  If USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

    (e)  Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the initial principal amount of the note and showing as exceptions only those items approved by USA and its counsel.

    (f)  Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee.

v.1 Rev. 8/04

(g)     Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

(h)     Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

(i)     Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest.

(j)     All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request. Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

(k)     Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

2.     <u>Services of USA in Connection with Servicing the Loans</u>. Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

(a)     Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage. USA will hold for the Lender's account such policies and renewals thereof.

(b)     Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts. Those records will be available for review by the Lender during regular business hours at USA's corporate office.

(c)     Until the total amount due under each note is paid in full:

(i)     Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

(ii)     In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

v.1 Rev. 8/04

(iii)    In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

(iv)    In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

(d)    Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

(e)    Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. Notwithstanding the foregoing or any other provision contained herein, USA may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

3.    <u>Rights of Lender if USA Fails to Act</u>.    Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

(a)    the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and
(b)    the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

4.    <u>Legal Proceedings</u>.    USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA

v.1 Rev. 8/04

3

may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure; provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5. **Compensation to USA for Loan Servicing.** Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed three percent (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) and default interest collected from the Borrower pursuant to the terms of the Note. Notwithstanding the foregoing, it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6. **USA's Right to Delegate.** Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7. **No Legal Advice.** Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter.

8. **Termination.** Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

9. **Lender's Registration.** Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

v.1 Rev. 8/04

10. <u>Integration Clause</u>. This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof).

11. <u>Limited Power of Attorney</u>. With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan. Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder. No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder. All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12. <u>Notices</u>. All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

    If to USA:    USA Commercial Mortgage Company
                    4484 S. Pecos Road
                    Las Vegas, Nevada 89121-5030
                    Attention:

If to Lender:


                    Attention:

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

13. <u>Governing Law.</u> This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

14. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

v.1 Rev. 8/04