**ELECTRONICALLY FILED**
**December 5, 2006**

| | |
|---|---|
| STUTMAN, TREISTER & GLATT, P.C. | SHEA & CARLYON, LTD. |
| FRANK A. MEROLA | JAMES PATRICK SHEA |
| (CA State Bar No. 136934) | (Nevada State Bar No. 000405) |
| EVE H. KARASIK | CANDACE C. CARLYON, ESQ. |
| (CA State Bar No. 155356), Members of | (Nevada State Bar No. 002666 |
| 1901 Avenue of the Stars, 12th Floor | 233 South Fourth Street, Second Floor |
| Los Angeles, CA 90067 | Las Vegas, Nevada 89101 |
| Telephone: (310) 228-5600 | Telephone: (702) 471-7432 |
| E-mail:     fmerola@stutman.com | E-mail:     jshea@sheacarlyon.com |
|                  ekarasik@stutman.com |                  ccarlyon@sheacarlyon.com |

Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY<br>         Debtor | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>         Debtor | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>         Debtor | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>         Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>         Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br>☒ All Debtors<br>☐ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☐ USA First Trust Deed Fund, LLC | Date: December 7, 2006<br>Time: 9:30 a.m.<br>Place: Courtroom #1 |

**REPLY BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC, THE DIRECT LENDER COMMITTEE, OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, AND THE DEBTORS TO THE LIMITED OPPOSITION TO PROPOSED SALE AND AUCTION OF CERTAIN ASSETS (AFFECTS ALL DEBTORS)**

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

405871v3

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee"), the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Direct Lender Committee"), the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "DTDF Committee"), and USA Commercial Mortgage Company ("USA Mortgage"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("USA Diversified"), and USA Capital First Trust Deed Fund, LLC ("USA First" and, collectively with USA Mortgage, USA Securities, USA Realty, and USA Diversified, the "Debtors"), by and through their respective undersigned counsel, hereby file this reply (the "Reply") to the "Limited Opposition to Proposed Sale and Auction of Certain Assets" (the "Opposition")[1] filed on behalf of Donna Cangelosi ("Cangelosi").

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

---

[1]    Terms not otherwise defined herein shall have the same meanings ascribed to them in the Opposition.

405871v3

This Reply is made and based upon the Points and Authorities attached hereto, the pleadings, papers and records on file in this action, and any evidence and oral argument to be considered at the time of the hearing of the Opposition.

DATED this 5th day of December, 2006.

| STUTMAN TREISTER & GLATT, P.C. and SHEA & CARLYON, LTD. | RAY QUINNEY & NEBEKER P.C. and SCHWARTZER & MCPHERSON LAW FIRM |
|---|---|
| By: /s/ Eve H. Karasik<br>FRANK A. MEROLA, ESQ.<br>EVE H. KARASIK, ESQ.<br>CANDACE C. CARLYON, ESQ.<br>*Counsel for the Official Committee of Equity Security Holders of USA First Trust Deed Fund LLC* | By: /s/ Lenard E. Schwartzer<br>ANNETTE W. JARVIS, ESQ.<br>LENARD E. SCHWARTZER, ESQ.<br>JEANETTE E. MCPHERSON, ESQ.<br>*Counsel for the Debtors and Debtors in Possession* |
| ORRICK, HERRINGTON & SUTCLIFFE LLP and BECKLEY SINGLETON, CHTD. | GORDON & SILVER, LTD. |
| By: /s/ Marc A. Levinson<br>MARC A. LEVINSON, ESQ.<br>LYNN TRINKA ERNCE, ESQ.<br>BRETT A. AXELROD, ESQ.<br>ANNE M. LORADITCH, ESQ.<br>*Counsel for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC* | By: /s/ Gregory E. Garman<br>GERALD M. GORDON, ESQ.<br>GREGORY E. GARMAN, ESQ.<br>(NV Bar No. 6654)<br>*Counsel for the Official Committee of Holders of Executory Contract Rights of USA Commercial Mortgage Company* |

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

405871v3

Page 3 of 8

## POINTS AND AUTHORITIES

### A.  The Opposition is Both Too Late and Premature.

Despite the fact that the APA was initially filed with the Court on October 19, 2006 and subsequently amended several times to address concerns raised by the Court, Cangelosi has waited until the eve of the auction to make her complaints known. Cangelosi should have raised her concerns either at the hearing to approve the auction process, which included Court approval of certain bidding procedures (the "Bid Procedures") or at the hearing to approve the Debtors' disclosure statement (the "Disclosure Statement"), but chose not to do so (despite attendance at both hearings). Further, not only is Cangelosi untimely in raising her issues now, she has also selected the wrong forum. The auction, <u>not</u> a hearing on any contested matter, is scheduled for Thursday, December 7, 2006. Pursuant to the Bid Procedures, the Court will conduct the auction and will only consider disputes as they relate to the enforcement of the Bid Procedures – such as the qualifications of a Qualified Bidder (as defined in the Bid Procedures) and the determination of the Successful Bidder (as defined in the Bid Procedures). It is clear that the Opposition does not raise issues relating to the selection of the highest and best bidder at the auction. To the extent the Opposition opposes the overall sale, the Opposition should be considered at the confirmation hearing when the sale will be before the Court. Substantive issues regarding the terms and conditions and merits of the sale are not properly before the Court and should not be considered at this time.

### B.  Pursuant to the Parties' Agreement and the Court's Approval as to Process the Sale is Contemplated to Take Place Within the Context of a Confirmed Plan.

Contrary to Cangelosi's assertion, the APA specifically provides that the sale will take place within the context of a confirmed plan of reorganization. <u>See</u> APA, §1.1 (definition of Sale Approval Order provides that it "is presently contemplated to be the Order confirming the

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

Page 4 of 8

405871v3

Plan"). After much consideration, the Debtors, with the support of the Committees, and SPCP agreed that the proposed sale would be consummated through the Debtors' Plan.[2]

While Cangelosi may not like this structure, as she is well-aware, this structure was part and parcel of an overall negotiation. Cangelosi cannot come in at the "eleventh-hour" and complain about the process that has already been put before and approved by the Court, as well as numerous parties in these cases. As to the sale structure and auction process, these have already been approved by the Court, subject only to the receipt of potentially higher and better bids. As to the Plan itself, the Disclosure Statement has been approved after appropriate time for objections, has been transmitted to thousands of creditors and investors, and voting is underway. The time for the objection to the sale process has since passed and the time for consideration of objection to the sale on its merits has not yet arrived.

### C. The Plan and the APA Clearly Address Servicing Fee Issues.

Pursuant to the APA and the Plan, the Servicing Agreements ("LSAs") are being transferred to the Successful Bidder. As provided in the Loan Servicing Fee Schedule and the individual notice that were mailed to each investor in accordance with the terms of the Plan, the Debtors informed each investor of the maximum servicing fee that is charged under each LSA. Upon transfer, the acquirer of the LSAs will have the right to enforce such LSAs pursuant to their terms. Neither the Plan nor the APA seek to modify the terms of the LSAs. There is no question that the Plan clearly addresses the servicing fee issues.

---

[2] In fact, even this Court appropriately questioned whether, under the complex facts of this case, such a sale could take place outside of the context of a plan, especially as USA Capital First Trust Deed Fund, LLC ("FTDF") is selling substantially all of its assets. See, e.g., Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. Tex. 1983) (holding that section 363 does not give a debtor unfettered discretion to structure "sales" transactions that have "the practical effect of dictating some of the terms of any future reorganization plan."); In re Quality Bev. Co., 181 B.R. 887, 895 (Bankr. S.D. Tex. 1995) (stating that "[s]ection 363 does not authorize the Debtor and the court to short-circuit the requirements of Chapter 11 by establishing the terms of a plan sub rosa in connection with a proposed transaction"); see also Craig A. Sloane, The Sub Rosa Plan of Reorganization: Sidestepping Creditor Protections in Chapter 11, 16 Bankr. Dev. J. 37, 39 (1999) ("the concerns behind the objections regarding sub rosa plans are valid in light of the history and structure of chapter 11 of the Bankruptcy Code").

405871v3

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

Furthermore, the argument that the USACM did not charge the full amount of the servicing fees authorized under the LSAs so the new servicer should likewise not be permitted to charge the maximum service fee amounts has no merit. That USACM did not charge the maximum amount of servicing fees under the LSAs for the benefit of USACM and its creditors may very well be yet another breach of duty by USACM, which should not be perpetuated by another servicer. If the real issue is that certain investors do not like the terms of the LSAs that they signed, then they should never entered in to the agreements in the first place. Given these circumstances, investors should assume that any purchaser will seek to collect the maximum amount set forth in the LSAs as the Debtors unequivocally have proposed in the Plan.

### C. The Purchaser Has Certain Fiduciary Obligations As a Loan Servicer.

Cangelosi suggests that the purchaser of the LSAs should forego any enforcement rights it might have against certain borrowers, whose equity was pledged as security for the IP Note and the 10-90, Inc. Loan. First, while this statement is made in the Opposition, the Opposition fails to list the borrowers whose Loans are to be transferred under the APA and whose equity secures the IP Note and the 10-90, Inc. Loan. There is no way to determine from the Opposition whether these situations are many, few or exist at all, let alone the dollar magnitude at issue. Indeed, the FTDF Committee does not believe that any significant dollar amount of its Loans to be sold under the APA fall into this category.

Moreover, this assertion that SPCP should forgo enforcement ignores the fundamental duties that a loan servicer must undertake to collect a loan on behalf of direct lenders – to forego these rights would prejudice the rights of hundreds, if not thousands, of investors. No loan servicer can, or should, waive these rights on behalf of direct lenders.

However, in light of these concerns, SPCP has agreed to cooperate with the Debtors in connection with any of its collection efforts against the Debtors' insiders. Section 7.3 of the APA specifically provides as follows:

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

Page 6 of 8

405871v3

> As to the Assets purchased, other than the right to pursue personal guaranties of any of the Serviced Loans guaranteed by an Insider of the Debtors, Purchaser is not through the transactions described herein acquiring any other claim or cause of action against an Insider of any of the Debtors or against another Debtor. Further, if Purchaser obtains a judgment in respect of any personal guaranty of any Serviced Loan by an Insider of the Debtors, Purchaser will negotiate in good faith in an effort to reach an equitable agreement to do so in conjunction with any litigation by Sellers (or their successor or assignee under a Plan) in a manner that will not impair Purchaser's ultimate economic realization in respect of its Assets purchased pursuant to the terms hereof or otherwise or its obligations under the Servicing Agreements, but also will not impair any recovery or litigation efforts undertaken by any of the Debtors (or their successors or assigns under a Plan) in respect of other liability claims or causes of action that they are then prosecuting or may in the future prosecute against such Insider.

See APA, Section 7.3 (defined terms have the meanings ascribed to them in the APA). This protection in the APA will ensure that all parties will proceed with a coordinated effort against the Debtors' insiders with respect to whatever rights individual parties may have against such insiders.

### D.    The APA Clearly States that the Successful Bidder Is Not Acquiring the Servicing Rights With Respect to the IP Loan.

The APA clearly states that it is only transferring the servicing rights with respect to the loans listed on Schedule 2 to the APA, which does not include the IP Loan. As described more fully in the Plan and Disclosure Statement, the post-Effective Date entities for USACM and USA Capital Diversified Trust Deed Fund, LLC will pursue the collection of the IP Loan.

*SHEA & CARLYON, LTD.*
233 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 471-7432

405871v3

## III. CONCLUSION

For the reasons stated above, the FTDF Committee, Direct Lender Committee, DTDF Committee, and the Debtors respectfully request that the Court deny the Opposition at this time for the reasons set for the above, or, in the alternative, consider the Opposition at the Confirmation Hearing scheduled for December 19, 2006 at which hearing the Court will consider the merits and terms and conditions of the proposed sale transaction, and that the Court issue such other relief as may be just and proper.

DATED this 5th day of December, 2006.

| | |
|---|---|
| STUTMAN TREISTER & GLATT, P.C. and SHEA & CARLYON, LTD. | GORDON & SILVER, LTD. |
| By:    /s/ Eve H. Karasik<br>    FRANK A. MEROLA, ESQ.<br>    EVE KARASIK, ESQ.<br>    CANDACE C. CARLYON, ESQ.<br>    *Counsel for the Official Committee of Equity Security Holders of USA First Trust Deed Fund LLC* | By:  /s/ Gregory E. Garman<br>    GERALD M. GORDON, ESQ.<br>    GREGORY E. GARMAN, ESQ.<br>    (NV Bar No. 6654)<br>    *Counsel for the Official Committee of Holders of Executory Contract Rights of USA Commercial Mortgage Company* |
| ORRICK, HERRINGTON & SUTCLIFFE LLP and BECKLEY SINGLETON, CHTD. | RAY QUINNEY & NEBEKER P.C. and SCHWARTZER & MCPHERSON LAW FIRM |
| By:    /s/ Marc A. Levinson<br>    MARC A. LEVINSON, ESQ.<br>    (CA Bar No. 57613)<br>    LYNN TRINKA ERNCE, ESQ.<br>    BRETT A. AXELROD, ESQ.<br>    ANNE M. LORADITCH, ESQ.<br>    *Counsel for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC* | By:    /s/ Lenard E. Scwartzer<br>    ANNETTE W. JARVIS, ESQ.<br>    LENARD E. SCHWARTZER, ESQ.<br>    (NV Bar No. 0399)<br>    JEANETTE E. MCPHERSON, ESQ.<br>    *Counsel for the Debtors and Debtors in Possession* |

405871v3