Frank J. Wright
Texas Bar #22028800
C. Ashley Ellis
Texas Bar #00794824
Hance Scarborough Wright
  Ginsberg & Brusilow, LLP
14755 Preston Rd., Suite 600
Dallas, TX  75254
phone: (972) 788-1600
fax: (972) 239-0138
bankruptcy@hswgb.com

ATTORNEYS FOR HALL
FINANCIAL GROUP, LTD. AND
HALL PHOENIX INWOOD, LTD.

Richard Holley
Nevad Bar #3077
Santoro, Driggs, Walch, Kearney,
  Johnson & Thompson
400 South Fourth St., 3rd Fl.
Las Vegas, NV 89101
phone: (702) 791-0308
fax: (702) 791-1912
Rholley@NevadaFirm.com

ATTORNEYS FOR HALL
FINANCIAL GROUP, LTD. AND
HALL PHOENIX INWOOD, LTD.

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA Commercial Mortgage Company f/k/a<br>USA Capital, et al.<br>Debtor. | ) BK-S-06-10725-LBR<br>) Chapter No. 11<br>)<br>) |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | ) BK-S-06-10726-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>Debtor. | ) BK-S-06-10727-LBR<br>) Chapter 11<br>)<br>) |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND,<br>LLC,<br>Debtor. | ) BK-S-06-10728-LBR<br>) Chapter 11<br>)<br>) |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | ) BK-S-06-10719-LBR<br>) Chapter 11<br>)<br>) |
| Affects:<br>☐    All Debtors<br>■    USA Commercial Mortgage Co.<br>☐    USA Securities, LLC<br>☐    USA Capital Realty Advisors, LLC<br>☐    USA Capital Diversified Trust Deed<br>☐    USA First Trust Deed Fund, LLC | ) **DECLARATION OF MARK**<br>) **BLOCHER IN SUPPORT OF**<br>) **OPPOSITION OF HALL FINANCIAL**<br>) **GROUP, LTD. TO MOTION FOR**<br>) **APPROVAL OF PROCEDURES**<br>) **REGARDING ASSIGNMENTS OF**<br>) **DIRECT LENDERS' INTERESTS IN**<br>) **LOANS** |

I, Mark Blocher, declare as follows:

---

DECLARATION OF MARK BLOCHER IN SUPPORT OF OPPOSITION OF HALL
FINANCIAL GROUP, LTD. TO MOTION FOR APPROVAL OF PROCEDURES REGARDING
ASSIGNMENTS OF DIRECT LENDERS' INTERESTS IN LOANS                    Page 1

1      1.     I am an employee of Hall Financial Group, Ltd.

2      2.     The following facts are personally known to me and/or based on my personal

3  observations.  If called to testify thereto, I could and would do so, under oath.

4      3.     On or about June 2006, HFG approached lenders who owned interests in a loan to

5  Gramercy Court, Ltd. ("Direct Lenders") and offered to buy their interests in the loan ("Gramercy

6  Court Loan").  Nine of the direct lenders in that loan elected to sell their interests to HFG.  A

7  chart of the interests that were assigned and the dates they were recorded is attached as Exhibit

8  "A."

9      4.     Each of those direct lenders executed a transfer of note and lien document

10  ("Transfer Documents") assigning their interest in the loan to HFG.  All but one of the Transfer

11  Documents was executed in June 2006.  The Transfer Documents were filed of record in the real

12  estate records of Harris County, Texas in July 2006.  One of the Transfer Documents is attached

13  hereto as Exhibit "B" and incorporated herein by reference.  Each of the Direct Lenders that

14  assigned an interest to HFG executed a Transfer Document in substantially the same form as

15  Exhibit "B."

16      5.     HFG then sent notice to USACM requesting that it amend its records to reflect

17  HFG as the holder of these interests for all purposes including distributions and notices.  Notices

18  were sent in July and August, 2006 (not recently as stated by USACM in the Motion).  Copies of

19  some of  the notices are attached hereto as Exhibit "C" and incorporated herein by reference.

20      6.     To date, USACM has refused to amend its records to reflect that HFG is in fact

21  the holder of these interests by virtue of the assignments.  Instead USACM has continued to send

22  all notices and payments, if any, to the Direct Lenders that no longer own the interests.

23      7.     The loan agreement to which the Direct Lenders and Gramercy Court, Ltd. are a

24  party ("Loan Agreement") specifically provides in Section 8.9 that "This Agreement shall be

25  binding upon and inure to the benefit of Borrower and Lender and their respective successors and

26  assigns; however, except as provided herein, Borrower may not assign its rights or interest or

27  delegate any of its duties under this Agreement or any of the other Loan Documents without prior

28

1   consent of Lender." There is no restriction on the ability of the Lender to assign its interests. In

2   fact Section 8.17 of the Loan Agreement provides "Lender may, at any time, sell, transfer, assign,

3   or grant participation in the Loan and in the Loan Documents and Lender may forward to its

4   partners or to such participant and prospective participant all documents and information relating

5   to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines

6   necessary or desirable."

7       8.      The Deed of Trust with respect to the Gramercy Court Loan is among Gramercy

8   Court, Ltd., Scott K. McDonald and the Direct Lenders. Section 5.6 provides "This Deed of

9   Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their

10  heirs, executors, administrators, successors, and assigns."

11      9.      The Promissory Note payable by Gramercy Court, Ltd. to the Direct Lenders

12  provides in Section 14 that "Lender may assign its rights hereunder or obtain participants in this

13  Note at any time, and any such assignee, successor, or participant shall have all rights of the

14  Lender hereunder." A copy of the Promissory Notes is attached hereto as Exhibit "D" and

15  incorporated herein by reference.

16      10.     The Loan Servicing Agreements executed by the Direct Lenders provides in

17  Section 16 that "This Agreement shall be binding upon and shall inure to the benefit of the

18  parties' respective successors and assigns." Section 5 provides "Should Lender desire to sell all

19  or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential

20  buyers and completing the necessary documentation for the transaction. A fee of 5% of the

21  remaining balance of Lender's undivided interest in the note amount will be deducted from the

22  selling price and paid to USA on all such assignments for which USA locates the Assignee." A

23  copy of the Loan Servicing Agreement as provided to HFG by a Direct Lender is attached as

24  Exhibit "E." This form is substantially the same as all forms of the Loan Servicing Agreement I

25  have seen with the exception of some variations as to the amount of loan servicing fees.

26      11.     If the proposed procedures described in the Motion had been in place at the time

27  that HFG purchased the interests from the Direct Lenders, it would have affected HFG's decision

28



1  to purchase those interests and likely resulted in HFG not purchasing the interests.  If HFG had

2  purchased the interests, it would have been for a lower purchase price.

3      I declare under penalty of perjury under the laws of the United States that the foregoing is

4  true and correct and that this Declaration is executed on December 8, 2006 at Frisco, Texas.

5

6

7  Mark Blocher

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

| Holder of Interest | Interest | Date of Transfer | Date Recorded |
|---|---|---|---|
| Mary F. Gambosh | $46,000 | 6/8/06 | 7/3/06 |
| Paul & Eva Sylvie Ggem | $50,000 | 6/27/06 | 7/10/06 |
| Joyce A. Hayward | $50,000 | 6/15/06 | 7/3/06 |
| Emil D. and Therese A. Incrocci | $50,000 | 6/7/06 | 7/3/06 |
| James & Marilyn Rappaport | $75,000 | 6/16/06 | 7/18/06 |
| M.L. Smith and Pauline Smith, Trustee for M.L. and Pauline Smith Family Living Trust | $100,000 | 6/26/06 | 7/3/06 |
| Donald S. Tomlin & Dorothy R. Tomlin 1979 Living Trust | $100,000 | 6/12/06 | 7/3/06 |
| Debra Ann Winemiller | $60,000 | 6/14/06 | 7/3/06 |
| Albert Winemiller, Inc. | $50,000 | 7/10/06 | 7/18/06 |
| | | | |

# Exhibit "B"

RTT _06524274_ CR6 FF $ _40.00_

Return to:
Republic Title of Texas, Inc.
526 Howell Street, 10th Floor
Dallas TX 75204

Z419750
07/03/06  300875720          $40.00

## TRANSFER OF NOTE AND LIEN

**Date:**                                        6/30/06

**Holder of Interest in Note and Lien:**   M.L. Smith and Pauline Smith, TRUSTEES
                                           M.L. and Pauline Smith Family Living Trust

**Holder's Mailing Address:**              3108 N. Minersville Road
                                           Cedar City, Utah 84720

**Transferee:**   Hall Financial Group, Ltd.

**Transferee's Mailing Address:**   6801 Gaylord Parkway, Frisco, Texas 75034

**Note:**

  Date of Original Note:     June 25, 2004

  Original principal amount:   $10,462,500 (the amount has subsequently been increased
                               by a series of amendments)

  Borrower:                   Gramercy Court, Ltd.

  Lender:                     Those persons listed on Exhibit "A" of the Deed of Trust as
                              amended and referenced below.

**Lien:** Lien as described in Deed of Trust, Assignment of Rents, Security Agreement and Fixture
Filing given by Gramercy Court, Ltd., Trustor, to Scott K. McDonald, Esq., Trustee, in favor of
those persons listed therein on Exhibit "A", Beneficiary, dated June 25, 2004, to secure payment
of the Note, and filed of record as Document No. X731401 in the Official Records of Harris
County, Texas as amended by multiple amendments including a Twelfth Amendment to Deed of
Trust dated December 30, 2005 all filed of record in the Official Records of Harris County,
Texas.

**Holder's Interest in Note and Lien:**    $ 100,000.00

**Property (including any improvements):**   As described on Exhibit "1" attached hereto.

FILED FOR RECORD
8:00 AM

JUL - 3 2006

County Clerk, Harris County, Texas

TRANSFER OF NOTE AND LIEN
Page 1 of 5

**Terms of the Transfer:**

For value received, Holder transfers all of Holder's right, title and interest in the Note and Lien to Transferee and all rights and benefits of Holder relating to or arising from the Note and Lien, including, but not limited to, Holder's right to receive principal, interest, penalties and fees.

Holder represents and warrants that Holder holds an interest in the Note and Lien and that Holder has not previously assigned, sold or pledged Holder's Interest in the Note and Lien to any third party, in whole or in part, that Holder owns and has title to Holder's Interest in the Note and Lien free and clear of any and all liens, claims, security interests or encumbrances of any kind or nature whatsoever; and that there are no offsets or defenses or preferential payment demands that have been or may be asserted by or on behalf of any party to reduce the amount of Holder's Interest in the Note and Lien or to impair its value. Holder further represents and warrants that the Note and Lien are valid and that no objection to the Note and Lien exists.

Holder is aware that the purchase price being paid for Holder's Interest in the Note and Lien is less than the amount of Holder's Interest in the Note and Lien and may differ from the amount ultimately received by Transferee. Holder acknowledges that, except as set forth herein, neither Transferee nor any agent or representative of Transferee has made any representation whatsoever to Holder regarding the status of the bankruptcy proceedings ("Proceedings") of USA Commercial Mortgage Company and its affiliates ("USA Capital"), the condition of the Property (financial or otherwise), the Note and Lien or any other matter relating to the Property, USA Capital or the Note and Lien.

Holder represents that it has adequate information concerning the business and financial condition of USA Capital, the Proceedings, the Note and Lien, the Property and the borrower to make an informed decision regarding the sale of Holder's Interest in the Note and Lien and that it has independently and without reliance on Transferee and based on such information as Holder has deemed appropriate (including information available from the files of the Proceedings) made its own analysis and decision to transfer Holder's Interest in the Note and Lien.

Holder agrees to make to Transferee immediate proportional restitution and payment to the extent that Holder's Interest in the Note and Lien or any claim against USA Capital is disallowed, reduced, subordinated or impaired for any reason whatsoever, in whole or in part, together with interest at the rate of ten percent per annum on the amount repaid from the date of assignment through the date such repayment is made.

Holder hereby irrevocably appoints Transferee as its true and lawful attorney and authorizes Transferee to act in Holder's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the interest in the Note and Lien herein assigned. Holder grants unto Transferee full authority to do all things necessary to enforce the Note and Lien and its rights thereunder. Holder agrees to execute such other and further documents as requested by Transferee to effect the transfer of Holder's Interest in the Note and Lien.

Holder agrees to forward to Transferee all notices received from USA Capital, the borrower or any third party in connection with the Note and Lien and any claim of Holder against USA Capital. In the event Holder receives any payment in connection with the Note and Lien or any claim against USA Capital after the date hereof, Holder agrees to immediately remit such payment to Transferee.

This transfer is without recourse on Holder.

Holder expressly waives and releases all present and future rights to establish or enforce the liens described in this instrument as security for payment of any future or other indebtedness.

Transferee agrees to indemnify and hold harmless Holder from any and all claims (i) in the Proceedings for disgorgement or return of any monies paid to Holder with respect to Holder's Interest in the Note and Lien and (ii) any claims made by Trustor for any alleged failure to advance funds under the loan agreement in connection with the Note.

The terms of this transfer shall be binding upon, and shall inure to the benefit of Holder, Transferee and their respective successors and assigns. Holder hereby acknowledges that Transferee may at any time reassign Holder's Interest in the Note and Lien together with all right title and interest of Transferee in and to this assignment. All representations and warranties made herein shall survive the execution and delivery of this assignment and any such re-assignment. This Agreement may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada. Any action arising under or relating to this Agreement may be brought in any state or federal court located in the State of Texas. Holder waives any right to trial by jury.

When the context requires, singular nouns and pronouns include the plural.

IN WITNESS WHEREOF, the undersigned hereto sets its hand this _15_ day of _Juny_, 2006.

**HOLDER:**

By: _Pauline J Smith_
Name:
Title:
Address: _3108 N. Minersville Road_
_Cedar City, Utah 84720_

**TRANSFEREE:**

Hall Phoenix Inwood, Ltd.
By:   Phoenix/Inwood Corp., its general partner

By: _____
      Donald Braun, its President

TRANSFER OF NOTE AND LIEN
Page 3 of 5

Holder agrees to forward to Transferee all notices received from USA Capital, the borrower or any third party in connection with the Note and Lien and any claim of Holder against USA Capital. In the event Holder receives any payment in connection with the Note and Lien or any claim against USA Capital after the date hereof, Holder agrees to immediately remit such payment to Transferee.

This transfer is without recourse on Holder.

Holder expressly waives and releases all present and future rights to establish or enforce the liens described in this instrument as security for payment of any future or other indebtedness.

Transferee agrees to indemnify and hold harmless Holder from any and all claims (i) in the Proceedings for disgorgement or return of any monies paid to Holder with respect to Holder's Interest in the Note and Lien and (ii) any claims made by Trustor for any alleged failure to advance funds under the loan agreement in connection with the Note.

The terms of this transfer shall be binding upon, and shall inure to the benefit of Holder, Transferee and their respective successors and assigns. Holder hereby acknowledges that Transferee may at any time reassign Holder's Interest in the Note and Lien together with all right title and interest of Transferee in and to this assignment. All representations and warranties made herein shall survive the execution and delivery of this assignment and any such re-assignment. This Agreement may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada. Any action arising under or relating to this Agreement may be brought in any state or federal court located in the State of Texas. Holder waives any right to trial by jury.

When the context requires, singular nouns and pronouns include the plural.

IN WITNESS WHEREOF, the undersigned hereto sets its hand this _15_ day of _June_, 2006.

HOLDER:

By: _Paul & Smith_
Name: _Pauline J Smith_
Title: _____
Address: _3108 N. Minersville Road_
_Cedar City, Utah 84720_

TRANSFEREE:

Hall Phoenix Inwood, Ltd.
By:    Phoenix/Inwood Corp., its general partner

By: _____
    Donald Braun, its President

_96¾_

TRANSFER OF NOTE AND LIEN
Page 3 of 5

STATE OF ~~TEXAS~~ UTAH

COUNTY OF IRON

This instrument was acknowledged before me on the 15 day of JUNE , 2006, by MORTON & PAULINE SMITH .

LAURIE HEDDEN
Notary Public
State of Utah
My Comm. Expires Dec 2, 2008
377 N Main St Cedar City UT 84720

Notary Public, State of ~~Texas~~ UTAH

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me on the _____ day of _____, 2006, by Donald Braun, as President of Phoenix Inwood Corp., the general partner of Hall Phoenix Inwood, Ltd.

_____
Notary Public, State of Texas

TRANSFER OF NOTE AND LIEN
Page 4 of 5

STATE OF ~~TEXAS~~ UTAH

COUNTY OF IRON

    This instrument was acknowledged before me on the 15 day of JUNE , 2006, by MORTON & PAULINE SMITH


LAURIE HEDDEN
Notary Public
State of Utah
My Comm. Expires Dec 2, 2008
377 N Main St Cedar City UT 84720

_____
Notary Public, State of ~~Texas~~ UTAH


STATE OF TEXAS

COUNTY OF COLLIN

    This instrument was acknowledged before me on the 26 day of June , 2006, by Donald Braun, as President of Phoenix Inwood Corp., the general partner of Hall Phoenix Inwood, Ltd.

LINDA R. SUPULSKI
Notary Public, State of Texas
My Commission Expires
APRIL 16, 2009

_____
Notary Public, State of Texas


TRANSFER OF NOTE AND LIEN
Page 4 of 5

## EXHIBIT "1"

### DESCRIPTION OF PROPERTY

All of Gramercy Court, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Film Code Number 469022 of the Map Records of Harris County, Texas.



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number Sequence on the date and at time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

**JUL - 3 2006**

COUNTY CLERK
HARRIS COUNTY, TEXAS

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

# Exhibit "C"



**HALL**
**FINANCIAL**
**GROUP**

July 18, 2006


Via Fed Ex

Joseph D. Milanowski
President
USA Commercial Mortgage Company
4484 S. Pecos Road
Las Vegas, NV 89121-5030

Dear Mr. Milanowski:

This is to provide notice to USA Commercial Mortgage Company as servicing agent for that certain loan by and between Gramercy Court, Ltd. as "Borrower" and various persons and entities as listed on Exhibit "A" of the Deed of Trust dated June 25, 2004 executed by Gramercy Court, Ltd. to Scott K. McDonald, Esq. as Trustee, all as amended multiple times and recorded in the Official Records of Harris County, Texas, that Hall Phoenix Inwood, Ltd. and affiliate of Hall Financial Group, Ltd. has acquired the noteholder interests of the following individuals and entities. Copies of the Transfer of Note and Lien documents are enclosed.

| Noteholder Name | Amount of Note |
|---|---|
| Ggem Family Trust dated 1/23/03 | $ 50,000 |
| Albert Winemiller, Inc. | $ 50,000 |
| James and Marilyn Rappaport | $ 75,000 |

Please immediately adjust your records to reflect the referenced transfers and forward all correspondence and remit to Hall Phoenix Inwood, Ltd. all amounts to be paid on account of the above referenced noteholder interests as follows:

Hall Financial Group
c/o Mark Blocher
6801 Gaylord Parkway, Suite 100
Frisco, TX 75034

Joseph D. Milanowski
USA Commercial Mortgage Company
July 18, 2006
Page 2

If you have any questions or need anything further, please contact Mark Blocher by
phone at 972.377.1128 or by email at mblocher@hallfinancial.com.

Sincerely,

Donald Braun
President
Hall Financial Group, Ltd.

Cc:    Monty Kehl  - Via Fed Ex
       Managing Director
       Mesirow Financial
       4484 S. Pecos Road
       Las Vegas, NV 89121-5030

       Frank Wright
       Hance, Scarborough, Wright, Ginsberg & Brusilow, LLP

       Mark Blocher
       Hall Financial Group, Ltd.



August 7, 2006

Via Fed Ex

Joseph D. Milanowski
President
USA Commercial Mortgage Company
4484 S. Pecos Road
Las Vegas, NV 89121-5030

Dear Mr. Milanowski:

This is to provide notice to USA Commercial Mortgage Company as servicing agent for that certain loan by and between Gramercy Court, Ltd. as "Borrower" and various persons and entities as listed on Exhibit "A" of the Deed of Trust dated June 25, 2004 executed by Gramercy Court, Ltd. to Scott K. McDonald, Esq. as Trustee, all as amended multiple times and recorded in the Official Records of Harris County, Texas, that Hall Financial Group, Ltd. has acquired the noteholder interests of the following individuals and entities.

We have previously sent copies of these documents but official copies recorded by the Harris County Clerk are enclosed. We have not received confirmation from your offices that the transfers have been completed in your records. Please provide confirmation of the transfers of these interests.

| Noteholder Name | Amount of Note |
| --- | --- |
| Donald and Dorothy Tomlin Trust dated 10/24/1979 | $100,000 |
| M.L. and Pauline Smith Family Living Trust | $100,000 |
| Debra Ann Winemiller | $ 60,000 |
| Emil D. and Therese A. Incrocci | $ 50,000 |
| Hayward 1985 Living Trust | $ 50,000 |
| Mary Gambosh IRA | $ 46,000 |
| Ggem Family Trust dated 1/23/03 | $ 50,000 |
| Albert Winemiller, Inc. | $ 50,000 |
| James and Marilyn Rappaport | $ 75,000 |

Please immediately adjust your records to reflect the referenced transfers and forward all correspondence and remit to Hall Financial Group, Ltd. all amounts to be paid on account of the above referenced noteholder interests as follows:

Hall Financial Group
c/o Mark Blocher
6801 Gaylord Parkway, Suite 100
Frisco, TX 75034

Joseph D. Milanowski
USA Commercial Mortgage Company
August 7, 2006
Page 2

If you have any questions or need anything further, please contact Mark Blocher by phone at 972.377.1128 or by email at mblocher@hallfinancial.com.

Sincerely,

Mark Blocher
Director of Corporate Communications
Hall Financial Group, Ltd.

Cc:    Monty Kehl  - Via Fed Ex
       Managing Director
       Mesirow Financial
       4484 S. Pecos Road
       Las Vegas, NV 89121-5030

       Frank Wright
       Hance, Scarborough, Wright, Ginsberg & Brusilow, LLP

       Don Braun
       Hall Financial Group, Ltd.

# Exhibit "D"



# PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$10,462,500

Las Vegas, Nevada
June 25, 2004

This Promissory Note ("Note"), dated as of June 25, 2004 is made and delivered by Gramercy Court, Ltd., a Texas limited partnership ("Borrower"), in favor of those persons listed on **Exhibit "A"** hereto ("Lender").

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Ten Million Four Hundred Sixty-Two Thousand Five Hundred Dollars ($10,462,500) (the "Note Amount"), together with interest as provided herein. Pursuant to the Loan Agreement between Borrower and Lender of even date herewith, the Note Amount may be increased to $37,250,000.

1.    <u>Interest Rate</u>.  Interest shall accrue on the outstanding portion of the Note Amount, from the date Lender initially disburses such funds until the date the Note Amount is paid in full, at the rate of twelve percent (12%) per annum.  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  Accrued but unpaid interest shall be compounded monthly.

2.    <u>Payments</u>. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears.  For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day.  All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.    <u>Maturity Date</u>.  If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on or before the date which is eighteen (18) months after the Deed of Trust is recorded (the "Maturity Date").

4.    <u>Application of Payments</u>.  All payments on this Note shall, at the option of the Lender hereof, be applied first to the payment of accrued interest then payable.

5.    <u>Prepayment</u>.  Borrower may prepay the Loan, in full or in part, at any time, provided, however, that if Borrower repays the Loan within the first four (4) months after the Effective Date (whether voluntarily or as a result of default), then Borrower shall pay to Lender a prepayment fee equal to all interest which would accrue on the full Loan Amount during said four (4) month period, less all interest previously paid.  Notwithstanding anything to the contrary hereunder, Lender shall receive a minimum of four (4) months' interest on the full Loan Amount.  The foregoing notwithstanding, if Borrower refinances this Loan with one arranged by USA, then the prepayment fee shall be waived.

1

6.    <u>Collateral</u>. This Note is secured by a deed of trust encumbering real property located in Harris County, Texas.

7.    <u>Defaults; Acceleration</u>.  The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder.  Upon the occurrence of an Event of Default and the expiration of a 10-day written notice and cure period, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately.  Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)    Borrower shall fail to pay when due any amount due pursuant to the Note; or

(b)    Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have thirty (30) days after written notice to effect the cure  (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c)    any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made if Lender determines, in its reasonable discretion, that such condition materially adversely affects Borrower's ability to re-pay the Note; or

(d)    Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)    Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is

2

instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within sixty (60) calendar days after such issue or levy; or

(f)     there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion, and Lender reasonably believes that such adverse change shall jeopardize (i) Lender's ability to collect the amounts due under the Note, as they become due, or (ii) Lender's ability to foreclose on the Property; or

(g)     any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)     all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)     Borrower is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or the Guarantors are sold or otherwise transferred without Lender's written consent; or

(j)     any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(k)     any default occurs in any loan document or other agreement by and between Borrower and Lender in connection with the Loan and/or the Property, or by Borrower in favor of Lender with reference to the Loan.

8.     Late Charge. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the Lender hereof by reason

3

of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any accelerated amount. Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, the amount of the missed payment(s), or, if the Note has been accelerated, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    Waivers. Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.    Costs of Collection. Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by

4

law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.    Usury.  Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes.  It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

13.    Notices.  All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telecopy or telegram, or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telecopy or telegram, or two or three (3) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**          Gramercy Court, Ltd.
                                 1300 Post Oak Boulevard, Suite 1875
                                 Houston, Texas 77056
                                 Attn. Tracy Suttles

        w/ a copy to:            Jeffrey L. Gilman
                                 Gilman & Wirth, P.C.
                                 710 N. Post Oak Rd., Suite 400
                                 Houston, Texas 77024

**LENDER'S ADDRESS:**            c/o USA Commercial Mortgage Company
                                 4484 South Pecos Road
                                 Las Vegas, Nevada 89121
                                 Attn. Joseph D. Milanowski

14.    Assignment By Lender.  Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15.    Multiple Parties.  A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16.    Construction.  This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party.  The titles and captions in this Note are inserted for convenience

only and in no way define, limit, extend, or modify the scope of intent of this Note.

17. <u>Partial Invalidity</u>. If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

18. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b) **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).**

(c) **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.**

6

BORROWER:      **Gramercy Court, Ltd.**
By: Treetops Management, Inc., General Partner

By: _____
          Tracy Suttles, President

7

## EXHIBIT "A"

### LENDERS

| Names | Amount |
|---|---|
| Charles B. Anderson Trustee of the Charles B. Anderson Trust | $100,000.00 |
| Larry Apigian & Leona Apigian, joint tenants with right of survivorship | $50,000.00 |
| Simmtex, Inc. | $100,000.00 |
| Jack J. Beaulieu Trustee of the Jack J. Beaulieu Revocable Living Trust dated 9/1/94 | $450,000.00 |
| Sharon F. Benadum, an unmarried woman | $80,000.00 |
| Thomas E. Bishofberger & Betty T. Bishofberger Trustees of the Bishofberger Restated Family Trust U/A 9/8/95 | $50,000.00 |
| Daryl L. Blanck & Yvonne M. Blanck Trustees of the Daryl Blanck & Yvonne Blanck Trust dated 3/23/94 | $67,000.00 |
| Jerome L. Block & Charma N. Block, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Gary L. Bonnema | $50,000.00 |
| Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $50,000.00 |
| Michael R. Brines & Cindy G. Brines Trustees of the Michael R. Brines & Cindy G. Brines Revocable Family Trust U/A dated 11/5/94 | $50,000.00 |
| First Savings Bank Custodian For Edward Burgess IRA | $100,000.00 |
| Richard L. Cadieux & Clara M. Cadieux, joint tenants with right of survivorship | $50,000.00 |
| Eugene W. Cady & Sandra L. Cady Trustees of the Eugene W. Cady & Sandra L. Cady Trust dated 9/24/85 | $275,000.00 |
| William C. Campbell & Lois M. Campbell Trustees of the 2001 Campbell Family Trust dated 10/03/01 | $100,000.00 |
| Evelyn G. Canepa & Scott Krusee Canepa Trustees of the Evelyn G. Canepa Trust dated 9/19/00 | $75,000.00 |
| Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000.00 |
| Nelson Chardoul & Virgina Chardoul Trustees of the Nelson & Virgina Chardoul Trust dated 10/7/91 | $50,000.00 |
| Zhimin Chen, a married man dealing with his sole & separate property | $50,000.00 |
| Robert T Chylak & Barbara M Chylak Trustees of the Robert T Chylak & Barbara M Chylak Family Trust dated 10/30/90 | $110,000.00 |
| Donald W. Cook Trustee of the Donald W. Cook Trust | $100,000.00 |
| Chris Dagiantis Trustee of the Chris Dagiantis Revocable Inter Vivos Trust | $60,000.00 |
| Pat Davis & Susan Davis, husband & wife, as joint tenants with right of survivorship | $100,000.00 |
| Evie Dean Trustee of the Evie Dean 2000 Trust dated 12/12/00 | $50,000.00 |
| Tracy A. DeBerry, an unmarried man | $100,000.00 |
| Norma M. Deull, an unmarried women | $50,000.00 |

8

| | |
|---|---|
| Eric C. Disbrow & Judith A. Disbrow Trustees of the Eric C. Disbrow MD Inc. Profit Sharing Plan | $50,000.00 |
| D. Joseph Doucet & Louise M. Doucet Trustees of the D. Joseph & Louise M. Doucet 1989 Trust dated 3/30/89 | $50,000.00 |
| Daniel Drubin & Laura Drubin, husband & wife, as joint tenants with right of survivorship | $150,000.00 |
| Charles B. Dunn, IV Trustee of the Charles B. Dunn, IV Living Trust dated 4/4/00 | $50,000.00 |
| First Savings Bank Custodian for Robert D. Earp IRA | $50,000.00 |
| First Savings Bank Custodian for Lamberto Eugenio IRA | $100,000.00 |
| Ronald W. Erza Trustee of the Ronald W. Ezra Living Trust | $75,000.00 |
| Richard T. Fiory Trustee of the Richard T. Fiory Revocable Trust dated 05/30/01 | $50,000.00 |
| James W. Forsythe & Earlene M. Forsythe, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Brad H. Friedmutter Trustee of The Friedmutter Family Trust | $50,000.00 |
| First Savings Bank Custodian For Eva M. Gehle Roth IRA | $50,000.00 |
| Michele Gilbert Custodian For Lauren J. Gilbert & Erin M. Gilbert, her minor children | $50,000.00 |
| Marvin W. Gittelman & Toby E. Gittelman, Husband and wife as joint tenants with right of survivorship | $50,000.00 |
| Elan Gordon | $50,000.00 |
| Nicole Dana Gottlieb, a married woman dealing with her sole & separate property | $50,500.00 |
| MLH Family Investment Limited | $100,000.00 |
| T. Claire Harper Trustee of the Harper Family Trust dated 2/28/84 | $100,000.00 |
| Edwin L. Hausler, Jr., an unmarried man & Gilbert Manuel, an unmarried man, as joint tenants with right of survivorship | $50,000.00 |
| Rose O. Hecker, a single woman & Anita Rosenfield, a single woman, as joint tenants with right of survivorship | $50,000.00 |
| Helms Homes, LLC | $100,000.00 |
| Christopher Hine & Nancy D. Hine Trustees of the Hine Family Trust | $100,000.00 |
| Farrah M. Hobbs Trustee of the Farrah M. Hobbs Revocable Trust dated 3/12/04 | $55,000.00 |
| Ralph V. Hogue, a married man dealing with his sole & separate property | $100,000.00 |
| Jason L. Holt, a married man dealing with his sole and separate property | $100,000.00 |
| Earl Howsley, a married man dealing with his sole & separate property | $75,000.00 |
| Hilary A. Huffman & Cynthia L. Huffman Trustees of the Huffman Family Trust dated 5/28/98 | $50,000.00 |
| Stephen C. Irwin, an unmarried man | $50,000.00 |
| Ronald Johnson Trustee of the C. I. B. B., Inc. Pension Plan | $50,000.00 |
| Russell E. Karsten Trustee of the Karsten 1987 Trust | $200,000.00 |
| Robert J. Kehl & Ruth Ann Kehl, husband & wife, as joint tenants with right of survivorship | $165,000.00 |
| Clawiter Associates, LLC | $50,000.00 |
| Frederick W. Kewell Trustee of the Barbara J. Kewell Trust dated 7/18/89 | $50,000.00 |
| Evelyn Kitt | $50,000.00 |
| Gregor Kloenne & Otilla M. Kloenne Trustees of the Kloenne Living Trust dated 3/11/87 | $50,000.00 |

9

| | |
|---|---|
| Ronald Kreykes & Linda Kreykes, Tenants in Common | $100,000.00 |
| Dina Ladd, a single woman | $50,000.00 |
| Martin N. Leaf, a married man dealing with his sole & separate property | $50,000.00 |
| Lester Leckenby & Barbara Leckenby, husband & wife, as joint tenants with right of survivorship | $65,000.00 |
| Gernot Leitzinger & Rosemarie Leitzinger, joint tenants with right of survivorship | $100,000.00 |
| Andrew J. Lembersky | $75,000.00 |
| Jorg U. Lenk | $50,000.00 |
| Robert E. Levy, a married man dealing with his sole & separate property | $50,000.00 |
| Gilbert Manuel, an unmarried man & Edwin L. Hausler, Jr., an unmarried man, as joint tenants with right of survivorship | $50,000.00 |
| Evelyn Matonovich Trustee of the Matonovich Family Trust dated 5/16/73 | $50,000.00 |
| Evelyn Matonovich Trustee of the Matonovich Marital Trust UAD 1/25/77 | $70,000.00 |
| Joseph F. McMullin & Pearl A. McMullin, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Verena Mehler For the Benefit of Lonnie James Evans & David Calle's & Loretta Calle's | $75,000.00 |
| Christiane Mencini-Baker Trustee of the Christiane Mencini-Baker Revocable Trust | $50,000.00 |
| Michaelian Holdings, LLC | $100,000.00 |
| Cynthia Milanowski Trustee of the Cynthia Milanowski Trust | $75,000.00 |
| George Minar & Virginia Minar Trustees for the benefit of The Virginia & George Minar Living Trust | $50,000.00 |
| Sandra M. Mogg Trustee of the Trust Agreement of Sandra M. Mogg UAD 1/30/91 | $75,000.00 |
| Marilyn Molitch & Matthew Molitch, joint tenants with right of survivorship | $50,000.00 |
| Matthew Molitch Trustee of the Molitch 1997 Trust | $150,000.00 |
| Albert Montero Family Trust U/A dated 11/3/94 | $50,000.00 |
| Frieda Moon & Sharon C. Van Ert, as joint tenants with right of survivorship | $50,000.00 |
| Jerry Moreo | $75,000.00 |
| Anne Marie Mueller Trustee of the Anne Marie Mueller Trust | $50,000.00 |
| Jean H. Murray Trustee of the Jean H. Murray Separate Property Trust dtd 9/12/02 | $50,000.00 |
| James S. Nelson, a married man dealing with his sole & seperate property | $50,000.00 |
| Freda Newman Trustee of the Freda Newman Trust dated 7/26/84 | $50,000.00 |
| Olga O'Buch Trustee of the Olga O'Buch Trust dated 5/28/98 | $50,000.00 |
| Robert L. Ogren Trustee for the benefit of the Robert L. Ogren Trust dtd 6/30/92 | $150,000.00 |
| William J. Ovca, Jr. Trustee of the Ovca Associates, Inc. Defined Pension Plan | $25,000.00 |
| Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000.00 |
| Susan Postigo | $85,000.00 |
| Dennis Raggi, a married man dealing with his sole & separate property | $100,000.00 |
| Moshe Ram & Barbara Ram Trustees for the benefit of The Ram Family Trust dated 6/22/01 | $50,000.00 |
| James Rappaport & Marilyn R. Rappaport, husband & wife, as joint tenants with right of survivorship | $75,000.00 |

| | |
|---|---|
| Lawrence Rausch | $50,000.00 |
| Donald E. Redmon & Jaylyle Redmon Trustees of the Donald E. Redmon & Jaylyle Redmon Family Trust dated 10/31/95 | $60,000.00 |
| First Savings Bank Custodian For Patsy R. Rieger IRA | $50,000.00 |
| Rebecca A. Rogers Trustee of the Rebecca A. Rogers Trust dated 9/18/96 | $60,000.00 |
| Burton M. Sack, a married man dealing with his sole & separate property | $250,000.00 |
| Western Sierra Bank Custodian For Myron Sayan IRA | $50,000.00 |
| William E. Schnadt & Janet E. Schnadt Trustees of the Schnadt Trust dtd 6/18/93 | $50,000.00 |
| Beatrice L. Schultz Trustee of the Schultz Living Trust dated 5/2/02 | $50,000.00 |
| Kenneth B. Schulz & Mary Kay Bryan-Schulz, joint tenants with right of survivorship | $50,000.00 |
| David W. Sexton & Pamela K. Sexton, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Jack B. Sheehan & Gloria L. Sheehan Trustees of the Sheehan Family Trust dated 10/27/99 | $90,000.00 |
| Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Richard Small & Jacqueline Small Trustees of the Small Family Trust | $50,000.00 |
| Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dtd 6/11/92 | $105,000.00 |
| Richard Stevenson & Doris Stevenson Trustees of the Stevenson Family Trust | $100,000.00 |
| Don A. Stiles Trustee of the Stiles Trust dated 4/2/96 | $50,000.00 |
| Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpson Family Trust | $50,000.00 |
| KTaylorGO Investments, LTD | $100,000.00 |
| Robert M. Taylor & Lettie Ladelle Taylor | $50,000.00 |
| David M. Thatcher, a single man | $50,000.00 |
| Lawrence P. Tombari, a married man dealing with his sole & separate property | $50,000.00 |
| First Savings Bank Custodian For L. Ronald Trepp IRA | $50,000.00 |
| L. Ronald Trepp & Jacqueline P. Trepp Trustees of the L. Ronald Trepp & Jacqueline P. Trepp Family Trust | $100,000.00 |
| John R. Trimble & Jan C. Trimble, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Solomon Y. Turok & Noemi Turok | $50,000.00 |
| Dale L. Tuttle, an unmarried man | $250,000.00 |
| Robert W. Ulm, an unmarried man | $100,000.00 |
| Benedict E. Urban & Roselyn N. Urban Trustees of The Benedict E. Urban & Roselyn N. Urban Family Trust dated 2/3/04 | $50,000.00 |
| USA Capital First Trust Deed Fund | $170,000.00 |
| USA Capital Diversified Trust Deed Fund | $145,000.00 |
| Gloria Valair, a single woman | $50,000.00 |
| Lloyd F. Van Sickle Trustee of the The Van Sickle Family Trust dated 5/20/99 | $75,000.00 |
| Kip E. Virts & Melissa A. Virts, joint tenants with right of survivorship | $50,000.00 |
| Marietta Voglis, a married woman dealing with her sole & separate property | $50,000.00 |
| Joseph P. Walls & Ellen Walls Trustees of the Walls Family Trust dated 12/10/97 | $50,000.00 |
| Michael J. Walter & Diane J. Walter, joint tenants with right of survivorship | $50,000.00 |

11

| | |
|---|---|
| Joy C. Williams, a married woman dealing with her sole and separate property | $100,000.00 |
| Beryl G. Winer Trustee of the Beryl Winer Family Trust | $50,000.00 |
| James C. Wu & Jeanne K. Wu Trustees of the Wu Family Trust dated 06/19/91 | $50,000.00 |
| Gregory D. Yonai Trustee of the Gregory D. Yonai Family Trust | $50,000.00 |
| Anthony J. Zerbo, an unmarried man | $125,000.00 |
| Franz J. Zimmer Trustee of the Franz J. Zimmer Revocable Trust dated 02/05/97 | $100,000.00 |
| TOTAL | $10,462,500.00 |

12

# Exhibit "E"



# LOAN SERVICING AGREEMENT

This Loan Servicing Agreement ("Agreement") is made as of the _____ day of _____,
2004, between USA Commercial Mortgage Company ("USA") and M.L. Smith and Paulene Smith, Trustees
of the M.L. and Paulene Smith Family Living Trust ("Lender").

## RECITALS

A.      USA is a mortgage broker and loan servicer in Clark County, Nevada.

B.      Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and
married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans
are arranged by USA and are secured by interests in real and/or personal property.

C.      Lender wishes to retain the services of USA in connection with making and servicing a loan or loans
("Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender
through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, the parties agree as follows:

1.      <u>Services in Connection with Arranging the Loans</u>.  USA will perform the following services in
connection with arranging each Loan:

(a)      Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b)
below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

(b)      Obtain a deed of trust, assignment of rents and security agreement executed by
Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be
properly recorded.

(c)      Obtain one or more personal or corporate guaranties, if applicable and as determined by
USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used
by USA.

(d)      If  USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal
of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

(e)      Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid
ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the
initial principal amount of the note and showing as exceptions only those items approved by USA and its
counsel.

v.1 Rev. 8/04                                   1

      (f)     Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee.

      (g)     Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

      (h)     Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

      (i)     Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest.

      (j)     All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request.   Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

      (k)     Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

    2.    <u>Services of USA in Connection with Servicing the Loans</u>.  Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

      (a)     Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage.  USA will hold for the Lender's account such policies and renewals thereof.

      (b)     Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts.  Those records will be available for review by the Lender during regular business hours at USA's corporate office.

      (c)     Until the total amount due under each note is paid in full:

         (i)     Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

         (ii)     In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including

but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

       (iii)    In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

       (iv)    In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

    (d)    Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

    (e)    Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. Notwithstanding the foregoing or any other provision contained herein, USA may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

    3.    <u>Rights of Lender if USA Fails to Act</u>.    Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

(a)     the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and

(b)     the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

4.      Legal Proceedings.    USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure; provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5.      Compensation to USA for Loan Servicing.    Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed three percent (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) and default interest collected from the Borrower pursuant to the terms of the Note. Notwithstanding the foregoing, it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6.      USA's Right to Delegate.    Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7.      No Legal Advice.    Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any

questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter.

8.    <u>Termination</u>.  Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

9.    <u>Lender's Registration</u>.  Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

10.    <u>Integration Clause</u>.  This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof).

11.    <u>Limited Power of Attorney</u>.  With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan.  Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder.  No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder.  All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12. <u>Notices.</u>  All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

If to USA:        USA Commercial Mortgage Company
                  4484 S. Pecos Road
                  Las Vegas, Nevada 89121-5030
                  Attention:

If to Lender:


                  Attention:

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

13.    Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

14.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

15.    Attorney's Fees.  In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the party against whom judgment is rendered in such action shall be liable to the other for reimbursement of its costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal,

16.    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

17.    Headings.  Sections headings used in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement.

18.    Authority.  Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement.

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written.

LENDER: M.L. Smith and Paulene Smith, Trustees of the M.L. and Paulene Smith Family Living Trust

By:    _____
Name:   M. L. Smith_____
Title:    Trustee_____

By:    _____
Name:   Paulene Smith_____
Title:    Trustee_____

USA COMMERCIAL MORTGAGE COMPANY

By: _____
     Joseph D. Milanowski, President

v.1 Rev. 8/04                                6