Gregory J. Walch  
Nevada Bar Number 4780  
Email: GWalch@Nevadafirm.com  
400 South Fourth Street, Third Floor  
Las Vegas, Nevada 89101  
Telephone:    702/791-0308  
Facsimile:    702/791-1912  

E-Filed on December 9, 2006

*Attorney for Gregory J. Walch and Shauna M. Walch,*  
*Trustees of the Gregory J. and Shauna M. Walch*  
*Family Trust*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

USA Commercial Mortgage Company  
   06-10725 – Lead Case

USA Capital Realty Advisors, LLC  
   06-10726

USA Capital Diversified Trust Deed Fund, LLC  
   06-10727

USA Capital First Trust Deed Fund, LLC  
   06-10728

USA Securities, LLC  
   06-10729

                                    Debtors.

Jointly Administered  
Chapter 11 Cases  
Judge Linda B. Riegle Presiding

**DECLARATION OF GREGORY J. WALCH IN SUPPORT OF LIMITED OBJECTION TO PLAN**

Date of Hearing:    December 19, 2006  
Time of Hearing:    10:00 a.m.  
Place: Courtroom No. 2, Third Floor  
        Foley Federal Building  
        300 Las Vegas Blvd., S.  
        Las Vegas, NV 89101

Affecting:  
[x]  All Debtors  
Or only:  
[]  USA Commercial Mortgage Company  
[]  USA Capital Realty Advisors, LLC  
[]  USA Capital Diversified Trust Deed Fund, LLC  
[]  USA Capital First Trust Deed Fund, LLC

    1.    I am a co-trustee of the Gregory J. and Shauna M. Walch Family Trust ("the Trust"). I am submitting this declaration in support of the Trust's Limited Objection to the Plan proposed by Debtors, and make this declaration based upon my personal knowledge of the facts set forth herein.

    2.    In March 2005, I met with USA Commercial Mortgage's broker and employee, Tom Stewart, to discuss the possibility of having the Trust lend money to Roam Development

01969-00/131292.doc

Group, LP for a condominium conversion project in Texas. Mr. Stewart obtained my signature on a USACM Loan Servicing Agreement, a true and correct copy of which is attached hereto as Exhibit "A" (the "Service Agreement"), and provided me with information about the loan, including USACM's offering circular outlining the net interest to be paid by the borrower to the Trust under the loan documents. A true and correct copy of the offering circular and Roam Development promissory note is attached hereto as Exhibit "B". I discussed the Service Agreement with Mr. Stewart during the initial March 2005 meeting prior to signing it. Mr. Stewart explained to me at that time that the service fees would be calculated on a loan-by-loan basis based upon the offer made by USACM in individual offering circulars and would be derived by subtracting from payments actually made by the borrower under the note (interest, late fees, penalties, collection costs, etc.) the net interest promised in any individual offering circular. In the case of the Roam Development loan, the net interest offered to Direct Lenders was 12%, as was the interest under the note. Accordingly, USACM would not be taking any service fees out of interest payments by the borrower. However, Mr. Stewart explained that Roam Development paid USACM a substantial loan generation fee, and that was the basis for USACM putting together and servicing the loan. As set forth in the Servicing Agreement, USACM's income was derived largely from loan generation fees, not service fees.

3. USACM, by and through its agent Mr. Stewart, offered the Trust several loan opportunities from March 2005 through January 2006, many of which the Trust rejected for various reasons. The Trust did choose to enter three additional loans, however, including Binford Medical, Marlton Square, and Foxhills 216. In each case, as with Roam Development, the Trust accepted USACM's offer to pay a certain net interest amount on money loaned, which offers and promises were fully set forth in individual offering circulars. True and correct copies of the offering circulars and notes for Binford, Marlton Square, and Foxhills 216 are attached hereto as Exhibits "C", "D", and "E", respectively.

4. As a result of the manner in which the four loans were documented and sold to the Trust, USACM and the Trust entered into separate agreements for each loan (the "Loan Agreements"). Under the Loan Agreements, USACM is entitled to the following as service fees

01969-00/131292.doc

(exclusive of any late fees, penalties or collection costs): 0% of the outstanding principal amount (per annum) for the Roam Development Group loan (12% note - 12% net promised in offering circular), 1% of the outstanding principal amount (per annum) for the Binford Medical loan (13% note - 12% net promised in offering circular), 0.5% of the outstanding principal amount (per annum) for the Marlton Square loan (13% note - 12.5% net promised in offering circular), and 1% of the outstanding principal amount (per annum) for the Foxhills 216 loan (13.5% note - 12.5% net promised in offering circular). In order for USACM to generate service fees under the four loans offered on a net interest basis to the Trust, the Trust must first net the promised interest on its loans.

5.  Based upon information and belief, USACM is not properly calculating the service fees to which USACM is entitled. Instead, USACM is accruing service fees where loans are in default such that USACM receives a proportionately higher share of interest than that to which USACM is entitled when payments are eventually made. Further, as set forth in the attached Exhibit "F", dated December 1, 2006, and received by me on December 4, 2006, USACM is calculating service fees based upon the 3% service fees cap set forth in the Service Agreement rather than the amount offered by USACM and agreed to by the Trust as a basis for each Loan Agreement.

6.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 9th Day of December, 2006.

_____
Gregory J. Walch

01969-00/131292.doc