Jeffrey B. Cohen, Chief Counsel  
Israel Goldowitz, Deputy Chief Counsel  
Karen Morris, Associate Chief Counsel  
James Eggeman, Assistant Chief Counsel  
Frank A. Anderson, Attorney, D.C. Bar No. 478234*  
Erika E. Barnes, Attorney, Cal. Bar No. 197309*  
PENSION BENEFIT GUARANTY CORPORATION  
Office of the Chief Counsel  
1200 K Street, NW, Suite 340  
Washington, D.C. 20005-4026  
Tel: (202) 326-4020, ext. 3759  
Fax: (202) 326-4112  
anderson.frank@pbgc.gov and efile@pbgc.gov  

Electronically Filed:  
December 11, 2006  

Attorneys for Pension Benefit Guaranty Corporation  

Daniel G. Bogden  
Nevada Bar No. 2137  
United States Attorney  
333 Las Vegas Blvd. South, Suite 5000  
Las Vegas, Nevada 89101  
Tel: (702) 388-6336  
Fax: (702) 388-6787  
Local Counsel for Pension Benefit Guaranty Corporation  

**UNITED STATES BANKRUPTCY COURT**  
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: ) | Case No. BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, ) | Case No. BK-S-06-10726 LBR |
| Debtor.) | Case No. BK-S-06-10727 LBR |
| In re: ) | Case No. BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC ) | Case No. BK-S-06-10729 LBR |
| Debtor.) | |
| In re: ) | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, ) | |
| Debtor.) | Jointly Administered Under |
| In re: ) | Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, ) | |
| Debtor.) | |
| In re: ) | Hearing Date: December 19, 2006 |
| USA SECURITIES, LLC ) | Hearing Time: 10:00 a.m. |
| Debtor.) | |

---

* Admitted *pro hac vice*.

**OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION (AFFECTS ALL DEBTORS)**

The Pension Benefit Guaranty Corporation ("PBGC") hereby files this objection, on behalf of the USA Commercial Mortgage Company Defined Benefit Pension Plan ("Pension Plan") and on its own behalf, in opposition to the confirmation of Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "POR"), filed by USA Commercial Mortgage Co. ("USACM"), USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC (collectively "Debtors"). PBGC is a creditor in these cases with claims of over $1 million relating to the Pension Plan.[1]

As PBGC demonstrates below, the POR cannot be confirmed in its current form. The POR violates sections 1129(a)(1) and 524(e) of the Bankruptcy Code by releasing creditors' claims against non-debtor third parties. The releases (and the related injunctions) offend fundamental notions of fairness and due process, and would constitute unwarranted extension of the Bankruptcy Code's protection to third parties. PBGC, the Pension Plan, and its participants could suffer severe harm (the extent of which is unknown by everyone except, perhaps, the third parties) if the POR is confirmed as proposed.

---

[1] To the extent that USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, are not in the controlled group for the Pension Plan, PBGC does not object to the POR as to those Debtors.

## I. STATUTORY BACKGROUND

PBGC is the federal agency that administers the nation's pension plan termination insurance program established by Title IV of ERISA.[1]  When a pension plan covered by Title IV terminates without sufficient assets to pay all of its promised benefits, PBGC typically becomes trustee of the plan and pays participants their benefits, up to the statutory limits.[2]

PBGC guarantees the pension benefits of more than 44 million participants in more than 30,000 pension plans, and is the trustee of more than 3,500 failed pension plans.[3]  On November 15, 2006, PBGC reported a deficit of $18.88 billion.[4]  The pension insurance program acts as a backstop for American workers, providing retirement income for more than one million workers who would not otherwise receive benefits.[5]  PBGC is self-financed, and obtains its revenues exclusively from four sources:  (i) premiums paid by employers sponsoring ongoing plans; (ii) investment income; (iii) the assets in terminated plans; and (iv) recoveries, if any, from employers whose underfunded plans have terminated.[6]

Title IV of ERISA establishes the exclusive means of terminating a covered pension plan.[7]  An employer may voluntarily terminate a pension plan in a "standard" termination if the

---

[1] 29 U.S.C. §§ 1301-1461 (2000 & Supp. III 2003); *see generally PBGC v. LTV Corp.*, 496 U.S. 633, 636-39 (1990).

[2] *See* 29 U.S.C. §§ 1321, 1322, 1361.

[3] *See* PBGC 2006 Annual Management Report, http://www.pbgc.gov/docs/PBGCAMR.pdf, at 6.

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.* at 1.

[7] 29 U.S.C. § 1341(a)(1); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999). Accordingly, the termination of a pension plan may not be effected by rejecting the pension plan

3

plan's assets are sufficient to pay all of its promised benefits, or may initiate a "distress" termination of an underfunded plan if the employer meets certain criteria relating to financial condition.[8]  And PBGC may "involuntarily" terminate a plan if, for example, it determines that absent termination, the agency's long-run loss may increase unreasonably.[9]

Upon termination of a pension plan covered by the PBGC insurance program, the plan's contributing sponsor and each member of the contributing sponsor's controlled group become jointly and severally liable to PBGC for the total amount of the pension plan's Unfunded Benefit Liabilities ("UBL").[10]  UBL is the shortfall between a pension plan's benefit liabilities and its assets at fair market value, computed as of the date of the pension plan's termination.[11]  PBGC has filed claims for the UBL of the Pension Plan in the amount of $884,389.

Each member of the contributing sponsor's controlled group is also jointly and severally liable to PBGC and to the pension plan for insurance premiums, interest, and penalties (collectively, "Premiums") with respect to the pension plan, for the pension plan's minimum funding contributions set forth in ERISA and the Internal Revenue Code.[12]  PBGC has filed an unliquidated claim for Premiums against the Debtors' estate.  PBGC also filed an estimated claim in the amount of $1,068,233 for unpaid employer contributions to the Pension Plan.

---

as an executory contract under the Bankruptcy Code.  *See Phillips v. Berber*, 914 F.2d 31, 34 (4th Cir. 1990).

[8]  29 U.S.C. §§ 1341(b), (c).

[9]  29 U.S.C. § 1342(a).

[10]  29 U.S.C. § 1362(a).

[11]  29 U.S.C. §§ 1301(a)(18), 1362(b); *see* 29 C.F.R. § 4044.41 *et seq*.

[12]  29 U.S.C. §§ 1082, 1307; *see also* 26 U.S.C. § 412.

A controlled group under ERISA and the Internal Revenue Code includes a parent-subsidiary group of trades or businesses connected through ownership of at least an 80 percent controlling interest with a common parent organization.[13] A controlled group also includes a brother-sister group of trades or businesses under the common control of the same five or fewer persons.[14] *Id*.

As trustee, PBGC takes over the plan's assets and liabilities and provides the statutorily guaranteed benefits under the plan. When guaranteed benefits exceed the plan's assets, PBGC makes up the difference with its insurance funds. Upon becoming statutory trustee of terminated pension plans, PBGC is also authorized to pursue the plan's claims and rights.[15]

The plan's claims and rights include causes of action under Title I of ERISA for violations of ERISA's fiduciary standard of care.[16] Section 3(21) of ERISA, 29 U.S.C. § 1002(21), provides a functional test for determining the fiduciaries of a pension plan. That section provides that a fiduciary is any person who: "(1) Exercises any discretionary control or authority with respect to the pension plan assets; (2) Renders investment advice for a fee; or (3) Exercises any discretionary control or authority with respect to the administration of the pension plan's assets." The plan administrator and the plan trustee, are by "the very nature of his

---

[13] See 29 U.S.C. § 1301(a)(14); 26 U.S.C. § 414(b) and (c); 26 C.F.R. §§ 1.414(b) and (c).

[14] *Id*.

[15] *See generally*, 29 U.S.C. §§ 1342(d), 1362(c).

[16] *See e.g.*, 29 U.S.C. §§ 1002(21), 1103, 1104 & 1106.

position… fiduciaries."[17] The plan's fiduciaries are personally liable for any losses the pension plan suffered from violations of the standard of care.[18]

## II.   FACTUAL BACKGROUND

USA Commercial Mortgage Company established the Pension Plan effective January 1, 1998.  The Pension Plan is a single-employer defined benefit pension plan covered by Title IV of ERISA.[19]  On information and belief, USACM and one or more debtor affiliates and/or non-debtor affiliates are contributing sponsors of the Pension Plan, as defined by 29 U.S.C. § 1301(a)(13), or are members of the contributing sponsor's controlled group, as defined by 29 U.S.C. § 1301(a)(14).  The Pension Plan covers 30 current or former employees of the Debtors.  The Pension Plan currently maintains an unusual status, as USACM currently serves as not only a contributing sponsor, but also as administrator and the Pension Plan's sole trustee.[20]  Until recently, the three trustees of the plan were Thomas Hantges, Joseph Milanowski and Victoria Loob,[21] all insiders at the debtor entities, as well as at related non-debtor entities.

On April 13, 2006, Debtors filed petitions for Chapter 11 in this bankruptcy court. PBGC timely filed objections to the disclosure statement which included objections to the

---

[17] 29 C.F.R. § 2509.75-8, D-3.

[18] 29 U.S.C. § 1109.

[19] *See* 29 U.S.C. § 1321.

[20] Order Granting Debtor's Motion to Freeze Pension Plan and Appoint Successor Trustee, Oct. 20, 2006, at p.2.

[21] USA Commercial Mortgage Company's motion for Approval of Appointment of a Successor Trustee for its Defined Benefit Pension Plan and to Freeze the Plan Effective September 30, 2006, at par. 2, 5-8.

release of fiduciary liability and to mischaracterization of the PBGC claims.[22] Debtors amended the disclosure statement to include language concerning the PBGC claims, but failed to include the requested carve out concerning fiduciary liability in connection with the Pension Plan.[23]

### III.  OBJECTIONS

#### A.  The Proposed POR Should Not be Confirmed Because it Impermissibly Releases Entities and Individuals Other than the Debtors.

Section 524(e) of the Bankruptcy Code unambiguously limits the effect of a debtor's discharge. The section provides, in pertinent part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."[24] Section 524(a)(2) of the Bankruptcy Code provides that discharge under the Code "operates as an injunction against the commencement or continuation of an action," but this section specifically limits this protection to the debtor.[25]

The POR does not satisfy the applicable Bankruptcy Code criteria for confirmation. The POR discloses the Debtors' intent to effectively provide impermissible blanket releases to non-debtor parties under the proposed Plan. Included among the third parties released by Section A.1 are: (1) former trustees; (2) Debtors' former officers and directors; (3) Debtors' current officers and directors; (4) Debtors' former employees, agents, representatives and professionals; and (5)

---

[22] Objection of the Pension Benefit Guaranty Corporation to Debtors' Disclosure Statement for Debtors' Joint Plan of Reorganization Dated September 15, 2006 (Affects All Debtors), Oct. 24, 2006.

[23] *See* Debtors' First Amended Disclosure Statement for Debtors' Third Amended Joint Plan of Reorganization ("Disclosure Statement"), Article IX.H, at p.77-78.

[24] 11 U.S.C. § 524(e); *see also*, *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996) (non-debtor releases may not be allowed under any circumstances).

[25] 11 U.S.C. § 524(a)(2).

Debtors' current employees, agents, representatives and professionals. The release language in Article VIII, Section A.1 provides in relevant part:

> Except as otherwise expressly provided in the Plan, on and after the Effective Date, none of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor any of their employees, officers, directors, agents, or representatives, nor any Professionals employed by any of them, shall have or incur any liability to any Entity for any authorized act taken or authorized omission made in good faith in connection with or related to the Chapter 11 Cases or the Estates, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.[26]

The POR notably fails to define "authorized" or "in connection with or related to the Chapter 11 Cases or the Estates." The POR thus leaves the opportunity for third party non-debtors, such as the former Trustees to argue that their actions were "authorized" by Debtors even if the action caused a breach of fiduciary duty with respect to the Pension Plan. Similarly, it provides a convenient release for individuals with current managerial authority who only assumed fiduciary roles in relation to the Pension Plan because of the unusual situation of Debtors being effectively run by their counsel and outside financial consultant during the bankruptcy proceedings.

Indeed, the Disclosure Statement itself notes that certain Debtors may have claims for breach of fiduciary duty against non-debtor insiders including Messrs. Milanowski, Hantges and Hamilton, as well as USA Investment Partners, and any persons or entities related to them. These insiders – who include USACM's former directors and officers, two of the three Pension Plan trustees, and an entity which on information and belief is controlled group member for the Pension Plan – likely qualify as fiduciaries to the Pension Plan.

---

[26] Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, Article VIII.A.1, at p.72.

When read together, the release sections would provide sweeping relief from future claims to overly broad categories of persons and entities without any explanation of why they are needed or authorized. These provisions, if approved, could wipe out potentially valuable claims that may mature in the future, or that parties may not even know they have. PBGC, the Pension Plan and its participants have not received consideration for the releases of the non-debtor third parties.

      **B.**    **The Bankruptcy Court's Power Does Not Extend to the Third-Party Releases Provided for in the POR.**

Numerous courts have held that section 105(a) injunctions cannot violate section 524(e) by permanently enjoining actions against non-debtors.[27] Section 105(a) does not authorize the Court to grant the releases that the Debtors seek in the POR. If the POR is confirmed, any and all creditors would be permanently enjoined from pursuing any officers or directors, former or present, of the Debtors or their advisors, from "any authorized act taken or authorized omission made in good faith in connection with or related to the Chapter 11 Cases or the Estates."[28] Indeed, Debtors have not made any showing that section 105(a) of the Bankruptcy Code may be properly invoked in this case to implement the release provisions in the POR, because permanently enjoining creditors from pursing non-debtors would effectively "discharge" non-debtors in violation of § 524(e).[29]

---

[27] *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir. 1995) (rejecting argument that bankruptcy court's general equitable powers under § 105(a) permit the bankruptcy court to discharge the liabilities of non-debtors). In certain unique cases, some bankruptcy courts have confirmed plans that provide for the release of non-debtors, where such release is clearly integral to the confirmation of a plan. *See e.g., In re Myerson & Kuhn*, 121 B.R. 145 (Bankr. S.D.N.Y. 1990); *In re A.H. Robbins Co.*, 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988). However, the Debtors have provided no evidence that such circumstances exist here.

[28] POR, Article VIII, Section A.1

[29] *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 626 (9th Cir. 1989) ("A discharge is in effect a special type of permanent injunction").

### C. The POR Provides Releases to Non-Debtor Third Parties In Violation of the Express Terms of ERISA.

If PBGC becomes termination trustee of the Pension Plan, it may have claims – yet unknown – against present or former directors and officers of the Debtors or non-debtors for breach of fiduciary duty under ERISA, 29 U.S.C. § 1101-1114. Under ERISA, a blanket release of fiduciary breach claims is "void as against public policy."[30] The releases directly contravene the express terms of Title I and IV of ERISA. Here, USA Commercial Mortgage, a contributing sponsor of the Pension Plan, has appointed itself the sole trustee for the Pension Plan. Debtors, whose management was pushed out after allegations of improprieties and very few of whose original employees remain, are in the extraordinary situation of being effectively managed and controlled by their bankruptcy attorneys and an outside financial advisor. These non-debtor individuals and entities are not only acting as independent advisors, they have effectively become the management of Debtors. The estate representative and trustee thus may have taken actions in a fiduciary capacity regarding the Pension Plan.

---

[30] 29 U.S.C. § 1110(a).

## IV.  CONCLUSION

PBGC respectfully requests that the Court refuse to confirm the POR in its present form, or, alternatively, order the Debtors to amend the POR.

Dated: December 11, 2006                    Respectfully Submitted,

/s/ Frank A. Anderson
Jeffrey B. Cohen, Chief Counsel
Israel Goldowitz, Deputy Chief Counsel
Karen Morris, Associate Chief Counsel
James Eggeman, Assistant Chief Counsel
Frank A. Anderson, Attorney,
D.C. Bar No. 478234
Erika E. Barnes, Attorney,
Cal. Bar No. 197309
PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
Tel: (202) 326-4020, ext. 3759
Fax: (202) 326-4112

Local Counsel:
Daniel G. Bogden
Nevada Bar No. 2137
United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Tel:  (702) 388-6336
Fax:  (702) 388-6787