GRM:f:\WP8doc\PBankruptcy Pleadings\Objection12-11-06.doc 12/11/06

**HANEY, WOLOSON & MULLINS**
Wade B. Gochnour, Esquire
Nevada Bar No. 6314
Aryn M.Fitzwater, Esquire
Nevada Bar No. 8802
1117 South Rancho Drive
Las Vegas, Nevada 89102
Telephone: (702) 474-7557
Telecopier: (702) 474-7009
WadeG@hwmlvlaw.com
afitzwater@hwmlvlaw.com

and

**WHITE AND WILLIAMS LLP**
Steven E. Ostrow, Esquire
PA Bar ID # 50568
1800 One Liberty Place
Philadelphia, PA 19103-7395
Telephone: (215) 864-7000
Telecopier: (215) 864-7123
ostrows@whiteandwilliams.com

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>           Debtor. | Case No. BK-S 06-10725 (LBR)<br>Case No. BK-S 06-10726 (LBR)<br>Case No. BK-S 06-10727 (LBR)<br>Case No. BK-S 06-10728 (LBR)<br>Case No. BK-S 06-10729 (LBR) |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>           Debtor. | Chapter 11 |
| In re:<br>USA Capital First Trust Deed Fund, LLC,<br><br>           Debtor. | **Jointly Administered Under<br>Case No. BK-S-06-10725 LBR** |
| In re:<br>USA SECURITIES, LLC,<br><br>           Debtor. | **LIBERTY BANK'S LIMITED OBJECTION TO CONFIRMATION OF DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

- 1 -

GRM/F:\Foreign Bankruptcy\Pleadings\Objection12-11-06.doc 12/11/06

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

Affects:
 X   All Debtors
_____USA Commercial Mortgage Company
_____USA Securities, LLC
_____USA Capital Realty Advisors, LLC
_____USA Capital Diversified Trust Deed Fund, LLC
_____USA First Deed Fund, LLC

Liberty Bank ("Liberty"), by and through its undersigned attorneys, hereby submits its limited objection to confirmation of the Debtors' Third Amended Joint Plan of Reorganization (the "Plan"), and states as follows:

## PRELIMINARY STATEMENT

Liberty objects to the Plan only insofar as it contains a broad injunction that appears to impair the contractual rights of Liberty, as lender, against non-debtor third parties HMA Sales, LLC ("HMA") and USA Investment Partners, LLC ("USAIP"), which guaranteed Liberty's loan to HMA. Under its guaranty and subordination agreements with Liberty, USAIP agreed to subordinate any right to receive distributions or payments from HMA until Liberty's loan is paid in full. The overbroad injunction provided in the Plan, as applied to Liberty, improperly seeks to enjoin and/or extinguish Liberty's pre-existing right to enforce its agreements against USAIP and HMA with respect to moneys that are not property of the Debtors' estates.

As a result of the unlawful injunction, the Bankruptcy Court should either deny confirmation of the Plan or, alternatively, condition confirmation of the Plan upon a modification of the injunction so as to preserve and protect Liberty's pre-existing rights and remedies against non-debtors HMA and USAIP under its loan documents.

////

////

////

- 2 -

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

## LEGAL ARGUMENT

**A.    LIBERTY'S CLAIMS AGAINST DEBTOR USA COMMERCIAL MORTGAGE COMPANY AND NON-DEBTOR USA INVESTMENT PARTNERS LLC**

Debtor USA Commercial Mortgage Company ("USACM") and non-debtor USAIP each guaranteed, as sureties, a $10,000,000.00 Receivables Loan (the "Liberty Loan") from Liberty to HMA made on or about November 15, 2004.  True and correct copies of the guarantee agreements executed by USACM and USAIP in favor of Liberty are attached hereto as **Exhibit "A"** and made a part hereof.  The Liberty Loan provided financing for HMA's sale of time share interests at the Royal Resort and Hotel located at 99 Convention Center Drive, Las Vegas, Nevada.

In connection with its guarantee of the Liberty Loan, USAIP agreed to subordinate its claims and rights against HMA until the Liberty Loan was paid in full pursuant to section 9 of the USAIP guaranty and a separate Subordination Agreement among USAIP, HMA and Liberty (the "Subordination Agreement"), a true and correct copy of which is attached hereto as **Exhibit "B"** and made a part hereof.  As a result of this subordination, USAIP is prohibited from being paid any distributions or monies from HMA following a default under the Liberty Loan until the Liberty Loan is paid in full.

Numerous events of default have occurred under the Liberty loan.  As a result, Liberty has accelerated the Liberty Loan and demanded immediate payment.  As of October 31, 2006, approximately $4,662,620.45 was due and owing under the Liberty Loan together with continuing attorneys' fees and costs.

**B.    LIBERTY'S LIMITED CONFIRMATION OBJECTIONS**

The Plan does not provide for the Debtors to receive a discharge.  Nevertheless, the Plan contains a broad injunction akin to a discharge injunction.  Section IV.H of the Plan, captioned "Nondischarge of Debtors and Injunction," provides in pertinent part:

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors. However, no holder of a Claim or Equity Interest may receive any payment from or seek recourse against any assets that are distributed or to be distributed under the Plan, except those assets required to be distributed to such holder as expressly provided for in the Plan. As of the Effective Date, all Entities are precluded from asserting against any assets that are distributed or to be distributed under the Plan any Claims, rights, causes of action, liabilities or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided in the Plan or Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity Interest and regardless of whether such an Entity has voted to accept the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability or Equity Interest against or in the Debtors that would be discharged upon confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Equity Interest or right against assets or proceeds thereof that are to be distributed under the Plan, other than to enforce any right to a distribution with respect to such assets or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any assets to be distributed to creditors under the Plan, other than as permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets to be distributed under the Plan, other than as permitted by the Plan, provided that nothing contained herein shall limit the rights of any distributee under the Plan from taking any actions in respect of the property distributed or to be distributed to it under the Plan.

Plan § IV.H (page 59-60).

In the first instance, the Plan's injunction violates the Bankruptcy Code. Although the Plan carefully specifies that "[p]ursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors," Plan § IV.H, the Debtors cite no alternative statutory authority for the proposed injunction, let alone its potential reach over non-debtor third parties and their assets. The Bankruptcy Court lacks jurisdiction to confirm a Plan that attempts to enjoin the claims and rights of a non-debtor, Liberty, against other non-debtor third parties, HMA and USAIP.

"Section 105, standing alone, cannot serve as a source of authority for granting a permanent injunction." *In re Dow Corning Corp.*, 255 B.R. 445, 478 (E.D. Mich. 2000). *See also American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),*

– 4 –

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

885 F.2d 621, 625 (9th Cir. 1989) (holding that § 105 does not authorize relief unauthorized by or inconsistent with more specific law). On the contrary, "[t]he plain meaning of § 105(a) authorizes the bankruptcy court to enter only orders that are necessary to carry out other provisions of the Code." *Dow Corning*, 255 B.R. at 478.

In *American Hardwoods*, the Ninth Circuit held that to use 11 U.S.C. § 105(a) to permanently enjoin actions by non-debtors against non-debtors violates the more specific provisions of 11 U.S.C. § 524(e). Section 524(e) expressly provides that the "discharge of debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Thus, if a plan containing a discharge cannot impair a creditor's claims against non-debtor third parties, then it is absolutely clear that the Debtor's Plan, which lacks any discharge, cannot do so.

The provisions of the injunction (underlined above), if approved, could be construed to prevent Liberty from enforcing its pre-existing rights and remedies against non-debtors HMA and USAIP to ensure that Liberty's Loan is paid in full prior to HMA paying USAIP any moneys or distributions. Any such payments to USAIP (which are not property of the Debtors' estates), made in violation of Liberty's loan documents, presumably could be used to fund the Plan through USAIP's repayment of loans allegedly due the Debtors. Hence, the Plan's injunction, as it applies to any assets "that are distributed or to be distributed under the Plan" may impair Liberty's contractual rights to stop HMA from improperly paying USAIP monies or distributions that might ultimately be distributed under the Plan.

One of the Debtors' assets under the Plan is the "IP $58 Million Promissory Note," which is defined at Section I.A.93 of the Plan to mean "that certain promissory note dated as of May 31, 2006, in the original principal amount of $58,374,918.81 made by [USA]IP in favor of

1  USACM (as modified by the "Order Approving Agreement with Investment Partners" entered

2  by the Court on July 24, 2006 [Docket No. 946])."  Plan § I.A.93.

3
4         By way of background, the Debtors sought authority to execute and deliver the IP $58

5  Million Promissory Note in their Motion for Order Approving Agreement with Investment

6  Partners (the "Motion") dated June 9, 2006 [Docket No. 575].  Liberty objected to the Motion

7  primarily on the ground that the proposed pledge agreement securing the note might prejudice

8  Liberty's rights to receive payment in full of the Liberty Loan *prior to* HMA making any

9  distributions or payments to USAIP.  Liberty incorporates herein by reference the supporting

10  Declaration of Steven E. Ostrow [Docket No. 759] filed in connection with Liberty's objection

11  to the Motion.
12
13         Liberty's objection to the Motion was consensually resolved, and the Debtors were

14  permitted to execute and deliver the IP $58 Million Promissory Note, subject to the terms of the

15  Order Approving Agreement with Investment Partners (the "Order") entered by the Court on

16  July 24, 2006 [Docket No. 946].  A true and correct copy of the Order is attached hereto as

17  **Exhibit "C"** and made a part hereof.  Among other pertinent provisions, the Order provides

18  that the Debtors' agreement with USAIP:
19
20         does not prejudice any pre-existing rights that any third parties may have against
21         [USAIP], including without limitation any rights to set aside or to otherwise
         challenge the security interests and liens of the Debtors against the collateral
22         pledged by [USAIP] under any applicable federal law or state law, or any rights
         such parties may have under loan documents, subordination agreements or other
23         contracts or agreements with [USAIP]….
24
25  *See* Order at ¶3.

26         Like the entry of the Order, any confirmation of the Plan should not enjoin or prejudice

27  the pre-existing rights of Liberty against non-debtors HMA and USAIP under the

28  Subordination Agreement or other loan documents.  Yet, the Plan's far reaching injunction

impermissibly attempts to do so as explained above.

- 6 -

HANEY, WOLOSON & MULLINS
1117 South Rancho Drive
Las Vegas, Nevada 89102
(702) 474-7557
(702) 474-7009 Fax

## CONCLUSION

WHEREFORE, for the foregoing reasons, Liberty respectfully requests that the Bankruptcy Court deny confirmation of the Plan or, in the alternative, condition any confirmation of the Plan upon a modification of the injunction contained in Section IV.H of the Plan so as to reserve and provide adequate protection of Liberty's pre-existing rights and remedies against USAIP and HMA under the Subordination Agreement and Liberty's other loan documents.

DATED this ____ day of December 2006.

**HANEY, WOLOSON & MULLINS**

BY:    _____
Wade B. Gochnour, Esquire
Nevada Bar No. 6314
Aryn M.Fitzwater, Esquire
Nevada Bar No. 8802
1117 South Rancho Drive
Las Vegas, Nevada 89102
Telephone: (702) 474-7557

-and-

**WHITE AND WILLIAMS LLP**
Steven E. Ostrow, Esquire
PA Bar ID # 50568
1800 One Liberty Place
Philadelphia, PA 19103-7395
Telephone: (215) 864-7000
Attorneys for Liberty Bank

Case No. BK-S 06-10725 (LBR)
Case No. BK-S 06-10726 (LBR)
Case No. BK-S 06-10727 (LBR)
Case No. BK-S 06-10728 (LBR)
Case No. BK-S 06-10729 (LBR)

Chapter 11

**Jointly Administered Under**
**Case No. BK-S-06-10725 LBR**

**LIBERTY BANK'S LIMITED**
**OBJECTION TO CONFIRMATION OF**
**DEBTORS' THIRD AMENDED JOINT**
**CHAPTER 11 PLAN OF**
**REORGANIZATION**

# Exhibit "A"

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Guaranty") is made effective as of November 15, 2004, by and between **USA COMMERCIAL MORTGAGE COMPANY**, a Nevada corporation (the "**Guarantor**") and **LIBERTY BANK**, a Connecticut nonstock mutual savings bank ("**Lender**").

### BACKGROUND

A.       Lender is entering into a Receivables Loan Agreement with HMA Sales, LLC, a Nevada limited liability company ("**Borrower**") to be dated as of the date hereof. Such Receivables Loan Agreement as it may be amended, modified, restated or supplemented is referred to as the "**Loan Agreement**".

B.       Pursuant to the Loan Agreement, Lender will extend a certain credit facility to Borrower.

C.       Capitalized terms not otherwise defined in this Guaranty will have the meanings set forth in the Loan Agreement.

D.       Lender is willing to enter into the Loan Agreement and extend the receivables loan to Borrower, only if Guarantor agrees to guarantee the full, prompt, complete and faithful payment and performance of all Obligations of Borrower and to execute and deliver this Guaranty.

NOW, THEREFORE, in order to induce Lender to enter into the Loan Agreement and to make advances under the Loan Agreement, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, Guarantor hereby unconditionally covenants and agrees with Lender as follows:

1.       **Guaranty.**

1.1       **General.** Guarantor absolutely and unconditionally, jointly and severally as between itself and with any other Obligors (as defined in **Section 2.2**), guarantees the full, prompt, complete and faithful performance, payment, observance and fulfillment by Borrower of all the Obligations, including, but not limited to, the payment of all principal of, premium (if any) on, and interest on the Receivables Loan and all prepayment fees, other fees, costs, expenses and indemnities of Borrower owing to Lender under the Loan Documents.

1.2       **Payment Obligations.** Guarantor covenants and agrees absolutely and unconditionally that, upon the receipt of written notice from or on behalf of Lender to the effect that there exists an Event of Default, Guarantor will pay in its entirety the entire unpaid principal balance with accrued and unpaid interest due under the Receivables Loan and any other payment Obligations (collectively, the "**Unpaid Amount**") in lawful money of the United States to Lender. If Guarantor should fail to pay the Unpaid Amount or any other payment Obligations of Borrower owed to Lender following receipt of Lender's written request for payment of such sums, then such sums shall thereafter bear interest at the highest default rate set forth in the Loan Agreement for the Receivables Loan (the "**Default Rate**"). If Guarantor shall fail to pay the

Unpaid Amount or any other payment Obligations of Borrower owed to Lender, Lender may also institute and pursue any action or proceeding to judgment or final decree and may enforce any such judgment or final decree against Guarantor and collect in the manner provided by law out of Guarantor's property, wherever situated, the monies adjudged or decreed to be payable.

    **1.3**    **Continuing Guaranty**. THIS GUARANTY IS A CONTINUING GUARANTY AND SHALL CONTINUE IN FORCE UNTIL ALL OBLIGATIONS HAVE BEEN PAID, PERFORMED AND SATISFIED IN FULL AND LENDER HAS NO FURTHER OBLIGATION OR COMMITMENT TO ADVANCE SUMS OR EXTEND ANY CREDIT FACILITY TO BORROWER. GUARANTOR EXPRESSLY AGREES THAT BORROWER MAY CREATE OR INCUR OBLIGATIONS AND MAY REPAY AND SUBSEQUENTLY CREATE OR INCUR OBLIGATIONS, ALL WITHOUT NOTICE TO GUARANTOR, AND GUARANTOR SHALL BE BOUND THEREBY.

    **2.**    **Remedies and Rights of Lender**.

    **2.1**    **Notice of Default**. Neither failure to give, nor defect in, any notice of any Incipient Default or Event of Default given to Guarantor shall extinguish or in any way affect the obligations of Guarantor under this Guaranty or give rise to any claim by Guarantor for breach other than to the extent the periods governing Guarantor's performance, as set forth in **Sections 1.2**, may be affected by the timing of the notice. Lender has agreed in the Loan Agreement to provide Guarantor with a copy of any notice of Incipient Default or Event of Default sent to Borrower. The first sentence of this **Section 2.1** shall not waive such notice requirement. Lender agrees that any cure by Guarantor of any Incipient Default within any applicable cure period provided to Borrower under the Loan Agreement, will be accepted by Lender as if it were a cure by Borrower.

    **2.2**    **Rights As Against Others**. Neither demand on, nor the pursuit of any remedies against Borrower, or any guarantor, surety or insurer of the Obligations or part thereof (individually, an "**Obligor**" and collectively, the "**Obligors**") or any of the Collateral shall be required as a condition precedent to, and neither the pendency nor the prior termination of any action, suit or proceeding against Borrower or any Obligor (whether for the same or a different remedy) shall bar or prejudice the making of, a demand on Guarantor by Lender and the commencement against Guarantor after such demand of any action, suit or proceeding, at law or in equity, or for the enforcement of any other appropriate legal or equitable remedy.

    **2.3**    **Character of Obligation**. Guarantor's liability hereunder is absolute, primary, direct and immediate. Guarantor's obligation to pay the Obligations is a guaranty of payment not of collection.

    **2.4**    **No Impairment of Obligations**. Guarantor agrees that neither: (a) the exercise or the failure to exercise by Lender of any rights or remedies conferred on it under the Loan Documents; (b) the recovery of a judgment against Borrower or any Obligor; (c) the commencement of an action at law or the recovery of a judgment at law against Borrower or any Obligor and the enforcement thereof through levy, execution or otherwise; (d) the taking or institution of any other action or proceeding against Borrower or any Obligor or any Collateral; nor (e) any delay in taking, pursuing or exercising any of the foregoing actions, rights, powers or

-2-

remedies (even though requested by Guarantor) by Lender or anyone acting for Lender shall extinguish, affect or impair the obligations of Guarantor hereunder.

       2.5    **No Defense Or Discharge.**  Guarantor shall be and remain liable for all Obligations until such Obligations shall have been fully paid and/or performed notwithstanding (a) the genuineness, validity or enforceability of the Loan Agreement or any other Loan Documents; (b) any limitation of liability of Borrower contained in any document; (c) the existence of any security or other guaranty given to secure the Obligations; (d) the impossibility or illegality of performance on the part of Borrower of the Obligations; (e) sale or other transfer of all or any portion of the collateral securing the Obligations; (f) any defense that may arise by reason of the incapacity or lack of authority of Borrower, Guarantor or any other Obligor, or the failure of Lender to file or enforce a claim against the estate of Borrower or any other Obligor in any bankruptcy or other proceedings; or (g) any other circumstances, occurrences or conditions, whether similar or dissimilar to any of the foregoing, which might otherwise constitute a legal or equitable defense, discharge or release of a guarantor or surety. Nothing in this Section shall constitute a waiver by Guarantor of any non-waivable rights or protections under the Uniform Commercial Code.

       2.6    **Acceleration As To Guarantor.**  If Borrower defaults under the Loan Agreement or any of the other Loan Documents and Lender is prevented from accelerating payment under the Receivables Loan Note or the Loan Agreement, either by operation of any bankruptcy laws or otherwise, Lender shall be entitled to receive from Guarantor, upon demand by Lender, the sums which would have otherwise been due and payable pursuant to this Guaranty had such acceleration occurred.

       2.7    **Rights Upon Insolvency and Related Events.**  If Guarantor (a) shall become insolvent or be unable to pay its debts as they mature, (b) shall admit in writing its inability to pay its debts as they mature; (c) shall make a general assignment for the benefit of creditors; (d) shall file or have filed against it a petition under any of the provisions of any Debtor Relief Laws for an adjudication in bankruptcy or for reorganization or to effect a plan or other arrangement with creditors or file an answer to a creditor's petition or other petition filed against it admitted the material allegations thereof; or (e) shall apply for the appointment of a receiver, liquidator or trustee of any substantial portion of its property or assets, or such a receiver, liquidator or trustee shall be appointed without application by Guarantor, then, whether any such event occurs at a time when any of the Obligations are then due and payable or not, the Unpaid Amount shall thereupon become due and payable in full, and Guarantor will pay to Lender forthwith in its entirety the Unpaid Amount and any other sums due and owing to Lender under the Loan Documents as if such Unpaid Amount and other sums were then due and payable. In addition, in any such event Lender, irrespective of whether any demand shall have been made on Guarantor, Borrower or any Obligor, by intervention in or initiation of judicial proceedings relative to Guarantor, its creditors or its property, may file and prove a claim or claims for such sum or any portion thereof and for any other sums due under the Loan Documents and file such other papers or documents as may be necessary or advisable in order to have such claim allowed in such judicial proceedings and to collect and receive any monies or other property payable or deliverable on any such claim, and to distribute the same; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized to make such payments to Lender.

2.8    <u>Actions by Lender</u>.    Anything else contained herein to the contrary notwithstanding, Lender, from time to time, whether before or after an Event of Default and without notice to Guarantor, may take all or any of the following actions without in any manner affecting or impairing the liability of Guarantor hereunder, and without waiving any rights which Lender may have, unless expressly waived in writing by Lender:  (a) make Advances under the Loan Documents, (b) obtain a security interest in any property to secure any of the Obligations or any obligation of Guarantor hereunder; (c) retain or obtain the primary or secondary liability of any party or parties, in addition to Guarantor, with respect to any of the Obligations; (d) extend the time for payment of any of the Obligations or the time for performance of any of the Obligations, in either case for any period (whether or not longer than the original term therefor); (e) release or compromise any liability of Guarantor hereunder or any liability of any nature of any other party or parties with respect to the Obligations; (f) resort to Guarantor for payment of any Obligations, whether or not Lender shall proceed against any other party primarily or secondarily liable on any of the Obligations or against any Collateral; (g) substitute, exchange or release all or any part of the Collateral; (h) agree to any amendment, modification, alteration, supplement or restatement of any of the Loan Documents and exercise its rights to consent to any action or non-action of Borrower which may violate the covenants and agreements contained in any of the Loan Documents, with or without consideration, on such terms and conditions as may be acceptable to it; (i) settle, compromise, forbear, release, surrender, modify, or impair; enforce and exercise; or fail or refuse to enforce or exercise, any claims, rights or remedies of any kind or nature against Borrower or against any security held by Lender for the payment of the Obligations or against any other Obligor; or (j) exercise any of its rights under the Loan Documents, at law or in equity.  Nothing in this Section or elsewhere in this Agreement shall constitute a waiver by Guarantor of any non-waivable rights or protections under the Uniform Commercial Code.

2.9    <u>No Release or Discharge</u>.    Guarantor shall not be released or discharged, either in whole or in part, by Lender's failure or delay to perfect or continue the perfection of any security interest in any property which secures the Obligations or to protect the property covered by such security interest.  Guarantor waives any rights or defenses which may arise as a result of errors or omissions in connection with the administration of the Receivables Loan by Lender.

2.10    <u>Reinstatement of Obligations</u>.    Guarantor agrees that if at any time all or any part of any payment applied by Lender to any of the Obligations is or must be rescinded or returned by Lender for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Borrower) such Obligations, for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, shall be deemed to have continued in existence, notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such Obligations, all as though such application by Lender had not been made.

2.11    <u>Remedies Cumulative</u>.    The remedies of Lender provided herein or in the Loan Documents shall be cumulative and concurrent, may be pursued singly, successively, or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

-4-

**3.    Power and Authority of Borrower.** It is not necessary for Lender to inquire into the powers of Borrower or its officers, directors, partners or agents purporting to act on its behalf, and the Obligations are hereby guaranteed notwithstanding the lack of power or authority on the part of Borrower or anyone acting on its behalf to incur the Obligations.

**4.    Default.** Guarantor shall also be in default under this Guaranty upon the occurrence of any Event of Default (as defined in the Loan Agreement). Upon the occurrence and during the continuance of any such Event of Default, Lender may, at its option, accelerate the obligations of Guarantor hereunder and take such other actions permitted at law or in equity or under this Guaranty, the Loan Agreement and any other Loan Documents.

**5.    Savings Clause.** Anything contained in this Guaranty or any other Loan Document to the contrary notwithstanding, the obligations of Guarantor with respect to the repayment of the outstanding principal balance of the Receivables Loan shall be limited to a maximum aggregate amount equal to the largest amount that would not render its obligations with respect thereto subject to avoidance as a fraudulent transfer or conveyance under Section 548 of Title 11 of the United States Code or any applicable provisions of comparable state, federal, provincial or other applicable law of any jurisdiction (collectively, the **"Fraudulent Transfer Laws"**), if and to the extent such Guarantor (or trustee on its behalf) has properly invoked the protections of the Fraudulent Transfer Laws. In making such determination, all rights of subrogation and contribution of Guarantor with respect to such obligations shall be deemed to be an asset of Guarantor.

**6.    Costs and Expenses.** Guarantor shall pay upon demand all losses, costs and expenses incurred by Lender in connection with the interpretation, enforcement, protection and preservation of the Lender's rights or remedies hereunder or in connection with any legal advice related to the rights or responsibilities of Lender (including without limitation court costs, attorney's fees and expenses and the cost of all appeals). Any amount thereof not paid promptly following demand shall be added to the sums payable hereunder and shall bear interest at the Default Rate from the date of such demand until paid in full. Any judgment obtained by Lender for sums due hereunder will accrue interest at such Default Rate until actual payment is made to Lender of the full amount due Lender hereunder. Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

**7.    Guarantor's Warranties.**

Guarantor represents and warrants to Lender as follows:

**7.1**    Guarantor has executed this Guaranty after conducting its own independent review and analysis of the financial condition and operations of Borrower, and Guarantor has not relied upon any representation, statement or information of or from Lender;

**7.2**    Guarantor is fully familiar with all of the covenants, terms and conditions of the Loan Documents;

**7.3**    Guarantor is not a party to any contract, agreement, indenture or instrument or subject to any charter or other corporate restriction which individually or in the

aggregate might materially adversely affect its financial condition, business, or operations or which would in any way jeopardize the ability of Guarantor to perform under this Guaranty;

       7.4    Guarantor was not induced to give this Guaranty by the fact that there are or may be other Obligors;

       7.5    Guarantor has received good and valuable consideration for guaranteeing the Obligations;

       7.6    Based upon Guarantor's financial condition, the financial condition of Borrower and the reasonable likelihood that Borrower might default under its Obligations to Lender and Guarantor would be compelled to pay or perform under this Guaranty, Guarantor is not rendered insolvent by the execution of this Guaranty;

       7.7    Based upon Guarantor's knowledge and familiarity with the financial condition and business operations of Borrower, Borrower's business and operations and the Project are financially viable and Borrower should be able to pay and perform its obligations as and when due in the ordinary course of business; and

       7.8    Thomas Hantges ("Hantges") and Joseph Milanowski ("Milanowski"), respectively, own 48.5% and 38% of the Guarantor. Hantges and Milanowski respectively own 57% and 38% of USA Investment Partners, LLC ("USAIP"), the Borrower's managing member. USAIP is the managing member of Borrower and owns 69% of the interests in Borrower. Guarantor has also extended financing to USAIP. As a result of the common ownership of Borrower and Guarantor, the financing extended by Guarantor to USAIP, and other business activities between Guarantor, Borrower and their affiliates, Guarantor will derive a benefit from the Lender's extension of credit to the Borrower. Guarantor acknowledges and agrees that Lender would not extend the credit facility under the Loan Agreement without the guaranty of the Guarantor and that Lender is relying upon this Guaranty in extending such credit facility.

    8.    **Waivers.**

       8.1    **General.** Guarantor hereby waives: (a) except as otherwise required under the Loan Agreement, notice of any default by Borrower under the Loan Documents; (b) notice of advances to Borrower pursuant to the Loan Documents; (c) notice of any payment to Lender on account of any obligation which Lender may hold as security for the payment of the Obligations and any defaults thereunder; (d) any rights Guarantor may have by reason of any forbearance, modification, waiver, renewal or extension which Lender may grant to Borrower or any other guarantor of the Obligations or any other Person or to which Lender and Borrower may agree; (e) except as otherwise required under the Loan Agreement, notice of acceptance, presentment, demand, demand for payment, notice, notice of dishonor or non-payment, demand for payment or protest of any kind; (f) any right to require or participate in a marshaling of Borrower's assets; (g) any defense or circumstance which might constitute a legal or equitable discharge of Guarantor (except payment in full); (h) all rights of setoff and counterclaims against Borrower which may adversely affect Lender's rights hereunder; (i) any disability of Borrower or defense available to Borrower, including absence or cessation of

-6-

Borrower's liability for any reason whatsoever; (j) any and all right to terminate Guarantor's obligations hereunder by delivery of written notice to Lender or otherwise; (k) all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof, from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered under any of the Loan Documents or in any replevin or foreclosure proceedings, or otherwise providing for any valuation, appraisal or exemption; (l) all rights to inquisition on any real estate, which real estate may be levied upon pursuant to a judgment obtained under any of the Loan Documents and sold upon any writ of execution issued thereon in whole or in part, in any order desired by Lender; (m) any requirement for bonds, security or sureties required by statute, court rule or otherwise; and (n) all defenses, offsets, or counterclaims of every kind and description which Guarantor or Borrower may at any time have to or with respect to the Obligations, except for partial or full payment.

**8.2    Duty to Disclose; Financial Conditions; Change in Ownership.** Guarantor hereby waives any duty on the part of Lender (should any such duty exist) to disclose to Guarantor any matter, fact or thing related to the business, operations or condition (financial or otherwise) of the Project, Borrower or its affiliates or subsidiaries or their properties, whether now known or hereafter known by Lender during the life of this Guaranty. The execution and delivery of this Guaranty is based solely on the independent investigation of Guarantor and in no part upon any representation or statement of Lender with respect thereto. Guarantor warrants that it is fully aware of the financial condition of Borrower, has adequate means to obtain such information from Borrower on a continuing basis, and is not relying on Lender to provide such information either now or in the future, but assumes full responsibility to obtain such information.

**8.3    Imperfections.** Guarantor hereby waives any and all errors, defects and imperfections in any action by Lender in replevin, foreclosure or other court process or in connection with any other action related to any of the Loan Documents or the transactions contemplated therein.

**8.4    Jury Trial.** GUARANTOR AND LENDER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING HEREUNDER OR UNDER ANY OF THE DOCUMENTS COLLATERAL HERETO, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF GUARANTOR OR LENDER WITH RESPECT HERETO OR TO ANY OF THE DOCUMENTS COLLATERAL HERETO, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. GUARANTOR AND LENDER AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS GUARANTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GUARANTOR AND LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. GUARANTOR ACKNOWLEDGES THAT GUARANTOR HAS HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION, THAT GUARANTOR FULLY

-7-

UNDERSTANDS ITS TERMS, CONTENT AND EFFECT AND THAT GUARANTOR VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS SECTION.

8.5    **Limitation on Damages.** Guarantor and Lender agree that in any action, suit or proceeding, in respect of or arising out of this Guaranty, the Loan Documents or the transactions contemplated hereunder, whether sounding in contract or tort, each waives to the fullest extent permitted by law, any claim they may have against the other for consequential, punitive or special damages.

8.6    **Additional Waivers.** Guarantor freely, irrevocably and unconditionally acknowledges and agrees that the rights and defenses waived by Guarantor in this Guaranty includes any right or defense that Guarantor may have or be entitled to assert based upon or arising out of any one or more of Sections 40.430 through 40.495 of the Nevada Revised Statutes, as the same may hereafter be amended. Notwithstanding the foregoing, Guarantor shall not be deemed to have waived any statutory right of Guarantor which may not be waived by law.

9.    **Subrogation and Subordination.** Guarantor hereby waives any and all rights Guarantor may have at any time until full and final payment of all Obligations and the termination of any obligation of Lender to make advances under the Loan Agreement (whether such rights are arising directly or indirectly, by operation of law or contract) to assert any claim against Borrower or any other Guarantor on account of payments made or obligations performed under this Guaranty, including, without limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity. Lender may use, sell or dispose of any item of collateral or security for the Obligations as it sees fit without regard to any subrogation rights Guarantor may have, and upon any such disposition or sale of such collateral or security any rights or subrogation that Guarantor may have with respect to such collateral or security shall terminate.

Any and all rights that Guarantor may have against Borrower or against any collateral or security for any of the Obligations, and any and all rights of subrogation, reimbursement, exoneration, contribution, indemnity and/or substitution that Guarantor may have against Borrower or any other Obligor, shall be junior and subordinate to all Obligations, to any rights that Lender may have against Borrower, to all right, title and interest that Lender may have in any such collateral or security for the Obligations, and to any right Lender may have against such other Obligor.

Until the Obligations shall have been indefeasibly paid and performed in full, Guarantor shall not take, or permit to be taken, any action to exercise (a) any right of subrogation arising in respect of the Obligations, (b) any right of contribution arising in respect of the Obligations that Guarantor may have against any other Obligor, (c) any right to enforce any remedy which Lender now has or may hereafter have against Borrower, or (d) any benefit of, and any right to participate in, any security now or hereafter held by Lender. If any amount shall be paid to Guarantor on account of such subrogation or contribution rights at any time when all Obligations shall not have been paid and performed in full, such amount shall be held in trust for Lender and shall forthwith be paid over to Lender to be credited and applied against the Obligations, whether matured or unmatured, in accordance with the terms of the Loan

Documents.  Nothing in this Section shall restrict Borrower from making or Guarantor from receiving any payments permitted under the Loan Documents.

        **10.**    **Miscellaneous**.

        **10.1**    **Recourse**.  Each Person who signs this Guaranty hereby expressly agrees that recourse may be made against all property owned by such person, regardless of the manner in which it is titled or held, for all obligations under this Guaranty.

        **10.2**    **Notices**.  Notices, requests, demands or instructions to be given hereunder to any party shall be given as set forth in the Loan Agreement.

        **10.3**    **Binding Effect; Assignment**.  This Guaranty shall bind and inure to the benefit of the parties hereto and their respective, successors and assigns; provided however, that Guarantor shall not assign its rights or obligations under this Guaranty without the Lender's prior written consent.

        **10.4**    **No Waiver**.  No delay or omission to exercise any right, power or remedy accruing to Lender upon any breach or default of Guarantor under this Guaranty or by Borrower under the Loan Documents shall impair any such right, power or remedy of Lender, nor shall it be construed to be a waiver of any such breach or default thereafter occurring, nor shall any waiver of any single breach or default theretofore occurring be deemed a waiver of any other breach or default.  Any waiver, permit, consent or approval of any kind under this Guaranty, or any waiver on the part of Lender of any provision or condition of this Guaranty must be in writing and shall be effective only to the extent specifically set forth in such writing.

        **10.5**    **Remedies Cumulative**.  All remedies either under this Guaranty, by law, or otherwise afforded to Lender, shall be cumulative and not alternative.

        **10.6**    **No Other Agreements**.  All understandings and agreements heretofore had between the parties respecting the transactions contemplated by this Guaranty are merged in this Guaranty and the Loan Documents and there are no other agreements, written or oral, and no customs or usages applicable to any provision of this Guaranty.

        **10.7**    **Amendments**.  No change in or addition to, or waiver of, any provision of this Guaranty shall be valid unless in writing and signed on behalf of the party against whom such change, addition or waiver is sought to be enforced.

        **10.8**    **Survival of Covenants, Agreements, Representations and Warranties**.  All warranties, representations and covenants made by Guarantor herein or in any certificate or other instrument delivered by it or on its behalf under this Guaranty:  (a) shall be considered to have been relied upon by Lender and shall survive execution of this Guaranty, termination of this Loan Agreement, regardless of any investigation made by Lender or on its behalf, (b) are material and being relied upon by Lender, and (c) are true in all respects as of the date hereof and shall be true, with the exception of the representations set forth in **Section 7.8** hereof, in all respects at all times hereafter until all Obligations have been fully and finally repaid and Lender has no further obligation to make advances under the Loan Agreement.

DOCS_PH 1594842v6

10.9 <u>Governing Law</u>. THIS GUARANTY AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, AND ALL THE RIGHTS OF THE PARTIES SHALL BE GOVERNED AS TO THE VALIDITY, INTERPRETATION, CONSTRUCTION, ENFORCEMENT AND IN ALL OTHER RESPECTS BY THE LAW OF THE STATE OF CONNECTICUT, THE PRIMARY PLACE OF BUSINESS OF LENDER, WITHOUT REGARD TO ITS RULES AND PRINCIPLES REGARDING CONFLICTS OF LAWS OR ANY RULE OR CANON OF CONSTRUCTION WHICH INTERPRETS AGREEMENTS AGAINST THE DRAFTSMAN.

10.10 <u>Limitation of Liability</u>. Lender shall only be liable for any act or omission on its part constituting gross negligence, willful misconduct or material and willful violation of any applicable law. In the event Guarantor brings suit against Lender in connection with the transactions contemplated hereunder and Lender is found not to be liable, Guarantor will indemnify and hold Lender harmless from all costs and expenses, including attorney's fees, incurred by Lender in connection with such suit. Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

10.11 <u>Submission to Jurisdiction</u>. Guarantor hereby consents to the non-exclusive jurisdiction of any state or federal court located within the State of Connecticut and irrevocably agrees that, subject to the Lender's election, all actions or proceedings relating to the Guaranty or the transactions contemplated hereunder shall be litigated in such courts. Guarantor waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this Guaranty shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any action or proceeding against Guarantor or its property in the courts of any other jurisdiction.

10.12 <u>Service of Process</u>. GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF ANY SUMMONS AND COMPLAINT IN CONNECTION WITH ANY PROCEEDINGS ARISING OUT OF THIS GUARANTY, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO GUARANTOR, AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT PURSUANT TO <u>SECTION 10.2</u>. GUARANTOR WAIVES ANY CLAIM THAT CONNECTICUT IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. SHOULD GUARANTOR, AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, GUARANTOR SHALL BE DEEMED IN DEFAULT AND AN ORDER AND/OR JUDGMENT MAY BE ENTERED BY LENDER AGAINST GUARANTOR AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS.

10.13 <u>Headings; References to "Sections"</u>. Section headings have been inserted in this Guaranty as a matter of convenience of reference only, and are not a part of this

DOCS_PH 1594842v6

Guaranty and shall not be used in the interpretation of this Guaranty. References herein to a "Section" without further attribution shall be deemed to refer to sections of or to this Guaranty.

**10.14 Severability.** If any one or more of the provisions of this Guaranty are held to be invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision or provisions in every other respect and of the remaining provisions of this Guaranty shall not be in any way impaired.

**10.15 Sale; Participations; Delegations of Duties.** Guarantor acknowledges and agrees that Lender shall have the right, without notice to or consent of Guarantor, to sell participation interests in the Receivables Loan or the Receivables Loan as a whole to other Persons and that Lender may delegate to other Persons performance of certain obligations of Lender. In connection therewith, Lender may make available to any prospective purchaser, assignee or participant any information in its possession regarding Guarantor. In the event that Lender participates or sells its interest in the Receivables Loan to any other Person, Lender shall have no further responsibilities or liabilities in connection with the sold or participated portion of the Receivables Loan, including without limitation the obligations to fund Advances related to such sold portion or participant's portion after the date of such sale. All of such responsibilities and liabilities after the date of such sale shall be those of the participant or the purchaser of Lender's interest.

**10.16 Indemnification.** Guarantor agrees to indemnify Lender and all participants, their successors, assigns, shareholders, officers, directors, employees and agents (each an "**Indemnified Party**") against any damage, loss or expense (including attorneys' fees and court costs) awarded against or paid, incurred or suffered by any Indemnified Party as a result of proceedings, actions, claims, counterclaims, fines or penalties arising out of or resulting from (a) any act or omission of Borrower, Guarantor or any of their respective employees, contractors or agents, (b) any violation of or noncompliance by Borrower or Guarantor with any Legal Requirement, (c) the breach by Borrower or Guarantor of any covenant, warranty, term or provision of this Guaranty or any Loan Document, or (d) any misrepresentation by Borrower or Guarantor in respect of any aspect of the transactions contemplated by this Guaranty or the Loan Documents.

In the event Borrower or Guarantor shall fail to pay taxes, insurance, assessments, costs or expenses which any of them are required to pay hereunder or under the Loan Documents, or fail to keep the Collateral free from security interests or lien or fail to maintain or repair the Project as required pursuant to the Loan Documents, or otherwise breaches any obligation hereunder or under the Loan Documents, Lender in its discretion, may make expenditures for such purposes and the amount so expended (including attorney's fees and expenses, filing fees and other charges) shall be payable by Guarantor on demand. With respect to any amount required to be paid by Guarantor under this section, in the event Guarantor fails to pay such amount on demand, Guarantor shall also pay to Lender interest thereon at the Default Rate.

Guarantor agrees to indemnify and hold harmless, each Indemnified Party, from and against any and all claims, liabilities, losses, damages, costs and expenses (whether or not such person is a party to any litigation), including attorney's fees and costs and costs of

investigation, document production, attendance at depositions or other discovery with respect to or arising out of this Guaranty, any of the Loan Documents, the use of any proceeds advanced hereunder, the transactions contemplated hereunder, or any claim, demand, action or cause of action being asserted against Borrower or Guarantor.

Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

**10.17 Limitation on Waivers, Releases and Indemnities.** Notwithstanding anything herein or elsewhere to the contrary, Guarantor shall not be deemed to have waived, released or agreed to indemnify Lender under this Guaranty for Lender's gross negligence, willful misconduct or, material and willful violation of applicable law.

**10.18 Counterparts; Facsimile Signatures.** This Guaranty may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original without the production of any other counterpart. Any signature on any Loan Document or any document collateral thereto, delivered by Borrower or Guarantor by facsimile transmission shall be deemed to be an original signature thereto.

**10.19 Time of the Essence.** Time is of the essence in the performance by Guarantor of all its obligations hereunder.

**10.20 Commercial Transaction.** GUARANTOR ACKNOWLEDGES THAT THIS IS A "COMMERCIAL TRANSACTION" AS SUCH IS DEFINED IN CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED. GUARANTOR FURTHER ACKNOWLEDGES THAT, PURSUANT TO SUCH SECTION, IT HAS A RIGHT TO NOTICE OF AND HEARING PRIOR TO THE ISSUANCE OF ANY "PREJUDGMENT REMEDY". NOTWITHSTANDING THE FOREGOING, GUARANTOR HEREBY WAIVES ALL RIGHTS TO SUCH NOTICE, JUDICIAL HEARING OR PRIOR COURT ORDER IN CONNECTION WITH ANY SUIT ON THIS GUARANTY, ANY OF THE LOAN DOCUMENTS OR ANY EXTENSIONS OR RENEWALS OF THE SAME.

-12-

**IN WITNESS WHEREOF,** the parties hereto have executed this Guaranty effective as of the date first herein above written, and acknowledge receipt of a copy hereof.

**GUARANTOR:**                                    **LENDER:**

**USA COMMERCIAL MORTGAGE**            **LIBERTY BANK**
**COMPANY**

By: _____        By: _____
Joseph D. Milanowski, President         Jason M. Gordon, Vice President

-13-

STATE OF NEVADA                 :

COUNTY OF   Clerk        :   SS.
                                    :

        On this, the 13 day of November, 2004, before me, a notary public, personally appeared Joseph D. Milanowski, who acknowledged himself to be the President of USA Commercial Mortgage Company, and that he as such officer, being authorized to do so, executed the foregoing instrument on behalf of the company for the purposes therein contained by signing his name on behalf of the company as such officer.

        **IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

                                        Notary Public

                                        My Commission Expires:

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006

-14-

DOCS_PH 1594842v6

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Guaranty") is made effective as of November 15, 2004, by and between USA INVESTMENT PARTNERS, LLC, a Nevada limited liability company (the "Guarantor") and LIBERTY BANK, a Connecticut nonstock mutual savings bank ("Lender").

### BACKGROUND

A.    Lender is entering into a Receivables Loan Agreement with HMA Sales, LLC, a Nevada limited liability company ("Borrower") to be dated as of the date hereof. Such Receivables Loan Agreement as it may be amended, modified, restated or supplemented is referred to as the "Loan Agreement".

B.    Pursuant to the Loan Agreement, Lender will extend a certain credit facility to Borrower.

C.    Capitalized terms not otherwise defined in this Guaranty will have the meanings set forth in the Loan Agreement.

D.    Lender is willing to enter into the Loan Agreement and extend the receivables loan to Borrower, only if Guarantor agrees to guarantee the full, prompt, complete and faithful payment and performance of all Obligations of Borrower and to execute and deliver this Guaranty.

NOW, THEREFORE, in order to induce Lender to enter into the Loan Agreement and to make advances under the Loan Agreement, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, Guarantor hereby unconditionally covenants and agrees with Lender as follows:

1.    **Guaranty.**

1.1    **General.**    Guarantor absolutely and unconditionally, jointly and severally as between itself and with any other Obligors (as defined in **Section 2.2**), guarantees the full, prompt, complete and faithful performance, payment, observance and fulfillment by Borrower of all the Obligations, including, but not limited to, the payment of all principal of, premium (if any) on, and interest on the Receivables Loan and all prepayment fees, other fees, costs, expenses and indemnities of Borrower owing to Lender under the Loan Documents.

1.2    **Payment Obligations.**    Guarantor covenants and agrees absolutely and unconditionally that, upon the receipt of written notice from or on behalf of Lender to the effect that there exists an Event of Default, Guarantor will pay in its entirety the entire unpaid principal balance with accrued and unpaid interest due under the Receivables Loan and any other payment Obligations (collectively, the "Unpaid Amount") in lawful money of the United States to Lender. If Guarantor should fail to pay the Unpaid Amount or any other payment Obligations of Borrower owed to Lender following receipt of Lender's written request for payment of such sums, then such sums shall thereafter bear interest at the highest default rate set forth in the Loan Agreement for the Receivables Loan (the "Default Rate"). If Guarantor shall fail to pay the

DOCS_PH 1594854v7

Unpaid Amount or any other payment Obligations of Borrower owed to Lender, Lender may also institute and pursue any action or proceeding to judgment or final decree and may enforce any such judgment or final decree against Guarantor and collect in the manner provided by law out of Guarantor's property, wherever situated, the monies adjudged or decreed to be payable.

**1.3    Continuing Guaranty.** THIS GUARANTY IS A CONTINUING GUARANTY AND SHALL CONTINUE IN FORCE UNTIL ALL OBLIGATIONS HAVE BEEN PAID, PERFORMED AND SATISFIED IN FULL AND LENDER HAS NO FURTHER OBLIGATION OR COMMITMENT TO ADVANCE SUMS OR EXTEND ANY CREDIT FACILITY TO BORROWER. GUARANTOR EXPRESSLY AGREES THAT BORROWER MAY CREATE OR INCUR OBLIGATIONS AND MAY REPAY AND SUBSEQUENTLY CREATE OR INCUR OBLIGATIONS, ALL WITHOUT NOTICE TO GUARANTOR, AND GUARANTOR SHALL BE BOUND THEREBY.

**2.    Remedies and Rights of Lender.**

**2.1    Notice of Default.** Neither failure to give, nor defect in, any notice of any Incipient Default or Event of Default given to Guarantor shall extinguish or in any way affect the obligations of Guarantor under this Guaranty or give rise to any claim by Guarantor for breach other than to the extent the periods governing Guarantor's performance, as set forth in **Sections 1.2**, may be affected by the timing of the notice. Lender has agreed in the Loan Agreement to provide Guarantor with a copy of any notice of Incipient Default or Event of Default sent to Borrower. The first sentence of this **Section 2.1** shall not waive such notice requirement. Lender agrees that any cure by Guarantor of any Incipient Default within any applicable cure period provided to Borrower under the Loan Agreement, will be accepted by Lender as if it were a cure by Borrower.

**2.2    Rights As Against Others.** Neither demand on, nor the pursuit of any remedies against Borrower, or any guarantor, surety or insurer of the Obligations or part thereof (individually, an **"Obligor"** and collectively, the **"Obligors"**) or any of the Collateral shall be required as a condition precedent to, and neither the pendency nor the prior termination of any action, suit or proceeding against Borrower or any Obligor (whether for the same or a different remedy) shall bar or prejudice the making of, a demand on Guarantor by Lender and the commencement against Guarantor after such demand of any action, suit or proceeding, at law or in equity, or for the enforcement of any other appropriate legal or equitable remedy.

**2.3    Character of Obligation.** Guarantor's liability hereunder is absolute, primary, direct and immediate. Guarantor's obligation to pay the Obligations is a guaranty of payment not of collection.

**2.4    No Impairment of Obligations.** Guarantor agrees that neither: (a) the exercise or the failure to exercise by Lender of any rights or remedies conferred on it under the Loan Documents; (b) the recovery of a judgment against Borrower or any Obligor; (c) the commencement of an action at law or the recovery of a judgment at law against Borrower or any Obligor and the enforcement thereof through levy, execution or otherwise; (d) the taking or institution of any other action or proceeding against Borrower or any Obligor or any Collateral; nor (e) any delay in taking, pursuing or exercising any of the foregoing actions, rights, powers or

-2-

remedies (even though requested by Guarantor) by Lender or anyone acting for Lender shall extinguish, affect or impair the obligations of Guarantor hereunder.

**2.5    No Defense Or Discharge.**  Guarantor shall be and remain liable for all Obligations until such Obligations shall have been fully paid and/or performed notwithstanding (a) the genuineness, validity or enforceability of the Loan Agreement or any other Loan Documents; (b) any limitation of liability of Borrower contained in any document; (c) the existence of any security or other guaranty given to secure the Obligations; (d) the impossibility or illegality of performance on the part of Borrower of the Obligations; (e) sale or other transfer of all or any portion of the collateral securing the Obligations; (f) any defense that may arise by reason of the incapacity or lack of authority of Borrower, Guarantor or any other Obligor, or the failure of Lender to file or enforce a claim against the estate of Borrower or any other Obligor in any bankruptcy or other proceedings; or (g) any other circumstances, occurrences or conditions, whether similar or dissimilar to any of the foregoing, which might otherwise constitute a legal or equitable defense, discharge or release of a guarantor or surety. Nothing in this Section shall constitute a waiver by Guarantor of any non-waivable rights or protections under the Uniform Commercial Code.

**2.6    Acceleration As To Guarantor.**  If Borrower defaults under the Loan Agreement or any of the other Loan Documents and Lender is prevented from accelerating payment under the Receivables Loan Note or the Loan Agreement, either by operation of any bankruptcy laws or otherwise, Lender shall be entitled to receive from Guarantor, upon demand by Lender, the sums which would have otherwise been due and payable pursuant to this Guaranty had such acceleration occurred.

**2.7    Rights Upon Insolvency and Related Events.**  If Guarantor (a) shall become insolvent or be unable to pay its debts as they mature, (b) shall admit in writing its inability to pay its debts as they mature; (c) shall make a general assignment for the benefit of creditors; (d) shall file or have filed against it a petition under any of the provisions of any Debtor Relief Laws for an adjudication in bankruptcy or for reorganization or to effect a plan or other arrangement with creditors or file an answer to a creditor's petition or other petition filed against it admitted the material allegations thereof; or (e) shall apply for the appointment of a receiver, liquidator or trustee of any substantial portion of its property or assets, or such a receiver, liquidator or trustee shall be appointed without application by Guarantor, then, whether any such event occurs at a time when any of the Obligations are then due and payable or not, the Unpaid Amount shall thereupon become due and payable in full, and Guarantor will pay to Lender forthwith in its entirety the Unpaid Amount and any other sums due and owing to Lender under the Loan Documents as if such Unpaid Amount and other sums were then due and payable.  In addition, in any such event Lender, irrespective of whether any demand shall have been made on Guarantor, Borrower or any Obligor, by intervention in or initiation of judicial proceedings relative to Guarantor, its creditors or its property, may file and prove a claim or claims for such sum or any portion thereof and for any other sums due under the Loan Documents and file such other papers or documents as may be necessary or advisable in order to have such claim allowed in such judicial proceedings and to collect and receive any monies or other property payable or deliverable on any such claim, and to distribute the same; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized to make such payments to Lender.

-3-

**2.8**    **Actions by Lender**.    Anything else contained herein to the contrary notwithstanding, Lender, from time to time, whether before or after an Event of Default and without notice to Guarantor, may take all or any of the following actions without in any manner affecting or impairing the liability of Guarantor hereunder, and without waiving any rights which Lender may have, unless expressly waived in writing by Lender:  (a) make Advances under the Loan Documents, (b) obtain a security interest in any property to secure any of the Obligations or any obligation of Guarantor hereunder; (c) retain or obtain the primary or secondary liability of any party or parties, in addition to Guarantor, with respect to any of the Obligations; (d) extend the time for payment of any of the Obligations or the time for performance of any of the Obligations, in either case for any period (whether or not longer than the original term therefor); (e) release or compromise any liability of Guarantor hereunder or any liability of any nature of any other party or parties with respect to the Obligations; (f) resort to Guarantor for payment of any Obligations, whether or not Lender shall proceed against any other party primarily or secondarily liable on any of the Obligations or against any Collateral; (g) substitute, exchange or release all or any part of the Collateral; (h) agree to any amendment, modification, alteration, supplement or restatement of any of the Loan Documents and exercise its rights to consent to any action or non-action of Borrower which may violate the covenants and agreements contained in any of the Loan Documents, with or without consideration, on such terms and conditions as may be acceptable to it; (i) settle, compromise, forbear, release, surrender, modify, or impair; enforce and exercise; or fail or refuse to enforce or exercise, any claims, rights or remedies of any kind or nature against Borrower or against any security held by Lender for the payment of the Obligations or against any other Obligor; or (j) exercise any of its rights under the Loan Documents, at law or in equity.  Nothing in this Section or elsewhere in this Agreement shall constitute a waiver by Guarantor of any non-waivable rights or protections under the Uniform Commercial Code.

**2.9**    **No Release or Discharge**.    Guarantor shall not be released or discharged, either in whole or in part, by Lender's failure or delay to perfect or continue the perfection of any security interest in any property which secures the Obligations or to protect the property covered by such security interest.  Guarantor waives any rights or defenses which may arise as a result of errors or omissions in connection with the administration of the Receivables Loan by Lender.

**2.10**    **Reinstatement of Obligations**.    Guarantor agrees that if at any time all or any part of any payment applied by Lender to any of the Obligations is or must be rescinded or returned by Lender for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Borrower) such Obligations, for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, shall be deemed to have continued in existence, notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such Obligations, all as though such application by Lender had not been made.

**2.11**    **Remedies Cumulative**.    The remedies of Lender provided herein or in the Loan Documents shall be cumulative and concurrent, may be pursued singly, successively, or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

-4-

3.    **Power and Authority of Borrower**.  It is not necessary for Lender to inquire into the powers of Borrower or its officers, directors, partners or agents purporting to act on its behalf, and the Obligations are hereby guaranteed notwithstanding the lack of power or authority on the part of Borrower or anyone acting on its behalf to incur the Obligations.

4.    **Default**.  Guarantor shall also be in default under this Guaranty upon the occurrence of any Event of Default (as defined in the Loan Agreement).  Upon the occurrence and during the continuance of any such Event of Default, Lender may, at its option, accelerate the obligations of Guarantor hereunder and take such other actions permitted at law or in equity or under this Guaranty, the Loan Agreement and any other Loan Documents.

5.    **Costs and Expenses**.  Guarantor shall pay upon demand all losses, costs and expenses incurred by Lender in connection with the interpretation, enforcement, protection and preservation of the Lender's rights or remedies hereunder or in connection with any legal advice related to the rights or responsibilities of Lender (including without limitation court costs, attorney's fees and expenses and the cost of all appeals).  Any amount thereof not paid promptly following demand shall be added to the sums payable hereunder and shall bear interest at the Default Rate from the date of such demand until paid in full.  Any judgment obtained by Lender for sums due hereunder will accrue interest at such Default Rate until actual payment is made to Lender of the full amount due Lender hereunder.  Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

6.    **Guarantor's Warranties**.

Guarantor represents and warrants to Lender as follows:

6.1    Guarantor has executed this Guaranty after conducting its own independent review and analysis of the financial condition and operations of Borrower, and Guarantor has not relied upon any representation, statement or information of or from Lender;

6.2    Guarantor is fully familiar with all of the covenants, terms and conditions of the Loan Documents;

6.3    Guarantor is not a party to any contract, agreement, indenture or instrument or subject to any charter or other corporate restriction which individually or in the aggregate might materially adversely affect its financial condition, business, or operations or which would in any way jeopardize the ability of Guarantor to perform under this Guaranty;

6.4    Guarantor was not induced to give this Guaranty by the fact that there are or may be other Obligors;

6.5    Guarantor has received good and valuable consideration for guaranteeing the Obligations;

6.6    Based upon Guarantor's financial condition, the financial condition of Borrower and the reasonable likelihood that Borrower might default under its Obligations to Lender and Guarantor would be compelled to pay or perform under this Guaranty, Guarantor is not rendered insolvent by the execution of this Guaranty;

DOCS_PH 1594854v7

6.7     Based upon Guarantor's knowledge and familiarity with the financial condition and business operations of Borrower, Borrower's business and operations and the Project are financially viable and Borrower should be able to pay and perform its obligations as and when due in the ordinary course of business; and

6.8     Guarantor holds a 69% ownership interest in the Borrower, is providing financing to the Borrower, and accordingly, derives a benefit from the Lender's extension of credit to the Borrower.

7.     **Waivers.**

7.1     **General.**   Guarantor hereby waives:  (a) except as otherwise required under the Loan Agreement, notice of any default by Borrower under the Loan Documents; (b) notice of advances to Borrower pursuant to the Loan Documents; (c) notice of any payment to Lender on account of any obligation which Lender may hold as security for the payment of the Obligations and any defaults thereunder; (d) any rights Guarantor may have by reason of any forbearance, modification, waiver, renewal or extension which Lender may grant to Borrower or any other guarantor of the Obligations or any other Person or to which Lender and Borrower may agree; (e) except as otherwise expressly provided in the Loan Agreement or this Guaranty, notice of acceptance, presentment, demand, demand for payment, notice, notice of dishonor or non-payment, demand for payment or protest of any kind; (f) any right to require or participate in a marshaling of Borrower's assets; (g) any defense or circumstance which might constitute a legal or equitable discharge of Guarantor (except payment in full); (h) all rights of setoff and counterclaims against Borrower which may adversely affect Lender's rights hereunder; (i) any disability of Borrower or defense available to Borrower, including absence or cessation of Borrower's liability for any reason whatsoever; (j) any and all right to terminate Guarantor's obligations hereunder by delivery of written notice to Lender or otherwise; (k) all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof, from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered under any of the Loan Documents or in any replevin or foreclosure proceedings, or otherwise providing for any valuation, appraisal or exemption; (l) all rights to inquisition on any real estate, which real estate may be levied upon pursuant to a judgment obtained under any of the Loan Documents and sold upon any writ of execution issued thereon in whole or in part, in any order desired by Lender; (m) any requirement for bonds, security or sureties required by statute, court rule or otherwise; and (n) all defenses, offsets, or counterclaims of every kind and description which Guarantor or Borrower may at any time have to or with respect to the Obligations, except for partial or full payment.

7.2     **Duty to Disclose; Financial Conditions; Change in Ownership.**  Guarantor hereby waives any duty on the part of Lender (should any such duty exist) to disclose to Guarantor any matter, fact or thing related to the business, operations or condition (financial or otherwise) of the Project, Borrower or its affiliates or subsidiaries or their properties, whether now known or hereafter known by Lender during the life of this Guaranty.  The execution and delivery of this Guaranty is based solely on the independent investigation of Guarantor and in no part upon any representation or statement of Lender with respect thereto.  Guarantor warrants that it is fully aware of the financial condition of Borrower, has adequate means to obtain such information from Borrower on a continuing basis, and is not relying on Lender to provide such

-6-

information either now or in the future, but assumes full responsibility to obtain such information.

7.3    **Imperfections**.  Guarantor hereby waives any and all errors, defects and imperfections in any action by Lender in replevin, foreclosure or other court process or in connection with any other action related to any of the Loan Documents or the transactions contemplated therein.

7.4    **Jury Trial**.  GUARANTOR AND LENDER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING HEREUNDER OR UNDER ANY OF THE DOCUMENTS COLLATERAL HERETO, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF GUARANTOR OR LENDER WITH RESPECT HERETO OR TO ANY OF THE DOCUMENTS COLLATERAL HERETO, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.  GUARANTOR AND LENDER AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS GUARANTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GUARANTOR AND LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.  GUARANTOR ACKNOWLEDGES THAT GUARANTOR HAS HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION, THAT GUARANTOR FULLY UNDERSTANDS ITS TERMS, CONTENT AND EFFECT AND THAT GUARANTOR VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS SECTION.

7.5    **Limitation on Damages**.  Guarantor and Lender agree that in any action, suit or proceeding, in respect of or arising out of this Guaranty, the Loan Documents or the transactions contemplated hereunder, whether sounding in contract or tort, each waives to the fullest extent permitted by law, any claim they may have against the other for consequential, punitive or special damages.

7.6    **Other.**    Guarantor freely, irrevocably and unconditionally acknowledges and agrees that the rights and defenses waived by Guarantor in this Guaranty includes any right or defense that Guarantor may have or be entitled to assert based upon or arising out of any one or more of Sections 40.430 through 40.495 of the Nevada Revised Statutes, as the same may hereafter be amended.  Notwithstanding the foregoing, Guarantor shall not be deemed to have waived any statutory right of Guarantor which may not be waived by law.

8.    **Subrogation and Subordination**.  Guarantor hereby waives any and all rights Guarantor may have at any time until full and final payment of all Obligations and the termination of any obligations of Lender to make Advances under the Loan Agreement (whether such rights are arising directly or indirectly, by operation of law or contract) to assert any claim against Borrower or any other Guarantor on account of payments made or obligations performed under this Guaranty, including, without limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity.  Lender may use, sell or dispose of any

-7-

item of collateral or security for the Obligations as it sees fit without regard to any subrogation rights Guarantor may have, and upon any such disposition or sale of such collateral or security any rights or subrogation that Guarantor may have with respect to such collateral or security shall terminate.

Any and all rights that Guarantor may have against Borrower or against any collateral or security for any of the Obligations, and any and all rights of subrogation, reimbursement, exoneration, contribution, indemnity and/or substitution that Guarantor may have against Borrower or any other Obligor, shall be junior and subordinate to all Obligations, to any rights that Lender may have against Borrower, to all right, title and interest that Lender may have in any such collateral or security for the Obligations, and to any right Lender may have against such other Obligor.

Until the Obligations shall have been indefeasibly paid and performed in full, Guarantor shall not take, or permit to be taken, any action to exercise (a) any right of subrogation arising in respect of the Obligations, (b) any right of contribution arising in respect of the Obligations that Guarantor may have against any other Obligor, (c) any right to enforce any remedy which Lender now has or may hereafter have against Borrower, or (d) any benefit of, and any right to participate in, any security now or hereafter held by Lender. If any amount shall be paid to Guarantor on account of such subrogation or contribution rights at any time when all Obligations shall not have been paid and performed in full, such amount shall be held in trust for Lender and shall forthwith be paid over to Lender to be credited and applied against the Obligations, whether matured or unmatured, in accordance with the terms of the Loan Documents. Nothing in this Section shall restrict Borrower from making or Guarantor from receiving any payments permitted under the Loan Documents.

9.    **Miscellaneous**.

9.1    **Recourse**. Each Person who signs this Guaranty hereby expressly agrees that recourse may be made against all property owned by such person, regardless of the manner in which it is titled or held, for all obligations under this Guaranty.

9.2    **Notices**. Notices, requests, demands or instructions to be given hereunder to any party shall be given as set forth in the Loan Agreement.

9.3    **Binding Effect; Assignment**. This Guaranty shall bind and inure to the benefit of the parties hereto and their respective, successors and assigns; provided however, that Guarantor shall not assign its rights or obligations under this Guaranty without the Lender's prior written consent.

9.4    **No Waiver**. No delay or omission to exercise any right, power or remedy accruing to Lender upon any breach or default of Guarantor under this Guaranty or by Borrower under the Loan Documents shall impair any such right, power or remedy of Lender, nor shall it be construed to be a waiver of any such breach or default thereafter occurring, nor shall any waiver of any single breach or default theretofore occurring be deemed a waiver of any other breach or default.  Any waiver, permit, consent or approval of any kind under this

-8-

Guaranty, or any waiver on the part of Lender of any provision or condition of this Guaranty must be in writing and shall be effective only to the extent specifically set forth in such writing.

        9.5    **Remedies Cumulative**. All remedies either under this Guaranty, by law, or otherwise afforded to Lender, shall be cumulative and not alternative.

        9.6    **No Other Agreements**. All understandings and agreements heretofore had between the parties respecting the transactions contemplated by this Guaranty are merged in this Guaranty and the Loan Documents and there are no other agreements, written or oral, and no customs or usages applicable to any provision of this Guaranty.

        9.7    **Amendments**. No change in or addition to, or waiver of, any provision of this Guaranty shall be valid unless in writing and signed on behalf of the party against whom such change, addition or waiver is sought to be enforced.

        9.8    **Survival of Covenants, Agreements, Representations and Warranties**. All warranties, representations and covenants made by Guarantor herein or in any certificate or other instrument delivered by it or on its behalf under this Guaranty: (a) shall be considered to have been relied upon by Lender and shall survive execution of this Guaranty and termination of the Loan Agreement, regardless of any investigation made by Lender or on its behalf, (b) are material and being relied upon by Lender, and (c) are true in all respects as of the date hereof and, with the exception of the representation set forth in Section 6.8 hereof, shall be true in all respects at all times hereafter until all Obligations have been fully and finally repaid and Lender has no further obligation to make Advances under the Loan Agreement.

        9.9    **Governing Law**. THIS GUARANTY AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, AND ALL THE RIGHTS OF THE PARTIES SHALL BE GOVERNED AS TO THE VALIDITY, INTERPRETATION, CONSTRUCTION, ENFORCEMENT AND IN ALL OTHER RESPECTS BY THE LAW OF THE STATE OF CONNECTICUT, THE PRIMARY PLACE OF BUSINESS OF LENDER, WITHOUT REGARD TO ITS RULES AND PRINCIPLES REGARDING CONFLICTS OF LAWS OR ANY RULE OR CANON OF CONSTRUCTION WHICH INTERPRETS AGREEMENTS AGAINST THE DRAFTSMAN.

        9.10    **Limitation of Liability**. Lender shall only be liable for any act or omission on its part constituting gross negligence, willful misconduct, or material and wilful violation of any applicable law. In the event Guarantor brings suit against Lender in connection with the transactions contemplated hereunder and Lender is found not to be liable, Guarantor will indemnify and hold Lender harmless from all costs and expenses, including attorney's fees, incurred by Lender in connection with such suit. Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

        9.11    **Submission to Jurisdiction**. Guarantor hereby consents to the non-exclusive jurisdiction of any state or federal court located within the State of Connecticut and irrevocably agrees that, subject to the Lender's election, all actions or proceedings relating to the Guaranty or the transactions contemplated hereunder shall be litigated in such courts. Guarantor waives any objection which it may have based on lack of personal jurisdiction,

-9-

improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this Guaranty shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any action or proceeding against Guarantor or its property in the courts of any other jurisdiction.

9.12    **Service of Process.**    GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF ANY SUMMONS AND COMPLAINT IN CONNECTION WITH ANY PROCEEDINGS ARISING OUT OF THIS GUARANTY, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO GUARANTOR, AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT PURSUANT TO SECTION 9.2. GUARANTOR WAIVES ANY CLAIM THAT CONNECTICUT IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. SHOULD GUARANTOR, AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, GUARANTOR SHALL BE DEEMED IN DEFAULT AND AN ORDER AND/OR JUDGMENT MAY BE ENTERED BY LENDER AGAINST GUARANTOR AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS.

9.13    **Headings; References to "Sections".** Section headings have been inserted in this Guaranty as a matter of convenience of reference only, and are not a part of this Guaranty and shall not be used in the interpretation of this Guaranty. References herein to a "Section" without further attribution shall be deemed to refer to sections of or to this Guaranty.

9.14    **Severability.** If any one or more of the provisions of this Guaranty are held to be invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision or provisions in every other respect and of the remaining provisions of this Guaranty shall not be in any way impaired.

9.15    **Sale; Participations; Delegations of Duties.** Guarantor acknowledges and agrees that Lender shall have the right, without notice to or consent of Guarantor, to sell participation interests in the Receivables Loan or the Receivables Loan as a whole to other Persons and that Lender may delegate to other Persons performance of certain obligations of Lender. In connection therewith, Lender may make available to any prospective purchaser, assignee or participant any information in its possession regarding Guarantor. In the event that Lender participates or sells its interest in the Receivables Loan to any other Person, Lender shall have no further responsibilities or liabilities in connection with the sold or participated portion of the Receivables Loan, including without limitation the obligations to fund Advances related to such sold portion or participant's portion after the date of such sale. All of such responsibilities and liabilities after the date of such sale shall be those of the participant or the purchaser of Lender's interest.

9.16    **Indemnification.** Guarantor agrees to indemnify Lender and all participants, their successors, assigns, shareholders, officers, directors, employees and agents

-10-

(each an "**Indemnified Party**") against any damage, loss or expense (including attorneys' fees and court costs) awarded against or paid, incurred or suffered by any Indemnified Party as a result of proceedings, actions, claims, counterclaims, fines or penalties arising out of or resulting from (a) any act or omission of Borrower, Guarantor or any of their respective employees, contractors or agents, (b) any violation of or noncompliance by Borrower or Guarantor with any Legal Requirement, (c) the breach by Borrower or Guarantor of any covenant, warranty, term or provision of this Guaranty or any Loan Document, or (d) any misrepresentation by Borrower or Guarantor in respect of any aspect of the transactions contemplated by this Guaranty or the Loan Documents.

In the event Borrower or Guarantor shall fail to pay taxes, insurance, assessments, costs or expenses which any of them are required to pay hereunder or under the Loan Documents, or fail to keep the Collateral free from security interests or lien or fail to maintain or repair the Project as required pursuant to the Loan Documents, or otherwise breaches any obligation hereunder or under the Loan Documents, Lender in its discretion, may make expenditures for such purposes and the amount so expended (including attorney's fees and expenses, filing fees and other charges) shall be payable by Guarantor on demand. With respect to any amount required to be paid by Guarantor under this section, in the event Guarantor fails to pay such amount on demand, Guarantor shall also pay to Lender interest thereon at the Default Rate.

Guarantor agrees to indemnify and hold harmless, each Indemnified Party, from and against any and all claims, liabilities, losses, damages, costs and expenses (whether or not such person is a party to any litigation), including attorney's fees and costs and costs of investigation, document production, attendance at depositions or other discovery with respect to or arising out of this Guaranty, any of the Loan Documents, the use of any proceeds advanced hereunder, the transactions contemplated hereunder, or any claim, demand, action or cause of action being asserted against Borrower or Guarantor.

Guarantor's obligations under this Section shall survive termination of this Guaranty and repayment of the Obligations.

**9.17    Limitation    on    Waivers,    Releases    and    Indemnities**. Notwithstanding anything herein or elsewhere to the contrary, Guarantor shall not be deemed to have waived, released or agreed to indemnify Lender under this Guaranty for Lender's gross negligence, willful misconduct or, material and willful violation of applicable law.

**9.18    Counterparts; Facsimile Signatures**.    This Guaranty may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original without the production of any other counterpart. Any signature on any Loan Document or any document collateral thereto, delivered by Borrower or Guarantor by facsimile transmission shall be deemed to be an original signature thereto.

**9.19    Time of the Essence**.    Time is of the essence in the performance by Guarantor of all its obligations hereunder.

-11-

9.20    Commercial Transaction. GUARANTOR ACKNOWLEDGES THAT THIS IS A "COMMERCIAL TRANSACTION" AS SUCH IS DEFINED IN CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED. GUARANTOR FURTHER ACKNOWLEDGES THAT, PURSUANT TO SUCH SECTION, IT HAS A RIGHT TO NOTICE OF AND HEARING PRIOR TO THE ISSUANCE OF ANY "PREJUDGMENT REMEDY".    NOTWITHSTANDING THE FOREGOING, GUARANTOR HEREBY WAIVES ALL RIGHTS TO SUCH NOTICE, JUDICIAL HEARING OR PRIOR COURT ORDER IN CONNECTION WITH ANY SUIT ON THIS GUARANTY, ANY OF THE LOAN DOCUMENTS OR ANY EXTENSIONS OR RENEWALS OF THE SAME.

-12-

**IN WITNESS WHEREOF**, the parties hereto have executed this Guaranty effective as of the date first herein above written, and acknowledge receipt of a copy hereof.

GUARANTOR:                                    LENDER:

USA INVESTMENT PARTNERS, LLC                  LIBERTY BANK

By:                                           By:
    Joseph D. Milanowski, its Manager             Jason M. Gordon, Vice President

STATE OF *Nevada*

COUNTY OF *Clark*

:
: SS.
:

        On this, the 13 day of November, 2004, before me, a notary public, personally appeared Joseph D. Milanowski, who acknowledged himself to be the manager of USA Investment Partners, LLC, and that he as such officer, being authorized to do so, executed the foregoing instrument on behalf of the company for the purposes therein contained by signing his name on behalf of the company as such officer.

        **IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

Notary Public

My Commission Expires: 1-16-06

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006

-14-

DOCS_NH 1594854v7

Case No. BK-S 06-10725 (LBR)
Case No. BK-S 06-10726 (LBR)
Case No. BK-S 06-10727 (LBR)
Case No. BK-S 06-10728 (LBR)
Case No. BK-S 06-10729 (LBR)

Chapter 11

**Jointly Administered Under**
**Case No. BK-S-06-10725 LBR**

**LIBERTY BANK'S LIMITED**
**OBJECTION TO CONFIRMATION OF**
**DEBTORS' THIRD AMENDED JOINT**
**CHAPTER 11 PLAN OF**
**REORGANIZATION**

# Exhibit "B"

## SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT (this "Agreement") is made effective as of July 6, 2005 by and among USA INVESTMENT PARTNERS, LLC ("Creditor"), HMA SALES, LLC ("Borrower") and LIBERTY BANK ("Lender").

## BACKGROUND

A.    Borrower is or may become indebted to Creditor. Creditor is interested in the welfare of Borrower and will benefit if Lender extends or maintains credit to Borrower.

B.    Borrower has requested that Lender extend and maintain credit to Borrower. Lender is willing to do so provided this Agreement is executed.

NOW, THEREFORE, the parties hereto, as an inducement for Lender to extend and maintain credit to Borrower, and with the understanding that Lender is relying upon the provisions of this Agreement and intending to be legally bound hereby, agree as follows:

1.    **Definitions**. The following words and phrases as used in capitalized form in this Agreement, whether in singular or plural, shall have the meanings indicated:

1.1    "**Loan Agreement**" shall mean that certain Receivables Loan Agreement between Borrower and Lender dated November 15, 2005, as it may be amended, modified, supplemented or restated from time to time.

1.2    "**Scheduled Subordinated Debt**" shall mean the indebtedness described on **Schedule 2.3** attached hereto, and all interest thereon and all fees, costs and expenses (including attorney's fees and legal expenses) related thereto.

1.3    "**Senior Debt**" shall mean all liabilities and obligations of any nature, whether primary, secondary, absolute, contingent, sole, joint, several or joint and several, and all interest thereon and all fees, costs and expenses (including attorney's fees and legal expenses) related thereto, now or at any time or times hereafter existing, contracted or incurred, of or by Borrower to Lender, including without limitation, the Obligations as defined in the Loan Agreement, and all increases, decreases, extensions, amendments, replacements and renewals of any of such liabilities and obligations. Senior Debt shall explicitly include all interest accruing on any obligations of Borrower to Lender after commencement of any proceeding described in **Section 3.2** below at the rate set forth in the applicable Senior Debt note, instrument or agreement, whether or not such interest is allowable in any such proceeding. Without limiting the foregoing, Lender shall have the option to make advances and provide financing in the future to Borrower or to a receiver, trustee or other fiduciary appointed by a court in any insolvency or court proceeding for Borrower or to Borrower as a debtor-in-possession. Creditor consents to the financing of Borrower or such fiduciary or debtor-in-possession after any such insolvency or court proceeding and agrees that such financing shall be included within the Senior Debt and the subordination and other restrictions and provisions of this Agreement shall be applicable thereto.

1.4    "**Subordinated Debt**" shall mean all liabilities and obligations of any nature, whether primary, secondary, absolute, contingent, sole, joint, several or joint and

several, and all interest thereon and all fees, costs and expenses (including attorney's fees and legal expenses) related thereto, now or at any time or times hereafter existing, contracted or incurred, of Borrower to Creditor.

2.      **Subordination**.

2.1      Creditor subordinates all Subordinated Debt and all claims and demands arising therefrom to all the Senior Debt.  Creditor agrees that all of the Senior Debt shall be paid in full (including without limitation all interest accruing on any Senior Debt after commencement of any proceeding described in **Section 3.2** below at the rate set forth in the applicable Senior Debt note, instrument or agreement, whether or not such interest is allowable in any such proceeding) before Creditor shall be paid anything (of any kind or character) on account of the principal of or interest on any Subordinated Debt or any other sums payable in connection therewith.  Except for the Permitted Payments as hereinafter defined, until all of the Senior Debt is paid, performed and complied with in full  and Lender has no further obligation to make any further loans or advances to Borrower, Borrower will not make, and Creditor will not demand or accept, either directly or indirectly, payment (of any kind or character) of all or any part of the Subordinated Debt without the prior written consent of Lender.  The Senior Debt shall not be deemed to have been paid, performed or complied with in full unless the Lender has unconditionally and irrevocably received payment of the Senior Debt and Lender has no further obligation to make any further loans or advances to Borrower.

2.2      The right of Lender to enforce the subordination provisions and any other provisions hereof shall not in any way be prejudiced or impaired by any act or failure to act on the part of Lender, Borrower or Creditor, or by any noncompliance by Borrower or the Creditor with the terms, provisions and covenants of this Agreement.

2.3      Notwithstanding the provisions of **Section 2.1** or elsewhere in this Agreement to the contrary, Borrower may make the payments to Creditor permitted under **Section 17.10** of the Loan Agreement with respect to the Scheduled Subordinated Debt ("**Permitted Payments**"), _provided_ _that_ (a) no Event of Default (as such term is defined in the Loan Agreement) has occurred; and (b) such payment would not result in any Event of Default or Incipient Default.

3.      **In Furtherance of Subordination**.

3.1      Creditor assigns to Lender Creditor's interest in all Subordinated Debt and all security and guaranties therefor as security for the payment of the Senior Debt.  Lender will be under no duty to take any action with respect to the preservation of rights in any such collateral or guaranties or against any parties thereto or any other person, or to make any demand or give any notice, or to take any other action with respect thereto other than to exercise reasonable care in the physical custody thereof.  All originals of notes, debentures or other instruments evidencing any Subordinated Debt shall be endorsed without recourse to the order of Lender and shall be delivered to Lender.

3.2      Upon any distribution of any of the assets of Borrower, any guarantor of any of the Subordinated Debt or any collateral securing the Subordinated Debt,

-2-

upon or in connection with any dissolution, winding up, liquidation, arrangement or reorganization of Borrower, any guarantor of any of the Subordinated Debt or any other person or entity, or upon any assignment for the benefit of creditors or any other marshalling of the assets and/or liabilities of Borrower or any guarantor of any of the Subordinated Debt or otherwise, any payment, dividend or distribution of any kind (whether in cash, securities or other property) which would otherwise be payable or deliverable with respect to the Subordinated Debt, shall be paid or delivered directly to Lender for application (in the case of cash) to or as collateral (in the case of securities or other property) for the Senior Debt (including without limitation all interest accruing on any Senior Debt after commencement of any such proceeding at the rate set forth in the applicable Senior Debt note, instrument or agreement, whether or not such interest is allowable in any such proceeding).

3.3    If any proceeding described in **subsection 3.2** is commenced, Lender is irrevocably authorized (in its own name or in the name of Creditor or otherwise), but shall have no obligation, to demand, sue for, collect and receive all such payments, dividends and distributions referred to in **subsection 3.2**, give acquittances therefor, file claims, proofs of claim and take such other actions (including without limitation, voting the Subordinated Debt) as it may deem necessary or advisable. Lender is granted a power of attorney by Creditor with full power of substitution to execute and file such documentation and take any other action Lender may deem advisable to accomplish the foregoing, and to protect Lender's interest in the Subordinated Debt and its right of enforcement thereof. Such power being coupled with an interest is irrevocable.

3.4    In the event that (i) the total amount of all cash payments actually received by Lender related to the Subordinated Debt exceeds all of the Senior Debt (including without limitation all interest accruing on any Senior Debt after commencement of any such proceeding at the rate set forth in the applicable Senior Debt note, instrument or agreement, whether or not such interest is allowable in any such proceeding); (ii) Lender has no further agreement or understanding with Borrower pursuant to which Lender may extend credit to Borrower; and (iii) any such cash payment received by Lender may no longer be set aside as preferential under any federal or state bankruptcy law, then Lender shall reassign to Creditor, without recourse or representation, the remaining balance due under the Subordinated Debt and all collateral and guaranties securing the Subordinated Debt, or make such other disposition thereof as may be required by applicable law or court order.

3.5    In the event that the Senior Debt is refinanced with another lender for any reason, Creditor agrees at the request of Lender or of Borrower to execute and deliver a subordination agreement in favor of such new lender containing the same terms and conditions as this Agreement except for specific changes related to the identity of the new replacement lender and the terms of such replacement financing.

4.    **Limitations on Creditor's Rights.** Without the prior written consent of Lender, Creditor agrees that it will not: (a) accelerate any of the Subordinated Debt or if such Subordinated Debt is due on demand, make demand for payment, (b) institute any court proceedings against Borrower or any guarantor of any of the Subordinated Debt to collect any Subordinated Debt, or (c) exercise any right or remedy against Borrower, Borrower's assets, any

-3-

guarantor of any of the Subordinated Debt or any of such guarantor's assets, or (d) amend or modify, alter the payment terms of the Subordinated Debt.

5.    **Payments Held In Trust**. In the event that Creditor receives any dividend, distribution or payment referred to in **Section 3**, or receives any payment (of any kind or character) of any Subordinated Debt or security therefor in violation of this Agreement, Creditor will (a) not credit such payments against the Subordinated Debt, (b) notify Lender promptly thereof, and (c) receive the same in trust for Lender and will promptly pay and deliver the same to Lender in precisely the form received, except for any requisite endorsement or assignment, which Creditor will make without recourse, and authorizes Lender or any of its officers or employees to make in the event that Creditor does not make the same. Lender will apply any such moneys so received by it in reduction of the Senior Debt and will hold any property other than money so received by it as collateral security therefor. In the event Creditor shall obtain any lien, judgment or decree against Borrower, Creditor will immediately assign the same to Lender, or mark the same to Lender's use. If Creditor fails to make any endorsement or assignment required hereunder, Lender is hereby appointed attorney for Creditor with full power of substitution to make any such endorsement or assignment without recourse. Such power of attorney being coupled with an interest is irrevocable.

6.    **Lender's Rights**. Without notice to Creditor and without affecting or releasing any obligation or agreement of Creditor under this Agreement or the subordination provided herein, Lender may at any time or times do any of the following with respect to any of the Senior Debt: (a) amend, modify, alter or waive any of the terms thereof or any of the documents executed in connection therewith, (b) renew or extend the time for payment of all or any part thereof, (c) increase or decrease the amount thereof, (d) accept collateral security or guaranties therefor and sell, exchange, fail to perfect, release or otherwise deal with all or any part of any such collateral or guaranties, (e) release any party primarily or secondarily obligated thereon, (f) grant indulgences and take or refrain from taking any action with regard to the collection or enforcement thereof, and (g) take any action which might otherwise constitute a defense to or a discharge of Borrower or any guarantor. Nothing contained in this Agreement shall impair any right of Lender with respect to any of the Senior Debt or any collateral security or guaranties therefor or the proceeds thereof.

7.    **Representations**. Creditor represents and warrants to Lender that:

7.1    To Creditor's knowledge, there is no event of default or event which with the giving of notice, passage of time or both would constitute an event of default existing under any Subordinated Debt.

7.2    All Subordinated Debt will at all times be unsecured, except as disclosed in Schedule 2.3.

7.3    The execution, delivery and performance by Creditor of this Agreement, the consummation of the transactions contemplated herein and the fulfillment and compliance with the respective terms, conditions and provisions contained herein: (i) have been duly authorized by all necessary company action of Creditor, and (ii) will not conflict with or result in a breach of, or constitute a default under, any of the terms, conditions or provisions of

any applicable statute, law, rule, regulation or ordinance, or Creditor's Articles of Organization or Operating Agreement or any judgment, or order of any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign by which Creditor is bound or affected.

7.4     This Agreement has been duly executed and delivered by Creditor and constitutes the valid and binding obligation of Creditor, enforceable in accordance with its terms.

7.5     No consent, approval or authorization of or designation, declaration or filing with any governmental authority is required in connection with the execution, delivery or performance by Creditor of this Agreement.

8.    **Covenants**.

8.1     Creditor agrees to assign, endorse without recourse and deliver immediately to Lender the original of any instrument or promissory note executed evidencing any Subordinated Debt.

8.2     Creditor and Borrower agree that Borrower will not give or permit to be given, and Creditor will not accept any security or guaranty for any Subordinated Debt without the prior written consent of Lender. Creditor agrees that upon receiving any such security or guaranty Creditor will immediately assign and deliver the same to Lender.

8.3     Creditor will give Lender immediate written notice of any event of default or any event of which Creditor has knowledge, which might, upon the passage of time or the giving of notice or both, constitute a default under the Subordinated Debt.

8.4     Creditor will permit Lender to inspect and copy all books, records, instruments and documents evidencing or pertaining to the Subordinated Debt. Borrower consents to such inspection.

8.5     In the event that Creditor at any time has any indebtedness or other obligations owing to Borrower for any reason, including without limitation any accounts receivable owing to Borrower, Creditor will not offset the indebtedness or other obligations owing to Borrower against any of the Subordinated Debt.

9.    **Limitation on Consent to Payment or Granting of Security**. In the event that Lender consents in writing to the making of a payment on account of the Subordinated Debt or to the granting of collateral security or any guaranties for the Subordinated Debt, which payment or grant would otherwise be prohibited pursuant to **Sections 2 or 8**, such consent shall be deemed to be a consent to the payment or grant specifically referred to in such written consent and shall not be construed as a waiver of **Sections 2 or 8** generally as to all future payments or grants. A consent by Lender to any request shall not be deemed to be a consent to future similar requests.

-5-

10.   __Subordination Legend__. Creditor and Borrower shall cause each instrument that at any time evidences all or any portion of the Subordinated Debt to be conspicuously marked as follows:

> **"This instrument is subject to the terms of a Subordination Agreement in favor of Liberty Bank, which Subordination Agreement is incorporated herein by reference. Notwithstanding any contrary statement contained in the within instrument, no payment on account of the principal or interest thereof shall become due or be paid except in accordance with the terms of such Subordination Agreement."**

11.   __No Assignment__. Creditor agrees that Creditor will not assign or deliver to any person or entity other than Lender, any Subordinated Debt or any evidence thereof or security or guaranty therefor without the prior written consent of Lender. In the event Creditor does so without such consent, Creditor will immediately become liable to Lender in the amount so assigned. If Creditor makes any such assignment with such consent, Creditor will obtain the assignee's agreement to be bound by this Agreement.

12.   __Termination__. This Agreement will continue in full force and effect as long as any Senior Debt remains outstanding, and thereafter, so long as Lender has any agreement or understanding with Borrower pursuant to which Lender may extend credit to Borrower. To the extent any payment or payments of any Senior Debt or any Subordinated Debt received by Lender are subsequently invalidated, declared to be fraudulent or preferential, set aside or are required to be repaid to a trustee, receiver or other person or entity under any bankruptcy act, state or federal law, common law or equitable cause, then this Agreement will be revived and continue in full force and effect. This Agreement may not be terminated except by an instrument in writing signed by the Lender.

13.   __Waivers__.

13.1   Creditor hereby waives, to the extent permitted by applicable law, any right to notice from Lender prior to disposition of any assets of Borrower or any guarantor or any collateral securing any of the Senior Debt. To the extent Creditor is not permitted by applicable law to waive notice, Creditor agrees that ten (10) days notice prior to any such disposition shall be reasonable. Creditor agrees not to interfere with any disposition of assets of Borrower or any Guarantor or any collateral securing any of the Senior Debt by or at the direction of Lender and waives, to the extent permitted by applicable law, the right to challenge any such disposition as not commercially reasonable. Creditor agrees that the sale or other disposition of any collateral securing the Senior Debt by Lender or by Borrower at the request of Lender after an Event of Default has occurred with respect to the Senior Debt shall operate to extinguish and terminate any security interest Creditor may have in such collateral.

13.2   Creditor waives any right to require the Lender to marshall any assets of Borrower or any guarantor or to otherwise proceed in any fashion against Borrower, any guarantor or any other person.

-6-

DOCS_PH 1598780v6

13.3    Except as otherwise provided in the Loan Agreement, Creditor waives notice of any default by Borrower under the Senior Debt and all other notices of any kind, and waives protest of all notes and other instruments evidencing any of the Senior Debt.

13.4    Creditor waives any right to subrogation, reimbursement or indemnity in connection with any of the Senior Debt until the Senior Debt shall have been repaid.

13.5    Lender is irrevocably authorized to demand and receive specific performance of this Agreement by Creditor, even if Borrower has breached its agreements hereunder, at any time upon the breach by Creditor of its agreements hereunder. Creditor irrevocably waives any defense based on the adequacy of a remedy at law which might be asserted as a bar to such remedy of specific performance.

13.6    Creditor agrees that Lender may apply to the Senior Debt all proceeds received from the sale or disposition of any other assets of Borrower or any guarantor in such order as Lender may determine in its sole discretion.

14.    <u>Releases</u>. Lender may release any one or more parties hereto, or the successors or assigns thereof, from any or all obligations hereunder, and such release, or any release by operation of law, shall not release any other party hereto from, nor in any way affect, any of the obligations of any other party under this Agreement, or affect the subordination of any of the Subordinated Debt to the Senior Debt.

15.    <u>Notices</u>. All notices, requests and other communications made or given in connection with this Agreement shall be in writing and, unless receipt is stated herein to be required, shall be deemed to have been validly given when delivered personally against receipt or by private carrier, or three (3) business days after when delivered, registered or certified mail, return receipt requested, in all cases with charges prepaid, addressed as follows, or delivered to the individual or division or department to whose attention notices to a party are to be addressed, until some other address (or individual or division or department for attention) shall have been designated by notice given by a party to the other:

| | |
|---|---|
| To Creditor: | USA Investment Partners, LLC<br>4484 South Pecos Road<br>Las Vegas, NV 89121<br>Attention: Thomas Rondeau, Esquire |
| To Borrower: | HMA Sales, LLC<br>101 Convention Center Drive<br>Las Vegas, NV 89109<br>Attention: Joseph Milanowski |
| To Lender: | Liberty Bank<br>315 Main Street<br>Middletown, CT 06457<br>Attention: Jason M. Gordon, Vice President |

-7-

DOCS_PH 1598780v6

16.     **Submission to Jurisdiction**.  Borrower and Creditor hereby consent to the non-exclusive jurisdiction of any state or federal court located within the State of Connecticut, and irrevocably agree that, subject to the Lender's election, all actions or proceedings relating to this Agreement or the transactions contemplated hereunder shall be litigated in such courts, and Borrower and Creditor waive any objection which they may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court and waive personal service of any and all process upon them, and consent that all such service of process be made by mail or messenger directed to them at the address set forth in **Section 15**.  Nothing contained in this section shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any action or proceeding against Borrower or Creditor or their property in the courts of any other jurisdiction.

17.     **Delay or Omission Not Waiver**.  Neither the failure nor any delay on the part of Lender to exercise any right, remedy, power or privilege hereunder shall operate as a waiver thereof or impair any such right, remedy, power or privilege.  No single, partial or full exercise of any rights, remedies, powers and privileges by Lender shall preclude further or other exercise thereof.  No course of dealing between Lender and Borrower or Creditor shall operate as or be deemed to constitute a waiver of Lender's rights hereunder or affect the duties or obligations of Borrower or Creditor.

18.     **Miscellaneous**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.  If any party hereto is a partnership, all provisions of this Agreement applicable to such party shall be binding upon and include not only the partnership but each and all of the partners thereof individually.  This Agreement may not be modified except in writing executed by the party against whom enforcement of such modification is sought.  The rights granted to Lender hereby shall be in addition to any other rights of Lender under any other subordination agreement, if any, now or hereafter outstanding.  All rights and remedies of Lender shall be cumulative.  The provisions of this Agreement shall operate only in favor of and only for the benefit of Lender, its successors and assigns, and not in favor of or for the benefit of Borrower, Creditor or any other person or entity.  Wherever the Lender's consent is required or permitted, such consent shall be at the sole and absolute discretion of Lender.

19.     **Counterparts; Facsimile Signatures**.  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart.  Any signature on this Agreement delivered by facsimile transmission shall be deemed to be an original signature to this Agreement.

20.     **Governing Law**.  This Agreement shall be governed by and construed according to the laws of the State of Connecticut, without regard to any rules or principles regarding conflict of laws or any rule or canon of construction which interprets agreements against the draftsman.

21.     **Severability**.  If any provision herein shall for any reason be held invalid or unenforceable, no other provision shall be affected thereby, and this Agreement shall be construed as if the invalid or unenforceable provision had never been a part of it.

-8-

22.    <u>Entire Agreement</u>. This instrument embodies the entire agreement of the parties hereto with respect to the subject matter hereof, and there are no courses of dealing, usages of trade, or other representations, promises, terms or conditions referring to such subject matter, and no inducements or representations leading to the execution hereof other than as mentioned herein.

23.    <u>Waiver of Right to Trial by Jury</u>. BORROWER, CREDITOR AND LENDER WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THIS AGREEMENT OR ANY OTHER DOCUMENT OR INSTRUMENT ATTACHED HERETO, REFERRED TO HEREIN OR DELIVERED IN CONNECTION HEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE BORROWER, CREDITOR OR LENDER WITH RESPECT TO THIS AGREEMENT OR ANY OTHER DOCUMENT OR INSTRUMENT ATTACHED HERETO, REFERRED TO HEREIN OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER, CREDITOR AND LENDER AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER, CREDITOR AND LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. BORROWER AND CREDITOR ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION, THAT THEY FULLY UNDERSTAND ITS TERMS, CONTENT AND EFFECT, AND THAT THEY VOLUNTARILY AND KNOWINGLY AGREE TO THE TERMS OF THIS SECTION.

-9-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, intending to be legally bound hereby, effective as of the day and year first above written.

CREDITOR:

USA INVESTMENT PARTNERS, LLC

By: _____

    Joseph D. Milanowski, Manager

BORROWER:

HMA SALES, LLC

By:   USA Investment Partners, LLC, its manager

    By: _____

       Joseph D. Milanowski, its manager

LENDER:

LIBERTY BANK

By: _____

    Jason M. Gordon, Vice President

STATE OF NEVADA                          :
                                         :    SS.
COUNTY OF _Clark_____         :

On this, the _8_ day of _June_____, 2005, before me, a notary public, personally appeared Joseph D. Milanowski, who acknowledged himself to be the manager of USA Investment Partners, LLC, the manager of HMA Sales, LLC, and that he as such officer, being authorized to do so, executed the foregoing instrument on behalf of the company for the purposes therein contained by signing his name on behalf of the company as such officer.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

Notary Public
My Commission Expires: 1.16.06

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appl. Expires Jan. 16, 2006

-11-

DOCS_PH 1592780v6

STATE OF NEVADA                        :
                                       :        SS.
COUNTY OF ___Clark_____          :

       On this, the 8 day of June_____, 2005, before me, a notary public, personally appeared Joseph D. Milanowski, who acknowledged himself to be the manager of USA Investment Partners, LLC, and that he/she as such officer, being authorized to do so, executed the foregoing instrument on behalf of the company for the purposes therein contained by signing his name on behalf of the company as such officer.

       **IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

                           Notary Public
                           My Commission Expires: 1-16-06

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006

-12-

## SCHEDULE 2.3

### Schedule of Subordinated Debt

As of May 31, 2005, HMA Sales, LLC had $28,332,573.98 due to USA Investment Partners, LLC under the provisions of the operating agreement of HMA Sales, LLC concerning Additional Capital Contributions.  Such amounts accrue a preferred return of 15% per annum, are secured by the assets of the Company, and are repaid from "Available Funds" as defined in Section 5.07 of the operating agreement.

This amount includes $3,795,000 that has been funded under the above arrangement subsequent to the date of the Loan Agreement – November 15, 2004.

DOCS_PH 1598780v6

Case No. BK-S 06-10725 (LBR)
Case No. BK-S 06-10726 (LBR)
Case No. BK-S 06-10727 (LBR)
Case No. BK-S 06-10728 (LBR)
Case No. BK-S 06-10729 (LBR)

Chapter 11

**Jointly Administered Under**
**Case No. BK-S-06-10725 LBR**


**LIBERTY BANK'S LIMITED**
**OBJECTION TO CONFIRMATION OF**
**DEBTORS' THIRD AMENDED JOINT**
**CHAPTER 11 PLAN OF**
**REORGANIZATION**


# Exhibit "C"



**Entered on Docket**
**July 24, 2006**

_____
Hon. Linda B. Riegle
United States Bankruptcy Judge

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer
Nevada Bar No. 0399
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | **ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS (AFFECTS ALL DEBTORS)** |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | Date:  June 21, 2006<br>Time:  9:30 a.m. |

1

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Affects:
☒ All Debtors
☐ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The Debtors' Motion For Order Approving Agreement With Investment Partners (the "Motion") having come before this Court pursuant to an Order shortening Time; the Court having reviewed the pleadings and heard the arguments and representations of counsel (including counsel for USA Investment Partners, LLC ("Investment Partners")), the Court having made its findings on the record and finding good cause, it is

ORDERED that the Motion is granted and the Debtors are authorized to enter into the transactions contemplated by the Motion and to execute and deliver the Promissory Note and Security Agreement attached as Exhibits "A" and "B" to the Motion.

IT IS FURTHER ORDERED that approval of the Motion is premised upon the agreement stated in open court by counsel for Investment Partners that the transactions described in the Motion do not embody a release or compromise of any claims of any of the Debtors against Investment Partners.

IT IS FURTHER ORDERED that:

1.    The agreement of the Debtors with Investment Partners does not constitute a release of Investment Partners or compromise of any obligation of Investment Partners on any claims held by any of the Debtors;

2.    Except for the payment terms stated in the promissory note payable to USA Commercial Mortgage Company ("USACM"), the agreement does not constitute a waiver of any rights of the Debtors, their bankruptcy estates or their successors and assigns against Investment Partners;

3.    The agreement does not prejudice any pre-existing rights that any third parties may have against Investment Partners, including without limitation any rights to set aside or otherwise challenge the security interests and liens of the Debtors against the collateral pledged by Investment Partners under any applicable federal law or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2

state law, or any rights any such parties may have under loan documents, subordination agreements or other contracts or agreements with Investment Partners;

4.    The promissory note payable to USACMC shall be held by USACMC for the benefit of all of the Debtors without prejudice to the rights of any other debtors to assert claims to the proceeds of such promissory note and without presumption that the proceeds are the property of USACMC solely because the promissory note is payable to USACMC.

5.    The liens and security interests upon the property of Investment Partners granted under the security agreement signed by Investment Partners in favor of all Debtors shall have priority, as among the different Debtors, as decided by further order of this Court.

6.    Any payments, collateral, or proceeds of collateral received under the promissory note or the security agreement shall be held for the benefit of all Debtors and shall neither be used, allocated, nor distributed among the Debtors except upon further order of the Court.

Submitted by:

/s/    *LENARD E. SCHWARTZER*
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS
(AFFECTS ALL DEBTORS)

Approved / Disapproved by                          Approved / Disapproved by

WHITE AND WILLIAMS LLP

By:_____                       By:_____
    STEVE E. OSTROW, ESQ.                               Office of the U.S. Trustee
    WADE B. GOCHNOUR, ESQ.                              Foley Federal Building
    1800 One Liberty Place                              300 Las Vegas Blvd. South, Suite 4300
    Philadelphia, PA 19103-7395                         Las Vegas NV 89101
    *Counsel for Liberty Bank*
Approved/Disapproved by:                            Approved/Disapproved by:

LEWIS AND ROCA, LLP                                GORDON & SILVER, LTD.


By:_____                       By:_____
    SUSAN M. FREEMAN, ESQ.                              GERALD M. GORDON, ESQ.
    ROB CHARLES, ESQ.                                   GREGORY E. GARMAN, ESQ.
    *Counsel for the Official Committee*                *Counsel for the Official Committee of*
    *of Unsecured Creditors of USA*                     *Holders of Executory Contract Rights of*
    *Commercial Mortgage Company*                       *USA Commercial Mortgage Company*

Approved/Disapproved by:                            Approved/Disapproved by:

ORRICK, HERRINGTON & SUTCLIFFE LLP                 STUTMAN TREISTER & GLATT, P.C. and
and BECKLEY SINGLETON, CHTD.                        SHEA & CARLYON, LTD.


By:_____                       By:_____
    MARC A. LEVINSON, ESQ.                              FRANK A. MEROLA, ESQ.
    LYNN TRINKA ERNCE, ESQ.                             EVE KARASIK, ESQ.
    JEFFREY HERMANN, ESQ.                               CHRISTINE PAJAK, ESQ.
    BRETT A. AXELROD, ESQ.                              CANDACE C. CARLYON, ESQ.
    ANNE M. LORADITCH, ESQ.                             *Counsel for the Official Committee of*
    *Counsel for the Official Committee of*             *Equity Security Holders of USA Capital*
    *Equity Security Holders of USA Capital*            *First Trust Deed Fund LLC*
    *Diversified Trust Deed Fund, LLC*

# # #

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

F:\USA Commercial Mortgage\Pleadings\Approve Investment Partners Agreement\ORDER re Agreement with Investment Partners 071006_(3).doc

1    ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS
2    (AFFECTS ALL DEBTORS)

3    Approved / Disapproved by                    Approved / Disapproved by

4    WHITE AND WILLIAMS LLP

5    By:_____    By:_____
6        STEVE E. OSTROW, ESQ.            Office of the U.S. Trustee
         WADE B. GOCHNOUR, ESQ.           Foley Federal Building
7        1800 One Liberty Place           300 Las Vegas Blvd. South, Suite 4300
         Philadelphia, PA 19103-7395      Las Vegas NV 89101
8        *Counsel for Liberty Bank*

9    Approved/Disapproved by:                     Approved/Disapproved by:

10   LEWIS AND ROCA, LLP                 GORDON & SILVER, LTD.

11

12   By:_____    By:_____
         SUSAN M. FREEMAN, ESQ.           GERALD M. GORDON, ESQ.
13       ROB CHARLES, ESQ.                GREGORY E. GARMAN, ESQ.
         *Counsel for the Official Committee*    *Counsel for the Official Committee of*
14       *of Unsecured Creditors of USA*        *Holders of Executory Contract Rights of*
         *Commercial Mortgage Company*          *USA Commercial Mortgage Company*
15

16   Approved/Disapproved by:                     Approved/Disapproved by:

17   ORRICK, HERRINGTON & SUTCLIFFE LLP  STUTMAN TREISTER & GLATT, P.C. and
     and BECKLEY SINGLETON, CHTD.        SHEA & CARLYON, LTD.
18

19   By:_____    By:_____
20       MARC A. LEVINSON, ESQ.           FRANK A. MEROLA, ESQ.
         LYNN TRINKA ERNCE, ESQ.          EVE KARASIK, ESQ.
21       JEFFREY HERMANN, ESQ.            CHRISTINE PAJAK, ESQ.
         BRETT A. AXELROD, ESQ.           CANDACE C. CARLYON, ESQ.
22       ANNE M. LORADITCH, ESQ.          *Counsel for the Official Committee of*
         *Counsel for the Official Committee of*    *Equity Security Holders of USA Capital*
23       *Equity Security Holders of USA Capital*    *First Trust Deed Fund LLC*
         *Diversified Trust Deed Fund, LLC*
24

25                                     # # #
26

27

28

                                    4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

1   **ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS**
    **(AFFECTS ALL DEBTORS)**

2

3   Approved / Disapproved by                    Approved / Disapproved by

4   WHITE AND WILLIAMS LLP

5   By:_____               By:_____
6       STEVE E. OSTROW, ESQ.                      Office of the U.S. Trustee
        WADE B. GOCHNOUR, ESQ.                     Foley Federal Building
7       1800 One Liberty Place                     300 Las Vegas Blvd. South, Suite 4300
        Philadelphia, PA 19103-7395                Las Vegas NV 89101
8       *Counsel for Liberty Bank*
    Approved/Disapproved by:                     Approved/Disapproved by:
9

10  LEWIS AND ROCA, LLP                          GORDON & SILVER, LTD.

11

12  By:_____               By:_____
        SUSAN M. FREEMAN, ESQ.                     GERALD M. GORDON, ESQ.
13      ROB CHARLES, ESQ.                          GREGORY E. GARMAN, ESQ.
        *Counsel for the Official Committee*       *Counsel for the Official Committee of*
14      *of Unsecured Creditors of USA*            *Holders of Executory Contract Rights of*
        *Commercial Mortgage Company*              *USA Commercial Mortgage Company*
15

16  Approved/Disapproved by:                     Approved/Disapproved by:

17  ORRICK, HERRINGTON & SUTCLIFFE LLP           STUTMAN TREISTER & GLATT, P.C. and
    and BECKLEY SINGLETON, CHTD.                 SHEA & CARLYON, LTD.
18

19  By:_____               By:_____
20      MARC A. LEVINSON, ESQ.                     FRANK A. MEROLA, ESQ.
        LYNN TRINKA ERNCE, ESQ.                    EVE KARASIK, ESQ.
21      JEFFREY HERMANN, ESQ.                      CHRISTINE PAJAK, ESQ.
        BRETT A. AXELROD, ESQ.                     CANDACE C. CARLYON, ESQ.
22      ANNE M. LORADITCH, ESQ.                    *Counsel for the Official Committee of*
        *Counsel for the Official Committee of*    *Equity Security Holders of USA Capital*
23      *Equity Security Holders of USA Capital*   *First Trust Deed Fund LLC*
        *Diversified Trust Deed Fund, LLC*
24

25                              # # #

26

27

28

                                   4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS
(AFFECTS ALL DEBTORS)**

Approved / Disapproved by                    Approved / Disapproved by

WHITE AND WILLIAMS LLP

By:_____          By:_____
   STEVE E. OSTROW, ESQ.                Office of the U.S. Trustee
   WADE B. GOCHNOUR, ESQ.               Foley Federal Building
   1800 One Liberty Place               300 Las Vegas Blvd. South, Suite 4300
   Philadelphia, PA 19103-7395          Las Vegas NV 89101
   *Counsel for Liberty Bank*
Approved/Disapproved by:                     Approved/Disapproved by:

LEWIS AND ROCA, LLP                    GORDON & SILVER, LTD.


By:_____          By:_____
   SUSAN M. FREEMAN, ESQ.               GERALD M. GORDON, ESQ.
   ROB CHARLES, ESQ.                    GREGORY E. GARMAN, ESQ.
   *Counsel for the Official Committee*    *Counsel for the Official Committee of*
   *of Unsecured Creditors of USA*         *Holders of Executory Contract Rights of*
   *Commercial Mortgage Company*           *USA Commercial Mortgage Company*

Approved/Disapproved by:                     Approved/Disapproved by:

ORRICK, HERRINGTON & SUTCLIFFE LLP     STUTMAN TREISTER & GLATT, P.C. and
and BECKLEY SINGLETON, CHTD.           SHEA & CARLYON, LTD.


By:_____          By:_____
   MARC A. LEVINSON, ESQ.               FRANK A. MEROLA, ESQ.
   LYNN TRINKA ERNCE, ESQ.              EVE KARASIK, ESQ.
   JEFFREY HERMANN, ESQ.                CHRISTINE PAJAK, ESQ.
   BRETT A. AXELROD, ESQ.               CANDACE C. CARLYON, ESQ.
   ANNE M. LORADITCH, ESQ.              *Counsel for the Official Committee of*
   *Counsel for the Official Committee of*   *Equity Security Holders of USA Capital*
   *Equity Security Holders of USA Capital*  *First Trust Deed Fund LLC*
   *Diversified Trust Deed Fund, LLC*

# # #

4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS**
**(AFFECTS ALL DEBTORS)**

Approved / Disapproved by

WHITE AND WILLIAMS LLP

By: _____
    STEVE E. OSTROW, ESQ.
    WADE B. GOCHNOUR, ESQ.
    1800 One Liberty Place
    Philadelphia, PA 19103-7395
    *Counsel for Liberty Bank*

Approved/Disapproved by:

LEWIS AND ROCA, LLP

By: _____
    SUSAN M. FREEMAN, ESQ.
    ROB CHARLES, ESQ.
    *Counsel for the Official Committee*
    *of Unsecured Creditors of USA*
    *Commercial Mortgage Company*

Approved/Disapproved by:

ORRICK, HERRINGTON & SUTCLIFFE LLP
and BECKLEY SINGLETON, CHTD.

By: _____
    MARC A. LEVINSON, ESQ.
    LYNN TRINKA ERNCE, ESQ.
    JEFFREY NERMANN, ESQ.
    BRETT A. AXELROD, ESQ.
    ANNE M. LORADITCH, ESQ.
    *Counsel for the Official Committee of*
    *Equity Security Holders of USA Capital*
    *Diversified Trust Deed Fund, LLC*

Approved / Disapproved by

By: _____
    Office of the U.S. Trustee
    Foley Federal Building
    300 Las Vegas Blvd. South, Suite 4300
    Las Vegas NV 89101

Approved/Disapproved by:

GORDON & SILVER, LTD.

By: _____
    GERALD M. GORDON, ESQ.
    GREGORY E. GARMAN, ESQ.
    *Counsel for the Official Committee of*
    *Holders of Executory Contract Rights of*
    *USA Commercial Mortgage Company*

Approved/Disapproved by:

STUTMAN TREISTER & GLATT, P.C. and
SHEA & CARLYON, LTD.

By: _____
    FRANK A. MEROLA, ESQ.
    EVE KARASIK, ESQ.
    CHRISTINE PAJAK, ESQ.
    CANDACE C. CARLYON, ESQ.
    *Counsel for the Official Committee of*
    *Equity Security Holders of USA Capital*
    *First Trust Deed Fund LLC*

# # #

P:\USA Commercial Mortgage\Pleadings\Approve Investment Partners Agreement\ORDER re Agreement with Investment Partners 071006_(2).doc

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ORDER APPROVING AGREEMENT WITH INVESTMENT PARTNERS (AFFECTS ALL DEBTORS)**

1
2

Approved / Disapproved by          Approved / Disapproved by

3
4

WHITE AND WILLIAMS LLP

5
8

~~1700 One Liberty Place~~          ~~500 Las Vegas Blvd. South, Suite 4300~~
Philadelphia, PA 19103-7395          Las Vegas NV 89101
*Counsel for Liberty Bank*

Approved/Disapproved by:          Approved/Disapproved by:

9
10

LEWIS AND ROCA, LLP          GORDON & SILVER, LTD.

11

By:_____          By:_____

12
13
14
15

SUSAN M. FREEMAN, ESQ.          GERALD M. GORDON, ESQ.
ROB CHARLES, ESQ.          GREGORY E. GARMAN, ESQ.
*Counsel for the Official Committee*          *Counsel for the Official Committee of*
*of Unsecured Creditors of USA*          *Holders of Executory Contract Rights of*
*Commercial Mortgage Company*          *USA Commercial Mortgage Company*

Approved/Disapproved by:          Approved/Disapproved by:

16
17
18

ORRICK, HERRINGTON & SUTCLIFFE LLP          STUTMAN TREISTER & GLATT, P.C. and
and BECKLEY SINGLETON, CHTD.          SHEA & CARLYON, LTD.

19
20

By:_____          By:_____*Eve H. Karasik*_____

MARC A. LEVINSON, ESQ.          FRANK A. MEROLA, ESQ.
LYNN TRINKA ERNCE, ESQ.          EVE KARASIK, ESQ.
JEFFREY HERMANN, ESQ.          CHRISTINE PAJAK, ESQ.
BRETT A. AXELROD, ESQ.          CANDACE C. CARLYON, ESQ.
ANNE M. LORADITCH, ESQ.          *Counsel for the Official Committee of*
*Counsel for the Official Committee of*          *Equity Security Holders of USA Capital*
*Equity Security Holders of USA Capital*          *First Trust Deed Fund LLC*
*Diversified Trust Deed Fund, LLC*

21
22
23
24
25
26
27
28

# # #

*SCHWARTZER & McPHERSON LAW FIRM*
*2850 South Jones Boulevard, Suite 1*
*Las Vegas, Nevada 89146-5308*
*Tel: (702) 228-7590 · Fax: (702) 892-0122*

4