Russell S. Walker, Utah Bar No. 3363
Elizabeth R. Loveridge, Utah Bar No. 6025
Reid W. Lambert, Utah Bar No. 5744
WOODBURY & KELSER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84111
Telephone: (801) 364-1100
Facsimile: (801) 359-2320
Email: rwalker@wklawpc.com

and

Joseph J. Huggins
Nevada Bar No. 4456
HUGGINS & ASSOCIATES
1000 N. Green Valley Parkway, Suite 440-2
Henderson Nevada 89014
Telephone: (702) 373-8664
Facsimile: (815) 572-5723
Email: joehuggins@sbcglobal.net

**UNITED STATES BANKRUPCTY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No.: BK-S-06-10725 LBR<br>Case No.: BK-S-06-10726 LBR<br>Case No.: BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No.: BK-S-06-10728 LBR<br>Case No.: BK-S-06-10729 LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | **Jointly Administered Under**<br>**Case No. BK-S-06-10725 LBR** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **OBJECTION OF USA INVESTMENT PARTNERS, LLC, JOSEPH MILANOWSKI AND THOMAS HANTGES TO CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZAION** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>    All Debtors<br>    USA Commercial Mortgage Company<br>    USA Securities, LLC<br>    USA Capital Realty Advisors, LLC<br>    USA Capital Diversified Trust Deed Fund, LLC<br>    USA Capital First Trust Deed Fund, LLC | Hearing Date: December 19, 2006<br>Hearing Time: 10:00 a.m.<br>Place:    Courtroom 1<br>            Foley Federal Building<br>            300 Las Vegas Blvd. South |

WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
Salt Lake City, UT 84111
Tel: (801) 364-1100  Fax: (801) 359-2320

USA Investment Partners, LLC, Joseph Milanowski and Thomas Hantges (collectively referred to herein as the "IP Parties") hereby submits this Objection the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). This opposition is based upon the following points and authorities, the pleadings and papers on filed in these cases and any or all arguments that may be presented at the hearing on confirmation of the Plan.

## FACTUAL ALLEGATIONS

1. The Plan proposes compromises with Direct Lenders[1] wherein the Direct Lenders agree in part that "Prepaid Interest" constitutes an asset of the USACM Estate. The Plan further proposes compromises with the FTDF wherein the FTDF agrees that the "FTDF Prepaid Interest" which is currently being held in the USACM collection account and shall be retained by USACM post effective as an asset of the USACM Estate. *See*, Plan Section II Classification and Treatment of Claims and Equity Interests, C (1) (e) (ii.) and IV (E) (2) (c).

2. The Plan defines "Prepaid Interest" as "(a) all causes of action to recover principal or interest payments USACM paid in advance to the applicable Lender(s) before the Petition Date; (b) all principal and interest payments USACM has collected (will continue to collect) Post petition from Borrowers for such advanced principal or interest payments; and (c) all payments USACM has collected (and will continue to collect) post petition on any Loan that would otherwise be payable to a Lender that received an advanced principal or interest payment from USACM prior the Petition Date, but only to the extent of such advanced principal or interest payments." *See*, Paragraph 113 Section I of the Debtors' Third Amended Plan of Reorganization.

2. The foregoing definition apparently includes all of the funds on deposit in the USA Commercial Mortgage Collection Trust Account (hereinafter the "USACM Trust Account").

---

[1] The terms Direct Lenders, DTDF, FTDF as referred to herein all have the same definitions for these terms as set forth in the Plan.

3. The USACM Trust Account was a trust account which existed pre-petition and was maintained by USACM for the benefit of all Lenders[2]. *See*, Declaration of Victoria S. Loob, former employee of USACM, attached hereto as Exhibit "A".

4. Prior to filing bankruptcy, USACM would deposit all interest and principal repayments collected from Borrowers[3] on the Loans into the USACM Trust Account. *See*, Loob Declaration.

5. If USACM owned a fractionalized interest in a loan and was entitled to any interest or principal payments from the Loans, then a check was prepared from the USACM Trust Account and given to USACM accounting office as it would be done for any direct lender. Otherwise, all funds deposited into the USACM Trust Account were held in trust for the Lenders and paid to the Lenders according to the provisions of each Lender's specific loan agreements. *See*, Loob Declaration.

7. The funds on deposit in the USACM Trust Account were never co-mingled with USACM general operating account. *See*, Loob Declaration.

8. From as early as 2001 through spring of 2006, IP and the Debtors were all operated and managed by a common management team at a common location at 4485 South Pecos, Las Vegas, Nevada ("the Corporate Offices"). As a result, all of the documentation relating to IP and some relating to the IP Parties was stored, filed and held at the Corporate Offices. In addition, the email systems and accounting systems for IP, the Debtors and for the IP Parties were common, shared systems. See, Declaration of Sarah E. O'Connell attached as Exhibit "1" to the Memorandum of Law in Support of the Motion of USA Investment Partners, LLC and Joseph D. Milanowski for the Endorsement of a Protective Order, docket entry 1839.

9. Located at the Corporate Offices and at possible other locations are several boxes of materials which are owned by IP or the IP Parties. These documents include, but are not limited to, materials that relate solely to the business of IP or the IP Parties' personal business matters such as Articles of Organization and Incorporation, due diligence records and other documents relating to

---

[2] The term "Lenders" is defined by the Plan as Direct Lenders, USACM and the Funds (FTDF and DTDF.)

[3] The Term "Borrower" is defined by the Plan as the Borrower under any applicable Loan.

1  investments made, identification of investments and ownership interests which IP or the IP Parties may

2  hold, payments made on accounts receivable and payments received from debtors of IP and the IP

3  Parties, and contracts between IP and other third party investors.  The Debtors have not disputed the

4  interest of IP or the IP Parties in these documents they have asserted an "interest" in a subset of what

5  they have called "hybrid documents" solely on the grounds that they may have a financial interest,

6  such as a loan or a lease, in a particular project or entity. Id.

7      10.    There are also documents which the Debtors plainly have an interest, but in which IP

8  or the IP Parties also claim joint control and/or a joint attorney-client privilege.  For example, this

9  category includes privileged and non-privileged documents relating to a lawsuit for which both a

10 Debtor entity and IP or the IP parties have been name personally.  (The documents described in the

11 paragraphs 9 and 10 are collectively referred to herein as the "Protected Documents.")

12     11.    On November 21, 2006 IP and the IP Parties filed a motion for protective order

13 (docket entry 1837) in order to establish a mechanism to review and segregate the Protected

14 Documents between IP and the IP Parties on one side and the Debtors on the other side.  The hearing

15 on the motion for protective order is set for January 3, 2007.

16     12.    In Section IV Implementation of the Plan subparagraph D. 1 the Debtors propose to

17 transfer to the USACM Trust or be granted access to "all databases, software, documents, records and

18 office equipment currently owned by, or currently in the possession or control of, any of the Debtors,

19 which in the discretion of the USACM Trust, are deemed to be necessary…"  Presumably this would

20 also include the documents, databases, software and records which are the subject of the pending

21 Motion for Protective Order.

22     13.    The Plan further provides to cancel the equity interests in USACM, USA Realty and

23 USA Securities.

**LEGAL ARGUMENT**

**A. The Plan Does Not Comply With 11 U.S.C. § 1129 (a)**

In the simplest of terms the Plan does not comply with the provisions of 11 U.S.C. § 1129 (a) because it purports to administer property which is not property of the USACM bankruptcy estate. Specifically, the Plan proposes to re-characterize property including "Prepaid Interest" and various

books and records owned by non-debtor third parties as property of the USACM bankruptcy estate. The Plan further proposes to transfer to the USACM Trust, post effective date, all USACM assets which include assets that are not property of the bankruptcy USACM bankruptcy estate under bankruptcy or state law.   IP and the IP Parties submit that under state law, the USACM Trust Account was never property of the bankruptcy estate.  IP and the IP Parties further submit that the Protected Documents are either not property of the USACM estate or are property which is jointly owned by IP and/or the IP Parties and the USACM bankruptcy estate.

**1.    Without Intent to Transfer the USACM Trust Account to USACM or a Specific USACM Entity the USACM Trust Account Could Not Become Property of the USACM Bankruptcy Estate.**

Section 541 of the U.S. Bankruptcy Code sets forth and defines what is property of the estate which includes "all legal or equitable interest of the debtor in property."  In re Shurtleff, Inc., 778 F. 2d 1416 (9th Cir. 1985).  However this broad definition does not purport to enlarge any claim to property beyond that which the debtor could have asserted absent a bankruptcy case.  To that end, bankruptcy courts apply state law to determine whether the debtor---and therefore the estate ---has acquired or held an ownership interest in property.  Butner v. United States, 440 U.S. 48,54 (1979).  In fact the Ninth Circuit has specifically found that "although the question whether an interest claimed by the debtor is property of the estate is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case."  In re Pettit, 217 F. 3d 1072 (9th Circuit 2000).

Under Nevada law, there are only two ways that ownership of property can be transferred from one party to another, by gift or by contract.  The elements of gift are intent, delivery and acceptance. Perry v. Edmonds, 140 P.2d. 566 (Nevada 1943).  The elements of contract are offer and acceptance, meeting of the minds and consideration.  May v. Anderson, 119 P.3d 1254 (Nevada 2005).  Stated simply, under state law, no transfer of ownership occurs unless the transferor intends to convey ownership and the transferee intends to accept it.

The facts of this case indicate that USACM never intended to transfer ownership of the USACM Trust Account to itself. USACM never treated the USACM Trust Account as its own. Indeed the name itself conveyed USACM's intention respecting this account. This was a trust account with all deposits being held in trust for various Lenders. The fact that USACM controlled this account is in itself insufficient to support a determination that the USACM Trust Account is property of the USACM bankruptcy estate.

The Ninth Circuit has addressed a similar case as the one currently at bar in the case of In re Bullion Reserve of North America, 836 F. 2d 1214 (9th Circuit 1988). In Bullion the debtor commingled funds it received from investors which were given to the debtor to purchase and store precious metals. Instead of segregating the investor's funds from its other accounts, the debtor deposited those funds in its own general operating account. The debtor then used the co-mingled funds to pay its general operating costs and expenses. The Ninth Circuit upheld a lower court decision that reasoned that since the funds were from a co-mingled account which only the debtor controlled they were property of the bankruptcy estate. The Court found that "generally, property belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." Bullion at 1217.

The present case can easily be distinguished from the Bullion case. USACM never treated the USACM Trust Account as its general operating account. USACM did not co-mingle the funds in the Trust Account with its general operating account. This indicates a specific intent by USACM to not transfer the funds held in the Trust Account to USACM. Based upon these facts, IP and the IP Parties submit that the USACM Trust Account never was and never became property of the USACM bankruptcy estate. Given these undisputed facts, the Debtors cannot now propose a Plan which in essence tries to accomplish what Nevada State law prohibits---taking and administering property which was never owned by the Debtors. Nor, can the Plan provide to take and transfer ownership of records whose ownership is clearly in dispute.

**2.    The Plan Cannot Take Records That Are Not Property of the Bankruptcy Estate.**

Like the USACM Trust Account, the Plan also attempts to re-characterize the Protected Documents as property of the USACM bankruptcy estate. The Plan further provides for a transfer of

the Protected Documents to the USACM Trust. Clearly the ownership of the Protected Documents is in dispute. The facts set forth in the O'Connell Declaration specifically detail IP and the IP Parties' concerns regarding the Protected Documents. The Debtors have alleged no facts which contradict the O'Connell Declaration. Until the Court rules upon the current motion for Protective Order, this Court cannot confirm a Plan which purports to convey records which are not property of the bankruptcy estate.

### 3. In Order to Be Fair and Equitable the Plan Should Provide For Alternate Treatment of Equity Interests

The Plan provides that the Equity Interests in USACM, USA Securities and USA Realty are canceled upon the Effective Date. However, given the $58 million dollar pledge agreement between IP and USACM and the pledge agreement between IP and the Diversified Fund and the other assets which are legitimately property of the USACM bankruptcy estate, there is a possibility that all claim holders in at least USACM can be paid 100% of their claims. If that is the case, the Plan should treat the Equity Interests of USACM similarly to the Equity Interests of FTDF and DTDF. By doing so, the Plan would acknowledge the value that can be realized through the monetization of the $58 million dollar pledge, the $75 million dollar pledge and the potential value of other USACM assets.

### CONCLUSION

The Plan as currently proposed cannot be confirmed under Section 1129 of the Bankruptcy Code. The Plan proposes to unlawfully take property in the form of the USACM Trust Account and the Protected Documents and to administer it as if it was property of the bankruptcy estate. The Plan does this with out alleging any facts which would indicate the USACM Trust Account is property of the estate and without acknowledging that the ownership of the Protected Documents is in dispute and subject to a current motion before this Court. The Plan also does not allow the Equity Interests of USACM to maintain their equity in the event that the USACM claim holders are paid 100% of their claims. Until this Court rules upon these issues, the Plan cannot be confirmed.

DATED this 11th day of December, 2006

**WOODBURY & KELSER, P.C.**

  /s/ Russell S. Walker
Russell S. Walker, Utah Bar No. 3363
Elizabeth R. Loveridge, Utah Bar No. 6025
Reid W. Lambert, Utah Bar No. 5744
WOODBURY & KELSER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84111

And

Joseph J. Huggins
Nevada Bar No. 4456
HUGGINS & ASSOCIATES
1000 N. Green Valley Parkway, Suite 440-2
Henderson Nevada 89014

# EXHIBIT "A"

Russell S. Walker, Utah Bar No. 3363
Elizabeth R. Loveridge, Utah Bar No. 6025
Reid W. Lambert, Utah Bar No. 5744
WOODBURY & KELSER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84111
Telephone: (801) 364-1100
Facsimile: (801) 359-2320
Email: rwalker@wklawpc.com

and

Joseph J. Huggins
Nevada Bar No. 4456
HUGGINS & ASSOCIATES
1000 N. Green Valley Parkway, Suite 440-2
Henderson Nevada 89014
Telephone: (702) 373-8664
Facsimile: (815) 572-5723
Email: joehuggins@sbcglobal.net

**UNITED STATES BANKRUPCTY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No.: BK-S-06-10726 LBR |
| Debtor. | Case No.: BK-S-06-10727 LBR |
| In re: | Case No.: BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | Case No.: BK-S-06-10729 LBR |
| Debtor. | Chapter 11 |
| In re: | |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | **Jointly Administered Under** |
| Debtor. | **Case No. BK-S-06-10725 LBR** |
| In re: | **DECLARATION OF VICTORIA S. LOOB IN SUPPORT OF OBJECTION OF USA INVESTMENT PARTNERS, LC, JOSEPH MILANOWSKI AND THOMAS HANTGES TO CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZAION** |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | |
| Debtor. | |
| In re: | |
| USA SECURITIES, LLC, | |
| Debtor. | |
| Affects:<br>    All Debtors<br>    USA Commercial Mortgage Company<br>    USA Securities, LLC<br>    USA Capital Realty Advisors, LLC<br>    USA Capital Diversified Trust Deed Fund, LLC<br>    USA Capital First Trust Deed Fund, LLC | Hearing Date: December 19, 2006<br>Hearing Time: 10:00 a.m.<br>Place:    Courtroom 1<br>           Foley Federal Building<br>           300 Las Vegas Blvd. South |

Victoria S. Loob states as follows:

1. I was formerly employed by USA Commercial Mortgage Company ("USACM") as a loan servicing officer and a general administrator.

2. As such I have personal knowledge of the facts set forth herein.

3. I was a signatore on the USA Commercial Mortgage Company Collection Trust Account ("USACM Trust Account") and am familiar with the way USACM operated the USACM Trust Account.

4. The USACM Trust Account was a trust account which existed pre-petition and was maintained by USACM for the benefit of all lenders, i.e. Direct Lenders, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC.

5. Prior to filing bankruptcy, USACM would deposit all interest and principal repayments collected from Borrowers[1] on the Loans into the USACM Trust Account.

6. All funds deposited into the USACM Trust Account were held in trust for the Lenders and paid to the Lenders according to the provisions of each Lender's specific loan agreement. If USACM was entitled to any interest or principal payments from the Loans, then a check was prepared from the USACM Trust Account and given to USACM accounting office as it would be for any direct lender.

7. The funds on deposit in the USACM Trust Account were never co-mingled with the USACM general operating account.

8. On rare occasions sometimes fees such as origination fees or exit fees would be deposited into the USACM Trust Account in error. This would cause USACM to transfer the funds by book transfers, wires or checks in order to correct this error. Otherwise the funds in the USACM Trust Account were not co-mingled with the USACM general operating account.

9. USACM never included the USACM trust account as an asset on the USACM corporate balance sheet.

---

[1] The Term "Borrower" is defined by the Plan as the Borrower under any applicable Loan.

I declare, under penalty of perjury, that, to the best of my knowledge, information and belief, that the foregoing is true and correct.

DATED this 11 day of December, 2006

_____
Victoria S. Loob