Andrew K. Alper, Esq.
California Bar No. 088876
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577
E-mail:  aalper@frandzel.com

and

Randolph L. Howard, Esq.
Nevada Bar No. 6688
Kolesar & Leatham, Chtd.
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800
Facsimile:  (702) 362-9472
E-mail:  RHoward@klnevada.com

Attorneys for Creditor
**DAYCO FUNDING CORPORATION**

> *ELECTRONICALLY FILED*
> *ON*
> *December 14, 2006*

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>          Debtor. | CASE NO. BK-S-06-10725-LBR<br>Chapter 11<br><br>CASE NOS: BK-5-06-10726 LBR<br>CASE NOS: BK-5-06-10727 LBR<br>CASE NOS: BK-5-06-10728 LBR<br>CASE NOS: BK-5-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>          Debtor, | CHAPTER 11<br>JOINTLY ADMINISTERED UNDER<br>CASE NO. BK-5-06-10725-LBR |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>          Debtor, | **DAYCO FUNDING CORPORATION'S<br>MOTION FOR RELIEF FROM THE<br>AUTOMATIC STAY**<br><br>**Date of Hearing:       January 17, 2007**<br>**Time of Hearing:       8:30 a.m.** |

In re:

USA SECURITIES, LLC,

                Debtor.

Affects:

☐ All Debtors
☒ USA Commercial Mortgage Co.
☐ USA Securities, LLC
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed
☐ USA First Trust Deed Fund, LLC

## DAYCO FUNDING CORPORATION'S MOTION

## FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Dayco Funding Corporation, a California corporation ("Movant"), and pursuant to Section 362 of Title 11 of the United States Code (the "Bankruptcy Code"), FRPB 4001 and 9014, and Local rules 4001 and 9014, hereby moves the Court for the entry of an order modifying the automatic stay of Section 362(a) of the Bankruptcy Code on the basis of, and for the reasons, more fully set forth below, as follows:

### I. FACTUAL BACKGROUND AND RELIEF SOUGHT

USA Commercial Mortgage Company ("USA") and its affiliated entities (individually the "Debtor" and collectively the "Debtors") are debtors in possession under the provisions of Chapter 11 of the Bankruptcy Code, having filed voluntary petitions on April 13, 2006. No trustee having been appointed, the debtors remain in possession of their property and operating their business.

Movant is a California corporation. Movant is the assignee of Citizens Business Bank, N.A., a National Banking Association ("Bank") pursuant to a Loan Sale Agreement entered into on September 21, 2006 in which certain language has been redacted and as more specifically described on the attached Exhibit "B" ("the Loan Sale Agreement").

The Bank made a loan to Southern California Land Development LLC ("Borrower") on or about October 15, 2005, in the sum of $1,612,500.00. The loan is evidenced by a Note executed by the Borrower. Among other terms and conditions, the Borrower was required to pay regular

1  monthly payments of accrued interest beginning on September 15, 2005, with all subsequent

2  payments due on the same day each month thereafter and pay the entire unpaid balance of

3  principal and interest on the Note's maturity date of August 15, 2006. A true and correct copy of

4  the Note is attached hereto, marked Exhibit "C" and is incorporated herein by this reference.

5        The Note is secured by Deeds of Trust on two parcels of undeveloped real property. One

6  parcel of real property commonly described as 10325 Datura Road, Hesperia, California 92345,

7  Assessor's Parcel Nos. 0405-261-17-0-000, 0405-261-18-0-000, 0405-261-27-0-000, and 0405-

8  261-29-0-000, legally described as the South half of the Southwest quarter of the Northeast quarter

9  of the Northwest quarter of Section 13, Township 4 North, Range 5 West, San Bernardino

10  Meridian, in the City of Hesperia, County of San Bernardino, California, according to the Official

11  Plat thereof. Except all coal, gas and other mineral deposits, the land so patented, together with

12  the right to prospect for, mine, and remove the same according to the provisions of said Act of

13  June 1, 1938 as reserved by the United States of America by Patent recorded May 14, 1954 in

14  Book 3383, Page 114, Official Records in the County of San Bernardino ("Property 1"). The

15  Deed of Trust on Property 1 was recorded on August 23, 2005, as Instrument No. 2005-0622541.

16  The Bank was also granted a security interest on property commonly known as 10375 Baldy Lane,

17  Hesperia, California 92345, Assessor's Parcel No. 0405-261-28 and is legally described as the

18  North one-half of the Southeast one-quarter of the Northeast one-quarter of the Northwest one-

19  quarter of Section 13, Township 4 North, Range 5 West, San Bernardino Meridian, in the County

20  of San Bernardino, State of California, according to the Official Plat thereof ("Property 2"). The

21  Deed of Trust on Property 2 was recorded on September 14, 2005, as Instrument No. 2005-

22  0685512. Property 1 and Property 2 are vacant parcels of land. True and correct copies of the

23  Deeds of Trust on Property 1 and Property 2 are attached hereto as Exhibits "D" and "E" and

24  incorporated herein by this reference.

25        USA, the Debtor herein, and its various investors made a loan to the Borrower in the sum

26  of $2,300,000.00 second by a Deed of Trust on Property 1 and Property 2. A true and correct

27  copy of the Deed of Trust (Second Position) securing the Note in the sum of $2,300,000.00 is

28  attached hereto, marked Exhibit "F" and is incorporated herein by this reference. As can be seen

1   by the Exhibit attached to the Deed of Trust, USA's property interest in the Note and therefore

2   Property 1 and Property 2 was $20,000.00. According to records on file with the Bankruptcy

3   Court in the Asset Purchase Agreement, USA states that it has a 1.25% interest in the loan. At the

4   time the loan was made by the Bank to Borrower, USA and its investors executed Subordination

5   Agreements subordinating its lien on Property 1 and Property 2 to the Bank's lien. True and

6   correct copies of the Subordination Agreements are attached hereto, marked Exhibits "G", and "H"

7   and are incorporated herein by this reference.

8        The loan due to the Bank matured by its terms. As set forth above, after the loan had

9   matured, the loan was assigned by the Bank for good and valuable consideration to Movant. The

10  loan is all due and payable and Movant made demand on Borrower to pay all sums due. However,

11  Borrower has failed and refused to do so. As a result, as of December 5, 2006, the following sums

12  are due and payable to Movant:

13        Principal balance                                                    $1,607,565.00

14        Interest at 9.5% from July 13, 2006 to December 5, 2006        $    60,239.24

15        Default interest at 6.25% from July 13, 2006 to December 5, 2006  $    39,630.90

16        Total Sum Due                                                      $1,707,435.14.

17        Interest is accruing at the rate of $424.22 at the regular note rate and $279.09 at the default

18  rate. Therefore, the monthly accrual of interest is $703.31 per day based on a 30 day month of

19  $21,099.30. One month of interest is more than the entire value of USA's interest in the Note.

20  Other than the execution of the Subordination Agreements, the Bank and now Movant have no

21  contractual relationship. However, because of the Debtor's 1.25% interest in this loan, Movant is

22  now stayed from taking any action to foreclose on its Deeds of Trust on Property 1 and Property 2.

23  Given that the interest amount which accrues is greater than the total value of the loan to Movant,

24  it is unfair and inappropriate to allow for a 1.25% fractionalized interest in a Deed of Trust to stay

25  Movant from foreclosing on the properties. At all times, USA and its participants knew of the

26  Bank's Deed of Trust on the properties and expressly subordinated to it. They knew that at some

27  point in time that they would have to step up and either pay the sums due to Movant or bid at a

28  foreclosure sale or otherwise become foreclosed out on the properties.

1     Based upon the foregoing, Movant seeks the entry of an order modifying the automatic

2 stay of Section 362(a) of the Bankruptcy Code and permit it to terminate the automatic stay as to

3 the Debtor and the Debtor's bankruptcy estate so that the 10-day stay provided by Bankruptcy

4 Rule 4001(a)(3) is waived, and that this order shall be binding and effective despite any

5 conversion of this bankruptcy case to a case under any other Chapter of Title 11 of the United

6 States Code.

7

8       **II. ARGUMENT AND CITATION OF AUTHORITIES**

9    It is axiomatic that the automatic stay of Section 362 of the Bankruptcy Code generally

10 operates as a stay against the commencement of any action against a debtor based upon the cause

11 of action which arose pre-petition, or to otherwise recover property from the estate. Nevertheless,

12 relief from the automatic stay of Section 362 of the Bankruptcy Code may be granted, for cause.

13 While there is no express definition of cause in Section 362(d)(1) what constitutes cause under

14 Section 362(b)(1) other than a lack of adequate protection has been developed on a case by case

15 basis. (Manhattan King David Restaurant, Inc. v. Levine 163 B.R. 36, 40 (S.D. N.Y. 1993); In re

16 Milne 185 B.R. 280, 283 (N.D. Ill. 1995); In re MacDonald 755 F.2d 715, 717 (9th Cir. 1986).)

17    In the case at bar, there is no question that an automatic stay arises pursuant to 11 U.S.C.

18 Section 362(a). However, it is an unfair result for the automatic stay to stop Movant's foreclosure

19 sale by virtue of USA's small fractionalized interest in the loan made to Borrower. Meantime,

20 Movant can do nothing with respect to foreclosing on Property 1 and Property 2 and get its loan

21 paid while interest continues to accrue at over $21,000.00 a month. And meantime the Borrower

22 is laughing all the way at Movant since it does not have to pay the obligation due to Dayco and

23 Movant can do nothing about it. As a result, Movant requests that the Court terminate the

24

25

26

27

28

1   automatic stay pursuant to 11 U.S.C. Section 362(d)(1) and under its powers pursuant to 11 U.S.C.

2   Section 105.

3            Dated this 14th day of December, 2006.

4                                          KOLESAR & LEATHAM, CHTD.

5

6                                          By: _Randolph L. Howard_____
                                           RANDOLPH L. HOWARD, ESQ.
7                                          Nevada Bar No. 6688
                                           3320 West Sahara Avenue, Suite 380
8                                          Las Vegas, Nevada 89102

9                                          and

10                                         ANDREW K. ALPER, Esq.
                                           California Bar No. 088876
11                                         FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                           6500 Wilshire Boulevard, 17th Floor
12                                         Los Angeles, California 90048-4920

13
                                           Attorneys for Creditor
14                                         **DAYCO FUNDING CORPORATION**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

484798.1                          6                          33162-029

# EXHIBIT A

EXHIBIT A

## * * § 362 INFORMATION SHEET * *

USA COMMERCIAL
MORTGAGE COMPANY
**DEBTOR**
DAYCO FUNDING CORPORATION
**MOVANT**

BK- 06-10725-LBR
**BANKRUPTCY #**          **MOTION #**
**CHAPTER:**___11___

| **Certification of Attempt to Resolve the Matter Without Court Action:** |
|---|
| *Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(5), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.* |
| *Date:*__12-13-06_____          *Signature:* _Randolph a. Howard_ |
|          *Attorney for Movant* |

PROPERTY INVOLVED IN THIS MOTION: 10325 Datura Road, Hesperia, California 92345
NOTICE SERVED ON: Debtor(s)____X____; Debtor's counsel____X____; Trustee____X____;
DATE OF SERVICE:_____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st ____$1,707,435.14_____ | 1st _____N/A_____ |
| 2nd ____$2,300,000.00 +_____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT: |
|---|---|
| Amount of Note: _____N/A_____ | . |
| Interest Rate: _____ | . |
| Duration: _____ | . |
| Payment per Month: _____ | . |
| Date of Default: _____ | . |
| Amount in Arrears: _____ | . |
| Date of Notice of Default: _____ | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY:_____ | SUBMITTED BY:_____ |
| SIGNATURE:_____ | SIGNATURE:_____ |

MLS-Sec-362-Inf-12-00.wpd (District of Nevada)                    "EXHIBIT A"

# EXHIBIT B

# EXHIBIT B

## LOAN SALE AGREEMENT

This Loan Sale Agreement (hereinafter "Agreement") is entered into this 21 day of September, 2006, by and between Citizens Business Bank, a California corporation ("Bank") and Dayco Funding Corporation, a California corporation ("Buyer") with respect to the following:

### RECITALS

A.      On or about August 15, 2005, Southern California Land Development LLC ("Borrower") was loaned the sum of $1,612,500.00 by the Bank. The loan was evidenced by a Note executed by the Borrower. Pursuant to the terms of the Note, interest accrued at a variable interest rate on the Index as defined in the Note. Pursuant to the terms of the Note, the rate to be applied on the Note was 1.25% over the Index and, if there was a default under the terms of the Note, the interest rate accrues at the rate of 6.25% over the Index. Pursuant to the terms of the Note, the Borrower was required to pay regular monthly payments of accrued interest beginning on September 15, 2005 with all subsequent payments due on the same day each month thereafter and pay the entire unpaid balance of principal and interest on the Note's maturity date of August 15, 2006.

B.      The Note is secured by Deeds of Trust on the real properties commonly described as 10325 Datura Road, Hesperia, California 92345, Assessor's Parcel Nos. 0405-261-17-0-000, 0405-261-18-0-000, 0405-261-27-0-000, and 0405-261-29-0-000, legally described as The South half of the Southwest quarter of the Northeast quarter of the Northwest quarter of Section 13, Township 4 North, Range 5 West, San Bernardino Meridian, in the City of Hesperia, County of San Bernardino, State of California, according to the Official Plat thereof. Except all coal, gas and other mineral deposits, in the land so patented, together with the right to prospect for, mine, and remove the same according to the provisions of said Act of June 1, 1938 as reserve by the United States of America by Patent recorded May 14, 1954 in Book 3383, Page 114, Official

478566.1                                       1   EXHIBIT _____B_____

Records in the County of San Bernardino ("Property 1"), the Deed of Trust to Property 1 was recorded on August 23, 2005 as Instrument No. 2005-0622541; and the real property commonly known as 10375 Baldy Lane, Hesperia, California 92345, Assessor's Parcel No. 0405-261-28 and is legally described as the North 1/2 of the Southeast 1/4 of the Northeast 1/4 of the Northwest 1/4 of Section 13, Township 4 North, Range 5 West, San Bernardino Meridian, in the County of San Bernardino, State of California according to the Official Plat thereof ("Property 2"). The Deed of Trust to Property 2 was recorded on September 14, 2005 as Instrument No. 2005-0685512.

C.    As an inducement for the Bank to make the loan as evidenced by the Note to the Borrower, on or about August 15, 2005, Joseph D. Millanowski, USA Investment Partners LLC, and the Joseph D. Millanowski 1998 Trust UDT Dated September 25, 1998 executed and delivered to the Bank their separate Commercial Guaranties pursuant to which they guarantied repayment of all sums owed by the Borrower to the Bank. Joseph D. Millanowski, USA Investment Partners LLC and the Joseph D. Millanowski 1998 Trust UDT Dated September 25, 1998 will sometimes hereinafter be referred to collectively as the "Guarantors".

D.    Property 1 and Property 2 are vacant parcels of land.

E.    As of September 14, 2006, the sum due to the Bank on the Note is $1,632,545.42. The principal sum of $1,607,565.00 together with interest in the sum of $24,980.42 through and including September 13, 2006. The Borrower and the Guarantors have not made payment on the Note since August 15, 2006 nor has the Borrower or the Guarantors paid the Note on its maturity date of August 15, 2006. Interest on the Note is currently accruing at the daily rate of $424.22.

F.    The Bank desires to sell, and the Buyer desires to buy, the loan made by the Bank to the Borrower as evidenced by Note ("the Loan") together with the Bank's collateral and

documents including the Deeds of Trust and the Guaranties, and all other documents and instruments evidencing the Loan (collectively "the Loan Documents").

NOW, THEREFORE, in consideration of the foregoing and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Bank and the Buyer ("the Parties") agree as follows:

AGREEMENT

1.    <u>Purchase Price</u>. The purchase price for the Loan shall be the sum of

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2.    <u>Interest to be Purchased</u>. In consideration of the Purchase Price, the Bank shall deliver an Assignment of the Note evidencing the Loan; the Deeds of Trust as to Property 1 and Property 2; the Guaranties; and all other Loan Documents as may be reasonably requested by the Buyer.

3.    <u>Acceptance of Loan Documents "As Is"</u>

a.    The Loan evidenced by the Loan Documents is being sold "AS-IS" and the Loan Documents shall be assigned without warranty, recourse or reservation of any rights. Without limitation, the Bank makes no warranty or representation of any kind whatsoever as to the Loan Documents, whether express, implied, by operation of law, or otherwise. Further, without limitation, the Bank does not warrant or represent the collectability, validity, completeness, or accuracy of the Loan Documents; the title to Property 1 and Property 2, the condition of Property 1 and Property 2, the design or construction of Property 1 and Property 2, any encumbrances on Property 1 and Property 2; the design or construction of Property 1 and Property 2; the compliance of Property 1 and Property 2 with any and all zoning, permit, ordinance and code requirements; the income from or the value of Property 1 and Property 2; or

the water, soil, geology, environmental condition and suitability of Property 1 and Property 2 for any and all activities and uses which Buyer may elect to conduct thereon should Buyer acquire title to Property 1 and Property 2.

      b.      Buyer acknowledges that it has conducted its own investigation and appraisal and otherwise performed its own due diligence relating to the Loan Documents and Property 1 and Property 2. The Bank makes no representations or warranties other than those contained herein. Buyer shall rely solely on its own investigation.

      c.      The Bank hereby discloses that the Loan as evidenced by the Loan Documents is currently in default.

      d.      The Bank agrees to execute the original of all documents collectively attached as Exhibit "A" to the Assignment of Loan Documents and incorporated herein by this reference ("Closing Documents") and deliver them to Buyer, along with the original Loan Documents, and all of the documents, correspondence and memoranda except for internal memoranda, CR reports and other documents such as the attorney-client, work product, or any other legally privileged documents in the possession of the Bank regarding the Loan, within two weeks after receipt by the Bank of the purchase price in good and immediately available funds.

      e.      The Closing Documents, each of which shall be prepared on a non-recourse basis, the following:

      (1) The Assignment of the Note;

      (2) The Assignment of the Deeds of Trust to Property 1 and Property 2;

      (3) Assignment of the Guaranties of Joseph D. Millanowski, USA Investment Partners LLC and the Joseph D. Millanowski 1998 Trust UDT Dated September 25, 1998.

f.       BUYER UNDERSTANDS THAT THE SALE OF THE LOAN DOCUMENTS AND INDEBTEDNESS IS BEING MADE ON AN "AS IS" BASIS AND BUYER EXPRESSLY ACKNOWLEDGES THAT, CONSIDERATION OF THE AGREEMENTS OF THE BANK HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, THE BANK MAKES AND HAS MADE NO WARRANTY, REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW AND SPECIFICALLY DISCLAIMS ANY SUCH WARRANTY OR REPRESENTATION, INCLUDING, BUT UNLIMITED TO, WARRANTY OF OWNERSHIP, EXISTENCE, QUALITY, QUANTITY, VALUE, CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY FOR ANY PARTICULAR PURPOSE. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CONSUMMATION OF THE TRANSACTIONS HEREIN PROVIDED.

g.       Buyer, and its successors and assigns, shall be forever responsible for the payment of any sales tax, use tax, personal property tax, real property tax, or any other tax of whatsoever nature assessed, levied or imposed in connection with the transactions contemplated hereunder, the Loan and/or the Loan Documents, Buyer, and its successor and assigns, hereby agree to indemnify (in addition to all other indemnifications given by Buyer pursuant to this agreement), and hold the Bank harmless from the imposition, assessment, levy, payment and collection of any sales tax, use tax, personal property tax, or any other tax of any nature whatsoever in connection with transactions contemplated by this Agreement, the Loan and/or the Loan Documents. However, the Bank shall be responsible to pay all Trustee's fees incurred prior to the sale of the Loan as evidenced by the Loan Documents.

4.       Additional Representations and Warranties

a.       By Buyer. Buyer hereby warrants and represents to Bank, as follows:

(1)     Buyer has conducted such due diligence, investigation, and inquiry as Buyer deems necessary and appropriate to the transactions contemplated by this Agreement and, in entering into this Agreement, Buyer is relying solely upon its own such due diligence, investigation and inquiry;

(2)     Buyer has been advised by counsel of Buyer's choosing of the conditions and limitations imposed by law upon holders of obligations secured in whole or in part by real property and/or personal property;

(3)     Neither Bank, nor anyone claiming to represent Bank, has made any representation or warranty to Buyer, or anyone claiming to represent Buyer, concerning the Loan Documents, any borrower, or any property, except as is expressly and fully set forth in this Agreement;

(4)     This Agreement constitutes a valid and binding obligation of Buyer to Bank enforceable in accordance with its terms;

(5)     The execution and delivery by Buyer of this Agreement will not, with or without giving of notice or passage of time, or both: (i) conflict with or violate any law, statute, rule, regulation, or administrative order to which it is subject or by which its assets are bound or affected; (ii) violate any judgment, order, writ or decree of any court or administrative body in any suit or proceeding to which it is a party; or (iii) result in a breach of or default under any material agreement, commitment, contract (written or oral), or other material instrument, to which it is a party or by which any of its assets are bound or affected;

(6)     Buyer is a sophisticated investor and purchaser of loans, and has received independent legal advice from attorneys of its choice with respect to entering into this Agreement;

(7)    To the best of Buyer's knowledge, there are no actions, suits, claims, proceedings, or investigations, pending or threatened against it which might impair the consummation of the terms and conditions of this Agreement;

(8)    Buyer is duly organized, validly existing and in good standing under the laws of the United States of America and is legally qualified to conduct business in each jurisdiction in which its business is conducted.

(9)    Buyer is a validly existing corporation duly organized under the State of California and is in good standing with the State of California. buyer has taken all necessary action to obtain all approvals necessary to enter into this Agreement.

    b.    By Bank.

        Bank hereby warrants and represents to Buyer:

(1)    Bank is the owner and holder of the Loan Documents, and Bank has not assigned, transferred, conveyed, pledged or granted a security interest in said Loan Documents;

(2)    Bank is duly organized, validly existing and in good standing under the laws of the State of California and is legally qualified to conduct business in each jurisdiction in which its business is conducted;

(3)    To the best of Bank's knowledge, there are no actions, suits, claims, proceedings, or investigations, pending or threatened against it by Borrowers or any other third party which might impair the consummation of the terms and conditions of this Agreement;

(4)    The execution and delivery by Bank of this Agreement will not, with or without the giving of notice or passage of time, or both: (i) conflict with or violate any law, statute, rule, regulation, or administrative order to which it is subject or by which its assets

are bound or affected; (ii) violate any judgment, order, writ or decree of any court of administrative body in any suit or proceeding to which it is a party; or (iii) result in a breach of or default under any material agreement, commitment, contract (written or oral), or other material instrument, to which it is a party or by which any of its assets are bound or affected;

(5)     To the best knowledge of Bank, the principal balance of the Loan as of the date set forth in the Recitals to this Agreement is, in accordance with the books and records of Bank, true and correct.

5.     Release.

a.     Except for any obligations of Bank expressly and specifically provided for in this Agreement, Buyer hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises and discharges Bank and its subsidiaries, parents, affiliates, successors, predecessors and assigns, and all past and present employees, officers, directors, agents, representatives, attorneys, insurers, accountants and shareholders, each in its, his or her individual and representative capacities from and against any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses(including, without limitation, attorneys fees and related costs), damages, injuries, suits, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, arising out of or in any way connected with the Loan and the performance of any services pertaining to the Loan Documents or any property which constitutes collateral for the Loan.

b.     Buyer acknowledges and agrees that Buyer has been informed by its attorneys and advisors of, and is familiar with, and does hereby expressly waive, the provisions of section 1542 of the California Civil Code, and any similar statute, code, law or regulation of

any state or the United States, to the full extent that it may waive such rights and benefits. <u>Civil</u>
<u>Code</u>, Section 1542 provides:

> "A general release does not extend to claims which the creditor
>
> does not know or suspect to exist in his or her favor at the time of
>
> executing the release, which if known by him or her must have
>
> materially affected his or her settlement with the debtor".

  c.  Buyer represents and warrants to Bank that it is the sole and lawful owner
of all right, title and interest in and to each and every claim or other matter which Buyer releases
herein, and that Buyer has not heretofore assigned or transferred, or purported to assign or
transfer, to any individual, partnership, corporation, firm, estate, or entity any claim or other
matters herein released.  Buyer further hereby indemnifies and shall defend and hold harmless
Bank from and against any and all claims based upon or arising out of or in connection with any
prior assignment or transfer, or purported assignment or transfer, of any claims or matters
released herein.

  d.  The Parties hereto understand and agree that any covenant or undertaking
of Bank pursuant to this Agreement, however contingent or provisional, is and shall be separate
and legally sufficient consideration for all of the releases herein given, and any default, breach,
failure of condition, or failure of consideration, to any extent applicable to this Agreement, shall
not operate to avoid, discriminate, rescind, revoke, diminish or otherwise affect the validity,
enforceability and continuing effectiveness of the foregoing releases, or any of them.

  6. <u>Attorneys' Fees</u>. Should a dispute, including but not limited to, any litigation or
arbitration be commenced (including any proceedings in a bankruptcy court) between the Parties
hereto or their representatives concerning any provision of this Agreement, the rights and duties
of any person or entity hereunder, the party or parties prevailing shall be entitled to attorneys'

fees, expenses of counsel and court costs incurred by reason of such action, whether or not suit is filed.

7.    Authority. With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he or it (a) has read each of the terms set forth herein, (b) that the undersigned has the authority to execute this Agreement for such person or entity, and (c) expressly consents and agrees that the person or entity upon behalf of which the undersigned is acting, shall be bound by all terms and conditions contained herein.

8.    Benefit of Agreement. The Parties agree that the rights and obligations arising out of this Agreement, and each of its terms, shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assignees of the Parties, and each of them.

9.    Headings. The headings of paragraphs of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

10.    Time. Time is and shall be of the essence of each and every provision of this Agreement.

11.    Governing Law; Jurisdiction; Venue. This Agreement is and shall be governed by and construed in accordance with the laws of the State of California. Any litigation arising out of this Agreement shall be commenced in the Superior Court in the County of Los Angeles, State of California.

12.    Neutral Interpretation. This Agreement is the product of negotiations of the Parties, and in the enforcement or interpretation hereof is to be enforced and interpreted in a neutral manner, and any presumption with regard to construction or interpretation for or against any party by reason of that party having drafted or caused to be drafted this Agreement, or any portion thereof, shall not be effective in regard to the interpretation hereof.

13.    <u>Entire Agreement</u>. This Agreement and any documents attached as exhibits or executed contemporaneously herewith constitute the Parties' entire agreement with respect to the subject matter hereof and supersede all Agreements, representations, warranties, statements, promises and understandings, whether oral or written, with respect to the subject matter herewith. This Agreement may not be amended, altered, or modified except by a writing signed by all Parties.

14.    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures may be accepted as original signatures.

15.    <u>Execution of Additional Documents</u>. The Parties and their agents or representatives agree to sign any and all documents reasonably necessary in order to carry out the purpose, intent and effect of this Agreement.

CITIZENS BUSINESS BANK
a California Banking corporation

By:    E. J. Mylett
Its:    EVP

DAYCO FUNDING CORPORATION

By:    H. Sean Dryoni
Its:    President

## ASSIGNMENT OF LOAN DOCUMENTS

FOR GOOD AND VALUABLE CONSIDERATION the receipt and sufficiency of which are hereby acknowledged, Citizens Business Bank, a California corporation ("Assignor") does hereby sell, transfer and assign to Dayco Funding Corporation ("Assignee"), without recourse, representation or warranty, whether express or implied, all of Assignor's right, title and interest in and to the documents, instruments and agreements described on Exhibit "A" attached hereto and incorporated herein by this reference (collectively "the Loan Documents"). It is the intention of the Assignor to transfer and assign to the Assignee all of the right, title and interest, benefits and obligations and duties held by Assignor in, to and under the Loan Documents and the loan evidenced thereby. Assignor does hereby sell, assign and transfer to Assignee all of its right, title and interest to the Loan Documents "AS IS", "WHERE IS" and WITHOUT ANY WARRANTIES EXPRESS OR IMPLIED except as expressly set forth in that certain Loan Sale Agreement dated September 21, 2006 ("the Loan Sale Agreement"). All such terms and conditions of the Loan Sale Agreement are incorporated herein by this reference as if set forth in full.

IN CONNECTION THEREWITH, Assignee hereby accepts the foregoing assignment and hereby assumes all of the duties, obligations and liabilities of Assignor under and with respect to the loan as evidenced by the Loan Documents.

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment
to be effective as of the date set forth below.


Lender/Assignor

CITIZENS BUSINESS BANK
A California banking corporation


By: E. J. Mylett
Its: EVP


Assignee

DAYCO FUNDING CORPORATION
a California corporation


By: _____ H. Senn Doyan:
Its: _____ President _____

478588.1

## EXHIBIT A TO THE ASSIGNMENT OF LOAN DOCUMENTS

All documents which in any way relate to, refer to, pertain to that certain loan made by Citizens Business Bank to Southern California Land Development LLC ("Borrower") except for those documents which Citizens Business Bank ("Bank") will be retaining as a result of attorney/client, work product, or other privileges or those documents which the Bank is prohibited from transferring by the regulations of the Department of Corporations, Office of the Comptroller of Currency or other regulatory agency. The documents assigned include, but are not limited to, the following documents.

1.    Note dated August 15, 2005 and all extensions and modifications thereof;

2.    Deed of Trust to the real property commonly known as 10325 Dadura Road, Hesperia, California 92345 ("the Dadura Property");

3.    Deed of Trust to the real property commonly known as 10375 Baldy Lane, Hesperia, California 92345 ("the Baldy Lane Property");

4.    Assignment of Rents to the Dadura Property;

5.    Assignment of Rents to the Baldy Lane Property;

6.    Subordination of Deed of Trust to the Dadura Property;

7.    Subordination of Deed of Trust to the Baldy Lane Property;

8.    The Commercial Guaranty of Joseph D. Millanowski dated August 15, 2005 and all extensions and modifications thereof;

9.    The Commercial Guaranty of USA Investment Partners LLC dated August 15, 2005 and all extensions and modifications thereof; and

10.    The Commercial Guaranty of Joseph D. Millanowski 1998 Trust UDT dated September 25, 1998 dated August 15, 2005 and all extensions and modifications thereof.

# EXHIBIT C

EXHIBIT C

# CB

# CITIZENS
# BUSINESS BANK
The Bank Business Banks On

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,612,500.00 | 08-15-2005 | 08-15-2006 | 25728 | | | 911 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Southern California Land Development, LLC
9227 Haven Ave., #300
Rancho Cucamonga, CA 91730

**Lender:** Citizens Business Bank
Construction Loan Department
701 North Haven Avenue, Second Floor
Ontario, CA 91764
(909) 980-4030

---

**Principal Amount: $1,612,500.00**        **Initial Rate: 7.750%**        **Date of Note: August 15, 2005**

PROMISE TO PAY. Southern California Land Development, LLC ("Borrower") promises to pay to Citizens Business Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Twelve Thousand Five Hundred & 00/100 Dollars ($1,612,500.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 15, 2006. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 15, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an index which is the Citizens Business Bank Prime Rate of interest. This index is determined by Citizens Business Bank from time to time as a means of pricing credit extensions to some customers and is neither tied to any external rate of interest or index (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.500%. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.250 percentage points over the Index, resulting in an initial rate of 7.750%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

PREPAYMENT; MINIMUM INTEREST CHARGE. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Citizens Business Bank, P.O. Box 986 Claremont, CA 91711.

INTEREST RESERVES. Borrower authorizes Lender to place $121,000.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). All interest payments shall be paid from the Interest Reserve. Lender may automatically deduct accrued unpaid interest from the Interest Reserve. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

INTEREST AFTER DEFAULT. Upon default, the variable interest rate on this Note shall immediately increase to 6.250 percentage points over the Index, if permitted under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,

EXHIBIT _____ C

**PROMISSORY NOTE**
**(Continued)**

repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Bernardino County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated August 15, 2005, to a trustee in favor of Lender on real property described as "Real Property located at 10375 Baldy Lane, Hesperia, CA 92345" and located in San Bernardino County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property described as "Real Property located at 10375 Baldy Lane, Hesperia, CA 92345" and located in San Bernardino County, State of California.

(C) a Deed of Trust dated August 15, 2005, to a trustee in favor of Lender on real property described as "Real Property located at 10325 Datura Road, Hesperia, CA 92345" and located in San Bernardino County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(D) an Assignment of All Rents to Lender on real property described as "Real Property located at 10325 Datura Road, Hesperia, CA 92345" and located in San Bernardino County, State of California.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested only in writing by Borrower or by an authorized person. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note

**PROMISSORY NOTE**
**(Continued)**

Loan No: 25728                                                                                                      Page 3

or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Citizens Business Bank, Construction Loan Department, 701 North Haven Avenue, Second Floor, Ontario, CA 91764.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

SOUTHERN CALIFORNIA LAND DEVELOPMENT, LLC

USA INVESTORS II, LLC, Manager of Southern California Land Development, LLC

USA INVESTMENT PARTNERS, LLC, Managing Member of USA Investors II, LLC

By: _____
    Joseph D. Milanowski, Manager of USA Investment
    Partners, LLC

LENDER:

CITIZENS BUSINESS BANK

X _____
   Authorized Signer

LASER PRO Lending, Ver. 5.35.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2006.   All Rights Reserved.   - CA  F:\apps\laserpro\CFI\LPL\D20.FC  TR-8788  PR-9

# EXHIBIT D

# EXHIBIT D

**Recording Requested By:**
**CHICAGO TITLE COMPANY**

RECORDATION REQUESTED BY:

WHEN RECORDED MAIL TO:
Citizens Business Bank
P.O. Box 986
Claremont, CA 91711

FOR RECORDER'S USE ONLY



# CITIZENS
## BUSINESS BANK
*The Bank Business Banks On*

## DEED OF TRUST

THIS DEED OF TRUST is dated August 15, 2005, among Southern California Land Development, LLC, who acquired title as Southern California Land Development, LLC, a California Limited Liability Company, whose address is 9227 Haven Ave., Suite 300, Rancho Cucamonga, CA 91730 ("Trustor"); Citizens Business Bank, whose address is Construction Loan Department, 701 North Haven Avenue, Second Floor, Ontario, CA 91764 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Community Trust Deed Services, a California corporation, whose address is 125 E. "H" Street, Colton, CA 92324 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in San Bernardino County, State of California:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 10325 Datura Road, Hesperia, CA 92345. The Assessor's Parcel Number for the Real Property is 0405-261-17-0-000, 0405-261-18-0-000, 0405-261-27-0-000 and 0405-261-29-0-000

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

EXHIBIT ____D____

# DEED OF TRUST
## (Continued)

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any

surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE.  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**   Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies.  Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1)  the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5)  the expiration date of the policy.  Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES.  If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1)  the term of any applicable insurance policy; or (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Deed of Trust also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE.  The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.**  Trustor warrants that:  (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense.  Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**DEED OF TRUST**
**(Continued)**

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the

**DEED OF TRUST**

Loan No: 25728                              (Continued)                                    Page 5

Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect

## DEED OF TRUST
### (Continued)

at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Bernardino County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor

trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of San Bernardino County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Citizens Business Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Southern California Land Development, LLC and includes all co-signers and co-makers signing

**DEED OF TRUST**
**(Continued)**

Loan No: 25728

Page 8

the Note.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Citizens Business Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 15, 2005, **in the original principal amount of $1,612,500.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Community Trust Deed Services, a California corporation, whose address is 125 E. "H" Street, Colton, CA 92324 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Southern California Land Development, LLC.

**Loan No: 25728**

**DEED OF TRUST
(Continued)**

Page 9

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

SOUTHERN CALIFORNIA LAND DEVELOPMENT, LLC

USA INVESTORS II, LLC, Manager of Southern California Land Development, LLC

USA INVESTMENT PARTNERS, LLC, Managing Member of USA Investors II, LLC

By: _____
Joseph D. Milanowski, Manager of USA Investment Partners, LLC

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF Nevada                          )
                                         ) SS
COUNTY OF Clark                          )

On August 17, 2005 before me, Amanda Stevens, personally appeared Joseph D. Milanowski, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006
(Seal)

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____        Beneficiary: _____
                                                       By: _____
                                                      Its: _____

Under the provisions of Government Code 27361.7, I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary: _____ Amanda Stevens _____

Commission #: _____ 02729371 _____

County Where Bond is Filed: _____ Clark _____

State Where Bond is Filed: _____ Nevada _____

Date Commission Expires: _____ 1-16-06 _____

Date: _____ 8-19-05 _____

Signature: _____

**DEED OF TRUST**
**(Continued)**

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - CA F:\apps\lasepro\CFI\LPL\G01.FC TR-8766 PR-9

SEE ATTACHED
LEGAL DESCRIPTION
as Exhibit "A"

Exhibit "A"

## DESCRIPTION

Page 1
Order No. 57029283

PARCEL 1:

THE NORTH 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 13, TOWNSHIP 4 NORTH, RANGE 5 WEST SAN BERNARDINO MERIDIAN, IN THE CITY OF HESPERIA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL COAL, OIL, GAS, AND OTHER MINERAL DEPOSITS, IN THE LAND SO PATENTED, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE, AND REMOVE THE SAME ACCORDING TO THE PROVISIONS OF SAID ACT OF JUNE 1, 1938, AS RESERVED TO THE UNITED STATES OF AMERICA BY PATENTS RECORDED MAY 14, 1954 IN BOOK 3383 PAGE 113, OFFICIAL RECORDS.

PARCEL 2:

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 13, TOWNSHIP 4 NORTH, RANGE 5 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF HESPERIA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL COAL, GAS AND OTHER MINERAL DEPOSITS, IN THE LAND SO PATENTED, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE, AND REMOVE THE SAME ACCORDING TO THE PROVISIONS OF SAID ACT OF JUNE 1, 1938 AS RESERVED BY THE UNITED STATES OF AMERICA BY PATENT RECORDED MAY 14, 1954 IN BOOK 3383, PAGE 114, OFFICIAL RECORDS.

PARCEL 3:

THE SOUTH ONE-HALF OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 13, TOWNSHIP 4 NORTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER MINERAL DEPOSITS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE, AND REMOVE THE SAME, AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA, RECORDED JULY 28, 1959 IN BOOK 4887, PAGE 176 OFFICIAL RECORDS.

PARCEL 4:

THE SOUTH ONE-HALF OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 13, TOWNSHIP 4 NORTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER MINERAL DEPOSITS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE, AND REMOVE THE SAME, AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA, RECORDED APRIL 14, 1983, AS INSTRUMENT NO. 83-79683, OFFICIAL RECORDS.