Michael D. Warner (TX Bar No. 00792304)
David T. Cohen (TX Bar No. 75008424)
Alexandra P. Olenczuk (TX Bar No. 24033924)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com
Email:  aolenczuk@warnerstevens.com

*and*

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
7201 West Lake Mead Blvd., Ste. 210
Las Vegas, NV 89128
Tel:    (702) 233-5040
Fax:    (702) 233-2209
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br>USA COMMERCIALMORTGAGE COMPANY,<br>      Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10725 LBR |
| In Re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>      Debtor. | Chapter 11 |
| In Re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>      Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In Re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>      Debtor. | OPPOSITION AND JOINDER |
| In Re:<br>USA SECURITIES, LLC,<br>      Debtor. | OF SIERRA LIQUIDITY FUND, L.L.C.<br>IN OPPOSITIONS TO CONFIRMATION OF<br>DEBTORS' THIRD AMENDED JOINT<br>PLAN OF REORGANIZATION |
| Affects:<br>  ■ All Debtors<br>  □ USA Commercial Mortgage Company<br>  □ USA Securities, LLC<br>  □ USA Capital Realty Advisors, LLC<br>  □ USA Capital Diversified Trust Deed Fund, LLC<br>  □ USA Capital First Trust Deed Fund, LLC | Date:  December 19, 2006<br>Time: 10:00 a.m. |

Sierra Liquidity Fund, L.L.C. ("Sierra"), the assignee of various interests in loans serviced by debtor in possession, USA Commercial Mortgage Company ("USACM"), files this Opposition and Joinder (the "Joinder") in the Oppositions to the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). In support thereof, Sierra respectfully represents as follows:[1]

## I.
## SIERRA'S INTERESTS

Sierra is a holder of loans serviced by USACM pursuant to loan servicing agreements (the "Servicing Agreements"). As such, Sierra is what is described in these cases as a "Direct Lender." The Loan Servicing Agreements for the loan interests held by Sierra are essentially USACM's standard Loan Servicing Agreement.

## II.
## SIERRA'S OBJECTIONS TO CONFIRMATION

**A.  The Plan Improperly Implements the Assignment of Servicing Agreements Between the USACM and Sierra, Which Agreements Are Executory Contracts That Must First Be Assumed Under Bankruptcy Code Section 365.**

Article V of the Plan describes the treatment of executory contracts and unexpired leases. The Servicing Agreements, however, are not on any list of executory contracts to be assumed, and in fact are simply to be assigned (without assumption) to Compass Partners LLC, as part of the Asset Sale transaction pursuant to Article IV.C. Since the Servicing Agreements are executory contracts, this treatment is improper under section 365 of the Bankruptcy Code.

---

[1]  Sierra acknowledges that this Joinder has been filed after the Court-approved deadline and apologizes to the Court for the timing of the filing of this Joinder.  Sierra, however, did not become involved in the bankruptcy case until after it was assigned its first loan interest on November 18, 2006, and did not present the documentation regarding the assignment to USACM until December 4, 2006. Therefore, Sierra never had an opportunity to be included among those served with notice of the Plan.  Upon learning about the terms of the Plan Sierra acted promptly to retain counsel to represent its interests and prepare and file this Joinder.  Since Sierra's opportunity to respond to the Plan was hampered by the timing of its acquisition of its interest, but Sierra acted diligently to prepare and file this Joinder, Sierra respectfully requests that the Court hear and consider the Joinder.

According to the Ninth Circuit, "[a]n executory contract is one 'on which performance remains due to some extent on both sides.' [citation omitted]  More precisely, a contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'"  *Unsecured Creditors' Committee of Robert L. Helms Construction & Development Co. v. Southmark Corporation (In re Robert L. Helms Construction & Development Co.)*, 139 F.3d 702, 705 (9th Cir. 1998).  *See also, Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 (9th Cir. 1983) (citing the same standard).  Notably, the *Cochise College Park* case concerned land purchase contracts, and the Ninth Circuit that case specifically found that

> some if not all of the land sale contracts encompassed both obligations of the purchaser to make various payments at times certain and obligations of Cochise to deliver the deed to the lot to the purchaser, to release the mortgage, if any, on that lot upon completion of payments on the promissory note, and to construct various improvements.  Under these circumstances, the failure of Cochise to develop the land as promised *or to convey a warranty deed to the purchaser could each constitute a material breach* excusing performance by the land purchaser of his remaining obligations. [footnote omitted]  Likewise, the failure of any given land purchaser to make payments on his promissory note could constitute a material breach excusing Cochise from completing its performances under the land sale contract. [footnote omitted]  Thus, in all likelihood, some if not all of the land sale contracts here were executory.

703 F.2d at 1348-49 (emphasis added).

The terms of USACM's standard Servicing Agreements demonstrate sufficient obligations on the parts of both USACM and the Direct Lenders for those Agreements to be considered executory contracts under the standards discussed in *Cochise College Park*.  Obviously, the Servicing Agreements require USACM to perform various tasks in servicing the loans.  The Servicing Agreements also require the Direct Lenders to *inter alia,* (i) immediately execute and deliver to USACM an assignment of all of the Direct Lenders' right title and interests in any loans and deeds of trust securing loans upon any payoff by USACM (Servicing Agreement, para. 2(c)(iii)); (ii) grant or deny consent to any request by USACM to modify the loan interest rate, forgive the payment of any principal or interest, change the outstanding principal amount or extend the loan maturity date (Servicing Agreement, para. 2(e)); and (iii) to pay any attorneys' fees or other foreclosure costs

incurred by USACM (Servicing Agreement, para. 4).   Since the Ninth Circuit stated in *Cochise College Park* that the failure to convey title upon payment would constitute a material breach and constituted sufficient circumstances to render certain contracts in that case executory, the obligation of the Direct Lenders to assign their right, title and interest to USACM and the other obligations imposed upon the Direct Lenders in the Servicing Agreements render the Servicing Agreements executory contracts.  *Accord, In re Commonwealth Mortgage Company, Inc.*, 149 B.R. 4, 6-7 (Bankr. D. Mass, 1992) (Loan servicing agreements assumed to be executory contracts).

The Servicing Agreements are not assumed by USACM under the Plan.  11 U.S.C. Section 365(a) "requires the assumption of an executory contract to be effectuated through an express order of the court."  *In re Gamma Fishing Company, Inc.*, 70 B.R. 949, 951 (Bankr. S.D.Cal. 1987).

Further, the Debtor is unable to assume the Servicing Agreements absent the agreement of the Direct Lenders due to the provisions of 11 U.S.C. Section 365(b)(1).  Section 365(b)(1) states that a debtor may not assume an executory contract unless the debtor has cured all defaults or provided adequate assurance of prompt cure.  USACM, in its Motion for Approval of Procedures Regarding Assignments of Direct Lenders' Interests in Loans (the "Procedures Motion"), has admitted that it defaulted upon the Loan Servicing Agreements.  In particular, USACM stated in the Motion that (i) due to its irregular pre-petition record keeping it was necessary to seek Orders permitting USACM to net and hold back amounts that may be owed by a Direct Lender against amounts that USACM has collected on behalf of the Direct Lender on a different loan within that Direct Lender's portfolio (Motion, para. 5); and (ii) the current management of USACM is still unable to straighten out what monies are due to or due from any given Direct Lender with respect to any given loan within that Direct Lender's portfolio (Motion, para. 10).

Among other obligations imposed upon USACM, USACM's standard Servicing Agreement requires USACM to (i) "[k]eep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts.  Those records will be available for review by the Lender during regular business hours at USA's corporate office" (Servicing Agreement, para. 2(b)); and (ii) "[p]roceed diligently to collect all payments due under the terms of the note and

promptly pay the proper parties, *when and if due*, principal, interest, late charges, insurance and other specified funds" (Servicing Agreement, para 2(c)(i)).  As USACM admitted in the Motion, it failed to keep appropriate or accurate records.  As a result, it felt compelled to obtain an order from this Court allowing it to refrain from making distributions to certain Direct Lenders that the Direct Lenders would otherwise be entitled to.  Thus, USACM is in default under the Servicing Agreements, and may not assume or assign those Servicing Agreements until or unless the defaults are cured.  *See,* 11 U.S.C. Section 365(b)(1).  *See also,* 11 U.S.C. Section 365(f)(2) ("The trustee may assign an executory contract or unexpired lease of the debtor only if – (A) the trustee assumes such contract or lease in accordance with the provisions of this section").

Since the Plan fails to follow the provisions of section 365 and cure all arrearages prior to the assumption of the Servicing Agreements, the Plan can not be confirmed.

**B.**    **The Plan May Not Curtail the Offset or Recoupment Rights of the Direct Lenders.**

The Plan at Article IV.E would improperly curtail the claims of Direct Lenders against what USACM has described as "Prepaid Interest".  Prepaid Interest allegedly represents those amounts that USACM either improperly paid to Direct Lenders or that USACM is holding pursuing to prior Court orders but which otherwise would have been improperly paid to the Direct Lenders.  Pursuant to Article IV.E.1.d. of the Plan, the Prepaid Interest will be held "free and clear" of all claims of Direct Lenders, except as provided under the Plan.  The Prepaid Interest will be used only to satisfy certain unsecured claims.  Direct Lenders, however, may have offset or recoupment rights with respect to the Prepaid Interest.  The rights can not be affected, abridged or impaired under the Plan.  See i.e., sections 553 of the Bankruptcy Code.  *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1276 (9th Cir. 1992).

Moreover, these offset rights are secured claims under Bankruptcy Code section 506(a) and there is no provision in the Plan for these secured claims whatsoever.  Since the Plan does not provide for these secured claims, much less value them and provide for their payment, the Plan can not be confirmed.

**C.    The Servicing Agreements May Not be Modified Under the Plan Nor May the Debtor Transfer the Servicing Agreements "Free and Clear".**

The Plan provides at Article IV.E.1.b. that all rights of USACM in the Servicing Agreements are transferred under the Asset Purchase Agreement "free and clear" of all liens, Claims, etc.  Since the Servicing Agreements are executory contracts, however, they can not be sold "free and clear".  Section 363 can not be used as a way to avoid assumption and cure under section 365.  *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 47 (Bankr. Del. 1999).

Moreover, even if the Servicing Agreements are not executory contracts, which Sierra denies, USACM has not referred to any authority that allows a contract, executory or not, to be sold free and clear of the defenses of the counter-party or to be modified without the consent of the non-debtor party.  Section 363 does not provide for the modification of contracts.  Moreover, the modifications to the Servicing Agreements are primarily being done through the Procedures Motion, the hearing on which the Court has continued to January 3, 2007.  Those modifications should more properly have been part of the Plan so that creditors could have voted on the provisions.  That, however, was not how the Debtors have chosen to proceed.  Since the Procedures Motion and the Plan are so integrally related, it would be fair for the hearing on confirmation of the Plan to be continued to January 3.  It would make little sense to confirm the Plan if the Court ultimately denies the Procedures Motion.  Denial of the Procedures Motion would likely mean that the contours of the Plan will have to change.

**D.    The Plan Fails to Satisfy the "Best Interest of Creditors Test" under Bankruptcy Code Section 1129(a)(7).**

Bankruptcy Code section 1129(a)(7) states that a plan proponent must demonstrate that creditors not accepting the plan are receiving under the plan no less than the amount they would receive if the debtor were liquidated under Chapter 7.  The Debtors have attached to the Disclosure Statement their Exhibit 4 which purports to be a liquidation analysis and which states that in a hypothetical liquidation unsecured creditors of USACM would receive approximately 5.8% on account of their claims.  The liquidation analysis, however, is flawed.

The liquidation analysis (in the notes thereto) "assumes that the Court will allow USACM to retain Prepaid Interest (both for the uncollected amounts and the funds in collection account)." Disclosure Statement, page 82.  Based on that assumption, USACM values Prepaid Interest as an asset of the estate at approximately $36 million.  In a liquidation context under Chapter 7, however, there is no basis to assume that the Court would approve the "compromise" that is imposed under the Plan that labels the Prepaid Interest as an asset of the estate and which alters and abridges offset rights and contract rights and which assigns executory contracts without cure or assumption.  Instead, in a Chapter 7 context it is more likely that Direct Lenders would preserve their rights, including their secured offset rights.  The terms of the Servicing Agreements would not be altered or amended.

A liquidation analysis must focus on the treatment of individual creditors, not on classes or groups of creditors.  *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 761-2 (Bankr. S.D.N.Y. 1992).  The assets and liabilities of USACM in a chapter 7 case would not mirror those of the Chapter 11 cases.  The secured offset rights of the Direct Lenders would be recognized and accounted for.  The Direct Lenders would preserve their contract rights.  The unsecured pool would be different as well.  As a result, the simple one-page liquidation analysis does not take into account what the various creditors differently situated would receive in a Chapter 7 liquidation.  For this reason also, therefore, the Plan can not be confirmed.

### IV.
### CONCLUSION

WHEREFORE, Sierra respectfully requests that the Court deny confirmation of the Plan.

Dated:  December 15, 2006

Michael D. Warner (TX Bar No. 00792304)
David T. Cohen (TX Bar No. 75008424)
Alexandra P. Olenczuk (TX Bar No. 24033924)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:      (817) 810-5250
Fax:      (817) 810-5255
Email:  dcohen@warnerstevens.com
Email:  aolenczuk@warnerstevens.com

[SIGNATURES CONTINUED NEXT PAGE]

*and*

**MICHELLE L. ABRAMS, LTD.**

By: _____ */s/ Michelle L. Abrams* _____
Michelle L. Abrams (NV Bar No. 5565)
7201 West Lake Mead Blvd., Ste. 210
Las Vegas, NV 89128
Tel:    (702) 233-5040
Fax:    (702) 233-2209
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*