LEWIS AND ROCA LLP LAWYERS

E-Filed on December 15, 2006

1  3993 Howard Hughes Parkway, Suite 600
   Las Vegas, NV 89169
   Facsimile (702) 949-8321
2  Telephone (702) 949-8320

3  40 North Central Avenue, Suite 1900
   Phoenix, Arizona 85004-4429

4  Susan M. Freeman AZ State Bar No. 004199
   Email: sfreeman@lrlaw.com
   Rob Charles NV State Bar No. 006593
5  Email: rcharles@lrlaw.com

6  Attorneys for Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** | Jointly Administered |
| **USA Commercial Mortgage Company** **06-10725 – Lead Case** | Chapter 11 Cases |
| **USA Capital Realty Advisors, LLC** **06-10726** | Judge Linda B. Riegle Presiding |
| **USA Capital Diversified Trust Deed Fund, LLC** **06-10727** | **USACM Unsecured Committee's Reply Brief In Support Of Plan Confirmation – Fraudulent Transfer, Setoff, And Use Of 2% Holdback To Pay Direct Lenders Committee's Professional Fees** |
| **USA Capital First Trust Deed Fund, LLC** **06-10728** | Affecting: |
| **USA Securities, LLC** **06-10729**         **Debtors.** | × All Cases
or Only:
¨ USA Commercial Mortgage Company
¨ USA Capital Realty Advisors, LLC
¨ USA Capital Diversified Trust Deed Fund, LLC
¨ USA Capital First Trust Deed Fund, LLC
¨ USA Securities, LLC |

211781.2

# TABLE OF CONTENTS

Page

I. USACM's Fraudulent Transfer Arguments for Entitlement to Prepaid Interest ................................................................................................................2

    A. USACM Has Strong Grounds to Recover Prepaid Interest from Direct Lenders as Fraudulent Transfers. ................................................................3

    B. USACM Has a Sound Basis for Precluding Direct Lenders From Exercising Setoff Rights Against Prepaid Interest. .....................................5

    C. Prepaid Interest Is Properly Used in Accordance with the Bankruptcy Code Under the Plan; Unsecured Creditors With Claims for Unremitted Principal Do Not Have Special Rights to It. .............................8

II. Payment of Direct Lender Committee's Professional Fees......................................9

III. The Direct Lender - USACM Settlement Meets the Test for Court Approval ......11

i

211781.2

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*In re Acequia, Inc.*,
  34 F.3d 800 (9th Cir. 1994) ................................................................................ 6, 7

*In re Barakat*,
  99 F.3d 1520 (9th Cir. 1996) ................................................................................... 9

*Bennett v. Rodman & English, Inc.*,
  2 F. Supp. 355 (E.D.N.Y. 1932), *aff'd* 62 F.2d 1064 (2d Cir. 1932) ....................... 6

*In re Bullion Reserve of North America*,
  836 F.2d 1214 (9th Cir. 1988) ................................................................................. 3

*In re Butcher*,
  58 B.R. 128 (Bankr. E.D. Tenn. 1986) .................................................................... 4

*In re Chatam, Inc.*,
  239 B.R. 837 (Bankr. S.D. Fla. 1999) ..................................................................... 7

*In re Fair Oaks, Ltd.*,
  168 B.R. 397 (B.A.P. 9th Cir. 1994) ....................................................................... 4

*In re Farmland*,
  296 B.R. 188 (8th Cir. BAP 2003), *aff'd* 397 F.3d 647 (8th Cir. 2005) ................ 10

*First Federal of Michigan v. Barrow*,
  878 F.2d 912 (6th Cir. 1989) ................................................................................... 5

*In re Housecraft Industries USA, Inc.*,
  310 F.3d 64 (2nd Cir. 2002) .................................................................................... 7

*In re M&L Bus. Machine Co., Inc.*,
  160 B.R. 851 (Bankr. D. Colo. 1993), *aff'd.*, 167 B.R. 219, 221 (D. Colo. 1994) ........ 4

*Mack v. Newton*,
  737 F.2d 1343 (5th Cir. 1984) ................................................................................. 6

*In re MicroAge, Inc.*,
  291 B.R. 503 (B.A.P. 9th Cir. 2002) ....................................................................... 7

*In re Milton Poulos, Inc.*,
  947 F.2d 1351 (9th Cir. 1991) ............................................................................... 10

*In re Murray*,
  217 B.R. 569 (E.D. Ark. 1998) ................................................................................ 6

*In re National Liquidators, Inc.*,
  232 B.R. 915 (Bankr. S.D. Ohio 1998) ................................................................... 4

*In re Nucorp Energy, Inc.*,
    764 F.2d 655 (9th Cir. 1985) .................................................................................. 10

*In re O.P.M. Leasing Services, Inc.*,
    35 B.R. 854 (Bankr. S.D.N.Y. 1983), *reversed on other grounds* 48 B.R. 824
    (S.D.N.Y. 1985) ...................................................................................................... 6

*In re Rodriquez*,
    895 F.2d 725 (11th Cir. 1990) .................................................................................. 4

*Scholes v. Lehman*,
    56 F.3d 750 (7th Cir. 1995) ...................................................................................... 5

*In re United Energy Corp.*,
    944 F.2d 589 (9th Cir. 1991) ................................................................................ 5, 6

*In re Video Depot, Ltd.*,
    127 F.3d 1195 (9th Cir. 1997) .................................................................................. 4

*Walker v. Wilkinson*,
    296 F. 850 (5th Cir. 1924) ........................................................................................ 6

*Western Tie and Timber Co. v. Brown*,
    196 U.S. 502 (1905) .................................................................................................. 7

**FEDERAL STATUTES**

11 U.S.C. § 502(d) ............................................................................................................ 7

11 U.S.C. § 548 ................................................................................................................. 3

11 U.S.C. § 548(a)(1) .................................................................................................... 4, 6

11 U.S.C. § 550(b) ........................................................................................................ 2, 4

11 U.S.C. § 1123(a)(4) ...................................................................................................... 9

11 U.S.C. § 1129(a)(9) ...................................................................................................... 8

The Official Committee of Unsecured Creditors of USA Commercial Mortgage Company ("Unsecured Committee") files this brief to address certain Plan confirmation legal issues settled between USACM and Direct Lenders under the Plan: (1) "Prepaid Interest" as defined in the Plan; (2) Direct Lender claimed rights to setoff Prepaid Interest against unsecured claims for Unremitted Principal; and (3) use of a portion of the 2% Holdback to pay the professionals engaged by the Direct Lenders Committee, consisting largely from servicing fees in amounts contractually authorized but not collected by USACM prepetition.

This brief recognizes the Direct Lenders' arguments, including those raised by objections to Prepaid Interest usage under the Plan, and recognizes that these arguments were asserted by the Direct Lenders Committee and considered in the structuring of the Unsecured Committee – Direct Lenders Committee settlement in the Plan. Weighed against those arguments are USACM's and the Unsecured Committee's strong arguments for USACM's entitlement to this money and more. The settlement of these contentions is fair, reasonable, and meets the legal requirements for a Court-approved settlement, especially when supported by most of the stakeholders in this bankruptcy case, including the Class A-5 Direct Lenders, as evidenced by their votes to confirm the Plan.

These arguments are expressly presented in support of the Unsecured Committee – Direct Lenders Committee settlement. The Unsecured Committee and the DTDF Committee have not settled the many disputes between them, including some discussed in this brief, and all arguments on all sides are reserved. The Court is not asked to make rulings of law or fact about issues in contention between the Unsecured Committee and DTDF Committee, including with respect to setoff against Prepaid Interest. Nor is any ruling on the merits of the disputes discussed herein required in light of the settlement embodied in the Plan.

211781.2

This brief complements the Joint Memorandum Of Points And Authorities In Support Of Confirmation Of Debtors' Third Amended Joint Plan Of Reorganization and Debtors' Reply Brief Supporting Confirmation of Debtors' Third Amended Joint Plan of Reorganization (the "Reply Brief"), both filed today.

## I. USACM's Fraudulent Transfer Arguments for Entitlement to Prepaid Interest

Before these bankruptcy cases were filed, USACM's former management repeatedly and routinely misrepresented the status of nonperforming loans, and made monthly interest payments to Direct Lenders from other funds in its collection account that included commingled money from various sources. USACM effectively "prepaid" the interest to keep the Direct Lenders satisfied, unsuspecting, and investing in new loans. Since Direct Lenders were entitled to collect the same amount from the Borrowers on their loans, Direct Lenders are understandably angry and distressed at claims that they must refund the money or not get future Borrower payments until USACM receives the same amounts back into its accounts. Some Direct Lenders have cited to the Court case law holding that payments received in good faith without knowledge of their Borrowers' failure to perform cannot be recovered in a lawsuit for restitution. That case law is inapplicable to money that is property of USACM's estate, though. Good faith is also only one element of a defense precluding recovery of a fraudulent transfer, to be considered in conjunction with proof of other facts, and only from a secondary transferee; the Direct Lenders received their Prepaid Interest directly from USACM, and are initial transferees who cannot take advantage of a good faith defense.[1]

Importantly, some Direct Lenders also contend that all funds defined in the Plan as "Prepaid Interest" should be used simply and only to reimburse claims of those Direct Lenders whose borrowers paid their loan principal, which USACM did not pass through to them as lenders (defined in the Plan as "Unremitted Principal" and claims for "Diverted

---

[1] 11 U.S.C. § 550(b).



Principal"). They are particularly unhappy that Prepaid Interest recoveries will be used under the Plan to pay administrative expense claims of Mesirow and the Debtors' and Committees' lawyers and financial advisors, especially given the large amount of such administrative expenses. The Court will only authorize payment of fees and costs it finds to be reasonable under all the circumstances, however, and the Bankruptcy Code requires that administrative expenses be paid in full to confirm a plan. These Direct Lenders' arguments illustrate why settlement under the Plan is appropriate of disputes over entitlement of (1) USACM, (2) Direct Lenders asserting rights to keep all Prepaid Interest and collect all their Borrowers' principal and interest payments thereafter, and (3) Direct Lenders asserting that the money should be used to pay their unsecured Unremitted Principal claims on setoff grounds.

**A.    USACM Has Strong Grounds to Recover Prepaid Interest from Direct Lenders as Fraudulent Transfers.**

The Unsecured Committee has asserted that USACM's transfers of money to Direct Lenders that were not direct passing-through of payments from those Direct Lenders' Borrowers may be avoided as classic constructive fraudulent transfers. Under 11 U.S.C. § 548, and applicable state fraudulent transfer law,

- A transfer made by a debtor is avoidable if
- Made within one to four years of the petition date,
- While the debtor was insolvent, unless
- The debtor received reasonably equivalent value in exchange for the transfer.

USACM transferred property from its collection account, in which it had an interest. Funds in commingled bank accounts under the debtor's control are deemed property of its estate for purposes of avoidance actions.[2] USACM had a sufficient possessory interest even in the property obtained by fraud and transferred to recipients to

---

[2] *E.g. In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir. 1988).

211781.2

sue for recovery, even when commingled funds are not considered wholly owned by the estate.[3]  No one disputes that the payments were made to certain Direct Lenders on account of the obligation of others, their non-performing Borrowers, and USACM did not receive equivalent value in exchange for those transfers, a classic fraudulent transfer.[4]  The Direct Lenders argue that USACM has no equitable right to recover the transfers.  In making this point to defeat a restitution claim, the Direct Lenders must concede that USACM received no consideration for the transfers.  Because the Direct Lenders receiving these funds were the initial transferees of USACM's payments, they may not take advantage of any good faith defense.[5]

It is possible that the transfers to Direct Lenders could also be avoided as intentionally fraudulent transfers.  If, in litigation, it was proven (a) that USACM intentionally paid the Direct Lenders, knowing they were not entitled to interest payments because their corresponding Borrowers had not performed on the applicable Loans, and (b) that such payments were intended to hinder or delay various and numerous Direct Lenders and other creditors, then those payments would be avoidable under 11 U.S.C. § 548(a)(1)(A) and applicable Nevada law as intentional as well as constructive fraudulent transfers.

---

[3] *E.g. In re M&L Bus. Mach. Co., Inc.*, 160 B.R. 851, 857 (Bankr. D. Colo. 1993) (debtor has possessory right to funds given voluntarily by investors), *aff'd.*, 167 B.R. 219, 221 (D. Colo. 1994) (untraced, commingled funds which debtor obtained by fraud are property of the estate); *In re National Liquidators, Inc.*, 232 B.R. 915, 918 (Bankr. S.D. Ohio 1998) (payments to investors in Ponzi scheme are transfers of a debtor's interest in the estate).

[4] *In re Rodriquez*, 895 F.2d 725 (11th Cir. 1990) (parent corporation's payment of its insolvent subsidiary's debt); *In re Fair Oaks, Ltd.*, 168 B.R. 397, 400, 402 (B.A.P. 9th Cir. 1994) (debtor did not receive fair value when its property was liened for affiliated insider's debt, so secured party was not a bona fide encumbrancer for value); *In re Butcher*, 58 B.R. 128 (Bankr. E.D. Tenn. 1986) (debtor's payment of debt of entity owned by his son's trust to satisfy lien on property owned by third party).

[5] 11 U.S.C. § 550(b); *see also In re Video Depot, Ltd.*, 127 F.3d 1195 (9th Cir. 1997) (in action to avoid subsidiary corporation's payment of its owner's debt, discussion of initial transferee).

4                                                                                                211781.2

Finally, to the extent USACM obtained funds actually owned by some Direct Lenders to pay other Direct Lenders using commingled money it fully controlled (despite contractual obligations), the transactions could be characterized as a Ponzi scheme. Payments may be avoided as fraudulent transfers to the extent they represent interest or profit in excess of the principal amounts invested.[6]

### B. USACM Has a Sound Basis for Precluding Direct Lenders From Exercising Setoff Rights Against Prepaid Interest.

Some Direct Lenders hold unsecured claims for Unremitted Principal, and assert unsecured claims on various other grounds including breach of servicing contracts and mismanagement. They argue that they should be allowed to setoff or recoup their Prepaid Interest against their unsecured claims. They would thereby recover the Prepaid Interest in USACM's possession attributable to their Loans, and obtain a greater percentage recovery on their unsecured claims than would other unsecured creditors. In addition to the arguments made in the Reply Brief, USACM has good arguments that they cannot do so, because setoff is unavailable to reduce a fraudulent transfer recovery.

The overall principle of allowing setoff only where equitable has been applied repeatedly by courts in the context of attempted setoff against a claim based on an avoidable transfer. The Unsecured Committee accordingly asserts that Direct Lenders cannot sidestep their fraudulent transfer exposure by offsetting USACM's entitlement to Prepaid Interest against their claims for Diverted Principal or any other USACM obligations. In this Circuit and in others, courts have uniformly rejected efforts to use a prepetition claim to reduce liability on a fraudulent transfer.

---

[6] *E.g. Scholes v. Lehman*, 56 F.3d 750, 757 (7th Cir. 1995) (Ponzi scheme transferees must return profits in excess of investment to extent of constructive fraud, and all of transferred funds to extent of actual fraud); *In re United Energy Corp.*, 944 F.2d 589, 595 n.6, 597 (9th Cir. 1991); *First Federal of Michigan v. Barrow*, 878 F.2d 912, 917-18 (6th Cir. 1989) (funds of mortgage servicing company like USA Commercial, in commingled account, held to be property of servicing company's bankruptcy estate and payments to investors and first mortgage holders held to be avoidable preferences).



1  The LPG brief asserts that "LPB (sic) does not believe there is any such hard and
2  fast rule applicable to this case, which would support such a theory", and explains that in
3  the *United Energy* case, the Ninth Circuit concluded there was no permissible offset
4  because the payments at issue were not fraudulent transfers.[7]  The LPG neglects to
5  mention that the Ninth Circuit flatly stated in that case that "It is true that a fraudulent
6  conveyance cannot be offset against or exchanged for a general unsecured claim."[8]

7  The Ninth Circuit's statement in *United Energy* is not an aberration.  The Fifth
8  Circuit case cited as one of the authorities for that proposition explains that:

> Allowing the creditor to set off the debt due him against the payments
> received by him would leave the [avoidable transfer] unremedied.  In this
> class of cases, the right to offset is denied, because the estate has been
> depleted to the detriment of creditors of like class, and to allow the right of
> set off would perpetuate the depletion.[9]

12  This principle is well-recognized in this Circuit and others.  In a more recent Ninth
13  Circuit case, one of the debtor's owners was held liable for fraudulent transfers under 11
14  U.S.C. § 548(a)(1) and § 544(b) and Idaho law.[10]  The initial determination that fraudulent
15  transfer liability could be reduced by a setoff was reversed by the Ninth Circuit.  The

---

[7] LPG Brief at 13, discussing *In re United Energy Corp.*, 944 F.2d 589 (9th Cir. 1991).

[8] 944 F.2d at 597.

[9] *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir. 1984), quoting *Walker v. Wilkinson*, 296 F. 850 (5th Cir. 1924), and applying it to fraudulent conveyances; COLLIER ON BANKRUPTCY § 553.03[3][e][v] (15th rev. ed. 1997) (creditor cannot offset its fraudulent conveyance liability against its claim against the debtor for same reason it cannot offset against preferential transfer: to do so would deny other creditors their rights to distribution of the fraudulently transferred property); *In re Murray*, 217 B.R. 569, 579-80 (E.D. Ark. 1998) (it is "well settled" that a creditor cannot offset its liability under the preference statute or against a § 548 fraudulent conveyance action); *In re O.P.M. Leasing Services, Inc.*, 35 B.R. 854 (Bankr. S.D.N.Y. 1983) (allowing setoff would "condone and legalize a fraudulent transfer") (*dicta*), *reversed on other grounds* 48 B.R. 824 (S.D.N.Y. 1985), *citing Bennett v. Rodman & English, Inc.*, 2 F. Supp. 355, 358 (E.D.N.Y. 1932)[ , *aff'd* 62 F.2d 1064 (2d Cir. 1932).

[10] *In re Acequia, Inc.*, 34 F.3d 800 (9th Cir. 1994).



Court noted that allowing that action would injure the body of unsecured creditors whom the fraudulent transfer laws are intended to protect.[11]

Inability to defeat fraudulent transfer liability on setoff grounds is underscored by Bankruptcy Code § 502(d).  That statute provides that a claim shall be disallowed if asserted by an entity from which property is recoverable under the avoiding powers or that is a transferee of an avoidable transfer, unless the entity or transferee has paid the amount or returned the property for which it is liable.  The creditor cannot offset the bankruptcy estate's fraudulent transfer cause of action and pursue the balance of its claim; the creditor gets nothing on its claim until it has fully satisfied its fraudulent transfer liability.[12]

The Unsecured Committee asserts that USACM or any liquidating trustee or a Chapter 7 trustee upon conversion of the case should the Plan fail, would be entitled to recover a judgment for the amount of Prepaid Interest a Direct Lender received.  No fraudulent transfer lawsuits have yet been filed.  That procedural status does not warrant the exercise of setoff rights, though.  When a creditor's liability to a debtor is based upon gratuitously transferred property that could be recovered as a preference or fraudulent transfer, the creditor should not be able to obtain a better result by insulating the recovery through a setoff.[13]

The point is that Direct Lenders were not entitled to the Prepaid Interest they received.  The transfers violated Nevada mortgage servicing law, and likely violated Nevada and federal fraudulent transfer law.  Under a Plan, a court of equity may and should bring the transferred assets back into the estate before making distributions to all

---

[11] *Id.* at 817; *see also*; *In re Chatam, Inc.*, 239 B.R. 837 (Bankr. S.D. Fla. 1999) ("even if Defendant did have a valid claim against the estate…a liability owed to the estate by reason of a fraudulent transfer cannot be offset against a claim against the estate) (*dicta*).

[12] *See In re MicroAge, Inc.*, 291 B.R. 503 (B.A.P. 9th Cir. 2002) (section applies to administrative expenses as well as unsecured claims); *In re Housecraft Industries USA, Inc.*, 310 F.3d 64, 72 n.8 (2nd Cir. 2002).

[13] *See, e.g. Western Tie and Timber Co. v. Brown*, 196 U.S. 502 (1905) (technical impediment to preference lawsuit, but court appropriately refused to allow setoff).

211781.2



creditors in accordance with the priority scheme of the Bankruptcy Code.  If setoff is allowed, that scheme and equitable entitlement is frustrated.

### C. Prepaid Interest Is Properly Used in Accordance with the Bankruptcy Code Under the Plan; Unsecured Creditors With Claims for Unremitted Principal Do Not Have Special Rights to It.

As set forth above, the Direct Lenders received their Prepaid Interest from a USACM collection account with commingled, fungible money that came from multiple sources, including, but not limited to, the diversion of Unremitted Principal, deferred loan fees payable to USACM that were collected as part of the payments made by various Borrowers, money taken from DTDF, and proceeds of loans to USACM and extensions of trade credit.  The Unremitted Principal funds in the collection account were used not only to make Prepaid Interest payments to Direct Lenders, but also to make interest payments on other loans, including loans to and for USACM and USACM insiders.  The Direct Lenders cannot trace the money USACM transferred to various recipients, including numerous Direct Lenders as interest, to particular Unremitted Principal deposits.

For these reasons, Direct Lenders do not have a constructive trust in the funds used for Prepaid Interest, and any such constructive trust would apply to money in the hands of other Direct Lenders in any event.  Money received postpetition from other Borrowers in payment of their own loans, money recovered on setoff and recoupment grounds from Direct Lenders through Netting, and money recovered on fraudulent transfer grounds is likewise not subject to a constructive trust by holders of claims for Diverted Principal.

Under the Bankruptcy Code, administrative expenses must be paid in full before unsecured claims receive a pro rata share of assets in which creditors hold no special constructive trust or security interest.[14]  Holders of unsecured claims for Diverted

---

[14] 11 U.S.C. § 1129(a)(9).

Principal are properly classified with holders of other types of unsecured claims, and cannot be accorded special priority treatment.[15]

Like the objecting parties, the Debtors and the Committees are distressed at the amount of professional fees charged in this case. The Court will finally decide the reasonable amount of fees to be allowed, but whatever is allowed is payable under law from property of the estate, including Prepaid Interest recoveries. The Debtors and Committees believe the best course of action is to turn off the spigot of professional fees by confirming the Plan, distributing assets in accordance with the Bankruptcy Code, and turning attention to recovery of as much as possible from the wrongdoers, Hantges and Milanowski. Anger and frustration at the substantial administrative expenses in this case cannot override the Bankruptcy Court requirements for confirming a plan.

## II.     Payment of Direct Lender Committee's Professional Fees

The Plan includes a compromise of USACM's claimed entitlement to collect the allowed fees of the Direct Lenders Committee lawyers from money held back from pre-confirmation distributions with Court permission, the "2% Holdback." Only $605,000 of the fees incurred by the Direct Lenders Committee, not the full amount, will be recovered in this manner, and none of the professional fees of the Debtors' professionals will be paid from these funds. The $605,000 will be allocated among the 2% Holdbacks from Direct Lenders on a pro-rata basis based upon the unpaid principal balance of their loans as of the Petition Date. To the extent Direct Lenders contractually agreed that USACM could charge them servicing fees up to 3%, the agreed amount will be paid from money USACM was already entitled to deduct from distributions. To the extent certain Direct Lenders agreed to less than 3%, a small portion of the $605,000 will be recovered from money otherwise payable under the Plan to those Direct Lenders.

---

[15] 11 U.S.C. § 1123(a)(4); *see In re Barakat*, 99 F.3d 1520 (9th Cir. 1996).



That imposition on Direct Lenders under the settlement is fair, reasonable, and takes into account strong arguments for collection of even more money from them, i.e. all of the Direct Lenders' attorneys' fees and at least the portion of the Debtors' professional fees incurred in addressing solely Direct Lender issues and Direct Lender Committee requests and demands. There is on-point authority for charging groups of creditors with the professional fees and costs incurred in connection with their specific representation in a bankruptcy case. In *In re Farmland*, an unsecured creditors committee hired a financial advisor, arguing that the transaction fee for that advisor should be an administrative expenses paid out of the estate.[16] The court, however, upheld the Bankruptcy Court's ruling requiring that the advisors recover their administrative fees out of the distribution to the unsecured creditors they represented.[17] It found that the advisors in *Farmland*, similarly to the Direct Lenders Committee professionals here, worked specifically for the benefit of a subclass of creditors, not for benefit of all creditors or for the benefit of the bankruptcy estate, and thus payment for their work should be born by those benefited thereby.[18]

The *Farmland* holding is an application of the "common fund" doctrine, which provides for attorneys' fees to be paid out of those monies the attorney creates, preserves, or protects for the benefit of others.[19] The common fund doctrine has been specifically applied to funds that were not part of an estate, such as trust funds under the Perishable Agriculture Commodities Act.[20] Thus, the common fund doctrine applies to the money recovered from Direct Lenders' borrowers, through the efforts of Mesirow and the

---

[16] 296 B.R. 188 (8th Cir. BAP 2003), *aff'd* 397 F.3d 647 (8th Cir. 2005).

[17] *Id.*

[18] *Id.* at 193 (emphasis added).

[19] *See In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

[20] *See In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991) (awarding attorneys' fees to representatives that created common fund through creation of a trust for produce sellers who had not been paid by bankrupt buyer).



1  Debtors' other professionals and counsel for the Direct Lenders' Committee.  Paying the
2  professionals responsible for collection and recovery of money out of those funds would
3  ensure that the benefiting Direct Lenders shoulder their burden of professional fees
4  proportionately with the other stakeholders in these bankruptcy cases, rather than shifting
5  it entirely to other creditors who are not Direct Lenders.  Indeed, it is particularly
6  appropriate for the Direct Lenders to bear the cost of counsel for the Committee that
7  worked consistently to represent and advocate their interests ahead of other creditors,
8  instead of foisting that cost on those other creditors.  Importantly, the Plan compromises
9  this obligation by sharing only a portion – $605,000 – of the expense on Direct Lenders,
10 who receive the entire benefit of the Committee's representation.

**III.    The Direct Lender - USACM Settlement Meets the Test for Court Approval**

As described in this brief, USACM and the Unsecured Committee have strong arguments for recovery of Prepaid Interest, disallowing any Direct Lender setoffs against Prepaid Interest, and charging Direct Lenders with all the professional fees incurred in advancing their interests and dealing with their unique issues.  In addition, just as they have raised entitlement to assert fraudulent transfer claims due to prepetition transfers of money from a commingled account in which USACM held an interest, they may also assert preference claims for transfers within 90 days of the bankruptcy petition on account of prior debts owed to Direct Lenders.  USACM and the Unsecured Committee also could join with the DTDF Committee in pursuing recharacterization arguments described by DTDF, that would result in treating all Direct Lenders as equity investors in USACM, entitled to nothing until unsecured creditors' claims are paid in full, and treating their asserted rights in assets as property of the USACM bankruptcy estate.  Further, just USACM is entitled to collect the maximum agreed amount of servicing fees, it has also has claims against Direct Lenders for accrued servicing fees at such rates that could be deducted from Borrower funds collected during the bankruptcy cases before distributions

to Direct Lenders.  The Plan also releases Direct Lenders from causes of action for uncollected pre-petition servicing fees.

Direct Lenders have countervailing arguments.  The Direct Lenders Committee has argued forcefully for setoff rights of Direct Lenders, payment of its professional fees by the USACM estate without surcharge of Direct Lenders, absence of any grounds for recharacterization of Direct Lender positions as equity, and defenses to potential fraudulent transfer claims or suit to recover pre-petition servicing fees.  The Direct Lenders Committee has vehemently insisted throughout this case that Loan Servicing Agreements must remain intact and unchanged, and be serviced by a competent and professional servicing company.

All of these contentions are compromised under the Plan in the settlement between the Unsecured Committee and Direct Lenders Committee overwhelmingly approved by Direct Lenders.  USACM and the Unsecured Committee agreed to limit the amount of professional fees and costs to be collected from the Direct Lenders, forego the maximum collection of accrued servicing fees, waive collection of prepetition servicing fees uncollected on the closing of the sale, forego any collection of interest and attorneys' fees on Prepaid Interest recovered to date and over the next two years through Netting, and waive preference causes of action.  Under this settlement, the unsecured creditors and the Direct Lenders avoid costly and uncertain litigation, and maximize the recovery for all.

As noted at the beginning of this brief, the Court is not being asked to make rulings on the law of setoff, recoupment, fraudulent transfer, or other issues.  If not settled, disputes between USACM and DTDF will be tried, and some of these issues will need to be decided then on the merits.  The settlements incorporated into the Plan, including the Unsecured Committee – Direct Lenders Committee settlement described and supported here, meet the standards for approval of settlements in plans are described in the Joint



Confirmation brief, however. The Plan meets applicable legal standards, is fair and just, and should be confirmed.

Dated December 15, 2006.

**LEWIS AND ROCA LLP**

By /s/ RC (#006593)
    Susan M. Freeman, AZ 4199 (pro hac vice)
    Rob Charles, NV 6593
*Attorneys for Official Unsecured Creditors' Committee for USA Commercial Mortgage Company*

211781.2