Annette W. Jarvis, Utah Bar No. 1649 (admitted pro hac vice)
Steven C. Strong, Utah Bar No. 6340 (admitted pro hac vice)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
        and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com
Attorneys for Debtors and Debtors-in-Possession

**E-FILED ON DECEMBER 16, 2006**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                           Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>                           Debtor. | Chapter 11 |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>                           Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                           Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION** |
| In re:<br><br>USA SECURITIES, LLC,<br><br>                           Debtor. | **(AFFECTS ALL DEBTORS)** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Hearing Date: December 19, 2006<br>Time: 10:00 a.m. |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

# TABLE OF CONTENTS

2

I.    PRELIMINARY STATEMENT ................................................................4

II.   PROCEDURAL HISTORY.................................................................5

III.  THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129 OF THE BANKRUPTCY CODE ........................................6

    A.    The Plan Meets All Of The Applicable Requirements of Section 1129(a) .......... 7

        1.    The Plan complies with the applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 – 11 U.S.C. § 1129(a)(1) ........................7

            a.    The Plan satisfies the classification requirements of Section 1122...........................7

            b.    The Plan satisfies the content requirements of Section 1123(a) and (b)...........................8

      (i)    The Plan designates Classes of Claims and Equity Interests -- 11 U.S.C. § 1123(a)(1) ...............................8

      (ii)   The Plan specifies unimpaired Classes -- 11 U.S.C. § 1123(a)(2) ......................9

      (iii)  The Plan adequately specifies the treatment of impaired Classes – 11 U.S.C. § 1123(a)(3) ...............................10

      (iv)  The Plan provides the same treatment of each Claim or Equity Interest within a particular Class – 11 U.S.C. § 1123(a)(4)...............................10

      (v)   The Plan provides adequate means for its implementation – 11 U.S.C. § 1123(a)(5) and (b)...............................11

      (vi)  Section 1123(a)(6), (a)(7) and (a)(8) does not apply to the Debtors' Chapter 11 Cases ...............................12

            c.    Conclusion    ...............................13

        2.    The Debtors have complied with the provisions of title – 11 U.S.C. § 1129(a)(2) ...............................13

        3.    The Plan is proposed in good faith -- 11 U.S.C. § 1129(a)(3)...................15

        4.    The Plan provides for Court approval of payment for services and expenses – 11 U.S.C. § 1129(a)(4) ...............................16

        5.    The Plan makes appropriate disclosures related to the Post-Effective Date Entities – 11 U.S.C. § 1129(a)(5)...............................17

        6.    Section 1129(a)(6) does not apply in these Chapter 11 Cases...................19

        7.    The Plan is in the best interests of holders of Claims and Equity Interests – 11 U.S.C. § 1129(a)(7) ...............................20

        8.    The Plan satisfies Section 1129(a)(8) with respect to all Classes except Classes A-4, A-6, A-7, A-8, D-5 and E-5 .............21

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2

9.     The Plan provides for payment in full of all Allowed Priority Claims – 11 U.S.C. § 1129(a)(9)..................................................21

10.    The Plan has been accepted by at least one impaired Class of Claims that is entitled to vote -- 11 U.S.C. § 1129(a)(10) ............23

11.    The Plan is feasible – 11 U.S.C. § 1129(a)(11) .........................24

12.    The Plan provides for full payment of all Statutory Fees -- U.S.C. § 1129(a)(12)........................................................................25

13.    Section 1129(a)(13) does not apply in these Chapter 11 Cases................26

14.    Section 1129(a)(14) does not apply in these Chapter 11 Cases................26

15.    Section 1129(a)(15) does not apply in these Chapter 11 Cases................26

16.    Section 1129(a)(16) does not apply in these Chapter 11 Cases................26

B.    The Plan May Be Confirmed As To Classes A-4, A-6, A-7, A-8, D-5 and E-5 Under Section 1129(b) ..........................................27

1.     Unfair Discrimination ................................................................27

2.     The Plan is "fair and equitable" ................................................28

a.     The Plan is "fair and equitable" as to Classes A-4, A-6 and A-7 ..................................................................................28

b.     The Plan is "fair and equitable" as to Classes A-8, D-5 and E-5 ..................................................................................29

IV.    SALE OF FTDF ASSETS AND USACM ASSETS TO COMPASS PARTNERS LLC ..................................................................................29

1.     Background ...........................................................................29

a.     Marketing of the FTDF Assets and USACM Assets ...............29

b.     Stalking Horse Bid and Bid Procedures..................................30

c.     Auction    ..........................................................................32

d.     The Compass APA.............................................................32

e.     Other Obligations / Considerations Under the Compass APA .................34

2. Discussion ...............................................................................35

a.     The Plan contemplates the Sale and USACM and FTDF have articulated a reasonable business justification for the Sale.....................................................................................35

b.     Sound business justification exists..........................................36

c.     Notice is adequate and reasonable .........................................37

d.     The purchase price for the USACM Assets and FTDF Assets is fair and reasonable..............................................................38

e.     The Sale is proposed in good faith...........................................39

f.     The Sale should be free and clear of liens, encumbrances, and interests ..........................................................................39

V.    THE COMPROMISES ARE IN THE BEST INTERESTS OF THE ESTATES ..........42

VI.    CONCLUSION.............................................................................43

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

## I.   **PRELIMINARY STATEMENT**

USA Commercial Mortgage Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and USA Capital First Trust Deed Fund, LLC ("FTDF"), the Debtors and Debtors in Possession in the above-captioned jointly administered Chapter 11 cases (collectively, the "Debtors"), seek the entry of an order confirming the "Debtors Third Amended Joint Plan of Reorganization" filed on November 15, 2006 [Docket No. 1799] ("Plan").[1]  This Memorandum is filed in support of the Debtors' request for confirmation in accordance with paragraph 10 of the "Order Approving: (A) Debtors' Disclosure Statement; (B) Proposed Notice of Confirmation Hearing; (C) Proposed Solicitation and Notice Procedures; and (D) Proposed Form of Ballots" [Docket No. 1800] ("Disclosure Statement Order").

Part II of this Memorandum provides a brief procedural history relevant to the confirmation of the Plan.  Part III sets forth the requirements for confirmation in Sections 1129(a) and (b) of the Bankruptcy Code, and demonstrates why all of those requirements have been met. Part IV of the Memorandum addresses the Asset Sale Transaction, and Part V addresses the "Intercompany Compromises" proposed as part of the Plan.

Filed concurrently with this Memorandum are the following documents, all of which serve as evidence in support of Confirmation of the Plan, as required by the Disclosure Statement Order:[2] (a) Declaration of Thomas J. Allison in Support of the Confirmation of the Debtors' Third Amended Joint Plan of Reorganization ("Allison Declaration"); and (b) Declaration of David Blatt of Compass Partners LLC in Support of Confirmation of Debtors' Third Amended Joint Plan of Reorganization ("Compass Declaration").   In addition to these Declarations, on December 18, 2006, the Debtors shall file with the Court in support of the confirmation of the Plan the following documents: (x) Declaration of BMC Group, as Solicitation Agent, regarding compliance with the "Solicitation Procedures" approved in the Disclosure Statement Order; and (y) a "Voting Report,"

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

[1] Terms not otherwise defined herein shall have the meaning assigned to such terms in the Plan.
[2] Disclosure Statement Order ¶ 10.

4

Memorandum In Support of Confirmation

1    which will detail the tabulation of Ballots cast for or against the Plan, as well as the other

2    information required under the Disclosure Statement Order.[3]

3    **II.    PROCEDURAL HISTORY**

4              On November 6, 2006, the "Debtors' Second Amended Joint Chapter 11 Plan of

5    Reorganization Dated November 6, 2006" was filed, and on November 7, 2006, the Debtors filed

6    a "Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Reorganization

7    Dated November 6, 2006" ("Disclosure Statement").  On November 13, 2006, the Court entered

8    the Disclosure Statement Order, and on November 15, 2006, the Debtors filed the Plan.  On

9    November 20, 2006, a "Solicitation Package" was served, in accordance with the Solicitation

10   Procedures that were approved by the Court in the Disclosure Statement Order.  Pursuant to the

11   Disclosure Statement Order and as set forth in the "Notice of Confirmation Hearing and Related

12   Deadlines and Procedures for Seeking Approval of and Objection to Confirmation of the Debtors'

13   Third Amended Joint Plan of Reorganization" ("Confirmation Hearing Notice"), which was

14   served on all of the Debtors' creditors, equity interest holders and parties in interest, a

15   Confirmation Hearing on the Plan will commence on December 19, 2006 at 10:00 a.m.

16             According to the Disclosure Statement Order and the Confirmation Hearing Notice,

17   objections to confirmation of the Plan were required to be filed and served on the Debtors and the

18   Committees on or before December 11, 2006.  As of that date, several objections to the

19   Confirmation of the Plan were timely filed and served in accordance with the Confirmation

20   Hearing Notice.   These objections will be addressed separately in the Reply Brief Supporting

21   Confirmation of Debtors' Third Amended Joint Plan of Reorganization ("Reply Brief"), which is

22   filed concurrently herewith.

23             At this time, based on information received from their Solicitation Agent, the Debtors

24   believe that the Voting Report will show that the Plan has been accepted by all Classes entitled to

25   vote on the Plan, except Class A-4.[4]  Specifically the voting accepting Classes are as follows:

26   _____

27   [3] Disclosure Statement Order ¶ 17.

28   [4] In so stating, the Debtors are in no way admitting that Class A-4 has voted to reject the Plan, as the Voting Report, giving a final certification of the balloting, has not yet been filed and certain ballots that have been cast that may be

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

Classes A-4, A-5, B-5, C-5, D-4 and E-4.  Classes A-1 through A-3, B-1 through B-4, C-1 through C-4, D-1 through D-3, E-1 through E-3 are deemed to accept the Plan[5] and, therefore, votes as to confirmation of the Plan were not solicited from these Classes.[6]  Classes A-6 through A-8, D-5 and E-5 are deemed to reject the Plan[7] and, therefore, votes as to the confirmation of the Plan from theses Classes were likewise not solicited.[8]  Accordingly, the Debtors seek to confirm the Plan under Section 1129(a) of the Bankruptcy Code as to all Classes that have accepted the Plan (Classes A-1 through A-3 and A-5, B-1 through B-5, C-1 through C-5, D-1 through D-4, E-1 through E-4), and under Section 1129(b) as to Classes A-4 and A-6 through A-8, D-5 and E-5, who have not accepted the Plan.  For the reasons stated in Part III of this Memorandum, it is respectfully submitted that the Plan should be confirmed pursuant to Section 1129.

## III.  THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129 OF THE BANKRUPTCY CODE

Section 1129 of the Bankruptcy Code governs the confirmation of a plan.  The Court must confirm a plan if all of the requirements set forth in the sixteen subsections to Section 1129(a), to the extent applicable, are satisfied.[9]  The proponents of the Plan bear the burden of establishing by a preponderance of the evidence that Section 1129(a) requirements have been met.[10]

The sixteen requirements for confirmation under Section 1129(a) are addressed below in subparagraphs A.1 through A.16.  As discussed therein, all of the requirements for confirmation either do not apply to these Chapter 11 Cases or have been met, other than Section 1129(a)(8) with respect to Classes A-4, A-6, A-7, A-8, D-5 and E-5.  Failure to comply with Section 1129(a)(8) as

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

deemed to be invalid.  For purposes of this Memorandum, however, the Debtors will assume that Class A-4 has not accepted the Plan, and maintain that the Plan nevertheless may be confirmed under Section 1129.

[5] Plan, Art. III., Section A.

[6] *See* 11 U.S.C. § 1126(f).

[7] Plan, Art. III, Section A.

[8] *See* 11 U.S.C. § 1126(g).

[9] 11 U.S.C. § 1129(a).  *See Brady v. Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985); accord *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 758-59 (Bankr. S.D.N.Y. 1995); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).

[10] *See, e.g., Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3rd 650 653 (9th Cir. 1997); *In re Arnold & Baker Farms*, 177 B.R. 648, 654 (9th Cir. BAP 1994), *aff'd*, 83 F.3d 1415 (9th Cir. 1996).

6

Memorandum In Support of Confirmation

to these rejecting impaired Classes does not bar confirmation of the Plan.[11]  Rather, the Plan must be confirmed if the Debtors show that as to each of the impaired, rejecting Classes the Plan does not "discriminate unfairly" and is "fair and equitable."[12]  Consequently, as set forth in subparagraph B below, the Debtors seek confirmation under Section 1129(b) with respect to Classes A-4, A-6, A-7, A-8, D-5 and E-5.

**A.**     ***The Plan Meets All Of The Applicable Requirements Of Section 1129(a).***

   **1.     The Plan complies with the applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 – 11 U.S.C. § 1129(a)(1).**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of title 11.[13]  Although broadly drafted, this provision is directed at compliance with Section 1122, governing the classification of claims and interests, and Section 1123, related to the contents of a plan.[14]  As demonstrated in subparagraphs a and b below, the Plan meets the requirements of Sections 1122 and 1123 and, therefore, it complies with Section 1129(a)(1) of the Bankruptcy Code.[15]

   a.     The Plan satisfies the classification requirements of Section 1122.

Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

[11] 11 U.S.C. § 1129(b) ("if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the plan, the court, on the request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph . . . ").

[12] *Id.*

[13] *Id.* § 1129(a)(1).

[14] *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 126 (1978); *Commercial Western Fin. Corp.*, 761 F.2d at 1338; *accord Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) (noting that it is "doubtful that violations of Code provisions unrelated to the form and content of a plan, such as voting procedures, implicate Subsection 1129(a)(1) at all"); *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y.) ("In determining whether a plan complies with Section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization."), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988)).

[15] Allison Declaration ¶ 8.

Memorandum In Support of Confirmation

of such class.[16]  "Substantially similar" generally has been interpreted to mean similar in legal character to other claims against the debtor's assets or to other interests in the debtor.[17]

Here, the classification structure is proper and in accordance with Section 1122 of the Bankruptcy Code.[18]  Each Class under the Plan differs in legal character or nature.  All Claims and Equity Interests within each Class are substantially similar to the other Claims or Equity Interests in that Class because they are similar in legal character to the other Claims against or Equity Interests in Debtors.[19]

Thus, the classification scheme embodied in the Plan is both reasonable and appropriate under Section 1122(a) of the Bankruptcy Code.[20]

b.    <u>The Plan satisfies the content requirements of Section 1123(a) and (b).</u>

Section 1123(a) of the Bankruptcy Code sets forth the mandatory contents of a plan.  In addition, Section 1123(b) states that a Plan may make certain provisions that generally address its implementation. As explained below, the Debtors' Plan complies with Section 1123(a) and (b).[21]

> (i)    *The Plan designates Classes of Claims and Equity Interests - - 11 U.S.C. § 1123(a)(1).*

Section 1123(a)(1) of the Bankruptcy Code requires a plan to designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code Sections 507(a)(2) (administrative expense claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case), or 507(a)(8) (priority tax claims).  The Plan complies with Section 1123(a)(1).

Article II Section C of the Plan designates Classes of Claims and Equity Interests for each of the Debtors, other than those specified in Sections 507(a)(2), (a)(3) and (a)(8) of the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

[16] 11 U.S.C. § 1122(a).

[17] *See* 5 <u>Collier on Bankruptcy</u> ¶ 1122.03 at 1122-7 (15th ed. 1995).

[18] Allison Declaration ¶ 8.a.

[19] *Id.*

[20] Bankruptcy Code Section 1122(b), which allows a plan to provide for an administrative convenience class, is inapplicable with respect to the Debtors' Plan 11 U.S.C. § 1122(b); s*ee* Allison Declaration ¶ 8.a.iii.

[21] *See* Allison Declaration ¶ 8.b.

8

Bankruptcy Code. "Unclassified Claims," *i.e.,* those in Sections 507(a)(2) and (a)(8), to the extent that they exist against the Debtors, are treated separately from the Article II Section Classified Claims and Equity Interests, in Article II Section B of the Plan.  There are no Section 507(a)(3) Claims in these voluntary Chapter 11 Cases.  The Plan, therefore, properly designates Classes of Claims and Equity Interests, and provides for the treatment of Claims that should not be classified.[22]

> (ii)    *The Plan specifies unimpaired Classes -- 11 U.S.C. § 1123(a)(2 .*

Section 1123(a)(2) of the Bankruptcy Code requires a plan to "specify any class of claims or interests that is not impaired under the plan."[23]  The Plan complies with this requirement.[24]

Article II Section C of the Plan lists each Class of Claims and Equity Interests and states the treatment of each Class under the Plan.  The following are Classes of Claims that are unimpaired under the Plan: Classes A-1 through A-3 (Claims against USACM), Classes B-1 through B-4 (Claims against FTDF), Classes C-1 through C-4 (Claims against DTDF), Classes D-1 through D-3 (Claims against USA Realty), and Classes E-1 through E-3 (Claims against USA Securities).  In the subsections of Article II Section C of the Plan discussing the treatment of each of these Classes of unimpaired Claims, the Plan expressly states that the Claims are not impaired and that the holders of Claims in such Classes are deemed to vote in favor of the Plan.[25]  The Plan contains no unimpaired Classes of Equity Interests in any of the Debtors.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[22] *Id.* ¶ 8.b.1.
[23] 11 U.S.C. § 1123(a)(2).
[24] Allison Declaration ¶ 8.b.ii.
[25] *Id.*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*(iii)    The Plan adequately specifies the treatment of impaired Classes – 11 U.S.C. § 1123(a)(3).*

Section 1123(a)(3) of the Bankruptcy Code requires a plan to "specify the treatment of any class of claims or interests that is impaired under the plan."[26]   The Plan satisfies Section 1123(a)(3).[27]

As noted above, Article II Section C of the Plan lists each Class of Claims and Equity Interests and states the treatment of each Class under the Plan.  The following Classes of Claims and Equity Interests are impaired under the Plan:  Classes A-4 through A-8 (Claims against and Equity Interests in USACM), Class B-5 (Equity Interests in FTDF), Class C-5 (Equity Interests in DTDF), Classes D-4 through D-5 (Claims against and Equity Interests in USA Realty), and Claims E-4 through E-5 (Claims against and Equity Interests in USA Securities).   In the subsection of Article II Section C of the Plan related to each of these Classes of impaired Claims, the Plan expressly states how these Claims or Equity Interests within each such Class will be treated.[28]

*(iv)    The Plan provides the same treatment of each Claim or Equity Interest within a particular Class – 11 U.S.C. § 1123(a)(4).*

Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[29]   The Plan complies with this requirement.[30]

Article II Section C of the Plan sets forth the treatment of Claims or Equity Interests classified in each Class under the Plan.  The treatment of Claims and Equity Interests is also summarized in Article II Section A of the Plan.  Those Sections of the Plan provide for the same treatment of each Claim and Equity Interest within a particular Class.  While the holder of a Claim

---

[26] 11 U.S.C. § 1123(a)(3).

[27] Allison Declaration ¶ 8.b.iii.

[28] *Id.*

[29] 11 U.S.C. § 1123(a)(4).

[30] Allison Declaration ¶ 8.b.iv.

10

Memorandum In Support of Confirmation

or Equity Interest may agree to less favorable treatment than other holders of Claims and Equity Interests within its Class, the Plan does not single out any Claim or Equity Interest for treatment different than other Claims or Equity Interests within its Class.[31]

> > (v)   The Plan provides adequate means for its implementation – 11 U.S.C. § 1123(a)(5) and (b).

Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth several examples of such means, including retention by the debtor of property of the Estate, and the sale of a debtor's property.[32]   In addition to the examples set forth in Section 1123(a)(5), Section 1123(b) states that a Plan may be implemented by the means provided for therein.  The Plan provides adequate means for its implementation in a manner that is consistent with Section 1123(a)(5) and (b) and, therefore, the Plan complies with Section 1123(a)(5).[33]

Article IV of the Plan, entitled "Implementation of the Plan," states the material terms related to its implementation.  Section A of Article IV provides a summary of the means of implementation, and Section B through H, together with other Plan provisions referenced below, the Asset Purchase Agreement with Compass Partners LLC dated December 8, 2006 ("Compass APA"), the Schedule of Executory Contracts and Unexpired Leases, the Plan Documents Supplement and the Direct Lender Supplement, detail the means for implementing the Plan.  The material provisions related to implementation of the Plan, which are consistent with Section 1123(a)(5) and/or (b), include:

- the transfer of certain Loan Servicing Agreements to the Asset Purchaser under an Asset Purchase Agreement in accordance with Section 1123(a)(5)(B);[34]

- the sale of the Acquired Assets pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code as authorized under Section 1123(a)(5)(D) of the Bankruptcy Code, and the disbursement of the Allocated Net Sale Proceeds in accordance with the Plan to holders of Claims against USACM and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

[31] *Id.*

[32] 11 U.S.C. § 1123(a)(5).

[33] Allison Declaration ¶ 8.b.v.

[34] Plan, Art. IV Section A.1.

Memorandum In Support of Confirmation

FTDF, and holders of Equity Interests in FTDF;[35]

- the effectuation of the "Intercompany Compromises," defined in Article IV Section of E of the Plan, and the releases set forth in Article VIII Section A of the Plan, as authorized under Section 1123(b)(3)(A) of the Bankruptcy Code;

- the transfer of certain assets of USACM to the USACM Trust, as authorized under Section 1123(a)(5)(B) of the Bankruptcy Code, the liquidation of those assets, and disbursement of Cash to beneficiaries of the USACM Trust pursuant to the Plan and the USACM Trust Agreement;[36]

- the retention by Post-Effective Date DTDF of assets of DTDF, as authorized under Section 1123(a)(5)(A) of the Bankruptcy Code, the liquidation of those assets by Post-Effective Date DTDF in accordance with the DTDF Amended Operating Agreement, and the disbursement of Cash in accordance with the Plan;[37]

- the retention and enforcement of certain Claims and causes of action and the liquidation of those Claims and causes of action and other assets of each of the Debtor's respective Estates, unless otherwise transferred to the USACM Trust or retained by Post-Effective Date DTDF, in accordance with Section 1123(b)(3)(B) and (b)(4) of the Bankruptcy Code, and the distribution of Cash proceeds in accordance with the Plan;[38]

- the assumption and/or assumption and assignment of executory contracts and unexpired leases listed on the Schedule of Executory Contracts and Unexpired Leases and the rejection of other executory contracts and unexpired leases in accordance with and as authorized under Sections 365 and 1123(b)(2) of the Bankruptcy Code;[39]

- the retention by the Bankruptcy Court of jurisdiction in accordance with Article VIII Section D of the Plan;

- the imposition of the post-Effective Date injunction set forth in Article IV Section H of the Plan; and

- the eventual dissolution of each of the Debtors.[40]

      (vi)    *Section 1123(a)(6), (a)(7) and (a)(8) does not apply to the Debtors' Chapter 11 Cases.*

---

[35] Plan, Art. IV Sections A.2 & C; Compass APA.

[36] Plan, Art. IV Sections A.3 and D.1; *see id*. Art. VII; USACM Trust Agreement, filed as part of the Plan Documents Supplement [Docket No. 2002].

[37] Plan, Art. IV Sections A.5 & D.2; *see id*. Art. VII; DTDF Amended Operating Agreement, filed as part of the Plan Documents Supplement [Docket No. 2001].

[38] Plan, Art. IV Sections A.3, A.7, B & G; *id*. Art. VII & Art. VIII Section L.

[39] Plan, Art. V; *see* Schedule of Executory Contracts and Unexpired Leases, filed by the Debtors on November 29, 2006 [Docket No. 1886].

[40] Plan, Art. IV Sections A.3, A.5 −A.7; *id*. Art. VIII Section L.

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Section 1123(a)(6) of the Bankruptcy Code does not apply to the Debtors' Plan because no

2    securities will be issued under the Plan, and all of the Debtors will be dissolved.[41]

3    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions

4    that are consistent with the interests of creditors and equity security holders and with public policy

5    with respect to the manner of selection of any officer, director, or trustee under the plan and any

6    successor to such officer, director or trustee."[42]  It is arguable that this Section does not apply in

7    these Chapter 11 Cases because all of the Debtors will be dissolved pursuant to the Plan.  To the

8    extent that Section 1123(a)(7) applies to the Post-Effective Date Entities, in particular, the

9    USACM Trust and the Post-Effective Date DTDF, for the same reasons discussed in paragraph

10   A.5 below, the Plan complies with this Section.[43]

11   Finally, Section 1123(a)(8) of the Bankruptcy Code expressly states that it

12   only applies in cases where the debtor is an "individual."  This Section does not

13   apply to these business Debtors.[44]

c.    Conclusion.

15   As demonstrated above, the Plan complies with Sections 1122 and 1123 of

16   the Bankruptcy Code.  Accordingly, the Plan satisfies Section 1129(a)(1) of the

17   Bankruptcy Code.

18        **2.    The Debtors have complied with the provisions
              of title -- 11 U.S.C. § 1129(a)(2) ..**

20   Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with

21   the applicable provisions of [title 11]."[45]  As a preliminary matter, the Debtors are qualified to file

22   a plan in these Chapter 11 Cases.[46]

23

24

25   [41] Allison Declaration ¶ 8.vi; *see* Plan, Art. IV Sections A& D, *id*. Art. VII Sections I.1  & L.

26   [42] 11 U.S.C. § 1123(a)(7).

     [43] *See In re Acequia,* 787 F.2d 1852 (9th Cir. 1986).

27   [44] Allison Declaration ¶ 8.b.vi.

     [45] 11 U.S.C. § 1129(a)(2).

28   [46] *Id*. § 1121(a).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

13

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

The inquiry under Section 1129(a)(2) is whether the plan proponent has complied with the disclosure and solicitation requirements of Section 1125 of the Bankruptcy Code.[47]  The Debtors, as proponents of the Plan, have fully complied with all of the provisions of title 11, and in particular the provisions of Section 1125, thereby satisfying the requirements of Section 1129(a)(2) of the Bankruptcy Code.[48]

On November 13, 2006, this Court entered the Disclosure Statement Order, holding that the Disclosure Statement contained "adequate information" within the meaning of Section 1125(a)(1) and (b) of the Bankruptcy Code.  As will be shown in the BMC Declaration and all relevant documents, the solicitation of votes on the Plan was (a) in compliance with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation, (b) in compliance with the "Solicitation Procedures" approved by the Court in the Disclosure Statement Order; and (c) commenced only after providing the Disclosure Statement, which was approved by the Court as part of the Disclosure Statement Order as containing adequate information within the meaning of Section 1125(a) of the Bankruptcy Code.[49]

Finally, any modifications to the Plan that was solicited will be purely technical in nature, meant to clarify the terms of the Plan, and to the extent that they exist, they will not require resolicitation.

For all of these reasons, the Debtors have complied with the provisions of title 11.

/ / /

/ / /

/ / /

---

[47] *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977), S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978) (Section 1129(a)(2) "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as § 1125 regarding disclosure"); *In re Brotby,* 303 B.R. 177, 193 (9th Cir. BAP 2003) (applying Section 1129(a)(2) only in the context of disclosure requirements of Bankruptcy Code, and stating that "[w]hether the information contained in a disclosure statement is properly attributed is an important consideration in the confirmation process [under § 1129(a)(2)]"*); In re Trans Max Tech., Inc.,* 349 B.R. 80, 86 (Bankr. D. Nev. 2006) (compliance with § 1125 is "elevate[d] . . . "into a confirmation requirement" under § 1129(a)(2)).

[48] Allison Declaration ¶ 9.

[49] *Id.*

14

Memorandum In Support of Confirmation

3.    **The Plan is proposed in good faith -- 11 U.S.C.
§ 1129(a)(3)**.

Section 1129(a)(3) of the Bankruptcy Code requires a plan proponent to propose a plan "in good faith and not by any means forbidden by law."  In the Ninth Circuit, "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the [Bankruptcy] Code . . . ."[50]  Good faith is to be viewed in light of the particular facts and the circumstances of the case.[51]    A plan of liquidation plan is allowed under the Bankruptcy Code and can be proposed in good faith.[52]

Consistent with the objectives and overriding purpose of the Bankruptcy Code, holders of Allowed Claims, and in the cases of FTDF and DTDF, Allowed Equity Interests, will realize the highest possible and most certain recoveries under the circumstances and in comparison to other alternatives, including liquidation under Chapter 7 of the Bankruptcy Code.[53]  The Plan is supported by all four Committees, thus evidencing their acknowledgment that the Plan is fundamentally fair and proposed in good faith.[54]

The process for the formulation of the Plan and the Plan itself provide independent evidence of the Debtors' good faith.   Specifically, the Plan formulation process, which involved arms-length, extensive and often hard-fought negotiations between the Committees and the Debtors, and between the Committees themselves, has resulted in compromises between the various Debtors' Estates and Direct Lenders.[55]  Furthermore, as discussed in more detail below, the sale of the Acquired Assets pursuant to the Compass APA, including the lead bid and auction

---

[50] *Platinum Capital v. Sylmar Plaza L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003), *quoted in Trans Max Tech.*, 349 B.R. at 88; *In re Jorgensen, 66 B.R. 104, 108-109 (B.A.P. 9th Cir. 1986).*

[51] *Id.*

[52] *See* 11 U.S.C. §§ 1123(a)(5)(D) & (b)(4) and 1129(a)(11); *see also In re Deer Park, Inc.*, 10 F.3d 1478, 1481 (9th Cir. 1993) ("Chapter 11 of the Bankruptcy Code provides that liquidation may be a form of reorganization, as opposed to a straight liquidation under Chapter 7.")

[53] Allison Declaration ¶ 10.

[54] *Id.*

[55] *Id.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

15

Memorandum In Support of Confirmation

1  component, is an arm-length transaction that was extensively negotiated by the Debtors and the

2  Committees, and it has produced the highest and best offer for the Acquired Assets.[56]

3      Finally, the "Liquidation Analysis," attached as Exhibit 4 to the Disclosure Statement,

4  demonstrates that holders of Allowed Claims and, in the cases of FTDF and DTDF, holders of

5  Allowed Equity Interests will receive substantially more under the Plan than they would in a

6  hypothetical Chapter 7 liquidation.  The Plan maximizes the value of the Debtors' assets and

7  proposes distributions to most holders of Allowed Claims on the Effective Date, or as soon as

8  possible thereafter, depending on the circumstances.[57]   All of these facts are evidence that the Plan

9  was proposed in good faith as required under Section 1129(a)(3).

10      **4.    The Plan provides for Court approval of payment
          for services and expenses – 11 U.S.C. § 1129(a)(4) ..**

11

12      Section 1129(a)(4) of the Bankruptcy Code requires that a plan provide that any payment

13  made or to be made for services or for costs and expenses incurred in or in connection with a case,

14  or in connection with the plan and incident to the case, have been approved, or are subject to

15  approval, by the bankruptcy court as reasonable.[58]   The Plan fully complies with Section

16  1129(a)(4).[59]

17      Article II Section B.1 of the Plan and Article III of the Disclosure Statement set forth

18  procedures for all Professionals or other Entities requesting compensation or reimbursement of

19  expenses to seek Court approval for any final allowance of compensation or reimbursement of

20  expenses. Article VII Section A of the Plan sets forth procedures related to the objection of any

21  such requests, and Article VIII Section D of the Plan provides for the Court's retention of

22  jurisdiction to hear and determine any and all applications by Professionals or other Entities for

23  compensation and reimbursement of expenses arising out of or related to the Debtors' Chapter 11

24  Cases.

25

26  ────────────────

[56] *Id.*

27  [57] *Id.*

[58] 11 U.S.C. § 1129(a)(4).

28  [59] Allison Declaration ¶ 11.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

Furthermore, to the extent that a break up fee is an expense "incurred in or in connection with a case, or in connection with the plan and incident to the case" under Section 1129(a)(4), the break up fee payable to SPCP Group, LLC ("Silver Point") was approved by the Court in the Bid Procedures Order [Docket No. 1761].

### 5.    The Plan makes appropriate disclosures related to the Post-Effective Date Entities – 11 U.S.C. § 1129(a)(5).

Sections 1129(a)(5)(A)(i) and (ii) of the Bankruptcy Code require, in relevant part, disclosure of "an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," and a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy[.]"[60]  Section 1129(a)(5)(B) mandates disclosure of the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[61]  The Debtors have complied with Section 1129(a)(5).[62]

All of the Debtors are affiliates of one another, they are all proponents of the Plan, and their participation in the joint Plan is well-established therein.  The Plan, as supplemented by the Plan Documents Supplement required under Article I Section C of the Plan, fully discloses those individuals who will be retained by the Post-Effective Date Entities in compliance with Section 1129(a)(5)(A)(i) as follows:

a.    On and after the Effective Date, Post-Effective Date DTDF shall have exclusive authority to act as the successor in interest to DTDF and the DTDF Estate, and shall serve as its Disbursing Agent under the Plan.[63]  Post-Effective Date DTDF also will prosecute Claims and administer assets transferred to it by FTDF pursuant to the Plan.  On December 8, 2006, the DTDF Committee filed a Plan Documents Supplement and Notice of Disclosures [Docket No. 2001] (the "DTDF Supplement"), disclosing that Michael

---

[60] 11 U.S.C. § 1123(a)(5)(A)(i) & (ii).
[61] Id. § 1129(a)(5)(B).
[62] Allison Declaration ¶ 12.
[63] Plan, Art. IV Section D.2; id. Art. VII Section E.2; id. Art. VIII Section L.2.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

17

Memorandum In Support of Confirmation

1    Tucker of FTI Consulting, Inc. (DTDF Committee's financial advisor) will serve as the

2    DTDF Administrator.    The identities of members of the DTDF Post-Effective Date

3    Committee and the terms of compensation for Mr. Tucker and members of the Committee

4    also are disclosed in the DTDF Supplement, and reference should be made to those

5    documents.

6        b.    The USACM Trust, which will be administered by the USACM Trustee

7    with the assistance of the USACM Trust Committee, is the Post-Effective Date Entity of

8    USACM, and the USACM Trustee will serve as the Disbursing Agent for the USACM

9    Trust under the Plan.[64]    On December 8, 2006, the USACM Committee filed a Plan

10   Documents Supplement and Disclosure [Docket No. 2002] (the "UCC Supplement"),

11   disclosing that Geoffrey L. Berman of Development Specialists, Inc. will serve as the

12   USACM Trustee.    The UCC Supplement also identities members of the USACM Trust

13   Committee and terms related to the compensation of Mr. Berman and the members of the

14   Committee, if any, and reference should be made to those documents.

15       c.    FTDF will have no successor under the Plan.    Rather, FTDF and the FTDF

16   Committee (until the FTDF is dissolved) will have authority to (a) effect all transactions

17   and take all actions required by the Plan on and after the Effective Date, and (b) to

18   prosecute claim objections in the FTDF Estate and the non-assignable FTDF Litigation

19   Claims on behalf of FTDF subject to the compromise with DTDF set forth in Article IV

20   Section E of the Plan.[65]    The Plan states that FTDF may act as the initial Disbursing Agent

21   for its Estate, but FTDF may request, upon agreement between itself and the USACM

22   Trust that all future distributions of the FTDF Estate be handled by the Disbursing Agent

23   for the USACM Trust, which is the USACM Trustee.[66]    FTDF intends to enter into a

24   separate agreement with Mr. Berman and Development Specialists, Inc. to serve as its

---

[64] Plan, Art. IV Section D.1; *id*. Art. VII Section E.2; *id*. Art. VIII Section L.1.

[65] Plan, Art. VIII Section L.3.

[66] Plan, Art. VII Section E.1.

Memorandum In Support of Confirmation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Disbursing Agent, and a form of that agreement will be filed with the Court prior to the Confirmation Hearing.

d.  USA Realty and USA Securities will have no successor under the Plan. Rather, these Debtors have authority to effect all transactions and take all actions required by the Plan on and after the Effective Date.[67]  These Debtors may act as the Disbursing Agent for their respective Estates, but they may request, upon agreement, that all future distributions of their Estates be handled by the Disbursing Agent for the USACM Trust, which is the USACM Trustee.[68]  USA Realty and USA Securities intend to enter into a separate agreement with Mr. Berman and Development Specialists, Inc. to serve as their Disbursing Agent, and a form of that agreement will be filed with the Court prior to the Confirmation Hearing.

Accordingly, the Plan, including the UCC Supplement and the DTDF Supplement, both part of the Plan Documents Supplement, disclose all post-confirmation affiliations in accordance with Section 1129(a)(5)(A)(i).[69]  The appointment or continuance of each Entity identified is consistent with the interests of creditors and Equity Interests and with public policy within the meaning of Section 1129(a)(5)(A)(ii).[70]  Finally, Section 1129(a)(5)(B) does not apply in these Chapter 11 Cases because no insider of the Debtors will be employed or retained by the Debtors after the Confirmation Date.[71]

**6.  <u>Section 1129(a)(6) does not apply in these Chapter 11 Cases</u>.**

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its business approve any rate change provided for in the plan.  The Plan does not provide for any such rate changes and, therefore, the provisions of Section 1129(a)(6) are not applicable to the Plan.[72]

---

[67] Plan, Art. VIII Section L.3.
[68] Plan, Art. VII Section E.1.
[69] Allison Declaration ¶ 12.
[70] Id.
[71] Id.
[72] Id. ¶ 13.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

7.    **The Plan is in the best interests of holders of Claims and Equity Interests – 11 U.S.C. § 1129(a)(7).**

Section 1129(a)(7) of the Bankruptcy Code requires that:

With respect to each impaired class of claims or interest—

(A)    each holder of a claim or interest of such class-

(i)    has accepted the plan; or

(ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.[73]

This provision is commonly referred to as the "best interests" test.  Under the best interests test, the Court must find that each dissenting creditor or equity interest in an impaired class will receive or retain value under the Plan that is not less than the amount such holder would receive if the debtor were liquidated in Chapter 7.[74]

Classes A-4, A-5, A-6, A-7, A-8, B-5, C-5, D-4, D-5, E-4, and E-5 are impaired under the Plan.  Of those impaired Classes, only Classes A-4, A-5, B-5, C-5, D-4, and E-4 will retain previously distributed assets and/or receive a distribution under the Plan.  As shown in the Liquidation Analysis, this retention or distribution will yield to the holders of Claims and, in the case of Classes B-5 and C-5, holders of Equity Interests, significantly more than such holders would receive in a hypothetical Chapter 7 liquidation.[75]

Holders of Claims and/or Equity Interests classified in impaired Classes A-6 through A-8, D-5 and E-5 will receive no distribution under the Plan.  Because, as demonstrated in the Liquidation Analysis, the holders of these Claims and/or Equity Interests would not receive any distribution if the USACM, USA Realty or the USA Securities' cases were liquidated under Chapter 7 of the Bankruptcy Code, each of these holders will achieve a recovery that is "not less

---

[73] 11 U.S.C. § 1129(a)(7) (emphasis added).

[74] *See generally, In re General Teamsters, Warehousemen & Helpers Union, Local 890,* 265 F.3d 869 (9th Cir. 2001); *Ambanc La Mesa Ltd. P'shp,* 115 F.3d at 657 (9th Cir. 1997).

[75] Allison Declaration ¶ 14.

Memorandum In Support of Confirmation

1    than the amount" such holder would receive in a Chapter 7 liquidation.  Accordingly, the Plan

2    satisfies Section 1129(a)(7) as to such holders of Claims and Equity Interests.[76]

3    **8.    The Plan satisfies Section 1129(a)(8) with respect to**
     **all Classes except Classes A-4, A-6, A-7, A-8, D-5 and E-5.**

4

5    Subject to the exceptions contained in Section 1129(b) of the Bankruptcy Code, Section

6    1129(a)(8) of the Bankruptcy Code requires that each class of claims and interests must either

7    (a) have accepted the Plan, or (b) not be impaired under the Plan.[77]  Here, Classes A-1 through A-

8    3, B-1 through B-4, C-1 through C-4, D-1 through D-3 and E-1 through E-3 are unimpaired, and

9    Classes A-5, B-5, C-5, D-4 and E-4, though impaired, have accepted the Plan.  Thus,

10   Section 1129(a)(8) is satisfied with respect to each of those Classes.[78]

11   Under the Plan, Classes A-6 through A-8, D-5 and E-5 are impaired and are not entitled to

12   any distribution and, therefore, are deemed to reject the Plan.[79]  Furthermore, the Debtors'

13   preliminary voting report from its Solicitation Agent indicates that impaired Class A-4 has not

14   accepted the Plan.  Thus, the Plan can be confirmed as to these Classes only through the

15   "cramdown" provisions of Section 1129(b).  As discussed in paragraph B below, the Plan meets

16   the requirements of Section 1129(b) with respect to Classes A-4, A-6 through A-8, D-5 and E-5.

17   **9.    The Plan provides for payment in full of all Allowed Priority**
     **Claims – 11 U.S.C. § 1129(a)(9).**

18

19   Section 1129(a)(9) requires that, unless the holder of a particular Claim agrees to a

20   different treatment of such Claim:

21   (A)    with respect to a class of claims of a kind specified in section 507(a)(2) or
       507(a)(3) of this title, on the effective date of the plan, the holder of such claim will
22     receive on account of such claim cash equal to the allowed amount of such claim;

23   (B)    with respect to a class of claims of a kind specified in section 507(a)(1),
       507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of this title, each holder of a claim of
24     such class will receive—

25

---

26   [76] *Id.*

27   [77] 11 U.S.C. §§ 1129(a)(8)(A) & 1129(b).

     [78] Allison Declaration ¶ 15.

28   [79] 11 U.S.C. 1126(g).

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(i)    if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claims; or

(ii)    if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C)    with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash

(i)    of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii)    over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii)    in a manner not less favorable than the most favored nonpriority unsecured claim provided  for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D)    with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).[80]

The Plan complies with Section 1129(a)(9).[81]

Pursuant to Article II Section B.1 of the Plan, unless otherwise agreed, each holder of a Claim under Section 507(a)(2) (Allowed Administrative Expense Claims, including Statutory Fees and Professional compensation) will receive Cash on the latter of the Effective Date or the date such Administrative Expense Claims becomes and Allowed Administrative Expense Claim.  The Debtors, whose petitions were voluntarily filed, do not have any Section 507(a)(2) Claims (gap claims in involuntary cases).  Thus, Section 1129(a)(9)(A) has been met.

Priority Unsecured Claims (Claims entitled to priority under Section 507(a), other than Priority Tax Claims, Administrative Expense Claims, and Ordinary Course Administrative Expense Claims)[82] are classified in Classes A-3 (USACM Priority Unsecured Claims), B-3 (FTDF Priority Unsecured Claims), C-3 (DTDF Priority Unsecured Claims), D-3 (USA Realty Priority

---

[80] *Id*. § 1129(a)(9).
[81] Allison Declaration ¶ 16.
[82] Plan, Art. I Section 115.

Memorandum In Support of Confirmation

1   Unsecured Claims) and E-3 (USA Securities Priority Unsecured Claims).  Article II Section C sets

2   forth the treatment of each of these Classes of Priority Unsecured Claims, stating that holders of

3   Allowed Priority Unsecured Claims in each of these Classes shall be paid in full on the Effective

4   Date, unless such holder agrees otherwise.[83]  Section 1129(a)(9)(B), therefore, has been satisfied.

5   Article II Section B.2 states that, unless otherwise agreed, holders of Priority Tax Claims

6   (Claims entitled to priority under Section 507(a)(8))[84] against each of the Debtors will be paid in

7   full in Cash from the relevant Debtor's Estate, on the later of the Effective Date or the date such

8   Priority Tax Claim becomes and Allowed Priority Tax Claim, or, in either case as applicable, as

9   soon thereafter as practicable.  This treatment is more favorable than allowed under Section

10  1129(a)(9)(C) and, therefore, that provision has been met.

11  Finally, the Plan complies with Section 1129(a)(9)(D).  Article II of the Plan states that

12  Allowed Secured Tax Claims, if any, against each of the Debtors will be paid in full on or before

13  the later of the sixty days after the Effective Date, or fifteen Business Days after the date the

14  Secured Tax Claim becomes an Allowed Claim.[85]  This treatment is in accord with Section

15  1129(a)(9)(C) and (D).

16          **10.    The Plan has been accepted by at least one impaired Class of
            Claims that is entitled to vote -- 11 U.S.C. § 1129(a)(10)**.

17

18  Section 1129(a)(10) of the Bankruptcy Code requires, in relevant part, that

19  "[i]f a class of claims is impaired under a plan, at least one class of impaired claims

20  that is impaired under the plan has accepted the plan . . . ."[86]  By its express terms,

21  this Section has no application to an accepting class of equity interests.  A class of

22  claims has accepted a plan if creditors that hold at least two-thirds in amount and

23  more than one-half in number of the allowed claims of such class that cost votes to

24

25

26  ---

    [83] Plan, Art. II, Sections C.1(c), C.2(c), C.3(c); C.4(c), and C.5(c).

27  [84] Plan, Art. I Section 114.

    [85] Plan, Art. II Sections C.1(a), C.2(a), C.3(a), C.4(a) & C.5(a); *see id.* Section A.

28  [86] 11 U.S.C. § 1129(a)(10).

23

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

accept or reject the plan.[87]   This standard, to the extent applicable, has been met with respect to each of the Debtors.[88]

In USACM's case, Classes A-4 through A-7 are Classes of Claims that are impaired under the Plan.   Classes A-6 through A-7 will receive no distribution under the Plan and, therefore, they are deemed to reject the Plan.   Based on the information that the Debtors have at this time, of the voting impaired Classes, Class A-5 has voted to accept the Plan and, therefore, Section 1129(a)(10) has been met with regard to USACM.

Section 1129(a)(10) does not apply to FTDF or DTDF because there are no impaired class of Claims in their cases.   The only impaired Classes in FTDF and DTDF' cases are Classes B-5 and C-5.   Those Classes, which incidentally have, based on the information available at this time, voted to accept the Plan, provide for the treatment of Equity Interests, not Claims.

Class D-4 is the only impaired Class of Claims in USA Realty's case, and it appears that it has voted to accept the Plan.   Therefore, Section 1129(a)(10) is met in USA Realty's case.

Finally, in USA Securities' case, Class E-4 is the only impaired Class of Claims, and it appears to have voted to accept the Plan.   Section 1129(a)(10) thus is met in  USA Securities' case.

### 11.    The Plan is feasible – 11 U.S.C. § 1129(a)(11).

Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[89]

This requirement is often referred to as the "feasibility" requirement.   If a plan does not contemplate the continued operation of a debtor, this requirement will be met if the plan proponent

---

[87] *Id.* § 1126(c).
[88] Allison Declaration ¶ 17.
[89] 11 U.S.C. § 1129(a)(11).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   shows that distributions required under the liquidating plan are capable of being made.[90]  The Plan

2   is feasible.[91]

3        The only fixed distributions that the Debtors must make under the Plan on the Effective

4   Date are payments on account of Allowed Administrative Expense Claims, Allowed Priority Tax

5   Claims, Allowed Secured Tax Claims (Classes A-1, B-1, C-1, D-1 and E-1), Allowed Other

6   Secured Claims (Classes A-2, B-2, C-2, D-2 and E-2), Allowed Priority Unsecured Claims

7   (Classes A-3, B-3, C-3, D-3 and E-3), and, in the cases of FTDF and DTDF, Allowed General

8   Unsecured Claims (Classes B-4 and C-4).[92]  The Debtors anticipate that they will have sufficient

9   Cash on the Effective Date, or on another date agreed to by the holder of an Allowed Claim, to

10  pay these Classes of Claims, to the extent that Claims exist against a Debtor within a Class, or to

11  make the reserves required under the Plan.

12       Furthermore, the Plan, including all of the documents incorporated therein, has adequate

13  provisions for the creation and management of the USACM Trust, the retention of assets by and

14  the management of Post-Effective Date DTDF, and for making distributions to holders of Allowed

15  Claims or Equity Interests classified in Classes A-4 (Allowed General Unsecured Claims against

16  USACM), B-5 (Equity Interests in FTDF), C-5 (Equity Interests in DTDF), D-4 (Allowed General

17  Unsecured Claims against USA Realty) and E-4 (Allowed General Unsecured Claims against

18  USA Securities), which are the only other Classes that will receive a distribution under the Plan.[93]

19  Thus, the Plan satisfies section 1129(a)(11) of the Code.

20       **12.    The Plan provides for full payment of all Statutory Fees --**
              **U.S.C. § 1129(a)(12).**

21

22       Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable

23

24

_____

[90] *See generally In re Wierma*, 324 B.R. 92, 112-13 (9th Cir. BAP 2005) (stating that the debtor "must demonstrate that
the plan has a reasonable probability of success" and "does not promise more than the debtor can deliver" (internal
citations omitted)); *see also In re Pero Bros. Farms, Inc.*, 90 B.R. 562, 563 (Bankr. S.D. Fla. 1988) (finding the
feasibility test inapplicable in a liquidation case).

[91] Allison Declaration ¶ 18.

[92] *See* Plan, Art. II, Sections A & B.

[93] *Id.*

25

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  under section 1930 of title 28 have been paid or the plan provides for the payment

2  of all such fees on the effective date of the Plan.   The Plan complies with this

3  requirement.[94]   Article II Section B.1(b) states that all Statutory Fees, which are

4  fees under section 1930 of title 28,[95] shall be paid in Cash in full on or before the

5  Effective Date.

6  **13.    Section 1129(a)(13) does not apply in these Chapter 11 Cases.**

7  Section 1129(a)(13) of the Bankruptcy Code generally requires a plan to provide

8  for the continuation of retiree medical benefits at levels established pursuant to

9  Section 1114 of the Bankruptcy Code.  There are no retiree benefits required to be paid

10  under the Plan and this provision is therefore inapplicable.[96]

11  **14.    Section 1129(a)(14) does not apply in these Chapter 11 Cases.**

12  Section 1129(a)(14) of the Bankruptcy Code requires that domestic support obligations be

13  paid.  This provision, new under the 2005 amendments to the Bankruptcy Code, has no application

14  to these business Debtors who have no such obligations.[97]

15  **15.    Section 1129(a)(15) does not apply in these Chapter 11 Cases.**

16  Section 1129(a)(15) of the Bankruptcy Code, also new under the 2005 amendments to the

17  Bankruptcy Code, expressly states that it applies to "case[s] in which the debtor is and

18  individual."[98]   This Section has no application to these business Debtors who are not

19  "individuals."[99]

20  **16.    Section 1129(a)(16) does not apply in these Chapter 11 Cases.**

21  Section 1129(a)(16), also new under the 2005 amendments to the Bankruptcy Code, states

22  that "[a]ll transfers of property of the plan shall be made in accordance with any applicable

23  provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that

24

---

25  [94] Allison Declaration ¶ 19.
26  [95] Plan, Art. I Section 125.
    [96] Allison Declaration ¶ 20.
27  [97] Allison Declaration ¶ 21.
    [98] 11 U.S.C. § 1129(a)(15).
28  [99] Allison Declaration ¶ 22.

26

1  is not a moneyed, business, or commercial corporation or trust."[100]  This provision does not apply

2  in these Chapter 11 Cases because the Debtors are a moneyed business or commercial corporation.

3      **B.**    ***The Plan May Be Confirmed As To Classes A-4, A-6, A-7, A-8, D-5 and E-5 Under Section 1129(b).***

4

5         As discussed above,[101] based on the information received at the time of this filing, Section

6  1129(a)(8) of the Bankruptcy Code has not been met in USACM's case as to Classes A-4, A-6, A-

7  7 and A-8, in USA Realty's case as to Class D-5, and in USA Securities' case as to Class E-5.

8  Notwithstanding this fact, the Plan may be confirmed if the Debtors show that Section 1129(b) of

9  the Bankruptcy Code has been satisfied.   Section 1129(b)(1) provides, in pertinent part:

10  > [I]f all of the applicable requirements of subsection (a) of this section other than
11  > paragraph (8) are met with respect to a plan, the court, on request of the proponent
12  > of the plan, shall confirm the plan notwithstanding the requirements of such
13  > paragraph if the plan does not discriminate unfairly, and is fair and equitable, with
14  > respect to each class of claims or interests that is impaired under, and has not
15  > accepted, the plan.[102]

14  The Debtors hereby request that even though Section 1129(a)(8) has not been met with respect to

15  the Classes of Claims and Equity Interests outlined above, the Court confirm the Plan under

16  Section 1129(b).  The Debtors maintain that the Plan does not discriminate unfairly and is "fair

17  and equitable" with respect to Classes A-4, A-6, A-7, A-8, D-5 and E-5.[103]

18      **1.**    **Unfair Discrimination.**

19         Although the statute provides no explicit guidance on this point, the weight of judicial

20  authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Code only

21  if similar claims are treated differently without a reasonable basis for the disparate treatment.[104]  In

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

[100] 11 U.S.C. § 1129(a)(16).
[101] *See supra* ¶ III.A.8.
[102] 11 U.S.C. § 1129(b)(1).
[103] *See generally, Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1212-13 (9th Cir. 1994); *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 329 (9th Cir. 1994).
[104] *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.2d at 656 (explaining that "discrimination must be supported by a reasonable basis."); *accord In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 611-12 (Bankr. D. Del. 2001); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 228 (Bankr. D.N.J. 2000); *see also Acequia*, 787 F.2d at 1364 ("The Collier treatise states that this provision requires that a plan 'allocate value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor.'").

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    these cases, the Plan does not "discriminate unfairly" with respect to impaired Classes A-4, A-6,

2    A-7, A-8, D-5 and E-5 that have either voted or are deemed to not have accepted the Plan, because

3    there is a reasonable basis for the different classification and treatment of the respective Claims

4    and Equity Interests included in each such Class.[105]  There have been no allegations made to the

5    contrary.

6               2.    **The Plan is "fair and equitable"**

7               a.    The Plan is "fair and equitable" as to Classes A-4, A-6 and A-7.

8          Class A-4 consists of Allowed General Unsecured Claims against USACM, Class A-6

9    consists of Allowed Penalty Claims against USACM,[106] and Class A-7 is comprised of

10   Subordinated Claims against USACM.[107]  These Classes, all of which have not accepted the Plan,

11   provide for the treatment of Claims against USACM that would be unsecured.  For a plan to be

12   deemed "fair and equitable" with respect to a rejecting class of unsecured claims, it may provide

13   that "the holder of any claim or interest that is junior to the claims of such class will not receive or

14   retain under the plan on account of such junior claim or interest any property."[108]  This standard

15   has been met as to Classes A-4, A-6 and A-7.[109]

16         The only Classes of Claims and Equity Interests that are junior to Class A-4 Claims are

17   Claims in Classes A-6 through A-8.  Holders of Class A-6 Claims will not receive or retain any

18   property unless holders of Allowed Class A-4 Claims are paid in full, plus interest.  Holders of

19   Class A-7 Claims will not receive or retain under the Plan on account of their Claim any property

20   unless holders of Class A-4 and Class A-6 Claims are paid in full, plus interest.[110]  Furthermore,

21   holders of Equity Interests in USACM, classified in Class A-8, will receive no distribution and

22   retain no property under the Plan.[111]

23

24

---

25   [105] Allison Declaration ¶ 24.

   [106] Plan, Art. II, Section C.1(f).

26   [107] Plan, Art. II, Section C.1(g).

   [108] 11 U.S.C. § 1129(b)(2)(B)(ii).

27   [109] Allison Declaration ¶ 24.

   [110] Plan, Art. II. Section C.1(g).

28   [111] Plan, Art. II Section C.1(h).

1    The only Classes of Claims and Equity Interests that are junior to Class A-6 Claims are

2    Claims in Classes A-7 through A-8.  Holders of Class A-7 Claims will not receive or retain under

3    the Plan on account of their Claim any property unless holders of Class A-6 Claims are paid in

4    full, plus interest.[112]  Furthermore, holders of Equity Interests in USACM, classified in Class A-8,

5    will receive no distribution and retain no property under the Plan.[113]

6    The only Class that is junior to Class A-7 Subordinated Claims is Class A-8, which is

7    comprised as Equity Interests in USACM.  Holders of Equity Interests in USACM will receive no

8    distribution under the Plan or retain any property and, therefore, the Plan is "fair and equitable" as

9    to Class A-7.[114]

10            b.     The Plan is "fair and equitable" as to Classes A-8, D-5 and E-5. .

11    For a plan to be deemed "fair and equitable" with respect to a rejecting class of interests, it

12    may provide, that "the holder of any interest that is junior to the interests of such class will not

13    receive or retain under the plan on account of such junior interest any property."[115]  This standard

14    has been met with respect to Class A-8, which are Equity Interests in USACM, Class D-5, which

15    are Equity Interests in USA Realty, and Class E-5, which are Equity Interests in USA Securities,

16    because no holder of any interest that is junior to the interests of these Classes will receive or

17    retain any property under the Plan.[116]

18    **IV.**    **SALE OF FTDF ASSETS AND USACM ASSETS TO COMPASS**
19           **PARTNERS LLC.**

20        **1.**    **Background**

21           a.    Marketing of the FTDF Assets and USACM Assets.

22    The Debtors, in coordination with the Committees, undertook extensive efforts to explore

23    various options for maximizing the assets of the Debtors' Estates, including marketing for sale all

24

25

26    [112] Plan, Art. II. Section C.1(g).
27    [113] Plan, Art. II Section C.1(h).
    [114] Plan, Art II Section C.1(h).
    [115] 11 U.S.C. § 1129(b)(2)(C)(ii).
28    [116] Allison Declaration ¶ 24.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation

1  or a portion of the Debtors' assets over the course of the last several months.[117]  As a result of

2  these marketing efforts, the Debtors were able to identify fourteen potential purchasers who were

3  interested in performing due diligence to explore purchasing all or a portion of the Debtors'

4  assets.[118]

5          After assisting these potential purchasers with their respective due diligence, the Debtors,

6  then, received initial offers from potential bidders.  The Debtors received just one offer to

7  purchase only the servicing assets of USACM.  The Debtors, however, received five (5) bids for

8  the loan portfolio of FTDF and the servicing business of USACM, including the bid from Silver

9  Point.  As described in the Supplemental Auction Declaration, the Debtors concluded that

10 packaging the servicing business of USACM, with its contractual responsibility to actively

11 manage these loans, along with the purchase of FTDF's fractional interests in loans enhanced the

12 value of both.[119]  In recognition of this synergy, USACM and FTDF pursued selling their assets on

13 a joint basis to maximize the value of their assets to their respective Estates.

14              b.      Stalking Horse Bid and Bid Procedures.

15         As a result of the marketing efforts described above and after evaluating the bids received

16 and negotiating with several bidders, the Debtors, in conjunction with the Committees, selected

17 Silver Point as the stalking horse bidder and proceeded to negotiate an asset purchase agreement

18 (the "Stalking Horse APA") to sell certain assets of USACM and FTDF.  Under the Stalking

19 Horse APA, Silver Point agreed to purchase the following assets:

20              •   FTDF's proportional interest in 47 different loans (the "FTDF Assets") for

21                  cash consideration of $46 million, subject to certain adjustments; and

22              •   USACM's post-closing rights to service loans pursuant to the loan servicing

23

24

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

25 [117] Allison Declaration ¶¶ 25-41.

26 [118] For a detailed description of the Debtors' marketing efforts as well as an explanation of the Debtors' decision to sell the assets of USACM and FTDF, jointly in one package, please see the "Supplemental Declaration Thomas J.

27 Allison in Support of Order Scheduling an Auction the Sale of Certain Assets, Appointing SPCP Group, LLC As Lead Bidder, Approving Bid Procedures and Protections" [Docket No. 1633] (the "Supplemental Auction Declaration"), which is incorporated herein and in the Allison Declaration filed herewith by reference.  *See* Allison Declaration ¶ __.

28 [119] *See* Supplemental Auction Declaration, ¶¶ 9, 11.

Memorandum In Support of Confirmation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

agreements (the "LSAs") for the USACM loan portfolio and related

personal property (the "Stalking Horse USACM Assets") for cash

consideration based on the future (i) collection of servicing fees, (ii)

collection of default rate interest and (iii) other payments and obligations set

forth in the APA, which, in the aggregate, totaled approximately $550,000.

On November 8, 2006, the Court entered the Bid Procedures Order [Docket No. 1761],

pursuant to which, among other things, the Court designated Silver Point as the lead bidder, and

scheduled an auction for December 7, 2006 (the "Auction") to allow competing bidders to make

Higher and Better Offers for the assets.  In addition, the Bid Procedures Order also approved a

break-up fee in the amount of $1.5 million (the "Break-Up Fee"), which was to be paid to Silver

Point in the event that another bidder was successful at the Auction.  A copy of the Bid Procedures

Order was served on 61 different Entities whom the Debtors believed had an interest in purchasing

the assets of USACM and FTDF.[120]

On November 30, 2006 – the deadline for potential bidders to submit Qualified Bids (as

defined in the Bid Procedures Order) – the Debtors and the Committees received bids from two

potential bidders – Compass Partners LLC ("Compass") and Desert Capital REIT, Inc. ("Desert

Capital).

Unlike the Stalking Horse APA which did not include pre-closing rights associated with

loan servicing, the Compass bid contemplated the purchase of all assets associated with USACM's

servicing rights, including accrued servicing fees, late charges, success fees and other fees and

sums due to USACM for $8 million.  In addition, the Compass bid also increased the purchase

price of the FTDF assets being sold from $46 million to $48 million and included separate

consideration of $1.5 million to account for payment of the Break-Up Fee to Silver Point.  Upon

receiving the Compass bid, the Debtors informed Silver Point and Desert Capital of this new

structure to allow them to evaluate the Compass bid and determine whether they would be willing

to restructure their bids.

---

[120]  *See* Certificate of Service [Docket No. 1815].

Memorandum In Support of Confirmation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1      On December 5, 2006, the Debtors designated the bid of Compass to be a Qualified Bid.

2  Desert Capital's bid was not so designated by the Debtors, primarily due to concerns regarding

3  Desert Capital's employment of Paul Hamilton, USACM's former Chief Financial Officer.  Upon

4  motion by Desert Capital, however, the Court designated Desert Capital's bid to be a Qualified

5  Bid, and allowed Desert Capital to participate in the Auction.

6              c.     Auction.

7      After review of the Compass bid, the Debtors, the Committees, and the other bidders

8  agreed that the structure of the Compass bid, with its inclusion of additional USACM assets,

9  would be adopted by all bidders, and it would form the basis of all bids at the Auction.

10  Accordingly, competitive bidding at the Auction began with the Compass bid of $57.5 million.

11  After approximately 15 rounds of bidding, Compass emerged with the highest and best bid in the

12  amount of $67 million.

13      The Estates of USACM and FTDF benefited greatly from the Auction.  Prior to the

14  Auction, the USACM and FTDF Estates had assurances of receiving only slightly more than $46.5

15  million on the closing of the Stalking Horse APA.  The successful bid of Compass, however,

16  totaled $67 million.  Accordingly, the Auction added almost $19 million in net value.[121]  In

17  addition, Compass agreed to make certain favorable concessions to the terms of the Stalking Horse

18  APA, thereby increasing the USACM and FTDF Estates.

19              d.     The Compass APA.

20      Following the Auction, the Debtors and Compass entered into the Compass APA.  As

21  more fully described in Article II of the Compass APA, FTDF and USACM (together, the

22  "Sellers") propose to sell, assign, transfer, convey and deliver to Compass the assets[122] described

23  below:

24              •    the FTDF Assets; and

25  _____

26  [121] The net value is calculated after taking into consideration the obligation to pay the Break-Up Fee.

27  [122] For a detailed description of the assets to be sold to Compass and the consideration to be paid by Compass, please
refer to Article II of the Compass APA and the schedules attached thereto.  To the extent that any part of this

28  Memorandum conflicts with, contradicts or is inconsistent with any provision of the Compass APA, the terms and
provisions of the Compass APA shall govern.

Memorandum In Support of Confirmation

1        • USACM's rights to service loans pursuant to the LSAs for the USACM loan

2          portfolio, including without limitation, all default rate interest, accrued

3          servicing fees, late charges, success fees, and other fees and sums due to

4          USACM and related personal property (the "USACM Assets") for $8

5          million (the "USACM Price").

6  Under the Compass APA, the total purchase price for the FTDF Assets and USACM Assets,

7  together, is $67 million, which will be allocated between the FTDF and USACM Estates.

8      The proposed sale transaction does not contemplate the sale of all of the Estates' assets.

9  Notably, the USACM Assets specifically exclude, among other things, the following assets: (i)

10  pre-petition accrued servicing fees, which are being compromised under the Plan and any Prepaid

11  Interest (as defined in the Compass APA), (ii) USACM's litigation rights against third parties

12  arising out of, or related to, events prior to the closing date, (iii) the IP $58 Million Promissory

13  Note and any other claims against IP or any of its affiliates or principals, (iv) all cash, accounts

14  receivable, notes receivable, interests in promissory notes which are not related to the USACM

15  loan portfolio, tax refunds and other similar assets, and (v) loans made to Placer Vineyards and

16  Marquis Hotel.  Significantly, USACM anticipates that the loans made to Placer Vineyards and

17  Marquis Hotel may soon be paid in full, which will provide additional value for the USACM

18  Estate.  In addition, in the case of FTDF, the FTDF Assets are defined to exclude cash and cash

19  equivalents and Litigation Claims unrelated to the collection or enforceability of the loans that

20  constitute the FTDF Assets.

21      Moreover, the Debtors made a calculated decision not to sell the assets of the other Estates.

22  For example, after careful consideration, DTDF and the DTDF Committee elected not to sell any

23  of DTDF's assets through the proposed transaction and instead favored a self-liquidation approach

24  as described in the Plan.  Furthermore, neither USA Realty nor USA Securities have any

25  meaningful assets and, therefore, none of their respective assets are the subject of the Compass

26  APA.  Thus, through the Auction process, the Debtors sought to maximize the value of the assets

27  that could be sold while retaining those assets that would have more value through a liquidation

28  process.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

e.    <u>Other Obligations / Considerations Under the Compass APA</u>.

Under the Compass APA, the transfer of the USACM Assets and FTDF Assets is also conditioned on the entry of a Court order that provides certain protections for Compass.  In particular, pursuant to the Compass APA, the Sellers seek entry of an order granting, among other things, the following relief:

(i)    finding that Compass shall not incur any liability as a successor to the Sellers unless such liability is expressly assumed;

(ii)    finding that the Total Asset Purchase Price represents fair value for the USACM Assets and FTDF Assets;

(iii)    finding that the sale is in the best interests of the Debtors' Estates and creditors;

(iv)    finding that Purchaser is a good faith purchaser of the Assets under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(m) of the Bankruptcy Code have not been violated;

(v)    finding that the sale of the Assets to Compass is free and clear of all liens, claims, interests, obligations and encumbrances whatsoever under Section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code;

(vi)    providing that the Court shall retain jurisdiction for the purpose of enforcing the provisions of the Compass APA and the Court order approving the same, including, without limitation, compelling delivery of the USACM Assets and FTDF Assets to Compass and protecting Compass against any liens, claims, interests, obligations and encumbrances against Sellers or the Assets;

(vii)    finding that there are no brokers involved in consummating the sale and no brokers' commissions are due;

(viii)    finding that Compass is not a successor to Sellers or otherwise liable for any liabilities not expressly assumed and to the extent permitted by applicable law permanently enjoining each and every holder of any claim for such liabilities

34

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  from commencing, continuing or otherwise pursuing or enforcing any remedy,

2  claim, cause of action or encumbrance against Purchaser or the Assets related

3  thereto, and

4       (ix)    finding that, pursuant to Section 1146(c) of the Bankruptcy Code,

5  the sale is "in contemplation of a plan or plans of reorganization to be confirmed in

6  the Bankruptcy Cases," and as such shall be free and clear of any and all transfer

7  tax, stamp tax, or similar taxes.

8    **2.**   **Discussion**

9      a.  The Plan contemplates the Sale and USACM and FTDF have articulated a reasonable business justification for the Sale.

10

11  The Debtors' Plan contemplates the sale of the USACM Assets and FTDF Assets as one of

12  its primary means of implementation in accordance with Bankruptcy Code Section

13  1123(a)(5)(D).[123]  In addition, the Compass APA, itself, contemplates the confirmation of the

14  Plan.  In connection with the sale of a debtor's assets, section 363 of the Bankruptcy Code

15  provides, in pertinent part: "(b)(1) The trustee, after notice and a hearing, may use, sell or lease,

16  other than in the ordinary course of business, property of the Estate."[124]

17  Under applicable legal standards, approval of a sale is appropriate if the court finds that the

18  transaction represents a reasonable business judgment by the debtor.[125]  In the Ninth Circuit,

19  "cause" exists for authorizing a sale of Estate assets if it is in the best interest of the Estate, and a

20  business justification exists for authorizing the sale.[126]

21  In determining whether a sale satisfies the business judgment standard, courts have held:

22  (1) that there be a sound business reason for the sale; (2) that accurate and reasonable notice of the

---

[123] See Plan, Art. IV.
[124] 11 U.S.C. § 363(b).
[125] See In re 240 North Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); accord In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997); In re Wild Horse Enter., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); In re Ionosphere Clubs, Inc., 184 B.R. 648, 653 (S.D.N.Y. 1995).
[126] In re Huntington, Ltd., 654 F.2d 578, 589 (9th Cir. 1981); In re 240 North Brand Partners, Ltd., 200 B.R. 653, 659 (9th Cir. BAP 1996); In re Walter, 83 B.R. 14, 19-20 (9th Cir. BAP 1988).

Memorandum In Support of Confirmation

1  sale be given to interested persons; (3) that the sale yield an adequate price (*i.e.*, one that is fair

2  and reasonable); and (4) that the parties to the sale have acted in good faith.[127]

3      Section 363 of the Bankruptcy Code does not require that the court substitute its business

4  judgment for that of the debtor.[128]  Rather, the court should ascertain whether the debtor has

5  articulated a valid business justification for the proposed transaction.[129]  This is consistent with

6  "the broad authority to operate the business of the debtor . . . [which] indicates Congressional

7  intent to limit court involvement in business decisions by a trustee . . . [so that] a court may not

8  interfere with a reasonable business decision made in good faith by a trustee."[130]

9      The Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel*

10  *Corp.)*,[131] noted that in evaluating whether a sale is based upon a "sound business purpose" the

11  court should consider:

12      [S]uch relevant factors as the proportionate value of the asset to the
        Estate as a whole, the amount of elapsed time since the filing, the
13      likelihood that a plan of reorganization will be proposed and
        confirmed in the near future, the effect of the proposed disposition
14      on future plans of reorganization, the proceeds to be obtained from
        the disposition vis-a-vis any appraisals of the property, which of the
15      alternatives of use, sale or lease the proposal envisions and, most
        importantly perhaps, whether the assets is increasing or decreasing
16      in value.

17

18          b.  Sound business justification exists.

19      Adequate business justification exists to support the sale of the FTDF Assets and USACM

20  Assets to Compass (the "Sale") foremost because it maximizes the USACM and FTDF Estates.  In

21  addition, there is sound business justification for the sale for several reasons.

22

23  ---

    [127]*Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991);
24  *see also, In re Walter*, 83 B.R. at 19-20.

    [128]  *See, e.g., In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 676 (Bankr. S.D.N.Y. 1989) (court will not substitute a
25  hostile witness's business judgment for debtor's unless testimony "established that [the debtor] has failed to articulate a
    sound business justification for its chosen course").
26  [129] *See, e.g, Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), *cert. denied*, 449 U.S. 869, 101 S. Ct. 206 (1980); *In re*
27  *240 North Brand Partners, Ltd.*, 200 B.R. at 659.

    [130] *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).
28  [131] 722 F.2d 1063, 1071 (2d Cir. 1983), *quoted in In re Walter*, 83 B.R. at 19-20.

Memorandum In Support of Confirmation

*(left margin)* SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1      With respect to the sale of the FTDF Assets, the Sale eliminates the timing and collection

2  risk inherent in the continued workout of the FTDF loans.  It also removes the dilution of

3  recoveries to investors from the continued administrative burden associated with administering

4  these Chapter 11 Cases and the costs of collection and work out of the FTDF loan portfolio.

5  Finally, the purchase price adjustments for principal collections prior to the close of the Sale is

6  likely to provide a higher recovery than that contained in the Compass APA.  Accordingly, as to

7  FTDF, the Sale of the FTDF Assets to Compass provides the best means to maximize the value to

8  the FTDF Equity Interests.

9      With respect to the sale of the USACM Assets, USACM is transferring its servicing rights

10  in approximately 80 specifically identified loans, including 12 loans in which DTDF also is a

11  lender.  The Sale includes rights to collect servicing fees and other fees, as well as limited personal

12  property related to loan servicing.  This transaction creates a mechanism for the collection and

13  servicing of loans by an experienced, well-capitalized loan servicer.  The new servicer will allow

14  Direct Lenders a means for collection of their loans.

15      The practical alternative to the sale from the perspective of the USACM creditors was to

16  create a servicing entity, which would require staff, facilities, and capitalization.  One issue for

17  creditors was whether such a new servicing Entity would be profitable.  An even more difficult

18  issue was how the funds to operate such an Entity would be obtained.

19      Balancing the alternatives, USACM's current management decided that a sale of the

20  servicing assets was in the best interests of creditors, and the USACM Committee concurred.

21      In light of these facts, the Debtors and Committees have determined that selling the

22  USACM Assets and FTDF Assets to Compass is the best option to maximize the value of these

23  assets for the Debtors and their Estates.  Moreover, as a result of the spirited Auction that was held

24  on December 7, 2006, the Debtors believe that they implemented a process that has ensured that

25  USACM and FTDF will receive the greatest consideration possible for the USACM Assets and

26  FTDF Assets.

27          c.   Notice is adequate and reasonable.

28      Prior to the Auction, a notice of the Auction, including copies of the Bid Procedures Order

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

37

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

and the Stalking Horse APA, was served on 61 Entities believed by the Debtors to be potential purchasers of the USACM Assets and FTDF Assets.

Furthermore, as the Sale of the USACM Assets and FTDF Assets is an integral part of the Debtors' Plan and is described in detail in the Disclosure Statement, all parties in interest have been made aware of the Sale in advance of the Confirmation Hearing, and have been put on notice that a successful overbidder might emerge from the Auction with the right to purchase the USACM Assets and FTDF Assets.  While the Sale now includes additional assets being sold by the USACM Estate, the Compass APA remains substantially similar to the Stalking Horse APA. Pursuant to applicable Federal and Local Bankruptcy Rules and the Disclosure Statement Order and other applicable law, copies of the Plan and the Disclosure Statement and related pleadings, which included a copy of the Stalking Horse APA, were served 29 days before the Confirmation Hearing on: (i) the Office of the United States Trustee, (ii) the Committee and its counsel, (iii) the Debtors' creditors, (iv) holders of equity interests in FTDF, (v) holders of equity interests in DTDF, and (vi) those parties listed on the Debtors' Limited Mailing Matrix on file with the Court.

The Sellers contend that such notice is more than adequate and reasonable under the circumstances.

>    d.    The purchase price for the USACM Assets and FTDF Assets is fair
>    and reasonable,

The adequacy of purchase price is generally the function of whether the price was negotiated in good faith.[132]  In addition, courts also consider whether the price was subject to competitive bidding and hold that a price is fair and reasonable if it is the highest and best offered received.[133]

---

[132] *See In re 240 North Brand Partners, Ltd.*, 200 B.R. at 659 (stating that "[g]ood faith encompasses fair value."); *see also In re Apex Oil Co.*, 92 B.R. 847, 874 (Bankr. E.D. Mo. 1988) (holding that the consideration was adequate where it was negotiated in good faith); *In re Embrace Systems Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (denying motion to sell where there was no evidence that the asset was diligently or sufficiently marketed).

[133] *See In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992) (stating that the purchase price is fair and reasonable if it is the highest and best offer).

Memorandum In Support of Confirmation

1    Here, there is no question that the price offered by Compass is fair and reasonable.  After

2    extensive marketing of the USACM Assets and FTDF Assets by the Debtors, including arms'-

3    length negotiations with Compass, and after fifteen (15) rounds of competitive bidding that

4    involved two other bidders at an Auction held in open Court, Compass emerged with the highest

5    and best offer.  The Sellers therefore believe that they have obtained the highest and best offer

6    possible for the USACM Assets and FTDF Assets, which, by definition, is fair and reasonable.

7                    e.    The Sale is proposed in good faith.

8    Although Section 363(b) of the Bankruptcy Code does not explicitly require good faith,

9    courts have also required that a sale be made in good faith.[134]  The Sale is proposed in good faith.

10    Whether a proposed sale is in "good faith" focuses principally on the element of special

11    treatment of the debtors' insiders in the sale transaction.[135]  Compass is not an insider of any of the

12    Debtors, and there was no fraud or collusion nor any attempt by Compass or anyone to take an

13    unfair advantage of USACM or FTDF.   Furthermore, as described above, the Compass APA is

14    the product of extensive negotiations by and among the Debtors, the Committees, and Compass.

15    In addition, pursuant to the Bid Procedures Order, Compass has provided evidence demonstrating

16    its good faith.  Accordingly, the proposed Sale is the product of good faith.

17                    f.    The Sale should be free and clear of liens, encumbrances, and interests.

18    Section 363(f) of the Bankruptcy Code provides that the Court may authorize a sale of

19    property of the Estate, "free and clear of any interest in such property of an entity other than the

20    Estate," if:

21           (1)    applicable nonbankruptcy law permits sale of such property
                    free and clear of such interest;

22           (2)    such entity consents;

23           (3)    such interest is a lien and the price at which such property is
                    to be sold is greater than the aggregate value of all liens on

24                    such property;

25           (4)    such interest is in *bona fide* dispute; or

26

27    _____

28    [134] *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992).

      [135] *Id.*; *In re Industrial Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

Memorandum In Support of Confirmation

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[136]

The Sellers believe that in connection with the Sale, one or more of the requirements of Section 363(f) will be satisfied.  The Sellers do not believe any entity has a security interest in or lien against the USACM Assets or FTDF Assets.  USACM and FTDF propose to satisfy the requirements of Section 363(f), to the extent any Entity "with an interest" in the USACM Assets or FTDF Assets (if any exist) does not consent, by providing in the order approving the sale, that all claims and interests of such entities, attach to the proceeds of the sale, with the same validity, force and effect, if any, and subject to the same rights, claims and defenses of USACM and FTDF or as may otherwise be required to effect the transactions contemplated in the Compass APA.

Furthermore, the LSAs can be sold and transferred to Compass free and clear of any claims that Direct Lenders might assert with respect to such LSAs.  First, it is important to note that any claim arising from, or relating to, USACM's conduct under the LSA does not constitute an interest in any property being sold.  Any such claim by a Direct Lender is nothing more than a general unsecured claim that can be asserted against USACM.  The transfer of USACM's assets are free and clear of these unsecured claims.[137]  To allow general unsecured claimants recourse against the purchaser of the Debtors' assets while others are left to the proceeds of the sale is inconsistent with the Bankruptcy Court's priority scheme.[138]  As one bankruptcy court has explained:

> There are two major difficulties with the plaintiff 's position. First, the plaintiff would allow claimants such as himself to assert their claims against purchasers of the bankrupt's assets, while relegating lienholders to the proceeds of the sale. This elevates claims that have not been secured or reduced to judgment to a position superior to those that have. Yet the Bankruptcy Act is clearly designed to give liens on the bankrupt's property preference over unliquidated claims.
>
> An additional difficulty with the plaintiff 's position is that it would seriously impair the trustee's ability to liquidate the bankrupt's

---

[136] 11 U.S.C. § 363(f); *In re General Bearing Corp.*, 136 B.R. 361, 363-64 (Bankr. S.D.N.Y. 1992).

[137] *See, e.g., In re New England Fish Co.*, 19 B.R. 323, 326 (Bankr. W.D. Wash. 1982) (holding that the debtor's sale of assets is to be transferred free and clear of unsecured claims).

[138] *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 292 (3rd Cir. 2003).

Memorandum In Support of Confirmation

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

> Estate. If the trustee in a liquidation sale is not able to transfer title to the bankrupt's assets free of all claims, including civil rights claims, prospective purchasers may be unwilling to pay a fair price for the property, leaving less to distribute to the creditors.[139]

Therefore, the transfer of the USACM Assets should be sold free and clear of any claims that Direct Lenders might assert against USACM with respect to any pre-Closing liability.

Moreover, Section 363(f) has been interpreted broadly to extinguish all types of claims against a purchaser of a debtor's assets, including unsecured claims.  While the Bankruptcy Code does not define "any interest" under Section 363(f), the current trend is to apply an expansive definition to the term.[140]  Courts have consistently held that the Section 363(f) authorizes the sale of assets "free and clear" of all unsecured claims, including claims such as those asserted by Direct Lenders in these cases.[141]

In *In re Trans World Airlines, Inc.,* the Third Circuit Court of Appeals ("Third Circuit") faced the issue of whether certain employment discrimination claims asserted against Trans World Airlines, Inc ("TWA") and a prior settlement of employment discrimination claims could then be asserted against American Airlines, Inc., which had purchased substantially all of TWA's assets.[142] In this case, TWA asserted that its assets gave rise to the employees' claims and, therefore, the employee discrimination claims are interests in property within the meaning of  Section 363(f) in that "they arise from the property being sold."[143]  The Third Circuit held that TWA's assets could be sold free and clear of these claims under Section 363(f).   Moreover, the court stressed that because these claims could be reduced to money judgments, Section 363(f)(5) specifically allows

---

[139] *Forde v. Kee-Lox Mfg. Co., Inc.*, 437 F. Supp. 631 (W.D.N.Y. 1977); *New England Fish Co* 19 B.R. at 633-34.

[140] *See Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003) (noting that "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation.").

[141] *See, e.g., In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996); *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3rd Cir. 2003); *In re Medical Software Solutions*, 286 B.R. 431 (Bankr. D. Utah 2002) (holding that "[u]nder § 363(f) of the code, the court has the power to order the assets of a seller to be transferred free and clear of all claims, including successor liability claims."); *In re P.K.R. Convalscent Ctr.*, 189, B.R. 90, 94-95 (Bankr. E.D. Va. 1995); *and In re All Am. Of Ashburn, Inc.*, 56 B.R. 186, 190-91 (Bankr. N.D. Ga. 186).

[142] *Trans World Airlines,* 322 F.3d at 283.

[143] *Id.* at 289-90.

Memorandum In Support of Confirmation

1    for the transfer of assets free and clear of such claims.[144]

2        Similarly, here, the LSAs can be sold and transferred to Compass "free and clear" of any

3    claims of Direct Lenders that arise from the LSAs being sold.  Importantly, the Direct Lenders

4    only recourse is to pursue claims for money damages and can be compelled to accept a money

5    satisfaction of their claims.  As a result, more than sufficient grounds support the finding that the

6    LSAs are being transferred to Compass "free and clear" of all Direct Lender claims, and Compass

7    will not bear the burden of any successor liability related to such claims.

8    **V.        THE COMPROMISES ARE IN THE BEST INTERESTS OF THE ESTATES**

9        USACM, FTDF, DTDF, USA Realty, USA Securities and the Direct Lenders reached a

10   resolution of certain disputes between them which are referred in the Plan as the "Intercompany

11   Compromises," treated in Article IV Section E of the Plan.  These Compromises were negotiated

12   by the Committees, with input from the Debtors, and they are the product of extensive, arms-

13   length, and often hard fought negotiations.  In the exercise of their sound business judgment, the

14   Debtors, maintain that the Compromises are fair and reasonable given the particular facts and

15   circumstances of the Debtors' cases, and are in the best interest of the Debtors' Estates.[145]  The

16   foregoing conclusions were reached after taking into consideration: (a) the probability of success

17   of the litigation; (b) the difficulties of collection; (c), the complexity, expense, inconvenience, and

18   attendant delay if all of the matters being compromised were litigated; and (d) the interests of

19   creditors, and to the extent applicable, Equity Interests.[146]

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

26   ───────────────────────
[144] *Id.* at 209-91.

27   [145] Allison Declaration ¶¶ 51-53.

28   [146] *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Lahijani*, 325 B.R. 282, 290 (9th Cir. BAP 2005);
Allison Declaration ¶ 55.

Memorandum In Support of Confirmation

## VI.  **CONCLUSION**

Based on the foregoing and the arguments set forth in the Reply Brief, the Debtors respectfully request that the objections to confirmation of the Plan be overruled and that Plan be confirmed under Section 1129(a) and Section 1129(b) of the Bankruptcy Code.

Respectfully submitted this 15th day of December, 2006.

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Memorandum In Support of Confirmation