## AGREEMENT TO SELL AND ASSIGN BENEFICIAL INTEREST IN LOAN

### ASSIGNMENT OF BENEFICIAL INTEREST IN DEED OF TRUST (the "Loan")
### ("BORROWER")

THIS AGREEMENT TO SELL AND ASSIGN BENEFICIAL INTEREST IN LOAN ("**Agreement**") is made and entered into as of this 16 day of November, 2006 ("Effective Date"), by and between ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ ("**Seller**") and SIERRA LIQUIDITY FUND, LLC or its assignee ("**Purchaser**").

1. **ASSIGNMENT OF SELLER'S FRACTIONAL INTEREST IN LOAN.** Seller hereby sells, assigns, transfers, conveys and delivers to Purchaser the entirety of Seller's right, title and interest in: (i) the above-referenced loan (the "**Loan**") originally made to ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ ("**Borrower**"), as evidenced in the above-referenced Assignment of Beneficial Interest in Deed of Trust (recorded in the Official Records of the Recorder's Office, County of San Luis Obispo, California, file # ▊▊▊▊▊▊▊▊ on April 4th 2006 ) and all other loan documents that evidence or secure repayment of the Loan (the "**Loan Documents**"), (ii) the lender's title policy and any endorsements and amendments thereto ("**Title Policy**") that was issued in favor of Seller and the other direct lenders who made the Loan to Borrower (the "**Lenders**"), (iii) all claims, causes of action and other rights and/or interests that Seller has or may have to recover amounts due and owing under or with respect to the Loan, including, without limitation, any all rights, claims and causes of action that Seller may have against the original or any successor Borrower or the servicer and originator of the Loan, USA Commercial Mortgage Company ("**Servicer**"), (iv) all rights and claims to accrued interest, cash distributions, voting rights and other benefits of any nature whatsoever distributable or allocable to Seller's fractionalized ownership interest in the Loan, including the right to any litigation proceeds appurtenant or allocable to Seller's fractionalized ownership interest in the Loan, whether the actions resulting in litigation proceeds occurred before or after the effective date of this assignment and transfer, and (v) any and all other rights, claims or causes of action that Seller may have or be deemed to have by reason of its fractional ownership interest in the Loan (collectively, the "**Transfer**").

2. **CONSIDERATION FOR TRANSFER.** The total consideration for the Transfer (the "**Purchase Price**") shall be ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. Seller represents and warrants to Purchaser that the aggregate principal amount originally loaned by Seller to Borrower was the sum of ▊▊▊▊▊▊▊ ("**Original Seller Loan Amount**") and that the sum of ▊▊▊▊▊▊▊▊ exclusive of accrued interest, late fees and penalties remains outstanding and owing to Seller as of the date hereof (the "**Current Seller Principal Balance**"), such that the Purchase Price equals ▊▊▊ of the Current Seller Principal Balance ▊▊▊▊▊.

SELLER IS AWARE THAT THE PURCHASE PRICE MAY BE SIGNIFICANTLY LOWER OR HIGHER THAN THE AMOUNT ULTIMATELY DISTRIBUTED FROM THE PAYOFF OR LIQUIDATION OF THE SECURED ASSET. SELLER ACKNOWLEDGES THAT SELLER IS A SOPHISTICATED INVESTOR AND THAT SELLER IS ENTERING INTO THIS AGREEMENT TO SELL ITS FRACTIONAL OWNERSHIP INTEREST IN THE LOAN FREELY AND BASED ON SELLER'S OWN ASSESSMENT AS TO THE CURRENT VALUE OF SAID FRACTIONAL LOAN INTEREST AND WITHOUT ANY RELIANCE ON ANY REPRESENTATION OR STATEMENT MADE BY PURCHASER OR ANY AGENT OR REPRESENTATIVE OF PURCHASER REGARDING THE STATUS OF THE LOAN, THE SERVICER, THE CONDITION OF THE BORROWER DEBTOR (FINANCIAL OR OTHERWISE), THE VALUE OF THE UNDERLYING SECURITY, AND/OR ANY OTHER MATTER RELATING TO THE LOAN OR THE LIKELIHOOD OF RECOVERY OF AMOUNTS DUE TO THE DIRECT LENDERS WITH RESPECT TO SAID LOAN.

3. **PAYMENT OF PURCHASE PRICE.** The Purchase Price shall be paid by Purchaser to Seller

in Cash, said Purchase Price to be released paid to Seller immediately following the recordation of an Assignment of Beneficial Interest in Loan in substantially the form of **Exhibit A** to this Agreement, together with such modifications as **First American Title Company** (the "Title Company") may deem necessary or appropriate (collectively, the "Assignment Instrument") to allow the Title Company to issue in favor of Purchaser an endorsement to the original Title Policy or other form of title insurance that insures the legitimacy of the Transfer and that Purchaser has succeeded to Seller's fractional ownership interest in the Loan and the original Title Policy without any loss of priority (collectively, the "Title Insurance"). Seller acknowledges and agrees that Purchaser's obligation to purchase Seller's interest in the Loan shall be conditioned on the Title Company's willingness and unconditional commitment to issue the Title Insurance herein described.

4. SELLER'S OBLIGATIONS; ADDITIONAL DOCUMENTS.    Seller shall execute and deposit the Assignment Instrument (in recordable form with notary acknowledgement of Seller's signature) with the Title Company within two (2) business days of the later to occur of: (i) the Opening of Escrow, and (ii) Purchaser's execution and delivery to Seller of an executed counterpart of this Agreement. Seller shall also execute any and all additional documents that Purchaser or the Title Company may reasonably request to give effect to the Transfer or to allow or facilitate the Title Company's ability or willingness to issue the Title Policy.

5. PURCHASER'S OBLIGATION TO DEPOSIT PURCHASE PRICE.    Purchaser shall deposit the Purchase Price with the Title Company within two (2) business days of the later to occur of: (i) the Opening of Escrow, and (ii) Seller's execution and delivery to Title Company of the Assignment Instrument (in recordable form with notary acknowledgement of Seller's signature).

6. SPECIAL POWER OF ATTORNEY.    CONDITIONED ONLY ON SELLER'S RECEIPT OF THE PURCHASE PRICE REFERENCED HEREIN, SELLER HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS THE PURCHASER, OR PURCHASER'S PRINCIPAL, JAMES S. RILEY, AS SELLER'S TRUE AND LAWFUL AGENT AND SPECIAL ATTORNEYS-IN-FACT WITH RESPECT TO SELLER'S INTEREST IN THE LOAN AND ALL OTHER MATTERS PERTAINING TO THE RIGHTS AND INTERESTS HEREIN TRANSFERRED, WITH FULL POWER OF SUBSTITUTION (SUCH POWER OF ATTORNEY BEING DEEMED TO BE AN IRREVOCABLE POWER COUPLED WITH AN INTEREST). THE POWER OF ATTORNEY SHALL INCLUDE WITHOUT LIMITATION THE RIGHT TO EXECUTE ON BEHALF OF SELLER, ALL ASSIGNMENTS, CERTIFICATES, DOCUMENTS AND INSTRUMENTS THAT MAY BE REQUIRED FOR THE PURPOSE OF TRANSFERRING SELLER'S INTEREST IN THE LOAN AND THE NOTE AND THE RIGHT TO DELIVER SUCH NOTE AND TRANSFER OWNERSHIP OF SUCH NOTE IN ANY BOOKS OR RECORDS MAINTAINED BY SERVICER OR THE BORROWER; AND THE RIGHT TO EXECUTE ANY AND ALL DOCUMENTS, PROOFS OF CLAIM, AND INSTRUMENTS THAT MAY BE REQUIRED TO ASSERT ANY AND ALL RIGHTS TO POTENTIAL LEGAL ACTIONS AND CLAIM POTENTIAL PROCEEDS THAT MAY BE AVAILABLE TO THE LENDERS UNDER OR WITH RESPECT TO THE LOAN. THE IRREVOCABLE POWER OF ATTORNEY HEREIN CONVEYED ALSO GIVES PURCHASER THE RIGHT TO DIRECT THE SERVICER TO ENTER A CHANGE OF ADDRESS FOR THE HOLDER OF SELLER'S INTEREST IN THE LOAN AND FOR ALL OTHER PURPOSES RELATING TO THE OWNERSHIP OF SELLER'S FRACTIONAL OWNERSHIP INTEREST IN THE LOAN. SELLER AGREES THAT THE RECORDATION OF THE ASSIGNMENT INSTRUMENT SHALL BE DEEMED OBJECTIVE EVIDENCE AND PROOF THAT THE TRANSFER HAS BEEN EFFECTED AND THE PURCHASE PRICE HAS BEEN PAID TO AND RECEIVED BY SELLER.

Seller's Initials: _____

7. ALLOCATION OF DISTRIBUTIONS.    Purchaser shall be entitled to all distributions made by the Servicer, the Borrower or any other party with respect to the Loan, including any and all distributions attributable to periods or events occurring prior to the date of this Agreement that have not yet been distributed to the Lenders.

Sierra Liquidity Fund, LLC; 2699 White Rd., Suite 255, Irvine, CA 92614; 949-660-1144 ext. 14

8. ADDITIONAL SELLER REPRESENTATIONS, WARRANTIES AND COVENANTS. In addition to the representations, warranties and covenants previously made by Seller in this Agreement, Seller: (i) hereby represents and warrants to Purchaser that Seller: (aa) owns a fractional interest in the Loan, (bb) has not encumbered, sold, transferred or otherwise compromised Seller's interest in the Loan prior to the Effective Date of this Agreement, (cc) has the full power and authority to validly sell, assign, transfer, convey and deliver Seller's interest in the Loan as herein contemplated, (dd) is authorized and empowered to sign this Agreement and the Assignment Instrument on behalf of Seller and to bind Seller thereby, (dd) to the best of Seller's knowledge: (1) the Deed of Trust and Note were not originated or closed in a manner which violated, or now violates, any Federal, State or Local laws, ordinances, regulations or rulings including, without limitation, Federal and State truth-in-lending laws and any other consumer protection laws, any applicable State usury laws, the requirements of the Real Estate Settlement Procedures Act of 1974, (2) all information provided by Seller in or in connection with this Agreement is true, correct, and accurate, in all respects, and (ii) should it be determined that the Current Seller Principal Balance is less than the amount set forth in Section 2 hereof, Seller agrees that the Purchase Price shall be recalculated and Seller shall immediately refund and pay to Purchaser, a pro-rata share of the Purchase Price based on the recalculated Purchase Price.

9. IRREVOCABLE OFFER TO SELL; CONTRACT NOT VALID UNTIL SIGNED BY PURCHASER. Seller acknowledges and agrees that: (i) once signed by Seller, this Agreement shall constitute an offer by Seller to sell its interest in the Loan to Purchaser as contemplated herein, which offer shall be deemed irrevocable for a period of five (5) business days following the date that Seller mails or faxes an executed counterpart of this Agreement to Purchaser in accordance with the requirements of Section 10 below, and (ii) Purchaser shall have no obligation to purchase Seller's interest in the Loan unless and until Purchaser executes and returns to Seller a counterpart of this Agreement containing Purchaser's countersignature.

10. PROCEDURES TO INITIATE THE SALE. To initiate the transaction please return this signed Agreement to Purchaser along with a copies of any and all material evidencing your ownership of a fractional interest in the Loan and any statements regarding your capital contributions and any and all payments you have received on principal or prepaid interest. Seller must mail Purchaser an original executed counterpart copy of this Agreement to initiate and effect the sale, but Seller may also initially fax the executed Agreement to Purchaser to expedite the transaction. **If Seller's interest in the Loan is held by a Family Trust, please include a copy of the title page and signature page of the trust, and any section which addresses signature requirements binding the trust.**

11. <u>INDEMNIFICATION</u>. Seller agrees to indemnify and save Purchaser harmless from and against any and all loss, damage, liability and expense (including its reasonable attorney's fees and cost of litigation) sustained or incurred by Purchaser arising out of, or based upon, the inaccuracy or breach of any warranty or representation made by Seller or its agent(s) under this Agreement or of any covenant to be performed by Seller under this Agreement. Purchaser assumes all liability and/or potential financial injury whether known or unknown regarding the transfer and assignment of the Current Seller Principal Balance in the Loan, other than as described above. Purchaser agrees to indemnify and hold ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ harmless from any and all lawsuits, attachments, disputes, or claims that may arise from or in connection with the transfer and assignment of said assets, other than as described above. In the event ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ has assigned or transferred all or any portion of interest in the Current Seller Principal Balance in the Loan, either orally or in writing, to any person, heir, entity or trust not a party to this agreement; and/or, any liability is caused by the willful act of ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ all financial and legal responsibility will be borne by the ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓.

12. <u>NOTICES</u>. All notices and demands which either party is required or desires to give to the other shall be given in writing by personal delivery, express courier service or by facsimile transmission or e-mail (and any notice by facsimile transmission or e-mail shall be followed by next business day delivery of a hard copy) to the address, facsimile or e-mail number set forth opposite each

Sierra Liquidity Fund, LLC; 2699 White Rd., Suite 255, Irvine, CA 92614; 949-660-1144 ext. 14

party's signature on the signature page of this Agreement, provided that if any party gives notice of a change of name, address, facsimile or e-mail number, notices to that party shall thereafter be given as demanded in that notice. All notices and demands so given shall be effective upon receipt by the party to whom notice or a demand is being given.

13. **WAIVER OF RIGHT TO JURY TRIAL.** EACH PARTY TO THIS AGREEMENT, FOR ITSELF, AND ON BEHALF OF ITS SUCCESSORS AND ASSIGNS, HEREBY FULLY AND FREELY WAIVES ANY RIGHT TO TRIAL BY JURY WITH REGARD TO THIS AGREEMENT AND/OR ANY CLAIM, COUNTERCLAIM, OR OTHER ACTION OR MATTER RELATED TO OR ARISING OUT OF THIS AGREEMENT TO THE FULL EXTENT THAT SUCH RIGHT EXISTS OR MIGHT OTHERWISE EXIST IF NOT FOR THIS WAIVER. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY TO THIS AGREEMENT AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

Seller's Initials _____   Buyer's Initials _____

14. MISCELLANEOUS.

    14.1 **Transaction Costs.** In consideration of the agreement set forth herein, each of the parties to this Agreement acknowledges and agrees to bear and/or be fully responsible for their own attorneys' fees and costs, and agrees not to seek any reimbursement for attorneys' fees and/or costs incurred in or relating to negotiating this Agreement and effecting the Transfer short of litigation to enforce or interpret the provisions hereof. Purchaser requires Title Insurance and proper recording of the Assignment Instrument and will pay all fees related, thereof.

    14.2 **Severability.** Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way affect the enforceability of the other provisions of this Agreement, which shall remain in full force and effect.

    14.3 **Governing Law; Venue.** The parties agree that California law shall govern the validity and interpretation of this Agreement. Any proceeding held or initiated by a party to interpret or enforce the provisions hereof shall be held in Orange County, California.

    14.4 **Attorneys' Fees.** Should any litigation be commenced to enforce or interpret this Agreement, the party prevailing in such litigation shall be entitled, in addition to such relief as may be granted, to reasonable attorneys' fees as well as the other costs and expenses incurred in such litigation.

    14.5 **Full and Knowing Waiver.** The parties execute this Agreement with a complete understanding of its legal effect and they understand that executing this Agreement expressly waives and releases certain rights and remedies as set forth herein, all of which are waived knowingly and voluntarily.

    14.6 **Capacity of the Parties.** Each party warrants that he/she has the full power, capacity, and authority to enter into this Agreement, and that no claim, demand, action, cause of action or property interest that is addressed in this Agreement has been assigned to an entity who is not a party to this Agreement.

    14.7 **Binding on the Parties.** Each party agrees that if the facts upon which this Agreement are based are found to be different from the facts now believed to be true, this Agreement will still remain binding and effective. The Parties expressly accept, and assume the risk of, the possibility that differences exist, and agree that this Agreement shall remain binding and effective.

Sierra Liquidity Fund, LLC; 2699 White Rd., Suite 255, Irvine, CA 92614; 949-660-1144 ext. 14

14.8 <u>Assignment, Successors and Assigns</u>. Purchaser shall have the absolute right to assign its rights or obligations under this Agreement without the express written consent of Seller, which shall not be unreasonably withheld. Subject to the foregoing, this Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Exhibits hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns.

14.9 <u>Construction of Agreement</u>. Each party acknowledges that he/she has reviewed this Agreement prior to executing this Agreement such that any rules of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

14.10 <u>No Amendment Without a Writing</u>. The parties agree that this Agreement shall not be amended, unless that amendment is made in writing and signed by each of the parties.

14.11 <u>Section Headings</u>. Section headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

14.12 <u>Benefit of Legal Counsel</u>. Each of the parties hereby affirms and acknowledges that he or she has read this Agreement and has had the opportunity to review or discuss it with counsel, who has represented him or her in negotiating its terms, and that he or she fully understands and appreciates the meaning of each of its terms.

14.13 <u>Entire Agreement</u>. This Agreement constitutes the complete understanding among the parties and supersedes any and all prior agreements, promises or inducements concerning its subject matter. No promises or agreements made subsequent to the execution of this Agreement by these parties concerning its subject matter shall be binding, unless reduced to writing and signed by the party(ies) to be affected or bound thereby.

14.14 <u>Counterparts</u>. This Agreement may be executed in counterparts, including facsimile counterparts, and all such executed counterparts, including counterparts with facsimile signatures, together shall constitute one original Agreement which shall be binding on all of the parties to this Agreement notwithstanding that all of the parties are not signatory to the original or the same counterparts.

14.15 <u>Facsimile Signatures</u>. Delivery of an executed counterpart of this Agreement (or any amendments) by facsimile by any party shall represent a valid and binding execution and delivery of said instrument by such party; provided, however, that any party delivering a facsimile executed copy of an instrument shall provide a follow-up original signature copy of the instrument in question upon request by the other party or by the Title Company.

14.16 <u>Exhibits</u>. All exhibits and schedules referenced in this Agreement shall be deemed incorporated into and made a part of this Agreement as though fully set forth in the body hereof.

14.17 <u>No Brokers</u>. Each Party represents and warrants to each other that said Party has not engaged a broker, finder or other person or entity in connection with the Loan Sale contemplated hereby. In the event anyone makes a claim for a broker's or finder's fee or commission in connection herewith, then Seller shall indemnify and defend Purchaser from the same if it shall be based upon any statement or agreement alleged to have been made by Seller, and Purchaser shall indemnify and defend Seller from the same if it shall be based upon any statement or agreement alleged to have been made by Purchaser. **Seller further acknowledges and agrees that certain individuals affiliated with Purchaser are or may be licensed brokers or realtors, but that all of said individuals are acting as principals for their own account or the account of**

Purchaser with whom they are affiliated and they are not in any way representing the interests of Seller and said individuals owe no duty of care to Seller.

14.18 <u>Time of the Essence</u>. Time is of the Essence respecting each and every provision, covenant and obligation hereunder.

14.19 <u>Cooperation; Further Documents</u>. The Parties hereto agree to cooperate with each other to a reasonable extent in order to complete the Transaction on the terms and in the manner contemplated hereby and to execute such other documents as may be reasonably requested by a Party or a third Party to give effect to or evidence the transaction(s) contemplated hereby.

14.20 <u>Indemnification of Closing Agent</u>. If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, the parties agree to hold Title Company (in its capacity as Escrow Holder respecting the effectuation of the Transfer) free and harmless from any loss or expense that Title Company may suffer by reason thereof except for losses or expenses as may arise from Title Company's negligence or willful misconduct. If conflicting demands are made or notices served upon Title Company (in its capacity as Escrow Holder respecting the effectuation of the Transfer) with respect to this Agreement, the parties agree that Title Company (in said capacity as escrow closing agent) shall be entitled to file a suit in interpleader and obtain an order from the court requiring the parties to interplead and litigate their several claims and rights among themselves.

14.21 <u>Entire Agreement; Prior Understandings</u>. This Agreement supersedes any and all prior discussions and agreements between Seller and Purchaser with respect to the purchase of the Note(s) and other matters contained herein, and this Agreement contains the sole and entire understanding and agreement between the parties hereto with respect to the transactions contemplated herein.

14.22 <u>Rights Cumulative, Waivers</u>. The rights of each of the parties under this Agreement are cumulative and may be exercised as often as any party considers appropriate. The rights of each of the parties hereunder shall not be capable of being waived or varied otherwise than by an express waiver of variation in writing. Any failure to exercise or any delay in exercising any of such rights shall not operate as a waiver or variation of that or any other such right. Any defective or partial exercise of any or any other such rights shall not preclude any other or further exercise of that or any other such right. No act or course of conduct or negotiation on the part of any party shall in any way preclude such party from exercising any such right or constitute a suspension or any variation of any such right.

**SEE ATTACHED SIGNATURE PAGE**

## SIGNATURE PAGE TO
## AGREEMENT TO SELL AND ASSIGN BENEFICIAL INTEREST IN LOAN

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

Contact Information:

SIERRA LIQUIDITY FUND, LLC
Attn: Mr. Scott August
2699 White Road, Suite 255
Irvine, CA 92614
Tel: 949-660-1144, ext. 17
Fax 949-660-0632
E-mail: saugust@sierrafunds.com

SIERRA LIQUIDITY FUND, LLC, a California limited liability company

By: _____
James S. Riley, Managing Member

"Purchaser"

By: _____

"Seller"

RECORDING REQUESTED BY:

First American Title Company

WHEN RECORDED MAIL TO AND
MAIL TAX STATEMENTS TO:

Sierra Liquidity Fund, LLC
2699 White Road, Suite 255
Irvine, CA 92614
Attn: James Riley
SLO 7659411-LB

JULIE RODEWALD
San Luis Obispo County – Clerk/Recorder
Recorded at the request of
First American Title Company

DOC#: ███████

| Titles: 1 | Pages: 4 |
|---|---|
| Fees | 15.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $15.00 |

DG
11/29/2006
8:00 AM

(Above Space for Recorder's Use Only)

## ASSIGNMENT OF BENEFICIAL INTEREST IN LOAN

THIS ASSIGNMENT OF BENEFICIAL INTEREST IN LOAN ("Assignment") is made as of this 18th day of November, 2006, by ███████ ("Seller"), in favor of SIERRA LIQUIDITY FUND, LLC, a California limited liability company ("Buyer") with reference to the following:

A. Seller is the current holder of a fractional interest in a Promissory Note dated February 27th, 2006 (the "Note"), given by ███████ ("Borrower") in favor of Seller and other lenders therein named (collectively, the "Lenders") to evidence a loan (the "Loan") by the Lenders to Borrower in the original principal amount of ███████ dated July 26th, 2004 and amended by the Assignment of Beneficial Interest in Deed of Trust to ███████ dated February 27th, 2006.

B. The Note is secured by, among other things, a deed of trust, dated July 26th, 2004 (the "Deed of Trust"), which secures repayment of the Note executed by Borrower, as trustor, and was recorded in the Official Records of San Luis Obispo County, California on July 30th, 2006, as Instrument No. ███████.

C. The Deed of Trust encumbers Borrower's fee interest in real property commonly known Margarita Annex (the "Property"), said Property being more particularly described in **Exhibit 1** attached hereto and incorporated herein by this reference.

NOW, THEREFORE, for value received, Seller hereby assigns and transfers to Buyer, all of Seller's right, title and interest in and to the Loan, including Seller's interest in and to the Note and Deed of Trust Note and the money due or to become due thereunder, including, interest, and all rights accrued or to accrue under or with respect to the Note and/or Deed of Trust.

STATE OF Nevada
COUNTY OF Washoe ) ss

On this 18th day of November 2006, before me the undersigned, a Notary Public in and for said State, personally appeared ███████ and ███████, known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) (is)(are) subscribed to the within instrument and acknowledged to me that (he)(she)(they) executed the same in (his)(her)(their) authorized capacity(ies), and that by (his)(her)(their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary signature]

NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 02-77700-2
MY APPT. EXPIRES AUG. 16, 2010

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: President

"Seller"

**Exhibit 1**

LEGAL DESCRIPTION OF REAL PROPERTY SECURITY

### EXHIBIT "B"

### LEGAL DESCRIPTION OF PROPERTY

Real property in the unincorporated area of the County of San Luis Obispo, State of California, described as follows:

### PARCEL 1

Lot 31 of the Map of the Subdivisions of a Tract of land adjoining the Town of San Luis Obispo, the Property of W. L. Beebee and C. H. Philips surveyed by R. R. Harris, November, 1874, partially in the City of San Luis Obispo, in the county of San Luis Obispo, State of California, according to map recorded in the office of the County Recorder of said County.

EXCEPTING therefrom that portion thereof conveyed to H. E. McBride in deed dated May 5, 1887 and recorded May 5, 1887 in Book X, page 58 of Deeds.

ALSO EXCEPTING therefrom that portion conveyed to the City of San Luis Obispo in deed recorded November 15, 1974 in Book 1806, page 315 of Official Records.

ALSO EXCEPTING therefrom Lots 1 through 40, Lot A, Stoneridge Drive, Bluerock Drive, Bluerock Court and Rockview Place as shown upon the map of Tract No. 1150, in the County of San Luis Obispo, State of California, according to map recorded in Book 13, page 48 of Maps, in the office of the County Recorder of said County.

ALSO EXCEPTING therefrom that portion of Tract No. 1150 as described in the Gift Deed to the City of San Luis Obispo recorded April 9, 1993 in Book 4068, page 185 of Official Records.

ALSO EXCEPTING Tract No. 2126, in the City of San Luis Obispo, in the County of San Luis Obispo, State of California, as recorded March 21, 1997 in Book 18, page 1 of Maps, in the office of the County Recorder of said County and Certificate of Correction recorded May 8, 1998 as Instrument No. 1998-027041 of Official Records.

### PARCEL 2

All that part of Government Lots 3 and 4 and the South half (½) of the Northwest quarter (¼) of Section 2 in Township 31 South, Range 12 East, Mount Diablo Base and Meridian, partially in the City of San Luis Obispo, in the County of San Luis Obispo, State of California, according to the official plat of the survey of said land approved by the Surveyor General on November 21, 1867, described as follows:

Beginning at the ¼ section corner between Sections 2 and 35 on the line between Townships 30 and 31 South, Range 12 East, Mount Diablo Base and Meridian and running thence West between Sections 2 and 35 aforesaid about 30 chains to post R No. 2;

27

THENCE South 40.25 chains to a post marked R No. 1 on the center East and West line of Section 2;
THENCE East about 30 chains to the center of said Section 2;
THENCE North about 40 chains to the place of beginning.

EXCEPTING therefrom that portion thereof conveyed to H. E. McBride in deed dated May 5, 1887 and recorded May 5, 1887 in Book X, page 58 of Deeds.

ALSO EXCEPTING therefrom that portion of Tract No. 1150 as described in the Gift Deed to the City of San Luis Obispo recorded April 9, 1993 in Book 4068, page 185 of Official Records.

ALSO EXCEPTING therefrom those portions offered for dedication to the City of San Luis Obispo, in the documents recorded in Book 2881, pages 726 and 730 of Official Records.

ALSO EXCEPTING Tract No. 2126, in the City of San Luis Obispo, in the County of San Luis Obispo, State of California, as recorded March 21, 1997 in Book 18, page 1 of Maps, in the office of the County Recorder of said County and Certificate of Correction recorded May 8, 1998 as Instrument No. 1998-027041 of Official records.

APN: 053-022-016