**MATTHEW Q. CALLISTER, ESQ.**
Nevada Bar # 000827
**Callister & Reynolds**
823 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (702) 385-3343
Facsimile: (702) 382-5774
mqc@callister-reynolds.com

**Attorneys for Project Disbursement Group, Inc.**

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEVADA

| In re: | **BK-**06-10725-lbr |
|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, | Chapter 11 |
| Debtor. | Date: |
| | Time: |

### APPLICATION FOR COMPENSATION FOR EXPENSES AND
### FOR SERVICES RENDERED

    Matthew Q. Callister of the Law Firm of Callister & Reynolds, hereby files this Application for Compensation for Expenses and Services rendered (the "Application"). The Application requests approval of an award of $17,045.00 in compensation for services rendered and $8.25 for expenses incurred during Callister & Reynolds' representation of PDG during the period of May 3, 2006 to June 29, 2006.

    This Application is made pursuant to sections 504(b)(3)(D) and 504(b)(4) of Title 11 of the United States Code ("Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure ("Rule") and Rule 2016 of the Local Rules of Bankruptcy Practice and is based on the Points and Authorities set forth herein, any exhibits attached hereto, and including any pleadings on file, as well as any argument presented at the time of hearing.

**Points and Authorities**

**I.      Factual Background**

1. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

2. Prior to the Petition Date, Project Disbursement Group, Inc. ("PDG") PDG and Debtor entered into several written agreements entitled "Control Account Escrow Agreement and Security Agreement" (the "Escrow Agreements").

3. The parties of the Escrow Agreements consisted of: 1) PDG, 2) the Debtor as authorized Agent and Servicer for certain loan investors, and 3) certain borrowers (the "Borrowers").

4. Prior to the Petition Date, PDG and Debtor entered into written agreements entitled "Agreement for Construction Control Services" (the "Control Services Agreements").

5. The parties of the Control Services Agreements consisted of 1) PDG, and 2) Debtor, and related to loans to the Borrowers.

6. PDG acted and acts as disbursement agent for the Debtor and in some instances for the Borrower in connection with loans that were originated and are serviced by the Debtor.

7. Pursuant to the terms of the Escrow Agreements and the Control Services Agreements, the Debtor, as Servicer forwarded to PDG prior to the Petition Date, certain loan funds: (1) to be held by PDG as interest reserves to be disbursed periodically to the Debtor (in its capacity as Agent and Servicer) as interest payments for the loans, and (2) in some cases, to be held by PDG as construction funds to be disbursed as directed by the Borrowers, with the consent of the Debtor as Servicer, as construction advances in connection with the Loans.

8. PDG, after the Petition Date, continued to disburse loan funds as directed by the Borrowers, with the consent of the Debtor as Servicer, as construction advances in connection with the Loans.

9. After the Petition Date, PDG was informed by investors that interest payments made by PDG to Debtor on or about March 2006 were not subsequently disbursed by Debtor to said investors, and thus, PDG temporarily ceased from disbursing funds as interest payments to

Debtor as Servicer from the interest reserve portions of the Loans.

10. Debtor asserted that it is authorized under the terms of the Loan Servicing Agreements entered into between the Debtor as Servicer and various loan investors for the Loans (the "Investor Servicing Agreements") to provide periodic disbursement authorizations to PDG for the payment of interest on the Loans from the interest reserves being held by PDG and, in some cases, for construction funding on the Loans, consistent with the Escrow Agreements and Control Services Agreements, and the disbursement terms of the executed loan documents for the Loans.

11. Debtor further asserted that its bankruptcy filing does not relieve PDG from any of its obligations under the Escrow Agreements and Control Services Agreements, including its obligation to disburse interest payments from the interest reserves and claims that such disbursement authorizations to PDG are in the ordinary course of Debtor's business.

12. On or about May 12, 2006, Debtor and PDG executed the Stipulation and Interim Order authorizing PDG to continue making payments under the Escrow Agreements and Control Services Agreements.

13. On or about May 22, 2006, Callister & Reynolds filed an Emergency Motion Regarding PDG's Disbursement of Interest Payments to Debtor on order shortening time (the "Motion").

14. The Motion was heard on June 15, 2006, and an order was entered on June 29, 2006, approving PDG's Motion and authorizing PDG to continue to disburse the interest payments and loan funds.

## II. Professional Services Rendered

As the Court is well aware, this is a complex case and has consisted of endless motions and hearings. Callister & Reynolds worked efficiently and promptly in responding to Debtor's counsel regarding the funds held by PDG, and in resolving the issue as quickly as possible, making a substantial contribution to the case in releasing these funds.

In rendering its professional services, Callister & Reynolds incurred the following fees, the value and extent shown as follows: *See Exhibit "1" attached hereto*.

The following individuals rendered professional services:[1]

| Name | Position | Hours Billed | Rate | Total |
|---|---|---|---|---|
| Matthew Q. Callister | Partner | | $400.00 | $ 10,700.00 |
| Jonathan C. Callister | Associate | | $300.00 | $ 756.25 |
| Philip C. Alexander | Associate | | $275.00 | $ 5,588.75 |

**III.    Expenses.**

The following expenses were incurred:

Photocopies:    $7.75

Fax Charges:    $0.50

**IV.    Request for Compensation and Reimbursement.**

As shown above and in the attached exhibit, Callister & Reynolds incurred $17,045.00 in fees and $8.25 in expenses. Section 503(b)(3) of the Code states that the Court shall allow administrative expenses, including:

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–
>
> (A) . . .
>
> (B) . . .
>
> (C) . . .
>
> (D) a creditor, an indenture trustee, an equity security holder or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; . . . .

Although PDG was not an actual creditor of Debtor, PDG was an interested party who held investor/creditor funds. Furthermore, PDG, through Callister & Reynolds, substantially contributed to this case by efficiently attempting to resolve any dispute regarding the funds and in ultimately having them disbursed to Debtor.

Section 503(b)(4) allows "reasonable compensation for professional services rendered by an attorney or an accountant whose expense is allowable under paragraph (3) . . ., based on the

---

[1] For detailed billings, see Exhibit "1" attached hereto.

time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant."

Callister & Reynolds worked efficiently and promptly in responding to Debtor's counsel regarding the funds held by PDG, and in resolving the issue as quickly as possible, making a substantial contribution to the case in releasing these funds.

Accordingly, Callister & Reynolds respectfully requests that it be reimbursed for its expenses pursuant to 503(b)(3)(D) of the Code, and also that it be reimbursed for its fees pursuant to 503(b)(4) of the Code.

DATED this 18th day of December, 2006.

/s/ Matthew Callister
MATTHEW Q. CALLISTER, ESQ.
Nevada Bar # 000827
Callister & Reynolds
823 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Attorneys for PDG