Daniel D. White, Esq.
California Bar No. 119030
23 Corporate Plaza Drive, Suite 160
Newport Beach, CA 92660
Telephone:      (949) 729-9119
Facsimile:       (949) 729-9174
E-mail:          dan@ddwlaw.com

**E-filed on December 27, 2006**

Stephens, Gourley & Bywater
R. Vaughn Gourley, Esq.
David A. Stephens, Esq.
3636 North Rancho Drive
Las Vegas, Nevada 89130
Telephone:      702-656-2355
Facsimile:      702-656-2776
E-mail:          vgourley@1vcm.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

USA COMMERCIAL MORTGAGE COMPANY,

     Debtor.

_____/

In re:

USA CAPITAL REALTY ADVISORS, LLC,

     Debtor.

_____/

In re:

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,

     Debtor.

_____/

In re:

USA SECURITIES, LLC,

     Debtor.

_____/

Affects:
- ☐ All Debtors
- ☒ USA Commercial Mortgage Co.
- ☐ USA Securities, LLC
- ☐ USA Capital Realty Advisors, LLC
- ☐ USA Capital Diversified Trust Deed
- ☐ USA First Trust Deed Fund, LLC

CASE NOS: BK-5-06-10726 LBR
CASE NOS: BK-5-06-10727 LBR
CASE NOS. BK-5-06-10728 LBR
CASE NOS. BK-5-06-10729 LBR
CHAPTER 11
JOINTLY ADMINISTERED UNDER
CASE NO. BK-5-06-10725-LBR

**OPPOSITION TO USA COMMERCIAL MORTGAGE COMPANY'S OBJECTION TO PROOF OF CLAIM NO. 155 FILED BY GATEWAY STONE ASSOCIATES, LLC**

1

_____/

USA COMMERCIAL MORTGAGE COMPANY

                                        Plaintiff,

vs.

GATEWAY STONE ASSOCIATES, LLC, a Delaware
limited liability company,

                                        Defendant.


     Defendant, Gateway Stone Associates, LLC ("Gateway"), by and through its counsel,

Law Office of Daniel D. White and Stephens, Gourley & Bywater, hereby opposes to USA

Commercial Mortgage Company's ("USACM") Objection to Claim No. 155 filed by Gateway,

and states as follows:

1.     USACM alleges that it has no liability to Gateway's Claim because Gateway

allegedly defaulted on the Loan Agreement before any breach by USACM. However,

this argument is without merit.

2.     Pursuant to the Loan Agreement, USACM was obligated to disburse monthly

payments to Gateway according to a specified Disbursement Schedule that was

attached as Exhibit "B" to the Loan Agreement. (See, Disbursement Schedule

attached hereto as Exhibit "1.")

3.     As shown by the Disbursement Schedule, the monthly disbursements made from

USACM to Gateway were intended to cover both interest and draws. Therefore, the

disbursements themselves were intended to cover interest payments to USACM.

4.     USACM only made a couple of the disbursements set forth in the Disbursement

Schedule before completely ceasing to disburse funds to Gateway. When USACM

ceased making the scheduled disbursements to Gateway, USACM itself stopped the funding of interest payments.

5.     Therefore, USACM's own breach of failure to make the scheduled disbursements pursuant to the Disbursement Schedule caused the interruption of interest payments. In other words, USACM itself caused the "default" alleged in USACM's Objection to Claim No. 155 filed by Gateway by its own default for failure to make the scheduled disbursements.

6.     As such, USACM's argument is without merit and should not be considered. For the reasons set forth herein, Gateway respectfully requests that the Court deny USACM's request for an order sustaining this Objection and allow Claim No. 155 filed by Gateway. Gateways also requests that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted this 27th day of December, 2006.


                                        */s/  Daniel D. White, Esq.*
                                        Daniel D. White, Esq.

                                        Counsel for Gateway Stone
                                        Associates, LLC

\\elvis\-Client-\Stone Pacific\USA Capital BK\USA Comm Litigation\Opp to Objection to Proof of Claim.doc

3

Exhibit "1"

## EXHIBIT "B"

### DISBURSEMENT SCHEDULE

All advances after the closing are subject to Section 3.2 of the Loan Agreement. Month "X" means "X" months after closing.

| MONTH | TOTAL | INTEREST | DRAWS* |
|---|---|---|---|
| Close | $12,600,000 | $312,350 | $12,287,650 |
| Month 1 | | | |
| Month 2 | | | |
| Month 3 | $ 228,712 | $ 131,000 | $ 97,712 |
| Month 4 | $ 230,712 | $ 133,000 | $ 97,712 |
| Month 5 | $ 232,712 | $ 135,000 | $ 97,712 |
| Month 6 | $ 1,235,712 | $ 138,000 | $1,097,000** |
| Month 7 | $ 247,712 | $ 150,000 | $ 97,712 |
| Month 8 | $ 252,712 | $ 155,000 | $ 97,712 |
| Month 9 | $ 254,712 | $ 157,000 | $ 97,712 |
| Month 10 | $ 256,712 | $ 159,000 | $ 97,712 |
| Month 11 | $ 259,712 | $ 162,000 | $ 97,712 |
| Month 12 | $ 430,592 | $ 352,650 | $ 77,942 |
| Total | $16,230,000 | $1,985,000 | $14,245,000 |

*Draws include $85,000 for Borrower's Overhead and Management related to the Entitlements for the Property.

**Draw to Borrower of $1,000,000 to Borrower upon receipt of written verification of Tentative Map approval and expiration of CEQA challenge period (and/or) upon verification and Lenders' satisfaction that all rights to develop the Property (in the form represented to Lender) are proposed, vested and irrevocable.

All draws subject to the additional requirements and continued obligations under the Loan Agreement.