Richard F. Holley, Esq. (NV Bar No. 3077)
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
SANTORO, DRIGGS, WALCH,
KEARNEY, JOHNSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:   702/791-0308
Facsimile:   702/791-1912
Email:       vnelson@nevadafirm.com

*Attorneys for Del and Ernestine Bunch*

E-Filed: December 28, 2006

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR<br><br>Chapter 11<br><br>**Jointly Administered under**<br>**Case No. BK-S-06-10725-LBR**<br><br>**SECOND SUPPLEMENT TO MOTION FOR ORDER TEMPORARILY ALLOWING THE CLAIM OF DEL AND ERNESTINE BUNCH FOR VOTING PURPOSES**<br><br>Date of Hearing:   January 3, 2007<br>Time of Hearing:   1:30 p.m.<br><br>Judge:   Hon. Linda B. Riegle |

Del and Ernestine Bunch ("Bunch") through their counsel, the law firm of Santoro, Driggs, Walch, Kearney, Johnson & Thompson, pursuant to Fed. R. Bankr. P. 3018(a) filed a Motion for Order Temporarily Allowing the Claim of Del and Ernestine Bunch for Voting Purposes on December 15, 2006 (Dkt. No. 2124) ("Motion"). The initial hearing on the Motion was held on December 20, 2006, at 1:30 p.m. At the hearing, the Court directed the parties to submit supplemental points and authorities consisting of references to Mr. Bunch's 2004

06531-01/134314

Examination and related evidence supporting the Bunches' contention that the monthly installment payments made in February and March 2006, were made pursuant to the ordinary course of business exception under Section 547(c)(2). In support of this position, the Bunches state as follows:

**POINTS AND AUTHORITIES**

Before referring to specific excerpts from Mr. Bunch's 2004 examination, it is important to review significant changes made to the text of Section 547(c)(2) of the Bankruptcy Code under BAP CPA. In the pre-BAP CPA version of Section 547(c)(2), the Bankruptcy Code required that a transfer in payment of a debt incurred by the debtor was made in the ordinary course of business or financial affairs of the debtor and the transferee[1]; **and** that the transfer was made according to ordinary business terms.[2] Under BAP CPA, Section 547(c)(2) now provides that the transferee demonstrate that **either** a transfer in payment of a debt was made in the ordinary course of business or financial affairs of the debtor and the transferee; **or** that the payment was made according to ordinary business terms.

The 2005 amendments make it easier to invoke the ordinary course of business defense successfully in a preference action. To qualify for the defense, the defendant no longer needs to prove all three prongs of the defense. See Collier on Bankruptcy, ¶547.04[2] (15th ed. rev. 2006). The limited legislative history indicates that the purpose of this exception is to leave undisturbed normal financial relations because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. Id. (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1997), reprinted in 1978 U.S.C.C.A.N. 5787, 6329).

---

[1] The inquiry of the ordinary course of business between the debtor and creditor is referred to as the subjective test, and the inquiry into whether the transfers were in the ordinary course for business of members of the relevant industry is referred to as the objective test. See Collier on Bankruptcy, ¶547.04[2][a][i] (15th ed. rev. 2006).

[2] Courts under the old Code concentrated solely on the relationship between the debtor and creditor, and looked to transactions involving third parties, i.e., industry standards, only in the absence of history between the parties. See Collier on Bankruptcy, ¶547.04[2][a][1] (15th ed. rev. 2006). The 2005 amendments resolved this issue fully by making the ``ordinary course of business'' defense and the ``ordinary business terms'' defense alternative defenses rather than conjunctive defenses. Id. (citing 11 U.S.C. § 547(c)(2), as amended by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 409(1) (2005)).

- 2 -

[06531-01/134314]

The ordinary course of business exception is an affirmative defense, and so the defendant carries the burden of proof on each of the elements by a preponderance of the evidence. See Collier on Bankruptcy, ¶547.04[2][a] (15th ed. rev. 2006). While the phrase "ordinary course" is not defined under the Code, the courts have developed unique definitions for each of the requirements.[3] Id. Collier's cites to the Ninth Circuit B.A.P. for a better reasoned decision holding that a debt will not be considered incurred in the ordinary course of business if creation of the debt is atypical, fraudulent or not consistent with an arms-length commercial transaction. Id. at ¶547.04[2][a][ii][A] (citing In re Pioneer Technology, Inc., 107 B.R. 698, 702 (B.A.P. 9th Cir. 1988)).

Even if the debtor's business transactions were irregular, they may be considered ``ordinary" for purposes of section 547(c)(2) if they were consistent with the course of dealing between the particular parties.[4] The controlling factor is whether the transactions between the debtor and the creditor both before and during the ninety-day period were consistent.[5] Id. Courts have relied upon a number of different ``factors" in determining whether a payment is ordinary for purposes of subparagraph (B). The four factors most commonly cited by courts in making this determination are:

> (1) length of time the parties were engaged in the transaction in issue;
>
> (2) whether the amount or form of tender differed from past practices;

---

[3] Courts generally are interested in whether the debt was incurred in a typical, arms-length commercial transaction that occurred in the marketplace or, on the other hand, whether it was incurred as an insider arrangement with a closely held entity. Id. (citing Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.), 182 B.R. 728 (Bankr. W.D. Va. 1995)). If the debt was incurred in the routine operation of the debtor and the creditor, then it can be said to have been incurred in the ordinary course of each party's business. Id. (citing Youthland, Inc. v. Sunshine Girls (In re Youthland Inc.), 160 B.R. 311 (S.D. Ohio 1993)). Provided that these criteria are met, either long-term or first-time debt can be debt incurred in the ordinary course of business. Id.

[4] See Collier on Bankruptcy, ¶547.04[2][a][ii][B] (15th ed. rev. 2006) (citing In re Yurika Foods Corp., 888 F.2d 42, 44 (6th Cir. 1989); In re Fulghum Constr. Corp., 872 F.2d 739, 743 (6th Cir. 1989)).

[5] The defendant must establish a ``baseline of dealing" so that the court may compare the transfers made during the preference period with the parties' prior course of dealings. See Collier on Bankruptcy, ¶547.04[2][a][ii][B] (citing Cassirer v. Herskowitz (In re Schick), 234 B.R. 337 (Bankr. S.D.N.Y. 1999); Ellenberg v. Plaid Enters., Inc. (In re T.B. Home Sewing Enters., Inc.), 173 B.R. 790 (Bankr. N.D. Ga. 1993) ; In re Hancock-Nelson Mercantile Co., Inc. 122 B.R. 1006, 1013 (Bankr. D. Minn. 1991)).

- 3 -

[06531-01/134314]

  (3) whether the debtor or creditor engaged in any unusual collection or payment activities; and

  (4) the circumstances under which the payment was made.

See Collier on Bankruptcy, ¶547.04[2][a][ii][B] (citing Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.), 220 B.R. 1005 (B.A.P. 10th Cir. 1998) ; In re Jerry-Sue Fashions, Inc., 91 B.R. 1006 (Bankr. S.D. Fla. 1988)).

  According to Collier, if the transfer under scrutiny was by wire transfer or cashier's check, the defendant must show that this type of payment falls within the circle of ordinary course transactions between the parties. Id. A sufficient pattern of similar types of payments before the preference period must be shown in order to prevail. Id. (citing Central Hardware Co. v. Sherwin-Williams Co. (In re Spirit Holding Co., Inc.), 153 F.3d 902 (8th Cir. 1998); Tomlins v. BRW Paper Co. (In re Tulsa Litho Co.), 229 B.R. 806 (B.A.P. 10th Cir. 1999)). The fact that a payment was made by wire transfer or by cashier's check is not a per se indication that the payment was out of the ordinary course of business. Id.

  In this case, the alleged transfers were made in the ordinary course of business or financial affairs of the debtor and the Bunches. First, USA Commercial Mortgage ("USACM") entered into a Promissory Note pursuant to which the Bunches agreed to loan a maximum amount of ten million dollars ($10,000,000) to USACM. See Bunch Trial Exhibit I; see also Transcript of 2004 Examination of Del Bunch ("Bunch Transcript"), Exhibit I. Pursuant to the terms of the Promissory Note, the Bunches made a total of twenty-seven (27) loans over the course of approximately four years, starting in June 2000, with the last loan installment being made in February 2004. See Bunch Transcript, p. 14, ll. 2-6, Exhibit E.

  Second, Mr. Bunch testified during his 2004 examination that USACM made regular monthly payments for a period of approximately six years from July 2000 to March 2006, on or about the tenth day of each month. See Bunch Transcript, p. 33, ll. 3-4. Aside from the first few payments that were made by check, all other payments were made by electronic transfer from USACM to the Bunches' checking account. See Bunch Transcript, p. 61, ll. 24-25, p. 62, ll. 1-4, p. 63, ll. 17-19. This payment history is established by six years of banking records maintained

- 4 -

[06531-01/134314]

by the Bunches and attached Exhibits F, and J through R, to the 2004 examination. See Bunch Trial Exhibits F, L-T. As set forth in the Second Supplemental Declaration of Mr. Bunch, the first eleven interest only payments under the Note for the months of July 2000 through May 2001 were made by check. Thereafter, all remaining payments were made by ACH transfer directly into the Bunch's bank account. Copies of the checks are attached to the Second Supplemental Declaration of Mr. Bunch as Exhibit S.

Regarding statements that the Note matured and the payments cannot be considered ordinary, Mr. Bunch testified the Note would have matured in February 2005, with the entire outstanding indebtedness then being due and owing. See Bunch Transcript, p. 18, ll. 22-25, p. 19, p. 20, ll.1-19. However, Mr. Bunch testified that he agreed to extend the due date under the Note for an additional year upon assessment of a late charge equal to five percent of the outstanding balance of the Note and interest to accrue during the extension period at the default rate of twenty-four percent (24%) per annum. Id. This arrangement was acceptable to USACM and USACM continued to make regular monthly interest only payments on or about the tenth (10th) of each month between February 2005 and February 2006 by ACH transfers directly into the Bunch's bank account. See Bunch 2004 Examination Exhibits S and R (Trial Exhibits S and T).

Mr. Bunch further testified that in February 2006, he agreed to further extend the due date of the Note for an additional year so long as another late charge was assessed and interest continued to accrue at the default rate. See Bunch Transcript, p. 18, ll. 22-25, p. 19, p. 20, ll.1-19. Based upon USACM's agreement to this effect, the Note was again extended. USACM made regular monthly payments in the months of February and March 2006 and thereafter defaulted under the terms of the Note. See Bunch 2004 Examination Exhibits K and L (Trial Exhibits (M and N).

## CONCLUSION

Mr. Bunch's uncontroverted testimony demonstrates that the two payments made within ninety (90) days of the bankruptcy filing were in fact made in the ordinary course of business pursuant to Section 547(c)(2) of the Bankruptcy Code and therefore may not be avoided as

[06531-01/134314]

preferential transfers. <u>See</u> Bunch Transcript, p. 23, p. 24, ll. 1-4, pp. 25-26. Since the alleged receipt of purported avoidable transfers constitutes the sole basis for objecting to the Bunches' claim and valuing the same at zero for voting purposes, the Bunches' Motion for Temporary Allowance should be granted by this Court.

DATED this 28th day of December, 2006.

SANTORO, DRIGGS, WALCH,
KEARNEY, JOHNSON & THOMPSON

/s/ Richard F. Holley

Richard F. Holley, Esq. (NV Bar No. 3077)
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912
*Attorneys for Del and Ernestine Bunch*

[06531-01/134314]