EXHIBIT ____1____

# PROMISSORY NOTE
# SECURED BY MORTGAGE

$4,250,000.00
Las Vegas, Nevada
August **5 l** *5* 2005

This Promissory Note ("Note") is executed pursuant to the Construction Loan Agreement (the "Loan Agreement"), dated as of August **31ᵗ**, 2005, by and among **Binford Medical Developers, LLC**, an Indiana limited liability company ("Borrower"), and those persons listed on **Exhibit "A"** attached hereto as may be amended from time to time ("Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Four Million Two Hundred Fifty Thousand Dollars ($4,250,000) (the "Note Amount"), as provided in the Loan Agreement, together with interest as provided herein. Pursuant to the Construction Loan Agreement of even date herewith, the loan amount shall be disbursed in installments as follows:

1.    Interest Rate. Interest shall accrue on the full Note Amount, from the date the Mortgage is recorded until the date the Note Amount is paid in full, at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. Accrued but unpaid interest shall be compounded monthly.

2.    Payments. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears. For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day. All payments shall be made, without relief from valuation and appraisement laws in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.    Maturity Date. The term of this Note shall be for a period of twelve (12) months from the date the entire Loan Amount and documents needed to close the Loan are deposited with the Title Company. If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on the Maturity Date.

4.    Application of Payments. All payments on this Note shall be applied first to any prepayment fees, if any are due, second to accrued late charges, if any, third to default interest, if any, fourth to the payment of accrued ordinary interest then payable, and last to principle. This Note is entitled to all of the rights, benefits and privileges provided for in the Loan Agreement as it may from time to time be supplemented, modified or amended. The Loan Agreement, among other

1

things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events.

5.      Prepayment.   Maker agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Maker may prepay this Note in part or in full without penalty; provided, however, that if this Note is prepaid, whether voluntarily or involuntarily due to an acceleration hereof, within the first sixty (60) days of the term hereof then Borrower shall pay a prepayment charge equal to the sum of all interest which would accrue on the entire Note Amount during the first sixty (60) days of the term hereof, less the sum of all interest previously paid to Lender.

6.      Collateral.   This Note is secured by (1) the Mortgage (the "Mortgage") executed by Borrower in favor of Lender covering certain real property located in the County of Marion, State of Indiana (the "Property"), and (2) all other existing and future Security Documents.

7.      Defaults; Acceleration.   The occurrence of any Event of Default as defined in the Loan Agreement shall be a default hereunder. Upon the occurrence of an Event of Default, Lender may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Borrower hereunder and under the Loan Documents, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under the Note, the Mortgage or any other Loan Document shall become and be immediately due and payable, anything in this Note or in the Mortgage to the contrary notwithstanding.

8.      Late Charge.   Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date or, if accelerated as permitted by this Note or any other Loan Document, by the payment date given in the acceleration notice, the holder hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the holder hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7, and without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including the timely payment of any accelerated amount.. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right,

2

express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.      Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.     Waivers. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note (other than notices expressly required by the terms of the Loan Agreement). Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.     Costs of Collection. Borrower agrees to pay all reasonable costs of collection when incurred and all costs incurred by the holder hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to reasonable attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.     Sale or Other Encumbrances.

(a)     In order to induce Lender to make the loan secured hereby, Borrower agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold (except sales for which a partial release of the Mortgage shall be made pursuant to the Loan Agreement), assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Borrower whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare this Note and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not

3

of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Borrower shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Lender's security for the indebtedness secured hereby. Moreover, Lender has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Lender's security if junior financing, except as shall be permitted by Lender, or if other liens or encumbrances should attach to the Mortgaged Property.

(b)     Borrower may request Lender to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c)     In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Borrower, the Lender may deal with such successor or successors in interest with reference to this Note or the Mortgage in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of Borrower under this Note, the Mortgage or the other Loan Documents. No sale of Borrower's interest in the Mortgaged Property, no forbearance on the part of Lender, no extension of the time for the payment of the Mortgage indebtedness or any change in the terms thereof consented to by Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under this Note, the Mortgage and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to the Mortgage. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 12(a).

13.     Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

4

14.     Notices.   Any and all notices, demands and/or communications described herein, or which may be necessary or appropriate hereunder, shall be given as provided in the Mortgage.

15.     Assignment By Lender.   Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder; provided, however, that any such assignment shall in no way affect Lender's obligation to fund the Loan pursuant to the Loan Agreement and terms hereof.

16.     Multiple Parties.   A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

17.     Construction.   This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party.  The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

18.     Partial Invalidity.   If any court of competent jurisdiction declares any section or provision of this Note invalid or unenforceable, said determination shall not affect the validity or enforceability of the remaining terms hereof.  No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

19.     Governing Law: Jurisdiction: Waiver of Jury Trial.

(a)     This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b)     **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM).  BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 14 HEREOF, AND CONSENTS AND AGREES**

THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

(Signature page follows)

6

**BORROWER:**    Binford Medical Developers, LLC

By: _____

Kenneth E. Schmidt, Manager

G:\HOME\BKD\2800  USA\004  Binford Medical\Note2.wpd

7

**EXHIBIT** _____2_____

MORTGAGE, ASSIGNMENT OF LEASES, RENTS AND

CONTRACTS, SECURITY AGREEMENT, FINANCING STATEMENT

AND

FIXTURE FILING

BETWEEN

BINFORD MEDICAL DEVELOPERS, LLC, as MORTGAGOR,

AND

THE INDIVIDUAL AND ENTITIES LISTED ON EXHIBIT "A" ATTACHED HERETO
AS MORTGAGEE

DATED: AUGUST *31*, 2005

LOAN AMOUNT: $4,250,000.00

PROPERTY ADDRESS:
65th Street and Binford Boulevard
Indianapolis, Indiana 46220

This Mortgage, Assignment of Leases, Rents and Contracts, Security Agreement, Financing Statement and Fixture Filing shall be deemed to constitute a continuously perfected fixture filing to be filed of record in the office of the Recorder of Marion County, Indiana, pursuant to Indiana Code § 26-1-9.1 *et seq.*, and as set forth herein.

G:\HOME\BKD\2800  USA\004  Binford Medical\BinfordMortgage02.wpd

30Aug05

| ARTICLE | SECTION | DESCRIPTION | PAGE NUMBER |
|---------|---------|-------------|-------------|
| I | | COVENANTS OF MORTGAGOR | |
| | 1.01 | Performance of Obligations Secured | 4 |
| | 1.02 | Insurance | 4 |
| | 1.03 | Condemnation | 5 |
| | 1.04 | Damage to Property | 6 |
| | 1.05 | Escrow Fund for Condemnation and Insurance Proceeds | 7 |
| | 1.06 | Taxes, Liens and other Items | 8 |
| | 1.07 | Assignment of Leases, Contracts, Rents and Profits | 8 |
| | 1.08 | Acceleration Upon Sale or Encumbrance | 11 |
| | 1.09 | Preservation and Maintenance of Property | 11 |
| | 1.10 | Offset Certificates | 12 |
| | 1.11 | Mortgagee's Costs and Expenses | 12 |
| | 1.12 | Protection of Security; Costs and Expenses | 12 |
| | 1.13 | Mortgagor's Covenants Respecting Collateral | 12 |
| | 1.14 | Covenants Regarding Financial Statements | 14 |
| | 1.15 | Environmental Covenants | 15 |
| II | | EVENTS OF DEFAULT | |
| | 2.01 | Monetary and Performance Defaults | 15 |
| | 2.02 | Bankruptcy, Insolvency, Dissolution | 16 |
| | 2.03 | Misrepresentation | 16 |
| | 2.04 | Default under Subordinate Loans | 16 |
| III | | REMEDIES | |
| | 3.01 | Acceleration | 16 |
| | 3.02 | Entry | 17 |
| | 3.03 | Judicial Action | 18 |
| | 3.04 | Foreclosure | 18 |
| | 3.05 | Rescission of Notice of Default | 20 |
| | 3.06 | Mortgagee's Remedies Respecting Collateral | 20 |
| | 3.07 | Proceeds of Sales | 20 |
| | 3.08 | Condemnation and Insurance Proceeds | 21 |
| | 3.09 | Waiver of Marshalling, Right of Redemption Homestead and Valuation | 21 |
| | 3.10 | Remedies Cumulative | 21 |
| | 3.11 | Intentionally omitted | 22 |
| | 3.12 | Evasion of Prepayment Premium | 22 |
| IV | | MISCELLANEOUS | |
| | 4.01 | Severability | 22 |
| | 4.02 | Certain Charges and Brokerage Fees | 22 |
| | 4.03 | Notices | 23 |
| | 4.04 | Mortgagor Not Released; Certain Mortgagee Acts | 24 |
| | 4.05 | Inspection | 24 |
| | 4.06 | Release or Reconveyance or Cancellation | 24 |

| ARTICLE | SECTION | DESCRIPTION | PAGE NUMBER |
|---|---|---|---|
| | 4.07 | Statute of Limitations | 24 |
| | 4.08 | Interpretation | 24 |
| | 4.09 | Captions | 24 |
| | 4.10 | Consent | 24 |
| | 4.11 | Delegation to Subagents | 25 |
| | 4.12 | Successors and Assigns | 25 |
| | 4.13 | Governing Law | 25 |
| | 4.14 | Changes in Taxation | 25 |
| | 4.15 | Maximum Interest Rate | 25 |
| | 4.16 | Time of Essence | 25 |
| | 4.17 | Reproduction of Documents | 25 |
| | 4.18 | No Oral Modifications | 25 |
| | 4.19 | Non-Waiver | 31 |
| | 4.20 | No Joint Venture | 31 |

SIGNATURE PAGE

### MORTGAGE, ASSIGNMENT OF LEASES, RENTS AND CONTRACTS, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

THIS MORTGAGE, ASSIGNMENT OF LEASES, RENTS AND CONTRACTS, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING is made as of this _____ day of August, 2005, from Binford Medical Developers, LLC, an Indiana limited liability company, whose mailing address is 5200 East 64th Street, Indianapolis, Indiana 46220 (herein "**Mortgagor**"), in favor of the individuals and the entities listed on Exhibit A hereto, their successors and assigns (herein "**Mortgagee**" or  "**Lender**"), whose mailing address is c/o USA Commercial Mortgage Company, 4484 South Pecos Road, Las Vegas, Nevada 89121.

In consideration of the indebtedness herein recited and as security for payment and performance of the payment of both principal and interest and the other obligations set forth below, Mortgagor has granted, conveyed, bargained, sold, alienated, enfeoffed, released, confirmed, transferred, pledged, warranted, and mortgaged, and by these presents does hereby grant, convey, bargain, sell, alien, enfeoff, release, confirm, transfer, pledge, warrant, and mortgage unto Mortgagee, its successors and assigns all of Mortgagor's estate, right, title, and interest in, to and under that certain real property located in the City of Indianapolis, County of Marion, State of Indiana, more particularly described in Exhibit B attached hereto and incorporated herein by reference (the "**Land**");

TOGETHER with all of Mortgagor's now or hereafter acquired estate, right, title and interest in, to and under all buildings, structures, improvements and fixtures now existing or hereafter erected on the Land and all right, title and interest, if any, of Mortgagor in and to the streets and roads, opened or proposed, abutting the Land to the center lines thereof, and strips within or adjoining the Land, the air space and right to use said air space above the Land, all rights of ingress and egress on or within the Land, all easements, rights and appurtenances thereto or used in connection with the Land, including, without limitation, all lateral support, alley and drainage rights, all revenues, income, rents, cash or security deposits, advance rental deposits, profits, royalties, and other benefits thereof or arising from the use or enjoyment of all or any portion thereof (subject however to the rights and authorities given herein to Mortgagor to collect and apply such revenues, and other benefits), all interests in and rights, royalties and profits in connection with all minerals, oil and gas and other hydrocarbon substances thereon or therein, and water stock, all options to purchase or lease, all development or other rights relating to the Land or the operation thereof, or used in connection therewith, including all Mortgagor's right, title and interest in all fixtures, attachments, partitions, machinery, equipment, building materials, appliances and goods of every nature whatever now or hereafter located on, or attached to, the Land, all of which, including replacements and additions thereto, shall, to the fullest extent permitted by law and for the purposes of this Mortgage, be deemed to be real property and, whether affixed or annexed thereto or not, be deemed conclusively to be real property; and Mortgagor agrees to execute and deliver, from time to time, such further instruments and documents as may be required by Mortgagee to confirm the legal operation and effect of this Mortgage on any of the foregoing. All of the foregoing property described in this section (the "**Improvements**") together with the Land, shall be hereinafter referred to as the "**Property**".

MORTGAGOR HEREBY FURTHER GRANTS TO Mortgagee a security interest in the following with the understanding and intention that this Mortgage shall also constitute a security agreement pursuant to the Uniform Commercial Code of the state in which the Property is located.

(A)    All equipment, fixtures, inventory, goods, instruments, appliances, furnishings, machinery, tools, raw materials, component parts, work in progress and materials, and all other



tangible personal property of whatsoever kind, used or consumed in the improvement, use or enjoyment of the Property now or any time hereafter owned or acquired by Mortgagor, wherever located and all products thereof whether in possession of Mortgagor or whether located on the Property or elsewhere;

(B)     To the extent such general intangibles are assignable, all general intangibles relating to design, development, operation, management and use of the Property, including, but not limited to, (1) all names under which or by which the Property may at any time be owned and operated or any variant thereof, and all goodwill in any way relating to the Property and all service marks and logotypes used in connection therewith, (2) all permits, licenses, authorizations, variances, land use entitlements, approvals, consents, clearances, and rights obtained from governmental agencies issued or obtained in connection with the Property, (3) all permits, licenses, approvals, consents, authorizations, franchises and agreements issued or obtained in connection with the construction, use, occupation or operation of the Property, (4) all materials prepared for filing or filed with any governmental agency, and (5) the books and records of Mortgagor relating to construction or operation of the Property;

(C)     All shares of stock, partnership or membership interest or other evidence of ownership of any part of the Property that is owned by Mortgagor in common with others, including all water stock relating to the Property, if any, and all documents or rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property provided, however, that the foregoing shall not include any ownership interests in the Mortgagor;

(D)     All accounts, deposit accounts, tax and insurance escrows held pursuant to this Mortgage, accounts receivable, instruments, documents, documents of title, general intangibles, rights to payment of every kind, all of Mortgagor's rights, direct or indirect, under or pursuant to any and all construction, development, financing, guaranty, indemnity, maintenance, management, service, supply and warranty agreements, commitments, contracts, subcontracts, insurance policies, licenses and bonds now or anytime hereafter arising from construction on the Land or the use or enjoyment of the Property to the extent such are assignable;

(E)     All condemnation proceeds (including payments in lieu thereof) and insurance proceeds related to the Property;

TOGETHER with all additions to, substitutions for and the products of all of the above, and all proceeds therefrom, whether cash proceeds or noncash proceeds, received when any such property (or the proceeds thereof) is sold, exchanged, leased, licensed, or otherwise disposed of, whether voluntarily or involuntarily. Such proceeds shall include any of the foregoing specifically described property of Mortgagor acquired with cash proceeds. Together with, and without limiting the above items, all Goods, Accounts, Documents, Instruments, Money, Chattel Paper and General Intangibles arising from or used in connection with the Property, as those terms are defined in the Uniform Commercial Code from time to time in effect in the state in which the Property is located. (All of the foregoing, including the above-described products and proceeds thereof, are collectively referred to as "**Collateral**".)

MORTGAGOR HEREBY WARRANTS AND REPRESENTS that it is the owner in fee title to the Property (and the Collateral) free and clear of all liens and encumbrances except for: the lien for current real estate

-2-



taxes not yet due and payable; and such other encumbrances as may have been approved by Mortgagee in writing on the date of this Mortgage.

The personal property in which Mortgagee has a security interest includes goods which are or shall become fixtures on the Property. This Mortgage is intended to serve as a fixture filing pursuant to the terms of the applicable provisions of the Uniform Commercial Code of the state in which the Property is located and the provisions of Exhibit C are, for that purpose, incorporated herein. This filing is to be recorded in the real estate records of the county in which the Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Names of Debtor: | Binford Medical Developers, LLC |
| Address of Debtor: | See section 4.03 hereof |
| Name of Secured Party: | USA Commercial Mortgage Company, as Agent for Lender |
| Address of Secured Party: | See section 4.03 hereof. |

Mortgagor warrants and agrees that there is no financing statement covering the foregoing Collateral, the Property, or any part thereof, on file in any public office and Mortgagor hereby authorizes Mortgagee to file financing statements covering the foregoing, and at the request of Mortgagee, Mortgagor will join Mortgagee in executing one or more such financing statements pursuant to the Uniform Commercial Code in the state where the Property is located, in a form satisfactory to Mortgagee, and Mortgagor will pay the cost of filing the same or filing or recording this Mortgage, as a financing statement, in all public offices at any time and from time to time wherever Mortgagee deems filing or recording of any financing statements or of this Mortgage to be desirable or necessary.

TO HAVE AND TO HOLD the Property hereby conveyed or mentioned and intended so to be, unto Mortgagee, its successors and assigns, forever subject to and for the purposes and uses herein set forth. This Mortgage secures:

(A)    The repayment of the indebtedness evidenced by that certain Promissory Note ("**Note**") of even date herewith with a maturity date of August ___, 2006, executed by Mortgagor and payable to the order of Mortgagee, in the principal sum of FOUR MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($4,250,000.00) with interest thereon, as provided therein and all late charges, loan fees, commitment fees, Prepayment Premiums (as described in the Note), and all extensions, renewals, modifications, amendments and replacements thereof;

(B)    The payment of all other sums which may be advanced by or otherwise be due to Mortgagee under any provision of this Mortgage or under any other instrument or document referred to in clause (C) below, with interest thereon at the rate provided herein or therein;

(C)    The performance of each and every covenant and agreement of Mortgagor contained (1) herein, in the Note, or in any note evidencing a Future Advance (as hereinafter defined), and (2) in the obligations of Mortgagor upon any and all pledge or other security agreements, loan agreements, disbursement agreements, supplemental agreements, assignments (both present and

-3-

30Aug05



collateral) and all instruments of indebtedness or security now or hereafter executed by Mortgagor in connection with any indebtedness referred to in clauses (A), (B) or (D) of this section (including but not limited to the Assignment of Leases and Rents) or for the purpose of supplementing or amending this Mortgage or any instrument secured hereby (all of the foregoing in this clause (C), as the same may be amended, modified or supplemented from time to time, being referred to hereinafter as "**Related Agreements**") and all costs and expenses, including reasonable attorneys' fees with respect to all such documents, including, without limitation, the negotiation and drafting of any loan settlement or workout agreement; and

(D)    The repayment of any other loans or advances, with interest thereon, hereafter made to Mortgagor (or any successor in interest to Mortgagor as the owner of the Property or any part thereof) by Mortgagee when the promissory note evidencing the loan or advance specifically states that said note is secured by this Mortgage, together with all extensions, renewals, modifications, amendments and replacements thereof (herein and in the Related Agreements, a "**Future Advance**"), whether hereafter evidenced by the Note or otherwise, and whether advanced now or in the future, it being understood that the Note amount may be increased to $8,375,000. The parties hereby acknowledge and intend that all such advances, including Future Advances whenever hereafter made, shall be a lien from the time this Mortgage is recorded.

## ARTICLE I
## COVENANTS OF MORTGAGOR

To protect the security of this Mortgage, Mortgagor covenants and agrees as follows:

1.01.    Performance of Obligations Secured. Mortgagor shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, the principal of and interest on any Future Advance, any Prepayment Premium and late charges provided for in the Note or in any note evidencing a Future Advance, and shall further perform fully and in a timely manner all other obligations of Mortgagor contained herein or in the Note or in any note evidencing a Future Advance or in any of the Related Agreements.

1.02.    Insurance. For all times during the period there remains any indebtedness under the Note, or any and all other indebtedness (including without limitation Future Advances) secured by this Mortgage, Mortgagor shall keep the Property insured against all risks or hazards as Mortgagee may require. Such insurance shall be in policy form, amount and coverage satisfactory to Mortgagee, including, but not limited to:

(A)    Fire and extended coverage property damage insurance, including, but not limited to all risk insurance, in an amount equal to the full replacement value of the Improvements, without coinsurance or deducting for depreciation, containing a waiver of subrogation clause and a deductible amount acceptable to Mortgagee;

(B)    Public liability insurance, in such form, amount and deductible satisfactory to Mortgagee, and naming Mortgagee c/o Mortgagee's servicing agent, if any, as additional insured covering Mortgagee's interest in the Property;



(C)    Business interruption or rent loss insurance endorsement in an amount at least equal to one hundred percent (100%) of the sum of: annual debt service on the Note, the annual debt service on any other financing permitted by Mortgagee, ground rents, if any, and operating expenses, including, without limitation, real estate taxes and assessments and insurance, for the Property;

(D)    Flood insurance required by and obtainable through the National Flood Insurance Program sufficient to cover any damage which may be anticipated in the event of flood unless Mortgagor has provided Mortgagee evidence satisfactory to Mortgagee that no portion of the Property is located within the boundaries of the one hundred (100) year flood plain;

(E)    "Dram shop" insurance if alcoholic beverages are sold on the Property;

(F)    Boiler and machinery insurance when risks covered thereby are present and Mortgagee requires such insurance; and

(G)    Earthquake insurance if Mortgagee requires such insurance.

The insurance coverages described in subsections (A), (C), (D), (F) and (G) above shall name Mortgagee c/o Mortgagee's servicing agent, if any, under a standard noncontributory mortgagee clause or otherwise directly insure Mortgagee's interest in the Property. All losses under said insurance shall be payable to Mortgagee in the manner provided in sections 1.04 and 1.05 hereof. All policies of insurance required under this section 1.02 shall be with a company or companies with a policy rating of A and financial rating of at least Class X in the most current edition of Best's Insurance Reports and authorized to do business in the state in which the Property is located. All policies of insurance shall provide that they will not be canceled or modified without thirty (30) days' prior written notice to Mortgagee. True copies of the above mentioned insurance policies or evidence of such insurance (in the form of Accord Form 27) satisfactory to Mortgagee shall be delivered to and held by Mortgagee. True copies of all renewal and replacement policies or evidences of such insurance forms (Accord Form 27) thereof shall be delivered to Mortgagee at least thirty (30) days before the expiration of the expiring policies. If any renewal or replacement policy is not obtained as required herein, Mortgagee is authorized to obtain the same in Mortgagor's name and at Mortgagor's expense. Mortgagee shall not by the fact of failing to obtain any insurance, incur any liability for or with respect to the amount of insurance carried, the form or legal sufficiency of insurance contracts, solvency of insurance companies, or payment or defense of lawsuits, and Mortgagor hereby expressly assumes full responsibility therefor and all liability, if any, with respect thereto.

1.03.    Condemnation.

(A)    Immediately upon obtaining knowledge of the commencement or threat of any action in connection with (1) any condemnation, (2) any other taking of the Property or any part thereof by any public authority or private entity having the power of eminent domain, or (3) any conveyance in lieu of such condemnation or taking of the Property or any part thereof ("**Condemnation**"), Mortgagor shall notify Mortgagee in writing but in no event later than ten (10) days after Mortgagor obtains knowledge of the commencement of or threat of a Condemnation. Mortgagee shall have the right, but not the obligation, to participate in any proceedings relating to any Condemnation and may, in its sole discretion, consent or withhold its consent to any settlement, adjustment, or compromise of any claims arising from the Condemnation and no such settlement, adjustment or compromise shall be final or binding upon Mortgagee without Mortgagee's prior consent.

-5-

30Aug05



(B)      If all or part of the Property is taken by Condemnation and Mortgagee in its reasonable judgment determines that the remainder of the Property, if any, cannot be operated as an economically viable entity at substantially the same level of operations as immediately prior to such Condemnation, then all proceeds of the Condemnation ("**Condemnation Proceeds**") shall be paid over to Mortgagee and shall be applied first toward reimbursement of the costs and expenses (including reasonable attorneys' fees) of Mortgagee, if any, in connection with the recovery of such Condemnation Proceeds, and then, in the sole and absolute discretion of Mortgagee and without regard to the adequacy of its security under this Mortgage, shall be applied against all amounts due herein or under the Note and any remaining Condemnation Proceeds shall be released to the Mortgagor. Partial prepayment of the Note under this section 1.03(B) shall not be subject to the Prepayment Premium; however, such partial prepayment shall not entitle Mortgagor to prepay the portion of the Note remaining unpaid after application of the Condemnation Proceeds. Prepayment of the balance shall continue to be subject to the terms and conditions of the Note, including the No-Prepayment Period and the Prepayment Premium described therein.

(C)      If less than all of the Property is taken by Condemnation and Mortgagee in its reasonable judgment determines that the remainder of the Property can be operated as an economically viable entity at substantially the same level of operations as immediately prior to such Condemnation, then Mortgagor shall diligently restore the Property to a condition and use as close as possible to its condition immediately prior to the Condemnation and all Condemnation Proceeds shall be made available to Mortgagor for such restoration. If the estimated cost of restoration, as reasonably determined by Mortgagee, is equal to or less than Fifty Thousand Dollars ($50,000.00), all Condemnation Proceeds shall be released directly to Mortgagor for restoration of the Property. If the estimated cost of restoration exceeds Fifty Thousand Dollars ($50,000.00), all Condemnation Proceeds shall be deposited into an escrow fund in accordance with section 1.05 below. Mortgagee shall have the right to obtain an opinion of an independent contractor or engineer satisfactory to Mortgagee, at Mortgagor's expense, to estimate the cost to restore the remaining portion of the Property. If the amount of the Condemnation Proceeds is not sufficient to restore the Property based on the opinion of an independent contractor or engineer, subject to revision as restorations are made, Mortgagor shall be obligated to pay the difference toward the restoration of the Property.

(D)      If an Event of Default exists at any time from the time of a Condemnation through the completion of restoration and payment of any Condemnation Proceeds, the use of the Condemnation Proceeds shall be governed by the remedies set forth in Article III below. If an event has occurred which with notice, the passage of time, or both, could become an Event of Default, then, the Condemnation Proceeds shall be held by Mortgagee or in the Escrow Fund (as defined below), as applicable, pending cure of such event.

1.04.    Damage to Property.

(A)      Promptly upon obtaining knowledge of any damage to the Property or any part thereof with an estimated cost of restoration in excess of Five Thousand Dollars ($5,000.00), but in no event later than five (5) days after Mortgagor obtains such knowledge, Mortgagor shall notify Mortgagee of such damage in writing. Mortgagor shall diligently restore the Property to the same condition that existed immediately prior to the damage whether or not insurance proceeds are sufficient for such restoration. All proceeds of any insurance on the Property ("**Insurance Proceeds**") received by Mortgagor shall be applied to such restoration. Mortgagee shall have the



right to obtain an opinion of an independent contractor or engineer satisfactory to Mortgagee, at Mortgagor's expense, to estimate the cost to restore the Property to its original condition, which opinion may be revised as restorations are made. If the amount of the insurance proceeds is not sufficient to restore the Property based on an independent contractor's or engineer's opinion, subject to revision as restorations are made, Mortgagor shall be obligated to pay the difference toward the restoration of the Property.

(B)    If the estimated cost of restoration is equal to or less than Fifty Thousand Dollars ($50,000.00), Mortgagor shall promptly settle and adjust any claims under the insurance policies which insure against such risks and, upon receipt of the Insurance Proceeds, Mortgagee shall deliver such to Mortgagor for use in restoration of the Property.

(C)    If the estimated cost of restoration is greater than Fifty Thousand Dollars ($50,000.00), Mortgagee shall have the right, but not the obligation, to participate in the settlement of the insurance claims and may, in its reasonable discretion, consent or withhold its consent to any settlement, adjustment, or compromise of such insurance claims and no such settlement, adjustment, or compromise shall be final or binding upon Mortgagee without its prior consent. Upon settlement of insurance claims, and if Mortgagor can demonstrate to the reasonable satisfaction of Mortgagee that the projected ratio of Net Operating Income, as defined below, to annual debt service due under the Note and any other notes secured by the Property ("**Debt Coverage Ratio**") will be at least one hundred five (105%) for the twelve (12) months immediately following reconstruction of the Property, the insurance proceeds shall be deposited into an escrow fund in accordance with section 1.05 below. As used in this Mortgage, "**Net Operating Income**" shall mean:

(i)    all gross receipts received or anticipated (as may be applicable) from tenants in the Property and paying rent under bona fide leases in effect during the applicable twelve (12) month period, calculated on a cash basis which reflects only the income actually received during the previous twelve (12) month period as of the date of such calculation, and any income anticipated to be received during the following twelve (12) month period based on leases in effect as of the date of calculation, for such time as those leases are contracted to remain in effect without expiration by their terms or optional termination by the tenant (unless the tenant has waived its termination rights in writing or the term of the lease has been extended in writing), including without limitation all amounts to be received from tenants as payment of operating expenses but not including refundable deposits, lease termination payments, excess tenant improvement and leasing commission payments included as additional rent, principal or interest payments received by Mortgagor on loans to tenants and fees and reimbursements for work performed for tenants by Mortgagor, less:

(ii)    all amounts, calculated on a cash basis, for the operation or maintenance of the Property for the applicable twelve (12) month period, including ground rents, the cost of property management (which shall be no less than four percent [4%] of gross collections), maintenance, cleaning, security, landscaping, parking maintenance and utilities, and other costs and expenses approved in writing by Mortgagee and amounts reasonably estimated by Mortgagee for the payment of real estate taxes and assessments and other taxes related to the operation of the Property, insurance premiums, necessary repairs and future replacements of equipment; payments under the Note shall not be included in Net Operating Income.

-7-

30Aug05

(D)    If in the reasonable judgment of Mortgagee the conditions of subsection 1.04(C) cannot be satisfied, then at any time from and after the occurrence of the damage, upon written notice to Mortgagor, Mortgagee may declare the entire balance of the Note and/or any Future Advances then outstanding and accrued and unpaid interest thereon, and all other sums or payments required thereunder or under this Mortgage, without any Prepayment Premium, to be immediately due and payable, and all insurance proceeds shall be applied by Mortgagee first to the reimbursement of any costs or expenses incurred by Mortgagee in connection with the damage or the determination to be made hereunder, and then to the payment of the indebtedness secured by this Mortgage in such order as Mortgagee may determine in its sole discretion.

(E)    If an Event of Default exists at any time from the time of damage through the completion of restoration and the final release of any Insurance Proceeds to Mortgagor, the use of the Insurance Proceeds shall be governed by the remedies set forth in Article III below. If an event has occurred which with notice, the passage of time, or both, could become an Event of Default, then the Insurance Proceeds shall be held by Mortgagee or in the Escrow Fund, as applicable, pending cure of such event prior to the expiration of any applicable cure or grace period.

1.05.    Escrow Fund for Condemnation and Insurance Proceeds.

(A)    In the circumstances indicated above in subsections 1.03(C) and 1.04(C), all Condemnation Proceeds and Insurance Proceeds shall be deposited in an interest bearing escrow fund ("**Escrow Fund**"). The escrow agent and the form of the escrow agreement shall be reasonably satisfactory to Mortgagee and Mortgagor. The costs and fees of such escrow agent shall be paid by Mortgagor. If the amount of the Proceeds is not sufficient to restore the Property based on an independent contractor's or engineer's opinion obtained by Mortgagee at Mortgagor's expense, subject to revision as restorations are made, Mortgagor shall be obligated to deposit in the Escrow Fund the difference between the contractor's or engineer's estimate and the amount of the Proceeds or deliver to the escrow agent an irrevocable, unconditional letter of credit issued in the amount of such difference in a form and by a financial institution acceptable to Mortgagee or other cash equivalent acceptable to Mortgagee. The Mortgagor's funds, if necessary, and the Proceeds shall be deposited into the Escrow Fund and shall not be released by the escrow agent unless used to restore the Property to its original condition and unless a disbursement agent satisfactory to Mortgagee and Mortgagor approves such disbursements from time to time. The escrow agreement shall provide that the escrow agent shall only disburse funds to Mortgagor so long as the restoration work is being diligently performed by Mortgagor and only after (1) Mortgagee has reasonably approved the plans and specifications for the restoration of the Property; (2) Mortgagor has executed a contract reasonably acceptable to Mortgagee with a general contractor reasonably acceptable to Mortgagee for the restoration of the Property; (3) the general contractor has submitted lien waivers and/or releases, executed by the general contractor and all subcontractors and suppliers which may be partial to the extent of partial payments and which, in the case of releases, may be contingent upon payment if the escrow agent makes payment directly to such contractor, subcontractor or supplier; (4) Mortgagor has furnished Mortgagee with an endorsement to its title policy showing no additional exceptions; and (5) Mortgagor has submitted such other documents and information as may be reasonably requested by Mortgagee to determine that the work to be paid for has been performed in accordance with the plans and specifications approved by Mortgagee. If any requisition for payment of work performed is for an amount which would result in the remaining balance of the Escrow Fund to be insufficient to complete the remainder of the restoration, Mortgagor shall advance the requisite

amount in cash to the Escrow Fund immediately upon written request from the disbursement agent or Mortgagee.

(B)     Any Condemnation Proceeds and any interest thereon remaining in the Escrow Fund after payment of the costs to complete the restoration of the Property pursuant to the approved plans and specifications and the costs of the escrow agent shall be paid first, to Mortgagor to the extent of any funds of Mortgagor's contributed to the restoration pursuant to section 1.05, provided there is no Event of Default or an event which with notice, the passage of time, or both, could become an Event of Default, and thereafter at Mortgage's option, any remaining Condemnation Proceeds may be applied to the partial payment or prepayment of the Note without payment of any Prepayment Premium or may be returned to the Mortgagor. If an Event of Default exists, the use of the Condemnation Proceeds shall be governed by Article III below. If, however, an event exists which with notice, the passage of time, or both, could become an Event of Default, the remaining balance in the Escrow Fund shall be held by the escrow agent pending cure of the event prior to the expiration of any applicable cure or grace period.

(C)     Any Insurance Proceeds and any interest thereon remaining in the Escrow Fund after payment of the costs to complete the restoration of the Property pursuant to the approved plans and specifications and the costs of the escrow agent, provided there is no Event of Default or an event which with notice, the passage of time, or both, could become an Event of Default, shall be paid first, to Mortgagor to the extent of any funds of Mortgagor's contributed to the restoration pursuant to section 1.05, and thereafter, any remaining Insurance Proceeds shall be held in the escrow as additional collateral security for the Note, provided there is no Event of Default or an event which with notice, the passage of time, or both, could become an Event of Default. The entire amount remaining in such escrow shall be paid to Mortgagee upon maturity of the Note for application to the indebtedness secured by this Mortgage. If an Event of Default exists at any time from the time of completion of restoration and the final application of any Insurance Proceeds, the use of the Insurance Proceeds shall be governed by Article III below.

1.06.    Taxes, Liens and other Items.

Mortgagor shall pay any and all taxes, bonds, assessments, fees, liens, charges, fines, impositions and any accrued interest or penalty thereon, and any and all other items which are attributable to or affect the Property by making payment prior to delinquency directly to the payee thereof and promptly furnish copies of paid receipts for these to Mortgagee. Mortgagor shall promptly discharge or bond any lien or encumbrance on the Property whether said lien or encumbrance has or may attain priority over this Mortgage or not. This Mortgage shall be the sole encumbrance on the Property and, if with the consent of Mortgagee it is not the sole encumbrance, then it shall be prior to any and all other liens or encumbrances on the Property. Provided that the priority of this Mortgage is not in any way affected, Mortgagor may in good faith protest the payment of any tax or lien which it believes is unwarranted or excessive and may defer payment of the contested portion of such tax pending conclusion of such contest if legally permitted to do so and provided Mortgagee's security is not jeopardized in Mortgagee's sole opinion.



1.07.    Assignment of Leases, Contracts, Rents and Profits.

(A)    Mortgagor hereby absolutely, presently and unconditionally grants, assigns, transfers, conveys and sets over to Mortgagee all of Mortgagor's right, title and interest in and to the following whether arising under the Leases, by statute, at law, in equity, or in any other way:

(1)    All of the leases of the Property which are in effect on the date hereof, and entered into or in effect from time to time after the date hereof, including, without limitation, all amendments, extensions, replacements, modifications and renewals thereof and all subleases, concession agreements, any ground leases or ground subleases and all other agreements affecting the same (the "**Leases**") and all guaranties thereunder;

(2)    All of the rents, income, profits, revenue, royalties, judgments, condemnation awards, Insurance Proceeds, unearned insurance premiums and any other fees or sums payable to Mortgagor or any other person as landlord and other benefits and rights of the Property arising from the use, occupancy, operation or management of all or any portion thereof or from all the Leases, and any proceeds, deposits or security deposits relating thereto, including, without limitation, any award to Mortgagor made hereafter in any court involving any of the tenants under the Leases in any bankruptcy, insolvency, or reorganization proceeding in any state or federal court, and Mortgagor's right to appear in any action and/or to collect any such award or payment, and all payments by any tenant in lieu of rent (collectively, "Rents and Profits"); and

(3)    All contracts, agreements, management, operating and maintenance agreements, warranties, licenses, permits, guaranties and sales contracts relating to the Property and the Collateral entered into by, or inuring to the benefit of, Mortgagor (the "**Contracts**").

(B)    Notwithstanding the provisions of subsection 1.07(A), prior to the occurrence of any Event of Default hereunder, Mortgagee shall not exercise any of the rights or powers conferred upon Mortgagee by this section 1.07, and, subject to subsection 1.07(F), Mortgagor shall have a license to manage the Property; to collect, receive and use all Rents and Profits in accordance with the terms of the Leases; to let the Property and to take all actions which a reasonable and prudent landlord would take in enforcing the provisions of the Leases and Contracts; provided, however, that all amounts so collected shall be applied toward operating expenses, real estate taxes and insurance relating to the Property, capital repair items necessary to the operation of the Property, and the payment of sums due and owing under the Note, and this Mortgage prior to any other expenditure or distribution by Mortgagor. From and after the occurrence of an Event of Default (whether or not Mortgagee shall have exercised Mortgagee's option to declare the Note immediately due and payable), such license shall be automatically revoked without any action required by Mortgagee. Any amounts received by Mortgagor or its agents in the performance of any acts prohibited by the terms of this Mortgage, including but not limited to any amounts received in connection with any cancellation, modification or amendment of any of the Leases prohibited by the terms of this Mortgage and any amounts received by Mortgagor as rents, income, issues or profits from the Property from and after an Event of Default under this Mortgage, the Note, or any of the other Related Agreements, shall be held by Mortgagor as trustee for Mortgagee and all such amounts shall be accounted for to Mortgagee and shall not be commingled with other funds of the Mortgagor. Any



person acquiring or receiving all or any portion of such trust funds shall acquire or receive the same in trust for Mortgagee as if such person had actual or constructive notice that such funds were impressed with a trust in accordance herewith.

(C)     Upon the occurrence of an Event of Default, the Mortgagee shall have the right but not the obligation to perform as landlord under the Leases and as a party under the Contracts. The assignment of Rents and Profits set forth herein constitutes an irrevocable direction and authorization of all tenants under the Leases to pay all Rents and Profits to Mortgagee upon demand and without further consent or other action by Mortgagor. Mortgagor irrevocably appoints Mortgagee its true and lawful attorney, at the option of Mortgagee at any time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Mortgagor or in the name of Mortgagee, for all such Rents and Profits and apply the same to the indebtedness secured by this Mortgage.

(D)     Neither the foregoing assignment of Rents and Profits, Leases and Contracts to Mortgagee nor the exercise by Mortgagee of any of its rights or remedies under Article III shall be deemed to make Mortgagee a "mortgagee-in-possession" or otherwise liable in any manner with respect to the Property, unless Mortgagee, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Mortgagee or by agreement with Mortgagor, or the entering into possession of the Property by such receiver, be deemed to make Mortgagee a "mortgagee-in-possession" or otherwise liable in any manner with respect to the Property.

(E)     In the event Mortgagee collects and receives any Rents and Profits under this section 1.07 pursuant to any Monetary or Performance Default as defined in section 2.01 hereof, such collection or receipt shall in no way constitute a curing of the Monetary or Performance Default.

(F)     Mortgagor shall not, without the prior written consent of Mortgagee which consent shall not be unreasonably withheld or delayed, (1) enter into, or consent to or permit the assignment or subletting of, any Leases except that Mortgagee's prior written approval shall not be required with respect to leases demising no more than five thousand (5,000) rentable square feet of the Property which provide for a term of five (5) years or less and a rental rate, including rental concessions, at least equal to that charged for comparable properties within the Property's submarket area, have been negotiated at arm's length, and do not contain material modifications to the form of lease previously approved by Mortgagee; (2) modify, extend, cancel, consent to any surrender or in any way alter the terms of any Leases or take any action under or with respect to any such Leases which would materially decrease either the obligations of the tenant thereunder or the rights or remedies of the landlord or otherwise fail to perform the landlord's obligations under the Leases; (3) alter, modify, change or terminate the terms of any guaranties of the Leases; (4) create or permit any lien or encumbrance which, upon foreclosure, would be superior to any such Leases or in any other manner impair Mortgagee's rights and interest with respect to the Rents and Profits, (5) pledge, transfer, mortgage or otherwise encumber or assign the Leases, the Contracts or the Rents and Profits; or (6) collect rents more than thirty (30) days prior to their due date. Any lease submitted for Mortgagee's consent shall, at Mortgagee's option, be accompanied by a Subordination, Nondisturbance and Attornment Agreement in Mortgagee's then current form.



(G)    Mortgagor shall promptly give notice to Mortgagee of any default under any of the Leases meeting the criteria of a lease for which Mortgagee's consent would have been required pursuant to subsection 1.07(F) regardless of whether such leases were executed before or after the date of this Mortgage, together with a complete copy of any notices delivered to or by the tenant as a result of such default. Mortgagee shall have the right, but not the obligation, to cure any default of Mortgagor under any of the Leases and all amounts disbursed in connection with said cure shall be deemed to be indebtedness secured hereby.

(H)    Mortgagee shall have the right to approve any lease forms used by Mortgagor for lease of space in the Property.

(I)    Mortgagor hereby represents, warrants and agrees that:

(1)    Mortgagor has the right, power and capacity to make this assignment and that no person, firm or corporation or other entity other than Mortgagor has or will have any right, title or interest in or to the Leases or the Rents and Profits.

(2)    Mortgagor shall, at its sole cost and expense, perform and discharge all of the obligations and undertakings of the landlord under the Leases. Mortgagor shall enforce the performance of each obligation of the tenants under the Leases and will appear in and prosecute or defend any action connected with the Leases or the obligations of the tenants thereunder.

(J)    Mortgagee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases or under or by reason of this assignment. Mortgagor shall and does hereby agree to indemnify Mortgagee for and to defend and hold Mortgagee harmless from any and all liability, loss or damage which Mortgagee may or might incur under the Leases or under or by reason of this assignment, and from any and all claims whatsoever which may be asserted against Mortgagee by reason of any alleged obligations or undertakings on Mortgage's part to perform or discharge any of the terms, covenants or agreements contained in the Leases except for the gross negligence or willful misconduct of the Mortgagee. Should Mortgagee incur any liability, loss or damage under the Leases or under or by reason of this assignment, or in the defense of any of such claims or demands, the amount thereof, including costs, expenses and attorneys' fees, shall be secured by this Mortgage; and Mortgagor shall reimburse Mortgagee therefor immediately upon demand, and upon failure of Mortgagor to do so, Mortgagee may declare all sums so secured to be immediately due and payable except for the gross negligence or willful misconduct of the Mortgagee.

(K)    Mortgagee may take or release other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness, without prejudice to any of its rights hereunder.

(L)    Nothing herein contained and no act done or omitted by Mortgagee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Mortgagee of its other rights and remedies under the Note and this Mortgage, and this assignment is made and accepted without prejudice to any of the other rights and remedies possessed by Mortgagee under the terms thereof.

-12-



The right of Mortgagee to collect said indebtedness and to enforce any other security therefor held by it may be exercised by Mortgagee either prior to, simultaneously with, or subsequent to any action taken by it hereunder. It is the intent of both Mortgagor and Mortgagee that this assignment be supplementary to, and not in substitution or derogation of, any other provision contained in this Mortgage giving Mortgagee any interest in or rights with respect to the Leases or Rents and Profits.

(M)    Neither this assignment nor pursuit of any remedy hereunder by Mortgagee shall cause or constitute a merger of the interests of the tenant and the Mortgagor under any of the Leases such that any of the Leases hereby assigned are no longer valid and binding legal obligations of the parties executing the same.

(N)    Mortgagor agrees, from time to time, to execute and deliver, upon demand, all assignments and any and all other writings as Mortgagee may reasonably deem necessary or desirable to carry out the purpose and intent hereof, or to enable Mortgagee to enforce any right or rights hereunder.

1.08.    Acceleration Upon Sale or Encumbrance. If Mortgagor or any general partner, member or shareholder of Mortgagor or any general partner of such general partner shall (A) sell or convey the Property or any part thereof, or any interest in the Property or in Mortgagor; (B) be divested of its title to the Property or any interest therein; (C) further encumber the Property or the ownership interests in the Mortgagor; (D) enter into any lease giving the tenant any option to purchase the Property or any part thereof; or (E) encumber, grant a security interest in, transfer, permit the transfer of, or change or permit the change in: (1) the ownership of interests in the Mortgagor or any member of Mortgagor, or (2) the amount of the membership interests in Mortgagor, without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld, then Mortgagee shall have the right, at its option, to declare the indebtedness secured by this Mortgage, irrespective of the maturity date specified in the Note, immediately due and payable. Except as expressly consented to in writing by Mortgagee, Mortgagor shall not permit any additional encumbrances on the Property.

1.09.    Preservation and Maintenance of Property. Mortgagor shall hire competent and responsive property managers who shall be reasonably acceptable to Mortgagee. Mortgagor or its property manager, if applicable shall keep the Property and every part thereof in good condition and repair, in accordance with sound property management practices and shall promptly and faithfully comply with and obey all laws, ordinances, rules, regulations, requirements and orders of every duly constituted governmental authority or agent having jurisdiction with respect to the Property. Mortgagor shall not permit or commit any waste, impairment, or deterioration of the Property, nor commit, suffer or permit any act upon or use of the Property in violation of law or applicable order of any governmental authority, whether now existing or hereafter enacted, or in violation of any covenants, conditions or restrictions affecting the Property or bring or keep any article in the Property or cause or permit any condition to exist thereon which would be prohibited by or invalidate the insurance coverage required to be maintained hereunder. Mortgagor shall not make any material structural changes or alterations to the Property nor remove or demolish the Improvements or any portion thereof without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld. Mortgagor shall promptly restore any portion of the Property which may be damaged or destroyed. Mortgagor shall promptly bond or discharge any mechanics' liens against the Property.

Unless required by applicable law or unless Mortgagee has otherwise first agreed in writing, Mortgagor shall not make or allow any changes which will adversely affect the value of the Property to be



made in the nature of the occupancy or use of the Property or any part thereof for which the Property or such part was intended at the time this Mortgage was delivered. Mortgagor shall not initiate or acquiesce in any change which will adversely affect the value of the Property in any zoning or other land use classification now or hereafter in effect and affecting the Property or any part thereof without in each case obtaining Mortgagee's prior written consent thereto.

1.10.    Mortgagee's Costs and Expenses. Mortgagor shall pay all reasonable costs, fees and expenses of Mortgagee, its agents and counsel, in connection with the performance of its duties hereunder.

1.11.    Protection of Security; Costs and Expenses. Mortgagor and its property manager, if applicable, shall appear in and defend any action or proceeding purporting to affect the security of this Mortgage or any additional or other security for the obligations secured hereby, or the rights or powers of the Mortgagee, and shall pay all reasonable costs and expenses actually incurred, including, without limitation, cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder or under any other security for the obligations secured hereby. If Mortgagor fails to perform any of the covenants or agreements contained in this Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Property or any part thereof, including, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor, perform such covenant or agreement and compromise any encumbrance, charge or lien which in the judgment of Mortgagee appears to be prior or superior hereto. Mortgagor shall further pay all reasonable expenses of Mortgagee actually incurred (including reasonable and actual fees and disbursements of counsel) incident to the protection or enforcement of the rights of Mortgagee hereunder, and enforcement or collection of payment of the Note or any Future Advance whether by judicial or nonjudicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this section 1.12 or section 1.11 shall be additional indebtedness of Mortgagor secured by this Mortgage and each of the Related Agreements as of the date of disbursement and shall bear interest at the Default Rate set forth in the Note, from demand until paid. All such amounts shall be payable by Mortgagor immediately upon demand. Nothing contained in this section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

1.12.    Mortgagor's Covenants Respecting Collateral.

(A)    Mortgagor shall execute and deliver financing and continuation statements covering the Collateral from time to time and in such form as Mortgagee may require to perfect and continue the perfection of Mortgagee's security interest with respect to such property, and Mortgagor shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may require.

(B)    Without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld, Mortgagor shall not create or suffer to be created any other security interest in the Collateral, including replacements and additions thereto.

30Aug05



(C)    Without the prior written consent of Mortgagee or except in the ordinary course of business, Mortgagor shall not sell, transfer or encumber any of the Collateral, or remove any of the Collateral from the Property unless Mortgagor shall promptly substitute and replace the property removed with similar property of at least equivalent value on which Mortgagee shall have a continuing security interest ranking at least equal in priority to Mortgagee's security interest in the property removed.

(D)    Mortgagor shall (1) upon reasonable notice (unless an emergency or Event of Default exists) permit Mortgagee and its representatives to enter upon the Property to inspect the Collateral and Mortgagor's books and records relating to the Collateral and make extracts therefrom and to arrange for verification of the amount of Collateral, under procedures reasonably acceptable to Mortgagee, directly with Mortgagor's debtors or otherwise at Mortgagor's expense; (2) promptly notify Mortgagee of any attachment or other legal process levied against any of the Collateral and any information received by Mortgagor relative to the Collateral, Mortgagor's debtors or other persons obligated in connection therewith, which may in any way affect the value of the Collateral or the rights and remedies of Mortgagee in respect thereto; (3) reimburse Mortgagee upon demand for any and all costs actually incurred, including, without limitation, reasonable and actual attorneys' and accountants' fees, and other expenses incurred in collecting any sums payable by Mortgagor under any obligation secured hereby, or in the checking, handling and collection of the Collateral and the preparation and enforcement of any agreement relating thereto; (4) notify Mortgagee of each location at which the Collateral is or will be kept, other than for temporary processing, storage or similar purposes, and of any removal thereof to a new location, including, without limitation, each office of Mortgagor at which records relating to the Collateral are kept; (5) provide, maintain and deliver to Mortgagee originals or certified copies of the policies of insurance and certificates of insurance insuring the Collateral against loss or damage by such risks and in such amounts, form and by such companies as Mortgagee may require and with loss payable to Mortgagee, and in the event Mortgagee takes possession of the Collateral, the insurance policy or policies and any unearned or returned premium thereon shall at the option of Mortgagee become the sole property of Mortgagee; and (6) do all acts necessary to maintain, preserve and protect all Collateral, keep all Collateral in good condition and repair and prevent any waste or unusual or unreasonable depreciation thereof.

(E)    Until Mortgagee exercises its right to collect proceeds of the Collateral pursuant hereto, Mortgagor will collect with diligence any and all proceeds of the Collateral. If an Event of Default exists, any proceeds received by Mortgagor shall be held in trust for Mortgagee, and Mortgagor shall keep all such collections separate and apart from all other funds and property so as to be capable of identification as the property of Mortgagee and shall deliver to Mortgagee such collections at such time as Mortgagee may request in the identical form received, properly endorsed or assigned when required to enable Mortgagee to complete collection thereof.

(F)    Mortgagee shall have all of the rights and remedies granted to a secured party under the Uniform Commercial Code of the state in which the Collateral is located, as well as all other rights and remedies available at law or in equity. During the continuance of any Event of Default hereunder or under the Note, Mortgagee shall have the right to take possession of all or any part of the Collateral, to receive directly or through its agent(s) collections of proceeds of the Collateral (including notification of the persons obligated to make payments to Mortgagor in respect of the Collateral), to release persons liable on the Collateral and compromise disputes in connection therewith, to exercise all rights, powers and remedies which Mortgagor would have, but for the

-15-

security agreement contained herein, to all of the Collateral and proceeds thereof, and to do all other acts and things and execute all documents in the name of Mortgagor or otherwise, deemed by Mortgagee as necessary, proper and convenient in connection with the preservation, perfection or enforcement of its rights hereunder; and

(G)    After any Event of Default hereunder or under the Note, Mortgagor shall, at the request of Mortgagee, assemble and deliver the Collateral and books and records pertaining to the Property at a place designated by Mortgagee, and Mortgagee may, with reasonable notice to Mortgagor (unless an emergency or Event of Default exists), enter onto the Property and take possession of the Collateral. It is agreed that public or private sales, for cash or on credit to a wholesaler or retailer or investor, or user of collateral of the types subject to the security agreement, or public auction, are all commercially reasonable since differences in the sales prices generally realized in the different kinds of sales are ordinarily offset by the differences in the costs and credit risks of such sales. The proceeds of any sale of the Collateral shall be applied first to the expenses of Mortgagee actually incurred in retaking, holding, preparing for sale, or selling the Collateral or similar matters, including reasonable and actual attorneys' fees, and then, as Mortgagee shall solely determine.

1.13.    Covenants Regarding Financial Statements.

(A)    Mortgagor shall keep true books of record and account in which full, true and correct entries in accordance with sound accounting practice and principles applied on a consistent basis from year to year shall be made of all dealings or transactions with respect to the Property.

(B)    In the event such statements are not in a form reasonably acceptable to Mortgagee or Mortgagor fails to furnish such statements and reports, then Mortgagee shall have the immediate and absolute right to audit the respective books and records of the Property and Mortgagor at the expense of Mortgagor.

1.14.    Environmental Covenants. Mortgagor covenants: (A) that no Hazardous Materials (as defined below) shall be installed, used, generated, manufactured, treated, handled, refined, produced, processed, stored or disposed of, in, on or under the Property; (B) that no activity shall be undertaken on the Property which would cause (1) the Property to become a hazardous waste treatment, storage or disposal facility under any Hazardous Material Law (as defined below), (2) a release or threatened release of Hazardous Material from the Property in violation of any Hazardous Material Law, or (3) the discharge of Hazardous Material into any watercourse, body of surface or subsurface water or wetland, or the discharge into the atmosphere of any Hazardous Material which would require a permit under any Hazardous Material Law and for which no such permit has been issued; (C) that no activity shall be undertaken or permitted to be undertaken, by the Mortgagor on the Property which would result in a violation under any Hazardous Material Law, and (D) to obtain and deliver to Mortgagee, within a reasonable time following completion of actions required by an appropriate governmental agency, certifications of engineers or other professionals reasonably acceptable to Mortgagee, in form and substance satisfactory to Mortgagee, certifying that all necessary and required actions to clean up, remove, contain, prevent and eliminate all releases or threats of release of Hazardous Materials on or about the Property to the levels required by the appropriate governmental agencies have been taken and, to the knowledge of such professional, the Property is then in compliance with applicable Hazardous Material Laws as then in effect and applicable to such actions. For

-16-



purposes of this Mortgage, "**Hazardous Materials**" means and includes asbestos or any substance containing asbestos, polychlorinated biphenyls, any explosives, radioactive materials, chemicals known or suspected to cause cancer or reproductive toxicity, pollutants, effluents, contaminants, emissions, infectious wastes, any petroleum or petroleum-derived waste or product or related materials and any items defined as hazardous, special or toxic materials, substances or waste under any Hazardous Material Law, or any material which shall be removed from the Property pursuant to any administrative order or enforcement proceeding or in order to place the Property in a condition that is suitable for ordinary use. "**Hazardous Material Laws**" collectively means and includes any present and future local, state, federal or international law or treaty relating to public health, safety or the environment including without limitation, the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. § 6901 *et seq.*, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq.*, the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, the Clean Air Act, as amended 42 U.S.C. § 7401 *et seq.*, the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*, the Uranium Mill Tailings Radiation Control Act, 42 U.S.C. § 7901 *et seq.*, the Occupational Safety and Health Act, 29 U.S.C.§ 655 *et seq.*, the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 *et seq.*, the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, the Noise Control Act, 42 U.S.C. § 4901 *et seq.*, and the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 *et seq.*, and the amendments, regulations, orders, decrees, permits, licenses or deed restrictions now or hereafter promulgated thereunder. The Mortgagor hereby certifies that the Property is not "property" as defined by Indiana Code § 13-11-2-174 and therefore no "disclosure document" as defined in Indiana Code § 13-25-3-1 is required in connection with this transaction.

## ARTICLE II
## EVENTS OF DEFAULT

Each of the following shall constitute an event of default ("**Event of Default**") hereunder:

2.01.    Monetary and Performance Defaults.

(A)     Failure to make any payment due under the Note or any note evidencing a Future Advance, other than the final payment and Prepayment Premium, or to make any payment due under this Mortgage to Mortgagee or any other party, including without limitation, payment of escrow deposits, real estate taxes, insurance premiums and ground rents, if any, on or before the fourth day following the date on which such payment is due; or

(B)     Failure to make the final payment or the Prepayment Premium due under the Note or any note evidencing a Future Advance when such payment is due whether at maturity, by reason of acceleration, as part of a prepayment or otherwise (the defaults in (A) and (B) hereinafter "**Monetary Default**"); or

(C)     Breach or default in the performance of any of the covenants or agreements of Mortgagor contained herein or in any Related Agreement ("**Performance Default**"), if such Performance Default shall continue for fifteen (15) days or more after written notice to Mortgagor from Mortgagee specifying the nature of the Performance Default; provided, however, that if such Performance Default is of a nature that it cannot be cured within the fifteen (15) day period, then

                                                              -17-



Mortgagor shall not be in default if it commences good faith efforts to cure the Performance Default within the fifteen (15) day period, demonstrates continuous diligent efforts to cure the Performance Default in a manner satisfactory to Mortgagee and, within a reasonable period, not to exceed one hundred eighty (180) days after the date of the original written notice of the Performance Default, completes the cure of such Performance Default.

2.02.   Bankruptcy, Insolvency, Dissolution.

(A)   Any court of competent jurisdiction shall sign an order (1) adjudicating Mortgagor, or any person, partnership or corporation holding an ownership interest in Mortgagor or in any partnership comprising Mortgagor, or any guarantor (which term when used in this Mortgage shall mean guarantor of payment of the indebtedness) bankrupt or insolvent, (2) appointing a receiver, Mortgagee or liquidator of the Property or of a substantial part of the property of Mortgagor, or any person, partnership or corporation holding an ownership interest in Mortgagor, or in any partnership comprising Mortgagor, or any guarantor, or (3) approving a petition for, or effecting an arrangement in bankruptcy, or any other judicial modification or alteration of the rights of Mortgagee or of other creditors of Mortgagor, or any person, partnership or corporation holding an ownership interest in Mortgagor, or in any partnership comprising Mortgagor or any guarantor; or

(B)   Mortgagor, any partnership, limited liability company or corporation holding an ownership interest in Mortgagor or in any partnership comprising Mortgagor, shall (1) apply for or consent to the appointment of a receiver, Mortgagee or liquidator for it or for any of its property, (2) as debtor, file a voluntary petition in bankruptcy, or petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it and any proceeding under such law, (3) admit in writing an inability to pay its debts as they mature, or (4) make a general assignment for the benefit of creditors; or

(C)   An involuntary petition in bankruptcy is filed against Mortgagor, or any person, partnership, limited liability company or corporation holding an ownership interest in Mortgagor or in any partnership comprising Mortgagor and the same is not vacated or stayed within thirty (30) days of the filing date.

2.03.   Misrepresentation. Mortgagor makes or furnishes a representation, warranty, statement, certificate, schedule and/or report to Mortgagee in or pursuant to this Mortgage or any of the Related Agreements which is false or misleading in any material respect as of the date made or furnished.

2.04.   Default under Subordinate Loans. An occurrence of a default under any loan subordinate to this Mortgage which is not an independent default under this Mortgage which results in the commencement of foreclosure proceedings or the taking of any other remedial action under such subordinate loan.

ARTICLE III
REMEDIES

30Aug05



Upon the occurrence of any Event of Default, Mortgagee shall have the following rights and remedies set forth in sections 3.01 through 3.08:

3.01.    Acceleration. Notwithstanding the stated maturity date in the Note, or any note evidencing any Future Advance, Mortgagee may without notice or demand, declare the entire principal amount of the Note and/or any Future Advances then outstanding and accrued and unpaid interest thereon, and all other sums or payments required thereunder including, but not limited to the Prepayment Premium described in the Note, to be due and payable immediately.

3.02.    Entry. Irrespective of whether Mortgagee exercises the option provided in section 3.01 above, Mortgagee in person or by agent or by court-appointed receiver (and Mortgagee shall have as a matter of right in accordance with Indiana Code § 32-30-5-1(4)(C) and Mortgagor consents to the immediate appointment of such a receiver without regard to the adequacy of the security and Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor) may, at its option, without any action on its part being required, without in any way waiving such Event of Default, with or without the appointment of a receiver, or an application therefor:

(A)    take possession of the Property and conduct tests of, manage or hire a manager to manage, lease and operate the Property or any part thereof, on such terms and for such period of time as Mortgagee may deem proper, with full power to make, from time to time, all alterations, renovations, repairs or replacements thereto as may seem proper to Mortgagee;

(B)    with or without taking possession of the Property, collect and receive all Rents and Profits, notify tenants under the Leases or any other parties in possession of the Property to pay Rents and Profits directly to Mortgagee, its agent or a court-appointed receiver and apply such Rents and Profits to the payment of:

(1)    all costs and expenses incident to taking and retaining possession of the Property, management and operation of the Property, keeping the Property properly insured and all alterations, renovations, repairs and replacements to the Property;

(2)    all taxes, charges, claims, assessments, and any other liens which may be prior in lien or payment to this Mortgage or the Note, and premiums for insurance, with interest on all such items; and

(3)    the indebtedness secured hereby together with all costs and attorneys' fees, in such order or priority as to any of such items as Mortgagee in its sole discretion may determine, any statute, law, custom or use to the contrary notwithstanding;

(C)    exclude Mortgagor, its agents and servants, wholly from the Property;

(D)    have joint access with Mortgagor to the books, papers and accounts of Mortgagor relating to the Property, at the expense of Mortgagor;

(E)    commence, appear in and/or defend any action or proceedings purporting to affect the interests, rights, powers and/or duties of Mortgagee hereunder, whether brought by or against Mortgagor or Mortgagee; and



(F)    pay, purchase, contest or compromise any claim, debt, lien, charge or encumbrance which in the judgment of Mortgagee may affect or appear to affect the interest of Mortgagee or the rights, powers and/or duties of Mortgagee hereunder.

The receipt by Mortgagee of any Rents and Profits pursuant to this Mortgage after the institution of foreclosure or other proceedings under the Mortgage shall not cure any such Event of Default or affect such proceedings or any sale pursuant thereto. After deducting the expenses and amounts set forth above in this section 3.02, as well as just and reasonable compensation for all Mortgagee's employees and other agents (including, without limitation, reasonable and actual attorneys' fees and management and rental commissions) engaged and employed, the moneys remaining, at the option of Mortgagee, may be applied to the indebtedness secured hereby. Whenever all amounts due on the Note and under this Mortgage shall have been paid and all Events of Default have been cured and any such cure has been accepted by Mortgagee, Mortgagee shall surrender possession to Mortgagor. The same right of entry, however, shall exist if any subsequent Event of Default shall occur; provided, however, Mortgagee shall be under any obligation to make any of the payments or do any of the acts referred to in this section 3.02.

3.03.    Judicial Action. Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants and agreements hereof. The Property may be foreclosed in parts or as an entirety.

3.04.    Foreclosure. Mortgagee may institute an action of mortgage foreclosure against the Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt and the Prepayment Premium, with interest thereon at the rate stipulated in the Note to the date of default, and thereafter at the Default Rate specified in the Note, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including any sums which may have been advanced or loaned by Mortgagee to Mortgagor after the date of this Mortgage, including Future Advances (including, but not limited to, all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance utilities or repairs to the Property), all costs of suit together with interest at the Default Rate on any judgment obtained by Mortgagee from and after the date of any sheriff or other judicial sale until actual payment is made of the full amount due Mortgagee. In addition, as an alternative to the right of foreclosure for the full amount secured hereby after acceleration thereof, Mortgagee shall have the right, to the extent permitted by law, to institute partial foreclosure proceedings with respect to the portion of said indebtedness so in default, as if under a full foreclosure, and without declaring the entire secured indebtedness due, and provided that if foreclosure sale is made because of default of a part of the secured indebtedness, such sale may be made subject to the continuing lien of this Mortgage for the unmatured part of the secured indebtedness, and it is agreed that such sale pursuant to a partial foreclosure, if so made, shall not in any manner affect the unmatured part of the secured indebtedness, but as to such unmatured part, this Mortgage and the lien thereof shall remain in full force and effect just as though no foreclosure sale had been made under the provisions of this section. Notwithstanding the filing of any partial foreclosure or entry of a decree of sale therein, Mortgagee may elect at any time prior to a foreclosure sale pursuant to such decree, to discontinue such partial foreclosure and to accelerate the secured indebtedness by reason of any uncured default or defaults upon which such partial foreclosure was predicted or by reason of any other defaults, and proceed with full foreclosure proceedings. It is further agreed that several foreclosure sales may be made pursuant to partial foreclosures without exhausting the right of full or partial foreclosure sale for any unmatured part of the secured indebtedness, it being the purpose to provide