of such work, or whether such materials have been delivered. Lender and its agents shall have the right, without either the obligation or the duty, to directly contact each contractor, subcontractor, and materialman to verify the facts disclosed by such list, and in so doing Lender or its agent shall not represent itself as the agent of Borrower.

6.10 Permits and Warranties. Borrower shall deliver to Lender originals or copies of (a) all permits and authorizations required in connection with the construction of the Improvements or the occupation or operation of the Property or any part thereof promptly upon issuance, and in any event before any act is done which requires the issuance of the respective permit or authorization, and (b) all warranties and guaranties received from any Person furnishing labor, materials, equipment, fixtures, or furnishings in connection with the Project or the Property.

6.11 Protection Against Liens and Claims.

(a) Borrower agrees to file or procure the filing of a valid notice of completion of construction of the Improvements, diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of construction on the Improvements for a continuous period of thirty (30) calendar days or more, and take all other reasonable steps to forestall the assertion of claims of liens against the Property or the Project or any part thereof. Borrower irrevocably appoints, designates, and authorizes Lender as its agent, said agency being coupled with an interest, with the authority upon the occurrence and continuance of an Event of Default, but without any obligation, to file for record any notices of completion, cessation of labor, or any similar or other notices that Lender deems reasonably necessary or desirable to protect its interests hereunder or under the Loan Documents.

(b) Upon demand by Lender, Borrower agrees to make such demands or claims as Lender shall specify upon any or all Persons who have furnished labor, service, equipment, or material to the Project. Borrower agrees to pay and obtain valid and enforceable lien releases or waivers from all Persons who have furnished labor, service, equipment, or material to the Project, except that Borrower shall not be required to pay any claim for labor, service, equipment, or material that is being contested in good faith by appropriate proceedings as long as no claim of lien has been recorded or, if a claim of lien has been recorded, within twenty (20) calendar days thereafter, Borrower either has obtained and recorded a surety bond, in form and substance satisfactory to Lender, sufficient to release the Property from the lien and from any action brought to foreclose the lien, or has caused the title insurer who has issued the Title Policy to issue, in form and substance satisfactory to Lender, an endorsement to the Title Policy insuring the priority of the lien of the Mortgage over the claim of lien.

(c) In the event that any Person furnishing labor, service, equipment, or material to the Project asserts a claim against Lender or the Undisbursed Construction Funds, Borrower shall, upon demand by Lender, take such action as Lender may require to release Lender and the Undisbursed Construction Funds from any obligation or liability with respect to such claim, including, without limitation, (i) if the claim is being contested in good faith by appropriate proceedings, obtaining a bond or other security, in form and substance satisfactory to Lender, or (ii) payment of such claim. If Borrower fails to take such action, Lender may, in its sole discretion, file

an interpleader action requiring all claimants to interplead and litigate their respective claims, and in any such action Lender shall be released and discharged from all obligations with respect to any funds deposited in court, and Lender's costs and expenses, including without limitation actual attorney's fees, shall be paid from such funds or from any other Undisbursed Construction Funds. Any such funds deposited in court and all costs and expenses of Lender in connection therewith shall constitute Disbursements under the Note.

6.12   Sale or Other Encumbrances. Borrower specifically agrees that:

(a)   In order to induce Lender to make the Loan, Borrower agrees that if Borrower shall sell, assign, transfer, convey, pledge, hypothecate, mortgage or encumber with financing other than that secured hereby, or otherwise alienate, whether voluntarily or involuntarily or by operation of law, the Property or any part thereof or any interest therein except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare the Note, including the prepayment fee, if applicable, secured hereby and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, (a) any change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) any change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Property or any interest therein to an entity which controls, is controlled by or is under common control with Borrower shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby. The transfer of an interest in the Property may materially alter and reduce Lender's security for the indebtedness secured hereby. Moreover, Lender has agreed to make its loan based upon the presumed value of the Property and the Rents and Profits (as such are defined in the Mortgage) thereof. Therefore, it will be a diminution of Lender's security if junior financing, except as shall be permitted Lender, or if other liens or encumbrances should attach to the Property. Lender hereby permits such subordinate financing as set forth on Exhibit "H" attached hereto, provided the Mortgage is in first position and such subordinated lender executes and delivers the Subordination Agreement in the form attached hereto as Exhibit "I" if required by the Title Company to issue the Title Policy.

(b)   Borrower may request Lender to approve a sale or transfer of the Property to a party who would become the legal and equitable owner of the Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c)   In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a Person or Persons other than Borrower the Lender may deal with such successor or successors in interest with reference to the Note or the Mortgage in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of



Borrower under the Note, the Mortgage or the other Loan Documents. No sale of Borrower's interest in the Property, no forbearance on the part of Lender, no extension of the time for the payment of the Mortgage indebtedness or any change in the terms thereof to which Lender consents shall in any way operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under the Note, the Mortgage and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless assume such obligations by acquiring the Mortgaged Property or such portion thereof subject to the Mortgage. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 6.12(a).

6.13    Removal of Personalty. Borrower shall not:

(a)    install in or otherwise use in connection with the Project any materials, equipment or fixtures under any security agreements or similar agreements however denominated whereby the right is reserved or accrues to anyone to remove or repossess any such items or whereby any Person other than Lender reserves or acquires a lien upon such items; or

(b)    remove or permit the removal of any fixtures or personalty located on the Property or used in connection with the Project, except for tools and construction equipment intended for use in connection with the construction of other improvements, unless actually replaced by an article of equal suitability and value, owned by Borrower free and clear of any lien or security interest other than the Security Documents.

6.14    Payment of Taxes, Assessments and Charges. Borrower shall pay, prior to delinquency, all taxes, assessments, charges and levies imposed by any Governmental Agency which are or may become a lien affecting the Property or any part thereof, including without limitation assessments on any appurtenant water stock; except that Borrower shall not be required to pay and discharge any tax, assessment, charge or levy that is being actively contested in good faith by appropriate proceedings, as long as Borrower has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles and, by reason of nonpayment, none of the property covered by the Security Documents or the lien or security interest of Lender is in danger of being lost or forfeited.

6.15    Insurance. The Borrower shall at all times maintain the following policies of insurance:

(a)    prior to completion of the Improvements, builder's "all risk" insurance ("completed value" form), including "course of construction" coverage, covering the Improvements and any Personal Property;

(b)    from and after completion of the Improvements, property "all risk" insurance covering the Improvements and any Personal Property;

25



(c) commercial general liability insurance in favor of the Borrower (and naming the Lender as an additional insured) in an aggregate amount not less than $2,000,000.00 (or such greater amount as may be reasonably specified by the Lender from time to time) combined single limit; and

(d) such other insurance as may be reasonably required by applicable Laws (including worker's compensation and employer's liability insurance) or as the Lender may reasonably require from time to time (including "all risk" insurance with respect to any other improvements now or in the future located on the Real Property and comprehensive form boiler and machinery insurance, if applicable, rental loss insurance and business interruption insurance).

The Borrower shall also cause any contractor and each subcontractor employed on the Property to maintain a policy of commercial general liability insurance and, upon request by the Lender, shall cause the Architect and any Engineer engaged in connection with the Project to maintain a policy of professional liability insurance, in each case for such periods and in such amounts as the Lender may reasonably require from time to time.

Each policy of builder's-risk and all-risk insurance required by this Section 6.15 shall be in an amount not less than the full replacement cost of the property covered by such policy, shall contain a "waiver of coinsurance" provision, a "full replacement cost" endorsement, a "Mortgagee Loss Payable" clause, and a "Betterments" or "Building Ordinance" endorsement, and shall insure the Property against flood loss risk to the maximum available policy amount if the Real Property is located in a "Flood Hazard Area" (as determined by the Federal Emergency Management Agency). Each policy of commercial general liability insurance required by this Section shall cover personal injury, property liability, and contractual liability, including coverage for Borrower's indemnity obligations under the Loan Documents, and shall name Lender as an "additional insured". The commercial general liability insurance shall also cover completed operations, and such insurance shall be primary and non-contributing with any other insurance available to the Lender. All insurance policies shall be in form and substance and issued by insurers reasonably satisfactory to the Lender, and shall contain such deductible and such endorsements as the Lender may reasonably require. Each policy shall require thirty (30) day written notice to Lender prior to any cancellation thereof. As a condition to funding the Loan, Borrower shall provide to Lender an ACORD 27 form certificate evidencing such policies. Upon request by the Lender from time to time, the Borrower shall deliver to the Lender originals or copies of all such insurance policies.

6.16 Title Insurance Endorsements. Borrower shall deliver or cause to be delivered to Lender, in form and substance reasonably satisfactory to Lender, CLTA endorsement numbers 100, 116, 116.7, and 122, or a substantially similar endorsement or endorsements, upon each Disbursement, to the Title Policy, and such other endorsements and binders as Lender may from time to time reasonably require.

6.17 Books and Records. Borrower shall: (a) maintain full and complete books of account and other records reflecting the results of its operations (in conjunction with any other business as well as specifically with respect to the Project) in accordance with generally accepted accounting principles applied on a consistent basis; and (b) permit Lender and its agents, at any reasonable time

and from time to time, upon twenty-four (24) hours telephonic notice to Borrower, to inspect and copy all of such books and records, including without limitation any books and records pertaining to the Project or the Project Documents.

6.18    Entry and Inspection. Lender and its agents shall, at all times, upon twenty-four (24) hours telephonic notice to Borrower, have the right of entry and free access to the Project and the right to inspect all work done, labor performed, and materials furnished in and about the Project. If, at any time, Lender determines, in its reasonable discretion, that regular inspections of the Project are required, the Borrower shall allow free access to such inspector. Such inspection shall be performed at Borrower's expense, with the actual cost thereof, reasonably incurred, to be paid by Borrower upon five (5) days notice from Lender.

6.19    Physical Security of Project. Borrower shall take appropriate measures to protect the physical security of the Project and the Property.

6.20    Reporting and Requirements. Borrower shall cause to be delivered to Lender, in form and detail satisfactory to Lender:

(a)    promptly upon Borrower's learning thereof, notice of:

(i)    any litigation affecting or relating to Borrower, the Guarantor, the Property, or the Project;

(ii)    any dispute between Borrower and any Governmental Agency relating to the Property or the Project, the adverse determination of which would adversely affect the Property or the Project;

(iii)    any threat or commencement of proceedings in condemnation or eminent domain relating to the Property;

(iv)    any Event of Default or event which, with the giving of notice and/or the passage of time, could become and Event of Default; and

(v)    any change in the executive management personnel of Borrower.

(b)    as soon as available, and in any event within thirty (30) calendar days after the end of each month during the term of the Loan, a status report for the Project for the month most recently ended (which status report shall contain an itemized breakdown of the progress of construction, sales of lots, the gross revenues and all costs and expenses with respect to the Project for such month), in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis, and certified as accurate by an officer of Borrower;

(c)    as soon as available, and in any event within forty-five (45) calendar days after the close of each fiscal quarter of Borrower and the Guarantor, quarterly financial statements applicable to Borrower and the Guarantor, all in reasonable detail and prepared in accordance with



generally accepted accounting principles applied on a consistent basis;

(d) as soon as available, and in any event within ninety (90) calendar days after the close of each fiscal year of Borrower, annual financial statements applicable to Borrower, all in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis;

(e) as soon as available, and in any event within ninety (90) calendar days after the close of each fiscal year of the Guarantor, annual financial statements applicable to the Guarantor, all in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis;

(f) promptly upon receipt thereof, any audited financial information applicable to Borrower or the Guarantor; and

(g) such other information relating to Borrower, the Guarantor, the Property and/or the Project as Lender may reasonably request from time to time, including without limitation (i) tax returns, to be provided concurrently with the filing thereof with the relevant government authority or (ii) if Borrower or the Guarantor receive an extension from the relevant governmental authority for filing a tax return, satisfactory evidence of such extension.

6.21 Surveys. Borrower agrees to furnish Lender all of the following:

(a) a perimeter survey of the Property (a copy of the Subdivision Map of the Property shall satisfy this requirement); and

(b) upon request by Lender, immediately upon completion of the Improvements, a survey made and certified by a licensed engineer or surveyor showing the locations of the Improvements located on the Property and showing that the Improvements are located entirely within the Property lines and do not encroach upon any easement, or breach or violate any Law or any covenant, condition or restriction of record, or any building or zoning ordinance.

6.22 Management of Property and Project. Borrower shall not enter into any agreement providing for the management, leasing or operation of the Property or the Project without the prior written consent of the Lender, which consent shall not be unreasonably withheld.

6.23 Defense of Vested Right, Modification of Vested Rights. Borrower shall at all times, at its own cost and expense take, pursue and assert all such actions and defenses as are necessary to perfect, maintain and protect its vested development rights with respect to the Property. Should Borrower fail to do so, Lender may do so either in its own name or the name of the Borrower, and all reasonable unrecovered fees, costs and expenses incurred by Lender in connection therewith shall be payable by Borrower to Lender on demand, shall bear interest at the Default Rate specified in the Note, and shall be secured by the Mortgage. Borrower shall not modify, amend, cancel, terminate or otherwise alter any development rights or entitlements with respect to the Property, without Lender's prior written consent, which consent shall not be unreasonably withheld.

6.24   No Gifting.  Until this Loan has been fully repaid, Borrower agrees not to transfer more than a total of five percent (5%) of its assets unless receiving full consideration therefore without the written permission of Lender.

6.25   ERISA Reports.  As soon as possible, and in any event within thirty (30) days after the Borrower knows or has reason to know that any circumstances exist that constitute grounds entitling the PBGC to institute proceedings to terminate a Plan subject to ERISA with respect to the Borrower or any Commonly Controlled Entity, and promptly but in any event within two (2) Business Days of receipt by the Borrower or any Commonly Controlled Entity of notice that the PBGC intends to terminate a Plan or appoint a trustee to administer the same, and promptly but in any event within five (5) Business Days of the receipt of notice concerning the imposition of withdrawal liability with respect to the Borrower or any Commonly Controlled Entity, the Borrower will deliver to the Lender a certificate of the chief financial officer of the Borrower setting forth all relevant details and the action which the Borrower proposes to take with respect thereto.

6.26   Debt.  Create, incur, assume, or suffer to exist, or permit any Subsidiary to create, incur, assume, or suffer to exist, any Debt, except:

   (a)   Debt of the Borrower under this Agreement or the Note;

   (b)   Debt described in Exhibit "I", but no voluntary prepayments, renewals, extensions, or refinancings thereof;

   (c)   Debt of the Borrower subordinated on terms satisfactory to the Lender to the Borrower's Liabilities;

   (d)   Accounts payable to trade creditors for goods or services which are not aged more than sixty (60) days from the billing date and current operating liabilities (other than for borrowed money) which are not more than forty five (45) days past due, in each case incurred in the ordinary course of business, as presently conducted, and paid within the specified time, unless contested in good faith and by appropriate proceedings; Debt of the Borrower or any Subsidiary secured by purchase-money Liens permitted by Section 8.1(i).

6.27   Guaranties, Etc.  Assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable, or permit Borrower, Guarantor or any Subsidiary to assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable (including, but not limited to, an agreement to purchase any obligation, stock, assets, goods, or services, or to supply or advance any funds, assets, goods, or services, or an agreement to maintain or cause such Person to maintain a minimum working capital or net worth, or otherwise to assure the creditors of any Person against loss) for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

**SECTION 7: EVENTS OF DEFAULT AND REMEDIES UPON DEFAULT.**

7.1  Events of Default. The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an Event of Default hereunder:

(a)  Borrower shall fail to pay when due any installment of principal or interest on the Note or any other amount owing under this Agreement or the other Loan Documents; provided, however, that if payment is received within five (5) days of the due date, the default for late payment shall be excused without any late charge or penalty attaching; or

(b)  Borrower or the Guarantor shall fail to perform or observe any term, covenant or agreement contained in any of the Loan Documents on its part to be performed or observed, other than the failure to make a payment covered by Section 7.1(a), and such failure shall continue uncured as of fifteen (15) calendar days after the occurrence of such failure; provided, however, that if Borrower has commenced to cure the default within said 15-day period and is diligently pursuing such cure, but the default is of such a nature that it cannot be cured within 15 days, then the cure period shall be extended for the number of days necessary to complete the cure, but in no event shall the total cure period be longer than 45 days (the cure period set forth in this Section 7.1(b) shall not apply to any other Events of Default); or

(c)  any representation or warranty in any of the Loan Documents or in any certificate, agreement, instrument or other document made or delivered pursuant to or in connection with any of the Loan Documents proves to have been incorrect in any material respect when made; or

(d)  the Project, or any portion thereof, is not completed in conformity with the Improvement Plans in an orderly and expeditious manner, free and clear of mechanic's, materialmen's, or other liens asserted by suppliers of labor, service, equipment, or material to the Project (except for liens for which Borrower has provided a surety bond pursuant to Section 6.11 hereof); or

(e)  work ceases on the Project for thirty (30) consecutive calendar days for any reason whatsoever; or

(f)  the Property is destroyed by fire or other casualty or damaged thereby to an extent that would, in Lender's reasonable judgment, prevent or preclude the completion of the Project in conformity with the Improvement Plans in an orderly and expeditious manner; or

(g)  any condition or circumstance arises or exists at any time by reason of governmental order, decree, or regulation, shortage of materials, or for any other reason whatsoever that would, in Lender's reasonable judgment, prevent or preclude the completion of the Project in conformity with the Improvement Plans in an orderly and expeditious manner; or

(h)  Borrower is enjoined by any Governmental Agency from constructing the Improvements or performing its obligations hereunder, such injunction is not released or stayed within thirty (30) calendar days after the granting thereof, and Lender reasonably determines that such injunction may prevent or preclude the completion of the Project in conformity with the



Improvement Plans in and orderly and expeditious manner; or

(i) Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or the Guarantor are sold or otherwise transferred without Lender's written consent; or

(j) Borrower or the Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or the Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer ("Receiver"); or a Receiver is appointed without the application or consent of Borrower or the Guarantor, as the case may be, and the appointment continues undischarged or unstayed for thirty (30) calendar days; or Borrower or the Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or the Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or against Borrower or the Guarantor, and is not released, vacated or fully bonded within sixty (60) calendar days after such issue or levy; or

(k) there shall occur a material adverse change in the financial condition of Borrower or the Guarantor from their respective financial conditions as of the date of the Note, as determined by Lender in its reasonable discretion, and Lender reasonably believes that such adverse change shall jeopardize (i) Lender's ability to collect the amounts due under the Note, as they become due, or (ii) Lender's ability to foreclose on the Mortgaged Property; or

(l) the Contractor shall cease to act as general contractor for the Project, and Borrower shall fail to obtain Lender's approval of a new general contractor within twenty (20) calendar days thereafter; or

(m) any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction, or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or the Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(n) any Governmental Agency condemns, seizes or appropriates all or a substantial portion of the Property; or

(o) any lien or security interest created by any Security Document, at any time

31

after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(p) any default occurs in any Loan Document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any Loan Document regarding any loan or other obligation secured by the Property or any portion thereof.

7.2 Remedies Upon Default. Upon the occurrence of any Event of Default, Lender may, at its option, do any or all of the following:

(a) declare the principal of all amounts owing under the Note, this Agreement and the other Loan Documents and other obligations secured by the Security Documents, together with interest thereon, and any other obligations of Borrower to Lender to be forthwith due and payable, regardless of any other specified maturity or due date, without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, and without the necessity of prior recourse to any security;

(b) take possession of the Property and, at Lender's option, let contracts for, or otherwise proceed to finish the Improvements and pay the cost thereof; and if Lender advances its own funds for such purposes, such funds shall be considered advanced under the Note and shall be secured by the Security Documents, notwithstanding that such advances may cause the total amount advanced under the Note to exceed the face amount of the Note or the amount Lender is committed to advance pursuant to this Agreement, and Borrower shall immediately upon demand reimburse Lender therefor, together with interest thereon as if such advances were advances under the Note, from the date of such advance until the date of reimbursement (nothing contained in this Section 7.2(b) or elsewhere in this Loan Agreement shall be construed to make Lender a "mortgagee in possession" unless and until Lender actually takes possession of the Property either in person or through an agent or receiver);

(c) terminate all Disbursements from the Control Account Funds and immediately demand from the Disbursement Agent all of the Control Account Funds then on deposit with Disbursement Agent;

(d) terminate all rights of Borrower and obligations of Lender under the Loan Documents;

(e) exercise its right and power to sell, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of the Personal Property, or any part thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without

32

liability for damages thereby occasioned, or at Lender's option Borrower shall assemble the Personal Property and make it available to the Lender at the place and the time designated in the demand; and

(f) exercise any and all of its rights under the Loan Documents, including but not limited to the right to take possession of and foreclose on any security, and exercise any other rights with respect to any security, whether under the Security Documents or any other agreement or as provided by Law, all in such order and in such manner as Lender in its sole discretion may determine.

7.3 Cumulative Remedies; No Waiver. All remedies of Lender provided for herein are cumulative and shall be in addition to any and all other rights and remedies provided in the other Loan Documents or provided by Law from time to time. The exercise of any right or remedy by Lender hereunder shall not in any way constitute a cure or waiver of any default hereunder or under any of the other Loan Documents, nor invalidate any notice of default or any act done pursuant to any such notice, nor prejudice Lender in the exercise of any rights hereunder or under the Loan Documents. No waiver by Lender of any default by Borrower hereunder shall be implied from any omission by Lender to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default expressly made the subject of the waiver. Any such express waiver shall operate only for the time and to the extent therein stated. Any waiver of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. Lender's consent to or approval of any act by Borrower requiring further consent or approval shall not waive or render unnecessary consent to or approval of any subsequent act.

## SECTION 8: MISCELLANEOUS.

8.1 Performance by Lender. In the event that Borrower shall default in or fail to perform any of its obligations under the Loan Documents, Lender, without limiting any of its rights, may, but is not obligated to, perform the same, and Borrower agrees to pay to Lender, within five (5) days after demand, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.2 Actions. Provided Borrower has not promptly so acted, Lender shall have the right to commence, appear in, and defend any action or proceeding purporting to affect the rights or duties of the parties hereunder or the payment of any funds, and in connection therewith Lender may pay necessary expenses, employ counsel, and pay reasonable attorneys' fees. Borrower agrees to pay to Lender, within five (5) after demand, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.3 Advances Obligatory. Anything herein to the contrary notwithstanding, the parties specifically understand and agree that any advances that Lender makes pursuant to this Agreement, including, but not limited to, all funds advanced by Lender, shall be advanced under an obligation to do so, regardless of the person or entity to whom such advance is made. Advances made in the



reasonable exercise of Lender's judgment that such are necessary to complete the Improvements or to protect its security are obligatory advances hereunder and are to be secured by the Note and Mortgage, and such security shall relate back to the original recording of the Mortgage.

    8.4    Nonliability of Lender. Borrower acknowledges and agrees that:

    (a)    any inspections of the Property, of the construction, or of the Improvements made by or through Lender are for purposes of administration of the Loan only and Borrower is not entitled to rely upon the same with respect to the quality, adequacy or suitability of materials or workmanship, conformity to the plans therefor, state of completion or otherwise; Borrower shall make its own inspections of such construction to determine that the quality of the Improvements and all other requirements of such construction are being performed in a manner satisfactory to Borrower and as required by the Improvement Plans and all applicable Laws; and Borrower shall immediately notify Lender, in writing, should the same not conform to the plans therefor and all applicable laws;

    (b)    by accepting or approving anything required to be observed, performed, fulfilled or given by or to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss or other financial statement, survey, appraisal, lease or insurance policy, Lender does not thereby warrant or represent the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not constitute a warranty or representation to anyone with respect thereto by Lender;

    (c)    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of any matter in connection with the Project, including without limitation matters relating to the quality, adequacy or suitability of: (i) any plans or specifications, (ii) architects, contractors, subcontractors and materialmen employed or utilized in connection with the construction of the Improvements, or the workmanship of or the materials used by any of them, or (iii) the progress or course of any construction and its conformity or nonconformity with the plans therefor. Borrower shall rely entirely upon its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or information that Lender supplies to Borrower in connection with such matters is for the protection of Lender only and neither Borrower nor any third party is entitled to rely thereon;

    (d)    Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction;

    (e)    Borrower and Lender's relationship under the Loan Documents is, and at all times shall remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any other Person with respect to the Property or Loan, except as expressly provided in the Loan Documents. Notwithstanding any other provision of the Loan Documents: (i) Lender is not, and shall not be construed as a partner, joint venturer, alter-ego, manager, controlling person or an insider or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with the Loan Documents shall not be "outside the scope of the activities of a lender of



money" under Nevada law, as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property or Improvements; and (iii) Lender shall not be responsible for or a participant in any acts, omissions or decisions of Borrower; and

(f) Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any Person or property arising from any construction on, or occupancy or use of, any of the Property, whether caused by, or arising from: (i) any defect in any building, structure, soil condition, grading, fill, landscaping, or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on any of the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower, any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain any of the Property in a safe condition; and (v) any nuisance made or suffered on any part of the Property.

8.5   No Third Parties Benefitted. This agreement is made for the purpose of defining and setting forth certain obligations, rights and duties of Borrower, Lender and USA in connection with the Loan. It constitutes a supplement to the Note and the Security Documents, and is not a modification of the Note or the Security Documents, except as provided herein. It is made for the sole protection of Borrower, Lender, and USA, and their successors and assigns. No other Person shall have any rights of any nature hereunder of by reason hereof.

8.6   Indemnity. Borrower indemnifies Lender against, and holds Lender harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, cause of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses, including reasonable attorneys' fees, which Lender may suffer or incur as a direct or indirect consequence of: (a) Lender's performance of this Agreement or any of the Loan Documents, including, without limitation, Lender's exercise or failure to exercise any rights, remedies or powers in connection with this Agreement or any of the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon the Lender in the normal course of the Lender's business such as taxes and regulatory fees; (b) Borrower's failure to perform any of Borrower's obligations as and when required by this Agreement or any of the other Loan Documents, including, without limitation, any failure, at any time, of any representation or warranty of Borrower to be true and correct and any failure by Borrower to satisfy any condition; (c) any claim or cause of action of any kind by any Person to the effect that Lender is in any way responsible or liable for any act or omission by Borrower, whether on account of any theory of derivative liability or otherwise, including but not limited to any claim or cause of action for fraud, misrepresentation, tort or willful misconduct; (d) any act or omission by Borrower, any contractor, subcontractor or material supplier, engineer, architect, or any other Person with respect to any of the Property or Improvements; or (e) any claim or cause of action of any kind by any Person which would have the effect of denying Lender the full benefit or protection of any provision of this Agreement or the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon Lender in the normal course of Lender's business such as taxes and

regulatory fees. Lender's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Lender's conduct is active, passive or subject to any other classification or that Lender is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Borrower or any other Person. Notwithstanding the foregoing, Borrower shall not be obligated to indemnify Lender with respect to any intentional tort or act of negligence which Lender is personally determined by the judgment of a court of competent jurisdiction (sustained on appeal, if any) to have committed. Borrower shall pay any indebtedness arising under this indemnity to Lender immediately within five (5) days after demand therefor by Lender together with interest thereon from the date such indebtedness arises until paid at the Default Rate. Borrower's duty to defend and indemnify Lender shall survive the release and cancellation of the Note and the release and reconveyance or partial release and reconveyance of the Mortgage.

8.7   Commissions. Borrower hereby indemnifies Lender from the claim of any Person for a commission or fee in connection with the Loan.

8.8   Lenders' Representative. The persons and entities which comprise Lender hereby collectively appoint USA Commercial Mortgage Company ("USA") to administer the Loan on their behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder.

8.9   Binding Effect; Assignment. This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns; however, except as provided herein, Borrower may not assign its rights or interest or delegate any of its duties under this Agreement or any of the other Loan Documents without prior written consent of Lender.

8.10   Amendments; Consents. No amendment, modification, supplement, termination or waiver of any provision of this Agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, may, in any event, be effective unless in writing signed by Lender, and then only in the specific instance and for the specific purpose given.

8.11   Costs, Expenses and Taxes. Borrower shall pay to Lender, within five (5) days after demand therefor:

(a)   the actual reasonable attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Documents and any matter related thereto;

(b)   the actual costs and expenses of Lender in connection with any modification of any Loan Document or in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the actual fees and out-of-pocket expenses, reasonably incurred, of any legal counsel, independent public accountants and other outside experts retained by Lender; and

(c)   all costs, expenses, fees, premiums and other charges relating or arising with

respect to the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including, without limitation, the Disbursement Agent's fee, appraisal fees, inspection fees, cost review fees, recording fees, filing fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums that Lender pays or expends under the terms of this Agreement and the other Loan Documents are a part of the Loan. Except as otherwise specifically stated herein, all such sums shall be secured by the Security Documents, shall bear interest from the date of expenditure as if such sums were advances under the Note, and shall be immediately due and payable by Borrower within five (5) days after demand therefor.

8.12    Survival of Representations and Warranties. All representations and warranties of Borrower and the Guarantor contained herein or in any other Loan Document shall survive the making of the Loan and execution and delivery of the Note, are material, and Lender has or will rely upon them, notwithstanding any investigation made by or on behalf of Lender. For the purpose of the foregoing, all statements contained in any certificate, agreement, financial statement, or other writing delivered by or on behalf of Borrower or the Guarantor pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby constitute representations and warranties of Borrower or the Guarantor contained herein or in the other Loan Documents, as the case may be.

8.13    Notices. All notices to be given pursuant to this Agreement shall be sufficient if given by personal service, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**   Binford Medical Developers LLC
5200 E. 64th St.
Indianapolis, IN 46220
Attn. Kenneth E. Schmidt

with a copy to:   Hostetler & Kowalik, P.C.
101 W. Ohio Street, Suite 2100
Indianapolis, IN 46204-4211
Attn. John W. Graub II

**LENDER'S ADDRESS:**   USA Commercial Mortgage Company.
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn: Joe Milanowski

with a copy to:   Goold Patterson Ales & Day

37

4496 South Pecos Road
Las Vegas, Nevada 89121
Attn. Bryan K. Day

8.14  Further Assurances.  Borrower shall, at its sole expense and without expense to Lender, do such further acts and execute and deliver such additional documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest or lien under any Security Document.

8.15  Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)  The laws of the State of Nevada, without regard to its choice of law provisions, shall govern the construction and enforcement of the Loan Documents.

(b)  BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 8.13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)  BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS,



PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

8.16    Severability of Provisions.  Any provision in any Loan Document that is held to be inoperative, unenforceable or invalid shall be inoperative, unenforceable or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

8.17    Assignment or Sale of Participation by Lender; Advertising.  Lender may, at any time, sell, transfer, assign or grant participation in the Loan and in the Loan Documents and Lender may forward to its partners or to such participant and prospective participant all documents and information relating to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable.  Lender and USA may also reasonably divulge and advertise the making of the Loan and the amount thereof.

8.18    Headings.  Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

8.19    Time of the Essence.  Time is of the essence with respect to all duties and obligations of Borrower under any Loan Document..

(Signature page follows)

39



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**    Binford Medical Developers, LLC

By: _____
    Kenneth E. Schmidt, Manager

**LENDER:**

By: _____    By: _____

G:\HOME\BKD\2800 USA\004 Binford Medical\Loan Agr3.wpd