Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED on January 2, 2007

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br>Chapter 11<br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **USA COMMERCIAL MORTGAGE COMPANY'S SUPPLEMENTAL OPPOSITION TO MOTION FOR ORDER TEMPORARILY ALLOWING THE CLAIM OF DEL AND ERNESTINE BUNCH FOR VOTING PURPOSES** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | Date: January 3, 2007<br>Time: 1:30 p.m. |

USA Commercial Mortgage Company ("USACM"), by and through its counsel, hereby files its Supplemental Opposition to Motion For Order Temporarily Allowing The Claim of Del And Ernestine Bunch For Voting Purposes (the "Motion"). USACM has analyzed the Bunches' Claim and Second Supplemental Opposition still asserts that said claim should be disallowed under section 502(d) of the Bankruptcy Code. It is still undisputed that Del and Ernestine Bunch dba Loan Partners Capital ("Bunch") were recipients of transfers of $217,000 and $196,000 from USACM made to them within 90 days prior to the Petition Dates that are avoidable under Bankruptcy Code § 547(b) as preferential transfers unless the Bunch's can establish a defense under Bankruptcy Code § 547(c)(2) still fails because Bunches have not and cannot show that "the payment by the debtor was in payment of *a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee*", the first prong of Bankruptcy Code § 547(c)(2).[1]

**FACTS**

At his examination under oath on December 19, 2006, Del Bunch admitted that he received a payment 0f $217,000 on February 7, 2006 and a payment of $196,000 on March 10, 2006 from USACM. The record also shows:

a. Bunch's loan was a $10,000,000 loan made over a period of 4 years, under the terms of the agreement, USACM had to accept Bunch's funds as a loan;

b. Bunch's loan incurred and was paid interest at the rate of 20% per annum;

c. Bunch's loan was due in February, 2005 and was not paid;

d. In February, 2005, a late change of 5% ($500,000) was incurred;

e. Beginning February, 2005, default interest at the rate of 24% per annum was incurred and paid;

f. In February, 2005, the loan was extended for a year and was due in February, 2006;

g. In February, 2006, the loan was not paid;

h. In February, 2006, a late charge of 5% ($525,000) was incurred;

---

[1] USACM agrees that the BAPCPA-revised version of § 547(c)(2) is applicable. The revised version makes the second and third prong of the section alternatives but still requires the first prong be met in every case.

   i. Interest at the rate of 24% per annum was incurred and paid.

There is no evidence that USACM had any similar loan. There is no evidence of any other loan which required:

  a. USACM to accept funds at the lenders convenience as was done with the Bunch loan (Transcript, page 51, lines 3-25);

  b. To pay 20% per annum interest (see Promissory Note);

  c. To pay 5% late charges; and

  d. To pay 24% per annum default interest;

Del Bunch identified the financial statements he received from USACM (Deposition and Hearing Exhibit "G") and they show (a) in 2000, that the other "notes payable" by USACM had interest rates from 12% to 15%.(b) in 2002, that the other notes payable had interest rates from 7% to 20%, (c) in 2003, that the other notes payable had interest rates from 8% to 10%, and (d) in 2004, that the other notes payable had interest rates from 12.5% to 15%. There is no evidence that Bunch made loans to any other mortgage company and no evidence that he made loans to any other mortgage company on similar terms.

The documentation provided by Bunch shows that all but three of his checks were made payable to "USA Commercial Mortgage Investors Trust." Deposition and Hearing Exhibit "F." The Declaration of Susan M. Smith shows that, at least since January, 2005, the payments to Bunch were electronically transferred from the account entitled "USA Commercial Mortgage Collection Trust Account." This was the account into which borrower payments were deposited and from which Direct Lender distributions were made.

## MEMORANDUM OF LAW

### A. Bunch Fails to Meet the First Prong of Bankruptcy Code § 547(c)(2)

Bunch is, apparently, conceding that the provisions of Bankruptcy Code § 547(b) have been met. Bunch is, apparently, conceding that Bankruptcy Code § 547(d) requires the disallowance of his *entire* claim if the existence of a preferential transfer is shown. Bunch is alleging he has a defense under Bankruptcy Code § 547(c)(2). Bankruptcy Code §

547(c)(2) has three prongs and after the enactment of BAPCPA, the second and third are disjunctive.[2] Even under BAPCPA, Bunch has the burden of proof on the required elements. See § 547(g).

Both before and after BAPCPA, the first prong is required. The first prong "focuses on the nature of the original transaction creating the debt and whether it was ordinary." *In re GS Inc.,* --- B.R. ----, 2006 WL 2923519 (Bankr. E.D.Ark. 2006); *In re Armstrong*, 231 B.R. 723, 730 (Bankr. E.D.Ark. 1999).

> The first element requires an examination into "the normality of such incurrences (sic) in each party's business operations generally." *See Speco Corp. v. Canton Drop Forge Inc.,* 218 B.R. 390, 398 (S.D.Ohio 1998) (citations omitted); *see also* 5 COLLIER ON BANKRUPTCY P.547.04[2][a][ii][A] (15th ed. rev.2006). Typically, this inquiry requires the Court to determine whether there is anything unusual about the transactions underlying the preferential payment. *See* COLLIER *id.* Courts have examined the following factors in making this determination (i) was the debt typical and (ii) was it incurred at arms length in the marketplace. *See Huffman v. New Jersey Steel Corp.,* 182 B.R. 726, 735 (W.D.Va.1995). It has also been held that showing that a transaction occurred often, or regularly, is sufficient to demonstrate the debt was incurred regularly. *See id.; see also, Campbell v. Cannington (in re Economy Milling Co., Inc.),* 37 Bankr.914, 922 (D.S.C.1983)(stating that regular or extensive volume of transactions is not necessary, implying that such a showing would indeed be more then sufficient).

*In re Ameri P.O.S. Inc.*, --- B.R. ----, 2006 WL 3231274 (Bankr. S.D.Fla. 2006)(page 4). See also, *In re Toy King Distributors, Inc.,* 256 B.R. 1, 114 (Bankr. M.D.Fla. 2000) ("To satisfy this Section 547(c)(2)(A) element, the defendant must demonstrate that the "original transaction creating the debt" is within the ordinary course of dealing between the parties. *Grove Peacock Plaza,* 142 B.R. at 518. The focus is on the "nature of the original transaction creating the debt." *Id.*").

It is important to remember that, under this first prong of § 547(c)(2), Bunch has to show that the original transaction was in the ordinary course of business for both Bunch *and* USACM. The first part of § 547(c)(2) requires that the *original* transaction, not the subsequent payments, be

---

[2] Under the BAPCPA-revised version of Bankruptcy Code § 547(c)(2), this second prong is designated as subsection A. Under the previous version, the first prong was designated as subsection A and the second prong was designated as subsection B.

ordinary for both the lender and the borrower.[3] In *In re Armstrong*, 231 B.R. 723, 730 (Bankr. E.D.Ark. 1999), the Court found the 547(c)(2) defense was not available to Harrah's because, while the credit transaction was ordinary in Harrah's gambling business, it was not ordinary for the gambler. The bankruptcy court stated:

> This does not end the analysis under section 547(c)(2)(1), however, inasmuch as the statute also requires that the credit be extended in the ordinary course of the debtor's financial affairs. *See Matter of Milwaukee Cheese Wisconsin, Inc.,* 112 F.3d 845, 848 (7th Cir.1997); *DuVoisin v. Coker ( In re Southern Indus. Banking Corp.),* 189 B.R. 697 (E.D.Tenn.1992); *cf. Fitzgerald v. Beesley (In re Beesley),* 139 B.R. 247, 248 (Bankr.D.Idaho 1992) (sale of boat not within ordinary course of debtor's business since the debtor's business was the sale of mobile homes).

To this point in time, Bunch has not presented any supporting evidence in support of this first prong of the "ordinary course" defense. It is unlikely that he would be able to do so because his loan was (a) the only loan to USACM which allowed the lender to determine when and in what amounts (up to $10,000,000) the loan was to be; (b) the only loan to USACM which required 20% per annum interest; (c) the only loan to USACM which required 24% per annum default interest (since February, 2005); (d) the only loan to USACM which required a 5% late fee ($500,000 in February 2005 and $525,000 in February, 2006). To prove his defense, Bunch would have to show that mortgage lending companies *ordinarily* borrow on these terms. For example, in *In re Grove Peacock Plaza, Ltd.*, 142 B.R. 506 (Bankr. S.D.Fla. 1992), the first prong was met because the loan was made by real estate investors to a real estate developer. The business of real estate investors was the lending of monies for construction and development of real property. The debtor had been formed to develop the subject property.

**B.    The Ordinary Course Defense Is Not Available For Payments Received In A *Ponzi*-like Scheme**

Case law indicates that payments made in a *Ponzi* scheme are not considered to have been made in the "ordinary course." The Ninth Circuit has repeatedly ruled that the ordinary course defense cannot be used to shield payments made as part of a "ponzi" scheme. *See Henderson v. Buchanan*, 985 F.2d 1021, 1025 (9th Cir. 1993); *In re Bullion Reserve of North America,* 836 F.2d

---

[3] Thus, the fact that the monthly payments were made with regularity are irrelevant to meeting the first

1214, 1219 (9th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 819 F.2d 214, 216-17 (9th Cir.1987); *Cf. In re American Continental Corp.*, 142 B.R. 894 (D.Ariz. 1992) (not applying rule to innocent investors); *Cf. In re Hedged-Investments Associates, Inc.,* 48 F.3d 470 (10th Cir. 1995) (applying the rule to innocent investors but not applying the rule to trade creditors).

In *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 600 (Bankr. N.D.Cal. 1994), it was held that a lender could not rely on "ordinary course of business" defense in order to shield, from avoidance as preferential transfers, interest payments made by debtor on promissory note found to constitute a fraudulent transfer; debtor's payments on debt incurred through fraudulent transfer was not payment on debt incurred "in the ordinary course of business," within meaning of statutory exception to trustee's preference-avoidance power. The Bankruptcy Court stated:

> Most disputes over the ordinary course of business defense revolve around elements (B) and (C). Element (A) "is not often litigated and is usually easily satisfied in the case of transactions with unrelated parties for general business purposes." *White v. Bradford, et al. (In re Tax Reduction Institute),* 148 B.R. 63, 72 (Bankr.D.D.C.1992). However, the PDRA/HBK/Spitters loan agreement was far from a normal, "ordinary course of business" event. As this Court has found, it was a constructively fraudulent transfer. Logic and the plain meaning of the statute argue against the affirmation of the ordinary course of business defense in this case.
> The Ninth Circuit has repeatedly ruled that the ordinary course defense cannot be used to shield payments made as part of a "ponzi" scheme. [Citations omitted.] While the argument of these cases that the ordinary course defense should be reserved for recurring trade creditors such as utilities has been obviated by *Union Bank v. Wolas (In re ZZZZ Best Co., Inc.),* 502 U.S. 151, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991), they still stand for the proposition that the debtor's original business transactions (that sparked the repayments) must not be improper.

In this case, it appears, from the evidence, the Bunch's loan was far from normal and was used to continue the *Ponzi*-like scheme engaged in by USACM under the direction of Milanowski and Hantges. Bunch's "loans" were directed to the USA Commercial Mortgage Investor Trust account - an account that under state law should only hold the funds of persons making investments in mortgage loans. NRS 645B.175(1) requires a mortgage company to maintain a trust account for money received from investor to fund loan. As stated in the Declaration of Susan

prong of Bankruptcy Code § 547(c)(2).

M. Smith, Bunch was paid out of the USA Commercial Mortgage Collection Trust Account – an account that under state law should only hold funds collected on mortgage loans for the benefit of investors in those loans. NRS 645B.175(4) requires a mortgage company to maintain a trust account for collection of payments. NRS 645B.175(4) further provides:

> (b) Be kept separate from money:
>   (1) Belonging to the mortgage broker in an account appropriately named to indicate that it does not belong to the mortgage broker.
>   (2) Received pursuant to subsection 1.

The Nevada statutory scheme makes it clear that the funds of the mortgage broker are not to be commingled with the funds of investors. NRS 645B.180. However, as to Bunch's loans and repayments, this is exactly what was done. The purpose of pointing this out is not to assert that Bunch was a participant in the *Ponzi*-like scheme operated by USACM's prior management but to point out that USACM was operated, at least in part, as a *Ponzi*-like scheme. Bunch, like the innocent investors in Western World Funding, Bullion Reserve of North America and Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., can not use the ordinary course defense to preferential transfers they received.

## CONCLUSION

Based upon the facts that that show a prima facie case for a avoiding the February and March, 2006 payments to Bunch as § 547 preferences, the lack of a defense and the clear mandate of § 502(d) to disallow claims of persons who received preferences, this Court should find that Bunch's claim will be disallowed and should be estimated to be $0.

    /s/ Lenard E. Schwartzer
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146
and
Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385