GORDON & SILVER, LTD.
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: gmg@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: geg@gordonsilver.com
BRIGID M. HIGGINS, ESQ.
Nevada Bar No. 5990
E-mail: bmh@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for the Official Committee
of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

E-FILED: JANUARY 2, 2007

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                        Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                        Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                        Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                                        Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                                        Debtor.<br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br><br><br><br>Date: December 19, 2006<br>Time: 10:00 a.m. |

**OBJECTION OF THE OFFICIAL COMMITTEE OF DIRECT LENDERS' TO THE [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER CONFIRMING THE "DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION," [AS MODIFIED HEREIN]
AND
[PROPOSED] ORDER CONFIRMING THE "DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION," [AS MODIFIED HEREIN]**

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/445305.doc

The Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company ("Direct Lenders Committee") by and through its attorneys Gordon & Silver, Ltd., with regard to the [Proposed] Findings Of Fact And Conclusions Of Law In Support Of Order Confirming The "Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization," As Modified Herein ("Proposed Findings") and [Proposed] Order Confirming The "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization," As Modified Herein ("Proposed Order") files this limited objection thereto.

## POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

1. On December 7, 2006, a Notice of Revised Asset Purchase Agreement By and Among USA Commercial Mortgage Company, and USA Capital First Trust Deed Fund, LLC ("Sellers"), USA Capital Diversified Trust Fund, LLC, USA Capital Realty Advisors, LLC, and USA Securities, LLC, ("Acknowledging Parties") and Compass Partners, LLC ("Purchasers") ("Notice") was filed with this Court. [Docket No. 1977].

2. Attached to the Notice as Exhibit "2" was an Asset Purchase Agreement dated November 30, 2006, being Compass Partner LLC's ("Compass") proposal to purchase the "Assets" as defined in such Asset Purchase Agreement ("Proposed APA").

3. On December 7, 2006, before the above-entitled court, an auction was conducted, at the conclusion of which Compass submitted a bid of $67,000,000.00. Compass was deemed to have submitted the "Successful Bid" and was confirmed as the "Successful Bidder" by the Court.

4. On December 7, 2006, the Proposed APA was approved by the Bankruptcy Court subject to modifications agreed to during the court proceeding. These modifications included a recognition of the rights of the Direct Lenders under Section 3 of their Loan Servicing Agreements to terminate or transfer such Loan Service Agreement and a procedure by which the Court would retain jurisdiction to adjudicate the rights thereunder of both Direct Lenders and Compass as the transferee of USACM with regard to the Loan Servicing Agreements. A true

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/445305.doc

2

and correct copy of a model Loan Service Agreement is attached hereto as Exhibit "A" and Section 3 thereto provides in relevant part:

> Right of Lenders if USA Fails to Act.    Pursuant to NAC 645B.073, in the event of default, foreclosure or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record.  These actions may include, but are not limited to:
> (a)  the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and
> (b)   the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of foreclosure.

5. On December 8, 2006, a revised Asset Purchase Agreement ("December 8 APA") was circulated which included in Section 7.3, entitled "Servicing Agreements", a sentence providing as follows: "Purchaser shall apply all payments and proceeds from service loans, however collection [sic], whether through liquidation of collateral, payments from the borrower or otherwise, in accordance with the provisions of the notes and/or Loan Agreements."

6. On December 18, 2006, a <u>Notice of Filing of Asset Purchase Agreement Dated December 8, 2006</u> was filed with this Court. [Docket No. 2164].  Attached thereto as Exhibit "A" was an executed Asset Purchase Agreement dated December 8, 2006, ("Executed APA"). The Executed APA contains in Section 7.3 the sentence set forth above.  This sentence was not included in the Proposed APA.  This sentence was also not the subject of any oral modifications to the Proposed APA at the hearing on December 7, 2006.

7. On Friday, December 29, 2006, the Proposed Findings and Proposed Order were distributed for approval or disapproval.[1]  Both the Proposed Findings (paragraph 14) and Proposed Order (paragraph KK) contain language limiting Direct Lenders ability to exercise a remedy under Section 3 of the LSA.  Such limitation is inconsistent with the ruling of this Court.[2]

---

[1] On January 1, 2007, Revised Proposed Findings were distributed providing for additional revisions on pages 17 and 18 of the Proposed Findings distributed on December 29, 2006.  These slight revisions do not affect this limited opposition.

[2] Pursuant to LR 9021, the Direct Lenders Committee proposes the following changes to paragraph 14 and paragraph KK respectively:

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

———————————————— (continued)

14. Except as expressly permitted or otherwise specifically provided for in the Asset Purchase Agreement or this Confirmation Order, pursuant to sections 105(a), 1123, and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Asset Purchaser on the terms and conditions set forth in the Asset Purchase Agreement, and upon Closing shall be, free and clear of all liens, claims, interests, obligations and encumbrances whatsoever, including, but not limited to, (A) all monetary and non-monetary defaults and rights that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Asset Purchaser's interest in, or rights in or under, the Acquired Assets, or any similar rights, based in any way on any action taken (or failed to be taken) by any of the Debtors or any other matter or occurrence relating to the period prior to the Closing (other than any right that existed and was matured and exercisable, as of the Petition Date, to effect a substitution of USACM as loan servicer under Section 3 of any Loan Servicing Agreement, as well as any defenses of the loan servicer thereto~~; provided, however, that any such right must be asserted by no later than 120 days after the Closing Date~~ (a "Surviving Section 3 Right")); (B) taxes arising under or out of, in connection with, or in any way relating to the existence, ownership, management or servicing of the Acquired Assets prior to the Closing; and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates; all claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, rights of recoupment or setoff, demands, guaranties, options, rights, restrictions, interest and matters of any kind and nature in any way relating to the existence, ownership, management or servicing of the Acquired Assets prior to Closing, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, "Interests"); provided, however, that, in connection with any attempted post-Closing exercise of a Surviving Section 3 Right: (a) the Direct Lenders must provide Compass at least thirty (30) days prior written notice of the intended exercise of such right in accordance with section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to challenge the exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has been properly and validly exercised (the "Compass Motion") and the Court shall retain jurisdiction to adjudicate any such disputes, (c) in the event Compass timely files such Compass Motion, the effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival of such Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass under the Loan Servicing Agreements, including, without limitation, its rights under Section 2(c)(iii) of the Loan Servicing Agreement. ~~No Direct Lender shall be permitted to exercise a Surviving Section 3 Right after the expiration of 120 days after the Closing Date.~~ In the event of a proper exercise of remedies under Section 3 of the Loan Servicing Agreement, (i) neither the Direct Lenders nor any replacement servicer selected by such Direct Lender shall have the right or ability to compromise, subordinate, or impair, in any respect, any claims belonging to Compass for default interest, accrued servicing fees, late charges, success fees, or other amounts owed to Compass under the Loan Servicing

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/445305.doc

4

——————————————— (continued)
Agreement that arose prior to the Closing, and (ii) ~~the applicable Direct Lenders are required to mail a copy of this Confirmation Order to any proposed replacement servicer, and~~ this Confirmation Order shall be binding upon such replacement servicer regardless of whether such replacement servicer actually received such copy of the Confirmation Order.

KK.     The transfer of the Acquired Assets to the Asset Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Asset Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of all liens, claims, interests, obligations and encumbrances whatsoever, including, but not limited to, (A) all monetary and non-monetary defaults and rights that purport to give to any party a right or option to effect any forefeiture, modification, right of first refusal, or termination of the Sellers' or the Asset Purchaser's interest in, or rights in or under, the Acquired Assets, or any similar rights, based in any way on any action taken (or failed to be taken) by any of the Debtors or any other matter or occurrence relating to the period prior to the Closing (other than any right that existed and was matured and exercisable, as of the Petition Date, to effect a substitution of USACM as loan servicer under Section 3 of any Loan Servicing Agreement, as well as any defenses of the loan servicer thereto; ~~provided, however, that any such right must be asserted by no later than [____] days after the Closing Date~~ (a "Surviving Section 3 Right")); (B) taxes arising under or out of, in connection with, or in any way relating to the existence, ownership, management or servicing of the Acquired Assets prior to the Closing; and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates; all claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, rights of recoupment or setoff, demands, guaranties, options, rights, restrictions, interest and matters of any kind and nature in any way relating to the existence, ownership, management or servicing of the Acquired Assets prior to Closing, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, "Interests"); provided, however, that, in connection with any attempted post-Closing exercise of a Surviving Section 3 Right: (a) the Direct Lenders must provide Compass at least thirty (30) days prior written notice of the intended exercise of such right in accordance with section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to challenge the exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has been properly and validly exercised (the "Compass Motion") and the Court shall retain jurisdiction to adjudicate any such disputes, (c) in the event Compass timely files such Compass Motion, the effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival of such Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass under the Loan Servicing Agreements, including, without limitation, its rights under Section 2(c)(iii) of the Loan Servicing Agreement. ~~No Direct Lender shall be~~

Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

100933-001/445305.doc

5

A.     **Limited Opposition.**

The Direct Lenders Committee in light of the above and with regard to the Proposed Findings and Proposed Order have the following objections:

1.     Paragraph 14 of the Proposed Order and Paragraph KK of the Proposed Findings contain essentially the same language regarding Section 3 of the Loan Servicing Agreements. Each of these paragraphs address the preservation of Direct Lenders rights under Section 3 of the Loan Servicing Agreements as agreed to in Court. However, the preserved rights under Section 3 must now be asserted no later than 120 days after the Closing Date. This language is inconsistent was not the agreement reached between the Direct Lenders Committee and Compass at the Confirmation. It is a modification of the Loan Servicing Agreements and is an unwarranted and unacceptable limitation on Direct Lenders Rights under the Loan Servicing Agreements. The number of Direct Lenders on each loan varies with some loans having more than 300 Direct Lenders. These Direct Lenders do not have access to the names, addresses and telephone numbers of their fellow Direct Lenders and no means to obtain such information without the cooperation of USACM and after the Closing Date, Compass. To place any such limitation on Direct Lenders in the limited timeframe proposed by Debtors would render their rights under Section 3 meaningless.[3]

---

(continued)
~~permitted to exercise a Surviving Section 3 Right after the expiration of [   ] days after the Closing Date.~~ In the event of a proper exercise of remedies under Section 3 of the Loan Servicing Agreement, (i) neither the Direct Lenders nor any replacement servicer selected by such Direct Lender shall have the right or ability to compromise, subordinate, or impair, in any respect, any claims belonging to Compass for default interest, accrued servicing fees, late charges, success fees, or other amounts owed to Compass under the Loan Servicing Agreement that arose prior to the Closing, and (ii) ~~the applicable Direct Lenders are required to mail a copy of~~ the Confirmation Order, which shall be binding upon such replacement servicer regardless of whether such replacement servicer actually received such copy of the Confirmation Order.

---

[3] Nevada Administrative Code 645B.220 provides a suggested form of disclosure. In the case of fractionalized interests, such as those evidenced by the Loans in this Case, 645B.220 states in part ". . .The servicing agreements should address issues such as: . . .(6) the right to obtain the names, addresses and telephone numbers of other persons with beneficial interests in the loan; . . ." 1. None of the Loan Servicing Agreements address this issue. However, that does not mean this should be ignored and by virtue of the absence of such a feature in the Loan

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/445305.doc

6

2.      Additionally, in paragraph 14 of the Proposed Order and Paragraph KK of the Proposed Findings, is a requirement that in the event the Direct Lenders are successful in exercising the remedies under Section 3 of the Loan Servicing Agreements, the Direct Lenders are required to mail a copy of the Confirmation Order to any proposed replacement servicer. First, this additional requirement of the Direct Lenders seems to be unnecessary since both paragraph KK and paragraph 14 provide that the Confirmation Order will be binding on any replacement servicer regardless of whether such replacement servicer actually receives a copy of the Confirmation Order. Second, does this require each and every Direct Lender to provide a copy to the proposed replacement servicer? Again, in some instances there are more than 300 Direct Lenders involved in a Loan. This again goes beyond the requirements of the Loan Servicing Agreements.

3.      Throughout the sales and confirmation proceedings, it has been understood by all parties that the Loan Servicing Agreements are being transferred as is without any compromise or modification of the rights of Direct Lenders thereunder. Paragraph 5 of the Loan Servicing Agreements provides in part that USA will receive as part of its compensation default interest collected from applicable borrowers pursuant to the terms of their notes. Section 7.3 of the Proposed APA clearly and unequivocally provides "Nothing contained in this Agreement shall modify the obligations owed to the Capital Lenders by the loan servicer or rights of the Lenders against the loan servicer (or the rights of the loan servicer against the Lenders) under the applicable Servicing Agreements and otherwise applicable law. Purchaser shall distribute any sums due to "Lenders" under any of the capital Servicing Agreements in accordance with the capital Servicing Agreements, as the same may be modified with the consent of the applicable Lenders, and with otherwise applicable law. However, Section 7.3 of the Executed APA contains the additional sentence "Purchaser shall apply all payments and proceeds from service loans, however collection [sic], whether through liquidation of collateral, payments from the borrower or otherwise, in accordance with the provisions of the notes and/or Loan Agreements.".

―――――――――――――――― (continued)
Servicing Agreements, should weigh against any limitation on the rights of Direct Lenders to enforce Section 3 rights.
Gordon & Silver, Ltd.
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

100933-001/445305.doc

While such language seems innocuous, it could be interpreted as modifying the language of Section 5 of the Loan Servicing Agreements that provides for the collection of late charges and default interest only from the Borrowers. The concern by Direct Lenders is that on a going forward basis, the collection of default interest by Compass may not be solely limited to collection from Borrower, but instead, in the event of a foreclosure or other collection proceedings, could provide for the collection of default interest or late charges prior to payment of principal and interest under applicable notes and deeds of trust. The Proposed Findings and Proposed Order should be revised to confirm that this additional sentence does not modify the language of Section 5 of the Loan Service Agreement or adversely affect the rights of Direct Lenders or the obligations owed to them under Loan Servicing Agreements.

DATED this 2nd day of January, 2007.

GORDON & SILVER, LTD.

By: _____
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
BRIGID M. HIGGINS, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Attorneys for the Official Committee
Of Holders of Executory Contract Rights through
USA Commercial Mortgage Company

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

100933-001/445305.doc

8

# EXHIBIT A

# LOAN SERVICING AGREEMENT



This Loan Servicing Agreement ("Agreement") is made as of the 18 day of <u>February</u>, 2004, between USA Commercial Mortgage Company ("USA") and_                              ("Lender").

**RECITALS**

A.   USA is a mortgage broker and loan servicer in Clark County, Nevada.

B.   Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans are arranged by USA and are secured by interests in real and/or personal property.

C.   Lender wishes to retain the services of USA in connection with making and servicing a loan or loans ("Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   <u>Services in Connection with Arranging the Loans</u>. USA will perform the following services in connection with arranging each Loan:

   (a)   Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b) below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

   (b)   Obtain a deed of trust, assignment of rents and security agreement executed by Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be properly recorded.

   (c)   Obtain one or more personal or corporate guaranties, if applicable and as determined by USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used by USA.

   (d)   If USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

   (e)   Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the initial principal amount of the note and showing as exceptions only those items approved by USA and its counsel.

   (f)   Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee.

v.1 Rev. 8/04

(g) Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

(h) Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

(i) Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest.

(j) All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request. Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

(k) Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

2. <u>Services of USA in Connection with Servicing the Loans</u>. Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

(a) Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage. USA will hold for the Lender's account such policies and renewals thereof.

(b) Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts. Those records will be available for review by the Lender during regular business hours at USA's corporate office.

(c) Until the total amount due under each note is paid in full:

(i) Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

(ii) In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

v.1 Rev. 8/04

2

        (iii)    In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

        (iv)    In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

(d)    Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

(e)    Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. Notwithstanding the foregoing or any other provision contained herein, USA may not permit any modification to any Loan that would change the interest rate, forgive the payment of any principal or interest (expressly excluding late charges or the difference between default and non-default interest), change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

3.    <u>Rights of Lender if USA Fails to Act</u>.    Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

    (a)    the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and

    (b)    the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

4.    <u>Legal Proceedings</u>.    USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA

v.1 Rev. 8/04

may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure; provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5. **Compensation to USA for Loan Servicing.** Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed three percent (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) and default interest collected from the Borrower pursuant to the terms of the Note. Notwithstanding the foregoing, it is agreed and acknowledged that USA derives the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6. **USA's Right to Delegate.** Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7. **No Legal Advice.** Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter.

8. **Termination.** Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if USA fails to perform its obligations hereunder.

9. **Lender's Registration.** Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

v.1 Rev. 8/04

10. <u>Integration Clause</u>. This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof).

11. <u>Limited Power of Attorney</u>. With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan. Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder. No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder. All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12. <u>Notices.</u> All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

If to USA:      USA Commercial Mortgage Company
                4484 S. Pecos Road
                Las Vegas, Nevada 89121-5030
                Attention:

If to Lender:



                Attention:

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

13. <u>Governing Law.</u> This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

14. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

v.1 Rev. 8/04