Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED on January 9, 2007

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                             Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br>Chapter 11<br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                             Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                             Debtor. | **OPPOSITION TO MOTION TO QUASH SUBPOENAS AND STRIKE 2004 EXAMINATION ORDERS OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER REGARDING USA INVESTMENT PARTNERS, LLC, HMA SLALES, LLC, USA INVESTORS VI, LLC AND JOSEPH D. MILANOWSKI<br>(AFFECTS ALL DEBTORS)** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                             Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                             Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | Date: January 17, 2007<br>Time: 9:30 a.m. |

USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund"), USA Capital First Trust Deed Fund, LLC ("FTD Fund"), USA Capital Realty Advisors, LLC ("Realty Advisors"), and USA Securities, LLC ("USA Securities") (collectively, the "Debtors"), respectfully submit this Opposition to Motion to Quash Subpoenas and Strike 2004 Examination Orders or in the Alternative for a Protective Order Regarding USA Investment Partners, LLC, HMA Sales, LLC, USA Investors VI, LLC and Joseph D. Milanowski (Docket # 2107). This Opposition is supported by the Declaration of Elaine A. Monson (hereafter the "Monson Declaration") filed on December 16, 2006 (Docket # 2150).

**STATEMENT OF FACTS**

1. On November 29, 2006, the Debtors filed ex parte motions for 2004 examinations (the "Motions") of USA Investment Partners, LLC ("USAIP"), USA Investors VI, LLC ("Investors VI") and HMA Sales, LLC ("HMA") (collectively the "Milanowski Controlled Entities").

2. The orders granting the Motions were entered by the Court on December 1, 2006, and served along with document subpoenas on the Milanowski Controlled Entities the same day. The examinations were set on December 13, 2006 for Investors VI (morning) and HMA (afternoon), and on December 14, 2006 for USAIP. Documents were to be produced in response to the subpoenas by the Milanowski Controlled Entities by December 11, 2006.

3. On December 1, 2006, the Debtors also filed an ex parte motion for 2004 examination (the "Milanowski Motion") of Joseph Milanowski ("Milanowski"). The order granting the Milanowski Motion was entered on December 8, 2006.

4. On December 8, 2006, Douglas Griffith ("Griffith"), counsel for Milanowski, sent an email to Debtors' counsel requesting a one week extension (until December 18th) for the Milanowski Controlled Entities to produce the requested documents, and requesting a similar extension of their 2004 examinations. Griffith indicated in his email that Milanowski would not be the designated representative to testify on behalf of the any of the Milanowski Controlled Entities. A copy of the email is attached to the Monson Declaration as Exhibit A.

1      5.    The order granting the Milanowski Motion and the accompanying document
2 subpoena was served on December 11, 2006 (although service was originally attempted on
3 December 8th).  Milanowski's examination was set for December 15, 2006.

4      6.    The morning of December 12, 2006, Elaine Monson ("Monson") had a
5 conversation with Russell Walker[1] ("Walker"), who is also counsel for Milanowski, in which
6 Monson told Walker that the Debtors would be willing to grant the requested extensions, subject
7 to certain conditions, one of which was that HMA, Investors VI, USAIP and Milanowski, make
8 themselves available for their 2004 examinations the morning of December 20, 2006, and that the
9 examinations could proceed in any order of the Debtors choosing.

10     7.    As a result of that conversation, Monson believed an agreement had been reached
11 with Walker, and therefore, later in the morning on December 12th, she sent Walker a confirming
12 email outlining the conditions for granting the requested extensions.  A copy of the email is
13 attached to the Monson Declaration as Exhibit B.

14     8.    At approximately 4:30 p.m. on December 12, 2006, Walker called Monson and
15 said he had reviewed the email and that all of the conditions were acceptable, except for the
16 condition that HMA, Investors VI, USAIP and Milanowski make themselves available for 2004
17 examinations on the morning of December 20, 2006.  Instead, Walker wanted an agreement that
18 the examinations be continued to January.

19     9.    Monson indicated to Walker that such an agreement could not be made because she
20 had not seen the documents that were going to be produced, there were questions that might need
21 an immediate response during the upcoming week (for instance, the confirmation hearing was
22 scheduled to begin on December 19th), and the Debtors were concerned about the imminent sale
23 (and potential dissipation) of certain assets held by the Milanowski Controlled Entities.  In short,
24 Debtors wanted to reserve their right to proceed with the examinations on December 20th if they
25 deemed it necessary.

---

[1] This conversation was a follow up to the Griffith email and a conversation Monson had with Walker the previous day about the requested extensions.

10. In a subsequent conversation around 5:00 p.m., Walker indicated that he would be willing to make a representative available on December 20, 2006, to testify on behalf of the Milanowski Controlled Entities, but the representative would not be Milanowski, and he did not want to make Milanowski available for his personal examination because he would likely invoke his Fifth Amendment privilege in any event. Monson indicated to Walker that this proposal was not acceptable because Milanowski was the only person who likely had relevant knowledge with respect to the questions to be asked, and if Milanowski wanted to assert his Fifth Amendment privilege he was within his right to do so but he still must show up for the examination and put such a statement on the record. It became apparent that an agreement could not be reached with respect to the requested extensions so Monson indicated to Walker that the Debtors planned to proceed with the examinations scheduled to begin the next morning. Monson asked if Walker and the parties were going to attend the examinations and Walker indicated that he and the parties would not be attending and instead they would file a motion to quash or a protective order.

11. Around 6:00 p.m. on December 12th, Monson sent Walker an email confirming, inter alia, the following: (a) the parties had been unable to reach an agreement with respect to the requested extensions; (b) the Debtors were planning to proceed with the examinations of the Milanowski Controlled Entities and Milanowski, and (c) Walker had stated that none of the parties would be attending their 2004 examinations, and therefore, Debtors would appear at the examinations and make the appropriate notations on the record. A copy of this email is attached to the Monson Declaration as Exhibit C.

12. Later that evening Monson learned that Milanowski, USAIP and Thomas Hantges had filed an objection to confirmation of the Debtors' plan or reorganization. Accordingly, when Monson spoke with Walker again on December 13, 2006, she indicated to Walker that one of the reasons the Debtors would want to take Milanowski's examination was to ask about confirmation issues.

13. The Milanowski Controlled Entities and Milanowski did not appear at their 2004 examinations scheduled on December 13th, 14th and 15th.

14. Late in the day on December 14, 2006, Walker filed a motion to quash the

subpoenas and strike the orders granting the 2004 examinations, or alternatively, for a protective order (the "Motion to Quash").

15. On December 18, 2006, Walker caused a single box of documents from the Milanowski Controlled Entities to be produced at Debtors' offices.

## ARGUMENT

The Milanowski Controlled Entities have now produced one box of documents in response to the subpoenas. Nevertheless, the actual 2004 examinations of the Milanowski Controlled entities and Milanowski have not taken place. The Debtors should be permitted to conduct these examinations and the Motion to Quash should not be granted because: (a) it was not timely filed; (b) orders requiring the appearance of the Milanowski Controlled Entities and Milanowski were signed by the Court; (c) no agreement was ever reached to continue the 2004 examinations or to extend the time to produce documents under the subpoenas; and (d) valid grounds still exist for the examinations to proceed.

### I. THE MOTION TO QUASH WAS NOT TIMELY FILED

The Milanowski Controlled Entities and Milanowski argue that the 2004 examinations and the subpoenas directed toward the Milanowski Controlled Entities and Milanowski should be quashed under Bankruptcy Rule 9016 because a reasonable time was not allowed for compliance. Rule 9016 provides that Rule 45 of the Federal Rules of Civil applies in cases under the Code, and Rule 45 makes it clear that any written objection to a subpoena must be filed before the time the documents are required to be produced. Specifically, subsection (c)(2)(B) of Rule 45 states that

> . . . a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena <u>or before the time specified for compliance</u> if such time is less that 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. (Emphasis added).

Likewise, subsection (c)(3)(A) of Rule 45 provides that only "[o]n timely motion" may a party move to modify or quash the subpoena.

In this case, the Motion to Quash was not filed until after the dates set for the production of documents, and after the scheduled times for the examinations of the Milanowski Controlled

Entities and on the eve of Milanowski's personal examination. Accordingly, under Rule 45 the Motion to Quash was not timely filed.[2]

## II. 2004 EXAMINATION ORDERS REQUIRING THE MILANOWSKI CONTROLLED ENTITIES' AND MILANOWSKI'S ATTENDANCE AT THE 2004 EXAMINATIONS WERE SIGNED BY THE COURT

The Milanowski Controlled Entities and Milanowski also cite Local Rule 2004 for the proposition that they need not have attended the 2004 examinations because there was no basis for the examinations on less than 10 days notice. However, it is undisputed that the Court did enter the 2004 examination orders, and therefore, the Milanowski Controlled Entities and Milanowski were bound to comply with those orders regardless of whether they believed a sufficient basis existed for proceeding on less than 10 days notice.

## III. NO AGREEMENT WAS EVER REACHED BETWEEN THE MILANOWSKI CONTROLLED ENTITIES, MILANOWSKI AND THE DEBTORS TO CONTINUE THE 2004 EXAMINATIONS OR TO EXTEND THE TIME TO PRODUCE DOCUMENTS PURSUANT TO THE SUBPOENAS.

The Milanowski Controlled Entities and Milanowski also suggest they should be accorded some relief because they were negotiating for an alternative time to produce the requested documents and to continue the dates of the 2004 examinations. However, it is undisputed that no final agreement regarding any extensions was ever reached between the Milanowski Controlled Entities, Milanowski and the Debtors. Moreover, after it became apparent no agreement would be reached, Debtors' counsel informed the Milanowski Controlled Entities and Milanowski's counsel

---

[2] Furthermore, the Milanowski Controlled Entities and Milanowski's contention that a reasonable time was not allowed for compliance with the 2004 examination orders and subpoenas is without merit. The 2004 examination orders for the Milanowski Controlled Entities were entered on December 1st, with the corresponding examinations to be held on December 13th and 14th (and documents to be produced by the 11th). The 2004 examination order for Milanowski was entered on December 8th, with the corresponding examination to be held on the 15th (and documents to be produced by the 13th). Moreover, in an attempt to accommodate the Milanowski Controlled Entities and Milanowski's schedules to the fullest extent possible, the Debtors, at the request of Milanowski's counsel, indicated they would be willing to extend the time for the documents to be produced to December 18th and to continue all of the examinations to December 20th if the examinations could proceed in the order of Debtors choosing. However, no agreement was ever reached because Walker requested that all of the examinations be continued to January. When the Milanowski Controlled Entities finally produced documents to the Debtors on December 18, 2006, the production only consisted of a single box of documents. Accordingly, it would be disingenuous for the Milanowski Controlled Entities to assert that the sheer number of documents prohibited their production in a timely fashion.

1  that the Debtors planned to proceed with the examinations as originally scheduled and also
2  expected the production of the documents in accordance with the subpoenas.

### IV. VALID GROUNDS STILL EXIST TO TAKE THE 2004 EXAMINATIONS

Finally, the Milanowski Controlled Entities and Milanowski's request for relief should be denied because valid grounds still exist to take the 2004 examinations. An involuntary bankruptcy petition has been filed against Investors VI and an interim trustee has been appointed in that case. Moreover, the Debtors have obtained a temporary restraining requiring certain proceeds from the sale of the Royal Hotel (which is owned by HMA Sales) to be frozen. Additionally, the Debtors are continuing their review of the activities of USAIP and Milanowski in connection with future litigation. As such, it is important that the 2004 examinations of the Milanowski Controlled Entities and Milanowski take place, and the Debtors should be entitled to conduct such examinations in the future.

### CONCLUSION

Based on the foregoing, the Debtors respectfully request that the Court deny the Motion to Quash.

Respectfully submitted this 9th day of January, 2007.

     /s/   Lenard E. Schwartzer, Esq.
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385