Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED on January 16, 2007

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                          Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                          Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                          Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                          Debtor. | **USA COMMERCIAL MORTGAGE COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION TO THE CLAIM NO. 1099 FILED BY DEL AND ERNESTINE BUNCH** |
| In re:<br>USA SECURITIES, LLC,<br>                                                          Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | Date: January 17, 2007<br>Time: 9:30 a.m. |

1   USA Commercial Mortgage Company ("USACM"), by and through its counsel, hereby files its Supplemental Brief in Support of its Objection to Claim No. 1099 Filed By Del And Ernestine Bunch and in response to Bunch's Second Supplemental Response to its Objection to Claim No. 1099 Filed By Del and Ernestine Bunch dba Loan Partners Capital ("Bunch"). Bunch's Second Supplemental Response asserts that the $217,000 and $196,000 which Bunch received from USA Commercial Mortgage Collection Trust Account (the "Collection Account") was not "the Debtor's property" and, therefore, there could not have been "a transfer of an interest of the debtor in property" which is one of the requirement of Bankruptcy Code § 547(b).[1] USACM asserts that it had an interest in the funds in the Collection Account and, therefore, there was a preferential transfer. This objection is without prejudice to the estate and its successor USACM Trusts' assertion of other objections to the Bunch claim.

## MEMORANDUM OF LAW

**1.      Property Of The Estate.**

Section 541 of the Bankruptcy Code provides, in pertinent part, that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\*\*\*

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest,

---

[1] The Debtor does not dispute that a debtor must have an interest in the property transferred in order for there to be a preferential transfer. See, *In re California Trade Technical Schools, Inc.*, 923 F.2d 641, 646 (9th Cir. 1991)("In order to avoid a transfer as a preference under section 547, the trustee must also establish that the property involved was property of the debtor such that the transfer diminishes the fund from which bankruptcy creditors may be paid."); *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994)("Thus, something held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor for purposes of section 547(b)."); *In re R & T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981, 985 (9th Cir. 1989) ("Thus, property held in trust by the debtor is not subject to the voidable preference rule of section 547(b)."); and *Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263 (1990) ("The reach of § 547(b)'s avoidance power is ... limited to transfers of 'property of the debtor.' ").

becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(a)(1) and (d).

As evident from the statute, Congress clearly intended to define property of the estate in the broadest possible sense.[2] The definition of "property of the estate" includes any property to which the debtor holds *legal title* even if there is an equitable interest held by another. Under this expansive definition, and as demonstrated herein, USACM had an interest in the funds in the Collection Account which was property of USACM's Estate.

### 2. Untraceable, Commingled Funds Obtained From Various Sources Were Commingled In The Collection Account

Prepetition, USACM's former management made regular monthly payments to certain Direct Lenders regardless of whether such Direct Lenders' respective loans were performing. In the case of nonperforming loans, USACM would utilize funds in its Collection Account, which were commingled funds from a variety of untraceable sources, to advance payments to Direct Lenders whose loans were nonperforming.[3] Notably, the Collection Account was comprised of funds received from various sources including, but not limited to, deferred loan fees payable to USACM that were collected as part of the payments made by the various Borrowers, monies transferred from USA Capital Diversified Trust Deed Fund, and monies from other entities (other than borrowers or Direct Lenders). *See* Allison Declaration ¶ 82-87.

When property in the possession of a debtor is alleged to be held in trust by the debtor for the benefit of a nondebtor, in order to establish a right to the property as a trust beneficiary, the nondebtor must: (1) demonstrate that the trust relationship and its legal source exist; and (2)

---

[2] *See* 5 COLLIER ON BANKRUPTCY § 541.01 ("Congress' intent to defined property of the estate in the broadest possible sense is evident from the language of the statute, which initially defines the scope of estate property to be all legal or equitable interest of the debtor in property as of the commencement of the case, wherever located and by whomever held. It would be hard to imagine language that would be more encompassing. Yet the remainder of section 541(a) attempts to do just that.").

[3] *See* Declaration of Thomas J. Allison filed December 15, 2006 as Docket No. 2147 (the "Allison Declaration") ¶ 56 through 87.

*identify and trace the trust funds if they are commingled. See Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273, 280 (3d Cir. 1991) (emphasis added). While the determination of whether a trust exists is usually a question of state law, the issue of identifying and tracing the alleged trust funds is exclusively a question of federal law. *See Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 618 -619 (1st Cir. 1988). Notably, "[t]he point of tracing is to follow the *particular* entrusted assets, *not* simply to identify *some* assets." *Id*. at 620 (emphasis added). However, due to the fact that money has no extrinsic, identifiable characteristics that permit it to be traced, once it is commingled, the Ninth Circuit employs the "lowest intermediate balance rule" ("LIBR"), which provides as follows to trace commingled funds: if the amount on deposit is reduced below the amount of the trust funds but not depleted, the claimant is entitled to the lowest intermediate balance in the account, based on the fiction that the trustee would withdraw non-trust funds first, retaining as much as possible of the trust fund in the account.[4] *See Connecticut General Life Ins. Co.*, 838 F.2d at 619; *Taylor Assoc. v. Diamant (In re Advent Mgt. Corp.)*, 178 B.R. 480, 492 (B.A.P. 9th Cir. 1995). Thus, when trust funds are commingled, the claimant's proceeds held in trust only remain in the trust account to the extent that the account balance remains at or above the amount of the claimant's trust funds; thus, as the balance of the trust drops below the total amount of the claimant's trust funds, the claimant's funds are likewise depleted. *See* William Stoddard, *Tracing Principles In Revise Article 9 § 9-315(B)(2); A Matter of Careless Drafting, or an Invitation to Creative Lawering*, 3 Nev. C.J. 135, 143 (2002). "In no case is the trust permitted to be replenished by deposits made subsequent to the lowest intermediate balance." *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 724 (4th Cir. 1998).

Assuming *arguendo* that some portion of the commingled funds in USACM's Collection Account from which the payments to Bunch were made was at one time deemed funds held in trust, such funds subsequently lost their trust status for at least two reasons.

/ / /

---

[4] As money lacks extrinsic, identifiable characteristics that render it traceable, once it is combined with other money, LIBR serves as a mechanism by which courts can trace money held in trust.

### a. Trust Fund Status Was Lost When The Collection Account Reached A Negative Balance.

First, it is clear that when commingled funds, a portion of which constitute trust funds, are depleted, the trust is deemed lost and the purported trust beneficiary becomes merely a general creditor. *See Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 402 (8th Cir. 2004) ("However, if the account is depleted after the trust fund has been deposited, the trust fund is treated as lost."); *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988) ("Where, however, after the commingling, all the money is withdrawn, the trust fund is treated as lost, even though later deposits were made into the account."); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 724 (4th Cir. 1998) (citing *Cunningham v. Brown*, 265 U.S. 1 (1924) ); *see also* 5 COLLIER ON BANKRUPTCY § 541.11[5] (15th ed. 2006) ("If the trust fund or property cannot be identified in its original or substituted form, the purported beneficiary becomes merely a general creditor of the estate [footnote omitted]. The result is the same where the trust property has been disposed of or dissipated in such manner as to leave nothing in its place.").

On February 8, 2006, USACM's accounting records denote that the book value of USACM's Collection Account had a <u>negative</u> balance of approximately $1,603,333.[5] *See* Allison Declaration ¶ 69. Therefore, assuming certain funds held in USACM's Collection Account were held in trust, on February 8, 2006, such trust ceased to exist due to the depletion of its funds.

### b. Untraceable Funds Are Property Of The Estate As A Matter of Law.

Assuming *arguendo* that the requisite trust relationship could be established, it would nonetheless be impossible to identify and trace the commingled funds utilized to make the payments made to Bunch. First, the Collection Account consisted of money, which has no extrinsic, identifiable characteristics of its own, and once commingled, the means of tracing such

---

[5] Although USACM's bank records reveal that there was $19,946,265 in the Collections Account on February 8, 2006 as not all of the outstanding payments and/or debits had been received by their intended recipients, such sum does not alter the analysis as the new sums being deposited certainly could not constitute the initial trust res being held in the Collections Account. Thus, the trust necessarily ceased to exist on February 8, 2006.

funds is through the utilization of the LIBR. As aptly stated in *Connecticut General Life Ins. Co.*, where the lowest intermediate balance is zero, the asserted trust recipient is "entitled to take nothing." *Connecticut General Life Ins. Co.*, 838 F.2d at 619. Even assuming that the lowest intermediate balance in the Collections Account was greater than zero, the requisite tracing is nonetheless impossible. *See* Allison Declaration ¶ 68 (stating that regardless of attempts by USACM's attorneys and financial consultants and advisors, it is impossible to specifically trace particular trust assets to subsequent distributions made by USACM, including Prepaid Interest payments). Although LIBR may readily be employed where the property of *one* trust beneficiary is commingled with the property of the trustor,[6] where, as is the case here, the monies in the Collection Account were obtained from a variety of sources and depleted significantly below the value of the purported funds held in trust, it is not possible to apply the LIBR to determine whose assets remain in the trust account. *See* Allison Declaration ¶¶ 82-87, 69; *see Gulfstream Aerospace Technologies, Inc. v. Calascibetta (In re Strategic Technologies, Inc.)*, 2005 WL 1669615 (3rd Cir. 2005) (Although the LIBR is helpful in identifying one party's assets commingled with the trustee, its value is significantly lessened when the assets are commingled with many other similarly situated individuals). Additionally, it is impossible to trace which funds in the Collection Account were utilized to make the payments to Bunch. *See* Allison Declaration ¶ 68. This is particularly evident when one appreciates that USACM commenced making payments on non-performing loans as early as 2001. *See* Allison Declaration ¶ 61. Furthermore, the inability to trace funds emanates from the fact that funds in the Collection Account were used not only to make payments to Bunch, but also to make unremitted interest on on-performing loans to Direct Lenders as well as interest payments on other loans, including loans to and for USACM and USACM's insiders. *See* Allison Declaration ¶ 78-79.

Where the purported trust funds cannot be traced, such funds are presumed to be property of USACM's Estate and the purported beneficiaries become general creditors of such estate. *See*

---

[6] It is generally possible to apply the LIBR and thus trace the funds in this context because once the trust balance is depleted to less than the funds placed in trust, it is evident (applying the legal fiction that the trustor first utilized his own assets commingled in the trust account) that the remaining sums belong to the beneficiary of the trust.

*Taylor Assoc. v. Diamant (In re Advent Mgt. Corp.),* 104 F.3d 293, 296 (9th Cir. 1997); 5 COLLIER ON BANKRUPTCY § 553.11[5] (15th ed. 2006) ("If the trust fund or property cannot be identified in its original or substituted form, the purported beneficiary becomes merely a general creditor of the estate."). Addressing the situation where a purported trust beneficiary is seeking to establish itself as a trust recipient, the Ninth Circuit explained that "[i]f Taylor [the purported trust beneficiary] fails to trace the funds, we must presume that the funds constitute 'an interest of the debtor in property.'" *Id.* (citing *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988) for the proposition that "funds from commingled bank account controlled by debtor presumptively constitute property of debtor's estate")).[7] Similarly, the Third Circuit has explained that where a purported trust beneficiary "could not sufficiently identify its funds in the commingled account, all of the Commerce Account Funds are presumed to be part of the bankruptcy estate." *Gulfstream Aerospace Corp. v. Calascibetta (In re Strategic Technologies, Inc.)*, 2005 WL 1669615 (3rd Cir. 2005).[8] Therefore, where, as here, it is impossible to trace the purported trust funds,[9] such funds are treated as property of USACM's Estate, with the purported beneficiaries retaining claims against such Estate.

The conclusion that the funds paid to Bunch was property in which USACM had an interest is not only the legally correct determination, but it is also the only equitable result. Bankruptcy courts, as courts of equity, and consistent with the mandates of the Bankruptcy Code, favor pro rata distribution of funds when such funds are claimed by creditors of like status. *See Goldberg v. New Jersey Lawyers' Fund For Client Protection*, 932 F.2d 273, 280 (3rd Cir. 1991) (collecting cases); *Commodity Futures Trading Comm'n v. Franklin,* 652 F.Supp. 163, 168

---

[7] In *In re Bullion Reserve of North America*, the Ninth Circuit explained that "even if an express trust were created, Bozek [the purported trust beneficiary] would still have a duty under federal bankruptcy law to trace his funds to the bullion he received. Such a tracing requirement is necessary to further the Bankruptcy Code's policy of equal distribution among similarly situated creditors. Here, Bozek cannot trace the money he gave BRNA to the bullion he received. Therefore, the bullion is property of the debtor under § 547." 836 F.2d at 1218.

[8] *See also Cunningham v. Brown,* 265 U.S. 1, 10 (1924) (Where monies in a purported trust cannot be traced, "the defrauded lender becomes merely a creditor to the extent of his loss….").

[9] *See* Allison Declaration ¶ 87.

1  (W.D.Va.1986) (applying a formula to divide varying sources of commingled funds because
2  "equity dictates that all ... funds be distributed on a pro rata basis"), *rev'd on other grounds,* 875
3  F.2d 76 (4th Cir.1989); *In re Bullion Reserve of North America*, 836 F.2d at 1219 ("Equity
4  requires that all these creditors share equally in whatever assets are available.").[10] Allowing
5  Bunch to retain the payments out of the Collection Account would allow him to receive a greater
6  percentage recovery than other unsecured creditors, including those Direct Lenders whose funds
7  (particularly, misdirected principal payoffs) were put into the Collection Account and paid to
8  Bunch.

### 3. USACM Is Presumed To Hold An Interest In Collection Account Which Made It "Property of the Estate"

Bankruptcy Code § 541(a) provides that "property of the estate" includes "all legal and equitable interests of the debtor in property". Subsection (d) excludes "any equitable interest in such property that the debtor does not hold." As mentioned earlier, the cases hold that the debtor cannot bring a preference to recover property in which the debtor held only legal title but no equitable interest. These cases are inapplicable because USACM held an equitable interest in the commingled funds in the Collection Account. As shown by the Allison Declaration, funds from several sources were commingled in the Collection Account making tracing impossible. 9th Circuit case law makes tracing a prerequisite for establishing a trust which is excluded from the bankruptcy estate. As stated in *Taylor Assoc. v. Diamant (In re Advent Mgt. Corp.),* 104 F.3d 293, 296 (9th Cir. 1997), it was stated:

> Under the strict tracing standard applicable to bankruptcy cases involving commingled funds, Taylor bears the burden of tracing the alleged trust property "specifically and directly" back to the illegal transfers giving rise to the trust. *Bank of Alex Brown v. Goldberg (In re Goldberg),* 158 B.R. 188, 196 (Bankr. E.D.Cal.1993), *aff'd,* 168 B.R. 382 (9th Cir. BAP 1994). **If Taylor fails to trace the funds, we must presume that the funds constitute "an interest of the debtor in property."** *Danning v. Bozek (In re Bullion Reserve of North America),*

---

[10] *See also Capital and Serv., Inc. v. Rubino (In re Builders Capital and Serv., Inc.)*, 317 B.R. 603, 612 (Bankr. W.D.N.Y. 2004) ("Courts have favored *pro rata* distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims similarly situated with respect to their relationship to the defrauders." Id. (citing S.E.C. *v. Credit Bankcorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002)).

836 F.2d 1214, 1217 (9th Cir.1988) (funds from commingled bank account controlled by debtor presumptively constitute property of debtor's estate).

In a case involving a preference action, *In re Carrozzella & Richardson*, 247 B.R. 595 (2nd Cir.BAP 2000), the court stated:

> Once the Trustee established that the Debtor had control of the Account, which he certainly did, by showing that the funds in the Account were used by the Debtor for all manner of expenditures, then the burden of proof shifted to the Defendants to prove (1) that the Debtor had only legal title to the Defendants' money and (2) to trace their interest to their specific property.

Bunch has not presented any evidence, and cannot, show that the funds in the Collection Account can be traced and kept as trust property. The Allison Declaration made that clear that the Collection Account had non-trust funds deposited in to it and non-trust expenditures paid from it. USACM did not treat the Collection Account as a trust account. On this issue, there is no dispute and, therefore, no need for discovery or an evidentiary hearing.[11]

This Court should take into account that –

> In determining whether the spendthrift provision of the trust is valid, we must also keep in mind an important policy of the Bankruptcy Code. "It is the policy of the Code to enlarge the bankruptcy estate to the extent possible under the Code in an effort to provide creditors with the distribution to which they are entitled."

*In re McCullough*, 259 B.R. 509, 518 (Bankr. D.R.I. 2001) (quoting *In re Baldwin*, 142 B.R. 210, 214 (Bankr. S.D.Ohio 1992)). See also *In re Swanson*, 873 F.2d 1121, 1124 (8th Cir. 1989). These cases, as do many others, held that the mere inclusion of trust language in documents does not make property "trust assets". The actions of the debtor affect the determination of whether an asset is considered trust property and excluded from the bankruptcy estate.[12] The same policy

---

[11] Bunch has the burden of proving the assets he received were trust assets and not property of the estate. See *In re San Diego Realty Exchange, Inc.*, 132 B.R. 424, 428 (Bankr. S.D.Cal. 1991) ("The party alleging that property is held in trust, Vaca in this case, has the burden of showing the trust relationship. *In re B.I. Financial Services Group, Inc.,* 854 F.2d at 354. [(9th Cir. 1988)"). See also *In re R & T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981, 987 (9th Cir. 1989), which approved the granting of summary judgment for a preferential transfer where the defendant merely alleged, with no specific facts, that the account contained trust funds.

[12] See also *In re Klayer*, 20 B.R. 270 (Bankr. W.D.Ky. 1981) (the debtor has made such personal use of the trust assets and has engaged in self-dealing to such a degree as to cause the Court to include the trust assets in the bankruptcy estate).

1  should guide this Court in determining that payments from the Collection Account were payments
2  of estate property, despite the statutory language requiring USACM to create a trust account
3  because, for several years, USACM did not treat the Collection Account as a trust account.

## CONCLUSION

Based upon (a) the facts, stated under oath in the Allison Declaration, that that show (i) the Collection Account was not treated as a trust account (and, therefore, was property of the debtor), and (ii) a prima facie case for a avoiding the February and March, 2006 payments to Bunch as § 547 preferential transfers, (b) the lack of any defense to a preferential transfers and (c) the clear mandate of § 502(d) to disallow claims of persons who received preferential transfers unless repaid, this Court should find that Bunch's claim should be completely disallowed. This is not an unfair result. Bunch will be allowed to share pro rata with other unsecured creditors if and when he repays the preferential transfers that were paid by USACM in the 90 day period prior to the filing of its petition.

Dated: January 16, 2007

      /s/ Lenard E. Schwartzer
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

Attorneys for Debtors and Debtors-in-Possession

# CERTIFICATE OF SERVICE

1. On January 16, 2007 I served the following document(s):

    a.  USA COMMERCIAL MORTGAGE COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION TO THE CLAIM NO. 1099 FILED BY DEL AND ERNESTINE BUNCH

2. I served the above-named document(s) by the following means to the persons as listed below:

☒   a.   **By ECF System**:

VICTORIA L NELSON    bkecf@nevadafirm.com, vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rholley@nevadafirm.com;sliberio@nevadafirm.com

RICHARD F. HOLLEY rholley@nevadafirm.com, paltstatt@nevadafirm.com;vnelson@nevadafirm.com;sliberio@nevadafirm.com;bkecf@nevadafirm.com

☐   b.   **By United States mail, postage fully prepaid**:

☐   c.   **By Personal Service**
    I personally delivered the document(s) to the persons at these addresses:
    ☐   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.
    ☐   For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐   d.   **By direct email (as opposed to through the ECF System)**
    Based upon the written agreement to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐   e.   **By fax transmission**
    Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐   f.   **By messenger**
    I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: January 16, 2007

| LIA DORSEY | /s/ LIA DORSEY |
|---|---|
| (Name of Declarant) | (Signature of Declarant) |

Bunch/Supp Brief re Objection to Claim 011607    Page 11 of 11