Jason G. Landess (NSB #0288)
3990 Vegas Drive
Las Vegas, NV 89108
Tel: (702) 232-3913
Attorney for Defendant Great
White Investments NV, Inc.

RECEIVED AND FILED
2007 JAN 11 A 11: 16
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
USA COMMERCIAL MORTGAGE COMPANY,
                                              Debtor.

In re:
USA CAPITAL REALTY ADVISORS, LLC,
                                              Debtor.

In re:
USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,
                                              Debtor.

In re:
USA CAPITAL FIRST TRUST DEED FUND, LLC,
                                              Debtor.

In re:
USA SECURITIES, LLC,
                                              Debtor.

Case No. BK-S-06-10725
Case No. BK-S-06-10726
Case No. BK-S-06-10727
Case No. BK-S-06-10728
Case No. BK-S-06-10729

Chapter 11

**Jointly administered under
Case No. BK-S-06-10725 LBR**

Date of hearing: N/A
Time of hearing: N/A

### AFFIDAVIT OF CRAIG P. ORROCK IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

STATE OF NEVADA      )
                     : ss.
County of Clark      )

I, CRAIG P. ORROCK, being duly sworn, do hereby and upon my oath swear and state as follows:

1. I am more than 18 years of age and am fully competent to testify concerning all matters herein set forth of my own personal knowledge except as to those matters stated on information and belief, and as to such matters I believe them to be true.

2. I am the President of great White Investmentss NV, Inc., a Nevada

1

corporation ("Great White.")

3. Great White has been involved recently in the investigation and collection of certain funds stolen from investors in this case through the actions of promoters and criminals who have taken advantage of innocent investors who are now creditors in this case. Great White has taken assignments of various rights of various investors for purposes of pursuing the recovery of investor funds as a principal.

4. Great White became aware of this case involving USA Capital and other entities in June, 2006 and at that time took assignment of certain investor rights from two individuals whose money had been stolen by the principals of USA Capital. From June until September, 2006 Great White accepted various assignments from additional USA Capital investors who were unhappy with the progress of the bankruptcy case and felt that they would lose all of their investments without pursuing assets that had been left out of the bankruptcy estates.

5. Great White's investigation revealed what appeared to be inadequate representation of the interests of the investors in the bankruptcy proceeding in that:

A. The Chapter 11 reorganization gave the investors false hope that they would actually recover all of their money;

B. The Trustee Tom Allison had pre-bankruptcy relationships with Tom Hantges and Joe Milanowski, and through an implied or express agreement had managed to keep most of the assets of Hantges and Milanowski outside the bankruptcy court, free of any liens and encumbrances favorable to the investors;

C. Allison made statements clearly indicating that he thought Milanowski deserved to go to jail, but notwithstanding these admissions, he insisted that he would work with them and continue the illusion that all the investors' money could be recouped;

D. That the $58 Million promissory note agreed to by Allison secured on the LLC interests of Hantges and Milanowski and not the underlying assets, and furthermore no real

2

due diligence had been done by the bankruptcy attorneys concerning the status of these assets. As an example, Salvatore Reale, an organized crime member, had filed duplicate trust deeds on several properties outside of the bankruptcy estate, including the Royal Hotel, none of which had been challenged before the court.

6. As the result of the filing by Great White of equitable liens against the Royal Hotel on behalf of investors' rights, Great White was sued in the 8th District Court by HMA Sales, LLC, the owner of the Royal Hotel. In these proceedings Great White asserted (using information obtained by Michael Tucker of the bankruptcy court) that:

A. The money taken from investors was in fact stolen and used to acquire the Royal Hotel;

B. The transfer of stolen investor funds through the various entities created by Hantges and Milanowski and used to acquire or maintain the Royal Hotel required that an equitable lien or constructive trust be placed against the Royal Hotel and that

C. Under existing case law, the profits from an investment made with stolen funds should belong to the investors and not to the criminals who stole the money. On December 7, 2006, in a hearing before Judge Wall, Great White obtained a ruling that Great White was likely to prevail on the merits of the claim and Judge Wall set a bond amount of $5 Million in favor of Great White. At that hearing (which was also attended by the bankruptcy law firm of Schwarzer and McPhearson) Great White also asserted that Salvatore Reale, a known mob associate, had a trust deed against the Royal Hotel which secured personal obligations of Hantges and Milanowski and nothing to do with the Royal Hotel. Further, Great White asserted that the trust deed in Reale's favor was filed post-petition and in fact should be considered to be a fraudulent transfer, which position Schwarzer and McPhearson agreed. McPhearson of that firm acknowledged that they did not know that Reale had several duplicate trust deeds against properties and that in fact Reale was going to get over $10 Million from the sale of the Royal Hotel if no action were taken to protect those funds. Great White was in fact responsible for

3

bringing the fact of the Reale duplicate trust deeds to the awareness of the bankruptcy court and motivating the filing of adversary proceedings by the Debtors' and Debtor in Possession's attorneys on Christmas Day, 2006.

7. Therefore, the disclosure of the Reale trust deeds resulted in protecting the interests of all USA Capital investors, and may still result in the acquisition by the bankruptcy estates of millions of dollars that could have easily ended upon in the hands of Reale.

8. During the Great White litigation and in an effort to protect the interests of various investors, I personally met with Reale, at which time I requested that he pay some, if not all, of his funds purported secured by the trust deeds, to the USA Capital investors, but he declined to enter into such an agreement.

9. I first became aware of the criminal background of Reale and his involvement with USA Capital in approximately 2000 when USA sought to have business clients of mine invest in that company. At the time Hantges expressed to several people that he was glad to invest the "mob's" money. I also became aware that Reale used "strong arm" tactics and threats and intimidation to settle certain investment disputes he had from time to time. Based upon my discussions with several USA Capital former brokers I learned that Reale on at least one occasion actually choked the in-house attorney in a fit of rage.

10. I believe that Reale is not a retired mobster, but is actively working with Hantges and Milanowski to defraud several investors of their money. I also believe that he in fact is a very dangerous person who will use "street justice" (a term used by Reale himself) to get his way. Since Great White actions have resulted in Reale's being denied access to millions of dollars, I believe it is reasonable to assume that Reale may in fact threaten and intimidate the Assignor\investors of Great White should be obtain information concerning their identities. It is also my understanding that the FBI is actively investigating the USA Capital case and that they have interviewed Reale concerning various matters. I am also cooperating with the FBI and Metro Intelligence with respect to an investigation of this matter.

4

11. Great White is continuing its efforts to collect money and will be filing a lawsuit against Reale in the near future. This lawsuit is designed to collect money for investors based upon a fraudulent transfer theory. Great White believes that Reale continues to be a close associate of Hantges and Milanowski and is involved in the secreting of assets from the bankruptcy estate and Great White. It is likely the actions of Great While could result in a close scrutiny of the business affairs of Reale, Hantges and Milanowski and therefore Reale has a strong incentive to threaten, intimidate and perhaps cause bodily harm to Great White's clients.

12. Reale has trust deeds on several properties totaling $34 Million, but his attorney as recently as January 4, 2007 stated in a bankruptcy court hearing that Reale was only owed $13 Million from Investment Partner LLC. Additionally, Great White has learned from statements of third parties that Reale (through the use of bogus trust deeds) is attempting to collect money which is not in fact due and give it to Hantges and Milanowski. These and other suspicious activities will continue to be the subject of Great White litigation and will help to protect all investors.

13. I am of the opinion that without the past and continuing efforts of Great White, Reale would have taken millions from investors under the noses of the Debtors' and Debtor in Possession's attorneys. Furthermore, Great White's strong investigative emphasis and desire to cooperate with law enforcement creates a substantial risk to Reale in terms of discovering various fraud schemes, tax evasion and money-laundering activities. The fact that Reale, in turn, may have in fact invested millions of dollars on behalf of hitherto unknown and unidentified organized crime figures who may well also have incentives to cause Great White and its clients harm.

14. Great White received a 2004 subpoena that requests that the identities of the investors be revealed. Great White requests, among other things, that their identities be protected and not be revealed. Great White has no difficulty in providing an accounting of the funds it received from the Royal Hotel closing and the disbursement of those funds, but is of the

5

1  unalterable opinion that if its assignor/investor identities are leaked, the clients could well be in
2  jeopardy. Furthermore, the information sought by the subpoena and the 2004 examination, if
3  made public, could also jeopardize the ability of the bankruptcy court to recover offshore assets.

FURTHER AFFIANT SAYETH NOT

DATED this \_\_11\_\_ day of January, 2007.

_____
Craig P. Orrock

SUBSCRIBED AND SWORN TO before me this \_\_11<sup>r</sup>\_\_ day of January, 2007.



_____
Notary Public

c:\wpwin\orrock\USAcapitalbky\7.affidavitofcraigporrocktosupport#1