1   WILLIAM L. McGIMSEY
    A Professional Corp.
2   Nevada Bar No. 546
    601 E. Charleston Blvd.          E-FILED - 01/17/06
3   Las Vegas, NV 89104
    (702) 382-9948
4
    Attorney for Margaret B. McGimsey
5   Trust, Bruce McGimsey, Jerry
    McGimsey, Sharon McGimsey and
6   Johnny Clark

7

8                     UNITED STATES BANKRUPTCY COURT

9                          DISTRICT OF NEVADA

10  In re:                              )
                                        )   Case No. BK-S-06-10725 LBR
11  USA COMMERCIAL MORTGAGE COMPANY,    )   Case No: BK-S-06-10726 LBR
                                        )   Case No. BK-S-06-10727 LBR
12              Debtor.                 )   Case No. BK-S-06-10728 LBR
                                        )   Case No. BK-S-06-10729 LBR
13  USA CAPITAL REALTY ADVISORS, LLC,   )
                                        )
14              Debtor.                 )   Chapter 11
                                        )
15  USA CAPITAL DIVERSIFIED TRUST DEED  )
    FUND, LLC,                          )   POINTS AND AUTHORITIES RE
16                                      )   OMNIBUS OBJECTION OF THE
                Debtor.                 )   OFFICIAL COMMITTEE OF
17                                      )   EQUITY SECURITY HOLDERS
    USA CAPITAL FIRST TRUST DEED        )   OF USA CAPITAL DIVERSIFIED
18  FUND, LLC,                          )   TRUST DEED FUND, LLC TO
                                        )   CREDITOR CLAIMS OF JOHNNY
19              Debtor.                 )   CLARK, BRUCE McGIMSEY,
    USA SECURITIES, LLC,                )   JERRY AND SHARON McGIMSEY,
20                                      )   AND MARGARET B. McGIMSEY
                Debtor.                 )   TRUST
21  _____)
                                        )
22  Affects:                            )
    □    All Debtors                    )   Date:  01/31/07
23  □    USA Commercial Mortgage Company)   Time:  9:30 a.m.
    □    USA Securities, LLC            )
24  □    USA Capital Realty Advisors, LLC)
    ■    USA Capital Diversified Trust Deed)
25       Fund, LLC                      )
    □    USA First Trust Deed Fund, LLC )
26  _____)

27          COME NOW Johnny Clark, Bruce McGimsey, Jerry McGimsey and Sharon McGimsey, and

28  Margaret B. McGimsey as Trustee of the Margaret B. McGimsey Trust (hereinafter referred to as

LAW OFFICES
WILLIAM L. McGIMSEY
A PROFESSIONAL CORPORATION
601 EAST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89104

1  "Creditors"), by and through their attorney, William L. McGimsey, Esq., and present their points and

2  authorities regarding the objection of the Committee of Equity Security Holders of USA Capital

3  Diversified Trust Deed Fund, LLC's allegedly objecting to these Creditors' Proofs of Claim.

4                                             I

5                          PROCEDURAL BACKGROUND

6          On or about September 14, 2006, an Order in the above-entitled matters entitled "Order

7  Setting Deadline to File Proofs of Claim and Proofs of Interest (Affects All Debtors)" was entered

8  by the Court. That Order recited that all Proofs of Claim or Proofs of Interest must be filed to be

9  considered timely on November 13, 2006 (the "Bar Date"). Creditors are interest holders and

10  creditors of USA Capital Diversified Trust Deed Fund, LLC and timely filed Proofs of Interest and

11  Proofs of Claim as Creditors based upon breach of contract and fraud.

12         On or about November 30, 2006, the Official Committee of Equity Security Holders of USA

13  Capital Diversified Trust Deed Fund, LLC filed an objection to Creditors' claims alleging that

14  Creditors' claims were duplicative of Proofs of Interests which these Creditors had filed and stating:

15         Moreover these claims would necessarily be subordinated in any event, pursuant to
           Bankruptcy Code Section 510. 11 U.S.C.510(b).

16

17  No actual objection to the Creditors' claims based on breach of contract or fraud were made but

18  rather the objection seems simply to assert that the Creditors' claims, having arisen out of the

19  purchase or sale of a security, would be subordinated and essentially not treated as claims at all.

20         On January 3, 2007, this Court instructed the parties to file points and authorities regarding

21  their respective positions on January 17, 2007.

22                                            II

23                     PROPRIETY OF OBJECTION TO CLAIM

24         A review of the Committee's objection to Creditors' claims shows unequivocally that the

25  Committee has not objected to the fact that Creditors have claims against the Debtor based upon

26  breach of contract and/or fraud but simply has asserted that these Creditors' claims should be, for

27  some unstated reason, only treated as equity interests.

28         These Creditors purchased their interests in the Debtor pursuant to Subscription Agreements.

                                             2

Attached hereto and made a part hereof as Exhibit A is a form of such a Subscription Agreement.

Said Subscription Agreement provides in pertinent part:

> The undersigned hereby applied to become a Member of USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, a Nevada limited liability company (the "Company"), and subscribes to purchase the number of Units herein indicated in accordance with the terms and conditions of the Operating Agreement attached as Exhibit A to the Offering Circular dated March 1, 2000, as amended or supplemented from time to time (the "Offering Circular").

Pages 13, 14 and 15 of the Offering Circular, true copies of which are attached hereto and

made a part hereof as Exhibit B, provide, among other parts, the following:

> **1. Priority of Deeds of Trust.**  All Fund loans will be secured only by first deeds of trust that encumber the property which the Fund loans are being used to acquire, develop, construct or otherwise finance. In some states, a mortgage is used to create a security interest in real property, rather than a deed of trust. For purposes of this Offering Circular, the term "deed of trust" means both a deed of trust and a mortgage....

> **3. Loan-to-Value Ratios.**  The amount of a Fund loan will generally not exceed the following percentages, based on the appraised value of the security property as determined by a independent written appraisal at the time the loan is made.

| Type of Property/Loan | Maximum Loan to Value Ratio (subject to increase by the Manager) |
|---|---|
| Residential Subdivisions (loans to land developers and residential builders) | 75% |
| Commercial Property (including but not limited to multi-unit residential property, office buildings, industrial and warehouse facilities, retail stores, shopping centers, motels, self-storage facilities, and senior housing) | 75% |
| Unimproved Land | 60% |

> These loan-to-value ratios may be increased if, in the sole discretion of the Manager, a given loan is supported by credit adequate to justify a higher loan-to-value ratio or if mortgage insurance is obtained; however, the Manager does not anticipate obtaining or requiring the borrowers to maintain mortgage insurance. In addition, the maximum loan to value ratio for unimproved land may be increased, in the Manger's discretion, to 75% if the unimproved land is already entitled (e.g., a final subdivision map has been recorded on the land), a tentative map has been approved for the unimproved land, or the Manager believes that the borrower is likely to secure key entitlements. Appraisals and loan-to value ratios may be determined on an as-completed basis for construction loans (i.e., the value of property as determined by the appraiser assuming that all of the improvements for which the loan is being sought are completed). Finally, the foregoing loan-to-value ratio will not apply to purchase-

money financing offered by the Fund to sell any real estate owned (acquired through foreclosure) or to refinance an existing loan that is in default at the time of maturity. In such cases, the Manager shall be free to accept any reasonable financing terms that it deems to be in the best interests of the Fund, in its sole discretion.

The Fund will receive an appraisal for each property on which it will make a mortgage loan. Generally, appraisers retained by the Fund shall be certified by the American Institute of Real Estate Appraisers (M.A.I. or S.R.A.), although appraisals from appraisers holding other credentials (e.g., who meet the minimum qualifications prescribed by local laws or are the type generally used by commercial lenders in the state the property is situated) may be used with respect to some Fund loans. The Manager will review each appraisal report....

**8.** <u>**No Loans to Manager.**</u>  No loans will be made by the Fund to the Manager or to any of its affiliates, except for any financing extended as part of a sale of real estate owned as a result of foreclosure. (See "Conflicts of Interest – Sale of Real Estate Owned to Affiliates".)

The evidence in this case will show that the Debtor violated all of these contractual provisions leading to the Creditors' claims herein. No actual objection to the Creditors' claims has been made. Instead, the Committee has asserted that pursuant to Section 510(b) these claims should be subordinated.

Rule 7001 of the Rules of Bankruptcy Procedure deals with what matters are to be brought by adversary proceedings. Rule 7001 specifically provides in subpart (8) that:

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination....

must be brought as an adversary proceeding. If a party-in-interest desires to bring a proceeding to subordinate these Creditors' claims, that proceeding must be brought by a party-in-interest with standing to pursue such a claim and it must be brought pursuant to an adversary proceeding.

III

IN ANY EVENT, THE COMMITTEE'S POSITION IS MERITLESS

Without waiving the Creditors' position that a proceeding to subordinate their claims must be brought as an adversary proceeding, the Creditors assert that the Committee's position is totally without merit. As far as the Creditors can ascertain, the Committee's position is based upon the assertion that an equity holder in a creditor cannot also have a claim for damages arising out of the purchase or sale of an equity interest in the Debtor. There is no legal support for this position. In fact, Section 510(b) which the Committee relies upon arose out of the very fact that purchasers of an equity position in a debtor could and did have claims for damages.

1     The case relied upon by the Committee, *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829

2     (9th Cir 2001), cites the legislative history of mandatory subordination, and states at page 829.

3     ...the argument for mandatory subordination is best described by Slain & Kripke, *The Interface Between Securities Regulation and Bankruptcy - Allocating Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U. L.Rev. 261 (1973).

4

5

6     A review of that law review article which predated the 1977 enactment of 510(b) reveals that

7     the article concerned the tension between ordinary creditors of a debtor and creditors of a debtor

8     whose claims arose out of actual or possible rescissions by the purchasers of equity interest in the

9     debtor. That article set forth the argument that creditors who had never agreed to buy an equity

10     position in the debtor should not be treated the same as rescissionary creditors who bought their

11     position in the debtor hoping to make a profit rather than simply being repaid what they were owed.

12     The article did not attempt to assert that the creditors with rescissionary claims did not in fact have

13     creditors' claims, but rather asserted that ordinary creditors should have greater rights to the debtor's

14     assets.

15     In 1977 when Congress took up this same question, it acknowledged and referred to the Slain

16     and  Kripke position and at the same time noted that the Security and Exchange Commission was of

17     the opinion that a security holder who had been defrauded should be treated the same way as any

18     other tort victim of the debtor. Attached hereto and made a part hereof as Exhibit C are copies of the

19     legislative history found at U.S. Code Cong. & Admin.News 1978, at 6154-157. In that legislative

20     history, Congress indicated it was essentially adopting the Slain and Kripke position and rejecting the

21     opinion of the Securities and Exchange Commission. Congress in its legislative history was essentially

22     dealing only with rescission claims. However, that history reveals that a claim for damages by a

23     purchaser of an equity interest would be subordinated to creditors whose claims did not arise out of

24     a purchased equity interest but would be paid ahead of other equity interests. Congress stated at page

25     6157, supra:

26     Thus, a rescission claim resulting from the purchase of a subordinated debenture would share in the proceeds of the estate before equity security holders but after

27     general unsecured creditors.

28     Hence, Congress in passing its bill recognized that purchasers of equity interests could have damage

1    claims and those damage claims, while subordinate to claims of general unsecured creditors, would

2    be paid ahead of other equity interests.

3    Congress, if it so chose, could easily have written the law to provide that any party having a

4    creditor's claim arising out of the purchase or sale of a security would be treated not as having a

5    creditor's claim but only as having an equity claim. Congress did not choose to do so and in its

6    legislative history indicated that it consciously chose not to make that decision.

7    These Creditors have been unable to find any case which has indicated that a creditor's claim

8    arising out of the purchase and sale of a security should be treated not as a creditor's claim but as

9    only an equity interest which is what the Committee would have this Court do. In fact, in the case of

10    *In re American Wagering, Inc.*, 327 B.R. 449 (9th Cir BAP 2005), the Bankruptcy Appellate Panel

11    for the Ninth Circuit, while subordinating the claim of Mr. Racusin to other unsecured creditors,

12    actually stated that Section 510(b) is not to protect other equity holders stating at page 458, "It is not

13    the other equity holders whose interests § 510(b) protects." The court goes on to state, "The purpose

14    of § 510 (b) is to protect the rights of creditors, not the rights of other shareholders."

15    In fact, the very language and theory behind Section 510(b) militates against the Committee's

16    position. The law is already clear that unsecured creditors, or in fact any creditors, are paid ahead of

17    equity interests. Thus, a statute that requires certain interests to be subordinated to unsecured

18    creditors would indicate that the interests being dealt with by the mandatory subordination provisions

19    are something other than simply equity interests. That is the case here. There is no case which holds

20    that a purchaser of a security cannot have a claim for damages or rescissionary recovery against a

21    debtor. That claim is in fact something other than an equity interest. If it were legally simply an equity

22    interest then there would be no need for a statute subordinating that interest to other unsecured

23    creditors. And as the legislative history cited above indicates, it was never the intention of Congress

24    to place such legitimate damage claims on a par with equity interests.

25    IV

26    CONCLUSION

27    The Creditors in this case have, and upon proper objection are prepared to prove claims based

28    upon breach of contract and fraud against the Debtor. These claims, admittedly under the *Betacom*

6

1  decision, supra, are subordinate to the claims of other unsecured creditors who extended credit

2  relying upon the equity in the Debtor. However, these claims are nevertheless Creditors' claims and

3  are entitled to be paid as Creditors' claims subordinate only to claims prior to unsecured claims and

4  after the claims of unsecured creditors who extended their credit to the Debtor based upon their

5  reliance upon the equity in the Debtor.

6                                    Respectfully submitted,

7

8                                    s// William L. McGimsey
                                     WILLIAM L. McGIMSEY, ESQ.
9                                    601 East Charleston Blvd.
                                     Las Vegas, NV 89104
10                                   Attorney for McGimsey and Johnny Clark