# EXHIBIT "D"

# EXHIBIT "D"

ORIGINAL

B256 (11/91) Subpoena in a Case under the Bankruptcy Code

# United States Bankruptcy Court

DISTRICT OF NEVADA

In re  USA COMMERCIAL MORTGAGE
COMPANY,

Debtor

To: Person Most Knowledgeable
USA Commercial Mortgage Co.
4484 S. Pecos Rd.
Las Vegas, NV 89121

## SUBPOENA IN A CASE UNDER
## THE BANKRUPTCY CODE

Case No. BK-S-06-10725-LBR

Chapter _____ 11

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Loan Servicing Agreements and Powers of Attorney for Fertitta Enterprises, Inc., Daniel M. Tabas and USA Capital Diversified Trust Deed Fund, LLC

| PLACE | DATE AND TIME |
|---|---|
| Jones Vargas<br>3773 Howard Hughes Plwy, 3rd Floor S.<br>Las Vegas, NV | 10/13/06<br>9 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any subpoenaed organization not a party to this proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6) made applicable to this proceeding by Rule 7030, Fed.R.Bankr.P. See Rules 1018 and 9014, Fed.R.Bankr.P.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *[signature]* ASSOCIATE ATTORNEY | 10/6/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Louis M. Bubala III
Jones Vargas, 100 W. Liberty St., 12th Floor, Reno, NV 89501     775-786-5000

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts

business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.




UNITED STATES BANKRUPTCY COURT    DISTRICT OF NEVADA    STATE OF **NEVADA**

CASE NO. **BK-S-06-10725-LBR**    DEPT. NO.    YOUR FILE

Jones Vargas    ATTORNEYS FOR:

Louis M. Bubala, III Esq.    STATE BAR NO.: 8974

3773 Howard Hughes Parkway, Third Floor South

Las Vegas, . NV 89109

*in Re USA Commercial Mortgage Company*    Date: **October 13, 2006**

    *Plaintiff*

    *vs*    Time: **9:00 am**

    *Defendant*    **AFFIDAVIT OF SERVICE**

_____**Craig  Larson**_____, being duly sworn deposes and says: That at all times herein affiant was

and is a citizen of the United States, over 18 years of age, licensed to serve civil process in the State of Nevada under license

#604,. and not a party to or interested in the proceeding in which this affidavit is made. The affiant received the

**Subpoena In a Case Under the Bankruptcy Code**

**Letter**

on the __**9th**__ day of __**October**__, __**2006**__ and served the same on the __**9th**__ day of __**October**__, __**2006**__

at _____**1:50 pm**_____ by:

delivering a copy to the witness _____**Person most Knowledgeable USA Commercial Mortgage Company**_____

by leaving copies with _____**Mark L. Olson**_____

at _____**4484 South Pecos Road, Las Vegas, NV**_____.

SUBSCRIBED AND SWORN to before me on this

**9th**    day of    **October**    **2006**

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
NORMA P. McMAHAN
Appt. No. 93-3447-1
My Appt. Expires July 1. 2009

    Affiant

Notary Public

**Legal Process Service**
626 S. Eighth Street
Las Vegas, Nevada 89101
WorkOrderNo **0611222**

## Bubala, Louis

| | |
|---|---|
| **From:** | Steven Strong [sstrong@RQN.COM] |
| **Sent:** | Thursday, October 12, 2006 4:33 PM |
| **To:** | Bubala, Louis |
| **Cc:** | Chubb, Jan; Annette Jarvis; Elaine Monson |
| **Subject:** | Response to Subpoena |
| **Attachments:** | LSA - Fertitta Enterprises.pdf; Fertitta POAs.pdf; Loan Servicing - USA Comm, Diversified Trust Deed Fund & Milanowski).pdf; Div POA for Colt Gateway.pdf; LSA - Danial Tabas.pdf; Tabas POAs.pdf |

Louis,

As we discussed, I send you the attached documents in response to the subpoena served by your firm on USA Commercial Mortgage.  Please let me know if you have any questions.

Thanks.

Steven Strong
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Direct: 801-323-3382
Fax: 801-532-7543
www.rqn.com

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

## Bubala, Louis

| | |
|---|---|
| **From:** | Bubala, Louis |
| **Sent:** | Thursday, October 12, 2006 5:57 PM |
| **To:** | Steven Strong |
| **Cc:** | Chubb, Jan; Annette Jarvis; Elaine Monson |
| **Subject:** | RE: Response to Subpoena |

Steve: Thank you. However, the Fertitta-USA Commercial LSA that you provided is post petition, apparently entered into concerning the post-petition supplemental Rio Rancho loan. Do you have the pre-petition Fertitta-USA Commercial LSA, the one that governs the Colt Gateway loan? Please let me know if you can provide this, or will require another subpoena. Lou

---

**From:** Steven Strong [mailto:sstrong@RQN.COM]
**Sent:** Thursday, October 12, 2006 4:33 PM
**To:** Bubala, Louis
**Cc:** Chubb, Jan; Annette Jarvis; Elaine Monson
**Subject:** Response to Subpoena

Louis,

As we discussed, I send you the attached documents in response to the subpoena served by your firm on USA Commercial Mortgage. Please let me know if you have any questions.

Thanks.

Steven Strong
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Direct: 801-323-3382
Fax: 801-532-7543
www.rqn.com

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

10/19/2006

## Bubala, Louis

| | |
|---|---|
| **From:** | Steven Strong [sstrong@RQN.COM] |
| **Sent:** | Thursday, October 12, 2006 8:20 PM |
| **To:** | Bubala, Louis |
| **Cc:** | Chubb, Jan; Annette Jarvis; Elaine Monson |
| **Subject:** | RE: Response to Subpoena |

Lou, no need for another subpoena. Either the Company has the document you are
requesting, or it does not. I believe we have provided you with all of the responsive
documents that the Company has, but I will ask them tomorrow to look one more time for a
prepetition LSA for Fertitta.

Thanks.

-----Original Message-----
From: "Bubala, Louis" <lbubala@jonesvargas.com>
To: "Steven Strong" <sstrong@RQN.COM>
Cc: "Chubb, Jan" <jlc@jonesvargas.com>; "Annette Jarvis" <ajarvis@RQN.COM>; "Elaine
Monson" <emonson@RQN.COM>
Sent: 10/12/06 6:58 PM
Subject: RE: Response to Subpoena

Steve: Thank you. However, the Fertitta-USA Commercial LSA that you provided is post
petition, apparently entered into concerning the post-petition supplemental Rio Rancho
loan. Do you have the pre-petition Fertitta-USA Commercial LSA, the one that governs the
Colt Gateway loan? Please let me know if you can provide this, or will require another
subpoena. Lou


_____

From: Steven Strong [mailto:sstrong@RQN.COM]
Sent: Thursday, October 12, 2006 4:33 PM
To: Bubala, Louis
Cc: Chubb, Jan; Annette Jarvis; Elaine Monson
Subject: Response to Subpoena


Louis,


As we discussed, I send you the attached documents in response to the subpoena served by
your firm on USA Commercial Mortgage. Please let me know if you have any questions.


Thanks.


Steven Strong
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Direct: 801-323-3382
Fax: 801-532-7543
www.rqn.com <http://www.rqn.com/>

1

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

# EXHIBIT "E"

# EXHIBIT "E"

1  Annette W. Jarvis, Utah Bar No. 1649                          **E-FILED ON May 26, 2006**
   RAY QUINNEY & NEBEKER P.C.
2  36 South State Street, Suite 1400
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
4  Facsimile: (801) 532-7543
   Email: ajarvis@rqn.com
5       and
   Lenard E. Schwartzer, Nevada Bar No. 0399
6  Jeanette E. McPherson, Nevada Bar No. 5423
   SCHWARTZER & MCPHERSON LAW FIRM
7  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada 89146-5308
8  Telephone: (702) 228-7590
   Facsimile: (702) 892-0122
9  E-Mail: bkfilings@s-mlaw.com

10 Attorneys for Debtors and Debtors-in-Possession

11

12                          **UNITED STATES BANKRUPTCY COURT**

                                 **DISTRICT OF NEVADA**

13 In re:                                              Case No. BK-S-06-10725 LBR
   USA COMMERCIAL MORTGAGE COMPANY,                    Case No. BK-S-06-10726 LBR
14                                        Debtor.      Case No. BK-S-06-10727 LBR

15 In re:                                              Case No. BK-S-06-10728 LBR
   USA CAPITAL REALTY ADVISORS, LLC,                   Case No. BK-S-06-10729 LBR
16                                        Debtor.
                                                       Chapter 11
17 In re:
   USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,       Jointly Administered Under
18                                        Debtor.      Case No. BK-S-06-10725 LBR

19 In re:
   USA CAPITAL FIRST TRUST DEED FUND, LLC,
20                                        Debtor.      **OPPOSITION TO DIRECT LENDERS'**
                                                       **MOTION FOR RELIEF FROM THE**
21 In re:                                              **AUTOMATIC STAY (AFFECTS USA**
   USA SECURITIES, LLC,                                **COMMERCIAL MORTGAGE)**
                                          Debtor.
22 Affects:
23   ☐ All Debtors
     ☒ USA Commercial Mortgage Company
24   ☐ USA Securities, LLC
     ☐ USA Capital Realty Advisors, LLC                Date:  June 5, 2006
25   ☐ USA Capital Diversified Trust Deed Fund, LLC    Time:  9:30 a.m.
     ☐ USA First Trust Deed Fund, LLC
26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    USA Commercial Mortgage Company ("USACM"), by and through its undersigned

2    counsel, hereby responds in opposition to the Direct Lenders' Motion For Relief From the

3    Automatic Stay (the "Motion for Relief) (docket no. 208, filed May 11, 2006).

4    The Motion for Relief should be denied because the Direct Lenders have failed to comply

5    with Rule 2019 of the Fed.R.Bankr.P. and the Court's directive[1], the specific requirements set

6    forth in the Loan Servicing Agreement to remove USACM as loan servicer have not been met, and

7    the Direct Lenders have not established "cause" under 11 U.S.C. § 362(d) to obtain relief from the

8    stay. This Opposition is supported by the Declarations of Thomas J. Allison on file in this case,

9    the arguments set forth below, and other relevant items of record before this Court in the Debtor's

10    bankruptcy case.

### STATEMENT OF FACTS

11

12    1.    The jointly administered Debtors, including USACM, filed voluntary petitions for

13    relief on April 13, 2006 (the "Petition Date").

14    2.    Prior to the Petition Date, USACM was primarily in the business of originating,

15    brokering, and servicing commercial real estate loans and fractional interests therein.   USACM

16    has not originated or brokered any new loans since the Petition Date, and will not do so without

17    Court approval.

18    3.    On the Petition Date, Thomas J. Allison ("Allison") of Mesirow Interim Financial

19    Management ("Mesirow") became the President of USACM and the Manager of the four

20    remaining Debtors who are limited liability companies.  In an order entered April 19, 2006, this

21    Court authorized the Debtors' employment of Allison as the Chief Restructuring Officer for an

22    interim period until July 27, 2006.

23    4.    Since the Petition Date, the Debtors, under Allison, have worked hard to begin

24    analyzing and unraveling the problems the Debtors face which have arisen as a result of past

25    business practices and irregularities in servicing the loans.   Specifically, Allison and his Mesirow

26    team are thoroughly investigating and evaluating the Debtors' files and records to determine,

27

28    _____

[1] To the extent the Direct Lenders provide the information required under Rule 2019, USACM reserves the right to
supplement its opposition to the Motion for Relief.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

among other things, what portion of the funds held by USACM represent unpaid servicing and loan origination fees, which investors have been overpaid as a result of USACM's pre-petition practice of making regular monthly interest payments regardless of the status of the underlying loan, and which investors have been underpaid, including investors to whom principal repayments were not remitted when collateral was released pre-petition. Further complicating this investigative effort is that it appears that more than 60% of the Debtors' investors were invested in more than one loan. Thus, any individual investor may have been overpaid on a non-performing loan, on the one hand, but under-paid or properly paid on a performing loan. Accordingly, the Debtors are attempting to determine the individual status of each investor in each loan and the net amounts due to or from investors on all loans in the portfolio.

5.    USACM continues to be the loan servicer for approximately 115 commercial loans having a combined outstanding balance of approximately $962 million (the "Serviced Loans"), nearly all of which are secured by various real estate projects or developments. The loan documents and other records of USACM indicate that there are approximately 3,600 investors (the "Direct Lenders") whose names appear as a "Lender" for one or more of the Serviced Loans.

6.    Typically, there are dozens or even hundreds of Direct Lenders on a particular loan, with each lender having only a small fractionalized share. Among the Direct Lenders are two of the other Debtors, USA Capital Diversified Fund, LLC ("Diversified") and USA Capital First Trust Deed Fund, LLC ("Capital First") (collectively, the "Funds") and it appears that the Funds had an interest in many of the Serviced Loans. Diversified has approximately 1,900 LLC members and Capital First has approximately 1,300 members (collectively, the "Fund Members"). There is substantial overlap among the Direct Lenders and the Fund Members.

7.    At the time that the investors contracted to participate as lenders of fractional interests in the Serviced Loans, they also entered into an individual loan servicing agreement (the "Loan Servicing Agreement") whereby they authorized and empowered USACM, on behalf of each investor, to obtain the necessary documents to effectuate and secure the Serviced Loans, as well as to service them.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.    Attached as Exhibit A to the Motion for Relief is a copy of a Loan Servicing Agreement that was executed by Mojave Canyon, Inc.[2]  This Loan Servicing Agreement is dated February 28, 2006 and is representative of a loan servicing agreement that was executed by an investor participating in a loan brokered by USACM.

9.    As of the Petition Date, a significant portion of the Serviced Loans were delinquent in the payment of interest or otherwise could be considered non-performing (the "Nonperforming Loans").  Despite the fact that many of the borrowers were not making monthly payments on their loans as required by the relevant loan documents, USACM continued to pay regular monthly interest to each of the Direct Lenders (including the Funds, who in turn made regular monthly payments to the Fund Members) whether or not USACM had actually collected payments from the borrowers.  As a result, the Debtors may have claims against each Direct Lender and Fund Member who received overpayments from USACM or the Funds.

10.    No interest payments have been made to the Direct Lenders or the Fund Members since the Petition Date.  Instead, USACM is holding payments that have been collected and continue to be collected from the borrowers on behalf of the Direct Lenders (including the Funds) in a new, post-petition Debtor-in-Possession DIP Collection Account (the "DIP Collection Account"), except for the servicing fees and other fees USACM is contractually entitled to collect and that have been approved by the Court pursuant to the Debtors' revised cash budget.  No funds from any other sources have been commingled with or placed in the DIP Collection Account since the Petition Date.

11.    The Debtors maintain operating accounts separate from the DIP Collection Account for use in facilitating their business operations and administrative duties.

12.    On May 24, 2006, the Court entered an order approving the Debtors' motion requesting limited authority to use cash of the Debtors to fund limited activities of the Debtors pursuant to a revised cash budget through July 16, 2006.  This initial time period of cash use was requested by the Debtors in order to enable USACM, which has the right and obligation under its

---

[2] Mojave Canyon, Inc. is one of the Direct Lenders represented by Jones Vargas, and the Loan Servicing Agreement it executed was attached by Jones Vargas as a representative example of the form of loan servicing agreement that was

Loan Servicing Agreements with the Direct Lenders and under Nevada state law, to perform appropriate loan-by-loan and investor-by-investor analyses and reconciliations to determine the extent and effect of the overpayments, underpayments, and collateral releases.

13.    On May 8, 2006, the Debtors filed a Motion to Temporarily Hold Funds Pending a Determination Of The Proper Recipients and Memorandum of Points and Authorities (the "Motion to Hold Funds") (docket no. 173).  The Motion to Hold Funds requests an Order from the Court permitting USACM to temporarily hold the funds USACM has collected and continues to collect from borrowers in its capacity as the loan servicer pending the completion of Mesirow's investigation, analysis and report to the Court recommending the proper disbursement of the funds, and pending the Court's order on or after July 25, 2006 relating to the distribution of the funds to the proper recipients.

14.    On May 11, 2006, certain Direct Lenders, who are not specifically identified, filed the Motion for Relief seeking relief from the automatic stay, pursuant to Fed. R. Bankr. P. 9013 and 11 U.S.C. § 362(d), to permit them to remove USACM as the loan servicing agent under the terms of the Loan Servicing Agreement, and specifically paragraphs 3 and 8 thereof.

## MEMORANDUM OF LAW

**I.     THE MOTION FOR RELIEF SHOULD BE DENIED BECAUSE THE DIRECT LENDERS HAVE FAILED TO COMPLY WITH RULE 2019 OF THE FED.R.BANKR.P AND THE COURT'S DIRECTIVE**

As a preliminary matter, the Motion for Relief should be denied because USACM is unable to ascertain the specific Serviced Loans in which the Direct Lenders claim to hold an interest or the extent of that interest.   Rule 2019(a) of the Bankruptcy Rules contemplates that in a chapter 11 reorganization case, every entity representing more than one creditor or equity security holder must provide, inter alia, the name and address of the creditor or equity security holder whom they represent, and the nature and amount of the claim or interest.  Furthermore, the Court specifically directed at the May 18, 2006 hearing that all parties in interest, including the Direct Lenders who may or may not also be creditors, comply with the requirements of Rule 2019.

typically executed by an investor.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1       Rule 2019(b) states that if a bankruptcy court determines that the requirements of

2  subsection (a) have not been met, then it can refuse to permit the entity representing the creditor or

3  equity security holder to be heard.  In this instance, only after USACM's counsel demanded

4  disclosure of the represented parties did Jones Vargas provide to USACM's counsel the names of

5  the Direct Lenders who it is representing in connection with the Motion for Relief.[3]  However,

6  Jones Vargas still has not provided to USACM any of the other information required by Rule

7  2019, and has not provided any information about the identity of the specific Serviced Loans in

8  which the Direct Lenders are claiming an interest or which could be affected by this Motion for

9  Relief, or the extent of that interest.  The Motion for Relief is silent on these critical issues and

10  instead only states that "Jones Vargas represents numerous direct lenders who are named

11  beneficiaries under recorded deeds of trust (hereinafter "Direct Lenders"), of certain loans which

12  were originated and serviced by Debtor USA Commercial Mortgage Co. . . ."  See Motion for

13  Relief at p. 2.   This statement clearly is not sufficient to satisfy the requirements of Rule 2019(a)

14  or the Court's directive at the May 18, 2006 hearing.  It also does not give adequate notice to all

15  parties (including other lenders in the relevant loans) that might be affected by this Motion for

16  Relief so that they have the opportunity to file a response thereto.  Furthermore, USACM cannot

17  reasonably be expected to be able to adequately respond to the Motion for Relief when it does

18  know what Serviced Loans are at issue, or the Direct Lenders interest in those loans.  On this basis

19  alone, the Motion for Relief should be denied.

20  **II.**    **THE MOTION FOR RELIEF MUST BE DENIED BECAUSE THE SPECIFIC**
           **REQUIREMENTS SET FORTH IN THE LOAN SERVICING AGREEMENT TO**
21       **REMOVE USACM AS SERVICER HAVE NOT BEEN ESTABLISHED**

22       The Direct Lenders seek relief from the automatic stay to permit it to remove USACM as

23  the servicer of unidentified Serviced Loans in which the Direct Lenders claim to hold a fractional

24  interest.  In the Motion for Relief, the Direct Lenders rely on paragraphs 3 and 8 of the Loan

25  Servicing Agreement as the contractual authority which allegedly permits them to take the action

26

27  [3] By letter dated May 25, 2006, Jones Vargas identified Andrew Dauscher, Ellen Dauscher, Evelyn Asher Sheerin,
    Trustee for the Benefit of the Chris H. Sheerin (deceased) and Evelyn Asher Sheerin 1984 Trust Dated 5/31/84,
28  Evelyn Asher Sherrin, Trustee of the Chris and Evelyn Sheerin 1990 Trust, Sheerins Inc., Fertitte Enterprises, and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    requested.  However, a review of those provisions, along with other pertinent portions of the Loan

2    Servicing Agreement, indicate that the Motion for Relief must be denied because the specific

3    requirements set forth in the Loan Servicing Agreement which would allow the removal of

4    USACM as the loan servicer have not been established by the Direct Lenders.

5            Paragraph 8 of the Loan Servicing Agreement states as follows:

6        8.    Termination.  Lender may, by 30 days written notice to USA, terminate
         this agreement, and the power of attorney granted, if one is granted, under Section
7        11 of this Agreement, if USA fails to perform its obligations hereunder.

8

9            However, when the practical application of the Direct Lenders' suggested interpretation of

10   paragraph 8 is considered, and particularly when it is analyzed in context with some of the other

11   provisions of the Loan Servicing Agreement, it becomes apparent that paragraph 8 does not govern

12   the removal of USACM as the loan servicer of one of the Serviced Loans.  For instance, if

13   paragraph 8 could be used by any Direct Lender to remove USACM as the loan servicer of a

14   Serviced Loan (as suggested in the Motion for Relief), the practical effect of such an interpretation

15   would be that either multiple servicers would be servicing the same loan, or no entity would be

16   servicing a fractionalized interest in the loan.  Such an interpretation of paragraph 8 is not only

17   impractical but Nevada law is clear that the interpretation of contract provisions must be fair and

18   reasonable, as opposed to harsh and unreasonable.  See Shelton v. Shelton, 78 P.3d 507, 510 (Nev.

19   2003).[4]

20

21   _____

22   Mojave Canyon, Inc. as the Direct Lenders represented in connection with the Motion for Relief.  As a consequence
of this late disclosure, USACM cannot adequately respond to the Motion for Relief.
23   [4] Nevada law requires that contractual provisions should be harmonized whenever possible and construed to reach a
reasonable solution.  See Eversole v. Sunrise Villas VIII Homeowners, Ass'n, 925 P.2d 505, 509 (Nev. 1996).
     Therefore, perhaps paragraph 8 was intended to govern those situations in which the Direct Lender desires to
24   terminate USACM's services in connection with the making and servicing of future loans, or where the Direct Lender
desires to sell all or a part of its interest in one of the Serviced Loans.  For instance, paragraph B states that "[Direct]
25   Lender lends, or wishes to lend, money to various borrowers . . . from time to time, which loans are arranged by USA
and are secured by interests in real and/or personal property." (Emphasis added).  Likewise, paragraph C states that
26   "[Direct] Lender wishes to retain the services of USA in connection with making and servicing a loan or loans . . .
including all Loans heretofore or hereafter placed by Lender through USA . . . " (Emphasis added).  It is apparent
27   from these provisions that the Loan Servicing Agreement was not intended to apply to just a single loan, but rather
was also intended to apply to those situations in which the Direct Lender decided to participate in multiple loans
28   brokered or arranged by USA.  Accordingly, to the extent that any Direct Lender determined that it no longer desired
USACM to act as its agent in arranging or servicing future loans, then paragraph 8 might be utilized to terminate
USACM's ability to do so.  Furthermore, the second section of paragraph 5 specifically contemplates that if a Direct

1    Furthermore, paragraph 3 of the Loan Servicing Agreement specifically identifies the

2  circumstances in which USACM can be removed as the loan servicer of one of the Serviced Loans.

3  Therefore, even if the language of paragraph 8 could be interpreted as also covering the removal of

4  USACM as the loan servicer, the broader language of paragraph 8 would be trumped by the more

5  specific language of paragraph 3. Indeed, it is also well settled that where a contract contains two

6  conflicting provisions, the more specific provision will govern. See Shelton v. Shelton, 78 P.3d at

7  510; Alamo Rent-A-Car, Inc. v. State Farm Mut. Auto. Ins., Co., 953 P.2d 1074 (Nev. 1998)(more

8  specific language contained in one insurance policy prevailed over the other insurance policy).

9  Paragraph 3 of the Loan Servicing Agreement, which contains the more specific provision

10  governing the removal of USACM as the loan servicer, states as follows:

11    3.    Rights of Lender if USA Fails to Act. Pursuant to NAC 645B.073, in the
       event of default, foreclosure, or other matters that require action, if for any reason

12     USA fails to act on Lender's behalf as authorized herein, then [Direct] Lender
       may, **with approval of fifty-one percent (51%) or more of all of the holders of**

13     **the beneficial interest of record in the Loan**, act on behalf of all such holders of
       beneficial interest of record. These actions may include, but are not limited to:

14

15       (a)    **the designation of the mortgage broker, servicing agent or**
           **other person to act on behalf of the holders of the beneficial interests**

16         **in the loan; and**
         (b)    the sale, encumbrance or lease of real property owned by the

17         holders resulting from a foreclosure or the receipt of a deed in lieu of a
         foreclosure.

18

19  (Emphasis added).

20    However, the Direct Lenders also cannot rely on paragraph 3 to obtain relief from the

21  automatic stay for the purpose of removing USACM as the loan servicer because the main

22  requirement set forth therein, i.e. fifty-one percent (51%) or more of all of the holders of the

23  beneficial interest of record have approved the removal, has not been established by the Direct

24  Lenders. While USACM recently learned the identity of the Direct Lenders who filed the Motion

25  for Relief, they learned little else, such as the specific Serviced Loans in which the Direct Lenders

26  _____

27  Lender ever desires to sell all or any part of its interest in a Serviced Loan, then USACM will assist the Direct Lender
   in finding a potential buyer and completing the necessary documentation for that transaction. Under that

28  circumstance, a Direct Lender might utilize paragraph 8 to terminate USACM's servicing obligations when the Direct
   Lender is going to sell its interest in a Serviced Loan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  hold a fractionalized interest, or the extent of that interest. Having failed to identify the specific

2  Serviced Loans at issue or to establish that 51% or more of the holders of the beneficial interest in

3  those loans have approved the removal of USACM as the loan servicer, the Direct Lenders have

4  not carried their burden of proof and established sufficient cause to grant the Motion for Relief.

5  Accordingly, it must be denied.

6  **III.    THE DIRECT LENDERS HAVE NOT ESTABLISHED "CAUSE" UNDER 11 U.S.C. § 362(D) FOR RELIEF FROM THE STAY TO BE GRANTED**

7

8         The Direct Lenders assert that relief from the automatic stay should be granted "for cause"

9  under 11 U.S.C. § 362(d)(1). That sub-section provides:

10             (d) On request of a party in interest and after notice and a hearing, the
   court shall grant relief from the stay provided under subsection (a) of this section,
11   such as by terminating, annulling, modifying, or conditioning such stay –

12                   (1) for cause, including the lack of adequate protection of an
   interest in property of such party in interest;
13

14  The Bankruptcy Code does not define "cause", and therefore, whether relief from the stay should

15  be granted is subject to the court's discretion and is determined on a case by case basis. See In re

16  Beguelin, 220 B.R. 94, 97-98 (9th Cir. BAP (Nev.) 1998).

17         In this case, the Direct Lenders contend that "cause" exists as a result of USACM's

18  mismanagement under the Loan Servicing Agreement. Specifically, the Direct Lenders contend

19  that USACM did not keep proper account records, did not diligently collect all payments and

20  promptly pay each lender, and did not foreclose or take other necessary action when certain

21  borrowers failed to pay on their loans. See Motion for Relief at p. 5. While USACM's new

22  management has acknowledged that certain irregularities occurred under the watch of the prior

23  management, the extent of those irregularities and their full impact is not known at this time.

24  Indeed, Allison and the Mesirow team are now in the process of thoroughly investigating and

25  evaluating the Debtors' files and records to determine, among other things, the status of each loan,

26  the value of the collateral securing the loan, the amount of unpaid servicing and loan origination

27  fees, and which investors have been overpaid as a result of USACM's pre-petition practice of

28  making regular monthly interest payments regardless of the status of the underlying loan, and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  which investors have been underpaid.  Because the full and complete facts are not yet known, it is

2  premature to determine at this time whether sufficient "cause" exists under § 362(d)(1) to grant the

3  Motion for Relief, nor at this time have the Direct Lenders carried their burden of proof that such

4  cause exists.

5       Furthermore, even assuming that there was significant mismanagement on the part of the

6  Debtors former management, courts have found that pre-petition mismanagement does not

7  necessarily constitute sufficient "cause" for relief from the automatic stay to be granted under §

8  362(d).  Indeed, if that were the prevailing rule, then arguably "cause" to grant relief from the

9  automatic stay would exist in virtually every bankruptcy case.  For example, in Matter of Holly's,

10  Inc., 140 B.R. 643 (Bankr. W.D.Mich. 1992), the court found that the pre-petition mismanagement

11  in that case should not be considered sufficient "cause" to grant relief from the automatic stay

12  under § 362(d)(1) even where the mismanagement included such things as (1) failure to pay pre-

13  petition real and personal property taxes; (2) failure to pay withholding and payroll taxes; (3)

14  failure to pay trade creditors; (4) failure to establish a separate account for the Crowne Plaza as

15  required by the management agreement; (5) commingling the funds of the partnership and another

16  entity; and (6) the general disregard for certain requirements of the management agreement and

17  the loan documents.  Id. at 688-89.  In reaching this conclusion, the court was largely persuaded

18  by the fact that the current management was not involved in those activities and was making on-

19  going efforts towards correcting the past mismanagement.  Id. at 690.  See also In re Forest

20  Ridge, II. Ltd. Parnership, 116 B.R. 937, 946 (Bankr. W.D.N.C. 1990)(movant did not carry

21  burden on its allegation of mismanagement sufficient to constitute cause under § 362(d)).

22       Likewise, in this case, all of the alleged wrongs asserted by the Direct Lenders occurred

23  pre-petition and were undertaken by management that is no longer in place.  As of the Petition

24  Date, Thomas Allison was appointed as the chief restructuring officer of USACM and the other

25  Debtors, and since that time he has undertaken significant measures to rectify the organizational

26  defects that created the problems that led to the Debtors' bankruptcy filings.  Specifically, the

27  Debtors are holding payments that have been collected and continue to be collected from the

28  borrowers on behalf of the Direct Lenders in the new DIP Collection Account.  No funds from any

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1 | other sources have been commingled with or placed in the DIP Collection Account since the

2 | petition date.  The Debtors are also maintaining operating accounts separate from the DIP

3 | Collection Account for use in facilitating their business operations and administrative duties.

4 | Allison and the Mesirow team are also keeping proper accounting records and they are contacting

5 | borrowers whose loans are delinquent with the result being that millions of dollars have been

6 | brought into the estate post-petition from non-performing loans.  Accordingly, because the source

7 | of the alleged mismanagement is no longer involved in the Debtors' management and the current

8 | management is operating effectively and responsibly, "cause" does not exist to grant relief from

9 | the stay.

10 |      At this early stage, the Motion for Relief also undermines one of the main purposes of the

11 | automatic stay which is to permit debtors a limited period of time to try and sort out their business

12 | affairs, propose a plan of reorganization to payoff creditors, and undertake efforts to see if the

13 | business can be saved.  See In re Sherman, 441 F.3d 794, 814 (9th Cir. 2006) ("Indeed, the

14 | legislative history of the Bankruptcy Code makes clear that one of the purposes of the automatic

15 | stay is to give a debtor a 'breathing spell from his creditors' during which the debtor can 'attempt a

16 | repayment . . . plan, or simply . . . be relieved of the financial pressures that drove him into

17 | bankruptcy'").  The Debtors, under their new management, are working very hard to analyze the

18 | loans at issue, and to get a report filed with the Court by the end of July which will recommend the

19 | proper distribution of the funds being collected to the investors and other parties in interest.  There

20 | is no question but that granting the Motion for Relief will have a significant negative effect on

21 | those efforts.

22 |      Furthermore, the legislative history of the Bankruptcy Code makes it clear that one of the

23 | other purposes of the automatic stay is to protect creditors by providing for "an orderly liquidation

24 | procedure under which all creditors are treated equally" rather than "a race of diligence by

25 | creditors for the debtor's assets."  See In re Sherman, 441 F.3d at 814, citing, H.R. Rep. No.

26 | 950595 at 340 (1977), as reprinted in 1978 U.S.C.C.A. 5963, 6296-97.  In this case, the Motion for

27 | Relief has the potential to significantly harm other investors, because it will cut off a portion of the

28 | revenue stream (i.e., servicing fees) which is funding the work being undertaken by current

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   management, and it may compromise the Debtors ability to collect amounts that have been

2   overpaid to certain investors as a result of USACM's pre-petition practice of making regular

3   monthly interest payments to the investors regardless of the status of the underlying loan.  There is

4   no question that if the Motion for Relief is granted, the Direct Lenders may give notice under the

5   Loan Servicing Agreement that they are removing USACM as the servicing agent for the

6   unidentified performing loans even though the Direct Lenders and the other investors in the loans

7   still owe money to the estate, thereby harming its creditors.  In addition, the Direct Lenders may

8   request the removal of USACM as servicing agent for any non-performing loans in which they

9   hold an interest in an attempt to avoid paying back any over-payments they received on those non-

10  performing loans.  Some investors have suggested that the funds currently being collected and held

11  by the Debtors in the DIP Collection Account should simply be turned over to them subject to the

12  Debtors' setoff, recoupment or other rights.  However, that solution is not workable because even

13  if the Debtors did turn over those funds but retained their setoff, recoupment or other rights,

14  undoubtedly a significant portion (if not most) of the Direct Lenders would not return those funds

15  willingly.  This would then result in the Debtors having to file needless litigation which would

16  result in significant expense to the Debtors' estate which they cannot afford.  Given the current

17  situation, the only approach that will benefit all investors fairly is to not grant the relief being

18  requested by the Direct Lenders, and instead permit the Debtors to collect and hold the funds from

19  the loans in the DIP Collection Account until the new management of the Debtors has sorted out

20  the full underlying facts and made its report to the Court in July.

21  / / /

22

23  / / /

24

25  / / /

26

27  / / /

28  / / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Based on the foregoing, USACM respectfully requests that the Court deny the Direct

Lenders' Motion for Relief from the Automatic Stay.

Respectfully submitted this 26th day of May, 2006.

/s/     *JEANETTE E. MCPHERSON*
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

877195.01