# EXHIBIT "H"

# EXHIBIT "H"

## MORTGAGE DEED AND SECURITY AGREEMENT

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, G R E E T I N G:

KNOW YE THAT **COLT GATEWAY LLC** of One Odell Plaza, Yonkers, NY 10701, ("Grantor"), for the consideration of Five Million Seven Hundred Thousand and 00/100 Dollars ($5,700,000.00), and other valuable considerations, received to its full satisfaction of **FERTITTA ENTERPRISES, INC., USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC AND USA COMMERCIAL MORTGAGE COMPANY,** of 4484 South Pecos Road, Las Vegas, NV 89121 (see **Exhibit A** attached hereto for each Grantee mortgage amount) (collectively "Grantee") does give, grant, bargain, sell and confirm unto the Grantee, its successors and assigns forever, all those certain pieces or parcels of land, with the improvements thereon, more particularly bounded and described as shown on **SCHEDULE A**, attached hereto ("Premises").

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any ways appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof;

Together with all right, title and interest of the Grantor, if any, in and to the land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the above-described premises;

Together with all fixtures, appliances, machinery and equipment now or hereafter installed on the Premises and all the appurtenances thereto, thereon or therein;

Together with any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises as a result of (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any street; or (c) any other injury to, or decrease in, the value of the Premises, to the extent of all amounts which may be secured by this mortgage at the date of receipt of any such award or payment by the Grantee.

To have and to hold the above granted and bargained Premises, with the appurtenances thereof, unto it, the said Grantee, its successors and assigns forever, to him and their own proper use and behoof. And also, the said Grantor does, for itself, its successors and assigns, covenant with the said Grantee, its successors and assigns, that at and until the ensealing of these presents, it is well seized of the Premises as a good, indefeasible estate in FEE SIMPLE; and has good right to bargain and sell the same in manner and form as is above written; and that the same are free and clear of all encumbrances whatsoever, except as set forth in the title insurance policy insuring Grantee's interest in the Premises.

And furthermore, the said Grantor does, by these presents, bind itself and its successors and assigns forever to WARRANT AND DEFEND the above granted and bargained Premises to it, the said Grantee, its successors and assigns, against all claims and demands whatsoever, except as aforesaid.

**RETURN TO:** nd.

1

BROWN RUDNICK BERLACK ISRAELS LLP
CITYPLACE I 185 ASYLUM STREET
HARTFORD, CT 06103-3402

THE CONDITION OF THIS DEED is such, that whereas the Grantor has executed and delivered to Grantee its Promissory Note of even date herewith ("Note") in the principal sum of **Five Million Seven Hundred Thousand ($5,700,000.00) Dollars**, a copy of which Note is attached hereto and made a part hereof as <u>Exhibit A</u>.

The Grantor and the Grantee covenant as follows:

<u>Payment of Indebtedness</u>.  The Grantor shall pay the indebtedness evidenced by the Note described herein and the interest thereon in lawful money of the United States at the time and in the manner set forth in the note.

<u>Payment of Taxes and Assessments</u>.  The Grantor shall pay all taxes, assessments, water rates, sewer rents, utility charges and other charges, and any liens prior to the lien of this mortgage now or hereafter assessed or liens on or levied against the Premises or any part thereof, and in case of default in the payment thereof when the same shall be due and payable, it shall be lawful for the Grantee, without notice or demand, to pay the same or any of them; and the monies paid by the Grantee in discharge of taxes, assessments, water rates, sewer rents, utility charges and other charges, and prior liens shall be a lien on the Premises added to the amount of said note or obligation and secured by this mortgage, payable on demand, with interest at the rate set forth in the note secured hereby from the time of payment of the same; and upon request of the Grantee, the Grantor shall exhibit to the Grantee receipts for the payment of all items specified in this Article prior to the date when the same shall become delinquent.

<u>Condemnation</u>.  Notwithstanding any taking by eminent domain, alteration of the grade of any street or other injury to, or decrease in, value of the Premises by any public or quasi-public authority or corporation, the Grantor shall continue to pay interest on the entire principal sum then secured and all payments required by the note and this mortgage until any such award or payment shall have been actually received by the Grantee, and any reduction in the principal sum resulting from the application by the Grantee of such award or payment as hereinafter set forth shall be deemed to take effect only on the date of such receipt; said award or payment may, at the option of the Grantee, be retained and applied by the Grantee toward payment of the monies secured by this mortgage, or be paid over wholly or in part to the Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade or other injury to the Premises, or for any other purpose or object satisfactory to the Grantee, but the Grantee shall not be obligated to see to the application of any amount paid over to the Grantor; and that if, prior to the receipt by the Grantee of such award or payment, the Premises shall have been sold on foreclosure of this mortgage, the Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon.

<u>Insurance</u>.  The Grantor shall keep the Premises insured for the benefit of the Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, pollutants, war risks, if available, and other so-called

2

extended coverage risks and other hazards, casualties and contingencies, as may be required by the Grantee from time to time, and provide coverage of not less than the coverage encompassed by Fire, Extended Coverage, and Vandalism and Malicious Mischief perils broadened to include the so-called "All Risk of Physical Loss", all in format approved by the Grantee and in sufficient amounts to prevent the application of any insurance policy co-insurance contribution on any loss and shall in no event be less than the full face amount of the Note. All insurance herein provided for shall be obtained by the Grantor (notwithstanding the procurement of other insurance policies by other persons or parties and relating to the Mortgaged Property) and carried in companies approved by the Grantee, and all policies, including additional and renewal policies, marked "premiums paid" and containing an agreement by the insurer that the policy shall not be canceled or materially changed without at least thirty (30) days' prior written notice to the Grantee, shall be delivered to the Grantee, and all renewal policies, including additional and renewal policies, shall be payable, in case of loss or damage, to the Grantee as the first mortgagee, and shall contain the standard non-contributing mortgagee clause entitling the Grantee to collect all proceeds payable under all such insurance, as well as standard waiver of subrogation endorsement, and waiver of other endorsements, as the Grantee may require, all to be in form acceptable to the Grantee. In the event of any loss, the Grantor will give immediate notice to the Grantee. The Grantor hereby authorizes the Grantee, at his option, to collect, adjust and compromise any losses under any of the insurance policies, to endorse the Grantor's name on any document or instrument in payment of any insured loss and, after deducting the costs of collection, to apply the proceeds, at the Grantee's sole option, as follows: (i) as a credit upon the indebtedness secured hereby, whether or not the same shall be then due and payable, in which event, the lien of this Mortgage shall be affected only by a reduction thereof in any amount equal to the amount so applied as a credit, or (ii) to repairing or restoring the Premises or any part thereof, in which event, the Grantee shall not be obligated to see to the proper application thereof, nor shall the amount so released or used be deemed a payment on any indebtedness secured hereby. The Grantor shall obtain, carry and maintain Comprehensive General Liability Insurance covering the Mortgaged Property in an amount of no less than Two Million Dollars ($2,000,000.00) bodily injury and/or property damage, per occurrence and Rent Interruption Insurance in an amount equal to the aggregate rent under all leases of the Premises for one year. Said insurance shall be with companies approved by the Grantee. Grantor shall provide Grantee with a Certificate of Insurance containing a provision designating the Grantee as an additional insured party and providing for not less than thirty (30) days written notice to the Grantee prior to any material change or cancellation of said Liability Insurance.

<u>Compliance With Laws</u>. The Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste of the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises; and the Grantor shall promptly repair, restore, replace or rebuild any part of the Premises now or hereafter subject to the lien of this mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any condemnation or eminent domain proceeding. The Grantor shall complete and pay for, within a reasonable time, any structure at any time in the process of construction on the Premises; and the Grantor shall not initiate, join in, or consent to, any change in any private restrictive covenant or private

3

restrictions limiting or defining the uses which may be made of the Premises or any part thereof, without the written consent of the Grantee.

Alterations. The Grantor agrees that no building or other property now or hereafter covered by the lien of this mortgage shall be removed, demolished or materially altered without the prior written consent of the Grantee, except that the Grantor shall have the right, without such consent, to remove and dispose of, free from the lien of this mortgage, such equipment as from time to time may become worn out or obsolete; provided that, simultaneously with, or prior to, such removal, any such equipment shall be replaced with other equipment of a value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement, the Grantor shall be deemed to have subjected such equipment to the lien of this mortgage.

Entry. The Grantee and any persons authorized by the Grantee shall have the right to enter and inspect the Premises at all reasonable times.

Title. If title to the Premises shall vest in anyone other than the Grantor or if Grantor mortgages, leases or encumbers the Premises or any part thereof without first obtaining the written consent of the Grantee, the whole of the principal sum and interest shall immediately become due and payable, without notice, at the option of the Grantee.

Default. The whole of the principal sum and the interest shall become due at the option of the Grantee: (a) after default in the payment of any installment of principal and/or of interest as set forth in the Note; or (b) after nonpayment of any tax, water rate or assessment prior to the occurrence of a penalty, additional interest or the acceleration of any future installments; or (c) upon default in keeping in force the insurance required herein; or (d) after default, after notice and demand, either in delivering the policies of insurance herein described or referred to or in reimbursing the Grantee for premiums paid on such insurance, as herein provided; or (e) after default for thirty (30) days after notice and demand in the payment of any installment which may then be due or delinquent for any assessment for local improvement for which an official bill has been issued by the appropriate authorities and which may now or hereafter affect the Premises and may be or become payable in installments; or (f) upon the actual or threatened waste, removal or demolition of, or material alteration to, any part of the Premises, except as permitted herein; or (g) upon assignment by the Grantor of the whole or any part of the rents, income or profits arising from the Premises without the written consent of the Grantee; (h) should there be any change in the ownership or control of Grantor without the prior written consent of the Grantee or should the owner of the Premises sell, lease, encumber or otherwise convey or transfer any of its interest in or ownership of all or part of its interest in the Premises without the prior written consent of the Grantor or be deprived of either title or possession or control of the Premises by process or operation of law or order of court; or (i) should the Grantor be involved as a debtor pursuant to the bankruptcy laws of the United States or if any proceeding shall be instituted on any lien or mortgage of any kind effecting the Premises, or should the Grantor or any Guarantor be judged to be bankrupt or insolvent, or should a judgment lien, execution or similar process be levied against the Premises and any of the aforesaid be released or

4

otherwise vacated for a period of sixty (60) days; or (j) upon default in the observance or performance of any other covenants or agreements of the Grantor hereunder or in any security agreement, collateral assignment of leases and rentals, or any other instrument securing the debt or any portion thereof; or (k) upon election by the Grantee to accelerate maturity of said principal sum pursuant to the provisions of the Note or of any other instrument which may be held by the Grantee as additional security for the Note.

Costs. The Grantor shall pay all costs, expenses and attorney's fees incurred by the Grantee in protecting or sustaining the lien of this mortgage.

No Waiver. Any failure by the Grantee to insist upon the strict performance by the Grantor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and the Grantee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Grantor of any and all of the terms and provisions of this mortgage or the note secured hereby to be performed by the Grantor; and neither the Grantor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by this mortgage shall be relieved of such obligation by reason of the failure of the Grantee to comply with any request of the Grantor or of any other person so obligated to take action to foreclose this mortgage or otherwise enforce any of the provisions of this mortgage or of any obligation secured by this mortgage; or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this mortgage; or by reason of any agreement or stipulation between any subsequent owner or owners of the Premises and the Grantee extending the time of payment or modifying the terms of the note or mortgage without first having obtained the consent of the Grantor or such other person; and in the latter event, the Grantor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Grantee; and regard-less of consideration and without the necessity for any notice to, or consent by, the holder of any subordinate lien of the Premises, the Grantee may release the obligation of anyone at any time liable for any of the indebtedness secured by this mortgage or any part of the security held for the indebtedness and may extend the time of payment or otherwise modify the terms of the note and/or mortgage without, as to the security or the remainder thereof, in anyway impairing or affecting the lien of this mortgage or the priority of such lien, as security for the payment of the indebtedness as it may be so extended or modified, over any subordinate lien; and the holder of any subordinate lien shall have no right to terminate any lease affecting the Premises, whether or not such lease be subordinate to this mortgage; and the Grantee may resort, for the payment of the indebtedness secured hereby, to any other security therefore held by the Grantee in such order and manner as the Grantee may elect.

Self-Help. In the event of any default in the performance of any of the Grantor's covenants or agreements herein, the Grantee may, at its option, perform the same, and the cost thereof, with interest at the rate set forth in the note secured hereby, shall immediately be due from the Grantor to the Grantee and secured by this mortgage.

5

<u>Remedies Cumulative</u>.  Upon default, the Grantee may, at its option, foreclose this mortgage for any portion of the debt or any other sums secured thereby which are then due and payable, subject to the continuing lien of this mortgage for the balance not then due, but nothing in this Article contained shall impair or affect any right or remedy which the Grantee might now or hereafter have, were it not for this Article, but the right herein given shall be in addition to any others which the Grantee may have hereunder.

<u>Future Advances.</u>  Upon the request of Grantor, the Grantee is specifically permitted, at its option and in its sole discretion, to make additional loans and future advances under this Mortgage Deed and Security Agreement as requested by Grantor, the time and amount to be determined by Grantee, and shall have all rights, powers and protections allowed thereunder. At no time shall the total principal amount of the indebtedness advanced under and secured by this Mortgage exceed Nine Million Seven Hundred Fifty Thousand and 00/100 Dollars ($9,750,000.00),  In the event such future advances, Grantor shall execute such documents as required by Grantee to secure any additional advances, but in all events a new promissory note and modification to the mortgage shall be executed and recorded.

<u>Notices</u>.  A demand upon, or notice to, the Grantor shall be sufficient notice and shall be effective if deposited in the mail addressed to the Grantor at the Premises, or directed to the Grantor at the last address furnished in writing to the Grantee, or directed to the address at which the Grantee customarily communicates with the Grantor.  If the Grantor consists of more than one person, a demand upon, or notice to, any one of the grantors shall constitute notice to all the grantors.  Any notice to the Grantee hereunder shall be effective only upon its receipt by the Grantee.

<u>Miscellaneous</u>

**Definitions**.  Wherever used in this mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "grantor" shall mean "grantor and/or any subsequent owner or owners of the Premises"; the word "grantee" shall mean "grantees or any subsequent holder or holders of this mortgage"; the word "note" shall mean "notes secured by this mortgage"; the word "person" shall mean "an individual, corporation, partnership or unincorporated association"; and the word "Premises" shall include the real estate hereinbefore described, together with all equipment, condemnation awards and any other rights or property interest at any time made subject to the lien of this mortgage by the terms hereof;

**Genders**.  Pronouns of any gender shall include the other genders, and either the singular or plural shall include the other;

**Partial Invalidity**.  The invalidity of one or more of the phrases, sentences, clauses or Sections of this mortgage Deed shall not affect the validity of the

6

remaining portions of the Mortgage Deed;

**Connecticut Law.** This Mortgage Deed shall be governed by, construed and enforced in accordance with the laws of the State of Connecticut;

**Modification.** This Mortgage Deed may not be amended in any respect, except by a further agreement in writing, signed by all parties;

**Successors and Assigns.** The rights and covenants contained in this Mortgage Deed shall run with the land, be binding upon and inure to the benefit of the heirs, successors and assigns of the parties.

Security Agreement. This mortgage deed shall constitute a Security Agreement under the Uniform Commercial Code as adopted by the State of Connecticut, and the Grantor hereby grants to the Grantee and the Grantee has and may enforce a security interest in all construction materials, inventory, machinery, supplies and tools, and all furniture, furnishings, fixtures and equipment, and personal property of any nature or description, now or hereafter installed or stored on the premises, and all appurtenances thereto, thereon or therein (excluding, however, any such items of property which are owned by tenants and which, according to the terms of any applicable lease, may be removed by such tenants at the expiration of the lease) now or hereafter in, on, or used in, the enjoyment, rental, operation, development and/or maintenance of the Premises, in addition to the lien hereby imposed upon the same as a part of the real estate; and Grantor, within five (5) days upon request by mail, shall, as debtor, execute, acknowledge and deliver to Grantee such security agreements, financing statements or other similar security instruments as Grantee may now or hereafter reasonably request, in form satisfactory to the Grantee, covering all property of any kind whatsoever owned by the Grantor which, in the sole opinion of the Grantee, is essential to the operation of the premises and concerning which there may be any doubt whether the title to same has been conveyed by, or a security interest perfected by, this mortgage under the laws of the State of Connecticut, and will further execute, acknowledge and deliver any financing statement, affidavit, continuation statement or certificate or other document as Grantee may request in order to perfect, preserve, maintain, continue and extend the security interest under, and the priority of, such security instrument. Grantor further agrees to pay to Grantee on demand all costs and expenses incurred by Grantee in connection with the preparation, execution, recording, filing and refiling of any such document.

Environmental Matters.

**Definitions.** The term "Polluting Substance" shall mean any hazardous, ignitable, corrosive, caustic, reactive or toxic waste or substance including, without limitation, any of the following: "hazardous waste" as defined by the Resource Conservation and Recovery Act; oil or petroleum products; "chemical liquids or solid, liquid or gaseous products" as defined in Connecticut General Statutes ' 22a-448; asbestos; polychlorinated biphenyls; formaldehyde compounds;

7

explosives; and radioactive materials.

The term "Environmental Law" shall mean any and all statutory, regulatory, or decisional law pertaining to protection of the environment or public health or welfare or to any Polluting Substance, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), the Resource Conservation and Recovery Act, and Title 22a of the Connecticut General Statutes, and the regulations promulgated under any of these statutes, as any of such statutes or regulations may be amended from time to time.

The term "Release" as used herein shall encompass the definition found at CERCLA '101(22).

The term "Spill" as used herein shall have the meaning found at Connecticut General Statutes '22a-452c.

In the event any Environmental Law is amended to broaden the meaning of any term defined above, such broader meaning shall apply subsequent to the effective date of such amendment.

**Representations and Warranties.**  Grantor represents and warrants that neither Grantor, nor any person having a contractual relationship with Grantor, nor any person having a legal or beneficial interest in Grantor:  (i) has been involved in operations at the Premises involving any Polluting Substances; (ii) has caused any release of a Polluting Substance at or affecting the Premises, or any contiguous land included in the property description of the Premises within three years; (iii) after due inquiry, knows of no Polluting Substance located on or affecting the Premises or any contiguous land included in the property description of the Premises within three years or any other properties adjacent to the Premises; (iv) has permitted any tenant or occupant of the Premises to engage in any activity which released any Polluting Substance, onto the Premises in harmful quantities; (v) has received any notice, order, claim, or demand from any governmental authority under any Environmental Law; and that Grantor has disclosed to Grantee all information it has as to whether there are any Polluting Substances located on or affecting the Premises.

Except as otherwise disclosed to Grantee, Grantor further represents and warrants to Grantee that, to the best of its knowledge:  (i) the Premises and Grantor are not in violation of or subject to any existing, pending, or threatened investigation or inquiry by any governmental authority or any response costs or remedial obligations under any Environmental Law and this representation and warranty

8

would continue to be true and correct following disclosure to the applicable governmental authorities of all relevant facts, conditions, and circumstances, if any, pertaining to the Premises; and (ii) Grantor has not obtained and is not required to obtain any permits, licenses, or similar authorizations to construct, occupy, operate, or use any buildings, improvements, fixtures, and equipment forming a part of the Premises by reason of any Environmental Law.

**Covenants and Agreements.** Grantor covenants and agrees that: (i) Grantor will not release any Polluting Substance on the Premises or on any properties adjacent to the Premises; (ii) Grantor will not become involved, and will not permit any tenant or occupant of the Premises to become involved, in operations at the Premises involving unlawful use of Polluting Substances or any other activity that would violate any Environmental Law or that could lead to the imposition on Grantor of liability under any Environmental Law; (iii) Grantor, at its sole cost and expense, will comply strictly and in all respects with the requirements of all Environmental Laws; (iv) Grantor will notify Grantee promptly in the event of the presence or release of any Polluting Substance at or affecting the Premises and give to Grantee a copy of any notice of violations of any Environmental Law received by Grantor; (v) in the event any Polluting Substance is found at the Premises, Grantor will immediately contain and remove the same in compliance with all Environmental Laws and pay immediately when due the cost of removal of such Polluting Substance; (vi) Grantor will keep the Premises free and clear of any lien imposed pursuant to any Environmental Law; and (vii) Grantor will include in all future leases of any portion of the Premises provisions requiring compliance with all Environmental Laws and reporting of information regarding such compliance to Grantor and Grantee.

**Site Assessments.** Grantor agrees to permit Grantee, at Grantee's election and in its reasonable discretion but with notice to Grantor and at Grantor's expense, at any time and from time to time, whether or not a default shall exist hereunder, to cause one or more environmental site assessments of the Premises to be undertaken. An environmental site assessment may include a detailed visual inspection of the Premises, including, without limitation, all storage areas, storage tanks, drains, dry wells, and leaching areas, as well as the taking of samples of soil, surface water, and ground water and such other investigation or analysis as is necessary or appropriate for a complete assessment of the compliance of the Premises and the use and operation thereof with all Environmental Laws.

**Indemnity.** Notwithstanding any provisions contained herein limiting Grantor's personal liability, Grantor further covenants and agrees unconditionally and absolutely to defend, indemnify, and forever hold Grantee harmless from and against all fines, charges, fees, response costs, losses, liabilities, damages, diminutions in value, costs and expenses, causes of actions, suits, claims,

9

demands, and judgments of any nature suffered or incurred by Grantee and arising out of or in connection with:

the presence, or any release, of any Polluting Substance at or affecting the Premises; the application, or any claim of application, of any Environmental Law to the Premises or the operation thereof, including any requirement for clean-up of any Polluting Substance or the assertion of any lien because of any release; any failure by Grantor to comply with the terms of any order of the Connecticut Department of Environmental Protection or any other federal, state, or municipal governmental authority under any Environmental Law; and any inaccuracy in the representations and warranties made by Grantor.

Such expenses shall include (without limiting the generality of the foregoing) engineers' and attorneys' fees and the costs of any environmental audits or other tests required by Grantee in its discretion to ascertain whether any Polluting Substance is present at or affects the Premises. Such losses shall include the assertion of any lien relating to any release at or affecting the Premises or any other land included in the same property description with the Premises at any time within three (3) years prior to such release.

**Survival.** This indemnity shall extend to Grantee as holder of this mortgage, mortgagee in possession, or as successor in interest to Grantor as owner of the Premises by virtue of foreclosure or acceptance of a deed in lieu of foreclosure and shall survive the repayment of the Note and the cancellation, release, or discharge of this mortgage.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

10

NOW, THEREFORE, if the Grantor shall pay the note according to its tenor and if all agreements contained in said note and herein contained are fully kept and performed, then this deed shall be void, otherwise to remain in full force and effect.

SIGNED this 22nd day of December, 2002.

Colt Gateway LLC
By Homes for America Holdings, Inc.
Its Member

By: _____
Robert MacFarlane .
Its President

_____
Naomi Lynch

_____
MARK A. ASRIAN

STATE OF CONNECTICUT )
                                        ) ss. Hartford
COUNTY OF Hartford )

Before me this 31ST day of December ____, 2002, personally appeared Robert A. MacFarlane,                President of Homes for America Holdings, Inc. the Member of Colt Gateway LLC, a Connecticut Limited Liability Company and that as such he acknowledged the same to be his free act and deed and the free act and deed of the corporation and the limited liability company.

_____
~~Notary Public~~
Commissioner of the Superior Court

11

VOL L Filed POT 175

## SCHEDULE A

## Property Description

*Parcel One*

All that certain parcel of land with buildings and/or improvements located thereon situated on the westerly side of Huyshope Avenue in the City of Hartford, County of Hartford and State of Connecticut, being more particularly bounded and described as follows:

Beginning at a point on the westerly line of Huyshope Avenue, which point is located at the intersection of the northerly line of Masseek Street and the westerly line of Huyshope Avenue and which point marks the southeasterly corner of the herein described parcel, the lines runs;

**Thence** S 49° - 37' – 36" W along the northerly line of Masseek Street, a distance of 230.42' to a point;

**Thence** N 40° - 24' – 57" W along the easterly line of Van Block Avenue, a distance of 498.91' to a point;

**Thence** N 49° - 31' - 06" E along the southerly line of Weehasset Street, a distance of 230.22' to a point;

**Thence** S 40° - 26' – 20" E along the westerly line of Huyshope Avenue, a distance of 499.35' to the point or place of beginning; said parcel contains 2.64 acres of land by computation.

*Parcel Two*

All that certain parcel of land with buildings and improvements located thereon situated on the westerly side of Van Dyke Avenue in the City of Hartford, County of Hartford and State of Connecticut, being more particularly bounded and described as follows:

Beginning at a point on the westerly line of Van Dyke Avenue, which point is located at the intersection of the southerly line of Sequassen Street and the westerly line of Van Dyke Avenue and which point marks the northeasterly corner of the herein described parcel, the lines runs;

**Thence** S 40° - 25' – 32" E along the westerly line of Van Dyke Avenue, a distance of 826.87' to a point;

**Thence** by a curve to the right have a delta angle of 05° -20' – 28" and a radius of 889.73' along a taking line of the State of Connecticut, an arc distance of 82.94' to a point;

**Thence** S 35° - 05' – 00" E along a taking line of the State of Connecticut, a distance of 24.21' to a point;

**Thence** S 49°- 33' – 28" W along land now or formerly of the State of Connecticut, a distance of 510.71' to a point;

**Thence** N 40° - 26' – 20" W along the easterly line of Huyshope Avenue, a distance of 934.00' to a point;

**Thence** N 49° - 33' – 28" E along the southerly line of Sequassen Street, a distance of 517.05' to the point or place of beginning; said parcel contains 11.08 acres of land by computation.

*Parcel Three*

All that certain parcel of land with buildings and improvements located thereon situated on the westerly side of Vredendale Avenue in the City of Hartford, County of Hartford and State of Connecticut, being more particularly bounded and described as follows: Beginning at a point on the westerly line of Van Dyke Avenue, which point is located at the intersection of the northerly line of Sequassen Street and the westerly line of Van Dyke Avenue and which point marks the southeasterly corner of the herein described parcel, the lines runs;

**Thence** S 49° - 33' – 28" W along the northerly line of Sequassen Street, a distance of 248.00' to a point;

**Thence** N 40° - 26' – 32" W along the easterly line of Vredendale Avenue, a distance of 490.61' to a point;

**Thence** S 76° - 51' – 16" E along the southwesterly line of Van Dyke Avenue, a distance of 417.80' to a point;

**Thence** S 40° - 26' – 32" E along the westerly line of Van Dyke Avenue, a distance of 154.38' to the point or place of beginning; said parcel contains 1.84 acres of land by computation.

*Parcel Four*

All that certain parcel of land with buildings and improvements located thereon situated on the westerly side of Huyshope Avenue in the City of Hartford, County of Hartford and State of Connecticut, being more particularly bounded and described as follows: Beginning at a point on the easterly line of Huyshope Avenue, which point is located at the intersection of the northerly line of Sequassen Street and the westerly line of Huyshope Avenue and which point marks the southwesterly corner of the herein described parcel, the lines runs;

**Thence** N 40° - 26' – 32" W along the easterly line of Huyshope Avenue, a distance of 274.18' to a point;

**Thence** N 49° - 33' – 28" E along land now or formerly of Otto R. Ruppert, Trustee, a distance of 229.00' to a point;

**Thence** S 40° - 26' – 32" E along the westerly line of Vredendale Avenue, a distance of 274.18' to a point;

**Thence** S 49° - 33' – 28" W along the northerly line of Sequassen Street, a distance of 229.00' to the point or place of beginning; said parcel contains 1.44 acres of land by computation.

A-2

## EXHIBIT A

### LENDER

| NAME | AMOUNT |
|------|--------|
| Fertitta Enterprises, Inc. | $3,000,000 |
| USA Capital Diversified Trust Deed Fund, LLC | $1,350,000 |
| USA Commercial Mortgage Company | $1,350,000 |
| | $5,700,000 |

12

# EXHIBIT B
# PROMISSORY NOTE
# SECURED BY MORTGAGE

$5,700,000

Las Vegas, Nevada
December 22, 2002

This Promissory Note ("Note"), dated as of December 22, 2002 is made and delivered by Colt Gateway LLC, a Connecticut limited liability company ("Borrower"), in favor of the persons listed on Exhibit "A" hereto ("Lender").

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Five Million Seven Hundred Thousand Dollars ($5,700,000) (the "Note Amount"), together with interest as provided herein.

1.   <u>Interest Rate</u>.  Interest shall accrue on the outstanding portion of the Note Amount, from the date Lender initially disburses such funds until the date the Note Amount is paid in full, at the rate of fifteen percent (15%) per annum.  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  Accrued but unpaid interest shall be compounded monthly.

2.   <u>Payments</u>.  Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears.  For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day.  All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.   <u>Maturity Date</u>.  If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on or before the date which is twelve months  from the date of the Note (the "Maturity Date").

4.   <u>Application of Payments</u>.  All payments on this Note shall, at the option of the Lender hereof, be applied first to the payment of accrued interest then payable.

5.   <u>Prepayment</u>.  Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default).  If Borrower repays this Note prior to the Maturity Date, Borrower shall pay a repayment fee equal to the difference between the interest that would have been due on the full Loan Amount from closing until the Maturity Date less the interest actually paid by Borrower as of the early repayment date.

1

6. <u>Collateral</u>.  This Note is secured by a mortgage encumbering real property located in Hartford County, Connecticut, and by a UCC-1 covering personalty and fixtures of Borrower.

7. <u>Defaults; Acceleration</u>.  The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder.  Upon the occurrence of an Event of Default, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately. Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)     Borrower shall fail to pay when due any amount due pursuant to the Note; or

(b)     Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have thirty (30) days after written notice to effect the cure  (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c)     any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made; or

(d)     Borrower (which term shall include any entity comprising Borrower) or any Guarantor is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)     Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the

2

application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within thirty (30) calendar days after such issue or levy; or

(f)    there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion; or

(g)    any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)    all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)    Borrower is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or the Guarantors are sold or otherwise transferred without Lender's written consent; or

(j)    any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(k)    any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

3

8.    <u>Late Charge</u>.  Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment.  Because the actual damages suffered by the Lender hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation therefor.  Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment.  The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any accelerated amount.  Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise.  The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    <u>Default Rate</u>.  From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate").  Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    <u>Waivers</u>.  Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns.  Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note.  Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder.  Any delay on Lender's part in

4

exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

      11.    <u>Costs of Collection</u>. Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

      12.    <u>Usury</u>. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

      13.    <u>Notices</u>. All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**

Colt Gateway LLC
c/o Homes for America Holdings, Inc.
One Odell Plaza
Yonkers, Nevada 10701
Attn. Robert A. MacFarlane

**WITH COPY TO:**

Daniel G. Hayes, Esq.
Vanderpool, Frostick & Nishanaian, P.C.
9200 Church Street, Suite 400
Manassas, Virginia 20110-5561
    (703) 369-4738
    Fax (703) 369-3653

5

LENDER'S ADDRESS:                    c/o USA Commercial Mortgage Company
                                     4484 South Pecos Road
                                     Las Vegas, Nevada 89121
                                     Attn. Joseph D. Milanowski

14.    <u>Assignment By Lender</u>.  Lender may assign all or any portion of its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15.    <u>Multiple Parties</u>.  A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16.    <u>Construction</u>.  This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

17.    <u>Partial Invalidity</u>.  If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof.  No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

18.    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)    This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR

6

PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

(Signature page follows)

BORROWER: Colt Gateway LLC
By: Homes For America Holdings, Inc.


                    By:
                              Robert A. MacFarlane
                    Its:    President

7

# EXHIBIT "A"

## LENDER

| <u>NAME</u> | <u>AMOUNT</u> |
|---|---|
| Fertitta Enterprises, Inc. | $3,000,000 |
| USA Capital Diversified Trust Deed Fund, LLC | $1,350,000 |
| USA Commercial Mortgage Company | <u>$1,350,000</u> |
| | $5,700,000 |



8