# EXHIBIT "L"

# EXHIBIT "L"

# STATE OF NEVADA
# DEPARTMENT OF BUSINESS AND INDUSTRY
# DIVISION OF MORTGAGE LENDING

In Re:

USA COMMERCIAL MORTGAGE COMPANY,
d/b/a USA CAPITAL,

Respondent.

**FINAL ORDER CONDITIONING MORTGAGE BROKER'S LICENSE**

The STATE OF NEVADA, DEPARTMENT OF BUSINESS AND INDUSTRY, DIVISION OF MORTGAGE LENDING ("Division"), having served USA Commercial Mortgage Company, d/b/a USA Capital ("Respondent"), on May 1, 2006, with an **Order Conditioning Mortgage Broker's License**, attached hereto as Exhibit 1, and incorporated herein by this reference, notifying Respondent that a final order would be entered unless, within 20 days after entry and receipt of the order, Respondent requested in writing a hearing to contest the charges, and the Respondent having failed to request a hearing in this matter, and good cause appearing;

IT IS HEREBY ORDERED that Respondent's license is conditioned upon the Respondent not making any loans secured by liens on real property funded by private, non-institutional investors; Respondent may only make loans secured by liens on real property funded by institutional investors.

///

///

///

-1-

1  The Division is currently conducting an investigation into USA's past activities and does not represent that the Factual Allegations in the attached Exhibit 1 are complete, or that the entry of the Final Order conditioning of Respondent's license will be the only action that the Division intends to take against Respondent.

DATED this 9th day of June 2006.

DIVISION OF MORTGAGE LENDING

By: _____
SCOTT BICE, COMMISSIONER

## AFFIDAVIT OF SERVICE

STATE OF NEVADA )
)
COUNTY OF CLARK )

I HEREBY CERTIFY that on the 12th day of June 2006, I served the foregoing <u>Final Order Conditioning Mortgage Broker's License</u> upon USA Commercial Mortgage Company dba USA Capital at 4484 S. Pecos Road, Las Vegas, State of Nevada, by:

1. Personally delivering a copy to the following person at: 4484 S. Pecos Road, Las Vegas, State of Nevada

_____
Person Receiving Service

_____
Person Making Service

SUBSCRIBED AND SWORN to me

This 12 day of June 2006.
By:

_____
NOTARY PUBLIC in and for said
County and State

AMANDA STEVENS
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 01-16-2010
Certificate No: 02-72937-1

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

-1-

STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
DIVISION OF MORTGAGE LENDING

In re:

USA COMMERCIAL MORTGAGE
COMPANY, d/b/a USA CAPITAL,

Respondent.

### ORDER CONDITIONING MORTGAGE BROKER'S LICENSE

### NOTICE OF RIGHT TO REQUEST HEARING

The licensing and regulation of mortgage brokers in the State of Nevada is governed by chapter 645B of the Nevada Revised Statutes ("NRS") and chapter 645B of the Nevada Administrative Code ("NAC"). The State of Nevada, Department of Business and Industry, Mortgage Lending Division ("Division") has the general duty to exercise supervision and control over mortgage brokers and mortgage brokering activity. NRS 645B.060(1), NRS 645B.690 (1)(a) and NRS 645B.670. Pursuant to that authority, the Division makes the following Findings of Fact, Conclusions of Law, and Order as follows:

### FACTUAL ALLEGATIONS

1. USA Commercial Mortgage Company, dba USA Capital ("USA") is a licensed mortgage broker operating within the State of Nevada. USA Capital was issued a mortgage broker's license pursuant to NRS 645B on January 11, 1990.

2. On Thursday, April 13, 2006, USA filed a voluntary petition for reorganization under Chapter 11 in the U.S. Bankruptcy Court of the Southern District of Nevada.

3. On or after April 13, 2006, USA stated to the Division that a significant number of borrowers were currently, and should have previously been considered delinquent on the payment of loans secured by liens on real property. USA also indicated that it continued to pay investors the stated amount of interest on loans which should have been considered delinquent.

4. Thomas Allison retained by USA as Chief Restructuring Officer, stated to the Division that USA had continued to pay investors on loans which had defaulted from other loans which had partial or complete payments of principal.

5. USA controlled and directed the activity of the individual trust accounts to which monies were collected from borrowers for complete or partial repayment of principal and interest payments on loans secured by liens on real property.

6. USA failed to reveal on its required monthly activity reports to the Commissioner that it had borrowers/debtors with loans secured by liens on real property who had failed to make two or more consecutive payments in accordance with the terms of their loans. USA also failed to notify investors/lenders that borrowers had failed to make two or more consecutive payments in accordance with the terms of their loans secured by liens on real property.

### ALLEGED VIOLATIONS OF LAW

The licensing and regulation of mortgage brokers and mortgage agents in the State of Nevada is governed by NRS chapter 645B and NAC chapter 645B. The Division has the duty to exercise supervision and control over mortgage brokers. NRS 645B.060(1). In addition, the Division has the responsibility to take disciplinary action for certain violations of NRS chapter 645B or NAC chapter 645B.

NRS 645B.670 provides in relevant part:

> 2. For each violation committed by a mortgage broker, the Commissioner may impose upon the mortgage broker an administrative fine of not more than $10,000, may suspend, revoke or place conditions upon his license, or may do both, if the mortgage broker, whether or not acting as such:
> (c) Does not conduct his business in accordance with law or has violated any provision of this chapter, a regulation adopted pursuant to this chapter or an order of the Commissioner;

1. USA controlled and directed the activity of individual trust accounts where money paid by borrowers for complete or partial repayment of principal and interest on their loans secured by liens on real property was to be kept. NRS 645B.175(4) requirements o

mortgage brokers when mortgage brokers maintain/service accounts where money paid by borrowers for complete or partial repayment on loans secured by liens on real property is kept. In relevant part, NRS 645B.175 states:

> 4. Except as otherwise provided in this section, all money paid to a mortgage broker and his mortgage agents by a person in full or in partial payment of a loan secured by a lien on real property, must:
> (a) Be deposited in:
> (1) An insured depository financial institution; or
> (2) An escrow account which is controlled by a person who is subject to instructions regarding the account which are approved by the parties.
> (b) Be kept separate from money:
> (1) Belonging to the mortgage broker in an account appropriately named to indicate that it does not belong to the mortgage broker.
> (2) Received pursuant to subsection 1.
> 5. Except as otherwise provided in this section, the amount held in trust pursuant to subsection 4:
> (a) Must be released, upon the deduction and payment of any fee or service charge due the mortgage broker, to each investor who owns a beneficial interest in the loan in exact proportion to the beneficial interest that he owns in the loan; and
> (b) Must not be released, in any proportion, to an investor who owns a beneficial interest in the loan, unless the amount described in paragraph (a) is also released to every other investor who owns a beneficial interest in the loan.
> 6. An investor may waive, in writing, the right to receive one or more payments, or portions thereof, that are released to other investors in the manner set forth in subsection 5. A mortgage broker or mortgage agent shall not act as the attorney-in-fact or the agent of an investor with respect to the giving of a written waiver pursuant to this subsection. Any such written waiver applies only to the payment or payments, or portions thereof, that are included in the written waiver and does not affect the right of the investor to:
> (a) Receive the waived payment or payments, or portions thereof, at a later date; or
> (b) Receive all other payments in full and in accordance with the provisions of subsection 5.
>
> . . .
>
> 9. If a mortgage broker or a mortgage agent receives any money pursuant to this section, the mortgage broker or mortgage agent, after the deduction and payment of any fee or service charge due the mortgage broker, shall not release the money to:
> (a) Any person who does not have a contractual or legal right to

> (b) Any person who has a contractual right to receive the money if the mortgage broker or mortgage agent knows or, in light of all the surrounding facts and circumstances, reasonably should know that the person's contractual right to receive the money violates any provision of this chapter or a regulation adopted pursuant to this chapter.

(a) USA violated NRS 645B.175 (4)(a) because it did not deposit money received from borrowers for complete or partial repayment of principal and interest payments on loans secured by liens on real property in an insured depository financial institution or in an escrow account controlled by a person subject to instructions regarding the account that were approved by the parties. Rather, USA took borrower money it received in full or partial repayment of borrower loans secured by liens on real property and used this money to pay investors of loans that were in default.

(b) USA violated NRS 645B.175(5)(a) because it did not release, after payment of any fee or service charge due to the mortgage broker, money received for complete or partial repayment of principal and interest on loans secured by liens on real property to each investor who owned a beneficial interest in the exact proportion to the interest that the investor owned in the loan; rather, USA took the money it received in complete or partial repayment of principal and interest on loans secured by liens on real property and used this money to pay investors of loans that were in default.

(c) USA violated NRS 645B.175(9)(a) because it released money to investors of loans secured by liens on real property that were in default who did not have a contractual or legal right to receive the money. Rather USA took the money it received in full or partial repayment of principal and interest on loans secured by liens on real property and used this money to pay the investors of loans that had defaulted.

2. USA violated NRS 645B.250, which states:

> Except pursuant to a contract for the collection or servicing of a loan which is governed by the requirements established by the Government National Mortgage Association, Federal Home Loan Mortgage Corporation or Federal National Mortgage Association, a mortgage broker or mortgage agent shall not advance payments to

an investor on behalf of a person who has obtained a loan secured by a lien on real property and who has defaulted in his payments.

(a) Mr. Allison admitted to the Division that USA was advancing payments to investors on behalf of borrowers who had defaulted on loan secured by liens on real property.

3. USA violated NRS 645B.260, which states:

1. If a mortgage broker maintains any accounts described in subsection 4 of NRS 645B.175 in which the mortgage broker deposits payments from a debtor on a loan secured by a lien on real property and, on the last day of any month, the debtor has failed to make two or more consecutive payments in accordance with the terms of the loan, the mortgage broker shall:
  (a) Include in the report that the mortgage broker submits to the Commissioner pursuant to subsection 2 of NRS 645B.080 the information relating to delinquencies in payments and defaults that is required by the regulations adopted pursuant to subsection 2;
  (b) Not later than 15 days after the last day of each such month, mail to the last known address of each investor who owns a beneficial interest in the loan a notice containing the information relating to delinquencies in payments and defaults that is required by the regulations adopted pursuant to subsection 2; and
  (c) Comply with the provisions of this section each month on a continuing basis until:
    (1) The debtor or his designee remedies the delinquency in payments and any default; or
    (2) The lien securing the loan is extinguished.
2. The Commissioner:
  (a) Shall adopt regulations prescribing the information relating to delinquencies in payments and defaults that a mortgage broker must include in his report to the commissioner and in the notice mailed to investors pursuant to subsection 1. Such regulations may provide for variations between the information that a mortgage broker must include in his report to the Commissioner and the information that a mortgage broker must include in the notice mailed to investors.
  (b) May adopt any other regulations that are necessary to carry out the provisions of this section.

With regard to notice obligations owed to investors, NAC 645B.070 further defines the obligations of a mortgage broker. NAC 645B.070 states in relevant part, that:

2. If, on the last day of any month, a debtor has failed to make two or more consecutive payments in accordance with the terms of the loan, a mortgage broker who is performing loan

servicing and maintains any accounts described in subsection 4 of NRS 645B.175 shall:
 (a) Include in his report to the Commissioner:
  (1) The name, address and telephone number of the debtor;
  (2) The total number and amount of any payments made on the current delinquency;
  (3) The outstanding balance of the loan and any accrued interest on the last day of the month for which the report is submitted;
  (4) A statement of whether the loan has been declared to be in default and, if so, the nature of any actions that have been taken because of the default; and
  (5) The date on which the mortgage broker sent the notice to investors required pursuant to paragraph (b) of this subsection and paragraph (b) of subsection 1 of NRS 645B.260.
 (b) Mail a notice containing the following information to the last known address of each investor who owns a beneficial interest in the loan not later than 15 days after the last day of each such month:
  (1) The name, address and telephone number of the debtor;
  (2) The total number of months and days that the debtor has failed to make a payment;
  (3) The outstanding balance of the loan and any accrued interest on the last day of the month for which the notice is submitted; and
  (4) A statement of whether the loan has been declared to be in default and, if so, the nature of any actions that have been taken because of the default.
 3. If the mortgage broker is not servicing any loans in which a debtor has failed to make two or more consecutive payments in accordance with the terms of the loan, the monthly report required pursuant to subsection 1 must state that fact.
 4. The mortgage broker must comply with the provisions of subsection 2 each month until:
 (a) The debtor or his designee remedies the delinquency in payments and any default; or
 (b) The lien securing the loan is extinguished.
 5. The Commissioner may refuse to renew the license of a mortgage broker who has not submitted a monthly report required by subsection 1 for 1 or more of the preceding 12 months.

(a) USA violated NRS645B.280(1)(a) because it failed to report the Division on it monthly activity reports that it had any delinquent loans secured by liens on real property, ye after USA filed bankruptcy Allison informed the Division that USA had delinquent loans.

1   (b) USA violated NRS645B.280(1)(b) because it did not, no later than 15 days after
2   the last day of the month, when it was aware that debtors had failed to make two or more
3   consecutive payments in accordance with the terms of the loan, mail to investors who owned
4   beneficial interests in the defaulting loans, the debtors name, address and telephone number,
5   nor did USA ever mail to investors and of the information required in NRS 645B.070(5), nor
6   did it indicate in any way to investors that their loans were in default when, in some cases,
7   borrowers had not paid on their loans secured by liens on real property.

9   5.   USA violated NRS 645B.670. NRS 645B.670 states:

Except as otherwise provided in NRS 645B.690:
   1. For each violation committed by an applicant for a license issued pursuant to this chapter, whether or not he is issued a license, the Commissioner may impose upon the applicant an administrative fine of not more than $10,000, if the applicant:
      (a) Has knowingly made or caused to be made to the Commissioner any false representation of material fact;
      (b) Has suppressed or withheld from the Commissioner any information which the applicant possesses and which, if submitted by him, would have rendered the applicant ineligible to be licensed pursuant to the provisions of this chapter; or
      (c) Has violated any provision of this chapter, a regulation adopted pursuant to this chapter or an order of the Commissioner in completing and filing his application for a license or during the course of the investigation of his application for a license.
   2. For each violation committed by a mortgage broker, the Commissioner may impose upon the mortgage broker an administrative fine of not more than $10,000, may suspend, revoke or place conditions upon his license, or may do both, if the mortgage broker, whether or not acting as such:
      (a) Is insolvent;
      (b) Is grossly negligent or incompetent in performing any act for which he is required to be licensed pursuant to the provisions of this chapter;
      (c) Does not conduct his business in accordance with law or has violated any provision of this chapter, a regulation adopted pursuant to this chapter or an order of the Commissioner;
      (d) Is in such financial condition that he cannot continue in business with safety to his customers;
      (e) Has made a material misrepresentation in connection with any transaction governed by this chapter;

(f) Has suppressed or withheld from a client any material facts, data or other information relating to any transaction governed by the provisions of this chapter which the mortgage broker knew or, by the exercise of reasonable diligence, should have known;

(g) Has knowingly made or caused to be made to the Commissioner any false representation of material fact or has suppressed or withheld from the Commissioner any information which the mortgage broker possesses and which, if submitted by him, would have rendered the mortgage broker ineligible to be licensed pursuant to the provisions of this chapter;

(h) Has failed to account to persons interested for all money received for a trust account;

(i) Has refused to permit an examination by the Commissioner of his books and affairs or has refused or failed, within a reasonable time, to furnish any information or make any report that may be required by the Commissioner pursuant to the provisions of this chapter or a regulation adopted pursuant to this chapter;

(j) Has been convicted of, or entered a plea of nolo contendere to, a felony relating to the practice of mortgage brokers or any crime involving fraud, misrepresentation or moral turpitude;

(k) Has refused or failed to pay, within a reasonable time, any fees, assessments, costs or expenses that the mortgage broker is required to pay pursuant to this chapter or a regulation adopted pursuant to this chapter;

(l) Has failed to satisfy a claim made by a client which has been reduced to judgment;

(m) Has failed to account for or to remit any money of a client within a reasonable time after a request for an accounting or remittal;

(n) Has commingled the money or other property of a client with his own or has converted the money or property of others to his own use;

(o) Has engaged in any other conduct constituting a deceitful, fraudulent or dishonest business practice;

(p) Has repeatedly violated the policies and procedures of the mortgage broker;

(q) Has failed to exercise reasonable supervision over the activities of a mortgage agent as required by NRS 645B.460;

(r) Has instructed a mortgage agent to commit an act that would be cause for the revocation of the license of the mortgage broker, whether or not the mortgage agent commits the act;

(s) Has employed a person as a mortgage agent or authorized a person to be associated with the mortgage broker as a mortgage agent at a time when the mortgage broker knew or, in light of all the surrounding facts and circumstances, reasonably should have known that the person:

(1) Had been convicted of, or entered a plea of nolo contendere to, a felony relating to the practice of mortgage agents or any crime involving fraud, misrepresentation or moral turpitude; or

      (2) Had a financial services license or registration suspended or revoked within the immediately preceding 10 years;
     (t) Has failed to pay a tax as required pursuant to the provisions of chapter 363A of NRS; or
     (u) Has not conducted verifiable business as a mortgage broker for 12 consecutive months, except in the case of a new applicant. The Commissioner shall determine whether a mortgage broker is conducting business by examining the monthly reports of activity submitted by the mortgage broker or by conducting an examination of the mortgage broker.

  (a) USA violated NRS 645B.670(1)(a) because it knowingly made to the Division a false representation of material fact, To Wit: USA did not indicate on its monthly activity reports to the Division that it had any loans in default, and therefore represented that all of its loans were being paid by borrowers in accordance with terms of the loan.

  (b) USA violated NRS 645B.670(c) because it has violated NRS 645B.175, NRS 645B.280, ad NAC 645B.070, as referenced above.

  (c) USA violated NRS 645B.670(f) because it suppressed or withheld from investors the fact that many of the investors' loans secured by liens on real property were not being paid in accordance with the terms of the loan agreements, but were in fact in default.

  (d) USA violated NRS 645B.670(o) because it engaged in a deceitful, fraudulent or dishonest business practice, To Wit: USA took money from accounts containing money from borrowers who had paid off their loans and used that money to pay investors whose loans were in default.

  6. <u>The Division is still conducting an investigation into USA's past activities and does not represent that the findings listed in this Order Conditioning Mortgage Broker's License are complete, or that the action it seeks to take against USA in this Order will be the only action that the Division intends to take against USA.</u>

  7. NRS 645B.670(2) allows the Commissioner to suspend, revoke or place conditions upon a mortgage broker's license if the broker violates NRS 645B.670. The Division alleges that USA has violated provisions of NRS 645B.670. Therefore, the Commissioner may suspend, revoke or condition USA's mortgage broker license. The Commissioner therefore imposes certain conditions USA's mortgage broker's license. These

conditions are: USA will not make any loans secured by liens on real property funded by private, non-institutional investors; USA may only make loans secured by liens on real property funded by institutional investors.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that USA mortgage broker's license is conditioned upon USA not making any loans secured by liens on real property funded by private, non-institutional investors; USA may only make loans secured by liens on real property funded by institutional investors.

**IT IS FURTHER ORDERED** that, pursuant to NRS 645B.750, upon written application to the Division, that USA entitled to a hearing with regard to this Order. Should USA not request a hearing within **twenty (20) days** of the receipt of this Order, the Division will enter a Final Order in this matter as required by NRS 645B.750(2).

DATED this __1st__ day of May 2006.

STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
DIVISION of MORTGAGE LENDING

By: _____
Scott Bice, Commissioner

# EXHIBIT "M"

# EXHIBIT "M"

Department of Economic and Community Development

# Governor Rell Kicks Off Next Phase of Colt Gateway Historic Redevelopment

*Tours Connecticut landmark, commends developers for progress*

**June 21, 2005**

**Contact:** Dennis Schain, Governor's Office, (860) 524-7313
Dennis.schain@po.state.ct.us

Gov. M. Jodi Rell today kicked off the next phase of redevelopment at the historic Colt Gateway community in Hartford's South Meadows neighborhood, announcing the release of $3.45 million in state bond funds for that project.

During a visit to the Colt site for a tour with developers and key business leaders, Governor Rell said the state Department of Economic and Community Development (DECD) has reached an agreement with Homes for America Holdings and its subsidiary, Colt Gateway LLC, the complex developer, to release $3.45 million in previously approved bond funds for façade improvements to the south and east armories.

"This gives a new look to a highly visible piece of Hartford's history – a landmark for residents and a key part of the introduction to the capital city for travelers on Interstate 91," Governor Rell said. "With this much-needed touch-up, the Colt complex will present the same bright face as the new Connecticut Convention Center."

"These state funds will go a long way in helping Colt fulfill its promise as a true gateway to Hartford," the Governor said. "I am encouraged by the level of public and private sector commitment, cooperation and investment that is helping this project move forward."

Work on the exterior improvements is anticipated to begin in mid-July and will include the replacement of windows, installation of new roofs, and repair of building façades on the portions of the armories that face travelers along the I-91 corridor.

Earlier this month it was announced that Sovereign Bank is providing $28 million in financing for interior and exterior renovations to the buildings. In addition, the Connecticut Development Authority recently approved a $1.1 million sales tax exemption on materials used in the construction process.

"The Colt Gateway community is an excellent example of historic redevelopment at its best – where we can preserve our heritage while at the same time providing residential, commercial and retail opportunities here in our great city," said Hartford Mayor Eddie Perez.

Last year Insurity Inc. moved into a renovated building at Colt, bringing 300 employees into a former assembly shop for Sam and Elizabeth Colt's firearms manufacturing business. Insurity has since grown its business and plans to add 100 jobs over the next few months.

The Capitol Region Education Council opened a school and office space in 2003 in another completely renovated building at Colt.

The plans for a completely renovated Colt complex include:
- Apartments

- Commercial office space
- Café restaurant and parking garage
- Colt museums in the foundry and finishing houses
- Art exhibition space
- Green park space

In 2003, President George Bush approved funding for a study that would determine Colt's feasibility as a national park site. The study is underway; the results are expected to be announced in March of 2006.

###



**HartfordInfo.org**

A program of the Hartford Public Library

Español

Search HartfordInfo.org
Advanced Search
(Includes Option to Search Related Hartford Sites and WWW)
Search Tips

Can't Find It? Have a Question?
**E-Mail**
**Info@HartfordInfo.org**
**or Call 860-695-629**

## Funds In Place For Colt Gateway Project

June 10, 2005
By JEFFREY B. COHEN, Courant Staff Writer

The owners of the historic Colt facility closed on their $28 million mortgage with Sovereign Bank Thursday, bringing construction at the complex's south armory one step closer to reality.

"The paperwork is signed and we're just waiting for the transfer to come in," said Rebekah MacFarlane, director of communications for the Colt Gateway project Thursday.

The bank and the Colt's owners, Homes for America Holdings Inc., announced in late March that they had reached an agreement on the mortgage deal. The $28 million is to be used to renovate the south armory and the east armory - the latter of which is the building visible from I-91 beneath the blue onion dome.

Together, the two Hartford buildings make up more than 70 percent of the remaining unrestored square footage at the complex, Colt officials have said.

Major construction on the south armory will start in about 30 days, MacFarlane said.

The first "draw-down" of the mortgage should be in the bank Friday morning, she said. "A lot of that is being paid to contractors [for work that is already completed], and the remaining is for the construction," she said.

"The whole thing was committed to, but they're not going to borrow the whole thing on day one," said Kevin Flaherty, a market president for Sovereign Bank. "They'll borrow it as they need it."

Colt soon will send notices to tenants in the south armory, letting them know that they will have to vacate their apartments, MacFarlane said. The notices will also inform tenants that they can either occupy one of the new apartments, which will have been completed, or that they can get help from the company in finding a new apartment elsewhere, MacFarlane said.

Upon completion, the two armories will have up to 300 loft apartments and roughly 100,000 square feet of commercial space, Colt officials have said.

Reprinted with permission of the *Hartford Courant*. To view other stories on this topic, search the Hartford Courant Archives at http://www.courant.com/archives.

| Site Map | CONTACT HartfordInfo.org | Hartford Public Library | HartfordInfo.org HOME |

| Last update: December 2, 2006 |