E-filed on January 17, 2007

Marc A. Levinson (California Bar No. 57613)
Jeffery D. Hermann (California Bar No. 90445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814-4497
Telephone:  (916) 447-9200
Facsimile:  (916) 329-4900
Email:    malevinson@orrick.com;
          rragni@orrick.com

Bob L. Olson (Nevada Bar No. 3783)
Anne M. Loraditch (Nevada Bar No. 8164)
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard South
Las Vegas, NV 89101
Telephone:  (702) 385-3373
Facsimile:  (702) 385-5024
Email:    bolson@beckleylaw.com;
          aloraditch@beckleylaw.com

*Attorneys for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                                  Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, TO CLAIMS NOS. 90, 93, 94, 95, 129, 130, 131, AND 136 FILED AGAINST USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, BY MCGIMSEYS AND JOHNNY CLARK**<br><br>Date:       January 31, 2007<br>Time:       9:30 a.m.<br>Courtroom:  1 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                                  Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                                  Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                                  Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>                                                  Debtor. | |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

The Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC (the "Diversified Committee"), by and through its counsel, Orrick, Herrington & Sutcliffe LLP and Beckley Singleton, Chtd., hereby submits this supplemental brief (the "Supplemental Brief") in support of the Diversified Committee's objection to claim nos. 90, 93, 94, 95, 129, 130, 131, and 136 (the "Member Claims") filed against USA Capital Diversified Trust Deed Fund, LLC ("Diversified Fund" or "Debtor") by Margaret B. McGimsey, Sharon McGimsey, Bruce McGimsey, Johnny Clark, and Jerry McGimsey, who is a member of the Diversified Committee (collectively, the "Members"). This Supplemental Brief is made in response to the Court's request for additional briefing on the application of section 510(b) of Title 11 of the United States Code (as amended, the "Bankruptcy Code") to the Member Claims and is based upon the following points and authorities, the Declaration of Michael Tucker (the "Tucker Declaration"), filed concurrently herewith and in support hereof, the papers and pleadings on file with the Court in the above-captioned cases, and any argument of counsel the Court may entertain at the hearing.

DATED this 17th day of January 2007.

        BECKLEY SINGLETON, CHTD.

        By: /s/ Anne M. Loraditch
        Bob L. Olson (Nevada Bar No. 3783)
        Anne M. Loraditch (Nevada Bar No. 8164)
        530 Las Vegas Boulevard South
        Las Vegas, NV 89101

        and

        Marc A. Levinson (California Bar No. 57613)
        Jeffery D. Hermann (California Bar No. 90445)
        ORRICK, HERRINGTON & SUTCLIFFE LLP
        400 Capitol Mall, Suite 3000
        Sacramento, CA 95814-4497

        *Attorneys for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC*

# POINTS AND AUTHORITIES

## I.

## PROCEDURAL HISTORY

1. On November 30, 2006, the Diversified Committee filed the Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC To Claims on Equity Misfiled As Proofs of Claim [Docket No. 1891] (the "Objection") to 111 of the 137 proofs of claim filed against Diversified Fund on the basis that such claims are not creditor claims but are, instead, claims on equity ("Claims on Equity") erroneously filed by Members who are holders of Diversified Fund equity interests seeking recovery on their equity interests. A detailed listing of the Claims on Equity was attached to the Objection as Exhibit 1. The Member Claims were included in the Objection, and the Diversified Committee objected to them on the same basis it objected to all of the other Claims on Equity.

2. In the Objection, the Diversified Committee objected to the Member Claims on the additional basis that Bankruptcy Code Section 510(b) mandates the subordination of such claims because they are being asserted for damages from breach of contract and fraud arising from the purchase or sale of the Debtor's securities. See Objection, pp. 6-7; 11 U.S.C. § 510(b).

3. On December 26, 2006, each of the Members concurrently filed a Response to Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC To Claims on Equity Misfiled As Proofs of Claim [Docket nos. 2267-2270, inclusive] (the "Responses"). Each of the Responses conceded that the respective Member had purchased equity interests in Diversified Fund pursuant to a prospectus and subscription agreement, but asserted that each Member also was a creditor of Diversified Fund holding unsecured claims on account of Diversified Fund's breach of the terms of the agreement set forth in such prospectus and on Diversified Fund's related fraudulent actions. See Responses, p. 2.

///

4.   In its Omnibus Reply to Responses To Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC To Claims on Equity Misfiled As Proofs of Claim [Docket No. 1891] (the "Reply") filed December 28, 2006, the Diversified Committee pointed out that the Members were in the exact same position as all of the approximately 1,300 other equity interest holders who had purchased membership units from Diversified Fund in the same way as the Members had, that the Members had offered no evidence to justify why they should be elevated to the status of unsecured creditors over and above their fellow Diversified Fund Members, and reiterated that Bankruptcy Code Section 510(b) mandates the subordination of the Member Claims to the same level as all other equity interest holders in Diversified Fund, pursuant to controlling law in this jurisdiction. Reply, pp. 4-5; see In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001).

5.   At the January 3, 2007, hearing on the Objection, the Court continued the hearing on the Objection in its entirety and ordered supplemental briefing from the Diversified Committee and the Members on the following issues:

A.   Does Bankruptcy Code Section 510(b) apply to the Member Claims?

B.   If so, should the Member Claims be subordinated only to unsecured creditor claims or should they be subordinated such that the Member Claims are on a par with all other equity interests in Diversified Fund?

## II.

## FACTUAL BACKGROUND

1.   As stated in Diversified Fund's prospectus dated June 2, 2003 (the "Prospectus"), Diversified Fund was a $200 million fund created in 2000 which sold membership units to investors. Potential investors were required to purchase whole units through a minimum subscription of one unit, or $25,000, unless an investor already owned Diversified Fund membership units and had elected to reinvest periodic distributions of income,

in which case fractional units could be purchased. Prospectus, cover page; Tucker Declaration, ¶ 6. A true and correct copy of the Prospectus is attached to the Tucker Declaration as **Exhibit A** and is incorporated for all purposes herein by this reference. The current capitalization of Diversified Fund approximates $150 million. Tucker Declaration, ¶ 6.

2. In order to purchase membership interests in Diversified Fund, investors were required to complete the subscription agreement ("Subscription Agreement"), a form of which was attached to the Prospectus. Prospectus, p. 6; Tucker Declaration, ¶ 7.

3. According to the Prospectus, Diversified Fund registered the sale of its membership units with the Nevada Securities Division, and strictly limited its offering to Nevada residents in order to avoid having to register its securities with the United States Securities and Exchange Commission, "pursuant to the intrastate exemption provided by Section 3(a)(11) of the Securities Act." Prospectus, pp. 5, 38; Tucker Declaration, ¶ 8.

4. The Members are among those investors, numbering over 1,300 as of April 13, 2006, who purchased membership units in Diversified Fund. Tucker Declaration, ¶ 9.

5. The Member Claims are the only proofs of claim for damages on the basis of breach of contract and fraud filed, timely or otherwise, by holders of Diversified Fund interests against Diversified Fund. Tucker Declaration, ¶ 10.

## III.

## LEGAL ARGUMENT

The Members' argument is that because they suffered damages due to breach of contract and fraud, they are the holders of unsecured creditor claims. This is not a novel strategy. It echoes the arguments of many other shareholders throughout the years who have found themselves invested in a troubled company. This Court should be wary of the Members' attempt to obtain better treatment than their 1,300+ co-investors and co-victims, and take note how other courts have approached the issue: "When a corporation becomes bankrupt, the temptation to lay aside the garb of a shareholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion." Newton Nat. Bank et., al. v. Newbegin, 74 F. 135, 140 (8th Cir. 1896); Jezarian v. Raichle (In re Stirling

Homex Corp.), 579 F.2d 206, 213 (2nd Cir. 1978). This is precisely what the Members are trying to do. The Members find themselves in the undesirable position of holding equity interests in a company that was badly abused by its former management. Their position is no different than that of all other holders of Diversified Fund interests. Despite that, the Members are using one pretense or another to attempt to assume the role of unsecured creditors *in addition to* their role as equity interest holders. The Members' position cannot be permitted to stand because it flies in the face of the Bankruptcy Code and controlling law in this jurisdiction.

Bankruptcy Code Section 510(b) provides:

> ***For the purpose of distribution under this title, a claim*** arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, ***for damages arising from the purchase or sale of such a security***, or for reimbursement or contribution allowed under section 502 on account of such a claim, ***shall be subordinated to all*** claims or ***interests that are senior to or equal the*** claim or ***interest represented by such security***, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. 510(b) (emphasis added).

The statute is explicit. The Member Claims must be subordinated to the same level as all other Diversified Fund Members' interests, and the Members are limited to recovering *pro rata* with other Diversified Fund Members based on their equity interests.

A.  **Section 510(b) Applies to the Member Claims Because They Are Claims For Damages Arising From the Purchase of Diversified Fund's Securities.**

The Members concede that they "purchased [their] interest[s] in the Debtor pursuant to Subscription Agreements, all of which provided that the terms of the agreement were as set forth in the prospectus of [the Debtor]." Responses, p. 2, lines 8-10. The Prospectus indicates Diversified Fund registered the sale of its membership units with the Nevada Securities Division and limited its offering to Nevada residents in order to avoid registration of its securities with the SEC. Prospectus, pp. 5, 38. Further, the Prospectus warned investors of the risks of ownership in Diversified Fund. See Prospectus, at "Risk Factors," pp. 36-48.

Accordingly, there can be no question that the sale of Debtor's membership units constituted a sale of Debtor's securities and that the Members purchased them.

"Although many subordination cases sound in fraud, the scope of section 510(b) has been broadened over the years to include claims based on contract law and other actions." In re American Wagering, 465 F.3d 1048, 1051 (9th Cir. 2006). Courts that have examined the scope of Section 510(b) in recent years, including the Ninth Circuit Court of Appeals, have concluded that "the phrase 'arising from' should be read broadly to encompass claims other than fraud claims, such as claims for breach of contract." Id., at 1052 citing In re Telegroup, 281 F.3d 133, 144 (3d Cir. 2002) (breach of stock purchase agreement); In re Betacom Phoenix, Inc., 240 F.3d 823, 829 (9th Cir. 2001) (breach of merger agreement); In re Int'l Wireless Communications Holdings, Inc., 257 B.R. 739, 746 (Bankr.D.Del. 2001), aff'd, 279 B.R. 463 (D.Del. 2002), aff'd, 68 Fed.Appx. 275 (3d Cir. 2003) (breach of stock purchase agreement); In re PT-1 Communications, Inc., 304 B.R. 601, 608 (Bankr.E.D.N.Y. 2004) (tortious interference). These courts and others have held that breach of contract claims may be subordinated under Section 510(b) where there is "some nexus or causal relationship between the claim and the purchase of the securities . . . ." American Wagering, 465 F.3d at 1052, citing Telegroup, 281 F.3d at 138; Betacom, 240 F.3d at 829; Int'l Wireless, 257 B.R. at 746; In re NAL Fin. Group, 237 B.R. 225, 234 (Bankr.S.D.Fla. 1999). "These opinions make clear that they were concerned with claims that tried to recharacterize or restate what would otherwise be subordinated securities claims." American Wagering, 465 F.3d at 1052.

At the hearing on the Objection, counsel for the Members seemingly argued that the Subscription Agreement, attached to the Prospectus, gave rise to a *separate* right of breach of contract action to the Members. This position is also without merit. Where the purchase of securities of a debtor is made pursuant to a prospectus with a subscription agreement attached, the subscription agreement offers no separate right of action. See generally Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997) (attached subscription agreement interpreted to be part of the same transaction in the solicitation of an offer to purchase securities and not a separate contract with a separate right); Official Comm. of Creditors Holding Unsecured

Claims v. PaineWebber, Inc. (In re De Laurentiis Entertainment Group), 124 B.R. 305 (Bankr. C.D. Cal. 1991) (stockbroker's claim for attorneys' fees pursuant to underwriting agreement found to fall within 510(b) even though agreement was separate from the prospectus); In re Walnut Equipment Leasing Co., 199 WL 1271762 (Bankr. E.D. Pa. 1999) (underwriter's claim for attorneys' fees pursuant to an indemnification clause in an underwriting agreement was subordinated under 510(b) despite argument that claim arose from a separate agreement and not from the "purchase or sale of a security").

As noted above, the Subscription Agreement was attached to the Prospectus as a form agreement for consideration by prospective investors in Diversified Fund's solicitation for the purchase of its securities. As such, the Subscription Agreement was a part of the Prospectus and part of the same transaction when potential investors in the Diversified Fund (including the Members) were required to execute in order to purchase their respective equity interests in Diversified Fund. Because it does not stand alone, the Subscription Agreement does not give rise to any separate right of action for breach of contract to any Diversified Fund Members (including the Members). Instead, the Member Claims fit squarely within the province of Section 510(b).

Finally, the Members argue they are unsecured creditors on the basis of damages due to fraud and breach of contract subsequent to their purchase of Diversified Fund's securities. Clearly, the Members are attempting to recharacterize or restate claims that are, in fact, securities claims that must be subordinated under Section 510(b). Their losses stem directly from their purchase of equity interests in Diversified Fund.

**B.      Section 510(b) Prevents the Members from Circumventing the Priority Scheme Established by the Bankruptcy Code and Mandates That the Members Recover at the Equity Level on a Pro Rata Basis.**

The Bankruptcy Code establishes a clear priority scheme for the distribution of estate assets through a plan of reorganization. First, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. § 1122(a). Second, a plan must "provide the same treatment for each claim or interest of a particular class," unless the holder of the claim agrees otherwise.

11 U.S.C. § 1123(a)(4). Finally, senior claims must be paid in full before any junior class can receive or retain any property under a plan. 11 U.S.C. §1129(b)(2)(B); In re Ambanc La Mesa LP, 115 F. 3d 650, 654 (9th Cir. 1997). This last requirement is commonly known as the "absolute priority rule." See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441-442 (1999).

Pursuant to absolute priority rule, a claimant who holds an equity interest in a debtor may recover from the debtor's estate only if the estate's creditors are to be paid in full under the plan. Indeed, the Debtors' plan of reorganization (the "Plan") confirmed by the Court's order entered on January 8, 2007, so provides. If there are any remaining assets after provision for payment in full of senior classes, equity holders must recover on par with other similarly-classified equity holders, and must share with other equity holders in their class on a *pro rata* basis as determined by the allowed amount of the holder's claim.

The Members have attempted to circumvent the Plan and the statutory priority scheme by categorizing their claims against Diversified Fund according to various contract and/or tort theories. In doing so, they seek unfairly to recover on par with general secured or unsecured creditors of the estate, ahead of similarly situated equity holders, thereby depleting the pool of assets that should be available for distribution to the equity class.

However, because all of the Member Claims arise out of the purchase of their membership interests in Diversified Fund, their claims must be subordinated on a par with all other Diversified Fund Members' equity interests, pursuant to the mandate of Bankruptcy Code section 510(b).[1] 11 U.S.C. § 510(b).

It is well settled in this jurisdiction that the purpose of Section 510(b) is to prevent the inequitable circumvention of the priority scheme established by the Bankruptcy Code. But that is exactly what the Members seek to effect in this instance. As explained by the Ninth Circuit in In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001):

---

[1] Furthermore, as discussed further herein, to the extent any Members seek relief on claims in excess of their equity investment in Diversified Fund, such claims also must be subordinated to recovery on a par with that of all other equity members on their investment interests.

> the dissimilar expectations of investors and creditors should be taken into account in setting a standard for mandatory subordination. Shareholders expect to take more risk than creditors in return for the right to participate in firm profits. The creditor only expects repayment of a fixed debt. It is unfair to shift all of the risk to the creditor class since the creditors extend credit in reliance on the cushion of investment provided by the shareholders.

Id., at 829.

Betacom "is the governing precedent on section 510(b) in the Circuit." In re American Wagering, Inc., 465 F.3d 1048, 1052 (9th Cir. 2006). In American Wagering, the Ninth Circuit discussed Section 510(b) and its prior ruling in Betacom to distinguish the facts in American Wagering that did not warrant mandatory subordination of a creditor's claim under Section 510(b). See generally, Id. It reiterated its ruling in Betacom that one of the primary purposes of Section 510(b) "is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors." Id., at 1051.

In the absence of Section 510(b), the Members would be entitled to payment in full on their claims for contract and/or tort damages before any of the other Diversified Fund Members could receive any distribution whatsoever. Section 510(b) prevents this inequitable result by prohibiting the Members from bootstrapping their equity claims to the level of creditor claims. Thus, the Members are only entitled to recover at the equity level on a par with other similarly situated equity holders.

C. **Any Member Claims in Excess of Their Equity Interest Must Be Subordinated to Other Equity Interest Claims Pursuant to Section 510(b).**

Even if the Members could be deemed to hold direct claims against Diversified Fund above and beyond the amount of their membership interests, any such excess claims would be "subordinated to all . . . interests that . . . equal the . . . interest represented by such security." 11 U.S.C. § 510(b). In other words, any claims in excess of the Members' equity investment must be subordinated to the general equity recovery in this case because such claims do not fall within the listed exception to Section 510(b)'s mandatory subordination *below* the equity interest out of which the equity-related claim arises, which is explicitly carved out only for "common stock" and

no other form of security. See, e.g., Security Leasing Partners, L.P., v. Proaltert, LLC (In re Proalert, LLC), 314 B.R. 436, 441 (9th Cir. B.A.P. 2004) ("[T]he plain meaning of a statute controls, except in rare cases where a literal interpretation produces absurd results. A court must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . When the words of a statute are clear, judicial inquiry is complete.") (internal quotations and citations omitted).

This result is not only consistent with the plain language of the statute, but also effectuates the overall equitable distribution scheme of the Bankruptcy Code — any claims asserted by the Members beyond request for recovery on their *pro rata* equity interest in Diversified Fund are in the nature of derivative claims, reflecting harm suffered by the Diversified Fund as a whole, and by each equity participant ratably according to his, her, or its equity investment.

Therefore, the Members should recover from Diversified Fund based on their *pro rata* equity contribution, in the same manner as all similarly-situated equity participants.

D.  **The Members' Recovery Should be Limited in Amount to Recovery on a *Pro Rata* Basis with Other Equity Holders, as Determined by Their Equity Interest, Because There are No Other Valid Claims or Causes of Action by the Members Against the Diversified Fund Estate.**

At the equity level, the Members must share *pro rata* with their fellow Diversified Fund equity holders, all of whom are similarly situated. Whether the Members' claims are conceptualized as claims in contract, tort, or as recovery on their equity investment, none of the Members has set forth any basis or theory in law or equity on which he or she holds a claim against the Diversified Fund estate greater than his or her *pro rata* equity interest. See NEV.REV.STAT.ANN. § 86.381 (2006) ("Member of a limited-liability company is not a proper part to proceedings . . . against the company, except where the object is to enforce the member's right against . . . the company.").

Any possible claims for relief beyond recovery on the Members' investments are either (i) derivative actions belonging to the Diversified Fund estate, or (ii) actions that should be

brought directly against a third party. In either instance, the Members erroneously seek recovery from the Diversified Fund estate on such claims.

Derivative actions seek recovery for damage suffered by a company as a whole and, therefore, suffered by all of the company's equity holders on a *pro rata* basis. Such actions belong to the company itself, although equity holders are allowed in certain circumstances to bring such claims derivatively on the company' behalf. See generally, NEV.REV.STAT.ANN. §§ 86.483, et seq. (2006) (discussing derivative actions by members of an LLC); AM JUR 2D LIMITED LIABILITY COMPANIES § 7 (same). However, because such actions actually belong to the company itself, any relief received by the plaintiff on derivative actions (minus reasonable expenses and attorneys' fees) must be remitted to the company for the benefit of *all* of its equity holders. See, e.g., NEV.REV.STAT.ANN. § 86.489 (2006); AM JUR 2D LIMITED LIABILITY COMPANIES § 7.

The derivative nature of any claims on which any holder of a Diversified Fund interest arguably seeks to obtain recovery, beyond his, her or its equity investment, is underscored by the *pro rata* harm suffered by *every* holder of a membership interest in Diversified Fund under any such claim. Any potential derivative actions related to the Members' equity interests are property of Diversified Fund's estate and are not properly asserted against Diversified Fund as a defendant. See In re Skolnick v. Atl. Gulf Communities Corp. (In re General Dev. Corp.), 179 B.R. 335, 338 (S.D. Fla. 1995) ("A corporation's filing for bankruptcy cuts off a shareholders' ability to bring a derivative claim.").

Beyond the claims discussed above (i.e., claims based on the Members' equity interest or derivative claims), the only possible remaining claims that could be brought by individual Diversified Fund Members relating to their investment in Diversified Fund would have to arise from unique damages a Diversified Fund Member may have suffered, apart from damages suffered by the company itself and therefore apart from the losses suffered by all equity holders. None of the Member Claims allege any damage suffered that is unique to the respective individual equity holder (i.e., claims beyond recovery of their investment amount that are not

derivative of the estate's rights). Indeed, at the January 3rd hearing, the only distinguishing factor postulated by counsel for the Members is that the Members timely filed proofs of claim.

In summary, regardless of whether any derivative or direct claims may exist against *third parties* for alleged damages suffered by the Members or any Diversified Fund investors in excess of their equity investment, such claims do not provide any basis for the Members or any other Diversified Fund investors to recover disproportionately large amounts from the *Diversified Fund estate* based on their equity interests, at the expense of similarly-situated equity holders.

## III.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Diversified Committee respectfully requests that the Court enter an order (i) sustaining the Diversified Committee's objections to the Member Claims and other Claims on Equity, as set forth in the Objection and subsequent pleadings, including this Supplemental Brief; (ii) overruling the Responses; (iii) disallowing, in their entirety, all of the Claims on Equity as misfiled against the Diversified Fund and/or duplicative of Proofs of Interest already on file and deemed allowed by the Court; (iv) disallowing, in their entirety, the Member Claims as misfiled against the Diversified Fund and/or duplicative of Proofs of Interest already on file and deemed allowed by the Court, or, in the alternative, subordinating the Member Claims pursuant to Bankruptcy Code Section 510(b)

///
///
///
///
///
///
///
///
///

such that the Members should recover from the Diversified Fund estate based on their *pro rata* equity contribution, in the same manner as all similarly-situated equity participants.

DATED this 17th day of January 2007.

                                        BECKLEY SINGLETON, CHTD.

By: /s/ Anne M. Loraditch
Bob L. Olson (Nevada Bar No. 3783)
Anne M. Loraditch (Nevada Bar No. 8164)
530 Las Vegas Boulevard South
Las Vegas, NV 89101

and

Marc A. Levinson (California Bar No. 57613)
Jeffery D. Hermann (California Bar No. 90445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497

*Attorneys for the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC*