Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

E-FILED ON JANUARY 18, 2007

*Attorneys for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Date: January 31, 2007<br>Time:  10:00 a.m. |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **DEBTORS' BRIEF IN OPPOSITION TO USA COMMERCIAL REAL ESTATE GROUP, INC.'S MOTION TO ENFORCE ORDER GRANTING DEBTORS' MOTION TO DISTRIBUTE FUNDS**<br><br>**(AFFECTS ALL DEBTORS)** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Hearing: January 31, 2007<br>Hearing Time: 9:30 a.m. |

1
Brief in Opposition_to_motion_to_enforce_distribution 011807

Debtors USA Commercial Mortgage Company ("USACM"), USA Capital First Trust Deed Fund, LLC, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital Realty Advisors, LLC ("USA Realty"), and USA Securities, LLC ("USA Securities") (collectively, the "Debtors"), by and through their counsel, hereby respectfully submit this Brief in Opposition to the Motion to Enforce Order Granting Debtors' Motion to Distribute Funds ("Enforcement Motion") filed on September 27, 2006 [Docket No. 1388] by USA Commercial Real Estate Group, Inc. ("USA Real Estate"). This Supplemental Brief is filed at the request of the Court, supplementing the Debtors' Objection to the Enforcement Motion filed on October 20, 2006 [Docket No. 1619] ("Debtors' Objection"), and responding to USA Real Estate's Reply to the Debtors' Objection filed on November 6, 2006 [Docket No. 1736] ("USA Real Estate Reply"). For the reasons stated in the Debtors' Objection and herein, the Debtors respectfully submit that USA Real Estate's Enforcement Motion should be denied.

## BACKGROUND

### General

1. On April 13, 2006 ("Petition Date"), the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. By order entered June 9, 2006, the Court approved the joint administration of the Debtors' chapter 11 cases.

2. Prior to the Petition Date, the Debtors were managed and controlled by Joseph D. Milanowski ("Milanowski"), Thomas A. Hantges ("Hantges"), Paul S. Hamilton ("Hamilton") and/or USA Investment Partners LLC ("USAIP"), an entity which is owned and controlled by Milanowski, Hantges and Hamilton (or through trusts that they control). Milanowski, Hantges and Hamilton are also the primary shareholders of USACM (either in their own names or through trusts that they control). As of the Petition Date, Milanowski, Hantges and Hamilton relinquished management authority to Thomas J. Allison of Mesirow Financial Interim Management, LLC, who became the Debtors' Chief Restructuring Officer. Since the Petition Date, it has been discovered that significant management irregularities occurred during the period that Milanowski, Hantges and Hamilton were managing the Debtors. As a result, the Debtors have numerous claims against Milanowski, Hantges and Hamilton, and entities affiliated them, including USAIP.

2

Brief in Opposition_to_motion_to_enforce_distribution 011807

3.      Prior to the Petition Date, USACM was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by residential and commercial developments, both on behalf of investors and for its own account.

4.      USA Real Estate is a Nevada corporation that invested in several of the loans serviced by USACM. Its name appears as a "lender" on the loans in question and, therefore, it is a "Direct Lender." Milanowski and Hantges are the only officers of USA Real Estate,[1] and they are shareholders of USA Real Estate.[2]

## Distributions to Direct Lenders and Fund Members

5.      On July 7, 2006, the Debtors filed a "Motion to Distribute Funds and to Grant Ordinary Course Releases and Distribute Proceeds" (the "Distribution Motion") [Docket No. 847], seeking authorization to distribute certain defined funds that USACM had collected on serviced loans both prior to and after the Petition Date to investors.

6.      On July 10, 2006, USACM provided to Direct Lenders and members of FTDF and DTDF "Investor Statements,"[3] showing the principal and interest due through June 30, 2006 on loans serviced by USACM. USACM expressly reserved the right to supplement the Investor Statements. As a Direct Lender, USA Real Estate received an Investor Statement, showing that it was owed $17,578.84 on the loans in which it had invested. A copy of the Investor Statement that was sent to USA Real Estate is attached as Exhibit 1 to the USA Real Estate Reply.

7.      After an Investor Statement was sent to USA Real Estate, the Debtors' current management discovered that Milanowski and Hantges are the only officers of USA Real Estate, and are shareholders of USA Real Estate.[4]

---

[1] See Debtors' Objection, Exhibit A.

[2] See Supplement to Joinder in Debtors' Opposition to Motion to Enforce Order Granting Debtors' Motion to Distribute Funds at 2 n.4 (filed January 17, 2007).

[3] See Debtors' First Amended Disclosure Statement for Debtors' Third Amended Joint Chapter 11 Plan of Reorganization at 31-32.

[4] See Debtors' Objection, Exhibit A (printout of information obtained about USA Real Estate from the Nevada Secretary of State's website); Supplement to Joinder in Debtors' Opposition to Motion to Enforce Order Granting Debtors' Motion to Distribute Funds at 2 n.4 (filed January 17, 2007).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8. On August 24, 2006, the Court entered an Order granting the Distribution Motion (the "Distribution Order") [Docket No. 1184], thus authorizing the distribution of certain collected funds to Direct Lenders.

**The Enforcement Motion**

9. On August 25, 2006, the Debtors made distributions authorized by the Distribution Order from USACM's "Collection Account" to Direct Lenders. The Debtors did not, however, distribute any funds to USA Real Estate because of Milanowski and Hantges's affiliation with USA Real Estate. It was determined by the Debtors that despite the Distribution Order, further authorization of the Court was necessary to make a distribution to USA Real Estate, whose affiliation to Milanowski and Hantges had not been discovered at the time of the filing of the Distribution Motion and thus was not disclosed therein. Not only did the Debtors deem it necessary to disclose Milanowski and Hantges's affiliation to USA Real Estate prior to making any distribution to that entity, but the Debtors also determined that, to the extent USA Real Estate could assert a claim that it was entitled to a distribution, that claim would be subject to setoff by the Debtors.[5]

10. On September 27, 2006, USA Real Estate filed its Enforcement Motion, requesting that the Court enter an Order pursuant to section 105(a) of the Bankruptcy Code, requiring the Debtors to make a distribution to it in the amount of $17,578.84. A hearing on the Enforcement Motion was scheduled for November 13, 2006.

11. On October 20, 2006, the Debtors filed the Debtors' Objection, objecting to the Enforcement Motion, and outlining their initial reasons for refusing to make a distribution to USA Real Estate, including asserting rights to setoff any claims they may hold against USA Real Estate against the funds USA Real Estate was seeking to obtain.

12. On November 4, 2006, USA Real Estate filed the USA Real Estate Reply, maintaining in most relevant part, that the Debtors could not effect a setoff under Nevada law and section 558 of the Bankruptcy Code because they had failed to articulate the claims that might

---

[5] *See* Debtors' Objection.

1  exist against USA Real Estate.[6] In addition, USA Real Estate argued that the Debtors had erred in
2  refusing to distribute funds to it in light of the fact that they had not commenced an adversary
3  proceeding to effect their setoff.[7] Finally, USA Real Estate stated that the Debtors could not seize
4  or attach its property without providing it with due process of law by obtaining a writ of
5  attachment in accordance with Nevada Revised Statute 31.010 et seq.[8]

**Subsequent Monthly Distributions to Direct Lenders**

7  13. In the meantime, on August 29, 2006, the Debtors filed a "Modification to Motion
8  to Distribute Funds and Propose Procedures for Ongoing Distributions" [Docket No. 1203]
9  ("Second Distribution Order"), seeking to extend and modify the relief requested in the
10 Distribution Motion and to propose specific procedures by which future interim distributions
11 could be made to Direct Lenders on a monthly basis.

12 14. On October 2, 2006, the Court entered a "Modified Order Authorizing Interim
13 Distributions and Holdbacks" [Docket No. 1424], setting forth the procedures for future monthly
14 distributions to Direct Lenders, less certain holdbacks ("Second Distribution Order").

15 15. Pursuant to the Second Distribution Order, the Debtors made further interim
16 distributions from USACM's Collection Account to Direct Lenders. However, for the reasons
17 stated in the Debtor's Objection to the Enforcement Motion, the Debtors made no distributions to
18 USA Real Estate. If distributions had been made to USA Real Estate under the Second
19 Distribution Order, the total amount that USA Real Estate would have received would have
20 increased from $17,578.84 to approximately $180,656.53.

**The Confirmation of the Debtors' Plan**

22 16. On November 6, 2006, the Debtors filed their "Second Amended Joint Chapter 11
23 Plan of Reorganization Dated November 6, 2006" ("Second Amended Plan") [Docket No. 1741],
24 and on November 7, 2006, the Debtors filed a Disclosure Statement in conjunction with the

---

[6] USA Real Estate Reply at 2-6.
[7] Id. at 6-7.
[8] Id. at 7-8.

5
Brief in Opposition_to_motion_to_enforce_distribution 011807

1  Second Amended Plan [Docket No. 1755].

2      17.    On November 13, 2006, on the same day as scheduled hearing on the Enforcement Motion, the Court conducted a hearing on the adequacy of the Debtors' Disclosure Statement and procedures related to the confirmation of a plan. At that hearing, the Debtors' Disclosure Statement and the Debtors' procedures relating to confirmation of a plan were approved, including the scheduling of a confirmation hearing for December 19, 2006. When the Enforcement Motion was addressed, it was argued that issues related to USA Real Estate's right to distribution would be resolved by the Plan. Accordingly, the Court determined that the hearing on the Enforcement Motion should be continued until after the December 19, 2006 confirmation hearing, and it set the Enforcement Motion for hearing on January 3, 2006.

18.    On November 15, 2006, the Debtors filed their "Third Amended Joint Chapter 11 Plan of Reorganization" ("Plan") [Docket No. 1799].

19.    On November 16, 2006 the Court entered its "Order Approving: (A) Debtors' Disclosure Statement; (B) Proposed Notice of Confirmation Hearing; (C) Proposed Solicitation and Notice Procedures; and (D) Proposed Form of Ballots" ("Disclosure Statement Order") [Docket No. 1800].

20.    A Solicitation Package, including a "Notice of Confirmation Hearing and Related Deadlines and Procedures for Seeking Approval of and Objection to Confirmation of the Debtors' Third Amended Joint Plan of Reorganization" ("Confirmation Notice"), the Disclosure Statement and the Plan, and the Disclosure Statement Order, was served on USA Real Estate.

21.    "Important Dates" were set forth on the cover of the Solicitation Package, including the "Confirmation Objection Deadline" of December 11, 2006. In addition, the Confirmation Notice included in the Solicitation Package made clear that objections to confirmation must be filed by December 11, 2006, and must include evidentiary support.

22.    USA Real Estate did not file an objection to the confirmation of the Plan.

23.    On December 19, 2006 and December 20, 2006, the Court conducted the confirmation hearing. USA Real Estate did not enter an appearance at the confirmation hearing. At the close of the hearing, the Court indicated that it would enter an Order confirming the Plan.

Brief in Opposition_to_motion_to_enforce_distribution 011807

**Relevant Events Post-Confirmation Hearing**

24. On January 3, 2007, the Court conducted a continued hearing on the Enforcement Motion. After arguments were made, the Court established a briefing schedule, and further continued the hearing on the Enforcement Motion to January 31, 2007. This Brief is filed pursuant to the Court's briefing schedule.

25. On January 8, 2007, the Court entered its "Order Confirming the 'Debtors' Third Amended Joint Chapter 11 Plan of Reorganization,' as Modified Herein" ("Confirmation Order") [Docket No. 2376], and its "Findings of Fact and Conclusions of Law in Support of 'Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, as Modified Herein""" ("Confirmation Findings and Conclusions") [Docket No. 2377]. The Court held that notice of the confirmation hearing was properly given and that the Debtors complied with procedures approved in the Disclosure Statement Order.[9] Furthermore, the Court expressly found that the Plan satisfied all of the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code and, with respect to Class A-7 (Subordinated Claims) which was deemed to have rejected the Plan, met the requirements of section 1129(b) of the Bankruptcy Code.[10]

**The Anticipated Proceeding Against USA Real Estate**

26. On December 25, 2006, USACM and DTDF (collectively, the "Plaintiffs") commenced an adversary proceeding in this Court against HMA Sales, LLC ("HMA") and Salvatore J. Reale ("Reale") (collectively, the "Defendants"), which has been designated as Adversary Proceeding No. 06-1256, asserting causes of action against the Defendants under sections 544, 548 and 550 of the Bankruptcy Code and Nevada Revised Statute 112.180 ("Fraudulent Transfer Action").

27. Upon information and belief, HMA is Nevada limited liability company that is owned, managed and controlled by USAIP, which in turn, is an entity owned by the Joseph

---

[9] Confirmation Findings and Conclusions ¶ B.

[10] Id. ¶¶ G & H.

1  Milanowski 1998 Trust and the Tom J. Hantges 1997 Trust, and which is controlled by
2  Milanowski and/or Hantges.

3  28. The Fraudulent Transfer Action involves the matters related to HMA's purchase
4  and sale of the Royal Hotel, a property located at 99 Convention Center Drive, Las Vegas,
5  California (the "Royal Hotel"). Generally, the Plaintiffs maintain that Milanowski and Hantges,
6  as controlling officers of DTDF, caused approximately $13.7 million of DTDF funds to be
7  advanced either through USAIP or directly through DTDF to HMA, which HMA used to purchase
8  the Royal Hotel. After the Petition Date, USAIP pledged to the Plaintiffs among other things, its
9  member interest in HMA, thus providing the Plaintiffs with an interest in the Royal Hotel. At
10 approximately the same time, however, HMA, acting through Milanowski, granted Reale a lien
11 against the Royal Hotel for no apparent consideration, which adversely affected the Plaintiffs'
12 interest in the Royal Hotel. In the Fraudulent Transfer Action, the Plaintiffs seek to avoid
13 fraudulent transfers made, recover property of the Plaintiffs' estates, and to impose equitable liens
14 and/or constructive trusts against the Royal Hotel or the sale proceeds therefrom.

15 29. Just prior to the commencement of the Fraudulent Transfer Action, the Royal Hotel
16 has been sold for $29,100,000. A copy of the "Seller's Final Settlement Statement" is attached
17 hereto as <u>Exhibit "A"</u> ("Settlement Statement"). The Settlement Statement shows that USA Real
18 Estate received a "Commission" in the amount of $435,000 from the sale proceeds.

19 30. The Complaint in the Fraudulent Transfer Action will be amended by the Plaintiffs
20 prior to the January 31, 2007 continued hearing on the Enforcement Motion to, among other
21 things, include USA Real Estate as a Defendant and to add appropriate causes of action related to
22 the avoidance and recovery of the Commission and setoff. The Plaintiffs will also seek
23 appropriate pre-judgment relief in the form of a temporary restraining order and/or a pre-judgment
24 writ of attachment.

**USA Real Estate's Proofs of Claim**

26 31. On November 3, 2006, USA Real Estate filed a proof of claim against USACM,
27 asserting a general unsecured claim in the amount of $48,869 which the Debtors presume would
28 be the same funds to which the Enforcement Motion applies ("First Proof of Claim").

32. On January 12, 2007, USA Real Estate filed a second proof of claim against USACM, asserting a claim for unremitted principal.

## DISCUSSION

By its Enforcement Motion, as supplemented by the USA Real Estate Reply, USA Real Estate seeks to require the Debtors to distribute approximately $150,000 in funds collected by USACM prior to and after the Petition Date on loans on which USA Real Estate is a lender. The Debtor objects to the Enforcement Motion on two grounds: (A) any right to payment that USA Real Estate can assert against USACM is a "Subordinated Claim" that is not entitled to distribution under the confirmed Plan to which USA Real Estate is bound; and (B) any right to payment that USA Real Estate can assert against USACM is subject to set off against claims that USACM can assert against USA Real Estate as part of the Fraudulent Transfer Action and/or as "Non-Debtor Insider Litigation" (described below).

**A.  The Enforcement Motion should be denied because USA Real Estate is not entitled to any distribution pursuant to the terms of the confirmed Plan**

Through its Enforcement Motion, USA Real Estate seeks an order compelling the Debtors to distribute $180,656.53 to it, and it has asserted the same right to payment in its First Proof of Claim. For the reasons outlined below, the Enforcement Motion should be denied because USA Real Estate is not entitled to any distribution from USACM under the terms of the confirmed Plan to which it is bound.

The confirmed Plan expressly provides that holders of "Subordinated Claims" against USACM, *i.e.,* Class A-7 Claims, are not entitled to any distribution on account of their Claims unless holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and holders of Allowed Claims in Classes A-1 through A-6 are paid in full, plus interest.[11] Both the Disclosure Statement and the Plan state that holders of Class A-7 Subordinated Claims will not receive any distribution on account of their Subordinated Claims because there will not be sufficient Cash to pay holders of Allowed Class A-4 General Unsecured Claims, much less

---

[11] Plan, Art. II, Section C.1.g.

1 holders of Allowed Class A-6 Penalty Claims.[12]

2 "Subordinated Claims" under the Plan are "any and all Claims of Non-Debtor Insiders against USACM."[13] USA Real Estate is the holder of a Class A-7 Subordinated Claim because it is a "Non-Debtor Insider" asserting a right to payment from USACM. As a result, USA Real Estate is not entitled to any distribution from USACM, unless all Allowed Claims senior to USA Real Estate's Subordinated Claim are paid in full, plus interest (an unlikely event). With no right to distribution under the Plan, USA Real Estate's claim and request for distribution asserted in the Enforcement Motion and in its First Proof of Claim, must be denied.

A "Claim" under the Plan means a "right to payment,"[14] and a "Non-Debtor Insider" is defined as follows:

> [A]n Insider that is not a Debtor, expressly including, without limitation, the IP Parties, any Affiliate of the Debtors and the IP Parties, Insiders of the IP Parties, professionals of such Insiders or of the Debtors, and/or any Entity which has conspired with or aided and abetted an Insider that is not a Debtor.[15]

An "Insider" includes, in relevant part, an "affiliate, or insider of an affiliate as if such affiliate were the debtor[.]"[16] An "affiliate" is defined in the Plan and section 101(2) of the Bankruptcy Code as a--

> corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with the power to vote . . . by an entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor. . . .[17]

Pursuant to the Plan, an "Affiliate" also includes "any and all Persons whose business is owned or controlled by the Debtors or any Insiders of the Debtors . . . , or in which the Debtors or Insiders

---

[12] Id. Section A (Summary of Class A-7 claims); Disclosure Statement at 45 (same).

[13] Plan, Art. I, Section 126.

[14] 11 U.S.C. § 101(5)(A); Plan, Art. I, Section 27.

[15] Plan, Art. I, Section 99.

[16] 11 U.S.C. § 101(31)(E); see id. §101(31)(B)(i)-(iii); Plan, Art. I, Section 88.

[17] 11 U.S.C. § 101(2)(B); see Plan, Art. I., Section 6.

Brief in Opposition_to_motion_to_enforce_distribution 011807

of the Debtors . . . have any ownership, participation, profit sharing or any other kind of interest whatsoever."[18] The "IP Parties" include Milanowski and Hantges.[19]

It cannot be disputed that USA Real Estate is a Non-Debtor Insider under these provisions. Specifically, USA Real Estate is an "Insider" that is not a Debtor. USA Real Estate is an "Insider" under section 101(31) and (31)(E) and section 101(2)(B) of the Bankruptcy Code because it is owned and controlled by Milanowski and Hantges, who directly or indirectly own, control or hold the power to vote 20 percent or more of USACM's outstanding voting securities. In addition, USA Real Estate is an "Insider" because it is an "Affiliate" as that term is set forth in the Plan inasmuch as USA Real Estate is a business owned and controlled by Milanowski and Hantges who are "Insiders" of the Debtors. For these reasons, it cannot be disputed that USA Real Estate is a "Non-Debtor Insider" under the examples of that term set forth in the Plan: it is an "Affiliate of the Debtors," it is an "Affiliate" of the IP Parties (Milanowski and Hantges), it is an "Insider" of the IP Parties, and it may be an "Entity which has conspired with or aided and abetted an Insider that is not a Debtor."[20]

As a Non-Debtor Insider and thus the holder of a Class A-7 "Subordinated Claim," USA Real Estate is not entitled to any payment from USACM, and USA Real Estate is bound by this Plan treatment. Specifically, as a result of the confirmed Plan, no entity may receive any payment or assert any right to payment against assets of USACM except as provided in the Plan or Confirmation Order, "regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity Interest and regardless of whether such an Entity has voted to accept the Plan."[21] USA Real Estate had been put on notice that the Plan, if confirmed, could resolve the Enforcement Motion,[22] and shortly thereafter was provided a copy of the Disclosure Statement and the Plan in the Solicitation Package, both of which state that payments could only be made in accordance with

---

[18] Plan, Art. I, Section 88.

[19] Id., Section 92.

[20] Id., Section 99.

[21] Id. Art. IV, Section H; see Confirmation Order ¶ 50; Confirmation Findings and Conclusions ¶S.

1  the Plan and that "Non-Debtor Insiders" would not be entitled to any distribution. Despite these

2  facts, USA Real Estate did not object to the confirmation of the Plan or in any way protect its

3  rights in relation to its alleged right to payment set forth in the Enforcement Motion and its Proofs

4  of Claim. The Plan, having been confirmed, is binding on USA Real Estate, and USA Real Estate

5  cannot claim otherwise.

6  Having no right to distribution under the terms of the confirmed Plan, it is respectfully

7  submitted that USA Real Estate's Enforcement Motion should be denied.

**B. Even if USA Real Estate has a right to distribution, the Enforcement Motion should be denied because the Debtors have setoff rights and possibly other defenses and claims against USA Real Estate that are expressly preserved under the confirmed Plan**

11  In the Debtor's Objection to USA Real Estate's Enforcement Motion, the Debtors have

12  maintained that to the extent that USA Real Estate could assert a right to distribution, no funds

13  should be disbursed to it because that right would be subject to setoff against claims that the

14  Debtors could assert against USA Real Estate or its Insiders, *i.e.*, Milanowski and Hantges, or

15  Affiliates, *i.e.* Milanowski, Hantges and, possibly, HMA and USAIP. USA Real Estate replied

16  that the Debtors had not asserted a right to setoff under Nevada law because they had not

17  articulated any claims against which they could effect a setoff, and they had not commenced an

18  adversary proceeding to enforce that right. Furthermore, USA Real Estate maintained that by

19  failing to distribute funds to them under the Distribution Order, and presumably, the Second

20  Distribution Order, the Debtors were improperly affecting a pre-judgment writ of attachment. For

21  the reasons stated below, these arguments are without merit and the Enforcement Motion should

22  be denied.

23  As discussed above, the Fraudulent Transfer Action Complaint will be amended by the

24  Plaintiffs, including USACM, to, among other things, name USA Real Estate as a Defendant, to

25  seek recovery of the $435,000 Commission that USA Real Estate received from the sale of the

26  Royal Hotel, and to effect its setoff rights. Accordingly, by no later than the continued hearing on

---

[22] *See supra* ¶ 17.

the Enforcement Motion, the Plaintiff-Debtors will have formally asserted a claim against USA Real Estate against which setoff rights may be effected, and which will provide the Plaintiff-Debtors a proceeding in which to initiate any appropriate pre-judgment procedures. In addition, USACM will file an application for a pre-judgment writ of attachment and preliminary injunction based upon the facts as alleged in the proposed amended complaint and the Seller's Final Settlement Statement from the sale of the Royal Hotel.

In addition to the claim to be asserted against USA Real Estate in the Fraudulent Transfer Action, other claims against USA Real Estate may be asserted on behalf of USACM by the trustee of the USACM Liquidation Trust, including claims of equitable subordination and setoff. In particular, the Plan states that all "Litigation Claims,"[23] including "Non-Debtor Insider Litigation"(defined as "all Litigation Claims against Non-Debtor Insiders and recoveries therefrom")[24] will be vested in the USACM Liquidation Trust upon the Effective Date of the Plan and the trustee of the USACM Liquidation Trust will be charged with pursuing such Claims and Litigation.[25] It may well be that after further investigation of USA Real Estate, a Non-Debtor Insider, the USACM Liquidation Trust will pursue Non-Debtor Insider Litigation or other Litigation Claims against USA Real Estate. Until that investigation is completed, the Debtors maintain that no funds should be disbursed to USA Real Estate.

Under the confirmed Plan,[26] the Debtors have retained all rights and defenses, including rights of setoff and recoupment, against USA Real Estate. Furthermore, nothing in the Plan or the

---

[23] Litigation Claims means:

> any and all rights, causes of action, Claims, obligations, suits, debts, promises, agreements, judgments and demands of whatever kind or nature, whether known or unknown, suspected or unsuspected, whether at law or equity, including without limitation . . . Non-Debtor Insider Litigation, . . . recoupment, set off and equitable subordination, whether or not brought as of the Effective Date . . . .

Plan, Art. I, Section 95.

[24] Id. Section 100.

[25] Id. Art. IV, Section D.1; see Confirmation order ¶¶ 30 and 35; USACM Liquidation Trust Agreement.

[26] Id. Art. IV, Section G; Confirmation Order ¶¶ 49, 58 and 77.

1  Confirmation Order, including without limitation the releases provided to Direct Lenders,[27]

2  releases USA Real Estate. In fact, the Confirmation Order expressly provides that nothing in the

3  Plan or the Confirmation Order "shall be construed as providing a release of any claims or causes

4  of action against Joseph Milanowski, Thomas Hantges . . . USA Commercial Real Estate Group . .

5  . their insiders or affiliates (other than the Debtors themselves in accordance with the provisions of

6  the Plan).[28]

7      Accordingly, the Enforcement Motion should be denied because, if USA Real Estate is

8  entitled to a distribution (which for the reasons outlined above the Debtors expressly deny), that

9  right to payment is subject to defenses of setoff or recoupment (and possibly other claims or

10 defenses that may be discovered by the USACM Liquidation Trust) which are expressly preserved

11 against USA Real Estate under the Plan and the Confirmation Order.

## CONCLUSION

For the reasons stated herein, the Debtors respectfully submit that the Enforcement Motion should be denied.

DATED this 18th day of January, 2007.

/s/ Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Jeanette E. McPherson, Esq.
SCHWARTZER & MCPHERSON
2850 South Jones Blvd., Suite 1
Las Vegas, Nevada 89146

AND

Annette W. Jarvis (Utah Bar No. 1649)
Steven C. Strong (Utah Bar No. 6340)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah 84145-0385
*Attorneys for Debtors and Debtors-in-Possession*

---

[27] Id. Art. IV, Section E.1.a & Art. VIII, Section 4.

[28] Confirmation Order ¶ 81.

# EXHIBIT "A"



**First American Title Insurance Company**

1160 Town Center Drive, #190 • Las Vegas, NV 89144

## Seller's Final Settlement Statement

| | | | |
|---|---|---|---|
| **Property:** | 100 Convention Center Drive, Las Vegas, NV | **File No:** | TS-235920-LV27 |
| | | **Officer:** | Deb Lee/DL |
| | | **New Loan No:** | |
| | | **Settlement Date:** | |
| | | **Disbursement Date:** | 12/22/2006 |
| | | **Print Date:** | 12/22/2006, 1:28 PM |
| **Buyer:** | Royal Center Associates, LLC; Royal Resort Enterprises, LLC | | |
| **Address:** | 100 Convention Center Drive, Las Vegas, NV | | |
| **Seller:** | HMA Sales, LLC | | |
| **Address:** | | | |

| Charge Description | Seller Charge | Seller Credit |
|---|---|---|
| **Consideration:** | | |
| Total Consideration | | 29,100,000.00 |
| | | |
| **Adjustments:** | | |
| Credit Buyer for Cost of Funds Increase | 278,000.00 | |
| Rothman Settlement Payoff Amount | 1,763,613.33 | |
| Buyer Credit to Seller for Rothman Discount | | 45,000.00 |
| | | |
| **Prorations:** | | |
| taxes 162-09-812-003 second qtr installment 12/22/06 to 12/31/06 @$16327.76/qtr | | 1,789.34 |
| taxes 162-09-812-002 second quarter installme 12/22/06 to 12/31/06 @$30291.50/qtr | | 3,319.62 |
| HOA Seller Subsidy 12/22/06 to 12/31/06 @$200000.00/yr | 4,931.51 | |
| | | |
| **New Loan(s):** | | |
| Lender: HMA Sales, LLC | | |
| New Loan Amount - HMA Sales, LLC | 5,201,442.17 | |
| | | |
| **Payoff Loan(s):** | | |
| Lender: Royal Landholdings LLC | | |
| Principal Balance - Royal Landholdings LLC | 6,151,290.37 | |
| Interest on Payoff Loan 12/22/06 to 12/31/06 @$2190.870000/day - Royal Landholdings LLC | | 21,908.70 |
| Total Penalty - Royal Landholdings LLC | 49,656.00 | |
| Closing Concession - Royal Landholdings LLC | | 190,000.00 |
| Default Costs of Collection - Royal Landholdings LLC | 32,052.10 | |
| Default Interest - Royal Landholdings LLC | 403,120.18 | |
| Lender: Royal Hotel Corporation | | |
| Principal Balance - Royal Hotel Corporation | 1,249,600.00 | |
| Purchaser Replacement Note Credit - Royal Hotel Corporation | | 1,249,600.00 |
| Lender: 2004 Rothman Family Trust | | |
| Principal Balance - 2004 Rothman Family Trust | 560,402.53 | |
| Interest on Payoff Loan 12/15/06 to 12/22/06 @$201.350000/day - 2004 Rothman Family Trust | 1,610.80 | |
| Purchaser Note Offset Credit - 2004 Rothman Family Trust | | 562,013.33 |
| Lender: Salvatore J. Reale Revocable Trust | | |
| Principal Balance - Salvatore J. Reale Revocable Trust | 9,746,717.02 | |
| Interest on Payoff Loan 12/01/06 to 12/22/06 @$4128.820000/day - Salvatore J. Reale Revocable Trust | 90,834.04 | |
| Prepayment Penalty - Salvatore J. Reale Revocable Trust | 6,193.23 | |
| November Interest - Salvatore J. Reale Revocable Trust | 123,864.53 | |
| Lender: Liberty Bell Bank | | |
| Principal Balance - Liberty Bell Bank | 190,000.00 | |
| Lender: Royal Landholdings, LLC | | |
| Principal Balance - Royal Landholdings, LLC | 1,300,000.00 | |
| Interest on Payoff Loan 12/22/06 to 12/31/06 @$541.670000/day - Royal Landholdings, LLC | | 5,416.70 |
| interest in addition 12/01/06 to 12/22/06 @$0.000000/day - Royal Landholdings, LLC | 5,884.56 | |
| Default Penalty - Royal Landholdings, LLC | 65,000.00 | |
| Default Interest - Royal Landholdings, LLC | 97,500.00 | |
| Default Costs of Collection - Royal Landholdings, LLC | 50,155.86 | |
| Lender: Allen H. Abolafia | | |
| Principal Balance - Allen H. Abolafia | 225,000.00 | |
| Interest on Payoff Loan 12/13/06 to 12/22/06 @$50.000000/day - Allen H. Abolafia | 500.00 | |
| Interest to December 12, 2006 - Allen H. Abolafia | 8,650.00 | |
| Lender: Allen H. Abolafia | | |
| Principal Balance - Allen H. Abolafia | 135,000.00 | |
| Interest on Payoff Loan 12/13/06 to 12/22/06 @$30.000000/day - Allen H. Abolafia | 300.00 | |
| Interest through December 12, 2006 - Allen H. Abolafia | 4,400.00 | |

Initials: _____  _____                                        Page 1 of 2

## Seller's Final Settlement Statement

**Settlement Date:**  
**Print Date:** 12/22/2006

**File No:** TS-235920-LV27  
**Officer:** Deb Lee/DL

| Charge Description | Seller Charge | Seller Credit |
|---|---|---|
| **Title/Escrow Charges to:** | | |
| Order Payoff Demand Statement - 4 Loans (5 times) - First American Title Insurance Company | 600.00 | |
| Wire Transfer Service - First American Title Insurance Company | 300.00 | |
| Search and Exam Final Timeshare Reconcilliation - First American Title Insurance Company | 5,000.00 | |
| Order Payoff Demand Statement - First American Title Insurance Company | 750.00 | |
| Policy-CLTA Owner's - First American Title Insurance Company | 19,788.00 | |
| Closing-Escrow Fee - First American Title Insurance Company | 2,500.00 | |
| Documentary Transfer Tax-County - First American Title Insurance Company | 74,205.00 | |
| | | |
| **Disbursements Paid:** | | |
| Payment pursuant to Settlement Agreement to Allen Albolafia | 1,000,000.00 | |
| Termination Fee for Listing/Mrkt Agreement to National Real Estate Holdings, Inc | 575,000.00 | |
| Taxes 162-09-812-003 to Clark County Treasurer | 16,955.75 | |
| Tax Installment: Penalty Due to Clark County Treasurer | 872.91 | |
| Taxes 162-09-812-002 to Clark County Treasurer | 60,582.99 | |
| Tax Installment: Penalty Due to Clark County Treasurer | 4,240.81 | |
| Estimate Additional Penalties to close to Clark County Treasurer | 5,000.00 | |
| HOA Annual Dues - Rothman Intervals to Royal Resorts HOA | 5,159.00 | |
| Transfer Fees to HOA for Rothman Intervals to Royal Resorts HOA | 2,375.00 | |
| Funds held for closing adjustment to Hold funds for adjustment at closing | 50,000.00 | |
| Commission to USA Commercial Real Estate Group | 435,000.00 | |
| Legal Fees - Royal / Milanowski to Goold Patterson Ales & Day | 50,000.00 | |
| Deposit Reimbursement to Emil Khalili | 100,000.00 | |
| Settlement Agreement to Great White Investments | 1,000,000.00 | |
| Legal Fees - Additional to Goold Patterson Ales & Day | 25,000.00 | |
| | | |
| **Totals** | 31,179,047.69 | 31,179,047.69 |

The transaction is closed effective 12:29 P.M December 22, 2006 - This transaction remains subject to post closing adjustments and transfer of funds to the post closing escrow number 235920-A

Debora Lee

Initials: _____  _____