SYLVESTER & POLEDNAK, LTD                         E-FILED    January 25, 2007
JEFFREY R. SYLVESTER, ESQ.
Nevada Bar No. 4396
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada  89128
(702) 952-5200
*Attorneys for USA Commercial Real Estate Group*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY (fka USA CAPITAL)<br>           Debtor. | Case No.  BK-S-06-10725-LBR<br>Case No.  BK-S-06-10726-LBR<br>Case No.  BK-S-06-10727-LBR<br>Case No.  BK-S-06-10728-LBR<br>Case No.  BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC.<br>           Debtor. | Chapter 11<br><br>**Jointly Administered Under<br>Case No. BK-S-06-10725-LBR** |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC.<br>           Debtor. | **USA COMMERCIAL REAL ESTATE GROUP, INC.'S** |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC.<br>           Debtor. | **BRIEF IN SUPPORT OF ITS MOTION TO ENFORCE ORDER GRANTING DEBTOR'S MOTION TO DISTRIBUTE FUNDS** |
| In re:<br>USA SECURITIES, LLC.<br>           Debtor. | |
| Affects:<br>■ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified<br>    Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

     USA COMMERCIAL REAL ESTATE GROUP ("Real Estate Group"), by and through its

counsel, Jeffrey R. Sylvester, Esq., of the law firm of Sylvester & Polednak, Ltd., hereby and

respectfully submits its brief in support of its Motion to Enforce Order Granting Debtors' Motion to Distribute Funds. This supplemental brief is filed at the request of the Court supplementing Real Estate Group's Motion to Enforce Order Granting Debtors' Motion to Distribute Funds filed on September 27, 2006, and in further support of Real Estate Group's Reply to Debtors' Objection filed on November 6, 2006, [Docket No. 1736].

## I.

## FACTUAL BACKGROUND

**The Relationship Between Debtor and Direct Lenders**

1.  April 13, 2006 (the "Petition Date"), the Debtors filed petition for relief under Chapter 11 of the Bankruptcy Code.

2.  Pre-Petition, USACM (the "Debtor") was in the business of underwriting, originating, procuring, funding and servicing commercial loans primarily secured by residential and commercial development.

3.  Real Estate Group is a Direct Lender. The loan servicing agreements between Direct Lenders and Debtor provide that, among other things, the Debtor would collect interest and, if applicable, principal owed by the Direct Borrowers to the Direct Lenders on a monthly basis from each of the Direct Loans, charge a service fee, and distribute the payment to the applicable Direct Lenders on the appropriate Direct Loan.

4.  The Direct Lenders also executed a "Special Power of Attorney" to enable the Debtor to fulfill its obligations under the loan service agreements. Pursuant to the Special Power of Attorney, the Direct Lenders gave the debtor certain limited powers, including the following:

> b. (3) to execute and deliver full and/or partial reconveyances of the deed of trust upon the payment therefore to the undersigned, as required by the deed of trust, which payments to the undersigned as to be made directly to the undersigned, in proportion to their respective interests and not said attorney in fact.

5. The Special Power of Attorney also provides that:

> This Power of Attorney shall not be effected to authorize the use or release of money in which the undersigned owns a beneficial interest for any purpose except for the provision of the services described above relating to the loan described above unless accompanied by written authorization by the undersigned for the use or release of money for the other purpose.

6. Pursuant to the Special Power of Attorney, the Debtor is expressly forbidden from:

   (1) Reconveying collateral securing the direct loans in the absence of simultaneous payment to the direct lenders of their proportionate share of principal;

   (2) Accepting principal payments in the name of debtor rather than direct lender; or

   (3) Converting the direct lenders money from each direct loan for use by debtor for any matters unrelated to debtors service obligations under the direct loan.

   (4)

7. The loan documents entered into by and between the Direct Borrowers and Direct Lenders are consistent with the Special Power of Attorney provisions requiring that payments be made directly to the Direct Lenders and not to the Debtor.

8. Pursuant to the terms and conditions of the loan servicing agreement, and consistent with the loan agreements by and between Direct Borrowers and Direct Lenders, Debtor's bankruptcy estate holds the payments received from Direct Borrowers in trust for the benefit of the Direct Lenders including Real Estate Group.

**The Distribution Motion**

9. Recognizing the Debtor's responsibility to remit payments held in trust for Direct Lenders, on May 8, 2002, Debtor filed a motion requesting permission to temporarily hold funds pending a determination of the proper recipients and proper hold back amounts [Docket No. 173].

10. Post-petition, after completing the accounting investigations and restatements necessary to produce and file the statements as scheduled, the Debtors were then able to prepare and mail to Direct Lenders statements indicating what their position was with respect to each loan that

they had an interest in as of the Petition Date.

11. According to the Debtor, one of the primary goals of the Debtor's post-petition management was to distribute to the Direct Lenders, as promptly as possible after the initial accounting wok and reconstruction of the loan records, a significant portion of the funds held by the Debtor pursuant to the loan servicing agreements.

12. On July 7, 2006, Debtor filed its Motion to Distribute Funds and to Grant Ordinary Course Release and Distribute Proceeds (the "Distribution Motion") [Docket No. 847] seeking permission to distribute funds held in trust to the Direct Lenders, which included Real Estate Group.

13. The Distribution Motion claimed no interest in and to the funds held in trust, save and except sums due and owing pursuant to a loan serving agreement and claims for prepaid interest.

14. On August 24, 2006, this Court entered an order approving the Distribution Motion (the "Distribution Order") [Docket No. 1184], authorizing the Debtors to make the interim distributions as requested in the Distribution Motion.

15. Following the entry of the Distribution Order, the Debtor distributed approximately Sixty-four Million, Three Hundred Thousand Dollars ($64,300,000) representing approved distributions and loan collections through June 2006 to Direct Lenders. At no time did Debtors claim all or any portion of the distributed funds to constitute property of the bankruptcy estate.

16. On August 29, 2006, Debtor filed their modification to the Distribution Motion an proposed procedures for ongoing distributions [Docket No. 1203] in which the Debtors sought to extend and modify the relief requested in the Distribution Motion and to propose specific procedures by which future interim distribution could be made to Direct Lenders on a monthly basis.

17. On October 2, 2006, the Court entered a modified order authorizing interim distributions and holdbacks [Docket No. 1424] setting forth the procedures for future monthly distributions less certain holdbacks. Following the entry of the Order, a second interim distribution

to Direct Lenders in the amount of Sixty-one Million, Three Hundred Thousand Dollars ($61,300,000) from the Debtor's collection account was mailed to the Direct Lenders. The Debtor claimed no portion of the second distribution to constitute property of the bankruptcy estate.

18. Debtors recognize that Real Estate Group is a Direct Lender and concede that the Debtor has collected pre- and post-petition a sum in excess of One Hundred Eighty Thousand Dollars ($180,000) and that sum is held in trust for the benefit of Real Estate Group.

19. Neither the Distribution Motion, nor the modification to the Motion to Distribute Funds and Proposed Procedures for Ongoing Distribution sought to differentiate or treat differently the sums due, owing, and unpaid to Real Estate Group.

**The Enforcement Motion**

20. On September 27, 2006, Real Estate Group filed its Motion to Enforce Order Granting Debtor's Motion to Distribute Funds (the "Enforcement Motion") seeking to compel the Debtor to release funds held in trust to Real Estate Group.

21. On October 20, 2006, Debtor file the Debtor's Objection to the enforcement Motion objecting to Enforcement Motion. The Debtor did not, in its objection, assert any right, title, or interest in and to the funds held in trust for Real Estate Group. Rather, the Debtor's sole argument was that the Debtor had the right to setoff any claims they may hold against funds held for the benefit of Real Estate Group. Significantly, at not time did the Debtor argue that Real Estate Group was not entitled to the release of the funds as the terms and conditions of the Proposed Plan of Reorganization would transmute property held in trust to property of the estate and preclude distribution to Real Estate Group, as a Direct Lender.

22. On November 4, 2006, Real Estate Group filed its Opposition maintaining that Debtor had no right of setoff inasmuch as the requisite mutuality was absent, thereby precluding, under Nevada law, the right of setoff. Real Estate Group further argued that, as there exists no mutuality

of Debt, the Debtor had no basis to withhold the funds or to offset any of the funds it is holding for the benefit of Real Estate Group.

**The Debtor's Plan of Reorganization**

23. On November 6, 2006, Debtor filed its "Second Amended Joint Chapter 11 Plan of Reorganization Dated November 6, 2006" (the "Second Amended Plan") [Docket No. 1741] and on November 7, 2006, Debtor filed a disclosure statement in conjunction with the Second Amended Plan [Docket no. 1755]. The Disclosure Statement filed in support of the Second Amended Plan of Reorganization, articulated the Debtors' compromise with Direct Lenders. The settlement and compromise by and between the Direct Lenders and the estate provided for certain releases. In exchange for the releases, the Direct Lenders acknowledged and agreed that the Prepaid Interest constituted an asset of the Debtor's estate. With some modification, the protocols and procedures established in the Distribution Motion was adopted and continued through plan confirmation.

24. Significantly, the Debtor did not claim, in the compromise with the Direct Lender, that the Plan modified or altered the Direct Lenders' right, title, and interest in and to funds received by the Debtor from the Direct Borrowers such that those funds remained property of the Direct Lender. Further, the Debtor agreed to continue to collect and distribute the loan proceeds pursuant to the loan service agreements then in existence and consistent with the protocols established by the Distribution Motion.

25. Under the terms of the Debtor's Plan of Reorganization, the Direct Lenders receive no distribution, save and except a return of the two percent (2%) Holdback to be refunded to the applicable Direct Lender.

26. Accordingly, under the terms of the Debtor's Confirmed Plan, the Debtor, and subsequent loan servicers, shall continue to remit monies received in trust to the applicable Direct Lenders including, but not limited to, Real Estate Group.

27.     Despite the representation of the Debtor, nothing in the Plan of Reorganization, expressly, and impliedly, put Real Estate Group on notice that it would be deprived of its right to receive the funds held in trust for its benefit. Additionally, nothing in the Debtor's Plan of Reorganization would have put Real Estate Group on notice that the Debtor intended to utilize the funds it was holding in trust for the benefit of creditors of the estate and to the exclusion of Real Estate Group as the beneficiary.

II.

LEGAL ARGUMENT

A.    **The Terms and Conditions of the Debtors' Confirmed Plan to Not Preclude Distribution of Funds Held in Trust to Real Estate Group.**

In its Opposition, Debtor states as follows:

> Specifically, as a result of the Confirmed Plan, no entity may receive any payment or assert any right to payment against <u>assets of USACM</u> except as provided in a plan of confirmation order 'regardless of the filing, lack of filing, allowance, or disallowance of such a claim or equity interest and regardless of whether such an entity has voted to accept the plan.'

<u>See</u> Debtor's Brief in Opposition to USA Commercial Real Estate Group Inc.'s Motion to Enforce Order Granting Debtor's Motion to Distribute Funds at p. 11, ln. 17-20. (Emphasis added.)

The Debtors' primary argument is that Real Estate Group is not entitled to distribution as the terms and conditions of the Confirmed Plan subordinate Real Estate Group's rights to these funds held in trust for its benefit to the payment in full of holders of allowed claims in Classes A(1) through A(6). The Debtors' premise is fundamentally flawed. Succinctly, monies held by the Debtor that it received on behalf of lenders are not property of the bankruptcy estate pursuant to § 541(d) of the Bankruptcy Code. Specifically, § 541(d) of the Bankruptcy Code excludes from the bankruptcy estate the following:

> **(d)** Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property,

-7-

> or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

See 11 U.S.C. § 541 (d).

As the United States Supreme Court held in United States v. Whiting Pools, Inc. 462 U.S. 198, 207 note 10, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983), the Bankruptcy Code "plainly excludes from the bankruptcy estate, property of others held by the debtor in trust at the time of the filing of the bankruptcy petition."

As noted above, the Loan Service Agreements and the Power of Attorney clearly establish that the funds are held in trust fo the benefit of Real Estate Group. Nevada law is also in accord. NRS 645B.175(5) specifically provides that the debtor holds all payments it receives from Direct Borrowers "in trust" for the benefit of the Direct Lenders. To be clear, the Debtor claims no right, title, or interest in and to the funds held on behalf of the Direct Lenders. Nor could they. As the Ninth Circuit held in In re Golden Triangle Capital Inc. 171 B.R. 79 (9th Cir. B.A.P. 1994), funds held by a loan servicing agent received from lending institutions for the purpose of disbursement, minus its fees, to ultimate borrower were not included in property of the estate as the parties never intended to enter into a debtor-creditor relationship and the agent was acting only as a conduit for the funds.[1]

---

[1] Other authority is also in accord. See, e.g. In re Cheqnet Systems Inc., 246 B.R. 873, 877-78 (Bankr. E. Dist. Ark. 2000) (Proceeds or checks which debtor held, prior to its Chapter 7 filing, only as a collection agent with right to retain Seven Dollars ($7.00) on each check as fee, were included "property of the estate" only to the extent of debtor's $7 per check interest); Rine & Rine Auctioneers Inc. v. Douglas County Bank & Trust Company (In re Rine & Rine Auctioneer Inc.) 54 F.3d 854, 857 (8th Cir. 1996) (If property is in the debtors hands as agent, the property or proceeds therefrom is not treated as property of the debtor's bankruptcy estate).

At no stage in these proceedings have the Debtors asserted that the funds held in trust for the benefit of Real Estate Group, as a Direct Lender, constitute property of the bankruptcy estate. Indeed, noticeably absent from the Debtors' supplemental brief is the assertion that the funds it holds are property of the bankruptcy estate or, stated another way, that the funds held in trust are property to be distributed pursuant to the Debtors' Confirmed Plan of Reorganization.

In as much as the funds held by the Debtors in trust for the benefit of the Real Estate Group do not constitute property of the estate, they may not be distributed pursuant to the terms and conditions of the Debtors' Confirmed Plan of Reorganization. Debtors will concede that "[t]he bankruptcy act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." Pearlman v. Reliance Insurance Company, 371 U.S. 132, 83 S. Ct. 232, 9 L. Ed. 2d 190 (1962).

As the funds held in trust were not property of the estate, and as the Debtors are unable to distribute other people's property, the terms and conditions of the Debtors' proposed plan are of no moment. The Debtor must concede that monies collected on behalf of the Direct Lenders do not constitute property of the estate. As set forth above, the Debtor distributed sums in excess of Sixty-five Million Dollars ($65,000,000) directly to the Direct Lenders pursuant to the terms and conditions of this Court's Order granting the Debtors' Motion to Distribute Funds entered August 24, 2006 [Docket No. 1184]. On August 29, 2006, Debtors filed their modification to Motion to Distribute Funds and proposed procedures for ongoing distributions [Docket No. 1203] in which they sought to extend and modify the relief requested and to propose specific procedures by which future distributions could be made to direct lenders and fund members on a monthly basis. On October 2, 2006, the Court entered a modified order authorizing interim distributions and hold backs [Docket No. 1424] setting forth the procedures for future monthly distributions less certain hold

backs. Debtors made a second distribution of approximately Sixty-one Million Dollars ($61,000,000) to the Direct Lenders. The Debtors thereafter entered into a compromise with the Direct Lenders, which compromise essentially adopted and continued the distribution protocols and procedures established by the foregoing motions.

The Debtors' Confirmed Plan of Reorganization does not, in any manner, assert any right, title, or interest in and to the funds held in trust or suggest, expressly, or impliedly, that post-confirmation, the funds in held in trust would be transmuted into property estate and available for distribution to creditors of the estate pursuant to the plan. As set forth in In re Marrs-Winn Company 103 F.3d 584 (7th Cir. 1996):

> It is a well-settled principle that debtors do not own an equitable interest in property that they hold in trust for another, and thus, those funds are not "property of the estate", citing City of Farrell v. Sharon Steel Corp., 14 F.3d 92, 95 (3rd Cir. 1994) (citing Begier v. I.R.S., 496 U.S. 53, 59, 110 S. Ct. 2258, 2263, 110 L. Ed. 2d 46 (1990) and Universal Bonding Insurance Company v. Gittens & Sprinkle Enters, Inc., 960 F.2d 366, 371 (3rd Cir. 1992)). Accordingly, several courts of appeals have held that when a debtor receives money as a trustee pursuant to a statutory, express, or implied trust, the debtor requires only bear legal title to the trust proceeds and maintains no equitable interest in those proceeds. <u>As such, those trust proceeds can only be distributed to trust beneficiaries, and not to the creditors of the bankruptcy estate.</u>

The Debtor will concede that the terms and conditions of the Confirmed Plan of Reorganization do not permit the distribution of funds held in trust for the Direct Lenders to creditors of the bankruptcy estate. Indeed, the compromise with the Direct Lenders, as set forth in the Plan, provide for the continuing payment to the Direct Lenders of monies received by the Debtor pursuant to the Loan Service Agreements. Accordingly, as a matter of law, the Debtor's Plan of Reorganization could not distribute the proceeds held in trust to any of the Creditors of the bankruptcy estate. Rather, the only proper recipient of the funds in trust is the beneficiary of the trust, Real Estate Group. The Plan implicitly recognizes the limitation as the Debtor does not intend to distribute funds held in trust for

Direct Lenders to other creditors of the bankruptcy estate. Moreover, as the trust assets are property of the bankruptcy estate, they are subject to division <u>outside of the distribution</u> scheme found in the Bankruptcy Code. <u>See</u> <u>In re Regional Building Systems, Inc.</u>, 320 F.3d 482 (4th Cir. 2003) *citing* <u>In re West Chester Structures, Inc.</u>, 181 B.R. 730 (Bankr. S.D.N.Y. 1995).

Despite the foregoing, the Debtor argues that Real Estate Group is an insider and that its <u>claim</u> to the funds held in trust is somehow subordinated to the claims of unsecured creditors. With respect to the subordinated claims, the Confirmed Plan provides as follows:

> Class A-7 consists of all claims against USACM asserted by a non-debtor insider. Such claims are subordinated to claims of unsecured creditors, including allowed penalty claims, and as a result, will receive no distribution under the Plan. This Class is impaired and since no payment will be made on these claims, the holder of these claims are deemed to have rejected the Plan.

As noted above, the Debtor did not intend to distribute the funds held in trust pursuant to the terms of the plan. Moreover, and as set forth below, Real Estate Group, and other Direct Lenders similarly situated, do not principally have claims that will share *pro rata* in the bankruptcy estate. Rather, USA Real Estate Group, and other Direct Lenders, are entitled to the return of non-estate assets wrongfully being held by the Debtors. To the extent that the funds held in trust were property of the estate, and further to the extent that those funds were to be distributed to the creditors or the debtors as a whole, the Debtor's position would be plausible. However, inasmuch as the Debtor will concede it maintains no equitable interest in the funds held in trust and that those funds may only be distributed to trust beneficiaries and not to the creditors of the bankruptcy estate, the subordination provision of the Confirmed Plan of Reorganization is simply not relevant.

B. **USA Commercial Real Estate Group is Not Asserting a Bankruptcy Claim Against the Estate for the Withheld Monies.**

Real Estate Group, as a Direct Lender, does not principally have claims that will share *pro rata* in the bankruptcy estate; rather, Real Estate Group as a Direct Lender is presently seeking the return of non-estate assets wrongfully being held by the Debtors. Stated another way, the Debtors do not "owe" Real Estate Group, as a Direct Lender, this money in the sense that the Debtors have a countervailing claim subject to recoupment. The foregoing distinction results in the inescapable conclusion that Real Estate Group's demand for the return of funds held in the collection account is not a claim in the bankruptcy case, asserted against the bankruptcy estate and property of the estate.

The Debtor's argument is predicated, in part, upon the false premise that Real Estate Group has asserted a Proof of Claim relating to the funds held in trust. While it is true that, on November 3, 2006, Real Estate Group filed a Proof of Claim against the Debtor asserting a general unsecured claim in the amount of Forty-six Thousand Eight Hundred Sixty-nine Dollars ($46,869), such claim was not, in any part, related to the funds held in trust. As noted in the proof of claim, a copy of which is attached hereto, Real Estate Group has asserted a general unsecured claim in the amount of Forty-six Thousand Eight Hundred Sixty-nine Dollars( $46,869). The basis for the claim is monies loaned by Real Estate Group to the Debtor. The Proof of Claim simply is unrelated to the funds held in trust by the Debtor and can not serve as a basis for withholding funds.

C. **Debtors Have No Right to Setoff Under State Law.**

In support of its refusal to release the funds held in trust, the Debtor states that it has the right to setoff the funds held in trust against sums allegedly due and owing by Real Estate Group to the Debtor. The Debtor's unsupported analysis misses the mark. As more fully set forth in the Reply

to Debtor's Opposition to the Motion to Enforce Order Granting Motion to Distribute Funds, setoff is inappropriate primarily as a result of the fact that the funds held by the Debtor are held in trust for Real Estate Group. Debtor has not controverted that the funds are held in trust and has failed to distinguish, or even address, the authorities previously cited by Real Estate Group in support of its position that setoff is not permitted.

Addressing the right of creditors to exercise the right of setoff pursuant to 11 U.S.C. § 503, the U.S. Courts of Appeals have held that the debts are mutual if they are between the same parties, standing in the same capacity. See In re Davidovich, 901 F.2d. 1533 (10th Cir. 1990); In re Bevill, Bresler & Schulman Asset Management, 896 F.2d. 54, 59 (3rd Cir. 1990); In re Public Service Company 884 F.2d. 11 (1st Cir. 1989); Braniff Airways, Inc. v. Exxon Company 814 F.2d. 1030 (5th Cir. 1987). "As a general rule, for mutuality to exist, each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." 4 Collier on Bankruptcy ¶ 553.04, at 553.30 (15th ed. 1985). "To be mutual then, the parties must have full and concurrent rights against each other." In re V.N. De Prizio Construction Company 52 B.R. 283, 287 (Bankr. N.D. Ill. 1985).

Mutuality is defeated, therefore, when one of the parties holds the funds in trust for the other and the reciprocal debt stems from a simple debtor-creditor relationship. See In re Bob Richards Chrysler-Plymouth, Corp. 473 F.2d. 262, 265 (9th Cir. 1973) ("The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt. The trust res is not owing to the bankruptcy estate, but rather is owned by it.") See also Cooke County National Bank of the United States 107 US 445, 452 (1882) ("A trustee cannot setoff against the funds held by him in that character his individual demand against the grantor of the trust. Courts of Equity and Courts of Law will not allow such an application of the funds so long as they

are affected by any trust. It would open the door to all sorts of chicanery and fraud. The fund must be relieved from its trust character before it can be treated in any other character.") See also In re Gans & Klein Co. 20 F.2d 124 (9th Cir. Mont. 1927). In Gans & Klein, a bank agreed to use deposits to pay certain creditors. However, the bank thereafter refused to pay such creditors and applied the deposits otherwise by a claimed right of setoff. The Court found that because the deposits were in the name of the debtor, the bank occupied the status of a trustee. The Court held that the bank was not entitled to setoff against the funds because the law is well settled that "the trustee, having custody of the deposit, has no right of setoff against the fund, by reason of the depositor's debt to the depository, which can be exercised to the prejudice of beneficiaries or any one in their right." Id.

Application of the foregoing to the case at bar establishes that the Debtors have no right of setoff against Real Estate Group. Even assuming, *arguendo*, that the Debtors have claims against Real Estate Group, the requirements of mutuality remain lacking.

To reiterate, the purpose behind the doctrine of setoff is to allow mutually indebted parties to apply the debts of the other so that, by mutual reduction, everything but the difference is extinguished. As more fully set forth in the Distribution Motion, the Direct Lenders made loans to the various borrowers directly. The contractual rights, therefore, exist by and between the Debtors and the various borrowers. The Debtor, as the loan servicing agent, is in possession, of the payments due and owing pursuant to the terms and conditions of the agreements by and between the Direct Lenders and the borrowers. It is not the Debtors that are indebted to the Direct Lenders. Rather, the Debtors have possession of property that belongs to the Direct Lenders and are seeking to attach that property in order to secure payment of its alleged, claims against the Real Estate Group. To reiterate, the Debtors claim no right, title, or interest in and to the funds held on behalf of the Direct Lenders. Nor could they. As the Ninth Circuit has held in In re Golden Triangle Capital, Inc., 171 B.R. 79 (9th Cir. BAP 1994), funds held by a loan servicing agent received from lending institution for the

purpose of disbursement, minus its fees, to ultimate borrower were not included in property of the estate as the parties never intended to enter into a debtor-creditor relationship and the agent was acting only as a conduit for the funds. The Debtor has no interest in and to the funds held and the funds do not constitute property estate.

As previously noted, what the Debtors are effectively seeking is a prejudgment writ of attachment. While the Debtors have expressly represented that they will seek a pre-judgment writ of attachment, its representations, without the issuance of a pre-judgment writ of attachment, may not serve as the basis for refusing to distribute funds held in trust.

### III.

### CONCLUSION

In light of the foregoing, Real Estate Group respectfully requests this Court enter an Order compelling the Debtor to immediately release the funds held in trust to Real Estate Group and to afford such other and further relief may deem just and proper.

Dated this 25th day of January, 2007.

SYLVESTER & POLEDNAK, LTD.

By    /s/ Jeffrey R. Sylvester
        Jeffrey R. Sylvester, Esq.
        7371 Prairie Falcon Road, Suite 120
        Las Vegas, Nevada  89128