**ELECTRONICALLY FILED**
**January 25, 2007**

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
ANDREW M. PARLEN
(CA State Bar No. 230429), Members of
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788
Email:      fmerola@stutman.com
            ekarasik@stutman.com
            aparlen@stutman.com

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email:      jshea@sheacarlyon.com
            ccarlyon@sheacarlyon.com
            ssherman@sheacarlyon.com

Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>　　　　　Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>　　　　　Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>　　　　　Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>　　　　　Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>　　　　　Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br>☐ All Debtors<br>☒ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☒ USA First Trust Deed Fund, LLC | Date:  March 1, 2007<br>Time: 9:30 a.m. |

**MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 1141 AND 1142 TO ENFORCE CONFIRMED DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AS IT RELATES TO ALLOCATION OF SALE PROCEEDS (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC)**

407314v5

1            The Official Committee of Equity Security Holders of USA Capital First Trust

2    Deed Fund, LLC (the "FTDF Committee") appointed in the above-captioned bankruptcy cases

3    (the "Chapter 11 Cases"), hereby moves this Court for an order enforcing the "Debtors' Third

4    Amended Joint Chapter 11 Plan of Reorganization (the "Plan")[1] as it relates to the allocation of

5    overbid proceeds between the estates of USA Capital First Trust Deed Fund, LLC ("FTDF") and

6    USA Commercial Mortgage Company ("USACM"), debtors in possession in the Chapter 11

7    Cases, as provide by section IV.E.2.i of the Plan.

8            The Bankruptcy Court confirmed the Plan at hearings held on December 19 and

9    20, 2006 and entered its order confirming the Plan on January 8, 2007.  The Plan approves the

10    sale of certain assets (the "Sale") of both the FTDF and USACM to Compass Partners LLC

11    ("Compass") pursuant to an auction held on December 7, 2007 (the "Auction").  In addition, the

12    Plan provides for the implementation of a series of interrelated compromises, including an

13    agreement between FTDF and USACM that in the event the Auction generated any overbid

14    proceeds, such proceeds would be allocated 85% to the FTDF and 15% to USACM (the

15    "Allocation").  Neither USACM nor the Official Unsecured Creditors' Committee for USA

16    Commercial Mortgage Company (the "USACM Committee") objected to the Plan, and the Plan,

17    including the Allocation, has been confirmed.  Now that the Auction has generated significant

18    overbid proceeds, the USACM Committee no longer wants to be bound by the Allocation

19    contained in the Plan.  The Plan, containing the Allocation, has been voted on by creditors and

20    interest holders and has been confirmed with no objection interposed by either USACM or the

21    USACM Committee.  The time to contest the Allocation has long since past, all parties are

22    bound by the Plan as confirmed, and the Plan, along with the Allocation, must be implemented in

23    accordance with sections 1141 and 1142 of the Bankruptcy Code.

24            Therefore, pursuant to Bankruptcy Code sections 1141 and 1142, and based on

25    the attached Memorandum of Points and Authorities, the Declaration of Matthew Kvarda in

26

27    [1] All of the Debtors in these Chapter 11 Cases are represented by the same counsel in connection
herewith. Therefore, the FTDF Committee and the Official Unsecured Creditors' Committee

28    for USA Commercial Mortgage Company (the "USACM Committee") are the acting parties
in regard to this dispute over the proper allocation of the overbid proceeds.

1  support of this Motion (the "Kvarda Declaration"), and the record in these cases, the FTDF

2  Committee respectfully requests that the Court enter its order directing that the Plan and the

3  Allocation contained therein be implemented as confirmed.

4

5                                                    Respectfully submitted:

6

7  Dated:  January 25, 2007                     /s/ Frank A. Merola

8                                                    Frank A. Merola, Esq.
                                                     Eve H. Karasik, Esq.
9                                                    Andrew M. Parlen, Esq.
                                                     Stutman, Treister & Glatt
10                                                   Professional Corporation
                                                     Counsel to the Official Committee of Equity
11                                                   Security Holders of USA Capital First Trust Deed
                                                     Fund, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    GENERAL BACKGROUND**

1.    On April 13, 2005, USACM, USA Securities, LLC, USA Capital Realty Advisors, LLC , USA Capital Diversified Trust Deed Fund, LLC , and FTDF (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**B.    THE BID PROCEDURES**

2.    On November 8, 2006, the Court entered is order approving bid procedures (the "Bid Procedures"), scheduling the Auction for the sale of certain assets, and appointing SPCP Group, LLC (the "Stalking Horse Bidder") as the lead bidder (the "Bid Procedures Order"). A true and correct copy of the Bid Procedures is attached as Exhibit "1" to the Kvarda Declaration. The Bid Procedures Order contemplated the Sale of certain assets of FTDF and USACM to the Stalking Horse Bidder, subject to overbid at the Auction.

3.    The Bid Procedures were carefully crafted and negotiated such that all overbids and overbid increments would be made to the "Total Asset Purchase Price," which as defined in the purchase agreement with the Stalking Horse Bidder included the <u>combined price</u> for both the FTDF and USACM assets to be sold. Further, the Bid Procedures provided that qualified bidders must purchase "<u>at least the same Property</u> being purchased in the Purchase Agreement." Bid Procedures, Section 3(iv). Thus, the Bid Procedures anticipated that additional assets could be sold at the Auction with the Allocation remaining unchanged despite any increased asset pool. The primary purpose of these negotiated terms was to prevent bidders from attempting to artificially allocate their bid in an effort to gain additional support from one or the other estate.

4.    The issue of requiring that overbids be made on the Total Asset Purchase Price rather than separately on the FTDF and USACM assets, respectively, was of such importance that the Bid Procedures approved by the Court specifically precluded bidders

1   from attempting to allocate the division of the total asset purchase price at the Auction.

2   Footnote 1 of the Bid Procedures states:

3
> To clarify, during the Auction, bidders shall make Increased Bids with
4
> respect to the Total Asset Purchase Price and shall not allocate any
> Overbid Increment, including the Minimum Incremental Overbid, between
5
> the First Trust Deed Property and the Commercial Mortgage Property.
> The allocation of any such Overbid Increment, including the Minimum
6
> Incremental Overbid, shall be made in accordance with the terms of the
> Plan or subsequent order of the Bankruptcy Court.
7

8   Without such a provision the FTDF Committee feared that the USACM Committee might try

9   to maneuver a play for more money than as negotiated between the parties and, accordingly,

10  required that the Bid Procedures provide that overbids must be made on the Total Asset

11  Purchase Price and not separately on the assets of FTDF and USACM. Given the present

12  dispute over the Allocation, it appears that the FTDF Committee's concerns were not

13  unfounded.

14          **C.    THE PLAN OF REORGANIZATION**

15          5.      On November 15, 2006, the Debtors filed the "Debtors' Third Amended

16  Joint Chapter 11 Plan of Reorganization." The Plan provides for the approval of the Sale to

17  the Stalking Horse Bidder, subject to the Auction. The Plan also includes several key

18  compromises, including a compromise between USACM and FTDF (the "Compromise"). An

19  integral component of the Compromise was the agreement between USACM and FTDF as to

20  the allocation of any overbid sale proceeds. Section IV(E)(2)(i) of the Plan provides that:

21
> The Overbid Allocation shall be 85% to FTDF and 15% to USACM for
> any overbid consideration, and any incurred break-up fee or expense
22
> reimbursement obligation (as those terms are used in the Asset Purchase
> Agreement) shall be allocated in the same percentages, except as
23
> otherwise provided in the Stipulation memorializing the agreement
> between USACM and FTDF on the Overbid Allocation filed by the
24
> USACM Committee and the FTDF Committee with the Court, under seal,
> and served on the Debtors as confidential information, no later than ten
25
> (10) days prior to the Auction.[2]
26

27  _____

28  [2]  The FTDF Committee submits that the Stipulation is not applicable to the Allocation as the
    events under which the Stipulation would control did not occur. The Stipulation, entered into
    by the USCAM Committee and the FTDF Committee, was filed on November 27, 2006
    under the seal and approved by the Court on December 14, 2006. Due to requests from

407314v5                                        5

1    6.    Neither USACM nor the USACM Committee objected to any provisions

2  of the Plan or to confirmation of the Plan. In fact, the USACM Committee supported

3  confirmation of the Plan.[3]  The Bankruptcy Court confirmed the Plan after two days of

4  hearing on confirmation and has entered its confirmation order.  Further, the USACM

5  Committee has not appealed the Confirmation Order.  While neither the Sale nor the Plan

6  Effective Date has occurred as of the date this Motion is filed, the parties in interest believe

7  these events are imminent.

8    **D.    THE AUCTION AND SALE**

9    7.    The stalking horse bid at the Auction provided cash consideration of $46

10  million for the FTDF assets being sold and up to approximately $550,000 for the USACM assets

11  being sold.  While an allocation based on asset value would have resulted in values of

12  approximately 99% to FTDF and 1% to USACM, in the spirit of compromise and in good faith,

13  the FTDF Committee agreed to the 85% to FTDF and 15% to USACM provided for in the

14  Allocation in the Plan.

15    8.    Prior to the Auction, Compass submitted an initial overbid under which

16  the proposed purchase price was $48 million for the FTDF assets and $8 million for the USACM

17  assets, subject to adjustment (the "Initial Compass Bid").  Compass elected to purchase

18  additional assets of USACM other than those that were included in the Stalking Horse's bid,

19  including all accrued fees and default interest due to USACM as of the close of the Sale.

20  Compass' successful bid at the Auction resulted in an overbid of approximately $11 million.

21    9.    Although the Plan clearly provides that the agreed upon Allocation would

22  apply to all overbid proceeds, including the approximately $10 million in additional value

23  contained in the Initial Compass Bid, at the Auction, the FTDF Committee, again in good faith,

24  and with the understanding that the Allocation would otherwise apply to the Auction proceeds,

25

26  investors to review the Stipulation, the FTDF Committee agreed to unseal the Stipulation and
   sent the USACM Committee a draft stipulation, but the USACM Committee never responded
27  to the request.

28  [3]  See, e.g., USACM Unsecured Committee's (sic.) Reply Brief in Support of Plan
   Confirmation..., filed with this Court on December 15, 2006 [Docket No. 2136].

1   agreed that USACM would retain the $8 million from the Initial Compass Bid (and the FTDF

2   would retain the additional $2 million from the Initial Compass Bid)[4].  Thus, the Allocation

3   would only apply to all overbid proceeds in excess of the Initial Compass Bid, which totals

4   approximately $9.5 million[5]. Indeed, while the USACM Committee did not consent to this

5   arrangement, the straight percentage allocation on the total $56 million Initial Compass Bid is

6   14% to USACM ($8 million out of $56 million ) and 86% to FTDF ($48 million out of $56

7   million), which uncannily is, but for only an 1% difference, the same as the Allocation in the

8   Plan.

9            10.      The USACM Committee is not entitled to a second bite at the apple.  It

10  cannot expand USACM's rights under the Plan at this stage in the cases.  Further, the USACM

11  Committee cannot now pick and choose to be bound by only those parts of the Compromise that

12  benefit it the most.  Not only is the Allocation a fair allocation of the purchase price, as reflected

13  by the value allocation of the Initial Compass Overbid, but the USACM Committee is bound by

14  the terms of the Plan with respect to the Allocation contained therein.  The FTDF Committee

15  thus requests that the Court order USACM to enforce the express terms of the Plan and the

16  Allocation contained therein pursuant to Bankruptcy Code sections 1141 and 1142.

17                                              **II.**

18                                         **ARGUMENT**

19            11.      Pursuant to Bankruptcy Code section 1141(a):

20            the provisions of a confirmed plan bind the debtor . . . any entity acquiring
             property under the plan, and any creditor, equity security holder . . .
21            whether or not the claim or interest of such creditor [or] equity security
             holder . . . is impaired under the plan and whether or not such creditor [or]
22            equity security holder . . . has accepted the plan.

23  11 U.S.C. § 1141(a).

24

25

26  _____

    [4]  Application of the Allocation to the increased bid amount would have resulted in $6.8
27  million in additional sale proceeds being paid to FTDF, rather than USACM.

28  [5]  The remainder of Auction overbid is approximately $9.5 million, after deduction of the $1.5
    million Break-Up Fee and Expense Reimbursement payable to the Stalking Horse Bidder.

1    12.    "A proposed plan of arrangement when confirmed by the court constitutes

2    a solemn engagement binding upon all the parties, including the creditors . . . ." *Gerson v. Booth*

3    *Lumber Co.*, 230 F.2d 631, 634 (9th Cir. 1955).

4    > The effect of confirmation under the plain language of § 1141(a) is to bind
     > all parties to the terms of the plan. It binds not only creditors, but debtors

5    > as well. . . . [A] confirmed plan is a binding contract and is res judicata as
     > to all issues decided. Numerous courts have held that <u>once a plan is</u>

6    > <u>confirmed, a debtor or creditor may not assert rights that are inconsistent</u>
     > <u>with its provisions.</u>

7

8    *Laing v. Johnson (In re Laing)*, No. 92-C-977-B, 1993 U.S. Dist. LEXIS 21207, at *6-7 (N.D.

9    Okla. Oct. 25, 1993) (citations omitted, emphasis added). This section, in effect, codifies the

10   principles of res judicata, judicial estoppel, collateral estoppel, and waiver. *See id.* at *9.

11   > In other words, a confirmed plan precludes parties from raising claims or
     > issues that could have or should have been raised before confirmation but

12   > were not. . . . [Q]uestions concerning the treatment of any creditor under
     > the plan . . . or disposition of property, may no longer be raised after plan

13   > confirmation. These issues must be raised in the context of objections to
     > confirmation of the plan.

14

15   15 COLLIER ON BANKRUPTCY (15th ed. rev.) ¶ 1141.02[2], [4].

16

17   13.    Bankruptcy Code section 1142 provides that

18   > (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or
     > regulation relating to financial condition, the debtor and any entity

19   > organized or to be organized for the purpose of carrying out the plan shall
     > carry out the plan and shall comply with any orders of the court.

20

21   > (b) The court may direct the debtor and any other necessary party to
     > execute or deliver or to join in the execution or delivery of any instrument

22   > required to effect a transfer of property dealt with by a confirmed plan,
     > and to perform any other act, including the satisfaction of any lien, that is

23   > necessary for the consummation of the plan.

24   11 U.S.C. § 1142. *See also U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass*

25   *Corp.)*, 301 F.3d 296, 305-06 (5th Cir. 2002) (Section 1142 "authorizes post-confirmation

26   bankruptcy orders necessary for the consummation of the plan. . . . [I]t empowers the bankruptcy

27   court to enforce the unperformed terms of a confirmed plan.") (quotations omitted); 15 COLLIER

28   ON BANKRUPTCY (15th ed. rev.) ¶ 1142.03[1] ("The scope of section 1142(b) is considerably

407314v5                                          8

1   broader than merely ministerial acts, such as termination or creation of liens. Acting pursuant to

2   section 1142(b), the court may issue any order necessary for the implementation of the plan.").

3          14.    The USACM Committee is attempting to wrest additional funds, to which

4   USACM is not entitled under the Plan, from the FTDF estate. By this Motion, the FTDF

5   Committee respectfully requests that the Court direct USACM, pursuant to Bankruptcy Code

6   section 1142(b), to enforce the terms of the confirmed Plan, including the Allocation.

7          15.    Notwithstanding that it failed to object to the Allocation or the

8   Compromise in connection with confirmation of the Plan, which both are now binding on

9   USACM, the USACM Committee has taken the position that USACM is not so bound. By

10  insisting that USACM is entitled to receive more than 15% of the sale proceeds, the USACM

11  Committee is essentially attempting to modify the terms of the Plan. However, only the plan

12  proponent or the reorganized debtor may seek modification of a confirmed plan. *See* 11 U.S.C.

13  § 1127.

14         16.    Further, where the parties intended to reserve disputes for determination at

15  a later date, they expressly so provided in the Plan. *See, e.g.*, Plan at 54 (reserving the

16  determination of the allowable amount of the FTDF unsecured claim against USACM for a later

17  date pursuant to the USACM/FTDF Compromise). The Allocation, by contrast, was

18  unequivocally set forth under the Plan, as confirmed, with no reservation of rights or deference

19  to a later determination. The matter has been resolved, and is an integral component of the

20  Compromise.

21         17.    The USACM Committee is making a grab for more than its fair share,

22  contrary to the terms of the confirmed Plan, at the expense of the FTDF estate. The parties

23  agreed to the Allocation; subsequent to the Auction the Allocation was approved as a component

24  of the confirmed Plan voted on by creditors and equity interest holders of both the USACM and

25  FTDF estates; and the Allocation, in fact, fairly reflects the relative valuation of the sale assets,

26  as indicated by the allocation set forth in the Initial Compass Overbid. The USACM Committee

27  cannot unilaterally modify the Plan, simply because it wishes it had negotiated a greater recovery

28  for its constituency. It has no authority to do so, and such a result would be wholly inequitable.

1

2

3

4

5      **WHEREFORE,** the FTDF Committee respectfully requests that the Court enter its order

6   directing that the Plan, and Allocation contained therein, be implemented as confirmed.

7

8   Respectfully submitted this 25th day of January, 2007.

9

    _/s/__Frank A. Merola_

10

11  FRANK A. MEROLA (CA State Bar No. 136934),
    EVE H. KARASIK (CA State Bar No. 155356), and

12  ANDREW M. PARLEN (CA State Bar No. 230429), Members of
    STUTMAN, TREISTER & GLATT, P.C.

13  1901 Avenue of the Stars, 12th Floor
    Los Angeles, CA  90067

14  Telephone:  (310) 228-5600
    COUNSEL FOR THE

15  OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
    OF USA CAPITAL FIRST TRUST DEED FUND, LLC

16

17  and

18  CANDACE C. CARLYON
    SHEA & CARLYON, LTD.

19  228 S. Fourth Street, First Floor
    Las Vegas, NV  89101

20  Telephone:  (702) 471-7432
    COUNSEL FOR THE

21  OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
    OF USA CAPITAL FIRST TRUST DEED FUND, LLC

22

23

24

25

26

27

28

407314v5                                    10