ELECTRONICALLY FILED
January 25, 2007

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
ANDREW M. PARLEN
(CA State Bar No. 230429),
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788
Email:    fmerola@stutman.com
          ekarasik@stutman.com
          aparlen@stutman.com
Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email:    jshea@sheacarlyon.com
          ccarlyon@sheacarlyon.com
          ssherman@sheacarlyon.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br><br>☐ All Debtors<br>☒ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☒ USA First Trust Deed Fund, LLC | Date: January 24, 2007<br>Time: 3:30 p.m. |

**DECLARATION OF MATTHEW KVARDA IN SUPPORT OF MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 1141 AND 1142 TO ENFORCE CONFIRMED DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AS IT RELATES TO ALLOCATION OF SALE PROCEEDS (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC)**

408152v2

I, Matthew Kvarda, declare as follows:

1. I am a managing director of Alvarez & Marsal, LLC, financial and real estate advisors to the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee"). I submit this Declaration in support of the "Motion For Order Pursuant To Bankruptcy Code Sections 1141 And 1142 To Enforce Confirmed Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization As It Relates To Allocation Of Sale Proceeds" (the "Motion")[1] filed by the FTDF Committee.

2. The following facts are personally known to me and/or based on my personal observations. If called to testify thereto, I could and would do so, under oath.

3. In connection with the above-captioned cases (the "Chapter 11 Cases"), I and the members of the engagement team have worked closely with the members of the FTDF Committee and its other professionals regarding the development of a workable exit strategy which maximized the potential return to investors in USA Capital First Trust Deed Fund, LLC (the "FTDF"). These efforts include assisting in the formulation of the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" (the "Plan").

4. The Bid Procedures (a true and correct copy of which is attached hereto as Exhibit "1") approved by the Court pursuant to an order entered November 8, 2006 were carefully crafted and negotiated such that all overbids and overbid increments would be made to the "Total Asset Purchase Price," which as defined in the purchase agreement with SPCP Group, LLC (the "Stalking Horse Bidder") included the <u>combined price</u> for both the FTDF and USACM assets to be sold. Further, the Bid Procedures provided that qualified bidders must purchase "<u>at least the same Property</u> being purchased in the Purchase Agreement." Bid Procedures, Section 3(iv). Thus, the Bid Procedures anticipated that additional assets could be sold at the Auction with the Allocation remaining unchanged despite any increased asset pool. The primary purpose of these negotiated terms was to prevent bidders from attempting to artificially allocate their bid in an effort to gain additional support from one or the other estate.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Motion.

408152v2                                    2

5.      The issue of requiring that overbids be made on the Total Asset Purchase Price rather than separately on the FTDF and USA Commercial Mortgage Company ("USACM") assets, respectively, was of such importance that the Bid Procedures approved by the Court specifically precluded bidders from attempting to allocate the division of the total asset purchase price at the Auction. Footnote 1 of the Bid Procedures states:

> To clarify, during the Auction, bidders shall make Increased Bids with respect to the Total Asset Purchase Price and shall not allocate any Overbid Increment, including the Minimum Incremental Overbid, between the First Trust Deed Property and the Commercial Mortgage Property. The allocation of any such Overbid Increment, including the Minimum Incremental Overbid, shall be made in accordance with the terms of the Plan or subsequent order of the Bankruptcy Court.

Without such a provision the FTDF Committee feared that the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company (the "USACM Committee") might try to maneuver a play for more money then as negotiated between the parties and, accordingly, required that the Bid Procedures provide that overbids must be made on the Total Asset Purchase Price and not separately on the assets of FTDF and USACM. Given the present dispute over the Allocation, it appears that the FTDF Committee's concerns were not unfounded.

6.      On November 15, 2006, the Debtors filed the Plan. The Plan provides for the approval of the Sale to the Stalking Horse Bidder, subject to the Auction. The Plan also includes several key compromises, including a compromise between USACM and FTDF (the "Compromise"). An integral component of the Compromise was the agreement between USACM and FTDF as to the allocation of any overbid sale proceeds. Section IV(E)(2)(i) of the Plan provides that:

> The Overbid Allocation shall be 85% to FTDF and 15% to USACM for any overbid consideration, and any incurred break-up fee or expense reimbursement obligation (as those terms are used in the Asset Purchase Agreement) shall be allocated in the same percentages, except as otherwise provided in the Stipulation memorializing the agreement between USACM and FTDF on the Overbid Allocation filed by the USACM Committee and the FTDF Committee with the Court, under seal, and served on the Debtors as confidential information, no later than ten (10) days prior to the Auction.

408152v2

3

7. While neither the Sale nor the Plan Effective Date has occurred as of the date this Motion is filed, I believe these events are imminent.

8. The stalking horse bid at the Auction provided cash consideration of $46 million for the FTDF assets being sold and up to approximately $550,000 for the USACM assets being sold. While an allocation based on asset value would have resulted in values of approximately 99% to FTDF and 1% to USACM, in the spirit of compromise and in good faith, the FTDF Committee agreed to the 85% to FTDF and 15% to USACM provided for in the Allocation in the Plan.

9. Prior to the Auction, Compass submitted an initial overbid under which the proposed purchase price was $48 million for the FTDF assets and $8 million for the USACM assets, subject to adjustment (the "Initial Compass Bid"). Compass elected to purchase additional assets of USACM other than those that were included in the Stalking Horse's bid, including all accrued fees and default interest due to USACM as of the close of the Sale. Compass' successful bid at the Auction resulted in an overbid of approximately $11 million.

10. Although the Plan clearly provides that the agreed upon Allocation would apply to all overbid proceeds, including the approximately $10 million in additional value contained in the Initial Compass Bid, at the Auction, the FTDF Committee, again in good faith, and with the understanding that the Allocation would otherwise apply to the Auction proceeds, agreed that USACM would retain the $8 million from the Initial Compass Bid (and the FTDF would retain the additional $2 million from the Initial Compass Bid). Application of the Allocation to the increased bid amount would have resulted in $6.8 million in additional sale proceeds being paid to FTDF, rather than USACM, which is a significant transfer of value already made voluntarily by the FTDF.

11. While the USACM Committee did not consent to this arrangement, the straight percentage allocation on the total $56 million Initial Compass Bid is 14% to USACM ($8 million out of $56 million ) and 86% to FTDF ($48 million out of $56 million), which is, but for only an 1% difference, the same as the Allocation in the Plan.

12. The Allocation dispute only applies to all overbid proceeds in excess of

408152v2                                     4

the Initial Compass Bid. The overbid proceeds at issue are approximately $9.5 million, after deduction of the $1.5 million Break-Up Fee and Expense Reimbursement payable to the Stalking Horse Bidder.

I declare under penalty of perjury that the foregoing is true and correct.

_____
MATTHEW KVARDA

Alvarez & Marsal, LLC
Financial and real estate advisor to the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC

408152v2

5