NILE LEATHAM, ESQ.
Nevada Bar No. 002838
JOSEPH G. WENT, ESQ.
Nevada Bar No. 009220
**KOLESAR & LEATHAM, CHTD.**
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102-3202
Telephone No. (702) 362-7800
Facsimile No. (702) 362-9472
E-Mail:   nleatham@klnevada.com
          jwent@klnevada.com

Attorneys for Interested Party
**WESTERN UNITED LIFE ASSURANCE COMPANY and CROSS DEVELOPMENT / MONTGOMERY, L.P.**

*ELECTRONICALLY FILED ON*
*January 29, 2007*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| In re: | CASE NO. BK-S-06-10725 LBR |
| | CASE NO. BK-S-06-10726 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, fka USA Capital, | CASE NO. BK-S-06-10727 LBR |
| | CASE NO. BK-S-06-10728 LBR |
| Debtor. | CASE NO. BK-S-06-10729 LBR |
| In re: | |
| | Chapter 11 |
| USA CAPITAL REALTY ADVISORS, LLC, | |
| Debtor. | |
| In re: | Jointly Administered Under |
| | Case No. BK-S-06-10725 LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED, LLC, | |
| Debtor. | |
| In re: | **OPPOSITION TO MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY TO PREVENT FORECLOSURE BY WESTERN UNITED LIFE ASSURANCE COMPANY** |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | |
| Debtor. | |
| In re: | |
| USA SECURITIES, LLC, | |
| Debtor. | |
| Affects: | |
| ☐ All Debtors | **Hearing Date:**   01-31-07 |
| ☒ USA Commercial Mortgage Co. | |
| ☐ USA Capital Realty Advisors, LLC | **Hearing Time:**   9:30 a.m. |
| ☐ USA Capital Diversified Trust Deed, LLC | |
| ☒ USA Capital First Trust Deed Fund, LLC | |
| ☒ USA Securities, LLC | |

1    **Western United Life Assurance Company**, a Washington corporation, in Receivership for Purposes of Rehabilitation ("**WULA**"), and Cross Development / Montgomery, L.P., a Washington Limited Partnership[1] ("**Cross**"), file this opposition to the motion for an order enforcing the automatic stay and other relief (the "**Motion**") filed by Debtors USA Commercial Mortgage Company ("**USACM**"), USA Capital First Trust Deed Fund, LLC ("**FTDF**") and USA Capital Diversified Trust Deed Fund, LLC ("**DTDF**," and collectively with USACM and FTDF, the "**Debtors**").

## FACTUAL AND PROCEDURAL BACKGROUND

1. In accordance with a secured financing transaction (the "**Senior Note**"), WULA has a first lien on a 99,352 sq. ft. 4-story office building and a 38,142 sq. ft. 2-story bunker located on approximately fifty acres of land just outside the town of Montgomery, Montgomery County, Texas (the "**Montgomery County Property**") and all rents, proceeds, and profits that are generated by the Montgomery County Property. In early August, 2006, WULA "posted" (*i.e.*, provided the requisite notice to the owner) the Montgomery County Property for nonjudicial foreclosure in accordance with Texas law.

2. The owner of the Montgomery County Property, West Hills Park Joint Venture ("**West Hills**") filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 17, 2006, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Houston Bankruptcy Court**").[2] As a result of the West Hills bankruptcy filing, the automatic stay prevented WULA from conducting its planned nonjudicial foreclosure on September 5, 2006.

3. On November 16, 2006, WULA filed a Motion to Modify the Automatic Stay Based on "Single Asset Real Estate" Designation (the "**Motion to Modify Stay**") in the Houston Bankruptcy Court. In its Motion to Modify Stay, WULA sought relief from the automatic stay to

---

[1] Cross has contracted to purchase the WULA note.

[2] The West Hills bankruptcy case is Bankruptcy Case No. 06-33996-H3-11.

1 allow it to conduct a nonjudicial foreclosure on the Montgomery County Property. On January 12, 2007, the Houston Bankruptcy Court entered an order (a) modifying the stay to allow WULA to post the Montgomery County Property for nonjudicial foreclosure immediately, and (b) setting WULA's Motion to Modify Stay for final hearing on January 31, 2007 at 2:00 p.m. CST to consider the remaining relief requested (*i.e.*, whether WULA will be permitted to conduct the nonjudicial foreclosure on the noticed date, February 6, 2007).

4. Notwithstanding the relief granted by the Houston Bankruptcy Court, and the fact that the remainder of the relief requested in WULA's Motion to Modify Stay is set for hearing in the Houston Bankruptcy Court on January 31, 2007, Debtors now seek an order from this Court enforcing the automatic stay, or issuance of a Section 105 injunction, to prevent WULA's intended February 6, 2007, foreclosure on the Montgomery County Property because such a foreclosure "would foreclose the interests of FTGF and DTDF."

5. As the Debtors concede, FTDF and DTDF collectively hold at most slightly more than a 10% undivided fractional interest in a **second lien** on the Montgomery County Property. That interest is shared with over 100 other "investors" in the second lien note. If indeed FTGF and DTDF hold such fractional interests, this Court should still not stay the foreclosure on the Montgomery County Property by WULA, because the automatic stay cannot be used by a second lienholder to prevent a lawful foreclosure by a first lienholder.

6. Furthermore, the Debtors are now party to an Asset Purchase Agreement (the "**APA**"), whereby the Debtors have agreed to sell certain of their assets, including their fractional interest, if any, in the note secured by a junior lien on the Montgomery County Property. On information and belief, the parties to the APA are scheduled to close the transaction by the end of January, 2007. Obviously, once the APA is closed, the **purchaser** of the Debtors' interests, if any, in the Montgomery County Property cannot seek the protection afforded by the automatic stay in effect in this bankruptcy case. Thus, even if the Motion has any merit – and WULA contends that it does not – it will likely soon become moot as a result of the closing of the APA.

. . .

. . .

## ARGUMENT AND AUTHORITIES

**A.    Nonjudicial Foreclosure on the Montgomery County Property Will Not Violate the Automatic Stay in Effect in this Case**

7.    The Debtors contend that because a lien interest is "property of the estate" as contemplated by 11 U.S.C. § 541, any foreclosure proceeding that has even a fractional effect on such lien interest would violate the automatic stay. WULA does not contest the holding of *In re Cogar*, 210 B.R. 803, 809 (B.A.P. 9th Cir. 1997), that a lien interest is property of the estate. To the extent the Debtors indeed hold fractional interests in a junior lien on the Montgomery County Property, that <u>junior interest</u> is property of the Debtors' estate. However, the Debtors would have this Court leap from that basic premise – that a lien interest is "property of the estate" – to a conclusion that is simply not supported by any binding authority: that the holder of a subordinate property interest is entitled to the same protection of the automatic stay as a property <u>owner</u>. Indeed, the only Circuit Court level authority on this point holds that the holder of a subordinate interest is <u>not</u> entitled to such protection. *In re Holiday Lodge, Inc.*, 300 F.2d 516, 519 (7th Cir. 1962); *Farmers Bank v. March (In re Lloyd C. March)*, 140 B.R. 387, 389-390 (E.D. Va. 1992), *aff'd*, 998 F.2d 498 (4th Cir. 1993).

8.    <u>Collier on Bankruptcy</u> similarly notes as follows: **"There is no provision in section 362(a) dealing with the stay of the enforcement of a senior lien on property which, while not property of the estate, is subject to a junior encumbrance which secures the payment of an obligation which is property of the estate."** *Collier on Bankruptcy*, ¶ 362.03[5], 362-21 (Matthew Bender 15th Ed. Revised 2003). Collier's suggests that if a debtor in bankruptcy, as a secured creditor, wants to prevent a senior secured creditor from foreclosing on real property, the debtor would have to take some affirmative action and obtain an injunction pursuant to 11 U.S.C. 105. *Id*.

9.    As the Debtors admit, there is no controlling authority on point; the closest to a "persuasive" opinion on point is the vacated *In re Bibo, Inc.*, 200 B.R. 348, 352 (B.A.P. 9th Cir. 1996), *opinion vacated upon dismissal as moot*, 139 F.3d 659 (9th Cir. 1998). Thus, the great weight of authority (Fourth and Seventh Circuits) supports the conclusion that, if WULA obtains

the relief it seeks from the Houston Bankruptcy Court, the automatic stay in effect in the Debtors' cases does <u>not</u> prevent WULA from conducting a nonjudicial foreclosure on the Montgomery County Property.

10. The sheer impracticality of Debtors' position is demonstrated by the instant case. Approximately 90% of the subordinated note in question is owned by over 100 other entities. If, for example, 20 of that number are currently the subject of voluntary or involuntary bankruptcy cases, is WULA expected to investigate the facts across the nation and seek modification of the stay in all 20 bankruptcy cases - - involving debtors who owe no "adequate protection" to WULA, nor any debt to WULA? Public policy would argue strongly against any such unworkable burden being placed on a senior secured creditor after having received a modification of the stay by the bankruptcy court with jurisdiction over the entirety of the real estate property in question (the Houston Bankruptcy Court in this example) permitting foreclosure by the first lienholder.

11. Furthermore, the second lien holders in the West Hills case are not being deprived of any right they currently possess under Texas law with respect to their junior lien position. They are permitted to bid at foreclosure like anyone else. This is their only legal right under these circumstances. Debtors' suggestion that WULA's proposed nonjudicial foreclosure is somehow indirectly "taking control" over property of the bankruptcy estates of Debtors is highly strained and is not demonstrated by the actual facts.

12. **PROCEDURAL OBJECTION.** Debtor's Motion alternatively requests imposition of injunctive relief pursuant to **Section 105** of the Bankruptcy Code if the Court should find that the automatic stay (Section 362) in the bankruptcy case of a junior lienholder does not hinder a lawful foreclosure conducted by a senior lienholder. Injunctive relief against non-debtors, even pursuant to Section 105, can be awarded only in the context of an adversary proceeding before the Court -- with all the formalities and notice attendant therewith. **Bankruptcy Rule 7001(7)**. *Collier on Bankruptcy*, ¶ 7001.08, 7001-20.1 – 21 (Matthew Bender 15th Ed. Revised 2003)

. . .

      **B.**    **Impending Sale of Debtors' Assets Will Likely Render Debtors' Motion Moot**

13. Again, even if the Debtors do hold a fractional second lien interest in the Montgomery County Property, WULA contends that it would not violate the automatic stay in the Debtors' cases for WULA to conduct a nonjudicial foreclosure on the Montgomery County Property. One thing is certain, however – once the purchase contemplated by the APA has closed and the purchaser holds the subject fractional second lien interest, if any, in the Montgomery County Property, the automatic stay in effect in the Debtors' cases will have absolutely no application. If the Court should determine to enter an order either enjoining WULA from foreclosing on the Montgomery County Property or declaring that the automatic stays in the Debtors' cases enjoin such a foreclosure, WULA respectfully requests that any such order specifically state that (a) any prohibition from foreclosing on the Montgomery County Property will automatically be lifted without further order from the Court upon the closing of the sale of the Debtors' assets as contemplated by the APA (the "Closing"), and (b) the Debtors are required to provide notice to WULA of the Closing as soon as practicable, but no later than 24 hours after the Closing.

## CONCLUSION

14. If the Houston Bankruptcy Court grants relief from the stay in the West Hills bankruptcy to allow WULA to foreclose on the Montgomery County Property, the weight of authority dictates the conclusion that the automatic stays in the Debtors' cases would not prevent WULA from foreclosing on that property.

15. WULA and Cross object to Debtors' Motion and urge the Court to deny the relief requested therein, finding that the automatic stay in effect in the Debtors' bankruptcy cases does not stay the foreclosure actions taken by a senior lienholder on the Property. However, in the event that the Court determines to enter an order enjoining foreclosure on the Montgomery County Property, it is respectfully requested that any such order specifically state that (a) any prohibition from foreclosing on the Montgomery County Property will automatically be lifted without further order from the Court upon a sale of the Debtors' interest in the subject note, and

1  (b) the Debtors are required to provide notice of such Closing to the senior lienholder on the
2  Property as soon as practicable, but no later than 24 hours after the Closing of any such sale.
3  Dated this 29th day of January, 2007.

**KOLESAR & LEATHAM, CHTD**.

By: ___/s/ Nile Leatham___
NILE LEATHAM, ESQ.
Nevada Bar No. 002838
JOSEPH G. WENT, ESQ.
Nevada Bar No. 009220
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102-3202

Attorneys for Interested Parties
**WESTERN UNITED LIFE ASSURANCE COMPANY, A WASHINGTON CORPORATION, IN RECEIVERSHIP FOR PURPOSES OF REHABILITATION and CROSS DEVELOPMENT / MONTGOMERY, L. P.**