**E-FILED on January 29, 2007**

| | |
|---|---|
| Annette W. Jarvis, Utah Bar No. 1649 | Lenard E. Schwartzer, NV Bar No. 0399 |
| RAY QUINNEY & NEBEKER P.C. | Jeanette E. McPherson, NV Bar No. 0399 |
| 36 South State Street, Suite 1400 | Schwartzer & McPherson Law Firm |
| P.O. Box 45385 | 2850 South Jones Boulevard, Suite 1 |
| Salt Lake City, Utah 84145-0385 | Las Vegas, Nevada 89146-5308 |
| Telephone: (801) 532-1500 | Telephone: (702) 228-7590 |
| Facsimile: (801) 532-7543 | Facsimile: (702) 892-0122 |
| Email: ajarvis@rqn.com | E-Mail: bkfilings@s-mlaw.com |

Attorneys for Plaintiffs

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                              Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                              Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                              Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                              Debtor. | **Adversary No. 06 - 01256-LBR**<br><br>**FIRST AMENDED COMPLAINT UNDER 11 U.S.C. § 544 and NRS §§ 112.180, 112.190 and 112.220** |
| In re:<br>USA SECURITIES, LLC,<br>                                              Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

|   |   |
|---|---|
| 1 | USA COMMERCIAL MORTGAGE COMPANY, a chapter 11 debtor, and USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, a chapter 11 debtor, |
| 2 |   |
| 3 | Plaintiffs, |
| 4 | vs. |
| 5 | HMA SALES, LLC, a Nevada limited liability company; SALVATORE J. REALE, an individual; GREAT WHITE INVESTMENT NV INC., a Nevada corporation;  USA COMMERCIAL REAL ESTATE GROUP, INC., a Nevada corporation;  ALLEN ABOLAFIA, an individual;  BOB ALUM, an individual; FRANK J. BELMONTE, JR., an individual; JEAN JACQUES BERTHELOT, an individual; GARY BRENNAN, an individual; PAUL BRUGGEMANS, an individual; WILLIAM F. ERRINGTON, an individual; HARV GASTALDI, an individual; VINCENT GREEN, an individual; JAYEM FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership;  JACQUES M. MASSA, an individual and general partner of Jayem Family Limited Partnership;  AIMEE KEARNS, an individual; KLAUS KOPF, an individual; BERNARD KRAUS, an individual; ARLENE KRAUS, an individual; JOSEPH B. LAFAYETTE, an individual; GEORGES LAFORGE, an individual; JASON LANDESS, ESQ., an individual; SVEN LEVIN, an individual; R. G. T. MILLER (Trustee), an individual acting in the capacity of trustee; R& N REAL ESTATE INVESTMENTS LIMITED PARTNERSHIP, a Nevada limited partnership;  ROBERT JOHN VERCHOTA, an individual and general partner of R&N Real Estate Investments Limited Partnership;  DENNIS F. SIPIORSKI, an individual;  DAVID STIBOR, an individual;  KENNETH TRECHT, an individual; STEVE WALTERS, an individual;  and RUSSELL J. ZUARDO, an individual. |

Defendants.

26  Plaintiffs USA Commercial Mortgage Company ("USACM") and USA Capital
27  Diversified Trust Deed Fund, LLC ("DTDF" and, together with USACM, "Plaintiffs") hereby
28  complain against defendants and allege as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. § 544.

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H) and (O).

3. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

4. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

## GENERAL ALLEGATIONS

### The Parties

5. USACM is a Nevada corporation and is a debtor and debtor in possession in the above-referenced case. USACM is in the business of arranging and servicing loans.

6. Plaintiff DTDF is a Nevada limited liability company, and is a debtor and debtor in possession in the above-referenced case. DTDF is a fund created in 2000 by Thomas Hantges ("Hantges"), Joseph Milanowski ("Milanowski) and/or USACM for the purpose of aggregating investment funds of investors to be used to invest in real property secured loans funded in whole or in part by DTDF.

7. Defendant HMA Sales, LLC ("HMA") is a Nevada limited liability company doing business within this judicial district. Upon information and belief, HMA is owned by USA Investment Partners, LLC ("USAIP") and Allen Abolafia ("Abolafia"). USAIP is the majority owner and manager of HMA, and exercises sole control and management over the affairs of HMA.

8. Defendant Salvatore J. Reale ("Reale") is an individual residing within this judicial district.

9. Upon information and belief, Defendant National Real Estate Holdings, Inc. ("National Real Estate") is a company incorporated in California and doing business within this judicial district.

10. Defendant USA Commercial Real Estate Group, Inc. ("USA Commercial Real Estate") is a Nevada corporation doing business within this judicial district. The principals of USA Commercial Real Estate are Milanowski and Hantges.

11. Defendant Abolafia is an individual with an ownership interest in HMA who both resides and does business within this judicial district.

12. Defendant Great White Investment NV Inc. ("Great White") is a Nevada corporation doing business within this judicial district.

13. Defendant Craig Orrock ("Orrock") is an individual who resides within this judicial district and is the president of Great White.

14. Upon information and belief, Defendants Bob Alum, Frank J. Belmonte, Jr., Jean Jacques Berthelot, Gary Brennan, Paul Bruggemans, William F. Errington, Harv Gastaldi, Vincent Green, Jayem Family Limited Partnership, Jacques M. Massa as the general partner of Jayem Family Limited Partnership, Aimee Kearns, Klaus Kopf, Bernard Kraus, Arlene Kraus, Joseph B. Lafayette, Georges LaForge, Jason Landess, Esq., Sven Levin, R. G. T. Miller (Trustee), R& N Real Estate Investments Limited Partnership, Robert John Verchota as the general partner of R& N Real Estate Investments Limited Partnership, Dennis F. Sipiorski, David Stibor, Kenneth Trecht, Steve Walters, Russell J. Zuardo (collectively, "Mediate Transferees"), are individuals or entities that received a portion of the proceeds from the sale of the Royal Hotel (as described below).

**The Obligations of HMA to USACM and DTDF**

15. Until the chapter 11 filings by USACM and DTDF in April, 2006, Hantges and Milanowski exercised dominion and control over both USACM and DTDF.

16. At all relevant times, DTDF and USACM were parties to a loan servicing agreement whereby USACM was to arrange for and service loans for DTDF.

17. Beginning in or about 2002, Milanowski and Hantges caused DTDF to transfer substantial sums of money to HMA. Specifically, DTDF's books and records reflect that $4,633,000 was transferred directly from DTDF to HMA. Upon information and belief from DTDF's records and other records in the possession of the Debtors (including some of Investment Partners) it appears that an additional approximately $9,000,000 flowed through various entities owned and/or controlled by Milanowski and Hantges, and thus, was indirectly transferred to HMA.

18. Notwithstanding the transfer of millions of dollars from DTDF to HMA, there are no

promissory notes from HMA in favor of DTDF. Rather, it appears these advances were accounted for through an entity known as 10-90, Inc. and were booked by DTDF/USACM/Milanowski/Hantges as a loan made by DTDF to 10-90, Inc. (the "10-90 Loan"). Eventually, DTDF, USAIP and 10-90, Inc. agreed that 10-90, Inc. would be removed from the transaction as a borrower of DTDF and a lender to USAIP, and thereafter, USAIP became the direct borrower to DTDF in the 10-90 Loan.

19. The structure of the 10-90 Loan was such that USAIP was to grant to DTDF a lien upon and security interest in the assets acquired and funded with, and investments made with, advances on the 10-90 Loan. However, USAIP did not grant to DTDF a lien upon or security interest in the Royal Hotel or a lien upon or security interest in USAIP's interests in HMA at the time the advances were made by DTDF to USAIP and invested by USAIP in the Royal Hotel.

20. Upon information and belief, the 10-90 Loan was a mere fiction and subterfuge employed by Hantges and Milanowski utilized as part of a scheme whereby they utilized the monies of the DTDF investors for their own speculative real estate development activities, rather than funding non-insider loans secured by first deeds of trust on real property as promised in the prospectus distributed to DTDF investors and potential investors.

21. After the commencement of the DTDF and USACM chapter 11 cases, DTDF and USACM, through Thomas J. Allison of Mesirow Interim Financial Management ("Allison"), negotiated with Milanowski on behalf of USAIP, for a promissory note in the amount of $58,374,918.81 to evidence certain obligations appearing on the books of USACM owing by USAIP (the "$58 Million USAIP Note") and for a security agreement to secure various obligations owing by USAIP to USACM and DTDF (the "USAIP Security Agreement"). The $58 Million USAIP Note and the USAIP Security Agreement are both dated as of May 31, 2006, and were approved by order of this Court entered on the docket in the USACM case on July 24, 2006.

22. The obligations secured under the USAIP Security Agreement include the $58 Million USAIP Note and the 10-90 Loan.

23. One of the assets pledged by USAIP under the USAIP Security Agreement was USAIP's member interest in HMA.

1  24. Both USACM and DTDF have a direct interest in the Royal Hotel Proceeds.

## The Reale Lien On The Royal Hotel

25. At the time that Milanowski was negotiating on behalf of USAIP to pledge USAIP's LLC member interest in HMA to USACM and DTDF in the Spring of 2006, Milanowski was taking other actions that adversely and materially affected the value of such pledge. On or about May 5, 2006, Milanowski, on behalf of HMA, granted a lien upon the Royal Hotel by executing that certain Deed of Trust, Assignment of Rents Security Agreement and Fixture Filing in favor of Salvatore J. Reale, as the Trustee of the Salvatore J. Reale Revocable Living Trust Dated November 15, 2004 which was recorded with the Clark County Recorder on May 5, 2006, as document number 20060505-0003127 (the "Reale Deed of Trust" granted in favor of "Reale").

26. The Reale Deed of Trust provides that the obligation secured is

> "Promissory Note dated December 1, 2004, as amended by Thomas A. Hantges and Joseph D. Milanowski (collectively, the "Borrower"), which presently has an unpaid balance of Nine Million Eight Hundred Thousand Dollars ($9,800,000.00) plus interest . . . (the "Reale Note").

Thus, the Reale Note is the personal obligation of Milanowski and Hantges and is not the obligation of HMA.

27. Upon information and belief, HMA received no, or inadequate consideration for assuming the liability of the Reale Note by pledging the Royal Hotel as collateral therefor in the Reale Deed of Trust.

## The Sale Of The Royal Hotel and the Distribution of the Sale Proceeds

28. Until December 22, 2006, HMA was the owner of the Royal Hotel, a property located at 99 Convention Center Drive, Las Vegas, California ("Royal Hotel").

29. On December 22, 2006, HMA completed the sale of the Royal Hotel, and received approximately $24 million in cash and a promissory note or notes for the balance of approximately $5 million (the "Seller Financing Notes") for a total purchase price of approximately $29 million (collectively, the "Royal Hotel Proceeds").

30. Reale received $9,967,609 from the Royal Hotel Proceeds.

31. National Real Estate received $575,000 from the Royal Hotel Proceeds for the termination

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  of an agreement to list for sale ("Listing Agreement") the Royal Hotel in Nevada.

2      32. USA Commercial Real Estate received a $435,000 commission from the Royal Hotel

3  Proceeds for the sale of the Royal Hotel.

4      33. Abolafia received $1,000,000 from the Royal Hotel Proceeds in exchange for his equity

5  interest in HMA.

6      34. Great White, collectively received $1,000,000 from the Hotel Royal Proceeds.

7      35. Under the direction of Orrock, Great White distributed to the Mediate Transferees portions

8  of the Royal Hotel Proceeds from the $1,000,000 originally received by Great White.

9      36. HMA received $5,201,442.17 from the Royal Hotel Proceeds in the form of the Seller

10  Financing Notes in favor of HMA from the purchaser of the Royal Hotel.

11      37. HMA receive no, or inadequate consideration for the transfer of the Royal Hotel Proceeds

12  to Defendants.

### FIRST CLAIM FOR RELIEF

### (Equitable Lien – Against all Defendants)

15      38. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 37 above as if fully

16  set forth herein.

17      39. USAIP was contractually bound to provide DTDF with a lien upon and security interest in

18  the assets acquired and funded with, and investments funded with, advances on the 10-90 Loan,

19  including the Royal Hotel.

20      40. However, no lien or security interest was provided to USACM or DTDF notwithstanding

21  the millions of dollars that were advanced by DTDF to HMA.

22      41. USACM and DTDF are entitled to an equitable lien upon the Royal Hotel Proceeds,

23  including, but not limited to, the Seller Financing Notes.

### SECOND CLAIM FOR RELIEF

### (Constructive Trust – against all Defendants)

26      42. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 41 above as if fully

27  set forth herein.

28      43. USAIP, HMA, Hantges and Milanowski, among others, engaged in a scheme to defraud

DTDF and the investors in DTDF by taking and utilizing the monies of DTDF to fund their own speculative real estate investments, contrary to the promises of the DTDF prospectus that informed the DTDF investors that DTDF monies would be used to fund non-insider loans secured by first deeds of trust served by real estate. The 10-90 Loan was a subterfuge for these direct withdrawals of monies from DTDF to fund insider real estate speculations, including the Royal Hotel, and funds advanced under the fiction of the 10-90 Loan were utilized to fund the purchase, operations and improvements to the Royal Hotel.

44. The Defendants provided no, or inadequate consideration for their receipt of the Royal Hotel Proceeds, and as a result, they would be unjustly enriched if they were permitted to retain the Royal Hotel Proceeds.

45. Based on the foregoing, all assets and investments purchased with and funded with DTDF monies should be imposed with a constructive trust in favor of DTDF, including the Royal Hotel Proceeds, and any assets or investments acquired with those proceeds.

### THIRD CLAIM FOR RELIEF

**(Avoidance of Actual Intent Fraudulent Transfer – Against Defendant Reale)**

46. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47. Title to the Royal Hotel was encumbered with the Reale Deed of Trust.

48. After the completion of the sale of the Royal Hotel, Reale received payment in sum of $9,967,609 from the Royal Hotel Proceeds in settlement of the Reale Deed of Trust.

49. The transfer accomplished through the security interest granted Reale pursuant to the Deed of Trust was made with the actual intent to hinder, delay or defraud creditors, including USACM and DTDF.

### FOURTH CLAIM FOR RELIEF

**(Avoidance of Constructive Fraudulent Transfer – Against Defendant Reale)**

50. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 49 above as if fully set forth herein.

51. HMA received less than reasonably equivalent value in return for the pledge of the Royal

Hotel to Reale in the Reale Deed of Trust, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**FIFTH CLAIM FOR RELIEF**

**(Avoidance of Actual Intent Fraudulent Transfer – Against Defendant National Real Estate)**

52. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 51 above as if fully set forth herein.

53. The transfer of $575,000 to the National Real Estate by HMA was made with the actual intent to hinder, delay or defraud HMA creditors, including USACM and DTDF.

**SIXTH CLAIM FOR RELIEF**

**(Avoidance of Constructive Fraudulent Transfer – Against Defendant National Real Estate)**

54. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55. HMA received less than reasonably equivalent value in return for the $575,000 payment made to National Real Estate, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**SEVENTH CLAIM FOR RELIEF**

**(Avoidance of Actual Intent Fraudulent Transfer – against Defendant USA Commercial Real Estate)**

56. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 55 above as if fully set forth herein.

57. After the completion of the sale of the Royal Hotel, USA Commercial Real Estate, received $435,000 in payments from the Royal Hotel Proceeds.

58. The transfer accomplished by the payment to the USA Commercial Real Estate Group was made with the actual intent to hinder, delay or defraud HMA creditors, including USACM and DTDF.

### EIGHTH CLAIM FOR RELIEF

**(Avoidance of Construction Fraudulent Transfer – Against Defendant USA Commercial Real Estate)**

59. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 58 above as if fully set forth herein.

60. HMA received less than reasonably equivalent value in return for the $435,000 payment made to USA Commercial Real Estate, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

### NINTH CLAIM FOR RELIEF

**(Avoidance of Constructive Fraudulent Transfer – against Defendant Abolafia)**

61. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 60 above as if fully set forth herein.

62. Abolafia received $1,000,000 in payments from the Royal Hotel Proceeds.

63. HMA received less than reasonably equivalent value in return for the $1,000,000 payment made to Abolafia, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such

transfer.

## TENTH CLAIM FOR RELIEF

### (Illegal Dividend Or Distribution – against Defendant Abolafia)

64. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 63 above as if fully set forth herein.

65. Abolafia received $1,000,000 in exchange for or in payment of his interest in HMA.

66. Under NRS 78.288, section 2, no distribution may be made where the (a) the corporation would not be able to pay its debts as they become due in the usual course of business; and (b) the corporation's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the corporation were to be dissolved at the time of distribution, to satisfy the preferential rights upon dissolution of stockholders whose preferential rights are superior to those receiving the distribution.

67. HMA is not able to pay its debts that are due to Plaintiffs and other creditors.

68. At the time it paid Abolafia the $1,000,000 from the Royal Hotel Proceeds, HMA's assets were insufficient to cover its liabilities.

## ELEVENTH CLAIM FOR RELIEF

### (Avoidance of Constructive Fraudulent Transfer – Against Defendant Great White)

69. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 68 above as if fully set forth herein.

70. HMA received less than reasonably equivalent value in return for the $1,000,000 payment made to Great White, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

/ / /

## TWELFTH CLAIM FOR RELIEF

### (Recovery of Constructive Fraudulent Transfer Pursuant to NRS 112.220 – Against The Mediate Transferees)

71. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 70 above as if fully set forth herein.

72. The $1,000,000 Great White received constitutes a fraudulent transfer under NRS §§ 112.180 or 112.190.

73. Great White transferred portions of the $1,000,000 they received from the Royal Hotel Proceeds to the Mediate Transferees.

74. The Mediate Transferees received these payments without providing value to HMA, with knowledge that the monies had been received by Great White Investments as a fraudulent transfer in that Great White Investments had no claims against HMA, and the Mediate Transferees received such payments with knowledge that the payments could be avoided as a fraudulent transfer as a result. The Mediate Transferees therefore did not receive such payments in good faith.

## THIRTEENTH CLAIM FOR RELIEF

### (Conversion – Against All Defendants)

75. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 74 above as if fully set forth herein.

76. USACM and DTDF are creditors of HMA and have a direct interest in the Royal Hotel Proceeds.

77. Defendants have exercised and continue to exercise dominion and control over a certain portion of the Royal Hotel Proceeds.

78. Defendants exercise of dominion and control over certain portions of the Royal Hotel Proceeds is inconsistent with the rights of USACM and DTDF.

79. As a direct and proximate result of Defendant's conversion of certain portions of the Royal Hotel Proceeds, USACM and DTDF have been damaged.

/ / /

## FOURTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment – Against All Defendants)

80. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 79 above as if fully set forth herein.

81. USACM's and DTDF's rights to the Royal Hotel Proceeds is superior to the rights of the Defendants who received certain portions of the Royal Hotel Proceeds.

82. A benefit was conferred upon the Defendants when certain portions of the Royal Hotel Proceeds were paid over to them.

83. Under the circumstances it would be inequitable for Defendants to retain the benefit of the Royal Hotel Proceeds they received, and the Defendants would be unjustly enriched if they are permitted to retain those proceeds.

## FIFTEENTH CLAIM FOR RELIEF

### (Setoff/Recoupment – Against USA Commercial Real Estate)

84. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 83 above as if fully set forth herein.

85. USACM is currently holding $180,656.53 for USA Commercial Real Estate that USACM, as the servicer, collected on loans in which USA Commercial Real Estate was a direct lender.

86. USA Commercial Real Estate received a $435,000 commission from the Royal Hotel Proceeds for which it gave HMA no or inadequate consideration.

87. USACM and DTDF should be entitled to setoff or recoup the $180,656.33 currently being held for USA Commercial Real Estate against the $435,000 received by USA Commercial Real Estate from the Royal Hotel Proceeds.

## SIXTEENTH CLAIM FOR RELIEF

### (Injunction – Against all Defendants)

88. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 87 above as if fully set forth herein.

89. As a result of the foregoing, defendants and anyone acting in concert with defendants, including without limitation, USAIP, should be enjoined from taking any further action to dispose

1  of or further disburse the Royal Hotel Proceeds, or any interest therein, unless and until the claims
2  of USACM and DTDF, as alleged above, are paid or otherwise adequately provided for. HMA
3  and such other entities should further be enjoined from causing HMA to incur any further
4  obligations to others as to which HMA is not presently obligated.

5  90. Without such an injunction, USACM and DTDF would suffer irreparable injury in that,
6  among other things, USACM and DTDF would need to commence further litigation to pursue
7  recovery of monies paid out to third parties from the Royal Hotel Proceeds, and the eventual
8  recovery in such actions is uncertain.

## SEVENTEENTH CLAIM FOR RELIEF

### (Appointment of a Receiver)

91. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 90 above as if fully set forth herein.

92. In order to preserve the status quo with respect to the Royal Hotel Proceeds, and in order to avoid the dissipation and/or loss of value represented by the Royal Hotel Proceeds, USACM and DTDF are entitled to the appointment of a receiver for HMA.

## PRAYER FOR RELIEF

WHEREFORE, USACM and DTDF pray as follows:

A. For a judgment that the title to the Royal Hotel Proceeds are encumbered by an equitable lien in favor of DTDF.

B. For a judgment that title to the Royal Hotel Proceeds are imbued with a constructive trust in favor of DTDF.

C. For a judgment that the Reale Deed of Trust constitutes a fraudulent transfer and that the Royal Hotel Proceeds received by Reale be avoided and paid over to Plaintiffs.

D. For a money judgment against Reale for the amount of the Royal Hotel Proceeds received by Reale, together with interests, fees and costs allowable at law.

E. For a money judgment against HMA for the amount of monies had and received from DTDF together with interest, fees and costs allowed at law.

F. For a money judgment against Great White, jointly and severally, for $1,000,000,

together with interests, fees and costs allowable at law.

G. For a money judgment against each of the Mediate Transferees for the amount of the Royal Hotel Proceeds received by each of them, together with interests, fees and costs allowable at law.

H. For a money judgment against Abolafia in the amount of $1,000,000, together with interests, fees and costs allowable at law.

I. For a money judgment against USA Commercial Real Estate in the amount of $435,000, together with interests, fees and costs allowable at law.

J. For a money judgment against National Real Estate in the amount of $575,000, together with interests, fees and costs allowable at law.

K. For a judgment enjoining defendants or any of them from acting in concert with others from disposing of the Royal Hotel Proceeds or any interest therein, or from further obligating HMA for the obligations of others.

L. For a judgment appointing a receiver for HMA.

M. For a Writ of Attachment and such other prejudgment extraordinary relief as Plaintiffs may be entitled to at law against defendants for the amounts prayed for herein.

N. For such further relief that this Court deems to be just and proper.

Dated: January 29, 2007

        RAY QUINNEY & NEBEKER P.C.
        and SCHWARTZER & MCPHERSON LAW FIRM

        By: /s/ Lenard E. Schwartzer, Esq.
        LENARD E. SCHWARTZER, ESQ.
        JEANETTE E. MCPHERSON, ESQ.
        ANNETTE W. JARVIS, ESQ.
        STEVEN STRONG, ESQ.
        *Counsel for Plaintiffs*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122