# Exhibit  C

# Exhibit  C

**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**

$5,201,442.17

December __, 2006
Las Vegas, Nevada

    For value received, **ROYAL RESORT ENTERPRISES, LLC**, and **ROYAL CENTER ASSOCIATES, LLC**, whose address is c/o Golden West Properties, 9255 Sunset Blvd., Suite 320, West Hollywood, California 90069 (collectively, "Maker"), hereby promises to pay to the order of **HMA SALES, LLC**, a Nevada limited liability company, whose address is 4525 Sandhill Road, Suite 114, Las Vegas, NV89121 its successors and assigns ("Holder") the principal sum of Five Million, Two Hundred One Thousand, Four Hundred Forty Two Thousand 17/100.

    The outstanding principal balance of this Note shall bear interest at the rate of eight percent (8.0%) per annum (the "Note Rate").

    This Note shall mature on the ninetieth (90th) day after the date of this Note at which time Maker shall pay to Holder all accrued but unpaid interest and the entire principal balance of this Note.

    The Maker of this Note is granted the right to prepay the outstanding principal, in whole or in part, without penalty, at any time.

    In the event Maker fails to pay any installment of interest by the 5th calendar day after the day when due, then Maker agrees to pay Holder a late charge equal to five percent (5%) of the overdue interest payment, to reimburse Holder for the various costs and damages of late payment. Maker agrees and acknowledges that the 5% late charge is a fair and reasonable estimate of Holder's costs and damages and not a penalty or forfeiture. If (a) any amount payable by Maker under this Note or the Deed of Trust (hereinafter defined) is not paid within ten (10) calendar days after written notice that such amount is due, and/or (b) upon any default of this Note and/or the Deed of Trust that is not cured within any applicable cure or grace period (in no event longer than twenty (20) days unless a longer cure period is expressly set forth) then, and in such event, Maker agrees that the outstanding principal balance hereof shall thereafter bear interest at the Note Rate plus five percent (5%) per annum, compounded monthly (the "Default Rate"), and, in addition, Holder may at Holder's election accelerate this Note in which event the entire principal balance hereof and all accrued but unpaid interest shall all be due and payable in full.

    Principal and interest are payable in lawful money of the United States of America, to Holder at the address set forth above. Any notices to Maker or Holder shall be in writing and shall be delivered by certified mail, return receipt requested, to the applicable address set forth above; provided, however, that either Maker or Holder may change their address by written notice to the other, effective upon receipt.

If any legal action is instituted by Holder to collect this Note or to foreclose on or enforce the Deed of Trust which secures this Note, Maker shall pay all actual and reasonable attorneys' fees and costs incurred by Holder, together with interest thereon at the Default Rate.

Maker and all endorsers and guarantors hereof waive presentment for payment, demand, notice of nonpayment, notice of protest, and any and all other notices or demands whatsoever, except as expressly provided in this Note or the Deed of Trust. Acceptance of any late payment does not waive Holder's right to receive payments timely. Acceptance of any partial payment does not waive Holder's right to full payment. No inscription, limitation or condition placed upon any check or other instrument of payment tendered by Maker to Holder shall be binding or effective against Holder nor effective to alter any terms of this Note or any other agreements between Maker and Holder, and Holder may process and collect such payment as if such inscription, limitation or condition had not been placed upon the check or instrument of payment.

No delay by Holder in enforcing any provision of this Note shall constitute a waiver of such provision. No waiver by Holder of any provision or default of this Note shall be effective unless in writing, and no such waiver shall operate as a waiver of any subsequent default or other provision of this Note.

This Note shall be governed by the laws of the State of Nevada.

This Note is secured by a deed of trust, of even date herewith, encumbering certain real property in Clark County, Nevada (the "Deed of Trust"). In the event of any inconsistency or ambiguity between the terms of this Note and the terms of said Deed of Trust, the terms of this Note shall govern. Any default by Maker of the Deed of Trust or any other material agreement between Maker and Holder pertaining to the property encumbered by the Deed of Trust shall be a default of this Note by Maker. Except as expressly set forth in the partial release provisions of the Deed of Trust, upon any sale or transfer by Maker of all or any part of the real property secured by the Deed of Trust, or any interest therein, or upon the hypothecation of all or any part of the real property secured by the Deed of Trust or any interest therein, including without limitation the recording of any junior encumbrance thereon, such sale, transfer or hypothecation shall be a default hereunder, and the entire principal balance hereof and all accrued interest thereon shall at the option of Holder be accelerated and be due and payable in full.

2

In the event of any default of this Note, after giving any notice required by this Note or the Deed of Trust, Holder shall have all rights and remedies available at law or in equity, including without limitation the right to immediately accelerate the indebtedness evidenced hereby without notice to Maker or any guarantors.

**MAKER:**

**ROYAL RESORT ENTERPRISES, LLC, a** Nevada limited liability company

By: _____
Print Name: David Taban
Its: Manager


**ROYAL CENTER ASSOCIATES, LLC, a** Nevada limited liability company

By: _____
Print Name: Michael Pashaie
Its: Manager

3

APN Numbers: 162-09-812-002 and 162-09-812-003 

WHEN RECORDED RETURN TO:

Goold Patterson Ales & Day
Attn: Barry S. Goold
4496 South Pecos Road
Las Vegas, NV 89121

20061222-0003206

Fee: $31.00
N/C Fee: $25.00

12/22/2006                     13:13:03
T20060224669
Requestor:
FIRST AMERICAN TITLE INSURANCE COMPANY

Charles Harvey              JBR
Clark County Recorder    Pgs: 18

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS

THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS ("Deed of Trust") is made as of the 22nd day of December, 2006, by ROYAL RESORT ENTERPRISES, LLC, a Nevada limited liability company, and ROYAL CENTER ASSOCIATES, LLC, a Nevada limited liability company, as tenants in common, each as to a 50% undivided interest, as trustor (collectively, "Trustor"), to FIRST AMERICAN TITLE COMPANY OF NEVADA, as trustee ("Trustee"), for the benefit of HMA SALES, LLC, a Nevada limited liability company, as beneficiary "Beneficiary").

**I.    GRANTS AND OBLIGATIONS SECURED.**

   **A.    Grants.**

      1.01.   Trustor hereby irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Beneficiary, with power of sale and right of entry and possession, all right, title and interest of Trustor in and to that certain real property situated in the County of Clark, State of Nevada, described in **Exhibit "A"** attached hereto and made a part hereof (the "Land"), together with all right, title and interest of Trustor therein and in and to:

         (a)    All buildings and other improvements now or hereafter located on the Land, all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant), pumps and pumping stations used in connection therewith and all shares of stock evidencing the same, all machinery, equipment, appliances, furnishings, inventory, fixtures, and other property used or useable in connection with the Land and the improvements thereon, including, but not limited to, all storage tanks and pipelines, all gas, electric, heating, cooling, air conditioning, refrigeration and plumbing fixtures and equipment, which have been or may hereafter be attached or affixed in any manner to any building now or hereafter on the Land (the "Improvements").

         (b)    All the rights, rights of way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances, now or hereafter in any way appertaining and belonging to or used in connection with the Land and/or the Improvements, and

Z:\P&T Roy\Deed of Trust ($7 500 000) 12-14-06.doc                                    Page 1 of 18

any part thereof or as a means of access thereto, including, but not limited to, any claim at law or in equity, and any after acquired, title and reversion in or to each and every part of all streets, roads, highways and alleys adjacent to and adjoining the same.

(c)    All rentals, earnings, income, accounts, accounts receivable, deposits, security deposits, receipts, royalties, revenues, other income, issues and profits which, after the date hereof, and while any portion of the indebtedness secured hereby remains unpaid, may accrue from the Land and/or the Improvements and any part thereof, subject, however, to the right, power and authority conferred upon Trustor to collect and apply such proceeds set forth herein.

(d)    All deposits made with or other security given to utility companies by Trustor with respect to the Land and/or the Improvements, and all advance payments of insurance premiums made by Trustor with respect thereto and claims or demands relating to insurance. Any of the foregoing arising or acquired by Trustor after the date hereof, the Land, the Improvements, and the other property described in subparagraphs (a), (b), (c), and (d) of this Section 1.01 are collectively defined hereinafter as the "Property".

1.02.    Trustor hereby grants a security interest to Beneficiary in all of the following described property, whether now owned or hereafter acquired, and any and all proceeds thereof (sometimes all of such being collectively referred to herein as the "Collateral"):

(a)    All existing and future goods and tangible personal property located on the Property or wherever located now owned or hereafter acquired by Trustor and used in connection with the operation or occupancy of the Property or in construction of the Improvements, including, but not limited to, all appliances, furniture and furnishings, fittings, materials, supplies, equipment and fixtures, and all building material, supplies, and equipment now or hereafter delivered to the Property and installed or used or intended to be installed or used therein; and all renewals or replacements thereof or articles in substitution thereof;

(b)    All general intangibles relating to design, development, operation, management and use of the Property and construction of the Improvements, including, but not limited to, (i) all names under which or by which the Property or the Improvements may at any time be operated or known, all rights to carry on business under any such names or any variant thereof, and all goodwill in any way relating to the Property, (ii) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction of the Improvements, (iii) all permits, licenses, approvals, consents, authorizations, franchises and agreements issued or obtained in connection with the construction of the Improvements, or the use, occupancy or operation of the Property, (iv) all materials prepared for filing or filed with any governmental agency, and (v) all of Trustor's rights under any contract in connection with the development, design, use, operation, management and construction of the Property;

(c)    All construction, service, engineering, consulting, leasing, architectural and other similar contracts of any nature (including, without limitation, those of any general contractors and subcontractors), as such may be modified, amended or supplemented from time to time, concerning the design, construction, management, operation, occupancy, use, and/or disposition of any portion of or all of the Property;

(d)    All architectural drawings, plans, specification, soil tests, feasibility studies, appraisals, engineering reports and similar materials relating to any portion of or all of the Property;

(e)    All payment and performance bonds or guarantees and any and all modifications and extensions thereof relating to the Property;

(f)    All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of any portion of or all of the Property;

(g)    All proceeds and claims arising on account of any damage to or taking of the Property or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Collateral or Property;

(h)    All policies of, and proceeds resulting from, insurance relating to the Property or any of the above Collateral, and any and all riders, amendments, extensions, renewals, supplements or extensions thereof, and all proceeds thereof;

(i)    All proceeds, whether cash, promissory notes, contract rights, or otherwise, of the sale or other disposition of all or any part of the estate of Trustor in and to the Property now or hereafter existing thereon.

The personal property in which Beneficiary has a security interest includes goods which are or shall become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the Nevada Uniform Commercial Code. This filing is to be recorded in the real estate records of the county in which the Property is located. In that regard, the following information is provided

| | |
|---|---|
| Name of Debtor: | Royal Resort Enterprises, LLC, a Nevada limited liability company, and Royal Center Associates, LLC, a Nevada limited liability company |
| Address of Debtor: | See paragraph 5.10 |
| Name of Secured Party: | HMA Sales, LLC, a Nevada limited liability company |
| Address of Secured Party: | See paragraph 5.10 |

B.  Obligations Secured.

1.03.  This Deed of Trust is given for the purpose of securing, in such order of priority as Beneficiary may determine:

(a)  Payment of the indebtedness evidenced by a Promissory Note of even date herewith and any renewals, extensions, modifications or amendments thereof, in the principal amount of Five Million, Two Hundred One Thousand, Four Hundred Forty Two Dollars 17/100 ($5,201,442.17) (the "Note"), executed by Trustor and payable to Beneficiary pursuant to the Purchase and Sale Agreement dated May 22, 2006, as amended by that certain First Amendment to Purchase and Sale Agreement dated December 14, 2006, by and between them a(as amended, the "Purchase Agreement"), which Note is made a part hereof by this reference.

(b)  Performance of each agreement of Trustor contained in any other agreement given by Trustor to Beneficiary which is for the purpose of further securing any indebtedness or obligation secured hereby.

## II.  COVENANTS OF TRUSTOR.

A.  Condition and Operation of the Property.

2.01.  Trustor agrees (i) to complete in good and workmanlike manner any construction or restoration which may hereafter be performed on the Property by Trustor or with Trustor's consent, (ii) not to permit any mechanics' or materialmen's liens against the Property, (iii) to perform each of Trustor's obligations set forth in the Note and/or this Deed of Trust, and (iv) not to commit, permit or allow to exist, any violation of any law, ordinance, rule, regulation or order of any governmental authority having jurisdiction over the Property or of any matter of record affecting the Property, if such violation impairs or threatens to impair or diminish the value of the Collateral.

2.02.  The following covenants, Nos. 1, 2 (100% of replacement cost), 3, 4 (12%), 5, 6, 7 (reasonable), 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

B.  Insurance.

2.03.  Trustor shall, at all times, provide, maintain and keep in force all of the following:

(a)  A policy or policies of commercial general liability insurance with respect to the Property, including but not limited to owners and contractors liability, contractual liability, personal injury, completed operations, broad form property damage, insuring Trustor and Beneficiary, as their interests may appear, against loss for any occurrence resulting in bodily injury to or the death of one or more persons and consequential damages arising therefrom and property damage involving injury or destruction of the tangible property of third parties in the amount of no less than $2,000,000.00, combined single limit. All policies shall be primary, shall be written on an "occurrence" basis, and shall contain Beneficiary as an additional insured thereunder.

(b)    A policy or policies of fire insurance insuring the Property against loss or damage on an "All-Risk" basis and against such other risks or hazards as Beneficiary may from time to time reasonably designate with 100% replacement cost coverage. Beneficiary shall be named as a Loss Payee under such policy or policies.  Notwithstanding the foregoing, Trustor shall not be obligated to provide Beneficiary with any casualty insurance to the extent it would duplicate coverage afforded Beneficiary by any timeshare owners' association.

(c)    If the Property is in the 100 year flood plain, flood insurance upon the Property in the event that such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation.  Beneficiary shall reserve the right to require that Trustor secure flood insurance in excess of the amount provided by the Flood Disaster Protection Act of 1973, if such insurance is commercially available, up to the amount provided in Paragraph 2.04(a) hereof.

(d)    Statutory workers' compensation insurance (including employer's liability in amounts required by the State Industrial Insurance System and, if applicable, insurance covering claims of workers against employers arising under Federal law) covering Trustor and employees of Trustor, in such form as is reasonably satisfactory to Beneficiary and in amounts not less than any minimum amounts established by law.

(e)    Such other insurance, and in such amounts, as may from time to time be reasonably required by Beneficiary.  Such insurance policies shall be updated at Beneficiary's request, but not less frequently than annually during the Loan term.

2.04.  All policies required by Paragraph 2.03 shall (i) be issued by companies duly qualified and licensed to do such business in the State of Nevada and approved by Beneficiary, (ii) shall be subject to the reasonable approval of Beneficiary as to the insuring companies, amount, content and forms of policies and expiration dates, (iii) contain a Non-Contributory Standard Mortgagee Clause and the Lender's Loss Payable Endorsement (Form 438 BFU NS), or their equivalents, in favor of Beneficiary, (iv) provide that the proceeds thereof shall be payable to Beneficiary (to the extent of its interest) (v) provide that it cannot be modified or cancelled, to the extent that such modification or cancellation substantially affects the Property, or Beneficiary's interest thereon, without thirty days' prior written notice to Beneficiary, and (vi) be primary and non-contributory with any other insurance of Beneficiary.

2.05.  Trustor shall furnish to Beneficiary a certificate of each policy required under Paragraph 2.03 and, at least thirty (30) days prior to expiration of any such policy, proof of issuance of a policy continuing in force the coverage provided by the expiring policy.

2.06.  After the happening of any casualty insured against under Paragraph 2.03, Trustor shall give prompt written notice thereof to Beneficiary.

2.07.  In the event of the foreclosure of this Deed of Trust or other transfer of the title to the Property in extinguishment, in whole or in part, of the indebtedness secured hereby, all right, title and interest of Trustor in and to any insurance policy then in force shall pass to the purchaser or grantee to the extent that such insurance policy affects the Property.

C.    <u>Payments.</u>

2.08.  Trustor shall pay the sums due under the Note according to its terms.

2.09.  Trustor shall pay or cause to be paid:

(a)    Prior to the assessment of any penalty or delinquency, all taxes, assessments and other governmental or public charges affecting the Property and any accrued interest, cost and/or penalty thereon and shall submit paid receipt therefor to Beneficiary upon request.

(b)    When due, all encumbrances (including any debt secured by deed of trust), ground rents, liens, and/or charges, with interest, on the Property or Collateral, or any part thereof which appear to be junior, pari passu, prior or superior hereto and all costs, fees and expenses related thereto and including all homeowners/condominium association dues and assessments.

(c)    When due, all charges for utilities or services including, but not limited to, electricity, gas, water and sewer.

(d)    Concurrently with the execution of this Deed of Trust, Trustor shall purchase an ALTA extended coverage lender's policy of title insurance insuring the lien of this Deed of Trust as a first lien, in favor of Beneficiary, with coverage in the Note amount.

2.10.  Upon the occurrence of a default by Trustor hereunder that is not cured within any applicable cure or grace period, Trustor shall pay to Beneficiary on the first day of each month, together with and in addition to the regular installments of principal and interest due under the Note, until the indebtedness secured hereby is paid in full, an amount equal to one-twelfth (1/12) of the yearly taxes and assessments, insurance premiums, lease rentals and other similar charges (including any amounts which may become payable by Trustor pursuant to Paragraph 2.24 herein below) as estimated by Beneficiary to be sufficient to enable Beneficiary to pay at least thirty (30) days before they become due, all taxes, assessments, insurance premiums, and other similar charges against the Property.  Beneficiary shall not be obligated to pay interest on any such sums.  Upon demand of Beneficiary, Trustor shall deliver to Beneficiary such additional sums as are necessary to enable Beneficiary to pay such taxes, assessments, insurance premiums and similar charges or any interest and penalties thereon that are a result of Trustor's failure to remit on a timely basis such above amounts in full.

2.11.  Trustor shall pay immediately, upon demand, after expenditure, all sums expended or expenses incurred by Trustee and/or Beneficiary under any of the terms of this Deed of Trust, including without limitation, any fees and expenses (including reasonable attorneys' fees and real property transfer taxes) incurred in connection with any reconveyance of the Property or any portion thereof, or to compel payment of the Note or any portion of the indebtedness evidenced thereby or in connection with any default thereunder, including without limitation attorneys' fees incurred in any bankruptcy or judicial or nonjudicial foreclosure proceeding, with interest from date of expenditure at the Interest Rate provided for in the Note.

2.12. Trustor shall pay the amount demanded by Beneficiary or its authorized servicing agent for any statement regarding the obligations secured hereby; provided, however, that such amount may not exceed the maximum amount allowed by law at the time request for the statement is made.

D.    Condemnation.

2.13. If the Property, or any part thereof, is taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner, Beneficiary shall be entitled to all compensation, awards and other payments or relief therefor to which Trustor shall be entitled, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of the interests of Trustor therein. All such compensation, awards, damages, rights of action and proceeds to which Trustor shall be entitled (the "Proceeds") are hereby assigned to Beneficiary, not to exceed the balance owing on the Note.

E.    Rents and Leases.

2.14. Trustor hereby absolutely and unconditionally assigns and transfers to Beneficiary all the leases, income, rent, issues, deposits, profits and proceeds of the Property (the "Leases") to which Trustor may be entitled, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such income, rents, issues, deposits, profits and proceeds of the Property to which Trustor may be entitled, whether now due, past due or to become due. The assignment of the Leases constitutes an irrevocable direction and authorization of all tenants under the Leases to pay all rent, income and profits into an account specified by Beneficiary upon demand and without further consent or other action by Trustor. Trustor irrevocably appoints Beneficiary its true and lawful attorney, at the option of Beneficiary at any time, to demand, receive and enforce payment, to give receipts, releases, and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such income, rents, issues, deposits, profits and proceeds and apply the same to the indebtedness secured hereby. It is understood and agreed that neither the foregoing assignment of leases, income, rents, issues, deposits, profits and proceeds to Beneficiary, nor the exercise by Beneficiary of any of its rights or remedies under this Paragraph 2.14 or under Paragraph 2.23 hereof, shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Notwithstanding anything to the contrary contained herein or in the Note secured hereunder, so long as no Event of Default, shall have occurred, Trustor shall have a license to collect all income, rents, issues, profits and proceeds from the Property. Upon the occurrence of an Event of Default, such license shall be deemed revoked and any rents received thereafter by Trustor shall be delivered in kind to Beneficiary. Trustor hereby irrevocably constitutes and appoints Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or in Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation checks and money orders, tendered as payments of rents and to do any and all things necessary and proper to carry out the purposes hereof.

F.    Other Rights and Obligations.

2.15. In addition to any other grant, transfer or assignment effectuated hereby, without in any manner limiting the generality of the grants in Article I hereof, Trustor shall assign to Beneficiary Trustor's interest in all agreements, contracts, leases, variances, special use permits, development rights, plans, specifications, drawings, engineering product, licenses and permits affecting the Property or the Collateral in any manner whatsoever, such assignments to be made, if so requested by Beneficiary, by instruments in form satisfactory to Beneficiary but no such assignment shall be construed as a consent by Beneficiary to any agreement, contract, license or permit so assigned, or to impose upon Beneficiary any obligations with respect thereto.

2.16. Intentionally Deleted.

2.17. If required by Beneficiary at any time during the term of this Deed of Trust, Trustor authorizes in form satisfactory to Beneficiary, to file an additional security agreement and/or financing statement covering all personal property of Trustor which may at any time be furnished, placed on, or annexed or made appurtenant to the Collateral or the Property and used, useful or held for use, in the operation of the improvements thereon. Any breach of or default under such security agreement shall constitute an event of default under this Deed of Trust.

2.18. Trustor shall do any and all acts which, from the character or use of the Property or the Collateral, may be reasonably necessary to defend, protect and preserve the security of this Deed of Trust and the rights and powers of Beneficiary, or Trustee, the specific enumerations herein not excluding the general.

2.19. Without limiting the force or effect of Section 2.21, below, Trustor will faithfully perform each and every covenant to be performed by Trustor under any lien or encumbrance upon or affecting the Property, including, without limiting the generality hereof, mortgages, deeds of trust, leases, declaration of covenants, easements, conditions and/or restrictions and other agreements which affect the Property, in law or in equity, which Beneficiary reasonably believes may be junior, pari passu, prior and superior to the lien or charge of this Deed of Trust. A breach of or a default under any such lien or encumbrance shall constitute an event of default under this Deed of Trust.

2.20. Upon election of either Beneficiary or Trustee so to do, employment of an attorney is authorized and payment by Trustor of all attorneys' fees, costs and expenses in connection with any action and/or actions (including the cost of evidence or search of title), which may be brought for the foreclosure of this Deed of Trust, and/or for possession of the property covered hereby, and/or for the appointment of a receiver, and/or for the enforcement of any covenant or right in this Deed of Trust contained as hereinafter provided shall be secured hereby.

2.21. In the event that the interest of Trustor in the Property, or any part thereof, or any interest therein is sold, conveyed, alienated, further encumbered or otherwise transferred by the Trustor, voluntarily or involuntarily, whether by operation of law or otherwise, such event shall constitute a default of the Note and the Note, irrespective of the maturity dates expressed therein, at the option of Beneficiary, and without demand or notice, shall immediately become due and payable. In the event that Beneficiary does not elect to declare the Note immediately due

and payable, then Trustor shall nevertheless remain primarily liable for the obligations hereunder and under the Note and any other instrument securing the Note. This provision shall apply to each and every sale, transfer, encumbrance or conveyance, regardless whether or not Beneficiary has consented to, or waived, Beneficiary's rights hereunder, whether by action or non-action in connection with any previous sale, transfer, encumbrance or conveyance and whether or not the holder has received any payments after said transfer.

2.22. Trustor agrees to execute such documents and take such action as Beneficiary shall reasonably determine to be necessary or desirable to further evidence, perfect or continue the perfection of the lien and security interest granted by Trustor herein.

2.23. Upon an event of default hereunder or under the Note, Beneficiary is authorized either by itself or by its agents to be appointed by it for that purpose, or by a receiver appointed by a court of competent jurisdiction, to enter into and upon and take and hold possession of any portion or all of the Property, both real and personal, and exclude Trustor and all other persons therefrom; and to operate and manage the Property and rent and lease the same, sell timeshare intervals from the Property, perform such reasonable acts of marketing, sale, repair or protection as may be reasonably necessary or proper to conserve the value thereof, and collect any and all income, rents, issues, profits and proceeds therefrom, the same being hereby assigned and transferred to Beneficiary for the benefit and protection of Beneficiary, and from time to time apply and/or accumulate such income, rents, issues, profits and proceeds in such order and manner as Beneficiary or such receiver in its sole discretion shall consider advisable, to or upon the following: the expenses of receivership, if any, the proper costs of upkeep, maintenance, repair and/or operation of the Property, the repayment of any sums theretofore or thereafter advanced pursuant to the terms of this Deed of Trust upon the indebtedness secured hereby, the taxes and assessments upon the Property then due or next to become due, and/or upon the unpaid principal of such indebtedness. The collection and/or receipt of income, rents, issues, profits and/or proceeds from the Property by Beneficiary, its agent or receiver, after declaration of default and election to cause the Property to be sold under and pursuant to the terms of this Deed of Trust, shall not affect or impair such default or declaration of default or election to cause the Property to be sold or any sale proceedings predicated thereon, but such proceedings may be conducted and sale effected notwithstanding the receipt and/or collection of any such income, rents, issues, profits and/or proceeds. Any such income, rents, issues, profits and/or proceeds in the possession of Beneficiary, its agent or receiver, at the time of sale, and not theretofore applied as herein provided, shall be applied in the same manner and for the same purposes as the proceeds of the sale. Neither Trustee nor Beneficiary shall be under any obligation to make any of the payments or do any of the acts referred to in this Paragraph and any of the actions referred to in this Paragraph may be taken by Beneficiary irrespective of whether any notice of default or election to sell has been given hereunder and without regard to the adequacy of the security for the indebtedness evidenced by the Note.

2.24. Trustor shall immediately and without demand pay or reimburse all sums reasonably expended by Beneficiary or Trustee pursuant to this Deed of Trust, with interest from the date of expenditure and at the applicable rate set forth in the Note.

## III.  DEFAULTS AND REMEDIES.

### A.  Defaults and Cross Defaults.

3.01.  Trustor shall be in default upon the occurrence of any one or more of the following events each of which constitutes an "Event of Default" under this Deed of Trust.

(a)  Borrower's failure to pay, within ten (10) days of written notice from Beneficiary, any payment due under the Note or this Deed of Trust; or

(b)  Borrower's failure to strictly comply with any provision of the Note or this Deed of Trust within thirty (30) days after receipt of written notice from Beneficiary, or if such provision cannot reasonably be cured within such thirty (30) day period, within a reasonable time thereafter provided that Trustor commences the cure within such period and continuously pursues the same in good faith until completion; and further provided that if such failure constitutes a material threat to life, person or property the time for cure shall be that number of days, not to exceed thirty (30) days, as is reasonable in light of the nature of the circumstances surrounding such threat to life, person or property; or

(c)  Filing of a petition under any Chapter of Title 11 of the United States Code or any similar law or regulation by or against Borrower or any Principal (and in the case of an involuntary petition in bankruptcy, such petition is not discharged within thirty (30) days of its filing), or a custodian, receiver, or trustee for any of the Project is appointed, or Borrower or any Principal makes an assignment for the benefit of creditors, or any of them are adjudged insolvent by any state, federal or foreign court of competent jurisdiction, or any of them admit their insolvency or inability to pay their debts as they become due of an attachment or execution is levied against any of the Property.

### B.  Remedies.

3.02.  Upon the occurrence of any Event of Default, Beneficiary may declare all sums secured hereby immediately due and payable either by commencing an action to foreclose this Deed of Trust as a mortgage, or by the delivery to Trustee of a written declaration of default and demand for sale and of written notice of default and of election to cause the Property to be sold, which notice Trustee shall cause to be duly filed for record in case of foreclosure by exercise of the power of sale herein. Should Beneficiary elect to foreclose by exercise of the power of sale herein, Beneficiary shall also deposit with Trustee this Deed of Trust, the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require, and notice of sale having been given as then required by law and after lapse of such time as may then be required by law after recordation of such notice of default, Trustee, without demand on Trustor, shall sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, on its own or at Beneficiary's request, may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed or deeds conveying the Property, or any portion thereof, so sold, but without any covenant or warranty, express or implied. The

recitals in such deed or deeds of any matters or facts, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale.

3.03. Beneficiary, from time to time before Trustee's sale, may rescind any such notice of breach or default and of election to cause the Property to be sold by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, and of election to cause the Property to be sold to satisfy the obligations hereof, nor otherwise affect any provision, agreement, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties hereunder.

3.04. After deducting all costs, fees and expenses of Trustee and of this Trust, including the cost of evidence of title in connection with sale and attorneys' fees, Trustee shall apply the proceeds of sale as required by applicable law.

3.05. If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms hereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the indebtedness secured hereby without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

3.06. Subject to any notice requirement and opportunity to cure contained herein, upon the occurrence of an Event of a Default hereunder, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under it, and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefore, or any requirement for the posting of any bond or security. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

## IV. COLLATERAL

4.01. With respect to the security interest granted in paragraph 1.02, Beneficiary shall have, and is hereby granted all the rights and remedies granted to a secured party under Article 9 of the Uniform Commercial Code or under any similar statute existing in the jurisdiction in which the Collateral, or any part thereof may be located, as well as all other rights and remedies available at law or inequity. Trustor shall, upon the demand of Beneficiary, assemble all of such personal property and make it available to Beneficiary at the Property, which is hereby agreed to be reasonably convenient to Beneficiary. The proceeds of any sale of

such personal property shall be applied first to the expenses of Beneficiary in retaking, holding, preparing for sale, selling or similar matters, including reasonable attorney's fees.

4.02. Until Beneficiary exercises its right to collect proceeds of the Collateral, pursuant hereto, Trustor will collect with diligence any and all proceeds of the Collateral. Following an Event of Default, upon written request by Beneficiary, any proceeds received by Trustor shall be held in trust for Beneficiary, and Trustor shall keep all such collections separate and apart from all other funds and property so as to be capable of identification as the property of Beneficiary and shall deliver such collections at such time as Beneficiary may request to Beneficiary in the identical form received, properly endorsed or assigned when required to enable Beneficiary to complete collection thereof.

4.03. Trustor shall (i) permit representatives of Beneficiary to inspect the Collateral and Trustor's books and records relating to the Collateral and make extracts therefrom and to arrange for verification of the amount of Collateral, under procedures acceptable to Beneficiary, at Trustor's expense; (ii) promptly notify Beneficiary of any attachment or other legal process levied against any of the Collateral and any information received by Trustor relative to the Collateral, Trustor's debtors or other persons obligated in connection therewith, which may in any way affect the value of the Collateral or the rights and remedies of Beneficiary in respect thereto; (iii) reimburse Beneficiary upon demand for any and all costs, including without limitation reasonable attorneys' and accountants' fees, and other expenses incurred in collecting any sums payable by Trustor under any obligation secured hereby; (iv) notify Beneficiary of each location at which the Collateral is or will be kept, other than for temporary processing, storage or similar purposes, and of any removal thereof to a new location, including without limitation each office of Trustor at which records relating to the Collateral are kept; (v) provide, maintain and deliver to Beneficiary certificates of insurance insuring the Collateral against loss or damage by such risks as required by the note; (vi) do all acts necessary to maintain, preserve and protect all Collateral; and (vii) authorize financing statements, amendments thereto and continuation statements, and pay the cost of the filing of the same whenever Beneficiary deems desirable, and execute and deliver to Beneficiary further documents and instruments and do such other acts and things as Beneficiary may reasonably request in order to effectuate fully the purposes and intent hereof.

4.04. Beneficiary may at any time, without prior notice to Trustor, collect proceeds of the Collateral and may give notice of assignment to any and all of Trustor's debtors, and Trustor does hereby irrevocably constitute and appoint Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or in Beneficiary's name or otherwise all rights of Trustor in the Collateral and to do any and all things necessary and proper to carry out the purposes hereof; provided, however, Trustor shall have the right to collect, retain, use and enjoy such proceeds subject to the terms hereof prior to any Event of Default. It is hereby recognized that the power of attorney herein granted is coupled with an interest and shall not be revocable and Beneficiary shall have the right to exercise this power of attorney upon any Event of Default. (Beneficiary shall promptly notify Trustor of any action taken by Beneficiary pursuant to this provision but Beneficiary's failure to do so shall not invalidate any such act, affect any of Trustor's obligations to Beneficiary or give rise to any right, claim or defense on the part of Trustor).

## V.    MISCELLANEOUS PROVISIONS

5.01.  By accepting payment of any sum secured hereby after its due date or in an amount less than the sum due, Beneficiary does not waive its rights either to require prompt payment when due of all other sums so secured or to declare a default as herein provided for failure to pay the total sum due.

5.02.  At anytime, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee may: reconvey any part of the Property; consent in writing to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof. Beneficiary has agreed to consent to a division of the Real Property, pursuant to Section 2.3(g) of the Purchase Agreement.

5.03.  Beneficiary is authorized by itself, its agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

5.04.  Subject to the provisions of Paragraph 2.21 hereof, this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note, now or hereafter and whether or not named as Beneficiary herein, in any event acting together. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

5.05.  Trustee, upon presentation to it of an affidavit signed by or on behalf of Beneficiary, setting forth any fact or facts showing a default by Trustor under any of the terms or conditions of this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

5.06.  If any provision hereof or application thereof should be held unenforceable or void by a court of competent jurisdiction, then such provision or application shall be severed from the remaining provisions hereof and shall in no way affect the validity of the remainder of this Deed of Trust.

5.07.  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The Trust created hereby is irrevocable by Trustor.

5.08.  Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, substitute a successor or successors for the Trustee named herein or acting hereunder.

5.09.  The right to plead any and all statutes of limitation as a defense to any demand secured by this Deed of Trust is hereby waived to the full extent permitted by law.

5.10.  Whenever Borrower, Trustor or Beneficiary shall desire to give or serve any notice, demand, request or other communication with respect to this Deed of Trust, each such notice shall be in writing and shall be effective only if the same is delivered by personal service, by telecopy and a same day e-mail, or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| To Trustor: | Royal Resort Enterprises, LLC |
| | c/o Golden West Properties |
| | 9255 Sunset Blvd. |
| | Suite 320 |
| | West Hollywood, CA  90069 |
| | Attention: Matt Langenbach |
| | Facsimile: 310/858-6862 |

Royal Center Associates, LLC
c/o Golden West Properties
9255 Sunset Blvd.
Suite 320
West Hollywood, CA  90069
Attention: Matt Langenbach
Facsimile: 310/858-6862

With a copy to:     Soukup & Schiff, LLP
1880 Century Park East
Suite 1108
Los Angeles, CA  90067
Attention: John F. Soukup, Esq.
Facsimile: 310/286-0522

To Beneficiary:     HMA Sales, LLC
Attn:  Joseph Milanowski
4525 Sandhill Road, Suite 114
Las Vegas, Nevada 89121
Facsimile:  (702) 433-2890

With a copy to:     Goold Patterson Ales & Day
Attn:  Barry S. Goold, Esq.
4496 S. Pecos Road
Las Vegas, Nevada 89121
Facsimile:  (702) 436-2650

Any such notice delivered personally shall be deemed to have been received upon delivery. Any such notice sent by telecopy shall be presumed to have been received by the addressee one (1)

business day after confirmation that the telecopy was received. Any such notice sent by mail shall be presumed to have been received by the addressee three (3) business days after posting in the United States mail. Any party to whom any such notice is to be sent hereunder may change its address by giving the other such parties written notice of its new address as herein provided. No notice given by Beneficiary shall be effective unless given by all of the entities comprising Beneficiary.

5.11.    Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth above.

5.12.    Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

5.13.    Without affecting the liability or obligations of any person, including Trustor, for the performance of any obligations secured hereby (excepting only any person or property otherwise expressly released in writing by Beneficiary), Beneficiary may from time to time and without notice release any person liable for payment of any of said indebtedness or the performance of said obligations, extend the time of payment or otherwise alter the terms of any of said obligations, accept additional security therefor of any kind, including trust deeds or mortgages, or alter, substitute or release any property securing said obligations.

5.14    THE AGREEMENTS, INCLUDING THE WAIVERS SET FORTH IN THIS AGREEMENT ARE KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY TRUSTOR, AND TRUSTOR ACKNOWLEDGES THAT NEITHER BENEFICIARY OR ANY PERSON ACTING ON BEHALF OF BENEFICIARY HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THESE WAIVERS OR IN ANY WAY TO MODIFY OR NULLIFY THEIR EFFECT. TRUSTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THESE WAIVERS BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THESE WAIVERS WITH COUNSEL.

5.15.    The provisions of this Deed of Trust governing the contractual rights and obligations of Trustor, Beneficiary and Trustee shall be construed according to the laws of the State of Nevada. The provisions of this Deed of Trust are intended to be supplemental and in addition to the provisions contained in the Note.

5.16.    This Deed of Trust may be executed in counterparts, all of which executed counterparts shall together constitute a single document. Signature pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

[Signature on following page]

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents as of the day first written above.

"TRUSTOR"

**ROYAL RESORT ENTERPRISES, LLC,** a
Nevada limited liability company

By: _____
Print Name:  David Taban
Its:  Manager

**ROYAL CENTER ASSOCIATES, LLC,** a
Nevada limited liability company

By: _____
Print Name:  Michael Pashaie
Its:  Manager

Exhibit "A"

All that real property situated in the County of Clark, State of Nevada, bounded and described as follows:

Parcel 1

Parcel One (1) of Royal Vacation Suites as shown by map thereof on file in Book 116 of Plats, Page 44 in the Office of the County Recorder of Clark County, Nevada.

Excepting therefrom that Air Space as conveyed by HMA Sales, LLC by that certain Grant, Bargain and Sale Deed recorded April 14, 2005 in Book 20050414 as Instrument No. 1497.

Parcel 2

A subdivision of a portion of Parcel 1 of that certain Final Map entitled, "Royal Vacation Suites, a commercial subdivision," as shown in Book 116 of Plats, at Page 44 of Official Records of Clark County, Nevada, being a portion of the southwest quarter (sw ¼) of the southeast quarter (se ¼) of Section 9, Township 21 South, Range 61 East, M.D.M., Clark County, Nevada, more particularly described as follows:

Commencing at the northwest corner of said subdivision, which lies on the southerly right-of-way line of Convention Center Drive (40.00 feet wide from centerline); thence south 89 deg. 18' 27" east along said southerly right-of-way a distance of 110.00 feet; thence leaving said right-of-way south 35 deg. 09' 54" east 86.66 feet to the point of beginning; thence south 84 deg. 15' 23" east 103.15 feet; thence south 89 deg. 38' 46" east 30.19 feet; thence north 85 deg. 22' 00" east 100.53 feet; thence south 04 deg. 38' 00" east 18.12 feet; thence north 85 deg. 22' 00" east 8.85 feet; thence south 04 deg. 00' 00" east 14.10 feet; thence south 85 deg. 22' 00" west 8.69 feet; thence south 04 deg. 38' 00" east 28.10 feet; thence south 85 deg. 22' 00" west 101.49 feet; thence north 89 deg. 29' 47" west 40.18 feet; thence north 84 deg. 15' 23" west 103.12 feet; thence north 05 deg. 44' 37" east 28.02 feet; thence north 83 deg. 45' 29" west 8.82 feet; thence north 05 deg. 16' 21" east 14.14 feet; thence south 83 deg. 45' 29" east 8.94 feet; thence north 05 deg. 44' 37" east 18.18 feet to the point of beginning.

The lower boundary of the above described Air Space is at an elevation of 2077.60; the upper boundary of the above described Air Space is at an elevation of 2141.75.

Note: The above metes and bounds description appeared previously in that certain document recorded April 14, 2005 in Book 20050414 as Instrument No. 01497.

THERE IS SPECIFICALLY EXCEPTED HEREFROM any unit week intervals previously conveyed to contract purchasers for value as said conveyances are of record in the Recorder's Office of Clark County, Nevada as well as any such conveyances which may be unrecorded.

\* \* \* \* \* \* \* \* \*

AJS

STATE OF CALIFORNIA )

                     SS.

COUNTY OF LOS ANGELES )

       On December 15, 2006 before me, *Debra Lee Lane*          ,a Notary Public, personally appeared David Taban, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

DEBRA LEE LANE
Commission # 1632047
Notary Public — California
Los Angeles County
My Comm. Expires Jan 1, 2010

STATE OF CALIFORNIA )

                     SS.

COUNTY OF LOS ANGELES )

       On December 15, 2006 before me, *Debra Lee Lane*          ,a Notary Public, personally appeared Michael Pashaie, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

DEBRA LEE LANE
Commission # 1632047
Notary Public — California
Los Angeles County
My Comm. Expires Jan 1, 2010

20061226-0001714

Fee: $16.00
N/C Fee: $0.00

12/26/2006                  10:44:03
T20060225069
Requestor:
SCHWARTZER MCPHERSON

Charles Harvey            DHG
Clark County Recorder     Pgs: 3

APN# 162-09-812-002
162-09-812-003

11 digit number may be obtained at:
http://sandgate.co.clark.nv.us/cicsAssessor/ownr.htm

Notice of Pendency of Action
Affecting Title To Real Property
**Type of Document**
(Example: Declaration of Homestead, Quit Claim Deed, etc.)

**Recording requested by:**

Schwartzer McPherson

**Return to:**

Name Schwartzer Mc Pherson

Address 2850 S Jones #1

City/State/Zip Las Vegas NV 89146

This page added to provide additional information required by NRS 111.312 Sections 1-2
(An additional recording fee of $1.00 will apply.)

This cover page must be typed or printed clearly in black ink only.

CS12/03