# PROMISSORY NOTE
## SECURED BY MORTGAGE

$17,750,000

Las Vegas, Nevada
February 27, 2006

This Promissory Note ("Note"), dated as of February 27, 2006 is made and delivered by **STANDARD PROPERTY DEVELOPMENT, LLC**, a Florida limited liability company ("Borrower"), in favor of those persons listed on Exhibit "A" attached hereto ("Lender").

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Seventeen Million Seven Hundred Fifty Thousand Dollars ($17,750,000) (the "Note Amount"), together with interest as provided herein. The Note Amount shall be disbursed in accordance with Exhibit "B" of the construction loan agreement between Borrower and Lender of even date herewith (the "Loan Agreement").

1.    <u>Interest Rate</u>.  Interest shall accrue on the outstanding portion of the Note Amount, from closing until the date the Note Amount is paid in full, at the rate of twelve and one-half percent (12.5%) per annum.  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  Accrued but unpaid interest shall be compounded monthly.

2.    <u>Payments</u>.  Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears.  For example, interest that would accrue in the month of May will be due and payable on June 1, and will be calculated on the average daily balance due under the Note that month.  All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.    <u>Maturity Date</u>.  If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable on the date which is twelve (12) months after the Mortgage is recorded (the "Maturity Date").

4.    <u>Application of Payments</u>.  All payments on this Note shall, at the option of the Lender hereof, be applied first to the payment of accrued interest then payable.

5.    <u>Prepayment</u>.  Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default).  Subject to the foregoing, Borrower may prepay this Note in full or in part at any time; provided, however, that if Borrower repays the Loan within the first three (3) months after the Effective Date (whether voluntarily or as a result of default), then Borrower shall pay to Lender a prepayment fee equal to all interest which would accrue on the Loan Amount advanced during said three (3) month period, less all interest previously paid.  Notwithstanding

G:\BKD\000 2800  USA\035  Standard Property\note2.wpd                    1

**EXHIBIT**

tables'

"3"

anything to the contrary hereunder, Lender shall receive a minimum of three (3) months' interest on the full Loan Amount.

6.    Collateral.  This Note is secured by a mortgage encumbering real property located in Orange County, Florida.

7.    Defaults; Acceleration.  The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder.  Upon the occurrence of an Event of Default, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately.  Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)    Borrower shall fail to pay when due any amount due pursuant to the Note; provided, however, that payment no later than five days after the due date will cure this default; or

(b)    Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have sixty (60) days after written notice to effect the cure (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c)    any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made; or

(d)    Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)    Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution,

G:\BKD\000  2800  USA\035  Standard Property\note2.wpd                    2

custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within thirty (30) calendar days after such issue or levy; or

(f)    there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion; or

(g)    any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)    all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)    any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(j)    any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

8.    Late Charge. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the Lender hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation

therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any accelerated amount. Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    <u>Default Rate</u>.  From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    <u>Waivers</u>.  Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.    <u>Costs of Collection</u>.  Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.    <u>Usury</u>.  Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this

G:\BKD\000 2800 USA\035 Standard Property\note2.wpd                    4

Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

13.    Notices.  All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

BORROWER'S ADDRESS:    Standard Property Development, LLC
300 S. Orange Ave. Ste 1000
Orlando, Florida 32801
Attn. Steven Parmee

LENDER'S ADDRESS:    c/o USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn. Joseph D. Milanowski

14.    Assignment By Lender.  Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15.    Multiple Parties.  A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16.    Construction.  This Note shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to choice of law provisions.  This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party.  The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

17.    Partial Invalidity.  If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof.  No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

G:\BKD\000  2800  USA\035  Standard Property\note2.wpd                    5

18.    Venue.  The venue of any action brought in connection with this Note shall be laid in Clark County, Nevada.

BORROWER:    STANDARD PROPERTY DEVELOPMENT, LLC, a Florida limited liability company

By: _____
     George Ventruella, Manager

EXHIBIT "A"

<u>LENDERS</u>

| | <u>NAME</u> | <u>AMOUNT</u> |
|---|---|---|
| 1 | Premiere Holdings Inc. Defined Benefit Pension Plan & Trust | $50,000 |
| 2 | Anne E. Abrams Trustee of the Abrams Living Trust dtd 10/23/96 | $50,000 |
| 3 | Sidney R. Adams and Lisa Adams Investment Account | $60,000 |
| 4 | August J. Amaral Inc. a Nevada corporation | $100,000 |
| 5 | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $100,000 |
| 6 | Louise M. Barker  a widower | $50,000 |
| 7 | Robert B. Bender & Paula S. Bender husband & wife as joint tenants with right of survivorship | $250,000 |
| 8 | Harriet Bender Trustee of The Bender Family Trust By-Pass Trust dated 7/30/92 | $100,000 |
| 9 | Land Exchange Accommodators | $300,000 |
| 10 | Peter A. Bolino & Fabiola A. Bolino Trustees of the Bolino Family Revocable Trust dated 3/6/95 | $60,000 |
| 11 | James R. Bonfiglio & Donna M. Bonfiglio General Partners of the Broadwalk Investments Limited Partnership | $100,000 |
| 12 | Jerome Bresson Trustee of the Jerome Bresson Revocable Trust dated 12/1/89 | $100,000 |
| 13 | Michael T. Bridges Trustee of the Bridges Family Trust | $100,000 |
| 14 | William L. Brogan & Dyxeen L. Brogan husband and wife as joint tenants with right of survivorship | $50,000 |
| 15 | Howard D. Brooks & Doreen C. Brooks Trustees of the Brooks Living Trust dated 6/30/97 | $50,000 |
| 16 | Charles R. Brooks and Wendy S. Brooks husband and wife as joint tenants with right of survivorship | $50,000 |
| 17 | Richard L. Cadieux & Clara M. Cadieux husband & wife as joint tenants with right of survivorship | $100,000 |
| 18 | Peter W. Capone & Deidre D. Capone husband & wife as joint tenants with right of survivorship | $50,000 |
| 19 | James B. Cardwell Trustee of the Cardwell Charitable Trust | $339,000 |
| 20 | James B. Cardwell & Reba Jo Cardwell Trustees of the Cardwell Family Trust | $495,000 |
| 21 | Reba Jo Cardwell a married woman dealing with her sole and separate property | $100,000 |
| 22 | Tracy Cavin Trustee Of The Tracy Cavin Family Trust UTD 11/10/03 | $60,000 |
| 23 | Bernard Cohen and Elaine Cohen Trustees of the Bernard Cohen Trust dated 3/24/88 | $50,000 |

Standard Properties Initial ($8,240,000)          Page 1 of 5

| | | |
|---|---|---|
| 24 | Gareth A. R. Craner Trustee of The Gareth A. R. Craner Trust Dtd 6/01/02 | $50,000 |
| 25 | Richard N. Dahlke a married man dealing with his sole & separate property | $50,000 |
| 26 | Monica J. Della an unmarried woman | $50,000 |
| 27 | First Savings Bank Custodian For George A. Di Gioia IRA | $85,000 |
| 28 | Charles B. Dunn IV Trustee of the Charles B. Dunn IV Trust dated 8/12/05 | $50,000 |
| 29 | William Dupin & Penny Dupin husband & wife as joint tenants with right of survivorship | $50,000 |
| 30 | Ellis L. Elgart and Sivia V. Elgart Trustees of the Ellis L. Elgart Revocable Living Trust dated 7/8/02 | $50,000 |
| 31 | Sagrario T. Evers Trustee of the Sagrario T. Evers Living Trust dated 5/1/01 | $50,000 |
| 32 | Joseph A. Farrah & Emily T. Farrah Trustees of the Farrah Family Trust dated 9/18/03 | $50,000 |
| 33 | Dionisio A. Fernandes MD and Fiola Fernandes husband and wife Joint Tenants with Right of Survivorship | $50,000 |
| 34 | Seymour Frank a married man dealing with his sole and separate property | $50,000 |
| 35 | Anthony Fruscione and Lyda Fruscione Trustees of The Fruscione Family Trust dated 11/21/2005. | $50,000 |
| 36 | Theodore J. Fuller and Joan L. Fuller Trustee of the Fuller Family Trust dated 5/29/97 | $50,000 |
| 37 | Ronald G. Gardner Trustee of the Ronald G. Gardner Trust | $200,000 |
| 38 | Theodora Gottwald an unmarried woman | $50,000 |
| 39 | William Harrison Goulding and Elizabeth R. Goulding husband & wife as joint tenants with right of survivorship | $50,000 |
| 40 | David W. Grace & Denise Grace Trustees of the David W. Grace & Denise Grace Family Trust dated 10/18/96 | $50,000 |
| 41 | Jeff Hacker an unmarried man | $50,000 |
| 42 | Joanne A. Halvorson a married woman dealing with her sole & separate property | $50,000 |
| 43 | Christian K. Hartmann & Katharina Hartmann Trustees of the Hartmann 1997 Trust U/A dated 1/29/97 | $90,000 |
| 44 | Raymond G. Hawkins an unmarried man | $200,000 |
| 45 | Diane H. Higgins a married woman dealing with her sole and separate property | $100,000 |
| 46 | Robert Hitchins an unmarried man | $50,000 |
| 47 | John A. Hoglund & Patricia O. Hoglund husband & wife as joint tenants with right of survivorship | $50,000 |
| 48 | John M. Hoover & Suzanne J. Hoover Trustees of the Hoover Family 1985 Trust dated 4/3/85 | $125,000 |

Standard Properties Initial ($8,240,000)          Page 2 of 5

| | | |
|---|---|---|
| 49 | Richard Houlihan a single man | $50,000 |
| 50 | Milton P Kaplan MD TTEE FBO the Milton P Kaplan Profit Sharing Plan Dtd 10/1/77 | $50,000 |
| 51 | G. Robert Knoles and Christina G. Knoles husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 52 | Patrice A. Labossiere a single woman dealing with her sole and separate property | $50,000 |
| 53 | Renee Leff-Kaplan a married woman dealing with her sole and separate property | $50,000 |
| 54 | James E. Lofton & Denise G. Lofton husband & wife as joint tenants with right of survivorship | $50,000 |
| 55 | Mary Council Mayfield Trustee of the Hazel R. Council Trust dated 9/23/05 | $50,000 |
| 56 | Joseph E. Mele a married man dealing with his sole and separate property | $100,000 |
| 57 | Don D. Meyer an unmarried man & Dennis E. Hein an unmarried man as joint tenants with right of survivorship | $50,000 |
| 58 | Michaelian Holdings LLC a Nevada limited liability company | $100,000 |
| 59 | Mahendra C. Mody a single man | $75,000 |
| 60 | Monighetti Inc. a Nevada corporation | $50,000 |
| 61 | Wesley L. Monroe & Jeannie M. Monroe as joint tenants with right of survivorship | $200,000 |
| 62 | Daniel D. Newman Trustee of the Daniel D. Newman Trust dated 11/1/92 | $50,000 |
| 63 | Robert L. Ogren Trustee for the benefit of the Robert L. Ogren Trust dated 6/30/92 | $100,000 |
| 64 | Philip A. Palmintere & Nanci S. Palmintere Trustees of the Palmintere Revocable Trust dated 6/19/98 | $50,000 |
| 65 | Mojave Canyon Inc. a Nevada Corporation; J.B. Partain President | $125,000 |
| 66 | First Savings Bank Custodian For C. Nicholas Pereos IRA | $50,000 |
| 67 | Beaux Pontak and Denise Pontak husband and wife as Joint Tenants With Right of Survivorship | $50,000 |
| 68 | Stephanie K. Resley an unmarried woman | $50,000 |
| 69 | Seymour H. Rosenberg Trustee of the Seymour H. Rosenberg Revocable Trust dated 11/20/03 | $50,000 |
| 70 | First Savings Bank Custodian For Robert A. Schell IRA | $50,000 |
| 71 | Karl O. Schelling a married man dealing with his sole & separate property | $50,000 |
| 72 | Walter E. Seebach Trustee of the Walter E. Seebach Living Trust dated 11/1/85 | $75,000 |
| 73 | First Savings Bank Custodian For James W. Shaw IRA | $60,000 |
| 74 | Michael Shubic | $25,000 |
| 75 | Tommie W. Sisk a divorced man | $50,000 |

| | | |
|---|---|---|
| 76 | Donald J. Smith & Shirley M. Smith Trustees of the Donald J. Smith & Shirley M. Smith Trust | $100,000 |
| 77 | Terrance H. Smith a single man | $100,000 |
| 78 | First Trust Co. of Onaga Custodian For Robert Speckert IRA | $100,000 |
| 79 | Jennifer Chong Stalder Trustee of the Chong Chu Stalder Trust dated 4/19/90 | $50,000 |
| 80 | Nicholas A. Steinmetz & Cynthia M. Steinmetz Trustees of the 2001 Steinmetz Family Trust | $50,000 |
| 81 | Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpson Family Trust Dated 5/9/00 | $50,000 |
| 82 | Bertha M. Strauss an unmarried woman | $70,000 |
| 83 | Leonard L. Teachenor & Therese M. Teachenor Trustees of the Leonard and Therese Teachenor Trust dated 2/12/01 | $50,000 |
| 84 | Cal Terrill & Judy Terrill Trustees of the Terrill Family Revocable Living Trust dated 3/11/02 | $50,000 |
| 85 | Jack S. Tiano Trustee for An Accountancy Corporation Profit Sharing Plan & Trust dated 02/28/1997 | $50,000 |
| 86 | William E. Trappman and Carol B. Trappman husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 87 | Warren W. Tripp Trustee of the Tripp Enterprises Inc. Restated Profit Sharing Plan | $50,000 |
| 88 | T-2 Enterprises LLC. Manager Warren W. Tripp | $75,000 |
| 89 | T-3 Enterprises LLC. Manager Warren W. Tripp | $50,000 |
| 90 | Warren W. Tripp a married man dealing with his sole & separate property | $100,000 |
| 91 | Tripp Enterprises Inc. a Nevada corporation | $100,000 |
| 92 | Carol A.Tripp a married woman dealing with her sole and separate property | $50,000 |
| 93 | Gary E. Tucker & Linda L. Tucker husband & wife as joint tenants with right of survivorship | $50,000 |
| 94 | George Turner an unmarried man | $120,000 |
| 95 | Robert H. Turner & Nancy A. Turner Trustees of the 1994 Turner Family Trust dated 9/23/94 | $100,000 |
| 96 | USA Capital First Trust Deed Fund | $131,000 |
| 97 | Malden Ventures Ltd. Defined Benefit Pension Plan | $50,000 |
| 98 | Robert R. Wade Trustee of the Robert R. Wade Revocable Trust dated 5/22/01 | $70,000 |
| 99 | David C. Wahl and Margaret A. Wahl husband and wife as joint tenants with the right of survivorship | $50,000 |
| 100 | Kurt Weber & Patricia Weber Husband and wife as joint tenants with right of survivorship | $50,000 |
| 101 | Bruce H. Womble & R. Joanne Womble Trustees of the Womble Living Trust dtd 2/3/98 | $100,000 |

Standard Properties Initial ($8,240,000)           Page 4 of 5

| | | |
|---|---|---|
| 102 | Robert R. Wright & Betty M. Wright Trustees of the Wright Trust | $50,000 |
| 103 | Zawacki a California LLC | $50,000 |
| | TOTAL | $8,240,000 |