PREPARED BY/RETURN TO:
Bryan K. Day, Esq.
Goold Patterson Ales & Day
4496 South Pecos Road
Las Vegas, Nevada 89121

## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS ("Mortgage") executed this 27th day of February, 2006, by STANDARD PROPERTY DEVELOPMENT, LLC, a Florida limited liability company ("Mortgagor"), whose address is 300 S. Orange Ave., Ste 1000, Orlando, Florida 32801, Attn. Steven Parmee, and the heirs, personal representatives, successors and assigns of Mortgagor, including all subsequent grantees, either voluntarily by act of the parties or involuntarily by operation of law, to USA COMMERCIAL MORTGAGE COMPANY, a Nevada corporation, as agent for those persons listed on **Exhibit "A"** attached hereto (collectively, "Mortgagee"), whose address is 4484 South Pecos Road, Las Vegas, Nevada 89121, its successors and assigns;

### WITNESSETH:

THAT for good and valuable consideration and also in consideration of the aggregate sum of money named in the Promissory Note of even date herewith hereinafter described, and such additional sums of money as shall be borrowed by Mortgagor from Mortgagee or expended by Mortgagee for the account of Mortgagor, and any extensions, renewals, modifications or amendments of same, Mortgagor does hereby grant, bargain, lien, encumber, sell, alien, mortgage, remise, release, convey and confirm unto Mortgagee, in fee simple, the real estate, of which Mortgagor is now seized and possessed and in actual possession, situate in Orange County, Florida, and more particularly described in attached **Exhibit "B"** ("Premises").

EXHIBIT "4"

1

G:\BKD\000 2800 USA\035 Standard Property\mortgage2.wpd

TOGETHER with (i) all buildings, structures and improvements of every nature whatsoever now and hereafter on said Premises, (ii) all insurance policies, leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises heretofore or hereafter entered into and all accounts, rents, revenues, issues, profits and all proceeds from the sale or other disposition of such agreements accruing and to accrue from said Premises, (iii) all easements, rights-of-way, licenses, privileges, gores of land, streets, ways, alleys, passages, sewer rights, waters, water rights, permits, development rights and powers and all estates, rights, titles and interests in any way belonging, relating or appertaining to the Premises, (iv) all present and future inventory and equipment, as those terms are defined in the Uniform Commercial Code, and all other present and future personal property of any kind or nature whatsoever, now or hereafter located at, upon, or without the Premises described on Exhibit "B" or used or to be used in connection with or relating or arising with respect to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof, including without limitation all present and future furniture, furnishings, fixtures, goods, machinery, plumbing and plumbing material and supplies, concrete, lumber, hardware, electrical wiring and electrical material and supplies, heating and air conditioning material and supplies, roofing material and supplies, window material and supplies, doors, paint, drywall, insulation, cabinets, ceramic material and supplies, flooring, carpeting, appliances, fencing, landscaping and all other materials, supplies and property of every kind and nature, (v) all present and future accounts, general intangibles, chattel paper, contract rights, instruments and documents as those terms are defined in the Uniform Commercial Code, and all contracts, agreements and documents now existing or hereafter arising, now or hereafter relating or arising with respect to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof, including without limitation: (a) all rights to the payment of money, including escrow proceeds arising out of the sale or other disposition of all or any portion of the Premises; (b) all plans, specifications and drawings relating to the development of the Premises and/or any construction thereon; (c) all use permits, occupancy permits, construction and building permits, environmental impact reports and soil reports, inspections, or surveys, and all other permits and approvals required by any governmental or quasi-governmental authority in connection with the development, construction, use, occupancy, operation, lease or sale of the Premises; (d) any and all agreements relating to the development, construction, use, occupancy, operation, lease and/or sale of the Premises between Mortgagor and any contractor, subcontractor, project manager or supervisor, architect, engineer, laborer, supplier of materials or any other party; (e) all lease or rental agreements now or hereafter covering or affecting the Premises or any portion thereof; (f) all names under which the Premises is now or hereafter known and all rights to carry on business under any such names or any variant thereof; (g) all trademarks relating to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof; (h) all goodwill relating to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof; (i) all insurance proceeds and condemnation awards arising out of or incidental to the ownership, development, construction, use, occupancy, operation, lease or sale of the Premises; (j) all reserves, deferred payments, deposits, refunds, cost savings, bonds, insurance policies and payments of any kind relating to the Premises and/or the development, construction, use, occupancy, operation, lease, or sale thereof; (k) all loan and financing commitments issued to Mortgagor in connection with the development, construction, sale, lease or financing of the Premises or any portion thereof or interest therein; (l) all funds deposited with Mortgagee by

2

Mortgagor, and all accounts of Mortgagor with Mortgagee; and (m) all supplements, modifications and amendments to the foregoing, (vi) all fixtures owned by Mortgagor located upon or within the Premises or now or hereafter attached to, installed in, or used or intended for use in connection with the Premises, including without all partitions, generators, awnings, motors, engines, boilers, furnaces, pipes, plumbing, elevators, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, light fixtures, water tanks, heating, ventilating, air conditioning and air cooling equipment, and gas and electric machinery and equipment, and (vii) all present and future accessories, additions, attachments, proceeds, products, replacements and substitutions of or to all of the foregoing, with all of the foregoing being included in the term "Premises", it being the intention of Mortgagor and Mortgagee that this Mortgage (which is to be filed for record in the real estate records of the county mentioned above) shall also constitute a security agreement and financing statement as to the Premises herein mortgaged under the Florida Uniform Commercial Code, and that Mortgagee have all rights and remedies of a secured party thereunder;

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

AND Mortgagor does hereby covenant with Mortgagee that it is indefeasibly seized of said Premises in fee simple and is the record owner thereof; that it has full power and lawful right to convey said Premises in fee simple as aforesaid; that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy and enjoy said Premises; that said Premises are free from all encumbrances; that Mortgagor will make such further assurances to protect the fee simple title to said Premises in Mortgagee as may reasonably be required; and that Mortgagor does hereby warrant the title to said Premises and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED, ALWAYS, that if Mortgagor shall pay unto Mortgagee that certain Promissory Note (the "Promissory Note" or the "Note") from Mortgagor to Mortgagee in the amount of $17,750,000.00, which Note matures on the _____ day of February, 2006, and shall promptly perform, comply with and abide by each and every stipulation, agreement, condition and covenant of said Promissory Note and of this Mortgage, then the estate hereby created shall cease and be null and void.

AND, Mortgagor does hereby covenant and agree as follows:

1. <u>Payment of Indebtedness and Performance of Obligations</u>. Mortgagor shall pay all and singular the principal and interest and other sums of money payable by virtue of the Promissory Note and this Mortgage, or either, promptly on the days the same come due, and shall perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the Promissory Note, this Mortgage and any other instrument of indebtedness or security and any extensions, renewals, modifications or amendments of the foregoing described documents (collectively, the "<u>Collateral Loan Documents</u>") given by Mortgagor in connection herewith, all of which are secured by this Mortgage, including, but not limited to, all costs and expenses paid by Mortgagee in connection with this Mortgage and under any of the other Collateral Loan Documents.

3

2. Taxes.

(a) Mortgagor shall pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Premises when due and payable according to law before they become delinquent; and if the same shall not be promptly paid, Mortgagee may at any time, either before or after delinquency, pay, compromise, purchase, discharge or settle the same, or redeem the same from any tax or assessment, without waiving or affecting its rights hereunder.

(b) Mortgagor shall deliver to Mortgagee, on or before March 15th of each year, tax receipts evidencing the payment of all taxes for the preceding calendar year, shall deliver to Mortgagee receipts evidencing the payment of all liens for public improvements within ninety (90) days after the same shall become due and payable, and shall pay or discharge within ninety (90) days after the due date any and all governmental levies that may be made on the Premises or this Mortgage or the Promissory Note, or in any other way resulting from the indebtedness secured by this Mortgage; and if this condition be not complied with and performed, Mortgagee may, but need not, pay such sum or sums without waiving or affecting its rights hereunder.

3. Insurance.

(a) Mortgagor shall keep the buildings and all equipment and personal property now or hereafter on the Premises fully insured in an amount at least equal to the full cash value thereof, but in no event less than the unpaid balance of the Promissory Note secured by this Mortgage, including both fire and extended coverage insurance. Where appropriate, said policy or policies shall be held by Mortgagee and shall bear a Standard New York Mortgagee Clause without contribution, making the loss under said policy or policies payable to Mortgagee as its interest may appear and shall provide for thirty (30) day notice of cancellation and such other terms required by Mortgagee; and in the event any sum of money becomes payable under any such policy or policies, Mortgagee shall have the option to receive and apply the same on account of the indebtedness hereby secured, or to permit Mortgagor to receive and use said sum, or any part thereof, for other purposes without thereby waiving or impairing any equity, lien or right under and by virtue of this Mortgage; and in the event Mortgagor does not comply with this covenant, Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose, or any other right thereunder.

(b) Provided that the same is available, Mortgagor, at its expense and if required by Mortgagee, shall carry flood insurance for the maximum amount available or the amount secured by this Mortgage, whichever is less, pursuant to the Flood Disaster Protection Act of 1973 or any subsequent legislation, and in the event that Mortgagee shall require flood insurance, the payment of premiums for such insurance and the application of any proceeds therefrom shall be governed by the provisions of paragraph 3(a) of this Mortgage and other applicable provisions hereof.

4

4.  <u>Reserve for Taxes and Insurance</u>. In order to provide for the payment of taxes, assessments, insurance premiums (including flood insurance) and other annual charges on the Premises, Mortgagor, upon the occurrence of an event of default under any of the Collateral Loan Documents and upon Mortgagee's written request, will pay monthly to Mortgagee, in addition to the other payments provided herein, a sum estimated to be equivalent to one twelfth (1/12th) of such items, which payment may be held by Mortgagee and commingled with other funds or its own funds without interest for the payment of such items. If the amount estimated to be sufficient to pay said items is not sufficient, Mortgagor will pay the difference upon demand. The provisions of this paragraph are solely for the added protection of Mortgagee and entail no responsibility on Mortgagee's part beyond the allowance of due credit, without interest, for sums actually received by it. Upon the occurrence of a default under this Mortgage, Mortgagee may apply all or any part of the accumulated funds then held, upon any obligation secured hereby.

5.  <u>Use, Preservation and Maintenance of Property</u>.

(a)  Mortgagor shall permit, commit or suffer no waste, impairment or deterioration of the Premises, or any part thereof; and, upon the failure of Mortgagor to keep the Premises in good condition of repair, Mortgagee may demand the immediate repair of said Premises or increase in the amount of security. Mortgagor shall permit no exploration for, nor mining or other means of production of minerals or other natural resources from the Premises. Mortgagor shall promptly comply with all laws, regulations and requirements of all governmental bodies affecting the Premises, including, but not limited to, full compliance with the Americans With Disabilities Act of July 26, 1990, 42 U.S.C. Section 12191, et seq., as amended from time to time, and all regulations promulgated pursuant thereto. Mortgagor shall not construct or permit the construction of any improvements to the Premises without Mortgagee's prior written consent.

(b)  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Premises or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Premises. If under applicable zoning provisions, the use of all or any portion of the Premises are or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Premises or to any portion thereof and shall not take any steps whatsoever to convert the Premises, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

6.  <u>Transfer of Property or Beneficial Interest in Mortgagor</u>.

(a)  Excluding permitted transfers of the Units in accordance with the Loan Agreement and the partial release provisions set forth below, upon any sale or conveyance of all or any part of the Premises or any of its interest therein, all amounts due and payable in connection with the Note shall be immediately due and payable in full. A contract for deed or agreement for deed shall constitute a sale or conveyance pursuant to this paragraph. Mortgagor

5

shall not further encumber the Premises or permit any other mortgages to be filed against the Premises. This Mortgage and the Note are not assumable.

  (b)   Mortgagor shall not do or permit any of the following:

    (i)   Transfer, directly or indirectly, in the aggregate, twenty-five (25%) percent or more of the issued and outstanding stock in Mortgagor, as of the date hereof, or

    (ii)   Issue any additional stock of Mortgagor, after the date hereof.

  7.   Inspection. Mortgagee or its agents shall have the right to enter upon and inspect the Premises. Mortgagee shall give Mortgagor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

  8.   Subrogation. To the extent of the indebtedness secured hereby, Mortgagee is hereby subrogated to the lien or liens, and to the rights of the owners and holders thereof, of each and every mortgage lien or other encumbrance on the Premises which is paid and/or satisfied in whole or in part out of the proceeds of the loan secured hereby, and the respective liens of said mortgages, liens or other encumbrances shall be and the same and each of them hereby is preserved and shall pass to and be held by Mortgagee herein as security for the indebtedness hereby secured, to the same extent that it would have been preserved and would have been passed to and been held by Mortgagee had it been duly and regularly assigned, transferred, set over and delivered unto Mortgagee by separate deed of assignment.

  9.   Condemnation. In the event the Premises, or any part thereof, shall be condemned and taken for public use under the power of eminent domain, Mortgagee shall have the right to demand that all damages awarded for the taking of, or damages to said Premises, shall be paid to Mortgagee, up to the amount then unpaid on this Mortgage, and, at the option of Mortgagee, the same may be applied upon the payments last payable thereon.

  10.   Events of Default and Remedies.

  (a)   Mortgagor acknowledges that (i) if it should fail to pay any sums of money under this Mortgage, the Note or the Collateral Loan Documents within ten (10) days after the same shall have become due and payable, or (ii) if it should fail to perform any stipulation, agreement or condition of this Mortgage, the Note or the Collateral Loan Documents to be performed by it other than with regard to the payment of money within thirty (30) days after Mortgagee's demand therefor, or (iii) if any representation or warranty made in this Mortgage, the Note or the Collateral Loan Documents by or on behalf of Mortgagor or any guarantor ("Guarantor") is at any time false, misleading or breached, or (iv) if any mortgage or lien of any nature, superior or inferior to this Mortgage, should have been in default, whether or not foreclosure proceedings should be instituted, or (v) if the value of the Premises should be impaired or Mortgagor's ability to pay the indebtedness secured hereby should be so diminished that Mortgagee should deem itself insecure, or if the Mortgagee should determine that a material adverse change has occurred in the financial condition of Mortgagor or any Guarantor from the

conditions set forth in the most recent financial statement of Mortgagor or any Guarantor, heretofore furnished to Mortgagee, or from the condition of Mortgagor or any Guarantor as heretofore most recently disclosed to Mortgagee, or (vi) if Mortgagor or any Guarantor of the indebtedness secured by this Mortgage shall take any action pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered, or if, Mortgagor or any Guarantor shall be adjudicated a bankrupt, or be declared insolvent, or if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors, or shall petition or apply to any tribunal for the appointment of, or consent to the appointment of, a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, or if Mortgagor shall acquiesce in any petition filed against Mortgagor or any Guarantor under the Federal Bankruptcy Code, or if Mortgagor or any Guarantor shall take any action for the purpose of effecting any of the foregoing, or (vii) if any Guarantor, Mortgagor or any general partner of Mortgagor, if Mortgagor is a limited partnership, or any partner of Mortgagor, if Mortgagor is a general partnership, dies or is declared incompetent or any suspension or discontinuance of Mortgagor's or any Guarantor's business as a going concern, or (viii) if any of the creditors of Mortgagor or any Guarantor shall take any action against Mortgagor pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution, or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered in an involuntary case under the Federal Bankruptcy Code, or if any such creditor shall petition or apply to any tribunal for the appointment of a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, and if such action, petition or order shall not be discharged or dismissed within thirty (30) days after the date on which such action or petition was commenced or ordered entered, or (ix) if final judgment for the payment of money shall be rendered against Mortgagor or any Guarantor, and Mortgagor or any Guarantor shall not discharge the same or cause it to be discharged within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which such judgment was granted, based or entered, and secure a stay of execution pending such appeal, Mortgagor shall be in default and Mortgagee shall have the right, but not the obligation, to pursue all its rights and remedies under the laws of the State of Florida, including, without limitation, the right to declare all sums due and payable under the Note and this Mortgage to be immediately due and payable, anything in the Note or herein to the contrary notwithstanding.

(b)     Mortgagor shall pay all costs, charges and expenses, including attorneys' fees for all pre-litigation, litigation and any and all appeals therefrom, reasonably incurred or paid at any time by Mortgagee because of the failure of Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Promissory Note, this Mortgage or the Collateral Loan Documents, and every such payment shall bear interest from date of payment at the highest legal rate assessable under the Note.

(c)     Should Mortgagor be in default hereunder, Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the Court having jurisdiction thereof for the appointment of a receiver of all and singular the Premises, and all of the rents, incomes, profits, issues and revenues thereof, from whatsoever source derived; and thereupon it is hereby expressly covenanted and agreed that the Court shall forthwith appoint a receiver of said

7.

mortgaged property, all and singular, and of such rents, incomes, profits, issues and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in like cases, and such appointment shall be made by such Court as a matter of strict right to Mortgagee, its successors, legal representatives or assigns, and without reference to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of Mortgagor, and that such rents, profits, incomes, issues and revenues shall be applied by such receiver to the payment of the mortgage indebtedness, costs and charges, according to the order of such Court.

(d) Should Mortgagor be in default hereunder, Mortgagee shall have the right, without notice to Mortgagor, to collect and receive from any tenant of any portion of the Premises the rents, issues and profits of such demised premises and to give proper receipts and acquittances therefor, after paying all commissions of any rental agent collecting the same, and any reasonable attorneys' fees and other necessary expenses incurred in collecting same, and to apply the proceeds of such collection upon any indebtedness, obligation or liability, of Mortgagor hereunder.

(e) The rights, options, powers and remedies provided to Mortgagee shall be cumulative, and no one or more of them shall be exclusive of the other or others, or of any right or remedy now or hereafter given or allowed by law, including, without limitation, all rights under Chapter 697.07, Florida Statutes, regarding assignment of rents and all rights under Chapter 702, Florida Statutes, regarding foreclosure actions.

(f) The proceeds of any sale of all or any portion of the Premises shall be applied by Mortgagee first, to the extent of receiver's fees and expenses, if any, and to the payment of all costs and expenses (including, without limitation, reasonable attorney's fees and expenses) incurred by Mortgagee, together with interest thereon at the default rate of interest prescribed under the Note, in connection with any entry, action or proceeding under this Mortgage, and second, in such order as Mortgagee may elect, to payment of other amounts secured by this Mortgage and the Collateral Loan Documents. Mortgagor shall be and remain liable to Mortgagee for any difference between the net proceeds of the sale and the amount of the secured indebtedness until all such indebtedness has been paid in full.

(g) If Mortgagee shall have proceeded to enforce any right under any Collateral Loan Documents and such proceedings shall have been discontinued or abandoned for any reason, then except as may be provided in any written agreement between Mortgagor and Mortgagee providing for the discontinuance or abandonment of such proceedings, Mortgagor and Mortgagee shall be restored to their former positions and the rights, remedies and powers of Mortgagee shall continue as if no such proceedings had been instituted.

11. <u>Further Assurances</u>. Mortgagor shall do, execute, acknowledge, and deliver, at the cost of Mortgagor and without expense to Mortgagee, all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter

8

become bound to convey or assign to Mortgagee, or for carrying out the intention of facilitating the performance of the terms of this Mortgage or for the filing, registering, or recording this Mortgage and, on written demand, will execute and deliver to Mortgagee one or more financing statements or comparable security instruments, to evidence more effectively the lien hereof upon the mixed or personal property; and upon Mortgagor's failure, refusal or neglect to do so after written demand, Mortgagee shall have the right to execute any such documents in the name of Mortgagor.

12. <u>Indemnification</u>. Mortgagor shall protect, indemnify and save harmless Mortgagee from and against all liabilities, claims, judgments, damages, penalties, causes of action, cost and expenses (including, without limitation, attorneys' fees and expenses, including those incurred in connection with appellate, bankruptcy and post-judgment proceedings) imposed upon or incurred by or asserted against Mortgagee by reason of: (a) ownership of this Mortgage, the Premises or any interest therein or receipt of any rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas or streets; (c) any use, non-use or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property, parking areas or streets; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; or (e) the performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof. Any amounts payable to Mortgagee by reason of the application of this paragraph shall become immediately due and payable upon demand by Mortgagee. The obligations of Mortgagor under this paragraph shall survive any termination or satisfaction of this Mortgage. The provisions of this paragraph shall not apply to any obligation, claim, judgment, damage, penalty or cause of action caused by the gross negligence or willful malfeasance of Mortgagee.

13. <u>Assignment of Additional Collateral</u>.

(a) Mortgagor hereby assigns to Mortgagee, the following items, which are sometimes hereinafter collectively referred to as the "<u>Additional Collateral</u>": All licenses, permits, approvals, variances, land use entitlements, franchises, certificates and agreements with or from all boards, agencies, departments, governmental or otherwise, relating directly or indirectly to the ownership, use, operation and maintenance of the Premises, or the construction of improvements on the Premises, whether heretofore or hereafter issued or executed (collectively, the "<u>Licenses</u>"), said boards, agencies, departments, governmental or otherwise, being hereinafter collectively referred to as the "<u>Governmental Authorities</u>"; all contracts and agreements (including, but not limited to, contracts or agreements with contractors, architects, engineers, surveyors, other design professionals and other consultants), subcontracts, agreements with utility companies (public or private), service agreements, surveys, plats, site plans, soil reports, wetlands reports, environmental studies, architectural or land planner renderings, plans and specifications, shop drawings, floor plans, brochures, advertising materials, warranties, guaranties and purchase orders which have heretofore been or will hereafter be executed by or on behalf of Mortgagor, or which have been assigned to Mortgagor, in connection with the use, operation and maintenance of the Premises, or the construction of development improvements on the Premises (collectively, the "<u>Contracts</u>"), and the parties with whom or to whom such Contracts have been or are given are hereinafter collectively referred to as the "<u>Contractors</u>"; and

9

all leases, contracts and agreements which have heretofore been or will hereafter be executed by or on behalf of Mortgagor in connection with the lease or sale of any portion of the Premises (collectively, the "Sales Agreements"), and the parties with whom or to whom the Sales Agreements have been or are given are hereinafter collectively referred to as the "Purchasers".

(b) Mortgagor hereby assigns, transfers and sets over unto Mortgagee, all of Mortgagor's right, title and interest in and to the Additional Collateral and all of the rights and benefits therefrom as security for the payment of the indebtedness secured hereby and any and all future indebtedness of Mortgagor to Mortgagee secured by this Mortgage and any and all future advance agreements made pursuant hereto. Until the occurrence of an event of default hereunder and/or any such future advance agreement(s), Mortgagor may retain, use and enjoy the benefits of the Additional Collateral. After the occurrence of an event of default, Mortgagee may enforce this assignment. The affidavit or written statement of an officer, agent or attorney of Mortgagee stating that there has been a default shall constitute conclusive evidence thereof, and any of the Governmental Authorities, Contractors or Purchasers or any other person is authorized and directed to rely thereon.

(c) Mortgagor agrees to faithfully observe and perform all of the obligations and agreements imposed upon Mortgagor under the Additional Collateral. From and after the date hereof, no Sales Agreement, Contract or License may be altered, amended or cancelled, and no new Contract or Sales Agreement may be entered into except in accordance herewith. Mortgagee shall not be deemed in any manner to have assumed any of the Additional Collateral, nor shall Mortgagee be liable to Purchasers, Governmental Authorities or Contractors by reason of any default by any party under the Sales Agreements, Licenses or Contracts.

(d) Mortgagor agrees to indemnify and hold Mortgagee harmless of and from any liability, loss or damage which Mortgagee may incur by reason of any claims or demands against it, based on its alleged assumption of Mortgagor's duties and obligations to perform and discharge the terms, covenants and agreements in the Sales Agreement, Licenses and Contracts.

(e) After the occurrence of an event of default, Mortgagee may, in its sole discretion, elect to exercise any and all of Mortgagor's rights and remedies under the Additional Collateral without any interference and objection from Mortgagor, and Mortgagor shall cooperate in causing the Contractors and Purchasers to comply with all the terms and conditions of the Contracts and Sales Agreements. In no event shall Mortgagee be obligated to exercise any or all of such rights and remedies of Mortgagor. If, and to the extent permitted by law and the terms of the Additional Collateral, Mortgagee may, with or without entry upon the Premises, at its option, take over and enjoy the benefits of the Licenses, exercise Mortgagor's rights under the Additional Collateral, and perform all acts in the same manner and to the same extent as Mortgagor may do. In connection with the foregoing powers, and without limiting the same, Mortgagee may effect new Sales Agreements, Contracts and Licenses, cancel or surrender existing Sales Agreements, Contracts or Licenses, alter or amend the terms of and renew existing Sales Agreements, Contracts and Licenses, and make concessions to Purchasers, Governmental Authorities and Contractors. Mortgagor hereby releases any and all claims which it has or may have against Mortgagee arising out of such performance by Mortgagee.

(f)     All of the foregoing powers herein granted to Mortgagee shall be liberally construed. Mortgagee need not expend its own funds in the exercise of such powers, but if it does, such amounts shall be considered as advances for and on behalf of Mortgagor secured by this Mortgage and also evidenced and secured by the Promissory Note and the other Collateral Loan Documents given in connection herewith and also secured by any and all future advance agreement(s) made pursuant to this Mortgage and any and all promissory note(s) executed and delivered in connection therewith. Any amounts so advanced shall bear interest at the then current rate prescribed in the Promissory Note or promissory note(s) executed and delivered in connection with any future advance agreement made pursuant hereto.

(g)     Mortgagor shall, upon request of Mortgagee, furnish Mortgagee a complete list of all Sales Agreements, Contracts and License. Further, if requested, Mortgagor shall deliver to Mortgagee executed or certified copies of all Sales Agreements, Contracts, Licenses and other written agreements, correspondence and memoranda between Mortgagor (and its predecessors in title) and Purchasers, Contractors and Governmental Authorities, setting forth the contractual and other arrangements between them.

(h)     Nothing herein contained shall be construed as making Mortgagee a mortgagee in possession, or as constituting a waiver or suspension by Mortgagee of its rights to enforce payment of the debts under the terms hereof, the Promissory Note, or the other Collateral Loan Documents. Mortgagee is not the agent, partner or joint venturer of Mortgagor or of any of the Purchasers, Contractors or Governmental Authorities.

14.     **Assignment of Rents and Leases.** Mortgagor hereby conveys, transfers and assigns unto Mortgagee, its successors and assigns, all the rights, interest and privileges which Mortgagor, as lessor, has and may have in the leases now existing or hereafter made and affecting the Premises, as said leases may have been, or may from time to time be hereafter, modified, extended and renewed, together with all accounts, rents, income, deposits and profits due and becoming due therefrom (individually, a "Lease" and, collectively, the "Leases"). Mortgagor further covenants and agrees as follows:

(a)     This assignment of leases is made as additional security for the payment of the Note (and all extensions or modifications thereof). Mortgagor and Mortgagee intend for this assignment to be a present, absolute, unconditional and irrevocable assignment of the Leases and all accounts, rents, income, deposits and profits due and becoming due therefrom. The Mortgagee grants to the Mortgagor a conditional license, subject to the Mortgagee's rights under this Mortgage, to collect the rents, income, deposits and profits from the Leases, in trust for the Mortgagee, and to use them solely in accordance with the terms of this Mortgage. It is expressly understood and agreed by Mortgagor that before default occurs under the terms of the Note and this Mortgage, Mortgagor shall have the right to collect said rents, income and profits from the Leases and to retain, use and enjoy the same. Anything to the contrary notwithstanding, Mortgagor hereby assigns to Mortgagee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency or reorganization proceedings in any State or Federal court and any and all payments made by lessees in lieu of rent. Mortgagor hereby appoints Mortgagee as its irrevocable attorney-in-fact to appear in any action, to collect any such award or payment, and/or to perform and discharge any and all obligations and undertakings of Mortgagor under any Lease.

11

(b) Mortgagor, in the event of default in the performance of any of the terms and conditions of the Note and this Mortgage, hereby authorizes Mortgagee, at its option and to the extent permitted by law, to enter and take possession of the Premises and to manage and operate the same, to collect all or any rents accruing from the Leases, to let or relet said Premises or any part thereof, subject to the terms of the Leases, to cancel and modify Leases, evict tenants, bring or defend any suits in connection with the possession of said Premises in its own name or Mortgagor's name, make repairs as Mortgagee deems appropriate, and perform such other acts in connection with the management and operation of said Premises as Mortgagee, in its discretion, may deem proper.

(c) The receipt by Mortgagee of any rents, issues or profits after the institution of foreclosure proceedings shall not cure such default nor affect such proceedings or any sale pursuant thereto.

(d) Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any of the Leases, and Mortgagor hereby agrees to indemnify Mortgagee for, and to save it harmless from, any and all liability arising from any of said Leases, and this Mortgage shall not place responsibility for the control, care, management or repair of said Premises upon Mortgagee, or make Mortgagee responsible or liable for any negligence in the management, operation, upkeep, repair or control of said Premises resulting in loss or injury or death to any tenant, licensee, employee or stranger.

(e) Mortgagor warrants and represents that:

    (i) Each Lease is in full force and effect;

    (ii) No default exists on the part of the lessee thereunder or Mortgagor;

    (iii) No rent has been collected in advance other than as specified in each Lease;

    (iv) No Lease nor any interest therein has been previously assigned or pledged;

    (v) No lessee under a Lease has any defense, setoff or counterclaim against Mortgagor;

    (vi) All rent due to date under the Leases has been collected and no concession has been granted to any lessee in the form of a waiver, release, reduction, discount or other alteration of rent due or to become due; and

    (vii) Mortgagor has full right and lawful authority to assign the Leases and the rents, income and profits due or to become due thereunder.

(f) Mortgagor agrees:

12

(i) Mortgagor shall not collect any rents and profits in advance of the date on which they become due under the terms of a Lease;

(ii) Mortgagor shall not enter into any new Leases, terminate any Lease (except pursuant to the terms of the Lease upon a default by the lessee) or modify or amend a Lease or any of the terms thereof, or grant any concessions in connection therewith or accept a surrender thereof, without the prior written consent of Mortgagee;

(iii) Mortgagor shall, immediately upon execution thereof, forward any new or additional lease to Mortgagee;

(iv) Mortgagor shall faithfully perform and discharge all obligations of the lessor under the Leases and shall give prompt written notice to Mortgagee of any notice of Mortgagor's default received from a lessee or any other person together with a photocopy of such notice;

(v) Mortgagor shall give Mortgagee written notice immediately upon entering into any lease or other occupancy agreement of any part of the Premises and shall promptly provide to Mortgagee a true and correct copy of such lease or other occupancy agreement; and

(vi) Mortgagor shall deliver to Mortgagee, within twenty (20) days after request therefor, duly executed estoppel certificates from each lessee under the Leases, attesting that each Lease is in full force and effect with no defaults thereunder on the part of any party, that no rental (exclusive of any advance rent given or as constituting a security deposit) has been paid more than one month in advance, and that the lessee claims no defense or offset against the full and timely performance of Mortgagor's obligations under the Lease.

(g) Mortgagor hereby authorizes Mortgagee to give notice in writing of this assignment at any time to any lessee under any of the Leases.

(h) The rights, options, powers and remedies to Mortgagee under this paragraph 14 shall be cumulative, and no one or more of them shall be exclusive over the other or others, or of any right or remedy now or hereafter given or allowed by law, including, without limitation, all rights under Chapter 697.07, Florida Statutes, regarding assignment of rents and all rights under Chapter 702, Florida Statutes, regarding foreclosure actions. In no event shall reference to the foregoing statutes diminish, alter, impair or affect any other rights and remedies of Mortgagee provided in this Mortgage and the Collateral Loan Documents. This assignment of rents shall be fully operative without regard to the value of the Premises or without regard to the adequacy of the Premises to serve as security for the obligations owed by Mortgagor to Mortgagee, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Mortgagor waives any notice of default or demand for turn over of rents by Mortgagee, together with any rights under Section 697.07 to apply to a court to deposit the rents into the registry of the court or such other depository as the court may designate.