## Exclusive Right of Sale Listing Agreement For Commercial Property
### FLORIDA ASSOCIATION OF REALTORS®

This is a legal and binding contract on all parties hereto, including their heirs, legal representatives, successors and assigns and if it is not fully understood, OWNER should seek competent legal advice.

1. This contract made and entered into by and between: __Standard Property Developement LLC__ ("OWNER" which term shall include singular and plural) and __Stirling Sothebys International Realty__ ("BROKER")

OWNER hereby gives BROKER for a period of time commencing the __7th__ day of __June 2006__, and terminating the __7th__ day of __June 2007__, or any renewal hereof ("Termination Date") THE EXCLUSIVE RIGHT AND AUTHORITY to find a purchaser of the real property and/or inventory or assets, arrange a merger, lease, lease with option to purchase, rent or exchange for the herein described property and personalty described in Paragraph 1(A). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of the Agreement will automatically extend through the date of the actual closing of the sales contract.

   A. Description of real property:
   Street address: __8688 Palm Parkway__

   Legal Description:
   Vista center replat 18/117 beg sw cor lot 2 run e 354.96 ft n 220.3 ft e 135 ft n 370 ft w 237.82 ft wly 244.94 ft s 241.49 ft e 28.31 ft s 200.67 ft s 176.23 ft to pob

   B. Description of personal property (including machinery, inventory, supplies and equipment): Upon the following price and terms:
   Venturella Resorts and Spa 168 hotel condo units, See attached price list (subject to change) Variable pricing based on unit size and location.

   Price: $_____
   Terms: (include special financing terms here)
   10% non refundable buyer reservation deposit or irrevocable letter of credit, cash or conventional bank financing.

   C. Mortgage Information: existing mortgage with $_____ Balance; _____%, Payable $_____, Per Month P.I. $_____ Approximately _____ years to run.

   D. Interest on encumbrances, taxes, insurance premiums and rents shall be adjusted pro rata at the date of closing. Improvement liens, if any, will be discharged by the OWNER. The usual and customary time to be allowed for examination of title and closing of the transaction. Personal property to be included in the purchase price shall include all fixed equipment, and plants and shrubbery now installed on said property. It is understood that the sale is to include: ☐ the goodwill and name as a going concern; ☒ furniture, fixtures and equipment as per attached inventory; ☐ advertising; contract rights; ☐ leases; ☐ licenses; ☒ rights under any agreement for interests except as stated herein. Seller agrees to comply with the Bulk Transfer Act of the Uniform Commercial Code, at his own expense when applicable. Seller shall convey title to personal property assets by Bill of Sale Absolute giving good marketable title unless the sale is a secured transaction, in which case a Security agreement will be required by the purchaser. The OWNER agrees at its expense to provide (a) preparation of and delivery to the Purchaser of a warranty deed or other _____ conveying a marketable title free and clear of all liens except encumbrances of record assumed by the Purchaser as part of the purchase price (public utility easements); (b) abstract of title or binder for marketable title insurance policy; (c) documentary stamps for the deed; (d) Seller's attorney fees; (e) recording fee for satisfaction of existing mortgage is paid off.

2. BROKER agrees:

   A. To process Property through Multiple Listing Services.
   B. To inspect and become familiar with the Property and promote its sale;
   C. To present all offers and counter-offers in a timely manner regardless of whether the Property is subject to a contract for sale;
   D. To advertise Property as BROKER deems advisable in newspapers, publications or other media;
   E. To the extent not in conflict with BROKER'S duties under paragraph 6 below, to furnish information requested by another agent or licensed real estate broker and to assist cooperating broker in closing transaction on the Property when requested.

F. To take all reasonable precautions to prevent damage in the process of showing Property or permitting others to show Property, but BROKER accepts no responsibility for loss or damage; and

G. To ☐ utilize ☒ not utilize the name of the OWNER in connection with marketing or advertising of the Property either before or after sale;

H. To represent the OWNER, and thereby is authorized to accept, receipt for and hold all monies paid or deposited as a binder or deposit on the purchase of the Property, and the duties of the BROKER relative thereto shall be in accordance with the laws of the State of Florida and regulations of the Florida Real Estate Commission; and

3. OWNER agrees:

A. To pay the BROKER compensation in accordance with the terms of this Agreement set forth in paragraph 4 below;

B. To give BROKER permission to pay cooperating brokers, except when not in OWNER'S best interest: ☒ and to offer compensation in the amount of _____8%_____ % of the purchase price or $_____ to buyer's agents, who represent the interest of the buyers, and not the interest of OWNER in a transaction; ☒ and to offer compensation in the amount of _____0_____ % of the purchase price or $_____ to a broker who has no brokerage relationship with the buyer or OWNER; ☒ and to offer compensation in the amount of _____3_____ % of the purchase price or $_____ to transaction brokers for the buyer; ☐ None of the above (if this is checked, the Property cannot be placed in the MLS.)

C. In the event of an exchange, to permit BROKER to represent all parties and collect compensation or commissions from them. BROKER is authorized to pay other brokers such compensation or commissions in any manner acceptable to brokers.

D. To pay compensation due BROKER if Property, or any interests therein is sold, leased or contracted to be sold or leased or otherwise transferred within _180_ days after Termination Date to anyone to whom the Property was submitted by or through the efforts of any BROKER or the OWNER before the Termination Date. However, the obligation to pay such compensation to BROKER shall cease if a bona fide Exclusive Right of Sale Contract is entered into after Termination Date with another licensed BROKER and a sale, lease, exchange or contract therefor, of the Property is made during the term thereof;

E. To notify the BROKER in writing before leasing, mortgaging or otherwise encumbering the Property and to provide details of any such encumbrances;

F. To refer immediately to BROKER all inquiries relative to the purchase or leasing of the Property.

G. To warrant accuracy of information set forth herein and on the data sheets, exhibits and addenda attached hereto and to indemnify and save harmless BROKER and those relying thereon for damages resulting from errors contained therein;

H. To furnish BROKER with keys to the Property and make the Property available for BROKER to show during reasonable hours;

I. To pay any applicable sales tax when due;

J. To obtain any information relating to the present mortgage or mortgages on the Property including existing balance, interest rate, monthly payment, balance in escrow and payoff amount;

K. To authorize BROKER to place "For Sale", "Under Contract" OR "Sale Pending" signs upon the Property and to remove the signs upon termination of this Agreement or sale of the Property; and

L. To otherwise cooperate with the BROKER in carrying out the purpose of this Contract.

M. Provide all reasonable financial information, including but not limited to balance sheet, etc.

4. **Compensation:** OWNER agrees to pay BROKER as follows, including paying all taxes, if any, on BROKER'S services, if BROKER, any agent of BROKER or a Buyer's Broker procures a buyer who is ready, willing, and able to purchase, lease, or exchange the property, and/or inventory of the OWNER, and/or assets of the business whichever is applicable, on the terms of this Contract or any other terms acceptable to OWNER. The stated compensation shall be paid to the BROKER in the event of a sale, exchange, or transfer of any interest including stocks or shares in the Property during the term of this contract, whether such transaction, sale or exchange be accomplished by the BROKER or any other person or entity including OWNER; (complete whichever fee arrangements apply):

A. (CHECK ONE): ☒ _8%_ % of gross sales price, or ☐ $_____ including fees BROKER may pay to cooperating brokers. OWNER shall pay this fee at the time, and from the proceeds, of closing. If OWNER transfers the Property for nominal consideration, OWNER shall pay $_____ on the date OWNER transfers title.

B. In the event the Property is leased during the term of this Agreement, OWNER shall pay to BROKER a leasing fee of $_____ or _____% of gross sales price. The fee shall be paid to BROKER when BROKER, OWNER or anyone working by or through BROKER produces a tenant acceptable to OWNER. If the tenant purchases the Property at any time, even if such a purchase is subsequent to the expiration date of this Agreement, BROKER shall be paid the stated compensation set forth in Paragraph 4A at the time of closing.

C. In the event that deposit(s) be retained, __50__ % thereof, but not exceeding the compensation provided above, shall be paid to the BROKER as full consideration for BROKER(s) services, including costs expended by BROKER, and the balance shall be paid to OWNER. If the transaction shall not be closed because of refusal or failure of OWNER to perform, the OWNER shall pay the said compensation in full to BROKER upon demand.

5. **OWNER understands** that this Contract does not guarantee the sale of the Property but that it does assure OWNER that BROKER will make earnest and continued effort to sell the Property until this Contract is terminated.

**6. (CHECK ONE) OWNER** ☒ **DESIRES** ❏ **DOES NOT DESIRE UTILIZATION OF A LOCKBOX SYSTEM. IN THIS REGARD, OWNER HAS BEEN INFORMED THAT THROUGH THE USE OF A LOCKBOX SYSTEM, THE PROPERTY MAY BE MORE READILY SHOWN TO PROSPECTIVE BUYERS, BUT THAT PERSONAL PROPERTY OF OWNER, MAY, THEREFORE, BE MORE SUSCEPTIBLE TO THEFT OR DAMAGE. OWNER AGREES THAT THE LOCKBOX, IF UTILIZED, WILL BE FOR THE BENEFIT OF OWNER AND RELEASES BROKER AND THOSE WORKING BY OR THROUGH BROKER, AND THE BROKER(S) LOCAL BOARD(S) AND/OR ASSOCIATIONS OF REALTORS FROM ANY LIABILITY AND RESPONSIBILITY IN CONNECTION WITH ANY LOSS THAT MAY OCCUR. THE BROKER ADVISES AND REQUESTS THE OWNER TO SAFEGUARD OR REMOVE ANY VALUABLES NOW LOCATED ON THE PROPERTY AND TO VERIFY THE EXISTENCE OF OR OBTAIN PROPER PROPERTY INSURANCE. SHOULD A TENANT BE IN THE PROPERTY, THE SELLER SHOULD NOTIFY THE TENANT IN WRITING OF THE USE OF A LOCKBOX.**

**7.** OWNER authorizes BROKER, upon execution of a contract for sale and purchase, to notify the Multiple Listing Service of the pending sale and after closing of the sale to disclose sale information including the sales price to the Multiple Listing Service, other REALTORS and appraisers.

**8.** In the event any litigation arises out of this Contract, the prevailing party shall be entitled to recover reasonable attorney fees and costs.

**9. TERMINATION:** This Contract shall terminate as of the Termination date unless sooner terminated as provided below:
   A. If OWNER decides, because of a bona fide change in circumstances, not to sell the Property, this Contract shall be conditionally terminated as of the date OWNER executes a Withdrawal Agreement and pays BROKER a cancellation fee of $20,000. If OWNER contracts for sale to anyone after the agreed early termination date but on or before the original Termination Date, then the early termination provided by this paragraph shall be voidable by BROKER and OWNER shall pay BROKER the compensation stated in paragraph 4, less the cancellation fee paid pursuant to this paragraph.

   B. If at any time during the term of this Contract, BROKER determines that the proceeds from the sale of the Property which OWNER would reasonably expect to receive will not be sufficient to pay the compensation due BROKER, then this Contract may be terminated by BROKER upon three days written notice to OWNER.

**10. MANDATORY ARBITRATION: ATTORNEYS' FEES:** All claims, disputes, and other matters in question between the parties arising out of or relating to this Contract, or any addendum or addition, SHALL BE DECIDED BY MANDATORY BINDING ARBITRATION in accordance with the Florida Arbitration Code, Chapter 682, Florida Statutes. Each party shall select any arbitrator and the two arbitrators so chosen shall choose a third arbitrator. The three arbitrators so chosen shall hear and determine the matter. THIS AGREEMENT TO ARBITRATE SHALL BE SPECIFICALLY ENFORCEABLE UNDER THE FLORIDA ARBITRATION CODE, and judgment upon the award rendered by the ARBITRATORS may be entered by the Court having jurisdiction thereof. In connection with any such arbitration or litigation, the prevailing party shall be entitled to recover all fees and costs incurred including reasonable attorneys' fees. OWNER has been advised and consents to permit BROKER to file a lien against the Property, if applicable, for unpaid real estate commissions, pursuant to Section 475.42(i)(j), Florida Statutes, which lien shall be released only at such time as the full commission and all other sums due under this Agreement, including interest, attorneys fees and costs, have been paid in full.

**11. COMMERCIAL LIEN ACT DISCLOSURE:** The Florida Commercial Real Estate Sales Commission Lien Act provides that when a BROKER has earned a commission by performing licensed services under a brokerage agreement with you, the BROKER may claim a lien against your net sales proceeds for the BROKER'S commission. The BROKER'S lien rights under the act cannot be waived before the commission is earned.

Date: _____ Seller: __Geoge Venturella__ Tax ID No: __ __ __ - __ __ - __ __ __ __
(print name)

Telephone #'s: Home _____ Work _____ Cell __708-417-8502__ Fax: _____

Address: __300 s orange Ave ste 1000__ E-mail: _____

Date: _____ Seller: __Steve Parmee__ Tax ID No: __ __ __ - __ __ - __ __ __ __
(print name)

Telephone #'s: Home __407-909-0745__ Work _____ Cell __407-902-7361__ Fax: __407-909-0744__

Address: __6533 Cartmel Lane    windermere Fl    34786__ E-mail: _____

Date: _____ Authorized Listing Associate or Broker: __John Gordon and Chocky Burks__
(print name)

Brokerage Firm Name: __Stirling Sothebys International Realty__ Telephone: __407-992-8900__

Address: __7722 SAND LAKE ROAD ORLANDO FL 32819__

_____           _____
Signature of Seller                          Signature of Seller

_____
Signature of Associate or Broker

| Copy returned to **Seller** on the _____ day of _____, _____ by: ❏ personal delivery ❏ mail ❏ fax. |

ERS-3cp   Rev. 10/05   © 2005   Florida Association of REALTORS⁵   All Rights Reserved                          Page 3 of 3

Addendum 2 to Exclusive right of Sale Listing Agreement for Commercial Property

This document is the second addendum to the contract made and entered into by and between Standard Property Development LLC, (Owner) and Stirling Sotheby's International Realty, (Broker).

The parties hereto further agree to the terms of this addendum to the Exclusive Right of Sale Listing Agreement for Commercial Property between Owner and Broker dated June 7, 2006.

1. The terms of this Exclusive Right of Sale Listing Agreement Addendum are agreed to control over any Exclusive Right of Sale Listing Agreement to which this addendum specifically refers or to which it may be physically attached.

2. The contract term shall be one (1) year from contract execution.

3. Upon thirty (30) day written notice by either Owner or Broker, either party may cancel the Contract with due cause.

4. Upon notice of deficiencies, both Owner and Broker mutually agree to a fifteen (15) day corrective time period from date of notice

IN WITNESS WHEREOF, the parties to said lease have executed this lease addendum by affixing their signatures on the day and year first above written.


Standard Property Development LLC
By: _____
Name: George Venturella
Title: Owner/Director

Standard Property Development LLC
By: _____
Name: Steve Parmee
Title: Owner/Director


Stirling Sotheby's International Realty
By: _____
Name: John Gordon
Title: Project Manager

Stirling Sotheby's International Realty
By: _____
Name: Chocky Burks
Title: Project Manager