ELECTRONICALLY FILED
February 13, 2007

1  STUTMAN, TREISTER & GLATT, P.C.
   FRANK A. MEROLA
2  (CA State Bar No. 136934)
   EVE H. KARASIK
3  (CA State Bar No. 155356)
   ANDREW M. PARLEN
4  (CA State Bar No. 230429), Members of
   1901 Avenue of the Stars, 12th Floor
5  Los Angeles, California 90067
   Telephone: (310) 228-5600
6  Facsimile: (310) 228-5788
   Email:      fmerola@stutman.com
7              ekarasik@stutman.com
               aparlen@stutman.com
8  Counsel for the Official Committee Of

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email:      jshea@sheacarlyon.com
            ccarlyon@sheacarlyon.com
            ssherman@sheacarlyon.com

9  Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

10              **UNITED STATES BANKRUPTCY COURT**
                       **DISTRICT OF NEVADA**

| | |
|---|---|
| 11  In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>12                    Debtor. | ) BK-S-06-10725-LBR<br>) Chapter 11<br>) |
| 13  In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>14                    Debtor. | ) BK-S-06-10726-LBR<br>) Chapter 11<br>) |
| 15  In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>16                    Debtor. | ) BK-S-06-10727-LBR<br>) Chapter 11<br>) |
| 17  In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>18                    Debtor. | ) BK-S-06-10728-LBR<br>) Chapter 11<br>) |
| 19  In re:<br>USA SECURITIES, LLC,<br>20                    Debtor. | ) BK-S-06-10729-LBR<br>) Chapter 11<br>) |

20  Affects
21  ☐ All Debtors
    ☐ USA Commercial Mortgage Co.
22  ☐ USA Securities, LLC
    ☐ USA Capital Realty Advisors, LLC
23  ☐ USA Capital Diversified Trust Deed
    ☒ USA First Trust Deed Fund, LLC

Date:  March 15, 2007
Time:  9:30 a.m.

24
25       **SIXTH OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY**
         **SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC –**
26       **CLAIMS BASED ON PREPETITION EQUITY SECURITY INTERESTS OF USA**
         **CAPITAL FIRST TRUST DEED FUND, LLC (AFFECTS DEBTOR USA CAPITAL**
27                    **FIRST TRUST DEED FUND, LLC)**

28

406007v7

The Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") hereby submits this "Sixth Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC – Claims Based on Prepetition Equity Security Interests of USA Capital First Trust Deed Fund, LLC" (the "Objection"), pursuant to which the FTDF Committee objects to the proofs of claim referenced herein (the "Claims on Equity Interests") on the grounds that they do not reflect "claims" against USA Capital First Trust Deed Fund, LLC ( the "FTDF") as that term is defined in Bankruptcy Code section 101(5).[1] Rather, the Claims on Equity Interests reflect "equity security" interests based on the membership interests in the FTDF. Accordingly, the Claims on Equity Interests should be reclassified as proofs of interest in the amounts set forth on Exhibit "1" to this Objection. Furthermore, the Claims on Equity Interests should be disallowed to the extent they assert amounts in excess or other than those reflected in the Debtors' books and records as the amount of a particular FTDF Member's (as defined herein) interest in the FTDF as of the Petition Date, which amounts are set forth on Exhibit "1." By this Objection, the FTDF Committee does not seek to prejudice the rights of any FDTF Member who filed a Claim on Equity Interest (the "Claimants") to recover from the FTDF estate on account of his or her membership interest in the FTDF but simply seeks the entry of a Court order that would (a) properly classify the Claims on Equity Interests that have been filed by the Claimants as proofs of interest in the amount of each Claimant's respective equity interest in the FTDF and (b) disallow the Claims on Equity Interests to the extent that they assert amounts in addition to or other than each Claimant's equity interest in

---

[1] This Objection applies only to those claims filed by FTDF Members who did not also file proofs of interest in the FTDF case. The FTDF Committee is filing two other objections to claims and/or proofs of interest substantially contemporaneously herewith: (1) The "Seventh Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC – Amount of Proofs of Interest," which is an objection to certain proofs of interest filed in the FTDF case; and (2) the "Eighth Omnibus Objection Of The Official Committee Of Equity Security Holders Of USA Capital First Trust Deed Fund, LLC – Proofs Of Claim And Proofs Of Interest Filed By Members Of USA Capital First Trust Deed Fund, LLC Who Filed Both Proofs Of Claim And Proofs Of Interest" which is an objection to proofs of claim and proofs of interest filed by FTDF Members who filed both proofs of claim and proofs of interest in the FTDF case.

1    the FTDF as of the Petition Date or are duplicative of other Claims on Equity Interests.  This will

2    effectuate a pro rata distribution to all similarly situated equity holders.

3              This Objection is made pursuant to section 502 of title 11 of the United States

4    Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure

5    ("Bankruptcy Rules"), and Rule 3007 of the Local Rules of Bankruptcy Practice (the "Local

6    Rules") and is based upon the points and authorities which follow, Exhibit "1" attached hereto,

7    the "Declaration of Matthew Kvarda" (the "Kvarda Declaration") filed in support hereof, the

8    pleadings referenced by docket number herein, judicial notice of which is respectfully requested,

9    and any oral argument of counsel to be presented at the time of the hearing on this Objection.

10             Based on the foregoing, the FTDF Committee requests that the Court enter an

11    order (i) sustaining the Objection; (ii) reclassifying the Claims on Equity Interests as proofs of

12    interest in the amounts set forth on Exhibit "1" hereto; (iii) disallowing the Claims on Equity

13    Interests to the extent they exceed the amounts set forth on Exhibit "1" hereto; and (iv) granting

14    such other and further relief as the Court deems just and proper.

15

16                                            Respectfully submitted:

17

18    Dated:  February 13, 2007          _____

19                                            Andrew M. Parlen, Esq.
                                         Stutman, Treister & Glatt
20                                            Professional Corporation
                                         Counsel to the Official Committee of Equity
21                                            Security Holders of USA Capital First Trust Deed
                                         Fund, LLC

22

23

24

25

26

27

28

406007v7                                    3

## POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS[2]

**A.    General Background**

1.    On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC (the "DTDF"), and the FTDF (collectively with USA Mortgage, USA Securities, USA Realty, and the DTDF, the "Debtors") filed voluntary petitions for relief under chapter 11 the Bankruptcy Code.

2.    Thereafter, on May 9, 2006, this Court entered its Order Regarding Joint Administration Without Substantive Consolidation [docket no. 184] whereby the Court ordered that the Chapter 11 Cases be jointly administered under the name of USA Commercial Mortgage Company, bankruptcy case number BK-S-06-10725-LBR.

3.    On May 10, 2006, the Office of the United States Trustee (the "U.S. Trustee") appointed four separate committees in these Chapter 11 Cases, including the FTDF Committee.

4.    The FTDF Committee represents the interests of those persons who invested in the FTDF (the "FTDF Members").  FTDF Members hold equity, or membership, interests in the FTDF.

5.    On June 15, 2006, each of the Debtors filed their "Summary of Schedules and Statement of Financial Affairs" (collectively, the "Schedules") pursuant to Bankruptcy Code

---

[2]    The Statement of Facts is largely duplicative of the Statement of Facts sections included in the "Seventh Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC – Amount of Proofs of Interest" and "Eighth Omnibus Objection Of The Official Committee Of Equity Security Holders Of USA Capital First Trust Deed Fund, LLC – Proofs Of Claim And Proofs Of Interest Filed By Members Of USA Capital First Trust Deed Fund, LLC Who Filed Both Proofs Of Claim And Proofs Of Interest," both of which are being filed substantially contemporaneously herewith.  The FTDF Committee has chosen to repeat the Statement of Facts sections in all of these objections to claims and/or interests because most of the parties subject to these objections will only be served with one of the objections.

406007v7                                                4

1    section 521(a)(1)(B), based upon their books and records as of the Petition Date.

2    6.    On September 14, 2006, the Court entered its Order Setting Deadline to

3    File Proofs of Claim and Proofs of Interest [Docket No. 1280] setting the deadline of November

4    13, 2006, to file proofs of claim and proofs of interest in the Chapter 11 Cases.

5    7.    On September 15, 2006, the Court approved the "Stipulated Order re

6    Proofs of Interest" [docket no. 1293], whereby the Debtors, the FTDF Committee, and the DTDF

7    Committee stipulated that (1) the list of members with interests in the FTDF and the DTDF

8    provided by the Debtors to BMC Group, the Court-approved noticing agent, shall be deemed the

9    list of equity security holders filed pursuant to Bankruptcy Rule 1007(a)(3) and shall constitute

10    prima facie evidence of the validity and amount of equity security interests in the FTDF and

11    DTDF; (2) each holder of such interests shall be given notice of the Debtor in which it has an

12    interest and, if applicable, whether that interest is alleged to be contingent or disputed; (3) it shall

13    not be necessary for the holders of such interests to file a proof of interest; and (4) the holders of

14    such interests shall be deemed to have filed a proof of interest in the amount shown on the lists

15    provided by the Debtors.

16    8.    On or about September 18, 2006, the Debtors mailed proof of claim and

17    proof of interest forms, together with instructions explaining that (i) if any equity interest holder

18    (such as a FTDF Member) wished to assert a claim (as opposed to an equity interest) against any

19    of the Debtors, then that equity holder must file a proof of claim but that proofs of claim should

20    only be filed in those instances where the claimant believed one of the Debtors owed the

21    claimant monies for such things as damages, rescission, reimbursement or contribution; and (ii)

22    if the equity interest holder had no disagreement with the amount indicated on the proof of

23    interest form included in the mailing, then that equity interest holder need take no action and his

24    or her proof of interest in the FTDF would be deemed allowed in the amount shown on the proof

25    of interest form.

26    9.    On November 15, 2006, the Debtors filed the "Debtors Third Amended

27    Joint Chapter 11 Plan Of Reorganization" (the "Plan"). Thereafter, at a hearing held on

28    December 20, 2006, the Court orally confirmed the Plan, and on January 8, 2007, the Court

406007v7                                                5

1 entered an order confirming the Plan [docket no. 2376].

2       **B.      The Debtors' Businesses**

3       10.      As of the Petition Date, USACM was acting as the loan servicer for 115
4 separate loans (the "Serviced Loans") having a combined outstanding loan balance of
5 approximately $960 million. See Debtors' First Amended Disclosure Statement For Debtors'
6 Third Amended Joint Plan Of Reorganization (the "Disclosure Statement") [docket no. 1798] at
7 24.

8       11.      According to the Debtors, there are approximately 3,600 investors (the
9 "Direct Lenders") whose names appear as a "Lender" in the documents for one or more of the
10 Serviced Loans. Id. Among the Direct Lenders are the FTDF and the DTDF (collectively, the
11 "Funds").

12       12.      As of July 31, 2006, the FTDF had an interest as a Direct Lender in 47 of
13 the Serviced Loans, and the aggregate outstanding balance owed to FTDF was $62,653,825. Id.
14 at 26. All of the FTDF's loans were originated and are serviced by USACM. Id.

15       13.      There are approximately 950 FTDF Members, each of whom own
16 membership interests in the FTDF. Id. It bears emphasizing that the FTDF, not the FTDF
17 Members, is a lender on the Serviced Loans, and its investments, not those of the FTDF
18 Members, are secured by deeds of trust. FTDF Members are only entitled to receive
19 distributions to the extent that the profits of the FTDF exceed its losses. In other words, FTDF
20 Members hold equity security interests in the FTDF.

21       14.      FTDF offered four classes of membership, Class A, B, C and D. Class A
22 members agreed to commit their capital contributions for a period of twelve (12) months and
23 were to receive the "Class A Preferred Return" defined as "nine percent (9%) per annum, or such
24 other percentage determined by the manager from time to time, in its sole and absolute
25 discretion, without reinvesting." See Second Amended and Restated Operating Agreement of
26 FTDF, dated as of June 1, 2003, ("FTDF Operating Agreement") ¶¶ 1.13, 1.14, & 1.15 [docket
27 no. 1591]. Class B members agreed to commit their capital contributions for a period of twenty-
28 four (24) months and were to receive the "Class B Preferred Return" defined as "ten percent

1    (10%) per annum, or such other percentage determined by the manager from time to time, in its

2    sole and absolute discretion, without reinvesting." See FTDF Operating Agreement ¶¶ 1.16,

3    1.17, & 1.18. Class C members agreed to commit their capital contributions for a period of

4    thirty-six (36) months and were to receive the "Class C Preferred Return" defined as "eleven

5    percent (11%) per annum, or such other percentage determined by the manager from time to

6    time, in its sole and absolute discretion, without reinvesting." See FTDF Operating Agreement

7    ¶¶ 1.19, 1.20, & 1.21. The Class D member of FTDF is USA Realty, and does not receive the

8    returns described above for Class A members, Class B members, or Class C members.

9           15.    In the postpetition period, the FTDF has made two interim distributions to

10    FTDF Members in accordance with the FTDF Operating Agreement, and it is anticipated that a

11    third interim distribution may be made in the near future.

12    **C.    Analysis of Proofs of Claim Filed Against the FTDF**

13           16.    On August 1, 2006, the FTDF Committee filed three objections to claims:

14    (i) the Omnibus Objection of the Official Committee of Equity Security Holders of USA Capital

15    First Trust Deed Fund, LLC to Misfiled Claims [Docket No. 1064]; (ii) the Omnibus Objection

16    of the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund,

17    LLC to Claims Based on Prepetition Equity Security Interests of USA Capital First Trust Deed

18    Fund, LLC [Docket No. 1066]; and (iii) the Objection of the Official Committee of Equity

19    Security Holders of USA Capital First Trust Deed Fund, LLC to Proof of Claim Filed by

20    Prospect High Income Fund, ML CBOIV (Cayman) Ltd., Pamco Cayman, Ltd., Pam Capital

21    Funding, L.P., Highland Crusader Fund, Ltd., and PCMG Trading Partners XXIII, L.P. (the

22    "Highland Capital Claim") [Docket No. 1068]. The two omnibus objections were sustained by

23    orders of the Court dated September 14, 2006 [Docket Nos. 1278 and 1279]. The Highland

24    Capital claim was later disallowed by order of the Court dated October 26, 2006 [Docket No.

25    1674].

26           17.    On December 22, 2006, the FTDF objected to three proofs of claim filed

27    against the FTDF by the Pension Benefit Guaranty Corporation (the "PBGC") [Docket No.

28    2254]. Subsequently, on January 25, 2007, the PBGC stipulated to withdraw its claims against

406007v7                 7

1  the FTDF [Docket No. 2560].

2      18.    On December 26, 2006, the FTDF Committee filed a claim objection to

3  FTDF claim number 120 filed by Standard Property Development, LLC, which objection is

4  pending. A hearing was held on this objection on January 31, 2007, at which time the objection

5  was continued to February 15, 2007.

6      19.    On December 27, 2006, the FTDF Committee filed two omnibus

7  objections to claims: (i) the Second Omnibus Objection of the Official Committee of Equity

8  Security Holders of USA Capital First Trust Deed Fund, LLC to Misfiled Claims [Docket No.

9  2285]; and (ii) the Omnibus Objection Of The Official Committee Of Equity Security Holders

10 Of USA Capital First Trust Deed Fund, LLC To Claims Superseded By Compromise Contained

11 In Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization (As Modified) [Docket No.

12 2295]. These objections were sustained by orders of the Court dated February 7, 2007 [Docket

13 Nos. 2709 and 2711].

14     20.    As of the filing of this Objection, 69 proofs of claim filed against the

15 FTDF remain outstanding. The FTDF Committee has analyzed these proofs of claim and has

16 determined that thirty-six (36) of these proofs of claim are Claims on Equity Interests filed by

17 FTDF Members[3] and, therefore, do not reflect "claims" as that term is defined in Bankruptcy

18 Code section 101(5). Rather, a review of the Claims on Equity Interests themselves, the FTDF's

19 Operating Agreement, and the Schedules filed by the FTDF makes it abundantly clear that the

20 Claims on Equity Interests are based on the prepetition membership interests in the FTDF, which

21 constitute prepetition "equity security" interests of the FTDF. As such, the FTDF Committee

22 believes that the Claims on Equity Interests should be reclassified as proofs of interest.

23

24  [3]   As noted above, only proofs of claim filed by FTDF Members who did not also file proofs of

25  interest in the FTDF case are subject to this Objection. Proofs of claim filed by FTDF
    Members who also filed proofs of interest in the FTDF case are subject to the "Eighth

26  Omnibus Objection Of The Official Committee Of Equity Security Holders Of USA Capital
    First Trust Deed Fund, LLC – Proofs Of Claim And Proofs Of Interest Filed By Members Of

27  USA Capital First Trust Deed Fund, LLC Who Filed Both Proofs Of Claim And Proofs Of
    Interest" that is being filed by the FTDF Committee substantially contemporaneously

28  herewith.

21.    A detailed listing of the Claims on Equity Interests is attached hereto as **Exhibit "1"** and is incorporated herein by reference. Exhibit "1" lists the following information for each Claim on Equity Interests:  (1) the claim number; (2) the name of the Claimant as listed on each Claim on Equity Interests; (3) the Claimant's FTDF account identification number; (4) the date the Claim on Equity Interests was signed; (5) the amount asserted on account of the Claimant's equity interest in the FTDF; (6) the amount of the Claimant's equity interest in the FTDF as of the Petition Date according to the Debtors' books and records; and (7) the FTDF Committee's proposed disposition of the Claims on Equity Interests.  For the convenience of the Court and the Claimants, a summary of the various objections to the Claims on Equity Interests follows.

22.    In analyzing the Claims on Equity Interests, it is apparent that many of the Claimants simply mistakenly filed a proof of claim form instead of a proof of interest form in the FTDF case, because the vast majority of the Claims on Equity Interests note "Money Loaned" as the basis for the claim and have attached an FTDF investor statement reflecting an amount identical or similar to the amount asserted on the proof of claim form.  Indeed, eighteen (18) of the thirty-six (36) Claims on Equity Interests assert amounts that are identical to the amount of the respective Claimant's equity interest (by account identification number) in the FTDF as of the Petition Date according to the Debtors' books and records.[4]  These Claims on Equity Interests

---

[4]    Specifically, these Claims on Equity Interests are those filed by Aristotle Meonas Ttee for the Magic Trust (claim no. 30), Aristotle Melonas Ttee of American Sand & Grave (claim no. 31), Gwen Melonas Ttee of the George Melonas (claim no. 32), Aristotle Melonas Ttee in Trust for Simon Melonas and Celeste Melonas (claim no. 33), Louis H. and Shirley M. Turner of Louis H. and Shirley M. Turner Family Trust 9/9/97 (claim no. 35), The Chiappetta Trust Pat & JoAnn Chiapetta (claim no. 36), Pat Chiappetta IRA (claim no. 37), JoAnn Chiappetta IRA (claim no. 38), Sanches Living Trust 10/13/06 Randy and Sharon Sanches (claim no. 40), First Trust Co of Onaga Custodian for Roberta Schwartz IRA (claim no. 47), Phillip Lackman & Tillie Lackman (claim no. 53), First Savings Bank, C/F Margaret Rockwood IRA, Henry Arthur Peters and Donna Marie Peters JTWROS (claim no. 55), Fiserv Trust Company Ttee FBO Thomas E. Smith Acct #949 (claim no. 68), Fiserv Trust Company Ttee FBO Patricia Paschal Acct #938 (claim no. 69), Fiserv Trust Company Ttee FBO James J. Tanaka Account No 853 (claim no. 70), Fiserv Trust Company Ttee FBO Wilma Prim Snow Account No (claim no. 71), Sterling Trust Company, Custodian FBO Dioniso Fernandes A/C 13692 (claim no. 72), and David N. Warner, Jr. (claim no. 82).

1  should simply be reclassified as proofs of interests.

2    23.    With respect to the other Claims on Equity Interests, in many cases a

3  Claimant has asserted an amount in addition to or other than the amount that is reflected as that

4  Claimant's equity interest in the FDTF as of the Petition Date on the Debtors' Books and

5  Records. Claimant's base such amounts on one or more of the following four grounds, none of

6  which is the basis for an allowable claim against FTDF.

7    a.    Ranch Open Space of Nevada, Inc. (claim no. 77), Geraldine Price

8  (claim no. 111), James & Maudrene McConnell Trustees (claim no. 134), James M. McConnell

9  IRA (claim no. 135), James W. Shaw IRA (claim no. 138), and the Coxey Living Trust 12-3-98

10  (claim no. 148) have filed Claims on Equity Interests that assert amounts in addition to or other

11  than the amount of their equity interest in the FTDF on account of postpetition dividends that

12  they expected to, but did not, receive from the FTDF. Because FTDF Members are only entitled

13  to be paid dividends to the extent the profits of the FTDF exceed its losses in accordance with the

14  FTDF Operating Agreement and because all postpetition distributions to FTDF Members have

15  been made pursuant to the FTDF Operating Agreement, no FTDF Member is entitled to assert a

16  claim against the FTDF for postpetition dividends that it expected to, but did not, receive.

17    b.    Debra A. Gant-Hickel and Russell J. Hickel (claim no. 41), Lewis

18  Kaskel Trust Dtd 5/16/01 (claim no. 42), and Rubie Simon & Evie Simon (claim no. 114) filed

19  Claims on Equity Interests asserting that their respective equity interest in the FTDF is the "book

20  value" set forth on the Claimants' investor statements[5] as opposed to the amount of each

21  respective Claimant's equity interest in the FTDF as of Petition Date. Because the "book value"

22  amounts provided on a particular investor statement simply reflect an estimate of the FTDF's net

23  assets on a given day divided by the number of shares outstanding, "book value" as listed on

24  investor statements is not a proper measure of an FTDF Member's equity interest in the FTDF.

25  Rather, as set forth above, the appropriate measure of an FTDF Member's equity interest in the

26  

27  [5]  The "book value" amounts provided on a particular investor statement simply reflect an
28  estimate of the FTDF's assets (net of liabilities) on a given day divided by the number of
    shares outstanding.

1    FTDF is the amount reflected on the Debtors' books and records as of the Petition Date.

2    Accordingly, any portion of the Claims on Equity Interests asserted solely on account of "book

3    value" of FTDF Members' shares in the FTDF should be disallowed.

4                    c.    William M. Spangler (claim no. 89), William M. Spangler, Jean A.

5    Spangler (claim no. 90) and Jean A. Spangler (claim no. 91) filed Claims on Equity Interests

6    asserting amounts in excess of their equity interest in the FTDF on account of damages arising

7    from potential causes of action against the FTDF. These Claims on Equity Interests should be

8    disallowed to the extent they exceed each Claimant's equity interest in the FTDF for the reasons

9    set forth infra at paragraphs 34-47 .

10                   d.    Donnolo Family Trust DTD 8/24/88, Joseph & Loretta Donnolo

11   Trustees (claim no. 75) asserts a claim for $258,705.71, $248,754.00 of which accurately appears

12   to be on account of the Claimant's investment in the FTDF and the balance of which appears to

13   be based on other investments made through USACM. This Claim on Equity Interests should be

14   reclassified as a proof of interest in the amount of the Claimant's $248,754.00 equity interest in

15   the FTDF. The balance of this Claim on Equity Interests was objected to in the "Second

16   Omnibus Objection Of The Official Committee Of Equity Security Holders Of USA Capital

17   First Trust Deed Fund, LLC To Misfiled Claims," which objection was sustained.

18        24.    Finally, four (4) of the Claims on Equity Interests are duplicates of

19   previously filed Claims on Equity Interests and, therefore, should be disallowed in their entirety.

20   The duplicative Claims on Equity Interests are those filed by Louis H. and Shirley M. Turner of

21   Louis H. and Shirley M. Turner Family Trust 9/9/97 (claim no. 39), and by William and Jean

22   Spangler (collectively claim nos. 127, 128, and 129).

23        25.    In summary, the FTDF has no liability for any of the Claims on Equity

24   Interests, and all such claims should be reclassified as proofs of interest and/or disallowed as set

25   forth on Exhibit "1."

26                        **II.    ARGUMENT**

27   A.    **The Claims on Equity Are Incorrectly Characterized as Claims Against FTDF.**

28        26.    Bankruptcy Code section 502 authorizes a party in interest to object to

406007v7                              11

1   claims. See 11 U.S.C. § 502(a). Upon such objection, this Court, "after notice and a hearing,

2   shall determine the amount of such claim in lawful currency of the United States as of the date of

3   the filing of the petition . . . ." 11 U.S.C. § 502(b). Although a proper proof of claim is

4   presumed valid under Bankruptcy Rule 3001(f), once an objection controverts the presumption,

5   the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.

6   Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.), 178 B.R. 222, 226

7   (9th Cir. B.A.P. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996) (quoting In re Allegheny International,

8   Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).

9          27.    The FTDF Committee has analyzed the Claims on Equity Interests and has

10  determined that they were incorrectly designated as "proofs of claims." Pursuant to Bankruptcy

11  Code section 502, a "creditor . . . may file a proof of claim." An equity security interest holder,

12  however, must file a proof of interest. See 11 U.S.C. § 501(a). Bankruptcy Code

13  section 101(16) defines "equity security" to include a "share in a corporation, whether or not

14  transferable or denominated 'stock', or *similar security*" or a "warrant or right . . . to purchase,

15  sell, or subscribe to a share, security, or interest" of a share in a corporation. 11 U.S.C. § 101(16)

16  (emphasis added). See also Nev. Rev. Stat. §86.521 (upon dissolution of a limited liability

17  company, a limited liability company must pay liabilities to creditors before paying liabilities in

18  respect of profits and/or capital to members of the limited liability company).

19         28.    In most instances, the Claims on Equity Interests themselves and the

20  attachments thereto, clearly reflect that they are based on memberships in the FTDF and are not

21  based on any debt the claimants hold against the FTDF. For example, annexed to many of the

22  Claims on Equity Interests are account statements that list the number of shares a particular

23  claimant holds in the FTDF, the price of such shares, and the FTDF Member's account

24  identification number. Additionally, in analyzing the Claims on Equity Interests, it is apparent

25  that most of the Claimants simply mistakenly filed a proof of claim form against FTDF instead

26  of a proof of interest form because the vast majority of the Claims on Equity Interests note

27  "Money Loaned" as the basis for their claim and have attached FTDF investor statements that

28  reflect an amount invested in the FTDF that is identical or similar to that which the proof of

406007v7                                    12

1    claims assert.

2         29.    Membership interests and/or shares in the FTDF clearly fall within the

3    definition of "equity security" under Bankruptcy Code section 101(16). Thus, the holders of the

4    Equity Interests are equity security interest holders of the FTDF and do not hold unsecured

5    claims against the FTDF estate. Accordingly, all of the Claims on Equity Interests should be

6    reclassified, as proofs of interest in the amounts set forth on Exhibit "1," which sets forth the

7    amount of each Claimant's equity interest in the FTDF according to the Debtors' books and

8    records.

9    **B.**    **A Claim on Equity Should Be Disallowed to the Extent It Exceeds the Amount a**
10   **Particular Claimant's Interest in the FTDF as of the Petition Date as Reflected in the Debtors' Books and Records.**

11        30.    As detailed in paragraphs 23(a)-(d) <u>supra</u>, some of the Claimants who filed

12   the Claims on Equity Interests assert claims in excess of the amount of their equity interests in

13   the FTDF as of the Petition Date according to the Debtors' books and records. Claimants who

14   have done so fall into one of three groups: (1) those that have filed claims that assert entitlement

15   to anticipated but unpaid postpetition dividends; (2) those that assert "book value" as the proper

16   measure of an FTDF Member's equity interest in the FTDF; and (3) those that claim damages

17   arising from causes of action against the FTDF based on a tort or breach of contract. For the

18   reasons set forth below, none of these grounds provides a basis for FTDF Members to assert a

19   claim against the FTDF.

20       **1.**    **FTDF Members Do Not Have Valid Claims Against the FTDF for**
21   **Anticipated but Unpaid Postpetition Dividends.**

22        31.    As set forth in paragraph 23(a), some Claimants have filed proofs of claim

23   that assert claims against the FTDF on account dividends that they expected to receive in the

24   postpetition period. To the extent that Claimants assert amounts for anticipated but unpaid

25   postpetition dividends in addition to or other than the amounts of their interest in the FTDF as of

26

27

28

1    the Petition Date[6], the Claims on Equity Interests should be disallowed.  FTDF Members have no

2    right to receive postpetition dividends from the FTDF except as set forth in the FTDF Operating

3    Agreement.  All postpetition distributions authorized by the FTDF Operating Agreement to

4    FTDF Members have been made, with each FTDF Member receiving the same percentage return

5    as the other FTDF Members in the respective FTDF Member's class.  While FTDF Members

6    may have expected a certain monthly distribution based on the FTDF's historical prepetition

7    performance, FTDF Members have no right to such distributions unless the FTDF's profits are

8    high enough to produce the anticipated dividend.  During the FTDF's bankruptcy, the FTDF has

9    had to hold back funds in order to reserve for the FTDF's administrative expenses and certain

10    unsecured claims filed against the FTDF, which holdbacks have resulted in reduced profits as

11    compared to the prepetition period.  Accordingly, all authorized unpaid postpetition dividends

12    have been paid to FTDF Members.

13        **2.**    **"Book Value" Is Not a Proper Measure of an FTDF Member's Interest in the**

14            **FTDF.**

15        32.    Certain Claimants, as detailed <u>supra</u> in paragraph 23(b), have filed Claims

16    on Equity Interest in amounts described as "book value" on investor statements provided to

17    FTDF Members by the FTDF.  Because "book value" as listed on investor statements is not the

18    proper measure of an FTDF Member's equity interest in the FTDF, these Claims on Equity

19    Interest cannot simply be reclassified as proofs of interest in the FTDF.  Rather, they must be

20    reclassified as a proof of interest in the amount of a particular Claimant's equity interest in the

21    FTDF as of the Petition Date and disallowed to the extent they exceed such amount.

22

23    [6]   Some Claimants who filed Claims on Equity Interest that assert an entitlement to postpetition
    dividends added the amount of the dividends that they anticipated receiving to the amount of

24        their equity interest in the FTDF.  For example, Geraldine M. Price, the Claimant who filed
    claim number 111, filed a proof of claim in the amount of $32,025.00, which consists of

25        $30,000.00 on account of the Claimant's investment in the FTDF and $2,025.00 in
    anticipated postpetition dividends.  Other Claimants who filed Claims on Equity Interests

26        that assert an entitlement to postpetition dividends simply filed claims in the amount of the
    dividends they anticipated receiving without asserting a claim for the amount of their equity

27        interest in the FTDF.  For example, James M. McConnell IRA, the Claimant that filed claim
    number 135, asserts a claim against the FTDF in the amount of $8,695.41, which amount

28        represents the Claimant's calculation of anticipated but unpaid postpetition dividends.

33.     An FTDF Member's equity interest is the amount that the FTDF Member has invested in the FTDF, either through the purchase of shares or the reinvestment of dividends. In contrast, the "book value" listed on an FTDF Member's investor statement simply represents an estimate of the FTDF's net assets on a given day divided by the number of shares outstanding. Because it is an estimate that constantly changes, "book value" should not be the benchmark used to determine each FTDF Member's interest in the FTDF. In contrast, the amount of each FTDF Member's equity interest in the FTDF as of the Petition Date is a value that is a fixed amount that is readily ascertainable from the Debtors' books and records. Therefore, where any Claim on Equity Interest asserts an amount in excess of a Claimant's equity interest in the FTDF as of the Petition Date on account of the "book value" listed on an investor statement, the Claim on Equity Interest should be reclassified as a proof of interest in the amount of the Claimant's equity interest in the FTDF as of the Petition Date and disallowed to the extent it exceeds such amount.

**3.     FTDF Members Do Not Have Valid Claims Against the FTDF Arising Out of Contract or Tort Theories.**

34.     Three Claimants who are subject to this Objection[7] (the "Tort Claimants") assert Claims on Equity Interests against FTDF not only for the amount of the Claimants' equity interests in the FTDF but also for an unspecified amount of damages arising from "breach of contract, rescission, restitution, specific performance, mistake of fact, failure of consideration, fraud, and any and all other causes of action or claims permitted in law or equity." For the reasons set forth below, these Claimants have no right of recovery against the FTDF on account of such allegations and, even if they did, such recovery would be subordinated to the recovery of all FTDF Members on account of their equity interests in the FTDF.[8]

---

[7]   William M. Spangler (claim no. 89), William M. Spangler, Jean A. Spangler (claim no. 90) and Jean A. Spangler (claim no. 91)

[8]   Similar claims were asserted by members of the DTDF against the DTDF. The Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC (the "DTDF Committee") objected to such claims and requested that they be disallowed. At the January 31, 2007 hearing, the Court sustained the DTDF Committee's objection.

a. **Section 510(b) Prevents FTDF Members from Circumventing the Priority Scheme Established by the Bankruptcy Code, and Mandates That the Members Recover on Account of Claims Arising from the Purchase or Sale of FTDF Equity Interests at a Level Below that at which FTDF Members Recover on Account of their Equity Interests in the FTDF.**

35.     The Bankruptcy Code establishes a clear priority scheme for the distribution of estate assets through a plan of reorganization. First, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. § 1122(a). Secondly, a plan must "provide the same treatment for each claim or interest of a particular class," unless the holder of the claim agrees otherwise. 11 U.S.C. § 1123(a)(4). Finally, "senior claims be paid in full before any junior class can receive or retain any property." In re C.P.M. Constr., 124 B.R. 335, 339 (Bankr. D.N.M. 1991). This last requirement is commonly known as the "absolute priority rule." See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441-442 (1998).

36.     Pursuant to this priority scheme, a claimant who holds an equity interest in a debtor may only recover from the debtor's estate if the estate's creditors are to be paid in full under the plan. Further, if there are any remaining assets after provision for payment of senior classes in full, such equity holders must recover on par with other similarly-classified equity holders, and must share with other equity holders in their class on a *pro rata* basis as determined by the allowed amount of the holder's claim.

37.     The Tort Claimants have attempted to circumvent this priority scheme by categorizing their claims against the FTDF according to various contract and/or tort theories. By doing so, they seek unfairly to recovery on par with general secured or unsecured creditors of the estate, ahead of similarly situated equity holders, thereby depleting the pool of assets that should be available for distribution to the equity class.

38.     Further, because these three Claims on Equity Interests arise out of the

purchase of membership interests in the FTDF, such claims must be subordinated to creditor claims as well as other equity interests pursuant to the mandate of Bankruptcy Code section 510(b), which directs that:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, <u>shall be subordinated to **all claims or interests** that are senior to or equal the claim or interest represented by such security</u>, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added).[9]

39.    The purpose of section 510(b) is to prevent inequitable circumvention of the priority scheme established by the Bankruptcy Code, such as the certain FTDF Members seek to effect in this instance. As explained by the Ninth Circuit in <u>Am. Broadcast Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)</u>, 240 F.3d 823 (9th Cir. 2001),

---

[9]    Section 510(b) provides that claims for damages arising from the purchase of a security must be "subordinated to all . . . interests that . . . equal the . . . interest represented by such security, except that if such security is common stock, such claim has the same priority as <u>common stock</u>." 11 U.S.C. § 510(b) (emphasis added). Unless the claim for damages arises from the purchase of a security that is common stock, such claims are subordinated to equity interests.

Any claims for damages in excess of an FTDF Member's equity investment in the FDTF do not arise from the purpose of a security that is a "common stock" as the FTDF Members own interests in the limited liability corporation and not common stock. Limited liability interests do not fall within the listed exception to section 510(b)'s mandatory subordination, which is explicitly carved out only for "common stock" and no other form of security. <u>See, e.g.</u>, <u>Security Leasing Partners, L.P., v. Proalert, LLC (In re Proalert, LLC)</u>, 314 B.R. 436, 441 (9th Cir. B.A.P. 2004) ("[T]he plain meaning of a statute controls, except in rare cases where a literal interpretation produces absurd results. A court must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are clear, judicial inquiry is complete.")) (internal quotations and citations omitted). Thus, even if FTDF Members could demonstrate the existence of a direct claim against the FTDF estate in excess of their equity investment in FTDF, such claims must be subordinated below claims against the FTDF and the interest of general equity holders in FTDF.

406007v7                                        17

1    the dissimilar expectations of investors and creditors should be taken into
account in setting a standard for mandatory subordination. Shareholders
2    expect to take more risk than creditors in return for the right to participate
in firm profits. The creditor only expects repayment of a fixed debt. It is
3    unfair to shift all of the risk to the creditor class since the creditors extend
credit in reliance on the cushion of investment provided by the
4    shareholders.

5

6  Id. at 829. Furthermore, to the extent any Claims on Equity Interests seek relief in excess of the

7  Claimant's equity investment, such claims must also be subordinated to recovery by other equity

8  members on their investment interests.

9         40.    Thus, section 510(b) prevents FTDF Members from bootstrapping their

10  equity claims to the level of creditor claims, as well as diluting the interests of other equity

11  security holders in the FTDF. FTDF Members are only entitled to recover at the equity level, on

12  par with other similarly situated equity holders.

13        **b.**    **FTDF Members' Recovery Should be Limited in Amount to Recovery**

14              **with Other Equity Holders on a *Pro Rata* Basis, as Determined by**
                **Their Equity Interest, as There Are No Other Valid Claims or Causes**

15              **of Action by FTDF Members Against the FTDF Estate.**

16         41.    At the equity level, FTDF Members must share *pro rata* with their fellow

17  equity holders, who are all similarly situated, as determined by the amount of their equity

18  interests. Whether FTDF Members' claims are conceptualized as claims in contract, tort, or as

19

20  recovery on their equity investment, neither of the FTDF Members who assert contract or tort

21  damages in their Claims on Equity Interests has set forth any basis or theory in law or equity on

22  which he or she holds a claim against the FTDF estate greater than his or her *pro rata* equity

23  interest.

24         42.    Any possible claims for relief beyond recovery on FTDF Members'

25  investments are either (i) derivative actions belonging to the FTDF estate, or (ii) actions that

26  should be brought directly against a third party. In either instance, these Claimants erroneously

27  seek recovery from the FTDF estate on such claims. See NEV. REV. STAT. ANN. § 86.381 (2006)

28  ("Member of a limited-liability company is not a proper party to proceedings . . . against the

406007v7               18

1   company, except where the object is to enforce the member's right against . . . the company.").

2             **i.**    **Derivative Claims**

3         43.    Derivative actions seek recovery for damage suffered by a company as a

4   whole, and therefore suffered by all of the company's equity holders on a *pro rata* basis. Such

5   actions belong to the company itself, although equity holders are allowed in certain

6   circumstances to bring such claims derivatively on the company's behalf. See Amended and

7

8   Restated Operating Agreement of USA Capital First Trust Deed Fund ("Operating Agreement")

9   ¶3.2 (discussing Manager's fiduciary duties to FTDF); see also, NEV. REV. STAT. ANN.

10  §§ 86.483, et seq. (2006) (discussing derivative actions by members of an LLC); AM JUR 2D

11  LIMITED LIABILITY COMPANIES § 7 (same). However, because such actions actually belong to

12

13  the company itself, any relief received by the plaintiff on derivative actions (minus reasonable

14  expenses and attorneys' fees) must be remitted to the company for the benefit of *all* of its equity

15  holders. See, e.g., NEV. REV. STAT. ANN. § 86.489 (2006); AM JUR 2D LIMITED LIABILITY

16  COMPANIES § 7. The derivative nature of any claims on which a FTDF Member arguably seeks

17  to obtain recovery beyond his or her equity investment is underscored by the *pro rata* harm

18  suffered by every equity holder of a membership interest in FTDF under any such claim.

19

20        44.    Any potential derivative actions related to an FTDF Members' equity

21  interests are property of the FTDF's estate, and are not properly asserted against the FTDF as a

22  defendant. See In re Skolnick v. Atl. Gulf Communities Corp. (In re General Dev. Corp.), 179

23  B.R. 335, 338 (S.D. Fla. 1995) ("A corporation's filing for bankruptcy cuts off a shareholders'

24  ability to bring a derivative claim."); see also NEV. REV. STAT. ANN. § 86.381 (2006) ("Member

25  of a limited-liability company is not a proper party to proceedings . . . against the company,

26  except where the object is to enforce the member's right against . . . the company.").

27

28

### ii.    Direct Claims against Third Parties

45.    Beyond the claims discussed above (i.e., claims based on the amount of an FTDF Members' equity investment or derivative claims), the only possible remaining claims that could be brought by FTDF Members relating to their investment in the FTDF would have to be claims against third parties, such as the Manager of the FTDF,[10] for violations of duties breach of contractual obligations owed directly to the FTDF Members in connection with their investments, as distinct from damages suffered by the company itself and therefore suffered derivatively by all equity holders in ratable measure. See, e.g., Operating Agreement ¶ 2.6 (FTDF Members' grant of power of attorney to Manager to act on their behalf in connection with operation of the FTDF). Again, the FTDF estate is *not* the proper defendant in such an action. See also NEV. REV. STAT. ANN. § 86.381 (2006) ("member of a limited-liability company is not a proper party to proceedings . . . against the company, except where the object is to enforce the member's right against . . . the company.").

46.    In summary, regardless of whether any derivative or direct claims may exist against *third parties* for alleged damages suffered by FTDF Members in excess of their equity investment, such claims do not provide any basis for FTDF Members to obtain additional recovery from the *FTDF estate* based on their equity interests, at the expense of similarly situated equity holders.

### C.    Duplicative Claims Should Be Disallowed.

47.    Finally, as set forth in paragraph 24, some of the Claims on Equity Interests are duplicative of other Claims on Equity Interests and, accordingly, should be disallowed. Section 502(b)(1) of the Bankruptcy Code provides that the bankruptcy court shall not allow a claim that "is unenforceable against the debtor and property of the debtor, under any

---

[10]    Furthermore, pursuant to the terms of the Plan, the FTDF has waived any causes of action it holds against the Manager. See Plan at 74-75.

1   agreement or applicable law for a reason other than because such claim is contingent or

2   unmatured." 11 U.S.C. § 502(b)(1). Section 502 therefore precludes the allowance of

3   duplicative proofs of claim because applicable law plainly prevents a claimant from recovering

4   twice on a single debt. See Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.), 174 B.R.

5   807, 811 (Bankr. N.D. Cal. 1994) (noting the bankruptcy policy "intended to protect the limited

6   assets of the estate from duplicative claims"); In re Finley, Kumble, Wagner, Heine, Underberg,

7   Manley, Myerson & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("to allow one creditor to

8   assert two dollars in claims for every one dollar of loss from the same debtor violates principles

9   of ratable distribution and offends notions of uniform treatment for creditors") (quotations

10  omitted). Therefore, all duplicative Claims on Equity Interests should be disallowed.

### III.    NOTICE

12      48.    This Objection[11] will be served[12] on (i) the claimants who filed the Claims

13  on Equity Interests at the addresses set forth on the claimants' respective proofs of claim, (ii) all

14  parties on Master Service List for Limited Notice #6 Dated January 12, 2007 and (iii) all parties

15  who have filed requests for special notice since the filing of such master service list. In light of

16  the nature of the relief requested, the FTDF Committee submits that no other or further notice

17  need be given.

### IV.    CONCLUSION

19      49.    For the reasons set forth herein, the FTDF Committee respectfully

20  requests that the Court enter an order (i) sustaining the Objection; (ii) reclassifying the Equity

21  Interests as proofs of interest in the amounts set forth on Exhibit 1 hereto; (iii) disallowing the

22  Equity Interests to the extent they exceed the amounts set forth as each Claimant's equity interest

23

---

24  [11]  Given the voluminous nature of the Claims on Equity Interests and the attachments thereto

25       and in light of the facts that the Court has access to the FTDF claims register and the
         claimants already have copies or are aware of their own respective Claims on Equity

26       Interests, the FTDF Committee is not filing or serving copies of the Claims on Equity
         Interests along with this Objection. Copies of the Claims on Equity Interests will be

27       provided upon request to the FTDF Committee's counsel.

28  [12]  By ECF or U.S. Mail, as appropriate.

1  in the FTDF as of the Petition Date on Exhibit 1 hereto; and (iv) granting such other and further

2  relief as the Court deems just and proper.

3

4  Respectfully submitted this 13th day of February, 2007.

5

6  FRANK A. MEROLA (CA State Bar No. 136934),
   EVE H. KARASIK (CA State Bar No. 155356), and
7  ANDREW M. PARLEN (CA State Bar No. 230429), Members of
   STUTMAN, TREISTER & GLATT, P.C.
8  1901 Avenue of the Stars, 12th Floor
9  Los Angeles, CA 90067
   Telephone: (310) 228-5600
10
11 and

12 CANDACE C. CARLYON
   Shea & Carlyon, Ltd.
13 228 S. Fourth Street, First Floor
   Las Vegas, NV 89101
14 Telephone: (702) 471-7432
15 COUNSEL FOR THE
   OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
16 OF USA CAPITAL FIRST TRUST DEED FUND, LLC

17

18

19

20

21

22

23

24

25

26

27

28

406007v7                                    22

**EXHIBIT "1"**

**Claims on Equity Interests**

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 30 | Aristotle Melonas Ttee for the Magic Trust | 10805 | July 24, 2006 | $551,616.50 | $551,616.50 | Reclassify as proof of interest in the amount of $551,616.50. |
| 31 | Aristotle Melonas Ttee of American Sand & Gravel | 5962 | July 24, 2006 | $170,635.00 | $170,635.00 | Reclassify as proof of interest in the amount of $170,635.00. |
| 32 | Gwen Melonas Ttee of the George Melonas | 4349 | July 24, 2006 | $575,000.00 | $575,000.00 | Reclassify as proof of interest in the amount of $575,000.00. |
| 33 | Aristotle Melonas Ttee in Trust for Simon Melonas and Celeste Melonas | 6727 | July 24, 2006 | $21,728.50 | $21,728.50 | Reclassify as proof of interest in the amount of $21,728.50. |
| 35 | Louis H. and Shirley M. Turner of Louis H. and Shirley M. Turner Family Trust 9/9/97 | 6484 | August 10, 2006 | $50,000.00 | $50,000.00 | Reclassify as proof of interest in the amount of $50,000.00. |
| 36 | The Chiappetta Trust Pat & JoAnn Chiapetta | 4184 | August 11, 2006 | $39,596.00 | $39,596.00 | Reclassify as proof of interest in the amount of $39,596.00. |
| 37 | Pat Chiappetta IRA | 4062 | August 11, 2006 | $39,596.00 | $39,596.00 | Reclassify as proof of interest in the amount of $39,596.00. |

406010v1

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 38 | JoAnn Chiappetta IRA | 4071 | August 11, 2006 | $39,596.00 | $39,596.00 | Reclassify as proof of interest in the amount of $39,596.00. |
| 39 | Louis H. and Shirley M. Turner of Louis H. and Shirley M. Turner Family Trust 9/9/97 | 6484 | August 10, 2006 | $50,000.00 | $50,000.00 | Disallow claim in full as duplicative of claim no. 35. |
| 40 | Sanchez Living Trust 10/13/06 Randy and Sharon Sanchez | 6490 | August 10, 2006 | $20,000.00 | $20,000.00 | Reclassify as proof of interest in the amount of $20,000.00. |
| 41 | Debra A. Gant-Hickel and Russell J. Hickel | 8449 | August 10, 2006 | $33,245.88 | $31,967.00 | Reclassify as proof of interest in the amount of $31,976.00. Disallow claim to the extent it exceeds $31,976.00 because amount claimed in excess of $31,976.00 reflects book value as opposed to the amount of the Claimant's equity interest in the FTDF as of the Petition Date. |

406010v1

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 42 | Lewis Kaskel Trust, Dtd 5/16/01 | 1816 | August 18, 2006 | $61,521.05 | $59,154.50 | Reclassify as proof of interest in the amount of $59,154.50. Disallow claim to the extent it exceeds $59,154.50 because amount claimed in excess of $59,154.50 reflects book value as opposed to the amount of the Claimant's equity interest in the FTDF as of the Petition Date. |
| 47 | First Trust Co of Onaga Custodian for Roberta Schwartz IRA | 9938 | September 21, 2006 | $50,000.00 | $50,000.00 | Reclassify as proof of interest in the amount of $50,000.00. |
| 53 | Phillip Lackman & Tillie Lackman | 3590 | September 29, 2006 | $30,000.00 | $30,000.00 | Reclassify as proof of interest in the amount of $30,000.00. |
| 55 | First Savings Bank, C/F Margaret Rockwood IRA, Henry Arthur Peters and Donna Marie Peters JTWROS | 5538 | September 28, 2006 | $30,000.00 | $30,000.00 | Reclassify as proof of interest in the amount of $30,000.00. |
| 68 | Fiserv Trust Company Ttee FBO Thomas E. Smith Acct #949 | 949 | October 9, 2006 | $83,627.50 | $83,627.50 | Reclassify as proof of interest in the amount of $83,627.50. |

3

406010v1

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 69 | Fiserv Trust Company Ttee FBO Patricia R. Paschal Acct #938 | 938 | October 9, 2006 | $200,000.00 | $200,000.00 | Reclassify as proof of interest in the amount of $200,000.00. |
| 70 | Fiserv Trust Company Ttee FBO James J. Tanaka Account No 853 | 853 | October 9, 2006 | $358,422.50 | $358,422.50 | Reclassify as proof of interest in the amount of $358,422.50. |
| 71 | Fiserv Trust Company Ttee FBO Wilma Prim Snow Account No | 4427 | October 9, 2006 | $82,011.50 | $82,011.50 | Reclassify as proof of interest in the amount of $82,011.50. |
| 72 | Sterling Trust Company, Custodian FBO Dioniso Fernandes A/C 13692 | 7362 | September 30, 2006 | $32,025.00 | $32,025.00 | Reclassify as proof of interest in the amount of $32,025.00. |
| 75 | Donnolo Family Trust DTD 8/24/88, Joseph & Loretta Donnolo Trustees | 5162 | October 16, 2006 | $258,705.71 | $248,754.00 | Reclassify as proof of interest in the amount of $248,754.00 to the extent claim is in respect of Claimant's alleged investment of $248,754.00 in FTDF.[1] |

---

[1]    The balance of claim number 75 appears to be on account of the Claimant's investment in a loan made through USA Commercial Mortgage Company. The FTDF Committee objected to such portion of claim number 75 in the "Second Omnibus Objection Of The Official Committee Of Equity Security Holders Of USA Capital First Trust Deed Fund, LLC To Misfiled Claims," which objection was sustained by order of the Court dated February 7, 2007 [docket no. 2711].

406010v1

4

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 77 | Ranch Open Space of Nevada, Inc. | 9838 | October 17, 2006 | $20,075.00 | $20,000.00 | Reclassify as proof of interest in the amount of $20,000.00. Disallow claim to the extent it exceeds $20,000.00 because amount asserted in excess of $20,000.00 is on account of anticipated postpetition dividends. |
| 82 | David N. Warner, Jr. | 2216 | October 24, 2006 | $23,246.00 | $23,246.00 | Reclassify as proof of interest in the amount of $23,246.00. |
| 89 | William M. Spangler | 2449 | October 25, 2006 | $20,000.00 | $20,000.00 | Reclassify as proof of interest in the amount of $20,000.00. Disallow claim to the extent it exceeds $20,000.00 and claims damages on account of potential causes of action against FTDF. |

5

406010v1

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 90 | William M. Spangler, Jean A. Spangler | 2053 | October 25, 2006 | $100,000.00 | $100,000.00 | Reclassify as proof of interest in the amount of $100,000.00. Disallow claim to the extent it exceeds $100,000.00 and claims damages on account of potential causes of action against FTDF. |
| 91 | Jean A. Spangler | 7827 | October 25, 2006 | $10,678.50 | $10,678.50 | Reclassify as proof of interest in the amount of $10,678.50. Disallow claim to the extent it exceeds $10,678.50 and claims damages on account of potential causes of action against FTDF. |
| 111 | Geraldine M. Price | 590 | October 21, 2006 | $32,025.00 plus interest | $30,000.00 | Reclassify as proof of interest in the amount of $30,000.00. Disallow claim to the extent it exceeds $30,000.00 because amount asserted in excess of $30,000.00 is on account of anticipated postpetition dividends.. |

6

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|-----------|----------|--------------|---------------|--------------|-----------------------------------------------|---------------------|
| 114 | Ruby Simon & Evie Simon | 2538 | September 12, 2006 | $46,804.96 | $45,004.50 | Reclassify as proof of interest in the amount of $45,004.50. Disallow claim to the extent it exceeds $45,004.50 because amount claimed in excess of $45,004.50 reflects book value as opposed to the amount of the Claimant's equity interest in the FTDF as of the Petition Date. |
| 127 | William M. Spangler, Jean A. Spangler | 2053 | October 25, 2006 | $100,000.00 | $100,000.00 | Disallow claim in full as duplicative of claim no. 90.[2] |
| 128 | Jean A. Spangler | 7827 | October 25, 2006 | $10,678.50 | $10,678.50 | Disallow claim in full as duplicative of claim no. 91. |
| 129 | William M. Spangler | 2449 | October 25, 2006 | $20,000.00 | $20,000.00 | Disallow claim in full as duplicative of claim no. 89. |
| 134 | James & Maudrene McConnell Trustees | 6184 | December 3, 2006 | $29,999.03 | $650,000.00 | Disallow claim in full as amount asserted is solely on account of anticipated postpetition dividends. |

---

[2]     While the Court's claim register lists this claim as filed by William M. Spangler and Jean A. Spangler in the amount of $100,000.00, the actual linked document is a claim field by William M. Spangler in the amount of $20,000.00. In either case, this is a duplicative claim, as William M. Spangler and Jean A. Spangler filed a proof of claim in the amount of $100,000.00 on account of account no. 2053 (claim no. 90) and William M. Spangler filed a proof of claim in the amount of $20,000.00 on account of account no. 2449 (claim no. 89).

7

406010v1

| Claim No. | Claimant | Account ID # | Date of Claim | Claim Amount | Amount of Equity Interest Per Debtors' Records | Proposed Disposition |
|---|---|---|---|---|---|---|
| 135 | James M. McConnell IRA | 10749 | December 2, 2006 | $8,695.41 | $188,406.50 | Disallow claim in full as amount asserted is solely on account of anticipated postpetition dividends. |
| 138 | James W. Shaw IRA | 6071 | December 12, 2006 | $84,662.00 | $80,000.00 | Reclassify as proof of interest in the amount of $80,000.00. Disallow claim to the extent it exceeds $80,000.00 because amount asserted in excess of $80,000.00 is on account of anticipated postpetition dividends. |
| 148 | The Coxey Living Trust 12-3-98 | 6384 | November 10, 2006 | $101,260.86 | $100,000.00 | Reclassify as proof of interest in the amount of $100,000.00. Disallow claim to the extent it exceeds $100,000.00 because amount asserted in excess of $100,000.00 is on account of anticipated postpetition dividends. |

406010v1