ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
KEVIN A. DARBY, ESQ.        Electronically Filed February 20, 2007
Nevada Bar No. 7670
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email: mail@asmithlaw.com*

Attorney for Lenders Protection Group

JANET L. CHUBB, ESQ.
Nevada Bar. No. 176
LOUIS M. BUBALA, III, ESQ.
Nevada Bar No. 8974
Jones Vargas
100 W. Liberty St., 12th Floor
Reno, NV 89501
Telephone (775) 788-2205
Facsimile (775) 786-1177
*Email: jlc@jonesvargas.com*

Attorney for The Jones Vargas
Direct Lenders

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In Re:<br>USA COMMERCIAL MORTGAGE COMPANY, et al.<br><br>Debtors.<br>_____/<br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC<br>_____/ | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11<br><br>Hearing Date:  OST Pending<br>Hearing Time:  OST Pending<br><br>**MOTION FOR LIMITED STAY PENDING APPEAL** |

The Lenders Protection Group, a group of investors/lenders in USA Commercial

Mortgage Company ("USACM"), as identified on the *Statement Of The Law Offices Of*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

*Alan R. Smith Pursuant To Bankruptcy Rule 2019* filed herein on December 6, 2006, and as supplemented thereafter ("LPG"), through its counsel, Alan R. Smith, Esq., and the Charles B. Anderson Trust; Rita P. Anderson Trust; Baltes Company; Kehl Family Members and Mojave Canyon, Inc., through its counsel Janet L. Chubb, Esq. of Jones Vargas (the "Jones Vargas Direct Lenders") (the LPG and the Jones Vargas Direct Lenders shall collectively be referred to as "Appellants"), hereby move this Court for an order staying the implementation of certain aspects of the Bankruptcy Court's *Order Confirming The "Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization," As Modified Herein* (the "Confirmation Order") pending resolution of Appellants' appeal of the Confirmation Order. A copy of the Amended Notice Of Appeal, with the Confirmation Order, is attached hereto as Exhibit A. This Motion is made pursuant to Fed. R. Bankr. Proc. 8005 and is supported by the following points and authorities.

**I.**
**INTRODUCTION TO MOTION AND REQUESTED RELIEF**

Appellants seek a stay of the Debtors'/Liquidating Trusts' disbursement of certain property (cash) belonging to Appellants, that is being held and segregated by Debtors, defined below as the "Segregated Funds." Appellants do <u>not</u> request a stay of the entire Confirmation Order. Appellants only seek to stay the disbursement of certain segregated funds that are comprised of post-petition, and continuing post-confirmation, payments made by third-party borrowers to Appellants, which are received and processed by the Debtors as a loan processor. Appellants do not seek to stay on going disbursements of regular monthly payments on performing loans to Direct Lenders.

This Motion follows a temporary stay of the Debtors' Plan entered by the Bankruptcy Appellate Panel (B.A.P.) on January 17, 2007. The Debtors were ultimately successful in quashing that temporary stay on the basis that the relief should have been sought in this Court in the first instance, rather than at the B.A.P. The Debtors also argued that the stay would cause irreparable harm because it would compromise the pending sale of the Debtors' assets to Compass.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

2

Although the limited stay entered by the B.A.P. did not prevent the sale to Compass from closing, Appellants were sensitive to Debtors' concerns. Thus, rather than immediately proceeding to the Bankruptcy Court for a stay, Appellants allowed the sale to Compass to move forward, and ultimately close on February 16, 2007, without a seeking a stay. Upon closing, the only alleged irreparable harm cited by the Debtors in their efforts to quash the stay entered by the B.A.P. is now moot. The Compass sale is complete and, therefore, the requested limited stay pending appeal will not cause any irreparable harm to any party.

Appellants are entitled to a limited stay pending appeal because they are likely to succeed on appeal for the following reasons:

1. The Plan blatantly violates Fed. R. Bankr. Proc., Rule 7001 and controlling Ninth Circuit case law by taking loan payments made to, and belonging to, Appellants and other Direct Lenders through a plan of reorganization, without commencing adversary proceeding;

2. The Plan improperly allows the Debtors to use recoupment as an offensive weapon to take the property of Appellants, rather than as a defense to the taking of Debtors' property through netting debt; and

3. The Plan improperly forces a so-called "compromise" without the consent of all parties giving up rights under the so-called compromise.

Without the requested stays, Appellants will suffer irreparable harm because the Debtors will liquidate all of their assets under the Plan, leaving no available funds to remedy harm to Appellants. Appellants are only seeking a narrow stay of the Confirmation Order, which will result in no harm to any other party. Indeed, because the stay would freeze the Segregated Funds, there will be an ample frozen pool of money to prevent any harm to the ultimately successful party on appeal. These Segregated Funds, in essence, act as a bond and, thus, there is sufficient cause for the Court to waive the bond requirement for a stay under Rule 8005.

## II.
## FACTUAL BACKGROUND

1. Prepetition, Debtor USACM, which sometimes did business under the trade name "USA Capital," was in the business of underwriting, originating, brokering, funding

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

3

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

1  and servicing commercial loans secured by real property and developers. *See Debtors'*
2  *First Amended Disclosure Statement For Debtors' Third Amended Joint Chapter 11 Plan*
3  *of Reorganization* ("Disclosure Statement") (Docket #1789)*, Disclosure Statement,* p. 23,
4  lns. 19-24.

5      2.    USACM funded loans by soliciting individual investors to purchase fractional
6  interests in loans.  The transactions were structured such that the investors would lend
7  money directly to borrowers (the "Direct Lenders"), with each individual Direct Lender
8  named on each promissory note, deed of trust and all other documents  *Disclosure*
9  *Statement,* p. 23, lns. 19-25.

10      3.    Each Direct Lender also entered into a Loan Servicing Agreement with
11  USACM (the "Servicing Agreements"), which authorized USACM to service the loans on
12  behalf of the Direct Lender.  A sample copy of a Servicing Agreement, as entered into the
13  record at the Bankruptcy Court, is attached hereto as Exhibit C.

14      4.    On April 13, 2006 (the "Petition Date"), USACM and four related entities[1]
15  (the "Debtors")  filed Chapter 11 Bankruptcy Petitions.  At that time, the principals of
16  USACM relinquished management to Mesirow Financial Interim Management, LLC
17  ("Mesirow").

18      5.    As of the Petition Date USACM was servicing a loan portfolio in excess of
19  $900 Million consisting of approximately 115 loans with a total of approximately 3,600
20  Direct Lenders.  Most Direct Lenders invested in multiple loans. *Disclosure Statement,* p.
21  23, lns. 19-25.

22      6.    On May 8, 2006, the Debtors filed a *Motion To Temporarily Hold Funds*
23  *Pending A Determination Of The Proper Recipients* (the "Hold Funds Motion") (Docket
24  # 173), through which they sought an order that the Debtors not be required to disburse or
25  distribute any funds to investors until USACM could investigate Debtors' records. *Hold*

---

[1] The related Debtors include USA Capital Reality Advisors, LLC; USA Capital Diversified Trust Deed Fund, LLC; USA Capital First Trust Deed Fund, LLC; and USA Securities, LLC.

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

4

1   *Funds Motion*, p. 3, lns. 4-11.

2   7.   On July 6, 2006, the Court entered an *Order Granting Debtors' Motion To Temporarily Hold Funds Pending A Determination of The Proper Recipients* ("Hold Funds Order"), which temporarily granted the Holds Funds Motion and continued it for later hearings.

8.   On July 7, 2006, the Debtors filed a *Motion To Distribute Funds and To Grant Ordinary-Course Releases and Distribute Proceeds* (the "Distribution Motion") (Docket # 847). The Distribution Motion sought a Court order authorizing a distribution by USACM to Direct Lenders from the funds held under the Hold Funds Order. The Motion also sought permission for USACM to commence monthly payments to Direct Lenders from post-petition payments made by third-party borrowers, after deducting servicing fees, other fees and after holding back and retaining money to secure claims for alleged Prepaid Interest.

9.   On August 24, 2006, the Court entered an *Order (A) Granting (i) Debtors' Motion To Distribute Funds; (ii) Debtors' Hold Funds Motion; and (iii) The Compel Motion…* (the "Distribute/Hold Order") (Docket #1184). Pursuant to the Distribute/Hold Order, the Court authorized payments to Direct Lenders from both ongoing post-petition collection on performing loans, as well as funds held in the Debtors' collection accounts on the Petition Date, but required a hold back from those payments representing:

(A)   a 1% servicing fee to USACM's and other fees and costs it is entitled to charge;

(B)   an additional 2% of principal on all loans that were fully paid off post petition; and

(C)   an amount equivalent to the Prepaid Interest each Direct Lender received.

(the "Segregated Funds"). *Distribution/Hold Order,* ¶¶2 (a)-(c). The Order further held:

> All amounts that are not distributed by USACM… shall be held and segregated in the [Debtors'] Collection Account, with the rights and legal position of al parties, including the Debtors, reserved in such funds and shall not be further disbursed absent an applicable order of the Court. Such funds held and segregated in the Collection Account shall not be deemed to be commingled.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUEST.wpd.wpd

5

*Id.*, at ¶ 3. The Court further held that the Distribution/Hold Order was "preliminary in nature," not a final determination of parties rights, which would be made upon appropriate notice in additional proceedings. *Id.* at ¶ 5.

10. On September 15, 2006, the *Debtors' Joint Plan Of Reorganization* was filed (the "Original Plan") (Docket # 1310). Section 6.4 of the Original Plan required the Debtors to initiate dispositive proceedings to determine their right to retain and use the Prepaid Interest. If the Debtors did not initiate such an action, this Plan expressly preserved rights of lenders to initiate adversary proceedings to assert their right to the Segregated Funds.[2] *See Original Plan,* § 6.4.

11. On October 18, 2006, the systematic deterioration of lenders' due process rights began with the filing *of Debtors' First Amended Joint Plan Of Reorganization* ("First Amended Plan") (Docket # 1576). Rather than following the Original Plan's approach of requiring the Debtors to initiate separate proceedings to take the Segregated Funds, the First Amended Plan merely gave the Debtors the <u>option</u> to do so. *See First Amended Plan,* § 6.4(a). As an alternative, the First Amended Plan proposed to use plan confirmation as the dispositive proceeding to determine rights to the Prepaid Interest. *Id*. The First Amended Plan still preserved lenders' rights to recover Prepaid Interest through an adversary proceeding. *Id.,* at §§6.4(b) & (c). However, if no proceeding to determine rights to the Segregated Funds was commenced, the First Amended Plan declared the Segregated Funds to be property of the estate.

12. On November 6, 2006, the Debtors finally revealed their true intent with respect to Segregated Funds, through the filing of *Debtors' Second Amended Joint Plan Of Reorganization* ("Second Amended Plan") (Docket # 1741). The Second Amended Plan took a significant departure from the preservation of due process rights in prior plans. The

---

[2] As fully detailed in Section III, below, controlling law preserves the lenders rights to commence such an adversary proceeding irrespective of whether the Plan preserves that right. Specifically, confirmation of a plan has no preclusive effect on matters that must be raised through an adversary proceeding. *In re Enwally,* 368 F.3d 1165, 1173 (9th Cir. 2004). Thus, as currently drafted, the Plan potentially subjects the Debtors to hundreds of post-confirmation lawsuits by lenders.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

6

Second Amended Plan simply declared Prepaid Interest is to be property of the Debtors, with no due process afforded to lenders. *See Second Amended Plan,* § IV.E.1.D. The Second Amended Plan neither required the Debtors to initiate a separate proceeding, nor did it preserve the right for lenders to initiate proceedings to assert claims to Prepaid Interest.

13.    On November 8, 2006, the Court entered an *Order (A) Scheduling An Auction For The Sale Of Certain Assets; (B) Appointing SPCP Group, LLC, As Lead Bidder; And (C) Approving Bid Procedures And Protections* (the "Auction Order) (Docket #1761), pursuant to which the Debtors would attempt to sell their assets through auction, most notably their rights to service loans and collect late fees and default interest under the Servicing Agreements. The Auction Order set the Auction for December 7, 2006.

14.    On November 15, 2006, the *Debtor's Third Amended Joint Plan Of Reorganization* (i.e. the "Plan," as defined above) (Docket #1799) was filed and distributed, a copy of which is attached hereto as Exhibit D. Through a so-called "compromise", the Plan simply declares the Segregated Funds to be property of USACM. *See Plan,* § IV.E.1.D. Direct Lenders with claims to those funds did not individually agree to the so-called compromise and have not even been given the opportunity of due process to prove their rights to those funds, through offest or otherwise. In other words, under the Plan, USACM takes 100% of its alleged claim against Direct Lenders in the form of Prepaid Interest, while requiring the Direct Lenders to then "go to the back of the line" and receive between 8% and 35% of their claim against USACM for Stolen Principal. *See First Amended Disclosure Statement,* p. 5.

15.    On December 7, 2006, the Court held an auction of the Debtors' assets, at which Compass was the successful bidder at $67 Million. The sale was expressly conditioned upon confirmation of the Plan.

16.    On December 11, 2006, the LPG filed its Objection To Confirmation of Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization As It Applies To Debtor USA Commercial Mortgage Company (the "LPG Plan Objection") (Docket #2042),

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

7

pursuant to which the LPG objected to confirmation of the Plan for the following reasons:

    (A)    The Plan violates controlling Ninth Circuit case law by taking lenders' property through plan confirmation, which is an improper and invalid circumvention of the requirements of Fed. R. Bankr. Proc., Rule 7001;

    (B)    The Plan is not feasible because USACM's recovery of property through a non-consensual "compromise" and plan confirmation will have no preclusive (i.e. res judicata) effect;

    (C)    The Plan improperly forecloses lenders' setoff rights without due process;

    (D)    The Plan improperly classifies and treats creditors by failing to create separate secured creditor classes for creditors with setoff rights on account of both: (a) receiving allegedly improper prepaid interest; and (b) having their principal amount of certain investments stolen;

    (E)    The Plan assigns executory contracts, the Servicing Agreements, without assuming them in compliance with the provisions of 11 U.S.C. § 365(b)(1);

    (F)    The integrity of the voting process was compromised by false and misleading communications from the Debtors to creditors, which wrongfully inform lenders they have no right to vote on the Plan;

    (G)    The Plan attempts to recover service fees in excess of those allowed under the Servicing Agreements; and

    (H)    The Plan fails to pursue valuable assets, namely valuable claims for breach of contract, conversion and breach of fiduciary duties.

17. On January 8, 2006, the Court entered its *Order Confirming The "Debtors' Third Amended Plan of Reorganization," As Modified Herein* (the "Confirmation Order") (Docket #2376), and its *Findings of Fact And Conclusions Of Law In Support Of The Confirmation Order* ("Findings and Conclusions") (Docket#2377).

18. The Court never conducted a hearing concerning the Debtors' right to simply take the Segregated Funds, which consisted of the Direct Lenders' property, namely post-petition principal and interest payments made to the Direct Lenders by borrowers on performing loans. Thus, the Direct Lenders were never given an opportunity to defend against the taking of their property and to assert superior rights to the Segregated Funds, including setoff rights as a result of Direct Lenders being victims of Stolen Principal.

19. On January 17, 2007, Appellants filed an Amended Notice of Appeal,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

8

1  pursuant to which they appealed the Confirmation Order and the Findings and Conclusions.
2  On that same day, Appellants filed an *Emergency Motion For Stay Pending Appeal*. On
3  January 17, 2007, the Bankruptcy Appellate Panel granted Appellants a temporary stay to
4  allow further briefing on the issue of whether a permanent stay pending appeal is
5  warranted.

6     20.     On January 18, 2007, the Debtors filed an *Emergency Motion To Quash Stay*
7  *Pending Appeal* (the "Quash Motion"), pursuant to which Debtors argued the stay should
8  first be considered by the Bankruptcy Court, rather than the B.A.P.  A copy of the Motion
9  to Quash is attached hereto (without exhibits) as Exhibit B.  Debtors argued in their Motion
10 that the stay threatened the pending sale to Compass and, thus, a $20 million bond should
11 be required to prevent harm caused if the Compass sale fails to close.

12     21.     On February 16, 2007, the sale to Compass closed.

**III.**
**APPELLANTS ARE ENTITLED TO A LIMITED STAY OF THE**
**IMPLEMENTATION OF CERTAIN PROVISIONS OF THE DEBTORS' PLAN**

15      Fed. R. Bankr. Proc., Rule 8005 governs a motion for a stay pending appeal. Rule
16 8005 authorizes a stay of matters in the bankruptcy case during the pendency of an appeal
17 on such terms as will protect the rights of all parties in interest.  As a prerequisite of
18 imposing a stay under Rule 8005, courts within the Ninth Circuit generally require a
19 showing of the following:

20     (1)     Appellant is likely to succeed on the merits of appeal;
21     (2)     Appellant will suffer irreparable injury;
22     (3)     No substantial harm will come to appellee; and
23     (4)     The stay will do no harm to the public interest.

24 *In re Irwin,* 338 B.R. 839, 843 (E.D. Cal. 2006); *In re Fulmer,* 323 B.R. 287, 292 (Bankr.
25 D. Nev. 2005).

26 ///
27 ///
28 ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

9

**A.  Appellants Are Likely To Succeed On Appeal Because The Bankruptcy Court Confirmed A Plan That Blatantly Violates Numerous Provisions Of The Bankruptcy Code**

11 U.S.C. § 1129(a) mandates that a bankruptcy court can only confirm a plan if it complies with applicable provisions the Code.  A fundamental requirement of the Bankruptcy Code is that a plan not be proposed in bad faith. 11 U.S.C. § 1129(a)(3).  A plan is proposed in bad faith under § 1129 when it attempts to accomplish a result inconsistent with the Bankruptcy Code or applicable law.  *In re Jorgensen,* 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986).  A plan proposed in bad faith cannot be confirmed.  11 U.S.C. § 1129(a)(3).  As shown below, the Plan was impermissibly confirmed in light of blatant violations of several provision of the Code, as well as Direct Lenders' fundamental right to due process.

As noted above, Appellants are likely to prevail on appeal in this case because the Plan was improperly confirmed for the following reasons:

1. The Plan violates Fed. R. Bankr. Proc., Rule 7001 and controlling Ninth Circuit case law by recovering the Prepaid Interest as property of the estate without commencing an adversary proceeding

2. The Court improperly found the Debtors could use the defense of recoupment offensively to take payments made by borrowers to direct lenders and declare it property of the Debtors' bankruptcy estate; and

3. The Plan improperly effectuates a so-called global compromise without the consent of all parties giving up rights under the so-called compromise.

1. **The Plan Impermissibly Recovers Alleged Property Of The Estate Without Commencing An Adversary Proceeding**

Pursuant to Fed. R. Bank. Proc., Rule 7001, the initiation of an adversary proceeding is required to determine an interest in property.  It is well settled within the Ninth Circuit that if an adversary proceeding is required under Rule 7001, it is **a mandatory prerequisite and a plan of reorganization cannot be used to circumvent Rule 7001**.  *See, e.g. In re Commercial Western Finance Corp.,* 761 F.2d 1329 (9th Cir.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

10

1  1985). The use of an adversary proceeding under Rule 7001 is required because it affords
2  Constitutionally guaranteed due process to the parties involved. *In re Colortran, Inc.,* 218
3  B.R. 507, 510 (B.A.P. 9th Cir. 1997).

4  In *Commercial Western,* the Ninth Circuit addressed plan provisions strikingly
5  similar to the case and Plan at bar. There, the Chapter 11 trustee attempted to avoid the
6  debtor's partial assignment of notes and deeds of trust under § 548 through a plan of
7  reorganization. Specifically, rather than initiating an adversary proceeding, the *Commercial*
8  *Western* trustee sought to avoid the assignee's interests through a so-called "compromise"
9  contained in a Chapter 11 plan. *Id.,* at 1331-32. Out of approximately 333 investors, 7
10 filed written objections to the plan, and 84 voted to accept it. *Id.* at 1332. The bankruptcy
11 court confirmed the plan and the district court affirmed. On appeal to the Ninth Circuit,
12 the court invalidated the trustee's attempt to avoid the debtor's allegedly fraudulent transfers
13 through plan confirmation and reversed the order confirming the plan. *Commercial*
14 *Western,* 761 F.2d at 1339. In doing so, the Ninth Circuit held that the trustee's actions
15 contravened Rule 7001, emphasizing that a trustee's initiation of an adversary proceeding
16 was a prerequisite to a legitimate exercise of its avoidance powers. *Id.* at 1337-38. The
17 *Commercial Western* court found it to be even more problematic that "in trying to avoid
18 investors' property interests by the court's approval of the plan, the trustee sought to place
19 on the investors the burden of challenging the trustee's ability to avoid their interests by
20 requiring them to object to the plan." *Commercial Western*, at 1337. The court found that
21 such a scheme improperly circumvents a trustee or debtor in possession's duty to prove they
22 are entitled to relief. *Id.* Simply put, if a debtor wants the benefit of avoiding allegedly
23 improper payments, it must carry the burden of following the mandated procedures of Rule
24 7001. *Id.* at 1338.

25 The Ninth Circuit addressed the same issue a year later in *Golden Plan of California*,
26 829 F.2d 705, 711 (9th Cir. 1986). There, the trustee attempted to recover allegedly
27 fraudulent payments through a noticed motion, not an adversary proceeding. *Golden Plan,*
28 at 711. The Ninth Circuit again invalidated such action as in violation of Rule 7001. *Id.*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

11

1  Relying on *Commercial Western,* the court held the "trustee's failure to *initiate* adversary
2  proceedings imposed on investors the burden of challenging his actions and thus
3  contravened Rule 7001." *Id.* at 712.
4        In addition, the Ninth Circuit has acknowledged that "[i]f an issue must be raised
5  through an adversary proceeding it is not part of the confirmation process and, unless it is
6  actually litigated, confirmation will have no preclusive effect." *In re Enwally,* 368 F.3d
7  1165, 1173 (9th Cir. 2004). In other words, although confirmed plans are *res judicata* to
8  issues therein, the confirmed plan has no preclusive effect on issues that must be brought
9  by adversary proceeding. *Id; See also In re Ransom,* 336 B.R. 790 (B.A.P. 9th Cir. 2005).
10       The Plan at bar seeks to accomplish exactly what was invalidated and prohibited in
11 *Commercial Western* and *Golden Plan*. Specifically, through a so-called "compromise",
12 the Plan proposes to simply declare the Segregated Funds to be property of USACM. *See*
13 *Plan,* § IV.E.1.D. Such a scheme has been expressly invalidated by the Ninth Circuit as
14 improperly circumventing Rule 7001 and violating fundamental due process. The Debtors
15 cannot take the Direct Lenders' property, in this case post-petition principal and interest
16 payments to Direct Lenders from third party borrowers, without each lender's consent or
17 through an adversary proceeding under Rule 7001. Without an adversary proceeding under
18 Rule 7001, lenders are deprived of the opportunity to assert their claims to the Segregated
19 Funds and their defenses to USACM taking such property. In addition, without an
20 adversary proceeding Direct Lenders who were victims of Stolen Principal are foreclosed
21 from exercising their setoff rights against Debtors' attempts to take the Prepaid Interest.
22 Simply stated, setoff "is grounded on the absurdity of making A pay B when B owes A."
23 *Studley v. Boylston National Bank,* 229 U.S. 523, 528 (1913). Setoffs in bankruptcy have
24 been "generally favored," and a presumption in favor of their enforcement exists. *In re De*
25 *Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269, 1277 (9th Cir. 1992). The Ninth
26 Circuit has found that § 553, which preserves setoff rights, must take precedence over §
27 1141, which bind creditors to a confirmed plan. *DeLaurentiis,* 963 F.2d at 1276. In doing
28 so, the court explained that a contrary conclusion essentially would nullify § 553. *Id.* at

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

12

1277.

Acknowledging the inequities of foreclosing setoff rights through a plan, the Ninth Circuit explained absent a setoff, a creditor with setoff rights would be in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it. *DeLaurentiis,* at 1277.  It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place. *Id.*

The Plan at bar effectuates the exact form of inequitable treatment criticized by the *DeLaurentiis* Court.  Under the Plan, USACM takes 100% of its alleged claim against lenders in the form of Prepaid Interest, while requiring the lenders to then "go to the back of the line" and receive between 8% and 35% of their claim against USACM. *See First Amended Disclosure Statement,* p. 5.  The Plan also forecloses lenders setoff rights to servicing fees holdbacks and future servicing fees. *Plan,* IV.E.1.(f)&(g).

For illustrative example, one can consider a hypothetical lender that received allegedly improper pre-petition prepaid interest payments totaling $100,000, but had $200,000 in a principal investment diverted/stolen.  That lender should be able to offset the USACM claim of $100,000 against his claim against USACM's estate of $200,000.  As a result, that lender would retain his portion of Segregated Funds(i.e. $100,000) and be left with a $100,000 claim against the estate, which, in the worst case scenario, is projected to be paid at approximately $0.08 on the dollar.  Thus, the creditor would retain his $100,000 of Prepaid Interest, in addition to approximately $8,000 on his general unsecured claim ($100,000 x .08 = $8,000), for a total of $108,000.

The Plan simply takes the $100,000 contributed to the Segregated Funds, leaving the lender to receive approximately $0.08 on the dollar for his $200,000 claim.  In other words, the Plan will pay this investor only $16,000 total for his claim ($200,000 x .08 = $16,000).

The difference between receiving $108,000 and $16,000 is certainly significant. Indeed, this Court's Distribution/ Hold Order contemplated "any final determination with respect to any distributions and any offsets related thereto, including any factual findings

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

13

1  and legal ruling, shall be made upon appropriate notice and in such additional proceedings
2  as to be determined by the Court." *See, Distribution/Hold Order*, ¶ 5.  There has been no
3  such additional proceeding, except for the Plan, which cannot by itself accomplish a taking
4  of property.  As held in *DeLaurentiis,* the Direct Lenders' right to setoff trumps the binding
5  effect of the Plan.

        2.    <u>Appellants Are Likely To Succeed In Showing The Court Erred Allowing Recoupment To Be Offensively By The Debtors</u>

8  Although the Debtors' Plan and Disclosure Statement fail to assert, or even analyze,
9  the Debtors' alleged recoupment rights, the Court, nevertheless, found that the Debtors
10 could use the recoupment doctrine offensively to take property of the Direct Lenders (i.e.
11 the Segregated Funds consisting of principal and interest payments made by borrowers to
12 Direct Lenders).  Recoupment is a defense, not a claim. *Westinghouse Credit Corp. v*
13 *D.'Urso*, 278 F.3d 138, 146 (2d Cir. 2002) ("Recoupment is in the nature of a
14 defense…")*;  See also In re Seko Invs., Inc.,* 156 F.3d 1005, 1009 (9th Cir. 1998)
15 (Recoupment "is essentially a defense to the debtor's claim." and "Recoupment operates
16 akin to a defense against a claim…"). Stated somewhat differently, the B.A.P. has
17 acknowledged that "recoupment is neither a claim nor a debt…" *In re Madigan,* 270 B.R.
18 749, 754 (9th Cir. B.A.P. 2001).

19 It is well settled that equitable recoupment **cannot be used offensively to seek**
20 **recovery of property**, only defensively to offset against a claim.  *In re Estate of Branson,*
21 264 F.3d 904, 909 (9th Cir. 2001).  In *In re Worldclass Processing, Inc.,* 323 B.R. 164
22 (Bankr. D. Penn. 2005), the bankruptcy court granted summary judgement against the
23 debtor where it attempted to use recoupment as a cause of action, "as an offensive weapon
24 rather than a defense against a claim." Likewise, in *In re Drexel Burnham Lambert Group,*
25 *Inc.,* 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990), the bankruptcy court found that a bank's
26 attempt to use recoupment as an offensive weapon to be "foreign to the doctrine of
27 recoupment."  The court explained:

28     At common law recoupment was purely defensive in character and could be

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

14

used only to defeat or diminish plaintiff's recovery; recoupment could not be the basis of affirmative relief… In absence of a statute to the contrary, recoupment is purely defensive, or in the nature of a common-law defense, and not a separate cause of action or a weapon of offense.

*Id; See also 20 Am. Jur. 2d Counterclaim, Recoupment, and Setoff § 6 (1965).*

Recoupment involves "netting out debt" and is used is "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, <u>strictly for the purpose of abatement of reduction of such claim.</u>"  *See, In re Madigan,* 270 B.R. 749, 754 (9th Cir. B.A.P. 2001); *Newbery Corp. V. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th Cir. 1996) (Emphasis added). According to *Colliers on Bankruptcy:* "<u>In any suit or action</u> between the estate and another, <u>the defendant</u> should be entitled to show that because of matters arising out of the transaction sued on, <u>he or she is not liable in full for the plaintiff's claim</u>." *553 Collier on Bankruptcy 15th Edition* 553.03, at 553-17(2006).

In the case of USACM, the Bankruptcy Court expressly violated the long standing limitations of the recoupment doctrine by allowing the Debtors to use it offensively, as a claim, rather than as a defense. Specifically, the Court held that recoupment could be used by the Debtors to simply take Direct Lenders' property: the Segregated Funds. As noted above, the Segregated Funds consist of post-petition payments made by borrowers to Direct Lenders on performing loans. Beyond their limited claim to servicing fees, the Debtors have no congnizable claim to those funds. Rather, the funds simply pass through the hands of USACM as a loan servicer. As such, USACM holds the funds as a fiduciary and never has any substantive claim to the money. The Court's ruling, which allows the Debtors to use the defense of recoupment to simply take Direct Lenders' property, is so contrary to the fundamental principles of the recoupment doctrine that Appellants are likely to succeed on the merits of their appeal.

3. <u>A Plan Cannot Force A Compromise Unless All Parties Consent To The Compromise</u>

The Plan attempts to take the Segregated Funds through a non-consensual "compromise." *See, Plan,* § IV.E.1.D. Not only was such a mechanism expressly invalidated in *Commercial Western* as in improper circumvention of Rule 7001, it also has

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

15

absolutely no legal or binding effect on the individual Direct Lenders. Appellants understand the so-called "compromise" was negotiated by the Committees in this case. However, those Committees have no power or authority to bind their constituents. *In re Donlevy's Inc.,* 111 B.R. 1, 5 (Bankr. D. Mass. 1990); 7 Alan N. Resnick, et al. *1103 Collier on Bankruptcy 15th Edition p. 1103.05* (2006). The Committees cannot settle on behalf of their constituents, nor can their constituents be bound to give up any property under the Plan unless each individually agrees. Specifically, the Segregated Funds cannot be taken without the agreement of each lender whose rights are affected. A plan can bind a class of creditors with regard to treatment of their claims if the requisite vote is obtained, but it cannot deprive non-consenting parties of their property rights merely because the Plan is confirmed. Because the Plan forces a compromise on parties without their consent it was improperly confirmed and, therefore Appellants are likely to succeed on appeal.

**B.  Appellants Will Suffer Irreparable Injury If A Stay Pending Appeal Is Not Granted**

In order to satisfy the "irreparable harm" element, the appellant must demonstrate that such injury is likely before the other requirements will be considered. To meet this burden, the appellant must demonstrate that the injury is imminent -- not remote -- or speculative. *In re City of Bridgeport*, 132 Bankr. 81, 83 (Bankr. D. Conn 1991). In other words, to show irreparable harm, the appellant must prove that the injury is "actual and not theoretical . . 'Relief will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Co. v. F.E.R.C.*, 244 U.S. App. D.C. 349, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 75 L. Ed. 602, 51 S. Ct. 286 (1931)).

Where adequate compensatory relief will not be available after the appeal is resolved, financial injury is sufficient to constitute irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974); Goldie's Bookstore, Inc. v. Superior Court of California, 739 F.2d 466, 471 (9th Cir. 1984).

Here, the Debtors' Liquidating Trust is obligated to disburse the Segregated Funds

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

16

1  under the Plan absent a stay. While the Appellants do not know, and could not possibly
2  know, exactly when the Segregated Funds will be disbursed, it will certainly occur before
3  this appeal is resolved. As a result, the liquidating Debtors will be left with no funds to
4  remedy Direct Lenders if Appellants' appeal is successful. Thus, Appellants are simply
5  requesting that the Segregated Funds not be disbursed pending resolution of this appeal.
6  Appellants do not seek to stay continuing payments to Direct Lenders on performing loans.
7      In addition, the deprivation of constitutional rights, such as due process, also causes
8  irreparable harm. *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992). When preliminary
9  injunctions issue for alleged due process violations, irreparable harm exists when there is
10 "no legal avenue open by which to recoup financial losses." *See U.S. v. Michigan,* 230
11 F.R.D. 492, 495 (D. Mich. 2005); *Mich. Bell Telephone Co. v. Engler*, 257 F.3d 587, 598
12 (6th Cir. 2001); see also *Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999) ("the
13 district court would not be able to grant any legal relief in the event that the procedures are
14 found to be defective").
15     Article IV of the U.S. Constitution protects against the taking of property without
16 due process. As shown above, compliance with Rule 7001 is required to afford due process
17 in connection with a Bankruptcy Court sanctioned taking of an individual's property, as
18 here. Therefore, because no funds will be available (i.e the no Segregated Funds) absent
19 a stay preserving the Segregated Funds, it will be impossible to afford Appellants
20 meaningful due process.
21 ///

22 **C.**    <u>**A Stay Will Cause No Irreparable Harm To Debtors**</u>

23     As noted above, the Appellants obtained a temporary stay pending appeal from the
24 B.A.P., which was ultimately quashed by the District Court upon Debtors' Quash Motion.
25 *Exhibit B*. In the Quash Motion, the Debtors argued that the stay would cause irreparable
26 harm to the Debtors by threatening the sale to Compass, which is the "primary means for
27 implementing the Debtors' Plan." See *Quash Motion,* p. 17, ln. 22; p. 18, lns. 1-21.
28 Beyond potentially compromising the sale to Compass, the Debtors did not assert any other

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

17

1  potential irreparable harm caused by the stay.

2  On Friday, February 16, 2007, the sale to Compass closed. Thus, the only
3  irreparable harm relied upon by Debtors is now a moot point. The limited stay sought by
4  Appellants cannot now compromise the Compass sale and, therefore, cannot cause
5  irreparable harm to the Debtors.

6  Being sensitive to the Debtors' concerns regarding the Compass sale, Appellants
7  waited until after closing to seek a stay in this Court. Now that the Compass sale has
8  closed, there is no potential irreparable harm to any party and, thus, Appellants now seek
9  the limited stay requested above.

10  **D.   A Stay Pending Appeal Will Do No Harm To The Public Interest**

11  All interests impacted by this appeal and the requested stay are private in nature.
12  There is no public interest implicated, beyond ensuring Direct Lenders are afforded due
13  process. In this regard, a stay will in not harm public due process interests. To the
14  contrary, a stay is necessary to ensure Constitutionally guaranteed due process rights will
15  be not be irreparably harmed.

16  **E.   This Court Should Not Require Appellants To Post A Bond**

17  Rule 8005 does not obligate a bond, but, rather, provides that this Court may
18  condition the relief it grants under the Rule on the filing of a bond or other appropriate
19  security. Here, simply prohibiting the Debtors from spending the Segregated Funds is an
20  appropriate order that protects all parties. First of all, the sum of the Segregated Funds will
21  remain available to the successful party after the appeal is resolved. Secondly, it is
22  manifestly unfair to require the Direct Lenders, whose funds were first stolen by the
23  Debtors, who have learned the property securing their loans was worth far less than
24  expected, and who have had their post-petition payments from third-party borrowers taken
25  by Debtors, to post a bond for the same money that was wrongfully taken and is already
26  being held in a segregated account.

27  In their Quash Motion, Debtors indicated that a $20 million bond would be necessary
28  to protect them if a stay was entered. However, the entire basis for that bond was the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

18

potential that the Compass sale would fail to close if the stay was entered. Now that the Compass sale has closed, these alleged dangers no longer exist. Thus, as the Segregated Funds provide ample security to remedy any harm on appeal, no bond should be required by this Court.

**IV.**
**CONCLUSION**

As detailed above, Appellants request a limited stay pending appeal which will stay the disbursement of the Segregated Funds, but will not stay continuing monthly payments to Direct Lenders on performing loans.

DATED this 20th day of February, 2007.

LAW OFFICES OF ALAN R. SMITH

/s/ Alan R. Smith
By_____
ALAN R. SMITH, ESQ.
Attorney for the Lenders Protection Group.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders (Cangelosi)\Appeals\MOT stay pending appeal.SECOND REQUESTwpd.wpd

19