# EXHIBIT B

1  Annette W. Jarvis, Utah Bar No. 1649
   RAY QUINNEY & NEBEKER P.C.                    **E-FILED ON JANUARY 18, 2007**
2  36 South State Street, Suite 1400
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
4  Facsimile: (801) 532-7543
   Email: ajarvis@rqn.com
5
6  Lenard E. Schwartzer, Nevada Bar No. 0399
   Jeanette E. McPherson, Nevada Bar No. 5423
7  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
8  Las Vegas, Nevada  89146-5308
   Telephone:  (702) 228-7590
9  Facsimile:  (702) 892-0122
   E-Mail:  bkfilings@s-mlaw.com
10
11 Attorneys for Debtors and Debtors-in-Possession

12                **UNITED STATES DISTRICT COURT**

13                **DISTRICT OF NEVADA – LAS VEGAS**

14 THE LENDERS PROTECTION GROUP; CHARLES
   B. ANDERSON TRUST; RITA P. ANDERSON          Case No. 07-00072 RLH GWF
15 TRUST; BALTES CO.; KEHL FAMILY MEMBERS;
   MOJAVE CANYON, INC.,                          **JOINT EMERGENCY MOTION TO**
16                                               **QUASH STAY PENDING APPEAL,**
                                                 **VACATE TEMPORARY STAY**
17                                  Appellants,   **ORDER, AND REFER STAY**
                                                 **MOTION TO THE BANKRUPTCY**
18 v.                                            **COURT**

19 USA COMMERCIAL MORTGAGE CO., et al.,

20                                  Appellees.    Case No. BK-S-06-10725 LBR
                                                 Case No. BK-S-06-10726 LBR
21 In re:                                        Case No. BK-S-06-10727 LBR
                                                 Case No. BK-S-06-10728 LBR
22 USA COMMERCIAL MORTGAGE CO.; USA              Case No. BK-S-06-10729 LBR
   CAPITAL REALTY ADVISORS, LLC; USA
23 CAPITAL DIVERSIFIED TRUST DEED FUND,          Chapter 11
   LLC; USA CAPITAL FIRST TRUST DEED FUND,
24 LLC, and USA SECURITIES, LLC,                 Jointly Administered Under
                                                 Case No. BK-S-06-10725 LBR
25                                  Debtors.

26 / / /

27 / / /

28 / / /

Emergency Motion To Vacate The Stay                    1                    EXHIBIT " B "

1   This is an emergency motion to set aside an unbonded stay pending appeal entered

2   yesterday by the United States Bankruptcy Appellate Panel of the Ninth Circuit on an *ex parte*

3   basis. As is explained below, such stay threatens to destroy seven months of work that cost

4   investors millions of dollars of professional fees, and will cause irreparable harm to thousands of

5   creditors and investors.

6   This Joint Emergency Motion to Quash Stay Pending Appeal, Vacate Temporary Stay

7   Order, and Refer Stay Motion to the Bankruptcy Court ("Motion") involves an appeal of an *Order*

8   *Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* (the

9   "Confirmation Order") entered by the United States Bankruptcy Court for the District of Nevada

10  on January 8, 2007 in the above-captioned chapter 11 cases ("Chapter 11 Cases") of USA

11  Commercial Mortgage Company ("USACM"), USA Securities, LLC ("USA Securities"), USA

12  Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC

13  ("DTDF"), and USA Capital First Trust Deed Fund, LLC ("FTDF" and, together with DTDF, the

14  "Funds" and, collectively with USACM, USA Securities, USA Realty, and DTDF, the "Debtors").

15  A Notice of Appeal from the Confirmation Order was filed by the "Lenders Protection Group"

16  ("LPG") and Charles B. Anderson Trust, Rita P. Anderson Trust, Baltes Company, Kehl Family

17  Members, and Mojave Canyon, Inc. (the "Jones Vargas Direct Lenders" and together with the

18  LPG, the "Appellants"), and pursuant to 28 U.S.C. § 158, the appeal was automatically assigned to

19  the United States Bankruptcy Appellate Panel of the Ninth Circuit. Pursuant to 28 U.S.C. §

20  158(c)(1)(B) and Federal Rule of Bankruptcy Procedure 8001(e), however, the Debtors have

21  elected to have this appeal heard by this Court. The present Motion involves an Order Granting

22  Temporary Stay ("Stay Order"), a copy of which is attached to the Memorandum of Points and

23  Authorities as <u>Exhibit 1</u>, that was entered by the Bankruptcy Appellate Panel less than 24 hours

24  after the Appellants filed their Notice of Appeal, without any input from the Debtors or other

25  parties in interest.

26  By this Motion, the Debtors, along with the Official Committee of Equity Security Holders

27  of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee"), the Official Committee of

28  Holders of Executory Contract Rights through USA Commercial Mortgage Company (the "Direct

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Lender Committee"), the Official Committee of Equity Security Holders of USA Capital

2   Diversified Trust Deed Fund, LLC (the "DTDF Committee"), and the Official Unsecured

3   Creditors' Committee for USA Commercial Mortgage Company (the "Unsecured Creditors'

4   Committee," and together with the FTDF Committee, the Direct Lender Committee, and the

5   DTDF Committee, the "Committees") appointed in the Chapter 11 Cases (collectively, the

6   "Movants") respectfully move this Court, sitting as an appellate court in bankruptcy, on an

7   emergency basis pursuant to Federal Rule of Bankruptcy Procedure 8011(d) and Local Rule 8018

8   for an order (1) quashing the stay granted by the Bankruptcy Appellate Panel, (2) vacating the

9   Stay Order, and (3) entering an Order referring the Appellants' *Emergency Motion for Stay*

10  *Pending Appeal* (the "Stay Motion") to the Bankruptcy Court for determination on its merits as

11  required under Federal Rule of Bankruptcy Procedure 8005.

12      Alternatively, if this Court does not vacate the Stay Order and refer the Appellants' Stay

13  Motion to the Bankruptcy Court for consideration in the first instance, it is requested that this

14  Court (a) alter and expedite the briefing schedule set forth on the Stay Order, with oppositions to

15  the Stay Motion to be filed by 5:00 p.m. on January 23, 2007, and any reply to be filed by noon on

16  January 25, 2007, (b) schedule a hearing on the Stay Motion on an expedited basis on or as close

17  to January 26, 2007 as possible, and (c) if the Court is inclined to grant a stay, require the

18  Appellants to post a bond in an initial amount of at least $20 million.

19      This Motion is based on the annexed Memorandum of Points and Authorities, and

20  Declarations of Annette Jarvis (the "Jarvis Declaration") and Thomas J. Allison (the "Allison

21  Declaration"), filed concurrently herewith, and any evidence to be submitted prior to or at the

22  hearing on the Motion on an emergency basis.

23                          **POINTS AND AUTHORITIES**

24  **I.    INTRODUCTION**

25      The Appellants are unhappy with certain aspects of a reorganization plan confirmed by the

26  Bankruptcy Court that implements an asset sale and compromises among parties in interest, and

27  was approved by all voting classes of creditors and equity interests. The Appellants set forth their

28  reasons in their Stay Motion that they apparently have been preparing since the December 20,

3

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   2006 hearing before the Bankruptcy Court on the confirmation of the plan.  The Movants will

2   address the legal errors in the Appellants' reasoning and legal justifications for the Confirmation

3   Order in a separate response.  Here, the Movants ask this Court to require the Appellants' Stay

4   Motion to be heard by the Bankruptcy Court in the first instance as required under Federal Rule of

5   Bankruptcy Procedure 8005.  Cf. Fed. R. App. P. 8(a).

6        Judge Riegle is not biased and prejudiced, and she told the Appellants that she would hear

7   a stay motion on 3-days' notice, and specifically refused to shorten the standard 10-day stay of the

8   Confirmation Order to enable an appellate stay motion to be heard.  Judge Riegle knows the facts

9   relevant to the Stay Motion and is best able to evaluate whether a stay of only part of the

10  Confirmation Order as the Appellants propose is possible and practicable - information this Court

11  should have when reviewing any stay ruling.  She knows the damages that would result from a

12  stay and her assessment will be important to any ruling on the appropriate bond for a stay pending

13  appeal.  Only with factual findings from the trial court can an appellate court weigh whether the

14  lower court's decision on a stay is an abuse of discretion.

15       The Appellants have deliberately avoided filing their stay request at the Bankruptcy Court

16  as the applicable Rules require.  They deliberately filed their emergency Stay Motion with the

17  Bankruptcy Appellate Panel on the same day the Bankruptcy Court held omnibus hearings in the

18  Chapter 11 Cases--where an appellate stay motion could have and should have been heard.  They

19  succeeded in having the Bankruptcy Appellate Panel impose a temporary stay before the Panel

20  even received a response from the Movants.[1]  The Panel's temporary Stay Order should be

21  quashed, and this Court should refer the Stay Motion to the Bankruptcy Court or direct the

22  Appellants to file the Stay Motion in the first instance in the Bankruptcy Court.

23       Only if the Stay Order is lifted can the sale of estate assets proceed to close (which

24  Appellants don't contest), reducing the harm that will otherwise result to thousands of investors

25  and other creditors.  If the Bankruptcy Court denies a stay, or the Appellants disagree with the

---

27  [1]    That order, attached hereto as Exhibit 1, recognizes that it is subject to modification upon
28  review of submissions from both sides, providing internally for the temporary stay "unless

4

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    bond amount it orders, this Court, sitting as the appellate court, can hear the Stay Motion with the

2    benefit of a factual record below from the bankruptcy judge who has in-depth knowledge of the

3    facts, issues and consequences of imposing a stay.

4        From the outset of the Chapter 11 Cases, the Debtors and the Committees have worked

5    diligently to extricate thousands of investors from a very painful and complex situation.  In short,

6    USACM, a loan servicing company, facilitated individual investments in partial interests in loans

7    to third party borrowers secured by first trust deed mortgages to more than 3,600 individual

8    investors (the "Direct Lenders").[2]  DTDF and FTDF, two investment funds, with more than 1,300

9    and 950 members, respectively, were also involved in loaning money to third party borrowers

10   under the direction and control of USACM and its insiders.  USACM, DTDF, and FTDF had been

11   fraudulently mismanaged to the point where they, along with two other affiliated entities, ground

12   to a halt and had no choice but to initiate chapter 11 proceedings.  At such time, in April 2006,

13   information was scarce, and the status of investments made through USACM and in the Funds

14   was in doubt, leaving thousands of investors, many of whom depend on such investments for a

15   large portion of their income, in a state of uncertainty.

16       The Debtors and Committees understood all too well that every day the Debtors remained

17   in chapter 11 exacted a steep toll on the USA Capital investors and, accordingly, acted with the

18   mandate to resolve the Chapter 11 Cases with all due speed in a manner that would maximize

19   recovery to investors.  Ultimately, in December 2006, months of analysis, negotiation, and

20   litigation, culminated in a successful auction for certain of the Debtors' assets to Compass Partners

21   LLC ("Compass") and the filing of the "Debtors' Third Amended Joint Chapter 11 Plan of

22   Reorganization" (the "Plan").  The Plan was fully supported by each of the Committees.  While

23   the asset sale to Compass is the cornerstone of the Plan, the Plan also consists of multiple,

24   carefully crafted compromises among five separate and divergent constituencies representing over

25   4,000 people, which paves the way for the consummation of the Plan.  The Plan was ultimately

26   ───────────────────────────────

27   otherwise ordered."

28   [2]       In the loans that USACM brokered, anywhere from 2 to 400 Direct Lenders could be

5

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   approved by all classes of creditors and equity interest holders entitled to vote on the Plan and,

2   thereafter, the Plan was confirmed by the Bankruptcy Court.    The confirmed Plan provides

3   substantial benefits to all parties in interest: (i) over 3,600 Direct Lenders will have their loan

4   servicing agreements transferred to an experienced loan servicer and are unlikely to be the subject

5   of lawsuits by the Debtors to recover funds;[3] (ii) the anticipated net recovery to FTDF members is

6   expected to top more than 70%, whereas in liquidation it would be markedly less than 50%; and

7   (iii) both DTDF and the USACM Trust will have funding to investigate and pursue litigation

8   against the Debtors' insiders for the malfeasance they perpetrated on thousands of individual

9   investors, and other steps necessary to achieve a recovery for its investors.    If, however, the

10   Confirmation Order is not a final order as of February 16, 2007, Compass is not obligated to close

11   the sale, the Plan will crater, and nearly 4,000 investors who depend on this income for day-to-day

12   living will be irreparably harmed.

13          Of course, the Plan did not please everyone, particularly those, such as the Appellants, who

14   have trouble accepting the fact that, at its core, the bankruptcy process is an equitable one

15   unfolding in real-time and guided by compromises, among various constituencies that have

16   competing (and strong) claims to the very same pool of assets.    Now, having failed in their attempt

17   to derail the Plan, not only through filing formal objections to confirmation, but also by circulating

18   unapproved solicitations of votes on the Plan containing factual and legal misrepresentations as

19   well as inflammatory remarks to thousands of parties entitled to vote on the Plan, the Appellants

20   have appealed the Confirmation Order.    In this appeal, which was automatically assigned under 28

21   U.S.C. § 158 to the Bankruptcy Appellate Panel, the Appellants improperly filed their Stay

22   Motion with the Bankruptcy Appellate Panel, as opposed to the Bankruptcy Court, see FED. R.

23   BANKR. P. 8005, and have obtained on an *ex parte* basis from the Bankruptcy Appellate Panel a

24

25   investors on a single loan.

26   [3]        Following a two-year tolling period for initiating actions against Direct Lenders, the
     USACM estate may then consider whether it is in its interests to bring lawsuits against Direct

27   Lenders for the recovery of certain funds.   As this two-year period will allow the USACM estate
     to recover these funds by netting from borrower payments to the new servicing agent, it is highly

28   unlikely that these lawsuits will ever be pursued.

6

Emergency Motion To Vacate The Stay

Case 2:07-cv-00072-RLH-GWF    Document 1-1    Filed 01/18/2007    Page 7 of 21

1   temporary stay until briefing is submitted and a hearing is held on a permanent stay of "certain

2   aspects" of the Confirmation Order.  The Appellants make a great show in the Stay Motion of

3   celebrating the fact that the requested stay of the entire Confirmation Order is just temporary and

4   that the permanent stay requested applies only to "certain aspects" of the Confirmation Order.

5        Despite their attempt to appear eminently reasonable, however, the Appellants' Stay

6   Motion is procedurally defective and, if upheld even in part, seriously threatens not only to destroy

7   tens of millions of dollars in value created by the joint efforts of the Debtors and Committees that

8   benefit over 3,600 investors (the requisite majority of which voted in favor of the Plan), but also to

9   force the Debtors into a chapter 7 liquidation, which, as demonstrated in conjunction with the

10  confirmation of the Debtors' Plan, will provide significantly less return to thousands of investors.

11       Unfortunately, even a partial stay of the Confirmation Order will not have the limited

12  effect asserted by the Appellants, but will cause the carefully negotiated and agreed upon

13  resolution of these Chapter 11 Cases to unravel irrevocably.

14       Cognizant of the Bankruptcy Court's detailed knowledge of the Chapter 11 Cases and the

15  strong rationale underlying the Plan, including the compromises and the sale to Compass, as well

16  as the Confirmation Order, the Appellants have attempted to circumvent the Federal Rules of

17  Bankruptcy Procedure ("Bankruptcy Rules") by improperly filing their Stay Motion with the

18  Bankruptcy Appellate Panel in the first instance rather than with the Bankruptcy Court.  Perhaps

19  relying on Appellants' unjustified contention that the Bankruptcy Court already decided not to

20  grant a stay pending appeal, the Bankruptcy Appellate Panel, without giving the Debtors or

21  Committees any chance to be heard, entered the Stay Order within hours of receiving the Stay

22  Motion, granting a stay of the Confirmation Order without bond until February 20, 2007 (the

23  "Temporary Stay") and setting a briefing schedule on the Stay Motion that extends into February.

24       In so doing, the Bankruptcy Appellate Panel was not informed by the Appellants or

25  otherwise that Compass has no obligation to consummate the sale (the cornerstone of the Plan and

26  its compromises) if the Confirmation Order is not a final order by February 16, 2007, and

27  consequently, the Bankruptcy Appellate Panel set a briefing schedule that did not meet the

28  exigencies in these Chapter 11 Cases.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

7

Emergency Motion To Vacate The Stay

1    As set forth in detail herein, anything more than a cursory glance at a leading bankruptcy

2    treatise reveals the futility and impropriety of this maneuver:  the Appellants must first move for a

3    stay pending appeal in the Bankruptcy Court and, therefore, the Temporary Stay granted by the

4    Bankruptcy Appellate Panel should be quashed, the Stay Order should be vacated, and the

5    Appellants should be required to file their Stay Motion with the Bankruptcy Court in the first

6    instance or this Court should refer the Stay Motion to the Bankruptcy Court.  In the event that this

7    Court elects not to require the Appellants to file the Stay Motion with the Bankruptcy Court or

8    otherwise refer it to that Court, the Movants respectfully submit that the Court should set an

9    expedited briefing schedule so that if the Stay Motion is denied, the Sale can still close and the

10    Plan can still become effective.  In addition, the Court should require the Appellants to post an

11    initial bond in the amount of $20 million pending the determination of the Stay Motion and the

12    Appeal.

13    **II.    FACTS**

14    1.    On April 13, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for

15    relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") thus

16    commencing the Chapter 11 Cases.

17    2.    The Debtors continue to operate their businesses as debtors in possession pursuant

18    to sections 1107 and 1108 of the Bankruptcy Code.

19    3.    The Debtors filed the Plan[4] on November 15, 2006.

20    4.    The Plan represents the culmination of lengthy, in-depth negotiations among the

21    Debtors, the Committees, and other parties in interest, which resolves various complex disputes

22    through a series of intricate, interwoven compromises among five separate constituencies,

23    representing over 4,000 parties in interest, at the crux of which lies the anticipated sale to

24    Compass.

25    5.    On December 7, 2007, USACM and FTDF held an auction for the sale ("Sale") of

26    substantially all of their respective assets, including all of USACM's rights to service

27    _____

28    [4]Unless otherwise noted, any capitalized term not otherwise defined herein shall have the meaning

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

1    approximately 115 loans for 3,600 investors, accrued related fees, and the FTDF's partial

2    ownership interests in 47 loans, which will provide the foundation for the recovery to

3    approximately 950 FTDF members who will receive a pro rata share of at least $48 million.  At

4    the conclusion of the auction, Compass emerged as the successful bidder, with a purchase price of

5    more than $67 million.

6         6.    The terms of the Sale were documented in the Asset Purchase Agreement, dated

7    and effective as of December 8, 2006 [Bankruptcy Docket No. 2164] (the "Asset Purchase

8    Agreement"), made by and between USACM and FTDF (together with USACM, the "Sellers")

9    and DTDF, USA Realty and USA Securities, as acknowledging parties, and Compass.

10         7.    On December 19, 2006 and December 20, 2006, the Bankruptcy Court held

11    hearings on confirmation of the Plan.  At the December 20, 2006 hearing, the Bankruptcy Court

12    orally confirmed the Plan and made oral findings on the record in support thereof.

13         8.    In rejecting Appellants' objections that their property had been taken from them

14    without due process, the Bankruptcy Court explained that Debtors had made over $39 million in

15    payments to investors that were illegal under Nevada law.  N.R.S. § 645B.250.  Although the

16    parties have referred to these illegal payments as "Prepaid Interest", Judge Riegle explained that

17    these payments were not a prepayment, they were illegal.  Jarvis Declaration, Exhibit 3

18    (December 20, 2006 transcript at pp. 15-16).  Approximately $32 million of these funds are now

19    held by USACM as loan servicer, and more will be collected by Compass after the closing and

20    remitted to USACM pursuant to the Plan.  Appellants at least seek to carve this provision out of

21    the Plan by their request for a stay.

22         9.    On December 20, 2006, drafts of a proposed confirmation order and proposed

23    findings were circulated for comments to all counsel that appeared at the confirmation hearing.

24    On December 30, 2006, counsel for Appellants notified other counsel that his clients intended to

25    object to the form of order and findings.

26         10.    Thereafter, on January 8, 2007, the Bankruptcy Court entered the Confirmation

27    

28    ascribed to such term in the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Order. Among other things, the Confirmation Order confirms the Plan and approves the Sale

2    and the Asset Purchase Agreement.

3        11.    On January 16, 2007, the LPG filed a notice of appeal of the Confirmation Order,

4    which notice was amended on January 17, 2007 to include the Jones Vargas Direct Lenders as

5    appellants. Copies of these notices of appeal with the attached confirmation order and findings

6    are attached hereto as Exhibits 2 and 3. Consistent with 28 U.S.C. § 158, the appeal was

7    automatically assigned to the Bankruptcy Appellate Panel.

8        12.    On January 17, 2007, the Appellants filed their Stay Motion with the Bankruptcy

9    Appellate Panel, seeking a stay of the Confirmation Order pending their appeal thereof, without

10    bringing any such motion before the Bankruptcy Court in the first instance, as required by

11    Bankruptcy Rule 8005. A copy of the Stay Motion is attached as Exhibit 4.

12        13.    USACM's most recent operating report demonstrates that through November

13    2006, its expenses and the professional fees charged to its estate exceed its income by $3.5

14    million, a trend that is accelerating. The creditors literally can not afford to have Debtors remain

15    in chapter 11 as the expenses of administration mount. Moreover, if the cases convert to chapter

16    7, the effects on the projected recovery to all parties will be devastating. By way of example,

17    recovery to the FTDF members will certainly be reduced by over 20% of the already discounted

18    recovery.

19        14.    No party had the chance to brief, argue or formally oppose the relief requested by

20    the Appellants. While the Appellants had almost a month to assemble the Stay Motion, Debtors'

21    counsel had less than a day to respond to the informal telephonic inquiries made by the clerk to

22    the Bankruptcy Appellate Panel. Importantly, no other party-in-interest, including the

23    Committees, could voice any opposition to the Appellants' request for a temporary stay.

24        15.    The very same day that the Stay Motion was filed, the Bankruptcy Appellate

25    Panel issued the Stay Order, granting the Temporary Stay through February 20, 2007, with

26    responses to Appellees' Stay Motion due by Appellees on January 29, 2007, and replies due by

27    Appellants on February 5, 2007. *See* **Exhibit 1.**

28        16.    On January 18, 2007, pursuant to 29 U.S.C. § 158(c)(1)(B), the Debtors elected

Emergency Motion To Vacate The Stay

1    to have the appeal heard by this Court.

2        17.    For the reasons set forth herein, it is respectfully submitted that the Temporary

3    Stay issued by the Bankruptcy Appellate Panel should be quashed, they Stay Order should be

4    vacated, and the Court should either order the Appellants to file their Stay Motion in the

5    Bankruptcy Court or refer the Stay Motion to the Bankruptcy Court for determination on the

6    merits in order to seek such relief.

7    **III.    ARGUMENT**

8    **A.    The Appellants did not Demonstrate Adequate Justification for Failure to**
**Bring the Stay Motion Before the Bankruptcy Court in the First Instance; and Therefore the**
9    **Temporary Stay Should be Quashed, the Stay Order Should be Vacated, and the Court**
**Should Order the Stay Motion to be Either Filed in or Referred to the Bankruptcy Court for**
10   **Determination on the Merits.**

11

12       1.    Bankruptcy Rule 8005 provides that "[a] motion for a stay of the judgment,

13   order, or decree of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy judge in

14   the first instance," and that such a motion may only be brought initially before the District Court

15   or Bankruptcy Appellate Panel if the motion "show[s] why the relief . . . was not obtained form the

16   bankruptcy judge." FED. R. BANKR. P. 8005.  There was absolutely no justifiable basis for the

17   Appellants to bring their Stay Motion before the Bankruptcy Appellate Panel in the first instance,

18   and the Bankruptcy Appellate Panel made no such findings in its Stay Order granting the

19   Temporary Stay.

20       2.    Aware of the weakness of their position, the Appellants intentionally filed

21   their Stay Motion in the wrong court, in order to seek emergency relief from a court unfamiliar

22   with the complex equities of these Cases.  The Bankruptcy Appellate Panel entered the Stay Order

23   without affording the Movants due process.  Therefore, the Temporary Stay granted by the

24   Bankruptcy Appellate Panel should be quashed, the Stay Order should be vacated, and Appellants

25   should be ordered to seek relief in the Bankruptcy Court in the first instance or this Court should

26   refer the Stay Motion to the Bankruptcy Court for determination on the merits.

27       3.    The Appellants erroneously argued in their Stay Motion that they should be

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

1  excused from complying with the procedural requirements of Bankruptcy Rule 8005 by asserting

2  that the Bankruptcy Court "made it clear on several occasions that it would not grant a stay

3  pending appeal." Stay Motion at 4, ln. 10-11. Not only is this argument legally inaccurate, but it

4  is factually disingenuous—the Bankruptcy Court not only indicated its willingness to hear a

5  motion for stay pending appeal (having withdrawn its earlier indication that it was inclined to deny

6  such a motion), but also set an expedited timeframe of only two days' notice for hearing on such a

7  motion to accommodate the Appellants' concerns. See Jarvis Declaration at ¶ 2. The Bankruptcy

8  Court also expressly denied a request to waive the 10-day automatic stay of Bankruptcy Rule

9  6004(g) to enable an appeal. See Jarvis Declaration, Exhibit 3 (Transcript at pp. 37-42).

10         4.      Contrary to the Appellants' inaccurate unspecific hyperbole of "personal

11  attacks and disrespectful treatment by the Bankruptcy Court" (Stay Motion at 4, ln. 27-28), the

12  Bankruptcy Court recognized and complemented the Appellants' efforts in arguing their objections

13  to the confirmation of the Plan. In fact, at the hearing on December 20, 2006, Judge Riegle stated:

> Okay. Thank you. Let me just add in conclusion, I know how
> hard, I can't say I know, I can understand how difficult people's
> feelings must be in this case and the trauma they have gone
> through and will go through, and I appreciate that. And I
> appreciate the fact that Mr. Smith has, you know, represented his
> clients in the best manner possible. But there is no easy answer,
> but I think this solution is appropriate on all of the facts and
> circumstances, and does the best job possible to make the best of a
> terrible situation. . . .
> And I appreciate everybody's efforts, and although it may have
> been harder on some people, and Mr. Smith, I apologize to you,
> but, you know, it's part of the process. It's nothing personal. I
> know you were trying to do your best job representing your clients,
> and you did a good job of that. The fact I disagree doesn't take
> away from that.

23  See Jarvis Declaration, Exhibit 3 (Dec. 20, 2006 Hrg. Tr. at 29:13-24; 30:4-11 (emphasis added)).

24  That Judge Riegle reached a different conclusion than that urged by the Appellants after

25  consideration of the merits of these cases (an inevitable result for at least one party in the judicial

26  resolution of any disputed matter) does not support unfounded accusations of unfair treatment.

27         5.      There is no question that the Bankruptcy Court, having full familiarity with

28  the facts and equities of the Chapter 11 Cases as a whole is in the best position to weigh the

Case 2:07-cv-00072-RLH-GWF    Document 1-1    Filed 01/18/2007    Page 13 of 21

1  factors that must be examined in the context of a Bankruptcy Rule 8005 determination. That is

2  particularly important in this case, because the Appellants contend that they can appeal part of the

3  Confirmation Order without disturbing the asset sale portion of the order. The Bankruptcy Court

4  is in the best position to evaluate that contention, given its understanding of the entire Plan and the

5  cases. The Bankruptcy Court's assessment of the relevant facts will be important to this Court's

6  determination of any appeal of a stay order or stay denial order. Indeed, the importance of the

7  Bankruptcy Court's consideration of the request in the first instance has been recognized by the

8  Bankruptcy Appellate Panel:

9      [Bankruptcy Rule 8005's predecessor, Bankruptcy Rule 805,] is . . . a rule
10     of practicality and propriety. Accordingly, appellate courts are reluctant
    to entertain a request for stay unless it is demonstrated that the trial judge
11     is unavailable or that the request was denied by the trial judge. . . .

12     It is thus apparent that the Supreme Court, while asserting its power,
13     deemed it advisable to rest the discretion to suspend the operation of the
    writ of injunction pending appeal from final decree with the trial judge,
14     and established the rule that in general *the appellate court would not,*
    pending appeal and in advance of a decision by the court upon the merits,
15     *interfere with the discretion lodged with the trial judge.* This conclusion is
    bottomed on manifest grounds of propriety.

16     ***

17

18     Any other rule would distort the delicate balance between trial and
    appellate levels and deny recognition of their respective roles, all to the
19     detriment of the judicial system and of those it serves. Litigants are
    entitled to their day in court, and they are entitled to have the trial court's
20     action reviewed but they are not entitled to a second trial or hearing,
    whether from another trial judge or from an appellate judge.

21

22 See In re Wymer, 5 B.R. 802, 807 (B.A.P. 9th Cir. 1980) (citations and quotations omitted;

23 emphasis added in Wymer opinion).

24     6.    As pointed out by the Court of Appeals for the Fifth Circuit in *In re Montes,*

25 677 F.2d 415, 416 (5th Cir. 1982), it was inappropriate for the appellate court to consider a motion

26 for a stay of an injunction in the first instance: "As an appellate court, we cannot take evidence or

27 hear matters initially. We are dependent entirely on the record made in a trial court. None has been

28 made."

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

7.     The Bankruptcy Appellate Panel and this Court lack the evidence to make a determination of the affect of the stay and the damages the stay would cause.  Such evidence is necessary because the issuance of a stay requires the balancing of the following factors:

(1) whether appellant has made strong showing that he is likely to prevail on merits of appeal,

(2) where appellant has shown irreparable injury if stay is not granted,

(3) whether a stay will substantially harm other parties to litigation, and

(4) whether a stay is in public interest.

See Securities Investor Protection Corp. v. Blinder, Robinson & Co., Inc., 962 F.2d 960, 968 (10th Cir. 1992); U.S. v. Baylor University Medical Center, 711 F.2d 38, 39 (5th Cir. 1983); Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).

8.     Accordingly, "the [bankruptcy] judge's rulings on stays pending appeal [may] be disturbed only in the event of error or abuse of discretion."  Wymer, 5 B.R. at 808; accord In re First South Savings Ass'n, 820 F.2d 700, 707, 709 (5th Cir. 1987); In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (grant or denial of stay reviewed for abuse of discretion); Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) (applying abuse of discretion standard to request for stay of preliminary injunction); Ohanian v. Irwin (In re Irwin), 338 B.R. 839, 844 (E.D. Cal. 2006).

9.     The Appellants are fully aware of the Bankruptcy Court's heightened level of understanding of the harm posed to the Debtors, and more importantly to the over 3,600 investors, by a stay pending appeal, and the deference that will be given to the Bankruptcy Court decision if it were to deny the Appellants' request.  The Appellants thus improperly sought to circumvent the requirement that the Bankruptcy Court examine its request for a stay pending appeal in the first instance by bringing its Stay Motion, on an emergency basis, before an appellate court unfamiliar with the details of the Chapter 11 Cases.  Such blatant gamesmanship should not be countenanced by this Court.

10.     Furthermore, two of the three cases cited by the Appellants in their Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

1   Motion in support of the proposition that they should be allowed to bypass the ordinary procedural

2   requirement of bringing their Stay Motion before the Bankruptcy Court in the first instance are

3   wholly inapposite to their argument.  Those cases were, at best, misleadingly cited to the

4   Bankruptcy Appellate Panel.

5           11.    The Appellants cite to Bulluck v. Washington, 452 F.2d 1385 (D.C. Cir.

6   1971) and Tape Head Co. v. RCA Corp., 452 F.2d 816 (10th Cir. 1971) as examples of cases

7   supporting their assertion that "[c]ourts have found that this requirement [i.e., a tenable

8   explanation for why the application is not before the bankruptcy court] is satisfied where, 'to be

9   effective, relief must be immediate, and that based upon what occurred in the [bankruptcy court],

10  relief from it is improbable.'"  Stay Motion at 4, ln. 3-7.  Neither Bulluck nor Tape Head, however,

11  contain the quoted language, or provide any support whatsoever for the Appellants' position.[5]

12          12.    In Bulluck, the court denied the appellants' request for a stay pending

13  appeal, and thus declined to address the procedural propriety of the appellants' failure to bring the

14  motion for stay before the trial court the issue, stating in a footnote:

15          The motion was presented to this court and not, as is ordinarily necessary,
    to the District Court in the first instance.  As reason therefore, appellants
16  allege the urgency for immediate relief rendered application to the District
    Court impracticable.  With the disposition motion, we do not reach the
17  question whether appellants were correct in that view.

18

19  Id., 452 F.2d at 1386, n.6 (citations omitted; emphasis added).

20          13.    In Tape Head, the request for a stay pending appeal *was* filed in the first

21  instance at the trial court level, but because the appellants were unable to obtain a timely hearing

22  on the motion in the trial court (as distinguished from the case at hand, where the Bankruptcy

23  Court has indicated that it would hear the Appellants' Motion on 2 days' notice, see Jarvis

24  Declaration ¶ 2), the appellants filed a motion for stay pending appeal with the appellate court,

25

26  [5]    The Appellants' string cite also includes reference to 10-8005 Collier on Bankruptcy 15th
27  Ed. ¶ 8005.10 (2006), which, notwithstanding the Appellants' incorrect implication that the quoted
    language appears in the cases cited, appears actually to be the source of the quoted language, as
28  discussed further infra.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

1  which was set for hearing "with the apparent consent of all concerned." Id., 452 F.2d at 817. The

2  Tape Head court did deny a motion of appellees to continue the hearing pending the trial court's

3  consideration of the request for the stay (which had been set for hearing two weeks after the filing

4  of the motion with the district court), characterizing the situation as one where "a stay was first

5  requested from the district court and the district court has failed to afford the relief requested and a

6  notice of appeal has thereupon been filed." Id. at 818.

7          14.    The language quoted by the Appellants appears to be from Collier on

8  Bankruptcy, the third cite contained in the string following the quote. However, the full text of

9  this sentence actually emphasizes the importance of the Bankruptcy Court's consideration of the

10  request for a stay in the first instance, much like the Wymer decision quoted above:

11          Given the high desirability of having the bankruptcy court first pass on
           the question of a stay pending appeal, it would seem that a showing of
12          impracticability would normally require a showing that the bankruptcy
           judge is unavailable, or that the judge lacked jurisdiction, or that relief, to
13          be effective, must be immediate and that, in the nature of what occurred in
           the bankruptcy court, the requested relief is improbable.
14

15  COLLIER at ¶ 8005.10 (emphasis added).

16          15.    The wholly inaccurate use of these authorities is exacerbated in the present

17  situation by the fact that the Movants were not provided any opportunity to respond to the

18  Appellants' Stay Motion before the Bankruptcy Appellate Panel issued its stay ex parte, within

19  hours of receipt of the Stay Motion.

20          16.    The Appellants cite only one case where the appellate court agreed to hear a

21  motion for stay pending appeal in the first instance—In re Moreau, 135 B.R. 209 (N.D.N.Y.

22  1992). However, Moreau is clearly distinguishable from the situation at hand, as the bankruptcy

23  court judge in Moreau had an "apparent blanket policy against staying his own orders." Id. at 212.

24  This is simply not the case here; there is no evidence that Judge Riegle has such a blanket policy.

25  To the contrary, Judge Riegle has offered to hear a motion for stay on an expedited basis. See

26  Jarvis Declaration ¶ 2. The Appellants' concern that the Bankruptcy Court may deny its request

27  (as the Movants believe it should) on its merits is not an adequate justification for the Appellants'

28  attempt to avoid the Bankruptcy Court's determination of the matter based on its intricate

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

16

Emergency Motion To Vacate The Stay

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    knowledge of the facts and equities of these complex cases.

2        **B.    The Temporary Stay Should Be Quashed and the Stay Order Vacated Because**
     **It Was Entered Without Affording Due Process That Will Have the Effect of Irrevocably**
3    **Jeopardizing the Sale.**

4

5            1.    On the very same day that the Appellants filed their Stay Motion, the

6    Bankruptcy Appellate Panel granted the Temporary Stay without notice or opportunity for any

7    other party to object.  The Bankruptcy Appellate Panel simply accepted the Appellants' arguments

8    at face value and granted the Temporary Stay.  No party had the chance to brief, argue or formally

9    oppose the relief requested by the Appellants, including to show what irreparable harm would

10   result by the granting of the Stay Motion.  While the Appellants had almost a month to assemble

11   the Stay Motion, Debtors' counsel had less than a day to respond to the informal telephonic

12   inquiries made by a Bankruptcy Appellate Panel clerk.  Importantly, no party-in-interest,

13   including the Committees, had an opportunity to  voice any opposition to the Stay Motion on its

14   merits or otherwise.

15           2.    Not only did the Bankruptcy Appellate Panel deny all parties an opportunity

16   to oppose the Temporary Stay, but the Bankruptcy Appellate Panel also failed to recognize the

17   exigencies of this case that require an expedited briefing schedule.  The Sale – worth more than

18   $67 million and the Debtors' only viable exit strategy from chapter 11 – hangs in the balance.

19   Unless the Confirmation Order becomes a Final Order[6] by February 16, 2007 (the "Outside

20   Approval Date"), the Sale could be permanently jeopardized and the Debtors' Plan rendered

21   infeasible to the detriment to over 4,000 individuals.

22           3.    The primary means for implementing the Debtors' Plan is the Sale.  The

23   _____

24

25   [6]       Under the Asset Purchase Agreement, "Final Order" is defined to mean "an order or a
     judgment entered by a court of competent jurisdiction (x) that has not been reversed, stayed,
26   modified or amended, (y) as to which no appeal or petition for review or motion for rehearing or
     reargument has been taken or has been made, and (z) as to which the time for filing a notice of
27   appeal, a petition for review or a motion for reargument or rehearing has expired."  While this
     "Final Order" requirement can be waived if an appeal is pending, in order to close the sale
28   transaction, a stay will preclude any closing.

Emergency Motion To Vacate The Stay

1   Sale not only brings in substantial funds to the Debtors' estates, but also facilitates compromises

2   among the Debtors' various interest groups.  Compass' commitment to complete the Sale,

3   however, is not open-ended.  Under the terms of the parties' agreement, Compass has the right to

4   walk away from the deal if the Confirmation Order does not become a Final Order by the Outside

5   Approval Date.  This would have disastrous consequences for all involved in these Chapter 11

6   Cases:

> •     Without the proceeds from the Sale, the Plan is no longer feasible.
> There would be no cash out of the FTDF members of at least seventy cents
> on the dollar, and USACM would not receive at least $8 million necessary
> to pay administrative and other expenses in order to confirm the Plan.
> Further, the numerous intertwined compromises by and among the Debtors'
> estates under the Plan, which are dependent on a source of funding from the
> Sale, would unwind, resulting in more litigation, delay and expense.  As a
> result, distributions to USACM's unsecured creditors, FTDF creditors,
> FTDF equity holders, DTDF creditors, and DTDF equity holders, would be
> significantly delayed and substantially reduced.

> •     Furthermore, Direct Lenders would also be negatively impacted at a
> substantial cost.  Currently, USACM's restructuring team has been
> responsible for servicing the loans of Direct Lenders, at a significant cost to
> the Debtors' estates.  If the Plan cannot be consummated, resulting in the
> failure to transfer USACM's loan servicing rights, it is highly unlikely that
> USACM will be able to continue to service the loans for any appreciable
> period of time.  The cost of the restructuring team is not sustainable, and not
> other entity has expressed any interest in taking over the servicing
> operations of the Debtor.  As such, who will service the loans, particularly
> the non-performing loans?  Will a new servicer agree to the existing loan
> servicing fees or require higher fees?

> •     Finally, the Debtors' estates would continue to incur substantial
> administrative fees, thereby further reducing any recovery to the Debtors'
> estates.

            4.     Unfortunately, the closing of the Sale will be impossible under the briefing

schedule and stay set by the Bankruptcy Appellate Panel.  The Bankruptcy Appellate Panel

scheduled the deadline for oppositions to the Stay Motion for January 29, 2007, and the reply

deadline is not until February 5, 2007 – just 11 days prior to the Outside Approval Date.

Moreover, the Temporary Stay extends through February 20, 2007—*after* the Outside Approval

Date.  Regardless of whether Bankruptcy Court or District Court hears argument on the Stay

Motion, it must be completed on an expedited basis given the exigencies in these Chapter 11

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

18

1  Cases.

2      **C.    The Bankruptcy Court or this Court Should Set a Hearing, on an Expedited**

3  **Basis, to Determine an Adequate Bond to Protect the Debtors, their Estates, and Parties in
   Interest.**

4

5          1.    In addition to entering the Stay Order based on an improper motion and

6  without affording the Movants due process, the Bankruptcy Appellate Panel did not require the

7  Appellants to post any bond, again relying on the Appellants' one-sided and incorrect

8  representations.  The posting of a bond is crucial in this appeal and it should be required by any

9  court that may be inclined to grant the Appellants' Stay Motion, whether it be the Bankruptcy

10 Court upon re-filing or referral of the Stay Motion, or by this Court if it is determined that the

11 Appellants have shown appropriate reason to disregard the express requirement in Bankruptcy

12 Rule 8005 that motions for stay pending appeal to be heard in the Bankruptcy Court in the first

13 instance.   In the event that this Court determines that it will consider the Stay Motion on an

14 expedited basis, the Movants state the following in support of requesting that the Appellants be

15 required to post a bond.

16          2.    Courts have recognized that a "supersedeas bond provides compensation for

17 the injuries which can be said to be the natural and proximate result of the stay."  See Moore v.

18 Townsend, 577 F.2d 424, 427 (7th Cir. 1978) (supersedeas bond filed by vendor in connection

19 with stay of judgment directing specific performance of contract included the additional interest

20 that would be required to be paid by reason  delay) (quotation marks omitted); see also Lyon v. In

21 re Anderson Pipeline Co. (In re Anderson Res. Co.), 78 B.R. 603, 604 (D. Colo. 1987) ("The issue

22 on the bond amount is . . . the amount of the anticipated damage to the debtors."); In re Pub. Serv.

23 Co. of N. H., 116 B.R. at 350 (in denying stay pending appeal of confirmation order, court noted

24 that any bond "would have to cover massive amounts of accruing interest and other delay costs

25 accruing monthly").

26          3.    Furthermore, it is Appellants' burden to demonstrate that all parties will be

27 protected without a bond.  See, e.g., Baldwin-United Corp. v. Thompson (In re Baldwin United-

28 Corp.), 52 B.R. 142, 145 (Bankr. S.D. Ohio 1985) (holding that an appellant's failure to offer an

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Emergency Motion To Vacate The Stay

1    acceptable plan for the judgment's satisfaction precluded the issuance of a stay under Federal Rule

2    of Civil Procedure 62(h)); In re Theater Holding Corp., 22 B.R. 884, 885 (Bankr. S.D.N.Y. 1982)

3    ("The purpose of filing a supersedeas bond in a bankruptcy court is to indemnify the party

4    prevailing in the original action against loss caused by an unsuccessful attempt to reverse the

5    holding of the bankruptcy court.").

6          4.    The Appellants have attempted to, but have failed, to meet this burden by

7    making the mere conclusory assertions that a stay prohibiting the Debtors from spending the

8    Segregated Funds protects all parties fails to satisfy this burden.  These assertions, devoid of

9    citations to the record, demonstrate the need for the Bankruptcy Court to find the facts as the trial

10   court.  Quite to the contrary of the Appellants' assertions, the cornerstones of the Debtors' Plan

11   (the sale and the effectuation of various compromises between and among the Debtors and other

12   parties in interest) and all distributions to be made under the Plan, are jeopardized by the stay.

13         5.    Section 9.1(k) of the Asset Purchase Agreement provides that one of the

14   conditions precedent to the obligations of the Purchaser thereunder is that the Plan has been

15   confirmed by a Final Order of the Bankruptcy Court by the Outside Approval Date.  The

16   Appellants' appeal of the Confirmation Order and the Temporary Stay granted by the Bankruptcy

17   Appellate Panel threaten to completely derail the Plan by allowing Compass the opportunity to

18   walk away from the Asset Purchase Agreement, particularly if this Court does not set an expedited

19   briefing schedule on the matter.  Of particular concern is the fact that the Debtors and the

20   Committees have not received any indication from Compass that it is willing to the waive the

21   "Final Order" condition.  In fact, counsel for Compass indicated that Compass is uncertain at this

22   time whether it is willing to proceed.  See Jarvis Declaration ¶ 4.  Compass is clearly not willing to

23   waive this condition and close the Sale at this time.  With no Sale, there will be no Plan, no

24   distribution to thousands of investors, and the uninterrupted service of the Direct Lenders' loans

25   would be thrown into jeopardy.

26         6.    Moreover, even if the Purchaser were to waive the requirements of Section

27   9.1(k) of the Asset Purchase Agreement, and even if the Sale closes in a timely fashion, a stay of

28   the distribution of the Prepaid Interest pursuant to the terms of the Plan threatens to unravel the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

20

1    entire Plan.  The Debtors' use of the Prepaid Interest pursuant to the terms of the compromise with

2    the Direct Lenders as set forth in the Plan is intertwined with all other compromises set forth in the

3    plan.  Modification or elimination of even one of these interdependent compromises would

4    unwind and threaten to eviscerate the foundation of the Plan.

5              7.        Therefore, the Moving Parties request that this Court should schedule a

6    hearing, on an expedited basis, to determine the appropriate amount of bond Appellants should be

7    required to post to protect the Debtors, creditors, and thousands of investors during any stay

8    pending appeal.

9              8.        The Moving Parties believe that the Appellants should be required to submit

10    a bond in the amount of at least a $20 million.  See Allison Declaration.

11                              IV.        RELIEF REQUESTED

12              For the above reasons, the Temporary Stay should be quashed, and the Stay Motion should

13    be referred to the Bankruptcy Court for determination on the merits.  In the alternative, if this

14    Court does not vacate the Stay Order and refer the Stay Motion to the Bankruptcy Court for

15    consideration in the first instance, it is requested that this Court amend and expedite the briefing

16    schedule established in the Stay Order, with oppositions to be filed by 5:00 p.m. on January 23,

17    2007, any reply to be filed by noon on January 25, 2007, and set a hearing on January 26, 2007 or

18    as soon thereafter as the Court's calendar allows.  Furthermore, in the event that this Court

19    considers the Stay Motion and is inclined to grant a stay pending appeal, the Movants request that

20    the Court set an appropriate bond consistent with the facts stated herein.

21    Dated:  January 18, 2007.                      /s/ Lenard E. Schwartzer
                                                     Lenard E. Schwartzer, Esq.
22                                                   SCHWARTZER & MCPHERSON LAW FIRM
                                                     2850 South Jones Boulevard, Suite 1
23                                                   Las Vegas, Nevada  89146-5308
                                                     and
24                                                   Annette W. Jarvis, Esq.
                                                     RAY QUINNEY & NEBEKER P.C.
25                                                   36 South State Street, Suite 1400
                                                     P.O. Box 45385
26                                                   Salt Lake City, Utah 84145-0385
                                                     Attorneys for Debtors and Debtors-in-Possession
27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

21

Emergency Motion To Vacate The Stay