ELECTRONICALLY FILED
February 21, 2007

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
ANDREW M. PARLEN
(CA State Bar No. 230429), Members of
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788
Email:      fmerola@stutman.com
            ekarasik@stutman.com
            aparlen@stutman.com

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email: jshea@sheacarlyon.com
       ccarlyon@sheacarlyon.com
       ssherman@sheacarlyon.com

Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects<br>☐ All Debtors<br>☒ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☒ USA First Trust Deed Fund, LLC | Date:  March 1, 2007<br>Time:  9:30 a.m. |

**EXHIBIT A TO DECLARATION OF CHRISTINE M. PAJAK RE REPLY IN SUPPORT OF MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 1141 AND 1142 TO ENFORCE CONFIRMED DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AS IT RELATES TO ALLOCATION OF SALE PROCEEDS**

409281v1

**EXHIBIT "A"**

## Najolia, Gina

To: Karasik, Eve H.

Subject: RE: USA Capital: Bid Procedures

---

**From:** Pajak, Christine
**Sent:** Thursday, September 21, 2006 10:27 AM
**To:** 'Levinson, Marc A.'; Annette Jarvis
**Cc:** Ernce, Lynn Trinka; Tucker, Michael; Karasik, Eve H.; GEG Greg E. Garman; GMG Gerald M. Gordon; Charles, Robert; Allison, Thomas; Freeman, Susan; tburr@sierracgllc.com; Matt Kvarda (E-mail); Steven Strong; Merola, Frank A.
**Subject:** USA Capital: Bid Procedures
**Importance:** High

> In response to the comments by the DTDF Committee and Direct Lender Committee, we have the following concerns:
>
> **Other Committee Involvement in the Auction Process**
> The Auction is designed to obtain the best price for the assets being sold by the USACM and FTDF estates. Accordingly, these 2 estates, along with their Committees, have the greatest interest in ensuring that value is maximized. While we understand that the DTDF Committee and Direct Lender Committee want to have some oversight in making sure that a qualified loan servicer is selected, we don't believe that this interest should give your Committees veto power in determining Preliminary Qualifications, Qualified Bids, or the Successful Bidder. We strongly believe that, while your Committees should be consulted on these issues, the ultimate decision must lie with the Debtors, the USACM Committee and FTDF Committee. In other words, we do not oppose the involvement of the DTDF Committee or Direct Lender Committee but the decision-making should firmly rest with the Debtors, the USACM Committee and FTDF Committee. Finally, we also note that this process does not prejudice the rights of either the DTDF Committee and Direct Lender Committee. If, in the end, the selection of the loan servicer is unacceptable, your Committees still retain the right to oppose the sale. To address this concern, we can include a provision that reserves all of the Committees' rights to oppose the sale.
>
> **Sale of Other Assets**
> We believe that the ability of bidders to include additional assets in this single auction is very problematic. No one knows what else is being sold nor the floor price for such assets. It would make the auction process very difficult. How will the parties be able to evaluate non-comparable bids? How will the pricing be allocated? How do the parties evaluate overbids? We believe that the potential inclusion of additional assets opens up an entire hornet's nest of issues that needlessly complicate the process and fails to maximize the value of any Debtor's estate. As an alternative, we do not oppose a separate simultaneous auction being conducted so long as the assets that are being sold are clearly identified, along with a minimum floor price.
>
> **Auction Site**
> In these cases, it is critical that the auction takes place in the courtroom (to the extent Judge Riegle agrees to such a process). If the auction is outside of the courtroom, this leaves open too many opportunities for parties to finagle the auction process. By having the auction in the courtroom, the Judge is readily available to resolve any dispute that parties might have. By having the auction in the courtroom, the auction will be more orderly and efficient.
>
> If you have any questions regarding this matter, please do not hesitate to contact us directly.
>
> Christine
>
> > -----Original Message-----
> > **From:** Levinson, Marc A. [mailto:MALEVINSON@Orrick.com]

2/20/2007

**Sent:** Wednesday, September 20, 2006 9:53 PM
**To:** Annette Jarvis
**Cc:** Ernce, Lynn Trinka; Tucker, Michael; Karasik, Eve H.; Pajak, Christine; GEG Greg E. Garman; GMG Gerald M. Gordon; Charles, Robert; Allison, Thomas; Freeman, Susan; tburr@sierracgllc.com; Matt Kvarda (E-mail); Steven Strong
**Subject:** DTDF comments on the bid procedures

Annette,

In the attached, we accepted all of the changes proposed by the FTDF committee (discussed in Christine's email below). The changes address our desire that overbidders be permitted to bid on assets in addition to those contained in the Silver Point purchase agreement (defined as the "Property"), and are shown in track changes and also are highlighted in yellow. The first yellow highlighting, in paragraph 3.iv. of the bid procedures on page 2, already was a part of the procedures. Subsequent yellow highlighting shows language we added to address the issue.

Seems to us that while it may be unlikely that a new bidder would enter the fray and bid for the DTDF assets -- whether in combination with the Property or without purchasing the Property (letting Silver Point or some Overbidder do that) -- the Bid Procedures ought to to accommodate that possibility. Two potential overbidders have expressed an interest in the quirky DTFD assets.

Comment not addressed in the attached draft: I realize that while the the sale is only of FTDF and USAMC assets, the buyer will be taking over the servicing of the loans of the other direct lenders and of DTDF (at least some), and it seems to me that the Direct Lenders Committee and the DTDF Committee ought to be able to weigh in on the qualification of any Potential Bidder that seeks to take over the servicing. Indeed, a more cynical person would argue that the Direct Lenders Committee and the DTDF Committee ought to have significant input into that aspect of the decision since FTDF and USAMC will be selling their assets and fading from the post confirmation scene.

Finally, I note that the site of the auction remains a mystery. I hope and assume that the sale will be conducted at a place other than the courthouse. If I'm correct, I don't understand how the conclusion of the auction will be "announced by the Bankruptcy Court" as provided in 4.ix.

Marc

---

**From:** Pajak, Christine [mailto:CPajak@Stutman.com]
**Sent:** Wednesday, September 20, 2006 3:30 PM
**To:** Elaine Monson; Gerald M. Gordon Esq. (E-mail); Greg E. Garman Esq. (E-mail); Levinson, Marc A.; Hermann, Jeffery; Ernce, Lynn Trinka; Charles, Robert; Freeman, Susan; Merola, Frank A.; Karasik, Eve H.; Candace Carlyon; tburr@sierracgllc.com; Matt Kvarda (E-mail); Michael.Tucker@FTIConsulting.com
**Cc:** Annette Jarvis; Steven Strong; Allison, Thomas; Smith, Susan Marie; Fasel, Bill; Reed, James
**Subject:** RE: RQNDOCS-#892717-v1-redline_of_891765v4_to_891765v3.DOC

Attached hereto please see the FTD Fund Committee comments. Please note that I purposefully deleted Silver Point's attorney from my communication.

Generally speaking, the revisions look good. Below please find comments to some of our suggested changes:

1)   In reading the Bid Procedures again, I noticed that while a Qualified Bid only needs to disclose a purchase price, which must be equal to the Total Asset Purchase Price, the Joint Bid must include a purchase price that has a value of at least the Minimum Incremental Overbid. These 2 should be the same. If parties still want the stalking horse bid of Silver Point to be the Opening Bid under the

2/20/2007

Bid Procedures, I would suggest making the conforming change to the requirements of the Joint Bid (which I did in the redline attached hereto). On the other hand, if parties want Qualified Bids to be higher than that of Silver Point's, then we need to change the Bid Procedures so that Silver Point is not the Opening Bid. (It would make little sense to have people submit higher bids and then start the auction with the lowest Qualified Bid)

2) With respect to the Minimum Incremental Overbids and Overbid Increment, we would suggest that we go back with $500,000 as the initial incremental overbid (over the Break-Up Fee) and stick to our guns on $100,000 for subsequent overbids. We think the lower Overbid Increment will generate a lot more activity and interest at the Auction.

3) The proviso at the end of Paragraph 4.v. sticks out as leftovers from an earlier draft as it refers to an allocation that's not there. We suggest moving the concept to a footnote -- please see our proposed language.

4) There is no reason to include the added language that Silver Point wants in the Selection of the Next Highest Bidder. That is something Silver Point can negotiate if it wants to become the Next Highest Bidder, but we don't want every Bidder to back into a drop-dead date to close the transaction. If we're able to get a Next Highest Bidder that will keep its offer open, we should be able to get that benefit and the added language by Silver Point is likely to hinder those efforts.

Finally, we would like to see a copy of the Motion to approve the Bid Procedures as soon as possible so that there is sufficient time for all parties to comment.

If you have any questions or concerns regarding our comments, please do not hesitate to contact us directly.

Christine

-----Original Message-----
From: Elaine Monson [mailto:emonson@RQN.COM]
Sent: Wednesday, September 20, 2006 12:51 PM
To: Gerald M. Gordon Esq. (E-mail); Greg E. Garman Esq. (E-mail); Marc A. Levinson Esq. (E-mail); jhermann@orrick.com; Ernce, Lynn Trinka; Charles, Robert; Freeman, Susan; Merola, Frank A.; Karasik, Eve H.; Pajak, Christine; Candace Carlyon; tburr@sierracgllc.com; Matt Kvarda (E-mail); Michael.Tucker@FTIConsulting.com; jmccarroll@reedsmith.com
Cc: Annette Jarvis; Steven Strong; Allison, Thomas; Smith, Susan Marie; Fasel, Bill; Reed, James
Subject: RQNDOCS-#892717-v1-redline_of_891765v4_to_891765v3.DOC

All, attached is another red-line version of the bid procedures that incorporates many of the comments I have received. Let me know if you have additional comments.

****************************************************************
This Internet e-mail contains confidential information
which is intended only for the addressee and which may
be privileged under applicable law. Do not read, copy
or disseminate it if you are not the addressee. If you

have received this message in error, please notify the
sender immediately and delete it. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

===========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

===========================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/