Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**MOTION TO AUTHORIZE DEBTOR USA COMMERCIAL MORTGAGE COMPANY AS LOAN SERVICER TO ACCEPT PAYMENTS AND PROVIDE RECONVEYANCES FOR TWO COLT GATEWAY LOANS [AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC]**<br><br>Date of Hearing: March ___, 2007<br>Time of Hearing: 9:30 a.m. |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | |

Debtor in Possession USA COMMERCIAL MORTGAGE COMPANY ("USACM"), by and through its counsel Lenard E. Schwartzer, Esq. of the Schwartzer & McPherson Law Firm, hereby files its "Motion To Authorize Debtor USA Commercial Mortgage Company as Loan Servicer to Accept Payments and Provide Reconveyances for Two Colt Gateway Loans" (the "Motion"), requesting that the Court authorize USACM to do the following:

A.  Authorize USACM to accept payments of two loans (the "Colt Gateway Loans") that are owed by Borrower Colt Gateway LLC ("Colt Gateway").  One of the Colt Gateway Loans is being serviced by USACM for three Direct Lenders, one of which is Debtor USA Capital Diversified Trust Deed Fund, LLC ("Diversified").  The second Colt Gateway Loan is owed to USACM as the sole Direct Lender under such loan.

B.  Authorize USACM to provide and authorize reconveyances for the Colt Gateway Loans that are being paid.

This Motion is made and based upon 11 U.S.C. §§ 105 and 363(b)(1), the Points and Authorities set forth herein, the Declarations of Thomas J. Allison on file with this Court, and any arguments presented at the hearing on this Motion.  Granting this Motion will benefit not only USACM's bankruptcy estate, but also benefit the Direct Lenders for the Colt Gateway Loans, which include Diversified and USACM.

**POINTS AND AUTHORITIES**

**General Factual Background**

1.  All five Debtors in the caption above (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on April 13, 2006 (the "Petition Date").  The Debtors continue to operate their businesses and possess their property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2.  The statutory predicates for the relief requested herein are 11 U.S.C. § 105 and 11 U.S.C. § 363(b)(1).

3.  Colt Gateway has an outstanding loan obligation currently being serviced by USACM (the "Colt Gateway #1 Loan") that is evidenced by that certain Note dated December 22, 2002, as modified in July 2003, for an original principal loan amount of Eight Million Seven

Hundred Thousand Dollars ($8,700,000) ("Note 1").1  Note 1 is secured by a lien established against real property of Colt Gateway in the City of Hartford, Hartford County, Connecticut, by that certain Mortgage Deed and Security Agreement dated as of December 22, 2002, recorded on January 24, 2003, and modified on July 9, 2003, recorded on August 1, 2003, all in the Hartford Land Records of Hartford County, Connecticut ("Mortgage 1").  The Colt Gateway #1 Loan was not included in Schedule 1 or Schedule 2 of the Asset Purchase Agreement dated December 8, 2006 (the "Compass APA"), between Debtors and Compass Partners, LLC ("Compass") (see Bankruptcy Case Docket No. 2164), and therefore was not included in the sale of certain assets of USACM to Compass.   Diversified did not sell any of its assets to Compass pursuant to the Compass APA.  See, Declaration of Thomas J. Allison in Support of Motion To Authorize Debtor USA Commercial Mortgage Company as Loan Servicer to Accept Payments and Provide Reconveyances for Two Colt Gateway Loans being filed contemporaneously herewith ("Allison Declaration") at ¶ 5.

4. The current principal balance of the Colt Gateway #1 Loan is $5,905,051.40.  The additional amounts that were owed on the Colt Gateway #1 Loan as of February 28, 2007, along with the per diem for the interest accrual, are as follows:  Non-Default Interest:  $1,787,468.38 (per diem of $3,205.22); Default Interest:  $50,000.00; Late Fees:  $89,937.41; Origination Fee: $1,700,000.00.  See, Allison Declaration at ¶ 6.

5. The Direct Lenders for the Colt Gateway #1 Loan are the Estate of Daniel Tabas ("Tabas"), Fertitta Enterprises, Inc. ("Fertitta"), and Diversified.  Their respective undivided interests in the Colt Gateway #1 Loan are approximately as follows:  Fertitta – 46.0%; Tabas - 11.5%; Diversified – 42.5%.  See, Allison Declaration at ¶ 7.

6. Colt Gateway also has an outstanding loan obligation owed solely to USACM as the sole Direct Lender (the "Colt Gateway #2 Loan").  The Colt Gateway #2 Loan is evidenced by that certain Note dated August 18, 2003, as modified on January 17, 2004, for an original principal

---

1 As set forth more fully in paragraph 10 below, Diversified maintains that certain advances to Colt Gateway were made as additional advances on Note 1, and nothing contained in this Motion shall be construed to in any way impact or affect Diversified's rights in connection with such contentions; nor shall anything herein be deemed an admission against Diversified.

1  loan amount of One Million Dollars ($ 1,000,000) ("Note 2").  Note 2 is secured by a lien
2  established against real property of Colt Gateway in the City of Hartford, Hartford County,
3  Connecticut, by that certain Mortgage Deed and Security Agreement dated as of August 19, 2003,
4  recorded on September 8, 2003, in the Hartford Land Records of Hartford County, Connecticut
5  ("Mortgage 2" and together with Mortgage 1, the "Mortgages").  The Colt Gateway #2 Loan was
6  not included in Schedule 1 or Schedule 2 of the Compass APA, and therefore was not included in
7  the sale of certain assets of USACM to Compass.  See, Allison Declaration at ¶ 8.

8        7.      The current principal balance of the Colt Gateway #2 Loan is $1,000,000.00.  The
9  additional amounts that were owed on the Colt Gateway #2 Loan as of February 28, 2007, along
10 with the per diem for the interest accrual, are as follows:  Non-Default Interest:  $704,567.54 (per
11 diem of $710.24); Late Fees:  $8,950.64; Extension Fee:  $40,000.00.  See, Allison Declaration at
12 ¶ 9.

13       8.      Colt Gateway has agreed to pay both of the Colt Gateway Loans, and has requested
14 payoff letters from USACM.  As part of the payoff discussions, USACM has agreed that default
15 interest of $50,000.00 will be charged on the Colt Gateway Loans in connection with the payoffs
16 of the Colt Gateway Loans.  See, Allison Declaration at ¶ 10.

17       9.      Diversified made additional advances to Colt Gateway.  On July 10, 2003,
18 Diversified provided Colt Gateway with an additional $1,500,000 advance (the "Div 1 Advance").
19 On September 26, 2003, Diversified provided Colt Gateway with an additional $3,718,777
20 advance (the "CREC Advance").  On April 1, 14 and 23, 2004, Diversified provided Colt Gateway
21 with additional advances in the aggregate amount of $3,100,000 (the "Div 2 Advance").

22       10.      The Official Committee of Equity Security Holders of USA Capital Diversified
23 Trust Deed Fund, LLC (the "DTDF Committee"), on behalf of Diversified, contends the Div 1
24 Advance, Div 2 Advance and the CREC Advance (collectively the "Subsequent Diversified
25 Advances") also are secured by the Note 1 and Mortgage 1.  Nevertheless, upon completion of the
26 transaction outlined in this Motion, the DTDF Committee on behalf of Diversified has agreed that
27 Mortgage 1 may be fully reconveyed, notwithstanding the contentions of the DTDF Committee
28 with respect to the Subsequent Diversified Advances.  The DTDF Committee on behalf of

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Diversified is willing to enter into an agreement with Colt Gateway and Homes for America
2  Holdings defining its reservation of rights.
3    11. The DTDF Committee has requested that USACM allocate to Diversified a portion
4  of the $1,700,000 origination fee that is to be collected on the Colt Gateway #1 Loan (the
5  "Origination Fee") on the basis that the Origination Fee should be attributable in part to the
6  Subsequent Diversified Advances. The Unsecured Creditors Committee, on behalf of USACM,
7  has agreed that the $1,700,000 Origination Fee (after it has been paid as part of the payoff of the
8  Colt Gateway #1 Loan) should be allocated $1,300,000 to Diversified, and $400,000 to USACM.
9  See, Allison Declaration at ¶ 11.
10   12. Among other powers, USACM as Servicer has generally been authorized by the
11 Court to exercise in the ordinary course of business all of the powers that a loan servicer
12 customarily exercises for a serviced loan that is being paid in full and with respect to the related
13 real or personal property securing such loan. These powers include executing and delivering the
14 following documents: demands for payoff, final payoff statements, instruments of satisfaction or
15 cancellation, and instruments of or authorizations for full release, discharge, or reconveyance (the
16 "Loan Servicer Powers"). See, Allison Declaration at ¶ 12.
17   13. USACM asserts that exercising its Loan Servicer Powers is an ordinary course of
18 business transaction that does not require Court approval under 11 U.S.C. § 363(c)(1).
19 Nevertheless, in an abundance of caution, USACM is filing this Motion to request a Court order
20 specifically authorizing USACM to exercise its Loan Servicer Powers with respect to the
21 anticipated payment in full of the Colt Gateway Loans. See, Allison Declaration at ¶ 13.

**Statement of the Law**

23   14. USACM is engaged in the business of servicing fractional interests in various
24 commercial loans. As part of that business, USACM customarily receives requests for payoff
25 statements for the loans that it is servicing or for loans in its own loan portfolio as well as requests
26 that USACM exercise its Loan Servicer Powers in connection with the payoffs of such loans. See,
27 Allison Declaration at ¶ 14.
28   15. USACM has reviewed the requested loan payoffs for the Colt Gateway Loans. It is

1   USACM's business judgment that it would be beneficial to the Direct Lenders of the Colt
2   Gateway Loans (including the bankruptcy estates of USACM and Diversified) if USACM
3   accepted the payoffs of the Colt Gateway Loans and exercised its Loan Servicer Powers in
4   connection with the payoffs of the Colt Gateway Loans.  <u>See</u>, Allison Declaration at ¶ 15.

5          16.     Although USACM's acceptance of the payoffs of the Colt Gateway Loans and
6   exercise of its Loan Servicer Powers arguably is in the ordinary course of USACM's business that
7   would require no Court approval, with the oversight being requested by the Four Official
8   Committees and the United States Trustee, USACM has brought this Motion for Court approval.
9   <u>See</u>, Allison Declaration at ¶ 16.

10         17.     Colt Gateway has agreed that the payoffs of the Colt Gateway Loans and the
11  reconveyances of the Mortgages do not and will not in any way affect the rights of Diversified and
12  the DTDF Committee with respect to the transactions concerning the Div 1 Advance, Div 2
13  Advance and the CREC Advance.

14         18.     Section 105(a) of the Bankruptcy Court allows this Court to "issue any order,
15  process, or judgment that is necessary or appropriate to carry out the provisions of [the
16  Bankruptcy Code]."  11 U.S.C. § 105(a).  Under Section 105(a) of the Bankruptcy Code, the Court
17  has expansive equitable powers to fashion any order or decree that is the interest of preserving or
18  protecting the value of the debtor's assets.  *See, Chinician v. Campolongo (In re Chinichian),* 784
19  F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to
20  fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.")

21         19.     If USACM's use of its Loan Servicer Powers in connection with the payoffs of the
22  Colt Gateway Loans these transactions was viewed as an extraordinary transaction, such that the
23  "ordinary course of business" authorization of Section 363(c)(1) of the Bankruptcy Code does not
24  apply,  Section 363(b)(1) of the Bankruptcy Code provides the necessary authority for the Court to
25  authorize USACM to exercise its Loan Servicer Powers.  Section 363(b)(1) provides that a debtor
26  in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course
27  of business, property of the estate."  "Section 363 of the [Bankruptcy] Code seems on its face to
28  confer upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease,

1 other than in the ordinary course of business, of property of the estate." *Committee of Equity Sec.*

2 *Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1069 (2nd Cir. 1983).

3    20.   To approve the use, sale or lease of property other than in the ordinary course of

4 business, there must be "a sound business purpose [that] justifies such actions." *In re Montgomery*

5 *Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999). Under the circumstances outlined above,

6 USACM's business judgment that USACM should be authorized to accept the payoffs of the Colt

7 Gateway Loans and exercise its Loan Servicer Powers in connection with the payoffs of the Colt

8 Gateway Loans is fully supported by the "business judgment test" which is the standard for

9 approval of transactions under Section 363(b)(1). *Id.*

## CONCLUSION

11   The Debtor requests that the Motion be granted, and that the Court: (a) authorize USACM

12 to accept the payments of the two Colt Gateway Loans, consistent with the terms outlined above in

13 this Motion, (b) authorize USACM to exercise its Loan Servicer Powers in connection with the

14 repayments of the two Colt Gateway Loans, including providing and authorizing reconveyances

15 for the collateral securing the Colt Gateway Loans (including without limitation releasing the

16 Mortgages), and (c) authorize USACM to execute all documents and take all other necessary steps

17 required to implement any of the foregoing actions.

18   DATED: February 27, 2007.

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

and

 /s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Esq., Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas NV 89146
Attorneys for Debtors

RQNDOCS-#914433-v3-Motion_to_Approve_Loan_Payoffs_for_Colt_Gateway_Loans