Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  usdcfilings@s-mlaw.com

Attorneys for Appellees-Debtors and Debtors-in-Possession

**E-FILED on February 28, 2007**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **APPELLEE-DEBTORS'<br>OPPOSITION TO "MOTION<br>FOR LIMITED APPELLANTS'<br>STAY PENDING APPEAL"** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☑ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | **Hearing Date: March 1, 2007<br>Hearing Time: 9:30 a.m. PST** |

1      Appellee-Debtors, USA Commercial Mortgage Company ("USACM"), USA Capital First

2 Trust Deed Fund, LLC ("FTDF"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"),

3 USA Capital Realty Advisors, LLC, and USA Securities, LLC (collectively, the "Debtors"), by

4 and through their counsel, hereby object to the "Motion for Limited Stay Pending Appeal" filed by

5 the self-described "Lenders Protection Group" ("LPG") and "Jones Vargas Direct Lenders"

6 ("JVDL") (collectively, the "Appellants") from this Court's "Order Confirming the 'Debtors'

7 Third Amended Joint Chapter 11 Plan of Reorganization,' as Modified Herein" ("Confirmation

8 Order") that was entered in the above-captioned jointly administered chapter 11 cases ("Chapter

9 11 Cases").

10      This objection is supported by the four official Committees appointed in the Debtors'

11 chapter 11 cases: the Official Unsecured Creditors' Committee for USA Commercial Mortgage

12 Company ("USACM Committee"), the Official Committee of Equity Security Holders of USA

13 Capital First Trust Deed Fund, LLC ("FTDF Committee"), the Official Committee of Equity

14 Security Holders of USA Capital Diversified Trust Deed Fund, LLC ("DTDF Committee"), and

15 the Official Committee of Holders of Executory Contracts Rights through USA Commercial

16 Mortgage Company ("Direct Lenders Committee") (collectively, the "Committees").

17      For the reasons set forth in the Points and Authorities below, and as additionally supported

18 by the record in the Chapter 11 Cases referenced herein, the Exhibits attached hereto, and the

19 Declaration of Susan M. Smith ("Smith Declaration") filed concurrently herewith, the Debtors

20 respectfully request that the Court deny the Stay Motion, or require that the Appellants post a bond

21 as set forth below.

22    Dated this 28th day of February, 2007.      */s/  Jeanette E. McPherson*

Lenard E. Schwartzer

23                            Jeanette E. McPherson

SCHWARTZER & MCPHERSON LAW FIRM

24                            2850 South Jones Blvd., Suite 1

Las Vegas, Nevada 89146

25                            AND

26                            Annette W. Jarvis (Utah Bar No. 1649)

RAY QUINNEY & NEBEKER P.C.

27                            36 South State Street, 14th Floor

P.O. Box 45385

28                            Salt Lake City, Utah 84145-0385

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# TABLE OF CONTENTS

**Page**

**POINTS AND AUTHORITIES** ....................................................................**9**

**I. BACKGROUND** ....................................................................................**9**

**II. FACTS** ...............................................................................................**12**

    Prepetition Operations of USACM ..................................................... 12

    The Lender Statements, the Distribution Order and the Holdback Funds ......................... 16

    The Disclosure Statement, Plan and Disclosure Statement Order ........................ 18

    Solicitation .............................................................................. 23

    The Auction ............................................................................. 24

    The Appellants' Confirmation Objection ............................................. 24

    Actions Taken by the Purported LPG on the Eve of the  Confirmation Hearing—
        The Initial 2019 Statement, the  Amended 2019 Statement and the
        Cangelosi Declaration .......................................................... 25

    The Confirmation Hearing and the Confirmation Order ............................. 29

    The Appellants' Appeal of the Confirmation Order ................................. 32

    The BAP Stay Order, the District Court's Quash Order, and the First Stay Motion ......... 33

    The January 25th Letter ............................................................... 35

    Appellants' Statement of Issues and Certificate of Interested Parties and the
        Debtors' Investigation ......................................................... 38

    Motion to Dismiss Appeal ............................................................ 38

    The Present Stay Motion .............................................................. 41

**III. LEGAL ARGUMENT** ........................................................................**42**

    **A.**    **THE STAY MOTION SHOULD BE DENIED BECAUSE IT SEEKS
        TO STAY THE DISTRIBUTION OF FUNDS (i) IN WHICH THE
        APPELLANTS ADMIT THEY DO NOT HOLD AN INTEREST, (ii)
        WHICH WILL BE DISTRIBUTED TO DIRECT LENDERS UNDER
        THE PLAN, AND (iii) IN WHICH THEY HAVE FAILED TO PROVE
        THEY HAVE A SUSTAINABLE OWNERSHIP INTEREST ON
        APPEAL** ...................................................................**42**

1.    The funds described in component (A) are admitted to belong to
       USACM ........................................................................................44

2.    The funds described in component (B) also belong to USACM,
       and the balance is to be distributed to Direct Lenders ..........................44

3.    The LPG has not demonstrated what, if any, alleged ownership
       interest they have in the funds described in component (C) ..................45

4.    Relief should be afforded to the Debtors under Bankruptcy Rule
       2019(b) ........................................................................................46

B.    THE STAY MOTION SHOULD BE DENIED BECAUSE THE
      APPELLANTS HAVE NOT MET THEIR BURDEN OF SHOWING
      THAT THEY ARE ENTITLED TO A STAY PENDING APPEAL ...............49

      1.    Appellants have failed to demonstrate that they are likely to
            succeed on appeal ........................................................................50

            A.    The compromise embodied in the Plan is proper and binding
                  upon the Appellants ........................................................52

            B.    The Court properly found that USACM can recoup Prepaid
                  Interest ........................................................................56

            C.    The Plan Provided the Appropriate Procedure for Dealing
                  with Claims to Prepaid Interest ........................................59

      2.    The Appellants have not proven that they will suffer irreparable
            harm by denial of the Stay Motion ................................................62

      3.    The Debtors and all parties in interest will suffer substantial
            harm by the imposition of a stay pending appeal ...........................64

      4.    A stay pending appeal will harm the public interest ......................67

C.    IN THE EVENT THAT THE COURT IS INCLINED TO IMPOSE A
      STAY PENDING APPEAL, THE STAY SHOULD NOT APPLY TO
      COMPASS AND THE APPELLANTS SHOULD BE REQUIRED TO
      POST A BOND ........................................................................................69

      1.    Any stay should not apply to Compass ........................................69

      2.    The Appellants should be required to post a bond ........................69

D.    A "LIMITED STAY" CANNOT BE GRANTED ........................................72

IV. CONCLUSION ........................................................................................73

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

**TABLE OF AUTHORITIES**

2

3    **Cases**

4    *ACC Bondholder Group v. Adelphia Commc'n Corp.,* No. 02-41729,
5        M47 (S.D.N.Y. Jan. 24, 2007) .................................................................60

6    *Acton v. Fullmer (In re Fullmer),* 323 B.R. 287 (Bankr. D. Nev. 2005) ........................40

7    *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan),* 270 B.R. 749
    (B.A.P. 9th Cir. 2001) ...................................................................................46

8    *Arvay v. Hyman (In re Bob Hamilton Real Estate, Inc.),* 164 B.R. 703
9        (Bankr. M.D. Fla. 1994) ........................................................................55, 56

10   *Ashland Petroleum Co. v. Appel (In re B&L Oil Co.),* 782 F.2d 155
11       (10th Cir. 1986) ......................................................................................48, 50

12   *AT&T Tech., Inc. v. Reid,* 855 P.2d 533 (Nev. 1993) ...................................................49

13   *Bear v. Coben (In re Golden Plan of California),* 829 F.2d 705 (9th Cir. 1986)............50

14   *Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir. 1988) .............................48

15   *Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group
16       Inc.),* 963 F.2d 1269 (9th Cir. 1992) .......................................................51

17   *Connecticut v. Massachusetts,* 282 U.S. 660 (1931) ...................................................52

18   *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.,* No. 02 Civ. 9629
    (NRB), 2003 U.S. Dist. LEXIS 9802 (S.D.N.Y. June 11, 2003)..................51
19

20   *Equitable Life Assurance Soc'y v. James River Assocs. (In re James River Assocs.),*
    148 B.R. 790 (E.D. Va. 1992) ....................................................................58

21   *FFG-NJ Vehicle Funding Corp. v. Holtmeyer (In re Holtmeyer),* 229 B.R. 579
22       (E.D.N.Y. 1999)..........................................................................................53

23   *Focus Media, Inc. v. National Broadcasting Co. (In re Focus Media Inc.),* 378 F.3d 916

24   (9th Cir. 2004)................................................................................................47

25   *Foreign Autobody Specialists, Inc. v. Superior Court of California,* 739 F.2d 466
    (9th Cir. 1984)..............................................................................................53
26

27   *Gaffney. v. Rubino (In re Builders Capital & Serv., Inc.),* 317 B.R. 603
    (Bankr. W.D.N.Y. 2004)...............................................................................48

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*Goldberg v. New Jersey Lawyers' Fund For Client Protection*, 932 F.2d 273
    (3rd Cir. 1991) ..................................................................................................48

*Herod v. Southwest Gas Co. (In re Gasmark Ltd.)*, 193 F.3d 371 (5th Cir. 1999).......................46

*In re 203 N. LaSalle St. P'ship*, 190 B.R. 595 (N.D. Ill. 1995) ...........................................53

*In re Babcock & Wilcox*, No. 00-1154, 2000 U.S. Dist. LEXIS 6448 (E.D. La. 2000) .................56

*In re Commercial Western Finance Corporation* 761 F.2d. 1329 (9th Cir. 1985).........................50

*In re Convenience USA, Inc.,* 290 B.R. 558 (Bankr. M.D.N.C. 2003) ..........................................61

*In re Deep*, 288 B.R. 27 (N.D.N.Y. 2003) ................................................................................41

*In re East Redley Corp.*, 20 B.R. 612 (Bankr. E.D. Pa. 1982) ..................................................57

*In re Fuller*, 255 B.R. 3005 (Bankr. W.D. Mich. 2000) ............................................50, 53, 57

*In re Gathering Restaurant, Inc.,* 79 B.R. 992 (Bankr. N.D. Ind. 1986) ...................................57

*In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 2370 (Bankr. D. Mass. 1985)...............53

*In re Kar Dev. Assocs., L.P.*, 180 B.R. 624 (Bankr. D. Kan. 1994) ..........................................56

*In re Kent*, 145 B.R. 843 (Bankr. E.D. Va. 1991) ....................................................................53

*In re Kmart Corp.*, No. 02 C 9257, 2002 U.S. Dist. LEXIS 24851
    (N.D. Ill. Dec. 30, 2002) ........................................................................................52, 53

*In re Leibinger-Roberts, Inc.*, 92 B.R. 570 (Bankr. E.D.N.Y. 1988)........................................57

*In re Level Propane Gases, Inc.*, 304 B.R. 775 (Bankr. N.D. Ohio 2004) ...................................40

*In re Liggett*, 118 B.R. 219 (Bankr. S.D.N.Y. 1990) ...............................................................40

*In re Oklahoma P.A.C. First Ltd. Partnership*, 122 B.R. 387 (Bankr. D. Ariz. 1990)...................38

*In re P.R.T.C., Inc.*, 177 F.3d 744 (9th Cir. 2000) ...................................................................42

*In re Permian Producers Drilling, Inc.*, 263 B.R. 510 (W.D. Tex. 2000)....................................55

*In re Pub. Serv. Co. of N.H.*, 116 B.R. 347 (Bankr. D.N.H. 1990)...........................................41, 58

*In re Regional Bldg. Systems*, 251 B.R. 274 (Bankr. D. Md. 2000) ..........................................45

*In re Richmond Metal Finishers, Inc.*, 36 B.R. 270 (Bankr. E.D. Va. 1984),
    *rev'd on other grounds*, 38 B.R. 341 (E.D. Va. 1984), *rev'd*, 756 F.2d 1043
    (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1987) ..................................................57

*In re Sung Hi Lim*, 7 B.R. 319 (Bankr. D. Haw. 1980) ....................................................41, 55, 56

*In re Swanson*, 312 B.R. 153 (Bankr. N.D. Ill. 2004)........................................................45

*In re Tevis*, 347 B.R. 679 (B.A.P. 9th Cir. 2006) ............................................................45

*In re The Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987) ..........................................53

*In re Theater Holding Corp.,* 22 B.R. 884 (Bankr. S.D.N.Y. 1982) ..............................58

*In re Twins, Inc.*, 318 B.R. 90 (Bankr. D.S.C. 2004)......................................................51

*In re United Merchants & Mfrs., Inc.,* 138 B.R. 426 (D. Del. 1992) .............................58

*In re Wymer*, 5 B.R. 802 (B.A.P. 9th Cir. 1980)............................................................40

*Lyon v. Anderson Pipeline Co. (In re Anderson Res. Co.),* 78 B.R. 603 (D. Colo. 1987)..............58

*Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, No. 02-1353, 2004 U.S. Dist. LEXIS 1917 (D. Del. 2004) ...............................................................................................................41

*Mort v. United States,* 86 F.3d 890 (9th Cir. 1996) .......................................................49

*Mullane v. Central Hanover Bank  Trust Co.,* 339 U.S. 306 (1950) .............................45

*Newbery Corp v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996)..................46, 48

*Sampson v. Murray*, 415 U.S. 61 (1974) .......................................................................53

*Sandra Cotton, Inc. v. Bank of N.Y.*, 64 B.R. 262 (W.D.N.Y. 1986)............................53

*Section 20 Land Group, Ltd. v. Collier County (In re Section 20 Land Group, Ltd.),* 252 B.R. 819 (Bankr. M.D. Fla. 2000) .........................................................................56

*Sims v. United States Dept. of Health and Human Serv. (In re TLC Hospitals, Inc.),* 224 F.3d 1008 (9th Cir. 2000) ......................................................................................46

*Tavenner v. United States (In re Vance)*, 298 B.R. 262 (Bankr. E.D. Va. 2003) ...........48

*Universal Life Church, Inc. v. United States*, 191 B.R. 433 (E.D. Cal. 1995) ..............40

*Wisconsin Gas Co. v. F.E.RC.*, 758 F.2d 669 (D.C. Cir. 1985)......................................52

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................38

11 U.S.C. § 108(a) .............................................................................................................3

11 U.S.C. § 1125.........................................................................................................15, 49

11 U.S.C. § 1141(a) .........................................................................................................43

11 U.S.C. § 546...................................................................................................................3

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

11 U.S.C. §1127(a)(7) ........................................................................................................43

N.R.S. 645B.250 ................................................................................................................47

**Other Authorities**

RESTATEMENT (SECOND) OF TRUSTS § 254 (2006) .....................................................47

**Rules**

Fed. R. Bankr. P. 2019(a)(2) ..............................................................................18, 37, 53

Fed. R. Bankr. P. 2019(a)(3) ........................................................................................18

Fed. R. Bankr. P. 2019(b) ..............................................................................37, 38

Fed. R. Bankr. P. 7001(7) ..............................................................................................49

Fed. R. Bankr. P. 8001(a) ..............................................................................................42

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# POINTS AND AUTHORITIES

# I.

# BACKGROUND

This appeal of the Confirmation Order involves a limited number and, largely unidentified group of entities who have been represented as being "Direct Lenders," a term that is defined below (this representation in and of itself is subject to question).1  Based on misinformation or misunderstanding and apparent self-interest in wanting to be preferred over other members of their Class, the Appellants believe that portions of the "*Debtors' Third Amended Joint Chapter 11 Plan of Reorganization"* ("Plan") [Docket No. 1799] are not in their interests despite uncontroverted evidence that the Debtors did not have the funds to continue to operate and that liquidation would return far less to all parties in interest, including them.2  Thus, by this appeal they seek, for the benefit of probably less than 111 Direct Lenders,3 to undo key provisions of an integrated and comprehensive Plan which contains numerous compromises for all five Debtors, and which will provide returns to in excess of 6,000 creditors and interest holders.

Whatever their motives, the Appellants are not entitled to the stay pending appeal that they seek in the Stay Motion for several reasons.  First, as discussed in more detail in section III.A

---

1 *See* discussion at section III.A *infra*; Smith Declaration at ¶ 16.

2 Declaration of Thomas J. Allison ¶ 14 [Docket No. 2147] [defined in the text *infra* as "Allison Declaration"].

3 As more fully explained below, the Appellants' Amended Notice of Appeal does not expressly identify the alleged "members" of the LPG, but rather makes reference to a Statement under Federal Rule of Bankruptcy Procedure 2019, "as supplemented,"  The only Rule 2019 Statement on file at the time the objections to confirmation of the Plan were due listed approximately 111 entities.  This Initial 2019 Statement was amended **after** the objection deadline to include approximately 160 entities.  At the confirmation hearing, Mr. Smith said he represented approximately 350 entities.  In argument before the District Court, he now says he represents approximately 400 entities.  Only those who timely objected to confirmation can appeal the Confirmation Order and, therefore, to the extent that the so-called "LPG" exists and has been properly identified the Appellants would be limited to those listed in the Initial 2019 Statement.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

below, the Appellants either have admitted that they have no interest, or they have not proven that they have any interest in any of the "Segregated Funds" that they seek to stay a distribution of pending the appeal.  When analyzing the definition of "Segregated Funds" used by the Appellants, these funds consist of:

> (A) a 1% servicing fee that is payable by Direct Lenders to USACM under LSAs which has been collected by and remitted to USACM during the Chapter 11 Cases pursuant to prior Court orders;
>
> (B) an additional 2% in postpetition principal payments made by borrowers on loans serviced by USACM which, pursuant to prior Court orders, is being held by USACM and will be distributed under the Plan to cover up to 3% in remaining servicing fees and advanced collection costs owed to USACM under the LSAs, with the primary balance of these funds being remitted to Direct Lenders (net only of $605,000 to partially cover the costs of the Direct Lenders Committee); and
>
> (C) funds referred to as "Prepaid Interest," which are funds that have been collected postpetition by USACM from borrowers on loans serviced by it or funds netted from a particular Direct Lender's equivalent to the interest wrongfully paid to that Direct Lender by USACM under its prior management before the commencement of the Chapter 11 Cases.4

The Appellants have claimed no interest, nor can they, in the servicing fees set forth in categories (A) and (B) above, which are clearly property of USACM, and they produced no evidence at the confirmation hearing or otherwise demonstrating any specific claim to the funds in either category (B) or (C) above.  The Appellants' failure to demonstrate any interest in these "Segregated Funds," which the Appellants had the burden to do prior to this time, is in and of itself a basis for denying Stay Motion.

Second, for the reasons set forth in section III.B below, the Appellants have simply failed to meet their burden of showing that they are entitled to a stay pending appeal under Rule 8005 of the Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules"). While the stay is labeled by the Appellants as a "limited stay," to the extent such a stay is even permissible,5 it will serve to stay the distribution of approximately $38.5 million in cash, which will have a devastating impact on

---

4 See discussion at section III.A infra.

5 See discussion at section III.D infra.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   the Debtors and all parties in interest in these Chapter 11 Cases, the requisite majorities of which

2   voted to accept the Plan.6  These distributions were voted on and accepted as part of a

3   comprehensive compromise by a Class of Direct Lenders under the Plan, this compromise was

4   approved by the Court as part of the Confirmation Order, and as set forth in section III.B.1 below,

5   the Appellants have failed to show any likelihood of success on appeal of the Confirmation Order.

6   Further, the cash that the Appellants seek to freeze is cash that is absolutely necessary to pay

7   certain holders of claims against USACM, who under the Bankruptcy Code and under the terms of

8   Plan, must be paid on the Effective Date (including allowed administrative expense claims, certain

9   priority claims), and to fund the USACM Trust.  The money used to fund the USACM Trust will

10  in turn be used to pursue litigation against the culprits whose fraud and misconduct caused the

11  creditors and investors' losses, and will be used to make distributions to creditors, including many

12  Direct Lenders.

13          With the closing of the sale authorized in the appealed Confirmation Order, the Debtors

14  have no ongoing source of income, while expenses will continue to mount.  Because treatment of

15  all claims against and (in the cases of FTDF and DTDF, collectively the "Funds") interests in the

16  Debtors is interrelated under the Plan, a stay may make the Plan ineffective for all of them, thus

17  delaying distributions of sale proceeds to FTDF members and the funding and continuance of

18  litigation on behalf of the DTDF members.  The effect of a stay on USACM's creditors will be

19  particularly devastating.  The Bankruptcy Code authorizes a two-year window for prepetition

20  causes of action and for fraudulent conveyance and other avoidance actions to be brought by a

21  bankruptcy estate, before the applicable limitations period reverts to its prepetition status,

22  generally with no state-law authorized extensions.7  Nearly one year has already expired.  If the

23  USACM Trust is not effective or funded because of a stay pending appeal, and it cannot

24  investigate and pursue causes of action promptly, rights will be lost.  The actions of USACM

25  insiders, who are primarily the target defendants of such litigation, also indicate potential

26

27  _____

28  6 Smith Declaration at ¶ 24.

    7 11 U.S.C. §§ 108(a) and 546.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  recoveries from them will be rendered more expensive and problematic due to asset transfers and

2  new liens on assets held by them.

3       Balanced against this serious harm to thousands of creditors and investors, and harm to the

4  public interest which favors the prompt resolution of bankruptcy cases, the Appellants simply

5  allege that their appeal will become moot, an appeal of an order that they cannot even show that

6  they will likely succeed in reversing.

7       The appealed Confirmation Order approved a sale of loan interests, the LSAs, and other

8  assets to Compass Partners LLC ("Compass") and Plan terms incorporating that sale.  The Plan

9  imposed conditions on Compass as the buyer that are integral to the Prepaid Interest issues and the

10  LSA assignment issues which the Appellants raise on appeal.  Since the Compass sale has closed

11  with the Appellants' agreement and with Compass's third party rights vesting, a stay cannot be

12  effective at this point.  Further, the "limited" stay suggested by the Appellants is not feasible in

13  this case and has no basis in the law, as set forth in section III.D below.  Based on the record in

14  these Chapter 11 Cases there is no way to determine how much of the Segregated Funds that the

15  Appellants want to freeze actually relate to Appellants, and it is virtually impossible to exempt

16  only them from the claims to recharacterize Direct Lender investments as equity, the releases, and

17  other compromises set forth in the Plan and approved in the Confirmation Order.

18       For all these reasons, the Debtors respectfully submit that the Stay Motion should be

19  denied.  If the Court is inclined to grant any stay pending appeal, given the substantial damages

20  that will likely result from any stay, the Debtors respectfully request that the stay not apply to

21  Compass or the amounts required to be paid by Compass to USACM or the USACM Trust under

22  the Plan, and that the Appellants be required to post a bond in the amount discussed in the Smith

23  Declaration 8  These issues are discussed in section III.C below.

## II.

## FACTS

Prepetition Operations of USACM

8 Smith Declaration at ¶¶ 24-33.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.      Prior to the filing of the Chapter 11 Cases, Debtor USACM's business included soliciting individual investors to purchase fractional interests in loans secured primarily by residential and commercial developments, as well as originating and servicing the loans.9  As of the date of the filing of the Chapter 11 Cases, there were approximately 3,600 investors whose names appear as a "Lender" in one or more of the serviced loans, and therefore, have been referred to in the Chapter 11 Cases as "Direct Lenders."10  Debtors DTDF and FTDF are similar to Direct Lenders because they also purchased fractional shares of USACM-serviced loans.  These Debtor, however, are not included with the definition of "Direct Lenders" under the Plan and, therefore, were not included within the compromise between USACM and the defined "Direct Lenders."11  As of the petition filing date, there were approximately 950 individual investors who were members of (and thus beneficiaries of the loans held by) FTDF, and approximately 1,350 individual investors who were members of (and thus beneficiaries of the loans held by) DTDF.  Under these investment scenarios for Direct Lenders, money invested by each Direct Lender should have been used to partially fund a loan to a borrower, and when the borrower paid principal and interest, the Direct Lender should have received its fractional share of that payment, less a "Servicing Fee" charged by USACM.  The risk in this investment was that if a borrower did not make payments on its loan, Direct Lenders who "invested" in that loan as a lender had no right to receive payments on their investment.

2.      USACM earned Servicing Fees for servicing the loans in which Direct Lenders invested.  Direct Lenders typically "invested" in several loans, and entered into a single LSA with

---

9 Debtors' First Amended Disclosure Statement for Debtors' Third Amended Joint Chapter 11 Plan of Reorganization at 23 & Exhibit 3 (Organizational Chart) [defined in the text *infra* as the "Disclosure Statement"].

10 *Id.*

11 *Id.* at 23-26; *see generally*, Plan; *see also id.*, Art. I. Section 42 (defining "Direct Lender").  FTDF and DTDF are parties to separate compromises under the Plan.  *See id.*, Art. IV. Section E.

USACM for servicing of the group of loans in which it invested.12  Although the LSAs for various Direct Lenders were substantially similar, they differed, in relevant part, based on the amount of the Servicing Fees that the Direct Lenders agreed to pay USACM.  Some Direct Lenders agreed to pay a 1% Servicing Fee, while others agreed to pay up to a 3% Servicing Fee.

3.    Before the filing of the Chapter 11 Cases, USACM regularly made monthly interest (and sometimes principal) payments to Direct Lenders ("Prepaid Interest"), 13 even when the borrowers on the particular loans were not making payments to USACM on their loans, a practice found by this Court to be in violation of state law.14  As of the date of the filing of the Chapter 11 Cases, USACM had made approximately $39 million in such advance illegal payments of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

12 A sample LSA is attached as Exhibit A to the Debtors' Motion to Distribute Funds and to Grant Ordinary-Course Releases and Distribute Proceeds [Docket No. 847] [hereinafter the "Distribution Motion"].

13 Disclosure Statement at 28; *see* Plan, Art. I, Section 113 (defining "Prepaid Interest").

14 Disclosure Statement at 28 & 60-62; Allison Declaration ¶¶ 59, 61-69 72-75 & 82; Transcript of Confirmation Hearing on December 19, 2006 at 86 [Docket No. 2368] [hereafter the "December 19 Transcript"] (the Court stated it did not like the term "Prepaid Interest" because "by using this euphemism I think we've given the people the idea that they had a right to it."); *id*. at 90 (referring to Direct Lenders and the improper interest and/or principal payments, the Court stated that "[t]hey only got paid if the borrower paid.  The borrower did not pay and they received money against Nevada law.");Transcript of Confirmation Hearing on December 20, 2006 at 16 [Docket No. 2342] [hereinafter the "December 20 Transcript"]  Although these payments have been defined in the Chapter 11 Cases (and the Plan) as "Prepaid Interest," as recognized by the Court, the payments were in no way a "prepayment," because the payments were illegal and the Direct Lenders had no right to them either under their respective LSAs or as a matter of law.  Nonetheless, to avoid confusion, the Debtors will continue to refer to these illegal payments of principal and/or interest herein as "Prepaid Interest."

principal or interest to Direct Lenders.15  These payments were made with respect to all of the loans in a Direct Lender's portfolio, often through a single check.16

4.      USACM maintained a "Collection Account" which was supposed to be treated as a trust account for funds collected from borrowers.  In fact, the prepetition Collection Account was a conglomeration of commingled funds, collected from various sources.  It included, among other sources of cash, collected principal payments that USACM did not remit to Direct Lenders or to DTDF ("Unremitted Principal"), money diverted from the DTDF, cash loaned by unsecured creditors of USACM, and unremitted Servicing Fees and other fees that belonged to USACM.17 The Prepaid Interest payments made by USACM to Direct Lenders were paid from this Collection Account.18  The Court determined as part of its confirmation of the Plan that no single deposit into or payment from the prepetition commingled Collection Account is capable of being traced to any single Direct Lender or creditor who thought it may have some special claim to the funds or the recovery of funds paid out of this Account, which correspondingly means that no single Direct Lender or creditor can trace or has any special claim to funds paid or collected into the Collection Account postpetition.19

5.      Because USACM was paying out money from the Collection Account to Direct Lenders on non-performing loans (the Prepaid Interest), USACM ran out of cash and did not have sufficient funds to make March 2006 monthly interest payments to all Direct Lenders due in April 2006.20

6.      On April 13, 2006 ("Petition Date"), the Debtors filed petitions commencing their Chapter 11 Cases.  Shortly thereafter, special committees were appointed as fiduciaries to

---

15 Allison Declaration ¶ 59.

16 *Id.*

17 *Id.* ¶¶ 56-87; *accord* Disclosure Statement at 28-29 & 60-62.

18 *Id.*

19 Allison Declaration ¶¶ 69-87; *see* Disclosure Statement at 28-29 & 60-62.

20 Disclosure Statement at 28.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

represent the interests of the Direct Lenders, as well as creditors: the USACM Committee was appointed to represent the interests of general unsecured creditors of USACM (including those Direct Lenders who may have such claims against USACM); the FTDF Committee was appointed to represent the approximately 950 members of FTDF; the DTDF Committee was appointed to represent the approximately 1,350 members of DTDF; and the Direct Lenders Committee was appointed to represent the common interests of the approximately 3,600 individual Direct Lenders.21   In all, approximately 6,000 investors have been impacted by the improper and illegal actions taken by the Debtors under their prepetition management.

<u>The Lender Statements, the Distribution Order and the Holdback Funds</u>

7.     On the Petition Date, Thomas J. Allison of Mesirow Financial Interim Management ("Mesirow") was appointed as the Chief Restructuring Officer of each of the Debtors.  Through this new management, USACM promptly began an intensive review and investigation of the Debtors' records, which uncovered, among many problems, the improper Prepaid Interest payments to Direct Lenders, the existence of Unremitted Principal, and the commingled Collection Account.22

8.     Operating through replacement management, USACM continued to service loans after the Petition Date, including collecting principal and interest on performing loans and collecting loans that had been non-performing prior to the Petition Date.23  Issues arose related to the distribution of the funds that USACM collected postpetition to Direct Lenders due to the issues surrounding the improper payment of the Prepaid Interest prior to the Petition Date, the proper application of principal and interest, and the proper determination of Servicing Fees and costs owed to USACM under the respective LSAs.24

---

21 *See id*. at 24-26.

22 *Id*. at 28-29.

23 *Id*. at 28-29 & 61.

24 *See id*. at 60-62.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

9.      Mesirow reconstructed the Debtors' records to address the issues of the amount of Prepaid Interest paid to each Direct Lender and the Funds, the proper accounting of principal and interest paid on each loan, the amount of Unremitted Principal for each Direct Lender and the Funds, and the determination of Servicing Fees and costs owed USACM from each Direct Lender and the Funds under the respective LSAs.  On June 30, 2006, USACM mailed to each Direct Lender an initial "Lender Statement," that provided each Direct Lender with itemized information on the status of each Direct Lender's loan investment, the amount of Prepaid Interest received if any (as not all Direct Lenders had Prepaid Interest), and, if applicable, the amount of Unremitted Principal (as not all Direct Lenders had Unremitted Principal).[25]  Thereafter, updated Lender Statements were mailed to each Direct Lender, generally on a monthly basis.  A procedure was set up for Direct Lenders to inquire if they believed that any information in their Lender Statements was inaccurate.  All such inquiries were responded to by employees of USACM and Mesirow personnel, acting as financial consultants to USACM.[26]

10.      On August 24, 2006, the Court entered its "Order (A) Granting (i) Debtors' Motion to Distribute Funds; (ii) Debtors' Hold Funds Motion and (iii) the Compel Motion, and (B) Denying (i) the Lift Stay Motion and (ii) McKnight Motion" [Docket No. 1184] ("Distribution Order"), authorizing USACM to make certain interim distributions of funds collected after the Petition Date to Direct Lenders, FTDF and DTDF, less the following amounts:

(a)      USACM's servicing fees (i.e., the 1% servicing fee that the Debtor's requested in the Distribution Motion) and other fees and costs it was entitled to charge [1% Servicing Fee Holdback];

(b)      An additional 2% of principal on all loans that fully paid off postpetition (as listed in [paragraph] 13 of the Declaration of Thomas J. Allison (Docket No. 1090)), such that the servicing fee charged on such loans was 3%, pending the Court's review of the proper amount of servicing fees to be charged (the "Payoff Holdback") [referred to herein as the "2% Holdback"]; and

(c)      The amounts that each Lender received pre-petition from USACM on non-performing loans (the "Offsets"), as reflected by the sum of the amounts

---

25 A sample Lender Statement is attached as Exhibit B to the Distribution Motion.

26 Smith Declaration at ¶18.

shown on Line 12 of the Lenders Statement(s) for each Lender by account number.27

11.    The Distribution Order also stated:

All amounts that are not distributed by USACM, including the Payoff Holdback and the Offsets, shall be held and segregated in the Collection Account, with the rights and legal positions of the parties, including the Debtors, reserved in such funds and shall not be further disbursed absent an applicable order of the Court.  Such funds held and segregated in the Collection Account shall be deemed to be not commingled.28

12.    Finally, the Distribution Order stated:

The Interim Distribution . . . [is] made without waiving the rights or claims of any Creditor, Debtor or any Direct Lender, in connection with (i) USACM's calculation of the amounts distributed, (ii) USACM's right to collect servicing fees and other fees provided under the Servicing Agreements and other applicable agreements, (iii) USACM's right to net all amounts that may be owed to and from a Direct Lender, and (iv) all other rights and arguments, specifically including, without limiting the foregoing, the right or claims discussed by Diversified in its limited opposition (Docket No. 987), any rights USACM may have to recover from any Direct Lender to the extent the Direct Lender receives a distribution under the Interim Distribution that is ultimately determined to be greater than such Direct Lender had a right or receive and the right of any Direct Lender to recover any amounts from any Offsets which are finally determined to be improper, incorrect or contrary to applicable law.  The Interim Distribution . . . [is] preliminary in nature and the payment of such will not finally determine the rights of any party with respect to those distributions.29

13.    As a result of the Distribution Order and orders related to the Debtors' cash management motions, USACM paid itself the 1% Servicing Fee Holdback.30  Pursuant to the Distribution Order, USACM separately accounted for (or segregated) the 2% Holdback and the Recoupments in its Collection Account (collectively, the "Holdback Funds").31

<u>The Disclosure Statement, Plan and Disclosure Statement Order</u>

14.    On September 29, 2006, the Debtors filed a Notice of Hearing [Docket No. 1420], giving notice of a hearing on the adequacy of the Debtors' Disclosure Statement and providing information on how to obtain a copy of the Disclosure Statement, the fact that the Disclosure

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

27 Distribution Order ¶ 2.

28 *Id.* ¶ 3.

29 *Id.* ¶ 5.

30 *See, e.g.,* Order Approving Debtors' Continued Use of Cash [Docket No. 1282.

31 *See* Smith Declaration at ¶ 22.

Statement may be amended, and instructions and deadlines on how to object to the Disclosure

Statement.  This Notice of Hearing was served on all Direct Lenders on the same day.32

15.    On November 6, 2006, the Debtors filed an amended Plan [Docket No. 1741], and

on November 7, 2006, the Debtors filed an amended Disclosure Statement [Docket No. 1755].

No Direct Lenders filed objections to the adequacy of information in the Disclosure Statement.

Furthermore, as of this time, no Direct Lender commenced an adversary proceeding against the

Debtors seeking to recover money that had been commingled in and paid out of USACM's

accounts pre-petition from money that had been collected by USACM post-petition based on

tracing or otherwise.33

16.    At a November 13, 2006 hearing, the Court approved the Disclosure Statement as

containing adequate information, subject to certain modifications, which were made by the

Debtors in an Amended Disclosure Statement and an amended Plan filed on November 15, 2006.

[Docket Nos. 1798 and 1799].

a.    In general, the Plan provides for a sale of certain of USACM and FTDF's

assets, significant compromises among the Debtors and among the Debtors and the Direct

Lenders, the preservation and pursuit of litigation against Insiders and others, and the

liquidation and dissolution of the Debtors.34

b.    The Plan provides that claims of Direct Lenders are treated under Classes

A-4 and A-5 of the Plan, with compromised claims being part of Class A-5, and that and

that if "the Plan is confirmed, the Direct Lenders will be bound to the Class A-5 treatment

regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept or

reject the Plan; all such objections must be made by objecting to Plan confirmation."35

---

32 Certificate of Service [Docket No. 1600].

33 *See generally*, Bankr. Ct. Docket.

34 *See generally,* Plan, Art. IV; Disclosure Statement at 37-38.

35 Plan, Art. II, Sections A & C.1 (at 24-25 & 34); see *id*. Art. VIII, Section M (at 83-84).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1        c.    As part of the compromise with Direct Lenders included as a central part of

2    the Plan, Prepaid Interest is to be recouped from Direct Lenders from funds collected post-

3    petition, but prior to the closing date of the sale of the FTDF and USACM assets (included

4    in the Holdback Funds), and from funds to be collected by the buyer of the FTDF and

5    USACM assets (*i.e.,* Compass) after the closing date of the sale.  As part of an overall

6    settlement of issues relating to recovery of the Prepaid Interest from Direct Lenders, the

7    Plan further states that USACM will forbear from suing Direct Lenders to recover the

8    Prepaid Interest for two years; will settle claims, among others, to seek to recharacterize

9    the Direct Lenders' loans to effect a pro rata sharing of all proceeds of the loans for the

10    benefit of  all creditors equally in the USACM estate; will settle claims for surcharging the

11    Direct Lenders for additional administrative costs for a payment of only $605,000 to cover

12    the some of the Direct Lender Committee's expenses; will settle claims and Servicing Fees

13    owed to USACM  by forgiving all uncollected prepetition Servicing Fees as of the closing

14    date of the sale of the FTDF and USACM assets, and by collecting the Servicing Fees not

15    forgiven in accordance with the percentages set forth in the LSAs entered into by each

16    Direct Lender.[36]

17    17.    The Court-approved Disclosure Statement provided the following pertinent

18    information about the treatment of Prepaid Interest under the Plan, which was included in the

19    compromise proposed to Direct Lenders, and the notice and the binding nature of the Plan:

20        a.    Due to the collection efforts of postpetition USACM management, interest

21    and principal was collected postpetition on loans that had been non-performing prepetition.

22    Principal and interest collected postpetition on these loans, that had previously been

23    improperly paid by USACM to Direct Lenders, was held by USACM postpetition as part

24    of the Holdback Funds.  In the Disclosure Statement, the Debtors clearly articulated the

25    treatment of this portion of the Holdback Funds by explaining that Direct Lenders, who

26    had received Prepaid Interest on these previously non-performing loans, were "not entitled

27

28

---

36 *Id.*, Art. IV, Section E; *see* Disclosure Statement at 60-62.

to receive their loan interest twice, which would result if interest payments on now-performing loans were passed on to those Direct Lenders."[37]

b.    The Debtors explained that, as allowed by the Court in the Distribution Order, in order to take into account the improper prepetition payment of Prepaid Interest and to recoup the same for the benefit of all creditors of the USACM estate, USACM had "retained funds on account of . . . [the Prepaid Interest] from the otherwise performing loans (this process has sometimes been referred to as 'Netting')."[38]  The funds retained through the Netting process were also held as part of the Holdback Funds.

c.    In the Disclosure Statement, the Debtors explained to creditors, interest holders and the Court the various competing claims that were made to the Holdback Funds, including that some Direct Lenders believed that the funds should be held in an equitable trust for the subset of Direct Lenders who had Unremitted Principal claims.  The Debtors explained that it was their position that individual Direct Lenders could not impose a trust on the funds because they could not trace Unremitted Principal to any prepetition Prepaid Interest paid to any particular Direct Lender due to the commingled Collection Account.[39]  The Debtors further explained their position that the funds described in a and b above were property of USACM's estate.[40]

d.    As part of the description of the compromise proposed in the Plan, the Debtors outlined certain other disputes related to the claims and or interests of Direct Lenders, including that USACM believed it could "Surcharge" the Direct Lenders for professional fees and other administrative costs incurred on their behalf, that the Direct Lenders' claims could potentially be "recharacterized" as equity, that the Direct Lenders' loan rights could potentially be "substantively consolidated" with the USACM, FTDF and

---

[37] Disclosure Statement at 61.

[38] *Id.*

[39] *Id.* at 61-62.

[40] *Id.*

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    DTDF estates, and that USACM was entitled to collect certain prepetition unpaid

2    Servicing Fees.41

3        e.    The Debtors explained that the compromise of the various competing

4    claims set forth in the Plan, described above, would be approved as part of the

5    confirmation of the Plan and that:

6    Any Direct Lender who does not consent to being bound by this acknowledgment and
     agreement must object to confirmation of the Plan. *USACM believes that such objection*

7    *would necessarily require the objecting party to present sufficient evidence to trace any of*
     *its Unremitted Principal to assets of the USACM estates.*42

8

9        f.    The Disclosure Statement further provided: "Please note that if you object

10   to the proposed compromise in the Plan regarding Prepaid Interest, as discussed below,

11   you must file and pursue an objection to confirmation of the Plan to preserve your

12   objection.  Voting to reject the Plan will not be sufficient to preserve your objection."43

13       g.    Direct Lenders were informed that they would be bound to its terms if the

14   Plan were confirmed, even if they did not vote to accept the Plan, and that based on the

15   Plan they would no longer be entitled to, among other things, commence any action or any

16   proceeding against the Debtors or assert any right to setoff or recoupment.44  This

17   statement is also included in bold face type in the Plan.45

18   18.    On November 16, 2006, the Court entered an "Order Approving: (A) Debtors'

19   Disclosure Statement; (B) Proposed Notice of Confirmation Hearing; (C) Proposed Solicitation

20   and Notice Procedures; and (D) Proposed Form of Ballots" [Docket No. 1800] ("Disclosure

---

22   41 *Id*. at 62-63.

23   42 *Id*. at 63 (emphasis added).

24   43 *Id*. at 60.

25   44 *Id*. at 78-79; *see id*. at 6; Plan, Art. II, Section A (at 25) & Section C.1.e ("If the Plan is confirmed, the Direct

26   Lenders will be bound to the Class A-5 treatment regardless of whether they vote to accept or reject the Plan, or Class

27   A-5 votes to accept or reject the Plan; all such must be made by objecting to Plan confirmation").

28   45 Plan, Art. IV, Section H.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Statement Order"), approving the Disclosure Statement, as modified, as containing "adequate information" pursuant to 11 U.S.C. § 1125.  The Disclosure Statement Order set December 19, 2006 as the date for the confirmation hearing, and expressly stated:

> Objections to Confirmation and the Confirmation Brief must have evidentiary support. Pursuant to Local Rule 9017, alternative direct testimony – i.e., declaration and affidavits – will be used for presenting evidence in connection with the Confirmation Hearing.  With respect to objections to Confirmation, all declarations of witnesses and exhibits in support thereof that are intended to be presented at the Confirmation Hearing must be filed with the Court on the Confirmation Objection Deadline – i.e., on or before December 11, 2006. With respect to the Confirmation Brief [of the Debtors], declarations of witnesses and exhibits in support thereof that are intended to be presented at the Confirmation Hearing must be filed with the Court on the Confirmation Brief Deadline – i.e., on or before December 15, 2006.  However, evidence in reply to any objection to Confirmation may be presented by live testimony at the Confirmation Hearing.[46]

Solicitation

18.     Based on the Court's approval of the Disclosure Statement, the Debtors then served their "Solicitation Package," which included the Disclosure Statement, the Disclosure Statement Order, the Plan, a Notice of Confirmation Hearing and Ballot(s), on over 7,000 parties in interest, including all of the Direct Lenders.[47]

19.     The Notice of Confirmation Hearing and the Disclosure Statement Order contained in the Solicitation Package required parties objecting to the confirmation of the Plan to file objections, supported by evidence, by no later than December 11, 2006,[48] and also provided:

> The Plan provides as follows: . . . <u>all Entities that have held, currently hold or may hold a debt, Claim, other liability . . . against or in the Debtors . . . shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability . . . or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability . . . or right against assets or proceeds thereof that are to be distributed under the Plan.</u>[49]

---

46 Disclosure Statement Order ¶ 11; *see id.* ¶¶ 9 & 12.

47 Certificate of Service [Docket No. 2161].

48 Notice of Confirmation Hearing ¶¶ 7-8.

49 Notice of Confirmation Hearing ¶ 13(b) (emphasis in original).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

20.     At this same time, Donna Cangelosi, apparently one of the Appellants in this case, solicited Direct Lenders with improper information, attempting to persuade them to vote to reject the Plan, incorrectly informing them that if they so voted they would not be bound by the Plan, and generally suggesting that such a negative vote would allow the Direct Lenders to accept some of the benefits of, but not some of the burdens of, the Plan.   The Committees filed a joint motion requesting that they be authorized to serve supplemental disclosures to the Direct Lenders to correct the misinformation that was being spread by Ms. Cangelosi.50  The Bankruptcy Court granted this motion, stating on the record that Ms. Cangelosi's information was incorrect, and the Committees and Debtors posted their supplemental disclosures on their respective websites.51

The Auction

21.     On December 7, 2006, the Court held an auction of certain of USACM and FTDF's assets, with the sale to be approved as part of the Plan confirmation.  Compass emerged as the winner, with a bid of $67 million.52  The asset sale was expressly conditioned upon being approved by the Court as part of the confirmation of the Plan.

The Appellants' Confirmation Objection

22.     The Appellants failed to conduct any discovery related to their concerns about their treatment under the Plan, and failed to file any adversary proceeding or produce any evidence asserting or supporting any alleged rights to the Holdback Funds at any time prior to the objection deadline or the commencement of the confirmation hearing.53

23.     Rather, on December 11, 2006, an objection to confirmation of the Plan was filed on behalf of the LPG [Docket No. 2042], in which the JVDL joined [Docket No. 2099]

---

50 Joint Motion of the Four Official Committees to Approve Supplemental Disclosure Pursuant to 11 U.S.C. § 1125 [Docket No. 1850].

51 Order Approving Motion of the Four Official Committees to Approve Supplemental Disclosure Pursuant to 11 U.S.C. § 1125 [Docket No. 1907].

52 The sales price was subject to certain adjustments on account of pre-closing loan and fee collections.

53 *See* Bankr. Docket Sheet.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  (collectively, the "Confirmation Objection").  Despite Local Rule 9017 and the express

2  instructions stated in the Disclosure Statement Order and the Notice of Confirmation Hearing, it

3  was not accompanied by any evidence related to the objections raised by the Appellants or any

4  evidence demonstrating any interest of any of the Appellants with respect to the Holdback

5  Funds.[54]

6        24.    The Debtors responded to the Appellants' Confirmation Objection in a Reply Brief

7  [Docket No. 2148],[55] which was supported by the Declaration of Thomas J. Allison [Docket No.

8  2147] ("Allison Declaration").   The unchallenged Allison Declaration unequivocally states that

9  the compromises in the Plan related to the Direct Lenders are in the best interests of the estates,

10  that money belonging to USACM as well as other entities was historically commingled in the

11  Collection Account, that it was impossible to trace funds into funds collected in the Collection

12  Account, and that the Plan satisfied all of the requirements of Section 1129 of the Bankruptcy

13  Code, including the "best interests of creditors" test in Section 1129(a)(7).[56]  At the confirmation

14  hearing, the Court found, without any objection from the LPG, that the evidence submitted by the

15  Debtors in support of confirmation was uncontroverted.[57]

16                 Actions Taken by the Purported LPG on the Eve of the
               Confirmation Hearing—The Initial 2019 Statement, the

17                 Amended 2019 Statement and the Cangelosi Declaration

18        25.    On December 6, 2006, prior to the confirmation objection deadline, a "Statement of

19  the Law Offices of Alan R. Smith Pursuant to Bankruptcy Rule 2019" [Docket No. 1967] ("Initial

20  2019 Statement") was filed, stating that Mr. Smith and Kevin A. Darby "are the attorneys

21  primarily responsible for representing a group of lenders (*most of whom* are direct lenders) with

22

23  _____

24  54 Also on December 11, 2006, certain JVDLs filed a complaint against USACM and certain members of its

25  prepetition management, requesting damages for fraud and other causes of action.  This complaint does not raise any

26  issues related to tracing of funds currently held by USACM.  Complaint, Adv. Pro. No. 06-01247.

27  55 The Debtors also filed a Memorandum of Law in Support of Confirmation of the Plan.  [Docket No. 2151]

28  56 *See* Allison Declaration. ¶ 14.

57 December 19 Transcript at 251-252.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

regard to certain loans which were originated and serviced by the Debtors.  The group is known as the 'Lenders Protection Group[.]'"[58]

26.    The alleged members of the self-designated LPG are listed in a table set forth in the Initial 2019 Statement, containing 111 entries, with each entry listing at least one entity and sometimes more.  The list is not in any particular order (alphabetical or otherwise), but it appears that there are duplicate entries for several individuals and trusts.

27.    Even though each Direct Lender had received several Lender Statements by this time, Mr. Smith represented in the Initial 2019 Statement that:

> The total of the loans made by the above-referenced individuals and entities is unknown at this time, due to incomplete records received from the Debtors.  Undersigned is in the process of gathering as much information as possible concerning the loans made by the members of the group, and will supplement this disclosure when such additional information is obtained.[59]

No formal or informal discovery was served on the Debtors by Mr. Smith or his firm relating to this assertion of incomplete information having been provided and no supplemental information about the loan interests was ever filed.[60]

28.    Mr. Smith admits that the Initial 2019 Statement "is made . . . without complete information, as required by Bankruptcy Rule 2019[.]"[61]   Indeed, the Initial 2019 Statement does not contain:

a.    "the nature and amount of the claim or interest [of entities purportedly represented] and the time of acquisition" of these entities' interests;[62]

---

58 Initial 2019 Statement ¶ 2 (emphasis added).

59 *Id.*

60 Smith Declaration ¶ 21.

61 Initial 2019 Statement ¶ 3.

62 Fed. R. Bankr. P. 2019(a)(2).  In a poor attempt to comply with this provision, Mr. Smith states that "a majority of the loans made by the Lenders Protection Group were made more than a year prior to the filing of the petitions by the Debtors."  Initial 2019 Statement ¶ 4.

b.      "a recital of the pertinent facts and circumstances in connection with the employment" of Mr. Smith, or the "name or names of the entity or entities at whose instance, directly or indirectly," Mr. Smith's "was arranged" or the LPG "was organized or agreed to act[;]"[63]

c.      "with reference to the time of the employment of the entity [or] the organization or formation of the [LPG], . . . the amounts of claims or interests owned" by members of the LPG, "the times when acquired, [and] the amounts paid therefore[.]"[64]

d.      "a copy of the instrument, in any, whereby the entity . . . is empowered to act on behalf of creditors or equity security holders."[65]

29.      Mr. Smith further states that the Initial 2019 Statement "would be supplemented from time to time upon the retention of additional lenders."[66]

30.      The Initial 2019 Statement was the only 2019 Statement on file at the time the LPG filed its Confirmation Objection on December 11, 2006.[67]

31.      On the eve of the confirmation hearing, on December 18, 2006, Ms. Cangelosi filed an untimely declaration in support of the Confirmation Objection [Docket No. 2194] ("Cangelosi Declaration"). This Declaration, which contains many inadmissible statements, makes clear that Ms. Cangelosi understood that she may have certain rights that she did not pursue.

32.      In addition, on the eve of the confirmation hearing, on December 18, 2006, after the time for filing objections to the Plan had expired, Mr. Smith filed a "First Amended Statement of the Law Offices of Alan R. Smith Pursuant to Bankruptcy Rule 2019"  [Docket No. 2196] ("Amended 2019 Statement"), amending his Initial 2019 Statement (collectively, the "Smith 2019 Statements").

---

63 Fed. R. Bankr. P. 2019(a)(3).

64 *Id.* at 2019(a)(4).

65 *Id.*

66 *Id.* ¶ 5.

67 *See* Bankr. Ct. Docket.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

a.     Unlike the Initial 2019 Statement, Mr. Smith states in the Amended 2019 Statement that the LPG's purported members are as listed on an attached Exhibit "A", and that the "members listed in Exhibit "A" are not limited to the names listed therein, but *may also include various other entities in which those members own or control, and/or their successors and assigns*."68

    i.     Exhibit "A" lists 295 entities purportedly by "Account/Vesting Name."69  In fact, however, no account numbers are given, and many of the entities listed are not listing by "vesting names," which are the names of the actual parties to the governing legal documents through which investors invested in loans serviced by USACM and/or in membership interests in the Funds, and are the names by which USACM's investor records are kept.70

    ii.    No identification is made of newly listed "members" of the LPG, but the amount of the entities listed has increased by 184.71

b.     As in the Initial 2019 Statement, Mr. Smith represented in the Amended 2019 Statement that, despite the Lender Statements provided by USACM to Direct Lenders in June, 2006:

The total of the loans made by the above-referenced individuals and entities is unknown at this time, due to incomplete records received from the Debtors.  Undersigned is in the process of gathering as much information as possible concerning the loans made by the members of the group, and will supplement this disclosure when such additional information is obtained."72

---

68 Amended 2019 Statement ¶ 2 (emphasis added).

69 *Id*. Exhibit "A."  Twelve of the entities, however, appear to be duplicates.  Smith Declaration ¶ 15.

70 *Id*. ¶ 16.

71 *Id*. ¶ 15.

72 Amended 2019 Statement ¶ 3.

1    Again, subsequent to this representation, no formal or informal discovery was served on the

2    Debtors by Mr. Smith or his firm on behalf of the LPG and no supplemental disclosures about the

3    loan interests were ever filed.[73]

4            c.    Although Mr. Smith does not admit in the Amended 2019 Statement, as he

5        did in the Initial 2019 Statement, that it was being made without disclosing information

6        required under Bankruptcy Rule 2019, the Amended 2019 Statement does not remedy the

7        Rule 2019 deficiencies that existed in the Initial 2019 Statement in any way.[74]

8                    The Confirmation Hearing and the Confirmation Order

9        33.    Despite Ms. Cangelosi's improper efforts to convince Direct Lenders to reject the

10    Plan, Direct Lenders as a Class in fact voted to accept the Plan, including the Direct Lender

11    compromises included therein.[75]  Indeed, all voting Classes voted in favor of the Plan.[76]

12        34.    The Cangelosi Declaration was stricken as being untimely filed.[77]  Mr. Smith

13    presented oral argument on behalf of the purported LPG, and Ms. Chubb argued on behalf of the

14    JVDLs.  Neither of them presented any evidence at the confirmation hearing in support of the

15    Confirmation Objection.  Also, neither counsel objected to Debtors' counsel's statement that the

16    Debtors' evidence was uncontroverted, or to the Court's finding of the same.[78]   Further, during

17    argument, the Court several times inquired about Mr. Smith's representation of the alleged LPG,

18    the conflicting interests of that group with respect to the objections raised by the LPG, and the

19

20

21    _____

22    73 Smith Declaration ¶ 21.

23    74 *See* ¶ 28 *supra* (outlining the Bankruptcy Rule 2019 deficiencies).

24    75 Affidavits of Balloting Agent [Docket Nos. 2165 & 2243].

25    76 *Id*.

26
27    77 Confirmation Order ¶ 3; Findings of Fact and Conclusions of Law in Support of the "Order Confirming the
    'Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, as Modified Herein"  ¶ C [Docket No. 2377]
    [hereinafter the "Confirmation Findings and Conclusion"]; December 19 Transcript at 45-46.

28
    78 *See* December 19 Transcript at 251-252 (evidence in support of sale and compromises was uncontested).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    standing of the members of the LPG to raise the issues argued by Mr. Smith.[79]  During the

2    confirmation hearing, certain admissions and statements were made, summarized as follows:

3            a.    Mr. Smith acknowledged that the confirmation process proceeded with

4    proper notice and according to the rules.[80]

5            b.    Mr. Smith stated that he represented 350 people, and that the 350 number

6    was based on an update, presumably of the Amended 2019 Statement, filed after the time

7    to object to confirmation had expired.[81]

8            c.    The Court several times questioned Mr. Smith about the entities he

9    "purport[ed] to represent[,]" and its concern that they held different, and perhaps

10   conflicting, interests who could not be represented as a single group.[82]  Mr. Smith

11   acknowledged this conflict among the entities he claimed to represent.[83]

12           d.    Mr. Smith admitted that his alleged clients were not entitled to the improper

13   Prepaid Interest payments.[84]

14           e.    Mr. Smith further acknowledged that a claim could not be made for

15   Unremitted Principal because it had been commingled.  The exchange was as follows:

16           THE COURT: But how can you represent diverted funds of the people . . .
                 whose money went to pay, presumably, maybe one of your other clients?
17
18           MR. SMITH: That's, there's no way to get that back.  It goes into the
                 fund and it's commingled.  It's lost.  I don't know where it went.[85]
19

20   ───────────────────────

21   79 *Id*. at 67-68, 84-85, 92-94 & 129-130.

22   80 *Id*. at 55.

23   81 *Id*. at 67 & 263.

24   82 *Id*. at 68; *see id*. at 84-85, 92-94, & 129-130.

25

26   83 *Id*. at 84-85, & 92-94.

27   84 *Id*. at 85-86.

28   85 *Id*. at 85; *see id*. at 97 (admitting commingling).

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

f.      In a similar exchange, the Court asked Mr. Smith that if USACM could not net funds under the Netting process and was required to affirmatively sue each Direct Lender to recover the improperly paid Prepaid Interest, what would the source of the funds be to pay those Direct Lenders holding claims for Unremitted Principal.  Although he admitted he could not identify the source, Mr. Smith speculated that there had to be funds because "[t]here's a lot of money in there."86  The Court then asked: "[s]o [entities with Unremitted Principal claims are] not entitled to get anything paid wrongfully to the people who got the money?"87  And Mr. Smith answered "That's right."88 At which point the Court again asked Mr. Smith if his alleged clients holding Unremitted Principal claims knew he was taking that position, to which Mr. Smith essentially admitted that he was representing parties with conflicting interests.89

g.      Mr. Smith was asked by the Court what he would suggest if the Plan were to be modified to meet his concerns.  He stated that he would modify the Plan to say that everyone who received illegal Prepaid Interest would keep it, "and if that doesn't work, everybody that receives prepaid interest get a setoff against diverted principal, because people that are direct lenders in this position are not [despite their admitted inability to trace Unremitted Principal] general unsecured creditors."90  He also maintained that instead of recoupment of Prepaid Interest, the Debtors were required to affirmatively sue each Direct Lender to obtain the funds back. Although he admitted that entities holding Unremitted Principal claims could not be paid because of their inability to trace, Mr. Smith later said that they should just be able to keep the improper Prepaid Interest payments.

---

86 *Id.* at 92.

87 *Id.*

88 *Id.* at 93.

89 *Id.*

90 *Id.* at 109.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

h.      Although Mr. Smith's position was the Debtors were required to sue Direct Lenders to obtain the Prepaid Interest that had been improperly paid to them, he also argued that he really did not want them sued, but rather they should be entitled to keep the Prepaid Interest, plus be paid under the Plan because the Debtors had a lot of money.[91]

i.      At the close of the first day of the confirmation hearing, the Court inquired as to whether there was any way the Debtors and the Committees could agree to modify the Plan in a way that would address Mr. Smith's and Ms. Chubb's clients concerns.[92] The following morning, the Debtors and the Committees reported that, because of the interrelated nature of the compromises and the importance of treating all Direct Lenders the same in accordance with the proposed compromises that had been accepted by the Direct Lender Class (Class A-5), the Debtors and the Committees could not agree on any modification providing the LPG with differing treatment from the rest of the Direct Lenders.[93]

35.     The Court ultimately overruled the Confirmation Objection of the LPG as being unsupported by any evidence and without merit as a matter of law.[94]   At the conclusion of the confirmation hearing, the Bankruptcy Court determined that the Plan was confirmable, and on January 8, 2007, it entered the Confirmation Order [Docket No. 2376] and its Findings of Fact and Conclusions of Law in support thereof [Docket No. 2377].

<u>The Appellants' Appeal of the Confirmation Order</u>

36.     On January 16, 2007, a Notice of Appeal [Docket No. 2434] from the Confirmation Order was filed, stating that the appeal was brought by the "Lenders Protection Group, a group of investors/lenders in USA Commercial Mortgage Company . . . , as identified in the Statement of

---

91 *Id.* at 259.

92 *Id.* at 274-294.

93 December 20 Transcript.

94 Confirmation Order ¶¶ 2-3 & 5; Confirmation Findings and Conclusions ¶¶ C & E.

1   Law Offices of Alan R. Smith Pursuant to Bankruptcy Rule 2019 filed herein on December 6,

2   2006, and as supplemented thereafter . . . ."95  The referred to "group of investors/lenders" are

3   not named anywhere in the Notice of Appeal.  The Notice of Appeal only specifically references

4   the Initial 2019 Statement, which was the Statement filed prior to the Plan objection deadline, "as

5   supplemented," without further elaboration.

6            37.    On January 17, 2007, an Amended Notice of Appeal [Docket No. 2453] from the

7   Confirmation Order was filed, amending the Notice of Appeal to include, in addition to the LPG,

8   several additional appellants.  The Amended Notice of Appeal states that the appeal is brought by:

9            The Lenders Protection Group, a group of investors/lenders in USA Commercial Mortgage
             Company . . . , as identified in the Statement of Law Offices of Alan R. Smith Pursuant to
10           Bankruptcy Rule 2019 filed herein on December 6, 2006, and as supplemented thereafter .
             . . and Charles B. Anderson Trust, Rita B. Anderson Trust, Baltes Company, Kehl Family
11           Members and Mojave Canyon, Inc.96

12   Again, the referenced "group of investors/lenders" represented by Mr. Smith are not named

13   anywhere in the Amended Notice of Appeal (nor are the "Kehl Family Members").  Again, the

14   Amended Notice of Appeal only specifically references the Initial 2019 Statement, which was the

15   Statement filed prior to the Plan objection deadline, "as supplemented," without further

16   elaboration.

17           38.    Pursuant to 28 U.S.C. § 158, the Appellants' appeal of the Confirmation Order was

18   automatically referred to the United States Bankruptcy Appellate Panel of the Ninth Circuit

19   ("BAP").

20           The BAP Stay Order, the District Court's Quash Order, and the First Stay Motion

21           39.    On January 17, 2007, the Appellants filed an "Emergency Motion for Stay Pending

22   Appeal" with the BAP ("First Stay Motion"), a copy of which is attached as an Exhibit to the Joint

23   Emergency Motion to Quash Stay Pending Appeal, Vacate Temporary Stay Order, and Refer Stay

24   Motion to the Bankruptcy Court ("Emergency Motion to Quash Stay") [Appeal Docket No. 1],

25   without making any such motion before this Court in the first instance, as required by Bankruptcy

26

27   _____

28   95 Notice of Appeal at 1.

     96 Amended Notice of Appeal at 1.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Rule 8005.  On the same day, without affording any parties in interest a chance to respond to the

2    First Stay Motion, the BAP issued an *ex parte* order temporarily staying the Confirmation Order

3    through February 20, 2007.97

4        40.    On January 18, 2007, pursuant to 29 U.S.C. § 158(c)(1)(B), the Debtors elected to

5    have the appeal heard by the United States District Court for the District of Nevada.  Joined by the

6    Committees, the Debtors immediately filed in the District Court the Emergency Motion to Quash

7    Stay [Appeal Docket No. 1].  The Appellants filed an objection to the Emergency Motion to

8    Quash Stay on January 19, 2007 [Appeal Docket No. 8], to which the Debtors replied [Appeal

9    Docket No. 13].

10        41.    The District Court held a hearing on the Emergency Motion to Quash Stay on

11    January 22, 2007.  At that hearing, Mr. Smith stated that he represented "over 400 Direct

12    Lenders."  Counsel for the Debtors expressed the Debtors' concerns about who exactly was

13    appealing the Confirmation Order, as the Appellants were not named in the Amended Notice of

14    Appeal and they could not identify with any certainty many of the entities listed in the Smith 2019

15    Statements.98  At the conclusion of the hearing, the District Court informed the parties that it

16    would enter an Order granting the Motion, quashing the temporary stay granted by the BAP,

17    vacating the Stay Order, and ordering the Appellants to request a stay pending appeal from the

18    Bankruptcy Court in the first instance.

19        42.    Immediately after the January 22nd hearing, the Debtors approached counsel for

20    the Appellants, and informed them, among other things, that the Debtors could not identify many

21    of the entities listed in Smith 2019 Statements because account numbers had not been provided

22    and, in many instances, "vesting names" had not been used.  The Debtors requested that Mr. Smith

23    provide the Debtors with further information on the appealing parties.99

24

25

26    97 A copy of the Stay Order is attached as an Exhibit to the Emergency Motion to Quash Stay.

27    98 Smith Declaration at ¶¶ 15-21.

28    99 *Id.* at ¶ 21.

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

43.   As the result of the District Court's ruling, the Appellants' First Stay Motion was referred to this Court.  On January 23, 2007, the Debtors, again joined by the Committees, filed an objection to the First Stay Motion [Docket No. 2524] ("First Stay Objection").  In the First Stay Objection, the Debtors again noted the inadequacy of the Smith 2019 Statements, and the jurisdictional and standing issues related to the appeal.  The Debtors further maintained that a stay pending appeal was not appropriate for many reasons, including that it would likely jeopardize the closing of the asset sale to Compass.  On that same day, the Appellants filed a "Notice of Intent Not to File Motion for Stay Pending Appeal in the Bankruptcy Court" [Docket No. 2533].

44.   On January 25, 2007, the District Court entered an Order granting the Emergency Motion to Quash Stay ("Quash Order") [Appeal Docket No. 23].

<u>The January 25th Letter</u>

45.   On the same day that the Quash Order was entered, the Debtors sent to Mr. Smith by email and First Class Mail a letter ("January 25th Letter"), a copy of which is attached hereto as Exhibit A, stating: "As Annette [W. Jarvis] mentioned to you after the hearing on Monday [January 22nd hearing], the Debtors need the vesting names and account numbers for each of the entities listed on the attachments to your 2019 Statements."100  In addition, the Debtors informed Mr. Smith that the Smith 2019 Statements did not comply with Bankruptcy Rule 2019, and requested that he provide to the Debtors by no later than February 2, 2007 all of the information required under that Rule, including the vesting names of the entities that he claimed to

---

100 Exhibit A at 1. This letter was also sent to counsel for the Jones Vargas Direct Lenders.  Although substantial issues exist as to whether the Jones Vargas Direct Lenders have standing to appeal the Confirmation Order, and whether the "Kehl Family Members" actually appealed the Confirmation Order, none of which are waived herein, issues related to Ms. Chubb's four statements made under Bankruptcy Rule 2019 and her compliance with that Rule are not relevant to the Stay Motion.   Thus, references herein to the January 25th Letter only pertain to Mr. Smith.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  represent and information related to his retention and authority to act on behalf of the members of

2  the LPG.101

3      46.    Mr. Smith has never responded to the Debtors' January 25th Letter, nor did Mr.

4  Smith attempt to contact the Debtors to provide the information that the Debtors had requested

5  informally at the January 22nd hearing or in the January 25th Letter related to the identity of his

6  purported clients and his failure to comply with Bankruptcy Rule 2019.

7      47.    Because the purported members of the LPG are not identified by account numbers

8  and, in many cases by vesting name, it is very difficult to ascertain with any certainty the exact

9  relationship to the Debtors (if any) of many of the entities listed in the Smith 2019 Statements.102

10          a.    For example, in many instances, only an individual's name is listed in the Smith

11              2019 Statements and the Debtors have no record of that individual name being a

12              current Direct Lender on any loan serviced by USACM.  Some individual names

13              may potentially be associated with several vesting names.  The ability to identify

14              the entities listed in the Statements is complicated by the fact that Mr. Smith states

15              in the Amended 2019 Statement that the entities listed in Exhibit A thereto "are not

16              limited to the names listed therein, but may also include various other entities in

17              which those members own or control, and/or their successors and assigns."103

18              For all of these reasons, the Debtors cannot conclusively identify many of the

19              entities listed in the Statements.104

20

21

---

22  101 The January 25th Letter mistakenly stated that the 2019 Statements were not verified.  It has been determined that

23  they were in fact verified.

24  102 Smith Declaration at ¶ 16.  As noted above, "vesting names" are the names in which each invested with the

25  Debtors and in which they hold interests in loans.  They are the names by which the Debtors are able to identify each

26  of the Direct Lenders.  *Id.*

27  103 Amended 2019 Statement at ¶ 2.

28  104 Smith Declaration ¶¶ 15-20.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

b.  Some of the entities listed in the Smith 2019 Statements that can be identified are actually not Direct Lenders, but rather are members only having equity interests in FTDF or DTDF.  Further, as noted above, it appears that some of the entities listed in the Statements are neither current Direct Lenders nor members of either of the Funds.

c.  The Smith 2019 Statements do not indicate which entities listed thereon have Unremitted Principal" claims, or which such entities received improper prepetition payments from USACM.  But, based on the limited information that has been provided in the Smith 2019 Statements, it appears that the Appellants include both Direct Lenders with Unremitted Principal claims and Direct Lenders who received Prepaid Interest yet do not have Unremitted Principal claims, as well as Direct Lenders who have neither.[105]

d.  Furthermore, Amended Notice of Appeal identifies the "Appellants" as persons identified in the Initial 2019 Statement, as supplemented.  The Smith 2019 Statements, to the extent that Amended 2019 Statement is what is being referred to and is applicable (which the Debtors contend it is not), purport to list names of entities who are appealing the Confirmation Order, yet they include names of at least fourteen entities who voted to accept the Plan.[106]

e.  Although the Smith 2019 Statements state that the total loans made by the entities listed in the Statements is unknown "due to incomplete records received from the Debtors[,]" and that Mr. Smith is in the "process of gathering as much information as possible concerning the loans made by the members of the group. . . [,]"[107] no formal or informal discovery has been served on the Debtors by Mr. Smith or his firm relating this assertion.[108]

---

[105] *Id*. at ¶ 19.

[106] *Id*. at ¶ 20.

[107] Initial 2019 Statement ¶ 2; Amended 2019 Statement ¶ 3.

[108] Smith Declaration ¶ 21.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Appellants' Statement of Issues and Certificate of Interested Parties and the Debtors' Investigation

48.     On January 26, 2007, the Appellants filed a Designation of Record and Statement of Issues on Appeal [Docket No. 2590] ("Statement of Issues"), listing seventeen issues, some of which are no longer being pursued.109  It is clear, however, that the issues being pursued are made assuming that all of the Appellants are Direct Lenders.

49.     On February 5, 2007, Mr. Smith filed in the District Court a Certificate of Interested Parties [Appeal Docket No. 29], certifying pursuant to District Court L.R. 7.1-1 that the parties identified on the attached Exhibit A were "the members of the LPG and are interested in this action as Appellants."110  Unlike the references in the Notice of Appeal and Amended Notice of Appeal, which referenced the Initial Rule 2019 Statement, Exhibit A to the Certificate of Interested Parties appears to be the same Exhibit that was attached to Mr. Smith's Amended 2019 Statement, filed after the December 11th deadline to object to the confirmation of the Plan had expired.

### Motion to Dismiss Appeal

50.     Shortly thereafter, on February 9, 2007, the Debtors filed in the District Court an Emergency Motion to Dismiss the appeal, [Appeal Docket No. 34] ("Motion to Dismiss").  The Debtors argued that the Appellants were not "persons aggrieved" with standing to appeal the Confirmation Order because they did not adequately protect their rights in this Court prior to or at the confirmation hearing, and that members of the LPG and the Kehl Family Members did not timely appeal the Confirmation Order because they were not expressly named in the Amended Notice of Appeal as required under Rule 8001(c) of the Federal Rules of Bankruptcy Procedure.

51.     The Motion to Dismiss was opposed by the Appellants [Appeal Docket No. 44]. Although the effectiveness of the Smith 2019 Statements and the Amended Notice of Appeal was

---

109 On February 13, 2007, the Appellants filed their Opening Brief in the District Court [Appeal Docket No. 47], which does not raise several of the issues designated in the Statement of Issues.

110 Certificate of Interested Parties at 2 [Appeal Docket No. 29].

1    squarely brought into question in the Motion to Dismiss, the Appellants never addressed these

2    defects in their opposition or during this time.

3        52.    In the response that the Debtors filed to the Appellants' opposition to the Motion to

4    Dismiss [Appeal Docket No. 41], the Debtors specifically argued that the Appellants lacked

5    standing to attack the Confirmation Order for several reasons, including, in relevant part, that the

6    Appellants were not "persons aggrieved" by the Confirmation Order because (a) they failed to

7    present any evidence at the confirmation hearing establishing their individual respective rights

8    with regard to funds held by the Debtors in the Collection Account, (b) the Appellants failed to

9    present any evidence at the confirmation hearing establishing that they could trace funds in which

10    they appeared to be asserting an interest, and (c) the alleged members of the LPG and the Kehl

11    Family Members did not timely appeal the Confirmation Order because they were not expressly

12    named in the Amended Notice of Appeal.  *See* Reply to Appellants Opposition to Appellee-

13    Debtors' Emergency Motion to Dismiss Appeal and Memorandum of Law in Support Thereof

14    [Appeal Docket No. 48].  The Debtors maintained that they could not identify with any certainty

15    the members of the LPG who had appealed and each member's respective standing to raise any or

16    all of the issues stated in the Appellants' Statement of Issues, and that the appeal was

17    jurisdictionally defective because the Amended Notice of Appeal did not comply with Rule

18    8001(a) and the Debtors were prejudiced by the confusion surrounding the identity of the

19    members of the LPG.111  Furthermore, the Debtors argued that the Appellants could not rely on

20    the expanded list of purported LPG members in the Amended 2019 Statement inasmuch as that

21    Statement was filed after the December 11th deadline to object to the Plan and, therefore, any

22    entity added to the Amended 2019 Statement had not objected to the Plan and could not be heard

23    on appeal.112

---

111 Reply to Appellants Opposition to Appellee-Debtors' Emergency Motion to Dismiss Appeal and Memorandum of Law in Support Thereof at 12-13 [Appeal Docket No. 48].

112 *Id*. at 13.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

53.     A hearing on the Motion to Dismiss was held by the District Court on February 14, 2007.  A copy of the Transcript is attached as Exhibit B.   The Honorable Philip M. Pro and the Honorable Robert C. Jones jointly presided.

54.     At oral argument, the Debtors again argued that Mr. Smith's failure to adequately and timely identify the alleged members of the LPG was prejudicial to the Debtors and raised serious questions as to whether these "members" had timely appealed and/or had standing to appeal.[113]  Particularly relevant to the present Stay Motion is that the Debtors argued that the Appellants were claiming a right to "Segregated Funds," but they did not present any evidence in the Bankruptcy Court showing their individual rights to those funds.[114]   Judge Pro questioned Mr. Smith about the identity of his claimed clients, stating: "First we have to know who the person in the Lender. . . Protection Group are."[115]  Mr. Smith responded stating he believed that the Debtors had sufficient information about his clients and their interests.[116]  He further represented that he "represented about 350" of the Appellants below, and that "they're all Direct Lenders."[117]  He did not see the significance of the Debtors' argument that entities newly listed in the Amended 2019 Statement could not appeal the Confirmation Order because they were

---

113 *Id*. at 23-27, 37-38.

114 *Id*. at 23-24.

115 *Id*. at 58.

116 *Id*. at 59.

117 *Id*. at 60.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   named on December 18th and objections to confirmation were required to be filed on December

2   11th.118

3       55.    The District Court denied the Debtors' Motion to Dismiss "at the present time,"

4   thus denying it without prejudice.119  The Court held that there were grounds to consider the

5   Motion to Dismiss on an emergency basis in light of the pending sale to Compass, and that in light

6   of that fact it would give an oral ruling, but that it was taking the matter under advisement to issue

7   a written order.  A concern of the District Court was the fact that the Appellants may have an

8   interest in the Segregated Funds.120  As of the time of this filing, the District Court had not

9   entered an Order.

10                          The Present Stay Motion

11      56.    The asset sale to Compass closed on February 16, 2007.121

12      57.    On February 20, 2007, LPG, and presumably, the JVDLs,122 filed the present

13  Stay Motion [Docket No. 2848], seeking to stay the distribution of "Segregated Funds," pending

14  appeal, which, pursuant to the LPG's definition of these funds, are in excess of $38.5 million

15  pending appeal.123  Despite the Appellants' admitted burden to prove that they are entitled to a

16  stay pending appeal, the Stay Motion is not supported by any evidence.  Glaringly absent

17  _____

18  118 Id. at 59 (Mr. Smith stated: "The timing of that amendment, I mean I don't see the significance.  It occurred

19  sometime during the confirmation hearings during the course of my oral argument in which I argued the very

20  objections that were raised in the pleading.  To say that some of that group was excluded because it wasn't raised

21  earlier I think is incorrect.  It was raised by the time the arguments were made, the entire group should be included").

22  119 Id. at 90.

23

24  120 Id.

25  121 Smith Declaration at ¶ 5.

26  122 The JVDL Appellants are identified in the Stay Motion as movants, but their counsel has not signed the Stay

27  Motion.  Rather, it is only signed by Mr. Smith, counsel for LPG.

28  123 Smith Declaration at ¶ 23.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    (particularly in light of the history set forth above) is the existence of any evidence (a) identifying

2    the alleged "members" of the LPG as requested by the Debtors, (b) providing information required

3    under Bankruptcy Rule 2019 as previously requested, or most importantly, (c) showing any of the

4    Appellants' specific and particular alleged ownership interest in any of the Segregated Funds

5    which they seek to freeze pending appeal.

6         58.    This Court has entered an Order granting the Appellants' request to hear the Stay

7    Motion on shortened notice time, scheduling the hearing for March 1, 2007, and allowing the

8    Debtors until February 28, 2007 to file a response to the Stay Motion [Docket No. 2878].  This

9    Objection is so filed.

10                                    **III.**

11                             **LEGAL ARGUMENT**

12        The Appellants' Stay Motion should be denied because, for the reasons stated in section

13    III.A below, the Appellants either have admitted that they have no interest, or they have not

14    proven that they have any interest in any of the "Segregated Funds" that they seek to freeze

15    pending the appeal.  Furthermore, as discussed in section III.B, the Stay Motion should be denied

16    because the Appellants have failed to meet their burden of showing that they are entitled to a stay

17    pending appeal under Bankruptcy Rule 8005.  Even if the Court is inclined to impose a stay

18    pending appeal, however, the stay cannot apply to Compass' rights and obligations under the

19    Confirmation Order, and the Appellants should be required to post a bond in the amount of $32

20    million.  These points are discussed in section III.C below.  Finally, as set forth in section III.D,

21    the "limited" stay requested by Appellants is not feasible and has no basis in the law.

22    **A.    THE STAY MOTION SHOULD BE DENIED BECAUSE IT SEEKS TO
      STAY THE DISTRIBUTION OF FUNDS (i) IN WHICH THE APPELLANTS
23    ADMIT THEY DO NOT HOLD AN INTEREST, (ii) WHICH WILL BE
      DISTRIBUTED TO DIRECT LENDERS UNDER THE PLAN, AND (iii) IN
24    WHICH THEY HAVE FAILED TO PROVE THEY HAVE A
      SUSTAINABLE OWNERSHIP INTEREST ON APPEAL**

25

26        In the Stay Motion, the Appellants request an order staying the distribution of what they

27    describe as the "Segregated Funds."  In defining this term, the Appellants refer to funds that were

28    ordered by the Court ordered to be segregated and held by the Debtors pending a further order of

1   the Court in the Distribution Order, referenced throughout this case as "Holdback Funds."124

2   Specifically, the Appellants refer to three components of Holdback Funds based on an inaccurate

3   representation of the language in the Distribution Order, as follows:

> (A)   a 1% servicing fee to USACM and other fees and costs it is
>        entitled to charge;

> (B)   an additional 2% of principal on all loans that were fully paid off
>        post petition; and

> (C)   an amount equivalent to the Prepaid Interest each Direct Lender
>        received.125

9   Looking at each component of the above-described "Segregated Funds," and referring to directly

10  to the source of these three components – the Distribution Order – it is apparent that the

11  Appellants do not understand what they are requesting in seeking a stay of the distribution of the

12  funds described in (A) and (B) above.  As explained in sections 1 and 2 below, not only are they

13  asking to stay the distribution of Holdback Funds which they admit, and it cannot be contested,

14  belong to, and in some cases have already been distributed to, USACM, but they also seek to stay

15  the distribution of funds that will be distributed to other non-appealing Direct Lenders under the

16  Plan as part of the compromise incorporated in Class A-5.

17      Furthermore, as set forth in the facts above, the failure of the LPG to identify its purported

18  members by their vesting names and account numbers in the Smith 2019 Statements prejudices the

19  Debtors' ability to defend the appeal, a point that becomes all too clear when the Stay Motion is

20  considered in conjunction with component (C), as discussed in section 3 below.  That the

21  Appellants seek to freeze $38.5 million in Holdback Funds without ever having attempted to prove

22  their alleged ownership interest in any of those funds and without ever having established the

23  amount of their claims, is nothing short of irresponsible.  It is respectfully submitted that the Stay

24

25

---

26  124 Distribution Order, quoted *supra* at ¶ 10.

27

28  125 Stay Motion at 5 (citing Distribution Order).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Motion be denied and, as discussed in section 4 below, the Debtors should be afforded appropriate

2  relief under Bankruptcy Rule 2019(b).

3    **1.    The funds described in component (A) are admitted to belong to USACM**

4    There is no reason why the distribution of funds described in (A) would be stayed pending

5  this appeal because, as freely admitted by the Appellants in the Stay Motion,[126] these

6  funds belong to USACM.  This fact is further highlighted when reference is made to the

7  Distribution Order, which contrary to the Appellant's description, states that component (A) is, in

8  fact: "USACM's servicing fees (i.e., the 1% servicing fee that the Debtor's [sic] requested in the

9  Distribution Motion) and other fees and costs it is entitled to charge[.]"[127]  Furthermore, as has

10  been authorized and previously disclosed, USACM has distributed these Servicing Fees to itself,

11  and they have in fact been distributed.[128]  Thus, even if the Appellants had an interest in this

12  portion of the Holdback Funds, which they admit they do not, their request to freeze the use of that

13  money pending appeal would be moot.

14    **2.    The funds described in component (B) also belong to USACM, and the balance
15         is to be distributed to Direct Lenders**

16    The "additional 2%" described by the Appellants in component (B) represents Servicing

17  Fees that USACM was entitled to collect from Direct Lenders who owed USACM greater than a

18  1% , and up to a 3%, Servicing Fee under their respective LSA (the 2% being the balance over and

19  above the 1% Servicing Fee in Appellants' component (A) for 3% LSA).  In the Distribution

20  Order, the Court made clear that this Servicing Fee was being held back from distribution to

21  USACM pending a review of the proper amount of Servicing Fees that USACM could charge to

22  the various Direct Lenders, stating: "an additional 2% of principal on all loans that were fully paid

23

24

25

26  126 *Id.*

27  127 Distribution Order ¶ 2, quoted *supra* at ¶ 10.

28  128 Smith Declaration at ¶ 22.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    off post petition . . . such that the servicing fee charged on such loans is 3%, pending the Court's

2    review of the proper amount of servicing fees to be charged (the "Payoff Holdback").¹²⁹

3        Under the Plan, with the exception of $605,000 retained to pay part of the professional fees

4    of the Direct Lenders Committee, as part of the compromise accepted by the Class A-5 Direct

5    Lenders, these funds are actually *returned* to Direct Lenders whose LSAs had 1% Servicing Fee

6    provisions, with all claims for additional administrative costs that could be alleged against these

7    funds being released.¹³⁰   These funds belong to USACM because they are the Servicing Fees

8    under the terms of the LSAs that USACM is entitled to collect.  Thus, (a) the Appellants cannot

9    seek to stay the portion of this money which belongs to USACM, and (b) it makes no sense that

10   the Appellants would seek to stay the distribution of the excess funds over and above the

11   contractual Servicing Fees to all Direct Lenders who have 1% Servicing Fee contracts.   While at

12   first blush the offer to allow the Debtors to hold the latter subset of funds is attractive if applied to

13   the Appellants (as they should not receive the benefits of the very compromise that they contest on

14   appeal), the offer really serves to accentuate the global nature of the compromise which was

15   designed to apply equally to all similarly situated Direct Lenders who ultimately voted as a Class

16   to accept the compromise.  This offer also highlights that the Debtors would not even know which

17   of these funds to retain because the Appellants have never met their burden of providing evidence

18   of their respective claims and interests.  The practical effect of the relief sought as to these funds,

19   then, is to deny any distributions of these funds to Direct Lenders on a timely basis, resulting in

20   substantial harm to the Direct Lenders and endangering the compromise approved as part of Class

21   A-5, and very possibly, the effectiveness of the entire Plan.

**3.   The LPG has not demonstrated what, if any, alleged ownership interest they have in the funds described in component (C)**

24       Examination of the funds described in Appellants' component (C), which in and of

25   themselves are in excess of $32 million, compels the following question: What portion of these

---

129 Distribution Order, quoted *supra* at ¶ 10.

130 *See* Plan, Art. IV, Section E.1.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   funds do the Appellants contend should be frozen during the duration of the appeal?  Surely they

2   cannot argue that all of these funds should be frozen because the majority of Direct Lenders voted

3   to accept the Plan or did not object to the Plan, are not Appellants in this appeal, and have agreed

4   to the treatment of these funds under the Plan.  Although the Debtors continue to maintain that the

5   Appellants lack standing to bring this appeal because they failed to present any evidence at the

6   confirmation hearing establishing their alleged individual stakes in the Chapter 11 Cases and they

7   cannot do so on appeal, this Stay Motion required the Appellants to produce evidence establishing

8   the specific part of $32 million in which each Appellant claims an interest that should not be

9   distributed pending the appeal.  They have not done so at any stage of the Chapter 11 Cases and,

10  therefore, their request for a stay should be denied.

11       **4.    Relief should be afforded to the Debtors under Bankruptcy Rule 2019(b)**

12  Bankruptcy Rule 2019(b) states:

13  **Failure to Comply; Effect.**  On motion of any party in interest or on its own initiative, the court may

14

15  (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and

16  personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation and, if it so determines, the court may refuse to permit that

17  entity, committee, or indenture trustee to be heard further or to intervene in the case;

18  (2) examine any representation provision . . . or committee or other authorization . . . and grant appropriate relief; and

19
20  (3) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule or with 1125(b) of the Code.131

21  As denoted from its subtitle, Bankruptcy Rule 2019(b) is meant to insure compliance with

22
23  Bankruptcy Rule 2019(a).   That Rule, in turn, states that "every entity or committee representing

24  more than one creditor or equity security holder . . . shall file a verified statement setting forth"

25  certain information meant to identify, among other things, (a) each entity represented, (b)the

26  nature and amount of each of the claims or interests of each of the represented entities, (c) the

27  _____

28  131 Fed. R. Bankr. P. 2019(b).  Section 1125(b) deals with improper solicitation of acceptance or rejections of a plan, such as Ms. Cangelosi's improper pre-confirmation solicitations.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0022

facts and circumstances that gave rise to employment, (d) if a committee is involved, the names of the entities who arranged representation or organized the committee, and (d) a copy of the instrument, if any, whereby the entity or committee is empowered to act on behalf of creditors or equity security holders.132   By its express terms, compliance with Bankruptcy Rule 2019(a) is mandatory.  As one court has stated:

> Bankruptcy Rule 2019 is a disclosure provision concerning attorneys or professionals, such as Bankruptcy Rules 2014 and 2016.  Moreover, the Court should also play a role in ensuring that lawyers adhere to certain ethical standards.  Bankruptcy Rule 2019 was designed for such a purpose.  It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny, whether it is the proposal of a plan of reorganization, the representation of the debtor, or representation of numerous creditors-secured or unsecured.133

When an attorney or a committee has failed to comply with Bankruptcy Rule 2019(a), "Bankruptcy Rule 2019(b) affords the trial court with a great deal of discretion in fashioning the remedy."134  This relief includes directing counsel to withdraw from representing conflicting interests in a case.135

The Smith 2019 Statements do not comply with Bankruptcy Rule 2019(a).136  Indeed, Mr. Smith admitted this fact in the Initial 2019 Statement,137 the only Rule 2019 disclosure made prior to the December 11th deadline to object to the confirmation of the Plan, and to the extent that

---

132 Fed. R. Bankr. P. 2019(a).

133 *In re Oklahoma P.A.C. First Ltd. Partnership*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990) (cited in *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee),* 321 B.R. 147, 165 (D. N.J. 2005) (citing cases).

134 *Oklahoma P.A.C.,* 122 B.R. at 391; *see Baron & Budd*, 321 B.R. at 166 (in affirming an order under Rule 2019(b), the District Court also applied 11 U.S.C. § 105(a)).

135 *Id*. at 392.

136 *See supra* ¶¶ 25-29 & 32.

137 *See supra* ¶ 28 (statement "is made . . .  without complete information, as required by Bankruptcy Rule 2019").

1    the Amended 2019 Statement even is relevant in the appeal,138 it also does not comply with

2    Bankruptcy 2019(a).139

3            Although the Debtors and the Committees, and indeed, the Court have expressed

4    frustration during the confirmation process with the inability to identify exactly what interests the

5    LPG purports to represent (and with Mr. Smith's ability to represent admitted conflicting

6    interests), the appeal, and more particularly, the present Stay Motion, have made it increasingly

7    clear that the LPG's failure to comply with Bankruptcy Rule 2019(a) is highly prejudicial to the

8    Debtors in their attempts to defend the appeal and this Motion, and more importantly, makes it

9    very difficult to assess the Appellants' standing to even bring the appeal.  Because the purported

10   members of the LPG have not been identified by account numbers and, in many cases, by vesting

11   names, the Debtors have not been able to identify these entities with any level of certainty.140

12   Furthermore, the Debtors are unable to discern the nature and amount of each of the purported

13   members' asserted claims and/or interests as they have not been identified in any way in the Smith

14   2019 Statements.  Of the entities that the Debtors believe they can identify, several do not even

15   appear to be Direct Lenders who would have standing to raise the issues that have been raised on

16   appeal, and there are entities holding conflicting interests with one another.141  Some are even

17   believed to have voted to accept the Plan.142

---

138 As noted above, one of the several jurisdictional arguments that bar the appeal as to all or some of the Appellants is that the entities newly listed in the Amended 2019 Statement, which was filed on the eve of the confirmation hearing, did not timely object to the confirmation of the Plan and, therefore, lack standing to appeal.

139 *See supra* ¶ 32.

140 Smith Declaration ¶ 16.

141 Smith Declaration ¶¶ 16-19.

142 Smith Declaration ¶ 20.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

At least as early as the confirmation hearing, the Court, the Debtors and the Committees identified the LPG's failure to comply with Bankruptcy Rule 2019(a) as a problem.  Since the confirmation hearing, the Debtors have persistently requested additional information regarding the LPG from Mr. Smith, and argued to the District Court that the lack of compliance with Bankruptcy Rule 2019(a) is prejudicial and bars the appeal as to many, if not all, of the purported LPG members.  Despite these facts, the LPG has done nothing: it has not responded to informal or formal requests for information from the Debtors, and, despite allegations in the Smith 2019 Statements that the LPG could not provide necessary information due to the fault of the Debtors, it has requested no information either informally or formally from the Debtors.  Finally, and significantly, despite the express provisions of Bankruptcy Rule 2019(a), Mr. Smith has not provided any information showing that he is "empowered to act on behalf of" the purported members of the LPG regarding this Stay Motion or the appeal.  Accordingly, the Debtors request that the Court take appropriate action under Bankruptcy Rule 2019(b), including voiding the Smith 2019 Statements, striking the present Stay Motion, and refusing to permit the LPG from being heard further in the Chapter 11 Cases.

**B.    THE STAY MOTION SHOULD BE DENIED BECAUSE THE APPELLANTS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY ARE ENTITLED TO A STAY PENDING APPEAL**

Bankruptcy Rule 8005 governs the stay of a bankruptcy court's order pending appeal.  As recognized by the Appellants,143 the following four elements are prerequisites to the issuance of a stay under Bankruptcy Rule 8005:

a.    Applicant is likely to succeed on the merits of the appeal;

b.    Applicant will suffer irreparable injury if the stay is denied;

c.    No substantial harm will come to appellee or other interested parties; and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

d.    The stay will do no harm to the public interest.144

"The party seeking the stay bears the burden of proof to establish these factors by a preponderance of the evidence."145  "In applying these factors, the court [should be] mindful that a discretionary stay pending appeal is viewed as an extraordinary remedy."146  Moreover, because the test is conjunctive, each element must be satisfied and a strong showing as to one or more of these four elements will not excuse a failure to establish the others.147  As set forth below, even assuming that the Appellants have adequately preserved and presented their standing in this appeal (which the Debtors maintain they have not), the Appellants have not met their burden of establishing each element of the above test, and therefore, it is respectfully submitted that the Stay Motion must be denied.

1.    **Appellants have failed to demonstrate that they are likely to succeed on appeal**

The Appellants must show that they are likely to succeed on appeal of the Confirmation Order.  In order to do so, the Appellants must at a minimum demonstrate that they have standing to bring the appeal, as there can be no success on appeal if the Appellants have not properly commenced it.  Once they have established that appellate jurisdiction exists, they must demonstrate a "substantial case" or a "strong case on appeal" regarding the merits of the

---

143 Stay Motion at 9.

144 *In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980); *Universal Life Church, Inc. v. United States*, 191 B.R. 433, 444 (E.D. Cal. 1995); *Acton v. Fullmer (In re Fullmer)*, 323 B.R. 287, 292-93 (Bankr. D. Nev. 2005); *In re Liggett*, 118 B.R. 219, 221 (Bankr. S.D.N.Y. 1990).

145 *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr. N.D. Ohio 2004).

146 *Fullmer*, 323 B.R. at 293.

147 *See, e.g., In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003) ("[Movant's] failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion.").

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Confirmation Order.148  Simply presenting a *prima facie* case will not satisfy this

2   requirement.149

3           The Debtors have steadfastly maintained that none of the Appellants has standing to appeal

4   the Confirmation Order because they did not establish their interests in these Chapter 11 Cases in

5   conjunction with their Confirmation Objection, they admitted that their claims to funds in the

6   Collection Account, including Prepaid Interest and Unremitted Principal, could not be traced, and

7   they did not, as this Court found at the confirmation hearing, adequately protect their rights

8   because they did not present any evidence related to their rights to funds held by the Debtors, any

9   evidence against Debtors' rights to recoup Prepaid Interest from these funds, or any evidence to

10  contradict the Debtors' request for approval of the compromises as part of the Plan in conjunction

11  with their Confirmation Objection.150  As this Court observed, the Appellants knew that the

12  confirmation hearing was the time and place to establish their rights, but they failed to do so.

13  Because the Appellants failed to protect their rights in this Court, they are not "persons aggrieved"

14  with standing to appeal and, therefore, they have no likelihood of success on appeal.151

15          If there is a basis to address the merits of the Confirmation Order, which given the

16  Appellants' lack of standing the Debtors maintain there is not, the Appellants cannot meet their

17

18

19

20

21  148 *Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, No. 02-1353, 2004 U.S. Dist. LEXIS 1917, at *4 (D. Del.

22  2004) (quoting *In re Pub. Serv. Co. of N.H.*, 116 B.R. 347, 348-49 (Bankr. D.N.H. 1990)).

23  149 *See In re Sung Hi Lim*, 7 B.R. 319, 321 (Bankr. D. Haw. 1980).

24  150 *See* Fed. R. Bankr. P. 8001(a).  The District Court has taken under advisement issues related to the sufficiency of

25  the Amended Notice of Appeal and although relevant to the "success on appeal" standard for imposing a stay, it is not

26  properly before this Court.   By making the arguments herein, however, the Debtors are in no way waiving this

27  argument.

28  151 *See, e.g, In re P.R.T.C., Inc.*, 177 F.3d 744, 777 (9th Cir. 2000) (citing cases)

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

burden of showing a likelihood of success on appeal.  In the Stay Motion,152 the Appellants'

allege three reasons why they believe they are likely to prevail on appeal:

(1)    The Plan improperly effectuates a global compromise without the consent of all
       parties giving up rights thereunder.153

(2)    The Court erred in allowing USACM to recoup Prepaid Interest that had been
       illegally transferred to Direct Lenders prior to the Petition Date;

(3)    The Debtors cannot recover Prepaid Interest from Direct Lenders without
       commencing an adversary proceeding or consent; and

For the reasons set forth below, the Appellants' contentions are without merit and they simply

have not, and cannot, meet their burden of establishing that they are likely to succeed in their

appeal of the Confirmation Order.   As such, the Stay Motion must be denied.

### A.    The compromise embodied in the Plan is proper and binding upon the Appellants

Appellants assert that a chapter 11 plan cannot provide for a compromised treatment of

claims without 100% approval of a class.  This assertion is incorrect as a matter of law, and the

Appellants have no likelihood of success on appeal on this point.

Section 1123(a)(3) of the Bankruptcy Code requires that a Plan "specify the treatment of

any class of claims or interest that is impaired under the plan."  Section 1123(b)(3) permits the

---

152 In their Opening Brief, the Appellants have raised additional issues on appeal which they have not discussed in

their Stay Motion, including the issue of whether the Court erred in ordering that the LSAs are executory contracts,

apparently admitting that they will not succeed on appeal on the unraised issues.  *See* Statement of Issues (raising

additional arguments); *compare* Appellants' Opening Brief (not addressing issues raised in Statement of Issues).

Because the additional issues have not been raised in the Stay Motion, the Debtors have not addressed them herein.

To the extent that additional issues can be raised at oral argument, the Debtors reserve the right to address them at that

time.

153 Stay Motion at 10.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    plan to provide for the settlement or adjustment of any claim or interest belonging to the debtor or

2    to the estate, and subsection (b)(6) of Section 1123 permits a plan to include any other appropriate

3    provision not inconsistent with the applicable provisions of title 11.  If a creditor is impaired by

4    the treatment of a claim authorized by Section 1123(b), such as in a compromise, the plan must

5    protect its interests through the "best interests of creditors" test, which serves to insure that each

6    creditor will receive property of a value, as of the effective date of the plan, that is not less than the

7    amount such holder would receive under a chapter 7 liquidation.154   If a plan is confirmed, it is

8    wholly binding on all parties in interest, whether or not they have voted to accept or reject it.155

9    Based on these express provisions of the Bankruptcy Code, the Plan appropriately provided for the

10    compromise of claims, and it having been confirmed, is now binding on the Appellants.

11         As a result of USACM's prepetition misappropriation of and commingling of funds, the

12    DTDF Committee, on behalf of DTDF, has asserted that all investors should be treated as general

13    unsecured creditors, and that all assets, including post-petition loan repayments collected by

14    USACM, be treated as property of the estate.  This assertion for "recharacterization" of the loans

15    of Direct Lenders was compromised as part of the compromise approved in the Plan, which

16    permits Direct Lenders, whose monies were not diverted, to avoid a challenge to their right to

17    retain their interest in the notes and deeds of trust as not being property of the estate, as well as the

18    non-diverted proceeds attributable to such investments, less only the amounts of Prepaid Interest

19    that they were illegally paid prior to the Petition Date. It is a compromise that is supported by the

20    Debtors and all of the Committees that were appointed to act as fiduciaries for their respective

21    constituents, including Direct Lenders, in these Chapter 11 Cases.

22         Based on Section 1123(b) the Plan appropriately included this compromise of competing

23    claims, and as authorized under Section 1129, the Plan, including this compromise, was properly

24    confirmed based on the wholly uncontested evidence in support thereof presented by the Debtors

25    and the affirmative vote of all Classes entitled to vote on the Plan, including Class A-5 applicable

26    to Direct Lenders.  The Appellants conducted no discovery of the Debtors prior to confirmation

27

28    154 11 U.S.C. §1127(a)(7).

155 *Id*. § 1141(a).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    related to the propriety of this settlement, and they failed to support their objection to confirmation

2    with any evidence at all, let alone any evidence that undermined Mr. Allison's testimony that the

3    compromises in the Plan were fair and equitable, non-collusive and in the best interests of the

4    Debtors and their estate.  Furthermore, they did not submit any evidence at all, let alone evidence

5    attacking Mr. Allison's detailed testimony as to why the Plan afforded all creditors the protections

6    of the "best interests of creditors" test.  This being the case, the Appellants lack standing to appeal

7    the Confirmation Order because they are not "persons aggrieved" inasmuch as they did not protect

8    any interests that they may have in this Court, and they have no ability to show that they will

9    succeed on appeal.

10          In so arguing, the Debtors point out that not only is the right to compromise claims in a

11   chapter 11 plan anticipated and authorized under the express provisions of the Bankruptcy Code,

12   but it has long been recognized by the courts, and no contrary authority was provided by the

13   Appellants at the time of confirmation or now.  For example, in *In re Allegheny Int'l, Inc.*, the plan

14   proposed, "inter alia, to settle the adversary action by the Creditors' Committee and Equity

15   Committee against the secured bank lenders."  156  The claims settled included avoidance actions

16   against the banks, and the banks' claims for recovery against the debtor, and the settlement was

17   supported by the debtor, the Creditors' Committee and a class of creditors.  In approving the

18   settlement and confirming the Plan, the court found:  "It is clear that this settlement is an integral

19   part of the debtor's plan of reorganization.  Consummation of the settlement is conditioned upon

20   confirmation of the plan, and similarly, confirmation of the plan is conditioned upon

21   consummation of the settlement."157  The court further stated that: "Even when an impaired class

22   of claims or interests does not accept the plan, the court may approve the settlement and the plan if

23   the court determines that the plan is fair and equitable to those impaired classes."158

24

25

26   156 118 B.R. 282, 307 (Bankr. W.D. Pa. 1990).

27   157 *Id.* at 309.

28   158 *Id.*

1    Finally, the Appellants contend on appeal that "due process" concerns preclude the use of a

2    compromise under the Plan and require a stay pending appeal.159  To the contrary, as this Court

3    expressly held, the confirmation process itself satisfies due process concerns.  Due process

4    requires notice and an opportunity to be heard.160  It is afforded where an objecting party has the

5    opportunity to be present at a hearing, argue his or her position, and present evidence in support

6    thereof.161  *In re Jorgansen*, a BAP case cited by the Appellants in their Confirmation Objection,

7    in fact establishes that confirmation satisfies the fundamental elements of due process, as the court

8    noted that "[c]reditors were noticed of the confirmation hearing and had an opportunity to

9    appear."162

10    Here, as the facts set forth above show, each Direct Lender was served with notice of the

11    hearing on the adequacy of the Disclosure Statement and the Confirmation Hearing, each Direct

12    Lender was served with the Solicitation Package, and each Direct Lender was given an

13    opportunity to vote on and to object to the Plan and attend the confirmation hearing.  The

14    Appellants have not, and cannot, attack the sufficiency of the notice provided or their opportunity

15    to be heard.   Thus, the Appellants had a full and fair opportunity to appear, to submit evidence, to

16    brief the issues, and to argue the merits of the Plan, including the compromises set forth therein.

17    The Appellants indeed did file their Confirmation Objection and appeared at the confirmation

18    hearing, but they chose, for whatever reason, not conduct discovery and not to present any

19    evidence in support of their Objection.  This is not a lack of due process, but rather a failure to

---

21    159 *See* Stay Motion at 17.

22    160 *Mullane v. Central Hanover Bank  Trust Co.,* 339 U.S. 306, 314 (1950).

23    **161**    *See In re Tevis*, 347 B.R. 679, 696 (B.A.P. 9th Cir. 2006); *In re Swanson*, 312 B.R. 153, 159 (Bankr. N.D. Ill.

24    2004)(holding that confirmation can be an appropriate vehicle for such matters as claim valuation and determining

25    what a secured creditor will receive); *In re Regional Bldg. Systems*, 251 B.R. 274, 291-92 (Bankr. D. Md.

26    2000)(rejecting argument that due process was violated where lien was extinguished through chapter 11 plan, rather

27    than through adversary proceedings, so long as plan was not deceptive).

28    162 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    protect one's rights. And it precludes any chance of success on the merits which, in turn, prevents

2    the entry of the stay that the Appellants seek in their Stay Motion.

3              B.       The Court properly found that USACM can recoup Prepaid Interest

4         Recoupment is an equitable doctrine that has long applied in the bankruptcy context:

5              [e]quitable recoupment is a common law doctrine that is not
              expressly recognized in the Bankruptcy Code, but is preserved
6              through judicial decisions. . . .

7              Recoupment is the setting up of a demand arising from the same
              transaction as the plaintiff's claim or cause of action, strictly for the
8              purpose of abatement or reduction of such claim. . . .

9              In recoupment, the respective claims may arise either before or after
              the commencement of the bankruptcy case, but they must arise out
10             of the same transaction.163

11    If the doctrine applies, its application is purely with the discretion of the trial court.164

12         A classic recoupment right occurs when a buyer overpays for goods and it is authorized to

13    reduce the purchase price by the overpayment.165  Recoupment "involves 'netting out debt,' and

14    is allowed 'because it would be inequitable not to allow the defendant to recoup those payments

15    against the debtor's subsequent claim."166  Although "recoupment is usually asserted by a

16    creditor against a debtor, there is no reason the principles should differ when the positions of the

17    parties are reversed."167  The Court did not err in allowing recoupment in this case as a matter of

18    law or equity.

19

20    163 *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 753-54 (B.A.P. 9th Cir. 2001) (citations

21    and quotations omitted); s*ee Sims v. United States Dept. of Health and Human Serv. (In re TLC Hospitals, Inc.)*, 224

22    F.3d 1008, 1011 (9th Cir. 2000); *Newbery Corp v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996); 5

23    COLLIER ON BANKRUPTCY § 553.10 (15th ed. rev. 2006).

24    164 *Id.*

25    165 *See Herod v. Southwest Gas Co. (In re Gasmark Ltd.)*, 193 F.3d 371, 374-75 (5th Cir. 1999).

26    166 *Madigan*, 270 B.R. at 754 (quoting *Newbery*, 95 F.3d at 1401, and *Oregon v. Harmon (In re Harmon)*, 188 B.R.

27    421, 425 (B.A.P. 9th Cir. 1995) (citation omitted)); *see TLC Hospitals*, 224 F.3d at 1011.

28    167   *Focus Media, Inc. v. National Broadcasting Co. (In re Focus Media Inc.)*, 378 F.3d 916, 926 n.8 (9th Cir.
     2004).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1       USACM had a right to invoke recoupment as a matter of law.  Not only do the LSAs

2 recognize a right of recoupment,168 as the Court also recognized in its ruling, but the doctrine

3 applies under the above-quoted applicable law because the funds in which the Appellants claim an

4 interest (money that USACM collected postpetition from borrowers on loans in which they have

5 invested)169 arise from the same transaction as the debt that USACM seeks to collect from them

6 (the Prepaid Interest).   Direct Lenders, much less the Appellants, have never contested (a) the

7 recognized right of recoupment under the LSAs, (b) that USACM has a claim against them

8 because, as this Court determined, they have no legal or equitable right to the Prepaid Interest (in

9 fact, Mr. Smith admitted that his purported clients have no right to the Prepaid Interest), 170 or

10 (c) that claims sought to be recouped are part of a single transaction.  This being the case, the

11 Appellants simply have no standing to contest recoupment and they certainly cannot prevail in

12 their appeal.

13       The only argument that the Appellants have advanced against the ability of USACM to

14 apply recoupment is that the doctrine may not be used offensively to recover property – only

15

16

17 168 *See* LSA ¶ 4 (any fees advanced by the Debtor in protecting the Direct Lenders' rights under the loans "shall be

18 paid back from . . . monies collected with respect to such Loan, before any payments are made to Lender").

19 169 In so stating, the Debtors are in no way admitting that the Appellants are all Direct Lenders who have these types

20 of claims.  In fact, the Debtors know that some of the Appellants are not even Direct Lenders.  Smith Declaration at ¶

21 17.  As the Debtors continually point out, they simply do not know what kinds of claims the Appellants have, which in

22 and of itself establishes that these Appellants cannot challenge recoupment because they have not established what

23 they are entitled to if they were to succeed on appeal.

24 170 *See* N.R.S. 645B.250; RESTATEMENT (SECOND) OF TRUSTS § 254 (2006) ("If the trustee has made a

25 payment out of trust property to one of several beneficiaries to which the beneficiary was not entitled, such

26 beneficiary is personally liable for the amount of such overpayment, and his beneficial interest is subject to a charge

27 for the repayment thereof, unless he has so changed his position that it is inequitable to compel him to make

28 repayment.").

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    defensively to offset a claim.171  Here, however, USACM is not using recoupment offensively

2    because it has never attempted to recover assets in the Appellants' possession (even though this is

3    what the Appellants have invited them to do).  Instead, USACM is recouping funds which it

4    possesses—the funds that it collected from borrowers after the petition date (and as to which the

5    Direct Lenders have already received payments).

6        As noted above, application of the equitable recoupment doctrine, once determined to be

7    applicable (which there can be no argument that it is), is within the discretion of the Court.  Given

8    the wholly uncontroverted evidence that was presented to this Court related to the Debtors' right

9    and claim to recoupment and the propriety of the compromises effected in the Plan, the fact that

10    the Appellants failed to address the application of the doctrine as a matter of law, other than to

11    argue that it cannot be used offensively and the equities of this case, there can be no argument on

12    appeal that this Court abused its discretion in authorizing recoupment of the illegally begotten

13    Prepaid Interest against monies that USACM collected postpetition.  This would permit exactly

14    what recoupment is meant to remedy—unjust enrichment of the Appellants.  172  By allowing

15    the Appellants to reap the benefit of their alleged respective investments postpetition while

16    requiring, as argued by the Appellants, the Debtors or their successors to affirmatively sue each

17    one of them to recover the funds they received illegally for distribution to creditors and other

18    Direct Lenders would unfairly and unjustly enrich the Appellants at the expense of all parties in

19    interest in these Chapter 11 Cases.  Such a result is patently inequitable, is contrary to the long-

20    standing bankruptcy policy favoring pro rata distribution to similarly situated claimants,  173 and

21

22    171 Stay Motion at 15.

23    172 See e.g., Newberry Corp., 95 F.3d at 1401; see also Ashland Petroleum Co. v. Appel (In re B&L Oil Co.), 782 F.2d

24    155, 157-58 (10th Cir. 1986); Tavenner v. United States (In re Vance), 298 B.R. 262, 269 (Bankr. E.D. Va. 2003).

25    173 See Goldberg v. New Jersey Lawyers' Fund For Client Protection, 932 F.2d 273, 280 (3rd Cir. 1991) (collecting

26    cases); In re Bullion Reserve of North America, 836 F.2d 1214, 1219 (9th Cir. 1988) ("Equity requires that all these

27    creditors share equally in whatever assets are available"); see also Gaffney. v. Rubino (In re Builders Capital & Serv.,

28    Inc.), 317 B.R. 603, 612 (Bankr. W.D.N.Y. 2004) ("Courts have favored pro rata distribution of assets where, as here,

1    was properly remedied in the Plan as confirmed by this Court.  In short, it cannot be credibly

2    argued that this Court abused its discretion in allowing recoupment in these cases.174

3              **C.**    The Plan Provided the Appropriate Procedure for Dealing with
                        Claims to Prepaid Interest

4

5         The Appellants maintain that USACM cannot recover Prepaid Interest from them

6    without commencing an adversary proceeding.  This argument is both moot and without

7    merit and, therefore, the Appellants cannot show that they will succeed on appeal.

8         The alleged need for an adversary proceeding is moot because, for the reasons

9    discussed above, the Appellants did not and cannot show that they could have effectively

10   resisted recoupment brought through an adversary proceeding.   Accordingly, by requiring

11   adversary proceedings to be commenced against the Appellants, the appellate court could

12   not afford the Appellants any relief on appeal.

13        Furthermore, the alleged need for an adversary proceeding is not supported by the

14   law.  USACM was entitled to effect recoupment through the confirmation of the Plan,175

15   and there is nothing requiring USACM to commence an adversary proceeding to recoup its

16   _____

17   the funds of the defrauded victims were commingled and where victims similarly situated with respect to their

18   relationship to the defrauders.")  (citations omitted).

19   174 In addition to not abusing its discretion in allowing recoupment, the doctrine of equitable subrogation provides an

20   alternative basis for the relief afforded in the Confirmation Order as the Debtors are legally or equitably subrogated to

21   any Direct Lenders' claims against borrowers and the Debtors have a right to reimbursement from payments that may

22   have been paid or will be paid subsequently by the loan borrowers in reimbursement of those advances.  *See, e.g, Mort*

23   *v. United States,* 86 F.3d 890, 894 (9th Cir. 1996) (citations and internal quotation omitted) (under Nevada law, the

24   doctrine of equitable subrogation is applicable "whenever one person, not acting as a mere volunteer or intruder, pays

25   a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by

26   the latter"); *see also AT&T Tech., Inc. v. Reid*, 855 P.2d 533, 595 (Nev. 1993) (subrogation is "an equitable doctrine

27   created to accomplish what is just and fair as between parties.")

28   175 11 U.S.C. § 1125(b)(3) and (b)(6).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

claim for Prepaid Interest from monies that it may owe the Appellants from postpetition

collections.  Specifically, Bankruptcy Rule 7001, which defines matters that must be

brought by complaint, expressly states that a proceeding to "obtain equitable relief," such

as recoupment, need not be brought by adversary proceeding "when a . . . chapter 11 . . .

plan provides for the relief."176  Thus, "a Chapter 11 . . . plan may provide for equitable

relief . . . even if an adversary proceeding would be required to secure such relief outside

of the plan confirmation process."177

The Appellants continually cite to the two same cases for the basic proposition that debtors

generally must commence adversary proceedings to exercise their avoiding power rights: *In re*

*Commercial Western Finance Corporation.,*178 and *Bear v. Coben (In re Golden Plan of*

*California).*179  These cases, however, are not relevant here, as recoupment is not an avoiding

power.  Unlike the exercise of recoupment rights contemplated by the Debtors' Plan, the plan in

*Commercial Western* sought to avoid security interests granted by the debtor on a pre-petition

basis.  Similarly, in *Golden Plan,* the trustee sought to invalidate investors' notes and deeds of

trust without commencing an adversary proceeding.  Such actions are squarely within the scope of

Bankruptcy Rule 7001(2) – "proceeding[s] to determine the validity, priority, or extent of a lien or

other interest in property" – and are fundamentally distinguishable from USACM's exercise of

equitable recoupment in its Plan.   Here, there is no attempt to modify notes or deeds of trust, or

otherwise impact the Appellants' alleged interests.  To the extent that they exist, Appellants'

security interests and rights to collateral remain untouched.  In fact, at the conclusion of these

Chapter 11 Cases, Direct Lenders will hold their same security interests in the same notes, from

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

176 Fed. R. Bankr. P. 7001(7).

177*In re Fuller*, 255 B.R. 300, 305 (Bankr. W.D. Mich. 2000) (citing Fed R. Bankr. P. 7001(7) and (8)).

178 761 F.2d. 1329 (9th Cir. 1985).

179 829 F.2d 705 (9th Cir. 1986).

1    the same borrowers, with the same amount of principal and interest due, reduced only by

2    payments of interest or principal paid by borrowers. 180

3          Finally, the Appellants contend that "without an adversary proceeding Direct Lenders who

4    were victims of [Unremitted Principal (referred to by the Appellants as "Stolen Principal")] are

5    foreclosed from exercising their setoff rights against the Debtors' attempts to take the Prepaid

6    Interest."181  This argument is different from recoupment in that the Plan effects recoupment

7    without the commencement of an adversary proceeding, but it settles alleged setoff claims.  Thus,

8    the Appellants are basically stating that the settlement of potential setoff claims provided in the

9    Plan was inappropriate because entities with Unremitted Principal Claims were not given an

10   opportunity to assert setoff.  For the reasons stated below, however, a settlement of disputed

11   claims may be effected under a plan and be binding, even on those who vote to reject the plan.

12   Indeed, given the difficulty of the legal issues related to these alleged setoff rights, the very

13   differing positions taken by the various Committees related to them, and the cost of litigation, the

14   Debtors determined, as supported by the evidence, that it was in the best interest of the estates to

15   settle the claims, and no evidence was produced by the Appellants or otherwise to contradict that

16   conclusion.

17         Although the Appellants objected to the Plan based on a purported right to an adversary

18   proceeding to assert a right to setoff, and although clear notice was given that the right to setoff

19   would be compromised in a confirmed Plan, the Appellants never commenced such an adversary

20   proceeding prior to the confirmation hearing asserting such rights.  Rather, they arrived at the

21   confirmation hearing with absolutely no evidence as to what claims they may hold, much less any

22   right to setoff any such claim against the Debtors' undisputed claim for Prepaid Interest, arguing

23   that a Plan that cost hundreds of thousands of dollars to solicit and which was affirmatively voted

24   for by all Classes entitled to vote and supported by all of Committees, was somehow inappropriate

25

26   180 *B& L Oil.*, 782 F.2d at 158 (Tenth Circuit sustained the exercise of recoupment of overpayments payments made

27   prior to petition date by withholding money owed for purchases after the petition date).

28   181 Stay Motion at 12.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    because it settled their alleged setoff claims.182 As counsel for LPG recognized at the hearing, he

2    could not even say whether all of his purported clients held claims for Unremitted Principal that

3    would apply under the setoff scenario and how the exercise of those rights might hurt other of his

4    purported clients.  This argument, in which this unknown group of claimants seek preferential

5    treatment over all other creditors in the Chapter 11 Cases, is without merit and the Appellants'

6    failure to protect any setoff rights that they may have bars them claiming that they are aggrieved

7    by the Confirmation Order or from being able to successfully make this argument on appeal.

8         Accordingly, the Appellants' contention that the Plan fails because an adversary

9    proceeding is required is moot, it is without merit as a matter of law, and the Appellants lack

10   standing to appeal on this basis.  The Appellants, therefore, cannot show that they will succeed on

11   appeal on this issue and their Stay Motion should be denied.

12        **2.    The Appellants have not proven that they will suffer irreparable harm by
         denial of the Stay Motion**

13

14        It is well-established that in order for a movant to prevail on a request for a stay pending

15   appeal, it must demonstrate both that it will be harmed if the stay is not issued and that such harm

16   will be irreparable (*i.e.*, not capable of compensation).183  As stated by the Appellants, "to show

17   irreparable harm, the appellant must prove that the injury is 'actual and not theoretical . . . .'"184

18   This standard has not been met in this case.

19   _____

20   182   The Appellants appear to argue that a settlement of setoff claims cannot be effected in a plan, because setoff
     survives confirmation of a plan.  Stay Motion at 12 (citing *Carolco Television Inc. v. National Broadcasting Co. (In re
21   DeLaurentiis Entertainment Group Inc.),* 963 F.2d 1269 (9th Cir. 1992)). *DeLaurentiis, however,* merely "addressed
     the issue of whether a right of setoff 'not listed in the plan' was extinguished as a result of the plan's confirmation
22   based [generally by operation of the discharge] under Sections 1141(c) and (d). . . .  That analysis does not control . . .
     [where] claims, including setoff, were specifically addressed and disallowed in the [] Plan and the Confirmation
23   Order."  *In re Twins, Inc.*, 318 B.R. 90, 95-96 (Bankr. D.S.C. 2004) (emphasis added).  *See Daewoo Int'l (Am.) Corp.
     Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629 (NRB), 2003 U.S. Dist. LEXIS 9802, at *13 (S.D.N.Y. June 11,
24   2003) (distinguishing *DeLaurentiis*: "[*DeLaurentiis* did] not involve a confirmation order which specifically prohibits
     the assertion of a setoff or recoupment claim against the debtor or the creditor trust.  Indeed, where there is a specific
25   provision in the confirmation order prohibiting setoff claims, courts have indicated that the right to setoff may not
     survive the confirmation plan.")

26

27   183 *See, e.g., In re Kmart Corp.*, No. 02 C 9257, 2002 U.S. Dist. LEXIS 24851, at *3 (N.D. Ill. Dec. 30, 2002)

28   184 Stay Motion at 16 (quoting *Wisconsin Gas Co. v. F.E.RC.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting

     *Connecticut v. Mass.*, 282 U.S. 660, 674 (1931))).

1     Although a showing of irreparable harm requires proof supported by admissible evidence,

2     as is the pattern with the Appellants, the Stay Motion is devoid of any evidence in support of the

3     relief requested.  As discussed above, none of the Appellants established at the confirmation

4     hearing or has established in conjunction with this Stay Motion that they have any individual stake

5     in any property involved in this case, and certainly not the "Segregated Funds" that they want to

6     stay pending appeal.  Without evidence of such a stake, they cannot show harm at all, much less

7     irreparable harm.

8     Even assuming that somehow the Appellants had established their respective claims and

9     interests in this case, which is disputed, the Appellants' contention that that they will be harmed

10    because the "Segregated Funds" will likely be disbursed absent a stay is without consequence.

11    The fact that the disbursement of the "Segregated Funds" pending appeal may moot the

12    Appellants' appeal, is legally insufficient to establish that the Appellants will suffer irreparable

13    injury.185

14    Furthermore, contrary to the Appellants' incorrect assertions, it is established that

15    "financial injury" is not "sufficient to constitute irreparable harm."186  The two cases cited by the

16

17    ───────────────

18    185 See, e.g., Fullmer, 323 B.R. at 304 (noting majority of cases hold that "the risk that an appeal may become moot

19    does not itself constitute irreparable injury"); In re 203 N. LaSalle St. P'ship, 190 B.R. 595, 598 (N.D. Ill. 1995) ("It is

20    well settled that an appeal being rendered moot does not itself constitute irreparable harm"); Dakota Rail, 111 B.R. at

21    821; ("[T]he mooting of his appeal is not sufficient, by itself, to establish that [the movant] will be injured by denying

22    the stay."); In re Kent, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991) (same); In re The Charter Co., 72 B.R. 70, 72

23    (Bankr. M.D. Fla. 1987) (same); In re Great Barrington Fair & Amusement, Inc., 53 B.R. 237, 240 (Bankr. D. Mass.

24    1985) (same).

25    186 Stay Motion at 16.  See, e.g., Kmart Corp., 2002 U.S. Dist. LEXIS 24851, at *5 ("[E]conomic loss will generally

26    not sustain a stay."); FFG-NJ Vehicle Funding Corp. v. Holtmeyer (In re Holtmeyer), 229 B.R. 579, 583 (E.D.N.Y.

27    1999) (stay denied where movant failed to demonstrate that his alleged injury, if any, would not be capable of being

28    fully remedied by money damages); Sandra Cotton, Inc. v. Bank of N.Y., 64 B.R. 262, 263 (W.D.N.Y. 1986) (debtor

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Appellants in support of the notion that financial injury <u>is</u> sufficient to constitute irreparable harm are misstated.  In both cases,187 the movants' requests for a stay pending appeal were denied because the courts found that the movants had merely suffered economic injuries and this was not sufficient to establish irreparable injury for a stay pending appeal.  In neither case was the issue of the availability of funds after resolution of the appeal addressed.  More important, however, is that this argument only serves to highlight (again) that the Appellants have submitted no evidence establishing that they will suffer any financial injury at all (even assuming that would be sufficient to prevail), or that if the "Segregated Funds" are disbursed, the "Debtors will be left with no funds to remedy Direct Lenders if Appellants' appeal is successful."188  Without proof of their bald assertions of harm, the Appellants have not met their burden of proof to obtain a stay pending appeal.

Finally, as addressed above, the Appellants have not established any deprivation of a constitutional right that would create an irreparable injury.  Their allegations of an unconstitutional taking of property, therefore, is nothing more than empty rhetoric, both as a matter of law and as a result of the fact that they have not established any property rights that are being taken.

For all of these reasons, the Appellants have failed to meet their burden of showing that they will suffer irreparable injury absent the stay that they request.  Thus, they are not entitled to a stay pending appeal.

**3.    The Debtors and all parties in interest will suffer substantial harm by the imposition of a stay pending appeal**

A stay pending appeal should be denied where the movant cannot establish that no substantial harm will come to the other interested parties.  The Appellants have not even attempted

---

not granted stay where it failed to prove that it would be irreparably harmed because it could not be adequately compensated by legal damages for the loss of the property in question).

187 *Sampson v. Murray*, 415 U.S. 61, 90 (1974), and *Foreign Autobody Specialists, Inc. v. Superior Court of California*, 739 F.2d 466, 471 (9th Cir. 1984), *cited in* Stay Motion at 16.

188 Stay Motion at 17.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  to show that this is true, but have rather only baldly and incorrectly stated that because the sale to

2  Compass has now closed, the Debtors will suffer no injury by the imposition of a stay of the

3  distribution of the "Segregated Funds" pending their appeal.189   By making such a statement,

4  the Appellants clearly do not understand the Plan and what is at stake here.

5      First, the "Effective Date" of the Plan cannot occur until "the first Business Day . . . on

6  which no stay of the Confirmation Order is and remains in effect[.]"190   Thus, since all

7  distributions under the Plan are tied to its Effective Date, payment to all of the Debtors' creditors,

8  the disbursement to Direct Lenders of the balance of the 2% holdback and, in the case of DTDF

9  and FTDF, equity interest holders will be delayed pending any stay pending appeal.  While this

10  condition can be waived by the Debtors, the problem is that staying distribution of the Holdback

11  Funds will delay payments Direct Lenders as part of the compromise approved in Class A-5 and to

12  creditors in USACM's case which funds are necessary to pay holders of Allowed Claims against

13  USACM who are required to be paid under the Bankruptcy Code and under the Plan on the

14  Effective Date and to fund the USACM Trust, which operates ultimately as the successor entity to

15  USACM under the Plan.  The Appellants' "limited" stay, therefore, to the extent that a limited stay

16  can even be imposed,191 will in no way be "limited."  The hardship occasioned by further delay

17  in payment of the Debtors' creditors is an injury sufficient to deny a stay pending appeal.192

18  _____

19  189 Stay Motion at 17-18.  In making this argument, the Appellants do not address any of the Debtors' arguments

20  addressed below, which were made in response to the First Stay Motion.  They thus have waived any contrary

21  arguments.

22  190 Plan, Art. I. Section 64.

23  191 *See* discussion at III.D *infra*.

24  192 *See In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 523 (W.D. Tex. 2000) (holding that delay in payment

25  to creditors is an injury that may be considered for this prong);  *Sung Hi Lim*, 7 B.R. at 321 (same); *Bob Hamilton*

26  *Real Estate*, 164 B.R. at 705 (denying stay where it would create substantial hardship to creditors by preventing

27  trustee from making distributions); *St. Mary Hosp.*, 157 B.R. at 238 (denying stay of distribution order where creditors

28  could be harmed by further delay of payment).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Related to the harm caused by the delay in the Effective Date and distributions to be made

2    under the Plan is the fact that all of the Debtors' estates, except FTDF, are currently

3    administratively insolvent.193  Indeed, a significant factor that contributed to all of the Debtors

4    agreeing to compromise the various disputed claims, including those against Direct Lenders, was

5    that they had insufficient cash flow to continue to operate in the Chapter 11 Cases.  Despite Mr.

6    Smith's belief that there is a lot of money, the uncontroverted evidence shows otherwise.  Now

7    that the sale to Compass has closed, USACM no longer has any income and cash on hand will not

8    be sufficient to fund continued administration of the estate, including the necessary payment of

9    professionals for the Debtors and the Committees (which, other than the FTDF Committee, are not

10   dissolved until the Effective Date, and will continue to need to employ professionals until their

11   dissolution so as to meet their duties and attend to the myriad of problems that will result as a

12   result of the stay), the skeletal crew of employees, and rent.194  The USACM Trust will not be

13   funded and Post-Effective Date DTDF will not exist until the Effective Date and, therefore, among

14   other things, (a) the litigation against insiders and there affiliates, including prepetition

15   management which is to be funded with the use of at least a portion of the funds to be distributed

16   under the Plan, including the "Segregated Funds," will not be commenced and there will be

17   insufficient funds to even commence discovery, (b) the target defendants will have time to

18   dissipate assets that potentially could be recovered for the benefit of the estates, (c) statutes of

19   limitations could run (currently there is just over 1 year left for actions to be investigated and

20   commenced, which if a stay pending appeal were granted could easily run), and (d) anticipated

21   distributions under the Plan based on recoveries in any such actions will be further delayed.195

22   As the very result of delay and the accrual of additional administrative expense, distributions to all

23   creditors will be diminished.

24

25

26
_____

193 Smith Declaration .

27
194 Smith Declaration at ¶ 26.

28
195 Plan, Art. IV.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Finally, and significantly, the stay requested by the Appellants will undermine the

2    compromise affecting Class A-5 of the Plan and bring the viability of the Plan in to serious

3    doubt.196    For example, the intertwined compromises in the Plan are based on the presumption

4    that the USACM estate (including Direct Lenders with Allowed Claims) will have the benefit of

5    all of the Prepaid Interest, including the Holdback Funds, and that the balance of the 2% holdback

6    not being property of the USACM estate as Servicing Fees will be will be distributed to Direct

7    Lenders  If this is not true, the compromises may unravel, the Plan may be incapable of

8    effectuation and some or all of the Debtors may be forced to convert to chapter 7.  "[C]ourts have

9    found that the loss of the ability to reorganize is essentially irreparable injury"197 and, therefore,

10    the Appellants have not and cannot establish that the Debtors will suffer no harm by the

11    imposition of a stay pending appeal.  The Stay Motion should be denied.

12    **4.      A stay pending appeal will harm the public interest**

13

14

15

16

17    196 *See, e.g., Section 20 Land Group, Ltd. v. Collier County (In re Section 20 Land Group, Ltd.)*, 252 B.R. 819, 821

18    (Bankr. M.D. Fla. 2000) ("Any delay in the reorganization process and the completion of a sale of the Debtors or their

19    assets will doom these [c]hapter 11 cases.").  In such circumstances, courts have often refused to issue a stay pending

20    appeal.  *See, e.g., In re Babcock & Wilcox*, No. 00-1154, 2000 U.S. Dist. LEXIS 6448, at *17-18 (E.D. La. 2000)

21    (denying stay of post-petition financing order where debtor and its creditors would be harmed thereby); *In re Kar Dev.*

22    *Assocs., L.P.*, 180 B.R. 624, 627 (Bankr. D. Kan. 1994) (motion for stay of use of cash collateral pending appeal

23    denied, because stay would be harmful to debtor and its creditors).

24    197 *Fullmer*, 323 B.R. at 304; s*ee also, Arvay v. Hyman (In re Bob Hamilton Real Estate, Inc.)*, 164 B.R. 703, 705

25    (Bankr. M.D. Fla. 1994) (denying stay where it would create substantial hardship to creditors by preventing trustee

26    from making distributions); *In re St. Mary Hosp.*, 157 B.R. 235, 238 (Bankr. E.D. Pa. 1993) (denying stay of

27    distribution order where creditors could be harmed by further delay of payment); *Sung Hi Lim*, 7 B.R. at 322 (finding

28    that lender will sustain damages from being precluded from proceeding with its right to foreclose.)

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

As noted above, the Appellants must show that the stay that they request will not harm the public interest.  The Appellants have summarily dismissed this factor, stating that only private interests are involved in this case.198

Yet, as the Debtors argued in response to the Appellants' First Stay Motion, "[t]o the extent that the public interest has been considered in the bankruptcy context, courts have identified the achievement of reorganization as a public interest worthy of protection."199  There is simply no public interest or policy which favors a further delay in payment to creditors and Direct Lenders in this case where, absent the stay, the Plan will successfully provide such parties with more than they would receive in a chapter 7 liquidation.200  A stay of the Confirmation Order would also undermine the Bankruptcy Code policy of facilitating the disposition of assets for value and of furthering the policy of an equality of distribution to creditors.201  Finally, it is worth noting in conjunction with the public interest, that the Debtors' businesses are highly regulated by both the State of Nevada and the Securities and Exchange Commission.  Both entities have shown a keen interest in the Chapter 11 Cases and, while having standing to do so, have not objected to the Plan.

---

198 Stay Motion at 18.

199 *Fullmer*, 323 B.R. at 305; *see In re Gathering Restaurant, Inc.,* 79 B.R. 992, 999 (Bankr. N.D. Ind. 1986) ("In the context of a bankruptcy case . . . the public interest . . . means the promoting of a successful reorganization which should be one of the paramount concerns of a bankruptcy case").

200 *Cf. In re Leibinger-Roberts, Inc.*, 92 B.R. 570, 574 (Bankr. E.D.N.Y. 1988) ("[A] stay would be adverse to the public interest because it would serve only to delay the implementation of a possibly successful plan."); *In re East Redley Corp.*, 20 B.R. 612, 615 (Bankr. E.D. Pa. 1982) (court refused to stay order confirming plan of reorganization where "allow[ing] this matter to drag on and force the creditors to wait several years while the case runs its appellate course would be a travesty.").

201 *Cf. In re Richmond Metal Finishers, Inc.*, 36 B.R. 270, 273 (Bankr. E.D. Va. 1984), *rev'd on other grounds*, 38 B.R. 341 (E.D. Va. 1984), *rev'd*, 756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1987) ("If there is a public interest in this matter, it is seeing that the purposes and policies of the Bankruptcy Code are not frustrated. . .").

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Accordingly, the Appellants have not met their burden of establishing that the stay will not

2  harm the public interest, and their Stay Motion must therefore be denied.

3  **C.     IN THE EVENT THAT THE COURT IS INCLINED TO IMPOSE A STAY
          PENDING APPEAL, THE STAY SHOULD NOT APPLY TO COMPASS AND THE
4          APPELLANTS SHOULD BE REQUIRED TO POST A BOND**

5    In the event that the Court determines that a stay pending appeal should be granted, it is

6  respectfully submitted that the stay cannot apply to Compass and the Appellants must be required

7  to post a bond.  Each of these points is addressed below.

8    **1.     Any stay should not apply to Compass**

9    If the Court is inclined to grant the Stay Motion, the stay should not apply to Compass and

10  the rights that it has under the Asset Purchase Agreement and the Plan all of which are protected

11  by findings made by the Court at the confirmation hearing under Section 363(m), to among other

12  things, hold back sums that it collects on account of Prepaid Interest and tht of of loans as

13  individually owned by Direct Lenders and Compass because any attempt to attack the Plan

14  regarding agreements with Compass is now moot inasmuch as the sale has closed.202

15    **2.     The Appellants should be required to post a bond**

16    Bankruptcy Rule 8005 expressly recognizes this Court's authority to require the posting of

17  a bond, and it has been recognized that "[t]he requirement of an appeal bond is an 'appropriate

18  order' under Rule 8005; its purpose is to protect the prevailing party against any loss caused by the

19  unsuccessful attempt to reverse the bankruptcy court's decision on appeal."203  Consistent with

20  _____

21  202 The closing of the sale calls into question the viability of the appeal.  The Debtors intend to file a motion to

22  dismiss the appeal as being moot shortly.

23  203 *Equitable Life Assurance Soc'y v. James River Assocs. (In re James River Assocs.),* 148 B.R. 790, 797-98 (E.D.

24  Va. 1992) (internal citations omitted); *see In re United Merchants & Mfrs., Inc.,* 138 B.R. 426, 430 (D. Del. 1992)

25  (stating that "[t]he purpose of Rule 8005 is to protect the adverse party from potential losses resulting from the stay");

26  *In re Theater Holding Corp.,* 22 B.R. 884, 885 (Bankr. S.D.N.Y. 1982) (stating that the purpose of the filing of a bond

27  "is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse

28  the holding of the bankruptcy court").

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   this purpose, the amount of the bond should be sufficient to protect an appellee from damages

2   resulting from the stay.204

3          For the all of the reasons outlined above, a stay of the distribution of the Prepaid Interest

4   pursuant to the terms of the Plan threatens to unravel the entire Plan.  The Debtors' use of the

5   Prepaid Interest pursuant to the terms of the compromise with the Direct Lenders and as is their

6   right to reorganize as set forth in the Plan is intertwined with all other compromises set forth in the

7   Plan, including those between the Funds, and USACM and FTDF.  Modification or elimination of

8   even one of these interdependent compromises would unwind and threaten to eviscerate the

9   foundation of the Plan.  Furthermore, contrary to the Appellants' position, staying the "Segregated

10  Funds" will create significant loss as a result of the delay that will be required in making

11  distributions under the Plan and the continued administrative costs that will necessarily be

12  incurred as a result of the Debtors' inability to bring the Plan effective.  Finally, a stay calls into

13  question the interrelatedness of the compromises therein (including the compromise not to seek to

14  recharacterize the Direct Lenders' "claims" as equity and surcharge them for administrative costs)

15  and the consummated sale to Compass.

16         The Appellants incorrectly contend that "simply prohibiting the Debtors from spending the

17  Segregated Funds is an appropriate order that protects all parties" as the "sum of the Segregated

18  Funds will remain available to the successful party after the appeal is resolved."205  They further

19  argue that it would be unfair to "Direct Lenders" if "Direct Lenders" had to post a bond to stay the

20  distribution of the "same money that was wrongfully taken and is already being held in a

21  segregated account."206  There are several problems with these arguments.

22

23  204 *See, e.g., Lyon v. Anderson Pipeline Co. (In re Anderson Res. Co.),* 78 B.R. 603, 604 (D. Colo. 1987) ("The issue

24  on the bond amount is . . . the amount of the anticipated damage to the debtors"); *In re Pub. Serv. Co. of N. H.,* 116

25  B.R. at 350 (in denying stay pending appeal of confirmation order, court noted that any bond "would have to cover

26  massive amounts of accruing interest and other delay costs accruing monthly").

27  205 Stay Motion at 18.

28  206 *Id.*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1       First, as stated above, a stay of the Segregated Funds will likely delay distributions to all of

2  the Debtors' creditors and other Direct Lenders who have not appealed the Confirmation Order all

3  for the purpose of allowing a relatively small group of entities who have not even established their

4  purported respective claims and/or interests to pursue an appeal and which is based on serious lack

5  of understanding of the Plan.  Thus, simply holding the "Segregated Funds" (a portion of which no

6  Direct Lender can even make a claim to as they are USACM Servicing Fees) in no way serves as a

7  substitute for a bond that is meant to protect the Debtors and all of the other parties in interest who

8  voted for the confirmation of the Plan and have not appealed the Confirmation Order.

9       Second, by these statements and others in the Stay Motion, the Appellants seem to contend

10 that they have filed an appeal for the benefit of *all* Direct Lenders who somehow tacitly agree with

11 holding the funds while the Appellants do battle on their behalf.  Obviously, this is inaccurate as a

12 matter of appellate law.  Also, it is incorrect inasmuch as the Appellants, to the extent that they

13 even are Direct Lenders, represent a very small portion of the approximately 3,600 Direct Lenders,

14 the majority of which voted to accept the Plan or did not object to their treatment and have not

15 appealed the Confirmation Order.  Thus, while the Appellants maintain that it would be unfair to

16 Direct Lenders to require them to post a bond, to the contrary, for all of the reasons stated in

17 herein, it would be unfair to Direct Lenders (and all of the Debtors' creditors) who have not

18 appealed the Confirmation Order not to require the *Appellants* to post a bond.

19      Finally, as discussed above, the Appellants' arguments related to a bond all assume a fact

20 that they have not shown: that they have established that they have an interest in the "Segregated

21 Funds."  They have in no way done so, as they have never presented evidence establishing the

22 existence and nature of the their alleged claims and interests, a certain portion of the "Segregated

23 Funds" are admitted to be Servicing Fees that belong to USACM, and of the Appellants that the

24 Debtor believes it may be able to identify, there are entities who are not Direct Lenders.   A stay of

25 the distribution of the "Segregated Funds" simply should not be imposed based on the Appellants'

26 mere suppositions and incorrect assumptions and statements.

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Any stay, therefore, must take into account that the Appellants may need to reimburse the Debtors for these sums.207  If the Court decides to grant the stay pending appeal, a bond set at or near the full amount of the potential harm to the non-moving parties should accompany the stay.208  Because the damages resulting from the potential unraveling of the Plan are incalculable at this time, it may not be possible for the Court to set a bond amount that will adequately protect the non-moving parties from the harm that may occur as a result of the stay.  Accordingly, the Court should not grant the stay pending appeal in the instant case.  However, if the Court is inclined to allow a stay pending appeal, the Debtors believe that, as supported by the Smith Declaration, the Appellants should be required to submit a bond in the amount stated therein.

### D.    A "LIMITED STAY" CANNOT BE GRANTED

As a final point, the Debtors point out that the "limited stay" suggested by the Appellants is not feasible and has no basis in the law.

The compromises in the Plan are interrelated and the undoing of one for the Appellants may call into question the viability of all.  Furthermore, as has been recognized, there is no authority for a "limited" stay of an order confirming a plan of reorganization:

> No authority has been cited for this novel relief and the court is satisfied that such a 'partial stay' is not legally appropriate or practical in this case.  In fact, it is difficult to conceive of a situation in which such relief would be appropriate because to grant such relief, in effect is to modify the plan of reorganization that was submitted to the creditors and other parties in interest, who vote to approve the plan submitted to them, and not a plan subsequently tailored to suit a disgruntled appellant.209

The limited stay requested by these Appellants essentially attempts to improperly effect a modification of the Plan, which may only be done prior to substantial consummation of the Plan in

---

207 *See ACC Bondholder Group v. Adelphia Commc'n Corp.,* No. 02-41729, M47 (S.D.N.Y. Jan. 24, 2007) ("If a stay pending appeal is likely to cause harm by diminishing the value of an estate or endanger the non-moving parties' interest in the ultimate recovery…then the court should set a bond at or near the full amount of the potential harm to the non-moving parties").

208 *Id.*

209 *In re Convenience USA, Inc.,* 290 B.R. 558 (Bankr. M.D.N.C. 2003).

1   the context of Section 1127 of the Bankruptcy Code, to afford them special rights in property in

2   which they have shown no interest and which all parties in interest have relied on in accessing the

3   viability of the Plan and, in the case of creditors and interest holders, their treatment thereunder

4   when they cast their votes to accept the Plan.  The Stay Motion must be denied.

5                                        **IV.**

6                                    **CONCLUSION**

7         For the reasons stated herein, the Debtors respectfully request that the Court deny the Stay

8   Motion, or if it is inclined to grant it, exempt Compass and require that the Appellants post a bond

9   in the amount of $32 million.

10        DATED this 28th day of February, 2007.

11

12               _/s/   Jeanette E. McPherson_
                Lenard E. Schwartzer
13              Jeanette E. McPherson
                SCHWARTZER & MCPHERSON
14              2850 South Jones Blvd., Suite 1
                Las Vegas, Nevada 89146
15
                AND
16
                Annette W. Jarvis (Utah Bar No. 1649)
17              RAY QUINNEY & NEBEKER P.C.
                36 South State Street, 14th Floor
18              P.O. Box 45385
                Salt Lake City, Utah 84145-0385
19              Email: ajarvis@rqn.com

20
                *Attorneys for Appellees-Debtors and Debtors-in-*
21              *Possession*

22

23

24

25

26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122