# EXHIBIT B

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### LAS VEGAS, NEVADA

| | | |
|---|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, | ) | Case No. BK-S-06-10725-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | ) | Case No. BK-S-06-10726-LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | ) | Case No. BK-S-06-10727-LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | ) | Case No. BK-S-06-10728-LBR |
| USA SECURITIES, LLC, | ) | Case No. BK-S-06-10729-LBR |
| | ) | CHAPTER 11 |
| Debtors | ) | JOINTLY ADMINISTERED UNDER |
| | ) | Case No. BK-S-06-10725-LBR |

DEBT ACQUISITION COMPANY OF AMERICAN V, LLC

                    Appellants,

        vs.

USA COMMERCIAL MORTGAGE COMPANY, USA
CAPITAL REALTY ADVISORS, LLC, USA CAPITAL
DIVERSIFIED TRUST DEED FUND, LLC, USA CAPITAL
FIRST TRUST DEED FUND, LLC, USA SECURITIES, LLC,
OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS OF USA CAPITAL DIVERSIFIED TRUST DEED
FUND, LLC, OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF USA CAPITAL FIRST TRUST
DEED FUND, LLC, OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF USA COMMERCIAL
MORTGAGE COMPANY, OFFICIAL COMMITTEE OF
HOLDERS OF EXECUTORY CONTRACT RIGHTS OF USA
COMMERCIAL MORTGAGE COMPANY, OFFICE OF THE
U.S. TRUSTEE, DEBT ACQUISITION CORP., THE
ALEXANDER GROUP, THE JONES VARGAS DIRECT
LENDERS, COMPASS PARTNERS, SIERRA LIQUIDITY
FUND, DR. GARY KANTOR, MRS. KANTOR AND KANTOR
NEPHROLOGY 401 K PLAN, PENSION BENEFIT
GUARANTEE CORPORATION, THE LENDERS
PROTECTION GROUP, GREGORY J. AND SHAUNA M.
WALCH FAMILY TRUST, USA COMMERCIAL REAL
ESTATE GROUP, COPPER SAGE COMMERCIAL CENTER,
BINFORD MEDICAL DEVELOPERS, STANDARD
PROPERTY DEVELOPMENT, LIBERTY BANK,
USA INVESTMENT PARTNERS, LLC, JOSEPH MILANOWKSI,
THOMS HANTGES,

                    Appellees.

DOCKET No. 2:07-CV-00160-RCJ-GWF
              2:07-CV-00072-RCJ-GWF

LAS VEGAS, NEVADA
FEBRUARY 14, 2007
10:03 A.M.

## MOTION TO DISMISS APPEAL AND MEMORANDUM
## OF LAW IN SUPPORT THEREOF

THE HONORABLE PHILIP M. PRO and
THE HONORABLE ROBERT C. JONES PRESIDING
UNITED STATES DISTRICT COURT JUDGES

COURT RECORDER:

LILIA ABARCA de CARTER
U.S. District Court

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

1

APPEARANCES:

FOR THE APPELLANTS:        DEAN T. KIRBY, JR., Esq.
                          Kirby & McGinn, A.P.C.
                          600 "B" Street
                          San Diego, California 92101-8509


FOR THE APPELLEES:         For the Appellees, Debtors:
                          JEANETTE McPHERSON, Esq.
                          Schwartzer & McPherson
                          2850 South Jones Blvd, Suite 1
                          Las Vegas, Nevada  89146
                          Usdcfilings@s-mlaw.com
                                  and
                          ANNETTE W. JARVIS, Esq.
                          PEGGY HUNT, Esq.
                          Ray Quinney & Nebeker PC
                          36 S. State Street, Suite 1400
                          Salt Lake City, Utah 84111
                          ajarvis@rqn.com

                          For the Committee of Holders of
                           Executory Contract Rights of USA
                           Commercial Mortgage Company:
                          GREGORY E. GARMAN, Esq.
                          Gordon & Silver, LTD.
                          3960 Howard Hughes Parkway, 9th Floor
                          Las Vegas, Nevada 89109
                          Geg@gordonsilver.com

                          For Equity Security Holders of USA
                           Capital Diversified Trust Deed Fund:
                          MARC A. LEVINSON, Esq.
                          Orrick, Herrington & Sutcliffe, LLP
                          400 Capitol Mall, Suite 3000
                          Sacramento, California 95814-4497
                          Malevinson@orrick.com
                                  and
                          ANNE M. LORADITCH, Esq.
                          Beckley Singleton, Chtd.
                          530 Las Vegas Blvd.
                          Las Vegas, Nevada 89101
                          Aloraditch@beckleylaw.com


                          (Continued)

---

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

2

APPEARANCES:

FOR THE APPELLEES:          For Jones Vargas Direct Lenders:
                            JANET L. CHUBB, Esq.
                            Jones Vargas
                            100 W. Liberty Street, 12th Floor
                            Reno, Nevada 89501
                            Tbw@jonesvargas.com

                            For Official Committee of Equity
                             Security Holders of USA Capital
                             First Trust Deed Fund:
                            CANDACE C. CARLYON, Esq.
                            Shea & Carlyon, Ltd.
                            228 S. Fourth Street, 1st Floor
                            Las Vegas, Nevada 89101
                            ccarlyon@sheacarlyon.com

                            For Unsecured Creditors Committee of
                             USA Commercial Mortgage Company:
                            DARREN T. BRENNER, Esq.
                            Lewis & Roca LLP
                            3993 Howard Hughes Pkwy., Suite 600
                            Las Vegas, Nevada 89109
                            dbrenner@lrlaw.com

                            For Lenders Protection Group:
                            ALAN R. SMITH, Esq.
                            KEVIN DARBY, Esq.
                            Law Offices of Alan R. Smith
                            505 Ridge Street
                            Reno, Nevada 89501
                            Mail@asmithlaw.com

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    3

```
 1                  PROCEEDINGS BEGAN AT 10:35 A.M.
 2                      (Court's called to order)
 3              JUDGE JONES:  Good morning.  Thank you.  Please be
 4   seated.
 5              We're here in --
 6              JUDGE PRO:  They're stunned.
 7         [Laughter]
 8              JUDGE JONES:  -- in USA Commercial -- or rather, I'm
 9   sorry, Mortgage.  Let me explain briefly what we're doing
10   before we call for appearances.
11              We have three notices of appeal in this series of
12   cases.  They're all from the same order, of course, but three
13   different notices, and to some extent they overlap in legal
14   issues but they do have separate legal issues.
15              In normal course, the way an appeal referred back
16   from the Bankruptcy Appellate Panel of the District Court
17   works is, is by rotation, by random draw the judges are
18   assigned one of those appeals with one judge hearing.  In this
19   case we have three notices of appeal.  And in normal course,
20   Judge Hunt was assigned the first one.  He reassigned it to me
21   briefly, at least for purposes of hearing the motions.  He was
22   otherwise engaged.  Judge Pro received the second one; and I
23   received the third one, by assignment.  Again, Judge Pro
24   assigned to me, temporarily, his case at least for purposes of
25   hearing an emergency motion.
```

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

4

```
 1          We have considered -- or contemplated between
 2   ourselves a little bit of a different procedure, and that is,
 3   potentially hearing these by way of a panel.  Be ultimately
 4   the merits as opposed to these early motions.  Rather than
 5   consolidating them, I think we would clearly have the
 6   discretion to consolidate them since they do have overlapping
 7   issues and they do have the -- they are an appeal from the
 8   self same -- one and the same order, confirming the plan.
 9          They do have dissimilar issues in some respects and
10   for that reason I think we also had the discretion not to
11   consolidate them, but I believe what we've talked about,
12   haven't decided yet, but what we've talked about is not
13   consolidating the appeals but simply hearing them at the same
14   time.  And, therefore, sitting together as a panel of judges
15   to hear them.  It would be under that authority and analysis
16   that we would hear them as a panel.  If we did that and choose
17   to do that, we would certainly issue one single opinion most
18   likely which would be filed in each case, each unconsolidated
19   appeal.
20          There is also discretion under the rules for the
21   judges to entertain a case in en banc fashion.  The District
22   Court has done that previously in other cases.  That wouldn't
23   be the authority invoked here, but it would really be
24   unconsolidated cases but being heard at the same time by a
25   panel of judges who were randomly selected and picked for the
```

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                                    5

1    cases.

2         It's for that reason that I've invited Judge Pro

3    to come out, since there is being addressed here today

4    emergency motions in two of these appeals which would dispose

5    of the appeals.  They'd be dispositive rulings if the motions

6    are granted and so I invited him and he's graciously agreed to

7    come out and sit and listen to these same issues.

8         And, of course, I defer to him as -- really as the

9    presiding judge.  He's the senior and by far the older --

10         JUDGE PRO:  Definitely older.  Definitely older.

11    [Laughter]

12         JUDGE JONES:  It's for that reason that we are

13    appearing here as two judges on the panel.

14         I remind you, before I deferred to him as Presiding

15    Judge, to call the case and ask please for your appearances.

16         I remind you that this is an appellate record.

17    It's not like a trial factual record.  No evidence can be

18    proffered here.  It's simply a record of your oral arguments

19    on appeal.  The Court certainly would not be making any

20    findings of fact, as opposed to a ruling on the law as an

21    appellate ruling.

22         So, reminding you that nature of the record being

23    created here.

24         Let me defer please to Judge Pro, presiding.

25         JUDGE PRO:  Thank you, Judge.  You're too kind in

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

6

 1  that regard, and it is simply because I am the elder of the

 2  Judges.  But I really appreciate Judge Jones' approach to this

 3  and he did raise the issue with me and I thought, you know, it

 4  would be an interesting -- interesting way to consider these

 5  matters and so I was delighted to join him this morning -- or

 6  am delighted to join him this morning to hear your arguments

 7  on the two pending motions.

 8          The cases are 2:07-Civil-72-RCJ, the Lenders

 9  Protection Group, et al. versus USA Commercial; and

10  In Re: United Commercial Mortgage Company, Debt Acquisition

11  Company versus United Commercial Mortgage, and that is

12  07-CV-160-RCJ.

13          Counsel, perhaps it would be helpful if you state

14  your appearances for the record.  Let me begin with counsel

15  for the appellee debtors, who are the movants in this case

16  with respect to the two emergency motions to dismiss the

17  appeal.

18          MS. McPHERSON:  Good morning, Your Honors.  Jeanette

19  McPherson of Schwartzer & McPherson Law Firm, and Annette

20  Jarvis of Ray Quinney & Nebeker on behalf of the appellee

21  debtors.

22          JUDGE PRO:  Thank you, counsel.  And on behalf of

23  the appellants?

24          MR. SMITH:  Good morning, Your Honor.  Alan Smith

25  representing the Lenders Protection Group.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          7

1          JUDGE PRO:  Thank you, Mr. Smith.

2          MR. KIRBY:  Dean Kirby, Kirby & McGinn, for Debt

3     Acquisition Company of America.

4          JUDGE PRO:  Thanks, Mr. Kirby.

5          And, Ms. Chubb?

6          MS. CHUBB:  Good morning, Your Honor.  Janet Chubb

7     of Jones Vargas for the Jones Vargas Direct Lenders.  But if

8     you'd like, I'd be happy to read every one of my clients'

9     names onto the record here, since that seems to be an issue.

10    We have of course attached it in our 2019 statement so maybe

11    you don't think that's necessary.

12         JUDGE PRO:  No, you don't need to reread that at

13    this time.

14         MS. CHUBB:  Okay.

15         JUDGE PRO:  All right.

16         MS. CHUBB:  Thank you.

17         JUDGE PRO:  Thank you.

18         JUDGE JONES:  I think we do have one party on the

19    phone, an associate of Mr. Smith, who's been given permission

20    to listen only, not -- he's not going to argue.

21         MR. SMITH:  That's correct.

22         JUDGE JONES:  Why don't you -- we ought to call for

23    him.

24         JUDGE PRO:  Counsel, can -- I'm sorry, I didn't know

25    who was on the line.  But can you hear me?

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07      Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                           8

1          MR. DARBY:  Yes, Your Honor.  This is Kevin Darby of

2   the law offices of Alan R. Smith, also on behalf of appellant,

3   The Lenders Protection Group.

4          MR. PRO:  All right.  Thank you.  Thank you very

5   much.

6          Anyone else on the phone?  All right.  Great.

7          Well, Judge Jones, if you agree, why don't we begin,

8   then, with -- Ms. Jarvis, are you going to present argument on

9   behalf of appellee debtors?

10          MS. JARVIS:  On the calendar first, Your Honor, is

11   our motion to dismiss the appeals of The Lender Protection

12   Group and the Jones Vargas appellants, and so I will address

13   that first.

14          Let me first address the need for an expedited

15   hearing that was raised, unless Your Honors don't want me to

16   do that, but let me -- there was some evidence presented --

17   it was actually inadmissable hearsay evidence from a

18   declaration of Ms. Kancholoski [phonetic] saying there is no

19   need for this emergency hearing because there's a licensing

20   issue.  And we actually filed last night in Bankruptcy Court,

21   an emergency motion to resolve this issue through having the

22   debtors act as a sub-servicer pending the ability to get a

23   license.

24          There was also a declaration of Mr. Cooney

25   [phonetic] of Silver Point --

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    9

1          JUDGE JONES:  I'm sorry.  I apologize for

2     interrupting.  Repeat that.  I didn't quite understand.  You

3     believe that's mooted because why?

4          MS. JARVIS:  Well, I believe that that's not a

5     reason -- what was argued is that we don't need this

6     expedited hearing because we can't close this transaction

7     anyway by the 16th because we have a licensing problem with

8     the state mortgage lending division.  And what we did last

9     night was file an emergency motion in the Bankruptcy Court to

10    allow the debtors to act as a sub-servicer pending the

11    resolution of that.  So that does not mean that we don't need

12    this closed because we can -- you know, if we can deal with

13    these issues we can close this, you know, over that issue

14    before the 16th.

15         The second issue that was raised by The Lenders

16    Protection Group, that we don't -- didn't need an expedited

17    hearing, was based on a declaration from Mr. Cooney of Silver

18    Point.  Silver Point was also a bidder at the trial court.

19    However, they specifically refused on the record to be a

20    backup bidder, and his -- while his declaration says they're

21    interested, there is no commitment and no requirement to close

22    at the price that we currently have which is a 67-million-

23    dollar sale.  And in fact Silver Point was the stalking horse

24    bidder at a 46-million-dollar bid.

25         So there was a huge, you know, difference.  And

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants       2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    10

1  while they came up during the auction,  they are not a bound

2  [sic] bidder.  So that is also not a reason for -- for us not

3  needing an expedited hearing.

4          JUDGE JONES:  If I may, I do have a couple questions

5  on this emergency issue.

6          MS. JARVIS:  Yes.

7          JUDGE JONES:  And that's the finality of the sale

8  order, in any event.  I asked these same kind of questions

9  when we were here on the motion to strike the Bankruptcy

10  Appellate Panel's stay.  And so I need to ask those again.

11          363(m), of course, gives a special status to a sale

12  order.  If you don't get a stay, pending appeal, the order for

13  all intents and purposes is final.  It can't be undone.  The

14  appellate court may provide another remedy.  If they can't, of

15  course, then the appeal ought to be dismissed as moot.  But

16  the order itself -- the sale and the sale provisions cannot be

17  undone.

18          So my question pertains to that just a little bit.

19  You have the ability to effect, according to the clear

20  bankruptcy law as I understand it, to effect a sale under

21  363(m) either by a sale order of the Court, after notice

22  and hearing or you can effect it in an order confirming a

23  plan.

24          And it would be my understanding, you'll correct me

25  if I'm wrong, but 363(m) would apply to either kind of an

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    11

1  order.  So, for example, if we have an order here confirming

2  a plan and it contains 363 sale approval, and it contains

3  terms and conditions that are approved, while the appeal

4  itself could continue relating to a plan, that portion of the

5  order that approves the plan, including any terms and

6  conditions relative to the sale, would, in essence, be final

7  with respect to the sale.  No portion of the sale, or those

8  terms and conditions could be overturned by the appellate

9  court even if it agreed with the appeal or the appeal issues

10  raised.

11         So I have to ask you that question again.  Is that

12  not the case here?  Do we not, subsumed in the order

13  confirming the plan, have a sale order approving -- and not

14  only approving the sale, but approving certain terms and

15  conditions of the sale which, in essence, becomes final, at

16  least with respect under 363(m) to the ability of the

17  appellate court in any respect going to that sale for those

18  terms and conditions.

19         MS. JARVIS:  We do, Your Honor, have incorporated in

20  the confirmation order a 363(m) finding.  The sale was done

21  pursuant to 363 and 1123.  1123 does allow for 363, in

22  essence, to be brought into a confirmation -- a plan and

23  confirmation order, and that is the way we provided for that.

24  So we did get a 360(m) finding -- a 363(m) finding.  And that

25  would allow the buyer to close.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        12

1          The problem we have, is that the reason that this

2     sale was not done independently of a plan is there were a lot

3     of loose ends that needed to be wrapped up.  And when you go

4     through the asset purchase agreement they're issues that were

5     vast and maybe even, you know, only possible in getting a plan

6     con -- a plan confirmed.  And as part of the bargaining for

7     that, they bargained for not just a 363(m) finding, but a

8     final order confirming the plan.  And that order had to be

9     final by the 16th of February or they have the opportunity to

10    opt out of the sale without penalty.

11          JUDGE JONES:  Now, there's a couple of problems with

12    following your emergency analysis, and that is of course, even

13    if we grant your motions -- I mean I granted the motion with

14    respect to the appeal that I thought was pretty clear.

15          MS. JARVIS:  Yeah.

16          JUDGE JONES:  The equity holders, because of the

17    proof and no contradicting proof that in fact the debtor was

18    insolvent, the equity holders simply did not have standing

19    under current law to appeal the confirmation of a plan that

20    cancels their equity shares.

21          These cases are a little bit different, but

22    certainly even in that appeal and as suggested here, even if

23    we grant your motion they have 30 days to file a notice of

24    appeal to the circuit.  If that's the interpretation of non

25    final order that any appeal is pending, aren't you just dead

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          13

1    in the water anyway?

2           MS. JARVIS:  Well, Your Honor, I think -- I mean, it

3    is problematic and we are aware of that.  I do think that we

4    would have an argument if we get these appeals dismissed.

5    That for all practical purposes, we've complied with that at

6    this moment.  And that is certainly what we would argue.  You

7    know, technically, you're correct because they do have the

8    opportunity to appeal further to the Circuit.  But we are

9    trying to bring ourselves as close -- as much into compliance

10   with that and the ability to raise and argue that prior to the

11   date.  And that is why we feel like we need this emergency

12   hearing and the ability to try to resolve these appeals at

13   least, at this level.

14           JUDGE PRO:  So the 16th is not really the drop-dead

15   date?  It's what's contemplated, but there is some forbearance

16   by Compass by --

17           MS. JARVIS:  No, there is no forbearance.  It is

18   drop-dead date.  I mean, on the 16th, if we do not have final

19   orders or cannot argue that we have, you know, final orders,

20   then they do have the opportunity, if they want to, to refuse

21   to close.

22           JUDGE PRO:  Right.

23           MS. JARVIS:  Yes.

24           JUDGE JONES:  One last question in this regard is,

25   what would be final under 363(m) if that's the interpretation

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                           14

1   we take and if -- and if you -- if you use that as a basis to

2   argue with your buyer that you really must close?  Does 363(m)

3   make your sale final?  What would be final?  There are terms

4   and conditions approved by Judge Riegle.  Those terms and

5   conditions, for example, include pretty specific language

6   "sold free and clear of any claim," not in exact language but,

7   in essence, a claim of prior breach by the debtors that would

8   give rise to the right of termination of -- for collection

9   service.  Am I incorrect that thinking that at least those

10   terms would be included in a 363(m) prohibition?  Are there

11   any other terms or conditions that are critical to the buyer

12   that would not -- you think would not be necessity, therefore

13   this emergency claim?

14          MS. JARVIS:  Well, I think, Your Honor, part of the

15   compromise that was reached in the plan -- included in the

16   plan with The Direct Lenders and USA Commercial Mortgage that

17   was confirmed, has terms in it where there is an agreement

18   basically, you know, with respect to the loan servicing

19   agreements being transferred.  You know, under 363, there is

20   an agreement with respect to, you know, certain rights and

21   claims that could be asserted against Compass.

22          So, while if we're placed in that position we

23   certainly are going to argue, you know, 363(m) does it.

24   There are other issues that are included in these compromises

25   in the plan that are resolved, and with respect to prepaid

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        15

1   interest, which is something the buyer now has to pay back to

2   us.

3           JUDGE JONES:  And would you explain that just

4   briefly?  This was a last minute compromise at the time of

5   confirmation, trying to reach compromise with some of the

6   Direct Lender classes.  Something was reserved back from the

7   sale.  And what was that something?

8           MS. JARVIS:  Yeah.  Well, there are actually two

9   issues.  There was the general compromise which is in the

10  plan, that the class voted for, the Class A5 Direct Lenders

11  class voted for.

12          JUDGE JONES:  We give up a right to a full 100

13  percent of our future collections to allow recoupment, if you

14  will, of some of the monies that were paid to us improperly,

15  pre-petition or post-petition.

16          MS. JARVIS:  That's generally the case.  Right.

17  There were certain rights given up by the debtor, rights to

18  try to recharacterize the Direct Lenders into all one pot.

19          JUDGE JONES:  That's the general compromise?

20          MS. JARVIS:  Right.  And also, you know, to not

21  contest the recoupment, you know, that was done with respect

22  to the prepaid interest.  They then received back, as a

23  compromise, they were not charged for administrative expenses,

24  other than for the 600,000 -- 605,000 that was paid to the

25  Direct Lenders Committee.  So there were compromises back and

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                16

1   forth.

2           JUDGE JONES:  So out of that 2 percent, they're not

3   going to be charged for any of the other administrative costs

4   of the bankruptcy?

5           MS. JARVIS:  No.  That was remitted back or is --

6   will be remitted back as part of that compromise.  So that was

7   the general compromise.

8           Then there was a specific compromise that was done

9   at the confirmation because the issue of what free and clear

10  means, in terms of being sold, and some of the issues that

11  were raised by these parties that were objecting as to, well,

12  we want to reserve our rights to be able to terminate the

13  servicing agreement if there were breaches or a basis for

14  doing that, based on what the debtor did pre-petition.

15          So there was a last minute compromise that was

16  offered and, in fact it is in the record, Your Honor.  It was

17  done on the record at the confirmation hearing.  It is on the

18  -- in the transcript on the 19th of December, where Mr. Davis

19  who represents Compass, goes through and says:

20          "Your Honor, we've -- you know, we've had some

21          lengthy discussions about the types and claims" -- I'm

22          quoting now from the transcript -- "of interest that we

23          would take free and clear of.  During the break we had

24          discussions with counsel for the Direct Lenders Committee

25          and I think we have reached agreement on that.  I would

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          17

1  just like to advise Your Honor of how we think we've

2  resolved that."

3    And then Mr. Davis goes to explain that they will

4 agree, that they will not take free and clear of certain

5 rights.  So, in order words, it was a concession that Compass

6 made at the confirmation hearing to try to resolve some of

7 these issues.

8    JUDGE JONES:  Just, in general, summarize it.  What

9 will they not take free and clear?

10   MS. JARVIS:  They agreed that with respect to the

11 rights of these -- of Direct Lenders, to be able to change

12 servicers based on a breach of the servicer, and obtaining --

13   JUDGE JONES:  So they -- did they preserve the right

14 to terminate, based upon breaches of the debtor before the

15 sale?

16   MS. JARVIS:  Yes.  That's correct.

17   JUDGE JONES:  Okay.

18   MS. JARVIS:  So if they had a matured breach and an

19 ability to change servicers, as of the time the petition was

20 filed --

21   JUDGE JONES:  So, for example, if you had a $200,000

22 payoff and it went into the commingled account and it never

23 got paid over to that particular Direct Lender, that Direct

24 Lender could still say that was a breach that authorizes me to

25 terminate this servicing agreement with the buyer.

2:07-CV-0160-RCJ-GWF  Debt Acquisition, Appellants  2/14/07  Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com  18

1        MS. JARVIS:  Right.  The provision also requires

2   though that you have to have 51 percent of the lenders in a

3   loan because these loans -- some of them -- there are hundreds

4   of lenders in loans.  A lot of them have 300 --

5        JUDGE JONES:  So a normal provision.  Of course, a

6   majority of the -- of the owners have to agree to terminate

7   that service

8        MS. JARVIS:  Right.  So in this compromise he

9   acknowledged that this could be done, that this would be

10  preserved and it would not be free and clear of this right as

11  long as these rights were asserted within a certain period of

12  time, you know, and it would be determined by the Bankruptcy

13  Court then, as to whether -- whether they had a right to

14  change servicers.

15       JUDGE JONES:  Okay.

16       MS. JARVIS:  So this was a concession.  It wasn't,

17  you know, something that was further imposed.  It was actually

18  a benefit to The Direct Lenders.  And this --

19       JUDGE JONES:  I think I understand.  That's all I

20  had with regard to --

21       MS. JARVIS:  Well, let me just mention one other

22  thing in that respect that you need to understand, you know,

23  there was at the end of his explaining this, Mr. Merola, who

24  represents the First Trust Deed Committee did say:

25       "You know, Your Honor, on behalf of the seller I

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                      19

1       would like to thank Compass -- because First Trust Deed

2       is one of the sellers -- for timely addressing these very

3       complicated issues.  That's an enormous concession for a

4       group like that to make."

5           This was done on the record and no one objected to

6   this compromise.  So there were no objections made to this --

7   this concession on the record.  And that, Your Honor, is of

8   course one of our arguments, that since there were no

9   objections made this is not a proper issue to appeal, because

10  they didn't preserve their rights below.

11          Shall I turn now to the substance of The Lender

12  Protection Group appeal -- or motion to dismiss?

13          As I read the response, The Lender Protection Group

14  has appeared to limit it mainly to two issues, and so I'll

15  address those issues.

16          Now, in a reply brief that we did file last night,

17  we did address all of the standing issues with respect to all

18  the issues that they raised in their -- their issues on

19  appeal.  But in their response they, you know, as I read it,

20  limited it to these two issues, and so -- so I will address

21  those issues.

22          And these two issues concern, first, the compromises

23  in the plan and whether that could be done without an

24  adversary proceeding.  And the compromise that they're talking

25  about is this prepaid interest, the recoupment, you know, of

2:07-CV-0160-RCJ-GWF         Debt Acquisition, Appellants      2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    20

1   the prepaid interest and all the back and forths that go with

2   this Direct Lender compromise.

3         Then the second is, whether the loan servicing

4   agreements could be transferred under 363 as non-executory

5   contracts as determined by the trial court or whether these

6   contracts were executory and had to be cured prior to

7   transfer.

8         First with respect to the compromise issue, and I'll

9   also address our second standing issue last, which is the

10  issue of whether the notice of appeal was properly filed.

11        With respect to the compromise issue which involves

12  the compromise of any claims to the prepaid interest collected

13  by the debtor post-petition -- and maybe I should go back and

14  explain again.  I know we had this discussion last Friday

15  about prepaid interest but maybe since Judge Pro was not here

16  let me kind of explain what this is.

17        What happened in this case is that prior to the time

18  the bankruptcy was filed there were all kinds of what I'll

19  call "irregularities" in the servicing.  And --

20        JUDGE PRO:  I can save you some time.  I did read

21  through your --

22        MS. JARVIS:  You did read it?  So you understand the

23  prepaid interest --

24        JUDGE PRO:  -- your brief last night so I am

25  familiar with the pyramid scheme, if you will.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    21

```
 1              MS. JARVIS:  Yeah.
 2              JUDGE PRO:  The scenario that took place previously.
 3              MS. JARVIS:  The diversions and the payment
 4  basically to people of interest that was never collected from
 5  their borrower --
 6              JUDGE PRO:  Right.
 7              MS. JARVIS:  -- or from other people's funds,
 8  basically.
 9              JUDGE PRO:  Right.  Simply other investments that
10  were made, were used to --
11              MS. JARVIS:  Right.  And so -- so when we talk about
12  collecting back prepaid interest we're talking about --
13              JUDGE PRO:  Something we see all too often,
14  unfortunately, in other contexts too.
15              MS. JARVIS:  Well, unfortunately, we see it a
16  lot in bankruptcy.
17              JUDGE PRO:  Mm-hmm.
18              MS. JARVIS:  So when we talk about collecting
19  prepaid interest, we're talking about recouping back this
20  interest that the debtor previously advanced to these parties,
21  that they were never entitled to be paid, in fact were paid in
22  violation of Nevada law.
23              The -- with respect to this prepaid interest, the
24  Lender Protection Group are not a person aggrieved because
25  they failed to preserve their rights with respect to this
```

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    22

1  issue.  No evidence was presented at the trial court as to any

2  specific claim of any of these lenders to these funds held by

3  the debtors.  They talk about these as segregated funds and

4  yet there is no evidence that any of these lenders have any

5  specific rights to these, quote, unquote, "segregated funds".

6  No evidence was presented below to establish that.  Either as

7  collective prepaid interest claims that belong to these

8  individuals --

9          JUDGE PRO:  Let me just ask in that regard.  As I

10  recall, the appellants take the position this is a legal

11  argument, we didn't have to offer evidence, it's -- if you're

12  going to be taking money out of our pocket, in essence,

13  there's a pecuniary impact and we are, hence, person

14  aggrieved.  How do you -- how do you respond to that?

15          MS. JARVIS:  Well, there are two things.  The first

16  one is, you know, I think very clear, which is, there is a

17  claim that if you had diverted principal, meaning some of the

18  principal that got poured into this pot and paid out to

19  everyone else, so you have some -- a special claim on this

20  prepaid interest.  The -- you know, evidence was presented

21  that these funds were commingled.  There was no tracing.  In

22  fact there was a concession on the record by Mr. Smith that he

23  agreed, that no tracing could be done.  So that these funds

24  were not traceable and, therefore, since there was no way --

25  no specific interest claimed in these funds, then that was

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                              23

1  waived because -- or they didn't pursue their interest because

2  they presented no evidence showing that this gave them any

3  special claim, these diverted principal claims, to the

4  segregated funds; to the funds that the debtor is holding and

5  recouped the prepaid interest.

6          JUDGE JONES:  Now, one little subset of that though

7  is, the funds that were collected post-petition were collected

8  and put into an account with an understanding in the order, as

9  I understand it, that they would be segregated.  In other

10  words, their nature would not be changed.  So that order, of

11  course, can't change the nature of those funds and can't make

12  them specifically traceable if they're not.  But at the same

13  time, it means that they -- they aren't waiving a commingling

14  argument on the post-petition fund.  So with respect to the

15  post-petition funds that were collected as opposed to the pre-

16  petition, can they not, in fact, claim that tracing is

17  available?

18          MS. JARVIS:  And that's the second piece, which is

19  -- you know, the diverted principal claims and claims on these

20  funds is one thing.  The second is, the recoupment rights that

21  the debtor had, you know, exercised pursuant to the plan that

22  deals with some of the funds that were held back to recoup

23  back these claims.  But, again, no evidence was presented as

24  to any -- identifying any part of the segregated funds that

25  the debtor held that -- that they were objecting to or

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    24

1   believed that was being compromised.  So there simply was no

2   evidence, you know, presented.

3       Let me read -- perhaps it would be helpful, Your

4   Honors, to read from the Court's record below, because the

5   Court did determine -- looked at this very issue and

6   determined that in fact they had not pursued their rights.

7   They had not preserved those rights.  And let me read from

8   page 220 of the transcript on December 19th, what the Court

9   said about this, and I'll quote.

10      "Now, I think Ms. Jarvis did an excellent job.  A

11          lot of cases in this area are ah-ha cases.  These are

12          cases where, again I apologize to people who don't do

13          bankruptcy, they're the Chapter 13s where people are

14          trying to get discharged by declaration.  And that is,

15          that people are trying to sneak something through in the

16          plan.  That people haven't had an opportunity to be heard

17          and people say ah-ha, I avoided your security interest,

18          or, ah-ha, I canceled a portion of your lien.  Nothing

19          like that is happening here.

20      "A compromise on a ripe payment that occurred pre-

21          petition, that they've known about since the beginning of

22          the case is being compromised.  We have heard repeatedly

23          -- we've heard  that -- two or three people say we were

24          promised things.  We were promised a proceeding.  This is

25          the proceeding.  We were crystal clear that the

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          25

1          proceeding could be in the context of a plan.  The plan

2          and the disclosure statement --

3                    JUDGE JONES:  She's talking about the potential of a

4     separate adversary proceeding.

5                    MS. JARVIS:  Right.  Right, that somehow we took

6     away -- that the plan took away some claim to funds, these

7     funds that were determined to be property of the debtors by

8     virtue of the plan, whether this was properly done and whether

9     anything -- whether they had in fact preserved their rights to

10    this.  And, in addition, whether we had to file an adversary

11    proceeding which she found we didn't.

12               "The plan in the disclosure statement, since they

13          were filed, are crystalline on the issue that

14          confirmation is being imposed, and yet we don't have any

15          conflicting evidence on the compromise.  We don't have

16          any efforts to take discovery of the debtor to make sure

17          they are contradicting any of these facts.  We don't have

18          any contentions that the payments, when made, were not

19          consistent with the contract and were in fact illegal.

20          What we do have is saying, well, we have undisclosed

21          defenses.  They can come and sue all four thousand of us,

22          and that's clearly not what the code requires."

23               So the court below, actually, in -- in looking at

24    this issue in an -- in approving this compromise, and the

25    compromise includes the issues with respect to this prepaid

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          26

 1    interest and the recoupment of it, found that they had not --
 2    these parties had not pursued their rights.  Had not preserved
 3    them below.  And that is a basis of standing on appeal.
 4    Because of that, they do not have standing on appeal.
 5             Let me turn to the second issue which in some ways
 6    is a subset of the first.  Because if you look under Section
 7    4(e)1(B) of The Direct Lender USACM Compromise in the plan,
 8    the compromises are well set out in the plan.  It says --
 9    there's a section which is entitled "Loan Servicing
10    Agreements," and it says:
11             "All rights of USACM as servicer under the loan
12        servicing agreements, transferred -- are transferred
13        without modification, pursuant to the plan, and the asset
14        purchase agreement shall be free and clear of all liens,
15        claims, interest, obligations and encumbrances whatsoever
16        under Sections 363."
17             JUDGE JONES:  Well, let me stop you there.
18             MS. JARVIS:  Mm-hmm.
19             JUDGE JONES:  'Cause the latter clause is going to
20    be very important.
21             MS. JARVIS:  Okay.
22             JUDGE JONES:  But that former clause is "without
23    modification".  In other words, they're transferred free and
24    clear but without modification.
25             MS. JARVIS:  Right.  That's correct.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        27

1           JUDGE JONES:  The terms are as they are.

2           MS. JARVIS:  Right.  Correct.  But they're

3  transferred under 363 and 1123.  And that's the end of this

4  sentence.  So part of the compromise --

5           JUDGE JONES:  Go ahead and finish it.  I'm sorry.

6           MS. JARVIS:  Right.  Part of the compromise was that

7  these loan servicing agreements are transferred without

8  modification, free and clear of all liens, claims and interest

9  under 363 and 1123 of the Bankruptcy Code and any other

10  applicable sections of the Bankruptcy Code.

11          Now, there was the one concession that was made with

12  respect to this provision at the confirmation hearing.  The

13  one I just described to you made by Compass.  So that, you

14  know, modified this, but modified it in a good way.

15          JUDGE JONES:  So otherwise the effect of that order

16  though is, that there's no breach.  The Bankruptcy Court is

17  declaring there's no present breach in these contracts by the

18  debtor?

19          MS. JARVIS:  No.  What the Bankruptcy Court

20  determined is, that under applicable law --  Ninth Circuit

21  law, the contracts are not executory, because there aren't --

22  while there are remaining duties on the side --

23          JUDGE JONES:  In an executory contract the debtor

24  has to cure any breaches --

25          MS. JARVIS:  Right.

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    28

1          JUDGE JONES:  -- before it can sell.

2          MS. JARVIS:  Right.  But these are not.  And, in

3    fact there is the Quintex case in the Ninth Circuit where the

4    same thing was done.  Contracts that were not executory were

5    sold under 363.  And --

6          JUDGE JONES:  So the court is saying these aren't

7    executory contracts that require any cure; does the judge

8    go further though and say there is no breach in these

9    contracts?

10         MS. JARVIS:  No.

11         JUDGE JONES:  No.

12         MS. JARVIS:  What she said is, if there are any

13   claims, they will be claims against the bankruptcy estate.

14         JUDGE JONES:  So she is severing any claims for

15   breach?

16         MS. JARVIS:  Right.

17         JUDGE JONES:  She is severing any claim for breach

18   of the contract from the contract itself that goes to the

19   servicer, any claimant for a breach has to look back at the

20   Bankruptcy Court.  It can't look to the servicer.

21         MS. JARVIS:  Because that's part of selling those

22   contracts free and clear.  And the one exception is the

23   concession made, you know, by Compass at the hearing which

24   is, breaches that occurred -- mature breaches, pre-petition,

25   could be used for changing servicers if they meet provisions

2:07-CV-0160-RCJ-GWF         Debt Acquisition, Appellants      2/14/07         Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    29

1  of the contract.  But other than that, they were sold free and

2  clear.

3         And so, consequently, if The Lender Protection Group

4  failed, as they did, to preserve their rights with respect to

5  the compromise, the judge specifically found that they did not

6  present any evidence to preserve their rights in contradicting

7  the compromise; then they failed to preserve this [sic] rights

8  on this issue as well because it was included in the

9  compromise.

10         Further, they -- The Lender Protection Group failed

11  to present any evidence or create any record at the trial

12  court.  They would suffer any direct pecuniary harm as a

13  result of these transfers.

14         JUDGE JONES:  Now, why -- I don't quite understand

15  this last argument.

16         MS. JARVIS:  Mm-hmm.

17         JUDGE JONES:  They are -- they did object legally.

18  They said Judge Riegle made a mistake when she ruled that

19  these aren't executory contracts.  And isn't that just a pure

20  legal issue and they made the objection, and so clearly they

21  preserved their right to appeal the ruling.

22         MS. JARVIS:  Well, I think there are two issues.  I

23  mean, there -- you can -- if you separate it off, that is one

24  issue, but the other issue is it's actually part of the

25  compromise.  So the compromise -- because the compromise

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07      Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                                    30