1  included the agreement that these loan servicing agreements

2  could be transferred free and clear under 363.

3          JUDGE JONES:  You're saying they didn't object to

4  the compromise?

5          MS. JARVIS:  They didn't present evidence.  They

6  didn't preserve their rights.

7          JUDGE JONES:  But they were objecting to the -- the

8  plan or at least the sale in the nature of the -- through the

9  plan, that said these aren't executory contract; there doesn't

10 have to be some special cure.  They did object to that.  And

11 you're just saying they waived their rights to appeal because

12 they didn't object to the compromise of that issue.

13         MS. JARVIS:  Right.

14         JUDGE JONES:  But they didn't agree to the

15 compromise.  They were either moot -- mute not moot -- mute,

16 in any event, or did they not agree to the compromise, so how

17 are they waiving their right to appeal, which they actually

18 raised at the time of confirmation?

19         MS. JARVIS:  Well, as the -- yeah, as the court

20 found below in the passage I read to you, she said if -- you

21 know, that they had not properly presented any evidence to

22 dispute the compromise or, you know, the validity or

23 effectiveness of the compromise.  No evidence was presented

24 showing -- I mean, she made a specific --

25         JUDGE JONES:  But, of course, there's no notice of

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          31

1  the compromise.  That -- there wasn't a special hearing to

2  consider the compromise.  There was a hearing -- notice and

3  hearing of the sale and the sale order, the objection, and the

4  last minute compromise that's presented.  There's no --

5          MS. JARVIS:  Well, --

6          JUDGE JONES:  -- in that sense, no requirement that

7  they file a written objection to the compromise that's

8  presented orally at the last minute.

9          MS. JARVIS:  Well, the compromise -- you have to I

10  think separate off the compromise that's presented orally at

11  the last minute.  That's not the compromise we're talking

12  about here.

13          JUDGE JONES:  Okay.

14          MS. JARVIS:  The 363 compromise is in the plan --

15          JUDGE JONES:  Okay.

16          MS. JARVIS:  -- as part of the compromise.  And they

17  did not present any evidence disputing that compromise.

18          JUDGE JONES:  Did they object to it?

19          MS. JARVIS:  They objected to the plan but without

20  presenting any evidence.  And there was evidence --

21          JUDGE PRO:  What evidence do you suggest have would

22  have been viable?  What should they have presented?

23          MS. JARVIS:  Any compromise requires -- even in a

24  plan, requires that you comply with Rule 9019.  The

25  standards of Rule 9019.  Evidence was presented by the

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          32

1  debtors in the declaration of Mr. Allison, showing that this

2  was an appropriate compromise under 9010.  And no -- and in

3  addition to that, there was evidence presented on the

4  prepaid interest and why that was, you know, appropriately

5  treated under the plan, and no evidence was presented to

6  counter that evidence.

7         In addition, they didn't present any evidence

8  showing that they would even suffer any direct pecuniary harm

9  as a result of the transfers of the loan servicing agreements

10  as provided for the -- under the plan and they thusly lacked

11  standing on appeal as well.

12        Finally, with -- on this issue with respect to the

13  Jones Vargas Direct Lenders, their joinder was limited as

14  follows -- and I quote from their joinder.

15        "The objecting --

16        JUDGE JONES:  Joinder in the appeal?

17        MS. JARVIS:  Yeah.  No, the joinder in The Lender

18  Protection Groups objections.  So they joined.

19        JUDGE JONES:  Okay.

20        MS. JARVIS:  "The objecting JV creditors also do

21     not object to the sale of the loan packages to Compass so

22     long as it is clear there is no assumption and assignment

23     that would suggest that there has been a cure of the

24     USACM defaults."

25        So they specifically, basically, did not adopt the

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          33

1  objection with respect to 363.  And by their express

2  limitation in their objection below, then they do not have

3  standing to raise the issues under 363.

4          JUDGE JONES:  Did the last minute compromise put

5  into effect their limitation?  That is, they say we don't

6  object to the sale except to the extent that it purports to be

7  a recognition that they don't have to cure.  Did the last

8  minute compromise effect the very cure that they're -- or

9  preserve their right to demand a cure that they were insisting

10 on?

11         MS. JARVIS:  No, because what they're -- what they

12 were saying actually is they didn't want an assumption and

13 assignment that would suggest there'd been a cure.  So, in

14 other words, they were concerned about that there would be an

15 assumption and assignment that would cure all the defaults and

16 they wouldn't have any rights to claim, you know, whatever

17 they could, which --

18         JUDGE JONES:  But the order as signed does, in

19 essence, waive that right in some respects.

20         MS. JARVIS:  It does not cure any of the defaults in

21 the sense that there is the right to claim --claim -- make

22 claims against the debtor with respect to those defaults that

23 are not cured.

24         JUDGE JONES:  Right.

25         MS. JARVIS:  And then there was, of course --

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    34

1      JUDGE JONES:  But they can't make claims against the

2   new servicer?

3      MS. JARVIS:  No, 'cause they're sold free and clear

4   except for the -- the compromise that no one objected to which

5   allowed them to use matured pre-petition breaches as a basis

6   for changing servicers, if they met the other conditions.

7      Let me then turn to -- in addition to lacking

8   standard for failure to preserve rights, with respect to The

9   Lender Protection Group appellants and the Keyo [phonetic]

10  family members of the Jones Vargas Direct Lender appeals,

11  these appellants were not named, as expressly required under

12  the Federal Rules of Bankruptcy Procedure 8001(a).  No members

13  of the LPG were named at all in the notice of appeal and even

14  the 2019 statement was not attached to the notice appeal.  And

15  the notice of appeal by the Jones Vargas Direct Lender only

16  named -- they named some parties which were properly named,

17  but then they named the Keyo family members which were not

18  identified.  And this is a specific requirement of 8001.  It

19  used to be a requirement of 3(c) under the Federal Rules of

20  Appellate Procedure.  And when it was a requirement the

21  Supreme Court decided in the Torres case that if you didn't

22  name your appellants it's as if you did not appeal.  There is

23  -- the appeal is not proper.

24      JUDGE PRO:  Clarify for me your position on that.

25  You extend that to the fact that if there are appellants -- I

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

35

1   realize you're talking about certain of them not being

2   adequately named --

3           MS. JARVIS:  Yeah.

4           JUDGE PRO:  -- but if even one appellant is properly

5   identified for purposes of 8001(a), how does that impact the

6   dismissal of the appeal?

7           MS. JARVIS:  You're correct it would not be a total

8   dismissal 'cause there were certain appellants that were

9   properly named.

10          JUDGE PRO:  All right.

11          MS. JARVIS:  But it would dismiss the vast majority

12  of these appellants because none of them, you know, were

13  properly named as required.

14          JUDGE JONES:  And we're talking about Ms. Chubb's

15  client?

16          MS. JARVIS:  Some of Ms. Chubb's clients were

17  properly named.  The Lender Protection Groups were -- none --

18  no one was named.

19          JUDGE JONES:  Now, in the Bankruptcy Court of course

20  it's clear who she represents?

21          MS. JARVIS:  In Ms. -- in her case with the Jones

22  Vargas Direct Lenders, they did file a 2019 statement.  I

23  think people know in the Bankruptcy Court.

24          MR. JONES:  But the defect you say is just simply

25  that some of them are not named in the notice of appeal.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    36

1              MS. JARVIS:  Yes.  Right.  And the more -- the

2    more --

3              JUDGE JONES:  That's a rather technical basis for --

4              MS. JARVIS:  Yeah, well, and the more -- the more

5    disturbing issue or the more problematic issue is The Lender

6    Protection Group because even though they filed 2019

7    statements, we can't identify who these parties are, even for

8    the 2019 statements.  They don't comply with the rules under

9    2019 because it requires --

10             JUDGE PRO:  This is the one that consists of some

11   400 potentially --

12             MS. JARVIS:  Well, and if you -- if you look at 'em

13   -- I mean, if you look at this, would get to the issue of

14   confusion.  I mean, in the transcript at -- below, at the

15   confirmation hearing, on page 263 of the transcript of

16   December 19th, the Court asks Mr. Smith:

17             "And how many people are covered by your objection?

18             "Mr. Smith:  How may people do I represent?

19             "The Court:  Uh-huh.  About.

20             "Mr. Smith:  About 350.  I've updated about 350."

21             Now, that updated statement was filed on December

22   18th, even though the objection of Lender Protection Group was

23   filed on December 11th.  That was the deadline for filing,

24   leaving open the question of how many people actually were

25   included in the December 11th objection.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          37

1        Now, in the motion and response that was filed in

2  this court, Mr. Smith says he represents approximately 400

3  investors.  This is -- I mean, even if you take the more

4  lenient standard under Rule 3(c), as it's been amended, there

5  is clear confusion about who he represents and it's -- you

6  know, just watching this transition of events, you know, it's

7  -- that no one could objectively figure out who are the

8  parties that he represents.

9        JUDGE JONES:  Now, you've cited a Supreme Court case

10  that says when the general appellate rule containing this

11  requirement that an appeal must be dismissed if it's not

12  followed, but does that case, without having that case here in

13  front of us, factually, does that case involve an appellant

14  who filed simply no names on the notice or does it, like this

15  case, involve a notice of appeal that does designate some of

16  the people that clearly counsel was representing in the

17  Bankruptcy Court but not others that the same counsel was

18  representing?

19        MS. JARVIS:  Well, let me go back and kind of look

20  at the Ninth Circuit -- what they've done with this, because

21  there's been a change in Rule 3 and how that affects Rule

22  8001(c).

23        Rule 3 originally had -- you know, you had to name

24  the parties.  And after the Torres case it was changed so that

25  under Rule 3 you can now -- the attorney can now --

2:07-CV-0160-RCJ-GWF     Debt Acquisition, Appellants    2/14/07    Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com    38

1    representing -- it says:

2            "But an attorney representing more than one party

3        may describe those parties with such terms as all

4        parties, the defendants, the plaintiffs, A, B, et cetera,

5        all defendants except X.

6            So Rule 3(a) was specifically amended to allow, you

7    know, kind of these group statements.

8            However, Rule 8001(c) was not so amended.  8001(c)

9    has the stricter standard with respect to -- to names.  Rule

10   8001(c) requires that a notice of appeal shall contain the

11   names of all parties to the judgment, order or decree appealed

12   from and the names, addresses and telephone numbers of their

13   respective attorneys.  So the standard is more strict on that

14   issue under 8001.

15           The Ninth Circuit has actually acknowledged in the

16   Cascade case that there is a difference between the standard

17   under Rule 8001(c) and Rule 3 -- 8001(a) and Rule 3(c).  In

18   fact there is reason why this wasn't changed because in a

19   normal case you have two sides -- I mean you might have some,

20   you know, third party defendant, et cetera, but it's -- it's

21   pretty defined.  In a bankruptcy case and in this bankruptcy

22   case, in particular, we have thousands of interested parties.

23   And, therefore, not changing the rules for bankruptcy appeals,

24   you know, is understandable, given that we need the ability to

25   understand exactly who is appealing from this order, what

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                39

1    rights, what claims they have, what standing they have and

2    therefore the rule is stricter.

3         And in fact in the -- I think it's the Dudley case,

4    which we cite out of the Ninth Circuit, it's a 2001 case, it

5    specifically says, again, that 8001 is different than 3(c) and

6    that it requires the -- them to contain the names of all

7    parties to the judgment and citing back again to the Torres

8    and the stricter standard.

9         JUDGE PRO:  Just let me make sure I understand.  If

10   this were the only issue in front of us, even if we accepted

11   everything you say, there would still be a pending appeal at

12   least as to certain parties.

13        MS. JARVIS:  Right.  Only to certain parties.

14        JUDGE PRO:  All right.  All right.

15        MS. JARVIS:  Yeah.  But it would be then a very

16   discreet number of parties --

17

18        JUDGE PRO:  Okay.

19        MS. JARVIS:  -- rather than parties we can't

20   identify and don't know.  And in fact there's even some

21   confusion between, you know, the time that the objections were

22   filed through the confirmation hearing and today, as to how

23   many and what parties we're dealing with.

24        In addition, in this case, the debtor. when they

25   dealt with lenders, dealt with them under a certain vesting

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants       2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          40

1    name, and what that is, is a name where they invested under.

2    So, for instance --

3             JUDGE PRO:  I don't want to belabor it, but if that

4    were the finding, would the proper remedy be then to allow for

5    a second amended or third amended notice of appeal?

6             MS. JARVIS:  Under the Torres case it's

7    jurisdictional.  It's jurisdictional.  And if you do not

8    proper comply with it, it's as if you never appealed at all.

9    So the proper remedy would be those that were named, properly

10   named, are appellants; those that were not, are not.

11            And even -- even taking the more liberal standard,

12   which we don't think applies, it does -- you have to have --

13   it has to be objectively clear that the party intended to

14   appeal and that they intended it to go forward and that you

15   can -- there are certain fairness concerns with it.  And,

16   again, we can't even identify who all these parties are.  When

17   I started talking about the vesting names, there's certain

18   names in which these parties invested into USA Commercial

19   Mortgage.  They might be, for instance, a pension plan or

20   they might be as an individual or a trust or whatever.  And

21   the -- even the -- taking the 2019 statement that was -- that

22   is not sufficient and was not filed with the notice of

23   appeal, these aren't vesting names.  We can't even figure out

24   who's on there.  And we don't know what interest they're in.

25   Whether they're -- they appear not even to be all Direct

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

41

1   Lenders, and these issues relate solely to Direct Lenders.

2   Some of them appear to be fund members.  Solely fund members.

3   But it is insufficient even on a much lesser [sic] standard.

4   And this is -- it is jurisdictional.  When that is not

5   properly done, because 8001(a) requires -- for a notice of

6   appeal to be sufficient it has to name the parties that have

7   appealed.

8          JUDGE JONES:  Now that last argument seems to me to

9   be a little bit, again, hyper-technical.  If they just simply

10  used the wrong name so that you have some confusion in

11  identifying them consistent with the list of vested owners,

12  that seems to me -- while we might have discretion, it would

13  really be an abuse if discretion if we dismiss an appeal as to

14  a particular party who in fact is listed, but just listed not

15  exactly the same as the vesting name --

16         MS. JARVIS:  Right.  And I was arguing that under

17  3(c) which is the more liberal standard.  You know, 8001 is a

18  stricter standard and actually requires the names, and we

19  don't -- we don't have the names.  They were not filed with

20  the notice of appeal.  And even with respect to the 2019

21  statement, it's not a sufficient 2019 statement.  You know,

22  you can see from the progression of people that are

23  represented that we have no idea, I mean, even how many people

24  are, you know, part of this group.  And that's not a

25  sufficient notice of appeal under 8001(a).  And that is

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    42

1   jurisdictional.

2            As I said, the remedy to that would be to strike all

3   those appellants that were not properly named.

4            Thank you, Your Honors.

5            JUDGE PRO:  Thank you, counsel.

6            Mr. Smith, were you going to start, or?

7            MR. SMITH:  Yes.

8                    (Pause in the proceedings)

9            MR. SMITH:  Your Honor, first I wanted to make some

10  comments on the emergency nature of the motion.  Not much we

11  can do to change that today because we are here, but it seems

12  to me that it really isn't an emergency in the sense that

13  since -- the appeal was filed January 16th.  Here we are a

14  month later.  It was done on extremely shortened time,

15  extremely shortened briefing schedule.  It seems to me this is

16  something that they have known about for -- prior to January

17  16th as well, and could've been raised immediately.  And

18  certainly we'd have been before this Court on a motion to

19  expunge the stay pending appeal.

20           That issue wasn't raised at that time.  So, to a

21  certain extent, I think the emergency was manufactured by the

22  debtors waiting 'till the last minute to bring this up.

23           I also thought it was important that the

24  representations that there was no interest in Silver Point as

25  another bidder, significant because it's not true.  And some

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          43

1 of these statements I agree are without evidentiary support,

2 not on the debtor's side and perhaps not on my side either,

3 but I think the Court should be aware of them.

4        There's also no evidence that Compass is going to

5 back out on February 16th. We don't really know what's going

6 to happen. So I think to the extent that it is an emergency,

7 it really hasn't been demonstrated by the debtor why it is.

8 And so I only point that out because to -- we've gone sort of

9 beyond just surface issues as to why this appeal may need to

10 be dismissed. We've talked a lot about the merits of the

11 appeal. It's fairly complicated. I don't think it's

12 appropriate that it be dealt with at this emergency --

13        JUDGE PRO: There's a lot we don't know, Mr. Smith.

14        MR. SMITH: Right.

15        JUDGE PRO: Or at least a lot I don't know, to be

16 sure. But the fact remains that the -- what is before us,

17 indicates the sale's to take place on the 16th. It is what it

18 is.

19        MR. SMITH: Right.

20        JUDGE PRO: And we don't have evidence that there is

21 some forbearance. We have, as Judge Jones quite aptly pointed

22 out, the very practical wrinkle [sic], and no matter what

23 happens here, a notice of appeal can be filed.

24        MR. SMITH: Right.

25        JUDGE PRO: And there's gonna be something pending

2:07-CV-0160-RCJ-GWF     Debt Acquisition, Appellants    2/14/07    Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com    44

1   for a period of time.

2          MR. SMITH:  Well, and also I just wanted to point

3   out, and I'm not gonna spend a lot of time on that because we

4   are here, we are arguing it, and I'm prepared to go forward.

5          But in the transcript on December 20th, Compass

6   stated on page 39 that they waived the formality of a

7   confirmation order and they'd be willing to rely on a 363(m)

8   sale, which is consistent with what Judge Jones mentioned.

9          The part of it that I disagree with Judge Jones is

10  that that forecloses any rights the Direct Lender to argue

11  that their contracts have been modified of a result of the

12  sale to Compass.  I mean that's really the primary issue.

13         I appreciate the fact that there's some right

14  preserved under the surviving Section 3 right that they call

15  it, that under certain circumstances the Direct Lenders can

16  say if there was -- if there was a matured default on the

17  petition date they can raise that, there's time limits,

18  there's a procedure.

19         Our position all along has been -- and the way this

20  started out in Bankruptcy Court is these contracts are being

21  sold, period.  And there is no authority that you can take a

22  contract and in a sale change the contract and bind the other

23  contracting parties to that change.  That's really our

24  problem.  I mean that's really the basis of our appeal.

25         You take the servicing agreement, you start

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                           45

1   modifying it and say we can raise this issues, you can't raise

2   these issues, you can't raise other default issues, you don't

3   have the right any longer, under Section 8, simply to

4   terminate the servicing agreement, and other aspects that are

5   really under the merits of the appeal.  But the basic

6   underlying thrust of it is, you can't change the agreement

7   that's being sold.

8          JUDGE JONES:  And you're contending in your appeal

9   that that's exactly what this order does?

10         MR. SMITH:  Correct.  And a lot of the problem

11  occurs --

12         JUDGE JONES:  Be just a little bit more specific.

13  How does it modify the contract?

14         MR. SMITH:  Well, for example, that's one.  Section

15  8 allows Direct Lenders to terminate the contract.

16         JUDGE JONES:  If there's a default.

17         MR. SMITH:  Right.  And it's broader than Section 3.

18  There's also other rights that Direct Lender --

19         JUDGE JONES:  But the order says without modifying

20  the contract.  So don't you have the right, even under the

21  language of the order, to continue to assert a right of

22  termination for a prior default?

23         MR. SMITH:  I hope that's true.

24         JUDGE JONES:  Mm-hmm.

25         MR. SMITH:  That's not the way I read it.  The way I

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    46

1    read it, under paragraph 14 of the order, is that it's free

2    and clear of everything else, except for that surviving right,

3    and that's the problem we have.

4            And there's other issues that we're concerned about,

5    interpretation of the contract issues that really aren't

6    before the Court today.  But I mean, in essence, those are

7    merits of the appeal issues.  But, in essence, our position is

8    you can't change anything.  Nothing.

9            I mean, and that's one of the problems you get when

10   you say -- which I think is an argument of convenience because

11   originally you know that the committee for this group of

12   people is called the Executory Contract Committee.  Everyone

13   knew it was an executory contract.  At some point in time the

14   decision was made, you can't have an executory contract

15   because it can't be assumed and assigned because it can't be

16   cured, so let's not call it an executory contract anymore.

17   All of a sudden the committee's name change, it became the

18   Direct Lender's Committee.

19           The problem with doing it in that manner, is all the

20   procedural safeguards that's normally available for selling an

21   executory -- for selling an executory contract are gone.  You

22   don't have to have the purchaser give adequate assurance of

23   future performance.  You don't have to cure.

24           And then you go a step farther and you say, plus,

25   we're gonna change it.  We're gonna put some restrictions on

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          47

1   what can be raised and what can't be raised by the other

2   contracting party.  That could never happen when you're

3   assuming and assigning an executory contract.  And we're gonna

4   provide procedures for how those matters are addressed in what

5   court and put time limits on it.

6        I think that was beyond the ability of the

7   Bankruptcy Court to do.  And the only reason I bring it up is

8   that you mentioned, Judge Jones, a 363(m) might solve the

9   issue.  Maybe in one respect it would, but I didn't want my

10  silence to mean that I agree with you, that all those

11  appealable issues that we have are gone because of 363(m).

12       So, in any event, Your Honors, and moving along to

13  the merits of what's been raised in this motion.  The first

14  issue, and as I read it in the initial motion was that the

15  appellants do not have standing.  And what I read, which is

16  set forth in page 14 of the original motion, is that the

17  appellants didn't have standing because they were not

18  aggrieved because they did not adequately protect their

19  interest below in appearing and properly raising and

20  preserving objections for appeal.

21       That shocked me slightly.  Didn't, in fact,

22  understand it.  Have read what the appellees, the debtors call

23  these [sic] persons aggrieved as directly and adversely

24  effected pecuniarily by an order of the Bankruptcy Court.

25  That is a very limited definition of persons aggrieved, it's

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        48

1   not the only definition.

2          I cited the other -- one of the other definitions in

3   the PRTC, Ninth Circuit case, which is a person aggrieved as

4   one whose rights are diminished, property rights are

5   diminished, burdens are increased, or it detrimentally effects

6   their rights.

7          So I certainly think that the Direct Lenders fall

8   within the definition of persons aggrieved.  Certainly if they

9   weren't aggrieved I wouldn't be here.  And they're aggrieved

10  because, as was explained by Ms. Jarvis, these payments that

11  occurred post-petition, which have been loosely referred to

12  prepaid interest, but really they're payments by borrowers

13  directed to the Direct Lenders that were diverted by the

14  debtor and held.  They're the normal payments on the loans.

15  And so what the debtor said is, well, you improperly received

16  payments pre-petition, so we're gonna take these.

17         Now if you look at the course of action, how this

18  occurred, first there was a hold back order by Judge Riegle.

19  And the hold back was without prejudice of anyone's rights.

20  Just gonna hold it and later see.  And then the initial plan

21  said we're gonna preserve all those rights.  The first plan

22  said that, the second plan said that.  Finally we get to the

23  third plan and they say, you know what, you give up all

24  segregated funds, and that's a compromise.  You didn't

25  negotiate it.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants    2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        49

```
 1          JUDGE JONES:  I have some problem with your
 2  argument.  It's really a side point.  It's not the issue in
 3  front of us today.  It goes to the merits of the appeal.
 4          MR. SMITH:  Sure.
 5          JUDGE JONES:  But I have some problem --
 6          MR. SMITH:  Okay.
 7          JUDGE JONES:  -- with your argument.  You know, they
 8  certainly -- it wasn't -- it wasn't theft.  They had the right
 9  under the servicing agreements to receive those payments, to
10  collect them in the first instance.
11          MR. SMITH:  Right.
12          JUDGE JONES:  And it's -- and I'm not quite sure you
13  could even call it embezzlement, having properly received it,
14  diverting them.  They had improperly paid advanced funds to
15  these lenders.
16          MR. SMITH:  From an unknown source.
17          JUDGE JONES:  From -- let's assume from their own
18  monies.
19          MR. SMITH:  But that's an assumption you --
20          JUDGE JONES:  And why would they not have the right
21  simply to not make the next payment because they already
22  advanced payments that they should not have, out of other
23  people's monies, out of their own monies, one or the other.
24          MR. SMITH:  Well --
25          JUDGE JONES:  So at any rate, I'm having some
```

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

50

1  difficulty with your argument.

2          MR. SMITH:  Yeah, and that's a good point, Your

3  Honor.  And what that really underscores is, why this has to

4  be brought up in an adversary proceeding, and why you don't

5  just get to say in a plan, you know what, we're taking it

6  back.  And if --

7          JUDGE JONES:  You certainly have to have an

8  adversary proceeding if the money is in your hot hands --

9          MR. SMITH:  Well --

10          JUDGE JONES:  -- and I want to get it.  But if it's

11  in my hands and I've got a right to withhold, I'm not sure why

12  I have to have an adversary proceeding to --

13          MR. SMITH:  Well --

14          JUDGE JONES:  -- declare my right to withhold.

15          MR. SMITH:  -- because, Your Honor, they were only

16  servicers.  They've never had a right to keep the money.  The

17  money only flowed through them.  It belonged --

18          JUDGE JONES:  Nor did they have the right to

19  advance.

20          MR. SMITH:  Well, but see the problem with that is,

21  if -- if you just look --

22          JUDGE JONES:  So speaking about the trust account

23  itself, not qua, the debtor, speaking about the trust account,

24  its liabilities and obligations just in itself.

25          MR. SMITH:  Right.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    51

1          JUDGE JONES:  It got $100 in from somebody else,

2     instead of paying it to somebody else it paid it to you.

3          MR. SMITH:  Right.

4          JUDGE JONES:  And now it gets in the payment that's

5     due you.

6          MR. SMITH:  Okay.

7          JUDGE JONES:  I don't know why in the world it would

8     need an adversary proceeding simply to keep back the $100 that

9     it previously prepaid you unfairly --

10         MR. SMITH:  Well --

11         JUDGE JONES:  -- and withhold it --

12         MR. SMITH:  Well, because it's --

13         JUDGE JONES:  -- to offset it or recoup it.

14         MR. SMITH:  And, again, that's the merits of the

15    appeal issue.

16         JUDGE JONES:  It is.

17         MR. SMITH:  But that's, I believe what the law is

18    under 7001.  I mean if you're gonna take somebody's property,

19    you have to bring an adversary proceeding.

20         JUDGE JONES:  I agree with that.

21         MR. SMITH:  And of course the benefit of that is, I

22    get to raise defenses to all the things that you're saying.

23    And remember how this was all keyed up.  Now this was keyed up

24    as a plan and it was called a compromise.  It was a compromise

25    made by the committee who had no authority to compromise the

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

52

1   rights of the Direct Lenders.  And it wasn't signed off by all

2   the Direct Lenders that supposedly might approve the

3   compromise.  How can it be a compromise?  And the whole thing

4   was kinda massaged together and said, well, you know, it's in

5   the plan, so the people that didn't vote for the compromise

6   are gonna be bound by that provision in the plan.  That's not

7   how a plan works.  The plan binds the rights --

8            JUDGE JONES:  Well, again, we're on a side issue --

9            MR. SMITH:  Yeah.

10           JUDGE JONES:  -- and I don't want to take too much

11  time.

12           MR. SMITH:  Should I move on?

13           JUDGE JONES:  But here's -- here's a potential

14  alternative way to look at it.  The right to receive those

15  payments immediately when they're paid by the lender is a

16  claim, it's a right.

17           MR. SMITH:  Sure.

18           JUDGE JONES:  Potentially it's a post-petition

19  right, but it's a claim.  And when you, lender, --  or when

20  you, servicer, default on it, it produces a claim.  It's my

21  right either in equity or in damages --

22           MR. SMITH:  Right.

23           JUDGE JONES:  -- to claim your -- to make demand

24  that you immediately forward it to me.  And this plan proposed

25  a compromise of that claim.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          53

1          MR. SMITH:  Right.

2          JUDGE JONES:  That is, we're not gonna forward it to

3  you, we're gonna withhold it to recoup from prior prepayments

4  of interest.

5          MR. SMITH:  Right.

6          JUDGE JONES:  And, by gum, 1123 and 1144 say, if a

7  majority in number, and, what, two-thirds in number of claims

8  vote yes, that can be crammed down on anybody who votes no.

9          MR. SMITH:  And generally I agree with that because

10  what you're really cramming down is the treatment of

11  creditors.  But if you're saying we're gonna take property

12  back from a group of 3,000 people or however many in there,

13  we're gonna take it back.  All right?  And it's gonna be

14  determined by the plan.  And if one or two people vote and

15  they're the only people that vote in that class, you all gotta

16  give your property back.  That's the problem I have.

17          And the other -- the other part of it, Your Honor,

18  is that -- I appreciate your comments, I've faced them in

19  Bankruptcy Court.  You know, Judge Riegle said, do you want

20  all your clients sued?  No.  But I think they're entitled to

21  those procedural safeguards.  I mean I cited a case, and I

22  can't recall right now, where exactly the same situation

23  occurred.

24          JUDGE JONES:  But how do you contradict my

25  potential analysis that -- that two-thirds in number and a

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    54

1  majority in amount, have the right to dictate the treatment

2  of their claim, a claim -- a right to receive the payments

3  immediately --

4          MR. SMITH:  Right.

5          JUDGE JONES:  -- as to the entire class?

6          MR. SMITH:  Well, but it's not -- it's not really

7  their right to receive the pay -- well, okay.  I mean that's

8  not --

9          JUDGE JONES:  So your only counter argument is --

10          MR. SMITH:  The claim is --

11          JUDGE JONES:  -- it's not a claim in the definition

12  of the language of the statute.

13          MR. SMITH:  Well, it's post-petition withholding of

14  money.  And I think if you're gonna call it a compromise, you

15  can't play games with that word.  What does a compromise mean?

16  We both agree, we bring it before the Court on 9019.

17          JUDGE JONES:  All right.

18          MR. SMITH:  And that's how it works.

19          JUDGE JONES:  It goes to the merits and all events.

20          MR. SMITH:  Yeah.  I appreciate that.  But it's an

21  interesting argument.

22          The -- back to the aggrieved party.  And as I first

23  read the motion filed by the debtors that these issues had not

24  been raised by the lower court, I looked at it this way.  The

25  comment that we didn't raise factual arguments, really because

2:07-CV-0160-RCJ-GWF     Debt Acquisition, Appellants    2/14/07    Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com    55

1   there were no factual issues in dispute with respect to the
2   objections that were being raised by the Lender Protection
3   Group.  No necessity to raise or to raise factual arguments
4   because that was not the issue.  The issue was legal issues,
5   can they take the segregated funds?  Can they sell the
6   contracts and modify them?  They were all legal issues that
7   did not involve material factual disputes.  And I haven't seen
8   anything in the briefing filed by the debtor of something that
9   it should've raised at that level.  In fact, I'm not aware of
10  anything.
11          So we certainly satisfied the requirement, I think
12  it was in the Commercial Mortgage case which said that a
13  prerequisite to the appeal is that you file an appropriate
14  objection and you appear and argue, and that's exactly what I
15  did.  And so I don't think that the factual evidence argument
16  is significant.  I think within that -- that objection that
17  were --
18          JUDGE JONES:  Now I hear that argument.  That's --
19  it's frankly a very persuasive argument to me.  But one area
20  that I'm not quite sure about is, they say that all of these
21  legal issues, you declare to be legal issues, are predicated
22  upon your having an interest in the commingled funds.
23          MR. SMITH:  Right.
24          JUDGE JONES:  And you just simply did not contest
25  that issue at all.  That is, they were commingled, it was an

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants    2/14/07      Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        56

1    insolvent fund.  You have no tracing right, therefore, you

2    have no interest.  And whether you were raising a purely legal

3    issue or not, you have no interest.

4            MR. SMITH:  Yeah, and I've read that several times

5    and I have -- I'm baffled by that.

6            Now clearly pre-petition, the account was

7    commingled.  And I'm not -- I mean the issue is that some of

8    the Direct Lenders had diverted principal.  They don't know

9    who diverted it, but I don't think it's necessary to solve

10   that commingling issue in order to raise that argument, and I

11   don't think that's what's being argued by the -- by the

12   debtor.

13           Post-petition, paying -- making the payments that

14   should go to the Direct Lender, called the segregated funds,

15   are not commingled.  The representations are every penny is

16   accounted for.  That's the money that's of concern that's

17   being taken by the debtor from the Direct Lenders.

18           So the commingling argument, I didn't -- I didn't

19   track on how that raises -- that creates a problem for the

20   debtor.  And if Your Honor can -- has more questions on that,

21   let me know, but I -- that's the way I read it.  So I didn't

22   see that that foreclosed any argument that we raised.

23           What I saw last night, and actually I didn't see it

24   'till 4:00 in the morning because I wasn't sure when the brief

25   was filed.  But the reply brief, in my mind, raised some new

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                           57

1  issues, which, again, I feel slightly prejudice by because I

2  haven't had a chance to respond in writing.

3         But as I read the reply brief is that -- that the

4  issue of do we know whether any of the peoples in -- any

5  people in The Lender Protection Group are actually people that

6  have diverted principal or prepaid interest issues.  At least

7  that's the way I read it.

8         JUDGE PRO:  First we have to know who the persons in

9  The Lender --

10        MR. SMITH:  Right.

11        JUDGE PRO:  -- Protection Group are.  Part of the

12  argument is that this is simply not clear and --

13        MR. SMITH:  Sure.

14        JUDGE PRO:  -- that there's a failure to comply with

15  the requirements of 8001.

16        MR. SMITH:  Yeah.  And interestingly along that

17  line, Your Honor, is that at the Bankruptcy Court level there

18  was arguments that Mr. Milanowski did not have standing to

19  raise the arguments that he raised.  And you, of course this

20  Court addressed those I guess last week.

21        Those arguments were not raised at the Bankruptcy

22  Court level.  There was never an objection raised that The

23  Lender Protection Group does not have standing because

24  they're not aggrieved people.  They aren't people with

25  diverted principal.  They aren't people with prepaid I

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                                    58

1  interest.  They aren't people who are parties to these
2  servicing agreements.
3          So the first problem I have is, I don't think it
4  belongs here for the first time on appeal because it wasn't
5  raised in the lower court.  The reason it wasn't raised in the
6  lower court is because we filed 2019 statements listing the
7  name and address of each and every member of the LPG Group,
8  and we amended it as additional members were included.
9          The timing of that amendment, I mean I don't see the
10 significance.  It occurred sometime during the confirmation
11 hearings during the course of my oral argument in which I
12 argued the very objections that were raised in the pleading.
13 To say that some of that group was excluded because it wasn't
14 raised earlier I think is incorrect.  It was raised by the
15 time the arguments were made, the entire group should be
16 included.
17         So they had the names and addresses of all the
18 people, but they didn't raise at the Bankruptcy Court level
19 that this isn't enough.  And the reason they didn't raise it
20 wasn't enough is because they had detailed information on
21 these people.  There are schedules and statements filed,
22 prepared by the Mesereau Group, detailed after extensive
23 investigation.  I think they're found at Docket 784, which is
24 a list of all the unsecured creditors, including people in our
25 group.  And second -- and Docket number 682, I believe, which

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          59

1    includes a list of the people who had prepaid interest.

2          So clearly, and also clearly, all of our group,

3    they're all Direct Lenders, they all have issues with the

4    servicing contracts.  The reason why the debtor didn't raise

5    this at the Bankruptcy Court level was because it wasn't an

6    issue.  They knew that our people were aggrieved.  The

7    disclosure statement itself says there are people aggrieved

8    with this situation.  They are Direct Lenders.  I just

9    represented about 350 of them.

10          And so this is, as I see it, an agreement -- or a

11   new issue raised 9:00 p.m. last night in the reply brief that

12   I didn't get to properly respond to, but it's not a real

13   issue.  We are aggrieved persons.  Even in the oral arguments

14   before Judge Riegle, we had discussions about what people I

15   represented.  I represented that I had people that had prepaid

16   interest issues.  So these are not a surprise.  It was brought

17   up at the Bankruptcy Court level and not objected to, and it

18   does not belong here at this time for the first time on

19   appeal.

20          Now the final issue as to the -- whether the notice

21   of appeal was proper.  And we were very careful about this and

22   read the rules carefully.  Rule 8001(a)(2) says:

23          "It shall contain the names of all parties to the

24          judgment, order, or decree appealed from, and the name,

25          address, and telephone number of their respective

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

60

1        attorney."

2            All of the pleadings in the Bankruptcy Court said

3    LPG.  That is the name that's on the pleadings.  I think we

4    named the party to the judgment, which is LPG.

5            Now out of caution we specifically incorporated in

6    the notice of appeal the 2019 statement filed in the

7    Bankruptcy Court.  I think -- as I go through here, I think

8    that that is sufficient for notice of appeal purposes under

9    Rule 8001.  Clearly the appellees knew who we were and never

10   objected previously that they didn't know who the members of

11   the LPG Group [sic].

12           Now you mention some cases, Your Honor.  There were

13   some cases referred to.  I don't think in any way the three

14   main cases referenced in the pleading support the debtor's

15   argument that the appeal is faulty, the notice of appeal is

16   faulty.

17           The _Torres_ case is really a Rule 3(c) case, FRAP

18   3(c).  And really what that was was a class action, Your

19   Honor.  Judge Jones asked about what happened in that case, it

20   was a class action.  Not all the class members were

21   identified, an appeal was filed and it named a couple people

22   and said, et al.  And then the appeal was taken by some person

23   that was never named in any of the matters at the trial court

24   level.  And of course the U.S. Supreme Court said that's not

25   good because you haven't even ever named that person.  That is

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                61

1   not what occurred here.

2          The _Torres_ court went on to reference Rule 3(c),

3   which states at 3(c)(1)(A), that the notice must specify the

4   party or parties taking appeal by naming each one in the

5   caption or body of the notice.  But the attorney representing

6   more than one party may describe these with such terms as all

7   plaintiffs, the defendants, the plaintiff's ABC, et al., or

8   defendant's except X.  That term "such as" is not -- doesn't

9   say exclusively only in this manner, it's meant to give some

10  examples.  And I think by saying LPG, we're clearly

11  identifying the group of people.

12         JUDGE JONES:  Does 8001(c) give that same latitude?

13         MR. SMITH:  No.  But to go on, Your Honor, 8000(c)

14  just says the parties to the judgment, which is why the LPG

15  was named.  3(c) -- FRAP 3(c) is slightly different.  I think

16  that's exactly what we did.

17         But I just wanted to point out that the _Torres_

18  court, U.S. Supreme Court said:

19         "The specificity requirement of Rule 3(c) is met by

20     some designation that gives fair notice of the specific

21     individual or identity seeking to appeal."  That's found

22     on page 318.

23         I think this was clearly fair notice to these

24  people who had dealt with the Lender's Protection Group for

25  months.

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          62