1        And the other cases, Your Honor, interpreting <u>Torres</u>

2   that were cited in the brief, the <u>Cascade</u> case.  The issue was

3   not the same as whether the order was properly identified in

4   the notice of appeal.  Had nothing to do with the parties.

5   But the court went on to say that the importance is giving

6   fair notice of the appeal, and went on to say that the

7   specificity requirement in Rule 8001 is less than FRAP 3(c).

8        And finally in the <u>Milton</u> case, some connection with

9   the case here, it's a Fifth Circuit 1991 case.  It concerns

10  sanctions that were issued against an attorney and his client,

11  and the appeal only named the client.  And there was a motion

12  to dismiss the appeal because it didn't name the attorney.

13  And the court went on to say, the Fifth Circuit said, again,

14  8001 is less stringent than 3(c), it's less specific.

15       It held that the parties referred -- parties, the

16  term parties referred to litigants, and so the attorney didn't

17  need to be specifically named.  And went on to say the purpose

18  of the rule is to give fair notice to the other parties of

19  who's appealing.

20       I think there's a reason why Rule 8001 is more

21  liberal.  In Bankruptcy Court we don't deal with the same

22  issues that occur in regular litigation in District Court.  In

23  Bankruptcy Court we have multiple parties, multiple interests.

24  We have -- we allow groups under 2019 to be represented, we

25  have committees.  So it makes sense that the rule under 8001

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        63

1  would not be as stringent as under 3(c), which is exactly what

2  these cases hold.

3       So, finally, to say that in any way these people

4  were prejudiced -- the debtors were prejudiced by this notice

5  of appeal I think is in error.  It was a proper notice.  I

6  think if anything it went overboard.  I probably could've just

7  said the LPG, but it said referred specifically to the 2019

8  statements, which are part of the record, which identify the

9  name and address of each and every member of the group.  So

10 for that reason I think the notice of appeal was proper.

11      Any questions, Your Honor?

12      JUDGE JONES:  Thank you, Mr. Smith.

13      MR. SMITH:  All right.

14      JUDGE PRO:  Thank you, Mr. Smith.

15      Ms. Chubb.

16      MS. CHUBB:  Thank you.  I'd like to incorporate Mr.

17 Smith's statements.  And we're [sic] all the appellants, but I

18 just want to make the record clear.

19      I'm gonna try not to be repetitive or to get into

20 the issues that are truly issues on appeal, but it may be

21 difficult because we all seem to digress here.

22      I'm really concerned that we're here today on this

23 emergency motion, which motion says, "that there's

24      irreparable harm in as much as the appeal has the effect

25      of delaying the finality of the confirmation order, which

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                64

1    in turn may -- not will -- may jeopardize the 67-million-

2    dollar asset sale."

3         And they say specifically:

4         "A condition of the purchaser's obligation to close

5    the sale is that the plan has been confirmed by a final

6    order of the Bankruptcy Court."

7         And I made people run around this morning madly,

8    after I got here, so I could have this transcript where Mr.

9    Davis, who represents Compass, specifically says to Judge

10   Riegle:

11        "Your Honor, you ask whether or not we would be

12        willing to waive the formality of the confirmation order.

13        The answer is yes, since Your Honor has already granted

14        us protection under" -- it says 373 but it should be 363.

15        The entire basis for bringing us here this morning

16   is -- is wrong.  We don't need a confirmation order for

17   Compass to close.  And Compass has waived that condition,

18   therefore, the debtors here are not at risk.  I understand

19   that they would like to get rid of our appeal, but

20   representing to the Court that it is necessary to have the

21   confirmation order because of Compass is just not the case.

22        And then we find out this morning when we get here,

23   this happens so many times in the lower court.  Last night

24   -- or this morning there's a motion filed to allow the sale

25   to close without Compass being licensed.  I was advised, and

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07         Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                      65

1  you could confirm this with the debtor, that USA or Mesereau

2  or maybe Mr. Allison will continue to service.  They're gonna

3  close.  There is no emergency here.  That sale is gonna

4  happen, and it isn't dependent upon a confirmation order.

5      Now as to whether my clients are properly before the

6  Court, certainly Mojave and Valtus [phonetic] and the Anderson

7  Trusts are.  And the reference to the Keyo [phonetic] family

8  members was as a matter of convenience.  We have filed 2019

9  statements, we've listed every person in the Keyo family,

10 every entity that's part of the Keyo family.  We've listed

11 every loan.  Moreover the debtors have every record of every

12 loan.  They know exactly who they're dealing with.  And I have

13 been in this bankruptcy case since the inception of the case.

14 This issue has never, ever been raised.

15     The whole idea of having the name on there is so the

16 appellee is aware of who's taking appeal.  They are fully

17 advised as to who's taking that appeal.  And we referred to

18 the 2019 statement.

19     Moreover, it doesn't do them any good this morning,

20 unless the entire appeal is dismissed, and that is the

21 objective.  But we have properly -- exactly named parties, and

22 I'd submit that the Keyos are appropriately named and

23 sufficiently named.

24     And we have legal issues because my clients' filed

25 proofs of claim.  My -- some of my clients filed an adversary

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants     2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                              66

1  before the date to object to the confirmation order.  We

2  raised the legal issues, and the legal issues are those issues

3  to be decided on appeal.  We didn't bring in evidence because

4  we were talking about legal issues.  You can't -- you know,

5  you cannot -- let me just try and address your question that's

6  a little to the side.  You say why can't they just keep the

7  money if they paid it out before?  Because we didn't have the

8  right to assert our pre-petition setoffs.

9          I have one couple who got prepaid interest of about

10 -- around a million dollars that was paid out, and that money

11 has been withheld and that's -- that money is in the

12 segregated account where there's no commingling.  And it's

13 very confusing I think to you, since you're new to this, to

14 know about what accounts are commingled and what aren't.

15 Post-petition, there was no commingling.

16         The lower court allowed monies to be held there,

17 that represented an amount equal to the monies that were paid

18 out.  But those monies are easily traced.  We know exactly who

19 that money belongs to.  But my clients also, out of the

20 commingled funds, had about a million dollars of their

21 principal diverted.

22         So under Section 553 we get to set off the pre-

23 petition claim, that is the money in prepaid interest that

24 they'd paid us, against the money that was stolen, the un-

25 remitted principal.  We filed an adversary asserting those

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                         67

1    rights.  We raised those rights as part of the objection to

2    the plan, and those are the rights that we're trying to

3    preserve.

4              And we are aggrieved because without any adversary,

5    without any hearing, without those issues being addressed,

6    except for the judge to say, no, you're not entitled to them,

7    we didn't get any recourse.  We got no opportunity for a

8    setoff.  Judge Riegle explained that it would be inequitable

9    because maybe clients who had unremitted principal would get

10   more, but that's always the case.  If you have two creditors

11   in a case and one has a setoff and one doesn't, one person

12   gets more.  I mean otherwise 553 wouldn't be in the code.

13             So we are aggrieved, we are named, we have legal

14   issues.  We didn't have to come in and provide any evidence,

15   and we're here on appeal.  And today's issues are just do we

16   get an emergency dismissal because we didn't name or we didn't

17   bring in evidence?  That can't be the case.

18             We're here as aggrieved people, we've filed proofs

19   of claim, they've listed us as creditors, we've asked for

20   setoff, we filed an adversary.  We are not getting any of

21   those rights, and we believe that that's just wrong, and those

22   are the issues that need to be addressed on the appeal.

23             JUDGE PRO:  One question, with regard to the

24   existence or nonexistence of an emergency.

25             MS. CHUBB:  Mm-hmm.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    68

1          JUDGE PRO:  Is it your position then that February

2    16th, two day hence, what is pending in the form of an appeal

3    in this Court at this time, doesn't impact the sale on the

4    16th?

5          MS. CHUBB:  I'm saying that Compass cannot -- cannot

6    say they can't close because there is no confirmed order.

7    They may -- whatever our appeal rights are, they are, and

8    we're stuck with whatever we're stuck with, based on the 363

9    sale.  Those are all issues that aren't here today.

10         JUDGE PRO:  And they can't back out on the 16th

11   because of that?

12         MS. CHUBB:  I'm saying they can't, because they

13   waived it in the record and they have to close.  If they're

14   gonna close, they're gonna close.  And now apparently they've

15   filed some motion that says, I presume, let us close on

16   different conditions.

17         So being here today is unnecessary.  And dismissing

18   the appellants for these reasons would be, I think, contrary

19   to the -- to Rule 8001 because they absolutely, positively

20   know who they're dealing with.  So that shouldn't be a basis

21   for dismissal.  Our appeal should go forward and this motion

22   should really, really be denied.

23         Thank you.

24         JUDGE PRO:  Thank you.

25         Mr. Kirby, were you going to --

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    69

```
 1            MS. CHUBB:  Thank you, Your Honor.

 2            JUDGE PRO:  I don't -- Mr. Kirby, did you have

 3   something to add?

 4            MS. JARVIS:  I didn't address his -- you know, his

 5   is a separate appeal and I didn't address it, but I can if you

 6   think it would be helpful.  I thought we would finish the

 7   first ones first --

 8            MR. KIRBY:  You're right, she --

 9            JUDGE PRO:  You're right.

10            MS. JARVIS:  -- and then move to that, but --

11            JUDGE PRO:  All right.  You had other argument to

12   present on --

13            MS. JARVIS:  Yeah, right.  I would like to, you

14   know, to --

15            MR. KIRBY:  Your Honor?

16            JUDGE PRO:  Yes.

17            MR. KIRBY:  I have more than five minutes to say

18   about this.  And particularly since I didn't get an adequate

19   opportunity to brief it.

20            JUDGE JONES:  No, he's gonna give you a chance to

21   respond.

22            MR. KIRBY:  So, she's going to --

23            MS. JARVIS:  Right.  No --

24            MR. KIRBY:  -- she's gonna argue her motion and then

25   we're gonna continue and finish the argument over the noon
```

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07         Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                                     70

```
 1   hour is -- we're gonna continue?

 2             JUDGE JONES:  Right.  We're gonna keep going, if

 3   that's okay.

 4             MR. KIRBY:  Very good.

 5             MS. JARVIS:  Yeah.  What I was --

 6             JUDGE PRO:  Right.  We have to because I've got an

 7   MDL case at 2:00 I've got to get to, so.

 8             MR. KIRBY:  Very good.

 9             MS. JARVIS:  What I was just suggesting is that he

10   have his own separate time to argue his appeal.

11             JUDGE PRO:  Well, you're both gonna have an

12   opportunity, sure, yeah.

13             MS. JARVIS:  But that's all I'm saying.

14             And I would just like to reply briefly then to the

15   motion to dismiss on the --

16             JUDGE PRO:  We'll give you a brief opportunity to

17   reply to Ms. Chubb and --

18             MS. JARVIS:  Right.

19             JUDGE PRO:  -- and Mr. Smith --

20             MS. JARVIS:  Right.

21             JUDGE PRO:  -- and then you can make your argument.

22             MR. KIRBY:  Maybe she ought to reply just one single

23   time, Judge, with all due respect to -- do you want her to

24   bounce up and down, let her make --

25             JUDGE PRO:  Well, why not.  That's a good point.
```

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                              71

1  Why don't you go ahead and present your argument that Mr.

2  Kirby can respond to and then we'll let you reply to

3  everything.

4         MS. JARVIS:   Okay.  Let me --

5              (Pause in the proceedings)

6         MS. JARVIS:   With respect to the DAC appeal, there

7  were some, you know, overlapping issues.  There are some

8  different issues.  They obviously don't have an issue with

9  respect to the 8001 appeal, but do have an issue with respect

10 to our primary basis for asking for these motions to dismiss,

11 which is a failure to preserve their rights at the trial

12 court level, which then results in them lacking standing on

13 appeal.

14        The issues on appeal for DACA are simply the issues

15 of whether the loan servicing agreements were properly

16 transferred under 363 as nonexecutory contracts, or whether

17 they were required to be assumed and unremitted principal

18 claims paid as cure amounts, and whether the rights of the

19 Direct Lenders were modified by the confirmation order and

20 whether the compromise was appropriate under the plan.  Let me

21 take each of those separate.

22        With respect to the loan servicing agreements as

23 executory contracts, DACA has not even shown that it is a

24 party to the loan servicing agreements.  If you look at the

25 evidence they submitted below, and unlike The Lender

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          72

1   Protection Group, they actually did submit an affidavit with

2   claims.  They said we have diverted principal claims, which

3   are claims they bought of people that had principal diverted

4   pre-petition or paid to other parties.  And they also said we

5   bought assignments of interests.  But there is no evidence

6   they took an assignment of a loan servicing agreement.

7           And in -- as cited in our reply brief, the

8   evidence, which was presented below in Mr. Allison's

9   declaration, was that typically a loan servicing agreement

10  encompassed all loans by a lender and they averaged three

11  to four loans per investor.  And so, at best, they are

12  derivative with respect to rights in the loan servicing

13  agreement because they simply bought, you know, certain

14  rights of parties to the loan servicing agreement, and,

15  therefore, they have no standing to dispute issues with

16  respect to the loan servicing agreement.

17          Further, as I previously argued, this issue was

18  specifically included in the compromise with the Direct

19  Lenders class, which voted in favor of the plan.  As the Court

20  determined below, these -- all of these parties, including

21  DACA, the LPG, and the Jones Vargas appellants, were given

22  adequate notice and an opportunity for a hearing and did not

23  present any evidence to dispute the compromise or preserve

24  their rights with respect to the compromise.  And, therefore,

25  this issue is -- they have no standing to raise it because

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants       2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          73

1    they did not preserve these rights below.

2              On the modification issue, I think I covered that

3    previously.  This was an accommodation that was offered by

4    Compass to carve out certain rights that was made on the

5    record on -- at the confirmation hearing.  And parties for

6    these appellants were all there.  No one objected to that

7    compromise, and, therefore, there was no objection that was

8    interposed at this concession that was made by -- by Compass

9    on the record.  And consequently, there is no standing to

10   appeal that issue, because there was no objection raised

11   below.

12             The compromise, again, the third issue which is

13   whether this compromise was appropriate, again, that issue was

14   not preserved as the trial court found below.  No evidence was

15   presented to counter the debtor evidence, to show any rights

16   to the prepaid interest at issue.  And having diverted

17   principal claims, which is what they did show, doesn't

18   establish a claim in the prepaid interest, absent tracing, and

19   no evidence of tracing was shown below.  And for these

20   reasons, we would argue that this appeal should be dismissed

21   for lack of standing as well.

22             JUDGE PRO:  Thank you.

23             Now Mr. Kirby.

24             MR. KIRBY:  Your Honor, I apologize for bringing the

25   hardware up here.  I'm not embarrassed to say it.  I haven't

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    74

1  had enough time to brief this appeal and not enough time to

2  prepare for this argument, but I'm gonna do my best.

3          There's no way that this Court can enter a final

4  order on this appeal, and Your Honor, Judge Jones, you know,

5  mentioned that fact.  And if they're not just crying wolf

6  about this problem, then there's no help for them here today

7  by Friday, and that's a fact.

8          And I don't think that it's any business of this

9  Court or anybody standing here to speculate about what Compass

10 might do.  The emergency as being presented to the Court is

11 that we need a final order by Friday.  Well, that's -- that's

12 an impossibility.  And I haven't heard anything in this

13 argument that indicates that it is a possibility.

14         Now I want to go directly to the argument raised in

15 the reply that I wasn't served with and that got filed last

16 night while I was traveling here to appear, and that I got to

17 borrow 15 minutes before I came into the courtroom.  The

18 argument is that Debt Acquisition Company, my client, is not a

19 party to these loan servicing agreements, and, therefore, has

20 no standing to raise any legal issues that relate to the

21 agreements.

22         And the reply itself at page 5 says, and I'm quoting

23 now, that DACA may have a, quote, "derivative interest", end

24 quote, in the loan servicing agreements.  And that term was

25 used again by Ms. Jarvis just now in her argument.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    75

1          The reply doesn't say, and Ms. Jarvis didn't say,

2    that DACA's loan serve -- loan interest that it bought for

3    3.6-million-dollars before this plan was confirmed aren't

4    subject to the terms of the loan servicing agreement.

5          The reply doesn't say, and Ms. Jarvis doesn't say,

6    that DACA isn't bound by the loan servicing agreements.

7          At the time of the confirmation hearing and the

8    record designated by DACA, which isn't at my fingertips of

9    course, indicates, and I don't think Ms. Jarvis is gonna deny,

10   that the debtor was servicing DACA loans prior to and at the

11   time of the confirmation hearing, and retaining servicing

12   fees, which I think has something to do with these loan

13   servicing agreements.

14         And I want to tell the Court or try to tell the

15   Court how important an issue this really is.  And these loan

16   servicing agreements say, among many other things, that the

17   loan servicer as a right to retain, as part of its fee,

18   default interest and late charges collected by the servicer.

19   Now that's -- even in the loans that DACA's involved in,

20   that's millions of dollars.

21         Now if today, yesterday, this debtor, as the loan

22   servicer, collected 4-million-dollars in default interest on

23   one of these loans, a not unrealistic figure to suggest, does

24   DACA's share belong to DACA?  They're gonna say no.  Compass

25   surely is going to say no, they're not even appearing here

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          76

1  today.  So how can you argue that DACA is not effected

2  pecuniarily and directly by the transfer of these loan

3  servicing agreements?

4          If these agreements are breached, the counter

5  parties to the agreements, The Direct Lenders have a right to

6  terminate the agreement and a right to change loan servicers

7  that exist, not only under this agreement, but under the law

8  of the State of Nevada.

9          Now the confirmation order has almost a page, and if

10 you look at the confirmation order, which is part of the

11 volume of exhibits that were submitted to this Court, on page

12 6 of that order, it's almost a full page of conditions and

13 qualifications and changes to that right to change loan

14 servicers under Section 3.  Not the right to terminate under

15 Section 8, that's done away with by the confirmation order,

16 but the right to change loan servicers.  And one of the

17 things that this confirmation order says, among many others,

18 limiting the right to change loan servicers, that's

19 guaranteed by Nevada law, is that neither The Direct Lenders

20 nor any replacement servicer selected by such Direct Lender

21 shall have the right or ability to compromise, subordinate or

22 impair, in any respect, any rights, claims, or interest

23 purchased by Compass from the estates for default interest,

24 late charges, success fees and so forth.

25          So an issue exists under these contracts about who

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                77

1  these millions of dollars in default interests and late

2  charges belong to.  Do they belong to Compass, even if Compass

3  doesn't collect it?  If The Direct Lender compromises in an

4  effort to collect its loan, because we do have the practical

5  problem of collecting the loan from the borrower.  If the

6  Direct Lender compromises those millions of dollars in default

7  interest, does it owe the money back to Compass under this

8  provision of the plan confirmation order that wasn't mentioned

9  in the plan and was just added in to this confirmation order

10  as part of the second so-called compromise?

11          DACA is standing in the shoes of at least --

12  actually it's a lot more since confirmation -- 3.6-million-

13  dollars in Direct Lender interest.

14          Now they're trying to get DACA's appeal dismissed,

15  and there's such a thing as judicial estoppel.  So I'm

16  inviting the Court to ask Ms. Jarvis and ask her specifically,

17  do you contend that DACA is bound by this loan servicing

18  agreement?  Do you contend that -- or that DACA's is not

19  bound?  Do you contend that DACA is not subject to all of

20  these provisions of this confirmation order and of this

21  agreement because it's not a party?  I don't think that's a

22  position that even they dare to take, much less what Compass

23  is going to take when we walk out of this courtroom.  And

24  remember, that if Compass takes a contrary position, the

25  Bankruptcy Court has reserved jurisdiction to try to figure

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                      78

1  this out.  In other words, to try to apply what this plan says

2  to the rights of not only DACA but all of these Direct Lenders

3  vis a vis Compass.

4          And that goes, Your Honors, to the issue that Judge

5  Roberts you -- or Judge Jones, excuse me, I'm sorry -- you

6  raised, which is what about 363(m).  And I want to talk about

7  that for a minute.  I mean it was raised in the context of do

8  we really have an emergency here.  But it's really sort of a

9  preview of the next motion.  I mean if we don't manage to get

10 rid of all these appeals by crying wolf about their final

11 order requirement and their sale that's supposed to close on

12 Friday, and they close the sale, they'll be back before this

13 Court saying now we're gonna make another motion.  We're gonna

14 dismiss these appeals because they're moot under Section

15 363(m).

16         And I've already read to you from the confirmation

17 order how these contracts are modified in their terms by this

18 confirmation order.  But let's make it simpler.  I mean let's

19 say that you have a loan servicing agreement and the servicing

20 agreement calls for a fee of 1 percent.  And you say, well, we

21 need to sell these agreements to get money for the estate to

22 fund litigation.  So what we're gonna do is we're gonna sell

23 these contracts.  Executory, not executory, doesn't matter,

24 we're gonna sell 'em.  But in order to make these more

25 attractive to sell, what do you say we raise the 1 percent to

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                79

1  3 percent.  It's not as ridiculous as it sounds.  It almost

2  happened.  All right?

3          Now can you do that?  In all of these loan servicing

4  parties, can you rewrite their contracts and assign them to

5  somebody else as part of the bankruptcy process?  And then

6  when Compass gets this assignment of these modified contracts,

7  are they able to say, well, you know, that does sound a

8  little funny, but 363(m), whatever the Bankruptcy Court says

9  applies.

10          Well, does 360(m) -- 363(m) and all it says is that

11  an appeal of the sale order does not effect the, quote,

12  unquote, "validity of the sale".  Right.  What are they

13  selling?  I mean are all of those issues mooted by 363(m)?

14  Can we change contracts and transfer and assign those

15  contracts and have all of those arguments or all of those

16  issues swept under the rug because of 363(m)?  I think that's

17  a substantial issue on appeal, and it is an issue that is

18  going to survive as a major issue between DACA and all of Mr.

19  Smith's clients and Compass, even if that sale goes forward.

20  And this appeal, under the law of the Ninth Circuit, as I

21  understand it, won't be moot for those -- for those very

22  reasons.

23          Now finally on the compromise.  What is being

24  suggested here is that you really can rewrite these contracts.

25  You can even make it 1 percent to 3 percent if two-thirds of

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com

80

1  the people in the group of people who happen to be counter

2  parties to these contracts agree.  That's a remarkable

3  proposition, and I'm not sure it's correct.

4        I mean these Direct Lenders have claims, many of

5  them monetary claims.  And certainly their rights under these

6  contracts can be classified as claims.  They're not dealt with

7  as such under the plan.  They're not put in a class under the

8  plan, as far as I'm able to tell.

9        But does calling them claims mean that two-thirds of

10  the people in a like class of creditors can agree to amend the

11  contract for the rest of the counter parties?  These are third

12  parties.  They are Direct Lenders whose loans are being

13  serviced by this debtor.  And we contend, and it's going to be

14  an issue on this appeal, regardless of whether this sale

15  closes, that they cannot.

16        So for this Court to entertain these summary

17  proceedings where, and, again, I'm not ashamed to say it, I

18  don't think that the appellants here have been given a fair

19  chance to brief these issues.  To dismiss these appeals is

20  uncalled for.  And certainly, if any part of these appeals

21  survive, it is I think imprudent of this Court, as an

22  appellate court to dismiss any of them, including mine.

23        Thank you.

24        JUDGE PRO:  Thank you, counsel.

25        Ms. Jarvis, we'll now let you reply to all of the

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    81

1  arguments.  And why don't you start with Mr. Kirby's

2  arguments, since that will be freshest in everyone's mind.

3          MS. JARVIS:  Your Honor, with respect to the loan

4  servicing agreements, while they've taken claims under it, you

5  know, they've taken interest under it again.  The loan

6  servicing agreements cover -- you know, the evidence is that

7  they cover an average of three to four loans with an

8  individual investor.

9          Now that does mean that they, you know, I think are

10  bound by it because they took a partial interest in it from,

11  you know, the lender, but the lender themselves are the party

12  to it and they're the party that has the standing to raise

13  those issues, not someone who takes a piece of their interest,

14  which is what we're talking about here.

15          And there is no evidence, again going back to -- all

16  of this goes about what evidence was presented below.  There

17  is no evidence that was presented that they are parties to a

18  loan servicing agreement.  In fact, while this is not in the

19  record because it's happened thereafter, but we have -- and we

20  did file a motion to require them to sign a loan servicing

21  agreement, which they have refused to do to date.  It's an

22  issue that still is up in the air.

23          JUDGE PRO:  I just want to make sure I understand.

24  Is DACA party to -- subject to the loan service agreements --

25          MS. JARVIS:  Okay.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          82

1        JUDGE PRO:  -- under the confirmation order?

2        MS. JARVIS:  I think they are subject to it in the

3 sense that they took a piece of something that the party that

4 is subject to the loan servicing agreement, you know, has.

5 And they can't take that piece and not, you know, be governed

6 by the same rules.

7        But as far as that loan servicing agreement itself

8 and what happens with that contract, that -- the standing to

9 deal with that is in the party -- is the party to the loan

10 servicing agreement that covers an average of three to four

11 loans, as the evidence was presented below.  And there is no

12 evidence to show that they are a party, you know, meaning the

13 party that controls the loans -- any of the loan servicing

14 agreements.  And, therefore, because that evidence is lacking,

15 they lack standing to raise this issue on appeal.

16        In addition, Your Honor, with respect to again to

17 the compromise, we go back to this prepaid interest, these

18 funds held by the debtor.  All of these parties, none of them

19 have presented any evidence to show that they have any

20 specific claim in those funds.  And without presenting any

21 evidence below that they have any claim in that funds, they

22 lack standing to raise that issue on appeal.  So, no evidence

23 was presented whatsoever with respect to those funds.  And,

24 therefore, we believe that is, you know, a lack of standing.

25        Turning to the appeal of the Lender Protection

2:07-CV-0160-RCJ-GWF    Debt Acquisition, Appellants    2/14/07    Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com    83

1    Group, you know, they -- again going back to the record --

2    they presented no evidence below that they had any interest in

3    these funds that they are disputing, or any claims that would

4    give them an interest in that -- in disputing.  I mean Mr.

5    Smith says we all know that all my -- my parties have claims

6    in these funds.  How do we know that?  We don't know that

7    because no evidence was presented below.  And when no evidence

8    was presented below to show that there is some claim that they

9    are pursuing in the trial court, they lack standing to pursue

10   that on appeal.

11             In fact, Mr. Smith admitted in the confirmation

12   hearing that he had different claims.  If I read from the

13   transcript on page 84, the transcript of December 19th, the

14   Court says:

15             "Okay, let me ask you the next question.  You

16        represent people who had diverted principal, correct?

17             "Mr. Smith:  Correct.

18             "The Court:  How did they, since their principal was

19        used to pay some of your other clients?

20             "Mr. Smith:  Right.

21             "The Court:  (A), how is that not a conflict, and

22        (B), how do the people whose money was diverted get that

23        money back?"

24             We don't -- he has not presented evidence to show

25   that they have interest in any of these issues that they've

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants      2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    84

1    raised on appeal, and that creates a lack of standing where

2    that evidence was not presented below.

3         In addition, as is pointed out by the Court and

4    admitted by Mr. Smith, they're even conflicting interests

5    among, you know, his group.  But that evidence is lacking and

6    that evidence results in a lack of standing.

7         The -- these appellants simply showed up and threw

8    out hypothetical problems.  Some creditors -- some of their

9    clients might have problems with X, Y, and Z issues in the

10   plan.  But without the evidence to support that they actually

11   are aggrieved and effected by that plan, they did not properly

12   preserve their issues on below.

13        Let me then finally turn to the issue with respect

14   to the names on the appeal.  And let me review the Torres case

15   and -- I had to go back and refresh my recollection.  I know

16   Your Honor asked me about that.  And let me just review what

17   that says and why that is important.

18        In Torres it was an employment discrimination

19   action, and Torres was one of 16 plaintiffs.  The notice of

20   appeal did not name Torres.  The omission was a clerical

21   error.  The Supreme Court granted cert to determine whether

22   that failure to file a notice of appeal or to include his name

23   in the notice of appeal, presented a jurisdictional bar to the

24   appeal.

25        Now they looked in that case under old Rule 3.  And

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants        2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com        85

1    under that old Rule 3 of the Federal Rules of Appellate

2    Procedure, a notice of appeal was required to, quote, "specify

3    the party taking the appeals".  That term actually is even

4    more loose than 8001, which requires you to, quote, "name the

5    parties that are taking the appeals as part of the appellate

6    notice".

7             So -- and the court in that case found that the

8    failure to specifically name Torres was a jurisdictional bar.

9    And the court did note that while this would seem to be a very

10   draconian result, that is the result of the way the rule is

11   written.

12            Now this is important because while Mr. Smith argued

13   that in the Cascade case the court said -- the Ninth Circuit

14   said that Rule 8001 is less lenient -- or is more lenient than

15   Rule 3.  They were dealing with the actual -- whether you

16   actually have to attach the order.

17            And they recognized the differences between Rule 3

18   and Rule 8001, because they recognized Rule 3 is actually more

19   lenient on having to attach the order that you're appealing

20   from is -- wait -- is -- wait -- is less lenient -- okay.  Now

21   I'm getting mixed up here.

22            Okay, the -- Rule 3 actually is more strict about

23   the order that is -- you know, is less strict about the order

24   that you have to attach than Rule 8001 is.  But it's more

25   lenient in respect to parties that you have to name than Rule

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                              86

1  8001, so the two differs.

2           The court did not say that Rule 8001, you know, was

3  more lenient, it said it only was more lenient with respect to

4  attaching the order.  But it did specify that there was a

5  difference between the naming of the parties between them.

6           And in fact, in a later case, in the Dudley case

7  decided by the Ninth Circuit, they again looked at 8001 on

8  this specific issue, which is how strict is the requirement to

9  name the parties.  And it specifically cited Torres with

10 approval, because although Torres was decided under Rule 3

11 that changed, Rule 8001 did not change.  And they -- that case

12 was then cited with approval, meaning that there is a very

13 strict standard recognized by the Ninth Circuit with naming --

14 including the names of the parties on appeal, and that that is

15 a jurisdictional defect, that if it is not done then the

16 appeal has to be dismissed.

17          Let me finally just address the issue of the

18 emergency.  I think as I told this Court last Friday, we are

19 in the midst of discussions on purchase price adjustments.

20 And those go into, you know, the issue of whether we have some

21 finality in the order because, of course, it give some

22 leverage to the buyer with respect to that.  And, therefore,

23 it is very important that we get some finality, as much

24 finality as we can in these proceedings in order to be able to

25 close this for the highest price possible for these estates

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    87

1  and for returns to creditors.  So there is an emergency now to

2  deal with this, because this is part of the negotiations that

3  are going on.

4          Your Honor did state or suggest that 363(m), you

5  know, would require finality.  And I agree they could close

6  under that.  In the confirmation hearing Mr. Davis, in the

7  context of talking about whether they could close before the

8  end of the year, said we would waive it if we could close

9  before the end of the year.  But they were prevented from

10 doing that because the appellants objected to the Court

11 waiving the stay, the 10 day automatic stay with respect to

12 orders, and, therefore, it was impossible to close.  So that

13 was the context of that discussion which was prevented by --

14 by the parties objecting to shortening that stay.

15          We obviously will argue, you know, what we need to

16 argue with respect to making sure this closes, but we do think

17 it is important that the Court consider and grant these

18 motions to dismiss.

19          I would say that I think Your Honor, Judge Jones

20 suggested that maybe there is also something the Court could

21 do for us now with respect to a finding that our 363(m)

22 finding is final.  And to the extent that the Court would, you

23 know, would make that determination, that obviously would help

24 us as well in this process.

25          Thank you.

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants       2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                          88

1          JUDGE PRO:  Thank you, Ms. Jarvis.

2              (Off-record colloquy of the Judges)

3          JUDGE PRO:  Counsel, we appreciate your argument.

4  What Judge Jones and I just discussed was perhaps we'd take

5  just a few minutes to discuss the matter amongst ourselves,

6  and if you would just stand by, we won't keep you waiting

7  long, and then we'll return.

8          THE CLERK:  All rise.

9      (Court recessed at 12:27:48 p.m. until 12:35:40 p.m.)

10         JUDGE JONES:  Thank you.  Please be seated.

11         We have determined that we should deny the motion.

12 It's not for want of the argument.  One very persuasive at

13 least -- partially persuasive argument to me is the flow of

14 the argument that says they did not contest factually the

15 insolvency.  Number two, the commingling.  Number three, the

16 lack of possibility of tracing, and, therefore, that they had

17 no direct interest in the funds.

18         A little queasy about that argument, however,

19 because clearly implicit in the objection and the arguments on

20 the objection is that they did, in fact, have interest in the

21 segregated post-petition funds at least.

22         And the contrary argument on both these first two

23 issues, prepaid interest and executory contracts that, in fact

24 they were asserting essentially legal questions and legal

25 issues, and there wasn't much further that they could have

2:07-CV-0160-RCJ-GWF        Debt Acquisition, Appellants      2/14/07        Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          89

1  done to sustain their objection in order to preserve standing

2  showing on appeal.

3          With respect to the 8001(c) issue, that one I think

4  we just really need to consider in a normal fashion by an

5  appellate court, and look at the rule, look at the case that

6  you've cited to us and in more leisurely fashion, therefore,

7  a more accurate fashion, give you a ruling on that.

8          We're -- our decision is that we should, based upon

9  this basic analysis, deny the motion at the present time.

10         We will give you a written order that answers

11 specifically the issues raised, whether specific parties are

12 or are not appellants to the case, but that the written order

13 will lay out for you a reason for denying the motion.

14         I think we will not take up your request to opine on

15 the effect of 363(m).  That would be -- I don't think an

16 appropriate response to an orally raised question.  We would

17 leave that for either your motion to dismiss, in which case we

18 would address it, or appeal of course from the issue being

19 presented in the first instance to Judge Riegle.

20         So we will give you a written order.  It will issue

21 in normal course, but we felt we owed you an oral response

22 immediately because of the -- what we both agreed was an

23 emergency -- proper emergency basis for presenting the motion

24 at this time.  Okay?

25         Thank you very much.

---

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants        2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com                    90

1            ATTORNEYS:  Thank you, Your Honor.

2        THE CLERK:  All rise.

3            PROCEEDINGS CONCLUDED AT 12:38:37 P.M.

4                * * * * * * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          91

**CERTIFICATION**

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**1027 S. RAINBOW BLVD., #148**
**LAS VEGAS, NEVADA 89145-6232**
**(702) 373-7457**
**nwtranscripts@msn.com**

_____
FEDERALLY CERTIFIED MANAGER/OWNER

Lori Lutz & Kari Riley_____          2/22/07_____
TRANSCRIBER                                    DATE

2:07-CV-0160-RCJ-GWF          Debt Acquisition, Appellants          2/14/07          Motion

NW TRANSCRIPTS, LLC - Nevada Division
1027 S. Rainbow Blvd., #148
Las Vegas, Nevada 89145-6232
(702) 373-7457 - nwtranscripts@msn.com          92