ELECTRONICALLY FILED 2/28/07

1

2 STUTMAN, TREISTER & GLATT, P.C.        SHEA & CARLYON, LTD.
FRANK A. MEROLA                        JAMES PATRICK SHEA
3 (CA State Bar No. 136934)              (Nevada State Bar No. 000405)
EVE H. KARASIK                         CANDACE C. CARLYON
4 (CA State Bar No. 155356)              (Nevada State Bar No. 002666)
CHRISTINE M. PAJAK                     SHLOMO S. SHERMAN
5 (CA State Bar No. 217173)              (Nevada State Bar No. 009688)
1901 Avenue of the Stars, 12th Floor   228 South Fourth Street, First Floor
6 Los Angeles, California 90067          Las Vegas, Nevada 89101
Telephone:  (310) 228-5600             Telephone:  (702) 471-7432
7 Facsimile:   (310) 228-5788            Facsimile:   (702) 471-7435
Email:  fmerola@stutman.com            Email:   jshea@sheacarlyon.com
8        ekarasik@stutman.com                    ccarlyon@sheacarlyon.com
         cpajak@stutman.com                      ssherman@sheacarlyon.com

9 Counsel for the Official Committee Of Equity Security
Holders Of USA Capital First Trust Deed Fund, LLC
10

11 **UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
12

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>            Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>            Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>            Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>            Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>            Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |
| Affects:<br> ☒ All Debtors<br> ☐ USA Commercial Mortgage Company<br> ☐ USA Capital Realty Advisors, LLC<br> ☐ USA Capital Diversified Trust Deed Fund, LLC<br> ☐ USA Capital First Trust Deed Fund, LLC<br> ☐ USA Securities, LLC | Date:  March 1, 2007<br>Time:  9:30 a.m. |

**OPPOSITION BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC ; AND JOINDER IN SUPPORT OF APPELLEE-DEBTORS' OPPOSITION, TO 'MOTION FOR LIMITED APPELLANTS' STAY PENDING APPEAL'"**

411899v6

1    The Official Committee of Equity Security Holders of USA Capital First Trust

2    Deed Fund, LLC (the "FTDF Committee") appointed in the above-captioned bankruptcy case

3    and an Appellee in the appeal by the self-styled "Lender Protection Group" ("LPG") and "Jones

4    Vargas Direct Lenders" ("JVDL" and, collectively with the LPG, the "Appellants"), hereby

5    submits the following Points and Authorities in Opposition to 'Motion For Limited Appellants'

6    Stay Pending Appeal'" as well as joining in the Opposition filed (or to be filed) by the Debtors

7    (the "Debtors' Opposition").[1]

8        This Joinder and Opposition is based on the annexed Memorandum of Points and

9    Authorities, the Debtors' Opposition, the declarations filed in support of the Debtors' Opposition,

10   and the record in the above-captioned bankruptcy proceedings pending before the Bankruptcy

11   Court, and any evidence to be submitted prior to or at the hearing on the Stay Motion.

12                              Respectfully submitted,

13   Dated:  February 28, 2007        ___/s/ Christine M. Pajak_____
                                       FRANK A. MEROLA (CA State Bar No. 136934),
14                                     EVE H. KARASIK (CA State Bar No. 155356), and
                                       CHRISTINE M. PAJAK (CA State Bar No. 217173),
15                                     STUTMAN, TREISTER & GLATT, P.C.
                                       1901 Avenue of the Stars, 12th Floor
16                                     Los Angeles, CA  90067
                                       Telephone:  (310) 228-5600
17

18                                     and

19
                                       CANDACE C. CARLYON
20                                     Shea & Carlyon, Ltd.
                                       228 South Fourth Street, First Floor
21                                     Las Vegas, NV  89101
                                       Telephone:  (702) 471-7432
22                                     COUNSEL FOR THE
                                       OFFICIAL COMMITTEE OF EQUITY SECURITY
23                                     HOLDERS
                                       OF USA CAPITAL FIRST TRUST DEED FUND, LLC
24

25

26

27   _____

28   [1]  Terms not otherwise defined herein shall have the same meanings ascribed to them in the
         Debtors' Opposition.

411899v6                              2

**POINTS AND AUTHORITIES**

**I.**

**ARGUMENT**

A.      **No Legal Authority Supports the Appellants' Attempt to Seek a "Limited Stay".**

1.      While crafting their request as "limited," the Appellants seek extraordinary relief from this Court.  Appellants no longer seek a stay of the entirety of the Confirmation Order.[2]  Instead, they want to carve it up and ask that the Court prohibit just those parts of the Confirmation Order that are not to their liking.  Despite the fact that the Debtors' creditors, by the requisite majorities, approved the Debtors' Plan in its entirety, the Appellants assert that the Confirmation Order, and, thereby the Debtors' Plan, can be modified on a piecemeal basis through their Stay Motion.  The Appellants cite absolutely no legal authority for their position.

2.      In fact, it appears that the only reported decision to address a similar situation held that a partial stay of the confirmation order was neither "legally appropriate" nor "practical".  See In re Convenience USA, Inc., 290 B.R. 558, 561 (Bankr. M.D.N.C. 2003).  There, the debtor, under its plan of reorganization, obtained court authority to assume and assign 143 store leases.  An aggrieved appellant sought a partial stay of the confirmation order solely as it related to fifteen of these leases.  Finding no legal authority for such a stay, the bankruptcy court held that a limited stay was not warranted.  In making this ruling, the bankruptcy court stated,

> No authority has been cited for this novel relief and the court is satisfied that such a "partial stay" is not legally appropriate or practical in this case.  In fact, it is difficult to conceive of a situation in which such relief would be appropriate because to grant such relief, in effect, is to modify the plan

---

[2]  Appellants previously, and improperly, attempted to bypass the requirement of Fed.R.Bankr.P. 8005, presenting an "emergency" motion for stay pending appeal to the Bankruptcy Appellate Panels of the Ninth Circuit.  The District Court found that such stay was improperly granted, based on the failure to present the motion to the Bankruptcy Court in the first instance, and both this Court and the District Court set aside time to hear that emergency motion on consecutive days.  However, Appellants chose not to pursue the stay motion before this Court.  Now, more than two months after the Confirmation hearing, Appellants for the first time seek a stay in the proper forum.

of reorganization that was submitted to the creditors and other parties in interest, who voted to approve the plan submitted to them, and not a plan subsequently tailored to suit a disgruntled appellant.

Id.

3.      Similarly, here, the Appellants seek to improperly modify the Plan. The Appellants, not satisfied with the compromises in the Plan, seek to unravel the Plan by requesting that the Segregated Funds not be distributed. While the Appellants would certainly prefer that the parts of the Plan that are favorable to them proceed unhindered regardless of whether the Segregated Funds are distributed, it is simply impossible for the Debtors to move forward on this basis. The Debtors' Plan was approved as a "package deal" and the deal cannot be consummated if one part remains in doubt. In fact, the Plan may not become effective if the portions of it that the Appellants seek to be "stayed" are not promptly implemented.

4.      Further, the ability of the Debtors to continue to make distributions to Appellants and other parties in interest is premised upon the Plan becoming effective, which includes intertwined releases and compromises that cannot be implemented on a piecemeal basis. Among these compromises are a waiver of claims for surcharge and recharacterization, as well as a two-year moratorium on actions to recover erroneous overpayments to Direct Lenders. As these compromises could now be thrown into doubt through the issuance of a stay and pending appeal, no distributions could be made under the Plan until finality had been reached on these issues. Thus, contrary to the Appellants' assertions, they cannot seek a stay that would affect only some, not all, distributions under the Plan (including the future distributions to the Appellants). Accordingly, the Appellants' request for a limited stay should be denied.

**B.      Appellants Have Failed To Meet Their Burden To Show That A Stay Pending Appeal Should Be Issued.**

5.      Courts ruling on stay motions under Bankruptcy Rule 8005 have identified the following four elements as prerequisites to the issuance of a stay:

a.      Applicant is likely to succeed on the merits of the appeal;

b.      Applicant will suffer irreparable injury if the stay is denied;

411899v6                                                          4

1

2

         c.     No substantial harm will come to appellee or other interested parties; and

3

         d.     The stay will do no harm to the public interest.

4

_In re Wymer_, 5 B.R. 802, 806-07 (9th Cir. B.A.P. 1980); Universal Life Church, Inc. v. United

5

States (In re Universal Life Church, Inc.), 191 B.R. 433, 437 (E.D. Cal. 1995); Acton v. Fullmer

6

(In re Fullmer), 323 B.R. 287, 293 (Bankr. D. Nev. 2005), In re Liggett, 118 B.R. 219, 221

7

(Bankr. S.D.N.Y. 1990). "The party seeking the stay bears the burden of proof to establish these

8

factors by a preponderance of the evidence." In re Level Propane Gases, Inc., 304 B.R. 775, 777

9

(Bankr. D. Ohio 2004).

10

       6.     "In applying these factors, the court [should be] mindful that a

11

discretionary stay pending appeal is viewed as an extraordinary remedy." In re Fullmer, 323

12

B.R. at 293. Moreover, because the test is conjunctive, _each_ element must be satisfied and a

13

strong showing as to one or more of these four elements will not excuse a failure to establish the

14

others. See, e.g., In re Deep, 288 B.R. 27, 30 (N.D.N.Y. 2003) ("[Movant's] failure to satisfy one

15

prong of the standard for granting a stay pending appeal dooms the motion.") (citation omitted).

16

       7.     In order to meet their burden of proof with regard to the need for the

17

issuance of a stay pending appeal, Appellants must demonstrate a "substantial case" or a "strong

18

case on appeal." Morgan v. Polaroid Corp. (In re Polaroid Corp.), No. 02-1353, 2004 U.S. Dist.

19

LEXIS 1917, at *4 (D. Del. 2004)[3]; In re Pub. Serv. Co. of N.H., 116 B.R. 347, 348-49 (Bankr.

20

D.N.H. 1990). Importantly, simply presenting a _prima facie_ case will not satisfy this

21

requirement. See Beker Indus. Corp. v. Florida Land and Water Adjudicatory Comm'n (In re

22

Beker Indus. Corp.), 57 B.R. 632, 633 (Bankr. S.D.N.Y. 1986); In re Sung Hi Lim, 7 B.R. 319,

23

321 (Bankr. Haw. 1980).

24

       8.     As set forth below, Appellants fail to satisfy each element of the four-part

25

test, and therefore the Stay Motion must be denied.

26

27

28

---

[3] A copy of this opinion is attached as Exhibit A hereto.

1.    **Appellants Have Failed To Show That The Requested Stay Will Not Result In A Substantial Harm To The Debtors Or Any Other Parties In Interest.**

9.    A stay pending appeal should be denied where the movant cannot establish that no substantial harm will come to the other interested parties. "[C]ourts have found that the loss of the ability to reorganize is essentially irreparable injury." In re Fullmer, 323 B.R. at 304. See also Arvay v. Hyman (In re Bob Hamilton Real Estate, Inc.), 164 B.R. 703, 705 (Bankr. M.D. Fla. 1994) (denying stay where it would create substantial hardship to creditors by preventing trustee from making distributions); In re St. Mary Hosp., 157 B.R. 235, 238 (Bankr. E.D. Pa. 1993) (denying stay of distribution order where creditors could be harmed by further delay of payment); Sung Hi Lim, 7 B.R. at 322 (finding that lender will sustain damages from being precluded from proceeding with its right to foreclose).

10.    In this instance, if the Appellants' request is granted, the Debtors and their creditors will suffer substantial harm. While the Appellants argue that the stay would only affect the distribution of the Segregated Funds, the effect of such a stay has much broader ramifications. In the Debtors' Opposition, the Debtors acknowledge that if the "partial" stay is granted, the Plan as it relates to USACM cannot be implemented and, if the USACM Plan cannot be implemented, the implementation of the Plan, as a whole, becomes questionable. In particular, without use of the Segregated Funds, USACM will most likely not have sufficient funds to pay its administrative creditors in full, thereby inhibiting the ability of the Debtors' Plan to become effective. Even if the implementation of the Plan in the face of a "partial' stay was somehow economically feasible, it is difficult to understand how it could happen as a legal matter. How can a plan be implemented as it applies to some classes of creditors, while others have their distribution stayed pending an appeal and may never get their specified treatment? The Appellants cannot pick and choose – benefiting from the elements of the Plan they like (e.g., no substantive consolidation, release of recharacterization claims by DTDF, etc.) – and "staying" the implementation of the few provisions they dispute.

11.    Moreover, the hardship occasioned by the further delay in payment of the estates' creditors is an injury sufficient to deny a stay pending appeal. See In re Permian

1 | Producers Drilling, Inc., 263 B.R. 510, 523 (W.D. Tex. 2000) (holding that delay in payment to

2 | creditors is an injury that may be considered for this prong); Sung Hi Lim, 7 B.R. at 321 (same);

3 | Bob Hamilton Real Estate, 164 B.R. at 705 (denying stay where it would create substantial

4 | hardship to creditors by preventing trustee from making distributions); St. Mary Hosp., 157 B.R.

5 | at 238 (denying stay of distribution order where creditors could be harmed by further delay of

6 | payment). Even assuming that any stay granted would prohibit only the distribution of the

7 | Segregated Funds, this will necessarily result in a delay to USACM's creditors. For example, the

8 | intertwined compromises in the Plan were based on the presumption that the USACM estate

9 | would have the benefit of the Segregated Funds. If this premise is thrown into doubt, the entirety

10 | of the Plan is also jeopardized. Moreover, without the Segregated Funds, the assets of the

11 | USACM estate would be greatly diminished, thereby making it unlikely that the USACM estate

12 | would be able to make a distribution to USACM's unsecured creditors until it either receives

13 | Court approval to use the Segregated Funds or receives recoveries from its pursuit of certain

14 | causes of action.[4]

15 |         12.     The Appellants fail to recognize the significant, irreparable harm that may

16 | be suffered by the Debtors and their constituencies if a stay is granted and do not address this

17 | issue at all in their brief other than their conclusory assertion that the Debtors cannot suffer any

18 | harm now that the sale has closed. As demonstrated above, this is simply not true. Given the

19 | substantial harm that would be suffered by the Debtors and their estates, the Stay Motion should

20 | be denied.

21 |         **2.     Appellants Will Not Suffer An Irreparable Injury Absent A Stay
         Pending Appeal.**

22 |

23 |         13.     Courts have universally held that in order for a movant to prevail on a

24 | request for a stay pending appeal, the movant must demonstrate both that it will be harmed if the

25 | stay is not issued and that such harm will be irreparable (i.e., not capable of compensation). See,

26 | e.g., In re Kmart Corp., No. 02 C 9257, 2002 U.S. Dist. LEXIS 24851, at *3 (N.D. Ill. Dec. 30,

27 |

28 | _____

[4]    See Plan, Article I.A.95.; Article IV.D.1.

411899v6                                7

1     2002)[5]. Here, the Appellants have not demonstrated that they will be harmed absent a stay.

2           14.     As a preliminary matter, the Appellants have not offered any proof that

3     they will suffer irreparable injury. Although a showing of irreparable harm requires proof

4     supported by admissible evidence, the Stay Motion is supported by no evidence whatsoever.

5     Further, none of the Appellants have established, in conjunction with this Stay Motion or

6     otherwise, that they have any individual stake in any property involved in this case, and certainly

7     not in the "Segregated Funds" that they want to freeze pending appeal. Without evidence of

8     such a stake, they cannot show harm at all, much less irreparable harm.

9           15.     In fact, with the identities of the Appellants unknown, it is hard to say

10     what, if any, harm will be suffered by the Appellants. The Debtors have requested that the LPG

11     detail who their clients are, identify their clients' holdings, and describe how their clients will be

12     affected by the appeal. Without this information, the economic impact of the appeal as it relates

13     to members of the LPG cannot be determined.

14           16.     Even assuming that somehow the Appellants had established their

15     respective claims and interests in this case, the Appellants' contention that that they will be

16     harmed because the "Segregated Funds" will likely be disbursed absent a stay is without

17     consequence. The fact that the disbursement of the "Segregated Funds" pending appeal may

18     moot the Appellants' appeal, is legally insufficient to establish that the Appellants will suffer

19     irreparable injury.[6]

20           17.     Appellants attempt to argue that "financial injury is sufficient to constitute

21     irreparable harm." See Stay Motion, 16:25. However, neither of the cases cited by the

22     Appellants actually stand for such a proposition. In both cases, the movant's request for a stay

23     pending appeal was denied because it found that the movant had merely suffered economic

24     _____

25     [5]   A copy of this opinion is attached as Exhibit B hereto.

26     [6]   See, e.g., In re 203 N. LaSalle St. Partnership, 190 B.R. 595, 598 (N.D. Ill. 1995) ("It is well

27        settled that an appeal being rendered moot does not itself constitute irreparable harm"); In re Kent, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991) (same); In re Charter Co., 72 B.R. 70, 72

28     (Bankr. M.D. Fla. 1987) (same); In re Great Barrington Fair & Amusement, Inc., 53 B.R. 237, 240 (Bankr. D. Mass. 1985) (same).


injuries.  See Sampson v. Murray, 415 U.S. 61, 90 (1974); Foreign Autobody Specialists, Inc. v. Superior Court of California, 739 F.2d 466, 471 (9th Cir. 1984).  In so holding, neither case examined whether financial relief would be available after resolution of the appeal, nor was the issue even raised.  The Appellants' characterization of the holdings in these cases is blatantly incorrect.  To the contrary, case law holds that economic loss will *not* sustain a stay.[7]

18.    As the Appellants have failed to demonstrate that they will suffer any injury, let alone irreparable injury, the Stay Motion should be denied.

### 3.    Appellants Cannot Meet Their Burden Of Proving That Granting The Stay Will Not Harm The Public Interest.

19.    Appellants fail to consider the fact that staying the Confirmation Order is likely to result in harm to the Debtors' parties in interest.  "To the extent that the public interest has been considered in the bankruptcy context, courts have identified the achievement of reorganization as a public interest worthy of protection."  In re Fullmer, 323 B.R. at 305.  See also Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox), No. 00-1154, 2000 U.S. Dist. LEXIS 6448, at *19 (E.D. La. May 2, 2000)[8] (public interest not served by granting of stay that would have a materially adverse effect on debtor's restructuring efforts); Kar Dev. Assocs., L.P., 180 B.R. 624, 628 (Bankr. D. Kan. 1994) ("In the context of a bankruptcy case . . . the public interest . . . means the promoting of a successful reorganization which should be one of the paramount concerns of a bankruptcy case).

20.    There is simply no public interest or policy which favors a further delay in consummation of the Debtors' Plan, which would result from the grant of even a partial stay of the Confirmation Order.  Cf. In re Leibinger-Roberts, Inc., 92 B.R. 570, 574 (Bankr. E.D.N.Y.

---

[7]    See Kmart Corp., 2002 U.S. Dist. LEXIS 24851, at *5 ("[E]conomic loss will generally not sustain a stay."); FFG-NJ Vehicle Funding Corp. v. Holtmeyer (In re Holtmeyer), 229 B.R. 579, 583 (E.D.N.Y. 1999) (stay denied where movant failed to demonstrate that his alleged injury, if any, would not be capably of being fully remedied by money damages); Sandra Cotton, Inc. v. Bank of N.Y., 64 B.R. 262, 263 (W.D.N.Y. 1986) (debtor not granted stay where it "failed to prove that it would be irreparably harmed because it could not be adequately compensated by legal damages for the loss of the property in question").

[8]    A copy of this opinion is attached as Exhibit C hereto.

1  1988) ("[A] stay would be adverse to the public interest because it would serve only to delay the

2  implementation of a possibly successful plan."); In re East Redley Corp., 20 B.R. 612, 615

3  (Bankr. E.D. Pa. 1982) (court refused to stay order confirming plan of reorganization where

4  "allow[ing] this matter to drag on and force the creditors to wait several years while the case runs

5  its appellate course would be a travesty."). A stay would also undermine the Bankruptcy Code

6  policy of facilitating the disposition of assets for value. Cf. In re Richmond Metal Finishers,

7  Inc., 36 B.R. 270, 273 (Bankr. E.D. Va. 1984) ("If there is a public interest in this matter, it is

8  seeing that the purposes and policies of the Bankruptcy Code are not frustrated. . . .").

9      21.    Here, there is no question that a stay, even a limited stay, would delay

10  distributions to the Debtors' unsecured creditors and throw into doubt the entirety of the Debtors'

11  Plan. Without the use of the Segregated Funds, the Debtors' Plan, as confirmed, cannot become

12  effective. The Appellants, rather than confronting this issue head on, seek to keep the benefits of

13  the Plan without the burdens. They cannot have it both ways. The Appellants cannot pick and

14  choose to the detriment of public interest.

15      **4.    Appellants Have Failed to Demonstrate That They Are Likely To
           Succeed On Appeal.**

16

17      22.    As the Debtors' Opposition sets forth in great detail, the Appellants have

18  failed to demonstrate that they are likely to succeed on appeal. The FTDF Committee joins in

19  and supports those arguments and asserts, that, on this ground alone, the Stay Motion must be

20  denied.

21

22

23

24

25

26

27

28

1

2

## II.

## CONCLUSION

3

For the reasons stated herein, the FTDF Committee respectfully requests that the

4

Court deny the Stay Motion.

5

6

Respectfully submitted this 28th day of February, 2007.

7

      /s/ Christine M. Pajak

8

FRANK A. MEROLA (CA State Bar No. 136934),
EVE H. KARASIK (CA State Bar No. 155356), and

9

CHRISTINE M. PAJAK (CA State Bar No. 217173),
STUTMAN, TREISTER & GLATT, P.C.

10

1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

11

Telephone: (310) 228-5600

12

and

13

14

CANDACE C. CARLYON
Shea & Carlyon, Ltd.

15

228 South Fourth Street, First Floor
Las Vegas, NV 89101

16

Telephone: (702) 471-7432
COUNSEL FOR THE

17

OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS

18

OF USA CAPITAL FIRST TRUST DEED FUND, LLC

19

20

21

22

23

24

25

26

27

28

411899v6

11

# EXHIBIT "A"

LEXSEE 2004 U.S. DIST. LEXIS 1917

**In re: POLAROID CORPORATION, et al., Debtors. STEPHEN J. MORGAN, Appellant, v. POLAROID CORPORATION, et al., Appellees.**

**Civil Action No. 02-1353 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 1917*

**February 9, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Appeal dismissed by *Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 U.S. Dist. LEXIS 1879 (D. Del., Feb. 9, 2004)*

**PRIOR HISTORY:** [*1] Bankruptcy Case No. 01-10864 PJW.

**DISPOSITION:** Appellant's motion for stay pending appeal denied.

**COUNSEL:** Stephen J. Morgan, Pro Se Appellant.

Gregg M. Galardi, Esquire, Mark L. Desgrosseilliers, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.

Of Counsel: Eric W. Kaup, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois. Attorneys for Debtors and Debtors-in-Possession, Appellees.

Joseph Malfitano, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.

Of Counsel: Nava Hazan, Esquire of AKIN GUMP STRAUSS HAUER & FELD, LLP, New York, New York. Co-Counsel to the Plan Administrator.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan. (D.I. 31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

**BACKGROUND**

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy [*2] filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

**I. Parties' Contentions**

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required. [*3]

In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends

that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly serve it and its counsel as required by the Federal Rules of Civil Procedure.

### DISCUSSION

*Federal Bankruptcy Rule 8005* enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting *Federal Bankruptcy Rule 8005* have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. *In re 421 Willow Corp., 2003 U.S. Dist. LEXIS 18029, 2003 WL 22318022 at \*3 (E.D. Pa. Oct. 9, 2003).* If a party fails to establish one of the four prongs, a court may deny the requested stay. **[\*4]** *Hertz Corp. v. ANC Rental Corp.(In re ANC Rental Corp.), 2002 U.S. Dist. LEXIS 9409, 2002 WL 1058196 at \*2 (D. Del. May 22, 2002)* (citing *In re Blackwell, 162 B.R. 117, 120 (E.D. Pa. 1993)).* Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

Likelihood of success on the merits means that a movant has a "'substantial case,' or a strong case on appeal." *In re Columbia Gas Sys., 1992 U.S. Dist. LEXIS 3253 at \*4 (D. Del. March 10, 1992)* (quoting *In re Public Serv. Co. of N.H., 116 BR 347, 349 (Bankr. D. N.H. 1990).* Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appel-

lant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has **[\*5]** not demonstrated a strong likelihood of success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion. n1

> n1 Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I. 31) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT "B"

LEXSEE 2002 U.S. DIST. LEXIS 24851

In re: KMART CORPORATION, et al., Debtors.

Case No. 02 C 9257

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*2002 U.S. Dist. LEXIS 24851*

December 23, 2002, Decided
December 30, 2002, Docketed

**DISPOSITION:** [*1] Ramco-Gershenson, Inc.'s Emergency Motion for Stay Pending Appeal denied.

**COUNSEL:** For RAMCO-GERSHENSON, INC., plaintiff: Synde B. Keywell, Synde B. Keywell & Associates, Chicago, IL.

For KMART CORPORATION: Christina M. Tchen, Charles F. Smith, Jr., Victoria Aisen Birov, Christopher P Connors, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL.

**JUDGES:** MARVIN E. ASPEN, United States District Judge.

**OPINION BY:** MARVIN E. ASPEN

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is the Emergency Motion of Ramco-Gershenson, Inc. ("Ramco") for Stay Pending Appeal. We previously have granted a preliminary stay until our ruling on the motion presently before us. For the reasons set forth below, we deny Ramco's motion.

**I. BACKGROUND**

The matter before this Court concerns a dispute over the Debtors' decision, pursuant to *Section 365 of the Bankruptcy Code*, to assume and assign the Lease for the Conyers, Georgia Kmart store to a subsidiary of Burlington Coat Factory (the "Assignee"). On December 11, 2002, the bankruptcy court approved the assignment of the Lease (the "Assignment Order") holding that the Debtors had satisfied all the requirements necessary [*2]

for such an assignment, including the heightened adequate assurance requirements applicable to shopping center leases under Section 365(b)(3). Furthermore, at the December 11 hearing, the bankruptcy court reaffirmed its November 6, 2002 Order granting summary judgment (the "Summary Judgment Order") in favor of the Debtors, prohibiting enforcement of a provision in the Lease that allowed Ramco to terminate the Lease if Kmart ceased operations in the store for any reason.

On December 13, 2002, Ramco filed a motion for stay pending appeal of the above two decisions of the bankruptcy court. The bankruptcy court denied Ramco's motion on December 19, 2002. Ramco filed the instant emergency motion for stay pending appeal with this Court on December 20, 2002. This Court held a hearing on the motion on December 23, 2002 at which time arguments of counsel, as well as the bankruptcy court's rulings, were considered.

**II. ANALYSIS**

We review the bankruptcy court's denial of Ramco's motion for abuse of discretion. *In re 203 North LaSalle St. P'ship, 190 B.R. 595, 596 (N.D. Ill. 1995)*. In considering whether to grant a motion for stay pending appeal, a court must [*3] examine the following four factors: "1) whether the [movant] is likely to succeed on the merits of the appeal; 2) whether the [movant] will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997)*. The movant has a "threshold burden[] to demonstrate the first two factors." *Id.* "If the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *Id. at 1301*.

Case 06-10725-gwz    Doc 2917    Entered 02/28/07 11:46:25    Page 17 of 23

Page 2
2002 U.S. Dist. LEXIS 24851, *

The bankruptcy court considered the second factor first. n1 The court concluded that Ramco failed to show that it would suffer irreparable injury absent a stay. We agree. Ramco argues that without a stay, the Lease will be assigned and Ramco's appeals will be rendered moot. However, as the bankruptcy court explained, mootness by itself is not enough to constitute an irreparable harm. *See 203 North LaSalle, 190 B.R. at 597-58* ("It is well-settled that an appeal [*4] being rendered moot does not itself constitute irreparable harm."); *see also In re Shenandoah Realty Partners, 248 B.R. 505, 510 (W.D. Va. 2000)* (same); *In re Charter Co., 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)* (denying stay because mootness of appeal is insufficient to establish irreparable injury).

> n1 Ramco also argues that the Bankruptcy Court erred in not fully - or not properly - considering the first factor. We disagree with Ramco and agree with the Bankruptcy Court that Ramco's failure to meet the requisites of the second factor is determinative.

Ramco further asserts that without a stay, it will lose goodwill with its tenants because of its inability to enforce all of its lease provisions. Ramco first raised this issue during oral argument on its motion to stay before the bankruptcy court. As a result, the court found that Ramco's assertion was not developed enough to constitute an irreparable harm. Ramco continues to fail to identify how its goodwill with its tenants [*5] will be irreparably harmed in the absence of a stay. In *Gateway Easter Railway Co. v. Terminal R.R. Assoc., 35 F.3d 1134, 1140 (7th Cir. 1994)*, the case to which Ramco cites in its pleadings before this Court, the movant faced a loss of goodwill because in the absence of a preliminary injunction, the movant would go out business, or transfer its losses to its customers. In this case, Ramco does not allege that it is on the verge of going out of business or will have to pass its losses on to its customers in order to avert such an outcome. Instead, Ramco states that if the Lease is assigned, Ramco will be bound by the terms of the Lease, in particular the 1978 rental rates included therein. However, economic loss will generally not sustain a stay. *See Gateway Easter Railway Co., 35 F.3d at 1140* (referring to a preliminary injunction).

We hold that the bankruptcy court did not abuse its discretion in denying Ramco's motion for a stay pending appeal. The bankruptcy court correctly concluded that Ramco failed to show that it would suffer irreparable harm absent a stay. Accordingly, we concur with the bankruptcy court's decision to deny Ramco's motion [*6] without further analysis of the remaining facts. *See Forty-Eight Insulations, 115 F.3d at 1301.* Thus, we deny Ramco's motion presently before us without analyzing the remaining factors.

### III. CONCLUSION

For the foregoing reasons, this Court denies Ramco's motion n2. It is so ordered. n3

> n2 Because we have now denied the motion to stay pending appeal, we also vacate our previous stay pending ruling.

> n3 Ramco has also moved that in the event this Court denies its motion to stay that such ruling be stayed pending appeal to the Circuit Court of the denial of its motion to stay. *Federal Rule of Appellate Procedure 8(a).* We deny this motion as well.

MARVIN E. ASPEN

United States District Judge

Dated 12/23/02

### JUDGMENT IN A CIVIL CASE

IT IS HEREBY ORDERED AND ADJUDGED that We hold that the bankruptcy court did not abuse its discretion in denying Ramco's motion for a stay pending appeal. The bankruptcy court correctly concluded that Ramco failed to show that it would [*7] suffer irreparable harm absent a stay. Accordingly, we concur with the Bankruptcy Court's decision to deny Ramco's motion without further analysis of the remaining facts. Thus, we deny Ramco's motion presently before us (1-1) (1-2) without analyzing the remaining factors.

Date: 12/23/2002

# EXHIBIT "C"

LEXSEE 2000 U.S. DIST. LEXIS 6448

## IN RE BABCOCK & WILCOX; CLYDE BERGEMANN, INC. VERSUS BABCOCK & WILCOX CO., ET AL.

### CIVIL ACTION NO: 00-1154 SECTION: "R"(5)

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

### *2000 U.S. Dist. LEXIS 6448*

**May 3, 2000, Decided**
**May 3, 2000, Filed, Entered**

**SUBSEQUENT HISTORY:** Motion denied by *In re Babcock & Wilcox Co. v. Babcock & Wilcox Co., 2000 U.S. Dist. LEXIS 9350* (E.D. La., June 22, 2000)

**PRIOR HISTORY: [*1]** BANKRUPTCY CASE NO. 00-10992.

**DISPOSITION:** Bergemann's Emergency Motion for Stay Pending Appeal of the Bankruptcy Court's Order Authorizing Debtors to Obtain Postpetition Financing DENIED.

**COUNSEL:** For CLYDE BERGEMANN INC, appellant: John M. Landis, Douglas Deane Dodd, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA.

For CLYDE BERGEMANN INC, appellant: E. Penn Nicholson, Shannon L. Nagle, Bruce Z. Walker, Powell, Goldstein, Frazer & Murphy, LLP, Atlanta, GA.

For BABCOCK & WILCOX COMPANY, INC., DIAMOND POWER INTERNATIONAL, INC., BABCOCK & WILCOX CONSTRUCTION CO., INC., AMERICON INC, appellees: James Sprayregen, Kirkland & Ellis, Chicago, IL.

For BABCOCK & WILCOX COMPANY, INC., DIAMOND POWER INTERNATIONAL, INC., BABCOCK & WILCOX CONSTRUCTION CO., INC., AMERICON INC, appellees: Jan Marie Hayden, Heller, Draper, Hayden & Horn, LLC, New Orleans, LA.

For BABCOCK & WILCOX COMPANY, INC., DIAMOND POWER INTERNATIONAL, INC., BABCOCK & WILCOX CONSTRUCTION CO., INC., AMERI-

CON INC, appellees: Theodore L. Freedman, Kirkland & Ellis, New York, NY.

For CITICORP NORTH AMERICA, INC., appellee: David S. Rubin, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA.

For CITICORP [*2] NORTH AMERICA, INC., appellee: Marcia L. Goldstein, Weil, Gotshal & Manges, New York, NY.

For TRUSTEE, other: Robert Charles Gravolet, Office of the U.S. Trustee, New Orleans, LA.

**JUDGES:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SARAH S. VANCE

**OPINION:**

### ORDER AND REASONS

Clyde Bergemann, Inc. moves the Court pursuant to Bankruptcy Rule 8005 for an emergency stay pending appeal of the Bankruptcy Court's order authorizing debtors to obtain post-petition financing. For the following reasons, Bergemann's motion is DENIED.

### I. BACKGROUND

On February 22, 2000, debtors, the Babcock & Wilcox Co., Diamond Power International, Inc., Babcock & Wilcox Construction, Co., Inc. and Americon, Inc. filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Eastern District of Louisiana. Diamond Power, Babcock & Wilcox Construction and Americon are all subsidiaries of Babcock & Wilcox.

Case 06-10725-gwz    Doc 2917    Entered 02/28/07 11:46:25    Page 20 of 23

Page 2
2000 U.S. Dist. LEXIS 6448, *

The debtors also moved for authorization from the Bankruptcy Court to obtain post-petition financing up to the principal amount of $ 300 million, pursuant to the terms of a Debtor In Possession Revolving Credit Facility. (See Debtors Opp'n Mot. Stay Ex. A, Shopf [*3] Aff., at 71-75.) Debtors aver, and the bankruptcy judge agreed, that access to a credit facility is critical in order for debtors to continue to operate their businesses, obtain goods and services, retain customer, vendor and supplier confidence, meet their payrolls, and pay other operating expenses. (See Bergemann Mot. Stay Ex. 5, Final Order Auth. Debtors Obtain Post-Petition Financing, dated March 24, 2000, at 2; Debtors' Opp'n Mot. Stay Ex. A, Shopf Aff. P 199.)

Pursuant to section 364(c) of the Bankruptcy Code, the DIP Financing Agreement provides that all amounts owed under the credit facility will be given super-priority administrative expense status pursuant to section 364(c)(1) and approves a security interest in debtors' property in favor of the lenders under sections 364(c)(2) and (3). Notably, the debtors amended the DIP Financing Agreement to include a provision that, to the extent that Diamond Power is required to pay any amount disproportionate to its usage under the facility, it will be entitled to a section 364(c)(1) super-priority claim against the other debtors for the amount of the disproportionate usage, after full payment to the lenders. (See Bergemann [*4] Mot. Stay Ex. 5, Final Order P 26.)

Clyde Bergemann, Inc., an unsecured creditor of Diamond Power, objected to the DIP Financing Agreement. Bergemann argued that the DIP Financing Agreement does not apportion the super-priority administrative expenses, or the collateral pledged, based upon the amounts used by each of the individual debtors, and, as a result, the agreement pledges the assets of Diamond Power for the benefit of other entities and to the detriment of its creditors. Bergemann's claim arises out of a patent infringement suit that it filed pre-petition against Diamond Power, one of its largest competitors, in the United States District Court for the Northern District of Georgia. (See Bergemann Mot. Stay P 4, at 3.) In that suit, Bergemann seeks a judgment against Diamond Power in excess of $ 52 million. (See id.)

The Bankruptcy Court entered an Interim Order authorizing the credit facility on February 22, 2000. The court then held a hearing on the proposed DIP Financing Agreement on March 22, 2000, in which it considered Bergemann's objections. On March 24, 2000, the Bankruptcy Court entered a Stipulation and Final Order Authorizing the DIP Financing Agreement. [*5] The court found that the DIP financing is necessary in order to avoid immediate and irreparable harm to debtors' estates and to promote a successful reorganization. (See Bergemann Mot. Stay Ex. 5, Final Order, at 5.) The court also

found that debtors could not secure financing without granting the lenders priority status under section 364(c). (See id. at 4.)

Bergemann filed a notice of appeal and a motion to stay pending appeal on March 31, 2000. The Bankruptcy Court denied the request for a stay on April 7, 2000. On April 17, 2000, Bergemann filed its Emergency Motion for Stay Pending Appeal in this Court. Debtors oppose the motion on the grounds that Bergemann has not addressed why the Bankruptcy Court did not grant the stay as required under Rule 8005, and Bergemann has not satisfied the legal criteria for a stay pending appeal.

## II. DISCUSSION

The decision to grant or to deny a stay pending appeal falls within the district court's sound discretion. See In re First South Savings Ass'n, 820 F.2d 700, 709 (5th Cir. 1987). Federal Rule of Bankruptcy Procedure 8005 governs motions to stay pending appeal of bankruptcy court orders. Rule 8005 permits [*6] such a motion to be made to the district court when (1) the motion is presented to the bankruptcy judge in the first instance, and (2) the motion demonstrates why the stay was not obtained from the bankruptcy judge. In addition, the party seeking a stay pending appeal under Rule 8005 must satisfy the four criteria required for issuance of a preliminary injunction. See In re Blackwell, 162 B.R. 117, 119 (E.D. Pa. 1993); In re Tulane Hotel Investors Ltd. Partnership, 68 B.R. 145, 147 (E.D. La. 1986); In re Ba-Mak Gaming Int'l, Inc., 1996 U.S. Dist. LEXIS 10642, 1996 WL 411610, at *1 (E.D. La. July 22, 1996); In re Overmyer, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985). The movant must show that (1) it is likely to succeed on the merits; (2) it will suffer irreparable injury if the stay is denied; (3) the other parties would not suffer substantial harm if the stay is granted; and (4) issuance of the stay would serve the public interest. First South Savings, 820 F.2d at 709 (citing Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir. 1982)); Tulane Hotel, 68 B.R. at 147 (citations omitted); In re Norris, 192 B.R. 863, 866 (Bankr. W.D. La. 1995) [*7]  (citing United States v. Baylor Univ. Med. Ctr., 711 F.2d 38 (5th Cir. 1983)). The party seeking the stay must satisfy all four of these criteria in order to prevail. See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 472 (5th Cir. 1985); Mitchell v. Secretary of U.S. Dep't of Educ., 1998 U.S. Dist. LEXIS 13890, 1998 WL 564310, at *2 (E.D. La. Sept. 3, 1998); Harding v. City of Houma, 1998 U.S. Dist. LEXIS 5208, 1998 WL 171515, at *1 (E.D. La. April 9, 1998).

### A. Rule 8005

At the outset, the Court observes that Bergemann's motion fails to comply with Rule 8005. As indicated

Case 06-10725-gwz    Doc 2917    Entered 02/28/07 11:46:25    Page 21 of 23

Page 3
2000 U.S. Dist. LEXIS 6448, *

above, Rule 8005 provides that a motion for stay of a bankruptcy court order "shall show why the relief . . . was not obtained from the bankruptcy judge." A moving party's failure to meet this requirement violates Rule 8005. *See In re Drislor Assocs., 110 B.R. 937, 939 (D. Colo. 1990); In re Duncan, 107 B.R. 758, 759 (W.D. Okla. 1988).* Here, neither Bergemann's motion nor its reply brief addresses why the bankruptcy judge denied its application for a stay. Moreover, Bergemann has not included in the record before this Court any [*8] briefs submitted to the Bankruptcy Court in support of its motion to stay, and the Court cannot determine what arguments, if any, Bergemann raised before that court. Bergemann has therefore failed to comply with Rule 8005.

### B. Legal Standard for Stay Pending Appeal

1. Likelihood of Success on the Merits

Bergemann does not dispute that the approval of the DIP Financing Agreement involved a core proceeding under *28 U.S.C. § 157*(b)(2)(D). Accordingly, although the Court reviews the Bankruptcy Court's conclusions of law *de novo*, the Court reviews its findings of fact under the more stringent clearly erroneous standard. *See First South Savings, 820 F.2d at 711* (reviewing bankruptcy court approval of debtor's postpetition financing agreement). The Court must accept the bankruptcy judge's findings of fact unless "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).*

Bergemann conclusorily [*9] asserts that the DIP Financing Agreement violates bankruptcy and non-bankruptcy laws by (1) fraudulently conveying Diamond Power's property to other entities without a corresponding benefit; (2) violating the absolute priority rule in *section 1129(b)(2)(B) of the Bankruptcy Code*; and (3) substantively consolidating the debtors' assets to the prejudice of Diamond Power's pre-bankruptcy creditors. The Court notes that although Bergemann bears the burden of demonstrating that it is likely to succeed on the merits, it has cited no legal authority to support the application of the aforementioned arguments to the circumstances of this case. The Court will nevertheless address Bergemann's arguments in turn.

First, Bergemann asserts that the DIP Financing Agreement works a fraudulent conveyance because Diamond Power will not benefit from the DIP Financing Agreement to the extent it has put up collateral. A fraudulent conveyance or transfer occurs when a debtor transfers property or incurs an obligation (1) with the actual intent to hinder, delay or defraud a creditor, or (2) without receiving a reasonably equivalent value in ex-

change for the transfer. *See* UNIFORM FRAUDULENT TRANSFER ACT [*10] § 4(a) (1984); 15A FLETCHER CYCLOPEDIA OF PRIVATE CORP. § 7404 (2000) (noting that most jurisdictions have statutes modeled after UFTA). *See also* UNIFORM FRAUDULENT CONVEYANCE ACT §§ 5, 6, 7 (1918) (same standard as UFTA but referring to "fair consideration" rather than "reasonably equivalent value"). Pretermitting the issue of whether a prejudgment creditor has standing to bring a fraudulent conveyance action, n1 the Court finds no evidence in the record that the DIP Financing Agreement does not benefit Diamond Power. Indeed, Bergemann does not refute the fact that the debtors, including Diamond Power, need the financing in order to continue to issue letters of credit and to operate their businesses and that they could not obtain such financing by means of unsecured credit. The Bankruptcy Court made an express finding pursuant to *11 U.S.C. § 364*(c) that the debtors, including Diamond Power, could not obtain post-petition financing without granting the DIP lenders super-priority status as provided for in Section 364(c). (*See* Mot. Stay Ex. 5, Final Order, at 4.) *See 11 U.S.C. § 364*(c) (bankruptcy court, after notice and hearing, [*11] may authorize obtaining of credit or incurring of debt with priority if trustee is unable to obtain unsecured credit as an administrative expense). Bergemann's failure to refute this finding belies the argument that the DIP Financing Agreement constitutes a fraudulent conveyance of Diamond Power's property. The Court finds no basis in the record for finding that Diamond Power will not benefit from the DIP financing or that it will benefit so little that it will not have received reasonably equivalent value. Moreover, Bergemann does not contend that Diamond Power acted to hinder, delay or defraud its creditors. For all of these reasons, the Court cannot conclude that Bergemann is likely to succeed on the merits of its fraudulent conveyance claim.

> n1 *See generally Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 119 S. Ct. 1961, 1970 n. 7, 144 L. Ed. 2d 319 (1999)* (noting that "several states have adopted the Uniform Fraudulent Conveyance Act (or its successor the Uniform Fraudulent Transfers Act), which has been interpreted as conferring on a non-judgment creditor the right to bring a fraudulent conveyance claim").

[*12]

Second, Bergemann argues that the DIP Financing Agreement violates the absolute priority rule codified in Section 1129(b)(2)(B). Section 1129 outlines the requirements to be followed when the Bankruptcy Court confirms a reorganization plan. At the hearing on the

Case 06-10725-gwz    Doc 2917    Entered 02/28/07 11:46:25    Page 22 of 23

Page 4
2000 U.S. Dist. LEXIS 6448, *

DIP Financing Agreement, the bankruptcy judge rejected Bergemann's argument based on the absolute priority rule because that rule applies "upon confirmation of a plan," which will occur at a much later stage in the proceedings. (*See* Debtors' Opp'n Mot. Stay Ex. C, Tr. at 24.) The absolute priority rule provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a plan. *See 11 U.S.C. § 1129(b)(2)(B); In re Elmwood, Inc., 182 B.R. 845, 852 (D. Nev. 1995).* Notably, section 1129(b)(2)(B) applies only when a class of claims or interests has not accepted the plan, or is impaired under the plan. *See 11 U.S.C. §§ 1129(b)(1); 1129(a)(8); Troy Sav. Bank v. Travelers Motor Inn, Inc., 215 B.R. 485, 493 (N.D.N.Y. 1997)* (absolute priority rule sets forth statutory [*13] standard for determining whether a "cram down" is "fair and equitable" with respect to the class of unsecured creditors that has not accepted the reorganization plan); *In re 641 Assocs., Ltd., 140 B.R. 619, 629 (Bankr. E.D. Pa. 1992)* (section 1129(b)(2)(B)(ii) "refers only to the consequences of the failure of a class of unsecured creditors to accept a plan").

Bergemann cites, and the Court has found, no authority requiring the bankruptcy judge to consider the absolute priority rule in pre-confirmation proceedings. Additionally, by the time this case reaches confirmation, Bergemann may no longer have a claim against Diamond Power. It is therefore speculative, at best, whether the absolute priority rule would ever be invoked in this case.

Further, Bergemann fails to cite any law giving unsecured creditors a right to adequate protection under section 364(c). Sections 364(c) and (d) provide for adequate protection of lienholders of senior or equal rank on the collateral securing the post-petition financing, and they do not provide for adequate protection to unsecured creditors. *See 11 U.S.C. §§ 364(c) & (d).* In addition, there is authority [*14] that unsecured creditors are not entitled to claim adequate protection under sections 364(c) and (d).

> There is no express statutory requirement that holders of unsecured claims be provided "adequate protection." Adequate protection within the meaning of *Bankruptcy Code [section] 361* need be provided only as expressly required under section 362, section 363, or section 364. There is no requirement of adequate protection in respect to credit obtained under *Bankruptcy Code [section] 364(c)(2).*

*In re Garland Corp., 6 B.R. 456, 462 (1st Cir. BAP 1980)* (rejecting argument of unsecured creditors' committee that post-petition financing secured by unencumbered assets of debtor violated section 364(c)(2)); *accord In re Simasko Prod. Co., 47 B.R. 444, 448 (Bankr. D. Colo. 1985)* (unsecured creditor objecting to interim financing agreement authorized under section 364(d) did not have an interest for which adequate protection had to be provided). Because Bergemann has not shown that the bankruptcy judge erroneously applied section 364(c) or that he should have applied the absolute priority rule to a pre-confirmation order, the Court finds that [*15] Bergemann has failed to establish a likelihood of success on the merits.

Finally, Bergemann baldly asserts that the DIP Financing Agreement substantively consolidates the assets of the debtors without meeting the criteria therefor, to the prejudice of the pre-bankruptcy creditors of the individual debtors. Bergemann does not explain how the DIP Financing Agreement amounts to a substantive consolidation, nor does it identify the criteria that the agreement allegedly violates. Furthermore, assuming arguendo that the agreement did work a substantive consolidation, Bergemann presents no authority that gives it the right to relief in such a situation. Based on this record, the Court finds that Bergemann is not likely to succeed on the merits.

### 2. Irreparable Harm

Bergemann has also not demonstrated that it will suffer irreparable harm if the stay is denied. Bergemann argues that it will suffer irreparable injury if the Bankruptcy Court's order is not stayed because the debtors continue to incur debt under the DIP Financing Agreement, thereby increasing the exposure of Diamond Power to expenses of other entities to the detriment of Diamond Power's pre-petition creditors. The Court [*16] recognizes that a reversal on appeal of the Bankruptcy Court's order would not invalidate any of the debts previously incurred under the DIP Financing Agreement unless the order is stayed pending appeal. *See 11 U.S.C. § 364(e).* However, as noted in the discussion of Bergemann's fraudulent conveyance claim, *supra*, the Court has no basis, on the record before it, to assess the likelihood that Diamond Power will make payments under the facility in excess of its actual usage. In response to Bergemann's objections, debtors included an amendment to the DIP Financing Agreement which provides that, to the extent Diamond Power pays out more than it uses under the credit facility, it shall be entitled to a super-priority claim under section 364(c)(1) against the other debtors, after full payment to the lenders. Bergemann concedes that this provision improves its position. (*See* Mot. Stay, at 8.) Nevertheless, Bergemann asserts that "[a] super-priority administrative claim in favor of Diamond Power

for excessive loan payments only has value to the extent the beneficiary Debtors are truly solvent and able to repay the claims in full." (*Id.*) The record contains [*17] absolutely no indication that the other debtors might default under the agreement or that they do not have sufficient resources to satisfy the $ 300 million loan. Any injury that Bergemann may suffer as a result of the agreement is thus hypothetical.

### 3. Harm to Other Parties

By contrast, the Court finds that granting the stay would substantially harm the other parties to this action. Debtors attached to their opposition memorandum the affidavit of R.J. Shopf, which they submitted to the Bankruptcy Court in support of their motion to approve the DIP Financing Agreement. (*See* Debtors' Opp'n Mot. Stay Ex. A, Shopf Aff.) Shopf, the Chief Restructuring Officer of Babcock & Wilcox, avers that debtors need immediate access to post-petition financing in order to avoid an acute liquidity crisis that will threaten their ability to maintain business operations in the short term. (*See id.* P 208, at 75.) In particular, Shopf asserts that, without financing, debtors cannot obtain letters of credit essential to the operation of their businesses. (*See id.* PP 199, 201.) The availability of post-petition financing is necessary to instill confidence in debtors' suppliers, customers, [*18] and employees, thereby improving the likelihood of a successful reorganization. (*See id.* P 207.) Bergemann does not contest that Diamond Power, and all of the debtors, would suffer immediate harm if the credit now available under the DIP Financing Agreement were frozen pending appeal. Rather, Bergemann merely asserts that debtors can obtain a revised credit facility. "There is . . . no assurance[, however,] that financing of [this] magnitude will again be available, at the same rates, if a stay is granted and the appeal ultimately fails." *In re Public Service Co. of New Hampshire, 116 B.R. 347, 350 (Bankr. D.N.H. 1990)* (denying stay pending appeal of confirmation order when stay would jeopardize $ 1.5 billion in financing under negotiation). Additionally, a stay pending appeal would significantly harm other creditors by delaying payments until a revised financing agreement can be obtained. *See id.* (delay to creditors receiving payments is significant harm warranting denial of stay) (*citing In re Charter Co., 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987); In re Great Barrington Fair and Amusement, Inc., 53 B.R. 237, 240 (Bankr. D. Mass. 1985)*). [*19]

### 4. Public Interest

Finally, the Court finds that the public interest would not be served by the granting of a stay. "The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization." *In re Lazarus Burman Assocs., 161 B.R. 891, 901 (E.D.N.Y. 1993)* (*citing In re Northlake Building Partners, 41 B.R. 231, 234 (Bankr. N.D. Ill. 1984)*). By affidavit, debtors have testified that an inability to access the DIP Financing Agreement would have a materially adverse effect on their restructuring efforts by disrupting their business operations and impairing their going concern value. (*See* Debtors' Opp'n Mot. Stay Ex. A, Shopf Aff. PP 200, 208.) Further, the bankruptcy judge made an express finding that the DIP financing is necessary to promote debtors' successful reorganization. (*See* Bergemann Mot. Stay Ex. 5, Final Order, at 5.) The Court concludes that a stay would not serve the public's interest in a successful reorganization.

### III. CONCLUSION

Bergemann has failed to comply with the procedural requirements of Rule 8005 and to establish the legal criteria for a stay pending appeal. Accordingly, [*20] the Court DENIES Bergemann's Emergency Motion for Stay Pending Appeal of the Bankruptcy Court's Order Authorizing Debtors to Obtain Postpetition Financing.

New Orleans, Louisiana, this 3rd day of May, 2000.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE