Filed
3-7-07
Electronically

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
CHRISTINE M. PAJAK
(CA State Bar No. 217173)
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
E-mail:  fmerola@stutman.com
         ekarasik@stutman.com
         cpajak@stutman.com

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
233 South Fourth Street, Second Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
E-mail:  jshea@sheacarlyon.com
         ccarlyon@sheacarlyon.com
         ssherman@sheacarlyon.com

*Counsel for the Official Committee of Equity Security Holders of
USA Capital First Trust Deed Fund, LLC*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY<br>    Debtor | ) BK-S-06-10725-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>    Debtor | ) BK-S-06-10726-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>    Debtor | ) BK-S-06-10727-LBR<br>) Chapter 11<br>) |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>    Debtor. | ) BK-S-06-10728-LBR<br>) Chapter 11<br>) |
| In re:<br>USA SECURITIES, LLC,<br>    Debtor. | ) BK-S-06-10729-LBR<br>) Chapter 11<br>) |
| Affects<br>☐ All Debtors<br>☐ USA Commercial Mortgage Co.<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed<br>☒ USA Capital First Trust Deed Fund, LLC | )<br>)<br>)<br>) Date: March 15, 2007<br>) Time: 9:30 a.m.<br>)<br>)<br>) |

## REPLY BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC IN SUPPORT OF ITS OMNIBUS OBJECTION TO CLAIMS SUPERSEDED BY COMPROMISE CONTAINED IN DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION (AS MODIFIED) (AFFECTS DEBTOR USA CAPITAL FIRST TRUST DEED FUND, LLC)

412204v.2

The Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") appointed in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), hereby submits this reply in support of its omnibus objection to claims superseded by compromise contained in Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization (As Modified) (the "Reply").

This Reply is made pursuant to L.R. 3007 and is based upon the points and authorities which follow, the pleadings, papers or other matters contained in the Court's file, and any oral argument of counsel to be presented at the time of the hearing on this Objection.

DATED this 7th day of March, 2007.

SHEA & CARLYON, LTD.

/s/ [signature]

JAMES PATRICK SHEA
CANDACE C. CARLYON
SHLOMO S. SHERMAN
233 South Fourth Street, Second Floor
Las Vegas, Nevada 89101

and

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
EVE H. KARASIK
CHRISTINE M. PAJAK
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

2

**POINTS AND AUTHORITIES**

**I.**

**BACKGROUND**

1. On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), the DTDF), and the FTDF (collectively with USA Mortgage, USA Securities, USA Realty, and DTDF, the "Debtors") filed voluntary petitions for relief under chapter 11 the Bankruptcy Code.

2. On May 10, 2006, the Office of the United States Trustee (the "U.S. Trustee") appointed four separate committees in these Chapter 11 Cases, including the FTDF Committee.

3. The FTDF Committee represents the interests of those persons who invested in the FTDF (the "FTDF Members"). FTDF Members hold equity, or membership, interests in the FTDF.

4. At the behest of the Debtors, the FTDF Committee has taken upon itself the analysis the nearly 150 proofs of claim filed in the FTDF case (the "FTDF Claims"). Many of the proofs of claim turned out to be duplicates. Many turned out to have been mistakenly filed in the FTDF case by parties who are not FTDF members. Many have been filed as a "reaffirmation" of an FTDF member's equity security interest. In order to determine the allowability and legitimacy of the FTDF Claims in the most efficient and cost-effective manner, the FTDF Committee has filed a total of 8 omnibus claims objections (the "Omnibus Claims Objections"). The Omnibus Claims Objections were filed for the purpose of resolving claims of a similar nature in one fell swoop, as oppose to incurring the expense of filing a separate objection to each claim.

5. On December 26, 2007, the FTDF Committee filed its Omnibus Objection to Claims Superseded by Compromise Contained in Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (As Modified) (the "Objection"; DE #2285).

6. The hearing on the Objection was set for the January 31, 2007 Omnibus Hearing Date.

7. In its Objection, the FTDF Committee objected to 6 separate claims (the "Compromised Claims"), including claims filed by: (1) Kantor Nephrology Consultants, Ltd. 401(k) PSP, Gary Kantor, Trustee (claim #123); (2) Dr. Gary Kantor (claim #124); and (3) Lynn M. Kantor (claim #125) (collectively, the "Kantor Claims," filed by the "Kantor Claimants").

8. The Compromised Claims all involved claims by members of DTDF relating to the misconduct on the part of DTDF's manager and its principals, and alleging that funds diverted from DTDF may have found their way to one or more of the other Debtors.

9. The FTDF Committee's Objection was based upon the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (as Modified) (the "Plan"), which included a settlement of all claims that DTDF may have had against FTDF in exchange for certain monetary commitments on the part of FTDF.

10. Approximately one week before the hearing on the Objection, the FTDF Committee agreed to execute a stipulation with the Kantor Claimants continuing the hearing on the Objection as to the Kantor Claimants to March 1, 2007. A Stipulation and Order to that effect was entered on January 25, 2007 (DE #2559).

11. On January 31, 2007, the Court sustained the FTDF Committee's objection as to balance of the Compromised Claims, other than the Kantor Claims.

12. On February 20, 2007, the Kantor Claimants filed their response to the Objection (the "Response"; DE #2841), to which they attached as a sample one of their three identical claims ("Claim #124").[1]

13. In the Response, the Kantor Claimants seek to somehow distinguish their claims from the other Compromised Claims, and, on that basis alone, seek to overcome the FTDF Committee's Objection to their claims. As will be discussed at length below, the Kantor Claims are subject to the compromise reached in the Plan. In addition, the FTDF Committee

---

[1] On February 21, 2007, the FTDF Committee and the Kantor Claimants agreed to continue the hearing on the Objection as to the Kantor Claimants to March 15, 2007, and to extend the FTDF Committee's time in which to file a reply in support of the Objection to March 8, 2007. A Stipulation and Order to that effect was entered on February 26, 2007 (DE #2891).

1  has taken the opportunity to point out several other infirmities in the Kantor Claims, including
2  the absence of any evidentiary support as well as the absence of any factual or legal basis.
3  These infirmities are such as would deny the Kantor Claims prima facie validity in the first
4  instance; they are fatal in light of the FTDF Committee's Objection.

5     14.    For these reasons, as discussed more fully below, the FTDF respectfully
6  requests that the Kantor Claims be disallowed in their entirety.

## II.

## LEGAL AUTHORITY

### A. The Kantor Claims Lack both a Factual and Legal Basis

Bankruptcy Code section 502 authorizes any party in interest to object to a claim. See 11 U.S.C. § 502(a). Although a properly and timely filed proof of claim is presumed to be valid under Bankruptcy Rule 3001(f), once an objection controverts this presumption, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim. Ashford v. Consolidated Pioneer Mortg. (In re Consoldiated Pioneer Mortg.), 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996) (quoting In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).

Moreover, Local Rule 9014(d)(1) provides that "[a]n opposition must be supported by affidavits or declarations that conform to the provisions of subsection (c) of this rule."

In this case, the FTDF Committee's Objection to the Kantor Claims appears to have been overly generous, in that it assumed that the Kantor Claims were based, in substance, upon the argument for recharacterization that has been developed throughout the course of the USA cases involving FTDF, DTDF, and the Direct Lenders. The FTDF Committee's Objection pointed out that such claims, though perhaps based upon legitimate grounds, have been superseded by the compromise entered into between FTDF and DTDF in the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization expressly resolving those issues.

However, in their Response, the Kantor Claimants now expressly disclaim basing their claims upon such position. Instead, the Kantor Claimants have clarified that they somehow assert direct claims against FTDF based upon a purported conspiracy between the five Debtors,

5

whom the Kantor Claimants have whimsically dubbed the "Debtor Conspirators". Claim #124, at ¶ 19.

In support of its conclusion that the five Debtors were conspirators, the Kantor Claimants point merely to their assertion that the five Debtors had common employees, premises, and investments. Id.

Having thus concluded that the Debtors were all co-conspirators, the Kantor Claimants then discuss various purported representations made to them by the Debtors' principals, Thomas A. Hantges ("Hantges"), Joseph D. Milanowski ("Milanowski"), and Paul S. Hamilton ("Hamilton"), as well as representations made by Phillip Dickinson ("Dickinson"), an employee of "one or more of the Debtor Conspirators," in connection with *the Kantor Claimants' investment in DTDF.* Id. at ¶¶ 20-29

Following the definition of "Debtor Conspirators," the Kantor Claimants make *no allegation whatsoever* of any act or omission specifically performed by FTDF. Nor have the Kantor Claimants made any allegations that they are members of FTDF, or that they have ever held an interest in FTDF. Indeed, as the Declaration of Matt Kvarda in support of the FTDF Committee's Objection [DE #2480] (the "Kvarda Declaration") expressly stated, the Kantor Claims are based upon investments made in DTDF, not in FTDF. Kvarda Declaration, ¶ 7.

As the Ninth Circuit Court of Appeals has recently had occasion to point out, "…Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" Swartz v. KPMG, LLP, __ F.3d __, 2007 WL 438795, 7 (9th Cir. 2007) (finding that the plaintiff's complaint for conspiracy to commit fraud "patently failed to comply with Rule 9(b)," noting that "[t]he complaint is shot through with allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to [certain of the defendants]," and ultimately finding that "[c]onclusory allegations that [two of the named defendants] 'knew that [the other defendants] were making false statements…and thus were acting in concert'…and 'were active participants in the conspiracy' without any stated factual

6

basis are insufficient as a matter of law").

In this case, the allegations that the Kantor Claimants have made with respect to FTDF do not even rise to the level of detail deemed insufficient in Swartz, having failed to allege even a general act or omission on the part of FTDF.

Significantly, the one Debtor in which the Kantor Claimants *have* invested, DTDF, is the single Debtor *against whom the Kantor Claimants have not filed a claim!* Given the nature of the Kantor Claims, this omission is astounding since all of the representations alleged by the Kantor Claimants to have been made by Hantges, Milanowski, Hamilton or Dickinson were necessarily made in their capacity as the principals and the employees of DTDF to the Kantor Claimants in their capacity as actual or potential investors in DTDF.

The bizarre nature of the Kantor Claims is made all the more significant by the complete and total absence of any supporting evidence. The Kantor Claims rest solely upon such generalized and unsubstantiated allegations as "[a]ll of the Debtor Conspirators benefited from their joint conduct" (Id. at ¶30), or "Milanowski, Hantges, Hamilton, and Dickinson, acting on behalf of the Debtor Conspirators and others, acted with the intention to deceive and mislead [the Kantor Claimants]."

Moreover, it is with full knowledge of the absence of any evidence that the Kantor Claimants have stated in their Response that "[i]n the Objection, the Committee has not objected to the substance of the Kantor Claims. Therefore, the Kantors assert that the Court must accept as true all of the allegations contained in the Kantor Claims."[2]

Unlike a complaint such as the one involved in Swartz, which is a notice pleading and does not require evidentiary support in order to be deemed sufficient, a proof of claim requires *proof* of the claim. See, e.g., In re Hongisto, 293 B.R. 45, 50-51 (Bankr. N.D. Cal. 2003) (allegations in state court complaint appended to creditor's proof of claim that debtor was one

---

[2] In addition to this allegation, the Kantor Claimants alleged, in Footnote 5 of the Response, that the FTDF Committee did not reserve rights to object to the Kantor Claims on other grounds then as set forth in the Objection. To the contrary, the FTDF Committee unequivocally reserved its rights to object to the Kantor Claims on all other grounds, which would include an objection on "the substance" of the Kantor Claims, at a later date if necessary. Objection, p.2, ll. 18-20; p. 8, ll. 10-12.

7

of people contacted about joining conspiracy to have creditor arrested, were insufficient to state basis for imposing legal liability on debtor for creditor's arrest; accordingly, proof of claim did not constitute prima facie evidence of creditor's claim, and initial burden of proof was properly placed on creditor in contested matter arising out of debtor's objection to proof of claim).

It is apparent that the only reason that the Kantor Claimants filed the Kantor Claims in the FTDF case is because, unlike the DTDF, the FTDF sold its assets in its chapter 11 case and has funds to distribute to the FTDF members. While the Kantor Claimants may wish they had invested in FTDF rather than the DTDF, they did not do so, and cannot now grab assets from the FTDF members solely based on its "buyer's remorse."

**B. Even Assuming the Truth of the Allegations Asserted in the Kantor Claims, the Kantor Claims have been Superseded by the Compromise Reached in the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization**

The Kantor Claims have been filed on account of losses allegedly suffered by the Kantor Claimants due to their investment in DTDF. However, as the Kantor Claimants have correctly pointed out, Section VIII(A)(2) of the Plan expressly provides that:

> As of the Effective Date, in consideration for the obligations, subordination, modifications of rights and accommodations of the FTDF..., DTDF, the DTDF Estate, and Post-Effective Date DTDF, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims...based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, ...fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, including any recharacterization, or substantive consolidation causes of action, or any other matter which DTDF, the DTDF Estate, or Post-Effective Date DTDF or any Person or Entity claiming by, from, through, or under any of DTDF, the DTDF Estate, or Post-Effective Date DTDF ever had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

This compromise was reached in order to resolve the "recharacterization" argument that had been looming over the USA cases since the petition date. The recharacterization argument took the position that, due to the commingling of funds in the trust accounts, the Debtors'

8

common principals, and the scandalous treatment of DTDF's investment funds, all of the Debtors' collective assets should be recharacterized and/or substantively consolidated and distributed pro rata among all creditors.

This recharacterization argument was effectively settled by the above compromise in the Plan, which was reached in order to achieve finality and closure as to these issues. Importantly, *each of the Kantor Claimants voted in favor of the Plan.* The Kantor Claimants are now attempting to thwart the clear import of the compromise reached in the Plan, and, on the sole basis of FTDF and DTDF's shared insiders, to assert claims of "fraud, conspiracy, and consumer fraud" against FTDF.

Since the Kantor Claimants possess no standing to assert direct claims against DTDF based upon the mismanagement of DTDF funds, it is a complete wonder how the Kantor Claimants could leap frog debtors and estates and hold any claim against FTDF. In Federal Land Bank of Spokane v. Stiles, 700 F. Supp. 1060, 1066 (D. Mont. 1988), the court noted that:

> Ordinarily, a shareholder may not bring a direct action for recovery of diminished stock value. Lewis v. Chiles, 719 F.2d 1044, 1049 (9th Cir. 1983). Applying Montana law, the Ninth Circuit recently held that "[a] direct action can be brought either when there is a special duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders." Sax v. World Wide Press, Inc., 809 F.2d 610, 614 (9th Cir. 1987). A shareholder can enforce a corporate right in a derivative action if certain conditions are met. Id. at 613; Mont. R. Civ. P. 23.1. Stiles clearly do not seek to bring their cross-claim as a derivative action; therefore, the court inquires whether they can bring a direct action. The court finds that they cannot. As in *Sax,* Stiles *have not identified [as shareholders] a fiduciary duty owed to [them] that is separate and distinct from that owed to other shareholders and that would allow [them] to maintain a direct action. The injury [they] allege [ ] affected the "whole body of [PCA] stock" and is, therefore, an injury to the corporation.*

(Emphasis added). As in Stiles, the injury that the Kantor Claimants have alleged is not

separate and distinct from the injury to the other equity holders of DTDF, and is thus regarded as an injury to DTDF itself. Nevada law similarly provides that misconduct that causes harm to the entire corporation as opposed to an individual shareholder can only be challenged via a derivative action. See *e.g.* Nev. R. Civ. P. 23.1; Cohen v. Mirage Resorts, Inc., 119 Nev. 1, 19, 62 P.3d 720, 732 (2003). The legal authority cited by the Kantor Claimants only provides further support for this principal. Thus, for example, in In re Western World Funding, Inc., 52 B.R. 743, 774-75 (Bankr. D. Nev. 1985), cited by the Kantor Claimants in their Response, the court explained:

> The distinction between personal creditor claims against corporate officers and claims which creditors may assert on behalf of the corporation has been described thus:
>
> The dividing line is whether the cause of action *is one which is purely personal, in which no other claimant or creditor of the corporation has an interest*, or whether the cause of action *is one in favor of creditors in general*, which may be availed by "any" one creditor either suing alone (as it is sometime held he may) or as a representative of all the creditors. *In the one case the only liability is to the particular person injured, who may or may not be a creditor of the corporation, as in the case of an action for deceit, while in the other case the liability is to all creditors of the corporation without regard as to any personal dealings between such officers and such creditors.* 3A *Fletcher* § 1134 at 202. This distinction parallels that between a personal shareholder suit, and a derivative suit. See e.g. Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 170 P. 2d 898, 901 (1946). While the trustee may not bring personal shareholder actions, he may certainly bring those actions for which *the injury to the shareholders is derived from the harm to the corporation.* Schmitt v. Jacobson, 294 F.Supp. 346 (D.Mass.1968).

(Emphasis added). As the case law makes abundantly clear, the question is not whether a shareholder suffered an injury. The question is whether the shareholder suffered a *particularized* injury that is *distinct from the injury suffered by other shareholders*. Thus, the Kantor Claimants' efforts to characterize their claims as "direct claims" are unavailing against the DTDF and clearly against the FTDF. Indeed, just be saying that their claims are "direct,"

does not make them so. They have suffered an injury (the impairment of their investment in DTDF), which is identical to that suffered by their fellow DTDF members, since it is ultimately an injury to DTDF. The Kantor Claimants do not have standing to seek damages for an injury caused to DTDF without bringing a derivative action.

### C. The Kantor Claims Are Precluded by 11 U.S.C. § 510(b)

The Bankruptcy Code establishes a clear priority scheme for the distribution of estate assets through a plan of reorganization. First, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. § 1122(a). Secondly, a plan must "provide the same treatment for each claim or interest of a particular class," unless the holder of the claim agrees otherwise. 11 U.S.C. § 1123(a)(4). Finally, "[t]he absolute priority rule, distilled to its basic components, requires that senior claims be paid in full before any junior class can receive or retain any property." In re Mortgage Inv. Co. of El Paso, Texas, 111 B.R. 604, 617 (Bankr. W.D. Tex. 1990). See also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 201-02 (1988).

Pursuant to this priority scheme, a claimant who holds an equity interest in a debtor may only recover from the debtor's estate if the estate's creditors are to be paid in full under the plan. Further, if there are any remaining assets after provision for payment of senior classes in full, such equity holders must recover on par with other similarly-classified equity holders, and must share with other equity holders in their class on a *pro rata* basis as determined by the allowed amount of the holder's claim.

The Kantor Claimants have asserted claims that are common to all investors in DTDF; namely, that they were fraudulently induced by DTDF's principals to invest in DTDF, and that DTDF's principals subsequently "misappropriated...*the Diversified Fund's money*," resulting in harm to *all* of DTDF's members, including the Kantor Claimants. Even if the Kantor Claimants had filed their claims against DTDF, their claims would be no more than an attempt

11

to circumvent this priority scheme by categorizing their claims against DTDF according to various contract and/or tort theories. By doing so, they would unfairly seek to recover on par with general secured or unsecured creditors of the DTDF estate, ahead of similarly situated equity holders, thereby depleting the pool of assets that should be available for distribution to the equity class.

Moreover, because the Kantor Claimants' standing to assert such claims arise out of the purchase of membership interests in DTDF, such claims must be subordinated to creditor claims as well as other equity interests pursuant to the mandate of 11 U.S.C. 510(b), which provides, in pertinent part, that:

> [A] claim arising from rescission of a purchase or sale of a security of the debtor *or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security*, or for reimbursement or contribution allowed under section 502 on account of such a claim, *shall be subordinated to all claims and interests that are senior to or equal the claim or interest represented by such security*...

(Emphasis added). Section 510(b) prevents, at a minimum, equity interest holders from asserting claims alleging fraud or other illegality in the issuance of securities, since such claims arise from the purchase or sale of a security for purposes of § 510(b).[3] Indeed, as the Ninth

---

[3] A limited exception to § 510(b) provides that "if such security is common stock, such claim has the same priority as *common stock*." 11 U.S.C. § 510(b) (emphasis added). Thus, unless the claim for damages arises from the purchase of a security that is common stock, such claims are subordinated to equity interests.

The Kantor Claims do not arise from the purchase of a security that is "common stock," as DTDF Members own interests in a limited liability corporation and not common stock. Thus, limited liability interests do not fall within the exception to § 510(b)'s mandatory subordination, which is explicitly carved out only for "common stock" and no other form of security. See, e.g., Security Leasing Partners, L.P., v. Proalert, LLC (In re Proalert, LLC), 314 B.R. 436, 441 (9th Cir. B.A.P. 2004) ("[T]he plain meaning of a statute controls, except in rare cases where a literal interpretation produces absurd results. A court must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are clear, judicial inquiry is complete.") (Internal quotations and citations omitted).

Circuit Court of Appeals recently noted in In re American Wagering, Inc., 465 F.3d 1048, 1051-52 (9th Cir. 2006):

> Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. *One of the primary purposes of section 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors.* Although many subordination cases sound in fraud, the scope of section 510(b) has been broadened over the years to include claims based on contract law and other actions. The majority of courts in recent years that have confronted the scope of § 510(b), including this one, have concluded that the phrase "arising from" should be read broadly to encompass claims other than fraud claims, such as claims for breach of contract.

(Emphasis added). In this case, the Kantor Claimants seek to recover on equal footing with the unsecured creditors of FTDF based upon allegations of fraud in DTDF's issuance of securities. Section 510(b) precludes such claims. Similar claims asserted against DTDF itself have already been disallowed by the Court in the DTDF case.[4] It would be absurd for the Kantor Claims, which have not even been filed against DTDF, to be allowed in any amount in the FTDF case.

### D.    The FTDF Committee's Objection Provides Adequate and Sufficient Grounds for the Disallowance of the Kantor Claims.

As discussed above, the FTDF Committee maintains its original position that the Kantor Claims have been superseded by the compromise reached in the Plan.

Nonetheless, the FTDF Committee has taken the opportunity to point out several fatal flaws in the Kantor Claims that have not been remedied by the Response, such as the absence of *any* evidence in support of the claims, and the presence of only blanket conclusory allegations with respect to FTDF's involvement in a "conspiracy" – allegations that were

---

[4] See fn. 5, below.

regarded as insufficient even to sustain the complaint filed in Swartz.

"Generally, Objections to proofs of claim need not be pleaded with great precision." In re Mall at One Associates, L.P., 185 B.R. 1009, 1015 (Bankr. E.D. Pa. 1995). Although the court in that case was nonetheless reluctant to sustain a substantive objection to a proof of claim that had not been developed in the initial objection, this was due only to the fact that "the claimant, which bears the ultimate burden of proof on the issue of the validity of its claim, See In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir.1992), would not be placed on notice of what issues it must prove to sustain its claim." Id.

In this case, however, the Kantor Claimants were fully on notice of their responsibility to make specific allegations of fraud against each individual Debtor; of the need to provide evidentiary support for it's the Kantor Claims; and of the Court's Order of the Case with respect to the application of § 510(b) to such claims brought by equity security holders.[5]

Therefore, the Court is respectfully requested to disallow the Kantor Claims in their entirety for the reasons set forth in the Objection as well as for any additional reasons set forth herein.

### III.

### CONCLUSION

For the reasons set forth herein, the FTDF Committee respectfully requests that the Court enter an order sustaining the FTDF Committee's Objection, and disallowing the Kantor

///

///

---

[5] See, e.g., this Court's Order Sustaining Omnibus Objection of Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC, to Claims on Equity Misfiled Against USA Capital Diversified Trust Deed Fund, LLC as Creditor Claims (DE #2765), entered on February 14, 2007, embodying its ruling that § 510(b) applies to all claims of DTDF members arising out of their purchase of securities in DTDF.

14

1  Claims in their entirety without prejudice to the right of the FTDF to file further objections on
2  other grounds to the Kantor Claims.
3        DATED this 7TH day of March, 2007.

SHEA & CARLYON, LTD.



JAMES PATRICK SHEA
CANDACE C. CARLYON
SHLOMO S. SHERMAN
233 South Fourth Street, Second Floor
Las Vegas, Nevada 89101

and

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
EVE H. KARASIK
CHRISTINE M. PAJAK
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067