1

1          UNITED STATES BANKRUPTCY COURT

2              DISTRICT OF NEVADA

3              LAS VEGAS, NEVADA

4    In re:  USA COMMERCIAL MORTGAGE    )  JANUARY 31, 2007
     COMPANY,                          )  E-Filed:  03/12/07
5                                      )
             Debtor.                   )  Case No.
6                                      )  BK-S-06-10725-LBR
     _____)  Chapter 11
7

8              PARTIAL TRANSCRIPT OF PROCEEDINGS
                            OF
9              (06-10725) MOTION TO ENFORCE ORDER
       GRANTING DEBTOR'S MOTION TO DISTRIBUTE FUNDS, 2350
10                          AND
              OMNIBUS OBJECTION TO CLAIM OF
11         IN THE AMOUNT OF CLAIMS ON EQUITY
           MISFILED AS CREDITOR CLAIMS, NO. 2353
12                          AND
                 OBJECTION TO CLAIM 79
13       OF PENSION BENEFIT GUARANTY CORPORATION
              IN THE AMOUNT OF $884,389,
14    CLAIM 80 OF PENSION BENEFIT GUARANTY CORPORATION
              IN THE AMOUNT OF 1,068,233,4
15   AND CLAIM 81 OF PENSION BENEFIT GUARANTY CORPORATION,
                         NO. 2252
16                          AND
                 OBJECTION TO CLAIM 83
17       OF PENSION BENEFIT GUARANTY CORPORATION
              IN THE AMOUNT OF $884,389,
18    CLAIM 84 OF PENSION BENEFIT GUARANTY CORPORATION
              IN THE AMOUNT OF $1,068,233,
19   AND CLAIM 85 OF PENSION BENEFIT GUARANTY CORPORATION,
                         NO. 2255
20                          AND
           APPLICATION FOR COMPENSATION, NO. 2316
21                          AND

22

23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

CLINE TRANSCRIPTION SERVICES  (702) 644-1123

```
 1              OMNIBUS OBJECTION TO CLAIM OF
                  IN THE AMOUNT OF MISFILED
 2        AGAINST USA CAPITAL FIRST TRUST DEED FUND, LLC,
         BY DANIEL O. CARLTON & TAKEKO CARLTON REVOCABLE TRUST
 3               DATED 04/30/97, CLAIM NO. 43;
          DANIEL O. CARLTON & TAKEKO CARLTON REVOCABLE TRUST
 4               DATED 04/30/97, CLAIM NO. 44;
          DANIEL O. CARLTON & TAKEKO CARLTON REVOCABLE TRUST
 5               DATED 04/30/97, CLAIM NO. 45;
          DANIEL O. CARLTON & TAKEKO CARLTON REVOCABLE TRUST
 6               DATED 04/30/97, CLAIM NO. 46;
          DANIEL O. CARLTON & TAKEKO CARLTON REVOCABLE TRUST
 7               DATED 04/30/97, CLAIM NO. 49;
         LAWRENCE J. ARONSON & HENRIETTA ARONSON, CLAIM NO. 50;
 8        MOLLIE SHOICHET & HENRIETTA ARONSON, CLAIM NO. 51;
        BUCKWALD REVOCABLE TRUST DATED 02/11/92, CLAIM NO. 52;
 9   PHILLIP DARIN GOFORTH & FRANCESCA M. GOFORTH, CLAIM NO. 54;
              MELINDA ESTEVEZ & RICHARD DAVID ESTEVEZ,
10                 ACCT. NO. 2, CLAIM NO. 57;
              MELINDA ESTEVEZ & RICHARD DAVID ESTEVEZ,
11                 ACCT. NO. 1, CLAIM NO. 58;
              MELINDA ESTEVEZ & RICHARD DAVID ESTEVEZ,
12                 ACCT. NO. 3, CLAIM NO. 59;
        THE EVO E. ZEPPONI AND BILLIE D. ZEPPONI FAMILY TRUST
13          UNDER AGREEMENT DATED 02/09/83, CLAIM NO. 60;
                IONA PETE BAKAS HALLIDAY, CLAIM NO. 61;
14        LAUREN J. GILBERT & ERIN M. GILBERT, CLAIM NO. 62;
                  LAUREN J. GILBERT, CLAIM NO. 63;
15        MICHAEL W. CARLTON & HELEN I. CARLTON, CLAIM NO. 67;
             SONDRA SKIPWORTH REVOCABLE TRUST DATED 11/28/01,
16                      CLAIM NO. 74;
                DONNOLO FAMILY TRUST DATED 08/24/88,
17         JOSEPH & LORETTA DONNOLO, TRUSTEES, CLAIM NO. 75;
                 RICHARD L. YOUNGE IRA, CLAIM NO. 76;
18        EDWIN C. HANSEN & RACHEL M. HANSEN, CLAIM NO. 78;
              CENTER STATE BEVERAGE, INC., CLAIM NO. 79;
19      LAYNE FAMILY TRUST, BRUCE & SHERRY LAYNE, CLAIM NO. 81;
     KAREN PETERSEN TYNDALL TRUST DATED 03/09/94, CLAIM NO. 86;
20       KPT IRREVOCABLE TRUST DATED 07/16/99, CLAIM NO. 87;
         KPT IRREVOCABLE TRUST DATED 07/16/99, CLAIM NO. 88;
21       ROBERT CAROLLO AND BEVERLEY CAROLLO, CLAIM NO. 92;
                  ARNOLD ROSENTHAL, CLAIM NO. 93;
22                 VICTORIA SMITH, CLAIM NO. 95;
                 L. KANANI COHUME, CLAIM NO. 101;
23                MICHAEL BAGINSKI, CLAIM NO. 113;
     KAREN PETERSEN TYNDALL TRUST DATED 03/09/94, CLAIM NO. 116;
24       KPT IRREVOCABLE TRUST DATED 07/16/99, CLAIM NO. 117;
                JAMES J. LEE, ESQ., CLAIM NO. 121;
25                 JAMES J. LEE, CLAIM NO. 122;
                WILLIAM CHAD BERRY, CLAIM NO. 126;
```

```
 1                  RDJ INVESTMENTS, CLAIM NO. 130;
                       RICHARD N. ANDERSON TTE,
 2        RICHARD N. ANDERSON SEPARATE PROPERTY, CLAIM NO. 131;
                    CRAIG ZAGER SEP IRA, CLAIM NO. 132;
 3           CURTIS R. & TERRI L. COLAGROSS, CLAIM NO. 139
                               NO. 2286
 4                                AND
                       OBJECTION TO CLAIM 120
 5            OF STANDARD PROPERTY DEVELOPMENT, LLC,
                   IN THE AMOUNT OF, NO. 2299
 6                                AND
          OMNIBUS OBJECTION TO CLAIM 115 OF BRIAN M. ADAMS
 7                       IN THE AMOUNT OF;
                    CLAIM 118 OF HERMAN M. ADAMS;
 8            CLAIM 118 OF BRIAN ANTHONY G. ADAMS;
          CLAIM 118 OF ANTHONY G. ADAMS OLYMPIA CAPITAL MANAGEMENT,
 9                          CLAIM 119;
          KANTOR NEPHROLOGY CONSULTANTS, LTD, 401(K) PSP,
10            GARY KANTOR, TRUSTEE, CLAIM 123;
                   DR. GARY KANTOR, CLAIM 124;
11            LYNN M. KANTOR, CLAIM 125, NO. 2301
                                AND
12            MOTION FOR PROTECTIVE ORDER, NO. 2441
                                AND
13           OBJECTION TO CLAIM 819 OF SPECTRUM FINANCIAL
                    IN THE AMOUNT OF $49,581
14            AND CLAIM 821 OF ROLLAND P. WEDDELL
                 IN THE AMOUNT OF $13,081, NO. 2067
15                                AND
                       ORDER SHORTENING TIME
16                 RE: APPLICATION TO EMPLOY
          DIAMOND, McCARTHY, TAYLOR, FINLEY & LEE, LLP,
17          AS SPECIAL LITIGATION COUNSEL APPLICATION
     PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014(A)
18       FOR ORDER UNDER SECTION 1103 OF THE BANKRUPTCY CODE
                 AUTHORIZING THE EMPLOYMENT AND RETENTION
19       OF DIAMOND, McCARTHY, TAYLOR, FINLEY & LEE, LLP,
                 AS SPECIAL LITIGATION COUNSEL
20          TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE
          FOR USA COMMERCIAL MORTGAGE COMPANY, NO. 2505
21                                AND
          HEARING RE: EMPLOYMENT APPLICATION EXTENSIONS (CONT.)
22                          NO. 2402
                                AND
23       STATUS HEARING RE: INVOLUNTARY PETITION, NO. 8
                                AND
24                       ORDER SHORTENING TIME
             RE: MOTION TO ENFORCE AUTOMATIC STAY
25                    TO PREVENT FORECLOSURE
          BY WESTERN UNITED LIFE ASSURANCE COMPANY, NO. 2561
```

4

1              VOLUME 1
   BEFORE THE HONORABLE LINDA B. RIEGLE
2      UNITED STATES BANKRUPTCY JUDGE

3         Wednesday, January 31, 2007

4              9:30 a.m.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Court Recorder:        Joanne Lloyd

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

```
 1    APPEARANCES:

 2    For the Debtor and        ANNETTE W. JARVIS, ESQ.
      Debtor in Possession:     Ray, Quinney & Nebeker, P.C.
 3                              36 South State Street
                                Suite 1400
 4                              Salt Lake City, Utah 84145

 5                              JEANETTE E. McPHERSON, ESQ.
                                Schwartzer & McPherson Law Firm
 6                              2850 South Jones Boulevard
                                Suite 1
 7                              Las Vegas, Nevada 89146

 8    For the USA Capital       CANDACE C. CARLYON, ESQ.
      First Trust Deed Fund     Shea & Carlyon, Ltd.
 9    Equity Security           233 South Fourth Street
      Holders:                  Suite 200
10                              Las Vegas, Nevada 89101

11    For the Direct            GREGORY E. GARMAN, ESQ.
      Lenders Committee:        Gordon & Silver, Ltd.
12                              3960 Howard Hughes Parkway
                                Ninth Floor
13                              Las Vegas, Nevada 89109

14    For the Unsecured         SUSAN M. FREEMAN, ESQ.
      Creditors Committee       Lewis and Roca, LLP
15    of USA Commercial         40 North Central Avenue
      Mortgage Company:         Phoenix, Arizona 85004
16
                                ALLAN B. DIAMOND, ESQ.
17                              Diamond, McCarthy, Taylor, Finley
                                  & Lee, LLP
18                              Two Houston Center
                                909 Fannin
19                              Suite 1500
                                Houston, Texas 77010
20
                                ERIC D. MADDEN, ESQ.
21                              Diamond, McCarthy, Taylor, Finley
                                  & Lee, LLP
22                              1201 Elm Street
                                34th Floor
23                              Dallas, Texas 75270

24

25
```

6

```
 1   APPEARANCES (Cont.):

 2   For USA Commercial        JEFFREY R. SYLVESTER, ESQ.
     Real Estate Group:        Sylvester & Polednak, Ltd.
 3                             7371 Prairie Falcon Road
                               Suite 120
 4                             Las Vegas, Nevada 89128

 5   For Standard Property     ANDREW M. BRUMBY, ESQ.
     Development, LLC:         Shutts & Bowen, LLP
 6                             300 South Orange Avenue
                               Suite 1000
 7                             Orlando, Florida 32801

 8   For Diversified Trust     ANNE M. LORADITCH, ESQ.
     Deed Fund Committee:      Beckley Singleton, Chtd.
 9                             530 Las Vegas Boulevard South
                               Las Vegas, Nevada 89101
10
     For Diversified Trust     JEFFERY D. HERMANN, ESQ.
11   Deed Fund Committee:      Orrick, Herrington & Sutcliffe, LLP
                               777 South Figueroa Street
12                             Suite 3200
                               Los Angeles, California 90017
13
     For Western United       NILE LEATHAM, ESQ.
14   Life Assurance Company:   Kolesar & Leatham, Chtd.
                               3320 West Sahara Avenue
15                             Suite 380
                               Las Vegas, Nevada 89102
16
                               MICHAEL W. ANGLIN, ESQ.
17                             Fulbright & Jaworski, LLP
                               2200 Ross Avenue
18                             Suite 2800
                               Dallas, Texas 75201
19
     For Johnny Clark          WILLIAM L. McGIMSEY, ESQ.
20   and the McGimsey          William L. McGimsey, P.C.
     Creditors:                601 East Charleston Boulevard
21                             Las Vegas, Nevada 89104

22   For Roland P. Weddell     ELISSA F. CADISH, ESQ.
     and Spectrum Financial    Hale, Lane, Peek, Dennison
23   Group:                       & Howard
                               3930 Howard Hughes Parkway
24                             Fourth Floor
                               Las Vegas, Nevada 89109

25
```

7

```
 1    APPEARANCES (Cont.):

 2    For Project              MATTHEW Q. CALLISTER, ESQ.
      Disbursement Group,      Callister & Reynolds
 3    Inc.:                    823 Las Vegas Boulevard South
                               Las Vegas, Nevada 89101
 4
      For Sondra Skipworth:    AARON R. DEAN, ESQ.
 5                             McCullough & Associates, Ltd.
                               601 South Rancho Drive
 6                             Suite A-10
                               Las Vegas, Nevada 89106
 7
      For the United States    AUGUST B. LANDIS, ESQ.
 8    Trustee:                 Office of the United States Trustee
                               300 Las Vegas Boulevard South
 9                             Suite 4300
                               Las Vegas, Nevada 89101
10
      For the Jones Vargas     JANET L. CHUBB, ESQ.
11    Direct Lenders,          Jones Vargas
      Joseph Donnolo, and      100 West Liberty
12    Loretta Donnolo:         Twelfth Floor
                               Reno, Nevada 89501
13                             (Telephonic)

14    For John A. Godfrey:     JAMES D. GREENE, ESQ.
                               Schreck Brignone
15                             300 South Fourth Street
                               Suite 1200
16                             Las Vegas, Nevada 89101

17    For Karen Petersen       KELLY J. BRINKMAN, ESQ.
      Tyndall:                 Goold, Patterson, Ales & Day
18                             4496 South Pecos Road
                               Las Vegas, Nevada 89121
19                             (Telephonic)

20    For USA Investment       RUSSELL S. WALKER, ESQ.
      Partners, LLC, and       Woodbury, P.C.
21    Joseph Milanowski:       265 East 100 South
                               Suite 300
22                             Salt Lake City, Utah 84111

23    For the Trustee:         ANTHONY M. ZMAILA, ESQ.
                               Santoro, Driggs, Walch, Kearney,
24                                Johnson & Thompson
                               400 South Fourth Street
25                             Third Floor
                               Las Vegas, Nevada 89101
```

8

1    APPEARANCES (Cont.):

2    Also Present:            THOMAS J. ALLISON
                              Mesirow Financial Interim
3                               Management, LLC

1          (Court previously convened at 09:38:25 a.m.)

2          (Partial transcript at 09:43:56 a.m.)

3          THE COURT:  Okay.  All right.  So let's leave the

4     first matter for a few minutes and go to the second matter.

5     That's the omnibus objection by Ms. Loraditch or did you

6     want to go in a separate order?  I have no -- we can do that

7     one next, then, Mr. McGimsey?

8          MS. LORADITCH:  Your Honor will recall at the last

9     hearing on this matter held January 3rd the Court requested

10     additional briefing on issues surrounding Bankruptcy Code

11     Section 510(b), and the parties filed those with the court

12     on January 17th.

13          As instructed, they were filed blind, and so, really,

14     it's the Court's preference if you want to hear from one or

15     the other first or we'll --

16          THE COURT:  Why don't you respond, Mr. McGimsey,

17     first, and then I'll have Ms. Loraditch.  Since they were

18     blind, you can, in essence, reply to each other's briefs.

19          MS. LORADITCH:  Correct.

20          MR. McGIMSEY:  Okay.  The first point I made,

21     your Honor, is that under the bankruptcy rules the attempt

22     to subordinate a claim requires an adversary proceeding.

23          The objection to the claim really is nothing more than

24     an attempt by the committee of equity holders to say that

25     our claim should be subordinated under Rule -- let me find

1    that rule -- 7001 of the Rules of Bankruptcy Procedures.

2         Matters that are to be brought by adversary proceedings

3    includes a proceeding to subordinate any allowed claim or

4    interest, except when a Chapter 9, Chapter 11, Chapter 12,

5    or Chapter 13 plan provides for subordination.

6         So our initial position is that this objection to claim

7    is really nothing more than an attempt to subordinate, and

8    that requires --

9              THE COURT:  But how is your claim any different

10   than every one of the other equity holders?

11             MR. McGIMSEY:  How is my claim different?

12             THE COURT:  Than every one of the equity holders.

13             MR. McGIMSEY:  I have filed a creditors claim.

14   The equity holders apparently don't think they have a

15   creditors claim.  They were given notice.  Well, they didn't

16   file creditors claims.  Okay?

17        And, you know, that argument comes back to, you know,

18   the late-filed claims' argument in any case.  If they didn't

19   file a claim on time, then they don't get paid in accordance

20   with people who filed claims on time.  I mean, that's the

21   standard procedure.

22        If a creditor wants to file a late claim, wants

23   permission to be allowed to file a late claim, he files.

24   That creditor files an application, and it shows under

25   Rule 60 why he should get the relief.

1    We don't have that in front of us, your Honor.  That's

2    not a question that's in front of you.  There's no equity

3    holder in a similar situation to my clients who has asked

4    this Court to be allowed now to file a late claim.

5    I don't know that they should be allowed to file a late

6    claim.  If they didn't file a late claim or if they didn't

7    file a claim, then that's their problem.  You know, we filed

8    a claim.  We had a claim.

9    And that's one of the important provisions, and I think

10   the legislative history that I have referred to in my points

11   and authorities and the cases that I have referred to and

12   even the cases that the committee has cited indicate that

13   people in a position of my clients do, in fact -- assuming

14   they prove it, and no one's really objected to it -- do, in

15   fact, have a creditors claim.

16   The reason for the mandatory subordination provisions

17   provided in 510(b) arose out of the fact that equity holders

18   could, in fact, have a creditors claim in a bankruptcy.

19       THE COURT:  Well, if you hadn't bought the stock,

20   you wouldn't have a claim.

21       MR. McGIMSEY:  I'm not saying that it didn't arise

22   out of the purchase or sale of a security, but that isn't

23   the question.  The question is do I have a claim.

24   And prior to the enactment of 510(b), you know, in

25   fact, people who bought stock in a corporation and had

1    either rescinded or had rescissionary rights to get their

2    money back were treated on a par with other unsecured

3    creditors.

4        The Law Review article cited in the cases and,

5    actually, in the legislative history prior to the enactment

6    of the mandatory subordination provisions showed that.

7        It said, you know, we don't think it's fair that

8    someone who, you know, has purchased an equity interest in

9    the corporation and, therefore, expected to share in profits

10   ought to be treated on a par with general unsecured

11   creditors who were just looking to be repaid and were not

12   looking for a share in the profits.  But prior to the

13   passage of this statute -- and I think it was '77, 1977 or

14   1978 -- that was exactly the case.

15       And in the legislative history even -- and I have

16   quoted that and attached it to my points and authorities --

17   the SEC took the position that, in fact, a stockholder who

18   had been defrauded by the corporation and had a claim for

19   damages ought, in fact, to be treated on a par with other

20   unsecured general creditors.

21       Congress decided otherwise, but they didn't say that

22   that was not a claim because it is a claim.  It's a claim

23   for damages.

24       What they said was that that claim should be

25   subordinated to general unsecured creditors.  No general

1    unsecured creditor has asked that our claim be subordinated.

2        And all of the cases essentially cited by the

3    Diversified Trust Fund dealt with the question of whether or

4    not a claim for damages arose out of the purchase and sale

5    of a security.

6        In fact, probably, the best case from my standpoint,

7    the best language, is a Nevada case, the American Wagering

8    case, in which the Nevada Court and the Bankruptcy Appellate

9    Panel for the Ninth Circuit dealt with the issue.

10        And they decided on behalf of creditors that

11    Mr. Racusen (phonetic) should be subordinated to general,

12    not secured creditors, but to general creditors because his

13    obligation arose out of the purchase and sale of a security.

14        And in that case, they specifically stated that 510(b)

15    was not meant to protect or for the benefit of equity

16    holders.

17        And so, you know, it appears to me, your Honor, that

18    your concern is that these other equity holders are in the

19    same position as my clients, but they're not in the same

20    position as my clients because they didn't file a proof of

21    claim.

22        THE COURT:  But they are, but for the fact that

23    they didn't file a proof of claim because they perceived the

24    law to be different.

25        MR. McGIMSEY:  Well —

1          THE COURT:  So if I --

2          MR. McGIMSEY:  -- I don't think --

3          THE COURT:  It seems to me there is a

4    mistake-at-law issue here.  If I open it up again which I

5    could do and deem that everybody filed, you'd be in the

6    exact same spot, right?

7          MR. McGIMSEY:  I don't think that you can do that,

8    your Honor.  I mean, you can do that.  I think you have to

9    have -- I think that the Constitution requires that you have

10   a case in controversy in front of you.  That someone bring

11   it to you, and then under the law they have to show good

12   reason why they didn't file a claim.

13       I don't there's a -- why is there a mistake in law?  I

14   don't see a mistake in law.  It was clear to me, you know.

15   I mean, we got a creditors claim.  We filed a creditors

16   claim.  We got a notice that said --

17         THE COURT:  But your injury is the exact same

18   injury that everybody else suffered here.  Your alleged

19   injury is that notwithstanding the fact they said we're

20   going to invest in First Trust Deed Funds they didn't invest

21   in First Trust Deed Funds.

22       Notwithstanding the fact they said we're going to pay

23   the money only back to the fund and dividend it out, they

24   didn't do that.  It's exactly like everybody else's, right?

25         MR. McGIMSEY:  Well, that's the same thing for any

1   late-filed claims, your Honor.  We have a whole slew of law

2   on late-filed claims.

3        And somebody's got to come in and say I want to file a

4   late-filed claim.  There's no such thing as a class claim,

5   you know.  They can't come in, and I don't believe --

6             THE COURT:  Right.

7             MR. McGIMSEY:  -- that --

8             THE COURT:  But late-filed claims are allowed in a

9   Chapter 11 where there's an excuse and where there's been no

10  harm.

11            MR. McGIMSEY:  I don't see that in front of you.

12            THE COURT:  I mean, you just want your clients --

13  and rightfully so.  You want your clients to get paid more

14  than everybody else who's in exactly the same position that

15  they're in.

16            MR. McGIMSEY:  Well, they're not in exactly the

17  same position as I am.  They chose not to file --

18            THE COURT:  The only reason --

19            MR. McGIMSEY:  -- a proof --

20            THE COURT:  -- they're not --

21            MR. McGIMSEY:  -- of claim.

22            THE COURT:  -- is a procedural technicality,

23  right?

24            MR. McGIMSEY:  Yeah.  That's the same for any

25  late-filed claim, your Honor, isn't it?  Is there any

16

1    difference between any late-filed claim?  Just, you know, I,

2    hey --

3              THE COURT:  Yeah.  Because you don't have to file

4    a claim if you're listed.  These people were listed.

5              MR. McGIMSEY:  They were not listed as creditors.

6              THE COURT:  Well, they're listed as equity

7    holders.

8              MR. McGIMSEY:  Well, that's fine, and they were

9    satisfied --

10             THE COURT:  Under your theory, though, every one

11   of them is a creditor because there was -- under your

12   theory, every one of them was automatically a creditor

13   because the management didn't do what they said they were

14   going to do.

15             MR. McGIMSEY:  No.  I don't know that.  I haven't

16   talked to every one of them.  I've only talked to my

17   clients.  You know, I don't represent them.

18             THE COURT:  Well, but you don't have any

19   particularized claim.  You don't have any -- your claim is

20   merely -- and "merely" is the wrong word.

21        You don't have any specific instance where they said

22   I'm going to do something for you and not for everybody

23   else.  All you have is the agreements to rely on, right?

24             MR. McGIMSEY:  Um-h'm.

25             THE COURT:  All you have to rely on are the

1   instruments that form the investment.

2          MR. McGIMSEY:  Basically.

3          THE COURT:  Okay.  That's what everybody else has

4   got.

5          MR. McGIMSEY:  They should have filed claims,

6   your Honor.  You know, I mean, it's easy to say to all of us

7   it's not fair for you to get paid ahead of other people just

8   because you obeyed the rules, just because you took notice

9   of the deadlines and filed a proof of claim.

10      Well, and I still think you have to have it in front of

11  you, your Honor.  I think you have to have somebody say I

12  want to file a late claim.

13      The committee can't do that.  They don't represent

14  these people.  There's no such thing as a class claim, and

15  then I think if someone wants to file a late claim, you

16  know, there has to be more to it just than --

17          THE COURT:  Well, why --

18          MR. McGIMSEY:  -- oh, I didn't --

19          THE COURT:  -- couldn't the debtor just reschedule

20  the (indiscernible) creditors claims, then, under that

21  theory?  If your theory is correct, they just reschedule

22  them as creditors claims, right?

23          MR. McGIMSEY:  I don't know if they can

24  reschedule.  I don't know if the debtor can reschedule them

25  as creditors claims.

1      But I assume if they reschedule them as creditors

2  claims, we'd have to go through the confirmation process

3  again.

4          THE COURT:  Okay.  All right.  Response.

5          MS. LORADITCH:  I think your Honor has really hit

6  upon the core issue, and that is that none of these fund

7  members have alleged any damage whatsoever that they have

8  suffered that is unique to them, that is unique to their

9  respective individual equity interests.

10      And as our supplemental brief went into great detail

11  about, these fund members are subject to 510(b) with respect

12  to their claim, their damage claims.

13      They arise from the purchase of a debtor's security.

14  Those damages are to be subordinated to all interests that

15  are senior to or equal to the interest represented by that

16  security.  The only exception in that statute is the common

17  stock and no other security.  That is not what we have here.

18      What these fund members are trying to do, in essence,

19  is turn 510(b), the absolute-priority rule, the other

20  provisions of the bankruptcy code, and controlling law in

21  this jurisdiction on its head.

22      Section 510(b) prevents these fund members from

23  circumventing the priority scheme established by the

24  bankruptcy code.  510(b) mandates that they recover the

25  equity level on a pro rata basis.

1          They are attempting to be treated as creditors.  They

2     say that, well, you know, we can just be subordinated behind

3     all other general unsecured creditors.

4          But the fact is they know there are no other general

5     unsecured creditors.  So, in effect, they're asking to be

6     paid ahead of all of their other fund members that as the

7     Court said are in exactly the same position.

8          The only other thing I would point out, your Honor,

9     unless you have specific questions for me is that these

10    claims that are being asserted are against Diversified Fund

11    when as we said in our brief they're really derivative

12    actions if that's what they're trying to seek, and they're

13    going against the wrong entity.

14         Diversified Fund is owned by these fund members and all

15    other 1300-and-some-odd fund members, and so any damage that

16    was suffered by the company as a whole was suffered by all

17    the company's equity holders on a pro rata basis.

18         Those actions belong to the company itself.  And

19    although they're allowed to bring those claims derivatively

20    on the company's behalf, they belong to the company, and

21    anything that they recover on behalf of the company belongs

22    to the company.  So in any event, they would recover and

23    have to share along with all the other Diversified Fund

24    members.

25         So I think that's the recurring theme here is that

1    these fund members must recover on a pro rata basis, and

2    they are not to be permitted to go outside the statutory

3    scheme for the priority of distributions.

4        Did the Court have any other questions for me?

5            THE COURT:  No.  Thank you.

6            MS. LORADITCH:  Thank you.

7            THE COURT:  Okay.  Ms. Jarvis, did you have a

8    comment?

9            MS. JARVIS:  The debtors did file a joinder in

10    these objections.  And one other fact I just would like to

11    point out to the Court that is relevant to this, these fund

12    members were sent proofs of interest where we listed their

13    interest and told that they did not have to file even the

14    proofs of interest if they agreed with what was on the

15    schedules.

16        So, you know, the members were led to believe correctly

17    that they had equity-interest claims, and, therefore, those

18    that filed creditors claims that are really no different

19    than these equity claims should be treated as equity claims

20    under 510(b).

21        That is the correct result under the law and also is

22    the correct result given the notice that was given to the

23    parties in this case, in the --

24            THE COURT:  Okay.

25            MS. JARVIS:  -- Diversified case.

1          MR. McGIMSEY:  I appreciate Ms. Jarvis' comments;

2     however, my clients received a notice to file a proof of

3     interest, and they also received a notice to file a proof of

4     claim if they had a creditors claim.

5          Is that correct?

6          MS. JARVIS:  Everyone received proofs of claim.

7     Everyone received --

8          MR. McGIMSEY:  I was --

9          MS. JARVIS:  -- (indiscernible).

10         MR. McGIMSEY:  We received a notice.

11         MS. JARVIS:  Everybody --

12         MR. McGIMSEY:  They gave us --

13         MS. JARVIS:  -- (indiscernible).

14         MR. McGIMSEY:  -- a deadline to file a proof of

15    claim and a proof of interest, so, I mean, everyone was

16    given notice to file a proof of claim.

17         The argument -- and I won't belabor what I've already

18    stated, your Honor, but the argument that somehow our claim

19    for damages against the Diversified Trust Fund belongs to

20    the Diversified Trust Fund is just circular.  It makes no

21    sense at all.

22         And, in addition, if your Honor will look at the

23    congressional history, the legislative history, which I

24    cited to and actually attached to my points and authorities,

25    in that legislative history, it did not indicate that a

1    creditors claim such as mine would be paid on a pro rata

2    basis with other equity holders.  In fact, it said -- and it

3    talked about a subordinated debenture -- that it would be

4    paid ahead of equity holders.

5         THE COURT:  Okay.  Well, I'm going to sustain the

6    Funds' objections.  510(b) says, "For purpose of

7    distribution under this title, a claim arising from" --

8    let's see.

9    "A claim for damages arising from the purchase or sale

10   of such a security shall be subordinated to all claims or

11   interests that are senior to or equal to the claim or

12   interest represented of a said security, except if it's

13   common stock."

14   You know, there's no need to go to the legislative

15   history because it's clear.  It says arising from the

16   purchase or sale.

17   The only reason they have a claim is because they

18   bought the security, and management didn't do what it's

19   supposed to do.

20   And the problem with this -- a distinction will be

21   made.  Let's assume that, coincidentally, these people sold

22   goods and services to the debtor.  Well, they'd have a

23   creditors claim for that because it's a different level.

24   I just can't fathom the concept that these creditors

25   could claim a creditors claim for the exact same injury that

1    everybody else has.

2        And under that theory, they would get their claim paid

3    in full, and I don't know what the amount of the claim would

4    be.  I guess the amount of the claim would be everything

5    they put in the investment.

6        And then everybody else who suffered the exact same

7    kind of injury and damage would then have to share pro rata

8    after what's left.  That just turns the concept of

9    bankruptcy upside down.  I agree.

10        And if it were the other way, trust me, I would just

11    allow everybody else to claim to be treated as a creditors

12    claim.

13        There's absolutely no reason for disparate treatment,

14    and that would, in essence, have created an unequal

15    classification, so it was an interesting theory, but I don't

16    agree with it, so --

17            MR. McGIMSEY:  Well, can I ask you exactly what

18    you've done, your Honor?  Have you said I have no claim?

19            THE COURT:  No.  I said you have a claim as an

20    equity holder.

21            MR. McGIMSEY:  Well, do you say I have no --

22            THE COURT:  Well, no.

23            MR. McGIMSEY:  I --

24            THE COURT:  You may have a claim, but it's going

25    to be treated equally.

1          MR. McGIMSEY:  So you are subordinating my claim.

2          THE COURT:  It's going to be treated equally to

3    all other claims, the equity claims, in the same interest.

4          MR. McGIMSEY:  So I'm being subordinated; is that

5    correct?

6          THE COURT:  You're going to be treated like

7    everybody else.  You're going to be treated exactly in

8    accordance with what everybody else is being treated.

9          MR. McGIMSEY:  So --

10         THE COURT:  It's not subordinated.

11         MR. McGIMSEY:  Well, then --

12         THE COURT:  You're asking --

13         MR. McGIMSEY:  You're --

14         THE COURT:  -- to be elevated.  You're asking to

15    be elevated.  That's what you were asking to do.

16         MR. McGIMSEY:  I'm not asking to be elevated.

17         THE COURT:  You were.

18         MR. McGIMSEY:  I'm not asking --

19         THE COURT:  But you were saying --

20         MR. McGIMSEY:  -- to be elevated.

21         THE COURT:  -- by filing that you were saying I'm

22    going to categorize my equity interest different by filing a

23    creditors claim; ergo, I am being elevated, so it's not that

24    you're being subordinated.  You're being treated exactly

25    what you're supposed to be.

1       Oh, and in the 7001, I think only a -- it says, "Except

2   as provided in a Chapter 11 plan."  I think 7001 only

3   applies when you're seeking subordination, equitable

4   subordination, the bad-conduct kinds of equitable

5   subordination, as opposed to looking at what the nature has,

6   so I just disagree.

7       I mean, it's an interesting argument.  I just disagree

8   so, you know, your claim will be treated like everybody

9   else's.

10          MR. McGIMSEY:  Well, I don't understand that.  My

11  claim has been -- they filed an objection to the claim, and

12  I would just like it clear, your Honor --

13          THE COURT:  Yeah.

14          MR. McGIMSEY:  -- you were saying that 510(b) says

15  I don't have a claim.

16          THE COURT:  No.  It says that it's to be -- well,

17  it says that it was subordinated, but I think in this case

18  it's senior to or equal, or equal.

19          MR. McGIMSEY:  No one's claimed these --

20          THE COURT:  What are your damages?  Your damages

21  are exactly what you put in, right?

22          MR. McGIMSEY:  Exactly.

23          THE COURT:  Okay.

24          MR. McGIMSEY:  That I haven't --

25          THE COURT:  So why --

1          MR. McGIMSEY:  -- gotten back.

2          THE COURT:  -- should your clients be paid their

3   25,000, 50,000, whatever it is and in full before everybody

4   else gets their share or, more importantly, they have to

5   share it pro rata?  That's what you're asking.

6          MR. McGIMSEY:  I'm asking that because we --

7          THE COURT:  And I'm saying no.  I'm saying that's

8   not the law.

9          MR. McGIMSEY:  So these people -- anybody can file

10  a late claim.  We no longer have a --

11         THE COURT:  That has nothing to do with it.

12         MR. McGIMSEY:  We no longer have a late claim --

13         THE COURT:  It's not a creditors claim.

14         MR. McGIMSEY:  So that is what I wanted you to

15  say, your Honor.

16         THE COURT:  Okay.  It's not --

17         MR. McGIMSEY:  That's what I want --

18         THE COURT:  -- a creditors claim.

19         MR. McGIMSEY:  -- to hear.  I don't have a

20  creditors claim.

21         THE COURT:  As a creditors claim.  Okay.

22         MS. LORADITCH:  I'm sorry, your Honor.  If I could

23  just clean up a couple of things?  This issue came up at the

24  last hearing, and the Court had continued the committee's

25  objection to all of the --

```
 1              THE COURT:  Right.

 2              MS. LORADITCH:  -- claims on equity --

 3              THE COURT:  So I'll sustain --

 4              MS. LORADITCH:  -- or misfiled as creditors

 5    claims, and so I just wanted to make sure we were having the

 6    correct order on the record that the creditor claims were

 7    disallowed because those fund members are going to recover

 8    from the fund pursuant to their equity interest.

 9              THE COURT:  Correct.

10              MS. LORADITCH:  And I believe there were -- I

11    don't if Mr. Greene is --

12              THE COURT:  He is back there.

13              MS. LORADITCH:  -- here today.  He had also asked

14    that his particular claim be continued, and I believe

15    counsel for Ms. Tyndall is on the phone.

16        And we had filed a declaration -- or not we, but

17    Mesirow Financial had filed a declaration yesterday

18    indicating that some of Ms. Tyndall's claims were, in fact,

19    arising from her investments as a direct lender, although

20    she is also a Diversified --

21              THE COURT:  Well, let's do --

22              MS. LORADITCH:  -- Fund --

23              THE COURT:  -- one thing at a time first, okay,

24    while Mr. Greene's here.

25              MS. LORADITCH:  Yeah.
```

1          THE COURT:  You don't disagree as to --

2          MR. GREENE:  Good morning, your Honor.

3  James Greene for John Godfrey.  Mr. Godfrey has filed a

4  proof of claim.  My understanding of the law was

5  consistent --

6          THE COURT RECORDER:  I'm sorry, Counsel.  Could

7  you move the microphone a little bit closer to you?

8          MR. GREENE:  Oh, sure.

9          THE COURT RECORDER:  Thank you.

10          MR. GREENE:  My understanding of the law was

11  consistent with the Court's, although I think Mr. McGimsey

12  made an interesting argument.

13      So we wanted to continue the objection on ours, but we

14  would agree that based on the Court's ruling his claim would

15  be treated as a proof of interest.

16          THE COURT:  Okay.  And if you prefer, I'll just do

17  it based upon that ruling.  So if you want, so that you're

18  not giving up anything, I'll sustain their objection, so

19  that --

20          MR. GREENE:  That's fine, your Honor.

21          THE COURT:  Okay.

22          MR. GREENE:  And we'll just put that in the order.

23      (Thereupon, the portion requested to be transcribed

24      was concluded at 10:09:04 a.m.)

25

1       I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                          03/12/07

7    Lisa L. Cline, Transcriptionist                Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25