# EXHIBIT 1

EXHIBIT 1

**PRIF II ACQUISITION, LLC**
**2160 North Central Road, Suite 308**
**Fort Lee, NJ 07024**

22 January 2007

Robert A. MacFarlane
Chief Executive Officer
Homes for America Holdings, Inc.
E-mail: rmacfarlane@hfaholdings.com

Alan Simonowitz
Director of Finance
E-mail: asimonowitz@hfaholdings.com

**Re: Colt Gateway, 140 Huyshope Avenue, Hartford, CT 06106**

Dear Robert,

PRIF II Acquisition, LLC and/or entities affiliated or designated by the aforementioned (collectively the "**Lender**" or "**PRIF**"), is prepared to entertain first and second mortgage loans to a single purpose entity which owns the above referenced real property and other improvements located thereon (collectively, the "**Property**").

This letter constitutes neither an offer nor a commitment by PRIF in any form, but rather summarizes the terms of the proposed transaction. Closing of the proposed transaction and the final terms thereof shall be set forth in definitive loan documents and subject to the satisfaction by Borrower of all pre-closing conditions set forth therein, and the satisfactory completion of PRIF'S due diligence review of the Property. The proposed loan will be based upon the following overall terms and conditions:

**Borrower:** A newly formed, bankruptcy remote single purpose entity ("New SPE") whose only asset will be all of the membership interest of Colt Gateway, LLC. (Less 1% non voting interest held by CG Operating Co.), its wholly owned subsidiaries, or another entity owned and controlled by Homes for America Holdings, Inc. which owns the Property and all improvements thereon (the "Borrower").

**Loan Amount:** Up to Sixteen and One-Half Million Dollars ($16,500,000) depending upon the due diligence analysis of the Property and all improvements thereon, Collateral, Borrower, and any Guarantors (the "Loan"). The total funding includes the following:

a) Two and One-half Million ("the Gap Funding"), and b) Fourteen Million dollars ($14,000000) (the "USA Funding"), jointly called the proposed "Loan". The proposed Loan shall not exceed 75% maximum loan to "as is" value and 70% loan to maximum "as stabilized" value of the Property and any other additional collateral (collectively the "Collateral") pledged to support repayment of the Loan (as hereafter

*[handwritten annotations in left margin: "WITH C/ost IN RESV", "USA PAYOFF + COMPLETE C. ARMORY"]*

Colt Gateway, LLC
1/22/2007
Page 2 of 12

defined), net of existing indebtness. Borrower intends to use the loan proceeds to retire existing Property debt to USA Capital and to finance a portion of the construction on the South Armory building, interest carry and closing costs in connection with the Property and the Loan.

**Maturity Date:** Eighteen (18) months from closing. Borrower will have one (1) option to extend the maturity date for an additional term not to exceed 6 months (the "Extension Option") exercisable upon, but not limited to, the following: 1) Borrower provides ninety (90) days advanced written notice to Lender; 2) payment of an Extension Fee (as defined below); 3) Lender's determination that there exists no event of default or an event which the giving of notice or lapse of time or both would constitute an event of default nor has there ever existed an event of default under the loan documents. The term "Extension Fee" shall mean the amount of two percent (2.0%) of the outstanding amount of the principal balance of the Loan at the time of the exercise of the Extension Option (the **"Extension Fee"**).

**Annual Interest Rate:** 30 day LIBOR Rate plus the LIBOR Margin, but in no event less than sixteen percent (16%) per annum. The LIBOR Margin is 10.68%. Interest calculations shall be based on the LIBOR Rate. The LIBOR Rate shall be the average rate as shown in Dow Jones Markets (formerly Telerate) (Page 3750) at which deposits in United States Dollars are offered by first class banks in the London Interbank Market at approximately 11:00 a.m. (London time) two (2) business days prior to the closing date. The LIBOR Rate will be adjusted on the 1st day of each calendar month during the term of the Loan following a change in the LIBOR Rate. The LIBOR Rate will also be adjusted for any applicable reserves and taxes if required by future regulations.

**Annual Default Rate:** Upon the occurrence of an Event of Default, as defined in the definitive loan documents, additional interest will be due in the amount of 5% per annum in excess of the Annual Interest Rate.

**Loan Fee:** Four percent (4.0%) of the aggregate Loan Amount, payable at closing of the Loan.

**Prepayment:** The Borrower may prepay the Loan at any time and from time to time, in whole or in part, subject to the Prepayment Fee, if applicable.

**Prepayment Fee:** The Borrower may prepay the Loan at any time and from time to time, in whole or in part provided that in the event of a prepayment prior to the 180 day anniversary of the initial funding of the Loan, such prepayment shall be accompanied by an amount equal to the difference between (i) the amount of interest that would have been paid on the prepaid amount for the first 180 days of the Loan (based on LIBOR as of the date of prepayment), and (ii) the amount of interest actually paid

03/12/07  15:25 FAX 702 367 9675          FERTITTA ENT
Case 06-10725-gwz    Doc 3061-1    Entered 03/12/07 20:11:15    Page 4 of 14    ☑004
FROM :HOMES FOR AMERICA HOLDINGS, INC   FAX NO. :914-964-7034           Mar. 12 2007 05:48PM  P4/14

Colt Gateway, LLC.
1/22/2007
Page 3 of 12

by the Borrower on the prepaid amount prior to the prepayment date. Borrower shall provide thirty (30) days' prior written notice to PRIF of its intent to prepay the Loan.

Notwithstanding the above, the Gap Funding is excluded from this provision and shall NOT be subject to any Prepayment Fee.

**Guarantors:**   Homes for America Holdings, Inc. and Colt Gateway, LLC, shall be herein referred to as the "Guarantor".

Notwithstanding the above, Robert MacFarlane and Robert Kohn ("Recourse Guarantors") will each provide a guaranty of the loan for any losses (including Lender's reasonable attorneys' fees and expenses) incurred by Lender arising out of or attributable to or relating to any of the following but only after Recourse Guarantors have had notice of default and, to the extent such default is curable, 10 days opportunity to cure : (i) the gross negligence or intentional, willful misconduct of Property Owner or Borrower; (ii) the physical waste or willful destruction of the Property, including the intentional removal of any portion of the personal property in violation of the Loan documents; (iii) any mechanic or materialman liens against the Property not permitted in the Loan documents; (iv) failure to pay taxes and any other assessments; (v) the failure to obtain the prior written consent of Lender prior to entering into, modifying or amending any material affecting the Property, Property Owner, Borrower, the Loan, or any other material agreement including, without limitation major leases (including ground leases), agreements with any affiliate of Borrower or Borrower Principals, applicable organizational documents, and other material agreements affecting the use, operation, construction or maintenance of the Property; and (vii) any violation of the jury or counterclaim waiver provisions set forth in the Loan documents; (items (i) through (vi) collectively, the "Partial Recourse Obligations").

In addition, Borrower and Borrower Principals will be personally liable for the full amount of the Loan upon the occurrence of any of the following: (a) contesting the validity or enforceability of the Loan documents (b) any fraud or intentional material misrepresentation in connection with the Loan which has a material adverse affect on the value of the Property or the Collateral; (c) any intentional misappropriation, misapplication, conversion or any application of insurance proceeds, condemnation awards, rents, security deposit or sale proceeds from any portion of the Property or the Collateral in violation of the Loan documents (including interference with the operation of any lockbox agreement); (d) any action by Borrower or Borrower Principals which causes a violation of the due-on-sale or due-on-encumbrance provisions of the Loan documents; (e) a bankruptcy filing by borrower (its general partner or managing member), or any

03/12/2007 MON 14:59  [TX/RX NO 5695]

03/12/07 MON 15:20  [TX/RX NO 9359]

Colt Gateway, LLC.
1/22/2007
Page 4 of 12

        guarantor or recourse guarantor, or an involuntary filing against borrower (its general partner or managing member), or any guarantor or recourse guarantor provided such filing was facilitated, coordinated or directed by borrower, any of its principals or affiliates, or any guarantor or recourse guarantor; and (f) if either the Borrower or any other person restricted by the Loan documents incurs any indebtedness (secured or unsecured) or account payable obligations, (items (a) through (f) collectively, the "Full Recourse Obligations").

**Collateral:**  The Loan shall be collateralized as follows:

I) With respect to the South Armory, Sawtooth, L Shaped & Gym and Boiler House properties, Lender will be granted (i) a second mortgage lien against Borrower's fee simple interest in such properties, (ii) a security interest (subordinate to any security interest held by the senior lender on any such properties) in any personal property owned by the Borrower used in the use, operation, leasing and management of such properties or the improvements thereon, (iii) an absolute assignment (subordinate to any security interest held by the senior lender on any such properties) of all related leases and rental income generated from such properties, and (iv) a collateral assignment (subordinate to any security interest held by the senior lender on any such properties) of any contracts, permits and licenses with respect to the development of such properties, subject, in each event to the following liens:

- **South Armory-** $19.5MM (approximately $17.9 MM current balance) 1st with Sovereign Bank, and $2.0 MM cross collateralized lien with CDA -to be in a pari passu position with the PRIF mortgage).
- **Sawtooth-** $5.67MM 1st with Citizens Bank (with additional $1.5MM construction funding committed) and $2.0 MM cross collateralized lien with CDA- to be in a pari passu position with the PRIF mortgage).
- **L Shaped & Gym-** $4.19MM 1st with Citizens Bank and $2.0 MM cross collateralized lien with CDA on L Shaped building (not gym)- to be in a pari passu position with the PRIF mortgage).
- **Boiler House-** $3.8MM 1st/ Lease Obligation with Bankers Bank.

II) With respect to the East Armory, North Armory, U Shaped, Building 8 and Building 10 properties, (i) a first mortgage lien against Borrower's fee simple interest in such properties, (ii) a first priority security interest in any personal property owned by the Borrower used in the use, operation, leasing and management of such properties or the improvements thereon, (iii) an absolute assignment of all related leases and rental income generated from such properties, and (iv) a collateral

Colt Gateway, L.L.C.
1/22/2007
Page 5 of 12

assignment of any contracts, permits and licenses with respect to the development of such properties; provided, however, Lender will agree to subordinate its security interest and other collateral rights in, to and under such properties as follows on terms and conditions reasonably acceptable to Lender and as required by the respective senior lenders:

- **East Armory**- Lien will be subject to $10.1MM+/- 1st with TBD Bank when in place.
- **North Armory**- Lien will be subject to $7.0MM+/- 1st with Cathay Bank, when in place.
- **U Shaped**- Lien will be subject to $1.75MM+/- 1st with CB&T when in place, and proposed additional construction funding up to $5.0MM.
- **Building 8**- Lien will be subject to construction funding at approximately $1.1MM, when in place.
- **Building 10**- Lien will be subject to construction funding at approximately $1.1MM, when in place.

III) First mortgage lien on any additional property including parking lots and other vacant sites within or adjacent to the Property, or benefiting the subject property -- collateral TBD.

IV) Pledge of Guarantors' ownership interest in Borrower.

V) To the extent there is any net cash flow generated from the Property after debt service and approved property expenses, or to the extent Borrower receives any other collateral relating to the Property, such funds and collateral shall be pledged to PRIF as additional security for the Loan.

VI) Direct pledge of rental cash flow from the following billboard leases (excluding initial bonuses) located at Colt Gateway:
- Lamar Advertising (term to 1-31-22) at $125,000 per annum year 1 (2007) + 3% per annum (or 15% of Gross Revenue, if greater), and

- NextMedia Outdoor (term to 2-29-20) at $60,000 per annum (or 35% of Net Advertising Revenues, if greater).

VII) Second mortgages on two penthouse units located at Beau Rivage Condominium, Fort Myers, Florida (subject to 1st mortgage liens of approximately $1.4 MM).

VIII) Pledge of all Borrower's right to receive tax credit payments due from Chevron or TIF with respect to all properties other than Sawtooth, South Armory and CREC building.

Colt Gateway, LLC.
1/22/2007
Page 6 of 12

        IX)    Assignment of all rights with respect to various City, State and Federal "streetscape" grants

**Recourse:** The Loan will be fully recourse to Borrower and Guarantors.

**Underwriting Fee:** $5,000 to be paid upon acceptance of this letter by Borrower. The underwriting fee will be fully earned by PRIF upon Borrower's execution and acceptance of this letter and shall be non-refundable.

**Monetization Event and Loan Amortization:** All funds including (i) Net Sale Proceeds (gross sale proceeds less third party brokerage fees and direct sales related expenses), (ii) tax credit and TIF proceeds and/or (iii) Refinance Proceeds shall be applied and distributed in the following priority:

1. Principal and interest on the approved senior debt per the Lender's repayment schedule;
2. Accrued and unpaid fees and charges on the Loan;
3. Accrued and unpaid interest on the Loan;
4. Current interest on the Loan;
5. The outstanding principal balance of the Loan until the Loan is reduced to zero pursuant to a repayment schedule; and
6. All remaining cash flow ("Net Proceeds") to the Borrower

**Application Deposit:** $50,000 to be paid upon Borrower's execution, delivery and acceptance of this letter ("Application Deposit"), in addition to the $50,000 Deposit already received to date. The Application Deposit will be used towards the cost of underwriting the Loan and anticipated environmental, legal and other fees and expenses. Any and all expenses in excess of the Application Deposit shall be payable by the Borrower on demand. The remaining Application Deposit will be refundable only in the event this transaction is not approved by PRIF in substantial conformance to this proposal letter. All of PRIF costs and expenses as provided below, including legal fees shall be deducted from the Application Deposit in the event the Borrower is entitled to a refund of the Application Deposit as provided herein. In the event that the Loan does close, any unused Application Deposit shall be credited against the Loan Fee.

**Due Diligence:** Commencing on the date of Borrower's acceptance of the terms of this letter and PRIF's receipt of the Application Deposit and Underwriting Fee, PRIF shall commence an inspection and study of the Collateral and all aspects thereof. If PRIF disapproves of any matters relating to the Collateral at any time (which disapproval shall be in PRIF's sole and absolute discretion without any regard to any standard of

Colt Gateway, LLC.
1/22/2007
Page 7 of 12

        reasonableness), PRIF shall have the right to reject Borrower's application for the Loan by written notice to Borrower. Borrower shall cooperate in all aspects of the due diligence and provide access and copies of all documents related to the Property.

**Required Documents:**    Promptly following the mutual execution of this letter, and PRIF's receipt of the Application Deposit and the Underwriting Fee, Borrower will deliver to PRIF copies of the following, to the extent applicable and reasonably available:

(i) Completed Loan Application;

(ii) A current sources and uses statement for loan proceeds (including itemized site costs);

(iii) Current Rent Roll for the Property;

(iv) A current summary of all tenant leases on the Property, including a description of all free rent, reduced rent or other similar rental concessions under such leases, deposits collected and deposits waived, together with copies of all leases now in effect;

(v) Payoff letter from current USA Capital lender;

(vi) Loan documents on current 1st mortgage indebtness, including draw schedules;

(vii) Draft loan documents for all contemplated loans, if any;

(viii) Agreements on Tax Credit, governmental and quasi governmental grant allocations;

(ix) Construction contracts, permits, licenses and approvals;

(x) Executed intercreditor (of cross collateralized lien position) agreement between Connecticut Development Agency and PRIF on Sawtooth, CREC and South Armory buildings outlining agreement to provide PRIF with a parri passu lien position;

(xi) A current preliminary report of title prepared by Commonwealth Land Title Insurance Company covering the Property together with copies of all documents referenced therein; contact Douglas Forsyth at 212-973-6210. Lender reserves the right to require updates through Commonwealth;

(xii) The real property tax assessment and tax bills relating to the Property for the current and past two years;

(xiii) All recorded or unrecorded covenants, easements and development agreements relating to the Property now in effect or, if in Borrower's possession or control, previously in effect;

Colt Gateway, LLC.
1/22/2007
Page 8 of 12

(xiv) Forecasted monthly income statements and capital expenditures for the next year covering the Property;

(xv) ALTA Survey of the Property prepared by a licensed surveyor acceptable to PRIF;

(xvi) Complete set of Plans, Specifications, and construction drawings on building and site improvements;

(xvii) A copy of all current environmental reports for the Property, with evidence of insurance and a reliance letter in favor of PRIF (if applicable);

(xviii) Copies of all organizational documents of Borrower and any corporate Guarantor(s);

(xix) Copies of current and two previous years' financial statements, and tax returns for Borrower and Guarantor;

(xx) Documentation necessary in order for lender to run a credit report on Guarantor and principals;

(xxi) Three credit references and three business references for each Guarantor;

(xxii) All documentation with respect to "streetscape" grants

(xxiii) Subordination of Chevron lease to PRIF lien ;

(xxiv) Copies of all leases with respect to additional parking; and

(xxv) Such other documents, instruments or certificates as PRIF and its counsel may reasonably require, including such documents as PRIF in its sole, but reasonable, discretion deems necessary or appropriate to effectuate the terms and conditions of this letter, the definitive loan documents, and to comply with all applicable the laws.

**Protective Covenants:** The documents evidencing and securing the Loan will provide the Lender with certain rights that shall include but not be limited to the right to:

a) Approve any changes in the composition or ownership structure of the Borrower;
b) Review agreements for sale of Property Collateral;
c) Review any material contracts for goods and services affecting the Property including management, sale/leasing and marketing agreements;
d) Approve any proposed zoning changes or other changes that could affect Property entitlements or development rights or permits;

Colt Gateway, LLC.
1/22/2007
Page 9 of 12

  e)  Approve proposed sitework;
  f)  Review contracts with and payments to any affiliates of Borrower;
  g)  Require that Sale or Refinance Proceeds from the Property be deposited into a cash management account;
  h)  Require that Homes for America Holdings, Inc. retain net sales proceeds on condominium units at St. Tropez, The Riviera, Monaco and Clear Lake projects (net of sales, closing, and agreed upon distribution to company principals);
  i)  Require that Homes for America Holdings, Inc. provide a minimum of $5.0 MM refinance/ sales proceeds (when applicable) from Point Street Landing, Yonkers, NY project (net of sales, closing, and agreed upon distribution to company principals);
  j)  Limitations on Homes for America Holdings, Inc. to a $1.0 Million/year stock buyback, with stock that is repurchased either remaining in a company trust account or dissolved upon purchase;
  k)  Review financial statements Homes for America Holdings, Inc. and Colt Gateway, LLC financials on a quarterly basis;
  l)  Require that Borrower successfully meet the following milestones. Failure to meet these targets is an event of default with the right to foreclose, Borrower shall be granted an additional two months grace period within which to meet required deadlines:

- Loan closing and beginning of construction on East Armory Building by June 1, 2007,
- Loan closing with Cathay Bank on North Armory Building by April 1, with completion of construction within 14 months,
- Sale or Refinance of Sawtooth and CREC buildings by August 31, 2007, if not, agreement to hire an outside broker with closing completed by year end, and
- Completion of residential lease-up in South Armory building by June 1, 2007.

  m)  Review and approve, subject to reasonableness, and other matters that could have a material impact on the value of the Property, Collateral, Borrowers or Guarantors.

**Hazardous Materials:** Promptly following the mutual execution of this letter, Borrower will provide PRIF with all studies and information in Borrower's possession or control pertaining to asbestos or other hazardous materials contained in or located in, upon or about the Property.

**Environmental**

Colt Gateway, LLC.
1/22/2007
Page 10 of 12

| | |
|---|---|
| **Indemnity:** | Borrower and Guarantors shall execute an environmental indemnification acceptable to PRIF for the benefit of PRIF provided that such indemnification shall not apply to any environmental remediation costs arising out of environmental conditions disclosed to PRIF (the "**Environmental Indemnity**"). |
| **Exclusivity:** | Upon acceptance of this letter by Borrower, and for so long as PRIF is conducting due diligence and drafting and negotiating the definitive loan documents, Borrower agrees to work exclusively with PRIF to close the transaction contemplated herein (the "Exclusive Period"). The Lender will endeavor to complete its due diligence as expeditiously as possible upon both the execution of this letter and the receipt of the Application Deposit and Underwriting Fee. The Borrower further agrees neither to seek nor entertain alternative proposals or transactions with respect to the transactions contemplated herein nor otherwise engages or encourage another person to solicit a proposal for an alternative transaction during the Exclusive Period. If at any time during the Exclusive Period Borrower solicits, requests, receives or negotiates an alternative debt or equity financing proposal, agreement, proposal letter or commitment from another party in lieu of the Loan contemplated herein, then the Borrower will immediately pay to PRIF one percent (1%) the Loan amount or $165,000 as a break-up fee (the "Break-up Fee"), plus reimbursable costs and expenses. This paragraph, including the obligation to pay the Break-up Fee contained herein, shall survive termination of this letter and, if not immediately paid, PRIF will be entitled to file a lis pendens against the Property. The provisions of this Exclusivity paragraph shall not be applicable if PRIF notifies the Borrower that it will not make the Loan contemplated herein. PRIF agrees to immediately notify Borrower if it does not intend to undertake the Loan described herein. |
| **Costs and Expenses:** | Borrower shall reimburse PRIF for all reasonable out-of-pocket expenses incurred in connection with the transactions contemplated in this letter including, but not limited to, travel, attorneys fees, environmental and structural review of the Collateral, ALTA surveys, title insurance premiums and title insurance company charges, consultants expenses (if retained), closing costs, and all other costs and expenses incurred by PRIF in conjunction with the Loan whether or not the transaction contemplated herein closes. In the event the transaction contemplated herein does not close, Borrower shall promptly reimburse PRIF for all costs and expenses incurred by PRIF in conjunction with the proposed Loan. PRIF may require Borrower to provide additional funds from time to time to supplement the Application Deposit for expenses actually incurred or to be incurred regardless of whether or not the transaction contemplated herein actually closes. Borrower shall promptly remit payment for such costs and expenses to PRIF within three (3) business days of PRIF' request for same. Notwithstanding |

Colt Gateway, LLC.
1/22/2007
Page 11 of 12

**Financial Covenants:** The definitive Loan documents will contain financial covenants of Borrower and Guarantor, including, without limitation, (a) Borrower will not incur any indebtedness on the Property secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (i) the Loan, (ii) existing secured debt against various parcels of the Property identified herein; (iii) future secured debt against various parcels of the Property identified herein on terms and conditions reasonably acceptable to Lender; and (iv) trade payables and accrued expenses incurred in the ordinary course of business; (b) Borrower will not sell all or substantially all of the assets or enter into any transaction of merger or consolidation with any other entity without the prior approval of Lender; (c) Guarantors will not sell, transfer, convey, pledge or encumber any of the ownership interest in Borrower, and (d) Borrower will not seek the dissolution or winding up, in whole or in part, of the Borrower.

**Closing:** The closing shall be subject to (i) the completion by PRIF of its due diligence with respect to the Property, Collateral, Borrower and Guarantors; (ii) the execution and delivery of the definitive loan documents and the satisfaction of all conditions contained therein; and (iii) the execution and delivery of intercreditor agreements between PRIF and the senior lenders and CDA for the properties identified under Paragraph I of the Collateral paragraph of this letter on terms and conditions acceptable to PRIF.

**Brokers:** Borrower and PRIF will each represent and warrant to the other in the definitive loan documents that neither of them has employed any broker to act on its behalf in carrying on negotiations, or had any dealings with any brokers relating to the transaction contemplated by this letter, to which the other will have any liability. Borrower will indemnify and hold PRIF harmless, and PRIF will indemnify and hold Borrower harmless, from and against any claim or claims for brokerage or other commission arising from or out of any breach of the foregoing representation and warranty by the respective indemnitor.

Marketing: Borrower hereby agrees to allow Palisades Financial to arrange for the publication, at the expense of Palisades Financial, of one or more stories about the financing arranged by Palisades. Also to erect a sign(s) at the Property indicating its funding.

Colt Gateway, LLC.
1/22/2007
Page 12 of 12

Other than PRIF's obligation to conduct its due diligence as provided hereinabove and the Borrower's obligation to pay the Application Deposit, the Underwriting Fee, and PRIF's expenses, this letter is intended to be a <u>non-binding</u> letter agreement regarding the contemplated transaction. Upon PRIF's satisfactory completion of its due diligence as contemplated herein, which PRIF shall endeavor to complete as soon as possible, the parties will attempt to negotiate definitive loan documents but intend that, other than any rights or obligations of the parties which may arise out of a commitment issued by PRIF, no legal rights or obligations will come into existence until the definitive loan documents are signed and delivered by the parties and all conditions to closing are satisfied and that, in such event, their respective legal rights and obligation will then be only those set forth in the loan documents.

THE REMAINER OF THIS PAGE LEFT INTENTIONALLY BLANK

Colt Gateway, LL.C.
1/22/2007
Page 13 of 12

You may accept the terms of this proposal by executing this letter agreement in the space provided below and returning such executed copy along with the Underwriting Fee and Application Deposit totaling $50,000 to the undersigned via Telecopier at (201) 894-8833. The terms of this Letter shall expire on January 29, 2007 at 5:00 PM (Eastern Standard Time).

Sincerely,

**PRIF II ACQUISITION, LLC**


By: _____
Authorized Signatory

            **AGREED AND ACCEPTED**
            **THIS _____ DAY OF _____, 2007**

            **HOMES FOR AMERICA HOLDINGS, INC.**


            By _____

            Its:

            **AND**

            **COLT GATEWAY, LLC**


            By _____

            Its: