LEWIS
AND
ROCA
LLP
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 3/13/07

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** | Jointly Administered |
| **USA Commercial Mortgage Company** | Chapter 11 Cases |
| **06-10725 – Lead Case** | Judge Linda B. Riegle Presiding |
| **USA Capital Realty Advisors, LLC** | |
| **06-10726** | **Affecting:** |
| **USA Capital Diversified Trust Deed Fund, LLC** | ¨  All Cases |
| **06-10727** | **or Only:** |
| | ×  USA Commercial Mortgage Company |
| **USA Capital First Trust Deed Fund, LLC** | ¨  USA Capital Realty Advisors, LLC |
| **06-10728** | ¨  USA Capital Diversified Trust Deed Fund, LLC |
| **USA Securities, LLC** | ×  USA Capital First Trust Deed Fund, LLC |
| **06-10729** | ¨  USA Securities, LLC |
| **Debtors.** | |

### Declaration of Edward M. Burr in Support of USACM Liquidating Trust Objections to Proofs of Claim and Motions to Classify Claims

I, Edward M. Burr, hereby declare under penalty of perjury that:

1.      I am a principal with Sierra Consulting Group, LLC ("Sierra"). Sierra is one of the leading providers of restructuring advisory and litigation support services in the Southwest. Sierra is a leading national consulting firm comprised of experienced CPAs and other financial professionals.

2.      I submit this declaration on behalf of the USACM Liquidating Trust's Objections to Proofs of Claim and Motions to Classify Claims filed this date.

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

3.     This Court approved the Official Committee of Unsecured Creditors of USA Commercial Mortgage Company's ("Committee") appointment of Sierra as financial advisers on August 11, 2006.  Since that date, I have assisted the Committee in analyzing facts concerning these jointly administered bankruptcy cases.  As of the Effective Date of the confirmed Plan of Reorganization, Sierra is retained by the USACM Liquidating Trust to investigate certain claims.

4.     I make the following declaration based upon my personal knowledge, and upon the records of the Debtors described in this declaration, including Debtors' original and amended schedules of liabilities and the proofs of claim described herein.

5.     On April 13, 2006 (the "Petition Date"), USACM and other debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  USACM continued to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, under new management by Thomas J. Allison of Mesirow Financial Interim Management, LLC ("Mesirow"), who served as the Chief Restructuring Officer.

6.     On January 8, 2007, the Court entered an order confirming the Plan [Docket No. 2376].

7.     Under section I.A. of the Plan, any and all Claims of Non-Debtor Insiders against USACM are "Subordinated Claims."  "Non-Debtor Insiders" is defined to mean any Insider that is not a Debtor, and expressly includes, without limitation, the IP Parties, any Affiliate of the Debtors and the IP Parties, and Insiders of the IP Parties.  The "IP Parties" are defined to mean Joseph Milanowski, Thomas Hantges, Paul Hamilton, and USA Investment Partners, LLC ("USAIP").  "Affiliates" include any corporation 20% or more of whose outstanding voting securities are directly or indirectly owned or controlled by a person that directly or indirectly owns or controls 20% or more of the outstanding voting securities of the debtor.  Plan § I.A.; 11 U.S.C. §§ 101(2)(B), (15).

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

8.  Pursuant to section II.C.1. of the Plan, all payment to holders of Allowed Subordinated Claims is subordinated to the payment in full, plus interest, of all Allowed Penalty Claims, which in turn are subordinated to the payment in full, plus interest, of all Allowed General Unsecured Claims.  The Plan explains that no distribution to holders of Allowed Subordinated Claims is anticipated.

9.  The Plan also provided for rejection of most executory contracts, including the Leases described in this declaration, through not including such leases in the Schedule of assumed contracts and leases.  Plan V.B.

10.  **Haspinov, LLC** ("Haspinov").  Haspinov leased office space to USACM pursuant to a lease dated April 1, 2002 (the "Lease").  USACM continued to occupy space pursuant to the Lease postpetition.

11.  According to public records available to the USACM Liquidating Trust, Haspinov is a limited liability company, the sole member and manager of which is USAIP.

12.  I am informed by communications with Mesirow and my observations of the leased premises that prior to the Petition Date, Haspinov and USACM allowed and arranged for a portion of the office space leased to USACM under the Lease to be used by Vegas Hot Spots, LLC, the sole member and manager of which is also USAIP.  Debtor USACM under Mesirow's management allowed the arrangement to continue, while segregating access to the USACM portion of the premises.  On information and belief, Vegas Hot Spots has not paid any portion of the rent or other charges due under the Lease to Haspinov, or reimbursed USACM for its share of such rent and charges.

13.  Haspinov was listed in the USACM Schedules as a party to an executory contract with USACM in the form of a real property lease of office space [Docket 784, Schedule G]   Haspinov was also listed as holder of an unsecured claim in the amount of $92,231.08 [Docket 682, Schedule F].  On March 7, 2007, USACM filed amended

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1   Schedules that list Haspinov as an unsecured creditor holding a claim in the same amount,

2   but showing its claim as disputed. [Docket 3002]

3        14.    On November 8, 2006, Haspinov filed a proof of claim, which it amended on

4   February 9, 2007, with an amended proof of claim in the amount of $404,261.60 [Claim

5   Number 736-2]. That amount apparently reflects one year of rental and other payments

6   due under the Haspinov Lease, pursuant to 11 U.S.C. § 502(b)(6).

7        15.    **Pecos Professional Park Limited Partnership** ("Pecos"). Pecos leased

8   office space to USACM pursuant to a lease dated July 21, 1999 (the "Lease"). USACM

9   continued to occupy space pursuant to the Lease postpetition.

10       16.    Pecos is a limited partnership. According to public records, one of its

11  general partners is USA Development, Inc. and one of its limited partners is Institutional

12  Equity Partners, LLC. Public records show that USA Development, Inc. in turn is

13  controlled by Hantges, as president and secretary, and that Institutional Equity Partners,

14  LLC is managed by USAIP.[1]

15       17.    Pecos was listed in the USACM Schedules as a party to an executory

16  contract with USACM in the form of a real property lease of office space [Docket 784,

17  Schedule G].  Pecos was also listed as holder of an unsecured claim in the amount of

18  $166,788.42. [Docket 682, Schedule F]. On March 7, 2007, USACM filed amended

19  Schedules that list Pecos as an unsecured creditor holding a claim in the same amount, but

20  showing its claim as disputed. [Docket 3002]

21       18.    On November 9, 2006, Pecos filed a proof of claim, which it amended on

22  February 9, 2007, with an amended proof of claim in the amount of $470,080.98 [Claim

23  Number 752-2]. That amount apparently reflects one year of rental and other payments

24  due under the Pecos Lease, pursuant to 11 U.S.C. § 502(b)(6).

25

26  [1] The USACM Liquidating Trust reserves the right to amend and expand this objection after discovery to elicit additional facts.

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

19.   **Tanamera Corporate Center, LLC** ("Tanamera").  Tanamera leased office space to USACM pursuant to a lease dated March 16, 2005 (the "Lease").

20.   According to public records available to the USACM Liquidating Trust, Tanamera is a Nevada limited liability company.  According to its 2004 Articles of Incorporation (attached as Ex. 1 to USACM Liquidating Trust's Motion to Classify Claims Filed by Tanamera Corporate Center LLC in Plan Class A-7, and Reservation of Counterclaims and Objections filed simultaneously herewith ("Motion to Classify Tanamera Claims")), Messrs. Hantges and Milanowski were two of its three managers. The records thereafter are inconsistent.  A January 26, 2005 filing listed DDH Financial Corp. and B&L Investments, Inc. as its managers; a February 24, 2005 filing listed DDH Financial Corp. and USAIP as the managers; and an October 27, 2005 filing likewise listed DDH and USAIP as the mangers, showing this arrangement as continuing through December 2006 (copies of referenced filings attached as Ex. 2 to Motion to Classify Tanamera Claims).  The most recent filing (attached as Ex. 3 to Motion to Classify Tanamera Claims) shows B&L Investments along with DDH Financial as the managers. The members are not listed in any of the public filings.  This information is sufficient to show an Insider relationship during at least most of the USACM bankruptcy case, and also show USAIP as one of the managers when the lease was signed.

21.   Tanamera was listed in the USACM Schedules as a party to an executory contract with USACM in the form of a real property lease of office space [Docket 784, Schedule G].

22.   On July 14, 2006, Tanamera filed a proof of claim, which it amended on November 2, 2006, with an amended proof of claim in the amount of $66,668.00 [Claim Number 61-2].

23.   **Lerin Hills Ltd.** ("Lerin Hills").  Lerin Hills filed Claim No. 1279 on November 10, 2006, claiming an unsecured non-priority claim of $1,257,233.40 and a

LEWIS
AND
ROCA
LLP
L A W Y E R S

priority claim of $797,175.62, for a total of $2,054,409.07 [sic].  The Lerin Hills Claim alleges breach of contract, among other theories.  Attached to the Lerin Hills Claim is a summary of alleged damages, but a copy of the contract allegedly breached is not attached, nor is any other supporting documentation provided.

24.    Lerin Hills asserts that the amount of $797,175.62 is believed to have been paid to private lenders since the bankruptcy petition was filed in the form of interest, and arguably constitutes an administrative expense under 11 U.S.C. §503(b)(1).

25.    Lerin Hills is not a party to any post-petition agreement with any of the jointly administered Debtors.  No executory contract or other agreement with Lerin Hills was assumed by any of the Debtors under 11 U.S.C. § 365.

26.    **Mountain West Mortgage Co.** ("MWM").  I have determined in my investigation of the historic activities of USACM that USACM originated loans for borrowers and solicited the funding of such loans from numerous individuals and entities (collectively, the "Direct Lenders").  Upon information and belief, with few exceptions, USACM originated loans that provided for a mandatory initial funding amount with any additional funding to be made solely at the discretion of the Direct Lenders.  Upon further information and belief, when USACM arranged an increase in the original loan amount, USACM solicited the existing Direct Lenders in the original loan for the additional funds.  Absent the affirmative decision by the Direct Lenders to invest additional funds, the original loan would not be increased.

27.    MWM filed Claim No. 203 on September 20, 2006, claiming an unsecured non-priority claim of $2,048,000.00 for "Services performed."  Attached to the MWM Claim is a Declaration of Joe Milanowski ("Milanowski Declaration") and correspondence referenced in the Declaration.  No loan transaction documents are attached to the MWM Claim.

LEWIS
AND
ROCA
LLP
L A W Y E R S

28.     The Milanowski Declaration asserts that MWM is a mortgage company through which several entities and individuals lent monies as direct lenders ("MWM Direct Lenders"), along with USACM investors through USACM as the loan service provider.   In that regard, the Milanowski Declaration alleges that the Lerin Hills project was funded with a second deed of trust through funds generated by MWM and USACM, and serviced by USACM.

29.     The Milanowski Declaration alleges that the Lerin Hills project called for $12,900,000 in funding.

30.     The Milanowski Declaration further asserts that when USACM and MWM entered into the Lerin Hills loan transaction, it was agreed that Lerin Hills would pay an exit fee of $5,120,000, $3,072,000 of which was to be paid to USACM, and $2,048,000 of which was to be paid to MWM, as evidenced by the loan documents.

31.     The Milanowski Declaration further asserts that MWM relied on this representation and promised third parties a share of the exit fee funds upon payment to MWM.

32.     I have reviewed the status of loan collections during the administration of these cases.  According to Mesirow's records, no exit fee was or will be paid on the Lerin Hills loan transaction.

33.     I am aware that the record in the administrative file of this Court demonstrates: (i) Joseph Milanowski was a principal controlling the affairs of USACM before the bankruptcy filing; (ii) Milanowski directed the theft of tens of millions of dollars of principal from direct lenders; (iii) Milanowski has consistently misrepresented the assets, liabilities and intentions of USA Investment Partners, LLC to Thomas Allison on Debtors' behalf; and (iv) Milanowski can not testify as set forth in the Milanowski Declaration at a trial of this matter without waiving his Fifth Amendment privilege against self-incrimination, an unlikely event at best.

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

34.     I am aware from the Court's claims docket that numerous Direct Lenders have filed proofs of claim asserting damages against USACM arising out of the origination of the Lerin Hills loan.

35.     I believe that MWM is responsible for any misrepresentations made or omissions of material fact in connection with the Lerin Hills loan.

36.     **Copper Sage Commercial Center LLC** ("Copper Sage").  Copper Sage filed its claim on November 9, 2006, claiming an unsecured debt of $3,500,000 for "breach of contract."  Copper Sage filed an amended proof of claim on November 13, 2006, claiming an unsecured debt of $3,500,000 for "Breach of Contract, Intentional Misrepresentation and other theories."

37.     Copper Sage appended to its claim an incomplete copy of a Construction Loan Agreement between Copper Sage as borrower and a group of direct lenders ("Copper Sage Direct Lenders") as lender, dated March 1, 2006 ("Loan Agreement").

38.     The Copper Sage Direct Lenders funded the initial loan in the amount of $3,550,000.  The Loan Agreement provides that the principal advanced under the promissory note may be increased to $11,300,000, but does not oblige USACM or the Copper Sage Direct Lenders to advance loan funds to Copper Sage beyond the initial principal amount of $3,550,000.

39.     Also attached to the Copper Sage Claim is a copy of a Deed of Trust, Assignments of Rents, Security Agreement and Fixture Filing dated March 1, 2006 by and between Copper Sage as Trustor, First American Title Insurance Company as Trustee, and the Copper Sage Direct Lenders as Beneficiary ("Deed of Trust").  The Deed of Trust states that it for the purpose of securing payment of Trustor's Promissory Note in the initial principal amount of $3,550,000, and provides that the principal amount of the Promissory Note may be increased to $11,300,000.

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

40.    **Los Valles Land & Golf LLC** ("Los Valles").  Los Valles filed Claim No. 1366 on November 13, 2006.  The Los Valles Claim alleges:

40.1.    Unlawful collection and/or charging of loan fees, extension fees, and exit fees pursuant to California Business and Professional Code §10130 and/or 10131;

40.2.    Willful failure to timely deliver payoff statement demanded under California Civil Code § 2943 and Nevada Revised Statutes §107 210;

40.3.    Intentional misrepresentation;

40.4.    Violation of consumer protection statutes and/or unfair competition; and

40.5.    A claim for attorneys fees in an amount to be determined.

41.    Attached to the Los Valles Claim is an Attachment to Proof of Claim of Los Valles Land & Golf, LLC ("Attachment"), as well as copies of several documents referenced in the Attachment.  Those documents include a copies of a Fee Agreement dated March 3, 2004 by and between Los Valles as Borrower, and USACM ("Fee Agreement"); a Buyer's Settlement Statement dated March 17, 2004, prepared by First American Title Company ("Settlement Statement"); an incomplete copy of a Loan Agreement dated March 3, 2004 between Los Valles as Borrower and the Los Valles Direct Lenders as Lender ("Loan Agreement"); a Loan Extension Agreement dated October 3, 2005 by and between Los Valles as Borrower, and the Los Valles Direct Lenders as Lender ("First Loan Extension Agreement"); an Assumption Agreement dated January 3, 2006, between Los Valles as Borrower, the Los Valles Direct Lenders as Lender, and Transferee, Los Valles Company, Inc. ("Assumption Agreement"); a Loan Extension Agreement dated March 17, 2006, by and between Los Valles Company, Inc. as Borrower, and the Los Valles Direct Lenders as Lender ("Second Loan Extension Agreement"); a Promissory Note Secured by Deed of Trust dated March 3, 2004, in the principal amount of $11,700,000 ("Note"); a Deed of Trust, Assignment of Rents, Security

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

Agreement and Fixture Filing (Second Position) dated March 3, 2004 ("Deed of Trust");

three letters to USACM concerning Los Valles' request for a payoff demand and per diem

amount through December 31, 2004 ("Los Valles correspondence"); and a Demand for

Payment from USACM dated February 23, 2005 ("Demand for Payment").

42.     Los Valles alleges that it paid $500,000 in loan fees at closing, as required

by the Loan Agreement.  Los Valles contends that the Loan Agreement further obliges Los

Valles to pay USACM an exit fee, as a deferred loan fee, of 1.5% of the gross sales price

of each lot at the time sale of each lot closes.

43.     Los Valles also contends that under the First Loan Extension Agreement and

Second Loan Extension Agreement Los Valles is obliged to pay extension fees of

$234,000 for each extension.

44.     Los Valles asserts that the Fee Agreement was entered into in California and

that USACM is not a licensed real estate broker in California.  Los Valles contends that,

therefore, USACM was not authorized to collect or charge loan fees, extension fees,

and/or exit fees from Los Valles.

45.     The Fee Agreement, however, provides that Los Valles is a Delaware

limited liability company and that USACM is a Nevada corporation.  It further provides

that the Fee Agreement "shall be governed by the laws of the State of Nevada."

46.     Los Valles contends notwithstanding the Assumption Agreement and that

the Second Loan Extension Agreement was issued to Los Valles Company, Inc. as

Borrower, Los Valles remains liable for the extension fees and exit fee and any interest

thereon to USACM.

47.     Los Valles seeks restitution from USACM for any amounts it paid or may be

required to pay in the future.  Los Valles asserts that its unsecured, nonpriority claim is for

no less than $2,000,000 in loan fees, extension fees, and exit fees collected or charged by

USACM, but does not provide a calculation of how it arrived at that figure.

1817065.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

48.     Los Valles contends that notwithstanding the Assumption Agreement and that the Second Loan Extension Agreement was issued to Los Valles Company, Inc. as Borrower, Los Valles remains liable for the extension fees and exit fee and any interest thereon to USACM.

49.     Los Valles additionally alleges that USACM willfully refused to deliver a payoff demand statement under California Civil Code § 2943 and Nevada Revised Statutes § 107 210, and that when USACM provided the payoff demand statement, it intentionally misrepresented therein that Los Valles owed an exit fee of $1,664,403.94, knowing that the sale of lots was a condition precedent to Los Valles' liability for an exit fee and that no lot sales had yet occurred.  Los Valles claims that it relied on USACM's statement, and was thereby prevented from obtaining new financing, which allegedly triggered the need for loan extensions and obtaining for USACM the extension fees and the exit fee.  Los Valles asserts that USACM is therefore liable to Los Valles for no less than $2,000,000, and that Los Valles is entitled to punitive or exemplary damages for USACM's alleged willful and intentional conduct in making alleged false statements.

50.     Finally, Los Valles alleges that USACM violated unspecified consumer protection statutes by engaging in unfair competition through each of the above alleged acts, including charging fees for arranging a loan without having a California real estate license, willfully failing to issue a timely payoff demand statement, and repeatedly and intentionally misrepresenting the amount required to pay off the loan.  Los Valles seeks restitution of no less than $2,000,000 on this claim.

51.     Los Valles asserts that USACM is liable for its attorneys' fees in connection with each of Los Valles' claims.

52.     Los Valles further asserts a right to setoff and/or recoup any payments that Los Valles has made or may make on account of the loan fee, extension fees, or the exit fee, as well as any of its other claims against USACM, against amounts that Los Valles

11

LEWIS
AND
ROCA
LLP
L A W Y E R S

1   may owe to USACM and the Direct Lenders under the Note, Deed of Trust, Fee

2   Agreement, Loan Agreement, and related documents.

3         53.    Interestingly, the Los Valles proof of claim makes no mention of an October

4   6, 2006 letter agreement between Los Valles and USACM as part of a satisfaction of the

5   USACM direct loan known as Halsey Canyon wherein USACM compromised its rights

6   and claims with Los Valles.  The agreement reflects compromises by USACM to its

7   detriment in consideration of the promises and commitments by Los Valles therein,

8   including acknowledgment of the sums due and acknowledgment that Nevada law

9   governs.

10        54.    Based upon our investigation to date, each of the Claims described should

11  not be allowed in the amount claimed.  We are continuing to investigate the nature of the

12  Claims, defenses and the amounts owed.

13        I make this declaration under penalty of perjury under the laws of the United States

14  on Tuesday, March 13, 2007.

15                              By /s/ Edward M. Burr
                                Edward M. Burr
16

17

18

19

20

21

22

23

24

25

26

1817065.1