1

1          UNITED STATES BANKRUPTCY COURT

2                  DISTRICT OF NEVADA

3                  LAS VEGAS, NEVADA

4   In re:  USA COMMERCIAL MORTGAGE    )  E-Filed:  03/14/07
    COMPANY,                           )
5                                      )
            Debtor.                    )  Case No.
6                                      )  BK-S-06-10725-LBR
    _____   )  Chapter 11
7

8              TRANSCRIPT OF PROCEEDINGS
                         OF
9          MOTION TO ALLOW CLAIMS OR INTERESTS
       (MOTION FOR ORDER TEMPORARILY ALLOWING THE CLAIM
10      OF DEL AND ERNESTINE BUNCH FOR VOTING PURPOSES)
                       VOLUME 1
11        BEFORE THE HONORABLE LINDA B. RIEGLE
              UNITED STATES BANKRUPTCY JUDGE
12
            Wednesday, December 20, 2006
13
                    1:30 p.m.
14

15

16

17

18

19

20

21

22

23

24   Court Recorder:         Helen C. Smith

25   Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

2

```
 1   APPEARANCES:

 2   For Del Bunch and        RICHARD F. HOLLEY, ESQ.
     Ernestine Bunch:         Santoro, Driggs, Walch, Kearney,
 3                              Johnson & Thompson
                             400 South Fourth Street
 4                           Third Floor
                             Las Vegas, Nevada 89101
 5
     For the Debtor:          LENARD E. SCHWARTZER, ESQ.
 6                           Schwartzer & McPherson Law Firm
                             2850 South Jones Boulevard
 7                           Suite 1
                             Las Vegas, Nevada 89146
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Court convened at 01:54:11 p.m.)

2              THE COURT:  Okay.  Now, on USA Commercial.

3      Appearances, please.

4              UNIDENTIFIED SPEAKER:  Judge, (indiscernible).

5              THE COURT:  No.  We don't need any.

6      (Colloquy not on the record.)

7              MR. HOLLEY:  Good afternoon, your Honor.

8      Richard Holley on behalf of Del and Ernestine Bunch.

9              MR. SCHWARTZER:  Lenard Schwartzer on behalf of

10     USA Commercial Mortgage.

11             THE COURT:  Okay.  All right.  Go ahead,

12     Mr. Holley.

13             MR. HOLLEY:  Thank you.  Your Honor, first of all,

14     I would like to thank the Court for entertaining our motion.

15     I do understand I believe where the process is procedurally

16     in terms of the Court confirming the plan this morning I

17     think based upon a cramdown of class A-4.

18         So, seemingly, this whole thing would be moot, but,

19     apparently, the debtor's position is as I understand it is

20     that unless we are willing to withdraw the ballot for voting

21     purposes of the claim that they want to go forward in order

22     to tie down some appeal issues.

23             THE COURT:  And I think that makes sense because

24     that would leave one more issue which either is or isn't for

25     an appeal --

```
 1              MR. HOLLEY:  Yes.  And --
 2              THE COURT:  -- depending --
 3              MR. HOLLEY:  And I'm not --
 4              THE COURT:  -- upon --
 5              MR. HOLLEY:  And I'm not --
 6              THE COURT:  -- how I rule.
 7              MR. HOLLEY:  And I'm not disputing that,
 8   your Honor.  I just want to make sure that I'm in proper
 9   context --
10              THE COURT:  I appreciate that.
11              MR. HOLLEY:  -- so the Court doesn't feel like
12   we're up here pestering, you know --
13              THE COURT:  No.
14              MR. HOLLEY:  -- the Court --
15              THE COURT:  No.  And I appreciate --
16              MR. HOLLEY:  -- because --
17              THE COURT:  Yeah.
18              MR. HOLLEY:  I --
19              THE COURT:  I mean --
20              MR. HOLLEY:  I --
21              THE COURT:  -- I recognize that that's just one
22   more issue.  And if your claim is allowed, then that's the
23   only issue.  If it's not allowed, then that resolves that
24   issue.
25              MR. HOLLEY:  Exactly.  And that's my
```

1    understanding, your Honor, and, again, we do appreciate the

2    Court taking the time for this.

3        I know that you've had a very taxing at least couple of

4    days if not months, and I do appreciate the Court's

5    willingness to entertain us.

6        If I could, your Honor, just to set the stage,

7    yesterday afternoon, Mr. Bunch's 2004 examination was taken.

8    And in conjunction with that, there were a number of

9    exhibits that were submitted at the deposition as well as

10   exhibits that we had submitted in support of our motion to

11   allow the claim for voting purposes.

12       Mr. Bunch is 79 years old.  He's in reasonably-good

13   health for his age, but coming down here personally would be

14   rather taxing on him.

15       And so what we have agreed to do, your Honor, is to

16   submit the transcript which has already been filed with the

17   court as the evidentiary basis upon which we'll go forward.

18       And then, your Honor, we have also provided the Court

19   with the trial binder which is comprised of all of the

20   exhibits that were attached to the initial motion for

21   allowance and these additional exhibits that were attached

22   to the supplemental declaration of Mr. Bunch and, also, the

23   exhibits that were included in sequence yesterday in the

24   2004 examination if that makes sense.

25       So what we end up with, your Honor, are Exhibits A

1    through U, and I believe that we're in agreement that those

2    will be admissible for purposes of the proceeding today.

3            THE COURT:  Okay.

4            MR. HOLLEY:  Is that --

5            MR. SCHWARTZER:  Your Honor, they are admissible

6    as part of the deposition, and they are the exhibits that

7    he's identified.  I reserve my right to object to the

8    admissibility --

9            THE COURT RECORDER:  Counsel, I'm sorry.

10            MR. SCHWARTZER:  -- of --

11            THE COURT RECORDER:  Could you speak up just a

12    little bit?

13            MR. SCHWARTZER:  I --

14            THE COURT RECORDER:  Thank you.

15            MR. SCHWARTZER:  I reserve my right to object to

16    the admissibility based upon items like hearsay and things

17    like that to the contents of any of the exhibits.

18            THE COURT:  Okay.

19            MR. HOLLEY:  And I'm not quite sure where that

20    puts us, your Honor, because in the deposition we did

21    discuss this.  Had I known that, perhaps, I would have

22    needed to bring Mr. Bunch down.  It would be --

23            THE COURT:  Well, let's --

24            MR. HOLLEY:  My understanding --

25            THE COURT:  -- just go --

1    MR. HOLLEY:  -- of our arrangement --

2    THE COURT:  -- because most --

3    MR. HOLLEY:  -- was that --

4    THE COURT:  -- of these are --

5    MR. HOLLEY:  -- was not --

6    THE COURT:  -- legal issues, so --

7    MR. HOLLEY:  I think that they are, your Honor,

8    and we'll go ahead and proceed and allow the Court to issue

9    its ruling.

10    Again, in terms of setting the table here just a little

11    bit, your Honor, the Bunches have the largest as I

12    understand it unsecured claim in the Commercial Mortgage

13    bankruptcy case based upon a timely-filed proof of claim on

14    November 8.  The amount of the claim is approximately

15    8,000,000 and change.

16    They were part of class A-4.  The debtors solicited a

17    ballot from the Bunches as part of the plan-confirmation

18    process.  When the ballot was cast against confirmation of

19    the plan, an objection ensued afterwards.

20    The objection was filed on November 11th, was mailed to

21    the Bunches on November 12th, and then it was received I

22    believe on November 13th, your Honor.  At that point, we

23    immediately proceeded to file a motion for allowance of the

24    claim.

25    I don't believe that we have factual disputes before

1    the Court, and, therefore, I agree with the Court that I

2    believe it's really a question concerning legal

3    interpretation of Section 502(d).

4        It's my understanding that there's not an issue about

5    the fact that the Bunches loaned $10,000,000 to the debtors

6    over a four-year period in 27 installments.  If I'm mistaken

7    on any of these things, hopefully, Mr. Schwartzer will let

8    me know.

9        The last installment was made in February of 2004.

10   According to the terms of the promissory note, the

11   promissory note would then mature one year after the last

12   installment taking you up to a $10,000,000 loan amount

13   arrived, so that unless otherwise modified the maturity date

14   would be in February of 2005.

15       Mr. Bunch testified during his examination yesterday

16   that at or about February of 2005 he agreed to -- rather

17   than to accelerate the outstanding indebtedness that was

18   owing, he agreed to extend the note for an additional year

19   provided, however, that the default or late charge was

20   assessed which was five percent of the outstanding balance

21   -- that's approximately $500,000 -- and that the default

22   rate of interest at 24 percent would accrue on the

23   obligation for that one-year extension period.

24       Mr. Bunch also testified that on or about February of

25   2006 that again the note was modified to -- not accelerated,

1    but allowed to proceed out for another year period again

2    provided that there was an assessment of another

3    five-percent late charge on the outstanding balance, and

4    that interest would continue to accrue at the default rate

5    of 24 percent.

6         I believe Mr. Bunch also testified that he received

7    regular monthly payments according to the terms of the note

8    since July of 2002.

9         Among the exhibits that have submitted to the Court,

10   your Honor, are copies of bank statements from July of 2002

11   forward through March of 2006.

12        And what those bank statements indicate is that there

13   were payments made again on the regular basis over that

14   period of approximately five years under the terms of the

15   promissory note on or about the 10th of each month.

16        Mr. Bunch testified that the first few payments back in

17   2000 were made by deposit slips, you know, deposits being

18   put into the account, but, thereafter, the payments were

19   simply forwarded by ACH or electronic transfers to

20   Mr. Bunch's account.

21        And, again, one of the exhibits that is before the

22   Court are the bank statements evidencing receipt of those

23   payments.

24        The issue I believe today, your Honor, in terms of

25   whether their claim should be allowed for voting purposes or

1    not is based upon Section 502(d).

2    As I understand it, the debtors are contending that the

3    payment made of approximately $217,000 in January 2006 --

4    I'm sorry -- February of 2006 and a payment in the amount of

5    196,000 --

6    THE COURT:  D or B, you mean?

7    MR. HOLLEY:  D as in David, your Honor.

8    THE COURT:  Oh.  Did you 547 or 502?

9    MR. HOLLEY:  502 --

10    THE COURT:  Oh.

11    MR. HOLLEY:  -- (d).

12    THE COURT:  502.  Okay.

13    MR. HOLLEY:  Yes.  On the basis --

14    THE COURT:  Yes.  Okay.

15    MR. HOLLEY:  -- that there is an alleged avoidable

16    transfer sitting out there, and that until that is repaid

17    the claim is disallowed.

18    And, again, the two particular payments that I believe

19    are the subject of the objection, the objection to the claim

20    as well as the objection to the motion, are those two

21    payments that I just referenced for the Court totalling

22    400-and-some-odd-thousand dollars and change which,

23    coincidentally, is about .036 percent of the outstanding

24    claim of the Bunches in the bankruptcy case.

25    There are, your Honor, several points that we would

1  like to make in terms of our argument.  I hope the Court

2  received our --

3          THE COURT:  I did.

4          MR. HOLLEY:  -- reply.  Again, I apologize for the

5  lateness, but --

6          THE COURT:  Well, I understand because of the

7  shortness of all the claims.

8          MR. HOLLEY:  It --

9          THE COURT:  And I --

10          MR. HOLLEY:  It --

11          THE COURT:  I did get a chance to read it.

12          MR. HOLLEY:  Exactly.  Thank you, your Honor.

13  Your Honor, in terms of whether the payments were made in

14  the ordinary course of business under 547(c)(2), there's a

15  statement made in the objection that was filed this morning

16  by Mr. Schwartzer that we have not presented any evidence in

17  support of that position, but we beg to differ, your Honor.

18      And, again, what we would refer the Court to are those

19  bank statements from 2000 through March of 2006 showing that

20  payments were made in the ordinary course on or about the

21  10th of each month for a very, very long period in time.

22      It may be pointed out that while notwithstanding even

23  to the extent you could demonstrate that it was some sort of

24  ordinary course between the debtors the industry standard

25  may not have been met.

1    And, admittedly, your Honor, given the very, very short

2  amount of time that we've had in this case, we have not been

3  able to retain an expert and get a report prepared and

4  submitted to the Court.

5    But as Mr. Bunch testified in his 2004 examination, he

6  has extensive experience in the industry and did not find

7  the transaction to be outside of the ordinary course in

8  terms --

9    THE COURT:  But --

10    MR. HOLLEY:  -- of --

11    THE COURT:  But how would --

12    MR. HOLLEY:  -- the industry itself.

13    THE COURT:  -- a mortgage-servicing company and --

14  well, I'm sorry.  Was it made -- the loan was made to which

15  entity, USCAM (sic)?

16    MR. HOLLEY:  Yes.

17    THE COURT:  Okay.  How is lending money to a

18  mortgage-servicing company on one hand and the reverse side

19  borrowing money from a private investor, a private person?

20  How is that in the ordinary course of a servicing business?

21    MR. HOLLEY:  Well, your Honor, again, I can refer

22  to Mr. Bunch's deposition testimony where he was involved in

23  this type of business himself for a period of time.  He

24  originally was in the construction-development business and

25  then moved over and started doing loans.

 1        And Mr. Bunch testified that in his experience it's not

 2    an unusual arrangement.  And, second of all, from his

 3    perspective, he had reviewed financial statements and

 4    audited financial statements that had been provided to him.

 5        And these were consolidated financial statements for

 6    the entities and believed that based upon those there was

 7    sufficient financial strength to repay the obligations, and

 8    that the money would be used, you know, really within the

 9    discretion of the borrowing entity.

10        So in terms of his position, your Honor, again, we

11    don't have an expert before the Court.  But in terms of his

12    testimony based upon his experience, it's not something that

13    is outside of the ordinary course of business, certainly,

14    not of this debtor as we can see since this loan has been

15    outstanding since approximately July of 2000 and not unusual

16    within the industry itself.

17        Another argument that is raised --

18            THE COURT:  And did he --

19            MR. HOLLEY:  -- in terms of --

20            THE COURT:  -- make loans to other mortgage

21    companies or to other businesses?

22            MR. HOLLEY:  He testified that he does have loans

23    outstanding to other mortgage companies and businesses,

24    your Honor --

25            MR. SCHWARTZER:  Your Honor --

1          MR. HOLLEY:  -- yes.

2          MR. SCHWARTZER:  -- I object to that

3    characterization of the testimony.  I believe he -- and I

4    would -- Mr. Holley invited me to object when he's arguing

5    if I disagree to any points.

6        I don't think Mr. Bunch's testimony was either that he

7    made loans to other mortgage companies.  He said he made

8    other mortgage loans, number one.

9        And, number two, he never said anything about this

10   being in the ordinary course of the mortgage business

11   because he himself has been a lender, and he's gone and made

12   loans to other mortgage companies, but he never said he made

13   a loan to another mortgage company, and we have the

14   transcript here about it.

15       I think if Mr. Holley is going to say that there was

16   testimony that this was in the ordinary course of the

17   debtor's business I would like to have him point to the

18   specific page and line of the transcript where that was said

19   because that's not --

20          THE COURT:  Okay.

21          MR. SCHWARTZER:  -- my recollection, your Honor.

22          MR. HOLLEY:  Okay.  I appreciate that, your Honor.

23   I don't think he used the words "ordinary course of

24   business".

25       What he did say is that these loans were outstanding

1 from July of 2000 to present, that the payments were made in

2 the ordinary course according to the terms of those notes,

3 of the promissory note.  We submitted the bank statements

4 which demonstrate that that was the case.  In terms of --

5    THE COURT:  You know, if --

6    MR. HOLLEY:  -- industry practice --

7    THE COURT:  Let me interrupt you here because I'm

8 thinking maybe what we should do is recess this argument to

9 give you more time to supplement the brief with specific

10 references and quotes in the transcript --

11    MR. HOLLEY:  I would appreciate that.

12    THE COURT:  -- that support the elements of what

13 you're claiming.

14    MR. HOLLEY:  I appreciate that, your Honor.

15    THE COURT:  And that would help me, rather than

16 making me read --

17    MR. HOLLEY:  Yes.

18    THE COURT:  -- the whole transcript and rather

19 than making you guess about what was said because you just

20 had it.

21  And I certainly appreciate the fact -- you know, on one

22 hand, the debtor probably shouldn't have waited as long to

23 object as they did.  Can they not do that?  Well, there's

24 nothing that says they can't do it, so --

25    MR. HOLLEY:  It is, you know, and I did think

1   about that, your Honor.  It seemed, well, from my -- well,

2   anyway.

3           THE COURT:  Yeah.  And the harm I guess has been

4   remedied by the fact that I am hearing you on shortened

5   time.

6       (Colloquy not on the record.)

7           THE COURT:  There's nothing in the code that

8   prevents it, and it's too bad.  There probably should be a

9   rule that says you've got to do it in a certain time, but

10  there isn't.

11          MR. HOLLEY:  I --

12          THE COURT:  So they --

13          MR. HOLLEY:  I --

14          THE COURT:  -- didn't do anything --

15          MR. HOLLEY:  I agree with that, and I --

16          THE COURT:  -- outside --

17          MR. HOLLEY:  I do --

18          THE COURT:  -- the rules.

19          MR. HOLLEY:  And I do appreciate that, your Honor.

20  It would be helpful for us to be able to review the

21  transcript and to cite to it, so I would like to do that,

22  and I appreciate the opportunity --

23          THE COURT:  And let me tell you --

24          MR. HOLLEY:  -- to do so.

25          THE COURT:  -- what my thinking is now on 502(d).

1          MR. HOLLEY:  Okay.

2          THE COURT:  And I have read your arguments, but I

3     was thinking about this before in connection with --

4          MR. SCHWARTZER:  The Kehl people?

5          THE COURT:  -- the settlement issue in the other

6     case we had.  I read 502(d) to say exactly what it says, and

7     it may seem totally unfair.

8          But it seems to me that even if it's $2 the whole claim

9     is disallowed.  Well, let me get to 502(d), 502, so I'm

10    reading the exact one.

11         "Notwithstanding A and B which says a claim is deemed

12    allowed, the Court shall disallow any claim of any entity

13    from which properties are recoverable or the transferee of a

14    transfer avoidable under 547 unless they have paid the

15    amount or turned over the property."

16         So it seems to me that under the code that unless, you

17    know, you turn over that amount -- and I assume it could be

18    held in escrow.  I mean, maybe that's one way around it --

19    you don't get a vote on anything.

20         I know it seems unfair.  I know it seems like you said

21    one should just net.  But, of course, the other rationale is

22    we're just talking about voting purposes.  We're not talking

23    about estimation even here.  We're talking about voting

24    purposes.

25         And on one hand, the code's rationale -- but it doesn't

1    make any difference.  We've got plain language here.  The

2    rationale would be we don't want somebody voting when they

3    wouldn't even get anything until they've turned the money

4    over, so I'm reading the plain language.

5            MR. HOLLEY:  Right.

6            THE COURT:  So where we are now is was there,

7    arguably, more likely rather than less likely there was a

8    preference under the code.

9            MR. HOLLEY:  I understand that, your Honor.  And

10   as the Court saw in our hastily-prepared papers, in terms of

11   addressing the point that the Court is raising, that, you

12   know, the Western District of Arkansas case which is kind

13   around the same era -- and, granted, Arkansas is not as

14   large as Texas.

15       But, nevertheless, I think that under the circumstances

16   we have in this case it seemed particularly applicable and

17   appropriate in that I know there's nothing in the rules that

18   defines when you can object to a claim versus not.

19       But it does seem -- it did strike me as being peculiar,

20   your Honor, that a debtor or a plan proponent could go out

21   and actually solicit a ballot from a creditor who doesn't

22   have a contingent or unliquidated claim, but one that is

23   certain -- and the proof of claim itself attaches, you know,

24   the detail of how the amounts were arrived at -- to invite a

25   vote with respect to a pending plan, receive the ballot, and

1  then they make a determination that, oh, wait a second, we

2  don't like the ballot and then disenfranchise the creditor

3  whose vote, in fact, was solicited immediately beforehand,

4  and --

5         THE COURT:  I think, unfortunately, it only rises

6  to the level of tacky if you will as opposed to --

7         MR. HOLLEY:  We used the word "shameful".

8         THE COURT:  -- illegal --

9         MR. HOLLEY:  But, you know, tacky's okay.

10        THE COURT:  -- as opposed --

11        MR. HOLLEY:  But --

12        THE COURT:  -- to --

13        MR. HOLLEY:  But --

14        THE COURT:  -- illegal in the sense of against the

15 code --

16        MR. HOLLEY:  Yes.

17        THE COURT:  -- or the rules --

18        MR. HOLLEY:  And --

19        THE COURT:  -- especially --

20        MR. HOLLEY:  And we --

21        THE COURT:  -- since there's been the opportunity,

22 now, you know, if you hadn't had the chance to even have

23 your motion, but I --

24        MR. HOLLEY:  Yes.

25        THE COURT:  I --

```
 1                MR. HOLLEY:  And --

 2                THE COURT:  I don't see anything --

 3                MR. HOLLEY:  And I --

 4                THE COURT:  -- in the code that precludes it.

 5  I --

 6                MR. HOLLEY:  Right.  And I appreciate the Court --

 7                THE COURT:  And I --

 8                MR. HOLLEY:  -- kind of entertaining this debate

 9  back and forth because, I mean, we're familiar with the

10  Texas cases.

11      We were actually rather surprised in doing our research

12  that there weren't more cases out there across the country

13  that addressed, you know, these particular issues because it

14  seems at some point in time these things would have arisen

15  with some regularity in various cases.  But be that as it

16  may, we are aware of the authorities that are out there.

17      And so I think our position is concisely set forth in

18  the (indiscernible) in the initial motion, and I understand

19  the Court's reading of 502(d), and, again, we're talking

20  about voting purposes.

21                THE COURT:  So just focus --

22                MR. HOLLEY:  And so --

23                THE COURT:  -- on your supplement under whether or

24  not that's a preference.

25                MR. HOLLEY:  Yes.
```

1      THE COURT:  And, of course, we have the new added
2  wrinkle because we have the revised preference provisions.
3  Now, of course --
4      MR. HOLLEY:  Yes.
5      THE COURT:  -- it's the same elements, so you just
6  don't have to do both.
7      MR. HOLLEY:  Right.
8      THE COURT:  So that's why I would appreciate kind
9  of focusing on this and then focus me in on your evidence as
10  well.
11      I'll leave it to you on your briefing and how you want
12  to do this.  I don't particularly want to do this next week.
13  If you want to do it next week, you can.  Or in the
14  alternative, I see no reason -- well, you know, you got the
15  confirmation, but the point is --
16      MR. SCHWARTZER:  Your --
17      THE COURT:  -- maybe --
18      MR. SCHWARTZER:  Your Honor --
19      THE COURT:  -- you want to wait and see what
20  happens with confirmation.  Maybe you want to wait and see
21  if there's an appeal.
22      MR. HOLLEY:  Now, from my perspective, that does
23  make some sense.  I understand the issues that the debtors
24  are trying to deal with in terms of class A-5 and whether
25  they should be a class or not and whether they're impaired

1    and not.

2         But it does seem to me, your Honor, that if an appeal

3    is not timely filed to that particular issue -- my

4    understanding is the Court confirmed the plan on the

5    cramdown standard --

6              THE COURT:  Right.

7              MR. HOLLEY:  -- assuming that there was not a

8    consenting --

9              THE COURT:  I did assume --

10             MR. HOLLEY:  -- A-4.

11             THE COURT:  -- for purposes of the record.

12             MR. HOLLEY:  Yes.  And so that makes some sense to

13   me, so that we're not out here spinning our wheels.

14             MR. SCHWARTZER:  Well, your Honor, on the other

15   hand, we are quite sure there will be an appeal, and it

16   would eliminate -- basically, if the motion is denied

17   because of the preferential transfers, and the Bunch vote

18   doesn't count, then class A-4 has voted to accept the plan,

19   and it will eliminate a whole series of issues on the

20   appeal, so we would like to have this Court issue either an

21   order --

22             THE COURT:  Well, I will issue --

23             MR. SCHWARTZER:  -- (indiscernible) to --

24             THE COURT:  -- an order.  The question is the

25   timing.

1           MR. SCHWARTZER:  The question -- we would like to

2     have it heard and issued within the ten days for the appeal.

3           THE COURT:  But the reality is the ten days

4     expires.  You've got to get your transcript.  You do your

5     issues on appeal.  You wouldn't have to do any briefing.

6           MR. SCHWARTZER:  I understand.  You're right,

7     your Honor, but part of the problem if it's included in --

8     and, particularly, for example, if you were saying what

9     Mr. Holley has to do is now just point out the lines in the

10    transcript which could be done in a day, so you don't have

11    to read the whole transcript, and we had the hearing on

12    Monday or Tuesday because that's what -- really, we have a

13    (indiscernible).  Did his client prove that this was in the

14    ordinary course --

15          THE COURT:  Well, I'm not particularly --

16          MR. SCHWARTZER:  -- of the --

17          THE COURT:  -- excited --

18          MR. SCHWARTZER:  -- mortgage business.

19          THE COURT:  -- about adding something --

20          MR. HOLLEY:  And --

21          THE COURT:  -- to next week's calendar --

22          MR. SCHWARTZER:  I --

23          MR. HOLLEY:  And I think --

24          MR. SCHWARTZER:  I --

25          THE COURT:  -- quite frankly.

1           MR. HOLLEY:  And I think --

2           MR. SCHWARTZER:  I --

3           MR. HOLLEY:  I think --

4           MR. SCHWARTZER:  I understand, but --

5           MR. HOLLEY:  -- I'm busy next Monday, your Honor,

6  on --

7           MR. SCHWARTZER:  Tuesday.

8           MR. HOLLEY:  -- December 25th.

9           THE COURT:  You know, we've got a hearing date --

10          MR. SCHWARTZER:  Tuesday.

11          MR. HOLLEY:  And I don't want --

12          THE COURT:  -- for the 3rd.

13          MR. HOLLEY:  -- to spend all of the holidays

14  dealing with this myself.

15          MR. SCHWARTZER:  The 3rd would be fine,

16  your Honor.

17          THE COURT:  Does the 3rd work for you?

18          MR. HOLLEY:  Oh, January 3rd?  Yes.

19          THE COURT:  In other words, if you get me

20  something by next -- wait a minute.  I need a calendar.

21          MR. HOLLEY:  Like Thursday-ish?

22          THE COURT:  Hold on.  They won't let us have paper

23  calendars, anymore, so I can -- here we go.  Okay.  The 3rd

24  -- oh, the 3rd is Wednesday, ooh.

25          MR. SCHWARTZER:  So if we got --

1          THE COURT:  If you could give me something by

2    Thursday at noon?

3          MR. HOLLEY:  I think I can do that, your Honor.

4          MR. SCHWARTZER:  And any response I would want

5    would have to be filed by Friday at 5:00 o'clock?

6          THE COURT:  Yeah.  Because I can just upload it

7    and read it --

8          MR. SCHWARTZER:  Because it will be short --

9          THE COURT:  -- when it's uploaded.

10          MR. SCHWARTZER:  -- if there's anything.

11          THE COURT:  And then a worst-case basis I could

12    put you on the 4th or the 5th.

13          THE CLERK:  What day, the 3rd?

14          THE COURT:  The 3rd's a USA day.

15          THE CLERK:  Yes.

16          MR. SCHWARTZER:  It is --

17          THE COURT:  No.  The question is poor Mr. Holley

18    doesn't want to sit through a whole day of that.

19          MR. HOLLEY:  Well, if it's all the same,

20    your Honor, I would prefer not to.

21          THE COURT:  All right.  Why don't we put you on

22    the -- you're here --

23          MR. SCHWARTZER:  How about --

24          THE COURT:  -- all the time --

25          MR. HOLLEY:  You could --

```
1              MR. SCHWARTZER:  How about if --

2              MR. HOLLEY:  -- put us --

3              THE COURT:  -- anyway --

4              MR. HOLLEY:  -- at the beginning --

5              THE COURT:  -- Mr. Schwartzer.

6              MR. HOLLEY:  -- of the calendar, too --

7              MR. SCHWARTZER:  How about at 1:30 --

8              MR. HOLLEY:  -- (indiscernible).

9              MR. SCHWARTZER:  -- on the 3rd if you have the

10   whole day set aside, your Honor?

11             THE COURT:  And it won't take all day for all

12   these things?  I haven't had the chance --

13             MR. HOLLEY:  Will it?

14             THE COURT:  -- to look at this calendar, yet.

15             MR. SCHWARTZER:  No.

16             THE COURT:  Oh, you've got that procedures motion.

17             MR. SCHWARTZER:  H'mm?

18             MR. HOLLEY:  I'm here for that as well,

19   your Honor.

20             THE COURT:  Oh, you're here for the procedure?

21   Oh, that's right because you represent those other people.

22   Well, you're going to be stuck here, anyway, so --

23             MR. SCHWARTZER:  And I'm --

24             MR. HOLLEY:  Not that I don't welcome the

25   opportunity to associate with Mr. Schwartzer.
```

```
 1              THE COURT:  So, yeah, we'll put it on the 9:30
 2     calendar understanding -- well, I don't have a problem with
 3     taking -- that will be taken after everybody else leaves if
 4     you're stuck -- if you're going to be here on that
 5     procedures motion, anyway.
 6              MR. HOLLEY:  I am here for that, your Honor.
 7              MR. SCHWARTZER:  And somebody from office will be
 8     here, anyway, so --
 9              THE COURT:  Okay.
10              MR. HOLLEY:  And so this is January 3rd, then, at
11     9:30, your Honor?
12              THE COURT:  Right.
13              MR. HOLLEY:  And since --
14              THE COURT:  Now, we'll take the other matters
15     first, so it's not quite --
16              MR. HOLLEY:  Right.
17              THE COURT:  -- 9:30.
18              MR. HOLLEY:  But --
19              THE COURT:  But --
20              MR. HOLLEY:  Since the Court brought up the
21     procedures motion, can I ask a question?  Do you intend that
22     to be an evidentiary hearing or just oral argument
23     regarding --
24              THE COURT:  I hadn't thought --
25              MR. HOLLEY:  -- the presentation?
```

```
 1          THE COURT:  -- it through.  If the parties think I
 2   need evidence, then -- do you think we need evidence or can
 3   we just do it --
 4          MR. HOLLEY:  I --
 5          THE COURT:  -- on declarations?
 6          MR. HOLLEY:  I don't.  I don't think we do.
 7          MR. SCHWARTZER:  Your Honor, we --
 8          MR. HOLLEY:  But --
 9          MR. SCHWARTZER:  We don't think it's an
10   evidentiary hearing, either.
11          THE COURT:  Okay.
12          MR. SCHWARTZER:  We think it's argument based upon
13   declarations.
14          THE COURT:  Okay.  Okay.  Fine.  All right.  So
15   what we'll do is Mr. Holley's designation will be Thursday
16   at noon, Mr. Schwartzer Friday by 5:00, and then we'll just
17   have argument on it on the 3rd with the USA day.
18          MR. SCHWARTZER:  Okay.  No --
19          THE COURT:  And that will give me a chance --
20          MR. SCHWARTZER:  You understand --
21          THE COURT:  -- to read the transcript.
22          MR. SCHWARTZER:  -- my --
23          THE COURT:  I'll skim through the transcript in
24   the meantime, but --
25          MR. SCHWARTZER:  You understand my staff is going
```

1    to appreciate the fact that you said by 5:00 p.m., rather

2    than on Friday because --

3                    THE COURT:  Right.

4                    MR. SCHWARTZER:  -- we know that it would be done

5    between 11:00 and midnight because I would have the

6    assistance of my co-counsel from Ray, Quinney, & Nebeker who

7    would insist upon filing it no sooner than 11:58.  We've

8    worked this out with them that we never get anything before

9    11:00 p.m. for filing.

10                   THE COURT:  Okay.

11                   MR. HOLLEY:  And we're talking Pacific time,

12   right, your Honor?

13                   THE COURT:  That's right.

14                   MR. HOLLEY:  I just --

15                   THE COURT:  Pacific time.

16                   MR. HOLLEY:  I just want to make sure --

17                   MR. SCHWARTZER:  Oh.

18                   MR. HOLLEY:  -- we're in the same ballpark here.

19                   MR. SCHWARTZER:  Thank you, your Honor, for making

20   that clear because --

21                   THE COURT:  Oh, that's right because they're on

22   Mountain time.

23                   MR. SCHWARTZER:  No.  They're on Hawaiian time --

24                   THE COURT:  Right.

25                   MR. SCHWARTZER:  -- apparently.

1           THE COURT:  Yeah.  Will that give me -- well, hey,

2      if I don't have a chance to read it, and I'm not ready to

3      rule, then the point is I'll just take it under submission.

4           MR. HOLLEY:  Right.

5           MR. SCHWARTZER:  Right.

6           THE COURT:  Okay.

7           MR. SCHWARTZER:  Thank you, your Honor.

8           MR. HOLLEY:  Okay.

9           THE COURT:  All right.  Thank you.

10           MR. HOLLEY:  Thank you.

11           THE COURT:  Happy holidays everybody.

12           MR. HOLLEY:  You too, your Honor.

13           THE COURT:  I hope this is the last I see you

14      before the holidays.

15        (Colloquy not on the record.)

16           THE CLERK:  All rise.

17        (Court concluded at 02:19:27 p.m.)

18

19

20

21

22

23

24

25

1      I certify that the foregoing is a correct transcript

2   from the electronic sound recording of the proceedings in

3   the above-entitled matter.

4

5

6   /s/ Lisa L. Cline                                  03/14/07

7   Lisa L. Cline, Transcriptionist                      Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25