David T. Cohen (TX Bar No. 75008424)
Alexandra P. Olenczuk (TX Bar No. 24033924)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com
Email:  aolenczuk@warnerstevens.com

and

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
3085 South Jones Blvd., Suite C
Las Vegas, Nevada 89146
Tel:    (702) 369-3724
Fax:    (702) 369-0651
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*

E-FILED ON: MARCH 14, 2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re: ) | Case No. BK-S-06-10725 LBR |
| ) | Case No. BK-S-06-10726 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, ) | Case No. BK-S-06-10727 LBR |
|     Debtor. ) | Case No. BK-S-06-10728 LBR |
| ) | Case No. BK-S-06-10729 LBR |
| In Re: ) | |
| USA CAPITAL REALTY ADVISORS, LLC, ) | Chapter 11 |
|     Debtor. ) | |
| ) | Jointly Administered Under |
| In Re: ) | Case No. BK-S-06-10725 LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED ) | |
| FUND, LLC, ) | |
|     Debtor. ) | |
| ) | |
| In Re: ) | |
| USA CAPITAL FIRST TRUST DEED FUND, ) | |
| LLC, ) | ADMINISTRATIVE EXPENSE |
|     Debtor. ) | CLAIM OF SIERRA LIQUIDITY |
| ) | FUND, L.L.C., AND REQUEST FOR |
| In Re: ) | PAYMENT THEREOF |
| USA SECURITIES, LLC, ) | |
|     Debtor. ) | [Affidavit of James S. Riley filed |
| ) | concurrently herewith] |
| Affects: ) | |

| | |
|---|---|
| ☐ All Debtors ) | Hearing Date: April 26, 2007 |
| ■ USA Commercial Mortgage Company ) | Hearing Time: 9:30 a.m |
| ☐ USA Securities, LLC ) | Objection Deadline: March 29, 2007 |
| ☐ USA Capital Realty Advisors, LLC ) | |
| ☐ USA Capital Diversified Trust Deed Fund, LLC ) | |
| ☐ USA Capital First Trust Deed Fund, LLC ) | |
| ) | |

**If you object to the relief requested herein, you *must* timely file a WRITTEN response to this pleading with the Court. You must also serve your written response on the person who sent you this notice.**

**If you do not timely file a written response with the Court, or if you do not serve your written response on the person who sent you this notice, then:**

- **The Court may *refuse to allow you to speak* at the scheduled hearing; and**
- **The Court may *rule against you* without formally calling the matter at the hearing.**

Sierra Liquidity Fund, L.L.C. ("Sierra"), hereby files this administrative expense claim and request for payment thereof (the "Request"), and respectfully states as follows:

A.   **REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE**

1.   These cases were commenced by the filing of voluntary Chapter 11 petitions by the above-entitled Debtors (the "Debtors") on April 13, 2006 (the "Petition Date").

2.   On January 8, 2007, the Bankruptcy Court entered its Order confirming the "Debtors' Third Amended Joint Plan of Reorganization, as Modified Herein" (the "Plan"). The Plan provides that the deadline for the filing of Administrative Expense Claims against the Debtors is 30 days after the Effective Date. See section B.1.c.i. of the Plan. As this deadline has not occurred as of the date of the filing of this Request, this Request is timely filed.

3. Sierra is the assignee of those notes, deeds of trust and other rights connected therewith as set forth on Exhibit "A" attached hereto (all collectively referred to herein as the "Loans"). Debtor USA Commercial Mortgage Company ("USA Commercial") purports to be the servicer of these Loans under loan servicing agreements (the "Loan Servicing Agreements") between USA Commercial and the assignors of the Loans.

4. To the extent that Loan Servicing Agreements exist with respect to one or more of the Loans and further that Sierra is bound by the terms of the Loan Servicing Agreements, then USA Commercial has contractual obligations to Sierra. To the extent that the Loan Servicing Agreements do not exist or are not binding on Sierra, yet USA Commercial is nevertheless purporting to service one or more of the Loans, then USA Commercial has fiduciary duties to Sierra in purporting to act as servicer of the Loans.

5. From and after the Petition Date, one or more of the Loans became non-performing or continued to be non-performing, such that it was the responsibility and obligation of USA Commercial to protect the interests of Sierra. Evidence of the non-performing status of Loans in which Sierra holds an interest is set forth in Exhibit "B" hereto, which consists of USA Commercial's report dated July 31, 2006.

6. To the extent that Sierra is bound by the Loan Servicing Agreements, then Section 2.(c)(i) and (ii) of the Loan Servicing Agreements provides that USA Commercial is required to:

    (i) Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

    and

    (ii) In the event the Borrower fails to make any payment to USA [Commercial] as required by the terms of the note, USA [Commercial] will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed

> necessary or appropriate by USA [Commercial] in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

A true and correct sample of what Sierra is informed and believes is a typical Loan Servicing Agreement is attached hereto as Exhibit "C."

7. Sierra is informed and believes that from and after the Petition Date, USA Commercial failed to take such action as required under the above-quoted sections of the Loan Servicing Agreements. Sierra is informed and believes that with respect to non-performing Loans, USA Commercial failed to send notices of foreclosure, to commence or pursue foreclosure proceedings, or take such other action as required, thus breaching its duty to Sierra.

8. To the extent Sierra is not a party to or bound by the Loan Servicing Agreements, then USA Commercial's failure to act reasonably as a purported servicer of the Loans is a breach of USA Commercial's fiduciary duty to Sierra as imposed under the law.

### B. CALCULATION OF ADMINISTRATIVE EXPENSE CLAIM

9. The pool of loans serviced by USA Commercial generally falls into two categories:

(1) Acquisition and pre-development loans to residential and commercial developers ("Predevelopment Loans") on unimproved real property. A typical loan would be on a multi-acre site in which a developer needs a "bridge loan" to acquire property and obtain all entitlements required to build thereon. These are typically one to two year loans, during which time the developer seeks to complete the permit process and fund a construction and development loan from a full service lender.

(2) Acquisition and improvement loans ("Improvement Loans"). These are loans where a builder purchases improved property and enters into an agreement to increase the loan incrementally as pre-approved improvements are made. A typical

loan may be on an apartment complex with additional funds available for rehabilitating and converting to a for-sale condominium project.

1. **Damages Due to Decline in Value of the Underlying Real Property.**

10. During the Chapter 11 cases, several of the Predevelopment Loans held by Sierra have either become non-performing or have continued to be non-performing. Based on general market declines in value and Sierra's knowledge of the specific properties, Sierra calculates that the value of the real property underlying the non-performing Predevelopment Loans held by Sierra has declined by at least 25%. USA Commercial's failure timely to foreclose or otherwise to protect the interests of Sierra in these non-performing Predevelopment Loans has damaged Sierra.

11. The following is a list of Predevelopment Loans in which Sierra holds an interest and which became non-performing during the Chapter 11 cases or which continued to be non-performing during the Chapter 11 cases. The list sets forth the principal amount of Sierra's interests and a calculation of Sierra's damages or losses as a percentage of the total principal amount of the loan. In addition, Sierra assumes that the value of the underlying real property approximately equaled the loan amounts at the time of the origination of the loan.

| Date Listed as Non-Performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | 3685 San Fernando Road | | $235,000.00 |
| Jul-06 | Binford Medical | | $170,000.00 |
| Jun-06 | Brookmere | | $36,987.00 |
| Jun-06 | Hesperia II | | $50,000.00 |
| Jun-06 | Margarita Annex | | $425,000.00 |
| Jul-06 | Oak Shores II | | $239,000.00 |
| Jun-06 | Placer Vineyards | | $810,000.00 |
| Jun-06 | Marquis Hotel | | $45,000.00 |
| | Total | | $2,010,987.00 |
| | Damages | 25% | $502,746.75 |

12. Sierra holds one Improvement Loan that has become non-performing or has continued to be non-performing during the Chapter 11 cases. The value of that underlying real property has declined 25%. As a result of USA Commercial's failure to timely foreclose on the Improvement Loan, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |
| | Total | | $650,000.00 |
| | Decline in Value (Damages) | 25% | $162,500.00 |
| | Damages | | $162,500.00 |

## 2.     Damages Due to the Improper Charge of "Default Interest".

13. In addition to the decline in value, Sierra is informed and believes that in the event of foreclosure on any non-performing loan, be it a Predevelopment or Improvement Loan, that USA Commercial or Compass will seek to recover from any sale proceeds an amount equal to the default interest that the borrower would have been obligated to pay under the terms of the loan had the borrower made payments as required. The Servicing Agreements, however, do not allow for the collection by USA Commercial of such "default interest" upon foreclosure. Section 5(c) of the Servicing Agreement allows only for payment to the servicer of "default interest <u>collected from the Borrower</u> pursuant to the terms of the Note." (Emphasis added.) Upon a foreclosure, there is no "default interest collected from the Borrower" and so the retention of such amount by USA Commercial or any other purported servicer upon a foreclosure is improper, unlawful and will damage Sierra equal to the amount of such "default interest." Sierra is informed and believes that USA Commercial will take the position that upon foreclosure it is entitled to retain as "default interest" the difference between the default rate of interest and the non-default rate of interest. Sierra is informed and believes that this difference is 8% per year, which is the amount of "default

interest" that USA Commercial will seek to retain from foreclosure sale proceeds. In the event USA Commercial contends that "default interest" is the entire default interest rate, and not just the difference between the default and the non-default interest rate, then Sierra reserves the right to amend this Request to add such amount as additional damages.

14. In the event that it is determined that USA Commercial is entitled to "default interest" from foreclosure sale proceeds, which entitlement Sierra denies, then Sierra was damaged by USA Commercial's failure to timely foreclose on the underlying real property and thereby incurring the "default interest." Rather than protect Sierra's interests, USA Commercial instead delayed in conducting foreclosure sales in order to incur such "default interest" which it then would seek to collect from foreclosure sale proceeds.

15. As a result of USA Commercial's failure to promptly foreclose on the non-performing loans, therefore, Sierra has been doubly hurt in that values of the properties have declined and further that such depressed values will be subject to payment of "default interest" to USA Commercial. Had USA Commercial promptly acted, USA Commercial could have foreclosed on the properties when market values were higher and before "default interest" had been incurred.

16. To summarize, with respect to Predevelopment Loans, Sierra has been damaged as follows:

| Date Listed as Non-Performing | PROPERTY | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|
| Jun-06 | 3685 San Fernando Road | $235,000.00 |
| Jul-06 | Binford Medical | $170,000.00 |
| Jun-06 | Brookmere | $36,987.00 |
| Jun-06 | Hesperia II | $50,000.00 |
| Jun-06 | Margarita Annex | $425,000.00 |
| Jul-06 | Oak Shores II | $239,000.00 |
| Jun-06 | Placer Vineyards | $810,000.00 |
| Jun-06 | Marquis Hotel | $45,000.00 |
|  | Total | $2,010,987.00 |

| | | |
|---|---|---|
| Decline in Value (Damages) | 25% | $502,746.75 |
| "Default Interest" Delta | 10%[1] | $201,098.70 |
| Total Damages | | $703,845.45 |

17. With respect to Improvement Loans, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |
| | Total | | $650,000.00 |
| | Decline in Value (Damages) | 25% | $162,500.00 |
| | "Default Interest" Delta | 10% | $65,000.00 |
| | Total Damages | | $227,500.00 |

18. In addition to the foregoing, Sierra has been damaged by incurrence of additional and continuing loan service fees of between 1-3% per year, lost opportunity costs and legal fees and costs according to proof.

19. The analysis set forth above assumes that the Loan Servicing Agreements are binding on Sierra. In the event that Sierra is not bound by the Loan Servicing Agreements, Sierra, in addition to the above damages, will hold a damage claim against the Debtors for breach of their fiduciary duty, in an amount to be determined according to proof.

20. Sierra reserves the right to (i) amend or supplement this Request, and (ii) assert or file additional claims.

21. All notices respecting this Request should be sent to the following:

David T. Cohen, Esq.<br>
Warner Stevens, L.L.P.<br>
301 Commerce Street, Suite 1700

---

[1] While Sierra is informed and believes that the difference between the non-default and the default rate of interest is 8% per year, Sierra further assumes a default pre-foreclosure period of 15 months, equating to 1.25 years, and therefore calculates "Default Interest" Delta damages at 10% (8% x 1.25 = 10%). To the extent that the default pre-foreclosure period is longer than 15 months, then damages on account of improperly retained 'default interest' will be higher and Sierra reserves the right to amend this Request to so reflect.

Fort Worth, Texas 76102<br>
Tel.: (817) 810-5250<br>
Facsimile: (817) 810-5255<br>
e-mail: dcohen@warnerstevens.com

## CONCLUSION

WHEREFORE, Sierra respectfully requests that the Court enter an order (i) granting Sierra an allowed administrative expense claim pursuant to Section 503 of the Bankruptcy Code in the amount set forth above or otherwise as determined according to proof, (ii) directing the Debtors to make payment of such allowed administrative expense claim; and (iii) providing for such other and further relief that the Court may deem just and proper.

Dated:  March 14, 2007                    Respectfully submitted:

By:  /S/ DAVID T. COHEN
David T. Cohen (TX Bar No. 75008424)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com

           *and*

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
3085 South Jones Blvd., Suite C
Las Vegas, Nevada 89146
Tel:    (702) 369-3724
Fax:    (702) 369-0651
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*