David T. Cohen (TX Bar No. 75008424)
Alexandra P. Olenczuk (TX Bar No. 24033924)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com
Email:  aolenczuk@warnerstevens.com

*and*

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
3085 South Jones Blvd., Suite C
Las Vegas, Nevada 89146
Tel:    (702) 369-3724
Fax:    (702) 369-0651
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*

E-FILED ON: MARCH 14, 2007

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No. BK-S-06-10725 LBR |
| | Case No. BK-S-06-10726 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10727 LBR |
| Debtor. | Case No. BK-S-06-10728 LBR |
| | Case No. BK-S-06-10729 LBR |
| In Re: | |
| USA CAPITAL REALTY ADVISORS, LLC, | Chapter 11 |
| Debtor. | |
| | Jointly Administered Under |
| In Re: | Case No. BK-S-06-10725 LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | |
| Debtor. | |
| In Re: | AFFIDAVIT OF |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | JAMES S. RILEY IN SUPPORT OF ADMINISTRATIVE EXPENSE |
| Debtor. | CLAIM OF SIERRA LIQUIDITY FUND, L.L.C., AND REQUEST FOR |
| In Re: | PAYMENT THEREOF |
| USA SECURITIES, LLC, | |
| Debtor. | |
| | Hearing Date: April 26, 2007 |
| Affects: | Hearing Time: 9:30 a.m. |

| | | |
|---|---|---|
| ☐ All Debtors | ) | Objection Deadline: March 29, 2007 |
| ■ USA Commercial Mortgage Company | ) | |
| ☐ USA Securities, LLC | ) | |
| ☐ USA Capital Realty Advisors, LLC | ) | |
| ☐ USA Capital Diversified Trust Deed Fund, LLC | ) | |
| ☐ USA Capital First Trust Deed Fund, LLC | ) | |
| | ) | |

STATE OF CALIFORNIA    )
                                               )
COUNTY OF ORANGE     )

      PERSONALLY, before the undersigned officer, who is duly authorized to administer oaths, appeared JAMES S. RILEY, who, upon being duly sworn, deposes and says as follows:

      1.     I am more than twenty-one-years-old and have personal knowledge of the facts in this Declaration. This Affidavit is filed in support of the Administrative Expense Claim of Sierra Liquidity Fund, L.L.C., and Request for Payment Thereof (the "Administrative Claim"), filed concurrently herewith.

      2.     I am the president of Sierra Liquidity Fund, L.L.C. ("Sierra"), and the Managing Director of Sierra Asset Management, L.L.C. ("Sierra Asset Management"), which manages Sierra. Sierra invests in distressed trade claims and stressed and distressed securities. The Sierra Funds 1-4, first formed in 1996, invested in SEC registered limited partnerships in the United States and Canada. The Sierra Funds have purchased units from over 200 different limited partnerships with net asset values exceeding $75,000,000. Sierra Asset Management performs proprietary analysis in bankruptcy cases, including WorldCom, Adelphia, Mirant and Northwestern, as well as many stressed and high yield credits. As well as analysis and pricing, I oversee accounting, transfer, registration and mailing staff that handles all back office services. Also, since 1982, I have been the president of Riley Bower, Inc., a company that from 1982 through 1995 developed over $200,000,000 of apartments, homes and land entitlements.

3.      Sierra is the assignee of those notes, deeds of trust and other rights connected therewith attached as Exhibit "A" to the Administrative Claim (all collectively referred to herein as the "Loans").  Debtor USA Commercial Mortgage Company ("USA Commercial") purports to be the servicer of these Loans under loan servicing agreements (the "Loan Servicing Agreements") between USA Commercial and the assignors of the Loans.

4.      From and after the Petition Date, one or more of the Loans became non-performing or continued to be non-performing, such that it was the responsibility and obligation of USA Commercial to protect the interests of Sierra.  Evidence of the non-performing status of Loans in which Sierra holds an interest is set forth in USA Commercial's report dated July 31, 2006, attached as Exhibit "B" to the Administrative Claim.

5.      A true and correct sample of what I am informed and believe is a typical Loan Servicing Agreement used by USA Commercial is attached as Exhibit "C" to the Administrative Claim.  Section 2.(c)(i) and (ii) of the Loan Servicing Agreements provides that USA Commercial is required to:

> (i)     Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.
>
> and
>
> (ii)    In the event the Borrower fails to make any payment to USA [Commercial] as required by the terms of the note, USA [Commercial] will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA [Commercial] in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

6.      I am informed and believe that from and after the Petition Date, USA Commercial failed to take such action as required under the above-quoted sections of the Loan Servicing Agreements.  I am informed and believe that with respect to non-performing Loans, USA

Commercial failed to send notices of foreclosure, to commence or pursue foreclosure proceedings, or take such other action as required, thus breaching its duty to Sierra.

7. The pool of loans serviced by USA Commercial generally falls into two categories:

(1) Acquisition and pre-development loans to residential and commercial developers ("Predevelopment Loans") on unimproved real property. A typical loan would be on a multi-acre site in which a developer needs a "bridge loan" to acquire property and obtain all entitlements required to build thereon. These are typically one to two year loans, during which time the developer seeks to complete the permit process and fund a construction and development loan from a full service lender.

(2) Acquisition and improvement loans ("Improvement Loan"). These are loans where a builder purchases improved property and enters into an agreement to increase the loan incrementally as pre-approved improvements are made. A typical loan may be on an apartment complex with additional funds available for rehabilitating and converting to a for-sale condominium project.

8. During the Chapter 11 cases, several of the Predevelopment Loans held by Sierra have either become non-performing or have continued to be non-performing. Based on general market declines in value and my knowledge of the specific properties, I calculate that the value of the real property underlying the non-performing Predevelopment Loans held by Sierra has declined by at least 25%. USA Commercial's failure timely to foreclose or otherwise to protect the interests of Sierra in these non-performing Predevelopment Loans has damaged Sierra.

9. The following is a list of Predevelopment Loans in which Sierra holds an interest and which became non-performing during the Chapter 11 cases or which continued to be non-performing during the Chapter 11 cases. The list sets forth the principal amount of Sierra's interests and a calculation of Sierra's damages or losses as a percentage of the total principal

amount of the loan. In making the list, I assumed that the value of the underlying real property approximately equaled the loan amounts at the time of the origination of the loan.

| Date Listed as Non-Performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | 3685 San Fernando Road | | $235,000.00 |
| Jul-06 | Binford Medical | | $170,000.00 |
| Jun-06 | Brookmere | | $36,987.00 |
| Jun-06 | Hesperia II | | $50,000.00 |
| Jun-06 | Margarita Annex | | $425,000.00 |
| Jul-06 | Oak Shores II | | $239,000.00 |
| Jun-06 | Placer Vineyards | | $810,000.00 |
| Jun-06 | Marquis Hotel | | $45,000.00 |
| | Total | | $2,010,987.00 |
| | Damages | 25% | $502,746.75 |

10.     Sierra holds one Improvement Loan that has become non-performing or has continued to be non-performing during the Chapter 11 cases. The value of that underlying real property has declined 25%. As a result of USA Commercial's failure to timely foreclose on the Improvement Loan, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |
| | Total | | $650,000.00 |
| | Decline in Value (Damages) | 25% | $162,500.00 |
| | Damages | | $162,500.00 |

11.     I am informed and believe that USA Commercial will take the position that upon foreclosure it is entitled to retain as "default interest" the difference between the default rate of interest and the non-default rate of interest. Sierra is informed and believes that this difference is 8% per year, which is the amount of "default interest" that USA Commercial will seek to retain from foreclosure sale proceeds.

12.     In the event that it is determined that USA Commercial is entitled to "default interest" from foreclosure sale proceeds, which entitlement Sierra denies, then Sierra was damaged by USA

Commercial's failure to timely foreclose on the underlying real property and thereby incurring the "default interest." Rather than protect Sierra's interests, USA Commercial instead delayed in conducting foreclosure sales in order to incur such "default interest" which it then would seek to collect from foreclosure sale proceeds.

13.   As a result of USA Commercial's failure to promptly foreclose on the non-performing loans, therefore, Sierra has been doubly hurt in that values of the properties have declined and further that such depressed values will be subject to payment of "default interest" to USA Commercial. Had USA Commercial promptly acted, USA Commercial could have foreclosed on the properties when market values were higher and before "default interest" had been incurred.

14.   To summarize, with respect to Predevelopment Loans, Sierra has been damaged as follows:

| Date Listed as Non-Performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | 3685 San Fernando Road | | $235,000.00 |
| Jul-06 | Binford Medical | | $170,000.00 |
| Jun-06 | Brookmere | | $36,987.00 |
| Jun-06 | Hesperia II | | $50,000.00 |
| Jun-06 | Margarita Annex | | $425,000.00 |
| Jul-06 | Oak Shores II | | $239,000.00 |
| Jun-06 | Placer Vineyards | | $810,000.00 |
| Jun-06 | Marquis Hotel | | $45,000.00 |

| | | |
|---|---|---|
| Total | | $2,010,987.00 |
| Decline in Value (Damages) | 25% | $502,746.75 |
| "Default Interest" Delta | 10%[1] | $201,098.70 |
| Total Damages | | $703,845.45 |

---

[1] While Sierra is informed and believes that the difference between the non-default and the default rate of interest is 8% per year, Sierra further assumes a default pre-foreclosure period of 15 months, equating to 1.25 years, and therefore calculates "Default Interest" Delta damages at 10% (8% x 1.25 = 10%). To the extent that the default pre-foreclosure period is longer than 15 months, then damages on account of improperly retained 'default interest" will be higher.

15. With respect to Improvement Loans, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |

| | | |
|---|---|---|
| Total | | $650,000.00 |
| Decline in Value (Damages) | 25% | $162,500.00 |
| "Default Interest" Delta | 10% | $65,000.00 |
| Total Damages | | $227,500.00 |

16. In addition to the foregoing, Sierra has been damaged by incurrence of additional and continuing loan service fees of between 1-3% per year, lost opportunity costs and legal fees and costs according to proof.

JAMES S. RILEY

Sworn to and subscribed before me this ___ day of March, 2007.

_____
Notary Public

CHRIS MACKEVICIUS
Commission # 1615410
Notary Public - California
Orange County
My Comm. Expires Oct 22, 2009