1  Dean T. Kirby, Jr.    Calif. Bar No. 090114
   Leonard J. Ackerman Calif. Bar No. 171073
2  KIRBY & McGUINN, A P.C.
   600 B Street, Suite 1950
3  San Diego, California 92101-4515
   Telephone: (619) 685-4000 Facsimile: (619) 685-4004
4  dkirby@kirbymac.com
   lackerman@kirbymac.com
5
   Michelle L. Abrams    Nev. Bar No. 5565
6  MICHELLE L. ABRAMS, LTD.
   7201 West Lake Meade Blvd., Suite 210
7  Las Vegas, NV 89128
   Telephone: (702) 233-5040 Facsimile (702) 233-2209
8  mabrams@mabramslaw.com

9  Attorneys for Creditor
   Debt Acquisition Company of America V
10
                    UNITED STATES BANKRUPTCY COURT
11
                            District of Nevada
12
   In re                              ) Case No. BK-S-06-10725 LBR
13                                     )
   USA COMMERCIAL MORTGAGE COMPANY     ) MEMORANDUM OF POINTS AND
14                                     ) AUTHORITIES IN OPPOSITION TO
                            Debtor.    ) DEBTOR'S MOTION TO SELL UNDER
15 In re                              ) SECTION 363 ALL COMMERCIAL
                                       ) MORTGAGE ASSETS OF DEBTOR USA
16 USA CAPITAL REALTY ADVISORS, LLC    ) COMMERCIAL MORTGAGE COMPANY
                                       ) IN THE PLACER VINEYARDS LOANS
17                          Debtor.    ) TO COMPASS USA SPE, LLC
   In re                              ) INCLUDING REQUEST FOR
18                                     ) RECONSIDERATION OF ORDER
   USA CAPITAL DIVERSIFIED TRUST FUND, LLC ) SHORTENING TIME
19                                     )
                            Debtor.    ) [AFFECTS DEBTOR USA COMMERCIAL
20 In re                              ) MORTGAGE COMPANY]
                                       )
21 USA CAPITAL FIRST TRUST DEED FUND, LLC ) DATE: March 27, 2007
                                       )
22                          Debtor.    ) TIME:  9:30 a.m.
   In re                              )
23                                     )
   USA COMMERCIAL MORTGAGE COMPANY     )
24                                     )
                            Debtor.    )
25 Affects:                           )
        ☐ All Debtors                  )
26      ☒ USA Commercial Mortgage Company )
        ☐ USA Capital Realty Advisors, LLC )
27      ☐ USA Capital Diversified Trust Fund, LLC )
        ☐ USA Capital First Trust Deed Fund, LLC )
28      ☐ USA Securities, LLC          )
                                       )

I.    <u>INTRODUCTION</u>

The instant motion to sell the Debtor's loan servicing rights in the two (first and second trust deed) loans secured by the property known as "Placer Vineyards" was filed on drastically shortened time without an adequate showing of an emergency justifying this action. The shortened time not only affects the ability of parties in interest to oppose the motion, it also handicaps the ability of prospective bidders to investigate and prepare a bid.

Debt Acquisition Company of America opposes the motion both in its capacity as a creditor and also as a prospective bidder which has been excluded as a practical matter from conducting due diligence and preparing to bid. DACA's arguments in opposition are summarized as follows:

- The Order Shortening Time (an interlocutory order which DACA requests be reconsidered) was improvidently granted, because there was no showing an emergency justifying shortened time.

- The Motion does not make any showing as to the reasonableness of the proposed opening bid. Supporting information should include for example the amounts of what are referred to in the Motion as: (i) Default Rate Interest; (ii) Accrued Servicing Fees; (iii) Late Charges; and (iv) Success Fees; as well as any facts indicating that these amounts are or are not well secured by the subject property. This information would also be vital to any prospective bidder.

- The Motion does not make any showing as to the efforts of the Debtor to provide information to or notify other prospective bidders, including for example those parties who bid or attempted to bid at the previous sale (e.g., Silver Point, Desert Capital).

- The Notice of Hearing does not make clear to Direct Lenders an intention to transfer the Loan Servicing Agreements free and clear of the rights of the Direct Lenders as counterparties to those agreements, thereby creating a legal uncertainty which will likely chill the bidding. If a reasonable time is allowed before an auction, DACA proposes to use that time to try to obtain the consent of the Direct Lenders to the transfer of the loan servicing rights.

/ / /

/ / /

/ / /

1     •     The assets proposed to be sold are not property of the bankruptcy estate but instead are vested

2          in the USACM Liquidating Trust free and clear of interests under 11 U.S.C. § 1141(c). Counsel

3          for DACA cannot find provisions of the Plan or the Confirmation Order that purport to preserve

4          power in the Liquidating Trust to sell assets free and clear of any other rights of the Direct

5          Lenders.

6     •     Any proposed sale which occurs without the consent of the Direct Lenders is subject to the same

7          legal defects raised in opposition to confirmation of the earlier sale to Compass Partners under

8          the Plan.

9
10 II.     DACA REQUESTS THAT THE COURT RECONSIDER AND
        MODIFY THE ORDER SHORTENING TIME

11     This Motion (Docket No. 3037) was originally filed on March 9. It refers to a hearing date of

12 March 15, but no notice of hearing was apparently filed or served on anyone. An Application for Order

13 Shortening Time (Docket No. 3095) was filed on Thursday, March 15, and the OST was ultimately

14 entered on Friday, March 16, scheduling submission of bids for Friday, March 23 (five business days

15 later). The Notice of Hearing (Docket No. 3097) was mailed without copies of any other papers to the

16 Direct Lenders on Thursday, March 15, and purports to require them to file written opposition to the

17 Motion no later than Tuesday, March 20 (five business days before the hearing) (see Certificate of

18 Service, Docket No. 3126).

19     It was not within the bounds of due process to notify 343 Direct Lenders by first class mail and

20 require them to file an objection to the Motion within three business days *after mailing*. It is similarly

21 not within the bounds of commercial reasonableness to expect any prospective bidder to make a business

22 decision on a $300,000 purchase within five business days, especially when the Motion itself omits the

23 basic information that the bidder would need in order to determine the value of what the Debtor is

24 purporting to sell.

25 / / /

26 / / /

27 / / /

28 / / /

1    The Application for Order Shortening Time and the supporting McPherson Declaration do not
2    even assert that any emergency exists which may be balanced against the harm inherent in placing both
3    the Direct Lenders and prospective bidders at such a disadvantage.  The McPherson Declaration
4    explains that funds will be needed post-foreclosure to complete the Placer Vineyards project, but the
5    need for those funds is speculative (depending on the outcome of the foreclosure process) and many
6    months in the future.  What might happen at a foreclosure sale which might be scheduled for this fall
7    was not cause to shave two weeks off the time which Direct Lenders and prospective bidders had to
8    respond to the Motion and participate in the auction.

9    Provided that it receives timely information from the Debtor, DACA will be in a position to enter
10   competitive bidding on the Placer Vineyards loan servicing rights by April 10.  DACA requests that the
11   date for submission of bids be continued until that time, with the hearing on the Motion to follow shortly
12   thereafter.  That schedule would be in line with the Court's normal motion procedures.  No cause has
13   been demonstrated to alter those procedures in this case.

14
15   III.   THE MOTION MAKES NO SHOWING AS TO THE
         REASONABLENESS OF THE OPENING BID

16   The Motion proposes to sell a bundle of rights, referred to as the "Placer Vineyards Commercial
17   Mortgage Assets" which include "without limitation, the servicing agreements (the "Servicing
18   Agreements") relating to the Placer Vineyards Loans, any and all Default Rate Interest (as defined in
19   the Compass APA) for the Placer Vineyards Loans, any and all Accrued Servicing Fees (as defined in
20   the Compass APA) for the Placer Vineyards Loans, any and all Late Charges (as defined in the Compass
21   APA) for the Placer Vineyards Loans, any and all Success Fees (as defined in the Compass APA) for
22   the Placer Vineyards Loans, and other fees and sums due the loan servicer under the Servicing
23   Agreements, as well as all proceeds and receivables related solely to USACM's participation interest
24   as a Direct Lender in the Placer Vineyards Loans (if any)." (Motion p. 4).

25   What is purportedly being sold is the opportunity to collect these various items and to retain
26   them as part of the servicing agent's fee. The value of that opportunity largely depends on whether there
27   is sufficient value in the property to secure those amounts.

28   / / /

---

1    At a minimum, creditors deserved to be advised in the moving papers as to the amount of default

2    interest and late charges (as well as accrued servicing fees and success fees) which are being sold as to

3    these two loans. This is the only way for anyone (including this Court) to gauge whether the proposed

4    purchase price is fair.

5    The very same information is basic to anyone who might even consider bidding on this asset.

6    Also important would be any information which the Debtor obtained as to the value of the Placer

7    Vineyards property. Valuation information would demonstrate whether the default interest and late

8    charges will ultimately be collected. If collection of these sums is a virtual certainty in the long run,

9    then the total which will be collected ought to compare favorably with the purchase price negotiated

10    with Compass. If the price negotiated with Compass is much lower than the default interest and related

11    charges, then this sale should be attractive to other bidders.

12    IV.    THE MOTION CONTAINS NO SHOWING AS TO MARKETING EFFORTS

13    The Motion asks the Court to confirm the results of an auction to be held on March 21. Central

14    to the concept of a commercially reasonable auction is that an effort is made to notify prospective

15    bidders of the date time and place of the auction, and of any facts not generally available that would

16    affect the decision of a party to bid. Without those things, an auction cannot be relied upon to secure

17    the best available price for the seller.

18    In this case, Compass was not the only bidder for the original package of Loan Servicing

19    Agreements. The disappointed stalking horse bidder was SPCP Group, LLC ("Silverpoint"). Another

20    prospective bidder, Desert Capital REIT, also attempted to qualify to bid. At the time that this Motion

21    was filed, the Debtor knew that DACA had already been designated as the substitute servicing agent

22    under one of the loans, known as Fiesta Oak Valley. Yet, DACA was not contacted by the Debtor to

23    attempt to obtain an offer to purchase the Placer Vineyards servicing rights.

24    The relatively small size of the Placer Vineyards sale might make the loan servicing rights

25    attractive to a whole host of Nevada-licensed mortgage loan brokers. The Motion does not indicate that

26    any attempt was made to notify any Nevada or California mortgage loan broker that the servicing rights

27    for the Placer Vineyards loans were for sale.

28    / / /

V.    THE NOTICE OF HEARING IS DEFECTIVE

The Motion states that the sale of the Placer Vineyards loan servicing rights will be under the same terms as those contained in the Asset Purchase Agreement filed with the Court on December 18 in connection with the previous sale (Docket No. 2164).  The Asset Purchase Agreement provides generally that an order approving the sale must include the provision that the Assets are sold "free and clear of all liens, claims, interests, obligations and encumbrances whatsoever under Section 363." However, it goes on to require in addition (in section 5.2) that any order confirming the sale shall "determine" that "the Purchaser is not a successor to Sellers or otherwise liable for any liabilities not expressly assumed and to the extent permitted by applicable law enjoining each and every holder of a claim for such liabilities from commencing, continuing or otherwise pursuing or enforcing any remedy, claim, cause of action or encumbrance against Purchaser or the Assets . . . ."

It is at least possible, by referring back to other pleadings which are themselves referred to in the Motion, for an interested party to determine that the Debtor intends to submit an order which purports to eliminate the rights and defenses of the Direct Lenders on the Loan Servicing Agreement based on material breaches by the Debtor.  However, the Notice of Hearing, the only document served on the Direct Lenders, makes no reference to this intention.  The Notice of Hearing merely states that the Assets are being sold "free and clear of all liens, claims, encumbrances and interests."  Fairly read, the Notice of Hearing does not suggest that the rights of the Direct Lenders under the Loan Servicing Agreements are being otherwise altered or curtailed in any way.

DACA admits that under 11 U.S.C. § 1141(c) the property dealt with by the Plan revests in the Debtor "free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor."  However, the Direct Lenders' rights under the Loan Servicing Agreements are not "liens, claims, encumbrances and interests" which are within the ambit of section 363.  Any relief in addition to what has already been accomplished under section 1141(c) is not only improperly noticed, it is impossible in any case.

/ / /

/ / /

/ / /

1    The ideal way for any prospective purchaser to acquire the loan servicing rights would be to

2    purchase those rights *with the informed consent of the Direct Lenders*, not by concealing from them

3    what is going on. If additional time is granted for bidding, this is what DACA would propose to do.

4    DACA would attempt to obtain from the Direct Lenders consents to the transfer of the loan servicing

5    rights to DACA, contingent on DACA being the successful bidder.  If it obtains these consents in

6    advance, DACA would be prepared to bid more than it would be prepared to bid in the present situation.

VI.    THIS ASSET MAY NOT BE SOLD FREE AND CLEAR OF ANY RIGHTS OF THE DIRECT
       LENDERS OTHER THAN HAS ALREADY OCCURRED UNDER 11 U.S.C. § 1141(c)

9    Section 363 provides in part that "the trustee" may sell assets free and clear of interests. Unless

10   counsel for DACA misunderstands, the current status of this case is that the Effective Date of the Plan

11   has passed, the Debtor in Possession no longer exists, and the assets of the bankruptcy estate have been

12   vested in the USACM Liquidating Trust.  Generally, the Debtor's administrative power to sell an asset

13   free and clear of interests under 11 U.S.C. § 363(f) does not apply post-confirmation. *In re Golf*, LLC

14   322 B.R. 874, 877 (Bankr. Neb. 2004).  As far as counsel can determine, the Plan does not even purport

15   to transfer to the Liquidating Trust the right to sell free and clear under section 363(f).

16   Therefore, whatever ability the Liquidating Trust now has to sell the subject property is confined

17   to selling exactly what the Liquidating Trust was vested with under 1141(c).  Further relief relating to

18   the rights of the Direct Lenders under the Loan Servicing Agreements, like that provided for in the Asset

19   Purchase Agreement, is not possible.

VII.   THE SALE IS SUBJECT TO THE SAME LEGAL DEFICIENCIES
       AS THE ORIGINAL SALE TO COMPASS

22   DACA will not burden the Court by repeating in detail its objections which were raised in

23   connection with the first sale to Compass. (See DACA's opposition to plan confirmation, Docket No.

24   2050). The Court ruled against DACA as to these matters, but its ruling is currently on appeal. DACA

25   reserves the same objections as to this sale. The Loan Servicing Agreements are executory contracts.

26   Because these contracts were not assumed under the Plan they are deemed rejected.  Rejection of the

27   contract constitutes a material breach as of the date of filing of the petition.  A material breach of a

28   contract excuses performance of the counterparty.

1    Further, and regardless of whether the Loan Servicing Agreements are deemed executory, these

2  contracts must be assigned subject to all of their terms and conditions, and subject to all of the rights and

3  defenses of the counterparties arising under those terms and conditions.  These rights are not "interests

4  in property" which can be stripped away under 11 U.S.C. § 363(f).

5  VIII.    <u>CONCLUSION</u>

6    DACA submits that in view of the defective notice, the apparent failure of the Debtor to market

7  these assets to potentially interested parties, and the lack of any concrete reason for haste, the auction

8  be moved to April 10, with the hearing to follow shortly thereafter.  In the interim, DACA can obtain

9  the information necessary to bid and seek the consent of the Direct Lenders to a transfer of the loan

10  servicing rights, contingent upon DACA being the successful bidder.  DACA's success in obtaining

11  these consents will determine to what extent it is prepared to bid.

12

13  DATE: March 20, 2007                                    KIRBY & McGUINN, A.P.C.

14

15                                                                        By:    /s/

16                                                                        Dean T. Kirby, Jr. Attorneys for
                                                                           Debt Acquisition Company of America V

17

18

19

20

21

22

23

24

25

26

27

28

---