

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile No. (702) 949-8321
Telephone: (702) 949-8320

Rob Charles NV State Bar No. 006593
E-mail: rcharles@lrlaw.com
Susan M. Freeman AZ State Bar No. 004199
E-mail: sfreeman@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 3/21/07

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

USA COMMERCIAL MORTGAGE COMPANY,

USA CAPITAL REALTY ADVISORS, LLC,

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,

USA CAPITAL FIRST TRUST DEED FUND, LLC,

USA SECURITIES, LLC.

                           Debtors.

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

Case No. BK-S-06-10725-LBR
Case No. BK-S-06-10726-LBR
Case No. BK-S-06-10727-LBR
Case No. BK-S-06-10728-LBR
Case No. BK-S-06-10729-LBR

CHAPTER 11

Jointly Administered Under Case No. BK-S-06-10725-LBR

**Response To Motion To Sell Under Section 363 All Commercial Mortgage Assets Of USA Commercial Mortgage Company In The Placer Vineyards Loans To Compass USA SPE, LLC**

Date:     March 26, 2007
Time:     9:30 a.m.

The USACM Liquidating Trust responds to the Motion to Sell Under Section 363 all Commercial Mortgage Assets of Debtor USA Commercial Mortgage in the Placer Vineyards Loans to Compass USA SPE, LLC (the "Motion") (DE 3037). In sum, the USACM Trust believes that the hearing on 12 days' notice is too soon, and the purchase price of $300,000 may not be justified. This Response is based upon the Court's record, including the record to be developed at the hearing, and is explained in the following Memorandum.

216711.2

# MEMORANDUM

## Background

**Placer Vineyard Loans.**

USA Commercial Mortgage Company is the servicer on two loans.

**First Loan.** One was made pursuant to a loan agreement dated as of December 10, 2004 with Placer County Land Speculators, LLC ("Borrower") and is secured by a first lien on the property described in the related Deed of Trust.[1] As of January 31, 2006, the balance of the Loan was $31,500,000 principal, and $5,602,920 interest.[2] The Loan had matured in December 2005.

**Second Loan.** Pursuant to a separate set of loan agreement documents, Borrower borrowed $6,500,000 from Lenders serviced by USACM, which is secured by a junior lien on the property described in the related Deed of Trust. As of January 31, 2006, the principal balance outstanding was $6,500,000 and unpaid interest was $1,435,656.[3] Again, the obligation matured in December 2005.

**Direct Lenders.** According to Debtor's records there are 343 Direct Lenders participating in the senior loan and 118 Direct Lenders in the junior loan.[4]

USACM is owed a fee of $932,534 in connection with the First Loan and a fee of $28,716 in connection with the Second Loan. Because of the failure to collect principal and interest owed on the First and Second Loans, USACM also has not collected servicing fees associated with these debts. As of October 31, 2006, the last date information is readily available to the USACM Trust, there were accrued and unpaid servicing fees of $303,058 on the First Loan, and $59,583 on the Second Loan. Further, to the extent that USACM is entitled to collect the default interest premium as opposed to contract interest,

---

[1] A list of the applicable Loan Documents provided to the USACM Trust is set forth in Appendix 1 attached.
[2] This information is available from USACM's loan summary report.
[3] This information is available from USACM's loan summary report.
[4] This information is available from USACM's loan summary report.

216711.2

the accrued and unpaid default interest on the First Loan was $2,478,045 on October 31, 2006, and the default interest on the Second Loan on that date was $258,769.[5]

In addition, USACM made payments to Lenders on the First Loan and the Second Loan where the Borrower had not made payment. This "prepaid interest" totals $1,228,292 on the First Loan and $259,999 on the Second Loan.[6]

**Collateral**

**Property.**  According to an appraisal prepared by Hilco Real Estate Appraisal, LLC for USACM, the Property is 338.3 acres, more or less, of two, non-contiguous undeveloped lots in Placer County, California. It is part of a larger 5,000 acre development, according to Robert Russell, manager of the Borrower.

**Valuation.**  The Hilco "as is" valuation report as of July 14, 2006 reported a value of $25,400,000, based on both the sales comparison and market value approaches, assuming a 12 month marketing period.

A Direct Lender has represented to the USACM Trust:

> According to the appraisal done by Stevers, Jordan & Ziegermeyer on 12/21/04, the market as-is-value with no entitlements was $33,830,000 for the 338-acre parcel secured under the PV loan. He reported a hypothetical value of $67,660,000 upon final approval of Placer Vineyards Specific Plan, which was approved by the Planning Commission in January 2007.[7]

Mesirow has reported to the USACM Trust that a broker approached Mesirow about an offer of $120,000 per acre for the Property, for a value of $40,596,000 gross. Mesirow further reported that it would recommend an offer of $125,000 per acre, for a value of $42,250,000, but no such offer was received. At $42,250,000, the First Loan would be paid in full, including default interest and associated fees,[8] and the Second Loan would be paid a portion of the outstanding principal balance.

---

[5] In October 2006, USACM provided the Official Unsecured Creditors Committee of USA Commercial Mortgage Company with information on the Placer Vineyards loans. That information is set forth in Appendix 2 and is summarized here.
[6] Appendix 2.
[7] A copy of portions of this appraisal has been provided to the USACM Trust.
[8] It is possible that the Direct Lenders on the Second Loan may argue that the servicer of the First Loan should not collect default interest on the First Loan. The USACM Trust reserves all defenses and objections to any such contention.

The Property is not listed for sale and is believed to be controlled by Joe Milanowski through USAIP, although Robert Russell has been managing the Property for USAIP.

**Cash Requirements.**  The USACM Trust is advised by Mesirow that Mesirow believes there are unpaid real estate taxes of $482,413.55 owing to Placer County on the Property, which are due on March 31.[9]  To the knowledge of the USACM Trust, no tax lien has been recorded and the property has not been posted for a tax sale.

In addition, about $364,805 is reportedly to a joint ownership group for costs of engineering and other expenses associated with obtaining government approvals from Placer County.  The Borrower has received a demand for that payment.  Mesirow has advised the USACM Trust that the immediate out-of-pocket cost for these items is perhaps $850,000 or more.  Failure to pay these costs will, at some time, result in a tax foreclosure of the Property by Placer County, and certainly delay the ability of the owner of the Property to obtain any entitlements for development.

**Collateral for USAIP Note.**

The equity of USA Investment Partners, LLC in the Placer Vineyards Borrower is pledged to USACM as collateral for the promissory note made by USAIP for $58,374,918.81.  The interest in the collateral is shared with USA Capital Diversified Trust Deed Fund, LLC with respect to all obligations owed by USAIP to either estate.

**Marketing Efforts**

The interests of USACM in servicing the Placer Vineyards Loans were originally included in the Silver Point Stalking Horse Assets.  On the morning of the auction on December 7, 2007, USACM requested and the bidders all agreed that the Placer Vineyards Loans servicing rights would be removed from the Auction (due to the possibility of a sale as indicated above).

---

[9] On April 10, the taxes will increase $168,459.71, and will be about $670,000, according to Mesirow.

LEWIS AND ROCA LLP LAWYERS

On February 20, 2007, Mesirow orally advised the USACM Trustee[10] and undersigned counsel that a sale of the Placer Vineyards Property was unlikely, and of the need to advance approximately $750,000 to protect the Property's entitlements with Placer County. Mesirow has advised the USACM Trust that Mesirow inquired of Compass, Silver Point and Racebrook about their interest in the possibility of buying the Placer Vineyards servicing rights, and reported that only Compass was willing to make an offer. The instant $300,000 offer (increased from an initial offer of $125,000) was reported to the USACM Trust and brought before this Court.

Other parties have requested information about the Placer Vineyards Loans and Property. One party asked for:

> All available due diligence materials for the Placer Vineyards, including engineering cost estimates, fee studies, biological reports, environmental Phase I, traffic reports, cultural/archaeological assessments, water studies, noise impact studies, geotechnical/soils report, planning reports, or other general due diligence document[s].

In general, the USACM Trust understands that Mesirow and USACM were unable to supply such information immediately. Rather, copies of loan documents, title policies and appraisals are being made available for potential bidders. The USACM Trust has provided the documents available to the USACM Trust to the requesting party.

The USACM Trust has none of the additional information requested by a possible bidder. The USACM Trust has been advised that there are several boxes of Placer Vineyards-related documents being pulled from storage, which will be made available to potential bidders this week.

Even if the information were completely responsive to the potential bidder's request, no bidder would have more than one or two business days to assimilate the information in order to determine whether and what to bid at an auction on March 27, 2007.

---

[10] This was before the Plan's "Effective Date" and therefore, the advice to the USACM Trustee was before the Trust was effective.

5

216711.2

This hearing was scheduled on March 15, 2007, for a sale on March 27, 2007, about 12 days' notice.  At least one Direct Lender (Larry and Patsy Rieger) have objected to the USACM Trust that this is simply an inadequate amount of time for a potential bidder on servicing rights to obtain information and arrange to fund a bid.

Mesirow and Compass have responded as to the timing that the failure to advance about $850,000 to Placer County within a month will jeopardize the Property's entitlements with Placer County, which will dramatically reduce the value of the Property.  This assertion has not been documented to the USACM Trust.

**Discussion**

**1.    Timing of the Sale.**

The sale has been scheduled with 12 days notice.  This appears to be an insufficient time to allow meaningful investigation by potential bidders, and thus bidding.  As the limited evidentiary support for the assertions in this response demonstrate, the USACM Trust is largely relying on oral reports from Mesirow and others in analyzing the proposed transaction.

**2.    Merits of the Sale and the Proposed Price.**

The USACM Trust believes that sale of the servicing rights to a financially responsible servicer at the right price is the best alternative for Direct Lenders and creditor beneficiaries of the Trust.  This conclusion balances the following competing concerns:

- ➢ In order to service the two Loans, the USACM Trust would need to enforce conflicting (senior and junior) positions against the Borrower.
- ➢ The compensation to the servicer may be unclear.  Those Direct Lenders with an "up to 3%" servicing fee would be charged 3%, and those with less would be charged less.  Some Direct Lenders may challenge payment of other fees or default interest to the servicer if the Loans are not paid in full.

216711.2

- ➢ Collection of the Loans adds an additional benefit to the USACM Trust in the form of collection of "prepaid interest" that may not have previously been netted from the applicable Direct Lenders.
- ➢ The servicer has to consider whether to advance $850,000 or more to preserve the value of the Property. The Loan Servicing Agreements are unclear as to the protection to the servicer for these specific advances, and do not provide for interest on servicer advances.
- ➢ If the servicer fails to act on the Lenders' behalf, under the LSAs and Nevada law, the servicer may be replaced with the consent of 51% of the holders of interests in the Loan.
- ➢ Enforcement of the Loans by foreclosure would likely result in a bankruptcy filing by the Borrower, or at least extended litigation.

None of these alternatives is certain to result in increased benefit to the USACM Trust.

If the USACM Trust had the liquidity to make and the ability to earn a return on servicer advances, was certain that an advance of the $850,000 would be repaid by the Lenders as a servicing advance, had certainty that its collection strategy would not involve a conflict between the first and second lien holders, and would result in significant payment of servicing fees or default interest to the USACM Trust, then retaining the servicing rights would be imperative.

Absent a sale of the servicing rights, the USACM Trust intends to immediately, vigorously enforce the Loans, with the first step being retention of California counsel to initiate foreclosure.

The purchase price is a serious concern. If, for example, the First Loan were paid the day after the sale, the purchaser would have the right to collect at least $3.7 million in fees, servicing fees and default interest, as explained above. Collection of the Second



Loan would result in additional payments to the servicer. Under these circumstances, $300,000 seems pale consideration for the rights being conveyed.

### Conclusion

For all of the foregoing reasons, the USACM Trust requests that Debtor's motion to sell the servicing rights on the Placer Vineyards loans be continued to the April 26, 2007 calendar, and at that hearing, the Court receive evidence in order to consider whether $300,000 or more is a reasonable purchase price.

Dated March 21, 2007.

**LEWIS AND ROCA LLP**

By /s/ Rob Charles (#006593)
    Susan M. Freeman, AZ 4199 (pro hac vice)
    Email: SFreeman@LRLaw.com
    Rob Charles, NV 6593
    Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
*Attorneys for the USACM Liquidating Trust*

216711.2