Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

E-FILED ON MARCH 29, 2007

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **OBJECTION OF USA COMMERCIAL MORTGAGE COMPANY TO THE ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND, LLC** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **(Affects USA Commercial Mortgage Company)** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Hearing Date: April 26, 2007<br>Hearing Time: 9:30 a.m. |

USA Commercial Mortgage Company ("USACM"), by and through its counsel, hereby files its Objection to the Administrative Expense Claim of Sierra Liquidity Fund, LLC ("Objection") and moves this Court, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order granting the relief sought by this Objection.

## I.    FACTUAL BACKGROUND

1. On April 13, 2006 ("Petition Date"), USACM, USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF" and together with DTDF, the "Funds") (collectively the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. From the Petition Date through March 12, 2007 (the "Effective Date"), the Debtors continued to operate their businesses, if any, as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Post-petition management of the Debtors was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC ("Mesirow"), who served as the Chief Restructuring Officer.

2. USACM is a Nevada Corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account.

3. This business included the solicitation of individual investors to purchase fractional interest in loans that USACM originated and then serviced. These investors, totaling approximately 3,600 as of the Petition Date, are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

4. Although USACM serviced and sometimes originated the loans in which the Direct Lenders invested, USACM was not a borrower on these loans.

5. Beginning in Summer 2006, USACM's post-management began sending investor statements to Direct Lenders that indicated, among other things, whether the loans in which they had invested were performing.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

6. On October 19, 2006, USACM filed with the Court a copy of the Asset Purchase Agreement among the Debtors and SPCP Group, LLC (the "Silver Point APA") [Docket No. 1603]. Attached to the Silver Point APA is a schedule listing the status as of July 31, 2006, of most of the loans USACM serviced as performing or non-performing.

7. Pursuant to Section 2.2(b) of the Silver Point APA, parties in interest were on notice that USACM intended to transfer the servicing of the loans to a different entity.

8. On December 7, 2006, an auction was held whereby Compass Partners LLC ("Compass") agreed to purchase, among other things, most of USACM's assets.

9. On December 18, 2006, USACM filed with the Court a copy of its Asset Purchase Agreement with Compass (the "Compass APA") [Docket No. 2164]. Attached to the Compass APA was a schedule listing the status as of July 31, 2006, of most of the loans USACM serviced as performing or non-performing.

10. Section 2.3(i) of the Compass APA further stated that the purchase price for USACM's assets would be "reduced dollar for dollar by the amount of any payoff or reduction of [USACM's assets] from [December 7, 2007] to the Closing Date." Therefore, USACM was obligated to obtain approval from Compass before commencing any foreclosures.

11. On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" [Docket No. 2376].

12. Debtors' Third Amended Chapter 11 Plan of Reorganization (the "Plan") [Docket No. 1799] provides the following deadlines for objections to Claims:

(A) for any and all Claims and Equity Interests to which the General Bar Date applies, ninety (90) days after the Effective Date; (B) for any and all Claims to which the Administrative Claims Bar Date or the Professionals Administrative Bar Date applies, thirty (30) days after the expiration of the respective Bar Date; and (C) for any and all Claims to which the Bar Date applicable under section B.3 of Art. V of the Plan applies, thirty (30) days after the expiration of that Bar Date.

13. Under the Plan, the USACM Liquidating Trust exists as of the Effective Date, which was March 12, 2007. Geoffrey L. Berman is the Trustee.

14. On March 14, 2007, Sierra Liquidity Fund, LLC ("Sierra") filed an administrative expense claim and a request for payment thereof (the "Claim") [Docket No. 3088]. Sierra did not assert a specific amount that it seeks to have paid as an administrative expense, but it appears the Claim is in excess of $660,000.

15. Sierra asserts that it is the assignee of various interests in nine separate loans serviced by USACM (the "Loans"), which interests it received from former Direct Lenders. According to Exhibit "A" attached to its Claim, these interests were allegedly assigned to Sierra beginning on November 20, 2006, after USACM had filed with the Court the Silver Point APA, and continuing into March 2007.

16. For the reasons discussed below, USACM objects to Sierra's Claim and asserts that it should be disallowed in its entirety.

## II.  ARGUMENT

Section 503 of the Bankruptcy Code permits entities to file a request for payment of administrative expenses. *See* 11 U.S.C. § 503(a). Such an expense is allowed only after a notice and a hearing. *See* § 503(b). A claim filed for an administrative expense, "unlike a proof claim is not deemed allowed in the absence of an objection and does not constitute prima facie evidence of the validity and amount of the request." *In re Silvus*, 329 B.R. 193, 205 (Bankr. E.D. Va. 2005) (internal quotations omitted); *see also Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1467 (10th Cir. 1992) (no presumption for administrative expense claims). Therefore, a claimant seeking the payment of an administrative expense enjoys no presumption of validity and bears the burden at all times of proving an entitlement to payment as an administrative expense.

USACM objects to Sierra's Claim and asserts that it should be disallowed in its entirety. The Claim, which is based on unsupported allegations of breaches the occurrence of which USACM denies, has been waived and superseded by the Plan. Furthermore, Sierra has presented no evidence in support of its alleged damages. Therefore, Sierra has not met its burden of showing that it is entitled to payment of its claim as an administrative expense, and the Court should disallow its Claim entirely.

**A.  The Direct Lenders Waived All Claims Against USACM Under the Plan**

4

The confirmed Plan resolved various Claims among the Debtors and third-parties including the Direct Lenders. As part of these compromises confirmed in the Plan, USACM and the Direct Lenders mutually released each other as of the Effective Date from any and all Claims, with a few exceptions not relevant to this Objection. Specifically, the Plan broadly states in Article VIII, Section A(4) (page 76) that:

> ***As of the Effective Date***, in consideration for the obligations, subordination, modifications of rights and accommodations of [USACM] and except as otherwise expressly provided under the Plan, ***the Direct Lenders***, pursuant to the settlements embodied in the Plan, on their own behalf (the "Direct Lender Releasors"), ***shall be deemed to forever release, waive and discharge any and all Claims***, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, ***whenever arising***, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, ***in any way relating to [USACM]***, the [USACM estate], the USACM and FTDF Chapter 11 Cases, including any causes of action, or any other matter which any of the Direct Lender Releasors ***or any Person or Entity claiming by, from, through, or under any of the Direct Lender Releasors*** ever had, now has, or hereafter can, shall, or may have against [USACM].

(emphasis added).

As stated, Sierra asserts that it is the assignor of various interests that it received from former Direct Lenders. Thus Sierra is claiming an administrative expense "by, from, through, or under any of the Direct Lender Releasors." The Order confirming the Plan stated in paragraph 8 that the "provisions of the Plan and this Confirmation Order shall bind . . . (f) all Direct Lenders. . . ." Furthermore, the Order stated in paragraph 64 that "[a]s set forth in Article VIII, Section A. of the Plan, the limitation of liability and release provisions shall be effective and binding upon all applicable Persons and entities to the fullest extent provided in the Plan." These provisions mean that Sierra's Claim, like all Direct Lender Claims (except as expressly provided in the Plan), has been "forever release[d], waive[d], and discharge[d]" against USACM. Therefore, the Court should disallow Sierra's Claim in its entirety.

/ / /

/ / /

5

### B. USACM Appropriately Exercised its Business Judgment in Not Foreclosing on Non-Performing Loans

Furthermore, in addition to the fact that the Claim was waived and released pursuant to the Plan, USACM has not breached the Loan Servicing Agreements. Sierra asserts that it has been damaged because USACM did not initiate foreclosure proceedings for its Loans. Specifically, Sierra states that USACM "failed to send notices of foreclosure, to commence or pursue foreclosure proceedings, or take such other action as required, thus breaching its duty to Sierra." Sierra erroneously assumes that foreclosure is the only way to service a loan, which is simply not the case.

Sierra's allegation that the Loan Servicing Agreement requires USACM to foreclose on a non-performing loan is inaccurate and contrary to the express language of the Loan Servicing Agreement. Section 2(c)(ii) of the Loan Servicing Agreement states that USACM will take steps necessary to collect payments, including pursuing foreclosure procedures, "as deemed necessary or appropriate by [USACM] *in its business judgment*." (emphasis added). Thus the Loan Servicing Agreement expressly leaves the decision of whether to initiate foreclosure proceedings exclusively to USACM's discretion and to be decided in its "business judgment." Nowhere does the Loan Servicing Agreement require USACM to automatically foreclose on every non-performing loan as Sierra has suggested.

The business judgment rule "is a presumption that in making a business decision the directors of a corporation 'acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'" *Navellier v. Sletten*, 262 F.3d 923, 946 n12 (9th Cir. 2001) (*quoting Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has been applied to bankruptcy proceedings as well with the presumption being that the actions were taken "in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.)*, 476 F.3d 665, 669 (9th Cir. 2007) (adopting the corporate business judgment rule for bankruptcy proceedings).

USACM appropriately exercised its business judgment in choosing to negotiate with the borrowers for the collection of non-performing loans rather than foreclosing on the collateral.

USACM's decision to negotiate rather than foreclose was and is entirely reasonable, and in the best interests of the USACM estate particularly in light of the fact that it appears no negotiations or collection activities took place under USACM's pre-petition management.  Therefore, post-petition USACM has not committed a breach of the Loan Servicing Agreements by deciding not to pursue foreclose proceedings since USACM's actions were conducted based on its business judgment and were reasonable under the circumstances.

### C. Sierra Knew Prior to Acquiring its Interests that the Loans were Non-Performing and that USACM Intended to Transfer the Servicing Obligations

According to Sierra's Exhibit "A," Sierra acquired most of its interests in the Loans after USACM had filed both the Silver Point APA and Compass APA with the Court, and acquired all of its interests in the Loans after USACM had filed the Silver Point APA.  All of the Loans that were included among the assets listed in the Silver Point APA and Compass APA were listed as non-performing.  In addition, by the time Sierra claims it first acquired its interests in the Loans, USACM's post-petition management had already sent out investor statements indicating which loans were non-performing.  Thus Sierra had full knowledge that the Loans were non-performing and that USACM intended to soon transfer the servicing of such loans to Silver Point or a higher bidder in connection with a plan of reorganization.  Sierra knew the problems associated with the Loans when it purchased its interests so it is disingenuous for it to now claim that it has suffered any damage.  By filing its Claim, Sierra is simply trying to get favorable treatment from the Court at the expense of USACM's general unsecured creditors.

### D. Sierra is Either Bound by the Loan Servicing Agreements or it has No Relationship with USACM and Can Assert No Claim

In its Claim, Sierra does not concede that it is a party to the Loan Servicing Agreements related to the non-performing loans at issue.  Sierra has maintained that it is not a party to the Loan Servicing Agreements entered into by the Direct Lender's from whom it purchased its loan interests and has consistently refused to sign new Loan Servicing Agreements with USACM.

Sierra contends that if the Loan Servicing Agreements are not binding on it then USACM owes no contractual obligation to Sierra but does have "fiduciary duties to Sierra in purporting to

act as servicer of the Loans." This allegation is incorrect. If there is no contractual relationship between USACM and Sierra then there is no relationship at all between the two parties and USACM owes Sierra no duty. USACM, as the former loan servicer, had a contractual not a fiduciary relationship with the Direct Lenders, and in any event owed no duty whatsoever to lenders with which it had no contractual relationship. The relationship between Sierra and USACM is either governed by the binding Loan Servicing Agreements or there is no relationship between the parties and Sierra can assert no claim against USACM.

### E. Sierra has Offered No Evidence that it has Suffered any Damage

Sierra argues that its damages arise from a decline in market values on the properties underlying the Loans. Specifically, it speculates without any evidence in support that "[b]ased on general market declines in value and Sierra's knowledge of the specific properties" the value of the properties underlying the non-performing Loans "has declined by at least 25%." Sierra offers no evidence in support of this speculative decline in value. Sierra does not even clarify the time period for which the value of the properties is alleged to have declined so it is impossible to determine if any decrease in value occurred pre- or post-petition. Sierra's use of such vague and unsupported allegations clearly does not meet the burden placed on it to prove its administrative expense claim.

Sierra has claimed further damage based solely on its belief that USACM "will seek to recover from any sale proceeds an amount equal to the default interest that the borrower would have been obligated to pay under the terms of the loan had the borrower made payments as required." The Loan Servicing Agreements and other loan documents speak for themselves in this regard. The servicer of the Loans, which is not USACM after the Effective Date, is bound to comply with the provisions of the loan documents and can only collect default interest in accordance with such provisions. By the same token, Sierra, to the extent it is a party to the loan documents, is also bound by the provisions regarding the collection of default interest and cannot seek to absolve itself of its obligations with respect to these provisions through the filing of an administrative expense claim. Thus Sierra's claim that it will be damaged if default interest is collected is without merit since such collection can only occur in accordance with the properly

executed Loan Servicing Agreements and other governing loan documents.

### III. CONCLUSION

For the reasons discussed above, USACM objects to the administrative expense claim filed by Sierra and requests that the Court disallow this claim in its entirety. USACM also requests such other and further relief as is just and proper.

Dated: March 29, 2007

    /s/ Jeanette E. McPherson
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146

and

Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Attorneys for Debtors

919440v6