Jeffrey G. Sloane, Esq. (NSB# 784)
Regina M. McConnell, Esq. (NSB# 8029)
Kravitz, Schnitzer, Sloane, Johnson & Eberhardy, Chtd.
1389 Galleria Drive, Suite 200
Henderson NV 89014
Telephone: (702) 362-6666; Facsimile: (702) 362-2203
rmcconnell@kssattorneys.com
jsloane@kssattorneys.com
    and
Richard J. Mason, PC
Patricia K. Smoots
Michael M. Schmahl
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL  60601
Telephone: (312) 849-8100; Facsimile: (312) 849-3690
rjmason@mcguirewoods.com
psmoots@mcguirewoods.com
mschmahl@mcguirewoods.com

*Admitted Pro Hac Vice*

E-FILED ON 3/29/07

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: <br> USA COMMERCIAL MORTGAGE COMPANY, <br>                             Debtor. | Case No. BK-S-06-10725 LBR <br> Case No. BK-S-06-10726 LBR <br> Case No. BK-S-06-10727 LBR |
| In re: <br> USA CAPITAL REALTY ADVISORS, LLC, <br>                             Debtor. | Case No. BK-S-06-10728 LBR <br> Case No. BK-S-06-10729 LBR |
| In re: <br> USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC <br>                             Debtor. | Chapter 11 |
| In re: <br> USA CAPITAL FIRST TRUST DEED FUND, LLC <br>                             Debtor. | **Jointly Administered Under** <br> **Case No. BK-S-06-10725 LBR** |
| In re: <br> USA SECURITIES, LLC, <br>                             Debtor. | |
| Affects: <br> ☐ All Debtors <br> ☐ USA Commercial Mortgage Company <br> ☐ USA Securities, LLC <br> ☐ USA Capital Realty Advisors, LLC <br> ☐ USA Capital Diversified Trust Deed Fund, LLC <br> ☒ USA First Trust Deed Fund, LLC | Date: May 9, 2007 <br> Time: 9:30 A.M. |

**SUR-REPLY OF THE KANTORS TO OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF USA CAPITAL FIRST TRUST DEED FUND, LLC TO CLAIMS SUPERCEDED BY COMPROMISE CONTAINED IN DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION (AS MODIFIED) (AFFECTS DEBTOR USA CAPITAL FIRST TRUST DEED FUND, LLC)**

The Kantors[1], hereby submit this Sur-Reply (the "Sur-Reply") in response to the Reply (the "Reply") **[Docket No. 3006]** of the Official Committee (the "Committee") of Equity Security Holders of USA Capital First Trust Deed Fund, LLC ("FTDF") in Support of Its Omnibus Objection (the "Objection") **[Docket No. 2295]** to Claims Superseded by Compromise Contained in Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (as Modified) (the "Plan"), and, in support thereof, respectfully states as follows:

## I. Introduction

As stated in the Response, prior to the commencement of these bankruptcy cases, the Kantors invested money with the Debtors in these jointly-administered bankruptcy cases, including substantial amounts in the USA Capital Diversified Trust Deed Fund, LLC (the "DTDF").[2] The Kantors filed timely proofs of claim against the FTDF based on the common law torts of fraud and conspiracy and a statutory action for consumer fraud (pursuant to N.R.S. 41.600(2)(c)) seeking unliquidated damages against the FTDF estate to compensate each of the Kantors for injuries suffered by the actions, representations, and omissions of FTDF and the other Debtors. The claims are asserted directly against the FTDF and are not derived by, from, through, or under any entity.

The disputes presently before the Court are confused by the fact that the Committee appears to have initially ignored the substance of the Kantor Claims and mischaracterizes the Kantor Claims as "Compromised Claims." As such, the Committee asserted, without citing any authority, that the Kantor Claims were somehow precluded by the Intercompany Compromise contained in the Plan and should be disallowed.

---

[1] Unless otherwise defined herein, all defined terms are used as they were defined in the Kantors' Response (the "Response") to the Omnibus Objection **[Docket No. 2841]** filed on February 20, 2007.
[2] References to the Kantors' investments are not intended to suggest that the Kantors own any investment as a group. In fact, each of the Kantors owns his/her/its investments independently.

In its Reply, the Committee acknowledges that "it assumed that the Kantor Claims were based, in substance, upon the argument for recharacterization that has been developed" by various other parties in these jointly-administered bankruptcy cases. *Reply* at p. 5. The Committee then seems to suggest that the Committee was somehow misled as to the nature of the Kantor Claims and goes on to state that the Kantors "now expressly disclaim" that the Kantor Claims are based on any recharacterization theory and "have clarified" that the Kantor Claims allege direct causes of action against the FTDF. *Id.* The Kantors have never previously asserted the so-called "recharacterization" argument and have never attempted to characterize the Kantor Claims as anything other than what they are — direct claims against the FTDF based on fraud, conspiracy to commit fraud, and consumer fraud.

Further complicating this proceeding is the fact that the Committee improperly raised two additional objections for the first time in its Reply. Acknowledging that these arguments were not properly raised, the Court requested that the Kantors prepare and file this Sur-Reply and continued the hearing on the Objection until May 9, 2007.[3] The Kantors appreciate the opportunity to respond to these arguments, particularly in light of the fact that Committee failed to cite any statutory authority or case law in support of its Objection until the Reply. However, the Kantors have been prejudiced by the manner in which the Committee has raised these arguments and have been compelled to incur additional legal fees and expenses to prepare for oral argument on March 15, 2007, to travel from Chicago for the hearing on March 15, 2007, and to prepare two written responses to the Objection and the Reply.

---

[3] On March 15, 2007, the hearing on the Objection was originally continued to April 26, 2007, and then subsequently re-scheduled for May 9, 2007.

In total, the Committee now argues that the Kantor Claims should be disallowed: (i) as having been precluded by the Intercompany Compromise contained in the Plan; (ii) because, in the Committee's view, the Kantors have not satisfied the requirements of Federal Rule of Civil Procedure 9(b)[4] or propounded any evidence in support of the Kantor Claims; and (iii) as subordinated claims pursuant to section 510(b) of the Bankruptcy Code. As will be shown below, the Committee's objections are overstated at best and fail in every instance. Thus, the Court should overrule the Objection and allow the Kantor Claims in full.

## II. The Kantor Claims Are Not Precluded By the Intercompany Compromise.

The Committee's baseless vitriol and apparent amazement notwithstanding[5], the Kantor Claims are not based on "buyer's remorse" and are not attempts to recover investment losses or any injury to the DTDF. As the Kantors have shown in their Response, the Kantor Claims have been asserted against the FTDF to recover damages based on the FTDF's role in the alleged fraudulent conspiracy that defrauded the Kantors, collectively, of several millions of dollars.

The Committee's argument simply fails to address the fact the that the Kantors each suffered an individual injury as a result of this fraudulent scheme that is separate and apart from the any injury that may have been suffered by the DTDF or any other equity holder in the DTDF. The Committee's reliance on *Henderson v. Buchanan (In re Western World Funding, Inc.)*, 52 B.R. 743, 774-775 (Bankr. D. Nev. 1985), clearly illustrates this point. Although that case involved a breach of fiduciary duty action

---

[4] For ease of reference, all further references to specific Federal Rules of Civil Procedure will be made to Fed. R. Civ. P. ___. Similarly, all references to specific Federal Rules of Bankruptcy Procedure will be made to Fed. R. Bankr. P. ____.

[5] Furthermore, the fact that the Kantors voted in favor of the Plan is irrelevant. As discussed in the Response, the Plan does not contain any compromise, release, or other impediment relating to any claims individual equity holders in the DTDF may have against the FTDF. Therefore, the Kantors support for the Plan, which left these direct claims unaffected, cannot now be construed to have been a release or waiver of such claims.

initiated by a trustee, the court expressly acknowledged the existence of direct claims of individuals that may be pursued independently of any derivative action. *See id.*, 52 B.R. at 774-775. The fact that the breach of fiduciary duty involved in that case was an injury to the corporation and not a direct injury to any one or more of the shareholders is irrelevant. As stated by the *Western World Funding* court, the "dividing line" between personal claims and derivative claims is:

> whether the cause of action is one which is purely personal, in which no other claimant or creditor of the corporation has an interest, or whether the cause of action is one in favor of creditors in general, which may be availed by "any" one creditor either suing alone (as it is sometime held he may) or as a representative of all the creditors. **In the one case the only liability is to the particular person injured, who may or may not be a creditor of the corporation, as in the case of an action for deceit**, while in the other case the liability is to all creditors of the corporation without regard as to any personal dealings between such officers and such creditors.
> *Id.* at 774-775 (emphasis supplied).

The Kantor Claims are based solely on the injury suffered by each of the Kantors as victims of the fraudulent conspiracy in which the FTDF was one of the conspirators. The Kantors have not asserted derivative actions on behalf of the DTDF and are not attempting to recover for any injury suffered by the DTDF, the DTDF's assets, or any other DTDF members. As pointed out in the Kantors' Response, the fact that the DTDF may have a separate cause of action for the same or similar wrong is simply irrelevant. *See Sutter v. General Petroleum Corporation*, 170 P.2d 898, 901 (Cal. 1946) ("[A] stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong.")[6].

The other authorities cited by the Committee in its Reply also support the Kantors' position. Each of those courts specifically recognized the right to independently

---

[6] The Committee failed to address either the *Sutter* case or *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), in its Reply.

assert direct claims, such as the Kantor Claims, to recover for injuries suffered personally by individual shareholders. *See Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 732 (Nev. 2003) ("Because a derivative claim is brought on behalf of the corporation, a former shareholder does not have standing to assert a derivative claim. A former shareholder does, however, have standing to seek relief for direct injuries that are independent of any injury suffered by the corporation."); *Federal Land Bank of Spokane v. Stiles*, 700 F. Supp. 1060, 1066 (D. Mont. 1988), *quoting Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987) ("Applying Montana law, the Ninth Circuit recently held that '[a] direct action can be brought either when there is a special duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and district from that suffered by other shareholders.'").

To the extent that any of these cases may support the Committee's argument, if any, they are easily distinguishable from the present dispute, because none of these cases involve direct actions based on fraud or conspiracy. *See Western World Funding*, 52 B.R. 743 (involving a claim for breach of fiduciary duty owed to corporation but specifically noting that actions involving deceit are likely to be direct claims); *Cohen*, 62 P.3d 720 (breach of fiduciary duty owed to corporation); and *Stiles*, 700 F. Supp. 1060 (breach of fiduciary duty owed to corporation to recover devaluation of stock value).

Having been unwilling or unable to negotiate a waiver or release of direct fraud and conspiracy claims held by the Kantors or any other individual DTDF members through the Plan confirmation process, the Committee cannot now be permitted to recharacterize these direct claims as derivative actions covered by the Intercompany Compromise.

### III. Kantor Claims Are Valid Proofs of Claim.

The Committee's first new objection raised in the Reply is that the Kantor Claims should be disallowed, because, in the Committee's view, the Kantors have not pled their claims with adequate particularity and have not, as of yet, provided any evidentiary support for these claims. This new objection misunderstands the nature of the claims administration process established in the Bankruptcy Code and fails to establish a basis to disallow the Kantor Claims.

The Kantor Claims are valid proofs of claim under Fed. R. of Bankr. P. 3001. *See* Fed. R. Bankr. P. 3001(a) (providing that a valid proof of claim need only be a written statement setting forth a creditor's claim in a manner conforming to the official proof of claim form). As properly executed and filed proofs of claim the Kantor Claims themselves "constitute *prima facie* evidence of the validity and amount" of the Kantor Claims, Fed. R. Bankr. P. 3001(f), which are presumptively valid. *See* 11 U.S.C. § 502(a); *U.S. v. Offord Finance, Inc. (In re Medina)*, 205 B.R. 216, 222 (9th Cir. B.A.P. 1996). Moreover, the Committee has not alleged that the Kantors have failed to properly alleged actions for fraud and conspiracy under applicable Nevada law.

The Committee now bears the initial burden of presenting evidence to overcome the *prima facie* validity of the Kantor Claims. *See id., In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) ("[T]he allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish a claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves."). The burden of proof will shift back to the Kantors only if the Committee comes forward with evidence sufficient to demonstrate a true dispute with the averments in the Kantor Claims. *See In re*

*Sendmygift.com, Inc.*, 280 B.R. 667, 674 (Bankr. D. Minn. 2002); *In re Wells*, 51 B.R. 563 (D. Colo. 1985); *Matter of Unimet Corp.*, 74 B.R. 156 (Bankr. N.D. Ohio 1987). Unlike the debtor in *Hilton v. Hongisto (In re Hongisto)*, 293 B.R. 45 (Bankr. N.D. Cal. 2003)[7], cited in the Reply, the Committee has neither answered the allegations in the Kantor Claims nor provided any evidentiary basis suggesting the existence of a factual dispute.

The Committee further argues, unconvincingly, that the Kantor Claims should be disallowed, because, in the Committee's assessment, the Kantor Claims do not satisfied the standards of Fed. R. Civ. P. 9(b). Tellingly, the Committee has failed to provide any authority suggesting that Fed. R. Civ. P. 9(b), which is not incorporated by Fed. R. Bankr. P. 3001, is applicable in determining the *prima facie* validity of proofs of claim.

In fact, the *Sendmygift.com* court held that mere "terse" statements referencing fraud are sufficient to establish a valid proof of claim. *See In re Sendmygift.com, Inc.*, 280 B.R. at 674 ("Here the [claimants] staked out their position in fact and law by filing proofs of claim with certain averments-that they were defrauded in the purchase of their equity shareholding in the debtor and had a right to their money back. The averments on the proofs of claim were just that terse, but under the rule and case law this was enough to meet their initial burden. It established them as holders of claims against the estate. If the Debtor wishes to avoid that result . . . it must shoulder its burden of production, and must muster evidence going to the elements of fraud and loss that underlie the claims."). The allegations of fraud and conspiracy in the Kantor Claims greatly exceed mere terse statements and are valid proofs of claim.

---

[7] *Hongisto* is entirely distinguishable from the case at bar. That case merely stands for the proposition that if a creditor fails to adequately state a claim in its proof of claim, then the creditor bears the initial burden of proof **at trial**. *See* 293 B.R. at 51. The debtor in that case filed an answer to the proof of claim, the parties conducted discovery, and the court disallowed the proof of claim after a trial in which the creditor failed to put on **any** evidence. This case is not at all analogous to the case presently before the Court and certainly does not provide any basis for disallowing the Kantor Claims at this early juncture.

The Committee's reliance on *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), is entirely misplaced. This case is readily distinguishable, because it involved litigation outside of the bankruptcy context, did not construe Fed. R. Bankr. P. 3001, and did not purport to establish any standards applicable to evaluating proofs of claim. More importantly, the Ninth Circuit held in *Swartz* that the dismissal of the plaintiff's complaint was without prejudice and that the plaintiff was entitled to amend the complaint to make additional allegations to cure any defects. *See id.*, 476 F.3d at 765 ("[A]lthough the lack of specificity in Swartz' allegations of fraud provides an independent reason . . . to affirm [the district court's] dismissal, of Swartz' fraud claims, that dismissal would necessarily be without prejudice."). Therefore, even if *Swartz* did apply to the Kantor Claims, this case mandates that the Kantors be permitted to amend the Kantor Claims and does not provide any basis on which to disallow them.[8]

Moreover, the wholesale disallowance of proofs of claim on the technical basis proposed by the Committee is entirely inappropriate in the bankruptcy context and in these bankruptcy cases in particular. Much like other parties in interest in these bankruptcy cases, the Kantors did not become aware of the massive fraud perpetrated by the Debtors until at or about the time these cases were commenced. Under Nevada law, the Kantors normally would have had a three-year window to investigate and initiate the causes of action alleged in the Kantor Claims. *See* N.R.S. 11.190(3). However, due to the applicable claims bar date, the Kantors were compelled to prepare and file the Kantor Claims on or before November 13, 2006, a mere seven months after discovering the underlying fraudulent conduct and conspiracy. *See* Order Setting Deadline for Filing Proofs of Claim and Proofs of Interest (Affects All Debtors) [Docket No. 1280]. To

---

[8] Furthermore, the Ninth Circuit also has "a long-established liberal policy toward amendment of proofs of claim." *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurant, Inc.)*, 754 F.2d 811, 816 (9th Cir. 1985); *see also In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993).

disallow the Kantor Claims for failing to meet the requirements of Fed. R. Civ. P. 9(b) would be particularly unjust under these circumstances.

If the Committee contests the substance of the Kantor Claims, the Committee should have filed an answer and shifted the burden of proof back to the Kantors. As a contested proceeding under Fed. R. Bankr. P. 9014, the Kantors would be entitled to conduct discovery and could then amend the Kantor Claims if necessary or appropriate.

### IV. The Kantor Claims Are Not Precluded Under Section 510(b).

The second new yet misguided argument raised by the Committee in the Reply is that the Kantor Claims are precluded by the subordination provisions of section 510(b) of the Bankruptcy Code. This argument necessarily fails, because the FTDF and the DTDF are not "affiliates" within the meaning of the Bankruptcy Code. Additionally, assuming that the Kantor Claims are subordinated, the plain language of section 510(b) fails to effect a meaningful distribution in this instance.

#### 1. FTDF and DTDF are not affiliates.

Although not stated in the Reply, the Committee appears to base its section 510(b) argument on the mistaken presumption that the FTDF and the DTDF are affiliates.[9] Section 510(b) provides in relevant part that:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor **or of an affiliate of the debtor**, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . .
> 11 U.S.C. § 510(b) (emphasis supplied).

---

[9] Although the Committee never expressly states this in the Reply, it has highlighted the provision addressing affiliates in that section. Moreover, since the Kantor Claims were filed against the FTDF, it would seem that this presumption is necessary to support the Committee's argument. To the extent that the Committee relies on some other basis for asserting its 510(b) argument, the Kantors reserve all of their rights to amend and supplement their arguments accordingly.

In the context of the present dispute, the term affiliate is defined in section 101(2)(B)[10], which provides in pertinent part that:

> (2) The term "affiliate" means—
> (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .

11 U.S.C. § 101(2)(B).

The plain language of this statute requires either that (i) the FTDF directly or indirectly own at least a twenty percent equity interest in the DTDF; or (ii) there is an entity that directly or indirectly owns at least a twenty percent stake in both the FTDF and the the DTDF. The Committee has not provided any evidence that either of these circumstances exist[11] and, thus, has not provided any basis pursuant to which the Court can conclude the FTDF and the DTDF are affiliates within the meaning of section 101(2)(B).

The Kantors acknowledge that both the FTDF and the DTDF are limited liability companies that shared the same manager, USA Capital Realty Advisors, LLC.[12] *See* Operating Agreement of the DTDF **[Docket No. 1590]** and Operating Agreement of the FTDF **[Docket No. 1591]**. However common management alone is not a basis upon which section 101(2) confers affiliate status. *See Agresti v. EBAR East, Inc. (In re Elephant Bar Restaurant, Inc.)*, 196 B.R. 747, 751 (Bankr. W.D.Pa. 1996) ("*Elephant*

---

[10] Section 101(2) has a total of four subsections defining the term affiliate. Section 101(2)(A) describes a vertical parent-subsidiary relationship in which a debtor's parent company is an affiliate. Sections 101(2)(C) and 101(2)(D) respectively bestow affiliate relationships between a debtor and its operating company or between a debtor and a company operated by that debtor. None of these provisions is applicable to the more distant, horizontal relationship between the FTDF and the DTDF, which do not have a parent-subsidiary relationship nor are there any leases or operating agreements between these two Debtors.

[11] The Committee has acknowledged that the equity in the FTDF is owned by approximately 950 different members and the equity in the DTDF is owned by approximately 1,900 different individuals. *See Objection* at ¶¶ 13-14.

[12] The Kantors notes that USA Capital Realty Advisors, LLC, the manager of both the DTDF and the FTDF, is wholly owned by USA Investment Partners, a non-debtor.

Bar"); *see also Redmond v. Ellis County Abstract & Title Co. (In re Liberty Livestock Comp.)*, 198 B.R. 365, 371 (Bankr. D. Kan. 1996) (establishing affiliate relationship between two corporations solely on basis that wife was sole stockholder in both companies and ignoring fact that husband was president of both companies).

*Elephant Bar* is directly on point. That case involved a motion by a chapter 7 trustee of the estate of Elephant Bar Restaurant, Inc. ("EBRI"), seeking to transfer the chapter 11 case of EBAR East, Inc. ("EBAR"), as an affiliated debtor. As that court determined the "threshold issue . . . is whether [EBAR] is an affiliate of [EBRI]" within the meaning of sections 101(2)(A) or 101(2)(B). *Id.* at 749. Among other things, the chapter 7 trustee argued that these two companies were affiliates because of: (i) one individual who owned thirty percent of the equity in EBAR and ten percent of the equity in EBRI also held an executive position in both EBRI and a holding company that owned eighty percent of EBRI's remaining equity; or (ii) a separate individual who owned twenty percent of EBAR was also the chief financial officer of EBRI and its holding company. *See id.* at 750-751. In refuting each of these arguments, the court held "as a matter of law, that 'control,' as that term is used in 11 U.S.C. § 101(2), can only be attained by way of equity ownership, either direct or indirect (i[.]e. tiered), and not be mere virtue of an official position." *Id.* at 751.[13]

Absent a showing of a common equity holder owning at least twenty percent of both FTDF and DTDF, the Court cannot conclude that these Debtors are affiliates. As such, section 510(b) has no application to the Kantor Claims.

---

[13] The *Elephant Bar* court further noted that "'[C]ontrol of ... [a] debtor' by virtue of an official position, or essentially operating control of such entity, may be sanctioned as a method by which a relationship as an 'insider' is established." It is important to note that the statutory definition of an insider is broader than that of an affiliate. This definitional difference is not relevant to this dispute as subordination pursuant to section 510(b) does not turn on a creditor's status as an insider.

**2. Plain meaning of section 510(b) renders the consequence of subordination meaningless in this instance.**

Even if the FTDF and the DTDF were affiliates, the Committee's subordination argument has absolutely no practical effect. By its own terms, section 510(b) only subordinates claims for damages arising from the purchase or sale of a security of an affiliate of the debtor "to all claims or interests that are senior to or equal the claim or interest represented by such security." 11 U.S.C. § 510(b). Since the Kantor Claims are related to a purchase or sale of membership interests in the DTDF, these claims would only be subordinated to the distributions from the FTDF estate that are senior or equal to claims "represented by" membership interests in the DTDF. In this instance, all claims related to the purchase or sale of equity interests in the DTDF would, like the Kantor Claims, be general unsecured claims. Therefore, at most, the Kantor Claims would be subordinated to other unsecured claims but would still receive a distribution before the equity holders in the FTDF.

///

///

///

///

///

///

///

///

///

///

///

## V. Conclusion

For the reasons set forth herein, the Kantors respectfully request that the Court enter overruling the Objection, allowing the Kantor Claims in full, and granting such other and further relief as the Court determines is just or appropriate.

DATED this 29th day of March, 2007

Respectfully submitted:

*Regina M. McConnell*

Jeffrey G. Sloane, Esq. (NSB# 784)
Regina M. McConnell, Esq. (NSB# 8029)
Kravitz, Schnitzer, Sloane, Johnson & Eberhardy, Chtd.
1389 Galleria Drive, Suite 200
Henderson NV 89014
Telephone: (702) 362-6666; Facsimile: (702) 362-2203
rmcconnell@kssattorneys.com
jsloane@kssattorneys.com
    and
Richard J. Mason, PC
Patricia K. Smoots
Michael M. Schmahl
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8100; Facsimile: (312) 849-3690
rjmason@mcguirewoods.com
psmoots@mcguirewoods.com
mschmahl@mcguirewoods.com

*Admitted Pro Hac Vic*