**LEWIS AND ROCA LLP**
**LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 4/2/07

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| In re: | Case No. BK-S-06-10725-LBR |
|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Jointly Administered Under Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | **JOINDER AND SUPPLEMENT TO OBJECTION TO ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND** |
| USA SECURITIES, LLC,                Debtors. | |

**Affects:**
× All Debtors
¨ USA Commercial Mortgage Company
¨ USA Capital Realty Advisors, LLC
¨ USA Capital Diversified Trust Deed Fund, LLC
¨ USA Capital First Trust Deed Fund, LLC
¨ USA Securities, LLC

The USACM Liquidating Trust ("USACM Trust") joins and supplements the objection to the administrative expense claim filed by Sierra Liquidity Fund, L.L.C. [Dkt. 3088] ("Sierra" and "Sierra Claim") filed by the Debtor, pursuant to its post-Effective Date authority under the Order Granting Second Joint Motion for Order for

1

1823105.1

Implementation of Confirmed Plan [Dkt. 2987, 3309]. This response is explained in the following Memorandum and is supported by the Court's record in the administrative file and in the adversary proceedings described below.

## Background

Sierra requests an expense of administration for the losses allegedly suffered by the persons from whom it bought interests in Direct Loans. Sierra makes no showing of any contact, much less contract, with USA Commercial Mortgage Company ("USACM") as debtor in possession.

The loans at issue in the Sierra Claim are: 3685 San Fernando Road, Binford Medical, Brookmere, Hesperia II, Margarita Annex, Oak Shores II, Placer Vineyards, and Marquis Hotel. Sierra implies that (1) the failure to collect each loan in full is due to USACM's unjustified decision to not collect the loan, (2) the loans, when collected, will involve a deficiency of at least 25% of the value of the loan, and (3) such a deficiency is the result of a 25% decline in market value during the pendency of the bankruptcy cases, all assumptions that are not supported by any fact in the record. To the contrary, and by way of example only:

- Rather than suffer a foreclosure sale, Binford Medical sued all Direct Lenders alleging pre-petition breach of contract and demanding that no foreclosure be allowed, Adv. No. 06-10725-lbr;

- The Placer Vineyards loan is the subject of a motion filed with this Court where information supplied by the parties suggests that the first loan is fully secured; and

- Marquis Hotel, owed by USA Investors, VI, is the subject of an involuntary bankruptcy petition filed in this Court, No. 06-13925-lbr, causing an automatic stay under 11 U.S.C. § 362(a), where the Court has appointed an interim trustee to administer the

2

1823105.1

LEWIS AND ROCA LLP
LAWYERS

estate.[1]  Notably, the evidence in the record suggests that there is equity in the alleged debtor's property that adequately protects the direct lenders' interest.

Sierra's rights against USACM arise under Loan Servicing Agreement(s) where Sierra purchased the loans.  None of the LSAs were assumed in this case as executory contracts under 11 U.S.C. § 365(a).

## Argument

### I.   The Sierra Claim Is Not Based on a Transaction with USACM

Courts have held that a party claiming administrative expense priority must prove (1) that the debt arose from a transaction with the debtor-in-possession or gave consideration to the debtor and (2) that the transaction directly and substantially benefited the estate.[2]

The USACM Trust understands that Sierra is a claims trader that bought interests in non-performing loans post-petition, and even after the motion to sell USACM's servicing rights that spelled out the loans' non-performing status.  The Trust further understands that Sierra refused to enter into a Loan Servicing Agreement ("LSA").  It appears that Sierra did not want to transact business with USACM, but only to take advantage of a potential increase in value of its loan interests over the price it paid for them, and perhaps a potential litigation opportunity as well.  Indeed, the Sierra Claim and James Riley affidavit supporting the Sierra Claim recite information and belief about typical LSA language.[3]

---

[1] This estate may also be subject to the terms of the Temporary Restraining Order issues by the Central District of California, Riverside Division, District Court in the *Russell v. USA Investment Partners* Receivership action, Case No. EDCV07-0343 SGL (JCRx).

[2] *In re BCE West. L.P.*, 319 F.3d 1166 (9th Cir. 2003); *Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (claimant must establish a prima facie case by showing that: (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern); *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) (the purpose of administrative expenses is to facilitate reorganization by engaging third parties "who might be reluctant to deal with a debtor-in-possession").

[3] Sierra Claim ¶ 6; Riley affidavit [Dkt. 3090] ¶ 5.

3

1823105.1

LEWIS
AND
ROCA
LLP
LAWYERS

Sierra apparently was not assigned any rights under any LSA by its Direct Lender assignors.

The point of administrative expense claim status is to enable a bankruptcy estate to induce creditors into entering into transactions post-petition, and encourage third parties to supply the debtor with goods and services.[4] Sierra's acquisition of interests in loans, without committing to a LSA, is not a transaction with the USACM bankruptcy estate as required for an administrative expense claim.

## II. Sierra Did Not Provide an Actual, Necessary Benefit to the USACM Estate

Sierra also has not met the test of proving that it provided an actual, necessary benefit to the USACM bankruptcy estate. It certainly has not provided any goods or services to the estate. In cases where administrative expense claims are based on an award of damages, it was clear that the estate benefited by not having to come out of pocket on costs it was obligated to incur, such as where a creditor brought an administrative expense claim for the damage to vehicles it leased from the claimant.

An administrative claim based on a claimed loss has to be on par with the benefit incurred by the estate, not simply with what the claimant calculates as its loss.[5] Courts

---

[4] *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr.S.D.N.Y. 2002) ("considering inducement by the debtor-in-possession to be a *crucial element* comports with the policy reason for allowing the priority, which is to encourage third parties to supply the debtor in possession with goods and services the goal of achieving reorganization to benefit all creditors"); *In re Gasel Transportation Lines, Inc.*, 326 B.R. 683, 687 (6th Cir. BAP 2005) ("in determining whether there was a transaction with the bankruptcy estate, the proper focus is on the inducement involved in causing the creditor to part with its goods or services") (internal quotations and citations omitted); *Globe Metallurgical, Inc.*, 312 B.R. 34, 40 (Bankr. S.D.N.Y. 2004) ("a creditor provides consideration to the bankrupt estate *only when the debtor-in-possession* induces the creditor's performance").

[5] *See e.g., In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976) (creditor administrative expense claim will only be afforded priority to the extent the estate benefited from the consideration supporting the claim); *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991) (punitive damages claim filed by company which had agreed to service debtor's oil wells, for debtor's alleged fraud in providing creditor with designs to increase wells' production, could not be allowed as "administrative expense," as allowance of claim would confer no possible benefit on bankruptcy estate.").

1823105.1

essentially look to whether the estate was unjustly enriched.[6] Thus, the administrative expense "should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement."[7]

Sierra has not proved any gain on the part of USACM from whatever relationship Sierra thinks USACM has with Sierra. Certainly, USACM did not benefit from the loss in value of various properties that Sierra alleges. Paying Sierra's alleged losses as an administrative expense would harm the USACM estate and its successor the USACM Trust to the detriment of all the other remaining creditors, and run counter to the policies behind the priority provisions.

The USACM Trust acknowledges a line of cases based on a 1968 interpretation of Section 64 of the Bankruptcy Act, which held that tort claimants injured in a fire negligently started by the receivership could collect their tort damages as an administrative expense. The court stated that "actual and necessary costs' should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible."[8] The Ninth Circuit has, in dicta, assumed that *Reading* applies to

---

[6] *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr.S.D.N.Y. 2002) ("the focus on allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss…thus, a court looks to the actual benefit to the estate not the loss sustained by a creditor").

[7] *In re United Trucking Service Inc.*, 851 F.2d 159, 162 (6th Cir. 1988) (claim for damage to vehicle leased to debtor: estate benefited by not having to repair the vehicles); In re National Steel Corp., 316 B.R. 287 (Bank.N.D.Ill. 2004) (claims "are to be measured by the benefit received by the estate rather than the costs incurred by a claimant"). The court in *National Steel* rejected an administrative expense claim where the creditor alleged damages stemming from the trustee's refusal to sell steel at the contract price, where the court found the estate did not benefit given that the price was still below market. Moreover, the court found that the creditor was seeking its costs and expenses incurred in as a result of the alleged breach by the debtor, which were not actually necessary to preserving the estate. *Id.* at 301. See In re Stoecker, 128 B.R. 205 (Bankr.N.D.Ill. 1991) ("in order to qualify as "actual" and "necessary" administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant."); In re Subscription Television of Greater Atlanta, 789 F.2d 1530, 1532 (11th Cir. 1986) ("To accord a creditor holding an executory contract an administrative priority for every claim arising thereunder during the sixty-day section 365(d)(1) period would produce a strained and unintended construction of [§ 503].")

[8] Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

1823105.1

LEWIS AND ROCA LLP LAWYERS

Bankruptcy Code cases and that post-petition torts and contract breaches within the scope of *Reading* would give rise to an administrative expense.[9] Sierra has not proved either a tort or a breach of contract, and certainly has not proved the damages element of any such cause of action, as set forth below.

### III.  At Most, Sierra Has A Pre-petition Unsecured Claim That Is Barred.

Because Sierra has not met the standard for administrative expense treatment, it has an unsecured claim that is time barred by this Court's proof of claim bar date as well as the Plan provisions described by USACM in its response and the Plan injunction. As this Court is well-aware, the deadline to file unsecured claim was November 13, 2006 for general unsecured creditors [Dkt. 1280]. Creditors who failed to timely file a proof of claim were explicitly warned as follows:

> ANY HOLDER OF A CLAIM THAT IS NOT EXCEPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS DESCRIBED IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR SUCCESSORS, THEIR CHAPTER 11 ESTATES AND THEIR RESPECTIVE PROPERTY OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIM, FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM OR RECEIVING FURTHER NOTICES REGARDING SUCH CLAIM.

[Dkt. 1358]. By special order of the court, Direct Lenders – who received the same notice as all creditors – were given a deadline of January 13, 2007, but the consequences for filing an untimely claim were the same [Dkt. 1358 and 1728].

---

[9] *See e.g., In re Dennis Ponte. Inc.,* 61 B.R. 296 (9th Cir. BAP 1986); *Diners Club, Inc. v. Bumb*, 421 F.2d 396 (9th Cir.1970).

1823105.1

Not only does the proof of claim bar date forever bar Sierra's claim, but USACM's third amended plan of reorganization, confirmed on January 8, 2007 [Dkt. 2376], discharges USACM from Sierra's untimely claim. The plan provides:

> This Plan provides for an injunction of certain actions against the Debtors. Holders of Claims against and Equity Interest in the Debtors may not pursue (1) property of the Estates other than through the Claims and Equity Interest allowance process; or (2) the Debtors or their agents.

[Dkt. 1799]. A critical part of the "allowance process" is the claims bar date, which Sierra and its assignor missed. Thus, its claim has been discharged by the Plan.

### IV. Sierra Has Not Proved its Damages Claim; The USACM Trust and its Constituents Should Not Be Adversely Affected

If Sierra is held to have met the standard for administrative expense treatment, it still must meet its burden of providing the Court with real evidence of damages. The Bankruptcy Code provides that only "actual" costs are entitled to priority.[10] Sierra's "information and belief" affidavit about what USACM's post-petition management may have done by a person whose expertise lies in claims trading, not real estate appraisal, asserts speculative damage claims at best.[11]

It is also not clear what damages precisely Sierra is claiming. Certainly, only those damages that actually occurred post-petition could possibly be collected as administrative expenses. Thus, to the extent that any portion of the 25% in lost value Sierra Liquidity claims occurred pre-petition (or pre assignment) those damages are not given priority.[12]

---

[10] 11 U.S.C. § 503(b)(1). *See e.g., In re Midway Airlines, Inc.*, 221 B.R. 411 (Bankr. N.D.Ill. 1998) ("An administrative claimant does not meet its burden of proof where the proof of claim is supported by estimates and where accurate documentation relating to the proof of claim is not before the court").

[11] Riley Affidavit ¶ 2 (manager of company that trades in distressed trade claims and securities; also the president over a decade ago of apartment, home and land entitlement developer).

[12] *United Trucking Service*. 851 F.2d at 161-164 ("only those debts arising after the filing of the bankruptcy petition may be afforded administrative expense status").

7

There is no competent evidence of a 25% decline in value, or that the value of the collateral was equal to the amount of the debt as of the petition date. There is no proof that if foreclosure proceedings had been commenced when Sierra contends that should have happened, it would not have been met with delay due to litigation, borrower bankruptcy filings, or other factors. To the contrary, Binford Medical pre-empted USACM with affirmative litigation to restrain any enforcement action. USA Investors, VI is an alleged debtor in an involuntary bankruptcy case, protected by the automatic stay.

The USACM Trust relies on counsel for USACM and the Debtor's CRO to show Sierra's lack of a compensable damages claim, in more detail. The USACM Trust notes that losses from a decline in real estate values are not costs ordinarily incident to operation of a loan servicing business. That business is conducted pursuant to written LSAs. They provide that if USACM fails to act, the "Rights of Lender" are to join with others constituting 51% of the lenders on the applicable loan and replace USACM as servicing agent.

Sierra contends that it is damaged because it believes USACM under the CRO's administration deliberately delayed seeking foreclosure of liens in order to generate default interest, which it claims USACM could not collect upon a foreclosure. The USACM Trust believes that speculative damages assertions cannot justify an administrative expense claim. Sierra likewise has offered no support for its theory that lenders are entitled to all default interest upon a foreclosure sale. The USACM Trust understands that compensation of mortgage servicing agents through their retention of default interest and late charges is a typical industry provision. The servicing agent holds vested rights to accrued servicing fees and default interest when a foreclosure sale takes place. Those funds are paid by the borrower directly if it reinstates, or by the purchaser at the foreclosure sale effectively paying money for the borrower to satisfy its debt as the borrower's assignee in title. If the property is accepted by the foreclosing lender under a

credit bid, it is the borrower's value in the property that satisfies the borrower's obligation, and is obtained by the lender from the borrower – effectively paying in land instead of in cash.

All in all, Sierra has not met its burden of establishing an administrative expense claim, legally or factually, for the reasons set forth here and in the USACM opposition. Its administrative expense claim motion should be denied.

DATED: April 2, 2007

**LEWIS AND ROCA LLP**

By: /s/ RC (#6593)
Susan M. Freeman, AZ 4199 (*pro hac vice*)
Rob Charles, NV 6593
*Counsel for USACM Liquidating Trust*

Copy of the foregoing served on April 2, 2007, via email where an email address is listed, and if no email address is listed, then by first class U.S. Mail, postage paid, addressed to:

David T. Cohen, Esq.
Alexandra P. Olenczuk, Esq.
WARNER STEVENS, LLP
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
mwarner@warnerstevens.com

Michelle L. Abrams, Ltd.
3085 S. Jones Blvd., Ste. C
Las Vegas, NV 89146
mabrams@mabramslaw.com

Annette W. Jarvis
Steven C. Strong
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
PO Box 45385
Salt Lake City, UT 84145-0385
ajarvis@rqn.com
sstrong@rqn.com

1823105.1

**LEWIS AND ROCA LLP**
LAWYERS

1
2  Lenard E. Schwartzer
   Jeanette E. McPherson
3  SCHWARTZER & MCPHERSON LAW FIRM
   2850 S. Jones Blvd., Suite 1
4  Las Vegas, NV 89146-5408
   bkfilings@s-mlaw.com
5  jmcpherson@s-mlaw.com

6
     /s/ Christine E. Laurel
7  Christine E. Laurel
   Lewis and Roca LLP
8

1823105.1