**EXHIBIT "A"**

**PLAN**

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
    and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

**E-FILED ON NOVEMBER 15, 2006**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |
| | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Confirmation Hearing<br>December 19, 2006<br>10:00 a.m. |

i

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## **TABLE OF CONTENTS**

I. DEFINITIONS AND RULES OF CONSTRUCTION ..........................................2
    A.   DEFINED TERMS. ...............................................................2
    B.   OTHER TERMS. .................................................................21
    C.   PLAN DOCUMENTS SUPPLEMENT. ...............................21
    D.   SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ....................22
    E.   DIRECT LENDER SUPPLEMENT. ...................................22
    F.   EXHIBITS. .........................................................................23

II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........23
    A.   SUMMARY. .......................................................................23
    B.   UNCLASSIFIED CLAIMS. .................................................29
        1.   Administrative Expense Claims For Each Debtor..........29
        2.   Priority Tax Claims. ....................................................31
    C.   CLASSIFIED CLAIMS AND EQUITY INTERESTS. ..........32
        1.   USACM – (Classes A-1 Through A-8). ......................32
        2.   FTDF – (Classes B-1 Through B-5). ..........................35
        3.   DTDF – (Classes C-1 Through C-5). ..........................37
        4.   USA Realty – (Classes D-1 Through D-5)...................39
        5.   USA Securities – (Classes E-1 Through E-5). .............41

III. ACCEPTANCE OR REJECTION OF THE PLAN ................................43
    A.   VOTING CLASSES. ..........................................................43
    B.   VOTING RIGHTS OF HOLDERS OF DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS. .43
    C.   ACCEPTANCE BY IMPAIRED CLASSES. .........................43
    D.   NONCONSENSUAL CONFIRMATION. .............................44

IV. IMPLEMENTATION OF THE PLAN ......................................................45
    A.   GENERAL MEANS OF IMPLEMENTATION. ...................45
    B.   NO SUBSTANTIVE CONSOLIDATION OR RECHARACTERIZATION OF LOANS. .........46
    C.   ASSET SALE TRANSACTION. ..........................................46
    D.   POST-EFFECTIVE DATE ENTITIES. ...............................47
        1.   The USACM Trust. .....................................................47
        2.   Post-Effective Date DTDF. .........................................50
    E.   INTERCOMPANY COMPROMISES. ..................................51
        1.   The USACM/Direct Lender Compromise....................51
        2.   The USACM/FTDF Compromise. ...............................53
        3.   The FTDF/DTDF Compromise. ..................................56
        4.   The FTDF/USA Realty Compromise. ..........................56
        5.   The DTDF/USA Realty Compromise. .........................57
    F.   LOAN DISTRIBUTIONS AND LOAN SERVICING AGREEMENTS.....57
    G.   PRESERVATION OF RIGHTS OF ACTION AND DEFENSES. ......58
    H.   NONDISCHARGE OF DEBTORS AND INJUNCTION.......59

V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................................60
    A.   ASSUMPTION.................................................................................................60
    B.   REJECTION.....................................................................................................62
        1.   General...........................................................................................62
        2.   USACM Management And/Or Operating Agreements........................62
        3.   Claims Bar Date..............................................................................63

VI. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE ................63
    A.   CONDITIONS TO CONFIRMATION. ..................................................................63
    B.   CONDITIONS TO EFFECTIVE DATE. ................................................................64
    C.   WAIVER OF CONDITIONS. .............................................................................64
    D.   FAILURE TO SATISFY CONDITIONS. ...............................................................64

VII. DISTRIBUTION OF CONSIDERATION ....................................................................65
    A.   OBJECTIONS TO CLAIMS. ..............................................................................65
        1.   Deadlines. ......................................................................................65
        2.   Authority........................................................................................65
    B.   DISPUTED CLAIMS AND EQUITY INTERESTS—CASH RESERVES. ......................66
        1.   General...........................................................................................66
        2.   Establishment Of Cash Reserves.......................................................66
        3.   Estimation.......................................................................................67
        4.   Distribution Upon Allowance............................................................67
        5.   Release Of Cash Reserves.................................................................67
    C.   UNDELIVERABLE OR RETURNED DISTRIBUTIONS. ..........................................68
    D.   DE MINIMIS DISTRIBUTIONS. .......................................................................68
    E.   DISBURSING AGENT.....................................................................................69
        1.   Disbursing Agent For FTDF, USA Realty And USA Securities Estates........69
        2.   Disbursing Agent USACM And DTDF Estates.....................................69
        3.   Bond..............................................................................................70
        4.   Compensation. ................................................................................70
    F.   MANNER OF PAYMENT UNDER THE PLAN. .....................................................70
    G.   DELIVERY OF DISTRIBUTIONS. .....................................................................70
    H.   COMPLIANCE WITH TAX REQUIREMENTS. ......................................................71
    I.   OLD INSTRUMENTS AND SECURITIES; LIENS. ................................................71
        1.   Rights Of Persons Holding Instruments And Securities. .......................71
        2.   Cancellation Of Liens.......................................................................71
    J.   DATES OF DISTRIBUTION. .............................................................................71

VIII. MISCELLANEOUS PROVISIONS ...........................................................................72
    A.   LIMITATION OF LIABILITY AND RELEASES. ...................................................72
        1.   Limitation Of Liability. ....................................................................72
        2.   DTDF/FTDF Releases. .....................................................................72
        3.   FTDF/USACM Releases. ..................................................................74
        4.   Debtor Releasors/Direct Lenders Releases..........................................75
        5.   FTDF/USA Realty Releases. .............................................................76
    C.   NOTICE OF EFFECTIVE DATE. .......................................................................78
    D.   RETENTION OF JURISDICTION. ......................................................................78

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | |
|---|---|---|
| E. | BINDING EFFECT. | 81 |
| F. | AMENDMENT, MODIFICATION AND SEVERABILITY. | 81 |
| G. | EXHIBITS. | 81 |
| H. | NO ADMISSION. | 82 |
| I. | 1146(C) EXEMPTION. | 82 |
| J. | GENERAL AUTHORITY. | 82 |
| K. | DISSOLUTION OF COMMITTEES. | 82 |
| | 1. USACM. | 83 |
| | 2. DTDF. | 83 |
| | 3. FTDF, USA Realty And USA Securities. | 83 |
| M. | BINDING EFFECT. | 83 |
| N. | GOVERNING LAW. | 84 |
| O. | PAYMENT DATES. | 84 |
| P. | HEADINGS. | 84 |
| Q. | NO WAIVER. | 84 |
| R. | OTHER DOCUMENTS AND ACTIONS. | 84 |
| S. | SEVERABILITY OF PLAN PROVISIONS. | 84 |
| T. | POST-CONFIRMATION STATUS REPORT. | 85 |
| U. | FINAL DECREE. | 85 |
| V. | REVOCATION, WITHDRAWAL, CRAM-DOWN OR NON-CONSUMMATION. | 85 |
| W. | NOTICE TO CERTAIN PARTIES. | 86 |

IX. REQUEST FOR CONFIRMATION .......................................................... 88

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## DEBTORS' THIRD AMENDED JOINT
## CHAPTER 11 PLAN OF REORGANIZATION

USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, the Debtors and Debtors in Possession in these jointly administered Chapter 11 Cases, propose the following joint chapter 11 Plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code.

On April 13, 2006, the Debtors commenced their Chapter 11 Cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the Court and that is provided to help you understand the Plan. All Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. The Disclosure Statement for the Plan contains a summary of the Plan and discusses the Debtors' history, businesses, and assets. Reading the summary of the Plan contained in the Disclosure Statement, however, is not a substitute for reading the Plan. As the provisions of the Plan control, all Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to carefully read the Plan. No solicitation materials, other than the Disclosure Statement, the Exhibits attached hereto or thereto or referenced herein or therein, and the related materials transmitted herewith and therewith, have been approved by the Court for use in soliciting acceptances or rejections of the Plan.

1

# I.

## DEFINITIONS AND RULES OF CONSTRUCTION

**A.    Defined Terms.**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined):

1.    **"2% Holdback"** means sums withheld under Paragraph 1.2 of the Modified Order Authorizing Distributions and Holdbacks entered on October 2, 2006 [Docket No. 1424].

2.    **"Acquired Assets"** means the FTDF Assets and the USACM Assets, described as "Assets" in the Asset Purchase Agreement.

3.    **"Adjusted FTDF Base Recovery Percentage"** means the percent recovery that DTDF or the Post-Effective Date DTDF must reach after the adjustment for an annual increase, made on each anniversary of the Effective Date, of an additional $5 million to DTDF's Investment in order to obtain the FTDF Base Recovery Percentage.

4.    **"Administrative Expense Claim"** means any Claim against a Debtor constituting a cost of expense of administration of and in these Chapter 11 Cases incurred on or after the Petition Date of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, (A) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of a Chapter 11 Case; (B) Taxes described in section 503(b)(1)(B) of the Bankruptcy Code; (C) any fees or expenses of Debtors' Professionals or Committee Professionals allowable under sections 330(a) or 331 of the Bankruptcy Code; (D) all Statutory Fees; and (E) Cure Payments.

5.    **"Administrative Expense Claim Bar Date"** means the date(s) as set forth in section B.1.c.i of Art. II of the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

6.    **"Affiliate"** has the meaning ascribed to that term in section 101(2) of the Bankruptcy Code.

7.    **"Allocated Net Sale Proceeds"** means the net sale proceeds generated from the Asset Sale Transaction as allocated between USACM and FTDF in accordance with the Asset Purchase Agreement as may be modified or supplemented by the provisions of section E.2.i of Art. IV of the Plan.

8.    **"Allowed Administrative Expense Claim"** means all or that portion of an Administrative Expense Claim which has been Allowed pursuant to a Final Order.

9.    **"Allowed Claim" or "Allowed . . . Claim"** means any Claim against a Debtor (A) as listed in the Schedules Filed in such Debtor's Chapter 11 Case, provided that the Claim is not listed therein as disputed, contingent or unliquidated; (B) as stated in a proof of Claim which is Filed before the Bar Date applicable to such Claim and as to which no objection to the allowance thereof or a motion to estimate Claim pursuant to section 502(c) of the Bankruptcy Code has been interposed on or before the dates set forth in section A of Art. VII of the Plan; or (C) as allowed by Final Order.   An "Allowed . . . Claim"(i) is the total amount of the Claim less any distribution or payments made by a Debtor to the Holder of the Allowed . . . Claim after the Petition Date pursuant to any order of the Court, including without limitation, the Interim Distribution Orders, and (ii) unless otherwise specified herein or by Final Order of the Court, an Allowed . . . Claim shall not include interest on such Claim accruing after the Petition Date; provided, however, that holders of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured Claims shall receive Postpetition Interest on such Allowed Claims as provided in Art. II of the Plan.

10.    **"Allowed Equity Interest"** means an Equity Interest in a Debtor (A) as designated in List of Equity Security Holders Filed in such Debtor's Chapter 11 Case, including the Lists designated in the "Stipulated Order re Proofs of Interest" entered by the Court in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293], provided that such Equity Interest is not listed as disputed or contingent; (B) as stated in a proof of Equity Interest which is Filed before the expiration of the General Bar Date and to which no objection to the

allowance thereof has been interposed on or before the date set forth in section A of Art. VII of the Plan.  An "Allowed Equity Interest" is the total amount of the Equity Interest less any distribution or payments made by a Debtor to the holder of the Allowed Equity Interest after the Petition Date, pursuant to any order of the Court, including without limitation, the Interim Distribution Orders.

11.    **"Allowed Class . . . Claim" or "Allowed Class . . . Equity Interest"** means an Allowed Claim or Allowed Equity Interest, respectively, classified in the specified Class.

12.    **"Alternative Dispute Resolution Agreement"** means the joint agreement by the Direct Lender Committee and the USACM Committee, which shall set forth the process by which objections to Direct Lender Unsecured Claims may be resolved.  This agreement will be Filed as part of the Direct Lender Supplement and served on all Direct Lenders as set forth in section D of Art. I of the Plan.

13.    **"Asset Purchaser"** means SPCP Group, Inc., or a Third Party Bidder who is selected as the successful bidder as a result of the Auction and who acquires the Acquired Assets pursuant to the Bid Procedures Order and the Plan.

14.    **"Asset Purchase Agreement"** means (A) the Revised First Amended And Restated Asset Purchase Agreement between USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, Filed on November 7, 2006 [Docket No. 1750], and attached hereto as <u>Exhibit A</u>, as the same may be further amended pursuant to the terms of the Agreement, or (B) any substantially similar agreement executed with a Third Party Bidder, if a Third Party Bidder is the Asset Purchaser.

15.    **"Asset Sale Transaction"** means the sale of the Acquired Assets to the Asset Purchaser as set forth in the Asset Purchase Agreement.

16.    **"Auction"** means the auction that will be held pursuant to the Bid Procedures Order and conducted on December 7, 2006, as the same may be continued or rescheduled by the Court, in connection with the Asset Sale Transaction.

17.    **"Avoidance Actions"** means all of the Debtors' and the Estates' rights and Claims under Bankruptcy Code sections 541 through 558, inclusive, whether or not an action is initiated on, before or after the Effective Date.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

18. **"Bankruptcy Code"** means title 11, United States Code (11 U.S.C. § 101 *et seq.*), as in effect on the Petition Date and as amended and effective after the Petition Date and during the Chapter 11 Cases.

19. **"Bankruptcy Rules"** means, collectively, (A) the Federal Rules of Bankruptcy Procedure, as amended from time to time, and (B) the Local Bankruptcy Rules applicable to cases pending before the Court, as now in effect or hereafter amended.

20. **"Bar Date"** means (A) with respect to Administrative Expense Claims, other than Ordinary Course Administrative Expense Claims, the dates set forth in section B.1.c. of Art. II of the Plan; (B) with respect to Claims for damages resulting from the rejection of an executory contract or unexpired lease pursuant to section B of Art. V of the Plan, the date stated in section B.3 of Art. V of the Plan; and (C) with respect to all other Claims against and Equity Interests in a Debtor, the General Bar Date.

21. **"Bid Procedures Order"** means the "Order (A) Scheduling an Auction for the Sale of Certain Assets; (B) Approving SPCP Group, LLC as Lead Bidder; and (C) Approving Bid Procedures and Protections," entered by the Court on November 8, 2006 [Docket No. 1761].

22. **"Borrower"** means the Borrower under any applicable Loan.

23. **"Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

24. **"Bysynergy Loan"** means FTDF's interest in the Loan, dated as of February 3, 2006, made and delivered by BySynergy, LLC, a Delaware limited liability company.

25. **"Cash"** means legal tender of the United States of America, or cash equivalents, including currency and checks or wire transfers of immediately available funds.

26. **"Chapter 11 Cases"** means the above-captioned cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date, and jointly administered under Case No. 06-10725.

27. **"Claim"** has the meaning ascribed to it in section 101 of the Bankruptcy Code.

28. **"Class"** means a group of Claims or Equity Interests classified together in a class designated in Art. II of the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

29. **"Closing"** means the closing of the Asset Sale Transaction as provided in the Asset Purchase Agreement.

30. **"Closing Date"** means the Effective Date.

31. **"Committees"** means collectively the USACM Committee, the DTDF Committee, the FTDF Committee, and the Direct Lender Committee, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

32. **"Committee Professionals"** means all Professionals employed by the Committees in these Chapter 11 Cases.

33. **"Confirmation"** means entry of a Confirmation Order by the Court in accordance with section 1129 of the Bankruptcy Code.

34. **"Confirmation Date"** means the date on which the Clerk of the Court enters the Confirmation Order on the Court's docket.

35. **"Confirmation Hearing"** means the hearing before the Court to consider the confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

36. **"Confirmation Order"** means the order entered by the Court confirming the Plan in accordance with the Bankruptcy Code.

37. **"Court"** means the United States District Court for the District of Nevada, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code; or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or unit thereof that exercises jurisdiction over the Chapter 11 Cases in lieu thereof.

38. **"Cure Payment"** means the amount, if any, that the Debtors must tender on the Effective Date in order to provide compensation in accordance with sections 365(b)(1)(A) and (B) of the Bankruptcy Code to assume an unexpired lease or an executory contract as described in further detail in section A of Art. V of the Plan.

39. **"Debtors"** means, collectively, USACM, USA Securities, USA Realty, DTDF, and FTDF.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

40.    **"Debtors in Possession"** means any or all of the Debtors when acting in the capacity of representatives of their respective Estates in the Chapter 11 Cases.

41.    **"Debtors' Professionals"** means all Professionals employed by the Debtors in these Chapter 11 Cases, including those professionals employed as ordinary course professionals.

42.    **"Direct Lender"** means each Entity who is a beneficiary under a Loan, excluding USACM and the Funds to the extent of their beneficial interests in a Loan.

43.    **"Direct Lender Committee"** means the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

44.    **"Direct Lender Loans"** means Loans in which the Direct Lenders have an ownership interest.

45.    **"Direct Lender Supplement"** means the Loan Servicing Fee Schedule and the Alternative Dispute Resolution Agreement, referred to in section E of Art. I of the Plan, as amended from time to time, and which shall be Filed and served as soon as practicable after Court approval of the Disclosure Statement.

46.    **"Direct Lender Unremitted Principal Claims"** means all General Unsecured Claims or other Claims of Direct Lenders against USACM for Loan payments received prior to the Petition Date by USACM but not paid over to the Direct Lenders in the applicable Loan.

47.    **"Direct Lender Unsecured Claims"** means all General Unsecured Claims (whether under contract, tort or other legal theory against USACM) of Direct Lenders against USACM, excluding Direct Lender Unremitted Principal Claims.

48.    **"Disbursing Agent"** means the Entity or Entities appointed pursuant to section E of Art. VII of the Plan to act in making distributions authorized under the Plan for each of the respective Estates on and after the Effective Date.

49.    **"Disclosure Statement"** means the Disclosure Statement, including any Exhibits attached thereto, Filed by the Debtors in the Chapter 11 Cases on September 15, 2006, as the same is amended, supplemented, or otherwise modified from time to time by any duly authorized amendment or modification.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

50. **"Disputed . . . Claim"** means any Claim against a Debtor which is not an Allowed Claim, including, without limitation, any Claim (A) designated as disputed, contingent, unliquidated or unknown in the Schedules Filed in such Debtor's Chapter 11 Case, (B) to which an objection to the allowance thereof or motion to estimate Claim under section 502(c) of the Bankruptcy Code has been interposed on or before the date set forth in section A of Art. VII of the Plan; (C) which is the subject of one or more causes of action pending against the holder of such Claim; or (D) which is disallowed pursuant to section 502(d) of the Bankruptcy Code or by Final Order.

51. **"Disputed Equity Interest"** means any Equity Interest in a Debtor which is not an Allowed Equity Interest, including, without limitation, any Equity Interest (A) designated as disputed or contingent in the List of Equity Security Holders Filed in a Debtor's Chapter 11 Case, including the Lists designated in the "Stipulated Order Re Proofs of Interest" entered by the Court in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293]; (B) to which an objection to allowance thereof has been interposed on or before the date set forth in section A of Art. VII of the Plan; or (C) which is disallowed by Final Order.

52. **"DTDF"** means USA Capital Diversified Trust Deed Fund, LLC.

53. **"DTDF 85% Recovery"** means a recovery from all sources for DTDF and Post-Effective Date DTDF for all Allowed Class C-5 Equity Interests equal to 85% of the DTDF Investment, net of expenses.

54. **"DTDF Administrator"** means the chief executive officer of Post-Effective Date DTDF, which has the powers and responsibilities set forth in the Plan and the DTDF Amended Operating Agreement, or any successor officer appointed pursuant to the DTDF Amended Operating Agreement.

55. **"DTDF Amended Operating Agreement"** means the DTDF Operating Agreement, as amended, to provide for the wind down, liquidation and dissolution of DTDF pursuant to the implementation of the Plan that will be Filed as part of the Plan Documents Supplement.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

56. **"DTDF Chapter 11 Case"** means the Chapter 11 Case of DTDF, Case No. BK-S-06-10727 LBR.

57. **"DTDF Committee"** means the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

58. **"DTDF Investment"** means the amount that represents the equity investment in DTDF as may be agreed to by the USACM Committee and the DTDF Committee by the date of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided however, that the USACM Committee and DTDF Committee or, after the Effective Date, the Post-Effective Date Entities, may agree at any time as to the amount that represents the equity investment in DTDF without further Court order by Filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the DTDF Committee shall consult with the FTDF Committee and the Direct Lender Committee regarding the amount that represents the equity investment in DTDF.

59. **"DTDF Loans"** means Loans in which DTDF has an ownership interest.

60. **"DTDF Operating Agreement"** means the "Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC" made and entered into effective as of February 10, 2000.

61. **"DTDF Post-Effective Date Committee"** means the oversight committee for Post-Effective Date DTDF.

62. **"DTDF Unremitted Principal Claim"** means the General Unsecured Claim or other Claims of DTDF against USACM for Loan payments received by USACM but not paid to DTDF prior to the Petition Date.

63. **"DTDF Unsecured Claim"** means the General Unsecured Claim of DTDF against USACM, excluding the DTDF Unremitted Principal Claim, allowed in the amount as may be agreed to by the USACM Committee and the DTDF Committee by the date of the commencement of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided, however, that the

9

USACM Committee and the DTDF Committee or, after the Effective Date, the Post-Effective Date Entities, may agree at any time as to the amount that represents the DTDF Unsecured Claim without further Court order by filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the DTDF Committee shall consult with the FTDF Committee and the Direct Lender Committee regarding the issue.

64.    **"Effective Date"** means the first Business Day (A) on which no stay of the Confirmation Order is and remains in effect, and (B) that is at least one (1) Business Day after the date on which the conditions specified in section B of Art. VI of the Plan have been satisfied or waived.

65.    **"Entity"** has the meaning ascribed to this term in section 101(15) of the Bankruptcy Code.

66.    **"Equity Interest"** means the rights of owners of the issued and outstanding shares of any class of stock, membership or other ownership interest in any of the Debtors.

67.    **"Estate"** or **"Estates"** means the bankruptcy estate created for each Debtor in these Chapter 11 Cases pursuant to Bankruptcy Code section 541, or, collectively, the bankruptcy estates created for each of the Debtors, in these Chapter 11 Cases pursuant to Bankruptcy Code section 541.

68.    **"Excluded DTDF Loans"** means DTDF Loans whose Loan Servicing Agreements are not being transferred to the Asset Purchaser as part of the Asset Sale Transaction.

69.    **"File," "Filed," "Files,"** or **"Filing"** means properly and timely filed with the Court in the Chapter 11 Cases, as reflected on the official docket of the Court for the Chapter 11 Cases, and served on Entities, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Court.

70.    **"Final Decree"** means a Final Order of the Court closing the Chapter 11 Cases; provided, however, if a Final Decree is separately entered in one or more of the Debtors' Chapter 11 Cases, the "Final Decree" means a Final Order of the Court closing a particular Chapter 11 Case.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

71.     **"Final Order"** means an order or judgment of the Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors and the Committees or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

72.     **"FTDF"** means USA Capital First Trust Deed Fund, LLC.

73.     **"FTDF Base Recovery Percentage"** means the Pro Rata recovery by holders of Allowed Equity Interests in FTDF based on the ratio of (x) the net recovery to FTDF as calculated by adding (i) all post-Petition Date collections that FTDF received on account of the FTDF Loans prior to the Closing to (ii) the sale proceeds that FTDF receives from the Asset Sale Transaction (including amounts received for any overbid) minus all payments made on account of (i) all Allowed classified and unclassified Claims against the FTDF Estate, (ii) all Allowed Administrative Expense Claims allocated to FTDF, (iii) all post-Effective Date costs and expenses incurred on behalf of either (a) FTDF or (b) the holders of Allowed Equity Interests in FTDF, (iv) any expense reimbursement or break-up fee paid pursuant to the Bid Procedures Order (unless reimbursed pursuant to the overbid process), and (v) the FTDF Payment to DTDF to (y) the FTDF Investment.

74.     **"FTDF Chapter 11 Case"** means the Chapter 11 Case of FTDF, Case No. BK-S-06-10728 LBR.

75.     **"FTDF Committee"** means the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

76.     **"FTDF Investment"** means the amount of $65,179,522.

11

77. **"FTDF Litigation Claims"** means the Litigation Claims in which FTDF has an interest, including without limitation all Non-Debtor Insider Litigation in which FTDF has an interest.

78. **"FTDF Loans"** means Loans in which FTDF has an ownership interest.

79. **"FTDF Payment"** means the payment made by FTDF to DTDF on the Effective Date in the amount of (A) $500,000, and (B) an additional amount of up to $500,000 from 50% of any overbid increment actually paid and allocated to FTDF as part of the Closing of the Asset Sale Transaction, after taking into consideration any break-up fee (including any expense reimbursement) paid by FTDF.

80. **"FTDF Transferred Assets"** means the assets transferred by FTDF to DTDF consisting of the FTDF Payment, the Bysynergy Loan, the FTDF Unremitted Principal Claim, and the proceeds of any non-assignable FTDF Litigation Claims.

81. **"FTDF Unremitted Principal Claim"** means the General Unsecured Claim or other Claims of FTDF against USACM for Loan payments received by USACM but not paid over to FTDF prior to the Petition Date.

82. **"FTDF Unsecured Claim"** means the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM Committee by the date of the commencement of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided however that the USACM Committee and the FTDF Committee or, after the Effective Date, the USACM Trust and FTDF may agree at any time as to the amount that represents the FTDF Unsecured Claim without further Court order by Filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and the Direct Lender Committee regarding the issue.

83. **"FTDF's Debtors' Professionals' Fee/Cost Allocation"** means the allocation to FTDF for the professional fees and costs incurred by the Debtors' Professionals in the Chapter 11

1    Cases of $125,000 per month commencing on the Petition Date and ending on the earlier of: (A)

2    the Effective Date, or (B) January 31, 2007.

3        84.    **"Funds"** means FTDF and DTDF.

4        85.    **"General Bar Date"** means, except as to the Claims of Direct Lenders and

5    Intercompany Claims, November 13, 2006, which is the date established by the "Order Setting

6    Deadline to File Proofs of Claim and Proofs of Interest" entered by the Court in the Chapter 11

7    Cases on September 14, 2006 [Docket No. 1280].  With respect to the Claims of Direct Lenders,

8    "General Bar Date" means January 13, 2007, which is the date established by the "Stipulation and

9    Order to Extend Proof of Claim Bar Date for Direct Lenders Only" entered by the Court in the

10    Chapter 11 Cases on November 6, 2006 [Docket No.1729]. With respect to Intercompany Claims

11    no bar date has been set as the Court has granted the "Debtors' Motion to Exclude Intercompany

12    Claims from the General Bar Date" [Docket No. 1469].

13        86.    **"General Unsecured Claim"** means a Claim against a Debtor arising on or before

14    the Petition Date that is not an Administrative Expense Claim, Priority Tax Claim, Priority

15    Unsecured Claim, Secured Claim, Secured Tax Claim or Subordinated Claim.

16        87.    **"Higher and Better Offer"** means a bona fide offer made in accordance with the

17    Bid Procedures Order.

18        88.    **"Insider"** has the meaning ascribed to this term in section 101(31) of the

19    Bankruptcy Code.  For purposes of this definition, the term "affiliate" in section 101(31)(E) has

20    the meaning ascribed to that term in the Plan, and to the extent not included in the definition of

21    "Affiliate" under the Plan, shall include any and all Persons whose business is owned or controlled

22    by the Debtors or any of Insiders of the Debtors (as defined herein), or in which the Debtors or

23    Insiders of the Debtors (as defined herein) have any ownership, participation, profit sharing or any

24    other kind of interest whatsoever.

25        89.    **"Instruments of Transfer"** means any mortgages, deeds of trust, leasehold

26    mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents

27    of transfer as specified in or contemplated by the Plan including the documents related to the Asset

28    Sale Transaction.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

90. **"Interim Distribution Orders"** mean (A) "Order (a) Granting (i) Debtors' Motion to Distribute Funds; (ii) Debtors' Hold Funds Motion and (iii) the Compel Motion, and (b) Denying (i) the Lift Stay Motion and (ii) McKnight Motion" entered by the Court on August 24, 2006 [Docket No. 1184]; and (B) "Modified Order Authorizing Interim Distribution and Holdbacks" entered by the Court on October 2, 2006 [Docket No. 1424].

91. **"IP"** means USA Investment Partners, LLC.

92. **"IP Parties"** means Joseph Milanowski, Thomas Hantges, Paul Hamilton and IP.

93. **"IP $58 Million Promissory Note"** means that certain promissory note dated as of May 31, 2006, in the original principal amount of $58,374,918.81 made by IP in favor of USACM (as modified by the "Order Approving Agreement with Investment Partners" entered by the Court on July 24, 2006 [Docket No. 946]).

94. **"Lenders"** means Direct Lenders, USACM and the Funds.

95. **"Litigation Claims"** means any and all rights, causes of action, Claims, obligations, suits, debts, promises, agreements, judgments and demands of whatever kind or nature, whether known or unknown, suspected or unsuspected, whether at law or in equity, including, without limitation all Avoidance Actions, Non-Debtor Insider Litigation, and causes of action listed in the Schedules and the Statements of Financial Affairs Filed in each of the Debtor's Chapter 11 Cases, recoupment, set off and equitable subordination, whether or not brought as of the Effective Date, which are the property of or may be asserted by any of the Debtors and their respective Estates, or the Post-Effective Date Entities, and which have not been settled or otherwise resolved by Final Order as of the Effective Date.

96. **"Loans"** means the loans originated by and serviced by USACM on behalf of the Lenders. This definition of "Loans" is applicable solely to the Plan and does not apply to, nor supersede the definition of "Loans" in the Asset Purchase Agreement, which contains a different definition for "Loans."

97. **"Loan Servicing Agreement"** means agreements entered into by USACM with Lenders relating to USACM's servicing of the Loans in effect at any time during the Chapter 11 Cases.

98.    **"Loan Servicing Fee Schedule"** means a schedule setting forth the amount of the servicing fees payable under each of the Loan Servicing Agreements, which will be transferred to the Asset Purchaser at Closing as part of the Asset Sale Transaction.

99.    **"Non-Debtor Insider"** means an Insider that is not a Debtor, expressly including, without limitation, the IP Parties, any Affiliate of the Debtors and the IP Parties, Insiders of the IP Parties, professionals of such Insiders or of the Debtors, and/or any Entity which has conspired with or aided and abetted an Insider that is not a Debtor.

100.    **"Non-Debtor Insider Litigation"** means all Litigation Claims against Non-Debtor Insiders and recoveries therefrom.  Solely to the extent necessary to pursue this Non-Debtor Insider Litigation, this definition shall also include Litigation Claims by Debtors against Debtors who are Insiders, which Litigation Claims by Debtors against Debtors, notwithstanding anything to the contrary in this Plan and solely to the extent necessary to pursue Litigation Claims against Non-Debtor Insiders, shall survive the Confirmation of the Plan and the Effective Date and shall not be extinguished; provided that to the extent there are inter-Debtor releases in this Plan, the prior sentence shall have no operative effect on such releases, which releases will bar any recoveries by applicable Debtors against Debtors as provided for therein.

101.    **"Ordinary Course Administrative Expense Claim"** means an Administrative Expense Claim incurred in the ordinary course of the Debtors' businesses prior to the Effective Date; provided, however, Ordinary Course Administrative Expense Claims expressly do not include: (A) any postpetition obligations of a Debtor which are past due; (B) Cure Payments; (C) any fees or expenses, compensation or reimbursement for which is requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code; (D) any Taxes (including without limitation, income, sales, use, property or other Taxes); and (E) any Claims against a Debtor for breach of contract, tort, or other actionable conduct.

102.    **"Other Secured Claim"** means any Secured Claim other than a Secured Tax Claim.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

103. **"Overbid Allocation"** means the allocation agreed to between USACM and FTDF for the overbid, breakup fee, and expense reimbursement (as those terms are used in the Bid Procedures Order) as described in section E.2. of Art. IV of the Plan.

104. **"Penalty Claim"** means a Claim against a Debtor for a fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim or is asserted by a governmental unit.

105. **"Pending Litigation"** means all actions Filed against USACM as of the Effective Date, including *USA Commercial Mortg. Co. v. Standard Property Dev., LLC* [Adversary Proceeding No. 06-1179]; *USA Commercial Mortg. Co. v. Robert J. Kehl, et. al* [Adv. Pro. No. 06-1167]; *USA Commercial Mortg. Co. v. Gateway Stone Assocs., LLC* [Adv. Pro. No. 06-1201], and any other actions Filed against USACM prior to the Effective Date.

106. **"Person"** has the meaning ascribed to this term in section 101(41) of the Bankruptcy Code.  To the extent not provided for in section 101(41), the term "Person" as used herein includes limited partnerships, limited liability companies, associations, joint stock companies, joint ventures, and the Committees.

107. **"Petition Date"** means April 13, 2006, the date on which the Debtors Filed their voluntary petitions commencing the Chapter 11 Cases.

108. **"Plan"** means this Third Amended Joint Chapter 11 Plan of Reorganization, including any and all Exhibits annexed hereto, any and all documents incorporated herein by reference, and any and all documents incorporated by reference to the Plan Documents Supplement, or the Direct Lender Supplement either in their present form or as they may be altered, amended, or modified at any time prior to or as part of the Confirmation Hearing.

109. **"Plan Documents Supplement"** means the compilation of the forms of certain documents as specified in and required to be Filed in accordance with section C of Art. I of the Plan.

110. **"Post-Effective Date DTDF"** means DTDF after the Effective Date.

16

111.    **"Post-Effective Date Entities"** means the USACM Trust and Post-Effective Date DTDF, and prior to dissolution, FTDF, USA Realty and USA Securities.

112.    **"Postpetition Interest"** means all contractual or statutory interest to which holders of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured Claims have a legal right enforceable outside of the Chapter 11 Cases.  In the absence of any legal right to interest on any particular Allowed Claim in Class B-4 or Class C-4, "Postpetition Interest" shall mean 4.85%, the federal judgment rate in effect as of the Petition Date.

113.    **"Prepaid Interest"** means (a) all causes of action to recover principal or interest payments USACM paid in advance to the applicable Lender(s) before the Petition Date; (b) all principal and interest payments USACM has collected (will continue to collect) postpetition from Borrowers for such advanced principal or interest payments; and (c) all payments USACM has collected (and will continue to collect) postpetition on any Loan that would otherwise be payable to a Lender that received an advanced principal or interest payment from USACM prior to the Petition Date, but only to the extent of such advanced principal or interest payments.

114.    **"Priority Tax Claim"** means a Claim against a Debtor entitled to priority under section 507(a)(8) of the Bankruptcy Code.

115.    **"Priority Unsecured Claim"** means a Claim against a Debtor that is entitled to priority under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims, Administrative Expense Claims, and Ordinary Course Administrative Expense Claims.

116.    **"Professionals"** means those Entities or firms who have been employed by the Debtors or the Committees pursuant to Bankruptcy Code sections 327, 1103, and/or 1106.

117.    **"Professionals Administrative Expense Claim Bar Date"** has the meaning ascribed to this term in section B.1.c.ii of Art. II of the Plan.

118.    **"Pro Rata," "Pro Rata Share,"** and **"Pro Rata Basis"** mean proportionately so that the ratio of (A) the amount of consideration (such as Cash) distributed on account of a particular Allowed Claim or Allowed Equity Interest, as applicable, to (B) the amount of such Allowed Claim or Allowed Equity Interest, as applicable, is the same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests, as

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

17

applicable, of the Class or group of Classes in which the Allowed Claim or Allowed Equity

Interest is classified to (y) the amount of all Allowed Claims or Allowed Equity Interests, as

applicable, of that Class or group of Classes.

    The Pro Rata ratio or formula is illustrated as follows:

| (a) | Amount of consideration distributed to holder of Allowed Claim or Allowed Equity Interest, as applicable | = | (x) | Total consideration available for distribution to holders of Allowed Claims or Allowed Equity Interests, as applicable, of that Class or group of Classes |
|---|---|---|---|---|
| (b) | Amount of such Allowed Claim or Allowed Equity Interest, as applicable | | (y) | Amount of all Allowed Claims of Allowed Equity Interest, as applicable, in that Class or group of Classes |

For purposes of the application of this definition, the amount of any Disputed Claim shall be the

stated "face amount" of such Claim, unless such Claim is estimated by Final Order, in which case,

the amount of such Disputed Claim shall be the estimated amount.

    119.  **"Schedule of Executory Contracts and Unexpired Leases"** means the schedule

which is defined in section D of Art. I of the Plan and referred to under Article V of the Plan.

    120.  **"Schedules"** means the Schedules Filed by each of the Debtors pursuant to

Bankruptcy Code section 521(a)(1)(B)(i), Bankruptcy Rules 1007(a)(3) and (b)(1), and Official

Bankruptcy Form No. 6, as amended from time to time.

    121.  **"Secured Claim"** means a Claim against the Debtors to the extent of the value of

any interest in property of the Estates securing such Claim, as determined by the Court pursuant to

Bankruptcy Code sections 506(a) and 1111(b).

    122.  **"Secured Tax Claim"** means a Claim of a governmental unit against the Debtors

to the extent of the value of any interest in property of the Estates securing such Claim, as

determined by the Court pursuant to Bankruptcy Code section 506(a).

    123.  **"Servicer Advances"** means advances by the servicing agent for legal fees,

foreclosure costs and other expenses that may be recovered from a Lender under Paragraph 4 or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    any other similar Paragraph of the applicable Loan Servicing Agreement in the event that such

2    amounts are not paid by the applicable Borrower.

3         124.    **"SPCP Group, LLC"** means the Entity described as the "Purchaser" in the Asset

4    Purchase Agreement.

5         125.    **"Statutory Fees"** means those fees payable in the Chapter 11 Cases under 28

6    U.S.C. § 1930.

7         126.    **"Subordinated Claim"** means any and all Claims of Non-Debtor Insiders against

8    USACM.

9         127.    **"Taxes"** means all taxes, charges, fees, imposts, levies or other assessments,

10   including, without limitation, all net income, gross receipts, sales, use, ad valorem, value added,

11   transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment,

12   social security, unemployment, excise, severance, stamp, occupation, and property taxes, customs

13   duties, fees, assessments and charges of any kind whatsoever, together with any interest and

14   penalties, additions to tax or additional amounts imposed by any taxing authority (domestic or

15   foreign) and any interest and penalties imposed with respect to the filing, obligation to file or

16   failure to file any tax return, and shall include any transferee liability in respect to Taxes.

17        128.    **"Third Party Bidder"** means an Entity, other than SPCP Group, LLC, who makes

18   a Higher and Better Offer for the Acquired Assets pursuant to and in accordance with the terms of

19   the Bid Procedures Order.

20        129.    **"Undistributed Cash"** means $2.6 million in Cash that had been collected prior to

21   the Petition Date but had not been distributed on or since the Petition Date.

22        130.    **"Unremitted Principal Claims"** means General Unsecured Claims against

23   USACM for Loan payments received by USACM, but not paid over to applicable Lenders prior to

24   the Petition Date, including without limitation, the FTDF Unremitted Principal Claim, the Direct

25   Lender Unremitted Principal Claims, and the DTDF Unremitted Principal Claim.

26        131.    **"Unremitted Principal Direct Lenders"** means Direct Lenders holding

27   Unremitted Principal Claims.

28        132.    **"USA Realty"** means USA Capital Realty Advisors, LLC.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

133.   **"USA Securities"** means USA Securities, LLC.

134.   **"USACM"** means USA Commercial Mortgage Company.

135.   **"USACM Accounts"** means all accounts, notes or receivables of USACM, including USACM's share of the IP $58 Million Promissory Note.

136.   **"USACM Committee"** means the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

137.   **"USACM Loans"** mean the Loans in which USACM has an ownership interest.

138.   **"USACM Trust"** means the trust created under the Plan and pursuant to the USACM Trust Agreement for the benefit of holders of Allowed USACM Unsecured Claims.

139.   **"USACM Trust Agreement"** means the trust agreement that will establish (along with the Plan) and govern the USACM Trust which will be Filed as part of the Plan Documents Supplement.

140.   **"USACM Trust Assets"** means those assets to be transferred or assigned to the USACM Trust, respectively, on the Effective Date of the Plan, free and clear of any liens or Claims that might otherwise have existed in favor of any party minus any Cash needed to make the payments required to be made on the Effective Date pursuant to the Plan or needed to fund the reserves required to be established on the Effective Date.

141.   **"USACM Trust Committee"** means the oversight committee for the USACM Trust established pursuant to the Plan and the USACM Trust Agreement.

142.   **"USACM Trustee"** means the trustee of the USACM Trust, which has the powers and responsibilities set forth in the Plan and the USACM Trust Agreement, or any successor trustee appointed pursuant to the USACM Trust Agreement.

143.   **"USACM Unsecured Claims"** means all Allowed General Unsecured Claims against USACM, including Unremitted Principal Claims, the DTDF Unsecured Claim, the FTDF Unsecured Claim, and the Direct Lender Unsecured Claims.

144.   **"U.S. Trustee"** means the Office of the United States Trustee for the District of Nevada.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**B.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**C.    Plan Documents Supplement.**

The forms of the following documents are or will be contained in a separate Plan Documents Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

1.    the USACM Trust Agreement; and

2.    the DTDF Amended Operating Agreement.

In the event of a conflict between the terms of any of the documents contained in the Plan Documents Supplement and the Plan, the terms of the Plan shall govern.

The USACM Trust Agreement will be Filed by the USACM Committee and served on counsel for the Debtors and the other Committees and the U.S. Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing. The USACM Trust Agreement will identify the identity and affiliations of the USACM Trustee and the USACM Trust Committee as required by section 1129(a)(5) of the Bankruptcy Code and will include all other information required to comply with section 1129(a)(4) of the Bankruptcy Code.

The DTDF Amended Operating Agreement will be Filed by the DTDF Committee and served on counsel for the Debtors and the other Committees and the U.S. Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing. The DTDF Amended Operating Agreement will identify the identity and affiliations of the DTDF Administrator and the DTDF Post-Effective Date Committee as required by section 1129(a)(5) of the Bankruptcy Code and will include all other information required to comply with section 1129(a)(4) of the Bankruptcy Code.

Once Filed, the Plan Documents Supplement may be inspected in the Office of the Clerk of the Court during normal court hours. The holders of Claims or Equity Interests may obtain a

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  copy of the Plan Documents Supplement, or excerpts therefrom, by accessing the BMC Group

2  website for the Debtors at http://www.bmccorp.net; contacting the BMC Group by phone at 888-

3  909-0100; or by accessing the Debtors' website at www.usacapitalcorp.com.

4  **D.    Schedule of Executory Contracts and Unexpired Leases.**

5      The Debtors will File a Schedule of Executory Contracts and Unexpired Leases that

6  conforms to section A of Art. V of the Plan, and serve it on the Committees, the U.S. Trustee, all

7  non-Debtor Entities who are parties to any executory contracts or unexpired leases listed thereon

8  and the limited service list as soon as practicable after the Court approves the Disclosure

9  Statement, but in no event later than twenty (20) days prior to the commencement of the

10  Confirmation Hearing.

11      Once Filed, the Schedule of Executory Contracts and Unexpired Leases may be inspected

12  in the Office of the Clerk of the Court during normal court hours.  The holders of Claims or Equity

13  Interests may obtain a copy of the Schedule of Executory Contracts and Unexpired Leases, or

14  excerpts therefrom, by accessing the BMC Group website for the Debtors at

15  http://www.bmccorp.net; contacting the BMC Group by phone at 888-909-0100; or by accessing

16  the Debtors' website at www.usacapitalcorp.com.

17  **E.    Direct Lender Supplement.**

18      The forms of the following documents are or will be contained in a separate Direct Lender

19  Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

20      1.      the Loan Servicing Fee Schedule; and

21      2.      the Alternative Dispute Resolution Agreement.

22      The Direct Lender Supplement will be Filed and served on the Committees, the U.S.

23  Trustee and all Direct Lenders as soon as practicable after the Court approves the Disclosure

24  Statement, but in no event later than twenty (20) days prior to the commencement of the

25  Confirmation Hearing.

26      Once Filed, the Direct Lender Supplement may be inspected in the Office of the Clerk of

27  the Court during normal court hours.  The holders of Claims or Equity Interests may obtain a copy

28  of the Direct Lender Supplement, or excerpts therefrom, by accessing the BMC Group website for

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   the Debtors at http://www.bmccorp.net; contacting the BMC Group by phone at 888-909-0100; or

2   by accessing the Debtors' website at www.usacapitalcorp.com.

3   **F.    Exhibits.**

4          All Exhibits to the Plan and all documents contained in the Plan Documents Supplement

5   and the Direct Lender Supplement are incorporated into and are a part of the Plan as if set forth in

6   full herein.

7

8                                              **II.**

9   **CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

10

11  **A.    Summary.**

12         As discussed in section B of Art. IV of the Plan below, the Estates will not be substantively

13  consolidated. Accordingly, holders of Allowed Claims or Allowed Equity Interests against a

14  particular Estate shall have their Claims or Equity Interests allowed and treated in such respective

15  Estate. Further, within an Estate, an Allowed Claim or Allowed Equity Interest is placed in a

16  particular Class only to the extent that the Claim or Equity Interest falls within the description of

17  that Class. However, an Allowed Claim or Allowed Equity Interest may be apportioned and

18  classified in more than one Class to the extent that portions of the Claim or Equity Interest fall

19  within the description of several different Classes. An Allowed Claim or Allowed Equity Interest

20  is classified in a particular Class only to the extent that it has not already been paid, released or

21  otherwise satisfied before the Effective Date. The following is a chart summarizing the

22  classification and treatment of unclassified Claims, classified Claims and Equity Interests in each

23  Estate:

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
| **USACM** | |
| | **Unclassified Claims** |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax | Holders of Allowed Priority Tax Claims shall be paid in full on the |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
| Claims | Effective Date, unless the holder of the Claim agrees otherwise. |
| | **Classified Claims** |
| A-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| A-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USACM: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USACM shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| A-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| A-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims, including the Unremitted Principal Claims, Allowed FTDF Unsecured Claims, the Allowed Direct Lender Unsecured Claims and the Allowed DTDF Unsecured Claim, shall receive a beneficial interest in the USACM Trust, and on account of their Allowed Claim may receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees, costs, and expenses of implementation of the USACM Plan for USACM and the USACM Trust. |
| A-5: Direct Lender Compromise Claims | The Direct Lenders will be released by USACM, FTDF, USA Realty and USA Securities from all Claims including but not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of prepetition accrued but unpaid as of the Effective Date annual loan servicing fees due under Loan Servicing Agreements, but excluding causes of action to recover principal or interest payments USACM paid in advance to the applicable Lender(s) before the Petition Date.  In |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
|  | exchange (and as a compromise), Direct Lenders acknowledge and agree that the Prepaid Interest constitutes an asset of the USACM Estate or to transfer their ownership rights, if any, in Prepaid Interest to the USACM Estate, that USACM retains the maximum amount for servicing fees allowed and that $605,000 of the 2% Holdback can and will be used to reimburse USACM for the Allowed Administrative Expense Claims attributed to the fees and costs of the Professionals of the Direct Lender Committee.  If the Plan is confirmed, the Direct Lenders will be bound to the Class A-5 treatment regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept or reject the Plan; all such objections must be made by objecting to Plan confirmation. |
| A-6: Allowed Penalty Claims | Holders of Allowed Penalty Claims shall be subordinated in payment to the payment in full of all Allowed General Unsecured Claims, plus interest, and shall receive no distribution under the Plan. |
| A-7: Allowed Subordinated Claims | Holders of Subordinated Claims shall be subordinated in payment to the payment in full of all Allowed Penalty Claims, plus interest, and shall receive no distribution under the Plan. |
| A-8: Equity Interests | All Equity Interests in USACM, regardless of form, shall be cancelled and the holders of Equity Interests in USACM shall receive no distribution under the Plan. |
| **FTDF** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| B-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| B-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of FTDF: **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:**  FTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
| | reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| B-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| B-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date, plus Postpetition Interest. |
| B-5: Equity Interests | After the FTDF Payment has been made, holders of Allowed Equity Interests shall retain all distributions received after the Petition Date and receive the remaining Allocated Net Sale Proceeds after satisfaction of all Allowed unclassified Claims, Allowed Class B-1, B-2, B-3 and B-4 Claims, and post-Effective Date fees, costs, and expenses of implementation of the Plan for FTDF. Allowed Equity Interests shall receive a Pro Rata Share of the USACM Trust recoveries on account of the Allowed FTDF Unsecured Claim. |
| **DTDF** | |
| | **Unclassified Claims** |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| | **Classified Claims** |
| C-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| C-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or |

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
| | **Option B:** Post-Effective Date DTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| C-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| C-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date, plus Postpetition Interest. |
| C-5: Equity Interests | Holders of Allowed Equity Interests shall retain their Equity Interests in DTDF and distributions received from the Petition Date, and after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, C-3 and C-4 Claims, and all post-Effective Date fees, costs and expenses of implementation of Plan for DTDF, shall receive shall receive a Pro Rata Share of the assets of Post-Effective Date DTDF and the USACM Trust recoveries on account of the Allowed DTDF Unsecured Claim. |
| **USA Realty** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| D-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| D-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Realty: **Option A:** Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
|  | fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or<br><br>**Option B:**  USA Realty shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| D-3:<br>Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| D-4:<br>General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class D-1, D-2 and D-3 Claims. |
| D-5:<br>Equity Interests | All Equity Interests in USA Realty, regardless of form, shall be cancelled and the holders of Equity Interests in USA Realty shall receive no distribution under the Plan. |
| **USA Securities** ||
| **Unclassified Claims** ||
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** ||
| E-1:<br>Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| E-2:<br>Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Securities:<br><br>**Option A:**  Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or<br><br>**Option B:**  USA Securities shall surrender the property securing the Allowed Other USA Securities Claim to the holder of such Claim by |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
|  | making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Securities shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| E-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| E-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class E-1, E-2 and E-3 Claims. |
| E-5: Equity Interests | All Equity Interests in USA Securities, regardless of form, shall be cancelled and the holders of Equity Interests in USA Securities shall receive no distribution under the Plan. |

**B.    Unclassified Claims.**

Certain types of Claims are not placed into Classes that are entitled to vote to accept or reject this Plan; instead, such Claims are unclassified.  Such Claims do not vote on the Plan because they are entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have <u>not</u> placed the following Claims in a Class.  The respective treatments for these Claims are provided below.

**1.    Administrative Expense Claims For Each Debtor.**

**a.    General.**

Each holder of an Allowed Administrative Expense Claim in a particular Estate shall be paid in full, in Cash of such Estate, on the later of: (i) the Effective Date, or (ii) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment.  The fees and costs of the counsel to the Direct Lender Committee, to the extent Allowed, will be treated as an Administrative Expense

29

1   Claim against USACM, except to the extent covered by a surcharge on Direct Lenders authorized

2   by the Court and collected by USACM prior to the Effective Date.

3           **b.**    **Payment of Statutory Fees.**

4         On or before the Effective Date, Statutory Fees for each Estate shall be paid in Cash, in full

5   when due.  To the extent there is any dispute as to the amount or payment of these Statutory Fees,

6   such dispute will be resolved by the Court at the Confirmation Hearing.

7           **c.**    **Bar Dates Applicable to Administrative Expense Claims.**

8             **i.**    **General Administrative Expense Claims.**

9         Except as provided in subsections ii and iii below, requests for payment of Administrative

10  Expense Claims must be Filed and served on the Debtors and the Post-Effective Date Entities, the

11  Committees (to the extent such Committees are not dissolved) and the U.S. Trustee by no later

12  than thirty (30) days after the Effective Date, which shall be the "Administrative Expense Claim

13  Bar Date."  Any holder of an Administrative Expense Claim who fails to File a request seeking to

14  have its Claim Allowed on or before the Administrative Expense Claim Bar Date shall be forever

15  barred from seeking the allowance of its Administrative Expense Claim, and the Debtors and their

16  Estates, including any Post-Effective Date Entities, if applicable, shall be discharged of any

17  obligation on such Claim or any other Claim related to the Administrative Expense Claim.

18           **ii.**    **Professionals.**

19        All Professionals or other Entities requesting compensation or reimbursement of expenses

20  under sections 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code for services

21  rendered before the Effective Date (including any compensation requested by any professional or

22  any other Entity for making a substantial contribution in the Chapter 11 Cases under section

23  503(b)(3)(D) of the Bankruptcy Code) shall File and serve on the Debtors, the Post-Effective Date

24  Entities, the Committees (to the extent such Committees are not yet dissolved) and the U.S.

25  Trustee an application for final allowance of compensation and reimbursement of expenses no

26  later than forty-five (45) days after the Effective Date, which shall be the "Professionals

27  Administrative Expense Claim Bar Date."  Any objections to such applications must be Filed and

28  served in accordance with applicable law, including Nevada District Court Local Rule 9014.  Any

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Professional who fails to File an application requesting payment on or prior to the Professionals

2    Administrative Expense Claim Bar Date shall be forever barred from seeking the allowance of its

3    Administrative Expense Claim or any other Claim, and the Debtors, their Estates and any Post-

4    Effective Date Entities, if applicable, shall be discharged of any obligation on such Claim or any

5    other Claim related to the Professional's Claim.

6                    **iii.    Ordinary Course Administrative Expense Claims.**

7            Holders of Ordinary Course Administrative Expense Claims shall not be required to File

8    any request for payment of such Claims by the Administrative Expense Claim Bar Date.  Each

9    Ordinary Course Administrative Expense Claim shall be assumed and paid by the obligated Estate

10   under the terms and conditions of the particular transaction giving rise to that Ordinary Course

11   Administrative Expense Claim, without any further action by the holder of such Ordinary Course

12   Administrative Expense Claim.

13                   **iv.    Effect of Claim Bar Dates.**

14           All holders of Administrative Expense Claims (including without limitation, Professionals

15   requesting compensation or reimbursement of expenses), except holders of Ordinary Course

16   Administrative Expense Claims, are required to File a request for payment of such Claims in

17   accordance with the Plan.  Failure to File a request for payment of an Administrative Expense

18   Claim prior to the Administrative Expense Claim Bar Date or the Professionals Administrative

19   Expense Claim Bar Date, as applicable, shall  forever bar the holder from asserting such Claims

20   against the Debtors, the Estates, the Post-Effective Date Entities and any other Entity or any of

21   their respective property, and the Debtors, the Estates and the Post-Effective Date Entities, to the

22   extent applicable, shall be discharged of any obligation on such Claim or any other Claim related

23   to the Administrative Expense Claim.

24           **2.    Priority Tax Claims.**

25           Each holder of an Allowed Priority Tax Claim in a particular Estate shall be paid in full, in

26   Cash from such Estate, on the later of: (A) the Effective Date, or (B) the date such Priority Tax

27   Claim becomes an Allowed Priority Tax Claim, or, in either case as applicable, as soon thereafter

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

31

1   as is practicable, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a

2   different treatment.

3   **C.      Classified Claims And Equity Interests.**

4       **1.      USACM – (Classes A-1 Through A-8).**

5           **a.      Class A-1: Secured Tax Claims.**

6              i.      *Classification*:  Class A-1 consists of all Allowed Secured Tax

7   Claims against USACM.

8              ii.      *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

9   paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

10  Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class A-1 is

11  unimpaired, and the holders of Allowed Class A-1 Claims are presumed to vote in favor of the

12  Plan.

13          **b.      Class A-2: Other Secured Claims.**

14             i.      *Classification*:  Class A-2 consists of all Allowed Other Secured

15  Claims against USACM.

16             ii.      *Treatment*:  Each holder of an Allowed Other Secured Claim shall

17  be treated pursuant to Option A or Option B below, at the discretion of USACM.

18      **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or

19  before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

20  after the date the Other Secured Claim becomes an Allowed Claim; or

21      **Option B:**  USACM shall surrender the property securing the Allowed Other

22  Secured Claim to the holder of such Claim by making the property reasonably available to such

23  holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

24  Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that

25  if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM

26  shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of

27  which notice shall constitute "surrender" of the property securing the Allowed Other Secured

28  Claim for purposes of this Option B.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1      Class A-2 is unimpaired, and the holders of Allowed Class A-2 Claims are

2  presumed to vote in favor of the Plan.

3          **c.      Class A-3: Priority Unsecured Claims.**

4                  i.      *Classification*:  Class A-3 consists of all Allowed Priority Unsecured

5  Claims against USACM.

6                  ii.      *Treatment*:  Each holder of an Allowed Priority Unsecured Claim

7  shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class A-3 is

8  unimpaired, and the holders of Allowed Class A-3 Claims are presumed to vote in favor of the

9  Plan.

10          **d.      Class A-4: General Unsecured Claims.**

11                  i.      *Classification*:  Class A-4 consists of all Allowed General

12  Unsecured Claims against USACM, including the Allowed Unremitted Principal Claims, the

13  Allowed Direct Lender Unsecured Claims, the Allowed FTDF Unsecured Claims, and the

14  Allowed DTDF Unsecured Claims.

15                  ii.      *Treatment*:  Each holder of an Allowed General Unsecured Claim

16  shall receive a beneficial interest in the USACM Trust, and on account of the Allowed Claim may

17  receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed

18  unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees,

19  costs, and expenses of implementation of the USACM Plan and USACM Trust.  Class A-4 is

20  impaired, and the holders of Allowed Class A-4 Claims are entitled to vote to accept or reject the

21  Plan.

22          **e.      Class A-5: Direct Lender Compromise Claims.**

23                  i.      *Classification*:  Class A-5 Consists of all Direct Lenders.

24                  ii.      *Treatment*:  In exchange (and as a compromise) for the release by

25  USACM, FTDF, USA Realty, USA Securities of Claims against the Direct Lenders under the

26  Plan, including Claims relating to surcharge, recharacterization of Direct Lender Loans, and the

27  collection of prepetition accrued as of the Effective Date but unpaid annual loan servicing fees due

28  under Loan Servicing Agreements, but excluding all other causes of action to recover principal or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

interest payments USACM paid in advance to applicable Direct Lenders before the Petition Date, the Direct Lenders (a) acknowledge that the Prepaid Interest constitutes an asset of the USACM Estate (or will otherwise transfer their ownership rights, if any, in the Prepaid Interest to the USACM Estate); (b) agree that up to $605,000 of the 2% Holdback (on a Pro Rata basis based on unpaid principal Loan balances of those Direct Lenders with funds in the 2% Holdback) will be used to reimburse USACM for the Allowed Administrative Expense Claims of Professionals employed by the Direct Lender Committee; and (c) agree that, with respect to servicing fees paid prior to the Effective Date, USACM will retain its contractual servicing fee due under the Loan Servicing Agreements and, with respect to Loan Servicing Agreements which provide that USACM may collect "up to" a maximum amount for such servicing fees, USACM will retain the maximum amount for such servicing fees as provided under the Loan Servicing Agreement. Class A-5 is impaired, and the holders of Allowed Class A-5 Claims are entitled to vote to accept or reject the Plan. If the Plan is confirmed, the Direct Lenders will be bound to the Class A-5 treatment regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept or reject the Plan; all such objections must be made by objecting to Plan confirmation.

        **f.**        **Class A-6: Allowed Penalty Claims.**

        i.        *Classification:* Class A-6 consists of all Allowed Penalty Claims against USACM.

        ii.        *Treatment:* Payment to holders of Allowed Penalty Claims shall be subordinated to the payment in full, plus interest, of all Allowed General Unsecured Claims. It is anticipated that holders of Allowed Penalty Claims shall receive no distribution under the Plan. In the unlikely event that Cash exists after all Allowed General Unsecured Claims are paid in full, plus interest, the Plan shall be deemed to be amended to provide that such Cash be distributed Pro Rata to the holders of Allowed Penalty Claims, plus interest. Class A-6 is impaired, and the holders of Class A-6 Claims are deemed to reject the Plan.

        **g.**        **Class A-7: Subordinated Claims.**

        i.        *Classification*: Class A-7 consists of all Subordinated Claims against USACM.

34

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

ii.    *Treatment:*  Payment to holders of Allowed Subordinated Claims shall be subordinated to the payment in full, plus interest, of all Allowed Penalty Claims.  It is anticipated that holders Allowed Subordinated Claims shall receive no distribution under the Plan. In the unlikely event that Cash exists after all Allowed Penalty Claims are paid in full, plus interest, the Plan shall be deemed to be amended to provide that such Cash be distributed Pro Rata to the holders of Allowed Subordinated Claims, plus interest. Class A-7 is impaired, and the holders of Class A-7 Claims are deemed to reject the Plan

**h.    Class A-8: Equity Interests.**

i.    *Classification*:  Class A-8 consists of all Equity Interests in USACM.

ii.    *Treatment*:  Any and all Equity Interests in USACM, regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will receive no distribution under the Plan.  Class A-87 is impaired, and the holders of Class A-8 Equity Interests are deemed to reject the Plan.

**2.    FTDF – (Classes B-1 Through B-5).**

**a.    Class B-1: Secured Tax Claims.**

i.    *Classification*:  Class B-1 consists of all Allowed Secured Tax Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class B-1 is unimpaired, and the holders of Allowed Class B-1 Claims are presumed to vote in favor of the Plan.

**b.    Class B-2: Other Secured Claims.**

i.    *Classification*:  Class B-2 consists of all Allowed Other Secured Claims against FTDF.

ii.    *Treatment*:  Each holder of an Allowed Other Secured Claim shall be treated pursuant to Option A or Option B below, at the discretion of FTDF.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:** FTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class B-2 is unimpaired, and the holders of Allowed Class B-2 Claims are presumed to vote in favor of the Plan.

**c.      Class B-3: Priority Unsecured Claims.**

i.      *Classification*:  Class B-3 consists of all Allowed Priority Unsecured Claims against FTDF.

ii.      *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class B-3 is unimpaired, and the holders of Allowed Class B-3 Claims are presumed to vote in favor of the Plan.

**d.      Class B-4: General Unsecured Claims.**

i.      *Classification*:  Class B-4 consists of all Allowed General Unsecured Claims against FTDF.

ii.      *Treatment*:  Each holder of an Allowed General Unsecured Claim shall be paid in full on the Effective Date, plus Postpetition Interest.  Class B-4 is unimpaired, and the holders of Allowed Class B-4 Claims are presumed to vote in favor of the Plan.

**e.    Class B-5: Equity Interests.**

i.    *Classification*:  Class B-5 consists of all Allowed Equity Interests in FTDF.

ii.    *Treatment*:  All holders of Allowed Equity Interests in FTDF shall (a) retain their Pro Rata Share of all distributions received after the Petition Date and, after payment of the FTDF Payment, (b) receive a Pro Rata Share of Allocated Net Sale Proceeds after satisfaction of all Allowed unclassified Claims, all Allowed Class B-1, B-2, B-3 and B-4 Claims, and any and all post-Effective Date fees, costs and expenses of implementation of the Plan for FTDF, and (c) receive a Pro Rata Share of the USACM Trust recoveries (subject to the compromise with DTDF) on account of the Allowed FTDF Unsecured Claim.  Class B-5 is impaired, and the holders of Allowed Class B-5 Equity Interests are entitled to vote to accept or reject the Plan.

**3.    DTDF – (Classes C-1 Through C-5).**

**a.    Class C-1: Secured Tax Claims.**

i.    *Classification*:  Class C-1 consists of all Allowed Secured Tax Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class C-1 is unimpaired, and the holders of Allowed Class C-1 Claims are presumed to vote in favor of the Plan.

**b.    Class C-2: Other Secured Claims.**

i.    *Classification*:  Class C-2 consists of all Allowed Other Secured Claims against DTDF.

ii.    *Treatment*:  Each holder of an Allowed Other Secured Claim against DTDF shall be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1        **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or

2  before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

3  after the date the Other Secured Claim becomes an Allowed Claim; or

4        **Option B:**  Post-Effective Date DTDF shall surrender the property securing the

5  Allowed Other Secured Claim to the holder of such Claim by making the property reasonably

6  available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b)

7  fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim;

8  provided, however, that if the property securing an Allowed Other Secured Claim has been lost or

9  destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the

10  Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the

11  property securing the Allowed Other Secured Claim for purposes of this Option B.

12        Class C-2 is unimpaired, and the holders of Allowed Class C-2 Claims are

13  presumed to vote in favor of the Plan.

14      **c.**      **Class C-3: Priority Unsecured Claims.**

15          i.     *Classification*:  Class C-3 consists of all Allowed Priority Unsecured

16  Claims against DTDF.

17          ii.     *Treatment*:  Each holder of an Allowed Priority Unsecured Claim

18  shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class C-3 is

19  unimpaired, and the holders of Allowed Class C-3 Claims are presumed to vote in favor of the

20  Plan.

21      **d.**      **Class C-4: General Unsecured Claims.**

22          i.     *Classification*:  Class C-4 consists of all Allowed General

23  Unsecured Claims against DTDF.

24          ii.     *Treatment*:  Each holder of an Allowed General Unsecured Claim

25  shall be paid in full on the Effective Date, plus Postpetition Interest.  Class C-4 is unimpaired, and

26  the holders of Allowed Class C-4 Claims are presumed to vote in favor of the Plan.

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**e.    Class C-5: Equity Interests.**

i.    *Classification*: Class C-5 consists of all Allowed Equity Interests in DTDF.

ii.    *Treatment*: All holders of Allowed Equity Interests shall (a) retain their interests in DTDF and any distributions received from the Petition Date, and, after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, C-3 C-4 Claims and the post-Effective Date costs, fees and expenses for implementation of the Plan for DTDF, including without limitation costs, fees, and expenses incurred by Post-Effective Date DTDF under the DTDF Amended Operating Agreement, (b) receive a Pro Rata Share of the assets of Post-Effective Date DTDF, and (c) receive a Pro Rata Share in the USACM Trust recoveries on account of the Allowed DTDF Unsecured Claim. Class C-5 is impaired, and the holders of Allowed Class C-5 Equity Interests are entitled to vote to accept or reject the Plan.

**4.    USA Realty – (Classes D-1 Through D-5).**

**a.    Class D-1: Secured Tax Claims.**

i.    *Classification*: Class D-1 consists of all Allowed Secured Tax Claims against USA Realty.

ii.    *Treatment*: Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. Class D-1 is unimpaired, and the holders of Allowed Class D-1 Claims are presumed to vote in favor of the Plan.

**b.    Class D-2: Other Secured Claims.**

i.    *Classification*: Class D-2 consists of all Allowed Other Secured Claims against USA Realty.

ii.    *Treatment*: Each holder of an Allowed Other Secured Claim against USA Realty shall be treated pursuant to Option A or Option B below, at the discretion of USA Realty.

**Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:** USA Realty shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class D-2 is unimpaired, and the holders of Allowed Class D-2 Claims are presumed to vote in favor of the Plan.

c.    **Class D-3: Priority Unsecured Claims.**

i.    *Classification*: Class D-3 consists of all Allowed Priority Unsecured Claims against USA Realty.

ii.    *Treatment*: Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise. Class D-3 is unimpaired, and the holders of Allowed Class D-3 Claims are presumed to vote in favor of the Plan.

d.    **Class D-4: General Unsecured Claims.**

i.    *Classification*: Class D-4 consists of all Allowed General Unsecured Claims against USA Realty.

ii.    *Treatment*: Each holder of an Allowed General Unsecured Claim against USA Realty shall receive a Pro Rata Share of assets of the Estate of USA Realty after payment in full of all Allowed unclassified Claims, and all Allowed Class D-1, D-2 and D-3 Claims. Class D-4 is impaired, and the holders of Allowed Class D-4 Claims are entitled to vote to accept or reject the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1      **e.**  **Class D-5: Equity Interests.**

2        i.  *Classification*:  Class D-5 consists of all Allowed Equity Interests in

3    USA Realty.

4        ii.  *Treatment*:  Any and all Equity Interests in USA Realty, regardless

5    of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will

6    receive no distribution under the Plan.  Class D-5 is impaired, and the holders of Allowed Class D-

7    5 Equity Interests are deemed to reject the Plan.

8      **5.**  **USA Securities – (Classes E-1 Through E-5).**

9      **a.**  **Class E-1: Secured Tax Claims.**

10       i.  *Classification*:  Class E-1 consists of all Allowed Secured Tax

11   Claims against USA Securities.

12       ii.  *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

13   paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

14   Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class E-1 is

15   unimpaired, and the holders of Allowed Class E-1 Claims are presumed to vote in favor of the

16   Plan.

17     **b.**  **Class E-2: Other Secured Claims.**

18       i.  *Classification*:  Class E-2 consists of all Allowed Other Secured

19   Claims against USA Securities.

20       ii.  *Treatment*:  Each holder of an Allowed Other Secured Claim against

21   USA Securities shall be treated pursuant to Option A or Option B below, at the discretion of USA

22   Securities.

23     **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or

24   before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

25   after the date the Other Secured Claim becomes an Allowed Claim; or

26     **Option B:**  USA Securities shall surrender the property securing the Allowed Other

27   Secured Claim to the holder of such Claim by making the property reasonably available to such

28   holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Securities shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class E-2 is unimpaired, and the holders of Allowed Class E-2 Claims are presumed to vote in favor of the Plan.

### c.    Class E-3: Priority Unsecured Claims.

i.    *Classification*:  Class E-3 consists of all Allowed Priority Unsecured Claims against USA Securities.

ii.    *Treatment*:  Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class E-3 is unimpaired, and the holders of Allowed Class E-3 Claims are presumed to vote in favor of the Plan.

### d.    Class E-4: General Unsecured Claims.

i.    *Classification*:  Class E-4 consists of all Allowed General Unsecured Claims against USA Securities.

ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim against USA Securities shall receive a Pro Rata Share of the assets of the Estate of USA Securities after payment in full of all Allowed unclassified Claims, and all Allowed Class E-1, E-2 and E-3 Claims.  Class E-4 is impaired, and the holders of Allowed Class E-4 Claims are entitled to vote to accept or reject the Plan.

### e.    Class E-5: Equity Interests.

i.    *Classification*:  Class E-5 consists of all Allowed Equity Interests in USA Securities.

ii.    *Treatment:* Any and all Equity Interests in USA Securities, regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

will receive no distribution under the Plan.  Class E-5 is impaired, and the holders of Allowed

Class E-5 Equity Interests are deemed to reject the Plan.

### III.

### ACCEPTANCE OR REJECTION OF THE PLAN

**A.      Voting Classes.**

Holders of Allowed Class A-4, A-5,  D-4 and E-4 Claims are entitled to vote to accept or

reject the Plan.  Holders of Allowed Class B-5 and C-5 Equity Interests are entitled to vote to

accept or reject the Plan.  Holders of Allowed Class A-1, A-2, A-3, B-1, B-2, B-3, B-4, C-1, C-2,

C-3, C-4, D-1, D-2, D-3, E-1, E-2, E-3 Claims are deemed to accept the Plan.  Holders of Allowed

Class A-6, A-7, A-8, D-5 and E-5 Equity Interests are deemed to have rejected the Plan.  An

Entity holding an Allowed Claim or Equity Interest in more than one Class is entitled to vote in

each Class.

**B.      Voting Rights Of Holders Of Disputed Claims And Disputed Equity Interests.**

Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim or Disputed Equity Interest will

not be counted for purposes of voting on the Plan to the extent it is Disputed, unless the Court

enters an order temporarily allowing the Disputed Claim or Disputed Equity Interest for voting

purposes under Bankruptcy Rule 3018(a).  Such disallowance for voting purposes is without

prejudice to the holder of the Disputed Claim or Disputed Equity Interest's right to seek to have its

Disputed Claim or Disputed Equity Interest, as the case may be, Allowed for purposes of

distribution under the Plan.

**C.      Acceptance By Impaired Classes.**

An impaired Class of Claims shall have accepted the Plan if (1) the holders (other than any

holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in dollar amount

of the Allowed Claims actually voting in such class have voted to accept the Plan, and (2) more

than one-half in number of the holders (other than any holder designated under Bankruptcy Code

section 1126(e)) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

An impaired Class of Equity Interests shall have accepted the Plan if the holders (other than any holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class, or subclass, have voted to accept the Plan.

**D.    Nonconsensual Confirmation.**

In the event that the Classes entitled to vote to accept or reject this Plan fail to accept the Plan in accordance with Bankruptcy Code section 1129(a)(8), the Debtors, with the agreement of the Committees, reserve the right to (i) request that the Court confirm the Plan in accordance with Bankruptcy Code section 1129(b) and/or (ii) modify the Plan in accordance with Bankruptcy Code section 1127(a) and request confirmation of the modified Plan.  Further, as the Plan contains a Plan for each of the five separate Debtors, the Debtors, with the agreement of the Committees, reserve the right to request confirmation of the Plan for one or more, but less than all Debtors under section 1129(b) of the Bankruptcy Code.  In accordance with section 1127 of the Bankruptcy Code, the Debtors, with the agreement of the Committees, reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including documents in the Plan Documents Supplement and the Direct Lender Supplement, for one or more or all of the Debtors, including to amend or modify the Plan to satisfy the requirements of section 1129(b) of the Bankruptcy Code for one or more of the Debtors covered by the Plan.  In the event the Debtors, with the agreement of all of the Committees, modify the Plan by withdrawing the Plan for less than all of the Debtors, the Plan, as modified, will remain intact and unchanged for all non-withdrawing Debtors.

# IV.

## IMPLEMENTATION OF THE PLAN

**A.    General Means Of Implementation.**

The Plan will be implemented and consummated through the means contemplated by sections 1123(a)(5)(A), (B) and (D), 1123(b)(2), 1123(b)(3)(A) and (B), and 1123(b)(4) of the Bankruptcy Code, including by:

1.    the transfer of certain Loan Servicing Agreements pursuant to the Asset Purchase Agreement;

2.    the sale of the Acquired Assets as set forth in section C of Art. IV of the Plan and disbursement of the Allocated Net Sale Proceeds and certain other Cash of the Estates in accordance with the Plan;

3.    the transfer of certain assets of USACM to the USACM Trust pursuant to section D.1 of Art. IV of the Plan, the liquidation of those assets by the USACM Trust, the disbursement of Cash to holders of Allowed USACM Unsecured Claims as USACM Trust beneficiaries in accordance with the Plan and the USACM Trust Agreement, and the dissolution of USACM;

4.    the transfer of the FTDF Transferred Claims and the making of the FTDF Payment;

5    the retention by Post-Effective Date DTDF of assets of DTDF pursuant to section D.2 of Art. IV of the Plan, the liquidation of those assets by the Post-Effective Date DTDF, the disbursement of Cash to holders of Allowed Equity Interests in DTDF in accordance with the Plan, and the dissolution of DTDF;

6.    the distribution of FTDF's share of the Allocated Net Sale Proceeds in accordance with the Plan, and the dissolution of FTDF; and

7.    the liquidation of any assets of the USA Realty Estate and the USA Securities Estate, distribution of Cash to holders of Allowed Claims against USA Realty and USA Securities, respectively, in accordance with the Plan, and the dissolution of USA Realty and USA Securities.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**B.    No Substantive Consolidation Or Recharacterization Of Loans.**

On the Effective Date, all of the assets of each Debtor shall be sold, transferred, distributed or retained by each of such Debtor's respective Estates, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan, with all proceeds of sold, transferred, or liquidated assets of each Debtor being retained by the respective Debtor's Estate, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan.  All Claims against and Equity Interests in the Debtors and their respective Estates shall be retained by the holders of Allowed Claims and Allowed Equity Interests against and in the respective Estates, except as otherwise provided for under the Plan.  The allowance, voting, treatment and distributions on account of Allowed Claims and Allowed Equity Interests shall be as set forth in the Plan on an individual Estate basis.  Notwithstanding any inference to the contrary in this section, Equity Interests in USACM, USA Realty and USA Securities shall be retained only until the Effective Date, at which date, those Equity Interests shall be cancelled on an individual Estate basis under the Plan.

Notwithstanding any provision of this Plan, nothing in this Plan shall constitute or effect a recharacterization of any Loan or any interest in a Loan as giving rise to a Claim against or Equity Interest in any of the Debtors.  If any Entity believes that all or a portion of the Loans should be so recharacterized, it must expressly raise this issue by Filing an objection to the Confirmation of the Plan on this basis.  Any Entity who fails to File such an objection to Confirmation of the Plan shall be forever barred and estopped from arguing, asserting or claiming in any way that its Loan or its interest in a Loan should be recharacterized as an Allowed Claim against or Allowed Equity Interest in a Debtor.

**C.    Asset Sale Transaction.**

The Plan will be implemented in part by the Asset Sale Transaction.  In implementation of the Asset Sale Transaction, USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, have entered into the Asset Purchase Agreement.  The Asset Purchase Agreement and the Bid Procedures Order provide that the Acquired Assets are sold to SPCP Group, LLC or, as part of the Auction, to a Third Party

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Bidder making a Higher and Better Offer.  Pursuant to the Asset Sale Transaction, the Asset Purchaser (either SPCP Group, LLC or a Third Party Bidder as determined by the Auction) will purchase the following Acquired Assets:

1.      FTDF's proportional interest in 44 different Loans for Cash consideration of $46 million, subject to certain adjustments; and

2.      USACM's post-Closing rights to service Loans pursuant to the Loan Servicing Agreements for the Loans and related personal property for Cash consideration based on the future (A) collection of servicing fees, (B) collection of default rate interest, and (C) other payments and obligations set forth in the Asset Purchase Agreement.

Except as expressly agreed to otherwise by the Debtors and the Asset Purchaser, the Acquired Assets will be sold free and clear of all liens, Claims, encumbrances, rights of third parties and interests.  The Confirmation Order shall constitute an Order pursuant to section 363(b) and (f) of the Bankruptcy Code authorizing the sale of the Estates' interests in the Acquired Assets to the Asset Purchaser.  The Confirmation Order shall provide that the Asset Purchaser is a good faith purchaser of assets within the meaning of section 363(m) of the Bankruptcy Code and has paid fair consideration and reasonable equivalent value of the Acquired Assets that are purchased.  Except as set forth in the Asset Purchase Agreement and the Plan, the Asset Purchaser shall have no liability for Claims or Equity Interests against the Debtors (whether or not currently known) based on its purchase of Acquired Assets.

After the Auction, the Asset Sale Transaction shall be approved in connection with Confirmation of the Plan.  The Allocated Net Sale Proceeds from the Asset Sale Transaction shall be distributed to FTDF and USACM Trust, respectively, on the Effective Date of the Plan.

**D.      Post-Effective Date Entities.**

**1.      The USACM Trust.**

The USACM Trust shall be governed and created pursuant to the Plan and the USACM Trust Agreement.  A copy of the proposed USACM Trust Agreement shall be included in the Plan Documents Supplement.  The USACM Trust shall have the discretion, subject to review by the USACM Trust Committee appointed in accordance with the USACM Trust Agreement, to retain

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    and compensate professionals, compensate the USACM Trustee, compensate the Debtors'

2    Professionals for any assistance of information requested of them by the USACM Trust, employ

3    staff or agents, object to Claims, realize assets, whether by suit, compromise, release or otherwise,

4    and take all actions reasonable to maximize the recovery to beneficiaries of the USACM Trust.

5    The USACM Trust Agreement shall provide for all expense reserves necessary for the USACM

6    Trust.

7              The USACM Committee will propose the Person to serve as the USACM Trustee, after

8    soliciting advice from and obtaining the consent of USACM and the other Committees, and will

9    provide all disclosures required respecting the Person pursuant to sections 1129(a)(4) and (a)(5) of

10   the Bankruptcy Code, not less than ten (10) days before the Confirmation Hearing. The USACM

11   Trustee shall be approved by the Court at the Confirmation Hearing.

12             The USACM Trust shall be funded with all assets of the USACM Estate not collected or

13   disposed of prior to the Effective Date, including Cash and noncash proceeds.  Assets of the

14   USACM Estate shall include the USACM Loans, the Prepaid Interest (including Prepaid Interest

15   collected by the Asset Purchaser post-Effective Date and including the DTDF Prepaid Interest,

16   subject to the objection of the DTDF Committee, which shall be determined by the Court if not

17   settled), the USACM Accounts (including USACM Estate's share of the IP $58 Million

18   Promissory Note), all USACM Litigation Claims, including without limitation the Non-Debtor

19   Insider Litigation, belonging to or assertable by the USACM Estate, the FTDF Litigation Claims

20   transferred to USACM pursuant to section E.2.j of Art. IV of the Plan, and all servicing and

21   related fees to be retained by USACM as set forth in the Asset Purchase Agreement and which

22   will be included in the Asset Sale Transaction to the Asset Purchaser.  The USACM Trust shall

23   receive its share of the Non-Debtor Insider Litigation of the USACM Estate and may, without

24   further order of the Court, enter into a joint prosecution or sharing agreement with Post-Effective

25   Date DTDF.  Pending Litigation shall be prosecuted or defended by the Asset Purchaser, as

26   appropriate, if the Asset Acquirer, in its sole discretion, agrees to do so in writing within ten (10)

27   Business Days of the Effective Date of the Plan.  If Asset Purchaser does not agree to prosecute or

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   defend the Pending Litigation, the Pending Litigation shall automatically transfer to the USACM

2   Trust, and USACM may, in its discretion, prosecute or defend the Pending Litigation.

3         On and after the Effective Date, pursuant to the Asset Purchase Agreement and the Plan,

4   the USACM Trust shall have or, if it does not have, be granted access to all databases, software,

5   documents, records and office equipment currently owned by, or currently in the possession or

6   control of, any of the Debtors, which, in the discretion of the USACM Trust, are deemed to be

7   necessary.  The foregoing shall include, but not be limited to, electronic copies (in a form that will

8   enable the USACM Trust to use and manipulate the data), all software and systems, all hardware,

9   all documents, all records (including reconstructed Loan ledgers and other documents created

10  during the Chapter 11 Cases), and all office equipment and all computers that are necessary or

11  make it convenient for the USACM Trust to administer or service any Loans, to object to Claims

12  against and Equity Interests in USACM, to prosecute or defend any litigation to which USACM,

13  the USACM Estate or the USACM Trust is a party, to administer and/or manage the USACM

14  Trust, and to make distributions to the beneficiaries of the USACM Trust.   Notwithstanding the

15  foregoing, as agreed in the Asset Purchase Agreement, the USACM Trust shall retain the original

16  relevant databases and servicing and reporting software.

17        The beneficiaries of the USACM Trust will be the holders of Allowed USACM Unsecured

18  Claims, including the Allowed Unremitted Principal Claims, the DTDF Unsecured Claim, the

19  Direct Lender Unsecured Claims, and the FTDF Unsecured Claim.  Distributions from the

20  USACM Trust shall be made directly to the holders of Allowed USACM Unsecured Claims,

21  including holders of Unremitted Principal Claims, holders of Allowed Direct Lender Unsecured

22  Claims and holders of Allowed Equity Interests in FTDF, except that distributions on account of

23  the Allowed DTDF Unsecured Claim shall be made to the Post-Effective Date DTDF, Pro Rata

24  based upon the Allowed amount of such Claims; provided, however, that distributions on account

25  of the Allowed FTDF Unsecured Claim shall be transferred to Post-Effective Date DTDF until

26  Post-Effective Date DTDF obtains the DTDF 85% Recovery and thereafter, distributions on

27  account of the FTDF Unsecured Claim shall be made directly to holders of Allowed Equity

28  Interests in FTDF.  There shall be no separate trusts or Post-Effective Date Entities for FTDF or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   the holders of Allowed Direct Lender General Unsecured Claims.  All costs of distribution

2   allocable to a particular group of beneficiaries shall be paid from such respective distributions in

3   accordance with the USACM Trust Agreement.

4       **2.      Post-Effective Date DTDF.**

5       Post-Effective Date DTDF shall be governed pursuant to the Plan and the DTDF Amended

6   Operating Agreement.  A copy of the DTDF Amended Operating Agreement shall be included in

7   the Plan Documents Supplement.  Allowed Equity Interests in DTDF shall survive the Effective

8   Date, and be the sole beneficiaries of Post-Effective Date DTDF.

9       The DTDF Amended Operating Agreement will modify the DTDF Operating Agreement

10  to include, but not be limited to, the elimination of the management provisions and fees relating to

11  USA Realty.  The DTDF Amended Operating Agreement will also include all disclosures required

12  under sections 1129(a)(4) and (a)(5) of the Bankruptcy Code.  Post-Effective Date DTDF, through

13  the DTDF Administrator, shall have the discretion, subject to review by the DTDF Post-Effective

14  Date Committee in accordance with the DTDF Amended Operating Agreement, to realize assets,

15  whether by suit, compromise, release or otherwise.  The DTDF Amended Operating Agreement

16  shall provide for all expense reserves necessary for Post-Effective Date DTDF.

17      The DTDF Committee will propose the Person to serve as the DTDF Administrator, after

18  advice and consent of DTDF, and will provide all disclosures required respecting the Person

19  pursuant to sections 1129(a)(4) and (a)(5) of the Bankruptcy Code, not less than ten (10) days

20  before the Confirmation Hearing.  The DTDF Administrator shall be appointed by the Court at the

21  Confirmation Hearing.

22      Post-Effective Date DTDF shall retain the DTDF Estate and shall be funded by and consist

23  of all assets of the DTDF Estate not collected or disposed of prior to the Effective Date, including

24  all Cash and noncash proceeds.  The assets of the DTDF Estate retained by Post-Effective Date

25  DTDF include the DTDF Loans (including but not limited to rights associated with the former

26  Epic and Sheraton Loans and the Loan Servicing Agreements for the Excluded DTDF Loans), the

27  FTDF Transferred Assets, all DTDF Litigation Claims, including without limitation the Non-

28  Debtor Insider Litigation, belonging to or assertable by the DTDF Estate, and the DTDF Estate's

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   share of the IP $58 Million Promissory Note.  Post-Effective Date DTDF shall retain its share of

2   the Non-Debtor Insider Litigation and may, without further order of the Court, enter into a joint

3   prosecution or sharing agreement with the USACM Trust.  Post-Effective Date DTDF shall also

4   be funded with Pro Rata distributions from the USACM Trust on account of the Allowed DTDF

5   Unsecured Claim.

6          On and after the Effective Date, pursuant to the Asset Purchase Agreement and the Plan,

7   Post-Effective Date DTDF shall have or, if it does not have, be granted access to all databases,

8   software, documents, records and office equipment currently owned by, or currently in the

9   possession or control of, any of the Debtors, which, in the discretion of Post-Effective Date

10  DTDF, are deemed to be necessary.  The foregoing shall include, but not be limited to, electronic

11  copies (in a form that will enable Post-Effective Date DTDF to use and manipulate the data), all

12  databases, all software and systems, all hardware, all documents and all records (including the

13  reconstructed Loan ledgers and other documents created during the Chapter 11 Cases), and all

14  office equipment and all computers that are necessary or make it convenient for Post-Effective

15  Date DTDF to collect upon and otherwise administer its retained Loans, to object to Claims

16  against and Equity Interests in DTDF and Post-Effective Date DTDF, to prosecute or defend any

17  litigation to which DTDF, the DTDF Estate or the Post-Effective Date DTDF is a party, to

18  administer and/or manage Post-Effective Date DTDF, and to make distributions to the holders of

19  Allowed Claims against and Equity Interests in DTDF and Post-Effective Date DTDF.

20  **E.      Intercompany Compromises.**

21          The Plan will effect the following intercompany compromises:

22          **1.      The USACM/Direct Lender Compromise.**

23          If the Plan is confirmed, all Direct Lenders will be bound to the compromise

24  provisions set forth herein, regardless of whether they vote to accept or reject the Plan, or Class A-

25  5 votes to accept or reject the Plan; all such objections must be made by objecting to Plan

26  confirmation.

27          **a.      *Release***: USACM releases all Claims against Direct Lenders, including but

28  not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of

prepetition accrued annual loan servicing fees due under the Loan Servicing Agreements but unpaid as of the Effective Date, but excluding all causes of action to recover principal or interest payments USACM paid in advance to the applicable Direct Lender(s) before the Petition Date.

   **b.**  ***Loan Servicing Agreements***:  All rights of USACM as servicer under the Loan Servicing Agreements transferred without modification pursuant to the Plan and the Asset Purchase Agreement shall be free and clear of all liens, Claims, interests, obligations and encumbrances whatsoever under sections 363 and 1123 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code.

   **c.**  ***Tax Reporting***:  USACM shall prepare and timely transmit all required Forms 1098 and 1099 for calendar year 2006 in respect of the Acquired Assets.

   **d.**  ***Prepaid Interest***: Claims for Prepaid Interest, offsets, or holdbacks from Direct Lenders under the Plan (whether collected from the Borrowers or the Direct Lenders) shall be property of the USACM Estate free and clear of all liens, Claims and interests, except as otherwise provided in the Plan.

     i.  Pre-Effective Date Prepaid Interest – Claims for Prepaid Interest, offsets, or holdbacks from Direct Lenders collected through the Effective Date are retained by USACM, and will be used to satisfy Allowed unclassified Claims and Allowed Class A-1, A-2 and A-3 Claims in accordance with the Plan, with any excess being contributed to the USACM Trust.

     ii.  Post-Effective Date Prepaid Interest – The Prepaid Interest shall be collected post-Effective Date through an assignment of Prepaid Interest to the USACM Trust, which shall survive the Effective Date, so that the Asset Purchaser or any substitute or subsequent servicer will continue to net Prepaid Interest sums due from Direct Lenders in accordance with the Plan and will collect Prepaid Interest from Borrowers, and remit those amounts to the USACM Trust, except as otherwise provided herein.

     iii.  Post-Effective Date Causes of Action – The statute of limitations for recovery of the Prepaid Interest as a fraudulent transfer shall be tolled for two (2)

years. Recovery of Prepaid Interest by USACM or the USACM Trust as a result of the payment of Prepaid Interest under the Plan via a pre-Effective Date or post-Effective Date netting shall be a complete defense to all Claims for recovery of Prepaid Interest, and such Claims may be brought in enforcement of the Plan settlement agreement, binding all Direct Lenders upon Plan Confirmation.

e.    *2% Holdback*:  From the 2% Holdback, Direct Lenders shall reimburse USACM (on a Pro Rata basis based upon unpaid principal Loan balance of those Direct Lenders with funds in the 2% Holdback) for Allowed Administrative Expense Claims of Professionals employed by the Direct Lenders Committee up to a maximum amount cap of $605,000.  In addition to the foregoing, USACM will also retain its contractual servicing fees due under the Loan Servicing Agreements.

f.    *Post-Effective Date Offsets*:  The Direct Lenders may not offset sums due post-Effective Date to the servicing agent, *i.e.,* the Asset Purchaser, for Claims of Direct Lenders against USACM.

g.    *Pre-Effective Date Offsets*:  The Direct Lenders may not offset pre-Effective Date accrued and unpaid servicing fees and sums under Paragraph 4 of the Loan Servicing Agreements (or any comparable paragraph that may be differently numbered) due to USACM against the Direct Lenders' Claims against USACM.

h.    *Alternative Dispute Resolution*:  There will be an Alternative Dispute Resolution option for objections to Direct Lender Unsecured Claims, objections to the Loan Servicing Fee Schedule, and any other litigation between Post-Effective Date DTDF and the USACM Trust.  The Alternative Dispute Resolution Agreement shall be Filed as part of the Direct Lender Supplement pursuant to section E of Art. I of the Plan.

2.    **The USACM/FTDF Compromise.**

a.    *FTDF Unremitted Principal Claim*:  The FTDF Unremitted Principal Claim shall be an Allowed General Unsecured Claim against USACM in the amount of $347,775 plus prepetition interest, if any.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1          **b**      *FTDF Unsecured Claim*: The FTDF Unsecured Claim against USACM is

2    the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted

3    Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM

4    Committee by no later than the date of the Confirmation Hearing, or if no agreement is reached by

5    such date, the amount determined by the Court after an evidentiary hearing between such

6    Committees; provided, however, that the USACM Committee and the FTDF Committee or, after

7    the Effective Date, the USACM Trust and the FTDF Committee, may agree at any time as to the

8    amount that represents the FTDF Unsecured Claim without further Court order by filing a notice

9    of such agreement with the Court; and provided further, however, that prior to the Effective Date,

10   the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and

11   the Direct Lender Committee regarding the issue.

12         **c.**     *FTDF Prepaid Interest*: The FTDF Prepaid Interest is $2,557,307 and has

13   been netted against the post-Petition Date FTDF collections.  The FTDF Prepaid Interest is being

14   held in the USACM collection account and, upon the Effective Date of the Plan, USACM shall be

15   permitted to retain the FTDF Prepaid Interest as an unencumbered asset of the USACM Estate.

16         **d.**     *FTDF Management Fee*: The FTDF management fee payable to USA

17   Realty, and then payable to USACM, of approximately $78,000 per month shall be waived in full

18   for both prepetition and postpetition periods, through the earlier of January 31, 2007, or the

19   Effective Date.  Any management fees paid by FTDF to USA Realty or USACM since the Petition

20   Date shall be applied to reduce any obligations of FTDF to USACM under the Plan, and any

21   remaining management fees shall be repaid by USACM to FTDF on the Effective Date.

22   Management fees from July 2006 until the Effective Date shall be deposited in the USA Realty

23   account and transferred to FTDF on the Effective Date.

24         **e.**     *FTDF Servicing Fee*: The FTDF Loan Servicing Agreement provides for

25   an "up to 3%" annual servicing fee.  FTDF shall be charged a 1% annual servicing fee for the

26   period of the Petition Date through June 30, 2006.  Commencing on July 1, 2006 and ending on

27   the earlier of (i) the Effective Date or (ii) January 31, 2007, FTDF shall be charged a 2.5% annual

28

54

loan servicing fee.  To the extent any prepetition servicing fees are outstanding, such prepetition servicing fees are waived in full by USACM.

**f.**    ***FTDF's Servicer Advances***:  FTDF shall pay its proportionate share of all Servicer Advances incurred by USACM prior to the Closing of the Asset Sale Transaction; provided, however, that if FTDF pays the FTDF Debtors' Professionals' Fee/Cost Allocation, FTDF shall not be responsible for reimbursing Servicer Advances incurred by the Debtors' Professionals, except, solely for Servicer Advances incurred by firms other than Ray Quinney & Nebeker P.C., Mesirow Interim Financial Management, LLC or Schwartzer & McPherson.  If USACM receives payment from any source for Servicer Advances that have been previously paid by FTDF (including proceeds from the sale of the respective secured real property), then USACM shall reimburse FTDF for such Servicer Advances paid by FTDF pursuant to this subsection.

**g.**    ***FTDF's Debtors' Professionals' Fee/Cost Allocation***:  FTDF's obligation for the Allowed Administrative Expense Claims of the Debtors' Professionals shall be limited to the FTDF's Debtors' Professionals' Fee/Cost Allocation through the earlier of (i) the Effective Date or (ii) January 31, 2007.

**h.**    ***January 31, 2007***:  In the event the Effective Date does not occur by January 31, 2007, the parties' settlement regarding FTDF's payment of servicing fees, Servicer Advances, the FTDF Management Fee, or the FTDF's Debtors' Professionals' Fees/Cost Allocation, as set forth in this Plan, shall no longer be enforceable as of February 1, 2007, and USACM and FTDF shall have reserved all of their rights with respect thereto for all periods after January 31, 2007, including the right of USACM to seek a Court order to compel FTDF's payment of such fees for all time periods after January 31, 2007.

**i.**    ***Overbid/Break-up Fee/Expense Reimbursement Allocation*** :  The Overbid Allocation shall be 85% to FTDF and 15% to USACM for any overbid consideration, and any incurred break-up fee or expense reimbursement obligation (as those terms are used in the Asset Purchase Agreement) shall be allocated in the same percentages, except as otherwise provided in the Stipulation memorializing the agreement between USACM and FTDF on the Overbid Allocation filed by the USACM Committee and the FTDF Committee with the Court, under seal,

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  and served on the Debtors as confidential information, no later than ten (10) days prior to the

2  Auction.

3  　　　　　　**j.**　　**Claims Transfer:** On the Effective Date, FTDF will transfer all of the

4  FTDF Litigation Claims, except the non-assignable FTDF Litigation Claims, to the USACM

5  Trust.  The USACM Trust (and not FTDF) shall bear the costs of pursuing a recovery on FTDF

6  Litigation Claims transferred to the USACM Trust pursuant to this provision.

7  　　　　　**3.**　　**The FTDF/DTDF Compromise.**

8  　　　　　　**a.**　　**FTDF Payment:** On the Effective Date, FTDF shall pay the FTDF Payment

9  to DTDF.

10  　　　　　　**b.**　　**DTDF Repayment of FTDF Payment**:  Upon achieving the FTDF Base

11  Recovery Percentage (not as adjusted below), Post-Effective Date DTDF shall repay $500,000 of

12  the FTDF Payment.  On each anniversary of the Effective Date, a further calculation shall be

13  performed by increasing the dollar amount of the recovery that Post-Effective Date DTDF must

14  obtain in order for Post-Effective Date DTDF to achieve the Adjusted FTDF Base Recovery

15  Percentage.  Only upon achieving the Adjusted FTDF Base Recovery Percentage shall Post-

16  Effective Date DTDF repay the balance of the FTDF Payment.

17  　　　　　　**c.**　　**Asset and Claims Transfer**: On the Effective Date, FTDF will transfer the

18  FTDF Transferred Assets to Post-Effective Date DTDF.  Post-Effective Date DTDF (and not

19  FTDF) shall bear the costs of pursuing a recovery on FTDF Transferred Assets.

20  　　　　　　**d.**　　**FTDF Unsecured Claim Subordination**:  FTDF will transfer its Pro Rata

21  Share of the USACM Trust on account of the FTDF Unsecured Claim to DTDF until the Allowed

22  Equity Interests in DTDF receive the DTDF 85% Recovery.  After the DTDF 85% Recovery is

23  obtained, FTDF will retain its Pro Rata Share of the USACM Trust on account of the FTDF

24  Unsecured Claim.

25  　　　　　**4.**　　**The FTDF/USA Realty Compromise.**

26  　　　　　　**a.**　　**Management Fee:**  USA Realty releases FTDF from all management fees

27  accrued, but unpaid, as of the Petition Date and agrees (i) to the waiver of postpetition

28  management fees paid by FTDF to USA Realty and/or USACM, and (ii) to the repayment or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    release of those waived postpetition management fees paid by FTDF, or held back from

2    distributions to FTDF by USACM, for all periods after the Petition Date.

3          **b.**     ***Subordinated Claim:*** FTDF shall subordinate its Claim against USA

4    Realty to the payment of all other Allowed Claims against USA Realty, except for the

5    subordinated part of the Allowed Claim of DTDF, which shall be paid pari passu with the

6    Subordinated Claim of FTDF.

7          **5.**     **The DTDF/USA Realty Compromise.**

8          **a.**     ***Subordinated Claim:*** DTDF shall subordinate any Allowed Claim it has

9    against USA Realty to the payment of all other Allowed Claims against USA Realty except the

10   subordinated Claim of FTDF against USA Realty to the extent that, and in the amount that, the

11   Allowed Claim of DTDF against USA Realty exceeds $50 million. Such Subordinated Claim of

12   DTDF against USA Realty shall be paid pari passu with the Subordinated Claim of FTDF against

13   the USA Realty Estate.

14         **b.**     ***Litigation Claims:*** In exchange for the partial subordination of the DTDF

15   Claim, Litigation Claims held by USA Realty, including without limitation, the Avoidance

16   Actions and the Non-Debtor Litigation, shall be preserved and transferred to Post-Effective Date

17   DTDF, which may be pursued at the discretion of, and at the sole cost of, the Post-Effective Date

18   DTDF.

19         **c.**     ***Management Fees:*** USA Realty releases DTDF from all management fees

20   accrued, but unpaid, as of the Petition Date. With respect to management fees paid postpetition to

21   USACM through USA Realty, or collected and held by USACM postpetition, the payment,

22   waiver, refund or other treatment of those management fees shall be as mutually agreed upon by

23   the USACM Committee and the DTDF Committee or, in the absence of agreement, will be

24   determined by the Court after evidence submitted by both Committees.

25   **F.**     **Loan Distributions And Loan Servicing Agreements.**

26         After the Effective Date, the Direct Lenders and Post-Effective Date DTDF shall be

27   entitled to distributions from the Direct Lender Loans in accordance with the related Loan

28   Servicing Agreements and applicable Nevada law, by the Asset Purchaser, as the third party

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   servicer.  After the Effective Date, the Direct Lenders are obligated to comply with the terms of

2   the applicable Loan Servicing Agreements including the payment of fees as set forth on the Loan

3   Servicing Fee Schedule included in the Direct Lender Supplement subject to the resolution of any

4   disputes regarding the same under the Alternative Dispute Resolution option.

5   **G.    Preservation Of Rights Of Action And Defenses.**

6           Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are

7   expressly and specifically released in connection with the Plan or in any settlement agreement

8   approved during the Chapter 11 Cases, (1) any and all rights, Claims, causes of action, defenses,

9   and counterclaims accruing to or assertable by the Debtors or their Estates, including without

10  limitation any and all Litigation Claims, the Non-Debtor Insider Litigation, Claims related to the

11  Undistributed Cash and Claims for Prepaid Interest shall remain assets of such Estates and be

12  assertable by the Debtors or such Estates, and to the extent applicable, be transferred to and

13  assertable by any respective Post-Effective Date Entity, whether or not litigation relating thereto is

14  pending on the Effective Date, and whether or not any such rights, Claims, causes of action,

15  defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the Plan or

16  Disclosure Statement, or any other document Filed with the Court, and (2) neither the Debtors nor

17  the Post-Effective Date Entities waive, relinquish, or abandon (nor shall they be estopped or

18  otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim

19  that constitutes property of such Debtor's Estate or is assertable by such Estate: (A) whether or not

20  such right, Claim, cause of action, defense, or counterclaim has been listed or referred to in the

21  Schedules, the Plan, the Disclosure Statement, or any other document Filed with the Court,

22  (B) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known

23  to the Debtors, and (C) whether or not a defendant in any litigation relating to such right, Claim,

24  cause of action, defense, or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a

25  notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against

26  the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting

27  the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity,

28  including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel,

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

58

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a

2   right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action,

3   defense, or counterclaim, in the Schedules, the Plan, the Disclosure Statement, or any other

4   document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the

5   Debtors or the Post-Effective Date Entities' rights to commence, prosecute, defend against, settle,

6   and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the

7   Debtors or the Estates has or may have as of the Confirmation Date.  The Debtors or the Post-

8   Effective Date Entities may commence, prosecute, defend against, recover on account of, and

9   settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in

10  accordance with what is in the best interests, and for the benefit, of the Debtors or the Post-

11  Effective Date Entities.

12  **H.      Nondischarge Of Debtors And Injunction.**

13          **This Plan provides for an injunction of certain actions against the Debtors.  Holders**

14  **of Claims against and Equity Interest in the Debtors may not pursue (1) property of the**

15  **Estates other than through the Claims and Equity Interests allowance process; or (2) the**

16  **Debtors or their agents.**

17          **Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall**

18  **not discharge Claims against or Equity Interests in the Debtors.  However, no holder of a**

19  **Claim or Equity Interest may receive any payment from or seek recourse against any assets**

20  **that are distributed or to be distributed under the Plan, except for those assets required to**

21  **be distributed to such holder as expressly provided for in the Plan.  As of the Effective Date,**

22  **all Entities are precluded from asserting against any assets that are distributed or to be**

23  **distributed under the Plan any Claims, rights, causes of action, liabilities or interests based**

24  **upon any act or omission, transaction or other activity of any kind or nature that occurred**

25  **prior to the Effective Date, other than as expressly provided in the Plan or Confirmation**

26  **Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or**

27  **Equity Interest and regardless of whether such an Entity has voted to accept the Plan.**

28

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability or Equity Interest against or in the Debtors that would be discharged upon confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Equity Interest or right against assets or proceeds thereof that are to be distributed under the Plan, other than to enforce any right to a distribution with respect to such assets or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any assets to be distributed to creditors under the Plan, other than as permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets to be distributed under the Plan, other than as permitted by the Plan, provided that nothing contained herein shall limit the rights of any distributee under the Plan from taking any actions in respect of property distributed or to be distributed to it under the Plan.

## V.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption.

In the Schedule of Executory Contracts and Unexpired Leases Filed and served in accordance with section D of Art. I of the Plan, the Debtors that shall set forth the executory contracts and unexpired leases that are to be assumed or assumed and assigned effective upon the Effective Date, and shall specify the Cure Payment, if any, that the Debtors believe must be tendered on the Effective Date, in order to provide compensation in accordance with section 365(b)(1)(A) and (B) of the Bankruptcy Code.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Objections to the assumption or the assumption and assignment of any executory contracts or unexpired leases listed in the Schedule of Executory Contracts and Unexpired Leases or to any proposed Cure Payment amounts set forth in that Schedule must be Filed and served on the Debtors and the Committees on or before the date for filing objections to the Plan, and no other objections to the assumption and/or assumption and assignment of such executory contracts or unexpired leases or to such Cure Payment amounts shall be timely. All objections Filed and served in accordance with this provision must be supported by a declaration specifying the objection to the assumption and/or assignment and/or to the amounts allegedly owing under sections 365(b)(1)(A) and (B) of the Bankruptcy Code. Failure to File and serve an objection in accordance with this subsection shall result in the determination that the assumption or assumption and assignment is proper and that the tender of the Cure Payment, as specified in the Schedule of Executory Contracts and Unexpired Leases shall provide, on the Effective Date, cure and compensation for any and all defaults and unpaid obligations under such assumed executory contracts or unexpired leases. The Debtors reserve the right to respond to and contest any objection filed by any party to an executory contract or unexpired lease and, as part of the Confirmation Hearing, to request a determination from the Court as to the right of the Debtors to assume or assume and assign such executory contract or unexpired lease and/or the amount of the Cure Payment. If a party to any executory contract or unexpired lease establishes that the Cure Payment is greater than the amount listed on the Schedule of Executory Contracts and Unexpired Leases, the Debtors reserve the right under section 365(b) of the Bankruptcy Code to reject such executory contract or unexpired lease, or to assume such executory contract or unexpired lease, at the Debtors' option.

Up to and until one (1) day prior to the Confirmation Hearing, Entry of the Confirmation Order shall constitute approval of the Debtors may delete any executory contract or unexpired lease from the Schedule of Executory Contracts and Unexpired Leases by Filing an amended Schedule of Executory Contracts and Unexpired Leases and serving that amended Schedule on the affected non-Debtor party to the executory contract or unexpired lease.

1   Entry of the Confirmation Order by the Court any assumptions and/or any assumptions and

2   assignments made hereunder pursuant to sections 365(a) and 365(f) of the Bankruptcy Code.  All

3   Cure Payments which may be required by Bankruptcy Code section 365(b)(1) shall be made on

4   the Effective Date, or as soon thereafter as is practicable, or as may otherwise be agreed by the

5   parties to any particular executory contract or unexpired lease.

6   **B.    Rejection.**

7   **    1.    General.**

8   Effective upon the Effective Date, the Debtors hereby reject all executory contracts and

9   unexpired leases that exist between the Debtors and any other Entities which have not previously

10  been rejected, except the Debtors do not reject those executory contracts and unexpired leases

11  (a) which are listed in the Schedule of Executory Contracts and Unexpired Leases referred to in

12  section A above and assumed or assumed and assigned on the Effective Date, or (b) which are or

13  have been specifically assumed, or assumed and assigned, by the Debtors with the approval of the

14  Court by separate proceeding in the Chapter 11 Cases.

15  All Allowed Claims arising from the rejection of executory contracts or unexpired leases,

16  whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims in

17  Class A-4 (USACM), Class B-4 (FTDF), Class C-4 (DTDF), Class D-4 (USA Realty) and

18  Class E-4 (USA Securities), respectively.

19  **    2.    USACM Management And/Or Operating Agreements.**

20  USACM is a party to various management and/or operating agreements with non-Debtor

21  Entities.  Except as to the management and/or operating agreements with FTDF and DTDF which

22  are dealt with separately under this Plan, as part of the Schedule of Executory Contracts and

23  Unexpired Leases referred to in section A above, USACM shall designate all such management

24  and/or operating agreements that are to be rejected, assumed or assumed and assigned under the

25  Plan.  Notwithstanding the rejection of any such management and/or operating agreement,

26  USACM reserves the right to claim all fees or other amounts owing USACM from the period prior

27  to the date of the rejection.  All Allowed Claims arising from USACM's rejection of such

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

executory contracts are General Unsecured Claims of USACM, and shall be treated under Class A-4 of the Plan.

**3.    Claims Bar Date.**

All holders of Claims arising from the rejection of executory contracts or unexpired leases, whether rejected under the Plan or by separate proceeding, must File a request for payment in accordance with the Plan to have their Claims treated as Allowed Claims hereunder. A request for payment of any and all Claims allegedly arising from a Debtor's rejection of executory contracts or unexpired leases, whether rejected under the Plan or by separate proceeding, must be Filed on or before such date as the Court has fixed or may fix by express order; provided, however, that if the Court has not entered an order fixing such a date prior to the Confirmation Hearing, all such requests for payment must be made on or before the first Business Day which is thirty (30) calendar days after the date of service of notice of entry of the Confirmation Order.  Failure to File such a request for payment prior to the time set forth herein shall be forever barred from asserting such Claims against the Debtors, the Estates, the Post-Effective Date Entities and/or any other Entity or any of their respective property, and the Debtors, the Estates, and the Post-Effective Date Entities, to the extent applicable, shall be discharged of any obligation on such Claim or any other Claim related such Claim.

**VI.**

**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

**A.    Conditions To Confirmation.**

Confirmation of the Plan shall not occur unless and until each of the conditions set forth below has been satisfied or duly waived by the Debtors.

1.    The USACM Trust Agreement and DTDF Amended Operating Agreement have been Filed in form and substance acceptable to the Court, USACM and DTDF, respectively.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2.      The Plan is consistent with the terms of the Asset Purchase Agreement, except as may be otherwise agreed to by the Asset Purchaser.

3.      The Confirmation Order is in a form and substance acceptable to the Debtors and the Asset Purchaser.

4.      The Court shall have entered the Confirmation Order.

**B.      Conditions To Effective Date.**

The Effective Date of the Plan shall not occur unless and until each of the conditions set forth below has been satisfied or duly waived by the Debtors.

1.      The Confirmation Order has been entered by the Court in a form and substance reasonably satisfactory to the Debtors, and the same is a Final Order.

2.      All conditions precedent to the Closing of the Asset Sale Transaction have been satisfied or waived by the appropriate party and Asset Purchaser is prepared to, and does, close the Asset Sale Transaction on the Effective Date.

3.      The USACM Trust Agreement and the DTDF Amended Operating Agreement have been executed and approved by the Court, and there is sufficient Cash available to fund the Post-Effective Date Entities in accordance with the Plan in the amount necessary to pay all Claims that must be paid on the Effective Date.

**C.      Waiver Of Conditions.**

Except to the extent that a waiver would constitute a breach under the Asset Purchase Agreement or any substantially similar agreement with the Asset Purchaser, the Debtors may waive any of the above conditions to the Effective Date, in whole or in part and in their sole and absolute discretion, by Filing a written waiver.  The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise thereto.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.      Failure To Satisfy Conditions.**

The Effective Date must occur on or before the later of: (1) February 16, 2007, or (2) such other date as may be agreed to between the Asset Purchaser and the Debtors or which is

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  established by the Debtors, with the approval of the Court, after notice and a hearing.  If the

2  Effective Date does not timely occur, the Confirmation Order shall automatically be vacated.  If

3  the Confirmation Order is vacated, the Plan and the Confirmation Order shall be deemed null and

4  void, of no force or effect and shall not be used by any party for any purpose and nothing in the

5  Plan or the Confirmation Order shall prejudice or constitute a waiver or release of any right, Claim

6  or remedy by or against the Debtors or any other party.

7

8                                                   **VII.**

9                              **DISTRIBUTION OF CONSIDERATION**

10

11  **A.      Objections To Claims.**

12          **1.      Deadlines.**

13          Unless otherwise extended by the Court, objections to the allowance of Claims and Equity

14  Interests shall be Filed and served upon the Entities asserting such Claims or Equity Interests as

15  follows: (A) for any and all Claims and Equity Interests to which the General Bar Date applies,

16  ninety (90) days after the Effective Date; (B) for any and all Claims to which the Administrative

17  Claims Bar Date or the Professionals Administrative Bar Date applies, thirty (30) days after the

18  expiration of the respective Bar Date; and (C) for any and all Claims to which the Bar Date

19  applicable under section B.3 of Art. V of the Plan applies, thirty (30) days after the expiration of

20  that Bar Date.

21          **2.      Authority.**

22          The Post-Effective Date Entities, (or, if there are no Post-Effective Date Entities for the

23  USACM and DTDF Estates, USACM and DTDF)the FTDF Committee (to the extent it is still in

24  existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of

25  the USA Realty Estate and USA Securities on behalf of the USA Securities Estate,  shall be

26  responsible for Filing objections to any and all Claims and Equity Interests that are Disputed

27  Claims or Disputed Equity Interests asserted against its Estate.  The Post-Effective Date Entities

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   (of, if there are not Post-Effective Date Entities for the USACM and DTDF Estates, USACM and

2   DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and

3   on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA

4   Securities on behalf of the USA Securities Estate have the authority to settle and compromise any

5   objection to a Disputed Claim or Disputed Equity Interest, if appropriate, without further order of

6   the Court, and they may assert any and all Claims, rights of action, causes of action, counterclaims

7   and defenses held by their respective Estates.  The Estates, including the Post-Effective Date

8   Entities, may, but shall not be required to, set off or recoup against any Claim or Equity Interest

9   and the distributions to made pursuant to the Plan in respect of such Claim or Equity Interest, any

10  counterclaims, setoffs, or recoupment of any nature whatsoever that the Estates may have against

11  the holder of the Claim or Equity Interest, but neither the failure to do so nor the allowance of any

12  Claim or Equity Interest shall constitute a waiver or release by the Estates or the Post-Effective

13  Date Entities of any such Claim, cause of action, setoff or recoupment.

14  **B.    Disputed Claims And Equity Interests—Cash Reserves.**

15      **1.    General.**

16          On the Effective Date, no distributions shall be made unless a Claim or Equity Interest is

17  an Allowed Claim or Allowed Equity Interest on the Effective Date. Except as may otherwise be

18  agreed with respect to any Disputed Claim or Disputed Equity Interest, no payment or distribution

19  will thereafter be made with respect to all or any portion of a Disputed Claim or Equity Interest

20  until such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest.  Payments

21  and distributions to each holder of a Disputed Claim or Equity Interest (to the extent that such

22  Claim or Equity Interest, or any portion thereof, ultimately becomes an Allowed Claim or

23  Allowed Equity Interest) must be made in accordance with the Plan.

24      **2.    Establishment Of Cash Reserves.**

25          Prior to making any distribution on Allowed Claims and Equity Interests, the Post-

26  Effective Date Entities (or, if there are no Post-Effective Date Entities for the USACM and DTDF

27  Estates, USACM and DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF

28  (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

66

1  Estate and USA Securities on behalf of the USA Securities Estate shall establish a Cash reserve

2  for each Disputed Claim and Equity Interest, including unclassified Claims.  Except as provided

3  below, the Cash reserve for a Disputed Claim or Equity Interest shall be equal the amount set forth

4  in the proof of Claim or Equity Interest, or if no proof of Claim or Equity Interest has been Filed,

5  the amount set forth for the Claim or Equity Interest on the Schedules.

6         The Debtors (to the extent applicable), the Post-Effective Date Entities, and the FTDF

7  Committee (to the extent not dissolved) are authorized to File a motion seeking an Order setting a

8  Cash reserve in an amount different than as provided in a proof of Claim or Equity Interest, or in

9  the Schedules.  So long as such motion is Filed prior to the making of a distribution, no Cash

10  reserve need be made for the Claims or Equity Interests that are the subject of such motion, until

11  the movant receives a Final Order on the motion, unless otherwise ordered by the Court.

12         **3.     Estimation.**

13         As to any Disputed Claim, the Post-Effective Date Entities, or the Debtors, to the extent

14  applicable, may request in their sole discretion that the Court estimate such Claim  pursuant to

15  section 502(c) of the Bankruptcy Code, and set a Cash reserve based on that estimation.

16         **4.     Distribution Upon Allowance.**

17         Within five (5) Business Days of a Disputed Claim or Disputed Equity Interest becoming

18  an Allowed Claim or Equity Interest, the holder of such Claim or Interest shall be paid in

19  accordance with the Plan from the Cash reserve.  The amount of Cash released from Cash reserve

20  to make such a distribution shall be calculated on a Pro Rata basis, so that the holder of the newly

21  Allowed Claim or Equity Interest receives a distribution equal to the total percentage distributions

22  made prior to the date that its Claim or Equity Interest was Allowed to the holders of other

23  Allowed Claims or Allowed Equity Interests in the same Class.

24         **5.     Release Of Cash Reserves.**

25         If a Disputed Claim or Disputed Equity Interest, or any portion thereof, is disallowed, the

26  Cash reserve shall be released for distribution to holders of Allowed Claims and Allowed Equity

27  Interests in accordance with the Plan.  If a Disputed Claim or Disputed Equity Interest, or any

28  portion thereof becomes an Allowed Claim or an Allowed Equity Interest in an amount that is less

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

67

1    than the Cash reserve for such Claim or Equity Interest, the excess Cash reserve related to such

2    Claim or Equity Interest shall be released for distribution to holders of Allowed Claims and

3    Allowed Equity Interests in accordance with the Plan.

4    **C.    Undeliverable Or Returned Distributions.**

5    If (1) the Post-Effective Date Entities shall be unable, at the time that a distribution to

6    holders of Allowed Claims or Allowed Equity Interests is to be made under this Plan, to deliver

7    the portion of such distribution due a holder of an Allowed Claim or Allowed Equity Interest, (2)

8    any amount paid to the holder of an Allowed Claim or Allowed Equity Interest is returned as

9    undeliverable and the Post-Effective Date Entity is unable, with reasonable effort, to ascertain a

10    correct address for the holder entitled thereto within six (6) months of its return, or (3) any check

11    distributed in payment of an Allowed Claim or Allowed Equity Interest is neither returned nor

12    negotiated within six (6) months of the date distributed, then, in every such case, the Allowed

13    Claim or Allowed Equity Interest shall be deemed reduced to zero in amount and the holder

14    thereof shall have no further right to payment against or distribution from the Debtors, the Estates

15    or any Post-Effective Date Entities.  The Cash that, but for this section, would have been payable

16    to the holders of such Allowed Claims or Allowed Equity Interests shall, to the extent applicable,

17    revert to the Post-Effective Date Entities, and will be available for application or distribution in

18    accordance with the terms of the Plan.

19    For purposes of this subsection, any undeliverable or returned distributions made by

20    FTDF, USA Realty and USA Securities, which Estates will have no Post-Effective Date Entities

21    to act on their behalf, shall be handled on behalf of those Debtors and their respective Estates by

22    the USACM Trust.

23    **D.    De Minimis Distributions.**

24    No Cash payment of less than five (5) dollars shall be made by the Disbursing Agent for

25    each Estate.  Any Cash payment of less than five (5) dollars shall be held by the Disbursing Agent

26    of the relevant Estate, until a subsequent distribution, if any, results in an aggregate Cash payment

27    of over five (5) dollars.  To the extent that a final distribution would require a distribution of less

28    than five (5) dollars to a holder of an Allowed Claim against or Allowed Equity Interest in a

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Debtor, such amount shall be deemed forfeited, and shall be redistributed to holders of Allowed

2   Claims against or Allowed Equity Interests in the Debtor who are to receive a final distribution in

3   excess of five (5) dollars on account of their Allowed Claim or Allowed Equity Interest.  If, in the

4   sole discretion of the Disbursing Agent, excess Cash exists at the time of a final distribution that is

5   so de minimis in amount that cannot be reasonably redistributed to the holders of Allowed Claims

6   and Allowed Equity Interests, the Disbursing Agent deposit such Cash in the unclaimed funds

7   account of the Court.

8   **E.    Disbursing Agent.**

9          **1.    Disbursing Agent For FTDF, USA Realty And USA Securities Estates.**

10          In the Chapter 11 Cases of FTDF, USA Securities and USA Realty, the Debtors shall act

11  as Disbursing Agents under the Plan for their respective Estates and shall make all distributions

12  required under the Plan.  At any time after thirty (30) days following the Effective Date, such

13  Debtors may request, upon agreement between the Debtors and the USACM Trust, that all future

14  distributions of their respective Estates be handled by the Disbursing Agent for the USACM Trust.

15          **2.    Disbursing Agent USACM And DTDF Estates.**

16          In the case of USACM and DTDF, the Asset Purchase Agreement and this Plan, FTDF,

17  USA Securities and USA Realty shall have copies of or access to all databases, software,

18  documents and records of, or in the possession or control of, any of the Debtors, as may be

19  necessary or appropriate in the wind down and dissolution of FTDF, USA Securities and USA

20  Realty, including as necessary or appropriate, all databases, software, documents and records

21  necessary to object to and make distributions to Claims and Equity Interest, as Allowed, against

22  FTDF, USA Securities and USA Realty.  The Post-Effective Date Entities shall act as Disbursing

23  Agents under the Plan for the Estates of USACM and DTDF, and shall make all distributions

24  required under the Plan.  Any Disbursing Agent may employ or contract with other Entities to

25  assist in or perform any distribution of property.

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3.      **Bond.**

Each Disbursing Agent shall serve without the posting of a bond, unless otherwise required by the Court, or determined by FTDF, USA Securities, USA Realty or the Post-Effective Date Entities to be necessary.

4.      **Compensation.**

Whether the Disbursing Agents make distributions under the Plan themselves or they employ a third-party Entity to act on their behalf, the Disbursing Agents shall receive, without the need for Court approval, reasonable compensation for services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the relevant Estate or Post-Effective Date Entities on terms agreed to with the Post-Effective Date Entities (or, if there are no Post-Effective Date Entities for the USACM and DTDF Estates, USACM and DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA Securities on behalf of the USA Securities Estate.

**F.      Manner Of Payment Under The Plan.**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the applicable Disbursing Agent or by wire transfer from a domestic bank, at the option of such Disbursing Agent.

**G.      Delivery Of Distributions.**

Except as provided in section C above for holders of unclaimed distributions, distributions to holders of Allowed Claims and Allowed Equity Interests shall be made by mail as follows:  (1) at the addresses set forth on the respective proofs of Claim or Equity Interest by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Equity Interest; or (3) at the address reflected on the Schedules if no proof of Claim or Equity Interest is Filed and the Disbursing Agent has not received a written notice of a change of address.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**H.      Compliance With Tax Requirements.**

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**I.      Old Instruments And Securities; Liens.**

**1.      Rights Of Persons Holding Instruments And Securities.**

Except as otherwise provided herein, as of the Effective Date, and whether or not surrendered by the holder thereof, all existing instruments and securities evidencing any Claims against or Equity Interests in the Debtors shall be deemed automatically cancelled and deemed void and of no further force or effect, without any further action on the part of any Person, and any Claims or Equity Interests under or evidenced by any instruments or securities shall be deemed discharged.  Notwithstanding the foregoing, the Equity Interests in DTDF shall survive the Effective Date and shall not be cancelled or discharged until the completion of the dissolution of DTDF as provided for in the Plan and the DTDF Amended Operating Agreement.

**2.      Cancellation Of Liens.**

Except as otherwise provided in the Plan or as necessary to evidence or secure the Loans, any lien securing any Secured Claim, shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such Person and to take such actions as may be requested by the Debtors or the Post-Effective Date Entities to evidence the release of such lien, including, without limitation, the execution, delivery and filing or recording of such releases as may be requested by the respective Debtors or Post-Effective Date Entities at the sole expense of such Post-Effective Date Entities or Estates.

**J.      Dates Of Distribution.**

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after the Effective Date and, in any event, within thirty (30) days after the Effective Date.  Unless otherwise agreed by the applicable parties, any distribution required to be made upon a Disputed Claim or Disputed Equity Interest that becomes an Allowed Claim or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Allowed Equity Interest shall be deemed timely made if made within five (5) Business Days of the

2  Disputed Claim or Disputed Equity Interest or any portion thereof becoming an Allowed Claim or

3  Allowed Equity Interest.

4

5                                        **VIII.**

6                          **MISCELLANEOUS PROVISIONS**

7

8  **A.      Limitation Of Liability And Releases.**

9         **1.      Limitation Of Liability.**

10         Except as otherwise expressly provided in the Plan, on and after the Effective Date, none

11  of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor

12  any of their employees, officers, directors, agents, or representatives, nor any Professionals

13  employed by any of them, shall have or incur any liability to any Entity for any authorized act

14  taken or authorized omission made in good faith in connection with or related to the Chapter 11

15  Cases or the Estates, including objections to or estimations of Claims, disposition of assets, or

16  formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any

17  contract, instrument, release, or other agreement or document created in connection with the Plan.

18         Consistent with section 1125(e) of the Bankruptcy Code, the Entities that have solicited

19  acceptances or rejections of the Plan and/or that have participated in the offer, issuance, sale, or

20  purchase of securities offered or sold under the Plan, in good faith and in compliance with the

21  applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or

22  participation, for violation of any applicable law, rule, or regulation governing the solicitation of

23  acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

24         **2.      DTDF/FTDF Releases.**

25         As of the Effective Date, in consideration for the obligations, subordination, modifications

26  of rights and accommodations of FTDF, and the FTDF Estate, and except as otherwise expressly

27  provided under the Plan, DTDF, the DTDF Estate and Post-Effective Date DTDF, on their own

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, including any recharacterization, or substantive consolidation causes of action, or any other matter which DTDF, the DTDF Estate, or Post-Effective Date DTDF or any Person or Entity claiming by, from, through, or under any of DTDF, the DTDF Estate, or Post-Effective Date DTDF ever had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

As of the Effective Date, in consideration for the obligations, subordination, modifications of rights and accommodations of DTDF and the DTDF Estate, and except as otherwise expressly provided under the Plan, FTDF and the FTDF Estate, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to DTDF, the DTDF Estate, the DTDF Chapter 11 Case, including any recharacterization, or substantive consolidation causes of action, or any other matter which FTDF, the FTDF Estate, or any Person or Entity claiming by, from, through, or under any of FTDF or the FTDF Estate ever had, now has, or hereafter can, shall, or may have against DTDF or the DTDF Estate.

73

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3.     **FTDF/USACM Releases.**

As of the Effective Date, in consideration for the obligations, modifications of rights and accommodations of FTDF and the FTDF Estate, and except as otherwise provided under the Plan and, in particular the compromise between the FTDF and the FTDF Estate, on the one hand, and USACM, USACM Estate and the USACM Trust, on the other hand, USACM, the USACM Estate, and the USACM Trust, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, or any other matter which USACM, the USACM Estate, or the USACM Trust or any Person or Entity claiming by, from, through, or under any of USACM, the USACM Estate, or the USACM Trust ever had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

As of the Effective Date, in consideration for the obligations, modifications of rights and accommodations of USACM and the USACM Estate and except as otherwise expressly provided in the Plan, in particular the compromise between USACM, the USACM Estate and the USACM Trust, on the one hand, and FTDF and the FTDF Estate, on the other hand, FTDF and the FTDF Estate, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights

74

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent

or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or

otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or

in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to

the Effective Date, including, without limitation, in any way relating to USACM, the USACM

Estate, the USACM Chapter 11 Case, or any other matter which FTDF, the FTDF Estate, or any

Person or Entity claiming by, from, through, or under any of FTDF or the FTDF Estate ever had,

now has, or hereafter can, shall, or may have against USACM or the USACM Estate.

     **4.**     **Debtor Releasors/Direct Lenders Releases.**

As of the Effective Date, except for the objections to the allowance of the Direct Lender

Unsecured Claims and as otherwise expressly provided in the Plan, in consideration for the

obligations, subordination, modifications of rights and accommodations of the Direct Lenders

pursuant to the settlements embodied in the Plan, USACM, FTDF, their Estates and the USACM

Trust, on their own behalf (collectively, the "Debtor Releasors"), shall be deemed to forever

release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions,

causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies,

agreements, promises and rights whatsoever, whenever arising, whether known or unknown,

suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured,

in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter

from the beginning of time to the Effective Date, including, without limitation, in any way relating

to the Direct Lenders, including any surcharge, recharacterization, or substantive consolidation

causes of action, or any other matter which any of the Debtor Releasors or any Person or Entity

claiming by, from, through, or under any of the Debtor Releasors ever had, now has, or hereafter

can, shall, or may have against the Direct Lenders.  Notwithstanding the foregoing, nothing herein

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   shall constitute a release of any obligations under any Loan Servicing Agreement as to which

2   USACM's servicing rights are being transferred to the Asset Purchaser.

3          As of the Effective Date, in consideration for the obligations, subordination, modifications

4   of rights and accommodations of the Debtor Releasors and except as otherwise expressly provided

5   under the Plan, the Direct Lenders, pursuant to the settlements embodied in the Plan, on their own

6   behalf (the "Direct Lender Releasors"), shall be deemed to forever release, waive and discharge

7   any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of

8   money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights

9   whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent

10  or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or

11  otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or

12  in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to

13  the Effective Date, including, without limitation, in any way relating to the Debtor Releasors, the

14  Debtor Releasors' Estates, the USACM and FTDF Chapter 11 Cases, including any causes of

15  action, or any other matter which any of the Direct Lender Releasors or any Person or Entity

16  claiming by, from, through, or under any of the Direct Lender Releasors ever had, now has, or

17  hereafter can, shall, or may have against the Debtor Releasors.

18         **5.     FTDF/USA Realty Releases.**

19         Except as otherwise expressly provided in the Plan, as of the Effective Date, in

20  consideration for the obligations, subordination, modifications of rights and

21  accommodations of FTDF and the FTDF Estate, USA Realty and the USA Realty Estate,

22  on their own behalf, shall be deemed to forever release, waive and discharge any and all

23  Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of

24  money, accounts, reckonings, covenants, contracts, controversies, agreements, promises

25  and rights whatsoever, whenever arising, whether known or unknown, suspected or

26  unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law,

27  equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

28

76

connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, including all management fees accrued, but unpaid, as of the Petition Date, all postpetition management fees, or any other matter which USA Realty, the USA Realty Estate, or any Person or Entity claiming by, from, through, or under any of USA Realty or USA Realty Estate ever had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

Except as otherwise expressly provided in the Plan, as of the Effective Date, in consideration for the obligations, subordination, modifications of rights and accommodations of USA Realty and the USA Realty Estate, FTDF and the FTDF Estate on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to USA Realty, the USA Realty Estate, the USA Realty Chapter 11 Case, including any other matter which FTDF, the FTDF Estate, or any Person or Entity claiming by, from, through, or under any of FTDF or the FTDF Estate ever had, now has, or hereafter can, shall, or may have against USA Realty or the USA Realty Estate; provided, however, that nothing in this paragraph shall be deemed to release any Claims that FTDF has against Non-Debtor Insiders.

**B.      Execution Of Documents And Corporate Action.**

The Debtors and Debtors in Possession, without any action by Equity Interests whatsoever, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

**C.      Notice Of Effective Date.**

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the USACM Trustee shall File and serve on each holder of a Claim or Equity Interest a written notice of the occurrence of Effective Date.

**D.      Retention Of Jurisdiction.**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases, the assets and liabilities of the Estates and the Trust Estates, and the Plan to the fullest extent permitted by law, including, but not limited to:

1.      Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim or Equity Interest not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim and resolving any objections to the allowance or priority of Claims or Equity Interests;

2.      Hearing and determining any and all Claims, Causes of Action or rights that may be asserted or commenced by the Debtors or a post-Effective Date Entity against Persons, Entities or governmental units;

3.      Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Post-Effective Date Entities shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    4.    Hearing and determining the reasonableness and allowability of any principal

2    Claim, attorney fee Claim, interest Claim or the charges asserted by a Secured Creditor against the

3    Debtors, the Estates, or the Post-Effective Date Entities;

4    5.    Hearing and determining all matters related to any executory contracts and

5    unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable;

6    6.    Hearing and determining all matters related to the transfer of the Acquired Assets

7    to the Asset Purchaser;

8    7.    Hearing and determining all matters related to Loan Servicing Agreements;

9    8.    Effectuating performance of and payments under the provisions of the Plan;

10    9.    Hearing and determining any and all adversary proceedings, motions, applications,

11    requests for disgorgement and contested or litigated matters arising out of, arising under or related

12    to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor

13    Insider Litigation;

14    10.    Entering such Orders as may be necessary or appropriate to execute, implement, or

15    consummate the provisions of the Plan and all contracts, instruments, releases, and other

16    agreements or documents created in connection with the Plan, the Disclosure Statement or the

17    Confirmation Order, including USACM Trust Agreement and the DTDF Amended Operating

18    Agreement;

19    11.    Hearing and determining disputes arising in connection with the interpretation,

20    implementation, consummation, or enforcement of the Plan, including disputes arising under

21    agreements, documents or instruments executed in connection with the Plan, such as the USACM

22    Trust Agreement, the DTDF Amended Operating Agreement, and the Asset Purchase Agreement;

23    12.    Modifying the Plan, the USACM Trust Agreement or the DTDF Amended

24    Operating Agreement at the request of the Debtors, the USACM Trustee or the DTDF

25    Administrator and as provided by applicable law, including to cure any defect or omission, or to

26    reconcile any inconsistencies in any order of the Court and the Plan, the USACM Trust

27    Agreement or the DTDF Amended Operating Agreement;

28

13. Issuing injunctions, entering and implementing other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan, the Asset Purchase Agreement, or the Confirmation Order;

14. Entering and implementing such Orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

15. Hearing and determining any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the USACM Trust Agreement, the DTDF Amended Operating Agreement, the Asset Purchase Agreement or any other asset purchase agreement entered into by the Debtors and a Third-Party Bidder;

16. Enforcing all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

17. Except as otherwise limited herein, recovering all assets of the Debtors and property of the Estates wherever located;

18. Hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

19. Hearing and determining all questions and disputes regarding title to the assets to be administered pursuant to the Plan, and the validity and/or priority of any liens or Secured Claims against those assets;

20. Hearing and determining all questions and disputes as to whether the payment of any Claim under the Plan should be subordinated to the payment of other Claims;

21. Approving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the Plan;

22. Hearing and determining such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

23.     Hearing and determining any matter relating the administration of the Estates by the Post-Effective Date Entities; and

24.     Entering Final Decrees closing each of the Chapter 11 Cases.

**E.     Binding Effect.**

The rights, benefits and obligations of any Entity or Person named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such Entity or Person.

**F.     Amendment, Modification And Severability.**

1.     The Plan may be amended or modified before the Effective Date by the Debtors, with consent of the Committees, to the extent provided by section 1127 of the Bankruptcy Code.

2.     The Debtors reserve the right to modify or amend the Plan upon a determination by the Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code.  To the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code, the Debtors reserve the right to sever any provisions of the Plan that the Court finds objectionable.

3.     Any modification of the USACM Trust by the beneficiaries thereof in accordance with the provisions of the USACM Trust Agreement shall not constitute a modification of the Plan under section 1127 of the Bankruptcy Code.

4.     Any modification to the Estate of the Post-Effective Date DTDF in accordance with the DTDF Amended Operating Agreement shall not constitute a modification of the Plan under section 1127 of the Bankruptcy Code.

**G.     Exhibits.**

Any Exhibits to the Plan not Filed herewith will be Filed no later than ten (10) days prior to the commencement of the Confirmation Hearing.  The Exhibits will not be served with the Plan, but rather copies of all such Exhibits will be available upon written request to the Debtors' counsel.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**H.      No Admission.**

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtors or the Estates with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estates.

**I.      1146(c) Exemption.**

In accordance with section 1146(c) of the Bankruptcy Code, the making delivery, filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan, including the documents related to the Asset Sale Transaction and/or the exhibits thereto, are hereby exempt from taxation under any law imposing a recording tax, stamp tax, transfer tax, or any similar tax. The appropriate state or local government officers are hereby directed to accept for filing or recording all Instruments of Transfer or other documents of transfer to be filed and recorded in accordance with the Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording other than the Confirmation Order. The Court retains jurisdiction to enforce the foregoing direction by contempt proceedings or otherwise.

**J.      General Authority.**

The Debtors, the Committees, and the Post-Effective Date Entities shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

**K.      Dissolution Of Committees.**

On the Effective Date, except as provided below, the Committees shall be disbanded and their members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases. The USACM Committee and the DTDF Committee will not dissolve unless and until the USACM Trustee and the DTDF Administrator are appointed and are authorized to act. The FTDF Committee will dissolve on the Effective Date, unless the FTDF Committee is charged with prosecuting objections to Claims or any of the non-assignable FTDF

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Litigation Claims on behalf of the FTDF Estate as provided pursuant to the compromise between

2  DTDF and FTDF.

3  **L.      Post-Effective Date Debtors.**

4        **1.      USACM.**

5        USACM shall have authority to take actions on behalf of USACM and the USACM Estate

6  on and after the Effective Date until the date that the USACM Trustee is appointed for the

7  USACM Trust.  After the USACM Trust Assets are transferred to the USACM Trust and the

8  USACM Trust becomes effective in accordance with this Plan and the USACM Trust Agreement,

9  USACM shall be dissolved in accordance with the Confirmation Order and applicable state law.

10        **2.      DTDF.**

11        On the Effective Date, Post-Effective Date DTDF shall have the exclusive authority to act

12  on behalf of DTDF and the DTDF Estate.  When the Plan has been fully implemented by Post-

13  Effective Date DTDF and all assets of the DTDF Estate and Post-Effective Date DTDF have been

14  fully liquidated and distributed and the DTDF Estate and Post-Effective Date DTDF fully

15  administered, DTDF shall be dissolved in accordance with the Confirmation Order, the DTDF

16  Amended Operating Agreement and applicable state law.

17        **3.      FTDF, USA Realty And USA Securities.**

18        FTDF, USA Realty, and USA Securities shall have the authority to effect all transactions

19  and take all actions required by the Plan on and after the Effective Date.  FTDF and the FTDF

20  Committee shall each have authority to prosecute (a) claim objections in the FTDF Estate, and (b)

21  the non assignable FTDF Litigation Claims on behalf of FTDF subject to the compromise with

22  DTDF set forth herein.  After the actions set forth in this paragraph are completed, FTDF, USA

23  Realty, and USA Securities shall be dissolved in accordance with the Confirmation Order and

24  applicable state law.

25  **M.      Binding Effect.**

26        The Plan and all rights, duties and obligations thereunder shall be binding upon and inure

27  to the benefit of the Debtors, the Committees, the Post-Effective Date Entities, Direct Lenders,

28  holders of Claims, holders of Equity Interests, and their respective successors and assigns.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**N.    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or by an express choice of law provision in any agreement, contract, document, or instrument provided for or executed in connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof.

**O.    Payment Dates.**

Whenever any action, including any payment, distribution, or Filing of any objection, motion, or proof of Claim or Equity Interest is required to be made under the Plan on a day other than a Business Day, such payment, distribution, or filing shall instead be made, without interest, on the immediately following Business Day.

**P.    Headings.**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**Q.    No Waiver.**

The failure of the Debtors or any other Entity to object to any Claim or Equity Interest for purposes of voting shall not be deemed a waiver of the Debtors' or the Post-Effective Date Entities' right to object to or examine such Claim or Equity Interest, in whole or in part.

**R.    Other Documents And Actions.**

The Post-Effective Date Entities may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**S.    Severability Of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of this Plan, the Court shall, with the consent of the Debtors and the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Committees, have the power to interpret, modify or delete such term or provision (or portions

2   thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the

3   original purpose of the term or provision held to be invalid, void or unenforceable, and such term

4   or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such

5   interpretation, modification or deletion, the remainder of the terms and provisions of this Plan

6   shall in no way be affected, impaired or invalidated by such interpretation, modification or

7   deletion.

8   **T.    Post-Confirmation Status Report.**

9        Within ninety (90) days of the Effective Date, the Debtors or a post-Effective Date Entity

10  or the FTDF Committee, to the extent applicable, shall File a status report for each of the relevant

11  Debtors setting forth what progress has been made toward the consummation of the confirmed

12  Plan.  The status report shall be served on the U.S. Trustee, the Debtors, prior to dissolution or

13  transition to the Post-Effective Date Entities, the Post-Effective Date Entities, and any Entities

14  who have Filed a request for such reports with the Court.  Unless otherwise ordered, further status

15  reports shall be Filed every ninety (90) days and served on the same Entities.  On or after the

16  Effective Date, no monthly operating reports need to be filed with the U.S. Trustee.

17  **U.    Final Decree.**

18       Once each Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

19  Post-Effective Date Entities, the Debtors, or another party, as the Court shall designate in the

20  Confirmation Order, shall File a final report and account of all receipts and disbursements, and

21  serve that report on the U.S. Trustee, and any other Entities entitled to service under any

22  applicable law.  Any such final report shall include a request that the Court enter a Final Decree in

23  the Chapter 11 Case of the applicable Debtor.

24  **V.    Revocation, Withdrawal, Cram-Down Or Non-Consummation.**

25       The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the

26  Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or

27  withdraw the Plan, or if Confirmation or consummation does not occur, then (1) the Plan shall be

28  null and void in all respects, (2) any settlement or compromise embodied in the Plan (including the

85

1  fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity

2  Interests), rejection or assumption of any executory contracts or unexpired leases affected by the

3  Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void,

4  and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the

5  Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or

6  against, or any Equity Interests in, any Debtor or any other Entity, (B) prejudice in any manner the

7  rights of the Debtors or any Entity in any further proceedings involving the Debtors, or (C)

8  constitute an admission of any sort by the Debtors or any other Entity.

9      The Debtors reserve any and all rights they may have under section 1129(b) of the

10  Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Equity

11  Interests.  Additionally, the Debtors reserve their right to seek Confirmation of the Plan in fewer

12  than all of these Chapter 11 Cases.  In other words, if the Bankruptcy Court determines that a

13  cram-down of the Plan pursuant to section 1129(b) of the Bankruptcy Code is legally

14  impermissible in regard to a particular Debtor and its Estate, then the Debtors will withdraw the

15  Plan in regard to that particular Debtor, its Estate and its Chapter 11 Case and the Debtors may

16  then proceed to seek Confirmation of the Plan in those Chapter 11 Cases herein in which the cram-

17  down provisions of section 1129(b) of the Bankruptcy Code may validly be exercised.

18  **W.    Notice To Certain Parties.**

19      All notices and documents to be effective for the following parties shall be in writing

20  (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

21  deemed to have been duly given or made when actually delivered or, in the case of notice by

22  facsimile transmission, when received and telephonically confirmed, addressed as follows:

23      1.    The Debtors:
             Annette W. Jarvis, Esq.
24           Steven C. Strong, Esq.
             Ray Quinney & Nebeker P.C.
25           36 South State Street, Suite 1400
             P.O. Box 45385
26           Salt Lake City, Utah  84145-0385
             Facsimile:  (801) 532-7543
27           Email: ajarvis@rqn.com

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Email: sstrong@rqn.com

and

Lenard E. Schwartzer, Esq.
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

2.      SPCP Group, LLC
Michael Gatto
Silver Point Capital
Two Greenwich Plaza, 1st Floor
Greenwich, CT  06830
Facsimile: (203) 542-4100
and
James C. McCarroll, Esq.
Reed Smith, LLP
New York, NY 10022
Facsimile: (212) 521-5450

3.      Direct Lender Committee
Gerald M. Gordon, Esq.
Gregory E. Garman, Esq.
Gordon & Silver, Ltd.
3960 Howard Hughes Pkwy., Ninth Floor
Las Vegas, NV 89169
Facsimile: (702) 369-2666
Email: gmg@gordonsilver.com
Email: geg@gordonsilver.com

4.      DTDF Committee
Marc A. Levinson, Esq.
Orrick Herrington & Sutcliffe LLP
400 Capital Mall, Suite 3000
Sacramento, CA  95814-4497
Facsimile: (916) 329-4900
Email: malevinson@orrick.com

5.      FTDF Committee
Frank A. Merola, Esq.
Eve H. Karasik, Esq.
Stutman, Treister & Glatt, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Facsimile:  (310) 228-5788
Email:  fmerola@stutman.com

Email:  ekarasik@stutman.com

6.    **USACM Committee**
Rob Charles, Esq.
Lewis and Roca, LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
Facsimile:  (702) 949-8321
Email:  rcharles@lrlaw.com

**IX.**

**REQUEST FOR CONFIRMATION**

The Debtors hereby request that the Court confirm the Plan pursuant to Bankruptcy Code section 1129(a), or, if necessary, pursuant to Bankruptcy Code section 1129(b).

Dated: November 15, 2006.

**THE DEBTORS:**
USA Commercial Mortgage Company
USA Securities, LLC
USA Capital Realty Advisors, LLC
USA Capital Diversified Trust Deed Fund, LLC
USA First Trust Deed Fund, LLC

By: _____
Thomas J. Allison
Chief Restructuring Officer

Respectfully submitted this 15ᵗʰ day of November, 2006.

*/s/  Jeanette E. McPherson*
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146
and
Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122