Electronically filed April 5, 2007

Marc A. Levinson (California Bar No. 57613)
Cynthia J. Larsen (California Bar No. 123994)
Jeffery D. Hermann (California Bar No. 90445)
Stacy E. Don (California Bar No. 226737)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone:    (916) 447-9200
Facsimile:    (916) 329-4900
Email:    malevinson@orrick.com;
clarsen@orrick.com;
jhermann@orrick.com;
sdon@orrick.com

Bob L. Olson (Nevada Bar No. 3783)
Anne M. Loraditch (Nevada Bar No. 8164)
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone:    (702) 385-3373
Facsimile:    (702) 385-5024
Email:    bolson@beckleylaw.com;
aloraditch@beckleylaw.com

*ATTORNEYS FOR USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>            Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter Number: 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>            Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>            Debtor. | |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>            Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>            Debtor. | |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>            Plaintiff,<br>vs.<br><br>HMA SALES, LLC, a Nevada limited liability company; SALVATORE J. REALE, individually and as trustee of the Salvatore J. Reale Revocable Trust; | **Adversary No. 06 - 01256-LBR**<br><br>**SECOND AMENDED COMPLAINT** |

{00387118;}
OHS West:260204196.4

|   |   |
|---|---|
| 1 | GREAT WHITE INVESTMENT NV INC., a Nevada corporation; USA COMMERCIAL REAL ESTATE GROUP, INC., a Nevada corporation; NATIONAL REAL ESTATE HOLDINGS, INC., a California corporation; ALLEN ABOLAFIA, an individual; BOB ALUM, an individual; FRANK J. BELMONTE, JR., an individual; JEAN JACQUES BERTHELOT, an individual; GARY BRENNAN, an individual; PAUL BRUGGEMANS, an individual; WILLIAM F. ERRINGTON, an individual; HARV GASTALDI, an individual; VINCENT GREEN, an individual; JAYEM FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership; JACQUES M. MASSA, an individual and general partner of Jayem Family Limited Partnership; AIMEE KEARNS, an individual; KLAUS KOPF, an individual; BERNARD KRAUS, individually and as trustee of the Bernard Kraus and Arlene Kraus Revocable Trust of 1991; ARLENE KRAUS, individually and as trustee of the Bernard Kraus and Arlene Kraus Revocable Trust of 1991; JOSEPH B. LAFAYETTE, an individual; JASON LANDESS, ESQ., an individual; SVEN LEVIN, an individual; R. G. T. MILLER, individually and as trustee, an individual acting in the capacity of trustee; R& N REAL ESTATE INVESTMENTS LIMITED PARTNERSHIP, a Nevada limited partnership; ROBERT JOHN VERCHOTA, an individual and general partner of R&N Real Estate Investments Limited Partnership; DENNIS F. SIPIORSKI, an individual; DAVID STIBOR, an individual; KENNETH TRECHT, an individual; STEVE WALTERS, an individual; RUSSELL J. ZUARDO, an individual; CRAIG ORROCK, an individual; and BETTY PHENIX, an individual.<br><br>                                                              Defendants. |
| | Affects:<br>☐   All Debtors<br>☐   USA Commercial Mortgage Company<br>☐   USA Securities, LLC<br>☐   USA Capital Realty Advisors, LLC<br>☒   USA Capital Diversified Trust Deed Fund, LLC<br>☐   USA First Trust Deed Fund, LLC |

{00387118;}
OHS West:260204196.4

Plaintiff USA Capital Diversified Trust Deed Fund, LLC ("DTDF") hereby complains against defendants and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. § 549.

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H) and (O).

3. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**GENERAL ALLEGATIONS**

**The Parties**

5. On April 13, 2006, plaintiff DTDF and four affiliated companies, USA Commercial Mortgage Company ("USACM"), USA Capital Realty Advisors, LLC ("USACRA"), USA Capital First Trust Deed Fund, LLC and USA Securities, LLC, filed petitions for relief under chapter 11 of the Bankruptcy Code. A joint plan of reorganization for all five debtors was confirmed by the Court and became effective on March 12, 2007.

6. DTDF is a Nevada limited liability company, and at the time of instituting this adversary proceeding, was a debtor-in-possession. DTDF is a fund created in 2000 by Thomas Hantges ("Hantges"), Joseph Milanowski ("Milanowski) and/or USACM for the purpose of aggregating investors' funds to be used to invest in real property secured loans funded in whole or in part by DTDF.

7. Defendant HMA Sales, LLC ("HMA") is a Nevada limited liability company doing business within this judicial district. HMA is owned by third-party USA Investment Partners, LLC ("USAIP") and defendant Allen Abolafia ("Abolafia"). USAIP is a Nevada limited liability company owned by Hantges, as trustee for the Thomas A. Hantges 1997 Trust, Milanowski, as trustee of Joseph D. Milanowski 1998 Trust, and Paul S. Hamilton. Milanowski and Hantges were the managers of USAIP through February 2005, after which Milanowski became the sole manager. USAIP is the business entity through which Milanowski and Hantges

operated their real estate development activities. USAIP is the majority owner and manager of HMA, and exercises sole control and management over the affairs of HMA.

8. Defendant Salvatore J. Reale ("Reale") is an individual residing within this judicial district.

9. Defendant National Real Estate Holdings, Inc. ("National Real Estate") is a company incorporated in California and doing business within this judicial district.

10. Defendant USA Commercial Real Estate Group, Inc. ("USA Commercial Real Estate") is a Nevada corporation doing business within this judicial district. The owners of USA Commercial Real Estate are Milanowski and Hantges.

11. Defendant Abolafia is an individual with an ownership interest in HMA who both resides and does business within this judicial district.

12. Defendant Great White Investment NV Inc. ("Great White") is a Nevada corporation doing business within this judicial district.

13. Upon information and belief, Defendants Bob Alum, Frank J. Belmonte, Jr., Jean Jacques Berthelot, Gary Brennan, Paul Bruggemans, William F. Errington, Harv Gastaldi, Vincent Green, Jayem Family Limited Partnership, Jacques M. Massa as the general partner of Jayem Family Limited Partnership, Aimee Kearns, Klaus Kopf, Bernard Kraus, individually and as trustee, Arlene Kraus, individually and as trustee, Joseph B. Lafayette, Jason Landess, Esq., Sven Levin, R. G. T. Miller, individually and as trustee, R& N Real Estate Investments Limited Partnership, Robert John Verchota as the general partner of R& N Real Estate Investments Limited Partnership, Dennis F. Sipiorski, David Stibor, Kenneth Trecht, Steve Walters, Russell J. Zuardo, Craig Orrock, and Betty Phenix (collectively, "Mediate Transferees"), are individuals or entities that received a portion of the proceeds from the sale of the Royal Hotel (as described below).

**The Obligations of HMA to DTDF**

14. Until the chapter 11 filings on April 13, 2006, Hantges and Milanowski exercised dominion and control over DTDF by virtue of their control of USACM and USACRA.

///

{00387118;}OHS West:260204196.4

Page 2

15. Third-party USACM is a Nevada corporation. USACM is in the business of arranging and servicing loans for other entities in which Hantges and Milanowski had interests or control. Until the chapter 11 filings on April 13, 2006, Hantges and Milanowski exercised dominion and control over USACM.

16. At all relevant times, DTDF and USACM were parties to a loan servicing agreement whereby USACM was to arrange for and service loans for DTDF.

17. DTDF is a fund that consists of money collected from individual investors. Based on the 2003 DTDF Prospectus, USACRA served as DTDF's manager. USACRA was wholly-owned by USAIP. Under DTDF's Operating Agreement, Milanowski was also the President of USACRA.

18. According to the 2003 DTDF Prospectus that was provided and relied upon by DTDF investors, DTDF would invest only in loans secured by first deeds of trust upon real property. The 2003 DTDF Prospectus stated: (i) USACM had sold $121,524,500 worth of units in the Fund prior to that date; (ii) investors were not offered a fixed rate of return but rather a "flow-through" of the profits generated by DTDF through DTDF acting as a Direct Lender in loans generated by USACM; (iii) no loans would be made to the managers or any of its affiliates; (iv) loan-to-value ratios for the loans in which DTDF would become a Direct Lender would not exceed 75% and may be as low as 60%; and (v) loan diversification restrictions would be imposed upon the loans invested in by DTDF such that no loan would exceed $20 million, no loan would exceed 15% of all loans outstanding at any time, and no more than 25% of the loans outstanding at any time would be made to a single borrower or an affiliate of such borrower.

19. Under this business model, Hantges and Milanowski were entrusted with the affairs and monies of DTDF. Hantges and Milanowski could fund loans and close loans without any approval from DTDF investors.

20. Hantges and Milanowski used DTDF as a source of funds for investing in real estate development projects in the name of USAIP related entities, including HMA, for their own potential personal gain. Beginning in or about 2002, Milanowski and Hantges caused DTDF to transfer substantial sums of money to HMA to fund the Royal Hotel. Specifically, DTDF's books

and records reflect that Milanowski and Hantges caused DTDF to transfer a total of $13,670,000 to HMA. DTDF transferred $4,633,000 directly to HMA, and transferred $9,037,000 through a series of sham transactions using straw men. DTDF trusted that Hantges and Milanowski would deal fairly with DTDF and provide that its money was invested in accordance with the investing criteria in the Prospectus and in a manner that would ensure a fair return. However, no such arrangement was provided.

21. Notwithstanding the transfer of millions of dollars from DTDF to HMA, there are no promissory notes from HMA in favor of DTDF. Rather, these transfers were accounted for through an entity known as 10-90, Inc. and were booked by DTDF/USACM/Milanowski/Hantges as a "loan" made by DTDF to 10-90, Inc. (the "10-90 Loan") to other entities and eventually to USAIP ("USAIP Loan").

22. The "borrower" for the 10-90 Loan was 10-90, Inc. However, 10-90, Inc. was used as a straw man for USAIP. DTDF "loaned" funds to 10-90, Inc. which then transferred funds to USAIP through another straw man, Mountain Vista Inc. USAIP then funneled the funds to HMA. Furthermore, the 10-90, Inc. loan was formally transferred from 10-90, Inc. to USAIP on January 1, 2005, thereby eliminating the participation of the straw men, 10-90, Inc. and Mountain Vista Inc.

23. In addition to the fact that the money passed through 10-90, Inc., Mountain Vista, and USAIP to HMA, there are other circumstances which demonstrate that the 10-90 Loan and the USAIP Loan were shams. The funds were transferred from DTDF to HMA, purportedly under the 10-90 Loan, up to two years before the 10-90 Loan was documented. The 10-90, Inc. loan was a revolving loan that <u>allegedly</u> originated in April 2002, but, based on information and belief, the loan documents were not executed until two years later.

24. An additional circumstance showing that the 10-90 Loan was a sham was that certain funds were transferred from DTDF to HMA before 10-90, Inc. was incorporated. The first disbursement of funds under the 10-90 Loan allegedly occurred on April 15, 2002. However, 10-90, Inc. was not even incorporated until December 31, 2002, according to the California Secretary of State's records. The outstanding 10-90 Loan balance on December 31,

Page 4

{00387118;}OHS West:260204196.4

2002 was $6,586,500. Over the span of 260 days, DTDF, at the mercy of Hantges and Milanowski, had transferred funds of $6,586,500 (some amounts to HMA and some amounts to other recipients) to 10-90, Inc., which technically did not even exist yet.

25. One more circumstance showing that the 10-90 Loan was a sham was that the first funding directly to 10-90, Inc. from DTDF did not occur until March 24, 2003, 17 days after 10-90, Inc. opened a checking account at Wells Fargo Bank on March 7, 2003 and 336 days after the first 10-90 Loan funding date. Prior to March 24, 2003, all of the 10-90 Loan disbursements from DTDF were actually wired to various USAIP related parties or entities at Joe Milanowski's direction other than 10-90, Inc. because 10-90, Inc. did not really exist and/or did not have a functioning bank account. In fact, prior to March 24, 2003, $4,633,000 in funds was transferred directly from DTDF to HMA with no apparent involvement by 10-90, Inc.

26. The 10-90 Loan and USAIP Loan were mere fiction and subterfuge employed by Hantges and Milanowski utilized as part of a scheme whereby they utilized the monies of the DTDF investors for their own speculative real estate development activities and to cover up other fraudulent activity of USACM, rather than funding non-insider loans secured by first deeds of trust on real property as promised to investors in the DTDF prospectus. USAIP owned and managed both the true "borrower," HMA, as well as the "lender," DTDF, creating a conflict of interest.

27. The 10-90 Loan was not adequately secured. Instead, it was secured only by the assignment of USAIP's LLC membership interest in Ashby USA, LLC, Capital Land Investors, LLC and Random Developments, LLC. These security interests were not recorded until after DTDF filed for bankruptcy and was no longer controlled by Hantges and Milanowski. The 10-90 Loan and USAIP Loan are not secured by first deeds of trust that encumber the relevant real property or by second deeds of trust or any other real property interest.

28. The 10-90 Loan (approximately $55,000,000 in principal and $30,000,000 in unpaid interest) accounts for approximately 50% of the total assets in DTDF's portfolio. This loan by itself violates:

{00387118;}OHS West:260204196.4

Page 5

a. all three of the DTDF Prospectus's diversification requirements (no loan to exceed $20 million, no loan to exceed 15% of Loan Portfolio, and loans to a single borrower and its affiliates will not exceed 25% of the portfolio);

b. the DTDF Prospectus's first priority deed of trust collateral requirement;

c. the DTDF Prospectus's loan-to-value requirement (loan must not exceed 75% of the value of the real property collateral); and

d. the Prospectus's no loans to USACM or any of its affiliates requirement.

29. After the commencement of the DTDF and USACM chapter 11 cases, DTDF and USACM, through Thomas J. Allison of Mesirow Interim Financial Management ("Allison"), negotiated with Milanowski on behalf of USAIP, for a promissory note in the amount of $58,374,918.81 to evidence certain obligations appearing on the books of USACM owing by USAIP (the "$58 Million USAIP Note") and for a security agreement to secure various obligations owing by USAIP to USACM and DTDF (the "USAIP Security Agreement"). The $58 Million USAIP Note and the USAIP Security Agreement are both dated as of May 31, 2006, and were approved by order of this Court entered on the docket in the USACM case on July 24, 2006.

30. The obligations secured under the USAIP Security Agreement include the $58 Million USAIP Note and the 10-90 Loan.

31. One of the assets pledged by USAIP under the USAIP Security Agreement was USAIP's member interest in HMA.

**The Reale Lien On The Royal Hotel**

32. At the time that Milanowski was negotiating on behalf of USAIP to pledge USAIP's LLC member interest in HMA to USACM and DTDF in late Spring of 2006, Milanowski was taking other actions that adversely and materially affected the value of such pledge. On or about May 5, 2006, Milanowski, on behalf of HMA, granted a lien upon the Royal Hotel by executing that certain Deed of Trust, Assignment of Rents Security Agreement and Fixture Filing in favor of Salvatore J. Reale, as the Trustee of the Salvatore J. Reale Revocable Living Trust Dated November 15, 2004 which was recorded with the Clark County Recorder on

1  May 5, 2006, as document number 20060505-0003127 (the "Reale Deed of Trust" granted in favor of "Reale").

33. The Reale Deed of Trust provides that the obligation secured is

> "Promissory Note dated December 1, 2004, as amended by Thomas A. Hantges and Joseph D. Milanowski (collectively, the "Borrower"), which presently has an unpaid balance of Nine Million Eight Hundred Thousand Dollars ($9,800,000.00) plus interest . . . (the "Reale Note").

Thus, the Reale Note is the personal obligation of Milanowski and Hantges and is not the obligation of HMA.

34. Upon information and belief, HMA received no, or inadequate consideration for assuming the liability of the Reale Note by pledging the Royal Hotel as collateral therefor in the Reale Deed of Trust.

35. At the time of the grant of the Reale Deed of Trust, HMA was insolvent, or became insolvent as a result of such transfer, or was left with unreasonably small capital after such transfer, or was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**The Sale Of The Royal Hotel and the Distribution of the Sale Proceeds**

36. Until December 22, 2006, HMA was the owner of the Royal Hotel, a property located at 99 Convention Center Drive, Las Vegas, California ("Royal Hotel").

37. DTDF's funds were used to purchase, maintain, improve and pay for the Royal Hotel.

38. On December 22, 2006, HMA completed the sale of the Royal Hotel, and received approximately $24 million in cash and a promissory note or notes for the balance of approximately $5 million (the "Seller Financing Notes") for a total purchase price of approximately $29 million (collectively, the "Royal Hotel Proceeds").

39. Reale received $9,967,609 from the Royal Hotel Proceeds.

///

{00387118;}OHS West:260204196.4

Page 7

40. National Real Estate received $575,000 from the Royal Hotel Proceeds for the termination of an agreement with HMA to sell individual condominium units associated with the Royal Hotel.

41. USA Commercial Real Estate, which is controlled by Hantges and Milanowski, received a $435,000 commission from the Royal Hotel Proceeds for the sale of the Royal Hotel.

42. Abolafia received $1,000,000 from the Royal Hotel Proceeds as a minority member of HMA.

43. Great White, collectively received $1,000,000 from the Royal Hotel Proceeds.

44. Under the direction of Orrock, Great White distributed to the Mediate Transferees portions of the Royal Hotel Proceeds from the $1,000,000 originally received by Great White.

45. HMA received $5,201,442.17 from the Royal Hotel Proceeds in the form of the Seller Financing Notes in favor of HMA from the purchaser of the Royal Hotel. HMA also expects to receive any additional Royal Hotel Proceeds not disbursed to defendants or third parties.

46. HMA received no, or inadequate consideration for the transfer of the Royal Hotel Proceeds from the Defendants.

47. At the time of the payments made above, HMA was insolvent, or became insolvent as a result of such transfer, or was left with unreasonably small capital after such transfer, or was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

48. DTDF is a creditor of HMA and has a direct interest in the Royal Hotel Proceeds.

**FIRST CLAIM FOR RELIEF**
**(Constructive Trust – Against all Defendants)**

49. DTDF repeats and realleges the allegations of paragraphs 1 through 48 above as if fully set forth herein.

50. USAIP, HMA, Hantges and Milanowski, among others, engaged in a scheme to defraud DTDF and the investors in DTDF by taking and utilizing the monies of DTDF to fund their own speculative real estate investments, contrary to the promises of the DTDF prospectus that informed the DTDF investors that DTDF monies would be used to fund non-insider loans secured by first deeds of trust served by real estate. The 10-90 Loan was a subterfuge for these direct withdrawals of monies from DTDF to fund insider real estate speculations, including the Royal Hotel, and funds advanced under the fiction of the 10-90 Loan were utilized to fund the purchase, operations and improvements to the Royal Hotel.

51. A confidential relationship existed between Hantges and Milanowski and all of the companies they owned or controlled, including USAIP, USACM, DTDF, 10-90, Inc., USACRA and HMA, by virtue of Hantges and Milanowski controlling all these entities. These entities could not and did not operate in an arms' length fashion given that the same individuals controlled all of the entities in question.

52. The Defendants provided no, or inadequate consideration for their receipt of DTDF funds or for their receipt of the Royal Hotel Proceeds, and as a result, they would be unjustly enriched if they were permitted to retain DTDF funds or the Royal Hotel Proceeds, or any assets or investments acquired with DTDF funds or the Royal Hotel Proceeds.

53. Based on the foregoing, all assets and investments purchased with and funded with DTDF monies should be imposed with a constructive trust in favor of DTDF, including the Royal Hotel Proceeds, all assets of HMA, and any assets or investments acquired with the Royal Hotel Proceeds.

**SECOND CLAIM FOR RELIEF**
**(Avoidance of Actual Intent Fraudulent Transfer – Against Defendant Reale)**

54. DTDF repeats and realleges the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55. Title to the Royal Hotel was encumbered with the Reale Deed of Trust.

56. After the completion of the sale of the Royal Hotel, Reale received payment in sum of $9,967,609 from the Royal Hotel Proceeds in settlement of the Reale Deed of Trust.

57. The transfer accomplished through the security interest granted Reale pursuant to the Deed of Trust was made with the actual intent to hinder, delay or defraud creditors, including DTDF.

**THIRD CLAIM FOR RELIEF**
**(Avoidance of Constructive Fraudulent Transfer – Against Defendant Reale)**

58. DTDF repeats and realleges the allegations of paragraphs 1 through 57 above as if fully set forth herein.

59. HMA received less than reasonably equivalent value in return for the pledge of the Royal Hotel to Reale in the Reale Deed of Trust, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**FOURTH CLAIM FOR RELIEF**
**(Avoidance of Actual Intent Fraudulent Transfer –**
**Against Defendant National Real Estate)**

60. DTDF repeats and realleges the allegations of paragraphs 1 through 59 above as if fully set forth herein.

61. The transfer of $575,000 to the National Real Estate by HMA was made with the actual intent to hinder, delay or defraud HMA creditors, including DTDF.

**FIFTH CLAIM FOR RELIEF**
**(Avoidance of Constructive Fraudulent Transfer –**
**Against Defendant National Real Estate)**

62. DTDF repeats and realleges the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63. HMA received less than reasonably equivalent value in return for the $575,000 payment made to National Real Estate, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the

business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**SIXTH CLAIM FOR RELIEF**
**(Avoidance of Actual Intent Fraudulent Transfer –**
**Against Defendant USA Commercial Real Estate)**

64. DTDF repeats and realleges the allegations of paragraphs 1 through 63 above as if fully set forth herein.

65. After the completion of the sale of the Royal Hotel, USA Commercial Real Estate, received $435,000 in payments from the Royal Hotel Proceeds.

66. The transfer accomplished by the payment to the USA Commercial Real Estate Group was made with the actual intent to hinder, delay or defraud HMA creditors, including DTDF.

**SEVENTH CLAIM FOR RELIEF**
**(Avoidance of Construction Fraudulent Transfer –**
**Against Defendant USA Commercial Real Estate)**

67. DTDF repeats and realleges the allegations of paragraphs 1 through 66 above as if fully set forth herein.

68. HMA received less than reasonably equivalent value in return for the $435,000 payment made to USA Commercial Real Estate, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**EIGHTH CLAIM FOR RELIEF**
**(Avoidance of Constructive Fraudulent Transfer – against Defendant Abolafia)**

69. DTDF repeats and realleges the allegations of paragraphs 1 through 68 above as if fully set forth herein.

70. Abolafia received $1,000,000 in payments from the Royal Hotel Proceeds.

71. HMA received less than reasonably equivalent value in return for the $1,000,000 payment made to Abolafia, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such transfer or became insolvent as a result of such transfer or was left with unreasonably small capital after such transfer.

**NINTH CLAIM FOR RELIEF**
**(Illegal Dividend, Distribution or Payment to a Member – against Defendant Abolafia)**

72. DTDF repeats and realleges the allegations of paragraphs 1 through 71 above as if fully set forth herein.

73. Abolafia received $1,000,000 from the Royal Hotel Proceeds as a minority member of HMA.

74. Under NRS section 86.343, no distribution may be made where the (a) the company would not be able to pay its debts as they become due in the usual course of business; or (b) the company's total assets would be less than the sum of its total liabilities.

75. HMA is not able to pay its debts that are due to DTDF and other creditors.

76. At the time it paid Abolafia the $1,000,000 from the Royal Hotel Proceeds, HMA's assets were insufficient to cover its liabilities.

**TENTH CLAIM FOR RELIEF**
**(Avoidance of Constructive Fraudulent Transfer – Against Defendant Great White)**

77. DTDF repeats and realleges the allegations of paragraphs 1 through 76 above as if fully set forth herein.

78. HMA received less than reasonably equivalent value in return for the $1,000,000 payment made to Great White, and HMA (a) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would

Page 12
{00387118;}OHS West:260204196.4

1  incur, debts beyond its ability to pay as they became due, or (c) was insolvent at the time of such
2  transfer or became insolvent as a result of such transfer or was left with unreasonably small
3  capital after such transfer.

**ELEVENTH CLAIM FOR RELIEF**
**(Recovery of Constructive Fraudulent Transfer Pursuant to NRS 112.220 –**
**Against The Mediate Transferees)**

79. DTDF repeats and realleges the allegations of paragraphs 1 through 78 above as if fully set forth herein.

80. The $1,000,000 Great White received constitutes a fraudulent transfer under NRS §§ 112.180 or 112.190.

81. Great White transferred portions of the $1,000,000 they received from the Royal Hotel Proceeds to the Mediate Transferees.

82. The Mediate Transferees received these payments without providing value to HMA, with knowledge that the monies had been received by Great White Investments as a fraudulent transfer in that Great White Investments had no claims against HMA, and the Mediate Transferees received such payments with knowledge that the payments could be avoided as a fraudulent transfer as a result. The Mediate Transferees therefore did not receive such payments in good faith.

**TWELFTH CLAIM FOR RELIEF**
**(Conversion – Against HMA)**

83. DTDF repeats and realleges the allegations of paragraphs 1 through 82 above as if fully set forth herein.

84. HMA exercised dominion and control over property of DTDF because HMA possessed $13,670,000 in funds belonging to DTDF that were transferred from DTDF to HMA.

85. HMA exercised dominion and control over the foregoing property of DTDF, and continues to exercise dominion and control over DTDF's property.

86. HMA's exercise of dominion and control over DTDF's property is inconsistent with the rights of DTDF.

///

{00387118;}OHS West:260204196.4

Page 13

In addition, by virtue of, among other things, the constructive trust described hereinabove, DTDF had a direct interest in the Royal Hotel and the Royal Hotel Proceeds and all assets of HMA, which were imbued with such constructive trust.

87. HMA exercised dominion and control over the foregoing property of DTDF and continues to exercise dominion and control over DTDF's property.

88. HMA's exercise of dominion and control over the foregoing property of DTDF was and is inconsistent with the rights of DTDF.

89. As a direct and proximate result of HMA's conversion of DTDF's property, DTDF has been damaged.

**THIRTEENTH CLAIM FOR RELIEF**
**(Avoidance of Post-Petition Transactions Pursuant to 11 U.S.C. § 549 – Against All Defendants)**

90. DTDF repeats and realleges the allegations of paragraphs 1 through 90 above as if fully set forth herein.

91. DTDF was, at all times relevant to this claim, a debtor-in-possession.

92. HMA possessed property of the DTDF estate because it possessed $13,670,000 belonging to DTDF and because HMA's property was imbued with a constructive trust in favor of DTDF.

93. HMA transferred property of the DTDF estate to the other Defendants after the bankruptcy petition was filed in this case.

94. This adversary proceeding was brought within less than one year after the date of the transfers by HMA of property of the DTDF estate.

**FOURTEENTH CLAIM FOR RELIEF**
**(Unjust Enrichment – Against All Defendants)**

95. DTDF repeats and realleges the allegations of paragraphs 1 through 95 above as if fully set forth herein.

96. DTDF's rights to the Royal Hotel Proceeds are superior to the rights of the Defendants who received certain portions of the Royal Hotel Proceeds.

///

97. A benefit was conferred upon the Defendants when certain portions of the Royal Hotel Proceeds were paid over to them.

98. Defendants accepted and retained the proceeds from the Royal Hotel from HMA, and appreciated such benefits.

99. Under the circumstances it would be inequitable for Defendants to retain the benefit of the Royal Hotel Proceeds they received, and the Defendants would be unjustly enriched if they are permitted to retain those proceeds.

**FIFTEENTH CLAIM FOR RELIEF**
**(Injunction – Against all Defendants)**

100. DTDF repeats and realleges the allegations of paragraphs 1 through 100 above as if fully set forth herein.

101. As a result of the foregoing, defendants and anyone acting in concert with defendants, including without limitation, any member of HMA, should be enjoined from taking any further action to dispose of or further disburse the Royal Hotel Proceeds, or any interest therein, or any funds which HMA has received or will in the future receive from the sale of any HMA asset, unless and until the claims of DTDF, as alleged above, are paid or otherwise adequately provided for. HMA and such other entities should further be enjoined from causing HMA to incur any further obligations to others as to which HMA is not presently obligated.

102. Without such an injunction, DTDF would suffer irreparable injury in that, among other things, DTDF would need to commence further litigation to pursue recovery of monies paid out to third parties from the Royal Hotel Proceeds, and the eventual recovery in such actions is uncertain.

**SIXTEENTH CLAIM FOR RELIEF**
**(Appointment of a Receiver)**

103. DTDF repeats and realleges the allegations of paragraphs 1 through 103 above as if fully set forth herein.

104. In order to preserve the status quo with respect to the Royal Hotel Proceeds, and in order to avoid the dissipation and/or loss of value represented by the Royal Hotel Proceeds, DTDF is entitled to the appointment of a receiver for HMA.

{00387118;}OHS West:260204196.4

Page 15

**PRAYER FOR RELIEF**

WHEREFORE, DTDF prays as follows:

A. For a judgment that title to the Royal Hotel Proceeds, and all assets of HMA, are imbued with a constructive trust in favor of DTDF, with interest, fees and costs allowable at law.

B. For a judgment that the Reale Deed of Trust constitutes a fraudulent transfer and that the Royal Hotel Proceeds received by Reale be avoided and paid over to DTDF.

C. For a money judgment against Reale for the amount of the Royal Hotel Proceeds received by Reale, together with interests, fees and costs allowable at law.

D. For a money judgment against HMA for the amount of monies had and received from DTDF together with interest, fees and costs allowed at law.

E. For a money judgment against Great White, jointly and severally, for $1,000,000, together with interest, fees and costs allowable at law.

F. For a money judgment against each of the Mediate Transferees for the amount of the Royal Hotel Proceeds received by each of them, together with interest, fees and costs allowable at law.

G. For a money judgment against Abolafia in the amount of $1,000,000, together with interest, fees and costs allowable at law.

H. For a money judgment against USA Commercial Real Estate in the amount of $435,000, together with interest, fees and costs allowable at law.

I. For a money judgment against National Real Estate in the amount of $575,000, together with interest, fees and costs allowable at law.

J. For a judgment enjoining defendants or any of them from acting in concert with others from disposing of the Royal Hotel Proceeds or any interest therein, or from further obligating HMA for the obligations of others.

K.  For a judgment appointing a receiver for HMA.

L.  For a Writ of Attachment and such other prejudgment extraordinary relief as DTDF may be entitled to at law against Defendants for the amounts prayed for herein.

M.  For such further relief that this Court deems to be just and proper.

Dated: April 5, 2007

| BECKLEY SINGLETON, CHTD. | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|---|---|
| /s/ Anne M. Loraditch | /s/ Cynthia J. Larsen |
| Attorneys for USA Capital Diversified Trust Deed Fund, LLC | Attorneys for USA Capital Diversified Trust Deed Fund, LLC |

{00387118;}OHS West:260204196.4

Page 17