**RECORDING REQUESTED BY:**

ORANGE COAST TITLE COMPANY

**WHEN RECORDED MAIL TO:**

USA COMMERCIAL MORTGAGE COMPANY
4484 SOUTH PECOS ROAD
LAS VEGAS, NV 89121

Recorded in Official Records, County of San Bernardino 6/18/2004
3:53 PM
LMJ



**LARRY WALKER**
Auditor/Controller — Recorder

750  Orange Coast Title Company

Doc#:  2004 — 0435051



| | | |
|---|---|---|
| Titles: | 4 | Pages: 33 |
| Fees | | 128.00 |
| Taxes | . | 0.00 |
| Other | | 0.00 |
| PAID | | $128.00 |

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**(Title of Document)**

**TITLE ORDER NO**      **R-218113-99**

**Exhibit 17 Page 1 of 33**

When Recorded, Return To:
USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, NV 89121

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust"), made this 15th day of June, 2004, by and between Oak Mesa Investors, LLC, a California limited liability company ("Trustor"), Orange Coast Title Company ("Trustee"), and those persons listed on **Exhibit "A"** attached hereto ("Beneficiary"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in that certain Loan Agreement ("Loan Agreement") of even date herewith between Trustor and Beneficiary.

WITNESSETH:

That for good and valuable consideration, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, and for the purpose of securing, in such priority as Beneficiary may elect, each of the following:

1.    The due, prompt and complete payment, observance, performance and discharge of each and every obligation, covenant and agreement contained in that certain Promissory Note of even date herewith in the initial principal amount of Twenty Million Five Hundred Thousand Dollars ($20,500,000) (the "Note"), together with interest thereon specified therein, executed by Trustor, as maker, to the order of Beneficiary and any and all modifications, extensions or renewals thereof, whether hereafter evidenced by the Note or otherwise; and

2.    The payment of all other sums, with interest thereon at the rate of interest provided for herein or in the Note, becoming due or payable under the provisions of this Deed of Trust, the Loan Agreement or any other instrument or instruments heretofore or hereafter executed by Trustor having reference to or arising out of or securing the indebtedness represented by the Note; and

3.    The payment of such additional sums and interest thereof which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, whether or not evidenced by a promissory note or notes which are secured by this Deed of Trust; and

4.    The due, prompt and complete observance, performance and discharge of each and

1

Exhibit 17 Page 2 of 33

every obligation, covenant and agreement of Trustor contained in the Loan Agreement, the Note, this Deed of Trust or any other Loan Document; but notwithstanding the foregoing, this Deed of Trust does not secure the obligations of Joseph D. Milanowski and Thomas A. Hantges under that certain Unconditional Repayment and Completion Guaranty given in favor of Beneficiary and dated on or about the date hereof.

TRUSTOR DOES HEREBY irrevocably grant, transfer, bargain, sell, convey and assign to Trustee, in trust, with power of sale and right of entry and possession, and does grant to Beneficiary a security interest for the benefit and security of Beneficiary under and subject to the terms and conditions hereinafter set forth, in and to any and all of the following described property which is (except where the context otherwise requires) herein collectively called the "Mortgaged Property" whether now owned or held or hereafter acquired and wherever located, including any and all substitutions, replacements and additions to same:

     (a)    That certain real property located in Riverside and San Bernardino Counties, State of California, and more particularly described in **Exhibit "B,"** attached hereto and incorporated herein by this reference, together with all of the easements, rights, privileges, franchises, appurtenances thereunto belonging or in any way appertaining to the real property, including specifically but not limited to all appurtenant water, water rights and water shares or stock of Trustor, any and all general intangibles relating to the use and/or development of the real property, including development allotments, governmental permits, approvals, authorizations and entitlements, agreements to provide necessary utility or municipal services, all engineering plans and diagrams, surveys and/or soil and substrata studies, and all other rights, privileges and appurtenances related to the said real property and all of the estate, right, title, interest, claim and demand whatsoever of Trustor therein or thereto, either in law or in equity, in possession or in expectancy, now owned or hereafter acquired (hereinafter referred to as the "Property");

     (b)    All structures, buildings and improvements of every kind and description now or at any time hereafter located on the Property (hereinafter referred to as the "Improvements"), including all equipment, apparatus, machinery, fixtures, fittings, and appliances and other articles and any additions to, substitutions for, changes in or replacements of the whole or any part thereof, now or at any time hereafter affixed or attached to and which are an integral part of said structures, buildings, improvements or the Property or any portion thereof, and such Improvements shall be deemed to be fixtures and an accession to the freehold and a part of the Property as between the parties hereto and all persons claiming by, through or under such parties except that same shall not include such machinery and equipment of Trustor, its contractors or subcontractors, or any tenant of any portion of the Property or Improvements, which is part of and/or used in the conduct of the normal business of Trustor or its tenant conducted upon the Mortgaged Property, which is distinct and apart from the ownership, operation and maintenance of the Mortgaged Property.

     (c)    All articles of tangible personal property and any additions to, substitutions for, changes in or replacements of the whole or any part thereof other than personal property which is or at any time has become toxic waste, waste products or hazardous substances (hereinafter referred to as the "Personal Property"), including without limitation all wall-beds, wall-safes, built-in furniture and installations, shelving, partitions, door-tops, vaults, elevators, dumb-waiters, awnings,

Exhibit 17 Page 3 of 33

window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for the same, fire sprinklers, alarm systems, drapery rods and brackets, screens, water heaters, incinerators, wall coverings, carpeting, linoleum, tile, other floor coverings of whatever description, communication systems, all specifically designed installations and furnishings, office maintenance and other supplies and all of said articles of property, the specific enumerations herein not excluding the general, now or at any time hereafter placed upon or used in any way in connection with the ownership, operation or maintenance of the Property or the Improvements or any portion thereof and owned by Trustor or in which Trustor now has or hereafter acquires an interest, and all building materials and equipment now or hereafter delivered to the Property and intended to be installed or placed in or about the Improvements. Such tangible, personal property shall, in addition to all other tangible, personal property herein described or defined, specifically include each and every item of tangible, personal property and any substitutions for, changes in or replacements thereof which are used in the operation of the Improvements. Notwithstanding the breadth of the foregoing, the Personal Property shall not include (i) personal property which may be owned by lessees or other occupants of the Mortgaged Property; (ii) inventory of any lessee or occupant of the Mortgaged Property used in the normal course of the business conducted thereon; (iii) material, equipment, tools, machinery, or other personal property which is brought upon the Mortgaged Property only for use in construction, maintenance or repair and which is not intended to remain after the completion of such construction, maintenance or proper maintenance, of the Mortgaged Property; or (iv) such items of tangible personal property which have not been purchased or installed with proceeds of the Note and for which Beneficiary shall have executed such documents as may be required to subordinate to the lien or security interest of any purchase money lender or supplier of such tangible personal property;

(d)     All right, title and interest of Trustor, now owned or hereafter acquired in and to and lying within the right-of-way of any street, road, alley or public place, opened or proposed, vacated or extinguished by law or otherwise, and all easements and rights of way, public or private, tenements, hereditaments, appendages, rights and appurtenances how or hereafter located upon the Property or now or hereafter used in connection with or now or hereafter belonging or appertaining to the Property; and all right, title and interest in the Trustor, now owned or hereafter acquired, in and to any strips and gores adjoining or relating to the Property;

(e)     All judgments, awards of damages, settlements and any and all proceeds derived from such hereafter made as a result of or in lieu of any taking of the Mortgaged Property or any part thereof, interest therein or any rights appurtenant thereto under the power of eminent domain, or by private or other purchase in lieu thereof, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the Improvements thereon, including change of grade of streets, curb cuts or other rights of access for any public or quasi-public use or purpose under any law;

(f)     All rents, incomes, issues and profits, revenues, royalties, bonuses, rights, accounts, contract rights, insurance policies and proceeds thereof, general intangibles and benefits of the Mortgaged Property, or arising from any lease or similar agreement pertaining thereto (the "Rents and Profits"), and all right, title and interest of Trustor in and to all leases of the Mortgaged Property now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without

3

Exhibit 17 Page 4 of 33

limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether said cash or securities are to be held until the expiration of the terms of said leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of said terms with the right to receive and apply the same to said indebtedness, and Trustee or Beneficiary may demand, sue for and recover such payments but shall not be required to do so; and

(g)    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims.

Trustor makes the foregoing grant to Trustee for the purposes herein set forth; provided, however, that if the Trustor shall pay or cause to be paid to the holder of the Note all amounts required to be paid under the provisions of the Note, this Deed of Trust or any other Loan Documents, and at the time and in the manner stipulated therein, and shall further pay or cause to be paid all other sums payable hereunder and all indebtedness hereby secured, then, in such case, the estate, right, title and interest of the Trustee and Beneficiary in the Mortgaged Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Beneficiary that all amounts due to be paid under the Note have been paid or satisfied, and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by Trustee or Beneficiary, and of any other sums as herein provided, the Trustee shall, upon receipt of the written request of the Beneficiary, cancel, reconvey and discharge this Deed of Trust.

TO HAVE AND TO HOLD THE MORTGAGED PROPERTY UNTO THE TRUSTEE ITS SUCCESSORS AND ASSIGNS FOREVER, ALL IN ACCORDANCE WITH THE PROVISIONS HEREOF.

## ARTICLE 1
## TRUSTOR'S COVENANTS

Trustor covenants, warrants and agrees with Trustee and Beneficiary as follows:

1.1    Payment of Note. Trustor shall pay the principal and interest and other sums coming due with respect to the Note, this Deed of Trust or any of the Loan Documents at the time and place in the manner specified in and according to the terms thereof.

1.2    Title. The Trustor warrants that:

(a)    Trustor has good and marketable title to an indefeasible fee simple estate in the Property described in **Exhibit "B"**, subject only to those liens, charges or encumbrances set forth as Permitted Exceptions in the Loan Agreement; that Trustor has full power and authority to grant, bargain, sell and convey the Mortgaged Property in the manner and form herein done or intended hereafter to be done; that this Deed of Trust is and shall remain a valid and enforceable lien on the Mortgaged Property subject only to the Permitted Exceptions; that Trustor and its successors and assigns shall preserve its title and interest in and title to the Mortgaged Property and shall forever warrant and defend the same and shall warrant and defend the validity and priority of the

4

**Exhibit 17 Page 5 of 33**

lien thereof forever against all claims and demands of all persons whomsoever, and that this covenant shall not be extinguished by any exercise of power of sale or foreclosure sale hereof, but shall run with the land; and

      (b)    Trustor has and shall maintain good and marketable title to the Improvements and Personal Property, including any additions or replacements thereto, free of all security interests, liens and encumbrances, if any, except as set forth as Permitted Exceptions in the Loan Agreement, or as otherwise disclosed to and accepted by Beneficiary in writing, and has good right to subject Improvements and Personal Property to the security interest created hereunder. If the lien of this Deed of Trust on any Improvements or Personal Property be subject to a lease agreement, conditional sale agreement or chattel mortgage covering such property, then in the event of any default hereunder all the rights, title and interest of the Trustor in any and all deposits made thereon or therefor are hereby assigned to the Trustee, together with the benefit of any payments now or hereafter made thereon. There is also transferred, set over and assigned by Trustor to Trustee, its successors and assigns, hereby all of Trustor's right, title and interest in and to the Project Documents, and all leases and use agreements of machinery, equipment and other personal property of Trustor in the categories hereinabove set forth, under which Trustor is the lessee of, or entitled to use such items, and Trustor agrees to execute and deliver to Trustee or Beneficiary all such Project Documents, leases and agreements when requested by Trustee or Beneficiary. Trustor hereby covenants and agrees to well and punctually perform all covenants and obligations under such Project Documents, leases or agreements as it so chooses, but nothing herein shall obligate Trustee or Beneficiary to perform any obligations of Trustor under such Project Documents, leases or agreements unless Trustee or Beneficiary shall so choose; and

      (c)    Trustor will, at its own cost without expense to Trustee or Beneficiary, do, execute, acknowledge and deliver all and every such further act, deed, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as Trustee or Beneficiary shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Trustee and Beneficiary the property and rights hereby conveyed or assigned or intended now or thereafter so to be, or which Trustor may be or hereafter become bound to convey or assign to Beneficiary for the intention of facilitating the performance of the terms of this Deed of Trust or for the filing, registering, perfecting or recording of this Deed of Trust and any other Loan Document and, on demand, Trustor will execute, deliver and file or record one or more financing statements, chattel mortgages or comparable security instruments more effectively evidencing the lien hereof upon the Personal Property.

    1.3    <u>Business Existence.</u> Trustor shall do all things necessary to preserve and keep in full force and effect its rights and privileges to do business and to conduct its business in the State of California, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to the Trustor.

    1.4    <u>Payment of Taxes, Assessments, Insurance Premiums and Charges.</u> Trustor shall pay, prior to delinquency, all insurance premiums that become due and payable on any insurance policies required to be maintained hereunder, all taxes, assessments, charges and levies imposed by any Governmental Agency which are or may become a lien affecting the Property or any part

5

**Exhibit 17 Page 6 of 33**

thereof, including without limitation assessments on any appurtenant water stock; except that Trustor shall not be required to pay and discharge any tax, assessment, charge or levy that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited.

1.5    Maintenance and Repair. The Trustor shall, at its sole cost and expense, keep the Mortgaged Property in good operating order, repair and condition and shall not commit or permit any waste thereof, which condition, during the course of any construction or reconstruction of the Improvements, shall be subject to the normal constraints and effects of construction or reconstruction. Trustor shall make all repairs, replacements, renewals, additions and improvements and complete and restore promptly and in good workmanlike manner any Improvements which may be damaged or destroyed thereon, and pay when due all costs incurred therefor. Trustor shall not remove or demolish any of the Mortgaged Property conveyed hereby, nor demolish or materially alter the Mortgaged Property without the prior written consent of the Beneficiary. Trustor shall permit Trustee or Beneficiary or its agents the opportunity to inspect the Mortgaged Property, including the interior of any structures, at any reasonable times upon twenty-four (24) hours telephonic notice.

1.6    Compliance with Laws. The Trustor shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property or the operation thereof, and shall pay all fees or charges of any kind in connection therewith; except that Trustor shall not be required to pay and discharge any fee or charge that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles, and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited.

1.7    Insurance. Trustor shall be responsible to provide, maintain and keep in force or to cause to be maintained or kept in force, all policies of insurance on the Mortgaged Property as required by the Loan Agreement.

1.8    Casualty. The Trustor will give the Beneficiary prompt notice of damage to or destruction of any Improvements on the Property and in case of loss covered by policies of insurance, the Beneficiary is hereby authorized to make proof of loss if not made promptly by the Trustor or any lessee. Any expenses incurred by the Beneficiary in the collection of insurance proceeds, together with interest thereon from date of any such expense at the per annum interest rate set forth in the Note shall be added to and become a part of the indebtedness secured hereby and all be reimbursed to the Beneficiary, together with accrued interest thereon, no later than seventy-two (72) hours after demand therefor. Upon the occurrence of damage to or destruction of any Improvements, if Beneficiary shall so elect in its sole and unfettered discretion, the Beneficiary shall make the net proceeds of insurance available for repair, restoration and/or reconstruction under the

6

Exhibit 17 Page 7 of 33

conditions and in the manner specified in the following paragraph. If Beneficiary shall otherwise determine, then such insurance proceeds shall be applied by the Beneficiary to reduce the indebtedness secured hereby then most remotely to be paid. The foregoing notwithstanding, Beneficiary must apply insurance proceeds to the repair, restoration, and/or reconstruction of the Improvements unless the Beneficiary reasonably determines that the Mortgaged Property, so repaired, restored or reconstructed, will be of insufficient value or condition to adequately secure the Trustor's obligations hereunder. If the Beneficiary shall require that the Improvements be repaired or rebuilt then the repair, restoration, replacement or rebuilding of the Improvements shall be to a condition of at least equal value as prior to such damage or destruction. Insurance proceeds made available for restoration, repair, replacement or rebuilding of the Improvements shall be disbursed from time to time (provided no default exists in the Note or this Deed of Trust or any other Loan Document at the time of each such disbursement), in the manner set forth in the Loan Agreement. The Beneficiary may require that plans and specifications for the restoration, repair, replacement or rebuilding be submitted to and approved by the Beneficiary prior to the commencement of the work. Any surplus which may remain out of said insurance proceeds after payment of costs of building and restoration may, at the option of the Beneficiary, be applied either on account of the indebtedness secured hereby then most remotely to be paid or be paid to any person or persons entitled thereto. Application or release of proceeds under the provisions hereby shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. No interest shall be allowed on account of any such proceeds or any other funds held in the hands of the Beneficiary or the disbursing party hereunder.

      1.9   <u>Condemnation</u>. The Trustor, promptly upon obtaining knowledge of the institution of any proceeding for the condemnation of the Mortgaged Property or any portion thereof, shall notify Beneficiary of the pendency thereof. The Trustor hereby assigns, transfers and sets over unto the Beneficiary all compensation, rights of action and the entire proceeds of any award, up to the maximum amount of all amounts then due and payable under the Note and the Loan Documents, including, without limitation, all interest, costs, expenses and Advances, as that term is herein defined, and any claim for damages for any of the Mortgaged Property taken or damaged under the power of eminent domain or by condemnation or by sale in lieu thereof. Beneficiary may, at its option, commence, appear in and prosecute, in its own name, any action or proceeding, or make any compromise or settlement, in connection with such condemnation, taking under the power of eminent domain or sale in lieu thereof, and Trustor hereby appoints Beneficiary as its true and lawful attorney-in-fact for such purposes, such power being coupled with an interest. After deducting therefrom all of its expenses, including attorneys fees, the Beneficiary may elect, in its sole discretion and notwithstanding the fact that the security given hereby may not be impaired by a partial condemnation, to apply any part or all of the proceeds of the award, in such order as Beneficiary may determine, upon or in reduction of the indebtedness secured hereby whether due or not. Any application of all or a portion of the proceeds of any such award to the indebtedness shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. Trustor agrees to execute such further assignments of any compensation, award, damages, right of action and proceeds as Beneficiary may require.

      1.10   <u>Indemnification</u>. The Trustor shall appear in and defend any suit, action or proceeding that might in any way, in the reasonable judgment of Beneficiary, materially and

**Exhibit 17 Page 8 of 33**

detrimentally affect the value of the Mortgaged Property, the title to the Mortgaged Property or the rights and powers of Trustee or Beneficiary. Trustor shall, at all times, indemnify, hold harmless and on demand reimburse Beneficiary for any and all loss, damage, reasonable expense or cost, including cost of evidence of title and reasonable attorneys fees, arising out of or incurred in connection with any such suit, action or proceeding, and the sum of such expenditures shall be secured by this Deed of Trust and shall accrue interest at the "Default Rate" as that term is defined in the Note and shall be due and payable on demand. Trustor shall pay costs of suit, cost of evidence of title and reasonable attorneys' fees in any proceeding or suit brought by Trustee or Beneficiary to foreclose this Deed of Trust.

     1.11   <u>Sale of Premises or Additional Financing Not Permitted</u>. Trustor specifically agrees that:

     (a)   In order to induce Beneficiary to make the loan secured hereby, Trustor agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold, assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Trustor whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Beneficiary, then Beneficiary, at its option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Trustor shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Trustor shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Trustor is a substantial and material consideration to Beneficiary in its agreement to make the loan to Trustor secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Beneficiary's security for the indebtedness secured hereby. Moreover, Beneficiary has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Beneficiary's security if junior financing, except as shall be permitted by Beneficiary, or if other liens or encumbrances should attach to the Mortgaged Property.

     (b)   Trustor may request Beneficiary to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Trustor under the Loan Documents (the "Purchaser"). Beneficiary shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Beneficiary may impose limiting conditions and requirements to its consent to an assumption.

     (c)   In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Trustor, the Beneficiary may deal with such successor or successors in interest with reference to the Note or this Deed of Trust in the same

8

Exhibit 17 Page 9 of 33

manner as with Trustor, without in any way releasing, discharging or otherwise affecting the liability of Trustor under the Note, this Deed of Trust or the other Loan Documents. No sale of Trustor's interest in the Mortgaged Property, no forbearance on the part of Beneficiary, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Beneficiary shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Trustor herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Trustor's obligations under the Note, this Deed of Trust and all other Loan Documents. In the event such deed shall not contain such assumption, Beneficiary shall have all rights reserved to it hereunder in the event of a default or if Beneficiary shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to this Deed of Trust. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 1.11(a).

     1.12   Transfer of Personal Property. Trustor shall not voluntarily, involuntarily or by operation of law sell, assign, transfer, hypothecate, pledge or otherwise dispose of the Personal Property or any interest therein and shall not otherwise do or permit anything to be done or occur that may impair the Personal property as security hereunder, except that so long as this Deed of Trust is not in default, Trustor shall be permitted to sell or otherwise dispose of the Personal Property when absolutely worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property or in the conduct of the business of Trustor, upon replacing the same or substituting for the same other Personal Property at least equal in value to the initial value of that disposed of and in such a manner so that said Personal Property is sold in connection with the sale of the Property.

     1.13   Title to Replacements and Substitutions. All right, title and interest of Trustor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to the Personal Property, Improvements or the Mortgaged Property hereafter acquired by or released to Trustor or constructed, assembled or placed by Trustor on the Mortgaged Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further deed of trust, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Deed of Trust as fully and completely, and with the same effect and in the same priority as the lien of this Deed of Trust shall have attached to the item so replaced or substituted immediately prior to such replacement of substitutions, as though now owned by Trustor and specifically described in the granting clause hereof, but at any and all times Trustor will execute and deliver to Trustee any and all such further assurances, deeds of trust, conveyances or assignments thereof as Trustee or Beneficiary may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust.

     1.14   Security Agreement. This Deed of Trust shall be self-operative and shall constitute a security agreement for purposes of the California and Nevada Uniform Commercial Codes with respect to all of those portions of the Mortgaged Property which constitute personal property or fixtures governed by the California or Nevada Uniform Commercial Codes, provided, however,

9

**Exhibit 17 Page 10 of 33**

Trustor hereby agrees to execute and deliver on demand and hereby irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor (such power coupled with an interest) to execute, deliver and, if appropriate, to file such agreement, financing statement or other instruments as Beneficiary may request or require in order to impose or perfect the lien or security interest hereof more specifically thereon. Notwithstanding the above, this Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the California and Nevada Uniform Commercial Codes. This filing is to be recorded in the real estate records in the county in which the Mortgaged Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | Trustor |
| Address of Debtor: | See Section 5.12 |
| Name of Secured Party: | Beneficiary |
| Address of Secured Party: | See Section 5.12 |

1.15    Management. The Trustor agrees that the Beneficiary shall have and reserves the right to install professional management of the Mortgaged Property upon the occurrence of an Event of Default as defined herein. Such installation shall be at the sole discretion of the Beneficiary and nothing herein shall obligate the Beneficiary to exercise its right to install professional management. The cost of such management shall be borne by Trustor and shall be treated as an Advance under Section 1.16. Nothing contained herein shall limit Beneficiary's rights in equity to obtain a receiver for the Mortgaged Property.

1.16    Advances. If Trustor shall fail to perform any of the covenants herein contained or contained in any other Loan Document, the Beneficiary may, but is not obligated to, pay any and all amounts necessary to perform same or cause same to be performed on behalf of Trustor, and all sums so expended by Beneficiary for payment of any item whatsoever, including, but not by limiting the generality of the foregoing, payment of taxes, insurance premiums, lien claimants or assessments shall be secured by this Deed of Trust and each such payment shall be and all such payments shall be collectively referred to herein as an "Advance." The Trustor shall repay to Beneficiary on demand each and every Advance and the sum of each such Advance shall accrue interest at the Default Rate, as that term is defined in the Note, from the date of each Advance until repaid to Beneficiary. Nothing herein contained, including the payment of such amount or amounts by Beneficiary, shall prevent any such failure to perform on the part of Trustor from constituting an Event of Default as defined herein. Any such advance shall be deemed made under an obligation to do so.

1.17    Time. The Trustor agrees that time is of the essence hereof in connection with all obligations of the Trustor herein, in the Note or any other Loan Documents.

1.18    Estoppel Certificates. The Trustor within ten (10) days after written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust, and stating either that no setoffs or defenses exist against the Deed of Trust debt, or,

10

**Exhibit 17 Page 11 of 33**

if such setoffs or defenses are alleged to exist, the nature thereof.

1.19    Records.  The Trustor agrees to keep adequate books and records of account in accordance with generally accepted accounting principles consistently applied and will permit the Beneficiary and Beneficiary's agents, accountants and attorneys, to visit and inspect the Mortgaged Property and examine its books and records of account in respect to the Mortgaged Property, and to discuss its affairs, finances and accounts with the Trustor, at such reasonable times as Beneficiary may request upon twenty-four (24) hours telephonic notice.

1.20    Assignment of Rents and Profits.  Trustor does hereby assign to Beneficiary all Rents and Profits as follows:

(a)    The Rents and Profits are hereby absolutely and unconditionally assigned, transferred, conveyed and set over to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note, and all other sums payable under this Deed of Trust.  Prior to the happening of any Event of Default as set forth in Article 2 hereof, Trustor shall have a license to collect and receive all Rents and Profits.  If an Event of Default has occurred and is continuing, Trustor's right to collect and receive Rents and Profits shall cease and Beneficiary shall have the sole right, with or without taking possession of the Property, to collect all Rents and Profits, including those past due and unpaid.  Any Rents and Profits received by Trustor after an Event of Default has occurred and is continuing shall be deemed received by Trustor in trust as trustee for Beneficiary and for the benefit of Beneficiary.  Trustor shall be required to account to Beneficiary for any rents and profits not applied in accordance with the provisions of the Loan Documents.  Nothing contained in this Section 1.20(a) or elsewhere in this Deed of Trust shall be construed to make Beneficiary a "mortgagee in possession" unless and until Beneficiary actually takes possession of the Mortgaged Property either in person or through an agent or receiver.

(b)    Trustor agrees to execute such other assignments of Rents and Profits applicable to the Mortgaged Property as the Beneficiary may from time to time request while this Deed of Trust and the debt secured hereby are outstanding.  Trustor shall not (i) execute (except as noted above) an assignment of any of its right, title or interest in the Rents and Profits or any portion thereof, (ii) execute any lease of any portion of the Mortgaged Property which shall not be approved in advance by Beneficiary; or (iii) in any other manner impair the value of the Mortgaged Property or the security of the Beneficiary for the payment of the indebtedness.

(c)    Trustor covenants and agrees that it shall at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all leases of the Mortgaged Property now or hereafter existing, on the part of the lessor thereunder to be kept and performed.

(d)    Nothing herein shall obligate the Beneficiary to perform the duties of the Trustor as landlord or lessor under any such leases or tenancies.

(e)    The Trustor shall furnish to the Beneficiary, within fifteen (15) days after a request by the Beneficiary to do so, a written statement, certified as true and correct by the Trustor,

11

**Exhibit 17 Page 12 of 33**

containing the names of all lessees, if any, or occupants of the Mortgaged Property, the terms of their respective leases or tenancies, the spaces occupied and the rentals paid.

1.21    Compliance with Covenants.  Trustor warrants that it is not in violation of any covenant, condition or restriction regarding the ownership, use or occupancy of the Mortgaged Property and that the use of the Improvements, upon completion thereof, shall not constitute a violation of any such covenant, condition or restriction.  If Trustor shall fail to perform any obligations set forth in such covenants, conditions or restrictions, the Beneficiary may, but without obligation to do so, pay any and all amounts necessary to perform same or cause same to be performed on behalf of Trustor, and all sums so expended by Beneficiary for any such payment or performance shall be secured by this Deed of Trust and shall be an Advance under the terms of this Deed of Trust.  Trustor's failure to perform its obligations under any such declaration or mutual arrangement shall constitute an Event of Default.

ARTICLE 2
DEFAULT

2.1    Events of Default.  The occurrence of any of the following events shall be an Event of Default: (a) default in the payment or performance of any obligations secured hereby or contained herein, subject to the cure period set forth in Section 7.1(b) of the Loan Agreement; or (b) the occurrence of any "Event of Default" pursuant to the Loan Agreement.

ARTICLE 3
REMEDIES

Upon the occurrence of any Event of Default, Trustee and Beneficiary shall have the following rights and remedies:

3.1    Acceleration of Maturity.  Beneficiary may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Trustor hereunder or under the Note, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under the Note, this Deed of Trust or any other Loan Document shall become and be immediately due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding.

3.2    Default Interest.  Irrespective of whether Beneficiary exercises any other right set forth in this Article 3, after the Maturity Date or any acceleration thereof, or upon any Event of Default, through and including the date such default is cured, the entire principal balance under the Note shall thereafter earn interest at the Default Rate, as defined in the Note.

3.3    Operation of Mortgaged Property.  Beneficiary in person or by agent may, but is not obligated to, and without notice or demand upon, or consent from, Trustor and without releasing Trustor from any obligation hereunder; (i) make any payment or do any act which Trustor has failed to make or do; (ii) enter upon, take possession of, manage and operate the Mortgaged Property or

12

**Exhibit 17 Page 13 of 33**

any part thereof; (iii) make or enforce, or if the same be subject to modification or cancellation, modify or cancel leases upon such terms or conditions as Beneficiary deems proper; (iv) obtain and evict tenants, and fix or modify rents, make repairs and alterations and do any acts which Beneficiary deems proper to protect the security hereof; and (v) with or without taking possession, in its own name or in the name of Trustor, use or otherwise collect and receive the Rents and Profits and all other benefits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

3.4    <u>Judicial Remedies</u>.  Beneficiary may bring an action in any court of competent jurisdiction to foreclose this Deed of Trust or to enforce any of the covenants and agreements hereof and to take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note, this Deed of Trust or any other Loan Document, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as the Beneficiary shall elect.

3.5    <u>Maintenance of Mortgaged Property</u>.  Beneficiary may have a receiver appointed by a court of competent jurisdiction for the purpose of collecting rents and managing the Mortgaged Property, and Trustor hereby consents in advance to such appointment.  The Trustee or Beneficiary personally, or by its agents or attorneys, or by the receiver appointed by the court, may enter into and upon all or any part of the Mortgaged Property, and each and every part thereof, and may exclude the Trustor, its agents and servants wholly therefrom, and having and holding the same, may use, operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers.  Upon every such entry, any party occupying the Mortgaged Property in accordance with this Article 3, at the expense of the Mortgaged Property or Trustor, may from time to time maintain and restore the Mortgaged Property or any part thereof either by purchase, repair or construction, and in the course of such purchase, repair or construction may make such changes in the Improvements as it may deem desirable and may insure the same.  Likewise, from time to time, at the expense of the Mortgaged Property, the Trustee or Beneficiary or any such party may make all necessary or proper repairs, renewals and replacements of the Personal Property and such useful alterations, betterments and improvements thereto and thereon as to it may seem advisable.  In every such case the Trustee or Beneficiary or any such party shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of the Trustor with respect thereto either in the name of the Trustor or otherwise, as it shall deem best, and shall be entitled to collect and receive the Rents and Profits of the Mortgaged Property and every part thereof and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the agents, clerks, servants and other employees by it properly engaged and employed, the Beneficiary shall apply the monies arising as aforesaid, in the order as is set forth in the Note.

3.6    <u>Rights of Secured Party</u>.  Beneficiary shall have all of the remedies of a Secured

13

**Exhibit 17 Page 14 of 33**

Party under the Uniform Commercial Codes of California and Nevada, including without limitation, the right and power to sell, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of the Personal Property, or any part thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Beneficiary's option Trustor shall assemble the Personal Property and make it available to the Beneficiary at the place and the time designated in the demand. Beneficiary shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Beneficiary, without removal of the Personal Property from the Mortgaged Property, may render the Personal Property inoperable and dispose of the Personal Property on the Mortgaged Property. To the extent permitted by law, Trustor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Beneficiary existing after default hereunder, and to the extent any such notice is required and cannot be waived, Trustor agrees that as it relates to this Section 3.6 only, if such notice is mailed, postage prepaid, to the Trustor at the address set forth in Section 5.12 hereof at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of said notice.

   3.7 <u>Foreclosure</u>. All rights, powers and privileges granted to or conferred upon a beneficiary and trustee under a deed of trust in accordance with the laws of the State of California are hereby adopted and incorporated into this Deed of Trust by this reference and in accordance with such rights, powers and privileges:

     (a) The Trustee may, and upon the written request of Beneficiary shall, with or without entry, personally or by its agents or attorneys insofar as applicable pursuant to and in accordance with the laws of California:

       (i) subject to the provisions of the Loan Agreement, cause any or all of the Mortgaged Property to be sold under the power of sale granted by this Deed of Trust or any of the other Loan Documents in any manner permitted by applicable law. For any sale under the power of sale granted by this Deed of Trust, Trustee or Beneficiary must record and give all notices required by law and then, upon the expiration of such time as is required by law, may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Trustor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property (and, to the extent permitted by applicable law, may elect to deem all of the Mortgaged Property to be real property for purposes thereof), and at such time or place and upon such terms as Trustee and Beneficiary may determine and shall execute and deliver to the purchaser or purchasers thereof a deed or deeds conveying the property sold, but without any covenant or warranty, express or implied, and the recitals in the deed or deeds of any facts affecting the regularity or validity of a sale will be conclusive against all persons. In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Deed of Trust shall

14

**Exhibit 17 Page 15 of 33**

continue as a lien and security interest on the remaining portion of the Mortgaged Property; or

(ii)    institute proceedings for the complete or partial foreclosure of this Deed of Trust as a mortgage; and in this connection Trustor does hereby expressly waive to the extent permitted by law its right of redemption after a mortgage foreclosure sale; or

(iii)    apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Mortgaged Property and of all the earnings, revenues, rents, issues, profits and income thereof, which appointment is hereby consented to by Trustor; or

(iv)    take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Deed of Trust, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Beneficiary shall select.

(b)    The Trustee may adjourn from time to time any sale by it made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or sales and, except as otherwise provided by any applicable provision of law, the Trustee without further notice or publication, may make such sale at the time and place to which the sale shall be so adjourned.

(c)    Upon the completion of any sale or sales made by the Trustee under or by virtue of this Section, the Trustee shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof to the extent permitted by law. Any such sale or sales made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against the Trustor and against any and all persons claiming or who may claim the same, or any part thereof from through or under the Trustor.

(d)    In the event of any sale made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the entire principal of and interest on the Note and all accrued interest on the Note, and all other sums required to be paid by the Trustor pursuant to the Note and this Deed of Trust shall be due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding.

15

**Exhibit 17 Page 16 of 33**

(e)    Upon any sale made under or by virtue of this Section, whether made under the power of sale herein granted or granted in accordance with the laws of the state in which the Property is located or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness of the Trustor secured by this Deed of Trust the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which the Beneficiary is authorized to deduct under this Deed of Trust. The Beneficiary upon so acquiring the Mortgaged Property, or any part thereof shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

(f)    Trustor acknowledges that the obligations secured by this Deed of Trust are also secured by, among other things, a Control Account Escrow Agreement and Security Agreement. Beneficiary may foreclose on all or any portion of the real and personal property security described in this Deed of Trust and in such other documents in such order as Beneficiary may deem appropriate, and Beneficiary shall have all of the rights given to the holder of mixed collateral under the California Uniform Commercial Code (including Section 9-604 of the California Uniform Commercial Code) and other California statutes and common law.

3.8    Sales of Lots.    In the event the Beneficiary shall institute judicial proceedings to foreclose the lien hereof, and shall be appointed as mortgagee-in-possession of the Mortgaged Property, the Beneficiary during such time as it shall be mortgagee-in-possession of the Mortgaged Property pursuant to an order or decree entered in such judicial proceedings, shall have, and the Trustor hereby gives and grants to the Beneficiary, the right, power and authority to sell any of the Lots for such prices and upon conditions and provisions as such mortgagee-in-possession may deem desirable. Trustor expressly acknowledges and agrees that while the Beneficiary is a mortgagee-in-possession of the Mortgaged Property pursuant to an order or decree entered in such judicial proceedings, such Beneficiary shall be deemed to be and shall be the attorney-in-fact of the Trustor for the purpose of selling the Lots for the prices and upon the terms, conditions and provisions deemed desirable to such Beneficiary and with like effect as if such sales of Lots had been made by the Trustor as the owner in fee simple of the Mortgaged Property free and clear of any conditions or limitations established by this Deed of Trust. The power and authority hereby given and granted by the Trustor to Beneficiary shall be deemed to be coupled with an interest and shall not be revocable by Trustor.

3.9    Action by Beneficiary or Agent.    Subject to and in accordance with applicable law, any of the actions referred to in this Article may be taken by Beneficiary, either in person or by agent, with or without bringing any action or proceeding, or by receiver appointed by a court, and any such action may also be taken irrespective of whether any notice of default or election to sell has been given hereunder and without regard to the adequacy of the security for the indebtedness hereby secured.

3.10    Marshalling of Assets.    To the extent allowed by applicable law, Trustor on its own behalf and on behalf of its successors and assigns hereby expressly waives all rights to require a marshalling of assets by Trustee or Beneficiary or to require Trustee or Beneficiary to first resort

16

Exhibit 17 Page 17 of 33

to the sale of any portion of the Mortgaged Property which might have been retained by Trustor before foreclosing upon and selling any other portion as may be conveyed by Trustor subject to this Deed of Trust.

3.11    Occupancy by Trustor. In the event of a trustee's sale hereunder, if at the time of such sale Trustor occupies the portion of the Mortgaged Property so sold or any part thereof, Trustor shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either the tenant or any such purchaser, at a reasonable rental per day based upon the value of the portion of the Mortgaged Property so occupied, such rental to be due and payable daily to the purchaser. An action of unlawful detainer shall lie if the tenant holds over after a demand in writing from the purchaser for possession of such Mortgaged Property.

3.12    Non-Waiver of Default. The entering upon and taking possession of the Mortgaged Property, the collection of any Rents or Profits or other benefits and the application thereof, as aforesaid, shall not cure or waive any default theretofore or thereafter occurring or affect any notice of default hereunder or invalidate any act done pursuant to such notice; and, notwithstanding continuance in possession of the Mortgaged Property, or any part thereof by Beneficiary, Trustee or a receiver and the collection, receipt and application of Rents and Profits or other benefits, Beneficiary shall be entitled to exercise every right provided for in this Deed of Trust or by law upon or after the occurrence of a default, including the right to exercise the power of the sale.

3.13    Remedies Cumulative. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to exclude any other remedy herein or by law provided, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Trustee or Beneficiary to exercise any right or power accruing upon any Event of Default shall impair any right or power or shall be construed to be a waiver of any Event of Default or any acquiescence therein; and every power and remedy given by this Deed of Trust to Trustee or Beneficiary may be exercised from time to time as often as may be deemed expedient by Trustee or Beneficiary. If there exists additional security for the performance of the obligations secured hereby, to the extent permitted by law, the holder of the Note, at its sole option, and without limiting or affecting any of the rights or remedies hereunder, may exercise any of the rights and remedies to which it may be entitled hereunder either concurrently with whatever rights it may have in connection with such other security or in such order as it may determine. Nothing in this Deed of Trust or in the Note shall affect the obligation of Trustor to pay the principal of, and interest on, the Note in the manner and at the time and place therein respectively expressed.

## ARTICLE 4
## TRUSTEE

4.1    Acceptance of Trust, Notice of Indemnification. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, becomes a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee is a party, and Trustee shall not

17

**Exhibit 17 Page 18 of 33**

be obligated to perform any act required of it hereunder unless the performance of such act is requested in writing in the manner required by law and Trustee is reasonably indemnified against loss, cost, liability and expense.

4.2     Substitution of Trustee.  From time to time with or without cause for whatever reason, by a writing signed and acknowledged by Beneficiary and filed for record in the Office of the Recorder of the County in which the Mortgaged Property is situated, Beneficiary may appoint another trustee to act in the place and stead of Trustee or any successor and such writing shall refer to this Deed of Trust and set forth the date, book and page of its recordation.  The recordation of such instrument of substitution shall discharge trustee herein named and shall appoint the new trustee as the Trustee hereunder with the same effect as if originally named Trustee herein.  A writing recorded pursuant to this paragraph shall be conclusive proof of the proper substitution of such new trustee.

4.3     Trustee's Powers.  At any time, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of the Note secured hereby, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of said Mortgaged Property, Trustee may (i) reconvey any part of said Mortgaged Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement or any agreement subordinating the lien or charge hereof.

4.4     Reconveyance of Trust.  Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note or notes secured hereby for cancellation and retention and payment of its fees, Trustee shall reconvey, without warranty, the Mortgaged Property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

4.5     Indemnification of Trustee.  Trustee may rely on any document believed by him in good faith to be genuine.  All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon.  Trustor shall indemnify Trustee against all liability and expenses that he may incur in the performance of his duties hereunder, except for its own negligence.

## ARTICLE 5
## MISCELLANEOUS

5.1     Non-Waiver.  By accepting payment of any sum secured hereby after its due date or by accepting late performance of any obligation secured hereby, Beneficiary shall not waive its right against any person obligated directly or indirectly hereunder or on any indebtedness hereby secured, either to require prompt payment when due of all other sums so secured or to declare a default for failure to make payment except as to such payment accepted by Beneficiary.  No exercise of any right or remedy by Trustee or Beneficiary hereunder shall constitute a waiver of any other right or

18

Exhibit 17 Page 19 of 33

remedy herein contained or provided by law.

No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any default or acquiescence therein. Receipts of rents, awards, and any other monies or evidences thereof, pursuant to the provisions of this Deed of Trust and any disposition of the same by Trustee or Beneficiary shall not constitute a waiver of the power of sale or right of foreclosure by Trustee or Beneficiary in the event of a default or failure of performance by Trustor of any covenant or agreement contained herein or the Note secured hereby.

5.2    Right to Release. Without affecting the liability of any other person for the payment of any indebtedness herein mentioned (including Trustor should it convey said Mortgaged Property) and without affecting the lien or priority hereof upon any property not released, Beneficiary may, without notice, release any person so liable, extend the maturity or modify the terms of any such obligation, or grant other indulgences, release or reconvey or cause to be released or reconveyed at any time all or any part of the Mortgaged Property, take or release any other security or make compositions or other arrangements with debtors. Beneficiary may also accept additional security, either concurrently herewith or hereafter, and sell same or otherwise realize thereon either before, concurrently with, or after sale hereunder.

5.3    Protection of Security. Should Trustor fail to make any payment or to perform any covenant as herein provided, Beneficiary (but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof) may: (i) make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof, Beneficiary being authorized to enter upon the Mortgaged Property for such purposes; (ii) commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary; and/or (iii) pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of Beneficiary is prior or superior hereto and, in exercising any such power, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title and reasonable attorneys' fee. Any expenditures in connection herewith shall be deemed an Advance and shall constitute part of the indebtedness secured by this Deed of Trust

5.4    Rules of Construction. When the identity of the parties hereto or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The headings of each article, section or paragraph are for information and convenience only and do not limit or construe the contents of any provision hereof.

5.5    Severability. If any term of this Deed of Trust or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Deed of Trust shall be valid and enforceable to the fullest extent.

5.6    Successors in Interest. This Deed of Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their heirs, executors, administrators, successors and

19

**Exhibit 17 Page 20 of 33**

assigns. All obligations of Trustor hereunder are joint and several. The term "Beneficiary" shall mean the holder and owner, including pledges, of the Note secured hereby, whether or not named as Beneficiary herein and any owner or holder of the beneficial interest under this Deed of Trust.

5.7    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    This Deed of Trust shall be construed according to and governed by the laws of the State of Nevada excepting the provisions in Articles 3.6, 3.7 and 3.8 governing the remedy of foreclosure, which shall be governed by the laws of the State of California.

(b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 5.12 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

5.8    Modifications. This Deed of Trust may not be amended, modified or changed nor shall any waiver of any provision hereof be effective, except only by an instrument in writing and

20

**Exhibit 17 Page 21 of 33**

signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought.

5.9    No Merger.  If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Mortgaged Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger, and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates.  In addition, upon the foreclosure of the lien created by this Deed of Trust on the Mortgaged Property pursuant to the provisions hereof, any leases or subleases then existing shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall have given written notice thereof to such tenant or subtenant.

5.10    Attorneys' Fees.  If Beneficiary reasonably incurs any costs or expenses, including attorneys' fees, for any of the following relating to this Deed of Trust (or any other instrument evidencing or securing this loan): (a) the interpretation, performance or enforcement thereof; (b) the enforcement of any statute, regulation or judicial decision; (c) any collection effort; or (d) any suit or action for the interpretation, performance or enforcement thereof is commenced or defended, or, if any other judicial or nonjudicial proceeding is instituted by Beneficiary or any other person, and an attorney is employed by Beneficiary to appear in any such action or proceeding, or to reclaim, seek relief from a judicial or statutory stay, sequester, protect, preserve or enforce Beneficiary's interest in this Deed of Trust or any other security for the Note, including but not limited to proceedings under federal bankruptcy law, in eminent domain, under the probate code, or in connection with any state or federal tax lien, then Trustor agrees to pay the reasonable attorneys' fees and costs thereof.  Such fees and costs shall be added to the principal of the Note and shall bear interest at the Default Rate.  The foregoing notwithstanding, in any action commenced by Trustor or Beneficiary against the other to enforce the provisions of this Deed of Trust or any other instrument evidencing or securing this loan, the prevailing party of such action shall be entitled to recover its reasonable attorneys' fees (as set forth above) from the non-prevailing party and the non-prevailing party shall not be entitled to recover its attorneys' fees.

5.11    Conflict.  If the term of any other Loan Document, except the Note, shall be in conflict with this Deed of Trust, then this Deed of Trust shall govern to the extent of the conflict. If the term of this Deed of Trust shall be in conflict with the Note, the Note will then govern to the extent of the conflict.

5.12    Notices.  All notices to be given pursuant to this Deed of Trust shall be sufficient if given by personal service, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or

Exhibit 17 Page 22 of 33

registered mail.

**TRUSTOR'S ADDRESS:**                    Oak Mesa Investors, LLC
                                          c/o ~~Ashby Development~~    *OAR*
                                          470 E. Harrison St.
                                          Corona, CA 92879-1314
                                          Attn ~~Richard K. Ashby~~  *JEANNE DERINGER*    *DER*

**BENEFICIARY'S ADDRESS:**                c/o USA Commercial Mortgage Company
                                          4484 South Pecos Road
                                          Las Vegas, Nevada 89121
                                          Attn. Joseph D. Milanowski

    5.13    <u>Request for Notice of Default</u>. Trustor requests that a true and correct copy of any notice of default and any notice of sale be sent to Trustor at the address set forth in Section 5.12 hereof.

    5.14    <u>Late Charges</u>. As set forth and defined in the Note, there shall be due to Beneficiary a Late Charge of five percent (5%) of the amount of any payment which is received by Beneficiary so as to incur a Late Charge, and all such Late Charges are secured hereby.

    5.15    <u>Statutory Covenants</u>. Where not inconsistent with the above, the following covenants, Nos. 1; 2 (full replacement value); 3; 4 (twenty percent [20%] per annum); 5; 6; 7 (a reasonable percentage); 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

    5.16    <u>Non-Assumption</u>. Notice is hereby given that Trustor's obligations under this Deed of Trust may not be assumed except as permitted by Section 1.11 hereof. Unless otherwise provided herein, any transfer of Trustor's interest in the Mortgaged Property or any attempted assumption of Trustor's obligations under the Deed of Trust not so approved shall constitute a default hereunder and shall permit Beneficiary to accelerate the Maturity Date of the Note. Reference to applicable sections of the Loan Documents must be made for the full text of such provisions.

    5.17    <u>Review of Covenants, Conditions and Restrictions</u>. No covenant, condition or restriction or any rule or regulation or any other document or agreement, however, denominated, which shall purport to apply to the ownership, operation, maintenance or governance of the Mortgaged Property or any part thereof, nor any article of incorporation bylaw or any other document or agreement, however denominated, which shall purport to establish an organization for the operation, maintenance of governance of the Mortgaged Property or any part thereof, shall be approved, executed and/or recorded without the express prior written consent of Beneficiary.

    5.18    <u>Loan Agreement</u>. Performance of Trustor's obligations under that certain Loan Agreement of even date herewith by and between Trustor and Beneficiary are secured by this Deed of Trust, and a default thereunder shall constitute an Event of Default under this Deed of Trust.

    5.19    <u>Partial Releases of Lots and Units</u>. So long as no Event of Default has occurred and

22

**Exhibit 17 Page 23 of 33**

is continuing, Beneficiary shall release individual or multiple Lots (whether or not said Lot(s) contain a home on them) from the lien and operation of the Deed of Trust upon satisfaction in Lender's sole discretion of the following requirements:

(a)

(b)  Trustor pays all costs and expenses in connection with such release and reconveyance.

(c)  Beneficiary shall have obtained a form CLTA 111 endorsement to its lender's policy of title insurance, and if requested by Beneficiary, an endorsement insuring that the partial reconveyance does not constitute a violation of the California Subdivision Map Act, all at the cost and expense of Trustor;

(d)  for the release of the last Lot remaining subject to the lien of this Deed of Trust, the total amount of the indebtedness secured hereby shall be reduced to zero, and all obligations secured hereby shall be performed in full.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be signed as of the date first above written.

TRUSTOR:  Oak Mesa Investors, LLC
Jabral Investments, LLC, Manager

By: _____
Lawrence E. Redman, Manager

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF  Riverside       )

On June 16, 2004, before me, Kathlene B. Hopkins , a Notary Public, personally appeared Lawrence E. Redman, ☑ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

N:\LegalShare\Loans\Oak Mesa Investors\DOT.wpd

23



Exhibit 17 Page 24 of 33

Under the provisions of Government Code 27361.7, I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary: KATHLENE B. HOPKINS

Commission #: 1488261

County Where Bond is Filed: RIVERSIDE

State Where Bond is Filed: CALIFORNIA

Date Commission Expires: MAY 7, 2008

Date: JUNE 17, 2004

Signature:

**Exhibit 17 Page 25 of 33**

## EXHIBIT "A"

### LENDER

| Names | Amount |
|---|---|
| Liberty Resource Management Corp. | $200,000.00 |
| Deane Albright & Casey Persing Trustees of the Albright Persing & Associates Profit Sharing Plan | $100,000.00 |
| First Savings Bank Custodian For Harvey Alderson IRA | $50,000.00 |
| Robert L. Allgeier and Donna L. Allgeier trustees of the R. L. Allgeier Family Trust dated 10/4/1997 | $105,000.00 |
| A.I.G. Limited | $50,000.00 |
| James Annin and Betty Annin Trustees of Annin Family Trust | $50,000.00 |
| Rod Arbogast & Donna Arbogast, Trustees of the Arbogast Family Trust | $500,000.00 |
| B.E.A. Family, INC. Non-Profit Corporation, Bert E. Arnlund President | $50,000.00 |
| Bert E. Arnlund Trustee of the Bert E. Arnlund Charitable Remainder Unitrust dated 12/31/01 | $100,000.00 |
| X-Factor, Inc. | $150,000.00 |
| Helen T. Bahneman | $100,000.00 |
| Leonard Baker & Barbara Baker Co-Trustees of the Leonard Baker & Barbara Baker Revocable Trust | $50,000.00 |
| Daniel C. Barcia, a married man dealing with his sole & separate property | $50,000.00 |
| Denise L. Barzan, a married woman dealing with her sole & separate property & Barbara Snelson, a married woman dealing with her sole & separate property, as joint tenants with the right of survivorship | $50,000.00 |
| Jack J. Beaulieu Trustee of the Jack J. Beaulieu Revocable Living Trust dtd 9/1/94 | $400,000.00 |
| Bay Area Capital, LLC | $55,000.00 |
| Stanley Belnap & Gloria Belnap, husband & wife, as joint tenants with right of survivorship | $150,000.00 |
| Russell M. Blood & Judy A. Blood Trustees of the Blood Family Trust dtd 5/18/99 | $50,000.00 |
| William Bolding & Carolyn Bolding, joint tenants with right of survivorship | $50,000.00 |
| Judy A. Bonnet | $100,000.00 |
| John Borkoski & Kathleen Borkoski, husband & wife, as joint tenants with right of survirvorship | $50,000.00 |
| Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $125,000.00 |
| June F. Brehm, a married woman dealing with her sole & separate property | $50,000.00 |
| Robert W. Browne & Muriel L. Browne Trustees of the Browne 1990 Family Trust dated 6/11/90 | $100,000.00 |
| Paul Bruggemans | $200,000.00 |
| First Savings Bank Custodian For Edward Burgess IRA | $130,000.00 |
| Leonard E. Cady & Mary Monica Cady,  joint tenants with right of survivorship | $50,000.00 |
| Doyne J. Carson & Elsie L. Carson Trustees of the Carson Family Trust dated 9/16/93 | $50,000.00 |

24

Exhibit 17 Page 26 of 33

| | |
|---|---|
| Stefan R. Cavin, an unmarried man | $50,000.00 |
| Barbara A. Cecil, a married woman dealing with her sole & separate property | $50,000.00 |
| Kar Sei Cheung, a married woman dealing with her sole & separate property | $50,000.00 |
| Jill Chioino & John Choe, joint tenants with right of survivorship | $75,000.00 |
| Robert T Chylak & Barbara M Chylak Trustees of the Robert T Chylak & Barbara M Chylak Family Trust dated 10/30/90 | $60,000.00 |
| Larry E. Colborn & Loretta A. Colborn Trustees for the Colborn Revocable Living Trust dated 8/6/90 | $50,000.00 |
| The Mark Combs Pension & Profit Sharing Plans | $300,000.00 |
| Donald W. Cook Trustee of the Donald W. Cook Trust | $100,000.00 |
| June Cook Trustee of the Alvin Broido Marital Trust U/A dated 4/24/72 | $50,000.00 |
| James B. Corison Trustee of the James B. Corison Trust dated 12/3/98 | $100,000.00 |
| Bruce H. Corum, Trustee of the Credit Shelter Trust | $125,000.00 |
| Sam Costanza Trustee of the Costanza 1987 Survivor's Trust dated 3/12/87 | $55,500.00 |
| Sam Costanza, Trustee of The Costanza 1987 Decedent's Trust | $50,000.00 |
| Kevon Cottrell & Karen Cottrell, joint tenants with right of survivorship | $50,000.00 |
| James A. Coy & Margaret G. Coy Trustees of the James A. Coy & Margaret G. Coy Revocable Trust dated 9/27/00 | $50,000.00 |
| Jean C. Crowley an unmarried woman | $50,000.00 |
| Chris Dagiantis Trustee of the Chris Dagiantis Revocable Inter Vivos Trust | $60,000.00 |
| Glenn B. Davis & Bernie S. Davis Trustees of the Davis Revocable Living Trust UA 7/06/88 | $50,000.00 |
| Joseph Davis & Marion Sharp Co-Trustees of the Davis Family Trust | $80,000.00 |
| Tracy A. DeBerry, an unmarried man | $50,000.00 |
| DeHart/Hooks, L.P. | $50,000.00 |
| Robert DiBias & Louise G. Sherk Trustees of the Louise G. Sherk, MD, a medical corporation, Employee Benefit Plan Trust | $60,000.00 |
| Eric C. Disbrow Trustee of the Eric C. Disbrow MD Inc. Profit Sharing Plan | $50,000.00 |
| Pat A. Dolce | $50,000.00 |
| First Savings Bank Custodian for John C. Dunklee IRA | $200,000.00 |
| Sierra Eye Associates Profit Sharing Plan | $100,000.00 |
| Mark E. Eames & Sandy K. Eames, husband & wife, joint tenants with the right of survivorship | $50,000.00 |
| First Savings Bank Custodian for Robert D. Earp IRA | $50,000.00 |
| First Savings Bank Custodian for Lamberto Eugenio IRA | $100,000.00 |
| Byrne E. Falke Trustee of the Village Hardware Pension Trust | $125,000.00 |
| Byrne Falke Trustee of the Byrne Falke Living Trust | $125,000.00 |
| Marguerite Falkenborg Trustee of the Marguerite Falkenborg 2000 Trust dated 6/20/00 | $100,000.00 |
| Sierra West, Inc. | $50,000.00 |
| William H. Favro & Carol M. Favro Trustees of the Favro Trust dated 9/14/00 | $60,000.00 |
| Paul Fedrizzi & Jane E. Fedrizzi, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| A-1 Casters & Equipment Reno, L.L.C. | $50,000.00 |
| E & M Hardware Profit Sharing Plan | $200,000.00 |

25

Exhibit 17 Page 27 of 33

| | |
|---|---|
| William & Belinda Feeney, L.L.C. | $100,000.00 |
| Laura Fensterstock, a married woman dealing with her sole & seperate property | $50,000.00 |
| Larry Fernandez Trustee of the Fernandez Family Trust dated 6/20/84 | $50,000.00 |
| First Savings Bank Custodian For Lynn Fetterly IRA | $125,000.00 |
| Daniel K. Fix & Barbara J. Fix Trustees of the Daniel K. Fix & Barbara J. Fix Family Trust | $50,000.00 |
| Dennis Flier & Carol Flier Trustees of the Flier Family Trust dated 1/21/98 | $50,000.00 |
| Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $130,000.00 |
| Donald H. Forbes & Raquel R. Forbes Trustees of the Forbes Revocable Trust dated 9/18/03 | $50,000.00 |
| James W. Forsythe & Earlene M. Forsythe, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Judith L. Fountain trustee of the Judith L. Fountain Irrevocable trust dtd 08/26/97 | $250,000.00 |
| Alan B. Friedman | $100,000.00 |
| Brad H. Friedmutter Trustee of The Friedmutter Family Trust | $50,000.00 |
| Barry Gambarana, an unmarried man | $50,000.00 |
| Lynn M. Gillmore & Jimmy D. Gillmore, husband & wife | $50,000.00 |
| Sylvia M. Good Successor Trustee under the Sylvia M. Good Survivor's Trust established under the Sam Good Family Trust dated 6/25/86, amended & restated 3/14/91, as amended | $50,000.00 |
| Kenneth R. Greene & N. Dean Greene, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Joanne M. Grundman, a single women & Erna D. Grundman, a single women, as joint tenants with right of survivorship | $50,000.00 |
| Suzanne M. Halvorson Trustee of the Suzanne M. Halvorson Trust dated 3/21/03 | $50,000.00 |
| Robert L. Hansen & Patricia S. Hansen, husband & wife, as joint tenants with the right of survivorship | $50,000.00 |
| William E. Hansen & Kathleen Hansen, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Paul Hargis & Susan Gail Hargis, as joint tenants with right of survivorship | $125,000.00 |
| First Savings Bank Custodian For Herbert R. Heider IRA | $50,000.00 |
| Richard A. Helmberger & Genene M. Helmberger, joint tenants with right of survivorship | $100,000.00 |
| Donald L. Hess, an unmarried man & Kay J. Hart, an unmarried woman, as joint tenants with right of survivorship | $50,000.00 |
| First Trust Company of Onaga Custodian for Brenda High IRA | $82,000.00 |
| First Trust Company of Onaga Custodian for Hamilton High IRA | $50,000.00 |
| William J. Hinson, Jr. | $50,000.00 |
| Delwin C. Holt, an unmarried man | $50,000.00 |
| Athanasios N Iordanou & Rebecca Iordanou, husband & wife, as joint tenants with right of survivorship | $100,000.00 |
| David Jacobson & Cristina Jacobson Trustees of the Jacobson Family Trust dated 2/13/97 | $50,000.00 |
| Walter M. Jagodzinski & Jacqueline F. Jagodzinski Trustees of the Walter Jagodzinski Family Trust dated 10/31/90 | $100,000.00 |

26

Exhibit 17 Page 28 of 33

| | |
|---|---|
| Charles E. Johnson & Janet P. Johnson, husband & wife, as joint tenants with right of survivorship | $100,000.00 |
| Ronald Alvin Johnson & Janice Burgarello Trustees of the Ronald Alvin Johnson & Janice Burgarello Trust dated 1/10/93 | $50,000.00 |
| David Joyce, a married man dealing with his sole & separate property | $75,000.00 |
| K. Ken Kaneda & Brigitte Arend-Kaneda Trustees of the Kaneda Living Trust dated 5/30/02 | $50,000.00 |
| Russell E. Karsten Trustee of the Karsten 1987 Trust | $200,000.00 |
| Arthur E. Kebble & Thelma M. Kebble Trustees of the Arthur E. Kebble & Thelma M. Kebble Family Trust dated 5/19/95 | $50,000.00 |
| Robert J. Kehl & Ruth Ann Kehl, husband & wife, as joint tenants with right of survivorship | $500,000.00 |
| First Savings Bank Custodian for Frank C. Kendrick IRA | $70,000.00 |
| Leslie F. Kerns & Alma D. Kerns, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Clawiter Associates, LLC | $50,000.00 |
| Frederick W. Kewell Trustee of the Barbara J. Kewell Trust dated 7/18/89 | $100,000.00 |
| Edward H. Kim, an unmarried man | $50,000.00 |
| Lawrence A. Kirkham & Kathleen B. Sanginiti Trustees of the Kirkham & Sanginiti Trust dated 2/29/96 | $50,000.00 |
| David W. Knobel | $150,000.00 |
| Guenther A. Kohler & Elfriede Kohler Trustees of the 1989 Kohler Living Trust dated 6/13/89 | $75,000.00 |
| Ruth A. Kuester Trustee of the Ruth A. Kuester Trust dated 1/29/91 | $115,000.00 |
| James R. LaFleur & Nancy N. LaFleur, husband & wife, as joint tenants with right of survivorship | $100,000.00 |
| Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000.00 |
| Han K. Lee & Carol L. Lee, husband & wife, as joint tenants with the right of survivorship | $50,000.00 |
| Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | $75,000.00 |
| Robert E. Levy, a married man dealing with his sole & separate property | $50,000.00 |
| Gerald Lewis & Judith J. Lewis, joint tenants with right of survivorship | $50,000.00 |
| James H. Lidster & Phyllis M. Lidster Trustees of the James H. Lidster Family Trust dated 1/20/92 | $50,000.00 |
| Mario M. Lommori & Clarice E. Lommori Trustees of the Lommori Family Trust dated 4/12/1993 | $50,000.00 |
| Rose M. Louis & Robert S. Louis, wife & husband, as joint tenants with right of survivorship | $50,000.00 |
| William Lukasavage & Joanne Lukasavage, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Robert Lundberg | $65,000.00 |
| John M. Luongo & Gloria Luongo, joint tenants with right of survivorship payable on death to Stephanie Luongo | $50,000.00 |

**Exhibit 17 Page 29 of 33**

| | |
|---|---|
| B. Sue Luthi Trustee of the B. Sue Luthi Trust dated 7/9/97 | $60,000.00 |
| James E. Maclaren | $150,000.00 |
| Rogie C. Madlambayan, a single man | $100,000.00 |
| Marie A. Maki & Raymond E. Maki, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Martin L. Manning, a married man dealing with sole & separate property | $50,000.00 |
| Zeev Mansdorf & Cila Mansdorf Trustees of the Mansdorf 1993 Trust | $100,000.00 |
| Lily Markham & Irene Anne Markham-Tafoya | $50,000.00 |
| Terry Markwell & Christiane Markwell Trustees of the Markwell Family Trust | $150,000.00 |
| JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000.00 |
| V.R. Marrone & Reba F. Marrone Trustees of the V.R. & Reba F. Marrone Trust dated 10/22/01 | $50,000.00 |
| First Savings Bank Custodian For Bobbie Marrs IRA | $50,000.00 |
| First Savings Bank Custodian For Carmen G. McColly IRA | $62,000.00 |
| First Savings Bank Custodian For Martin W. McColly IRA | $55,000.00 |
| Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000.00 |
| Teri L. Melvin, a single woman | $100,000.00 |
| Consuela Masias, a married woman dealing with her sole & seperate property | $50,000.00 |
| George H. Michael & Doramae Michael Trustees of the George H. Michael Family Trust Agreement dated 12/4/81 | $175,000.00 |
| Michaelian Holdings, LLC | $90,000.00 |
| Robert D. Mierau & Sandra J. Mierau Trustees of the Mierau Living Trust dated 9/14/98 | $50,000.00 |
| Connie Mihos & Ivan Loebs, as joint tenants with right of survivorship | $50,000.00 |
| Barbara Reiss Miller Trustee of the Barbara Reiss Miller Revocable Living Trust dated 2/4/03 | $50,000.00 |
| Albert J. Mineconzo Trustee of the Albert J. Mineconzo Living Trust dtd 11/4/97 | $50,000.00 |
| Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $50,000.00 |
| Monighetti, Inc. | $100,000.00 |
| Ronald K. Montesano Trustee for the benefit of The Underpass Trust | $50,000.00 |
| Arthur B. Moore | $60,000.00 |
| Adelaide Moschogianis & Christine Moschogianis | $50,000.00 |
| Anne Marie Mueller Trustee of the Anne Marie Mueller Trust | $50,000.00 |
| Laura Anne Taylor Mulkey | $175,000.00 |
| Daniel D. Newman Trustee of the Daniel D. Newman Trust dated 11/1/92 | $50,000.00 |
| Stanley Omaye, a married man dealing with his sole & separate property | $50,000.00 |
| Philip A. Palmintere & Nanci S. Palmintere Trustees of the Palmintere Revocable Trust dated 6/19/98 | $50,000.00 |
| Charles Lebron Parker & Mary Jane Parker, as joint tenants with right of survivorship | $50,000.00 |
| Bill Penn & Isa Penn Trustees of the Penn Family Trust dated 1/20/90 | $87,000.00 |
| Michael Percy & Carol Percy Trustees of the Percy Family Trust U/A 9/28/99 | $150,000.00 |
| Robert D. Phillips, an unmarried man | $120,000.00 |
| Lynda L. Pinnell Trustee of the Lynda L. Pinnell Living Trust dated 7/24/00 | $75,000.00 |

Exhibit 17 Page 30 of 33

| | |
|---|---|
| Ali Pirani, an unmarried man | $100,000.00 |
| Colleen Poindexter, an unmarried woman | $50,000.00 |
| Polacheck & Associates, Inc.  Profit Sharing Plan dated 2/20/73 | $50,000.00 |
| Stephen B. Polacheck | $50,000.00 |
| Jack Polen & Gladys Polen Trustees of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000.00 |
| Jeanne Rawdin, a single woman | $250,000.00 |
| Donald E. Redmon & Jaylyle Redmon Trustees of the Donald E. Redmon & Jaylyle Redmon Family Trust dated 10/31/95 | $50,000.00 |
| First Savings Bank Custodian For Manuel Rice IRA | $62,000.00 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $100,000.00 |
| Rachel Riehle, an unmarried woman | $100,000.00 |
| Joseph N. Rizzuto & Dorothy Rizzuto Trustees of the Joseph N. Rizzuto Family Trust dated 4/24/89 | $50,000.00 |
| Cassandra Robbins, an unmarried woman | $60,000.00 |
| George A. Roberts & Sharon D. Roberts Trustees of the Roberts Trust dtd 3/11/03 | $400,000.00 |
| Saul Roisentul & Ilene Roisentul Trustees of the Roisentul Family Trust | $50,000.00 |
| David Rosner Trustee of the David Rosner Revocable Trust | $50,000.00 |
| Michael C. Ross & Gayle G. Ross Trustees of the Ross Family Trust dtd 6/12/03 | $100,000.00 |
| Thalia Nicholas Routsis Trustee of the Thalia Routsis Family Trust dated 7/24/90 | $100,000.00 |
| Michael P. Sapourn & Catherine O. Spourn, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Steven G. Sapourn, a married man dealing with his sole & separate property | $65,000.00 |
| Charles Sass | $50,000.00 |
| Howard C. Sayler & Phyllis L. Sayler Trustees of the Sayler Family Trust dated 9/2/98 | $75,000.00 |
| Robert A Schell & Ruth M Schell Trustees of the Schell Family Trust dtd 8/21/92 | $50,000.00 |
| Karryn Rae Sherman Trustee of the Jeanne Heater Trust II | $50,000.00 |
| Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Herbert Slovis, a single man & Julie B. Slovis, a single woman, as joint tenants with right of survivorship | $100,000.00 |
| Edwin L. Snelson & Barbara Snelson, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Rocklin/Redding LLC | $1,000,000.00 |
| Benjamin J. Solomon & Margaret C. Solomon Trustees of the Solomon Family Living Trust dated 3/12/93 | $250,000.00 |
| David A. Souza, a married man dealing with his sole & separate property | $100,000.00 |
| William M. Spangler & Jean A. Spangler, as joint tenants with right of survivorship | $50,000.00 |
| Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dtd 6/11/92 | $125,000.00 |
| Brett W. Sperry, an unmarried man | $200,000.00 |
| Roy M. Stephen & Carol J. Stephen Trustees of the Stephen Family Trust dated 3/22/84 | $50,000.00 |

29

**Exhibit 17 Page 31 of 33**

| | |
|---|---|
| Tad Stephen & Diane Stephen, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Joseph Sterling & Theresa Sterling Trustees of the Sterling Family Trust dated 6/14/02 | $50,000.00 |
| Michael D. Stewart & Mary Jude Stewart Trustees of the Stewart Family Trust dated 1/15/98 | $50,000.00 |
| David Stoebling Trustee of the Stoebling Family Trust | $50,000.00 |
| Robert A Susskind, an unmarried man | $75,000.00 |
| Leland K. Swanson Trustee of the Alvin M. Swanson & Grace E. Swanson Living Trust dated 7/26/01 | $180,000.00 |
| Sovereign Capital Advisors, LLC | $150,000.00 |
| First Savings Bank Custodian For Louise Teeter IRA Rollover | $60,000.00 |
| Norman Teeter, a single man | $82,000.00 |
| Robert G. Teeter | $60,000.00 |
| Lawrence H. Tengan & Lorraine K. Tengan Trustees of the Lawrence H. Tengan & Lorraine K. Tengan Revocable Trust | $50,000.00 |
| David M. Thatcher, a single man | $50,000.00 |
| Daryl D. Thompson Trustee of the Thompson 1993 Trust dated 1/26/93 | $550,000.00 |
| Sterling Tom Trustee of the Tom Trust | $50,000.00 |
| Sigmund Tomczak & Diana Tomczak Trustees of the Tomczak Family Trust dated 4/25/83 | $150,000.00 |
| Gerry Topp | $50,000.00 |
| Augustine Tuffanelli Trustee of the Augustine Tuffanelli Family Trust dtd 7/26/94 | $50,000.00 |
| Shirley Jean Tuffanelli Trustee of the Shirley Jean Tuffanelli Trust dated 6/18/91 | $50,000.00 |
| Pensco Trust Co. Inc. Custodian For Robert William Ulm IRA | $50,000.00 |
| Robert W. Ulm, an unmarried man | $50,000.00 |
| Benedict E. Urban & Roselyn N. Urban Trustees of The Benedict E. Urban & Roselyn N. Urban Family Trust dated 2/3/04 | $50,000.00 |
| USA Commercial Mortgage | $9,500.00 |
| Gloria Valair, a single woman | $50,000.00 |
| Donald E. Virts & Patricia Virts Trustees of the Virts Revocable Living Trust | $60,000.00 |
| Dennis J. Ward & Patricia A. Ward Trustees of the Ward Trust dated 5/21/96 | $150,000.00 |
| Frank Wasko, a single man | $50,000.00 |
| Ardis Weible & Dean F. Weible Co-Trustees of the Weible 1981 Trust dtd 6/30/81 | $100,000.00 |
| William D. Wickland & Victoria R. Wickland, husband & wife, as joint tenants with right of survivorship | $200,000.00 |
| Sharlyn Woolley, an unmarried woman | $50,000.00 |
| Gregory D. Yonai Trustee of the Gregory D. Yonai Family Trust | $50,000.00 |
| Judy S. Young, an unmarried woman | $100,000.00 |
| David L. Zwarg & Cara D. Zwarg, husband & wife, as joint tenants with right of survivorship | $100,000.00 |
| TOTAL | $20,500,000.00 |

30

Exhibit 17 Page 32 of 33

## EXHIBIT "B"

### DESCRIPTION OF REAL PROPERTY

Land situated in the State of California, Counties of Riverside and San Bernardino, described as follows:

**PARCEL A:** (RIVERSIDE COUNTY)

Parcel 9 of Parcel Map 31922, in the City of Calimesa, County of Riverside, State of California as per map recorded in Book _____ 209 _____. Pages _31_ through _38_ inclusive of Parcel Maps, in the office of the County Recorder of said county.

**PARCEL B:** (SAN BERNARDINO COUNTY)

Government Lots 1, 2, 3 and 4, Section 9, Township 2 South, Range 2 West, San Bernardino Base and Meridian, according to the official plat of said land approved by the Surveyor General's Office.

31

**Exhibit 17 Page 33 of 33**

**USA Capital**
**LOAN SUMMARY**
**AS OF February 28, 2007**

| Performance Evaluation | Loan Name | Origination Date | Loan Outstanding at 02/28/07 | Interest Outstanding at 02/28/07 | Interest Prepaid to Investors | February Interest Receipts | February Principal | Service Fee | Due to Lenders | DIV Fund | First Trust | Direct Lenders | No of Investors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Maturity and Interest Default | 3895 San Fernando Road Partners, L.P | 8/2/05 | 7,350,000 | 916,643 | - | - | - | - | - | - | - | - | 83 |
| Performing | 5055 Collwood, LLC | 2/24/06 | 964,895 | 13,449 | - | 29,790 | - | 1,590 | 28,200 | - | - | 28,200 | 33 |
| Repaid | 5252 Orange, LLC | 12/22/05 | - | - | - | - | - | - | - | - | - | - | 66 |
| Non-Performing | 60th Street Venture, LLC | 12/22/05 | 3,700,000 | 471,376 | - | - | - | - | - | - | - | - | 49 |
| Maturity and Interest Default | 6425 Gess, LTD | 4/14/05 | 26,500,000 | 5,266,551 | 1,672,697 | - | - | - | - | - | - | - | 288 |
| Maturity and Interest Default | Amesbury/Hatters Point (Amesbury/port Corporation) | 12/16/02 | 19,242,193 | 2,425,555 | - | - | - | - | - | - | - | - | 383 |
| Maturity and Interest Default | Anchor B, LLC | 5/31/05 | 5,835,422 | 1,327,024 | 517,607 | - | - | - | - | - | - | - | 50 |
| Repaid | Ashby Financial $7,200,000^4 | 5/3/04 | - | - | - | - | - | - | - | - | - | - | 73 |
| Special Situation | B & J Investments^5 | 9/29/99 | - | - | - | - | - | - | - | - | - | - | 1 |
| Non-Performing | BarUSA/$15,300,000 (Barusa, LLC)^6 | 11/24/03 | 15,300,000 | 327,336 | - | - | - | - | - | - | - | - | 221 |
| Maturity Default | Bay Pompano Beach, LLC | 6/20/05 | 14,682,912 | 1,342,254 | - | - | - | - | - | - | - | - | 407 |
| Repaid | Beastar, LLC^2 | 5/2/05 | - | - | - | - | - | - | - | - | - | - | 84 |
| Repaid | Beau Rivage Homes/$8,000,000^7 | 1/2/03 | - | - | - | - | - | - | - | - | - | - | 157 |
| Maturity and Interest Default | Binford Medical Developers, LLC | 8/31/05 | 7,450,000 | 840,760 | - | - | - | - | - | - | - | - | 92 |
| Repaid | Boise/Gowen 93, LLC | 8/26/05 | - | - | - | - | - | - | - | - | - | - | 17 |
| Maturity and Interest Default | Brookmere/Matteson $27,050,000^8 | 10/29/03 | 5,964,848 | 580,235 | - | - | - | - | - | - | - | - | 229 |
| Performing | Bundy Canyon $1,050,000 (Bundy Canyon Land Development, LLC) | 1/6/06 | 1,050,000 | 10,617 | - | 11,754 | - | 875 | 10,879 | - | - | 10,879 | 1 |
| Interest Default | Bundy Canyon $2,500,000 (Bundy Canyon Land Development, LLC) | 5/2/05 | 2,300,000 | 259,624 | - | - | - | - | - | - | - | - | 34 |
| Interest Default | Bundy Canyon $5,000,000 (Bundy Canyon Land Development, LLC) | 9/29/05 | 4,250,000 | 490,684 | - | - | - | - | - | - | - | - | 43 |
| Maturity Default | Bundy Canyon $5,725,000 (Bundy Canyon Land Development, LLC) | 11/4/05 | 5,725,000 | 470,258 | - | - | - | - | - | - | - | - | 53 |
| Maturity and Interest Default | Bundy Canyon $7,500,000 (Bundy Canyon Land Development, LLC) | 8/17/05 | 6,450,000 | 788,999 | - | - | - | - | - | - | - | - | 83 |
| Not Funded | Bundy Canyon $8.9 (Bundy Canyon Land Development, LLC) | 4/5/06 | - | - | - | - | - | - | - | - | - | - | 117 |
| Special Situation | BySynergy, LLC $4,434,446^9 | 2/3/06 | - | - | - | - | - | - | - | - | - | - | 3 |
| Maturity Default | Cabernet Highlands, LLC | 2/17/05 | 2,980,000 | 34,946 | - | 38,750 | 20,000 | 2,500 | 56,250 | - | - | 56,250 | 65 |
| Non-Performing | Castaic Partners II, LLC | 7/11/05 | 5,600,000 | 868,111 | 76,040 | - | - | - | - | - | - | - | 57 |
| Non-Performing | Castaic Partners III, LLC | 9/22/05 | 4,675,000 | 574,534 | - | - | - | - | - | - | - | - | 85 |
| Performing | Charlevoix Homes, LLC (Lindsay and Chandler Heights, LLC) | 4/3/06 | 3,400,000 | 42,311 | - | 46,844 | - | 2,833 | 44,011 | - | - | 44,011 | 40 |
| Maturity and Interest Default | Clear Creek Plantation (Arapahoe Land Investments, L.P.) | 3/15/05 | 2,900,000 | 339,732 | - | - | - | - | - | - | - | - | 36 |
| Repaid | Cloudbreak LV (Cloudbreak Las Vegas, LLC | 12/17/03 | - | - | - | - | - | - | - | - | - | - | 2 |
| Non-Performing | Colt CREC Building (Colt Gateway LLC | 9/26/03 | 3,718,777 | 2,526,291 | 565,564 | - | - | - | - | - | - | - | 1 |
| Non-Performing | Colt DIV added #1 (Colt Gateway LLC) | 7/10/03 | 1,500,000 | 1,101,693 | 170,625 | - | - | - | - | - | - | - | 1 |
| Non-Performing | Colt DIV added #3 (Colt Gateway LLC) | 7/10/03 | 3,100,000 | 1,714,025 | 362,625 | - | - | - | - | - | - | - | 1 |
| Non-Performing | Colt Gateway LLC | 7/10/03 | 5,805,051 | 1,787,468 | 819,821 | - | - | - | - | - | - | - | 3 |
| Non-Performing | Colt Second TD (Colt Gateway LLC | 8/19/03 | 1,000,000 | 704,568 | 384,583 | - | - | - | - | - | - | - | 1 |
| Performing | Columbia Managing Partners, LLC | 9/1/05 | 2,210,000 | 22,346 | - | 24,740 | - | 1,842 | 22,898 | - | 22,898 | - | 1 |
| Interest Default | Convest Capital (Comvest Capital Satellite Arms, Inc) | 1/11/06 | 4,125,000 | 420,269 | - | - | - | - | - | - | - | - | 56 |
| Non-Performing | Copper Sage Commerce Center Phase II (Copper Sage Commerce Center, LLC) | 3/1/06 | 3,550,000 | 379,731 | - | - | - | - | - | - | - | - | 51 |
| Repaid | Copper Sage Commerce Center, LLC | 6/9/04 | - | (0) | - | - | - | - | - | - | - | - | 28 |
| Maturity Default | Cornman Toler, 160, LLC | 6/24/05 | 6,375,000 | 202,976 | - | - | - | - | - | - | - | - | 96 |
| Repaid | Cottonwood Hills, LLC | 6/14/05 | - | 0 | - | - | - | - | - | - | - | - | 21 |
| Maturity and Interest Default | Del Valle - Livingston (Del Valle Capital Corporation, Inc | 8/25/05 | 19,250,000 | 1,475,546 | - | - | - | - | - | - | - | - | 239 |
| Repaid | Del Valle Isleton (Del Valle Capital Corporation, Inc) | 3/22/05 | - | - | - | - | - | - | - | - | - | - | 76 |
| Interest Default | Eagle Meadows Development | 10/19/05 | 31,050,000 | 4,127,596 | - | - | - | - | - | - | - | - | 295 |
| Repaid | Elizabeth May Real Estate, LLC | 2/24/06 | - | - | - | - | - | - | - | - | - | - | 147 |
| Special Situation | EPIC Resorts | Undetermined | 12,970,694 | 8,012,319 | - | - | - | - | - | - | - | - | 1 |

Exhibit 18 Page 1 of 3

Preliminary Numbers Subject to Revision

Prepared by MFIM, LLC

**USA Capital**
**LOAN SUMMARY**
**AS OF February 28, 2007**

| Performance Evaluation | Loan Name | Origination Date | Loan Outstanding at 02/28/07 | Interest Outstanding at 02/28/07 | Interest Prepaid to Investors | Collection Account | | | Due to Lenders | Due to | | | No of Investors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | February Interest Receipts | February Principal | Service Fee | | DIV Fund | First Trust | Direct Lenders | |
| Repaid | Fiesta Development $6.6 (Fiesta Development, Inc.) | 11/14/05 | - | - | | - | - | - | - | - | - | - | 1 |
| Repaid | Fiesta Development McNaughton (Fiesta Development, Inc.) | 1/10/05 | | | | | | | | | | | 1 |
| Performing | Fiesta Murrieta (Fiesta Development, Inc.) | 4/14/06 | 6,500,000 | 65,722 | | 72,764 | - | 5,417 | 67,347 | - | - | 66,363 | 69 |
| Interest Default | Fiesta Oak Valley (Oak Mesa Investors, LLC | 6/15/04 | 20,500,000 | 6,651,503 | 3,368,263 | | | | | | | | 227 |
| Interest Default | Fiesta USA/Stoneridge (Capital Land Investors, LLC) | 9/22/03 | 10,000,000 | 4,057,905 | 2,372,277 | | | | | | | | 100 |
| Repaid | Fiesta/Beaumont $2.4m (Fiesta Development, Inc. | 9/17/04 | | | | | | | | | | | 36 |
| Non-Performing | Foxhill 216, LLC* | 2/23/06 | 25,980,000 | 3,370,330 | | | | | | | | | 300 |
| Repaid | Franklin - Stratford Investments, LLC | 3/30/05 | - | - | | 132,342 | 5,040,589 | 10,201 | 5,162,730 | 997,963 | 4,164,767 | - | 2 |
| Repaid | Freeway 101* | 8/9/04 | | | | | | | | | | | 57 |
| Repaid | Gateway Stone (Gateway Stone Associates, LLC | 11/18/05 | - | - | | 1,611,598 | 13,185,000 | 120,812 | 14,675,786 | - | 111,307 | 14,564,479 | 161 |
| Repaid | Glendale Tower Partners, LP | 6/9/05 | | | | | | | | | | | 95 |
| Repaid | Golden State Investments II, LP | 6/27/05 | | | | | | | | | | | 37 |
| Repaid | Goss Road (Savannah Homes, LLC) | 11/2/04 | | | | | | | | | | | 20 |
| Maturity and Interest Default | Gramercy Court Condos (Gramercy Court, Ltd. | 6/25/04 | 34,884,500 | 4,365,809 | | | | | | | | | 332 |
| Interest Default | Harbor Georgetown, LLC | 8/16/04 | 8,800,000 | 1,415,202 | 148,785 | | | | | | | | 103 |
| Repaid | Hasley Canyon (Los Valles Land & Golf, LLC | 3/3/04 | - | - | | | | | | | | | 114 |
| Non-Performing | Hesperia/Southern California Land Development, LLC) | 4/1/05 | 4,250,000 | 350,885 | | | | | | | | | 65 |
| Repaid | HFA - Riviera (Riviera-Homes for America Holding LLC) | 6/24/05 | - | 0 | | | | | | | | | 90 |
| Non-Performing | HFA- Clear Lake LLC | 1/9/05 | 16,050,000 | 4,263,854 | 2,140,552 | | | | | | | | 207 |
| Repaid | HFA- North Yonkers (One Point Street, Inc. | 1/11/05 | | | | | | | | | | | 298 |
| Repaid | HFA- Riviera 2nd (Riviera-HFAH LLC | 4/29/04 | - | - | | | | | | | | | 99 |
| Non-Performing | HFA- Windham (HFAH Asylum, LLC) | 11/15/04 | 5,550,000 | 1,677,592 | 800,862 | | | | | | | | 74 |
| Non-Performing | HFA-Clear Lake 2nd (HFAH Clear Lake, LLC* | 6/24/05 | 2,750,000 | 781,011 | 288,935 | | | | | | | | 36 |
| Non-Performing | HFAH/Monaco, LLC | 12/19/03 | 4,000,000 | 1,737,000 | 1,189,500 | | | | | | | | 1 |
| Maturity Default | Huntsville (West Hills Park Joint Venture | 3/31/04 | 10,475,000 | 1,793,179 | 326,128 | | | | | | | | 116 |
| Repaid | I-40 Gateway West, LLC | 1/11/05 | - | - | | 65,403 | 2,561,097 | 5,259 | 2,621,240 | - | - | 2,621,240 | 46 |
| Repaid | I-40 Gateway West, LLC 2nd | 3/1/06 | - | 0 | | 36,359 | 1,065,000 | 2,187 | 1,099,172 | - | - | 1,099,172 | 23 |
| Non-Performing | Interstate Commerce Center Phase II (ISCC Phase II, LLC) | 8/1/04 | 1,536,666 | 46,562 | | | | | | | | | 2 |
| Performing | Interstate Commerce Center, LLC | 2/20/04 | 800,003 | 0 | 13,458 | 20,615 | 183,819 | 1,733 | 202,700 | 199,345 | 111 | 788 | 4 |
| Repaid | J_'s/ehi's Corporation | 9/2/05 | | | | | | | | | | | 105 |
| Non-Performing | La Hacienda Estate, LLC | 11/11/04 | 6,255,000 | 147,924 | 15,078 | | | | | | | | 83 |
| Maturity Default | Lake Helen Partners* | 12/7/04 | 3,159,704 | 514,270 | | | | | | | | | 35 |
| Repaid | LCG Gilroy, LLC | 11/23/04 | | | | | | | | | | | 103 |
| Repaid | Lerin Hills, LTC | 12/7/05 | 10,350,000 | 1,239,672 | | | | | | | | | 159 |
| Interest Default | Margarita Annex* | 7/28/04 | 12,000,000 | 1,531,195 | | | | | | | | | 105 |
| Non-Performing | Marion Square (MS Acquisition Company, LLC | 8/1/05 | 30,000,000 | 4,170,997 | | | | | | | | | 272 |
| Non-Performing | Marion Square 2nd (MS Acquisition Company, LLC) | 8/1/05 | 6,000,000 | 1,049,665 | | | | | | | | | 108 |
| Interest Default | Marquis Hotel (USA Investors VI, LLC | 3/29/05 | 13,500,000 | 4,544,522 | 2,366,244 | | | | | | | | 105 |
| Repaid | Meadow Creek Partners, LLC | 2/23/06 | | | | | | | | | | | 169 |
| Repaid | Motyka Marketplace, LLC | 6/30/05 | | | | | | | | | | | 103 |
| Interest Default | Mountain House Business Park (Pegasus-MH Ventures LLC | 6/10/04 | 16,800,000 | 1,521,413 | | | | | | | | | 49 |
| Repaid | Oak Shores II (John E. King and Carole D. King | 6/6/05 | 12,150,000 | 1,174,757 | | | | | | | | | 202 |
| Interest Default | Oak Shores $3,425,000 (Ocean Atlantic Chicago LLC) | 1/23/06 | 8,925,000 | 1,091,869 | | | | | | | | | 176 |
| Interest Default | Ocean Atlantic (Ocean Atlantic/FFG-Westbury, LLC) | 1/11/05 | 2,700,000 | 247,707 | | | | | | | | | 105 |
| Repaid | Opaque/Mt. Edge $7,350,000 (Opaque Land Development LLC) | 1/15/03 | | | | | | | | | | | 32 |
| Maturity and Interest Default | Placer Vineyards (Placer County Land Speculators, LLC) | 12/14/05 | 24,227,719 | 245,348 | | 177,459 | 162,757 | 13,210 | 327,006 | - | 18,362 | 308,703 | 95 |
| Interest Default | Placer Vineyards 2nd (Placer County Land Speculators, LLC) | 12/10/04 | 31,500,000 | 5,602,920 | 1,228,292 | | | | | | | | 309 |
| Interest Default | Preserve at Galleria, LLC | 12/10/04 | 6,500,000 | 1,435,656 | 259,999 | | | | | | | | 343 |
| Repaid | Rebecca/Pioneer Homes, LLC | 11/15/05 | 269,641 | 50,983 | | | | | | | | | 118 |
| Performing | Rio Rancho Executive Plaza, LLC | 1/17/06 | 2,658,180 | 30,138 | | 36,936 | 618,350 | 1,068 | 654,217 | - | 20,353 | 633,864 | 73 |
| Repaid | Roam Development Group, L.P | 3/23/05 | - | (0) | | | | | | | | | 32 |

**Exhibit 18 Page 2 of 3**

USA Capital
LOAN SUMMARY
AS OF February 28, 2007

| Performance Evaluation | Loan Name | Origination Date | Loan Outstanding at 02/28/07 | Interest Outstanding at 02/28/07 | Interest Prepaid to Investors | Collection Account | | | | Due to | | | No. of Investors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | February Interest Receipts | February Principal | Service Fee | Due to Lenders | DIV Fund | First Trust | Direct Lenders | |
| Special Situation / Maturity and Interest Default | Saddleback[1] | Undetermined | | | | | | | | | | | 1 |
| Maturity and Interest Default | Shamrock Tower, LP (619 Main. LP) | 8/6/04 | 10,500,000 | 2,999,948 | 1,482,168 | | | | | | | | 87 |
| Special Situation / Interest Default | Sheraton Hotel | 9/28/99 | 3,625,000 | 383,575 | | | | | | | | | 1 |
| Interest Default | Slade Development, Inc | 12/5/05 | | | | | | | | | | | 40 |
| Maturity Default | Southern California Land 2nd(Southern California Land Development, LLC | 8/3/05 | 2,800,000 | 37,022 | | 40,989 | | 2,333 | 38,656 | | | 38,172 | 33 |
| Interest Default | Standard Property Development, LLC | 2/27/06 | 9,640,000 | 947,531 | | | | | | | | | 115 |
| Interest Default | SVRB $4,500,000 (SVRB Investments, LLC) | 4/27/05 | 1,424,082 | 120,115 | | | | | | | | | 67 |
| Interest Default | SVRB 2nd $2,325,000 (SVRB Investments, LLC | 4/27/05 | 2,325,000 | 263,288 | | | | | | | | | 25 |
| Non-Performing | Tapia Ranch (Castaic Partners, LLC | 9/28/04 | 22,000,000 | 3,467,841 | 359,262 | | | | | | | | 179 |
| Interest Default | Ten-Ninety, Ltd ($4,150,000)[8] | 12/30/02 | 4,150,000 | 2,527,539 | 1,676,535 | | | | | | | | 18 |
| Interest Default | Ten-Ninety | 4/15/02 | 55,113,781 | 34,282,507 | 1,300,672 | | | | | | | | 1 |
| Interest Default | The Gardens Phase II (The Gardens, LLC | 3/31/06 | 2,500,000 | 301,850 | | | | | | | | | 1 |
| Maturity and Interest Default | The Gardens, LLC $2,425,000 (The Gardens, LLC) | 8/15/05 | 1,925,000 | 169,869 | | | | | | | | | 34 |
| Non-Performing | The Gardens, LLC Timeshare (The Gardens, LLC | 3/24/04 | 3,577,719 | 64,561 | | | | | | | | | 51 |
| Repaid | Universal Hawaii[7] | 8/6/04 | | | | | | | | | | | 127 |
| Performing | University Estates, Inc | 4/11/05 | 4,774,623 | 46,420 | | 103,342 | | 7,958 | 95,384 | | 95,384 | (0) | 1 |
| Repaid | Urban Housing Alliance - 435 Lofts (Urban Housing Alliance, LLC | 7/13/05 | | | | | | | | | | | 110 |
| Non-Performing | Wasco Investments LLC | 11/23/04 | 6,450,000 | 297,049 | | | | | | | | | 86 |
| | | | $ 710,651,411 | $ 140,963,515 | 23,896,572 | $ 2,449,685 | $ 22,836,612 | $ 179,819 | $ 25,106,477 | $ 1,197,306 | $ 4,433,122 | $ 19,472,723 | |

[1] These loans have undetermined amounts outstanding due to bankruptcy, foreclosure, change of ownership, etc.
[2] Principal payments by borrower not returned to investors
[3] Borrower is Ashby Financial Company, Inc. and R&D Land Investors, LLC
[4] Borrower is Bookmens, LLC and Lord & Essex Matteson, LLC
[5] Borrowers are Fox Hills 180, LLC, Fox Hills River East, LLC, Fox Hills 119, LLC, Fox Hills LLC, and Fox Hills 37, LLC
[6] Borrower is Old City, L.C. and Lake Helen Partners, LLC
[7] Borrower is John E. King and Carina D. King
[8] Borrower is Ten-Ninety, Ltd. And William R. Lewis and Dorothy Z. Lucas, Trustees of the Lucas Family Trust

Prepared by MFIM, LLC

Preliminary Numbers Subject to Revision

**Exhibit 18 Page 3 of 3**

# USA CAPITAL
## DEFAULT INTEREST CALCULATION

| | |
|---|---|
| Regular Interest Rate | 13.0% |
| Total Interest Rate | 20.0% |
| Default Interest Rate | 7.0% |
| Maturity Default Date | 12/30/2006 |
| Interest Default Date | 2/1/2005 |
| Date of Last Extension | N/A |
| Default Date | 2/1/2005 |
| Interest Calculation | Compounding |

| Loan ID | Loan Name | Transaction Date | Transaction Desc | Accrued Interest | Paid Interest | Outstanding Interest | Principal Funding | Principal Payments | Principal Balance | Outstanding Amount for Default Interest Calculation | Accrued Default Interest | Paid Default Interest | Outstanding Default Interest | No. of Days (Default) | Late Fee Calculation | Accrued Late Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 49 | Fiesta Oak Valley | 6/15/2004 | Funding | | | - | 20,500,000 | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 6/30/2004 | Borrower Interest Accrual | 222,083 | | 222,083 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 7/5/2004 | Borrower Interest Payment | | 222,083 | - | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 7/31/2004 | Borrower Interest Accrual | 222,083 | | 222,083 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 8/5/2004 | Borrower Interest Payment | | 222,083 | 0 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 8/30/2004 | Borrower Interest Accrual | 222,084 | | 222,084 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 9/5/2004 | Borrower Interest Payment | | 222,083 | 1 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 9/30/2004 | Borrower Interest Accrual | 222,084 | | 222,084 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 10/5/2004 | Borrower Interest Payment | | 222,083 | 1 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 10/31/2004 | Borrower Interest Accrual | 222,083 | | 222,084 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 11/5/2004 | Borrower Interest Payment | | 222,083 | 1 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 11/30/2004 | Borrower Interest Accrual | 222,083 | | 222,085 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 12/5/2004 | Borrower Interest Payment | | 222,083 | 2 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 12/31/2004 | Borrower Interest Accrual | 222,083 | | 222,085 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 1/5/2005 | Borrower Interest Payment | | 222,083 | 2 | | | 20,500,000 | | | | | | | |
| 49 | Fiesta Oak Valley | 1/31/2005 | Borrower Interest Accrual | 224,489 | | 224,489 | | | 20,500,000 | 20,724,491 | 122,572 | - | 122,572 | 30.42 | 11,224.46 | 11,224.46 |
| 49 | Fiesta Oak Valley | 2/28/2005 | Borrower Interest Accrual | 224,515 | | 449,007 | | | 20,500,000 | 20,949,007 | 123,900 | - | 246,472 | 30.42 | 11,225.77 | 22,450.23 |
| 49 | Fiesta Oak Valley | 3/31/2005 | Borrower Interest Accrual | 226,948 | | 675,954 | | | 20,500,000 | 21,175,954 | 125,242 | - | 371,714 | 30.42 | 11,347.38 | 33,797.61 |
| 49 | Fiesta Oak Valley | 4/30/2005 | Borrower Interest Accrual | 229,406 | | 905,360 | | | 20,500,000 | 21,405,360 | 126,599 | - | 498,313 | 30.42 | 11,470.31 | 45,267.92 |
| 49 | Fiesta Oak Valley | 5/31/2005 | Borrower Interest Accrual | 231,891 | | 1,137,252 | | | 20,500,000 | 21,637,252 | 127,970 | - | 626,283 | 30.42 | 11,594.57 | 56,862.49 |
| 49 | Fiesta Oak Valley | 6/30/2005 | Borrower Interest Accrual | 234,404 | | 1,371,655 | | | 20,500,000 | 21,871,655 | 129,357 | - | 755,640 | 30.42 | 11,720.18 | 68,582.66 |
| 49 | Fiesta Oak Valley | 7/31/2005 | Borrower Interest Accrual | 236,943 | | 1,608,598 | | | 20,500,000 | 22,108,598 | 130,758 | - | 886,398 | 30.42 | 11,847.15 | 80,429.81 |
| 49 | Fiesta Oak Valley | 8/31/2005 | Borrower Interest Accrual | 239,510 | | 1,848,108 | | | 20,500,000 | 22,348,108 | 132,175 | - | 1,018,572 | 30.42 | 11,975.49 | 92,405.30 |
| 49 | Fiesta Oak Valley | 9/30/2005 | Borrower Interest Accrual | 242,105 | | 2,090,213 | | | 20,500,000 | 22,590,213 | 133,606 | - | 1,152,179 | 30.42 | 12,105.23 | 104,510.53 |
| 49 | Fiesta Oak Valley | 10/31/2005 | Borrower Interest Accrual | 244,727 | | 2,334,940 | | | 20,500,000 | 22,834,940 | 135,054 | - | 1,287,232 | 30.42 | 12,236.37 | 116,746.89 |
| 49 | Fiesta Oak Valley | 11/30/2005 | Borrower Interest Accrual | 247,379 | | 2,582,318 | | | 20,500,000 | 23,082,318 | 136,517 | - | 1,423,749 | 30.42 | 12,368.93 | 129,115.82 |
| 49 | Fiesta Oak Valley | 12/31/2005 | Borrower Interest Accrual | 250,058 | | 2,832,377 | | | 20,500,000 | 23,332,377 | 137,996 | - | 1,561,745 | 30.42 | 12,502.92 | 141,618.74 |
| 49 | Fiesta Oak Valley | 1/31/2006 | Borrower Interest Accrual | 252,767 | | 3,085,144 | | | 20,500,000 | 23,585,144 | 139,491 | - | 1,701,236 | 30.42 | 12,638.37 | 154,257.11 |
| 49 | Fiesta Oak Valley | 2/28/2006 | Borrower Interest Accrual | 255,506 | | 3,340,650 | | | 20,500,000 | 23,840,650 | 141,002 | - | 1,842,238 | 30.42 | 12,775.29 | 167,032.40 |
| 49 | Fiesta Oak Valley | 3/31/2006 | Borrower Interest Accrual | 258,274 | | 3,598,924 | | | 20,500,000 | 24,098,924 | 142,530 | - | 1,984,768 | 30.42 | 12,913.69 | 179,946.08 |
| 49 | Fiesta Oak Valley | 4/30/2006 | Borrower Interest Accrual | 261,072 | | 3,859,995 | | | 20,500,000 | 24,359,995 | 144,074 | - | 2,128,841 | 30.42 | 13,053.58 | 192,999.67 |
| 49 | Fiesta Oak Valley | 5/31/2006 | Borrower Interest Accrual | 263,900 | | 4,123,895 | | | 20,500,000 | 24,623,895 | 145,634 | - | 2,274,476 | 30.42 | 13,195.00 | 206,194.66 |
| 49 | Fiesta Oak Valley | 6/30/2006 | Borrower Interest Accrual | 266,759 | | 4,390,654 | | | 20,500,000 | 24,890,654 | 147,212 | - | 2,421,688 | 30.42 | 13,337.94 | 219,532.61 |
| 49 | Fiesta Oak Valley | 7/31/2006 | Borrower Interest Accrual | 269,648 | | 4,660,054 | | | 20,500,000 | 25,160,303 | 148,807 | - | 2,570,495 | 30.42 | 13,482.44 | 233,015.04 |
| 49 | Fiesta Oak Valley | 8/31/2006 | Borrower Interest Accrual | 272,570 | | 4,932,673 | | | 20,500,000 | 25,432,873 | 150,419 | - | 2,720,914 | 30.42 | 13,628.50 | 246,643.54 |
| 49 | Fiesta Oak Valley | 9/30/2006 | Borrower Interest Accrual | 275,523 | | 5,208,396 | | | 20,500,000 | 25,708,396 | 152,048 | - | 2,872,962 | 30.42 | 13,776.14 | 260,419.68 |
| 49 | Fiesta Oak Valley | 10/31/2006 | Borrower Interest Accrual | 278,508 | | 5,486,903 | | | 20,500,000 | 25,986,903 | 153,696 | - | 3,026,658 | 30.42 | 13,925.38 | 274,346.06 |
| 49 | Fiesta Oak Valley | 11/30/2006 | Borrower Interest Accrual | 281,525 | | 5,768,428 | | | 20,500,000 | 26,268,428 | 155,361 | - | 3,182,018 | 30.42 | 14,076.24 | 288,421.30 |
| 49 | Fiesta Oak Valley | 12/31/2006 | **Borrower Interest Accrual** | **284,575** | | **6,053,003** | | | **20,500,000** | **26,553,003** | **157,044** | - | **3,339,062** | **30.42** | **1,025,000.00** | **1,313,421.30** |
| 49 | Fiesta Oak Valley | 1/31/2007 | Borrower Interest Accrual | 287,658 | | 6,340,660 | | | 20,500,000 | 26,840,660 | 158,745 | - | 3,497,807 | 30.42 | 14,382.88 | 1,327,804.18 |
| 49 | Fiesta Oak Valley | 2/28/2007 | Borrower Interest Accrual | 290,774 | | 6,631,434 | | | 20,500,000 | | | | | | 14,538.69 | 1,342,342.87 |

**Exhibit 19 Page 1 of 1**



**COMPASS FINANCIAL**

March 23, 2007

Debt Acquisition Company of America V, LLC
1565 Hotel Circle South Suite 310
San Diego, CA 92108

Dear :

Compass Financial Partners, LLC ("CFP") has officially taken over as the servicer of the USA Commercial Mortgage portfolio and has been working diligently to resolve all the loans in this distressed portfolio.

The majority of this portfolio has been delinquent for quite some time. Many of the projects have become non-performing and several are in need of additional capital in order to fully pay off. We also anticipate initiating foreclosure on several borrowers for non-performance of their obligations. We are currently looking at the costs associated with those actions because either scenario may require additional capital from direct lenders.

Concurrently with the above, CFP has commenced dialogue with potential buyers that have expressed interest in several of the assets within our portfolio. One such buyer has formally made an offer for **Fiesta Oak Valley ("Oak Mesa Investors, LLC")** participation interests which would pay investors a **net 91% of their Unpaid Principal Balance**, less any uncollected Prepaid Interest if applicable, and investors would waive their rights to any accrued unpaid interest.

The buyer is seeking to take a majority position in this asset and deal with the additional capital requirements of taking the necessary legal steps against the borrower.

<u>This is not a settlement proposal.</u> It is a competitive offer from a third party to buy out your interest in this loan only. If you decline this offer, your investment in this loan does not change. If you accept this offer, you are exchanging your position in this loan for a cash payment.

If you want to consider or ACCEPT this offer, please contact me and request the Fiesta Oak Valley Buyout Package be sent to you. It is our understanding that funding will take place shortly after the title company listed in the package has received the executed documentation.

Contact me via telephone (702) 734-2400; fax (702) 734-0163; or, email at olson@compassloans.net if you have any questions regarding this matter or want to request the buyout package.

Sincerely,

Mark L. Olson
Director of Investor Relations
Compass Financial Partners, LLC.

4730 South Apache Road     Main.702.734.2400
Suite 140                          Fax.702.734.0163
Las Vegas, NV 89147          www.compassloans.net

**Exhibit 20 Page 1 of 1**



**COMPASS FINANCIAL**

April 4, 2007

Dear Fiesta Oak Valley Investor:

Compass Financial Partners, LLC ("CFP") sent you a letter on March 23, 2007 about an offer from a third party unrelated to CFP or USA Commercial Mortgage Company for **Fiesta Oak Valley ("Oak Mesa Investors, LLC")** participation interests which would pay investors a **net 91% of their Unpaid Principal Balance**, less any uncollected Prepaid Interest if applicable, and investors would waive their rights to any accrued unpaid interest. Because of considerable interest we are receiving for this offer, we are sending the Buyout Package for this offer to all investors in the loan.

We also are enclosing the first Loan Status Report published by CFP about the current state of the Borrower and the loan and next steps for both parties. In our Report, we explain that Fiesta Development seeks to buy USA Investment Partners, LLC out of the Borrower entity in order to clear the way to financing that would repay the loan. If Fiesta fails to reach a buyout agreement, CFP anticipates it will escalate its collection efforts which could be time-consuming and expensive. The third party buyer is seeking to take a majority position in this asset to assist with or assume the additional capital requirements necessary to pursue legal action against the Borrower.

**DEADLINE**: The deadline for returning any completed package to CFP in the self-addressed envelope provided is <u>**Friday, April 13, 2007**</u>. The deadline is NOT April 7, 2007 as described in the documents because CFP has secured an extension of the offer for an additional week.

<u>This is not a settlement proposal.</u> It is a competitive offer from a third party to buy out your interest in this loan only. Your options are:

- ACCEPT. If you accept this offer, you are exchanging your position in this loan for a cash payment. It is our understanding that funding will take place shortly after the title company listed in the package has received the executed documentation, or approximately three weeks.
- DECLINE. If you choose to decline this offer, you do not need to do anything. Your investment in this loan does not change if you decline the offer.

Contact me via telephone (702) 734-2400; fax (702) 734-0163; or, email at olson@compassloans.net if you have any questions regarding this buyout package.

Sincerely,

Mark L. Olson
Director of Investor Relations
Compass Financial Partners, LLC.

4730 SOUTH APACHE ROAD    MAIN.702.734.2400
SUITE 140    FAX.702.734.0163
LAS VEGAS, NV 89147    WWW.COMPASSLOANS.NET

**Exhibit 21 Page 1 of 3**



Compass Financial Partners, LLC ("CFP") has been working hard to collect the maximum value possible from each loan it now services from the USA Capital portfolio. CFP will provide information to the Direct Lenders about the status of their loans and the actions being taken by the Borrowers and CFP to get the loans repaid. The following is the most recent report issued by CFP on this loan.

## LOAN STATUS REPORT

**Loan Name:** Oak Mesa Investors, LLC ("Fiesta Oak Valley")

**Unpaid Principal
Balance (UPB):** $20,500,000

**Accrued Interest
Outstanding:** $6,651,503 (as of February 28, 2007)

**Report Date:** April 4, 2007

**Loan Status:** Interest Default -- the Borrower has been served with a Notice of Default for failure to pay the interest required by the Loan Agreement.

**Borrower:** The Borrower is a joint venture between Fiesta Development, and USA Investment Partners, LLC ("USAIP"). The operating partners of the joint venture are Richard Ashby and Larry Redman

**Guarantees:** Joe Milanowski, and Tom Hantges, principals of USAIP.

**Current Situation:** The Borrower is continuing to move toward entitlement of the project, although there has been little change in the status since the loan was originated. David Blatt, Compass Partners Managing Partner, has conducted an onsite visit recently with a representative of Fiesta Development, and CFP and the Borrower discuss the progress of the project and efforts to repay the loan in weekly/biweekly conference calls. The Borrower has received positive feedback from the city due to the inclusion of a school and several parks.

The Borrower has spoken with several sources of financing willing to provide financing sufficient to repay the CFP loan in full, but the existence of USAIP in the loan is preventing the banks from moving forward. USAIP must be removed from the Borrower entity before the banks will execute the financing. Fiesta Development has been in negotiations to buy out USAIP, however, so far the negotiations have not been successful.

On March 28, 2007, the United States District Court in California appointed a federal receiver for the assets of USAIP and ordered a stay related to entities in which USAIP has significant interests. At the time this report was written, CFP did not have information that would indicate what impact, if any, the receivership and/or stay might have on the Borrower and/or CFP related to this loan.

4730 SOUTH APACHE ROAD
SUITE 140
LAS VEGAS, NV 89147

MAIN.702.734.2400
FAX.702.734.0163
WWW.COMPASSLOANS.NET

**Exhibit 21 Page 2 of 3**

**Borrower Next Steps:** The Borrower needs to complete the buyout of USAIP, then complete the new financing in order to repay the CFP loan in full. The Borrower has not disclosed a timetable for either, but CFP believes the Borrower intends to expedite this as much as possible.

**CFP Next Steps:** CFP will continue to hold its weekly/biweekly conference calls with the Borrower to remain current on the status of the Borrower's efforts to buyout USAIP and on the impact of the receivership. CFP is concerned about collection efforts on this loan because of considerable uncertainty and risk due to the relationship with USAIP. If the Borrower is unable to reach a buyout agreement with USAIP managers or whoever the Court appoints as managers, CFP anticipates it will escalate its collection efforts including a restructuring of the loan in favor of CFP and the Direct Lenders up through initiation of foreclosure proceedings. Collection escalation efforts beyond negotiation would be very time-consuming and expensive because of the parties involved.

**Confidentiality:** CFP provides information about discussions and negotiations with a Borrower about a particular loan only to verified investors in that loan in an effort to protect the privacy of the Borrower, CFP and the investors in the loan. CFP requests that investors receiving this report maintain the confidentiality of the report.

Direct Lenders who have information to contribute or questions not addressed in this report may contact Mark Olson, Director of Investor Relations, for CFP at (702) 734-2400 or via email at olson@compassloans.net.

**Exhibit 21 Page 3 of 3**

DATE: APRIL 11, 2007

TO: JUDGE RIEGLE

RE: USA CAPITAL BANKRUPTCY - CHANGE OF LOAN SERVICER - FIESTA OAK VALLEY LOAN

WE SUPPORT A CHANGE OF THE LOAN SERVICER TO VINDRAUGA AS SOON AS POSSIBLE. THEIR PROPOSAL IS TO MAKE INVESTORS WHOLE BY RETURNING ALL PRINCIPAL AND INTEREST DUE ON THE LOAN. VINDRAUGA IS UPFRONT AND HONEST WHEN WE ASK QUESTIONS AND THEIR POSITION IS THAT THE LOAN SERVICER SHOULD COLLECT PRINCIPAL AND INTEREST FIRST AND THEN GO AFTER FEES AND LATE CHARGES.

COMPASS, ON THE OTHER HAND, IS MORE INTERESTED IN ALL THE FEES THEY CAN MAKE. THEY ARE DRIVING MANY BORROWERS TO BANKRUPTCY BY NOT NEGOTIATING THE FEES AND EXTRA COSTS. WE MAY NEVER SEE EVEN OUR PRINCIPAL WITH COMPASS. WE FEEL THEIR "BUSINESS PLAN" IS IN DIRECT CONFLICT WITH THE DIRECT LENDERS AND IN NEGOTIATING IN GOOD FAITH WITH THE BORROWERS. COMPASS' ACTIONS COULD EVEN DRAW DIRECT LENDERS INTO LITIGATION WITH THE BORROWERS FOR THEIR FINANCIAL RUIN.

PLEASE PROTECT DIRECT LENDERS AND TAKE COMPASS OFF THE FIESTA OAK VALLEY LOAN AS SOON AS POSSIBLE SO THAT A JUST SETTLEMENT MAY BE REACHED. WE HAVE FAITH IN VINDRAUGA.

IVAN LOEBS
CONNIE MIHOS
(DIRECT LENDERS)

http://e8.email.iwon.com/compose.php?ArdSI=83aee08c993a16e919e8c93210886698          4/11/2007

**Exhibit 22 Page 1 of 10**

**Dean T. Kirby, Jr.**

**From:**     Parkm5@aol.com
**Sent:**     Wednesday, April 11, 2007 10:37 AM
**To:**       Howard Justus
**Subject:** FOV

The reason we moved our loan is because Vindrauga has promised to pay us in full with accrued interest. We feel Vindrauga is looking out for our best interest. There has been no communication between us and Compass. Not only for this loan but other loans as well. All we get is paper work in the mail wanting us to sign over our loan with Compass for less money.

Charles & Mary Parker
Parkm5@ol.com

See what's free at AOL.com.

4/15/2007

**Exhibit 22 Page 2 of 10**

**Dean T. Kirby, Jr.**

**To:**       Howard Justus
**Subject:** RE: Fiesta Oak Valley

**From:** Rogie Madlambayan [mailto:rogie1252@yahoo.com]
**Sent:** Friday, April 13, 2007 4:30 PM
**To:** Howard Justus
**Subject:** Fiesta Oak Valley

Dear Mr. Justus:

I am a direct lender with $100,000 of principal amount invested at Fiesta Oak Valley (FOV). I've decided to vote to remove Compass Financial in favor of Vindrauga as the loan servicing agent for FOV due to the following reasons:

1) Vindrauga has promised to pay me in full with accrued interest upon foreclosure and that payments shall be first allocated to principal and accrued interest before default interest and late fees.

2) Vindrauga has been very clear as to its intentions on how to service the FOV loan. On the other hand, Compass has not communicated with me openly, other than sending a solicitation letter offering 91% of principal amount before fees and deduction of any "diverted principal". Obviously, this amount is significantly lower than what Vindrauga has offered upon foreclosure.

Sincerely,
Rogie Madlambayan

Ahhh...imagining that irresistible "new car" smell?
Check out new cars at Yahoo! Autos.

4/15/2007

**Exhibit 22 Page 3 of 10**

## Dean T. Kirby, Jr.

**To:**     Howard Justus
**Subject:** RE: Switching fiesta oak LSA to Howard Justus at vindauraga

**From:** WILLIAM MCHUGH [mailto:mchughb@sbcglobal.net]
**Sent:** Thursday, April 12, 2007 9:24 AM
**To:** Howard Justus
**Subject:** Switching fiesta oak LSA to Howard Justus at vindauraga

 To whom this may concern,
   I have $190000. in the fiesta oak loan. It has always been my understanding that 51% could change
the LSA to a different administrator.Seeing that I have not been paid any monies for 13 months and have
been told I owe significant money back to USACM I have decided that the transferring of this loan to
vindauraga is in my best interest.
    Vindauraga has guaranteed full principal and interest upon foreclosure,while Compass seems to be
trying to buy this loan at a significant discount.They also have indicated that the LSA fee is going to
triple. It is also not clear with Compass if the creditors get paid their principal and interest prior to
Compass receiving default fees and penalties,The Vindauraga deal is very clear on these points and I am
satisfied with that.I would appreciate an expedient resolve on this matter and hope to be moving forward
with Howard Justus and Vindauraga shortly.Thank you for your consideration on this matter.

Sincerely,
William McHugh
  ,

4/15/2007

**Exhibit 22 Page 4 of 10**

1846 Three Mile Drive
Reno, NV 89509
April 12, 2007

RE: Fiesta Oak Valley

We urge the Court to grant the transfer of loan servicing agent from Compass Partners to Vindrauga Corp. I have met and communicated with Howard Justus several times and found him to be quite open and sincere, as compared with those at Compass who are too busy to respond to lenders concerns. Furthermore, Vindrauga has a plan to return all loan principal and accrued interest, while Compass seems only interested in buying up lender interests at 90 cents on the $1 and no promise of paying accrued interest. I also find it ironic that 2 key staff employees of the failed USA Capital, Mark Olson and Amanda Stevens, have found similar employment with Compass and are so designated as contacts for Direct Lenders. It is for the above reasons that my husband and I chose to put our faith and trust in Howard Justus and Vindrauga.

*Annie Omaye*

Annie Omaye & Stanley Omaye
Trustees of the Omaye 1990 Trust

**Exhibit 22 Page 5 of 10**

## Dean T. Kirby, Jr.

**From:** Joanne Grundman [sierrajazz83@yahoo.com]
**Sent:** Wednesday, April 11, 2007 3:55 PM
**To:** Howard Justus
**Subject:** Letter of Support: FOV

Ms Joanne M Grundman
1608 Brown St
Carson City NV 89701

12 April 2007

Howard Justus, CEO
DACA
1565 Hotel Circle S. Ste 310
San Diego, CA 92108

Dear Mr. Justus:

As direct lenders in the first deed of trust known as Fiesta Oak Valley (FOV) which was serviced by USAMC and now by Compass, we have elected to invoke Surviving Section 3 Right of the Loan Service Agreement (LSA). Reason for doing so is that USAMC failed to meet its fiduciary responsibilities under the LSA:

.2(d) Provide Lender with regular statements regarding loan collections, but in no event less frequently than quarterly. C.2(c)(ii).... Borrower fails to make any payment to USA...terms of note...USA will take steps to collect.... Foreclosure procedures...

During USAMC's bankruptcy proceedings, Compass was awarded the winning bid to become the new loan servicing agent for the +100 deed of trust loans of which over 50% were in default, including FOV.

According to Compass's most recent monthly statement, FOV remains in default. The loan was to have been paid off in December 2005; however, USAMC extended the loan until December 2006, without informing the lenders the borrower was in default.

In a letter dated March 23, 2007, Compass offered to reimburse Lenders "...a net 91% of their unpaid principal balance, less any uncollected Prepaid interest..."and Lenders waive their rights to any accrued unpaid interest...." The letter also implies Compass has not taken steps to collect or foreclose. Whereas, Vindruaga has offered to reimburse lenders in accordance with the LSA, and if necessary take appropriate action against the borrower.

Based on the aforementioned, these direct lenders have opted to have Vindruaga become the servicing agent for FOV loan.

Regards,
/s/
Erna D. Grundman and Joanne M. Grundman

The fish are biting.
Get more visitors on your site using Yahoo! Search Marketing.

# ERIC PERLMAN

P.O. Box 8636 (14762 WOLFGANG) TRUCKEE CA 96162  ph (530) 587-7739 / fx (530) 587-4074

Howard Justus/VINDRAUGA
Fax (619) 220-8112

4/11/07

Dear Mr. Justus,

Thank you so much for offering to take over the loan servicing on the Fiesta Oak Valley Loan. I wish you the best of luck with your court hearings.

Your treatment of the lenders has been a case study in responsible, ethical conduct. Compass Partners, unfortunately, has been a case study in neglect and dereliction of fiduciary responsibility.

You have been informative and available by telephone, e-mail and in person. Your personal meeting with investors in Reno was a huge help in understanding the problems and potential with the FOV loan. I was especially impressed that you brought your partners and associates to meet the lenders and explain your plans and our options.

Compass Partners on the other hand has made no effort to meet the thousands of investors they have pledged to serve and has been largely unreachable by phone or e-mail. The one time I was able to reach a human being and not an answering machine or "phone-out-of-order" message, I finally got through to their director of Public Relations, Judah Engelmayer in mid-March. I introduced myself and before I could ask a question, he interrupted in a mocking tone, "...and you want to know what's going on...right?" I replied, "Yes." Again, curt and snotty, he said, "Look this isn't my problem, talk to Mark." "Mark Olson?" "Yeah." He recited the Las Vegas phone number and promptly hung up. I tried to reach Mr. Olson numerous times after that and never got through to a human being.

Compass Partners' website is still not functioning, now, two months after taking over the loan servicing. The primary partners at Compass have made no effort to introduce themselves to the lenders or explain their intentions and plans for protecting us. Their lone open letter to the lenders was so vague and perfunctory as to be frightening. I believe they have deliberately made themselves shadowy and mysterious to gain the edge in negotiations and scare the lenders into accepting low settlement offers.

Vindrauga has offered 100 cents on the dollar for loan interests of Fiesta Oak Valley lenders, warning (against their own potential profits), that they believe waiting would probably yield us our overdue interest as well. Compass Partners, representing a buyer whom they will not divulge and whom I believe to be themselves and/or their business associates, has offered 88 cents on the dollar. I consider this to be a violation of fiduciary duty. Compass Partners is capitalizing on insider information and access to lenders to acquire assets at below market rates and enrich the partners at the expense of the very lenders they are obligated to serve. This is a blatant breach of the law! Compass should be punished. Vindrauga should be recognized as the lawful, designated loan servicer by more than 51% of the lenders as confirmed by Nevada State Law.

Sincerely,

**Exhibit 22 Page 7 of 10**

## Dean T. Kirby, Jr.

**From:** Cindee Davis [ladyofzlodge@yahoo.com]
**Sent:** Wednesday, April 11, 2007 1:25 PM
**To:** Howard Justus
**Subject:** Support letter

To whom it may concern
From Cynthia G Davis, Trustee of the Cynthia G Davis
Living Trust
April 11. 2007

I have given my designation to Howard Justus of
Vindrauga to transfer the loan servicing from Compass
to Vindrauga for the following reasons:

Howard Justus offered his ideas, proposals, and
options in a meeting he arranged in Reno, NV, earlier
this year.  Howard was open, answered all questions
put to him, introduced us to his associate, and gained
our confidence.  His willingness to invest  in Fiesta
Oak Valley and put his investment at risk in the same
way our investments are at risk and his commitment to
apply all collected proceeds from the FOV borrower
first toward principal and interest and then toward
other charges were elements that inspired this
confidence and good will.  Since that meeting, Howard
has continued to answer questions and share pertinent
information with FOV lenders.  I am more convinced
than ever that the best resolution to the FOV loan is
under Howard Justus' capable direction and Vindrauga's
servicing.  I urge the court to grant the transfer the
loan servicing of FOV to Vindrauga .

Thank you,  Cynthia G Davis

---

The fish are biting.
Get more visitors on your site using Yahoo! Search Marketing.
http://searchmarketing.yahoo.com/arp/sponsoredsearch_v2.php

4/15/2007

**Exhibit 22 Page 8 of 10**

Leland K. Swanson
212 Greenbriar Lane
Buffalo, Mn 55313

April 12, 2007

RE: Removal of Compass

Howard J. Justus
Vindrauga Corporation
1565 Hotel Circle South, Suite 310
San Diego, Ca 92108

To Whom It May Concern:

I would very much like to express my thoughts in regards to requesting a change in my Loan Servicing Agent from my loan with Fiesta Oak Valley. It has been one year since the notification of bankruptcy of USA Capital. I have been patiently waiting for some answers as to what to expect from Compass Partners since the buy out of USA Capital in December of 2006. I have one million dollars invested between seven loans through USA Capital/Compass. As of this 12th day of April 2007, I have not heard one word from Compass as to what I should expect from them other then websites that were to be accessible in March 2007, as of this date they are not, and letters explaining what is happening to my money, which by the way I have not received.

I feel Compass is not acting as the Direct Lenders fiduciary and they are not protecting my interests as required by the Loan Servicing Agreement. Compass is obligated to work with the borrowers to collect all outstanding funds and under any circumstance are they to agree to compromise the funds to be collected without each and every Lender's consent.

Compass is currently notifying us that they are willing to pay 91% of our investment and nothing more, while Vindrauga is offering full return of my principal and all accrued interest.
I truly feel I am being used and abused by Compass, as they are not holding up to their end of their promises. I need a company that is willing to use my investments, as I intended, not for their personal finances.

Respectfully,

Leland K. Swanson
Trustee of the Alvin M. Swanson & Grace E. Swanson Living Trust dated 7/26/01

**Exhibit 22 Page 9 of 10**

13 April, 2007

We have elected to move our Fiesta Oak Valley account servicing from Compass to Vindrauga for the following reasons:

1) Since Compass took over loan servicing from USA Capital, we have not received any account updates except within the context of an attempt to purchase our loan below fair market value. Their letter dated April 4th, 2007 contained a Loan Status Report that was clearly trying to scare investors into selling their loans through Compass. The CFP next steps section of this report contains a statement that "collection escalation efforts beyond negotiation would be very time-consuming and expensive". CFP wants to restructure the loan rather than foreclose. Vindrauga has pledged to begin foreclosure as soon as they have full account control in place. I want this loan concluded as quickly as possible and I agree with Vindrauga that immediate foreclosure is the best route.

2) The lack of action on behalf of Compass has already jeopardized our position as lenders. Now that USAIP has filed for bankruptcy protection under Chapter 11, the judge may hold up any attempt to foreclose on this loan. If Compass had moved immediately (as Vindrauga has pledged to do) to begin the foreclosure process, the judge in this new case would probably not be able to hold up the normal foreclosure process.

3) Vindrauga has promised in writing to pay principal and regular interest on this loan as first priority when it is settled. Compass has made no such pledge.

4) We believe that Compass is already operating with a conflict of interest. When the first comprehensive correspondence from them (April 4th letter) is an offer to buy my loan rather than propose how they are going to conduct loan servicing on my behalf, I feel that they are representing their own interests in direct conflict with mine (and theirs as loan servicing agent).

5) In the April 4th letter to us, Compass did not disclose what fees it would collect either from the "third party" or from us if we elected to go with the buy-out offer.

6) The USACapital bankruptcy court selected Compass as my loan servicing agent without my written consent. I would never have selected this company to serve any of my financial needs.

All of this is so disturbing to us that we have since signed a proxy to move all of our loan servicing from Compass to another agent.

Michael & Carol Percy
TTEs, Percy Family Trust U/A 9/28/99

**Exhibit 22 Page 10 of 10**