WILLIAM L. McGIMSEY
A Professional Corp.
Nevada Bar No. 546
601 E. Charleston Blvd.    E-FILED - 04/19/07
Las Vegas, NV 89104
(702) 382-9948

Attorney for Margaret B. McGimsey Trust, Bruce McGimsey, Jerry McGimsey, Sharon McGimsey and Johnny Clark

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br>    Debtor.<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br>    Debtor.<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>    Debtor.<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>    Debtor.<br><br>USA SECURITIES, LLC,<br>    Debtor.<br>_____<br>Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>■ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Case No. BK-S-06-10725 LBR<br>Case No: BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>RESPONSE TO OMNIBUS OBJECTION OF USA CAPITAL REALTY ADVISORS, LLC TO CERTAIN CLAIMS BY CREDITORS MARGARET B. McGIMSEY TRUST, BRUCE McGIMSEY, JERRY McGIMSEY, SHARON McGIMSEY AND JOHNNY CLARK<br><br>Date: 04/26/07<br>Time: 9:30 a.m. |

COME NOW Creditors Margaret B. McGimsey Trust, Bruce McGimsey, Jerry McGimsey, Sharon McGimsey and Johnny Clark, by and through their attorney, William L. McGimsey, Esq., and

in response to the objection of USA Capital Realty Advisors, LLC to the Proofs of Claim filed by these Creditors show as follows.

Each of these Creditors have filed Proofs of Claim as Creditors in the USA Capital Realty Advisors, LLC proceeding. Each of these Creditors became a member of the USA Capital Diversified Trust Deed Fund, LLC pursuant to an Offering Circular and Subscription Agreement, a true copy of the Subscription Agreement is attached hereto and made a part hereof as Exhibits A.

The subscription agreement provides in pertinent part:

> The undersigned hereby applied to become a Member of USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, a Nevada limited liability company (the "Company"), and subscribes to purchase the number of Units herein indicated in accordance with the terms and conditions of the Operating Agreement attached as Exhibit A to the Offering Circular dated March 1, 2000, as amended or supplemented from time to time (the "Offering Circular").

Pages 13, 14 and 15 of the Offering Circular, true copies of said pages are attached hereto and made a part hereof as Exhibit B, provide, among other parts, the following:

> **1. Priority of Deeds of Trust.** All Fund loans will be secured only by first deeds of trust that encumber the property which the Fund loans are being used to acquire, develop, construct or otherwise finance. In some states, a mortgage is used to create a security interest in real property, rather than a deed of trust. For purposes of this Offering Circular, the term "deed of trust" means both a deed of trust and a mortgage....
>
> **3. Loan-to-Value Ratios.** The amount of a Fund loan will generally not exceed the following percentages, based on the appraised value of the security property as determined by a independent written appraisal at the time the loan is made.

| Type of Property/Loan | Maximum Loan to Value Ratio (subject to increase by the Manager) |
|---|---|
| Residential Subdivisions (loans to land developers and residential builders) | 75% |
| Commercial Property (including but not limited to multi-unit residential property, office buildings, industrial and warehouse facilities, retail stores, shopping centers, motels, self-storage facilities, and senior housing) | 75% |
| Unimproved Land | 60% |

> These loan-to-value ratios may be increased if, in the sole discretion of the Manager, a given loan is supported by credit adequate to justify a higher loan-to-value

2

ratio or if mortgage insurance is obtained; however, the Manager does not anticipate obtaining or requiring the borrowers to maintain mortgage insurance. In addition, the maximum loan to value ratio for unimproved land may be increased, in the Manger's discretion, to 75% if the unimproved land is already entitled (e.g., a final subdivision map has been recorded on the land), a tentative map has been approved for the unimproved land, or the Manager believes that the borrower is likely to secure key entitlements. Appraisals and loan-to value ratios may be determined on an as-completed basis for construction loans (i.e., the value of property as determined by the appraiser assuming that all of the improvements for which the loan is being sought are completed). Finally, the foregoing loan-to-value ratio will not apply to purchase-money financing offered by the Fund to sell any real estate owned (acquired through foreclosure) or to refinance an existing loan that is in default at the time of maturity. In such cases, the Manager shall be free to accept any reasonable financing terms that it deems to be in the best interests of the Fund, in its sole discretion.

The Fund will receive an appraisal for each property on which it will make a mortgage loan. Generally, appraisers retained by the Fund shall be certified by the American Institute of Real Estate Appraisers (M.A.I. or S.R.A.), although appraisals from appraisers holding other credentials (e.g., who meet the minimum qualifications prescribed by local laws or are the type generally used by commercial lenders in the state the property is situated) may be used with respect to some Fund loans. The Manager will review each appraisal report....

**8. No Loans to Manager.** No loans will be made by the Fund to the Manager or to any of its affiliates, except for any financing extended as part of a sale of real estate owned as a result of foreclosure. (See "Conflicts of Interest – Sale of Real Estate Owned to Affiliates".)

The evidence in this case will show that the Debtor USA Capital Realty Advisors, LLC (hereinafter referred to as "Realty Advisors") violated all of these contractual provisions leading to the Creditors' claims herein. The evidence show that Debtor Realty Advisors, as manager of the fund, caused loans to be made to its insiders and affiliates without obtaining any collateral whatsoever.

The Offering Circular itself states at pages 22 to 23, a true copy of said pages is attached hereto as Exhibit C, as follows:

**FIDUCIARY RESPONSIBILITY OF THE MANAGER**

Under Nevada law, the fiduciary duties of a manger to the limited liability company and to its members are those of a partner to a partnership and to the partners of a partnership. Accordingly, a manager is accountable to a limited liability company as a fiduciary, which means that a manager is required to exercise good faith and integrity with respect to company affairs. This fiduciary duty is in addition to those other duties and obligations of, and limitations on, the Manager which are set forth in the Operating Agreement. Pursuant to the terms of the Operating Agreement, during business hours and with five days' prior notice, any Member or his legal representative may inspect the Fund's financial statements and other books and records as they relate to the internal affairs of the Fund.

The evidence will show that the manager, Realty Advisors, was indeed guilty of intentional

misconduct when it caused loans to be made not for the benefit of the Diversified Trust Deed Fund but rather for the benefit of the real owners of USA Commercial Mortgage Company and Realty Advisors, to-wit: Mr. Hantges and Mr. Milanowski.

                              Respectfully submitted,

                              s// William L. McGimsey
                              WILLIAM L. McGIMSEY, ESQ.
                              601 East Charleston Blvd.
                              Las Vegas, NV 89104
                              Attorney for McGimsey and Clark