# CONSTRUCTION LOAN AGREEMENT

This Construction Loan Agreement, dated as of March 1, 2006, is entered into by and among **Copper Sage Commerce Center, LLC**, a Nevada limited liability company, ("Borrower"), and those persons and entities listed on **Exhibit "A"** attached hereto (collectively, "Lender").

## SECTION 1: DEFINITIONS AND ACCOUNTING TERMS.

1.1     <u>Defined Terms.</u>     As used in this Agreement, the following terms shall have the meanings set forth respectively after each:

**"Actual Line Item Cost"** means, with respect to each line item in the Approved Budget, the actual cost reasonably determined by Lender or Borrower required to complete all matters included in such line item.

**"Agreement"** means this Construction Loan Agreement.

**"Approved Budgets"** means the budgets for all Project Costs approved by Lender as provided herein. The Approved Budgets showing the amounts allocated for all Project Costs are attached hereto as **Exhibit "B."**

**"Approved Line Item Cost"** means, with respect to each line item in the Approved Budgets, the amount allocated to that line item under the Approved Budgets.

**"Assignment of Architect's Contract, Plans and Drawings"** means the assignment by Borrower of its agreement with the architect, to be executed by Borrower.

**"Assignment of Construction Contract"** means the assignment by Borrower of its agreement with the Contractor, to be executed by Borrower.

**"Assignment of Engineer's Contract, Improvement Plans, Specifications and Drawings"** means the Assignment of Improvement Plans, Specifications and Drawings executed by Borrower.

**"Assignment of Permits, Licenses, Franchises and Authorizations"** means the Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower.

**"Assignment of Rents"** means the Assignment of Rents contained in the Deed of Trust.

**"Business Day"** means any Monday, Tuesday, Wednesday, Thursday, or Friday on which banks in the State of Nevada are open for business.

**"Change Order"** means a change in the Improvement Plans or in their implementation.

**"Completion of Construction"** means: (i) the improvements have been constructed in

1

accordance with the Improvement Plans and all applicable Laws; (ii) a valid notice of completion has been filed for record in the County Recorder's Office for the county in which the Property is located; (iii) all inspections by Governmental Agencies have been completed; (iv) all necessary certificates and approvals have been obtained; and (v) the period for filing mechanic's and materialmen's liens has expired without any such liens having been filed or recorded.

**"Control Account"** means Disbursement Agent's account in which the Control Account Funds shall be held.

**"Contractor"** means Howell & Bros. Construction, Inc, a Nevada corporation, or any other general contractor which Lender has approved in writing.

**"Control Account Escrow Agreement"** means the Control Account Escrow Agreement and Security Agreement by and between Borrower, Lender and Disbursement Agent of even date herewith.

**"Control Account Funds"** means the portion of the Loan funds held in the Control Account at any time, together with interest accrued thereon, any additions thereto made pursuant to this Agreement, and any and all investments and reinvestments of any such sums now or hereafter made.

**"Debt"** means any indebtedness of the Borrower other than indebtedness owed to trade creditors incurred in the ordinary course of business and payable in 180 days or less.

**"Deed of Trust"** means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith, executed by Borrower in favor of Lender with respect to the Property or portions thereof, either as originally executed or as it may from time to time be supplemented, modified or amended.

**"Default Rate"** shall have the meaning set forth in the Note.

**"Disbursement"** means each of the disbursements by Lender or Disbursement Agent of the Proceeds of the Loan or other funds (including the Control Account Funds) pursuant to this Agreement.

**"Disbursement Agent"** means Project Disbursement Group, Inc., or any other licensed construction control company approved by Lender which may at any time hold any portion of the Control Account Funds pursuant to this Agreement.

**"Disbursement Schedule"** means the schedule for Disbursements attached hereto as **Exhibit "C."**

**"Effective Date"** means the date the Deed of Trust is recorded in the Official Records of Clark County, Nevada.

**"Environmental Indemnity"** means the Environmental and Accessibility Indemnity

2

Agreement executed by Borrower and the Guarantors.

"**Events of Default**" means each of those events so designated in Section 7.1 of this Agreement.

"**Excess Cost**" means, with respect to any line item in the Approved Budgets, the amount, if any, by which the Actual Line Item Cost for such line item exceeds the Approved Line Item Cost for such line item.

"**Financing Statement**" means financing statement of even date herewith executed by Borrower in favor of Lender with respect to the Personal Property.
the Guarantors in favor of Lender, either as originally executed or as it may from time to time be supplemented, modified or amended.

"**Hard Costs**" means Project Costs for labor, services, material, and equipment used in or rendered directly on the construction of the Improvements.

"**Improvement Plans**" means the final, approved, and initialed improvement plans and specifications for the Project identified in **Exhibit "D"** as accepted by Lender.

"**Improvements**" means any and all improvements now existing or hereafter constructed on the Real Property.

"**Initial Advance**" means the amount of the Loan that is disbursed to or on behalf of Borrower at the initial closing of the Loan.

"**Interest Reserve**" means that portion of the Control Account Funds allocated to interest reserve pursuant to Section 3.3 below.

"**Laws**" means, collectively, all federal, state and local laws, rules, regulations, ordinances and codes.

"**Lender**" means, collectively, those persons and entities listed on Exhibit "A" attached hereto and any other persons or entities who may be added to that list pursuant to an amendment to the Note.

"**Lender's Agent**" means USA Commercial Mortgage Company, or any other Agent appointed by Lender pursuant hereto.

"**Loan**" means the loan to be made by Lender to Borrower pursuant to Section 3 hereof.

"**Loan Documents**" means, collectively, this Agreement, the Note, the Security Documents, the Environmental Indemnity, the Guaranty and the Project Assignments, in each case either as originally executed or as may from time to time be supplemented, modified or amended, together with any other documents or instruments which may at any time be executed by Borrower in connection with the Loan.

"**Maturity Date**" means the date which is eighteen (18) months after the Deed of Trust is recorded.

"**Mortgaged Property**" means the Property together with the Personal Property.

"**Note**" means the promissory note of even date herewith, in the original principal amount of $3,550,000, executed by Borrower in favor of Lender to evidence the Loan, either as originally executed or as it may from time to time be supplemented, modified or amended.

"**NRS**" means the Nevada Revised Statutes, as amended from time to time.

"**Offsite Materials**" means any materials to be used in connection with the construction of the Improvements stored at a location other than the Property.

"**Offsite Supplier**" means a supplier of Offsite Materials.

"**Operation**" means the operation of Borrower's business on the Property, including the operation, sales, leasing, running and maintenance of the Property and the Improvements.

"**Overrun Account**" means a noninterest-bearing account established with Lender into which Borrower shall deposit the Excess Cost, if any, for each line item of the Approved Budgets.

"**Permitted Exceptions**" means the matters identified in **Exhibit "E"** attached hereto and made part hereof.

"**Person**" means any entity, whether an individual, trustee, corporation, partnership, trust, unincorporated organization or otherwise.

"**Personal Property**" means all present and future personal property (including the Project Documents) of Borrower of every kind and nature, whether tangible or intangible, now or hereafter located at, upon or about the Property, or used or to be used in connection with or relating or arising with respect to the Property and/or the Project, including but not limited to the property described in the Deed of Trust.

4

**"Project"** means the project for the development of, and construction of Improvements on, the Property, as such exists at any time, in accordance with the Improvement Plans.

**"Project Assignments"** means, collectively, the Assignment of Permits, Licenses, Franchises and Authorizations, the Assignment of Engineer's Contract, Improvement Plans, Specifications and Drawings, the Assignment of Construction Contract, the Assignment of Architect's Contract, Plans and Drawings, and such other assignments as Lender shall require.

**"Project Cost Allocation"** means the portion of the total Project Costs allocated to a particular item in the Approved Budgets.

**"Project Costs"** means all of the costs to complete the Project.

**"Project Documents"** means, collectively, all agreements, documents, instruments and materials of whatever kind or nature relating to the Project, including but not limited to: (a) the improvement plans and all other plans, specifications and drawings relating to the Project, (b) all approvals, consents, licenses and permits issued, or to be issued, by any Governmental Agency in connection with the Project, (c) the engineer's contract, architect's contract and any and all construction contracts, and all other agreements relating to the Project between Borrower and any contractor, subcontractor, independent project manager or supervisor, architect, engineer, laborer or supplier of materials, and (d) any take-out, refinancing or permanent loan commitment issued to Borrower with respect to the Property.

**"Property"** means, collectively, the Real Property, the Improvements, and any other buildings, structures, or improvements now or hereafter located on all or any portion of the Real Property.

**"Real Property"** means the real property and interests in real property described in **Exhibit "F"**.

**"Request for Disbursement"** means a written request for a Disbursement signed by a designated representative on behalf of Borrower, in the form approved by Lender.

**"Security Agreement"** means the Security Agreement contained herein and in the Deed of Trust.

**"Security Documents"** means the Deed of Trust, the Project Assignments, the Financing Statements and any other mortgage, deed of trust, assignment of leases, security agreement or assignment executed to secure the Note, either as originally executed or as they may from time to time be supplemented, modified or amended.

**"Title Company"** means First American Title Insurance Company.

**"Title Policy"** means the Lender's policy of title insurance and endorsements thereto required by this Agreement as a condition of the first Disbursement.

"**Undisbursed Construction Funds**" means, as of any time of determination, the sum of the undisbursed portion of the Loan Amount (i.e., that portion that has never been advanced by Lender) and the Control Account Funds.

"**USA**" means USA Commercial Mortgage Company, a Nevada corporation, the mortgage company which arranged the Loan.

"**Use**" means ownership, use, development, construction, maintenance, management, operation or occupancy.

1.2    Use of Defined Terms.    Any defined term used in the plural refers to all members of the relevant class, and any defined term used in the singular shall refer to any number of the members of the relevant class.  Any reference to the Loan Documents and other instruments, documents and agreements shall include such Loan Documents and other instruments, documents and agreements as originally executed or as the same may be supplemented, modified or amended.

1.3    Accounting Terms.    All accounting terms not specifically defined in this Agreement shall be construed in conformity with, and all financial data required to be submitted by this Agreement shall be prepared in conformity with, generally accepted accounting principles applied on a consistent basis.

1.4    Exhibits.    All exhibits to this Agreement, either as now existing or as the same may from time to time be supplemented, modified or amended, are incorporated herein by this reference.

## SECTION 2: RECITALS.

Borrower has applied to Lender for a Loan to acquire and develop, by constructing thereon lots suitable for the construction of single family residences, the Real Property.  Lender is willing to make the Loan to Borrower on the terms and conditions contained in this Agreement and the other Loan Documents.

## SECTION 3: THE LOAN.

3.1    Amount of the Loan.    Subject to the terms and conditions set forth in this Agreement, Lender agrees to make a loan ("Loan") to Borrower in a principal amount of Three Million Five Hundred Fifty Thousand Dollars ($3,550,000) (the "Loan Amount"), Lender's disbursement of which is subject to the terms and conditions of the Loan Documents.  The Loan Amount shall be disbursed in accordance with Lender's instructions to the Title Company.  From and after the Effective Date, the entire Loan Amount (whether paid to, or on behalf of, Borrower or held by the Disbursement Agent) shall bear interest at the rate set forth in the Note until fully repaid to Lender.

3.2    Increase in Loan Amount.    From the Effective Date through and including September, 2007, Lender and USA shall have the exclusive right, but not the obligation, to increase the Loan Amount to an amount not to exceed Eleven Million Three Hundred Thousand Dollars

6

($11,300,000). All amounts that Lender may advance after the Effective Date shall increase the Loan Amount and be used for the following purposes: (i) to pay for Project Costs per the Approved Budgets, (ii) to pay the loan fees due with regard to such advance, and (iii) to fund the Interest Reserve (defined below). In the event of any such increase, Lender shall determine which of the Senior Encumbrances it wishes to have reconveyed. Upon each increase in the Loan Amount, Borrower shall execute amendments to the Note and the Deed of Trust which shall memorialize the increase in the Loan Amount, the change in the identity of the persons and entities which comprise Lender and their respective undivided interests in the Loan. Upon the recordation of the amendment(s) to the Deed of Trust, the Title Company shall issue to Lender, at Borrower's expense, an endorsement or endorsements to the Title Policy which shall (i) insure the continued priority of the Deed of Trust, including the deletion of the Senior Encumbrances that were reconveyed, and that the additional advance is secured thereby, (ii) reflect the increase in the face amount of the policy corresponding to the increase in the Loan Amount, and (iii) set forth the change in the identity of the insured lenders and their respective undivided interests in the Loan. Upon any such additional advance, a portion thereof shall be deposited into the Interest Reserve (defined below) for the Loan. Nothing herein shall constitute a commitment by Lender or USA to fund to Borrower any more than the initial Loan Amount.

3.3    Interest Reserve.    The Title Company shall disburse a portion of the Loan Amount, as reasonably determined by Lender, to the Disbursement Agent to be held as interest reserve for the benefit of Lender (the "Interest Reserve"). Disbursement Agent shall hold and disburse the Interest Reserve in accordance with the Control Account Escrow Agreement. As additional advances are made, as provided in Section 3.2 above, a portion of such advances, the amount of which shall be reasonably determined by Lender, shall be deposited into the Interest Reserve. Interest accrued on the Note Amount shall be paid from the Interest Reserve upon presentation of a monthly interest statement by Lender, without the necessity of any instruction or request from Borrower. Except as provided in this paragraph, the funds in the Interest Reserve shall never be used for any other purpose without the express written consent of Lender. Depletion of the Interest Reserve shall not release Borrower from any of Borrower's obligations under the Loan Documents, including but not limited to the obligation to pay interest accruing under the Note. After depletion of the Interest Reserve, or so long as any Event of Default has occurred and is continuing, all interest payments under the Note shall be made by Borrower using its own funds; provided that Lender, at its option and in its sole discretion, may obtain disbursements from the Interest Reserve notwithstanding such Event of Default. Upon the occurrence of an Event of Default, the entire balance of the Interest Reserve shall be paid to Lender upon demand and applied to the then outstanding balance of the Loan.

3.4    Disbursements.

(a)    The Initial Advance shall be made in accordance with instructions that Lender shall deliver to the Title Company.

(b)    Construction Disbursements. Except as otherwise provided herein, the Loan funds remaining from the Initial Advance shall be held in the Control Account, and disbursed therefrom in accordance with this Agreement. Disbursement Agent, upon satisfaction of the

7

requirements of the Disbursement Schedule, shall then disburse such funds from the Control Account for the payment of such costs. The funds disbursed by the Lender to the Control Account shall thereafter comprise the Control Account Funds. Unless Lender otherwise agrees:

(i)    the principal amount of each Disbursement shall not be less than Twenty-Five Thousand Dollars ($25,000), or a lesser amount equal to the Undisbursed Construction Funds:

(ii)    no more than two Disbursements shall be made in any calendar month;

(iii)    Disbursements shall be made in accordance with the terms of the Disbursement Schedule and the Control Account Escrow Agreement;

(iv)    Disbursement Agent shall make no Disbursement from the Control Account Funds for any cost expended or incurred by Borrower on any real property (x) not owned by Borrower, or (y) on which the Deed of Trust is not a first priority lien.

The proceeds of the Loan shall be used solely to pay or reimburse Borrower for Project Costs described in the Approved Budgets and the Disbursement Schedule. The total amount disbursed for each item of Project Cost described in the Approved Budgets shall not exceed the applicable amounts set forth in the Approved Budgets. If Borrower is not required to pay, for any reason, any amount earned by any contractor, subcontractor, materialman, supplier or any other Person who has furnished labor, services, equipment, or material to the Project, then Borrower shall not request a Disbursement for such amount until such time as Borrower is required to pay such amounts.

(c)    Procedure for Disbursement. Not later than 10:00 a.m. Pacific Time, at least five (5) Business Days before a proposed Disbursement is to be made, Disbursement Agent shall have received a Request for Disbursement which shall indicate the amount of the Disbursement. Upon compliance with all of the above-referenced conditions and the conditions set forth in Section 4 and the Disbursement Schedule, Disbursement Agent shall cause disbursement to be made from the Control Account in the manner provided herein on the date requested. Lender may, at its option and in its sole discretion, waive any such conditions as to any Disbursement, provided that any such waiver shall not constitute a waiver of any such conditions as to any subsequent Disbursements.

(d)    Lender's Obligation. Notwithstanding anything to the contrary contained herein or in any other Loan Document, the execution of this Agreement by Borrower shall, and hereby does, constitute an irrevocable direction and authorization to so disburse the funds to the Control Account. No further direction or authorization from Borrower shall be necessary to warrant Disbursement and such Disbursement shall satisfy the obligations of Lender hereunder and the amount hereof shall be, and continue to be, secured by the Deed of Trust and the other Security Documents, regardless of the disposition of such funds by Borrower or Contractor.

(e)    Interest Reserve. The total interest reserve portion of the Control Account Funds shall be $1,186,970. Disbursement Agent shall pay an amount for interest from the Interest Reserve Account as billed by Lender monthly. Borrower shall pay the remainder of the accrued

8

interest for each month directly from its own funds.

(f)     Excess Costs; Loan Balancing.  As a material condition of the Loan and a condition precedent to the duty of Disbursement Agent to make any Disbursement, Borrower shall pay when invoiced all Project Costs.  Except for the payment of interest from the Interest Reserve Account and the payment of expenses, charges, costs, and fees pursuant to Section 6.14 and 8.11 hereof, Disbursement Agent may disburse proceeds of the Loan only when the Loan is "in balance." The Loan shall be "in balance" only at such times as Borrower has invested sufficient funds to the payment of Project Costs so that, in Lender's sole judgment, the remaining Control Account Funds will be sufficient to fully complete and operate the Improvements and pay all Project Costs therefor as they are incurred.  The determination as to whether the Loan is "in balance" may be made by the Lender at any time, including with each request for a Disbursement.  Borrower shall, within five (5) days after notice from Lender that the Loan is not "in balance," deposit with Disbursement Agent for the benefit of Lender, in cash, the amount necessary to put the Loan "in balance." Any amounts which Borrower deposits to put the Loan "in balance" shall be the next funds disbursed by Disbursement Agent, subject to the terms and conditions of this Agreement.

(g)     Reserves.  Regardless of anything contained herein to the contrary, at any time Borrower is in default hereunder, Lender may, at its option, direct Disbursement Agent to establish reserves from the undisbursed portion of the Control Account Funds in such amounts which, in Lender's sole discretion, are necessary to complete the Improvements and sufficient to pay or satisfy or comply with, in whole or in part, (i) any lien or claim relating to, or prejudicial to, the liens or security interests of Lender; (ii) any expenditure or allocation of funds shown on the Approved Budgets; and (iii) interest yet to accrue on the Loan prior to the Maturity Date.  The aggregate amount of any such reserves shall be deducted from the Control Account Funds otherwise available for advance.

3.5     Approved Budgets.  Attached hereto as Exhibit "B" are line-item budgets for the construction of the Improvements.  Borrower represents and warrants that said budgets are based on information deemed reliable by Borrower and represent Borrower's best estimate of all required Project Costs.  The Approved Budgets shall include funds for construction and permit costs. Unless Lender otherwise consents in writing, Borrower shall not supplement, modify, or amend the Approved Budgets.  During the term of the Loan, Borrower may submit revised budgets to Lender for approval, in Lender's sole discretion.  Disbursement Agent shall disburse the Control Account Funds to Borrower in strict accordance with the Approved Budgets.  In the event Borrower requests a Disbursement which exceeds the line item therefor in the existing Approved Budget, then such excess payment shall be made only according to Section 6.7 hereof.  With the approval of Lender on each occasion, Borrower may reallocate amounts from line items in which it will have a cost savings to the "Contingency" line item of the Approved Budgets.  Said funds may then be used as provided in Section 6.7 hereof.

3.6     Security.  The indebtedness evidenced by the Note, and all other indebtedness and obligations of Borrower under the Loan Documents, shall be secured by the Security Documents. The Environmental Indemnity and the Guaranties and the respective obligations of any of Borrowers and the Guarantors under each shall be unsecured.

9

3.7     Repayment of the Loan. The Loan shall be evidenced by the Note, shall bear interest at the rate set forth in the Note from the date set forth in Section 3.1 hereof, and shall be repaid per the terms of the Note. The principal balance outstanding under the Note, and all accrued and unpaid interest not sooner paid when due under the Note, and all other indebtedness and obligations of Borrower owing under any and all of the Loan Documents shall be due and payable in full on the Maturity Date.

3.8     Prepayment.     Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date they are paid and will not be subject to refund upon any early payment hereof (whether voluntarily or as a result of default). Subject to the foregoing, Borrower may prepay the Loan, in full or in part, at any time.

3.9     Effective Date. Borrower and Lender agree that the date of the Loan Documents is for reference purposes only and the effective date ("Effective Date") of the delivery and the transfer to Lender of the security under the Loan Documents and of Borrower's and Lender's obligations under the Loan Documents is the date of recordation of the Deed of Trust in the office of the County Recorder of the county where the Property is located.

3.10     Yield Protection. If, after the date of this Agreement, the adoption of any law or any governmental or quasi-governmental rule, regulation, policy, guideline or directive (whether or not having the force of law), or any change therein, or any change in the interpretation or administration thereof, or the compliance of the Lender therewith,

(a)     subjects the Lender to any tax, duty, charge or withholding on or from payments due from Borrower (excluding taxation of the overall net income of the Lender), or changes the basis of taxation of payments to the Lender in respect of its Loans or other amounts due it hereunder; or

(b)     imposes or increases or deems applicable any reserve, assessment, insurance charge, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by, the Lender; or

(c)     imposes any other condition the result of which is to increase the cost to the Lender of making, funding or maintaining advances or reduces any amount receivable by the Lender in connection with advances, or requires the Lender to make any payment calculated by reference to the amount of advances held or interest received by it, by an amount deemed material by the Lender;

then, within fifteen (15) days of demand by the Lender, the Borrower shall pay the Lender that portion of such increased expense incurred (including, in the case of clause (c), any reduction in the rate of return on capital to an amount below that which it could have achieved but for such law, rule, regulation, policy, guideline or directive and after taking into account the Lender's policies as to capital adequacy) or reduction in an amount received which the Lender determines is attributable to making, funding and maintaining the Loans.

10

3.11    Partial Release Provisions. Provided that no Event of Default has occurred and is continuing, parcels of the Real Property may be released from the lien of the Deed of Trust for a payment to Lender of 94% of the net proceeds from the sale of such parcel. The term "net proceeds" as used herein means 90% of the total consideration paid for the parcel, but not less than $100 per square foot of land released. In addition, the following requirements must be met: (i) the parcel sold and the remainder must all be legal parcels under Nevada law; and (ii) any amount of the gross sale price that would go to Borrower shall be applied to the $56,500 deferred loan fee (as provided in the Fee Agreement between Borrower and USA of even date herewith) until the same is paid in full.

## SECTION 4: CONDITIONS TO DISBURSEMENTS.

4.1    Initial Advance Conditions.    The obligation of Lender to initially close the Loan is subject to the following conditions precedent:

(a)    Borrower shall, at its sole expense, deliver or cause to be delivered to Lender, in form and substance satisfactory to Lender:

(i)    the original Note;

(ii)    the original Deed of Trust;

(iii)    the original Financing Statement;

(iv)    the original Guaranty;

(v)    the original Environmental Indemnity;

(vi)    the original Control Account Escrow Agreement, executed by Borrower, Lender and Disbursement Agent;

(vii)    the original Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower;

(viii)    the original Assignment of Architect's Contract, Plans and Drawings;

(ix)    the original Assignment of Engineer's Contract, Improvement Plans, Specifications and Drawings;

(x)    the original Assignment of the Construction Contract and consent thereto executed by the Contractor;

(xi)    a certificate of consent of Borrower, authorizing the execution, delivery and performance of the Loan Documents to be executed by a specified authorized officer on behalf of Borrower;

11

(xii)  an ALTA form of extended coverage lender's policy of title insurance, or evidence of a commitment therefor, issued by an insurer satisfactory to Lender, together with such endorsements and binders thereto as may be required by Lender pursuant to Section 6.16 hereof, in a policy amount of not less than the face amount of the Note, insuring the Deed of Trust to be a valid lien upon the Property, and showing the Property to be subject only to the Permitted Exceptions;

(xiii)  an appraisal of the Real Property certified to Lender, performed by an appraiser acceptable to Lender;

(xiv)  certified copies of, or certificate evidencing, all insurance policies required to be delivered pursuant to this Agreement;

(xv)  copies of all permits and approvals by Governmental Agencies necessary to construct the Improvements (if available);

(xvi)  current Financial Statements of Borrower and the Guarantors;

(xvii)  evidence, in form and substance acceptable to Lender, of the availability and sufficiency of all utilities to the Project;

(xviii)  copies of any proposed, or approved final Covenants, Conditions and Restrictions recorded or to be recorded on the Project;

(xix)  a Phase I Hazardous Waste Survey, prepared by an entity approved by Lender, in form and substance acceptable to, and approved by, Lender; and

(xx)  such additional agreements, certificates, reports, approvals, instruments, documents, financing statements, consent and opinions as Lender may reasonably request; including, without limitation, a soils report for the Real Property (including, without limitation, all determinations required by Lender with respect to hazardous waste (as such term is defined in the Environmental Indemnities) and water located on the Real Property).

(b)  Lender shall have reviewed and approved the Permitted Exceptions;

(c)  Borrower has acquired fee title to all of the Property free and clear of all liens and encumbrances which are not Permitted Exceptions;

(d)  The Deed of Trust shall have been recorded in the Official Records of the County in which the Property is located as a first priority lien;

(e)    The Financing Statement shall have been filed for record with the Nevada Secretary of State.

4.2    Any Disbursement.    The obligation of Lender to make any Disbursement (including the first Disbursement) is subject to the terms and conditions of the Disbursement Schedule and, in addition, the following conditions precedent:

(a)    the representations and warranties of Borrower contained in all of the Loan Documents shall be correct on and as of the date of the advance as though made on and as of that date and no Event of Default (or event which, with the giving of notice and/or the passage of time, would become an Event of Default) shall have occurred and be continuing;

(b)    Borrower shall have received (i) valid and enforceable partial or complete lien releases or waivers, as may be appropriate, from all Persons who have furnished labor, services, equipment, or material to the Project, accompanied by a written accounting signed by such Persons showing all amounts owed to such Persons, except that Borrower shall not be required to pay any claim for labor, service, equipment, or material that is being contested in good faith by appropriate proceedings as long as no claim of lien has been recorded, or, if a claim of lien has been recorded, within ten (10) days thereafter Borrower either has obtained and recorded a surety bond, in form and substance satisfactory to Lender, sufficient to release the Property from the lien or from any action brought to foreclose the lien, or has caused the title insurer who has issued the Title Policy to issue, in form and substance satisfactory to Lender, an endorsement to the policy insuring the priority of the lien of the Deed of Trust over the claim of lien, and (ii) an invoice or receipt with respect to each payment made on account of labor, service, equipment, or material furnished to the Project in sufficient detail so that the particular nature of the labor, service, equipment, or material may be identified;

(c)    the construction of the Improvements shall in all respects conform to the Improvement Plans and all applicable Laws and other requirements;

(d)    Lender has received copies of all permits and approvals by Governmental Agencies necessary to construct the Improvements that have been obtained as of the date of Lender's request therefor;

(e)    Lender has received and approved line-item budgets for the costs to be paid and such Approved Budgets have been forwarded to the Disbursement Agent;

(f)    Borrower shall, at its sole expense, deliver or cause to be delivered to Lender, in form and substance satisfactory to Lender:

(i)    from the title insurer who has issued the Title Policy, such endorsements, binders, or modifications thereto as Lender may require;

(ii)    a Request for Disbursement, certifying the matters set forth in Sections 4.2(a, b, and c) above;

13

(iii)    (A) an itemization of the amounts requested and/or of all amounts previously expended in connection with the Improvements, in either case identified to the corresponding item in the Approved Budgets, and, if demanded by Lender, (B) a certificate signed by an inspector acceptable to Lender verifying the matters set forth in Sections 4.2 (b and c); and

(iv)    such additional agreements, certificates, reports, approvals, instruments, documents, consents, or opinions as Lender may reasonably request.

(g)    Lender is reasonably satisfied, based upon periodic inspections and such other information as Lender deems relevant, that (i) the progress of construction of the Improvements is as represented by Borrower, and (ii) construction of the Improvements conforms to the Improvement Plans and all applicable Laws and other requirements;

(h)    All conditions to the making of the first Disbursement have been satisfied, and Lender does not waive any of these conditions even though one or more Disbursements may have been made prior to the satisfaction of all such conditions.

4.3    Final Disbursement of Hard Costs. With respect to each line item of the Approved Budgets which is subject to retention of Loan Funds as set forth in the Disbursement Schedule, the obligation of Lender to make the final Disbursement is subject to Lender's receiving satisfactory evidence that the following conditions precedent have been satisfied:

(a)    The Improvements shall have been completed according to the Improvement Plans and all applicable permits, Laws, and other requirements of all Governmental Agencies and public utility companies, and Borrower and Contractor shall deliver to Lender a certificate to this effect;

(b)    Borrower shall, at its sole expense, deliver or cause to be delivered to Lender an endorsement to Lender's ALTA form extended coverage to lender's policy of title insurance, or evidence of a commitment therefor satisfactory to Lender, in form and substance and issued by an insurer satisfactory to Lender, insuring the Deed of Trust to be a valid first position lien upon the Property, and showing the Property to be subject only to the Permitted Exceptions and such other exceptions as shall have been approved in writing by Lender pursuant to this Agreement (the "Endorsement");

(c)    If demanded by Lender, and required by Title Company, Borrower shall deliver or cause to be delivered to Lender a copy of the ALTA survey prepared by Borrower, at Borrower's sole expense, if the title insurer requires such in connection with the issuance of the Endorsement, which survey shall be satisfactory to Lender and shall (i) show compliance of the Property with any and all setbacks and other restrictions applicable to the Property pursuant to the requirements of any Governmental Agency or any applicable covenants, conditions, or other private restrictions; (ii) show all easements, licenses, and other rights of way; (iii) show no encroachments onto the Property or from the Property onto adjoining property; and (iv) certify the legal description of the Property as insured in the Endorsement;

14

(d) Any portion of the Improvements requiring inspection or certification by municipal or other Governmental Agencies shall have been inspected and certified as complete, and all other necessary permits, approvals, and certificates shall have been duly issued;

(e) All conditions for Completion of Construction, as defined in Section 1.1, shall have been satisfied;

(f) Borrower shall have delivered to Lender, if appropriate, a list of all of the Personal Property, providing a general description of such Property, together with all other information reasonably required by Lender;

(g) Borrower shall deliver to Lender a copy of any recorded covenants, conditions, and restrictions, in a form previously approved by Lender; and

(h) Borrower shall deliver to Lender such instruments and documents as Lender may require, including without limitation, supplemental security agreements and form UCC-1 and/or UCC-2 financing statements, in order to extend or perfect Lender's first priority security interest in and to the Personal Property, together with evidence satisfactory to Lender that all such Personal Property has been paid for in full and is owned by Borrower, and that Lender's security interest in and to such Personal Property is a valid first priority security interest;

Provided that, notwithstanding the satisfaction of the conditions in this Section 4.3, Lender may withhold the final Disbursement until the expiration of forty-five (45) days after the recording of a valid notice of completion (or, if no notice of completion has been recorded, ninety-five (95) days after actual completion) to assure that there can be no claims for mechanic's or materialmen's liens against the Property with respect to the construction of the Improvements, or until Lender receives assurance satisfactory to it that there are and will be no such liens. Lender agrees that a CLTA Form 101.2 endorsement to the Title Policy, in form and substance reasonably satisfactory to Lender, shall satisfy this requirement.

4.4  Cost Overruns. In the event that, for any reason, the actual cost reasonably determined by Lender or Borrower to assure completion of all matters included in any line item in the Approved Budgets exceeds the amount allocated to such line item, Lender shall have no obligation to make further Disbursements until Borrower has paid or otherwise provided for the overrun as required under Section 6.7(c). Amounts deposited by Borrower in the Overrun Account for any line item shall be held by Lender as collateral and disbursed by Lender prior any further Disbursement for that line item; provided, however, that Lender shall have no obligation to Borrower to supervise or otherwise see to the proper application of such amounts following disbursement.

4.5  Offsite Materials. In the event that any Disbursement Request includes the cost of Offsite Materials, such Disbursement Request shall include each of the following:

(a) evidence that Borrower has paid for the Offsite Materials;

(b)    if the Offsite Materials are stored at the facility of an Offsite Supplier, a written statement from the Offsite Supplier that Borrower has paid for the Offsite Materials, that they have been segregated from other materials in the facility, and have been marked with Borrower's name. Such statement shall also acknowledge (i) Lender's right to enter the facility at reasonable times to inspect or remove the Offsite Materials, and (ii) Lender's first priority security interest in the Offsite Materials;

(c)    if the Offsite Materials are stored in a place other than the facility of the Offsite Supplier, a written statement from the bailee or other custodian acknowledging (i) Lender's right to enter the storage site at reasonable times to inspect or remove the Offsite Materials, and (ii) Lender's first priority security interest in the Offsite Materials;

(d)    Certificates of insurance showing the Offsite Materials to be insured as required hereunder and showing Lender as co-insured; and

(e)    evidence that Borrower has paid all personal property taxes applicable to the Offsite Materials.

Lender need not make Disbursements for any Offsite Materials until Lender has inspected and approved the Offsite Materials.

## SECTION 5: REPRESENTATIONS AND WARRANTIES BY BORROWER.

5.1    Formation, Qualification and Powers of Borrower.    Borrower is a limited liability company, duly formed and validly existing under the laws of the State of Nevada, and is qualified to do business in the State of Nevada. Borrower has all requisite power and authority to conduct its business, to own its properties, and to execute, deliver and perform all of its obligations under the Loan Documents.

5.2    Authority and Compliance with Instruments and Government Regulations. Borrower has duly authorized by all necessary action the execution, delivery and performance of all of its obligations under each Loan Document, and the same do not and will not:

(a)    require any consent or approval not heretofore obtained of any Person holding any security or interest or entitled to receive any security or interest in Borrower;

(b)    violate any provision of any organizational document or certificate of Borrower;

(c)    result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others or other encumbrance of any nature, other than under the Loan Documents, upon or with respect to any property now owned or leased or hereafter acquired by Borrower;

(d)    violate any provision of any Law, order, writ, judgment, injunction, decree,

16

determination or award presently in effect having applicability to Borrower or the Property, which violation would have a material, adverse impact thereon;

(e)    result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under, any indenture or loan or credit agreement or any other agreement, lease or instrument to which Borrower is a party or by which Borrower or any property of Borrower is bound or affected; and Borrower is not in default in any respect that is materially adverse to the interest of Lender or that would have any material adverse effect on the financial condition of Borrower or the conduct of its business under any Law, order, writ, judgment, injunction, decree, determination, award, indenture, agreement, lease or instrument described in Sections 5.2(d) and 5.2(e).

5.3    Execution of the Guaranty by the Guarantors.  The execution and delivery of the Guaranty:

(a)    has been duly authorized by all necessary action;

(b)    does not require the consent, authorization or approval of any Governmental Agency or Person;

(c)    will not result in the creation of any lien or other claim of any nature upon or with respect to the property of the Guarantors, other than as may be set forth in the Guaranty; and

(d)    will not violate any provision of any Law having applicability to the Guarantors, in a manner which would have a material, adverse impact on any Guarantor; and, when executed and delivered, the Guaranty will constitute the legal, valid and binding obligation of the Guarantors enforceable against the Guarantors in accordance with its terms.

5.4    No Governmental Approvals Required.  No authorization, consent, approval, order, license, exemption from, or filing, registration or qualification with, any Governmental Agency is or will be required to authorize, or is otherwise required in connection with:

(a)    the execution, delivery and performance by Borrower and the Guarantors of the Loan Documents; or

(b)    the creation of the liens, security interests or other charges or encumbrances described in the Security Documents; except that filing and/or recording may be required to perfect Lender's interest under the Security Documents.

5.5    Binding Obligations.  The Loan Documents, when executed and delivered, will constitute the legal, valid and binding obligations of Borrower and the Guarantors, as the case may be, enforceable against them in accordance with their respective terms.

5.6    Financial Statements.  Borrower and the Guarantors have furnished to Lender a copy of recent financial statements relating to Borrower's and the Guarantors' financial condition and

17

Borrower represents and warrants to Lender that such financial statements present fairly the financial position of Borrower and the Guarantors as of the date thereof.

5.7    No Material Adverse Change. Borrower represents and warrants to Lender that there has been no material adverse change in the condition, financial or otherwise, of Borrower or the Guarantors since the date of the financial statements described in Section 5.6; since that date, neither Borrower nor the Guarantors have entered into any material transaction not disclosed in such financial statements; neither Borrower nor the Guarantors have any material liabilities or contingent liabilities not reflected or disclosed in such financial statements; and there are no material mortgages, deeds of trust, pledges, liens, security interests, claims, charges, rights of others or encumbrances (including liens or retained security titles of conditional vendors) of any nature whatsoever on any property of Borrower or the Guarantors, and no material indebtedness, not disclosed in such financial statements.

5.8    Tax Liability. Borrower and the Guarantors have filed all tax returns (federal, state and local) required to be filed and have paid all taxes shown thereon to be due and all property taxes due, including interest and penalties, if any. Borrower and the Guarantors have established and are maintaining necessary reserves for tax liabilities, if any.

5.9    Compliance with Law. Borrower and the Guarantors are in compliance in all material respects with all Laws and other requirements applicable to their business and have obtained all authorizations, consents, approvals, orders, licenses and exemptions from, and have accomplished all filings, registrations or qualifications with, any Governmental Agency that is necessary for the transaction of their business.

5.10    Compliance with Requirements. Throughout the term of the Loan, Borrower shall comply with all applicable covenants, conditions and restrictions, Laws and other requirements, and all necessary approvals, consents, licenses and permits of any Governmental Agency have been regularly and finally received with respect thereto, including without limitation each of the following as applicable:

       (a)    all zoning, land use and planning requirements;

       (b)    subdivision and/or parcel map requirements, including without limitation requirements of applicable Law regarding subdivisions, parcel maps and the division of land into lots or parcels;

       (c)    environmental requirements and preparation and approval of any necessary environmental impact statements or reports;

       (d)    all requirements regarding the provision of all necessary utilities to the Real Property including the irrevocable allocation to the Property of sufficient domestic and fire protection water service to the Property;

       (e)    all requirements imposed by any public utility in connection with the supply

of utilities to the Property; and

(f)     all requirements imposed in connection with any approval, consent, license or permit issued or required by any Governmental Agency in connection with the Project.

5.11    Litigation.     There are no actions, suits or proceedings pending or, to the best of Borrower's or any Guarantor's knowledge, threatened against or affecting Borrower or the Guarantors or any property of Borrower or the Guarantors before any court or Governmental Agency that would have a material adverse affect on the Property, or Borrower's or the Guarantors' ability to perform their respective obligations under the Loan Documents.

5.12    Title to Property.     Borrower has good and merchantable title to all of its property and assets as disclosed in the financial information provided Lender and at the time of the recordation of the Security Documents shall have good and merchantable title to the Property, and there shall be no mortgages, liens, pledges or other encumbrances of any character on the Property, other than the Security Documents and Permitted Exceptions, without prior consent of Lenders.

5.13    Subsidiaries: Divisions: Joint Ventures.     As of the date hereof, Borrower (a) has no other Subsidiaries; (b) has no divisions; and (c) is not engaged in any joint venture or partnership with any other Person.

5.14    ERISA.     The Borrower, Guarantor and each Subsidiary are in compliance in all Material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Neither a Reportable Event nor a Prohibited Transaction has occurred and is continuing with respect to any Plan; no notice of intent to terminate a Plan has been filed, nor has any Plan been terminated; no circumstances exist which constitute grounds entitling the PBGC to institute proceedings to terminate, or appoint a trustee to administer, a Plan, nor has the PBGC instituted any such proceedings; neither the Borrower nor any Commonly Controlled Entity has completely or partially withdrawn from a Multiemployer Plan; the Borrower and each Commonly Controlled Entity have met their minimum funding requirements under ERISA with respect to all of their Plans and the present value of all vested benefits under each Plan exceeds the fair market value of all Plan assets allocable to such benefits, as determined on the most recent valuation date of the Plan and in accordance with the provisions of ERISA; and neither the Borrower nor any Commonly Controlled Entity has incurred any liability to the PBGC under ERISA.

## SECTION 6: AFFIRMATIVE AND NEGATIVE COVENANTS.

Until payment of the Note in full and performance of all obligations of Borrower under the Loan Documents, unless Lender otherwise consents in writing:

6.1    Completion of Improvements.     Borrower shall proceed with all due diligence to comply with the requirements set forth in Section 5.10 above and to commence and complete construction of the Improvements. Borrower shall complete construction of the Improvements (as Completion of Construction is defined in Section 1.1) whether commenced prior to or after the date hereof within 450 days of commencement of construction.

19

6.2    Conformity with Improvement Plans and Other Requirements.  Borrower agrees to construct the Improvements to conform to the Improvement Plans and all applicable Laws and other requirements, and in a good and workmanlike manner with materials of good quality. If at any time construction of the Improvements does not conform to the foregoing, Borrower shall promptly give notice thereof to Lender, and Lender shall have the right to stop construction and order repair or reconstruction in accordance with the same, and to withhold all further Disbursements until construction is in satisfactory compliance therewith.  Upon notice from Lender to Borrower, or Borrower's discovery irrespective of such notice, that construction of the Improvements does not conform to the Improvement Plans or to all applicable Laws or other requirements, or is not in a good and workmanlike manner with materials of good quality, Borrower shall commence correcting the deviation as soon as practical and in any event within fifteen (15) calendar days after such notice or discovery. Borrower shall prosecute such work diligently to completion, which in no event shall be later than forty-five (45) calendar days after such notice or discovery.  If Lender determines that the corrective work is not proceeding satisfactorily, Lender may, upon not less than fifteen (15) calendar days' notice to Borrower, take over such corrective work itself and prosecute it to completion at Borrower's expense.

6.3    Encroachments. Borrower agrees that the Improvements shall be constructed entirely on the Property and will not encroach upon or overhang any boundary, easement, right-of-way, or the land of others.

6.4    Compliance with Requirements.  Borrower shall comply with all conditions, covenants, restrictions, leases, easements, reservations, rights and rights-of-way and all applicable Laws and other requirements relating to the Property and the Project, and obtain all necessary approvals, consents, licenses and permits of any Governmental Agency, including without limitation those set forth in Section 5.10.

6.5    Completion of Offsite Improvements. Borrower represents and agrees that all streets and offsite improvements adjacent to and serving the Property have been or shall be completed, and all utility services necessary for construction of the Improvements and the full utilization of the Property for its intended purpose, including water, sewer, gas, electric, and telephone, have been or shall be completed and are available to the perimeter of the Property.

6.6    Change Orders.  All Change Orders:

(a)    shall be in writing, numbered in sequence, and signed by Borrower;

(b)    shall be certified by Borrower and/or the Contractor to comply with all applicable Laws and other requirements;

(c)    shall contain an estimate by Borrower of the increase or decrease in Project Costs that would result from the change (or, if the Change Order involves both changes increasing and decreasing estimated Project Costs, both the amount of the increase and the decrease shall be stated), as well as the aggregate amount of changes in estimated Project Costs, both increases and decreases, previously made;

20

(d)     shall be submitted to Lender prior to the proposed effectiveness thereof if Lender shall at any time in the future request that Change Orders be submitted to Lender in advance;

(e)     shall be subject to the prior written approval of Lender where (i) the increase or decrease in any item of Project Cost set forth in the Approved Budgets that each change or related change would cause equals at least the sum of $10,000, or (ii) Change Orders not previously approved involve an aggregate amount, including both increases and decreases, of over $30,000; and

(f)     both Borrower and Contractor certify the aggregate amount, including both increases and decreases, of all changes in Project Costs reflected in Change Orders for which Lender's written approval has not been obtained or has not been required hereunder.

If any Change Order requires Lender's approval pursuant to subsection (e) of this section and involves a net increase in estimated Project Costs, Lender shall have no obligation to make any further Disbursements until Borrower furnishes to Lender evidence, in form and substance satisfactory to Lender, that funds are available in the Approved Budgets or as a result of payment by Borrower from Borrower's own funds of Project Costs thereafter accruing in the total amount of such net increase.

6.7     Deficiency in Proceeds; Overruns.

(a)     Borrower agrees to promptly notify Lender of any fact or circumstance that may render the Approved Budgets inaccurate with respect to the Project Costs shown thereon.

(b)     If at any time (including, without limitation, any time after the occurrence and during the continuance of any Event of Default) Lender determines, in its discretion, that any Project Costs have exceeded or may exceed the amounts budgeted for such Project Costs in the Approved Budgets, or that the Undisbursed Construction Funds are or may be insufficient to pay for the costs of completion of the Project and other costs and expenses, then Lender may, at its option, terminate further Disbursements until Borrower pays from its own funds Project Costs then unpaid or thereafter accruing in an amount deemed necessary by Lender, and furnishes to Lender evidence, in form and substance satisfactory to Lender, of such payment.  Borrower shall, upon demand by Lender, deposit such amount into an account with Lender, in which case Lender shall disburse such amount prior to the disbursement of any remaining proceeds of the Loan.

(c)     In the event that, for any reason, the Actual Line Item Cost for any line item in the Approved Budgets exceeds the Approved Line Item Cost for that line item, Borrower shall, within fourteen (14) days after it learns (or receives notice from Lender) of the overrun, do one or more of the following:

(i)     provide satisfactory evidence to Lender that Borrower has paid the amount of the Excess Cost for such line item from sources other than the Loan;

(ii)     reallocate sufficient funds to such line item from funds (if any) allocated to "Contingency" in the Approved Budgets; provided, however, that Lender must consent

21

to any such reallocation unless the reallocated funds were originally transferred to "Contingency" from cost savings pursuant to Section 3.4; or

(iii)    deposit an amount equal to the Excess Costs for such line item into the Overrun Account, to be disbursed according to Section 4.4.

6.8    Construction Information. Upon demand by Lender, Borrower shall promptly deliver to Lender, not more frequently than monthly, a report in form and substance satisfactory to Lender, which Borrower certifies as correct, setting forth all accrued Project Costs, all Project Costs projected to complete the Project, any variance between actual and projected Project Costs and the amounts set forth in the Approved Budgets, and all changes from the previous report which Borrower knows or reasonably anticipates.

6.9    Subcontractors. Upon demand by Lender, Lender shall have the right to reasonably approve all contractors and subcontractors employed in connection with the construction of the Improvements. All such contractors and subcontractors shall be licensed and bonded as required by the State of Nevada. Borrower shall deliver to Lender correct lists of all such contractors and subcontractors. Borrower shall deliver a copy of each such list to Lender prior to the first Disbursement for any item of Hard Costs. Thereafter, within twenty (20) calendar days of a change to any list, Borrower shall deliver an amended list correctly reflecting such change. Each list shall show the name, address, and telephone number of each such contractor and subcontractor, a general statement of the nature of the work to be done, the labor and materials to be supplied, the names of the materialmen, if known, the approximate dollar value of such labor, work, and materials itemized with respect to each contractor, subcontractor, and materialman, and the unpaid portion and status of such work, or whether such materials have been delivered. Lender and its agents shall have the right, without either the obligation or the duty, to directly contact each contractor, subcontractor, and materialman to verify the facts disclosed by such list, and in so doing Lender or its agent shall not represent itself as the agent of Borrower.

6.10    Permits and Warranties. Borrower shall deliver to Lender originals or copies of (a) all permits and authorizations required in connection with the construction of the Improvements or the occupation or operation of the Property or any part thereof promptly upon issuance, and in any event before any act is done which requires the issuance of the respective permit or authorization, and (b) all warranties and guaranties received from any Person furnishing labor, materials, equipment, fixtures, or furnishings in connection with the Project or the Property.

6.11    Protection Against Liens and Claims.

(a)    Borrower agrees to file or procure the filing of a valid notice of completion of construction of the Improvements, diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of construction on the Improvements for a continuous period of thirty (30) calendar days or more, and take all other reasonable steps to forestall the assertion of claims of liens against the Property or the Project or any part thereof. Borrower irrevocably appoints, designates, and authorizes Lender as its agent, said agency being coupled with an interest, with the authority upon the occurrence and continuance of an Event of

22

Default, but without any obligation, to file for record any notices of completion, cessation of labor, or any similar or other notices that Lender deems necessary or desirable to protect its interests hereunder or under the Loan Documents.

(b)    Upon demand by Lender, Borrower agrees to make such demands or claims as Lender shall specify upon any or all Persons who have furnished labor, service, equipment, or material to the Project. Borrower agrees to pay and obtain valid and enforceable lien releases or waivers from all Persons who have furnished labor, service, equipment, or material to the Project, except that Borrower shall not be required to pay any claim for labor, service, equipment, or material that is being contested in good faith by appropriate proceedings as long as no claim of lien has been recorded or, if a claim of lien has been recorded, within ten (10) calendar days thereafter, Borrower either has obtained and recorded a surety bond, in form and substance satisfactory to Lender, sufficient to release the Property from the lien and from any action brought to foreclose the lien, or has caused the title insurer who has issued the Title Policy to issue, in form and substance satisfactory to Lender, an endorsement to the Title Policy insuring the priority of the lien of the Deed of Trust over the claim of lien.

(c)    In the event that any Person furnishing labor, service, equipment, or material to the Project asserts a claim against Lender or the Undisbursed Construction Funds, Borrower shall, upon demand by Lender, take such action as Lender may require to release Lender and the Undisbursed Construction Funds from any obligation or liability with respect to such claim, including, without limitation, (i) if the claim is being contested in good faith by appropriate proceedings, obtaining a bond or other security, in form and substance satisfactory to Lender, or (ii) payment of such claim. If Borrower fails to take such action, Lender may, in its sole discretion, file an interpleader action requiring all claimants to interplead and litigate their respective claims, and in any such action Lender shall be released and discharged from all obligations with respect to any funds deposited in court, and Lender's costs and expenses, including without limitation actual attorney's fees, shall be paid from such funds or from any other Undisbursed Construction Funds. Any such funds deposited in court and all costs and expenses of Lender in connection therewith shall constitute Disbursements under the Note.

6.12    Sale or Other Encumbrances. Borrower specifically agrees that:

(a)    In order to induce Lender to make the Loan, Borrower agrees that if Borrower shall sell, assign, transfer, convey, pledge, hypothecate, mortgage or encumber with financing other than that secured hereby, or otherwise alienate, whether voluntarily or involuntarily or by operation of law, the Property or any part thereof or any interest therein except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare the Note, including the prepayment fee, if applicable, secured hereby and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, (a) any change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) any change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Property or any interest therein to an entity which controls, is controlled by or is

23