George A. Davis                                      **E-Filed on April 23, 2007**
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281
Telephone No.:     (212) 504-6000
Facsimile No.:     (212) 504-6666

Judy G.Z. Liu
Tyson M. Lomazow
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telephone No.:     (212) 310-8000
Facsimile No.:     (212) 310-8007

Peter Bernhard (State Bar No. 734)
Bullivant Houser Bailey PC
3980 Howard Hughes Parkway, Suite 550
Las Vegas, Nevada  89169
Telephone No.     (702) 650-6565
Facsimile No.     (702) 650-2995
E-Mail:           peter.bernhard@bullivant.com

Counsel for Compass Financial Partners LLC

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                        Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                        Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>                                        Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND,<br>LLC,<br>                                        Debtor. | **REPLY OF COMPASS FINANCIAL<br>PARTNERS LLC IN SUPPORT OF<br>MOTION FOR ORDER ENFORCING<br>CONFIRMATION ORDER AND<br>DETERMINING NO SURVIVING<br>SECTION 3 RIGHT EXISTS WITH** |
| In re:<br>USA SECURITIES, LLC,<br>                                        Debtor. | **RESPECT TO THE FIESTA OAK<br>VALLEY LOAN (AFFECTS USA<br>COMMERCIAL MORTGAGE)** |
| Affects:<br>☐  All Debtors<br>☒  USA Commercial Mortgage Company | Date:  April 27, 2007<br>Time: 9:30 a.m. |

NY2:\1750884\05\11$Z_05!.DOC\38011.0003

| | |
|---|---|
| ☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund,<br>LLC<br>☐ USA First Trust Deed Fund, LLC | |

Compass USA SPE LLC, together with its servicer, Compass Financial Partners

LLC (together, "Compass"), the purchaser of substantially all of the assets of USA Capital First

Trust Deed Fund, LLC ("FTDF") and certain assets of USA Commercial Mortgage Company

("USACM"), by and through its counsel, submits this reply in further support of its motion (the

"Compass Motion"), dated March 30, 2007, for an order enforcing paragraph 14 of the Order

Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"),

entered January 8, 2007 (the "Confirmation Order"), and determining no Surviving Section 3

Right (as such term is defined in the Confirmation Order) exists with respect to the loan

commonly referred to as "Fiesta Oak Valley" (the "Loan").

In support hereof, Compass respectfully states as follows:[1]

## PRELIMINARY STATEMENT

1.      As the Court is aware, the Confirmation Order represented the culmination

of months of substantial, contentious negotiations among the Debtors, Compass, the Direct

Lenders Committee, the FTDF Committee, the USACM Committee, and the other constituencies

represented in these highly complex chapter 11 cases.  Debt Acquisition Company of America V

("DACA"), a post-petition investor, is attempting to avail itself of certain provisions of the

Confirmation Order, intended for the benefit of aggrieved pre-petition Direct Lenders, with

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the confirmed Plan or
the Confirmation Order.

ulterior motives aimed at enhancing its own position at the expense of the very same Direct Lenders it claims to speak for.

2.       DACA's recent actions reveal its true intent: to capitalize upon the frustration and fears of Direct Lenders in a calculated effort to acquire title to the Fiesta Oak Valley collateral (the "Collateral") at a substantial discount. By coaxing Direct Lenders to terminate Compass as loan servicer and replace it with its own affiliate, Vindrauga Corporation ("Vindrauga"),[2] DACA is positioning itself to force a foreclosure which will result in its affiliate achieving its self-interested goal of taking title to the Collateral. To orchestrate investor support for its agenda of anointing Vindrauga as loan servicer and divert attention from its own motives, DACA has widely disseminated false propaganda about Compass, made material misrepresentations about Vindrauga's ability to waive fees, and hidden from investors the real truth about its intended course of action if Vindrauga becomes loan servicer: taking overly aggressive and unnecessary steps to initiate a foreclosure proceeding which will result in DACA taking title to the Collateral, but only after investors have paid the price in both delay and legal expenses which will significantly diminish their ultimate recoveries.

3.       Pursuant to paragraph 14 of the Confirmation Order, the effectiveness of DACA's attempted exercise of a Surviving Section 3 Right is stayed, and the relevant Servicing Agreements remain in full force and effect, pending this Court's entry of an Order determining whether such alleged Surviving Section 3 Right has been properly and validly exercised. *See* Confirmation Order at ¶ 14. Fortunately, the Court need not determine whether a Surviving Section 3 Right exists or has been cured by Compass subsequent to the Closing Date because, as

---

[2] DACA and Vindrauga are admittedly "sister companies," as set forth on Vindrauga's website. Vindrauga website, *at* http://www.vindrauga.com/faq.html (last visited April 18, 2007). Further evidencing the fact that DACA and Vindrauga are essentially one and the same, Howard Justus, DACA's Declarant in support of the DACA Objection, is listed as the contact individual on Vindrauga's website. *Id.*

set forth in the Declaration of David Blatt, dated April 23, 2007, Compass is exercising its right

under Section 2(c)(iii) of the Servicing Agreement to pay off certain Direct Lenders such that

Compass will own 51% of the beneficial interests in the Loan. *See* Declaration of David Blatt,

dated April 23, 2007 (the "Blatt Declaration," a copy of which is annexed hereto as Exhibit "A")

at ¶ 25. Accordingly, DACA's attempt to replace Compass with Vindrauga as loan servicer is

ineffectual, as the requisite 51% of Direct Lenders in the Loan no longer support such an action.

## BACKGROUND FACTS

4.      Compass incorporates by reference the facts set forth in the Compass

Motion as if specifically set forth herein.

5.      On April 16, 2007, DACA filed an objection to the Compass Motion (the

"Objection"). In light of the caustic tone of DACA's Objection, the unfounded accusations

against Compass contained therein, and the expansive scope of legal issues raised which are not

currently before the Court, Compass is constrained to provide the Court with an accurate

portrayal of DACA, both in terms of its role in these chapter 11 cases, and misleading

communications it has had with Direct Lenders, undermining the orders of this Court,

deliberately spreading disinformation about Compass, and making material misrepresentations to

induce Direct Lenders to replace Compass with DACA's sister company, Vindrauga, to usurp

without paying a penny the rights for which Compass paid the Debtors' estates millions of

dollars in cash consideration.[3]

---

[3] As the Court is aware, pursuant to the APA, Compass acquired, among other things, the right to act as loan servicer
with respect to a portfolio of approximately 85 loans, as well as, without limitation, Default Rate Interest, Accrued
Servicing Fees, Late Charges, Success Fees, and other fees and sums due the loan servicer under any of the
Servicing Agreements. Significantly, DACA had an opportunity to bid for these Purchased Assets at the Auction,
but chose not to do so.

6.    DACA is an aggressive and opportunistic acquirer of distressed debt which, according to its own website, "purchases claims at a discount in anticipation of receiving a favorable return from the debtor upon its emergence from bankruptcy."  DACA website, *at* http://www.daca4.com/faq.html, a copy of which is annexed to the Blatt Declaration.

7.    DACA acquired most, if not all, of its Direct Lender interests subsequent to the Petition Date. *See* Blatt Declaration at ¶ 19.  DACA now seeks to aggressively pursue for its own purposes remedies carefully crafted in the Plan process in favor of Direct Lenders as if it were *itself* an aggrieved pre-petition investor that suffered inequities of which this Court is well aware at the behest of the Debtors' pre-petition management.  Worse yet, DACA is attempting to "pick and choose" which provisions of the Servicing Agreements and Confirmation Order it agrees to honor (e.g., the right to assert a Surviving Section 3 Right), and which it declares to be unenforceable (e.g., the limit on a replacement servicer's right to waive or subordinate Compass' fees).

8.    Compass is most troubled by misrepresentations DACA has made to Direct Lenders to induce them to replace Compass with Vindrauga despite explicit warnings from Compass as early as January 16, 2007 that such actions directly contradict this Court's Confirmation Order. *See* Blatt Declaration at ¶ 21.  Putting aside for the moment that DACA attempted to terminate Compass on March 2, 2007, a mere two weeks after Compass became loan servicer (without providing Compass a fair opportunity to service the Loan),[4] DACA has repeatedly misrepresented to Direct Lenders that its proposed replacement servicer would have the ability to subordinate, compromise, or waive fees Compass purchased at the Auction.

---

[4] How could DACA or any investor plausibly argue after a mere 15 days that Compass is unfit to act as its loan servicer?

Objection at p. 6-7. These statements by DACA directly contradict paragraph 14 of the

Confirmation Order, which expressly provides:

> [N]either the Direct Lenders nor any replacement servicer selected
> by the Direct Lenders shall have the right or ability to compromise,
> subordinate, or impair, in any respect, any rights, claims or interest
> purchased by Compass from the Estates for default interest,
> accrued servicing fees, late charges, success fees, or other amounts
> under the Loan Servicing Agreements.

Confirmation Order at ¶ 14.

9.       DACA is currently before the Court in pursuit of a single goal: to acquire

the Collateral securing the Fiesta Oak Valley Loan at a discount. This is self-evident from the

admission on Vindrauga's website that "[i]f elected as the new Loan Servicing Agent, we will

initiate foreclosure proceedings." Vindrauga website, *at* http://www.vindrauga.com/faq.html, a

copy of which is annexed to the Blatt Declaration. Despite statements in its solicitation materials

to the contrary, DACA/Vindrauga is not committed to obtaining the maximum possible return

for Direct Lenders, but is rather committed to one course of action-- ***foreclosing upon the***

***Collateral, and taking title to the Collateral for itself***. DACA/Vindrauga will accomplish this

by buying out Direct Lender interests in the Loan following a successful foreclosure. *See*

Objection at p. 6.

10.      DACA/Vindrauga is obviously uninterested in negotiating a consensual

resolution of the Loan—a result which would save the Fiesta Oak Valley investors thousands of

dollars in foreclosure costs and months in delays—because such strategy would not suit its self-

interested goal of acquiring the Collateral at a discount. Furthermore, it is highly suspect

whether Fiesta Oak Valley investors who presumably have relied upon DACA/Vindrauga's

representations are aware that they will not receive a penny until (i) months of protracted

foreclosure proceedings have been successfully concluded, (ii) the investors have been charged

for 100% of the foreclosure costs (attorneys fees, etc.), and (iii) the investors have paid both

DACA's **_and_** Compass' accrued fees (which, contrary to DACA/Vindrauga's promises, they

cannot waive). *See* Blatt Declaration at ¶ 24.

      11.     In ruthless pursuit of its objective of acquiring the Fiesta Oak Valley

lenders' Collateral for itself, DACA has (i) demonstrated a willful disregard for the authority of

this Court by making statements in direct contradiction of its orders, (ii) induced Direct Lenders

to terminate Compass as loan servicer based upon blatant misrepresentations, (iii) spread false

rumors about Compass' intentions and actions which have damaged its reputation in the industry,

and (iv) made false statements which threaten to undermine Compass' entitlement to the

Purchased Assets for which it paid valuable cash consideration that funded distributions to

creditors pursuant to the Plan.

      12.     Having set forth the facts about DACA/Vindrauga and its intentions,

Compass now turns to the sole issue currently before the Court: whether DACA/Vindrauga can

properly replace Compass as loan servicer for the Fiesta Oak Valley Loan.

## THE COMPASS MOTION SHOULD BE GRANTED

      13.     In the Objection, DACA has gone to great lengths to detail the alleged acts

and omissions that it believes warrant Vindrauga's replacement of Compass. Notably, however,

DACA's belated allegations[5] have been rendered completely irrelevant and moot given that

(i) Compass has cured any pre-petition breach committed by USACM by virtue of its actions in

---

[5] As of the date of the filing of the Compass Motion, DACA had provided merely **_one sentence_** in support of its termination of Compass for USACM's alleged "failure to act," falling far short of establishing the existence of a Surviving Section 3 Right. *See* Letter from Dean T. Kirby, Esq. to George A. Davis, Esq., dated March 2, 2007 (the "Kirby Letter") (providing as the sole support for the exercise of a Surviving Section 3 Right that "USA violated the Loan Servicing Agreement"). Compass finds it quite astonishing that DACA would accuse it of "sandbagging" DACA into filing a lengthy pleading establishing grounds for USACM's breach of the Servicing Agreement when DACA itself provided Compass with a **_six word_** explanation for the grounds for its breach in the Kirby Letter.

servicing the Loan subsequent to the Closing Date, and (ii) the requisite 51% of Direct Lenders in the Loan do not desire to replace Compass with Vindrauga as servicer.

<u>Compass Has Cured Any Pre-Petition Breach By USACM</u>

14.    As the Court is aware, paragraph 14 of the Confirmation Order preserved "any right that existed and was matured and exercisable, as of the Petition Date, to effect a substitution of USACM as loan servicer under Section 3 of any Servicing Agreement, *as well as any defenses of the loan servicer thereto*." Confirmation Order at ¶ 14 (emphasis provided). Accordingly, Compass submits that even if a Surviving Section 3 Right did exist as of the Petition Date, such right has been abrogated by virtue of Compass' actions in cure of any alleged breach of the Servicing Agreement.

15.    As set forth in the Blatt Declaration, immediately upon replacing USACM as servicer on February 16, 2007, Compass has taken swift, prudent action on behalf of the Direct Lenders to initiate dialogue with borrowers and guarantors to determine the optimal strategy for maximizing recovery for the benefit of investors in an efficient, cost-effective, and timely manner. Blatt Declaration at ¶ 11. Compass well knows the appropriate time to initiate foreclosure actions where necessary, having already done so on several occasions in its initial weeks as servicer. However, due to the substantial costs to investors, uncertainties, and delays associated with foreclosure proceedings, Compass deemed it prudent to pursue negotiated settlements with borrowers first prior to immediately proceeding to foreclosure (a strategy DACA/Vindrauga has admitted it would adopt). Compass' strategy has resulted in full payoffs to investors on a growing list of loans in mere weeks since the Closing Date.

16.    Contrary to DACA's allegations, Compass has more than adequately serviced the Loan in the few weeks it has acted as servicer. Within days of the Closing Date,

Compass had opened an office in Las Vegas, Nevada, hired numerous qualified professionals with a broad range of experience in the loan servicing industry, and immediately traveled to Southern California to meet with the Borrower and examine the Collateral.

17.    In the following weeks, Compass participated in extensive negotiations with the Borrower which have resulted in several proposals that would satisfy the obligations under the Loan in full and thus avoid the substantial costs and delay associated with a foreclosure proceeding. It is important to note that Compass has not ruled out commencing a foreclosure action; to the contrary, Compass has already retained counsel in California in the event Compass determines that it is the best alternative. However, in light of the aforementioned costs and delay of foreclosure, Compass views foreclosure as a last resort, and is taking every possible step to work towards a consensual resolution of the Loan resulting in full payment for the Direct Lenders. Based upon the success of its negotiations to date, Compass has every reason to believe a non-foreclosure resolution will be finalized in a matter of weeks.

18.    In the Objection, DACA has suggested that Compass has "failed to act" by not moving to foreclose upon the Collateral in the face of an injunction entered by the United States District Court for the Central District of California (the "District Court") in the receivership proceeding against USA Investment Partners, LLC ("USAIP"), one of the members of the Borrower (the "Receivership"). Objection at p. 5. DACA's suggestion that such an act would be an appropriate and necessary course of action once again demonstrates DACA's disregard for federal court orders,[6] and reveals its willingness to saddle the Direct Lenders with

---

[6] Whereas DACA concludes that the District Court's preliminary injunction (the "Injunction, a copy of which is annexed hereto as Exhibit "B") in the Receivership proceeding "does not contain any provisions which could reasonably be interpreted as enjoining the foreclosure of the Fiesta Oak Valley Trust Deed," it overlooks Paragraph O of the Injunction, which specifically covers real estate projects "owned by entities in which USAIP owns membership interests." See Objection, p.5; Injunction Paragraph O; see also Paragraphs M, N and R of the Injunction (discussing projects owned by entities in which USAIP owns a membership interest). Similarly, DACA's suggestion that Compass seek relief from the Injunction ignores the posture of the current proceedings in both

unwarranted foreclosure costs and months of delay to meet its self-serving goal of emerging with the Collateral at a discount. Contrary to DACA's assertions, Compass is carefully monitoring the events in both the Receivership and the involuntary chapter 11 case commenced against USAIP in this Court, is in regular communication with counsel in such proceedings, and will take appropriate action on behalf of the Direct Lenders as and when appropriate. Blatt Declaration at ¶ 17.

<u>51% of the Direct Lenders in the Loan Do Not Support the Termination of Compass as Servicer</u>

19.    Pursuant to the Servicing Agreement, 51% of the holders of the beneficial interests of record in the Loan may take actions under Section 3. Servicing Agreement § 3. The Court should grant the Compass Motion and deny the attempted exercise of a Surviving Section 3 Right because, as of the date of the hearing on the Compass Motion, 51% of the Direct Lenders in the Loan no longer support a replacement of Compass with Vindrauga.

20.    As set forth in the Blatt Declaration, as of the date hereof, Compass is exercising its right under Section 2(c)(iii) of the Servicing Agreement to pay off certain Direct Lenders under the Loan (the "<u>Call Right</u>").[7] Blatt Declaration at ¶ 25. Section 2(c)(iii) provides:

> In its sole discretion, [Compass] may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to [Compass] an assignment, in a form acceptable to [Compass], of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

---

forums, as the District Court has entered an order staying the Receivership, removing the matter from its active list of pending cases and vacating all scheduled hearings in such case pending this Court's determination as to whether to enter an order for relief in the USAIP involuntary chapter 11 case. If an order for relief is entered, Compass' counsel has been advised that the chapter 11 trustee seek to have the Injunction dissolved.

[7] Under Section 2(c)(iii) of the Servicing Agreement, Compass does not require a license to exercise its contractual right to acquire beneficial interests.

Servicing Agreement § 2(c)(iii).  Compass' Call Right under Section 2(c)(iii) was expressly

preserved in paragraph 14 of the Confirmation Order, which provides "the post-Closing survival

of a Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass

under the Loan Servicing Agreements, including, without limitation, its rights under Section

2(c)(iii) of the Loan Servicing Agreement."  Confirmation Order at ¶ 14.  As Compass will own

over 51% of the beneficial interests in the Loan, it is no longer possible for the requisite 51% of

Direct Lenders in the Loan to replace Compass as servicer.  Accordingly, the Court should grant

the Compass Motion in accordance with paragraph 14 of the Confirmation Order because no

Surviving Section 3 Right can be properly exercised.

## CONCLUSION

21.    Compass respectfully requests an order enforcing the Confirmation Order

and determining that no Surviving Section 3 Right exists with respect to the Fiesta Oak Valley

Loan, and granting Compass such other and further relief as is just.

George A. Davis
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281
(212) 504-6000 (tel)
(212) 504-6666 (facsimile)

Judy G.Z. Liu
Tyson M. Lomazow
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (tel)
(212) 310-8007 (facsimile)

and

Peter Bernhard (State Bar No. 734)
Bullivant Houser Bailey PC
3980 Howard Hughes Parkway,
Suite 550
Las Vegas, Nevada  89169
peter.bernhard@bullivant.com
(702) 650-6565 (tel)
(702) 650-2995 (facsimile)

Counsel for Compass Financial
Partners LLC