Annette W. Jarvis, Utah Bar No. 1649
Steven C. Strong, Utah Bar No. 6340
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

Attorneys for USA Commercial Mortgage Company

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:  USA COMMERCIAL MORTGAGE COMPANY,<br><div align="right">Debtor.</div> | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><div align="right">Debtor.</div> | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><div align="right">Debtor.</div> | **DECLARATION OF STEVEN C. STRONG REGARDING MOTION TO SELL ALL COMMERCIAL MORTGAGE ASSETS OF DEBTOR USA COMMERCIAL MORTGAGE COMPANY IN THE PLACER VINEYARDS LOANS** |
| In re:<br>USA SECURITIES, LLC,<br><div align="right">Debtor.</div> | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date of Hearing:  N/A<br>Time of Hearing:  N/A |

I, Steven C. Strong, hereby declare, verify and state as follows:

1. I am a shareholder of Ray Quinney & Nebeker P.C., counsel to USA Commercial Mortgage Company ("USACM") and certain related debtors in the above-captioned Chapter 11 bankruptcy cases.

2. I make this Declaration in order to address certain inaccurate statements made by Sierra Liquidity Fund, LLC ("Sierra") and its employee, Scott D. August, in connection with USACM's *Motion To Sell Under Section 363 All Commercial Mortgage Assets of Debtor USA Commercial Mortgage Company in the Placer Vineyards Loans to Compass USA SPE, LLC* (the "Motion") filed March 9, 2007 [Docket No. 3037]. Although USACM now has withdrawn the Motion (see Notice of Withdrawal filed April 11, 2007 [Docket No. 3424]), I believe it is important to correct the record regarding the inaccurate statements Sierra and August have made that they allegedly derived from communications between me and Sierra.

3. In the *Response to Clarify Terms and Conditions of [Sierra's] Bid for Placer Vineyards Commercial Mortgage Assets and Term Sheet* ("Sierra's Response"), which was filed by Sierra on April 2, 2007 [Docket No. 3326] in connection with the Motion, Sierra asserted as follows:

> Sierra's premise regarding *Compass' intended mal or misfeasance* is founded on discussions that Sierra has had with former employees of USACM and Mesirow Financial who are now employed by Compass (Mark Olson and James Reed), conversations with professionals at Mesirow Financial (Robert Koe) and *Ray Quinney & Nebeker P.C. (Steve Strong)*, conversations the Lender Protection Group has had with Compass, and the Compass Press Release dated February 16th, 2007 whereby Compass stated that the actual value of the assets purchased from USACM and the USA First Trust Deed Fund, LLC are worth more than $150 million (See Exhibit A).

Sierra's Response at 4 (emphasis added). I am concerned that this statement was intended by Sierra to create the false impression that I had discussions with someone from Sierra "regarding Compass' intended mal or misfeasance." I have no reason to believe that Compass has engaged

2

or will engage in any "mal or misfeasance" in servicing the loans formerly serviced by USACM, and I certainly have never communicated to any representative of Sierra that I held any such belief.

4. Even more troubling to me is the false statement contained in the *Declaration of Scott D. August, CFA of Sierra Liquidity Fund, LLC's Response* ("Scott August Declaration") filed by Sierra on April 2, 2007 [Docket No. 3328]. Mr. August makes the follow statement, under oath, in his Declaration:

> Sierra has had conversations with each of the following individuals *who have verbally confirmed Compass' position regarding Compass' alleged priority of default interest and late fees*:
>
> · Mark Olson – former Chief Operating Officer at USA Commercial Mortgage Company, now employed by Compass Financial Partners
>
> · James Reed – formerly employed by Mesirow Financial, now employed by Compass Financial Partners
>
> · Robert Koe – currently employed by Mesirow Financial. To Mr. Koe's credit he stated to Sierra that he believes he was fooled by Compass and is shocked that they are trying to assert a senior right to default interest and late fees.
>
> · *Steve Strong – currently employed by Ray Quinney & Nebeker P.C. counsel to USACM and affiliated Debtors.*
>
> . . .

Scott August Declaration, ¶ 21 (emphasis added). I do not know what Compass's "position" is regarding default interest and late fees owed on the loans Compass is now servicing that formerly were serviced by USACM, and I certainly have had no discussions with Mr. August or anyone else from Sierra in which I "confirmed Compass' position regarding Compass' alleged priority of default interest and late fees." I did have a conversation with Robert Coldren, counsel for Sierra, on February 14, 2007, regarding several questions that Sierra had raised regarding the bankruptcy case. On February 15, 2007, Mr. Coldren sent me an e-mail message attempting to recharacterize the conversation we had a day earlier. I responded by e-mail to Mr.

Coldren the next day, on February 16, 2007, correcting his inaccurate February 15 e-mail regarding what I had communicated to him in our February 14 conversation. A true and correct copy of the e-mail exchange between me and Mr. Coldren on February 15 and 16, 2007, is attached hereto as <u>Exhibit 1</u>. As noted in my February 16 e-mail, "I did not tell [Mr. Coldren] what position Compass is taking on the default interest question [he] raised, because I did not and do not know what position they are taking."

5.  I declare under penalty of perjury that the foregoing statements are true and correct according to my best knowledge, information and belief.

Executed this 19th day of April, 2007.

_____
Steven C. Strong

922570v1

# EXHIBIT 1

## Steven Strong

**From:** Steven Strong
**Sent:** Friday, February 16, 2007 10:21 AM
**To:** Robert Coldren
**Subject:** RE: 37966.001 Sierra Liquidity Fund, LLC/USA

Robert,

Your message does not accurately describe the conversation we had. I did not tell you what position Compass is taking on the default interest question you raised, because I did not and do not know what position they are taking. As to whether USACM is required to take a position, I explained to you that USACM's position is that the standard USACM Loan Servicing Agreement language says what it says, and your client is as able to interpret the relevant provisions as we are. This is what Judge Riegle of the Bankruptcy Court has said repeatedly, on the record, in response to attempts by various counsel for various Direct Lenders to get her to give an advisory ruling on the language of the LSAs.

Further, I did not say that there was a motion on default interest that has been taken off calendar. What I did say was that USACM filed a motion requesting the Court to approve certain loan assignment procedures, including the netting of amounts owed to Direct Lenders accross the entire portfolio of loans in which they had an interest, and that the motion is no longer being pursued at this time because the confirmed Plan expressly allows the servicer to continue the "netting" process that the Judge had approved on an interim basis during the Chapter 11 case. I don't believe there has been any motion on the default interest question you raised.

As I indicated to you, the loan servicing agreement you proposed is not acceptable to USACM. USACM has a standard form LSA that it has used for nearly all, if not all, Direct Lenders, and it is not at liberty to vary from its standard form agreement with which the Bankruptcy Court, the four official committees, and all other major constituencies in this case are very familiar just because Sierra has concerns about particular provisions in the standard LSA.

I would be happy to discuss this further with you next week, or to let you know whether there is someone at Compass who could discuss these issues with you (assuming that the sale to Compass has closed by then).

Thanks.

Steve Strong
RAY QUINNEY & NEBEKER P.C.

---

**From:** Robert Coldren [mailto:rcoldren@hkclaw.com]
**Sent:** Thu 2/15/2007 2:57 PM
**To:** Steven Strong
**Subject:** 37966.001 Sierra Liquidity Fund, LLC/USA

Dear Mr. Strong:

Thank you for taking the time to speak with me yesterday.

My client would like a written answer from your client respecting whether or not, in the event of foreclosure, the existing servicing agreement (to the extent we are bound to one), and the proposed servicing agreement (which you have recently forwarded) would allow the servicer to retain from the foreclosure proceeds an amount equal to the spread between the default interest rate and the standard of interest rate. We also continue to wish to have the same statement of position from Compass, the proposed buyer.

4/12/2007

I appreciate you indicating that Compass has taken the position that it believes it is entitled to "default interest" from foreclosure proceeds. As to USA, I believe it is your current position that USA is not required to take a position, since it is selling the loans. I point out to you that USA is retaining the servicing on some of the loans, and, while I believe you failed to clearly delineate USA's position with respect to default interest, certainly I think it is fair to say that USA is heavily "leaning" toward taking that position. For example, you indicated that the motion that had been pending on the issue of default interest had been taken off calendar, in some significant measure because you felt that the issue had already been clarified through other proceedings.

As I mentioned to you during our telephone conversation, my client, Sierra, is the purchaser of a number of direct lender interest, and has no interest in becoming involved in protracted litigation. We simply want a fair servicing agreement, and we want to know how we will be treated in the event of foreclosure with respect to default interest. USA has indicated that it will not even consider any form of loan service agreement other than the form that it has recently circulated to my client, and will not entertain modifications to same. USA has also, with respect to the new proposed servicing agreement, refused to indicate how it intended the question of default interest upon foreclosure to be handled.

We urge you to reconsider your position, and to sit down with my client (and or counsel if you insist) and work out a fair servicing agreement, and clarify the terms of the contractual and agency relationship.

Please do not hesitate to contact the undersigned should you have any questions.

Very truly yours,
Robert S. Coldren
Hart, King & Coldren, a PLC
200 Sandpointe, 4th Floor
Santa Ana, CA 92707
rcoldren@hkclaw.com
www.hkclaw.com
Bus: (714) 432-8700
Fax: (714) 546-7457

This message is intended for the person to whom it was addressed. If you have received this message in error please return it to sender. In addition, please beware that this message is from an employee of the law firm of Hart King & Coldren ("the Firm") sent using the Firm's e-mail system and computer equipment. You are hereby advised that all such e-mail belong to the Firm and that the Firm's e-mail and internet policy states that any electronic mail being received from or sent to any employee of the Firm using the Firm's e-mail system may be monitored by someone other than the recipient and that each employee of the Firm has acknowledged a "no confidentiality and privacy" waiver for such e-mail in this regard.

4/12/2007