Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: starra@gtlaw.com

Ronald D. Green
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: greenr@gtlaw.com

Matthew T. Gensburg
Nancy A. Peterman
Sherri Morissette
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: gensburgm@gtlaw.com
       petermann@gtlaw.com
       morissettes@gtlaw.com

Attorneys for Mesirow Financial Interim Management, LLC,
the Debtors' Chief Restructuring Officer and Crisis Managers

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**DECLARATION OF ROBERT E. KOE IN SUPPORT OF APPLICATION FOR ENTRY** |

| | |
|---|---|
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                          Debtor.<br><br>In re:<br>USA SECURITIES, LLC,<br>                                          Debtor.<br><br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | OF ORDER (I) FINALLY ALLOWING AND APPROVING ALL COMPENSATION AND EXPENSES INCURRED BY MESIROW FINANCIAL INTERIM MANAGEMENT, LLC IN ITS CAPACITY AS DEBTORS' CRISIS MANAGERS AND CHIEF RESTRUCTURING OFFICERS FOR THE PERIOD APRIL 13, 2006 THROUGH MARCH 12, 2007; (II) ALLOWING AND APPROVING A SUCCESS FEE; (III) AUTHORIZING APPLICATION OF THE RETAINER AGAINST THE ALLOWED FEES AND EXPENSES; AND (IV) AUTHORIZING PAYMENT OF THE BALANCE DUE |

I, Robert E. Koe, hereby declare, verify and state as follows:

1.  I make this Declaration in support of the application (i) finally allowing and approving compensation in the amount of $11,389,203.09 for 27,417.60 hours of services rendered and expenses incurred in the amount of $1,117,168.74 by Mesirow Financial Interim Management ("**MFIM**"), in its capacity as the crisis managers and chief restructuring officers for USA Commercial Mortgage Company ("**USACM**"), USA Capital Realty Advisors, LLC ("**USA Realty**"), USA Capital Diversified Trust Deed Fund, LLC ("**DTDF**"), USA Capital First Trust Deed Fund, LLC ("**FTDF**") and USA Securities, LLC ("**USA Securities**", and collectively with USACM, USA Realty, DTDF and FTDF, the "**Debtors**"), debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), for the time period beginning on April 13, 2006 and ending on March 12, 2007 (the "**Application Period**"); (ii) approving a success fee in the amount of $2,500,000.00; (iii) authorizing application of the $150,000 retainer against finally allowed fees and expenses; and (iv) authorizing payment of $14,856,371.83 (after application of the Retainer and net of voluntary reductions totaling $360,769.91) (the "**Final Application**").

2.  I am a Director at MFIM and have been employed by MFIM since October 23, 2006. Attached as **Exhibit B** to the Final Application is information regarding my qualifications and industry experience.

3.  Unless otherwise defined, any capitalized terms not defined herein have the meaning set forth in the Final Application. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and my knowledge of the Debtors' operations and financial condition.

4.  I have worked on the Debtors' cases since October 24, 2006, and have supervised the management of the Debtors' loan portfolio as described below. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

A.  *Loan Portfolio*

5.  MFIM professionals worked diligently to collect on the outstanding loans in the portfolio. For many of the loans, this collection effort proved to be an arduous task. The difficulties frequently encountered can be explained by the nature of the loans and how they were managed prior to MFIM's retention. Most if not all of the loans were short-term facilities (up to 24 months) and were largely bridge loans or other construction type facilities, in which no payments were due prior to loan maturity (other than, from time to time, interest payments advanced by the Direct Lenders and paid periodically out of escrow). Therefore, the ability to deal proactively with problems in advance of loan maturity did not exist. Further, the loans were higher-risk facilities, reflected by interest rates which ranged between 12% and 18%, the various fees charged on each loan, and the minimal amount of underwriting conducted, as reflected in the lack of due diligence documents in each loan file.

6. These problems were compounded by a lack of a loan servicing or workout group to collect non-performing loans before the arrival of MFIM. Instead, former management simply provided loan extensions to defer collections and/or, alternatively, would pay interest on non-performing loans from other sources. In addition, MFIM discovered that management frequently acquiesced to borrowers' delinquencies in exchange for equity in the project, or for an agreement to pay additional fees. Further, while USACM monitored its loans utilizing Excel spreadsheets which detailed payments made, the data was generated from USACM's iTrack System which, as has been noted in the Final Application, was inaccurate and incomplete. No log book was maintained with respect to calls, inquiries or collection efforts.

7. MFIM reviewed and inventoried each loan file. Documentation reviewed, other than the actual loan agreements, included appraisals, maps, financial information, and projections. MFIM also initiated a process of obtaining new or updated appraisals on all of the collateral. MFIM refined and implemented procedures to ensure that accurate payment records were maintained and otherwise preserved appropriate accounting records on each loan and the sums collected thereon. In addition, MFIM performed certain calculations related to default letters, payoff demands, and other *ad hoc* loan related requests. Until the loans were satisfied, MFIM proceeded diligently to collect all payments due under the terms of the notes. MFIM identified loans with past due payments and/or documentation problems, which often included missing or unexecuted documents. MFIM created, supervised, and implemented a process of establishing a work-out strategy for each loan and MFIM personnel held numerous daily meetings and conference calls to work with borrowers to collect on the portfolio. MFIM reviewed and analyzed settlement proposals and other correspondence received from borrowers and other interested parties. These efforts resulted in substantial collections of principal and

interest for the Direct Lenders, including the Funds, as well as collections of fees owed to USACM.

8.      As these Cases progressed, the loan portfolio grew continually more difficult to collect. MFIM collected many of the higher quality loans in the early stages of these Cases as they matured. Soon after the filing, nearly all of the loans in the portfolio were either past maturity or were not currently paying interest. The loans collected during the Application Period represented many loans that required significant effort as borrowers became more recalcitrant. The impending sales process also increased the difficulty in collections as many borrowers apparently hoped to extract discounts from the successful bidder. Due to the public nature of the auction process, the borrowers were well aware that the successful bidder would be purchasing the assets of FTDF at a discount. Furthermore, many borrowers were under the mistaken impression that USACM actually owned the loans and were selling the entire portfolio at a discount. As MFIM could not accept less than 100% payoffs without the approval of all of the Direct Lenders in the corresponding loan, the relevant Committees, and the Court, many borrowers apparently decided that it was beneficial to delay payments in the hope of extracting discounts from the new loan servicer, who would not be as hindered by the bankruptcy process. The unavailability of debtor-in-possession financing also made it impossible for USACM to foreclose on the delinquent loans due to the lack of cash necessary to fund any carrying costs related to the collateral supporting the loans (nearly all of which were cashflow negative). Because USACM could not foreclose, many borrowers determined that delaying payment until after the auction would not carry much downside risk.

9.      As of March 12, 2007, MFIM collected approximately $280.7 million, consisting of $227.2 million in principal, $46.6 million in current interest, and $6.9 million in fees. Every

loan payoff under MFIM's direction collected the principal and interest owed to the Direct Lenders in full. Loans fully paid off during the Application Period include:

| Loan Name | Transaction Date | Payoff Amount |
|---|---|---|
| 5252 Orange, LLC | 6/9/2006 | $ 3,800,000.00 |
| Ashby Financial $7,200,000 | 9/1/2006 | 7,200,000.00 |
| Boise/Gowen 93 | 9/7/2006 | 4,831,004.82 |
| Cloudbreak LV | 12/21/2006 | 3,800,000.00 |
| Copper Sage Commerce Center, LLC | 6/22/2006 | 176,947.19 |
| Cottonwood Hills, LLC | 10/11/2006 | 4,000,000.00 |
| Del Valle Isleton | 5/23/2006 | 6,520,000.00 |
| Elizabeth May Real Estate | 1/18/2007 | 10,050,000.00 |
| Fiesta Development $6.6 | 12/15/2006 | 6,600,000.00 |
| Fiesta Development McNaughton | 1/12/2007 | 6,000,000.00 |
| Fiesta/Beaumont $2.4m | 7/21/2006 | 2,400,000.00 |
| Franklin - Stratford Investments, LLC | 2/13/2007 | 5,225,000.00 |
| Gateway Stone | 2/28/2007 | 13,185,000.00 |
| Gilroy | 6/30/2006 | 4,950,000.00 |
| Glendale Tower Partners | 8/21/2006 | 6,500,000.00 |
| Golden State Investments II | 6/5/2006 | 2,850,000.00 |
| Goss Road | 1/2/2007 | 1,000,000.00 |
| Hasley Canyon | 11/14/2006 | 11,700,000.00 |
| HFA- North Yonkers | 5/26/2006 | 24,000,000.00 |
| HFA- Riviera 2nd | 5/26/2006 | 8,000,000.00 |
| I-40 Gateway west | 2/14/2007 | 4,530,000.00 |
| I-40 Gateway West, LLC 2nd | 2/14/2007 | 1,065,000.00 |
| Interstate Commerce Center Phase II | 3/6/2007 | 1,856,848.86 |
| J. Jireh's Corporation | 9/6/2006 | 8,825,000.00 |
| Meadow Creek Partners, LLC | 11/8/2006 | 8,250,000.00 |
| Midvale Marketplace, LLC | 7/13/2006 | 4,075,000.00 |
| Opaque/Mt. Edge $7,350,000 | 4/27/2006 | 4,827,970.00 |
| Preserve at Galleria, LLC | 9/27/2006 | 4,430,500.00 |
| Riviera - Homes for America Holdings, L.L.C. | 5/26/2006 | 5,000,000.00 |
| Roam Development Group | 12/19/2006 | 26,566,256.72 |
| Slade Development | 3/8/2007 | 3,525,000.00 |
| Urban Housing Alliance - 435 Lofts | 8/21/2006 | 8,150,000.00 |
| **Total** | | **$213,889,527.59** |

### B.  *Transition to Compass*

10. A critical task performed by MFIM was the management of the closing of the sale transaction and transition of the purchased assets from the Debtors to Compass. I supervised this transition. As part of the transition, MFIM calculated and negotiated the final purchase price and related escrow accounts, transitioned the borrower negotiations to Compass and participated in meetings related to the mortgage license of Compass and related options. MFIM also archived thousands of pages of the Debtors' records in order to ensure that all parties (the USACM Trust, Compass and the post-Effective Date Debtors) retained sufficient records to perform their respective post-closing responsibilities. This transition should allow Compass to efficiently collect the remaining monies owed to the Direct Lenders and allow the USACM Trust to pursue the retained litigation and the collection of the remaining loans.

1 | I declare, under penalty of perjury, that, to the best of my knowledge, information and
2 | belief, that the foregoing is true and correct.

Mesirow Financial Interim Management, LLC

By _____
Robert E. Kbe
Director
Mesirow Financial Interim Management, LLC
321 North Clark Street, 13th Floor
Chicago, IL 60610