Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: starra@gtlaw.com

Ronald D. Green
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: greenr@gtlaw.com

Matthew T. Gensburg
Nancy A. Peterman
Sherri Morissette
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email:   gensburgm@gtlaw.com
         petermann@gtlaw.com
         morissettes@gtlaw.com

Attorneys for Mesirow Financial Interim Management, LLC,
the Debtors' Chief Restructuring Officer and Crisis Managers

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                              Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                              Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                              Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**DECLARATION OF MONTY KEHL IN SUPPORT OF APPLICATION FOR** |

| | |
|---|---|
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor.<br><br>In re:<br>USA SECURITIES, LLC,<br>Debtor.<br><br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **ENTRY OF ORDER (I) FINALLY ALLOWING AND APPROVING ALL COMPENSATION AND EXPENSES INCURRED BY MESIROW FINANCIAL INTERIM MANAGEMENT, LLC IN ITS CAPACITY AS DEBTORS' CRISIS MANAGERS AND CHIEF RESTRUCTURING OFFICERS FOR THE PERIOD APRIL 13, 2006 THROUGH MARCH 12, 2007; (II) ALLOWING AND APPROVING A SUCCESS FEE; (III) AUTHORIZING APPLICATION OF THE RETAINER AGAINST THE ALLOWED FEES AND EXPENSES; AND (IV) AUTHORIZING PAYMENT OF THE BALANCE DUE** |

I, Monty Kehl, hereby declare, verify and state as follows:

1. I make this Declaration in support of the application (i) finally allowing and approving compensation in the amount of $11,389,203.09 for 27,417.60 hours of services rendered and expenses incurred in the amount of $1,117,168.74 by Mesirow Financial Interim Management ("**MFIM**"), in its capacity as the crisis managers and chief restructuring officers for USA Commercial Mortgage Company ("**USACM**"), USA Capital Realty Advisors, LLC ("**USA Realty**"), USA Capital Diversified Trust Deed Fund, LLC ("**DTDF**"), USA Capital First Trust Deed Fund, LLC ("**FTDF**") and USA Securities, LLC ("**USA Securities**", and collectively with USACM, USA Realty, DTDF and FTDF, the "**Debtors**"), debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), for the time period beginning on April 13, 2006 and ending on March 12, 2007[1] (the "**Application Period**"); (ii) approving a success fee in the amount of $2,500,000.00; (iii) authorizing application of the $150,000 retainer against finally allowed fees

---

[1] MFIM has included time spent preparing the Final Application and reviewing final fee applications for other professionals in these Cases incurred after March 12, 2007. MFIM has included $350,000 in estimated fees and expenses related to the Final Application that are expected to be incurred after filing the Final Application in connection with responding to objections, reviewing the Committee professionals' fee applications and preparing for and attending the court hearing on the Final Fee Application. MFIM will file a supplement to the Final Application with detail to support the estimated fees and expenses in advance of the hearing on the Final Application.

and expenses; and (iv) authorizing payment of $14,856,371.83 (after application of the Retainer and net of voluntary reductions totaling $360,769.91) (the "**Final Application**").

2. I am a Managing Director at MFIM. I have been employed at MFIM since September 2004. I worked on the Debtors' engagement from the inception of these Cases to September 9, 2006 and then again from October 23, 2006 through the filing of the Final Application. Attached as **Exhibit B** to the Final Application is information regarding my qualifications and industry experience.

3. Unless otherwise defined, any capitalized terms not defined herein have the meaning set forth in the Final Application. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and my knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. Part I of the Declaration sets forth the relevant facts in support of the Final Application and Part II describes the allocation of fees and expenses to each of the Debtors as set forth in the Final Application.

### I. FINAL APPLICATION

5. In its Final Application, MFIM is seeking (a) final allowance and payment of fees for services rendered by MFIM to the Debtors in the amount of $11,389,203.09 and (b) final allowance and reimbursement of actual and necessary expenses in the amount of $1,117,168.74. MFIM expended a total of 27,417.6 hours during the Application Period at an average blended hourly rate of approximately $415.40. Fees and expenses incurred during the Application Period on behalf of each of the Debtors are outlined in the table below:

|  | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| USA Commercial Mortgage Company | 21,916 | $9,264,912.20 | $880,893.11 | $10,145,805.31 |
| USA Capital Diversified Trust Deed Fund, LLC | 2,427.8 | 1,111,888.10 | 105,716.55 | 1,217,604.65 |
| USA Capital First Trust Deed Fund, LLC | 2,836.1 | 1,286,924.10 | 122,358.70 | 1,409,282.80 |
| USA Capital Realty Advisors, LLC | 112.2 | 40,846.50 | 3,883.62 | 44,730.13 |
| USA Securities, LLC | 125.4 | 45,402.09 | 4,316.76 | 49,718.85 |
| Subtotal | 27,417.6 | $11,749,973.00 | 1,117,168.74 | $12,867,141.74 |
| Less: Voluntary Reduction |  | 360,769.91 | - | 360,769.91 |
| Total | 27,417.6 | $11,389,203.09 | 1,117,168.74 | $12,506,371.83 |

6. Over the Application Period, MFIM has voluntarily reduced the amount of the Final Application by approximately $1.3 million, including the following:

   a. MFIM has applied a voluntary reduction of $360,769.91 to the fees incurred in the Final Application;

   b. MFIM's professionals incurred approximately 2,232 hours of time spent traveling to and from the Debtors' offices in Las Vegas, as well as attending meetings benefiting the Debtors in other locations. In many other bankruptcy cases, time spent on travel is allowed to be billed to at one half (50%) of applicable rates. However, MFIM voluntarily agreed that it would not bill for this travel time. Thus, the Final Application was reduced by approximately $500,000.

   c. Further, MFIM is not requesting reimbursement in the Final Application of fees associated with time spent on the following:

   - Professionals added to the team solely for short-term projects;
   - Any time considered redundant among MFIM professionals excluding meetings;
   - Activities performed by administrative personnel in support of team members; and,

- MFIM internal consultation on case strategies.

As a result, the Final Application was reduced by approximately $300.000 by virtue of the absence of a request from MFIM for reimbursement for time spent on these additional tasks benefiting the Debtors; and

    d.  MFIM also voluntarily reduced its expenses by $160,000.

7. Attached as **Exhibit C** to the Final Application are the names, titles, hourly rates, and a summary of hours charged and the total compensation sought for the professionals whose services are being billed during the Application Period.

8. Attached as **Exhibit D** to the Final Application is a summary schedule of the hours and fees incurred for each category of service during the Application Period.

9. Attached as **Exhibits E1 through E31** to the Final Application are the detailed daily descriptions of services rendered by each professional during the Application Period, including the hours incurred with respect to each task and the resultant fees.

10. MFIM has also attached to the Final Application as **Exhibits F1 through F5** charts detailing the professional fees charged to each Debtor on a category basis, including the tasks performed in each category and the benefits received by the Debtors from those activities.

11. Attached as **Exhibit I** to the Final Application is a summary schedule of actual and necessary expenses of MFIM incurred during the Application Period. Note that the legal fee category includes an estimate of $150,000 for additional fees to respond to objections and participate in the hearing for MFIM's Final Application.

12. Attached as **Exhibit J** to the Final Application is a detailed description of the actual and necessary expenses incurred by MFIM during the Application Period.

13.     If I were called upon to testify, I could competently testify to the tasks performed by MFIM as described below.

A. **Cash Flow Model/Analyses**

14.     When MFIM was appointed, MFIM discovered that the Debtors were operating without a model for forecasting short-term cash flows. Therefore, MFIM constructed a financial model to estimate the Debtors' cash flows on a weekly basis for up to four months into the future. I supervised and was responsible for the development of the financial model and most of the other tasks performed in this category.

15.     To obtain the inputs for this model, MFIM performed the following tasks:

- Researched bank balances to be used as the starting point for the cash flow forecasts;
- Reviewed the Debtors' historical financial records as a basis for projecting operating expenses for the Debtors;
- Analyzed the portfolio of loans serviced by USACM to estimate the amounts of principal, interest and fees to be collected;
- Requested fee budgets from the various professional firms in the Cases to project payments to be made to those firms; and
- Utilized experience from other cases to project other costs of the Debtors' Cases (for example, fees due to the U.S. Trustee).

16.     In preparing the liquidation analysis that ultimately supported the Plan, MFIM developed the "recovery model" that estimated the value of the Debtors' assets in liquidation, including estimated cash receipts from collection of the loan portfolio. MFIM used these estimated collection numbers in the cash flow model. Those fees incurred for developing the recovery model are included in the "Liquidation Analysis" category of the Final Application. The forecasts produced by this model were used to manage the Debtors' cash and as exhibits for motions filed with the Court to use cash collateral.

17.     In addition, MFIM recorded time in this category for weekly meetings with employees of the Debtors to identify those payments to be made in the upcoming week. This

6

activity was critical to ensure that the Debtors would achieve their cash forecasts and maintain liquidity sufficient to continue as going concerns.

18. MFIM's efforts in this category benefited the Debtors by: (a) establishing a framework for forecasting the Debtors' cash flows, (b) increasing the understanding of the Debtors' cash needs, and (c) managing cash disbursements of the Debtors to ensure sufficient liquidity throughout these Cases.

**B.    *Employment/Fee Applications***

19. In order to comply with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines, the Procedures for Interim Compensation and other guidelines governing the payment of professionals in the Cases, MFIM spent significant time in this category. I supervised, performed and was responsible for most of the tasks in this category.

20. At the beginning of these Cases, MFIM prepared retention papers including the affidavit of Tom Allison in support of his appointment as CRO. MFIM also prepared and issued fee statements on a monthly basis. During the Application Period, MFIM prepared and filed the First Interim Fee Application and the Final Application, as well as prepared monthly statements for July, August, September, October, November and December 2006, as well as January, February, and March 2007. Although MFIM prepared a Second Interim Fee Application, that application was not filed in lieu of the Final Application.

21. MFIM held various meetings with the U.S. Trustee and the Committees to resolve the objections to MFIM's retention and its First Interim Fee Application. One of the largest issues concerning fees was the allocation of MFIM's fees among the five Debtors' estates. MFIM spent significant time negotiating the issue of the allocation of professional fees with the Committees.

22. This category includes $656,245 for the activities described above, as well as $150,000 of additional estimated time relating to this Final Application. MFIM has voluntarily reduced its fees in this category by $360,769.91. As a result, MFIM's fee application time is approximately 3% of the requested fees.

**C.   DIP Financing / Cash Collateral**

23. MFIM determined that, in order for the Debtors to continue to operate in chapter 11, an immediate post-petition credit facility was advisable to maintain the Debtors' operations in order to maximize the recoveries for creditors, Direct Lenders and members of the Funds by enabling the estates to foreclose on collateral of delinquent loans and have the necessary funds with which to maintain the properties, as well as to provide a variety of options for reorganizing the Debtors under a plan of reorganization. In addition, certain of the Direct Lenders' loans required additional project funding. I supervised, performed and was responsible for most of the tasks in this category.

24. Accordingly, MFIM used its database of potential lenders to identify sources for postpetition financing for the Debtors. MFIM entered into discussions with approximately nine lenders and eight of those firms signed confidentiality agreements. Due diligence was conducted by these eight firms. MFIM's tasks during due diligence included:

- Providing:
    - descriptions of collateral,
    - loan documentation,
    - borrower payment performance, and
    - appraisals;
- Conducting conference calls and in person meetings to answer questions and provide information; and
- Facilitating meetings between potential lenders and certain of the borrowers.

25. MFIM received several proposals from the lenders. The terms of those proposals were analyzed and further negotiations were conducted with several of the lenders to improve the

terms of their originals proposals. On June 9, 2006, the Debtors filed a motion seeking authorization to obtain interim and final postpetition financing from CapSource. Several objections were filed to the motion. The Court ultimately entered an order denying interim relief requested by the Debtors on July 6, 2006 and the Debtors' withdrew the DIP financing motion on July 21, 2006.

## II. ALLOCATIONS

26. The Final Application includes allocations for certain fees incurred related to activities benefiting several of the Debtors or the Direct Lender Committee. Pursuant to the Plan, fees benefiting the Direct Lender Committee have been charged to USACM. Throughout these Cases, MFIM set-up and diligently utilized a process for identifying and tracking the fees incurred benefiting each of the Debtors. As time incurred benefited a single Debtor, those fees were billed only to the Debtor receiving benefit. For certain fee categories, MFIM's efforts benefited several of the Debtors and in those instances MFIM allocated a portion of fees to each of the Debtors receiving a benefit. For example, MFIM made several presentations to the Committees appointed in the Cases. Time spent in preparation for and during the meetings held for those Committee presentations was allocated equally among the Debtors whose constituencies were represented by the four Committees.

27. Fees and expenses incurred during the Application Period have been assigned to each Debtor utilizing the process previously described. The following allocations were applied to the following categories (the "**Allocations**"):

| Category | Allocation |
|---|---|
| Forensic Loan Accounting | 100% to USACM because these activities were related to the requirements in the LSAs and under Nevada state law (requiring USACM to maintain accurate accounting records) |
| Loan and Financial Accounting Systems | 100% to USACM because these activities were required of USACM as loan services under the LSAs and Nevada law, in certain cases. |
| Loan Portfolio | |

9

| Investor Issues and Requests Valuation Analyses/Appraisals | |
|---|---|
| Financial Analyses | 80% to USACM and 10% to each of the Funds. MFIM allocated the fees in this manner because the majority of the activities in this category related to USACM's role as loan servicer under the LSAs and Nevada law. However, certain activities were necessary for and benefited FTDF and/or DTDF. Therefore, small amounts were allocated to the Funds. |
| Cash Flow Model/Analyses | 50% to USACM, 20% to each of the Funds and 5% to USA Realty and USA Securities. MFIM allocated the fees in this manner because a cash flow forecast was required for each Debtor. The different allocations represent the varying complexities among the Debtors of their cash flow forecasts. |
| Company Administration | 100% to USACM. The activities in this category were primarily related to employee, pension, and related issues, all of which benefited USACM because all company personnel were employees of USACM. |
| Analyzing Restructuring and Sale Options | 40.7% to USACM and FTDF and 18.6% to DTDF. MFIM allocated the fees in this manner because the time generally related to the sale of USACM and FTDF's assets. In addition, MFIM marketed DTDF's assets. The allocations were changed monthly based on the time spent on marketing each Debtor's assets. |
| LSA- Document Review, Extraction and Loan by Loan Classification | 50% to USACM and 50% to FTDF. MFIM allocated the fees in this manner because this project was required by the Stalking Horse Bidder for due diligence related to the sale of the assets of USACM and FTDF. |
| Compass Sub-Servicing | 100% to USACM. MFIM allocated the fees in this manner because the time relates to USACM's Sub-Servicing Agreement with Compass. USACM will be reimbursed for this expenditure by Compass in accordance with the Sub-Servicing Agreement. |
| Transition to Compass | 50% to USACM and 50% to FTDF. MFIM allocated the fees in this manner because this category related to the sale of the assets of USACM and FTDF. |
| Disclosure Statement/Plan of Reorganization | 33.3% to USACM, DTDF and FTDF. MFIM allocated the fees in this manner because these |

| | | |
|---|---|---|
| | | three Debtors were the primary beneficiaries of the successful Disclosure Statement and Plan. |
| | Liquidation Analysis | 80% to USACM and 10% to DTDF and FTDF. MFIM allocated the fees in this manner because the liquidation analyses were necessary to confirm the Plan for these three Debtors. However, most of the time spent in this category related to the analysis of the loan portfolio, for which USACM, as loan servicer, was responsible. |
| | Accounts and Notes Receivable Related Activities | 50% to USACM and 50% to DTDF. MFIM allocated the fees in this manner because the activities in this category related to the pursuit of recoveries on the IP Note and the 10-90 loan, which benefited USACM and DTDF, respectively. |
| | Avoidance Actions/Preference Analysis | 100% to USACM because the preference actions were filed on behalf of this Debtor. |
| | Litigation Matters | 100% to DTDF because all litigation efforts were on behalf of this Debtor. |
| | Committee Requests | 100% to USACM. Time spent responding to requests from the Direct Lender Committee has been charged to USACM pursuant to the Plan. |
| | Committee Meetings Court Hearings/Preparation | 50% to USACM, 25% to DTDF and 25% to FTDF. MFIM allocated the fees in this manner because the meetings and Court hearings benefited the Committees equally. Pursuant to the Plan, amounts associated with the Direct Lender Committee have been charged to USACM. |
| | Employment/Fee Applications | 78.9% to USACM, 9.5% to DTDF, 11% to FTDF, .3% to USA Realty and .4% to USA Securities. MFIM allocated the fees in this manner because the time spent preparing the fee applications and monthly statements is deemed to be proportional to the overall hours expended in the Cases for each Debtor. |
| | Bankruptcy Motions/Filings Bankruptcy Schedules and SOFAs Tax Analysis/Issues Monthly Operating Reports Claims Analysis | MFIM did not allocate fees in these categories, rather fees were allocated to the specific Debtor on a time entry by time entry basis. |
| | DIP Financing/Cash Collateral | 100% to USACM. Time spent in this category allowed USACM to continue as a going concern and loan servicer. |

11

| | |
|---|---|
| Employee Retention and Severance Plan<br>Leases, Executory Contracts and Agreements | 100% to USACM. Time spent in these categories relates to USACM's leases, contracts and agreements and allowed USACM to retain its employees through implementation of an employee retention plan. |
| Case Administration | 50% to USACM, 20% to DTDF and 20% to FTDF. MFIM allocated the fees in this manner based on the relative size and complexity of each Debtor. |
| Transition Issues and Activities | 80% to USACM and 10% to DTDF and FTDF. MFIM allocated the fees in this manner because of the size and complexity of the records and ongoing activities of each Debtor. |

28.     For the Final Application, the above Allocations have been applied to all fees incurred since the Petition Date. The Allocation is not the same allocation as approved by the Court at the hearing on the First Interim Fee Application. The allocations approved by the Court at the hearing on the First Interim Fee Application were temporary allocations agreed to by MFIM and the Committees, with all parties reserving their rights to revisit such allocation. Upon review of the time entries, MFIM believes that the above allocations are appropriate for the reasons described in the Final Application.

29.     MFIM has allocated its fees and expenses based upon whether the time spent benefited a particular Debtor, as described within each of the category descriptions above. As this Court is aware, under the Plan, USACM and FTDF have reached an agreement whereby FTDF has capped their exposure for the fees and expenses of the Debtors' professionals at $125,000 per month through January 31, 2007. As a result, prior to payment of any allowed fees and expenses to Debtors' professionals by USACM and FTDF, this agreement will be implemented.

30.     MFIM has proposed the following allocation for the Success Fee requested by MFIM will be allocated as follows: 80% to USACM, 10% to FTDF and 10% to DTDF. This

allocation is made based on the benefits received by these three Debtors and the relative amounts of fees charged in the Final Application to these specific Debtors.

I declare, under penalty of perjury, that, to the best of my knowledge, information and belief, that the foregoing is true and correct.

Mesirow Financial Interim Management, LLC

By _____
Monty Kehl
Managing Director
Mesirow Financial Interim Management, LLC
321 North Clark Street, 13th Floor
Chicago, IL 60610