Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: starra@gtlaw.com

Ronald D. Green
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: greenr@gtlaw.com

Matthew T. Gensburg
Nancy A. Peterman
Sherri Morissette
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: gensburgm@gtlaw.com
       petermann@gtlaw.com
       morissettes@gtlaw.com

Attorneys for Mesirow Financial Interim Management, LLC,
the Debtors' Chief Restructuring Officer and Crisis Managers

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                    Debtor.<br><br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                    Debtor.<br><br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                    Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>**DECLARATION OF JAMES C. ATKINSON IN SUPPORT OF APPLICATION FOR** |

| | |
|---|---|
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor.<br><br>In re:<br>USA SECURITIES, LLC,<br>Debtor.<br><br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **ENTRY OF ORDER (I) FINALLY ALLOWING AND APPROVING ALL COMPENSATION AND EXPENSES INCURRED BY MESIROW FINANCIAL INTERIM MANAGEMENT, LLC IN ITS CAPACITY AS DEBTORS' CRISIS MANAGERS AND CHIEF RESTRUCTURING OFFICERS FOR THE PERIOD APRIL 13, 2006 THROUGH MARCH 12, 2007; (II) ALLOWING AND APPROVING A SUCCESS FEE; (III) AUTHORIZING APPLICATION OF THE RETAINER AGAINST THE ALLOWED FEES AND EXPENSES; AND (IV) AUTHORIZING PAYMENT OF THE BALANCE DUE** |

I, James C. Atkinson, hereby declare, verify and state as follows:

1. I make this Declaration in support of the application (i) finally allowing and approving compensation in the amount of $11,389,203.09 for 27,417.60 hours of services rendered and expenses incurred in the amount of $1,117,168.74 by Mesirow Financial Interim Management ("**MFIM**"), in its capacity as the crisis managers and chief restructuring officer for USA Commercial Mortgage Company ("**USACM**"), USA Capital Realty Advisors, LLC ("**USA Realty**"), USA Capital Diversified Trust Deed Fund, LLC ("**DTDF**"), USA Capital First Trust Deed Fund, LLC ("**FTDF**") and USA Securities, LLC ("**USA Securities**", and collectively with USACM, USA Realty, DTDF and FTDF, the "**Debtors**"), debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), for the time period beginning on April 13, 2006 and ending on March 12, 2007 (the "**Application Period**"); (ii) approving a success fee in the amount of $2,500,000.00; (iii) authorizing application of the $150,000 retainer against finally allowed fees and expenses; and (iv) authorizing payment of $14,856,371.83 (after application of the Retainer and net of voluntary reductions totaling $360,769.91) (the "**Final Application**").

2. I am a Senior Managing Director at MFIM. I have worked on the Debtors' Cases for the majority of MFIM's engagement and been responsible for the liquidation analyses produced by MFIM. Attached as **Exhibit B** to the Final Application is information regarding my qualifications and industry experience.

3. Unless otherwise defined, any capitalized terms not defined herein have the meaning set forth in the Final Application. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and my opinion based upon my experience and my knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. In connection with the Plan and Disclosure Statement and in accordance with Section 1129(a)(7) of the Bankruptcy Code, MFIM prepared detailed liquidation analyses for each of the Debtors. In order to prepare the liquidation analyses, MFIM created a complex financial model based upon discussions with USACM personnel, review of various collateral and asset appraisals, and the input of MFIM's business judgment. MFIM revised and updated the liquidation analyses for all Disclosure Statements filed with the Court.

5. For the valuation of the loan related assets (principal, interest, fees, etc.), MFIM valued each loan separately and allocated the estimated value among the Debtors and the Direct Lenders based on their respective ownership interests and the "waterfall" provisions, as provided by Debtors' counsel. Although MFIM used the Hilco appraisals as a baseline for the estimated recoveries on the loans it adjusted these valuations for 1) the current status of loan negotiations with borrowers, 2) more recent project information, 3) strength of loan guarantees, and 4) other information MFIM had gained through other work streams.

6. MFIM also investigated and valued the various properties that supported the equity interests pledged by Investment Partners to secure the $58 million note to USACM and the 10-90 loan. Again, MFIM analysts used the Hilco appraisals as a baseline and adjusted them based on more recent and more detailed information.

7. MFIM also prepared detailed estimates of potential claims to be filed against each of the Debtors, including estimates of the various intercompany claims among the Debtors. This information was critical to the formulation and confirmation of the Plan.

8. In addition to fulfilling the requirements of section 1129 of the Bankruptcy Code, the financial model that supported the liquidation analyses had additional uses. For example, one of the main inputs into the 13 week cash flow model and reporting process was the cash receipts forecast that was based upon the liquidation analyses. MFIM also used the model to value and analyze the various bids received on the assets, including a comparison of the Stalking Horse Bid and the revised asset purchase agreement submitted by Compass. Furthermore, the financial model that supported the liquidation analyses became a repository of information that was an integral part of the loan collections and due diligence processes.

9. MFIM's efforts in this regard benefited the Debtors by providing an assessment of the potential recoveries in the liquidation of the Debtors. This assessment was useful for comparison with other alternatives, including the ultimate sale of certain assets to Compass. The liquidation analyses were also required as part of the Disclosure Statement.

I declare, under penalty of perjury, that, to the best of my knowledge, information and belief, that the foregoing is true and correct.

Mesirow Financial Interim Management, LLC

By _____
James C. Atkinson
Senior Managing Director
Mesirow Financial Interim Management, LLC
666 Third Avenue, 21st Floor
New York, NY 10017