ELECTRONICALLY FILED
May 4, 2007

STUTMAN, TREISTER & GLATT, P.C.
FRANK A. MEROLA
(CA State Bar No. 136934)
EVE H. KARASIK
(CA State Bar No. 155356)
ANDREW M. PARLEN
(CA State Bar No. 230429), Members of
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788
Email:        fmerola@stutman.com
              ekarasik@stutman.com
              aparlen@stutman.com

Counsel for the Official Committee Of
Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA
(Nevada State Bar No. 000405)
CANDACE C. CARLYON
(Nevada State Bar No. 002666)
SHLOMO S. SHERMAN
(Nevada State Bar No. 009688)
228 South Fourth Street, First Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email:        jshea@sheacarlyon.com
              ccarlyon@sheacarlyon.com
              ssherman@sheacarlyon.com

LEWIS AND ROCA, LLP
ROB CHARLES
(NV State Bar No. 6593)
SUSAN M. FREEMAN
(AZ State Bar No. 4199)
3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89169
Telephone: (702) 949-8320
Facsimile: (702) 949-8321
Email:        rcharles@lrlaw.com
              sfreeman@lrlaw.com

Counsel for the USACM Liquidating Trust

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | BK-S-06-10725-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | BK-S-06-10726-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10727-LBR<br>Chapter 11 |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | BK-S-06-10728-LBR<br>Chapter 11 |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | BK-S-06-10729-LBR<br>Chapter 11 |

414697v2

1
2
3
4
5

Affects )
☐ All Debtors )
☒ USA Commercial Mortgage Co. )
☐ USA Securities, LLC )
☐ USA Capital Realty Advisors, LLC )
☐ USA Capital Diversified Trust Deed )
☒ USA First Trust Deed Fund, LLC )

Date:  May 31, 2007
Time:  9:30 a.m.

6
7
8

**MOTION FOR ORDER APPROVING STIPULATION BETWEEN THE USACM LIQUIDATING TRUST AND USA CAPITAL FIRST TRUST DEED FUND, LLC ON OVERBID ALLOCATION AND PLAN COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC)**

9
10
11
12
13
14
15
16

    The Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC (the "FTDF Committee") appointed in the above-captioned bankruptcy case of USA Capital First Trust Deed Fund, LLC ("FTDF") and the USACM Liquidating Trust (the "Trust") as successor to USA Commercial Mortgage Company ("USACM") move this Court for an order approving the "Stipulation between USACM Liquidating Trust and USA Capital First Trust Deed Fund, LLC On Overbid Allocation and Plan Compromise" (the "Stipulation") pursuant to Federal Rule of Bankruptcy Procedure 9019(a).  A true and correct copy of the Stipulation is annexed as Exhibt "A" to this Motion.

17
18
19
20
21
22
23
24
25
26
27
28

    As set forth in more detail below, there are numerous intercompany disputes that remain outstanding between USACM and FTDF after Plan confirmation.  These disputes include the allocation of sale proceeds from the sale of certain USACM and FTDF assets to Compass Partners LLC ("Compass"), a purchase price adjustment escrow demanded by Compass, certain Plan Compromises (as defined below) that expired on January 31, 2007, the amount of the asserted FTDF claim against the USACM estate, and FTDF's responsibility for USACM's payment of the expenses incurred by USACM for the claims and noticing agent employed in all of the above-captioned Debtors' chapter 11 cases.  The Trust and the FTDF Committee have resolved completely all of the pending disputes between the USACM and FTDF estates through the Stipulation that the parties seek approval of pursuant to this Motion.  The Trust and the FTDF Committee believe that the Stipulation is a fair resolution of all of their intercompany disputes and will result in a significant saving of litigation expense as well as eliminate the delay in

1  maximizing the recovery to the respective estates.

2          Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), and based on the

3  attached Memorandum of Points and Authorities, the Declarations of Matthew Kvarda and

4  Geoffrey Berman to be filed shortly hereafter in support of this Motion (the "Kvarda

5  Declaration" and the "Berman Declaration"), and the record in the above-captioned cases, the

6  FTDF Committee and the Trust respectfully request that the Court enter its order approving the

7  Stipulation in form and substance substantially similar to the copy attached as Exhibit "A"

8  hereto.

9

10                                 Respectfully submitted:

11

12  Dated: May 4, 2007            _/s/ Eve H. Karasik_____
                                   Frank A. Merola, Esq.
13                                 Eve H. Karasik, Esq.
                                   Andrew M. Parlen, Esq.
14                                 Stutman, Treister & Glatt, P.C.
                                   1901 Avenue of the Stars, 12th Floor
15                                 Los Angeles, CA 90067
16
17                                 and

18                                 Candace C. Carlyon, Esq.
                                   Shlomo Sherman, Esq.
19                                 Shea & Carlyon, Ltd.
                                   228 S. Fourth Street, First Floor
20                                 Las Vegas, NV 89101
21
                                   Counsel to the Official Committee of Equity
22                                 Security Holders of USA Capital First Trust Deed
                                   Fund, LLC
23

24  Dated: May 4, 2007            _/s/ Rob Charles_____
                                   Susan Freeman, Esq.
25                                 Rob Charles, Esq.
                                   Lewis and Roca, LLP
26                                 3993 Howard Hughes Parkway, 6th Floor
                                   Las Vegas, NV 89169
27

28                                 Counsel to the USACM Liquidating Trust

## POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.    GENERAL BACKGROUND**

1.      On April 13, 2005, USACM, USA Securities, LLC, USA Capital Realty Advisors, LLC , USA Capital Diversified Trust Deed Fund, LLC , and FTDF (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**B.    THE COMPASS SALE AND THE PLAN OF REORGANIZATION**

2.      On November 8, 2006, the Court entered its order approving bid procedures (the "Bid Procedures"), scheduling the auction for the sale of certain assets (the "Auction"), and appointing SPCP Group, LLC (the "Stalking Horse Bidder") as the lead bidder (the "Bid Procedures Order"). The Bid Procedures Order contemplated the Sale of certain assets of FTDF and USACM (the "Stalking Horse Assets") to the Stalking Horse Bidder, subject to overbid at the Auction. Upon the bid of Compass, the Trust asserts that additional assets were added to the Auction (together with the Stalking Horse Assets, the "Acquired Assets").

3.      The Auction occurred on December 7, 2006 and Compass was the successful bidder at the Auction. The Auction resulted in total purchase price of $67 million and overbid sale proceeds (net of the break-up fee payable to SPCP Group, LLC) of $9,500,000 (the "Net Overbid Proceeds").

4.      The sale to Compass (the "Compass Sale") was to be approved pursuant to confirmation of the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" (the "Plan"). The Plan was filed on November 15, 2006 and the Bankruptcy Court confirmed the Plan (including approval of the Compass Sale) at confirmation hearings held on December 19 and 20, 2006, and entered its order confirming the Plan (the "Confirmation Order") on January 8, 2007.

5.      Pursuant to the Plan, the Compass Sale closed on February 16, 2007. In connection with the closing, Compass demanded and Debtors agreed to fund an escrow with

$1,250,000 out of the Net Overbid Proceeds for a purchase price adjustment dispute with Compass (the "Compass Escrow" and the "Compass Escrow Dispute"). (An additional escrow from the purchase price was funded but such escrow is unrelated to the Stipulation.)

6.     The Plan became effective on March 12, 2007 (the "Plan Effective Date"). The Trust is the successor to USACM under the Plan with respect to the subject matter of the Stipulation. Pursuant to the Plan, the FTDF Committee remains in existence until certain disputes and appeals of the Confirmation Order are resolved, including the disputes that are the subject of the Stipulation, or the FTDF Committee determines otherwise.

## C.    THE USACM AND FTDF DISPUTES

7.     Pursuant to the Section IV(E)(2) of the Plan, compromises between the USACM and FTDF estates were approved, including the following compromises that expired on January 31, 2006 unless further extended by USACM and FTDF: (i) FTDF's obligation for $125,000 per month for the Debtors' Professionals' fees and costs (the "Professional Fee Cap"), (ii) setting the FTDF servicing fee at 1% for the period of the Petition Date through June 30, 2006 and 2.5% commencing July 1, 2006, (iii) providing that no management fees shall be paid by FTDF for the prepetition or postpetition periods; and (iv) FTDF's payment of its proportionate share of Servicer Advances (as defined in the Plan) incurred prior to the closing of the Compass Sale (subject to certain limitations) (the "Plan Compromises"). The January 31, 2007 deadline on certain of the Plan Compromises has expired. No sums were collected from FTDF for annual loan servicing fees in February 2007 or thereafter.

8.     Section IV(E)(2) of the Plan also sets forth the mechanism for resolution of the determination of the FTDF claim against the USACM estate (the "FTDF Claim"). The USACM Trust and the FTDF Committee dispute the amount of the FTDF Claim.

9.     In addition, Section IV(E)(2)(i) of the Plan further provides for an 85%/15% split of the overbid sale proceeds to FTDF and USACM, respectively, except as otherwise provided for in a stipulation to be entered into between USACM and FTDF and filed under seal (the "Plan Allocation" and the "Overbid Stipulation"). The USACM Trust

1  and FTDF disagree whether the Plan Allocation and the Overbid Stipulation govern the

2  allocation of the Net Overbid Proceeds between FTDF and USACM.

3          10.    BMC was employed as the claims and noticing agent in each of the

4  Debtors' cases. USACM paid all bills of BMC through December, 2006. The USACM Trust

5  asserts that FTDF should pay its allocated share of the expenses of BMC (the "BMC

6  Expenses"), which the FTDF Committee disputes.

7          **D.    THE STIPULATION**

8          11.    The Trust and the FTDF Committee have agreed to resolve all disputes

9  between the USACM and the FTDF estates pursuant to the Stipulation, including the allocation

10  of the proceeds of the Compass Sale. The provisions of the Stipulation are set forth in the

11  attached Exhibit "A" and are summarized as follows:

12          a.    The allocation of the Net Overbid Proceeds shall be 60% for the

13  Trust ($5,700,000) (the "USACM Overbid Allocation") and 40% for FTDF ($3,800,000);

14  however, the USACM Overbid Allocation shall include the Compass Escrow described in

15  Paragraph 11.b below.

16          b.    The Trust shall assume all responsibility for the litigation or

17  settlement of the Compass Escrow Dispute and FTDF shall have no responsibility therefore. The

18  Compass Escrow shall be applied solely to the USACM Overbid Allocation such that FTDF

19  shall receive, in cash, the full 40% of the Net Overbid Proceeds. Further, if funds are released

20  from the Compass Escrow and are not paid over to Compass pursuant to settlement or order of

21  the Bankruptcy Court, such funds shall belong solely to the Trust.

22          c.    The Plan Compromises shall apply through the Plan Effective

23  Date, except as provided in Paragraph 11.d below with respect to the Professional Fee Cap.

24          d.    The Professional Fee Cap shall apply regardless of the amounts

25  allowed by the Bankruptcy Court as final fees and costs for the Debtors' Professionals in these

26  cases, except that FTDF shall be obligated for 50% of the allowed amount of the Debtors'

27  Professionals fees and costs allocated to FTDF in excess of the Professional Fee Cap for

28  February 1, 2007 through the Plan Effective Date. The Debtors' Professionals' invoices for

1   February 2007 total approximately $224,000 and for March 1, 2007 through the Plan Effective
2   Date have not been determined.  The FTDF Committee will advise the Court of the total
3   additional amount of Debtors' Professionals fees and costs to be paid by FTDF for February 2007
4   and March 1, 2007 through the Plan Effective Date no later than at the hearing on approval of the
5   Stipulation.  The FTDF Committee's rights are reserved to object to any of the Debtors'
6   Professionals requested final fees and costs in these cases.

7               e.      FTDF shall pay $43,577.24 to BMC for the services provided by
8   BMC to FTDF for the period of January 1, 2007 through the Plan Effective Date.  FTDF shall
9   pay to the Trust, FTDF's allocated share (as agreed to by the Trust and FTDF or determined by
10  this Court if necessary) of BMC expenses for the period of the Petition Date through December
11  31, 2006.  The Debtors have asserted that the FTDF's allocated share of the BMC expenses
12  should be approximately $251,000 and neither the Trust nor FTDF has confirmed this allocation.
13  The FTDF Committee will advise the Court of the BMC expenses to be paid by FTDF no later
14  than at the hearing on approval of the Stipulation. Any services BMC intends to provide to FTDF
15  after the Plan Effective Date shall be approved by FTDF and the FTDF Committee before such
16  services are provided, and all invoices shall be paid by FTDF only after FTDF and the FTDF
17  Committee both approve such invoices.

18              f.      FTDF shall have a $7.0 million allowed general unsecured claim
19  and beneficial interest in the Trust.

20              g.      On the 11th day after entry of the Order granting the motion
21  seeking approval of this Stipulation, all payments due to the Trust and FTDF under this
22  Stipulation shall be made to those entities, including the allocated amounts of the Net Overbid
23  Proceeds as set forth in Paragraph 11.a hereof.

24          12.     The Stipulation comprises the full and complete settlement of all claims
25  between USACM, the Trust and FTDF, all issues related to the allocation of the proceeds of the
26  Compass sale, and all fees and expenses due to USACM or the Trust by FTDF and due FTDF
27  by USACM or the Trust.

28          13.     The FTDF Committee and the Trust believe that the Stipulation is in the

414697v2

best interests of the FTDF and USACM estates. The Stipulation is an agreement that reflects the terms and spirit of the Plan Compromises that the FTDF and USACM constituencies voted to approve as part of their votes in favor of the Plan. Furthermore, the resolution of the dispute regarding the Net Overbid Proceeds is a fair allocation of the sale proceeds from the Compass Sale. In addition, the estates will save the significant cost and expense of litigating the cost of the matters settled pursuant to the Stipulation. Further, the estates as well as the FTDF members, in particular, will benefit from the receipt of their allocated share of the Net Overbid Proceeds without further delay. Accordingly, the parties believe that the Stipulation is in the best interests of both of their estates.

## II.

### ARGUMENT

After confirmation of a plan of reorganization, it is unclear under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure whether Bankruptcy Court approval of settlements is required, except as provided for in the plan. For purposes of this Motion, the parties assume that the pre-confirmation standard applies. Prior to plan confirmation, the Bankruptcy Court may approve a compromise or settlement between a debtor in possession and another party pursuant to Bankruptcy Rule 9019(a), which provides that:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement.

Fed. R. Bankr. P. 9019(a).

The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. United States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the

settlement was negotiated in good faith and is reasonable, fair, and equitable. <u>In re A & C</u>

<u>Properties,</u> 784 F.2d at 1381.

The Ninth Circuit has identified the following factors for consideration in

determining whether a proposed settlement agreement is reasonable, fair, and equitable:

> (a) The probability of success in the litigation; (b) the difficulties,
> if any, to be encountered in the matter of collection; (c) the
> complexity of the litigation involved, and the expense,
> inconvenience and delay necessarily attending it; (d) the
> paramount interest of the creditors and a proper deference to their
> reasonable views in the premises.

<u>In re A & C Properties,</u> 784 F.2d at 1381.

Consideration of these factors does not require the Court to determine whether the

settlement presented is the best one that could possibly have been achieved. Rather, the Court

need only canvass the issues to determine whether the settlement falls "below the *lowest point in*

*the zone of reasonableness*." <u>Newman v. Stein,</u> 464 F.2d 689, 698 (2d Cir. 1972) (emphasis

added), <u>cert. denied</u> sub nom. <u>Benson v. Newman,</u> 409 U.S. 1039 (1972); <u>see also,</u> <u>Anaconda-</u>

<u>Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.),</u> 762 F.2d 185, 189 (2d Cir. 1985);

<u>Cosoff v. Rodman (In re W.T. Grant Co.),</u> 699 F.2d 599, 608 (2d Cir. 1983), <u>cert. denied,</u> 464

U.S. 822 (1983). Finally, although the Court should give deference to the reasonable views of

creditors, "objections do not rule. It is well established that compromises are favored in

bankruptcy." <u>In re Lee Way Holding Co.,</u> 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). The

settlement now before the Court vastly exceeds the relatively low threshold established by the

case law.

**A.    The Court Should Approve The Stipulation Because It Is Fair,
Reasonable And In The Best Interest Of The Trust And The FTDF.**

**1.    The Probability Of Success In The Litigation.**

There is no guarantee that either the FTDF Committee or the Trust would succeed

if the parties litigated the disputes that are the subject of the Stipulation. Both the Trust and the

FTDF Committee strongly believe that they would be successful in the litigation of the issues in

dispute. By way of example, the FTDF Committee asserts that the Plan Allocation and the

Overbid Stipulation govern the allocation of the overbid proceeds of the Compass Sale such that

1    a significant share of such proceeds should be allocated to the FTDF. The Trust asserts to the

2    contrary and argues that the sale proceeds at issue are not overbid proceeds but rather are

3    proceeds related primarily to the sale of assets of USACM. The parties articulate similar

4    arguments with respect to the other items in dispute. Simply stated, while each party truly

5    believes it will succeed in litigating the issues that comprise the Stipulation, the outcome remains

6    uncertain.

### 2.    The Difficulties To Be Encountered In Collection.

Even if one or the other of the Trust or the FTDF Committee were to be
successful in the Bankruptcy Court, the likelihood of an appeal by the non-prevailing party
would draw out any recovery effort by the parties. Therefore, the real potential for an appeal of
any litigated resolution of the disputes between the Trust and the FTDF Committee would make
the recoveries very difficult and protracted.

### 3.    The Complexity of Litigation and the Expense, Inconvenience and Delay.

The disputes that are settled pursuant to the Stipulation are complex and will
require much time and expense to prosecute. In particular, the dispute regarding the Net Overbid
Proceeds will certainly require significant document and deposition discovery of not only the
parties, but also third parties such as Compass and the other potential buyers that participated at
the Auction. Furthermore, the parties will also engage in time-consuming discovery related to
the FTDF Claim as well as the additional expenses that the Trust asserts the FTDF should be
responsible for under the Plan Compromises. Trials on all of these matters will be costly and
require an inordinate amount of preparation and prosecution time by the parties. This amalgam
of litigation is certain to be extensive, protracted and at a great expense to the Trust and the
FTDF, resulting in a delayed and depleted recovery, no matter which party eventually succeeds
in prosecuting the litigation.

### 4.    The Paramount Interest of the Creditors.

The proposed settlement is in the paramount interest of the creditors of the
USACM, beneficiaries of the Trust, and the equity security holders of the FTDF. The

1    Stipulation resolves all disputes between the parties and will result in immediate meaningful

2    recoveries to both the Trust and the FTDF. There is no question that the settlement is in the best

3    interests of the Trust and the FTDF.

### III.

### CONCLUSION

6    For the reasons and based upon the authorities presented above, the Trust and the

7    FTDF Committee respectfully request that this Court grant the Motion in its entirety and enter an

8    order approving the Stipulation.

9    Respectfully submitted this 4th day of May, 2007.

10

11    /s/  *Eve H. Karasik*
FRANK A. MEROLA (CA State Bar No. 136934),
12    EVE H. KARASIK (CA State Bar No. 155356), and
ANDREW M. PARLEN (CA State Bar No. 230429), Members of
13    STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
14    Los Angeles, CA  90067
Telephone: (310) 228-5600
15

16    and

17    CANDACE C. CARLYON
SHLOMO S. SHERMAN
18    SHEA & CARLYON, LTD.
228 S. Fourth Street, First Floor
19    Las Vegas, NV  89101
Telephone: (702) 471-7432
20

21    Counsel for the Official Committee of Equity Security Holders of
USA Capital First Trust Deed Fund, LLC
22

23

24    /s/  *Rob Charles*
LEWIS AND ROCA, LLP.
25    ROB CHARLES (NV State Bar No. 6593)
SUSAN M. FREEMAN (AZ State Bar No. 4199)
26    3993 Howard Hughes Parkway, 6th Floor
Las Vegas, Nevada 89169
27

28    Counsel for the USACM Liquidating Trust

414697v2                                    11

# EXHIBIT "A"

1  STUTMAN, TREISTER & GLATT, P.C.          SHEA & CARLYON, LTD.
   FRANK A. MEROLA                          JAMES PATRICK SHEA
2  (CA State Bar No. 136934)                (Nevada State Bar No. 000405)
   EVE H. KARASIK                           CANDACE C. CARLYON
3  (CA State Bar No. 155356)                (Nevada State Bar No. 002666)
   ANDREW M. PARLEN                         SHLOMO S. SHERMAN
4  (CA State Bar No. 230429), Members of    (Nevada State Bar No. 009688)
   1901 Avenue of the Stars, 12th Floor     228 South Fourth Street, First Floor
5  Los Angeles, California 90067            Las Vegas, Nevada 89101
   Telephone: (310) 228-5600                Telephone: (702) 471-7432
6  Facsimile: (310) 228-5788                Facsimile: (702) 471-7435
   Email:      fmerola@stutman.com          Email:      jshea@sheacarlyon.com
7              ekarasik@stutman.com                     ccarlyon@sheacarlyon.com
               aparlen@stutman.com                      ssherman@sheacarlyon.com
8  Counsel for the Official Committee Of
9  Equity Security Holders Of USA Capital First Trust Deed Fund, LLC

10              **UNITED STATES BANKRUPTCY COURT**
                      **DISTRICT OF NEVADA**

11  In re:                                     ) BK-S-06-10725-LBR
    USA COMMERCIAL MORTGAGE COMPANY,           ) Chapter 11
12           Debtor.                           )
                                               )
13  In re:                                     ) BK-S-06-10726-LBR
    USA CAPITAL REALTY ADVISORS, LLC,          ) Chapter 11
14           Debtor.                           )
                                               )
15  In re:                                     ) BK-S-06-10727-LBR
    USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, ) Chapter 11
16           Debtor.                           )
                                               )
17  In re:                                     ) BK-S-06-10728-LBR
    USA CAPITAL FIRST TRUST DEED FUND, LLC,    ) Chapter 11
18           Debtor.                           )
                                               )
19  In re:                                     ) BK-S-06-10729-LBR
    USA SECURITIES, LLC,                       ) Chapter 11
    Debtor.                                    )
20  Affects                                    )
    ☐ All Debtors                              )
21  ☒ USA Commercial Mortgage Co.              ) Hearing: May 31, 2007
    ☐ USA Securities, LLC                      ) Time: 9:30 a.m.
22  ☐ USA Capital Realty Advisors, LLC         )
    ☐ USA Capital Diversified Trust Deed       )
23  ☒ USA First Trust Deed Fund, LLC           )

24
25  **STIPULATION BETWEEN USACM LIQUIDATING TRUST AND USA CAPITAL
    FIRST TRUST DEED FUND, LLC ON OVERBID ALLOCATION AND PLAN
26  COMPROMISE (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE
    COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC)**

27
28      The USACM Liquidating Trust ("USACM Trust"), by and through the undersigned

    counsel, and USA Capital First Trust Deed Fund, LLC ("FTDF"), by and through the

414635v2

1  undersigned counsel for the Official Committee of Equity Security Holders of USA Capital First

2  Trust Deed Fund, LLC (the "FTDF Committee"), stipulate:

3  **Background**

4      A       On April 13, 2006, the above-captioned debtors ("Debtors") filed voluntary

5  petitions for relief under chapter 11 of title 11 of the United States Code (the "Petition Date").

6      B.      The "Order (A) Scheduling An Auction For The Sale Of Certain Assets; (B)

7  Appointing SPCP Group, LLC, As Lead Bidder; And (C) Approving Bid Procedures And

8  Protections" (the "Bid Procedures Order") was entered by the Court on November 8, 2006.

9      C.      Pursuant to the Bid Procedures Order, an auction (the "Auction") to identify the

10  purchaser of the assets to be acquired pursuant to the Bid Procedures and the related Asset

11  Purchase Agreement was held on December 7, 2006.

12      D.      Compass Partners LLC ("Compass") was the successful bidder at the Auction

13  which resulted in overbid sale proceeds (net of the break-up fee payable to SPCP Group, LLC)

14  of $9,500,000.00 (the "Net Overbid Proceeds").

15      E.      The Bankruptcy Court confirmed the "Debtors' Third Amended Joint Chapter 11

16  Plan of Reorganization" (the "Plan")[1] at a confirmation hearing held on December 19 and 20,

17  2006, and entered its order confirming the Plan (the "Confirmation Order") on January 8, 2007.

18  The Plan became effective on March 12, 2007 ( the "Plan Effective Date").  The USACM Trust

19  is the successor to USACM with respect to the subject matter of this Stipulation.

20      F.      Pursuant to the Plan, the sale to Compass closed on February 16, 2007 (the

21  "Compass Sale") and an escrow was funded with $1,250,000 related to a purchase price

22  adjustment dispute with Compass out of the Net Overbid Proceeds (the  "Compass Escrow" and

23  the "Compass Escrow Dispute").

24      G.      Pursuant to the Section IV(E)(2) of the Plan, compromises between the USA

25  Commercial Mortgage Company ("USACM") and FTDF estates were approved, including the

26  following compromises that expired on January 31, 2006 unless further extended by USACM

27  ---

28  [1]   Unless otherwise noted, any capitalized term not otherwise defined herein shall have the
meaning ascribed to such term in the Plan.

1 and FTDF: (i) FTDF's obligation for $125,000 per month for the Debtors' Professionals' fees and
2 costs (the "Professional Fee Cap"), (ii) setting the FTDF servicing fee at 1% for the period of the
3 Petition Date through June 30, 2006 and 2.5% commencing July 1, 2006, (iii) providing that no
4 management fees shall be paid by FTDF for the prepetition or postpetition periods; and (iv)
5 FTDF's payment of its proportionate share of Servicer Advances incurred prior to the closing of
6 the Compass Sale (subject to certain limitations) (the "Plan Compromises"). The January 31,
7 2007 deadline on certain of the Plan Compromises has expired. No sums were collected from
8 FTDF for annual loan servicing fees in February 2007 or thereafter.

9      H.     Section IV(E)(2) of the Plan sets forth the mechanism for resolution of the
10 determination of the FTDF claim against the USACM estate (the "FTDF Claim"). The USACM
11 Trust and the FTDF Committee dispute the amount of the FTDF Claim

12      I.     BMC was employed as the claims and noticing agent in the Debtors' cases.
13 USACM paid all bills of BMC through December, 2006. The USACM Trust asserts that FTDF
14 should pay its allocated share of the expenses of BMC (the "BMC Expenses"), which FTDF
15 disputes.

16      J.     Section IV(E)(2)(i) of the Plan further provides for an 85%/15% split of the
17 overbid sale proceeds to FTDF and USACM, respectively, except as otherwise provided for in a
18 stipulation to be entered into between USACM and FTDF and filed under seal (the "Plan
19 Allocation" and the "Overbid Stipulation"). The USACM Trust and FTDF disagree whether the
20 Plan Allocation and the Overbid Stipulation govern the allocation of the Net Overbid Proceeds
21 between FTDF and USACM.

22      K.     The USACM Trust and the FTDF Committee have agreed to resolve all disputes
23 between the USACM and the FTDF estates pursuant to this Stipulation, including the allocation
24 of the proceeds of the Compass Sale.

25     **NOW, THEREFORE,** in consideration of the mutual covenants herein contained and
26 other good and valuable consideration, the receipt and sufficiency of which are hereby
27 acknowledged, the parties agree as follows:

28      1.     The allocation of the Net Overbid Proceeds shall be 60% for the USACM Trust

($5,700,000) (the "USACM Overbid Allocation") and 40% for FTDF ($3,800,000); however, the USACM Overbid Allocation shall include the Compass Escrow described in Paragraph 2 below.

2.    The USACM Trust shall assume all responsibility for the litigation or settlement of the Compass Escrow Dispute and FTDF shall have no responsibility therefore. The Compass Escrow shall be applied solely to the USACM Overbid Allocation such that FTDF shall receive, in cash, the full 40% of the Net Overbid Proceeds. Further, if funds are released from the Compass Escrow and are not paid over to Compass pursuant to settlement or order of the Bankruptcy Court, such funds shall belong solely to the USACM Trust.

3.    The Plan Compromises shall apply through the Plan Effective Date, except as provided in Paragraph 4 below with respect to the Professional Fee Cap.

4.    The Professional Fee Cap shall apply regardless of the amounts allowed by the Bankruptcy Court as final fees and costs for the Debtors' Professionals in these cases, except that FTDF shall be obligated for 50% of the allowed amount of the Debtors' Professionals fees and costs allocated to FTDF in excess of the Professional Fee Cap for February 1, 2007 through the Plan Effective Date. The Debtors' Professionals' invoices for February 2007 total approximately $224,000 and for March 1, 2007 through the Plan Effective Date total approximately [TO BE DETERMINED] such that the additional amount of Debtors' Professional fees and costs to be paid by FTDF for February 2007 and March 1, 2007 through the Plan Effective Date shall be [TO BE DETERMINED]. The FTDF Committee's rights are reserved to object to any of the Debtors' Professionals requested final fees and costs in these cases.

5.    FTDF shall pay $43,577.24 to BMC for the services provided by BMC to FTDF for the period of January 1, 2007 through the Plan Effective Date. FTDF shall pay [TO BE DETERMINED] to the Trust for FTDF's allocated share of BMC expenses for the period of the Petition Date through December 31, 2006. Any services BMC intends to provide to FTDF after the Plan Effective Date shall be approved by FTDF and the FTDF Committee before such services are provided, and all invoices shall be paid by FTDF only after FTDF and the FTDF Committee both approve such invoices.

6.    FTDF shall have a $7.0 million allowed general unsecured claim and beneficial

414635v2                                    4

1    interest in the USACM Trust.

2        7.      On the 11th day after entry of the Order granting the motion seeking approval of

3    this Stipulation, all payments due to the USACM Trust and FTDF under this Stipulation shall be

4    made to those entities, including the allocated amounts of the Net Overbid Proceeds as set forth

5    in Paragraph 1 hereof.

6        8.      This Stipulation comprises the full and complete settlement of all claims between

7    USACM, the USACM Trust and FTDF, all issues related to the allocation of the proceeds of the

8    Compass sale, and all  fees and expenses due to USACM or the USACM Trust by FTDF and due

9    FTDF by USACM or the USACM Trust.

10       9.      This Stipulation is subject to the approval of the Court.

11

12   By: _____        By: _____
     FRANK A. MEROLA (CA State Bar       SUSAN M. FREEMAN
13   No. 136934),                        ROB CHARLES
     EVE H. KARASIK (CA State Bar        LEWIS AND ROCA LLP
14   No. 155356), and                    3993 Howard Hughes Parkway, Suite 600
     ANDREW M. PARLEN (CA State Bar No.  Las Vegas, NV 89169-0961
15   230429), Members of                 Facsimile (702) 949-8321
     STUTMAN, TREISTER & GLATT, P.C.     Telephone (702) 949-8320
16   1901 Avenue of the Stars, 12th Floor
17   Los Angeles, CA  90067              Counsel For USACM Liquidating Trust
     Telephone:  (310) 228-5600
18
19   and
20   CANDACE C. CARLYON
     Shea & Carlyon, Ltd.
21   233 S. Fourth Street, Suite 200
22   Las Vegas, NV  89101
     Telephone:  (702) 471-7432
23
     Counsel For The
24   Official Committee Of Equity Security Holders
     Of USA Capital First Trust Deed Fund, LLC
25
26
27
28

414635v2                              5

1    APPROVED AS TO FORM AND CONTENT:

2

3    By: _____
ANNETTE JARVIS

4    STEVEN STRONG
RAY QUINNEY & NEBEKER P.C.

5    36 South State Street, Suite 1400
Salt Lake City, UT 84111

6    Facsimile (801) 532-1500
Telephone (801) 532-7543

7    ATTORNEYS FOR THE ESTATES OF USA COMMERCIAL MORTGAGE COMPANY

8    AND USA CAPITAL FIRST TRUST DEED FUND, LLC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

414635v2          6