75

B254 (5/92) Subpoena for Rule 2004 Examination

# United States Bankruptcy Court
## SOUTHERN DISTRICT OF NEW YORK

IN RE

USA COMMERCIAL MORTGAGE COMPANY,
USA CAPITAL REALTY ADVISORS, LLC,
USA CAPITAL DIVERSIFIED TRUST DEED FUND LLC,
USA CAPITAL FIRST TRUST DEED FUND LLC,
USA SECURITIES, LLC,

DEBTORS.

AFFECTS: ALL DEBTORS

## SUBPOENA FOR RULE 2004 EXAMINATION

| CASE NOS. | |
|---|---|
| | BK-S-06-10725 LBR |
| | BK-S-06-10726 LBR |
| | BK-S-06-10727 LBR |
| | BK-S-06-10728 LBR |
| | BK-S-06-10729 LBR |

JOINTLY ADMINISTERED UNDER
CASE NO. BK-S-06-10725-LBR

TO:    OppenheimerFunds Distributor, Inc.
       c/o CT Corporation System
       111 Eighth Avenue
       New York, NY 10011

**X** YOU ARE COMMANDED to produce a corporate representative for examination under Federal Rule of Bankruptcy Procedure 2004, pursuant to the attached court order, regarding the following topics at the place, date and time specified below:

### SEE ATTACHED EXHIBIT A FOR TOPICS OF EXAMINATION

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| ESQUIRE DEPOSITION SERVICES 220 W. 42ND STREET, 13TH FLOOR NEW YORK, NEW YORK 10036 | May 23, 2007 at 10:00 A.M. Or such other mutually agreeable date and/or time |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:

### SEE ATTACHED EXHIBIT B FOR DOCUMENTS REQUESTED

| PLACE | DATE |
|---|---|
| ESQUIRE DEPOSITION SERVICES 220 W. 42ND STREET, 13TH FLOOR NEW YORK, NEW YORK 10036 | April 25, 2007 at 10:00 A.M. Or such other mutually agreeable date and/or time |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Special Litigation Counsel for the USACM Liquidating Trust | April 13, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

ERIC D. MADDEN
DIAMOND MCCARTHY LLP
1201 ELM STREET, 34TH FLOOR
DALLAS, TEXAS 75270
(214) 389-5306

{00365037; }

## PROOF OF SERVICE

| DATE: | PLACE: |
|---|---|

SERVED:

| SERVED ON (PRINT NAME) | |
|---|---|
| | MANNER OF SERVICE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
Date

_____
Signature of Server

_____
Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P :

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but ot limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and pying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order by the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any persons who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance.
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or,

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

The topics of examination under Federal Rule of Bankruptcy Procedure 2004 shall include:

(1)     Your policies, if any, regarding document destruction and retention, and how those policies were applied to the documents requested in EXHIBIT B (the "documents");

(2)     How and where the documents are kept and filed;

(3)     Whether the documents are kept in the ordinary and usual course of business;

(4)     How the documents came to be created, including the identities (specifically or by category) of the persons creating them;

(5)     Whether the persons creating the documents had personal knowledge of the matters stated in the documents, or created from them information transmitted by someone with such knowledge;

(6)     Whether it was regular practice to create the documents (or keep a file of the documents, if created by others);

(7)     The efforts made to locate and produce the documents;

(8)     The identities of all persons assisting with the search for responsive documents;

(9)     Whether any responsive documents were withheld on any ground;

(10)    Whether any responsive documents have been destroyed, and if so, when and for what reason or pursuant to what policy or instruction;

(11)    Whether any documents that should have been found were missing, and if so, the reasons that the documents were missing; and

(12)    Whether any of the instructions provided in EXHIBIT B were not followed, and if so, which instructions were not followed and the reasons for any and all departures from the instructions.

# EXHIBIT B

## I. DEFINITIONS

As used herein, unless otherwise indicated:

1.    "Communication" means any transmittal of information, of any kind, without regard to whether such information was transmitted orally, in writing, electronically, visually, or by any other means.

2.    "Debtors" shall mean USA Commercial Mortgage Company, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, USA Capital First Trust Deed Fund, LLC, USA Securities, LLC, and their predecessors and successors, past and present subsidiaries, affiliates, divisions, branches, agents, officers, directors, employees, attorneys, agents, brokers, representatives, servants, and any and all other persons or entities acting or purporting to act directly or indirectly on behalf of or under the control of any of the Debtors, including any attorneys, advisors, or consultants.

3.    "Document" means all originals, drafts and modifications of originals, as well as copies, duplicates, and counterparts of originals, of written, printed, typed, graphic, recorded, and visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, correspondence, business records, telephone records and notations, diaries, calendars, minutes, contracts, agreements, orders, receipts, invoices, bills, pictures, drawings or sketches, blueprints, designs, notebooks, advertising and commercial literature, promotional literature of any kind, cables, telexes, telegrams, recordings, patents, lists, charts, pamphlets, appendices, exhibits, summaries, outlines, logs, journals, agreements, work papers, statements,

{00365037;}

records of inventory, financial and/or accounting records, catalogues, trade journals, and any other documented or recorded information. The term "document" also includes every other manner by which information is recorded or transmitted, including but not limited to, microfilms, punch cards, disks, tapes, computer programs, printouts, all recordings made through data processing techniques, and instructions and directions for use of the data processing equipment to obtain the information recorded by that method. The term "document" refers to copies, duplicates, and/or counterparts only where (i) the copy, duplicate, or counterpart is not exactly identical to the original or (ii) your records only contain a copy, duplicate, or counterpart of the original and not the original itself.

4.    "Entity" or "Entities" shall mean the following entities, their predecessors and successors, past and present subsidiaries, affiliates, divisions, branches, agents, officers, directors, employees, attorneys, agents, brokers, representatives, servants, and any and all other persons or entities acting or purporting to act directly or indirectly on behalf of or under the control of any of the Entities, including any attorneys, advisors, or consultants:

- Abogo Marketing, LLC
- A. L. LLC
- Amblamo, LLC
- Ashby USA, LLC
- ASQ, Inc.
- Aware TM 30850, LLC
- Barone-Tanamera Condominiums, LLC
- Barusa, LLC
- B&L Investments, Inc.
- Bellavista Partners Limited Partnership
- Blue Vale, LLC
- Brentwood 128, LLC
- Cabernet Highlands, LLC
- California Desert, LLC

- Campo Land Investment, LLC
- Caughlin Club Management Partners, LLC
- Caughlin Club Real Property Investors, LLC
- CCRE Investors, LLC
- Chardonnay Village Investors, LLC
- Classic Residences, LLC
- Clemency, LLC
- Commercial Concepts, LLC
- Comstock Village Investors, LLC
- Conference Pros, LLC
- Cornman Toltec 160, LLC
- DDH Financial Corp.
- Diamond Village Investors, LLC
- Dirt Holdings, LLC
- Double Diamond Homes, LLC
- Double Diamond Management Company, LLC
- Eagle Ranch, LLC
- Eagle Ranch, LLC
- Eagle Ranch Development, LLC
- Eagle Ranch Residential, LLC
- Electro Optical Systems Corp.
- Emigh Investments, LLC
- Equus Management Group
- Foothill Commerce Center, LLC
- FWY 101 USA Investors, LLC
- Hamilton & Montoure, LLC
- The Hantges Children's Educational Trust
- Happy Valley, LLC
- Haspinov, LLC
- HBM Holdings, LLC
- HBM Inc.
- HMA Management, LLC
- HMA Sales, LLC
- Homewood Village Investors I, LLC
- Housing Partners, LLC
- Indian Wells California Partners, LLC
- Institutional Equity Partners, LLC
- Institutional Income Fund
- Intelligent E-Mail, Inc.
- JaDeM Investments, LLC
- Joseph D. Milanowski 1998 Trust
- Kburr Brokerage Company, LLC
- Kegan, LLC
- Kenya 98, LLC
- La Hacienda Land Investors
- Longley Town Centre, LLC
- Longley Professional Campus, LLC

- Lucid Land Development, LLC
- Lucius Blanchard Family Foundation
- Market Consultants Limited Partnership
- The Meadows Investors, LLC
- Medical Billing Alliance, Inc.
- Met Partners, LLC
- Miners Village Investors, LLC
- M.M.P.LE., LLC
- Mojave Advertising, LLC
- Monticello Investors, LLC
- Mountainview Campus Investors, LLC
- M.P.D.D. Ranch, LLC
- M.P. Tanamera, LLC
- Nellis Crossing Management, LLC
- Nevada Skin and Cancer, Lucius Blanchard, M.D. Chartered
- Nevada Technology Networks, LLC
- Opaque Land Development, LLC
- Palmdale Associates, LLC
- Palomino Partners, a Nevada Limited Partnership
- Paul Steven Hamilton Family Limited Partnership
- PBH Family, L.P.
- Perusa, LLC
- Pecos Professional Park Limited Partnership
- Pecos Professional Park Property Owners Association
- PES, L.L.C.
- Pioneer Village Investors, LLC
- Placer County Land Investors, LLC
  (formerly Placer County Land Speculators, LLC)
- Random Developments, LLC
- Robert V. Jones, Corp.
- Preserve at Galleria, LLC
- Ravenswood Apple Valley, LLC
- Red Granite, LLC
- Redundant Networks, Inc.
- Reno Corporate Center, LLC
- Reno Design Center, LLC
- Reno South Meadows, LLC
- Resort International Marketing Inc.
- Resort Magic, LLC
- Resort Management Solutions, LLC
- Rowe Family Trust
- Royal Center Associates, LLC
- Royal Hotel Corporation
- Royal Resort Enterprises, LLC
- Royal Resort Operating Company, LLC
- Royal Resort Vacation Owners Association, Inc.
- Royal Vacation Suites, Inc.

- RTTC Communications, LLC
- Sandhill Business Campus, LLC
- Sandhill Properties, LLC
- Shadow Glen 420, Inc.
- Shadroc, LLC
- Shoshone Cattle and Land Development Co.
- Sierra Vista Investors, LLC
- Signature/USA Partners Limited Partnership
- Soda Flats Land Company, LLC
- South Meadows Apartments, LLC
- South Meadows Commercial Property, LLC
- South Meadows Office Investors, LLC
- South Meadows Residential Partners, LLC
- Southern California Land Development, LLC
- Sparks Galleria Investors, LLC
- Sparks Galleria Investors, LLC
- Sparks Galleria Investors II, LLC
- Sugartree, LLC
- TA Management, LLC
- Tanamera Apartments, LLC
- Tanamera Commercial Development, LLC
- Tanamera Corporate Center, LLC
- Tanamera Development, LLC
- Tanamera Homes, LLC
- Tanamera Holding Company, Inc.
- Tanamera Management, LLC
- Tanamera Residential, LLC
- Tanamera Resort Condominiums, LLC
- Tanamera Resort Partners, LLC
- Tanamera Seniors Village, LLC
- TCD Financial Corp.
- TCD Land Investments
- Telephone Associates of Arizona Limited Liability Company
- Telephone Associates of Nevada Limited Liability Company
- Thunderbird Hotel Corporation
- Tigger Too
- TJA Marketing, LLC
- Toblak, LLC
- Trading Places International, Inc.
- Trans-Aero Land & Development Company
- Tree Moss Partners, LLC
- Twelve Horses North America, Inc.
- Twelve Horses North America, LLC
- USA Capital Diversified Trust Deed Fund
- USA Capital First Trust Deed Fund
- USA Capital Fund I, LLC
- USA Capital Fund II, LLC

- USA Capital Fund III, LLC
- USA Capital High Income Real Estate Lending Fund, LLC
- USA Capital Institutional High Income Fund, LLC
- USA Capital Mortgage, LLC
- USA Capital Realty Advisors, LLC
- USA Capital Secured Income Fund, LLC
- USA Capital Specialty Finance, LLC
- USA Commercial Mortgage Company
- USA Commercial Real Estate Group
- USA Development, Inc.
- USA Development Fund Two Limited Partnership
- USA Investment Partners, LLC
- USA Investors I, LLC
- USA Investors II, LLC
- USA Investors III, LLC
- USA Investors IV, LLC
- USA Investors V, LLC
- USA Investors VI, LLC
- USA Lottery Investors, LLC
- USA Partners, Inc.
- USA Reno Mini-Storage, LLC
- USA Secured Income Fund, LLC
- USA Securities, LLC
- USA South Tech Partners, Ltd.
- USA/RVJ Development Fund One Limited Partnership
- Vaudio, LLC
- Vegas Hot Spots, LLC
- Vineyard Highlands, LLC
- The Vineyard Investors, LLC
- Vineyard Professional Campus, LLC
- Waterford Partners, LLC
- Willowbrook Residential, LLC
- Wyndgate Partners II, LLC
- Wyndgate Investors, LLC

5.    "Evidencing" means constituting, mentioning, describing, concerning, referring to, relating to, supplementing, amending, superseding, replacing, modifying, or pertaining to, in whole or in part, the subject matter of the particular requests.

6.    "Identify" or "identity" with respect to a natural person requires that the following information be provided for each such person:

(a)    the name of the person;

{00365037;}

(b)     the last known home address, business address and/or telephone number of each person.

7.     "Identify" or "identity" with respect to a person other than a natural person (e.g., corporation, partnership, unincorporated joint venture, sole proprietorship, subchapter S corporation) requires that the following information be provided for each such person:

(a)     the name of the person;

(b)     the last known address and telephone number of that person's headquarters or principal place of business.

8.     "Identify" or "identity" with respect to a document means to state the date and author of the document, the type of document (e.g., letter, memorandum, telegram, chart), the addressee or intended recipient, a summary of its contents or other means of identifying the document, and the present location and custodian of the document. Alternatively, in lieu of the foregoing identification, the document may be produced along with an identification of the interrogatory to which it is responsive.  If any such document was, but is no longer, in the possession, custody, or control of Oppenheimer or Oppenheimer's attorneys or agents, state what disposition was made of it and the date of such disposition.   With respect to document identification, documents prepared subsequent to or prior to the time period specified in these interrogatories but which relate or refer to such time or period are to be included in your response.

9.     "Identify" or "identity" with respect to a communication, written or oral conversation, conference or meeting, means to identify all persons participating in or in attendance at the communication, conversation, conference or meeting, and to identify all

documents recording, summarizing or otherwise arising from the communication, conversation, conference or meeting in accordance with the definitions stated above. In addition, "identify" or "identity" with respect to a communication, conversation, conference or meeting means to state in detail its purpose, all subjects discussed, the method(s) of communication.

10. "Individual" or "Individuals" shall mean the following individuals:

- Allen Abolafia
- Richard Ashby
- David M. Berkowitz
- Lucius Blanchard
- Eugene Buckley
- Phil Dickinson
- David A. Fogg
- Paul Hamilton
- Andrew Hantges
- Thomas Hantges
- Stephen R. Hefner
- Rob Hilson
- Robert V. Jones
- Victoria (Hessling) Loob
- Robert MacFarlane
- Cynthia Milanowski
- Joseph Milanowski
- Anthony Monaco
- Sue Monaco
- Salvatore Reale
- Thomas Rondeau
- Kreg D. Rowe
- Robert Russell
- Brett Seabert
- Tracy Suttles
- Robert "Bobby" Tomljenovich

11. "Oppenheimer" shall refer to OppenheimerFunds Distributor, Inc., its predecessors and successors, past and present subsidiaries, affiliates, divisions, branches,

agents, officers, directors, employees, attorneys, agents, brokers, representatives, servants, and any and all other persons or entities acting or purporting to act directly or indirectly on behalf of or under the control of Oppenheimer, including any attorneys, advisors, or consultants.

12.    "Person" means an individual, firm, partnership, corporation, incorporated or unincorporated association, and any other legal, commercial, corporate or natural entity. "Person" means the plural as well as the singular.

13.    "Relating or referring" and/or "relate or refer" means in whole or in part constituting, containing, concerning, embodying, evaluating, reflecting, describing, discussing, demonstrating, evidencing, supporting, analyzing, identifying, stating, referring to or dealing with, or in any way pertaining to including without limitation documents that relate to the preparation of another document, or documents that are attached to or enclosed with another document.

14.    "You" or "your" refers to Oppenheimer (as defined above) and its employees, officers, agents, subsidiaries, affiliates and all other persons acting, understood to act, or purporting to act on its behalf or under its direction or control.

## II. INSTRUCTIONS

1.    The following document requests are to be responded to fully, by furnishing all information in your possession, custody or control. Your having possession, custody, or control of a document includes your having a right, superior to other parties, to compel the production of such document from a third party, such as your agent, employee, representative, or, unless privileged, attorney.

2.    If any document requested herein has been lost, discarded, or destroyed, the document so lost, discarded or destroyed should be identified as completely as possible, including without limitation, the date the document was lost, discarded, or destroyed, the manner in which the document was lost, discarded, or destroyed, the reason(s) the document was lost, discarded, or destroyed, the person who authorized that the document be destroyed or discarded, and the person who lost, discarded, or destroyed the document.

3.    If you cannot produce a document because it no longer exists or is no longer in your possession, custody, or control, please identify that document by: (a) its title; (b) its nature (for example, a "letter" or "e-mail"); (c) the date it was created or sent; (d) its author(s) and signator(y/ies); (e) any of its recipient(s); (f) the last place it was known to have been located; (g) the circumstances under which it ceased to exist or passed from your possession, custody, or control; and (h) the identity and last known residence and business address of any person who had knowledge of its existence and location.

4.    Produce the original, as well as all non-identical duplicates or copies and/or drafts, of all requested documents in your possession, in the possession of your agents, attorneys, accountants or employees, or which are otherwise within your custody, control, or access, wherever located. A document with handwritten notes, editing marks, etc., is not identical to one without such notes or marks and therefore must be produced if within the scope of documents requested.

5.    Produce each requested document in its entirety, including all attachments and enclosures, even if only a portion of the document is responsive to the request.

6.    If you withhold from production any document (or portion of any

document) that is otherwise responsive to a request on the basis of a claim of privilege, work product, or other ground, you must provide sufficient information regarding the withheld document to permit the Court and the parties to evaluate the propriety of your objection. Specifically, you must identify: (a) the name and title of the author(s) of the document; (b) the name and title of each person to whom the document was addressed; (c) the name and title of each person to whom the document was distributed; (d) the name and title of each person to whom the document was disclosed, in whole or in part; (e) the type of document (e.g., "memorandum" or "report"); (f) the subject matter of the document; (g) the purpose(s) of the document; (g) the date on the document and, if different, the date on which the document was created and/or sent; (h) the number of pages of the document; (i) the specific request herein to which the document is responsive; (j) the nature of the privilege(s) asserted as to the document; and (k) a detailed, specific explanation as to why the document is privileged or otherwise immune from discovery, including a presentation of all factual grounds and legal analyses.

7.    If any requested document cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

8.    Please produce each specified document either (a) in the original file or organizational system in which it is regularly maintained or organized or (b) designate which documents are being produced in response to which of the numbered specifications below. Produce the requested documents either in their original file folders or appended to a copy of any writing on the file folders from which the documents are taken.

9.    Identify each document produced by the paragraph number of this schedule

to which it is responsive. If a document is produced in response to more than one request, it is sufficient to identify only the first request to which the document is responsive.

10.    All electronically stored information must be produced in the same form or forms in which it is ordinarily maintained. Specifically, all electronically stored information must be produced in its native format, so that the metadata can be accessed.

11.    Unless otherwise specified, the relevant time period for this request is from January 1, 1997 through and including the present.

12.    This request is a continuing one that calls for the supplemental or additional production of documents if any defendant or its counsel obtains supplemental or additional documents.

13.    In responding to the requests below: (a) the disjunctive shall also be read to include the conjunctive and vice versa; (b) "including" shall be read to mean "including without limitation;" (c) the singular shall also be read to include the plural and vice versa; (d) the present shall also be read as if the past tense and vice versa; (e) "any" shall be read to include "all" and vice versa; and (f) "and" shall be read to include "or" and vice versa.

### III.  DOCUMENTS TO BE PRODUCED

1.    Any and all documents evidencing any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

2.    Any and all documents evidencing any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

3.    Any and all documents evidencing any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

4.    Any and all documents evidencing the type and purpose of any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

5.    Any and all documents evidencing the type and purpose of any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

6.    Any and all documents evidencing the type and purpose of any and all accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

7.    Any and all documents evidencing the transactions and/or activity in the accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

8.    Any and all documents evidencing the transactions and/or activity in the accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

9.    Any and all documents evidencing the transactions and/or activity in the accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

10.    Any and all documents evidencing the history of the relationship between any of the Debtors and Oppenheimer.

{00365037;}

11.    Any and all documents evidencing the history of the relationship between any of the Entities and Oppenheimer.

12.    Any and all documents evidencing the history of the relationship between any of the Individuals and Oppenheimer.

13.    Any and all documents evidencing actual, apparent, and/or purported authorization of any and all individuals to act on behalf of any Debtors, including but limited to signature cards and authorization letters.

14.    Any and all documents evidencing actual, apparent, and/or purported authorization of any and all individuals to act on behalf of any Individuals, including but limited to signature cards and authorization letters.

15.    Any and all documents evidencing actual, apparent, and/or purported authorization of any and all individuals to act on behalf of any Entities, including but limited to signature cards and authorization letters.

16.    Any and all documents evidencing the application, opening, acceptance, management, ongoing review and oversight of the accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors, and any Oppenheimer policies and procedures applicable to these activities.

17.    Any and all documents evidencing the application, opening, acceptance, management, ongoing review and oversight of the accounts at Oppenheimer held in the name of or for the benefit of any of the Entities, and any Oppenheimer policies and procedures applicable to these activities.

18. Any and all documents evidencing the application, opening, acceptance, management, ongoing review and oversight of the accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals, and any Oppenheimer policies and procedures applicable to these activities.

19. Any and all correspondence files, account officer files, customer call records and credit files with respect to any accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

20. Any and all correspondence files, account officer files, customer call records and credit files with respect to any accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

21. Any and all correspondence files, account officer files, customer call records and credit files with respect to any accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

22. Any and all documents pertaining to the Debtors' accounts for internal audit and regulatory compliance purposes.

23. Any and all documents evidencing handling of overdrafts on any accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

24. Any and all documents evidencing handling of overdrafts on any accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

25. Any and all documents evidencing handling of overdrafts on any accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

26.    Any and all documents evidencing Oppenheimer's training of employees with respect to opening of accounts, due diligence to be performed on account applicants, maintenance of client correspondence files, maintenance of the account officer files, maintenance of customer call records, maintenance of credit files, extension of credit, determination and monitoring of credit worthiness, monitoring of accounts for internal audit and regulatory compliance purposes, handling of overdrafts on accounts and waivers of limitations on accounts and wire transfers.

27.    Any and all documents evidencing any site visits or reviews of any Debtors conducted by Oppenheimer.

28.    Any and all documents evidencing any site visits or reviews of any Entities conducted by Oppenheimer.

29.    Any and all documents evidencing Oppenheimer's actions, systems, policies and procedures to assure regulatory and internal audit compliance with respect to the accounts and the transactions and activity in the accounts of any Debtors, Entities, or Individuals.

30.    Any and all documents evidencing Oppenheimer's policies and procedures applicable to monitoring, review and/or investigation of transactions and activity in the accounts of the Debtors, Entities, or Individuals.

31.    Any and all documents evidencing actions taken by Oppenheimer to comply with "know your customer" policies with respect to any person or company affiliated with any Debtors that held an account at Oppenheimer.

32. Any and all documents evidencing actions taken by Oppenheimer to comply with "know your customer" policies with respect to any person or company affiliated with any Entities that held an account at Oppenheimer.

33. Any and all documents evidencing actions taken by Oppenheimer to comply with "know your customer" policies with respect to any person or company affiliated with any Individuals that held an account at Oppenheimer.

34. Any and all documents evidencing Oppenheimer's detection of any suspicious activity in any accounts of any Debtors and actions taken in response thereto.

35. Any and all documents evidencing Oppenheimer's detection of any suspicious activity in any accounts of any Entities and actions taken in response thereto.

36. Any and all documents evidencing Oppenheimer's detection of any suspicious activity in any accounts of any Individuals and actions taken in response thereto.

37. Any and all documents evidencing Oppenheimer's detection of circular transactions in any accounts of the Debtors and actions taken in response thereto.

38. Any and all documents evidencing Oppenheimer's policies and procedures with respect to the filing of suspicious activity reports.

39. Any and all documents evidencing Oppenheimer's policies and procedures with respect any and all computer programs provided by Oppenheimer to its customers for the processing of wire transfers.

40. Any and all documents evidencing loans or other forms of credit extended to any person or company affiliated with the Debtors, Entities, and/or Individuals by Oppenheimer and the terms thereof.

41. Any and all documents evidencing actions taken by Oppenheimer to determine and monitor the credit worthiness of any person or company affiliated with the Debtors, Entities, and/or Individuals to whom Oppenheimer made loans or extended other forms of credit.

42. Any and all documents evidencing correspondence and communications between any of the Debtors and Oppenheimer.

43. Any and all documents evidencing correspondence and communications between any of the Entities and Oppenheimer.

44. Any and all documents evidencing correspondence and communications between any of the Individuals and Oppenheimer.

45. Any and all documents evidencing correspondence and communications between Oppenheimer and the auditors of any of the Debtors, including, but not limited to, Deloitte & Touche LLP, Piercy Bowler Taylor & Kern, and Beadle McBride Evans & Reeves LLP.

46. Any and all documents evidencing meetings between Oppenheimer and any Debtors.

47. Any and all documents evidencing meetings between Oppenheimer and any Entities.

48.    Any and all documents evidencing meetings between Oppenheimer and any Individuals.

49.    Any and all documents evidencing wire transfers received or sent by Oppenheimer with reference to any accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

50.    Any and all documents evidencing wire transfers received or sent by Oppenheimer with reference to any accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

51.    Any and all documents evidencing wire transfers received or sent by Oppenheimer with reference to any accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

52.    Any and all documents evidencing Oppenheimer's policies and procedures applicable to wire transfers to or from the accounts of any Debtors, Entities, and/or Individuals.

53.    Any and all documents evidencing wire transfers to or from accounts of any Debtors that were circular in nature or unusually large in dollar amount.

54.    Any and all documents evidencing wire transfers to or from accounts of any Entities that were circular in nature or unusually large in dollar amount.

55.    Any and all documents evidencing wire transfers to or from accounts of any Individuals that were circular in nature or unusually large in dollar amount.

56. Any and all documents evidencing Oppenheimer's policies and procedures applicable to wire transfers to or from accounts of any Debtors, Entities, or Individuals that were circular in nature or unusually large in dollar amount.

57. Any and all documents evidencing wire transfers to or from accounts of any Debtors where the name of the recipient or transferor is not identified.

58. Any and all documents evidencing wire transfers to or from accounts of any Entities where the name of the recipient or transferor is not identified.

59. Any and all documents evidencing wire transfers to or from accounts of any Individuals where the name of the recipient or transferor is not identified.

60. Any and all documents evidencing Oppenheimer's policies and procedures with respect to wire transfers to or from accounts of any Debtors, Entities, and/or Individuals where the name of the transferor or recipient is not identified.

61. Any and all documents evidencing Oppenheimer's knowledge of the sources and uses of funds deposited into any accounts at Oppenheimer held in the name of or for the benefit of any of the Debtors.

62. Any and all documents evidencing Oppenheimer's knowledge of the sources and uses of funds deposited into any accounts at Oppenheimer held in the name of or for the benefit of any of the Entities.

63. Any and all documents evidencing Oppenheimer's knowledge of the sources and uses of funds deposited into any accounts at Oppenheimer held in the name of or for the benefit of any of the Individuals.

64.     Any and all documents evidencing Oppenheimer's knowledge of the business activities of any Debtors.

65.     Any and all documents evidencing Oppenheimer's knowledge of the business activities of any Entities.

66.     Any and all documents evidencing Oppenheimer's knowledge of the business activities of any Individuals.

67.     Any and all documents evidencing Oppenheimer's knowledge of any illegal activity by any Entities or any activity of any Entities considered by Oppenheimer to be suspicious.

68.     Any and all documents evidencing Oppenheimer's knowledge of any illegal activity by any Individuals or any activity of any Individuals considered by Oppenheimer to be suspicious.

69.     Any and all documents evidencing any concerns or problems that arose, including but not limited to regulatory or internal audit compliance concerns, with respect to any of the accounts of any Debtors at Oppenheimer or any activity or transactions therein, and the actions taken by Oppenheimer to remedy those concerns or problems.

70.     Any and all documents evidencing any concerns or problems that arose, including but not limited to regulatory or internal audit compliance concerns, with respect to any of the accounts of any Entities at Oppenheimer or any activity or transactions therein, and the actions taken by Oppenheimer to remedy those concerns or problems.

71.     Any and all documents evidencing any concerns or problems that arose, including but not limited to regulatory or internal audit compliance concerns, with respect

to any of the accounts of any Individuals at Oppenheimer or any activity or transactions therein, and the actions taken by Oppenheimer to remedy those concerns or problems.

72. Any and all documents evidencing overdrafts on accounts of any Debtors and actions taken by Oppenheimer with respect to such overdrafts.

73. Any and all documents evidencing overdrafts on accounts of any Entities and actions taken by Oppenheimer with respect to such overdrafts.

74. Any and all documents evidencing overdrafts on accounts of any Individuals and actions taken by Oppenheimer with respect to such overdrafts.

75. Any and all documents evidencing Oppenheimer's policies and procedures applicable to overdrafts on any accounts held by Debtors, Entities, and/or Individuals.

76. Any and all documents evidencing any participation by Oppenheimer in any loans extended by any Debtors to a third party.

77. Any and all documents evidencing any participation by Oppenheimer in any loans extended by any Entities to a third party.

78. Any and all documents evidencing any participation by Oppenheimer in any loans extended by any Individuals to a third party.

79. Any and all documents evidencing any reports or filings made to any regulatory agency or group relating to any Debtors.

80. Any and all documents evidencing any reports or filings made to any regulatory agency or group relating to any Entities.

81. Any and all documents evidencing any reports or filings made to any regulatory agency or group relating to any Individuals.

82. Any and all documents evidencing fees earned by Oppenheimer and its employees for the handling of the accounts of any Debtors and wire transfers to or from those accounts.

83. Any and all documents evidencing fees earned by Oppenheimer and its employees for the handling of the accounts of any Entities and wire transfers to or from those accounts.

84. Any and all documents evidencing fees earned by Oppenheimer and its employees for the handling of the accounts of any Individuals and wire transfers to or from those accounts.

85. Any and all documents evidencing correspondence and communications between Oppenheimer and any attorneys for any of the Debtors, including but not limited to Goold Patterson Ales & Day; Kummer Kaemper Bonner Renshaw & Ferrario; Santoro, Driggs, Walch, Kearney, Johnson & Thompson; and Bryan Cave LLP.

86. Any and all documents evidencing correspondence and communications between Oppenheimer and any attorneys for any of the Entities, including but not limited to Goold Patterson Ales & Day; Kummer Kaemper Bonner Renshaw & Ferrario; Santoro, Driggs, Walch, Kearney, Johnson & Thompson; and Bryan Cave LLP.

87. Any and all documents evidencing correspondence and communications between Oppenheimer and any attorneys for any of the Individuals, including but not limited to Goold Patterson Ales & Day, Chartered; Kummer Kaemper Bonner Renshaw & Ferrario, Ltd.; Santoro, Driggs, Walch, Kearney, Johnson & Thompson, Ltd.; and Bryan Cave LLP.

88.    Any and all documents evidencing any transactions, including wire transfers, between any of the Debtors and any of the Entities.

89.    Any and all documents evidencing any transactions, including wire transfers, between any of the Debtors and any of the Individuals.

90.    Any and all documents evidencing any transactions, including wire transfers, between any of the Entities and any of the Individuals.

91.    Any and all documents evidencing any flow of money in or out of any and all accounts held by any of the Debtors, including but not limited to (a) deposit slips, (b) copies of checks, (c) copies of endorsements on checks, (d) withdrawals, and (e) wire transfers.

92.    Any and all documents evidencing any flow of money in or out of any and all accounts held by any of the Individuals, including but not limited to (a) deposit slips, (b) copies of checks, (c) copies of endorsements on checks, (d) withdrawals, and (e) wire transfers.

93.    Any and all documents evidencing any flow of money in or out of any and all accounts held by any of the Entities, including but not limited to (a) deposit slips, (b) copies of checks, (c) copies of endorsements on checks, (d) withdrawals, and (e) wire transfers.