1  **WILDE HANSEN, LLP**
   GREGORY WILDE. ESQ.
2  Nevada Bar No. 4417
   MARIANNE GATTI. ESQ.
3  Nevada Bar No. 7717
   208 South Jones Blvd.
4  Las Vegas, Nevada 89107
   TEL:  (702) 258-8200
5  FAX: (702) 258-8787

6  Attorneys for Sierra Liquidity Fund, LLC

E-filed 5-18-07

7
                    **IN THE UNITED SATES BANKRUPTCY COURT**
8
                              **DISTRICT OF NEVADA**
9

| | |
|---|---|
| 10  In Re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>11                              Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR |
| 12  In Re:<br>USA CAPITAL REALTY ADVISORS. LLC,<br>13                              Debtor. | Chapter 11<br><br>Jointly Administered Under |
| 14 | Case No. BK-S-06-10725 LBR |
| 15  In Re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>16  FUND, LLC,<br>                              Debtor.<br>17 | **RESPONSE BY SIERRA LIQUIDITY FUND, LLC TO THE OBJECTIONS OF USA COMMERCIAL MORTGAGE COMPANY AND USACM LIQUIDATION TRUST TO THE ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND, LLC** |
| 18  In Re:<br>USA CAPITAL FIRST TRUST DEED FUND. LLC,<br>19                              Debtor. | |
| 20  In Re:<br>USA SECURITIES, LLC.<br>21                              Debtor. | |
| 22 | |
| 23  Affects:<br>   □ All Debtors<br>24  ■ USA Commercial Mortgage Company<br>   □ USA Securities, LLC<br>25  □ USA Capital Realty Advisors, LLC<br>   □ USA Capital Diversified Trust Deed Fund, LLC<br>26  □ USA Capital First Trust Deed. Fund. LLC | Hearing Date: May 31, 2007<br>Hearing Time:9:30 a.m. |

27
28  Sierra Liquidity Fund, LLC ("Sierra"), by and through its counsel Robert S. Coldren of Hart,

King & Coldren, a PLC and its local counsel Marianne Gatti, Esq. of Wilde Hansen, LLP, hereby files

1

its Response to the Objections of USA Commercial Mortgage Company ("USACM") and USACM Liquidation Trust ("USACM Trust") to the Administrative Expense Claim of Sierra Liquidity Fund, LLC.

## I. FACTUAL BACKGROUND

1. On April 13, 2006 ("Petition Date"), USACM, USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors. LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF" and together with DTDF, the "Funds") (collectively the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. USACM is a Nevada Corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account.

3. This business included the solicitation of individual investors to purchase fractional interest in loans that USACM originated and then serviced. These investors, totaling approximately 3,600 as of the Petition Date, are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

4. On October 19, 2006. USACM filed with the Court a copy of the Asset Purchase Agreement among the Debtors and SPCP Group. LLC (the "Silver Point APA") [Docket No. 1603]. Attached to the Silver Point APA is a schedule listing the status as of July 31, 2006 of most of the loans USACM serviced as performing or non-performing.

5. On December 7, 2006 an auction was held whereby Compass Partners LLC ("Compass") agreed to purchase, among other things. most of USACM's assets.

6. On December 18, 2006, USACM filed with the Court a copy of its Asset Purchase Agreement with Compass (the "Compass APA") [Docket No. 2164]. Attached to the Compass APA was a schedule listing the status as of July 31, 2006, of most of the loans USACM serviced as performing or non-performing.

7. On January 8, 2007. this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" [Docket No. 2376].

8. Under the plan, the USACM Liquidating Trust exists as of the Effective Date, which was March 12, 2007. Geoffrey L. Berman is the Trustee.

1    9. Sierra filed an administrative expense claim and request for payment thereof (the "Request")

2  on March 14th, 2007.  (See Exhibit C).

3                                    **II. RELIEF REQUESTED**

4       Sierra has updated the current amount of their administrative expense claim through May 17th,

5  2007 to account for additional assignment of Direct Lender interests in certain loans to Sierra and to

6  account for the continued accrual of default interest, servicing fees, and late fees through May 17th,

7  2007. (See Exhibit A).  As of May 17th. 2007 Sierra is entitled to a valid administrative expense claim

8  against USACM totaling $1,502,399.63. (Exhibit A).

9       In response to the responses filed by USACM and the USACM Trust, Sierra submits that it

10  would not be practical at this stage to quantify Sierra's damages that have and will result from the

11  depreciation in the specific land and development property pledged to Sierra by certain borrowers on

12  certain loans.  This is true both in terms of the amount of time and money that would be required for

13  experts and the time burden that would be presented to the Court in terms of the necessary

14  documentation to prove up the same.  Accordingly, Sierra reserves its rights to prove up said damages

15  once the Court has declared that Sierra is entitled to recover its provable damages pursuant to this

16  Administrative Claim.

17       Notwithstanding the above, and as supported in the Declaration of James Riley attached hereto,

18  it is common industry knowledge and has been widely publicized in the financial press that a significant

19  deterioration in land and development property has generally occurred over the past year.[1]  Moreover,

20  while this depreciation was occurring, USACM allowed delinquent borrowers to sit on properties where

21  the debt service was not being satisfied and many secured lenders were not only not being compensated,

22  but were also not returned any of their principal.  All the while, USACM was accruing servicing fees,

23  late fees, and default interest at a combined annual rate of up to 16% (as Compass is now), which was

24  then monetized in an asset sale to Compass: while Borrowers were receiving economic options on equity

25  interests in depreciating property while failing to satisfy debt service requirements.

26       More importantly, if as Sierra is informed and believes, Compass is allowed, as a result of a

27  _____

28       [1] See Riley Decl.. 2 ("Major homebuilders such as Pulte Homes Inc.. Lennar Corporation, KB Home, Toll
Brothers. Inc.. etc. all reported significant write downs of land inventory during the third and fourth quarters of 2006.")

3

ruling of this Court or a court of competent jurisdiction, to deduct accrued default interest and late fees prior to distributing principal and interest owed to Sierra in the event of a foreclosure on collateral pledged to Sierra, and a consequent asset sale that generates less than the principal and accrued interest owed to Sierra on account of certain loans, then Sierra will have a valid and quantifiable administrative expense claim in the amount of $1,502,399.63 for damages that are the direct result of the accrual of servicing fees, default interest and late fees from April 13th, 2006 until May 17th, 2007 due to USACM's failure to foreclose on collateral and return the value of pledged collateral to Sierra. (See Riley Decl., Ex. A).

Sierra petitions this court to allow Sierra's administrative expense claim in the amount of $1,502,399.63, as a direct result of the possible damages that would be inflicted upon Sierra should:

      1)    USACM's right to default interest and late fees (and Compass' right to default interest and late fees as the Assignee of USACM's Commercial Mortgage Assets) be asserted as senior in right of payment to the principal and interest owed to Sierra in the event of foreclosure(s) on the collateral pledged to Sierra on account of certain loans where the collateral may be ultimately sold for less than the principal and interest owed to Sierra **and**

      2)    Such an action by Compass, as the Assignee of USACM's Commercial Mortgage Assets, be permitted by either this court or a court of competent jurisdiction.

## III. RESPONSE TO OBJECTIONS OF USACM AND THE USACM TRUST

**A.    USACM and the USACM Trust Argue that The Direct Lenders Waived All Claims Against USACM Under the Plan**

USACM asserts that "as part of these compromises confirmed in the Plan, USACM and the Direct Lenders mutually released each other as of the Effective Date from any and all Claims." USACM references release provisions contained in Section A(4) (page 76) of the Debtor's Third Amended Chapter 11 Plan of Reorganization ("the Plan) [Docket No. 1799].

This argument is flawed on several grounds. First, in "Article II, Section C, Number 1(e),

4

Classification and Treatment of Claims and Equity Interests - Classified Claims and Equity Interests - USACM - Class A-5: Direct Lender Compromise Claims". the Plan makes no mention of such a Direct Lender Release and reads as follows:

> "*i.* *Classification*: Class A-5 Consists of all Direct Lenders"
>
> *ii.* *Treatment:* In exchange (and as a compromise) for the release by USACM, FTDF, USA Realty, USA Securities of Claims against the Direct Lenders under the Plan. including Claims relating to surcharge, re-characterization of Direct Lender Loans, and the collection of pre-petition accrued as of the Effective Date but unpaid annual loan servicing fees due under Loan Servicing Agreements, but excluding all other causes of action to recovery principal or interest payments USACM paid in advance to applicableDirect Lenders before the Petition Date, **the Direct Lenders** (a) acknowledge that the Prepaid Interest constitutes an asset of the USACM Estate (or will otherwise transfer their ownership rights, if any. in the Prepaid Interest to the USACM Estate); (b) agree that up to $605.000 of the 2% Holdback (on a Pro Rata basis based on unpaid principal Loan balances of those Direct Lenders with funds in the 2% Holdback) will be used to reimburse USACM for the Allowed Administrative Expense Claims of Professionals employed by the Direct Lender Committee; and (c) agree that. with respect to servicing fees paid prior to the Effective Date, USACM will retain its contractual servicing fee due under the Loan Servicing Agreements and, with respect to Loan Servicing Agreements which provide that USACM may collect "up to" a maximum amount for such servicing fees, USACM will retain the maximum amount for such servicing fees as provided under the Loan Servicing Agreement. Class A-5 is impaired, and the holders of Allowed Class A-5 Claims are entitled to vote to accept or reject the Plan. If the Plan is confirmed, the Direct Lenders will be bound to the Class A-5 treatment regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept or reject the Plan: all such objections must be made by objecting to Plan confirmation."
> (emphasis added).

Thus, nowhere in the Plan Treatment for Class A-5 Direct Lender Claims is there a reference to the Direct Lenders Releasing USACM for post-petition breaches of duty, to the extent a Loan Servicing Agreement ("LSA") exists. Rather the Debtors buried the release provision on P. 76 of a 92 page plan.

Second, neither **USACM as the previous Servicer nor Compass as the successor Servicer ever expressed an intention to apply proceeds gained from the sale of foreclosed upon collateral first to the Servicer for accrued default interest and late fees. Therefore, the Direct Lenders did not have a claim to waive or release in that they were not in a position to know economic damages might be suffered as against USACM for USACM'S post-petition failures under the Loan**

5

1  **Servicing Agreements - specifically the failure to pursue foreclosure proceedings while accruing**

2  **servicing fees, default interest and late fees that total up to 16% annually. Accordingly, there was**

3  **no claim for the Direct Lenders to waive or "release". Moreover, to date, despite numerous**

4  **requests of USACM and Compass, neither Compass nor USACM has taken a position on the**

5  **application of payments (the waterfall) gained through a foreclosure sale.**

6      Sierra submits to the Court that USACM's reference to a Direct Lender Release should be ruled

7  invalid and/or inapplicable. insofar as it relates to Sierra's administrative expense claim, on the basis of:

8          1.      The release is not contained in the Treatment section of the Plan and/or

9          2.      The Debtors have not clearly explained their position to the Direct Lenders as it

10              relates to the priority of payment of accrued servicing fees, default interest and late fees

11              in the event of a foreclosure and collateral sale, and therefore the Direct Lenders could

12              not evaluate the economic consequences of a release provision that was on its basis,

13              secretive and deceptive and have therefore not released or waived any such claim.[2]

14

15  **B.     USACM argues that USACM Appropriately Exercised its Business Judgment in Not**

16         **Foreclosing on Non-Performing Loans**

17      USACM asserts that they did not breach their duty owed to the Direct Lenders under the Loan

18  Servicing Agreements, to the extent they exist. by "failing to send notices of foreclosure, to commence

19  or pursue foreclosure proceedings, or take such other action as required" because Section 2(c)(ii) of the

20  Loan Servicing Agreement states that "USACM will take steps necessary to collect payments, including

21  pursuing foreclosure procedures. 'as deemed necessary or appropriate by [USACM] in its business

22  judgment', and as such that USACM exercised its business judgment in choosing to negotiate with

23  borrowers rather than foreclose. Moreover, as a defense to exercising their business judgment, USACM

24

25          [2]  See Decl., 6 ("Sierra made numerous written and verbal requests upon USACM and Compass throughout the
26      bankruptcy proceedings seeking clarification on the priority of payment of default interest and late fees in the event of a
        foreclosure and never once got a definitive answer from either USACM or Compass, only innuendos that Compass and
27      USACM believed the Servicer had the right to deduct default interest and late fees senior in right of payment to Direct
        Lender principal and interest, even in the event of a foreclosure and consequent sale that does not provide *for a full recovery*
28      of principal and interest to the Direct Lenders.").

6

cites that the action was taken in the best interest of the company and the estate.

Sierra contends, however, that the cornerstones of the business judgment rule are that prudence be exercised and that all actions be undertaken in "good faith." Accordingly, the rule should not apply here for the following reasons:

1.    The automatic stay prevented the Direct Lenders from taking any action against USACM as the Servicer under Section 3 or Section 8 of the Loan Servicing Agreement for any failures by USACM.

2.    Because the Loan Servicing Agreements, to the extent they exist, were ruled to not be executory contracts, the Loan Servicing Agreements were allowed to be sold without being cured or rejected.

3.    Even if USACM used their business judgment in electing to negotiate with the Borrowers rather than initiate foreclosure procedures, prudent business judgment should have led them to conclude that their negotiations were unsuccessful on certain loans that continued to be in default after almost a year had passed since the last payment (while close to 16% of accrued servicing fees, default interest and late fees accumulated). Sierra argues that business judgment should then have been used by USACM to determine that foreclosure was indeed necessary.

4.    Finally, if it is USACM and/or Compass' position that loan servicing fees, default interest, and late fees were accruing for almost one year on some loans and totaling close to 16%, and that those monies are in advance of the interests of the Direct Lenders, then USACM actions - even if prudent - were not in good faith. Instead, USACM was acting in the best interest of the company and the estate and they were not fulfilling the fiduciary obligation owed to the Direct Lenders when they failed to initiate foreclosure proceedings. Therefore, Sierra has a valid administrative expense claim against USACM on the basis of USACM's post-petition failures under the LSA's, to the extent they exist, and USACM's actions are not shielded under the business judgment rule.

**C.    USACM argues that Sierra Knew Prior to Acquiring its Interest that the Loans were Non-Performing and that USACM Intended to Transfer the Servicing Agreements**

Sierra agrees that it had knowledge of the non-performing loan status and of the intended transfer of the Servicing Agreements, to the extent they exist. However, Sierra was not aware that the Debtor and Compass' position regarding the priority of distributions under the Loan Servicing Agreements was such that the Servicer has the right to apply proceeds gained upon foreclosure, where the sale proceeds are insufficient to cover the principal and interest owed to the Direct Lenders, first in priority of payment to the Servicer for accrued servicing fees, default interest and late fees, and second to the "subordinated" principal and interest owed to the Direct Lenders. Section 5 of the Loan Servicing Agreements states, "Lender authorizes USA to retain…as compensation for services performed hereunder….(b) *any late charges collected from the Borrower pursuant to the terms of the Note,* and *(c) default interest collected from the Borrower pursuant to the terms of the Note,"*

7

1    During the proposed sale of the Placer Vineyards Commercial Mortgage Assets, Judge Riegle

2  asked the proposed bidders (Compass, Sierra, and Silverpoint) to clarify exactly what this language

3  meant. At that time, Sierra stated that unless the late fees and default interest are ***collected from the***

4  ***Borrower***, then the late fees and default interest do not exist, and in foreclosure, any and all proceeds

5  available would be distributed directly to the Direct Lenders, net of valid accrued servicing fees only.

6  To the best of Sierra's knowledge, Silverpoint agreed that if default interest and late fees are ***not***

7  ***collected from the Borrower*** which they would not be in the event of a foreclosure, then default interest

8  and late fees would be expressly subordinated to all principal and interest owed to Direct Lenders who

9  have a security interest in the collateral. However, Silverpoint did attempt to effect a negotiated

10  compromise between Silverpoint, USACM, the Direct Lenders, and the Official Committee of

11  Unsecured Creditors, whereby if a sale of foreclosed upon collateral resulted in sufficient proceeds to

12  cover all principal and interest owed to the Direct Lenders, then the four compromising parties would

13  share in the default interest and late fees, according to a formula. Mystery ensued and suspicions arose

14  when Compass failed to comply with Judge Riegle's request to clarify the waterfall of payments and

15  disappeared from the bidding altogether. Even more mysteriously, shortly afterwards the USACM Trust

16  elected to withdraw the sale of Placer Vineyards altogether. Sierra could only assume that this was

17  because Judge Riegle wanted an opportunity to rule upon who was the most appropriate bidder, not only

18  based upon price, but also based upon the interpretation of the waterfall, and that the USACM Trust and

19  Compass wanted to avoid this ruling at all costs.

20    Now, the Court can rule on the waterfall and the priority of payments, because Sierra will gladly

21  withdraw their Administrative Expense Claim, if Compass will agree that in the event of a foreclosure,

22  and consequent sale, all accrued default interest and late fees are explicitly subordinated to the principal

23  and interest owed to Sierra on account of any and all loans for which Sierra is an Assignee.

24    **In fact, thankfully, the USACM Trust has already clarified their position to the Direct**

25  **Lenders they represent as the Servicer for Placer Vineyards Land Speculators, LLC and Marquis**

26  **Hotel (USA Investors VI, LLC), whereby the USACM Trust has stated that all default interest and**

27  **late fees are subordinated to Direct Lender principal and accrued interest outstanding, whether**

28

8

1    collected from the Borrower directly by a payment from the Borrower or otherwise, such as
2    through the distribution of proceeds gained from foreclosure and a consequent sale (See Exhibit
3    B). Sierra would gladly withdraw their administrative expense claim if either A) Compass could
4    represent to Sierra a similar position as the USACM Trust in regards to default interest and late
5    fees or B) Judge Riegle can issue an order clarifying that all default interest and late fees are
6    subordinated to Direct Lender Principal and Interest, however collected.

7         The Asset Purchase Agreement with Compass and the Order Confirming the Debtors Third
8    Amended Joint Chapter 11 Plan of Reorganization as Modified Herein state the following, respectively,
9    "Purchaser shall apply all payments and proceeds from Serviced Loans, however collected, *whether*
10   *through liquidation of collateral, payments from the Borrower or otherwise*, in accordance to the
11   provisions of the notes and/or loan agreements"[3] and "Compass shall apply all payments and proceeds
12   from Serviced Loans (as such term is defined in the Asset Purchase Agreement), *however collected,*
13   *whether through liquidation of collateral, payments from the Borrower or otherwise*, in accordance
14   with the provisions of the notes and/or loan agreements."[4]

15        To the best of Sierra's knowledge, this language was thrown in by the Debtors and Compass only
16   hours before the Confirmation Hearing, and possibly after votes were gained on account of Class A-5
17   to approve and confirm the Plan. Accordingly, Sierra questions to the Court whether or not Class A-5
18   even voted on the same plan that was ultimately confirmed.

19        Thus, despite the fact that Sierra was aware of both the loan status and the pending transfer of
20   the servicing agreements, Sierra was not aware of the economic damages that may be inflicted upon
21   Sierra as a result of the combination of:

22        1.    USACM and Compass' alleged and potential interpretation that default interest and late
             fees are owed to the Servicer prior to allocating payments to Direct Lender Principal and Interest,
23           even if,

24             a.    default interest and late fees are not collected from the Borrower, but instead are
                 gained through the sale of collateral upon foreclosure which results in proceeds that are

---

26   [3] See Compass Asset Purchase Agreement, Section 7.3, P. 19.

27   [4] See Order Confirming the Debtors Third Amended Chapter 11 Plan or Reorganization As *Modified Herein*,
28   Section 82, P. 26.

insufficient to cover principal and interest owed to the Direct Lenders and/or

b.    the Direct Lenders waive default interest and late fees and/or

c.    the Direct Lenders elect to change the application of payments first to principal then to interest

and

2.    The failure of USACM to fully protect the security interest of the Lenders in the underlying collateral, as required under the LSA's, to the extent they exist, by failing to initiate foreclosure proceedings when negotiations with certain borrowers failed resulting in the accrual of servicing fees, default interest and late fees over the course of almost one year totaling 16%, thereby benefitting USACM's estate but damaging the Direct Lenders to whom USACM owed a fiduciary duty.

**D.    USACM and the USACM Trust argue that Sierra is Either Bound by the Loan Servicing Agreements or it has No Relationship with USACM and Can Assert No Claim**

Sierra may only be bound to the LSA's to the extent they exist and Sierra is the Assignee of the various assignors interest in the LSA's. Furthermore, even if Sierra is the assignee of various Direct Lender LSA's, if they exist, Sierra would still retain Section 3 and Section 8 rights under the LSA's. Sierra has requested on numerous occasions upon both USACM and Compass to forward any and all valid and executed LSA's that may exist by and between the various assignors who have assigned their Direct Lender interest to Sierra and USACM to Sierra. To date, Sierra has not received a single such LSA.

Therefore to the extent the LSA's do not exist, then Sierra obviously cannot be bound to any LSA and Sierra would not have a valid administrative expense claim against USACM. However, to the extent the LSA's do exist and USACM and/or Compass will not release Sierra from an LSA that was executed by a Direct Lender that assigned their interest to Sierra, then Sierra does have the right to a valid administrative expense claim against USACM.

**E.    USACM argues that Sierra has offered No Evidence that it has Suffered any Damage**

Sierra agrees that at this stage of the Administrative Claim it would be cost prohibitive and burdensome to the Court's time to employ land valuation experts to prove the decline in real estate collateral that has generally occurred over the past year, not to mention the decline in the specific

1   collateral securitizing certain USACM originated loans over the past year. However, it is common

2   industry knowledge, and has been widely publicized in the financial press that a significant deterioration

3   in land and development property has generally occurred over the past year.[5]

4       As far as Sierra's claim for damages as a result of USACM's failure to initiate foreclosure

5   proceedings and the 1 year period of accrual of servicing fees, default interest and late fees, USACM

6   states the following in their response to Sierra's filing of the administrative expense claim:

7           "Sierra has claimed further damage based solely on its belief that USACM "will seek to
recover from any sale proceeds an amount equal to the default interest that the borrower

8   would have been obligated to pay under the terms of the loan had the borrower made
payments as required." The Loan Servicing Agreements and other loan documents speak

9   for themselves in this regard. The servicer of the Loans, which is not USACM after the
Effective Date, is bound to comply with the provisions of the loan documents and can

10  only collect default interest in accordance with such provisions. By the same token,
Sierra, to the extent it is a party to the loan documents, is also bound by the provisions

11  regarding the collection of default interest and cannot seek to absolve itself of its
obligations with respect to these provisions through the filing of an administrative

12  expense claim. Thus Sierra's claim that it will be damaged if default interest is collected
is without merit since such collection can only occur in accordance with the properly

13  executed Loan Servicing Agreements and other governing loan documents."

14  

15      This is precisely the sort of vague, evasive, and unrevealing language that USACM and its

16  progeny use whenever called upon for a commitment to a position. The uneasiness derived from such

17  elusive statements is precisely the reason that Sierra deemed it necessary to file its administrative

18  expense claim and to protect itself against the damages that Sierra may incur as a direct result of the

19  combination of the following:

20          1)     the failure of USACM to initiate post-petition foreclosure proceedings,
        2)     the resultant accrual of servicing fees, default interest and late fees for in excess
of one year on certain loans

21          3)     and the potential for Compass as the assignee of USACM's Commercial
Mortgage Assets to deduct accrued default interest and late fees senior in right of

22  payment to Sierra's principal and accrued interest.

23  **F.**      **USACM Trust argues that Sierra did not provide an Actual, Necessary Benefit to the**

24  **USACM Estate**

25      To the extent USACM was able to monetize the accrual of servicing fees, default interest, and

26  

27  ───────────────────

28     [5] See Riley Decl., 2 ("Major homebuilders such as Pulte Homes Inc., Lennar Corporation, KB Home, Toll
Brothers, Inc., etc. all reported significant write downs of land inventory during the third and fourth quarters of 2006.")

1  late fees over the course of almost a full year through a sale of the USACM Commercial Mortgage

2  Assets to Compass, then all Direct Lenders, including Sierra, provided a monetary benefit to the estate

3  that is unjust and a direct result of USACM's post-petition breaches and failures to foreclosure.  The

4  monetary benefit provided to the estate by Sierra in that case is a direct function of the amount of

5  accrued servicing fees, default interest and late fees on account of Sierra's interest in certain assigned

6  Direct Lender loans that relate to the ultimate purchase price paid by Compass (See Exhibit A).

7

8                                     **IV.  CONCLUSION**

9          For reasons clearly evidenced in this response, Sierra prays that the court will allow Sierra's

10  properly filed administrative expense claim for the full amended amount listed on Exhibit A, totaling

11  $1,502,399.63, subject to proof of diminution in value as set forth above.

12

13          DATED this 16 day of May, 2007.

14                                     WILDE HANSEN, LLP

15

16

17                                     GREGORY WILDE, ESQ.
                                       Nevada Bar No. 4417
18                                     MARIANNE GATTI, ESQ.
                                       Nevada Bar No. 7717
19                                     208 South Jones Blvd.
                                       Las Vegas, Nevada 89107

20

21

22

23

24

25

26

27

28

                                          12

Exhibit A

**Calculation of Sierra Liquidity Fund, LLC's Administrative Expense Claim against USACM**

**May 17th, 2007**

Damages due from Diminution in Value of Underlying Collateral

| Date Listed as Non-Performing | Property | | Principal Amount of Investment |
|---|---|---|---|
| Jun-06 | Placer Vineyards Land Speculators, LLC | $ | 1,200,000.00 |
| Jun-06 | Gramercy Court, Ltd. | $ | 850,000.00 |
| Jun-06 | Palm Harbor I, LLC | $ | 340,276.96 |
| Jun-06 | Margarita Annex | $ | 425,000.00 |
| Jun-06 | Oak Shores II | $ | 239,182.85 |
| Jun-06 | 3685 San Fernando Road Partners, LP | $ | 235,000.00 |
| Jun-06 | Binford Medical Developers, LLC | $ | 170,000.00 |
| Jun-06 | USA Investors VI, LLC (Marquis Hotel) | $ | 95,000.00 |
| Jun-06 | Southern California Land Development LLC (Hesperia II) | $ | 50,000.00 |
| Jun-06 | Brookmere LLC and Lord Essex Matteson LLC | $ | 36,987.48 |
| Jun-06 | Bay Pomano Beach LLC | $ | 22,942.05 |
| | **Total** | $ | 3,664,389.34 |
| | **Damages from Diminution in Collateral Value** 25% | $ | 916,097.34 |

Damages due from Accrual of Servicing Fees, Default Interest and Late Fees

| Date Listed as Non-Performing | Property | | Principal Amount of Investment |
|---|---|---|---|
| Jun-06 | Placer Vineyards Land Speculators, LLC | $ | 1,200,000.00 |
| Jun-06 | Gramercy Court, Ltd. | $ | 850,000.00 |
| Jun-06 | Palm Harbor I, LLC | $ | 340,276.96 |
| Jun-06 | Margarita Annex | $ | 425,000.00 |
| Jun-06 | Oak Shores II | $ | 239,182.85 |
| Jun-06 | 3685 San Fernando Road Partners, LP | $ | 235,000.00 |
| Jun-06 | Binford Medical Developers, LLC | $ | 170,000.00 |
| Jun-06 | USA Investors VI, LLC (Marquis Hotel) | $ | 95,000.00 |
| Jun-06 | Southern California Land Development LLC (Hesperia II) | $ | 50,000.00 |
| Jun-06 | Brookmere LLC and Lord Essex Matteson LLC | $ | 36,987.48 |
| Jun-06 | Bay Pomano Beach LLC | $ | 22,942.05 |
| | **Total** | $ | 3,664,389.34 |
| | **Damages from Diminution 1 YR Accrual of Default Interest and Late Fees** 16% | $ | 586,302.29 |

| | **Total Damages for Administrative Expense Claim as of May 17, 2007** | $ | 1,502,399.63 |

Exhibit B



LEWIS AND ROCA
——— LLP ———
L A W Y E R S

Rob Charles

3993 Howard Hughes Pkwy., Suite 600
Las Vegas, Nevada 89169

Direct Dial: (702) 949-8320
Direct Fax: (702) 949-8321
RCharles@LRLaw.com
Admitted in: Arizona and Nevada

Our File Number: 47419-00003

April 27, 2007

Report to Direct Lenders – Placer County Land Speculators LLC

Dear Direct Lenders:

We write on behalf of the USACM Liquidating Trust. As of April 11, 2007, the Trust is
the successor servicer of your loans as a result of confirmation of the Debtors' Third
Amended Joint Plan of Reorganization filed by, among others, USA Commercial
Mortgage Company ("USACM").

We enclose your Monthly Statement that was prepared from the information turned over
to the Trust by USACM. Please contact us in writing or by email if you see problems
with the statement.

This status report concerns two loans.

**Placer Vineyards 1 (First) Loan**

The Placer Vineyards first loan is owed by Placer County Land Speculators, LLC
("Borrower") to 343 investors. The loan was originated on December 10, 2004 and
matured on June 20, 2006. The loan is evidenced by a Promissory Note Secured by a
Deed of Trust (the "First Note") dated December 10, 2004, with an original principal
amount of $27,500,000, which could be increased by future advances to $31,500,000.
The Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("First
Deed of Trust") was recorded on December 20, 2004 as Document Number 2004-
0169766 in the Official Records of Placer County, California.

**Placer Vineyards 2 ("Second") Loan**

The Placer Vineyards second loan is owed by Borrower to 118 investors. The loan was
originated on December 10, 2004, and matured on June 20, 2006. This loan is evidenced
by a Promissory Note Secured by a Deed of Trust (the "Second Note") dated December
10, 2004, with an original principal amount of $6,500,000. The Deed of Trust,
Assignment of Rents, Security Agreement and Fixture Filing ("Second Deed of Trust")
was recorded on December 20, 2004 as Document Number 2004-0169767 in the Official
Records of Placer County, California.



**LEWIS AND ROCA** ——LLP—— LAWYERS

Rob Charles

3993 Howard Hughes Pkwy., Suite 600
Las Vegas, Nevada 89169

Direct Dial: (702) 949-8320
Direct Fax: (702) 949-8321
RCharles@LRLaw.com
Admitted in: Arizona and Nevada

Our File Number: 47419-00003

April 27, 2007

Report to Direct Lenders – Placer County Land Speculators LLC

Dear Direct Lenders:

We write on behalf of the USACM Liquidating Trust. As of April 11, 2007, the Trust is the successor servicer of your loans as a result of confirmation of the Debtors' Third Amended Joint Plan of Reorganization filed by, among others, USA Commercial Mortgage Company ("USACM").

We enclose your Monthly Statement that was prepared from the information turned over to the Trust by USACM. Please contact us in writing or by email if you see problems with the statement.

This status report concerns two loans.

**Placer Vineyards 1 (First) Loan**

The Placer Vineyards first loan is owed by Placer County Land Speculators, LLC ("Borrower") to 343 investors. The loan was originated on December 10, 2004 and matured on June 20, 2006. The loan is evidenced by a Promissory Note Secured by a Deed of Trust (the "First Note") dated December 10, 2004, with an original principal amount of $27,500,000, which could be increased by future advances to $31,500,000. The Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("First Deed of Trust") was recorded on December 20, 2004 as Document Number 2004-0169766 in the Official Records of Placer County, California.

**Placer Vineyards 2 ("Second") Loan**

The Placer Vineyards second loan is owed by Borrower to 118 investors. The loan was originated on December 10, 2004, and matured on June 20, 2006. This loan is evidenced by a Promissory Note Secured by a Deed of Trust (the "Second Note") dated December 10, 2004, with an original principal amount of $6,500,000. The Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Second Deed of Trust") was recorded on December 20, 2004 as Document Number 2004-0169767 in the Official Records of Placer County, California.



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

Direct Lenders – Placer County Land Speculators
May 7, 2007
Page 3

On January 25, 2007, the Placer County Planning Commission recommended
Amendments to the General Plan and to approve the Placer Vineyards Specific Plan
dated December 2006.[1]

USACM had the Property appraised by Hilco Real Estate Appraisal, LLC. during the
bankruptcy case. In a report dated July 18, 2006, Hilco valued the two non-contiguous
tracts together and determined the market value to be $25,400,000. Hilco reports the
Property contains about 338.3 acres.

A Direct Lender has represented to the USACM Trust (and we have seen a copy of the
following appraisal):

> According to the appraisal done by Stevers, Jordan & Ziegermeyer on
> 12/21/04, the market as-is-value with no entitlements was $33,830,000 for
> the 338-acre parcel secured under the PV loan. He reported a hypothetical
> value of $67,660,000 upon final approval of Placer Vineyards Specific
> Plan, which was approved by the Planning Commission in January 2007.[2]

Mesirow Interim Financial Management, LLC ("Mesirow") reported to the Trust about
the time the Trust became the servicer on the loan that a local broker had received an
offer for the Property at $120,000 per acre. Mesirow believes that the property is
currently worth $125,000 per acre. Based on the Hilco appraisal, the indicated value
ranges between $40,560,000 and $42,250,000. On April 18, 2007, the USACM Trust
received an unsolicited offer for the Property for $35,000,000, less the unpaid taxes and
assessments described below.

**Loan Balances**

According to the records turned over to the Trust by USACM, the outstanding balance of
the First Loan, the Second Loan, and fees owed by the Borrower to the Loan Servicer are
as follows:

---

[1] http://www4.placer.ca.gov/upload/cdr/planning/pc/pcactionsjan25.pdf.
[2] A copy of portions of this appraisal has been provided to the USACM Trust.



| As of April 30, 2007 | | | | |
|---|---|---|---|---|
| **Placer Vineyards 1ˢᵗ** | | **Placer Vineyards 2ᵈ** | | |
| Principal | $31,500,000.00 | Principal | | $6,500,000.00 |
| Regular Interest | 6,392,940.43 | Regular Interest | | 1,652,258.53 |
| Default Interest | 3,855,961.45 | Default Interest | | 415,291.96 |
| Late Fees | 221,781.46 | Late Fees | | 59,771.81 |
| Other Fees | | Other Fees | | |
| **Total** | **$41,970,683.33** | **Total** | | **$8,627,322.31** |
| Per diem (Regular) | $12,882.96 | Per Diem (Regular) | | $3,526.96 |
| Per Diem (Default) | 7,729.77 | Per diem (Default) | | 881.74 |

In addition, USACM's books indicate that Borrower owed USACM $932,534 as a loan fee on the Placer Vineyards 1ˢᵗ Loan, and $28,716 on the Placer Vineyards 2nᵈ Loan.

## Initial Steps

The Trust joined with USA Capital Diversified Trust Deed Fund LLC ("Diversified") in bringing an involuntary bankruptcy petition against USAIP, in the United States Bankruptcy Court, Las Vegas, Nevada, which controls the Borrower. The Trust and Diversified immediately asked the bankruptcy court in the USAIP involuntary bankruptcy case to appoint a Trustee for USAIP. On the Court's Order, the United States Trustee appointed Lisa M. Poulin as the USAIP Interim Trustee. The USACM Liquidating Trustee and counsel met with Ms. Poulin and her counsel at Gordon & Silver on April 25, 2007 to discuss, among other things, their plan for repaying the loans. We hope to report meaningful progress to you within 30 days. We conveyed to Ms. Poulin and her counsel that we cannot wait much longer before commencing foreclosure proceedings on the Loans. To that end, the Trust will engage California counsel to prepare foreclosure documentation. We will order a Trustee Sale Guaranty report, which is a title report necessary to a prudent foreclosure. We have asked Robert Russell, nominally the manager of the Borrower, to work with us and Ms. Poulin in immediately obtaining a refinancing of the Loans or other satisfactory arrangements for their payment.

## Servicing Issues

Let us now mention four issues that are the topic of much conversation among lenders.



*Default Interest.* The Trust does not believe that it may collect default interest as servicer of the Loans before you are paid principal and interest. If anyone tells you that Compass Partners, LLC or anyone else says that default interest must be paid to the servicer before the lenders receive principal and interest, please understand that the Trust has not and does not intend to take this position.

There is a separate default interest issue that we have not resolved. Default interest payable on the Placer Vineyards 1st Loan would be payable before any sums due on the Placer Vineyards 2nd Loan. Whether that issue is material will be known when we have a proposal for payment of the Loans.

*Taxes.* There are unpaid taxes owed to Placer County, California that are secured by a lien which is senior to repayment of the Loans. A portion of those taxes were paid by USAIP around April 8, 2007, but the check was returned as a result of USAIP's receivership and subsequent involuntary bankruptcy. The unpaid taxes amount to $671,434.55 as of April 16, 2007. Additional sums will come due until paid.

While it is clear under the deed of trust that Direct Lenders may advance funds for the real estate taxes, it is not as clear under the Loan Servicing Agreement that the servicer may do so on your behalf. Even so, if the Trust has the ability to do so, its advance for the taxes would protect your interest as lenders, as the taxes are senior to consensual security interests like your deed of trust.

The Trust requests your agreement that if the Trust advances its funds to pay the balance of the taxes, then the advance will be deemed made on behalf of the Lenders, to be recovered before you receive payment, with interest on the advance at the prime rate of interest. This advance protects your collateral and avoids the much higher interest rate charged by Placer County. We ask that you sign and return the attached consent form to let us know that you agree. But please understand that if we do not hear from you, we will assume that you agree to this proposal.

*Servicing Fees.* Any annual servicing fees you may have owed were affected by confirmation of the Plan. The only annual servicing fee that the Trust intends to collect is from the date of the USACM bankruptcy filing forward, calculated at the rate set forth in the documents served on you with the Plan, unless you demonstrate that a different rate applies. If there is a dispute about servicing fees, we will work it out with you.



LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

Direct Lenders – Placer County Land Speculators
May 7, 2007
Page: 6

*Development Expenses.* The Borrower has advised the Trust that a group of owners of property in the Placer County development have billed the Borrower $364,805 for its share of development expenses incurred in obtaining zoning and other entitlements for the property. The Trust is considering whether to pay this bill to avoid your collateral being adversely affected by the nonpayment. Borrower has advised the Trust that if this bill is not paid, your collateral will not obtain the zoning entitlements that would allow it to be developed and sold as part of the initial phase of the project. Borrower says that without making the payment, your collateral will effectively be farm land for the next several years. The Trust will need the consent of the Lenders that if the Trust advances its funds to pay this billing, then the advance will be deemed made on behalf of the Lenders, to be recovered before you receive payment, with interest on the advance at the prime rate of interest.

## Future Reports

This report, and subsequent reports, will be posted on the USACM Liquidating Trust website. If you need additional information, or if you have questions or concerns, please contact the Trust as Servicing Agent at the following:

| USACM Liquidating Trust<br>Geoffrey L. Berman, Trustee<br>Matthew P. Sorenson<br>Email: msorenson@dsi.biz<br>Development Specialists, Inc.<br>333 South Grand Avenue, Suite 4070<br>Los Angeles, CA 90071-1544<br>Facsimile: (213) 617-2718<br>Telephone: (213) 617-2717 | Lewis And Roca LLP<br>Rob Charles<br>Susan M. Freeman<br>Email: RCharles@LRLaw.com<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, Nevada 89169-5996<br>Facsimile: (702) 949-8321<br>Telephone: (702) 949-8320<br>*Attorneys for the USACM Liquidating Trust* |

Dated: April 17, 2007

| **USACM Liquidating Trust**<br>Geoffrey L. Berman, Trustee | **Lewis And Roca LLP**<br>Rob Charles<br>Susan M. Freeman<br>Counsel for USACM Liquidating Trust |



AGREEMENT:

☐    I agree that the USACM Liquidating Trust will be repaid for sums advanced either to pay taxes on the collateral for the Placer Vineyards Loans, or to pay the billing for development work on the collateral, with interest at the prime rate from the date of advance, from sums collected on the Loans, before I receive payment.

_____

Lender Signature

_____

Lender Name (print or type)

_____

Lender Number From Statement (print or type)

_____

Date

Exhibit C

David T. Cohen (TX Bar No. 75008424)
Alexandra P. Olenczuk (TX Bar No. 24033924)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, #1700
Fort Worth, TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com
Email:  aolenczuk@warnerstevens.com

*and*

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
3085 South Jones Blvd., Suite C
Las Vegas. Nevada 89146
Tel:    (702) 369-3724
Fax:    (702) 369-0651
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*

E-FILED ON: MARCH 14, 2007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re: )<br><br>USA COMMERCIAL MORTGAGE COMPANY, )<br>　　　　Debtor. ) | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In Re: )<br>USA CAPITAL REALTY ADVISORS. LLC. )<br>　　　　Debtor. ) | Chapter 11 |
| In Re: )<br>USA CAPITAL DIVERSIFIED TRUST DEED )<br>FUND. LLC. )<br>　　　　Debtor. ) | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In Re: )<br>USA CAPITAL FIRST TRUST DEED FUND. )<br>LLC. )<br>　　　　Debtor. ) | ADMINISTRATIVE EXPENSE<br>CLAIM OF SIERRA LIQUIDITY<br>FUND, L.L.C.. AND REQUEST FOR<br>PAYMENT THEREOF |
| In Re: )<br>USA SECURITIES, LLC. )<br>　　　　Debtor. ) | [Affidavit of James S. Riley filed<br>concurrently herewith] |
| Affects: ) | |



| □ All Debtors | ) | Hearing Date: April 26, 2007 |
| ■ USA Commercial Mortgage Company | ) | Hearing Time: 9:30 a.m |
| □ USA Securities, LLC | ) | Objection Deadline: March 29, 2007 |
| □ USA Capital Realty Advisors, LLC | ) | |
| □ USA Capital Diversified Trust Deed Fund, LLC | ) | |
| □ USA Capital First Trust Deed Fund, LLC | ) | |
| | ) | |

> **If you object to the relief requested herein, you *must* timely file a WRITTEN response to this pleading with the Court. You must also serve your written response on the person who sent you this notice.**
>
> **If you do not timely file a written response with the Court, or if you do not serve your written response on the person who sent you this notice, then:**
>
> - **The Court may *refuse to allow you to speak* at the scheduled hearing; and**
> - **The Court may *rule against you* without formally calling the matter at the hearing.**

Sierra Liquidity Fund, L.L.C. ("Sierra"), hereby files this administrative expense claim and request for payment thereof (the "Request"), and respectfully states as follows:

## A.    REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE

1.    These cases were commenced by the filing of voluntary Chapter 11 petitions by the above-entitled Debtors (the "Debtors") on April 13, 2006 (the "Petition Date").

2.    On January 8, 2007, the Bankruptcy Court entered its Order confirming the "Debtors' Third Amended Joint Plan of Reorganization, as Modified Herein" (the "Plan"). The Plan provides that the deadline for the filing of Administrative Expense Claims against the Debtors is 30 days after the Effective Date. See section B.1.c.i. of the Plan. As this deadline has not occurred as of the date of the filing of this Request, this Request is timely filed.

3.     Sierra is the assignee of those notes, deeds of trust and other rights connected therewith as set forth on Exhibit "A" attached hereto (all collectively referred to herein as the "Loans"). Debtor USA Commercial Mortgage Company ("USA Commercial") purports to be the servicer of these Loans under loan servicing agreements (the "Loan Servicing Agreements") between USA Commercial and the assignors of the Loans.

4.     To the extent that Loan Servicing Agreements exist with respect to one or more of the Loans and further that Sierra is bound by the terms of the Loan Servicing Agreements, then USA Commercial has contractual obligations to Sierra. To the extent that the Loan Servicing Agreements do not exist or are not binding on Sierra, yet USA Commercial is nevertheless purporting to service one or more of the Loans, then USA Commercial has fiduciary duties to Sierra in purporting to act as servicer of the Loans.

5.     From and after the Petition Date, one or more of the Loans became non-performing or continued to be non-performing, such that it was the responsibility and obligation of USA Commercial to protect the interests of Sierra. Evidence of the non-performing status of Loans in which Sierra holds an interest is set forth in Exhibit "B" hereto, which consists of USA Commercial's report dated July 31, 2006.

6.     To the extent that Sierra is bound by the Loan Servicing Agreements, then Section 2.(c)(i) and (ii) of the Loan Servicing Agreements provides that USA Commercial is required to:

(i)     Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

and

(ii)     In the event the Borrower fails to make any payment to USA [Commercial] as required by the terms of the note, USA [Commercial] will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed

necessary or appropriate by USA [Commercial] in its business judgment to fully protect the interests of the Lender. and of all Lenders in the loan.

A true and correct sample of what Sierra is informed and believes is a typical Loan Servicing Agreement is attached hereto as Exhibit "C."

7.    Sierra is informed and believes that from and after the Petition Date, USA Commercial failed to take such action as required under the above-quoted sections of the Loan Servicing Agreements. Sierra is informed and believes that with respect to non-performing Loans. USA Commercial failed to send notices of foreclosure, to commence or pursue foreclosure proceedings, or take such other action as required. thus breaching its duty to Sierra.

8.    To the extent Sierra is not a party to or bound by the Loan Servicing Agreements. then USA Commercial's failure to act reasonably as a purported servicer of the Loans is a breach of USA Commercial's fiduciary duty to Sierra as imposed under the law.

## B.    CALCULATION OF ADMINISTRATIVE EXPENSE CLAIM

9.    The pool of loans serviced by USA Commercial generally falls into two categories:

(1)    Acquisition and pre-development loans to residential and commercial developers ("Predevelopment Loans") on unimproved real property. A typical loan would be on a multi-acre site in which a developer needs a "bridge loan" to acquire property and obtain all entitlements required to build thereon. These are typically one to two year loans. during which time the developer seeks to complete the permit process and fund a construction and development loan from a full service lender.

(2)    Acquisition and improvement loans ("Improvement Loans"). These are loans where a builder purchases improved property and enters into an agreement to increase the loan incrementally as pre-approved improvements are made. A typical

loan may be on an apartment complex with additional funds available for rehabilitating and converting to a for-sale condominium project.

1.     **Damages Due to Decline in Value of the Underlying Real Property.**

10.     During the Chapter 11 cases, several of the Predevelopment Loans held by Sierra have either become non-performing or have continued to be non-performing. Based on general market declines in value and Sierra's knowledge of the specific properties, Sierra calculates that the value of the real property underlying the non-performing Predevelopment Loans held by Sierra has declined by at least 25%. USA Commercial's failure timely to foreclose or otherwise to protect the interests of Sierra in these non-performing Predevelopment Loans has damaged Sierra.

11.     The following is a list of Predevelopment Loans in which Sierra holds an interest and which became non-performing during the Chapter 11 cases or which continued to be non-performing during the Chapter 11 cases. The list sets forth the principal amount of Sierra's interests and a calculation of Sierra's damages or losses as a percentage of the total principal amount of the loan. In addition, Sierra assumes that the value of the underlying real property approximately equaled the loan amounts at the time of the origination of the loan.

| Date Listed as Non-Performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | 3685 San Fernando Road | | $235,000.00 |
| Jul-06 | Binford Medical | | $170,000.00 |
| Jun-06 | Brookmere | | $36,987.00 |
| Jun-06 | Hesperia II | | $50,000.00 |
| Jun-06 | Margarita Annex | | $425,000.00 |
| Jul-06 | Oak Shores II | | $239,000.00 |
| Jun-06 | Placer Vineyards | | $810,000.00 |
| Jun-06 | Marquis Hotel | | $45,000.00 |

| | | | |
|---|---|---|---|
| | Total | | $2,010,987.00 |
| | Damages | 25% | $502,746.75 |

12.    Sierra holds one Improvement Loan that has become non-performing or has continued to be non-performing during the Chapter 11 cases. The value of that underlying real property has declined 25%. As a result of USA Commercial's failure to timely foreclose on the Improvement Loan, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |

| | | | |
|---|---|---|---|
| Total | | | $650,000.00 |
| Decline in Value (Damages) | | 25% | $162,500.00 |
| Damages | | | $162,500.00 |

## 2.    Damages Due to the Improper Charge of "Default Interest".

13.    In addition to the decline in value, Sierra is informed and believes that in the event of foreclosure on any non-performing loan, be it a Predevelopment or Improvement Loan, that USA Commercial or Compass will seek to recover from any sale proceeds an amount equal to the default interest that the borrower would have been obligated to pay under the terms of the loan had the borrower made payments as required. The Servicing Agreements, however, do not allow for the collection by USA Commercial of such "default interest" upon foreclosure. Section 5(c) of the Servicing Agreement allows only for payment to the servicer of "default interest collected from the Borrower pursuant to the terms of the Note." (Emphasis added.) Upon a foreclosure, there is no "default interest collected from the Borrower" and so the retention of such amount by USA Commercial or any other purported servicer upon a foreclosure is improper, unlawful and will damage Sierra equal to the amount of such "default interest." Sierra is informed and believes that USA Commercial will take the position that upon foreclosure it is entitled to retain as "default interest" the difference between the default rate of interest and the non-default rate of interest. Sierra is informed and believes that this difference is 8% per year, which is the amount of "default

interest" that USA Commercial will seek to retain from foreclosure sale proceeds. In the event USA Commercial contends that "default interest" is the entire default interest rate, and not just the difference between the default and the non-default interest rate, then Sierra reserves the right to amend this Request to add such amount as additional damages.

14.    In the event that it is determined that USA Commercial is entitled to "default interest" from foreclosure sale proceeds, which entitlement Sierra denies, then Sierra was damaged by USA Commercial's failure to timely foreclose on the underlying real property and thereby incurring the "default interest." Rather than protect Sierra's interests, USA Commercial instead delayed in conducting foreclosure sales in order to incur such "default interest" which it then would seek to collect from foreclosure sale proceeds.

15.    As a result of USA Commercial's failure to promptly foreclose on the non-performing loans, therefore, Sierra has been doubly hurt in that values of the properties have declined and further that such depressed values will be subject to payment of "default interest" to USA Commercial. Had USA Commercial promptly acted, USA Commercial could have foreclosed on the properties when market values were higher and before "default interest" had been incurred.

16.    To summarize, with respect to Predevelopment Loans, Sierra has been damaged as follows:

| Date Listed as Non-Performing | PROPERTY | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|
| Jun-06 | 3685 San Fernando Road | $235,000.00 |
| Jul-06 | Binford Medical | $170,000.00 |
| Jun-06 | Brookmere | $36,987.00 |
| Jun-06 | Hesperia II | $50,000.00 |
| Jun-06 | Margarita Annex | $425,000.00 |
| Jul-06 | Oak Shores II | $239,000.00 |
| Jun-06 | Placer Vineyards | $810,000.00 |
| Jun-06 | Marquis Hotel | $45,000.00 |
| | Total | $2,010,987.00 |

| Decline in Value (Damages) | 25% | $502,746.75 |
|---|---|---|
| "Default Interest" Delta | 10%[1] | $201,098.70 |
| Total Damages | | $703,845.45 |

17.    With respect to Improvement Loans, Sierra has been damaged as follows:

| Date Listed as Non-performing | PROPERTY | | PRINCIPAL AMOUNT OF INVESTMENT |
|---|---|---|---|
| Jun-06 | Gramercy Court | | $650,000.00 |

| | | | |
|---|---|---|---|
| Total | | | $650,000.00 |
| Decline in Value (Damages) | | 25% | $162,500.00 |
| "Default Interest" Delta | | 10% | $65,000.00 |
| Total Damages | | | $227,500.00 |

18.    In addition to the foregoing, Sierra has been damaged by incurrence of additional and continuing loan service fees of between 1-3% per year, lost opportunity costs and legal fees and costs according to proof.

19.    The analysis set forth above assumes that the Loan Servicing Agreements are binding on Sierra. In the event that Sierra is not bound by the Loan Servicing Agreements, Sierra, in addition to the above damages, will hold a damage claim against the Debtors for breach of their fiduciary duty, in an amount to be determined according to proof.

20.    Sierra reserves the right to (i) amend or supplement this Request, and (ii) assert or file additional claims.

21.    All notices respecting this Request should be sent to the following:

David T. Cohen, Esq.
Warner Stevens, L.L.P.
301 Commerce Street, Suite 1700

---

1 While Sierra is informed and believes that the difference between the non-default and the default rate of interest is 8% per year, Sierra further assumes a default pre-foreclosure period of 15 months, equating to 1.25 years, and therefore calculates "Default Interest" Delta damages at 10% (8% x 1.25 = 10%). To the extent that the default pre-foreclosure period is longer than 15 months, then damages on account of improperly retained "default interest" will be higher and Sierra reserves the right to amend this Request to so reflect.

Fort Worth. Texas 76102
Tel.: (817) 810-5250
Facsimile: (817) 810-5255
e-mail: dcohen@warnerstevens.com

## CONCLUSION

WHEREFORE, Sierra respectfully requests that the Court enter an order (i) granting Sierra

an allowed administrative expense claim pursuant to Section 503 of the Bankruptcy Code in the

amount set forth above or otherwise as determined according to proof, (ii) directing the Debtors to

make payment of such allowed administrative expense claim; and (iii) providing for such other and

further relief that the Court may deem just and proper.

Dated: March 14, 2007                     Respectfully submitted:


By:   /S/ DAVID T. COHEN___
David T. Cohen (TX Bar No. 75008424)
**WARNER STEVENS, L.L.P.**
301 Commerce Street. #1700
Fort Worth. TX 76102
Tel:    (817) 810-5250
Fax:    (817) 810-5255
Email:  dcohen@warnerstevens.com

            *and*

Michelle L. Abrams (NV Bar No. 5565)
**MICHELLE L. ABRAMS, LTD.**
3085 South Jones Blvd.. Suite C
Las Vegas. Nevada 89146
Tel:    (702) 369-3724
Fax:    (702) 369-0651
Email:  mabrams@mabramslaw.com

*Counsel for Sierra Liquidity Fund, L.L.C.*

# Declaration of James Riley

**DECLARATION OF JAMES RILEY IN SUPPORT OF RESPONSE BY SIERRA LIQUIDITY FUND, LLC TO THE OBJECTIONS OF USA COMMERCIAL MORTGAGE COMPANY AND USACM LIQUIDATION TRUST TO THE ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND, LLC**

I, James Riley, hereby declare, verify and state as follows:

1.        I am Manager of Sierra Liquidity Fund, LLC ("Sierra") and am over the age of 18 years.  I have personal knowledge of the facts and assertions set forth in this declaration and if called to testify would do so in accordance herewith.

2.        A significant portion of my business involves assessing the value of real property wherever situated.  I am familiar with and regularly keep aware of the values of land and developed or developing properties throughout the country in general.  It is my understanding and belief, and has been widely publicized in the financial press, that a significant deterioration in land and development property has generally occurred over the past year.  Major homebuilders such as Pulte Homes Inc., Lennar Corporation, KB Home, Toll Brothers, Inc., etc., have all reported significant write downs of land inventory during the third and fourth quarters of 2006.  It is my estimation, and the estimation of other industry publishers and experts, that the approximate percentage decline in values on average has been in the area of twenty five percent (25%).

3.        Attached hereto as Exhibit A is a true and correct printout from an Excel spreadsheet setting forth the amount of Sierra's damages by way of its administrative expense claim.  The figures set forth in the top table were arrived at by computing Sierra's principal balance in each of the various loans and determining the diminution in value thereof by deducting twenty five percent (25%) consistent with Paragraph "2" of this declaration.  The figures set forth in the bottom table were arrived at by computing

1

Sierra's principal balance in each of the various loans and multiplying said amount by

sixteen percent (16%) which represents the anticipated amount of default interest and

late fees that Compass Partners, LLC has expressed an intention to improperly collect.

    4.       Attached hereto as Exhibit B is a true and correct copy of a letter that

Sierra received dated April 27, 2007 from counsel for USACM Liquidating Trust.

    5.       Attached hereto as Exhibit C is a true and correct copy of the

ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND, L.L.C., AND

REQUEST FOR PAYMENT THEREOF as originally filed on March 14, 2007.

    6.       Sierra has made numerous written and verbal requests upon USACM and

Compass throughout the bankruptcy proceedings seeking clarification on the priority of

payment of default interest and late fees in the event of a foreclosure and never once got

a definitive answer from either USACM or Compass, only innuendos that Compass and

USACM believed the Servicer had the right to deduct default interest and late fees

senior in right of payment to Direct Lender principal and interest, even in the event of a

foreclosure and consequent sale that does not provide for a full recovery of principal and

interest to the Direct Lenders.

2

I declare under penalty of perjury that the foregoing statements are true and correct according to my best knowledge, information and belief.

Executed this 18 day of May, 2007.

James Riley, Manager
Sierra Liquidity Fund, LLC

3

WILDE HANSEN LLP.                                    Electronically Filed on 5/18/07
Gregory L. Wilde, Esq.
Nevada Bar No. 4417
Marianne Gatti, Esq.
Nevada Bar No. 7717
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200 / Fax: 702 258-8787
bk@wildelaw.com
Attorneys for Sierra Liquidity Fund, LLC.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor(s). | **Case No. BK-S-06-10725-LBR**<br>**Case No. BK-S-06-10726-LBR**<br>**Case No. BK-S-06-10727-LBR**<br>**Case No. BK-S-06-10728-LBR** |
| In Re:<br>USA CAPITAL REALTY ADVISORS, LLC.,<br>Debtor(s). | Chapter 11 |
| In Re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC.,<br>Debtor(s). | Jointly Administered Under<br>Case No. BK-S-06-10725-LBR<br><br>CERTIFICATE OF SERVICE OF |
| In Re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor(s). | RESPONSE BY SIERRA<br>LIQUIDITY FUND, LLC TO THE<br>OBJECTIONS OF USA |
| In Re:<br>USA SECURITIES, LLC.<br>Debtor(s). | COMMERCIAL MORTGAGE<br>COMPANY AND USACM<br>LIQUIDATON TRUST TO THE |
| □ All Debtors<br>■USA Commercial Mortgage Company<br>□ USA Securities, LLC<br>□ USA Capital Realty Advisors, LLC<br>□ USA Capital Diversified Trust Deed Fund, LLC<br>□ USA Capital First Trust Deed Fund, LLC<br>□ USA Securities, LLC | ADMINISTRATIVE EXPENSE<br>CLAIM OF SIERRA LIQUIDITY<br>FUND, LLC |

1. On __May 18, 2007__ *(date)* I served the following documents(s) *(specify)*:
RESPONSE BY SIERRA LIQUIDITY FUND, LLC TO THE OBJECTIONS OF USA
COMMERCIAL MORTGAGE COMPANY AND USACM LIQUIDATON TRUST TO
THE ADMINISTRATIVE EXPENSE CLAIM OF SIERRA LIQUIDITY FUND, LLC.

2. I served the above-named document(s) by the following means to the persons as listed below:

*(Check all that apply)*

■ **a. ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

MICHELLE L. ABRAMS    mabrams@mabramslaw.com

FRANKLIN C. ADAMS    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com

NANCY L ALLF    nallf@parsonsbehle.com,

klawrence@parsonsbehle.com;tthomas@parsonsbehle.com;ecf@parsonsbehle.com

FRANK A. ANDERSON    anderson.frank@pbgc.gov, efile@pbgc.gov

OGONNA M. ATAMOH    oatamoh@nevadafirm.com,

bkecf@nevadafirm.com;paltstatt@nevadafirm.com;sliberio@nevadafirm.com

KERIANN M ATENCIO    ATENCIOK@GTLAW.COM

BMC GROUP, INC.    evrato@bmcgroup.com,

ecf@bmcgroup.com;jmiller@bmcgroup.com;jbartlett@bmcgroup.com

GEORGANNE W. BRADLEY    georganne.bradley@bullivant.com, mary.opatrny@bullivant.com

KELLY J. BRINKMAN    kbrinkman@gooldpatterson.com

THOMAS R BROOKSBANK    tom@tombrooksbank.com, renee@tombrooksbank.com

ANDREW M. BRUMBY    abrumby@shutts-law.com, rhicks@shutts-law.com;lmackson@shutts-law.com

LOUIS M. BUBALA    lbubala@jonesvargas.com,

tbw@jonesvargas.com;bjlingenfelter@jonesvargas.com

MATTHEW Q. CALLISTER    mqc@callister-reynolds.com, maggie@callister-reynolds.com

CANDACE C CARLYON    ltreadway@sheacarlyon.com,

ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rmsmith@sheacarlyon.com

ROB CHARLES    rcharles@lrlaw.com, cjordan@lrlaw.com

MICHAEL W. CHEN    yvette@ccfirm.com

KEVIN B. CHRISTENSEN    kbchrislaw@aol.com

JANET L. CHUBB    tbw@jonesvargas.com

EDWARD S. COLEMAN    mail@coleman4law.com

WILLIAM D COPE    cope_guerra@yahoo.com

LAUREL E. DAVIS    ldavis@fclaw.com, mhurtado@fclaw.com;ldavisesq@aol.com

DEBT ACQUISITION COMPANY OF AMERICA V, LLC (tf)    tfette@daca4.com

THOMAS H. FELL    BANKRUPTCYNOTICES@GORDONSILVER.COM

ARLEY D FINLEY    TFINLEY@DIAMONDMCCARTHY.COM

SCOTT D. FLEMING    sfleming@halelane.com, dbergsing@halelane.com

GREGORY E GARMAN    bankruptcynotices@gordonsilver.com

DOUGLAS D. GERRARD    DGERRARD@GERRARD-COX.COM

WADE B. GOCHNOUR    wgochnour@hwmlvlaw.com, donnat@hwmlvlaw.com

CARLOS A. GONZALEZ    carlos.gonzalez2@usdoj.gov,

Darlene.Ruckard@usdoj.gov;Eunice.Jones@usdoj.gov;Sue.Knight@usdoj.gov

GERALD M GORDON    bankruptcynotices@gordonsilver.com=

R. VAUGHN GOURLEY    vgourley@lvcm.com

TALITHA B. GRAY    bankruptcynotices@gordonsilver.com

JAMES D. GREENE    bknotice@bhfs.com

MARJORIE A. GUYMON    bankruptcy@goldguylaw.com, ddias@goldguylaw.com

PETER W. GUYON    pguyon@yahoo.com

JEFFREY R. HALL    jhall@sheacarlyon.com,

bankruptcyfilings@sheacarlyon.com;aboehmer@sheacarlyon.com;

ltreadway@sheacarlyon.com;rmsmith@sheacarlyon.com

XANNA R. HARDMAN    xanna.hardman@gmail.com

STEPHEN R HARRIS    noticesbh&p@renolaw.biz

JEFFREY L HARTMAN    notices@bankruptcyreno.com

BRIGID M. HIGGINS    bankruptcynotices@gordonsilver.com

RICHARD F. HOLLEY    rholley@nevadafirm.com,

paltstatt@nevadafirm.com;vnelson@nevadafirm.com;sliberio@nevadafirm.com;bkecf@nevadafir

m.com

RANDOLPH L. HOWARD    rhoward@klnevada.com,

ckishi@klnevada.com;bankruptcy@klnevada.com

DAVID W. HUSTON    dwh@hustonlaw.net, swaits@hustonlaw.net

CHRISTOPHER D JAIME    cjaime@waltherkey.com, kbernhar@waltherkey.com

EVAN L. JAMES    ejameslv@earthlink.net, kbchrislaw@aol.com

ANNETTE W JARVIS    ajarvis@rqn.com

ERIN E. JONES    ejones@diamondmccarthy.com, cburrow@diamondmccarthy.com

TY E. KEHOE    TyKehoeLaw@aol.com

ROBERT R. KINAS    rkinas@swlaw.com,

jmcbee@swlaw.com;jmath@swlaw.com;imccord@swlaw.com;cdossier@swlaw.com;

lvdocket@mindspring.com

DEAN T. KIRBY    dkirby@kirbymac.com, jhebert@kirbymac.com;lackerman@kirbymac.com

ZACHARIAH LARSON    ecf@lslawnv.com

JOHN J. LAXAGUE    jlaxague@caneclark.com

GEORGE C LAZAR    glazar@foxjohns.com, gclazar@sbcglobal.net

NILE LEATHAM    nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

ROBERT C. LEPOME    rlepome@cox.net, smstanton@cox.net

ANNE M. LORADITCH    ecffilings@beckleylaw.com,

aloraditch@beckleylaw.com;pkois@beckleylaw.com

ERIC D MADDEN    emadden@diamondmccarthy.com

PATRICIA A. MARR    lvlaw03@yahoo.com

JAMES C. MCCARROLL    , dturetsky@reedsmith.com;aleonard@reedsmith.com

REGINA M. MCCONNELL    rmcconnell@kssattorneys.com

WILLIAM L. MCGIMSEY    lawoffices601@lvcoxmail.com

RICHARD MCKNIGHT    mcknightlaw@cox.net,

gkopang@lawlasvegas.com;cburke@lawlasvegas.com

JEANETTE E. MCPHERSON    bkfilings@s-mlaw.com;info@s-mlaw.com

JEANETTE E. MCPHERSON    bkfilings@s-mlaw.com;info@s-mlaw.com

SHAWN W MILLER    bankruptcyfilings@sheacarlyon.com,

smiller@sheacarlyon.com;aboehmer@sheacarlyon.com;ltreadway@sheacarlyon.com;rsmith@sh

eacarlyon.com

DAVID MINCIN    mcknightlaw@cox.net,

gkopang@lawlasvegas.com;dmincin@lawlasvegas.com,cburke@lawlasvegas.com

JOHN F MURTHA    jmurtha@woodburnandwedge.com]

ERVEN T. NELSON    erv@rlbolick.com, susan@rlbolick.com

VICTORIA L NELSON    bkecf@nevadafirm.com,

vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rholley@nevadafirm.com;

sliberio@nevadafirm.com

BOB L. OLSON    ecffilings@beckleylaw.com,

bolson@beckleylaw.com;dgriffis@beckleylaw.com

DONNA M. OSBORN    ebaker@marquisaurbach.com,

dosborn@marquisaurbach.com;tszostek@marquisaurbach.com;

kgallegos@MarquisAurbach.com

CHRISTINE M PAJAK    cpajak@stutman.com, ekarasik@stutman.com

ANDREW M. PARLEN    aparlen@stutman.com

DONALD T. POLEDNAK    sandplegal@yahoo.com, spbankruptcy@yahoo.com

PAUL C RAY    info@johnpeterlee.com

CHRISTINE A ROBERTS    bankruptcy@rocgd.com

SUSAN WILLIAMS SCANN    sscann@deanerlaw.com, palexander@deanerlaw.com

LENARD E. SCHWARTZER    bkfilings@s-mlaw.com

JAMES PATRICK SHEA    bankruptcyfilings@sheacarlyon.com,

ltreadway@sheacarlyon.com;rmsmith@sheacarlyon.com;aboehmer@sheacarlyon.com

SHLOMO S. SHERMAN     ssherman@sheacarlyon.com,

aboehmer@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;

ltreadway@sheacarlyon.com;rmsmith@sheacarlyon.com

AMBRISH S. SIDHU     ecf@lslawnv.com

JEFFREY G. SLOANE     gjklepel@yahoo.com, rmcconnell@kssattorneys.com

ALAN R SMITH     mail@asmithlaw.com,

turk@asmithlaw.com;marsh@asmithlaw.com;darby@asmithlaw.com

DAVID A. STEPHENS     dstephens@lvcm.com

PETER SUSI     cheryl@msmlaw.com, msm@msmlaw.com

JEFFREY R. SYLVESTER     jeff@sylvesterpolednak.com

ROLLIN G. THORLEY     rollin.g.thorley@irscounsel.treas.gov

AMY N. TIRRE     , lmccarron@kkbrf.com

AMY N. TIRRE     atirre@kkbrf.com, lmccarron@kkbrf.com

U.S. TRUSTEE - LV - 11     USTPRegion17.lv.ecf@usdoj.gov

GREGORY J. WALCH     GWalch@Nevadafirm.com

RUSSELL S. WALKER     rwalker@wklawpc.com,

eloveridge@wklawpc.com;lboynton@wklawpc.com;ckirk@wklawpc.com;

rrazo@wklawpc.com;tgrover@wklawpc.com

WHITNEY B. WARNICK     wbw@albrightstoddard.com, bstessel@albrightstoddard.com

GREGORY L. WILDE     bk@wildelaw.com

WILLIAM J. WRAY     rh@oreillylawgroup.com,

rh@oreillylawgroup.com,bc@oreillylawgroup.com,

lc@oreillylawgroup.com,ddh@oreillylawgroup.com,

JOAN C WRIGHT     jwright@allisonmackenzie.com, jbrooks@allisonmackenzie.com

MATTHEW C. ZIRZOW     bankruptcynotices@gordonsilver.com

ANTHONY A. ZMAILA    azmaila@nevadafirm.com,

bkecf@nevadafirm.com;mbarnes@nevadafirm.com,paltstatt@nevadafirm.com

☐ **b. United States mail, postage fully prepaid**

*(List persons and addresses. Attach additional paper if necessary)*

☐ c. Personal Service (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ **d. By direct mail (as opposed to through the ECF System)**

*(List persons and email addresses. Attach additional paper if necessary)*

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e. By fax transmission** *(List persons and fax numbers. Attach additional paper if necessary)*

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ **f. By messenger** *(List persons and addresses. Attach additional paper if necessary)*

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

*( A declaration by the messenger must be attached to this Certificate of Service).*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on *(date)*:    5/18/07

___Catherine A. Roma_____          _____/s/ Catherine A. Roma___
(NAME OF DECLARANT)                            (SIGNATURE OF DECLARANT)