```
1              UNITED STATES BANKRUPTCY COURT

2                    DISTRICT OF NEVADA

3                    LAS VEGAS, NEVADA

4   In re:  USA COMMERCIAL MORTGAGE  )  FEBRUARY 15, 2007
    COMPANY,                         )  E-Filed:  05/22/07
5                                    )
              Debtor.                )  Case No.
6                                    )  BK-S-06-10725-LBR
    _____)  Chapter 11
7   USA COMMERCIAL MORTGAGE COMPANY, )
    et al.,                          )
8                                    )
              Plaintiffs,            )
9                                    )
        vs.                          )  Adversary No.
10                                   )  06-01256-LBR
    HMA SALES, LLC, et al.,          )
11                                   )
              Defendants.            )
12  _____)
    USA COMMERCIAL MORTGAGE COMPANY, )
13                                   )
              Plaintiff,             )
14                                   )
        vs.                          )  Adversary No.
15                                   )  06-01251-LBR
    SALVATORE REALE,                 )
16                                   )
              Defendant.             )
17  _____)
    In re:  TREE MOSS PARTNERS,      )
18                                   )
              Debtor.                )  Case No.
19                                   )  BK-S-06-13758-LBR
    _____)  Chapter 7
20  In re:  USA INVESTORS VI, LLC,   )
                                     )
21            Debtor.                )  Case No.
                                     )  BK-S-06-13925-LBR
22  _____)  Chapter 7

23          PARTIAL TRANSCRIPT OF PROCEEDINGS
                          OF
24          (06-10725) SCHEDULING CONFERENCE
         RE: AMENDED COMPLAINT FOR INTERPLEADER
25                        AND
```

1                          MOTION FOR RELIEF FROM STAY
                                      AND
2                         MOTION FOR RELIEF FROM STAY,
              COLT GATEWAY, LSA, ESTATE OF DANIEL TABAS,
3        AND FERTITTA ENTERPRISES, INC.'s MOTION FOR RELIEF
                           FROM THE AUTOMATIC STAY
4             TO TERMINATE THE LOAN-SERVICING AGREEMENT
               FOR THE DIRECT LOAN TO COLT GATEWAY, LLC
5                                     AND
           STATUS HEARING RE: MOTION TO ESTIMATE CLAIMS/
6          ESTIMATE AN ADEQUATE RESERVE FOR UNLIQUIDATED
                          AND DISPUTED CLAIMS
7        IN ORDER TO PERMIT FURTHER DISTRIBUTIONS TO FTDF MEMBERS
                                      AND
8                 (06-01256) ORDER SHORTENING TIME
               RE: LIBERTY BANK'S MOTION TO INTERVENE
9                                     AND
                  (06-13758) APPLICATION TO EMPLOY
10       SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
                    AS SPECIAL BANKRUPTCY COUNSEL
11               TO TRUSTEE JAMES F. LISOWSKI, SR.,
         WITH DECLARATION OF ANTHONY A. ZMAILA, ESQ., IN SUPPORT
12                                    AND
                  (06-13925) APPLICATION TO EMPLOY
13       SANTORO, DRIGGS, WALCH, KEARNEY, JOHNSON & THOMPSON
                    AS SPECIAL BANKRUPTCY COUNSEL
14               TO TRUSTEE JAMES F. LISOWSKI, SR.,
         WITH DECLARATION OF ANTHONY A. ZMAILA, ESQ., IN SUPPORT
15                                    AND
         (06-01256) STATUS HEARING RE: FIRST AMENDED COMPLAINT
16                                    AND
           (06-01251) STATUS HEARING RE: AMENDED COMPLAINT
17                                    AND
                    (06-10725) INITIAL HEARING
18         RE: EMERGENCY MOTION FOR APPROVAL OF PROCEDURES
                AND JOINT EMERGENCY MOTION FOR ORDER
19         RELATED TO IMPLEMENTATION OF CONFIRMED PLAN
                                      AND
20       (06-13758) TRUSTEE'S MOTION FOR APPROVAL OF PROCEDURES
             TO ESTABLISH SALE DATE AND BIDDING PROCEDURES
21         FOR THE SALE OF THE PALM SPRINGS MARQUIS VILLAS
                                   VOLUME 1
22             BEFORE THE HONORABLE LINDA B. RIEGLE
                   UNITED STATES BANKRUPTCY JUDGE
23                  Thursday, February 15, 2007
                            9:30 a.m.
24

Court Recorder:            Helen C. Smith
25       Proceedings recorded by electronic sound recording;
         transcript produced by transcription service.

```
 1   APPEARANCES:

 2   For the Debtor and        ANNETTE W. JARVIS, ESQ.
     Debtor in Possession:     Ray, Quinney & Nebeker, P.C.
 3                             36 South State 1400
                               Salt Lake City, Utah 84145
 4
                               JEANETTE E. McPHERSON, ESQ.
 5                             Schwartzer & McPherson Law Firm
                               2850 South Jones Boulevard
 6                             Suite 1
                               Las Vegas, Nevada 89146
 7
     For the First Trust       FRANK A. MEROLA, ESQ.
 8   Deed Committee:           Stutman, Treister & Glatt, P.C.
                               1901 Avenue of the Stars
 9                             Twelfth Floor
                               Los Angeles, California 90067
10
     For the Lender           ALAN R. SMITH, ESQ.
11   Protection Group:         505 Ridge Street
                               Reno, Nevada 89501
12                             (Telephonic)

13   For Liberty Bank:         AMY E. VULPIO, ESQ.
                               White and Williams, LLP
14                             1800 One Liberty Place
                               Philadelpia, Pennsylvania 19103
15                             (Telephonic)

16                             WADE B. GOCHNOUR, ESQ.
                               Haney, Woloson & Mullins
17                             1117 South Rancho Drive
                               Las Vegas, Nevada 89102
18
     For the Estate           JONATHAN J. BART, ESQ.
19   of Daniel Tabas:          Wilentz, Goldman & Spitzer, P.C.
                               90 Woodbridge Center Drive
20                             Suite 900, Box 10
                               Woodbridge, New Jersey 07095
21                             (Telephonic)

22   For Debt Acquisition     DEAN T. KIRBY, JR., ESQ.
     Company of America V,      Kirby & McGuinn, P.C.
23   LLP:                      600 B Street
                               Suite 1950
24                             San Diego, California 92101
                               (Telephonic)

25
```

4

```
1    APPEARANCES (Cont.):

2    For the Unsecured        SUSAN M. FREEMAN, ESQ.
     Creditors Committee      Lewis and Roca, LLP
3    of USA Commercial        40 North Central Avenue
     Mortgage Company:        Phoenix, Arizona 85004
4
     For the Jones Vargas     JANET L. CHUBB, ESQ.
5    Direct Lenders and       Jones Vargas
     Fertitta Enterprises,    100 West Liberty
6    Inc.:                    Twelfth Floor
                              Reno, Nevada 89501
7
     For the First Trust      CANDACE C. CARLYON, ESQ.
8    Deed Fund Investors      Shea & Carlyon, Ltd.
     Committee:               233 South Fourth Street
9                             Suite 200
                              Las Vegas, Nevada 89101
10
     For Diversified Trust    MARC A. LEVINSON, ESQ.
11   Deed Fund Committee:     CYNTHIA J. LARSEN, ESQ.
                              Orrick, Herrington & Sutcliffe
12                            400 Capitol Mall
                              Suite 300
13                            Sacramento, California 95814

14                            BOB L. OLSON, ESQ.
                              Beckley Singleton, Chtd.
15                            530 Las Vegas Boulevard South
                              Las Vegas, Nevada 89101
16
     For the United States    J. MICHAL BLOOM, ESQ.
17   Trustee:                 Office of the United States Trustee
                              300 Las Vegas Boulevard South
18                            Suite 4300
                              Las Vegas, Nevada 89101
19
     For the Direct           GREGORY E. GARMAN, ESQ.
20   Lenders Committee:       Gordon & Silver, Ltd.
                              3960 Howard Hughes Parkway
21                            Ninth Floor
                              Las Vegas, Nevada 89109
22
     For the Direct           SPENCER M. JUDD, ESQ.
23   Lenders:                 Albright, Stoddard, Warnick
                                 & Albright, P.C.
24                            Quail Park I, Building D
                              801 South Rancho Drive
25                            Las Vegas, Nevada 89106
```

```
 1   APPEARANCES (Cont.):

 2   For Salvatore J. Reale:    DOUGLAS D. GERRARD, ESQ.
                                Gerrard, Cox & Larsen
 3                              2450 St. Rose Parkway
                                Suite 200
 4                              Henderson, Nevada 89074

 5   For Dayco Fund            NILE LEATHAM, ESQ.
     Incorporation:            Kolesar & Leatham, Chtd.
 6                              3320 West Sahara Avenue
                                Suite 380
 7                              Las Vegas, Nevada 89102

 8   For James Feeney:         ZACHARIAH LARSON, ESQ.
                                Larson & Stephens
 9                              425 South Sixth Street
                                Las Vegas, Nevada 89101
10
     For Dr. Stanley           ROBERT C. LePOME, ESQ.
11   Alexander and Others:     Law Offices of Robert C. LePome
                                330 South Third Street
12                              1100-B
                                Las Vegas, Nevada 89101
13
     For USA Commercial        DAVID W. HUSTON, ESQ.
14   Mortgage Company          601 South Seventh Street
     in Interpleader Action:   Second Floor
15                              Las Vegas, Nevada 89101

16   For Compass Partners,     GEORGE A. DAVIS, ESQ.
     LLC:                      Weil, Gotshal & Manges, LLP
17                              767 Fifth Avenue
                                New York, New York 10153
18                              (Telephonic)

19   For Unknown:              ANTHONY M. ZMAILA, ESQ.
                                Santoro, Driggs, Walch, Kearney,
20                               Johnson & Thompson
                                400 South Fourth Street
21                              Third Floor
                                Las Vegas, Nevada 89101
22
     For USA Commercial        JEFFREY R. SYLVESTER, ESQ.
23   Real Estate Group:        Sylvester & Polednak, Ltd.
                                7371 Prairie Falcon Road
24                              Suite 120
                                Las Vegas, Nevada 89128
25
```

6

```
 1   APPEARANCES (Cont.):

 2   For Unknown:              RICHARD I. DREITZER, ESQ.
                               Attorney General's Office
 3                             555 East Washington Avenue
                               Suite 3900
 4                             Las Vegas, Nevada 89101

 5   For Unknown:              ELIZABETH LOVERIDGE, ESQ.
                               (phonetic)
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Court previously convened at 09:41:51 a.m.)

2          (Partial transcript at 11:07:11 a.m.)

3          THE COURT:  And thank you, Mr. Dreitzer.  That was

4    very helpful to have someone from the AG's Office to explain

5    these nuances to us.

6          MR. DREITZER:  Oh, thank you, your Honor.

7          MS. JARVIS:  And, your Honor, would you like me to

8    hand this up or do you want us to electronically upload it?

9          THE COURT:  Would you electronically upload it.

10         MS. JARVIS:  Okay.

11         THE COURT:  You might want to stay, Mr. Dreitzer,

12   because the comments I related on the inappropriate E-mail

13   -- so you have a headup -- are in this next motion.  So if

14   you've got five minutes to stay, that would --

15         MR. DREITZER:  That's fine.

16         THE COURT:  -- probably be appropriate.

17         MR. DREITZER:  Your Honor, I don't have the motion

18   in question.  Maybe that's something --

19         THE COURT:  It's Ms. Chubb's motion to terminate

20   this loan-servicing agreement for Colt.

21         MR. DREITZER:  I have not seen that.

22         THE COURT:  So we'll take that next.  You don't

23   need to appear.  I mean, in other words, you don't need to

24   make a formal appearance.  It was just this relates to the

25   comment I made to you --

8

```
 1              MR. DREITZER:  Sure.

 2              THE COURT:  -- I wanted you to be aware of.

 3              MS. CHUBB:  Your Honor, our point was -- and I

 4     think I know what you're addressing -- is that it's the

 5     closing of Compass until this motion was filed yesterday

 6     might have forestalled the effective date which affected --

 7              THE COURT:  This is what you said in your motion,

 8     Ms. Chubb.  You said in your reply, "How the State of Nevada

 9     has indicated it's not going to license Compass," and then

10     you attach --

11              MS. CHUBB:  Well --

12              THE COURT:  -- an affidavit --

13              MS. CHUBB:  Well, and they just did.  They're not

14     licensing them at --

15              THE COURT:  It said not --

16              MS. CHUBB:  -- immediately --

17              THE COURT:  It --

18              MS. CHUBB:  -- immediately.

19              THE COURT:  Your motion doesn't say that,

20     Ms. Chubb.

21              MS. CHUBB:  No.

22              THE COURT:  Your --

23              MS. CHUBB:  My --

24              THE COURT:  Listen to me.

25              MS. CHUBB:  The entire point --
```

```
1                    THE COURT:  Just let me finish.

2                    MS. CHUBB:  If you'll --

3                    THE COURT:  Your motion said --

4                    MS. CHUBB:  -- let me finish, I will.

5                    THE COURT:  -- "The State of Nevada has indicated

6    it's not going to license Compass" and attaches a Cangelosi

7    affidavit filed in another case --

8                    MS. CHUBB:  This is about the --

9                    THE COURT:  -- rank hearsay on hearsay.  And on

10   top --

11                   MS. CHUBB:  This is about the timing.

12                   THE COURT:  Your motion doesn't say that.

13                   MS. CHUBB:  You know that.

14                   THE COURT:  On top --

15                   MS. CHUBB:  You know this is about the timing.

16   That it's irrelevant to our changing servicers that Compass

17   is or isn't going --

18                   THE COURT:  Ms. Chubb --

19                   MS. CHUBB:  -- to close --

20                   THE COURT:  -- just listen to me.

21                   MS. CHUBB:  Yes.

22                   THE COURT:  Just let me finish.  Okay?  First, I

23   mean, I shouldn't even mention this because it is rank

24   hearsay, but I am so troubled by the absolute lack of ethics

25   in submitting rank hearsay and making statements that aren't
```

1    true in this pleading.  Again, let me just finish.

2        This is what your pleading says.  "The State of Nevada

3    has indicated it is not going to license Compass."  It

4    attaches an affidavit of Ms. Cangelosi in another proceeding

5    which says I have got these E-mails that I was cc'd and

6    here's what it says.

7        It's purportedly from Mr. Bice (phonetic), and it

8    purportedly says is my intention is not to issue, and I am

9    thinking of withholding it.  It doesn't say he is not going

10   to.

11           MS. CHUBB:  We're only pointing out the timing

12   issue and that we have no idea and as late as last night at

13   6:00 o'clock have had no idea about when the plan would go

14   effective and, therefore, affect the stay, and --

15           THE COURT:  You do not make statements that are

16   untrue.  You do not make --

17           MS. CHUBB:  And --

18           THE COURT:  -- statements based upon double

19   hearsay.  The concept that you would attempt to use as real

20   evidence a statement by a state official based upon some

21   purported E-mail from a third party absolutely violates

22   every ethical --

23           MS. CHUBB:  Well --

24           THE COURT:  -- and evidentiary rule.

25           MS. CHUBB:  I don't agree with you.  I am sorry

1   you feel that way about it.  I would really like to address

2   the issue here, and that is whether Fertitta and Tabas are

3   going to be able to service this loan and change servicers.

4           THE COURT:  And you have a legitimate legal issue.

5   It doesn't do your case any good when you do --

6           MS. CHUBB:  I --

7           THE COURT:  -- these --

8           MS. CHUBB:  I'm --

9           THE COURT:  -- rank --

10          MS. CHUBB:  -- sorry --

11          THE COURT:  -- rank --

12          MS. CHUBB:  -- that we --

13          THE COURT:  -- problems.

14          MS. CHUBB:  -- that there was this

15  misunderstanding.  We were trying to show that we need to

16  move --

17          THE COURT:  You don't do it by lies and

18  misrepresentations.

19          MS. CHUBB:  Your Honor, I wish you wouldn't say

20  that.  Are you saying I am lying?  Are you saying I'm lying?

21          THE COURT:  Your pleading says that they're not

22  going to do it.

23          MS. CHUBB:  And we just had a motion here --

24      (Colloquy not on the record.)

25          MS. CHUBB:  -- because they're not doing it.  I

1    mean, it doesn't say ever, but it says now for purposes of

2    our motion it's not moving forward.

3         Until last night when we got the motion to clarify, it

4    was not clear that Compass could even close, and it wasn't

5    until you just ruled on it that we knew they could, so we

6    had a problem with timing.

7         Yes, maybe in the future someday.  But for right now,

8    that wasn't going to happen until you just granted this

9    motion, so how could we not bring up the fact that we --

10              THE COURT:  You could --

11              MS. CHUBB:  -- have an issue?

12              THE COURT:  -- have said to date they haven't been

13   licensed, period.

14              MS. CHUBB:  Okay.  I should have said to date they

15   haven't been licensed.  Now, my legal issue that I'd like

16   you to consider today about servicing is that HFA on

17   Colt Gateway has now, apparently, according to the debtor --

18   and, you know, we believe that's the case -- gotten a

19   commitment, so they can pay this note off.  They can pay

20   10.9 million dollars.

21        USA Mortgage is going to get about three of that.

22   Diversified will get about three of that.  The Fertitta

23   estate is willing to waive what it believes is about

24   $300,000 in default interest in order to get this closed.

25   The Tabas estate is going to get paid.

1     We are deathly afraid that this money will go away.  We

2  can't just sit around while people have a loan commitment

3  and say we're not ready to take your money, yet.

4     If we are the servicer, if Fertitta can become the

5  servicer, we are committed to paying the money according to

6  what has been substantially set out for all of the

7  interested parties, the 10.9, and we're --

8          THE COURT:  Now, how --

9          MS. CHUBB:  -- (indiscernible) --

10         THE COURT:  Why wouldn't you have to be licensed?

11         MS. CHUBB:  Because we're a lender.  We can

12  service our own loan.

13         THE COURT:  So DTFD (sic) can do it as well.

14         MS. CHUBB:  Well, the reason Diversified can't

15  really do it is they have a huge conflict.  They have this

16  interest, and they'll get their money.

17         THE COURT:  No.  But as a matter of licensing,

18  they can do it.  They don't have to be licensed.

19         MS. CHUBB:  That's --

20         THE COURT:  Right?

21         MS. CHUBB:  I am just saying they shouldn't --

22         THE COURT:  Okay.  But they can --

23         MS. CHUBB:  -- be allowed to do it.

24         THE COURT:  But you're --

25         MS. CHUBB:  And --

1          THE COURT:  -- not trying to tell me they couldn't

2     do it, either.

3          MS. CHUBB:  They could -- well, you know, we have

4     the issue about what the plan says and what the plan meant

5     and whether they are entitled under the plan because if you

6     read my declaration you will see the language in the

7     treatment of Diversified that says it retains its

8     loan-servicing agreement which Diversified now says means

9     that as part of the plan it received the right from USA to

10    now service the loan.  We disagree that the language could

11    mean that, but that's Diversified's position.

12         And I will say that it wasn't intentionally omitted

13    from my motion because I had no idea when the motion was

14    filed that Diversified interpreted the language that way.

15         And, in fact, I was talking to Mr. Charles about the

16    servicing because he and I both thought that USA Mortgage

17    would be the servicer on that since it doesn't go to

18    Compass.

19         But it's the urgency that I want to address today that

20    this money could go away, and we need to take it.  And if

21    there are disagreements --

22         THE COURT:  So you actually have a deal with the

23    lender that would pay off the loan --

24         MS. CHUBB:  Well, what we have --

25         THE COURT:  -- the bar.  Excuse me.

1          MS. CHUBB:  What we have is -- and maybe Mr. Bart

2     can weigh in on this because he's actually been dealing

3     directly with HFA.

4          What we have -- and I think the debtors will agree with

5     this -- that they have convinced us that they have this

6     commitment and can pay the 10.9 percent, and we want to take

7     that money before that commitment goes away.

8          And we think if Fertitta can become the servicer that

9     we can put a lot of pressure on.  Actually, most of this has

10    materialized since we filed this motion, and we have sent

11    out subpoenas for the records of HFA and set an examination

12    of Mr. McFarland (phonetic), and things have started

13    happening now.

14         And now they have money, and we want to be able to take

15    the money, and we will deliver that money consistent with

16    the interest of the parties.

17         If there are disagreements about the interest of the

18    parties, the Court can decide those later, but, right now,

19    we desperately need to take this deal, I mean, like

20    tomorrow.

21         We are also concerned because there is now an

22    appraisal, not from anybody in the case -- although I guess

23    Hillco has been asked to do another one -- but from the

24    lender that shows the to-date value at much less than the

25    10.9.

1             MR. LEVINSON:  What appraisal, and where is that

2    in the evidence?

3             MS. CHUBB:  It's not in evidence.  I was told

4    about it --

5             MS. JARVIS:  Your --

6             THE COURT:  Don't --

7             MS. CHUBB:  -- by the debtors --

8             MS. JARVIS:  Your Honor, I --

9             THE COURT:  Please --

10            MS. CHUBB:  -- last night.

11            MS. JARVIS:  I would object to --

12            THE COURT:  Please --

13            MS. JARVIS:  -- discussing this --

14            THE COURT:  -- Ms. Chubb --

15            MS. JARVIS:  -- because it isn't in evidence, and

16   I think it's not appropriate.

17            MS. CHUBB:  Okay.  Well, that's a concern.  That

18   the property may not be valued at this much.  I'm sorry.  I

19   mean, the debtors told me, so I didn't think that --

20            THE COURT:  Well, but --

21            MS. CHUBB:  -- it was --

22            THE COURT:  Yeah, I know.

23            MS. CHUBB:  -- a secret.

24            THE COURT:  But your problem is you have a

25   tendency to talk about things that aren't in evidence.

1          MS. CHUBB:  Okay.  Well, you know, I only found

2     out last night, but it's a concern.  There is urgency here.

3     We need to move forward and get this money in some way,

4     really need to get the money in some way and not let it go

5     away, and it's going to benefit everybody in the case.

6          I know Diversified has some issues, but their issues --

7     and I don't know if the Court's aware of them -- are about

8     other loans that they have with Colt Gateway.

9          But our loan is there.  It's documented.  There are

10    only three direct lenders on it, Diversified, Tabas estate,

11    and Fertitta, and we desperately want to get the money in.

12         So we would like to become the -- and we'd like the

13    stay terminated.  The stay terminates on the effective date,

14    but nobody knows when the effective date is, yet, and I

15    don't know how long that could go on.  I just don't want

16    this money to get away, so --

17              THE COURT:  Okay.

18              MS. CHUBB:  -- I --

19              MR. BART:  May --

20              MS. CHUBB:  -- appreciate --

21              MR. BART:  May I chime in now, your Honor?

22              THE COURT:  Hang on one second, please.

23              MR. DREITZER:  Your Honor, I don't know if the

24    Court is focussing on this.  But if the Court requires

25    certain assurances about Mr. Bice's conduct, I'm happy to

1    investigate it and provide further information if that's

2    what the Court needs.

3          THE COURT:  No.  I just want to make you aware of

4    it because I didn't want you to be blindsided --

5          MR. DREITZER:  I appreciate that.

6          THE COURT:  -- by it because these are floating

7    around in documents that were filed in various courts.

8          MR. DREITZER:  Right.

9          THE COURT:  And I wanted you to be aware of it,

10    and I've got to admit I do have concerns because this is a

11    state agency that has to abide by administrative

12    regulations, and --

13          MR. DREITZER:  Oh, certainly, but I think the

14    E-mails -- I have read them.  They're not pretty, but they

15    certainly don't say that there's been a definitive decision

16    made either way.

17          THE COURT:  Yes.  And I'm sure he's opened them.

18    I'm sure he wants to hear from all sides.

19          MR. DREITZER:  He certainly does.

20          THE COURT:  And it's probably one of those things

21    where he -- you know, again, you know, we tend to forget

22    judges can't make any ex parte contacts whereas state

23    administrators need to hear from all sides, and they do have

24    meetings.

25          MR. DREITZER:  They --

1          THE COURT:  And I'm sure that was part of the

2    intent, and I just want to make him aware that certain sides

3    are using -- it was probably innocent comments --

4          MR. DREITZER:  Right.

5          THE COURT:  -- against him.

6          MR. DREITZER:  They shouldn't make those comments,

7    but they do, so I'll --

8          THE COURT:  Okay.

9          MR. DREITZER:  I appreciate it.

10     Thank you.

11          THE COURT:  Thank you.

12          MR. DREITZER:  Thank you now.

13          THE COURT:  Okay.  Opposition.

14     Oh, I'm sorry.  Who wanted to be heard on the phone?

15          MR. BART:  Jonathan Bart.  I represent the Tabas

16     estate.  Your Honor, we're one of the direct lenders, the

17     three direct lenders, on this particular loan.

18          With Fertitta, we constitute over 50 percent of the

19     outstanding first lien amount which under the servicing

20     agreement entitles us to name the servicer.

21          Frankly, the issue of who is servicing is not as

22     important as who makes the decision on accepting the deal

23     that is out there because there hasn't been any servicing on

24     this loan since early in 2005.

25          The loan has matured.  It is in default, and the

1    borrower wants to pay it off.  There is a deal on the table

2    which not only would pay off the three first liens -- and if

3    I may add one other thing?

4        I'm stuck because on behalf of Tabas we have another

5    direct loan in a Florida project, Palm Harbor.  And because

6    the debtor claims that there were overpayments above what

7    this borrower paid in this project, they have withheld sums

8    from the other project unless this gets paid off.

9        And by the way, part of the deal is they will release

10   what they have held on the other one.  We're in trouble on

11   the other one because the borrower will not pay that which

12   it has already paid.

13       So we have to untangle ourselves from the debtor who is

14   not going to be servicing in the future.  It has not

15   interest in this loan at all.

16       It is not being purchased by Compass, and the deal

17   that's out there gives the unsecured creditors a

18   million-and-a-half dollars.

19       Now, when did this deal materialize?  When we in

20   connection with this motion subpoenaed Mr. McFarland, the

21   principal of Colt Gateway, and got to the bottom of what

22   dealings there are with respect to -- I think the

23   Diversified committee's issue were over undocumented loans.

24   That can't be an issue that holds up a settlement like this.

25       Whatever loans they have which is -- I know that the

1    McFarland Group calls it an equity interest -- it would not

2    prime recorded first liens.

3        There have been no loan documents produced, and

4    anything that they have there would be at best a loan which

5    would be primed by any judgment creditor or any recorded

6    interest, and that is being used to hold up what is a deal.

7        Now, Diversified, yes, could it service the loan?  Yes.

8    But it has, obviously, a conflict of interest in

9    representing as a fiduciary to majority mortgageholders who

10    don't have that same interest.

11        And, right now, what we're just talking about is

12    allowing what the documents provide which is for the

13    majority in interest to take over servicing of the loan.

14        Now, because the effective date is unclear and has

15    apparently been put off from what everybody thought it was

16    originally which was the funding, then it does make a real

17    difference that relief be granted, so that the parties with

18    the contractual right to service the loan get to service the

19    loan.

20        In the meantime, the unsecured creditors get a

21    tremendous bonus from this deal.  They get a million-five of

22    which several-hundred thousand comes from Fertitta giving up

23    default interest which they had the right to collect.

24        So, I mean, that's the real issue here, your Honor.

25    It's not a matter of who is going to collect fees for taking

1    interest payments and doing other servicing jobs.

2         It's a matter of a loan that has matured.  There is

3    somebody willing to pay it off.  They have a commitment from

4    the construction lender there to pay it off.

5         And, you know, as was said before, there is just no --

6    the debtor certainly doesn't have an interest in stopping

7    it.  It benefits the creditors.

8         There is really nothing under bankruptcy law or under

9    the contractual rights of the parties that entitles

10   Diversified to stop either the majority from servicing if

11   you want to look at the discrete issue or from accepting a

12   payoff which they're going to benefit from, anyway, just

13   because they think they can get a better deal.

14             THE COURT:  All right.  I guess I'm confused.

15   Now, obviously, Colt Gateway isn't going to pay off this

16   particular entire loan, right?

17             MR. BART:  Well, it's certainly the first lien.

18   The mortgages, yes, it is paying off.  It's paying off all

19   the mortgages.

20             THE COURT:  I mean, because the point is this.

21   If, obviously, you've got a note to someone, and they are

22   offering to pay off everything that's under the note, that's

23   the end of the story, so there's got to be more than that to

24   this.  They're not --

25             MR. BART:  Well, from our point of view, there

1    isn't, and, I mean, I'll let Diversified speak for

2    Diversified because it's never been articulated to me why

3    they would object to this.

4         I mean, the deal that's on the table gives them for

5    these undocumented what they call loans, what the McFarland

6    Group calls equity contributions, they are willing to give

7    them collateral that they now don't otherwise have, so I

8    don't know what it is.

9         I mean, all I can say is what's been represented to me

10   through hearsay -- and I'm not going to even repeat that --

11   is it just doesn't make sense, but the fact is that the

12   offer on the table will pay all the mortgages on the

13   property.

14              MR. LEVINSON:  Well, this is Marc Levinson for

15   Diversified.

16        First off, Mr. Bart, everything you said has been

17   hearsay.  There's no evidence in the record of that, any of

18   this.

19        But let's take a step back and see where we are,

20   your Honor.  This is a motion for relief from stay.  Should

21   you today prior to the effective date occurring permit the

22   servicer to be changed?

23        We think that no cause exists for you doing that.  Let

24   me give you some background, first, what we're talking about

25   with these various loans.

1    There is a first trust deed of which there are three

2    participants, Diversified and Tabas estate and Fertitta.

3    And as Ms. Chubb said before, our share is about

4    3.1 million which we would love to get paid, the Tabas is

5    about 5- or 600,000, and I believe Fertitta is about 3.2 or

6    3.3 million with interest.  We would love to be paid that

7    amount.

8        There is a second trust deed.

9            THE COURT:  Now, is --

10           MR. LEVINSON:  And for --

11           THE COURT:  Is Coltway (sic) offering to pay that

12   loan in full?

13           MR. LEVINSON:  We don't know, your Honor.  I mean,

14   Mr. Bart has testified eloquently about what the deal is.

15   We have not seen the deal.

16       We have heard that Colt is coming up with some

17   sort of a term sheet.  We haven't seen it.  We've seen no

18   evidence of any cooperation from Colt or its parent HFA over

19   the past number of months.  We asked them for documents

20   three months ago.  We have never gotten any.  They have been

21   totally uncooperative.

22       What are the other loans we're talking about?  Again,

23   there's the second trust deed to the mortgage company.  We'd

24   love to see that paid.  We'd like to see the mortgage

25   company get paid.  We're the largest creditor in that

1   estate.

2        There are three unsecured loans to my client.

3   Remember, Diversified was the dumping grounds of all things

4   Milanowski.

5        And we've got three loans that total I think 5.6 or

6   6.5 million -- I forget which -- no note, no deed of trust

7   on the books and records of both the Colt and the

8   Diversified Fund, so we know they're there.  We can prove

9   them.

10        With interest, that adds up to something like

11   $10,000,000.  We would have liked to have gotten a

12   resolution of that from Colt as well, but they're not

13   cooperating.

14        We have disputes with the mortgage company about how

15   the payoff if there were a payoff of the first trust deed

16   and the second would be allocated with issues that we'll

17   talk about in a moment.

18        We've got a way we think we can resolve that before

19   your Honor if we can't resolve it by ourselves, but we have

20   no evidence at all that this loan is going to pay off.

21        It's ironic that we have this testimony that the loan

22   is going to pay off, and, yet, they ought to change the loan

23   servicer.

24        It sounds like if the loan servicer has gotten some

25   sort of a payoff it can take the payoff itself, and we don't

1    need to put Fertitta in there and the Tabas estate.  We can

2    leave it with the servicer that we have.

3        One other irony while I'm here about ironies.  With

4    this declaration from Donna Cangelosi, it's kind of funny

5    that Ms. Chubb invokes that that Compass isn't going to get

6    licensed when in a sense Ms. Cangelosi was trying to help

7    create the fact that Compass wouldn't be licensed.

8        It's the old orphan who throws himself on the mercy of

9    the Court for killing his parents that they have created

10   this problem, and then they try to profit by it.

11       What we propose for Diversified -- and I believe

12   Ms. Freeman will join for the mortgage company -- is to keep

13   the servicing with the mortgage company, deny the motion for

14   relief from stay, or set it for a final hearing 30 days from

15   now.

16       If the effective date occurs, you don't have to worry

17   about this.  We'll have to deal with it later because there

18   will be no automatic stay.  We believe that the plan makes

19   it clear it goes to Diversified.

20       But we can fight with them over that if and when the

21   effective date happens.  In the meantime, allow the mortgage

22   company to continue to service.

23       The debtors will file with the court -- and we have to

24   talk about a schedule -- a motion or some other way to tee

25   up to you the dispute between the mortgage company and

1  Diversified over the payoff of the first trust deed.

2      We would like to get it paid.  We'd like to have that

3  heard on a somewhat expedited basis.  We think there are

4  just a couple of clean legal issues you can resolve if it

5  gets paid off.

6      But in the meantime, we want the mortgage company to

7  collect the loan.  We can tee-up our dispute, but, again,

8  that should be the mortgage company doing this.  Fertitta

9  and Tabas have no incentive to get that issue resolved.

10         THE COURT:  Okay.  Mr. Charles.

11      I mean Ms. Freeman.

12         MS. FREEMAN:  Susan Freeman for the Unsecured

13  Creditors Committee of USACM.  Your Honor, we would like to

14  have this loan collected, too.

15      We think part of the problem in having this loan

16  collected quickly is that there is a conflict between the

17  USACM estate and the DTDF estate with respect to funds.

18      And there certainly are issues and rights to money on

19  the part of the USACM estate including not only the second

20  lien that ought to be paid, but, also, default interest and

21  fees.

22      And there's an issue with respect to whether Fertitta

23  is entitled to the default interest or whether USACM is

24  entitled to default interest, so there are these issues that

25  need to get resolved.

1       We would love to have an offer that is in writing that

2   spells out how much it's going to be paid, give it to us,

3   and let it get accepted, and then let the parties divide up

4   the money.

5       And so our request is that this stay not be lifted,

6   that the Court set a continued hearing on it in a relatively

7   short time, and allow the debtors to go ahead and bring

8   before the Court a motion to allow this offer to be accepted

9   and bring before the Court a motion that will allow the

10  parties to either reach an agreement with respect to

11  dividing up the money or let the Court determine who gets

12  what money if it comes to that, and we can't reach an

13  agreement, but let's get this offer accepted if we, in fact,

14  have an offer --

15              THE COURT:  Okay.

16              MS. FREEMAN:  -- which we would all like to have.

17              THE COURT:  Ms. Jarvis.

18              MS. JARVIS:  Your Honor, as you have heard, there

19  are significant debtor interests in these loans, not as --

20              THE COURT:  So what is the servicer doing now?

21              MS. JARVIS:  Well --

22              THE COURT:  I'm unclear --

23              MS. JARVIS:  Yeah.  Let me --

24              THE COURT:  -- about these negotiations.

25              MS. JARVIS:  Yeah.  Yeah.

1              THE COURT:  And I don't know --

2              MS. JARVIS:  Right.

3              THE COURT:  -- who they're coming from and who

4    is --

5              MS. JARVIS:  And, of course --

6              THE COURT:  -- doing what.

7              MS. JARVIS:  -- everyone's talking about

8    negotiations that they know nothing about, I mean, except

9    for us.

10        I mean, Mr. Allison and I have been personally

11   involved in negotiating with HFA for a long time.  As you

12   know, several HFA loans have been paid off during the course

13   of this bankruptcy.  They are one of the significant

14   borrowers.

15        This loan is of, you know, a particular -- it is

16   particularly problematic because of the fact that you've got

17   a first loan with two direct lenders and Diversified in it,

18   a second loan that is Commercial Mortgage as the lender, and

19   then these three undocumented loans that are Diversified.

20        So in negotiating those, you know, part of the

21   negotiations, you know, involved what the lender would be

22   willing to do with respect to dealing with them all together

23   which so far they've only been willing to try to figure out

24   something with them all together or separating them off.

25   Those discussions, you know, are still ongoing.

1          The reason why there has been more increased activity

2     lately is because the attorneys and principals of HFA know

3     that in these complex negotiations that have gone on -- and

4     we've included the committees in these negotiations as

5     well -- that there is a changing of the guard that's coming.

6          And so what's happening now is the culmination of a lot

7     of work by the debtors for months and months and months

8     since at least last summer that have gone on in trying to

9     get these loans paid.

10          And we did receive this morning a written filing, a

11     written offer, basically, to pay this off.  If this offer is

12     -- if we can get this documented and done, we do intend to

13     go forward and file a motion to get this approved.

14          We do feel like it needs to be a motion because there

15     are so many conflicting issues that need to be decided as to

16     where the money goes.

17               THE COURT:  So it's not like they're willing to

18     pay -- it is not like they're willing to say the first

19     mortgage is Y dollars, and we're going to pay that.

20               MS. JARVIS:  Right.  You know, it's a package

21     issue.

22               THE COURT:  Okay.

23               MS. JARVIS:  So they have to decide, I mean, you

24     know, whether they are going to make an offer to say we'll

25     pay off the first and second, and we'll allow the other

1    ones, you know, to just be dealt with in the future.  We'll

2    pay off the first and second, and we'll deal with the other

3    loans in a certain way.

4         So it's, you know, the offer depends on what offer, you

5    know, is finally worked out.  And if there is an offer that

6    we can take before the Court that pays off the first and

7    second which we believe we will get -- we do have, you know,

8    something in writing as of this morning -- we will file

9    that.

10         But there is no reason at this point to change

11    servicers to give relief from the stay, not to allow the

12    debtors to finish, you know, the work that has been done for

13    months and months and months to get this paid off which we

14    believe is going to culminate in a full payoff of these two

15    direct lenders.

16         So we would ask the Court to continue the stay.  I

17    think what Mr. Levinson said is exactly what should be done.

18    The stay should stay in effect.

19         There is no cause to lift it at this point in time.

20    And in a month's time, hopefully, we'll have an effective

21    plan, and, hopefully, this will be paid off by then, and --

22              THE COURT:  Okay.

23              MS. JARVIS:  And we will do it by a motion to the

24    Court, so that all parties, you know, can have an

25    opportunity to be heard.

1      I might also mention that, you know, there are disputes

2  Ms. Chubb said that Fertitta has the right to default

3  interest.  That is something that was raised recently.  It

4  is something that we would contest.

5      They raised that claim on the fact that they have no

6  loan-servicing agreement that they signed with Commercial

7  Mortgage, so that is also an issue, you know, that is

8  disputed, so we would ask the Court to keep the stay in

9  effect.

10          THE COURT:  Okay.  Ms. Chubb.

11          MS. CHUBB:  Your Honor, the Tabas estate and

12  Fertitta have rights in these loans, and they have the right

13  to be paid off, and all of these other issues are really

14  unrelated and should not hold them up and put them at risk.

15      As you heard from Mr. Bart, the Tabas estate has other

16  moneys being held up.  Fertitta has $1,000,000 that's being

17  held up on another loan pending the payment payoff of this

18  loan.

19      $670,000 has accrued on this loan since the filing.

20  There's $90,000 every month that increases.  That money's

21  just being lost.  There is no servicing here.  We need to

22  have this done and done right away.  A month is just too,

23  too long.

24      As I stated before, you know, this has come to a head

25  because we've gotten aggressive, and we've tried to push the

1   debtor into doing something, and it's ready to be done.

2       A month is just far, far too long.  You know how a loan

3   commitment can go away in a month or their willingness to

4   pay.

5       You know, I don't want something bad to happen like a

6   bankruptcy of HFA that really puts everybody at risk.  We

7   need to be able to service this loan, and there is no reason

8   that's been given why the stay shouldn't be terminated and

9   let us be the servicer.

10      There are only three people here.  We're going to

11  collect the loan, and we're going to pay it as the Court

12  would, you know, have us pay it.  But at least, we'll get

13  the money on the table.

14      If you're going to hear this motion, I'd ask that you

15  hear it next week at the latest because we don't have to

16  have everything in place as to people, you know, debtors,

17  fighting over where the money goes.

18      And the default-interest rate, you know, as I expressed

19  before, Fertitta is willing to waive the substantial

20  majority of any default interest.

21      And with no loan-servicing agreement, there can be no

22  argument that anybody else is entitled to it, but Fertitta

23  in order to move forward here is willing to waive most of

24  it.

25      So we really, really desperately need to become the

1    servicer or to have this heard forthwith.  I mean, a month

2    is just too long in this deal.

3        It's been going on as Ms. Jarvis said for nine months.

4    Nothing's happened.  Now we could maybe get something to

5    happen, and we need to have it happen soon, immediately.

6            MR. BART:  And, your Honor, if I may have the last

7    word?

8            THE COURT:  Um-h'm.

9            MR. BART:  Jonathan Bart for the Tabas estate.  I

10   think Mr. Levinson did correctly state the issue.  I mean,

11   the legal issue before you is there cause for relief, and I

12   think that there really is no factual dispute here.

13       The contractual right of servicing belongs to the

14   majority at interest.  There is cause for relief in that the

15   debtor has not serviced this loan.

16       Conversely, the loan has grown.  It has matured.  If it

17   were any situation in which the debtor was the borrower, we

18   would get relief from stay.

19       I mean, I don't see an argument that because they're a

20   servicer there shouldn't be relief from stay.  The debtor

21   has no interest in this loan.  The unsecured creditors are

22   going to get a benefit.

23       But if Ms. Jarvis is saying that, you know, now -- I

24   mean, it was introduced before is that what I was saying

25   there's an agreement, there's no agreement, well, there is

1    obviously an agreement.  She acknowledges getting the

2    agreement.

3        If there is an agreement, and she wants to put together

4    a motion -- and I agree, a week.  I mean, there is no reason

5    if there is an agreement in place which I have seen -- so,

6    you know, she has, too -- we can have a motion to approve.

7        And if no motion to approve is put forth in a week,

8    then let's have this on the merits on relief from stay and

9    let those with the contractual right to service it then make

10   the decision as to whether to do the deal.

11       But I'm certainly willing to sit back if the agreement

12   is there and have a motion filed within a week based on that

13   and let the distribution be determined through whatever

14   objection process would be fair.

15           THE COURT:  Okay.  Mr. Levinson.

16           MR. LEVINSON:  I heard for the first time when

17   Ms. Jarvis said at the podium that she has received a term

18   sheet or whatever it is this morning.  I'm delighted to hear

19   it.  I'll be delighted to see it.

20       (Colloquy not on the record.)

21           MR. LEVINSON:  Susan, have you seen it?

22           MS. FREEMAN:  (Indiscernible).

23       (Colloquy not on the record.)

24           MR. LEVINSON:  The mortgage company hasn't seen

25   it, either.  I'm delighted to see it.  If it comes in, and

1    it's something with which we can work, that's great.

2         And, again, I would suggest, your Honor, just because

3    you set this out to the normal time of 30 days from now it

4    doesn't mean that the mortgage company won't collect in the

5    meantime.  It sounds like the mortgage company is making

6    great steps to collect in the meantime.

7         Secondly, once the effective date occurs -- and, Lord

8    willing, it will occur soon -- then you don't have to have

9    this problem because the stay will be terminated then by the

10   confirmation order, and we don't have to worry about that.

11            THE COURT:  I did think it was interesting that

12   Ms. Chubb filed her motion on the order shortening time the

13   same day that she ex parte got the stay on appeal.

14            MS. CHUBB:  Different issues.

15            THE COURT:  Which would delay things.

16            MS. CHUBB:  No.  It actually didn't, and, you

17   know, your Honor, I did go back and read this.  The relief

18   that was requested was not as broad as you thought it should

19   be.

20        It was just that the funds in the segregated account

21   not be distributed, and that's all the relief that was

22   granted.  It wasn't to do with anybody's payments being held

23   up here.

24        Could we have a date next week where we can have a

25   motion heard or I can -- if we don't have something resolved

1    by then, I can ask you to let us service the loan.

2                    THE COURT:  Okay.

3                    MS. JARVIS:  Your Honor, as Mr. Levinson said, we

4    have a limited period of time, anyway, before the stay ends,

5    and, you know, this offer has been made, you know, through

6    the debtors as a result of many months of negotiation.

7        Let us finish dealing with this and see if we can get

8    this done, and I'll file within the time period we are left

9    and allowed to under law.

10                    THE COURT:  So what I'm going to do is by

11    February 28th you either have to have a written offer which

12    is filed or file a notice of default, whatever you need to

13    do to commence foreclosure.  And if --

14                    MS. CHUBB:  Well --

15                    THE COURT:  Ms. Chubb, just wait.

16        If that isn't done, the stay lifts.  If it is done,

17    then we'll have a continued status hearing on the 1st, and

18    then the 15th would be the final hearing.

19                    MS. JARVIS:  Okay.  And, your Honor, let me just

20    make sure that it's clear.  I mean, the stay lifting doesn't

21    mean that the servicer change is necessary.

22                    THE COURT:  No.

23                    MS. JARVIS:  It just means the parties can do

24    whatever they have rights to do.

25                    THE COURT:  Exactly.

1          MS. JARVIS:  The fact that Fertitta has no

2     loan-servicing agreement is at issue with respect to even

3     their rights that they're trying to invoke under the

4     loan-servicing agreement, so it's just whatever --

5          THE COURT:  Right.

6          MS. JARVIS:  Whatever happens is --

7          THE COURT:  Right.

8          MS. JARVIS:  It's --

9          THE COURT:  So if by February 28th you don't have

10    an offer or don't start a foreclosure, that seems to me to

11    show cause that the servicer hasn't done what the servicer's

12    supposed to do, and there is -- and let me go back.

13       The reason is as a preliminary matter I should deny it

14    is because everybody's acknowledged there is no money coming

15    in.

16       And the bald accusation that the servicer has done

17    nothing is false is contradicted by Mr. Allison's affidavit

18    on personal knowledge unlike all of these other hearsay

19    statements that he has been negotiating, so he is doing

20    something.

21          MS. JARVIS:  Yes.

22          THE COURT:  Now, how long should this last?

23    Obviously, if the plan goes effective, the stay lifts,

24    anyway, but I think it's important since he is doing

25    something to allow that process to finish.

1      By the same token, it has got to come to a conclusion

2   and these parties be let free of the servicing agreement if

3   nothing is being done.

4      And I think the way to test that is to require the

5   written offer by the 28th.  Or if they don't do it, take the

6   appropriate steps to cause the foreclosure process to have

7   begun.

8      If that's not done, the stay lifts, and all it means is

9   the servicing agreement is terminated, and they can go

10  forward and do whatever they want to do.  If that is filed,

11  then we'll discuss it on the 1st, but the final hearing

12  won't be until the 15th.

13     If the parties all agree it's an offer, and you all

14  agree to an order shortening time, and all the parties that

15  are affected agree to it, we can certainly shorten that

16  time.

17     But I don't want to have the hearing on the sale on the

18  1st.  I just want to -- we'll just use that for a status,

19  but the final hearing will be the 15th.

20            MS. CHUBB:  Hearing on the sale --

21            MS. JARVIS:  Thank you, your Honor.

22            MS. CHUBB:  -- in that --

23            THE COURT:  In other words --

24            MS. CHUBB:  What sale?

25            THE COURT:  -- we'll discuss on the 1st what's --

1    we'll have a status hearing on this motion on the 1st.  At

2    which time, we'll discuss what you want to do about that

3    offer --

4              MS. CHUBB:  So --

5              THE COURT:  -- assuming there's an offer.

6              MS. CHUBB:  So a motion has to be filed by the

7    28th or some action taken?  What you said was if there's an

8    offer by the 28th, but do you mean an offer embodied in a

9    motion?

10              THE COURT:  Yeah.  They have --

11              MS. JARVIS:  Yes.

12              THE COURT:  -- to file a written --

13              MS. JARVIS:  Yes.

14              THE COURT:  I think it's probably better --

15              MS. JARVIS:  Yeah.  I --

16              THE COURT:  -- to make it --

17              MS. JARVIS:  I would --

18              THE COURT:  -- as a motion.

19              MS. JARVIS:  I would file it --

20              MS. CHUBB:  Okay.

21              MS. JARVIS:  -- as a motion.  I think that's the

22    appropriate way to file --

23              THE COURT:  Sure.

24              MS. JARVIS:  -- something with the court.

25              THE COURT:  Right.

1          MS. CHUBB:  Okay.

2          THE COURT:  Right.

3          MS. CHUBB:  And if everybody could agree on

4    something, could we submit this by --

5          THE COURT:  Of course.

6          MS. CHUBB:  -- stipulation?

7          THE COURT:  And the only reason I hesitate is

8    because I am unclear enough about the other parameters as to

9    the unsecureds.

10       But if I'm convinced that everybody is just a party to

11   this transaction, yes, and the only reason I hesitate is I

12   don't know who all is impacted.

13         MS. CHUBB:  Okay.

14         THE COURT:  But if, for example, it's one

15   particular loan -- and the point is this.  It seems to me if

16   Colt says here's the money on this deed of trust the

17   servicer can't not take it.

18         MS. CHUBB:  Well, that's --

19         THE COURT:  But I don't think that's what they're

20   saying.  You don't have any evidence that that's what

21   they're saying.  I have no evidence --

22         MR. BART:  Well, when --

23         THE COURT:  -- from you.

24         MR. BART:  Yeah.  If you schedule an evidentiary

25   hearing on the 1st, your Honor, I will present my evidence.

```
1    I didn't see today as being an evidentiary hearing --

2              THE COURT:  I don't --

3              MR. BART:  -- in any event.

4              THE COURT:  -- even have an affidavit from you.

5    I'm not scheduling an evidentiary hearing on the 1st.

6              MR. BART:  I thought that would be the date you

7    would schedule it.  That's the scheduling hearing, is it

8    not?

9              THE COURT:  The 1st we will discuss is a status.

10             MR. BART:  That's correct.  That's what I mean,

11   your Honor.

12             MS. CHUBB:  And we could submit affidavits for

13   that hearing about the status of what FHA (sic) is willing

14   to do I presume.

15             MS. JARVIS:  Well, my understanding is what you're

16   asking us to do --

17             MS. CHUBB:  HFA.

18             MS. JARVIS:  -- on the 1st is just to report a

19   status, have we filed the motion, what do we need to do to

20   then --

21             THE COURT:  Right.

22             MS. JARVIS:  -- have the hearing --

23             THE COURT:  If you have filed the motion --

24             MS. JARVIS:  -- on the 15th.

25             THE COURT:  -- to sell, the question is when do we
```

1    actually set the sale motion.

2            MS. CHUBB:  It's --

3            THE COURT:  Do we set --

4            MS. CHUBB:  It's not a motion --

5            THE COURT:  The sale motion --

6            MS. CHUBB:  -- to sell.  It's a --

7            THE COURT:  -- for the --

8            MS. CHUBB:  It's a motion to accept --

9            THE COURT:  Excuse me.

10            MS. CHUBB:  -- a payoff.

11            THE COURT:  Accept a payoff.

12            MS. CHUBB:  Okay.

13            THE COURT:  I used the wrong term.  I apologize.

14            MS. CHUBB:  That's okay, but we need to -- I mean,

15    that's a month, your Honor.  If they, in fact, do have some

16    kind of a commitment, we need to know before then.

17            THE COURT:  That's --

18            MS. CHUBB:  Can't we --

19            THE COURT:  -- the 15th.

20            MS. CHUBB:  -- hear that --

21            THE COURT:  The 28th is a little more than a week

22    away, and there's a holiday in the meantime.

23            MS. CHUBB:  Can we hear it on the 1st, though?

24            MS. JARVIS:  I think --

25            THE COURT:  If it's ready to go, we can, but it

1    might not be.

2              MS. CHUBB:  Well, it's more likely to be ready to

3    go if you say it's going to be heard on the 1st than if you

4    say it's going to be heard on the 15th just because, you

5    know --

6              THE COURT:  Well, they have --

7              MS. CHUBB:  -- the squeaky --

8              THE COURT:  -- to file it by the 28th.

9              MS. CHUBB:  Right.

10             THE COURT:  All right.  Let's make you file it on

11   the 27th.  File your motion by the 27th.

12             MS. JARVIS:  Okay.

13             MS. CHUBB:  And then --

14             THE COURT:  That gives them one day before the

15   hearing to decide is everybody in agreement or not in

16   agreement.

17             MS. JARVIS:  Okay.

18             THE COURT:  And I would hope that you're

19   negotiating with these people in the meantime.  That

20   you're --

21             MS. JARVIS:  Well, we --

22             THE COURT:  -- not --

23             MS. JARVIS:  We have been.

24             THE COURT:  -- excluding the parties.

25             MS. JARVIS:  I mean, we've been negotiating with

```
 1    everyone, and it is like you said.  It's a complicated issue
 2    because it's not just -- it's what offer do we have from
 3    them.  I mean, are they willing to separate, you know, the
 4    loans.  Are they willing to do something --
 5              THE COURT:  Sure.
 6              MS. JARVIS:  -- that deals with all the loans, so
 7    it's not --
 8              THE COURT:  So --
 9              MS. JARVIS:  -- you know --
10              THE COURT:  And --
11              MS. CHUBB:  And --
12              MS. JARVIS:  It's not --
13              MS. CHUBB:  But --
14              THE COURT:  And that's --
15              MS. JARVIS:  -- simple.
16              THE COURT:  -- the way they want to deal with it.
17    If it's a motion --
18              MS. JARVIS:  Right.
19              THE COURT:  -- to accept the payoff, and it
20    doesn't work --
21              MS. JARVIS:  Exactly.
22              MS. CHUBB:  But --
23              THE COURT:  -- we'll say, fine, this all blows up.
24              MS. JARVIS:  Okay.
25              THE COURT:  All of you go on your own merry way.
```

1          MS. CHUBB:  The problem is they're making deals

2     unrelated to us on our time and money.  That's the problem,

3     and that's why we need to move forward if we could.

4          MS. JARVIS:  The problem is --

5          MS. CHUBB:  So --

6          MS. JARVIS:  -- we have fine loans, your Honor,

7     and we're trying to deal with them.

8          MS. CHUBB:  I know.

9          MS. JARVIS:  And if we can --

10         MS. CHUBB:  If --

11         MS. JARVIS:  If we --

12         THE COURT:  I know --

13         MS. JARVIS:  -- get --

14         THE COURT:  And that's why each loan --

15         MS. JARVIS:  Yeah.

16         THE COURT:  -- needs to be dealt -- that's why I

17     want an offer out there, so that --

18         MS. JARVIS:  That is correct.

19         THE COURT:  -- they can see what the issue is.

20         MS. JARVIS:  That is correct.

21         THE COURT:  And I understand.  It may well be that

22     a different loan is going to be affected, but that's the way

23     it is.  I mean, if the person is offering a full payoff, you

24     can't refuse it.

25       But I don't hear that happening, I gather, and which

1  makes sense.  The person is saying here's Y dollars.  You

2  apply it the way you want.

3       (Colloquy not on the record.)

4            THE COURT:  So all right.

5       (Colloquy not on the record.)

6            THE COURT:  Thank you very much.

7            MR. LEVINSON:  Thank you, your Honor.

8       (Thereupon, the portion requested to be transcribed

9       was concluded at 11:47:07 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                              02/23/07

7    _____                _____
     Lisa L. Cline, Transcriptionist                  Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25