Alan R. Dalsass
BMC Group, Inc.
875 Third Avenue, Fifth Floor
New York, NY, 10022
Telephone: (212) 310-5908
Facsimile: (212) 918-7905
Email: adalsass@bmcgroup.com

Counsel to BMC Group, Inc., Claims and Noticing Agent

E-FILED ON MAY 22, 2007

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **In re:**<br><br>**USA COMMERCIAL MORTGAGE COMPANY,**<br>Debtor. | **Case No. BK-S-06-10725 LBR**<br>**Case No. BK-S-06-10726 LBR**<br>**Case No. BK-S-06-10727 LBR**<br>**Case No. BK-S-06-10728 LBR**<br>**Case No. BK-S-06-10729 LBR** |
| **In re:**<br>**USA CAPITAL REALTY ADVISORS, LLC,**<br>Debtor. | **Chapter 11**<br>**Jointly Administered Under** |
| **In re:**<br>**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,**<br>Debtor. | **Case No. BK-S-06-10725 LBR** |
| **In re:**<br>**USA CAPITAL TRUST DEED FUND, LLC,**<br>Debtor. | |
| **In re:**<br>**USA SECURITIES, LLC,**<br>Debtor. | |

**Affects:**
☒ **All Debtors**
☐ **USA Commercial Mortgage Company**
☐ **USA Capital Realty Advisors, LLC**
☐ **USA Capital Diversified Trust Deed Fund, LLC**
☐ **USA Capital First Trust Deed Fund, LLC**
☐ **USA Securities, LLC**

## RESPONSE AND LIMITED OBJECTION OF BMC GROUP, INC. TO MOTION FOR ORDER APPROVING STIPULATION BETWEEN THE USACM LIQUIDATING TRUST AND USA CAPITAL FIRST TRUST DEED FUND, LLC ON OVERBID ALLOCATION AND PLAN COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) (AFFECTS DEBTORS USA COMMERCIAL MORTGAGE COMPANY AND USA CAPITAL FIRST TRUST DEED FUND, LLC) [DOCKET #3652]

BMC Group, Inc. ("BMC")[1] hereby files this response and limited objection to the Motion For Order Approving Stipulation Between The USACM Liquidating Trust And USA Capital First Trust Deed Fund, LLC On Overbid Allocation And Plan Compromise Pursuant To Federal Rule Of Bankruptcy Procedure 9019(A) (the "Motion") and represents as follows:

## BACKGROUND

1.      BMC is the Claims and Noticing Agent for the above-captioned Debtors and Debtors-in-Possession in these cases (the "Debtors" and the "Cases", respectively) and was appointed in the Cases pursuant to Orders entered on May 4, 2006 (collectively, the "Engagement Orders").  From at least the inception of the Cases, BMC has performed services pursuant to (1) BMC engagement agreements entered with the Engagement Orders and (2) USBC District of Nevada – Guidelines For A Claims Agent.

2.      In order to notice and serve the Cases in an economically efficient manner, BMC established and performed some of its services collectively for all of the Debtors.  For example: (1) BMC established informational websites that communicated general information about the cases; (2) maintained public web pages which displayed copies of docketed filings for all cases; (3) processed and docketed all proofs of claim and proofs of interest filed by creditors  and interest holders including the recordation and processing of claim withdrawals and transfers of claims pursuant to FRBP 3001(e); (4) maintained the official claims register; (5) coordinated service and processing of all ballots in support of solicitation of votes for the plan of reorganization; (6) maintained a call center to respond to interested party inquiries; (7) monitored the court docket to ensure any filings affecting proofs of claim or proofs of interest are properly updated in the claims register or Debtors' databases; (8) assisted in the preparation of schedules and statements of financial affairs and master creditor lists; and (9) served as the notice agent and mailed notices to creditors for all cases including but not limited to the notice of 341(a) meeting,

---

[1] Any terms not defined herein shall have the meanings ascribed to them in the Motion.

notice of claims bar date, notices of hearings on the disclosure statement and confirmation of the plan of reorganization (the "Shared Services").

3.      Many of the Shared Services, such as the following continue on a post-effective date basis: (1) maintaining a public website to display filings for all cases for use by all interested parties; (2) processing and docketing of filed proofs of claim, proofs of interest and amendments thereto including the recordation and processing of claim withdrawals and transfers of claims pursuant to FRBP 3001(e); (4) maintaining the official claims register, monitoring of the court docket to ensure any filings affecting proofs of claim or proofs of interest are properly updated in the claims register; (5) maintaining informational websites that communicate general information about the cases; and (6) continuing to serve as the court's notice agent to mail notices to the estates' creditors and parties in interest.

4.      Until recently, due to the fact that there was a single Chief Restructuring Officer appointed for the administration of all of the Cases who was also the signatory on all of the BMC Engagement letters, BMC invoiced and was paid by USACM for all services.  Neither USACM nor any of the other Debtors disputed any BMC charges or raised any issue with this arrangement until near confirmation of the Debtors' cases.

5.      On April 10, 2007, BMC and the USACM Liquidating Trust (the "USACM Trust") executed a post-confirmation services agreement.  On or about April 24, 2007 Geoffrey Berman, the Trust Administrator for the USACM Trust, as successor to USACM, requested that only bills for work specifically allocable to the USACM Trust be submitted to him.   On a going forward basis BMC has agreed to separately invoice the USACM Trust for work specifically requested.

**ARGUMENT:**
**THE MOTION AND STIPULATION SEEK TO LIMIT THE SCOPE OF WORK THAT
BMC CAN PERFORM AND THUS IMPAIRS THE ABILITY OF BMC TO PERFORM
SERVICES FOR THE COURT**

6.      After a routine review of the docket, BMC became aware of the Motion.   While
BMC recognizes that the Motion is principally intended to resolve payment disputes as between
USA Capital First Trust Deed Fund ("FTDF"), the USACM Trust and USACM, the Motion and
Stipulation also seek to limit the scope of BMC's activities for FTDF such that, "Any services
BMC intends to provide FTDF after the Plan Effective Date shall be approved by FTDF and the
FTDF Committee before such services are provided, and all invoices shall be paid by FTDF only
after FTDF and the FTDF Committee both approve such invoices."   See, Stipulation at p. 4, ¶ 5.

7.      BMC recognizes the desire of FTDF to maintain control of costs, however a plain
reading of the Stipulation's language would prohibit payment to BMC by FTDF for any of the
Shared Services.  If FTDF were to take this position, it would place BMC in the untenable
position of either having to provide Shared Services to FTDF for free, or not at all.

8.      Further exacerbating the situation, as noted above, the USACM Trust has stated
that it, too, wants only to be charged for services it specifically requests.  Accordingly, BMC is
in a similar potentially untenable situation regarding Shared Services for the USACM Trust.

9.      On a post-Effective Date basis, BMC has been invoicing USACM for Shared
Services in the same manner it did pre-Effective Date.  However, given that the Stipulation
appears to both (i) resolve payment allocation for prior work performed by BMC and (ii) restrict
work to be performed by BMC on an ongoing basis, BMC is concerned that all parties may
potentially disavow responsibility for the Shared Services.

10.      At the request of USACM and in their effort to determine allocation for the
Shared Services, BMC calculated amounts allocable to each Debtor according to two methods:
the Claims/Interest Method and the Notice Served Method.

11.     Based on the $43,577.24 proposed to be paid to BMC by FTDF in the Stipulation, it appears to BMC that the parties to the Stipulation may have adopted the Notice Served Method of allocation. However, the Motion and Stipulation are silent on the how the settlement amount was determined. Moreover, the proposed payment amount does not account for $4632.86 of notice mailing production costs, nor does the Stipulation provide for a payment to BMC of the agreed-upon amount in the same 11-day time frame as other payments in the Stipulation. See Stipulation at p. 5, ¶ 7.

12.     The question of how -- and by whom -- BMC's fees for Shared Services should be paid has been a recurring issue between the Debtors', their various post-confirmation trusts and BMC for several months. BMC simply needs to obtain some clarity regarding how to invoice its services going forward and from whom to collect outstanding invoices. Currently there are over $160,000 of BMC pre and post-Effective Date fees and expenses outstanding.

13.     To that end, BMC requests payment of the outstanding invoices (a portion of which would be covered by the suggested FTDF settlement amount). In addition, BMC suggests invoicing FTDF and the USACM Trust for specific requests and continuing to invoice USACM for Shared Services. In conjunction with its invoice for Shared Services, upon request, BMC can provide an allocation calculation for each of the Debtors or their respective post-confirmation Trusts according to either the Notice Served Method or the Claims/Interest Method. BMC further requests that this arrangement be memorialized in the Stipulation and entered by the Court.

Respectfully submitted:

Dated: May 22, 2007                    /s/ Alan Dalsass
                                       Alan R. Dalsass, Esq
                                       BMC Group, Inc.
                                       875 Third Avenue, Fifth Floor
                                       New York, NY, 10022

                                       Counsel to BMC Group, Inc.