EXHIBIT "B"

Case 06-10725-gwz   Doc 3759-2   Entered 05/23/07 15:48:57   Page 2 of 8
Case: 06-01256-lbr   Doc #: 314   Filed: 05/17/2007   Page: 45 of 51

45

1  since this is a matter that came up completely too late to
2  raise in any papers -- I found out about it yesterday afternoon
3  while I was -- an hour before I got on an airplane to come here
4  is I'll file a motion for reconsideration based on this new
5  matter, and we'll consider it, and I was informing the Court of
6  what I learned yesterday.
7      I sat there for five minutes while Mr. Davis testified
8  about all kinds of facts.  All right?  If that's the way that
9  we need to do it, that's the way we'll do it.
10     Thank you.
11         THE COURT:  All right.  I appreciate Mr. Kirby's
12 frustration about not understanding the process, and I think
13 what we need to do is clarify the order of confirmation.  From
14 the order of confirmation and all that happened at
15 confirmation, it is apparent that we need to go back.
16     The issue was whether or not these were executory
17 contracts.  I found they weren't executory contracts.  The
18 question was how then the assets were sold free and clear of
19 the liens.  The question at confirmation became what does that
20 mean.
21     Arguably, selling free and clear of liens and claims could
22 mean that, notwithstanding the severe default of USA Commercial
23 prepetition, the direct lenders would not have any rights to
24 change servicers postpetition, none, period.
25     And when DACA bought its interests, it knew that that was,

Case 06-10725-gwz    Doc 3759-2    Entered 05/23/07 15:48:57    Page 3 of 8
Case: 06-01256-lbr    Doc #: 314    Filed: 05/17/2007    Page: 46 of 51

46

1  indeed, possible.  However, at confirmation, issues were raised
2  is that appropriate, is it not, and Compass agreed to a
3  compromise.
4       It agreed to the compromise that, all right, we will take
5  subject to prepetition defaults in so far as they relate to the
6  servicing, and I need to read that language because that's
7  important.
8       Which pleading is that?  Oh, the Compass.  No.  There it
9  is.
10      There was a surviving right, and that provided that it was
11 free of all claims and interest to the liens, except any right
12 that existed and was matured and exercisable as of the petition
13 date to effect a substitution to USACM as a loan server under
14 Section 3 as well as any defenses of the loan servicer.
15      And then there was a procedure to determine this, and the
16 procedure expressly gave them the right to challenge that and
17 suggested that there be a hearing to oppose it.
18      I think reading all of this together and conceding that
19 the right to the contract includes the rights to buy loans on
20 behalf of the servicer, I believe the appropriate way to read
21 the plan is to hold that the one who effects to change the
22 service must have 51-percent approval of those who are loan
23 holders, who are direct lenders, as of the date of the hearing.
24 In essence, that becomes the record date.
25      Now, to make things easier in the future -- and this

Case 06-10725-gwz   Doc 3759-2   Entered 05/23/07 15:48:57   Page 4 of 8
Case: 06-01256-lbr   Doc #: 314   Filed: 05/17/2007   Page: 47 of 51

47

1   hearing had a tortured history because of calendaring problems
2   and trying to get to the calendar -- I think what we should --
3   the record date would be, if you will, 30 days after the motion
4   is filed.  That way you know.
5       If you think you have 51 percent, they're going to go out,
6   and they know what the deadline is, and you can go out and
7   acquire some more as well.
8       But I think that establishes a procedure that takes into
9   account the compromise that was made, but recognizes the right
10  of the servicers to change based upon this compromise.
11      It makes no sense to me to suggest that -- even if
12  somebody said, okay, I want to change the servicer, and they're
13  now bought out, what interest do they have, anymore?  That's
14  the anomaly.
15      I appreciate your frustration, Mr. Kirby.  You say, well,
16  I got my 51 percent.  But on the other hand, you now have the
17  loan controlled by people who didn't really have 50 percent as
18  of the day the change was made because they didn't own the
19  loan, anymore, and I think that's probably the way the law
20  would work under state law.
21      That is you would look at right before the new contract
22  was signed with the new company.  Here we have this anomaly
23  because we had this 30-day hold.
24      So the record date, if you will, will be 30 days after
25  Compass would file its motion, regardless of when they hold the

Case 06-10725-gwz    Doc 3759-2    Entered 05/23/07 15:48:57    Page 5 of 8
Case: 06-01256-lbr    Doc #: 314    Filed: 05/17/2007    Page: 48 of 51

48

1   hearing.  The hearing will be sometime after the 30 days, but
2   that would be the record date, if you will, and that solves
3   that issue.
4       I make no comments.  That may be a very legitimate concern
5   about whether or not they're not licensed.  My point is that's
6   not before me today.  If it's a valid concern, file your
7   motion.
8       That is if it's -- you know, I don't know what the effect
9   is.  I don't know what the Nevada licensing requirements are.
10  I don't know.  I have heard at one of these hearings that the
11  servicers intend to use a non-Nevada servicing agency.
12      I know the U.S. Supreme Court has certainly restricted
13  state regulatory actions as it relates to certain institutions.
14  Whether or not this would apply to these institutions, I don't
15  know.  Those are all issues that are brand-new, so that's the
16  issue.
17      It seems to me that they have conceded that, yes, there
18  was a default such that if Mr. Kirby's clients did have 51
19  percent as of today, then the contract can be changed.  If --
20          MR. KIRBY:  Well, only one point of clarification,
21  please?
22          THE COURT:  And I'll let you go investigate that.
23          MR. KIRBY:  I understand.  Does that mean that
24  they've closed and have obtained the assignments --
25          THE COURT:  Yes.

Case 06-10725-gwz    Doc 3759-2    Entered 05/23/07 15:48:57    Page 6 of 8
Case: 06-01256-lbr    Doc #: 314    Filed: 05/17/2007    Page: 49 of 51

49

```
 1            MR. KIRBY:   -- to take --
 2            THE COURT:   I think it means --
 3            MR. KIRBY:   -- us under --
 4            THE COURT:   And then maybe you can argue what the
 5   contract means, but my understanding right now would be they
 6   have to have the assignment.  If they have an argument that,
 7   well, the contract says they've got to turn it over, that may
 8   be an issue, but that's something you probably should look at
 9   and brief together first.
10            MR. KIRBY:   Thank you, your Honor.
11            THE COURT:   So that's my initial reaction.
12            MR. KIRBY:   Thank you.
13            MR. DAVIS:   But there's --
14            THE COURT:   My initial --
15            MR. DAVIS:   -- no ruling --
16            THE COURT:   -- reaction --
17            MR. DAVIS:   No ruling today --
18            THE COURT:   -- is it --
19            MR. DAVIS:   -- as to that.
20            THE COURT:   -- actually have the assignments.  I'm
21   willing to listen to their arguments based upon the contract
22   and what they have, but that's something that, you know, is
23   legal issues that you reserve the right --
24       (Colloquy not on the record.)
25            THE COURT:   -- you deserve the right to respond to.
```

50

1   MR. KIRBY:  Thank you, your Honor.
2   THE COURT:  Okay.  Thank you.
3   MR. KIRBY:  All right.
4   MR. DAVIS:  Thank you, your Honor.
5   (Thereupon, the portion requested to be transcribed
6   was concluded at 10:42:30 a.m.)

51

1   I certify that the foregoing is a correct transcript from
2   the electronic sound recording of the proceedings in the
3   above-entitled matter.
4
5
6   /s/ Michele Phelps                                    05/17/07
    _____                          _____
7   Michele Phelps, Transcriptionist                       Date
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25