# Exhibit A

# Exhibit A

George A. Davis
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Telephone No.:    (212) 504-6000
Facsimile No.:    (212) 504-6666

E-Filed on May 25, 2007

Peter Bernhard (State Bar No. 734)
Bullivant Houser Bailey PC
3980 Howard Hughes Parkway, Suite 550
Las Vegas, Nevada  89169
Telephone No.    (702) 650-6565
Facsimile No.    (702) 650-2995
E-Mail:          peter.bernhard@bullivant.com

Counsel for Compass Financial Partners LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><div align="right">Debtor.</div> | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br><div align="right">Debtor.</div> | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND,<br>LLC,<br><div align="right">Debtor.</div> | **DECLARATION OF DAVID BLATT IN SUPPORT OF MOTION OF COMPASS FINANCIAL PARTNERS LLC FOR ORDER PURSUANT 11 U.S.C. §§ 105 AND 1141 ENFORCING CONFIRMATION ORDER AND FOR CIVIL CONTEMPT SANCTIONS** |
| In re:<br>USA SECURITIES, LLC,<br><div align="right">Debtor.</div> | |
| Affects:<br>☐  All Debtors<br>☒  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund, LLC<br>☐  USA First Trust Deed Fund, LLC | |

USActive 8730062.2

I, DAVID BLATT, hereby declare under penalty of perjury that the following is true and correct:

1.     I am over 18 years of age, and I have personal knowledge of each of the facts stated in this declaration ("Declaration"), except where otherwise indicated below. If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge, except where otherwise indicated below.

2.     I am a Manager of Compass Financial Partners LLC, a Nevada limited liability company, an affiliate of Compass USA SPE LLC, a Delaware limited liability company (together, "Compass"), and am competent to testify with respect to the matters recited herein.

3.     I submit this declaration in support of the motion (the "Motion"), dated May 25, 2007, of Compass for an Order pursuant to 11 U.S.C. §§ 105 and 1141 enforcing the Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), entered January 8, 2007 (the "Confirmation Order"), and for civil contempt sanctions. Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**Educational and Professional Background**

4.     I have an extensive educational and professional background in finance, lending and troubled loan servicing and work-outs.

5.     I hold a Bachelor of Science degree in Business Management from Yeshiva University, a JD from the Benjamin Cardozo School of Law, and an MBA from the Zicklin School Of Business at Baruch College. In addition, I hold a Masters Degree in Negotiation and Dispute Resolution from Pepperdine University School of Law, and am licensed to practice law in New York, New Jersey and California.

2

6.      In my capacity as a Managing Director of Compass, my responsibilities include managing and servicing and, as needed, restructuring millions of dollars in loans on an annual basis. I have served in this capacity since the founding of Compass in 2005.

7.      Prior to joining Compass, I managed a private equity firm for three years known as Blatt Holdings LLC. My responsibilities in such capacity included acquiring and managing real estate assets.

8.      Prior to working at Blatt Holdings LLC, I was employed for three years at Flatiron Real Estate Partners LLC, a real estate acquisitions firm focused on environmentally and financially distressed assets, where I specialized in distressed real estate acquisitions.

**The Debtors' Bankruptcy Cases**

9.      On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), USA Capital First Trust Deed Fund, LLC ("FTDF"), and their affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code.

10.     On November 15, 2006, the Debtors filed their Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). A hearing on the confirmation of the Plan was held on December 19 and 20, 2007.

11.     On January 8, 2007, the Court entered the Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Confirmation Order"), confirming the Plan and approving certain documents filed in conjunction with the Plan.

**The Loan Servicing Agreements**

12.     As the Court is aware, on February 16, 2007 (the "Closing Date"), Compass acquired substantially all of the assets of USACM and FTDF (collectively, the "Acquired Assets") in exchange for cash consideration of approximately $67 million. Compass

3

was the successful bidder for the Acquired Assets at an auction conducted before the Bankruptcy Court on December 7, 2006.

13.    The terms of Compass's acquisition of the Assets were set forth in an Asset Purchase Agreement, dated December 8, 2006 (the "APA"), which was approved by the Court pursuant to the Confirmation Order.  Pursuant to the APA, the Assets acquired by Compass include, among other things, the right to act as loan servicer with respect to a portfolio of approximately 65 loans (the "Loans," and the individual lenders thereto, the "Direct Lenders"), as well as, without limitation, Default Rate Interest, Accrued Servicing Fees, Late Charges, Success Fees (each as such term is defined in the APA), and other fees and sums due the loan servicer under any of the corresponding Loan Servicing Agreements.  Each Direct Lender is a party to a separate Loan Servicing Agreement, but the Loan Servicing Agreements are the same in form.  A true and correct copy of a Loan Servicing Agreement is attached hereto as Exhibit A.

14.    Section 3(a) of each Loan Servicing Agreement provides that, "in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record.  These actions may include, but are not limited to: (a) the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan." Loan Servicing Agreement § 3(a).

15.    Section 8 of each Loan Servicing Agreement provides that, "Lender may, by 30 days written notice to USA, terminate this agreement . . . if USA fails to perform its obligations hereunder." Loan Servicing Agreement § 8.

4

## The Threat Letters and Termination Letters

16.    Ms. Donna Cangelosi ("Cangelosi") is the founder and chairperson of the Lenders Protection Group (the "LPG"). As the Court is aware, the LPG consists of a minority group of Direct Lenders, including Robert Ulm and Todd Hansen. Cangelosi and the LPG are represented by attorney Alan R. Smith.

17.    On May 18, 2007, Cangelosi, as Manager of FDH Management Company, LLC which in turn is the manager of the various LLCs (the "Direct Lender LLCs") created at the encouragement of the LPG and pursuant to form "Membership Subscription Agreements" that were circulated by the LPG to Direct Lenders, sent not fewer than fifty (50) notices (the "Threat Letters") to borrowers under the corresponding Loans advising the borrowers that the Direct Lenders holding in excess of 51% of the beneficial interests in such loans had terminated Compass as servicer and replaced Compass with Lender 2 Lender, LLC ("L2L"). Further, pursuant to the Threat Letters, Cangelosi directed the borrowers to make payments to L2L, and that any payments made to Compass are at the borrowers' peril.[1] True and correct copies of the Threat Letters are attached hereto as Exhibit B.

18.    Contemporaneously with sending the Threat Letters, Cangelosi sent to Compass letters (the "Termination Letters") advising Compass of the termination of its rights to service the applicable Loans. According to the Termination Letters, the termination of Compass's rights is purportedly based on Nevada Administrative Code 645B.073, and specifically not pursuant to any Surviving Section 3 Right as defined in the Confirmation Order. A true and correct copy of a Termination Letter is attached hereto as Exhibit C.

---

[1] True and correct copies of the new Loan Management Agreements and operating agreements circulated to Direct Lenders by L2L are attached hereto as Exhibit F.

19.    Neither the Threat Letters nor the Termination Letters identify any defaults by Compass or the borrower under the corresponding Loans.  The Threat Letters and the Termination Letters purport to effect immediate terminations of Compass's rights under the corresponding Loan Service Agreements.

20.    In anticipation of the Threat Letters and the LPG's strategy to replace Compass as the servicer under the Loans, Alan Smith filed articles of organization for L2L with the Nevada Secretary of State on May 16, 2007.

21.    The Threat Letters have created confusion among the borrowers regarding payment of amounts due under their respective Loans.  Compass has received communications from borrowers expressing confusion as to the legitimacy and effect of the Threat Letters, as well as communications from borrowers refusing to acknowledge Compass as the servicer of their Loans.

22.    Based on communications between Compass and the borrowers, Compass anticipates that a number of borrowers will withhold payments due under the Loans or remit such payments to L2L.

23.    Since a significant number of the Loans have a payment date at the first of the month, Compass anticipates that the withholding of payments due under the Loans or remittance of such payments to L2L will occur in the next week, on or about June 1, 2007.

24.    The Threat Letters and Termination Letters also will restrain Compass's ability to negotiate deals that are beneficial to parties under the applicable Loans.  For example, Compass's negotiations to facilitate a refinance of certain collateral with the borrower under the Loans commonly known as the "Gardens Loans" require Compass to issue consent letters to the Direct Lenders thereunder.  Compass anticipates that the Direct Lenders will refuse to recognize

6

Compass as the servicer and thus refuse to respond to any consent letter issued by Compass. Consequently, the deal brokered in the Gardens Loans (which would have brought the Direct Lenders current on a Loan that was a year in arrears) will be jeopardized.

**Todd Hansen**

25.     Todd Hansen is a Direct Lender holding interests in the Loan commonly known as "HFA Windham" either in his individual capacity or through a limited liability company he founded and currently manages.  Compass has learned that Hansen has initiated contacts with the borrower under the HFA Windham Loan (the "HFA Windham Borrower") which have severely undermined Compass' ability to service the HFA Windham Loan.  For example, Hansen has represented to the HFA Windham Borrower that he, and not Compass, has the authority to speak on behalf of the Direct Lenders in the HFA Windham Loan, and has threatened legal action if the borrower does not cooperate with him.  These contacts have had a chilling effect on the HFA Windham Borrower's willingness to negotiate with Compass, which has undermined the purpose and intent of the Sale, to the detriment of the Direct Lenders.

26.     Further, Hansen's interference has jeopardized Compass' ability to consummate a potential refinancing of the HFA Windham Loan which would have resulted in a cash recovery to Direct Lenders.  According to the HFA Windham Borrower, Hansen has contacted a potential acquirer of the collateral and openly challenged the HFA Windham Borrower and Compass's ability to assign the HFA Windham Loan free and clear of the Direct Lenders' interests.

27.     Moreover, Compass has learned that, separate and apart from the Threat Letters, additional Direct Lenders have contacted borrowers and have made misrepresentations that (i) entities other than Compass are authorized to act on behalf of the Direct Lenders, (ii) Compass lacks the authority to take actions it expressly authorized to take under the Loan

Servicing Agreements, and/or (iii) borrowers need not pay Default Rate Interest, Accrued

Servicing Fees, Late Charges, Success Fees, other fees and sums due the loan servicer which

Compass purchased pursuant to the APA and Confirmation Order.

**The District Court Action**

28.    On May 21, 2007, the Direct Lender LLCs filed an action in the United

States District Court for the District of Nevada (the "District Court Action"). The Direct Lender

LLCs, represented by Alan Smith, seek a declaratory judgment that, among other things, they

have an absolute right to replace Compass as the servicer under the Loans, based solely on

Nevada Administrative Code 645B.073, without regard to Compass's rights under the

Confirmation Order and Loan Servicing Agreements.

29.    The Direct Lender LLCs also allege, among other things, that Compass

has breached the Loan Servicing Agreements. These specious allegations do not address or

attempt to substantiate any post-petition defaults by Compass under the Loan Servicing

Agreements. A copy of the Complaint filed in the District Court Action is attached hereto as

Exhibit D.

**Servicing of the Loans by Compass**

30.    Since the closing on the Sale, Compass has been working diligently to

resolve nonperforming and underperforming Loans in order to provide maximum returns to the

Direct Lenders.

31.    The status of each of the Loans and the progress of any actions Compass

may have taken with respect to any such Loans is set forth on loan status reports sent to the

Direct Lenders under the corresponding Loans. Periodically, Compass sends a global report (a

"Report to Direct Lenders") addressing the general status of all the Loans to the Direct Lenders.

A true and correct copy of the May 18, 2007 Report to Direct Lenders is attached hereto as Exhibit E.

          32.    As set forth in the May 18, 2007 Report to Direct Lenders, Compass has negotiated the payoff of five Loans and the collection of almost $40 million. Most of these funds have been distributed to Direct Lenders. Compass is also pursuing foreclosures of property in connection with borrower defaults under twenty-one Loans, and will aggressively pursue a maximum recovery against Loans from borrowers who have filed for bankruptcy.

          33.    Compass has conducted due diligence on certain severely underperforming Loans, determined the best recovery option on such Loans, and proposed settlements on five Loans. In one case, the settlement negotiated by Compass resulted in 100% of unpaid principal balance recovered by Direct Lenders. In other cases, potentially significant recoveries were defeated by the refusal to consent to such settlements by a small number of Direct Lenders, each of whom were members of the LPG and designated as "Loan Captains."

          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

          EXECUTED this 25th day of May 2007, at New York, New York.

_____
David Blatt

9