# EXHIBIT B

LENDER PROTECTION GROUP
www.usacapitallendersprotectiongroup.com

*This Mother's Day weekend marks the 2nd Annual Mother's Day Memo regarding USA Capital.*

Hello Fellow Investors:

It's hard to believe that one year ago on Mother's Day, I sent you the first Lender 2 Lender communication regarding the USA Capital Bankruptcy. What a year it has been for all of us.

These past two weeks have been action packed. And the action is looking favorable for the Direct Lenders – finally - after one long year. Please take the time to read this communication at least once, even twice. If you have not understood the work of the Lender's Protection Group, you may start to understand how the long hours and hard work are starting to provide results in helping us protect OUR MONEY.

Here are the headlines we will cover.

- Vindrauga/DACA attempts to terminate Compass – Compass's legal response and maneuvers - and the results in Judge Riegle's courtroom.
- The Motion to Stay Pending Appeal to prevent USACM from spending any more money in District Court.
- Fees, fees, fees. Did you get your Money's worth?
- Compass sues certain Direct Lenders and Loan Captains (LPG members) for interference in contractual relationships. (this is a fun one)
- The Nevada Mortgage Lending Division revokes Mesirow/Compass's license for breaking Nevada Law.
- The Nevada Mortgage Lending Division orders Compass Partners to CEASE and DECIST operating as a Mortgage Servicer.
- Compass closes their office in Nevada and does a midnight move.

So settle in as I recap each of these for you. At the end, I will provide LPG the perspective.

**Vindrauga/DACA attempts to terminate Compass**
As you will recall from my last communication, the Direct Lenders had elected to terminate Compass and appoint Vindrauga/ Debt Acquisition as the new loan servicer for Fiesta Oak Valley. This was a great loan to test terminating Compass using the Process defined in the "Confirmation Order". This loan has tremendous loan to value, was in default, and could enrich any loan servicer with default, late and maturity fees, while still affording to pay the direct lenders in full. In short, this loan is worth fighting for.

Vindrauga/DACA collected about 75% of the interest of the loan either through purchase of lender's interest or assignment and provided Compass with a 30-day termination notice per section 3 of the Loan Servicing Agreements for servicing breeches that occurred prior to April 13th 2006. These breeches included the servicer making "prepaid" interest payments to cover up the default and many of the other breeches we all experienced. Per the Confirmation Order, Compass, can object to their termination

within 30 days after the termination notice is served in Judge Riegle's courtroom and get an automatic stay (no movement can occur). Compass used all the timelines to their advantage and took the full time, filing a very feeble objection to their termination, nevertheless objecting and imposing the stay. Per the legal process, DACA then responded. A hearing date was set and Compass filed their final response about 4 days before the hearing. Now comes the interesting part.

In their objection, Compass said the Vindrauga/DACA termination was moot as they planned to purchase enough of the Fractional Interest from the Direct Lenders to bring Vindrauga/DACA's assignments to less than 51% (the LSA and Nevada Law states that 51% of the Beneficial Interest of a loan may terminate the Loan Servicer). The Loan Servicing Agreement also permits the loan servicer to purchase from a lender his or her fractional interest in a trust deed for all accrued interest and principal. So the Compass defense was "we will buy up enough of the lender's holdings to break Vindrauga/DACA's 51% right to move the loan."

Now you must understand that Compass played some games along this journey. Upon termination notice, Compass first made an open market offer of $.92 on $1.00 to buy out FOV loans through a third party. First pass – let's see if there is any low hanging fruit. Easy Money. We believe that when Compass finally turned their attention to fighting their termination, (some 60 days later) they realized they did not have any real defenses to their termination. So they elected their right to buy out positions at full principal and all accrued interest per the LSA. Whoever took the offer of $.92 may have taken a haircut, but remember, you were not guaranteed that Compass would pick you for the full price offer. Lots of games.

So some very lucky lenders will be receiving their money sooner than later on this loan. They won the lottery They were Cherry Picked. How many will actually get bought out? Enough to bring Vindrauga under the 51%. In court on Friday, Compass represented they planned to buy up 48% of the beneficial interest in Fiesta Oak Valley. At present, we do not know of anyone who has received his or her money, however, we are certain they will close on at least enough to prevent Vindrauga from terminating them. What happens to those who are "Left Behind'? Compass will continue to service them in the manner we have come to expect. Good Luck to those. We'll do what we can to help you, should the need arise.

Now let's take a hypothetical case. Lets say Vindrauga only obtained 58% of the servicing assignments. Does that mean all Compass would have to do is buy up 8% of that 58% to bring the 58% to under 51%? Technically yes. So now 8% would win the lottery, while 92% hang on for dear life. Would this be smart business for Compass? Probably - if they had the cash (cash does not appear to be a problem at this point – Compass has access to foreign hedge fund money). Is this good for the Direct Lenders – no. It actually makes a worse situation for those "Left Behind". The more money Compass invests in this portfolio, the higher return they must realize. This puts Compass at an even greater potential conflict with the Lenders. But for those chosen few who get out at fully accrued interest and principal, they certainly won the lottery, for that loan anyway.

Judge Riegle made some interesting statements in court on Friday. Did you know she is keenly interested in what is posted by you in the chat room? She has now mentioned

"the blogs" twice. Judge Riegle stated yesterday "I am sick of the blogs that suggest that this court changed the contracts. This court did not change the servicing contract." Thank you Judge Riegle for clarifying that again on the record, in spite of how the Confirmation Order may read.

The Judge further provided clarification on the Confirmation Order. Essentially, she stated whichever servicer had 51% on Day 60 after the termination notice wins the right to proceed with either retaining the loan servicing, or litigating the right to move the loan servicing. Judge Riegle did not rule on the right to terminate. She only ruled on the process. Obviously, we believe that Compass has no defenses for termination, otherwise, they would not be spending "insurance" money to retain this loan, thus lowering their return. After all, they already spent the money to send their lawyer to Vegas.

### The Motion to Stay Pending Appeal to prevent USACM from spending any more money

Monday, May 7th we went before Judge Jones and Judge Pro in US District Court. This is our venue for the LPG Appeal. What a different and atmosphere from the circus across the street! These judges come in fully briefed and treat the attorneys with dignity and respect. They do not rule from the bench and listen to each side without any predispositions. They do not make disparaging remarks to the attorneys nor do they engage the attorneys in emotional colloquy. The purpose of the hearing was to argue that the Professionals should not be permitted to spend our money before we have a chance for our appeal to be heard. Of course the opposing attorneys argued that we won't be able to prove our case, and it was moot anyway because the funds have been moved out of USACM into USA Liquidation Trust. The judges didn't exactly buy this. They essentially said why don't we just give you a date to hear the Appeal in the next 30 days or so. So no ruling was given for the Stay yet, and the court will now provide us with a date certain for the Appeal. Overall, we think this was a good sign. The Judges would not be talking about setting an argument date for the Appeal if they were going to dismiss it as moot. It was a great chance to educate and a great chance to see the tone. We informed the judges that the hearing for the fees was June 22nd.

### Fees, fees, fees. Did you get your Money's worth?

Have you seen motion for the fee applications to be heard June 22nd? Did you see the money these professionals want? What about that $2.5 Million Bonus? Wow! The LPG will be joining the party to oppose those fees. Filings are due May 29th. Stay tuned. You may get a little sense of our objections below when I talk about what the Nevada Mortgage Lending Division found when they performed their audit on Mesirow.

### Compass sues certain Direct Lenders and Loan Captains (LPG members) for interference in contractual relationships

Last Friday, May 3rd, I got a call from John Edwards, reporter for the Las Vegas Review Journal seeking my comments on Compass suing the LPG. He informed me that I wasn't being sued, but six members were. I told him "no comment" as I was not aware of the suit, hung up, and called our attorneys. The attorneys vigorously searched for the suit in all venues, but to no avail. It had yet to be filed. It was interesting that the newspaper had the complaint before it was filed in court. Gamesmanship!

Essentially, the complaint is a nuisance suit designed to intimidate and crack the armor of the LPG. It is filed in State Court, which is an interesting venue. It states that these individuals are interfering with other direct lenders and 3rd party "relationships" and is seeking an injunction and damages. Not much else is stated. No detail at all.

Now look at the practical side of things. Nevada law and our loan servicing agreements permit 51% lenders to modify their loan terms and other acts. If lenders were not allowed to communicate, how would 51% ever agree? The law permits us to do whatever we need to do to protect OUR MONEY. Additionally, who does the loan servicer have a fiduciary responsibility to -the lenders. Isn't it ironic that the one who has a fiduciary to us is suing us?

The important thing to note is this. Judge Riegle stated our Loan Servicing Agreements were non-executory (one sided). She said they were like an option agreement that simply expired. The Direct Lenders had no obligations to perform and we could not breech them. This was a convenient way for the Bankruptcy professionals to transfer our agreements to get money for their fees without curing the breeches. Curing of the breeches would have meant the BK estate would have had to repay our stolen principal, let us be heard on our rights to keep the pre-paid interest, etc. (In Bankruptcy, an executory contract with breeches must be cured before it can be sold – otherwise it is invalid. Also, the purchaser must provide adequate assurance of its ability to perform – something I doubt Compass could have done.) Compass bought these contracts – but did they? Was the transfer legal if they really were executory and the breeches were not cured? Compass and the BK estates position is that they were not executory. Well if they were not, then how can they sue us? How can we breech a one sided contract? This is what we are appealing folks. Thanks Compass for walking into this one and proving to the court that these are executory.

We prepared a press release last Saturday on the lawsuit, but it was never published. John Edwards doesn't seem to be interested in the voice of 1100 readers from the state of Nevada. However, a little paper up in Incline Village -the Bonanza -is. They called to get the Lender's view for their readership.

### The Nevada Mortgage Lending Division revokes Mesirow/Compass's license for breaking Nevada Law

The Nevada MLD performed an audit on the USA Capital activity under Mesirow's watch as the "interim servicer". Suffice it to say that they found numerous violations. Here are the highlights. Some of these are smoking guns that, had they been available earlier, could have unraveled the entire Bankruptcy Plan. Nevertheless, we hope they will be useful in our appeal.

- **Commingling, Mishandling and Misuse of Clients Funds**
  Mesirow swept the trust account to generate interest off our money. Mesirow collected 1.5 Million of interest on our money! Under Nevada law, if income was generated on our money, it is our interest. The MLD states that all moneys received from Borrower payoffs must be deposited into the Lenders Trust Account and then distributed according to the agreements. Didn't happen. Mesirow collected money on their behalf directly(default interest, late fees, etc) into the operating account. Odd, this was not even disclosed to the Bankruptcy

  Court. We had no visibility or ability to object or present our defenses over their entitlement to these monies.
- **Failure To Report On The True Performance Status Of Its Outstanding Loans:** Under Nevada law, a servicer must report monthly to the Nevada MLD and its lenders the "true performance" status of any defaulted loan. Mesirow failed to produce a single report.
- **Irregular Interest and Fee Calculations:** The Nevada MLD could not reconcile interest payments that were paid to lenders in the month of January 2007. This was a spot audit. They found Mesirow's interest payments "did not compute" – my words, not theirs. We couldn't reconcile them either Scott. No one understands what we were charged, what we were paid, and we still don't. Compass's latest statements have even more mysterious charges.
- **Netting of Interest:** The NRS 645B and NAC645B does not specifically allow for the concept of netting as it is a violation of State law to commingle funds, which was the basis for netting. This means the prepaid interest that the Bankruptcy estate claimed was not legal under Nevada Law. Does this mean that 2 wrongs make a right? Our whole "BK plan" was based on the premise of prepaid interest. Is our "plan" now illegal? Did the Bankruptcy professionals commit an illegal act by netting and recoupment. Where was the Direct Lender committee and attorneys on permitting netting and recoupment when it was an illegal act? Judge Riegle has stated repeatedly the reason we don't get to have a hearing on our prepaid interest because prepaid interest was "illegal". Does that mean we now get to keep the netted or recouped money since they got to keep ours? I am certainly glad this issue is open on appeal.
- **Exit Fees**: "An exit fee is not typical of the mortgage brokerage industry nor is it appropriate compensation for a loan servicing company. The monies should be distributed to the lenders who bore ALL of the risk although unbeknownst to them. Exit Fees are a calculated, self serving deceptive scheme that was enacted to allow the principals (or servicer) to potentially profit with no risk while astronomical risk inured to the unsuspecting lenders." This is an interesting observation from the Nevada MLD. These are their words. Compass is siphoning off these fees in front of our principal and interest, while the MLD believes these fees are unjust. So what is Compass's basis for stating they are entitled to unjust compensation? If it is inappropriate compensation to USACM as loan sevicer, does that mean it becomes appropriate compensation because the BK estate, in theory, sold it to Compass?

There are other elements of this compliant also. You can read it on the LPG website. Suffice it to say that the Nevada MLD findings support what we have been repeated shouting about all along. Thanks Scott Bice. Thank you Nevada Mortgage Lending Division.

### The Nevada Mortgage Lending Division orders Compass Partners to CEASE and DESIST operating as a Mortgage Broker/Agent Servicer

**WOW!**
As many of you know, Compass withdrew their license application about 2 weeks ago and fired Mesirow/USA Capital as their sub-loan servicer leaving them unlicensed. The Asset Purchase agreement stated the servicer had to be licensed or a waiver obtained. Compass did neither and continued to operate as the Loan Servicer. The Nevada MLD ordered them to Cease and Desist in the loan servicing activities.

What does this mean to us? Well, Compass misled the court and us. Remember, they put out a press release that they planned to operate in Nevada, under the purview of the Nevada MLD and in the backyard of about 1100 of its Nevada clients managing 1700 accounts. Since the Nevada MLD is now sensitive to the plight of the USA Capital investors and would be conducting diligent periodic audits, this was comforting to us. Not happening now folks! Now we don't have that protection. The investors are deprived of the comfort of being able to "drop by to visit with Mark Olsen" and see how things are going with their portfolio.

Our agreements are governed under the Nevada Laws. Does Compass feel it would be easier to break the law if they were not in Nevada? Is this their motive for leaving the state? Do the laws that protect our money and us present too high a hurdle for them to meet? Does this comfort us, the investor? Have they tried to comfort us? Do they care about our concerns? Obviously not. Not a single word regarding their actions or intent has been published. - not on their non-existent web site, no letters, nothing. Emails to Compass have been bouncing back leaving the investors in the dark.

**Compass closes their office in Nevada and does a midnight move to New York City**
According to Edwards, reporter for LVRJ – Compass has moved its operation to New York City, along with our beloved Mark Olsen. Many have asked, "can't the Nevada Attorney General stop them from leaving?" The answer is no. They can only enforce the laws of this state. A company can operate anywhere they choose. This just makes things more difficult for us – which Compass is "banking" on, however, it is not the end of the world for them or us. The LPG is requesting a complete audit of all loan activities this coming week, per the Nevada statues. I actually am looking forward to spending more time in my hometown anyway. So according to the paper, there may be a delay in operations (statements and checks?) as they complete their midnight move.

So to recap, many things have occurred in the past few weeks. Most have fully supported the actions of the LPG thus far. We have been vilified in court for protecting our rights and trying to fight the atrocities that have been heaped on us. Now we find that all the issues we raised were correct according to the Nevada MLD and actions of Compass. I am so happy we have not backed down, that the appeal is pending, and so many of you have supported us to protect our money. Time reveals all.

We believe the next few weeks will also be action packed, as we start to understand Compass's true intentions, operating unfettered by Nevada statues and without Mesirow as a second set of eyes. We must at least believe that while Compass and Mesirow were operating together, Compass was on its best behavior. Now without Mesirow watching, we will truly see the colors of Compass.

You will be hearing from me in the next couple of days through you loan captains. Please keep a watchful eye for further communications.

Happy Mothers Day to the Moms out there. And again, thank you to the volunteers for their countless hours and the many of you who have stood by us as we muddle through this mess.

Good Health to all.
Donna Cangelosi