# EXHIBIT D

1   ALAN R. SMITH, ESQ.
    Nevada Bar No. 1449
2   KEVIN A. DARBY, ESQ.
    Nevada Bar No. 7670
3   Law Offices of Alan R. Smith
    505 Ridge Street
4   Reno, Nevada  89501
    Telephone (775) 786-4579
5   Facsimile (775) 786-3066
    E-mail: mail@asmithlaw.com
6
    Attorneys for Plaintiffs
7

8                   UNITED STATES DISTRICT COURT

9                       DISTRICT OF NEVADA

10                          —ooOoo—

11  3685 SAN FERNANDO LENDERS,          Case No.
    LLC, a Nevada limited liability company,
12  5055 COLLWOOD LENDERS, LLC, a
    Nevada limited liability company, 6425
13  GESS LENDERS, LLC, a Nevada         COMPLAINT FOR DECLARATORY
    limited liability company, 60th STREET   RELIEF AND DAMAGES
14  VENTURES LENDERS, LLC, a Nevada
    limited liability company, AMESBURY
15  HATTERS PT LENDERS, LLC, a
    Nevada limited liability company,
16  ANCHOR B LENDERS, LLC, a Nevada
    limited liability company, BAR-USA
17  LENDERS, LLC, a Nevada limited
    liability company, BAY POMPANO
18  LENDERS, LLC, a Nevada limited
    liability company, BINFORD
19  LENDERS, LLC, a Nevada limited
    liability company, BROOKMERE
20  LENDERS, LLC, a Nevada limited
    liability company, BUNDY CANYON
21  2.5 LENDERS, LLC, a Nevada limited
    liability company, BUNDY CANYON
22  5.0 LENDERS, LLC, a Nevada limited
    liability company, BUNDY CANYON
23  5.725 LENDERS, LLC, a Nevada
    limited liability company, BUNDY
24  CANYON 7.5 LENDERS, LLC, a
    Nevada limited liability company,
25  CABERNET LENDERS, LLC, a Nevada
    limited liability company, CASTAIC II
26  LENDERS, LLC, a Nevada limited
    liability company, CASTAIC III
27  LENDERS, LLC, a Nevada limited
    liability company, CHARLEVOIX
28  LENDERS, LLC, a Nevada limited

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

1  liability company, CLEAR CREEK
   PLANTATION LENDERS, LLC, a
2  Nevada limited liability company, COM
   VEST LENDERS, LLC, a Nevada
3  limited liability company, COPPER
   SAGE II LENDERS, LLC, a Nevada
4  limited liability company, CORNMAN
   TOLTEC LENDERS, LLC, a Nevada
5  limited liability company, DEVALLE
   LIVINGSTON LENDERS, LLC, a
6  Nevada limited liability company,
   EAGLE MEADOWS LENDERS, LLC,
7  a Nevada limited liability company,
   FIESTA MURIETTA LENDERS,
8  LLC, a Nevada limited liability
   company, FIESTA USA
9  STONERIDGE LENDERS, LLC, a
   Nevada limited liability company,
10 FOXHILLS 216 LENDERS, LLC, a
   Nevada limited liability company,
11 GRAMERCY COURT LENDERS,
   LLC, a Nevada limited liability
12 company, HARBOR GEORGETOWN
   LENDERS, LLC, a Nevada limited
13 liability company, HESPERIA
   LENDERS, LLC, a Nevada limited
14 liability company, HFA CLEARLAKE
   I LENDERS, LLC, a Nevada limited
15 liability company, HFA CLEARLAKE
   II LENDERS, LLC, a Nevada limited
16 liability company, HUNTSVILLE
   LENDERS, LLC, a Nevada limited
17 liability company, LA HACIDENDA
   LENDERS, LLC, a Nevada limited
18 liability company, LAKE HELEN
   PARTNERS LENDERS, LLC, a
19 Nevada limited liability company,
   LERIN HILLS LENDERS, LLC, a
20 Nevada limited liability company,
   MARGARITA ANNEX LENDERS,
21 LLC, a Nevada limited liability
   company, MARLTON SQUARE I
22 LENDERS, LLC, a Nevada limited
   liability company, MARLTON
23 SQUARE II LENDERS, LLC, a
   Nevada limited liability company,
24 MOUNTAIN HOUSE-PEGS
   LENDERS, LLC, a Nevada limited
25 liability company, OAK SHORES II,
   LENDERS, LLC, a Nevada limited
26 liability company, OCEAN ATLANTIC
   2.75 LENDERS, LLC, a Nevada
27 limited liability company, OCEAN
   ATLANTIC 9.425 LENDERS, LLC, a
28 Nevada limited liability company,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 2 -

1  PALM HARBOR I LENDERS, LLC, a
   Nevada limited liability company,
2  SHAMROCK TOWER LENDERS,
   LLC, a Nevada limited liability
3  company, SO CAL LAND LENDERS,
   LLC, a Nevada limited liability
4  company, SVRB 2.325 LENDERS,
   LLC, a Nevada limited liability
5  company, SVRB 4.5 LENDERS, LLC,
   a Nevada limited liability company,
6  TAPIA RANCH LENDERS, LLC, a
   Nevada limited liability company, TEN-
7  NINETY 4.15 LENDERS, LLC, a
   Nevada limited liability company, THE
8  GARDENS 2.425 LENDERS, LLC, a
   Nevada limited liability company, THE
9  GARDENS LLC TSHR LENDERS,
   LLC, a Nevada limited liability
10 company,

11                    Plaintiffs,

12 v.

13 COMPASS USA SPE, LLC, a Delaware
   limited liability company, COMPASS
14 PARTNERS, LLC, a Delaware limited
   liability company, DAVID BLATT, an
15 individual, and BORIS PISKUN, an
   individual, SILAR ADVISORS, LP, a
16 Delaware limited partnership, SILAR
   SPECIAL OPPORTUNITIES FUND,
17 LP, a Delaware limited partnership,

18                    Defendants.

19 ————————————————————————

20      Plaintiffs, 3685 SAN FERNANDO LENDERS, LLC, a Nevada limited liability

21 company,  5055 COLLWOOD LENDERS, LLC, a Nevada limited liability company,

22 6425 GESS LENDERS, LLC, a Nevada limited liability company, 60th STREET

23 VENTURES LENDERS, LLC, a Nevada limited liability company, AMESBURY

24 HATTERS PT LENDERS, LLC, a Nevada limited liability company, ANCHOR B

25 LENDERS, LLC, a Nevada limited liability company, BAR-USA LENDERS, LLC, a

26 Nevada limited liability company, BAY POMPANO LENDERS, LLC, a Nevada limited

27 liability company, BINFORD LENDERS, LLC, a Nevada limited liability company,

28 BROOKMERE LENDERS, LLC, a Nevada limited liability company, BUNDY CANYON

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 3 -

1  2.5 LENDERS, LLC, a Nevada limited liability company, BUNDY CANYON 5.0

2  LENDERS, LLC, a Nevada limited liability company, BUNDY CANYON 5.725

3  LENDERS, LLC, a Nevada limited liability company, BUNDY CANYON 7.5

4  LENDERS, LLC, a Nevada limited liability company, CABERNET LENDERS, LLC,

5  a Nevada limited liability company, CASTAIC II LENDERS, LLC, a Nevada limited

6  liability company, CASTAIC III LENDERS, LLC, a Nevada limited liability company,

7  CHARLEVOIX LENDERS, LLC, a Nevada limited liability company, CLEAR CREEK

8  PLANTATION LENDERS, LLC, a Nevada limited liability company, COM VEST

9  LENDERS, LLC, a Nevada limited liability company, COPPER SAGE II LENDERS,

10  LLC, a Nevada limited liability company, CORNMAN TOLTEC LENDERS, LLC, a

11  Nevada limited liability company, DEVALLE LIVINGSTON LENDERS, LLC, a Nevada

12  limited liability company, EAGLE MEADOWS LENDERS, LLC, a Nevada limited

13  liability company, FIESTA MURIETTA LENDERS, LLC, a Nevada limited liability

14  company, FIESTA USA STONERIDGE LENDERS, LLC, a Nevada limited liability

15  company, FOXHILLS 216 LENDERS, LLC, a Nevada limited liability company,

16  GRAMERCY COURT LENDERS, LLC, a Nevada limited liability company, HARBOR

17  GEORGETOWN LENDERS, LLC, a Nevada limited liability company, HESPERIA

18  LENDERS, LLC, a Nevada limited liability company, HFA CLEARLAKE I LENDERS,

19  LLC, a Nevada limited liability company, HFA CLEARLAKE II LENDERS, LLC, a

20  Nevada limited liability company, HUNTSVILLE LENDERS, LLC, a Nevada limited

21  liability company, LA HACIDENDA LENDERS, LLC, a Nevada limited liability

22  company, LAKE HELEN PARTNERS LENDERS, LLC, a Nevada limited liability

23  company, LERIN HILLS LENDERS, LLC, a Nevada limited liability company,

24  MARGARIT ANNEX LENDERS, LLC, a Nevada limited liability company, MARLTON

25  SQUARE I LENDERS, LLC, a Nevada limited liability company, MARLTON SQUARE

26  II LENDERS, LLC, a Nevada limited liability company, MOUNTAIN HOUSE-PEGS

27  LENDERS, LLC, a Nevada limited liability company, OAK SHORES II, LENDERS,

28  LLC, a Nevada limited liability company, OCEAN ATLANTIC 2.75 LENDERS, LLC,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 4 -

a Nevada limited liability company, OCEAN ATLANTIC 9.425 LENDERS, LLC, a

Nevada limited liability company, PALM HARBOR I LENDERS, LLC, a Nevada limited

liability company, SHAMROCK TOWER LENDERS, LLC, a Nevada limited liability

company, SO CAL LAND LENDERS, LLC, a Nevada limited liability company, SVRB

2.325 LENDERS, LLC, a Nevada limited liability company, SVRB 4.5 LENDERS,

LLC, a Nevada limited liability company, TAPIA RANCH LENDERS, LLC, a Nevada

limited liability company, TEN-NINETY 4.15 LENDERS, LLC, a Nevada limited liability

company, THE GARDENS 2.425 LENDERS, LLC, a Nevada limited liability company,

THE GARDENS LLC TSHR LENDERS, LLC, a Nevada limited liability company,

(collectively the "Plaintiffs"), through their counsel, The Law Offices of Alan R. Smith,

hereby avers and seeks relief as set forth below:

## GENERAL AVERMENTS

**A.     Jurisdiction and Venue.**

1.     The United States District Court has subject matter jurisdiction over this

action pursuant to 28 U.S.C. § 1332(a).

2.     Pursuant to 28 U.S.C. § 2201, et seq. (the Federal Declaratory Judgment

Act), this Court has jurisdiction to declare the rights and legal obligations of the interested

parties.

3.     Venue for this case in this district is property pursuant to 28 U.S.C. § 1391.

**B.     The Parties.**

4.     Plaintiffs are all Nevada limited liability companies and are all direct

lenders/investors in certain investments made through USA Commercial Mortgage

Company ("USACM). These investments were in the nature of direct loans to third-party

borrowers secured by real property and sometimes improvements, which loans were

brokered by USACM. The members of the Plaintiff limited liability companies are all

direct lender/investors who originally invested with USACM, but assigned their interest

in the loans brokered by USACM to, among numerous other reasons, to consolidate and

unite to protect themselves and their investments from the actions of Defendants alleged

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 5 -

1    herein.    Plaintiffs, or their predecessor in interest, are named as fractional interest

2    beneficiaries on each promissory note and deed of trust evidencing and perfecting the

3    secured loans.   Each Plaintiff limited liability company is a direct lender/investor in a

4    separate and distinct loan.

5        5.    Compass USA SPE, LLC is a limited liability company organized and

6    existing under the laws of the State of Delaware, with its principal place of business in the

7    State of New York.  Compass USA SPE, LLC does not maintain an office in Nevada.

8        6.    Compass Partners, LLC is a limited liability company organized and existing

9    under the laws of the State of Delaware, with its principal place of business in the State

10   of New York.  Compass Partners, LLC does not maintain an office in Nevada

11   (Compass USA SPE, LLC and Compass Partners, LLC shall collectively be referred to

12   herein as "Compass")

13       7.    David Blatt ("Blatt") is a resident of the State of New York and is member

14   and manager of Compass.

15       8.    Boris Piskun is a resident of the State of New York and is a member and a

16   manager of Compass ("Piskun").

17       9.    Compass is not registered, qualified or authorized to do business in the State

18   of Nevada.

19       10.   Compass is not licensed as a Mortgage Broker or Mortgage Agent in the

20   State of Nevada and does not have an application pending to become a licensed Mortgage

21   Broker or Mortgage Agent in Nevada.

22       11.   Silar Advisors, LP, is a limited partnership organized and existing under the

23   laws of the State of Delaware, with its principal place of business in the State of New

24   York.  Silar Advisors, LP does not maintain an office in Nevada.

25       12.   Silar Special Opportunities Fund, LP is a limited liability company organized

26   and existing under the laws of the State of Delaware, with its principal place of business

27   in the State of New York Silar Special Opportunities Fund, LP does not maintain an office

28   in Nevada (hereafter, Silar Advisors, LP, and Silar Special Opportunities Fund, LP shall

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 6 -

1    collectively be referred to as "Silar").

2    **C.    General Background.**

3        13.    USA Commercial Mortgage Company, defined above as USACM, which

4    sometimes did business under the name "USA Capital", was formed as a Nevada

5    corporation in 1989, and was in the business of underwriting, originating, brokering,

6    funding and servicing short term (typically one year or less) commercial loans primarily

7    secured by residential and commercial developments, on behalf of private investors/direct

8    lenders.

9        14.    On January 11, 1990, USACM obtained a license to act as a mortgage

10   broker/agent in the State of Nevada  under Nevada Revised Statutes (NRS) Chapter 645B

11   and Nevada Administrative Code Chapter 645B (NAC).

12       15.    USACM routinely advertised and promoted, through sales and marketing

13   literature, high-yielding secured investments, with no fees ever charged to investors, and

14   represented that no investors had ever lost money in their investments with USACM.

15       16.    At the time USACM brokered direct loans on behalf of Plaintiffs, or their

16   predecess6ors in interest, USACM was operating in the State of Nevada as a licensed

17   mortgage broker/agent under NRS 645B and NAC 645B.

18       17.    On April 13, 2006, USACM filed a Chapter 11 Petition for bankruptcy in

19   the Bankruptcy Court for the District of Nevada, Las Vegas, together with four other

20   entities related to USACM (hereinafter collectively referred to as "USA Bankruptcy

21   Cases").

22       18.    At the time USACM filed its bankruptcy petition, approximately 3,600

23   investors were"lenders" in one or more loan originated and serviced by USACM.  These

24   3,600 investors are commonly referred to as "direct lenders."

25       19.    The loans brokered by USACM on behalf of Plaintiffs are each evidenced

26   by a Promissory Note Secured By A Deed Of Trust (respectively the "Note"), which were

27   executed by third-party borrowers in favor of the Plaintiff (or their predecessor in interest)

28   and other direct lenders in each loan. All loan documents, including the Notes, expressly

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 7 -

1    provide that they are governed by Nevada law.

2        20.    At the time USACM brokered direct loans each lender/investor and USACM

3    entered into various Loan Servicing Agreements pursuant to which USACM would service

4    the loans it brokered on behalf of Plaintiffs ("Loan Servicing Agreements").    Each

5    Plaintiff entered into a single Loan Servicing Agreement, which covered every investment

6    made by each Plaintiff with USACM.    All Loan Servicing Agreements are in the same

7    form. All Loan Servicing Agreements expressly provide that they are governed by Nevada

8    law.

9        21.    At the time USACM filed its bankruptcy petition, the loan portfolio it was

10   servicing pursuant to the Loan Servicing Agreements consisted of approximately 115 loans

11   having a combined outstanding principal balance of approximately $960 million. Most of

12   the original direct lenders invested in more than one of the serviced loans, with the being

13   approximately 3 to 4 loans for each direct lender.

14       22.    On May 1, 2006, the State of Nevada, Department of Business and Industry,

15   Division of Mortgage Lending, entered a *Order Conditioning Mortgage Broker's License*

16   *and Notice of Right To Request A Hearing*, which became a *Final Order Conditioning*

17   *Mortgage Broker's License* on June 9, 2006, a copy of which is attached hereto as Exhibit

18   B, pursuant to which USACM was prohibited from making any further loans based upon

19   various violations of Nevada law.

20       23.    The Commissioner for the Nevada Mortgage Lending Division, Scott Bice,

21   has described USACM as "a calculated, self serving deceptive scheme that was enacted

22   to allow the Principals to potentially profit with no risk, while astronomical risk inured to

23   the unsuspecting lenders.

24       24.    During the course of its Bankruptcy Case, USACM admitted that it breached

25   the Loan Servicing Agreements, breached its fiduciary duties, and violated Nevada state

26   law, prior to filing its Bankruptcy Petition, which included, but are not limited to:

27           a.    USACM received full principal payoffs from multiple borrowers, but

28               failed to disburse those funds to the appropriate Direct Lenders (the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 8 -

1    "Converted Principal"). The total amount of Converted Principal is
2    approximately $50,000,000.

3    b.    USACM failed to make any attempt to obtain real estate collateral to
4    secure multiple loans, while at the same time representing to Direct
5    Lenders that their loans were fully secured by valuable real estate.

6    c.    USACM made monthly interest payments to Direct Lenders on
7    occasions when the borrowers of particular loans in which the
8    Lenders had an interest were not paying USACM (the "Prepaid
9    Interest"). The total amount of Prepaid Interest is approximately
10    $49,000,000. The payment of Prepaid Interest led Direct Lenders to
11    believe that their loans were properly performing.

12    d.    USACM made loans to borrowers who were affiliated or otherwise
13    related to USACM's pre-petition management, such that the borrower
14    entities were partially owned by the owners and officers of USACM
15    through one or more of their various entities. Many of these loans
16    became non-performing loans in that the underlying borrower had not
17    paid the interest due.

18    e.    Plaintiffs, or their predecessors in interest, as existing Lenders, and
19    new lenders dating back to January 2005, were fraudulently induced
20    into making new investments and entering into agreements with
21    USACM based on USACM's false misrepresentations regarding the
22    performance of their investments.

23    25.    As a result of USACM's fraudulent misrepresentations and conduct, 100%
24    of the portfolio of loans it brokered are in default, while the default rate of commercial
25    loans in default for all commercial banks nationally is approximately 1.5%. Industry
26    averages for principal recovery on defaulted loans is approximately 65%.

27    26.    On or about September 22, 2006, USACM filed a *Motion For Order*
28    *Scheduling An Auction For The Sale Of Certain Assets, Appointing SPCP Group , LLC,*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 9 -

*As Lead Bidder, and Approving Bid Procedures And Protections* in its Bankruptcy Case, in which it sought to establish the parameters for the sale of certain assets in the USA Bankruptcy Cases, primarily consisting of valuable assets of a related debtor, the First Trust Deed Fund. The Bankruptcy Court entered and *Order: (A) Scheduling An Auction For The Sale Of Certain Assets; (B) Appointing SPCP Group, LLC, As Lead Bidder; And (C) Approving Bid Procedures And Protections, Approving Bidding Procedures* on November 8, 2006. The stalking horse bidder agreed to take on the obligations of USACM under the Loan Servicing Agreements as part of the sale, but did not attribute any of its initial bid price to the Agreements.

27. After the Order Scheduling Auction was entered, but prior to the auction being conducted, Mesirow Financial Interim Management ("MFIM"), the Bankruptcy Court appointed management for USACM, prepared calculations of the default interest to be charged to third-party borrowers on monthly invoices or at the time of payoff. MFIM determined that default interest could be charged for substantially all of the loans, and as a result, prepared default interest calculations.

28. After the Order Scheduling Auction was entered, but prior to the auction being conducted, Compass submitted a revised Asset Purchase Agreement, which included the sale of additional assets that were not included in the original asset purchase agreement submitted by the stalking horse bidder, specifically, the sale of loan servicing rights, the default rate interest calculated by MFIM, accrued servicing fees, late charges, success fees and other fees due to the loan servicer under the Loan Servicing Agreements.

29. The Bankruptcy Court conducted an auction of various assets of the USA Bankruptcy Cases on December 7, 2006. The sale was expressly conditioned upon confirmation of the USACM's Chapter 11 Plan of Reorganization, which was confirmed by an order of the Bankruptcy Court entered on January 8, 2007.

30. Compass was the successful bidder at auction and, on February 16, 2007 (the "Closing Date"), acquired substantially all of the assets of USACM and related debtor, the First Trust Deed Fund ("FTDF") in exchange for at $67 Million. The Compass bid was

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 10 -

broken down by an initial bid of $48 million fo the FTDF assets and $8 million for the loan servicing rights and fees under the Loan Servicing Agreements ("Purchased Assets"). The remaining amounts were to be allocated by an over-bid agreement between FTFD and USCM, which was filed under seal, and a break-up fee of $1.5 million to the stalking horse bidder.    The sale was expressly conditioned upon confirmation of the USACM's Chapter 11 Plan of Reorganization, which was confirmed by an order of the Bankruptcy Court entered on January 8, 2007.

31.    Other than certain conditions, the Loan Servicing Agreements were transferred to Compass without any other modification whatsoever.

32.    Compass has represented in a declaration by Blatt that it is a national firm with over 200 employees which acquires over$100 million in loan interests every year.

33.    Silar, which together with its principals have a substantial background in the lending industry in numerous asset classes, including consumer, residential and commercial, provided financing to Compass for the Purchased Assets, and conducted due diligence in connection with the financing.

34.    On February 16, 2007, Compass issued a press release in which it stated that the actual value of the assets purchased from USACM and FTDF was more than $150 million. Based on the full note value of $62,652,742 for the FTDF assets, not talking into account any borrower defaults, it can be deducted that Compass claims over $87 million in profit to be realized from the loan servicing rights.

35.    Compass has put into action a strategy to extract value from the collateral pledged by third-party borrowers to Plaintiffs and other direct lenders, by attempting to deduct unpaid default interest and late fees from the collateral proceeds before remitting amounts due to Plaintiffs and other direct lenders, which is in direct conflict with the loan documentation (Notes, deeds of trust and loan agreements), the Loan Servicing Agreements, the intent of the parties to the loans and various related agreements, the historical practices of USACM and long established lending industry standards and practices.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 11 -

36.     Compass' strategy and approach for servicing the Loans has created a conflict of interest between Compass and direct lenders, including Plaintiffs, to whom Compass owes fiduciary duties.

37.     Compass is attempting to further the scheme started by USACM, to profit with no risk, while astronomical risk inures to Plaintiffs and other direct lenders.

38.     As a purported loan servicer, Compass plays a crucial role in the Loans and its capabilities and experience directly affects the underlying performance of the Loans.

39.     As a purported loan servicer, Compass acts as an agent to Plaintiffs and other direct lenders and, therefore, Compass assumes fiduciary responsibilities to Plaintiffs and other direct lenders.

40.     The State of Nevada and its Division of Mortgage Lending, recognizing the responsibilities assumed by a loan servicer to direct lenders, regulates and monitors loan servicing activities pursuant to NRS 645B and NAC 645B.

41.     Pursuant to NRS 645B.185, each investor in USACM was required to receive and sign a Mortgage Investment Disclosure Form, approved by the Nevada Mortgage Lending Division, a copy of which approved form is attached as Exhibit A.

42.     As detailed in the Mortgage Investment Disclosure Form, a mortgage broker/agent operating in Nevada is required to inform investors that:

a.     "Before you invest in a promissory note by an interest in real property, you should know... the knowledge, experience and integrity of the mortgage broker with whom you are dealing."

b.     "You are entitled to receive information regarding the mortgage broker you are dealing with" more specifically the most recent financial statements.

c.     "You have a right to ascertain from the Division of Mortgage Lending the results of any investigation against the mortgage broker"

d.     "In many cases, including those cases where the investments consist of "fractionalized" interests, the loan requires servicing by an

1    authorized agent... The mortgage broker with whom you are dealing

2    is authorized by Nevada law to act as the servicing agent."

3    e.    "A Mortgage Broker performing loan servicing has an obligation to

4    account to the borrower and every investor for money collected and

5    disbursed in the exercise of that function".

6    f.    When the borrower on a mortgage loan fails to make required

7    payments, the actions and investor can take, or that a servicing agent

8    can take on behalf of an investor, are determined by provisions of

9    Nevada Law and the documents and instruments evidencing the

10   mortgage loan.

11   43.    Plaintiffs and other direct lenders did not get the benefit of the Mortgage

12  Investment Disclosure Form as it relates to Compass, nor have they received the required

13  disclosures from Compass, including, but not limited to:

14   a.    Compass has refused to disclose any compensation they are receiving;

15   b.    Plaintiffs and other direct lenders did not have a chance to know

16   anything about Compass prior to Compass being forced upon them as

17   a loan servicer, nor have direct lenders been provided any

18   information regarding Compass since Compass began servicing the

19   Loans;

20   c.    Plaintiffs and other direct lenders have not been able to obtain any

21   financial information concerning Compass, yet Compass is being

22   entrusted with nearly $750 million dollars of direct lenders money,

23   d.    Compass has stated that they have no plans to get licensed in Nevada,

24   and have relocated their operations to the State of New York and, as

25   such, plaintiffs and direct lenders are being deprived of all the rights

26   afforded them in connection with making a private investment.

27

28

44.    Nevada Administrative Code section 645B.073(1) provides:

Except as otherwise provided in subsection 3, if a mortgage broker acts on behalf of investors on a matter related to a mortgage loan, and if the beneficial interest in the loan belongs to more than one natural person, the documentation of the matter must include provisions to allow the holders of 51 percent or a greater specified percentage of the beneficial interests of record to act on behalf of all the holders of the beneficial interests of record in the event of a default or foreclosure for matters that require the direction or approval of the holders of the beneficial interests in the loan, including, without limitation:

(a) The designation of the mortgage broker, servicing agent or other person to act on the behalf of the holders of the beneficial interests in the loan; and

(b) The sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

45.    Compass is aware of NAC 645B.073 and has attempted to take advantage of its provisions by acquiring 51% of the beneficial interests in certain loans to prevent Plaintiffs and other direct lenders from removing Compass as loan servicer.

46.    The Loan Servicing Agreements provide for a power of attorney to be granted by Plaintiffs and other direct lenders to USACM, to empower USACM act on behalf of direct lenders in certain matters, thereby creating additional fiduciary duties owed to Plaintiffs and other direct lenders.

46.    Pursuant to NRS 645B.330, a mortgage broker/agent must act on behalf of direct lenders pursuant to a valid power of attorney, approved by the State of Nevada. In this regard, Plaintiff executed a power of attorney in favor of USACM when making

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 14 -

1    investments/loans.  Those powers of attorney expressly expire on the maturity date of each

2    related loan.

3        47.    NRS 645B.330 requires that the power of attorney "Expressly provide that

4    the power of attorney is effective only for the term of the specific loan unless the mortgage

5    broker obtains written approval from the private investor to extend the term of the power

6    of attorney..."    and "a power of attorney which designates a mortgage broker or

7    mortgage agent as the attorney-in-fact or the agent of a private investor and which violates

8    the provisions of this section is void and must not be given effect with regard to any act

9    or transaction that occurs on or after October 1, 1999, whether or not the power of

10   attorney is or has been executed by the private investor before, on or after October 1,

11   1999."

12       48.    The Powers of Attorney granted by Plaintiffs and other direct lenders to

13   USACM expire as the term of each loan expires, and are now in default.  No written

14   extension of any of Plaintiffs' Powers of Attorney have been executed as required by NRS

15   645B.330.

16       49.    At the time the Loan Servicing Agreements were transferred to Compass,

17   many of the loans in the USACM loan portfolio were in term default, and others have

18   since gone into term default.

19       50.    As a result of the term default of various loans in the USACM portfolio,

20   Compass no longer has a valid power of attorney to act on behalf of direct lenders and, as

21   such. the powers of attorney required under NRS 645B.330 have expired.

22       51.    Despite the fact no valid power of attorney exists that authorizes Compass

23   to act on behalf of Plaintiffs and other direct lenders, Compass continues to hold itself out

24   as a representative/agent of Plaintiffs (and other direct lenders)  to borrowers, title

25   companies and others.  Without the power to do so, Compass has negotiated payoffs, filed

26   lawsuits and executed satisfactions on behalf of Plaintiffs and other direct lenders.

27       52.    In May, 2007, the State of Nevada, Department of Business and Industry,

28   Division of Mortgage Lending entered a formal *Order Revoking Mortgage Broker License*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 15 -

1  *And Notice of Right To Request Hearing*, pursuant to which USACM license to act as a

2  mortgage broker/agent in Nevada was revoked and in which the State described USACM

3  as "a calculated, self-serving deceptive scheme that was enacted to allow the Principals to

4  potentially profit with no risk, while astronomical risk inured to the unsuspecting lenders."

5  A copy of the *Order Revoking Mortgage Broker License And Notice of Right To Request*

6  *Hearing,* is attached hereto as Exhibit C.

7      53.    On May 9, 2007, entered a formal *Order Imposing Fine And Order To Cease*

8  *And Desist And Notice of Right To Request Hearing,* pursuant to which Compass was

9  ordered to cease and desist all mortgage lending/agent activities in Nevada, a copy of

10  which is attached hereto as Exhibit D.

11      54.    Compass was not able to obtain a license from the State of Nevada, Mortgage

12  Lending Division, as required by the Asset Purchase Agreement.  As a result, in February

13  2007, Compass entered into a sub-servicing agreement with USACM.  The sub-servicing

14  agreement, among other things, provided for USACM to provide administrative functions,

15  while negotiations with borrowers, foreclosures, or other legal proceeding were left to

16  Compass.

17      55.    Since taking over as loan servicer, Compass has failed to communicate to

18  Direct Lenders certain offers made by borrowers to repay their debt to the Direct Lenders.

19      56.    Since taking over as loan servicer, Compass has negotiated with borrowers

20  for its own benefit, and to the detriment of Direct Lenders.

21      57.    Since taking over as loan servicer, Compass has misrepresented the status of

22  loans to Direct Lenders.

23      58.    Since taking over as loan servicer, Compass has taken the position that it is

24  entitled to be paid default interest, prior to Direct Lenders being paid principal and

25  interest.

26      59.    Since taking over as loan servicer, Compass has applied principal and interest

27  payments made by borrowers to pay itself so-called loan origination fees.

28      60.    Since taking over as loan servicer, Compass has failed to produce, keep and

1    maintain records and reports required by Nevada Revised Statutes, Chapter 645B.

2        61.    Since taking over as loan servicer, Compass has struck secret deals with

3    borrowers, pursuant to which Compass received payments from borrowers, when the

4    Plaintiffs and other direct lenders were not receiving full principal and interest payments

5    from the borrower.

6        62.    At all times both USACM, as subservicer, and Compass falsely acted without

7    benefit of Power of Attorney, representing to borrowers, title companies and others that

8    they represented the Plaintiffs and other direct lenders.

9        63.    Based on the various acts on Compass, and Compass alone, and NAC

10   645B.073, Direct Lenders constituting over 51% of the beneficial interests in various loans

11   serviced by Compass have executed written elections pursuant to Section 3 of the Loan

12   Servicing Agreement and NAC 645B.073 to: (1) terminate any rights that Compass may

13   have to service their various Loan; and (2) to appoint an alternate servicing agent for

14   loans.

15       **D.    The Standard Property Loan.**

16       64.    Each Note executed by borrowers in favor of Plaintiffs and other direct

17   lenders, expressly provides that the lender shall have the option of determining the

18   priority in which payments on each loan are applied.

19       65.    Certain Plaintiffs, and other direct lenders, through USACM, made a direct

20   loan to STANDARD PROPERTY DEVELOPMENT, LLC ("Standard Property"), which

21   loan is commonly known as the Standard Property Loan (hereinafter the "Standard

22   Property Loan"). In connection with the Standard Property Loan, Plaintiffs executed a

23   Power of Attorney, pursuant to which they appointed USACM as their servicer for the

24   Standard Property Loan, governed by the terms of the Loan Servicing Agreement. As of

25   March 15, 2007, the total principal balance the Standard Property Loan was $9,640,000

26   ("Standard Property Principal Balance").

27       66.    On February 27, 2006, Standard Property executed a Promissory Note

28   Secured By Mortgage in favor of certain Plaintiffs and other direct lenders (the "Standard

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

1  Property Note"), which provides for an interest rate of twelve and one-half percent
2  (12.5%) per annum.  Pursuant to Section 4 of the Standard Property Note all payments on
3  the Note were to first be applied toward the payment of accrued interest.

4    67.    USACM's right to service the Standard Property Loan on behalf Plaintiffs
5  was transferred to Compass.

6    68.    Pursuant to Section 3(c)(i) of the Loan Servicing Agreement, the loan
7  servicer is required to proceed diligently to collect all payments due under the terms of the
8  note and promptly pay the proper parties principal, interest, late charges, insurance and
9  other specified funds.  Pursuant to Section 5 of the Loan Servicing Agreement, USACM
10  as servicer had the right to retain, as compensation for servicing loans, (a) a servicing fee
11  varying between 1-3% per annum; (2) any late charges collected from the borrower; and
12  (c) any default interest collected from the borrower pursuant to the terms of the note.

13    69.    On March 7, 2007, Compass, through Mark L. Olson, Director of Investors
14  Relations for Compass, sent a letter certain Plaintiffs and all other direct lenders in the
15  Standard Property Loan, in which it sought the approval of 100% of the direct lenders in
16  the Standard Property Loan of an agreement Compass reached with Standard Property to
17  pay off the Standard Property Loan.  According to that letter, the terms of the payoff
18  included:

19    a.    The Direct Lenders in the loan receive 100% of their unpaid Standard
20          Property Principal Balance;

21    b.    The Direct Lenders do not receive any accrued interest; and

22    c.    Compass shall release the security interest against Standard Property's
23          real property.

24    70.    In reliance on the representations of Compass in the March 7, 2007, letter,
25  certain Plaintiffs and other direct lenders constituting 100% of the beneficial interest in the
26  Standard Property Loan approved the payoff in accordance with the specific terms of the
27  March 7, 2007, letter.

28    71.    On or about March 13, 2007, USACM, through Mark L. Olson, COO,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 18 -

1  issued a Payoff Statement to Standard Property (the "Standard Property Payoff
2  Statement"), which required Standard Property to make a payoff, as of March 15, 2007,
3  in the amount of $10,499,068 with a per diem interest accrual of $2,205.74 for every day
4  after March 15, 2007.  The $10,499,068.15 payoff consisted of:

|   |                                    |    |              |
|---|------------------------------------|----|--------------|
| a. | Standard Property Principal Balance: | $  | 9,640,000.00 |
| b. | Late Fees:                          | $  | 47,694.43    |
| c. | Other Fees:                         | $  | 267,164.11   |
| d. | Default Interest                    | $  | 544,509.60   |

9      72.    The Standard Property Payoff Statement revealed that Compass had a secret
10 agreement with Standard Property, undisclosed to the Standard Property Loan Direct
11 Lenders, whereby Compass received Late Fees, Other Fees and Default Interest from
12 Standard Property, without collecting accrued contractual interest owed to the Direct
13 Lenders.

14     73.    On or about March 15, 2007, Standard Property paid off the Standard
15 Property Loan pursuant to the terms of the Standard Property Payoff Statement.

16     74.    At the time the Standard Loan was paid off, Compass did not pay the
17 Standard Property Loan direct lenders any of the accrued interest they were owed, but took
18 the available funds pay themselves default interest, late fees and other fees totaling
19 $859,368.14.

20     75.    At the time the Standard Loan was paid off, Compass and Silar directed the
21 escrow company to wire $859,068.14 of Plaintiffs and other direct lenders principal loan
22 proceeds directly to Silar.

23                           **CLAIMS FOR RELIEF**
24                         **FIRST CLAIM FOR RELIEF**
25                          **(Declaratory Relief)**

26     76.    Plaintiffs  reallege and incorporate by reference each and every allegation
27 contained in paragraphs 1 through 75 as though fully set forth herein.

28     77.    An actual, ripe, and justiciable controversy has arisen and now exists

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 19 -

1  between the Plaintiffs and Compass as follows:

2     a) Plaintiffs contend that pursuant to NAC 645B.073, Plaintiffs and

3       other direct lenders have an absolute right to replace Compass as loan

4       servicer in any loan provided 51% of the beneficial interests of the

5       Loan have made the decision to do so.  Compass contends that it

6       cannot be terminated as loan servicer based solely on NAC 645B.073.

7     b) Plaintiffs contend that payments made by borrowers are first to be

8       applied to accrued non-default rate interest and then to principal, and

9       then to default interest and late fees, which priority may only be

10       altered by the direct lenders in each loan.  Compass contends that all

11       payments by borrowers are first applied to pay Compass default

12       interest and late fees.

13     c) Plaintiffs contend that a lender in a loan secured by real property has

14       an absolute right to modify the terms of their promissory note and

15       deed of trust to maximize their recovery, irrespective of the rights of

16       any third-party loan servicer.  Compass contends that Plaintiffs have

17       no right to modify the terms of their note and deed of trust with the

18       third-party borrower.

19     d) Plaintiffs contend that as a result of the maturity of various loans in

20       the USACM portfolio, Compass no longer has a valid power of

21       attorney to act on behalf of Plaintiffs on such Loans, as is required by

22       NRS 645B.330.  Compass maintains that it still has the power and

23       authority to act on Plaintiff's behalf.

24     e) Plaintiffs contend that pursuant to the Notes executed by third-party

25       borrowers in favor of Plaintiffs and other direct lenders, the direct

26       lenders have the right to determine the priority of allocating payments

27       made by the third-party borrower.  Compass maintains that it, as the

28       loan servicer, has the right to determine the priority of allocating

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd   - 20 -

1    payments.

2    f)    Plaintiffs contend that, based upon Compass' breaches of the Loan

3    Servicing Agreements, upon termination of the Loan Servicing

4    Agreement Compass is not entitled to any compensation provided for

5    in section 5 of the Loan Servicing Agreements. Plaintiff are informed

6    and believe that Compass contends that it has an absolute right to

7    collect default interest.

8    g)    Plaintiffs contend that they are entitled to terminate their Loan

9    Servicing Agreements with Compass by virtue of Compass' actions

10    in connection with certain loans, as detailed above. Plaintiffs are

11    informed and believe that Compass contends that Plaintiffs are not

12    entitled to terminate the Loan Servicing Agreements.

13    78.    A determination of the disputes set forth in paragraph 41, above, is necessary

14    and appropriate at this time in order to resolve the adverse interests of Plaintiffs and

15    Compass.

16    **SECOND CLAIM FOR RELIEF**

17    **(Breach of Contract)**

18    79.    Plaintiffs reallege and incorporate by reference each and every allegation

19    contained in paragraphs 1 through 78 as though fully set forth herein.

20    80.    Plaintiffs have performed all of her obligations under the Loan Servicing

21    Agreement.

22    81.    Compass breached the Loan Servicing Agreement by:

23    a.    failing to pay accrued contractual interest to Plaintiffs;

24    b.    failing to communicate to Plaintiffs certain offers made by

25    borrowers to repay their debt to the Direct Lenders;

26    c.    negotiating with borrowers for its own benefit, and to the

27    detriment of Plaintiffs;

28    d.    misrepresenting the status of loans to Plaintiffs;

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 21 -

1          e.      taking funds that were available to pay accrued interest to

2    Plaintiffs to pay itself Default Interest, Late Fees and Other Fees;

3          f.      applying principal and interest payments made by borrowers

4    to pay itself so-called loan origination fees;

5          g.      failing to produce, keep and maintain appropriate accounting

6    records on each loan as required by section 2(b) of the Loan Servicing Agreements;

7          h.      striking secret deals with borrowers, pursuant to which

8    Compass received payments from borrowers, when the Plaintiffs and other direct lenders

9    were not receiving full principal and interest payments from the borrower; and

10         i.      failing to promptly pay Plaintiffs principal and interest as

11   required by section 2(c)(I) of the Loan Servicing Agreements.

12       82.     Compass breached the Loan Servicing Agreements, which are expressly

13   governed by Nevada law, because Compass is not licensed as a mortgage broker/agent in

14   Nevada.

15       83.     Compass breached the Loan Servicing Agreements, which are expressly

16   governed by Nevada law, because Compass has been ordered by the State of Nevada cease

17   and desist the performance of its obligations under the Loan Servicing Agreements and,

18   therefore, Compass is unable to lawfully perform its required services under the Loan

19   Servicing Agreement.

20       84.     As a result of Compass' breaches of the Loan Servicing Agreement, Plaintiffs

21   suffered damages in an amount to be proven at trial.

22                          **THIRD CLAIM FOR RELIEF**

23                               **(Conversion)**

24       85.     Plaintiffs reallege and incorporate by reference each and every allegation

25   contained in paragraphs 1 through 84 as though fully set forth herein.

26       86.     Compass wrongfully took for itself funds paid in connection with certain loan

27   payoffs, which funds were due and owing to Plaintiffs and other direct lenders as accrued

28   contractual interest.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 22 -

87.   Compass' taking of Plaintiffs' funds was inconsistent with Plaintiffs rights to those funds pursuant to the Standard Property Note and the Loan Servicing Agreement.

88.   Compass' taking of Plaintiffs' funds was in derogation, exclusion and defiance of Plaintiffs rights to those funds.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

89.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 88 as though fully set forth herein.

90.   Compass owed a fiduciary duty to Plaintiffs as a loan servicer under the Loan Servicing Agreements.

91.   Compass breached its fiduciary duty to Plaintiffs by:

       a.   failing to pay accrued contractual interest to Plaintiffs;

       b.   failing to communicate to Plaintiffs certain offers made by borrowers to repay their debt to the Direct Lenders;

       c.   negotiating with borrowers for its own benefit, and to the detriment of Plaintiffs;

       d.   misrepresenting the status of loans to Plaintiffs;

       e.   taking funds that were available to pay accrued interest to Plaintiffs to pay itself Default Interest, Late Fees and Other Fees;

       f.   applying principal and interest payments made by borrowers to pay itself so-called loan origination fees;

       g.   by striking secret deals with borrowers, pursuant to which Compass received payments from borrowers, when the Plaintiffs and other direct lenders were not receiving full principal and interest payments from the borrower; and

       h.   by collecting Default Interest, Late Fees and Other Fees on its own behalf, without collecting accrued non-default interest on behalf of Plaintiffs.

92.   As a result of Compass breaching its fiduciary duty to Plaintiffs, Plaintiffs has suffered damages in an amount to be proven at trial in this matter.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd   - 23 -

# FIFTH CLAIM FOR RELIEF

## (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

93.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 92 as though fully set forth herein.

94.    Compass owed Plaintiffs a duty of good faith and fair dealing arising from the Loan Servicing Agreement.

95.    Plaintiffs imposed a special element of reliance in Compass as their loan servicer, who stands in a superior and entrusted position in connection with Compass' negotiation of the payoff of the Standard Property Loan and in performing all other services under the Loan Servicing Agreement.

96.    Compass breached the duty of good faith and fair dealing it owed to Plaintiffs by:

a.    failing to pay accrued contractual interest to Plaintiffs;

b.    failing to communicate to Plaintiffs certain offers made by borrowers to repay their debt to the Direct Lenders;

c.    negotiating with borrowers for its own benefit, and to the detriment of Plaintiffs;

d.    misrepresenting the status of loans to Plaintiffs;

e.    taking funds that were available to pay accrued interest to Plaintiffs to pay itself Default Interest, Late Fees and Other Fees;

f.    applying principal and interest payments made by borrowers to pay itself so-called loan origination fees;

g.    by striking secret deals with borrowers, pursuant to which Compass received payments from borrowers, when the Plaintiffs and other direct lenders were not receiving full principal and interest payments from the borrower; and

h.    by collecting Default Interest, Late Fees and Other Fees on its own behalf, without collecting accrued non-default interest on behalf of Plaintiffs.

97.    Plaintiffs suffered damages in an amount to be proven at trial as a result of

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 24 -

Compass breaching the duty of good faith and fair dealing it owed to her.

**SIXTH CLAIM FOR RELIEF**

**(Constructive Fraud)**

98.    Plaintiffs realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 97 as though fully set forth herein.

99.    Compass owed Plaintiffs legal and equitable duties arising from their fiduciary and confidential relationship.

100.    Compass breached its duties to Plaintiffs by misrepresenting the actual negotiated terms of loan payoffs.

101.    Compass breached its duties to Plaintiffs by concealing material terms of the loan payoffs.

102.    Compass breached its duties to Plaintiffs by misrepresenting the terms of payoff compromise offers made by borrowers.

103.    Compass breached its duties to Plaintiffs by concealing the terms of payoff compromise offers made by borrowers.

104.    Plaintiffs suffered damages in an amount to be proven at trial as a result of Compass' constructive fraud.

**SEVENTH CLAIM FOR RELIEF**

**(Fraudulent Misrepresentation)**

105.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 104 as though fully set forth herein.

106.    Compass made false representations to Plaintiffs regarding the negotiated terms of the Standard Loan payoff.

107.    Compass knew or believed that is representations regarding the Standard Loan payoff were false.

108.    Compass intended to induce Plaintiffs to act upon its misrepresentation by approving the Standard Loan payoff.

109.    Plaintiffs justifiably relied on Compass' misrepresenetations and approved

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 25 -

1   the Standard Loan payoff.

2       110.   As a result of Compass' fraudulent misreprensation, Plaintiffs suffered

3   damages in an amount to be proven at trial.

4                        **EIGHTH CLAIM FOR RELIEF**

5                              **(Conversion)**

6                              (Compass)

7       111.   Plaintiffs reallege and incorporate by reference each and every allegation

8   contained in paragraphs 1 through 110 as though fully set forth herein.

9       112.   Compass has wrongfully exerted domain and control over principal loan

10  proceeds from third-party borrowers, which proceeds belong to Plaintiffs and other direct

11  lenders.

12      113.   Compass' taking of Plaintiffs' principal loan proceeds is inconsistent with

13  Plaintiffs' right, title and interest in those proceeds.

14      114.   Compass' taking of Plaintiff's loan proceeds is in derogation, exclusion and

15  defiance of Plaintiffs' right, title and interest in those proceeds.

16                       **NINTH CLAIM FOR RELIEF**

17                             **(Conversion)**

18                              (Silar)

19      115.   Plaintiffs reallege and incorporate by reference each and every allegation

20  contained in paragraphs 1 through 114 as though fully set forth herein.

21      116.   Silar has wrongfully exerted domain and control over principal loan proceeds

22  from the Standard Loan Payoff belonging to Plaintiffs and other direct lenders.

23      117.   Silar's taking of Plaintiffs' Standard Loan proceeds is inconsistent with

24  Plaintiffs' right, title and interest in those proceeds.

25      118.   Silar's taking of Plaintiff's Standard Loan proceeds is in derogation,

26  exclusion and defiance of Plaintiffs' right, title and interest in those proceeds.

27  ///

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\USA Lenders\w Compass Partners\Complaint v Compass V5.wpd    - 26 -

## TENTH CLAIM FOR RELIEF

### (Civil Conspiracy)

(All Defendants)

119.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 118 as though fully set forth herein.

120.   Silar had knowledge of Compass business plan when it financed the purchase of the Loan Servicing Agreements.

121.   Silar had knowledge of Plaintiffs and other direct lenders' rights when it took proceeds from the Standard Loan Payoff.

122.   Piskun and Blatt, the principals and beneficiaries of Compass, formed and operate Compass for the purpose of conducting activites prohibited by Nevada law.

123.   Compass, Piskun, Blatt and Silar, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Plaintiffs and other direct lenders, as detailed above and incorporated herein.

124.   Plaintiffs have suffered damages resulting from the concerted acts of Compass, Piskun, Blatt and Silar,

WHEREFORE, Plaintiffs respectfully request judgment as follows:

a.   For a declaration by this Court that Plaintiffs, together with other direct lenders making up 51% of the beneficial interests of any loan, have the absolute right under NAC 645B.073 to terminate Compass as loan servicer for each loan and to designate a new loan servicer;

b.   For a declaration of this Court that Compass' actions related to the Standard Property Loan entitles Plaintiffs to terminate the Loan Servicing Agreement as it applies to all loans in which Plaintiffs are direct lenders;

c.   For a declaration of this Court that Plaintiffs and other direct lenders have an absolute right to modify the terms of their promissory note and deed of trust with the third-party borrower to maximize their

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\USA Lenders\v Compass Partners\Complaint v Compass V5.wpd    - 27 -

1    recovery;

2    d.    For a declaration of this Court that as a result of the maturity of

3          various loans in the USACM portfolio, Compass no longer has a

4          valid power of attorney to act on behalf of Plaintiffs on such Loans,

5          as is required by NRS 645B.330.

6    e.    For a declaration that Plaintiffs and other direct lenders have the right

7          to determine the priority of allocating payments made by any third-

8          party borrower, and that Compass has no such right.

9    f.    For a declaration by this Court that Compass is not entitled to any

10         compensation under section 5 of the Loan Servicing Agreements;

11   g.    For a declaration that Plaintiffs are entitled to terminate Compass as

12         servicer on any loan based upon breaches of the Loan Servicing

13         Agreement by Compass;

14   h.    For a declaration that payments made by borrowers on loans shall

15         first be applied to accrued non-default rate interest, then to principal,

16         and then to accrued default interest and late fees, subject only to the

17         rights of direct lenders on a specific loan to designate a different

18         sequence of payment;

19   i.    For an award of damages against Compass in an amount in excess of

20         $75,000, to be proven at trial in this matter;

21   j.    For an award of damages against Silar in an amount excess of

22         $75,000, to be proven at trial in this matter;

23   k.    For an award of damages against Blatt in an amount excess of

24         $75,000, to be proven at trial in this matter;

25   l.    For an award of damages against Piskun in an amount excess of

26         $75,000, to be proven at trial in this matter;

27   m.    For an award of punitive damages;

28   n.    For an award of reasonable attorneys' fees;

1    o.    For costs of suit incurred herein; and

2    p.    For such other and further relief as this Court deems just and proper.

3    **DATED** this _____ day of May, 2007.

4                                    LAW OFFICES OF ALAN R. SMITH

5                            By:_____*/s/ Kevin A. Darby, Esq.*_____

6                                    ALAN R. SMITH, ESQ.
                                     KEVIN A. DARBY, ESQ.

7                                    Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28