# EXHIBIT F

## LOAN MANAGEMENT AGREEMENT

This Loan Management Agreement ("Agreement") is made by and between the direct lenders in that certain secured loan commonly known as the _____ loan, (hereinafter "Lenders") and Lender 2 Lender, LLC (hereinafter "L2L") and is effective as of May 18, 2007.

### RECITALS

A. The Lenders each loaned money to borrower in connection with a certain loan commonly known as the _____ loan, which was originated and initially serviced by USA Commercial Mortgage Company (the "Loan"); and

B. Pursuant to the Chapter 11 Plan Of Reorganization of USA Commercial Mortgage Company, the servicing rights for the Loan were purportedly transferred to Compass Financial Partners, LLC ("Compass"); and

C. Fifty-one percent (51%) of the beneficial interests in the Loan have elected to terminate Compass as loan servicer and have decided to designate L2L as their agent under this Loan Management Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the terms and conditions set forth below, the parties hereto agree as follows:

1. **Duties and Powers of L2L.** L2L shall analyze the Loan, the status of the borrower, and the collateral for the Loan to determine the best method to maximize recovery on the Loan, and with approval of at least fifty-one percent (51%) of the beneficial interests in the Loan L2L shall have the duty and power to take the following actions with regard to the Loan:

   a. Assist in arranging additional financing for the borrower(s), and subordinate the Loan to new financing if necessary to improve the collateral in order to maximize recovery under the Loan.

   b. Agree to a reduction or elimination of accrued interest, late fees and default interest, if determined necessary by L2L to maximize recovery under the Loan.

   c. Agree to a reduction in the principal balance of the Loan if deemed necessary by L2L to maximize recovery under the Loan.

   d. Take all steps to foreclose on the Loan under applicable law if deemed necessary by L2L to maximize recovery under the Loan.

   e. To enter a credit bid at any foreclosure sale under terms and conditions and in an amount determined appropriate by L2L.

    f.    In the event L2L is the successful credit bidder, to assure that title to the property is held in the name of all of the lenders on the Loan with interest percentages based upon the relation between the individual fractional interest to the total of all fractional interests on the Loan.

    g.    In the event L2L is the successful credit bidder at any foreclosure sale, to take such steps as are necessary to maintain, market and sell the property.

    h.    To commence legal action against the borrower(s) in a court of appropriate jurisdiction to seek such relief as L2L deems necessary to perfect the collateral and maximize the recovery under the Loan.

    i.    To defend Lenders or any of its members, against any legal action that may be taken by any entity that in the opinion of L2L interferes with L2L's ability to maximize recovery under the Loan.

For the purposes of this Agreement if Lender fails to grant or deny its consent within ten (10) days after the notice from L2L, or by the date specified in the notice, Lender shall be deemed to have conclusively given its consent.

2.    **Accounting, Reports And Distributions By L2L.**

    a.    L2L shall provide periodic reports to the fractional beneficial interests in the Loan, advising of the status of L2L's collection efforts on the Loan.

    b.    L2L shall keep appropriate and complete accounting records of the principal, interest, late fees, late charges, sums collected, expenses incurred, and fees charged by L2L, and shall provide periodic reports of such accountings to the fractional beneficial interests in the Loan;

    c.    L2L shall make pro rata distributions to the fractional beneficial interests in the Loan of all proceeds recovered on the Loan by any means, following the payment of all expenses of L2L as set forth in Section 3, below.

3.    **Compensation To L2L.**  For its services as set forth above, L2L shall be compensated as follows:

    a.    L2L shall be paid a fee of one-percent (1%) of the unpaid principal balance of the Loan, such payment shall be made from the first proceeds recovered on the Loan.

    b.    L2L shall be paid a loan resolution fee that shall accrue: (1) in the amount of .25% of Lender's principal investment during the first three months of this Agreement and; (2) in the amount of .75% of Lender's principal investment per quarter for each and every quarter thereafter until the Loan is paid off.

    c.    L2L shall be entitled to recover from any proceeds collected on the Loan, all

attorneys fees advanced by L2L which are associated with necessary litigation.

d. Provided all Lenders have received all principal and accrued interest due to them, L2L shall receive all late fees and default interest due and recovered under the terms of the Loan.

e. In the event any Lender desires to sell all or any part of its interest in the Loan, L2L shall have the first option to locate a buyer. In the event L2L assists Lender in finding a buyer, at the option of L2L, a fee of 5% of the remaining balance of Lender's undivided interest in the Loan will be deducted from the selling price and paid to L2L on all such assignments for which L2L located the assignee.

4. **Termination Rights.** As provided in Nevada Administrative Code 648B.073, fractional beneficial interests in the Loan holding at least sixty-seven percent (67%) of the total beneficial interests in the Loan may act on behalf of all Lenders in the event of a default or foreclosure for matters that require the direction or approval of the holders of the beneficial interests in the Loan, including, without limitation:

a. The designation of a Manager, mortgage broker, servicing agent or other person to act on the behalf of the holders of the beneficial interests in the loan; and

b. The sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

5. **L2L's Right to Delegate.** Notwithstanding anything contained herein, L2L may in its sole discretion delegate specific loan servicing or resolution obligations to a workout specialist, loan consultants, asset management advisors, real estate brokers or agents, appraisers, attorneys, trustees, or others, to be determined by L2L in its sole discretion.

6. **Term and Termination.** This Agreement shall remain in effect until the Loan is completely liquidated (unless sooner terminated in accordance with the terms hereof).

7. **Integration Clause.** This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof.

8. **Power of Attorney.** Lenders hereby appoints L2L as its true and lawful attorney-in-fact to a) execute contracts, escrow instructions, conveyances, mortgages, deeds of trust, releases and all other documents necessary to carry out the services described herein; b) to do all things and take all actions on behalf of Lenders which are necessary or convenient to effectuate this Agreement and its intent as Lenders might or could do if personally present. This Power of Attorney shall remain in effect until the Loan is completely liquidated.

9. **Release and Indemnification.** Lenders acknowledge that L2L is entering this Agreement due to the fact that the loan was originated and serviced by USA Commercial Mortgage Company and subsequently purportedly transferred to Compass through a Plan

of Reorganization under Chapter 11 of the Bankruptcy Code, and that it is a benefit to Lenders for L2L to enter this Agreement. As consideration for this Agreement, Lenders expressly release L2L for any and all claims, liabilities, damages or losses, of any nature, that Lenders incur or has incurred: a) as a direct or indirect result of Prior Servicers activities with regard to origination and/or servicing of the Loan, and/or b) due to any occurrence or activity with regard to the Loan that was not caused by L2L's sole and absolute conduct. In addition, Lenders shall indemnify, defend, and hold L2L harmless from any claims, damages, losses, of any nature, including attorney's fees and costs that L2L may incur, pay, or become obligated to pay a) as a direct or indirect result of Prior Servicers activities with regard to origination and/or servicing of the Loan, and/or b) due to any occurrence or activity regarding the Loan that was not caused by L2L's sole and absolute conduct.

10. **Loan Documentation.** If L2L is making diligent efforts to complete and verify the servicing file because a servicing file has not been transferred in part, is not complete, or contains incorrect information on the applicable transfer date, L2L shall not be responsible for any failure to provide any service hereunder, or for any inaction or any action taken hereunder related to such incompleteness or incorrectness. L2l shall not be responsible for the form, substance, validity, perfection, priority, effectiveness or enforceability of any documents in the servicing file on the applicable transfer date or on the date it obtains such documents from the current servicer. Upon reasonable request by L2L, lender shall furnish L2L with such documents as may be necessary or appropriate to enable L2L to collect payments against and otherwise service and manage the loans in accordance with this agreement. Lender agrees to cooperate fully with L2L with respect to all reasonable requests made by L2L in connection with the transfer of the servicing.

11. **Buyout Rights.** In its sole discretion, L2L may payoff any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to L2L an assignment, in form acceptable to L2L of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

12. **Reimbursement Fees And Costs.** Unless agreed to in a separate agreement between L2L and Lenders, Lenders agrees to pay, on ten (10) day written notice, to reimburse L2L, for it's pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fee and foreclosure costs. In the event that Lender fails to pay such sums to L2L upon request thereof, L2L may, in its discretion, advance such fees, including trustee's fees, attorney's fee, and costs of foreclosure; provided, however, that any fees advanced by L2L shall bear an interest rate equal to the note rate. These advances, together with accrued interest will be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender.

13. **Hold-Backs.** L2L shall have the right, but not the duty, to hold-back, segregate and hold in trust, any portion of Loan resolution proceeds to which L2L is informed and believes

the recipient of which is in dispute.

14. **Governing Law.** This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws. The parties hereto expressly agree that any action brought in connection with this Agreement shall be commenced and maintained in Washoe County, Nevada, and all parties expressly consent to the jurisdiction of any State or Federal Courts situated in Washoe County, Nevada.

15. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

16. **Attorney's Fees.** In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal.

17. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

18. **Headings.** Sections headings used in this Agreement are for convenience only shall not affect the meaning or interpretation of this Agreement.

19. **Authority.** Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement. Lender acknowledges that this Agreement shall not be in force until accepted and signed by LZL.

20. **Severability.** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written.

LENDER 2 LENDER, LLC.                           DIRECT LENDERS

By:_____                    By:_____
                                                Donna A. Cangelosi,
Name:_____                    Chairman of the Lenders Protection
                                                Group, under power granted by in
                                                excess of 51% of the beneficial
                                                interests in the Loan

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF
## _____ LENDERS, LLC

This Limited Liability Company Operating Agreement (this "Agreement") of _____ LENDERS, LLC, a limited liability company formed under the laws of the State of Nevada, (the "Company") is made effective as of May 5, 2007 by and between all parties listed on Schedule A, as members (collectively hereinafter referred to as the "Members").

## ARTICLE I - PURPOSE AND POWERS OF THE COMPANY

**Section 1.1 Purpose.** The Company has been formed for the purpose of holding, managing, and maximizing prompt recovery of the beneficial interests in that certain Secured Promissory Note and Deed of Trust executed by _____ (the "Borrower") in the principal amount of _____ (collectively referred to herein as the "Loan") for the benefit of its Members. The Company shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of this purpose. The Company, this Agreement, and the rights of the parties hereunder, shall be interpreted in accordance with the laws of the State of Nevada.

## ARTICLE II - CAPITAL CONTRIBUTIONS AND MEMBERSHIP UNITS

**Section 2.1 Capital Contributions.** Capital contributions shall be made by the Members of the Company in the form of an assignment of their beneficial interest in the Loan (the "Member's Fractional Interest") to the Company, as detailed in the attached Exhibit A (the "Capital Contributions").

**Section 2.2 Allocation of Capital Contributions.** One percent (1%) of each Member's Capital Contribution shall immediately be allocated to a legal fund to used at the discretion of Manager in pursuit of, or in defense of, any initiated or necessary legal action related to prior servicing activities.

**Section 2.3 Membership Units.** Membership interests in the Company shall be in the form of membership units (the "Membership Units"). The total number of authorized Membership Units in the Company shall be identical to the principal dollar amount of the total Capital Contributions. Each Membership Unit shall equal one dollar ($1.00).

**Section 2.4 Issuance of Membership Units.** Upon a Member executing the Membership Subscription Agreement, the member shall be considered a member of the Company. Upon contribution of Member's Capital Contribution pursuant to Section 2.1, the Company shall issue Membership Units to the contributing member in an amount identical to the principal dollars in the Loan assigned by the Member to the Company. For each dollar of the Loan's principal beneficial interest assigned to the Company, a member shall receive one (1) membership unit.

**Section 2.5 Limitation of Liability of Members.** No Member shall have any liability or obligation for any debts, liabilities or obligations of the Company, or of any other Member, or any agent or employee of the Company, beyond such Member's respective Capital Contribution or obligation to

make a Capital Contribution.

## ARTICLE III - MANAGEMENT

**Section 3.1 Management of the Company.** The Company shall be managed by FDH Management Company, LLC, a Nevada limited liability company ("Manager").

**Section 3.2 Board of Members.** The Company shall establish a Board of Members to act on behalf of the Members and to direct and advise the Manager, subject to the terms of the Loan Management Agreement. The Board of Members shall initially be comprised of two (2) Board Members appointed by the Manager. The Board shall be expanded to a total of five (5) members to be elected by the popular vote of the Members of the Company on July 15, 2007, and annually thereafter. For the purposes of this Section 3.2 "popular vote" shall mean the majority of Members in number, irrespective of their Membership Units.

## ARTICLE IV - TAX MATTERS

**Section 4.1 Taxation as Partnership.** The Company shall elect to be taxed as a "partnership" for federal income tax purposes, and the Members shall make such elections, filings and take such other actions as deemed appropriate or necessary by the Company's accountants, to qualify the Company as a "partnership" for federal income tax purposes. The Manager is hereby designated the tax matters member for the Company under §6231(a)(7) of the Internal Revenue Code (the "Code") and is empowered to take all actions necessary, including the expenditure of reasonable sums, to address tax matters.

## ARTICLE V - ADDITIONAL MEMBERS

**Section 5.1 Admission.** At sole discretion of the Manager, any person holding a beneficial interest in the Loan may be admitted as an additional member of the Company (each, an "Additional Member" and collectively, the "Additional Members"). Each such person shall be admitted as an Additional Member at the time such person (i) assigns its beneficial interest in the Loan to the Company in exchange for Membership Units as detailed in Article II, above; (ii) executes this Agreement or a counterpart of this Agreement and (iii) is named as a Member on Exhibit. Any Member admitted to the Company after June 10, 2007, shall be required to pay an additional $1,500.00 processing fee to the Company as a condition of becoming a Member, in consideration for the administrative fees, recording fees, legal fees and other costs associated with the issuance of the Membership Interest.

## ARTICLE VI - ASSIGNABILITY OF INTERESTS AND SUBSTITUTE MEMBERS

**Section 6.1 Assignability of Interests.** Subject to Section 6.2, below, a Member may sell or assign its Membership Units in the Company; provided that such assignee first executes an instrument reasonably satisfactory to the Manager accepting and agreeing to the terms and conditions of this Agreement, including a counterpart of this Agreement, and paying to the Company a transfer fee in the amount of five percent (5%) of the Member's Membership Interest being transferred.

Section 6.2 **Right of First Refusal.** Upon obtaining or making an offer to sell, assign or transfer a Member's Membership Units, the Member (the "Selling Member") shall:

(a) First, disclose the terms of the proposed sale, assignment or transfer to the Manager, at which time the Manager shall have the right to purchase, on behalf of the Company, the Member's Membership Units on identical terms and conditions as those disclosed by the Selling Member to the Company (the "Company's Right of First Refusal). The Manager shall have ten (10) business days from the date the offer is disclosed to exercise the Company's Right of First Refusal; and

(b) Second, in the event the Manager does not exercise the Company's Right of First Refusal in the time provided in Section 6.2(a), above, the Manager shall offer to the Members of the Company the opportunity to purchase the Selling Member's interest on identical terms and conditions as those disclosed by the Selling Member to the Company (the "Member's Right of First Refusal"). Members shall have ten (10) business days from the expiration of the Company's Right of First Refusal to exercise the Member's Right of First Refusal. Member's Right of First Refusal may be exercised by any Member of the Company on a first come, first served basis; and

(c) Third, in the event Members of the Company do not exercise the Member's Right of First Refusal, the Manager shall provide written consent to the Selling Member to sell, transfer and assign his Membership Units on terms and conditions identical to those disclosed to the Manager.

Section 6.3 **Recognition of Assignment by Company.** No assignment, or any part thereof, that is in violation of this Article VII shall be valid or effective, and neither the Company nor the Manager shall recognize the same for any purpose of this Agreement, including the purpose of making distributions pursuant to this Agreement. Neither the Company nor the Manager shall incur any liability as a result of refusing to make any such distributions to the assignee of any such invalid assignment.

## ARTICLE VII - LEVERAGING THE BENEFICIAL INTERESTS

The manager may elect to leverage the beneficial interests of the Company by obtaining a revolving credit facility from a third party lender. This credit facility would be used primarily, but not exclusively to fund the Company's pro-rata share of required advances for taxes, insurance, borrower litigation advances and other property related expenses as may be required from time to time by the administrator. In addition, Manager may elect to leverage the beneficial interests of the Company in order to pursue litigation against the prior administrator and affiliated parties.

All of the Company's beneficial interest may be pledged as security for this credit facility. As such, member's interest will be subordinate to that of the third party lender. The total amount outstanding under this credit facility will not at any time exceed ten-percent (10%) of the total beneficial interests, without further approval from the members.

The manager is not required to draw on the credit facility in order to fund these advances or expenses, although it may do so in its sole discretion. As of the date of this Agreement, the manager has not entered into a binding loan agreement with any third party lender and there is no assurance

that the manager will ever obtain a revolving credit facility or that such a credit facility, if obtained, would be in place during the entire term. This credit facility is intended to be repaid primarily from loan payoffs.

## ARTICLE VIII – DISTRIBUTIONS OF PROFITS

**Section 8.1 Profits.** It shall be the goal of the Company that each member receive the entire principal and accrued interest due on their Fractional Beneficial Interest in the Loan.

**Section 8.2 Distributions.** Upon recovery on the Loan from Borrower or from any other source, all proceeds shall be distributed among Members pro rata based on their beneficial Membership Interest as follows:

| Distributions: | Manager: | Members: |
|---|---|---|
| **Principal & Interest Collected** (due within no later than 40 days of receipt): | | |
| Borrower / Collateral Principal Payments | | 100% |
| Borrower / Accrued Interest Payments | | 100% |
| **Default Interest Collected** (due upon payoff of Loan): | | |
| Default interest collected | 50% | 50% |
| **Legal Recovery** (due upon payoff of Loan): | | |
| Legal awards & judgments (net of fees and costs) | 30% | 70% |
| **Other Fee's Collected** (due upon payoff of Loan): | | |
| The first 1.00% collected; | | 100% |
| The next 1.00% collected; | 100% | |
| The next 1.00% collected; | 50% | 50% |
| All other fees collected; | 100% | |

In Witness Whereof, the parties hereto have approved and adopted this Agreement as of the date first above written.

## MEMBERSHIP SUBSCRIPTION AGREEMENT

This Membership Subscription Agreement is between _____, Lenders, LLC ("Company") and _____ ("Member").

### RECITALS

WHEREAS, Member holds a fractional beneficial interest in that certain loan wherein _____ is the borrower, which loan was brokered by USA Commercial Mortgage Company (the "Loan"); and

WHEREAS, Member's fractional interest is based on an original principal investment of the sum of _____ (the "Member's Fractional Interest"); and

WHEREAS, Member desires to become a member in the Company.

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree as follows:

1. Member hereby assigns and transfers to Company Member's Fractional Interest together with all rights, title and interest associated therewith. Member shall deliver to Company Member's original promissory note duly endorsed in favor of Company, and shall execute an assignment of deed of trust in the form attached hereto as Exhibit A, both of which shall be delivered to the Company by Member no later than June 10, 2007.

2. Upon execution of this Membership Subscription Agreement, Member shall be a member in the Company with _____ Membership Units, and shall be bound by all obligations and entitled to all benefits of the Limited Liability Company Operating Agreement of the Company (the "Operating Agreement").

3. The signature by Member to this Membership Subscription Agreement shall constitute Member's consent and approval of the Company adopting an Operating Agreement identical in form and substance to the sample Operating Agreement provided by the Company to Member at the time this Subscription Agreement was executed, which Member expressly acknowledges receiving.

Dated as of May 5, 2007

_____  _____
Member Name                                              USACM Vesting Name

_____  _____
Address                                                         City, State, Zip

_____  _____
Member Signature                                          Member Signature

_____  _____
Telephone No.                                               Email

## ASSIGNMENT OF DEED OF TRUST FOR VALUE RECEIVED

The undersigned hereby grants, assigns and transfers to _____ Lenders, LLC, all beneficial interest under that certain Deed of Trust executed by _____, as more specifically described in Exhibit A hereto, TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

DATED _____, 2007

_____  
[Printed Vesting Name]

_____  
[Signature]

_____  
[Address]

_____  
[Printed Name of Signatory]

_____  
[Address]

STATE OF _____ )  
: ss.  
COUNTY OF _____ )

SUBSCRIBED and SWORN to before me this ____ day of May, 2007.

_____  
NOTARY PUBLIC