E-filed on: 5/30/07

CATHERINE CORTEZ MASTO
Attorney General
RICHARD I. DREITZER
Deputy Attorney General
555 E. Washington Avenue, Rm. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3165
Facsimile: (702) 486-3416
E-mail: ridreitz@ag.state.nv.us
Attorneys for State of Nevada,
Department of Business and Industry,
Mortgage Lending Division,
Interested Party

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br>     Debtor. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR |
| In re:<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br>     Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>     Debtor. | |
| In re:<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>     Debtor. | |
| In re:<br><br>USA SECURITIES, LLC.,<br>     Debtor. | |

**NOTICE TO COURT OF REGULATORY DEVELOPMENTS**

////

COMES NOW, Interested Party, STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, MORTGAGE LENDING DIVISION (hereinafter, "MLD") by and through its counsel of record, Catherine Cortez Masto, Attorney General, and Richard Dreitzer, Deputy Attorney General, and hereby submits the following Notice to Court of Regulatory Developments, for this Honorable Court's consideration.

1. On April 13, 2006, USA Commercial Mortgage Company, (hereinafter, "USACM"), a licensed mortgage broker in the State of Nevada pursuant to Chapter 645B of the Nevada Revised Statutes, filed the instant Chapter 11 petition. USACM was accompanied into bankruptcy by several of its related entities.

2. As this Honorable Court is aware, on December 8, 2006, USACM and a related entity, USA Capital First Trust Deed Fund, LLC (hereinafter, "FTDF") entered into an "Asset Purchase Agreement" (hereinafter, the "AGREEMENT") with a Nevada limited liability company known as COMPASS FINANCIAL PARTNERS, LLC (hereinafter, "COMPASS") wherein USA and FTDF agreed to sell, and COMPASS agreed to purchase the entirety of USA'S and FTDF'S interests in their portfolio of commercial loans.

3. Pursuant to said agreement, COMPASS also agreed to purchase USA'S and FTDF'S respective interests in the servicing agreements and related contracts attached to each commercial loan within said portfolio.

4. As this Honorable Court is also aware, the AGREEMENT further specified that USA, FTDF and COMPASS were to close this transaction on or before February 16, 2007.

5. The AGREEMENT further required that COMPASS make application with the MLD for appropriate licensure, or, alternatively, receive a regulatory exemption from the MLD as to its intended activities.

////

////

6. Specifically, Article IX of the AGREEMENT between COMPASS, USA and FTDF, stated as follows:

> **Article IX    Conditions to Closing**
>
> **Section 9.1 Conditions Precedent to Obligations of Purchaser.** The obligation of the Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):
>
> * * * * * * * * * * * * * * * * * * * * * * * * *
>
> (j) Purchaser shall have actually obtained an interim license to operate in the State of Nevada or an exemption, satisfactory to Purchaser in all reasonable respects by no later than the Closing Date, from any and all applicable Nevada laws or regulations that would require any licensing of Purchaser and affiliate of Purchaser identified by Purchaser by the State of Nevada in connection with or as a result of consummation of this transaction. Sellers shall provide reasonable cooperation and support to Purchaser in connection with its effort to obtain such interim license or exemption. The condition to the timing of the obtaining of this interim license or regulatory exemption may be extended by the Sellers at their sole discretion.

7. As called for under said agreement, COMPASS did, in fact, make application with the MLD. However, as February 16, 2007 approached (i.e., the designated closing date for the COMPASS purchase to be consummated), it became clear that it was logistically impossible for COMPASS to complete its application with the MLD and acquire its license before said date.

8. Because COMPASS, USA, FTDF and other pertinent parties recognized this fact, the respective parties filed their "Joint Emergency Motion For Order Related To Implementation Of Confirmed Plan" on February 14, 2007, in advance of a February 15, 2007 emergency hearing.

////

////

////

-3-

9. As this Honorable Court will recall, at this hearing, the parties advised, in pertinent part, as follows:

> Nevada state law requires that a mortgage servicing company be licensed, or exempt from licensing, under NRS §645B. COMPASS has applied for a license, but more time is required for the MLD to process the COMPASS application. The MLD estimates the application processing will require another 60 days.
>
> * * * * * * * * * * * * * * * * * * * *
>
> There is no provision in Nevada state law for an "interim license" per so. The MLD has confirmed that the interim arrangements may be made by COMPASS operating the mortgage servicing business through [USA Commercial Mortgage], using its existing license as a sub-servicer. MLD has also confirmed that it will not object to that arrangement, even though [USA Commercial Mortgage's] assets will be transferred to COMPASS and to the [USA Commercial Mortgage] Trust on the Closing Date and Plan Effective Date, respectively, except for Non-Trust Cash, consisting of funds held for the purpose of paying administrative, priority, and secured claims.
>
> * * * * * * * * * * * * * * * * * * * *
>
> As set forth below, the Plan provides for an orderly wind down of the Debtors' affairs after the sale to COMPASS and the Effective Date. However, the Plan does not explicitly provide guidance as to who and how such wind down will be facilitated. It is imperative that [USA Commercial Mortgage] continue to exist for a period of no longer than 90 days after the Effective Date of the Plan for the purpose of acting as a sub-servicer for COMPASS under [USA Commercial Mortgage's] existing license, pending a decision by MLD on the COMPASS license application, and to enable COMPASS to transition to other loan servicing arrangements if its application is denied.

(Joint Emergency Motion For Order Related To Implementation Of Confirmed Plan, February 14, 2007, pgs. 3-4)

10. In an attempt to remedy this situation, USA and COMPASS entered into a "Subservicing Agreement" on February 16, 2007, wherein COMPASS would essentially "subcontract" its servicing duties (for which a license was required) to USA (which still maintained the appropriate license). Said arrangement allowed the planned purchase to continue, albeit with an extended closing date. This arrangement was also undertaken with the

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

approval of the various parties which filed the "Joint Emergency Motion For Order Related To Implementation of Confirmed Plan", notwithstanding the objections of other parties to this matter.

11.     Significantly, no such "Subservicing Agreement" was put into place as to the loans COMPASS intended to purchase from FTDF, nor was one required.  Here, FTDF was authorized to serve as escrow agent and service the loans to be sold to COMPASS under the licensing exemption set forth in NRS 645A.015(4), which indicates that NRS Chapter 645A does not apply to persons "...doing any act under order of court..."  Thus, this Honorable Court's confirmation of the plan in this matter gave rise to FTDF'S entitlement to this exemption.

### Regulatory Developments as to COMPASS

12.     Thus, because of the "Subservicing Agreement" referenced above, from February 16, 2007 forward, the responsibility for the servicing of the commercial loans COMPASS had purchased, fell to USA, as a matter of law.  For this reason, COMPASS was obligated to utilize the services of USA to engage in any servicing activity as to the loans in question, or risk violating Chapter 645A of the Nevada Revised Statutes in behaving otherwise.

13.     Despite its contractual arrangement with USA and its legal obligation to rely upon USA in servicing the loans in question, it is the MLD'S contention that COMPASS has, since February 16, 2007, disregarded this arrangement and represented to borrowers that *it is, in fact*, the servicer of the loans in question.

14.     On April 20, 2007, the DIVISION received word that COMPASS had chosen to terminate the "Subservicing Agreement" between itself and USA since USA had experienced difficulties in its own right, in conforming to the DIVISION'S requirements to maintain its licensure with the DIVISION.  Thus, from April 20, 2007 forward, COMPASS' affiliation with USA had ended, thereby leaving COMPASS with no licensed entity to service the loans in question.

15.  That same day, April 20, 2007, the MLD received word from COMPASS that they had decided to voluntarily withdraw their application for licensure pursuant to Chapter 645B of the Nevada Revised Statutes and would, from that point forward, service the loans in question from outside of the State of Nevada. COMPASS also informed the MLD that it intended to create a new entity in the State of Delaware to perform its loan servicing functions and that COMPASS' Nevada limited liability company would be dissolved.

16.  COMPASS' statements notwithstanding, the MLD has acquired proof of COMPASS' decision to engage in servicing activity in violation of NRS Chapter 645A during the period from February 16, 2007 through April 2007, and has incorporated these facts into an "Order Imposing Fine and Order to Cease and Desist and Notice of Right to Request Hearing, issued to COMPASS on May 9, 2007 (Exhibit "A").

17.  Through this document, the MLD ordered that COMPASS "...cease and desist from conducting any and all unlicensed escrow agency activity in the State of Nevada..." and further imposed a fine in the amount of "...THREE THOUSAND FIVE HUNDRED DOLLARS ($3,500.00), representing a FIVE HUNDRED DOLLAR ($500.00) fine for each of the seven (7) documented instances of unlicensed escrow agency activity..." (Exhibit "A", pgs. 7-8).

18.  As is its right under NRS 645A.110(2), COMPASS timely filed a "Petition for Hearing" with the MLD on May 24, 2007, with this matter expected to be set for hearing in the next thirty (30) days.

### Regulatory Developments as to USA

19.  Pursuant to NRS 645B.060, the MLD is charged with conducting "...examinations, periodic or special audits, investigations and hearings as may be necessary and proper for the efficient administration of the laws of this State regarding mortgage brokers and mortgage agents..." See, NRS 645B.060(2)(d).

20.     On March 15 through March 29, 2007, the MLD conducted an investigation of USA'S loan servicing operations.

21.     During this investigation, the MLD obtained proof of USA having violated the provisions of NRS Chapter 645B and NAC Chapter 645A on numerous occasions, and subsequently incorporated these facts into an "Order Revoking Mortgage Broker License and Notice of Right to Request Hearing, issued to USA on May 2, 2007 (Exhibit "B").

22.     Through this document, the MLD ordered that USA'S mortgage broker license be revoked, pursuant to NRS 645B.720 and NRS 645B.750 (Exhibit "B", pg. 12).

23.     Significantly, the MLD'S Order of May 2, 2007 (Exhibit "B") does not distinguish between USA'S conduct prior to or subsequent to its commencement of this Chapter 11 proceeding. For its part, the MLD can affirmatively state that USA has violated Chapter 645B through its conduct, both pre-petition as well as post-petition. However, to facilitate the narrowing of the issues in that matter, the MLD is currently preparing an Amended Order to address any inadvertent vagueness in that regard.

24.     As is its right under NRS 645B.750, USA timely filed an "Application for Hearing on Order Revoking Mortgage Broker License and Notice of Right to Request Hearing" with the MLD on May 22, 2007, with this matter expected to be set for hearing as expeditiously as possible.

## Discussion

As an initial matter, the MLD submits that it is a "party in interest" in this matter, pursuant to 11 U.S.C. §1109(b). This provision states, as follows:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. §1109(b).

////

////

Although a state regulatory agency is not specifically referenced in the text of 11 U.S.C. §1109, at least one court has held that "...the concept of 'party in interest' is an elastic and broad one designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case..." *In re Johns-Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984).

As the Third Circuit stated in *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d. Cir. 1985), the essential question under 11 U.S.C. §1109(b) is "...whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation..." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d. Cir. 1985).

In this matter, because of the requirement within the AGREEMENT (as described above) that, as a condition of the closing, COMPASS obtain either licensure from the MLD or an exemption from the statutes applicable to its actions (which the MLD would have been called upon to provide), the MLD contends that it does indeed possess a sufficient stake in the outcome of the instant Chapter 11 proceeding, so as to "...require representation..."

In *In re Public Service Company of New Hampshire*, 88 B.R. 546 (1988), the United States Bankruptcy Court for the District of New Hampshire approved the participation of the State of New Hampshire in that proceeding as a party in interest because of similar statutory obligations imposed by a Chapter 11 reorganization (decided under 11 U.S.C. §1129(a)(6)).

Thus, the MLD would respectfully submit that it be treated as a "party in interest" in this proceeding and that the instant "Notice to Court of Regulatory Developments" receive this Honorable Court's due consideration.

////

////

////

////

With regard to the MLD'S reasoning for submitting the instant Notice, on May 29, 2007, the MLD was served with COMPASS' instant "Emergency Motion of [COMPASS] For Order Pursuant to 11 U.S.C. §§105 and 1141 Enforcing Confirmation Order and for Civil Contempt Sanctions". This filing concerns the emerging conflict between COMPASS and a group of individuals referring to themselves as the "Lenders Protection Group" (hereinafter, "LPG").

To be clear, the MLD takes no position with regard to this Motion, nor can it. As the undersigned counsel has explained in a prior hearing in this matter, the MLD is precluded from involving itself in disputes between the parties to this proceeding. What has caused the MLD to make the instant filing and provide this Honorable Court with the factual chronology set forth above, is simple:

At the heart of this proceeding are large numbers of Nevada citizens who have valid concerns as to the identity of their loan servicer, the mechanisms used in the servicing of their loans, and the collection and distribution of monies belonging to them. It is in the face of these uncertainties that the MLD felt compelled to issue its respective Order(s) as against USACM and COMPASS, and felt further compelled to bring these developments to this Honorable Court's attention.

////
////
////
////
////
////
////
////
////

The MLD is confident that this Honorable Court will give the appropriate attention to the developments referenced herein and will incorporate these considerations into its ruling(s) upon COMPASS' underlying Motion and any other Motion(s) which may yet follow.

WHEREFORE, the MLD respectfully submits the foregoing for this Honorable Court's consideration.

Dated this 30TH day of May, 2007.

                CATHERINE CORTEZ MASTO
                Attorney General

By: _____
                RICHARD DREITZER, #6626
                Deputy Attorney General
                555 E. Washington Avenue, #3900
                Las Vegas, Nevada 89101
                Attorneys for State of Nevada,
                Department of Business and Industry,
                Mortgage Lending Division