# LOAN MANAGEMENT AGREEMENT

This Loan Management Agreement ("Agreement") is made by and between the direct lenders in that certain secured loan commonly known as the _____ loan, (hereinafter "Lenders") and Lender 2 Lender, LLC (hereinafter "L2L") and is effective as of May 18, 2007.

## RECITALS

A.  The Lenders each loaned money to borrower in connection with a certain loan commonly known as the _____ loan, which was originated and initially serviced by USA Commercial Mortgage Company (the "Loan"); and

B.  Pursuant to the Chapter 11 Plan Of Reorganization of USA Commercial Mortgage Company, the servicing rights for the Loan were purportedly transferred to Compass Financial Partners, LLC ("Compass"); and

C.  Fifty-one percent (51%) of the beneficial interests in the Loan have elected to terminate Compass as loan servicer and have decided to designate L2L as their agent under this Loan Management Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the terms and conditions set forth below, the parties hereto agree as follows:

**1.  Duties and Powers of L2L.**  L2L shall analyze the Loan, the status of the borrower, and the collateral for the Loan to determine the best method to maximize recovery on the Loan, and with approval of at least fifty-one percent (51%) of the beneficial interests in the Loan L2L shall have the duty and power to take the following actions with regard to the Loan:

a.  Assist in arranging additional financing for the borrower(s), and subordinate the Loan to new financing if necessary to improve the collateral in order to maximize recovery under the Loan.

b.  Agree to a reduction or elimination of accrued interest, late fees and default interest, if determined necessary by L2L to maximize recovery under the Loan.

c.  Agree to a reduction in the principal balance of the Loan if deemed necessary by L2L to maximize recovery under the Loan.

d.  Take all steps to foreclose on the Loan under applicable law if deemed necessary by L2L to maximize recovery under the Loan.

e.  To enter a credit bid at any foreclosure sale under terms and conditions and in an amount determined appropriate by L2L.

  f. In the event L2L is the successful credit bidder, to assure that title to the property is held in the name of all of the lenders on the Loan with interest percentages based upon the relation between the individual fractional interest to the total of all fractional interests on the Loan.

  g. In the event L2L is the successful credit bidder at any foreclosure sale, to take such steps as are necessary to maintain, market and sell the property.

  h. To commence legal action against the borrower(s) in a court of appropriate jurisdiction to seek such relief as L2L deems necessary to perfect the collateral and maximize the recovery under the Loan.

  i. To defend Lenders or any of its members, against any legal action that may be taken by any entity that in the opinion of L2L interferes with L2L's ability to maximize recovery under the Loan.

For the purposes of this Section 1, if, upon request by L2L for authority to take any of the actions detailed in Section 1(a)-(i), Lender fails to grant or deny its consent within ten (10) days after the notice from L2L requesting permission to act, or by the date specified in the notice, Lender shall be deemed to have conclusively given its consent for the purpose of seeking approval of 51% of all Lenders to authorize L2L to take any action detailed in Section 1(a)-(i), above.

**2.** **Accounting, Reports And Distributions By L2L.**

  a. Commencing sixty (60) days from the date of this Agreement, L2L shall provide periodic reports to the fractional beneficial interests in the Loan, advising of the status of L2L's collection efforts on the Loan, which shall include (a) monthly account statements; and (b) quarterly loan summary reports.

  b. L2L shall keep appropriate and complete accounting records of the principal, interest, late fees, late charges, sums collected, expenses incurred, and fees charged by L2L, and shall provide periodic reports of such accountings to the fractional beneficial interests in the Loan;

  c. L2L shall make pro rata distributions to the fractional beneficial interests in the Loan of all proceeds recovered on the Loan by any means, following the payment of all expenses of L2L as set forth in Section 3, below.

**3.** **Compensation To L2L.** For its services as set forth above, L2L shall be compensated as follows:

  a. L2L shall be paid an annual fee of one-percent (1%) of the unpaid principal balance of the Loan, such payment shall be made from the first proceeds recovered on the Loan.

  b. L2L shall be paid a three percent (3%) disposition fee, based on the actual proceeds recovered on the Loan, which shall be due and payable upon full and complete resolution of the Loan.

  c. L2L shall be entitled to recover from any proceeds collected on the Loan, all attorneys fees advanced by L2L which are associated with necessary litigation.

  d. Provided all Lenders have received all principal and accrued interest due to them, L2L shall receive all late fees and default interest due and recovered under the terms of the Loan.

  e. In the event any Lender desires to sell all or any part of its interest in the Loan and L2L is instrumental in locating a buyer, at the option of L2L, a fee of 5% of the remaining balance of Lender's undivided interest in the Loan will be deducted from the selling price and paid to L2L on all such assignments for which L2L located the assignee.

**4. Termination Rights.** As provided in Nevada Administrative Code 645B.073, fractional beneficial interests in the Loan holding at least fifty-one percent (51%) of the total beneficial interests in the Loan may act on behalf of all Lenders in the event of a default or foreclosure for matters that require the direction or approval of the holders of the beneficial interests in the Loan, including, without limitation:

  a. The designation of a Manager, mortgage broker, servicing agent or other person to act on the behalf of the holders of the beneficial interests in the loan; and

  b. The sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

In the event of termination, L2L shall be due 1/12 of the asset disposition fee per month, up to a maximum of (12) months, for each month in which it provided services under this Agreement.

**5. L2L's Right to Delegate.** Notwithstanding anything contained herein, L2L may in its sole discretion delegate specific loan servicing or resolution obligations to a workout specialist, loan consultants, asset management advisors, real estate brokers or agents, appraisers, attorneys, trustees, or others, to be determined by L2L in its sole discretion.

**6. Term and Termination.** This Agreement shall remain in effect until the Loan is completely liquidated (unless sooner terminated in accordance with the terms herein).

**7. Integration Clause.** This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof.

**8. Power of Attorney.** Lenders hereby appoints L2L as its true and lawful attorney-in-fact to a) execute contracts, escrow instructions, conveyances, mortgages, deeds of trust,

releases and all other documents necessary to carry out the services described herein; b) to do all things and take all actions on behalf of Lenders which are necessary or convenient to effectuate this Agreement and its intent as Lenders might or could do if personally present. This Power of Attorney shall remain in effect until the Loan is completely liquidated or this Agreement is terminated pursuant to Section 4, above.

9. **Release and Indemnification.**  Lenders acknowledge that L2L is entering this Agreement due to the fact that the loan was originated and serviced by USA Commercial Mortgage Company and subsequently purportedly transferred to Compass through a Plan of Reorganization under Chapter 11 of the Bankruptcy Code, and that it is a benefit to Lenders for L2L to enter this Agreement.  As consideration for this Agreement, Lenders expressly release L2L for any and all claims, liabilities, damages or losses, of any nature, that Lenders incur or has incurred: a) as a direct or indirect result of Prior Servicers activities with regard to origination and/or servicing of the Loan, and/or b) due to any occurrence or activity with regard to the Loan that was not caused by L2L's sole and absolute conduct.  In addition, Lenders shall indemnify, defend, and hold L2L harmless from any claims, damages, losses, of any nature, including attorney's fees and costs that L2L may incur, pay, or become obligated to pay a) as a direct or indirect result of Prior Servicers activities with regard to origination and/or servicing of the Loan, and/or b) due to any occurrence or activity regarding the Loan that was not caused by L2L's sole and absolute conduct.

10. **Loan Documentation.**  If L2L is making diligent efforts to complete and verify the servicing file because a servicing file has not been transferred in part, is not complete, or contains incorrect information on the applicable transfer date, L2L shall not be responsible for any failure to provide any service hereunder, or for any inaction or any action taken hereunder related to such incompleteness or incorrectness.  L2l shall not be responsible for the form, substance, validity, perfection, priority, effectiveness or enforceability of any documents in the servicing file on the applicable transfer date or on the date it obtains such documents from the current servicer.  Upon reasonable request by L2L, lender shall furnish L2L with such documents as may be necessary or appropriate to enable L2L to collect payments against and otherwise service and manage the loans in accordance with this agreement.  Lender agrees to cooperate fully with L2L with respect to all reasonable requests made by L2L in connection with the transfer of the servicing.

11. **Buyout Rights.**  In its sole discretion, L2L may payoff any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable.  Any Lender so paid off shall concurrently execute and deliver therewith to L2L an assignment, in form acceptable to L2L of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

12. **Reimbursement Fees And Costs.** Unless agreed to in a separate agreement between L2L and Lenders, Lenders agrees to pay, on ten (10) day written notice, to reimburse L2L, for it's pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fee and foreclosure costs. In the event that Lender fails to pay such sums to L2L

upon request thereof, L2L may, in its discretion, advance such fees, including trustee's fees, attorney's fee, and costs of foreclosure; provided, however, that any fees advanced by L2L shall bear an interest rate equal to the note rate.  These advances, together with accrued interest will be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender.

**13.     Hold-Backs.**  L2L shall have the right, but not the duty, to segregate and hold any portion of Loan proceeds if L2L is informed and believes there is a dispute over who is entitled to receive those funds.  Such funds shall be held in trust pending a court order or settlement agreement.

**14.     Governing Law.**  This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.  The parties hereto expressly agree that any action brought in connection with this Agreement shall be commenced and maintained in Washoe County, Nevada, and all parties expressly consent to the jurisdiction of any State or Federal Courts situated in Washoe County, Nevada.

**15.     Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

**16.     Attorney's Fees.**  In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal.

**17.     Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

**18.     Headings.**  Sections headings used in this Agreement are for convenience only shall not affect the meaning or interpretation of this Agreement.

**19.     Authority.**  Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement.  Lender acknowledges that this Agreement shall not be in force until accepted and signed by L2L.

**THIS SPACE INTENTIONALLY LEFT BLANK**

**20.** **Severability**. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written.

| LENDER 2 LENDER, LLC | DIRECT LENDERS |
|---|---|
| By:_____ | By:_____ |
| Name: _____ | Donna A. Cangelosi, Chairman of the Lenders Protection Group, under power granted by in excess of 51% of the beneficial interests in the Loan |