1  ALAN R. SMITH, ESQ.
   Nevada Bar No. 1449
2  KEVIN A. DARBY, ESQ.          **Electronically Filed June 14, 2007**
   Nevada Bar No. 7670
3  Law Offices of Alan R. Smith
   505 Ridge Street
4  Reno, Nevada  89501
   Telephone (775) 786-4579
5  Facsimile (775) 786-3066
   *Email: mail@asmithlaw.com*
6
   Attorney for Lenders Protection Group
7  and Donna Cangelosi

8

9                    UNITED STATES BANKRUPTCY COURT

10                        DISTRICT OF NEVADA

11                            —ooOoo—

12 In Re:                          Case Nos.:
   USA  COMMERCIAL  MORTGAGE       BK-S-06-10725-LBR
13 COMPANY, et al.                 BK-S-06-10726-LBR
                                   BK-S-06-10727-LBR
14         Debtors.                BK-S-06-10728-LBR
   _____/ BK-S-06-10729-LBR
15
                                   JOINTLY ADMINISTERED
16                                 Chapter 11
   Affects:
17 ☐ All Debtors                   **BRIEF IN RESPONSE TO**
   ☒ USA Commercial Mortgage Company  **SUPPLEMENTAL  MEMORANDUM**
18 ☐ USA Capital Realty Advisors, LLC  **OF LAW IN SUPPORT OF**
   ☐ USA Capital Diversified Trust Deed Fund, LLC  **EMERGENCY MOTION OF**
19 ☐ USA Capital First Trust Deed Fund, LLC  **COMPASS FINANCIAL PARTNERS**
   ☐ USA Securities, LLC           **LLC FOR ORDER PURSUANT TO 11**
20                                 **USC §§ 105 AND 1141 ENFORCING**
                                   **CONFIRMATION ORDER AND FOR**
21                                 **CIVIL CONTEMPT SANCTIONS**

22                                 Hearing Date:  June 20, 2007
                                   Hearing Time: 10:30 a.m.
23 _____/

24        Donna Cangelosi ("Cangelosi") and the Lenders Protection Group (the "LPG"), a

25 group of investors/lenders in USA Commercial Mortgage Company ("USACM") which

26 represent an average of 60% of the outstanding beneficial interests in USACM loans and 62%

27 of the total number of investors, through their counsel, Alan R. Smith, Esq., hereby respond

28 to the Supplemental Brief filed by Compass Partners ("Compass") in support of  their

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd

1   *Emergency Motion of Compass Financial Partners LLC For Order Pursuant To 11 U.S.C.§§*

2   *105 and 1141 Enforcing Confirmation Order And For Civil Contempt Sanctions* (the

3   "Motion").

4

5
**I.**
**INTRODUCTION**

6       In a textbook example of putting the cart before the horse, Compass' Supplemental

7   Brief initially skirts this Court's directive to brief threshold jurisdictional issues, and opens

8   with a diatribe regarding termination provisions in the Loan Servicing Agreements. Steel Co.

9   v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003 (1998) (Subject matter

10  jurisdiction is a threshold question, and without jurisdiction a court cannot proceed at all.).

11  As this Court made clear at the initial hearing on Compass' Motion, the Court must first

12  decide whether it has subject matter jurisdiction before moving to the merits of the underlying

13  issue raised by Compass.  As detailed in the LPG's Opposition and more fully below, this

14  Court does not have jurisdiction over the disputes between Compass and direct lenders

15  because all relevant disputes center on post-asset transfer and post-confirmation relationships

16  between non-debtor parties.  Controlling Ninth Circuit law, as well as law from nearly every

17  other circuit, is clear that this Court has no jurisdiction over disputes related to assets that have

18  been transferred outside of the bankruptcy estate, such as the Loan Servicing Agreements.

19      By the time Compass finally addresses relevant jurisdictional issues, it becomes clear

20  that it is confused as to what is actually before this Court.  The parties are here on the

21  Compass Motion seeking injunctions against Cangelosi and the LPG under 11 U.S.C. §105

22  (because only the debtor can obtain an injunction under §105).  Compass initially claimed the

23  injunction was necessary to implement the Debtors' Plan under 11 U.S.C. §1441.  As

24  Cangelosi and the LPG pointed out in their initial Opposition, the Motion is fatally defective

25  as Compass does not have standing under §105 and an adversary proceeding is a mandatory

26  prerequisite to obtaining injunctive relief.

27      Compass now departs from the theory underlying its "Emergency Motion" and focuses

28  on whether direct lenders complied with the Loan Servicing Agreements when they

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd
- 2 -

1  terminated Compass.  Compass relies primarily upon Second Circuit case law, which is not

2  only factually distinguishable, but is directly contrary to the law from nearly every other

3  jurisdiction, most importantly the Ninth Circuit. Indeed, there is overwhelming authority from

4  nearly every Circuit Court of Appeals that indisputably establishes that this Court cannot exert

5  jurisdiction over disputes between non-debtor parties regarding assets that have been

6  transferred from the bankruptcy estate.  Simply put, once the Loan Servicing Agreements

7  were transferred to Compass, this Court's jurisdiction over the Agreements and related

8  disputes lapsed (except for "Surviving Section 3 Rights" set forth in the Confirmation Order

9  as discussed below).

10    Compass' Supplemental Brief reveals an additional defect in the very structure of its

11  Motion.  It is clear Compass seeks to prevent a majority of direct lenders from terminating the

12  Loan Servicing Agreements.  However, Compass' Emergency Motion only attacks the LPG,

13  Cangelosi, and an unrelated individual named Todd Hansen.  The LPG's 2019 Statement

14  reveals that the LPG consists of approximately $78 million in direct lenders' beneficial

15  interests. As detailed in the LPG's Opposition, over $300 million in direct lenders' beneficial

16  interests have elected to terminate Compass.  It is impossible for Compass to enjoin the

17  majority of direct lenders as requested, when it has only brought a small portion of direct

18  lenders before this Court in its Motion.  This underscores the fatal procedural flaw of seeking

19  injunctive relief without an underlying adversary proceeding.

20    Compass' Supplemental Brief also highlights the fundamental flaw underlying its

21  assertion of bankruptcy court jurisdiction.  Namely, Compass mistakenly believes this Court

22  extended "extra protections" above and beyond the terms of the Loan Servicing Agreements,

23  which prevent direct lenders from enforcing contractual and state law termination rights.

24  Compass has taken the legally unsupportable position that any dispute regarding post-transfer

25  performance or enforcement under Loan Servicing Agreement must be brought in the

26  Bankruptcy Court.  Not only is such jurisdiction legally unsupportable, but this Court was

27  never asked to assume such jurisdiction, nor did it offer to assume such jurisdiction.  In fact,

28  just the opposite occurred.  Whenever the question came before this Court, the Court

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd            - 3 -

1    consistently and repeatedly stated that the Agreements were not modified.    Compass

2    essentially stepped into the shoes of USACM, and became a contracting party with the direct

3    lenders.    Compass never asked for, and never received, assurances that the direct lenders

4    would not attempt to terminate the Loan Servicing Agreements, or allege that Compass

5    breached the Agreements. These are the risks inherent when a party purchases contracts.

6    Based on the level of sophistication of which Compass boasts in its supporting Declarations,

7    this could not possibly be a surprise or novel issue to Compass

8        As with every purchaser of assets, Compass assumed certain risks when it purchased

9    the Loan Servicing Agreements and is bound by the doctrine of caveat emptor.    It assumed

10    all the risks that a contracting party has under the terms of the contract.    One risk Compass

11    assumed was that direct lenders might exercise contractual and State Law termination rights.

12    Compass was well aware of the Loan Servicing Agreement's terms before its purchase and

13    had more than a fair opportunity to investigate controlling Nevada law.    The fact Compass is

14    now faced with the fruition of its voluntarily assumed risks should be of no concern to this

15    Court.

16        Under 11 U.S.C. §363, this Court could only ensure that the Loan Servicing

17    Agreements were transferred to Compass free and clear of certain claims and interests.    That

18    transfer is complete and is not being attacked by the direct lenders.[1]    This Court was not asked

19    to, and in fact could not, ensure that direct lenders would not exercise post-transfer contractual

20    or legal rights.    Compass "got what they got" and that is: agreements subject to contractual

21    and state law rights of the other party to terminate.

22        Finally, in an act of desperation, Compass ultimately resorts to hollow threats against

23    the estate, including threats to seek a rescission of the sale and set aside the Conformation

24    Order for fraud if this Court does not assume jurisdiction over the post-confirmation contract

25    dispute between direct lenders and Compass.    As detailed in case law discussed below, it is

26    _____

27        [1]While the LPG has appealed this Court's finding that the Loan Servicing Agreements were not
       executory contracts, it does not seek to undo the sale.  In fact, upon learning their appeal may threaten the
28       sale to Compass, the LPG voluntarily waited to seek a stay pending appeal until the sale closed.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd          - 4 -

1  submitted that such speculative threats are typically not well taken by bankruptcy courts and

2  are certainly not enough to confer jurisdiction.

**II.**

**THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS POST-TRANSFER DISPUTE BETWEEN NON-DEBTORS REGARDING POST-TRANSFER RIGHTS AND CONTRACTUAL PERFORMANCE**

6  _____Compass has failed to satisfy its burden of proof to establish the subject matter

7  jurisdiction of this Court. <u>Wasson v. Northup Worldwide Aircraft Services, Inc.</u>, 443 F.Supp.

8  400, 401 (W.D. Tex. 1978) ("Whenever a jurisdictional issue has been raised, the burden of

9  proof rests on the party alleging jurisdiction." ).  In what is in essence a desperate act of forum

10  shopping, Compass takes a "throw everything at the wall and hope something sticks"

11  approach to arguing jurisdiction.   Specifically, Compass asserts jurisdiction under

12  unsupportable theories of waiver, consent, "arising under" jurisdiction, "arising in"

13  jurisdiction and "related to" jurisdiction.  When each of Compass' threats are analyzed, not

14  a single one provides a jurisdictional basis.

**A.    This Court Cannot Obtain Subject Matter Jurisdiction Through Waiver Or Consent, But Rather, Only Derives Jurisdiction From 28 U.S.C. 1334.**

17      As this Court explained at the initial hearing on Compass' Motion, a bankruptcy

18  court's jurisdiction is governed by 28 U.S.C. § 1334 and cannot be conferred by waiver or

19  consent of the parties. <u>In re Kroy Ltd.</u>, 222 B.R. 345, 347 (D. Ariz. 1998) (The source of the

20  bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code, nor the express

21  terms of a Chapter 11 Plan, but, rather, is 28 U.S.C. §§ 1334 and 157.).  Courts consistently

22  rule that the argument that a party "submitted to the equitable jurisdiction of the bankruptcy

23  court" is a non sequitur. <u>Orquera v. Ashcroft</u>, 357 F.3d 413, 416 (4th Cir. 2003), citing

24  <u>Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 102 S.

25  Ct. 2099, 72 L. Ed. 2d 492 (1982).   Subject matter jurisdiction, in contrast to personal

26  jurisdiction, is not something that can vest through a party's actions or behavior. <u>Id.</u>  A party

27  cannot submit or consent to the jurisdiction of the bankruptcy court by participation in the

28  bankruptcy case. <u>Id.</u>  General participation of a party in a bankruptcy case has never been the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                          - 5 -

1  lynchpin for subject matter jurisdiction. Id.  Neither bankruptcy courts, nor litigating parties,

2  can write their own jurisdictional ticket.  In re Zerand-Bernal Group, Inc., 23 F.3d 159, 163-

3  64 (7th Cir. 1994).  Compass' argument that the LPG and Cangelosi consented to the

4  jurisdiction, or waived its right to challenge jurisdiction, is contrary to law and wholly without

5  merit. Id. See also, Valley Historic L.P., v. The Bank of N.Y., ___ B.R. ___, 2007 U.S. App.

6  LEXIS 11556 (4th Cir. 2007).  It cannot be disputed that subject matter jurisdiction cannot be

7  created by consent or waiver.

8
9  **B.    The Dispute Between Compass And Direct Lenders Does Not Trigger This
        Court's "Arising Under" Jurisdiction.**

10     Compass' desperate grasping at straws is highlighted by its attempt to argue that this

11  Court has "arising under" jurisdiction.  As courts acknowledge,"arising under" jurisdiction

12  cannot exist in a dispute between non-debtors, but, rather, **'related to' jurisdiction is the**

13  **only relevant jurisdiction when disputes are between to two non-debtor parties**." In re

14  Zale Corp., 62 F.3d 746, 751 (5th Cir. 1995) (*Emphasis added.*).

15     "Arising under" jurisdiction only confers jurisdiction to a bankruptcy court over issues

16  that are specifically presented when a bankruptcy petition is filed under the Bankruptcy Code.

17  In re Canion, 196 F.3d 579, 584 (5th Cir. 1999).  "Arising under" jurisdiction refers to

18  jurisdiction of matters dealing only with creditor/debtor relationships. See In re Cline, 282

19  B.R. 686, 695 (D. Wash. 2002).  "Arising under" jurisdiction only applies to "any matter

20  under which a claim is made under a provision of title 11." H.R. Rep. No. 595, 95th Cong.,

21  2nd Sess. 445 (1977); In re Kold Kist Brands, 158 B.R. 175, 179 (D. Cal. 1993).  Matters

22  arising under title 11 would include objections to confirmation of a plan under 11 U.S.C. §

23  1129  or actions to recover preferential transfers under 11 U.S.C. § 547. No such rights are

24  alleged by Compass.

25     Courts encountering disputes between two non-debtors hold that "arising under"

26  jurisdiction cannot exist.  See eg., In re Reliant Exploration, Ltd., 336 B.R. 286, 289 (Bankr.

27  S.D. Tex. 2005); Zale, cited above.  The same is true here.  Neither Compass, nor the direct

28  lenders, have filed a bankruptcy petition. Compass has not sought relief based on a statutory

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                    - 6 -

1    provision of Chapter 11. Therefore, there are no disputes between them that can be considered

2    to arise under the Bankruptcy Code.  Accordingly, "arising under" jurisdiction cannot give

3    this Court subject matter jurisdiction over the matters raised by Compass.

4    **C.    The Dispute Between Compass And Direct Lenders Does Not Trigger This Court's "Arising In" Jurisdiction.**

5        In In re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995), the Ninth Circuit adopted

6    the Fifth Circuit's interpretation that "arising in" refers to "core" bankruptcy proceedings.

7    Core proceedings invoke substantive rights provided under the Bankruptcy Code. *See, e.g.*,

8    Dunmore v. United States, 358 F.3d 1107, 1114-5 (9th Cir. 2004) ("we determine Dunmore's

9    claims to be 'non-core' proceedings if they do not depend on the Bankruptcy Code for their

10   existence and they could proceed in another court"). "Arising in" jurisdiction generally refers

11   to administrative matters that ensue after a case under the Bankruptcy Code has commenced.

12   In re Kold Kist Brands 158 B.R. 175, 179 (D. Cal. 1993). "Arising in" cases under Title 11

13   are those particular to the bankruptcy process, including such things as (1) counterclaims by

14   the estate against persons filing claims against the estate, (2) orders to turn over property of

15   the estate, or (3) determinations of the validity, extent or priority of claims. In re Eastport

16   Assoc., 935 F.2d 1071, 1076-77 (9th Cir. 1991). "'Arising in' jurisdiction encompasses 'those

17   administrative matters that arise only in bankruptcy cases'-- matters not based on any right

18   expressly created by title 11, but that would have no existence outside of bankruptcy." Kold

19   Kist, at 180.  Courts flatly reject finding "arising in" jurisdiction when a dispute does not

20   involve claims that are particular to the bankruptcy process, but instead, involves claims that

21   are founded in state law theories of recovery.

22        Here, both Compass and direct lenders are relying on alleged contractual rights under

23   the Loan Servicing Agreements and state law, not the Bankruptcy Code.  Compass does not

24   allege any administrative matter taht arises only in a bankruptcy case.  Compass readily admits

25   that it is seeking to require the direct lenders to comply with the terms of the Loan Servicing

26   Agreements.  Thus, Compass acknowledges no right under Title 11 is implicated.

27        While "arising in" jurisdiction may provide a mechanism to protect or effectuate a

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                - 7 -

bankruptcy court's prior orders, that is not really what Compass seeks to accomplish. Compass is seeking a determination of the post-transfer rights of non-debtors (Compass and direct lenders), which do not involve the debtor or estate assets.  This issue was addressed by the Ninth Circuit in In re Federal Shopping Way, Inc., 717 F.2d 1264 (9th Cir. 1983).  There, several pre-petition investors entered into contracts with the debtor to acquire fractional interests in real estate known as the NW 20 Property.  The investors made substantial payments to the debtor pursuant to the contracts, but the debtor never delivered deeds to them.  After filing its bankruptcy petition, the debtor's estate sold the NW 20 Property to a third party "free and clear of all liens and encumbrances."  Thereafter, the factional interest investors, as an unincorporated association, filed a complaint in state court seeking to quiet title to the NW 20 Property in their favor.

Identical to the actions of Compass, the purchaser in Federal ultimately went to the bankruptcy court seeking a permanent injunction against the investors' quiet title action. Federal, at 1268.  The purchasers alleged that the injunction was necessary to protect and effectuate the bankruptcy court's prior orders.  Id.  at 1269.  The Ninth Circuit found this argument failed because the purchaser never sought or acquired a quiet title order from the bankruptcy court.  Id.  at 1270.  In this regard, the Court explained its order confirming the sale "did not purport to convey more than the trustee had."  Id.

The Ninth Circuit went on to explain that where property has been transferred out of the bankruptcy estate, and the debtor claims no interest in the property whatsoever, the bankruptcy court is equally devoid of jurisdiction to adjudicate conflicting claims to the property.  Federal, at 1272.  In such situations, the third party claimant has the right to have the merits of his claim passed on in a plenary suit in a court that independently has jurisdiction over the subject matter.  Id., Citing Cline v. Kaplan, 309 U.S. 478, 481 (1940).        Compass is attempting the same legally unsupportable tactics as the Federal purchaser.  As fully discussed below, Compass has come to this Court seeking protections the Court never granted.  If Compass believes that the direct lenders violated the termination provisions of the Loan Servicing Agreements, it must "have the merits of [its] claim passed on in a plenary suit

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd         - 8 -

1   in a court that independently has jurisdiction over the subject matter.    Federal, at 1272.

2        While Compass fashions its Motion as an effort to enforce the Debtors' Plan, in reality,

3   the relevant Plan provisions have been fully implemented.  The Plan simply provided for the

4   transfer of an asset, inter alia the Loan Servicing Agreements, by USACM to Compass.  The

5   transfer of the Loan Servicing Agreements by USACM to Compass has closed, and thus, the

6   Plan has been fully implemented as it relates to Compass.  As the only relevant Plan

7   provisions have been fully performed and implemented, it is impossible for the LPG,

8   Cangelosi or any other party to interfere with those Plan provisions.

9        Moreover, the law is clear that, beyond the very limited jurisdiction retained over

10  Surviving Section 3 Rights, this Court's only role is to ensure the asset transfer is effectuated.

11  Once effectuated, the Court' s jurisdiction ends and this Court cannot proceed to adjudicate

12  disputes among third parties which later arise over the Loan Servicing Agreements.  The

13  issues raised by Compass do not involve any Debtor and will have no impact on the Debtors'

14  bankruptcy cases.

15       This Court's Confirmation Order only retained post-confirmation jurisdiction over "any

16  right that existed and was matured and exercisable, as of the Petition Date, to effect a

17  substitution of **USACM** as loan servicer under Section 3 of any Loan Servicing Agreement,"

18  (*emphasis added.*) which the Confirmation Order defined as a "Surviving Section 3 Right."

19  Confirmation Order, ¶ 14.  The Order then provides:

20           ...in connection with any attempted post-Closing exercise of a Surviving
             Section 3 Right : (a) the Direct Lenders must provide Compass at least thirty
21           (30) days prior written notice before exercise of such right in accordance with
             section 8 of the Loan Servicing Agreement. (b) Compass shall have the right
22           to challenge the exercise of such Surviving Section 3 Right by filing a motion
             with this Court prior to the expiration of such thirty (30) day period to
23           determine whether such Surviving Section 3 Right has been properly and
             validly exercised and the Court shall retain jurisdiction to adjudicate any such
24           disputes...

25
    *Id.*  As is made clear in the Confirmation Order, this Court only retained jurisdiction to
26
    adjudicate the exercise of "Surviving Section 3 Rights", which are expressly defined as a
27
    termination based on pre-petition conduct of USACM.  It makes sense that this Court reserved
28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                            - 9 -

1  jurisdiction on this issue since the Court was familiar with the acts of USACM, and there was

2  a legitimate concern that the Loan Servicing Agreements could be terminated based on

3  USACM'S previous activities.   The Court did not retain any jurisdiction over post-

4  confirmation (non-Surviving Section 3 Rights) disputes among non-debtor parties, including

5  a termination of the Loan Servicing Agreements based on Compass' post-confirmation

6  conduct, or based on independent state law rights.

7          Here, Compass has not been terminated based on "Surviving Section 3 Rights."  This

8  Court is specifically not being asked to interpret or enforce its own order. Rather, Compass

9  has been terminated based on its own post-confirmation conduct and direct lenders'

10  independent state law right to terminate Compass.  These issues do not concern interpretation

11  or enforcement of any order of this Court, but only involve normal contractual and legal issues

12  between non-debtor parties.  These issues have been brought before Judge Reed in the District

13  Court Action filed in the Untied States District Court for the State of Nevada.  That Court now

14  has proper subject matter jurisdiction over these issues.

15  **D.    This Court's "Related To" Jurisdiction, Which Is The Only Potentially Relevant
         Jurisdiction In This Case, Is Not Triggered By The Dispute Between Compass**

16  **     And Direct Lenders.**

17          As noted above, and contrary to Compass' Supplemental Brief, "**'related to'**

18  **jurisdiction is the only relevant jurisdiction when disputes are between to two non-**

19  **debtor parties**."  In re Zale Corp., 62 F.3d 746, 751 (5th Cir. 1995) (*Emphasis added.*).  No

20  "related to" jurisdiction exists here.  Case law is clear that in cases such as this, which involve

21  disputes between non-debtor parties regarding assets that have been transferred outside of the

22  bankruptcy estate, this Court cannot exercise its "related to" jurisdiction.

23          This point was affirmed by the Ninth Circuit in Federal, cited above, which held a

24  bankruptcy court has no jurisdiction to adjudicate disputes between non-debtors over non-

25  bankruptcy estate assets.  Federal, at 1272.  This is hardly a novel legal principle, as nearly

26  every Circuit Court of Appeals has held likewise.

27          For example, the Seventh Circuit addressed this issue in In re Zerand-Bernal Group,

28  Inc., 23 F.3d 159 (7[th]Cir. 1994), where the Chapter 11 debtor negotiated the sale of its assets

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                - 10 -

1   to Zerand-Bernal under 11 U.S.C. § 363.  The bankruptcy court entered an order approving

2   the sale and "reserving jurisdiction to enforce the sale agreement."  A few years later, plaintiff

3   was injured by a product manufactured by the debtor and brought suit against Zerand-Bernal

4   under a successor liability theory.  Zerand, like Compass here, attempted to remove the suit

5   to bankruptcy court.

6       Upon review of the plaintiff's challenge of the bankruptcy court's jurisdiction, the

7   Seventh Circuit explained that:

8           Bankruptcy is a system of entitlements (of both debtors and creditors) created
            by federal law, but a dispute over the meaning or validity of an agreement
9           between the purchaser at a bankruptcy sale and some third party likewise arises
            under state rather than federal law.  Otherwise anyone who could trace his title
10          to a bankrupt could invoke federal jurisdiction to settle disputes affecting that
            property.  And why would that be bad? Because as a dispute becomes
11          progressively more remote from the concerns of the body of federal law
            claimed to confer federal jurisdiction over it, the federal interest in furnishing
12          the rule of decision for the dispute becomes progressively weaker.
13

14  Zerand-Bernal,  at 162 (*Internal citation omitted..*)

15      The Seventh Circuit again addressed this issue in In re FedPak Systems, Inc., 80 F.3d

16  207, 214 (7th Cir. 1995), in which a bankruptcy court was called upon to adjudicate a third-

17  party dispute over assets that the debtor transferred to a third-party.  Id.  The Court held it

18  could not "agree that the bankruptcy court has 'related to' jurisdiction because FedPak seeks

19  a determination of rights... in property that passed outside of the court's control when it was

20  sold."  Fed Pak, at 214.  The Court again explained that a bankruptcy court has jurisdiction

21  over property owned by or in the actual or constructive possession of the debtor.  Id.

22  Bankruptcy court jurisdiction does not follow property that is sold; rather, that jurisdiction

23  lapses when property leaves the estate.  Id.  "Since the property is no longer part of the

24  bankruptcy estate and a determination of rights to it would not affect any dispute by creditors

25  over property that was part of the estate, the bankruptcy court has no jurisdiction to determine

26  rights to the property."  Id.

27      Eleventh Circuit Law is in accord with Federal, Zernard-Bernal and FedPak.  In re

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd          - 11 -

1   Lemco Gypsum, Inc., 910 F.2d 784 (11th Cir. 1990), Appellants purchased buildings and

2   equipment owned by a bankruptcy debtor.  After the appellant-purchaser failed to remove the

3   assets from certain leased real property, the landlord (appellee) filed a motion in the

4   bankruptcy court seeking damages for lost use of its real property.  The appellant-purchaser

5   challenged the bankruptcy court's jurisdiction to hear the dispute.

6          On appeal to the 11th Circuit, the Court held that: "The fact that property was once

7   owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the

8   property. The broad jurisdictional provisions set forth in § 1334 grant the district courts power

9   to supervise the entire restructuring of the debtor's estate. However, once property is sold,

10  further disputes have nothing to do with the debtor's estate... There is no reason for the

11  bankruptcy court's jurisdiction to linger." Lemco, at 786.

12         Fifth Circuit case law is in line with the 7th, 9th and 11th Circuits.  For example, In re

13  Zale Corp., 62 F.3d 746 (5th Cir. 1995), the court, applying the same "close nexus" test applied

14  in 9th Circuit, held "A third party action does not create 'related to' jurisdiction when the asset

15  in question is not property of the estate and the dispute has no effect on the estate." Zale, at

16  753.   The court explained that it is the relation of the dispute to the estate, and not the party

17  to the estate, that establishes jurisdiction. Zale, at 755.  The Fifth Circuit also found that a

18  stay prohibiting a creditors suit against a non-debtor may not be extended post-confirmation.

19  Id.

20         These same principles hold true and are reiterated in the First Circuit, Tenth Circuit and

21  various district and bankruptcy courts. See, for example, In re Savage Industries, Inc., 43 F.3d

22  714 (1st Cir. 1994) (Parties to an all-asset transfer conducted under the auspices of Chapter

23  11 are not entitled to rely on the protective jurisdiction of the bankruptcy court to enjoin

24  prosecution of state-law based claims against the all asset transferee.);   In re Samoset Assoc.,

25  654 F.2d 247, 253 (1st Cir. 1981) (Because the predicate of bankruptcy jurisdiction is the

26  possession of the property, once the bankrupt estate transfers property the jurisdiction of the

27  bankruptcy court is over and does not follow the property.  Similarly, the bankruptcy court

28  may not, as a general rule, adjudicate disputes between third parties not involving the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                - 12 -

1   bankrupt or its property.)  In re Gardner, 913 F.2d 1515 (10th Cir. 1990) ("When property

2   leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and

3   the property's relationship tot he bankruptcy proceeding comes to an end.   Thus, the

4   bankruptcy court lacks related to jurisdiction to resolve controversies between third-party

5   creditors which do not involve the debtor or his property..."); In re Parker, 330 B.R. 802

6   (Bankr. N.D. Fla. 2005) (Jurisdiction does not follow sold property.  It lapses when property

7   leaves the estate.);  In Re Chicago, Rock Island and Pacific Railroad Co., 794 F.2d 1182, 1186

8   (7th Cir. 1986)(That some asset was once owned by a bankrupt does not supply federal

9   jurisdiction of disputes concerning that asset.  New disputes arising after the asset is sold to

10  a third party must be resolved through the process available for such independent disputes.

11  When a debtor sells property free and clear of claims, with court approval, neither the

12  property, nor related disputes, can be hauled back into the estate.  The court's jurisdiction

13  lapses with its control of the property.); In re Commercial Loan Corp., ___ B.R. ___, 2007

14  Bankr. LEXIS 748 (Banrk. N.D. Ill. 2007) (After confirmation of a chapter 11 plan, "related

15  to" jurisdiction is "sharply reduced."  Post-confirmation "related to" jurisdiction is therefore

16  appropriate only to ensure that reorganization plans are implemented and to protect estate

17  assets devoted to implement the confirmed plan.  Once assets have left the estate, the

18  bankruptcy court's jurisdiction to decide disputes about them lapses. *Citing* FedPak, 80. F.3d

19  at 214.).

20          Compass' Motion presents the precise form of dispute that the Ninth Circuit, as well

21  as the First, Seventh, Tenth and Eleventh Circuits, hold is beyond the jurisdiction of the  a

22  bankruptcy court.  This dispute boils down to whether direct lenders complied with the Loan

23  Servicing Agreements and Nevada Law in terminating Compass based on acts that occurred

24  after the transfer of the Agreements was complete.  Because the Loan Servicing Agreements

25  are no longer assets of USACM's bankruptcy estate, this Court has no jurisdiction to

26  adjudicate disputes between non-debtors, Compass and direct lenders.

27  ///

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd          - 13 -

**E.     Compass Acknowledges This Dispute Is Outside This Court's Jurisdiction By Demanding Compliance With, And Performance Under, The Transferred Loan Servicing Agreements, Which It Mistakenly Believes Were Modified By This Court.**

By demanding that direct lenders comply with the Loan Servicing Agreements in exercising post-transfer termination rights, Compass in essence acknowledges the lack of subject matter jurisdiction of this Court under controlling case law. However, Compass gets off track when it alleges that this Court has granted Compass "extensive protections" against termination beyond the terms set forth in the Loan Servicing Agreements and Nevada State Law.

It is clear from its Supplemental Brief that Compass continues to mistakenly believe that the Loan Servicing Agreements were modified by this Court to give Compass these "extensive protections". Compass apparently believes this Court or the Debtors' Plan has somehow foreclosed the direct lenders' ability to exercise post-transfer rights under the Loan Servicing Agreements. In reality, this Court did not, and could not, guarantee Compass that direct lenders would not exercise their rights based on Compass' post-confirmation conduct, or otherwise exercise their contractual or State law rights. On the many occasions in which Compass (through Counsel) appeared on the record, this Court reiterated that the Loan Servicing Agreements were not being modified and that the Agreements "are what they are." Compass now ignores the Court's admonitions and asks this Court for protection beyond what it is provided in the Agreements.

Compass assumed certain risks when it acquired the Loan Servicing Agreements, including the risk the direct lenders would exercise their right to terminate the Agreements based on Compass' post-transfer conduct and independent state law right under NAC 645B.073. Indeed, the doctrine of caveat emptor applies to purchasers at bankruptcy sales. *See* In re Rigden, 795 F.2d 727, 732 (9th Cir. 1986);  Hagan v. Gardner, 283 F.2d 643, 646 (9th Cir. 1960). A bankruptcy court is not an insurer against the outcome of bad choices. In re Encompass Services Corp., 337 B.R. 864 (Bankr. S.D. Tex. 2006).

Compass got that they got, which is a contract (the Loan Servicing Agreeements). In acquiring these contracts, Compass assumed the risk of all of the pitfalls, defects and rights

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                    - 14 -

1   that exists under the Loan Servicing Agreements.

2        This Court and the Debtors' Plan could only effectuate the transfer of the Loan

3   Servicing Agreements by USACM to Compass, together with certain assurances under 11

4   U.S.C. § 363 that the Agreements would be transferred to Compass free and clear of claims

5   direct lenders may have against USACM.  While § 363 may protect Compass from existing

6   claims against the Debtor related to the Loan Servicing Agreements, § 363 does not protect

7   Compass against the post-transfer exercise of contractual and state law rights by the other

8   contracting party, here the direct lenders.  Nor does § 363 confer jurisdiction on this Court to

9   adjudicate post-transfer contractual disputes between an asset purchaser and non-debtors.

10
11  **F.    The Doctrine of Judicial Estoppel Prevents Compass From Asserting the
           Jurisdiction of This Court Because Compass Acknowledged Proper Venue Lies
           Elsewhere When It Sued Cangelosi And Other Direct Lenders In State Court**
12  **Based On The Same Nucleus Of Facts.**

13       When a party asserts a position inconsistent with one taken in a previous proceeding,

14  the doctrine of judicial estoppel is implicated and the party is prevented from taking the

15  inconsistent position. Donaldson v. Bernstein, 104 F.3d 547, 555 (3d Cir. 1997); In re Cheng,

16  308 B.R. 448, 452 (9th Cir. BAP 2004) (one form of judicial estoppel is "preclusion of

17  inconsistent positions that estops a party from gaining an advantage by taking one position

18  and then seeking another advantage from an inconsistent position").  Here, Compass filed

19  actions in Nevada State Court against Cangelosi and other direct lenders, based on the same

20  nucleus of facts alleged in its instant Motion.  By such actions, Compass acknowledged

21  subject matter jurisdiction exists in Nevada State Court and triggered that jurisdiction with

22  the filing of its Complaint.  Compass cannot now come to this Court alleging it has exclusive

23  jurisdiction to hear the same dispute.

24
25  **G.    Compass Relies Upon Case Law That Is Distinguishable From This Case And
           Inconsistent With Controlling Ninth Circuit Case Law.**

26       Compass relies on In re Ames Dept. Store, Inc., 317 B.R. 260 (Bankr. S.D.N.Y. 2004),

27  in support of its argument that the Court has "arising in" jurisdiction.  However, Compass

28  fails to explain the necessary factual nexus.  In Ames, pursuant to a stipulation of the parties,

1   in connection with a sale of leases in which the debtor was a leasee, the court entered its

2   Designation of Rights Order, which permitted the assignees of the debtor's leases to make

3   certain alternations to the leased premises.  When an assignee began to make  alterations, the

4   landlord noticed a default, and the assingee brought the matter before the bankruptcy court.

5   The bankruptcy court held it had "arising in" jurisdiction by reason of its Designation of

6   Rights Order, since that order created rights that did not exist outside of bankruptcy.  The

7   dispute was clearly based on the Designation of Rights Order. The court  stated that it would

8   only ensure that "its orders are not frustrated" and "should not assume a continuing role as an

9   'L & T' court."  Ames, at 274.   Additionally, the injunction in Ames was requested in an

10  adversary and was sought under FRBP 7001 and 7065, and FRCP 65(a).  As noted above,

11  Compass has not initiated any adversary proceeding and is in an improper judicial posture to

12  request injunctive relief.

13      Compass relies primarily on theories developed in the Second Circuit, which are

14  antithetical to the law in the Ninth Circuit, and many other Circuits.  The oddity of Second

15  Circuit case law was highlighted in In re Kmart Corp., 359 B.R. 189 (Bankr. N.D. Ill. 2005).

16  There, the bankruptcy court approved transfer of certain store leases by Kmart to Wal Mart.

17  One month after the transfer, the landlord accused Wal Mart of committing numerous

18  breaches of the lease and filed a motion in bankruptcy court alleging it needed an

19  interpretation of the Court's assignment order and the fact it did not modify the leases.  The

20  bankruptcy court found it did not have jurisdiction over the dispute because it was between

21  two non-debtor parties over a contract that was no longer an asset of the bankruptcy estate.

22  Kmart, at 196-97.

23      In reaching its decision, the Kmart court soundly distinguished and criticized the

24  holding in In re Petrie-Retail, Inc., 304 F.3d 223 (2nd Cir. 2002), a case relied upon by

25  Compass and underlying the Ames decision.  The Kmart Court found Petrie distinguishable

26  because it involved an action to enforce an injunction expressly provided for in the plan of

27  reorganization.  That was not the case in the Kmart, or the matter brought before this Court

28  by Compass' Motion, both of which involve alleged post-transfer breaches under contracts

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd          - 16 -

1  assigned from the bankruptcy estate.

2      The <u>Kmart</u> court criticized <u>Petrie</u> and other Second Circuit cases as entirely dismissing

3  the "effect on the estate" analysis adopted in the Seventh Circuit, as well as the Ninth Circuit.

4  *See* <u>In re Fietz</u>, 852 F.2d 455 (1988).  In fact, <u>Kmart</u> found such Second Circuit case law to

5  be antithetical to the law of the Seventh Circuit, which is same as the law in the Ninth Circuit.

6      In addition to being legally inapposite to controlling Ninth Circuit law, they are

7  factually distinguishable from the instant matter.  As noted above, <u>Petrie</u> involved a Motion

8  to enforce an express plan provided injunction.  Here, Compass relies on so specific right

9  under the Plan, but, instead, focuses on rights under the Loan Servicing Agreements, an asset

10  that is no longer within the jurisdiction of this Court.  In addition, in <u>Petrie</u> the Court expressly

11  relied upon the fact the third-party dispute involved an issue already before the bankruptcy

12  court as part of its consideration of another party's claim against the estate.  <u>Petrie</u>, at 231; *See*

13  *also* <u>Mt. McKinley Ins. Co. v. Corning Inc.</u>, 399 F.3d 436, 449 (2d Cir. 2005) (Distinguishing

14  <u>Petrie</u> because it involved a plan consummation motion seeking enforcement of a pre-existing

15  injunction issued in the bankruptcy court's sale order, and the dispute involved an issue

16  already before the bankruptcy court as part of its consideration of claims against the estate.).

17  Moreover, the <u>Petrie</u> Court expressly limited its holding to facts before it and expressed no

18  view beyond its facts.  <u>Petrie</u>, at 231.

19      Shortly after the bankruptcy court issued <u>Ames</u> decision, the District Court of same

20  judicial district (S.D.N.Y.) similarly distinguished and criticized <u>Ames</u>.  *See* <u>In re Bradlees,</u>

21  <u>Inc.</u>, ___ B.R. ___, 2005 US Dist. LEXIS 725 (S.D.N.Y. 2005).  In <u>Bradlees</u>, the S.D.N.Y

22  distinguished <u>Ames</u> as being truly a dispute over a former order, as opposed to an effort to

23  enforce rights created under a contract assigned by the bankruptcy estate.

24      Likewise, <u>Pegasus</u>, while setting forth controlling Ninth Circuit law, is factually

25  distinguishable from the case at bar.  <u>Pegasus</u> involved a bankruptcy adversary proceeding

26  asserting claims for breach of the Plan and court approved contracts.  As remedies, the

27  plaintiff sought rescission and disgorgement sale proceeds funds paid to the estate.  Here, no

28  such adversary proceeding exists.  Moreover, if any relevant breaches occurred in this case

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd     - 17 -

1  they would be breaches of the Loan Servicing Agreements, not the Plan, the Confirmation

2  Order, or the Asset Purchase Agreement between Compass and the Debtor.

3

**H.    Compass' Hollow Threats Of Rescission Are Not Enough To Trigger Subject**

4  **Jurisdiction Over The Disputes Between Compass And Direct Lenders.**

5      As Compass has not actually sought rescission of the Plan Confirmation Order, their

6  speculative threats are entirely irrelevant to the jurisdictional issues before this Court.  In re

7  Federal Shopping Way, Inc., 717 F.2d 1264, 1274 (9th Cir. 1983). A naked threat to sue the

8  estate is not enough to confer jurisdiction on this a Bankruptcy Court.  Id.  Indeed, Courts

9  have not been "much impressed" when confronted with a threat to rescind a bankruptcy court

10  approved agreement. See In re Zerand-Bernal Group, Inc., 23 F.3d 159,163-64 (7[th]Cir. 1994).

11  **I.    This Court Lacks Subject Matter Jurisdiction Over The Dispute Between**

**Compass and Direct Lenders, Which Boils Down To Whether Direct Lenders**

12  **Properly Terminated Compass Based On: (1) Post-Confirmation/Post-Closing**

**Contractual And State Rights; And (2) Post-Confirmation/Post-Closing Conduct**

13  **Of Compass.**

14      As Compass readily acknowledges in its Supplemental Brief, the essence of this

15  dispute is whether an overwhelming majority of direct lenders complied with the Loan

16  Servicing Agreements and Nevada State Law when they terminated the Loan Servicing

17  Agreements with Compass based on: (1) direct lenders' post-confirmation and post-closing

18  contractual and state law rights; and (2) post-confirmation and post-closing acts of Compass,

19  and Compass alone.  An overwhelming majority of direct lenders (60% of beneficial interests

20  and 62% of direct lenders in number) exercised their rights under NAC 645B.073 and the

21  Loan Servicing Agreements to terminate Compass by executing written elections.  The

22  termination of Compass based on its post-confirmation conduct was not the work of a

23  "dissident minority group" as portrayed by Compass.  It was the action of the majority of

24  direct lenders on an loan-by-loan basis.

25      The determination of whether direct lenders properly terminated the Loan Servicing

26  Agreements based on their **post-confirmation** rights and the **post-confirmation** acts of

27  Compass is well beyond the limited post-confirmation jurisdiction of this Court.

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd          - 18 -

1    Compass is improperly attempting to bring a post-confirmation dispute between two

2  non-debtor parties before this Bankruptcy Court. This Court cannot and should not monitor

3  the relationship between Compass and direct lenders forever.   As in <u>Petrie</u>, supra, the

4  Bankruptcy Court is not the proper court to air all contractual disputes between Compass and

5  the direct lenders for the life of the Loan Servicing Agreements.  Ninth Circuit case law is

6  clear that this Court's jurisdiction to adjudicate disputes arising under the Loan Servicing

7  Agreements ended when the transfer to Compass was complete.  If Compass believes the

8  direct lenders breached the Loan Servicing Agreements or improperly exercised their rights

9  to terminate the Agreement, Compass must go to a Court with proper jurisdiction over such

10  a dispute.

11    The dispute Compass brings before this Court does not have the "close nexus" to this

12  bankruptcy case or the Debtors' Plan as required in the Ninth Circuit. <u>In re Pegasus Gold</u>

13  <u>Corp.</u>, 394 F.3d 1189 (2005).  The determination of this dispute between Compass and direct

14  lenders could not conceivably have any effect on USACM's estate.  This dispute arises from

15  the ongoing post-confirmation contractual relationship between direct lenders and Compass.

16   It is impossible that this action would in anyway alter the debtor's rights, liabilities, options,

17  or freedom of action.  Indeed, USACM has not reorganized and is no longer in business.

18  Thus, the dispute between direct lenders and Compass cannot interfere with Debtors'

19  "reorganized business."

20    Because this Court lacks subject matter jurisdiction, it is not necessary for the Court

21  to go any further in its analysis.

22                                              **III.**
23  **THIS COURT SHOULD NOT BE PERSUADED BY COMPASS' MISLEADING
CLAIM THAT IT PAID $67 MILLION FOR LOAN SERVICING RIGHTS.**

24    Compass continually chants the mantra that they paid $67 million for the Loan

25  Servicing Agreements, and direct lenders did not pay a penny.  As a matter of fact, Compass'

26  position is inaccurate.  Compass paid a total of $67 million for various assets, the most

27  valuable of which was the First Trust Deed Fund portfolio.  The value attributed to the Loan

28  Servicing Agreements was a mere fraction of the total sale price.  As noted in LPG's

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                              - 19 -

1    Opposition, for a long time in this case interested parties believed the Loan Servicing

2    Agreements were valueless, and may have detracted from the value of the entire asset

3    package.  Thus, it is entirely disingenuous for Compass to come to this Court claiming it paid

4    $67 million for loan servicing rights.  Furthermore, it is irrelevant to the issue of subject

5    matter jurisdiction whether Compass paid $1.00 or $67 million.

6        Indicative of Compass' disregard of its fiduciary duties, it entirely ignores the role of

7    the direct lenders and the fact they have over$500 million invested in these loans.  But for the

8    direct lenders $500 million in investments, there would be no loans to service.  Compass has

9    clearly put its own interests ahead of direct lenders, to whom Compass owes fiduciary duties.

10   This, among many, many other post-transfer/post-confirmation reasons,   lead to the

11   termination of Compass.

12       Additional significant post-transfer cause for terminating Compass is its belief that it

13   has the right to receive default interest before any direct lender is paid, which is contrary to

14   the Liquidating Trust's interpretation and the direct lenders' (the parties who actually entered

15   into the Agreements) understanding.  Compass' unprecedented position served as the catalyst

16   for direct lenders to exercise their rights to terminate Compass.  Otherwise, there are in

17   essence two classes of direct lenders: (1) a preferential class for the investors in loans that are

18   serviced by the Liquidating Trust; and (2) a second impaired class that got stuck with

19   Compass and its interpretation that default interest has absolute priority.  The Court did not

20   change the Loan Servicing Agreements for Compass, while not changing the ones remaining

21   with the estate.  The Loan Servicing Agreements are one and the same agreement.

22       Moreover, while the Loan Servicing Agreements may not impose an express duty upon

23   Compass to disclose the fees it has receives as a servicer, Nevada state law certainly requires

24   as much.  See NAC 645B.160.  Compass, as a servicer, acts under a power of attorney and,

25   therefore is a fiduciary. See generally, Young v. Nevada Title Company, 103 Nev. 436, 439,

26   744 P.2d 902 (1987) ("An agent owes to the principal the highest duty of fidelity, loyalty and

27   honesty in the performance of the duties by the agent on behalf of the principal.") LeMon v.

28   Landers, 81 Nev. 329, 402 P.2d 648 (1965) (A mortgage broker "is charged with the duty of

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                - 20 -

1  fullest disclosure of all material facts concerning the transaction that might affect the

2  principal's decision." *Holland Realty Investment Co. v. Nevada,* 84 Nev. 91, 97, 436 P.2d 422

3  (1968); Accord, *Jory v. Bennight,* 91 Nev. 763, 542 P.2d 1400 (1975).  As a fiduciary,

4  Compass is required to disclose its compensation and act in the <u>best interest</u> of investors, but

5  since the transfer has failed to disclose fees it has received.

6      Although the above issues are not before the Court based on a lack of subject matter

7  jurisdiction, they are presented to provide background and to counter the numerous irrelevant

8  factual allegations raised by Compass.

9

10              **IV.**
                **CONCLUSION**

11      Compass' Motion must be denied because: (1) Compass lacks standing to obtain the

12  relief sought in its Motion; and (2) this Court lacks subject matter jurisdiction to adjudicate

13  the issues Compass has raised.

14      Compass' Motion seeks injunctive relief against the LPG and Cangelosi under 11

15  U.S.C. § 105.  However, Ninth Circuit case law is clear that Compass, as a non-debtor party,

16  lacks standing to seek and obtain injunctive relief under § 105 and has not initiated a required

17  adversary proceeding .

18      This Court lacks subject matter jurisdiction because Compass raises issues that do not

19  have the requisite "close nexus" to the Debtor's Chapter 11 Plan.  The essence of this dispute

20  is whether an overwhelming majority of direct lenders properly terminated the Loan Servicing

21  Agreements with Compass based on: (1) direct lenders' <u>post-confirmation</u> and <u>post-closing</u>

22  contractual and state law rights; and (2) <u>post-confirmation</u> and <u>post-closing</u> acts of Compass,

23  and Compass alone.  This Court does not have jurisdiction over such disputes under any

24  jurisdictional theory, including "arising under", "arising in" or "related to" jurisdiction.  For

25  these reasons, it is submitted that the Bankruptcy Court is compelled to deny Compass'

26  Motion leave these non-debtor parties to pursue their rights and remedies in a court of

27  competent jurisdiction.

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd                    - 21 -

DATED this 14th day of June, 2007.

LAW OFFICES OF ALAN R. SMITH

/s/ Alan R. Smith

By_____

ALAN R. SMITH, ESQ.
Attorney for the Lenders Protection Group

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\LPG\SUPP OPP to Compass Motion.wpd

- 22 -