```
 1  HARRY W. JESSUP                              RECEIVED AND FILED
    HELEN B. JESSUP
 2  2009 West Lund
    Las Vegas, NV 89102                          2007 JUN 20  A 9: 05
 3  (702)
    In Proper Person                             U.S. BANKRUPTCY COURT
 4                                               PATRICIA GRAY, CLERK
```

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY<br>Debtor. | ) Case No. BK-S-06-10725 LBR<br>) Case No. BK-S-06-10726 LBR<br>) Case No. BK-S-06-10727 LBR<br>) Case No. BK-S-06-10728 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | ) Case No. BK-S-06-10729 LBR<br>) **Chapter 11**<br>)<br>) Jointly Administered Under |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | ) Case No. BK-S-06-10725 LBR<br>)<br>) |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC.,<br>Debtor. | ) **JESSUPS' REPLY**<br>) **TO MESIROW**<br>) **FINANCIAL INTERUM**<br>) **MANAGEMENT, LLC'S** |
| In re:<br>USA SECURITIES, LLC.,<br>Debtor. | ) **REPLY AND MOTION**<br>) **TO STRIKE**<br>) |
| Affects:<br>ALL DEBTORS | )**(ALL DEBTORS)**<br>) |

COMES NOW HARRY W. JESSUP and HELEN B. JESSUP (hereinafter "the JESSUPS", in Proper Person, and files this Reply, indicating as follows:

1. That the court make all reimbursements to creditors, including Debtors attorneys, in the order such monies were received.

///
///
///
///
///
///

2. That the court deny the motion to strike, as if the court were to strike all material that is '*scandalous*', this entire case would have to be striken.

Dated this 19th day of June, 2007.

_____
HARRY W. JESSUP
In Proper Person

_____
HELEN B. JESSUP
In Proper Person

## FACTS/HISTORY

HARRY W. JESSUP and HELEN B. JESSUP (hereinafter collectively referred to as "the JESSUPS"), reply to the MESIROW FINANCIAL INTERIM MANAGEMENT, LLC'S (A) OMNIBUS REPLY TO OBJECTIONS TO FINAL FEE APPLICATION AND (B) MOTION TO STRIKE DOCUMENT PURSUANT TO FED. R. CIV. P. 12(F).

The JESSUPS, together with numerous other investors, invested their savings in what were supposed to be extremely save investments. It is clear by this action that there was exceptional ongoing fraud - from even prior to the time of the investment by the JESSUPS. This is undisputed. This case is the very epitome of investment fraud. There were fraudulent representations of where the money would be allocated, the rate of return of the money, and the repayment of the money.

Certain investors were repaid prior to the filing of the bankruptcy, that is, those believed to have ties to the mob.

Now the debtors, using investors funds, are seeking to pay for their attorney and other professional expenses with the investors moneys. This is inappropriate. The JESSUPS reiterate, it is appropriate that the investors, in order of their investments be first paid.

The Reply indicates:

"On April 14, 2006, the **Debtors filed an application (the "Employment Application")** for authorization of (I) the employment and retention of MFIM as crisis managers to the Debtors, and (ii) the designation of Thomas J. Allison of MFIM as Chief Restructuring Office **of the Debtors** and the employment of certain temporary employees provided by MFIM. [Docket No 6]. On April 19, 2006, August 11, 2006, October 31, 2006, January 11, 2007, and April 2, 2007, this Court entered

1  interim orders **authorizing the Debtors** to (i) the [sic] employ and retain MFIM as crisis managers to the Debtors and (ii) designate Thomas J. Allison of MFIM as Chief Restructuring Office of the Debtors and the employment of certain temporary employees for interim periods until the plan of reorganization was confirmed by this Court." [emphasis added.]

The JESSUPS continue to object to the 'defense team' of the debtors receiving payment prior to the disbursement of funds to the investors. It is unconscionable that any such representation, knowing the investors were left with little or no return of their funds, to demand and accept, as part of their employment contact, a $2.5 million bonus!

There is no reason why the defense team should collect -especially a bonus- before reimbursement of the long standing obligations to the investors.

The Debtors, and each of them, had superior knowledge about where the funds were going. They presented oral and written information to the investors to induce them to investing funds they knowingly diverted. There accounting was likened to a Ponzi scheme. Under the Superior Knowledge Doctrine, with the Debtors knowingly diverting funds long before it came to the investors attention, the court should confirm fraud in the inducement against the Debtors. There should be criminal charges for fraud rather than a bankruptcy action.

Yet, what monies are located are diverted to the very same Debtors.

The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest, but unfortunate debtor." Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by...false pretenses, a false representations, or actual fraud." 11 U.S.C. subsection 523(a)(2)(A). Such is the present case.

The court has the documentation that the funds invested were to be used for first deeds of trust. The court has evidence this is not what occurred. In fact, in addition to fraud in the inducement, Debtors should be charged with pension fraud, mail fraud, money laundering, bribery and raketeering. This action should not be in bankruptcy court, but in criminal court; and the funds found should not go to Debtors defense, but to the investors first, in the order of investment. Only upon criminal charges will the investors be vindicated.

## OPPOSITION TO MOTION TO STRIKE

Debtors move the court to strike the LPG Original Objection pursuant to Fed. R. Civ. P. 12(f), which allows the court to strike any pleading or portions of any pleading which contain immaterial, impertinent or scandalous matter. The district court enjoys "liberal discretion" in deciding Rule 12(f) motions. *Nationwide Ins. Co. V. Central Missouri Electric Coop, Inc.* 278 F.3d 742, 748 (8th Cir. 2001)(citations omitted). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distributing Company,* 961 F.2d 654, 664 (7th Cir. 1992).

JESSUPS disputes that the Original Objection is "scandalous." The truth is always a defense. Further, if this court were to strike all scandalous matter, everything done by Debtors has been scandalous, and would have to be stricken. That is how Debtors operated their business. The Investors have a right to portray the facts about how Debtors operate.

Therefore, the JESSUPS oppose the striking of any documents that demonstrate how Debtors, or any of them, conduct business.

It is appropriate that this information be disseminated so a factual picture can be presented to the Court. Nothing should be stricken from the record.

## CONCLUSION

In summary, it is a very genuine concern that Debtors legal and accounting representation are being paid excessive sums of money, while the investors are left with little or nothing after years of investment. This entire case is fraud, and criminal charges should be brought.

Dated this 19th day of June, 2007.

*/s/ Harry W. Jessup*
HARRY W. JESSUP

*/s/ Helen B. Jessup*
HELEN B. JESSUP

Sworn and subscribed to before me this 19 June 07.

*[notary signature]*

EMILY R. STEVENS
Notary Public, State of Nevada
Appointment No. 00-62114-1
My Appt. Expires Jan 13, 2008