1

2   **EDWARD BURR**                                    E-Filed on 4/19/2007
    **Sierra Consulting Group, LLC**
3   Two North Central Avenue, Suite 700
    Phoenix, AZ 85004
4   Telephone: 602-424-7001
    Fax: 602-424-7002
5   tburr@sierracgllc.com

6
    Financial Advisor
7   For the Official Unsecured Creditors' Committee

8                     **UNITED STATES BANKRUPTCY COURT**

9                      **FOR THE DISTRICT OF NEVADA**

10                                                  Jointly Administered

11  In Re:                                          Chapter 11 Cases

12  USA Commercial Mortgage Company
    06-10725 – Lead Case                            Judge Linda B. Riegle Presiding

13
    USA Capital Realty Advisors, LLC
14  06-10726                                        Date:
                                                    Time:
15  USA Capital Diversified Trust Deed Fund, LLC    **Affecting:**
    06-10727                                        ☐ All Cases
16                                                  **or Only:**
    USA Capital First Trust Deed Fund, LLC          ☒ USA Commercial Mortgage
17  06-10728                                        Company
                                                    ☐ USA Capital Realty Advisors, LLC
18  USA Securities, LLC                             ☐ USA Capital Diversified Trust Deed
    06-10729                                        Fund, LLC
19                                    Debtors.      ☐ USA Capital First Trust Deed Fund,
                                                    LLC
20
                                                    **FIRST AND FINAL APPLICATION**
21                                                  **FOR AWARD OF PROFESSIONAL**
                                                    **FEES AND REIMBURSEMENT OF**
22                                                  **EXPENSES OF SIERRA**
                                                    **CONSULTING GROUP LLC AS**
23                                                  **FINANCIAL ADVISOR TO THE**
                                                    **OFFICIAL UNSECURED**
24                                                  **CREDITORS COMMITTEE FOR**
                                                    **USA COMMERCIAL MORTGAGE**
25                                                  **COMPANY FOR THE PERIOD OF**
                                                    **JULY 14, 2006 THROUGH MARCH**
26                                                  **12, 2007**

27

28

Sierra Consulting Group, LLC ("Sierra") hereby applies to this Court and makes this First and Final Application for Award of Professional Fees and Reimbursement of Expenses of Sierra Consulting Group, LLC as Financial Advisors to the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company for the Period of July 14, 2006 through March 12. 2007 (the "Sierra Application") pursuant to 11 U.S.C. Section 328 for: (a) allowance of reasonable interim compensation in the amount of $367,984.50 for 1,345.8 hours of professional services rendered by Sierra on behalf of the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company, and (b) reimbursement of $8,241.05 in actual and necessary expenses incurred for the period of July 14, 2006 through March 12, 2007 (the "Application Period").

**BACKGROUND**

On April 13, 2006, (the "Petition Date"), USA Commercial Mortgage Company ("USACM") along with other related entities commenced its Chapter 11 cases by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

On or about July 14, 2006 the Official Committee of Unsecured Creditors' for USA Commercial Mortgage (the "Committee") filed its Application Pursuant to F. R. BANKR. P. 2014(a) for Order Under Section 1103 of the Bankruptcy Code Authorizing the Employment and Retention of Sierra Consulting Group, LLC as Financial Advisors to the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company [Docket No. 878] (the "Sierra Employment Application") which was effective as of July 14, 2006, and on April 21, 2005 the

Court entered its <u>Order Approving Application Pursuant to F. R. BANKR. P.</u>
<u>2014(a) for Order Under Section 1103 of the Bankruptcy Code Authorizing the</u>
<u>Employment and Retention of Sierra Consulting Group, LLC as Financial Advisors</u>
<u>to the Official Unsecured Creditors' Committee for USA Commercial Mortgage</u>
<u>Company</u> [Docket No. 1138] (the "Sierra Employment Order"), thereby granting the
Debtor's request to employ Sierra to serve as its Financial Advisor in connection
with this Chapter 11 proceeding.  Pursuant to the Sierra Employment Application,
Sierra's retention was effective as of July 14, 2006.  In this capacity, Sierra has
rendered various financial and restructuring advisory services to the Debtor.  On
December 20, 2006, the Court made a ruling, confirming the "Debtors' Third
Amended Joint Chapter 11 Plan of Reorganization" [Docket No. 1799] (the "Plan").
The Plan became effective on March 12, 2007.

To date, Sierra has not filed any previous fee and expense reimbursement
applications however it has been submitting monthly invoices to the Debtor with
copies to the other professionals involved in these matters as well as to the office of
the United States Trustee pursuant to the "Administrative Order Establishing
Procedures for Interim Compensation and Reimbursement of Expenses of
Professionals," entered on August 29, 2006 [Docket No. 1199] (the "Interim
Compensation Order"), where this Court has established certain procedures with
respect to the interim compensation of professionals of the Debtors' estates;.  To
date, Sierra has received three partial payments in the amount of $253,012.81.

**<u>FEES AND EXPENSES INCURRED DURING APPLICATION PERIOD</u>**

A summary of fees and expenses included in this Sierra Application is as
follows:

| Period | Fees | Expenses | Total |
|--------|------|----------|-------|
| July 14, 2006 – March 12, 2007 | $367,984.50 | $8,241.05 | $376,225.55 |
| Less Partial Payment Received | | | $253,012.81 |
| Net Amount Due | | | $123,212.74 |

See Exhibits A and B for a summary of professionals fees and expenses incurred by professional and category for this application.

In rendering the services which compensation is sought by this Sierra Application, the Sierra professionals incurred a total of 1,345.8 hours of professional time during the period Application Period.  The professional fees for such services computed at Sierra's standard hourly rates for similar services are $367,984.50.  The net average blended billing rate for services rendered by Sierra during the Application Period is approximately $273.43.  See attached Exhibit A for a summary of all fees incurred by professional and Exhibit B for a summary of all fees incurred by activity.

Sierra incurred a total of $8,241.05 in expenses during the Application Period and are comprised of necessary out-of-pocket charges incurred including airfare, lodging, car rental, airport parking, out of town meals and other misc. expenses.  See Exhibit C for a detailed listing of all expenses incurred.

Pursuant to this Sierra Application, the standard rates charged by professionals providing services in this Chapter 11 matter were previously disclosed in the Sierra Employment Application and subsequently approved by the Court in the Sierra Employment Order.

Sierra's time entries are recorded contemporaneously with a description of the services rendered by one-tenth of an hour (0.10 hour) increments.  See Exhibit C for detailed description of all time incurred.

The professional fees for which Sierra is seeking payment are believed to comply with the Office of the United States Trustee's Billing Guidelines. The compensation Sierra seeks is reasonable and is for actual and necessary services rendered. The types of services performed by Sierra were previously approved by the Court in the Sierra Employment Application. Sierra believes that all of the services performed by its professionals have been beneficial to the Debtor's estate, as well as to the interested parties to those proceedings, and have substantially contributed to the case.

There is no agreement or understanding between Sierra and any other party, other than the employees of Sierra, for the sharing of compensation received, or to be received, for services rendered in connection with this matter.

Sierra has provided interim monthly fee statements to the members and counsel of the Official Unsecured Creditors' Committee for USA Commercial Mortgage, the Debtor, counsel for the Debtor, counsel for the other related committees as well as the office of the US Trustee.

Sierra only received two objections to the Sierra monthly invoices and both partial objections were filed by the US Trustee's office.

The first objection received by Sierra was on November 16, 2006 from the US Trustee's office who had an objection to Sierra's September monthly fee statement. The two specific objections to the Sierra September monthly invoice from the US Trustee's office were:

A) Vague Time Entries: Twelve separate entries containing 16 hours of time at $295/hr were recorded by Mr. Burr with vague descriptions of the related services. The total amount of related fees is $4,720.00. An adjustment of $1,573.33 is warranted to address the lack of sufficient detail in these time entries.

B) Expense Request: The application also requests reimbursement for $23.98 for "Internet charges at hotel" without relating the expense to these cases, any detail

as to what actual services were performed via the internet, or how the expense benefited these estates.

Sierra believes that all of its time entries contain sufficient detail and description of service, however Sierra attempted to contact the US Trustee's office on two occasions (November 16 and then again on November 22) to request which "twelve separate entries" the US Trustee was referring to so Sierra could furnish additional detail.  However, the US Trustee's office never responded to Sierra's request.  In its request to the US Trustee's office, Sierra also explained that the $23.98 of "internet charges at hotel" was for Mr. Burr to access his e mail account while he was attending the American Bankruptcy Institute's Southwest Conference and download various documents including drafts of the Debtors' sale documents, that were required to be discussed on various conference calls while he was in attendance of the ABI Conference.  Sierra believes that all of the fees and expenses referred to in the US Trustee's objection should be allowed in full.

The second objection received by Sierra was from the US Trustee's office who had an objection to Sierra's October 2006 monthly fee statement. The two specific objections to the Sierra October monthly invoice from the US Trustee's office were:

A) Vague Time Entries:  The following vague time entry in excess of .5 hours is contained in the Sierra Consulting Group's October monthly statement:

10/25/2006  DWT  QC'd the current data back to prior months activity 1.70 hrs. - $425.00

B) Delegation to Lower Rate Professionals and Paraprofessionals  The following entry reflecting services rendered by a professional that could have be easily performed by a lower rate professional or clerical staff:

10/16/2006  DN  Search PACER, BMC sites for updated financial info  0.90

1    hrs - $225.00

2

3       Sierra believes that all of its time entries contain sufficient detail and

4    description of service, however Sierra attempted to contact the US Trustee's office

5    by sending a letter dated December 28, 2006 where Sierra responded to the two

6    specific objections to the October monthly statement and the responses are as

7    follows:

8       Objection 1 Response:  As part of our monthly and ongoing tasks in this case,

9       we have been asked to analyze all of the monthly loan collection activity as

10      well as the appropriate holdbacks and collection of allowed serving fees, prior

11      to the Debtor being allowed to make any disbursements to the direct lenders.

12      On a monthly basis, Mesirow sends our firm a rather large file (over 5 megs)

13      that we are required to analyze and once we are comfortable that the Debtor

14      has properly calculated all servicing fees and other holdbacks, we give our

15      approval to Mesirow who then makes the monthly distributions to the direct

16      lenders.  As part of this review process, it is necessary to perform a quality

17      control ("QC") review to the prior months data as some of the data that we

18      receive from Mesirow has a tendency to change from one month to the other

19      when it is expected to remain constant. If any of the data is different from the

20      prior month's data, we have to follow up with Mesirow to see what the

21      fluctuation is caused by.  Our QC analysis has lead to the discovery of certain

22      calculation discrepancies which we pointed out to Mesirow and have been

23      corrected.

24

25      Objection 2 Response:  One of the tasks that our committee has asked us to

26      perform on a monthly basis is to review and analyze the monthly operating

27      reports of the Debtor as well as the actual financial performance of the

28      USACM estate and then distribute a summary analysis to the committee

members.  Generally, Mesirow forwards the required financial statements to our firm but despite repeated requests, we do not receive all of the financial information therefore we are required to search the BMC site for some of this requested financial information to perform our analyses.  On October 16, this particular task was performed by Mr. Noblitt whose hourly rate is $250.00. Mr. Noblitt has over 10 years of professional experience and holds a masters' degree.  By comparison, Sierra's hourly billing rates are well below that of all other professionals that are working on this case.  As an example, Mr. Noblitt's hourly rate despite him being more experienced is well below those of many of Mesirow's newer associates ($290) and all of FTI's professionals ($295 being the lowest rate).  Mr. Noblitt has been working on this matter since our firm was hired and he is familiar with all of the various types of financial reports that Mesirow prepares.  Mr. Noblitt may have been able to delegate this research to one of our paraprofessionals, but since they do not possess the same knowledge that Mr. Noblitt does, this process would not have been as efficient and would have ended up costing the estate more money.

The US Trustee's office never replied or responded to Sierra's letter.

Sierra believes that all of the fees and expenses referred to in both of the US Trustee's objections should be allowed in full.

Sierra has provided various services in its capacity as the Financial Advisor to the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company.  Professional time incurred on the Committee's behalf has been assigned to the specific task classification to which it mostly relates.  Sierra has used its best efforts to assign its time entries to the various matter classifications in a consistent manner.

During Application Period, Sierra used ten (10) separate and distinct activity codes.  These matters and the fees incurred for each matter are as follows:

      a.    **Asset Sales**:  Included in this activity code is time related to performing detailed analyses and review of various proposed term sheets to purchase certain assets of the estate, meetings and calls with potential bidders to discuss sale and assets, preparing schedules of assets proposed to be sold with corresponding book values, analyzed all bids as received for the best and highest value for the USACM estate, participated in meeting and negotiations with bidders, assisted in marketing the USACM assets to additional potential bidders, answered numerous questions from potential bidders, participated in negotiations for bidding procedures and overbid issues, actively participated in the actual sale, and other related activities.  Total hours incurred for this task code was 139.2 hours and total professional fees incurred were $40,627.50.

      b.    **Claims Analysis**:  Included in this activity code is time related to performing preliminary analyses on certain claims including executory and insider claims so counsel could file appropriate objections and prepared declaration in support of objections.  Total hours incurred for this task code was 33.1 hours and total professional fees incurred were $8,689.00.

      c.    **Depos, Trial Prep and Attend**:  Included in this activity code is time related to attending various court hearings and depositions that are not elsewhere classified including the hearing on the motion to distribute funds and the deposition of Joe Milinowski.  Total hours incurred for this task code was 21.1 hours and total professional fees incurred were $6,224.50.

d.    **Financial Analysis and Review**:  Included in this activity code is all of the time related to various financial analyses and tasks performed including: detailed analysis of the entire $950M loan portfolio to determine holdback amounts to recover the $39M of prepaid interest, analysis of the monthly loan collections to determine amounts to be distributed to the direct lenders and amounts to be held back, detailed analysis of the various USACM balance sheet assets and liabilities, analysis of the $58M receivable from USA Investment Partners and related issues with the DTDF, analysis of cash flow projections for the UASCM estate, analysis of intercompany liabilities and impact on the USACM estate, analysis if the Debtor's efforts in collecting loan principal, interest, default interest, late fees and other fees due to the USACM estate, analysis of the loans and related appraisal values, analysis of USACM actual cash flow performance to Mesirow's budget and investigated variances, analysis of the professional fees being charged to the USACM estate and recommended different allocations to other estates, performed weekly analyses of actual loan collections and follow up with Mesirow on forecasted collections, work with Mesirow on certain loan payoffs and made recommendations to the USACM committee, conversations with alternative loan serving companies, forecasted anticipated loan fees and default interest per Mesirow collection forecast, responded to various questions from creditors, and other related analyses and tasks.  Total hours incurred for this task code was 704.9 hours and total professional fees incurred were $187,714.00.

e.   **Financial Projections**: Time incurred in this activity code is relate to the time devoted to creating cash flow forecasts for the USACM estate prior to receiving the Mesirow budget.  Total hours incurred for this task code was 18.7 and the total professional fees incurred was $4,675.00.

f.   **General Case Strategy**: Time incurred in this activity code is related to the time devoted to participating in numerous meetings with the members of the Official Committee of Unsecured Creditors of USA Commercial Mortgage to keep them informed of the case issues, participating in general meetings with the Debtor and other committee professionals, and related general meetings.  Total hours incurred for this task code was 116.8 and the total professional fees incurred was $33,501.50.

g.   **Liquidation Analysis**: Time incurred in this activity code is related to the time devoted to the analysis of the liquidation value of the USACM estate prior to Mesirow's analysis.  Total hours incurred for this task code was 20.9 and the total professional fees incurred was $5,355.50.

h.   **Misc. Motions and Responses**: Time incurred in this activity code is relate to the time devoted to analysis and review of various motions filed in this case not elsewhere classified including: continued use of cash motion, motion to distribute funds (including the calculation of the proposed amounts to be distributed), retention and severance plan motion, motion to convert, and other miscellaneous motions.  Total hours incurred for this task code was 73.5 and the total professional fees incurred was $20,097.00

i.   **Monthly Operating Reports**:  Included in this matter code is time related to the analysis and summary of all of the required monthly operating reports that were filed with the court.  Total hours incurred for this task code was 56.3 hours and total professional fees incurred were $13,629.50.

j.   **Plan and Disclosure Statement**:  Included in this activity code is time related to assisting counsel in addressing various issues to be included in the Debtor's Plan of Reorganization and Disclosure Statement, reviewing and commenting on various versions of the Plan and Disclosure Statement, participated in meeting and conference calls with Debtor to discuss plan issues, participated in negotiations with the other committees on settlement issues, and other related tasks.  Total hours incurred for this task code was 161.3 hours and total professional fees incurred were $47,417.00.

See Exhibit C for a listing and detailed descriptions for all services provided in this Sierra Application.  Sierra has voluntarily decided to not charge for any fees related to travel time or time related to preparing fee applications or any monthly invoices.

**CONCLUSION**

As outlined herein, Sierra believes its efforts have facilitated the Committee's and Debtor's efforts and have brought about a resolution to this matter that maximized the value for all of the creditors and the estate.  Accordingly, Sierra believes that its services have been beneficial to the Debtor's estate and the various

interested parties, thereby satisfying the requirements provided by Bankruptcy Code section 330.

Whereas, Sierra respectfully requests that the Court enter an Order:

1.  Allowing, on a final basis, total professional fees and expenses compensation sought in this Sierra Application in the amount of $376,225.55.

2.  Granting such other and further relief as the Court deems just and appropriate.

DATED this 22nd day of March 2007.

SIERRA CONSULTING GROUP, LLC.

By_____/s/ Edward Burr_____
Edward Burr
**Sierra Consulting Group, LLC**
Two North Central Avenue,
Suite 700
Phoenix, AZ 85004