LEWIS
AND
ROCA
LLP
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona  85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 7/18/07

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10727-LBR |
| | Case No. BK-S-06-10728-LBR |
| | Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Jointly Administered Under Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | **USACM LIQUIDATING TRUST QUARTERLY REPORT FOR PERIOD ENDING JUNE 30, 2007** |
| USA SECURITIES, LLC,                     Debtors. | |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The USACM Liquidating Trust Quarterly Report by Geoffrey Berman, Trustee for period ending June 30, 2007 is attached hereto.  For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

1

1851060.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    DATED:  July 18, 2007.

2                                     **LEWIS AND ROCA LLP**

3

4                                     By:  /s/ RC (#6593)
                                          Rob Charles, NV 6593
5                                         *Counsel for USACM Liquidating Trust*

6

7    Proof of Service

8    Copy of the foregoing served via email on
     Wednesday, July 18, 2007 to all parties
9    listed on the Post Effective Date Official
     Service List on file with this Court
10

11

12     /s/  Christine Laurel
     Christine Laurel
13   Lewis and Roca LLP

14

15

16

17

18

19

20

21

22

23

24

25

26

1851060.1

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUDATING TRUST

### June 2007

### TABLE OF CONTENTS

<u>Page</u>

I.    CONFIRMATION ORDER APPEALS .................................................................. 2

II.   INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET
      DEFENDANTS .................................................................................................... 3

III.  PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
      OTHER BANKRUPTCY PROCEEDINGS ........................................................ 3

      A.    The USAIP Receivership and Involuntary Chapter 11 Case ................. 3

      B.    Insiders – Thomas Hantges and Joseph Milanowski ........................... 4

      C.    HMA Sales, LLC ..................................................................................... 5

      D.    USA Commercial Real Estate Group ...................................................... 5

      E.    Salvatore Reale ....................................................................................... 5

      F.    USA Investors VI, LLC ............................................................................ 6

      G.    Tree Moss Partners, LLC ........................................................................ 6

IV.   COLLECTION OF TRUST ASSETS ................................................................. 6

      A.    Colt Loan ................................................................................................. 6

      B.    Compass Overbid Escrow Settlement .................................................... 6

      C.    Other Collections ..................................................................................... 7

V.    PROFESSIONAL FEE APPLICATION OBJECTIONS ..................................... 7

VI.   PROOFS OF CLAIM AND CLAIMS OBJECTIONS .......................................... 9

      A.    Administrative and Priority Claims ........................................................... 9

      B.    Secured Claims ....................................................................................... 9

      C.    Unsecured Claims ................................................................................. 10

VII.    LOAN SERVICING ISSUES ....................................................................... 11

    A.    Trust Loan Servicing - Placer Vineyards............................................. 11

    B.    Compass Trust Loan Servicing – Collection of Prepaid Interest........................ 11

    C.    USACM Loan Servicing..................................................................... 12

VIII.    TRUST FINANCIAL STATEMENT............................................................. 12

As Trustee, I have focused the efforts of the USACM Liquidating Trust during this first reporting period on (1) appellate briefing and efforts to dismiss as moot appeals of the Order Confirming the 'Debtors' Third Amended Plan of Reorganization,' as Modified Herein ("Confirmation Order" and "Plan"); (2) investigation of causes of action against potential recovery targets; (3) preservation and pursuit of insider assets through involuntary bankruptcy cases, termination of a receivership that would have placed USA Investment Partners, LLC ("USAIP") into the control of a receiver under the auspices of a court outside of the district overseeing this and the related cases, and where the receiver was apparently chosen by Joseph Milanowski, and advocating the Trust's interests in bankruptcy cases affecting Trust assets and loan servicing; (4) collection of other assets; (5) resolution of disputes with USA Capital First Trust Deed Fund, LLC ("FTDF") over the Compass sale overbid amount; (6) review and resolution of objections to professional fee applications; (7) claims analysis and resolution of disputed claims; and (8) loan servicing issues. Each topic is briefly described in this report, along with comments on the attached financial statement of the Trust as of June 30, 2007.

## I.    CONFIRMATION ORDER APPEALS

Three appeals were taken from the Confirmation Order. One, by USAIP, Thomas Hantges and Joseph Milanowski, was assigned case no. 2:07-cv-00138-RCJ-gwf in the United States District Court for the District of Nevada. That appeal was dismissed by the District Court on motion filed by USA Commercial Mortgage Company ("USACM") and the other jointly administered Debtors and the Trust.

A second appeal was taken by the so-called Lender Protection Group ("LPG") represented by Alan Smith and with direct lenders represented by the Jones Vargas firm. It is assigned case no. 2:07-cv-72. A third appeal was taken by Debt Acquisition Company of America V ("DACA") and assigned case no. 2:07-cv-160. The Debtors filed motions to dismiss both the LPG and DACA appeals for lack of standing before the Trust took effect, which the District Court later denied.

221473.3

Also before the Trust took effect Debtors filed an answering brief to the LPG opening brief on appeal.  The Trust and FTDF Committee took the lead in preparing joint briefs on the DACA appeal, joined by post-Effective Date USA Capital Diversified Trust Deed Fund, LLC ("DTDF") and with a separate joinder brief by the Debtors.  Once the Plan became effective and initial distributions were made, the Trust, FTDF Committee and DTDF prepared motions to dismiss both appeals on grounds of mootness.  Debtors joined these motions as well.[1]

The District Court heard oral argument on the motions to dismiss the LPG and DACA appeals and on the merits on June 27, 2007.  The Court indicated that orders would be issued in due course in both appeals.

## II.    INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

The Trust assumed the employment of the Diamond McCarthy law firm as special litigation counsel upon the Effective Date of the Plan.  Diamond McCarthy has actively conducted formal and informal discovery of files, witnesses and transactions since its engagement in January 2007.  The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors.  In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to obtain payment for creditors.  Diamond McCarthy is coordinating those efforts with others, including DTDF and the USAIP Trustee.

## III.   PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    The USAIP Receivership and Involuntary Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 million Note") to USACM for the benefit of creditors (including DTDF).  Repayment of the $58 million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned wholly or in part by USAIP.[2]  The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims.

---

[1] By mootness, we mean that the transactions described in this report since the Effective Date of the Plan are so comprehensive, along with the transactions implementing the Plan for the other Debtors, that the District Court cannot grant effective relief on appeal.

[2] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; Buffalo Land Developments, LLC, a California limited liability company.

221473.3

One of USAIP's partners filed a lawsuit in the District Court, Central District of California, in Riverside (CA) Division, Case No. 5:07-cv-00343-SGL and sought the appointment of a receiver.  The motion for the appointment of the receiver was without notice to the Trust or to the Administrator of DTDF.  USAIP "consented" to appointment of the receiver.  An order was entered that prohibited an involuntary bankruptcy petition filing against USAIP.  Working closely with Michael Tucker, the post-Effective Date Administrator for DTDF, the Trustee obtained a modification of the receivership order and then, along with additional petitioning creditors, immediately filed an involuntary bankruptcy petition against USAIP (case #07-11821-LBR).

Over the objection of Thomas Hantges and Joseph Milanowski, through counsel, the Bankruptcy Court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP.    Lisa M. Poulin was appointed as interim trustee.  She selected Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the court's approval.  The Bankruptcy Court has since entered an order for relief in the USAIP bankruptcy case after a short trial on the merits of the involuntary petition.  Ms. Poulin was named the permanent Trustee in conjunction with the order for relief being entered.  Hantges and Milanowski have appealed the order for relief, which the Trust will oppose.  There is not yet a deadline to file proofs of claim in the USAIP case.

### B.    Insiders – Thomas Hantges and Joseph Milanowski

The Trustee, DTDF and the USAIP Trustee recognized that Thomas Hantges and Joseph Milanowski remained in control of their personal assets, despite the confirmation of the joint plan of reorganization, the USAIP bankruptcy and appointment of a trustee for USAIP.  Additionally, the Trust became aware of a number of groups, including groups of direct lenders, that were attempting to initiate litigation against Hantges and Milanowski, which would effectively create a run to the court house to see who might obtain judgment against the insiders and find their assets first.  Consequently, the Trustee, DTDF and Nevada State Bank filed separate involuntary bankruptcy petitions against Hantges and Milanowski.  The petitioning creditors also sought the appointment of interim trustees in individual cases.  The Bankruptcy Court granted the Trustee's and DTDF's emergency motion for the appointment of an interim trustee in each case.  The trustee in the Hantges case (Case #07-13162-LBR) is Michael Carmel, represented by Robbin Itkin of Steptoe and Johnson.  The trustee in the Milanowski case, (Case #07-13162-LBR) is Ford Elsaesser, represented by Deborah Williamson of Cox, Smith.  The trustees have sought court approval to employ counsel, pursue assets and deal with claims against their respective debtors.  Milanowski disputes the allegations of the involuntary petition and a trial has been set on the involuntary for August 9, 2007.  Hantges did not timely file a response and the order for relief was entered, which Hantges then sought to set aside.  The Court denied that motion at a hearing on July 5, 2007.  There is not yet a bar date for filing proofs of claim against either Hantges or Milanowski.

221473.3

### C.    HMA Sales, LLC

The owner of the Royal Hotel was placed into an involuntary bankruptcy in December 2006 after the property was sold, Salvatore Reale was paid almost $10,000,000 on an alleged lien, and other insiders received significant payments. The Trust was not yet effective at that point. In order to recover the funds, USACM and DTDF filed a lawsuit that DTDF is now prosecuting as Adv. No. 06-01256 (the "HMA Sales Adversary"). The Trustee for USAIP caused a voluntary bankruptcy petition to be filed on behalf of HMA Sales (Case #07-12694-LBR) and thereafter asserted claims against Reale and others to recover funds from the sale. The USAIP Trustee agreed to a settlement, which was approved by the bankruptcy court, that will resolve DTDF's claim against HMA Sales, Reale's claim and claims against Reale for sums to be received, and will result in Reale waiving purported liens on property owned by Placer County Land Speculators, LLC and two liens against USA Investors VI, LLC, leaving one alleged claim against Investors VI unresolved. The Trust continues to litigate its claims against Reale, as noted below.

### D.    USA Commercial Real Estate Group

USACREG is an insider and affiliate of the Debtors, controlled by Hantges and Milanowski. The Trust has negotiated with USACREG with respect to a counterclaim alleged by USACREG against USACM in the HMA Sales Adversary. Those negotiations will be superseded by the appointment of trustees for the estates of Hantges and Milanowski, respectively.

Sums due to USACREG were attached pursuant to an order of the Bankruptcy Court entered in the HMA Sales adversary. The Trust has worked with counsel for the plaintiff (DTDF) to assure compliance with the writ of attachment and delivery of funds otherwise payable to USACREG to the registry of the bankruptcy court.

### E.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust. The adversary proceeding is Adv. No. 06-01251 pending in the bankruptcy court. On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy LLP) filed the Trust's Second Amended Complaint. The Trust seeks to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million. The action is proceeding, with Reale prosecuting a motion for summary judgment that the Trust opposes. The Bankruptcy Court recently refused to expedite a hearing on the Trust's motion to attach, or freeze, money coming to Reale from the HMA Sales settlement, and set the matter for hearing on August 7, 2007.

221473.3

### F.    USA Investors VI, LLC

The owner of the Hotel Zoso a/k/a Hotel Marquis in Palm Springs was controlled by USAIP.  The Trust services the first loan on the hotel property, with an unpaid principal balance of approximately $13,500,000.  Before the Plan Effective Date, an involuntary bankruptcy petition was filed in December, 2006 to take control of the asset away from Hantges and Milanowski.  An interim trustee was appointed -- Joseph Lisowski.  Lisa Poulin, as trustee for USAIP, filed a voluntary petition in bankruptcy for Investors VI (Case #07-12377) to stop litigation over the involuntary case, displacing the interim trustee.  Ms. Poulin has indicated that she will file a motion with the Bankruptcy Court shortly seeking approval of a process to sell the hotel and the adjoining condominiums owned by Tree Moss Partners, LLC.  The sale price is expected to pay the senior lien serviced by the Trust in full.  In order to allow her to operate the hotel, the Trustee has negotiated with Ms. Poulin over her use cash collateral so that appropriate bills are paid, but insiders are not, and the asset is properly managed.

### G.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case #06-13758-LBR).  Tree Moss owns the condominium project adjacent to the hotel and may be sold with the hotel.  A synergy between the condominiums and the hotel will, in the view of Lisa Poulin's advisors, result in a greater price than if the condominiums were sold alone.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.

## IV.    COLLECTION OF TRUST ASSETS

### A.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and it holds claims for servicing and other fees on that loan.  The Trust has continued to work with the lenders and borrower on the senior lien to obtain payment or a refinancing of the loan, payment of loan fees associated with the first loan, as well as payment of the $1 million second loan.

### B.    Compass Overbid Escrow Settlement

Certain issues were left unresolved by Plan confirmation including the disputes between USACM and FTDF.  Those unresolved issues included allocation of the $9.5 million additional bid by Compass for assets, reimbursement by FTDF for expenses of administration paid by USACM, and an alleged FTDF unsecured claim.  After a settlement conference between FTDF and the Trustee, the Trust and FTDF entered into an agreement, subject to court approval.  Their joint Motion to Approve Compromise

221473.3

Under Rule 9019 filed on May 4, 2007 was approved by the Court after a hearing without objection. In pertinent part, the Trust received 60% of the $9.5 million overbid and FTDF the balance; the Trust also received the right to recover a $1.25 million escrow held by the escrow agent from the proceeds of the Compass sale; FTDF paid a substantial portion of the administrative expenses paid on its behalf by USACM; and FTDF was allowed a $7 million unsecured claim.

### C.    Other Collections

The Trust succeeded to USACM's rights in connection with disputes with Lowe Enterprises and others over their liability for USACM's attorneys' fees in certain pre-petition litigation. The Trust settled those disputes, received payment from Lowe Enterprises, and compromised its claim, resulting in a dismissal of pending litigation (CV-N-03-0156-RDM (VPC)) by Judge McKibben of the U.S. District Court in Reno. The Trust also collected a loan owed to USACM by Redwood Properties of approximately $269,000.

Shortly after the USACM bankruptcy case was filed, USACM interplead sums that related to investors' assignments of loans on transactions that had not closed before the petition date. Eventually, USACM identified interest that had accrued on these funds. The Trust participated with interested parties in a stipulation that resolved USACM's liability for interest, payment of certain expenses of administration associated with the interpleader, and potential return of excess funds to the Trust as unencumbered assets. That stipulation has been filed with and approved by the Bankruptcy Court.

## V.    PROFESSIONAL FEE APPLICATION OBJECTIONS

Pursuant to the confirmed Plan, final applications for expenses of administration by professionals were due on April 19, 2007. Applications were filed totaling in excess of $28 million. The Trust invested significant time and expense analyzing the fee applications, particularly those of Mesirow Interim Financial Management, LLC and Ray Quinney & Nebeker, PC, professionals hired at the expense of the Debtors. The Trustee personally negotiated resolution of the objections to the Mesirow application that would have been filed by the Trust and post-confirmation DTDF, FTDF and Direct Lenders Committee.[3] The applications and the reductions are set forth in the following table:

---

[3] The Trustee first negotiated a stipulation for an extension of the deadline to file opposition to the fee applications, because premature filing of oppositions would have seriously disrupted the process of attempting to settle potential objections.

| Firm | Original Application Fees | Amended Application Fees | Original Application Expenses | Amended Application Expenses | Reduction |
|------|-------------------------|--------------------------|------------------------------|------------------------------|-----------|
| Mesirow Financial Interim Management | $13,889,203.09 | $10,478,066.84 | $1,117,168.74 | $892,168.74 | $3,636,136.25 |
| Ray Quinney & Nebeker | 3,679,202.52 | 3,605,618.47 | 234,862.68 | 234,862.68 | 73,584.05 |
| Schwartzer & McPherson | 1,087,736.00[4] | 1,065,981.28 | 34,273.68 | 34,273.68 | 21,754.72 |
| Lewis and Roca | 1,211,494.25 | 1,187,264.36 | 121,909.15 | 121,909.15 | 24,229.89 |
| Sierra Consulting | 367,984.50 | 360,624.81 | 8,241.05 | 8,241.05 | 7,359.69 |
| Stutman, Treister & Glatt, P.C. | 2,159,529.95 | 2,116,339.35 | 92,573.35 | 92,573.35 | 43,190.60 |
| Shea & Carlyon | 762,221.65 | 746,977.31 | 19,603.31 | 19,603.31 | 15,244.44 |
| Alvarez & Marsal | 645,012.51 | 632,112.26 | 15,779.80 | 15,779.80 | 12,900.25 |
| Orrick Herrington | 2,228,780.60 | 2,184,204.90 | 42,914.58 | 42,914.58 | 44,575.61 |
| Beckley Singleton | 458,344.87 | 449,177.97 | 65,469.83 | 65,469.83 | 9,166.90 |
| FTI Consulting | 1,613,380.50 | 1,581,112.89 | 30,951.02 | 30,951.02 | 32,267.61 |
| Gordon & Silver | 1,028,068.75 | 1,007,507.38 | 14,637.62 | 14,637.62 | 20,561.37 |
| Kirkpatrick & Lockhart | 22,283.00 | 22,283.00 | 247.69 | 247.69 | 0 |
| KMPG | 94,374.00 | 94,374.00 | | | 0 |
| TOTAL | $29,247,616.19 | $25,531,644.82 | $1,798,632.50 | $1,557,852.70 | $3,940,971.38 |

As modified, in particular by the 2% reduction of requested fees, the final fee applications of counsel for the FTDF Committee and the USACM Unsecured Creditors Committee and the financial advisors for the DTDF Committee were approved at a hearing on June 22, 2007. On the Bankruptcy Court's own motion, the hearing on the

---

[4] This amount excludes sums paid through the interpleader.

final fee applications of Debtors' professionals and DTDF Committee counsel were continued to August 7, 2007.

The Trustee assisted in negotiations with David W. Huston, former special counsel for USACM, concerning his application for attorney fees and reimbursement of expenses totaling approximately $76,000. Mr. Huston agreed to limit his fees to $50,000 paid out of the interpleader action in which he appeared as special counsel, plus reimbursement of his costs of $4,581.87.

BMC Group, Inc. provided services to Debtors, including operating websites, claims analysis, and hosting the court docket on a website that was free to creditors and interested parties. The Trustee worked with BMC concerning allocation of its billings among the several estates, and after the Effective Date, began contracting with BMC for Trust-related services. Because creditors and interested parties benefit from the BMC site, but there is no mechanism to charge them for it, the Trust elected to advance on a limited basis its funds to BMC to maintain these services. In addition, the Trust has requested reimbursement by FTDF and DTDF for their reasonable share of the expenses.

## VI.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.    Administrative and Priority Claims

The Trust has addressed alleged administrative expenses of the USACM estate in addition to the professional fees discussed above. Sierra Liquidity Fund, L.L.C. filed an application for administrative expenses and requested payment. USACM and the Trust objected to the administrative claim. After a hearing, the Court disallowed the expense of administration, thus saving creditors over $3.5 million in alleged expenses of administration.

The Trust joined in USACM's objection to a request for payment of attorneys' fees and expenses by Robert C. LePome on behalf of his direct lender clients. The application would have resulted in full payment of the attorney fees for certain direct lenders who were not otherwise entitled to an expense of administration. After a hearing, the Court disallowed Mr. LePome's application.

### B.    Secured Claims

Over 2,450 direct lenders filed proofs of claim, with approximately 1,600 alleging that they were holding secured claims[5]. None of these direct lenders had perfected liens on property owned by USACM (instead, they hold liens on property owned by the borrowers on their loans). Accordingly, the Trust filed "omnibus" objections to these secured claims, seeking that they be reclassified as unsecured claims without prejudice to further

---

[5] Secured claims are those where repayment can be obtained from specific property of the Debtor under a perfected lien.

objections.  The vast majority of those objections were granted without opposition.  A few remain for resolution pursuant to a motion for summary judgment.

Similarly, certain direct lenders sought priority for their claims as priority claims or administrative expenses.  The Trust objected and those objections were granted.  The Trust filed additional objections to administrative and alleged priority claims, the bulk of which have been granted or resolved pursuant to compromises after consideration of the facts and law.

### C. Unsecured Claims

Prior to the Effective Date, USACM had filed objections to certain claims, including those held by Robert J. Kehl and Ruth Ann Kehl and Del and Ernestine Bunch.  The Trust is now working to resolve those objections.

A claim of one borrower – Standard Property Development, LLC – was resolved after Compass resolved payment of the Standard Property loan.  The resolution included dismissal of the borrower's cause of action filed against the direct lenders in the Standard Property Loan.

The Trust began its review of creditors claims by examining parties to rejected executory contracts, including landlords, and borrowers that had filed claims against the Trust.  The Trust has filed objections to the following claims:   Copper Sage Commercial Center, LLC; Lerin Hills LTD.; Los Valles Land & Golf; Mountain West Mortgage; Pecos Professional Park, LLC; and Tanamera Corporate Center, LLC.  On March 12, 2007, the Trust filed a motion to extend the deadline to object to additional claims arising from the rejection of executory contracts or unexpired leases.  The motion sought authority to extend the deadline for objections to such claims to the deadline for objection to unsecured claims generally.  The motion was granted by the Bankruptcy Court without opposition.

Immediately before the Effective Date, USACM amended Schedule F to identify certain unsecured claims as disputed.  The amended Schedules further changed the amounts shown for diverted principal for hundreds of direct lenders.  The Trust worked with USACM's counsel to prepare a notice to creditors of the amendment and of the opportunity to file an amended proof of claim to the extent that the amendment adversely affected the creditor's scheduled claim.  Notice of the amendment and 30-day opportunity to file an amended proof of claim was served upon the affected parties.  The USACM Trust has worked with direct lenders with questions about the change and the process.  This has further delayed the process of analyzing unsecured claims, however.

The Trust is investigating the claims of direct lenders arising out of loans originated or serviced by USACM.  The extent of any claim of a lenders based on a specific loan cannot be determined with precision until the loan is resolved and the Trust sought an

initial extension of the deadline to object to unsecured claims to further analyze them. That objection was granted after a hearing, without objection, so that the new deadline is October 9, 2007.

## VII.    LOAN SERVICING ISSUES

### A.    Trust Loan Servicing - Placer Vineyards

The Trust is servicing the USA Investors VI loan, referenced above in section III.F. of this report.  Collection of that loan depends on actions taken in the pending bankruptcy case described in that section.  The other loans the Trust is servicing are the Placer Vineyards loans.

On March 15, 2007, USACM sought authority to sell the servicing rights to the Placer Vineyards first and second loans to Compass USA SPE, LLC or a higher bidder.  The Trust investigated the merits of selling the servicing rights as opposed to servicing the loans for the benefit of lenders.  The Trust determined that the borrower on the loans – Placer County Land Speculators, LLC – had failed to pay real estate taxes and assessments secured by liens on the collateral, as well as assessments by an association of commonly situated owners in connection with development of the project.  USACM and the Trust sought to determine if a purchaser of the servicing rights would take the steps necessary to protect interest of lenders.  After hearings, and consideration of objections, the Trust directed USACM to withdraw the application.

The Trust now services the Placer Vineyards first and second loans, and reports monthly to the lenders.  After providing notice to the direct lenders on those loans, and with the responding direct lenders' consent, the Trust advanced $671,434.55 on a short term basis to pay the past due taxes secured by a lien on the Placer Vineyards property.  This advance protected the lenders' collateral and although the Trust will be reimbursed with interest at the prime rate before the lenders receive payment, the advance reduces the interest rate payable on those taxes.  The property is the subject of a hearing scheduled to take place before the Placer County Board of Supervisors concerning an application to approve development and entitlement plans for the entire project.  The Trust believes that approval of that application would in turn increase the value of the property for the benefit of the lenders.  The Trust continues to negotiate with Placer County, the Borrower (through the USAIP Trustee) and third parties with respect to current unpaid taxes as well as unpaid dues from the association of owners for development expenses.

### B.    Compass Trust Loan Servicing – Collection of Prepaid Interest

The Trust continues to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007.  Further, Compass collects and remits Prepaid Interest pursuant to the Plan, including $156,471.33 on May 11, 2007.

11

### C.    USACM Loan Servicing

The State of Nevada Department of Business in Industry, Division of Mortgage Lending, took post-Effective Date action with respect to licensing of USACM to service loans and the proposed application by Compass Financial Partners, LLC to service loans pursuant to the transaction approved by the Court in the confirmed plan.  The Trust worked with USACM with respect to the Department's order terminating the USACM license.  The termination was not untoward, because USACM had ceased servicing any loans at that point.  The MLD's findings were factually and legally inaccurate in many respects, however.  The Trust worked directly with the MLD through the State of Nevada Attorney General's office to ensure that the MLD was not seeking to violate the confirmation order or the Plan.  Separately, the Trust was aware of and took no position with respect to the MLD orders concerning Compass.

Pursuant to an order of the Bankruptcy Court, the Trust is exempt from licensing in Nevada as a loan servicer or escrow agent.  The Trust nevertheless voluntarily reports to MLD with respect to its actions and has asked Scott Bice, director of MLD, to advise if he has an questions or concerns.

## VIII.  TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of June 30, 2007, has been provided to the USACM Trust Committee.  The Trust, through the activities described above, has generated funds in excess of that spent to date in undertaking its obligations.

221473.3