Robert J. Moore
Tyson M. Lomazow
MILBANK, TWEED, HADLEY & McCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone No.: (212) 530-5367
Facsimile No.: (212) 822-5367

Peter C. Bernhard (Nevada Bar No. 0734)
Georganne W. Bradley (Nevada Bar No. 1105)
BULLIVANT HOUSER BAILEY PC
3883 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone No.: (702) 669-3600
Facsimile No.: (702) 650-2995
E-Mail: peter.bernhard@bullivant.com

Counsel for Plaintiffs

E-FILED ON AUGUST 7, 2007

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | Adversary No. 07- |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| COMPASS USA SPE LLC, and COMPASS FINANCIAL PARTNERS LLC,<br>Plaintiffs,<br>v.<br>EAGLE INVESTMENT PARTNERS, L.P., and VINDRAUGA CORPORATION,<br>Defendants. | Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC |

— 1 —

Plaintiffs Compass USA SPE LLC and Compass Financial Partners LLC (together, "Compass"), for its complaint (the "Complaint") against defendants Eagle Investment Partners, L.P. ("EIP") and Vindrauga Corporation ("Vindrauga") (collectively, the "Defendants"), state as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, and 11 U.S.C. § 1144. Venue is proper pursuant to 28 U.S.C. § 1409(a).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## THE PARTIES

3. Plaintiffs Compass USA SPE LLC and Compass Financial Partners LLC are limited liability companies in good standing, duly organized and existing under the laws of the State of Delaware, and maintain their principal place of business in New York, New York.

4. Upon information and belief, defendant EIP is a limited partnership organized and existing under the laws of the State of California, and maintains its principal place of business in San Diego, California.

5. Upon information and belief, defendant Vindrauga is a corporation organized and existing under the laws of the State of California, and maintains its principal place of business in San Diego, California.

6. Upon information and belief, third party USA Commercial Mortgage Company ("USACM" and, together with its affiliated debtor entities, the "Debtors"), was formed as a Nevada Corporation in 1989, and was in the business of underwriting, originating, brokering, funding and servicing short term commercial loans primarily secured by residential and commercial developments, on behalf of direct lenders/investors.

– 1 –

## GENERAL ALLEGATIONS

**The Debtors' Bankruptcy Cases**

7. On or about April 13, 2006 (the "Petition Date"), the Debtors filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Court").

8. On or about September 22, 2006, USACM filed with this Court a Motion for Order Scheduling an Auction for Sale of Certain Assets, Appointing SPCP Group, LLC, as Lead Bidder and Approving Bid Procedures and Protections (the "Sale Motion").

9. On December 7, 2006, the Court conducted an auction with respect to, among other things, the servicing rights and certain related assets associated with 65 Loans (collectively, the "Loans"), including the Loan commonly known as "Fiesta Stoneridge," serviced by USACM pursuant to Loan Servicing Agreements (collectively, the "Purchased Assets"). At the auction, Compass emerged as the successful bidder with respect to the Purchased Assets. Compass and the Debtors subsequently negotiated and entered into an Asset Purchase Agreement (the "APA") setting forth the terms of Compass's proposed acquisition of the Purchased Assets for $67 million in cash, subject to certain purchase price adjustments, as provided therein (the "Sale"). The assignment to Compass of USACM's rights as servicer under the Loan Servicing Agreements was an essential element of the Purchased Assets.

10. Vindrauga did not submit a bid or otherwise participate in the auction process.

11. On December 20, 2006, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Debtors' Third Amended Joint Plan of Reorganization (the "Plan") and the approval of various related transactions including, without limitation, the Debtors' request for approval of the APA.

12. On January 8, 2007, the Court entered the order confirming the Plan (the "Confirmation Order"), which, consistent with Section IV.F of the Plan, provides in pertinent part that "[a]fter the Closing [of the Sale], the Direct Lenders are obligated to comply with the terms of the applicable Loan Servicing Agreements." Confirmation Order ¶ 47.

13. Among the terms of the Loan Servicing Agreements, Section 3 provides that "in the event of default, foreclosure, or other matters that require action, if for any reason [USACM] fails to act on Lender's behalf . . . then Lender may, with approval of fifty-one percent (51%) or more of all the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record." Loan Servicing Agreement § 3. Such actions include the designation of the servicing agent to act on behalf of the holders of the beneficial interests in the Loan.

14. Section 8 of the Loan Servicing Agreements provides that "Lender may, by 30 days written notice to [USACM], terminate this agreement . . . if [USACM] fails to perform its obligations hereunder." Loan Servicing Agreement § 8.

15. Section 16 of the Loan Servicing Agreements provides "[t]his Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns." Loan Servicing Agreement § 16.

16. On February 16, 2007, Compass and the Debtors consummated the Sale (the "Closing Date").

**Donna Cangelosi's Unlawful and Ineffectual Attempt to Terminate and Replace Compass**

17. On or about May 18, 2007, Donna Cangelosi, a lender allegedly acting on behalf of certain other lenders in the Loans, sent no fewer than fifty letters (the "Cangelosi Termination Letters") to Compass advising it of the purported termination of its right to service the applicable Loans without prior notice pursuant to the terms of the Loan Servicing

−3−

Agreements, without specifying any cause for such termination, and without complying with the Loan Servicing Agreements, all as required by the Plan and the Confirmation Order.

18. Rather, the Cangelosi Termination Letters purport to terminate all rights that Compass may have to service the applicable Loans based on the exercise of direct lenders holding in excess of 51% of the beneficial interests in the applicable Loan to terminate summarily and without cause allegedly under Nevada Administrative Code section 645B.073 (hereinafter "NAC 645B.073"). NAC 645B.073 provides that a loan servicing agreement "must include provisions to allow the holders of 51 percent or a greater specified percentage of the beneficial interests of record to act on behalf of all the holders of the beneficial interests of record in the event of a default or foreclosure." This administrative provision simply authorizes certain actions to be taken by 51% or more of the holders of beneficial interests, including the *designation* of the servicing agent under a mortgage loan, where lenders otherwise may find themselves without the ability to exercise a remedy in the event of a default or foreclosure absent direction from 100% of such lenders.

19. On or about May 21, 2007, at the direction of Cangelosi, certain limited liability companies created by the individual direct lenders under certain of the Loans (the "Direct Lender LLCs") filed an action against Compass and affiliates of Compass in the United States District Court for the District of Nevada (subsequently removed to this Court by Compass on May 25, 2007, and pending as Adv. Proc. No. 07-01076 (the "Adversary Proceeding")), in which they allege, among other things, that notwithstanding the provisions of Sections 3 and 8 of the Loan Servicing Agreements which require both thirty (30) days notice and a demonstration of Compass' failure to act on the lenders' behalf and perform its contractual obligations, they have an independent right to terminate Compass as servicer under Nevada Law without notice or the need to show cause.

20.     On May 25, 2007, Compass filed with this Court an Emergency Motion of Compass Financial Partners LLC for Order Pursuant to 11 U.S.C. §§ 105 and 1141 Enforcing Confirmation Order and for Civil Contempt Sanctions (the "Enforcement Motion"), seeking, among other things, an order directing Cangelosi, and other lenders specified therein, to comply with the express terms of the Confirmation Order and the Loan Servicing Agreements.

21.     On May 30, 2007, Cangelosi filed an opposition to the Enforcement Motion, in which the issue of the Court's subject matter jurisdiction over the matters discussed in the Enforcement Motion was raised. The Court requested further briefing on the issue of subject matter jurisdiction, and the parties submitted a supplemental brief and reply. A further hearing on the Enforcement Motion was scheduled and held before the Court on June 20, 2007.

22.     Following the June 20 hearing, on July 2, 2007, the Court entered an Order on Emergency Motion to Enforce Confirmation and for Sanctions and Order on Subject Matter Jurisdiction (the "July 2 Opinion"). In the July 2 Opinion, the Court found that subject matter jurisdiction to hear the dispute in the Enforcement Motion "is implicated in a number of ways." July 2 Opinion at 19-21. Specifically, the Court found that Cangelosi's attempt to "void one provision of the contract by a declaration that despite the language of the agreement, the contracts may be terminated even if Compass has not failed to perform any of its duties" implicated the Court's power to adjudicate claims. *Id.* at 19.

23.     The Court made certain rulings at the June 20, 2007 hearing that were to be reflected in a written order of the Court. A hearing was held on July 27, 2007 with respect to certain disputes between the parties as to the appropriate wording of such order, which disputes were resolved by further rulings of the Court at the July 27, 2007 hearing. On August 1, 2007, the Court entered an Order (the "August 1 Order") which provided that, until further order of a court of competent jurisdiction which shall adjudicate the issues in the Enforcement Motion and the Adversary Proceeding, (i) all lenders are enjoined, prevented and restrained from

terminating Compass, or effectuating any change or replacement of Compass as their loan servicer, (ii) Compass remains the loan servicer with respect to all Loans, and (iii) lenders are enjoined from initiating contact with the borrower in any Loan which undermines Compass' exclusive authority to act on behalf of the direct lenders as loan servicer, or purports that an entity other than Compass is authorized to negotiate with the borrower on behalf of the lenders in such Loan.

24.     At a hearing conducted on August 6, 2007, the United States District Court for the District of Nevada conducted a hearing and withdrew the reference pursuant to 28 U.S.C. § 157(d) with respect to consideration of issues raised in the Enforcement Motion and the Adversary Proceeding.

**EIP's Nearly Identical Attempt to Replace Compass**

25.     Upon information and belief, as of June 22, 2007, EIP had acquired approximately 57% of the total beneficial interests in the Fiesta Stoneridge Loan.

26.     By letter dated June 22, 2007 (the "EIP Termination Letter"), counsel for EIP informed Compass of the purported replacement of Compass and designation of Vindrauga as the servicer under the Fiesta Stoneridge Loan pursuant to either NAC 645B.073 or Section 3 of the Loan Servicing Agreements (to the extent that EIP is bound by the Loan Servicing Agreements). The EIP Termination Letter further purports to terminate the Loan Servicing Agreements pursuant to Section 8 of the Loan Servicing Agreements (also to the extent that EIP is bound by the Loan Servicing Agreements).

27.     According to the EIP Termination Letter, the basis for the termination of the Loan Servicing Agreements are (i) the failure of Compass to commence foreclosure proceedings to collect the Fiesta Stoneridge Loan, and (ii) the failure of Compass to obtain the necessary licenses from the State of Nevada.

28. The EIP Termination Letter further states that, "It is the position of EIP that the designation of Vindrauga as servicing agent is effective immediately. As to the termination of the Loan Servicing Agreement under section 8, this letter is intended to constitute the 30 day notice provided for. In any case, Vindrauga intends to take no action as the servicing agent, and will not notify the borrower as to the change in the servicing agent, until at least 30 days after the date of this letter." EIP Termination Letter at p. 3.

29. Upon information and belief, Vindrauga is an affiliate of EIP, and an affiliate of Debt Acquisition Company of America ("DACA").

**Compass Has Actively Serviced the Fiesta Stoneridge Loan Consistent With Its Obligations Under the Loan Servicing Agreements**

30. Since succeeding to USACM as loan servicer on February 16, 2007, Compass has actively serviced the Fiesta Stoneridge Loan. Specifically, a principal of Compass traveled to Southern California to meet with one of the members of the Fiesta Stoneridge borrower (the "Borrower"), and to examine the collateral securing the Fiesta Stoneridge Loan (the "Collateral"). In the following weeks, Compass participated in further negotiations with representatives of the Borrower and offered proposals aimed at satisfying all existing obligations under the Loan.

31. On March 27, 2007, a preliminary injunction (the "Injunction") was entered by the United States District Court for the Central District of California (the "California District Court") in the receivership proceeding (the "Receivership") initiated against USA Investment Partners, LLC ("USAIP"), one of the members of the Borrower. The Injunction enjoined any entity from taking action against real estate projects "owned by entities in which USAIP owns membership interests," and as such, the Injunction likely enjoined any foreclosure on the Collateral.

32.     On May 23, 2007, the California District Court entered an Order vacating the Injunction and dissolving the Receivership. Promptly thereafter, Compass, together with its designated California servicer Compass FP Corp., began working with a title company to initiate non-judicial foreclosure proceedings with respect to the Fiesta Stoneridge Loan. This work not only included coordinating with the title company regarding standard due diligence for a non-judicial foreclosure, but also responding to extraordinary requests for information from the title company in light of the size and complexity of the Fiesta Stoneridge Loan (multiple beneficiaries and multiple parcels).

33.     On August 2, 2007, the title company recorded the Notice of Default in the Official Records of the County of Riverside, and served the Notice of Default on the parties entitled to receive it. Those actions initiated a non-judicial foreclosure proceeding in accordance with California law.

**Compass Has Not Violated Any Law or Breached Any**
**<u>Contractual Obligation to Obtain a License to Service Loans in Nevada</u>**

34.     Section 9.1(j) of the APA provides that Compass' obligation to consummate the Sale was conditioned upon its receipt of an "interim license" from the State of Nevada necessary to perform its obligations under the APA (a "<u>Nevada License</u>"), or an exemption from the State of Nevada, in either case satisfactory to Compass. The APA expressly provides that the condition contained in Section 9.1(j) could be waived by Compass and the Debtors.

35.     Prior to the Closing Date, Compass submitted its application for a Nevada License to the State of Nevada Division of Mortgage Lending (the "<u>MLD</u>"). Shortly thereafter, the MLD informed Compass its application for a Nevada License would not be processed prior to the Closing Date, and that the MLD does not issue "interim" licenses. Representatives of the MLD advised Compass that, during the pendency of its application for a Nevada License, in

order to comply with applicable law, it could either (i) enter into a subservicing arrangement with a loan servicer currently holding a Nevada License, or (ii) service the Loans from outside the State of Nevada.

36. In reliance upon the representations of the MLD, on February 16, 2007, Compass waived the condition in Section 9.1(j) of the APA, consummated the Sale, and entered into a subservicing agreement with USACM (the "USACM Subservicing Agreement"). As of February 16, 2007, USACM held a Nevada License.

37. Shortly after Compass' entry into the USACM Subservicing Agreement, the MLD informed Compass of its investigation into USACM's alleged infractions of certain Nevada mortgage broker statutes and regulations which could result in the revocation of USACM's Nevada License. Immediately upon learning of the potential revocation of USACM's license, Compass initiated a search for a potential replacement "subservicer."

38. Despite its efforts, Compass was unable to identify a licensed servicer willing to enter into a subservicing agreement with Compass on a short-term basis at a reasonable cost. Accordingly, on April 20, 2007, Compass (i) notified USACM of its termination of the USACM Subservicing Agreement, with such termination to be effective April 27, 2007, (ii) withdrew its application for a Nevada License from the MLD, and (iii) made preparations to cease all loan servicing activities from within the State of Nevada. On April 27, 2007, the USACM Subservicing Agreement was terminated, and Compass ceased all loan servicing activities in the State of Nevada (other than administrative support services).

39. Hence, at no time subsequent to the Closing Date was the Fiesta Stoneridge Loan serviced within the State of Nevada without a Nevada License, or inconsistent with the recommendations of the MLD.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That EIP Is Enjoined From Replacing Or Terminating Compass As Servicer Of The Fiesta Stoneridge Loan By Virtue Of The August 1 Order, Pending Further Order Of The Court)**

40. Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

41. There is an actual and justiciable controversy between the parties with respect to whether EIP is enjoined from replacing or terminating Compass as servicer of the Fiesta Stoneridge Loan by virtue of the August 1 Order, pending further order of the Court.

42. As set forth above, the August 1 Order provides that, until further order of a court of competent jurisdiction adjudicating the issues set forth in the Enforcement Motion and the Adversary Proceeding, all lenders are enjoined, prevented and restrained from terminating Compass, or effectuating any change or replacement of Compass as their loan servicer, on all Loans.

43. EIP has attempted to terminate Compass as servicer of the Fiesta Stoneridge Loan on precisely the same basis as set forth in the Cangelosi Termination Letters, which is the subject of the dispute in the Enforcement Motion and the Adversary Proceeding.

44. As all lenders are enjoined from replacing or terminating Compass as loan servicer while the issues set forth in the Enforcement Motion and Adversary Proceeding are adjudicated, EIP is enjoined from replacing or terminating Compass as servicer of the Fiesta Stoneridge Loan in accordance with the August 1 Order, pending further order of the Court.

45. The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversy between the parties with respect to the dispute set forth in Paragraph 41 above.

46. Accordingly, Plaintiffs request that the Court enter declaratory judgment that EIP is enjoined from replacing or terminating Compass as servicer of the Fiesta Stoneridge Loan by virtue of the August 1 Order, pending further order of the Court.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That EIP Is Bound By The Terms Of The Confirmation Order And Loan Servicing Agreements)**

47. Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

48. There is an actual and justiciable controversy between the parties with respect to whether EIP is bound by the terms of the Confirmation Order and the Loan Servicing Agreements, and in particular, Sections 3 and 8 of the Loan Servicing Agreements.

49. As demonstrated above, an express term of the Confirmation Order, which was not opposed by the Defendants at the Confirmation Hearing, obligates all direct lenders, including EIP as assignee, to comply with the Loan Servicing Agreements, including Sections 3, 8, and 16 therein, which require notice and a demonstration of cause prior to any termination or replacement of Compass as servicer. To the extent that the EIP asserts in the EIP Termination Letter that it is not bound by the Loan Servicing Agreements, EIP is acting in violation of the Confirmation Order and the Loan Servicing Agreements.

50. Furthermore, DACA, an affiliate of EIP, was represented by counsel and participated in the chapter 11 cases and Plan confirmation process by filing a formal objection to the Plan, and appearing at the Confirmation Hearing. The interests of the direct lenders were also represented by an official committee which supported confirmation of the Plan. Moreover, the class of direct lenders, Class A-5, voted in favor of confirmation of the Plan.

51.  The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversies between the parties with respect to the dispute set forth in Paragraph 48 above.

52.  Accordingly, Plaintiffs request that the Court enter declaratory judgment that EIP is bound by the terms of the Confirmation Order and the Loan Servicing Agreements.

### THIRD CLAIM FOR RELIEF

(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That EIP May Not Replace Compass And Designate Vindrauga As The Servicer Under The Fiesta Stoneridge Loan Solely Under NAC 645B.073)

53.  Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

54.  There is an actual and justiciable controversy between the parties with respect to whether EIP may replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan solely under NAC 645B.073.

55.  As demonstrated above, the Confirmation Order obligates EIP to comply with the express terms of the Loan Servicing Agreements.  Sections 3 and 8 of the Loan Servicing Agreements provide that Compass may only be replaced or terminated by the holders of fifty-one percent (51%) of the beneficial interests in the Loan upon notice and cause.  As set forth in the EIP Termination Letter, EIP has attempted to terminate and replace Compass as servicer of the Fiesta Stoneridge Loan based solely upon NAC 645B.073, and absent notice or cause.

56.  NAC 645B.073 does not provide a basis for EIP to disregard the notice and cause requirements as set forth in the Loan Servicing Agreement.  NAC 645B.073 provides that the documentation of a servicing arrangement must provide a provision permitting the holders of fifty-one percent (51%) or more (in essence, any percentage up to and including

100%, but at least a bare majority) of the beneficial interests in a loan to act on behalf of all the holders of the beneficial interests in a loan in the event of a default or foreclosure for matters that require the direction or approval of the holders of the beneficial interests.

57. The Loan Servicing Agreement is consistent with NAC 645B.073 and should be enforced. Section 3 of the Loan Servicing Agreement provides that the holders of fifty-one percent (51%) of the beneficial interests in a Loan may act on behalf of all the holders of the beneficial interests in the Loan, if the loan servicer has failed to act on the lender's behalf. Loan Servicing Agreement § 3.

58. The condition imposed by Section 3 of the Loan Servicing Agreement that the loan servicer must have failed to act lender's behalf is consistent with NAC 645B.073, and does not provide a basis upon which EIP may ignore the cause and notice requirements of the agreement to which it is contractually bound.

59. The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversy between the parties with respect to the dispute set forth in Paragraph 54 above.

60. Accordingly, Plaintiffs request that the Court enter declaratory judgment that EIP is not permitted to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan solely under NAC 645B.073.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That** EIP May Not Replace Compass And Designate Vindrauga As The Servicer Under The Fiesta Stoneridge Loan Under Section 3 Of The Loan Servicing Agreements Without Thirty Days Prior Notice)

61. Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

-13-

62. There is an actual and justiciable controversy between the parties with respect to whether EIP may replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 3 of the Loan Servicing Agreements without thirty days prior notice.

63. Section 8 of the Loan Servicing Agreements, entitled "Termination," requires EIP to provide Compass thirty (30) days prior written notice in order to terminate the Loan Servicing Agreements on the basis of Compass's failure to perform its obligations thereunder. While there is no explicit requirement under Section 3 of the Loan Servicing Agreements that EIP provide thirty days prior written notice in order to "designate" a new servicer under the Fiesta Stoneridge Loan in the event the loan servicer has failed to act on lender's behalf, it is inherent that the designation of a new servicer requires a *termination* of the existing Loan Servicing Agreements with Compass. As such, Sections 3 and 8 of the Loan Servicing Agreements must be read together to require notice and cause to replace Compass as the servicer or terminate the Loan Servicing Agreements. By failing to provide thirty (30) days written notice of the replacement of Compass and the designation of Vindrauga as servicer, and by purportedly making such replacement and designation effective immediately (pursuant to the EIP Termination Letter), EIP has failed to comply with the terms of the Loan Servicing Agreements and its purported immediate designation of Vindrauga as the loan servicer under the Fiesta Stoneridge Loan is invalid.

64. The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversy between the parties with respect to the dispute set forth in Paragraph 62 above.

65. Accordingly, Plaintiffs request that the Court enter declaratory judgment that EIP is required to provide thirty days prior notice in order to exercise any valid designation of a servicer under Section 3 of the Loan Servicing Agreements.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That No Cause Existed For EIP To Replace Compass And Designate Vindrauga As The Servicer Under The Fiesta Stoneridge Loan Under Section 3 Of The Loan Servicing Agreements)**

66. Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

67. There is an actual and justiciable controversy between the parties with respect to whether EIP may replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 3 of the Loan Servicing Agreements where the alleged cause is the failure of Compass to commence foreclosure proceedings to collect the Loan, and the failure of Compass to obtain the necessary licenses from the State of Nevada.

68. As demonstrated above, EIP's allegations of cause to replace Compass based on (i) the failure of Compass to foreclose against the Fiesta Stoneridge Collateral, and (ii) the failure of Compass to obtain Nevada licensing, are entirely specious and constitute a pretextual attempt to wrongfully deprive Compass of the servicing rights for which it paid the Debtors' estates valuable cash consideration.

69. First, Compass was enjoined from foreclosing on the Fiesta Stoneridge Collateral through May 23, 2007 in light of the Injunction issued in the Receivership, and has subsequently initiated a non-judicial foreclosure proceeding.

70. Second, Compass was not required to obtain a Nevada license to act as servicer under the Loans (i) prior to April 27, 2007, in light of the USACM Subservicing Agreement, or (ii) after April 27, 2007, because it serviced the Loans, including the Fiesta Stoneridge Loan, outside the State of Nevada. As such, EIP has failed to allege any cause that may give rise to a valid exercise of EIP's right to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 3 of the Loan Servicing Agreements.

71. The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversy between the parties with respect to the dispute set forth in Paragraph 67 above.

72. Accordingly, Plaintiffs request that the Court enter declaratory judgment that Compass's alleged failure to commence foreclosure proceedings to collect the Fiesta Stoneridge Loan or failure to obtain the necessary licenses from the State of Nevada are not sufficient cause to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 3 of the Loan Servicing Agreements.

### SIXTH CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant To 22 U.S.C. §§ 2201 And 2202 That No Cause Existed For EIP To Terminate The Fiesta Stoneridge Loan Servicing Agreements Under Section 8 Of The Loan Servicing Agreements)**

73. Compass repeats and realleges each and every allegation contained in paragraph 1 though 39 of the Complaint as if fully set forth herein.

74. There is an actual and justiciable controversy between the parties with respect to whether EIP may terminate the Loan Servicing Agreements in connection with the Fiesta Stoneridge Loan under Section 8 of the Loan Servicing Agreements where the alleged cause is the failure of Compass to commence foreclosure proceedings to collect the Loan, and the failure of Compass to obtain the necessary licenses from the State of Nevada.

75. As demonstrated above, EIP's allegations of cause to terminate the Fiesta Stoneridge Loan Servicing Agreements based on (i) the failure of Compass to foreclose against the Fiesta Stoneridge Collateral, and (ii) the failure of Compass to obtain Nevada licensing, are completely specious and pretextual.

76. First, Compass was enjoined from foreclosing on the Fiesta Stoneridge Collateral through May 23, 2007 in light of the Injunction issued in the Receivership, and has subsequently initiated a non-judicial foreclosure proceeding.

77. Second, Compass was not required to obtain a Nevada license to act as servicer under the Loans (i) prior to April 27, 2007, in light of the USACM Subservicing Agreement, or (ii) after April 27, 2007, because it serviced the Loans, including the Fiesta Stoneridge Loan, outside the State of Nevada. As such, EIP has failed to allege any cause that may give rise to a valid exercise of EIP's right to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 8 of the Loan Servicing Agreements.

78. The issuance of a declaratory judgment by this Court will terminate all or most of the existing controversy between the parties with respect to the dispute set forth in Paragraph 74 above.

79. Accordingly, Plaintiffs request that the Court enter declaratory judgment that Compass's alleged failure to commence foreclosure proceedings to collect the Fiesta Stoneridge Loan or failure to obtain the necessary licenses from the State of Nevada are not sufficient cause to terminate the Fiesta Stoneridge Loan Servicing Agreements under Section 8 of the Loan Servicing Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Compass respectfully requests judgment as follows:

a. an order declaring that EIP is enjoined from replacing or terminating Compass as servicer of the Fiesta Stoneridge Loan by virtue of the August 1 Order, pending further order of the Court;

b. an order declaring that EIP is bound by the terms of the Confirmation Order and the Loan Servicing Agreements;

c. an order declaring that EIP is not permitted to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan solely under NAC 645B.073.;

– 17 –

d. an order declaring that EIP is required to provide thirty days prior notice in order to exercise any valid designation of a servicer under Section 3 of the Loan Servicing Agreements;

e. an order declaring that Compass's alleged failure to commence foreclosure proceedings to collect the Fiesta Stoneridge Loan or failure to obtain the necessary licenses from the State of Nevada are not sufficient cause to replace Compass and designate Vindrauga as the servicer under the Fiesta Stoneridge Loan under Section 3 of the Loan Servicing Agreements;

f. an order declaring that Compass's alleged failure to commence foreclosure proceedings to collect the Fiesta Stoneridge Loan or failure to obtain the necessary licenses from the State of Nevada are not sufficient cause to terminate the Fiesta Stoneridge Loan Servicing Agreements under Section 8 of the Loan Servicing Agreements;

g. an order enjoining EIP from replacing Compass and designating Vindrauga as the servicer under the Fiesta Stoneridge Loan, or terminating the Fiesta Stoneridge Loan Servicing Agreements, pursuant to the EIP Termination Letter;

h. an order invalidating the EIP Termination Letter; and

i. such other and further relief as the Court deems just and proper.

Dated: August 7, 2007

*Georganne W. Bradley for*
Robert J. Moore
Tyson M. Lomazow
MILBANK, TWEED, HADLEY & McCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone No.: (212) 530-5367
Facsimile No.: (212) 822-5367

and

Peter C. Bernhard (State Bar No. 734)
Georganne W. Bradley (State Bar No. 1105)
Bullivant Houser Bailey PC
3980 Howard Hughes Parkway, Suite 550
Las Vegas, Nevada 89169
peter.bernhard@bullivant.com
Telephone No.: (702) 650-6565
Facsimile No.: (702) 650-2995

Counsel for Plaintiffs

— 18 —