**LEWIS and ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile: (702) 949-8321
Telephone: (702) 949-8320

Susan Freeman AZ State Bar No. 004199
E-mail: **sfreeman@lrlaw.com**
Rob Charles, NV State Bar No. 006593
E-mail: **rcharles@lrlaw.com**

**FOLEY & LARDNER LLP**
Attorneys at Law
321 North Clark Street, Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Edward J. Green Ill Bar No. 6225069 (Pro Hac Vice Pending)
Geoffrey S. Goodman Ill Bar No. 6272297 (Pro Hac Vice Pending)

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>**USA Commercial Mortgage Company**<br>06-10725 – Lead Case<br><br>**USA Capital Realty Advisors, LLC**<br>06-10726<br><br>**USA Capital Diversified Trust Deed Fund, LLC**<br>06-10727<br><br>**USA Capital First Trust Deed Fund, LLC**<br>06-10728<br><br>**USA Securities, LLC**<br>06-10729<br><br>**Debtors.** | Jointly Administered<br><br>Chapter 11 Cases<br><br>Judge Linda B. Riegle Presiding<br><br>**OBJECTIONS OF THE USACM LIQUIDATING TRUST TO PROOFS OF CLAIM FILED BY THE PENSION BENEFIT GUARANTY CORPORATION**<br><br>Affecting:<br>☐ All Cases<br>Or Only:<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Fund Deed, LLC<br>☐ USA Capital First Trust Fund Deed, LLC<br>☐ USA Securities, LLC |

The USACM Liquidating Trust (the "Liquidating Trust"), by and through its counsel and pursuant to § 502 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq</u>. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007 of the Local Rules of Bankruptcy Procedure, hereby files its objection (the "Objection") to the amended claims of the Pension Benefit Guaranty Corporation (the "PBGC") filed against USA Commercial Mortgage Company ("USACM"), which have

1

226053.1

been designated as amended Claim Nos. 791, 793 and 794. In support of its Objection, the Liquidating Trust states as follows.

## JURISDICTION

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. The statutory predicate for the relief requested herein is § 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A.    The Chapter 11 Cases and the Plan**

3. On April 13, 2006, USACM and four related entities identified in the caption above (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases were jointly administered by an order of this Court.

4. On January 8, 2007, this Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). The Plan became effective on March 12, 2007.

5. On the Effective Date, the Liquidating Trust was created pursuant to the terms of the Plan and the Confirmation Order. Under the Plan, the Liquidating Trust is the successor to USACM with respect to standing to seek allowance and disallowance of claims.

**B.    The Pension Plan**

6. UASCM adopted the USA Commercial Mortgage Company Defined Benefit Pension Plan ("Pension Plan") effective as of January 1, 1998. All new benefit accruals under the Pension Plan were discontinued and accrued benefits frozen effective as of September 30, 2006.

7. On January 15, 2007, the Pension Plan was involuntarily terminated by the PBGC. On January 26, 2007, the PBGC became the statutory trustee of the Pension Plan pursuant to an agreement between the PBGC and USACM.

8. USACM was the "contributing sponsor," as defined in 29 U.S.C. § 1301(a)(14), of the Pension Plan. Debtors USA Investment Partners, LLC, USA Capital Realty Advisers, LLC and other Debtors are also alleged by the PBGC to be a member of the "controlled group" for the Pension Plan and are jointly and severally liable for any obligations to the Pension Plan. See 29 U.S.C. §§ 1301(a)(14), (e)(2).[1]

9. Approximately 30 former employees of USACM are participants in the Pension Plan. The participants with the largest stake in the Pension Plan include Thomas Hantges, Joseph Milanowski, Paul Hamilton and Victoria Loob (collectively, the "Insider Beneficiaries"), who were officers and/or owners of the Debtors prior to the Petition Date. The Liquidating Trust has the right to assert claims against the Insider Beneficiaries and other pre-petition employees of the Debtors pursuant to the terms of the Plan for their breach of fiduciary duties, misappropriation of corporate opportunities, conversion, state and federal RICO, fraudulent transfer and other alleged wrongful conduct prior to the Petition Date.

**C. The Original PBGC Claims**

10. On November 9, 2006, the PBGC filed three claims against USACM's estate (collectively, the "Original Claims"). Claim No. 791 was an unliquidated claim for pension insurance premiums allegedly owed by USACM to the PBGC. Claim No. 793 was an "estimated" claim in the amount of $1,068,233 for minimum funding contributions allegedly owed by USACM to the Pension Plan. Claim No. 794 was an "estimated" claim in the amount of $884,389 for unfunded benefit liabilities allegedly owed to the PBGC in connection with the Pension Plan.

---

[1] The PBGC has recently filed claims in the following cases: *In re USA Investment Partners, LLC*, No. 07-11821, claims 12-14; *In re USA Investors VI, LLC*, No. 07-12377, claims 44-42; and *In re Tree Moss Partners, LLC*, No. 06-13758, claims 11-9.

226053.1

11. On March 2, 2007, USACM filed an objection to the Original Claims. The objection argued, among other things, that the Original Claims were not entitled to priority status and that they were unsupported.

### D. The Amended Claims

12. On April 23, 2007, the PBGC filed amended Claim No. 791 in an "estimated" amount of $120,870. Amended Claim No. 791 alleges that the PBGC possesses an administrative claim under §§ 503(b)(1) and 507(a)(2) of the Bankruptcy Code in the amount of $112,572, consisting of (a) termination premiums in the amount of $112,500 under 29 U.S.C. § 1306(a)(7), and (b) $72 in post-petition flat-rate and variable-rate premiums under 29 U.S.C. § 1306(a)(3). Amended Claim No. 791 also alleges that the PBGC possesses an unsecured claim in the amount of $8,298, consisting of (a) $6,786 in pre-petition flat-rate and variable-rate premiums, and (b) $1,512 in interest and penalties on the pre-petition premiums.

13. On April 23, 2007, the PBGC also filed amended Claim No. 793 in an "estimated" amount of $1,211,242. The PBGC alleges that Amended Claim No. 793 is an administrative claim, pursuant to §§ 503(b)(1) and 507(a)(2) of the Bankruptcy Code and § 412(c) of the Internal Revenue Code (the "IRC"), for post-petition contributions that USACM allegedly did not make to the Pension Plan. The PBGC also alleged, apparently in the alternative, that (a) $284,999 in post-petition contributions were "ordinary business expenses" entitled to administrative priority under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) $330,602 in "contributions arising" during the 180 days immediately preceding the Petition Date are entitled to priority under § 507(a)(5) of the Bankruptcy Code. Amended Claim No. 793 provides no information or other support as to how these amounts were computed.

14. On April 23, 2007 and on April 25, 2007, the PBGC filed amended Claim No. 794 in an "estimated" amount of $1,700,624. Amended Claim No. 794 is styled as an unsecured, non-priority claim with an "unliquidated" priority amount. The PBGC's statement in support of the claim, however, alleges that the portion of Claim No. 794

equal to 30% of the collective net worth of USACM and the members of its controlled group (a) is entitled to treatment as an administrative claim under §§ 503(b)(1) and 507(a)(2) of the Bankruptcy Code, or (b) is entitled to treatment as a priority tax claim under § 507(a)(8) of the Bankruptcy Code.

## OBJECTIONS TO THE PBGC'S AMENDED CLAIMS

### I. Applicable Authority

15. Section 502(b)(1) of the Bankruptcy Code provides that this Court shall disallow a proof of claim to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). While a properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f), if a party objecting to a proof of claim "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re Consolidated Pioneer Mortgage,* 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd,* 91 F.3d 151 (9th Cir. 1996) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).

### II. General Objections to the PBGC's Amended Claims

16. The Liquidating Trust submits the following general objections to Amended Claim Nos. 791, 793 and 794 (the "Amended Claims").

17. <u>First</u>, the Amended Claims should be disallowed under § 502(b)(1) of the Bankruptcy Code because they are unsupported. The PBGC has not met its burden of persuasion on the amount and priority of the Amended Claims. The PBGC failed to attach any actuarial assumptions, calculations or other evidence in support of the Amended Claims. Instead, each Amended Claim merely sets forth the PBGC's alleged "estimated" damages without any supporting documentation whatsoever. Absent additional support for the Amended Claims, and the ability of the Liquidating Trust to analyze and refute such support, the Amended Claims should be disallowed.

18. <u>Second</u>, the Liquidating Trust objects to the "estimated" nature of the Amended Claims. The Liquidating Trust intends to move as expeditiously as possible to administer the USACM estate, and cannot be held up by the PBGC's failure to assert a liquidated amount for its alleged claims. The Liquidating Trust reserves its right to estimate the Amended Claims pursuant to § 502(c) of the Bankruptcy Code in the event that such claims are not disallowed in their entirety.

19. <u>Third</u>, the Liquidating Trust objects to the Amended Claims to the extent that the PBGC seeks a double recovery from the Debtors' estates. As stated above, USACM Liquidating Trust and certain of the other Debtors are under common control and, therefore, are jointly and severally liable to the PBGC with respect to the Amended Claims to the extent this Court allows them. <u>See</u> 29 U.S.C. § 1362(a). The PBGC cannot collect more than an aggregate 100% on account of its allowed claims against the Debtors' estates. *See, e.g., In re Chene*, 236 B.R. 69, 73 (M.D. Fla. 1999) (holding that IRS was not entitled to collect more than 100% in the aggregate on account of tax debt for which the debtor and other parties were jointly and severally liable); *In re Realty Assocs. Sec. Corp.,* 66 F. Supp. 416, 424 (E.D.N.Y. 1946) (creditor entitled to assert full amount of its claims against the debtor only until paid in full from all sources).

20. <u>Fourth</u>, the Liquidating Trust objects to the Amended Claims to the extent that any amounts payable to the PBGC on account of such claims will be paid over to the Insider Beneficiaries. The Plan provides that the claims of the Insider Beneficiaries (Class A-6 "Subordinated Claims") are subordinated to the allowed claims of unsecured creditors (now beneficiaries of the Liquidating Trust). *See* Plan, Classification and Treatment of Claims and Equity Interests, at 25, 33-34. The Insider Beneficiaries cannot use the Pension Plan as a "back door" to obtain distributions from the estate of USACM that otherwise are prohibited under the Plan. As such, the PBGC claims should be disallowed to the extent that they would result in any payments being made to the Insider Beneficiaries.

### III. Specific Objections To The Amended Claims

#### A. Objections to Amended Claim No. 793

21. The Liquidating Trust objects to Amended Claim No. 793 because the PBGC has provided no basis for alleging that the entire claim, or any portion thereof, is entitled to administrative expense priority under §§ 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

22. It is well-established that the PBGC's claim arising from a debtor's failure to make post-petition pension plan contributions pursuant to Section 412 of the IRC is not treated as a tax. *See, e.g., In re CF&I Fabricators of Utah, Inc.,* 150 F.3d 1293, 1297 (10th Cir. 1998); *In re Divco Philadelphia Sales Corp.,* 64 B.R. 232, 235 (Bankr. E.D. Pa. 1986); *In re Bayly Corp.,* No. Civ. A. 95 N 901, 1997 WL 33484011, at *2-4 (D. Colo. Feb. 12, 1997).

23. It is equally well-established that such a claim is subject to priority treatment as an administrative claim only to the extent of the portion of the missed contribution representing the cost of post-petition benefit accruals. *See, e.g., In re Sunarhauserman*, 126 F.3d 811, 817 (6th Cir. 197) (affirming disallowance of PBGC's administrative claim for all amounts except liabilities arising post-petition because "it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition"); *In re Bayly Corp.*, 163 F.3d 1205, 1210-11 (10th Cir. 1998) (rejecting PBGC's position that it was entitled to an administrative claim for any unfunded benefit liabilities other than those arising from post-petition labor); *In re Kent Plastics Corp.*, 183 B.R. 841, 847 (Bankr. S.D. Ind. 1995) (denying PBGC's claim for administrative expense priority where the pension plan had been frozen for six years prior to bankruptcy filing).

24. Here, the PBGC offers no evidence that the alleged administrative claim of $1,211,242 represents the cost of post-petition benefit accruals arising under the Pension

7

226053.1

Plan.² Thus, at a minimum, Amended Claim No. 793 should be reclassified as an unsecured, non-priority claim.

25. In addition, the Liquidating Trust objects to the unsupported calculations in Amended Claim No. 793. The PBGC must support Amended Claim No. 793 with (i) reasonable actuarial assumptions, that (ii) only apply to accruals of minimum benefits guaranteed by the PBGC. From a preliminary review of the relevant Pension Plan documents, it appears to the Liquidating Trust that the benefit accruals with respect to the Insider Beneficiaries were consistently overstated. The Liquidating Trust objects to the inclusion of any benefit accrual for the Insider Beneficiaries in the determination of that portion of the missed plan contributions, if any, which may be entitled to priority treatment subject to a full review of the records of the Pension Plan by an actuary retained by the Liquidating Trust.

26. The Liquidating Trust also reiterates its general objection to Amended Claim No. 793 to the extent that any amounts payable to the PBGC on account of such claim will be paid over to the Insider Beneficiaries as benefits under the Pension Plan. Any such payments would conflict with the terms of the Plan.

**B.    Objections to Amended Claim No. 794**

27. Amended Claim No. 794 alleges that the PBGC possesses an "unliquidated" administrative and/or priority claim. The Liquidating Trust objects to Amended Claim No. 794 because, just as with Amended Claim No. 793 the PBGC has provided no basis for alleging that the entire claim, or any portion thereof, is entitled to priority under §§ 503(b)(1) and 507(a)(2) of the Bankruptcy Code. *See, e.g.*, *Sunarhauserman*, 126 F.3d at 817; *Bayly Corp.*, 163 F.3d at 1210-1211; *see also CF&I Fabricators*, 150 F.3d at 1297 (rejecting PBGC's position that unpaid contributions

---

² The administrative priority for Amended Claim No. 793, if any, would be limited to the actual cost of benefits accruing from May 2006 to September 2006, when such accruals were frozen. The Liquidating Trust reserves the right to challenge the amount of such accruals as reflected on the records of the Pension Plan.

constituted a "tax"); *Divco Phila. Sales Corp.,* 64 B.R. at 235 (holding that 29 U.S.C. § 1368 did not render the PBGC's claim a priority tax claim under the Bankruptcy Code).

28. In addition, Amended Claim No. 794 is overstated because the PBGC improperly estimates the amount of Amended Claim 794 using assumed rates of return on invested assets rather than the required "prudent investor" rate of earnings. In *In re CSC Indus. Inc.*, 232 F.3d 505 (6th Cir. 2000), the Sixth Circuit held that the "prudent investor rate"—the rate "which a reasonably prudent investor would receive from investing the funds"—was the appropriate discount rate for the claims of the PBGC. *See id.* at 508-09; *see also CF& I Fabricators*, 150 F.3d at 1301 (10th Cir. 1998) (same). Amended Claim No. 794 must be discounted to its present value as of the Petition Date using the "prudent investor" rate.

29. Amended Claim No. 794 also should be reduced on a dollar-for-dollar basis by an amount equal to any recovery realized by the PBGC with respect to Amended Claim No. 793, because any contributions to the Pension Plan would reduce the amount of any unfunded benefit liability on a dollar-for-dollar basis. This Court should also reduce the amount sought in Amended Claim No. 794 to the extent the amount of the unfunded benefit liability under the Pension Plan exceeds an amount which, when added to the value of the Pension Plan's assets on its termination date, exceeds the present value of Pension Plan benefits guaranteed by the PBGC.

30. The Court should also reject any attempt by the PBGC to collect any unfunded benefit liabilities which reflect amounts improperly accrued under the terms of the Pension Plan or involve the Pension Plan not being qualified under Section 401(a) of the IRC at the time it was terminated.

31. Finally, the Liquidating Trust reiterates its general objection to Amended Claim No. 794 to the extent that any amounts payable to the PBGC on account of such claim will be paid over to the Insider Beneficiaries as benefits under the Pension Plan. Any such payments would conflict with the terms of the Plan.

### C. Objections To Amended Claim No. 791

32. As with Amended Claim Nos. 793 and 794, the PBGC fails to establish that Claim No. 791 for $112,572 in termination premiums under 29 U.S.C. § 1306(a)(7) is entitled to priority as an administrative claim.

33. <u>First</u>, the PBGC is not entitled to an administrative claim pursuant to the plain language of the statute. Section 1306(a)(7) provides:

> (A) In general [i]f there is a termination of a single-employer plan under . . . section 1342 [involuntary termination] of this title, there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section.
>
> (B) Special rule for plans terminated in bankruptcy reorganization[.] In the case of a single-employer plan terminated under . . . section 1342 [involuntary termination] of this title during pendency of any bankruptcy reorganization proceeding under chapter 11 of Title 11 . . . subparagraph (A) shall not apply to such plan until the date of the discharge or dismissal of such person in such case.

34. A "single employer plan" is defined by 29 U.S.C. § 1002(41) as any plan that is not a "multiemployer plan." Under 29 U.S.C. § 1002(37), a "multiemployer plan" is any plan (1) to which more than one employer is required to contribute; (2) which is maintained pursuant to a collective bargaining agreement between an employee organization and an employer; and (3) which satisfies any other requirements imposed by the Department of Labor. While the Pension Plan may be a "multiple-employer plan" as more than one employer may have contributed to the plan, it was not maintained pursuant to a collective bargaining agreement between those Debtors whose employees were covered by the plan and a union or other employee organization. Thus, the Pension Plan cannot qualify as a "multiemployer plan" under the terms of 29 U.S.C. § 1002(41). Because it is not a multiemployer plan, the Pension Plan is therefore a single-employer plan to which Section 1306(a)(7)(B) applies.

226053.1

35. As stated above, Section 1306(a)(7)(B) provides that no termination premiums are due until a debtor is <u>discharged</u> or its case is <u>dismissed</u>. Because the Plan was a liquidating chapter 11 plan, USACM did not receive a discharge. *See* Plan Section IV.H (entitled "Non-discharge of Debtors and Injunction" and stating in part that "Pursuant to Section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors"); *see also* 11 U.S.C. § 1141(d)(3)(A) ("The confirmation of a plan does not discharge a debtor if— (A) the plan provides for the liquidation of all or substantially all of the property of the estate").

36. In addition, the USACM case has not been dismissed. Thus, any claim for such premiums is, at best, premature. In addition, as such claim does not arise until after the dismissal of the bankruptcy case, it cannot be a claim against USACM's estate entitled to priority treatment. Accordingly, § 1306(a)(7) is inapplicable and cannot be the basis for an administrative claim.

37. <u>Second</u>, the PBGC's claim for plan termination premiums is not entitled to administrative priority because it is impossible to characterize such statutory termination premiums as post-petition and pre-confirmation expenses incurred for the benefit of the bankruptcy estate. As stated above with respect to Claim Nos. 793 and 794, it is well established that the PBGC is only entitled to an administrative claim for benefit accruals that arise from post-petition labor and benefit the debtor's estate. *See, e.g.*, *Sunarhauserman*, 126 F.3d at 817; *Bayly Corp.*, 163 F.3d at 1210-1211.

38. The estate received no benefit from the PBGC's imposition of a statutory termination premium. The PBGC therefore is not entitled to an administrative claim for any portion of the termination premium.[3]

---

[3] In addition, the mere fact that termination liability under § 1306(a)(7) first became payable post-petition in this case does not mean the estate was benefited post-petition. Under analogous circumstances, courts have denied administrative expense priority to claims, even though such claims first become payable post-petition. *See In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) (denying administrative expense priority to attorney's claim for fees where liability for the fees arose post-petition, but the contract on which entitlement to attorneys' fees was based was executed pre-petition); *In re Palau Corp.*, 18 F.3d 746, 750-51 (9th Cir. 1994) (refusing administrative expense priority to employees who obtained a post-petition court award

39.     Further, any attempt by the PBGC to argue that *Sunarhauserman* and its progeny do not apply to plan termination premiums would be unavailing. Because Congress does not write bankruptcy laws "on a clean slate," this Court must assume that Congress was aware of the well established law on the PBGC's (lack of) entitlement to an administrative claim when it enacted § 1306(a)(7). *See Dewnsup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'"). However, despite the explicit reference to chapter 11 cases in § 1306(a)(7), Congress failed to provide in the statute that the PBGC was entitled to an administrative claim for any termination premiums. This Court should not effect such a major change in the Bankruptcy Code priority scheme for PBGC liabilities absent a significant discussion of that change in the legislative history. *See id.* ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.").

40.     <u>Third</u>, assuming liability for termination premiums under § 1306(a)(7) exists (it does not), it is in the nature of a "penalty," as opposed to a "tax," and is not entitled to treatment as an administrative claim under the Bankruptcy Code. A penalty is "an exaction imposed by statute as punishment for an unlawful act," while a tax is "an enforced contribution to provide for the support of government." *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (citation omitted); *see also PBGC v. Skeen (In re Bayly Corp.)*,[4] No. Civ. A. 95 N 901, 1997 WL 33484011, at *2-4 (D. Colo. Feb. 12, 1997) (citations omitted).

---

for back wages where work was performed for debtor pre-petition); *In re Bayly Corp.*, 163 F.3d at 1208-09 (claim not entitled to priority status "simply because the right to payment arises after the debtor in possession has begun managing the estate") (citing *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988).

[4] The *Bayly* decision cited here is different from the *Bayly* decision cited above.

41. *Reorganized CF & I Fabricators* involved a bankruptcy debtor's required payment to the Internal Revenue Service of ten percent of accumulated funding deficiencies for certain pension plans. *See id*. at 215. Specifically, the issue for the court was whether the payment was in the nature of a tax (entitled to a priority) or a penalty (relegated to general unsecured creditor status). *See id*. The court held the ten-percent payment was a penalty and thus not entitled to priority. *See id*. at 225. In reaching that conclusion, the court referenced the PBGC's claim for unfunded benefit liabilities as an example of a bankruptcy liability that underscored its conclusion. *See id*.

42. The *Bayly* court later squarely addressed the issue of whether the unfunded benefit liability owed to the PBGC was a penalty or tax, and concluded it was not a tax intended to support and provide income for the government. *Bayly*, 1997 WL 33484011, at *4. Rather, the unfunded benefit liability was a deterrent to failed pension plan sponsors by forcing them to reimburse the PBGC for money it expended on debtors' behalf. *See id.* The same is true for termination premium liability pursuant to § 1306(a)(7). Such liability cannot be characterized as a tax entitled to priority. As in *Reorganized CF & I Fabricators* and *Bayly Corp.*, premium termination liability is akin to a penalty, intended to serve as a deterrent against future employers who are contemplating termination of their employees' pension plans.

43. <u>Fourth</u>, the Liquidating Trust reiterates its general objection to Amended Claim No. 791 to the extent that any amounts payable to the PBGC on account of such claim will be paid over to the Insider Beneficiaries as benefits under the Pension Plan. Any such payments would conflict with the terms of the Plan.

## **CONCLUSION**

44. The PBGC's Amended Claims are unsupported and should be disallowed in their entirety. In addition, in the alternative, the Amended Claims are not entitled to priority either as an administrative or priority tax claim. Thus, at a minimum, the Amended Claims should be reclassified as general unsecured claims, subject to the additional objections to the amount of the claims raised herein, including the purported

13

226053.1

contributions on behalf of the Insider Beneficiaries, whose claims are subordinated pursuant to the terms of the Debtors' confirmed Plan of Reorganization.

WHEREFORE, the Liquidating Trust respectfully requests that this Court enter an order pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, (a) disallowing, reclassifying and/or reducing the Amended Claims, and (b) granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED September 6, 2007.

**LEWIS and ROCA LLP**

By: /s/ RC (#006593)
    Susan M. Freeman
    Rob Charles

And

Edward J. Green (No. 6225069)
Geoffrey S. Goodman (No. 6272539)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

226053.1

## PROOF OF SERVICE

Copy of the foregoing e-mailed or mailed first class postage prepaid U.S. Mail on September 11, 2007 to the following parties in interest:

Frank A. Anderson
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW, Suit e340
Washington, DC 20005-4026
Anderson.frank@pbgc.gov
efile@pbgc.gov

Daniel G. Bogden
Steven W. Myhre, Acting U.S. Attorney
Carlos A. Gonzalez, Assistant U.S. Attorney
United States Attorney
333 Las Vegas Blvd South, Suite 5000
Las Vegas, NV 89101

/s/ Christine E. Laurel
Christine E. Laurel
Lewis and Roca