Kelly J. Brinkman, Esq.
Nevada Bar No. 6238
Barney C. Ales, Esq.
Nevada Bar No. 0127
GOOLD PATTERSON ALES & DAY
4496 South Pecos Road
Las Vegas, Nevada 89121
(702) 436-2600 (Telephone)
(702) 436-2650 (Fax)

Attorneys for Administrative Creditor

E-Filed on 9/21/07

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                         Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                         Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>                                         Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                         Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>                                         Debtor.<br>Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LL | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**OPPOSITION TO LIQUIDATING TRUST'S APPLICATION FOR ORDER TO SHOW CAUSE WHY DR. LUCIUS BLANCHARD SHOULD NOT BE HELD IN CONTEMPT OF COURT AND COUNTERMOTION FOR A PROTECTIVE ORDER**<br><br>Date: September 28, 2007<br>Time: 1:30 p.m. |

Dr. Lucius Blanchard, by and through his attorney of record, Barney C. Ales, Esq., of Goold Patterson Ales & Day submits his Opposition to the Application for Order to Show Cause Why Dr. Lucius Blanchard Should Not Be Held in

Contempt of and Countermotion for a Protective Order as follows:

## INTRODUCTION

1. The USACM Liquidating Trust (the "Trust") obtained on Order permitting the 2004 Examination of Dr. Lucius Blanchard, M.D., a practicing physician working for the Las Vegas Skin and Cancer Clinic. The Order was issued as a result of a Motion filed by the Special Litigation Counsel for the Trust without notice. Thereafter counsel for the Trust prepared and served a Subpoena upon Dr. Blanchard, M.D. The Subpoena required Dr. Blanchard submit to a 2004 Examination and produce documents. Prior to the date of the examination, Dr. Blanchard's counsel contacted the Trust's counsel to discuss the time of the examination and requested it be moved back from 10:00 a.m. until 1:00 p.m. on the date unilaterally selected by the Trust's counsel. Thereafter discussions were had and it appeared that a reasonable accommodation could be worked out. However, contrary to the statements in the moving papers, counsel for the Trust was not reasonable and then filed the instant Motion.

2. As will be demonstrated herein, the Subpoena at issue places an undue burden on Dr. Blanchard and goes beyond the scope permitted for post-confirmation discovery. Accordingly, Dr. Blanchard is in need of assistance from this Honorable Court to protect him from the burdensome Subpoena as well as setting reasonable limitations on his 2004 Examination.

## FACTUAL BACKGROUND

3. This Court confirmed Debtor's Third Amended Joint Chapter 11 Plan of Reorganization on January 8, 2007. Pursuant to that Plan, all assets of the Bankruptcy Estate not collected or disposed of prior to the Effective Date of the Plan, including the Debtor's Litigation Claims, minus any Cash needed to make required payments, vested in the Trust.

4. On July 19, 2007, the attorneys for the Trust filed a Motion for Order Requiring

Dr. Blanchard to appear for examination pursuant to Federal Bankruptcy Rules of Procedure 2004.

5. On July 23, 2007, this Court entered an Order requiring Dr. Blanchard to appear for his 2004 Examination.

6. On July 24, 2007, counsel for the Trust prepared a Subpoena directed to Dr. Blanchard that set his examination for August 13, 2007 at 10:00 a.m. (or such other mutually agreeable date and/or time). A copy of the Subpoena is attached hereto as Exhibit "A".

7. The topics upon which Dr. Blanchard is to be examined are as follows:

    (1) All communications, transactions, and other dealings between any of the Debtors (as defined in EXHIBIT B) and any of the following:
        a. Lucius Blanchard, M.D.
        b. Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered
        c. Lucius Blanchard Children's Trust
        d. Thomas Hantges
        e. Joseph Milanowski
        f. Victoria Loob
        g. USA Investment Partners, LLC
        h. Any of the Entities (as defined in EXHIBIT B)
        i. Any of the Individuals (as defined in EXHIBIT B)

    (2) All communications, transactions, and other dealings between any of the Entities (as defined in EXHIBIT B) and any of the following:
        a. Lucius Blanchard, M.D.
        b. Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered
        c. Lucius Blanchard Children's Trust
        d. Thomas Hantges
        e. Joseph Milanowski
        f. Victoria Loob
        g. USA Investment Partners, LLC
        h. Any of the Debtors (as defined in EXHIBIT B)
        i. Any of the Individuals (as defined in EXHIBIT B)

    (3) All communications, transactions, and other dealings between any of the Individuals (as defined in EXHIBIT B) and any of the following:
        a. Lucius Blanchard, M.D.
        b. Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered
        c. Lucius Blanchard Children's Trust
        d. Thomas Hantges
        e. Joseph Milanowski
        f. Victoria Loob

      g.    USA Investment Partners, LLC
      h.    Any of the Debtors (as defined in EXHIBIT B)
      i.    Any of the Entities (as defined in EXHIBIT B)\

(3)*(sic)* Your policies, if any, regarding document destruction and retention, and how those policies were applied to the documents requested in EXHIBIT B (the "documents");

(4) How and where the documents are kept and filed

(5) Whether the documents are kept in the ordinary and usual course of your business;

(6) How the documents came to be created, including the identities (specifically or by category) of the persons creating them;

(7) Whether the persons creating the documents had personal knowledge of the matters stated in the documents, or created from them information transmitted by someone with such knowledge;

(8) Whether it was your regular practice to create the documents (or keep a file of the documents, if created by others);

(9) The efforts that you made to locate and produce the documents;

(10) The identities of all persons assisting with the search for responsive documents;

(11) Whether any responsive documents were withheld on any ground;

(12) Whether any responsive documents have been destroyed, and if so, when and for what reason or pursuant to what policy or instruction;

(13) Whether any documents that should have been found were missing, and if so, the reasons that the documents were missing; and,

(14) Whether any of the instructions provided in EXHIBIT B were not followed, and if so, which instructions were not followed and the reasons for any and all departures from the instructions.

8.    The Entities as defined in the Subpoena reference one hundred and eighty-eight (188) different companies and the Individuals as defined in the Subpoena reference thirty-five (35) different individuals.

9. The Subpoena also requests production of documents. Counsel for the Trust has prepared a list of twenty-nine (29) separate requests for documents. They are as follows:

1. All Documents referring or relating to any communications between any of the Debtors and Blanchard.

2. All Documents referring or relating to any communications between any of the Debtors and Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered.

3. All Documents referring or relating to any communications between any of the Debtors and the Lucius Blanchard Children's Trust.

4. All Documents referring or relating to any communications between any of the Debtors and any of the Entities.

5. All Documents referring or relating to any communications between any of the Debtors and any of the Individuals.

6. All Documents referring or relating to any communications between Blanchard and any of the Entities

7. All Documents referring or relating to any communications between Blanchard and any of the Entities related to any of the Debtors.

8. All Documents referring or relating to any communications between Blanchard and any of the Individuals.

9. All Documents referring or relating to any communications related to any of the Debtors between Blanchard and any of the Individuals.

10. All Documents referring or relating to any communications related to any of the Debtors between Blanchard and any of the following persons:

    a. Thomas Hantges
    b. Joseph Milanowski
    c. Victoria Loob
    d. USA Investment Partners, LLC

11. All Documents referring or relating to any communications between Blanchard and any of the following persons:

    a. Thomas Hantges
    b. Joseph Milanowski
    d.(*sic*) Victoria Loob
    d. USA Investment Partners, LLC

5

12. All Documents referring or relating to any transactions involving any of the Debtors.

13. All Documents referring or relating to any transaction involving any of the following persons:

    a. Thomas Hantges
    b. Joseph Milanowski
    c. Victoria Loob
    d. USA Investment Partners, LLC

14. All Documents referring or relating to any transactions entered into by any of the Debtors.

15. All Documents referring or relating to any transactions or other dealings between any of the Debtors and Blanchard.

16. All Documents referring or relating to any transactions or other dealings between any of the Debtors and Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered.

17. All Documents referring or relating to any transactions or other dealings between any of the Debtors and the Lucius Blanchard Children's Trust.

18. All Documents referring or relating to any transactions or other dealings between any of the Debtors and any of the Entities.

19. All Documents referring or relating to any transactions or other dealings between any of the Debtors and any of the Individuals.

20. All Documents referring or relating to any transactions or other dealings between Blanchard and any of the Entities.

21. All Documents referring or relating to any transactions or other dealings between Blanchard and any of the Individuals.

22. All Documents referring or relating to any transactions or other dealings between Blanchard and any of the following person:

    a. Thomas Hantges
    b. Joseph Milanowski
    c. Victoria Loob
    d. USA Investment Partners, LLC

23. All Documents referring or relating to financial statements, audit work papers, appraisals, valuation reports, or any other assessment of the financial condition of any of the following persons:

   a. Any of the Debtors
   b. USA Investment Partners, LLC

24. All Documents referring or relating to any payments or other transfers by any of the Debtors to Blanchard.

25. All Documents referring or relating to any payments or other transfers by any of the Debtors to Nevada Skin and Cancer, Lucius Blanchard, M.D., Chartered.

26. All Documents referring or relating to any payments or other transfers by any of the Debtors to the Lucius Blanchard Children's Trust.

27. All Documents referring or relating to any payments or other transfers by any of the Debtors to any of the Entities.

28. All Documents referring or relating to any payments or other transfers by any of the Debtors to any of the Individuals.

29. A photocopy of Blanchard's current passport.

10. In the Motion filed by Counsel for the Trust seeking Dr. Blanchard's examination, the reason for the examination is explained as follows:

> "The Movant seeks information concerning transactions and other dealings between Blanchard and USACM, the other Debtors in the above-captioned case (together with USACM, the Debtors "Debtors"), the Debtors' insiders, affiliates, subsidiaries, parents or otherwise related Entities. The Movant seeks this information to assist in the collection of the assets and investigation of the liabilities of Debtors." See, Docket No. 4187, at p2, ll.8-13.

The Motion did not include a copy or a draft of the Subpoena as an exhibit that was intended to be served in the event the Motion was granted.

11. The Subpoena, while being only a few pages long, has thirteen (13) pages of Definitions and Instructions. Moreover, the Subpoena has no restriction of time. Additionally, the Subpoena requests a large amount of private and personal information that is entirely unrelated to the Debtors in this case. Indeed, the Subpoena requests documents related to Dr. Blanchard's Personal Trust and the Trust of his Children.

# LEGAL ARGUMENT

### A. The Scope of a 2004 Examination is Limited in a Post-Confirmation Case.

12. The administration of Debtors' bankruptcy cases concluded when the Debtors' Joint Plan was confirmed by the Court. At that time, the estate assets were vested in different post-confirmation entities. While the Trust indicates the Subpoenaed information is necessary to assist it in the collection of assets and the investigation of liabilities of the Debtors, based on the broad scope of the Subpoena, it appears that the purpose of acquiring the information is to obtain strategic advantage in pre-litigation discovery regarding claims and causes of actions to be asserted in the future, which is not a legitimate purpose.

13. In the case of *In re: Good Hope Refiniries, Inc.*, 9 B.R. 421 (Bankr.D.Mass. 1981) where the Court was considering Bankruptcy Rule 205, which is the predecessor to the current Rule 2004 and stated:

> Rule 205 is intended to provide the Trustee generally new to the case, with a very broad discovery device to aid in an efficient and expeditious gathering of all of the pertinent facts necessary in the effective administration of the estates.
>
> It is not intended to give the rehabilitated debtor post confirmation a strategic advantage in fishing for potential private litigation. Our basic concept of fair play expressed in the Constitutional legalese of equal protection and due process should require all litigants to use the same discovery and procedural rules when not directly engaged in those activities that call for the bankruptcy umbrella, namely, the collection of activities characterized as the administration of the state." Id at 423. See also, *In re GHR Energy Corp.*, 35 B.R.534, 537 (Bankr.D.Mass. 1983).

14. It has been held that examinations into matters having no relationship to the bankruptcy affairs or the administration of the estate are improper. *Keene Corp. v. Johns-Manville Corp.*, 42 BR 362, 364 (Bankr.S.D.N.Y. 1984) *In re: Dinubilo*, 177 B.R 932, 940 (Bankr.E.D.Cal, 1993).

15.	A post-confirmation Rule 2004 Examination is restricted to the administration of the case post-confirmation; it is limited to issues which the Court at the time still has power to entertain. *Cinderella Clothing Industries,* 93 BR 373 (Bankr.E.D.Pa. 1988).

16.	In the present case, the Trust is exceeding the limited scope of post-confirmation 2004 Examinations. Indeed, the Trust's Motion did not even acknowledge the limitation of the scope of a 2004 Examination conducted post-confirmation. It is submitted that the Motion could not meet the restriction on post-confirmation 2004 Examinations because the matters that are the subject of the Motion involve assets belonging to the Trust not to the Bankruptcy Estate.

17.	While it is acknowledged that a Court has authority over a confirmed Chapter 11 case, Courts have recognized the competing interests between retaining jurisdiction after confirmation until after final decree (See, Bankruptcy Rule 3020), and ending the monitoring status of reorganization. Moreover, it is acknowledged that the Bankruptcy Court's jurisdiction continues post-confirmation to "protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." Id, quoting *In re: Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2nd Circuit, 1966). See also, 11 U.S.C. §1142.

18.	Dr. Blanchard is in need of an Order of protection setting forth the scope of the 2004 examination as well as the scope of the documents the Trust may subpoena. It is submitted that Dr. Blanchard's examination should be limited to the scope allowed in post-confirmation matters as well as should start in the afternoon. It is further submitted that Dr. Blanchard should not have to produce his Personal Trust and the Trust of his children or any other documents that exceed the scope set forth by the Trust in its Motion to obtain the Order permitting Dr. Blanchard's 2004 Examination, as well as that exceed the permissible scope of post-confirmation 2004 Examinations.

///

**B.  Dr. Blanchard Has Not Waived His Right To Object To The Scope of The 2004 Examination**

19. The Trust has argued that Dr. Blanchard has waived his objection to the Subpoena related to his 2004 Examination. In support of its argument, the Trust cites to *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). However, that case recognizes that in circumstances such as the present case, a non-party does not always have to be pro-active and raise a prior objection to the Subpoena. The *Moon* Court stated a non-party does not waive an objection if the subpoena is overbroad on its face and exceeds the bounds of fair discovery. Id. at p.366. Here it is patently obvious that the Subpoena is overbroad on its face as well as convoluted and confusing. Additionally, the Subpoena exceeds the bounds of fair discovery in the limited context of a post-confirmation case.

20. Furthermore, in the case of *Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123 (D.C.N.J. 1989), it was held that defendants did not waive their entitlement to a protective order by their delay in seeking the Order until eight (8) months after discovery was due to be produced and four (4) months after Plaintiff's moved for an Order compelling discovery when the information sought is subject to a claim of confidentiality.

21. Review of the Subpoena at issue indicates that the Trust is seeking many private and personal documents of a confidential nature. The Trust has made no showing that such documents are necessary and appropriate or within the limited scope of a post-confirmation 2004 Examination.

22. In determining whether the Trust has established "good cause" as required under Rule 2004, the Court must weigh the competing interest of the parties. *In re: Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr.S.D.N.Y. 1991). Accordingly, the Court must weigh the need for the requested discovery against the interest of the party seeking to protect the

information. Id.

23. In the instant case, the Trust cannot provide any legitimate, good cause basis for the relevancy or the need of all of the requested information. While it is difficult to decipher the Subpoena, it is possible that the Trust believes it is entitled to obtain personal, confidential and financial information of Dr. Blanchard, who has a legitimate private interest in his personal, confidential and financial information. See, e.g., *Whalen v. Roe,* 429 U.S, 589 (1977)(recognizing fundamental constitutional right to privacy includes the right to informational privacy).

24. As indicated above, the Trust has no legitimate need to obtain copies of Dr. Blanchard's personal Trust and the Trust of his children. Also, Dr. Blanchard should not have to produce personal, confidential, financial information to the Trust.

25. To the extent this Court deems some personal, confidential, financial information is appropriate to the scope of the 2004 Examination of Dr. Blanchard, then it is respectfully requested an Order be entered preserving the confidentiality of that information and sealing that information so that it is not publicly disseminated.

## CONCLUSION

Based on the foregoing, it is abundantly apparent that the Trust is not acting in a reasonable manner and is exceeding the permitted scope of post-confirmation 2004 Examinations. It is necessary for this Court to review the Trust's Subpoena and determine its proper scope. It is respectfully requested that this Court enter a Protective Order setting forth that Dr. Blanchard does not have to present for his examination unless scheduled in the afternoon so that he can attend to his patients in the morning, as well as maintain the confidentiality of Dr. Blanchard's personal, financial information. Therefore, this Court should deny the Trust's Motion to have Dr. Blanchard held in contempt and Grant Dr. Blanchard's Countermotion for

1  Protective Order.

2      DATED this 21st day of September, 2007.

                                              GOOLD PATTERSON ALES & DAY

                                              BY: _____
                                              Kelly J. Brinkman, Esq.
                                              Nevada Bar No. 6238
                                              Barney C. Ales, Esq.
                                              Nevada Bar No. 0127
                                              4496 South Pecos Road
                                              Las Vegas, Nevada 89121

**AFFIDAVIT OF BARNEY C. ALES**

STATE OF NEVADA      )
                     ) ss.
COUNTY OF CLARK      )

I, BARNEY C. ALES, declare and state:

1. I am a member of the law firm of Goold, Patterson, Ales & Day; that I have personal knowledge of the facts set forth herein; that I am competent to testify to those facts; and I make this Affidavit in support of the foregoing OPPOSITION TO LIQUIDATING TRUST'S APPLICATION FOR ORDER TO SHOW CAUSE WHY DR. LUCIUS BLANCHARD SHOULD NOT BE HELD IN CONTEMPT OF COURT AND COUNTERMOTION FOR A PROTECTIVE ORDER.

2. That I have prepared and read the foregoing OPPOSITION TO LIQUIDATING TRUST'S APPLICATION FOR ORDER TO SHOW CAUSE WHY DR. LUCIUS BLANCHARD SHOULD NOT BE HELD IN CONTEMPT OF COURT AND COUNTERMOTION FOR A PROTECTIVE ORDER and all of the facts set forth therein are true and correct.

3. Contrary to the Declaration of attorney Eric Madden submitted in support of the APPLICATION FOR ORDER TO SHOW CAUSE WHY DR. LUCIUS BLANCHARD SHOULD NOT BE HELD IN CONTEMPT OF COURT, I did not request a postponement of Dr. Blanchard's examination until mid-September; I only requested a 3-hour delay so that Dr. Blanchard could attend to his patients in the morning prior to his trip out-of-town that was planned to commence the day after the originally scheduled examination.

4. I also did not request Dr. Blanchard's examination to be continued to September 12, 2007. That was a date selected by attorney Madden, which was a date Dr. Blanchard would be available if attorney Madden chose to reschedule Dr. Blanchard's examination to a date after

13

Dr. Blanchard returned from his extended trip. However, before attorney Madden chose to reschedule Dr. Blanchard's examination for September 12, 2007, attorney Madden indicated he did not want to wait until Dr. Blanchard returned from his extended trip to proceed with the examination. Then attorney Madden changed his mind and scheduled Dr. Blanchard's examination for September 12, 2007, but by that time Dr. Blanchard had expected to proceed on the original examination date and had rescheduled his patients, so that September 12, 2007 was no longer available. By the time attorney Madden decided to reschedule Dr. Blanchard's examination, Dr. Blanchard's first available date was September 25, 2007, which was an agreeable date to attorney Madden for Dr. Blanchard's examination

5. I did not request attorney Madden to reschedule Dr. Blanchard for September 12 or September 25, 2007, those dates were selected by attorney Madden.

6. I did attempt to discuss the scope of the Subpoena with attorney Madden and his associate, Michael Yoder. However, there attitude was that the scope of the Subpoena was entirely appropriate and found it difficult to believe that Dr. Blanchard did not have many documents responsive to the Subpoena.

7. I have provided a list of documents that are responsive to the Subpoena including documents that are related to Dr. Blanchard's personal Trust and children's Trust. I proposed providing those documents with the exception of the Trust documents pending an agreement as to maintaining the confidentiality of the Trust documents. My suggestion was rebuffed.

///

///

///

///

14

8. I also suggested that the examination of Dr. Blanchard be postponed until the Court had an opportunity to consider the proper scope of the Subpoena and again that suggestion was rebuffed.

BARNEY C. ALES

SUBSCRIBED AND SWORN TO before me this 21st day of September, 2007.

Notary Public

Notary Public - State of Nevada
County of Clark
RODY H. SCOTT
No: 99-53796-1
My Appointment Expires
March 3, 2011

15