FILED AND ENTERED
ON DOCKET

OCT 5   2 23 PM '07

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Larry & Patsy Rieger, trustees
The Larry L. Rieger and Patsy R. Rieger Revocable Trust dtd 8/14/91
2615 Glen Eagles Drive
Reno, NV 89523

September 26, 2007

U.S. Govt. Bankruptcy Court
300 S. Las Vegas Blvd.
Las Vegas, NV 89101
VIA CERTIFIED MAIL

Re:    Case #BK S 06-10725-LBR, Claim #01739 Rieger
       Objection to Debtor's Motion for Summary Judgment (DE #4811 filed on 9/14/07
       (Debtor's Reply in Support of Motion for Summary Judgment Regarding Secured
       and Priority Claims)

Claimants object to Debtor's Reply in Support of Motion For Summary Judgment. This
motion requests the Court reclassify Claimants' claim from Priority to general unsecured
claim. Claimant specifically objects to section II, Replies to Individual Claimants, (G)
Rieger Claim No. 10725-01739. Under this, Section, #2, second paragraph, Debtor states
that Rieger "misstates or ignores …facts that are beyond dispute".  Claimant hereby
respectfully disagrees with the allegations in the Motion for Summary Judgment. The
following are addressed by Claimant, below:
   1) The Court, after notice and a hearing, authorized USA to release the Amesbury
      Units in exchange for the sale proceeds.
      --Claimant contends that the Court was not fully apprised of the facts and
      stipulations included in the Amesbury Loan Agreement (excerpt attached hereto,
      Exhibit 1) section 2.4, Unit Release Provisions. This document states therein,
      "Borrower shall pay to Lender, together with any applicable Exit Fees, an amount
      (the "Release Price") equal to 94% of the Net Proceeds from sale of the Unit…".
      Debtor may argue that the Court was advised that the loan was in default when
      motion was made to accept net proceeds in exchange for the unit releases;
      however, Claimant responds to that argument with the contention that the motion
      was vague in regard to the terms of the note, i.e., principal payment must be paid
      in exchange for unit releases. The practice of collecting incomplete payments
      from the borrower and crediting those amounts to fees and interest was in effect
      the fraud committed against the Amesbury investors from the loan origination
      date for a period of 3 ½ years until the bankruptcy date. Claimant contends that
      the post-petition Debtor continued this breach of fiduciary duty toward the
      investors by perpetuating this practice. In addition, the Debtor's knowledge of the
      pre-petition misappropriation of Amesbury payments is substantiated by the fact
      that the original bankruptcy schedules indicate that the Amesbury loan was
      included in the loans wherein principal was "diverted" or stolen (see copy of
      original Debtor's bk schedule F-1, page 50 showing Rieger holding unremitted
      principal from Amesbury $12,915.28). Subsequent documents (see copies of

1

USA Capital Loan Summaries 4/27/06, 5/26/06 and 6/30/06) show that the Debtor implemented a method of "reclassification" of a substantial amount of that "diverted" principal and applied it as payment toward "prepaid interest"; hence, the lenders' statements indicated an increase in the principal balance on some of their loan investments, including Amesbury. In addition to having their underlying collateral substantially devalued, the investors ended up paying a higher rate of income taxes on those amounts "reclassified" as interest income rather than return of capital as would be proper.

2) USACM received the sale proceeds.
-Claimant is not disputing this fact; however, we are claiming that the sale proceeds were not distributed properly, as principal payments, to the lenders.

3) Rieger's share of the sale proceeds was credited against prepaid interest Rieger owed USACM...
-Claimant contends this statement is untrue. The facts show that Rieger's "prepaid interest" liability was satisfied prior to the events surrounding the Amesbury loan post-petition payments. Proof of this fact is attached hereto, copies of USACM statements for the account of Larry L. & Patsy R. Rieger Revocable Trust, dated 4/12/06 indicating "prepaid interest" obligation; also the next issued statement dated 6/30/06 showing, among other amounts, principal payment in the amount of $200,000 from the HFA North Yonkers loan more than satisfying the Riegers' entire "prepaid interest" obligation on all of Riegers' loans. Also included are copies of The Rieger's Investor History Report for the HFA Yonkers loan as well as the Amesbury loan, proving that principal payment was received from HFA Yonkers borrower on 5/26/06, prior to the Amesbury payment on 5/30/06, Considering these facts, Claimant does not understand why the "prepaid interest" issue was brought up to be used as an argument in this case, being pursued within the Debtor's motion for Summary Judgment in great detail, when it does not make any sense. In any event, the Debtor's statement that "although Rieger did not receive cash from the sale, Rieger benefited because USACM applied Rieger's share of the net proceeds to reduce USACM's claim for prepaid interest against Rieger" is misstated and false.

In light of the facts, Claimant will continue to contend that the amount distributed to the Riegers for their share of the borrower's post-petition payments in exchange for release of the lenders' collateral, in this lender's case $29,722.67, should have been applied as principal payment according to the terms of the note, which the Debtor was obligated to adhere to in its' fiduciary capacity to the Lenders, under the loan agreement.

Claimant also takes issue with misstatements within Susan M. Smith's Declaration, which is attached to Debtor's motion for Summary Judgment. Some of these misstatements are the basis for Debtor's statements in the Motion (i.e., alluding to the "prepaid interest" liability being satisfied by the Amesbury payments – which is disputed by Claimant in detail, above). Also, part of Ms. Smith's Declaration refers to the Amesbury Promissory Note, under Loan Agreement, #1. Promise to Pay. In #14 of her Declaration, she quotes "All payments received will be applied (a) first, to any of the following then due and payable *in such order and manner as the Lender in its sole*

*discretion* shall determine: fees, charges, costs, expenses, late fees, interest or principal..." (Emphasis added). Claimant contends that the Loan Agreement does *not* say "payments will be applied in *this* particular order: fees, charges, costs, expenses, late fees, interest or principal". It says, specifically, that *the Lender shall determine* in which order those amounts are paid. At no time, pre- or post-petition, were the lenders (nor was the Court) consulted as to the application of payments received from the borrower in amounts that did not satisfy the accrued amounts due on the loan. Neither was The Court advised of this stipulation in the Promissory Note. Claimant contends that the indiscriminate prioritization of fees and interest over the Lenders' principal reduction amounted to breach of fiduciary duty. Very possibly there was some undisclosed pre-petition agreement with the borrower to not make full payments due over the course of the outstanding loan, and still have the units released by the Lenders' agent, causing great financial harm to the Investors by reduction of the loan's underlying collateral down to a fraction of what it should be in relation to the amount still owing on the loan. Any such agreement would be fraudulent and reckless disregard of the loan servicer's fiduciary duty to the Lenders and should not have been perpetuated by the post-petition Debtor. The Court should have been made fully aware of this situation before being asked to approve the post-petition release of those last three units, which caused even further harm to the unknowing Lenders.

Based on the above, along with attached supporting exhibits, and documentation submitted in support of our proof of claim, we are objecting to Debtor's Motion for Summary Judgment to reclassify Rieger's claim for priority status of a portion of our Claim #10425-01739. Claimant maintains that the proportionate amount of our claim applicable to this post-petition breach ($32,844.00) should be classified as priority status.

This letter should be regarded as our compliance with Local Rule 3007(b), as written response served to the objecting party and filed with the Court.

Respectfully submitted,

Larry L. Rieger, Ttee

Patsy R. Rieger, Ttee

(775) 746-1439

Case Number: 06-10725, Proof of Claim #10725-01739
Cc:
Lewis and Roca
Susan M. Freeman
Rob Charles
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169-5996

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

*DE#4811*

3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8320
Facsimile: (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199 (Pro Hac Vice)
E-mail: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
E-mail: rcharles@lrlaw.com
John Hinderaker, AZ State Bar No. 018024 (Pro Hac Vice)
E-mail: jhindera@lrlaw.com

Attorneys for the USACM Liquidating Trust

E-Filed on
9/14/07

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10727-LBR |
| | Case No. BK-S-06-10728-LBR |
| | Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Jointly Administered Under Case No. BK-S-06-10725-LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | **Reply in Support of Motion For Summary Judgment Regarding (1) Responses To The USACM Liquidating Trust's First Through Thirty-Third Omnibus Objections To Claims Asserting A Secured Status; (2) Responses to USACM Trust's First Through Third Omnibus Objections To Claims Asserting A Priority Status; And (3) Newly Alleged Secured And Priority Claims** |
| USA SECURITIES, LLC, | |
| Debtors. | |
| Affects: | |
| ☐ All Debtors | |
| ☒ USA Commercial Mortgage Company | |
| ☐ USA Capital Realty Advisors, LLC | **Hearing Date: October 15, 2007** |
| ☐ USA Capital Diversified Trust Deed Fund, LLC | **Time: 9:30 a.m.** |
| ☐ USA Capital First Trust Deed Fund, LLC | |
| ☐ USA Securities, LLC | |

The USACM Liquidating Trust (the "USACM Trust") files this Reply in Support of its pending Motion for Summary Judgment (the "Motion") [DE 4291]. The Motion challenges Direct Lender claims that wrongly assert secured and/or priority status and requests that the Court re-designate those claims as general unsecured claims. The Motion does not, as some of the claimants apparently fear, threaten Direct Lender interests in deeds of trust or mortgages granted by borrowers to secure loans brokered by USACM.

# LOAN AGREEMENT COPY

This Loan Agreement (the "Agreement") is executed as of the _____18_____ day of December, 2002 by and between the Borrower, who hereby agrees to borrow, and the Lender, who hereby agrees to lend, the amounts set forth below under the Note subject to and in accordance with the following terms and conditions

## 1    DEFINITIONS

When used herein, the terms set forth below shall be defined as follows

1 1    "**Architect's Contract**" shall mean the contracts for architectural services relating to the Project entered into between Borrower and the applicable architect

1 2    "**Borrower**" means Amesburyport Corporation, a Massachusetts corporation

1 3    "**Borrower's Notice Address**" is Damonmill Square, 9 Pond Lane, Concord, MA 01742

1 4    "**Budget**" means that certain development budget (the "Development Budget"), which shall include all costs of constructing the improvements related to the Project  The Development Budget is attached hereto as **Exhibit "A"**

1 5    "**Collateral**" is collectively all property now or hereafter pledged, mortgaged, assigned, hypothecated or otherwise provided to the Lender as collateral security for the obligations evidenced by the Loan Documents, whether to secure the Note, this Loan Agreement, or any other instrument, indebtedness or undertaking

1 6    "**Commitment Fee**" is $1,305,000

1 7    "**Completion Date**" means sixty (60) days prior to the Maturity Date, by which date the Project shall be substantially complete, except for punch list items that shall be completed within the next thirty (30) days, and certifications of occupancy issued

1 8    "**Contractor**" means Kaplan Corporation, or any other general contractor which Lender has approved in writing

1 9    "**Control Account**" means Disbursement Agent's account in which the Control Account Funds shall be held

1 10    "**Control Account Escrow Agreement**" means the Construction Loan Disbursement Agreement by and between Borrower, Lender and Disbursement Agent of even date herewith

2 4    Unit Release Provisions

(a) Upon the sale of each Unit to a bona fide, third party purchaser for value, Borrower shall pay to Lender, together with any applicable Exit Fees, an amount (the "Release Price") equal to ninety-four percent (94%) of the Net Proceeds from sale of the Unit until (a) an aggregate of $6,500,000 has been repaid on the Loan and (b) the Lender reasonably determines that the Loan has been sufficiently reduced so that the Loan To Value ratio is less than fifty percent (50%)  Following Lender's determination that the preceding clauses (a) and (b) have been satisfied, the Release Price shall be adjusted so that Borrower shall pay to Lender, upon the sale of each Unit to a bona fide, third party purchaser for value a release price equal to ninety-two percent (92%) of the Net Proceeds from sale of the Unit, together with any applicable Exit Fees (which shall be paid to Lender's Representative), through the remaining term of the Loan Notwithstanding the foregoing, Lender shall only be obligated to release Units as described above if, at the time Borrower satisfies the above conditions, there does not exist any Event of Default beyond all applicable grace and/or cure periods  As used herein, "Net Proceeds" means the gross sale price of the Unit, less usual and customary closing adjustments and costs (i e  documentary stamps, recording fees and reasonable attorney's fees)  Borrower and Lender agree that the minimum gross sale price for each Unit shall be according to Schedule A attached hereto

(b) Upon Lender making the Additional Advance (as defined in Section 2 6), Borrower shall also pay the Exit Fee to Lender's Representative, together with the applicable Release Price as provided for herein  If the Loan is repaid at any time that Units are subject to accepted offers to purchase or purchase and sale agreements, such repayment shall include payment of Exit Fees (which shall be paid to Lender's Representative) based on the greater of (1) the anticipated gross sales proceeds from such Units or (2) the minimum gross sale price for such Units according to Schedule A attached hereto

(c) In the event any brokerage fees are/become due in connection with the sale of a Unit, such brokerage fees shall be limited to not more than two percent (2%) of the sale price of the Unit if the broker is a person or entity related to Borrower

(d) Notwithstanding anything contained herein to the contrary, the Release Price for Unit #807 shall be "zero" provided that the Net Proceeds from the sale are recycled into the Project by the Borrower to, in part, make up Borrower's Initial Equity Contribution

In re _____ USA Commercial Mortgage Company _____ ,          Case No. 06-10725-LBR
                          Debtor                                            (If known)

### SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### EXHIBIT F-1 - CREDITORS HOLDING UNREMITTED PRINCIPAL

| Creditor Name | Mailing Address | Loan Name | Unremitted Principal |
|---|---|---|---|
| KTaylorGO Investments, LTD, a Texas company | P. O. Box 911209 St. George, UT 84791 | Oak Shores II | $20,477.82 |
| KTaylorGO Investments, LTD, a Texas company | P. O. Box 911209 St. George, UT 84791 | Roam Development Group | $2,329.94 |
| L. Ronald Trepp & Jacqueline P. Trepp Trustees of the L. Ronald Trepp & Jacqueline P. Trepp Family Trust | 13829 Jolly Roger Street Corpus Chrisi, TX 78418 | Bay Pompano Beach | $23,313.25 |
| L. V. Knight & Margaret E. Knight, husband & wife, as joint tenants with right of survivorship | 529 Shasta Ave Oroville, CA 95965 | Bay Pompano Beach | $12,951.80 |
| Laila Aziz, a single woman | 9785 Ice Box Canyon Ct Las Vegas, NV 89117 | Beastar, LLC | $21,792.24 |
| Lammert Kuiper, Jr. & Audrey Kuiper, husband & wife, as joint tenants with right of survivorship | 1120 Broken Hills Drive Henderson, NV 89015 | Beau Rivage Homes/$8,000,000 | $72.99 |
| Larry Apigian & Leona Apigian, husband & wife, as joint tenants with right of survivorship | 172 Woodland Road Goldendale, WA 98620 | Freeway 101 | $41,666.67 |
| Larry B. Bartholomew & Karen S. Bartholomew Trustees of the Bartholomew Family Trust under agreement dated 7/1/99 | P O Box 521 American Fork, UT 84043 | Freeway 101 | $83,333.33 |
| Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | 204 W. Mill Valley Drive Colleyville, TX 76034 | Bay Pompano Beach | $12,951.80 |
| Larry D. Sargent & Marjean Sargent, husband & wife, as joint tenants with right of survivorship | 26813 Oak Branch Circle Newhall, CA 91321 | Bay Pompano Beach | $12,951.80 |
| Larry E. Colborn & Loretta A. Colborn Trustees for the Colborn Revocable Living Trust dated 8/6/90 | 38831 Parker Ridge Way Palm Desert, CA 92260 | Lake Helen Partners | $98.02 |
| Larry E. Hanan Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02 | 4410 Endicott Place Tampa, FL 33624 | The Gardens, LLC $2,425,000 | $10,309.28 |
| Larry H. Anderson and Frank Cornwell, Trustees of the Fred L. Baybarz and Carolyn C. Baybarz Foundation | 13250 Mahogany Dr Reno, NV 89511 | Bay Pompano Beach | $12,951.80 |
| Larry J. Newman & Elsie D. Newman Trustees of the Newman Family Trust dated 9/30/97 | 1150 Monroe Court Reno, NV 89509 | Del Valle Isleton | $5,507.25 |
| Larry J. Newman & Elsie D. Newman Trustees of the Newman Family Trust dated 9/30/97 | 1150 Monroe Court Reno, NV 89509 | Preserve at Galleria, LLC | $400.19 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 2615 Glen Eagles Drive Reno, NV 89523 | Amesbury/Hatters Point | $12,915.28 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 2615 Glen Eagles Drive Reno, NV 89523 | Freeway 101 | $166,666.67 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 2615 Glen Eagles Drive Reno, NV 89523 | Roam Development Group | $2,912.42 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 2615 Glen Eagles Drive Reno, NV 89523 | The Gardens, LLC Timeshare | $1,699.89 |
| Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 2615 Glen Eagles Drive Reno, NV 89523 | Universal Hawaii | $148,056.25 |
| Larry Laub & Betty Morris-Laub, husband & wife, as joint tenants with right of survivorship | 18532 Spicer Lake Court Reno, NV 89506 | Amesbury/Hatters Point | $190.32 |
| Larry M. Brown & Marie S. Brown, husband & wife, as joint tenants with right of survivorship | 7020 Earldom Avenue Playa Del Rey, CA 90293 | Bay Pompano Beach | $25,903.59 |
| Larry M. Brown & Marie S. Brown, husband & wife, as joint tenants with right of survivorship | 7020 Earldom Avenue Playa Del Rey, CA 90293 | Roam Development Group | $2,329.94 |

Exhibit A

| Performance Evaluation (4-27-06)* | Loan Name | No of Investors | Origination Date | Outstanding Loan Amount | Unpaid Interest as of 3/31/2006 less April collections | DIF | CFT | CM | Total Held by Investors |
|---|---|---|---|---|---|---|---|---|---|
| Performing | 3685 San Fernando Road Partners | 83 | 8/2/05 | 7,350,000 | - | | 1.12% | | 98.54% |
| Performing | 5055 Collwood, LLC | 33 | 2/24/06 | 1,500,000 | | | | | 100.00% |
| Performing | 5252 Orange, LLC | 66 | 12/22/05 | 3,800,000 | | | | | 100.00% |
| Performing | 60th Street Venture, LLC | 49 | 12/22/05 | 3,700,000 | | | | | 100.00% |
| Non-Performing | 6425 Gess, LTD | 286 | 4/14/05 | 26,500,000 | 1,946,126 | 15.18% | 2.63% | 0.25% | 97.37% |
| Non-Performing | Amesbury/Hatters Point | 393 | 12/16/02 | 18,552,955 | 1,837,338 | | 1.72% | | 82.31% |
| Non-Performing | Anchor B, LLC | 50 | 5/31/05 | 5,835,422 | 578,273 | | 33.36% | | 66.64% |
| Non-Performing | Ashby Financial $7,200,000 | 73 | 5/3/04 | 7,200,000 | 1,665,600 | 2.08% | | | 97.92% |
| Performing | B & J Investments¹ | 1 | 9/29/99 | 653,125 | 477,034 | | | | 100.00% |
| Non-Performing | BarUSA/$15,300,000 | 221 | 11/24/03 | 15,300,000 | 544,617 | 0.07% | | | 99.93% |
| Non-Performing | Bay Pompano Beach | 407 | 6/2/05 | 16,285,686 | 20,413 | 0.47% | 1.20% | | 98.33% |
| Non-Performing | Beastar, LLC¹ | 84 | 5/2/05 | 3,125,000 | | | 5.93% | | 94.07% |
| Non-Performing | Beau RIvage Homes/$3,000,000 | 157 | 1/2/03 | 432,349 | 202,076 | | | | 99.36% |
| Performing | Binford Medical Developers | 92 | 8/31/05 | 7,450,000 | - | | 17.25% | | 82.75% |
| Performing | Bose/Gowen 93 | 17 | 8/28/05 | 2,425,000 | | | | | 100.00% |
| Performing | Brookmere/Matteson $27,050,000 | 229 | 10/29/03 | 5,929,393 | | | 34.20% | | 65.80% |
| Performing | Bundy Canyon $1,050,000 | 1 | 1/6/06 | 1,050,000 | | | | | 100.00% |
| Performing | Bundy Canyon $2,500,000 | 34 | 5/2/05 | 2,300,000 | | | | | 100.00% |
| Performing | Bundy Canyon $5,000,000 | 43 | 9/28/05 | 4,250,000 | | | | | 100.00% |
| Non-Performing | Bundy Canyon $5,725,000 | 53 | 1/14/05 | 5,725,000 | 60,282 | | | 0.71% | 99.29% |
| Performing | Bundy Canyon $7,500,000 | 83 | 8/17/05 | 6,700,000 | | | | | 100.00% |
| Performing | Bundy Canyon $8.9 | 117 | 4/5/06 | 8,900,000 | | | | | 100.00% |
| Performing | BySynergy, LLC $4,434,446 | 3 | 2/3/06 | 4,434,446 | | 51.48% | 35.34% | 13.18% | 100.00% |
| Performing | Cabernet | 65 | 2/17/05 | 3,000,000 | | | | | 100.00% |
| Non-Performing | Castaic Partners II, LLC | 57 | 7/11/05 | 5,600,000 | 137,553 | | 7.59% | | 92.41% |
| Performing | Castaic Partners III, LLC | 65 | 9/22/05 | 4,675,000 | | | 0.53% | 1.07% | 98.40% |
| Performing | Charlevoix Homes, LLC | 40 | 4/3/06 | 3,400,000 | | | | 100.00% | 100.00% |
| Performing | Clear Creek Plantation | 36 | 3/15/05 | 2,900,000 | - | | 3.45% | | 96.55% |
| Performing | Cloudbreak LV | 2 | 12/17/03 | 3,800,000 | | 0.49% | 99.51% | | 0.00% |
| Non-Performing | Colt DIV added #1¹ | 1 | Undetermined | 1,500,000 | 736,776 | 100.00% | | | 100.00% |
| Non-Performing | Colt DIV added #2¹ | 1 | Undetermined | 3,100,000 | 1,078,165 | 100.00% | | | 100.00% |
| Non-Performing | Colt Gateway | 3 | 1/17/03 | 3,514,069 | 3,220,735 | 42.53% | | | 57.47% |
| Non-Performing | Colt Second TD | 1 | 8/19/03 | 1,000,000 | 484,412 | | | 100.00% | |
| Performing | Columbia Managing Partners | 1 | 9/1/05 | 2,210,000 | - | | 100.03% | | |
| Performing | ComVest Capital | 56 | 1/11/06 | 4,125,000 | - | | 17.82% | | 82.18% |
| Performing | Copper Sage Commerce Center Phase II | 51 | 3/1/06 | 3,550,000 | - | | | 1.83% | 98.17% |
| Non-Performing | Copper Sage Commerce Center, LLC | 28 | 6/9/04 | 179,106 | 9,226 | | | | 99.36% |
| Performing | Corman Toltec 160, LLC | 96 | 6/24/05 | 6,375,000 | | | | 0.08% | 99.92% |
| Non-Performing | Cottonwood Hills, LLC | 21 | 6/14/05 | 4,000,000 | 48,222 | | 25.00% | | 75.00% |
| Non-Performing | CREC Building Colt¹ | 1 | Undetermined | 3,718,777 | 1,650,349 | 100.00% | | | |

| Performance Evaluation | Loan Name | Origination Date | Loan Outstanding | Interest Outstanding | Interest Prepaid to Investors [5] | Collection Account | | | Due to | | | No of Investors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Interest | Principal | Service Fee | OIV Fund | First Trust | Direct Investors | |
| Performing | 3685 San Fernando Road Partners, L.P. | 8/2/05 | 7,350,000 | | | 174,358 | | (12,250) | | 1,809 | 159,748 | 83 |
| Performing | 5055 Collwood, LLC[2] | 2/24/06 | 1,438,611 | 22,500 | | 23,250 | 61,389 | (1,250) | | | 83,389 | 33 |
| Performing | 5252 Orange, LLC[2] | 12/22/05 | 3,800,000 | 45,789 | | 70,111 | | (3,167) | | | 66,944 | 66 |
| Performing | 60th Street Venture, LLC[2] | 12/22/05 | 3,700,000 | 45,715 | | 67,085 | | (3,083) | | | 64,002 | 49 |
| Non-Performing | 6425 Cess, LTD | 4/14/05 | 26,500,000 | 2,208,261 | 1,770,800 | | | | | | | 286 |
| Non-Performing | Amesbury/Hatters Point (Amersburyport Corporation) | 12/16/02 | 18,672,455 | 2,042,221 | | 569,738 | | TBD | | | | 393 |
| Non-Performing | Anchor B, LLC | 5/31/05 | 5,835,422 | 636,627 | 517,607 | | | | | | | 50 |
| Non-Performing | Ashby Financial $7,200,000[6] | 5/9/04 | 7,200,000 | 1,737,600 | 1,591,201 | | | | | | | 73 |
| Non-Performing | B & J Investments[1] | 9/29/99 | 275,000 | 469,008 | TBD | | | | | | | 1 |
| Non-Performing | BarUSA/$15,300,000 (Barusa, LLC) | 11/24/03 | 15,300,000 | 710,367 | TBD | | | | | | | 221 |
| Non-Performing | Bay Pompano Beach, LLC | 6/20/05 | 15,394,550 | 256,573 | TBD | | 891,137 | | | | | 407 |
| Repaid | Beastar, LLC[4] | 5/2/05 | | | TBD | | | | | | | 84 |
| Repaid | Beau Rivage Homes/$9,000,000[4] | 1/2/03 | | | TBD | | | | | | | 157 |
| Performing | Binford Medical Developers, LLC | 8/31/05 | 7,450,000 | | | 156,271 | | (12,417) | | 24,812 | 119,042 | 92 |
| Performing | Boise/Gowen 93, LLC[2] | 8/26/05 | 2,425,000 | 25,260 | | 26,189 | | (2,021) | | | 24,168 | 17 |
| Performing | Brookmere/Matteson $27,050,000[7] | 10/29/03 | 5,904,384 | 39,036 | | 54,553 | 25,000 | | | 27,205 | 52,347 | 229 |
| Performing | Bundy Canyon $1,050,000[7] (Bundy Canyon Land Development, LLC) | 1/6/06 | 1,050,000 | 15,925 | 23,333 | 36,021 | | | | | 12,688 | 1 |
| Performing | Bundy Canyon $2,500,000[7] (Bundy Canyon Land Development, LLC) | 5/2/05 | 2,300,000 | 27,625 | | 25,747 | | (1,917) | | | 23,831 | 34 |
| Performing | Bundy Canyon $5,000,000[7] (Bundy Canyon Land Development, LLC) | 9/23/05 | 4,250,000 | 46,042 | | 45,576 | | (3,542) | | | 41,738 | 43 |
| Performing | Bundy Canyon $5,725,000[7] (Bundy Canyon Land Development, LLC) | 1/14/05 | 5,725,000 | 123,285 | | | | | | | | 53 |
| Performing | Bundy Canyon $7,500,000 (Bundy Canyon Land Development, LLC) | 8/17/05 | 6,700,000 | 73,305 | | 72,926 | | (5,583) | | | 67,343 | 83 |
| Performing | Bundy Canyon $8,9 (Bundy Canyon Land Development, LLC) | 4/5/06 | | | | | | | | | | 117 |
| Performing | BySynergy, LLC $4,434,446 | 2/3/06 | 4,434,446 | | | | | | | | | 3 |
| Performing | Cabernet Highlands, LLC | 2/17/05 | 3,000,000 | 10,125 | 7,886 | 76,250 | | (5,000) | | | 63,364 | 65 |
| Non-Performing | Castaic Partners II, LLC | 7/11/05 | 5,600,000 | 198,220 | 87,208 | | | | | | | 57 |
| Performing | Castaic Partners III LLC | 9/22/05 | 4,675,000 | 50,646 | 97,795 | 149,157 | | (11,667) | | 212 | 39,038 | 65 |

**Preliminary Numbers Subject to Revision**

Prepare by MFIM, LLC

USA Capital
LOAN SUMMARY
AS OF June 30, 2006

| Performance Evaluation | Loan Name | Origination Date | Loan Outstanding at 6/30/2006 | Interest Outstanding at 6/30/2006 | Interest Prepaid to Direct Lenders | Collection Account | | | Due to Direct Lenders | Due to | | | No of Investors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Interest | Principal | Service Fee | | DIV Fund | First Trust | Individual Direct Lenders | |
| Non-Performing | 3985 San Fernando Road Partners, L P | 8/2/05 | 7,350,000 | 174,358 | | 174,358 | | 12,250 | 162,108 | | 1,809 | 159,748 | 83 |
| Performing | 5055 Collwood, LLC | 2/24/06 | 1,275,955 | 19,526 | | 68,849 | 224,045 | 6,167 | 286,726 | | | 286,726 | 33 |
| Repaid | 5252 Orange, LLC | 12/22/05 | | | | 191,977 | 3,800,000 | 10,450 | 3,981,527 | | | 3,981,527 | 66 |
| Performing | 59th Street Venture, LLC | 12/22/05 | 3,700,000 | 55,424 | | 170,226 | | 9,250 | 160,976 | | | 160,976 | 49 |
| Non-Performing | 6425 Gess, LTD | 4/14/05 | 26,500,000 | 2,806,860 | 1,679,821 | | | | | | | | 286 |
| Non-Performing | Amesbury/Hatters Point (Amesburyport Corporation) | 12/16/02 | 19,242,193 | 992,148 | 985,539 | 966,251 | | 79,547 | | | | | 393 |
| Non-Performing | Anchor B, LLC | 5/31/05 | 5,835,422 | 772,434 | 517,607 | | | | | | | | 50 |
| Non-Performing | Ashby Financial $7,200,000[4] | 5/9/04 | 7,200,000 | 1,884,000 | 1,591,201 | | | | | | | | 73 |
| Special Situation | B & J Investments[1] | 9/29/99 | | | | | | | | | | | 1 |
| Non-Performing | Bay(USA)/$15,300,000 (Barusa, LLC) | 1/12/403 | 15,300,000 | 1,112,604 | 366,213 | 1,121 | | 25,658 | 1,766,709 | 8,281 | 21,256 | 1,737,171 | 221 |
| Performing | Bay Pompano Beach, LLC | 6/20/05 | 14,748,415 | 163,348 | 107,732 | 275,222 | 1,824,877 | | | | | | 407 |
| Repaid | Beastar, LLC[2] | 5/0/05 | | | | | | | | | | | 84 |
| Repaid | Beau Rivage Homes/$8,000,000[2] | 1/2/03 | 65,051 | 10,138 | | | | 6,125 | 41,067 | | | 41,067 | 157 |
| Performing | Binford Medical Developers, LLC | 8/31/05 | 7,450,000 | 148,212 | | 173,213 | | 12,959 | 160,254 | | 27,641 | 132,613 | 92 |
| Performing | Boise/Gowen 93, LLC | 8/26/05 | 2,425,000 | | | 102,813 | | 6,053 | 96,750 | | | 96,750 | 17 |
| Non-Performing | Brookmere/Matteson $27,050,000[3] | 10/29/03 | 5,964,848 | 134,249 | 84,869 | 64,553 | | 5,652 | | | | | 229 |
| Performing | Bundy Canyon $1,050,000 (Bundy Canyon Land Development, LLC) | 1/6/06 | 1,050,000 | | 23,333 | 70,525 | | 6,125 | 41,067 | | | 41,067 | 1 |
| Non-Performing | Bundy Canyon $2,500,000 (Bundy Canyon Land Development, LLC) | 5/2/05 | 2,300,000 | 46,029 | | 56,119 | | 4,235 | 51,884 | | | 51,884 | 34 |
| Non-Performing | Bundy Canyon $5,000,000 (Bundy Canyon Land Development, LLC) | 8/3/05 | 4,250,000 | 124,565 | | 64,161 | | 4,672 | 59,489 | | | 59,069 | 43 |
| Non-Performing | Bundy Canyon $5,725,000 (Bundy Canyon Land Development, LLC) | 1/14/05 | 5,725,000 | | | 249,394 | | 18,873 | 230,521 | | | 230,521 | 53 |
| Non-Performing | Bundy Canyon $7,500,000 (Bundy Canyon Land Development, LLC) | 8/1/05 | 6,700,000 | 194,291 | | 101,957 | | 7,862 | 94,295 | | | 94,295 | 83 |
| Not Funded | Bundy Canyon $8 9 (Bundy Canyon Land Development, LLC) | 4/5/08 | | | | | | | | | | | 117 |
| Special Situation | BySynergy, LLC $4,434,446[1] | 2/3/06 | TBD | | | | | | | | | | 3 |
| Performing | Cabernet Highlands, LLC | 2/17/05 | 3,000,000 | 36,375 | 16,406 | 115,000 | | 7,500 | 91,094 | | | 91,094 | 65 |
| Non-Performing | Castaic Partners, LLC | 7/11/05 | 5,800,000 | 327,558 | 73,822 | | | | | | | | 57 |
| Performing | Castaic Partners III, LLC | 9/2/05 | 4,675,000 | 136,029 | 87,208 | 169,442 | | 13,025 | 68,209 | | 365 | 67,115 | 65 |
| Performing | Charlevoix Homes, LLC (Lindsay and Chandler Heights, LLC) | 4/3/06 | 3,400,000 | | | 132,978 | | 8,217 | 124,761 | | | 124,761 | 40 |
| Non-Performing | Clear Creek Plantation (Arapahoe Land Investments, LP) | 3/15/05 | 2,900,000 | 88,879 | | 18,499 | | 2,418 | 16,083 | | 555 | 15,529 | 36 |
| Non-Performing | Cloobeck LV (Cloudbreak Las Vegas, LLC) | 12/17/03 | 3,800,000 | 44,829 | 5,245 | 121,389 | | 9,590 | 106,644 | 527 | 106,117 | 0 | 2 |
| Non-Performing | Colt CREC Building (Colt Gateway LLC) | 9/29/03 | 3,718,777 | 1,928,526 | 565,564 | | | | | | | | 1 |
| Non-Performing | Colt DIV added #1 (Colt Gateway LLC) | 7/10/03 | 1,500,000 | 852,665 | 170,625 | | | | | | | | 1 |

Preliminary Numbers Subject to Revision

## USA Commerical Mortgage Company
### as Loan Servicing Agent for Loans Listed Below
### Loan Summary for Client ID 3147

## Individual Investments

**Vesting Name:** Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91

**Address:**
LARRY L RIEGER & PATSY R RIEGER REVOCABLE
TRUST DATED 8/14/91
C/O LARRY L RIEGER & PATSY R RIEGER TRUSTEES
2615 GLEN EAGLES DR
RENO, NV  89523-2080

| | Date | Status | Investment | Principal Balance | Principal Due to (from) Investor (by Lender) | Interest Due to (from) Investor (by Lender) | Total Due to (from) Investor |
|---|---|---|---|---|---|---|---|
| Amesbury/Hatters Point | 12/16/02 - 06/30/06 | Non-Performing | $475,000 | $434,995 | $0 | $339 | $339 |
| Fiesta USA/Stoneridge | 09/22/03 - 06/30/06 | Non-Performing | $100,000 | $100,000 | $0 | ($23,637) | ($23,637) |
| Opaque/Mt. Edge $7,350,000 | 11/06/03 - 06/30/06 | Non-Performing | $155,000 | $0 | $102,512 | $419 | $102,931 |
| Marquis Hotel | 03/26/04 - 06/30/06 | Non-Performing | $50,000 | $50,000 | $0 | ($9,188) | ($9,188) |
| The Gardens, LLC Timeshare | 03/24/04 - 06/30/06 | Performing | $50,000 | $34,153 | $15,847 | $1,664 | $17,512 |
| Ashby Financial $7,200,000 | 05/03/04 - 06/30/06 | Non-Performing | $120,000 | $120,000 | $0 | ($26,520) | ($26,520) |
| Mountain House Business Park | 06/01/04 - 06/30/06 | Performing | $50,000 | $50,000 | $0 | $2,047 | $2,047 |
| Fiesta Oak Valley | 06/15/04 - 06/30/06 | Non-Performing | $100,000 | $100,000 | $0 | ($16,430) | ($16,430) |
| Margarita Annex | 07/30/04 - 06/30/06 | Non-Performing | $250,000 | $250,000 | $0 | $2,534 | $2,534 |
| Shamrock Tower, LP | 08/05/04 - 06/30/06 | Non-Performing | $50,000 | $50,000 | $0 | ($7,130) | ($7,130) |
| Universal Hawaii | 08/06/04 - 06/30/06 | Repaid | $257,000 | $0 | $148,056 | ($128) | $147,928 |
| Freeway 101 | 08/09/04 - 06/30/06 | Repaid | $200,000 | $0 | $166,667 | ($333) | $166,334 |
| Tapia Ranch | 10/01/04 - 06/30/06 | Non-Performing | $150,000 | $150,000 | $0 | ($2,744) | ($2,744) |
| La Hacienda Estate, LLC | 11/11/04 - 06/30/06 | Performing | $280,000 | $280,000 | $0 | $10,560 | $10,560 |
| Placer Vineyards | 12/15/04 - 06/30/06 | Non-Performing | $200,000 | $200,000 | $0 | ($8,584) | ($8,584) |
| HFA- North Yonkers | 01/13/05 - 06/30/06 | Non-Performing | $200,000 | $0 | $200,000 | $4,680 | $204,680 |
| HFA- Clear Lake | 01/19/05 - 06/30/06 | Non-Performing | $120,000 | $120,000 | $0 | ($16,240) | ($16,240) |
| I-40 Gateway West | 01/11/05 - 06/30/06 | Performing | $125,000 | $125,000 | $0 | $4,664 | $4,664 |
| Roam Development Group | 03/07/05 - 06/30/06 | Performing | $125,000 | $122,088 | $2,912 | $1,678 | $4,590 |
| Bundy Canyon $2,500,000 | 05/02/05 - 06/30/06 | Performing | $100,000 | $100,000 | $0 | $2,512 | $2,512 |
| Midvale Marketplace, LLC | 06/30/05 - 06/30/06 | Non-Performing | $75,000 | $75,000 | $0 | ($2,943) | ($2,943) |
| Glendale Tower Partners | 06/09/05 - 06/30/06 | Performing | $200,000 | $200,000 | $0 | $4,443 | $4,443 |
| Del Valle - Livingston | 08/25/05 - 06/30/06 | Performing | $50,000 | $50,000 | $0 | $1,463 | $1,463 |
| Binford Medical Developers | 08/31/05 - 06/30/06 | Performing | $100,000 | $100,000 | $0 | $2,019 | $2,019 |
| J. Jireh's Corporation | 09/02/05 - 06/30/06 | Performing | $50,000 | $50,000 | $0 | $2,037 | $2,037 |
| Eagle Meadows Development | 10/24/05 - 06/30/06 | Non-Performing | $100,000 | $100,000 | $0 | $984 | $984 |
| Palm Harbor One | 12/14/05 - 06/30/06 | Non-Performing | $50,000 | $50,000 | $0 | $632 | $632 |
| ComVest Capital | 01/11/06 - 06/30/06 | Performing | $50,000 | $50,000 | $0 | $1,508 | $1,508 |
| Foxhill 216, LLC | 02/23/06 - 06/30/06 | Performing | $100,000 | $100,000 | $0 | $1,312 | $1,312 |
| Standard Property Development | 02/27/06 - 06/30/06 | Performing | $50,000 | $50,000 | $0 | $1,272 | $1,272 |
| Meadow Creek Partners, LLC | 02/23/06 - 06/30/06 | Performing | $95,000 | $95,000 | $0 | $2,644 | $2,644 |
| | | **Totals:** | $4,077,000 | $3,206,236 | $635,994 | ($64,466) | $571,528 |

This statement is provided for information purposes only and is intended for the sole benefit of the named vested party. This statement is not intended to represent a loan payoff quote. USA reserves the right to update and supplement this statement.

**Prepared by MFIM, LLC**                      **THIS STATEMENT REFLECTS THE STATUS THROUGH JUNE 30, 2006.**

# USA Commerical Mortgage Company
## as Loan Servicing Agent for Loans Listed Below
### Loan Summary for Client ID 3147

## Individual Investments

Vesting Name: Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated
Address: 8/14/91
LARRY L RIEGER & PATSY R RIEGER REVOCABLE
TRUST DATED 8/14/91
C/O LARRY L RIEGER & PATSY R RIEGER TRUSTEES
2615 GLEN EAGLES DR
RENO, NV 89523-2080

| Loan Name | Dates | Performance Evaluation | Original Investment | Current Investment | Principal Due to (from) Investor - USA CMC | Interest Due to (from) Investor - USA CMC | Total Due to (Owed from) Investor |
|---|---|---|---|---|---|---|---|
| Amesbury/Hatters Point | 12/16/02 - 04/12/06 | Non-Performing | $475,000 | $434,995 | $0 | ($23,698) | ($23,698) |
| Fiesta USA/Stoneridge | 09/22/03 - 04/12/06 | Non-Performing | $100,000 | $100,000 | $0 | ($24,283) | ($24,283) |
| Opaque/Mt. Edge $7,350,000 | 11/06/03 - 04/12/06 | Non-Performing | $155,000 | $102,512 | $0 | ($18,108) | ($18,108) |
| Marquis Hotel | 03/26/04 - 04/12/06 | Non-Performing | $50,000 | $50,000 | $0 | ($9,442) | ($9,442) |
| The Gardens, LLC Timeshare | 03/24/04 - 04/12/06 | Performing | $50,000 | $48,300 | $1,700 | $584 | $2,284 |
| Ashby Financial $7,200,000 | 05/03/04 - 04/12/06 | Non-Performing | $120,000 | $120,000 | $0 | ($26,520) | ($26,520) |
| Mountain House Business Park | 06/01/04 - 04/12/06 | Performing | $50,000 | $50,000 | $0 | $454 | $454 |
| Fiesta Oak Valley | 06/15/04 - 04/12/06 | Non-Performing | $100,000 | $100,000 | $0 | ($16,892) | ($16,892) |
| Margarita Annex | 07/30/04 - 04/12/06 | Non-Performing | $250,000 | $250,000 | $0 | ($2,362) | ($2,362) |
| Shamrock Tower, LP | 08/05/04 - 04/12/06 | Non-Performing | $50,000 | $50,000 | $0 | ($7,318) | ($7,318) |
| Universal Hawaii | 08/06/04 - 04/12/06 | Repaid | $257,000 | $0 | $148,056 | $2,903 | $150,959 |
| Freeway 101 | 08/09/04 - 04/12/06 | Repaid | $200,000 | $0 | $166,667 | ($333) | $166,334 |
| Tapia Ranch | 10/01/04 - 04/12/06 | Non-Performing | $150,000 | $150,000 | $0 | ($3,488) | ($3,488) |
| La Hacienda Estate, LLC | 11/11/04 - 04/12/06 | Performing | $280,000 | $280,000 | $0 | ($333) | ($333) |
| Placer Vineyards | 12/15/04 - 04/12/06 | Non-Performing | $200,000 | $200,000 | $0 | ($10,099) | ($10,099) |
| HFA- North Yonkers | 01/13/05 - 04/12/06 | Non-Performing | $200,000 | $200,000 | $0 | ($25,300) | ($25,300) |
| HFA- Clear Lake | 01/19/05 - 04/12/06 | Non-Performing | $120,000 | $120,000 | $0 | ($16,240) | ($16,240) |
| I-40 Gateway West | 01/11/05 - 04/12/06 | Performing | $125,000 | $125,000 | $0 | $625 | $625 |
| Roam Development Group | 03/07/05 - 04/12/06 | Performing | $125,000 | $122,088 | $2,912 | ($44) | $2,869 |
| Bundy Canyon $2,500,000 | 05/02/05 - 04/12/06 | Performing | $100,000 | $100,000 | $0 | $1,112 | $1,112 |
| Midvale Marketplace, LLC | 06/30/05 - 04/12/06 | Non-Performing | $75,000 | $75,000 | $0 | ($3,052) | ($3,052) |
| Glendale Tower Partners | 06/09/05 - 04/12/06 | Performing | $200,000 | $200,000 | $0 | $2,925 | $2,925 |
| Del Valle - Livingston | 08/25/05 - 04/12/06 | Performing | $50,000 | $50,000 | $0 | $369 | $369 |
| Binford Medical Developers | 08/31/05 - 04/12/06 | Performing | $100,000 | $100,000 | $0 | $1,042 | $1,042 |
| J. Jireh's Corporation | 09/02/05 - 04/12/06 | Performing | $50,000 | $50,000 | $0 | $382 | $382 |
| Eagle Meadows Development | 10/24/05 - 04/12/06 | Non-Performing | $100,000 | $100,000 | $0 | ($1,010) | ($1,010) |
| Palm Harbor One | 12/14/05 - 04/12/06 | Non-Performing | $50,000 | $50,000 | $0 | $478 | $478 |
| ComVest Capital | 01/11/06 - 04/12/06 | Performing | $50,000 | $50,000 | $0 | $496 | $496 |
| Foxhill 216, LLC | 02/23/06 - 04/12/06 | Performing | $100,000 | $100,000 | $0 | $9 | $9 |
| Standard Property Development | 02/27/06 - 04/12/06 | Performing | $50,000 | $50,000 | $0 | $269 | $269 |
| Meadow Creek Partners, LLC | 02/23/06 - 04/12/06 | Performing | $95,000 | $95,000 | $0 | $790 | $790 |
| | | Totals: | $4,077,000 | $3,522,895 | $319,335 | ($176,084) | $143,252 |

This statement is provided for information purposes only and is intended for the sole benefit of the named vested party. This statement is not intended to represent a loan payoff quote. USA reserves the right to update and supplement this statement.

Prepared by MFIM, LLC

THIS STATEMENT REFLECTS THE STATUS THROUGH THE BANKRUPTCY PETITION DATE.
CURRENT STATEMENTS WILL BE MAILED TO YOU SOON.

# USA Commercial Mortgage Company
## Investor History Report

Vesting: Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91
Loan: HFA- North Yonkers
Client ID: 3147
Account ID: 2658
Loan Interest Rate: 12.50%
Original Service Fee[1]: 1.00%
Current Service Fee[1]: 1.00%

| Date | Transaction | A Investment | B Principal Paid by Borrower | C Principal Paid to Investor | D = B - C Principal Owed to Investor | E Unsecured/Diverted Principal | F Interest Earned | G Loan Service Fee Retained by USACM | H Interest Paid by Borrower, Net of Service Fee | I = F - G - H Cumulative Amount Due from Borrower, Net of Service Fee | J Interest Paid to Investor | K = H - J Cumulative Amount Held for / (Due from) Investor |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2005 | Interest and Service Fee (10/1 - 10/3) | $200,000.00 | | | | | $2,152.78 | $166.67 | | $16,409.27 | | ($15,233.30) |
| 11/07/2005 | Interest Paid to Investor | $200,000.00 | | | | | | | | $16,409.27 | $2,066.66 | ($17,299.96) |
| 11/30/2005 | Interest and Service Fee (11/1 - 11/3 | $200,000.00 | | | | | $2,083.33 | $166.67 | | $18,325.94 | | ($17,299.96) |
| 12/07/2005 | Interest Paid to Investor | $200,000.00 | | | | | | | | $18,325.94 | $2,000.00 | ($19,299.96) |
| 12/31/2005 | Interest and Service Fee (12/1 - 12/3 | $200,000.00 | | | | | $2,152.78 | $166.67 | | $20,312.05 | | ($19,299.96) |
| 01/09/2006 | Interest Paid to Investor | $200,000.00 | | | | | | | | $20,312.05 | $2,066.66 | ($21,366.62) |
| 01/31/2006 | Interest and Service Fee (1/1 - 1/31) | $200,000.00 | | | | | $2,152.78 | $166.67 | | $22,298.16 | | ($21,366.62) |
| 02/07/2006 | Interest Paid to Investor | $200,000.00 | | | | | | | | $22,298.16 | $2,066.66 | ($23,433.28) |
| 02/28/2006 | Interest and Service Fee (2/1 - 2/28) | $200,000.00 | | | | | $1,944.44 | $166.67 | | $24,075.94 | | ($23,433.28) |
| 03/10/2006 | Interest Paid to Investor | $200,000.00 | | | | | | | | $24,075.94 | $1,866.66 | ($25,299.94) |
| 03/31/2006 | Interest and Service Fee (3/1 - 3/31) | $200,000.00 | | | | | $2,152.78 | $166.67 | | $26,062.05 | | ($25,299.94) |
| 04/30/2006 | Interest and Service Fee (4/1 - 4/30) | $200,000.00 | | | | | $2,083.33 | $166.67 | | $27,978.72 | | ($25,299.94) |
| 05/25/2006 | Interest Paid By Borrower | $200,000.00 | | | | | | | $399.31 | $27,579.41 | | ($24,900.63) |
| 05/26/2006 | Interest Paid By Borrower | $0.00 | | | $200,000.00 | | | | $27,978.72 | ($399.31) | | $3,078.08 |
| 05/26/2006 | Principal Paid Off | $0.00 | $200,000.00 | | $200,000.00 | | | | | (399.31) | | $3,078.08 |
| 05/31/2006 | Interest and Service Fee (5/1 - 5/31) | $0.00 | | | $200,000.00 | | $2,135.42 | $134.41 | $1,601.70 | $1,601.70 | | $3,078.08 |
| 05/31/2006 | Interest Paid By Borrower | $0.00 | | | | | | | | $0.00 | | $4,679.79 |
| 08/26/2006 | Principal Paid to Investor | $0.00 | | $159,516.53 | $40,483.47 | | | | | $0.00 | | $4,679.79 |
| 10/20/2006 | Principal Paid to Investor | $0.00 | | $37,703.16 | $2,780.31 | | | | | $0.00 | | $4,679.79 |
| **TOTALS:** | | $0.00 | $200,000.00 | $197,219.69 | $2,780.31 | $0.00 | $32,517.36 | $2,537.63 | $29,979.73 | $0.00 | $25,299.94 | $4,679.79 |

[1] This rate may be adjusted according to your loan servicing agreement.

This statement is provided for informational purposes only and is intended for the sole benefit of the named vested party.
This statement is not intended to represent a loan payoff quote. USA reserves the right to update and supplement this statement.
THIS STATEMENT REFLECTS ACTIVITY THROUGH SEPTEMBER 30, 2006

# USA Commercial Mortgage Company

## Investor History Report

Vesting  Larry L Rieger & Patsy R Rieger Trustees of the Larry L Rieger & Patsy R Rieger Revocable Trust dated 8/14/91
Loan  Amesbury/Hatters Point
Client ID  3147
Account ID  2658
Loan Interest Rate  13 50%
Original Service Fee  0 50%
Current Service Fee  1 00%

| Date Transaction | A Investment | B Principal Paid by Borrower | C Principal Paid to Investor | D=B C Principal Owed to Investor | E Unsecured/ Diverted Principal | F Interest Earned | G Loan Service Fee Retained by USACM | H Interest Paid by Borrower Net of Service Fee | I=F G H Cumulative Amount Due from Borrower Net of Service Fee | J Interest Paid to Investor | K=H J Cumulative Amount Held for / (Due from) Investor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/06/2005 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $19 408 72 | $4 869 53 | ($19 342 54) |
| 09/30/2005 Interest and Service Fee (9/1   9/30) | $434 995 39 | | | $0 01 | | $4 893 70 | $181 25 | | $24 121 17 | | ($19 342 54) |
| 10/05/2005 Principal Paid to Investor | $434 995 39 | | | $0 01 | | | | | $24 121 17 | $4 712 45 | ($24 054 99) |
| 10/11/2005 Interest Paid By Borrower | $434 995 39 | | | $0 01 | | | | $12 308 46 | $11 812 71 | | ($24 054 99) |
| 10/31/2005 Interest and Service Fee (10/1 - 10/3 | $434 995 39 | | | $0 01 | | $5 056 82 | $333 26 | | $16 536 27 | | ($11 746 53) |
| 11/07/2005 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $16 536 27 | $4 869 53 | ($16 616 06) |
| 11/30/2005 Interest and Service Fee (11/1   11/3 | $434 995 39 | | | $0 01 | | $4 893 70 | $362 50 | | $21 067 47 | | ($16 616 06) |
| 12/07/2005 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $21 067 47 | $4 712 45 | ($21 328 51) |
| 12/31/2005 Interest and Service Fee (12/1   12/3 | $434 995 39 | | | $0 01 | | $5 056 82 | $362 50 | | $25 761 80 | | ($21 328 51) |
| 01/09/2006 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $25 761 80 | $4 869 53 | ($26 198 04) |
| 01/31/2006 Interest and Service Fee (1/1 - 1/31) | $434 995 39 | | | $0 01 | | $5 056 82 | $362 50 | | $30 456 12 | | ($26 198 04) |
| 02/07/2006 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $30 456 12 | $4 869 53 | ($31 067 57) |
| 02/28/2006 Interest and Service Fee (2/1   2/28) | $434 995 39 | | | $0 01 | | $4 567 45 | $362 50 | | $34 661 08 | | ($31 067 57) |
| 03/06/2006 Interest Paid By Borrower | $434 995 39 | | | $0 01 | | | | $12 591 91 | $22 069 17 | | ($18 475 67) |
| 03/10/2006 Interest Paid to Investor | $434 995 39 | | | $0 01 | | | | | $22 069 17 | $4 398 29 | ($22 873 96) |
| 03/31/2006 Interest and Service Fee (3/1   3/31) | $434 995 39 | | | $0 01 | | $5 056 82 | $362 50 | | $26 763 50 | | ($22 873 96) |
| 04/30/2006 Interest and Service Fee (4/1 - 4/30) | $434 995 39 | | | $0 01 | | $5 087 15 | $362 50 | | $31 488 15 | | ($22 873 96) |
| 05/09/2006 Interest Paid By Borrower | $434 995 39 | | | $0 01 | | | | $10 050 73 | $21 437 42 | | ($12 823 22) |
| 05/31/2006 Interest and Service Fee (5/1   5/31) | $434 995 39 | | | $0 01 | | $5 195 20 | $362 50 | | $26 270 12 | | ($12 823 22) |
| 05/31/2006 Interest Paid By Borrower | $434 995 39 | | | $0 01 | | | | $10 383 25 | $15 886 86 | | ($2 439 97) |

[1] This rate may be adjusted according to your loan servicing agreement

This statement is provided for informational purposes only and is intended for the sole benefit of the named vested party
This statement is not intended to represent a loan payoff quote   USA reserves the right to update and supplement this statement

THIS STATEMENT REFLECTS ACTIVITY THROUGH SEPTEMBER 30  2006

Page  5

# PROMISSORY NOTE
### (Refinancing and Construction Loan)

**BORROWER:** Amesburyport Corporation, a Massachusetts corporation.

**LENDER:** USA Capital Diversified Trust Deed Fund, LLC and the other lenders listed on Schedule A to the Loan Agreement.

**LENDER'S ADDRESS:** 4484 South Pecos Road, Las Vegas, Nevada 89121.

**LOAN AMOUNT:** Twenty-one Million Seven Hundred Fifty Thousand and 00/100 Dollars ($21,750,000).

**INTEREST RATE:** Thirteen and one-half percent (13.5%) per annum.

**DEFAULT RATE:** *Four percent (4%) above the Interest Rate per annum.*

**PAYMENT SCHEDULE:** Commencing on January 1, 2003 and continuing on the same day of each successive month until June 1, 2004, monthly payments of interest only in arrears shall be due and payable.

**MATURITY DATE:** June 18, 2004.

**MORTGAGED PROPERTY:** 5.3, acres, more or less, of land, and the buildings thereon located at 60 Merrimac Street, Amesbury, MA and also known as "Hatter's Point Condominiums".

**LOAN DOCUMENTS:** Collectively this Promissory Note as well as each and every other document, instrument, and agreement now or hereafter executed or delivered in connection with the indebtedness evidenced hereby, including, without limitation, any note, mortgage, security agreement, loan agreement, guaranty, indemnity, certification, assignment of leases and rents, or pledge agreement, as each may be amended, extended, modified, or renewed.

**LOAN AGREEMENT:** That certain Loan Agreement of even date between the Lender and the Borrower relating to the indebtedness evidenced hereby.

All capitalized words or phrases which are not otherwise specifically defined hereinabove or elsewhere in this Note shall have the meaning assigned in the other Loan Documents.

1. **Promise to Pay.** FOR VALUE RECEIVED, the Borrower promises to pay to the order of the Lender, at the Lender's Address (or to such other person(s) or at such other place(s) as the Lender may from time to time designate in writing), the Loan Amount, or so much thereof as may have been advanced pursuant to the Loan Agreement, with interest thereon or on the amount thereof from time to time outstanding, until full payment at the Interest Rate (or the Default Rate, when applicable) computed on the outstanding Loan Amount on the basis of a 360-day year for actual days elapsed and payable in arrears. The Borrower promises to make payments as set forth in the Payment Schedule until the Maturity Date, and on the Maturity Date to pay the outstanding Loan Amount in full, together with all accrued interest and any other amount(s) due under this Promissory Note. All payments received will be applied (a) first, to any of the following then due and payable in such order and manner as the Lender in its sole

1

USA0000542

discretion shall determine: fees, charges, costs, expenses, late fees, interest, or principal, and (b) second, to the outstanding Loan Amount.

2.  **Right of Prepayment.**  At any time after that date (the "Prepayment Date") which is ninety (90) days after the date of this Note, this Note may be prepaid, in full or in part, without prepayment fee or premium, but partial prepayments shall not defer the Borrower's obligation to make each payment set forth in the Payment Schedule while any Loan Amount is outstanding. This Note may be prepaid, in full or in part, before the Prepayment Date, provided that such prepayment is accompanied by payment of any applicable Exit Fees, and payment of a penalty equal to interest on the amount of such prepayment through the Prepayment Date.

3.  **Late Payment Charge.**  If any monthly payment of interest or principal is not paid within five (5) days after its due date, the Borrower shall pay the Lender on demand a processing fee of five percent (5%) of the amount overdue.  Processing fees are not interest and shall not be subject to refund or rebate or credited against any other amount due.

4.  **Failure to Pay and Perform Obligations.**   At the Lender's election, this Promissory Note shall become immediately due and payable without notice or demand (and notwithstanding any prior waiver of any breach, default, or other indulgence) upon the failure of the Borrower to make any payment required hereunder as and when due or upon the occurrence of any other Event of Default as defined in the Loan Agreement.  After the Maturity Date and upon and during the existence of any other Event of Default (regardless of whether this Promissory Note has been accelerated and irrespective of the exercise or nonexercise of any other of the Lender's rights), interest on all outstanding principal shall accrue at an annual rate equal to the Default Rate.

5.  **Lender's Costs and Expenses.**  The Borrower agrees to pay all costs and expenses incurred by the Lender in connection with this indebtedness, including without limitation, all reasonable attorney's fees and costs for the implementation of this loan, the collection of the indebtedness evidenced hereby, and the enforcement of the Lender's rights hereunder, whether or not suit is instituted.

6.  **Responsibility of Persons.**  The Borrower and every other party liable to pay the indebtedness evidenced by this Promissory Note, whether as maker, endorser, guarantor, surety, or otherwise:  (a) agrees to be jointly and severally bound by all of the terms and conditions of this Promissory Note and every other Loan Document; (b) waives presentment, demand, notice, notice of acceleration, notice of intent to accelerate, protest, suretyship defenses, and all other defenses in the nature thereof; (c) waives any defenses based upon, and specifically assents to, any and all extensions and postponements of the time for payment, changes in terms and conditions, and all other indulgences and forbearances which may be granted by the Lender to any party now or hereafter liable under this Promissory Note or any guarantor hereof; (d) agrees to any substitution, exchange, release, surrender, or other delivery of any collateral now or hereafter securing this Promissory Note, and to the addition or release of any other person primarily or secondarily liable under this Promissory Note, any guaranty, or any other Loan Document now or hereafter given in connection with this loan; (e) agrees that if any security or collateral given to secure this Promissory Note or the indebtedness evidenced hereby to secure any of the obligations set forth or referred to in any other Loan Document shall be found to be unenforceable in full or to any extent, or if the Lender or any other party shall fail to duly perfect or protect such collateral, the same shall not release or relieve any party liable hereon or thereon

2

USA0000543

nor vitiate any other security or collateral given for any obligations evidenced hereby or thereby; and (f) consents to all of the terms and conditions contained in this Promissory Note, the Loan Agreement, and each and every other Loan Document.

7.    **Maximum Interest Rate.** Notwithstanding anything contained in this Promissory Note or any other Loan Document, the maximum amount of interest and other charges in the nature of interest due or payable on this loan shall not exceed the maximum amount permitted by law as determined by the final judgment, with appeals exhausted, of a court of competent jurisdiction. To the extent that any interest or other amounts received by the Lender exceeds the maximum amount permitted by law, then such excess amount shall be credited to unpaid principal, provided, however, that any excess amount remaining after full payment of principal shall immediately be returned to the Borrower.

8.    **Collateral Security.** This Promissory Note is secured by the Mortgaged Property, among other things, such collateral security being more particularly described in the Loan Documents.

9.    **Successors and Assigns.** This Promissory Note shall inure to the benefit of and be binding upon the Borrower and Lender and their respective personal representatives, successors and assigns. The terms "Borrower" and "Lender" as used herein shall include all subsequent holders of their respective rights, title, and interests under this Promissory Note. All obligations of and references to "Borrower" hereunder apply to the entities that comprise Borrower, both individually and collectively.

THIS PROMISSORY NOTE IS DELIVERED IN ACCORDANCE WITH THE LOAN AGREEMENT. WITHOUT IN ANY WAY AFFECTING THE UNCONDITIONAL PROMISE TO PAY SET FORTH IN THIS NEGOTIABLE INSTRUMENT, THE BORROWER ACKNOWLEDGES THAT THE LOAN AGREEMENT CONTAINS, AMONG OTHER THINGS, A WAIVER OF THE BORROWER'S RIGHT TO TRIAL BY JURY AND A PROHIBITION ON NON-WRITTEN WAIVERS OR MODIFICATIONS OF THE LOAN DOCUMENTS, EACH OF WHICH PROVISIONS WAS KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY AGREED TO AND ACCEPTED BY THE BORROWER.

Executed and delivered as a sealed instrument as of the 18 day of December, 2002.

WITNESS:

AMESBURYPORT CORPORATION

By: 

Name:  William H. Sullivan
Title:  President and Treasurer

#50193557 v3 - walshsm - wlh01l.doc - 23322/1

3

USA0000544

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

and

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case Nos. BK-S-06-10725 LBR<br>Case Nos. BK-S-06-10726 LBR<br>Case Nos. BK-S-06-10727 LBR<br>Case Nos. BK-S-06-10728 LBR<br>Case Nos. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **DECLARATION OF SUSAN M.<br>SMITH IN SUPPORT OF MOTION<br>FOR SUMMARY JUDGMENT<br>REGARDING CLAIM NO. 10725-<br>01739 FOR LARRY L. & PATSY R.<br>RIEGER REVOCABLE TRUST<br>DATED 8/14/91 [AFFECTS DEBTOR** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | **USA COMMERCIAL MORTGAGE<br>COMPANY]** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date of Hearing: _____, 2007<br>Time of Hearing: _____ |

**I, SUSAN M. SMITH, declare under penalty of perjury as follows:**

1.      On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company

("USACM"); USA Capital Realty Advisors, LLC; USA Capital Diversified Trust Deed Fund,

LLC; USA Capital First Trust Deed Fund, LLC; and USA Securities, LLC (collectively, the

"Debtors") filed petitions seeking relief under Chapter 11 of the Bankruptcy Code.

2.      On the Petition Date through the date on which the Chapter 11 plan went effective

(the "Effective Date"), Mesirow Financial Interim Management, LLC ("MFIM") was employed

as crisis managers to the Debtors.  Thomas J. Allison of MFIM served as the Debtors' Chief

Restructuring Officer.

3.      I am employed by MFIM as a Senior Vice President, and worked for the Debtors

under Mr. Allison's direction throughout the time period of MFIM's employment.  Except where

I state my knowledge on information or belief, I have personal knowledge of the facts stated

herein and, if called to do so, could and would competently testify thereto.

4.      I make this Declaration in support of the Motion for Summary Judgment

Regarding Claim No. 10425-01739.  Claim No. 10425-01739 was filed by the Larry L. & Patsy

R. Rieger Revocable Trust Dated 8/14/91 (the "Rieger Trust"), which is a Direct Lender in the

Loan (the "Amesbury Loan") serviced by USACM that was made to Borrower Amesburyport

Corporation, a Massachusetts corporation ("Amesburyport").

5.      On June 9, 2006, USACM filed its "Motion For Authority to Forbear and to

Provide Further Funding for Certain Outstanding Loans" (the "June 9, 2006 Motion") (Docket

No. 592).  A copy of the June 9, 2006 Motion is attached as Exhibit "A" and incorporated herein.

6.      Paragraphs 30-37 of the June 9, 2006 Motion describe USACM's motion for

Court authorization to issue partial releases for 3 Amesbury Loan condo units (the "3 Amesbury

Condo Units") in exchange for the net sales proceeds for the 3 Amesbury Condo Units.

2

Paragraphs 30-34 of the June 9, 2006 Motion stated:

        30.     On December 18, 2002, USACM as Servicer originated a loan (the "Amesbury Loan") to Borrower Amesburyport Corporation, a Massachusetts corporation ("Amesburyport"). Under the Amesbury Loan Agreement dated December 18, 2002 (the "Amesbury Loan Agreement"), the original principal amount of the Amesbury Loan was $21,750,000. The Guarantor of the Amesbury Loan is William H. Sullivan.

        31.     The Amesbury Loan was made to Amesburyport for the renovation of nine old factory buildings located in Amesbury, Massachusetts, which is approximately 50 miles north of Boston, Massachusetts, and conversion of the buildings into condominium units. The current outstanding principal on the Amesbury Loan is $18,672,455, with unpaid interest and fees owing of approximately $5,803,787 (this number is preliminary only and includes default interest and late fees). There are 393 Direct Lenders for the Amesbury Loan. Diversified Trust Deed Fund is a Direct Lender in the Amesbury Loan with a 15.18% undivided interest in the Amesbury Loan. First Trust Deed Fund is also a Direct Lender in the Amesbury Loan with a 1.72% undivided interest in the Amesbury Loan. USACM is also a Direct Lender in the Amesbury Loan with a 0.25% undivided interest in the Amesbury Loan. The Amesbury Loan is a Nonperforming Loan, both because of the unpaid interest on the Amesbury Loan and because the Amesbury Loan matured on June 30, 2005.

        32.     The last three condominiums from Phase I of the Amesbury Project are currently under contract at list price. All of the other condominiums in Phase I have been sold. Amesburyport has requested that USACM as Servicer consent to the sales of the last three condominium units and issue Partial Releases for these units. The estimated net proceeds from these sales are approximately $500,000 per unit, for an estimated return to USACM as Servicer of approximately $1,500,000 for the three units. These sale prices reflect pricing at $318 per square foot to $330 per square foot. An appraisal by Joseph J. Blake and Associates, Inc. performed during March 2005 in support for Phase II of this project (which has not yet been built) indicated the pricing on comparable properties in the Amesbury, Massachusetts area to be $196 per square foot to $305 per square foot. The pending sales appear to be at pricing that is at the top of the comparable range.

        33.     Once the last three condominium units are sold, the remaining collateral for the Amesbury Loan has an estimated value that is less than the remaining amount that would be due on the Amesbury Loan. Deficiency claims against the Guarantor of the Amesbury Loan will also be pursued, but the possible recovery from the Guarantor is currently uncertain.

        34.     It is USACM's business judgment that as Servicer, it should consent to the sales of the last 3 condominium units in Phase I of the Amesbury Project and issue Partial Releases for these 3 units in exchange for net sale proceeds for these 3 units. Even though the Amesbury Loan is a Nonperforming Loan, and it appears that the Amesbury Loan may not be fully collectible, it is prudent to realize the top of the price range for these three condominiums that are currently under contract, rather than allow the current sales contracts to fall through. If these sales are not timely closed, the Direct Lenders on the Amesbury Loan may not only lose full price sales, but it is USACM's judgment that failed sale transactions will impair the ability to sell these three units for full price in the

future.

7.     The June 9, 2006 Motion was served by BMC Group, Inc., the Claims and

Noticing Agent for the Debtors and Debtor-in-Possession in these cases, by United States First

Class Mail on June 14, 2006, upon the Rieger Trust at the following address: "Larry L Rieger &

Patsy R Rieger Revocable, Trust dated 8/14/91, c/o Larry L Rieger & Patsy R Rieger Trustees,

2615 Glen Eagles Dr, Reno, NV, 89523-2080." A copy of the BMC Certificate of Mailing filed

on June 19, 2006, as Docket No. 721, certifying that this service was made upon the Rieger Trust

(see Page 20 of the Certificate of Mailing), is attached hereto as Exhibit "B" and incorporated

herein.

8.     This Court entered its "Order Re Amesbury Condominiums, Boise/Gowan 93,

LLC and HFA" on July 18, 2006, as Docket No. 886 (the "Amesbury Order"). A copy of the

Amesbury Order is attached hereto as Exhibit "C" and incorporated herein. The Amesbury

Order states the following with respect to USACM's request for authorization pursuant to the

June 9, 2006 Motion to issue partial releases for the 3 Amesbury Condo Units: "it is ORDERED

that USA Commercial Mortgage Company ('USACMC') is authorized to consent to the sale of

condominium units in Phase I of the Amesbury Project and to issue partial releases for these

three (3) units in exchange for the net sales proceeds from these three (3) units . . . ."

9.     Pursuant to the Amesbury Order, USACM issued partial releases for the 3

Amesbury Condo Units in exchange for the following net sales proceeds for the 3 Amesbury

Condo Units: $473,365.50 (posted on May 30, 2006), $492,885.58 (posted on May 31, 2006),

and $442,880.82 (posted on September 7, 2006). Although the first two payments were posted

in May of 2006, the corresponding partial releases were not forwarded by USACM until after the

entry of the Amesbury Order. A copy of the Borrower History Report for the Amesbury Loan

that was prepared by MFIM reflecting the receipt of the net sales proceeds for the 3 Amesbury

Condo Units (see fourth page of Report) is attached hereto as Exhibit "D" and incorporated

herein.

10.    As of March 10, 2006 (prior to the Petition Date) the Rieger Trust had received

$22,873.96 in Prepaid Interest (as defined in the Debtors' Third Amended Joint Chapter 11 Plan

of Reorganization, Docket No. 1799, confirmed on January 8, 2007, Docket No. 2376 [the

"Confirmed Plan"]) with respect to their Direct Lender interest in the Amesbury Loan.  A copy

of the Investor History Report for the Rieger Trust for the Amesbury Loan that was prepared by

MFIM, which reflects the Prepaid Interest paid to the Rieger Trust for the Amesbury Loan in the

far right column on Page 5 of the Investor History Report (the column titled:  "Cumulative

Amount Held for / (Due from) Investor"), is attached hereto as Exhibit "E" and incorporated

herein.

11.    The Rieger Trust's shares of the net sales proceeds for each of the 3 Amesbury

Condo Units (net of service fees owed to USACM as Servicer) were as follows:  $10,050.73 for

the net sales proceeds posted on May 30, 2006, $10,383.25 for the net sales proceeds posted on

May 31, 2006, and $9,288.69 for the net sales proceeds posted on September 7, 2006.  These

amounts are reflected in the entries for these respective dates under Column H (entitled: "Interest

Paid by Borrower Net of Service Fee) on Pages 5 and 6 of the Rieger Trust Investor History

Report attached hereto as Exhibit "E."  As reflected on Pages 5 and 6 of the Rieger Trust

Investor History Report attached hereto as Exhibit "E," this cumulative amount of $29,722.67 for

the net sales proceeds received for the 3 Amesbury Condo Units was first applied (as authorized

by Section I(A)(113) on Page 17 and Section IV(E)(1)(d)(ii) on Page 52 of the Confirmed Plan)

to the Prepaid Interest amount for the Amesbury Loan owed by the Rieger Trust of $22,873.96,

which left a remaining balance of $6,848.72.

12.    In addition to the Prepaid Interest amount of $22,873.96 owed by the Rieger Trust

for the Amesbury Loan, the Rieger Trust also owed to USACM the following amounts as of

September 30, 2006 to repay USACM for Prepaid Interest previously received by the Rieger

Trust with respect to the following six additional Loans serviced by USACM (the "Six

Additional Loans"): $23,695.79 for the Fiesta Stoneridge Loan, $8,756.95 for the Marquis Hotel

Loan, $16,430.48 for the Fiesta Oak Valley Loan, $7,058.65 for the Shamrock Tower Loan,

$7,837.44 for the Placer Vineyards Loan, and $16,240.00 for the HFA-Clear Lake Loan. Copies

of the Investor History Reports for the Rieger Trust for the Fiesta Stoneridge Loan, the Marquis

Hotel Loan, the Fiesta Oak Valley Loan, the Shamrock Tower Loan, the Placer Vineyards Loan,

and the HFA-Clear Lake Loan, all of which were prepared by MFIM, and which reflect the

Prepaid Interest paid to the Rieger Trust for each of the Six Additional Loans in the far right

column on the last page of each Investor History Report (the column titled: "Cumulative

Amount Held for / (Due from) Investor"), are attached hereto as Exhibit "F" and incorporated

herein.

13.    After the cumulative amount of $29,722.67 from the net sales proceeds of the 3

Amesbury Condos Units was applied to the Prepaid Interest amount for the Amesbury Loan

owed by the Rieger Trust of $22,873.96, which left a remaining balance of $6,848.72, the

remaining balance of $6,848.72 was then applied, consistent with the Confirmed Plan, to a

portion of the additional Prepaid Interest owed by the Rieger Trust to USACM with respect to

the Six Additional Loans.

14.    A copy of the Promissory Note (Refinancing and Construction Loan) signed by

Amesburyport as Borrower for the Amesbury Loan (the "Amesbury Note") is attached hereto as

Exhibit "G" and incorporated herein. Section 1 of the Amesbury Note states in part: "All

payments received will be applied (a) first, to any of the following then due and payable in such

order and manner as the Lender in its sole discretion shall determine: fees, charges, costs,

expenses, late fees, interest, or principal, and (b) second, to the outstanding Loan Amount."

15.     USACM as Servicer for the Rieger Trust as one of the Direct Lenders for the Amesbury Loan received the net sales proceeds of $29,722.67 attributable to the Rieger Trust from the sales of the 3 Amesbury Condo Units and issued partial releases for the 3 Amesbury Condo Units.  Both the receipt of the net sales proceeds and the issuance of the partial releases were authorized by the Amesbury Order.  USACM as Servicer for the Rieger Trust then applied the net sales proceeds of $29,722.67 consistent with the terms of the Confirmed Plan and the Amesbury Note, which resulted in the entire amount of $29,722.67 being applied to Prepaid Interest owed by the Rieger Trust to USACM.

16.     Although the Rieger Trust did not receive any of the net sales proceeds of $29,722.67, whether characterized as principal or interest payments on the Amesbury Note, the Rieger Trust did benefit from the sales of the 3 Amesbury Condo Units because there was a reduction in the amount of $29,722.67 of the total Prepaid Interest amount owed by the Rieger Trust to USACM.  Therefore, the net sales proceeds attributable to the Rieger Trust from the sales of the 3 Amesbury Condo Units were not lost or misapplied or misappropriated by USACM after the Petition Date, and the Rieger Trust has no basis for any administrative or priority claim to assert against USACM.

17.     I declare under penalty of perjury that the foregoing statements are true and correct according to my best knowledge, information and belief.

Executed this 6th day of September, 2007.


_____
Susan M. Smith

941853.02/dmm

7