Pauline Ng Lee, Esq.
Nevada Bar No. 6392
Scott D. Fleming, Esq.
Nevada Bar No. 5638
Hale Lane Peek Dennison and Howard
3930 Howard Hughes Parkway, 4th Floor
Las Vegas, Nevada 89169
702-222-2500
702-365-6940 – fax
plee@halelane.com
sfleming@halelane.com

Peter J. Mort (SBN 102480) (*Pro Hac Application Pending*)
Bruce Jacobs (SBN 194114) (*Pro Hac Application Pending*)
Akin Gump Strauss Hauer & Feld, LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone: 310-229-1000
Facsimile: 310-229-1001
pmort@akingump.com
bjacobs@akingump.com

Attorneys for Los Valles Land & Golf LLC

Electronically Filed
October 15, 2007

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY, et al.<br><br>   Debtors. | Chapter 11<br><br>06-10725-LBR<br><br>Jointly Administered<br><br>**RESPONSE TO USACM LIQUIDATING TRUST'S OBJECTIONS TO PROOF OF CLAIM NO. 1366 FILED BY LOS VALLES LAND & GOLF, LLC**<br><br>DATE:   November 2, 2007<br>TIME:   To Be Set |

Los Valles Land & Golf, LLC ("Los Valles"), by and through its undersigned counsel, hereby responds to the Amended Objection of the USACM Liquidating Trust ("USACM Trust") to Los Valles'

Proof of Claim No. 1366 [Docket No. 4820][1] and the Eighteenth Omnibus Objection of USACM Trust to Claims Asserting Secured Status [Docket No. 3168]. In support of this response, Los Valles respectfully states as follows:

## I.  BACKGROUND

On April 13, 2006, (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), among others, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On November 13, 2006, Los Valles filed its proof of claim no. 1366. This claim arises out of USACM's collection, as well as its attempt to collect, certain charges from Los Valles, as well as its unjustified and willful failure to provide an accurate payoff demand, in contravention of applicable law.

### A.  The Loan Agreement.

On or about March 3, 2004, USACM and Los Valles entered into a fee agreement ("Fee Agreement") pursuant to which it was represented that USACM "arranged for Borrower a loan (the "Loan") with the initial principal amount of Ten Million Dollars ($10,000,000) from certain persons and entities listed in the Note (collectively, "Lender[s]")." The Fee Agreement was entered into in the State of California. At the close of the Loan, Borrower paid USACM $500,000 pursuant to the Fee Agreement.

Also on March 3, 2004, Borrower entered into a loan agreement ("Loan Agreement") with Lenders. The Loan Agreement was "made for the purpose of defining and setting forth certain obligations, rights and duties of Borrower, Lender and USACM in connection with the Loan." The Loan provided that Los Valles had the right to pay the loan back in full or in part, without penalty, at any time more than four months after the effective date of the Loan. Loan Agreement at § 3.4. Specifically, Section 3.4 provided, in pertinent part, that

> Borrower agrees that all loan fees and any prepaid finance charges are fully earned ***as of the date they are paid*** and will not be subject to refund upon any early payment hereof

---

[1] The Amended Objection superseded the USACM Trust's March 13, 2007 Objection [Docket No. 3076].

>   (whether voluntary or as a result of default).  Subject to the foregoing, Borrower may prepay the Loan, in full or in party, at any time, ….

Loan Agreement at § 3.4 (emphasis added).  With respect to an exit fee, the Loan Agreement provided, in part:

>   3.8   Exit Fee.   Borrower shall pay to [USACM], *as a deferred loan fee,* one and one half percent (1.5%) of the gross sale price of each lot (but not less than the fair market value).  It will be paid at the time the sale of the lot closes.

*Id.* at § 3.8 (emphasis added).  The so-called "Exit Fee" was an additional fee charged by USACM in exchange for arranging the Loan.

### B.   The Extension Agreements.

In addition, both the Fee Agreement and the Loan Agreement provided that should Borrower request and be granted an extension of time in which to repay the Loan, USACM was entitled to a further fee of 1% of the existing balance of the Loan for each extension with Lenders.  Fee Agreement at § 3; Loan Agreement at § 3.9.  Pursuant to these agreements, Borrower sought a six-month extension in 2005.  This extension was granted in an extension agreement executed by Borrower and Lenders on October 3, 2005.  The October 3 extension agreement provided that Borrower would pay USACM a fee of $234,000 (the "First Extension Fee") for arranging the extension.  The First Extension Fee was also a fee for arranging the Loan.  Because USACM was unlicensed in California, it was not entitled to the First Extension Fee, and the obligation to pay it under either the Fee Agreement, the Loan Agreement, or the extension agreement is void.  Accordingly, USACM is or shall be obligated to Borrower in restitution for any amount paid or to be paid by Borrower to USACM.

On or about January 3, 2006, USACM agreed on behalf of Lenders to permit Borrower's sister company, Los Valles Company, Inc. ("Company"), to assume the obligations under the Loan.  In 2006, Company sought an additional extension pursuant to the Fee Agreement and the Loan Agreement, which was granted in an agreement executed by Company and Lenders on March 17, 2006.  As with the first extension agreement, the March 17 extension agreement also provided that Company would pay USACM a fee of $234,000 (the "Second Extension Fee" and, collectively with the First Extension Fee, the "Extension Fees") for arranging the extension.  Like the First Extension Fee, the Second Extension Fee was a fee for arranging the Loan.

### C. USACM Obstructs Los Valles' Attempts to Refinance.

In October 2004, Los Valles sought to refinance the Loan. The reason for the refinancing was simple and straightforward – Los Valles found a lender who was willing to lend at a rate of 16% as opposed to the 18% set forth in the Loan. For a number of reasons, the refinancing was contingent upon satisfaction of the Loan. To that end, therefore, Los Valles requested a payoff statement from USACM on October 20, 2004. In that request, Los Valles explained:

> As you know, we are in the process of securing replacement mezzanine financing in connection with the above referenced property. To assist us in this process, we would appreciate it if you would be so kind as to please provide us with a pay-off demand calculated for a potential closing date as early as November 18, 2004 and a per diem for a closing on any date thereafter through December 31, 2004.

Rather than comply with Los Valles' request or applicable law, USACM did not respond to the request for a payoff statement for four months. Specifically, on February 25, 2005, USACM provided a payoff demand that included not only principal and interest, but also an exit fee of $1,664,403.94.

This Exit Fee was approximately 15% of the outstanding principal and interest and had no basis in any of the loan documents. In fact, the only Exit Fee identified anywhere in any of the documents was a 1% fee that was not payable until lots were actually sold. Loan Agreement at § 3.8. Moreover, USACM refused to close the loan without payment of this "Exit Fee." Because USACM refused to accept a payoff of the loan that did not include the "Exit Fee," Los Valles was unable to obtain replacement financing.

USACM's failure and refusal to allow repayment of the loan without the improper "Exit Fee" was the reason that Los Valles was unable to obtain replacement financing for a period of approximately two years. In fact, had USACM provided the payoff statement in a timely manner, Los Valles would have paid far less than $200,000 in interest to the Lenders. By improperly delaying the statement and refusing to allow repayment of the loan without the improper fees, USACM was able to obtain over $2.5 million in interest payments.

## II. THE DEBTOR HAS NOT MET ITS BURDEN OF REBUTTING LENDER'S PROOF OF CLAIM.

A proof of claim is 'deemed allowed' unless a party in interest objects. 11 U.S.C. § 502(a). A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure

4

constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). As a result, the party objecting to a properly filed proof of claim has the initial burden of presenting sufficient probative evidence to overcome such prima facie effect. *See Matter of O'Connor*, 153 F.3d 258, 260 -261 (5th Cir. 1998) (objecting party has the burden of presenting enough evidence to overcome the *prima facie* effect of the claim); *In re Garner*, 246 B.R. 617, 623 (9th Cir. BAP 2000) (the consequence of the status of the proof of claim as constituting prima facie evidence of validity and amount is that the evidence of the proof of claim is strong enough to prevail over a mere formal objection without more); *see also In re C-4 Media Cable South, L.P.,* 150 Bankr. 374, 377 (Bankr. E.D. Va. 1992) (mere filing of objection is not enough); *In re St. Johnsbury Trucking Company, Inc.,* 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) (objecting party must put forth sufficient evidence to rebut prima facie validity).

The Debtor has failed to provide *any* evidentiary support to rebut the prima facie validity and amount of the Claim. The mere denial of a claim's validity or amount is insufficient to rebut the presumption of validity. *In re Frederes,* 98 B.R. 165, 166-7 (Bankr. W.D.N.Y. 1989). Collier on Bankruptcy states the general rule, which is applicable to these facts:

> The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy Procedure 3001(f) and Code section 502(a). Unless, the trustee, as objector, introduces evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim.

4 Collier on Bankruptcy ¶ 502.02[3][4], pp. 502-18.) (15th Ed. Rev. 2004).[2]

The objection fails to provide evidence of probative force equal to the contents of the claim because the Debtor has not submitted any particularized facts or documentary evidence that would support its bare assertion that the Lender has miscalculated the claim.

---

[2] The cases relied upon by the USACM Trust support this conclusion. In both *Ashford v. Consolidated Pioneer Mortgage*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) and *Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000), the court acknowledged that merely filing an objection to a claim is not enough – the debtor must provide factual support to shift the burden of persuasion to the claimant. The USACM Trust has not done so here.

### III. USACM WAS NOT ENTITLED TO ANY BROKER'S FEES.

#### A. USACM Improperly Acted As a Real Estate Broker, as Defined by California Law.

California law is clear – a company that "for compensation or in expectation of compensation" "negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by loans or liens on real property" – i.e., acted as a "real estate broker" as defined by California law, in California must obtain a real estate brokers' license. Cal. Bus. & Prof. Code §§ 10130, 10131. Any agreement to pay a fee or commission or any amount to an unlicensed company to perform such services is illegal, void and unenforceable. *Fellom v. Adams*, 274 Cal. App. 2d 855, 862 (1969); *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1148 (9th Cir. 1986).

There can be no question that USACM acted as a real estate broker in California. As an initial matter, the Loan Agreement specifically identifies USACM as the representative of the Lenders, with the authority to "administer the Loan on [the Lenders'] behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder." Loan Agreement at § 8.8. Such conduct falls squarely within the definition of "real estate broker." Moreover, USACM negotiated loans on behalf of others for property located in California, sent a letter of intent to California on February 9, 2004, identifying all of the relevant terms of the loan, all acts in California. Indeed, representatives of USACM traveled to California on at least one occasion in connection with conducting due diligence and negotiating the loan. The fact that USACM may have engaged in some of its activities from Nevada does not change the analysis – it directed its actions towards California and therefore falls within the scope of California law. *Independent Cellular Telephone, Inc. v. Daniels & Associates*, 863 F. Supp. 1109, 1115 (N.D. Cal. 1994) (*de minimis* conduct in California sufficient to invoke California's requirements).

In its Objection, without any analysis or explanation whatsoever, the USACM Trust argues that it was not required to hold a California real estate broker's license "under the circumstances." Objection at 7. The USACM Trust, however, acknowledges that the $500,000 was a broker's fee that it asserts was somehow "earned by USACM under the Fee Agreement." *Id.* The USACM Trust does

1  not and cannot explain what circumstances exempt it from California law.[3]

2  In light of the foregoing, USACM's attempt to collect broker's fees for acting as a real estate
3  broker with respect to the financing of the property violates California law, rendering USACM's
4  collection of those amounts illegal. These illegal broker's fees must be returned to Los Valles.

5  **B.    USACM Was Not Entitled to the Extension Fees.**

6  On two separate occasions, Los Valles obtained an extension of the term of the loan. Those
7  extensions were documented in two Loan Extension Agreements, one dated October 3, 2005 and the
8  other dated March 17, 2006. Each of these Loan Extension Agreements were guaranteed by Dan
9  Palmer, Jr., an individual residing in California. Moreover, each of these Loan Extension Agreements
10 contained yet another broker's fee for USACM. Specifically, each Loan Extension Agreement
11 provided for a broker's fee to USACM of $234,000 for an additional $468,000 in broker's fees (the
12 "Additional Broker's Fees").

13 With respect to the Additional Broker's Fees, USACM objects because it claims that Los Valles
14 has not paid any of that amount.[4] Whether Los Valles paid all of the amounts is immaterial unless the
15 USACM Trust is saying that is not entitled to and therefore is not seeking to collect any Additional
16 Broker's Fees that may remain unpaid. By its claims, Los Valles seeks both recovery of amounts that
17 were paid and avoidance of amounts that are allegedly due. These recoveries would then be
18 recoupable against amounts due (if any) under the Letter Agreement. *See, e.g.*, *In re Newbery Corp.*,
19 95 F.2d 1392, 1402 (9th Cir. 1996).

20 **C.    The USACM Trust Misapplies the Law Regarding Penalties.**

21 Finally, with respect to the improper broker's fees, the USACM Trust argues that any claims

---

[3] The USACM Trust may argue that because the March 9, 2004 Fee Agreement provided that it was to be interpreted under Nevada law, somehow that means that California law does not apply. The USACM Trust is wrong. On its face, these statutes apply to conduct in California irrespective of whether an agreement selects the law of a different jurisdiction.

Further, to the extent that the USACM Trust argues that California law somehow cannot apply because Los Valles is a Delaware entity with its principal place of business in California, such an argument ignores the fact that the Dan Palmer, Jr., a California resident, guaranteed the Loan.

[4] Los Valles paid $234,000 to USACM after the first extension agreement. However, Los Valles is informed and believes that the $234,000 was applied by USACM to the interest rather than the extension fee.

7

regarding those fees must have been filed within the time periods established for claims for penalties. In making this argument, the USACM Trust misunderstands both the statute of limitations for penalty claims, as well as the time periods established by this Court. In short, these claims seek compensation for actual damages incurred by Los Valles, not penalties.

### 1.   The Penalty Statute of Limitations Does Not Apply to Los Valles' Claims.

The USACM Trust first argues that Los Valles' claims are somehow governed by Section 340 of the California Code of Civil Procedure, which provides a one year limitations period for an "action upon a statute for a penalty or a forfeiture." Section 340, however, does not apply to claims for compensatory damages, which is what Los Valles seeks to recover here. *Low v. Lan*, 96 Cal. App. 4th 1371, 1381 (2002) (limitation for actions upon a statute for a penalty or a forfeiture are directed towards claims that are penal in nature, not those which seek to recover for actual damage incurred). Accordingly, Section 340 (a) does not apply to Los Valles' claims.

### 2.   Los Valles' Claims Are Not "Penalty Claims" as Defined by the Plan.

The USACM Trust next argues that Los Valles' claims with respect to the improper broker's fees are somehow untimely because they are "Penalty Claims," as defined by the Plan. The Plan defines "Penalty Claims," however, as certain types of claims that "are not compensation for actual pecuniary loss suffered by the holder of such Claim …." As noted above, the claims with respect to the improper broker's fees are for compensation of actual pecuniary loss and therefore are not "Penalty Claims."

### IV.   USACM ADMITS THAT IT WILLFULLY FAILED TO TIMELY RESPOND TO A PAYOFF DEMAND.

Pursuant to Cal. Civ. Code § 2943, USACM was required to provide a payoff statement within twenty-one days. In fact, a party who willfully fails to provide such a statement entitles the borrower to recover actual and statutory damages. *Id.* The section defines "willfully" as "an intentional failure to comply with the requirements of this section without just cause or excuse."[5]

---

[5]   Nevada law is in accord. Nev. Rev. Stat. §§ 107.210, 107.300.

8

**A.     Through its Silence, USACM Essentially Admits That it Willfully Failed to Provide a Payoff Statement.**

USACM does not and cannot claim to have timely provided a payoff statement in response to Los Valles' Payoff Demand. Lest there be any confusion, Los Valles sent three separate requests for a payoff statement. By letters dated October 20, 2004, Los Valles requested a payoff statement from USACM. In those letters, Los Valles reminded USACM that it was already aware that USACM was already aware that Los Valles was attempting to secure replacement mezzanine financing for the loan and was trying to do so within a possible range of November 18, 2004 to December 31, 2004. Because this was replacement financing, it was essential that Los Valles payoff the loan brokered by USACM – in fact it was a condition of the deal.

In this case, there can be no question that USACM intentionally failed to comply with the statutory requirements for a number of reasons. First, USACM was perfectly aware not only that Los Valles had requested a payoff statement, but also knew precisely why Los Valles needed the payoff statement – so that it could obtain the replacement financing. Second, irrespective of whether it was bound by California or Nevada law, USACM was certainly aware that it was required to provide a payoff statement within twenty-one days – USACM cannot claim to have been ignorant of the law. Third, USACM eventually provided a payoff statement, albeit more than one hundred days late.

There is only one conclusion that can be reasonably drawn from these indisputable facts – that USACM knowingly failed and refused to provide a payoff statement within the required twenty-one days. Indeed, the USACM Trust does not even attempt to argue to the contrary, nor does it offer any excuse for its failure to do so. Accordingly, the only question for this Court is the amount of USACM's liability.

**B.     Los Valles is Entitled to Recover its Actual Damages.**

Los Valles incurred substantial damages as a result of USACM's refusal to provide the payoff statement required by applicable law. Such damages include the statutory damages of $300. With respect to actual damages, the Debtor does not actually challenge the entitlement to such damages, but focuses instead upon two issues. First, the USACM Trust asserts that it somehow cannot be liable for any damages for the time period after it finally provided a payoff statement to Los Valles. Second, the

1 USACM Trust argues that there is no showing of causation.

2 Both of these arguments are easily rejected with a single point – USACM not only improperly
3 delayed the payoff statement, but also refused to allow repayment of the loan unless Los Valles agreed
4 to pay the improper "Exit Fee" of over $1.6 million.[6]  USACM's conduct is the direct cause of Los
5 Valles' inability to obtain replacement financing.  How could Los Valles have replaced a loan that
6 USACM was refusing to allow to be repaid?  Los Valles could not have done so.

7 In fact, USACM benefited tremendously from its substantial delay – to the tune of over $2
8 million in interest payments that it would never have received had USACM complied with its
9 obligations.  Los Valles is not asking USACM to disgorge all of these improper interest payments, but
10 rather damages including the 2% difference in the interest rates, as well as the fees that USACM was
11 able to obtain as a result of its refusal to provide the payoff statement, including the extension fees.
12 These are Los Valles' actual damages flowing from USACM's failure to comply with its obligation to
13 provide a payoff statement.

14 **V.      USACM INTENTIONALLY MISREPRESENTED THAT AN EXIT FEE WAS OWING.**

15 The loan documents specifically addressed the circumstances in which USACM would be
16 entitled to receive an "Exit Fee."  Specifically, the Loan Agreement provides for payment of an Exit
17 Fee **at the time that the sale of the lot closes**.  Loan Agreement at § 3.8.  Despite the unambiguous
18 language of Section 3.8 of the Loan Agreement, USACM demanded the Exit Fee in February 2005 as
19 part of its payoff statement.  At the time, USACM was aware that no lots had been sold and that the
20 Exit Fee was not due and owing.

21 The USACM Trust's Objection to this claim is that the Loan Agreement does not mean what it
22 says when it provided that the Exit Fee would not be payable unless and until the sale of each
23 particular lot.  Irrespective of the fact that USACM was not entitled to collect this fee in the first place
24 because it was not licensed under California law, the language is clear and unambiguous – USACM

---

[6] The "Exit Fee" was not payable at the time of the "Prepayment" because the "Exit Fee" was not payable unless and until the lots were sold.  Loan Agreement at § 3.8.  Therefore, under the plain language of the Loan Agreement, the "Exit Fee" had not been earned and therefore was not payable in connection with "Prepayment" of the Loan.  Loan Agreement at § 3.4.  USACM's demand for the "Exit Fee" contravenes the plain unambiguous language of the Loan Agreement.

10

was not entitled to demand the Exit Fee unless and until the lots were sold. USACM's refusal to allow repayment of the loan without the more than $1.6 million Exit Fee was improper.[7]

## VI. THE USACM TRUST'S REMAINING ARGUMENTS DO NOT ALLOW IT TO AVOID LOS VALLES' CLAIM.

Without any factual or legal analysis whatsoever, the USACM Trust offers a series of conclusory objections to the claim in Parts IV.E. and IV.F of its Objection. On that basis alone, this Court should reject these blanket and unsupported objections. In any event, because of their conclusory nature, Los Valles cannot reasonably respond to any of these additional issues.

## VII. CONCLUSION

For the reasons set forth more fully above and in Los Valles' Proof of Claim, Los Valles respectfully requests that this Court enter an order: (i) denying the USACM Trust's Objection as it relates to Claim No. 1366; (ii) allowing Claim No. 1366 in its entirety; and (iii) granting such other and further relief as is just and proper under the circumstances.

DATED October 15, 2007.

        /s/ Pauline Ng Lee
Pauline Ng Lee, Esq.
Nevada Bar No. 6392
Scott D. Fleming, Esq.
Nevada Bar No. 5638
Hale Lane Peek Dennison and Howard
3930 Howard Hughes Parkway, 4th Floor
Las Vegas, Nevada 89169

Peter J. Mort (SBN 102480)
(*Pro Hac Application Pending*)
Bruce Jacobs (SBN 194114)
(*Pro Hac Application Pending*)
Akin Gump Strauss Hauer & Feld, LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012

Attorneys for Los Valles Land & Golf LLC

---

[7] Los Valles does not understand the USACM Trust's argument with respect to reliance. The USACM Trust appears to argue that Los Valles could not have relied upon USACM's representation that an Exit Fee was due in February 2005 because of an agreement that was reached eighteen months later, in October 2006. Such an argument makes no sense. How could an agreement in October 2006 possibly have affected Los Valles' conduct in February 2005? It could not.

# PROOF OF SERVICE

I CERTIFY THAT ON THE 2ND OF OCTOBER, 2007, I SERVED A COPY OF THE NOTICE OF WITHDRAWAL AS COUNSEL FOR ROLLAND P. WEDDELL AND SPECTRUM FINANCIAL GROUP BY DEPOSITING A COPY OF THE SAME IN A SEALED ENVELOPE IN THE UNITED STATES MAIL, RENO, NEVADA, FIRST-CLASS POSTAGE FULLY PREPAID, OR BY ELECTRONIC NOTIFICATION AND ADDRESSED TO THE PERSONS AS FOLLOWS:

*/S/ CYNDY ARNOLD*

**ELECTRONIC NOTICE TO:**

- MICHELLE L. ABRAMS    mabrams@mabramslaw.com
- FRANKLIN C. ADAMS    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com
- NANCY L ALLF    nallf@parsonsbehle.com, karen_lawrence@gshllp.com
- NANCY L ALLF    nancy_allf@gshllp.com, karen_lawrence@gshllp.com
- FRANK A. ANDERSON    anderson.frank@pbgc.gov, efile@pbgc.gov
- PETER C. BERNHARD    peter.bernhard@bullivant.com, michelle.diegel@bullivant.com
- BMC GROUP, INC.    evrato@bmcgroup.com, ecf@bmcgroup.com; jmiller@bmcgroup.com; mjohn@bmcgroup.com
- GEORGANNE W. BRADLEY    georganne.bradley@bullivant.com, mary.opatrny@bullivant.com
- KELLY J. BRINKMAN    kbrinkman@gooldpatterson.com
- THOMAS R. BROOKSBANK    tom@tombrooksbank.com, renee@tombrooksbank.com
- ANDREW M. BRUMBY    abrumby@shutts-law.com, rhicks@shutts-law.com; lmackson@shutts-law.com
- LOUIS M. BUBALA    lbubala@jonesvargas.com, tbw@jonesvargas.com; aanthony@jonesvargas.com
- MATTHEW Q. CALLISTER    mqc@callister-reynolds.com, maggie@callister-reynolds.com; jrammos@callister-reynolds.com
- CANDACE C CARLYON    ltreadway@sheacarlyon.com, ccarlyon@sheacarlyon.com; bankruptcyfilings@sheacarlyon.com; manthony@sheacarlyon.com
- MICHAEL W. CARMEL    michael@mcarmellaw.com, nancy@mcarmellaw.com; ritkin@steptoe.com
- ROB CHARLES    rcharles@lrlaw.com, cjordan@lrlaw.com
- MICHAEL W. CHEN    yvette@ccfirm.com
- KEVIN B. CHRISTENSEN    kbchrislaw@aol.com
- JANET L. CHUBB    tbw@jonesvargas.com
- JANET L. CHUBB    tbw@jonesvargas.com
- WILLIAM D COPE    cope_guerra@yahoo.com
- LAUREL E. DAVIS    ldavis@fclaw.com, mhurtado@fclaw.com
- THOMAS W. DAVIS    twd@h2law.com, emarchetti-harris@howardandhoward.com
- DEBT ACQUISITION COMPANY OF AMERICA V, LLC (aw)    awhatnall@daca4.com

- J CRAIG DEMETRAS    JCD@demetras-oneill.com, jar@demetras-oneill.com; mdh@demetras-oneill.com
- RICHARD I. DREITZER    rdreitzer@yahoo.com
- THOMAS H. FELL    BANKRUPTCYNOTICES@GORDONSILVER.COM; bknotices@gordonsilver.com
- SCOTT D. FLEMING    sfleming@halelane.com, dbergsing@halelane.com
- GREGORY E GARMAN    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com
- DOUGLAS D. GERRARD    DGERRARD@GERRARD-COX.COM, ekaymedellin@gerrard-cox.com
- WADE B. GOCHNOUR    wgochnour@hwmlvlaw.com, donnat@hwmlvlaw.com
- CARLOS A. GONZALEZ    carlos.gonzalez2@usdoj.gov, Darlene.Ruckard@usdoj.gov:Mary.Booker@usdoj.gov
- GERALD M GORDON    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com
- R. VAUGHN GOURLEY    vgourley@lvcm.com
- TALITHA B. GRAY    bankruptcynotices@gordonsilver.com; bknotices@gordonsilver.com
- JAMES D. GREENE    bknotice@bhfs.com
- MARK H. GUNDERSON    kweaver@gundersonlaw.com
- MARJORIE A. GUYMON    bankruptcy@goldguylaw.com, ddias@goldguylaw.com; angelenal@goldguylaw.com
- PETER W. GUYON    pguyon@yahoo.com
- JEFFREY R. HALL    jhall@sheacarlyon.com, jhall@hutchlegal.com
- XANNA R. HARDMAN    xanna.hardman@gmail.com
- STEPHEN R HARRIS    noticesbh&p@renolaw.biz
- JEFFREY L HARTMAN    notices@bankruptcyreno.com, dle@bankruptcyreno.com
- BRIGID M. HIGGINS    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com
- RICHARD F. HOLLEY    rholley@nevadafirm.com, paltstatt@nevadafirm.com; vnelson@nevadafirm.com; sliberio@nevadafirm.com; bkecf@nevadafirm.com
- RANDOLPH L. HOWARD    rhoward@klnevada.com, ckishi@klnevada.com; bankruptcy@klnevada.com
- DAVID W. HUSTON    dwh@hustonlaw.net, swaits@hustonlaw.net
- JASON A. IMES    bkfilings@s-mlaw.com
- ROBBIN L. ITKIN    ritkin@steptoe.com, sgottlieb@steptoe.com; skopman@steptoe.com; keckert@steptoe.com; jgoldman@steptoe.com; kpiper@steptoe.com
- CHRISTOPHER D JAIME    cjaime@waltherkey.com, kbernhar@waltherkey.com
- EVAN L. JAMES    ejameslv@embarqmail.com, kbchrislaw@aol.com
- ANNETTE W JARVIS    ajarvis@rqn.com
- ERIN E. JONES    ejones@diamondmccarthy.com, cburrow@diamondmccarthy.com
- TY E. KEHOE    TyKehoeLaw@aol.com
- ROBERT R. KINAS    rkinas@swlaw.com, jmcbee@swlaw.com; jmath@swlaw.com; mfull@swlaw.com; cdossier@swlaw.com; lvdocket@mindspring.com
- DEAN T. KIRBY    dkirby@kirbymac.com, jhebert@kirbymac.com; lackerman@kirbymac.com
- ZACHARIAH LARSON    ecf@lslawnv.com, susans@lslawnv.com
- JOHN J. LAXAGUE    jlaxague@caneclark.com
- GEORGE C LAZAR    glazar@foxjohns.com, gclazar@sbcglobal.net

- NILE LEATHAM    nleatham@klnevada.com, ckishi@klnevada.com; bankruptcy@klnevada.com
- ROBERT C. LEPOME    rlepome@cox.net, smstanton@cox.net
- TYSON M. LOMAZOW    tlomazow@milbank.com
- ANNE M. LORADITCH    ecffilings@LRLaw.com, aloraditch@LRLaw.com; pkois@LRLaw.com
- ERIC D MADDEN    emadden@diamondmccarthy.com, jsickels@diamondmccarthy.com
- PATRICIA A. MARR    lvlaw03@yahoo.com
- JAMES C. MCCARROLL    , dturetsky@reedsmith.com; aleonard@reedsmith.com
- REGINA M. MCCONNELL    rmcconnell@kssattorneys.com
- WILLIAM L. MCGIMSEY    lawoffices601@lvcoxmail.com
- RICHARD MCKNIGHT    mcknightlaw@cox.net, gkopang@lawlasvegas.com; cburke@lawlasvegas.com
- JEANETTE E. MCPHERSON    bkfilings@s-mlaw.com; info@s-mlaw.com
- JEANETTE E. MCPHERSON    bkfilings@s-mlaw.com; info@s-mlaw.com
- SHAWN W MILLER    bankruptcyfilings@sheacarlyon.com, smiller@sheacarlyon.com; ltreadway@sheacarlyon.com; mleavitt@sheacarlyon.com; manthony@sheacarlyon.com
- DAVID MINCIN    mcknightlaw@cox.net, gkopang@lawlasvegas.com; dmincin@lawlasvegas.com,cburke@lawlasvegas.com
- JOHN F MURTHA    jmurtha@woodburnandwedge.com
- ERVEN T. NELSON    erv@rlbolick.com, susan@rlbolick.com; erin@rlbolick.com
- JOHN F. O'REILLY    jor@oreillylawgroup.com, tor@oreillylawgroup.com; bc@oreillylawgroup.com; mg@oreillylawgroup.com; lc@oreillylawgroup.com
- TIMOTHY R. O'REILLY    tor@oreillylawgroup.com, jor@oreillylawgroup.com; bc@oreillylawgroup.com; mg@oreillylawgroup.com; lc@oreillylawgroup.com
- BOB L. OLSON    ecffilings@beckleylaw.com, bolson@beckleylaw.com; dgriffis@beckleylaw.com
- DONNA M. OSBORN    ebaker@marquisaurbach.com, dosborn@marquisaurbach.com; tszostek@marquisaurbach.com; kgallegos@MarquisAurbach.com
- CHRISTINE M PAJAK    cpajak@stutman.com, ekarasik@stutman.com
- ANDREW M. PARLEN    aparlen@stutman.com
- DONALD T. POLEDNAK    sandplegal@yahoo.com, spbankruptcy@yahoo.com
- PAUL C RAY    info@johnpeterlee.com
- THOMAS RICE    trice@coxsmith.com, ggattis@coxsmith.com; jbrown@coxsmith.com; aseifert@coxsmith.com; dwilliamson@coxsmith.com
- GORDON C. RICHARDS    gcrclarkandrichards@earthlink.net, sebclarkandrichards@earthlink.net
- CHRISTINE A ROBERTS    bankruptcy@rocgd.com
- STACY M. ROCHELEAU    stacy@arlawgroup.com, wendy@arlawgroup.com
- SUSAN WILLIAMS SCANN    sscann@deanerlaw.com, palexander@deanerlaw.com
- LENARD E. SCHWARTZER    bkfilings@s-mlaw.com
- BRIAN D. SHAPIRO    ecf@brianshapirolaw.com, tiffany@brianshapirolaw.com; brianshapiroesq@yahoo.com; bshapiro@brianshapirolaw.com
- JAMES PATRICK SHEA    bankruptcyfilings@sheacarlyon.com, ltreadway@sheacarlyon.com; jshea@sheacarlyon.com; manthony@sheacarlyon.com
- SHLOMO S. SHERMAN    ssherman@sheacarlyon.com, bankruptcyfilings@sheacarlyon.com; ltreadway@sheacarlyon.com; rmsmith@sheacarlyon.com; mleavitt@sheacarlyon.com; manthony@sheacarlyon.com

14

- AMBRISH S. SIDHU    ecfnotices@sidhulawfirm.com
- JEFFREY G. SLOANE    gjklepel@yahoo.com, rmcconnell@kssattorneys.com
- ALAN R SMITH    mail@asmithlaw.com, turk@asmithlaw.com; marsh@asmithlaw.com; darby@asmithlaw.com
- ADAM M. STARR    starra@gtlaw.com
- DAVID A. STEPHENS    dstephens@lvcm.com
- PETER SUSI    cheryl@msmlaw.com, msm@msmlaw.com
- ERIC W. SWANIS    swanise@gtlaw.com, barberc@gtlaw.com; lengemannc@gtlaw.com; boodtb@gtlaw.com; dittrichr@gtlaw.com; driverv@gtlaw.com
- JEFFREY R. SYLVESTER    jeff@sylvesterpolednak.com
- KAARAN E. THOMAS    kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com
- ROLLIN G. THORLEY    rollin.g.thorley@irscounsel.treas.gov
- U.S. TRUSTEE - LV - 11    USTPRegion17.lv.ecf@usdoj.gov
- ERIC VAN    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com
- GREGORY J. WALCH    GWalch@Nevadafirm.com
- RUSSELL S. WALKER    rwalker@wklawpc.com, eloveridge@wklawpc.com; ckirk@wklawpc.com; tgrover@wklawpc.com
- WHITNEY B. WARNICK    wbw@albrightstoddard.com, bstessel@albrightstoddard.com
- GREGORY L. WILDE    bk@wildelaw.com
- RYAN J. WORKS    rworks@mcdonaldcarano.com, kbarrett@mcdonaldcarano.com; dsampson@mcdonaldcarano.com; aguenther@mcdonaldcarano.com; hvenglik@mcdonaldcarano.com
- MATTHEW C. ZIRZOW    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com