E-filed: October 18, 2007

Marc A. Levinson (California Bar No. 57613)
Jeffery D. Hermann (California Bar No. 90445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California  95814-4497
Telephone:    (916) 447-9200
Facsimile:    (916) 329-4900
Email:        malevinson@orrick.com
              jhermann@orrick.com
              sdon@orrick.com

Robert Kinas (Nevada Bar No. 6019)
Claire Dossier (Nevada Bar No. 10030)
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone:    (702) 784-5200
Fax:          (702) 784-5252
Email:        rkinas@swlaw.com
              cdossier@swlaw.com

*ATTORNEYS FOR USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>USA SECURITIES, LLC,<br>                                    Debtors | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter Number: 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | USA CAPITAL DIVERSIFIED<br>TRUST DEED FUND, LLC<br>SECOND 90-DAY REPORT |

**POST-EFFECTIVE DATE USA CAPITAL DIVERSIFIED TRUST
DEED FUND, LLC's SECOND REPORT OF ACTION TAKEN AND PROGRESS
TOWARDS CONSUMMATION OF CONFIRMED PLAN OF REORGANIZATION**

Post-Effective Date USA Capital Diversified Trust Deed Fund, LLC ("Diversified" or "Revested Debtor"), a revested debtor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its counsel noted above, hereby submits this Second Report of Action Taken and Progress Towards Consummation of Confirmed Plan of Reorganization (the "Second Report"), pursuant to the Court's "Order Confirming the 'Debtors' Third Amended Joint

154587.5

Chapter 11 Plan of Reorganization,' as Modified Herein" [Docket No. 2376] (the "Confirmation Order") entered January 8, 2007. *See* Confirmation Order, ¶ 74. The Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan") went effective on March 12, 2007 (the "Effective Date"). On June 11, 2007, Diversified filed its "First Report of Action Taken and Progress Towards Consummation of Confirmed Plan of Reorganization" [Docket No. 3954 (the "First Report"), which encompassed the period from the Effective Date through June 10, 2007. This Second Report is for the period from June 10, 2007 through September 11, 2007. This Second Report incorporates the requirements and structure of former Rule 3020(a) of the Court's Local Rules of Bankruptcy Practice, abrogated in May 2006, which was as follows:

(A)     **A schedule of personal property costing more than $5,000 and any real property acquired, sold or disposed of and the price paid for each:**

| | |
|---|---|
| Personal property costing more than $5,000: | None. |
| Real property acquired, sold or disposed of: | None. |
| Total: | $0.00 |

(B)     **A schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid:**

Due to the nature of its operations as an investment fund with contracted services through intercompany debtor entities and no employees, Diversified had only a relatively small number of claims filed against it in the Chapter 11 Cases. Such claims included general unsecured claims (many of which were misfiled as creditor claims by holders of equity interests in Diversified) and administrative expense claims related to professional fees accrued during the Chapter 11 Cases.

The Court granted the professionals' fee applications.

Since June 11, 2007, Diversified has filed joint objections with USA Capital First Trust Diversified Fund, LLC ("FTDF") and USA Commercial Mortgage Company ("USACM") in the USACM bankruptcy case. The reason for the joint objections is that many of the proofs of claim in the USACM bankruptcy case should be proofs of interest

154587.5

- 2 -

filed in the Diversified bankruptcy case. Equity-holders submit proofs of interest; lenders submit proofs of claim. Diversified has joined in the objections of USACM so that the filers of the disallowed proofs of claim understand where their equity interests will be addressed.

Jerry McGimsey and other members of the McGimsey family (the "McGimsey Claimants") appealed the Court's February 14, 2007 order disallowing their claims [Docket No. 2765] to the Ninth Circuit Court of Appeals Bankruptcy Appellate Panel (the "BAP"). The BAP reversed the Court's disallowance of the McGimsey Claimants' claims on August 15, 2007 [Docket No. 4726]. On September 24, 2007, Diversified filed an adversary proceeding [Bankruptcy Case No. BK-S-07-01165-LBR, Docket No. 4864] requesting subordination of the McGimsey Claimants' claims pursuant to 11 U.S.C. § 510(b).

On September 17, 2007, Salvatore Reale filed an unsecured proof of claim against Diversified for $4,869,310.57 [Claim No. 148]. Diversified will be filing an objection to such proof of claim and a request that the Court establish a reserve in the amount of zero dollars on account of such claim so that Diversified may make a distribution of cash to its equity members in the near future. Diversified expects that the motion seeking to establish a reserve on account of such claim will be set on the Court's calendar for December 5, 2007.

Under the Plan, Diversified is required to make payments to any creditors and, after all such payments are made, to distribute profits to its members holding equity interests. Pursuant to the Plan, Diversified is operating under the "DTDF Amended Operating Agreement," a copy of which was attached as Exhibit 1 to the Plan Documents Supplement and Notice of Disclosures [Docket No. 2001] filed in the Chapter 11 Cases on December 8, 2006, and is attempting to recover the greatest amount of assets possible in order to make distributions to its members at the earliest possible opportunity.

///

///

154587.5

- 3 -

**(C) A schedule of executory contracts entered into:**

Pursuant to the Plan, Diversified entered into agreements, as of March 13, 2007, retaining professionals to provide legal and financial advisory services necessary to conduct Diversified's affairs. Diversified retained Orrick, Herrington & Sutcliffe LLP as general counsel to provide legal services. Beckley Singleton, Chartered was originally Diversified's local counsel. But because Beckley Singleton, Chartered merged with Lewis & Roca L.L.P., Diversified has retained new local counsel, Snell & Wilmer L.L.P. Diversified has also retained FTI Consulting to provide accounting and financial-related advisory services. In addition, on a limited basis, Diversified retained Mesirow Financial Interim Management to assist with financial and administrative-related transitional issues, Ray Quinney & Nebeker, P.C. to assist with transitional issues related to the Chapter 11 Cases, and BMC Group, Inc. for ongoing website hosting and related distribution services. Diversified anticipates that other normal course services will be procured on a contractual, as-needed basis since Diversified has no employees.

**(D) A statement listing each postpetition tax (i.e., income, payroll, property, sales), payee, and the amount actually paid:**

| | |
|---|---|
| Federal Unemployment taxes: | None. |
| Federal Payroll taxes: | None. |
| Nevada Unemployment taxes: | None. |
| Total: | $0.00 |

**(E) Progress toward completion of the Plan and a list and status of any pending adversary proceedings or motions and resolutions expected:**

The major terms of the Plan with respect to Diversified have all been accomplished. The Operating Agreement of Diversified has been amended, USA Capital First Trust Deed Fund, LLC has made certain payments and assignments to Diversified, and Diversified is operating in the post-confirmation realm.

A detailed report of Diversified's various collection efforts was mailed to Diversified equity holders on August 22, 2007, through BMC Group, Inc. A copy

154587.5

- 4 -

of the August 22, 2007 report is attached hereto and incorporated herein by this reference.

In addition to the matters addressed in Exhibit A and at paragraph (B) above, Diversified and the HMA Sales, LLC Chapter 11 Trustee (the "HMA Trustee") reached settlement agreements with certain defendants in the adversary proceeding pending before this Court, case no. BK-S-06-01256 LBR (the "HMA Adversary"), and in the HMA Sales, LLC bankruptcy case, case no. BK-S-07-12694 LBR) (the "HMA Bankruptcy"). Diversified and the HMA Trustee engaged in mediation with Salvatore Reale, reached a settlement agreement, and the Court approved that agreement. Diversified and the HMA Trustee also engaged in mediation with the Great White Investment NV, Inc. defendants, reached a settlement agreement, and the Court approved that agreement. Diversified and the HMA Trustee also engaged in mediation with National Real Estate Holdings, Inc., reached a settlement agreement, and is in the process of documenting that agreement. Diversified, the HMA Trustee, and the Chapter 11 trustees in the Hantges and Milanowski Bankruptcy Cases are engaged in settlement discussions to resolve the claims against USA Commercial Real Estate Group, Inc. The principal remaining HMA defendant is Al Abolafia. Discovery with respect to Mr. Abolafia is ongoing.

Also, on September 19, 2007, there were 11 U.S.C. § 341 creditors meetings (the "Creditors Meetings") in the bankruptcy cases of Joseph D. Milanowski (BK-S-07-13162 LBR) and Thomas Hantges (BK-S-07-13163 LBR). Diversified was one of the petitioning creditors who started the Milanowski and Hantges bankruptcy cases. During the Creditors Meetings, Milanowski and Hantges provided testimony regarding their assets.

///
///
///

154587.5

- 5 -

**(F)   A statement regarding the status of payment of UST quarterly fees:**

All UST fees have been paid in full through September 11, 2007, the final date covered by this Second Report.

Dated this 18th day of October, 2007.

SNELL & WILMER L.L.P.

By: */s/ Claire Y. Dossier*
Robert R. Kinas (Nevada Bar No. 6019)
Claire Y. Dossier (Nevada Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

And

ORRICK, HERRINGTON & SUTCLUFFE LLP
Marc A. Levinson
Jeffery D. Hermann
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497

*Attorneys for USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC*

154587.5

# EXHIBIT A

# USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC
Robert G. Worthen, Chairman of the Board

August 22, 2007

Dear USA Capital Diversified Trust Deed Fund, LLC Investor:

I again write on behalf of the Board of Directors of USA Capital Diversified Trust Deed Fund, LLC ("DTDF") to update you about DTDF's efforts to collect assets. As described in more detail below, we continue to devote our time to recovering assets, with the goals of being able to make the best recovery possible and to make an initial distribution to investors this year, although we still cannot at this time predict how much will be distributed or when the first distribution will be made. We once again remind you that there is no easy way to undo the damage done to DTDF by its pre-bankruptcy managers, Joe Milanowski ("Milanowski") and Tom Hantges ("Hantges").

**DTDF Management.**
As discussed in my May 10th letter to all investors, DTDF emerged from chapter 11 on March 12, 2007. As of that date, Tom Allison ceased his role as Chief Restructuring Officer of DTDF, and DTDF's chapter 11 counsel also moved on to other projects. Michael Tucker of FTI Consulting became DTDF's new manager that day. He answers to the Board of Directors, which is comprised of five DTDF investors: myself, as Chairman of the Board, Robert Hardy, Charles Nichols, Bob Fitzner and Richard Kreps. DTDF, has retained the former committee counsel, Orrick, Herrington & Sutcliffe LLP and Beckley Singleton Chtd., and has retained as its financial advisor, FTI Consulting, which served as financial advisor to the DTDF Committee.

**Distributions To DTDF Members.**
As described below, DTDF has collected over $8 million since May 10th, but it also has incurred and paid significant professional fees. We hope to be in a position within the next two months to know whether DTDF will be able to make a distribution this year, but as you continue to read this letter and the attached addendum, you will see that there still is much litigation in store for us, and DTDF must maintain significant reserves in order to fund its recovery efforts.

**DTDF's Actions To Collect Assets And The Non-Performing DTDF Loans.**
 The following loans and claims are DTDF's major assets. In the May 10th letter, we described the loans and the issues raised by each. We once again summarize the current status of each loan and significant claims against third parties on the attached addendum. The collection status of many of the major assets changes daily.

- 10-90, Inc. loan – owed by Investment Partners
- Claims against Milanowski and Hantges
- Ashby real estate projects
- Tree Moss Partners/EPIC Loan – The Marquis Villas in Palm Springs
- USA Investors VI – The Hotel Zoso in Palm Springs

OHS West:260287496.1

Diversified Trust Deed Fund Investors
August 22, 2007
Page 2

- Colt Gateway LLC loans – The former Colt Armory located in Hartford, Connecticut
- BySynergy obligation – The subject property located in Sedona, Arizona
- Loans Serviced by Compass
- HMA litigation – related to the sale of the Royal Hotel in Las Vegas
- Claims against USA Commercial Mortgage ("USACM")

**Communication With DTDF Members.**
Our next letter will be sent in November. We posted the May 10th letter as well as this one on the DTDF website. All future letters will be posted there as well. The website also contains key pleadings knowing that many of you find this helpful and informative. It may be accessed at **http://usacapdtdf.bmcgroup.com**.

As it is very expensive to communicate with our professionals, who bill hourly fees, I am pleased to receive your phone calls and answer questions about our status to the best of my ability. My personal cell phone number is (702) 239-4222.

You may send us email inquiries at diversifiedfund@orrick.com.

Address changes should be sent as a written request with your legal vesting name and account number to DTDF at the following address:

USA Capital Diversified Trust Deed Fund
C/O FTI Consulting, Inc.
Two North Central Avenue
Suite 1200
Phoenix, Arizona 85004

**Conclusion.**
We continue to ask for your patience, and want to assure you that the Board and the DTDF professionals are giving our best efforts to obtain the best recovery for you.

Best Regards,
Robert G. Worthen
Chairman of the Board

OHS West:260287496.1

Attachment to Letter of August 22, 2007
Page 1

## Introduction.

Because our May 10th letter was the Board's first communication to DTDF investors, we went into great detail about each of DTDF's significant loans and claims. Thus, the attachment was five and a half pages of single-spaced text, all of it substantive. The following discussion *updates* the previous letter, and as a result provides far less detail. The information provided below assumes that you have read the May 10th letter, but that you recall only the key details. After reviewing the following, you may want to re-read portions of the earlier letter (which is posted on the DTDF website, as explained earlier).

- Investment Partners, Its Chapter 11 Case And Trustee. Investment Partners was the vehicle pursuant to which Hantges and Milanowski, under the guise of a loan to 10-90, Inc. transferred in excess of $55 million of DTDF investor funds to themselves as a way to engage in speculative real estate activities ("10-90 Loan"). With interest, obligation owing under the 10-90 Loan exceeds $100 million. As previously reported the Board voted to join with other of Investment Partners' creditors in the filing of an involuntary chapter 11 petition against that entity and requesting an interim trustee. Bankruptcy Judge Linda Riegle granted the interim trustee motion. The next day, the United States Trustee appointed Lisa Poulin of Corporate Revitalization Partners to serve as interim trustee of Investment Partners. She has control of Investment Partners' assets, and, along with her counsel, Gordon & Silver, has been working to identify, understand and preserve Investment Partners' assets, with the goal of liquidating those assets for the benefit of creditors (of which DTDF is the largest).

- Hantges and Milanowski Personal Bankruptcy Cases. Once control of Investment Partners was taken from the hands of Milanowski and Hantges and placed in the capable hands of Ms. Poulin, DTDF, again working with the USA Commercial Mortgage Trust, filed involuntary chapter 11 petitions against Hantges and Milanowski, personally. The petitions and many related pleadings were filed on May 29th, and at the conclusion of a hotly-contested June 4th hearing, Judge Riegle ordered the appointment of interim trustees in each case. Shortly thereafter, the United States Trustee appointed Michael Carmel to serve as the interim trustee for Hantges, and Ford Elsaesser to serve as the interim trustee for Milanowski. Each is an experienced and well-regarded lawyer with extensive trustee experience, each was very acceptable to DTDF and the USACM Trust, and each has retained first-rate counsel. Both trustees immediately took steps to begin to corral the assets of their respective debtors. Not surprisingly, both Hantges and Milanowski fought the involuntary petitions, but on June 22nd, Judge Riegle entered an order for relief in the Hantges case. That meant that Hantges must remain in bankruptcy. Hantges moved to set aside that order, but such motion was denied in early July. Milanowski fought harder, and the trial on his defense was delayed until August 9th. The effort of DTDF and Milanowski's other creditors in preparation for and during the August 9th trial resulted in an order for relief entered in his case as well. The result of the foregoing is that Elsaesser and Carmel are now the permanent trustees, and they and their counsel are actively pursuing assets for the benefit of creditors. The largest creditor of both estates is DTDF because Hantges and Milanowski guaranteed the so-called 10-90 Note, the current balance of which (as noted above) exceeds $100 million. The

OHS West:260287496.1

Attachment to Letter of August 22, 2007
Page 2

investigations by the two trustees have been hampered by Hantges and Milanowski having invoked their Constitutional rights against self-incrimination in response to many of the questions posed by the trustees. However, the two trustees continue to work aggressively to identify and gain control of Milanowski's and Hantges' assets for the benefit of their creditors.

- **Ashby Real Estate Projects, Including Roripaugh Ranch.** The 10-90 Loan is secured by the assignment of membership interests in Ashby USA, LLC, Capital Land Investors, LLC and Random Developments, LLC. Investment Partners is the 50% owner of such entities, and now that Ms. Poulin and her professionals control Investment Partners, they have taken the lead in attempting to create value for the equity interests and for creditors such as DTDF. In May, she and her professionals, along with DTDF professionals met with Ashby representatives in Las Vegas in an attempt to learn more about the Ashby properties and how to achieve maximum value from them. The meetings and negotiations are ongoing, and DTDF professionals are actively participating in Ms. Poulin's quest for Ashby-related data and documents and in the review thereof.

- **Tree Moss Partners and the Marquis Villas.** Lisa Poulin, through her position of trustee of Investment Partners, now controls Tree Moss Partners, LLC in its chapter 11 case. Tree Moss has an unsecured obligation in excess of $20 million to DTDF. Recently, Judge Riegle approved Ms. Poulin's proposal to establish bid procedures for the sale/auction of the 63 condominium units in the Marquis Villas resorts in Palm Springs, California, owned by Tree Moss. DTDF supports the sale of the Marquis Villa units, and has been both actively monitoring the sale process and working with Ms. Poulin to identify potential buyers. The sale/auction of the Marquis Villas units, along with the sale of the Hotel Zoso (described below) is scheduled for October 15, 2007. Because both Tree Moss and the owner of the Hotel Zoso are in chapter 11 cases, though, it is likely that no payment of the sale proceeds to DTDF or any other unsecured creditor will be made until early 2008. The current sale contract is for $10,800,000, which will be the opening bid amount at the auction.

- **USA Investors VI ("Investors VI").** DTDF has a large unsecured claim against Investors VI which owns the Hotel Zoso, located in Palm Springs across the street from the Marquis Villas. Lisa Poulin, through her position of trustee of Investment Partners, now controls Investors VI in its chapter 11 case. As mentioned above, the sale/auction of the Hotel Zoso will be held on October 15th at the same time as the sale of the Marquis Villas. That sale may result in a substantial payment to DTDF as an unsecured creditor, but much depends on the sale price and on the requisite payment to direct lenders. The direct lender loan is serviced by the USACM Trust and secured by a first priority deed of trust of approximately $20 million on the Hotel Zoso. The current sale contract is for $25,100,000, which will be the opening bid amount at the auction.

- **Colt Loans.** As noted in the May 10th letter, the DTDF/Colt relationship is very complex, in that DTDF is one of three direct lenders that are the beneficiaries of a promissory note secured by a first trust deed on certain parcels and buildings comprising a portion of the overall Colt project. DTDF's share of the "Colt 1st loan" principal

OHS West:260287496.1

Attachment to Letter of August 22, 2007
Page 3

balance is approximately $2.5 million. DTDF also made three additional advances to Colt, but these three loans are "undocumented," meaning that promissory notes and related security documentation was not formally signed by the parties involved. Colt management has made claims that these advances, which total $8.3 million, were not loans at all, but rather were infusions of equity. In the last quarter DTDF has met on several occasions with Colt Gateway in Hartford, Connecticut, in an attempt to negotiate a resolution and payment terms of Colt's obligations. The meetings and a number of follow-up communications by DTDF resulted in DTDF's receipt of workout proposals from Colt, but, unfortunately, the proposals were wholly unacceptable. DTDF is exploring its options, and has retained Connecticut counsel in anticipation of foreclosure and other litigation.

- The BySynergy Obligation. DTDF continues to be in communication with BySynergy about the $4.4 million unsecured loan to BySynergy, 87% of which is owned by DTDF and 13% by the USACM Trust. DTDF has conducted a Rule 2004 examination of a BySynergy principal, reviewed various documents produced by BySynergy during the examination and had discussions with parties involved in the transaction. DTDF has been in contact with BySynergy's counsel, and expects to receive additional documents in the near future. BySynergy has raised a number of defenses to the DTDF claim, and has promised to provide evidence of such defenses to DTDF. Litigation may well ensue, but first we need to obtain all relevant documents so as to fully understand BySynergy's obligations and its putative defenses.

- Loans Serviced by Compass. DTDF is no different than any other direct lender in the loans serviced by Compass. DTDF has interest in nine loans that Compass services. The total outstanding amount due for the nine loans as of 5/31/07 is approximately $6.3 million ($3.4 million of the $6.3 million is due from the Amesbury/Hatters Point loan). Despite numerous requests of Compass, DTDF has received limited information on the status of DTDF's loans and hasn't received a loan summary since 5/31/07.

Compass and the LPG have various disputes between each other. The primary dispute is in regards to the servicing rights of the direct lender loans. Diversified is not involved in the disputes and has not been impacted by them.

- Settlement Of The HMA Adversary Relating To The Royal Hotel. As described in the May 10th letter, on December 22, 2006, Hantges and Milanowski caused one of their affiliates, HMA Sales LLC to sell the Royal Hotel for $24 million in cash and a promissory note or notes for approximately $5 million. The sale escrow paid the Salvatore Reale Trust ("Reale"), a creditor of Milanowski and Hantges personally, approximately $9.9 million. And the escrow paid Great White Investment NV Inc. ("Great White") $1 million even though Great White was not a creditor of HMA, either. DTDF and the DTDF Committee promptly sued Reale, Great White and a number of people to whom Great White had made transfers. In January and February, with the Effective Date imminent, the DTDF Committee professionals began to take control of the adversary proceeding from DTDF's bankruptcy counsel. The adversary was very hotly

OHS West:260287496.1

Attachment to Letter of August 22, 2007
Page 4

contested, and included prejudgment remedies, attachments preserving approximately $7 million, depositions, interrogatories, declarations and the like. The adversary became more complex when Ms. Poulin took control over, and eventually filed a chapter 11 case for, HMA. Judge Riegle recommended mediation before Bankruptcy Judge Bruce Markell, and after one failed attempt, Reale, DTDF and HMA reached a settlement at a mediation on May 25th. Judge Riegle approved the settlement on June 29th, and DTDF has been paid $8.5 million. Thereafter, DTDF, HMA and the Great White defendants mediated their disputes before Judge Markell, reaching agreement on June 29th. The motion for approval of the settlement will be heard by Judge Riegle on August 23rd. The settlement calls for a potential recovery of $760,000, some of which is to be paid immediately upon approval of the settlement, and some of which will be paid when certain individuals' assets are converted to cash. If the settlement is approved – which we believe it will be – the result will be the payment of approximately $360,000 to DTDF. There remain several additional defendants in the adversary, and DTDF and HMA are discussing how best to pursue them.

- <u>Disputes Concerning DTDF's Claims Against USACM</u>. The disputes between DTDF and the USACM Trust are multiple and complex. Rather than engage in warfare over their claims against one another, the two former debtors have been cooperating in the actions against Investment Partners, Milanowski and Hantges in an attempt to increase the pool of assets available for both estates. By mutual agreement, the parties have agreed to delay any substantive discussion or negotiation at this time, given the numerous other issues currently requiring full attention.