LEWIS
AND
ROCA
LLP
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona  85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 10/18/07

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10727-LBR |
| | Case No. BK-S-06-10728-LBR |
| | Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | |
| | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Jointly Administered Under Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | **USACM LIQUIDATING TRUST QUARTERLY REPORT FOR PERIOD ENDING  SEPTEMBER  30, 2007** |
| USA SECURITIES, LLC,                    Debtors. | |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The USACM Liquidating Trust Quarterly Report by Geoffrey Berman, Trustee for period ending September 30, 2007 is attached hereto.  For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

1874038.1

LEWIS
AND
ROCA
LLP

L A W Y E R S

1    DATED:  October 18, 2007.

2                                LEWIS AND ROCA LLP

3

4                                By:  /s/ RC (#6593)

5                                     Rob Charles, NV 6593
                                     *Counsel for USACM Liquidating Trust*

6

7    Proof of Service

8    Copy of the foregoing served via email on
     Thursday, October 18, 2007 to all parties

9    listed on the Post Effective Date Official
     Service List on file with this Court

10

11

12     /s/  Christine Laurel

13   Christine Laurel
     Lewis and Roca LLP

14

15

16

17

18

19

20

21

22

23

24

25

26

1874038.1

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
# USACM LIQUIDATING TRUST

## October 2007

## TABLE OF CONTENTS

**Page**

I.     TRUST ADMINISTRATION ................................................................. 1

    A.    Website ................................................................................. 1

    B.    Oversight Committee ........................................................ 1

    C.    Trust Staff .......................................................................... 1

II.    CONFIRMATION ORDER APPEALS .................................................. 2

III.    COMPASS' COMPLAINT TO REVOKE PLAN CONFIRMATION .......................... 3

IV.    USACM ISSUES ................................................................................. 3

    A.    Tax Returns ........................................................................ 3

    B.    USACM v. Compass USA SPE LLC ............................... 3

V.    INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS ................................................................................. 4

VI.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS ............................ 5

    A.    The USAIP Receivership and Involuntary Chapter 11 Case ................... 5

        1.    Trustee ..................................................................... 5

        2.    Appeal ..................................................................... 5

        3.    Proofs of Claim ....................................................... 6

        4.    Waverton Fee Application ..................................... 6

    B.    Insiders – Thomas Hantges and Joseph Milanowski ................... 6

        1.    Hantges .................................................................... 6

i

2.      Milanowski ................................................................... 7

3.      Proofs of Claim ............................................................. 7

C.    HMA Sales, LLC .................................................................. 7

D.    USA Commercial Real Estate Group .................................... 8

E.    Salvatore Reale ..................................................................... 8

F.    USA Investors VI, LLC .......................................................... 9

G.    Tree Moss Partners, LLC ...................................................... 10

VII.    COLLECTION OF TRUST ASSETS ............................................... 10

A.    Colt Loan .............................................................................. 10

B.    Compass Escrows ................................................................. 11

C.    Other Collections .................................................................. 11

VIII.    RELATED COMPANY INVESTIGATIONS .................................... 11

A.    USA Investors III, LLC ......................................................... 11

IX.    PROFESSIONAL FEE APPLICATION OBJECTIONS ........................ 12

A.    Pre-Effective Date Fees ........................................................ 12

B.    Post-Effective Date Fees ....................................................... 13

X.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS .......................... 13

A.    Overview ............................................................................... 13

B.    Contact Information .............................................................. 14

C.    Administrative, Priority and Secured Claims ........................ 14

D.    Unsecured Claims ................................................................. 15

E.    Disbursing Agent Agreement. ............................................... 17

XI.    LOAN SERVICING ISSUES ......................................................... 17

A.    Trust Loan Servicing - Placer Vineyards ............................... 17

B.    Compass Trust Loan Servicing – Collection of Prepaid Interest ................ 18

ii

C.     USACM Loan Servicing ........................................................................ 18

XII    TRUST FINANCIAL STATEMENT .......................................................... 19

228156.11

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during this second reporting period on (1) administration of the Trust; (2) appellate briefing and efforts to dismiss as moot appeals of the Order Confirming the 'Debtors' Third Amended Plan of Reorganization,' as Modified Herein ("Confirmation Order" and "Plan") and a complaint to revoke the Confirmation Order; (3) efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate; (4) investigation of causes of action against potential recovery targets; (5) preservation and pursuit of insider assets through involuntary bankruptcy cases of USA Investment Partners, LLC ("USAIP"), Joseph Milanowski, and Thomas Hantges, and advocating the Trust's interests in bankruptcy cases affecting Trust assets and loan servicing; (6) collection of other assets; (7) claims analysis and resolution of disputed claims; and (8) loan servicing issues.  These and other topics are briefly described in this report, along with comments on the attached financial statement of the Trust as of September 30, 2007.

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust changed the name of and kept the address of the Official Unsecured Creditors Committee's website as the Trust's website.  That address is: http://usacmcucc.bmcgroup.com/default.aspx.

### B.    Oversight Committee

The Trust functions with an Oversight Committee created by the Plan and the Trust Agreement.  Charles Hainsworth, Donald Walker, James Bonfiglio, Michael Tucker, and Suzanne Nounna, are the members of the Oversight Committee.  The Oversight Committee met on July 20, 2007 to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues.  The next meeting of the Oversight Committee is November 1, 2007.  Regular communication between the Trust and the Oversight Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff

I am employed by Development Specialists, Inc. ("DSI").[1]  The Trustee is using staff of DSI to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.  In addition, the Trustee selected Rob Charles[2] and

---

[1] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[2] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

Susan M. Freeman[3] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel. Separate litigation counsel, Allan Diamond of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

## II.    CONFIRMATION ORDER APPEALS

Three appeals were taken from the Confirmation Order. One, by USAIP, Thomas Hantges and Joseph Milanowski, was assigned case no. 2:07-cv-00138 in the United States District Court for the District of Nevada. That appeal was dismissed by the district court on motion filed by USACM and the other jointly administered Debtors and the Trust.

A second appeal was taken by the so-called Lender Protection Group ("LPG") (represented by Alan Smith) and with certain direct lenders (represented by the Jones Vargas firm). It is assigned case no. 2:07-cv-00072. A third appeal was taken by Debt Acquisition Company of America V, LLC ("DACA") and assigned case no. 2:07-cv-00160. The Debtors[4] filed motions to dismiss both the LPG and DACA appeals for lack of standing before the Trust took effect, which the district court later denied.

Also before the Trust took effect, Debtors filed an answering brief to the LPG opening brief on appeal. The Trust and FTDF Committee took the lead in preparing joint briefs on the DACA appeal, joined by post-Effective Date DTDF and with a separate joinder brief by the Debtors. Once the Plan became effective and initial distributions were made, the Trust, FTDF Committee and DTDF prepared motions to dismiss both appeals on grounds of mootness. Debtors joined these motions as well.[5]

Before ruling on the merits, on July 12, 2007, the district court entered a stipulated order in the DACA appeal for the dismissal of Realty and Securities from the appeal; and on July 13, 2007, the district court entered its stipulated order for the dismissal of FTDF, DTDF, Realty and Securities from the LPG appeal.

---

[3] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[4] "Debtors" means USACM, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF"), USA Capital Realty Advisors, LLC ("Realty"), and USA Securities, LLC ("Securities").

[5] By mootness, we mean that the transactions described in this report since the Effective Date of the Plan are so comprehensive, along with the transactions implementing the Plan for the other Debtors, that undoing those actions is all but impossible, and therefore the Trust believes the district court cannot grant effective relief on appeal.

228156.11

After hearing oral argument and considering the briefs, the district court then granted the motions to dismiss the LPG and DACA appeals and alternatively affirmed the bankruptcy court ruling on the merits on August 31, 2007. Thereafter, on September 27, 2007 DACA (but not LPG) filed a notice of appeal to the United States Court Of Appeals for the Ninth Circuit.

## III.    COMPASS' COMPLAINT TO REVOKE PLAN CONFIRMATION

On July 7, 2007, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada) and Compass Financial Partners, LLC (Delaware) filed a Complaint for Conditional Revocation of Confirmation Order Under 11 U.S.C. § 1144 and Rescission of Asset Purchase Agreement in the bankruptcy court, Case No. 07-01105-lbr. The Complaint seeks to revoke the Confirmation Order. FTDF filed a motion to dismiss the complaint. Before the court ruled on the motion, Compass dismissed FTDF from the action. Compass has not served the complaint on any defendant. The Trust has not been served with the complaint as of the date of this Report and it will vigorously defend the complaint and seek its dismissal.

## IV.    USACM ISSUES

### A.    Tax Returns

The Trust has been advised that the 2006 federal income tax returns for USACM have been prepared. Before the Trust became effective, USACM employed KPMG to prepare these tax returns and related K-1 information returns.   The project also includes returns for FTDF, DTDF, Securities and Realty.

### B.    USACM v. Compass USA SPE LLC

On August 7, 2007, USACM sued Compass for $258,996.00 that USACM alleges Compass owes pursuant to a sub-servicing agreement dated as of February 16, 2007. USACM had agreed to continue servicing loans for Compass pending Compass' application to be licensed by the State of Nevada Mortgage Lending Division. USACM alleges that Compass failed to pay sums due under the agreement. To date, the complaint has not been prosecuted. The Trust is interested in this action to the extent that it will reimburse USACM for sums paid to USACM's counsel and financial advisors in performing these sub-servicing agreement duties.

On September 7, 2007, USACM and Compass stipulated that Compass' deadline to answer the complaint would be extended through September 28, 2007. As of the date of this report, no answer has been filed.

228156.11

## V.    INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

As noted above, the Trust assumed the employment of the Diamond McCarthy law firm as special litigation counsel upon the Effective Date of the Plan. Diamond McCarthy has actively conducted formal and informal discovery of files, witnesses and transactions since its engagement in January 2007. The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors. In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to obtain payment for creditors. Diamond McCarthy is coordinating those efforts with others, including DTDF and the USAIP Trustee.

On July 3, 2007, Debtors consented in a document filed with the bankruptcy court to the Trust's counsel requesting documents from Debtors' pre-petition counsel for the purpose of investigating claims and causes of action. Debtors and the Trust agreed that such a production would not waive Debtors' attorney-client privilege.

On August 24, 2007, the Trust filed the Motion to Approve Amended Stipulated Protective Order. In January 2007, the bankruptcy court had put into place a procedure under a Stipulated Protective Order that governed the review and compilation of business records of USACM, in which USAIP, Hantges and Milanowski all claimed interests. The records, including emails, are critical to the claims that are being investigated and may be asserted by the Trust. The Amended Stipulated Protective Order clarified the time frames for review of documents and finally provided the Trust's special litigation counsel at Diamond McCarthy with a clear path to begin reviewing emails and other documents that have been waiting for review for over a year. The bankruptcy court approved the order on September 28, 2007.

The Trust has a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing. The two-year anniversary of the bankruptcy filing is April 2008.

On September 17, 2007, the Trust brought suit in the bankruptcy court, case no. 07-01154 to recover over $4 million from, against J.M.K. Investments, Ltd., Simon Family Trust, Steven Portnoff, JWB Investments, Inc., Brouwers Family LP, Larry C. Johns, Mary L. Johns, Paul Bloch Living Trust, Roni Amid, Robert M. Portnoff, Sarah Portnoff, Morningside Homes, Inc., Aurora Investments LP, Steven Janovich, Linda Janovitch, First Savings Bank, The Marvin & Valliera Myers Trust, Larry J. Middleton, Jennifer Middleton, Alabruj Limited Partnership, and Francis Family Trust.

228156.11

## VI.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    The USAIP Receivership and Involuntary Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 million Note") to USACM for the benefit of creditors (including DTDF). Repayment of the $58 million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned or in part by USAIP.[6] The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims.

One of USAIP's partners filed a lawsuit in the District Court, Central District of California, in Riverside (CA) Division, in late March 2007, Case No. 5:07-cv-00343-SGL and sought the appointment of a receiver. The motion for the appointment of the receiver was without notice to the Trust or to the Administrator of DTDF. USAIP "consented" to appointment of the receiver. An order was entered that prohibited an involuntary bankruptcy petition filing against USAIP. Working closely with Michael Tucker, the post-Effective Date Administrator for DTDF, the Trustee obtained a modification of the receivership order and then, along with additional petitioning creditors, immediately filed an involuntary bankruptcy petition in Nevada against USAIP (case #07-11821-LBR).

### 1.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the Bankruptcy Court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP. Lisa M. Poulin was appointed as interim trustee. She selected Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the court's approval.

### 2.    Appeal

The bankruptcy court has since entered an order for relief in the USAIP bankruptcy case after a short trial on the merits of the involuntary petition. Ms. Poulin was named the permanent trustee in conjunction with the order for relief being entered. Hantges and Milanowski have appealed the order for relief, which the Trust is opposing.

---

[6] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; Buffalo Land Developments, LLC, a California limited liability company.

228156.11

### 3.    Proofs of Claim

The Trust will file proofs of claim in the USAIP case for, among other things, the damage caused to USACM by USAIP and the improper withdrawals of funds from USACM by USAIP

### 4.    Waverton Fee Application

Waverton Group, LLC, as the former receiver in *Russell v. USA Investment Partners, LLC,* filed an application seeking payment of fees and expenses in the *USAIP* case as an expense of administration. The Trust and DTDF jointly opposed the Waverton application, which was set for hearing on July 5, 2007. The bankruptcy court vacated the hearing when Waverton failed to appear. Waverton also filed a motion to reconsider the order vacating the order appointing receiver in the receivership court. The Trust and DTDF opposed the motion to reconsider, which the district court denied without a hearing. Waverton's fee application has now been rescheduled for hearing on November 2, 2007.

## B.    Insiders – Thomas Hantges and Joseph Milanowski

### 1.    Hantges

The Trust, along with the Administrator of the DTDF and other creditors, filed an involuntary chapter 11 against Hantges in May 2007. In the *Thomas A. Hantges* case, No. 07-13163, the court entered the default of Mr. Hantges when he failed to answer the involuntary bankruptcy petition, and also entered an order for relief. Hantges filed a motion to set aside the default, which the bankruptcy court denied after considering the opposition fled by the Trust and by DTDF, at a hearing on July 5, 2007. Michael Carmel was appointed trustee in the Hantges bankruptcy.

The court scheduled a deadline for complaints to determine the dischargeability of debts owed by the Debtor of November 19, 2007, which was extended by a stipulated order entered on October 2, 2007 concerning the Trust and other interested parties to February 11, 2008.

The deadline for proofs of claim is December 11, 2007.

The goal of the *Hantges* bankruptcy case from my point of view was for the trustee (Michael Carmel) to locate Hantges' assets in order to pay creditors. Hantges did not disclose material liquid assets that the trustee could use to perform his obligations under the Bankruptcy Code. Accordingly, with bankruptcy court approval, the Trust agreed to loan the Hantges' estate up to $1,500,000 to administer the case. The loan will be repaid on a first dollars recovered basis from Hantges' estate.

228156.11

### 2.    Milanowski

Similarly, but only after an evidentiary hearing, the court entered an order for relief in the involuntary bankruptcy filing against Milanowski, No. 07-13162-lbr. Again, the Trust, DTDF and others joined in bringing the involuntary against Milanowski. Milanowski has appealed the order for relief. The Milanowski appeal is in the United States District Court for the District of Nevada, case no. 3:07-cv-404. This appeal has been reassigned to Judge Brian E. Sandoval.

The deadline to object to the dischargeability of debts owed by Milanowski is November 19, 2007.

The claims bar date in the Milanowski case is December 18, 2007.

Again, the goal of the *Milanowski* bankruptcy case from my point of view was for the trustee (Ford Elsaesser) to locate Milanowski's assets in order to pay creditors. Milanowski did not disclose material liquid assets that the trustee could use to perform his obligations under the Bankruptcy Code. Accordingly, with bankruptcy court approval, the Trust will loan Milanowski's estate up to $750,000 to administer the case. The loan will be repaid on a first dollars recovered basis from Milanowski's estate.

### 3.    Proofs of Claim

The Trust will file a proof of claim in each of the Hantges and Milanowski cases for the damage they caused USACM and its creditors, including as to the loans that the Trust services. In fact, the Trust obtained an extension of the Trust's deadline to file proofs of claim so that it could have the time to prepare a complete proof of claim. To the extent that an unsecured creditor of USACM intends to file a proof of claim against Hantges or Milanowski, that claim should be filed by the existing deadline.

### C.    HMA Sales, LLC

The owner of the Royal Hotel (HMA Sales, LLC) was placed into an involuntary bankruptcy in December 2006[7] after the property was sold, Salvatore Reale was paid almost $10,000,000 on an alleged lien, and other insiders received significant payments. In order to recover the funds, USACM and DTDF filed a lawsuit that DTDF and HMA Sales trustee are prosecuting as Adv. No. 06-01256 (the "HMA Sales Adversary"). The Trustee for USAIP caused a voluntary bankruptcy petition to be filed on behalf of HMA Sales (Case #07-12694-LBR) and thereafter asserted claims against Reale and others to recover funds from the sale. The USAIP Trustee agreed to a settlement, which was approved by the bankruptcy court, that resolved DTDF's claim against HMA Sales, Reale's claim and claims against Reale for sums to be received, and will result in Reale

---

[7] The Trust was not yet effective at that point.

waiving purported liens on property owned by Placer County Land Speculators, LLC and two liens against USA Investors VI, LLC, leaving one alleged claim against Investors VI unresolved. The Trust continues to litigate its claims against Reale, as noted below.

The bankruptcy court approved a motion for appointment of a trustee for HMA Sales. The United States Trustee's office appointed Lisa Poulin as trustee for HMA Sales.[8]

The litigation prosecuted by USAIP in the HMA Sales bankruptcy case also involved entry of a writ of attachment with respect to sums owed to USA Commercial Real Estate Group. In compliance with the writ, the Trust turned over approximately $391,000 that had been held for payment to USACREG by USACM from loan collections.

The trustee for HMA Sales discovered that certain receivables of that entity were subject to a security agreement provided to USACM on account of an undisclosed debt. The receivables were collected by Concord Servicing Corporation, pursuant to a lockbox agreement between HMA Sales, Concord and USACM. After the USACM bankruptcy filing, but before the HMA Sales bankruptcy filing, the funds were transferred into a new JP Morgan Chase account under the control of Joseph Milanowski or Vickie Loob. The trustee is now seeking formal discovery from Concord, the bank and interested parties.

### D.    USA Commercial Real Estate Group

USACREG is an insider and affiliate of the Debtors, controlled by Hantges and Milanowski. The Trust has negotiated with USACREG with respect to a counterclaim alleged by USACREG against USACM in the HMA Sales Adversary matter. Those negotiations may be superseded by the appointment of trustees for the estates of Hantges and Milanowski, respectively.

### E.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust. The adversary proceeding is Adv. No. 06-01251 pending in the bankruptcy court. On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint. The Trust seeks to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million. On August 7, 2007, the Trust defeated Mr. Reale's motion for summary judgment.

The Trust sought a preliminary injunction and writ of attachment against sums payable to Mr. Reale arising out of the settlement approved by the bankruptcy court in the HMA Sales bankruptcy case. Judge Riegle declined to consider the matter on an expedited

---

[8] The Trust is informed that USAIP is the manager and 69% owner of HMA Sales and therefore, as Ms. Poulin is the Trustee of USAIP, logically she was also appointed as trustee for HMA Sales.

228156.11

basis and deferred resolution of it until after the trial on the merits of the Trust's amended adversary complaint.

The trial scheduled for Friday, October 5, 2007 was continued to November 6, 2007 due to Mr. Reale's illness. In continuing the trial, however, Judge Riegle placed an injunction on any dispositions or transfers of Mr. Reale's assets, with the exception of certain limited payments related to medical expenses, living expenses, and attorneys' fees.

### F.    USA Investors VI, LLC

The owner of the Hotel Zoso f/k/a Hotel Marquis in Palm Springs – USA Investors VI, LLC ("Investors VI") – was controlled by USAIP. The Trust services the first loan on the hotel property. As of October 1, 2007, the outstanding balance on the Note was:

| | |
|---|---:|
| Principal | $13,500,000.00 |
| Interest | $6,282,873.26 |
| Default Interest | $4,338,698.13 |
| Late Fees | $503,994.29 |
| **Total** | **$24,625,565.68** |

Lisa Poulin, as trustee for USAIP, filed a voluntary petition in bankruptcy for Investors VI (Case #07-12377).[9] The Trust negotiated an agreement for the Trustee appointed in the Investors VI case to operate the hotel while respecting the secured claim's lien rights. An auction was scheduled for October 15, 2007 concerning a proposed sale of the hotel for an amount more than sufficient to pay the secured claim in full. There were no additional qualifying bidders for the Hotel and the Court approved the sale of the Hotel to the stalking horse bidder. The sale might close within the month of October (terms of the sale motion call for a closing of the purchase within thirty days of the sale). Investors VI has indicated that it will repay the secured claim through a plan of reorganization. The Trust is negotiating that plan of reorganization with Lisa Poulin, the Chapter 11 trustee, and her counsel. The draft plan provided to us provides for immediate and full payment of the direct lenders' principal and interest. There is a dispute between Investors VI and the Trust over whether immediate and full payment of the direct lenders' principal and interest on the effective date of the Investors VI plan authorizes Investors VI to avoid payment to the Trust of default interest and late fees, which would be income to the Trust for repayment of USACM creditors. The Trust and Ms. Poulin will settle this dispute, with the settlement subject to approval in connection with the Investors VI plan, or it will be resolved by the court in conjunction with confirmation of that plan.

The Trust filed a proof of claim against Investors VI for the sums described above, as well as for unsecured claims. According to the books and records of USACM, Investors VI also is obligated to USACM for $359.14 as an account receivable, and $3,101.60 as a

---

[9] Ms. Poulin has now been appointed trustee for Investors VI directly.

second account receivable.  Further, USACM is owed $30,340.00 in origination fees. The Trust is the successor to USACM and owns the right to collect these receivables.

**Undocumented Withdrawals.** USACM was used as a funding source to pay certain expenses of Investors VI and Marquis Hotel, which according to USACM's records total $1,598,920.84.

USACM was also used as an undocumented bank account for Investors VI via direct transfers to Investors VI and through transfers to USAIP which, according to records of USACM as to which the Trust is now the custodian, total $7,290,500.00 as of January 12, 2006. The obligation appears to be unsecured, but would bear interest according to Nevada law as a liquidated debt prior to Investors VI's bankruptcy filing.

**Fee Applications.**  In the USA Investors VI, LLC involuntary case, No. 06-13925-lbr, the chapter 7 trustee, his counsel and real estate advisor filed applications for compensation, to which the Trust responded on July 3, 2007.  The Trust's response explained that the Trust had not agreed that the lenders' collateral could be surcharged for these expenses.  Those applications were continued for hearing to November 2, 2007.  In addition, Ms. Poulin, her counsel and real estate consultant have filed fee applications, set for hearing on November 2, 2007.

###### G.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case #06-13758-LBR). Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso and may be sold with the hotel.  A synergy between the condominiums and the hotel will, in the view of Lisa Poulin's advisors, result in a greater price than if the condominiums were sold alone.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.

#### VII.   COLLECTION OF TRUST ASSETS

###### A.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust as successor to USACM has continued to work with the lenders and borrower on the senior lien to obtain payment or a refinancing of the loan, payment of loan fees associated with the first loan, as well as payment of the $1 million second loan. Specific proposals have been exchanged with the principal of Colt Gateway – Homes for America Holdings, Inc.

### B.    Compass Escrows

In connection with the Closing of the Asset Purchase Agreement dated December 8, 2006 ("Compass APA") with Compass USA SPE, LLC ("Compass") on February 16, 2006, certain escrows were established. The first escrow agreement is for $1,250,000 with respect to Compass' asserted right to invoke an Individual Asset MAC (as defined in the Compass APA) under § 9.1(i). USACM and the Trust dispute Compass' assertions and the Trust will take this dispute to court for resolution.

The second escrow for $903,000 was established with respect to Compass' asserted right to assert a dollar for dollar reduction of the Commercial Mortgage Price (as described in § 2.3(i) of the Compass APA). The Trust must proceed to court to demonstrate that Compass' rights to the Success Fees for the Franklin-Stratford Investments LLC and the I-40 Gateway West Loan were not impaired prior to the closing.

A third escrow of $412,666.45 was established and is self-liquidating either upon collections received by Compass or after the passage of time.

### C.    Other Collections

USACM had filed an interpleader, Adversary No. 06-1146, concerning sums held in the investors trust account before bankruptcy. The Trust negotiated with parties having an interest in the account concerning final resolution of it, which was eventually filed with the court as the Stipulation Re: Interest on Claims, Awarding Fees and Costs in Interpleader Action (filed in the adversary case). As a result of the Stipulation, the Trust received the balance of the funds in the account, after payment to claimants, payment of the unclaimed funds into the clerk of the court for deposit in the registry account, specified amounts to the law firms of David W. Huston, PC and Schwartzer & McPherson. The deposit has been made in the interpleader account closed by USACM.

## VIII.   RELATED COMPANY INVESTIGATIONS

### A.    USA Investors III, LLC

USA Investors III, LLC is a limited liability company owning property in Phoenix, Arizona. USACM is identified as the manager of the company in public filings. The Trust is investigating USA Investors III to determine if it has assets or would otherwise provide value to the Trust, or conversely, if there are obligations that need to be addressed that were not resolved by confirmation of the plan of reorganization.

228156.11

## IX.    PROFESSIONAL FEE APPLICATION OBJECTIONS

### A.    Pre-Effective Date Fees

Pursuant to the confirmed Plan, final applications for expenses of administration by professionals were due on April 19, 2007.  Applications were filed totaling in excess of $28 million.  The Trust invested significant time and expense analyzing the fee applications, particularly those of Mesirow Financial Interim Management, LLC ("Mesirow") and Ray Quinney & Nebeker, PC ("RQN"), professionals hired at the expense of the Debtors. I personally negotiated resolution of the objections to the Mesirow application that would have been filed by the Trust and post-confirmation DTDF, FTDF and Direct Lenders Committee.[10]  The applications and the reductions are set forth in the following table:

| Firm | Original Application Fees | Amended Application Fees | Original Application Expenses | Amended Application Expenses | Reduction |
|---|---|---|---|---|---|
| Mesirow Financial Interim Management | $13,889,203.09 | $10,478,066.84 | $1,117,168.74 | $892,168.74 | $3,636,136.25 |
| Ray Quinney & Nebeker | 3,679,202.52 | 3,605,618.47 | 234,862.68 | 234,862.68 | 73,584.05 |
| Schwartzer & McPherson | 1,087,736.00[11] | 1,065,981.28 | 34,273.68 | 34,273.68 | 21,754.72 |
| Lewis and Roca | 1,211,494.25 | 1,187,264.36 | 121,909.15 | 121,909.15 | 24,229.89 |
| Sierra Consulting | 367,984.50 | 360,624.81 | 8,241.05 | 8,241.05 | 7,359.69 |
| Stutman, Treister & Glatt. P.C. | 2,159,529.95 | 2,116,339.35 | 92,573.35 | 92,573.35 | 43,190.60 |
| Shea & Carlyon | 762,221.65 | 746,977.31 | 19,603.31 | 19,603.31 | 15,244.44 |
| Alvarez & Marsal | 645,012.51 | 632,112.26 | 15,779.80 | 15,779.80 | 12,900.25 |
| Orrick Herrington | 2,228,780.60 | 2,184,204.90 | 42,914.58 | 42,914.58 | 44,575.61 |

---

[10] The Trustee first negotiated a stipulation for an extension of the deadline to file opposition to the fee applications, because premature filing of oppositions would have seriously disrupted the process of attempting to settle potential objections.

[11] This amount excludes sums paid through the interpleader.

| Firm | Original Application Fees | Amended Application Fees | Original Application Expenses | Amended Application Expenses | Reduction |
|---|---|---|---|---|---|
| Beckley Singleton | 458,344.87 | 449,177.97 | 65,469.83 | 65,469.83 | 9,166.90 |
| FTI Consulting | 1,613,380.50 | 1,581,112.89 | 30,951.02 | 30,951.02 | 32,267.61 |
| Gordon & Silver | 1,028,068.75 | 1,007,507.38 | 14,637.62 | 14,637.62 | 20,561.37 |
| Kirkpatrick & Lockhart | 22,283.00 | 22,283.00 | 247.69 | 247.69 | 0 |
| KMPG | 94,374.00 | 94,374.00 | | | 0 |
| TOTAL | $29,247,616.19 | $25,531,644.82 | $1,798,632.50 | $1,557,852.70 | $3,940,971.38 |

As modified, in particular by the 2% reduction of requested fees, the final fee applications of counsel for the FTDF Committee and the USACM Unsecured Creditors Committee and the financial advisors for the DTDF Committee were approved at a hearing on June 22, 2007. On the bankruptcy court's own motion, the hearing on the final fee applications of Debtors' professionals and DTDF Committee counsel were continued to August 7, 2007. At the hearing on August 7, 2007, the bankruptcy court approved the remaining fee applications.

### B.    Post-Effective Date Fees

The Trust has received post-effective date billings from Mesirow, RQN, Schwartzer & McPherson, and BMC Group as professionals previously retained by USACM but providing services on a post-effective date basis. The Trust has privately expressed concerns with certain of these service providers with respect to the billings. If those concerns are not resolved, any disputes will need to be brought to the bankruptcy court for resolution.

## X.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.    Overview

The Trust has identified approximately 2600 filed proofs of claim, which generally break down as follows:

- 7 filed proofs of administrative claims asserting in the aggregate $2,765,426, exclusive of claims of professionals.

- 101 filed proofs of priority claims asserting in the aggregate $6,206,289.53, which will largely be reclassified as unsecured claims.

- 1,673 filed proofs of secured claims asserting in the aggregate $295,312,582.65, which have been or will be reclassified as unsecured claims.

- 1,195 filed proofs of unsecured claims asserting in the aggregate $493,810,535.27, and if you include reclassified claims, a total of 2,679 filed proofs of claim asserting in the aggregate $756,069,725.80 will need to be resolved.

- 107 filed proofs of claims did not specify a classification. Most of theses did not provide an amount, although the aggregate of those who did is $355,006.90.

The total number of filed proofs of claims taken from each of the 5 classifications is 3,083, which is more than the 2,601 proofs filed, due to the proofs of claims that have multiple classifications and where counted more than once.

## B.    Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

Sierra Consulting Group,
Brant Fylling
E-mail: USACMTRUST@sierracgllc.com
Telephone 602-424-7020

For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com/default.aspx. You may send an e-mail on a general inquiry to: USAcommittee@lrlaw.com.

## C.    Administrative, Priority and Secured Claims

The Trust has objected to the amended proofs of claim filed by the Pension Benefit Guaranty Corporation ("PBGC"). The Trust employed special counsel (Foley & Lardner) to deal with these claims. The PBGC asserts claims arising out of the USACM Defined Benefit Pension Plan. Approximately 30 former employees of USACM are participants in the Pension Plan. The participants with the largest stake in the Pension Plan include Thomas Hantges, Joseph Milanowski, Paul Hamilton and Victoria Loob (collectively, the "Insider Beneficiaries"), who were officers and/or owners of the Debtors prior to the Petition Date. The PBGC claims are No. 791 - $120,870 (of which $112,870 is alleged to be administrative); 793 - "estimated" amount of $1,211,242 as an administrative claim; and No. 794 - "estimated" amount of $1,700,624 as an unsecured claim. USACM reserved cash for the alleged administrative claim.

14

A number of claimants that the Trust believes hold unsecured claims filed administrative and priority claims. The Trust has objected to all such claims and has asked that they be reclassified as unsecured claims, subject to possible further objection.

Over 2,450 direct lenders filed proofs of claim, with approximately 1,600 alleging that they were holding secured claims.[12] None of these direct lenders had perfected liens on property owned by USACM (instead, they hold liens on property owned by the borrowers on their loans). Accordingly, the Trust filed "omnibus" objections to these secured claims, seeking that they be reclassified as unsecured claims without prejudice to further objections. The vast majority of those objections were granted without opposition. A few remain for resolution pursuant to a motion for summary judgment.

On July 30, 2007, the Trust filed its Motion for Summary Judgment Regarding (1) Responses to the Trust's First through Thirty-Third Omnibus Objections to Claims Asserting Secured Status; (2) Responses to Trust's First Through Third Omnibus Objections to Claims Asserting Priority Status; and (3) Newly Alleged Secured and Priority Claims. Certain of the parties who received the Motion filed responses, none of which, in the opinion of the Trust's counsel, had legal or factual merit. The Motion will be considered at a hearing before the Bankruptcy Court on October 15, 2007. The Trust thereafter hopes there will be no remaining unresolved administrative, secured or priority claims in a meaningful amount.

### D.    Unsecured Claims

The Trust has filed numerous claims objections and succeeded to objections previously filed by USACM. The Trust sought an initial extension of the deadline to object to claims to further analyze them. That objection was granted after a hearing, without objection. The Trust then sought a second extension, was granted after a hearing, without objection. The new deadline for claims objections is February 12, 2008.

As the Trust was reviewing responses from creditors to proofs of claim, it realized that some of the claims that had been filed concerning USACM were, rather, claims by members of the FTDF or DTDF. Working in conjunction with the Equity Security Holders of FTF and with Reorganized DTDF, the Trust filed joint objections to these claims. They are not really claims against USACM, but rather assertions of ownership in one or both of the Funds. In general, the FTDF claims issues have been resolved as a result of a hearing on September 28, 2007, and the DTDF objections have been set for hearing on October 15, 2007.

---

[12] Secured claims are those where repayment can be obtained from specific property of the Debtor under a perfected lien.

228156.11

By September, the Trust had objected to 1,767 claims asserting administrative, priority, or secured status. 1,517 have orders reclassifying as unsecured claims and 1 classified as a priority claim.

- 61 objections for wrong debtor – 23 of which have been disallowed or withdrawn.

- 3 stipulations allowing claims, all approved by the court.

- 42 stipulations to withdraw claims. 39 have been approved by the court.

- 7 miscellaneous objections (without stipulations) for reasons such as unsupported claim, no liability, and claim exceeds amount allowed by the court. To date, 1 claim has been ordered allowed and 1 claim disallowed.

The Trust reviewed the thousands of proofs of claim filed with the court to determine those which appeared to be filed by direct lenders. In turn, each direct lender's claim was analyzed to see what direct loan or loans it arose out of. The Trust's plan is to take each group of direct lender claims on a loan-by-loan basis, determine if the claims are valid, and in what amount, and then to advise all lenders who filed proofs of claim on the loan of the Trust's recommendation. This approach is consistent with the alternative dispute resolution mechanism implemented for direct lenders by confirmation of the Plan, which in general requires personal consultation by the Trust and the affected lenders who disagree with the Trust's position, as well as mediation.

In the course of working through the proofs of claim to separate them between direct lenders and other creditors, and then on a loan-by-loan basis, the Trust came across hundreds of claims which did not have sufficient information in order to make these determinations. Rather than file objections to these hundreds of claims that the claims lacked sufficient information, require the claimants to file responses in court providing information, and then proceed to analyze the proofs of claim as supplemented, I directed counsel to send letters to each of the claimants informally requesting additional information. In addition, the Trust has offered those claimants who wish to withdraw their proofs of claim with a simple mechanism to do so in the form of a stipulation and proposed stipulated order. The Trust has received information from a number of the claimants explaining the rationale for their claims as well as agreements to withdraw claims by a number of other claimants. However, the process is incredibly time consuming and it is highly unlikely that all claims will be analyzed by the February 2008 deadline.

In addition the Trust has to deal with the problem of duplicate and amended claims. There were about 254 direct lenders who filed proofs of claim that appeared to include duplicate amounts. Other creditors filed claims in the same amount for secured, priority

228156.11

and unsecured status, effectively duplicating the claim among those categories, one creditor filed the same amount as priority and unsecured with a discrepancy in the amount for the secured claim; seven creditors filed a claim in the same amount as both security and priority; and 243 creditors filed claims in the same amount for both secured and unsecured status. This in total is about $92 million in duplicate claims.

Numerous claimants have called the Trust asking when the Trust will have concluded its examination of claims. In general, the claims will not be resolved until the last direct loan has been paid or otherwise resolved. This is because there are proofs of claim filed by direct lenders in all of the loans that USACM serviced. However, as the pool of unresolved loans becomes smaller, it may be possible to estimate the claims that might be allowed with respect to the unresolved loans. That process will, nevertheless, take many months.

## E.    Disbursing Agent Agreement.

The Trust and FTDF entered into a Stipulation Concerning Amended Disbursing Agent Agreement. The court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF after that entity is liquidated.

## XI.    LOAN SERVICING ISSUES

### A.    Trust Loan Servicing - Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC to direct lenders on loans serviced by the Trust are as follows:

|  | Placer 1 | Placer 2 |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | $8,449,234.57 | $2,221,895.97 |
| Default Interest | $5,089,737.92 | $557,701.35 |
| Late Fees | $323,536.22 | $87,878.93 |
| **Total** | $45,362,508.71 | $9,367,476.25 |

The Trust, as servicer reports monthly to the lenders. After providing notice to the direct lenders on those loans, and with the responding direct lenders' consent, the Trust advanced $671,434.55 on a short term basis to pay the past due taxes secured by a lien on the Placer Vineyards property. This advance protected the lenders' collateral, and although the Trust will be reimbursed with interest at the prime rate before the lenders receive payment, the advance reduces the interest rate payable on those taxes.

The Placer County Board of Supervisors approved a development template for the total project, including the Placer County Land Speculators property. That approval allows the owners in the entire 5,230 acre project to continue development. Ongoing development expense includes legal expense defending litigation brought against the development,

228156.11

engineering and other design, permitting and construction costs. The borrower lacks the ability to fund these expenses.

On Wednesday, September 26, 2006, the Trust, through the Trustee along with counsel, conducted two conference calls with direct lenders in the Placer 1 and 2 loans. We advised the lenders that the Trust as servicer intended to negotiate with the borrower through Lisa M. Poulin, Trustee of USAIP, as the majority member of the Borrower, for a bankruptcy filing by the Borrower and sale of the collateral at an auction. The most recent information available to the Trust was summarized in the call and suggests that the market value of the collateral may not exceed the principal and accrued (non-default) interest on the Placer 1 loan.

### B.    Compass Trust Loan Servicing – Collection of Prepaid Interest

The Trust continues to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007. Further, Compass collects from direct lenders and remits Prepaid Interest to the Trust pursuant to the Plan, including $156,471.33 on May 11, 2007.

From a report prepared in August 2007, the maximum amount of uncollected prepaid interest was $5,292,567.59. A number of investors have uncollected prepaid interest of only tens or a few hundreds of dollars. It is not now possible for the Trust to estimate the likely collection of prepaid interest over the foreseeable future.

Although it is not a party to the disputes, the Trust notes that the Lender Protection Group and Compass Financial Partners, LLC are in litigation over whether LPG and Direct Lenders properly terminated Compass as the loan servicer. The bankruptcy court entered an Order on July 2, 2007 Concerning Compass' Emergency Motion to Enforce Confirmation and for Sanctions and Order on Subject Matter Jurisdiction. Thereafter, the United States District Court for the District of Nevada, withdrew the reference over the dispute and has periodically considered arguments and evidence. The disputes between Compass and the LPG inevitably delay collection of direct loans, adversely impacting direct lenders, many of whom have filed proofs of claim concerning those loans.

The LPG has agreed to abide by the Plan provisions concerning payment of Prepaid Interest to the Trust in the event servicing of the loans is transferred from Compass.

### C.    USACM Loan Servicing

The State of Nevada Department of Business in Industry, Division of Mortgage Lending ("MLD"), took post-Effective Date action with respect to licensing of USACM to service loans and the proposed application by Compass to service loans pursuant to the transaction approved by the court in the confirmed Plan. The Trust worked with USACM with respect to the MLD's order terminating the USACM license. The

18

228156.11

termination was not untoward, because USACM had ceased servicing any loans at that point. The MLD's findings were factually and legally inaccurate in many respects, however. The Trust worked directly with the MLD through the State of Nevada Attorney General's office to ensure that the MLD was not seeking to violate the Confirmation Order or the Plan. Separately, the Trust was aware of and took no position with respect to the MLD orders concerning Compass.

Pursuant to an order of the Bankruptcy Court, the Trust is exempt from licensing in Nevada as a loan servicer or escrow agent. The Trust nevertheless voluntarily reports to MLD with respect to its actions and has asked MLD to advise the Trust of any questions or concerns.

## XII.   TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of September 30, 2007, has been provided to the Oversight Committee. The Trust, through the activities described above, has generated funds in excess of that spent to date in undertaking its obligations.

228156.11