# EXHIBIT 1

## PROOF OF CLAIM

| Name of Debtor | Case Number |
|---|---|
| USA Commercial Mortgage | Jointly Administered Under<br>Case No BK-S-06-10725-LBR |

NOTE See Reverse for List of Debtors and Case Numbers
This form should not be used to make a claim for an administrative expense arising after the commencement of the case A "request" for payment of an administrative expense may be filed pursuant to 11 U S C § 503

**Name of Creditor and Address**
Pecos Professional Park Limited Partnership
c/o Jeffrey R Sylvester, Esq
Sylvester & Polednak, Ltd
7371 Prairie Falcon Road
Suite 120
Las Vegas, Nevada 89128

Creditor Telephone Number 702.952.5200

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check box if you have never received any notices from the bankruptcy court or BMC Group in this case

☐ Check box if this address differs from the address on the envelope sent to you by the court.

**DO NOT FILE THIS PROOF OF CLAIM FOR A SECURED INTEREST IN A BORROWER THAT IS NOT ONE OF THE DEBTORS**

If you have already filed a proof of claim with the Bankruptcy Court or BMC, you do not need to file again

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor

Not Applicable

Check here ☐ replaces
if this claim ☑ amends    a previously filed claim dated 11/03/2006

**1 BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other (describe briefly)
    Unexpired lease

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salaries and compensation (fill out below)
    Last four digits of your SS #
    Unpaid compensation for services performed from _____ to _____
                                                  (date)      (date)

☐ Unremitted principal
☐ Other claims against servicer (not for loan balances)

**2. DATE DEBT WAS INCURRED**

**3 IF COURT JUDGMENT, DATE OBTAINED**

**4 CLASSIFICATION OF CLAIM**  Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed
See reverse side for important explanations

**UNSECURED NONPRIORITY CLAIM**  $ 470,080 98
☑ Check this box if a) there is no collateral or lien securing your claim or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**UNSECURED PRIORITY CLAIM**
☐ Check this box if you have an unsecured claim all or part of which is entitled to priority
    Amount entitled to priority    $ _____
    Specify the priority of the claim
☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)
☐ Wages salaries or commissions (up to $10 000)*, earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier - 11 U S C § 507(a)(4)
☐ Contributions to an employee benefit plan - 11 U S C § 507(a)(5)

**SECURED CLAIM**
☐ Check this box if your claim is secured by collateral (including a right of setoff)
    Brief description of collateral
    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
    Value of Collateral    $ _____
    Amount of arrearage and other charges at time case filed included in secured claim, if any    $ _____

☐ Up to $2 225** of deposits toward purchase lease or rental of property or services for personal family or household use - 11 U S C § 507(a)(7)
☐ Taxes or penalties owed to governmental units - 11 U S C § 507(a)(8)
☐ Other - Specify applicable paragraph of 11 U S C § 507(a) ( ____ )

* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5 TOTAL AMOUNT OF CLAIM AT TIME CASE FILED**

| $ 470,080 98 | $ N/A | $ N/A | $ 470,080 98 |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**6 CREDITS** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

**7 SUPPORTING DOCUMENTS**  *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts contracts, court judgments mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

**8 DATE-STAMPED COPY**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

The original of this completed proof of claim form must be sent by mail or hand delivered (FAXES NOT ACCEPTED) so that it is actually received on or before 5 00 pm, prevailing Pacific time, on November 13, 2006 for each person or entity (including individuals, partnerships, corporations, joint ventures, trusts and governmental units)

BY MAIL TO:
BMC Group
Attn USACM Claims Docketing Center
P O Box 911
El Segundo, CA 90245-0911

BY HAND OR OVERNIGHT DELIVERY TO
BMC Group
Attn USACM Claims Docketing Center
1330 East Franklin Avenue
El Segundo, CA 90245

THIS SPACE FOR COURT USE ONLY

FILED FEB 0 9 2007

USA CMC

| DATE<br>02/05/2007 | SIGN and print the name and title if any of the creditor or other person authorized to file this claim (attach copy of power of attorney if any)<br>Jeffrey R Sylvester Esq , Counsel for Joseph Milanowski<br>USA Development Inc the general partner of Pecos Professional Park Limited Partnership | |

Penalty for presenting fraudulent claim is a fine of up to $500 000 or imprisonment for up to 5 years or both  18 U S C  §§ 152 AND 3571

1072500752 2

## AMENDMENT TO OFFICE LEASE

Pecos Professional Park Limited Partnership, a Nevada limited partnership ("Landlord") and USA Commercial Mortgage Company, a Nevada corporation ("Tenant"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, agree to extend the term of that certain Office Lease by and between Landlord and Tenant dated July 21, 1999 (the "Lease") to October 31, 2010  All other terms of the Lease remain in full force and effect  Section 3 2 of the Lease shall apply to any additional years of the Lease beyond the ten years provided for in the Lease

Landlord and Tenant hereby mutually agree that the Lease is not in default, that all rent is paid current, and that neither party is aware of any facts which, either presently or with the passage of time, would constitute an event of default under the terms of the Lease

Effective as of this 1st day of March, 2001

**TENANT:**

USA Commercial Mortgage Company

By _____
Joseph D  Milanowski, President

**LANDLORD:**

Pecos Professional Park Limited Partnership

By  USA Development, Inc., a Nevada corporation, General Partner

By _____
Thomas A  Hantges, President

By  Nevada Skin & Cancer, Lucius Blanchard, M  D , Chtd , a Nevada corporation, General Partner

By _____
Lucius Blanchard, President

# OFFICE LEASE

THIS LEASE made and entered into this 21ˢᵗ day of July, 1999, by and between **Pecos Professional Park Limited Partnership,** a Nevada limited partnership ("Landlord"), and **USA Commercial Mortgage Company,** a Nevada corporation ("Tenant")

SECTION 1    <u>DEMISE</u>.    Upon the conditions, limitations, covenants and restrictions contained herein, Landlord hereby leases to Tenant, and Tenant leases from Landlord, the real property and improvements, including an existing office building containing a total of approximately 8,890 square feet of space (hereinafter "Leased Property"), located in the Pecos Professional Park (the "Complex"), said Leased Property being more specifically indicated on Exhibit "A" attached hereto and incorporated herein by reference   The address of the Leased Property is 4484 South Pecos Road, Las Vegas, Nevada 89121   Landlord reserves to itself the use of the roof, exterior walls and the area above and below the Leased Property together with the right to install, maintain, use, repair and replace pipes, ducts, conduits, wires and structural elements now or in the future leading through the Leased Property which serve other parts of the Complex

SECTION 2    <u>TERM</u>.   The term of this Lease shall commence on the first day following the day that Clark County issues a certificate of occupancy (including a temporary certificate of occupancy) for the office building which Landlord is constructing on the Leased Property ("Commencement Date"), and shall expire at 12 00 o'clock a.m. on the same day of the 120ᵗʰ successive month following the first month of the lease, said term being ten years

Should Tenant hold possession of the Leased Property with the consent of Landlord after the expiration of the stated term of this Lease, such holding over shall create a tenancy from month to month only, upon the same terms and conditions as are hereinafter set forth, except that basic monthly rent shall be one hundred fifty percent (150%) of the amount set forth in Section 3 hereof

SECTION 3    <u>RENT</u>

3 1    Subject to adjustment as hereinafter provided, Tenant shall pay Landlord as basic rent for the initial term of this Lease, the total sum of Two Million Two Hundred Forty Thousand Two Hundred Eighty Dollars ($2,240,280 00) Beginning on the commencement date, Tenant shall pay to Landlord basic monthly rent of Eighteen Thousand Six Hundred Sixty-Nine Dollars ($18,669 00) In the event that the commencement date is not the first day of a calendar month, Tenant shall pay to Landlord, on or before the commencement date, pro-rated monthly rent for the partial month occurring from the commencement date to the first day of the succeeding calendar month, together with the monthly rent due for the first full calendar month of the term hereof

3 2    The basic monthly rent for each of the lease years two (2) through ten (10) shall be increased, but never decreased, by an amount determined by multiplying the basic monthly rent for the preceding year by the increase in the consumer price index ("CPI") during the preceding year   The term CPI as used herein means the index published by the U S  Department of Commerce, Bureau of Labor Statistics for all wage earners in all cities in the western region of the United States, or such similar index as may be published from time to time   Should the CPI decrease during any

- 1 -

year, then the basic monthly rent shall remain the same as it was during the preceding year Landlord shall notify Tenant of the rent increase required hereby as soon as possible, and Tenant shall within thirty days of receiving notice pay the increase for any elapsed months in the year in which any such increase is effective

     3 3     In addition to the basic rent, Tenant shall pay to Landlord as additional rent, on a quarterly basis, commencing on the date which is three (3) months after the Commencement Date, the Operating Costs incurred by Landlord in accordance with Section 10 below

     3 4     Tenant shall pay the rent to Landlord in advance on the first day of each month during the term of this Lease

     3 5     Tenant shall pay all rent and other monies payable under this Lease without prior demand therefor and without any deduction or offset whatsoever in lawful money of the United States of America at the office of Landlord set forth in Section 28 hereof or at such other place or places as Landlord may from time to time designate in writing

     3 6     "Lease year" shall mean the twelve (12) month year commencing on the commencement date, or on the anniversary of the commencement date each year after year one

     3 7     If Tenant shall fail to pay, within five (5) days after the same is due and payable, any basic rent, or any additional rent, or any other amounts or charges Tenant is to pay hereunder, such unpaid sum shall be subject to a late charge equal to five percent (5%) of the amount overdue  In addition, if any such rent, additional rent, amount or charge has not been paid within thirty (30) days after the same is due and payable, such unpaid sum shall bear interest at the rate of one percent (1%) per month, compounded monthly, from the original due date therefor, until paid in full, which interest shall be payable as additional rent

     SECTION 4     <u>Intentionally Omitted</u>

     SECTION 5     <u>POSSESSION AND SURRENDER OF LEASED PROPERTY</u>  Tenant shall conclusively establish its acceptance of the Leased Property by entering upon and occupying it  In no event shall Landlord be liable for consequential damages  Upon termination of this Lease, if, and only if, Tenant has fully and faithfully performed all of its obligations hereunder, Tenant shall, at its sole cost and expense, remove from the Leased Property all personal property which Tenant has installed or placed on it ("Tenant's Property") and repair all damage thereto resulting from such removal  Tenant shall thereupon surrender the Leased Property in the same condition as on the occupancy date, reasonable wear and tear excepted  If Tenant has not fully and faithfully performed all of its obligations under this Lease, Tenant shall remove Tenant's Property from the Leased Property only upon Landlord's written approval  In the event Tenant shall fail to remove any of Tenant's Property as provided herein, Landlord may, but shall not be obligated to, remove and/or discard all such property not so removed and repair all damage to the Leased Property resulting from such removal, all at Tenant's expense, and Landlord shall have no responsibility to Tenant for any loss or damage to said property caused by or resulting from such removal or otherwise

- 2 -

## SECTION 6    <u>USE OF LEASED PROPERTY</u>

6 1     The Leased Property is leased to Tenant solely for use as general offices    Tenant shall not use or allow the Leased Property, or any portion thereof, to be used for any other purpose or purposes whatsoever

6 2     Tenant shall conduct business only under a trade name approved by Landlord

6 3     Tenant shall not, without prior written consent of all insurance companies which have issued any insurance of any kind whatsoever with respect to the Leased Property or the Complex, sell, or suffer to be kept, used or sold in, upon or about the Leased Property any gasoline or other petroleum products or any other substance or material of an explosive, inflammable or radiological nature, in such quantities as may be prohibited by any such insurance policy or which may endanger any part of the Complex or its occupants, business patrons or invitees

6 4     Tenant shall not, without Landlord's prior written approval, operate or permit to be operated on the Leased Property any coin or token-operated vending machines or similar device for the sale or leasing to the public of any goods, wares, merchandise, food, beverages, and/or service, including, without limitation, pay telephones, pay lockers, pay toilets, scales and amusement devices

6 5     Tenant shall refrain from using or permitting the use of the Leased Property or any portion thereof as living quarters, sleeping quarters or lodging rooms

6 6     Tenant shall not, without Landlord's prior written approval, conduct or permit any fire, bankruptcy, liquidation or auction sale in, on or about the Leased Property

6 7     All fixtures and equipment to be used by Tenant in, about or upon the Leased Property shall be subject to the prior written approval of Landlord

6 8     Tenant shall not, without Landlord's prior written approval, cover or obstruct any windows, glass doors, lights, skylights, or other apertures that reflect or admit light into the Leased Property

6 9     Tenant shall not keep, or permit the keeping of any animals of any kind in, about, or upon the Leased Property without Landlord's prior written approval

6 10    Tenant shall not use the Leased Property for storage or warehouse purposes beyond such use as is reasonably required to keep the Leased Property adequately supplied for the conduct of Tenant's business purposes

6 11    Neither Tenant nor anyone under Tenant's control shall engage in any criminal conduct or drug-related criminal activity on the Leased Property or permit the use of the Leased Property for such activity, and Tenant shall not engage in any act intended to facilitate criminal

- 3 -

activity, including drug-related criminal activity, on or near the Leased Property  Proof of violation of this provision shall not require criminal conviction

6 12    Tenant shall store all trash and garbage in metal containers located where designated by Landlord and so as not to be visible or create a nuisance to customers and business invitees in the Complex, and so as not to create or permit any health or fire hazard

6 13    Tenant shall at all times during the term of the Lease comply with all governmental rules, regulations, ordinances, statutes and laws, including, but not limited to, all Federal and State laws and regulations regarding hazardous substances and the disposal thereof, and the orders and regulations of the Insurance Service Office or any other body now or hereafter exercising similar functions, now or hereafter in effect pertaining to the Complex, the Leased Property or Tenant's use thereof

6 14    Tenant hereby covenants and agrees that it, its agents, employees, servants, contractors, subtenants and licensees shall abide by the Rules and Regulations attached hereto as Exhibit "B" and incorporated herein by reference, as well as such additional rules and regulations hereafter adopted and amendments and modifications of any of the foregoing as Landlord may, from time to time, adopt for the safety, care and cleanliness of the Leased Property or the Complex or for the preservation of good order thereon

6 15    Tenant shall not do, permit or suffer anything to be done or kept upon the Leased Property or the Complex which will obstruct or interfere with the rights of other tenants, Landlord or the patrons and customers of any of them, or which will annoy any of them or their patrons or customers by reason of unreasonable noise or otherwise, nor will Tenant commit or permit any nuisance on the Leased Property or commit or suffer any illegal act to be committed thereon

SECTION 7    IMPROVEMENTS    Tenant shall only make such improvements to the Leased Property as are approved in advance by Landlord  All improvements to the Leased Property made by Tenant shall be made promptly, at Tenant's sole expense, in a good and workmanlike manner, by duly-licensed contractors, and in compliance with all insurance requirements and with all applicable permits and authorizations, and all other governmental rules, regulations, ordinances, statutes and laws (including the Americans with Disabilities Act and other applicable access laws), and all rating bureau recommendations now or hereafter in effect pertaining to the Leased Property or Tenant's use thereof  Such improvements shall be done by recognized union labor if so required by Landlord  Prior to the commencement of the work, Tenant shall give evidence to Landlord that Tenant has obtained appropriate insurance satisfactory to Landlord for the protection of Landlord, its tenants, and invitees from damage or injury resulting from the making of such improvements  In addition, prior to the commencement of the work, Tenant, if required by Landlord, shall secure, at Tenant's expense, performance, labor and materials bonds for the full cost of such work satisfactory to Landlord

Any improvements made by Tenant pursuant to this Section 7 shall, at Landlord's option, become the property of Landlord upon the expiration or sooner termination of this Lease (excluding Tenant's trade fixtures)  However, Landlord shall have the right to require Tenant to remove any or

- 4 -

all improvements, at Tenant's sole cost and expense, upon termination of this Lease and to surrender the Leased Property in the same condition as it was prior to the making of any or all such improvements, reasonable wear and tear excepted.

SECTION 8.  <u>PARKING AND COMMON AREAS</u>  Tenant, its employees and business invitees shall have the nonexclusive right, in common with Landlord and all others tenants and owners within the Complex to use the common areas in the Complex (including but not limited to, the parking lot, walkways and sidewalks) as are designated from time to time by Declaration of Covenants, Conditions and Restrictions which encumber the Complex (the "Restrictions"), subject to such reasonable rules and regulations as Landlord may from time to time impose  Tenant acknowledges that its rights to the use of and parking on the common areas is governed by the Restrictions, and hereby agrees to comply therewith

SECTION 9  <u>TAXES</u>  Landlord shall be liable for and shall pay before delinquency all taxes and assessments of whatsoever kind or nature, and penalties and interest thereon, if any, levied against the Leased Property, not including any of Tenant's personal property and any other personal property of whatsoever kind, and to whomsoever belonging, situate or installed in or upon the Leased Property, whether or not affixed to the realty, all of which is to be paid by Tenant.  Any leasehold improvements shall be deemed Tenant's personal property for the purposes of this Section 9  If at any time during the term of this Lease any such taxes on Tenant's property are assessed as part of the tax on the real property of which the Leased Property is a part, then Tenant shall pay to Landlord the amount of such additional taxes as may be levied against the real property by reason thereof  Tenant shall use its best efforts to have Tenant's property assessed separately from said real property  All such taxes paid by Landlord shall be reimbursed to Landlord in the Operating Costs pursuant to Section 10 below

SECTION 10  <u>MAINTENANCE, UTILITIES AND OPERATING COSTS</u>  Except as provided for elsewhere herein, Landlord shall keep and maintain in good order, condition and repair (including any such replacement and restoration as is required for that purpose) the Leased Property and every part thereof and any and all appurtenances thereto wherever located, including, but without limitation, the exterior and interior portion of all doors, door checks, windows and plate glass, the foundations, exterior walls and roof of the Leased Property  Landlord shall also keep and maintain in good order, condition and repair (including any such replacement and restoration as is required for that purpose) any special equipment, fixtures or facilities other than the usual and ordinary plumbing and utility facilities located outside the Leased Property  The cost of all of such repairs which are not "structural repairs" (as defined below) shall be included in the Operating Costs (as defined below) to be reimbursed by Tenant to Landlord  Landlord shall be responsible for, and shall, upon request by Tenant, promptly perform, at its expense, all necessary "structural repairs"  As used herein, "structural repairs" shall include any repair to the structure of the building on the Leased Property, its plumbing system, electrical system, heating, ventilation and air conditioning system or the roof of the building, if the cost of such repair shall exceed $1,000 00  Landlord shall be responsible for, and shall pay the total cost of any structural repair (not merely the amount over $1,000 00), none of which shall be included in the Operating Costs

- 5 -

All of Tenant's utilities shall be separately metered to Tenant and Tenant shall be responsible for paying all such utilities

Tenant hereby agrees to pay as additional rent the Operating Costs accrued during each calendar quarter or fraction thereof occurring during the term of this Lease "Operating Costs" shall mean and include all costs and expenses of every kind or nature incurred by Landlord in the operation, maintenance and repair of the Leased Property, other than the costs of structural repairs which are Landlord's responsibility, calculated in a manner deemed by Landlord to be reasonable and appropriate, as determined in accordance with generally accepted accounting principles Without otherwise limiting the generality of the foregoing, such costs and expenses shall include all taxes paid by Landlord pursuant to Section 9 above; the assessments of the Complex Owner's Association pursuant to the Restrictions, premiums with respect to property damage and other insurance carried on or with respect to the Leased Property and related structures pursuant to Section 11 below, landscape maintenance, cleaning, striping, sealing and paving of all driveways and parking lots, signs, lighting, janitorial services (to the extent such are not structural repairs and the cost of such are not included in the assessment of the Complex Owner's Association); and providing for security and fire protection services

Tenant shall pay the Operating Costs assessable to him by this Section 10 on a quarterly basis as provided in Section 3 hereof   Landlord's quarterly statement for Operating Costs shall include a detailed description of the costs included.  Tenant shall have the right, upon five (5) days' notice to Landlord, to review Landlord's books and records regarding the Leased Property and the Operating Costs

SECTION 11  <u>INSURANCE</u>   Tenant shall not use or occupy, or permit the use or occupancy of the Leased Property in a manner which will increase the rates of insurance for the Leased property, which will make void or voidable any insurance then in force with respect thereto, which would constitute a defense to any claim thereunder, or which will make it impossible to obtain any insurance with respect thereto   Any policy of insurance maintained by Tenant insuring against any risk in, upon, about or in any way connected with the Leased Property or Tenant's use thereof shall contain an express waiver of any and all rights of subrogation thereunder whatsoever against Landlord, its agents or employees

Tenant shall, at its sole expense, procure and maintain comprehensive public liability insurance issued by an insurance carrier authorized to do business in the State of Nevada assuring against loss, damage, or liability for injury or death to persons and loss or damage to property occurring from any cause whatsoever in connection with the Leased Property   Such liability insurance shall be in amounts of not less than Five Million Dollars ($5,000,000 00) for bodily injuries to or death of any one person whomsoever, Ten Million Dollars ($10,000,000 00) for bodily injuries to or death of any two or more persons, arising from the same occurrence, and Five Million Dollars ($5,000,000 00) for damage to property, including property of Landlord. Landlord, and at Tenant's option, any other persons, firms or corporations designated by Tenant, shall be named as additional insureds under each such policy of insurance   Tenant shall furnish to Landlord a certificate acceptable to Landlord, evidencing the existence of such insurance, naming Landlord as an additional insured, and certifying that such insurance may not be canceled or coverage diminished without at least thirty (30) days prior written notice to Landlord   Thereafter, at least thirty (30) days

- 6 -

prior to the expiration of any such insurance, Tenant shall furnish Landlord with a certificate, in the form described above, evidencing the renewal or replacement of such insurance.

Landlord shall, at all times during the term hereof, procure and maintain in full force and effect standard form of fire insurance with extended coverage covering the Leased Property and the improvements (including Tenant Improvements) therein and thereon in an amount equal to one hundred percent (100%) of the replacement value thereof. Tenant and Landlord, as their interests may appear, shall be the named assureds (and at Landlord's option, any other persons, firms or corporations designated by Landlord shall be additionally named assureds) under each such policy of insurance. The premiums for such fire and extended coverage insurance shall be a part of the Operating Costs paid by Tenant pursuant to Section 10 above.

Tenant shall be responsible for obtaining and maintaining all necessary fire and extended coverage insurance on Tenant's personal property and equipment on the Leased Property

SECTION 12  LIENS  Tenant shall at all times indemnify and hold Landlord and the Leased Property free, clear, and harmless from any claims, liens, demands, charges, encumbrances, litigation, and judgments arising directly or indirectly out of any use, occupancy or activity of Tenant, or out any work performed, material furnished, or obligations incurred by Tenant in, upon, about or otherwise in connection with the Leased Property. Tenant shall give Landlord notice of at least ten (10) business days prior to the commencement of any such work on the Leased Property to afford Landlord the opportunity to file appropriate notices of non-responsibility  Tenant shall, at its sole cost and expense, within fifteen (15) days after the filing of any lien of record obtain the discharge and release thereof  Nothing contained herein shall prevent Landlord, at the cost and on the account of Tenant, from obtaining said discharge and release in the event Tenant fails or refuses to do the same within said fifteen (15) day period

SECTION 13  INDEMNIFICATION  Tenant hereby covenants and agrees to indemnify and hold Landlord and the Leased Property free, clear, and harmless from any and all liability, costs, expenses, including attorneys' fees, judgments, claims, liens and demands of any kind whatsoever in connection with, arising out of, or by reason of any act, omission or negligence of Tenant, its agents, employees, servants, contractors, subtenants, licensees, customers, or business invitees while in, upon, about or in any way connected with the Leased Property or the Complex, or arising from any accident, injury or damage, howsoever and by whomsoever caused to any person or property whatsoever, occurring in, upon, about or in any way connected with the Leased Property, the Complex, or any portion thereof other than as a result of the negligence of Landlord

SECTION 14  SUBORDINATION  Landlord reserves the right to encumber the Leased Property at any time, including, but not limited to sale-lease back transactions, and upon request of Landlord or any mortgagee or beneficiary under a deed of trust, or ground lease lessor, Tenant shall in writing, within ten (10) days after Landlord's written request, subordinate its rights hereunder to the lien of any mortgage or deed of trust or any ground lease now or hereafter in force against the land or building of which the Leased Property is a part and upon any buildings hereafter placed upon the land of which the Leased Property is a part, and to all advances made or hereafter to be made upon the security thereof  In the event that Tenant fails to execute and/or deliver any such subordination to Landlord within said ten (10) days, Tenant hereby irrevocably appoints Landlord

- 7 -

as Tenant's duly authorized attorney-in-fact for the purpose of executing and delivering any such subordination, and Tenant hereby grants Landlord all power and authority necessary to execute and deliver all such documents on behalf of Tenant  Tenant acknowledges that the power of attorney granted hereby is coupled with an interest

In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any deed of trust, or upon termination of any ground lease, Tenant shall attorn to the purchaser upon any such foreclosure or sale or ground lessor and recognize such purchaser or ground lessor as Landlord under this Lease

In the event that the mortgagee or beneficiary of any such mortgage or deed of trust elects to have this Lease a prior lien to its mortgage or deed of trust, then and in such event, upon such mortgagee's or beneficiary's giving written notice to Tenant to that effect, this Lease shall be deemed prior in lien to such mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of recordation of such mortgage or deed of trust.

SECTION 15  <u>ASSIGNMENT AND SUBLETTING</u>  Tenant shall not assign, mortgage, pledge or encumber this Lease or any interest herein, and shall not assign, mortgage, pledge, or encumber the Leased Property or any interest therein, except with the prior written consent of Landlord (reference elsewhere herein to assignees notwithstanding).  Tenant acknowledges that numerous factors have induced Landlord to execute this Lease with Tenant, including, without limitation, Tenant's financial stability, business history, expertise, the nature of Tenant's business and the relation thereof to the overall "tenant mix" in the Complex, and that therefore any consent given by Landlord hereunder for an assignment, mortgage, pledge or encumbrance of this Lease shall be at Landlord's reasonable discretion  Tenant may sublease the Leased Property to another person or entity upon written notice to Landlord  Any such sublease, assignment, mortgage, pledge, or encumbrance shall not relieve Tenant from liability for payment of the rental herein provided or from the obligation to honor the terms, conditions and covenants of this Lease  Landlord's acceptance of rent from any other person shall not be deemed to be a waiver of any of the provisions of this Lease or a consent to the assignment or subletting of the Leased Property  If Tenant is a corporation or a partnership the issuance of any additional stock and/or transfer, assignment, or hypothecation of any stock or interest in such corporation or partnership in the aggregate in excess of twenty-five percent (25%) of such interests, as the same may be constituted as of the date of this Lease, shall be deemed an assignment within the meaning of this Section 15

Tenant shall pay all costs, expenses and reasonable attorney's fees that Landlord may incur or pay in processing, documenting or administering any request of Tenant for any Landlord's consent required by this Section

SECTION 16  <u>INSOLVENCY</u>  It is understood and agreed that neither this Lease nor any interest herein or hereunder, nor any estate hereby created in favor of Tenant, shall pass by operation of law under any state or federal insolvency or bankruptcy act, or any similar law now or hereafter in effect, to any trustee, receiver, assignee for the benefit of creditors, or any other person whomsoever

SECTION 17  <u>CONDEMNATION</u>  Should the whole or any part of the Leased Property be condemned or taken by a competent authority for any public or quasi-public purpose, all awards

payable on account of such condemnation and taking shall be payable to Landlord, and Tenant hereby waives any and all interest therein. For the purpose of this Section 17, a deed granted in lieu of condemnation shall be deemed a taking.

If the whole of the Leased Property be condemned or taken, then this Lease shall terminate upon such taking. If only part of the Leased Property is so taken and the remaining portion thereof will not be reasonably adequate for the operation of Tenant's business after Landlord completes such repairs or alterations as Landlord elects to make, either Landlord or Tenant shall have the option to terminate this Lease as of said taking by notifying the other party hereto of such election in writing within twenty (20) days after such taking. In no event shall a taking terminate this Lease without such notification. If such partial taking does not terminate this Lease, this Lease shall continue in full force and effect, but the rent provided in Section 3 hereof shall be reduced by an amount equal to that proportion of such basic rent which the rentable square footage of the portion taken bears to the total rentable square footage of the Leased Property as of the commencement date of the Lease. If any part of the Complex other than the Leased Property shall be so taken or appropriated, Landlord shall have the right, at its option, to terminate this Lease by notifying Tenant within six (6) months of such taking.

SECTION 18  DESTRUCTION OF PREMISES   If the Leased Property shall be destroyed or rendered untenantable, either wholly or in part, by fire or other unavoidable casualty, Landlord may, at its option, restore the Leased Property to its previous condition and in the meantime basic monthly rent shall be abated in the same proportion as the untenantable portion of the Leased Property bears to the whole thereof. This Lease shall not terminate unless, within sixty (60) days after the happening of such casualty, Landlord notifies Tenant of its election to terminate this Lease. In the event Landlord does not elect to terminate this Lease, Landlord shall repair the damage to the Leased Property caused by such casualty.   Any other provision hereof to the contrary notwithstanding, should any casualty have been the result of any act, omission or negligence of Tenant, its agents, employees, servants, contractors, subtenants, licensees, customers or business invitees, unless Landlord otherwise elects, this Lease shall not terminate.   Tenant shall repair such damage and rent shall not abate.

In the event of any damage not limited to, or not including, the Leased Property, such that the Complex is damaged to the extent of twenty-five (25%) or more, Landlord may elect to terminate this Lease upon giving notice of such election in writing to Tenant within ninety (90) days after the occurrence of the event causing the damage.

Any other provision hereof to the contrary notwithstanding.   Landlord shall not be liable for any repair or restoration until, and then only to the extent that, insurance proceeds are received therefor.

SECTION 19  RIGHT OF ACCESS   Landlord shall at all times have the right to enter the Leased Property to inspect the same, to supply any service the Landlord must provide to Tenant hereunder, to exhibit the Leased Property to prospective purchasers or tenants, to post notices of nonresponsibility, and to repair or construct any portion of the building of which the Leased Property is a part or any other portion of the Complex, without abatement of rent, and may keep and store tools, material and equipment upon the Leased Property and may erect scaffolding and other necessary structures where reasonably required by the character of the work to be performed,

- 9 -

provided the entrance to the Leased Property shall not be blocked thereby, and further provided that such work shall not interfere unreasonably with Tenant's business. Tenant hereby waives any claim for damages for any injury or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Leased Property, and any other loss occasioned by the exercise of Landlord's rights hereunder. For each of the aforesaid purposes, Landlord shall at all times have the right to retain a key with which to unlock all doors in the Leased Property, excluding Tenant's vaults and safes Landlord shall have the right to use any means that Landlord may deem proper to open such doors in an emergency. Landlord's entry into the Leased Property obtained by any such means shall not constitute forcible or unlawful entry into, or a detainer of, the Leased Property, or an eviction of Tenant from the Leased Property or any portion thereof

SECTION 20 **EXPENDITURES BY LANDLORD** Whenever any provision of this Lease obligates Tenant to make any payments or expenditures, or to do any act or thing, or to incur any liability whatsoever, and Tenant fails, refuses or neglects to perform as herein required, Landlord shall be entitled, but not obligated, to make any such payment or expenditure or to do any such act or thing, or to incur any such liability, all on behalf of and at the cost for the account of Tenant. In such event, the amount thereof with interest thereon at the rate of one and one-half percent (1 5%) per month, compounded monthly, shall constitute and be collectible as additional rent upon demand

SECTION 21 **OFFSET STATEMENT** Tenant agrees that within ten (10) days of any demand therefor by Landlord, Tenant will execute and deliver to Landlord or Landlord's designee a recordable certificate stating that this Lease is in full force and effect, such defenses or offsets as are claimed by Tenant, if any, the date to which all rentals have been paid, and such other information concerning the Lease, the Leased Property, and Tenant as Landlord or said designee may reasonably request. In the event that Tenant fails to execute and/or deliver any such certificate or offset statement to Landlord within said ten (10) days, Tenant hereby irrevocably appoints Landlord as Tenant's duly authorized attorney-in-fact for the purpose of executing and delivering any such certificate or offset statement, and Tenant hereby grants Landlord all power and authority necessary to execute and deliver all such documents on behalf of Tenant. Tenant acknowledges that the power of attorney granted hereby is coupled with an interest

SECTION 22 **DEFAULT** Tenant's compliance with each and every of its obligations hereunder is a condition precedent to each and every covenant and obligation of Landlord. In the event that (a) Tenant shall default in the payment of any sum of money required to be paid hereunder and such default continues for five (5) days after written notice thereof, or (b) Tenant shall default in the performance of any other of its obligations hereunder and such default continues for ten (10) days after written notice thereof (except for defaults which create a nuisance or illegal condition, or which cause or threaten serious danger or life, limb or property, in which case there shall be no requirement for written notice or right to cure), or (c) Tenant should vacate or abandon the Leased Property during the term of this Lease, or (d) there is filed by or against Tenant any petition in bankruptcy, or Tenant is adjudicated as a bankrupt or insolvent, or there is appointed a receiver or trustee to take possession of all or substantially all of the assets of Tenant or of the Leased Property, or there is a general assignment by Tenant for the benefit of creditors, or any action is taken by or against Tenant under any state or federal insolvency or bankruptcy act, or any similar law now or

- 10 -

hereafter in effect (other than Tenant's efforts to collect a debt from or enforce a right against a debtor thereunder), including without limitation, the filing of any petition for or in reorganization or an arrangement, or should the Leased Property or any portion thereof be taken or seized under the levy of execution or attachment against Tenant, Landlord at its sole option, in addition to all other rights and remedies granted to Landlord hereunder or at law or in equity, shall have (i) the right to declare the term of this Lease ended and to re-enter the Leased Property and take possession thereof, and to terminate all of the rights of Tenant in and to the Leased Property, or (ii) the right without declaring the term of this Lease ended, to re-enter the Leased Property and to occupy the same, or any portion thereof, or to lease the whole or any portion thereof, for and on account of Tenant as hereinafter provided, applying any monies received first to payment of such expenses, including attorneys' fees and real estate commissions paid, assumed or incurred by Landlord in or in connection with the recovery, repairing or reletting of the Leased Property and then to the fulfillment of the covenants of Tenant (any such reletting shall be for such a term, at such a rent, and on such other conditions as Landlord in its reasonable discretion deems advisable), or (iii) the right, even though it may have relet all or any portion of the Leased Property as above-provided, to thereafter at any time terminate this Lease for such previous default on the part of Tenant  Pursuant to said right of re-entry, Landlord may remove all persons from the Leased Property and may, but shall not be obligated to, (1) remove all property therefrom, and (2) enforce any rights Landlord may have against said property, or store the same in any public or private warehouse or elsewhere at the cost and for the account of Tenant or the owner or owners thereof  Tenant agrees to hold Landlord free and harmless of any liability whatsoever for the removal, storage or discarding of any such property, whether of Tenant or any third party whomsoever  As security for Tenant's compliance with all the terms of this Lease, Landlord is hereby given a lien upon all of Tenant's property in, upon or about the Leased Property  Anything contained herein to the contrary notwithstanding, Landlord's exercise of its right of re-entry, or its commencement of an action in unlawful detainer, or otherwise to obtain possession of the Leased Property, shall not terminate this Lease or any of Tenant's obligations hereunder unless Landlord shall first notify Tenant in writing that it has so elected to terminate this Lease  Tenant acknowledges and agrees that in the event of any failure of Tenant to pay any rent or other sums that Tenant is required to pay to Landlord pursuant to this Lease, Tenant shall immediately be in the status of default such that, at Landlord's option, the five (5) day written notice required above (1) may be a five-day notice as contemplated by N R S  Section 40 250 or N R S  Section 40 253, or (2) may be given simultaneously or may run concurrently with any five day notice given by Landlord pursuant to N R S  Section 40 250 or N R S  Section 40 253

In any action brought by either party to enforce or protect any of its rights arising from or related to this Lease, the prevailing party shall be entitled to receive its costs and legal expenses, including reasonable attorney's fees, whether such action is prosecuted to judgment or not  Landlord and Tenant hereby agree and acknowledge, each for the benefit of the other, that for purposes of the foregoing reciprocal attorneys' fees clause, they have bargained for attorneys' fees to be computed in the following manner  said attorneys' fees shall be computed by multiplying the regular hourly fee rate of the attorney or attorneys selected and utilized by the prevailing party by the number of hours expended in such action by said attorney or attorneys  If such hourly rate or rates, and the number of hours expended, are verified by the prevailing party's attorney or attorneys in a sworn certificate accompanied by time summaries, the resulting amount of such attorneys' fees shall be irrebuttably presumed to be reasonable

Landlord 's waiver of any default or breach of any of Tenant's obligations hereunder shall not be a waiver of any preceding or subsequent breach of the same or any other of Tenant's obligations contained herein  Landlord's subsequent acceptance of rent or any other payment hereunder to Landlord shall not constitute a waiver of any preceding breach by Tenant of any of its obligations hereunder other than the failure to pay the particular rental or other payment or portion thereof so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rental or other payment  No payment by Tenant or receipt by Landlord of a lesser amount than the rent herein provided shall constitute anything other than a payment on account of the earliest rent due and payable hereunder, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an accord and satisfaction, and Landlord may accept and negotiate any such check or payment without prejudice to Landlord's right to recover the balance of such sums as are due, or pursue any other remedy provided in this Lease   Landlord's consent to any matter or event shall not constitute a waiver of the necessity for such consent to any subsequent matter or event  Upon the occurrence of any breach by Tenant hereunder, Landlord's damages shall include the total value of any and all rent concessions and other inducements received by Tenant during the term of the Lease or otherwise including, but not limited to, "free rent," reduced rent, and the cost to Landlord of improving Tenant's Leased Premises over and above the cost of the building shell, less the cost of any such improvements Landlord can use in reletting the Leased Premises

SECTION 23  <u>QUIET POSSESSION</u>.  Upon Tenant's payment of all rentals and other payments herein required from Tenant, and upon Tenant's performance of all of the provisions, covenants and conditions of this Lease on Tenant's part to be kept and performed, Tenant may quietly have, hold and enjoy the Leased Property during the term of this Lease without any disturbance from Landlord or from any other person claiming through Landlord

SECTION 24  <u>SALE BY LANDLORD</u>   In the event of any sale or exchange of the Leased Property, the Complex or the building of which the Leased Property is a part by Landlord, Landlord shall be and is hereby relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease, arising out of any act, occurrence or omission relating to the Leased Property occurring after the consummation of such sale or exchange   Tenant agrees to attorn to such purchaser or grantee

SECTION 25  <u>DEFAULT BY LANDLORD</u>   It is agreed that in the event Landlord fails or refuses to perform any of its obligations hereunder that Tenant, prior to exercising any right or remedy it may have, shall give fifteen (15) days written notice to Landlord of such default specifying in said notice the default with which Landlord is charged   However, if the default complained of is of such a nature that the same can be rectified or cured, but cannot with reasonable diligence be rectified or cured within said fifteen (15) days, then such default shall be deemed to be rectified or cured if Landlord within said fifteen (15) day period shall commence the rectification and curing thereof and shall continue thereafter with all due diligence to cause such rectification and curing to proceed

SECTION 26 <u>FORCE MAJEURE</u>   Whenever a day is appointed herein on which, or a period of time is appointed in which either party hereto is required to do or complete any act, matter or thing, the time for the doing or completion thereof shall be extended by a period of time equal to the number of days on or during which such party is prevented from, or is unreasonably interfered with, the doing or completion of such act, matter or thing because of labor disputes, civil commotion, war, warlike operation, sabotage, governmental regulations or control, fire or other casualty, inability to obtain any materials, or to obtain fuel or energy, weather or other acts of God, or other causes beyond such party's reasonable control (financial inability excepted), provided, however, that nothing contained herein shall excuse Tenant from the prompt payment of any rent or charge required of Tenant hereunder, and nothing herein shall excuse Tenant's default hereunder for creating any nuisance, illegal condition, or condition which causes or threatens serious injury to life, limb or property

SECTION 27 <u>SERVICE OF NOTICES</u>   Any and all notices and demands shall be in writing and shall be validly given or made if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested.  If such notice or demand be served by mail, service shall be conclusively deemed made three (3) days after mailing or upon actual receipt, whichever is sooner   Any notice or demand to Landlord shall be addressed to Landlord at 2727 Alta Drive, Las Vegas, Nevada 89107.  Any notice or demand to Tenant shall be addressed to Tenant at the Leased Property   Any party hereto may change its address for the purpose of receiving notices, payments or demands as herein provided by a written notice given in the manner aforesaid to the other party hereto, which notice of change of address shall not become effective, however, until the actual receipt thereof by the other party

SECTION 28 <u>MISCELLANEOUS</u>

    28 1    If this Lease is terminated pursuant to any provision hereof and Tenant is not in default hereunder, rent shall be pro-rated as of the date of termination

    28 2    The various rights, options, elections and remedies of Landlord and Tenant respectively contained in this Lease shall be cumulative and no one of them shall be construed as exclusive of any other, or of any right, priority or remedy allowed or provided for by law and not expressly waived in this Lease

    28 3    The terms, provisions, covenants and conditions contained in this Lease shall apply to, bind and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns (where assignment is permitted) of Landlord and tenant, respectively, except as otherwise provided in this Lease

    28 4    If any term, provision, covenant or condition of this Lease, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Lease, and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby

- 13 -

28 5    Time is of the essence of this Lease and all of the terms, provisions, covenants and conditions hereof

28 6    This Lease contains the entire agreement between the parties and cannot be changed or terminated orally

28 7    Masculine and feminine pronouns shall be substituted for the neuter form and vice versa, and the plural shall be substituted for the singular form and vice versa, in any place or places herein in which the context requires such substitutions

28 8    The laws of the State of Nevada shall govern the validity, construction and effect of this Lease

28.9    Whenever in this Lease any words of obligation or duty are used in connection with either party, such words shall have the same force and effect as though framed in the form of covenants on the part of such party

28 10    In the event either party hereto, now or hereafter, shall consist of more than one person, firm or corporation, then and in such event, such persons, firms or corporations shall be jointly and severally liable as parties hereunder; provided, however, nothing herein shall be deemed to impose personal liability on any limited partner of Landlord

28 11    Tenant warrants that it has had no dealings with any broker or agent in connection with this Lease, and covenants to pay, hold harmless and indemnify Landlord from and against any and all costs, expense or liability for any compensation, commissions and charges claimed by any broker or agent with respect to this Lease or the negotiation thereof

28 12    Tenant acknowledges that, by entering into this Lease with Landlord, Tenant has not become a third-party beneficiary of any lease between Landlord and any other tenant, and that no part of the inducement to Tenant to enter into this Lease was any promise or covenant of Landlord, express or implied, to enforce any other lease for the benefit of Tenant

28 13    The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference to this Lease and in no way whatsoever define, limit or describe the scope or intent of this Lease nor in any way affect this Lease    In addition, in the event that a "Lease Summary" or other cover sheet shall be attached to the front of this Lease, it shall be for convenience only, and it shall not in any way affect the terms of this Lease, nor shall it be used in limiting, construing or defining any term, covenant or condition of this Lease

28 14    Tenant covenants and agrees to keep the terms and provisions of this Lease confidential, and not to disclose said terms and provisions to any person or entity whatsoever (except as may be required by law, or by any governmental entity)    Tenant acknowledges that Landlord may have made special concessions to Tenant to induce Tenant to execute this Lease, which if known, could damage Landlord's future business and/or bargaining power    Tenant therefore agrees that any

- 14 -

breach of the covenant contained in this paragraph by Tenant shall be an automatic and incurable default of this Lease

28 15   The submission of this Lease for examination does not constitute a reservation of or option for the Leased Property and this Lease becomes effective as a Lease only upon execution and delivery thereof by Landlord and Tenant

28 16   This Lease shall not be construed either for or against Landlord or Tenant, but this Lease shall be interpreted in accordance with the general tenor of its language

28 17   Tenant acknowledges that Tenant has been advised by Landlord and/or Landlord's agents to consult an attorney in connection with the negotiation and execution hereof, and that neither Landlord nor Landlord's agent has given Tenant any legal advice

28 18   Tenant agrees that all amounts or charges, except for basic rent, to be paid by Tenant to Landlord pursuant the terms and provisions of this Lease shall be conclusively deemed to be additional rent.


IN WITNESS WHEREOF the parties hereto have executed this Lease the day and year first above written

**TENANT:**

USA Commercial Mortgage Company

By _____
Joseph D Milanowski, President

**LANDLORD:**

Pecos Professional Park Limited Partnership

By  USA Development, Inc, a Nevada corporation, General Partner

By _____
Thomas A Hantges, President

By  Nevada Skin & Cancer, Lucius Blanchard, M D , Chtd , a Nevada corporation, General Partner

By _____
Lucius Blanchard, President

- 15 -

# EXHIBIT A

## DESCRIPTION OF LEASED PROPERTY

# EXHIBIT B

## RULES AND REGULATIONS

Tenant agrees as follows

10    All loading and unloading of goods shall be done only at such times, in the areas, and through the entrance designated for such purposes by Landlord

20    The delivery or shipping of merchandise, supplies and fixtures to and from the Leased Property shall be subject to such rules and regulations as, in the judgment of Landlord, are necessary for the proper operation of the Leased Property or the Complex

30    No radio or television or other similar device shall be installed without first obtaining in each instance Landlord's consent in writing   No aerial shall be erected on the roof or exterior walls of the Leased Property or in the Complex without in each instance, the written consent of Landlord   Any aerial so installed without such written consent shall be subject to removal without notice at any time at Tenant's expense

40    Tenant shall not, without the written consent of Landlord first had and obtained, use in or about the Leased Property any advertising or promotional media such as searchlights, loud speakers, phonographs, or other similar visual or audio media which can be seen or heard outside the Leased Property

50    Tenant shall keep the Leased Property at a temperature sufficiently high to prevent freezing of water in pipes and fixtures

60    The exterior areas immediately adjoining the Leased Property shall be kept clean and free from dirt and rubbish by Tenant to the satisfaction of Landlord, and Tenant shall not place or permit any obstructions or merchandise in such areas

70    Tenant and Tenant's employees shall park their cars only in those parking areas designated for that purpose by Landlord   Tenant shall furnish Landlord with State automobile license numbers assigned to Tenant's car or cars, and cars of Tenant's employees, within five (5) days after taking possession of the Leased Property and shall thereafter notify Landlord of any changes within five (5) days after such changes occur   In the event that Tenant or its employees fail to park their cars in designating parking areas as aforesaid, then Landlord at its option, in addition to any other remedies, including, but not limited to, towing, may charge Tenant Twenty ($20 00) Dollars per day per car parked in any area other than those designated

- 16 -

80     The plumbing facilities shall not be used for any other purpose other than that for which they are constructed, and no foreign substance of any kind shall be thrown therein, and the expense of any breakage, stoppage, or damage resulting from a violation of this provision shall be borne by the Tenant who shall, or whose employees, agents, servants, customers or invitees shall, have caused it

90     Tenant shall keep the Leased Property free from pets and vermin

100    Tenant shall not burn any trash or garbage of any kind in or about the Leased Property or the Complex

110    Tenant shall not make noises, cause disturbances, or create odors which may be offensive to Landlord or to other tenants of the Complex or their employees, agents, servants, customers or invitees

120    No portion of the Leased Property or the Complex shall be used for sale or display of any obscene, pornographic, so-called "adult" or otherwise offensive merchandise or activities, without Landlord's prior written consent

130    Without Landlord's written consent therefore first hand and obtained, no sign or other object or thing visible to public view outside of the Leased Property shall be placed or allowed on the exterior of the Leased Property or in the interior of the Leased Property in such a manner as shall be visible from outside the Leased Property, except that Tenant shall, at its expense, erect a sign on the exterior of the Leased Property of such size, shape, materials and design as may be prescribed by Landlord   Notwithstanding the above, Landlord agrees that Tenant may, in the future, attach a sign to the side of the building on the Leased Property facing Harmon Avenue Tenant shall be required to properly maintain its sign, including prompt repair of any nature. Tenant shall keep such sign lit during such hours as Landlord may designate   Upon expiration of the Lease, Tenant shall be responsible for promptly removing all signs placed in and around the Leased Property by Tenant   Tenant shall repair all damage caused to the building or Leased Property by such removal, including proper "capping off" of electrical wiring

140    Tenant and Tenant's employees and agents shall not solicit business in the parking areas or other common areas, nor shall Tenant distribute any handbills or other advertising matter in automobiles parked in the parking area or in other common areas

150    Tenant shall refrain from keeping, displaying, or selling any merchandise or any object outside of the interior of the Leased Property or in any portion of any sidewalks, walkways or other part of the Complex outside of the Leased Property

160    The sidewalks, halls, passages, exits, entrances, stairways and other common areas shall not be obstructed by Tenant or used for any purpose other than for ingress and egress to the Leased Property

- 17 -

170    Landlord reserves the right to exclude or expel from the Complex any person who, in the judgment of the Landlord, is intoxicated or under the influence of liquor, or who shall in any manner do any act in violation of any of the rules and regulations of the Complex

180    Tenant shall not place a load upon any floor of the Leased Property exceeding the floor load per square foot which said floor was designed to carry or which is allowed by law

190    Landlord will direct electricians as to where and how telephone wires are to be introduced  No boring or cutting for wires will be allowed without the consent of Landlord  The location of telephones, call boxes and other office equipment affixed to the Leased Property shall be subject to the reasonable approval of Landlord

200    Tenant, upon termination of the Lease, shall deliver to Landlord the keys of offices, rooms and toilet rooms which shall have been furnished Tenant or which Tenant shall have made, and in the event of loss of any keys so furnished, shall pay Landlord therefor

210    Tenant shall see that the doors of the Leased Property are closed at all times when not in use for ingress or egress and securely locked before leaving the building of which the Leased Property is a part, and for any default or carelessness Tenant shall make good all injuries sustained by other tenants or occupants of the Complex or by Landlord.

220    Employees of Landlord shall not perform any work or do anything outside of their regular duties unless under special instructions from Landlord, and none of Landlord's employees will admit any person to any office without specific instruction from Landlord

230    If the Leased Property is leased for use as professional offices, all professional practice conducted on the Leased Property shall be in compliance with the Code of Ethics of such profession   All advertising, if any, by Tenant, its agents, employees, servants, contractors, subtenants and licensees in connection with the Leased Property shall be in compliance with said Code of Ethics

| Creditor | Claim No 752 | Status |
|---|---|---|
| Pecos Professional Park Limited | *Filed* 11/09/2006 | *Filed by* CR |
| Partnership | *Entered* 11/09/2006 | *Entered by* SYLVESTER, JEFFREY |
| c/o Sylvester & Polednak, Ltd | *Amended By Claim No* | *Modified* |
| 7371 Prairie Falcon Road, Suite 120 | 752 | |
| Las Vegas, Nevada 89128 | | |

Unsecured claimed  $470080 98

**Total      claimed  $470080 98**

*History*

○ 752-1  11/09/2006 Claim #752 filed by Pecos Professional Park Limited Partnership , total amount
claimed  $166788 42 (SYLVESTER, JEFFREY)

○ 752-2  02/09/2007 Amended Claim #752 filed by Pecos Professional Park Limited Partnership , total
amount claimed  $470080 98 (SYLVESTER, JEFFREY)

*Description*

*Remarks*