Israel Goldowitz, Chief Counsel
Karen L. Morris, Deputy Chief Counsel
James L. Eggeman, Assistant Chief Counsel
Frank A. Anderson, Attorney, D.C. Bar No. 478234[*]
Erika E. Barnes, Attorney, Cal. Bar No. 197309[*]
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
Tel: (202) 326-4020, ext. 3759
Fax: (202) 326-4112
anderson.frank@pbgc.gov and efile@pbgc.gov

and

Steven W. Myhre, Acting United States Attorney
Nevada State Bar No. 9635
Carlos A. Gonzalez, Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Tel:  (702) 388-6336
Fax:  (702) 388-6787

Attorneys for Pension Benefit Guaranty Corporation

Electronically Filed:
October 31, 2007

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No. BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | ) | Case No. BK-S-06-10726 LBR |
| Debtor.) | | Case No. BK-S-06-10727 LBR |
| In re: | ) | Case No. BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC | ) | Case No. BK-S-06-10729 LBR |
| Debtor.) | | |
| In re: | ) | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | ) | |
| Debtor.) | | Jointly Administered Under |
| In re: | ) | Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | ) | |
| Debtor.) | | |
| In re: | ) | Hearing Date: December 14, 2007 |
| USA SECURITIES, LLC | ) | Hearing Time: 9:30 a.m. |
| Debtor.) | | |

---

[*]    Admitted *pro hac vice*.

**RESPONSE OF THE PENSION BENEFIT GUARANTY CORPORATION
TO OBJECTIONS OF THE USACM LIQUIDATING TRUST
TO PBGC PROOFS OF CLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

I.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  The Amount of PBGC's Claims Must Be Calculated Using
    ERISA and PBGC's Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  PBGC's Responses to Specific Objections of the Liquidating Trust . . . . . . . . . . 7

        1.  PBGC's claims for unfunded benefits liabilities (Claim 794)
        must be calculated as provided for by statute and regulations . . . . . . . . . 7

        2.  PBGC's claims for unfunded benefit liabilities, minimum
        funding contributions, and premiums are taxes under section
        503(b)(1)(B) and portions of the claims are entitled to
        administrative priority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            a.  Unfunded benefit liabilities are taxes under section
            503(b)(1)(B) and are entitled to administrative priority. . . . . . . 13

            b.  Minimum funding contributions are taxes under section
            503(b)(1)(B) and are entitled to administrative priority . . . . . . 16

            c.  Premiums are taxes under section 503(b)(1)(B) and are
            entitled to administrative priority . . . . . . . . . . . . . . . . . . . . . . . . 18

        3.  PBGC's claims for minimum funding contributions
        (Claim 793) and premiums (Claim 794) are entitled to
        administrative priority under section 503(b)(1)(A) of the
        Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

        a.     Minimum funding contributions are entitled to administrative priority under section 503(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . 22

        b.     Premiums are entitled to administrative priority under section 503(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

   C.    PBGC's Responses to General Objections of the Liquidating Trust . . . . . . . . . 24

     1.    PBGC has provided ample support for the validity and amount of its claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     2.    PBGC has provided sufficient indication of the value of its claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     3.    PBGC may bring simultaneous claims where multiple parties share joint and several liability; USACM is liable for the full amount of PBGC claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     4.    PBGC's recovery against the USACM Liquidating Trust will not be paid over to the Insider Beneficiaries . . . . . . . . . . . . . . . . . . . . . . 27

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## Federal Cases Cited

*In re Abercrombie,*
139 F.3d 755 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Adventure Res. v. Holland,*
137 F.3d 786 (4th Cir. 1998), *cert. denied,* 119 S. Ct. 404 (1998) . . . . . . . . . . . . . . . . 12

*Alabama Surface Mining Comm'n v. N.P. Mining Co.*
*(In re N.P. Mining Co.),*
963 F.2d 1449 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Batterton v. Francis,*
432 U.S. 416 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In Re Bayly Corp.,*
163 F.3d 1205 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17, 24

*Beck v. Pace Int'l Union,*
127 S. Ct. 2310 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Board of Trustees v. H.F. Johnson, Inc.,*
830 F.2d 1009 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brown v. IRS,*
82 F.3d 801 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Burns v. City of Winston-Salem*
*(In re Members Warehouse, Inc.),*
991 F.2d 116 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Butner v. U.S.,*
440 U.S. 48 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re CF&I Fabricators of Utah, Inc.,*
150 F.3d 1293 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Chrysler Corp. v. Brown,*
441 U.S. 281 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*City of New York v. Feiring,*
    313 U.S. 283 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*CPT Holdings, Inc. v. Indus. & Allied Employees*
    *Union Pension Plan,*
    162 F.3d 405 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Columbia Packing Co. v. PBGC,*
    81 B.R. 205 (D. Mass. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cottage Sav. Assoc. v. C.I.R.,*
    499 U.S. 554 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re CSC Indus. Inc.,*
    232 F.3d 505 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cumberland Farms, Inc. v. Florida Dep't of Envtl. Prot.,*
    116 F.3d 16 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re George,*
    361 F.3d 1157 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 20

*Grogan v. Garner,*
    498 U.S. 279 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heckler v. Campbell,*
    461 U.S. 458 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Holm,*
    931 F.2d 620 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

*Lancaster v. Tennessee*
    *(In re Wall Tube & Metal Prods. Co.),*
    831 F.2d 118 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Lorber Indus. of California, Inc.,*
    675 F.2d 1062 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.),*
    53 F.3d 478 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*In re Megafoods Stores, Inc.*,
163 F.3d 1063 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp.*
*(In Matter of Midland Indus. Serv. Corp.)*,
35 F.3d 164 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1359 (1995) . . . . . . . . . . . . . 14, 18

*Nachman Corp. v. PBGC*,
446 U.S. 359 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In Matter of Pacific Far East Line, Inc.*,
713 F.2d 476 (9th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Palau Corp.*,
18 F.3d 746 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Patterson v. Shumate*,
504 U.S. 753 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*PBGC v. AlloyTek, Inc.*,
924 F.2d 620 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*PBGC v. LTV Corp.*,
496 U.S. 633 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*PBGC v. Ouimet Corp.*,
470 F. Supp. 945 (D.Mass. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*PBGC v. Ouimet Corp.*,
630 F.2d 4 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pennsylvania Dep't of Welfare v. Davenport*,
495 U.S. 552 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Raleigh v. Illinois Dep't of Revenue*,
530 U.S. 15 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 11, 14

*Reading Co. v. Brown*,
391 U.S. 471 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Red Lion Broad. Co. v. FCC*,
395 U.S. 367 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*S.E.C. v. Chenery Corp.*,
332 U.S. 194 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*S.E.C. v. JT Wallenbrock & Assoc.*,
   440 F.3d 1109 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Shugrue v. PBGC (In re Ionosphere Clubs, Inc.)*,
   142 B.R. 645 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Spunt v. Charlesbank Laundry, Inc.*
   *(In re Charlesbank Laundry, Inc.)*,
   755 F.2d 200 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Sunarhauserman, Inc.*,
   126 F.3d 811 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Travelers Casualty & Surety Co. v. PG&E Co.*,
   127 S. Ct. 1199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 11, 14

*United Steelworkers v. United Eng'g, Inc.*,
   52 F.3d 1386 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re US Airways Group, Inc.*,
   303 B.R. 784 (Bankr. E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*U.S. v. Cleveland Indians Baseball Co.*,
   121 S. Ct. 1433 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. v. LTV Corp.*
   *(In re Chateaugay Corp.)*,
   944 F.2d 997 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*U.S. v. Reorganized CF&I Fabricators of Utah, Inc.*,
   518 U.S. 213 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. v. Sanford (In re Sanford)*,
   979 F.2d 1511 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*West Virginia State Dep't of Tax & Revenue v. IRS*
   *(In re Columbia Gas Transmission Corp.)*,
   37 F.3d 982 (3d Cir. 1994), *cert. denied*, 131 L. Ed. 2d 721 (1995) . . . . . . . . . . . . 14, 18

*Yoder v. Ohio Bureau of Workers' Comp.*
   *(In re Suburban Motor Freight, Inc.)*,
   998 F.2d 338 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Yorke v. NLRB*,
   709 F.2d 1138 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

vi

**Docketed Cases**

*In re High Voltage Eng'g Corp.*,
      Case No. 05-10787 (Bankr. D. Mass. Jul. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*In re UAL Corp.*,
      Case No. 02 B 48191 (Bankr. N.D. Ill. Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

**Acts of Congress**

Pension Protection Act of 1987 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Single-Employer Pension Plan Amendment Act of 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**United States Codes Cited**

Title 5
      Section 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 11
      Section 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      Section 503(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23
      Section 503(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14, 15, 16, 18, 19
      Section 503(b)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
      Section 507(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      Section 507(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      Section 507(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Title 26
      Section 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 22
      Section 412(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18
      Section 412(n)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      Section 412(c)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      Section 412(n)(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 29
      Section 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      Section 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      Section 1082(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
      Sections 1301-1461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Section 1301(a)(18) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10

Section 1301(a)(18)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Section 1301(a)(19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 1301(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section 1306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18
Section 1306(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 1306(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Section 1306(a)(7)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20
Section 1306(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section 1307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13
Section 1307(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 1307(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 1307(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Section 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13
Section 1321(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1321(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Section 1322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
Section 1322(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 1341(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Section 1342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1342(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Section 1342(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22
Section 1342(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Section 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Section 1348 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
Section 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
Section 1362(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 15
Section 1362(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 13
Section 1362(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Section 1362(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 1362(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 11
Section 1368(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Section 1368(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 1368(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16
Section 1368(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Other Authorities Cited

29 C.F.R. § 4007.11(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 C.F.R. § 4044.41-75(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

40 Fed. Reg. 57,982 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

viii

41 Fed. Reg. 48,484 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

41 Fed. Reg. 48,485 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

46 Fed. Reg. 9492(1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

58 Fed. Reg. 5128 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

58 Fed. Reg. 50,812 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

72 Fed. Reg. 7755 (Feb. 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

151 Cong. Rec. S672 (Jan. 31, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

151 Cong. Rec. S12912 (Nov. 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

PBGC 2006 Annual Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# INDEX OF EXHIBITS

<u>Exhibit</u>

1   Trusteeship Agreement Between PBGC and USA Commercial

2   Order on Claims, *In re High Voltage Engineering Corporation, et. al.*, Case No. 05-10787 (Bankr. Mass. Jul. 26, 2006)

3   Transcript of Hearing dated December 16, 2005, *In re UAL Corp.*, Case No. 02 B 48191 (Bankr. N.D. Ill. Dec. 30, 2005)

**RESPONSE OF THE PENSION BENEFIT GUARANTY CORPORATION**
**TO OBJECTIONS OF THE USACM LIQUIDATING TRUST**
**TO PBGC PROOFS OF CLAIM**

The Pension Benefit Guaranty Corporation ("PBGC") hereby submits its Response to the

Objections of the USACM Liquidating Trust to Proofs of Claim Filed by the Pension Benefit

Guaranty Corporation ("Objection"). For the reasons that follow, the USACM Liquidating

Trust's ("Liquidating Trust" or "Trust") Objection should be overruled in its entirety. If this

Court does not overrule the Liquidating Trust's Objection as a matter of law, PBGC requests that

the Court conduct a status conference to schedule discovery, including expert economic and

actuarial depositions, and an evidentiary hearing to determine the amount of PBGC's claims.[1]

## I.    FACTUAL BACKGROUND

USA Commercial Mortgage Company ("USACM") established the USA Commercial

Mortgage Company Defined Benefit Pension Plan ("Pension Plan" or "Plan") effective January

1, 1998. The Pension Plan is a single-employer defined benefit pension plan covered by Title IV

of ERISA. The Pension Plan covers approximately 30 former employees of USACM.

On April 13, 2006, USACM and four of its related entities filed voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code. On August 31, 2006, USACM appointed itself

sole trustee of the Pension Plan, and froze all benefit accruals under the Pension Plan, both

---

[1] Should the Liquidating Trust raise arguments to support or supplement its Objection that were
not disclosed to PBGC before the filing of this Response or bring forth any evidence to prove
what it believes - but has not disclosed - the value of the claims should be, PBGC requests leave
to amend this Memorandum to address those new arguments and evidence.

1

effective September 30, 2006.[2]  On October 20, 2006, the Court entered an order recognizing

that USACM had the authority to take these measures.[3]

On November 9, 2006, PBGC timely filed claim nos. 791, 793 and 794 against USACM

for unfunded benefit liabilities, minimum funding contributions and premiums.  For each claim,

PBGC filed a Statement in Support of the claim, specifically setting forth the bases and statutory

provisions for such claims.  Because the Pension Plan had not terminated, PBGC filed its claim

for unfunded benefits liabilities as contingent and estimated, the minimum funding claims as

estimated, and its premium claims as unliquidated.

On January 8, 2007, the Court confirmed the Debtors' Third Amended Joint Chapter 11

Plan of Reorganization ("POR"), which provided for USACM to liquidate and dissolve.  The

confirmed POR made no provision for the Pension Plan to continue or to be assumed by any

other entity – the Pension Plan would simply have been abandoned after the liquidation of

USACM.  Because neither USACM nor the liquidating POR made any arrangement for

terminating the Pension Plan, PBGC initiated termination under 29 U.S.C. § 1342(a) and issued

an administrative notice of determination on January 12, 2007, that the Plan must be terminated.

On January 26, 2007, USACM and PBGC entered into the Agreement for Appointment

of Trustee and Termination of Plan (the "Trusteeship Agreement").[4]  Under the Trusteeship

Agreement, the Pension Plan was terminated, PBGC was appointed statutory trustee, and the

---

[2]  *See* Exhibit B to USA Commercial Mortgage Company's Motion for Approval of
Appointment of a Successor Trustee for its Defined Benefit Pension Plan and to Freeze the Plan
Effective September 30, 2006, Docket No. 1251.

[3]   Order Granting Debtor's Motion to Freeze Pension Plan and Appoint Successor Trustee,
Docket No. 1612.

[4]  A copy of the Trusteeship Agreement is attached as Exhibit 1.

date of plan termination was established as January 15, 2007.  USACM confirmed in the

Trusteeship Agreement that it was the contributing sponsor of the Pension Plan on January 15,

2007, and that the Pension Plan "is an employee pension benefit plan to which 29 U.S.C.

§ 1321(a) applies and is not exempt under 29 U.S.C. § 1321(b).  The [Pension] Plan is therefore

covered by Title IV of ERISA."[5]  USACM also agreed that "USA Commercial Mortgage

Company and any other person having possession or control of any records, assets or other

property of the Plan shall convey and deliver to PBGC any such records, assets or property."[6]

On April 23 and 25, 2007, PBGC amended its claims against USACM, to reflect updated

calculations for each claim in connection with the termination of the Pension Plan and additional

documentation received after PBGC filed the initial claims.[7]  Claim 794-3 for unfunded benefit

liabilities is for $1,700,624; Claim 793-2 for unpaid minimum funding contributions is for

$1,211,242; and Claim 791-2 for premiums is for $120,870.

On September 11, 2007, the Liquidating Trust filed objections to PBGC's initial and

amended claims.[8]  On October 12, 2007, the Court entered a stipulated briefing schedule.[9]

---

[5]  Trusteeship Agreement, ¶¶ D, 1-3.  *See also* 29 U.S.C. §§ 1342, 1348.  The Trust suggests that the Plan is not a tax-qualified plan and, therefore, not covered by PBGC under Title IV of ERISA.  Objection, ¶ 30.  USACM itself provided PBGC with evidence that the Pension Plan is covered by Title IV of ERISA, as well as admitting the same in the Trusteeship Agreement.

[6]  Trusteeship Agreement, ¶ 4.  Over ten months later, PBGC had still not received the documents necessary to make a final valuation of the Plan's benefits and liabilities.  PBGC has issued administrative subpoenas to the Liquidating Trustee and Thomas Allison for these documents.

[7]  A second amended claim for unfunded benefit liabilities was filed April 25, 2007, to correct a clerical error concerning the party name in the filing of the first amended claim two days prior. The claim amount and substance of the claim form and statement in support thereof were otherwise identical to those of the first amended claim for unfunded benefit liabilities.

[8]  Objection, Docket No. 4728.

[9]  Order Approving Stipulation to Continue the Hearing on Objections to Proofs of Claim and Amended Proofs of Claim Filed by Pension Benefit Guaranty Corporation, Docket 4980 (Oct.

3

## II.    STATUTORY BACKGROUND

PBGC is the United States government agency that administers the nation's pension plan termination insurance program established by Title IV of ERISA.[10]  When a pension plan covered by Title IV terminates without sufficient assets to pay all of its promised benefits, PBGC typically becomes trustee of the plan and pays participants their benefits, up to the statutory limits.[11]

PBGC guarantees the pension benefits of nearly 44 million participants in more than 30,000 pension plans, and is the trustee of more than 3,600 failed pension plans.[12]  In November 2006, PBGC reported a deficit of over $18 billion.[13]  The pension insurance program acts as a backstop for American workers, providing retirement income for more than one million workers who would not otherwise receive benefits.[14]  PBGC is self-financed, and obtains its revenues exclusively from five sources:  (i) premiums paid by employers sponsoring ongoing plans; (ii) investment income; (iii) the assets in terminated plans; (iv) recoveries, if any, from employers whose underfunded plans have terminated; and (v) termination premiums.[15]

Title IV of ERISA sets forth the exclusive means of terminating a covered pension plan.[16]  When an underfunded pension plan terminates in a distress or PBGC-initiated termination,

---

12, 2007).

[10]  29 U.S.C. §§ 1301-1461; *see generally PBGC v. LTV Corp.*, 496 U.S. 633, 636-39 (1990).

[11]  *See* 29 U.S.C. §§ 1321, 1322, 1361.

[12]  *See* PBGC 2006 Annual Report, http://www.pbgc.gov/docs/2006_annual_report.pdf, at 2, 15.

[13]  *Id.* at 2, 32.

[14]  *Id.* at 2.

[15]  *Id.* at 1, 15.

[16]  29 U.S.C. § 1341(a)(1); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999).

PBGC assumes an unconditional obligation to pay participants and beneficiaries their lifetime Title IV benefits.[17]  The employer, however, is not relieved of its liability for the benefits it promised to its employees.  Instead, under ERISA, the employer and each member of its controlled group become jointly and severally liable as follows: (1) to PBGC for the "amount of unfunded benefit liabilities" of the pension plan pursuant to 29 U.S.C. § 1362(a) and (b); (2) to the pension plan for unpaid minimum funding contributions owed under 26 U.S.C. §§ 412 pursuant to 29 U.S.C. §§ 1362(a) and (c); (3) to PBGC for any unpaid premiums owed pursuant to 29 U.S.C. §§ 1306 and 1307.[18]  PBGC routinely pursues joint and several claims for this liability against plan sponsors and their controlled group members.[19]

### III.  <u>ARGUMENT</u>

The Liquidating Trust's Objection is without legal or factual bases, and fails entirely to rebut the *prima facie* case of the validity and amount of PBGC's claims pursuant to Bankruptcy Rule 3001(f).  As shown below, USACM is liable to PBGC for the full value of PBGC's claims.

### A.    The Amount of PBGC's Claims Must Be Calculated Using ERISA and PBGC's Regulations.

It is axiomatic that a bankruptcy claim is determined in accordance with the substantive non-bankruptcy law under which it arises.[20]  Bankruptcy does not displace the substantive law

---

[17]  29 U.S.C. §§ 1322, 1361.

[18]  29 U.S.C. §§ 1307(e)(2), 1362(a)&(c); 26 U.S.C. § 412(c)(11); *PBGC v. Ouimet Corp.*, 630 F.2d 4 (1st Cir. 1980).

[19]  *See generally* 29 U.S.C. §§ 1342(d), 1362(c).

[20]  *Travelers Casualty & Surety Co. v. PG&E Co.*, 127 S. Ct. 1199, 1204-05 (2007), *accord Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Pennsylvania Dep't of Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

that gives rise to claims; instead, it merely provides a forum for the resolution of those claims.[21]
Thus, there is no basis for a bankruptcy court to ignore a valid law or regulation when it provides
the substantive law for determining a party's liability to a government agency.

The Supreme Court in *Raleigh*, and just this year in *Travelers Casualty and Surety
Company of America v. Pacific Gas and Electric Company*, affirmed this principle, holding that
"[c]reditors entitlements in bankruptcy arise in the first instance from the underlying substantive
law creating the debtor's obligation . . .," and that "[t]he 'basic federal rule' in bankruptcy is that
state law governs the substance of claims . . .."[22]  In this context, the term state law "refer[s] to
all nonbankruptcy law that creates substantive claims" including "claims that have their sources
in substantive federal law, such as federal securities law or other federal antifraud laws."[23]

Here, ERISA and PBGC's legislative regulations make up the substantive law to be used
to calculate the amount of PBGC's claims.  Because calculation of the amount of PBGC's claims
is defined by federal law, a bankruptcy court may not use its equitable powers to alter or reduce
that amount.  Doing so would "supplant Congress' determination of the proper amount of [the
claim]."[24]  The three courts that have most recently addressed this issue have adhered to *Raleigh*
in calculating PBGC's claims according to ERISA and PBGC's regulations.[25]  As Judge Mitchell

---

[21]  *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

[22]  *Travelers Casualty & Surety Co. v. PB&E Co.*, 127 S. Ct. at 1204-05.

[23]  *Grogan v. Garner*, 498 U.S. 279, 283-84 & n.9 (1991); *see also Patterson v. Shumate*, 504
U.S. 753, 758-59 & n.2 (1992) (the term "applicable nonbankruptcy law" in section 541(c)
encompasses any relevant federal law, including ERISA, which "accords with prevailing
interpretation of that phrase as it appears elsewhere in the Code").

[24]  *United States v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513-14 (11th Cir. 1992).

[25]  *See, e.g., In re High Voltage Eng'g Corp.*, Case No. 05-10787 (Bankr. D. Mass. Jul. 26, 2006)
(bankruptcy court order ruling that, in consideration of *Raleigh*, *US Airways*, and *UAL Corp.*, the
Chapter 11 trustee's objections to PBGC's unfunded benefit liabilities claim was overruled)
(Exhibit 2); *In re UAL Corp.*, Case No. 02 B 48191 (Bankr. N.D. Ill. Dec. 30, 2005) (Transcript
of Hearing dated Dec. 16, 2005 at 32-33, in which court ruled as a matter of law that PBGC's
claim for unfunded benefit liabilities must be determined pursuant to nonbankruptcy law -

observed in *US Airways*, "Here, both the debtor's liability to the PBGC and the amount of that liability are not only creatures of statute, but of the same statute."[26]

The Liquidating Trust essentially asks the Court to ignore ERISA and PBGC's regulatory methodology for assessing the amounts of PBGC's claims.  This contention not only runs afoul of established administrative law, but also contradicts basic bankruptcy principles.  Under *Raleigh* and *Travelers*, there simply is no basis to distinguish between the validity and amount of a claim in applying relevant non-bankruptcy law.  Accordingly, this Court should hold that, as a matter of law, the amount of the PBGC claims must be calculated in accordance with ERISA and PBGC regulations.[27]

**B.      PBGC's Responses to Specific Objections of the Liquidating Trust.**

     **1.      PBGC's claim for unfunded benefits liabilities (Claim 794) must be calculated as provided for by ERISA and PBGC regulations.**

PBGC filed a claim for unfunded benefit liabilities (Claim 794) in the amount of $1,700,624.  The "amount of the unfunded benefit liabilities" of a plan is determined by subtracting the value of the plan's assets from the value of its benefit liabilities.  29 U.S.C. § 1301(a)(18).  The value of benefit liabilities under ERISA is to be determined "on the basis of assumptions prescribed by [PBGC]."  29 U.S.C. § 1301(a)(18)(A).[28]

---

ERISA and PBGC's regulations) (Exhibit 3); *In re US Airways Group, Inc.*, 303 B.R. 784 (Bankr. E.D. Va. 2003).

[26]  *US Airways Group, Inc.*, 303 B.R. at 793.

[27]  For example, the Liquidating Trust appears to object, without citing any support, that Claim 794 for unfunded benefit liabilities and Claim 793 for minimum funding contributions should be limited to the "minimum benefits guaranteed by the PBGC."  Objection, ¶¶ 25, 29.  To the contrary, the liability of a contributing sponsor like USACM "shall be the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan . . ." 29 U.S.C. § 1362(b)(1).  Similarly, USACM's liability for minimum funding contributions is defined under 29 U.S.C. § 1362(c) as, *inter alia*, the "outstanding balances of the accumulated funding deficiencies . . . of the plan."  PBGC's claims are not limited by the amount of its guaranty.

[28]  Section 1301(a)(18) reads:

7

From the inception of ERISA, PBGC adopted a valuation method using interdependent mortality, expected retirement age, and interest assumptions that in combination replicate the market value of annuity contracts:

> The initial interest rates used are derived from annuity price data obtained by the PBGC from the private insurance industry. The PBGC's interest assumptions have been designed so that, when coupled with the mortality assumptions found in the regulation, the benefit values obtained for immediate and deferred annuities are in line with industry annuity prices.[29]

The interest factor is periodically adjusted to reflect changes in insurance industry prices.[30]

It is well-settled that administrative regulations adopted pursuant to an express

---

"amount of unfunded benefit liabilities" means, as of any date, the excess (if any) of—
(A)    the value of the benefit liabilities under the plan (determined as of such date on the basis of assumptions prescribed by the corporation for purposes of section 1344 of this title), over
(B)    the current value (as of such date) of the assets of the plan.

[29]  *See* Interim Regulation on Valuation of Plan Benefits, 41 Fed. Reg. 48,484, 48,485 (1976). In 1975 PBGC proposed a regulation that prescribed actuarial assumptions for valuing a plan's benefit liabilities for the purposes of 29 U.S.C. § 1344. This valuation regulation was adopted on an interim basis in 1976 and finalized in 1981. The regulation was issued in full compliance with the Administrative Procedure Act, ("APA"), 5 U.S.C. § 553. When Congress amended ERISA in 1987 to add, *inter alia*, the provisions in 29 U.S.C. 1301(a)(18), it further validated this regulatory approach. PBGC amended the regulation in 1993, again in compliance with the APA, to modernize and clarify certain of the assumptions without any change in the overall approach. *See* Valuation of Plan Benefits, 40 Fed. Reg. 57,982 (1975) (proposed rule); 41 Fed. Reg. 48,484 (1976) (interim rule); 46 Fed. Reg. 9492(1981) (final rule); 58 Fed. Reg 5128 (1993) (proposed rule); 58 Fed. Reg. 50,812 (1993) (final rule); 29 C.F.R. § 4044.41-75 (2007) (current codification).

[30]  58 Fed. Reg. 50,812 (1993). *See* Valuation of Plan Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal, 58 Fed. Reg. 5128 (1993) ("[a]s explained in the [] Interim Regulation on Valuation of Plan Benefits . . . the PBGC has set its interest rates for valuation purposes by examining a survey of private sector annuity prices, using those prices as a starting point, and selecting a valuation interest rate (or rates) which when combined with the PBGC mortality table would accurately replicate the price structure reflected in single-premium, nonparticipating group annuity contract prices from the survey.")

8

delegation give rise to legislative rules that have the "force and effect of law."[31]  "In a situation

of this kind, Congress entrusts to the [agency], rather than to the courts, the primary

responsibility for interpreting the statutory term."[32]  As the Supreme Court confirmed, such a

delegation "helps guarantee that the rules will be written by 'masters of the subject' . . . who will

be responsible for putting the rules into effect."[33]

Moreover, Congress has ratified the PBGC regulation.  Section 4044 was in the

original Title IV provisions enacted as part of ERISA in 1974.  As discussed above, PBGC's

regulation prescribing assumptions for valuing plan benefits under Section 4044 was first

proposed  1975, adopted on an interim basis in 1976, and finalized in 1981, in a notice-and-

comment rulemaking under the APA.  When Congress amended ERISA in 1987 to add the

provisions in 29 U.S.C. § 1301(a)(18) explicitly referring to "assumptions prescribed by

[PBGC]" for valuing benefit liabilities, Congress endorsed the applicability of a specific,

---

[31]  *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979); *Batterton v. Francis*, 432 U.S. 416, 425
& n.9 (1977).

[32]  *Batterton*, 432 U.S. at 425.

[33]  *United States v. Cleveland Indians Baseball Co.*, 121 S. Ct. 1433, 1444 (2001) (citation
omitted; ellipsis in original).

preexisting regulation.[34]  Congress thus ratified PBGC's regulatory methodology of valuing unfunded benefit liabilities.[35]

Courts cannot second guess an agency's policy choices, particularly when such choices are embodied in a rule of general applicability adopted pursuant to an express delegation.[36] Neither should an agency be forced to  "continually to relitigate issues that may be established fairly and efficiently in a single rulemaking proceeding."[37]  By publishing governing principles through rulemaking, an agency promotes uniformity.[38]  The PBGC's regulation for measuring termination liability promotes uniformity by replicating the price that an employer would have to pay to close out a pension plan in a standard termination through the purchase of annuities in the marketplace.  This assures that termination liability will be measured in a fair, objective, and consistent manner.

---

[34]  Pension Protection Act of 1987, Subtitle D of Title IX of the Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, §§ 9312(b)(2)(A), 9313(a)(2)(F), 1987 U.S.C.C.A.N. (101. Stat.) 1330-333, 1330-361, 1330-365.  Congress similarly endorsed the PBGC's regulatory methodology a year earlier.  In the 1986 Single-Employer Pension Plan Amendments Act (SEPPAA), Congress created a "termination trust" in 29 U.S.C. § 1349, which referred to the "outstanding amount of benefit commitments."  The latter term, then defined in 29 U.S.C. § 1301(a)(19), also explicitly incorporated the "assumptions prescribed by [PBGC]."  The termination trust provision was repealed in the Pension Protection Act of 1987 and replaced with the provision regarding additional payments to participants and beneficiaries in 29 U.S.C. § 1322(c).

[35]  *In re US Airways Group, Inc.,* 303 B.R. 784, 796 (Bankr. E.D. Va. 2003) ("That regulation was already in effect when the statute [29 U.S.C. § 1301(a)(18)] was amended to its present form, and the court must presume that Congress knew and approved of the PBGC's general methodology."); *see Cottage Sav. Ass'n v. C.I.R.*, 499 U.S. 554, 561 (1991); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 381-82 (1969) ("Here, the Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation.")

[36]  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842-45 (1984).

[37]  *Heckler v. Campbell*, 461 U.S. 458, 467 (1983).  *See also S.E.C. v. Chenery Corp*., 332 U.S. 194, 203 (1947) ("the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency").

[38]  *See Heckler*, 461 U.S. at 468.

The Liquidating Trust does not deny that the Pension Plan was underfunded when it terminated or that USACM is liable for the Plan's unfunded benefit liabilities. The Liquidating Trust contends that PBGC's claim for unfunded benefit liabilities is overstated because it does not value the claim for unfunded benefit liabilities using a "prudent investor rate."[39] But, as explained, PBGC claims are required, by statute and regulation, to be valued in accordance with actuarial assumptions that replicate the market price of annuities.[40] Although courts have in the past erroneously valued PBGC's unfunded benefit liabilities claim using a so-called "prudent investor rate," the trend in recent decisions is to follow the Supreme Court's lead in *Raleigh* and apply the relevant non-bankruptcy law — ERISA and PBGC regulations — in valuing this claim.[41] The Court's recent decision in *Travelers* supports this trend.

### 2. PBGC's claims for unfunded benefit liabilities, minimum funding contributions, and premiums are taxes under section 503(b)(1)(B) and portions of the claims are entitled to administrative priority.

Administrative expenses under section 503(b)(1)(B) of the Bankruptcy Code include any "tax" incurred by the estate. Although the Bankruptcy Code does not define the term tax for purposes of section 503(b)(1)(B), the federal courts have developed a functional approach to determine whether an exaction constitutes a tax within the meaning of the Code. In *United*

---

[39] Objection, ¶ 28.

[40] The Liquidating Trust asserts that PBGC's claim for unfunded benefit liabilities should be reduced on a dollar-for-dollar basis for any recovery obtained for its claim for minimum funding contributions. Objection, ¶ 29. To the contrary, PBGC's claim for unfunded benefit liabilities (794) is independent from it claim for minimum funding contributions (793). *See* 29 U.S.C. § 1362(b) and (c). PBGC asserts claim 794 in its capacity as the guarantor of benefits under Title IV; PBGC asserts claim 793 as statutory trustee of pension plan. Although a recovery under either claim affects the *recovery* under the other, it does not affect the claim itself.

[41] *Compare In re CSC Indus. Inc.*, 232 F.3d 505 (6th Cir. 2000), *In re CF&I Fabricators of Utah, Inc.*, 150 F.3d 1293 (10th Cir. 1998), *with In re High Voltage Eng'g Corp.*, Case No. 05-10787 (Bankr. D. Mass. Jul. 26, 2006), attached as Exhibit 2, *In re UAL Corp.*, Case No. 02 B 48191 (Bankr. N.D. Ill. Dec. 30, 2005), attached as Exhibit 3, and *In re US Airways Group, Inc.*, 303 B.R. 784 (Bankr. E.D. Va. 2003).

*States v. Reorganized CF&I Fabricators of Utah, Inc.*,[42] the Supreme Court concluded that in determining whether an exaction is a tax within the meaning of the Bankruptcy Code, a court must look behind the label given by the legislature and examine the actual effects of the provision in question.[43]

Under *City of New York v. Feiring*, and reaffirmed in *Reorganized CF&I*, taxes are "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it."[44] Before and after the Supreme Court's decision in *Reorganized CF&I*, courts have interpreted these elements as requiring:

(1)    An involuntary pecuniary burden regardless of name, laid upon individuals or property;

(2)    Imposed by, or under the authority of, the legislature;

(3)    For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(4)    Under the police or taxing power of the state.[45]

The Ninth Circuit has added an additional "hypothetical creditor" consideration through *In re George*, holding that a government claim was not a tax "if a creditor similarly situated to the government can be hypothesized under the relevant statute."[46]

---

[42]  518 U.S. 213 (1996).

[43]  *See* 518 U.S. at 219.

[44]  *City of New York v. Feiring*, 313 U.S. 283, 285 (1941); *Reorganized CF&I*, 518 U.S. at 224.

[45]  *E.g., In re Lorber Indus. of California, Inc.*, 675 F.2d 1062, 1066 (9th Cir. 1982); *Adventure Resources v. Holland*, 137 F.3d 786, 794 n.9 (4th Cir. 1998), *cert. denied,* 119 S. Ct. 404 (1998); *Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight, Inc. I)*, 998 F.2d 338, 340 (6th Cir. 1993) (citing *In re Lorber*).

[46]  *In re George,* 361 F.3d 1157, 1162 (9th Cir. 2004).

### a.    Unfunded benefit liabilities are taxes under section 503(b)(1)(B) and are entitled to administrative priority.

If any person liable to PBGC under 29 U.S.C. § 1362 fails to pay the liability after demand, a lien arises in favor of PBGC as of the termination date of the plan.[47]  For purposes of the Bankruptcy Code, the lien is "treated in the same manner as a tax due and owing to the United States."[48]  This claim is entitled to administrative priority as a tax incurred by the estate, in an amount up to 30% of the controlled group's collective net worth.[49]

PBGC's claim for unfunded benefit liabilities under 29 U.S.C. § 1362 is clearly a tax under the *Feiring* criteria.[50]  Employers who choose to maintain PBGC-insured defined benefit pension plans have no choice but to participate in ERISA's plan termination insurance program through the payment of statutory insurance premiums under 29 U.S.C. §§ 1307, 1321, and to satisfy the minimum funding standards under 29 U.S.C. § 302 and 26 U.S.C. § 412.  If their underfunded pension plans terminate, employers are liable to the extent of the plan's unfunded benefit liabilities.[51]  Under ERISA, Congress imposed these exactions – these involuntary pecuniary burdens – on all sponsors of defined benefit plans.

---

[47]  29 U.S.C. § 1368(a).

[48]  29 U.S.C. § 1368(c)(2).

[49]  11 U.S.C. §§ 503(b)(1)(B), 507(a)(2); 29 U.S.C. §§ 1368(a), (c)(2).  Alternatively, as provided in the Statement in Support, this claim is entitled to tax priority under 11 U.S.C. § 507(a)(8).  The Liquidating Trust has not objected to this basis for tax priority.

[50]  *Cf. In Re Bayly Corp.,* 163 F.3d 1205, 1208, footnote 4 (10th Cir. 1998) (Tenth Circuit assumed without deciding that PBGC's claim for unfunded benefit liabilities was properly characterized as a tax).  PBGC notes that the Statements in Support filed with the proofs of claim for unfunded benefit liabilities provided any requisite demand pursuant to 29 U.S.C. § 1368(a).  Statement in Support attached to Claim 794-3 at ¶ 15; Statement in Support attached to Claim 794-2 at ¶ 14; Statement in Support attached to Claim 794-1 at ¶ 13.

[51]  29 U.S.C. §§ 1362(a), (b).

Congress created the financial obligations under ERISA to protect the retirement income of employees under defined benefit plans:

> One of Congress' central purposes in enacting this complex legislation [ERISA] was to prevent the "great personal tragedy" suffered by employees whose vested benefits are not paid when pension plans are terminated. . . .  Congress wanted to correct this condition by making sure that if a worker has been promised a defined pension benefit upon retirement -- if he has fulfilled whatever conditions are required to obtain a vested benefit -- he actually will receive it.  The termination insurance program is a major part of Congress' response to the problem.[52]

In protecting the retirement income of employees in retirement, Congress's purpose was clearly a public one under its taxing authority.

Because PBGC's claim is a tax for bankruptcy priority purposes, the only remaining question is whether it was "incurred by the estate."[53]  In other words, the inquiry becomes whether the liability arose post-petition or pre-petition.  This is not a question of bankruptcy law.  Rather, courts have held that the time a tax is "incurred" for purposes of 11 U.S.C. § 503(b)(1)(B)(i) is governed by nonbankruptcy law.[54]

ERISA provides that "any person who is, *on the termination date*, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group *shall incur* liability" to

---

[52]  *Nachman Corp. v. PBGC*, 446 U.S. 359, 374-75 (1980) (footnotes omitted).

[53]  11 U.S.C. § 503(b)(1)(B)(i).

[54]  *See, e.g., West Virginia State Dep't of Tax & Revenue v. IRS (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982 (3d Cir. 1994), *cert. denied*, 131 L. Ed. 2d 721 (1995); *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp. (Matter of Midland Indus. Serv. Corp.)*, 35 F.3d 164 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1359 (1995); *Burns v. City of Winston-Salem (In re Members Warehouse, Inc.)*, 991 F.2d 116 (4th Cir. 1993).  *But see In Re Bayly Corp.* 163 F.3d at 1211 (PBGC's claim for unfunded benefit liabilities not "incurred by the estate" because bankruptcy law governs when liability for claim attached.); *In re Sunarhauserman, Inc.*, 126 F.3d 811, 818-819 (6th Cir. 1997)(same).  As discussed above, the 6th and 10th Circuit cases are inconsistent with the U.S. Supreme Court's more recent decisions in *Raleigh* and *Travelers.*

PBGC.[55]  This liability is defined as "the total amount of the unfunded benefit liabilities (*as of the termination date*)."[56]  Thus, "[t]he liability of the employer under 29 U.S.C. § 1362 springs from rather than ceases upon plan termination."[57]

In this case, the Pension Plan terminated on January 15, 2007.  Thus, USACM "incurred" its liability to PBGC under 29 U.S.C. § 1362 post-petition.  USACM's obligations also meet the additional *George* prong.  By federal statute, only PBGC may terminate a pension plan and force payments under the statutory scheme for obligations it assumes on behalf of pension plan participants.

PBGC's claims here are strikingly similar to those recently held to be taxes by the Bankruptcy Appellate Panel of the Ninth Circuit.  In *In re Lorber Indus. of California*, the Court held that the state's claim for reimbursement of an employer's workers' compensation obligations met all four elements of the *Feiring* test and the additional *George* prong. It was thus entitled to priority as a tax.[58]  Here, PBGC's unfunded benefit liabilities claim similarly springs from PBGC's assumption of USACM's pension obligations.

Therefore, PBGC's claims for unfunded benefit liabilities are properly taxes "incurred by the estate," under 11 U.S.C. § 503(b)(1)(B)(i), and a portion of the claim is entitled to administrative priority under 11 U.S.C. § 507(a)(1).

---

[55]  29 U.S.C. § 1362(a) (emphasis added).

[56]  29 U.S.C. § 1362(b)(1)(A) (emphasis added).

[57]  *PBGC v. AlloyTek, Inc.*, 924 F.2d 620, 626 (6th Cir. 1991); *see also Shugrue v. PBGC (In re Ionosphere Clubs, Inc.)*, 142 B.R. 645, 648 (S.D.N.Y. 1992) (discussing this principle in context of bankruptcy).

[58]  373 B.R. 663, 669 (BAP 2007).

### b. Minimum funding contributions are taxes under section 503(b)(1)(B) and are entitled to administrative priority.

As stated in PBGC's proof of claim, USACM's liability for minimum funding contributions as of the Pension Plan's termination date was approximately $1.2 million. If an employer fails to make minimum funding contributions to a pension plan such that the aggregate unpaid balance due exceeds $1 million, a statutory lien in favor of the plan – and enforceable by PBGC – arises on all of the employer's property.[59] Whether or not this statutory lien arises or is perfected, Congress directed that "*[a]ny amount* with respect to which a lien is imposed under paragraph (1) shall be *treated* as taxes due and owing the United States."[60] Thus, IRC § 412(n) specifically distinguishes between "a lien" and "the amount with respect to which a lien is imposed."[61] Once the amount of missed contributions exceeds $1 million, the liability is treated as a tax.

IRC § 412(n) requires that rules "similar" to those found in 29 U.S.C. § 1368(c), (d), and (e) apply to the "amount" of unpaid contributions that exceed $1 million.[62] ERISA § 1368(c)(2), in turn, provides for treatment "as a tax due and owing to the United States for purposes of title 11" of the United States Code. Thus, under the plain language of IRC § 412(n), once the amount of unpaid minimum funding contributions exceeds $1 million, they are to be treated as taxes, and such tax treatment is directly linked to the Bankruptcy Code.[63]

---

[59] IRC § 412(n)(1).

[60] IRC § 412(n)(4)(C) (emphasis added).

[61] IRC § 412(n)(4)(C).

[62] *See* 26 U.S.C. 412(n)(4)(C).

[63] Despite this express reference to Title 11 of the U.S. Code, the Tenth Circuit concluded that "there is no expressed congressional intent that the 'tax treatment' described in § 412 was meant to apply in the bankruptcy context." *See In re CF&I Fabricators of Utah, Inc.*, 150 F.3d at 1297.

Moreover, the section 412(n) liability meets the additional criteria for tax status under the functional test of *Feiring*.[64]  For example, while an employer has a choice whether to establish a pension plan, once that choice is made, the employer must comply with the minimum funding standard set forth in IRC § 412.  Because IRC § 412(n) dictates that the amount of unpaid contributions in excess of $1 million is treated as a tax, the exaction under IRC § 412(n) is an involuntary pecuniary burden imposed by Congress under the taxing power.

Congress enacted IRC § 412(n) to serve the public purpose of protecting employees.  By singling out pension plans where unpaid minimum funding contributions exceed $1 million, Congress identified those plans where there is an increased likelihood of plan termination and, consequently, participants' benefits are most at risk.[65]  By providing for a lien that can be perfected if the employer is not in bankruptcy, and for tax treatment if the employer is in bankruptcy, section 412(n) is designed to assure that plans will be adequately funded.  As a result, the benefits promised to retirees will be more secure.  This is a public purpose of unquestionable importance.[66]

---

[64]  313 U.S. 283.

[65]  *See* 29 U.S.C. § 1342(a)(1).

[66]  The exaction also meets the other prongs of the Supreme Court's test.  A claim for unpaid contributions is an asset of the pension plan.  When PBGC takes over an underfunded pension plan, it pools the plan's assets (as authorized) with the assets of other terminated plans for purposes of administration, investment, payment of guaranteed benefits, "and such other purposes as it determines to be appropriate in the administration of [Title IV]."  29 U.S.C. § 1342(a).  Thus PBGC's recoveries on a claim for unpaid minimum funding contributions help defray the agency's expenses.  Nevertheless, the Tenth Circuit in *In re CF&I* concluded that minimum funding contributions were not for public purposes under the four-factor test, 150 F.3d at 1297-1298, while it assumed that unfunded benefit liabilities passed the test and were properly characterized as a tax in *In re Bayly Corp.*, 163 F.3d 1205, 1208, n.4 (10th Cir. 1998).

As stated above, a tax is incurred, within the meaning of 11 U.S.C. § 503(b)(1)(B), when "all the acts necessary to create the tax liability" have occurred.[67]  Stated another way, a "tax obligation accrues when the event that triggers liability has occurred."[68]

Here, the event that triggered Debtors' liability under IRC § 412(n) occurred approximately five months after USACM filed its Chapter 11 petition.  On September 15, 2006, USACM failed to make a required contribution to the Pension Plan of approximately $650,000 for the 2005 calendar plan year.  When USACM failed to make this payment, USACM had also failed to pay quarterly installments of the minimum funding requirements for the 2006 calendar plan year.  Thus, on September 15, 2006, the Debtors incurred, for the first time, liability under IRC § 412(n).  No tax claim existed until that time.  Subsequent failures to make contributions resulted in a total liability under IRC § 412(n) of approximately $1.21 million.  Because each missed installment contribution that gave rise to the Debtors' liability under section 412(n) occurred post-petition, this liability was "incurred by the estate."

### c.    Premiums are taxes under section 503(b)(1)(B) and are entitled to administrative priority.

ERISA requires a plan sponsor to pay statutory insurance premiums annually, which accrue until a plan's assets are distributed or until a trustee is appointed.[69]  For ongoing plans, the insurance premiums have a flat rate component (*i.e.*, a set dollar amount per participant), as well as a variable rate component that is based on the amount of the plan's unfunded vested benefits.[70]  In 2006, as part of the Deficit Reduction Act, Congress added a termination premium, which must be paid by companies that terminate underfunded pension plans, generally $1,250

---

[67]  *West Virginia State Dep't of Tax & Revenue v. IRS*, 37 F.3d at 985-986.

[68]  *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp.,* 35 F.3d at 167.

[69]  29 U.S.C. §§ 1307(a), (b); 29 C.F.R. § 4007.11(d).

[70]  29 U.S.C. § 1306(a)(3).

per participant per year for three years following plan termination.[71]  Congress also provided a special rule explicitly limited to reorganizing entities: For plans terminated during bankruptcy reorganization, the termination premium obligation "shall not apply to such plan until the date of the discharge" of the entity in bankruptcy.[72]  But if the pension plan terminates either in bankruptcy liquidation proceedings, or outside of bankruptcy, the special rule does not apply, and the termination premium immediately arises.[73]  The Liquidating Trustee contends that this special exception for reorganizing entities applies here, but it doesn't.  Congress limited the special rule to bankruptcy *reorganization*, where the entity could continue to maintain a financial obligation.[74]

The Liquidating Trust objects that the termination premium of $112,500 is not entitled to priority as a tax.[75]  However, the termination premium meets every element to qualify as a tax for the purposes of priority under section 503(b)(1)(B) of the Bankruptcy Code.  The termination premium was imposed by the U.S. Congress, under its police or taxing power, as an involuntary

---

[71]  29 U.S.C. § 1306(a)(7)(A).  The termination premiums are also referred to as DRA Premiums.

[72]  29 U.S.C. § 1306(a)(7)(B).  If the contributing sponsor is a member of a controlled group, each member of that group is jointly and severally liable for the termination premiums.

[73]  29 U.S.C. §§ 1306(a)(7)(A).  As such, the termination premium here not only became due, but arose, post-petition.

[74]  29 U.S.C. § 1306(a)(7)(B).  Pursuant to notice and comment rule-making procedures under the Administrative Procedure Act, PBGC has issued proposed regulations to implement the provisions governing the DRA Premium.  *See* 72 Fed. Reg. 7755 (Feb. 20, 2007).  The comment period closed on April 23, 2007, and PBGC expects to issue final regulations in the near future.  The foregoing analysis is consistent with PBGC's regulatory interpretation of the statute and, to the extent that the court finds that the statute is "silent or ambiguous," the court should defer to PBGC's "reasonable interpretation."  *See Chevron, U.S.A. v. National Resource Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *Beck v. Pace Int'l Union*, 127 S.Ct. 2310, 2317-2318 (2007) ("We have traditionally deferred to the PBGC when interpreting ERISA.") (adopting PBGC's permissible construction of statute).

[75]  Opposition at ¶¶ 40-42.  The Liquidating Trustee has not objected to the administrative priority for the $72 for flat-rate and variable-rate premiums arising after the petition date.

pecuniary obligation against the former sponsor of a pension plan, where the pension plan has

terminated under certain criteria for distress or involuntary termination.  Congress intended the

termination premium to help support PBGC's financial condition, thus defraying the expenses or

undertakings of PBGC.[76]  The termination premium also easily meets the *George* "hypothetical

creditor" prong, as only PBGC can impose a mandatory premium upon pension plan termination,

where the premium goes toward supporting PBGC's financial condition.[77]  Therefore, the

termination premium is entitled to administrative priority as a tax.

### 3.  PBGC's Claims for Minimum Funding Contributions (Claim 793) and Premiums (Claim 791) are Entitled to Administrative Priority under Section 503(b)(1)(A) of the Bankruptcy Code.

Administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code include "the

actual, necessary costs and expenses of preserving the estate, including wages, salaries, or

commissions for services rendered after the commencement of the case."  In *Reading Co. v.*

*Brown*, the Supreme Court held that costs ordinarily incident to a debtor's business in

bankruptcy are grounds for administrative priority.[78]  The Court granted under the Bankruptcy

Act administrative priority to a post-petition tort claim.  According to the Court, fairness

required the claimant, whose property was damaged by a fire through the negligence of the

---

[76]  *See, e.g*, 151 Cong. Rec. S12912 (Nov. 16, 2005) (remarks by Sen. Levin); H. Comm. on Educ. and the Workforce, "House Committee Backs Measure to Place PBGC on More Solid Financial Foundation, Help Protect Agency From Massive Taxpayer Bailout" (Oct. 26, 2005), *available at* http://republicans.edlabor.house.gov/archive/press/press109/first/10oct/pbgc102605.htm; 151 Cong. Rec. S672 (Jan. 31, 2005) (remarks by Sen. Grassley).  The termination premium is not a "penalty" for "an unlawful act," as the Trust contends, and cases cited by the Trust do not address the termination premium.  Objection, ¶ 40.  Termination of a pension plan is not against the law.  Nor is the amount of the termination premium tied to any illegal act – the premium is based solely on the number of plan participants immediately prior to termination.  29 U.S.C. § 1306(a)(7)(A).

[77]  *See In re George,* 361 F.3d at 1162.

[78]  391 U.S. 471, 483-485 (1968).

receiver, to recover ahead of general creditors.  "[T]he present petitioner did not merely suffer injury at the hands of an insolvent business:  it had an insolvent business thrust upon it by operation of law."[79]

In the three decades since *Reading*, the lower courts have applied this precedent in a variety of settings.  For example, in granting administrative priority to a fine for committing a public nuisance in violation of a zoning law, the First Circuit explained:

> [T]his case [is] an even stronger one for priority than was *Reading*.  The debtor in this case *deliberately* continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it.  If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, *a fortiori*, an intentional act which violates the law and damages others should be so treated.[80]

This growing line of cases has applied *Reading* to a variety of costs of complying with statutory or regulatory schemes, even in the absence of any tangible benefit to the estate.[81] And it is the statutory mandates for the funding obligation and the payment of premiums that make this case similar to those where courts have awarded administrative priority.  Because maintaining a pension plan during bankruptcy necessarily entails the legal duty to satisfy these obligations,

---

[79]  *Id.* at 477-78.

[80]  *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200, 203 (1st Cir. 1985).

[81]  *E.g., In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1072 (9th Cir. 1998) (statutory interest for failure to pay state taxes); *Cumberland Farms, Inc. v. Florida Dep't of Envtl. Prot.*, 116 F.3d 16, 20-21 (1st Cir. 1997) (fine for violation of state financial responsibility laws); *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)*, 963 F.2d 1449, 1453-58 (11th Cir. 1992) (civil penalties for violations of state surface mining act); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1009-10 (2d Cir. 1991) (environmental cleanup costs); *Lancaster v. Tennessee (In re Wall Tube & Metal Prods. Co.)*, 831 F.2d 118, 123-24 (6th Cir. 1987) (environmental cleanup costs); *Yorke v. NLRB,* 709 F.2d 1138, 1143 (7th Cir. 1983) (compliance with back pay order under National Labor Relations Act).

unpaid minimum funding contributions and premiums should be treated as costs ordinarily incident to the debtor's business.[82]

### a.    Minimum funding contributions are entitled to administrative priority under section 503(b)(1)(A).

ERISA and the IRC both require a pension plan to be funded until it is terminated.[83] During the pendency of the Chapter 11 proceedings, USACM made no minimum funding contributions to the Pension Plan or payments of statutory premiums to PBGC.  Under ERISA, PBGC may institute proceedings to terminate pension plans that have not met the minimum funding standard under section 412 of the Internal Revenue Code.[84]  Because an employee's pension benefit is a form of employee compensation, it can hardly be denied that the termination of a debtor's pension plan for failing to comply with IRC § 412 will adversely affect its employees' continuing service to a debtor's estate.  Moreover, even if the argument that debtors receive no benefit from paying these obligations were true, failure to meet the minimum funding standard and to pay premiums is a violation of law.  PBGC's claims for minimum funding contribution arose post-petition and are entitled to administrative priority.[85]

The Liquidating Trust concedes that the portion of missed contributions representing the cost of post-petition benefit accruals should be accorded administrative priority.[86]  But under ERISA, an employer has a *current* and recurring duty to eliminate, each plan year, any

---

[82]  *See e.g., Hughes Aircraft*, 525 U.S. at 442 (noting that "Hughes satisfied its continuing obligation under the provisions of the Plan *and ERISA* to assure that the Plan was adequately funded") (emphasis added).

[83]  29 U.S.C. § 1082; 26 U.S.C. § 412.

[84]  *See* 29 U.S.C. § 1342(a)(1).

[85]  *See Columbia Packing Co. v. PBGC*, 81 B.R. 205, 208-209 (D. Mass. 1988), *citing In Matter of Pacific Far East Line, Inc.,* 713 F.2d 476 (9th Cir.1983).

[86]  Objection, ¶¶ 21-23.

accumulated funding deficiency.[87]  The funding obligation arises from and is coterminous with the continuation of the plan, and may be ended only by plan termination.  "Although the Bankruptcy Code defines 'claim' broadly, the relevant non-bankruptcy law must be examined to see whether a right to payment, even a contingent right, exists."[88]  Here, this claim did not even *exist* prior to the petition date.[89]  Indeed, if Debtors had terminated their plan before bankruptcy, this claim would never have arisen at all.  Therefore, PBGC's minimum funding contribution claim is entitled to administrative priority.

> **b.    Premiums are entitled to administrative priority under section 503(b)(1)(A).**

As detailed in the Statement in Support attached to Claim 791-2, PBGC's amended claim includes both (1) priority claims for premiums arising after the petition date, for (a) flat-rate and variable-rate premiums of $72 and (b) termination premiums of $112,500, as well as (2) general unsecured claims for premiums arising before the petition date of $6,786 and penalties and interest thereon of $1,512.  PBGC's claims for premiums that became due post-petition are entitled to administrative priority, on the grounds discussed above concerning the administrative priority of Claim 793 for minimum funding contributions.

The Liquidating Trust does not deny that USACM failed to make statutorily required premium payments to the Pension Plan.  Nor does the Liquidating Trust deny that the premiums arising post-petition are entitled to priority status.  The Liquidating Trust objects, however, that it is not liable for the termination premium as an administrative expense.[90]  This objection is

---

[87]  29 U.S.C. § 1082(a)(1).

[88]  *CPT Holdings, Inc. v. Indus. & Allied Employees Union Pension Plan*, 162 F.3d 405, 409 (6th Cir. 1998).

[89]  *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995).

[90]  Objection, ¶¶ 33-36.

apparently based on timing, with the Trust objecting that this premium does not yet apply to it.[91]

However, as shown above, the general rule for termination premiums applies here, and the

premium is currently due.[92]

ERISA imposes a mandatory termination premium when an underfunded plan is

terminated in certain circumstances.  As noted above, an employee's pension benefit is a form of

employee compensation; therefore, termination of a debtor's pension plan will adversely affect

its employees' continuing service to a debtor's estate.  Moreover, even if the argument that

debtors receive no benefit from paying these obligations were true, failure to pay premiums is a

violation of law.  Under the plain language of the statute, the termination premium arose, and

became due, after the petition date.[93]  PBGC's claims for the termination premium thus arose

post-petition and are entitled to administrative priority.[94]

## C.    PBGC's Responses to General Objections of the Liquidating Trust

### 1.    PBGC has provided ample support for the validity and amount of its claims.

The Liquidating Trust asserts that PBGC's claims are not supported and fail to meet

PBGC's burden of proof.[95]  To the contrary, a proof of claim is *prima facie* evidence of both the

---

[91]  Objection, ¶ 36.

[92]  *See* 29 U.S.C. § 1306(a)(7).

[93]  *Id.  See also LTV Steel v. Shalala,* 53 F.3d at 497.

[94]  The Liquidating Trust cites *In re Abercrombie*, 139 F.3d 755 (9th Cir. 1998), *In re Palau Corp.*, 18 F.3d 746 (9th Cir. 1994), and *In re Bayly Corp.*, 163 F.3d 1205 (10th Cir. 1998). Objection, ¶ 38 n.3.  Those cases involve claims based on pre-petition contracts and are not comparable.  *See e.g., In re Megafoods Stores, Inc.*, 163 F.3d at 1072 (administrative priority for statutory interest).  The termination premium is a statutory obligation, imposed upon pension plan termination.  Plan termination occurred post-petition, therefore, the termination premium is a post-petition obligation.

[95]  Objection, ¶ 17.

validity and the amount of the claim.[96]  As explicitly set forth in the proofs of claim and the

statements in support thereof, PBGC's claims are calculated according to specific provisions of

ERISA and related PBGC regulations.  Far from being "unsupported," PBGC provided the

statutory basis for each of its claims, set forth the value of its claims, and itemized supporting

documentary evidence already in the possession and control of USACM.  PBGC is not required

to show in its proofs of claim each detailed actuarial calculation that led to the value of PBGC's

claims.  Pursuant to Local Rule 3007(b), "written documentation in support of the proof of claim

has already been provided to the objecting party and . . . the documentation will be provided at

any evidentiary hearing or trial on the matter."

"[A] claim or interest, proof of which is filed under section 501 of this title, is deemed

allowed, unless a party in interest . . . objects."[97]  As the Liquidating Trust admits, the objector

has the burden to come forward with evidence sufficient to rebut this *prima facie* case.[98]  The

Liquidating Trust provides no explanation or evidence in support of its Objection.[99]  The

Liquidating Trust thus fails to meet its burden in overcoming PBGC's *prima facie* case for the

validity and amount of its claims.

The Liquidating Trust does not set forth specific objections to the calculation of the

claims.  Instead it provides the wholly unsupported assertions that "From a preliminary review of

---

[96]  Fed. R. Bankr.P. 3001(f).  *See also In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *Brown v. IRS*, 82 F.3d 801, 805 (8th Cir. 1996).

[97]  11 U.S.C. § 502(a).

[98]  *In re Holm*, 931 F.2d at 623 (objection to claim denied because debtor did not provide enough information to meet its burden); *Brown v. IRS*, 82 F.3d at 805 (same).

[99]  The Trusteeship Agreement required that USACM "and any other person having possession or control of any records, assets or other property of the Plan shall convey and deliver to PBGC any such records, assets or property."  Trusteeship Agreement, ¶ 4.  On October 31, 2007, in response to PBGC's subpoenas, USACM and the Liquidating Trust provided PBGC with Pension Plan documents for the first time since the Trusteeship Agreement was signed in January 2007.

the relevant Pension Plan documents, it appears to the Liquidating Trust that the benefit accruals

with respect to the Insider Beneficiaries were consistently overstated" or that benefits may have

been "improperly accrued."[100]  This is even limited to unnamed Pension Plan documents, and the

amounts of the PBGC claims themselves are not questioned.  Such bald assertions are clearly

insufficient to overcome the *prima facie* case set forth by PBGC.[101]

> **2.      PBGC has provided sufficient indication of the value of its claims**.

The Liquidating Trust objects to the estimated nature of the PBGC's amended claims.[102]

PBGC's claims are estimated due to the lengthy process required for PBGC to receive and

process all necessary documents and to make detailed calculations for final benefit

determinations for each individual participant.  This process has been extended by the parties'

failure to provide PBGC with documents, as stated above.  While PBGC's claims are estimated,

PBGC's amended claims are liquidated and PBGC will accept distribution based on the amended

proofs of claim.  If necessary, PBGC will prove the amount of its claims at the hearing on the

claims objections.[103]

> **3.      PBGC may bring simultaneous claims where multiple parties share joint and several liability; USACM is liable for the full amount of PBGC claims.**

The Liquidating Trust objects "to the extent that the PBGC seeks a double recovery"

where USACM and other controlled group members share joint and several liability to the

---

[100]  Objection, ¶¶ 25, 30.

[101]  In the event that the Liquidating Trust provides any further explanation for this allegation, PBGC reserves the right to respond.

[102]  Objection, ¶ 18.

[103]  PBGC's amended claim for unfunded benefits liabilities continues to reflect an unliquidated administrative priority claim, as provided in the proof of claim, as up to 30% of the collective net worth of the entire controlled group.  PBGC does not currently have sufficient information to determine the collective net worth of all entities in USACM's controlled group, nor has the Liquidating Trust provided any estimate.

PBGC.[104]  Joint and several liability means each liable party is responsible for the full amount of a claim.  A creditor, at its option, may seek the total amount of its claim from one or any combination of such parties.[105]

The Liquidating Trust admits that USACM was the contributing sponsor of a defined benefit plan.  It admits that the pension plan was terminated pursuant to an agreement between PBGC and USACM.   It admits that liability for the Amended Claims is joint and several.[106]  However, the Liquidating Trust suggests that PBGC should recover from entities other than USACM, the very sponsor of the Pension Plan.  According to Ninth Circuit law, PBGC may recover the *full* amount of its claims from any *one* of the jointly and severally liable parties.[107]  PBGC cannot recover more than 100% of its claims, but it has the right to bring claims – simultaneously – against all liable parties.

### 4.    PBGC's recovery against the USACM Liquidating Trust will not be paid over to the Insider Beneficiaries.

The Liquidating Trust objects to PBGC's claims to the extent that any amounts payable to PBGC will be "paid over" to certain Pension Plan participants.[108]  As stated above,

---

[104]  Objection, ¶ 19.

[105]  *See S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 n.15 (9th Cir. 2006) (even nominal defendant can be held liable for full amount where liability is joint and several); *Board of Trustees v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987) (finding "Congress enacted Section 1301(b) in order to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities. . . . Joint liability for commonly controlled businesses is a rational means for preventing dispersion of assets used in a common enterprise."); *Pension Benefit Guaranty Corp. v. Ouimet Corp.*, 470 F.Supp. 945, 954 (D.Mass. 1979) ("PBGC may impose termination liability, jointly and severally, on each member of a controlled group, whether or not such member contributed to the terminated pension plan").

[106]  Objection, ¶ 19.

[107]  *See* supra, note 105.

[108]  Objection, ¶¶ 20, 26, 31, 43.

PBGC is an agency of the federal government, tasked with administering the pension plan termination insurance program pursuant to Title IV of ERISA. PBGC obtains its operating revenues from, *inter alia*, recoveries against employers like USACM whose underfunded plans have terminated.[109] Moreover, PBGC's claims against a liable plan sponsor of a terminated single-employer pension plan preempt any claims by participants against the plan sponsor with respect to benefits under the plan.[110] Under ERISA, PBGC guarantees pension benefits under pension plans covered by Title IV of ERISA up to a statutory maximum, regardless of whether it obtains a recovery against a plan sponsor whose plan is terminated. Thus, the Liquidating Trust's suggestion that denial of PBGC's claims is somehow justified under the facts and circumstances of the USACM bankruptcy is meritless and should be rejected.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the objections of the USACM Liquidating Trust to Claim Nos. 791, 793 and 794 Filed by the Pension Benefit Guaranty Corporation, and should allow PBGC's amended claims as submitted and calculated under ERISA and PBGC regulations.

Dated: October 31, 2007                    Respectfully Submitted,

                                            /s/ Erika E. Barnes
                                           Israel Goldowitz, Chief Counsel
                                           Karen Morris, Deputy Chief Counsel
                                           James Eggeman, Assistant Chief Counsel
                                           Frank A. Anderson, Attorney,
                                           D.C. Bar No. 478234
                                           Erika E. Barnes, Attorney,
                                           Cal. Bar No. 197309

---

[109]  *See* PBGC 2006 Annual Report, http://www.pbgc.gov/docs/2006_annual_report.pdf, at 1, 15.

[110]  *See United Steelworkers v. United Eng'g, Inc.*, 52 F.3d 1386, 1393 (6th Cir. 1995) ("Congress intended the PBGC to be the sole source of recovery of payments to employees.")

28

PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
Tel: (202) 326-4020, ext. 3460
Fax: (202) 326-4112

Local Counsel:
Steven W. Myhre,
Acting United States Attorney,
Nevada State Bar No. 9635
Carlos A. Gonzalez,
Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Tel:  (702) 388-6336
Fax:  (702) 388-6787