**LEWIS and ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile: (702) 949-8321
Telephone: (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429

Susan Freeman AZ State Bar No. 004199
E-mail: **sfreeman@lrlaw.com**
Rob Charles, NV State Bar No. 006593
E-mail: **rcharles@lrlaw.com**

**FOLEY & LARDNER LLP**
Attorneys at Law
321 North Clark Street
Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Edward J. Green III Bar No. 6225069 (Pro Hac Vice Pending)
Geoffrey S. Goodman III Bar No. 6272297 (Pro Hac Vice Pending)

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** | Jointly Administered |
| **USA Commercial Mortgage Company** **06-10725 – Lead Case** | Chapter 11 Cases |
| | Judge Linda B. Riegle Presiding |
| **USA Capital Realty Advisors, LLC** **06-10726** | **REPLY MEMORANDUM OF THE USACM LIQUIDATING TRUST IN SUPPORT OF OBJECTIONS TO PROOFS OF CLAIM FILED BY THE PENSION BENEFIT GUARANTY CORPORATION** |
| **USA Capital Diversified Trust Deed Fund, LLC** **06-10727** | |
| **USA Capital First Trust Deed Fund, LLC** **06-10728** | **Affecting:** □ All Cases **Or Only:** ☒ USA Commercial Mortgage Company □ USA Capital Realty Advisors, LLC □ USA Capital Diversified Trust Fund Deed, LLC □ USA Capital First Trust Fund Deed, LLC □ USA Securities, LLC |
| **USA Securities, LLC** **06-10729** | |
| **Debtors.** | |

The USACM Liquidating Trust (the "Liquidating Trust"), by and through its counsel and pursuant to § 502 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007 of the Local Rules of Bankruptcy Procedure, hereby submits its reply

memorandum in support of its objection (the "Objection") to the amended claims (the "Amended Claims") of the Pension Benefit Guaranty Corporation (the "PBGC") filed against USA Commercial Mortgage Company ("USACM").   In support thereof, the Liquidating Trust respectfully states as follows.

## INTRODUCTION

1.      In its response to the Objection (the "Response"), the PBGC submits that the "Liquidating Trust's Objection is without legal or factual bases . . . ." *See* Response at 5.  Ironically, it is the Response that (a) fails to distinguish or otherwise discuss well established authority in many areas of the law, and (b) fails to provide any factual bases in support of the Amended Claims.

2.      <u>First</u>, the PBGC's argument that the Amended Claims are entitled to administrative expense priority is baseless.  The Amended Claims are not "taxes" under the plain language of ERISA, the maxim *expressio unius est exclusio alterius* and applicable case law.  In addition, the Amended Claims are not entitled to administrative expense priority under either § 503(b)(1)(A) or (B) of the Bankruptcy Code because they arose pre-petition.

3.      <u>Second</u>, the Amended Claims are not entitled to treatment as priority tax claims under § 507(a)(8) of the Bankruptcy Code because (a) they are not "taxes," and (b) the liabilities to the PBGC are not included among the detailed list of taxes entitled to priority under § 507(a)(8).

4.      <u>Third</u>, the "prudent investor" rate, rather than an artificially low assumed rate of return from the PBGC's regulations, is the appropriate discount rate for determining the amount of the PBGC's claim for unfunded benefit liabilities.  Using the PBGC's rate of return would violate the Bankruptcy Code's edict to treat similarly situated creditors equally and could result in a windfall to the PBGC at the expense of USACM's unsecured creditors.

5.     <u>Finally</u>, the amount of Claim No. 794 is overstated to the extent it takes into account the accrued benefits of the Insider Beneficiaries.[1]   The PBGC has the right, as well as the obligation, to pursue claims against the Insider Beneficiaries for breaches of their fiduciary duties to the Pension Plan.   Section 206(d)(4) of ERISA expressly authorizes the PBGC to offset the accrued benefits of the Insider Beneficiaries under the Pension Plan by the amount of any civil judgment, consent order or decree entered by a court with respect to such fiduciary breaches.   Once the PBGC does so, Claim No. 794 will be eliminated or substantially reduced.

## **DISCUSSION**

## I.     **The Amended Claims Are Not Entitled To Administrative Expense Priority**

### A.     **The Amended Claims Are Not Entitled To Administrative Expense Priority As "Taxes" Incurred By The Estate**

6.     The PBGC first argues that the Amended Claims are entitled to administrative expense priority under § 503(b)(1)(A) of the Bankruptcy Code because they reflect "taxes" that were "incurred by the estate."  11 U.S.C. § 503(b)(1)(A).  This argument is baseless.  The Amended Claims do not reflect "taxes" and any debts from USACM to the PBGC were not incurred by USACM's estate.

### 1.     **The Amended Claims Are Not "Taxes"**

7.     It is well established that the PBGC's claims are not "taxes" entitled to administrative or any other priority under the Bankruptcy Code.  Tellingly, the PBGC fails to cite a single case holding that any of its claims are entitled to administrative or priority treatment as a "tax."

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

**a.    The Amended Claims Are Not Taxes Because No Lien Arose Under 29 U.S.C. § 1368**

8.    The Amended Claims are not taxes because no lien arose under 29 U.S.C. § 1368.  First, ERISA provides that the PBGC's claims can be treated as "taxes" only to the extent of a tax lien imposed under 29 U.S.C. § 1368.  Section 1368(a) provides, in relevant part, as follows:

> If any person liable to the corporation under section 1362, 1363, or 1364 of this title neglects or refuses to pay, after demand, the amount of such liability (including interest), there shall be a lien in favor of the corporation in the amount of such liability upon all property . . . .

29 U.S.C. § 1368(a).

9.    Section 1368(c)(2) further provides that "[i]n a case under Title 11 or in insolvency proceedings, the lien imposed under subsection (a) of this section shall be treated as a tax in the same manner as a tax due and owing to the United States for purposes of Title 11 or section 3713 of Title 31."  Id. § 1368(c)(2) (emphasis added).  Finally, § 412(n)(4)(C) of the Internal Revenue Code (the "IRC") provides, in relevant part, that "[a]ny amount with respect to which a lien is imposed under paragraph (1) shall be treated as taxes due and owing the United States."  26 U.S.C. § 412(n)(4)(C) (emphasis added).

10.    The statutes cited above unequivocally provide that the existence of a lien is required for the PBGC's claim to be treated as a tax.  In rejecting the PBGC's argument that its claim was a "tax" in the absence of a lien, the Court in In re Divco Philadelphia Sales Corp., 64 B.R. 232 (Bankr. E.D. Pa. 1986), stated as follows:

> While it is clear that an ERISA lien for employer liability is to be treated as a tax lien for purposes of priority, § 1368 does not state that the underlying ERISA liability is a tax liability.  Section 1368(c) merely provides that an ERISA claim and a tax claim share one feature in common – liens of both share on a par.  It is certainly a leap of faith then to say that because one shares a single trait in common with the other, the two are identical.  Applying this logic, one could say that a donkey is the same as an elephant

simply because they both have four legs.  We accordingly conclude that 29 U.S.C. § 1368 does not render an ERISA claim a tax claim within the meaning of Bankruptcy Rule 2002(j).

*Id.* at 235; *see also In re CSC Indus., Inc.*, 232 F.3d 505, 510 (6th Cir. 2000) (holding that "because a lien was never imposed on the missed funding contributions pursuant to 26 U.S.C. § 412(n)(4), the PBGC's claim cannot be treated as a tax"); *In re Chateaugay Corp.*, 115 B.R. 760, 779 (Bankr. S.D.N.Y. 1990), *aff'd*, 130 B.R. 690 (S.D.N.Y. 1991), *vacated by consent of the parties*, 17 Employee Benefits Cas. (BNA) 1102, 1993 WL 388809 (S.D.N.Y. 1993) (holding that the PBGC's claims were not "taxes" and stating that ERISA does not "purport to treat liens and claims interchangeably"); *In re Kent Plastics Corp.*, 183 B.R. 841, 846 (Bankr. S.D. Ind. 1995) (rejecting PBGC's argument that its claim under ERISA is synonymous with a tax claim under 29 U.S.C. § 1368).

11.     In addition, the canon of statutory construction *expressio unius est exclusio alterius* is also fatal to the PBGC's argument that its claims constitute "taxes."  The *expressio unius* canon "creates a presumption that when a statute designates certain . . . manners of operation, all omissions should be understood as exclusions."  *Boudette v. Barnette*, 923 F.3d 754, 756-57 (9th Cir. 1991).

12.     Here, ERISA specifies that the PBGC's <u>liens</u> and any amounts owing under such <u>liens</u> are entitled to treatment as a "tax" under the Bankruptcy Code.  Nowhere does the statute provide that the PBGC's <u>claims</u> qualify as a "tax" in the absence of a lien.  Had Congress wanted to provide that all of the PBGC's claims are entitled to treatment as a "tax" it could have provided as such.  It did not.  Accordingly, this Court should apply the *expressio unius* maxim and hold that the PBGC's claims are not "taxes" entitled to priority under the Bankruptcy Code.

13.     <u>Second</u>, it is indisputable that the PBGC did not attach a tax lien in this case.  Section 1368(a) provides that the PBGC must make a demand on the plan sponsor for a lien to attach.  *See* 29 U.S.C. § 1368(a).  No such pre-petition demand was made here.  In addition, § 412(n)(1) of the IRC provides that a lien is imposed only when the

pension plan's missed funding contributions exceed $1 million.   *See* 26 U.S.C. § 412(n)(1).  No such pre-petition contribution was missed here.

14.    Section 362(a)(4) of the Bankruptcy Code, however, stays any post-petition "act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4).  The automatic stay therefore precludes the post-petition attachment of the PBGC's tax lien.  *See, e.g.*, *CSC*, 232 F.3d at 510 (holding that the PBGC's claim was not a "tax" because the automatic stay prohibited the post-petition attachment of the PBGC's tax lien); *Kent Plastics*, 183 B.R. at 846 ("Insofar as no demand was made for payment prior to filing, the Court finds that the ERISA lien never came into existence.   The priority granted under § 1368, therefore, is inapplicable."); *Chateaugay*, 115 B.R. at 780 (holding that the automatic stay prevented the PBGC from making a post-petition demand under § 1368(a) "and it was therefore impossible for a lien to arise").

15.    Here, the PBGC admits that its alleged lien could not have come into existence until "approximately five months" *after* USACM filed its chapter 11 petition. *See* Response at 18.  The automatic stay therefore precluded the PBGC from attaching any alleged tax lien under § 1368(a).

### b.    The Amended Claims Are Not "Taxes" Under The Supreme Court's Functional Examination

16.    Even assuming the PBGC could get around the fact that no lien arose under 29 U.S.C. § 1368 (which it cannot), the Amended Claims still are not "taxes."  The Supreme Court has held that, absent an "explicit connector" between the IRC and the Bankruptcy Code, the Court must perform a "functional examination" to determine whether a particular burden is a "tax."   *See United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996).

17.    Here, there is no "explicit connector" between the IRC (or ERISA) and the Bankruptcy Code.  Indeed, as stated above, the language in IRC and ERISA provides that the PBGC's claims are <u>not</u> "taxes" absent the imposition of a lien.

18.    In addition, the Amended Claims fail the "functional examination" because ERISA contributions are not "imposed for public purposes, including the purposes of defraying the expenses of government or undertakings authorized by it."  *CF & I Fabricators*, 150 F.3d at 1298.  As the Court held in *CF & I Fabricators*,[2] ERISA contributions "are directed to and for the protection of individual benefit plans.  Thus, the object of the contributions is not to defray the expenses of the government or any governmental undertaking, but rather, to finance a private obligation."  *Id*.  Consequently, the Amended Claims also are not taxes under the "functional examination" test.

## 2.    The Amended Claims Were Not "Incurred By The Estate"

19.    The Amended Claims would not be entitled to administrative priority even if they were somehow deemed "taxes," because they were not "incurred by the estate." 11 U.S.C. § 503(b)(1)(B)(i).  "It is not sufficient that a tax merely becomes payable post-petition in order to qualify as an administrative expense under § 503(b)(1)(B)."  *In re Bayly Corp.*, 163 F.3d 1205, 1210 (10th Cir. 1998); *see also In re Northeastern Ohio Gen. Hosp. Ass'n*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991) ("For purposes of administrative expense allowance, a tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable."); *In re Anchor Glass Container Corp.*, 375 B.R. 683, 687 (Bankr. M.D. Fla. 2007) ("A tax obligation accrues when the event triggering liability occurs.").

20.    In *Bayly*, the Court held that, even if the PBGC's claims were "taxes," they were not entitled to administrative priority because they were not incurred by the debtor's estate.  *See Bayly*, 163 F.3d at 1210.  The Court reasoned that:

> [A]ll liabilities under the [Pension] Plan stem from non-forfeitable benefits accrued by employees as a result of pre-petition labor. . . . The consideration supporting the PBGC's claim is the same as that supporting the right to pension benefits itself, the past labor of Debtor's employees.

---

[2] The Tenth Circuit's opinion, different from the Supreme Court case cited above.

> Plan termination simply matured Debtor's pre-petition contingent liability to fund the Plan adequately. Thus, PBGC's claim is not entitled to administrative expense priority as a post-petition tax.

*Id.*

21.     Here, the PBGC has offered no evidence that any of the amounts included in the Amended Claims stem from the post-petition labor of USACM's employees. The PBGC therefore is not entitled to an administrative claim under § 503(b)(1)(B).

### 3.      The Amended Claims Are Not Entitled To Administrative Expense Priority Under Section 503(b)(1)(A) Of The Bankruptcy Code

22.     The PBGC next argues that the Amended Claims are entitled to priority under § 503(b)(1)(A) of the Bankruptcy Code as "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). This argument is meritless.

23.     As set forth in detail in the Objection, it is well-established that the PBGC's claims are treated as administrative claims only to the extent of the portion of missed contributions representing the cost of post-petition benefit accruals. *See, e.g.*, *In re Sunarhauserman*, 126 F.3d 811, 817 (6th Cir. 1997) (affirming disallowance of PBGC's administrative claim for all amounts except liabilities arising post-petition because "it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition"); *Kent Plastics*, 183 B.R. at 847 (denying PBGC's claim for administrative expense priority where the pension plan had been frozen for six years prior to bankruptcy filing); *Chateaugay*, 115 B.R. at 778 (finding after extensive discussion of purposes of administrative priority that "the post-petition termination of the pension plans did not give rise to post-petition claims. Nor are the PBGC claims, except for a small portion attributable to post-petition services of LTV Steel's employees, entitled to administrative priority pursuant to § 503(b)(1)(A).").

24.     In response to this authority, the PBGC did not cite a single case holding that its claims are entitled to administrative priority. Instead, the PBGC cites *Reading*

*Co. v. Brown*, 391 U.S. 471 (1968), a tort case.  The tort claim in *Reading*--which arose post-petition--is readily distinguishable from a pension plan liability that arose pre-petition.  Indeed, in denying the PBGC's administrative claim under § 503(b)(1)(A), the Court in *Sunarhauserman* distinguished *Reading* as follows:

> To be sure, the *Reading* rationale allows administrative expense priority in the absence of a post-petition benefit to the estate.  However, even in *Reading* and the cases following it, the debt at issue arose post-petition. Here, in contrast, much of Pension Benefit's claim—in particular, the non-normal cost component—relates to debts that arose pre petition.  As our opinion today makes clear, it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition.

*Sunarhauserman*, 126 F.3d at 817.

25.    Here, as set forth in the Objection, the PBGC has failed to offer any evidence that the Amended Claims reflect the cost of post-petition benefit accruals arising under the Pension Plan.  In the absence of such evidence, the Amended Claims should, at a minimum, be reclassified as general unsecured claims.

### 4.    Claim No. 791 For Termination Premiums Is Not Entitled To Administrative Expense Priority As A Tax

26.    The PBGC next argues that Claim No. 791 for $112,572 in termination premiums under 29 U.S.C. § 1306(a)(7) is entitled to administrative expense priority as a "tax."  This argument fails for three reasons.

27.    First, liability for termination premiums is in the nature of a "penalty," as opposed to a "tax."  A penalty is "an exaction imposed by statute as punishment for an unlawful act," while a tax is "an enforced contribution to provide for the support of government."  *Reorganized CF & I Fabricators*, 518 U.S. at 224 (citation omitted); *see also PBGC v. Skeen (In re Bayly Corp.)*, No. Civ. A. 95 N 901, 1997 WL 33484011, at **2-4 (D. Colo. Feb. 12, 1997) (citations omitted).

28.    As discussed in more detail in the Objection, in *Reorganized CF & I Fabricators*, the Court held that the requirement of a debtor paying the IRS 10% of an accumulated funding deficiency was a penalty, rather than a tax.  *Reorganized CF & I*

*Fabricators of Utah*, 518 U.S. at 224-25.   In doing so, the Court noted the obvious punitive nature of the statutory scheme and its deterrent purpose.  *See id.*  In *Bayly*, the Court held that the payment of the PBGC's unfunded benefit liabilities was not a tax. The liabilities were not intended to support and provide income for the government. *Bayly*, 1997 WL 33484011, at *4.  Rather, the unfunded benefit liability was a deterrent to failed pension plan sponsors by forcing them to reimburse the PBGC for money it expended on debtors' behalf.  *See id.*

29.    In the Response, the PBGC did not attempt to distinguish *Reorganized CF & I Fabricators* or *Bayly*, and those two cases are squarely on point here.   Section 1306(a)(7) does not tie the amount of termination premiums owed to the actual or projected losses suffered by the PBGC.   Rather, § 1306(a)(7) is an obvious punitive statute which acts to discourage debtors and other parties from terminating their pension plans.   The termination premiums in § 1306(a)(7) therefore are akin to a penalty, precluding the PBGC from alleging that Claim No. 791 is a tax entitled to administrative expense priority under § 503(b)(1)(B) of the Bankruptcy Code.

30.    Second, the PBGC is not entitled to an administrative claim for the termination premiums pursuant to the plain language of § 1306(a)(7).    Section 1306(a)(7)(B) provides that in a chapter 11 "bankruptcy reorganization," no termination premiums are due until a debtor is discharged or its case is dismissed.  As USACM did not receive a discharge and its case has not been dismissed, any liability for a termination premium has not been triggered.

31.    The PBGC argues that § 1306(a)(7)(B) only applies to "bankruptcy reorganization," which it submits means a traditional reorganization plan.  The PBGC fails to cite any authority for this position.  Moreover, the USACM Plan was deemed a "plan of reorganization," even though such reorganization included a liquidation of USACM's assets.    USACM thus was unambiguously a party to a "bankruptcy reorganization" approved by this Court.

32.     If the PBGC objected to the characterization of USACM's plan as a plan of reorganization—for § 1306(a)(7) purposes or otherwise—the time to do so was prior to confirmation.   It cannot do so now as part of a response to a claim objection. Accordingly, § 1306(a)(7)(B) governs in this case and precludes the PBGC from asserting an administrative claim for termination premiums.

33.     Third, the PBGC's claim for termination premiums is not entitled to administrative priority because to do so would contradict established precedent that the PBGC is only entitled to an administrative claim for benefit accruals that arise from post-petition labor and benefit the debtor's estate.   *See, e.g.*, *Sunarhauserman*, 126 F.3d at 817; *Bayly Corp.*, 163 F.3d at 1210-1211.

34.     In the Objection, the Liquidating Trust noted that because Congress does not write bankruptcy laws "on a clean slate," this Court must assume that Congress was aware of the well established law on the PBGC's (lack of) entitlement to an administrative claim when it enacted § 1306(a)(7).   *See Dewnsup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'").   However, despite the explicit reference to chapter 11 cases in § 1306(a)(7), Congress failed to provide in the statute that the PBGC was entitled to an administrative claim for any termination premiums.

35.     The PBGC failed to offer any response to this argument or otherwise explain why there is not an explicit reference to an administrative claim in § 1306(a)(7). This Court therefore should hold that Claim No. 791 is not entitled to administrative priority under § 503(b)(1)(B) of the Bankruptcy Code.

## II.     The Amended Claims Are Not Priority Tax Claims

36.     The PBGC also argues that the Amended Claims are priority tax claims under § 507(a)(8) of the Bankruptcy Code.   Because the Amended Claims are not "taxes" for the reasons stated above, they are also not entitled to priority under § 507(a)(8) of the

Bankruptcy Code.[3]  *See Kent Plastics*, 183 B.R. at 847; *Chateaugay*, 115 B.R. at 779-80; *CSC*, 232 F.3d at 510; *CF & I Fabricators*, 150 F.3d at 1297-98.

37.    In addition, the Amended Claims are not entitled to priority because USACM's alleged liabilities to the PBGC are not expressly enumerated as a priority tax in § 507(a)(8).  In *Chateaugay*, the Court held that Congress's failure to list the PBGC's claims among the "detailed list" of priority taxes under (former) § 507(a)(7) of the Bankruptcy Code was fatal to the PBGC.  *Chateaugay*, 115 B.R. at 779-80.  The Court stated that:

> [Section] 507(a)(7) of the Code carefully enumerates taxes that are entitled to seventh priority.  No ERISA claim is included on this detailed list, nor is reference made in the legislative history to any intent of Congress to include any PBGC lien.  Second, none of the language in § 507(a)(7) tracks the ERISA Section 4068(c), 29 U.S.C. § 1368(c), "tax due and owing" language.  Section 507 was enacted after ERISA.  While Congress could have expressly incorporated in § 507(a)(7) the "tax due and owing" language of ERISA Section 4068(c)(2), it did not.

*Id.*[4]; *see also Kent Plastics*, 183 B.R. at 847 (holding that the lack of a reference to PBGC or ERISA claims in (former) § 507(a)(7) precluded the PBGC from asserting a priority tax claim under the plain language of the statute).

38.    The Amended Claims therefore are not priority tax claims under § 507(a)(8) of the Bankruptcy Code.

---

[3] In the Response, the PBGC incorrectly suggests that the Liquidating Trust does not object to the priority tax status of Claim No. 794.  *See* Response at 13 n.49.  The Objection, however, alleges in several places, including the objection to Claim No. 794, that the Amended Claims do not constitute "taxes."

[4] The Court also noted by contrast that other sections of the Bankruptcy Code, such as the tax lien priorities in § 724(d), track language from ERISA.  *See id.*

**III. Using The PBGC's Interest Rates To Determine The Amount Of Amended Claim 794 Is Contrary To Applicable Precedent And Sections 502(b) And 1123(a)(4) Of The Bankruptcy Code**

39.     Claim No. 794 is premised on the alleged unfunded benefit liability under the Pension Plan.  The unfunded benefit liability at any point in time under the Pension Plan is the difference between (i) the amount that the Pension Plan is actuarially expected to pay out over time in the form of retirement benefits over (ii) the amount the Pension Plan is actuarially expected to have available to pay those benefits assuming that the then-current plan assets are invested so as to earn an assumed rate of return selected by the plan's actuary.  The rate of return on invested assets used to compute the unfunded benefit liability is important, as participant's benefits under the Pension Plan will not be paid now, but rather over many years in the future.  Thus, the available assets will increase over time by the gain realized from prudently investing the assets.

40.     As set forth in the Objection, the appropriate discount rate for the Amended Claims is the "prudent investor rate" adopted by the Tenth and Sixth Circuits.  *CF & I Fabricators*, 150 F.3d at 1301; *CSC*, 232 F.3d at 508-09.  The "prudent investor rate" is the rate "which a reasonably prudent investor would receive from investing the funds." *CF & I Fabricators*, 150 F.3d at 1301; *CSC*, 232 F.3d at 508-09.  The "prudent investor rate" is derived from the premise that the PBGC's claim should be equal to the amount that the PBGC would need to add to the current assets of the Pension Plan so that, assuming the current assets and new funds were invested prudently, would give the PBGC sufficient funds to pay future benefits in accordance with the terms of the Pension Plan.

41.     In the Response, the PBGC argues that this Court is compelled to reject the "prudent investor rate" and to adopt the (lower) assumed rates of return contained in the PBGC's regulations.   In support of this argument, the PBGC cites two Supreme Court

cases and *In re U.S. Airways Group*, 303 B.R. 784 (Bankr. E.D. Va. 1993).[5]  Neither of the Supreme Court decisions cited by the PBGC addresses in any way the issue of the proper assumed rate of return that should be used in computing the amount of the PBGC's claim.[6]  *U.S. Airways* does, but it is unpersuasive and contrary to the Circuit Court decisions cited above and the requirements of the Bankruptcy Code.

42.    Just as in this case, in *CF & I Fabricators*, the PBGC argued that ERISA represents an express delegation of rule-making power to the PBGC to determine the present value of its claims in bankruptcy with respect to a terminated pension plan.  After concluding that ERISA defines the amount of unfunded benefit liabilities only for the purposes of ERISA, the Court found that using the rates prescribed by the PBGC's regulation in a bankruptcy context would violate the requirement in § 1123(a)(4) of the Bankruptcy Code that similarly situated creditors be treated alike.  *See CF & I Fabricators*, 150 F.3d at 1301.  The Court held that:

> 29 U.S.C. § 1301(a)(18) conflicts with provisions of the Bankruptcy Code, and, as the district court held, this conflict must be controlled by the Bankruptcy Code.  Indeed, this very action in which the claim arises is, after all, bankruptcy.  Congress has provided very precise contours of how claims that are administered in Chapter 11 are to be decided, and has pronounced as a cardinal rule that all claims within the same

---

[5] The PBGC also attaches two unreported Bankruptcy Court "decisions," which are not opinions and offer scant analysis of the discount rate issue addressed herein.  As such, these "decisions" have little to no precedential value.

[6] In *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15 (2000), the Court held that the burden of proof on the validity of a claim was governed by non-bankruptcy law.  The Court, however, did not (and could not) purport to abrogate either (a) the statutory authority of the Bankruptcy Court to determine the allowability and amount of a claim or (b) the requirement in the Bankruptcy Code that similarly situated creditors be treated equally.

In *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electricity Co.*, 127 S. Ct. 1199 (2007), the Court held that a Ninth Circuit-created rule on the recovery of attorneys' fees in bankruptcy was unenforceable.  Again, the Court did not hold that bankruptcy courts do not have the authority to determine the amount of an allowed claim.  In addition, the Court specifically reserved the issue of whether § 506(b) of the Bankruptcy Code would preclude a creditor from relying on its state law contract right in order to recover attorneys' fees in bankruptcy.  *See id*. at 1207.

class must be treated alike. 11 U.S.C. §1123(a)(4). That principal would be violated here if PBGC's interpretation of § 1301(a)(18) were adopted because PBGC's discount rate would apply only to it and not any other general unsecured creditor. Congress has made clear when ERISA conflicts with any other provision of federal law, ERISA must be subordinated. 29 U.S.C. § 1144(d).

Nothing in the ERISA sections relied on by PBGC implies a carry-over into the realm of bankruptcy to allow PBGC to set its own valuation methodology. Even though that methodology was adopted in the exercise of PBGC's administrative authority, we have no doubt of its inapplicability in the world of bankruptcy. The district court did not err in requiring the bankruptcy court to employ the prudent-investor discount to reach the present value of PBGC's unfunded benefits liability claim.

*CF & I Fabricators*, 150 F.3d at 1301.

43. The Sixth Circuit reached the exact same conclusion in *CSC*, a decision issued after the Supreme Court's decision in *Raleigh*. In *CSC*, The Court held that § 502(b) of the Bankruptcy Code empowered bankruptcy courts to determine the discount rate on an allowed claim and § 1123(a)(4) mandated that similarly situated creditors be treated equally.[7]  *CSC*, 232 F.3d at 509. In addition, the Court noted that "the PBGC should be treated like any other unsecured creditor in the bankruptcy reorganization; therefore, the use of the 'prudent investor rate' to value the PBGC's claim was appropriate." *Id.*

44. This Court should not follow the *U.S. Airways* decision to the contrary. The Court in *U.S. Airways* failed to address the argument that adopting the PBGC's artificially low discount rate would prefer the PBGC's claims over those of similarly situated creditors in violation of § 1123(a)(4) of the Bankruptcy Code. *See U.S. Airways*,

---

[7] Indeed, creditors other than the PBGC routinely have their claims reduced to present value by the bankruptcy court under § 502(b) of the Bankruptcy Code without the benefit of artificially low floor suggested by the PBGC. *See, e.g., In re Chateau Corp.,* 126 B.R. 165 (Bankr. S.D. N.Y. 1991); *In re Caudill,* 82 B.R. 969 (Bankr. S.D. Ind. 1988); *In re Columbia Motor Express, Inc.,* 33 B.R. 389 (Bankr. M.D. Tenn. 1983).

303 B.R. 784.  In addition, following *U.S. Airways* would result in a potential windfall for the PBGC, paid for by the other creditors of USACM, as the PBGC would be able to prudently invest the assets of the Pension Plan so as to generate a surplus over the funds needed to pay the accrued benefits under the Pension Plan.[8]  A percentage point or two over many years can make a difference of millions of dollars.[9]

45.    This result is particularly important in a case such as the one before the Court, where creditors are reasonably expected to receive only pennies on the dollar for their claims and "overpaying" the PBGC would have a significant adverse impact on the recoveries of USACM's other creditors.[10]

## IV.    Amended Claim No. 794 Is Also Overstated To The Extent It Takes Into Consideration The Accrued Benefits Of The Insider Beneficiaries

46.    Even if the discount rate specified in the PBGC's regulations is the appropriate discount rate to be used to determine the amount of the unfunded benefit liabilities under the Pension Plan (which it is not), Claim No. 794 should not be allowed to the extent it takes into consideration the accrued benefits of the Insider Beneficiaries. As set forth below, these benefits need not, and should not, be satisfied.  As such, the

---

[8] While the excess assets would directly result from the fact that the USACM estate paid the PBGC too much, the PBGC would have no obligation to return this windfall.  Rather, it would be retained by the PBGC.

[9] *See, e.g., CF & I Fabricators,* 153 F.3d. at 1296 (PBGC unfunded liability claim was $222,866,000 under the PBGC's approach and $124,441,000 under the "prudent investor" approach); *CSC,* 232 F.3d at 507-08 (PBGC claim of $49,658,702.19 reduced to $1,822,075.19 using prudent investor approach).

[10] Based on its regulations, the PBGC has computed the amount of the unfunded benefit liability under the Pension Plan based on a discount rate of 4.88% for the first twenty years and 4.55% thereafter.  This discount rate is intended as a proxy for the rate of return that the PBGC would receive on its investment of the assets of the Pension Plan.  However, the PBGC has earned an annualized rate of return on its invested trust funds over the past twenty years of approximately 10%, or more than two times the rate used in computing the unfunded benefit liability.  If the under funding of the Pension Plan was computed using the rate of return actually achieved by the PBGC over the past twenty years, or even a point or two higher than has been assumed by the PBGC, there would be no unfunded benefit liability and no allowed PBGC claim against USACM's estate.

Court should ignore these benefits in calculating the allowed amount of Claim No. 794. A significant component of Claim No. 794 is the amount of the accrued benefits under the Pension Plan. Consistent with its authority under § 502(b) of the Bankruptcy Court, the court should ignore the accrued benefits of the Insider Beneficiaries in calculating the amount of such claim.

47. The Insider Beneficiaries controlled USACM.[11] Some of the Insider Beneficiaries were named fiduciaries of the Pension Plan for purposes of ERISA. Those who were not were fiduciaries with respect to the Pension Plan as a result of their control over the management of the Pension Plan and its assets.

48. Had USACM made the contributions that it was required to make under the terms of the Pension Plan and applicable law and had the assets of the Pension Plan been invested prudently, there would have been no unfunded benefit liability in the Pension Plan.[12] Rather, the Pension Plan would not only have been fully funded, but it would have a significant surplus which could have accrued to the benefit of USACM's creditors.

49. The fiduciary breaches of the Insider Beneficiaries, who controlled the investment of the assets of the Pension Plan, are self evident. ERISA places an affirmative fiduciary duty on investment fiduciaries to diversify investments so as to avoid large losses. *See* 29 U.S.C. § 1104(a)(1)(C). At June 30, 2001, all of the assets of the Pension Plan were invested in a single stock. In 2002, the Pension Plan lost $648,258 or 36% on that stock. In 2003, the investment losses were almost 10%. In 2004, the Insider Beneficiaries transferred substantially all of the assets to an new investment manager and authorized the manager to concentrate the assets in as few as four stocks. This non-diversified investment initially performed well, but ultimately declined and caused a loss of $1,242,574, or 39%, in 2005.

---

[11] In the event that this matter proceeds to an evidentiary hearing, the Liquidating Trust expects to present evidence on the matters contained in this subsection.

[12] USACM failed to contribute $648,000 it was required to contribute to the Pension Plan with respect to 2005 and incurred significant investment losses in 2002 and 2005.

50.    The Insider Beneficiaries chose to invest the assets of the Pension Plan almost entirely in equity securities with little or no diversification.  This kind of high risk/high reward investment selection was clearly not "prudent" under ERISA.  Pension plans involve long term liabilities and require long term, diversified investment approaches, not speculative investing.  The failure to diversify is a *per se* violation of ERISA.  *See* 29 U.S.C. § 1104(a)(1)(C).

51.    Because the Insider Beneficiaries' risky and imprudent investment strategy led to any underfunding of the Pension Plan, there is a direct relationship between the Claim No. 794 and the fiduciary breaches of the Insider Beneficiaries.  As Trustee of the Pension Plan, the PBGC has an obligation to pursue recovery against the fiduciaries of the Pension Plan for damages caused by their fiduciary breaches.  Section 206(d)(4) of ERISA expressly authorizes the PBGC to offset the accrued benefits of the Insider Beneficiaries under the Pension Plan by the amount of any civil judgment, consent order or decree entered by a court with respect to such fiduciary breaches.  *See* 29 U.S.C. § 1056(d)(4).  The PBGC believes it is entitled to receive $1,700,624, using its assumed investment return rate.  The accrued benefits of the Insider Beneficiaries are $1,464,535.  Thus, on a best case basis, even using the PBGC's interest rates, the allowed amount of Claim No. 794 should not exceed $236,089.

52.    To date, however, the PBGC has not acted to pursue any recoveries against the Insider Beneficiaries.  Rather than pursuing the limited assets of the Liquidating Trust and its unsecured creditor beneficiaries, the PBGC should be seeking authorization from an appropriate court to offset the accrued benefits of the Insider Beneficiaries by the damages caused by their fiduciary breaches pursuant to § 206(d)(4) of ERISA.  Eliminating such accrued benefits would not only substantially eliminate the PBGC's claim,[13] but would also eliminate the need for the Liquidating Trust to "fund" payments

---

[13] This roughly $200,000 difference over the period that the PBGC will be paying plan benefits to the participants in the Pension Plan would evaporate with a minor adjustment in the PBGC's assumptions and would likely result in a significant overfunding using a prudent investor interest rate.  Obviously, to the extent that such offset creates an over funding of the

to the Insider Beneficiaries at the same time as the Liquidating Trust is pursuing claims against the Insider Beneficiaries.[14]

## V.    The Amended Claims Are Not *Prima Facie* Valid

53.    In the Response, the PBGC suggests that it has adequately supported the Amended Claims and that such claims should be allowed because they are *prima facie* valid.  This argument is without merit.

54.    The Bankruptcy Appellate Panel of the Ninth Circuit has stressed that a creditor cannot file an unsupported claim and then allege that the claim is *prima facie* valid.  *See In re Campbell*, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).  In *Campbell*, the Court stated that:

> [A] creditor who files a proof of claim that lacks sufficient support under Rule 3001(c) and (f) does so at its own risk.  That proof of claim will lack prima facie validity, so any objection that raises a legal or factual ground to disallow the claim will likely prevail absent an adequate response by the creditor.

*Id.*

55.    Here, the Amended Claims are wholly unsupported.  The PBGC failed to attach any evidence, sworn or otherwise, in support of the calculations contained in the Amended Claims.  Indeed, the Amended Claims merely allege, in summary fashion, the PBGC's "estimates" of its claims against USACM's estate.[15]  Despite the substantial

---

Pension Plan, the PBGC should pay any excess funds to the Liquidating Trust for the benefit of the other creditors of USACM.  This would be the result, for example, if the amount of the PBGC's claim were computed using a prudent investor rate of return rather than the rates promulgated by the PBGC.

[14] It should also be noted that subsequent to the filing of the Response, the PBGC has filed claims against an additional party in the USA Investors VI, LLC case, Case No. 07-12377.  The sole member of USA Investors VI, LLC is USA Investment Partners, LLC.  Some or all of the Insider Beneficiaries are the principals of USA Investment Partners, LLC.  The PBGC is apparently pursuing any entity in which the Insider Beneficiaries, as fiduciaries of the Pension Plan, have an interest.  Rather than pursue assets of the Insider Beneficiaries, the PBGC should be challenging the accrued benefits of the Insider Beneficiaries.

[15] The fact that the claims are "estimates" is itself sufficient to show that the claims are not supported.  Clearly even the PBGC does not know the amount of its alleged claims against USACM's estate.

legal and factual arguments raised by the Liquidating Trust in the Objection, the PBGC did nothing in the Response to cure the unsupported nature of the Amended Claims. The Amended Claims thus fail to comply with Bankruptcy Rules 3001(c) and (f) and are not *prima facie* valid.

56.    Because the Amended Claims are not *prima facie* valid—and even if they were, the Liquidating Trust has negated the *prima facie* validity of the claims in the Objection—the "burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re Consolidated Pioneer Mortgage,* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd,* 91 F.3d 151 (9th Cir. 1996) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). The PBGC has not met that burden. The Amended Claims should be disallowed.

## CONCLUSION

For the reasons stated herein and in the Objection, the Liquidating Trust respectfully requests that this Court enter an order pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, (a) disallowing, reclassifying and/or reducing the Amended Claims, and (b) granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED November 21, 2007.


**LEWIS and ROCA LLP**

By: /s/ RC (#006593) _____
        Susan M. Freeman
        Rob Charles

And

Edward J. Green (No. 6225069)
Geoffrey S. Goodman (No. 6272539)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

1

2

PROOF OF SERVICE

3

Copy of the foregoing e-mailed or mailed first class postage prepaid U.S. Mail on
November 21, 2007 to the following parties in interest:

4

5

Frank A. Anderson
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW, Suit e340
Washington, DC 20005-4026
Anderson.frank@pbgc.gov
efile@pbgc.gov

6

7

8

9

Daniel G. Bogden
Steven W. Myhre, Acting U.S. Attorney
Carlos A. Gonzalez, Assistant U.S. Attorney
United States Attorney
333 Las Vegas Blvd South, Suite 5000
Las Vegas, NV 89101

10

11

12

13

14

15

  /s/ Christine E. Laurel

16

Christine E. Laurel
Lewis and Roca

17

18

19

20

21

22

23

24

25

26

27

28

CHIC_1666151.2

21