Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
Sheldon A. Herbert, Esq.
Nevada Bar No. 5988
Michael J. Newman
Nevada Bar No. 10697
**GERRARD, COX & LARSEN**
2450 St. Rose Parkway, Ste. 200
Henderson, NV 89074
(702) 796-4000
Attorneys for *SALVATORE J. REALE*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Bankruptcy Case No.<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC<br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | Date:  December 5, 2007<br>Time:  9:30 a.m. |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

### REALE'S RESPONSE TO DTDF'S OBJECTION TO PROOF OF CLAIM OF SALVATORE J. REALE

COMES NOW Salvatore J. Reale ("Reale"), by and through his attorneys of record, GERRARD COX & LARSEN, and hereby responds to the Objection to Proof of Claim of Salvatore J. Reale filed by USA Capital Diversified Trust Deed Fund, LLC ("DTDF") in this bankruptcy.

Reale's Response is made and based upon the following Memorandum of Points and Authorities, the attached Exhibits, any oral argument the Court may entertain at the time this matter is heard, and all pleadings and papers on file herein.

Dated this __27th__ day of November, 2007.

GERRARD COX & LARSEN

   /s/ Michael J. Newman
Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
Sheldon A. Herbert, Esq.
Nevada Bar No. 5988
Michael J. Newman
Nevada Bar No. 10697
2450 St. Rose Parkway, Ste. 200
Henderson, NV 89074
Attorneys for *SALVATORE J. REALE*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.    OVERVIEW.**

Based upon the fraudulent representations of DTDF's principals, Joseph Milanowski ("Milanowski") and Thomas Hantges ("Hantges"), Reale, on September 5, 2003, agreed to transfer a $2,050,000.00 note, together with its accrued interest, to DTDF in exchange for a payment of Two Million Fifty Thousand Dollars ($2,050,000.00). Reale, however, never received the payment. Although Reale ultimately received sale proceeds from the Royal Hotel, and a deed of trust and a UCC security interest against a hotel called the Hotel Zoso, as compensation for the principal balance and the accrued interest on the note, Reale later relinquished approximately $4.5million and his interests the Hotel Zozo, as part of a settlement with DTDF, which settlement gave rise to Reale's claims asserted in the disputed proof of claim.

///

///

///

2

Throughout their relationship with Reale, Milanowski, Hantges, DTDF, and related entities, USA Commercial Mortgage Company ("USACM") and USA Investment Partners, LLC ("USAIP"), have acted in bad faith, and at times fraudulently against Reale. Now, approximately two months after Reale filed his proof of claim against DTDF, DTDF seeks an order disallowing Reale's claim entirely, even though DTDF is a party to the settlement agreement, which gives rise to Reale's claim against DTDF.

**B.    THE SHADROC LOAN.**

In September, 1999, Reale, through his wholly owned entity, Shadroc, LLC, extended a Two Million Fifty Thousand Dollar ($2,050,000.00) loan (the "Shadroc Loan") to Shadowrock Development Corporation and Palm Springs Marquis, Inc. (collectively the "Borrower") which was secured by two trust deeds against the Marquis Hotel (later known as the Hotel Zoso). *See* Affidavit of Salvatore J. Reale, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference. The Shadroc Loan was being serviced by USACM, acting through its managers and officers, Milanowski and Hantges. *See* Exhibit "A," at ¶ 3. As Reale later learned, he was severely misled by Milanowski and Hantges as to the viability of the Shadroc Loan. *See id.*, at ¶ 7. In September of 2003, Milanowski and Hantges, on behalf of USACM, informed Reale that the Shadroc Loan was not performing, that the borrower had stopped making payments, and that the prospects for collecting on this loan did not look good. *See id.*, at ¶ 3. Milanowski further informed Reale that he would purchase Reale's Shadroc Loan, through one of his entities for the outstanding principal amount only. *See id.*, at ¶¶ 3-4.

Based upon the representations of Milanowski and Hantges regarding the uncollectibility of the Shadroc Loan, on September 5, 2003, Reale entered into a certain Agreement for Purchase of Loan (the "Transfer Agreement"), pursuant to which Shadroc, LLC, and Reale agreed to transfer the Shadroc Loan to DTDF in exchange for a payment of Two Million Fifty Thousand Dollars ($2,050,000.00), which was to be paid by USACM no

/ / /
/ / /

3

later than October 3, 2003 (the "Shadroc Transfer Obligation"). *See id.*, at ¶ 4. A true and correct copy of the Transfer Agreement is attached hereto as Exhibit "B," and is incorporated herein by this reference.

USACM, however, failed to pay the $2,050,000.00 by October 3, 2003, although Reale assigned his rights under this loan to DTDF, in accordance with the Transfer Agreement. *See* Exhibit "C." As a result, Reale requested that a previously existing loan payable to Reale, backed by a promissory note executed by Hantges and Milanowski personally (the "Reale Loan"), be increased by $2,050,000.00 to extend liability for the Shadroc Obligation to Milanowski and Hantges personally, until it was paid in full. *See* Exhibit "A," at ¶ 5. A true and correct copy of the Twenty-Seventh Amendment to Promissory Note, reflecting the $2,050,000.00 increase to the Reale Loan is attached hereto as Exhibit "D," and is incorporated herein by this reference.

DTDF has asserted that "[i]n connection with the [Transfer Agreement], [DTDF] and Reale also reached specific agreement" that the $2,050,000.00 in proceeds due to Reale would be distributed by DTDF as follows: "$2.05 million . . . to USA Investment Partners, LLC ("USAIP") and . . . the remaining $50,000 to USACM." Objection, at 4:16-23 (citing Ragni Decl., Exh. C, D, & E). However, the reality is that Reale signed numerous documents which Milanowski and Hantges represented as the loan transfer documents, among which was an instruction to have DTDF pay the $2,050,000.00 in purchase proceeds directly to USAIP instead of to Reale. In other words, DTDF, USACM, USAIP, Milanowski and Hantges were all part of a fraudulent scheme in which they induced Reale to give up a valuable loan for a fraction of its true value, and then kept the inadequate consideration they were to pay Reale. In relying upon these fraudulent representations, Reale simply executed the documents he was given and then waited for a payment he thought he was going to receive.

**C.    REALE LEARNED OF THE FRAUD.**

In the fall of 2006, Reale learned that he had been severely misled and defrauded by Milanowski, Hantges, DTDF, USACM, and USAIP, with respect to the Shadroc Loan. *See* Exhibit "A," at ¶¶ 7-9. In a chance meeting with Mark Bragg, the principal of the borrowing

4

entity on the Shadroc Loan, Reale learned that DTDF, by fraudulently exercising Reale's rights as "lender" under the Shadroc Loan, received payment on the Shadroc Loan in the amount of Three Million Seven Hundred Forty-Three Thousand Four Hundred Seventy-Nine and 77/100s Dollars ($3,743,479.77) nearly two years earlier. Mr. Bragg provided Reale with a closing statement from Ticor Title Insurance Company of Oregon indicating the repayment of the Shadroc Loan to DTDF on or about March 2, 2004, and signed a statement regarding this payment. True and correct copies of the signed statement of Mr. Bragg, and the Ticor Title Insurance Company closing statement are attached hereto as Exhibit "E," and incorporated herein by this reference.

When Reale learned, on or about September 25, 2006, that he had been severely misled and defrauded by Milanowski, Hantges, USACM, DTDF, and USAIP, the total accrued interest on the Shadroc Loan would have been approximately $2,146,180.20, if it had not been previously repaid.

### D. REALE WAS INITIALLY COMPENSATED FOR BOTH THE PRINCIPAL AND INTEREST PORTIONS OF THE SHADROC LOAN, IN THE FORM OF SECURITY INTERESTS IN TWO HOTELS

Upon learning this information, Reale immediately confronted Milanowski and Hantges, who conceded that they had taken advantage of him. *See* Exhibit "A," at ¶¶ 8-9. Reale was upset both because (1) neither USACM, DTDF, Milanowski, nor Hantges, had ever made payment to Reale pursuant to the Transfer Agreement, and (2) Reale had been misled by Milanowski and Hantges with respect to the viability of the Shadroc Loan. *See* Exhibit "A," at ¶ 8. Based upon the information provided by the Borrower (Mark Bragg), at the time Reale transferred the Shadroc Loan to DTDF, Milanowski, Hantges, USACM and DTDF were all aware that there was a buyer who was willing to purchase the property securing the Shadroc Loan, for an amount sufficient to repay all accrued interest and late charges. Milanowski, Hantges, USACM (the loan servicer), and DTDF (the transferee of the Shadroc Loan) concealed this information from Reale so that they could profit at his expense.

Milanowski informed Reale that he would satisfy the original $2,050,000.00 Shadroc Obligation, plus accrued interest, from the sale of the Royal Hotel, under a deed of trust

5

granted to Reale on or about May 5, 2006. *See* Exhibit "A," at ¶ 10. However, in September of 2006, after learning about the fraud that had been perpetrated against him, Reale approached Milanowski and Hantges to resolve the matter, and an agreement was reached whereby Reale was to receive all of the accrued interest and late fees he should have received. In September, 2006, as repayment to Reale for the total accrued interest on the Shadroc Loan of approximately $2,146,180.20 as of September 25, 2006, Milanowski granted to Reale a deed of trust against the Hotel Zoso, as well as a UCC security interest in the personal property of the Hotel Zoso, in the amount of $2,146,180.20. *See* Exhibit "F".

### E.    REALE'S JUNE 29, 2007 SETTLEMENT AGREEMENT WITH DTDF.

On or about June 29, 2007, an order was entered by this Court approving a settlement between Reale and DTDF, wherein Reale agreed to release approximately $4.5 million of the money he had been paid to satisfy his deed of trust against the Royal Hotel, and to release entirely his deed of trust and his UCC security interest in the Hotel Zoso (the "Settlement").

Prior to the Settlement, Reale had considered the principal and interest portions of the Shadroc Loan to be fully re-paid, as explained above. Reale's claims against DTDF, however, arose upon this Court's approval of the Settlement between Reale and DTDF on or about June 29, 2007, because Reale not only lost approximately $4.5 million by relinquishing money he had received from the sale of the Royal Hotel, but he also lost his deed of trust and UCC security interest in the Hotel Zoso. Soon thereafter, Reale filed his proof of claim on or about September 17, 2007.

///

///

///

6

## II.

## **STATEMENT OF AUTHORITIES**

**A.    LEGAL STANDARD.**

Bankruptcy Rule 3003 provides that:

> The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

Fed. R. Bankr. P. 3003(c)(3).

Here, as DTDF notes in its Objection to Proof of Claim of Salvatore J. Reale, this Court entered its Order Setting Deadline to File Proofs of Claim and Proofs of Interest, establishing the deadline for filing proofs of claim in DTDF's chapter 11 case as November 13, 2006.

Under the Bankruptcy Rules, however, as DTDF notes, there are instances where this Court may enlarge creditors' time to file proofs of claim, despite such Order. Bankruptcy Rule 9006(b) provides, in relevant part, that:

> (1) *In General*. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> . . .
>
> (3) *Enlargement limited*. The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.

Fed. R. Bankr. P. 9006(b)(1) & (3).

Bankruptcy Rule 9006(b)(3) is an exception to the general rule contained in Bankruptcy Rule 9006(b)(1), which limits this Court's ability to enlarge time to file proofs of claim for "excusable neglect" where certain bankruptcy rules apply. However (as will be further argued below), none of the limiting bankruptcy rules specified in Bankruptcy Rule

///

///

7

9006(b)(3), including Bankruptcy Rule 3002(c), apply to a settlement. Therefore, this Court may enlarge Reale's time to file his proof of claim, because Reale's claim arose due to a settlement.

**B.  BANKRUPTCY RULE 3002(c) DOES NOT APPLY TO REALE'S SETTLEMENT WITH DTDF IN ADVERSARY NO. 06-01256-LBR, BECAUSE NO JUDGMENT WAS ENTERED.**

Bankruptcy Rule 3002(c) provides, in relevant part, that:

> (3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a **judgment** may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

Fed. R. Bankr. P. 3002(c)(3) (emphasis added).

In this case, Bankruptcy Rule 3002(c), which is one of the limiting bankruptcy rules specified in Bankruptcy Rule 9006(b)(3) as an exception to Bankruptcy Rule 9006(b)(1), does not apply to Reale's Settlement with DTDF in Adversary No. 06-01256-LBR (the "DTDF Adversary Case"), because Rule 3002(c) applies solely to judgments. Indeed, although Bankruptcy Rule 3002(c)(3) provides that "[a]n unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property," it is important to note that by the very language of this rule, it applies exclusively to judgments, and, therefore, not settlements.

The Bankruptcy Court for the Western District Court of New York addressed this very issue in *In re Bender Ready Mix*, and held that Rule 3002(c) does not extend to settlements. Specifically, that court held that "[the] distinctive nature of a settlement recovery" is crucial, because a settlement, unlike a judgment,

> necessarily entails some event of agreement between trustee and defendant . . . , [and] the trustee enjoys adequate opportunity either to address the allowance of claims as part of a global resolution, or at least to establish a framework for presentment of claims within a specified limit of time.

///
///

8

*In re Bender Ready Mix*, 226 B.R. 337, 339 (Bankr. W.D.N.Y. 1998). The court further explained that "when the trustee receives a settlement, he thereby knows immediately the value of the creditor's claim against the estate." *Id.* Finally, the court noted that "[c]onsiderations of fairness" further support the conclusion that Rule 3002(c)(3) should not limit the time in which a creditor whose claim arises due to a settlement with the trustee, where the rule can be made applicable only by inference, and where no distribution has yet occurred, because "such a result imposes no excessive hardship upon the trustee." *Id.* at 340.

Reale hereby argues that the holding of *In re Bender Ready Mix*, out of the Bankruptcy Court for the Western District Court of New York, should be followed by this Court for the various reasons stated by that court, namely due to (1) the plain language of the statute, and (2) the critical differences between judgments and settlements. *See In re Bender Ready Mix*, 226 B.R. at 339. This conclusion is further supported by "considerations of fairness" where, as DTDF notes, the equityholder members of DTDF "have not received a single distribution since the filing of bankruptcy cases" (*see* Objection at 6:1-2), and where DTDF necessarily had notice of Reale's claim arising due to the Settlement since DTDT itself was a party to the Settlement with Reale. Under the holding in *In re Bender Ready Mix*, this Court should hold that Bankruptcy Rule 3002(c)(3) does not apply in this case, and therefore Bankruptcy Rule 9006(b) permits this Court to enlarge Reale's time for filing his proof of claim.

**C.  THE COURT SHOULD ENLARGE THE TIME FOR REALE TO FILE HIS PROOF OF CLAIM UNDER RULE 9006 (b)(1)&(3), BECAUSE THE FACTORS WEIGH IN REALE'S FAVOR.**

Reale argues that this Court should enlarge the time for Reale to file his proof of claim as to both the principal and interest portions of the Shadroc Loan, under Bankruptcy Rule 9006(b). As counsel for DTDF correctly notes, after the passing of the claims bar date set by the Court pursuant to Bankruptcy Rule 3003, the Court may nevertheless enlarge the time to file a proof of claim in a chapter 11 case upon a showing of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1); *In re Dix*, 95 B.R. 134, 137 (9th Cir. B.A.P. 1988). Furthermore, as counsel for DTDF notes, in determining whether excusable neglect is present and justifies enlarging the time to file a proof of claim, the bankruptcy courts must evaluate "all relevant

9

circumstances," including: (1) danger of prejudice to the debtor; (2) length of delay and its potential impact on proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

The United States Supreme Court, in *Pioneer*, further noted the following:

> [B]y empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.
>
> . . . [T]his flexible understanding of "excusable neglect" accords with the policies underlying Chapter 11 and the bankruptcy rules. The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. In overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a correspondingly equitable inquiry.

*Pioneer*, 507 U.S. at 389 (internal citations omitted).

In this case, the various factors set forth by the United States Supreme Court in *Pioneer*, weigh in favor of this Court enlarging the time for Reale to file his proof of claim, concerning the Shadroc Loan.

First, although DTDF asserts that DTDF "had no notice during the plan of reorganization formulation process that Reale may have a creditor claim" (Objection, at 6:23-24), such assertion is disingenuous, as DTDF had sued Reale in the DTDF Adversary Case and was a party to the later Settlement, and was necessarily aware that Reale, under the DTDF Adversary Case and the Settlement, could lose all or portions of the Principal and Interest under the Shadroc Loan, by being forced to give up not only his proceeds from the sale of the Royal Hotel, but also his deed of trust and UCC security interest in the Hotel Zoso. Furthermore, although DTDF argues that Reale's claim will "drastically affect the timing and amount of a distribution to the [equityholders members of DTDF], . . . and would likely have

GERRARD, COX & LARSEN
2450 St. Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000

altered [DTDF's] strategy in negotiating and promoting a plan of reorganization, and would likely have affected the voting . . . on the existing Plan of Reorganization," (Objection, at 5-6) DTDF is nevertheless still in the process of examining claims and is presently seeking an order of this Court to establish a disputed claim reserve.  It is also interesting to note that on the one hand, DTDF received money to pay to claimants from Reale through the Settlement, while on the other hand, DTDF does not want to honor Reale's claim against DTDF that arises as a result of the same Settlement.

Second, Reale's claim against DTDF did not arise until the Settlement on or about June 29, 2007.  Reale filed his proof of claim soon thereafter, on September 17, 2007.  Reale argues that as stated previously, the 30-day restriction imposed by Bankruptcy Rule 3002(c)(3) does not apply, and this Court may enlarged the time for "excusable neglect." Reale was and is still engaged in complex litigation in adversary proceeding no. 06-01251-LBR (the "USACM Adversary Case").

Third, Reale acted in good faith in filing his proof of claim.  Although DTDF is quick to point out that Reale delayed 10 months from the claims bar date set by the court (Objection at 3:28), the reality is that Reale actually filed his proof of claim less than three months after his claim arose due to his Settlement with DTDF.  Furthermore, although DTDF argues that "Reale's delay in asserting his claim . . . provides strong evidence that Reale conceded by his conduct that he had no basis for any such claim" (Objection at 6:25-27), Reale's delay actually establishes that he waited until after the Settlement with DTDF, in good faith, to determine whether he legitimately had a claim against DTDF, prior to filing a proof of claim.

In conclusion, the DTDF Adversary Case resulted in the Settlement between Reale, and DTDF, whereby Reale relinquished his money he had recovered from the sale of the Royal Hotel (which secured the principal portion of the Shadroc Loan), and his deed of trust and UCC security interest in the Hotel Zoso (which secured the interest portion of the Shadroc Loan).  Prior to that settlement, Reale considered himself covered by his agreement to be paid

///

///

11

through these trust deeds. Upon this Court's approval of the Settlement on or about June 29, 2007, however, Reale's claim against DTDF arose, and Reale then submitted his proof of claim on September 17, 2007.

Furthermore, it is important to note that Reale was initially not even aware that a claim existed for the interest portion of the Shadroc Loan, because he did not know about DTDF's role in the fraud perpetrated by Milanowski, Hantges, USACM, USAIP, and DTDF until undertaking discovery in the DTDF Adversary Case discussed above, and in the related USACM Adversary Case. Simply put, under the circumstances DTDF should not be permitted to claim the fruits of its fraud against Reale by forcing him to disgorge the legitimate repayment of a legitimate loan obligation, then trying to wipe out that obligation entirely. Reale is as much, or more, the victim of the fraud perpetrated by Milanowski, Hantges, USACM, USAIP, and DTDF upon their investors, as any of the other investors.

### III.

### **CONCLUSION**

For the foregoing reasons, Reale respectfully requests that this Court enter an Order allowing his proof of claim, in the full amount, for the reasons stated herein.

Dated this 27th day of November, 2007.

GERRARD COX & LARSEN

/s/ Michael J. Newman
Douglas D. Gerrard, Esq.
Nevada Bar No: 4613
Sheldon A. Herbert, Esq.
Nevada Bar No: 5988
Michael J. Newman, Esq.
Nevada Bar No: 10697
2450 St. Rose Parkway, Ste. 200
Henderson, NV 89074
Attorneys for *SALVATORE J. REALE*