# EXHIBIT "A"



1  Douglas D. Gerrard, Esq.
   dgerrard@gerrard-cox.com
2  Nevada Bar No. 4613
   James E. Shapiro, Esq.
3  jshapiro@gerrard-cox.com
   Nevada Bar No. 7907
4  GERRARD COX & LARSEN
   2450 St. Rose Pkwy., Suite 200
5  Henderson, Nevada  89074
   (702) 796-4000
6  Attorneys for Defendant
   SALVATORE REALE
7

8                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF NEVADA

9  In re:                                    Bankruptcy Case No.
   USA COMMERCIAL MORTGAGE COMPANY,
10                              Debtor.       BK-S-06-10725-LBR
                                              BK-S-06-10726-LBR
11 In re:                                     BK-S-06-10727-LBR
   USA CAPITAL REALTY ADVISORS, LLC,          BK-S-06-10728-LBR
12                              Debtor.       BK-S-06-10729-LBR

13 In re:                                     Chapter 11
   USA CAPITAL DIVERSIFIED TRUST DEED
14 FUND, LLC,
                                Debtor.       Jointly Administered Under
15                                            BK-S-06-10725-LBR
   In re:
16 USA CAPITAL FIRST TRUST DEED FUND,
   LLC
17                              Debtor.

18 In re:                                     Adversary Case No. 06-01251-LBR
   USA SECURITIES, LLC
19                              Debtor.

20 Affects:
   USA COMMERCIAL MORTGAGE COMPANY,            AFFIDAVIT OF SALVATORE J.
21                                                         REALE
                                Plaintiff,
22 vs.

23 SALVATORE REALE,
                                Defendant.
24

25               AFFIDAVIT OF SALVATORE J. REALE

26 I SALVATORE J. REALE, being first duly sworn, deposes and states:

27 / / /

28 / / /

GERRARD, COX & LARSEN
2450 St. Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000

1.     I am a Defendant in this suit and in such capacity have personal knowledge of the matters asserted herein, except for those matters herein contained stated upon information and belief, and as to those matters I believe it to be true and I am competent to testify thereto.

2.     In September, 1999, I, through Shadroc, LLC, (an entity of which I was the 100% owner), extended a Two Million Fifty Thousand Dollar ($2,050,000.00) loan to Shadowrock Development Corporation and Palm Springs Marquis, Inc. which was secured by two trust deeds against the Marquis Hotel (later known as the Hotel Zoso).

3.     This loan was being serviced by USA Commercial Mortgage Company ("USACM"), and USACM split the loan origination fees with me at the time this loan was extended. I was later informed by Milanowski and Hantges that my Shadroc Loan was not performing and that the borrower had stopped making payments. Milanowski informed me that he desired to purchase my Shadroc loan.

4.     On September 5, 2003, I agreed to sell this loan to USA Diversified Trust Deed Fund ("DTDF") and USACM for Two Million Fifty Thousand Dollar ($2,050,000.00). This was memorialized in that certain Agreement for Purchase of Loan entered between myself, DTDF and USACM. A true and correct copy of the Agreement for Purchase of Loan ("Transfer Agreement") entered between me and USACM is attached to the Reply to USACM Liquidating Trust's Opposition and Supplemental Opposition to Motion for Summary Judgment ("Reply") as Exhibit "G" and is incorporated herein by this reference. Under this Transfer Agreement, USACM was obligated to pay me $2,050,000.00 by October 3, 2003. As of the present date, I have yet to receive this payment from USACM.

5.     I requested that my note from Hantges and Milanowski be increased by $2,050,000.00 to hold Milanowski and Hantges personally responsible for this obligation until it was paid by USACM.

6.     On September 8, 2003, the Twenty-Seventh Amendment to Promissory Note was signed by Milanowski and Hantges, which increased my note by $2,050,000.00. A true and correct copy of the Twenty-Seventh Amendment to Promissory Note is attached to the Reply as Exhibit "H" and incorporated herein by this reference.

2

7.    USACM never made any payment to me under the Transfer Agreement and I did not press the issue because I figured the loan had been a complete loss. However, in the fall of 2006, I learned from the borrower, Mark Bragg, that DTDF had received a payment on this loan in the amount Three Million Seven Hundred Forty-Three Thousand Four Hundred Seventy-Nine and 77/100s Dollars ($3,743,479.77). Mr. Bragg provided me a closing statement from an escrow to prove that he had repaid this loan in full. A true and correct copy of the closing documents provided to me by Mark Bragg showing a payment to DTDF is attached to the Reply as Exhibit "I" and is incorporated herein by this reference.

8.    After learning this loan had been paid in full, I was upset because neither USACM nor DTDF had paid me the $2,050,000.00 they owed me for the assignment of my loan, and because I had been misled by Milanowski and Hantges with respect to the viability of this loan.

9.    In the fall of 2006, I approached Milanowski and Hantges to resolve this issue.

10.    Milanowski informed me that he would pay me the original $2,050,000.00, plus accrued interest, from the sale of the Royal Hotel as it was already covered by the Reale Deed of Trust.

11.    The difference between the original $2,050,000.00 obligation, and the $3,743,479.77 USACM received from the Shadroc loan (for which USACM had still not paid me), was to be repaid to me through a Deed of Trust against the Hotel Zoso, which had been purchased by Investment Partners through a subsidiary.

12.    The difference between these two amounts was approximately the amount of $1,693,479.00.

13.    As a result, on or about September 25, 2006, Milanowski and Hantges caused USA Investment Partners VI to grant me a Deed of Trust against, and provided me with a UCC security interest in the personal property of, the Hotel Zoso, for the amount of Two Million One Hundred Forty-Six Thousand One Hundred Eighty and 20/100 Dollars ($2,146,180.20) (which represented the difference of $1,693,479.00 plus interest on that amount from the time it was received by DTDF on March 2, 2004 through September 25, 2006).

///

GERRARD, COX & LARSEN
2450 St. Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000

3

14.    During the latter part of 2001, I noticed that several of my loan advance checks were being directed to the bank account of Investment Partners, rather than USACM.  Shortly after noticing this, Milanowski directed me to make future loan advance checks payable to Investment Partners.  I requested and received a written confirmation that Investment Partners would be responsible to repay my loan.  A true and correct copy of this guarantee I received from Investment Partners, is attached to the Reply as Exhibit "N" and is incorporated herein by this reference.

15.    FURTHER AFFIANT SAYETH NAUGHT.



SALVATORE J. REALE

SUBSCRIBED and SWORN to before me this 17th day of July, 2007.

Notary Public - State of Nevada
COUNTY OF CLARK
JILL BERGHAMMER
No. 07-3480-1    My Appointment Expires June 7, 2011

NOTARY PUBLIC in and for said County and State

GERRARD, COX & LARSEN
2450 St. Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000

G:\06787\MSJ.aff.Reale.071707.wpd

4

# EXHIBIT "B"

## AGREEMENT FOR PURCHASE OF LOAN

Shadroc, LLC, a Nevada limited liability company ("Shadroc"), Salvatore J. Reale ("Reale"), and USA Capital Diversified Trust Deed Fund, LLC, a Nevada limited liability company (the "Fund"), hereby agree as follows:

### RECITALS

A.      Reale is the sole member owning 100% of Shadroc. USA Commercial Mortgage Company, a Nevada corporation ("USA") is the manager of Shadroc, and has control over the Fund by virtue of being the manager of USA Investment Partners, LLC, a Nevada limited liability company, the manager of USA Capital Realty Advisors, LLC, a Nevada limited liability company, the manager of the Fund.

B.      Shadroc's sole business is ownership of a Loan to Palm Springs Marquis, Inc., a Delaware corporation and Shadowrock Development Corporation, a California corporation ("Shadowrock"). Reale informed USA of the opportunity to make the Loan and of his desire to fund it, and asked USA to assist him in arranging the Loan, which USA did. Capitalized terms used herein without definition have the meanings assigned to them in the Loan Agreement dated September 3, 1999 by and among Shadroc as Lender and Palm Springs Marquis, Inc. and Shadowrock Development Corporation, collectively as Borrower.

C.      The Loan was secured by two deeds of trust, a leasehold deed of trust given by Palm Springs Marquis, Inc. encumbering the property known as the Palm Springs Marquis Hotel in Palm Springs, California that was recorded September 10, 2000 as Document No. 1999-405742 (the "Marquis Trust Deed"), and one given by Shadowrock encumbering vacant land located in or near Palm Springs, California that was recorded September 10, 2000 as Document No. 1999-405741 (the "Shadowrock Trust Deed"), both in Official Records of Riverside County, California. The Shadowrock Trust Deed is a third priority trust deed, subordinate to two senior deeds of trust (the "Senior Trust Deeds").

D.      Shadroc and Reale wish to sell to the Fund, which wishes to purchase from Shadroc, all of Shadroc's right, title, and interest in the Loan, including all Loan Documents.

E.      The Loan was originally made on or about September 10, 1999 in the amount of $2,000,000. USA holds all of the original Loan Documents, including the Note, and has administered the Loan for Shadroc, and is familiar with its current status due to its administration of the Loan.

F.      The Loan is in default, and Shadowrock has filed bankruptcy in the United States Bankruptcy Court, Central District of California under Case No. RS03-10367 DN. Palm Springs Marquis, Inc. has also filed bankruptcy. The Marquis Trust Deed was discharged or foreclosed as a result of the Palm Springs Marquis, Inc. bankruptcy. The holder of the Senior Trust Deeds has moved for relief from the automatic stay so that he may foreclose one or both of the Senior Trust Deeds.

G.      On or about September 1, 2000, the principal amount of the Loan was increased to

SR00412

$2;100,000. The current amount due Shadroc under the Loan exceeds $3.1 million. Borrower last made any payment on the Loan on or about July of 2001.

H.    Neither Shadroc nor USA has any knowledge or record of any prior transfer of, including a transfer of any kind for security purposes, or claim against Reale's membership interest in Shadroc, and Reale affirmatively represents that he has not transferred in any manner any of said membership interest, and that he still holds the entire membership interest unencumbered in any way.

I.    There is a possibility that a third party may purchase the property encumbered by the Shadowrock Trust Deed, and that the purchase may provide sufficient funds to repay the Note in full, or, if not in full, it may result in payment to Shadroc of more than $2,050,000, the current principal balance of the Note due to Shadroc.

J.    During the past two years, Reale has diligently tried to achieve a workout of the Loan to effect payment of all or a portion of the Loan Amount, but has not been successful. Reale now desires to sell the Loan to the Fund upon the terms and conditions set out herein to obtain peace of mind and closure with respect to the Loan.

K.    Reale has had an opportunity to consult with counsel of his choice regarding the subject matter of this Agreement as well as this Agreement, and makes this Agreement based on his independent assessment that it is best for him under all of the circumstances. Reale and USA acknowledge that Reale has consulted with principals of USA regarding this Agreement and the sale described herein, and Reale specifically represents that he has decided to make this Agreement because of his independent assessment. Reale further acknowledges that he has independently verified all factual recitals contained herein, and that USA has repeatedly inquired of his desire to make this Agreement in light of the aforementioned potential sale of the Shadowrock property to a third party.

NOW, THEREFOR, in consideration of the truth of the foregoing recitals, which the parties hereby acknowledge, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Shadroc, Reale and the Fund agree that the Fund may purchase the Loan upon the terms and conditions set out below.

## AGREEMENTS

1.    Reale, Shadroc, USA, and the Fund hereby acknowledge the truth and accuracy of all recitals made above, and incorporate them as material consideration for this Agreement.

2.    USA shall pay $2,050,000 for the Loan. Payment of that amount shall be made no later than October 3, 2003.

3.    Shadroc shall execute and deliver to the Fund an allonge to the Note, and an assignment of the Shadowrock Trust Deed transferring the Note to the Fund, and assigning said trust deed to the Fund. The Fund acknowledges that USA, in its capacity as the ultimate manager of the Fund, currently possesses all of the original Loan Documents.

SR00413

4. .    The transaction contemplated hereby shall close through an escrow that shall be established with First American Title Company. All parties agree to promptly provide documents reasonably requested by escrow to complete this transaction. USA and the Fund, as determined between them, shall pay all costs and expenses of escrow.

5.    The laws of the State of Nevada shall govern the construction and enforcement of this Agreement. Should suit be brought to construe or enforce this Agreement, venue shall lie in Clark County, Nevada, and the prevailing party or parties shall be entitled to recover reasonable attorneys' fees. This Agreement shall be binding on the parties' heirs, successors and assigns, and anyone claiming by or through them.

IN AGREEMENT HEREWITH THE PARTIES HAVE SET THEIR HANDS AS OF THIS 5th DAY OF SEPTEMBER, 2003.

**SHADROC, LLC**

By: USA Commercial Mortgage Company, Manager

By: _____
Joseph D. Milanowski, President

**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC**

By: USA Capital Realty Advisors, LLC, Manager
By: USA Investment Partners, LLC, its Manager
By: USA Commercial Mortgage Company, its Manager

By: _____
Joseph D. Milanowski, President

**CONSENT OF MEMBER:**

The undersigned sole member of Shadroc, LLC hereby approves the form and substance of this Agreement.

_____
Salvatore J. Reale

SR00414

# EXHIBIT "C"

SEP 18 2003 16:43 FR.FIRST AMERICAN TITLE              TO 17024565773        P.02

When Recorded, Return To:
USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, NV 89121

COPY of Document Recorded
on SEP 1 7 2003 as No. 724340
has not been compared with
original.
**GARY L. ORSO**
**County Recorder**
**RIVERSIDE COUNTY CALIFORNIA**

| M | 6 | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   |      |      |     |      |       |     |       |
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      |     | COPY | LONG | REFUND | NCHG | EXAM |

## ASSIGNMENT OF BENEFICIAL INTEREST
## IN DEED OF TRUST

FOR VALUE RECEIVED, THE UNDERSIGNED ("Assignor") hereby grants, assigns, sets
over and transfers to USA Capital Diversified Trust Deed Fund, LLC, a Nevada limited liability
company, ("Assignee") all of Assignor's undivided beneficial interest in the Deed of Trust (as
defined below), the same being 100% of the beneficial interest in said Deed of Trust. As used
herein, "Deed of Trust" shall mean that certain Deed of Trust, Assignments of Rents, Security
Agreement and Fixture Filing (the "Deed of Trust") dated September 3, 1999, executed by
Shadowrock Development Corporation, as Trustor, by First American Title Insurance Company,
a California corporation, as Trustee, in favor of Shadroc, LLC, a Nevada limited liability
company, as beneficiary. The Deed of Trust was recorded on September 10, 1999, as Instrument
No. 1999-405741 in Official Records of Riverside County, California.

This Assignment is made together with the Note or Notes therein described or referred to
therein, the money due or to become due thereon, together with interest and rights accrued or to
accrue under said Deed of Trust.

DATED this 10th day of September, 2003.

ASSIGNOR: Shadroc, LLC
            By: USA Commercial Mortgage Company, Manager

            By: _____
                Joseph D. Milanowski, President

SR00417

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

On $\underline{10}$, September, 2003, before me, ___LYNDA Stewart___, a Notary Public, personally appeared Joseph D. Milanowski, personally known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

    WITNESS my hand and official seal.

_____
Notary Public
My Commission Expires __2/4/07__



**LYNDA STEWART**
Notary Public, State of Nevada
Appointment No. 94-C...
My Appt. Expires Feb.

**LYNDA STEWART**
Notary Public, State of Nevada
Appointment No. 94-5332-1
My Appt. Expires Feb. 4, 2007

SR00418

POLICY NO. 2145214A-21

THE LAND REFERRED TO IN THIS POLICY IS SITUATED IN THE STATE OF
CALIFORNIA, COUNTY OF RIVERSIDE, CITY OF PALM SPRINGS AND IS
DESCRIBED AS FOLLOWS:

PARCEL A: (GILLETTE)

THE EAST HALF OF GOVERNMENT LOT 7 AND THE NORTHEAST QUARTER
OF GOVERNMENT LOT 14 OF SECTION 4, TOWNSHIP 4 SOUTH, RANGE 4
EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE
OFFICIAL PLAT THEREOF.

PARCEL B: (PETE)

THE EAST HALF OF THE GOVERNMENT LOT 8 OF SECTION 4, TOWNSHIP
4 SOUTH, RANGE 4 EAST, SAN BERNARDINO BASE AND MERIDIAN,
ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL C: (PETE)

THE WEST HALF OF GOVERNMENT LOT 7 OF SECTION 4, TOWNSHIP 4
SOUTH, RANGE 4 EAST, SAN BERNARDINO BASE AND MERIDIAN,
ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL D: (RUBIN)

THAT PORTION OF SECTION 33, TOWNSHIP 3 SOUTH, RANGE 4 EAST,
SAN BERNARDINO BASE AND MERIDIAN, AS CONVEYED TO THE STATE OF
CALIFORNIA BY DEED RECORDED FEBRUARY 21, 1944 IN BOOK 615
PAGE 197 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA,
DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EAST LINE OF THE WEST HALF OF THE
WEST HALF OF SAID SECTION 33, DISTANT THEREON, SOUTH 1 DEGREE
08' 44" WEST, FROM THE NORTHEAST CORNER OF SAID WEST HALF OF
THE WEST HALF, 2757.27 FEET, SAID POINT BEING DESCRIBED IN
SAID DEED;
THENCE ALONG SAID EAST LINE, NORTH 1 DEGREES 08' 44" EAST,
675.50 FEET TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE
TO THE NORTHEAST AND HAVING A RADIUS OF 5150.00 FEET;
THENCE SOUTHEASTERLY ALONG SAID CURVE FROM A TANGENT BEARING
OF SOUTH 49 DEGREES 56' 57" EAST, AN ARC DISTANCE OF 758.85
FEET, THROUGH AN ANGLE OF 8 DEGREES 26' 33";
THENCE SOUTH 58 DEGREES 23' 30" EAST, 1962.33 FEET;
THENCE SOUTH 31 DEGREES 36' 30" WEST, 536.90 FEET;
THENCE NORTH 58 DEGREES 23' 30" WEST, 2033.92 FEET TO THE
BEGINNING OF A TANGENT CURVE CONCAVE TO THE NORTHEAST AND
HAVING A RADIUS OF 5600.00 FEET;

PAGE

2

POLICY NO. 2145214A-21

**THENCE NORTHWESTERLY, ALONG SAID CURVE, AN ARC DISTANCE OF 342.27 FEET, THROUGH AN ANGLE OF 3 DEGREES 30' 07" TO THE POINT OF BEGINNING.**

CC

# EXHIBIT "D"

## TWENTY-SEVENTH AMENDMENT TO PROMISSORY NOTE

Salvatore Reale, in trust for Leonora J. Ferro ("Lender") and Thomas A. Hantges and Joseph D. Milanowski (collectively, "Borrower") hereby agree to amend that certain Promissory Note ("Note") between them in the principal amount of $5,750,000 that is dated December 1, 2000. Interest on the Note is paid current. The Note amount was increased to $6,500,000 by an Amendment to Promissory Note dated January 1, 2001, a Second Amendment to Promissory Note dated February 1, 2001, a Third Amendment to Promissory Note dated March 1, 2001 a Fourth Amendment to Promissory Note dated March 19, 2001, and a Fifth Amendment to Promissory Note dated April 1, 2001. The Note amount was reduced to $6,250,000 by a payment made on or about April 13, 2001, increased to $6,400,000 by a Sixth Amendment to Promissory Note dated May 1, 2001, increased to $6,500,000 by a Seventh Amendment to Promissory Note dated May 23, 2001, increased to $6,550,000 by an Eighth Amendment to Promissory Note dated June 1, 2001, increased to $6,700,000 by a Ninth Amendment to Promissory Note dated July 1, 2001, increased to $6,800,000 by a Tenth Amendment to Promissory Note dated August 1, 2001, increased to $6,900,000 by an Eleventh Amendment to Promissory Note dated November 1, 2001, increased to $7,000,000 by a Twelfth Amendment to Promissory Note dated November 30, 2001, increased to $7,050,000 by a Thirteenth Amendment to Promissory Note dated January 1, 2002, increased to $7,100,000 by a Fourteenth Amendment to Promissory Note dated February 1, 2002, to $7,200,000 by a Fifteenth Amendment to Promissory Note dated April 1, 2002, to $7,300,000 by a Sixteenth Amendment to Promissory Note dated May 1, 2002, to $7,400,000 by a Seventeenth Amendment to Promissory Note dated May 9, 2002, to $7,500,000 by an Eighteenth Amendment to Promissory Note dated July 1, 2002, to $7,600,000 by a Nineteenth Amendment to Promissory Note dated August 1, 2002, to $7,700,000 by a Twentieth Amendment to Promissory Note dated October 1, 2002, to $7,800,000 by a Twenty-First Amendment to Promissory Note dated November 1, 2002, to $8,200,000 by a Twenty-Second Amendment to Promissory Note dated January 1, 2003, to $8,300,000 by a Twenty-Third Amendment to Promissory Note dated May 1, 2003, to $8,400,000 by a Twenty-Fourth Amendment to Promissory Note dated July 1, 2003, to $8,550,000 by a Twenty-Fifth Amendment to Promissory Note dated August 1, 2003, and to $8,650,000 by a Twenty-Sixth Amendment to Promissory Note dated September 1, 2003.

In consideration of Lender's having on this 8th day of September, 2003 advanced an additional $2,050,000 to Borrower, the parties agree that effective this date, the principal amount of the Note is increased to $10,700,000. Interest on the $2,050,000 shall commence on the 8th day of September, 2003. All of the terms and conditions of the Note shall apply to the entire increased amount of $10,700,000.

All other terms and conditions of the Note remain in full force and effect.

(Signature page follows)

Dated this 8th day of September, 2003.

**BORROWER:**

_____
Joseph D. Milanowski

_____
Thomas A. Hantges

**HOLDER:**

_____
Salvatore J. Reale, Trustee


STATE OF NEVADA        )
                                          ) ss.
COUNTY OF CLARK       )

This instrument was acknowledged before me on this 8th day of September, 2003, by Joseph D. Milanowski.

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006

_____
Notary Public
(My Commission Expires: _1-16-06_ )


STATE OF NEVADA        )
                                          ) ss.
COUNTY OF CLARK       )

This instrument was acknowledged before me on this 8th day of September, 2003, by Thomas A. Hantges.

AMANDA STEVENS
Notary Public, State of Nevada
Appointment No. 02729371
My Appt. Expires Jan. 16, 2006

_____
Notary Public
(My Commission Expires: _16-06_ )

**EXHIBIT "E"**

# AFFIDAVIT

September 19, 2006

TO WHOM IT MAY CONCERN:

This will certify that the attached Settlement Statement from Ticor Title Company is a true and correct copy of the closing statement resulting from the sale of land owned by Shadowrock Development Corporation on March 3, 2004.

As a result of this sale, the claim of USA Capital Diversified Trust Deed Fund, LLC in the amount of $3,743,479.77 was paid in full. This amount represented the entire principal and interest owing on the USA Capital loan plus all collection costs incurred in collecting the loan through the Shadowrock Development Corp. bankruptcy filing which resulted from the USA Capital foreclosure action. These funds were disbursed by Ticor Title directly to USA Capital as the result of an order of the United States Bankruptcy Court for the Central District of California located in Riverside, California.

Attested to on this date by:

Mark A Bragg, President, Shadowrock Development Corporation

SR00424


**TICOR TITLE INSURANCE**

**Seller**
# Settlement Statement
Folder Number: 812255

---

| Settlement Date: 03/02/04 | Disbursement Date: | | Estimated |
|---|---|---|---|

| Name and Address of Buyer(s): | Weston Holding Co., L.L.C.<br>2154 NE Broadway, Suite 200<br>Portland, OR 97232 |
|---|---|
| Name, Address of Seller(s): | Shadowrock Development Corporation |
| Property Location(s): | Vacant Land<br>Palm Springs, CA |
| Settlement Agent: | Ticor Title Insurance Company<br>1629 SW Salmon<br>Portland, OR 97205 |

---

| Description | (POC) | Seller Debit | Seller Credit |
|---|---|---|---|
| Contract Sales Price.......................................... | | | 6,150,000.00 |
| **PRORATION(S)/OFFSET(S)** | | | |
| Payment from Buyer to Mark Bragg............................ | | 50,000.00 | |
| Payment from Buyer to Ed Freeman............................ | | 50,000.00 | |
| **PAYOFF(S)** | | | |
| John Wessman (Claim #1)...................................... | | 598,386.99 | |
|   Principal | $559,674.79 | | |
|   Interest | $33,915.08 | | |
|     01/09/03 to 01/31/04 (388 days) | | | |
|     @ 87.410000/day | | | |
|   Interest | $2,797.12 | | |
|     01/31/04 to 03/02/04 (32 days) | | | |
|     @ 87.410000/day | | | |
| John Wessman (Claim #2)...................................... | | 844,086.37 | |
|   Principal | $751,549.57 | | |
|   Interest | $45,485.24 | | |
|     01/09/03 to 01/31/04 (388 days) | | | |
|     @ 117.230000/day | | | |
|   Interest | $3,751.36 | | |
|     01/31/04 to 03/02/04 (32 days) | | | |
|     @ 117.230000/day | | | |
|   Legal Fees–Hanover | $11,185.17 | | |
|     to John Wessman (Claim #2) | | | |
|   Interest on Legal Fees @ 6% | $509.74 | | |
|     to John Wessman (Claim #2) | | | |
|   Legal Fees–Tuverson & Hillyar | $6,205.80 | | |
|     to John Wessman (Claim #2) | | | |
|   Interest on Legal Fees @ 6% | $172.62 | | |
|     to John Wessman (Claim #2) | | | |
|   LFS Real Estate–Paid Trustee | $20,729.30 | | |
|     to John Wessman (Claim #2) | | | |
|   Interest on Trustee Fees @ 6% | $1,066.57 | | |
|     to John Wessman (Claim #2) | | | |
|   Additional Unpaid Trustee Fee | $3,431.00 | | |
|     to John Wessman (Claim #2) | | | |
| USA Capital Diversified Trust Deed Fund, LLC.............. | | 3,743,479.77 | |
|   Principal | $2,100,000.00 | | |
|   Interest | $46,666.56 | | |
|     01/31/04 to 03/02/04 (32 days) | | | |
|     @ 1,458.330000/day | | | |
|   Late Fee | $105,000.00 | | |
|     to USA Capital Diversified Trust Deed Fund, LLC | | | |
|   Default Interest (through Jan 3 | $287,342.76 | | |
|     to USA Capital Diversified Trust Deed Fund, LLC | | | |
|   Non-Default Interest (through . | $1,149,371.08 | | |
|     to USA Capital Diversified Trust Deed Fund, LLC | | | |
|   Attorney's Fees | $55,099.37 | | |
|     to USA Capital Diversified Trust Deed Fund, LLC | | | |

**SB00425**

Page: 1

Settlement Date: 03/02/04     Seller Settlement Statement     Folder No.: 812255

| Description | | (POC) | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Project Dimensions, Inc. | | | 56,348.87 | |
|    Principal | $55,889.57 | | | |
|    Interest | | | | |
|      02/02/04 to 03/02/04 (30 days) | | | | |
|    Interest | $459.30 | | | |
|      02/02/04 to 03/02/04 (30 days) | | | | |
|      @ 15.310000/day | | | | |
| Imperial Business Credit | | | 31,000.00 | |
|    Principal | $31,000.00 | | | |
| TITLE CHARGES | | | | |
| Escrow Fee - Commercial | | | 1,875.00 | |
| Title Insurance | | | | |
|    Owner's Standard Policy | | | 5,980.00 | |
|      Coverage | $6,150,000.00 | | | |
|      Premium | $5,980.00 | | | |
| Reconveyance Fee | | | 400.00 | |
| Escrow Fee - Additional Payments | | | 625.00 | |
| Escrow Fee - Holdback Fee | | | 100.00 | |
| Copy-Courier-Fax  Fee | | | 100.00 | |
| Wire Fees (Bank) | | | 100.00 | |
| Delivery & Messenger Services | | | 100.00 | |
| GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| Recording Fee | | | | |
|    Release | | | 100.00 | |
| Documentary Transfer Tax | | | 6,924.00 | |
| ADDITIONAL SETTLEMENT CHARGES | | | | |
| Payment to Broadcast Group | | | 100,000.00 | |
|    to Broadcast Group | | | | |
| Payment to Donald P. Goertzen | | | 300,000.00 | |
|    to Donald P. Goertzen | | | | |
| Payment to Rodney Blonien | | | 5,000.00 | |
|    to Rodney Blonien | | | | |
| Payment to Burke, Williams & Sorenson | | | 20,000.00 | |
|    to Burke, Williams & Sorenson | | | | |
| Payment to City of Palm Springs | | | 5,337.00 | |
|    to City of Palm Springs | | | | |
| Payment to Clive Clark Design | | | 10,000.00 | |
|    to Clive Clark Design | | | | |
| Payment to GMA | | | 5,000.00 | |
|    to GMA | | | | |
| Payment to Granite Construction | | | 18,083.55 | |
|    to Granite Construction | | | | |
| Payment to JAAX Flying Service | | | 15,000.00 | |
|    to JAAX Flying Service | | | | |
| Payment to Law Offices of Schlect, Shevlin & Scho... | | | 23,000.00 | |
|    to Law Offices of Schlect, Shevlin & Schoenberger | | | | |
| Payment to Glen Lukos | | | 4,000.00 | |
|    to Glen Lukos | | | | |
| Payment to Lund & Guttrey | | | 2,000.00 | |
|    to Lund & Guttrey | | | | |
| Payment to M. Russell Kruse | | | 20,000.00 | |
|    to M. Russell Kruse | | | | |
| Payment to Maniero, Smith & Associates | | | 10,000.00 | |
|    to Maniero, Smith & Associates | | | | |
| Payment to Market Profiles | | | 5,000.00 | |
|    to Market Profiles | | | | |
| Payment to Selzer, Ealy, Hemphill & Blaisdel, LLP | | | 20,000.00 | |
|    to Selzer, Ealy, Hemphill & Blaisdel, LLP | | | | |
| Payment to Slovak, Baron & Empy | | | 6,082.50 | |
|    to Slovak, Baron & Empy | | | | |
| Payment to Southland Geotechnical | | | 5,000.00 | |
|    to Southland Geotechnical | | | | |
| Payment to The Planning Associates | | | 15,000.00 | |
|    to The Planning Associates | | | | |
| Payment to Xerox, MCS Inc. | | | 28,835.75 | |
|    to Xerox, MCS Inc. | | | | |
| Holdback of Seller's Funds Pending Title Resoluti... | | | 50,000.00 | |
|    to Ticor Title | | | | |
| Property Tax Payoff | | | 95,626.69 | |

SR00426

| Settlement Date: 03/02/04 | Seller Settlement Statement | | Folder No.: 812255 | |
|---|---|---|---|---|
| Description | | (POC) | Seller Debit | Seller Credit |
| to Riverside County Tax Collector | | | | |
| Personal Property Tax Payoff.................................................................................... | | | 252.22 | |
| to Riverside County Tax Collector No. 0221655 | | | | |
| Personal Property Tax Payoff.................................................................................... | | | 196.29 | |
| to Riverside County Tax Collector No. 0256140 | | | | |
| | | | | |
| Due From Seller............................................................................................................. | | | 6,150,000.00 | |
| | | | | |
| Total Paid By/For Seller............................................................................................. | | | | 6,150,000.00 |

|  | | |
|---|---|---|
| Due From Seller.......................................... | 6,150,000.00 | |
| Total Paid By/For Seller............................. | 6,150,000.00 | |
| .................................................................. | 0.00 | |

Shadowrock Development Corporation

Mark Bragg, President

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds
which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

We certify that we have delivered copies of the applicable escrow account statements to the above parties.

SR00427

# EXHIBIT "F"

## SECURED PROMISSORY NOTE

$2,146,180.20                                          September 25, 2006

FOR VALUE RECEIVED, USA INVESTORS VI, LLC, a Nevada limited liability company, and JOSEPH D. MILANOWSKI (collectively referred to as "**Borrower**"), promises to pay to SALVATORE J. REALE, TRUSTEE OF THE SALVATORE J. REALE REVOCABLE TRUST DATED NOVEMBER 15, 2004 ("**Lender**") at 421 Indigo Springs, Henderson, Nevada 89014, or at such other place or to such other party as Lender may from time to time designate, the principal sum of TWO MILLION ONE HUNDRED FORTY-SIX THOUSAND ONE HUNDRED EIGHTY AND 20/100 DOLLARS ($2,146,180.20) bearing interest at the rate of twenty-five percent (25.00%) per annum from the date of this Note until paid in full.

**Payments.** Borrower shall pay Lender the entire unpaid balance of the Note, including principal in the amount of TWO MILLION ONE HUNDRED FORTY-SIX THOUSAND ONE HUNDRED EIGHTY AND 20/100 DOLLARS ($2,146,180.20) plus accrued interest at the rate of twenty-five percent (25.0%) per annum immediately upon Lender's demand. Borrower shall have the privilege to prepay, and Lender shall have an obligation to accept tendered prepayments of all or any portion of the principal balance of this Note without notice and without a prepayment penalty.

**Application of Payments.** All payments shall be applied, first, to the payment of accrued interest and, next, to the payment of any fees and charges due and owing under this Note and, finally, to the payment of the outstanding principal due and owing under this Note.

**Failure To Pay at Maturity.** In the event Borrower fails to pay the entire unpaid balance of this Note within one day after receipt of Lender's demand, this Note shall be deemed overdue and Lender shall be entitled to all of the remedies available under applicable law and in particular, under Article III of the Nevada Uniform Commercial Code, including but not limited to, enforcement of the terms of the Note and collection of the entire overdue balance. Borrower agrees to pay all costs of collection and/or enforcement when incurred, by Lender, including but not limited to reasonable attorneys' fees and all related costs. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees and costs in such suit or action to Lender as the prevailing party.

**Security.** This Note is secured by, among other things, that certain Security Agreement of even date herewith and the Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement (including Fixture Filing), encumbering real property located at 150 South Indian Canyon Drive, Palm Springs, California, Riverside County, California, more particularly described in the Deed of Trust, and such other security instruments and agreements as required by Lender in its sole discretion.

1

**Miscellaneous Provisions.**

**General Payment Terms.**  All amounts payable under this Note are payable in lawful money of the United States, without notice, demand, offset or deduction. Checks will constitute payment only when collected. Any amount paid on this Note shall be applied as set forth above. Borrower hereby waives any right which provides that Borrower has the right to designate the portion of the obligation that is satisfied by any partial payment.

**Waivers.**  Borrower and any endorsers or guarantors of this Note for themselves, their heirs, legal representatives, successors and assigns, respectively, jointly and severally waive presentment, demand, protest, and notice of dishonor and waive any right to be released by reason of any extension of time or change in terms of payment or any change, alteration, or release of any security given for the payment hereof. In addition, Borrower and any endorsers or guarantors jointly and severally waive all defenses involving marshaling of assets, rights to contribution, laches, and estoppel. If Borrower consists of more than one person or entity, each of these persons or entities and any endorsers or guarantors of this Note jointly and severally waive any duty on the part of Lender to disclose facts Lender may now or hereafter know about any of the persons or entities constituting the Borrower, regardless of whether Lender has reason to believe that such facts materially increase the risk beyond that which said person or entity intends to assume or has reason to believe that such facts are unknown to said person or entity or has a reasonable opportunity to communicate such facts to any of these persons or entities, it being understood and agreed that each of the persons and entities constituting the Borrower, endorsers and guarantors are fully responsible for being and keeping informed of the financial condition of other persons and entities constituting the Borrower and of all circumstances bearing on the risk of nonperformance of any obligation under this Note.

**Governing Law.**  This Note shall be governed by and construed in accordance with the laws of the State of Nevada. This Note has been delivered to Lender and accepted by Lender in the State of Nevada. If there is a lawsuit on this Note, Borrower shall submit, at Lender's request, to the jurisdiction of the courts of Clark County, Nevada. **Borrower expressly waives the right to a jury trial.**

**No Waiver.**  No single or partial exercise of any power hereunder or under any other of the Loan Documents shall preclude other or further exercises thereof or the exercise of any other power. Lender shall at all times have the right to proceed against any portion of the security for this Note in such order and in such manner as Lender may consider appropriate, without waiving any rights with respect to any of the security. Any delay or omission on the part of Lender in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver of such right, or of any other right under this Note or the other Loan Documents.

**Successors and Assigns.**  This Note shall inure to the benefit of Lender and its successors and assigns. The obligations of Borrower hereunder or under any of the other Loan Documents shall not be assignable.

2

SR00516

IN WITNESS WHEREOF, the undersigned has executed this Promissory Note as of the date written above.

BORROWER:

_____
JOSEPH D. MILANOWSKI

USA INVESTORS VI, LLC

By:  *USA Investment Partners, LLC*
Its:  Manager

_____
JOSEPH D. MILANOWSKI, its Manager

3

SR00517

## SECURITY AGREEMENT

This Security Agreement is dated September 25, 2006, for purposes of reference only, and is made by and between USA INVESTORS VI, LLC, a Nevada Limited Liability Company ("Debtor") and SALVATORE J. REALE, TRUSTEE OF THE SALVATORE J. REALE REVOCABLE TRUST dated November 15, 2004 (the "Secured Party").

WITNESSTH:

WHEREAS, Debtor and Secured Party have entered into a Performance Guaranty dated September 7, 2006 (the "Guaranty"), which guaranties payment and performance of that certain loan from Secured Party to Thomas A. Hantges and Joseph D. Milanowski in the original principal amount of $12,300,000.00 plus interest per annum evidence by that certain promissory note executed by Borrowers in favor of Secured Party dated September 7, 2006, and all amendments thereto; and

WHEREAS, Secured Party has granted Debtor and Joseph D. Milanowski a second loan in the original principal amount of $2,146,180.20 plus interest per annum as evidenced by that certain promissory note of even date herewith and all amendments thereto; and

WHEREAS, Debtor has agreed to execute this instrument as security for its performance and payment under the Guaranty and promissory notes referenced herein (collectively the "Notes");

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties hereto, intending to be legally bound, do hereby agree as follows:

1.    Grant of Security Interest.  Debtor hereby grants to Secured Party a first priority security interest in the personal property more particularly described in **Exhibit A** attached hereto and incorporated herein (the "Collateral") located on or used in connection with the operation of that certain real property more particularly described in **Exhibit B** attached hereto and incorporated herein (the "Property").  Secured Party may perfect the security interest granted herein as deemed necessary, including filing and recording a UCC-1 Financing Statement.

2.    Purpose of Secured Interest.  The security interest granted hereby is to secure the payment due pursuant to the Guaranty and the Notes, and all other obligations of Debtor to Secured Party, its successors and assignees, however created, arising or evident, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due.  Debtor represents and warrants that it has derived a material financial benefit from the loan evidenced by said Notes and Guaranty.

3.    Representations, Warranties and Covenants. Debtor hereby represents, warrants and covenants that:

a..    Secured Party has a valid lien on and security interest in the Collateral.

b.    Debtor shall pay or cause to be paid when due all amounts payable, and perform or cause to be performed each of its obligations when performable, under all agreements and

1

SR00518

other instruments affecting the Collateral and will do all things necessary to keep unimpaired Debtor's rights thereunder.

       c.     At the request of Secured Party, Debtor shall join Secured Party in executing and, at Secured Party's expense, filing and refiling under the Uniform Commercial Code statutes of any state in which the Collateral may be located, such financing statements, continuation statements, registration forms or documents and other documents in such offices as Secured Party may deem necessary or appropriate and wherever required or permitted by law to perfect and preserve Secured Party's security interest in the Collateral. Debtor hereby authorizes Secured Party to file financing statements and amendments thereto relative to the Collateral without the signature of Debtor where permitted by law, and agrees to do such further acts and things and to execute and deliver to Secured Party such additional conveyances, assignments, agreements and instruments as Secured Party may require or deem advisable to effectuate this Security Agreement.

       d.     Debtor shall keep the Collateral in good repair and unencumbered other than with respect to Secured Party's interest or shall allow Secured Party to retain possession of the collateral until the indebtedness secured hereunder is fully satisfied.

    4.    <u>Events of Default.</u> Any one or more of the following shall constitute a Default hereunder:

       a.     If Debtor shall fail to perform any covenant, condition or provision of this Security Agreement or of the Guaranty, or Notes.

       b.     If the Collateral is levied upon by virtue of an execution issued upon any judgment or any other legal process, and Debtor is not in good faith diligently defending in proper proceedings against any such judgment, writ, or other proceeding seeking to seize the Collateral.

       c.     If Debtor subjects the Collateral to any lien or encumbrance that is superior to the lien created by this Security Agreement.

       d.     If Debtor sells, assigns, (conditionally or otherwise) or otherwise transfers or disposes of the Collateral without the prior written consent of Secured Party.

       e.     If any statement, representation or warranty of Debtor herein or in any other writing at any time furnished by Debtor to Secured Party is untrue in any material respect as of the date made.

    5.    <u>Remedies on Default.</u> Upon the occurrence of a Default, Secured Party shall give Debtor notice thereof, specifying the nature of such Default. If, in the case of a Default involving the payment of money, the Debtor fails to cure the Default within five (5) days after Debtor's receipt of such notice, or in the case of any other Default, the Debtor fails to cure the Default within thirty (30) days after Debtor's receipt of such notice, then, at Secured Party's opinion, Secured Party may exercise its rights of enforcement under the Uniform Commercial Code or as provided herein or otherwise available under applicable law, including the right to sell the Collateral or any portion thereof and, in conjunction with, addition to, or substitution for those rights, at Secured Party's

SR00519

discretion, may waive any Default or remedy in any reasonable manner without waiving the Default remedied and without waiving any other prior or subsequent default.

    6.    <u>Agreement Remains in Effect.</u>  The parties agree to each of the following:

    a.    This Security Agreement shall remain in effect, without waiver or surrender of any of the parties' rights hereunder, notwithstanding any one or more of the following:

    (1)    Extension of time payment of the whole or any part of the Guaranty or the Notes or the renewal thereof;

    (2)    Any change in the terms and conditions of the Guaranty or Notes;

    (3)    Substitution or assignment of the Guaranty or Notes in whole or in part;

    (4)    Acceptance by Secured Party of any other collateral or security for the payment of the Guaranty or Notes, or any extensions or renewals of the Guaranty or Notes, or the foreclosure or application of such collateral or other security, in whole or in part against the amount due under the Guaranty or Notes;

    (5)    Surrender, release, exchange or alteration of any collateral or other security given for the Notes, either in whole or in part;

    (6)    Release, settlement, discharge or compromise in whole or in part, of any claims of Secured Party against Debtor or the Borrowers.

    b.    Secured Party shall be under no duty to select the Collateral over any other property securing payment of the Guaranty or Notes, but may select, sell and/or foreclose against such property as Secured Party in its sole discretion may determine.

    c.    No delay or failure of Secured Party in the exercise of any power or right shall operate as a waiver or acquiescence, nor shall any single or partial exercise of any power or right preclude any future exercise of such power or right, and all rights and remedies of the Secured Party shall be cumulative.

    d.    If Debtor should sell any or all of the Collateral, the proceeds from the sale of such Collateral shall immediately be tendered to Secured Party and the outstanding balance on the Notes shall be reduced by the amount of such proceeds tendered to Secured Party.

    e.    In the event of default and foreclosure of Secured Party's security interest in the Collateral, all contracts executed by Debtor pertaining to the Property, including without limitation, contracts pertaining to the restaurant, parking lot and gift shop on the Property shall become at Secured Party's discretion null and void and of no further force and effect.

SR00520

7.      Costs. In the event of a Default by Debtor hereunder, Debtor shall pay all costs, fees and expenses incurred buy Secured Party to enforce the Guaranty and collect payment of the Note, including, without limitation, reasonable attorney's fees.

8.      Termination. This Security Agreement shall terminate at the date on which the Note has been indefeasibly paid in full. At the time this Security Agreement is terminated, Secured Party, if requested by Debtor, shall execute and deliver to Debtor for filing in each office in which any financing statement relative to the Collateral or any part thereof, shall have been filed, a termination statement under the Uniform Commercial Code releasing Secured Party's interest therein or an assignment statement under the Uniform Commercial Code assigning Secured Party's interest therein to any person designated by Debtor.

9.      Binding Agreement; Assignment. This Security Agreement, and the terms, covenants and conditions hereof, shall be binding upon and inure to the benefit of Debtor, Secured Party and the holders from time to time of the indebtedness secured hereby and their respective successors and assigns; provided, however, that Debtor may not assign this Security Agreement or any interest herein without Secured Party's consent.

10.     Miscellaneous Provisions. This Security Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or understandings with respect to the matters provided for herein. All terms and conditions contained herein are severable, and in the event that any of them shall be held or considered to be unenforceable by any court of competent jurisdiction, this Agreement shall be interpreted as if such unenforceable term or condition were not contained herein. This Security Agreement may not be changed orally, but only by an instrument in writing signed by the party against whom enforcement of any change is sought. This Agreement shall be governed by and interpreted according to the laws of the State of Nevada. **All parties consent to the personal jurisdiction of all courts within the State of Nevada, and hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other one or in respect of any matter whatsoever arising out of or in any way connected with this Agreement.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute but one Agreement. This Agreement may also be executed and delivered via facsimile.

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be executed and delivered by their respective agents or officers duly authorized on the day and year first above written.

*DEBTOR:*                                          *SECURED PARTY:*

USA INVESTORS VI, LLC                              THE SALVATORE J. REALE
                                                   REVOCABLE TRUST
By: USA Investment Partners, LLC
Its: Manager

Joseph D. Milanowski, its Manager                  Salvatore J. Reale, its Trustee

4

SR00521

## Exhibit A

Debtor:    USA INVESTORS VI, LLC

Secured Party: THE SALVATORE J. REALE REVOCABLE TRUST u/t/d 11/15/04

1.    All buildings and improvements (the "Improvements") of any kind erected or placed on that certain land situated in the City of Palm Springs, Riverside County, State of California, commonly known as the *Hotel Zoso Palm Springs* at 150 South Indian Canyon Drive, Palm Springs, California, and more particularly described on Exhibit B attached hereto (the "Land") together with the improvements and buildings located thereon (the "Real Property").

2.    All of Debtor's leasehold interest in and right to use the Land.

3.    All of Debtor's rights in the trade name *Hotel Zoso Palm Springs* and any derivative thereof, trademark, logos, trade styles, service marks, or copyrights related thereto.

4.    All of Debtors' rights in telephone numbers for the *Hotel Zoso Palm Springs*, including without limitation, (760) 325-9676 and (702) 969-6600.

5.    All equipment, furniture, furnishings and fixtures (attached and unattached), inventory or items located at the Real Property now or in the future that may be incorporated in the Real Property through construction, attachment or installation, or that are used, or are capable of being used, in the operation of the Real Property as a hotel or similar commercial real estate use, including but not limited to, (i) equipment, goods, materials, supplies, furniture and fixtures used in the operation of the hotel, (ii) furniture, fixtures, rugs, carpeting, furnishings, art work, decorations, window treatments and equipment located in the buildings, hotel rooms, lobbies, halls or other common areas, or used in connection with the operation of the hotel or used to maintain or operate the Real Property, (iii) goods, materials or equipment for use in the maintenance, alteration, landscaping or repair of the buildings, Real Property, lawn, landscaping, irrigation, security, incineration, and hazardous waste storage, monitoring, testing, containment or abatement supplies and equipment, (iii) electrical lights and fixtures (whether or not permanently wired), backup generators and related fuel storage and delivery systems, (vi) components of heating, ventilation and air conditioning systems and air quality testing equipment, (vii) spare or detached parts for elevators, escalators or other mechanical systems, (viii) all site or building plans and specifications, construction records, and architectural or engineering drawings relating to the Real Property, (ix) sewer or septic system components, (x) water wells, whether for purposes of water supply or groundwater testing or sampling, (xi) components of plumbing and water conditioning systems, (xii) firefighting, sprinkler or other fire safety equipment, (xiii) central telephone switches, antennae, satellite dishes or other telecommunication equipment,

SR00522

and (xiv) video conferencing equipment, audio equipment and cable television distribution systems.

6.    Debtor's existing and future interests in all materials, supplies, equipment, apparatus and other items now or hereafter attached to or installed on the Land and Improvements in a manner that causes them to become fixtures under applicable law, including all built-in or attached furniture or appliances, elevators, escalators, heating, ventilating and air conditioning system components, emergency electrical generators and related fuel storage or delivery systems, septic system components, storm windows, doors, electrical equipment, plumbing, water conditioning, lighting, cleaning, lawn, landscaping, irrigation, security, incinerating, firefighting, sprinkler or other fire safety equipment, bridge cranes or other installed materials handling equipment, satellite dishes or other telecommunication equipment, built-in video conferencing equipment, sound systems or other audiovisual equipment, and cable television distribution systems.

7.    All of Debtor's rights (whether presently existing or arising in the future) under all contracts, claims and licenses that relate to operation of the hotel on the Real Property and may benefit its owner, including air rights, mineral rights, water rights, claims against third parties for damages to the Property, franchises, construction, roof and equipment guarantees and warranties, building licenses and permits, development permits, licenses and applications (whether or not yet approved or issued) management contracts, service contracts, leases of fixtures or of personal Property, and all of Debtor's right, title and interest (whether presently existing or arising in the future) in and to unearned insurance premiums, any greater estate in the Real Property, property management files, accounting books and records, site plans, surveys, blueprints, and construction drawings, plans and specifications, and the work product of architects, environmental consultants, property tax consultants, engineers, and any other third party contractors whose services benefit the Real Property.

8.    All contracts, leases, subleases, licenses, concessions, extensions, renewals and other agreements (whether written or oral, and whether presently effective or made in the future) through which Debtor grants any possessory interest in and to, or any right to occupy or use, all or any part of the Real Property, and any related guaranties.

9.    All rents, income, receipts, issues and profits and other benefits paid or payable for using, renting, leasing, licensing, possessing, operating from or in, residing in, selling, or otherwise enjoying the Real Property, whether presently existing or arising in the future, to which Debtor may now or hereafter become entitled or may demand or claim, including security deposits, room fees and rentals, revenues, all rights and claims of any kind which Debtor has or may in the future have against the guests or other

SR00523

occupants of the Real Property, all proceeds of any sale of the Real Property in violation of the documents securing that certain loan guarantied by Debtor for the benefit of Secured Party, any future award granted Debtor in any court proceeding involving any tenant in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and any and all payments made by any tenant in lieu of rent.

10.    All proceeds of all insurance now or hereafter carried by or payable to Debtor with respect to the Real Property, or the interruption of rents or income derived from the Real Property, all unearned insurance premiums and all related claims or demands.

11.    All money or other property that has been, or is in the future, awarded or agreed to be paid or given in connection with any taking by eminent domain of all or any part of the Real Property (including a taking through the vacation of any street dedication or through a change of grade of such a street), either permanent or temporary, or in connection with any purchase in lieu of such a taking, or as a part of any related settlement.

12.    All rights of Debtor to the present or future payment of money, if the amounts to be paid relate to the use or operation of the hotel or Real Property, accounts receivable, reserves, deferred payments, escrow funds, disputed rents, refunds (including tax, insurance and utility rebates, credits or refunds), earnest money or sales contract deposits, chattel paper, securities entitlements, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Secured Party).

SR00524

# Exhibit "B"

## Legal Description

Parcel 1:

Parcel 1 and Lettered Lot A, in the City of Palm Springs, County of Riverside, State of California, as shown by Parcel Map 18963, on file in Book 122, pages 79 and 80 of Parcel Maps. Records of Riverside County, California.

Parcel 2:

An easement for an underground Tunnel for underground passage and for all purposes connected therewith, along that certain 34.50 foot wide strip of land within Calle Encilia, as said street is shown on the supplemental plat of Section14, township 4 south, range 4 east, San Bernardino Base and Meridian (on file with the Department of Interior, General Land Office, Washington, D.C., on September 7, 1927) together with the Easterly 15.00 feet of Block 22 and the Westerly 15.00 feet of Block 21, all shown on said supplemental plat of Section 14, being 17.25 feet on each side of the following described centerline:

Commencing at the northeast cornor of said Block 22; thence West along the north line of said Block 22, a Distance of 15.00 feet to a point on a line that is parrallel with and 15.00 feet westerly of the eastery line said Block 22; thence South 0°00' 14" East along said parallel line, a distance of 100.91 feet to the true pont of beginning; thence South 83° 28' 35" East, a distance of 80.52 feet to a point on a line that is parallel with and 15.00 feet easterly of the weterly line of said Block 21, by document recorded July 22, 1985 as instrument no. 85-160369 of official records of Riverside County, California.

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Salvatore J. Reale
421 Indigo Springs
Henderson, Nevada  89014

Document Number:
2006032121-8

Filing Date and Time:
09-26-2006  12:11  PM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| **1a. ORGANIZATION'S NAME** | | | |
| USA INVESTORS VI, LLC | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4525 Sandhill Rd., Suite 114 | Las Vegas | NV | 89121 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | LLC | | Nevada | LLC14404-2002 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | |
|---|---|---|---|
| **3a. ORGANIZATION'S NAME** | | | |
| The Salvatore J. Reale Revocable Trust u/t/d November 15, 2004 | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 421 Indigo Springs | Henderson | NV | 89014 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE EXHIBITS "A" AND "B" ATTACHED HERETO AND INCORPORATED HEREIN.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

SR00526

Exhibit A to Financing Statement

Debtor:    USA INVESTORS VI, LLC

Secured Party: THE SALVATORE J. REALE REVOCABLE TRUST u/t/d 11/15/04

1.    All buildings and improvements (the "Improvements") of any kind erected or placed on that certain land situated in the City of Palm Springs, Riverside County, State of California, commonly known as the *Hotel Zoso Palm Springs* at 150 South Indian Canyon Drive, Palm Springs, California, and more particularly described on Exhibit B attached hereto (the "Land") together with the improvements and buildings located thereon (the "Real Property").

2.    All of Debtor's leasehold interest in and right to use the Land.

3.    All of Debtor's rights in the trade name *Hotel Zoso Palm Springs* and any derivative thereof, trademark, logos, trade styles, service marks, or copyrights related thereto.

4.    All of Debtors' rights in telephone numbers for the *Hotel Zoso Palm Springs*, including without limitation, (760) 325-9676 and (702) 969-6600.

5.    All equipment, furniture, furnishings and fixtures (attached and unattached), inventory or items located at the Real Property now or in the future that may be incorporated in the Real Property through construction, attachment or installation, or that are used, or are capable of being used, in the operation of the Real Property as a hotel or similar commercial real estate use, including but not limited to, (i) equipment, goods, materials, supplies, furniture and fixtures used in the operation of the hotel, (ii) furniture, fixtures, rugs, carpeting, furnishings, art work, decorations, window treatments and equipment located in the buildings, hotel rooms, lobbies, halls or other common areas, or used in connection with the operation of the hotel or used to maintain or operate the Real Property, (iii) goods, materials or equipment for use in the maintenance, alteration, landscaping or repair of the buildings, Real Property, lawn, landscaping, irrigation, security, incineration, and hazardous waste storage, monitoring, testing, containment or abatement supplies and equipment, (iii) electrical lights and fixtures (whether or not permanently wired), backup generators and related fuel storage and delivery systems, (vi) components of heating, ventilation and air conditioning systems and air quality testing equipment, (vii) spare or detached parts for elevators, escalators or other mechanical systems, (viii) all site or building plans and specifications, construction records, and architectural or engineering drawings relating to the Real Property, (ix) sewer or septic system components, (x) water wells, whether for purposes of water supply or groundwater testing or sampling, (xi) components of plumbing and water conditioning systems, (xii) firefighting, sprinkler or other fire safety equipment, (xiii) central telephone switches, antennae, satellite dishes or other telecommunication equipment,

SR00527

and (xiv) video conferencing equipment, audio equipment and cable television distribution systems.

6. Debtor's existing and future interests in all materials, supplies, equipment, apparatus and other items now or hereafter attached to or installed on the Land and Improvements in a manner that causes them to become fixtures under applicable law, including all built-in or attached furniture or appliances, elevators, escalators, heating, ventilating and air conditioning system components, emergency electrical generators and related fuel storage or delivery systems, septic system components, storm windows, doors, electrical equipment, plumbing, water conditioning, lighting, cleaning, lawn, landscaping, irrigation, security, incinerating, firefighting, sprinkler or other fire safety equipment, bridge cranes or other installed materials handling equipment, satellite dishes or other telecommunication equipment, built-in video conferencing equipment, sound systems or other audiovisual equipment, and cable television distribution systems.

7. All of Debtor's rights (whether presently existing or arising in the future) under all contracts, claims and licenses that relate to operation of the hotel on the Real Property and may benefit its owner, including air rights, mineral rights, water rights, claims against third parties for damages to the Property, franchises, construction, roof and equipment guarantees and warranties, building licenses and permits, development permits, licenses and applications (whether or not yet approved or issued) management contracts, service contracts, leases of fixtures or of personal Property, and all of Debtor's right, title and interest (whether presently existing or arising in the future) in and to unearned insurance premiums, any greater estate in the Real Property, property management files, accounting books and records, site plans, surveys, blueprints, and construction drawings, plans and specifications, and the work product of architects, environmental consultants, property tax consultants, engineers, and any other third party contractors whose services benefit the Real Property.

8. All contracts, leases, subleases, licenses, concessions, extensions, renewals and other agreements (whether written or oral, and whether presently effective or made in the future) through which Debtor grants any possessory interest in and to, or any right to occupy or use, all or any part of the Real Property, and any related guaranties.

9. All rents, income, receipts, issues and profits and other benefits paid or payable for using, renting, leasing, licensing, possessing, operating from or in, residing in, selling, or otherwise enjoying the Real Property, whether presently existing or arising in the future, to which Debtor may now or hereafter become entitled or may demand or claim, including security deposits, room fees and rentals, revenues, all rights and claims of any kind which Debtor has or may in the future have against the guests or other

SR00528

occupants of the Real Property, all proceeds of any sale of the Real Property in violation of the documents securing that certain loan guaranteed by Debtor for the benefit of Secured Party, any future award granted Debtor in any court proceeding involving any tenant in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and any and all payments made by any tenant in lieu of rent.

10.    All proceeds of all insurance now or hereafter carried by or payable to Debtor with respect to the Real Property, or the interruption of rents or income derived from the Real Property, all unearned insurance premiums and all related claims or demands.

11.    All money or other property that has been, or is in the future, awarded or agreed to be paid or given in connection with any taking by eminent domain of all or any part of the Real Property (including a taking through the vacation of any street dedication or through a change of grade of such a street), either permanent or temporary, or in connection with any purchase in lieu of such a taking, or as a part of any related settlement.

12.    All rights of Debtor to the present or future payment of money, if the amounts to be paid relate to the use or operation of the hotel or Real Property, accounts receivable, reserves, deferred payments, escrow funds, disputed rents, refunds (including tax, insurance and utility rebates, credits or refunds), earnest money or sales contract deposits, chattel paper, securities entitlements, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Secured Party).

## EXHIBIT "B"

### LEGAL DESCRIPTION

PARCEL 1:

Parcel 1 and Lettered Lot A, in the City of Palm Springs, County of Riverside, State of California, as shown by Parcel Map 18963, on file in Book 122, Pages 79 and 80 of Parcel Maps, Records of Riverside County, California.

PARCEL 2:

An easement for an underground Tunnel for underground passage and for all purposes connected therewith, along that certain 34.50 foot wide strip of land within Calle Encilia, as said street is shown on the Supplemental Plat of Section 14, Township 4 South, Range 4 East, San Bernardino Base and Meridian (on file with the Department of Interior, General Land Office, Washington, D.C., on September 7, 1927) together with the Easterly 15.00 feet of Block 22 and the Westerly 15.00 feet of Block 21, all shown on said Supplemental Plat of Section 14, being 17.25 feet on each side of the following described centerline:

Commencing at the Northeast corner of said Block 22; thence West along the North line of said Block 22, a Distance of 15.00 feet to a point on a line that is parrallel with and 15.00 feet Westerly of the Eastery line said Block 22; thence South 0°00' 14" East along said parallel line, a distance of 100.91 feet to the True Pont of Beginning; thence South 83° 28' 35" East, a distance of 80.52 feet to a point on a line that is parallel with and 15.00 feet Easterly of the Westerly line of said Block 21, by document recorded July 22, 1985 as Instrument No. 85-160369 of Official Records of Riverside County, California.

APNs: 508-081-008-0,
009-000-445-2, 009-607-578-4,
009-607-579-5, 508-081-008-0,
009-000-445-2, 009-000-445-2,
052115827-5, 009-607-578-4,
009-607-578-4, 052115825-3,
009-607-579-5, 009-607-579-5,
052115824-2,

Recording Requested By and
When Recorded Return To:

Marilyn Fine, Esq.
Meier & Fine, LLC
2300 W. Sahara Ave., Suite 430
Las Vegas, Nevada 89102

DOC # 2006-0710249
09/26/2006 08:00A Fee:20.00
Page 1 of 6
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
|   |   | N | 16 |   |   |   |   |   | 1 |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   | Me |   |   |   |   |   | 012 |

**UCC FINANCING STATEMENT**

C
012

21

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
| --- |

| B. SEND ACKNOWLEDGMENT TO: (Name and Address) |
| --- |
| Salvatore J. Reale<br>421 Indigo Springs<br>Henderson, Nevada 89014 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| USA INVESTORS VI, LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 150 South Indian Canyon Drive | Palm Springs | CA | 92262 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | | LLC | Nevada | LLC14404-2002 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| The Salvatore J. Reale Revocable Trust u/t/d November 15, 2004 | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 421 Indigo Springs | Henderson | NV | 89014 | USA |

**4.** This FINANCING STATEMENT covers the following collateral:

SEE EXHIBITS "A" AND "B" ATTACHED HERETO AND INCORPORATED HEREIN.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
| --- | --- | --- | --- | --- | --- | --- |
| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum (if applicable) | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

SR00532

Exhibit A to Financing Statement

Debtor:    USA INVESTORS VI, LLC

Secured Party: THE SALVATORE J. REALE REVOCABLE TRUST u/t/d 11/15/04

1.  All buildings and improvements (the "Improvements") of any kind erected or placed on that certain land situated in the City of Palm Springs, Riverside County, State of California, commonly known as the *Hotel Zoso Palm Springs* at 150 South Indian Canyon Drive, Palm Springs, California, and more particularly described on <u>Exhibit B</u> attached hereto (the "Land") together with the improvements and buildings located thereon (the "Real Property").

2.  All of Debtor's leasehold interest in and right to use the Land.

3.  All of Debtor's rights in the trade name *Hotel Zoso Palm Springs* and any derivative thereof, trademark, logos, trade styles, service marks, or copyrights related thereto.

4.  All of Debtors' rights in telephone numbers for the *Hotel Zoso Palm Springs*, including without limitation, (760) 325-9676 and (702) 969-6600.

5.  All equipment, furniture, furnishings and fixtures (attached and unattached), inventory or items located at the Real Property now or in the future that may be incorporated in the Real Property through construction, attachment or installation, or that are used, or are capable of being used, in the operation of the Real Property as a hotel or similar commercial real estate use, including but not limited to, (i) equipment, goods, materials, supplies, furniture and fixtures used in the operation of the hotel, (ii) furniture, fixtures, rugs, carpeting, furnishings, art work, decorations, window treatments and equipment located in the buildings, hotel rooms, lobbies, halls or other common areas, or used in connection with the operation of the hotel or used to maintain or operate the Real Property, (iii) goods, materials or equipment for use in the maintenance, alteration, landscaping or repair of the buildings, Real Property, lawn, landscaping, irrigation, security, incineration, and hazardous waste storage, monitoring, testing, containment or abatement supplies and equipment, (iii) electrical lights and fixtures (whether or not permanently wired), backup generators and related fuel storage and delivery systems, (vi) components of heating, ventilation and air conditioning systems and air quality testing equipment, (vii) spare or detached parts for elevators, escalators or other mechanical systems, (viii) all site or building plans and specifications, construction records, and architectural or engineering drawings relating to the Real Property, (ix) sewer or septic system components, (x) water wells, whether for purposes of water supply or groundwater testing or sampling, (xi) components of plumbing and water conditioning systems, (xii) firefighting, sprinkler or other fire safety equipment, (xiii) central telephone switches, antennae, satellite dishes or other telecommunication equipment,

and (xiv) video conferencing equipment, audio equipment and cable television distribution systems.

6.   Debtor's existing and future interests in all materials, supplies, equipment, apparatus and other items now or hereafter attached to or installed on the Land and Improvements in a manner that causes them to become fixtures under applicable law, including all built-in or attached furniture or appliances, elevators, escalators, heating, ventilating and air conditioning system components, emergency electrical generators and related fuel storage or delivery systems, septic system components, storm windows, doors, electrical equipment, plumbing, water conditioning, lighting, cleaning, lawn, landscaping, irrigation, security, incinerating, firefighting, sprinkler or other fire safety equipment, bridge cranes or other installed materials handling equipment, satellite dishes or other telecommunication equipment, built-in video conferencing equipment, sound systems or other audiovisual equipment, and cable television distribution systems.

7.   All of Debtor's rights (whether presently existing or arising in the future) under all contracts, claims and licenses that relate to operation of the hotel on the Real Property and may benefit its owner, including air rights, mineral rights, water rights, claims against third parties for damages to the Property, franchises, construction, roof and equipment guarantees and warranties, building licenses and permits, development permits, licenses and applications (whether or not yet approved or issued) management contracts, service contracts, leases of fixtures or of personal Property, and all of Debtor's right, title and interest (whether presently existing or arising in the future) in and to unearned insurance premiums, any greater estate in the Real Property, property management files, accounting books and records, site plans, surveys, blueprints, and construction drawings, plans and specifications, and the work product of architects, environmental consultants, property tax consultants, engineers, and any other third party contractors whose services benefit the Real Property.

8.   All contracts, leases, subleases, licenses, concessions, extensions, renewals and other agreements (whether written or oral, and whether presently effective or made in the future) through which Debtor grants any possessory interest in and to, or any right to occupy or use, all or any part of the Real Property, and any related guaranties.

9.   All rents, income, receipts, issues and profits and other benefits paid or payable for using, renting, leasing, licensing, possessing, operating from or in, residing in, selling, or otherwise enjoying the Real Property, whether presently existing or arising in the future, to which Debtor may now or hereafter become entitled or may demand or claim, including security deposits, room fees and rentals, revenues, all rights and claims of any kind which Debtor has or may in the future have against the guests or other

occupants of the Real Property, all proceeds of any sale of the Real Property in violation of the documents securing that certain loan guarantied by Debtor for the benefit of Secured Party, any future award granted Debtor in any court proceeding involving any tenant in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and any and all payments made by any tenant in lieu of rent.

10. All proceeds of all insurance now or hereafter carried by or payable to Debtor with respect to the Real Property, or the interruption of rents or income derived from the Real Property, all unearned insurance premiums and all related claims or demands.

11. All money or other property that has been, or is in the future, awarded or agreed to be paid or given in connection with any taking by eminent domain of all or any part of the Real Property (including a taking through the vacation of any street dedication or through a change of grade of such a street), either permanent or temporary, or in connection with any purchase in lieu of such a taking, or as a part of any related settlement.

12. All rights of Debtor to the present or future payment of money, if the amounts to be paid relate to the use or operation of the hotel or Real Property, accounts receivable, reserves, deferred payments, escrow funds, disputed rents, refunds (including tax, insurance and utility rebates, credits or refunds), earnest money or sales contract deposits, chattel paper, securities entitlements, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Secured Party).

EXHIBIT "B"

LEGAL DESCRIPTION

PARCEL 1:

PARCEL 1 AND LETTERED LOT A, IN THE CITY OF PALM SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY PARCEL MAP 18963, ON FILE IN BOOK 122, PAGES 79 AND 80 OF PARCEL MAPS. RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 2:

AN EASEMENT FOR AN UNDERGROUND TUNNEL FOR UNDERGROUND PASSAGE AND FOR ALL PURPOSES CONNECTED THEREWITH, ALONG THAT CERTAIN 34.50 FOOT WIDE STRIP OF LAND WITHIN CALLE ENCILIA, AS SAID STREET IS SHOWN ON THE SUPPLEMENTAL PLAT OF SECTION 14, TOWNSHIP 4 SOUTH, RANGE 4 EAST, SAN BERNARDINO BASE AND MERIDIAN (ON FILE WITH THE DEPARTMENT OF INTERIOR, GENERAL LAND OFFICE, WASHINGTON, D.C., ON SEPTEMBER 7, 1927) TOGETHER WITH THE EASTERLY 15.00 FEET OF BLOCK 22 AND THE WESTERLY 15.00 FEET OF BLOCK 21, ALL SHOWN ON SAID SUPPLEMENTAL PLAT OF SECTION 14, BEING 17.25 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

COMMENCING AT THE NORTHEAST CORNOR OF SAID BLOCK 22; THENCE WEST ALONG THE NORTH LINE OF SAID BLOCK 22, A DISTANCE OF 15.00 FEET TO A POINT ON A LINE THAT IS PARRALLEL WITH AND 15.00 FEET WESTERLY OF THE EASTERY LINE SAID BLOCK 22; THENCE SOUTH 0°00' 14" EAST ALONG SAID PARALLEL LINE, A DISTANCE OF 100.91 FEET TO THE TRUE PONT OF BEGINNING; THENCE SOUTH 83° 28' 35" EAST, A DISTANCE OF 80.52 FEET TO A POINT ON A LINE THAT IS PARALLEL WITH AND 15.00 FEET EASTERLY OF THE WETERLY LINE OF SAID BLOCK 21, BY DOCUMENT RECORDED JULY 22, 1985 AS INSTRUMENT NO. 85-160369 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

SR00536