Marc A. Levinson (California Bar No. 57613)
Jeffery D. Hermann (California Bar No. 90445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone: (916) 447-9200
Facsimile: (916) 329-4900
Email: malevinson@orrick.com
       jhermann@orrick.com

Robert Kinas (Nevada Bar No. 6019)
Claire Y. Dossier (Nevada Bar No. 10030)
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
       cdossier@swlaw.com

Attorneys for USA Capital
Diversified Trust Deed Fund, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>　　　　　　　　　　　　　Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>　　　　　　　　　　　　　Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>　　　　　　　　　　　　　Debtor. | **REPLY TO SALVATORE REALE'S OPPOSITION TO MOTION TO ESTABLISH DISPUTED CLAIM RESERVE** |
| In re:<br>USA SECURITIES, LLC,<br>　　　　　　　　　　　　　Debtor. | Hearing: |
| Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Date: December 5, 2007<br>Time: 9:30 a.m.<br>Place: Courtroom 1, Foley Federal Building |

USA Capital Diversified Trust Deed Fund, LLC, a revested debtor in the above-captioned cases ("Diversified"), hereby submits this reply to the opposition filed by Salvatore J. Reale ("Reale") to Diversified's Motion to Establish Disputed Claim Reserve (the "Reale Opposition" [Docket 5386] to the "Reserve Motion" [Docket 5250]).

160084.1

In the Reserve Motion, Diversified seeks this Court's approval to make a first distribution of $3 million to its 1,300+ investors by establishing a zero reserve for the claims filed by Reale and by the so-called McGimsey claimants. In a pleading filed on November 19, 2007 [Docket 5381], the McGimsey claimants agreed to a zero reserve for purposes of such a distribution. The Reale Opposition contests the Reserve Motion. As is discussed in this short reply, the Reale Opposition ought to be overruled for several reasons, and a zero reserve should be ordered with respect to the claim asserted by Reale in his approximately $4.9 million proof of claim ("Reale Proof of Claim").

### A. *The Reale Proof of Claim Lacks Merit.*

In the Reserve Motion, Diversified noted that the Reale Proof of Claim lacked merit, observing:

> The Reale Proof of Claim is devoid of any legal theory of liability against Diversified, and is similarly devoid of any factual basis for Reale to have any dispute or dissatisfaction whatsoever with Diversified.

Reserve Motion, p. 5 ll. 21-23.

The Reale Opposition responds by referencing the agreement by Diversified in 2003 to purchase Reale's $2,050,000 promissory note (evidencing the "Shadrock Loan") for $2,050,000, and stating, "Reale, however, never received the payment." Reale Opposition, p. 2, ll. 18–19. Notwithstanding the fact that he claims that he did not receive the money, Reale apparently does not dispute the fact that Diversified paid the money into the subject escrow account as consideration for the purchase of the Shadrock Loan.[1]

Because Reale's claim against Diversified is premised on his assertion that he was

---

[1] Indeed, had Diversified failed to do so, the escrow would not have closed, Reale would have continued to own the Shadrock Loan, and the "Assignment of Beneficial Interest In Deed of Trust" (a copy of which is attached to the Reale Proof of Claim) evidencing the purchase by Diversified of the Shadrock Loan would not have been released from escrow and recorded with the Riverside California County Recorder on September 17, 2003. As evidenced by paragraphs 5 and 7 of the declaration of Geoffrey Berman, trustee of the USACM Liquidating Trust, attached as Exhibit D to the Declaration of Rachel Patience Ragni in Support of Motion to Establish Disputed Claim Reserve [Docket No. 5250] ("Ragni Decl."), DTDF transferred $2.1 million to First American Title on September 15, 2003, and USAIP received a wire transfer of $2.05 million on September 18, 2003. Thus, Reale can hardly dispute that Diversified paid the full purchase price for the purchase of the Shadrock Loan.

160084.1

- 2 -

never paid for the sale of the Shadrock Loan, the Court can dispose of Reale's dispute with Diversified by reference to the very exhibits attached to the Reale Proof of Claim, one of which is escrow instructions embodying an agreement whereby Reale agreed that the escrow agent should forward $2.05 million of the purchase price received from Diversified to USA Investment Partners, LLC ("USAIP") and that Reale would receive the benefit of that payment to USAIP by Diversified by increasing by $2.05 million the balance of the promissory note owing personally from Joe Milanowski and Tom Hantges (the "M/H Note").[2] Thus, contrary to the assertion in the Reale Opposition, Reale was indeed paid as instructed for his sale of the M/H Note to Diversified.

Reale now apparently maintains that, even though Diversified made payment to the escrow account, even though the escrow agent complied with Reale's escrow instructions regarding payment, and even though Diversified has already paid over $2 million to purchase the Shadrock Loan, Diversified should be forced to pay a second time to purchase the Shadrock Loan, in a transaction that was consummated and put to bed to everyone's satisfaction many years ago.[3]

In the Reale Opposition, Reale discusses his difficulties and travails in collecting the amounts owed to him on the M/H Note, all without any evidentiary support whatsoever. But

---

[2] In connection with the "Agreement For Purchase of Loan" attached to the Reale Proof of Claim, Diversified and Reale also specifically agreed as to how the proceeds of the sale would be handled. Pursuant to a letter dated September 15, 2003 (also attached to the Reale Proof of Claim), Reale instructed the escrow agent to distribute $2.05 million of the sales proceeds received from Diversified to USAIP and to deliver the remaining $50,000 received from Diversified to USACM. (Ragni Decl., Exh. C). Diversified rendered full performance, and funds were transferred by Diversified to escrow in accordance with these instructions. (Ragni Decl., Exh. D). As evidence of the fact that Reale contemporaneously acknowledged that he indeed received from Diversified the benefit of the sales proceeds he bargained for and in accordance with his instructions to the escrow agent, the M/H/ Note was amended to reflect a $2.05 million increase in the amount owed to Reale. (Ragni Decl., Exh. E). If Diversified had failed to pay the purchase price into escrow or if the monies had not been disbursed by the escrow agent as instructed by Reale, there could have been no such increase in the M/H Note.

[3] Although Reale now maintains that he never received payment for the Shadrock Loan, he proffers no contemporaneous evidence that he articulated this complaint to USACM or DTDF at any time whatsoever prior to filing the Reale Proof of Claim. If he truly believed for all these years that he had **_not_** been paid in excess of **_$2 million_** that was owed to him, would he not have raised a ruckus about it? In addition, although not raised in the Opposition, to the extent that Reale complains that he wished that he had kept the Shadrock Loan and not sold it to Diversified (seller's remorse?), in paragraph I on page 4 of the Agreement For Purchase of Loan, Reale acknowledged that he understood that a potential purchaser for the real property collateral for the Shadrock Loan existed and that the Shadrock Loan may thereby be paid in full, and in paragraph K on page 4 thereof, Reale acknowledged that he had independently verified for himself all relevant facts bearing upon his decision to sell the Shadrock Loan and acknowledged that "USA has repeatedly inquired of his desire to make this Agreement in light of the aforementioned potential sale of the Shadowrock property to a third party".

160084.1

- 3 -

any collection problems are irrelevant to his claim against Diversified because Diversified paid the purchase price required of it and Reale received from Diversified exactly the consideration he bargained for, in exactly the form he bargained for, on account of the sale of the Shadrock Loan to Diversified. Certainly, Reale's decision to lend the Shadrock Loan sales proceeds was his own business decision, and his problems in collecting on the resulting loan evidenced by the M/H Note should not result in Diversified being forced to pay twice to purchase the Shadrock Loan.

Thus, the Court can conclude that there is no merit whatsoever to Reale's claim simply by reference to the Reale Proof of Claim itself and the exhibits attached thereto, and on that basis alone, should set the reserve amount at zero.

### B. *The Reale Proof of Claim was Untimely.*

Diversified also observed in the Reserve Motion that the Reale Proof of Claim was filed ten months after the November 13, 2006, Bar Date, and argued that it should be disallowed on that alternative basis as well. The Reale Opposition argues that Reale considered himself to be fully paid on the M/H Note until June of 2007, when this Court approved Reale's settlement of the adversary proceeding in the HMA case. Reale Opposition, p. 3, ll. 19-24. Whatever sense can be made from this assertion, it is certainly not the case that Reale considered himself to be fully paid on the Bar Date, since, as this Court is well aware, Reale received payment on the M/H Note from the proceeds of the sale of the Royal Hotel on or about December 23, 2006, over a month after the Bar Date.[4] Since Reale clearly had knowledge of whatever claim he thinks he had on the Bar Date, thereby triggering his obligation to timely file a proof of claim, and since the Reale Opposition proffers no other explanation for his failure to file a timely proof of claim, the Court can determine that there is no merit to the Reale Proof of Claim on this independent basis, and accordingly, the Court can set the reserve amount at zero.[5]

Any other arguments that can be discerned from the Reale Opposition are irrelevant in determining the proper amount of a reserve for the Reale Proof of Claim in that the

---

[4] To the extent that Reale maintains that he had been fully paid on account of the $2.05 million addition to the M/H Note, such an assertion totally undercuts the entire basis for Reale's claim, as discussed above.

[5] Of course, whether or not the Reale Proof of Claim was timely filed is moot if the Court determines there is no merit to the claim.

160084.1

- 4 -

1  Court may determine that the claim should be disallowed and the reserve amount set at zero for
2  either or both of the reasons set forth above.
3       Pursuant to the claims reserve procedure set forth in the Plan, the Court should
4  determine that no reserve is required for the Reale Proof of Claim, or alternatively, set a reserve
5  in a nominal amount, thus permitting the $3 million distribution to Diversified members to go
6  forward.
7       Dated this 28th day of November, 2007.

SNELL & WILMER LLP

By: /s/ Claire Y. Dossier
Robert Kinas (Nevada Bar No. 6019)
Claire Y. Dossier (Nevada Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200

Marc A. Levinson (California Bar No. 57613)
Jeffery D. Hermann (California Bar No. 904445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capital Mall, Suite 3000
Sacramento, CA 95814-4497

*Attorneys for USA Capital Diversified Trust Deed Fund, LLC*

160084.1

- 5 -