1

**EXHIBIT C**

2

3     **<u>Binford's Proof of Claim</u>**

4     **[see attached]**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bullivant|Houser|Bailey PC
3883 Howard Hughes Parkway, Suite 550
Las Vegas, Nevada 89169
Telephone: (702) 6569-3600
Facsimile: (702) 650-2995

13

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA | PROOF OF CLAIM |
|---|---|

Schedule/Claim ID    s579

| Name of Debtor: | Case Number: |
|---|---|
| **USA Commercial Mortgage Company** | 06-10725-LBR |

**E-Filed On** 11/13/06

No. ___ See Reverse for List of Debtors and Case Numbers.
This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor and Address:**
11321280009794
BINFORD MEDICAL DEVELOPERS, LLC
5200 E 64TH ST
INDIANAPOLIS, IN 46220-4708

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court or BMC Group in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the court.

**DO NOT FILE THIS PROOF OF CLAIM FOR A SECURED INTEREST IN A BORROWER THAT IS NOT ONE OF THE DEBTORS.**

If you have already filed a proof of claim with the Bankruptcy Court or BMC, you do not need to file again.

**THIS SPACE IS FOR COURT USE ONLY**

Creditor Telephone Number (   )

Last four digits of account or other number by which creditor identifies debtor:
**Binford Medical Developers LLC**

Check here ☐ replaces / ☒ amends if this claim    a previously filed claim dated 11/09/06

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (describe briefly)

attached Complaint. Breach of Contract, Intentional Misrepresentation and other theories in

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #:
Unpaid compensation for services performed from: ___ to ___
☐ Unremitted principal
☐ Other claims against service (not for loan balances)

**2. DATE DEBT WAS INCURRED:** June 2006

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

UNSECURED NONPRIORITY CLAIM $3,502,383.00
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**SECURED CLAIM**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief description of collateral:
☐ Real Estate ☐ Motor Vehicle ☐ Other ___
Value of Collateral: $ ___
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ ___

☐ SECURED PRIORITY CLAIM
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
Amount entitled to priority $ ___
Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000)*, earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( ___ ).
* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:** $ 3,502,383.00 (unsecured) | $ ___ (secured) | $ ___ (priority) | $3,502,383.00 (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. DATE-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

The original of this completed proof of claim form must be sent by mail or hand delivered (FAXES NOT ACCEPTED) so that it is actually received on or before 5:00 pm, prevailing Pacific time, on November 13, 2006 for each person or entity (including individuals, partnerships, corporations, joint ventures, trusts and governmental units).
BY MAIL TO: BMC Group, c: USACM Claims Docketing Center, ). Box 911, _ Segundo, CA 90245-0911
BY HAND OR OVERNIGHT DELIVERY TO: BMC Group, Attn: USACM Claims Docketing Center, 1330 East Franklin Avenue, El Segundo, CA 90245

THIS SPACE FOR COURT USE ONLY

| DATE 11/13/06 | SIGN and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|

1  | **COMPLAINT**                                           E-Filed On 11/7/06
   | SUSAN WILLIAMS SCANN, ESQ.
2  | Nevada Bar No. 000776
   | PAUL R. CONNAGHAN, ESQ.
3  | Nevada Bar No. 003229
   | DEANER, DEANER, SCANN, MALAN & LARSEN
4  | 720 South Fourth Street, Suite #300
   | Las Vegas, Nevada  89101 (702) 382-6911
5  | Attorneys for Plaintiff Binford Medical Developers, LLC

6  |
   |                    UNITED STATES BANKRUPTCY COURT
7  |                        FOR THE DISTRICT OF NEVADA

8  | In re:                                    )    Case No.  BK-S-06-10725 LBR
   | USA COMMERCIAL MORTGAGE                    )    Case No.  BK-S-06-10726 LBR
9  | COMPANY,                                   )    Case No.  BK-S-06-10727 LBR
   |                                            )    Case No.  BK-S-06-10728 LBR
10 |                Debtor                      )    Case No.  BK-S-06-10729 LBR
   | In re:                                     )
11 | USA CAPITAL REALTY ADVISORS, LLC.          )    Chapter 11
   |                                            )    Jointly Administered Under
12 |                Debtor                      )    Case No. BK-S-06-10725 LBR
   | In re:                                     )
13 | USA CAPITAL DIVERSIFIED TRUST              )    Adversary No.
   | DEED FUND, LLC.                            )
14 |                                            )    Date of Hearing:
   |                Debtor                      )    Time of Hearing:
15 | In re:                                     )
   | USA CAPITAL FIRST TRUST                    )    Affects:
16 | DEED FUND, LLC.                            )    ☒USA Commercial Mortgage Company
   |                                            )    ☐USA Capital Diversified Trust Deed Fund, LLC
17 |                Debtor                      )    ☐ USA Capital First Trust Deed Fund, LLC
   | In re:                                     )    ☐USA Securities, LLC
18 | USA SECURITIES, LLC.                       )    ☐USA Realty Advisors, LLC
   |                                            )    ☐All Debtors
19 |                Debtor                      )
   |                                            )
20 | BINFORD MEDICAL DEVELOPERS,                )
   | LLC, an Indiana Limited Liability          )
21 | Company,                                   )
   |                       Plaintiff,           )
22 |          vs.                               )
   |                                            )
23 | USA COMMERCIAL MORTGAGE                    )
   | COMPANY and FIDELITY NATIONAL              )
24 | TITLE GROUP                                )
   |                       Defendants.          )
25 |                                            )

26 |                          **ADVERSARY COMPLAINT**

27 |        COMES NOW, BINFORD MEDICAL DEVELOPERS, LLC, by and through its attorneys,

28 | SUSAN WILLIAMS SCANN, ESQ. and PAUL R. CONNAGHAN, ESQ. of the law firm of

1  DEANER, DEANER, SCANN, MALAN and LARSEN,  and for its Complaint against the

2  Defendants, USA COMMERCIAL MORTGAGE COMPANY, USA CAPITAL FIRST TRUST

3  DEED FUND, LLC, FIDELITY NATIONAL TITLE GROUP, and alleges as follows:

4                                                    **PARTIES**

5      1.      Plaintiff Binford Medical Developers, LLC is an Indiana limited liability company

6  ("Binford") formed for the purpose of acquiring, developing and constructing office space known as

7  the Binford Medical Complex ("the Property").

8      2.      Defendant USA Commercial Mortgage Company ("USACM") is the Debtor entity in

9  this jointly administered Chapter 11 proceeding.  Fidelity National Title Group ("Fidelity") holds the

10  construction funds for Binford and is being sued in interpleader, only in its capacity as construction

11  disbursement service for those funds.

12      3.      The direct lenders ("Direct Lenders") are a group of individuals, trusts, associations,

13  or other interests which, pursuant to the terms of a Loan Servicing Agreement (the "LSA "),

14  collectively through their duly authorized agent, USACM, entered into a lending arrangement with

15  the Plaintiff for the acquisition and development of the Property (the "Loan" or "Construction

16  Loan"). USACM was authorized by each of the Direct Lenders to undertake such actions, enter into

17  such arrangements, and otherwise to perform such acts as were necessary or appropriate to enter into

18  lending relationships with borrowers solicited and obtained by USACM including, in this instance,

19  the Plaintiff. At all times pertinent, USACM was the duly authorized agent of the Direct Lenders for

20  any and all purposes relating to such lending relationships, including that with Plaintiff.

21                                    **JURISDICTION AND VENUE**

22      4.      The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. 151,

23  157 and 1334, and pursuant to one or any combination of the following: 11 U.S.C. 105, 541, 542,

24  543, 544, 545, 546, 547, 548, 549 and 550, Bankruptcy Rule 7001 and Local Rule 900, Local Rules

25  of Practice, United States District Court, District of Nevada.  This is a core proceeding over which

26  this Court has jurisdiction under Title 28 U.S.C. 157(b).  If any claim for relief is not a core

27

28                                                    2

1  proceeding, Plaintiff hereby consents to determination of these claims by this Court.

2  5. The Defendant has sufficient minimum contacts with the District of Nevada to bring it
3  within the jurisdiction of the courts of the District of Nevada.

4  **GENERAL ALLEGATIONS**
5  **FACTUAL BACKGROUND**

6  6.  In 2005, Plaintiff approached the authorized agents of USACM (itself the
7  duly authorized agent and representative of the Direct Lenders) to discuss and negotiate a
8  loan sufficient to refinance and to undertake the requisite construction and development of
9  the first building on the Property.

10  7.  Negotiations continued between the representatives of the Plaintiff, and the
11  duly authorized representatives and agents of USACM including, without limitation, Joseph
12  D. Milanowski ("Milanowski"). At all times during such ongoing negotiations, Milanowski,
13  and the other authorized agents and representatives of USACM (itself the duly authorized
14  agent and representative of the Direct Lenders) were well aware of Plaintiff's borrowing
15  needs and, accordingly, committed to fund the total Loan amount of $8, 375,000.00.

16  8.  Based upon the foregoing, Milanowski, and the other duly authorized agents
17  and representatives of USACM with whom Plaintiff dealt (USACM being the duly
18  authorized agent and representative of the Direct Lenders) well knew that the failure to fund
19  all of the requested Loan would significantly harm and damage Plaintiff, prohibit the
20  development and construction and would, in effect, destroy the purpose of the loan.

21  9.  At all times throughout the negotiations, Milanowski, and the other duly
22  authorized agents and representatives of USACM (itself the duly authorized agent and
23  representative of the Direct Lenders) promised and assured the Plaintiff that the entire
24  amount needed to construct the first building on the Property would, in fact, be funded. The
25  proposed lending arrangement was otherwise a relatively high interest rate and with a
26  relatively high origination fee of $418,750.00 which was paid in advance to USACM on the
27  entire $8,375,000 budgeted loan amount.

28  3

1      10.    In order to evidence the agreed lending relationship between the Direct

2  Lenders, acting by and through their authorized agent and representative, USACM, and the

3  Plaintiff, the following documents, among others, were executed:

4          (a)    The Construction Loan Agreement;

5          (b)    That certain Promissory Note Secured by Deed of Trust dated March 1,

6                  2006, in the originally stated principal amount of $4,250,000.00

7                  (the "Note");

8          (c)    That certain Deed of Trust, Assignment of Rents, Security Agreement

9                  and Fixture Filing dated August 31, 2005, executed by the Plaintiff in

10                 favor of USACM, as agent for The Direct Lenders (the "Trust Deed").

11                 USACM is also the servicer of the loan for the Direct Lenders.

12      11.    In order to insure that the entire $8,375,000.00 would be advanced, Binford

13  and USACM entered into a separate agreement whereby USACM committed to fund all

14  amounts above the initial disbursement of $4,250,000.00 up to $8,375,000.00 from its own

15  funds. USACM also committed to cause the Direct Lenders to forbear from exercising any

16  rights or remedies during the term of any default by USACM. A true and correct copy of that

17  agreement, dated August 30, 2005, is attached hereto as Exhibit 1 and incorporated by

18  reference herein (the "USACM Agreement").

19      12.    After the disbursement of the initial amount, Plaintiff encountered difficulties

20  with its contractor and had to change contractors due to USACM'S practices, which resulted

21  in an early deposit into the construction control fund of $500,000.00 and a delay of four

22  months. The result of this was to prematurely deplete the interest portion of the loan.

23  USACM, through Joseph Milanowski, committed to increase the loan amount an additional

24  $1,000,000.00 to allow for funding for this extra interest.

25      13.    Notwithstanding the Construction Loan Agreement, the Note and the Trust

26  Deed, and USACM Agreement, only $7,450,000.00 was funded not $8,375,000.00 although

27  the Plaintiff paid origination fees on the shortfall of $46,250.00 (5% of $925,000.00). At the

28                                   4

1   filing date $1,935,000.00 was on deposit in the Fidelity account.   Approximately
2   $330,000.00 of that $1,935,000.00 remains in the construction control account at Fidelity
3   because USACM has demanded that it be disbursed to pay interest while USACM is in
4   default under its obligations under the USACM Agreement. Fidelity will not release these
5   funds without a court order.

6       14.     Notwithstanding the implicit representations and commitments made by
7   Milanowski and the other duly authorized agents and representatives of USACM of financial
8   strength and stability, and unbeknownst to Plaintiff, USACM, and its affiliated entities,
9   including without limitation, USA Capital First Trust Deed Fund, LLC (the "Fund"), were
10  then in dire financial straights, with an ever-worsening financial condition. Unbeknownst to
11  Plaintiff, USACM had apparently, among other things, pooled monies received as payments
12  on various loans, and disbursed such amounts to investors on all loans regardless of the
13  source of the actual  payment; had compromised the total amount of certain indebtedness, or,
14  at least, had not remitted the applicable amounts to the investors on any specific loan; had
15  released collateral or comprised or satisfied certain debts without the knowledge of or
16  payment to the applicable investors; and/or had engaged in other acts and practices, including
17  the diversion of funds, from the appropriate, ultimate payee.

18      15.     Upon information and belief, by the time the documents evidencing the
19  Construction Loan between Plaintiff and the Direct Lenders were executed in August, 2005,
20  the authorized agents and representatives, including Milanowski, of USACM (which itself
21  was acting as the duly authorized agent and representative for the Direct Lenders) were well
22  aware of the dire financial straights in which USACM and its affiliated entities, including the
23  Trust, then existed; that existing management, including Milanowski, was likely to be
24  replaced (and in fact has now been replaced by Thomas Allison ("Allison") of Mesirow
25  Interim Financial Management, LLC) and that the filing of bankruptcy was likely if not
26  imminent. All such authorized representatives and agents likewise knew that, upon the filing
27  of bankruptcy, or, simply because of the deteriorating financial condition of USACM and its

28                                            5

1    affiliated entities, that the ultimate funding of the entire Construction Loan was in jeopardy
2    to occur. Notwithstanding such knowledge, the authorized agents and representatives of
3    USACM (itself the duly authorized agent and representative of the Direct Lenders) induced
4    Plaintiff to close on the Construction Loan and to continue development of the Property,
5    knowing the damage that would ensue from the later failure to fund. Upon information and
6    belief, USACM, the duly authorized agent and representative of the Direct Lenders,
7    undertook the actions and conduct described herein in order to obtain the origination fee and
8    to provide additional monies as a source of funds to add to the pool for potential
9    disbursement to the direct lenders on various loans.

10         16.    On April 13, 2006, USACM and various other affiliated entities filed
11    voluntary petitions under the provisions of Chapter 11 of Title 11 of the United States
12    Code(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of
13    Nevada. All such cases remain pending. Since the filing of the bankruptcy cases, former
14    management of USACM (including Milanowski) has been displaced and Allison appointed
15    as the Chief Restructuring Officer of USACM and its affiliated debtors.

16         17.    Consequently, and notwithstanding the promises, commitments, representations
17    and agreements of the duly authorized agents and representatives, including Milanowski, of
18    USACM (itself the duly authorized agent and representative of the Direct Lenders), and the
19    terms of the Construction Loan Agreement and the USACM Agreement, USACM ceased
20    further funding of the Construction Loan, despite Plaintiff's draw requests.

21         18.    Because of the cessation of funding, construction at the Property has slowed,
22    the general contractor and his sub-contractors have not been fully paid, Plaintiff has been
23    forced to borrow short term funds at higher interest rates, and the project is at a substantial
24    risk of becoming, and is likely to become, embroiled in significant construction and other
25    litigation. Plaintiff has now likewise been advised that because of the delay in construction,
26    if and when construction is able to be completed the cost of the required construction
27    materials and labor will have increased by an amount in excess of several hundred thousand
28

6

1   to one million or more. Finally, and because of the slow down in construction as a result of
2   USCAM'S cessation of funding, Plaintiff has lost most of its tenants, has been unable to
3   close on its permanent financing and pay off the USACM loan.

4          19.    Plaintiff has been required to retain the services of Deaner, Deaner, Scann,
5   Malan and Larsen to enforce its rights and pursue the claims set forth herein, and has agreed
6   to pay such attorneys a reasonable fee for their services.

7          20.    All conditions precedent to the institution of this action have been waived,
8   excused, or otherwise performed.

9                              **FIRST CLAIM FOR RELIEF**
                                   (Breach of Contract)

10
           21.    Plaintiff realleges each and every allegation contained in Paragraphs 1 through
11
    20 of their General Allegations and by this reference incorporate the same herein as though
12
    fully set forth herein.
13
           22.    This is an action for damages, in excess of $10,000.00 which includes delays,
14
    extra interest and lost tenants, exclusive of interest, fees and costs.
15
           23.    As set forth above, the failure of the USACM to fund the Construction Loan
16
    post-petition in its entirety, constitutes a breach of the Construction Loan Agreement and the
17
    USACM Agreement, and the overall loan commitment made to Plaintiff by the USACM.
18
           24.    As set forth above, the damage incurred by the Plaintiff as a result of the breach
19
    of the Construction Loan Agreement, the Note, and the USCAM Agreement is extensive,
20
    ongoing, and increasing.
21
           25.    USACM is liable to Plaintiff for the amount of its attorney's fees and expenses
22
    incurred in bringing this action and seeking the relief herein.
23
           26.    USACM is liable for such damage in an amount to be proven at trial.
24
                              **SECOND CLAIM FOR RELIEF**
25                    (Breach of the Covenant of Good Faith and Fair Dealing)

26         27.    Plaintiff realleges and incorporates all of the allegations contained in

27

28                                          7

1  Paragraphs 1 through 26 of General Allegations and the First Claim for Relief as though
2  fully set forth herein.

3      28.    This is an action for damages in excess of $10,000.00, exclusive of interest, fees
4  and costs.

5      29.    The Construction Loan Agreement and the USACM Agreement includes a
6  covenant of good faith and fair dealing in the performance of each contractual obligation.

7      30.    The failure by USCAM to fund the entire Construction Loan after inducing the
8  Plaintiff into the Loan, constitutes a breach of the implied covenant of good faith and fair
9  dealing.

10      31.    As a consequence of the breach of such implied covenant of good faith and fair
11  dealing, and as set forth above, Plaintiff has incurred extensive damage, which is ongoing and
12  increasing.

13      32.    USACM is liable to Plaintiff for such damages in an amount to be
14  proven at trial.

15      33.    USACM is liable to Plaintiff for the amount of the attorneys' fees and costs
16  incurred by it in brining this action and seeking the relief herein.

17              **THIRD CLAIM FOR RELIEF**
              (Intentional Misrepresentations)

18      34.    Plaintiff realleges and incorporates all of the allegations contained in
19  Paragraphs 1 through 33 of the General Allegations, First and Second Claim for Relief as
20  though fully set forth herein.

21      35.    This is an action for damages in excess of $10,000.00 exclusive of interest, fees
22  and costs.

23      36.    As set forth above, Milanowski, and the other duly authorized agents and USACM
24  (itself the duly authorized agent and representative of the Direct Lenders), repeatedly represented
25  to the Plaintiff that the entire Construction Loan would be funded, notwithstanding any contrary
26  language in the documents utilized by USACM in its business practices. Such representations
27

28                              8

1  were made at a time when the duly authorized representatives of USACM knew that given the
2  dire financial circumstances of USACM and its affiliated entities that the total Loan amount
3  would likely not be funded. Such false representations were made in order to induce reliance
4  thereon by Plaintiff. But for such materially false representations and inducements, Plaintiff
5  would not have entered into the Loan and would have sought financing elsewhere.

6          37.    Plaintiff did, in fact, rely upon such false, material representations and
7  inducements in entering into the Loan, and in contracting and incurring the commencement of
8  construction on the expenses in attempting to develop the Property.

9          38.    Based upon such materially false representations and inducements by the duly
10 authorized agents and representatives of the Direct Lenders, made with the intent that Plaintiff
11 rely and upon which it did in fact rely, Plaintiff has incurred extensive damage, which is ongoing
12 and increasing.

13         39.    USACM is liable to Plaintiff for such damage in an amount to be proven at trial.

14                              **FOURTH CLAIM FOR RELIEF**
                                    (Declaratory Relief)
15
           40.    Plaintiff realleges and incorporates all of the allegations contained in Paragraphs 1
16
   through 39 of the General Allegations, First, Second and Third Claim for Relief as though fully set
17
   forth herein.
18
           41.    The controversy arising in this matter and the terms of the Construction Loan and the
19
   USACM Agreement are ripe for declaratory relief.
20
           42.    The Court may declare based upon the Loan documents, and the USACM Agreement
21
   that Plaintiff is entitled to a declaratory judgment that until the loan is fully funded, USACM must
22
   forbear from collection and other activities until the loan is fully funded. Plaintiff is also entitled to a
23
   declaration that the funds on deposit with Fidelity belong to Plaintiff.
24
                                **FIFTH CLAIM FOR RELIEF**
25                                      (Injunction)
                                       (Interpleader)
26
           43.    Plaintiff realleges and incorporates all of the allegations contained in Paragraphs 1
27

28                                            9

1    through 42 of the General Allegations, First, Second, Third and Fourth Claim for Relief as though

2    fully set forth herein.

3        44.    The Debtors demand the application of the $330,000.00 in the Fidelity account to

4    payment to interest but have failed to fund the balance of $925,000.00 and that the USA Defendants

5    and the Direct Lenders forbear from taking any action to collect on the note and deed of trust until

6    the loan is fully funded.

7        45.    Plaintiff has no adequate remedy at law or otherwise for the harm or damage

8    threatened to be done by the Defendants because the lack of these funds seriously jeopardizes

9    Plaintiff's project. Plaintiff's remedy in the form of damages against USACM is clearly inadequate.

10        46.    Plaintiff will suffer irreparable harm, damage, and injury unless a mandatory

11    injunction issues to release to Plaintiff the funds remaining in the construction control account at

12    Fidelity National Title Company.

13        WHEREFORE, Plaintiff demands judgment in its favor and against the Direct Lenders and

14    the USA Defendants as follows:

15        (a)    For damages against USACM in an amount to be proven at trial;

16        (b)    For declaratory relief as described above;

17        (c)    For an offset as described above;

18        (d)    That all costs be taxed against the USACM and Direct Lenders;

19        (e)    For the amount of attorneys' fees incurred in bringing this action

20            and recovering the damages sought herein;

21        (f)    Plaintiff demands judgment in its favor against USACM and the Direct

22            Lenders enjoining preliminarily any foreclosure or other collection action

23            against the Binford Loan until the final advances of $925,000.00 and

24            $1,000,000.00 have been made;

25    . . .

26    . . .

27    . . .

28    10

(g)    For damages in an amount to be proven at trial; and

(h)    For such other and further relief this court deems just and proper.

DATED this 7th day of November, 2006

Respectfully Submitted,

DEANER, DEANER, SCANN,
MALAN and LARSEN

By:    _____
SUSAN WILLIAMS SCANN, ESQ.
Nevada Bar No. 000776
PAUL R. CONNAGHAN, ESQ.
Nevada Bar No. 003229
720 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Attorneys for Plaintiff
Binford Medical Developers, LLC

**EXHIBIT** 1

## AGREEMENT

USA Commercial Mortgage Company, a Nevada corporation ("USA"), and Binford Medical Developers, LLC, an Indiana limited liability company ("Borrower"), make this Agreement effective this 30th day of August, 2005 (the "Effective Date").

## RECITALS

A.     As of the Effective Date, USA, as broker for Lender, has arranged a Loan from Lender in the Loan Amount of $4,250,000 (the "Initial Loan Amount") to Borrower. The Loan is evidenced by a Loan Agreement and other Loan Documents by and between Lender and Borrower of even date herewith. Capitalized terms used herein without definition have the meanings assigned to them in the Loan Agreement.

B.     The Loan Agreement provides for optional increases in the Loan Amount by Lender up to the limit of $8,375,000, as set out in Section 3.2 of the Loan Agreement.

C.     Borrower has requested that Lender commit to: increasing the Loan Amount to $8,375,000 (the "Maximum Loan Amount") and making the additional advances up to the Maximum Loan Amount, but Lender may not do so under Nevada law.

D.     USA, on its own behalf and not in its capacity as broker, has offered to increase the Loan Amount up to the Maximum Loan Amount and make the advances from USA's own funds or through alternative sources that it arranges, up to the Maximum Loan Amount to Borrower to place Borrower in the same position Borrower would be in had Lender obligated itself under Section 3.2 of the Loan Agreement to increase the Loan Amount to $8,375,000.

NOW, THEREFORE, USA and Borrower agree as follows:

## AGREEMENTS

1.     USA hereby agrees to cause the Loan Amount to be increased to $8,375,000. USA agrees to make, either with its own money or through alternative sources that it arranges, any and all advances provided for in Section 3.2 and Exhibit "C" of the Loan Agreement, in the manner as provided for in the Loan Agreement, if Lender, in the exercise of its absolute discretion under Paragraph 3.2 of the Loan Agreement, declines to make such additional advances. The Initial Loan Amount and all such advances shall not exceed the Maximum Loan Amount. Notwithstanding the foregoing, Borrower acknowledges that no such advances need be made when an Event of Default exists, unless such Event of Default was caused by a default by USA under this Agreement.

2.     Should USA not fully and timely make any advance that it has agreed to make in paragraph 1, above, Borrower hereby agrees and acknowledges that its sole remedy shall be an action against USA for damages, and that it shall at all times remain fully liable to Lender (even if USA is a Lender) for all amounts loaned (or advanced) by Lender under the Loan Documents, and that USA's failure to perform under this Agreement shall not negate, nullify, invalidate, or

in any way excuse or diminish Borrower's duties and obligations under the Loan Documents. In that regard, this Agreement is not a Loan Document.

3.      USA hereby agrees as follows:

        (a)     During the term of any default by USA hereunder, if such default causes an Event of Default by Borrower under the Loan Documents, USA: (i) shall cause Lender to fully forbear from exercising any rights or remedies Lender may have against Borrower under the Loan Documents or applicable law; and (ii) as servicing agent for the Loan shall forebear from exercising any right or remedies Lender may have against Borrower under the Loan Documents or applicable law.

        (b)     Borrower shall have ten (10) days after USA cures any default under this Agreement within which to cure any Event of Default by Borrower under the Loan Documents caused by USA's default under this Agreement. USA shall cause Lender to grant Borrower the cure period provided in this paragraph 3(b). USA, as servicing agent for the Loan, shall observe the provisions of this paragraph 3(b).

4.      In the event USA subsequently becomes a Lender under the Loan Documents, then in addition to USA's individual obligations hereunder, and USA's obligations as servicing agent for the Loan, the obligations of USA under this Agreement shall apply to USA in its capacity as a Lender.

5.      The following provisions of the Loan Agreement are incorporated herein by reference: Articles 5, 6, and 7, and Sections 8.15, and 8.16.

6.      This Agreement may be executed in counterparts.

USA:                                                BORROWER:

USA Commercial Mortgage Company                     Binford Medical Developers, LLC

By                                                  By
   Joseph D. Milanowski, President                     Kenneth E. Schmidt, Manager