EXHIBIT 1

1688943.1

LEWIS
AND
ROCA
LLP
——————————
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile (702) 949-8321
Telephone (702) 949-83209

E-Filed on December 21, 2007

Susan M. Freeman AZ State Bar No. 004199 (Pro Hac Vice)
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018020 (Pro Hac Vice)
Email: jhinderaker@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** | Jointly Administered |
| **USA Commercial Mortgage Company 06-10725 – Lead Case** | Chapter 11 Cases |
| **USA Capital Realty Advisors, LLC 06-10726** | Judge Linda B. Riegle Presiding |
| **USA Capital Diversified Trust Deed Fund, LLC 06-10727** | **USACM LIQUIDATING TRUST'S SECOND AMENDED OBJECTION AND COUNTERCLAIM** |
| **USA Capital First Trust Deed Fund, LLC 06-10728** | **Affecting:** |
| **USA Securities, LLC 06-10729** | ☐ All Cases |
| **Debtors.** | **or Only:** |
| | ☒ USA Commercial Mortgage Company |
| | ☐ USA Capital Realty Advisors, LLC |
| | ☐ USA Capital Diversified Trust Deed Fund, LLC |
| | ☐ USA Capital First Trust Deed Fund, LLC |
| | ☐ USA Securities, LLC |
| **USACM Liquidating Trust,** | |
| **Counterclaimant,** | |
| **vs.** | |
| **Los Valles Land & Golf, LLC, a Delaware Limited Liability Company** | |
| **Counterdefendant,** | |
| **Dan S. Palmer Jr., a married man residing in California** | |
| **Counterdefendant.** | |

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

The USACM Liquidating Trust (the "USACM Trust") files a second amended objection to Claim No. 1366 ("Claim") filed by Los Valles Land & Golf, LLC ("Los Valles") and counterclaim against Los Valles and Dan S. Palmer Jr.  This second amended objection and counterclaim supersedes the USACM Trust's September 20, 2007 Amended Objection [DE 4820] and are made pursuant to § 502 of title 11 of the U.S. Bankruptcy Code (the "Bankruptcy Code"), Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007 of the Local Rules of Bankruptcy Procedure (the "Local Rules"), Rule 15 of the Federal Rules of Civil Procedure, Rule 7015 of the Federal Rules of Bankruptcy Procedure, Rule 13(h) of the Federal Rules of Civil Procedure, Rule 7013 of the Federal Rules of Bankruptcy Procedure, Rule 20 of the Federal Rules of Civil Procedure, and Rule 7020 of the Federal Rules of Bankruptcy Procedure.

## SECOND AMENDED OBJECTION

### JURISDICTION

1.     The Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2.     The statutory predicate for the relief requested herein is 11 U.S.C. § 502 and Bankruptcy Rules 3007 and 7001.

### BACKGROUND

3.     On April 13, 2006 ("Petition Date"), USA Commercial Mortgage Company ("USACM"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF" and together with DTDF, the "Funds"), and USA Securities, LLC ("USA Securities") (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Management duties of USACM were conducted by Thomas

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

J. Allison of Mesirow Financial Interim Management, LLC ("Mesirow") who serves as the President and Chief Restructuring Officer.

4.  On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein (the "Confirmation Order") confirming Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

5.  Under the Plan, the USACM Trust is the successor to USACM with respect to standing to seek allowance and disallowance of Claims.

6.  The USACM Trust exists on the Effective Date of the Plan, which was March 12, 2007.

7.  USACM originated loans for borrowers and solicited the funding of such loans from numerous individuals and entities (collectively, the "Direct Lenders").  Upon information and belief, with few exceptions, USACM originated loans that provided for a mandatory initial funding amount with any additional funding to be made solely at the discretion of the Direct Lenders.  Upon further information and belief, when USACM arranged an increase in the original loan amount, USACM solicited the existing Direct Lenders in the original loan for the additional funds.  Absent the affirmation decision by the Direct Lenders to invest additional funds, the original loan would not be increased.

8.  Los Valles filed Claim No. 1366 on November 13, 2006.  The Claim alleges:

A.  Unlawful collection and/or charging of loan fees, extension fees, and exit fees pursuant to California Business and Professional Code §10130 and/or 10131;

B.  Willful failure to timely deliver payoff statement demanded under California Civil Code § 2943 and Nevada Revised Statutes §107 210;

C.  Intentional misrepresentation;

D.  Violation of consumer protection statutes and/or unfair competition; and

E.  A claim for attorneys fees in an amount to be determined.

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

9.      Attached to the Claim is an Attachment to Proof of Claim of Los Valles Land & Golf, LLC ("Attachment"), as well as copies of several documents referenced in the Attachment.  Those documents include a copies of a Fee Agreement dated March 3, 2004 by and between Los Valles as Borrower, and USACM ("Fee Agreement"); a Buyer's Settlement Statement dated March 17, 2004, prepared by First American Title Company ("Settlement Statement"); an incomplete copy of a Loan Agreement dated March 3, 2004 between Los Valles as Borrower and the Los Valles Direct Lenders as Lender ("Loan Agreement"); a Loan Extension Agreement dated October 3, 2005 by and between Los Valles as Borrower, and the Los Valles Direct Lenders as Lender ("First Loan Extension Agreement"); an Assumption Agreement dated January 3, 2006, between Los Valles as Borrower, the Los Valles Direct Lenders as Lender, and Transferee, Los Valles Company, Inc. ("Assumption Agreement"); a Loan Extension Agreement dated March 17, 2006, by and between Los Valles Company, Inc. as Borrower, and the Los Valles Direct Lenders as Lender ("Second Loan Extension Agreement"); a Promissory Note Secured by Deed of Trust dated March 3, 2004, in the principal amount of $11,700,000 ("Note"); a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Second Position) dated March 3, 2004 ("Deed of Trust"); three letters to USACM concerning Los Valles' request for a payoff demand and per diem amount through December 31, 2004 ("Los Valles correspondence"); and a Demand for Payment from USACM dated February 23, 2005 ("Demand for Payment").

10.      Los Valles alleges that it paid $500,000 in loan fees at closing, as required by the Loan Agreement.  Los Valles contends that the Loan Agreement further obliges Los Valles to pay USACM two extension fees of $234,000 and an exit fee, as a deferred loan fee, of 1.5% of the gross sales price of each lot at the time sale of each lot closes.

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

11.     Los Valles also contends that under the First Loan Extension Agreement and Second Loan Extension Agreement Los Valles is obliged to pay extension fees of $234,000 for each extension.

12.     Los Valles asserts that the Fee Agreement was entered into in California and that USACM is not a licensed real estate broker in California.  Los Valles contends that, therefore, USACM was not authorized to collect or charge loan fees, extension fees, and/or exit fees from Los Valles.

13.     The Fee Agreement, however, provides that Los Valles is a Delaware limited liability company and that USACM is a Nevada corporation.  It further provides that the Fee Agreement "shall be governed by the laws of the State of Nevada."  Los Valles seeks restitution from USACM for any amounts it paid or may be required to pay in the future.  Los Valles asserts that its unsecured, nonpriority claim is for no less than $2,000,000 in loan fees, extension fees, and exit fees collected or charged by USACM, but does not provide a calculation of how it arrived at that figure.

14.     Los Valles contends that notwithstanding the Assumption Agreement and that the Second Loan Extension Agreement was issued to Los Valles Company, Inc. as Borrower, Los Valles remains liable for the extension fees and exit fee and any interest thereon to USACM.

15.     Los Valles additionally alleges that USACM willfully refused to deliver a payoff demand statement under California Civil Code § 2943 and Nevada Revised Statutes § 107 210, and that when USACM provided the payoff demand statement, it intentionally misrepresented therein that Los Valles owed an exit fee of $1,664,403.94, knowing that the sale of lots was a condition precedent to Los Valles' liability for an exit fee and that no lot sales had yet occurred.  Los Valles claims that it relied on USACM's statement, and was thereby prevented from obtaining new financing, which allegedly triggered the need for loan extensions and obtaining for USACM the extension fees and the exit fee.  Los

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

Valles asserts that USACM is therefore liable to Los Valles for no less than $2,000,000, and that Los Valles is entitled to punitive or exemplary damages for USACM's alleged willful and intentional conduct in making alleged false statements.

16.     Finally, Los Valles alleges that USACM violated unspecified consumer protection statutes by engaging in unfair competition through each of the above alleged acts, including charging fees for arranging a loan without having a California real estate license, willfully failing to issue a timely payoff demand statement, and repeatedly and intentionally misrepresenting the amount required to pay off the loan.  Los Valles seeks restitution of no less than $2,000,000 on this claim.

17.     Los Valles asserts that USACM is liable for its attorneys' fees in connection with each of Los Valles' claims.

18.     Los Valles further asserts a right to setoff and/or recoup any payments that Los Valles has made or may make on account of the loan fee, extension fees, or the exit fee, as well as any of its other claims against USACM, against amounts that Los Valles may owe to USACM and the Direct Lenders under the Note, Deed of Trust, Fee Agreement, Loan Agreement, and related documents.

19.     The Los Valles proof of claim makes no mention of an October 6, 2006 letter agreement between Los Valles and USACM as part of a satisfaction of the USACM direct loan known as Halsey Canyon wherein USACM compromised its rights and claims with Los Valles (the "Letter Agreement").  The Letter Agreement reflects compromises by USACM to its detriment in consideration of the promises and commitments by Los Valles therein, including acknowledgment of the sums due and acknowledgment that Nevada law governs.

## APPLICABLE AUTHORITIES

20.     Pursuant to § 502(a) of the Bankruptcy Code, any claim for which a proof of claim has been filed will be allowed unless a party in interest objects.  If a party in interest

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1  objects to the proof of claim, the Court, after notice and hearing, shall determine the

2  amount of the claim and shall allow the claim except to the extent that the claim is

3  "unenforceable against the debtor … under any … applicable law for a reason other than

4  because such claim is contingent or unmatured."  11 U.S.C. § 502(b).

5      21.    The USACM Liquidating Trust is entitled to object to proofs of claim under

6  § 502(a) of the Bankruptcy Code and the Confirmed Plan of Reorganization.

7      22.    A properly filed proof of claim is presumed valid under Bankruptcy Rule

8  3001(f).  However, once an objection to the proof of claim controverts the presumption,

9  the creditor ultimately bears the burden of persuasion as to the validity and amount of the

10  claim.  See *Ashford v. Consolidated Pioneer Mortg.* (*In re Consolidated Pioneer Mortg.*),

11  178 B.R. 222, 226 (B.A.P. 9th Circ. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).  The ultimate

12  burden of proof as to the validity of a proof of claim "remains at all times upon the

13  claimant."  *Lundell v. Anchor Constr. Specialists, Inc.* (*In re Lundell*), 223 F.3d 1035,

14  1039 (9th Cir. 2000).

15              **OBJECTION TO LOS VALLES' CLAIM**

16      **Claim 1: Los Valles' Claim to Recover Broker's Fees Paid to USACM.**

17      23.    Los Valles makes a claim to recover broker's fees earned by USACM under

18  the Fee Agreement.  These fees include the loan fee of $500,000, the first extension fee of

19  $234,000, the second extension fee of $234,000, the exit fees and interest on these fees.

20  First, the USACM Trust objects to this claim because it was not required to hold a

21  California real estate broker's license under the circumstances and, therefore, did not

22  violate California law.

23      24.    Second, the USACM Trust objects to Los Valles' claim to recover broker's

24  fees that it never paid to USACM.  Of the various fees that Los Valles agreed to pay, it

25  only paid the $500,000 loan fee.  The parties acknowledged in the Letter Agreement that

26

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

Los Valles would not have to pay the two loan extension fees and the exit fees called for in the Fee Agreement. Los Valles cannot have a claim to recover fees it never paid.

25. Third, the USACM Trust objects to Los Valles' claim to recover the $500,000 loan fee as time barred. Under California law, a one-year statute of limitations governs claims for penalties (Calif. Code Civ. Proc., § 340, subd. (a) ["An action upon a statute for a penalty or forfeiture"]). Los Valles appears to be asserting a "penalty claim," which is barred by the one-year statute of limitations.

26. Fourth, the USACM Trust objects to Los Valles' claim to recover brokers fees because that claim is a "Penalty Claim" subject to treatment under the Plan as part of Class A-6. The Plan defines "Penalty Claim" on page 16 in Paragraph I.A.104:

> 104. **"Penalty Claim"** means a Claim against a Debtor for a fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim or is asserted by a governmental unit.

Further, the Plan details how a "Penalty" is to be classified and treated on page 34, Paragraph II. C. 1. f:

> **f. Class A-6: Allowed Penalty Claims.**
>
> i. *Classification:* Class A-6 consists of all Allowed Penalty Claims against USACM.
>
> ii. *Treatment:* Payment to holders of Allowed Penalty Claims shall be subordinated to the payment in full, plus interest, of all Allowed General Unsecured Claims. It is anticipated that holders of Allowed Penalty Claims shall receive no distribution under the Plan. In the unlikely event that Cash exists after all Allowed General Unsecured Claims are paid in full, plus interest, the Plan shall be deemed to be amended to provide that such Cash be distributed Pro Rata to the holders of Allowed Penalty Claims, plus interest. Class A-6 is impaired, and the holders of Class A-6 Claims are deemed to reject the Plan.

**Claim 2: Willful Failure to Timely Deliver Payoff Demand Statement.**

231623.1

LEWIS
AND
ROCA
LLP
LAWYERS

27. Los Valles claims that USACM violated Calif. Civil Code § 2943 and N.R.S. § 107.210 by failing to timely deliver a payoff statement in late 2004/early 2005. Both California and Nevada law required USACM to deliver a payoff statement within 21 days after receiving a payoff demand. Although the USACM Trust does not concede this point, based upon the documents currently available for review by counsel, it appears that USACM did not deliver a payoff statement until February 23, 2005, 126 days after Los Valles' initial request and 106 days late.

28. Well over a year after it received the payoff from USACM, Los Valles refinanced through Mountain Funding at a 16% interest rate. The interest rate on the USACM loan was 18%. Los Valles calculates the claim amount based on the 2% differential between the two rates and the nearly two year period between the date Los Valles requested a payoff and USACM delivered one. Los Valles estimates these damages at $423,764.38.

29. The USACM Trust objects because Los Valles seeks almost two years worth of interest even though USACM delivered the payoff statement, at most, 106 days late. USACM is not liable for the period after it delivered the payoff statement.

30. Second, the USACM Trust objects because Los Valles offers nothing to show that USACM's delay caused it to lose substitute financing or damaged Los Valles in any way.

**Claim 3: Intentional Misrepresentation.**

31. Los Valles claims that when USACM delivered the payoff statement on February 23, 2005, it misrepresented the payoff amount. More specifically, USACM included within the payoff a $1,664,403.94 charge for an exit fee. Los Valles alleges that no exit fee was due and USACM understood this. Regarding the exit fee, the Loan Agreement provides:

> 3.8 <u>Exit Fee</u>: Borrower shall pay USA, as a deferred loan fee,
> one and one half percent (1.5%) of the gross sale price of each

LEWIS
AND
ROCA
LLP
L A W Y E R S

lot (but not less than the fair market value).  It will be paid at the time the sale of the lot closes.

32.    USACM disputes the Proof of Claim's assertion that Los Valles did not owe an exit fee to USACM if it had paid off its loan in February 2006.

33.    USACM objects to Los Valles's intentional misrepresentation claim because Los Valles must show that it reasonably relied upon USACM's alleged misrepresentation contained in the payoff statement and it cannot do so if its current interpretation of the Letter Agreement is correct.

### Claim 4: Violation of Consumer Protection Statutes.

34.    Los Valles's "Claim IV" (Violation of Consumer Protection Statutes) appears to reassert the same claims made in Claims I through III discussed above, but under California's consumer protection statutes.  Thus, as to Claim IV, the USACM Trust renews the objections stated above in Sections A, B and C.  Also, the USACM Trust Objects that California law does not apply.

### Claim 5: Attorneys' Fees.

35.    Los Valles seeks to recover its attorneys' fees incurred so far.  These fees were incurred to negotiate the Letter Agreement with USACM and file a claim.  Los Valles cites to no legal authority that would support its claim to attorney's fees.  The USACM Trust objects that Los Valles, an unsecured creditor, is not entitled to recover attorneys' fees under applicable law.

### Additional Objections.

36.    The USACM Trust objects that documentation attached to the Claim is incomplete, i.e. pages are missing from the Loan Agreement, Note, and Deed of Trust, and the documentation provided does not substantiate the Claim.

37.    The USACM Trust further believes that the damages stated in the Claim are overstated, subject to mitigation and reduction, and are unliquidated and speculative.

231623.1

LEWIS
AND
ROCA
LLP
LAWYERS

38.    The USACM Trust believes that the Claim is subject to other affirmative defenses including without limitation release, accord and satisfaction, estoppel, waiver, laches, and/or unjust enrichment.

39.    The USACM Trust has analyzed Los Valles' Claim and contends that USACM has no liability on account of this Claim.

40.    The USACM Trust reserves the right to further object to any and all claims, whether or not the subject of this Objection, for allowance, and any other grounds.  The USACM Trust further reserves the right to modify, supplement and/or amend this Objection as it pertains to any claim or claimant herein.

## COUNTERCLAIM

For its counterclaim against Los Valles Land & Golf, LLC ("Los Valles") and Dan S. Palmer Jr. ("Palmer") the USACM Liquidating Trust alleges as follows:

## JURISDICTION AND PARTIES

41.    USA Commercial Mortgage Company ("USACM") is a Nevada corporation.

42.    Los Valles is a Delaware limited liability company.

43.    Dan S. Palmer is a resident and citizen of California.

44.    On April 13, 2006 ("Petition Date"), USACM, USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF" and together with DTDF, the "Funds"), and USA Securities, LLC ("USA Securities") (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

45.    On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein (the "Confirmation Order") confirming Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

46.     Under the Plan, the USACM Liquidating Trust is the successor to USACM with respect to standing to seek allowance and disallowance of Claims and to recover the assets of USACM not otherwise disposed of under the Plan, including the causes of action asserted here.

47.     The USACM Trust exists as a Nevada business trust as of the Effective Date of the Plan, which was March 12, 2007.

48.     Los Valles filed its proof of claim, assigned Claim No. 1366, on November 13, 2006.  This is USACM's counterclaim to the proof of claim over which this Court may exercise jurisdiction under 28 U.S.C. § 1334(b).  The counterclaim is related to the USACM bankruptcy case and is a core proceeding under 28 U.S.C. § 157(b)(2)(C), (O).

49.     The USACM Trust asserts claims against Dan S. Palmer that were property of the USACM estate, and are now owned by the USACM Trust pursuant to the confirmed Plan of Reorganization and will be used to pay creditors' claims.  The claims of the USACM Trust herein against Dan Palmer are related to the USACM bankruptcy case over which this Court may exercise jurisdiction under 28 U.S.C. § 1334(b), and are non-core proceedings.  The USACM Trust consents to this Court's entry of final orders in this adversary proceeding.

50.     To the extent that this counterclaim is not "related to" the USACM case, this Court may exercise supplemental jurisdiction over the claims under 28 U.S.C. § 1367 to the extent that the claims are so related to that they arise out of the same case or controversy as the matters within this Court's § 1334(b) jurisdiction.

51.     Alternatively, this is a suit between citizens of separate states where the amount in controversy exceeds $75,000 over which the district court may exercise diversity jurisdiction, and which this Court may exercise under the District's general order of reference.

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

## **GENERAL ALLEGATIONS**

52.    USACM originated loans for borrowers and solicited the funding of such loans from numerous individuals and entities (collectively, the "Direct Lenders").  Upon information and belief, with few exceptions, USACM originated loans that provided for a mandatory initial funding amount with any additional funding to be made solely at the discretion of the Direct Lenders.  Upon further information and belief, when USACM arranged an increase in the original loan amount, USACM solicited the existing Direct Lenders in the original loan for the additional funds.  Absent the affirmative decision by the Direct Lenders to invest additional funds, the original loan would not be increased.

53.    On March 3, 2004, Los Valles and USACM entered into a Loan Agreement whereby USACM arranged a loan to Los Valles of $11,700,000.  The Loan Agreement provided that USACM was entitled to receive interest in the amount of 18% annually, an Exit Fee of 1.5% of the gross sale price of lots to be paid at the time each lot closed, and Loan Extension fees, among other fees.  The Loan Agreement provided Nevada law applied to the interpretation of the Loan Agreement without regard to Nevada choice of law provisions.  The Loan Agreement also provided that Los Valles submitted to jurisdiction in Nevada and agreed that any action relating to the Loan Agreement may be brought in Nevada.

54.    On March 3, 2004, Los Valles and USACM entered into a Fee Agreement providing for a Loan Fee of 5% to be paid to USACM.  The Fee Agreement provided it was to be governed by Nevada law.

55.    On March 3, 2004, Palmer executed a Limited Guaranty, personally guaranteeing repayment of the loan.  The Limited Guaranty provided that Palmer submitted to the jurisdiction of any state or federal court in Nevada.

56.    On October 6, 2006, USACM, Los Valles, and Dan S. Palmer entered into letter agreement (the "Letter Agreement").  The Letter Agreement provided that it was

13

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

governed by the internal laws of Nevada.  A true and accurate copy of the Letter Agreement is attached hereto as Exhibit A.

57.    The Letter Agreement provided for the following sums to be paid by Los Valles to USACM: the sum of $586,045.83 plus any applicable Per Diem Amounts and other fees no later than December 31, 2007; an amount equal to 1% of the gross proceeds from the sale of residential lots, or an "Earnout Rate" determined under the formula in paragraph 4(C) of the Letter Agreement; additional Per Diem Amounts as defined in the Letter Agreement; and interest on certain fees to which USACM is entitled under the Letter Agreement.

58.    Palmer personally guaranteed payment to USACM of the amounts due under the Letter Agreement, no later than December 31, 2007.

59.    The Letter Agreement reflects a compromise between Los Valles and USACM as part of a satisfaction of the USACM loan.

60.    The Letter Agreement reflects compromises by USACM to its detriment in consideration of the promises and commitments by Los Valles therein, including acknowledgment of the sums due and acknowledgment that Nevada law governs.

61.    The Letter Agreement constitutes an accord and satisfaction of the parties' claims.

62.    The Letter Agreement and Palmer guarantee constitute a valid and enforceable contract.

### Anticipatory Breach Of Contract — Los Valles And Palmer

63.    Under the Letter Agreement, Los Valles is obligated to pay USACM the sum of $586,045.83 plus any applicable Per Diem Amounts and other fees no later than December 31, 2007.

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

64.     Under the Letter Agreement, Los Valles is also obligated to pay USACM an amount equal to 1% of the gross proceeds from the sale of residential lots, or an "Earnout Rate" determined under the formula in paragraph 4(C) of the Letter Agreement.

65.     Under the Letter Agreement, Palmer is personally liable as guarantor if Los Valles fails to fulfill its payment obligations on December 31, 2007.

66.     Counsel for Los Valles has indicated that Los Valles does not intend to make the December 31, 2007 payment or any other payment due under the Letter Agreement pending the outcome of Los Valles' claim against USACM.  Los Valles' refusal to perform under the Letter Agreement constitutes an anticipatory repudiation of the Letter Agreement.

67.     Because Los Valles has repudiated its obligations under the Letter Agreement, the USACM Trust may accelerate the payments due.

68.     Counsel for Palmer has indicated that he is researching Palmer's defense on the guarantee and that he is unwilling to say whether Palmer intends to perform his obligations as personal guarantor under the Letter Agreement on December 31, 2007. Palmer's refusal to perform under the Letter Agreement constitutes an anticipatory repudiation of the Letter Agreement.

69.     Because Palmer has repudiated his obligations under the Letter Agreement, the USACM Trust may accelerate the payments due.

70.     USACM Trust has been damaged by Los Valles' and Palmer's anticipatory breach of the Letter Agreement in an amount to be proven at trial, including the sum of $586,045.83, any applicable Per Diem Amounts, Earnout Rate fees or deferred extension fees, attorneys' fees and costs, and any other fees available under the Letter Agreement.

WHEREFORE the USACM Trust requests judgment against Los Valles and Palmer, and the following relief arising out of its counterclaim:

231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    A.    Awarding the USACM Trust compensatory damages arising out of Los

2    Valles' breach of the Letter Agreement in an amount to be determined at trial;

3    B.    Awarding the USACM Trust compensatory damages against Dan S. Palmer

4    Jr. and his marital community arising out of Palmer's breach of the personal guaranty in

5    the Letter Agreement in an amount to be determined at trial;

6    C.    Awarding the USACM Trust prejudgment interest;

7    D.    Awarding the USACM Trust its reasonable attorneys' fees and costs under

8    the Letter Agreement; and

9    E.    Awarding the USACM Trust any other relief the Court deems just and

10    proper.

11        RESPECTFULLY SUBMITTED _____.

12                                **LEWIS AND ROCA LLP**

13

14                        By _____

15                                Susan M. Freeman *(pro hac vice)*
                                Rob Charles

16                                John Hinderaker *(pro hac vice)*
                                *Attorneys for USACM Liquidating Trust*

17

18

19

20

21

22

23

24

25

26

16                                                                231623.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

COPY of the foregoing served via e-mail where
an e-mail address is listed, and if no e-mail
address is listed, then by first class, postage paid
US mail, this _____ day of _____ addressed
to:

Dan S. Palmer, Jr.
c/o Palmer Investments, Inc.
Los Valles Land & Golf LLC
233 Wilshire Blvd., Suite 800
Santa Monica, CA 90401-1207

Peter J. Mort, Esq.
Bruce Jacobs, Esq.
Akin Gump Strauss Hauer & Field LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Attorneys for Los Valles Land & Golf LLC

Pauline Ng Lee
Scott D. Fleming
Hale Lane Peek Dennison and Howard
3930 Howard Hughes Parkway, 4th Floor
Las Vegas, Nevada  89169
Attorneys for Los Valles Land & Golf LLC

_____
Renee L. Creswell
Lewis and Roca LLP

231623.1

# EXHIBIT A

# Los Valles Land & Golf, LLC

233 WILSHIRE BLVD, SUITE 800
SANTA MONICA, CALIFORNIA 90401
TELEPHONE 310-576-6700
FACSIMILE 310-576-0888

October _6_, 2006

### VIA FACSIMILE (702,734,0163) AND OVERNIGHT DELIVERY

USA Commercial Mortgage Company
4844 South Pecos Road
Las Vegas, Nevada 89121
Attn: Mark Olson

      Re:   **Hasley Canyon**

Dear Mark:

      This letter agreement ("Agreement") is made and entered into by and between USA Commercial Mortgage Company ("USA") and Los Valles Land & Golf, LLC ("LVLG"). We have been advised by you that USA is the attorney-in-fact and/or duly authorized agent of each lender (collectively, "Lenders") on that certain loan ("Loan") in the aggregate principal amount of $11,700,000 evidenced by that certain promissory note given by LVLG to the Lenders, dated as of March 3, 2004 ("USA Note"), and certain subsequent documentation. The Loan is secured by a deed of trust (as subsequently amended, collectively the "USA DOT") recorded March 17, 2004 in the Los Angeles County official records against certain property located in an unincorporated area of Los Angeles County, California as more specifically described in the deed of trust ("Property"). LVLG acknowledges that the Property is anticipated (but not required) to be developed into 209 saleable residential lots (each a "Lot") and an 18-hole golf course. The Loan was assumed by Los Valles Company, Inc. ("LVC") on or about February 3, 2006. In connection with such assumption, LVC made a purchase money promissory note in favor of LVLG in the original principal amount of $28,110,726 ("PMM Note"), which is secured by a deed of trust recorded against the Property ("PMM DOT"). The PMM DOT is subordinate to the Loan, and if either is ever closed, the PMM DOT will be subordinate to both the New First Loan and the Mezz Loan and/or any future refinancings and/or modifications of the New First Loan or Mezz Loan (both the "New First Loan" and the "Mezz Loan" are defined below).

      USA represents and warrants that it has been duly authorized to approve and enter into the agreements set forth in this Agreement on behalf of each of the Lenders by countersigning this Agreement.

      In conjunction with a proposed transfer of the Property from LVC to Los Valles Company, L.P. ("Transferee") in connection with a contemplated new first-priority construction loan to be secured by the Property ("New First Loan"), USA has delivered a payoff statement

USACM_LOS VALLES
00430

("Statement") setting forth $15,788,142.84 as the amount required to be paid in full to completely satisfy the Loan as of September 12, 2006 (the "Initial Payoff Amount"), and for each day after such date, a per diem interest on principal in the amount of $7,101.05 and a per diem interest on the extension fee in the amount of $117.00 (collectively, the "Per Diem Amounts", and collectively with the Initial Payoff Amount, the "Payoff Amount"). The Statement provides that the total amount of principal and interest required to be paid to satisfy all Loan obligations to all of the Lenders is $14,202,097.01 plus the portion of the Per Diem Amounts applicable to interest on the principal (collectively, "Lender Sum"), and the total amount of fees required to be paid to USA is $1,586,045.83 plus the Per Diem Amounts (through the date of the Closing (defined below)) applicable to interest on the extension fees (the "USA Sum"). USA and LVLG have agreed as follows:

1) The Lender Sum will be paid at the closing and funding (if any) of the New First Loan ("Closing") to Lenders to satisfy Lenders in full, and USA will cause (i) a new payoff statement to be delivered to LVC, the title company and the escrow company handling the Closing providing that the Lender Sum is the only amount that is required to be paid to satisfy the Loan in full ("New Payoff Statement"), (ii) a full reconveyance of the deed of trust securing the Loan to be recorded at Closing, and (iii) all other documents and instruments regarding the Loan that the title company reasonably requires in order to issue (or be unconditionally committed to issue) an owner's title insurance policy at Closing insuring Transferee's fee interest and a lender's title insurance policy insuring the New First Loan lender's first priority interest) in the Property free and clear of the Loan, with no exceptions for, or other references to, the Loan, with the understanding that USA will deliver to the title company the USA Note and USA DOT evidencing the Loan upon disbursement by the escrow company of the Lender Sum pursuant to the New Payoff Statement ("Disbursement").

2) The USA Sum will no longer be owed or paid to USA (nor to any Lender) at Closing (or thereafter). However, after Disbursement and in lieu of any obligation of LVLG or any other person or entity to pay the USA Sum, the following shall apply.

3) When and if Transferee obtains its currently contemplated mezzanine financing for the Property ("Mezz Loan") and if the proceeds thereof are used to pay down the PMM Note, then an amount equal to $586,045.83 plus the Per Diem Amounts accrued through the date of Closing ("Deferred Extension Fees") will be paid by LVLG to USA. In all circumstances, regardless of whether the Mezz Loan is obtained, if an amount equal to the Deferred Extension Fees have not been paid in full to USA (whether from the Mezz Loan proceeds, from Payable Earnings (defined below), or otherwise, all of which shall be deemed applied to pay down the Deferred Extension Fees) on or before December 31, 2007, then on such date, LVLG shall be unconditionally obligated to pay USA an amount equal to the then-outstanding unpaid Deferred Extension Fees, if any (i.e., as reduced by any amounts that USA has received (whether from the Mezz Loan, from Payable Earnings (defined below), or otherwise from LVLG or any of its direct or indirect affiliates, members or owners) as of December 31, 2007).

4) Certain amounts may be earned in the manner set forth below by USA after Closing and may eventually be paid by LVLG in full or in part to USA from "Payable Earnings", if any, in D below:

USACM_LOS VALLES
00431

A.    In the event that any Lot is developed and sold by Transferee or its affiliate, USA will earn and accrue at the actual closing of the sale of each Lot, an amount equal to 1% ("Earnout Rate" (subject to adjustment as described below)) of the gross proceeds net of closing costs and expenses of each sale (each such amount is a "Lot Sale Earnout"). In no event will there be any Lot Sale Earnout for any Lot unless and until a sale of such Lot is actually closed and the proceeds of such sale are received by Transferee or its affiliate (a "Qualified Sale"). Notwithstanding anything to the contrary herein, in no event will any of the following be deemed to be a Qualified Sale: (i) foreclosure sales or transfers of any Lot by a deed-in-lieu of foreclosure; or (ii) any assignment, sale, pledge, or other transfer of the partnership or other ownership interest in Transferee, its partners or LVC. "Qualified Sale" will be deemed to include any bulk sale of Lots, but in no event will the sale of the golf course parcel(s) be a Qualified Sale.

B.    Each Lot Sale Earnout will begin to accrue interest (at the rate of 12% per annum) from the date of the Qualified Sale to which such Lot Sale Earnout is attributable.

C.    After the earlier of (i) the date that USA has received in the aggregate (whether from Mezz Loan proceeds, Payable Earnings or other sources) an amount equal to the Deferred Extension Fees or (ii) December 31, 2007 (the date in paragraph 3 above by which any remaining unpaid Deferred Extension Fees are to be paid in full) (whichever of (i) or (ii) applies, such date is the "Reduction Date"), the 1% Earnout Rate for Qualified Sales will be reduced by multiplying 1% by a fraction determined by dividing $1,000,000 by the sum of (X) the original amount of the Deferred Extension Fees (without any reductions described in paragraph 3 above) and (Y) $1,000,000. For example, if the original amount of the Deferred Extension Fees (without any reductions described in paragraph 3 above) are $600,000, then the fraction will be ten-sixteenths (i.e., 1,000,000/1,600,000), and the modified Earnout Rate will be .625% (i.e., 1% x [1,000,000/1,600,000] = .625%), which modified rate will be applicable to any Qualified Sales occurring after the Reduction Date. In no event will the Deferred Extension Fees accrue any interest.

D.    The aggregate of any and all Lot Sale Earnouts and all interest accrued thereon under B above will be a conditional obligation of LVLG to USA, only to be paid if, when and to the extent that LVLG actually receives Qualified Sale cash proceeds as a pay down on the PMM Note ("Payable Earnings"). LVLG shall send substantially contemporaneously to USA copies of all notices of intended Lot sales that are provided to the lender under the New First Loan.

E.    Other than the obligation of LVLG to pay any unpaid Deferred Extension Fees on or before December 31, 2007, the Payable Earnings (if any) received by LVLG, shall be the sole sources of any payments from LVLG to USA.

F.    Dan S. Palmer, Jr. hereby personally guarantees (as a guarantor of payment, not a guarantor of collection) payment of the Payable Earnings, if any, to USA (to the extent required hereunder to satisfy LVLG's obligations, if any, to USA). Anything to the contrary notwithstanding, if proceeds from Qualified Sales are not actually received by LVLG, then in no event will there be Payable Earnings.

USACM_LOS VALLES
00432

G.    Dan S. Palmer, Jr. hereby personally guarantees (as a guarantor of payment, not a guarantor of collection) the payment to USA of the then-outstanding unpaid Deferred Extension Fees, if any, required to be made by LVLG no later than December 31, 2007 under the second sentence of paragraph 3 above (as computed and reduced thereunder).

USA represents and warrants for the benefit of LVLG, LVC, Transferee and Dan S. Palmer, Jr. that it has obtained all approvals, authorizations and consents necessary for USA to enter into, consummate and perform its obligations under this Agreement (and for the person executing this Agreement on behalf of USA to bind USA by such execution). LVLG represents and warrants for the benefit of USA that it has obtained all approvals, authorizations and consents necessary to enter into, consummate and perform its obligations under this Agreement (and for the person executing this Agreement on behalf of LVLG to bind LVLG by such execution).

Notwithstanding anything to the contrary herein, neither LVLG, LVC nor Transferee shall be required to obtain the Mezz Loan (or any other financing in lieu of the Mezz Loan). Transferee and LVC are not parties to, and they shall have no obligations under, this Agreement or otherwise to USA or the Lenders, but Transferee and LVC shall be deemed to be third party beneficiaries of USA's obligations under this Agreement.

The internal laws of the State of Nevada will govern this Agreement, without giving effect to choice-of-law principles. This Agreement constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any dispute among any parties arises in connection with this Agreement, the prevailing party in the resolution of such dispute in any action or proceeding will be entitled to an order awarding full recovery of reasonable attorneys' fees and expenses and costs (including experts' fees and expenses) incurred in connection therewith, including costs of court, from the non-prevailing party. This Agreement will be binding only upon the occurrence of each and every one of the following: (i) execution of this Agreement by each party hereto; (ii) the delivery of written consent to this Agreement from each of the members of LVLG; and (iii) the Closing. Nothing contained in this Agreement shall be deemed to create a partnership, agency and/or joint venture between USA and LVLG and/or LVC.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

USACM_LOS VALLES
00433

Please demonstrate your agreement to this Agreement and the transactions described herein by countersigning below.

Sincerely,

**LOS VALLES LAND & GOLF, LLC,**
a California limited liability company

By:    Palmer-Los Valles, LLC,
a California limited liability company,
its Managing Member

By:    Palmer Investments, Inc.,
a California corporation,
its Managing Member

By: _____
Name:  Dan S. Palmer, Jr.
Title:  President

AGREED AND ACCEPTED BY:

**USA COMMERCIAL MORTGAGE COMPANY,**
a Nevada Corporation

By: _____
Name:  Mark Olson
Its:  Chief Operating Officer
Date: _Oct. 6, 2006_

DAN S. PALMER, JR. HEREBY ACKNOWLEDGES AND AGREES TO THE GUARANTOR
OBLIGATIONS SET OUT IN PARAGRAPHS 4F AND 4G:

_____
Dan S. Palmer, Jr.
Date: _Oct. 6, 2006_

cc:    Kevin Glade, Esq.
Hush Sohaili, Esq.

600371 0012 WEST  5977294 v5                    5

USACM_LOS VALLES
00434