# EXHIBIT A

All documents that refer or relate to the funding sought by Los Valles Land & Golf, LLC for the loan dated March 3, 2004 for which Builders Control Service, Co. was the disbursement agent. (*See* Control Account Escrow Agreement and Security Agreement between Los Valles Land & Golf, LLC and Builders Control Service, Co., attached).

231652.1

# CONTROL ACCOUNT ESCROW AGREEMENT
# AND
# SECURITY AGREEMENT

THIS ESCROW AGREEMENT AND SECURITY AGREEMENT ("Agreement") is made as of the 3rd day of March, 2004, by and among those persons listed on **Exhibit "A"** attached hereto ("Lender"), Los Valles Land & Golf, LLC, a Delaware limited liability company, ("Borrower"), and Builders Control Service, Co., a California corporation ("Disbursement Agent").

## RECITALS:

A.  Lender has agreed to make a loan ("Loan") to Borrower pursuant to a Loan Agreement of even date herewith (the "Loan Agreement") which provides for Disbursement Agent to hold and disburse money as and for Interest Reserve as described in the Loan Agreement.

B.  To evidence the Loan, Borrower has executed as maker the Promissory Note Secured by Deed of Trust payable to the order of Lender, dated of even date herewith, in the principal face amount of Eleven Million Seven Hundred Thousand Dollars ($11,700,000) (the "Note"). The Note is secured by the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") of even date herewith executed by Borrower as trustor and delivered to Lender as beneficiary, granting and conveying to Lender a lien against and security interest in the Property, the Improvements and the personal property and fixtures described in the Deed of Trust.

C.  Additionally, Borrower and Lender have executed certain other documents (which are described in the Loan Agreement and referred to therein as the "Loan Documents") pursuant to which Lender shall obtain, in accordance with the provisions of the Loan Agreement, a lien on the Property and the Improvements thereon, or such portions thereof as shall be encumbered by the Deed of Trust.

D.  First American Title Insurance Company (the "Title Company") has issued its Preliminary Title Report for Order No. 1113586 in anticipation of issuing to Lender an ALTA Extended Coverage Lender's Policy of Title Insurance (the "Title Policy") insuring Lender with respect to the Loan.

E.  It is anticipated that, over the term of the Loan, Lender will be disbursing to the Disbursement Agent certain proceeds of the Loan for deposit into the Control Account (as that term is defined in Section 2.1 hereof). Disbursement Agent may also receive additional funds from time to time in accordance with this Agreement or the Loan Documents. Disbursement Agent shall hold all such funds and advance them to Borrower or Lender in accordance with this Agreement.

**AGREEMENT:**

1.  <u>Definitions</u>. Capitalized terms used herein shall, unless otherwise defined herein,

1



have the same meanings as set forth in the Loan Agreement.

2. <u>Control Account Funds</u>. All sums received by Disbursement Agent from Lender or Borrower pursuant to this Agreement or the Loan Agreement, together with any and all accrued interest earned thereon and/or any additions thereto made pursuant to this Agreement or the Loan Agreement, are hereinafter referred to collectively as the "**Control Account Funds**." Disbursement Agent hereby agrees to hold the Control Account Funds for Borrower, subject to Lender's security interest therein, and to disburse the Control Account Funds solely in accordance with the terms of this Agreement. Disbursement Agent hereby acknowledges and agrees that the Control Account Funds shall be held and identified separate and apart from other funds or accounts, if any, of Lender and Borrower. Disbursement Agent hereby further agrees that: (a) the Control Account Funds shall be deposited, and held by Disbursement Agent in its name, in a separate, individually identified interest-bearing deposit account entitled "Los Valles Control Account" (the "**Control Account**") with _Mellon 1st Business Bank_ Bank ("**Bank**"), provided that Bank executes and delivers concurrently therewith a Control Agreement in the form attached hereto as **Exhibit "B"** or such other form satisfactory to Lender; (b) immediately upon opening the Control Account, Disbursement Agent shall advise both Borrower and Lender, in writing, of the account number therefor; (c) the Control Account Funds shall at all times be held in the Control Account, in accordance with this Agreement, and shall not at any time be commingled in any general escrow or trust accounts or other accounts of Disbursement Agent; (d) any and all Control Account Funds held by Disbursement Agent pursuant to this Agreement shall at all times, unless expressly instructed in writing to the contrary by Lender, be held in the Control Account or in another deposit account with Bank (so long as Bank (i) expressly acknowledges in writing to Lender that Lender has a perfected security interest therein, and (ii) executes and delivers a Control Agreement in the form attached hereto as **Exhibit "B"** or such other form satisfactory to Lender), and shall not be invested in any other form of account, security or investment, it being expressly understood and agreed that the perfection of Lender's security interest in the Collateral (as defined below) is dependent upon the form in which such Collateral is held by Bank or Disbursement Agent; (e) Disbursement Agent's books and records shall indicate Lender's security interest in the Control Account Funds; and (f) Disbursement Agent hereby waives any and all liens and rights of set-off which Disbursement Agent may now or hereafter acquire with respect to the Control Account Funds. As a matter of agreement between Lender and Borrower with which Disbursement Agent need not be concerned, Borrower hereby agrees to pay interest at the rate set forth in the Note on the full outstanding principal balance under the Note (including the Control Account Funds deposited into the Control Account) throughout the term of the Loan.

3. <u>Security Agreement</u>.

3.1 <u>Grant of Security Interest</u>. Borrower hereby grants to Lender a security interest in the Control Account Funds and in Borrower's rights and interests under this Agreement and the Loan Agreement to secure the obligations of Borrower under the Loan Documents. Disbursement Agent hereby acknowledges that, in addition to acting as escrow holder, it is acting for Lender as pledge holder, bailee and agent, thereby perfecting, through possession, Lender's security interest in the Control Account Funds. Disbursement Agent is (i) the agent of Lender, and its possession of the Control Account Funds constitutes possession of the Control Account Funds

2

by Lender, or (ii) one who, under the Nevada and California Uniform Commercial Code ("UCC"), holds the Control Account Funds as collateral for the benefit of Lender, as the secured party. Lender and Borrower hereby notify Disbursement Agent of Lender's interest as a secured party in the Control Account Funds and Disbursement Agent hereby acknowledges such notification. All such Control Account Funds and all investments thereof shall be held and possessed in the name of Disbursement Agent. The security interest hereby granted and conveyed covers and will cover all forms of deposits and investments in which such Control Account Funds are placed, as well as all income from, and proceeds from, the disposition of such deposits and investments. Thus, the security interest shall exist in the cash originally constituting the Control Account Funds, the initial investments thereof and all cash proceeds therefrom and all reinvestments thereof.

3.2     <u>Agreement is a Loan Document</u>. This Agreement is one of the "Security Documents" as such term is defined in the Loan Agreement and in the Deed of Trust. This Agreement constitutes a security agreement by and between Borrower, as debtor, and Lender, as secured party, with respect to the Control Account Funds and the security interest hereby created in favor of Lender in the Control Account Funds.

3.3     <u>Lender's Remedies</u>. Without limiting the generality of any other provision of this Agreement, upon the occurrence of default under this Agreement or an occurrence of default or Event of Default under any other Loan Document, Lender shall have, in addition to any rights and remedies granted to it under this Agreement and/or any other Loan Document, all of the rights and remedies of a secured creditor under applicable law.

4.     <u>Covenants of Borrower</u>. Borrower hereby agrees:

(a)     to do all acts that may be necessary to maintain, preserve and protect the Control Account Funds;

(b)     not to use or knowingly permit any of the Control Account Funds to be used unlawfully or in violation of any provision of this Agreement, any of the other Loan Documents or any applicable law, statute, regulation or ordinance;

(c)     to pay when due, and before delinquency, all taxes, assessments, charges, encumbrances and liens, if any, now or hereafter imposed upon or affecting any portion of the Control Account Funds; except that Borrower shall not be required to pay and discharge any tax, assessment, charge, or levy that is being actively contested in good faith by appropriate proceedings, as long as Borrower has established and maintains reserves, in accordance with generally accepted accounting principles, adequate to pay any liabilities contested pursuant to this Section and, so that none of the property covered by the Security Documents or the lien or security interest of Lender is in danger of loss or forfeiture;

(d)     to notify Lender and Disbursement Agent promptly of any change in Borrower's name or place of business, or, if Borrower has more than one place of business, its head office, or office in which Borrower's records relating to the Control Account Funds are kept;

3

USACM_LOS VALLES
00075

(e) to procure, execute and deliver, from time to-time, any endorsements, assignments, financing statements and other writings deemed necessary or appropriate by Lender to perfect, maintain and protect Lender's security interest hereunder and the priority thereof;

(f) to appear in and defend any action or proceeding which may affect its title to or Lender's interest in the Control Account Funds;

(g) not to direct or knowingly permit Disbursement Agent to surrender or lose possession of (other than to Lender), or to sell, encumber, transfer or otherwise dispose of any portion of the Control Account Funds or any right or interest therein except as specifically provided herein, and to keep the Control Account Funds free of all levies and security interests or other liens or charges except those approved in writing by Lender and the security interest created hereby; and

(h) to account fully for and promptly deliver to Lender or Disbursement Agent, in the form received, all proceeds of the Control Account Funds received by Borrower which Borrower is not otherwise entitled to retain in accordance with any other provision of this Agreement. When delivered to Lender or Disbursement Agent, Borrower shall endorse such proceeds to Lender or Disbursement Agent, as appropriate. Until so delivered, Borrower shall hold all such proceeds in trust for Lender, separate from all other property of Borrower, and proceeds shall be identified as the property of Lender.

5. <u>Power of Attorney</u>. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact, with full power of substitution, to do (but Lender is not obligated to and shall incur no liability to Borrower or any third party for failure so to do) any act which Borrower is obligated by this Agreement to do, and upon the occurrence of a default hereunder or an occurrence of default or Event of Default under any of the other Loan Documents, to exercise such rights and powers as Borrower might exercise with respect to the Control Account Funds, including, but not limited to, the right to:

(a) collect by legal proceedings or otherwise endorse, receive and receipt for all dividends, interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Control Account Funds;

(b) enter into any extension, reorganization, deposit, merger, consolidation or other agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for the Control Account Funds;

(c) insure, process and preserve the Control Account Funds;

(d) transfer the Control Account Funds to its own or its nominee's name; and

(e) make any compromise or settlement and take any other action it deems advisable with respect to the Control Account Funds. Borrower agrees to reimburse Lender, no later than seventy-two (72) hours after demand, for any reasonable costs and expenses (including, but not limited to, reasonable attorneys' fees and costs) Lender may incur while acting as Borrower's

4

USACM_LOS VALLES
00076

attorney-in-fact hereunder, all of which costs and expenses are included in the obligations secured hereby and by the other Loan Documents.

6. **Disbursements by Disbursement Agent.** The parties agree that Disbursement Agent shall make monthly disbursements of interest to Lender from the Control Account Funds, from time-to-time, pursuant to the terms of the Loan Agreement. Disbursement Agent shall disburse to Lender interest payable to Lender at any time after said payments are due, notwithstanding Borrower's failure to submit a Request for Disbursement or the occurrence of default hereunder or an Event of Default under any of the other Loan Documents. Monthly disbursements from the Interest Reserve Account Funds shall require no Request for Disbursement or other instruction from Borrower.

7. **Authorized Signatories.** Prior to the closing of the Loan, Lender will provide Disbursement Agent with a schedule of authorized signatories ("Authorized Signatories"), all of whom shall be officers or employees of USA. Disbursement Agent is authorized to rely upon any instructions or disclosures furnished to it in writing or pursuant to a provision of this Agreement and shall be entitled to treat as genuine, and as the document it purports to be, any letter, paper or other document furnished to it and believed by it to be genuine and to have been signed and presented by the proper Authorized Signatory.

8. **Acceleration of Note.** Without limiting any of Lender's other rights or remedies, if at any time Lender accelerates the Loan as a result of a default, an occurrence of default or Event of Default under this Agreement or any other Loan Document, Lender may, but is not obligated to, foreclose or otherwise enforce Lender's security interest in any manner permitted by law, or provided for in this Agreement, and, upon written notice to Disbursement Agent, receive from Disbursement Agent the balance of the Control Account Funds and apply the amount received to pay any amounts owed to Lender under any of the Loan Documents in such order as Lender may determine. Lender shall also be entitled to exercise all other rights and remedies granted to a secured party under the provisions of the UCC, as well as all of the rights and remedies granted to it under any of the other Loan Documents and all other rights and remedies granted to Lender at law or in equity.

9. **Conflict with Loan Agreement.** This Agreement is supplementary to, and not in lieu of, the provisions of the Loan Agreement. In the event of any conflict between the provisions hereof and the provisions of the Loan Agreement, the provisions of the Loan Agreement shall control. However, the terms and conditions of this Agreement shall govern the rights, duties and obligations of Disbursement Agent.

10. **Notices.** Any notice, demand, request or other communication required or permitted to be given hereunder shall be in writing and shall be given to the parties at their addresses set forth below by hand delivery, confirmed telecommunication or overnight delivery service. Notice shall be deemed given upon receipt, if by hand delivery or confirmed telecommunication, or one (1) business day after pickup by an overnight delivery service. Any of such addresses may be changed at any time upon written notice of such change given in accordance with this Section or by United States certified or registered mail, return receipt requested, to the other parties by the party effecting the change.

USACM_LOS VALLES
00077

| | |
|---|---|
| **BORROWER'S ADDRESS:** | Los Valles Land & Golf, LLC<br>c/o Palmer Investments, Inc.<br>233 Wilshire Boulevard, Suite 800<br>Santa Monica, California 90401 |
| **LENDER'S ADDRESS:** | c/o USA Commercial Mortgage Company<br>4484 South Pecos Road<br>Las Vegas, Nevada 89121<br>Attn: Joseph D. Milanowski |
| **DISBURSEMENT AGENT'S ADDRESS:** | Builders Control Service Co.<br>7470 North Figueroa Street<br>Los Angeles, California 90041-1709<br>Attn. Joe Cochran |

11. <u>Assignment</u>. This Agreement and all rights, powers, privileges, options and remedies conferred on Lender herein may be assigned by Lender, in whole or in part, to any party. Unless an assignment is otherwise permitted under the Loan Documents, neither Borrower nor Disbursement Agent may assign, in whole or in part, this Agreement or any of the rights, obligations or interests arising hereunder without Lender's prior written consent, and any purported assignment without such consent shall be a nullity. Subject to the foregoing, this Agreement shall inure to the benefit of, and be binding on, the parties hereto and their respective successors and assigns.

12. <u>Replacement of Disbursement Agent</u>.

12.1 <u>Resignation or Discharge of Disbursement Agent</u>. Disbursement Agent may resign and be discharged of the obligations created by this Agreement by executing and delivering to Lender, with a copy to Borrower, notice of its resignation as Disbursement Agent and specifying the date when such resignation is expected to take effect. Upon receiving such notice of resignation, Lender and Borrower shall endeavor to agree upon a successor Disbursement Agent to be appointed by written instrument, in duplicate, executed by Lender and Borrower, one copy of which instrument shall be delivered to the successor Disbursement Agent. If no agreement has been reached as aforesaid and no successor Disbursement Agent shall have been so appointed and have accepted such appointment within twenty (20) days after Lender's receipt of such notice of resignation, Lender shall appoint a successor Disbursement Agent. Any resignation of Disbursement Agent shall become effective upon acceptance of appointment by the successor Disbursement Agent.

12.2 <u>Removal of Disbursement Agent</u>. Lender (or Borrower, with Lender's prior written approval, which approval may be withheld in Lender's reasonable discretion) may remove Disbursement Agent at any time by a written notice signed by Lender. The notice shall appoint a successor Disbursement Agent, and be delivered to the Disbursement Agent so removed with a copy to Borrower.

12.3 <u>Successor Disbursement Agent</u>. If Disbursement Agent shall be removed, or be dissolved, or if its property or affairs shall be taken under the control of any state or federal

court or administrative body or agency because of insolvency or bankruptcy or for any other reason, a vacancy shall forthwith exist in the office of Disbursement Agent, and within a period of thirty (30) days thereafter, a successor shall be appointed by Lender.

Appointments made under this Section 12.3 shall be made by a written instrument or instruments. Lender shall deliver copies of each instrument to the predecessor Disbursement Agent, to the successor Disbursement Agent, and to Borrower. Upon the acceptance of appointment by the successor Disbursement Agent, the predecessor Disbursement Agent shall be compensated for any remaining reasonable out-of-pocket expenses for which it has not been previously reimbursed, but shall not be entitled to any further reimbursement or compensation for its former duties as Disbursement Agent hereunder.

Every successor Disbursement Agent appointed pursuant to this Section 12.3 shall be a duly licensed construction control agent, escrow, trust company or a federal or state bank with trust powers which is a member of the Federal Reserve System. If such successor is a federal or state bank, such bank must: (a) accept deposits in location(s) in Nevada; (b) have combined capital, surplus and undivided profits of at least $100,000,000 and (c) have debt obligations (or, in the case of a bank owned by a bank holding company, the debt obligations of the bank holding company) rated "Aa" or higher by Moody's and "AA" or higher by Standard and Poor's, if such trust company or bank with trust powers, willing and able to accept the obligations hereunder on customary terms can, with reasonable effort, be located.

Any successor Disbursement Agent appointed hereunder shall execute, acknowledge and deliver to Lender and Borrower an instrument accepting such appointment, and thereupon such successor Disbursement Agent, without any further act, deed or conveyance, shall become duly vested with all of the property, rights, powers, trusts, duties and obligations of its predecessor with the same effect as if originally named Disbursement Agent. Upon request of such successor Disbursement Agent, the Disbursement Agent ceasing to act, Lender and Borrower shall execute and deliver an instrument transferring to such successor Disbursement Agent all the property, rights, powers and trusts of the Disbursement Agent so ceasing to act, and such Disbursement Agent so ceasing to act shall pay over or deliver to the successor Disbursement Agent all moneys, records and other assets then held by it.

13.     <u>Disbursement Agent's Duties</u>. Notwithstanding anything to the contrary contained herein, Disbursement Agent's duties are limited to the holding, investing and reinvesting of the Control Account Funds, disbursing of the same with Lender's prior written approval as provided herein, the giving of notices to Lender as provided herein and such other duties as are set forth herein. No duties or obligations shall be implied to Disbursement Agent.

14.     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to its choice of law provisions.

15.     <u>No Third Party Rights</u>. Borrower and Lender agree that no party other than them shall have or acquire any rights or interest under this Agreement or in the Control Account Funds, whether as a third party beneficiary hereof or otherwise, and Lender shall have no liability hereunder

USACM_LOS VALLES
00079

with respect to any such other party.

16. **Incorporation of Loan Agreement.** The Loan Agreement and all exhibits thereto are incorporated herein by reference for all purposes.

17. **Attorneys' Fees.** Lender is entitled to recover from Borrower all reasonable costs, fees and expenses (including, but not limited to, reasonable attorneys' fees and costs) incurred or paid by Lender in exercising any right, power or remedy provided by this Agreement.

18. **No Costs to Lender.** Borrower shall pay from its separate funds, and not from the Control Account Funds, all reasonable costs, fees and expenses relating to or in connection with this Agreement or the escrow created hereby (including, without limitation, all escrow fees and costs).

19. **Waivers.** Lender may waive any and all provisions in the Loan Agreement for the benefit of Lender without notice to anyone, and no one shall have the right to rely upon Lender's doing or not doing or having done or not having done anything that Lender is entitled to do under the provisions of the Loan Agreement.

IN WITNESS WHEREOF, Lender, Borrower and Disbursement Agent have caused the execution of this Agreement by their authorized representatives as of the date first set above.

**BORROWER:**    Los Valles Land & Golf, LLC
By: Palmer-Los Valles, LLC, Managing Member
By: Palmer Investments, Inc., its Managing Member

By: _____
Dan S. Palmer, Jr., President

**DISBURSEMENT AGENT:**    Builders Control Service Co.

By: _____
Joe Cochran, President

**LENDER:**    USA Commercial Mortgage Company, Attorney-in-Fact

By: _____
Joseph D. Milanowski, President

8

USACM_LOS VALLES
00080

# EXHIBIT "A"

## LENDER

| Names | Amount |
|---|---|
| Michael M. Alldredge & Ellen M. Alldredge, joint tenants with right of survivorship | $50,000.00 |
| Angel J. Banos & William A. Banos Trustees of The Mirtha M. Banos Family Trust dated 11/13/91 | $80,000.00 |
| Pedro Luis Barroso & Carol Ann Barroso Trustees for the benefit of Pedro L. & Carol A. Barroso Trust dated 11/29/90 | $50,000.00 |
| Bruce H. Bartlett & Fay Bartlett, husband and wife, as joint tenants with the right of survivorship | $25,000.00 |
| Rodney Beilby & Dione Beilby, joint tenants with right of survivorship | $75,000.00 |
| Daniel P. Bradshaw | $60,000.00 |
| Marie Elizabeth Bradshaw, an unmarried woman & Paul Bradshaw, a married man, as joint tenants with right of survivorship | $50,000.00 |
| Ashley Brooks | $50,000.00 |
| Fertitta Enterprises, Inc. | $1,000,000.00 |
| Scott K. Canepa | $700,000.00 |
| Brandon Arner Cangelosi, an unmarried man, & Donna M. Cangelosi, a married woman, as joint tenants with the right of survivorship | $50,000.00 |
| Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $40,000.00 |
| Peter W. Capone & Deidre D. Capone, husband & wife, as joint tenants with the right of survivorship | $25,000.00 |
| Jill Chioino & John Choe, joint tenants with right of survivorship | $50,000.00 |
| Robert T Chylak & Barbara M Chylak Trustees of the Robert T Chylak & Barbara M Chylak Family Trust dated 10/30/90 | $25,000.00 |
| James Cielen, an unmarried man | $25,000.00 |
| Irwin Cohen & Marilyn T. Cohen Trustees of the Cohen Living Trust dtd 3/6/90 | $55,000.00 |
| First Savings Bank Custodian For Dennis J. Dalton, IRA | $115,000.00 |
| Lisa Y. Daskas | $50,000.00 |
| Erika Davis | $45,000.00 |
| Pat Davis & Susan Davis, husband & wife, as joint tenants with right of survivorship | $50,000.00 |
| Tracy A. DeBerry, an unmarried man | $50,000.00 |
| David E. Derby & Patricia J. Derby, husband & wife, as joint tenants with the right of survivorship | $60,000.00 |
| Panagiotis Dovanidis, a single man & Dimitra Dovanidou, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $50,000.00 |
| James J. Duffy Jr. Trustee of the Duffy 1986 Trust dated 6/18/86 | $150,000.00 |
| Prince Emmanuel, a single man | $25,000.00 |
| Richard L. English | $300,000.00 |
| Marc Scot Etterman Trustee of the Marc Scot Etterman Living Trust dtd 2/11/03 | $25,000.00 |

USACM_LOS VALLES
00081

| | |
|---|---|
| Sagrario T. Evers, an unmarried woman | $25,000.00 |
| Denise F. Fager Trustee of the Denise F. Fager Revocable Trust under agreement dated 2/28/03 | $50,000.00 |
| Thomas John Farano, an unmarried man | $60,000.00 |
| Lucille Farrlow Trustee of the Lucille Farrlow Trust 2000 | $150,000.00 |
| Dennis Flier & Carol Flier Trustees of the Flier Family Trust dated 1/21/98 | $80,000.00 |
| Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $250,000.00 |
| Allen K. Forbes | $30,000.00 |
| Greg L. Goeken, a married man dealing with his sole and separate property | $50,000.00 |
| Joseph Golden & Lorraine Golden, husband & wife, as joint tenants with right of survivorship | $25,000.00 |
| Joyce E. Goldman, a married woman dealing with her sole and separate property | $90,000.00 |
| Jerry Goulding & Florie Goulding, joint tenants with right of survivorship | $100,000.00 |
| Kenneth R. Greene & N. Dean Greene, husband and wife, as joint tenants right of survivorship | $25,000.00 |
| MLH Family Investment Limited | $150,000.00 |
| Blakes House Floral & Balloon Co. | $50,000.00 |
| Beverly Hayes & Charles Hayes, wife & husband, as joint tenants with right of survivorship | $25,000.00 |
| Robert W. Heinsohn & Phyllis A. Heinsohn Trust | $25,000.00 |
| Jay E. Henman Retirement Plan | $35,000.00 |
| Delwin C. Holt, an unmarried man | $25,000.00 |
| William G. Homer, a married man, dealing with his sole and separate property | $25,000.00 |
| Charles E. Huff & Vana J. Huff, joint tenants with right of survivorship | $50,000.00 |
| Mary Jean Jellison, a married woman dealing with her sole & separate property | $25,000.00 |
| David Joyce, a married man dealing with his sole & separate property | $50,000.00 |
| Kenneth W. Koerwitz & Jan Case Koerwitz Trustees for the Kenneth W. Koerwitz & Jan Case Koerwitz Family Trust dated 5/13/03 | $450,000.00 |
| David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust Under Agreement dated 12/9/99 | $50,000.00 |
| John Lafayette & Marina Lafayette, joint tenants with right of survivorship | $40,000.00 |
| Milton W. Laird & Beverly J. Laird, husband and wife, as joint tenants with right of survivorship | $25,000.00 |
| Jordan Levenson | $30,000.00 |
| Jay Lim & Kim M. Lim, joint tenants with right of survivorship | $135,000.00 |
| Patrick P. Lynch, a single man | $50,000.00 |
| F. Roy MacKintosh Trustee of the Great Basin Foundation For Biomedical Research | $50,000.00 |
| Betty Gudger, a single woman & Morris Mansell & Marcia Mansell, husband & wife, as joint tenants | $27,000.00 |
| Titan Management, LTD Trustee of the The Gaston Trust dated 12/31/02 | $50,000.00 |
| Lily Markham & Irene Anne Markham-Tafoya | $30,000.00 |
| JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000.00 |
| James W. McCollum & Pamela P. McCollum, joint tenants with right of | |

USACM_LOS VALLES
00082

| | |
|---|---|
| survivorship | $100,000.00 |
| Christiane Mencini-Baker Trustee of the Christiane Mencini-Baker Revocable Trust | $50,000.00 |
| Michaelian Holdings, LLC | $50,000.00 |
| Cynthia Milanowski Trustee of the Cynthia Milanowski Trust | $50,000.00 |
| Steve H. Miller & Karen L. Miller, husband & wife, as joint tenants with right of survivorship | $25,000.00 |
| Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $50,000.00 |
| Ron L. Moskowitz | $50,000.00 |
| Markus Muchenberger Trustee of the Markus Muchenberger Revocable Trust dated 11/19/03 | $25,000.00 |
| Walter Musso & Barbara Musso Trustees of the Musso Living Trust dtd 11/30/92 | $50,000.00 |
| James S. Nelson, IV & Delana D. Nelson, husband & wife as tenants in common | $500,000.00 |
| Richard Nevins & Michele Nevins, joint tenants with right of survivorship | $525,000.00 |
| John Nix & Lisa Nix, joint tenants with right of survivorship | $50,000.00 |
| Arthur Noel Trustee of the Arthur J. Noel Trust dated 2/10/97 | $65,000.00 |
| Roger Noorthoek | $30,000.00 |
| Robert H. O'Connor & Cathleen B. O'Connor Trustees of the O'Connor Revocable Trust UTD 9/17/97 | $35,000.00 |
| Robert O'Connor Sr. Administrator of the Bob O'Connor Self Employed Retirement Account | $25,000.00 |
| Alfred Olsen, Jr. & Gail B. Olsen, joint tenants with right of survivorship | $25,000.00 |
| Patti Ossen, Trustee of The Patti Ossen 1999 Revocable Trust | $50,000.00 |
| Patti Page, a single woman | $100,000.00 |
| Philip A. Palmintere & Nanci S. Palmintere Trustees of the Palmintere Revocable Trust dated 6/19/98 | $25,000.00 |
| Cynthia Ann Pardee trustee of the Cynthia Ann Pardee Trust dated 6/20/03 | $25,000.00 |
| Michael Percy & Carol Percy Trustees of the Percy Family Trust U/A 9/28/99 | $25,000.00 |
| Michael Pezzano & Lisa Pezzano, joint tenants with right of survivorship | $25,000.00 |
| David Pumphrey & Patricia Pumphrey Trustees of the Pumphrey Family Trust dated 11/8/89 | $50,000.00 |
| Dennis Raggi, a married man dealing with his sole & separate property | $300,000.00 |
| First Savings Bank Custodian For Carolyn Rand Samuelson IRA | $35,000.00 |
| Charles W. Remsen & Kristen J. Remsen Trustees of the Charles W. & Kristen J. Remsen Revocable Trust dated 4/17/00 | $50,000.00 |
| Janis Romo, the custodian of Mario West Romo, a minor under UTMA | $25,000.00 |
| Burton M Sack Trustee of the David A Sack Irrevocable Trust dated 3/28/94 | $100,000.00 |
| Burton M Sack Trustee of the Scott A Sack Irrevocable Trust dated 3/18/94 | $100,000.00 |
| Carmine Spinelli & Anna Spinelli, joint tenants with right of survivorship | $50,000.00 |
| Gold Rush Lounge, Inc. | $25,000.00 |
| Michael Spinelli | $115,000.00 |
| Nicholas A. Steinmetz & Cynthia M. Steinmetz Trustees of the 2001 Steinmetz Family Trust | $50,000.00 |

USACM_LOS VALLES 00083

| | |
|---|---:|
| Joseph Sterling & Theresa Sterling Trustees of the Sterling Family Trust dated 6/14/02 | $50,000.00 |
| James C. Still, a married man dealing with his sole & separate property | $50,000.00 |
| Elizabeth Stryks Shaw, a single woman | $35,000.00 |
| Wayne P. Tarr & Elizabeth G. Tarr, joint tenants with right of survivorship | $25,000.00 |
| KTaylorGO Investments, LTD | $50,000.00 |
| Lawrence H. Tengan & Lorraine K. Tengan Trustees of the Lawrence H. Tengan & Lorraine K. Tengan Revocable Trust | $25,000.00 |
| Thomas L. Terrell & Judith J. Terrell, husband and wife, as joint tenants with right of survivorship | $50,000.00 |
| Lesleigh J. Tolin, a single woman, & Richard Chambers, an unmarried man, as joint tenants with right of survivorship | $30,000.00 |
| Ann Ulfelder & Leonard Ulfelder, husband and wife as joint tenants with right of survivorship | $50,000.00 |
| Robert W. Ulm, an unmarried man | $150,000.00 |
| USA Commercial Mortgage | $383,000.00 |
| Lloyd F. Van Sickle Trustee of the The Van Sickle Family Trust dated 5/20/99 | $60,000.00 |
| Tobias Von Euw & Patricia Von Euw Trustees of the Von Euw 1996 Trust | $25,000.00 |
| Marietta S. Von Berg, a single woman | $50,000.00 |
| Richard G. Vrbancic, a single man | $25,000.00 |
| Mike Wagnon, a married man dealing with his sole & separate property | $300,000.00 |
| Delbert Watkins & Mary Ann Watkins Trustees of the Watkins Family Trust dated 7/24/92 | $25,000.00 |
| Jerry Woldorsky | $25,000.00 |
| Gregory D. Yonai Trustee of the Gregory D. Yonai Family Trust | $25,000.00 |
| TOTAL | $10,000,000 |

USACM_LOS VALLES
00084

## EXHIBIT "B"

## DEPOSIT ACCOUNT CONTROL AGREEMENT

Mellon 1ST Business Bank
One Bunker Hill Building
601 West Fifth Street
Los Angeles, CA 90071

Ladies and Gentlemen:

Please be advised that pursuant to certain agreements between Los Valles Land & Golf, LLC, a Delaware Limited Liability Company ("**Borrower**") and those listed on **Exhibit "A"** hereto ("**Lender**"), Borrower has granted to Lender a security interest in all rights of the Borrower with respect to account number 001-315080 (such account, together with all substitutions and replacements therefor, the "**Deposit Account**") located at Mellon 1ST Business Bank, One Bunker Hill Building, 601 West Fifth Street, Los Angeles, CA 90071 ("**Depositary Bank**") titled to reflect the Lender's interest in the Deposit Account and subject to the terms of the Deposit Agreements (defined below).

1. Borrower has already executed (or shall execute) deposit resolutions, a deposit agreement and such other agreements (collectively, the "**Deposit Agreements**") reasonably required by Depositary Bank to establish deposit services for Borrower. The provisions of this Deposit Account Control Agreement (this "**Agreement**") shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect. All items deposited into the Deposit Account shall be processed according to the provisions of the Deposit Agreements, as amended by this agreement.

2. Borrower has granted to lender a first-lien security interest in, amount other property, the Deposit Account and all credits or proceeds thereto and all monies, checks and other instruments held or deposited therein (all of which shall be included in the definition of the "**Deposit Account**").

3. In order to provide Lender with control over the Deposit Account, Borrower hereby agrees that Depositary Bank may comply with any and all orders, notices, request and other instructions originated by Lender directing disposition of the funds in the Deposit Account without any further consent from Borrower, even if such instructions are contrary to any of Borrower's instruction or demands or result in Depository Bank dishonoring items which may be presented for payment. Borrower hereby agrees that instruction from Lender may include the giving of stop payment orders for any items

USACM_LOS VALLES
00085

presented to the Deposit Account, instructions to transfer funds to or for the benefit of Lender or any other person or entity, and instructions to redeem and/or terminate the Deposit Account.

4. The Deposit Account shall be under the control of Lender; provided, however, unless and until Depositary Bank receives Lender's written notice that Borrower's access to the funds in the Deposit Account is terminated, Depositary Bank shall honor Borrower's instructions, notices and directions with respect to the transfer or withdrawal of funds from the Deposit Account, including paying or transferring the funds to Borrower or any other person or entity. Upon receipt of written notice from Lender instructing Depository Bank to terminate Borrower's access to funds in the Deposit Account, Depositary Bank shall confirm in writing receipt of such notice and shall wire transfer or ACH all collected funds in the Deposit Account to Lender as follows (unless the Lender provides contrary instructions):

>Mellon 1ST Business Bank
>One Bunker Hill Building
>601 West Fifth Street
>Los Angeles, CA 90071
>
>ABA Routing No: 122038442
>Account Name: Los Valles Land & Golf, LLC HITB
>Builders Control Service Co.- #371
>Account No.: 001-315080

or to such other bank as Lender may from time to time direct in writing to Depositary Bank at the address set forth above or such other address as Lender shall notify Depositary Bank. As for any such written notice sent under this Paragraph 4 to Depositary Bank, Depositary Bank shall endeavor to promptly transfer to Lender the collected funds as required above, or otherwise comply with other instructions given by Lender. Accordingly, Depositary Bank will honor any instructions given by Lender with regard to the Deposit Account, irrespective of any contrary instructions given by Borrower.

5. Borrower and Depositary Bank acknowledge notice of and recognize Lender's continuing security interest in Deposit Account and in all items deposited in the Deposit Account and in the proceeds thereof. Depositary Bank hereby subordinates any statutory or contractual right or claim of offset or lien resulting from any transaction which involves the Deposit Account upon Depositary Bank's receipt of Lender's notice under Paragraph 4 of this Agreement. Notwithstanding the preceding sentence, in the event any fees and expenses (Fee's) related to the Deposit Account go unpaid or any checks or other items which were deposited or credited to the Deposit Account are returned, reversed, refunded or charged back for insufficient funds or for any other reason ("**Returned Items**"), Depositary Bank may charge the Deposit Account or other accounts of Borrower maintained at the Depositary Bank. If there are insufficient funds in the Deposit Account or any of

Borrower's other accounts to cover the Fees and Returned Items, Borrower agrees to immediately reimburse Depositary Bank for the amount of such shortfall. If Borrower fails to pay the amount demanded by Bank, Lender agrees to reimburse Depositary Bank within three (3) business days of demand thereof by Depositary Bank for any Fees and Returned Items to the extent Lender actually received payment in respect thereof pursuant to Paragraph 4 of this Agreement.

6. Borrower agrees to defend, indemnify and hold Depositary Bank and its directors, officers, employees, attorneys, successors and assigns (collectively, **"Depositary Bank Indemnitees"**) harmless from and against any and all claims, losses, liabilities, costs, damages and expenses, including, without limitation, reasonable legal and accounting fees (collectively, **"Indemnified Costs"**), arising out of or in any way related to this Agreement, excepting only liability arising out of the gross negligence or willful misconduct of Depositary Bank Indemnitees. Lender agrees to release and hold Depositary Bank Indemnities harmless from and against any and all Indemnified Costs arising out of or in any way related to this Agreement, excepting only liability arising out of the gross negligence or willful misconduct of Depositary Bank Indemnitees. IN NO EVENT WILL DEPOSITARY BANK BE LIABLE FOR ANY INDIRECT DAMAGES, LOST PROFITS, SPECIAL, PUNITIVE , OR CONSEQUENTIAL DAMAGES WHICH ARISE OUT OF OR IN CONNECTION WITH THE SERVICES CONTEMPLATED BY THIS AGREEMENT EVEN IF DEPOSITARY BANK HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. The provisions of this Paragraph 6 will survive termination of this Agreement.

7. The duties of Depositary Bank are strictly limited to those set forth in this Agreement and Depositary Bank is not acting as fiduciary for any party hereto. Depositary Bank shall be protected in relying on any form of instruction or other notice purporting to be from Lender which Depositary Bank, in good faith, believes to be genuine and what it purports to be. Depositary Bank shall have no duty to inquire as to the genuineness, validity, or enforceability of any such instruction or notice. The Deposit Account and all actions and undertakings by Depositary Bank shall be subject to all rules and regulations relating to the Deposit Account and to applicable law.

8. So long as any obligations of Borrower to Lender are outstanding and unpaid, this Agreement shall not be terminable by Borrower or by Depositary Bank unless thirty (30) days prior written notice is provided to Lender by Depositary Bank; provided, however, that Depositary Bank may terminate this Agreement immediately in the event Lender fails to make payments to Depositary Bank in accordance with Paragraph 5 above. This Agreement may be terminated by Lender in writing sent to Depositary Bank in which Lender releases Depositary Bank from any further obligation to comply with instructions originated by Lender with respect to the Deposit Account. Any collected funds remaining in the Deposit Account upon termination or deposited in thereafter shall be transferred in accordance with the provisions of Paragraph 4, above, after deduction for any amounts otherwise reimbursable to Depositary Bank or provided hereunder. This Agreement may be amended only with the prior consent of Lender and Depositary Bank.

9. In the event Depositary Bank receives any form of legal process concerning the Deposit Account including, without limitation, court orders, levies, garnishments, attachments, and writs of execution, or in the event Depositary Bank learns of any insolvency proceeding concerning Borrower, including, without limitation, bankruptcy, receivership, and assignment for the benefit of creditors, Depositary Bank will respond to such legal process or knowledge of insolvency in the normal course or as required by law.

10. This Agreement shall be governed by and construed in accordance with the laws of the state where the Deposit Account is maintained.

11. Except as otherwise provided in this Agreement, all notices and other communications required under this Agreement shall be in writing and may be personally served or sent United States Mail certified or reputable overnight courier, and shall be deemed given when delivered in person, by overnight courier or upon three (3) business days after deposit in the United States Mail at the address specified below. Any party may change its address for notices hereunder by notice to all parties given in accordance with Paragraph 10.

**BORROWER:** Los Valles Land & Golf, LLC
c/o Palmer Investments, Inc.
233 Wilshire Boulevard, Suite 800
Santa Monica, California 90401
Attention: Dan S. Palmer, Jr., President

**LENDER:** c/o USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121
Attention: Joseph E. Milanowski

**DEPOSITARY BANK:** Mellon 1st Business Bank
One Bunker Hill Building
601 West Fifth Street
Los Angeles, CA 90071
Attention: David Kohn

12. This Agreement shall bind and benefit the parties and their respective successors and assigns. None of the terms of this Agreement may be waived except as Depositary Bank and Lender may and Lenders consent thereto in writing. No delay on the part of Depositary Bank or Lender in exercising any right, power or privilege hereunder shall operate as a waiver hereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude other or further exercise thereof or the exercise of any right, power or privilege. The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies which Lender would otherwise have.

13. This Agreement may be executed in any number of several counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

14. BORROWER, LENDER AND DEPOSITARY BANK HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY JUDICIAL PROCEEDING ARISING OUT OF, OR RELATING TO, THIS AGREEMENT OR SERVICES RENDERED IN CONNECTION WITH THIS AGREEMENT.

15. The parties hereby intend, acknowledge and agree that this Agreement satisfies any requirements under California law for the perfection of a security interest in a deposit account, including, but not limited to, the requirements of the California Commercial Code and any requirements thereunder regarding Lender having control over Deposit Account. Accordingly, Lender has, and shall retain, a first lien security interest in the Deposit Account, superior to all other claims. Further, Depositary Bank represents, warrants, and agrees that it does not now have, and will not acquire, a security interest in the Deposit Account.

Dated as of March 18, 2004

Very truly yours,

    Los Valles Land & Golf, LLC
    By: Palmer-Los Valles, LLC Managing Member
    By: Palmer Investments, Inc., its Managing Member

By: _____
       Dan S. Palmer, Jr., President

    USA Commercial Mortgage Company, Attorney-in-Fact

By: _____
       Joseph E. Milanowski, President

**ACCEPTED:**    Mellon 1ST Business Bank
                   By: _/s/_____
                         David Kohn

                  Builders Control Service Co.
                  By: _/s/_____
                     Joseph E. Cochran, President

USACM_LOS VALLES
00090