LEWIS
AND
ROCA
LLP
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

**Susan M. Freeman** AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
**Rob Charles** NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 1/25/08

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA Commercial Mortgage Company, | Case No. BK-S-06-10727-LBR |
| | Case No. BK-S-06-10728-LBR[1] |
| USA Capital Realty Advisors, LLC, | Case No. BK-S-06-10729-LBR[2] |
| | |
| USA Capital Diversified Trust Deed Fund, LLC, | CHAPTER 11 |
| | |
| USA Capital First Trust Deed Fund, LLC,[1] | Jointly Administered Under Case No. BK-S-06-10725 LBR |
| | |
| USA Securities, LLC,[2]                    Debtors. | **USACM Liquidating Trust Quarterly Report For Period Ending December 31, 2007** |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The USACM Liquidating Trust Quarterly Report by Geoffrey Berman, Trustee for period ending December 31, 2007, is attached hereto. For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

---

[1] This bankruptcy case was closed on October 12, 2007.

[2] This bankruptcy case was closed on December 26, 2007.

1898910.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1

DATED: January 25, 2008.

2

**LEWIS AND ROCA LLP**

3

4

By: /s/ RC (#6593)

5

Rob Charles, NV 6593

6

*Counsel for USACM Liquidating Trust*

7

Proof of Service

8

Copy of the foregoing served via email on
Friday, January 25, 2008 to all parties

9

listed on the Post Effective Date Official
Service List on file with this Court

10

11

/s/ Christine Laurel

12

Christine Laurel
Lewis and Roca LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2

1898910.1

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

**January 2008**

USACM Liquidating Trust
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
Development Specialists, Inc.
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

Lewis and Roca LLP
Rob Charles
Susan M. Freeman
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating
Trust

232751.1

# TABLE OF CONTENTS

**Page**

I.  TRUST ADMINISTRATION ................................................................................ 1

    A.  Website ........................................................................................................ 1

    B.  Oversight Committee.................................................................................... 1

    C.  Trust Staff .................................................................................................... 2

    D.  BMC Access to Court Docket....................................................................... 2

II.  PLAN OF REORGANIZATION ISSUES ......................................................... 2

    A.  Confirmation Order Appeals......................................................................... 2

    B.  Compass' Complaint To Revoke Plan Confirmation.................................... 3

III.  USACM ISSUES ................................................................................................. 3

    A.  Tax Returns .................................................................................................. 3

    B.  USACM v. Compass USA SPE LLC ............................................................ 3

IV.  INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET
    DEFENDANTS ...................................................................................................... 3

V.  PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
    OTHER BANKRUPTCY PROCEEDINGS ..................................................... 5

    A.  The USAIP Receivership and Involuntary Chapter 11 Case ............................... 5

        1.  Trustee.................................................................................................. 5

        2.  Appeal .................................................................................................. 5

        3.  Proofs of Claim.................................................................................... 6

        4.  Waverton Fee Application ................................................................... 6

        5.  Fee Applications .................................................................................. 6

    B.  Insiders – Thomas Hantges and Joseph Milanowski................................... 6

        1.  Hantges................................................................................................ 6

232751.

2.      Milanowski .......................................................................................... 7

3.      Proofs of Claim ................................................................................... 7

C.   HMA Sales, LLC ............................................................................................. 8

1.      Fee Applications ................................................................................. 9

D.   USA Commercial Real Estate Group ............................................................ 9

E.   Salvatore Reale ............................................................................................... 9

F.   JMK Investments ......................................................................................... 10

G.   Tree Moss Partners, LLC ............................................................................ 10

H.   Vegas Hot Spots, LLC ................................................................................. 10

I.    Capital Land Investors, LLC ....................................................................... 11

J.    Palm Harbor One LLC ................................................................................. 11

VI.   COLLECTION OF TRUST ASSETS ..................................................................... 11

A.   Reserves ........................................................................................................ 11

B.   Colt Loan ...................................................................................................... 11

C.   Compass Escrows ......................................................................................... 12

D.   Other Collections ......................................................................................... 12

E.   Hantges Life Insurance ................................................................................ 12

VII.  RELATED COMPANY INVESTIGATIONS ........................................................ 13

A.   USA Investors III, LLC ............................................................................... 13

B.   PerUSA, LLC ............................................................................................... 13

C.   Amblamo, LLC ............................................................................................ 13

VIII. PROFESSIONAL FEE APPLICATION OBJECTIONS ............................................ 13

A.   Post-Effective Date Fees ............................................................................. 13

IX.   PROOFS OF CLAIM AND CLAIMS OBJECTIONS ................................................ 13

A.   Overview ...................................................................................................... 13

232751.

B.     Contact Information ........................................................................ 16

C.     Objection Deadline........................................................................ 16

D.     Claims For Stolen Principal ......................................................... 17

E.     Compass v. LPG.......................................................................... 17

F.     Disbursing Agent Agreement ....................................................... 18

X.     LOAN SERVICING ISSUES ................................................................ 18

A.     USA Investors VI, LLC ............................................................... 18

    1.     Direct Loan........................................................................ 18

    2.     Sale of Hotel Zoso ............................................................ 19

    3.     Plan of Reorganization...................................................... 19

    4.     Creditors Committee......................................................... 19

    5.     Fee Applications ............................................................... 20

B.     Trust Loan Servicing - Placer Vineyards............................................ 20

C.     Compass Trust Loan Servicing – Collection of Prepaid Interest......................... 21

D.     USACM Loan Servicing............................................................... 22

XI.     NEGOTIATIONS WITH DTDF........................................................... 22

XII.     TRUST FINANCIAL STATEMENT.................................................... 22

232751.

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

### January 2008

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during October through December 2007 on:

- administration of the Trust;

- resolution of appeals of the Order Confirming the 'Debtors' Third Amended Plan of Reorganization,' as Modified Herein ("Confirmation Order" and "Plan") and a complaint to revoke the Confirmation Order;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- investigation of causes of action against potential recovery targets;

- preservation and pursuit of insider assets through involuntary bankruptcy cases of USA Investment Partners, LLC ("USAIP"), Joseph Milanowski, and Thomas Hantges, and advocating the Trust's interests in related entities bankruptcy cases affecting Trust assets and loan servicing;

- collection of other assets;

- claims analysis and resolution of disputed claims; and

- loan servicing issues.

These and other topics are briefly described in this report, along with comments on the attached financial statement of the Trust as of December 31, 2007.

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust changed the name of and kept the address of the Official Unsecured Creditors Committee's website as the Trust's website. That address is: http://usacmcucc.bmcgroup.com/default.aspx. We welcome your suggestions for content on the Trust's website.

### B.    Oversight Committee

The Trust functions with an Oversight Committee created by the Plan and the Trust Agreement. Charles Hainsworth, Donald Walker, James Bonfiglio, Michael Tucker, and

232751.1

Suzanne Nounna, are the members of the Oversight Committee.  The Oversight Committee met on November 1, 2007 to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues.  The next meeting of the Oversight Committee is February 1, 2008.  Regular communication between the Trust and the Oversight Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff

The Trustee is employed by Development Specialists, Inc. ("DSI").[1]  The Trustee is using staff of DSI to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.  In addition, and as has previously been reported, the Trustee selected Rob Charles[2] and Susan M. Freeman[3] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel.  Other attorneys at that firm have been assisting the Trust as well, including John Hinderaker who has been handling claims litigation.[4]  Separate litigation counsel, Allan Diamond of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

### D.    BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases.  While those dockets, and the associated claim information, are available to the public for a fee through PACER, the Trust believes that the Court and creditors are better served by the Trust bearing that expense, for the time being.

## II.    PLAN OF REORGANIZATION ISSUES

### A.    Confirmation Order Appeals

The sole remaining appeal (by Debt Acquisition Company of America V, LLC ("DACA")) from the Confirmation Order, which was affirmed by the United States District Court, Nevada, is pending before the United States Court of Appeals for the Ninth Circuit.  A briefing schedule was set recently and the Trust will continue to work closely with representatives of the Debtor in addressing this appeal.

---

[1] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[2] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[3] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[4] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369

232751.1

### B.    Compass' Complaint To Revoke Plan Confirmation

On July 7, 2007, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada) and Compass Financial Partners, LLC (Delaware) filed a Complaint for Conditional Revocation of Confirmation Order Under 11 U.S.C. § 1144 and Rescission of Asset Purchase Agreement in the Bankruptcy Court, Case No. 07-01105-lbr.  The Complaint seeks to revoke the Confirmation Order.  USA Capital First Trust Deed Fund, LLC ("FTDF") filed a motion to dismiss the complaint.  Before the Court ruled on the motion, Compass dismissed FTDF from the action.  Compass has not served the complaint on any defendant, but has also dismissed the complaint against USA Capital Realty Advisors, LLC ("Realty"), and USA Securities, LLC ("Securities").  Neither USACM nor the Trust has been served with the complaint as of the date of this Report and the Trust will vigorously defend the complaint and seek its dismissal, if the complaint is not voluntarily dismissed.  Compass has previously advised counsel for USACM, Annette Jarvis, that the complaint will be dismissed against USACM.

## III.    USACM ISSUES

### A.    Tax Returns

The Trust has been advised that the 2006 federal income tax returns for USACM, FTDF, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), Securities, and Realty were prepared and filed by KPMG, which was employed by USACM to prepare these tax returns and related K-1 information returns.  The Trust was provided with a copy of the USACM return.  However the Trust has no way to respond to investors' concerns about their respective K-1 statements.

### B.    USACM v. Compass USA SPE LLC

On August 7, 2007, USACM sued Compass for $258,996.00 that USACM alleged Compass owes pursuant to a sub-servicing agreement dated as of February 16, 2007.  USACM had agreed to continue servicing loans for Compass pending Compass' application to be licensed by the State of Nevada Mortgage Lending Division.  USACM alleged that Compass failed to pay sums due under the agreement.  The matter was settled by Compass' payment of a portion of the sub-servicing fees demanded by USACM and dismissal of the action on November 16, 2007.

## IV.    INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

As noted above, the Trust assumed the employment of the Diamond McCarthy law firm as special litigation counsel upon the Effective Date of the Plan.  Diamond McCarthy has actively conducted formal and informal discovery of files, witnesses and transactions since its engagement in January 2007.  The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of

232751.1

creditors.  In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to obtain payment for creditors.  Diamond McCarthy is coordinating those efforts with others, including DTDF, the USAIP Trustee, and the Trustees for Hantges and Milanowski mentioned below.

On September 27, 2007, the Bankruptcy Court entered its Amended Stipulated Protective Order.  This Order finally resolved the process for the Trust's special litigation counsel to review email and other documents as to which any of USA Investment Partners, LLC, Hantges, or Milanowski claimed an attorney-client or other privilege.  These IP Parties were required to identify documents that might contain privileged information, which would be segregated and reviewed to see if the claim of privilege was valid.  Any information not otherwise claimed as privileged would be available for investigation.  It was not in fact until December, 2007 that the special litigation counsel had meaningful access to Milanowski and Hantges' email.

The Trust has a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing.  The two-year anniversary of the bankruptcy filing is April 13, 2008.  This deadline is driving much of the activity over the next few weeks/months so as to be in a position to have filed those causes of action reasonably believed to justify the time and expense of litigation.

Among the causes of action the Trust is investigating are preference and fraudulent transfer actions.  A preferential transfer is:

- A transfer of an interest of the debtor in property

- To or for the benefit of a creditor

- For or on account of an antecedent debt owed by the debtor before the transfer was made

- Made while the debtor was insolvent

- Made within 90 days before the date of the bankruptcy petition filing

- Or made between 90 days and one year before the bankruptcy filing if the transferee was an insider

- That enabled the creditor to receive more than the creditor would have received if the transfer had not been made and the case were a chapter 7 case where the creditor received a distribution through the chapter 7 process

11 U.S.C. § 547.  As the Trust is evaluating these potential causes of action, it gives weight to the fact that such claims against Direct Lenders arising out of Direct Loans generally were released by the confirmed Plan of Reorganization.

In addition, the Trust is investigating the avoidance of fraudulent transfers under bankruptcy law (11 U.S.C. § 548) or applicable state law, generally the Nevada version of the Uniform Fraudulent Transfer Act. Those types of claims against Direct Lenders were not released under the Plan, but the statute of limitations deadline was tolled for two years. Collection of Prepaid Interest through netting will reduce or hopefully be sufficient to satisfy most if not all such claims against Direct Lenders.

The Trust is currently prosecuting adversary proceedings against Salvatore Reale (see p. 9 below) and JMK Investments et al. (see p. 10 below). Additional complaints will be filed before April 13, 2008.

## V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    The USAIP Receivership and Involuntary Chapter 11 Case

USA Investment Partners, LLC ("USAIIP") is the maker of a $58,374,918.81 promissory note (the "$58 million Note") to USACM for the benefit of creditors (including DTDF). Repayment of the $58 million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned or in part by USAIP.[5] The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims. USAIP is a debtor in a bankruptcy case pending in Nevada (case #07-11821-LBR).

### 1.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the Bankruptcy Court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP. Lisa M. Poulin was appointed as interim trustee. She selected Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the Court's approval.

### 2.    Appeal

The Bankruptcy Court entered an order for relief in the USAIP bankruptcy case after a short trial on the merits of the involuntary petition. Ms. Poulin was named the permanent trustee in conjunction with the order for relief being entered. Hantges and Milanowski have appealed the order for relief, which the Trust is opposing. That appeal is pending in the United States District Court for the District of Nevada.

---

[5] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; and Buffalo Land Developments, LLC, a California limited liability company.

### 3.    Proofs of Claim

The Trust will file proofs of claim in the USAIP case for, among other things, the damage caused to USACM by USAIP, and the improper withdrawals of funds from USACM by USAIP.  The current deadline for such proofs of claim is March 1, 2008.

### 4.    Waverton Fee Application

Waverton Group, LLC, as the former receiver in *Russell v. USA Investment Partners, LLC*, filed an application seeking payment of fees and expenses in the *USAIP* case as an expense of administration.  The Trust and DTDF jointly opposed the Waverton application, which was set for hearing on July 5, 2007.  The Bankruptcy Court granted a portion of the fees requested at a hearing on November 2, 2007.

### 5.    Fee Applications

The USAIP Trustee sought and obtained Bankruptcy Court approval to pay the following applications for compensation:

| Applicant | Fees | Expenses | Total |
|---|---|---|---|
| CRG Partners Group, LLC | $337,760.00 | $49,563.80 | $387,323.80 |
| Prime Locations, LLC | $ 96,212.50 | $14,742.17 | $110,954.67 |
| Gordon & Silver, Ltd. | $696,107.00 | $29,377.87 | $725,484.87 |

I personally reviewed monthly billing statements from each of these professional and expressed any concerns of the Trust directly with Lisa Poulin, as trustee and resolved any issues that were found in these applications.

## B.    Insiders – Thomas Hantges and Joseph Milanowski

### 1.    Hantges

Due to the actions of the Trust, and the Administrator of the DTDF and other creditors, *Thomas A. Hantges* is a debtor in a chapter 11 bankruptcy case in Nevada, No. 07-13163-lbr.  Michael Carmel was appointed trustee in the Hantges bankruptcy.

The Court scheduled a deadline for complaints to determine the dischargeability of debts owed by Hantges of November 19, 2007, which was extended by a stipulated order entered on October 2, 2007 concerning the Trust and other interested parties to February 11, 2008.  The deadline for the Trust's proof of claim in the Hantges case is March 1, 2008.

The goal of the *Hantges* bankruptcy case from the Trustee's point of view was for the Hantges trustee (Michael Carmel) to locate Hantges' assets in order to pay creditors.

6

Hantges did not disclose material liquid assets that the Hantges trustee could use to perform his obligations under the Bankruptcy Code.  Accordingly, with Bankruptcy Court approval, the Trust agreed to loan the Hantges estate up to $1,500,000 to administer the case.  The loan will be repaid on a first dollars recovered basis from the Hantges estate.

Hantges filed a motion asking the Court to authorize the Hantges trustee to consume estate assets to pay for Hantges' living expenses.  The Trust filed an opposition asking that Hantges obtain his own funds for living expenses and not use up assets that should be available to pay creditor claims.  The Hantges trustee also filed an opposition and Hantges has yet to prosecute the motion to decision before the Bankruptcy Court.

The Hantges Trustee recently filed a complaint seeking to obtain access to funds held by the Hantges Children's' Education Trust as being property of the Hantges estate.  That litigation is in the very early stages and resolution is not expected in the near future.

### 2.    Milanowski

Similarly, due to the actions of the Trust and DTDF and other creditors, *Joseph Milanowski* is a debtor in a chapter 11 bankruptcy case in Nevada, No. 07-13162-lbr.  Again, the Trust, DTDF and others joined in bringing the involuntary petition against Milanowski.  The Bankruptcy Court entered an order for relief against Milanowski and appointed Ford Elsaesser as the trustee in the Milanowski case.  Milanowski has appealed the order for relief.  The Milanowski appeal is in the United States District Court for the District of Nevada, case no. 3:07-cv-404.  This appeal has been reassigned to Judge Brian E. Sandoval.

The deadline to object to the dischargeability of debts owed by Milanowski is November 19, 2007.  The claims bar date for the Trust and certain other entities in the Milanowski case is March 1, 2008.

Again, as with the *Hantges* bankruptcy, the goal of the *Milanowski* bankruptcy case from the Trustee's point of view was for the Milanowski trustee (Ford Elsaesser) to locate Milanowski's assets in order to pay creditors and to keep creditors generally from a "run to the courthouse" in an effort to beat other creditors to Mr. Milanowski's (or Mr. Hantges') assets.  Milanowski did not disclose material liquid assets that the Milanowski trustee could use to perform his obligations under the Bankruptcy Code.  Accordingly, with Bankruptcy Court approval, the Trust will loan the Milanowski estate up to $750,000 to administer the case.  The loan will be repaid on a first dollars recovered basis from the Milanowski estate.

### 3.    Proofs of Claim

The Trust will file a proof of claim in each of the Hantges and Milanowski cases for the damage they caused USACM and its creditors, including as to the loans that the Trust

services.  In fact, the Trust obtained an extension of the Trust's deadline to file proofs of claim so that it could have the time to prepare a complete proof of claim.  To the extent that an unsecured creditor of USACM intends to file a proof of claim against Hantges or Milanowski, that claim was due by the existing deadline.  The same is true as to objections for Hantges' or Milanowski's debts to creditors or their discharge in general.

### C.    HMA Sales, LLC

The owner of the Royal Hotel (HMA Sales, LLC) was placed into an involuntary bankruptcy in December 2006[6] after the property was sold, Salvatore Reale was paid almost $10,000,000 on an alleged lien, and other insiders received significant payments. In order to recover the funds, USACM and DTDF filed a lawsuit that DTDF and HMA Sales trustee are prosecuting as Adv. No. 06-01256 (the "HMA Sales Adversary").  The Trustee for USAIP caused a voluntary bankruptcy petition to be filed on behalf of HMA Sales (Case #07-12694-LBR) and thereafter asserted claims against Reale and others to recover funds from the sale.  The USAIP Trustee agreed to a settlement, which was approved by the Bankruptcy Court, that resolved DTDF's claim against HMA Sales, Reale's claim and claims against Reale for sums to be received, and resulted in Reale waiving purported liens on property owned by Placer County Land Speculators, LLC and two liens against USA Investors VI, LLC (the Marquis Hotel (now called the Hotel Zoso)), leaving one alleged claim against Investors VI unresolved.  The Trust continues to litigate its claims against Reale, as noted below.

The Bankruptcy Court approved a motion for appointment of a trustee for HMA Sales. The United States Trustee's office appointed Lisa Poulin as trustee for HMA Sales.[7]

The litigation prosecuted by USAIP in the HMA Sales bankruptcy case also involved entry of a writ of attachment with respect to sums owed to USA Commercial Real Estate Group.  In compliance with the writ, the Trust turned over approximately $391,000 that had been held for payment to USACREG by USACM from loan collections.

The trustee for HMA Sales discovered that certain receivables of that entity were subject to a security agreement provided to USACM on account of an undisclosed debt.  The receivables were collected by Concord Servicing Corporation, pursuant to a lockbox agreement between HMA Sales, Concord and USACM.  After the USACM bankruptcy filing, but before the HMA Sales bankruptcy filing, the funds were transferred into a new JP Morgan Chase account under the control of Joseph Milanowski or Vickie Loob.  The HMA Sales Trustee is now seeking formal discovery from Concord, the bank and interested parties.

---

[6] The Trust was not yet effective at that point.

[7] The Trust is informed that USAIP is the manager and 69% owner of HMA Sales and therefore, as Ms. Poulin is the Trustee of USAIP, logically she was also appointed as trustee for HMA Sales.

232751.1

### 1.    Fee Applications

The HMA Sales Trustee sought and obtained Bankruptcy Court approval to pay the following applications for compensation:

| Applicant | Fees | Expenses | Total |
|---|---|---|---|
| CRG Partners Group, LLC | $ 23,482.50 | -0- | $23,482.50 |
| Prime Locations, LLC | $ 13,265.00 | $1 08.00 | $13,373.00 |
| Gordon & Silver, Ltd. | $273,252.50 | $1,851.59 | $275,104.09 |

I personally reviewed monthly billing statements from each of these professional and expressed and resolved any concerns of the Trust directly with Lisa Poulin, as trustee.

### D.    USA Commercial Real Estate Group

USACREG is an insider and affiliate of the Debtors, controlled by Hantges and Milanowski.  The Trust has negotiated with USACREG with respect to a counterclaim alleged by USACREG against USACM in the HMA Sales adversary matter.  Those negotiations were superseded by the appointment of trustees for the estates of Hantges and Milanowski, respectively.

### E.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust.  The adversary proceeding is Adv. No. 06-01251 pending in the Bankruptcy Court.  On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint.  The Trust seeks to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million.  On August 7, 2007, the Trust defeated Mr. Reale's motion for summary judgment.

The Trust sought a preliminary injunction and writ of attachment against sums payable to Mr. Reale arising out of the settlement approved by the Bankruptcy Court in the HMA Sales bankruptcy case.  Judge Riegle declined to consider the matter on an expedited basis and deferred resolution of it until after the trial on the merits of the Trust's amended adversary complaint.

The trial scheduled for Friday, October 5, 2007 was continued due to Mr. Reale's illness.  In continuing the trial, however, Judge Riegle placed an injunction on any dispositions or transfers of Mr. Reale's assets, with the exception of certain limited payments related to medical expenses, living expenses, and attorneys' fees.  The trial and a hearing on Mr.

9

232751.1

Reale's motion in limine are scheduled for January 31, 2008 before the Bankruptcy Court.

### F.    JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million.  The Bankruptcy Court considered the defendants' motion to dismiss after a hearing on December 5, 2007.  The Court granted the Trust 15 days leave to file an amended complaint explaining the facts and legal arguments supporting the Trust's claims for relief.  The Court scheduled a settlement conference for March 10, 2008 and trial for the week of August 5, 2008.  The Trust has filed its motion for leave to file a second amended complaint, which will be heard by the Bankruptcy Court January 24, 2008.

### G.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case #06-13758-LBR). Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.

The Trust filed a proof of unsecured claim for $1,075,799.91 in the case.

The Trustee's professionals filed the following fee applications:

| Applicant | Fees | Expenses | Total |
|---|---|---|---|
| CRG Partners Group, LLC | $128,682.50 | $ 31.70 | $128,714.20 |
| Prime Locations, LLC | $ 22,720.00 | $1,402.48 | $ 24,122.48 |
| Gordon & Silver, Ltd. | $138,501.50 | $6,141.53 | $144,643.03 |

I personally reviewed monthly billing statements from each of these professional and expressed and resolved any concerns of the Trust directly with Lisa Poulin, as trustee.

### H.    Vegas Hot Spots, LLC

Lisa M. Poulin, Trustee of USAIP, caused Vegas Hot Spots, LLC to file a chapter 7 bankruptcy petition on September 13, 2007 when she determined there was little value in the entity's assets.  The case is administered under No. 07-15802-LBR.  Although the Trust has a claim against this chapter 7 debtor, it will not monitor the bankruptcy case given Ms. Poulin's status as trustee of the USAIP and the limited assets available to generate a recovery for creditors.

232751.1

### I.    Capital Land Investors, LLC

Capital Land Investors, LLC filed a chapter 11 bankruptcy case directed by Lisa M. Poulin, USAIP trustee.  The bankruptcy case number is No. 07-18099-lbr, pending in the United States Bankruptcy Court for the District of Nevada.  The deadline to file a proof of claim is 90 days after January 9, 2008.  The Trust will review its records and if necessary file a proof of claim for any sums owed by Capital Land Investors, LLC to USACM, and otherwise does not expect to take any action with respect to this bankruptcy case other than to monitor its proceedings.

### J.    Palm Harbor One LLC

The Trust is monitoring the bankruptcy case of Palm Harbor One LLC, No. 07-15169, pending in the United States Bankruptcy Court for the District of Massachusetts.  The case involves a borrower on a direct loan filing a bankruptcy petition in order to restructure its debts.  Compass as servicer is prosecuting the interests of the Direct Lenders in the Palm Harbor bankruptcy, but delays caused by the bankruptcy will affect the resolution and collection of the direct loan.  This in turn will affect the Trust's ability to evaluate the claims of Direct Lenders on this loan.

## VI.    COLLECTION OF TRUST ASSETS

### A.    Reserves

The Trust monitors certain reserves held by USACM through Mesirow Financial Interim Management, LLC ("MFIM").  In October, 2007, those were approximately $3.4 million in a professional fee reserve, $158,000 in an operating fund reserve, $2 million dollars in a claim reserve, and $1.1 million reserved for the DTDF claim for prepaid principal.  The Trust may assert a claim against DTDF for Prepaid Interest of $3,900,453, plus interest.  These amounts are broken down in Monthly Operating Reports filed by USACM, which are prepared by MFIM.

### B.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust as successor to USACM has continued to work with the lenders and borrower on the senior lien to obtain payment or a refinancing of the loan, payment of loan fees associated with the first loan, as well as payment of the $1 million second loan.  Specific proposals have been exchanged with the principal of Colt Gateway – Homes for America Holdings, Inc., and a proposed settlement was recently agreed upon, subject to finalizing the documentation and certain terms among the parties, as well as Colt's performance of the parties' agreements.

232751.1

### C.    Compass Escrows

In connection with the Closing of the Asset Purchase Agreement dated December 8, 2006 ("Compass APA") with Compass USA SPE, LLC ("Compass") on February 16, 2006, certain escrows were established.  The first escrow agreement is for $1,250,000 with respect to Compass' asserted right to invoke an Individual Asset MAC (as defined in the Compass APA) under § 9.1(i).  USACM and the Trust dispute Compass' assertions and the Trust will take this dispute to court for resolution.

The second escrow for $903,000 was established with respect to Compass' asserted right to assert a dollar for dollar reduction of the Commercial Mortgage Price (as described in § 2.3(i) of the Compass APA).  The Trust must proceed to Court to demonstrate that Compass' rights to the Success Fees for the Franklin-Stratford Investments LLC and the I-40 Gateway West Loan were not impaired prior to the closing.

A third escrow of $412,666.45 was established and is self-liquidating either upon collections received by Compass or after the passage of time.

### D.    Other Collections

USACM had filed an interpleader, Adversary No. 06-1146, concerning sums held in the investors trust account before bankruptcy.  The Trust negotiated with parties having an interest in the account concerning final resolution of it, which was eventually filed with the Court as the Stipulation Re: Interest on Claims, Awarding Fees and Costs in Interpleader Action (filed in the adversary case).  As a result of the Stipulation, the Trust received the balance of the funds in the account, after payment to claimants, payment of the unclaimed funds into the clerk of the court for deposit in the registry account, specified amounts to the law firms of David W. Huston, PC and Schwartzer & McPherson.  The deposit has been made in the interpleader account closed by USACM.

The Bankruptcy Court has asked the Trust's counsel, as a courtesy, to provide the Court with a status report on the unresolved claims in the interpleader action.

### E.    Hantges Life Insurance

Three life insurance policies were owned by USACM on the date of the filing of its bankruptcy petition.  Milanowski changed the owner of the policies from USACM to USAIP after the date of the bankruptcy without Court approval.  The Trust has requested that the USAIP Trustee return these policies, as the transfer may be avoided under Bankruptcy Code §§ 549 and 550(a).

232751.1

## VII.    RELATED COMPANY INVESTIGATIONS

### A.    USA Investors III, LLC

USA Investors III, LLC is a limited liability company owning property in Phoenix, Arizona.  USACM is identified as the manager of the company in public filings.  The Trust is investigating USA Investors III to determine if it has assets or would otherwise provide value to the Trust, or conversely, if there are obligations that need to be addressed that were not resolved by confirmation of the plan of reorganization.

### B.    PerUSA, LLC

The Trustee is investigating the assets and liabilities of this entity.  USACM was apparently its manager.  The Trust is advised that MFIM has worked with its tax advisors and did prepare the 2006 tax returns and K-1's in conjunction with the preparation of the USACM tax returns.

### C.    Amblamo, LLC

The Trustee is investigating the assets and liabilities of this entity.  USACM was apparently the manager and MFIM has to date not provided any information concerning it.

## VIII.    PROFESSIONAL FEE APPLICATION OBJECTIONS

### A.    Post-Effective Date Fees

The Trust has received post-effective date billings from Mesirow, RQN, Schwartzer & McPherson, and BMC Group as professionals previously retained by USACM but providing services on a post-effective date basis.  The Trust has privately expressed concerns with certain of these service providers with respect to the billings.  Some of the concerns have been resolved by fee reductions.  To the extent such concerns are not resolved, any disputes will need to be brought to the Bankruptcy Court for resolution.

## IX.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.    Overview

The Trust has identified approximately 2,615 proofs of claim against USACM, which generally break down as follows:

- 8 proofs of administrative claims asserting in the aggregate $2,813,674.40, exclusive of claims of professionals.

- 102 proofs of priority claims asserting in the aggregate $6,954,780.29, which will largely be reclassified as unsecured claims.

232751.1

- 1,676 proofs of secured claims asserting in the aggregate $296,495,717.81, which have been or will be reclassified as unsecured claims.

- 1,220 proofs of unsecured claims asserting in the aggregate $494,212,292.42, and if you include reclassified claims, a total of 2,963 filed proofs of claim asserting in the aggregate $793,824,125.40 will need to be resolved.

- 90 proofs of claims did not specify a classification. Most of these did not provide an amount, although the aggregate of those who did is $500,929.03.

The total number of proofs of claims taken from each of the 5 classifications is 3,096, which is more than the 2,615 proofs filed, due to the proofs of claims that have multiple classifications and where counted more than once.

Numerous claimants filed proofs of claim that did not contain sufficient information from which the Trust could determine whether the claim was of a direct lender or not; and if a direct lender claim, what loan or loans were at issue. Rather than starting the resolution process by taking the claimants to court through filing objections, the Trust sent letters to hundreds of claimants asking them for additional information. As claimants responded and provided information, thousands of pages of documents were reviewed by the Trust. Regretfully, some claimants failed to provide supporting documentation, and objections explained below were filed.

By December, the Trust had objected to 1,879 claims asserting administrative, priority, or secured status. 1,851 have orders reclassifying as unsecured claims and 6 classified as a priority claim. The breakdown is:

- 62 objections for wrong debtor – 54 of which have been disallowed or withdrawn.

- 13 stipulations allowing claims, of which 11 have been approved by the Court so far.

- 70 stipulations to withdraw claims, of which 68 have been approved by the Court so far.

- 20 miscellaneous objections (without stipulations) for reasons such as unsupported claim, no liability, and claim exceeds amount allowed by the Court. To date, 1 claim has been ordered allowed and 1 claim disallowed.

- 113 objections for lack of supporting documentation, of which 17 have been withdrawn due to claimants sending insufficient supporting documents.

232751.1

- 15 objections for loans that have been repaid in full, 10 of which are partial objections to the portion of the proof of claim associated with the repaid loan and 5 are objecting to the entire proof of claim.

In addition, the Trust has to deal with the problem of duplicate and amended claims. There were about 254 direct lenders who filed proofs of claim that appeared to include duplicate amounts. Other creditors filed claims in the same amount for secured, priority and unsecured status, effectively duplicating the claim among those categories; one creditor filed the same amount as priority and unsecured with a discrepancy in the amount for the secured claim; seven creditors filed a claim in the same amount as both security and priority; and 243 creditors filed claims in the same amount for both secured and unsecured status. This in total is about $92 million in duplicate claims.

Not all of the claims objections can be resolved through motions. The Trust's objection to claim 1366 of Los Valles Land & Golf, LLC is set for pre-trial conference on March 14, 2008 and a two-day trial on March 27 and 28, 2008 before the Bankruptcy Court.

The Trust objected to the proof of claim filed by Binford Medical Developers, LLC arising out of a Direct Loan in the maximum amount of $8,375,000. Binford asserts an unsecured claim against USACM because USACM did not fund the last $925,000 of the Loan. Binford filed a proof of claim for $3,502,383. Pursuant to a proposed compromise between Compass (as the successor servicer) and Binford, Binford would be allowed an unsecured claim of $925,000. The Trust did not object to this proposed compromise, in large part as a concession to the Direct Lenders on the Binford Loan who have been waiting for payment for some time.

Prior to the Trust becoming effective, USACM filed an objection to the proof of claim filed by Del and Ernestine Bunch, for in excess of $10 million. The objection was the subject of pre-confirmation proceedings where USACM indicated its principal objection was that Bunch had received certain payments in the 90 days before the bankruptcy case that could be avoided as preferences under Bankruptcy Code §§ 547 and 550. On November 6, 2007, the Bankruptcy Court granted the Trust's motion to be substituted as the real party in interest with respect to the objection.

On a related note, Bunch filed a motion to have the claim temporarily allowed for voting purposes in connection with confirmation of the Plan. The Bankruptcy Court denied this motion and Bunch filed an appeal on January 26, 2007. The appellees elected to have the appeal heard by the United States District Court for the District of Nevada in a filing on February 2, 2007. The appeal was transferred by the Bankruptcy appellate Panel for the Ninth Circuit to the District Court on April 5, 2007. The District Court has yet to open a file and the appeal has been in limbo.

The Trust has filed objections to larger non-direct lenders' proofs of claim. For example, the Trust filed a motion for summary judgment to classify the claim of Pecos Professional

15

232751.1

Park Limited Partnership as an insider Class A-7 claim on October 29, 2007. After a hearing the Bankruptcy Court found that there were issues which required further consideration, including whether Dr. Blanchard, who filed an objection to the motion, had standing to do so. Neither the Hantges nor Milanowski trustees opposed the motion for summary judgment.

The Pension Benefit Guaranty Corporation filed amended claim Nos. 791, 793 and 794. The amended claims are an administrative claim of $112,572 and other smaller amounts aggregating to $120,879 (Claim No. 791); an administrative claim of $1,211,242 under alternative theories (Claim No. 793); and an unsecured claim of $1,700,624 (Claim No. 794). The Trust hired special counsel at Foley & Lardner LLP to represent the interests of the Trust in the objections to these claims. The Objections filed by the Trust's counsel are set for hearing on January 24, 2008 at 9:30 a.m. In December, 2007, counsel for the Trust met via conference call with the PBGC, but were unable to resolve the disputes despite good faith efforts to do so.

### B.    Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

Sierra Consulting Group
Brant Fylling
E-mail:  USACMTRUST@sierracgllc.com
Telephone 602-424-7020

 For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com/default.aspx. You may send an e-mail on a general inquiry to:  USAcommittee@lrlaw.com.

### C.    Objection Deadline

The Trust has filed numerous claims objections and succeeded to objections previously filed by USACM. The Trust sought an initial extension of the deadline to object to claims to further analyze them. That objection was granted after a hearing, without objection. The Trust then sought a second extension, was granted after a hearing, without objection. The new deadline for claims objections is February 12, 2008. The Trust has requested an extension of this deadline.

As noted above, the Trust reviewed the thousands of proofs of claim filed with the Court to determine those which appeared to be filed by Direct Lenders. In turn, each Direct Lender's claim was analyzed to see what direct loan or loans it arose out of. The Trust's intention is to take each group of Direct Lender claims on a loan-by-loan basis, determine if the claims are valid, and in what amount, and then to advise all Direct Lenders who filed proofs of claim with respect to that loan of the Trust's recommendation. This

232751.1

approach is consistent with the alternative dispute resolution mechanism implemented for Direct Lenders by confirmation of the Plan, which in general requires personal consultation by the Trust and the affected Direct Lenders who disagree with the Trust's position, as well as mediation.

Numerous claimants have called the Trust asking when the Trust will have concluded its examination of claims.  In general, the claims will not be resolved until the last direct loan has been paid or otherwise resolved.  This is because there are proofs of claim filed by Direct Lenders in all of the loans that USACM serviced.  However, as the pool of unresolved loans becomes smaller, it may be possible to estimate the claims that might be allowed with respect to the unresolved loans.  That process will, nevertheless, take many months.

### D.    Claims For Stolen Principal

Numerous Direct Lenders invested in loans where the pre-bankruptcy management of USACM diverted or stole the principal repaid by the borrower, rather than pay the Direct Lenders.  The sums owed to the Direct Lenders are scheduled and those amounts are deemed claims against the Trust.  Due to the frequency of Direct Lender inquiries as to the status of these loans, here again is the list of Loans where all or part of the principal was diverted, as determined by MFIM:

|  | Dates Received | Principal Owed to Direct Lenders |
|---|---|---|
| Bay Pompano Beach | 12/1/05 - 3/20/06 | $ 7,875,857.57 |
| Beastar, LLC | 1/24/06 - 1/27/06 | 3,030,489.19 |
| Beau Rivage Homes/$8,000,000 | 9/14/2005 | 326,381.03 |
| Cabernet | 1/13/2006 | 900,000.00 |
| Copper Sage Commerce Center, LLC | 1/30/06 - 3/17/06 | 1,388,773.19 |
| Del Valle Isleton | 2/23/06 - 3/24/06 | 380,000.00 |
| Freeway 101 | 2/22/2006 | 3,741,777.16 |
| Lake Helen Partners | 2/17/2006 | 19,589.72 |
| Oak Shores II | 2/27/2006 | 3,000,000.00 |
| Roam Development Group | 2/13/06 - 3/16/06 | 634,028.28 |
| Universal Hawaii | 1/13/2006 | 5,062,942.85 |
| **TOTAL** | | $ 26,359,838.99 |

### E.    Compass v. LPG

As indicated above, the Trust believes that the most efficient way to evaluate unsecured claims of Direct Lenders is after the applicable direct loan has been resolved, presumably through collection.  A number of disputes are in litigation among the plaintiffs in lawsuits pending in the District Court, as well as the Lender Protection Group (the "LPG") and Donna Cangelosi ("Cangelosi") (collectively referred to as "LPG") and Compass USA

232751.1

SPE, LLC, Compass Partners, LLC, and Compass Financial Partners, LLC ("Compass"), which have expanded to include certain named Direct Lenders and Compass' officers and lender. That litigation is generally managed by the United States District Court for the District of Nevada under Case No. 2:07-cv-00892-RCJ-GWF. The Trust is not a party to that litigation. Nevertheless, the litigation does impact the Trust's ability to evaluate claims to the extent that the disputes between LPG and Compass concerning the right to collect direct loans, the willingness to compromise direct loans based upon short payoffs, and how proceeds should be distributed, have all contributed to delays in loan resolution. Those delays in turn will delay the Trust's evaluation of proofs of claim on those unresolved loans.

### F.    Disbursing Agent Agreement

The Trust and FTDF entered into a Stipulation Concerning Amended Disbursing Agent Agreement. The Court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF if there is a distribution on the $7 million FTDF unsecured claim, now that entity is liquidated. The Bankruptcy Court entered a final decree and order closing the USA Capital First Trust Deed Fund, LLC case on October 12, 2007. The Trust was recently advised that the final distribution to the members of the Fund, along with their respective K-1's for 2006, was released to the members. In the transmittal to the Fund members, members were advised to address all further inquiries about the status of the Fund to the Trust. The Trust is attempting to answer these questions as best it can in light of not having prepared the distribution or K-1's..

## X.    LOAN SERVICING ISSUES

### A.    USA Investors VI, LLC

The owner of the Hotel Zoso f/k/a Hotel Marquis in Palm Springs – USA Investors VI, LLC ("Investors VI") – was controlled by USAIP, and is now under the control of Lisa Poulin, its trustee.

#### 1.    Direct Loan

The Trust services the first loan on the hotel property. As of January 1, 2008, the outstanding balance on the Note was:

| | |
|---|---|
| Principal | $13,500,000.00 |
| Interest | $ 6,947,408.51 |
| Default Interest | $ 4,928,164.60 |
| Late Fees on Interest | $ 564,984.92 |
| Late Fees on Principal | $ 675,000.00 |
| Extension Fee (2/5/06) | $ 174,819.84 |
| **Total** | $26,790,377.87 |

### 2. Sale of Hotel Zoso

The sale of the Hotel Zoso was approved by the Court and closed on November 16, 2007. The Trustee for the Borrower reported holding $24,309,926 in restricted Treasury Bills as of November 30, 2007, representing proceeds of the sale. These sums are subject to the lien serviced by the Trust, and may not be disbursed absent Court approval.

### 3. Plan of Reorganization

The Bankruptcy Court has entered an order approving the Borrower's Trustee's disclosure statement and setting the confirmation hearing. The confirmation hearing will be on January 24, 2008 at 9:30 a.m. Ballots had to be filed with the Court on or before January 11, 2008. Objections to confirmation of the Plan similarly had to be filed and served by January 11, 2008.

The Trust negotiated with Lisa Poulin, the Trustee for the Borrower, regarding the Trust's claims for default interest, late fees and attorneys' fees incurred in collecting the debt. As a result of those negotiations, the Trustee for the Borrower filed a Modification to Chapter 11 Trustee's Plan of Reorganization on December 26, 2007. The Modification provides that Direct Lenders will be paid the full amount of their principal, plus interest at 13% per annum accrued through the closing date (the per diem is $7,383.79). The Trust has agreed to accept $2 million as a compromise for its claims for default interest, late charges and attorneys' fees, with the balance of its claim being treated as an unsecured claim. The total unsecured claim of the Trust is $10,363,354.57. In order to confirm the Plan, the Trust has agreed to subordinate its claim in part if necessary in order to pay the allowed expenses of administration of the Trustee and her professionals in full, and it agreed to cap its unsecured claim for distribution purposes. The Trust has filed its ballots accepting the Plan, as modified.

A potential confirmation issue raised by the Pension Benefit Guaranty Corporation remains unresolved. Again, as noted above, the Trust has retained counsel to address the PBGC claim, and the Trust met with the PBGC counsel via telephone to try to obtain their withdrawal of the claim in the Borrower's estate, so far without success.

### 4. Creditors Committee

The Office of the United States Trustee appointed an Official Unsecured Creditors Committee in October. In late December, the Committee sought Court approval to employ counsel for the purpose of appearing in the bankruptcy case. We believe that the Committee wants to fight with the USACM Trust over the payment to the Trust for default interest, late fees and attorneys' fees. We have opposed employment of these attorneys, which was considered at a hearing on January 3, 2008 (and granted by the Court). Since that hearing the Committee withdrew its application employ the particular law firm.

19

232751.1

5.       **Fee Applications**

The Borrower's Trustee and her professionals filed the following fee applications.

| Applicant | Fees | Expenses | Total |
|---|---|---|---|
| CRG Partners Group, LLC | $165,810.00 | $398.23 | $166,208.23 |
| Prime Locations, LLC | $96,212.50 | $14,742.17 | $110,954.67 |
| Gordon & Silver, Ltd. Fee Application | $190,120.00 | $28,428.58 | $218,548.58 |

I personally reviewed these applications. These interim fee applications were granted for the Borrower's Trustee, her counsel and her financial advisor. Until the Plan is confirmed, there are not sufficient unencumbered funds available to pay these expenses of administration, and the USACM Trust has not consented to use of its collateral to make payments.

B.       **Trust Loan Servicing - Placer Vineyards**

The balances of the Notes by Placer County Land Speculators, LLC to Direct Lenders on loans serviced by the Trust are as follows:

| | **Placer 1** | **Placer 2** |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | $ 9,739,025.98 | $2,583,406.84 |
| Default Interest | $ 5,863,612.78 | $ 648,079,04 |
| Late Fees | $  386,659.92 | $ 105,520.14 |
| **Total** | $47,489,298.68 | $9,837,006.02 |

The Trust, as servicer, reports monthly to the Direct Lenders. Those reports are posted on the Trust's website. After providing notice to the Direct Lenders on those loans, and with the responding Direct Lenders' consent, the Trust advanced $671,434.55 on a short term basis to pay the past due taxes secured by a lien on the Placer Vineyards property. This advance protected the Direct Lenders' collateral, and although the Trust will be reimbursed with interest at the prime rate before the Direct Lenders receive payment, the advance reduces the interest rate payable on those taxes.

The Placer County Board of Supervisors approved a development template for the total project, including the Placer County Land Speculators property. That approval allows the owners in the entire 5,230 acre project to continue development. Ongoing development expense includes legal expense defending litigation brought against the development, engineering and other design, permitting and construction costs. The borrower lacks the ability to fund these expenses.

232751.1

On Wednesday, September 26, 2006, the Trust, through the Trustee along with counsel, conducted two conference calls with Direct Lenders in the Placer 1 and 2 Loans. We advised the Direct Lenders that the Trust as servicer intended to negotiate with the Borrower through Lisa M. Poulin, Trustee of USAIP, as the majority member of the Borrower, for a bankruptcy filing by the Borrower and sale of the collateral at an auction. The most recent information available to the Trust was summarized in the call and suggests that the market value of the collateral may not exceed the principal and accrued (non-default) interest on the Placer 1 Loan.

Thereafter, the Trust was unable to obtain the agreement of Ms. Poulin, Trustee of USAIP, to file a bankruptcy petition for the Placer borrower or to obtain a sale of that property. Accordingly, the Trust hired Mark Gorton of McDonough, Holland & Allen P.C. in Sacramento to represent the Trust in foreclosing the lien held by the Direct Lenders in the Placer 1 Loan. With Mr. Gorton's assistance, the Trustee retained Alliance Default Services, a division of Alliance Title, in Sacramento, California, to serve as the substitute trustee under the Placer 1 Deed of Trust. A Declaration of Default and Demand for Sale were recorded on December 3 and 4, 2007, the latter at Document No. 2007-0114236, Official Records of Placer County, California.

### C.    Compass Trust Loan Servicing – Collection of Prepaid Interest

The Trust continues to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007. Further, Compass collects from Direct Lenders and remits Prepaid Interest to the Trust pursuant to the Plan, including $156,471.33 on May 11, 2007.

From a report prepared in August 2007, the maximum amount of uncollected Prepaid Interest was $5,292,567.59. A number of investors have uncollected Prepaid Interest of only tens or a few hundreds of dollars. It is not now possible for the Trust to estimate the likely collection of Prepaid Interest within the foreseeable future.

Although it is not a party to the disputes, the Trust notes that the Lender Protection Group and Compass are in litigation over whether LPG and Direct Lenders properly terminated Compass as the loan servicer. The Bankruptcy Court entered an Order on July 2, 2007 Concerning Compass' Emergency Motion to Enforce Confirmation and for Sanctions and Order on Subject Matter Jurisdiction. Thereafter, the United States District Court for the District of Nevada withdrew the reference over the dispute and has periodically considered arguments and evidence. The disputes between Compass and the LPG inevitably delay collection of direct loans, adversely impacting Direct Lenders, many of whom have filed proofs of claim concerning those loans.

The LPG has agreed to abide by the Plan provisions concerning payment of Prepaid Interest to the Trust in the event servicing of the loans is transferred from Compass. The Trust is working with Compass to clarify Compass' obligations under the confirmed Plan of Reorganization concerning Prepaid Interest.

232751.1

### D.    USACM Loan Servicing

The State of Nevada Department of Business in Industry, Division of Mortgage Lending ("MLD"), took post-Effective Date action with respect to licensing of USACM to service loans and the proposed application by Compass to service loans pursuant to the transaction approved by the Court in the confirmed Plan.  The Trust worked with USACM with respect to the MLD's order terminating the USACM license.  The termination was not untoward, because USACM had ceased servicing any loans at that point.  The MLD's findings were factually and legally inaccurate in many respects, however.  The Trust worked directly with the MLD through the State of Nevada Attorney General's office to ensure that the MLD was not seeking to violate the Confirmation Order or the Plan.  Separately, the Trust was aware of and took no position with respect to the MLD orders concerning Compass.

Pursuant to an order of the Bankruptcy Court, the Trust is exempt from licensing in Nevada as a loan servicer or escrow agent.  The Trust nevertheless voluntarily reports to MLD with respect to its actions and has asked MLD to advise the Trust of any questions or concerns.

## XI.    NEGOTIATIONS WITH DTDF

Confirmation of the Plan did not resolve numerous disputes between USACM and DTDF.  At a settlement meeting on November 12, 2007 between representatives of the Trust and DTDF, the parties made substantial progress.  The Trust followed up that meeting with a written settlement offer addressing, among other topics, allowance of the disputed DTDF unsecured claim, disputed post-petition issues concerning Prepaid Interest, post-petition management fees, post-petition servicing fees, allocation of post-petition professional fees and costs, cooperation on future litigation, allocation of proceeds collected on the $58 million USAIP Note and its collateral, and allocation of litigation costs and recoveries.  Little progress has been made since the November 2007 meeting in this regard.  However the Trust expects further activity in this regard in the future. The Trust anticipates reaching consensual agreement.  Failure to reach agreement would  bring those disputes back to the Bankruptcy Court for resolution.

## XII.   TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of December 31, 2007, has been provided to the Oversight Committee.