E-Filed: 2-15-08

Kent F. Larsen, Esq.
Nevada Bar No. 3463
SMITH LARSEN & WIXOM
Hills Center Business Park
1935 Village Center Circle
Las Vegas, Nevada 89134
(702) 252-5002
Attorneys for Wells Fargo Bank, N.A.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>              Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>              Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>              Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>              Debtor. | **WELLS FARGO BANK N.A.'s OPPOSITION TO USACM LIQUIDATING TRUST's MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY WELLS FARGO** |
| In re:<br>USA SECURITIES, LLC,<br>              Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Hearing Date: February 21, 2008<br>Hearing Time: 9:30 a.m. |

Wells Fargo Bank N.A., by and through its undersigned counsel, the law firm of Smith Larsen & Wixom, hereby submits its opposition to the USACM Liquidating Trust's Motion to Compel Production of Documents by Wells Fargo (the "Motion"). This opposition is made and based on the papers and pleadings on file herein, the points and authorities submitted in support hereof, the attached exhibits, and any oral argument which may be heard at the hearing set for this matter.

DATED this 15 day of February, 2008.

SMITH LARSEN & WIXOM

Kent F. Larsen, Esq.
Nevada Bar No. 3463
Hills Center Business Park
1935 Village Center Circle
Las Vegas, Nevada 89134
(702) 252-5002
Attorneys for Wells Fargo Bank, N.A.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

On March 14, 2007, On March 14, 2007, Wells Fargo was served with a subpoena issued by counsel for the USACM Liquidating Trust (the "Trust"). A copy of the subpoena (the "Subpoena") is attached as **Exhibit A**.

The Subpoena was twenty-four pages long (inclusive of definitions and prefatory information). It effectively sought a "blanket" production of records/account information (to the extent any existed) with respect to 231 named individuals and businesses. No other identifying

2

information was provided. The subpoena requested production on 93 specifically identified categories of documents/items, covering a 10 year time frame beginning January 1, 1997. It stated the date of production was within two weeks from the date of service upon Wells Fargo (i.e., by March 27, 2007). See the Subpoena. Wells Fargo conservatively estimated that the time necessary to merely obtain the requested ACH documents was six months. Even though Wells Fargo served an objection to the Subpoena, as allowed by Fed. R. Civ. P. Rule 45(c) (made applicable to the Subpoena pursuant to Fed. R. Bankr. P., Rule 9016), it has continued to work with the Trust to produce appropriate documentation.

In early May, 2007, Wells Fargo provided to the Trust's counsel a shipment of documents containing statements and signature cards which could be located. This shipment contained hundreds of pages, as it contained 726 statements (some of which were up to 30 pages in length). See the Declaration of Michelle Schneider, attached hereto as **Exhibit B** (the "Schneider Declaration"). For the next several months, Wells Fargo waited for additional direction from the Trust regarding the manner in which it desired to proceed, in light of the breadth of the initial requests and the expense involved in producing even the account information.

Wells Fargo then provided hard copies of the documentation located which evidenced communications with the debtors and/or representatives (i.e., letters, memoranda, branch file documents, etc.). Note that no email termination information has been provided which could be used in an attempt by Wells Fargo to conduct an email survey, if the emails from in excess of two-three years in the past are even still in existence (as the same are normally purged from the basic email systems of Wells Fargo after a relatively brief time period). Over 1900 pages of wire transfer documentation was produced on November 16, 2007 and November 23, 2007. See the Schneider

3

Declaration.

To date, Wells Fargo has expended approximately 193 hours to locate the wire transfer and ACH documents regarding only two accounts: the Collections Trust Acct. No. 089-5737864 and the Investors Trust Acct. No 046-5657146. These ACH documents are ready to be delivered to the Trust. With respect to the five additional accounts identified in the Motion (at ¶19(a) and(b)), it is estimated that it will take approximately 79 hours to produce this wire transfer and ACH documentation/information. See the Schneider Declaration.

However, with respect to production of the ACH information, generally, the court should enter its order directing the delivery of the reports, with appropriate protective provisions due to the information contained therein. Specifically, each report contains the names of the sender/recipient, the social security/tax identification numbers, and the bank account and routing numbers. This information may come under the protections afforded certain persons pursuant to the Gramm-Leach-Bliley Act (Pub. L. No. 106-102, 113 Stat. 1338, codified and scattered throughout sections of 12 U.S.C. and 15 U.S.C), and all parties would benefit from an appropriate order regarding the same.

As will also be noted below, Wells Fargo has objected to the production of its policies and procedures. This objection should be upheld as it is Wells Fargo's position that this information is confidential and proprietary, and certain of the documentation is otherwise restricted from production due to pertinent regulatory constraints.

## II.    DETAILED FACTUAL BACKGROUND

At Wells Fargo, subpoenas are handled on a day-to-day basis by the Wells Fargo Legal Order Processing group. This group receives various legal orders (including subpoenas) and is responsible for coordinating the production of documents and witnesses as compelled by such orders. Wells

4

Fargo Bank responds to more than 2,000 legal orders for deposit accounts records per month. See the Declaration of Toysha Martin, attached hereto as **Exhibit C** ("the Martin Declaration"), at ¶¶ 6, 7 and 8.

Legal orders directed to Wells Fargo for non-deposit account records are handled by regional legal hubs. Often a subpoena will request both deposit and non-deposit account records. In these instances, productions are handled by two separate locations simultaneously. See the Martin Declaration, at ¶¶ 9 and 10.

If a written objection is served to a subpoena by Wells Fargo, Wells Fargo will normally make contact with the subpoenaing party, discuss the documents needed by the party and the expense involved in producing the same. It is typical that account opening documents and monthly statements will be produced initially, the review of which will allow the subpoenaing party to have a better understanding of the scope of available documents and whether the subpoenaing party truly desires to incur the expense of a much broader document production. Wells Fargo finds that, in most instances, the review by the subpoenaing party of the monthly statements is an efficient and expeditious manner in getting to the subpoenaing party the information that party is seeking. This method of handling very broad document requests usually assists such parties in identifying a particular area of focus for follow up document productions, if necessary. See the Martin Declaration, at ¶12.

On March 14, 2007, Wells Fargo was served with the Subpoena. Due to the extraordinary breadth of the subpoena, and the shortness of time to respond, Wells Fargo issued a written objection to the Subpoena. See the Schneider Declaration, at ¶ 8. Following the objection, Wells Fargo contacted the Trust attorney to obtain additional information to assist in locating the named

5

individuals and entities. The Trust's counsel then provided additional identifying information, from which Wells Fargo located 12 entities with 22 total accounts from the 231 individuals and businesses named in the Subpoena. See the Schneider Declaration, at ¶ 9.

Wells Fargo also notified its customers regarding receipt of the subpoena, received two written objections from customers, and made counsel for the Trust aware of the same. See the Schneider Declaration, at ¶¶ 10 and 12. In light of the objections, Trust counsel limited the production to the following entities: USA Commercial Mortgage Company, USA Capital Realty Advisors LLC, USA Capital Diversified Trust Deed Fund LLC, USA Capital First Trust Deed Fund, USA Securities LLC, and USA Investment Partners. These entities had a total of 17 accounts. See the Schneider Declaration, at ¶ 13.

Wells Fargo discussed in detail with the Trust's counsel the volume and timing issues involved in light of the scope of the requested production. The Trust's counsel then extended the compliance period pending review of the initial wave of materials, which included the statements and signature cards. This occurred so opposing counsel could determine a more precise scope of records to be produced. See the Schneider Declaration, at ¶¶ 9 and 11.

In early May, 2007, documents consisting of statements and signature cards pertaining to the designated entities were sent to the Trust's counsel. The documents comprised hundreds of pages. In early June, 2007, a Wells Fargo Representative followed up with the Trust's counsel regarding the status of the subpoena. At that time, the Trust's counsel indicated he was still reviewing the statements and requested to have the file extended another 60 days to give him additional time for reviewing the statements to determine what additional items would he would be requesting to be produced. During this additional 60 day period, there was no additional research, document

6

production, or retrieval conducted by Wells Fargo. See the Schneider Declaration, at ¶¶ 14 and 15.

In early August, 2007, a Wells Fargo representative followed up with Trust counsel's law firm regarding the status and was informed the Trust counsel was still reviewing the previous shipment of statements. This counsel also informed Wells Fargo that it would let Wells Fargo know by September 10, 2007 what additional documents counsel would be seeking to be produced. See the Schneider Declaration, at ¶16.

The next communication which Wells Fargo received from the Trust's counsel was that the Trust seemed to be reversing position and may be seeking the entire scope of the documents originally set forth in the Subpoena. See the Schneider Declaration, at ¶17. As a result, a Wells Fargo representative then provided cost and time estimates to the Trust's counsel, who then indicated she would need to speak with other counsel for the Trust and would followup with Wells Fargo. See the Schneider Declaration, at ¶18.

Thereafter, on or about September 10, 2007, the Trust's counsel contacted Wells Fargo and indicated there were approximately 40 specific wire transfers and ACH transactions that were needed by the Trust. Wells Fargo was informed that the Trust's counsel desired to have these documents produced by Wells Fargo by October 10, 2007, and these items were mailed to the Trust's counsel on October 3, 2007. See the Schneider Declaration, at ¶¶18, 19 and 23.

An estimate of the costs associated producing all ACH and wire activity on all accounts was also provided to the Trust's counsel. See the Schneider Declaration, at ¶¶ 19 and 20. It was estimated it would take a minimum of 6 months to get the requested ACH transfer activity due to the fact there were 8 entities involving 17 accounts spanning 10 years. See the Schneider Declaration, at ¶22.

On October 2, 2007, Wells Fargo's in-house counsel sent a letter to counsel for the Trust regarding the production issues, and such counsel spoke counsel for the Trust on October 10, 2007. These communications were an attempt to resolve the issues regarding the scope of the Subpoena. See the Martin Declaration, at ¶¶18 and 19. Wells Fargo's counsel explained that the scope of the documents which the Trust was then indicating it would need would take months to produce, and would be an extremely expensive undertaking. See the Martin Declaration, at ¶ 20.

Wells Fargo's counsel inquired of the Trust's counsel if there were one or two accounts that were more important and if the parties could narrow the time frame. It was further explained that documents arising from transactions processed over the prior two or three years would be easier to retrieve since the method of retention had been upgraded. Note that prior to the referenced two or three year period, Wells Fargo records were stored using microfilm. See the Martin Declaration, at ¶¶21 and 22.

It is also important to emphasize that the process of retrieving microfilm is very labor intensive. Wells Fargo transactions are given a number and stored according to the number, which is maintained according to date and branch, as opposed to customer account numbers. Therefore, one account can have hundreds (if not thousands) of transaction numbers which must be individually searched for and manually retrieved. See the Martin Declaration, at ¶ 23.

In response to the comments of Wells Fargo's counsel, counsel for the Trust responded that this was the "first stage of investigation" and her clients "want everything identified in the subpoena." See the Martin Declaration, at ¶ 24. As the discussions/negotiations seemed to be at an impasse, counsel for Wells Fargo suggested that the Trust's counsel start by identifying two accounts and limiting the time frame to the last two or three years. In response, the Trust's counsel identified

the Collections Trust Acct. No. 089-5737864 and Investors Trust Acct. No 046-5657146. See the Martin Declaration, at ¶¶25 and 26. Wells Fargo agreed to begin the search and retrieval for those two account records, including the wires and ACH transfers, with the information to be produced on a rolling basis. See the Martin Declaration, at ¶ 27.

Regarding correspondence and emails relating to deposit accounts, the Trust's counsel was informed that Wells Fargo would determine with the branches of origin of the accounts if any hard copy files were maintained, although there was no internal requirement for such retention. Wells Fargo agreed to produce these records if they could be located. See the Martin Declaration, at ¶ 28.

With respect to the Trust's demands for the identity of every Wells Fargo employee (past or present) who ever had contact with the customers in issue, and copies of all communications including emails from these employees, the Trust was informed that Wells Fargo had no way to know that information. The Trust's counsel was also informed that the best Wells Fargo could do would be to provide the statements, account opening documents and hard copy files, if any, with the anticipation that these documents would identify employees having contact with the customers in issue. See the Martin Declaration, at ¶29.

Wells Fargo then had its employees at the branches of account conduct a search for hard copy files and all other communications. The file documents and other documentation located which evidenced communications (comprises approximately three hundred pages) were produced to the Trust's counsel on December 3, 2007. These records included the names of Wells Fargo employees having contact with the customers in issue. See the Martin Declaration, at ¶¶32 and 33.

Wells Fargo's in-house counsel also informed the Trust's counsel that Wells Fargo did not make Wells Fargo Bank's internal policies available if Wells Fargo was not a party to the litigation

9

in issue, and an inquiry was made of the Trust's counsel regarding the relevance of the internal policies. No response to this issue was ever received. See the Martin Declaration, at ¶¶34 and 35. Note that Wells Fargo did produce copies of its Business Account Agreement, which details the agreement and obligations between Wells Fargo and its customers regarding any account relationships. See the Martin Declaration, at ¶36.

The Trust's counsel was also informed by Wells Fargo's counsel that Wells Fargo and other financial institutions, in general, are specifically prohibited by federal law from disclosing the existence of suspicious activity reports, and that requests for that information must be reported to the appropriate officials. See the Martin Declaration, at ¶37.

From the two accounts identified by counsel for the Trust (i.e., Collections Trust Acct. No. 089-5737864 and Investors Trust Acct. No 046-5657146) over 1,900 wires (comprising over 1900 pages of documentation) were retrieved and produced by Wells Fargo in November, 2007. See the Martin Declaration, at ¶39, and the Schneider Declaration, at ¶ 25. The retrieval process regarding this documentation alone took approximately 63 hours. See the Schneider Declaration, at ¶ 25.

Additionally, it was identified there were approximately 459 ACH transactions to produce for the 2 negotiated accounts (i.e., Collections Trust Acct. No. 089-5737864 and Investors Trust Acct. No 046-5657146). The time to produce these documents was approximately 130 hours. See the Schneider Declaration, at ¶ 26

With respect to the five additional accounts identified in the Motion for which counsel for the Trust is now seeking ACH records and wire transfer records (i.e., 10-90, Inc. Acct. No. 552-5221528; Mountain Vista Acct. No. 552-5221536; Diversified Trust Deed Acct. No. 562-7688038; USACM Choice IV Checking 0834610149; and Palomino Partners Acct. No. 834-614422), Wells

10

Fargo estimates that it will take approximately 79 hours to produce this documentation/information. See the Schneider Declaration, at ¶ 27.

### III. WELLS FARGO HAS COOPERATED WITH THE TRUST, AND CONTINUES TO COOPERATE REGARDING DOCUMENTS PROPERLY THE SUBJECT OF PRODUCTION

As the Court can see from a review of the detailed factual recitation above, Wells Fargo has cooperated extensively with the Trust regarding those documents which are properly the subject of production. Wells Fargo has expended 193 hours to locate and to produce the documents which have already been produced. The documents comprise thousands of pages.

In the Motion, the Trust has specifically now identified the following categories of production (excluding the Wells Fargo's policies/procedures and related documents, which will be discussed *infra*):

(a) ACH records for the Collections Trust Acct. No. 089-5737864; Investors Trust Acct. No 046-5657146; 10-90, Inc. Acct. No. 552-5221528; Mountain Vista Acct. No. 552-5221536; Diversified Trust Deed Acct. No. 562-7688038; USACM Choice IV Checking 0834610149; and Palomino Partners Acct. No. 834-614422.

(b) Wire Transfer records for Collection Trust Acct. No. 089-5737864; Investors Trust Acct. No 046-5657146; 10-90, Inc. Acct. No. 552-5221528; Mountain Vista Acct. No. 552-5221536; Diversified Trust Deed Acct. No. 562-7688038; USACM Choice IV Checking 0834610149; and Palomino Partners Acct. No. 834-614422.

(c) Documents reflecting the identity and status of the current and former Wells Fargo employees who handled transactions or accounts of Debtors, Individuals or Entities [as defined in the Motion]

(d) Any and all documents, including signature cards and account applications, that evidence the accounts at Wells Fargo held in the name of or for the benefit of any Debtors, Entities and Individuals, and the accounts' type and purpose.

11

(e) All internal (among Wells Fargo employees) and external communications (between Wells Fargo employees and the Debtors, Entities or Individuals), including letters, emails, regarding bank accounts maintained by USACM or related entities at Wells Fargo.

See the Motion, ¶ 19

With respect to categories (a) and (b), it appears that there were no wire or ACH transactions (and, therefore, no documents) regarding Diversified Trust Deed Acct. No. 562-7688038 and Palomino Partners Acct. No. 834-614422. However, Wells Fargo will move forward and gather the documentation arising from the wire and ACH transactions on the 10-90, Inc. Acct. No. 552-5221528; the Mountain Vista Acct. No. 552-5221536, and the USACM Choice IV Checking 0834610149, provided that Wells Fargo's reasonable expenses are covered in connection with such activities.

With respect to categories (c) and (e), Wells Fargo has conducted a search of its files, and has already produced all of the documents which it can locate in this regard. Those efforts are detailed in the Martin and Schneider Declarations. With respect to a further search for emails, it is Wells Fargo's understanding that no email origination or termination information has been provided which could be used in an attempt by Wells Fargo to conduct an additional search. If this information is available, Wells Fargo will undertake further, reasonable efforts to continue in this regard, provided that Wells Fargo's reasonable expenses are covered in connection with such activities.

Lastly, with respect to categories (d), Wells Fargo has informed the Trust that it has already produced the documents located in connection with this category. Wells Fargo understands that the Trust maintains that not all documents have been produced/located, despite the thousands of pages of documentation which has been produced. Wells Fargo also understands that the Trust has detailed this ostensibly missing documentation for Wells Fargo. The only thing Wells Fargo can do in this

12

regard is to re-check its normal repository areas, and to re-affirm that the documents can or cannot be located. If they are not found (as they have not been to date) Wells Fargo cannot create documents out of "thin air." However, Wells Fargo will undertake such additional review provided that Wells Fargo's reasonable expenses are covered in connection with such activities.

IV. **WELLS FARGO'S POLICIES AND PROCEDURES ARE NOT PROPERLY THE SUBJECT OF PRODUCTION**

In addition to the Trust's many requests for Debtors', Individuals' and/or Entities' ostensible account-related/account-management documents, the Subpoena contained twenty-three separate requests for documentation in the nature of Wells Fargo's policies and procedures. These requests range from documentation relating to policies attendant to account management and operations, to regulatory and suspicious activity reports. See the Subpoena (**Exhibit A**), and the following requests contained therein: Requests Nos. 19, 20, 21, 25, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 55, 59, 63, 72, 73, 74, and 78.

Even though the Trust appears to have minimally pared down certain of its requests in this regard, the Motion still seeks the following:

(f) Wells Fargo internal policies, including:

(i) document retention policy;

(ii) Wells Fargo "know your customer" policy;

(iii) Wells Fargo policies and procedures on reporting suspicious activity in accounts including circular wire transfers and unusually large wire transfers;

(iv) Wells Fargo policies and procedures that deal with the application, opening, acceptance, management, ongoing review and oversight of the accounts at Wells Fargo;

13

(v) Wells Fargo policies and procedures that ensure regulatory and internal audit compliance with respect to the accounts at Wells Fargo;

(vi) Wells Fargo policies and procedures applicable [sic].

See the Motion, ¶ 19.

With respect to items (iii) and (v) above, it is Wells Fargo's position that the Trust's requests for the "policies and procedures on reporting suspicious activity in accounts" and the "policies and procedures that ensure regulatory and internal audit compliance with respect to the accounts at Wells Fargo" is nothing more than the Trust's attempting to "back door" the otherwise explicit statutory and regulatory restrictions upon Wells Fargo (and the Trust) regarding the production of such documentation/information.

Counsel for the Trust has been advised that the attempts to secure this documentation/information is unlawful. See Letter of Toysha Martin to the Trust's counsel, dated October 11, 2007, attached to the Toysha Martin Declaration. Despite this position, the Trust continues in these efforts as set forth in the Motion.

12 C.F.R. § 21.11(k) states as follows:

> (k) Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (*e.g.,* 31 U.S.C. 5318(g)), or both, and shall notify the OCC.

In the event the Trust believes it is somehow legally entitled to such information, 12 C.F.R § 4.31 *et seq.* provides a mechanism for the Trust or another litigant to request the Office of the Comptroller of the Currency to provide them with access to a suspicious activity report and the documents related thereto. In this case, the Trust has not done so.

Similarly, Wells Fargo is prohibited from disclosing any documents relating to or referring to regulatory examinations. In this regard, 12 C.F.R. § 4.37(b)(1)(i) provides, in pertinent part:

> Without OCC approval, no person, national bank, or other entity ... may disclose information covered by this subpart in any manner except:
>
> (A) After the requestor has sought the information from the OCC pursuant to the procedures set forth in this subpart; and
>
> (B) As order by a Federal court in a judicial proceeding in which the OCC has had the opportunity to appear and oppose discovery.

The Court will note that the subpart to which the above provision refers is Subpart C of Part 4 of Chapter 1 of Title 12 of the Code of Federal Regulations. The information covered by Subpart C is "non-public OCC information." Specifically, 12 C.F.R § 4.32(b) provides multiple subcategories of information which fall within this protection, and concludes with the following pronouncement:

> "[this non-public information] is the property of the Comptroller. A report of examination is loaned to the bank or holding company for its confidential use only."

See 12 C.F.R § 4.32(b)(2). Subpart (e) of 12 C.F.R § 4.32 is also clear that Wells Fargo, which is a national bank supervised by the OCC, falls within this regulatory scheme/series of constraints.

This regulatory scheme recognizes the ability of a party to make a request of a court and/or of the OCC for the release of such "non-public OCC information" under unique circumstances after carrying certain strenuous burdens.

In connection with either of the requests for SAR-related information or regulatory information, it is clear that the Trust is not entitled to the same unless and until it has complied with the pertinent regulatory requirements. Instead, the Trust appears to attempt to "end-run" these

15

constraints by seeking Wells Fargo's "policies and procedure" regarding "reporting suspicious activity in accounts" and regarding Wells Fargo ensuring "regulatory and internal audit compliance with respect to the accounts." This is merely a subterfuge. How can the Trust substantiate the need or relevancy of any such policies and procedures if the ultimate documentation prepared with respect thereto cannot be made available to the Trust? It cannot, and the Court should not countenance such an approach to obtaining documentation/information to which the Trust is otherwise not entitled.

With respect to items (iii) and (v) above, Wells Fargo has objected to the production of these policies as they are confidential and proprietary to Wells Fargo. Although the scope of a 2004 examination is generally very broad, it is not without its limits. See generally, *Northmount Associates v. W&S Investments, Inc.* (*In re W&S Investments, Inc.*), 985 F.2d 577 (Ninth Cir. 1993); and, *In re Continental Forge Co., Inc.* 73 B.R. 1005, 1007 (Bankr. W. D. Pa. 1987). Rule 2004 examinations "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." See *In re Wilcher, 56 B.R. 428, 433* (Bankr. N.D. Ill. 1985).

Consistent with the above authorities, the Trust should not be permitted to employ Rule 2004 to " launch into a wholesale investigation" of Wells Fargo's private policies and procedures to see if it can locate a hint of impropriety on the part of Wells Fargo. These policies and procedures were not shared with the debtor(s) and did not govern the legal responsibility of each party relating to the transaction of business between the parties. In contrast, the relationship between the debtors and Wells Fargo is set forth in the account agreements and related documents signed by Wells Fargo and one or more of the debtors (as applicable), all of which has been produced (to the extent it could be located). Therefore, the Trusts request for these documents constitutes nothing more than an improper "fishing expedition," the relevancy of which is non-existent.

## V. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Motion be denied. Alternatively, Wells Fargo requests that this Court implement such necessary safeguards with respect to any private and confidential documentation/information sought by the Trust (and ordered to be produced by this Court) to ensure that such confidential documentation/information be held under the strictest of security measures. Lastly, Wells Fargo requests that it be compensated for the extraordinary expenditure of resources it will incur by having to continue to produce documents now known to be available (i.e., the wire and ACH documents), and to search for other documentation not readily available, which the Trust is seeking (potential email, etc. documentaiton).

DATED this 15 day of February, 2008.

SMITH LARSEN & WIXOM

_____
Kent F. Larsen, Esq.
Nevada Bar No. 3463
Hills Center Business Park
1935 Village Center Circle
Las Vegas, Nevada 89134
(702) 252-5002
Attorneys for Wells Fargo Bank, N.A.

17

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the law firm of Smith Larsen & Wixom, counsel for Wells Fargo Bank, N.A., and that on the 15th day of February, 2008, I served a true and correct copy of the foregoing Wells Fargo Bank N.A.'s Opposition to USACM Liquidating Trust's Motion to Compel Production of Documents by Wells Fargo, by electronic transmission to Movant USACM Liquidating Trust, Attn: Allan B. Diamond at adiamond@diamondmccarthy.com, Eric D. Madden at emadden@diamondmccarthy.com and William T. Reid, IV at wreid@diamondmccarthy.com., and by depositing a copy in the U.S. Mail, postage prepaid and addressed as follows:

>Allan B. Diamond, Esq.
>William T. Reid, IV , Esq.
>Eric D. Madden., Esq.
>Diamond McCarthy, LLP
>909 Fannin, Suite 1500
>Houston, TX 77010
>*Special Counsel for the USACM Liquidating Trust*

>/s/ *Jana Rivard*
>Jana Rivard
>Legal Assistant
>Smith Larsen & Wixom

18