EXHIBIT C

# DECLARATION OF TOYSHA MARTIN

I, Toysha Martin, declare as follows:

1. I am an employee of Wells Fargo Bank, N.A ("Wells Fargo") in the Law Department.

2. My title is Counsel. I have worked at Wells Fargo for 3.5 years.

3. I am above the age of 18 and am otherwise competent to testify to the matters set forth herein.

4. I am familiar with Wells Fargo's legal routines and practices in processing and responding to subpoenas and searching for and reproducing Wells Fargo customer records.

5. I have personal knowledge of all matters stated in this declaration.

6. Legal orders such as subpoenas are handled on a day-to-day basis by our operations group, Legal Order Processing ("LOP").

7. LOP receives various legal orders, including subpoenas and is responsible for coordinating the production of documents and witnesses as compelled by legal order.

8. Wells Fargo Bank responds to more than 2,000 legal orders for deposit accounts records per month.

9. Legal orders for non-deposit account records are handled by regional legal hubs.

10. Often a subpoena will request both deposit and non-deposit account records. In these instances, productions are handled by two separate locations simultaneously.

11. Depending on the breadth of documents sought in a subpoena, Wells Fargo may serve a written objection under the applicable rule, usually similar to Rule 45, Federal Rules of Civil Procedure.

12. If a written objection is served, Wells Fargo will normally make contact with the subpoenaing party, discuss the documents needed by the party and the expense involved in producing the same. It is typical that account opening documents and monthly statements will

1

be produced initially, the review of which will allow the subpoenaing party to have a better understanding of the scope of available documents and whether the subpoenaing party truly desires to incur the expense of a much broader document production. Wells Fargo finds that, in most instances, the review by the subpoenaing party of the monthly statements is an efficient and expeditious manner in getting to the subpoenaing party the information that party is seeking. This method of handling very broad document requests usually assists such parties in identifying a particular area of focus for follow up document productions, if necessary.

13. In the event the processors and paralegals of Wells Fargo are unable to resolve document production issues with counsel for parties who have served subpoenas on Wells Fargo, these matters will be escalated to an in-house attorney.

14. On September 20, 2007, I was contacted by a Wells Fargo paralegal advising that a requesting attorney was demanding production of documents from approximately twenty accounts spanning a period of over ten years. This counsel was requesting the documents by October 10, 2007.

15. Unaware of all the facts leading to this demand, I requested, received, and reviewed the relevant documents and correspondence.

16. I noted that an objection letter was issued by Wells Fargo on March 20, 2007, by the processor handling a subpoena served upon Wells Fargo by counsel for the USACM Liquidating Trust in the following consolidated bankruptcy proceedings: In re: USA Commercial Mortgage Company, United States Bankruptcy Court, District of Nevada, BK-S-06-10725-LBR; In re: USA Capital Realty Advisors, LLC, United States Bankruptcy Court, District of Nevada, BK-S-06-10726-LBR; In re: USA Capital Diversified Trust Deed Fund, LLC, United States Bankruptcy Court, District of Nevada, BK-S-06-10727-LBR; In re: USA Capital First Trust Deed Fund, LLC, United States Bankruptcy Court, District of Nevada, BK-S-06-10728-LBR; and, In re: USA Securities, LLC, United States Bankruptcy Court, District of Nevada, BK-S-06-10729-LBR.

2

17. I also learned that the Wells Fargo processor initially handling the subpoena had spoken with counsel for the USACM Liquidating Trust, Eric Madden, Esq., of the law firm of Diamond McCarthy, LLP, and such counsel had agreed to limit the production by Wells Fargo to the statements and account opening documents on 17 accounts ostensibly within the scope of the subpoena.

18. On October 2, 2007, I sent a letter to Elisaveta Dolghih, Esq., of the law firm of Diamond McCarthy, LLP, and further set forth the position of Wells Fargo in connection with the document production issues. A copy of that letter is attached to this declaration as **Exhibit 1**.

19. October 10, 2007, I spoke with Ms. Dolghih and attempted to resolve the issues regarding the scope of the subpoena.

20. I explained that a request ostensibly covering every transaction on over a dozen accounts would certainly take months to produce and would be an extremely expensive undertaking.

21. I asked Ms. Dolghih if there were one or two accounts that were more important and if we could narrow the time frame.

22. I further explained that documents arising from transactions processes over the prior two or three years would be easier to retrieve since the method of retention had been upgraded, which made for an easier and quicker production process. Prior to this time period, bank records were stored using microfilm.

23. The process of retrieving microfilm is very labor intensive. Bank transactions are given a number and stored according to the number, which is maintained according to date and branch, as opposed to customer account numbers. Hence, one account can have hundreds; if not thousands of transaction numbers which must be individually searched for and manually retrieved.

3

24. In response to my requests, Ms. Dolghih explained that this was the "first stage of investigation" and her clients "want everything identified in the subpoena."

25. Since the negotiations seemed to be at an impasse, I suggested that Ms. Dolghih start by identifying two accounts and limiting the time frame to the last two or three years.

26. In response, Ms. Dolghih identified the Collection Trust and Investor Trust Accounts.

27. I agreed that from those two accounts, Wells Fargo would begin the search and retrieval for those two account records, including the wires and ACH transfers. This information would be produced on a rolling basis.

28. I explained to Ms. Dolghih there was no requirement to maintain a hard copy file of correspondence and emails regarding deposit accounts to the extent any had been generated, but I would contact the branches of origin of the accounts to determine if the bankers at the branchs in fact maintained a hard copy file. If so, that information would be produced.

29. In response to Ms. Dolghih demands for the identify of every employee past or present ever having contact with the customer and copies of all communications including emails from those employees, I explained there was no way for us to know that information. The best we could do would be to provide the statements, account opening documents and hard copy files, if any. These documents would certainly identify employees having contact with the customers.

30. I received a letter from Ms. Dolghih following our telephone conversation, wherein she attempted to summarize and confirm our telephone conversation from the day before.

31. Ms. Dolghih's letter was inaccurate and incomplete. I corrected her errors with a letter dated October 11, 2007, a copy of which is attached to this declaration as **Exhibit 2**.

32. Once identified, employees at the branch of account were instructed to conduct a search for hard copy files and all other communications. The file documents and other

4

documentation located which evidenced communications were produced to Diamond McCarthy, LLP, on December 3, 2007, and it is my understanding that such information comprises approximately three hundred pages.

33. The records produced included the names of Wells Fargo employees having contact with the customer.

34. In response to the request for Wells Fargo Bank's internal policies, I explained that Wells Fargo does not make those available without having more information regarding the relevance and the purpose in litigation in which Wells Fargo is not a party. I asked Ms. Dolghih if she could explain the relevance of our internal policies, and I also indicated that Wells Fargo may consider a possible protective order if the relevance could be explained.

35. Wells Fargo never received a response regarding the relevance and purpose of producing Wells Fargo's internal policies.

36. Wells Fargo did however produce copies of our Business Account Agreement which spell out our agreement and obligations in the account relationship with our customers.

37. I further explained to Ms. Dolghih that financial institutions are specifically prohibited by federal law (31 U.S.C. § 5318) from disclosing the existence of suspicious activity reports, and that requests for that information must be reported to the appropriate officials.

38. A review of the numerous accounts indicated there was extensive wire and ACH transfer activity on each of the accounts.

39. From the two accounts identified by Ms. Dolghih over 1,900 wires (comprising over 1900 pages of documentation) were retrieved and produced in November 2007.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct, and that this Declaration was executed this 15 day of February, 2008, at Phoenix, Arizona.

[signature]

EXHIBIT C-1



**WELLS FARGO**

Law Department
MAC T5311-010
6301 Gaston Avenue, Suite 200W
Dallas, Texas 75214

October 2, 2007

Eric Madden
Diamond McCarthy, LLP
1201 Elm Street, 34th Floor
Dallas, Texas 75270

RE: Subpoena - USA Commercial Mortgage Company, et al.
Case No. BKS0610725LBR
Wells Fargo File No. 0320971-01

Dear Eric Madden:

Your Subpoena in the above-referenced matter has been forwarded to me for response.

I am hopeful that you are willing to work with Wells Fargo to reach a mutually satisfactory resolution to this matter. Even so, we feel it is necessary to preserve our rights by making these objections to your Subpoena. Pursuant to Rule 45(d)2(B) of the Nevada Rules of Civil Procedure, Wells Fargo Objects to the production, inspection, or copying of documents designated in the Subpoena for the following reasons.

First, Wells Fargo objects to the extent that the Subpoena seeks to impose a duty upon Wells Fargo to locate, review, and produce documents that are not the records of Wells Fargo, but may be records of separate entities that are affiliates of Wells Fargo. Obtaining documents from other separate entities including, but not limited to, affiliates of Wells Faro would require the issuance of subpoenas addressed to those separate entities and proper service upon those separate entities.

Second, Wells Fargo objects to the extent that the Subpoena may require Wells Fargo to produce documents on the possession, custody, or control of any persons acting under the control of or on behalf of Wells Fargo. Wells Fargo can produce such documents only if they are in the possession, custody, or control of Wells Fargo.

Third, Wells Fargo Objects to the Subpoena to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, and it will not produce such documents and information, if any exist.

Fourth, Wells Fargo Objects to the Subpoena to the extent that it seeks documents containing confidential, private, proprietary, or trade secret information of Wells Fargo. At this time, Wells Fargo will not produce such documents and information, if any exist.

Fifth, Wells Fargo objects to the Subpoena on the grounds that the scope of the Subpoena is overly broad and imposes and undue burden on Wells Fargo in that it requests records that are producible from another source. Thus, the Subpoena imposes an undue burden on Wells Fargo, a non-party to the proceeding, to research and produce the requested records.

Sixth, Wells Fargo objects to the Subpoena to the extent that the description of the requested documents and/or information is vague, ambiguous, and unintelligible and does not identify the documents requested or information sought with reasonable particularity.

Seventh, Wells Fargo objects to the Subpoena to the extent that it requests information, such as e-mails or any other records stored electronically or otherwise, that are not part of any physical file and are, therefore, not readily available. Requiring Wells Fargo, a non-party, to search for the existence of such records imposes an undue and unfair burden on it, in terms of employee hours and financial cost. It is unreasonable to require Wells Fargo to bear the burdens of searching electronic records or other storage means, if any, for the possibility of locating documents that fall within the scope of the Subpoena.

Eighth, Wells Fargo objects to the Subpoena to the extent that it does not provide sufficient time for compliance.

Without waiving the previously stated objections, Wells Fargo Bank agrees to produce those documents responsive to your request which we believe are not covered by the stated objection.

Again, I am hopeful that we can work out a mutually satisfactory resolution to your document request. Please also be advised that Wells Fargo exercises it right to reimbursement as permitted by the local rules. Our fees for production will be determined once the scope of your Subpoena is more narrowly defined.

Please contact Beverly Williams at (214)841-3231 to further discuss terms of the production.

Sincerely,

*Beverly Williams for Toysha Martin*

Toysha Martin
Senior Counsel

cc:  Beverly Williams
     T5311-010

EXHIBIT C-2



**WELLS FARGO**

Toysha R. Martin
Senior Counsel

Law Department
MAC S4101-142
Suite 1418, 14th Floor
100 W. Washington
Phoenix, AZ 85003-1805
602 378-4766
602 378-4428 Fax
toysha.r.martin@wellsfargo.com

October 11, 2007

<u>Sent Via US Mail and Facsimile to 214.389.5399</u>
Elisaveta Dolghih
Diamond McCarthy LLP
Renaissance Tower
1201 Elm Street, 34th Floor
Dallas, TX 75270

Re:   *In re USA Commercial Mortgage Company, et al.*, Case No. 06-10725

Ms. Dolghih:

I am in receipt of your letter dated October 10, 2007 which attempts to summarize our conversation. Your misstatements and omissions are corrected with this response.

First, I will point out that prior to receiving your letter, I forwarded via email a copy of the March 2007 Rule 45 objection letter made in response to your subpoena. A copy of that letter and the fax confirmation sheet is attached. As with several other items, your letter fails to mention this aspect of our discussion. Under Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure:

> ...a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance..., serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials...If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials...except pursuant to an order of the court...

Although the Bank's position is that we are under no obligation to further produce anything under the March 2007 Subpoena absent a court order, Wells Fargo has repeatedly demonstrated our willingness to work with you. As I explained during our telephone conversation, since Wells Fargo Bank receives more than 2000 subpoena requests for financial records per month, it is necessary that we object to overly broad subpoenas which cause an undue burden and expense on the Bank, a non-party to the litigation. Your subpoena falls into that category. Your initial request for records identified over 100 entities. To your credit, that list was ultimately reduced to approximately 20 entities, but continues to cover a 10 year period.

For the reasons provided, Wells Fargo attempted to negotiate the scope and breadth of the subpoenas following our objection. On April 11, 2007, Wells Fargo made a mutually agreed upon partial production of account statements to which Eric Madden requested a 60 day extension to review those documents and to determine what additional items were needed. The first extension ended on or near June 5, 2007. Thereafter, Mr. Madden agreed to a second 60 day extension to continue his review of those statements. At no time during the first four months

following our written objection did Eric Madden ever identify additional records to be produced. Therefore, Wells Fargo did not search for records requested by the March 2007 Subpoena for two reasons: (1) Although Wells Fargo agreed to work with you, Wells Fargo made a valid and timely written objection and had no obligation to produce any records, and (2) Mr. Madden did not identify additional records for review. So your assertion that Wells Fargo was provided sufficient time to produce records is a gross mischaracterization of the facts. Neither of the first two extensions was for the benefit of Wells Fargo Bank to gather records.

The second extension ended on August 6, 2007. Two days later, you requested an extension until September 10, 2007; again without identifying records to be produced. There was also no search or retrieval for records during this time. Finally, on September 4, 2007, you called Wells Fargo's Legal Order Processing group demanding production of every item listed on the March 2007 Subpoena to be produced by October 10, 2007. You were told then that was not possible and refused to provide the time necessary for production. I remind you that under Rule 45(c)(2)(1) of the Federal Rules of Civil Procedure, you have an obligation to "avoid imposing an undue burden or expense" on those subject to your subpoena.

Your next misstatement occurs when you attempt to summarize my communications about what the Bank will be able to produce "faster." You were advised on multiple occasions by multiple Wells Fargo personnel that your request consists of more than 50,000 items which will take over six months to retrieve, excluding any database search for email communications of every bank employee having contact with the named entities. It doesn't matter how you prioritize the requested items, it will still take a minimum of six months to produce everything requested.

A more accurate recantation of our conversation follows: I asked if there was something in particular you were looking for that could help narrow the focus and expedite the production. You responded that this is your "first stage of investigation" and you "want everything identified in the Subpoena." I again asked if there was a particular account or particular items you believed to be more significant, attempting to get you to narrow your focus. Finally, you agreed there were two accounts the Bank could focus its production.

In response to your other points:
1) As promised, Well Fargo will definitely try to expedite the production of the records on the Collections Trust Account and the Investor Trust Account identified. It will still take over six months to produce every item you've requested, if not longer.
2) The signature cards previously produced provide names of employees working on the account. Please note, these accounts were all closed over a year ago or more. Any attempt to retrieve information regarding "current and former employees who handled transactions or accounts of any of the Entities at Wells Fargo as well as any correspondence or communication that such employees had with any of the Entities, including emails..." is an extensive undertaking of research time and costs that is unduly burdensome for what amounts to a fishing expedition of information which may or may not exist. To that end, our objections stand, but I will gladly make a call to our IT group.
3) Wells Fargo will provide copies of what is publicly available to our customers regarding our consumer/business relationship obligations. Our objections stand for any internal

policies. As to your request for SAR information, please refer to 31 U.S.C. 5318. Many of the items you request are also federally regulated and available other means.

Unfortunately, as repeatedly explained to you, to produce everything under the March 2007 Subpoena is an extensive undertaking and cannot be achieved prior to the November 2, 2007 deadline identified in your letter; however, efforts will be made to produce the items discussed.

Kindest regards,

*[signature]*

Toysha Martin

Enclosure(s)

cc:  Beverly Williams
     Michelle Schneider

```
                                        JOB STATUS REPORT

                                                TIME   : 03/20/2007 07:45
                                                NAME   : WELLS FARGO
                                                FAX#   : 4807245115
                                                TEL#   : 4807245115
                                                SER.#  : BR04J2626991

  DATE,TIME              03/20  07:45
  FAX NO./NAME           912143895399
  DURATION               00:00:30
  PAGE(S)                02
  RESULT                 OK
  MODE                   STANDARD
                         ECM
```



### WELLS FARGO SERVICES
### SUBPOENA PROCESSING DEPARTMENT
P.O. Box 29728 – MAC #S3928-020
Phoenix, AZ 85038

## Fax Cover Sheet

### March 20, 2007

To:     Eric D. Madden                            Fax #:  (214) 389-5399

From:   Lisa Chow                                 Phone #: (480) 724-2048
                                                  Fax # (480) 724-5106

# of pages (including) this cover sheet: 2

Re:  USA Commercial Mortgage et al. Our File 1162559.



**WELLS FARGO**

Subpoena Processing Department
P.O. Box 29728
MAC# S3928-020
Phoenix, AZ 85038-9728

March 20, 2007

<u>Via Facsimile (214) 389-5399
& Regular US Mail</u>

DIAMOND MCCARTHY LLP
ATTN.: ERIC D. MADDEN
1201 ELM STREET  34/FL
DALLAS, TX  75270

    Re:    Federal Civil Subpoena
    Case No.:    BK-S-06-10725-LBR
    Case Name:    USA Commercial Mortgage Co. et al
    Bank Reference No.:    1162559

Dear Mr. Madden:

The subpoena referenced above and received on 03/14/2007, has been assigned to me for response.

Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, Wells Fargo objects to production, inspection or copying of these documents on the grounds that the scope to the subpoena is overly broad and imposes an undue burden on Wells Fargo. In addition, any responsive documents may contain confidential and/or proprietary information.

Wells Fargo is unable to produce the documents requested by 04/11/2007. Wells Fargo is willing to discuss a mutually satisfactory solution to this problem but felt it necessary to preserve its right in the event that this issue cannot be otherwise mutually resolved. Please also be advised that Wells Fargo exercises its right to reimbursement under the Federal Rules of Civil Procedure. The normal fee for producing these records is $0.10 per item and $10.00 per hour for research and copy time.

If you have any questions, please contact me at the number listed below.

Sincerely,

Lisa Chow
Subpoena Processing Representative
1-(480) 724-2048
Hours of Operation:  8:30 a.m. to 5:00 p.m. MST (no Daylight Savings Time)

I:\Subpoena Department\Letters\FedCivObj.doc
Rev. 04-04