E-Filed on 02/19/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | **USACM LIQUIDATING TRUST'S REPLY TO WELLS FARGO'S OPPOSITION TO USACM LIQUIDATING TRUST'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY WELLS FARGO** |
| Affects:<br>☐All Debtors<br>☒USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Hearing Date: February 21, 2008<br><br>Hearing Time: 9:30 a.m. |

Wells Fargo has been delaying the production of the responsive documents for many months now, producing only a fraction of documents requested in the Subpoena.[1] The Trust has been forced to file the Motion because of the Bank's constant stalling, ever changing and evasive objections and overall lack of cooperation.

The Bank agreed to produce ACH records for two accounts, but has not produced one page. The Bank agreed to produce wire records, but the records produced are incomplete. It agreed to produce correspondence, but produced less than a hundred pages,[2] claiming that it does not maintain the hard copy of correspondence. Even the most basic of the banking documents such as signature cards and account applications have not been produced by Wells Fargo for most of the accounts. Yet, the Bank now maintains that is has been cooperative in the production.

## I. If Wells Fargo Does Not Have the Responsive Records, It Must Provide a Sworn Affidavit to That Effect.

In May 2007, the Bank produced bank account statements for 21 accounts maintained by USA Commercial Mortgage ("USACM") and its related entities. Although the Subpoena requested any documents "evidencing" the accounts, the Bank failed to produce such basic banking documents as the account applications (produced only for 9 out of 21 accounts) and signature cards (produced only for 4 out of 21 accounts). The Trust has twice expressly requested that the missing documents be produced,[3] providing Wells Fargo with a chart describing the

---

[1] Unless otherwise defined, capitalized terms used herein shall be given the meaning ascribed to such terms in the USACM Liquidating Trust's Motion to Compel Production of Documents by Wells Fargo (the "Motion") [Docket No. 5782].

[2] Although Wells Fargo states in its Opposition to USACM Liquidating Trust's Motion to Compel Production of Documents by Wells Fargo (the "Opposition") that it has produced approximately three hundred pages of "communications," only roughly a hundred pages fall in that category as defined in the Subpoena. The rest of the documents consist of business account applications, certificates of authority and what appears to be background material on USACM collected by Wells Fargo employees.

[3] *See* Exhibits H & N. (To reduce the burden on this court, the exhibit list has been carried on from the Motion).

specific documents missing from the production, but received no response and no documents. As of right now, the Trust has no account opening documents for most of the accounts that the Bank has identified as being held by USACM or its related entities. These records are essential to identifying the main signatory on each account, as well as identities of Wells Fargo employees who opened the accounts. Because the account opening documents and the signature cards are records normally kept in the course of Wells Fargo's business, these records are presumed to exist.[4] If the Bank claims it has no such records, it must state so under oath.[5] The Bank has not done so, and its unsupported allegation should not be accorded any weight.

The Court should also require the Bank to provide an affidavit describing in detail its efforts in locating the documents and explaining why these basic documents that are created for each bank account, are missing from the files related to the USACM accounts.[6] This is necessary to understand why, for example, a "Business Client Acceptance Checklist" – a form that states on its face that it must be filled out for each new deposit account – has not been provided for each USACM account responsive to the Subpoena.[7]

---

[4] *See Norman v. Young,* 422 F.2d 470, 473 (10th Cir. 1970) ("...records which are normally kept in the business of the party...are presumed to exist, absent a sworn denial."); *Goldman v. Checker Taxi Co.,* 325 F.2d 853, 856 (7th Cir. 1963) ("Records kept in the ordinary course of business of a party are presumed to exist").

[5] *See Norman,* 422 F.2d at 473; *see also Eley v. Herman,* No. 1:04-CV-416, 2005 WL 3115304, at *2 (N.D. Ind. Nov. 21, 2005) (Stating that a requesting party is entitled to receive an affidavit describing the efforts to locate the responsive documents and stating that after a diligent search there are no responsive documents in the responding party's "possession, custody or control" as the term is defined under FED. R. CIV. P. 34.)

[6] *See 21X Capital Ltd. v. Werra*, No. C06-04135 JW (HRL), 2008 WL 131918, at *2 (N.D. Cal. Jan. 11, 2008) (Requiring an affidavit that no responsive records have been found); *Lyon v. Lincoln Drilling Co.,* No. 83 C 4263, 1986 WL 12313, at *2 (N.D. Ill. Oct. 24, 1986) (Requiring a corporate representative to provide a sworn statement concerning the previous existence or non-existence of corporate documents that are of such nature that are presumed to exist and requiring him to explain under oath "how, when and why events occurred accounting for [the documents] loss and destruction; and if defendant asserts lack of knowledge, the basis for such lack of knowledge."); *Buchanan v. Consolidated Stores Corp.,* 206 F.R.D. 123, 125 (D. Md. 2005) (Ordering a party to provide a sworn affidavit that all responsive records have been produced and to describe the efforts used to locate the documents).

[7] *See* Exhibit O. The Business Client Acceptance Checklist also specifies that it must be retained in a "secure local file for five years after the account closes." Given the fact that most of the accounts were closed in 2005 and 2006, the Bank should have this form in its possession for most of the accounts pursuant to its own retention policy.

**II. Wells Fargo Has Unreasonably Delayed the Production of ACH Records and Refused to Consider the Draft Protective Order Proposed by the Trust.**

Three-and-a-half months after Wells Fargo expressly agreed to produce *on a rolling basis* the ACH records for the Investors Trust Account and Collections Trust Account, Wells Fargo has not produced a single page.[8] The Bank has continuously ignored the Trust's inquiries as to the status of the ACH records production, waiting until *after* the Trust filed its Motion to Compel to announce that the ACH records are "ready to be delivered to the Trust."[9] These actions hardly agree with the spirit of cooperation that Wells Fargo claims it has exhibited in responding to the Subpoena.

Furthermore, Wells Fargo waited until the Motion to Compel was filed to assert for the first time, that some of the information contained in the ACH records "*may* fall under protection afforded certain persons pursuant to the Gramm-Leach-Bliley Act [15 U.S.C.A. § 6801-09]"[10] and to ask for a protective order.[11] This request is completely disingenuous considering that the Trust circulated to Wells Fargo a draft of the proposed protective order three months ago, and the Bank refused to consider it.[12] As the Trust was ready to enter in a mutually agreeable protective order three months ago, it will, of course, not oppose such order now.

---

8 *See* Exhibit M.

9 *See* Exhibit H; *see also* Opposition at p. 4.

10 The Gramm-Leach-Bliley Act ("GLBA") requires a financial institution, such as Wells Fargo to provide a notice to the consumer before disclosing any nonpublic personal information to a nonaffiliated third party. 15 U.S.C.A. § 6802 (a). However, the notice requirements of the GLBA do not apply in this case since GLBA permits a financial institution to disclose the nonpublic personal financial information of its customers to comply with a "judicial process," including a discovery request. *See Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492, 496 (S.D.W. Va. 2003); *KnifeSource, LLC v. Wachovia Bank, N.A.*, C.A. No. 6:07-677-HMH, 2007 WL 2326892, at *1 (D.S.C. Aug. 10, 2001); *Northern Trust Co. v. MS Secs., Inc.*, No. 05 C 3370, 2006 WL 1843369, at *5 (N.D. Ill. June 30, 2006); *Choate v. State Farm Lloyds*, No. Civ.A.3:03-CV-2111-M, 2005 WL 1109432, at *3 (N.D. Tex. May 5, 2005); *Her v. Regions Fin. Corp.*, No. 2:07-cv-2017-RTD, 2007 WL 2806558, at *2-3 (W.D. Ark. Sept. 25, 2007).

11 *See* Opposition at p. 4.

12 *See* Exhibit F.

Due to the Bank's dilatory actions, the Trust has been prevented from conducting an important analysis of the propriety of ACH transfers. Given the Bank's unnecessary delay of production and given the importance of the ACH records,[13] the Court should compel Wells Fargo to produce such records on an expedited basis.

### III. The Bank Has Always Had All The Necessary Information to Produce Emails and, In Fact, Has Previously Agreed to Produce Emails for At Least Two Bankers.

Wells Fargo has evaded the production of emails for many months now, each time coming up with a new excuse or objection as to why the emails cannot be produced. In early October, Wells Fargo untimely objected that the request for emails that "are not part of any physical file" imposed an undue burden on the Bank.[14] The Bank since then has abandoned this objection.[15] Then, by late October, the Bank explained to the Trust's counsel that it was able to identify two bankers who opened the accounts for USACM and its related entities, and agreed to produce any responsive communication pertaining to these bankers.[16] The Bank, indeed produced some 100 pages of correspondence in early December, but the production did not include any emails.

Now, for the first time, the Bank asserts a new excuse as to why no emails have been produced, claiming that "it is Wells Fargo's understanding that no email origination or termination information has been provided" to the Bank.[17] What the Bank means by "origination" or "termination" is not clear from the Opposition and has *never before* been mentioned to or

---

[13] *See* Declaration of Clare Pierce (Exhibit "P").

[14] *See* Exhibit E.

[15] Nowhere in the Opposition does Wells Fargo state that the production of emails will impose an undue burden on the Bank.

[16] *See* Exhibit N.

[17] *See* Opposition at p. 12.

explained to the Trust. In fact, Wells Fargo has not provided a single piece of evidence showing it communicated any such request to the Trust.

The fact is that the Subpoena provides the Bank will all the necessary parameters to conduct the search for emails. It defines the period for which the records are to be searched from January 1, 1997 to present.[18] It also describes the nature of emails that have to be searched as any communication between the Entities, Individuals, Debtors and Wells Fargo.[19] Who falls within the terms "Debtors," "Individuals," "Entities," and "Wells Fargo" is specifically defined in the Subpoena.[20] The Trust has further limited the request for communication to include only e-mails related to the USACM accounts already identified by the Bank, which is limited to 21 accounts.[21]

Although the Trust has received only a fraction of account applications and signature cards, and a handful of correspondence, even from these scarce records it is obvious that at least the following Wells Fargo employees were involved with USACM accounts: Rob Bulmer; Eileen Sechrist, Te Manyvong, Constance (Connie) Yeoman, Susan Norton, Pat Kelly, Marc Maietta, Jane Justenson, Rob Bowman, Brittany Smith, and Pilar Schmidt.[22] The Bank has had possession of the documents identifying at least some of these employees since May 2007 when it produced account documents and was aware of all listed employees since at least December 2007 when it produced correspondence. Thus, it could have easily begun the search for these employees' emails a long time ago.

---

[18] *See* Exhibit A at p. 12.

[19] *See id.* at p. 19.

[20] *See id.* at pp. 1-9. See also Exhibit B(significantly reducing the list of "Entities").

[21] *See* Exhibit N.

[22] *See* Exhibit "R" (Documents produced by Wells Fargo that identify employees which dealt with USACM accounts).

In fact, in October 2007, the Bank agreed to produce any internal and external communication regarding bank accounts with respect to two bankers that it identified as primary employees involved in opening most of the USACM accounts.[23] At the time the Bank agreed to produce this communication, it did not mention any need for this cryptic "origination" or "termination" e-mail information referenced in the Opposition.

In addition to the documents produced by the Bank, other correspondence recovered by the Trust from third parties identifies the following Wells Fargo employees as being involved in with USACM accounts: Yvette M. Sutton, Theresa A. Smith, Jana L. Loyd, Jon Erickson, Tim Coker, Eunice B. Ortega, Emilie Pavon, and Theresa A. Smith.[24] The Bank should be compelled to produce emails pertaining to these employees as well as the employees already identified above.

**IV. The Bank's Internal Policies Are Relevant to USACM's Understanding of The Records Produced by The Bank, How The Records Were Preserved, and How They Were Collected.**

In light of the Bank's inability to produce many of the responsive documents, its document retention policy has become highly relevant. First, the Bank has failed to produce some of the basic forms that are ordinarily filled out for each new account opened at Wells Fargo – most of the signature cards and account applications are missing from the production – without explaining why these records are absent from its files, and declaring that it cannot create documents out of "thin air."[25] Second, in response to the request for correspondence involving Wells Fargo employees, the Bank states that it has no internal requirements to maintain a hard copy file of

[23] The bank never provided the Trust the names of these two bankers.

[24] *See* Exhibit "S" (Documents identifying Wells Fargo employees involved with USACM accounts and produced by third parties to the Trust during its investigation).

[25] *See* Opposition at p. 13.

correspondence.[26] There is no evidence in the Opposition supporting such claim. Third, the Bank has stated that its emails are "normally purged from the basic email systems of Wells Fargo after a relatively brief time period."[27] Again, no evidence to support this statement has been cited by Wells Fargo.

Given the Bank's failure to produce many categories of requested documents because they do not exist or have been purged, the Bank's documents retention policy is highly relevant and the Bank must be compelled to produce it.

The Bank's know-your-customer policy is also relevant because it allows the Trust to understand what documents the Bank is required to collect regarding its customer prior to opening an account or doing other business with the customer, and therefore, what documents the Bank has collected in response to the Subpoena. It appears from the documents produced by the Bank that it has collected at least some background information on USACM and its related entities, including USA Investment Partners LLC's Operating Agreement, newspaper articles regarding USA Capital, and various forms filed with the Department of Treasury.

The Bank's only objection to the production of its policies and procedures that deal with the application, opening, acceptance, management and oversight of the accounts at Wells Fargo is that such policies are confidential and proprietary.[28] As specified in the Motion, the Bank's concern about the confidential and proprietary nature of the documents can be addressed by a protective order.[29]

---

[26] *See* Opposition at p. 9.

[27] *See* Oppositon at p. 3.

[28] *See* Opposition at p. 16.

[29] *See* Motion at p. 10, ¶¶ 30 & 31.

The Bank's policies and procedures related to the opening, management and oversight of its accounts is highly relevant to the Trust's understanding of: (1) the nature and purpose of each account opened for USACM; (2) the limits and restrictions on the accounts; (3) what forms the Bank is required to obtain from the customer and in what circumstances, and (3) the capabilities for wire, ACH and online transfers for different accounts. For example, the documents produced by Wells Fargo as well as documents found in third-party productions indicate that USACM and related entities' employees had the capability to participate in a "CEO on-line banking program," receive wire transfer confirmations via e-mail, conduct ACH transfers online by using Wells Fargo software, and engage in "Self Administration and Wire Transfer Implementation."[30] The Trust needs the Bank's policies related to account opening, management and oversight in order to understand *how* these various features of the account management were set up, and how USACM employees were able to use them in order to make online ACH and wire transfers.

Finally, the Trust's request for the Bank's policy on how to report suspicious activity detected in its accounts is not an attempt to "back door" the regulatory restrictions, but is motivated by a very concrete e-mail in which David Fogg described to Joe Milanowski that he had to "sit with the Wells Fargo manager and go over the business purpose of the transfers to ensure that nothing inappropriate way [sic] taking place" in the Mountain Vista and 10-90, Inc. accounts.[31] Because there is a known specific instance of the Bank employees acting in response to a suspicious activity in one of the accounts identified in the Subpoena, Wells Fargo's internal policy addressing such activities is not a "private business affair" of the Bank, as Wells Fargo

---

[30] *See* Exhibit T (Documents evidencing USACM employees' ability to make online ACH and wire transfers).

[31] *See* Exhibit C.

maintains, but is directly related to the Trust's interest in the investigation of the Debtors' accounts. Therefore, Wells Fargo must be compelled to produce such policy.[32]

## V. CONCLUSION

WHEREFORE, the Trust respectfully requests that this Court enter an order compelling Wells Fargo (a) to produce the documents requested by the Trust pursuant to Federal Rule of Bankruptcy Procedure 2004 and (b) to order the Rule 2004 examination regarding the topics listed in the Subpoena and the substantive issues related to the underlying documents within at most 20 days after the production deadline.

Dated: February 19, 2008

**DIAMOND MCCARTHY LLP**

By: */s/ Eric D. Madden*
Allan B. Diamond, TX 05801800 (pro hac vice)
William T. Reid, IV, TX 00788817 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Counsel for USACM Liquidating Trust*

[32] 12 C.F.R. § 21.11(k) cited by the Bank in the Opposition at page 14 addresses only the Suspicious Activity Reports ("SAR") that a bank is required to file with the appropriate federal agency. This regulation imposes no prohibition on the release of the Bank's internal policies describing what an employee must do when it detects a suspicious activity in an account. Such internal policies will in no way disclose whether Wells Fargo actually filed a SAR or its contents.

**CERTIFICATE OF SERCIE**

I hereby certify that Catherine A. Burrow, an employee of Diamond McCarthy LLP, on 19th of February, 2008, served a true and correct copy of the foregoing USACM LIQUIDATING TRUST'S REPLY TO WELLS FARGO'S OPPOSITION TO USACM LIQUIDATING TRUST'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY WELLS FARGO, with attachments, by electronic transmission to Kent F. Larsen at kfl@slwlaw.com.

By: *__/s/ Eric D. Madden__________________*
Allan B. Diamond, TX 05801800 (pro hac vice)
William T. Reid, IV, TX 00788817 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Counsel for USACM Liquidating Trust*