E-filed: February 28, 2008

| | |
|---|---|
| Marc A. Levinson (California Bar No. 57613) | Robert Kinas (Nevada Bar No. 6019) |
| Jeffery D. Hermann (California Bar No. 90445) | Claire Dossier (Nevada Bar No. 10030) |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | SNELL & WILMER LLP |
| 400 Capitol Mall, Suite 3000 | 3883 Howard Hughes Parkway, Suite 1100 |
| Sacramento, California  95814-4497 | Las Vegas, Nevada 89169 |
| Telephone:    (916) 447-9200 | Telephone:    (702) 784-5200 |
| Facsimile:    (916) 329-4900 | Fax:    (702) 784-5252 |
| Email:    malevinson@orrick.com | Email:    rkinas@swlaw.com |
|     jhermann@orrick.com |     cdossier@swlaw.com |
|     sdon@orrick.com | |

*ATTORNEYS FOR USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725 LBR |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
|  | Case No. BK-S-06-10727 LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | Case No. BK-S-06-10728 LBR |
|  | Case No. BK-S-06-10729 LBR |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | Chapter Number:  11 |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | Jointly Administered Under |
|  | Case No. BK-S-06-10725 LBR |
| USA SECURITIES, LLC, | |
|     Debtors | |

Affects:
- ☐   All Debtors
- ☐   USA Commercial Mortgage Company
- ☐   USA Securities, LLC
- ☐   USA Capital Realty Advisors, LLC
- ☒   USA Capital Diversified Trust Deed Fund, LLC
- ☐   USA First Trust Deed Fund, LLC

**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC THIRD QUARTERLY REPORT**

### POST-EFFECTIVE DATE USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC's THIRD REPORT OF ACTION TAKEN AND PROGRESS TOWARDS CONSUMMATION OF CONFIRMED PLAN OF REORGANIZATION

Post-Effective Date USA Capital Diversified Trust Deed Fund, LLC ("Diversified" or "Revested Debtor"), a revested debtor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its counsel noted above, hereby submits this Third Report of Action Taken and Progress Towards Consummation of Confirmed Plan of Reorganization (the "Third Report"), pursuant to the Court's "Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization,' as Modified Herein" [Docket No. 2376] (the "Confirmation

4161906

Order") entered January 8, 2007. *See* Confirmation Order, ¶ 74. The Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan") went effective on March 12, 2007 (the "Effective Date"). This Third Report is for the period from September 12, 2007 through December 14, 2007. This Third Report incorporates the requirements and structure of former Rule 3020(a) of the Court's Local Rules of Bankruptcy Practice, abrogated in May 2006, which were as follows:

**(A)** **A schedule of personal property costing more than $5,000 and any real property acquired, sold or disposed of and the price paid for each:**

| | |
|---|---|
| Personal property costing more than $5,000: | None. |
| Real property acquired, sold or disposed of: | None. |
| Total: | $0.00 |

**(B)** **A schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid:**

Due to the nature of its operations as an investment fund with contracted services through intercompany debtor entities and no employees, Diversified had only a relatively small number of claims filed against it in the Chapter 11 Cases. Such claims included general unsecured claims (many of which were misfiled as creditor claims by holders of equity interests in Diversified) and administrative expense claims related to professional fees accrued during the Chapter 11 Cases.

But on September 17, 2007, Salvatore Reale filed an unsecured proof of claim against Diversified for $4,869,310.57 [Claim No. 148] (the "Reale Proof of Claim"). In addition, Jerry McGimsey and other members of the McGimsey family (the "McGimsey Claimants") have filed a proof of claim for $592,825.45 (the "McGimsey Proof of Claim"). *See* discussion *infra* for further information on the McGimsey Proof of Claim.

On November 2, 2007, Diversified filed an Objection to the Reale Proof of Claim [Docket No. 5249] (the "Reale Objection"), and a Motion to Establish

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

4161906

Disputed Claim Reserve [Docket No. 5250] (the "Reserve Motion").    The Reserve Motion asked the Court to establish a reserve in the amount of zero dollars on account of the Reale and McGimsey Proofs of Claim so that Diversified could make a distribution of cash to its investors.

On November 20, 2007, the McGimsey Claimants filed a Response and Objection to Motion to Establish Disputed Claim Reserve [Docket No. 5381].    In that pleading, the McGimsey Claimants agreed that the Court should establish a reserve in the amount of zero dollars on account of the McGimsey Proof of Claim so that Diversified could make a distribution to its investors.

Reale opposed the Reserve Motion on November 20, 2007.    *See* Reale's Opposition to DTDF's Motion to Establish Disputed Claim Reserve [Docket No. 5386].    Diversified filed a Reply to Salvatore Reale's Opposition to Motion to Establish Disputed Claim Reserve [Docket No. 5412] on November 28, 2007.

On December 5, 2007, the Court entertained oral arguments on the Reale Objection and the Reserve Motion.    The Court granted Diversified's Reserve Motion, and disallowed the Reale Proof of Claim.    *See* December 11, 2007 Order Granting Motion to Establish Disputed Claim Reserve [Docket No. 5466]; *see* December 28, 2007 Order Disallowing Proof of Claim of Salvatore J. Reale [Docket No. 5540].

As a result of its success with both the Reale Objection and the Reserve Motion, Diversified was able to make a distribution of approximately $3 million to its investors on or about December 27, 2007.

**(C)    A schedule of executory contracts entered into:**

Pursuant to the Plan, Diversified entered into agreements, as of March 13, 2007, retaining professionals to provide legal and financial advisory services necessary to conduct Diversified's affairs.    Diversified retained Orrick, Herrington & Sutcliffe LLP as general counsel to provide legal services. Diversified has retained Snell & Wilmer L.L.P as local counsel.    Diversified has

4161906

also retained FTI Consulting to provide accounting and financial-related advisory services. In addition, on a limited basis, Diversified retained Mesirow Financial Interim Management to assist with financial and administrative-related transitional issues, Ray Quinney & Nebeker, P.C. to assist with transitional issues related to the Chapter 11 Cases, and BMC Group, Inc. for ongoing website hosting and related distribution services. Diversified anticipates that other normal course services will be procured on a contractual, as-needed basis since Diversified has no employees.

**(D)**    **A statement listing each postpetition tax (i.e., income, payroll, property, sales), payee, and the amount actually paid:**

| | |
|---|---|
| Federal Unemployment taxes: | None. |
| Federal Payroll taxes: | None. |
| Nevada Unemployment taxes: | None. |
| Total: | $0.00 |

**(E)**    **Progress toward completion of the Plan and a list and status of any pending adversary proceedings or motions and resolutions expected:**

The major terms of the Plan with respect to Diversified have all been accomplished. The Operating Agreement of Diversified has been amended, USA Capital First Trust Deed Fund, LLC has made certain payments and assignments to Diversified, and Diversified is operating in the post-confirmation realm.

On November 20, 2007, Chairman of the Board Robert Worthen issued a letter (the "November Letter") updating investors on the Company's progress. A copy of the November Letter is attached hereto as Exhibit A. The November Letter details the actions taken by the Company to recover assets (the "Collection Actions"). The Collection Actions include activity on the: (1) 10-90, Inc. loan; (2) claims against Joseph Milanowski and Thomas Hantges, each chapter 11 debtors; (3) Ashby real estate projects; (4) Colt Gateway LLC loans; (5) BySynergy obligation; (6) Tree Moss Partners/EPIC loan, i.e. the Marquis Villas

loan; (7) USA Investors VI loan, i.e. the Hotel Zoso loan; (8) HMA Sales, LLC litigation related to the sale of the Royal Hotel, and (9) the Company's claims against USA Commercial Mortgage.

On September 24, 2007, Diversified filed an adversary proceeding [Bankruptcy Case No. BK-S-07-01165-LBR, Docket No. 4864] (the "McGimsey Adversary") requesting subordination of the proof of claim filed by the McGimsey Claimants pursuant to 11 U.S.C. § 510(b). The McGimsey Claimants had appealed the Court's February 14, 2007 order disallowing their claims [Docket No. 2765] to the Ninth Circuit Court of Appeals Bankruptcy Appellate Panel (the "BAP"). The BAP reversed the Court's disallowance of the McGimsey Claimants' claims on August 15, 2007 [Docket No. 4726]. The McGimsey Adversary will determine whether the McGimsey Claimants' proof of claim must be subordinated. On December 14, 2007, the McGimsey Claimants and Diversified appeared before the Court for a scheduling conference. Both parties waived discovery plan requirements. Although the McGimsey Adversary is set for trial on May 8, 2007, it will likely be resolved by summary judgment motion practice prior to that time.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4161906

- 5 -

**(F)    A statement regarding the status of payment of UST quarterly fees:**

All UST fees have been paid in full through December 14, 2007, the final date covered by this Third Report.

Dated this ___25th___ day of February, 2008.

SNELL & WILMER L.L.P.

By: _____
Robert R. Kinas (Nevada Bar No.6019)
Claire Y. Dossier (Nevada Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169

and

ORRICK, HERRINGTON & SUTCLUFFE LLP
Marc A. Levinson
Jeffery D. Hermann
400 Capitol Mall, Suite 3000
Sacramento, California  95814-4497

*Attorneys for USA CAPITAL DIVERSIFIED TRUST
DEED FUND, LLC*

4161906

- 6 -

# EXHIBIT A

# EXHIBIT A

# USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC
## Robert G. Worthen, Chairman of the Board

November 20, 2007

Dear USA Capital Diversified Trust Deed Fund, LLC Investor:

I again write on behalf of the Board of Directors of USA Capital Diversified Trust Deed Fund, LLC ("DTDF") to update you about DTDF's efforts to collect assets and to make a distribution to investors. As described in more detail below, we continue to focus on recovering assets, with the goal of being able to make an initial distribution as soon as possible. As explained below, though, we are unable to predict when the first distribution will be made or the amount thereof.

## DTDF Management.

As discussed in my May 10th and August 20th letters to investors, DTDF emerged from chapter 11 on March 12, 2007. As of that date, Tom Allison's role for DTDF ceased, and Michael Tucker of FTI Consulting became DTDF's new manager. He answers to the Board of Directors, which is comprised of five DTDF investors: myself, as Chairman of the Board, Robert Hardy, Charles Nichols, Bob Fitzner and Richard Kreps. DTDF has retained the former committee counsel, Orrick, Herrington & Sutcliffe LLP and the Committee's financial advisor, FTI Consulting, but recently switched Nevada counsel to Snell & Wilmer LLP, due to conflicts created by the merger of our former Nevada counsel with another law firm. Our primary contacts at Snell & Wilmer are Rob Kinas and Claire Dossier.

## Delay In The First Distribution To DTDF Members.

DTDF has collected over $9 million since March 13th, but it also has incurred and paid substantial professional fees (including a significant amount generated but not paid during the chapter 11 cases). We intended to make a distribution to investors and were in the process of preparing to make an initial $3 million distribution to investors by year end, but in mid-September, an individual filed a proof of claim asserting a creditor claim in excess of $4.9 million. Under the terms of the confirmed plan, DTDF can make no distribution to equity investors unless creditor claims have been paid or funds have been reserved to pay contested creditor claims. As described below, DTDF hotly contests the claim, and has filed an objection to it. DTDF also has filed a motion seeking bankruptcy court approval to make a $3 million distribution to investors while reserving little or nothing for the new claim. Both motions will be heard by Judge Riegle on December 5th. The Board set the proposed distribution at $3 million because there still is much litigation and other recovery efforts in store for us, and DTDF must maintain significant reserves in order to fund its recovery efforts.

## Communications With DTDF Members.

We will send you another letter within the next three months. As it is very expensive to communicate with our professionals, who bill hourly fees, I am pleased to receive your phone

Diversified Trust Deed Fund Investors
November 20, 2007
Page 2

calls and answer questions about our status to the best of my ability. My personal cell phone
number is (702) 239-4222. Also, you may send us inquiries at diversifiedfund@orrick.com. For
address changes, please send a written request with your legal vesting name and account number
to DTDF at the following address:

> USA Capital Diversified Trust Deed Fund
> C/O FTI Consulting, Inc.
> Two North Central Avenue
> Suite 1200
> Phoenix, Arizona 85004

## Accessing The DTDF Website

The website provides a convenient way to track the progress in this case. There, you can view an
updated court docket, with links to recent pleadings and informative updates. Every letter to
DTDF investors, including this one, is posted on the website. I urge you to visit our website on a
regular basis. Here are two ways to access the DTDF Website:

- TYPING: Type http://usacapdtdf.bmcgroup.com/default.aspx into the browser screen at
  the top of your monitor.

- GOOGLE: If you type "USA Capital Diversified Information" in Google, the first
  resulting link should be the DTDF Website. Simply click on the link, and you will be at
  the DTDF Website.

## Salvatore Reale Claim And The DTDF Motion To Set A Reserve At Zero

On September 17, 2007, almost a year after the proof of claim bar date, Salvatore Reale filed a
proof of claim in the Diversified case for over $4.9 million. The claim is for "money loaned,"
purportedly having its origin in a September 2003 transaction whereby DTDF purchased a
secured loan from him. Earlier this month, DTDF filed an objection to the proof of claim on the
basis that it was untimely and baseless. In the objection, DTDF argued that Mr. Reale could not
meet the "excusable neglect" standard for filing the claim 10 months past the bar date. We also
argued that DTDF had fully performed under the 2003 loan purchase agreement with Mr. Reale.

Also earlier this month, DTDF filed a motion seeking to establish a zero or nominal reserve for
Mr. Reale's new claim and for the disputed claims filed by the McGimsey family. The plan of
reorganization contains a procedure for reserving funds for disputed claims prior to making a
distribution under which the bankruptcy court estimates the payable amount of the disputed
claim and sets a cash reserve to protect that claim. In its motion, DTDF argues that because the
disputed claims have no basis in fact or law or even token value, the bankruptcy court should
determine that no reserve is required. As noted above, the hearing on such motion will be
conducted on December 5th. We will describe the results of the hearing in a posting on our
website.

Diversified Trust Deed Fund Investors
November 20, 2007
Page 3

## Actions To Collect Assets And The Non-Performing DTDF Loans.

In both previous letters, we reported to you on the proactive steps DTDF has taken in order to recover assets. In the following pages, we have updated the descriptions provided in the August 20th letter. As has been the case since the Effective Date, the status of many of these changes daily.

- Loans serviced by Compass
- 10-90, Inc. loan – owed by Investment Partners, a chapter 11 debtor
- Claims against Joe Milanowski and Tom Hantges, each a chapter 11 debtor
- Ashby real estate projects
- Colt Gateway LLC loans – The former Colt Armory located in Hartford, Connecticut
- BySynergy obligation – The subject property located in Sedona, Arizona
- Tree Moss Partners/EPIC Loan – The Marquis Villas in Palm Springs
- USA Investors VI – The Hotel Zoso in Palm Springs
- HMA litigation – Related to the sale of the Royal Hotel in Las Vegas
- Claims against USA Commercial Mortgage ("USACM")

## Information We Are Unable To Provide To DTDF Members.

DTDF will provide you with information regarding your personal investments. Please contact us through the website using the email address given in the previous sections of this letter. However, we are unable to provide you with individualized legal or financial advice because the DTDF professionals represent the company, not members individually. Said another way, the Board and the DTDF professionals are looking out for the interests of DTDF and its members as a whole, and if you need personal legal or financial advice, you ought to retain your own attorney or financial advisor. Also, remember that while we want to provide meaningful information to DTDF members, details about litigation and settlement strategies are both confidential and privileged.

## Conclusion.

We continue to ask for your patience, and want to assure you that the Board and the DTDF professionals are giving our best efforts to obtain the best recovery for you.

Best Regards,
Robert G. Worthen
Chairman of the Board

Attachment to Letter of November 20, 2007
Page 1

Introduction.

Because our May 10th letter was the Board's first communication to DTDF investors, we went into great detail about each of DTDF's significant loans and claims. Thus, the attachment was five and a half pages of single-spaced text, all of it substantive. We updated that information in the August 20th letter, and do so again in this attachment. The information provided below assumes that you have read the previous letters, but that you recall only the key details. After reviewing the following, you may want to re-read portions of the earlier letters.

- Loans Serviced By Compass.

Compass is the servicer of nine DTDF loans. As of November 30th, the total outstanding amount due to DTDF for the nine loans will approximate $6.5 million. Unfortunately, $3.5 million of the $6.5 million relates to the troubled Amesbury/Hatters Point loan. Despite numerous requests of Compass, DTDF has received limited information on the status of our loans. However, per a November 6th court order in the USACM case, on November 15th, Compass filed a detailed line-item accounting as of October 2, 2007 of the following information with respect to all loans serviced by Compass:

- ○ The loan account status as of February 16, 2007
- ○ All payments received by Compass (whether from the borrower or through foreclosure sales or other dispositions of collateral)
- ○ All Compass fees, on an itemized basis, purportedly owed as of October 2
- ○ All Compass fees deducted from a payment received by Compass or otherwise paid to Compass by a borrower
- ○ All disbursements made by Compass
- ○ All written requests by Compass to a borrower for payment on a loan
- ○ All written loan payoff proposals received by Compass from a borrower

DTDF will have a better understanding of the status of the Compass-serviced loans after analyzing the above information. Compass and the Lender Protection Group have various disputes between each other, primarily with respect to the servicing rights of the direct lender loans. Diversified is not directly involved in those disputes and has not been impacted by them.

- Investment Partners, Its Chapter 11 Case And Trustee. Investment Partners was a vehicle controlled by Hantges and Milanowski. Under the guise of a loan to 10-90, Inc., DTDF transferred in excess of $55 million of investor funds to 10-90, Inc./Investment Partners to enable Hantges and Milanowski to engage in speculative real estate activities ("10-90 Loan"). With interest, the amount owing on the 10-90 Loan exceeds $100 million. At its initial meeting conducted on March 14th (two days after the Effective Date), the Board voted to join with other creditors of Investment Partners in the filing of an involuntary chapter 11 petition against that entity. After we obtained an order allowing the involuntary filing from a federal judge presiding over a friendly receivership

Attachment to Letter of November 20, 2007
Page 2

in California engineered by Milanowski to avoid a bankruptcy filing against Investment
Partners, the involuntary case was filed in Nevada in early April 2007. Lisa Poulin of
Corporate Revitalization Partners was selected by the office of the U.S. Trustee to serve
as the interim Trustee of Investment Partners. Thereafter, Judge Riegle entered an order
for relief, concluding that the bankruptcy was proper. The order appointed Ms. Poulin as
the permanent trustee. Last week, the appeal from such order taken by Milanowski and
Hantges was dismissed by the appellate court. Ms. Poulin has taken control of the assets
of Investment Partners, and, along with her counsel, Gordon & Silver, has been working
to identify, understand and liquidate Investment Partners' assets for the benefit of
creditors (of which DTDF is the largest). Both the amount of DTDF's recovery from the
Investment Partners case and the timing of any payment to Diversified are unknown at
this time, as Ms. Poulin and her team continue to work to unravel the web of deceit spun
by Hantges and Milanowski.

•       Hantges And Milanowski Personal Bankruptcy Cases. DTDF and the
USACM Trust orchestrated the filing of involuntary bankruptcy cases against Hantges
and Milanowski in late May and the immediate appointment of interim trustees in early
June. Michael Carmel is now the permanent (versus interim) trustee in the Hantges case,
and Ford Elsaesser is the permanent trustee in the Milanowski case. Largely because
both Milanowski and Hantges personally guarantied the 10-90 Loan, DTDF is by far the
largest creditor of the two estates. The two trustees and their counsel continue to
investigate the activities and assets of Messrs. Milanowski and Hantges, with recent
activities being focused on family trusts established by both of them, and, more
specifically, whether the trust assets should in fact be deemed assets of the bankruptcy
cases. The cost to the two bankruptcy cases continues to be high, and the efforts of the
trustees continue to be hampered by the fact that both Milanowski and Hantges regularly
invoke their Constitutional rights against self-incrimination and refuse to answer even
requests for basic information.

•       Ashby Real Estate Projects, Including Roripaugh Ranch. The 10-90 Loan
is secured by the assignment of membership interests in Ashby USA, LLC, Capital Land
Investors, LLC and Random Developments, LLC. Investment Partners is the 50% owner
of such entities, and as the trustee of Investment Partners, Ms. Poulin has taken an active
role, along with DTDF's professionals, in attempting to create value for the equity
interests and for creditors such as DTDF. In May, she and her professionals, along with
DTDF professionals, met with Ashby representatives in Las Vegas in an attempt to learn
more about the Ashby properties and how to achieve maximum value from them. Since
then, there have been numerous subsequent meetings, as well as the exchange of data and
information. The next meeting is scheduled for November 29th in Los Angeles.
Obtaining recoveries on the Ashby-related real estate assets has become more
challenging in light of the current subprime lending crisis that has threatened developers
nationwide. Sadly, the Ashby entities are not immune, and lenders to the Ashby projects,
(including Compass, as servicer of direct lender loans on the Oak Valley and Stoneridge
projects), have commenced foreclosure actions against Stoneridge and Oak Valley.
DTDF, Investment Partners and Ashby professionals are actively participating in the
negotiation process in an effort to preserve values and achieve recoveries.

Attachment to Letter of November 20, 2007
Page 3

• **Colt Loans.** The DTDF/Colt relationship is very complex, in that DTDF is one of three direct lenders that are the beneficiaries of a promissory note secured by a first trust deed on certain parcels and buildings comprising a portion of the overall Colt project. DTDF's share of the "Colt 1st loan" principal balance is approximately $2.5 million. DTDF also made three additional advances to Colt, but these three loans are "undocumented," meaning that promissory notes and related security documentation was not formally signed by the parties involved. In our last letter, we told you that DTDF had met on several occasions with Colt Gateway in Hartford, Connecticut, in an attempt to negotiate a resolution and payment terms of Colt's obligations, but that the resultant Colt proposals were wholly unacceptable. As a result, DTDF and the two other beneficiaries of the first deed of trust retained Connecticut counsel, which served a judicial foreclosure complaint on Colt in late October. Colt has responded by seeking a new loan on the project and by making a settlement proposal through the possible new lender. DTDF is discussing the proposal with the two other beneficiaries and with the counsel representing all three. In addition, DTDF has engaged its own counsel with respect to the so-called undocumented loans.

• **The BySynergy Obligation.** DTDF has conducted a second examination under oath of the principal of BySynergy concerning the $4.4 million unsecured loan to BySynergy, 87% owned by DTDF and 13% owned by the USACM Trust. This second deposition resulted in BySynergy asserting new and additional reasons why it feels that it has defenses to payment of the DTDF/USACM Trust loan (as to which we have requested that BySynergy produce additional documents). In addition, the recent softening of the overall real estate market places into question whether BySynergy will have any equity in the subject project (currently undeveloped land in Sedona, Arizona that eventually will be sold as 105 single-family-residential lots) with which to pay the DTDF/USACM Trust loan. The project is currently pledged for a first deed of trust loan to an unrelated bank lender. Litigation may well ensue, but the financial viability of the project may ultimately determine whether such litigation is worthwhile.

• **Tree Moss Partners, LLC And The Marquis Villas.** Lisa Poulin has been appointed the trustee of Tree Moss in its chapter 11 case. DTDF has a claim in excess of $20 million against Tree Moss arising out of the Epic Resorts loan made by DTDF and the February 2006 transfer to Tree Moss of the 63 Marquis Villas condominiums in Palm Springs, California formerly owned by DTDF. Ms. Poulin has been marketing the Tree Moss property, and on October 15th, the bankruptcy court approved her motion to sell the 63 Marquis Villas condominium units to APHM Marquis, LLC, a Delaware limited liability company for $10,829,625.00. No higher or better offers were made at the hearing. Sunterra Corporation, the owner of the remaining 38 condominium units at the Marquis Villas, raised certain objections to the sale on the terms proposed by the Trustee. Although many of those objections were resolved, the trustee was notified only recently that the purchaser did not intend to complete the purchase, even though the purchaser's earnest money deposit of $750,000 would be forfeited to Tree Moss. Ms. Poulin has filed a stipulation (approved by the purchaser) for the release out of escrow of those monies. DTDF had advanced monies to Tree Moss to cover the costs of operations of the

Attachment to Letter of November 20, 2007
Page 4

condominiums pending sale, and the additional $750,000 should allow such operations to be funded pending a resale or remarketing and resale of the property. The trustee is discussing the sale of the property to another potential purchaser for essentially the same price as the initial buyer had agreed to pay.

•       USA Investors VI ("Investors VI"). Lisa Poulin also has been appointed trustee of Investors VI, and has been marketing for sale the Hotel Zoso, which is located in Palm Springs across the street from the Marquis Villas condominiums. DTDF has a large unsecured claim against Investors VI on account of Milanowski/Hantges shenanigans relating to the sale of the former Sheraton Hotel located at the Salt Lake City airport. On October 15th, the bankruptcy court approved the trustee's motion to sell the Hotel Zoso to APHM Zoso, LLC, a Delaware limited liability company for $25,117,500. No higher or better offers were made at the hearing. The sale closed on Friday, November 16, 2007, notwithstanding the purchaser's decision not to close the sale of the 63 Tree Moss condominiums. The Hotel Zoso is encumbered by a direct lender loan serviced by the USACM Trust. The balance on that loan is in excess of $20 million. An additional $3 million in default interest is owing, but the trustee will seek to avoid or reduce the amount of default interest in order to enhance the proceeds available to the estate. Investors VI is proposing a plan of liquidation that, if confirmed in a timely manner, should result in the distribution of the sales proceeds of the Hotel Zoso, net of the direct lender loan, sales expenses and administrative claims in the Investors VI case, to DTDF and other creditors in the late spring or early summer of 2008.

•       Settlement Of The HMA Adversary Relating To The Royal Hotel. The prior letters recount the extensive litigation with respect to this matter, and should be consulted for any desired details. As a result of prior settlements with Reale and the Great White defendants, DTDF has received almost $9 million, and should receive additional but more modest amounts in the future, as further monies are collected. DTDF continues to work with Ms. Poulin and her counsel to determine whether Allen Abolafia, one of the owners of HMA who received in excess of $1 million of the Royal Hotel sales proceeds, should be pursued, and the best means of realizing maximum value for the timeshare loans owed to HMA.

•       Disputes Concerning DTDF's Claims Against USACM. DTDF asserts a claim in excess of $100 million against USACM. In addition, the parties assert other claims against one another. The various disputed claims are very complex. A year ago, Judge Riegle suggested that the two mediate their disputes, but the December 2006 mediation session (conducted by a bankruptcy judge from Seattle) proved fruitless. Thereafter, rather than fight one another about the claims, the two former debtors cooperated in the filing and prosecution of the involuntary bankruptcy cases of Investment Partners, Milanowski and Hantges in an attempt to increase the pool of assets available for both estates. Earlier this month, the parties met for the better part of a day in an attempt to work out their differences. The meeting did not produce an agreement, but both sides agree that progress was made. DTDF anticipates further discussions prior to the end of the year.