**LEWIS and ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile: (702) 949-8321
Telephone: (702) 949-8320

Susan Freeman AZ State Bar No. 004199
E-mail: **SFreeman@LRLaw.com**
Rob Charles, NV State Bar No. 006593
E-mail: **RCharles@LRLaw.com**

**FOLEY & LARDNER LLP**
Attorneys at Law
321 North Clark Street
Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Edward J. Green III Bar No. 6225069 (Pro Hac Vice)
Geoffrey S. Goodman III Bar No. 6272297 (Pro Hac Vice)

Attorneys for USACM Liquidating Trust

E-filed on
March 4, 2008

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **In re:** <br><br> **USA Commercial Mortgage Company** <br> 06-10725 – Lead Case <br><br> **USA Capital Realty Advisors, LLC** <br> 06-10726 <br><br> **USA Capital Diversified Trust Deed Fund, LLC** <br> 06-10727 <br><br> **USA Capital First Trust Deed Fund, LLC** <br> 06-10728 <br><br> **USA Securities, LLC** <br> 06-10729 <br><br> **Debtors.** | Jointly Administered <br><br> Chapter 11 Cases <br><br> Judge Linda B. Riegle Presiding <br><br> **SUPPLEMENTAL OBJECTION OF THE USACM LIQUIDATING TRUST TO CLAIM NO. 791 OF THE PENSION BENEFIT GUARANTY CORPORATION** <br><br> Affecting: <br> ☐ All Cases <br> Or Only: <br> ☒ USA Commercial Mortgage Company <br> ☐ USA Capital Realty Advisors, LLC <br> ☐ USA Capital Diversified Trust Fund Deed, LLC <br> ☐ USA Capital First Trust Fund Deed, LLC <br> ☐ USA Securities, LLC <br><br> Hearing Date: April 17, 2008 <br> Time: 9:30 a.m. |

The USACM Liquidating Trust (the "Liquidating Trust"), by and through its counsel and pursuant to § 502 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq</u>. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007 of the Local Rules of Bankruptcy Procedure, hereby files its supplemental objection (the "Objection") to amended claim No. 791 of the Pension Benefit Guaranty

Corporation (the "PBGC") filed against USA Commercial Mortgage Company ("USACM"). In support of its Objection, the Liquidating Trust states as follows.

## JURISDICTION

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. The statutory predicate for the relief requested herein is § 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A.   The Chapter 11 Cases and the Plan**

3. On April 13, 2006, USACM and four related entities identified in the caption above (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases were jointly administered by an order of this Court.

4. On January 8, 2007, this Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). The Plan became effective on March 12, 2007.

5. On the Effective Date, the Liquidating Trust was created pursuant to the terms of the Plan and the Confirmation Order. Under the Plan, the Liquidating Trust is the successor to USACM with respect to standing to seek allowance and disallowance of claims.

**B.   The Pension Plan**

6. USACM adopted the USA Commercial Mortgage Company Defined Benefit Pension Plan ("Pension Plan") effective as of January 1, 1998. All new benefit accruals under the Pension Plan were discontinued and accrued benefits frozen effective as of September 30, 2006.

7. On January 15, 2007, the Pension Plan was involuntarily terminated by the PBGC. On January 26, 2007, the PBGC became the statutory trustee of the Pension Plan

pursuant to an agreement between the PBGC and USACM.

8.     USACM was the "contributing sponsor" of the Pension Plan as defined in 29 U.S.C. § 1301(a)(14).  Debtors USA Investment Partners, LLC, USA Capital Realty Advisers, LLC and other Debtors are also alleged by the PBGC to be a member of the "controlled group" for the Pension Plan and are jointly and severally liable for any obligations to the Pension Plan.  See 29 U.S.C. §§ 1301(a)(14), (e)(2).

**C.     The PBGC Claims**

9.     On November 9, 2006, the PBGC filed Claim Nos. 791, 793 and 794 against USACM's estate (collectively, the "Original Claims").  On March 2, 2007, USACM filed an objection to the Original Claims.

10.    On April 23, 2007, the PBGC filed amended Claim No. 791 in an estimated amount of $120,870, consisting of an administrative claim in the amount of $112,572 and an unsecured claim in the amount of $8,298.  Other than $72 in other charges, the administrative claim portion of Claim No. 791 consists entirely of a penalty charged by the PBGC pursuant to 29 U.S.C. § 1306(a)(7) upon termination of the Pension Plan in January 2007 (the "Termination Premium Claim").

11.    On April 23, 2007, the PBGC also filed amended Claim No. 793, an administrative claim in an estimated amount of $1,211,242.

12.    On April 25, 2007, the PBGC filed amended Claim No. 794, an unsecured, non-priority claim in an estimated amount of $1,700,624.  Amended Claim No. 794 also reserved the right to seek administrative or priority tax treatment for the claim.

**D.     The Settlement Of All Issues Except The Termination Premium Claim**

13.    On September 6, 2007, the Liquidating Trust filed an objection (the "Original Objection") to amended Claim Nos. 791, 793 and 794 of the PBGC.  On October 31, 2007, the PBGC filed a response to the Original Objection.  On November 21, 2007, the Liquidating Trust filed a reply in support of the Original Objection.

14.    After extensive negotiations between the Liquidating Trust and the PBGC, the Liquidating Trust and the PBGC reached a settlement of all issues on the PBGC's

claims other than the Termination Premium Claim.[1]  Pursuant to agreement of the Liquidating Trust and the PBGC, the Termination Premium Claim is the sole subject of this supplemental objection.

## OBJECTIONS TO THE TERMINATION PREMIUM CLAIM

15.  The Termination Premium Claim is not entitled to administrative expense priority for three reasons.  <u>First</u>, the Termination Premium Claim should be disallowed pursuant to the plain language of 29 U.S.C. § 1306(a)(7).  The PBGC may charge a termination premium under § 1306(a)(7) only when a debtor is "discharged" or its claim is "dismissed," neither of which has occurred in this case.

16.  <u>Second</u>, the Termination Premium Claim is not entitled to administrative expense priority as a "tax" under § 503(b)(1)(B) of the Bankruptcy Code.  Any liability for termination premiums under § 1306(a)(7) is in the nature of a "penalty," as opposed to a "tax."

17.  <u>Third</u>, the Termination Premium Claim is not entitled to administrative expense priority under § 503(b)(1)(A) of the Bankruptcy Code.  Benefit accruals under the Pension Plan were frozen months prior to its termination and the termination had no impact whatsoever on the Debtors' employees continuing service to the estate.  Contrary to the assertions of the PBGC, USACM's estate received no benefit from the PBGC's imposition of a statutory termination premium.

---

[1] The Liquidating Trust expects to submit a Stipulation and Agreed Order effectuating its settlement with the PBGC in the near future.

**I.    The Termination Premium Claim Should Be Disallowed Pursuant To The Plain Language Of 29 U.S.C. § 1306(a)(7)**

18.    The PBGC is not entitled to an administrative claim pursuant to the plain language of 29 U.S.C. § 1306(a)(7).  See United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989) (holding that the plain meaning of a statute is conclusive, except in the rare cases in which the literal application of a statute will produce a result "demonstrably at odds with the intentions of its drafters").  Section 1306(a)(7) provides:

> (A) In general [i]f there is a termination of a single-employer plan under . . . section 1342 [involuntary termination] of this title, there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date.  Such premium shall be in addition to any other premium under this section.
>
> (B) Special rule for plans terminated in bankruptcy reorganization[.]  In the case of a single-employer plan terminated under . . . section 1342 [involuntary termination] of this title during pendency of any bankruptcy reorganization proceeding under chapter 11 of Title 11 . . . subparagraph (A) shall not apply to such plan until the date of the discharge or dismissal of such person in such case.

19.    As stated above, Section 1306(a)(7)(B) provides that no termination premiums are due until a debtor is <u>discharged</u> or its case is <u>dismissed</u>.  Because the Plan was a liquidating plan of reorganization, USACM did not receive a discharge.  *See* Plan Section IV.H (entitled "Non-discharge of Debtors and Injunction" and stating in part that "Pursuant to Section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors"); *see also* 11 U.S.C. § 1141(d)(3)(A) ("The confirmation of a plan does not discharge a debtor if— (A) the plan provides for the liquidation of all or substantially all of the property of the estate").  In addition, the Court may take judicial notice that USACM's case has not been dismissed.

20. The PBGC argues that § 1306(a)(7)(B) only applies to "bankruptcy reorganization," which it submits means a traditional reorganization plan. The PBGC has failed to cite any authority for this position. Moreover, the Plan was deemed a "plan of reorganization," even though such reorganization included a liquidation of USACM's assets. USACM thus was unambiguously a party to a "bankruptcy reorganization" approved by this Court.

21. The PBGC failed to object to the characterization of the Plan as a reorganization at the time of hearing on confirmation of the Plan. If the PBGC wanted to object to the characterization of the Plan as a plan of reorganization—for § 1306(a)(7) purposes or otherwise—the time to do so was prior to confirmation. It cannot do so now as part of a response to a claim objection. Accordingly, § 1306(a)(7)(B) governs in this case and precludes the PBGC from asserting an administrative or other claim for termination premiums.

## II. The Termination Premium Claim Is Not Entitled To Administrative Expense Priority As A "Tax"

22. The Termination Premium Claim is not entitled to administrative expense priority as a "tax" under § 503(b)(1)(A) of the Bankruptcy Code. Liability for termination premiums is in the nature of a "penalty," as opposed to a "tax." A penalty is "an exaction imposed by statute as punishment for an unlawful act," while a tax is "an enforced contribution to provide for the support of government." *Reorganized CF & I Fabricators, Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (citation omitted); *see also In re Bayly Corp.*, No. Civ. A. 95 N 901, 1997 WL 33484011, at **2-4 (D. Colo. Feb. 12, 1997) (citations omitted).

23. *Reorganized CF & I Fabricators* involved a debtor's required payment to the Internal Revenue Service of an alleged "tax" equal to ten percent of the amount of certain required contributions that the debtor had failed to make to its pension plan. *See Reorganized CF & I Fabricators*, 518 U.S. at 215. Specifically, the issue for the Court

was whether the payment was in the nature of a tax (entitled to priority) or a penalty (relegated to general unsecured creditor status). *See id*. Even though specifically labeled as a "tax" in the Internal Revenue Code, the Court held the ten-percent payment was a penalty and thus not entitled to priority. *See id*. at 225. In doing so, the Court noted the obvious punitive nature of the statutory scheme and its deterrent purpose. *See id*.

24.     In *Bayly*, the court held that a debtor's liability to the PBGC for the amount of the unfunded benefit liabilities in its pension plan was not a "tax." The creation by statute of a liability to the PBGC was not intended to support and provide income for the government. *Bayly*, 1997 WL 33484011, at *4. Rather, the unfunded benefit liability was a deterrent to failed pension plan sponsors by forcing them to reimburse the PBGC for money it expended on debtors' behalf. *See id*.

25.     *Reorganized CF & I Fabricators* and *Bayly* are squarely on point here. In both cases a government agency sought to collect a liability tied to the failure of a debtor to properly fund a pension plan. The Termination Premium Claim is an identical type of claim. Just like the statutes at issue in *Reorganized CF & I Fabricators* and *Bayly*, § 1306(a)(7) is an obvious punitive statute which acts to discourage debtors and other parties from terminating their pension plans. The termination premiums in § 1306(a)(7) therefore are akin to a penalty, precluding the PBGC from alleging that Claim No. 791 is a tax entitled to administrative expense priority under § 503(b)(1)(B) of the Bankruptcy Code.[2]

---

[2] Because the Termination Premium Claim is not a "tax," it also is not entitled to treatment as a priority tax claim under § 507(a)(8) of the Bankruptcy Code. In addition, the Termination Premium Claim cannot be a priority tax claim because USACM's alleged liabilities to the PBGC for that claim are not expressly enumerated as a priority tax in § 507(a)(8). *See In re Chateaugay Corp.*, 115 B.R. 760, 779-80 (Bankr. S.D.N.Y. 1990), *aff'd*, 130 B.R. 690 (S.D.N.Y. 1991), *vacated by consent of the parties*, 17 Employee Benefits Cas. (BNA) 1102, 1993 WL 388809 (S.D.N.Y. 1993); *In re Kent Plastics Corp.*, 183 B.R. 841, 847 (Bankr. S.D. Ind. 1995). The Liquidating Trust reserves its right to assert additional objections to any § 507(a)(8) or other priority arguments raised by the PBGC in its reply brief in support of this supplemental objection.

### III. The Termination Premium Claim Did Not Arise From Post-petition Labor Or Provide Any Benefit To USACM's Estate

26. The Termination Premium Claim also is not entitled to administrative expense priority under § 503(b)(1)(A) of the Bankruptcy Code because it is impossible to characterize such statutory termination premiums as post-petition and pre-confirmation expenses incurred for the benefit of USACM's estate. It is well-established that the PBGC's claims are treated as administrative claims only to the extent of the portion of missed contributions representing the cost of benefit accruals attributable to post-petition labor. *See, e.g.*, *In re Sunarhauserman*, 126 F.3d 811, 817 (6th Cir. 1997) (affirming disallowance of PBGC's administrative claim for all amounts except liabilities arising post-petition because "it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition"); *Kent Plastics*, 183 B.R. at 847 (denying PBGC's claim for administrative expense priority where the pension plan had been frozen for six years prior to bankruptcy filing); *Chateaugay*, 115 B.R. at 778 (finding after extensive discussion of purposes of administrative priority that "the post-petition termination of the pension plans did not give rise to post-petition claims. Nor are the PBGC claims, except for a small portion attributable to post-petition services of LTV Steel's employees, entitled to administrative priority pursuant to § 503(b)(1)(A).").

27. Like the situation in *Kent Plastics*, the Pension Plan was frozen long before the plan was terminated. Maintenance of the Pension Plan therefore provided no benefit to USACM's estate. Moreover, USACM's estate received no benefit from the PBGC's imposition of a statutory termination premium and such premium had no nexus to post-petition service of USACM's employees. The Termination Premium Claim therefore is not entitled to administrative expense priority.[3]

---

[3] In addition, the mere fact that termination liability under § 1306(a)(7) first became payable post-petition in this case does not mean the estate was benefited post-petition. Under analogous circumstances, courts have denied administrative expense priority to claims, even though such claims first become payable post-petition. *See In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) (denying administrative expense priority to attorney's claim for fees where

28. Further, any attempt by the PBGC to argue that *Sunarhauserman* and its progeny do not apply to plan termination premiums would be unavailing. Because Congress does not write bankruptcy laws "on a clean slate," this Court must assume that Congress was aware of the well established law on the PBGC's (lack of) entitlement to an administrative claim when it enacted § 1306(a)(7). *See Dewnsup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'"). However, despite the explicit reference to chapter 11 cases in § 1306(a)(7), Congress failed to provide in the statute that the PBGC was entitled to an administrative claim for any termination premiums. This Court should not effect such a major change in the Bankruptcy Code priority scheme for PBGC liabilities absent a significant discussion of that change in the legislative history. *See id.* ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.").

29. Accordingly, the Termination Premium Claim is not entitled to administrative expense priority.

## CONCLUSION

For the reasons stated herein, the Liquidating Trust respectfully requests that this Court enter an order pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, (a) disallowing the Termination Premium Claim or reclassifying such claim as an unsecured, non-priority claim, and (b) granting such other and further relief as the Court deems just and proper.

---

liability for the fees arose post-petition, but the contract on which entitlement to attorneys' fees was based was executed pre-petition); *In re Palau Corp.*, 18 F.3d 746, 750-51 (9th Cir. 1994) (refusing administrative expense priority to employees who obtained a post-petition court award for back wages where work was performed for debtor pre-petition); *In re Bayly Corp.*, 163 F.3d at 1208-09 (claim not entitled to priority status "simply because the right to payment arises after the debtor in possession has begun managing the estate") (citing *In re Amarex, Inc.*), 853 F.2d 1526, 1530 (10th Cir. 1988).

RESPECTFULLY SUBMITTED March 4, 2008.

**LEWIS and ROCA LLP**

By: /s/ RC (#006593)
    Susan M. Freeman
    Rob Charles

And

Edward J. Green (No. 6225069)
Geoffrey S. Goodman (No. 6272539)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

1910649.1