# EXHIBIT A

# Los Valles Land & Golf, LLC

233 WILSHIRE BLVD, SUITE 800
SANTA MONICA, CALIFORNIA 90401
TELEPHONE 310-576-6700
FACSIMILE 310-576-0888

October 6, 2006

### *VIA FACSIMILE (702.734.0163) AND OVERNIGHT DELIVERY*

USA Commercial Mortgage Company
4844 South Pecos Road
Las Vegas, Nevada 89121
Attn: Mark Olson

Re: **Hasley Canyon**

Dear Mark:

This letter agreement ("Agreement") is made and entered into by and between USA Commercial Mortgage Company ("USA") and Los Valles Land & Golf, LLC ("LVLG"). We have been advised by you that USA is the attorney-in-fact and/or duly authorized agent of each lender (collectively, "Lenders") on that certain loan ("Loan") in the aggregate principal amount of $11,700,000 evidenced by that certain promissory note given by LVLG to the Lenders, dated as of March 3, 2004 ("USA Note"), and certain subsequent documentation. The Loan is secured by a deed of trust (as subsequently amended, collectively the "USA DOT") recorded March 17, 2004 in the Los Angeles County official records against certain property located in an unincorporated area of Los Angeles County, California as more specifically described in the deed of trust ("Property"). LVLG acknowledges that the Property is anticipated (but not required) to be developed into 209 saleable residential lots (each a "Lot") and an 18-hole golf course. The Loan was assumed by Los Valles Company, Inc. ("LVC") on or about February 3, 2006. In connection with such assumption, LVC made a purchase money promissory note in favor of LVLG in the original principal amount of $28,110,726 ("PMM Note"), which is secured by a deed of trust recorded against the Property ("PMM DOT"). The PMM DOT is subordinate to the Loan, and if either is ever closed, the PMM DOT will be subordinate to both the New First Loan and the Mezz Loan and/or any future refinancings and/or modifications of the New First Loan or Mezz Loan (both the "New First Loan" and the "Mezz Loan" are defined below).

USA represents and warrants that it has been duly authorized to approve and enter into the agreements set forth in this Agreement on behalf of each of the Lenders by countersigning this Agreement.

In conjunction with a proposed transfer of the Property from LVC to Los Valles Company, L.P. ("Transferee") in connection with a contemplated new first-priority construction loan to be secured by the Property ("New First Loan"), USA has delivered a payoff statement

600371 0012 WEST 5977294 v5                      1

("Statement") setting forth $15,788,142.84 as the amount required to be paid in full to completely satisfy the Loan as of September 12, 2006 (the "Initial Payoff Amount"), and for each day after such date, a per diem interest on principal in the amount of $7,101.05 and a per diem interest on the extension fee in the amount of $117.00 (collectively, the "Per Diem Amounts", and collectively with the Initial Payoff Amount, the "Payoff Amount"). The Statement provides that the total amount of principal and interest required to be paid to satisfy all Loan obligations to all of the Lenders is $14,202,097.01 plus the portion of the Per Diem Amounts applicable to interest on the principal (collectively, "Lender Sum"), and the total amount of fees required to be paid to USA is $1,586,045.83 plus the Per Diem Amounts (through the date of the Closing (defined below)) applicable to interest on the extension fees (the "USA Sum"). USA and LVLG have agreed as follows:

1)  The Lender Sum will be paid at the closing and funding (if any) of the New First Loan ("Closing") to Lenders to satisfy Lenders in full, and USA will cause (i) a new payoff statement to be delivered to LVC, the title company and the escrow company handling the Closing providing that the Lender Sum is the only amount that is required to be paid to satisfy the Loan in full ("New Payoff Statement"), (ii) a full reconveyance of the deed of trust securing the Loan to be recorded at Closing, and (iii) all other documents and instruments regarding the Loan that the title company reasonably requires in order to issue (or be unconditionally committed to issue) an owner's title insurance policy at Closing insuring Transferee's fee interest and a lender's title insurance policy insuring the New First Loan lender's first priority interest) in the Property free and clear of the Loan, with no exceptions for, or other references to, the Loan, with the understanding that USA will deliver to the title company the USA Note and USA DOT evidencing the Loan upon disbursement by the escrow company of the Lender Sum pursuant to the New Payoff Statement ("Disbursement").

2)  The USA Sum will no longer be owed or paid to USA (nor to any Lender) at Closing (or thereafter). However, after Disbursement and in lieu of any obligation of LVLG or any other person or entity to pay the USA Sum, the following shall apply.

3)  When and if Transferee obtains its currently contemplated mezzanine financing for the Property ("Mezz Loan") and if the proceeds thereof are used to pay down the PMM Note, then an amount equal to $586,045.83 plus the Per Diem Amounts accrued through the date of Closing ("Deferred Extension Fees") will be paid by LVLG to USA. In all circumstances, regardless of whether the Mezz Loan is obtained, if an amount equal to the Deferred Extension Fees have not been paid in full to USA (whether from the Mezz Loan proceeds, from Payable Earnings (defined below), or otherwise, all of which shall be deemed applied to pay down the Deferred Extension Fees) on or before December 31, 2007, then on such date, LVLG shall be unconditionally obligated to pay USA an amount equal to the then-outstanding unpaid Deferred Extension Fees, if any (i.e., as reduced by any amounts that USA has received (whether from the Mezz Loan, from Payable Earnings (defined below), or otherwise from LVLG or any of its direct or indirect affiliates, members or owners) as of December 31, 2007).

4)  Certain amounts may be earned in the manner set forth below by USA after Closing and may eventually be paid by LVLG in full or in part to USA from "Payable Earnings", if any, in D below:

USACM_LOS VALLES
00431

A. In the event that any Lot is developed and sold by Transferee or its affiliate, USA will earn and accrue at the actual closing of the sale of each Lot, an amount equal to 1% ("Earnout Rate" (subject to adjustment as described below)) of the gross proceeds net of closing costs and expenses of each sale (each such amount is a "Lot Sale Earnout"). In no event will there be any Lot Sale Earnout for any Lot unless and until a sale of such Lot is actually closed and the proceeds of such sale are received by Transferee or its affiliate (a "Qualified Sale"). Notwithstanding anything to the contrary herein, in no event will any of the following be deemed to be a Qualified Sale: (i) foreclosure sales or transfers of any Lot by a deed-in-lieu of foreclosure; or (ii) any assignment, sale, pledge, or other transfer of the partnership or other ownership interest in Transferee, its partners or LVC. "Qualified Sale" will be deemed to include any bulk sale of Lots, but in no event will the sale of the golf course parcel(s) be a Qualified Sale.

B. Each Lot Sale Earnout will begin to accrue interest (at the rate of 12% per annum) from the date of the Qualified Sale to which such Lot Sale Earnout is attributable.

C. After the earlier of (i) the date that USA has received in the aggregate (whether from Mezz Loan proceeds, Payable Earnings or other sources) an amount equal to the Deferred Extension Fees or (ii) December 31, 2007 (the date in paragraph 3 above by which any remaining unpaid Deferred Extension Fees are to be paid in full) (whichever of (i) or (ii) applies, such date is the "Reduction Date"), the 1% Earnout Rate for Qualified Sales will be reduced by multiplying 1% by a fraction determined by dividing $1,000,000 by the sum of (X) the original amount of the Deferred Extension Fees (without any reductions described in paragraph 3 above) and (Y) $1,000,000. For example, if the original amount of the Deferred Extension Fees (without any reductions described in paragraph 3 above) are $600,000, then the fraction will be ten-sixteenths (i.e., 1,000,000/1,600,000), and the modified Earnout Rate will be .625% (i.e., 1% x [1,000,000/1,600,000] = .625%), which modified rate will be applicable to any Qualified Sales occurring after the Reduction Date. In no event will the Deferred Extension Fees accrue any interest.

D. The aggregate of any and all Lot Sale Earnouts and all interest accrued thereon under B above will be a conditional obligation of LVLG to USA, only to be paid if, when and to the extent that LVLG actually receives Qualified Sale cash proceeds as a pay down on the PMM Note ("Payable Earnings"). LVLG shall send substantially contemporaneously to USA copies of all notices of intended Lot sales that are provided to the lender under the New First Loan.

E. Other than the obligation of LVLG to pay any unpaid Deferred Extension Fees on or before December 31, 2007, the Payable Earnings (if any) received by LVLG shall be the sole sources of any payments from LVLG to USA.

F. Dan S. Palmer, Jr. hereby personally guarantees (as a guarantor of payment, not a guarantor of collection) payment of the Payable Earnings, if any, to USA (to the extent required hereunder to satisfy LVLG's obligations, if any, to USA). Anything to the contrary notwithstanding, if proceeds from Qualified Sales are not actually received by LVLG, then in no event will there be Payable Earnings.

USACM_LOS VALLES
00432

G.  Dan S. Palmer, Jr. hereby personally guarantees (as a guarantor of payment, not a guarantor of collection) the payment to USA of the then-outstanding unpaid Deferred Extension Fees, if any, required to be made by LVLG no later than December 31, 2007 under the second sentence of paragraph 3 above (as computed and reduced thereunder).

USA represents and warrants for the benefit of LVLG, LVC, Transferee and Dan S. Palmer, Jr. that it has obtained all approvals, authorizations and consents necessary for USA to enter into, consummate and perform its obligations under this Agreement (and for the person executing this Agreement on behalf of USA to bind USA by such execution). LVLG represents and warrants for the benefit of USA that it has obtained all approvals, authorizations and consents necessary to enter into, consummate and perform its obligations under this Agreement (and for the person executing this Agreement on behalf of LVLG to bind LVLG by such execution).

Notwithstanding anything to the contrary herein, neither LVLG, LVC nor Transferee shall be required to obtain the Mezz Loan (or any other financing in lieu of the Mezz Loan). Transferee and LVC are not parties to, and they shall have no obligations under, this Agreement or otherwise to USA or the Lenders, but Transferee and LVC shall be deemed to be third party beneficiaries of USA's obligations under this Agreement.

The internal laws of the State of Nevada will govern this Agreement, without giving effect to choice-of-law principles. This Agreement constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any dispute among any parties arises in connection with this Agreement, the prevailing party in the resolution of such dispute in any action or proceeding will be entitled to an order awarding full recovery of reasonable attorneys' fees and expenses and costs (including experts' fees and expenses) incurred in connection therewith, including costs of court, from the non-prevailing party. This Agreement will be binding only upon the occurrence of each and every one of the following: (i) execution of this Agreement by each party hereto; (ii) the delivery of written consent to this Agreement from each of the members of LVLG; and (iii) the Closing. Nothing contained in this Agreement shall be deemed to create a partnership, agency and/or joint venture between USA and LVLG and/or LVC.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

USACM_LOS VALLES
00433

Please demonstrate your agreement to this Agreement and the transactions described herein by countersigning below.

Sincerely,

**LOS VALLES LAND & GOLF, LLC,**
a California limited liability company

By: Palmer-Los Valles, LLC,
a California limited liability company,
its Managing Member

    By: Palmer Investments, Inc.,
a California corporation,
its Managing Member

        By: _____
Name: Dan S. Palmer, Jr.
Title: President

AGREED AND ACCEPTED BY:

**USA COMMERCIAL MORTGAGE COMPANY,**
a Nevada Corporation

By: _____
Name: Mark Olson
Its: Chief Operating Officer
Date: Oct. 6, 2006

DAN S. PALMER, JR. HEREBY ACKNOWLEDGES AND AGREES TO THE GUARANTOR OBLIGATIONS SET OUT IN PARAGRAPHS 4F AND 4G:

_____
Dan S. Palmer, Jr.
Date: Oct. 6, 2006

cc: Kevin Glade, Esq.
Hush Sohaili, Esq.

USACM_LOS VALLES
00434