**LEWIS AND ROCA LLP LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile: (702) 949-8321
Telephone: (702) 949-8320

Susan Freeman AZ State Bar No. 004199
E-mail: **SFreeman@LRLaw.com**
Rob Charles, NV State Bar No. 006593
E-mail: **RCharles@LRLaw.com**

**FOLEY & LARDNER LLP**
Attorneys at Law
321 North Clark Street
Suite 2800
Chicago, IL 60610
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Edward J. Green Ill Bar No. 6225069 (Pro Hac Vice)
Geoffrey S. Goodman Ill Bar No. 6272297 (Pro Hac Vice)

Attorneys for USACM Liquidating Trust

E-Filed on 3/25/2008

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA Commercial Mortgage Company,<br><br>USA Capital Realty Advisors, LLC,<br><br>USA Capital Diversified Trust Deed Fund, LLC,<br><br>USA Capital First Trust Deed Fund, LLC,[1]<br><br>USA Securities, LLC,[2]<br>                                Debtors.<br><br>**Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[1]<br>Case No. BK-S-06-10729-LBR[2]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**REPLY IN SUPPORT OF SUPPLEMENTAL OBJECTION OF THE USACM LIQUIDATING TRUST TO CLAIM NO. 791 OF THE PENSION BENEFIT GUARANTY CORPORATION**<br><br>Hearing Date: April 17, 2008<br>Hearing Time: 10:30 a.m. |

The USACM Liquidating Trust (the "Liquidating Trust"), by and through its

---

[1] This bankruptcy case was closed on October 12, 2007.

[2] This bankruptcy case was closed on December 26, 2007.

1

1918968.1

Case 06-10725-gwz    Doc 6049    Entered 03/25/08 11:54:28    Page 2 of 13



counsel, hereby files its reply in support of its supplemental objection (the "Objection") to amended claim No. 791 ("Termination Premium Claim") of the Pension Benefit Guaranty Corporation (the "PBGC") filed against USA Commercial Mortgage Company ("USACM"), the Objection being raised pursuant to § 502 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007 of the Local Rules of Bankruptcy Procedure. In support thereof, the Liquidating Trust states as follows.

## INTRODUCTION

1. The Termination Premium Claim should be disallowed or reclassified as an unsecured, non-priority claim. <u>First</u>, the Termination Premium Claim should be disallowed under the plain language of 29 U.S.C. § 1306(a)(7). Section 1306(a)(7)(B) provides that USACM's obligation to pay the Termination Premium Claim only arises only it is discharged or its case is dismissed, neither of which have occurred in this case. Moreover, the PBGC's argument that § 1306(a)(7)(B) only applies to reorganization plans that do not involve a liquidation of the debtor's assets is baseless because (i) § 1306(a)(7)(B) applies in "<u>any bankruptcy reorganization proceeding</u>," not just traditional restructuring plans, (ii) applicable precedent in the 9th Circuit has expressly held that a liquidation under chapter 11 is a "reorganization," and (iii) the USACM Plan was considered a plan of reorganization, a characterization to which the PBGC did not object.

2. <u>Second</u>, the Termination Premium Claim is not a "tax" entitled to priority under § 503(b)(1)(B) of the Bankruptcy Code. The Termination Premium is a penalty, not a "tax." Section 1306(a)(7) was designed to deter pension plan sponsors from terminating their pension plans and to punish those who do so. In addition, the Termination Premium is not a tax under the Supreme Court's functional examination because it was not imposed under the police or taxing power of the state.

3. <u>Third</u>, the Termination Premium Claim would not be entitled to

2

1918968.1



administrative priority even if it was somehow deemed a "tax," because such claim was not "incurred by the estate." The Termination Premium provided no benefit to USACM's estate and had no nexus to post-petition labor by USACM's employees. This Court should follow the litany of other decisions rejecting similar attempts by the PBGC to manufacture administrative priority for liabilities having no nexus to a debtor's estate. In addition, in *In re Oneida Ltd.*, No. 06-10489, 2008 WL 516493 (S.D.N.Y. Feb. 27, 2008), the only known decision on the issue, the court expressly found that claims under 29 U.S.C. § 1306(a)(7) are contingent pre-petition claims that are not "incurred by the estate" under § 503.[3]

## **ARGUMENT**

### I. The Termination Premium Claim Should Be Disallowed Pursuant To The Plain Language Of 29 U.S.C. § 1306(a)(7)

4. The Termination Premium Claim should be disallowed pursuant to the plain language of 29 U.S.C. § 1306(a)(7) because the USACM case was a "bankruptcy reorganization proceeding under chapter 11 of Title 11." Section 1306(a)(7) provides:

> (A) In general [i]f there is a termination of a single-employer plan under . . . section 1342 [involuntary termination] of this title, there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section.
>
> (B) **Special rule for plans terminated in bankruptcy reorganization[.]** In the case of a single-employer plan terminated under . . . section 1342 [involuntary termination] of this title during pendency of any bankruptcy reorganization proceeding under chapter 11 of Title 11 . . . **subparagraph (A) shall not apply to such plan until the date of the discharge or dismissal of such person in such case.**

---

[3] The *Oneida* decision was not discussed in the Liquidating Trust's supplemental objection because it came to the Liquidating Trust's attention the day it was filing that objection.

29 U.S.C. § 1306(a)(7) (emphasis added).

5.  The PBGC does not dispute the following points: (1) The Termination Premium Claim is not entitled to administrative priority if the USACM case is considered a "bankruptcy reorganization proceeding under chapter 11" because USACM was not discharged and its case has not been dismissed; (2) the USACM Plan (the "Plan") was considered a plan of reorganization; and (3) the PBGC did not object to the characterization of the Plan as a reorganization plan at the confirmation hearing or otherwise.

6.  Instead, the PBGC's sole argument is that the fact that certain assets of USACM were liquidated under the Plan means it was not a "reorganization." This argument is baseless. <u>First</u>, the applicable statutory standard is not whether the Plan called for a reorganization of the debtor or a liquidation, but rather whether the Pension Plan was terminated "during the pendency of <u>any bankruptcy reorganization proceeding</u> under chapter 11 of Title 11." (emphasis added). The USACM case was indisputably a bankruptcy reorganization <u>proceeding</u>, as the case was brought under chapter 11, the chapter explicitly labeled "Reorganization" in the Bankruptcy Code.

7.  In fact, the PBGC's narrow interpretation of the term "reorganization" to exclude liquidating chapter 11 cases was expressly rejected by the Bankruptcy Appellate Panel for the Ninth Circuit Court in *In re Deer Park, Inc.,* 136 B.R. 815 (B.A.P. 9th Cir. 1992). In *Deer Park*, the IRS argued that a Supreme Court tax rule for "reorganizations" did not apply to a liquidating chapter 11 case. The Court disagreed, stating as follows:

> The government argues that the Supreme Court holding in *Energy Resources* is inapplicable because Deer Park's Chapter 11 plan is a "liquidating" plan and not a "reorganization". We disagree. Such a broad statement fails to recognize that a debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale….
>
> Although the word "reorganization" might commonly bring

4

1918968.1



> to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11, which is titled "Reorganization". Has Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within Chapter 7, which is specifically titled "Liquidation".

*Id.* at 818; *see also In re 20th Century Enters., Inc.*, No. 90-23698, 1994 WL 779356, at *4-5 (Bankr. N.D. Miss. Jan. 18, 1994) (following *Deer Park*).

8. Similarly, if Congress intended to limit the application of 29 U.S.C. § 1306(a)(7) to only traditional restructuring plans under chapter 11, it could have expressly made such intention clear in the statute, rather than referring to "any bankruptcy reorganization proceeding." The PBGC fails to cite a single case to the contrary.

9. <u>Second</u>, even if § 1306(a)(7) somehow requires a reorganization "plan" rather than a proceeding (which it does not), the Plan indisputably was considered a "Plan of Reorganization." The PBGC waived any right to object to the characterization of the Plan as a reorganization when it failed to do so prior to entry of the Confirmation Order. The PBGC's untimely attempt to re-write the terms of the Plan should be rejected by this Court.

10. <u>Third</u>, the PBGC's position is also contrary to statements made by the court in *Oneida*, the only known case under 29 U.S.C. § 1306(a)(7). In *Oneida*, the court stated that "[i]f a corporate debtor liquidates, it does not obtain a discharge. However, in that case, it no longer undergoes a reorganization, there are no employees in the post-confirmation period, and § 1306(a)(7) does not appear to have any application at all." *Oneida*, 2008 WL 516493, at *6 n.8. This Court therefore should disallow the Termination Premium Claim in its entirety pursuant to the plain language of § 1306(a)(7).

1918968.1



## II. The Termination Premium Claim Is Not A "Tax" Under § 503(b)(1)(B) Of The Bankruptcy Code

11. The Termination Premium Claim is not entitled to administrative priority even if the PBGC can get beyond the plain language of § 1306(a)(7) (which it cannot). The Termination Premium Claim is not a "tax," nor was it "incurred by the estate." The Termination Premium Claim therefore is not entitled to priority under § 503(b)(1)(B) of the Bankruptcy Code.

### A. The Termination Premium Is A Penalty, Not A Tax

12. The Termination Premium Claim is not a "tax" entitled to priority under § 503(b)(1)(B) of the Bankruptcy Code. The United States Supreme Court has defined a "tax" as "an enforced contribution to provide for the support of government." *Reorganized CF & I Fabricators, Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (citation omitted) (ruling that a payment to the Internal Revenue Service of a certain excise "tax," notwithstanding its label, was a penalty and not entitled to priority administrative expense treatment). Whereas, a "penalty" – which is not entitled to priority treatment – is "an exaction imposed by statute as punishment for an unlawful act." *Id.; see also In re Bayly Corp.*, No. Civ. A. 95 N 901, 1997 WL 33484011, at *2-4 (D. Colo. Feb. 12, 1997) (citation omitted).

13. In its Response, the PBGC argues that because Congress created the § 1306(a)(7) termination premium against the backdrop of historical deficits of the PBGC, this fact somehow transforms the Termination Premium Claim into a "tax" deemed to have priority under § 503(b)(1)(A). (*See* PBGC Resp. at 12-14) This argument is illogical and, if accepted, would eviscerate the holding in *Reorganized CF & I Fabricators*.

14. In essence, the PBGC asks this Court to rule that *any* payment required by statute to be paid to a governmental entity is a "tax." To be sure, any termination

6



premium paid by those employers who terminate pension plans will indirectly defray the expenses of government. But, as *Reorganized CF & I Fabricators* teaches, more is required before a payment to the government can be granted priority status as a "tax" under § 503(b)(1)(B). *Reorganized CF & I Fabricators* involved a payment that was expressly labeled a "tax" by the Internal Revenue Code. Yet, looking beyond mere labels, the Supreme Court concluded that the excise "tax" payment was in the nature of a penalty whose purposes was to deter certain conduct. As a result, the "tax" was a "penalty" for purposes of bankruptcy priority. *Reorganized CF & I Fabricators*, 518 U.S. at 225; *see also In re Bayly Corp.*, 1997 WL 33484011 at *2-4 (ruling that the PBGC was not entitled to priority "tax" status with respect to its claim to unfunded benefit liabilities because the payment was not a tax intended to support or provide income to the government).

15. Likewise, Congress had every reason to discourage employers from terminating employee pension plans, and Congress chose to use – among other tools – a pension plan termination premium to discourage termination. Indeed, in its Response, the PBGC admits that the "termination premium would remain the same regardless of whether a pension plan is underfunded by $10 million or $10,000." (*See* PBGC Resp. at 18 n.66). As a result, there is no nexus between the amount of the PBGC's alleged loss and the amount of the Termination Premium Claim. The purpose of the Termination Premium Claim is thus obvious—to deter employers from terminating pension plans and to punish those who do so.

      **B.**    <u>**The Termination Premium Is Not A "Tax" Under The Supreme Court's Functional Examination**</u>

16. The PBGC argues that the Termination Premium qualifies as a "tax" under the Supreme Court's "functional examination." This argument is without merit.

17. <u>First</u>, the Termination Premium was not "imposed for public purposes,

7

1918968.1



including the purposes of defraying the expenses of government or undertakings authorized by it." *In re CF&I Fabricators of Utah, Inc.,* 150 1293, 1298 (10th Cir. 1998). As discussed above, the purpose of the Termination Premium Claim was to deter the termination of pension plans and to punish those who do so without regard to the amount of any expenses incurred by the government.

18. <u>Second</u>, the Termination Premium was not imposed under the police or taxing power of the state. Section 1306(a)(7) is codified in ERISA, not the Internal Revenue Code, and there is no indication in the statute that the Termination Premium is a "tax" or otherwise enacted pursuant to the government's taxing power.

### C. The Termination Premium Claim Was Not "Incurred By The Estate"

19. The Termination Premium Claim would not be entitled to administrative priority even if it was somehow deemed a "tax," because such claim was not "incurred by the estate."[4] 11 U.S.C. § 503(b)(1)(B)(i). "It is not sufficient that a tax merely becomes payable post-petition in order to qualify as an administrative expense under § 503(b)(1)(B)." *In re Bayly Corp.*, 163 F.3d 1205, 1210 (10th Cir. 1998); *see also In re Northeastern Ohio Gen. Hosp. Ass'n*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991) ("For purposes of administrative expense allowance, a tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable."); *In re Anchor Glass Container Corp.*, 375 B.R. 683, 687 (Bankr. M.D. Fla. 2007) ("A tax obligation accrues when the event triggering liability occurs.").

20. In *Bayly*, the Court held that, even if the PBGC's claims were "taxes," they were not entitled to administrative priority because they were not incurred by the debtor's

---

[4] The PBGC incorrectly alleges that the Liquidating Trust does not contest that the Termination Premium Claim was "incurred by the estate." (*See* PBGC Resp. 10 n.36). This statement ignores three briefs filed by the Liquidating Trust in this case alleging that no PBGC claim was incurred by the estate.

1918968.1



estate. *See Bayly*, 163 F.3d at 1210. The Court reasoned that:

> [A]ll liabilities under the [Pension] Plan stem from non-forfeitable benefits accrued by employees as a result of pre-petition labor. . . . The consideration supporting the PBGC's claim is the same as that supporting the right to pension benefits itself, the past labor of Debtor's employees. Plan termination simply matured Debtor's pre-petition contingent liability to fund the Plan adequately. Thus, PBGC's claim is not entitled to administrative expense priority as a post-petition tax.

*Id*.

21.     Similarly, a litany of other courts have found that the termination of a pension plan does not convert the PBGC's claims into administrative claims merely because the triggering event occurred post-petition. *See, e.g.*, *In re Sunarhauserman*, 126 F.3d 811, 817 (6th Cir. 1997) (disallowing PBGC's administrative claim for all amounts except liabilities arising post-petition because "it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition"); *In re Kent Plastics Corp.*, 183 B.R. 841, 847 (Bankr. S.D. Ind. 1995) (denying PBGC's claim for administrative expense priority where the pension plan had been frozen for six years prior to bankruptcy filing); *In re Chateaugay*, 115 B.R. 760, 778 (finding that "the post-petition termination of the pension plans did not give rise to post-petition claims. Nor are the PBGC claims, except for a small portion attributable to post-petition services of LTV Steel's employees, entitled to administrative priority pursuant to § 503(b)(1)(A).").[5]

---

[5] Numerous other courts have rejected similar attempts by claimants to use a post-petition "trigger" to obtain administrative priority for an obligation providing no post-petition benefit to the estate. *See In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) (denying priority status to attorney's claim for fees when liability for the fees arose post-petition, but the contract on which entitlement to attorneys' fees was based was executed pre-petition); *In re Palau Corp.*, 18 F.3d 746, 750-51 (9th Cir. 1994) (refusing to grant priority status to employees' claims where employees obtained a post-petition court award for back wages because work was performed pre-petition); *In re Bayly Corp.*, 163 F.3d 1205, 1208-09 (10th Cir. 1998) (claim not entitled to priority status "simply because the right to payment arises after the debtor in possession has begun managing the estate") (citing *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988)).

1918968.1



22.     More recently, in *Oneida*, the court applied the precedent cited above in the context of pension plan termination premiums under § 1306(a)(7). In *Oneida*, the court expressly found that claims under 29 U.S.C. § 1306(a)(7) are contingent pre-petition claims that are not "incurred by the estate" under § 503. Specifically, the *Oneida* Court noted that "when a right to payment is created by a statutory obligation, the counterpart 'claim' dates from the commencement of the relationship between the parties, not the date when the right to payment became enforceable." *See id.* at *10. Relying on the Second Circuit's decision in *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991), the court held that the relationship between the debtor and the PBGC commenced pre-petition, as (a) Congress passed § 1306(a)(7) before the petition date, and (b) Congress directed potential debtors to contemplate potential termination liabilities before they file bankruptcy. *See id.* at *10-11 & n.15 (citing H.R. Rep. No. 109-276, at 347-48 (Nov. 7, 2005) ("[T]he Committee does believe that the plan sponsors that have not [yet] filed a petition for bankruptcy reorganization must take into account the cost of the termination premium.")); *see also Chateaugay,* 944 F.2d at 1005 (statutory right of EPA to collect cleanup cots under CERCLA is a pre-petition claim even if "trigger" occur after the petition date).

23.     Moreover, in analyzing the precedent in the area that has uniformly rejected the PBGC's administrative claim arguments, the court also reasoned as follows:

> [T]here are other grounds to find that the [termination premiums] are not administrative expenses, such as the fact that the consideration supporting the claimant's right to payment was not supplied and beneficial to the debtor in possession in the operation of the business . . . [i]n any event, for present purposes, the key fact is that pension claims have been considered as prepetition claims except where the plans were terminated after the debtor had confirmed its plan of reorganization.

*Id.* at *11.

24.     Here, as in *Oneida,* the Termination Premium Claim is, at best, a pre-

10

1918968.1



petition unsecured claim, as the potential obligation was known to all parties prior to USACM filing chapter 11. In addition, the imposition of a statutory termination premium provided no benefit to USACM's estate. Indeed, the Pension Plan was frozen many months before it was terminated and the Termination Premium has no connection whatsoever to the limited post-petition services which USACM's employees rendered to its bankruptcy estate.

25. Finally, Congress does not write bankruptcy laws "on a clean slate." *See Dewnsup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'"). As such, this Court must assume that Congress was aware of the well established law on the PBGC's (lack of) entitlement to an administrative claim under prior decisions when it enacted § 1306(a)(7). However, despite the explicit reference to chapter 11 cases in § 1306(a)(7), Congress failed to provide in the statute that the PBGC was entitled to an administrative claim for any termination premiums. This Court should not effect such a major change in the Bankruptcy Code priority scheme for PBGC liabilities absent a significant discussion of that change in the legislative history. *See id.* ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."); *see also Oneida*, 2008 WL 516493, at *8 (citing lack of evidence that Congress intended to change priorities in the Bankruptcy Code by enacting § 1306(a)(7)).

26. Accordingly, the Termination Premium Claim is not entitled to administrative expense priority.

## CONCLUSION

For the reasons stated herein, in addition to those set forth in the Objection, the Liquidating Trust respectfully requests that this Court enter an order pursuant to Rule

11

1918968.1

1  3007 of the Federal Rules of Bankruptcy Procedure, (a) disallowing the Termination
2  Premium Claim or reclassifying such claim as an unsecured, non-priority claim, and (b)
3  granting such other and further relief as the Court deems just and proper.
4       RESPECTFULLY SUBMITTED March 25, 2008.

                    **LEWIS and ROCA LLP**

                    By: /s/ RC (#006593)
                        Susan M. Freeman
                        Rob Charles

                    And

                    Edward J. Green (No. 6225069)
                    Geoffrey S. Goodman (No. 6272539)
                    **FOLEY & LARDNER LLP**
                    321 North Clark Street, Suite 2800
                    Chicago, IL 60610
                    Telephone: (312) 832-4500
                    Facsimile: (312) 832-4700

1918968.1

LEWIS AND ROCA LLP LAWYERS

PROOF OF SERVICE

COPY of the aforementioned sent via e-mail or first class U.S. Mail on March 25, 2008 to the following parties:

Frank A. Anderson
Erika E. Barnes
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, DC 20005-4026
Anderson.frank@pbgc.gov
Barnes.Erika@pbgc.gov
efile@pbgc.gov
*Attorneys for Pension Benefit Guaranty Corporation*

Gregory A. Brower
U.S. Attorney, District of Nevada
Carlos A. Gonzalez
Assistant U.S. Attorney
333 Las Vegas Blvd, South, Suite 5000
Las Vegas, NV 89101
Carlos.Gonzalez2@usdoj.gov
*Attorneys for Pension Benefit Guaranty Corporation*

 /s/ Christine E Laurel
Christine E Laurel
Lewis and Roca LLP

1918968.1