Israel Goldowitz, Chief Counsel  
Karen L. Morris, Deputy Chief Counsel  
James L. Eggeman, Assistant Chief Counsel, VA Bar No. 37101[*]  
Frank A. Anderson, Attorney, D.C. Bar No. 478234[**]  
Erika E. Barnes, Attorney, Cal. Bar No. 197309[**]  
PENSION BENEFIT GUARANTY CORPORATION  
Office of the Chief Counsel  
1200 K Street, NW, Suite 340  
Washington, D.C. 20005-4026  
Tel: (202) 326-4020, ext. 3759  
Fax: (202) 326-4112  
anderson.frank@pbgc.gov and efile@pbgc.gov  

and  

Gregory A. Brower  
United States Attorney, District of Nevada, NV Bar No. 5232  
Carlos A. Gonzalez  
Assistant United States Attorney  
333 Las Vegas Blvd. South, Suite 5000  
Las Vegas, Nevada 89101  
Tel: (702) 388-6336  
Fax: (702) 388-6787  
Carlos.Gonzalez2@usdoj.gov  

Attorneys for Pension Benefit Guaranty Corporation

Electronically Filed:
March 31, 2008

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| In re: | Case No. BK-S-06-10725 LBR |
|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. BK-S-06-10726 LBR |
| Debtor. | Case No. BK-S-06-10727 LBR |
| In re: | Case No. BK-S-06-10728 LBR |
| USA CAPITAL REALTY ADVISORS, LLC | Case No. BK-S-06-10729 LBR |
| Debtor. | |
| In re: | Chapter 11 |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | |
| Debtor. | Jointly Administered Under |
| In re: | Case No. BK-S-06-10725 LBR |
| USA CAPITAL FIRST TRUST DEED FUND, LLC, | |
| Debtor. | |
| In re: | Hearing Date: April 17, 2008 |
| USA SECURITIES, LLC | Hearing Time: 9:30 a.m. |
| Debtor. | |

---

[*] Motion to permit appearance of government attorney pending.

[**] Admitted pro hac vice.

**PBGC'S SURREPLY TO THE SUPPLEMENTAL OBJECTION
OF THE USACM LIQUIDATING TRUST TO CLAIM NO. 791 OF THE PBGC**

## I.   INTRODUCTION

The Pension Benefit Guaranty Corporation ("PBGC")[1] hereby submits its Surreply to the Objection of the USACM Liquidating Trust ("Liquidating Trust").[2]  USACM sponsored a PBGC-insured pension plan that was involuntarily terminated and trusteed by PBGC.  Under the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), when a pension plan is involuntarily terminated, the former plan sponsor owes a termination premium under 29 U.S.C. § 1306(a)(7) to PBGC.  As discussed in its Response, PBGC asserts that the termination premium is a tax under the functional analysis established under *City of New York v. Feiring* and reaffirmed by *United States v. Reorganized CF&I Fabricators of Utah, Inc.*  If the Court holds that the termination premium is a tax, then the Court must determine whether the tax was incurred post-petition.  For the reasons set forth in PBGC's Response and as set forth below, the Court should rule the termination premium is a tax that USACM incurred post-petition.

## II.   ARGUMENT

**The Termination Premium was incurred by the USACM Estate**.

In its Reply, the Liquidating Trust argues for the first time that the termination premium was not "incurred by the estate" under 11 U.S.C. § 503(b)(1)(B). The term "incur" means "to have liabilities cast upon one by act or operation of law . . . [or to] become liable or subject to."[3]

---

[1]  All terms not defined herein are as defined in PBGC's Response previously filed with the Court.

[2]  As the Liquidating Trust raised new arguments in its reply brief, PBGC respectfully provides the following response.  The Liquidating Trust does not object to a surreply.

[3]  Black's Law Dictionary 768 (6th ed. 1990).

1

The parties agree that a tax claim is incurred on the date of accrual, rather than the date it is assessed or payable.[4]

Courts hold that the time a tax is incurred or accrues for purposes of 11 U.S.C. § 503(b)(1)(B)(i) is governed by the relevant non-bankruptcy law.[5] This rule is consistent with long-standing Supreme Court precedent, which the Court has recently reaffirmed, that the relevant substantive non-bankruptcy law governs the substance of a bankruptcy claim.[6] Courts have generally found that a tax is incurred when "all the acts necessary to create the tax liability" have occurred.[7] Stated another way, and as the Liquidating Trust admits, a "tax obligation accrues when the event that triggers liability has occurred."[8] Thus, in this case, the Court should determine when USACM's liability for the termination premium was incurred under ERISA.

29 U.S.C. § 1306(a) provides, in part:

---

[4] Reply, at par. 19. *See In re Northeastern Ohio Gen. Hosp. Assn.*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991).

[5] *See, e.g., West Virginia State Dep't of Tax & Revenue v. IRS (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982, 986 (3d Cir. 1994) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)), *cert. denied*, 131 L. Ed. 2d 721 (1995); *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp. (Matter of Midland Indus. Serv. Corp.)*, 35 F.3d 164 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1359 (1995); *Burns v. City of Winston-Salem (In re Members Warehouse, Inc.)*, 991 F.2d 116 (4th Cir. 1993).

[6] *Travelers Cas. & Sur. Co. v. PG&E Co.*, 127 S. Ct. 1199, 1204-05 (2007), *accord Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)*; Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946).

[7] *West Virginia State Dep't of Tax & Revenue v. IRS*, 37 F.3d at 985-986.

[8] *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp.*, 35 F.3d at 167; Reply, at par. 19, quoting *In re Anchor Glass Container Corp.*, 375 B.R. 683, 687 (Bankr. M.D. Fla. 2007) ("A tax obligation accrues when the event triggering liability occurs."); *c.f. In re Lorber Indus. of California, Inc.*, 373 B.R. 663, 666, 670 (9th Cir. BAP 2007) (post-petition event triggered the state's assumption of the employer's workers compensation liability; holding that the claim qualified as an excise tax, and noting the "claim might be entitled to priority status as an administrative expense under § 507(a)(2), but the Fund did not pursue this avenue.")

> (7) Premium rate for certain terminated single-employer plans
>
> (A) In general
>
> If there is a termination of a single-employer plan under clause (ii) or (iii) of [29 U.S.C. § 1341(c)(2)(B)] or [29 U.S.C. § 1342], there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section.

Under 29 U.S.C. 1306(a)(7)(A), an employer incurs liability for the termination premium when a pension plan terminates, *viz*: "If there is a termination of a single-employer plan under [29 U.S.C. § 1342], there shall be payable to the corporation, with respect to each applicable 12-month period, a premium . . . ." This is the provision of the statute under which an employer accrues liability for the termination premium, but it is not the provision under which the date of payment is established. Thus, as a general rule, the liability is incurred when the pension plan terminates, but, as explained in PBGC's Response, the first payment under the general rule becomes due thirty days after the month following the month in which a pension plan is terminated.[9]

In this case, the Pension Plan terminated in January 2007 — i.e., the "event that triggers liability" under the relevant non-bankruptcy law.[10] Under 29 U.S.C. § 1306(a)(7)(A), USACM "incurred" its liability to PBGC in January 2007, but the first installment of the termination premium did not become due until March 2, 2007. Thus, under the relevant non-bankruptcy law, USACM incurred liability for the termination premium post-petition, in January 2007, when "all the acts necessary to create the tax liability" had occurred.

---

[9] *See* 29 U.S.C. § 1306(a)(7)(C), (D).

[10] *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp.,* 35 F.3d at 167.

In asserting that the termination premium did not accrue post-petition, the Liquidating Trust relies on a number of cases involving PBGC's standard claims for unfunded benefit liabilities and minimum funding contributions where certain courts have refused to hold that the claims arose post-petition.[11] But because none of these cases required the courts to interpret 29 U.S.C. § 1307(a)(7), or to determine when the liability for the termination premium was incurred under ERISA, they are inapposite and unhelpful in resolving the issue in this case.

The Liquidating Trust also cites to *Oneida v. PBGC*.[12] The issue in *Oneida*, however, was whether the liability for the termination premium under 29 U.S.C. § 1306(a)(7)(B), the special rule for plans terminated in a bankruptcy reorganization, was a bankruptcy "claim" within the meaning of section 101(5) of the Bankruptcy Code. PBGC argued that the termination premium under the special rule for reorganizing debtors did not accrue until "the date of the discharge or dismissal [of the reorganizing debtor],"[13] and, therefore, was a post-emergence expense of a reorganized debtor, not a bankruptcy claim that is subject to discharge. Because PBGC asserted that the termination premium under the special rule was not a bankruptcy claim, it neither filed nor asserted any claim for the termination premium in the *Oneida* bankruptcy, much less a claim for administrative priority.[14] As such, there was never an

---

[11] *See, e.g., In re Bayly Corp.,* 163 F.3d 1205 (10th Cir. 1998); *In re Sunarhauserman*, 126 F.3d 811 (6th Cir. 1997); *In re Chateaugay*, 115 B.R. 760 (Bankr. S.D.N.Y. 1990).

[12] *Oneida v. PBGC*, __ B.R. __, 2008 WL 516493 (Bankr. S.D.N.Y. Feb. 27, 2008). A notice of appeal was filed in the case on March 28, 2008.

[13] 29 U.S.C. § 1306(a)(7)(B).

[14] Even though PBGC asserted no claim, priority or otherwise, for the termination premium, the *Oneida* court concluded, *sua sponte*, that the termination premium was not entitled to tax priority because the provision for termination premiums failed the "test of explicitness," citing the Tenth Circuit's ruling in *PBGC v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah)*, 150 F.3d 1293 (10th Cir. 1998). 2008 WL at *8. The *Oneida* court did not, however, undertake a functional analysis of the termination premium under *Feiring/Reorganized CF&I*.

4

issue of whether the debtor was undergoing a plan of reorganization, and the issue of the termination premium in the context of a liquidation was never briefed or at issue.[15] Therefore, *Oneida* is clearly distinguishable on its facts and this Court should not follow *Oneida*.

Of course, the Liquidating Trust contends that the special rule under 29 U.S.C. § 1306(a)(7)(B) should apply in this case on the grounds that USACM's liquidation was filed as a Chapter 11 reorganization. But if this argument were accepted, the Liquidating Trust would effectively evade any liability for the termination premium because under the special rule, liability does not accrue until "the date of discharge or dismissal" of USACM's case. There is no date of discharge for USACM because USACM liquidated, and when the case is finally dismissed, the assets of the Liquidating Trust will have all been distributed, defeating the purpose of the statute and rendering it a virtual nullity in cases involving Chapter 11 liquidations, a result strongly disfavored in this jurisdiction. As observed by the Court of Appeals for the Ninth Circuit:

> We may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute. In

---

[15] In *Oneida*, the court specifically looked to the *actual* course of dealing between the parties *immediately* pre-petition, which included the plan sponsor meeting with PBGC twice to discuss possible pension plan termination in the context of the company's imminent bankruptcy filing. And based on that actual relationship, the court held that the termination premiums were pre-petition claims under the facts of the case. 2008 WL 516493 at *10. Even if *Oneida* were correct, PBGC was not informed that USACM intended to terminate its plan nor that USACM intended to file a bankruptcy petition. As such, the termination premium clearly does not qualify as a contingent claim under Ninth Circuit precedent. *See In re Cool Fuel, Inc.*, 210 F.3d 999, 1007 (9th Cir. 2000) (contingent claim for taxes in fair contemplation when, pre-petition, Board had both initiated an investigation and issued a deficiency determination for the disputed taxes); *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 532-33 (9th Cir. 1998) (no contingent claim for attorneys fees for litigation initiated post-petition, even though claim was based on fees provision in deed of trust signed pre-petition); *Cal. Dept. Health Serv. v. Jensen (In re Jensen)*, 995 F.2d 925, 930-31 (9th Cir. 1993) (contingent claim in fair contemplation when one state agency had actual pre-petition knowledge of environmental hazard; adopting "fair contemplation" test from *In re Nat'l Gypsum Co.*, 139 B.R. 397, 407-409 (N.D. Tex. 1992)).

5

> *Brooks v. Donovan,* 699 F.2d 1010 (9th Cir.1983), we refused to adopt a plain language interpretation of a statute governing pension funds. We reasoned that the "court must look beyond the express language of a statute where a literal interpretation 'would thwart the purpose of the overall statutory scheme or lead to an absurd or futile result.' " *Brooks,* 699 F.2d at 1011 (quoting *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 518 F.2d 913, 917-918 (9th Cir.1975)). In reaching our conclusion, we followed the Supreme Court's approach in *United States v. American Trucking Ass'ns.,* 310 U.S. 534 [] (1940). There the Court noted that "[w]hen [a given] meaning has led to absurd results ... this Court has looked beyond the words to the purpose of the act. Frequently, however, *even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,' this Court has followed that purpose, rather than the literal words.*" *American Trucking Ass'ns.,* 310 U.S. at 543.[16]

The Liquidating Trust's arguments to evade the payment of the termination premium are clearly in the service of form over substance, and the Court should reject them as such.

---

[16] *Albertson's, Inc. v. Commissioner,* 42 F.3d 537, 545 (9th Cir. 1994) (emphasis in original, parallel citations omitted).

## III. CONCLUSION

For the foregoing reasons, the Court should allow the administrative expense priority of PBGC's claim for termination premium in the amount of $150,000, or as established, and deny the objections of the USACM Liquidating Trust.

Dated: March 31, 2008                               Respectfully Submitted,

 /s/   Frank A. Anderson

| | |
|---|---|
| Local Counsel: | Israel Goldowitz, Chief Counsel |
| Gregory A. Brower, | Karen L. Morris, Deputy Chief Counsel |
| United States Attorney, | James L. Eggeman, Assistant Chief Counsel, |
| District of Nevada, | VA Bar No. 37101 |
| NV Bar No. 5232 | Frank A. Anderson, Attorney, |
| Carlos A. Gonzalez, | D.C. Bar No. 478234 |
| Assistant United States Attorney | Erika E. Barnes, Attorney, |
| 333 Las Vegas Blvd. South, Suite 5000 | Cal. Bar No. 197309 |
| Las Vegas, Nevada 89101 | PENSION BENEFIT GUARANTY |
| Tel:  (702) 388-6336 | CORPORATION |
| Fax:   (702) 388-6787 | Office of the Chief Counsel |
| Carlos.Gonzalez2@usdoj.gov | 1200 K Street, NW, Suite 340 |
| | Washington, D.C.  20005-4026 |
| | Tel: (202) 326-4020, ext. 3460 |
| | Fax: (202) 326-4112 |