E-Filed on 4/11/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199
Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com
Special Litigation Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | Judge Linda B. Riegle |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |
| USACM LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. RUSSELL; DEBORAH RUSSELL; RUSSELL A D DEVELOPMENT GROUP, LLC; COPPER SAGE COMMERCE CENTER LLC; FREEWAY 101 USA INVESTORS, LLC; BOISE/GOWEN 93, LLC; DER NV INVESCO, LLC; FWY 101 LOOP RAR INVESTMENT, LLC; and BG/93 INVESTMENTS, LLC; SVRB INVESTMENTS, LLC.<br><br>Defendants. | **Adversary No. 08-___**<br><br>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT, CLAIM OBJECTIONS, AND COUNTERCLAIMS**<br><br>Hearing Date:  n/a<br>Hearing Time:  n/a |

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT,**</u>
<u>**CLAIM OBJECTIONS, AND COUNTERCLAIMS**</u>

Plaintiff USACM Liquidating Trust (the "USACM Trust"), as the duly authorized successor-in-interest to USA Commercial Mortgage Company ("USACM"), brings this action asserting claims and counterclaims against Defendants for participation in breaches of fiduciary duty and unjust enrichment.   The USACM Trust also objects to the proofs of claim filed by Defendant Robert A. Russell ("Russell").

<u>**I. SUMMARY OF THIS ACTION**</u>

1.      In April 2006, USACM and certain related companies collapsed as a result of the gross misconduct of two of its principals, Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders").   Specifically, the Culpable Insiders systematically looted USACM's coffers and usurped business opportunities available to USACM, misappropriating tens of millions of dollars in the process.

2.      Even though Defendant Russell[1] knew or should have known of several key facets of this fraudulent scheme, he willfully provided assistance to the Culpable Insiders by overseeing the operations of several ventures that received funds looted from USACM.  In addition, Russell granted membership interests in certain entities to the Culpable Insiders (or entities owned and controlled by them) even though USACM itself should have received these interests.  Through his actions, Russell contributed to USACM's collapse.   The profits received by Russell and each of the other Defendants serves only to add insult to injury because these profits were gained unjustly.

---

[1]      To avoid confusion, throughout this Complaint, Defendant Robert A. Russell will be referred to as "Defendant Russell" or "Russell."  His wife, Defendant Deborah Russell be referred to as "Deborah Russell."

3.      Though he aided the wrongful scheme and should not profit, Russell seeks additional remuneration from USACM.  He has filed a proof of claim in USACM's bankruptcy case, seeking $140,000 for alleged "consulting services."  The USACM Trust objects to this purported claim on numerous grounds.

## II. PARTIES AND OTHER RELEVANT ENTITIES

### A.  PLAINTIFF

4.      Plaintiff USACM Trust was created pursuant to the Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM and the other four debtors in this bankruptcy case.  The Joint Plan was confirmed by this Court on January 8, 2007, and became effective on March 12, 2007.

5.      The Joint Plan expressly retained USACM's causes of action for enforcement by the USACM Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B).  The Joint Plan also transferred to the USACM Trust certain causes of action belonging to USA Capital First Trust Deed Fund, LLC.  The USACM Trust, therefore, has standing to prosecute the claims herein against the Defendant.

6.      The USACM Trust is a liquidating trust organized under Nevada law.  The USACM Trust's beneficiaries are the holders of allowed unsecured claims against USACM.  Geoffrey L. Berman serves as the trustee of the USACM Trust.

### B. DEFENDANTS

7.      Defendant Robert Russell is an individual who is a citizen of Arizona.  On information and belief, he may be served with process at 10040 E. Happy Valley Rd., #351, Scottsdale, AZ 85255-2380 or 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

8.      Defendant Deborah Russell is an individual who is a citizen of Arizona.  She may be served with process at 10040 E. Happy Valley Rd., #351, Scottsdale, AZ 85255-2380 or 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

9.      Defendant Russell A D Development Group, LLC is an Arizona limited liability company with its principal place of business in Arizona.  Its managers are Defendants Robert and Deborah Russell.  It  may be served with process by serving its registered agent, Frank S. Tomkins, Arendt Tomkins Law Group PLC, 5009 E. Washington, Suite 125, Phoenix, AZ 85034

10.     Defendant Freeway 101 USA Investors, LLC a/k/a FWY 101 USA Investors, LLC ("Freeway 101") is an Arizona corporation.  On information and belief, its principal place of business is in Arizona.  According to its operating agreement, its Manager is Defendant Russell and its Members are USAIP and Defendant Fwy 101 Loop RAR Investment, each of whom owns 50% of the company.  It may be served with process by serving its Manager, Defendant Russell at 10040 E. Happy Valley Rd., #351, Scottsdale, AZ 85255-2380 or at 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

11.     Defendant Fwy 101 Loop RAR Investment, LLC is a 50% Member of Defendant Freeway 101.  It is an Arizona corporation with its principal place of business in Arizona.  Its Manager is Defendant Russell.  It may be served with process by serving its Manager, Defendant Russell at 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

12.     Defendant Boise/Gowen, LLC is an Idaho corporation with its principal place of business in Idaho. The registered agent for process of service is Richard A. Cummings, 412 E. Park Center, Suite 325, Boise, ID 83706

13.     Defendant BG/93 Investments, LLC is a 50% Member of Boise/Gowen, LLC. On information and belief, its principal place of business is in Arizona. It may be served with process by serving its manager, Defendant Russell at 10040 E. Happy Valley Rd., #351, Scottsdale, AZ 85255-2380 or at 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

14.     Defendant Copper Sage Commerce Center, LLC ("Copper Sage") is a Nevada corporation with its principal place of business at 8585 E. Hartford Dr., Suite 500, Scottsdale, AZ 85255. Copper Sage may be served with process through its registered agent, Incorp Services, Inc., 3155 East Patrick Lane, Suite 1, Las Vegas, NV 89120-3481.

15.     Defendant DER NV Invesco, LLC is a 50% Member of Copper Sage. On information and belief, it is an Arizona limited liability company with its principal place of business in Nevada or Arizona. It may be served with process by serving its manager, Defendant Deborah Russell at 10040 E. Happy Valley Rd., #351, Scottsdale, AZ 85255-2380.

16.     Defendant SVRB Investments, LLC is an Arizona corporation with its principal place of business in Arizona. It may be served with process by serving its registered agent, Defendant Russell at 8585 E. Hartford Drive, Suite 500, Scottsdale, AZ 85255.

## C. OTHER RELEVANT ENTITIES

### 1. Debtors

17.    On April 13, 2006 (the "Petition Date"), USACM, USA Capital Realty Advisors, LLC ("Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF"), and USA Securities, LLC ("Securities") (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

18.    USACM is a corporation organized under Nevada law on or about February 28, 1989.  Prior to the Petition Date, USACM was in the business of underwriting, originating, brokering, funding, and servicing commercial loans secured by residential and commercial developments.  From 1997 until the time of the bankruptcy filing, Joseph D. Milanowski ("Milanowski") served as President of USACM and as a member of USACM's board of directors.

19.    DTDF is a limited liability company organized under Nevada law on or about February 3, 2000.  DTDF offered Nevada investors the opportunity to purchase membership interests and thereby invest in loans that USACM originated and serviced on behalf of DTDF.  Prior to the Petition Date, DTDF was managed by Realty.

20.    FTDF is a limited liability company organized under Nevada law on or about February 16, 2001.  FTDF offered investors throughout the United States the opportunity to purchase membership interests and thereby invest in loans that USACM originated and serviced on behalf of FTDF.  Prior to the Petition Date, FTDF was managed by Realty.

21.    Realty is a limited liability company organized under Nevada law on or about January 18, 2001.  Realty was formed primarily to manage DTDF and FTDF.  Prior to the Petition Date, Realty was owned and managed by USA Investment Partners, LLC ("USAIP").

22.    Securities is a limited liability company organized under Nevada law on or about March 3, 1999.  Securities, which was a registered broker-dealer under SEC Rule 15c3-1(a)(2)(vi), primarily sold membership interests in FTDF.  Prior to the Petition Date, Securities was owned and managed by Milanowski and Paul Hamilton ("Hamilton").

## 2.  USA Investment Partners, LLC

23.    USAIP is a limited liability company organized under Nevada law on or about October 20, 1999.  USAIP serves as a holding company for dozens of entities primarily engaged in land acquisition and real estate development.  USAIP is owned by Hantges and Milanowski, (or trusts controlled by them).  Prior to June 17, 2004, USAIP was managed by USACM.  Between June 17, 2004 and April 6, 2007, USAIP was managed by Hantges and Milanowski.  On February 14, 2005, Hantges purportedly resigned his position as a USAIP manager, but nonetheless continued to function as a de facto manager until at least April 6, 2007.

24.    On April 4, 2007, the USACM Trust, DTDF, and another USAIP creditor filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against USAIP in this Court.  On April 6, 2007, the Court entered an order approving the appointment of Lisa M. Poulin as USAIP's interim trustee.  On May 9, 2007, the Court entered an order for relief under Chapter 11 of the Bankruptcy Code as to USAIP.

### III. JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action, which arises under, arises in, and relates to a case under Title 11, pursuant to 28 U.S.C. § 1334(b).  This action is, in part, a core proceeding and, in part, a non-core proceeding under 28 U.S.C. § 157(b).

26.     This Court has personal jurisdiction over the Defendants based upon the following: (a) USACM's bankruptcy filing; (b) Defendant's general contacts with the State of Nevada; (c) Defendant's specific contacts with the State of Nevada, including all of their business dealings with Nevada-based USACM and/or USAIP that are the subject of this lawsuit; and (d) Defendant Russell's filing of two proofs of claim in USACM's bankruptcy case.  In addition, Defendants committed torts that are the subject of this lawsuit in Nevada.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

### IV. FACTUAL BACKGROUND

### A. USACM'S COLLAPSE

28.     In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders").  Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM.  As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001.  Eventually, USACM filed for bankruptcy protection on April 13, 2006 in the United States Bankruptcy Court for the District of Nevada.

29.     USACM was a mortgage broker and loan servicing company whose primary business activities were: (i) "originating" short-term loans from investors to real estate developers; and (ii) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors.  USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

30.     A significant portion of the fee revenues that USACM actually received were subsequently misappropriated by the Culpable Insiders.   Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held a direct or an indirect membership interest through USAIP, including time-share hotels, real estate development entities, and technology companies (collectively, the "Insider Affiliates").   In some instances, looted USACM funds earmarked for Insider Affiliates were first passed through USAIP.   In other instances, funds taken from USACM's accounts were sent directly to the recipient Insider Affiliate(s).  In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund the Insider Affiliates.

31.     In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation.  Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans.   Ultimately, USACM lost millions of dollars by making

principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers.

32.    These "pre-payments" of interest and principal were made to conceal delinquent and defaulted loans from investors and regulatory authorities, as well as other USACM directors, officers, employees, and shareholders.

33.    The Culpable Insiders also concealed non-performing loans by taking the original investors out of the loan when they complained about the non-performance. Frequently, this was accomplished through assignments. In other instances, the Culpable Insiders caused USACM to originate loans to new entities formed by the principal(s) of the original borrowing entity in a simple "shell game." In the shell game, the funds originated by USACM on the "new" loan were used to pay off the outstanding balance of the original loan, while the underlying real estate project was transferred from the original borrower entity to the new entity.

34.    The concealment of non-performing loans induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM. This provided the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM. In addition, it enabled the Culpable Insiders to obtain "equity kickers" in real estate development entities in exchange for USACM originating loans to certain repeat borrowers.

35.    The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. Frequently, unsecured, interest free "advances" were sent directly from USACM to the Culpable Insiders. In other instances, the Culpable Insiders misappropriated USACM funds

to pay for professional services rendered solely for the benefit of the Culpable Insiders and/or the Insider Affiliates.

36.    In the aggregate, USACM lost tens of millions of dollars through the myriad of ways in which the Culpable Insiders' systematically misappropriated USACM funds and/or otherwise abused USACM, as described above.  This widespread looting caused USACM to file bankruptcy, ultimately costing USACM and its creditors tens and possibly hundreds of millions of dollars.

## B.    RUSSELL'S RELATIONSHIP WITH USACM, THE CULPABLE INSIDERS, AND INSIDER AFFILIATES

### 1.    USACM Loans to Russell's Companies

37.    Russell initially came into contact with USACM and Milanowski in 1999 or 2000. Over the next few years, USACM originated numerous loans to real estate development entities in which Russell and/or his development company, Defendant Russell A D Development Group, LLC, held a managerial or ownership interest ("Russell Affiliate(s)"), including:

| **Borrower Entity** | **Origination Date** | **Amount** |
|---|---|---|
| Perimeter Office Ownership, L.L.L.P. | April 26, 2001 | $11.12 million |
| Santa Rosa Plaza, LLC | July 31, 2002 | $9.4 million |
| Rio Bravo Industrial Development, LLC | September 3, 2002 | $500,000 |
| Denver Loop 101 Land Acquisition L.L.L.P. | April 21, 2003 | $1.2 million |
| Rio Bravo Industrial Development, LLC | July 24, 2003 | $3.3 million |
| Interstate Commerce Center, LLC | February 20, 2004 | $4.75 million |
| Copper Sage Commerce Center, LLC | June 9, 2004 | $4 million[2] |
| Rio Bravo Industrial Development, LLC | July 16, 2004 | $250,000[3] |
| Freeway 101, LLC | August 9, 2004 | $4.15 million[4] |
| ISCC Phase II, LLC | August 11, 2004 | $1.4 million |
| I-40 Gateway West, LLC | January 11, 2005 | $4.53 million[5] |
| Franklin/Stratford Investments LLC | March 30, 2005 | $5.225 million[6] |

[2] Initially, USACM funded $1.1 million to Copper Sage.

[3] USACM participated as the sole lender in this transaction.

[4] USACM ultimately funded $4.5 million on the loan to Freeway 101.

[5] Initially, USACM funded $2.48 million.

[6] Initially, USACM funded $2.5 million.

11

| SVRB Investments, LLC | April 27, 2005 | $4.5 million |
| SVRB Investments, LLC | April 27, 2005 | $2.325 million[7] |
| Boise/Gowen 93, LLC | August 26, 2005 | $2.15 million[8] |
| Rio Rancho Executive Plaza, LLC | January 17, 2006 | $2.25 million[9] |
| I-40 Gateway West, LLC | March 1, 2006 | $1.065 million |
| Copper Sage Commerce Center, LLC | March 1, 2006 | $3.55 million |

38.     Many of these loans were not properly documented.  Specifically, Milanowski caused USACM to fund loans even though appraisals on the underlying collateral had not been obtained.  As the manager of the borrower entities on these loans, Russell knew or should have known of Milanowski's improper failure to obtain an appraisal before causing USACM to fund the loans.

39.     Not surprising in light of Milanowski's general failure to obtain appraisals before funding loans to Russell Affiliates, several Russell Affiliates experienced financial difficulties in paying off loans originated by USACM.

40.     One such example was Perimeter Office Ownership, L.L.L.P. ("Perimeter Office"), the first Russell Affiliate to borrow money from USACM.  On January 10, 2002, Russell wrote the following in an e-mail to Milanowski in an effort to bail out the struggling project:

> As the project is not going the way we expected it to…we need to get together and explore ways to work through this…With no sales imminent we need to work out some sort of arrangement to accrue the interest and possibly give an equity participation to you or some other sort of arrangement.

In essence, Russell offered a bribe in the form of an "equity participation" or "some other sort of arrangement" to induce Milanowski to "accrue the interest" and make interest payments to the investors in the loan on behalf of Perimeter Office.

---

[7] Initially, USACM funded $1.9 million.

[8] USACM ultimately funded $2.425 million on the loan to Boise/Gowen.

[9] Initially, USACM funded $2.0 million.

## 2.  Russell Knew of the Culpable Insiders' Wrongdoing

41.     Given the financial struggles of Perimeter Office and other Russell Affiliates, Russell knew or should have known that the Culpable Insiders caused USACM to make "pre-payments" of interest on behalf of borrowers.  Russell knew or should have known that NRS 645B.250 expressly forbade USACM from making such payments.

42.     In addition, Russell knew or should have known that the Culpable Insiders employed a "shell game" in which they caused USACM to originate loans to pay off the outstanding balance of other loans, while the underlying real estate project was transferred from the original borrower entity to the new entity.  For example, USACM originated two loans to a Russell entity, Defendant SVRB Investments, LLC ("SVRB") to pay off the outstanding balance of loans that USACM had previously originated to a different Russell entity, Rio Bravo Industrial Development, LLC ("Rio Bravo").  Concurrently, Russell transferred the underlying property to Defendant SVRB from Rio Bravo.  As Russell and SVRB understood, this shell game made it appear to investors that the loans were performing when they were not.

43.     Russell's relationship with Milanowski ultimately transcended a mere borrower-lender relationship when Russell began to assist to Milanowski in the management of several Insider Affiliates.

44.     For example, in 2005, Milanowski asked Russell to become a "third party" manager in approximately a dozen real estate development Insider Affiliates that constituted a homebuilding company doing business under the name "Tanamera" in Southern California.   After meeting with

the other principals of Tanamera, Russell wrote a memo to Milanowski addressing the need for new management.

45.     In connection with the proposed change in management, Russell approached a bankruptcy lawyer to explore what would be needed for manager switches in each of the Insider Affiliates to "stand up under scrutiny."  After describing the sorts of tasks that would be required of him if he were to take over as manager, Russell e-mailed Milanowski:  "There will actually have to be substantial time and effort put into this to alleviate the possibility of it being overturned.  You know where my loyalty lies."  Russell later wrote: "I really think I should be present for Board of Directors meetings, all executive committee meetings as well as being available on land acquisition scenarios."

46.     In 2005, Russell took over the management of certain Insider Affiliates that owned land in the Placer Vineyards master planned community near Sacramento, California.  Milanowski gave Russell authority to make decisions on behalf of the Insider Affiliates and to perform all functions normally associated with a developer of such a project.

47.     Through these activities, Russell knew or should have known that the Culpable Insiders maintained a vast network of Insider Affiliates that were financially dependent on the Culpable Insiders' abuse of USACM.

**3.  Russell Forms Partnerships with USAIP**

48.     At least as early as March 2002, Russell advocated forming partnerships with USACM, USAIP, and/or an Insider Affiliate to develop real estate projects.  Russell conceived an "equity kicker" plan.  Under Russell's basic framework, USACM would originate a loan and, in

14

exchange or the loan origination, USACM, USAIP and/or another Insider Affiliate would receive an "equity kicker," i.e., a membership interest in the project.

49.    Russell and Milanowski adopted this basic framework for several real estate development entities to which USACM originated loans.  Typically, Russell was responsible for drafting the operating agreements for these entities.  Even though USACM had originated the loan (and should have received the membership interest), Russell would ask Milanowski which Insider Affiliate should be awarded a membership interest in the entity.

50.    Predictably, Milanowski sought to personally seize the fruits of USACM's labors. On several occasions, Russell gave "equity kickers" to USAIP, even though USAIP provided no services or other consideration whatsoever in connection with the loan originated by USACM.  Nor did Milanowski provide any services or consideration outside of his capacity as President of USACM:  Milanowski was simply using USAIP to divert funds to himself, with Russell's active participation and assistance.

51.    Specifically, on June 9, 2004, USACM originated a $4 million[10] loan to Defendant Copper Sage Commerce Center, LLC ("Copper Sage").  In connection with this loan origination, Russell, the manager of Copper Sage, granted USAIP an "equity kicker" in the form of a 50% membership interest in Copper Sage.  Defendant DER NV Invesco, LLC, managed by Defendant Deborah Russell, held the other 50% membership interest in Copper Sage.

52.    Milanowski acted solely in his capacity as President of USACM when USACM originated the loan to Copper Sage.  Milanowski and USAIP did not provide any services or other

---

[10] Initially, USACM funded $1.1 million to Copper Sage.

consideration with regard to the transaction that would have entitled USAIP to receive the "equity kicker" in Copper Sage.

53.    Russell testified that USAIP ultimately received approximately $750,000 in member distributions as a result of the "equity kicker" in Copper Sage.

54.    On August 9, 2004, USACM originated a $4.15 million[11] loan to Defendant Freeway 101 USA Investors, LLC ("Freeway 101").  In connection with this loan origination, Russell, the manager of Freeway 101, granted USAIP an "equity kicker" in the form of a 50% membership interest in Freeway 101.  Defendant Freeway 101 Loop RAR Investment, LLC held the other 50% membership interest in Freeway 101.

55.    Milanowski acted solely in his capacity as President of USACM when USACM originated the loan to Freeway 101.  Milanowski and USAIP did not provide any services or other consideration with regard to the transaction that would have entitled USAIP to receive the "equity kicker" in Freeway 101.

56.    On February 22, 2006, USAIP received $627,000 from Freeway 101.  This distribution stemmed entirely from the "equity kicker" in Freeway 101 that Russell had given USAIP.  Upon information and belief, USAIP received additional distributions from Freeway 101.

57.    On August 26, 2005, USACM originated a $2.15 million[12] loan to Defendant Boise/Gowen 93, LLC ("Boise/Gowen").  In connection with this loan origination, Russell, the manager of Boise/Gowen, granted USAIP an "equity kicker" in the form of a 50% membership

---

[11] USACM ultimately funded $4.5 million on the loan to Freeway 101.

[12] USACM ultimately funded $2.425 million on the loan to Boise/Gowen.

16

interest in Boise/Gowen.    Defendant BG/93 Investments, LLC, managed by Defendant Russell, held the other 50% membership interest in Boise/Gowen.

58.    Milanowski acted solely in his capacity as President of USACM when USACM originated the loan to Boise/Gowen.  Milanowski and USAIP did not provide any services or other consideration with regard to the transaction that would have entitled USAIP to receive the "equity kicker" in Boise/Gowen.

59.    Upon information and belief, USAIP ultimately received approximately $623,000 in member distributions as a result of the "equity kicker" in Boise/Gowen.   The member distributions received by USAIP were used to fund a portion of the then unpaid real property taxes due Placer County, CA on the Placer County Land Speculators, LLC property and USACM originated loans. Russell is a minority member of Placer County Land Speculators, LLC.

60.    Upon information and belief, the same scenario took place with Defendant SVRB. In exchange for the "shell game" loan made by USACM, USAIP received a 50% membership interest in SVRB.

### 4. Summary

61.    In the aggregate, USAIP received more than $2 million as a result of the kickbacks that it received in connection with Copper Sage, Freeway 101, and Boise/Gowen.  All of these distributions rightfully should have gone to USACM.

62.    Yet Russell willingly granted the underlying equity interests to USAIP.  He did so even though he knew of (and participated in) many of the other aspects of the Culpable Insiders' scheme.  Specifically, Russell knew or should have known that: (i) the Culpable Insiders did not

properly document loans; (ii) the Culpable Insiders caused USACM to pre-pay interest and principal on behalf of defaulting borrowers; (iii) the Culpable Insiders caused USACM to originate loans in a "shell game," as described above; and (iv) the Culpable Insiders maintained a vast network of Insider Affiliates that were funded in whole or in part by USACM.

## VI.  CAUSES OF ACTION/COUNTERCLAIMS TO RUSSELL'S PROOFS OF CLAIM

### COUNT 1: AIDING AND ABETTING/PARTICIPATION IN BREACHES OF FIDUCIARY DUTY
### (Against All Defendants)

63.     USACM Trust re-alleges and fully incorporates the allegations pleaded above.

64.     Milanowski served as President and as a director of USACM.  Hantges served as Chief Executive Officer and Chairman of USACM.

65.     As USACM officers and directors, Milanowski and Hantges owed a fiduciary duty to act at all times with the utmost good faith and fair dealing and in the best interests of USACM.

66.     By virtue of the intentional, wrongful acts and omissions set forth above, Hantges and Milanowski collectively and individually breached fiduciary duties owed to USACM, including both the duty of loyalty and the duty of care.  Specifically, they systematically looted USACM, usurped corporate opportunities, and caused USACM to employ a "Ponzi"-like scheme and engage in other irregularities in the origination and servicing of loans.  Fidelity to their fiduciary duties should have compelled them to keep USACM fully advised regarding the true nature of the transactions which perpetuated their scheme and to prevent USACM from entering into such transactions.

67.     Russell and the other Defendants knew of the breaches of fiduciary duty caused by the acts and omissions set forth above.  Specifically, Russell and the other Defendants knew that

Hantges and Milanowski were breaching fiduciary duties to USACM by, *inter alia*: (i) "pre-payments" of interest on behalf of Russell Affiliates; (ii) loan originations to Russell Affiliates that amounted to a shell game; (iii) undocumented loans originated to Russell Affiliates; (iv) Russell's oversight of certain Insider Affiliates; and (iv) equity kickers granted to USAIP, rather than to USACM.

68.      Russell and the other Defendants knowingly provided substantial assistance to Hantges and Milanowski in the breaches of their fiduciary duties to USACM.

69.      Russell and the other Defendants were aware of their role in promoting these breaches of fiduciary duty at all times that he provided assistance to Hantges and Milanowski.

70.      USACM had one or more innocent officers, directors, owners, or other principals (collectively, the "Stakeholders") who: (i) were not involved in the acts and omissions set forth above; (ii) were not aware of the breaches of fiduciary duty owed by Milanowski and Hantges; and (iii) were unaware of Defendant's substantial assistance in such breaches.

71.      One or more of USACM's innocent Stakeholders could and would have terminated or prevented the acts or omissions set forth above if they had actually known, or understood and appreciated, what Hantges and Milanowski were doing to USACM as well as the true adverse impact on USACM.

72.      As a direct and proximate result of the substantial assistance given by Russell and the other Defendants to Hantges and Milanowski in their breaches of fiduciary duties owed to USACM and its creditors, USACM was injured and suffered damages in an amount to be proven at trial.

## COUNT 2: UNJUST ENRICHMENT
### (Against All Defendants)

73.     USACM Trust re-alleges and fully incorporates the allegations pleaded above.

74.     USACM provided a benefit to all Defendants by originating several loans to Russell Affiliates, even though certain Russell Affiliates had previously fallen behind on loan payments.  In addition, USACM provided a benefit to Defendants by originating loans that were not supported by a valid appraisal.

75.     USACM also conferred a benefit upon Defendants by making interest payments on loans on behalf of Russell Affiliates.

76.     Defendants appreciated the benefits conferred upon them by USACM.

77.     Through the conduct described above, Defendants assisted the Culpable Insiders in breaching their fiduciary duties and contributed to USACM's collapse.  As a result of Defendants' efforts, all Defendants received substantial distributions of profits.

78.     It would be inequitable for Defendants to retain the profits that they received as a result of Russell's role in assisting the Culpable Insiders' misconduct.

## VI.  CLAIM OBJECTIONS

### A.      OBJECTION TO CLAIM NO. 10725-00493

79.     Defendant Russell has filed Claim No. 10725-00493 against USACM's bankruptcy estate.  The Trust objects to Claim No. 10725-00493 because:  (a) the Trust possesses claims against the claimant in amounts substantially in excess of those claimed by claimant, as more fully set forth herein, and is therefore not entitled to payment of a claim until such time as all such matters have been resolved and a determination made as to the amounts the Trust is entitled to recover from

claimant; (b) the payment is sought for services that were not properly rendered, as more fully set forth herein; and (c) the claimant has failed to submit sufficient documentation to substantiate the alleged claim.

### B.    OBJECTION TO CLAIM NO. 10725-01088

80.    Defendant Russell has also filed Claim No. 10725-01088 against USACM's bankruptcy estate.   The Trust objects to Claim No. 10725-01088 because:   (a) this claim is duplicative of Claim No. 10725-00493; (b) the Trust possesses claims against the claimant in amounts substantially in excess of those claimed by claimant, as more fully set forth herein, and is therefore not entitled to payment of a claim until such time as all such matters have been resolved and a determination made as to the amounts the Trust is entitled to recover from claimant; (c) the payment is sought for services that were not properly rendered, as more fully set forth herein; and (d) the claimant has failed to submit sufficient documentation to substantiate the alleged claim.

### VI. PRAYER FOR RELIEF

WHEREFORE, the USACM Trust respectfully requests that the court enter judgment against Defendants and grant it the following relief:

1. An award of damages for all losses incurred by USACM;
2. Disgorgement of all profits that Defendants received as a result of any Defendants' role in assisting the Culpable Insiders' misconduct
3. An award of exemplary, punitive, and treble damages;
4. Pre-judgment and post-judgment interest as allowed by law;
5. Attorneys' fees incurred in the prosecution of this action to the extent allowed by law;
6. An order sustaining the Trust's objections to Claim Nos. 10725-00493 and 10725-01088; and

7. Such other and further relief at law or in equity as the Court determines is just and appropriate.

Dated: April 11, 2008

**DIAMOND MCCARTHY LLP**

By:  */s Michael J. Yoder*

Allan B. Diamond, TX 05801800 (pro hac vice)
adiamond@diamondmccarthy.com
William T. Reid, IV, TX 00788817 (pro hac vice)
breid@diamondmccarthy.com
Eric D. Madden, TX 24013079 (pro hac vice)
emadden@diamondmccarthy.com
Michael J. Yoder, TX 24056572 (pro hac vice)
myoder@diamondmccarthy.com

909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel*
*for USACM Liquidating Trust*