E-filed on 4/11/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |
| USACM LIQUIDATING TRUST<br><br>Plaintiff,<br><br>v.<br><br>JMK INVESTMENTS, LTD.; JOHN M. KEILLY, individually; and MOUNTAIN WEST MORTGAGE LLC,<br><br>Defendants. | Adversary No. 08-____<br><br>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**<br><br>Hearing Date:   n/a<br>Hearing Time:  n/a |

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>                    **Page -- 1**

Plaintiff USACM Liquidating Trust (the "Trust"), as successor to USA Commercial Mortgage Company, hereby complains as follows:

## I.    NATURE OF THIS ACTION

1.    In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders"). Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank," as well as other entities in which they stood to reap substantial personal profits.

2.    In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order:  (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties. In this adversary proceeding, the Trust seeks to recover the total amount of $668,400 of funds misappropriated from USACM and fraudulently transferred to Defendants respectively.

## II.    JURISDICTION / VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

5.    This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6.    All Defendants are subject to personal jurisdiction in this Court.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 2**

7.      This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

### III.    PARTIES

**A.    PLAINTIFF**

8.      Plaintiff is the Trust was created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Bankruptcy Case No. 06-10725 (Docket No. 1799).   The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007.   The Joint Plan expressly retained USACM's causes of action for enforcement by the Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B).  The Joint Plan also transferred certain causes of action belonging to USA Capital First Trust Deed Fund, LLC to the Trust.  The Trust, therefore, has standing to bring this action against the Defendants.  The Trust is a liquidating trust organized under Nevada law.  The Trust's beneficiaries are the holders of allowed unsecured claims against USACM.  Geoffrey L. Berman serves as the trustee of the Trust and may be served through undersigned counsel.

**B.    DEFENDANTS**

9.      Defendant J.M.K. Investments, Ltd. ("JMK Investments") is a Nevada corporation with its principal place of business located at 630 Trade Center Drive, Las Vegas, NV 89119. Defendant JMK Investments can be served through its registered agent, John H. Pilkington, at 3017 Charleston Blvd., Suite 30, Las Vegas, Nevada 89102.

10.     Defendant John M. Keilly ("Keilly") is an individual owner of JMK Investments. He can be served at his business address at 630 Trade Center Drive, Las Vegas, Nevada 89119 or wherever he may be found.

11.     Defendant Mountain West Mortgage LLC ("Mountain West") is a Nevada limited liability company with its principal place of business at 24 Highland Creek Dr., Henderson, Nevada, 89052.  Defendant Mountain West can be served through its resident agent, Thomas A. Jurbala, at 117 Emerald Dunes Cir., Henderson, Nevada 89052.

### IV.    FACTUAL ALLEGATIONS

### A.    BACKGROUND OF USACM AND ITS DEMISE

12.     In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders.  Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM.  As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001, if not earlier.  Eventually USACM (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

13.     USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors.  USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

14.     A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders.  Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 4**

development entities, and technology companies. The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities. In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

15.    It was completely adverse to USACM's interests for the Culpable Insiders to misappropriate USACM's funds for the benefit of USAIP. USACM owed no obligation, and received no benefit for the money provided to USAIP and/or on its behalf. The Culpable Insiders did not charge and/or collect interest on any of these transfers of USACM's funds, thereby precluding USACM from using this money in legitimate investments. In addition, the Culpable Insiders rarely repaid transfers of USACM's funds for USAIP's benefit. In the aggregate, USACM transferred at least $58 million to USAIP to fund USAIP's investments and pay its obligations.[1] Prior to the Petition Date, USAIP's obligation to repay USACM was undocumented and appeared only as an enormous intercompany receivable to USACM. In at least some instances, the Bankruptcy Court has already found that USACM did not receive reasonably equivalent value when it transferred funds to USAIP in exchange for incremental increases to this intercompany receivable. USAIP's failure to repay such transfers and its ultimate bankruptcy has prevented any possibility of USACM fully recovering on such obligations.

16.    In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the

---

[1] The $58 million obligation is in part or in whole reflected in the note between USACM and USAIP dated May 15, 2006. The Bankruptcy Court approved the note by order dated July 24, 2006.

Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans.  These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities.  In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

17.    Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers.  USACM did not receive any benefit from making these "pre-payments" of interest and principal.  Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

18.    The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. USACM frequently made unsecured, interest-free "advances" directly to the Culpable Insiders.  In other instances, the Culpable Insiders misappropriated USACM funds to pay for professional services rendered solely for the benefit of the Culpable Insiders and/or one of their outside business ventures.

19.    Ultimately, USACM lost tens of millions of dollars through the myriad of ways in which the Culpable Insiders' systematically misappropriated USACM funds.[2]  Additionally, the Culpable Insiders also systematically looted DTDF to fund USAIP and its affiliated entities.

---

[2] A more detailed discussion of the fraudulent scheme leading to USACM's demise and bankruptcy may be found in the USACM Liquidating Trust's Complaint Against Deloitte & Touche, LLP and Victoria Loob.  *See* Docket No. 1 in Cause No. 2:08-cv-00461-PMP-PAL, pending in the United States District Court, District of Nevada, Las Vegas Division.

Approximately $55 million was taken from DTDF and sent to USAIP and related entities, either directly or indirectly through two sham companies — 10-90, Inc. ("10-90") and Mountain Vista, Inc.

**B.    THE TRANSFERS FROM USACM TO DEFENDANTS**

**The February 2003 Transfer**

20.    USACM originated a $26 million construction loan to Madison Park Villas, L.P., a California limited partnership, for development of a real estate project under the same name on August 14, 2002 (the "Madison Park Villas Loan").  USACM's only contractual obligations in connection with the Madison Park Villas Loan were as: (i) the loan originator (or broker); and (ii) the loan servicer for the lenders.  USACM was not a lender in the Madison Park Villas Loan, nor did it have any legal interest in the Madison Park Villas Loan.  DTDF and several investors were the only lenders in the Madison Park Villas Loan and the only "Lender" identified in all of the loan documents, including recorded deed(s) of trust.

21.    Although USACM was not the lender on the Madison Park Villas Loan and did not have any legal interest in it, on February 27, 2003, the Culpable Insiders caused USACM to issue a payment voucher for $25,000 to JMK Investments (the "February 2003 Transfer").  Given USACM's limited involvement in the Madison Park Villas Loan and the apparent absence of any agreement between USACM and JMK Investments for services provided in connection therewith, upon information and belief, the Trust is unaware of any legitimate business purpose for transferring $25,000 to JMK Investments in connection with the Madison Park Villas Loan.  Upon information and belief, USACM had no obligation to transfer $25,000 to JMK Investments, and USACM received no benefit in exchange for making the February 2003 Transfer.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 7**

1

**The June 2003 Transfer**

2

3          22.    Upon information and belief, on June 13, 2003, the Culpable Insiders caused

4   USACM to pay the sum of $97,120 to JMK Investments as a "consulting fee" (the "June 2003

5   Transfer"). Upon information and belief, there is no written agreement between USACM and JMK

6   Investments that would support such a payment. USACM was a loan originator and loan servicer,

7   and, absent unusual circumstances, had no obligation to pay any such "consulting fee" on this loan.

8   Upon information and belief, USACM had no obligation to transfer $97,120 to JMK Investments,

9

10  and USACM received no benefit in exchange for making the June 2003 Transfer.

11                 **The October 2004 Transfer and June 2005 Transfer**

12         23.    On November 26, 2003, USACM originated a $25 million loan to 7500 SB Ltd., a

13  Texas limited partnership, for the Sharpstown Project – a shopping center development in Houston,

14

15  Texas. (the "Sharpstown Loan"). USACM's only contractual obligations in connection with the

16  Sharpstown Loan were as: (i) the loan originator (or broker); and (ii) the loan servicer for the

17  lenders. USACM was not a lender in the Sharpstown Loan, nor did it have any legal interest in the

18

19  Sharpstown Loan. DTDF and several investors were the only lenders in the Sharpstown Loan and

20  the only "Lender" identified in all of the loan documents, including the recorded deed(s) of trust.

21         24.    Although USACM was not the lender on the Sharpstown Loan and did not have any

22  legal interest in the Sharpstown Loan, the Culpable Insiders caused USACM to pay JMK

23  Investments a "consulting fee" of $5,620 from its operating account on October 13, 2004 (the

24

25  "October 2004 Transfer"). Upon information and belief, USACM had no obligation to transfer

26  $5,620 to JMK Investments, and USACM received no benefit in exchange for making the October

2004 Transfer.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 8**

25.    The Culpable Insiders again caused USACM to pay JMK Investments another "consulting fee" of $40,750 from its operating account on June 7, 2005 in connection with the Sharpstown Loan (the "June 2005 Transfer").  Upon information and belief, USACM had no obligation to transfer $40,750 to JMK Investments, and USACM received no benefit in exchange for making the June 2005 Transfer.

26.    Given USACM's limited involvement in the Sharpstown Loan and the apparent absence of any agreement between USACM and JMK Investments for services provided in connection therewith, upon information and belief, the Trust is unaware of any legitimate business purpose for transferring $5,620 and $40,750 to JMK Investments in connection with the Sharpstown Loan.

### The December 2005 Transfer

27.    On December 7, 2005, USACM originated a $12.9 million loan to Lerin Hills, Ltd., a Texas limited partnership for development of a residential real estate project in Texas (the "Lerin Hills Loan").  USACM's only contractual obligations in connection with the Lerin Hills Loan were as: (i) the loan originator; and (ii) the loan servicer for the lenders.  USACM was not a lender in the Lerin Hills Loan, nor did it have any legal interest in the Lerin Hills Loan.

28.    Although USACM was not the lender on the Lerin Hills Loan and did not have any legal interest in the Lerin Hills Loan, the Culpable Insiders caused USACM to transfer $500,000 from its operating account to Mountain West on December 21, 2005 (the "December 2005 Transfer").  This $500,000 payment to Mountain West was described in USACM's records as "John Kreilly's broker fee on Lerin Hills Loan."  Upon information and belief, "John Kreilly" was actually Keilly, the owner of JMK Investments.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 9**

29.     Upon information and belief, Mountain West may have transferred $500,000 to Keilly and/or to JMK Investments.

30.     Upon information and belief, Keilly is not a licensed broker, and neither Mountain West, Keilly, nor JMK Investments had an agreement with USACM to provide brokerage services in connection with the Lerin Hills Loan.  Given USACM's limited involvement in the Lerin Hills Loan and the apparent absence of any agreement between USACM and Mountain West, Keilly or JMK Investments for brokerage services provided in connection therewith, the Trust is unaware of any legitimate business purpose for transferring $500,000 to Mountain West and/or Keilly or JMK Investments in connection with the Lerin Hills Loan.

31.     Upon information and belief, USACM had no obligation to transfer $500,000 to Mountain West, Keilly and/or JMK Investments, and USACM received no benefit in exchange for making the December 2005 Transfer.

32.     The February 2003 Transfer, June 2003 Transfer, October 2004 Transfer, June 2005 Transfer and December 2005 Transfer shall be collectively referred herein as "Transfers."

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(A))

33.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

34.     The June 2005 Transfer and December 2005 Transfer each constituted a transfer of an interest of the Debtor in property.

35.     The June 2005 Transfer and December 2005 Transfer were made within one year of the Petition Date.

36.     The June 2005 Transfer and December 2005 Transfer were made with the intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to on or after the date these transfers were made.

37.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trust asks this Court to avoid the June 2005 Transfer and December 2005 Transfer.

### SECOND CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(B))

38.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

39.     The June 2005 Transfer and December 2005 Transfer each constituted a transfer of an interest of the Debtor in property.

40.     The June 2005 Transfer and December 2005 Transfer were made within one year of the Petition Date.

41.     The Debtor received less than a reasonably equivalent value in exchange for the June 2005 Transfer and December 2005 Transfer.

42.     The Debtor was insolvent on the date the June 2005 Transfer and December 2005 Transfers were made or became insolvent as a result of these transfers.

43.     As a result of the June 2005 Transfer and December 2005 Transfer, the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

44.    As a result of the June 2005 Transfer and December 2005 Transfer, the Debtor intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

45.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trust asks this Court to avoid the June Transfer and December 2005 Transfer .

### THIRD CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(a))

46.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

47.    The Transfers each constituted a transfer of an interest of the Debtor in property.

48.    The Transfers were made within the applicable four-year period under NRS 112.180(1)(a).

49.    On the date of the Transfers and on the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Transfers pursuant to Nevada state law.

50.    The Culpable Insiders caused the Debtor to make the Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

51.    Accordingly, the Transfers: (a) are fraudulent transfers under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

52.    Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Transfers under applicable state law.

**FOURTH CAUSE OF ACTION**
**(11 U.S.C. § 544 and NRS 112.180(1)(b))**

53.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

54.    The Transfers each constituted a transfer of an interest of the Debtor in property.

55.    The Transfers were made within the applicable four-year period under NRS 112.180(1)(b).

56.    On the date of the Transfers and the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Transfers pursuant to Nevada state law.

57.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

58.    The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or the transaction.

59.    The Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

60.    The Debtor intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

61.    Accordingly, the Transfers (a) are fraudulent transfers under NRS 112.180(1)(b); and (b) may be recovered under NRS 112.220.

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>                    **Page -- 13**

62.     Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Transfers under applicable state law.

### FIFTH CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

63.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

64.     The Transfers are avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(a) and (b)) and/or 11 U.S.C. § 548 (a)(1)(A) and § 548 (a)(1)(B).

65.     The Trust may recover the value of the February 2003 Transfer, June 2003 Transfer, October 2004 Transfer, June 2005 Transfer directly from JMK Investments as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

66.     The Trust may recover the value of the December 2005 Transfer from Mountain West as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.  In the alternative, the Trust may recover the value of the December 2005 Transfer from JMK Investments and/or Keilly as an immediate or mediate transferee who took without good faith, without giving value, and/or with knowledge of the voidability of the transfers pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220.

67.     If Mountain West was merely a conduit through which USACM transferred the December 2005 Transfer, the Trust may recover the value of the December 2005 Transfer from JMK Investments and/or Keilly as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220..

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>          **Page -- 14**

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

68.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

69.     By making the Transfers, USACM conferred a benefit on the Defendants.

70.     Defendants appreciated the benefit in that they: (a) received the Transfers; and (b) used the proceeds of these Transfers for their own benefit.

71.     Defendants retained the benefits that they received as a result of the Transfers under circumstances that make retention of these benefits inequitable.  Specifically, these Transfers resulted from the gross misconduct of the Culpable Insiders in looting USACM for the benefit of themselves and using USACM as their personal "piggy bank."  The Defendants knew or should have known of much of the Culpable Insiders' misconduct, including: (a) that the Culpable Insiders routinely breached fiduciary duties owed to USACM and its creditors; (b) that the Culpable Insiders failed to observe corporate formalities; and (c) that the Culpable Insiders caused USACM to enter into transactions that were not arms-length transactions.

## SEVENTH CAUSE OF ACTION
### (Money Had and Received)

72.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

73.     The Defendants have received money from the Transfers.

74.     The Trust is rightfully entitled to the money.  The Transfers were merely part of the Culpable Insiders' systematic abuse of USACM.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                    Page -- 15

75.     In good conscience and equity, the Defendants have no right to maintain any money that they received in the Transfers.

## VI.     PRAYER FOR RELIEF

WHEREFORE, the Trust respectfully requests that the Court enter judgment as follows:

(a)   Avoiding each of Transfers;

(b)   Directing the Defendants to repay the value of the Transfers to the Trust;

(c)   Directing the Defendants to pay to the Trust all pre-judgment and post-judgment interest on the Transfers (respectively) at the maximum rate allowable by law and/or equity;

(d)   Directing the Defendants to pay the value of all benefits they unjustly received to the Trust;

(e)   Directing the Defendants to pay the Trust's costs of court;

(f)   Directing the Defendants to pay treble damages and reasonable attorney's fees to the Trust in accordance with NRS 41.580; and

(g)   Awarding the Trust such other relief that this Court deems just and proper.

Dated:  April 11, 2008.

**DIAMOND MCCARTHY LLP**                                  **LEWIS AND ROCA LLP**

By:   _/s/ Erin E. Jones_                                          By:   _/s/ Rob Charles_
Allan B. Diamond, TX 05801800 (pro hac vice)      Susan M. Freeman, AZ 4199 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)         Rob Charles, NV 6593
Erin E. Jones, TX 24032478 (pro hac vice)            3993 Howard Hughes Parkway, Suite 600
Elisaveta Dolghih, TX 24043355                         Las Vegas, Nevada  89169-5996
909 Fannin, Suite 1500                                     (702) 949-8320 (telephone)
Houston, Texas 77010                                     (702) 949-8321 (facsimile)
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel for*                            *Counsel for USACM Liquidating Trust*
*USACM Liquidating Trust*

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**             **Page -- 16**