E-filed on 4/11/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | Judge Linda B. Riegle |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |
| USACM LIQUIDATING TRUST<br><br>Plaintiff,<br><br>v.<br><br>HOMES FOR AMERICA HOLDINGS, INC.; HFA CLEAR LAKE, LLC; ONE POINT STREET, INC.; and MEDITERRANEE HFA, LLC F/K/A HFAH-MONACO, LLC<br><br>Defendants. | Adversary No. 08-___<br><br>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**<br><br>Hearing Date:   n/a<br>Hearing Time:  n/a |

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 1**

Plaintiff USACM Liquidating Trust (the "Trust"), as successor to USA Commercial Mortgage Company, hereby complains as follows:

## I.    NATURE OF THIS ACTION

1.    In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders"). Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank," as well as other entities in which they stood to reap substantial personal profits.

2.    In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order:  (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties.  In this adversary proceeding, the Trust seeks to recover $2.9 million of funds misappropriated from USACM and fraudulently transferred to Defendants.

## II.    JURISDICTION / VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

5.    This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6.    All of the Defendants are subject to personal jurisdiction in this Court.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 2**

7.    This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

### III.    PARTIES

**A.    PLAINTIFF**

8.    Plaintiff Trust was created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Bankruptcy Case No. 06-10725 (Docket No. 1799). The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007. The Joint Plan expressly retained USACM's causes of action for enforcement by the Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B). The Joint Plan also transferred certain causes of action belonging to USA Capital First Trust Deed Fund, LLC to the Trust. The Trust, therefore, has standing to bring this action against the Defendants. The Trust is a liquidating trust organized under Nevada law. The Trust's beneficiaries are the holders of allowed unsecured claims against USACM. Geoffrey L. Berman serves as the trustee of the Trust and may be served through undersigned counsel.

**B.    DEFENDANTS**

9.    Defendant Homes for America Holdings, Inc. ("HFAH") is a Nevada corporation with its principal place of business in the State of New York at 86 Main Street, 2nd Floor, Yonkers, New York 10701. Defendant HFAH can be served through its registered agent, Paracorp Incorporated, at, 318 N. Carson Street, Suite 208, Carson City, California 89701.

10.    Defendant HFAH Clear Lake, LLC ("HFAH Clear Lake") is a Florida limited liability company with its principal place of business in the State of New York at 86 Main Street, 2nd Floor, Yonkers, New York 10701. Defendant HFAH Clear Lake can be served through its registered agent, Robert M. Kohn, at 86 Main Street, 2nd Floor, Yonkers, New York 10701.

11.     Defendant One Point Street, Inc. ("One Point Street") is a Delaware corporation with, upon information and belief, its principal place of business in the State of New York at 86 Main Street, 2nd Floor, Yonkers, New York 10701.  Defendant One Point Street can be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

12.     Defendant Mediterranee-HFAH, LLC f/k/a HFAH-Monaco, LLC ("HFAH Monaco") is a Florida limited liability company with its principal place of business in the State of New York at 86 Main Street, 2nd Floor, Yonkers, New York 10701.  Defendant HFAH Monaco can be served through its registered agent, Robert M. Kohn, at 86 Main Street, 2nd Floor, Yonkers, New York 10701.

13.     HFAH, Clear Lake, and One Point Street, HFAH Monaco shall be collectively referred to herein as the "Defendants."

## IV.    FACTUAL ALLEGATIONS

### A.    BACKGROUND OF USACM AND ITS DEMISE

14.     In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders.  Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM.  As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001, if not earlier.  Eventually USACM (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

15.     USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers;

and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors.  USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

16.    A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders.  Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate development entities, and technology companies.  The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities.  In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest.   In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

17.    It was completely adverse to USACM's interests for the Culpable Insiders to misappropriate USACM's funds for the benefit of USAIP.  USACM owed no obligation, and received no benefit for the money provided to USAIP and/or on its behalf. The Culpable Insiders did not charge and/or collect interest on any of these transfers of USACM's funds, thereby precluding USACM from using this money in legitimate investments.  In addition, the Culpable Insiders rarely repaid transfers of USACM's funds for USAIP's benefit.  In the aggregate, USACM transferred at least $58 million to USAIP to fund USAIP's investments and pay its obligations.[1]

---

[1] The $58 million obligation is in part or in whole reflected in the note between USACM and USAIP dated May 15, 2006. The Bankruptcy Court approved the note by order dated July 24, 2006.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 5**

Prior to the Petition Date, USAIP's obligation to repay USACM was undocumented and appeared only as an enormous intercompany receivable to USACM.  In at least some instances, the Bankruptcy Court has already found that USACM did not receive reasonably equivalent value when it transferred funds to USAIP in exchange for incremental increases to this intercompany receivable.  USAIP's failure to repay such transfers and its ultimate bankruptcy has prevented any possibility of USACM fully recovering on such obligations.

18.    In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation.  Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans.  These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities.  In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

19.    Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers.  USACM did not receive any benefit from making these "pre-payments" of interest and principal.  Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

20.    The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. USACM frequently made unsecured, interest-free "advances" directly to the

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                **Page -- 6**

Culpable Insiders.  In other instances, the Culpable Insiders misappropriated USACM funds to pay for professional services rendered solely for the benefit of the Culpable Insiders and/or one of their outside business ventures.

21.     Ultimately, USACM lost tens of millions of dollars through the myriad of ways in which the Culpable Insiders' systematically misappropriated USACM funds.[2]  Additionally, the Culpable Insiders also systematically looted DTDF to fund USAIP and its affiliated entities.  Approximately $55 million was taken from DTDF and sent to USAIP and related entities, either directly or indirectly through two sham companies — 10-90, Inc. ("10-90") and Mountain Vista, Inc.

**B.     DEFENDANTS' DEALINGS WITH USACM AND USAIP**

22.     HFAH is a holding company for dozens of real estate projects, including without limitation, Clear Lake and HFAH Monaco.  Generally, HFAH provides a variety of corporate services to the entities under its umbrella, including maintaining records and providing accounting, architectural, legal, and other services.

23.     USACM began originating loans to HFAH and/or affiliated entities in the mid to late 1990s.  Over time, USACM originated more than a dozen loans totaling nearly $100 million to HFAH and/or affiliated entities in Texas, Florida, Connecticut, and New York.

24.     In several instances, these loans were not properly documented.  For example, no loan documents were executed for the approximately $5 million loan that USACM originated to

---

[2] A more detailed discussion of the fraudulent scheme leading to USACM's demise and bankruptcy may be found in the USACM Liquidating Trust's Complaint Against Deloitte & Touche, LLP and Victoria Loob.  *See* Docket No. 1 in Cause No. 2:08-cv-00461-PMP-PAL, pending in the United States District Court, District of Nevada, Las Vegas Division.

HFAH Asylum, LLC in November 2004.  As of the end of 2005, more than $40 million in undocumented loans and other advances had been made to HFAH and/or its affiliated entities.

25.    Several million dollars of undocumented loans and/or other advances were made from DTDF to Colt Gateway, LLC, an entity in which HFAH and USAIP each held a substantial membership interest.  These transfers violated provisions in DTDF's prospectus that expressly prohibited DTDF from making loans that were not secured by a recorded interest in real property.

26.    In addition to the failure to properly document loans and other "advances," there were many other irregularities in connection with the loans that USACM originated to HFAH and/or its affiliated entities.

27.    First, HFAH and its affiliated entities did not make monthly interest payments on loans originated by USACM.  Although some of the loans included "interest reserves" that would defer the need for HFAH to make interest payments until the "interest reserve" was completely depleted, these "interest reserves" were often exhausted prior to the loans being re-paid.  Further, HFAH or its affiliates failed to make the requisite interest payments after the interest reserves were exhausted.  Despite the lack of an interest payment from the HFAH entity,  upon information and belief, USACM caused interest to be "pre-paid" to the investors and where USACM had no legal obligation to do so.

28.    Second, the maturity date for several loans to HFAH affiliated entities reached maturity without a payoff or extension.  In many instances matured loans were extended months after their original maturity date.  In such situations, the Culpable Insiders caused the applicable loan extension agreements to be backdated to the original maturity date or the maturity dates in any previous loan extension agreements.  For example, USACM made one loan to HFAH Monaco with

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 8**

an original maturity date of December 19, 2004.  A loan extension agreement dated as of December 19, 2004 referenced the delinquent interest balance on the loan as of May 31, 2005, indicating that the loan extension agreement had not been executed until at least June 2005.

29.    Third, in at least one instance, USACM originated a new loan for the purpose of paying off a pre-existing loan that USACM had originated to the same real estate project. Specifically, in January 2003, USACM originated a loan to Beau Rivage Homes for America, LLC ("Beau Rivage") for the purpose of paying off a pre-existing loan that USACM had originated to Amalfi-Homes for America, LLC ("Amalfi").  The Culpable Insiders never disclosed the "re-financing" nature of this transaction to investors.  Nor was DTDF, the only investor in the original loan to Amalfi, repaid from the new loan proceeds.  Rather, the money funded to Beau Rivage for the purpose of repaying DTDF was sent as a loan funding directly to another entity affiliated with HFAH.

30.    Fourth, the loan proceeds of several loans originated by USACM were sent outside of third-party escrow.  For example, on January 3, 2003, USACM wired $3.2 million of the $8 million to be funded on the Beau Rivage loan to the Daniel G. Hayes IOLTA Account, even though Fidelity National Title Company was the third-party escrow used for the remainder of the loan funding.  Hayes, as an HFAH officer and director, was not an independent party to the transaction.

31.    Finally, in several instances, USAIP received "equity kickers" in exchange for USACM originating a loan to an entity affiliated with HFAH.  For example, USAIP received a 50% membership interest in Beau Rivage, solely because USACM had originated the loan to the project. USAIP did not provide any consideration to USACM, HFAH, and/or to Beau Rivage in exchange for the 50% interest in Beau Rivage and was not entitled to receive such membership interest.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                          **Page -- 9**

32.      Through this course of dealings, the Defendants knew or should have known: (a) of the distinction between USAIP and USACM; (b) that the Culpable Insiders routinely breached fiduciary duties owed to USACM and its creditors; (c) that the Culpable Insiders failed to observe corporate formalities; and (d) that the Culpable Insiders caused USACM to enter into transactions that were not arms-length transactions.

**C.      THE TRANSFERS FROM USACM TO DEFENDANTS**

**1.  The 2004 Clear Lake Transfer**

33.      The Culpable Insiders caused USACM to wire transfer $250,000 from USACM's corporate operating account to the general escrow account of Stewart Title Guaranty Company for the benefit of HFAH and/or HFAH Clear Lake on October 20, 2004; and (b) upon information and belief, Stewart Title Guaranty Company then transferred $250,000 of USACM's funds: (i) to HFAH for the benefit of HFAH Clear Lake, or (ii) directly to HFAH Clear Lake (collectively the "Clear Lake Transfer").  USACM had no obligation to transfer $250,000 to HFAH or HFAH Clear Lake, and USACM received no benefit in exchange for making the Clear Lake Transfer.

**2.  The 2005 Direct Transfer to HFAH**

34.      On December 22, 2005, the Culpable Insiders caused USACM to wire transfer $500,000 from USACM's operating account to HFAH (the "2005 Direct Transfer").  USACM had no obligation to transfer $500,000 to HFAH, and USACM received no benefit in exchange for making the 2005 Direct Transfer.

**3.  The 2005 Pass-Through Transfer to One Point Street**

35.      The Culpable Insiders caused: (a) USACM to wire transfer $950,000 from USACM's operating account to USAIP on September 23, 2005 and an additional $75,000 from the

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT          Page -- 10**

operating account to USAIP on September 26, 2005; and (b) USAIP to wire transfer $150,000 of USACM's funds to One Point Street on September 28, 2005 (collectively the "2005 Pass-Through Transfer"). Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $150,000 directly through USAIP to One Point Street.

36.     USACM had no obligation to transfer $150,000 to One Point Street, and USACM received no benefit in exchange for making the 2005 Pass-Through Transfer.

### 4.  The 2006 Direct Transfers to HFAH

37.     In early 2006, the Culpable Insiders caused USACM to wire transfer a total of $500,000 from USACM's operating account to HFAH in two separate wire transfers (collectively, the "2006 Direct Transfers").

38.     On January 31, 2006, the Culpable Insiders caused USACM to wire transfer $250,000 from USACM's operating account to HFAH.  On February 2, 2006, HFAH transferred $250,000 to HFAH Monaco.

39.     On February 8, 2006, the Culpable Insiders caused USACM to wire transfer $250,000 from USACM's operating account to HFAH.  On February 13, 2006, HFAH transferred $250,000 to HFAH Monaco.

40.     USACM had no obligation to make either of the $250,000 wire transfers to HFAH and USACM received no benefit in exchange for making the 2006 Direct Transfers.

### 5.  The 2006 Pass-Through Transfers

41.     Virtually on the eve of USACM's bankruptcy filing, the Culpable Insiders directed a series of wire transfers from USACM's operating account to USAIP to HFAH that totaled $1.5 million (collectively, the "2006 Pass-Through Transfers").

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>                    **Page -- 11**

42.     Specifically, the Culpable Insiders caused: (a) USACM to wire transfer $6 million from its operating account to USAIP on March 8, 2006; and (b) USAIP to wire transfer $500,000 of USACM's funds to HFAH on March 9, 2006 pursuant to Milanowski's specific directions to simultaneously transfer those funds.  On the same day, HFAH transferred the $500,000 to HFAH Monaco.  Upon information and belief, the Culpable Insiders earmarked and transferred these funds with the purpose of sending $500,000 directly from USAIP to HFAH and/or HFAH Monaco.

43.     Once again, the Culpable Insiders caused: (a) USACM to wire transfer $500,000 from its operating account to USAIP on March 17, 2006; and (b) USAIP to wire transfer $500,000 of USACM's funds to HFAH.  Upon information and belief, the Culpable Insiders earmarked and transferred these funds with the purpose of sending $500,000 directly from USAIP to HFAH and/or HFAH Monaco.

44.     The Culpable Insiders caused: (a) USACM to wire transfer an additional $500,000 from its operating account to USAIP on March 27, 2006; and (b) USAIP to wire transfer $500,000 of USACM's funds to HFAH on March 28, 2006.  Upon information and belief, the Culpable Insiders earmarked and transferred these funds with the purpose of sending $500,000 directly from USAIP to HFAH and/or HFAH Monaco.

45.     In turn, on March 30, 2006, HFAH transferred $1,000,000 to HFAH Monaco.

46.     USACM had no obligation to transfer $1,500,000 to HFAH and/or HFAH Monaco, and USACM received no benefit in exchange for making the 2006 Pass-Through Transfers.

# V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(A))

47.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

48.    The 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers each constituted a transfer of an interest of the Debtor in property.

49.    The 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made within one year of the Petition Date.

50.    The 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made with the intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to on or after the date these transfers were made.

51.    Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trust asks this Court to avoid the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers.

## SECOND CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(B))

52.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

53.    The 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers each constituted a transfer of an interest of the Debtor in property.

54.    The 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made within one year of the Petition Date.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                **Page -- 13**

55.     The Debtor received less than a reasonably equivalent value in exchange for the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers.

56.     The Debtor was insolvent on the date the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made or became insolvent as a result of these transfers.

57.     As a result of the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers, the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

58.     As a result of the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers, the Debtor intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

59.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trust asks this Court to avoid the 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers.

### THIRD CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(a))

60.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

61.     The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers each constituted a transfer of an interest of the Debtor in property.

62.     The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made within the applicable four-year period under NRS 112.180(1)(a).

63.     On the date of the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers and on the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers pursuant to Nevada state law.

64.     The Culpable Insiders caused the Debtor to make the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

65.     Accordingly, the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers: (a) are fraudulent transfers under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

66.     Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers under applicable state law.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 15**

1
2

## FOURTH CAUSE OF ACTION
## (11 U.S.C. § 544 and NRS 112.180(1)(b))

3       67.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully

4   set forth herein.

5       68.     The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006

6   Direct Transfers, and 2006 Pass-Through Transfers each constitute a transfer of an interest of the

7

8   Debtor in property.

9       69.     The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006

10  Direct Transfers, and 2006 Pass-Through Transfers were made within the applicable four-year

11
12  period under NRS 112.180(1)(b).

13      70.     On the date of the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through

14  Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers and the Petition Date, there were

15
16  creditors with allowable unsecured claims who could have avoided the Clear Lake Transfer, 2005

17  Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through

18  Transfers pursuant to Nevada state law.

19      71.     The Debtor received less than a reasonably equivalent value in exchange for the

20  Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and

21
22  2006 Pass-Through Transfers.

23      72.     The Debtor was engaged or was about to engage in a business or a transaction for

24  which the remaining assets of the Debtor were unreasonably small in relation to the business or the

25
26  transaction.

73.     The Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

74.     The Debtor intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

75.     Accordingly, the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers (a) are fraudulent transfers under NRS 112.180(1)(b); and (b) may be recovered under NRS 112.220.

76.     Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers under applicable state law.

### FIFTH CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

77.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

78.     The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers are avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(a) and (b)) and/or 11 U.S.C. § 548 (a)(1)(A) and (B).

79.     The Trust may recover the value of the 2005 Direct Transfers and 2006 Direct Transfers directly from HFAH as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.  In the alternative, the Trust may recover the value of the 2005 Direct Transfers and the 2006 Direct Transfers from HFAH Monaco as an immediate or mediate transferee of the 2005

Direct Transfers and the 2006 Direct Transfers who took without good faith, without giving value, and/or with knowledge of the voidability of the transfers pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220.

80. The Trust may recover the value of the Clear Lake Transfer directly from HFAH as an initial transferee pursuant to NRS 112.220 and/or 11 U.S.C. § 550(a)(1). In the alternative, the Trust may recover the value of the Clear Lake Transfer from HFAH Clear Lake as an initial transferee pursuant to NRS 112.220 and/or 11 U.S.C. § 550(a)(1) and/or as an immediate or mediate transferee who took without good faith, without giving value, and/or with knowledge of the voidability of the Clear Lake Transfer pursuant to NRS 112.220 and/or 11 U.S.C. § 550(a)(2).

81. USAIP was merely a conduit through which USACM transferred funds to One Point Street. USAIP had no dominion over such funds. As such, the Trust may recover the value of the 2005 Pass-Through Transfer directly from One Point Street as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220. In the alternative, the Trust may recover the value of the 2005 Pass-Through Transfer from One Point Street pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 as an immediate or mediate transferee who took without good faith, without giving value, and/or with knowledge of the voidability of the transfers.

82. USAIP was merely a conduit through which USACM transferred funds to HFAH. USAIP had no dominion over such funds. As such, the Trust may recover the value of the 2006 Pass-Through Transfers directly from HFAH as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220. In the alternative, the Trust may recover the value of the 2006 Pass-Through Transfers from HFAH pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 as an

immediate or mediate transferee who took without good faith, without giving value, and/or with knowledge of the voidability of the transfers.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

83.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

84.    By making the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers, USACM conferred a benefit on HFAH Clear Lake, HFAH, One Point Street, and HFAH Monaco.

85.    HFAH Clear Lake, HFAH, One Point Street, and HFAH Monaco appreciated the benefit in that they: (a) received the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers; and (b) used the proceeds of the transfers as investments in affiliated entities and/or to re-pay their obligations.

86.    HFAH Clear Lake, HFAH, One Point Street, and HFAH Monaco retained the benefits that they received as a result of the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers under circumstances that make retention of these benefits inequitable.  Specifically, these transfers resulted from the gross misconduct of the Culpable Insiders in looting USACM for the benefit of themselves and using USACM as their personal "piggy bank."  The Defendants knew or should have known of much of the Culpable Insiders' misconduct, including: (a) that the Culpable Insiders routinely breached fiduciary duties owed to USACM and its creditors; (b) that the Culpable Insiders failed to observe

corporate formalities; and (c) that the Culpable Insiders caused USACM to enter into transactions that were not arms-length transactions.

## SEVENTH CAUSE OF ACTION
### (Money Had and Received)

87.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

88.     HFAH Clear Lake, HFAH, One Point Street, and HFAH Monaco have received money from the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers.

89.     The Trust is rightfully entitled to the money.  The Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers were made for USAIP's benefit and were merely part of the Culpable Insiders' systematic abuse of USACM.

90.     In good conscience and equity, HFAH Clear Lake, HFAH, One Point Street, and HFAH Monaco have no right to maintain any money that they received in the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers.

## EIGHTH CAUSE OF ACTION
### (NRS 41.580)

91.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

92.     In causing the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers to be made, the Culpable

Insiders took $2.9 million from USACM by theft and/or other offenses constituting a crime against property.

93.    Defendants received, possessed, and/or withheld all or a portion of the $2.9 million taken from USACM.

94.    Upon information and belief, Defendants received, possessed, and/or withheld all or a portion of the $2.9 million taken from USACM: (a) knowing that the Culpable Insiders misappropriated it from USACM by theft and/or other offense(s) that constitute a crime against property; and/or (b) under such circumstances as should have caused a reasonable person to know that the Culpable Insiders misappropriated it from USACM by theft and/or other offenses that constitute a crime against property.

95.    Accordingly, the Trust may recover treble damages from Defendants under NRS 41.580.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the Trust respectfully requests that the Court enter judgment as follows:

(a)    Avoiding each of the Clear Lake Transfer, 2005 Direct Transfer, 2005 Pass-Through Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers;

(b)    Directing HFAH to pay the value of the Clear Lake Transfer, 2005 Direct Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers to the Trust;

(c)    Directing Clear Lake to pay the value of the Clear Lake Transfer to the Trust;

(d)    Directing One Point Street to pay the value of the 2005 Pass-Through Transfer to the Trust;

(e)    Directing HFAH Monaco to pay the value of the 2006 Direct Transfers and the 2006 Pass-Through Transfers to the Trust;

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                    Page -- 21

(f)  Directing Defendants each to pay to the Trust all pre-judgment and post-judgment interest on the Clear Lake Transfer, 2005 Direct Transfer, 2006 Direct Transfers, and 2006 Pass-Through Transfers (respectively) at the maximum rate allowable by law and/or equity;

(g)  Directing Defendants to pay the Trust's costs of court;

(h)  Directing Defendants to pay treble damages and reasonable attorney's fees to the Trust in accordance with NRS 41.580; and

(i)  Awarding the Trust such other relief that this Court deems just and proper.

Dated:  April 11, 2008.

**DIAMOND MCCARTHY LLP**                          **LEWIS AND ROCA LLP**

By:  ___*/s/ Erin E. Jones*___                   By:  ___*/s/ Rob Charles*___
Allan B. Diamond, TX 05801800 (pro hac vice)     Susan M. Freeman, AZ 4199 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)       Rob Charles, NV 6593
Erin E. Jones, TX 24032478 (pro hac vice)        3993 Howard Hughes Parkway, Suite 600
Michael J. Yoder, TX 24056572 (pro hac vice)     Las Vegas, Nevada  89169-5996
909 Fannin, Suite 1500                           (702) 949-8320 (telephone)
Houston, Texas 77010                             (702) 949-8321 (facsimile)
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel for*                 *Counsel for USACM Liquidating Trust*
*USACM Liquidating Trust*