E-filed on 4/11/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email:  adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email:  emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                    Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>                    Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>                    Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                    Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>                    Debtor. | |
| Affects:<br>☐All Debtors<br>☒USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |
| USACM LIQUIDATING TRUST<br><br>                    Plaintiff,<br><br>          v.<br><br>EAGLE RANCH, LLC; EAGLE RANCH RESIDENTIAL, LLC; WILLOWBROOK RESIDENTIAL, LLC; BRENTWOOD 128, LLC; RAVENSWOOD APPLE VALLEY, LLC; ANTHONY MONACO; SUSAN K. MONACO; and MONACO DIVERSIFIED CORPORATION.<br><br>                    Defendants. | **Adversary No. 08-___**<br><br>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**<br><br>Hearing Date:   n/a<br>Hearing Time:  n/a |

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>                    **Page -- 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff USACM Liquidating Trust (the "Trust"), as successor to USA Commercial

Mortgage Company, hereby complains as follows:

## I.    NATURE OF THIS ACTION

1.    In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital

Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for

bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A.

Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable

Insiders").  Among other wrongful conduct, the Culpable Insiders systematically looted USACM

and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their

personal "piggy bank," as well as other entities in which they stood to reap substantial personal

profits.

2.    In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars

from USACM and DTDF in order:  (a) to fund the negative cash flow operations of USAIP and its

vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties.  In this

adversary proceeding, the Trust seeks to recover more than one million dollars misappropriated

from USACM and fraudulently transferred to Defendants and the unjust enrichment conferred upon

Defendants as a result of these and other misappropriations of USACM funds.

## II.    JURISDICTION / VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 2**

5.      This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6.      All of the Defendants are subject to personal jurisdiction in this Court.

7.      This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

### III.    PARTIES

**A.    PLAINTIFF**

8.      Plaintiff Trust was created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Bankruptcy Case No. 06-10725 (Docket No. 1799). The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007. The Joint Plan expressly retained USACM's causes of action for enforcement by the Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B). The Joint Plan also transferred certain causes of action belonging to USA Capital First Trust Deed Fund, LLC to the Trust. The Trust, therefore, has standing to bring this action against the Defendants. The Trust is a liquidating trust organized under Nevada law. The Trust's beneficiaries are the holders of allowed unsecured claims against USACM. Geoffrey L. Berman serves as the trustee of the Trust and may be served through undersigned counsel.

**B.    DEFENDANTS**

9.      Defendant Monaco Diversified Corporation ("Monaco Diversified") is a California corporation, now known as Andravida Corporation, with its principal place of business in the State of California at 42072 Fifth Street, Suite 201, Temecula, California 92593. Defendant Monaco Diversified can be served through its registered agent, Roy T. Codey, 42072 Fifth Street, Suite 201, Temecula, California 92593.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT          Page -- 3

10.     Defendant Anthony Monaco ("Anthony Monaco") is an individual residing in the State of California at 6612 Post Lane, Fontana, California 92336.  Defendant Anthony Monaco can be served by personal service at the address listed above or wherever he may be found.

11.     Defendant Susan K. Monaco ("Sue Monaco") is an individual residing in the State of California at 6612 Post Lane, Fontana, California 92336.  Defendant Sue Monaco can be served by personal service at the address listed above or wherever she may be found.

12.     Defendant Eagle Ranch Residential, LLC ("ERR") is a California limited liability company with its principal place of business formerly in the State of Nevada at 4484 South Pecos Road, Las Vegas, Nevada 89121.  Defendant ERR can be served through its registered agent, Leon Tuan, Stein & Lubin LLP, 600 Montgomery Street, 14th Floor, San Francisco, California 94111.

13.     Defendant Eagle Ranch, LLC ("Eagle Ranch") is a Nevada limited liability company with its principal place of business in the State of Nevada formerly at 4484 South Pecos Road, Las Vegas, Nevada  89121.  Defendant Eagle Ranch can be served through its registered agent, Victoria S. Loob, 4525 Sandhill Road, Las Vegas, Nevada 89121.

14.     Defendant Willowbrook Residential, LLC ("Willowbrook") is a California limited liability company with its principal place of business in the State of California at 9227 Haven Avenue, Suite 300, Rancho Cucamonga, California 91730.  Defendant Willowbrook can be served through its registered agent, Mike McGarrey, 9227 Haven Avenue, Suite 300, Rancho Cucamonga, California 91730.

15.     Defendant Brentwood 128, LLC ("Brentwood") is a California limited liability company with its principal place of business in the State of California at 28475 Front Street, Suite

D, Temecula, California 92590.  Defendant Brentwood can be served through its registered agent, David A. Fogg, 28475 Front Street, Suite D, Temecula, California 92592.

16.    Defendant Ravenswood Apple Valley, LLC ("Apple Valley") is a California limited liability company with its principal place of business in the State of California at 600 Montgomery Street, 14th Floor, San Francisco, California 94111.  Defendant Apple Valley can be served through its registered agent, Dave Fogg at 28475 Front Street, Suite D, Temecula, California 92592.

17.    Monaco Diversified, Anthony Monaco, Sue Monaco, ERR, Eagle Ranch, Willowbrook, Brentwood, and Apple Valley shall collectively be referred to herein as the "Defendants."

## IV.    FACTUAL ALLEGATIONS

### A.    BACKGROUND OF USACM AND ITS DEMISE

18.    In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders.  Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM.  As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001.  Eventually USACM (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

19.    USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors.  USACM earned revenue by charging various fees for

these services, including origination, servicing, and extension fees, although these fees often went uncollected.

20.    A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders.  Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate development entities, and technology companies.  The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities.  In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest.   In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

21.    It was completely adverse to USACM's interests for the Culpable Insiders to misappropriate USACM's funds for the benefit of USAIP.  USACM owed no obligation, and received no benefit for the money provided to USAIP and/or on its behalf. The Culpable Insiders did not charge and/or collect interest on any of these transfers of USACM's funds, thereby precluding USACM from using this money in legitimate investments.  In addition, the Culpable Insiders rarely repaid transfers of USACM's funds for USAIP's benefit.  In the aggregate, USACM transferred at least $58 million to USAIP to fund USAIP's investments and pay its obligations.[1] Prior to the Petition Date, USAIP's obligation to repay USACM was undocumented and appeared only as an enormous intercompany receivable to USACM.   In at least some instances, the

---

[1]  The $58 million obligation is in part or in whole reflected in the note between USACM and USAIP dated May 15, 2006. The Bankruptcy Court approved the note by order dated July 24, 2006.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 6**

1
2
3
4
5

Bankruptcy Court has already found that USACM did not receive reasonably equivalent value when it transferred funds to USAIP in exchange for incremental increases to this intercompany receivable. USAIP's failure to repay such transfers and its ultimate bankruptcy has prevented any possibility of USACM fully recovering on such obligations.

6
7
8
9
10
11
12
13
14
15
16
17

22. In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans. These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities. In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

18
19
20
21
22

23. Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers. USACM did not receive any benefit from making these "pre-payments" of interest and principal. Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

23
24
25
26

24. The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. USACM frequently made unsecured, interest-free "advances" directly to the Culpable Insiders. In other instances, the Culpable Insiders misappropriated USACM funds to pay

1    for professional services rendered solely for the benefit of the Culpable Insiders and/or one of their

2    outside business ventures.

3        25.    Ultimately, USACM lost tens of millions of dollars through the myriad of ways in

4    which the Culpable Insiders' systematically misappropriated USACM funds.[2]  Additionally, the

5    Culpable Insiders also systematically looted DTDF to fund USAIP and its affiliated entities.

6    Approximately $55 million was taken from DTDF and sent to USAIP and related entities, either

7    directly or indirectly through two sham companies — 10-90, Inc. ("10-90") and Mountain Vista,

8    Inc.

9

10

11   **B.    THE RELATIONSHIP BETWEEN THE CULPABLE INSIDERS AND THE**
     **DEFENDANTS**

12

13       26.    In the mid-1990s, USACM provided financing to Inco Homes Corp. ("Inco") for a

14   residential development within the Mesa Verde Specific Plan in Victorville, California known as the

15   Eagle Ranch project.  In 1997, a group of investors that included entities and/or trusts affiliated with

16   the Culpable Insiders acquired that property for development.  In December 1999, these investors

17   formed Eagle Ranch.  Eagle Ranch's initial manager was USA Commercial Real Estate Group, an

18   entity solely owned and managed by the Culpable Insiders.

19

20       27.    On August 28, 2000, the Culpable Insiders created ERR for the purpose of

21   developing the lots obtained by Eagle Ranch.  At the time of ERR's creation, Eagle Ranch

22   conveyed several lots to ERR as a capital contribution.  Anthony Monaco and Sue Monaco held a

23   collective fifty percent (50%) membership interest in ERR.  Eagle Ranch held the remaining fifty

24

25

26   ───────────────
     [2] A more detailed discussion of the fraudulent scheme leading to USACM's demise and bankruptcy may be found in the USACM
     Liquidating Trust's Complaint Against Deloitte & Touche, LLP and Victoria Loob.  *See* Docket No. 1 in Cause No. 2:08-cv-00461-
     PMP-PAL, pending in the United States District Court, District of Nevada, Las Vegas Division.

(50%) membership interest in ERR.  ERR's manager was USA Investors II, LLC, which in turn was managed by USAIP.

28.    Upon information and belief, ERR began developing the lots that it had received from Eagle Ranch in late 2000.  As these lots were built out, Eagle Ranch conveyed additional lots to ERR on June 28, 2001, June 3, 2002, December 23, 2002, and November 20, 2003 as additional capital contributions.

29.    Throughout this time period, the Culpable Insiders caused USACM to make regular advances to Eagle Ranch.  For example, the Culpable Insiders sent more than $2 million from USACM to Eagle Ranch in 2001 alone.  Additional transfers to Eagle Ranch are described herein. Upon information and belief, the funds that the Culpable Insiders misappropriated from USACM to fund Eagle Ranch were ultimately used to fund ERR's development activities.

30.    At least in part as a result of these advances, ERR successfully developed the underlying property.  As a result of their success, Anthony Monaco, Sue Monaco, and Monaco Diversified (collectively, the "Monaco Defendants") entered into a series of real estate joint ventures with the Culpable Insiders.  Typically, the membership interest in these entities was split evenly between the Monaco Defendants and USAIP.  For example, Anthony and Sue Monaco held a collective fifty percent (50%) membership interest in Willowbrook, as did USAIP.

31.    In June 2004, the Culpable Insiders and the Monaco Defendants formed Tanamera Homes, LLC ("Tanamera Homes") to act as a holding company for their real estate ventures. Monaco Diversified and USAIP each held a fifty percent (50%) membership interest in Tanamera Homes.  In turn, Tanamera Homes held one hundred percent membership interests in joint ventures

between the Monaco Defendants and the Culpable Insiders.  For example, Tanamera Homes held one hundred percent ownership interests in Brentwood and in Apple Valley.

32.    All of these joint venture entities functioned as a single homebuilding company doing business under the trade name of "Tanamera Homes."  As such, all of the entities shared common employees, including a common accounting department and CFO.  The company's accounting department routinely circulated funds between the various entities in order to make deposits for land acquisitions, to cover shortfalls in operational funding, to clean up intercompany receivables, to make distributions of profits to members, to repay loan obligations, and for other purposes.

33.    Over time, the Culpable Insiders repeatedly misappropriated USACM funds and transferred them to several of these entities, as described herein.  USACM had no obligation to transfer funds to any of these entities.  Nor did USACM receive any benefit from making these transfers as it did not stand to profit in any way from the underlying projects.  Moreover, these transfers were completely unsecured and in some cases interest free advances.

34.    These transfers of USACM's funds by the Culpable Insiders conferred a benefit on Defendants.  Upon information and belief, these transfers were used to aid in the acquisition of profitable real estate, to cover development shortfalls, and to make member distributions to the Monaco Defendants.  With the aid of these transfers, the Monaco Defendants received between $15 to $20 million over the course of their six year partnership with the Culpable Insiders.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## C.    THE TRANSFERS FROM USACM TO DEFENDANTS

### 1.    The Eagle Ranch Transfers

35.    In addition to the millions of dollars transferred to Eagle Ranch prior to April 13, 2002, the Culpable Insiders caused USACM to make the following transfers to Eagle Ranch (collectively, the "Eagle Ranch Transfers") from its operating account:

| DATE | AMOUNT |
|---|---|
| June 3, 2002 | $25,000.00 |
| December 31, 2002 | $6,000.00 |
| December 31, 2003 | $75,000.00 |
| January 5, 2004 | $45,000.00 |
| July 1, 2004 | $211,065.49 |
| TOTAL | $362,065.49 |

36.    USACM had no obligation to make any of the Eagle Ranch Transfers. Although the July 1, 2004 check was purportedly a refund for "overpayment," upon information and belief, Eagle Ranch had not previously overpaid the long-outstanding obligation that it owed to USACM. USACM had no obligation to make the Eagle Ranch Transfers. Nor did USACM receive any benefit from making any of the Eagle Ranch Transfers.

### 2.    The ERR Transfers

37.    The Culpable Insiders caused USACM to wire transfer: (a) $400,000 on June 18, 2002; and (b) $50,000 on December 6, 2002 to ERR (collectively, the "ERR Transfers") from its operating account.

38.    USACM had no obligation to transfer $450,000 to ERR, and USACM received no benefit in exchange for making the ERR Transfers.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 11**

### 3.    The Willowbrook Transfers

39.    The Culpable Insiders caused USACM to wire transfer: (a) $50,000 on June 26, 2002 and; (b) $500,000 on September 5, 2002 to Willowbrook (the "Willowbrook Transfers") from its operating account.    USACM had no obligation to transfer $550,000 to Willowbrook, and USACM received no benefit in exchange for making the Willowbrook Transfers.

### 4.    The Brentwood Transfer and the Apple Valley Transfer

40.    The Culpable Insiders caused: (a) USACM to transfer $225,000 to USAIP from its operating account on June 18, 2002, which amount was credited to USAIP's account on June 19, 2003; and (b) USAIP to wire transfer $25,000 of USACM's funds to Brentwood (collectively the "Brentwood Transfer") and $200,000 of USACM's funds to Apple Valley (collectively the "Apple Valley Transfer") on June 20, 2003.    Upon information and belief, the Culpable Insiders earmarked and transferred $225,000 to USAIP with the purpose of sending the money directly from USAIP to Brentwood and Apple Valley respectively.    USACM had no obligation to transfers funds to Brentwood and/or Apple Valley and USACM received no benefit in exchange for making the Brentwood Transfer and the Apple Valley Transfer.

41.    On June 23, 2003, Apple Valley wired $200,000 back to USAIP.    Then on June 24, 2003, USAIP wired $200,000 to Aware TM30850, LLC ("Aware") to exercise an option to acquire membership interests in Aware.    In exercising this option, USAIP acquired a one hundred percent membership interest in Aware.    Subsequently, USAIP gave a twenty-five (25%) membership interest to Anthony Monaco and Sue Monaco, collectively.    Ultimately, Anthony Monaco and Sue Monaco received millions of dollars as a result of their membership interest in Aware.

# V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(a))

42.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

43.    The Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer each constitute a transfer of an interest of the Debtor in property.

44.    The Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer were made within the applicable four-year period under NRS 112.180(a)(1).

45.    On the date of the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer, there were creditors with allowable unsecured claims who could have avoided the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer pursuant to Nevada state law.

46.    The Culpable Insider caused the Debtor to make the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer with the actual intent to hinder, delay, or defraud creditors of the Debtor.

47.    Accordingly, the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer: (a) are fraudulent transfers under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT          Page -- 13

48.    Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer under applicable state law.

## SECOND CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(b))

49.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

50.    The Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer each constitute a transfer of an interest of the Debtor in property.

51.    The Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer were made within the applicable four-year period under NRS 112.180(1)(b).

52.    On the date of the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer, there were creditors with allowable unsecured claims who could have avoided the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer pursuant to Nevada state law.

53.    The Debtor received less than a reasonably equivalent value in exchange for the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer.

54.    The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or the transaction.

55.    The Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

56.    The Debtor intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

57.    Accordingly, the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer (a) are fraudulent transfers under NRS 112.180(1)(b); and (b) may be recovered under NRS 112.220.

58.    Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer under applicable state law.

### THIRD CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

59.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

60.    The Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer are avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(a) and (b)).

61.    The Trust may recover the value of the Eagle Ranch Transfers directly from Eagle Ranch as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

62.    The Trust may recover the value of the ERR Transfers directly from ERR as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

63.     The Trust may recover the value of the Willowbrook Transfers directly from Willowbrook as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

64.     USAIP was merely a conduit through which USACM transferred funds to Brentwood.  USAIP had no dominion over such funds.  As such, the Trust may recover the value of the Brentwood Transfer directly from Brentwood as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.  In the alternative, the Trust may recover the value of the Brentwood Transfer from Brentwood pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 as an immediate or mediate transferee who took such transfer without good faith, without giving value, and/or with knowledge of the voidability of the Brentwood Transfer.

65.     USAIP was merely a conduit through which USACM transferred funds to Apple Valley.  USAIP had no dominion over such funds.  As such, the Trust may recover the value of the Apple Valley Transfer directly from Apple Valley as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.  In the alternative, the Trust may recover the value of the Apple Valley Transfer from Apple Valley pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 as an immediate or mediate transferee who took such transfer without good faith,  without giving value, and/or with knowledge of the voidability of the Apple Valley Transfer.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

66.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                    Page -- 16

67.    By making the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, Brentwood Transfer, and other transfers, the USACM conferred a benefit on Defendants.

68.    Defendants appreciated the benefit in that they received the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, Brentwood Transfer and other transfers, and used these funds to make deposits for land acquisitions, to cover shortfalls in operational funding, to clean up intercompany receivables, to make distributions of profits to members, to repay loan obligations, and for other purposes that made "Tanamera Homes" a profitable venture.  The Monaco Defendants ultimately received $15 million to $20 million as a result of these transfers from USACM.

69.    Defendants retained the benefits that they received under circumstances that make retention of these benefits inequitable.  Specifically, these transfers were made in furtherance of the Culpable Insiders' scheme to the benefit of the Defendants and to the detriment of USACM and its creditors.

## FIFTH CAUSE OF ACTION
### (Money Had and Received)

70.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

71.    Defendants received money from the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer.

72.    The Trust is rightfully entitled to the money.

73.     In good conscience and equity, Defendants have no right to maintain any money that it received in the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, the Trust respectfully requests that the Court enter judgment as follows:

(a)    Avoiding each of the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer;

(b)    Directing Eagle Ranch to pay the value of the Eagle Ranch Transfers; ERR to pay the value of the ERR Transfers to the Trust; Willowbrook to pay the value of the Willowbrook Transfers; Brentwood to pay the value of the Brentwood Transfer; and Apple Valley to pay the value of the Apple Valley Transfer to the Trust;

(c)    Directing the Defendants to pay the value of all benefits that they unjustly received (respectively) to the Trust;

(d)    Directing Defendants each to pay to the Trust all pre-judgment and post-judgment interest on the Eagle Ranch Transfers, ERR Transfers, Willowbrook Transfers, Apple Valley Transfer, and Brentwood Transfer (respectively) at the maximum rate allowable by law and/or equity;

(e)    Directing Defendants to pay the Trust's costs of court;

(f)    Awarding the Trust such other relief that this Court deems just and proper.

Dated:  April 11, 2008.

**DIAMOND MCCARTHY LLP**                    **LEWIS AND ROCA LLP**

By:  ____*/s/ Erin E. Jones*_____        By:  ____*/s/ Rob Charles*_____
Allan B. Diamond, TX 05801800 (pro hac vice)    Susan M. Freeman, AZ 4199 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)      Rob Charles, NV 6593
Erin E. Jones, TX 24032478 (pro hac vice)       3993 Howard Hughes Parkway, Suite 600
Michael J. Yoder, TX 24056572 (pro hac vice)    Las Vegas, Nevada  89169-5996
909 Fannin, Suite 1500                          (702) 949-8320 (telephone)
Houston, Texas 77010                            (702) 949-8321 (facsimile)
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel for*                *Counsel for USACM Liquidating Trust*
*USACM Liquidating Trust*

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 19**