E-filed on 4/11/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |
| USACM LIQUIDATING TRUST<br>            Plaintiff,<br>    v.<br>AMESBURYPORT CORPORATION<br>            Defendant. | **Adversary No. 08-___**<br><br>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**<br><br>Hearing Date:    n/a<br>Hearing Time:   n/a |

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    Page -- 1

Plaintiff USACM Liquidating Trust (the "Trust"), as successor to USA Commercial Mortgage Company, hereby complains as follows:

## I. NATURE OF THIS ACTION

1. In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders"). Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank," as well as other entities in which they stood to reap substantial personal profits.

2. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order: (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties. In this adversary proceeding, Plaintiff seeks to recover approximately $8.8 million that the Culpable Insiders misappropriated from USACM and transferred to Defendant as part of their scheme. In addition, Plaintiff seeks to recover the value of the unjust enrichment conferred upon Defendant as a result of the Culpable Insiders' misconduct.

## II. JURISDICTION / VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 2**

5. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6. The Defendant is subject to personal jurisdiction in this Court.

7. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

### III.   PARTIES

**A.   PLAINTIFF**

8. Plaintiff Trust was created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Bankruptcy Case No. 06-10725 (Docket No. 1799). The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007. The Joint Plan expressly retained USACM's causes of action for enforcement by the Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B). The Joint Plan also transferred certain causes of action belonging to USA Capital First Trust Deed Fund, LLC to the Trust. The Trust, therefore, has standing to bring this action against the Defendants. The Trust is a liquidating trust organized under Nevada law. The Trust's beneficiaries are the holders of allowed unsecured claims against USACM. Geoffrey L. Berman serves as the trustee of the Trust and may be served through undersigned counsel.

**B.   DEFENDANT**

9. Defendant Amesburyport Corporation ("Amesburyport") is a Massachusetts corporation with its principal place of business in the State of Massachusetts at 109 Old Stow Road, Concord, Massachusetts 01742. Defendant Amesburyport can be served through its registered agent, William Sullivan, at 60 Merrimac Street, Amesbury, Massachusetts 01913.

## IV.  FACTUAL ALLEGATIONS

### A.  BACKGROUND OF USACM AND ITS DEMISE

10. In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders. Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM. As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001, if not earlier. Eventually USACM (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

11. USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors. USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

12. A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders. Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate development entities, and technology companies. The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities. In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 4**

USAIP and the Culpable Insiders had an interest. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

13. It was completely adverse to USACM's interests for the Culpable Insiders to misappropriate USACM's funds for the benefit of USAIP. USACM owed no obligation, and received no benefit for the money provided to USAIP and/or on its behalf. The Culpable Insiders did not charge and/or collect interest on any of these transfers of USACM's funds, thereby precluding USACM from using this money in legitimate investments. In addition, the Culpable Insiders rarely repaid transfers of USACM's funds for USAIP's benefit. In the aggregate, USACM transferred at least $58 million to USAIP to fund USAIP's investments and pay its obligations.[1] Prior to the Petition Date, USAIP's obligation to repay USACM was undocumented and appeared only as an enormous intercompany receivable to USACM. In at least some instances, the Bankruptcy Court has already found that USACM did not receive reasonably equivalent value when it transferred funds to USAIP in exchange for incremental increases to this intercompany receivable. USAIP's failure to repay such transfers and its ultimate bankruptcy has prevented any possibility of USACM fully recovering on such obligations.

14. In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans. These payments were made to conceal delinquent and defaulted

---

[1] The $58 million obligation is in part or in whole reflected in the note between USACM and USAIP dated May 15, 2006. The Bankruptcy Court approved the note by order dated July 24, 2006.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 5**

loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities. In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

15. Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers. USACM did not receive any benefit from making these "pre-payments" of interest and principal. Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

16. The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. USACM frequently made unsecured, interest-free "advances" directly to the Culpable Insiders. In other instances, the Culpable Insiders misappropriated USACM funds to pay for professional services rendered solely for the benefit of the Culpable Insiders and/or one of their outside business ventures.

17. Ultimately, USACM lost tens of millions of dollars through the myriad of ways in which the Culpable Insiders' systematically misappropriated USACM funds.[2] Additionally, the Culpable Insiders also systematically looted DTDF to fund USAIP and its affiliated entities. Approximately $55 million was taken from DTDF and sent to USAIP and related entities, either directly or indirectly through two sham companies — 10-90, Inc. ("10-90") and Mountain Vista, Inc.

---

[2] A more detailed discussion of the fraudulent scheme leading to USACM's demise and bankruptcy may be found in the USACM Liquidating Trust's Complaint Against Deloitte & Touche, LLP and Victoria Loob. *See* Docket No. 1 in Cause No. 2:08-cv-00461-PMP-PAL, pending in the United States District Court, District of Nevada, Las Vegas Division.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**     **Page -- 6**

**B.  FUNDS WITHIN THE USACM COLLECTIONS TRUST ACCOUNT CONSTITUTE AN INTEREST OF THE DEBTOR IN PROPERTY**

18.  The Culpable Insiders commingled funds within the USACM Collections Trust Account (the "Collections Account"). Specifically, principal and interest payments made by borrowers on performing loans were used in conjunction with USACM's servicing fees, USACM operating funds, funds due to USACM from assignments, and investor funds to make interest payments to investors on non-performing and defaulted loans and for other improper purposes.

19.  Where funds were taken from the Collections Account, it is practically, if not wholly, impossible to clearly identify the source of these funds or otherwise trace the funds. Accordingly, the Joint Plan provides that certain funds[3] transferred out of the Collections Account are property of the USACM estate.

**C.  DEFENDANT'S DEALINGS WITH USACM, THE HATTERS POINT LOAN AND THE RELATED TRANSFERS**

20.  On December 18, 2002, USACM originated a loan to Defendant for a condominium conversion project in Amesbury, Massachusetts (the "Hatters Point Loan"). USACM's only contractual obligations in connection with the loan were as: (i) loan originator (or broker) and (ii) loan servicer for the lenders. As such, USACM had no obligation to transfer any of its own funds to Defendant. USACM was not an actual lender in the Hatters Point Loan, nor did it have any legal interest in the loan. Rather, DTDF and several investors were the only lenders in the loan and the only "Lender" identified in all of the loan documents, including the recorded deed(s) of trust. Thus, USACM had no obligation to transfer its own funds to the Defendant nor could

---

[3] Specifically, the Joint Plan provides that "Prepaid Interest" is an asset of the USACM estate.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**               **Page -- 7**

USACM receive any benefit from transferring its own funds to Defendant in connection with the loan, given its limited involvement with the Hatters Point Loan.

21. Nevertheless, the Culpable Insiders caused USACM to transfer $8,868,566.26 from the USACM Collections Trust Account for additional advances on the Hatters Point Loan. These funds were sent through Lawyers Title Insurance Corporation escrow account C0260299-015 (the "Third Party Escrow") to either Defendant or to other third parties, such as sub-contractors, on behalf of Defendant.

22. The Culpable Insiders caused USACM to make the following transfers from the Collections Trust Account to the Third Party Escrow ("Third Party Escrow Transfers"):

| DATE | AMOUNT |
|---|---|
| February 25, 2003 | $332,776.58 |
| April 2, 2003 | $256,470.69 |
| June 20, 2003 | $311,101.48 |
| August 4, 2004 | $329,094.64 |
| August 18, 2003 | $262,367.82 |
| August 27, 2003 | $360,864.70 |
| October 1, 2003 | $257,480.00 |
| November 6, 2003 | $649,269.22 |
| December 4, 2003 | $295,839.69 |
| January 5, 2004 | $496,624.27 |
| January 8, 2004 | $100,000.00 |
| January 23, 2004 | $400,000.00 |
| January 28, 2004 | $174,269.71 |
| February 11, 2004 | $367,377.87 |
| April 15, 2004 | $287,092.46 |
| April 26, 2004 | $404,786.70 |
| June 30, 2004 | $356,317.55 |
| July 16, 2004 | $339,925.84 |
| July 19, 2004 | $429,438.76 |
| August 4, 2004 | $361,154.56 |
| August 9, 2004 | $500,000.00 |
| August 20, 2004 | $214,111.26 |

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**　　　　　　　　**Page -- 8**

| | |
|---:|---:|
| October 18, 2004 | $369,142.43 |
| December 22, 2004 | $448,498.69 |
| January 3, 2005 | $309,561.34 |
| March 10, 2005 | $80,000.00 |
| May 12, 2005 | $100,000.00 |
| May 24, 2005 | $75,000.00 |
| TOTAL | $8,868,566.26 |

23. A portion of the $8,868,566.26 in funds sent to the Third Party Escrow were transferred to Defendant more than one year prior to the Petition Date (collectively, the "Early Transfers"), as follows:

| DATE | AMOUNT |
|---:|---:|
| March 7, 2003 | $64,905.13 |
| April 9, 2003 | $65,407.46 |
| May 8, 2003 | $100,077.62 |
| May 27, 2003 | $91,216.70 |
| June 18, 2003 | $68,726.89 |
| July 24, 2003 | $119,766.95 |
| August 27, 2003 | $79,922.11 |
| September 22, 2003 | $86,203.31 |
| October 27, 2003 | $118,465.69 |
| November 26, 2003 | $105,715.86 |
| January 21, 2004 | $99,800.43 |
| February 13, 2004 | $107,888.66 |
| March 8, 2004 | $98,485.90 |
| April 5, 2004 | $96,441.99 |
| May 4, 2004 | $118,751.58 |
| June 18, 2004 | $117,259.77 |
| July 7, 2004 | $95,744.58 |
| August 6, 2004 | $129,938.92 |
| September 15, 2004 | $122,152.19 |
| October 12, 2004 | $110,090.34 |
| November 12, 2004 | $114,320.56 |
| December 14, 2004 | $69,585.63 |
| December 22, 2004 | $128,234.48 |
| February 8, 2005 | $96,954.51 |
| March 22, 2005 | $80,000.00 |

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                               **Page -- 9**

| | |
|---|---|
| April 5, 2005 | $175,000.00 |
| TOTAL | $2,661,057.26 |

24. Two additional transfers were made from the Third Party Escrow to Defendant in May 2005 (collectively, the "May 2005 Transfers"):

| | |
|---|---|
| May 13, 2005 | $97,450 |
| May 31, 2005 | $74,325 |
| TOTAL | $171,775 |

25. USACM was never reimbursed for any of these transfers. USACM had no obligation to make the Early Transfers and May 2005 Transfers to Defendant and USACM received no benefit in exchange for making these transfers.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(A))

26. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

27. The May 2005 Transfers were of an interest of the Debtor in property.

28. The May 2005 Transfers were made within one year of the Petition Date.

29. The May 2005 Transfers were made with the intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to on or after the date these transfers were made.

30. Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trust asks this Court to avoid the May 2005 Transfers.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**                    **Page -- 10**

## SECOND CAUSE OF ACTION
## (11 U.S.C. § 548(a)(1)(B))

31. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

32. The May 2005 Transfers were of an interest of the Debtor in property.

33. The May 2005 Transfers were made within one year of the Petition Date.

34. The Debtor received less than a reasonably equivalent value in exchange for the May 2005 Transfers.

35. The Debtor was insolvent on the date the May 2005 Transfers were made or became insolvent as a result of these transfers.

36. As a result of the May 2005 Transfers, the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

37. As a result of the May 2005 Transfers, the Debtor intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

38. Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trust asks this Court to avoid the May 2005 Transfers.

## THIRD CAUSE OF ACTION
## (11 U.S.C. § 544 and NRS 112.180(1)(a))

39. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

40. The Early Transfers and the May 2005 Transfers were of an interest of the Debtor in property.

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          Page -- 11

41. The Early Transfers and the May 2005 Transfers were made within the applicable four-year period under NRS 112.180(1)(a).

42. On the date of the Early Transfers and the May 2005 Transfers and the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Early Transfers and the May 2005 Transfers pursuant to Nevada state law.

43. The Culpable Insiders caused the Debtor to make the Early Transfers and the May 2005 Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

44. Accordingly, the Early Transfers and the May 2005 Transfers (a) are fraudulent under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

45. Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Early Transfers and the May 2005 Transfers under applicable state law.

### FOURTH CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(b))

46. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

47. The Early Transfers and the May 2005 Transfers were of an interest of the Debtor in property.

48. The Early Transfers and the May 2005 Transfers were made within the applicable four-year period under NRS 112.180(1)(b).

49. On the date of the Early Transfers and the May 2005 Transfers, there were creditors with allowable unsecured claims who could have avoided the Early Transfers and the May 2005 Transfers pursuant to Nevada state law.

50. The Debtor received less than a reasonably equivalent value in exchange for the Early Transfers and the May 2005 Transfers.

51. The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or the transaction.

52. The Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

53. The Debtor intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

54. Accordingly, the Early Transfers and the May 2005 Transfers (a) are fraudulent under NRS 112.180(1)(b); and (b) may be recovered under NRS 112.220.

55. Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Early Transfers and the May 2005 Transfers under applicable state law.

### FIFTH CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

56. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

57. The May 2005 Transfers are avoidable under 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B).

58. The Early Transfers and the May 2005 Transfers are also avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(a) and/or NRS 112.180(1)(b)).

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**          **Page -- 13**

59. Lawyers Title Insurance Corporation was merely a conduit through which USACM transferred funds to Defendant through the Third Party Escrow. Lawyers Title Insurance Corporation had no dominion over such funds. Accordingly, the Trust may recover the value of the Early Transfers and the May 2005 Transfers directly from Defendant as an initial transferee of these transfers pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220. In the alternative, the Trust may recover the value of the Early Transfers and the May 2005 Transfers from Defendant as an immediate or mediate transferee who took without good faith, without giving value, and/or with knowledge of the voidability of the transfers pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220.

### SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

60. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

61. USACM conferred a benefit on Defendant by transferring $8,868,566.26 (the Third Party Escrow Transfers) to the Third Party Escrow.

62. Defendant appreciated the benefit in that: (i) Defendant received the Early Transfers and the May 2005 Transfers directly from the Third Party Escrow (ii) and Defendant knew or should have known that other disbursements were being made on its behalf to third parties.

63. Defendant retained the benefits that it received as a result of USACM having paid $8,868,566.26 to the Third Party Escrow under circumstances that make retention of these benefits inequitable. Specifically, these transfers resulted from the gross misconduct of the Culpable Insiders in looting USACM for the benefit of themselves and using USACM as their personal "piggy bank" and where USACM had no obligation to make and received no benefit from such transfers.

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>          **Page -- 14**

## SEVENTH CAUSE OF ACTION
### (Money Had and Received)

64. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

65. Defendant received money from the Early Transfers and the May 2005 Transfers.

66. The Trust is rightfully entitled to the money. The Early Transfers and the May 2005 Transfers were made for Defendant's benefit and were merely part of the Culpable Insiders' systematic abuse of USACM.

67. In good conscience and equity, Defendant has no right to maintain any money that it received from the Early Transfers and the May 2005 Transfers.

### VI.    PRAYER FOR RELIEF

WHEREFORE, the Trust respectfully requests that the Court enter judgment as follows:

(a) Avoiding the Early Transfers and the May 2005 Transfers;

(b) Directing Defendant to repay the value of the Early Transfers and the May 2005 Transfers to the Trust;

(c) Directing Defendant to pay to the Trust all pre- and post-judgment interest on the Early Transfers and the May 2005 Transfers at the maximum rate allowable by law and/or equity;

(d) Directing Defendant to pay the Trust up to $8,868,566.26 for the benefits that Defendant unjustly received;

(e) Directing Defendant to pay the Trust's costs of court; and

(f) Awarding the Trust such other relief that this Court deems just and proper.

Dated: April 11, 2008.

| DIAMOND MCCARTHY LLP | LEWIS AND ROCA LLP |
|---|---|
| By: */s/ Erin E. Jones* <br> Allan B. Diamond, TX 05801800 (pro hac vice) <br> Eric D. Madden, TX 24013079 (pro hac vice) <br> Erin E. Jones, TX 24032478 (pro hac vice) <br> Elisaveta Dolghih, TX 24043355 (pro hac vice) <br> 909 Fannin, Suite 1500 <br> Houston, Texas 77010 <br> (713) 333-5100 (telephone) <br> (713) 333-5199 (facsimile) <br> *Special Litigation Counsel for USACM Liquidating Trust* | By: */s/ Rob Charles* <br> Susan M. Freeman, AZ 4199 (pro hac vice) <br> Rob Charles, NV 6593 <br> 3993 Howard Hughes Parkway, Suite 600 <br> Las Vegas, Nevada 89169-5996 <br> (702) 949-8320 (telephone) <br> (702) 949-8321 (facsimile) <br> <br> *Counsel for USACM Liquidating Trust* |

**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**  **Page -- 16**