LEWIS
AND
ROCA
LLP
L A W Y E R S

E-Filed on 4/30/08

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

**Susan M. Freeman** AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
**Rob Charles** NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA Commercial Mortgage Company, | Case No. BK-S-06-10727-LBR |
| | Case No. BK-S-06-10728-LBR[1] |
| USA Capital Realty Advisors, LLC, | Case No. BK-S-06-10729-LBR[2] |
| | |
| USA Capital Diversified Trust Deed Fund, LLC, | CHAPTER 11 |
| | |
| USA Capital First Trust Deed Fund, LLC,[1] | Jointly Administered Under Case No. BK-S-06-10725 LBR |
| | |
| USA Securities, LLC,[2] | **USACM Liquidating Trust Quarterly** |
|                           Debtors. | **Report for Period Ending March,** |
| | **2008.** |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The USACM Liquidating Trust Quarterly Report by Geoffrey Berman, Trustee for period ending March 2008, is attached hereto. For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

---

[1] This bankruptcy case was closed on October 12, 2007.

[2] This bankruptcy case was closed on December 26, 2007.

1931173.1

LEWIS
AND
ROCA
LLP

L A W Y E R S

DATED:  April 30, 2008.

**LEWIS AND ROCA LLP**


By:  /s/ RC (#6593)
       Rob Charles, NV 6593
       *Counsel for USACM Liquidating Trust*

Proof of Service

Copy of the foregoing served via email on
Wednesday, April 30, 2008 to all parties
listed on the Post Effective Date Official
Service List on file with this Court

 /s/  Christine Laurel
Christine Laurel
Lewis and Roca LLP

1931173.1

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

**April 2008**

+.

USACM Liquidating Trust
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
Development Specialists, Inc.
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

Lewis and Roca LLP
Rob Charles
Susan M. Freeman
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating
Trust

238719.1

# TABLE OF CONTENTS

**Page**

I.    TRUST ADMINISTRATION ...................................................................... 1

    A.    Website ................................................................................................ 1

    B.    Oversight Committee .......................................................................... 2

    C.    Trust Staff .......................................................................................... 2

    D.    BMC Access to Court Docket .............................................................. 2

II.   PLAN OF REORGANIZATION ISSUES ................................................. 3

    A.    Confirmation Order Appeals ............................................................... 3

    B.    Compass' Complaint To Revoke Plan Confirmation ........................... 3

III.  USACM ISSUES ......................................................................................... 3

IV.   INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET
    DEFENDANTS .......................................................................................... 3

V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
    OTHER BANKRUPTCY PROCEEDINGS .............................................. 5

    A.    USAIP Chapter 11 Case ...................................................................... 5

        1.    Trustee ........................................................................................ 6

        2.    Appeal ........................................................................................ 6

        3.    Proofs of Claim .......................................................................... 6

        4.    Related Cases ............................................................................. 6

    B.    Insiders – Thomas Hantges and Joseph Milanowski ............................ 6

        1.    Hantges ...................................................................................... 6

        2.    Milanowski ................................................................................ 7

    C.    HMA Sales, LLC ................................................................................. 8

    D.    Salvatore Reale .................................................................................. 8

238719.

E.  JMK Investments.................................................................................. 8

F.  Tree Moss Partners, LLC ...................................................................... 9

VI.  COLLECTION OF TRUST ASSETS ............................................................ 9

A.  Reserves ................................................................................................. 9

B.  Colt Loan ............................................................................................... 9

C.  Compass Escrows .................................................................................. 9

D.  Interpleader ......................................................................................... 10

E.  Hantges Life Insurance ...................................................................... 10

VII.  RELATED COMPANY INVESTIGATIONS .............................................. 11

A.  USA Investors III, LLC ...................................................................... 11

B.  PerUSA, LLC ....................................................................................... 11

C.  Amblamo, LLC .................................................................................... 11

VIII.  PROFESSIONAL FEE APPLICATION OBJECTIONS ............................. 11

IX.  PROOFS OF CLAIM AND CLAIMS OBJECTIONS ................................. 11

A.  Overview ............................................................................................. 11

B.  Objections ........................................................................................... 12

C.  PBGC ................................................................................................... 14

D.  Contact Information ........................................................................... 15

E.  Objection Deadline ............................................................................ 15

F.  Claims For Stolen Principal .............................................................. 16

G.  Compass v. LPG ................................................................................. 17

H.  Disbursing Agent Agreement .......................................................... 17

X.  LOAN SERVICING ISSUES ....................................................................... 17

A.  USA Investors VI, LLC ....................................................................... 17

B.  Trust Loan Servicing - Placer Vineyards ........................................ 18

238719.

    C.      Compass Trust Loan Servicing – Collection of Prepaid Interest ......................... 21

    D.      USACM Loan Servicing ................................................................................. 21

XI.     SETTLEMENT WITH DTDF ................................................................................. 22

XII.    TRUST FINANCIAL STATEMENT ...................................................................... 23

238719.

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

### April 2008

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during December 2007 through March 2008 on:

- administration of the Trust;

- resolution of appeals of the Order Confirming the 'Debtors' Third Amended Plan of Reorganization,' as Modified Herein ("Confirmation Order" and "Plan") and a complaint to revoke the Confirmation Order;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- investigation and prosecution of causes of action against potential recovery targets;

- preservation and pursuit of insider assets through involuntary bankruptcy cases of USA Investment Partners, LLC ("USAIP"), Joseph Milanowski, and Thomas Hantges, and advocating the Trust's interests in related entities bankruptcy cases affecting Trust assets and loan servicing;

- collection of other assets;

- claims analysis and resolution of disputed claims; and

- loan servicing issues.

These and other topics are briefly described in this report, along with comments on the attached financial statement of the Trust as of March 31, 2008.[1]

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust's website address is:  http://usacmcucc.bmcgroup.com/default.aspx.  We invite your suggestions for content on the Trust's website.

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Oversight Committee.

238719.1

### B.    Oversight Committee

The Trust functions with an Oversight Committee created by the Plan and the Trust Agreement.  Charles Hainsworth, Donald Walker, James Bonfiglio, Michael Tucker, and Suzanne Nounna, are the members of the Oversight Committee.  The Oversight Committee met on February 1, 2008 to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues.  The next meeting of the Oversight Committee will be set shortly for sometime in May 2008.  Regular communication between the Trust and the Oversight Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff

The Trustee is employed by Development Specialists, Inc. ("DSI").[2]  The Trustee is using staff of DSI to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.  In addition, and as has previously been reported, the Trustee selected Rob Charles[3] and Susan M. Freeman[4] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel.  Other attorneys at that firm have been assisting the Trust as well, including John Hinderaker who has been directing claims litigation.[5]  Separate litigation counsel, Allan Diamond[6] and Bill Reid[7] of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

The Trust has retained Arthur Swicker, Swicker & Associates, Encino, California to prepare the Trust's annual tax return.

### D.    BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases.  While those dockets, and

---

[2] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[3] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[4] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[5] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369.

[6] Information about Mr. Diamond is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/adiamond.html.

[7] Information about Mr. Reid is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/wreid.html.

238719.1

the associated claim information, are available to the public for a fee through PACER, the Trust believes that the Court and creditors are better served by the Trust bearing that expense, for the time being.

## II.    PLAN OF REORGANIZATION ISSUES

### A.    Confirmation Order Appeals

The sole remaining appeal (by Debt Acquisition Company of America V, LLC ("DACA")) from the Confirmation Order, which was affirmed by the United States District Court, District of Nevada, is pending before the United States Court of Appeals for the Ninth Circuit. DACA has filed its opening brief and the Trust and USACM filed responsive briefs.

### B.    Compass' Complaint To Revoke Plan Confirmation

On July 7, 2007, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada) and Compass Financial Partners, LLC (Delaware) filed a Complaint for Conditional Revocation of Confirmation Order Under 11 U.S.C. § 1144 and Rescission of Asset Purchase Agreement in the Bankruptcy Court, Case No. 07-01105-lbr. The Complaint seeks to revoke the Confirmation Order. USA Capital First Trust Deed Fund, LLC ("FTDF") filed a motion to dismiss the complaint. Before the Court ruled on the motion, Compass dismissed FTDF from the action. Compass had not served the complaint on any defendant, but also dismissed the complaint against USA Capital Realty Advisors, LLC ("Realty"), and USA Securities, LLC ("Securities"). On February 1, 2008, Compass dismissed the complaint against USACM, which effectively resolves the matter with respect to the Trust.

## III.    USACM ISSUES

During the quarter, USACM continued to wind up its affairs and file monthly reports of those efforts with the bankruptcy court. USACM continues to hold certain reserves under the confirmed Plan, including amounts discussed in this report.

## IV.    INVESTIGATING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

As noted above, the Trust assumed the employment of the Diamond McCarthy law firm as special litigation counsel upon the Effective Date of the Plan. Diamond McCarthy has actively conducted formal and informal discovery of files, witnesses and transactions since its engagement in January 2007. The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors. In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to obtain payment for creditors. Diamond McCarthy is coordinating those efforts with others, including USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), the USAIP Trustee, and the

238719.1

Trustees for Hantges and Milanowski mentioned below.  Dozens of witnesses have been deposed or interviewed and many thousands of pages of documents have been reviewed.

The Trust has the benefit of a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing.  The two-year anniversary of the bankruptcy filing was April 13, 2008.  The Trust filed numerous causes of action before this deadline.  Lawsuits were filed against the following in early April 2008:

| | |
|---|---|
| Fertitta Enterprises, Inc. | Tanamera Resort Partners |
| K&S Properties | James Cioffi |
| Amesbury Port Corporation | Stan Fulton |
| Bingham McCutchen LLP | Michael Petersen (and the Michael Petersen Trust) |
| Kathryn Petersen (and Kathryn Petersen Trust) | Mary Petersen (and the Mary Petersen Family Trust) |
| Karen Petersen Tyndall (and the Karen Petersen Tyndall Trust) | JMK Consulting, Inc. |
| Phillips USA | Eagle Ranch Residential |
| Eagle Ranch, LLC | Brentwood 128, LLC |
| Willowbrook Residential, LLC | Anthony Monaco |
| Ravenswood Apple Valley, LLC | Monaco Diversified Corporation |
| Susan Monaco | HFA Clear Lake, LLC |
| Homes for America Holdings, Inc. | Mediterranee HFA, LLC f/ka/ HFAH-Monaco, LLC |
| One Point Street, Inc. | Ashby USA, LLC |
| Fiesta Development, Inc. | Random Developments, LLC |
| Richard K. Ashby | Deloitte & Touche |
| Wells Fargo Bank, N.A. | Robert A. Russell |
| Victoria Loob or Victoria Hessling | DER Invesco, LLC |

238719.1

Deborah E. Russell                         Boise/Gowan

Freeway 101                                BG/Investments, LLC

Copper Sage

The Trust is also currently prosecuting adversary proceedings against Salvatore Reale (see p. 7 below) and JMK Investments et al. (see p. 8 below).

The Trust entered into what are known as "tolling agreements" with a number of potential targets before the deadline for bringing action. In essence, a tolling agreement allows the Trust to take more time to investigate possible causes of action and hopefully negotiate settlement of any claims against the potential targets before filing suit. The relevant limitations period is tolled during the pendency of the tolling agreement. For confidentiality and other reasons, to encourage settlement and to protect potential targets about whom the Trust may not have sufficient information to bring an action at this time, the Trust is not disclosing the identity of the persons and entities with whom it has entered into tolling agreements except for a few such agreements, filed with the Court.

After careful analysis of USACM's books and records, the Trust made demand upon numerous recipients of certain pre-petition transfers over $5,000 that the Trustee believed to be preferential or fraudulent in nature. Such demands yielded cash payments or the withdrawal of claims against the estate in an amount approximating $80,000. For those amounts large enough to warrant litigation, the Trust filed suit for the avoidance of the preferential or fraudulent pre-petition transfers against several defendants who failed to satisfactorily respond to the Trust's previous demands for the return of such transfers. Prior to the expiration of the avoidance action deadline, lawsuits were filed against:

Bob Stupak                                 David Rentz

Jerry Cadeski                              Shober Consulting

Greenwald, Pauly Foster & Miller           Gentile DePalma, Ltd.

## V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    USAIP Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 Million Note") to USACM for the benefit of creditors (including DTDF). Repayment of the $58 Million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned or in part by USAIP.[8] The Trust may also claim equitable ownership rights in

---

[8] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability

some assets titled in such entities and they may be a source of value to satisfy damages claims.  USAIP is a debtor in a bankruptcy case pending in Nevada (case #07-11821-LBR).

### 1.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the bankruptcy court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP.  Lisa M. Poulin was appointed as interim trustee. She selected Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the Court's approval.

### 2.    Appeal

The bankruptcy court entered an order for relief in the USAIP bankruptcy case after a short trial on the merits of the involuntary petition.  Ms. Poulin was named the permanent trustee in conjunction with the order for relief being entered.  Hantges and Milanowski appealed the order for relief to the United States District Court for the District of Nevada. The appeal was dismissed by a stipulation filed with the District Court on February 13, 2008.

### 3.    Proofs of Claim

On behalf of the Trust, Diamond McCarthy timely filed a proof of claim seeking $158,900,000 from the USAIP estate on behalf of the Trust.

### 4.    Related Cases

As Lisa Poulin identified USAIP subsidiaries in need of bankruptcy protection, bankruptcy cases were filed, she was appointed trustee, and the cases were jointly administered.  These include: USAIP; USA Investors VI, LLC, Case No. 07-12377; Tree Moss Partners, LL, Case No. 06-13758; HMA Sales, LLC, Case No. 07-12694; Capital Land Investors, LLC, Case No. 07-18099; Oak Mesa Investors, LLC, Case No. 08-10397; and Buffalo Land Development Co., LLC, Case No. 08-10398.

## B.    Insiders – Thomas Hantges and Joseph Milanowski

### 1.    Hantges

Due to the actions of the Trust, and the Administrator of the DTDF and other creditors, Thomas A. Hantges is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13163-lbr.  Michael Carmel was appointed trustee in the Hantges bankruptcy.

---

company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; and Buffalo Land Developments, LLC, a California limited liability company.

238719.1

The Trust timely filed a proof of claim against the estate of Thomas A. Hantges seeking the amount of $305,000,000.  Resolution of claims against the Hantges estate and the possibility of payment are months or years away.

On February 11, 2008, the Trust through Diamond McCarthy filed a complaint to determine non-dischargeability of debt against Hantges, assigned Adversary No. 08-01042-lbr.  Hantges has answered the complaint and the matter is in the early discovery stages.  Similar lawsuits were filed against Hantges by DTDF, the Kehl family, and the United States Pension Benefit Guaranty Corporation ("PBGC").

The Trust had provided limited post-petition financing to the Hantges estate pursuant to a loan approved by the bankruptcy court.  In an amendment, the Trust agreed to increase the amount of the loan to $2,000,000.  The purpose of the loan is to enable the Hantges trustee to collect assets owed to the Hantges creditors, including the Trust.  The loan is repayable as an expense of administration of the Hantges estate.  During the quarter, the Hantges trustee objected to Hantges' claimed exemptions and prosecuted a complaint to recover funds transferred by Hantges to a family trust, Adversary No. 08-01002 pending in the bankruptcy court.  The action includes other defendants who were sued for aiding fraudulent transfers and concealment of assets.

## 2.    Milanowski

Similarly, due to the actions of the Trust and DTDF and other creditors, Joseph Milanowski is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13162-lbr.  Again, the Trust, DTDF and others joined in bringing the involuntary petition against Milanowski.  The Bankruptcy Court entered an order for relief against Milanowski and appointed Ford Elsaesser as the trustee in the Milanowski case.  Milanowski has appealed the order for relief.  The Milanowski appeal is in the United States District Court for the District of Nevada, Case No. 3:07-cv-404.  This appeal has been reassigned to Judge Brian E. Sandoval.

The Trust filed a proof of claim through Diamond McCarthy against Milanowski for $305,000,000.  The claim includes Milanowski's guarantees of the debts of Placer County Land Speculators, LLC to the Placer 1 and Placer 2 Direct Lenders on the loans that the Trust is servicing.

The Trust through Diamond McCarthy filed a complaint in the bankruptcy court, Adv. No. 08-01093-lbr, to determine the dischargeability of Milanowski's debts to the Trust.  That complaint is in the early stages of discovery.  A scheduling conference is set for August 27, 2008.  Similar lawsuits were filed against Milanowski by DTDF, Aurora Investment L.P., the Kehl family, the PBGC, and BySynergy, LLC.

238719.1

### C.    HMA Sales, LLC

The Trust, through Lewis and Roca, filed a proof of claim against the HMA Sales, LLC estate in the amount of $4,832,123.96.  The chapter 11 trustee for HMA Sales (Lisa Poulin) confirmed a chapter 11 plan of reorganization providing for orderly liquidation of the estate.  The effective date of the trustee's plan was March 3, 2008.  The trustee for HMA Sales and the Trust will work out the trustee's concerns concerning the proof of claim filed by the Trust.  In that regard, the Trust and the trustee for HMA Sales agreed that the deadline for objections to the Trust's proof of claim would be extended so that the trustee could investigate the necessity of an objection and to give the parties time to reach an agreement.

### D.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust.  The adversary proceeding is Adv. No. 06-01251 pending in the Bankruptcy Court.  On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint.  The Trust originally sought to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million.  After further investigation, the Trust narrowed its claims to avoid and recover a $4 million transfer to or for the benefit of Mr. Reale.

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Reale for $4 million, plus an award of the Trust's taxable costs.  The Trust filed a motion seeking pre- and post-judgment interest, which motion will be heard by the Bankruptcy Court on May 8, 2008.  During the post-trial briefing, the Trust became aware that Reale is involved in a domestic relations case that may affect his ability to repay the judgment.  The Trust will attempt to satisfy the judgment through post-judgment collection efforts against Reale's assets, including assets that were frozen by a preliminary injunction entered by the Bankruptcy Court in October 2007.

### E.    JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).  The bankruptcy court considered the defendants' motion to dismiss after a hearing on December 5, 2007.  The court granted the Trust 15 days leave to file an amended complaint explaining the facts and legal arguments supporting the Trust's claims for relief.  The Trust's motion for leave to file a second amended complaint was granted by the bankruptcy court after a hearing on January 24, 2008.  The court scheduled a settlement conference for March 10, 2008 and trial for the week of August 5, 2008.  The March 10 settlement conference did not result in any settlement and therefore, the parties are in the midst of pre-trial discovery.

### F.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.

The Trust filed a proof of unsecured claim for $1,075,799.91 in the case.

The Trustee for Tree Moss is attempting to sell its property.  An order was entered on the docket on April 1, 2008 concerning sale of the Tree Moss property to Diamond Resorts Corporation, f/k/a Sunterra Corporation.

## VI.    COLLECTION OF TRUST ASSETS

### A.    Reserves

The Trust monitors certain reserves held by USACM through Mesirow Financial Interim Management, LLC ("MFIM").  These reserves are identified generally in Monthly Operating Reports filed by USACM, which are prepared by MFIM.  A portion of those reserves were recently released to the Trust in connection with the resolution of the substantial majority of the claims asserted by the Pension Benefit Guaranty Corporation ("PBGC") (see below for further information on the PBGC claims).

### B.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust as successor to USACM has continued to work with the lenders and borrower on the senior lien to obtain payment or a refinancing of the loan, payment of loan fees associated with the first loan, as well as payment of the $1 million second loan.  Specific proposals have been exchanged, but no agreement reached to date.

### C.    Compass Escrows

In connection with the Closing of the Asset Purchase Agreement dated December 8, 2006 ("Compass APA") with Compass USA SPE, LLC ("Compass") on February 16, 2006, certain escrows were established.  The first escrow agreement is for $1,250,000 with respect to Compass' asserted right to invoke an Individual Asset MAC (as defined in the Compass APA) under § 9.1(i).  USACM and the Trust dispute Compass' assertions.

The second escrow for $903,000 was established with respect to Compass' asserted right to assert a dollar for dollar reduction of the Commercial Mortgage Price (as described in § 2.3(i) of the Compass APA).  The Trust must proceed to Court to demonstrate that

Compass' rights to the Success Fees for the Franklin-Stratford Investments LLC and the I-40 Gateway West Loan were not impaired prior to the closing.

A third escrow of $412,666.45 was established and is self-liquidating either upon collections received by Compass or after the passage of time.

Because the Trust and Compass were unable to resolve their disputes, and because the deadline for collections from the self-liquidating escrow was approaching and Compass would not stipulate to extend the deadline, the Trust sued Compass in the bankruptcy court on April 29, 2008, adversary no. 08-01066-lbr. Republic Title Of Texas, Inc. was named as a defendant as escrow agent, but no responsive pleading has been requested from the title company at this point in time. The Trust and Compass have agreed to extend the deadline for Compass' answer to May 1, 2008 so that Compass could propose a constructive resolution to the dispute. Failing that constructive resolution, the Trust will litigate the matter to conclusion.

### D.    Interpleader

USACM had filed an interpleader, Adversary No. 06-1146, concerning sums held in the investors trust account before bankruptcy. The Trust negotiated with parties having an interest in the account concerning final resolution of it, which was eventually filed with the Court as the Stipulation Re: Interest on Claims, Awarding Fees and Costs in Interpleader Action (filed in the adversary case). As a result of the Stipulation, the Trust received the balance of the funds in the account, after payment to claimants, payment of the unclaimed funds into the clerk of the court for deposit in the registry account, specified amounts to the law firms of David W. Huston, PC and Schwartzer & McPherson. The deposit has been made in the interpleader account closed by USACM.

The bankruptcy court asked the Trust's counsel, as a courtesy, to provide the court with a status report on the unresolved claims in the interpleader action. The Trust did so on February 5, 2008. The parties to the adversary proceeding are now sorting out who is entitled to the amounts and loans at issue.

### E.    Hantges Life Insurance

Three life insurance policies on the life of Hantges were owned by USACM on the date of the filing of its bankruptcy petition. Milanowski changed the owner and beneficiary of the policies from USACM to USAIP after the date of the bankruptcy without court approval. The Trust requested that the USAIP Trustee return these policies, as the transfer may be avoided under Bankruptcy Code §§ 549 and 550(a). The Trust and the USAIP Trustee have agreed to a settlement, generally providing that the policies will be transferred to the Trust, which will reimburse the USAIP Trustee for premiums advanced. The proposed settlement will be considered by the bankruptcy court at a hearing in June 2008.

238719.1

## VII.    RELATED COMPANY INVESTIGATIONS

### A.    USA Investors III, LLC

USA Investors III, LLC is a limited liability company owning property in Phoenix, Arizona.  USACM is identified as the manager of the company in public filings.  The Trust is investigating USA Investors III to determine if it has assets or would otherwise provide value to the Trust, or conversely, if there are obligations that need to be addressed that were not resolved by confirmation of the plan of reorganization.

### B.    PerUSA, LLC

The Trustee is investigating the assets and liabilities of this entity.  USACM was apparently its manager.  The Trust is advised that MFIM has worked with its tax advisors and did prepare the 2006 tax returns and K-1's in conjunction with the preparation of the USACM tax returns.

### C.    Amblamo, LLC

The Trustee is investigating the assets and liabilities of this entity.  USACM was apparently the manager and MFIM has to date not provided any information concerning it.

## VIII.    PROFESSIONAL FEE APPLICATION OBJECTIONS

The Trust has received post-effective date billings from Mesirow, Ray, Quinney & Nebeker, Schwartzer & McPherson, and BMC Group as professionals previously retained by USACM but providing services on a post-effective date basis.  The Trust has privately expressed concerns with certain of these service providers with respect to the billings.  Some of the concerns have been resolved by fee reductions.  To the extent such concerns are not resolved, any disputes will need to be brought to the Bankruptcy Court for resolution.

## IX.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.    Overview

By about the Effective Date of the Plan, approximately 2,465 proofs of claim had been filed claiming:  $2,812,293.40 as administrative; $286,969,330.16 as secured; $4,479,076.12 as priority; and $453,310,042.10 as unsecured.  In the last 3 months, approximately 120 more claims were filed and claims were amended.  There are approximately 2,419 newly scheduled claims, comprised of, in the aggregate, $169,742 in newly scheduled priority and $40,439,356 in unsecured claims.

### B. Objections

To date, the Trust has filed:

- Objection to 1,738 claims filed as secured in the amount of $318,828,005.20

- Objection to 11 commission priority claims in the amount of $207,424.87;

- Objections to 124 other claims filed as priority in the amount of $18,172,906.66;

- Motion to reclassify three claims in the amount of $941,010.58;

- Objections to 69 "wrong Debtor" claims in the amount of $11,839,706.10;

- Objections to three claims not enforceable against USACM in the amount of $75,503,580.13;

- Objections to 165 claims for lack of documentation in the amount of $21,244,657.37;

- Objections to 27 claims on miscellaneous grounds in the amount of $40,973,036.64.

The vast majority of these objections have been sustained by the Court. A stipulation has been executed which provides for the disallowance of the Spectrum and Weddell proofs of claim as claims that are not enforceable against the Trust, or are duplicate claims in the approximate amount of $125,000,000.

A Motion for Summary Judgment Regarding (1) Responses to the USACM Trust's First Through Thirty-Third Omnibus Objection to Claims Asserting a Secured Status; (2) Responses to USACM Trust's First through Third Omnibus Objections to Claims Asserting a Priority Status; and (3) Newly Alleged Secured and Priority Claim [DE 4391] was filed on July 30, 2007. The motion sought to reclassify approximately 110 claims in the aggregate amount of over $17,500,000 as general unsecured claims. The motion came on for hearing on October 15, 2007. Orders sustaining the objections and granting the motion for summary judgment on approximately 95 claims were entered. Stipulations have been reached with seven other claimants. Hearings have been scheduled on the remaining claimants.

In addition, the Trustee has filed 482 objections to Direct Lenders claims in the amount of $33,424,883.00, principally on loans paid in full by the borrowers.

Further, as the Trust has received information from claimants, it has entered into stipulations for the allowance and disallowance of priority and unsecured claims.

238719.1

Conversely, some claimants have stipulated to either withdraw their claims or have them reclassified as unsecured claims upon discussion with the USACM Trust's counsel.

By late April 2008, the Trust will have filed omnibus objections related to the 31 loans that fully performed. The total value of the claims based upon investment in those loans is approximately $72,043,409.60.

The other direct lender claims relate to loans that (1) fully performed, but involve diverted principal; (2) partially performed; (3) are non-performing or still outstanding. The extent to which those loans perform and/or the direct lenders may be compensated from the sale of collateral securing the loans has a major impact on the amount of the claims. The Trustee is handling these claims on a loan by loan basis.

Not all of the claims objections can be resolved through motions. The Court has ordered that the Trust's objection to claim 1366 of Los Valles Land & Golf, LLC be consolidated with a related adversary proceeding filed by the Trust against Los Valles and its guarantor, Dan S. Palmer, Jr. Los Valles and Dan Palmer have yet to file answers to the adversary complaint. The Court has set a scheduling conference in the adversary proceeding for July 24, 2008.

The Trust objected to the proof of claim filed by Binford Medical Developers, LLC arising out of a Direct Loan in the maximum amount of $8,375, 000. Binford asserted an unsecured claim against USACM because USACM did not fund the last $925,000 of the Loan. Binford filed a proof of claim for $3,502,383. Pursuant to a proposed compromise between Compass (as the successor servicer) and Binford, Binford would be allowed an unsecured claim of $925,000. The Trust did not object to this proposed compromise, in large part as a concession to the Direct Lenders on the Binford Loan who have been waiting for payment for some time. The compromise was considered at a hearing on January 22, February 4 and February 14, 2008. The settlement thereafter was approved by the court as being effective.

Prior to the Trust becoming effective, USACM filed an objection to the proof of claim filed by Del and Ernestine Bunch, for in excess of $10 million. The objection was the subject of pre-confirmation proceedings where USACM indicated its principal objection was that Bunch had received certain payments in the 90 days before the bankruptcy case that could be avoided as preferences under Bankruptcy Code §§ 547 and 550. On November 6, 2007, the bankruptcy court granted the Trust's motion to be substituted as the real party in interest with respect to the objection.

On a related note, Bunch filed a motion to have the claim temporarily allowed for voting purposes in connection with confirmation of the Plan. The bankruptcy court denied this motion and Bunch filed an appeal on January 26, 2007. The appellees elected to have the appeal heard by the United States District Court for the District of Nevada in a filing on February 2, 2007. The appeal was transferred by the Bankruptcy Appellate Panel for the

13

238719.1

Ninth Circuit to the District Court on April 5, 2007. The District Court has yet to open a file and the appeal has been in limbo.

The Trust did not file a preference action against Bunch, and the time to do so has expired, so these issues can now be resolved by agreement. The Trust decided not to file a preference action for various reasons that balance the merits of claims and defenses and the cost of litigation.

The Trust has filed objections to larger non-direct lenders' proofs of claim. For example, the Trust filed a motion for summary judgment to classify the claim of Pecos Professional Park Limited Partnership as an insider Class A-7 claim on October 29, 2007. After a hearing the bankruptcy court found that there were issues which required further consideration, including whether Dr. Lucius Blanchard, who filed an objection to the motion, had standing to do so. Neither the Hantges nor Milanowski trustees opposed the motion for summary judgment.

### C.    PBGC

The Pension Benefit Guaranty Corporation filed amended claim Nos. 791, 793 and 794. The amended claims are an administrative claim of $112,572 and other smaller amounts aggregating to $120,879 (Claim No. 791); an administrative claim of $1,211,242 under alternative theories (Claim No. 793); and an unsecured claim of $1,700,624 (Claim No. 794). The Trust hired special counsel at Foley & Lardner LLP to represent the interests of the Trust in the objections to these claims. The Trustee and the PBGC negotiated and reached a settlement agreement that was approved by the court on April 4, 2008. In substance, the settlement provided:

> ➢ PBGC's Amended Claim No. 794 is allowed as an unsecured, non-priority claim against the estate of USACM in the amount of $1,000,000.00 (the "Allowed Unsecured Claim"). Other than the Allowed Unsecured Claim or as set forth below, the PBGC releases, waives and forever discharges any and all other unsecured claims that it may possess against USACM's estate.

> ➢ PBGC's Amended Claim No. 793 is allowed as an administrative claim, pursuant to § 503(b) of the Bankruptcy Code, in the amount of $100,000.00 (the "Allowed Administrative Claim"). Other than the Allowed Administrative Claim or as set forth below, the PBGC releases, waives and forever discharges any and all other administrative or priority claims that it may possess against (a) USACM's estate, (b) the estate of any of the other four jointly administered Debtors identified in the caption above, and (c) any other estates of businesses related to USACM including, but not limited to, USA Investors VI, LLC ("Investors VI"), HMA Sales, LLC, USAIP, and Tree Moss Partners, LLC (collectively, the "USA Capital Estates"). This resulted in a distribution from the Investors VI estate to the Trust.

14

> The parties did not resolve the claim pursuant to 29 U.S.C. § 1306(a)(7) (the "Termination Premium Claim"), which was included in PBGC's Amended Claim No. 791, pursuant to this Order. The PBGC's rights with respect to the Termination Premium Claim, including its rights to argue that the Termination Premium Claim is entitled to administrative or priority treatment, and the Trust's rights to oppose the amount or priority of the Termination Premium Claim are expressly preserved. The court heard oral argument on the Termination Premium Claim on April 17, 2008 and sustained the Trustee's position.

> USACM agreed to maintain a reserve of $150,000 for the Termination Premium Claim pending the court's decision on the allowance of disallowance of such claim. All other reserves for the Amended Claims have been released by USACM to the Trust. Any of the USA Capital Estates may also release any reserves created for claims asserted by the PBGC against such estates.

> The order approving the stipulation shall have no impact on any claims that the PBGC has asserted or may possess against Hantges or Milanowski in their respective individual capacities, whether in their personal bankruptcy cases or otherwise.

### D. Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

Sierra Consulting Group
Brant Fylling
E-mail:  USACMTRUST@sierracgllc.com
Telephone 602-424-7020

 For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com/default.aspx.  You may send an e-mail on a general inquiry to:  USAcommittee@lrlaw.com.

### E. Objection Deadline

The Trust has filed numerous claims objections and succeeded to objections previously filed by USACM.  The Trust has from time to time sought extensions of the deadline to object to claims to further analyze them.  The current deadline for claims objections is June 12, 2008.  The Trust has requested an extension of this deadline to October 10, 2008.

As noted above, the Trust reviewed the thousands of proofs of claim filed with the Court to determine those which appeared to be filed by Direct Lenders.  In turn, each Direct

238719.1

Lender's claim was analyzed to see what direct loan or loans it arose out of. The Trust's intention is to take each group of Direct Lender claims on a loan-by-loan basis, determine if the claims are valid, and in what amount, and then to advise all Direct Lenders who filed proofs of claim with respect to that loan of the Trust's recommendation. This approach is consistent with the alternative dispute resolution mechanism implemented for Direct Lenders by confirmation of the Plan, which in general requires personal consultation by the Trust and the affected Direct Lenders who disagree with the Trust's position, as well as mediation.

Numerous claimants have called the Trust asking when the Trust will have concluded its examination of claims. In general, the claims will not be resolved until the last direct loan has been paid or otherwise resolved. This is because there are proofs of claim filed by Direct Lenders in all of the loans that USACM serviced. However, as the pool of unresolved loans becomes smaller, it may be possible to estimate the claims that might be allowed with respect to the unresolved loans. That process will, nevertheless, take many months.

### F.    Claims For Stolen Principal

Numerous Direct Lenders invested in loans where the pre-bankruptcy management of USACM diverted or stole the principal repaid by the borrower, rather than pay the Direct Lenders. The sums owed to the Direct Lenders are scheduled and those amounts are deemed claims against the Trust. Due to the frequency of Direct Lender inquiries as to the status of these loans, here again is the list of Loans where all or part of the principal was diverted, as determined by MFIM:

|  | Dates Received | Principal Owed to Direct Lenders |
|---|---|---|
| Bay Pompano Beach | 12/1/05 - 3/20/06 | $ 7,875,857.57 |
| Beastar, LLC | 1/24/06 - 1/27/06 | 3,030,489.19 |
| Beau Rivage Homes/$8,000,000 | 9/14/2005 | 326,381.03 |
| Cabernet | 1/13/2006 | 900,000.00 |
| Copper Sage Commerce Center, LLC | 1/30/06 - 3/17/06 | 1,388,773.19 |
| Del Valle Isleton | 2/23/06 - 3/24/06 | 380,000.00 |
| Freeway 101 | 2/22/2006 | 3,741,777.16 |
| Lake Helen Partners | 2/17/2006 | 19,589.72 |
| Oak Shores II | 2/27/2006 | 3,000,000.00 |
| Roam Development Group | 2/13/06 - 3/16/06 | 634,028.28 |
| Universal Hawaii | 1/13/2006 | 5,062,942.85 |
| **TOTAL** |  | $ 26,359,838.99 |

238719.1

### G.    Compass v. LPG

As indicated above, the Trust believes that the most efficient way to evaluate unsecured claims of Direct Lenders is after the applicable direct loan has been resolved, presumably through collection.  A number of disputes are in litigation among the plaintiffs in lawsuits pending in the District Court, as well as the Lender Protection Group (the "LPG") and Donna Cangelosi ("Cangelosi") (collectively referred to as "LPG") and Compass USA SPE, LLC, Compass Partners, LLC, and Compass Financial Partners, LLC ("Compass"), which have expanded to include certain named Direct Lenders and Compass' officers and lender.  That litigation is generally managed by the United States District Court for the District of Nevada under Case No. 2:07-cv-00892-RCJ-GWF.  The Trust is not a party to that litigation.  Nevertheless, the litigation does impact the Trust's ability to evaluate claims to the extent that the disputes between LPG and Compass concerning the right to collect direct loans, the willingness to compromise direct loans based upon short payoffs, and how proceeds should be distributed, have all contributed to delays in loan resolution. Those delays in turn will delay the Trust's evaluation of proofs of claim on those unresolved loans.

### H.    Disbursing Agent Agreement

The Trust and FTDF entered into a Stipulation Concerning Amended Disbursing Agent Agreement.  The Court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF if there is a distribution on the $7 million FTDF unsecured claim, now that entity is liquidated.  The bankruptcy court entered a final decree and order closing the FTDF case on October 12, 2007.  The Trust was advised that the final distribution to the members of the Fund, along with their respective K-1's for 2006, was released to the members.  In the transmittal to the Fund members, members were advised to address all further inquiries about the status of the Fund to the Trust.  The Trust is attempting to answer these questions as best it can in light of not having prepared the distribution or K-1 information returns.

## X.    LOAN SERVICING ISSUES

### A.    USA Investors VI, LLC

The owner of the Hotel Zoso f/k/a Hotel Marquis in Palm Springs – USA Investors VI, LLC ("Investors VI") – was controlled by USAIP, and is now under the control of Lisa Poulin, its trustee.

Pursuant to, among other things, a settlement with the Trust, USA Investors VI, LLC plan of reorganization filed by its chapter 11 trustee was confirmed on February 6, 2008 and Effective Date of the Plan was February 19, 2008.

17

Pursuant to the Plan of Reorganization confirmed by the Bankruptcy Court in *In re USA Investors VI, LLC*, Case No. 07-12377-lbr, the Trust received payment of the direct loan on Tuesday, February 19, 2008.  The payoff was as follows:

| | |
|---|---|
| Principal due | $13,500,000.00 |
| Interest due @ 2/19/08 | 7,318,168.32 |
| Total | $20,818,168.32 |

The payoff included an additional $2,000,000 as a compromise of the Trust's right to collect default interest, late charges and attorneys' fees as reflected in the Modification to Chapter 11 Trustee's Plan of Reorganization filed with the Bankruptcy Court at Docket No. 358 on December 26, 2007.

The Trust distributed the principal and interest due to Direct Lenders within a week of its receipt, pursuant to the applicable loan servicing agreements, the confirmed Plan of Reorganization, and the Bankruptcy Court's supplemental order in executing the Plan.

In addition, the Trust netted pre-paid interest due from Direct Lenders pursuant to the Plan.  That collection substantially reduced the balance of pre-paid interest owed generally by Direct Lenders.  Approximately $1,016,000 in pre-paid interest was netted.

The Trust has agreed with the Trustee for USA Investors VI, LLC to an extension of the deadline for the Trustee to object to the Trust's remaining unsecured claim.  Given the relatively modest distribution available to unsecured creditors as well as the terms of the confirmed plan, the Trust does not expect the negotiation to involve any extensive delay or expense.

The Trust's settlement with the PBGC also resolved the PBGC's claim in the USA Investors VI, LLC as well as other estates.

### B.    Trust Loan Servicing - Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust are as follows as of April 1, 2008:

| | Placer 1 | Placer 2 |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | $11,055,830.26 | $2,955,752.75 |
| Default Interest | $ 6,653,695.35 | $ 741,165.52 |
| Late Fees on Interest | $ 552,791.51 | $ 147,787.64 |
| Late Fee on Principal | $1,575,000.00 | $325,000.00 |
| **Total** | $51,337,317.13 | $10,669,705.91 |

The Trust, as servicer, reports monthly to the Direct Lenders.  Those reports are posted on the Trust's website.  After providing notice to the Direct Lenders on those loans, and with the responding Direct Lenders' consent, the Trust advanced $671,434.55 in July

18

2007 to pay the past due taxes secured by a lien on the Placer Vineyards property. This advance protected the Direct Lenders' collateral, and although the Trust will be reimbursed with interest at the prime rate before the Direct Lenders receive payment, the advance reduces the interest rate payable on those taxes.

The Placer County Board of Supervisors approved a development template for the total project, including the Placer County Land Speculators property. That approval allows the owners in the entire 5,230 acre project to continue development. The development group is Placer Vineyards Development Group, LLC. Ongoing development expense includes legal expense defending litigation brought against the development, engineering and other design, permitting and construction costs. The borrower lacks the ability to fund these expenses.

On Wednesday, September 26, 2007, the Trust, through the Trustee along with counsel, conducted two conference calls with Direct Lenders in the Placer 1 and 2 Loans. We advised the Direct Lenders that the Trust as servicer intended to negotiate with the Borrower through Lisa M. Poulin, Trustee of USAIP, as the majority member of the Borrower, for a bankruptcy filing by the Borrower and sale of the collateral at an auction. The most recent information available to the Trust was summarized in the call and suggests that the market value of the collateral may not exceed the principal and accrued (non-default) interest on the Placer 1 Loan.

The Borrower did not pay a capital call of $52,718.04 due to the developers for the first quarter of 2008. In addition, the Borrower is in default under a compromise agreement for prior capital calls.

The Trust hired Mark Gorton of McDonough, Holland & Allen P.C. in Sacramento, CA to represent the Trust in foreclosing the lien held by the Direct Lenders in the Placer 1 Loan. With Mr. Gorton's assistance, the Trustee retained Alliance Default Services, a division of Alliance Title, in Sacramento, California, to serve as the substitute trustee under the Placer 1 Deed of Trust. Significant expense was incurred in the foreclosure process. A Declaration of Default and Demand for Sale were recorded on December 3 and 4, 2007, the latter at Document No. 2007-0114236, Official Records of Placer County, California. Notice of the foreclosure sale was recorded and served, with the trustee's sale ultimately scheduled for April 9, 2008.

The foreclosure trustee requested copies of the loan servicing agreements for each of the more than 325 Direct Lenders in the Placer 1 loan. The USACM records provided to the Trust did not contain copies of all of those LSAs. The Trust requested written consent from each of the lenders for whom it did not have a copy of a signed LSA to the foreclosure. As a result, the Trust directed the foreclosure sale be continued to June 9, 2008. Shortly before the scheduled foreclosure sale, a group of Placer direct lenders notified the Trust and the substitute trustee under the Note that they denied consent to the

238719.1

foreclosure sale and disputed the Trust's authority to act on their behalf[9], claiming that if the foreclosure sale resulted in title to the property being held by the lenders, in their own names, they could be disadvantaged, this despite the fact that that is how all of the lenders acquired the loans.  Further, a number of the direct lenders in the Placer 2nd are trying to arrange a mechanism for Placer 2 lenders to participate in the property.  Then on April 8, 2008, the entity known as Placer Vineyards 2nd Lenders, LLC filed a chapter 11 bankruptcy petition in Reno, Nevada, for the purpose of stopping the foreclosure sale with the automatic stay of bankruptcy.  Although the Trust does not concede that the automatic stay applies, the bankruptcy filing will be addressed in due course.  The result of the Trust's decision to postpone the sale and the Placer Vineyards 2nd Lenders, LLC bankruptcy is that the foreclosure sale has been postponed, at least until June 9, 2008, if not longer.

The Trust has consulted with holders of several million dollars of the Placer 1 Loan. Their consensus is that a lawsuit should be filed in California in order to obtain the appointment of a receiver under the jurisdiction of the California state court for the property.  The receiver would be directed by the court to make recommendations concerning holding the property in the name of the lenders after foreclosure, whether to borrow money to pay carrying costs, whether to list the property for sale, and if an acceptable offer is obtained, whether to sell the property for the benefit of the lenders. The Trust and these lenders believe that such a receivership action, in which each of the direct lenders would be a party, entitled to notice and an opportunity to make positions known to the court, is a fair way to protect the lenders' interests in seeing repayment of the loan after foreclosure.

The Trust's counsel has asked the direct lenders to receive proposals for persons or companies who want to serve as the receiver.  Those proposals should be evaluated to be sure that the proposed receiver is competent, that any compensation is fair, and that decisions are made for the benefit of all lenders, and not for the benefit of any particular lender or groups of lenders.  The selection of the receiver, like other decisions of the receiver, would have to be approved by the court, with notice.  The Trust is not seeking to act as the receiver for the property.

The Trust will work with direct lenders to see to the dismissal of the LLC bankruptcy filing in Reno.  Assuming the LLC bankruptcy is dismissed, the Trust will proceed with foreclosure of the collateral for the Placer 1 Loan.  The Trust and direct lenders will file the lawsuit seeking the appointment of a receiver, ask you to accept service of that complaint so that you can be a participant in the lawsuit, and then turn over decision making for the property after foreclosure to the receiver.

---

[9] It should also be noted that a large number of the direct lenders who notified the Trust of their objection to the sale and claimed the Trust did not have the authority to act on their behalf had properly executed loan servicing agreements in favor of USACM (as servicer) and therefore the Trust, pursuant to the terms of the confirmed Plan of Reorganization.

238719.1

This will take a period of weeks or months.  We will update reports monthly in correspondence to the direct lenders involved in these loans and as developments arise on the Trust's website at: http://usacmcucc.bmcgroup.com.default.aspx.

### C.    Compass Trust Loan Servicing – Collection of Prepaid Interest

The Trust continues to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007.  Further, Compass collects from Direct Lenders and remits Prepaid Interest to the Trust pursuant to the Plan, including $156,471.33 on May 11, 2007.  The Trust is aware of collections from Borrowers on several notes since Compass last remitted recouped prepaid interest to the Trust.  The Trust has requested an accounting of the collected monies from Compass and to date continues to await that accounting, or transmittal of any additional recouped monies.  Counsel to the Trust has been in contact with Compass' counsel in this regard and if information and funds are not provided in the near future, the Trust will act to receive the monies that were to be collected and remitted pursuant to the terms of the confirmed Plan.

From a report prepared in August 2007, the maximum amount of uncollected Prepaid Interest was $5,292,567.59 (and again, this amount is before the collection of prepaid interest resulting from the payoff of the Hotel Zoso loan).  A number of investors have uncollected Prepaid Interest of only tens or a few hundreds of dollars.  It is not now possible for the Trust to estimate the likely collection of Prepaid Interest within the foreseeable future.

Although it is not a party to the disputes, as noted above, the Lender Protection Group and Compass are in litigation over whether LPG and Direct Lenders properly terminated Compass as the loan servicer.  The Bankruptcy Court entered an Order on July 2, 2007 Concerning Compass' Emergency Motion to Enforce Confirmation and for Sanctions and Order on Subject Matter Jurisdiction.  Thereafter, the United States District Court for the District of Nevada withdrew the reference over the dispute and has periodically considered arguments and evidence.  The disputes between Compass and the LPG inevitably delay collection of direct loans, adversely impacting Direct Lenders, many of whom have filed proofs of claim concerning those loans.

The LPG has agreed to abide by the Plan provisions concerning payment of Prepaid Interest to the Trust in the event servicing of the loans is transferred from Compass.

### D.    USACM Loan Servicing

The State of Nevada Department of Business in Industry, Division of Mortgage Lending ("MLD"), took post-Effective Date action with respect to licensing of USACM to service loans and the proposed application by Compass to service loans pursuant to the transaction approved by the court in the confirmed Plan.  The Trust worked with USACM with respect to the MLD's order terminating the USACM license.  The termination was not untoward, because USACM had ceased servicing any loans at that

238719.1

point. The MLD's findings were factually and legally inaccurate in many respects, however. The Trust worked directly with the MLD through the State of Nevada Attorney General's office to ensure that the MLD was not seeking to violate the Confirmation Order or the Plan. Separately, the Trust was aware of and took no position with respect to the MLD orders concerning Compass.

Pursuant to an order of the bankruptcy court, the Trust is exempt from licensing in Nevada as a loan servicer or escrow agent. The Trust nevertheless voluntarily reports to MLD with respect to its actions and has asked MLD to advise the Trust of any questions or concerns.

## XI.    SETTLEMENT WITH DTDF

Confirmation of the Plan did not resolve numerous disputes between USACM and DTDF. Principals of the Trust and DTDF have continued to negotiate disputes remaining between them. After a meeting on March 5, 2008, the Trust and DTDF reached conceptual agreement as to an overall settlement. On March 13, 2008, the Trust filed a motion to approve settlement agreement with DTDF in the bankruptcy court. The proposed settlement was set forth in a letter agreement signed by the parties.

In summary, the parties' settlement provides:

- The Trust and DTDF split certain reserves held by USACM on a 60/40 basis;

- DTDF is allowed a $128 million unsecured claim in the USACM Estate;

- DTDF hires Diamond McCarthy LLP to pursue certain DTDF Litigation Claims, that will generally be prosecuted jointly with similar claims asserted by the Trust through Diamond McCarthy;

- DTDF and the Trust will jointly share proceeds of litigation claims, including those DTDF Litigation Claims prosecuted by Diamond McCarthy, on a 50-50 basis for the first $20 million of recoveries, and then DTDF receiving 35% of all recoveries thereafter;

- DTDF, by reason of its allowed general unsecured claim, will share in recoveries from non-litigation claims and/or assets of the Trust on a pro-rata basis with all other allowed general unsecured creditor claims;

- DTDF and the Trust share proceeds of the $58 million note made by USAIP on an equal basis; and

- DTDF and the Trust release each other.

The compromise was the subject of notice to those parties entitled to post-confirmation notice and considered at a hearing on March 25, 2008. The bankruptcy court asked that

additional notice be provided and that the deadline for objections be extended to March 31, 2008.  No objections were received and on April 1, 2008, the bankruptcy court entered its Order Granting Motion to Approve Settlement Agreement with USA Capital Diversified Trust Deed Fund, LLC.  Reserves of approximately $5 million were released by USACM – 60% to the Trust and 40% to DTDF.  DTDF engaged Diamond McCarthy as its special counsel and Diamond McCarthy filed causes of action on behalf of DTDF before the expiration of the two-year tolling period on April 13, 2008.

## XII.   TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of March 31, 2008, has been provided to the Oversight Committee.

238719.1