James D. Greene, Esq.                                    Filed May 8, 2008
Nevada Bar No. 2647
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Ph: (702) 382-2101
Fax: (702) 382-8135
E-mail: jgreene@bhfs.com

Attorney for Platinum Properties 1, Inc.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                                        Debtor. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>                                        Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>                                        Debtor. | **MOTION FOR ORDER IN SUPPORT OF PLAN CONFIRMATION ORDER** |
| In re<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>                                        Debtor. | DATE: JUNE 9, 2008<br>TIME: 9:30 A.M. |
| In re<br><br>USA SECURITIES, LLC,<br><br>                                        Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | |

Platinum Properties 1, Inc. (Platinum"), by and through its counsel, Brownstein Hyatt Farber Schreck, LLP, hereby moves the Court for Entry of Order in Support of Confirmed Plan ("Motion"). This Motion is made and based upon the attached points and authorities, the

pleadings and papers on file herein and upon such argument as the Court may entertain at the hearing on the Motion.

## POINTS AND AUTHORITIES

### I.     Factual Background

**A.     *USACM and Related Bankruptcy Cases***

USA Commercial Mortgage Company ("USACM"), USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC and USA Capital First Trust Deed Fund, LLC (("FTDF"), and collectively the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2006 in the United States Bankruptcy Court for the District of Nevada ("Nevada Bankruptcy Court"), thereby commencing the above-captioned bankruptcy cases. *See In re USA Commercial Mortgage Company*, Bankruptcy Case No. BK-S-06-10725-LBR, Docket no. 1. By Order entered on May 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases. *See* Docket No. 184.

On January 8, 2007, the Court entered the [Proposed] Order Confirming The "Debtors' Third Amended Joint Plan of Reorganization," As Modified Herein ("Confirmation Order"), thereby confirming the Debtors' third amended joint plan of reorganization, as modified by the Confirmation Order ("Plan"). The Confirmation Order also approved certain documents filed in conjunction with the Plan and transactions contemplated therein. *See* Docket No. 2376. The Confirmation Order approved, *inter alia*, the Asset Purchase Agreement, dated December 8, 2006 ("APA") by and between USA Commercial Mortgage Company and USA Capital First Trust Deed Fund, LLC, as "Sellers," and USA Capital Diversified Trust Deed Fund, LLC, USA Capital Realty Advisors, LLC and USA Securities, LLC as "Acknowledging Parties," and Compass Partners, LLC ("Compass") as "Purchaser." *See* Notice of Filing of Asset Purchase Agreement Dated December 8, 2006, Docket No. 2164.

The Plan and the APA set forth the terms and conditions of the Asset Sale Transaction, as defined in the Plan, pursuant to which Compass (or its designee) would acquire certain assets of the Debtors, as defined in the APA. The Asset Sale Transaction to Compass closed on February

11696\1\1151774.1                                          2

16, 2007 ("Closing"). As set forth in paragraph 14 of the Confirmation Order, the Assets (as defined in the APA) were conveyed to Compass free and clear of all liens, claims, interests, obligations and encumbrances, except as expressly permitted or otherwise specifically provided for in the APA or the Confirmation Order. *See* Confirmation Order, Docket No. 2376, pages 5-6 of 29 (copy attached hereto as **Exhibit 1**).

The APA defined the term "Assets" to include FTDF Assets listed on Schedule 1 to the APA and USACM's interests in Servicing Agreements and Personal Property as set forth in Schedule 2 to the APA. *See* Docket 2164-2, page 5 of 24 (copy attached hereto as **Exhibit 2**). Schedule 2 to the APA includes an Asset described as follows:

| Loan Name | Origination Date | 7/31/06 Loan Outstanding | FTDF Ownership | USMC Ownership |
|---|---|---|---|---|
| HFA-Windham | 11/15/2004 | 5,550,000 | 0.00% | 0.00% |

*See* Docket No. 2164-3, page 14 of 28 (copy attached hereto as **Exhibit 3**). Schedule 1 to the APA contains no reference to any loan identified as "HFA-Windham. *See* Docket No. 2164-3, pages 10 through 12 of 28 (copy attached hereto as **Exhibit 4**).[1]

In accordance with the Confirmation Order, and upon the Closing of the Asset Sale Transaction, the Debtors conveyed to Compass all right, title and claims with respect to the transfers made by USACM to HFAH Asylum, LLC and/or Homes for America Holdings, Inc., and referenced as the "HFA-Windham" loan in Schedule 2 to the APA ("HFA-Windham Loan"). This transfer included, without limitation, the right to collect and receive repayment (i.e. to service that loan). *See* Confirmation Order, **Exhibit 1**; Plan, Docket No. 1799, page 51 of 92 (copy attached hereto as **Exhibit 5**).

Every party-in-interest, including, without limitation, the Debtors, the Debtors' successors in interest, and the Direct Lenders with respect to the HFA-Windham Loan, including the HFA-Windham Lenders listed in **Exhibit B** attached to **Exhibit 7** hereto, are barred from challenging the right of Compass, or its assignee, to collect and receive repayment of the HFA-Windham

---

[1] Schedule 2 attached to the Plan references the HFA-Windham Loan as "HFA-Windham (HFAH Asylum, LLC)." *See* Docket No. 1799-3, page 4 of 18. Schedule 3.3 attached to the Plan (concerning threatened litigation) references the HFA-Windham Loan and indicates the "borrowers" are "Homes For America Holdings, and affiliates, Homes for America Asylum, LLC." *See* Docket No. 1799-3, pages 9 and 10 of 18 (copies of the documents referenced in this footnote are attached hereto as **Exhibit 6**).

11696\1\1151774.1                                                     3

Loan, including the assertion of any "Surviving Section 3 Right", as that term is defined in Paragraph 14 of the Confirmation Order. *See* Confirmation Order, Docket No. 2376, pages 5 and 6 of 29 (copy attached hereto as **Exhibit 1**).

**B.**     ***The HFA Windham Transactions and Litigation***

   **1.**   ***The Enterprise Mortgage***

In 1994, the Town of Windham, Connecticut transferred certain parcels of real property located in that town at 322 Main Street and 118 Windham Road ("Windham Property") to Windham Mills Development Corporation ("Windham Mills"). On or about August 30, 1999, Windham Mills executed a Promissory Note in the principal amount of $4,800,000 ("Enterprise Note") in favor of Enterprise Capital, Inc., n/k/a Independence Bank ("Independence Bank"). The Enterprise Note was secured by an Open End Mortgage Deed, recorded in the Windham Land Records, pursuant to which Windham Mills granted a security interest in the Windham Property to Independence Bank ("Windham Mortgage"). The Enterprise Note was also recorded in the Windham Land Records as an exhibit to the Enterprise Mortgage. *See* **Exhibits E** and **F** to **Exhibit 7**.

Independence Bank subsequently commenced litigation in the Superior Court, Judicial District of New London, Connecticut entitled *Independence Bank, f/k/a Enterprise Capital, Inc. v. Windham Mills Development Corporation, et al.*, Case No. CV03-0071580 S, in which the Bank sought a judgment of strict foreclosure and sale with respect to the Windham Property ("Foreclosure Action"). Pursuant to an order dated June 28, 2004 ("Foreclosure Judgment"), the Superior Court, Judicial District of Windham at Putnam, entered a Judgment of Foreclosure by Sale in favor of Independence Bank and against Windham Mills and other defendants.

   **2.**   ***Homes for America Holdings and the Collateral Assignment***

In 2004, Homes For America Holdings, Inc. ("HFA Holdings") expressed an interest in purchasing the Windham Property from Windham Mills.[2] To facilitate the acquisition of the Windham Property by HFA Holdings, USACM and/or USA Capital Diversified Trust Deed

---

[2] Certain of the assertions contained in this portion of the instant motion are derived from the "Platinum Complaint" referenced below. The Platinum Complaint (which is verified as true and correct pursuant to 28 U.S.C. § 1746) and certain of its Exhibits are attached hereto as **Exhibit 7**.

11696\1\1151774.1                                           4

Fund, LLC agreed to find lenders willing to invest funds to make a loan (or loans) to HFA Holdings. Thereafter, USACM sent offering circulars and inquiries to potential individual lenders who would, collectively, lend the necessary funds to HFA Holdings to purchase the Windham Property. According to the offering circular used by USACM to solicit investments in this project, the loan proceeds were to be used to acquire and make improvements on the Windham Property and investors were to have a first trust deed on the Property. By November 2004, USACM had succeeded in raising over $5,000,000 from direct lenders, which funds were used to make a loan totaling $5,550,000 related to this transaction. There were a total of 74 direct investors in this loan ("HFA-Windham Lenders"), who are listed on **Exhibit B** to **Exhibit 7**. *See* **Exhibit 7**, ¶¶ 7-15; **Exhibit G** to **Exhibit 7** (Declaration(sworn under penalty of perjury) of Karim Chowdhury, CFO for HFA Holdings), ¶¶ 11-12.

On or about November 10, 2004, Independence Bank assigned all of its rights under and interest in the Enterprise Note and the Enterprise Mortgage to HFAH Asylum, Inc. ("Asylum"). This assignment was accomplished pursuant to a Note Allonge, dated November 10, 2004, an Assignment of Open-End Mortgage Deed, a Collateral Assignment of Leases and Rents ("Assignment of Mortgage"), and an Assignment of Promissory Note and Mortgage Deed and Loan Documents from Independence Bank in favor of Asylum. *See* **Exhibit 7**, ¶¶ 16-18; **Exhibit G** to **Exhibit 7**, ¶¶ 11-12.

On November 16, 2004, USACM wired an initial advance of $5,050,000 of funds raised from the HFA-Windham Lenders to HFA Asylum, a wholly-owned subsidiary of HFA Holdings. On January 3, 2006, another advance of HFA-Windham Lenders' money, totaling $500,000 was made by USACM to HFA Asylum. On or about November 16, 2004, HFA Asylum, with the knowledge and consent of HFA Holdings, executed a document entitled "Collateral Assignment (Security Agreement)" which provided the HFA-Windham Lenders with a security interest in the Enterprise Note and the Enterprise Mortgage, together with all right, title and interest of HFA Asylum therein, as well as all right, title and interest of HFA Asylum in all substitute collateral and proceeds along with all other documents that Windham Mills gave to the Independence Bank

in connection with the Enterprise Note and the Enterprise Mortgage ("Collateral Assignment"). *See* **Exhibit 7, ¶¶ 15-17**.

Because the Enterprise Note and the Enterprise Mortgage were the subject of a pending foreclosure action at the time they were assigned to HFA Asylum, the Collateral assignment specifically granted the HFA-Windham Lenders the ability to prosecute the foreclosure action against Windham Mills in the event of a default by HFA Asylum on the loan. Because HFA Holdings and HFA Asylum had changed the terms of the loan originally provided by the HFA Lenders, the Collateral Assignment also required HFA Asylum to execute loan documents to substantiate the loan between HFA Asylum and the HFA-Windham Lenders, and it required HFA Holdings to execute and deliver a guarantee of the loan for the benefit of the HFA-Windham Lenders. *See* **Exhibit 7, ¶¶ 22-23**; **Exhibit C** to **Exhibit 7**. HFA Holdings and HFA Asylum have, to date, failed to comply with these requirements. *See* **Exhibit 7, ¶ 26**.

Pursuant to the terms of the Collateral Assignment, USACM took possession of the Enterprise Note and the Enterprise Mortgage to perfect the HFA-Windham Lenders' security interest in those instruments. USACM, however, lost the original Note and Mortgage. *See* **Exhibit 7, ¶¶ 24-25**; **Exhibit D** to **Exhibit 7**.

### 3. *Windham Mills Bankruptcy*

On December 15, 2004, just prior to the scheduled sale pursuant to the Foreclosure Judgment, Windham Mills filed a voluntary bankruptcy petition ("Windham Bankruptcy Case") under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the District of Connecticut (Hartford Division) ("Connecticut Bankruptcy Court"), thereby commencing a case entitled *In re Windham Mills Development Corp.*, Bankruptcy Case Number 04-23619 (RLK). *See* Docket Sheet (relevant portions), attached as **Exhibit 8** hereto. HFA Asylum timely filed a proof of claim in the Windham Bankruptcy Case with respect to its claims under the Enterprise Note and the Enterprise Mortgage, asserting a claim in the amount of ($5,255,332.80), plus accruing interest, fees and costs. *See* **Exhibit 9** hereto. Pursuant to an order entered on July 3, 2007, the Connecticut

Bankruptcy Court appointed Louis Testa, Esq. ("Chapter 11 Trustee") as the Chapter 11 Trustee in the Windham Bankruptcy Case. *See* **Exhibit 8**, Docket Entry No. 391.

### 4. *The HFA Recovery Lawsuit*

On June 7, 2007, an entity known as HFA Windham recovery, LLC ("HFA Recovery"), which asserted that it was comprised of or represented approximately 80% of the HFA Lenders, filed suit in the Supreme Court of the State of New York, County of New York, Case No. 601917/2007 ("New York Lawsuit"). In its complaint, HFA Recovery asserted claims against defendants HFA Asylum, HFA Holdings, Compass Financial Partners, LLC, Compass USA SPE LLC and Compass Partners LLC. On March 25, 2008, HFA Recovery filed a "Plaintiff's Notice of motion to Discontinue Claims Against Defendants" ("Discontinuance Motion"). The Discontinuance Motion remains pending. *See* **Exhibit H** to **Exhibit 7**, ¶¶ F through I.

### 5. *The Platinum Adversary Proceeding*

As noted above, Compass purchased certain assets from the USACM bankruptcy estates, including USACM's loan servicing rights related to the HFA-Windham Loan. On December 13, 2007, Compass executed an Assignment and Assumption of Loan Servicing Agreements, pursuant to which Compass transferred to Platinum ("Platinum Assignment") all of its right, title and interest in certain loan servicing agreements, including the HFA-Windham Loan. *See* **Exhibit H** to **Exhibit 7**. In connection with the Platinum Assignment, HFA Recovery agreed to dismiss the New York Lawsuit. As a result of the Platinum Assignment, Platinum is the current, authorized loan servicer in connection with the HFA Windham Loan. The HFA-Windham Lenders have authorized Platinum to act on their behalf with respect to the HFA Windham Loan and their rights pursuant to the Collateral Assignment.

On or about February 26, 2008, Platinum commenced an adversary proceeding in the Windham Bankruptcy Case, Adversary Proceeding Number 08-02015 ("Platinum Adversary Proceeding"), naming the Chapter 11 Trustee, Louis Testa, Esq., and HFA Asylum as defendants. *See* **Exhibit 7**. The complaint in the Platinum Adversary Proceeding alleges that the Trustee has been attempting to sell the Windham Property and that, because the debt encumbering the property exceeds its value, he needs the secured creditor's consent to

consummate a sale. The complaint further alleges that, even though the HFA-Windham Lenders are the real parties in interest with respect to the HFA-Windham Mortgage, the Trustee is nevertheless dealing exclusively with HFA-Windham Asylum. The complaint seeks (a) declaratory relief regarding the validity of the HFA Lenders' claims relating to the Windham Property and their standing in that capacity; (b) a permanent injunction barring the Trustee from negotiating with the Trustee regarding the Windham Property; (c) imposition of a constructive trust on the Windham Property; (d) foreclosure of the HFA-Windham Lenders' security interests in the Enterprise Note and the Enterprise Mortgage; and (e) relief from the automatic stay.

The parties to the Platinum Adversary Proceeding have now entered into a settlement of that Proceeding. Pursuant to the settlement, HFA Asylum will assign to Platinum all of its right, title and interest in the Enterprise Note, the Enterprise Mortgage, and any other collateral securing the Enterprise Note. A condition to the proposed settlement, however, is that Platinum use its best efforts to obtain an order of the Nevada Bankruptcy Court making clear that Compass, as Platinum's predecessor in interest, had the sole right to service and collect the HFA-Windham Loan after the closing of the Asset Sale Transaction. Paragraph Two of the proposed settlement agreement states:

> 2.    <u>USA Capital Order</u>. Within forty-five (45) days of the Effective Date of this Agreement, Platinum shall cause to be entered an Order (the "USA Capital Order") by the Nevada Bankruptcy Court in the USA Capital Bankruptcy Cases providing that pursuant to the USA Capital Confirmed Plan, Compass Partners, or its assignee(s) was the transferee of the right to receive re-payment of the funds transferred from USA Capital to HFAH or Asylum on November 16, 2004 ($5,050,000.00) and January 3, 2005 ($5,00,000.00). The USA Capital Order shall conform substantially to the form of proposed order attached hereto in Exhibit F. [The form of proposed order is attached to the instant Motion as **Exhibit 10**.]

### II. Legal Argument

Platinum seeks relief in this instant Motion pursuant to Bankruptcy Code sections 105(a) and 1142(b), Article VIII(D) of the Plan and the Confirmation Order. Section 105(a) provides, in relevant part: "The court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. §105(a). Section 1142(b) provides:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. §1142(b). Read together, theses provisions grant to court substantial latitude to issue orders in aid of consummation and implementation of a confirmed chapter 11 plan.

Various provisions of the Plan and the Confirmation Order also establish that the Court has the power to grant the relief sought herein. Section 10 of Article VIII(D) of the Plan provides that the Court retained jurisdiction to resolve issues and enter orders "as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan . . . ." Section 11 of Article VIII(D) proves that the Court retained jurisdiction to hear and determine disputes "arising under agreements, documents or instruments executed in connection with the Plan . . . ." Section 6 of the same Article of the Plan provides that the Court retained jurisdiction to hear and determine "all matters related to the transfer of the Acquired Assets." And, pursuant to section 9 of Article VIII(D) of the Plan, the Court retained jurisdiction to hear and determine any and all contest or litigated matters "arising out of, arising under or related to the Chapter 11 Cases . . . ." *See* Third Amended Joint Chapter 11 Plan of Reorganization, Docket No. 1799, pages 82 and 83 of 92 (copy attached hereto as **Exhibit 11**).

Paragraph 14 of the Confirmation Order governs the terms of Compass's acquisition of the Debtor's loan servicing agreements and provides that such acquisition is free and clear of all liens, claims and interests, subject to the potential exercise of "Surviving Article 3 Rights." Paragraph 14 also contains restrictions on the ability of subsequent loan servicers to affect the rights of Compass to default interest, late charges and similar fees. and provides that the Court retained jurisdiction to determine issues relating to the exercise of Surviving Section 3 Rights. *See* Confirmation Order, Docket No. 2376, pages 5 and 6 of 29 (*see* **Exhibit 1**).

Here, the relief sought falls within the parameters of the foregoing provisions. Upon the closing of Compass's purchase of the Acquired Assets, Compass (or its designee) was the owner of all of USACM's rights under loan servicing agreements for the loans listed on APA Schedule

2, including the loan servicing rights relating to the HFA-Windham Loan. Compass subsequently assigned those rights to Platinum. Platinum undertook to enforce the rights of the HFA-Windham Direct Lenders by filing the Platinum Adversary Proceeding seeking relief from the Connecticut Bankruptcy Court enforcing the rights of the HFA-Windham Lenders in the Windham Property. The result of Platinum's efforts is a settlement pursuant to which the HFA-Windham Lenders' rights are completely vindicated. The only contingency is that Platinum is required to seek an order of this Court that (a) Compass (or its assignee) was, in fact, the servicer of the HFA-Windham Loan after the closing of the Asset Sale Transaction and, thus, had the right to collect the funds due in connection with that loan; and (b) that pursuant to the terms of the Plan and the Confirmation Order, other parties in interest are barred from challenging Compass's (and, thus, Platinum's) standing as the servicer of the HFA-Windham Loan.

The order sought herein is within the scope of Bankruptcy Code sections 105(a) and 1142(b) in that it is an order that is necessary to carry out the provisions of Title 11 and that is necessary to consummate the Plan. The Plan provisions governing retention of jurisdiction also make clear that the Court can and should issue the order sought here, which is necessary or appropriate to implement the Plan and which arises under agreements executed in connection with the Plan. The order sought here also relates to the transfer of the Acquired Assets as it deals directly with the rights to service the HFA-Windham Loan purchased by Compass pursuant to the Plan. Accordingly, Platinum moves the Court to enter an order as described above and in substantially the form attached hereto as **Exhibit 10**.

DATED this 8th day of May 2008.

BROWNSTEIN HYATT FARBER SCHRECK, P.C.

By: /s/ James D. Greene
James D. Greene, Esq.
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

Attorneys for Platinum Properties 1, Inc.

11696\1\1151774.1

10