James D. Greene, Esq.
Nevada Bar No. 2647
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Ph: (702) 382-2101
Fax: (702) 382-8135
E-mail: jgreene@bhfs.com

Filed May 8, 2008

Attorney for Platinum Properties 1, Inc.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>               Debtor. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>               Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>               Debtor. | **MOTION FOR ORDER IN SUPPORT OF PLAN CONFIRMATION ORDER** |
| In re<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>               Debtor. | DATE: JUNE 9, 2008<br>TIME: 9:30 A.M. |
| In re<br><br>USA SECURITIES, LLC,<br><br>               Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | |

Platinum Properties 1, Inc. (Platinum"), by and through its counsel, Brownstein Hyatt Farber Schreck, LLP, hereby moves the Court for Entry of Order in Support of Confirmed Plan ("Motion"). This Motion is made and based upon the attached points and authorities, the

1    pleadings and papers on file herein and upon such argument as the Court may entertain at the

2    hearing on the Motion.

### POINTS AND AUTHORITIES

#### I.    *Factual Background*

**A.    *USACM and Related Bankruptcy Cases***

USA Commercial Mortgage Company ("USACM"), USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC and USA Capital First Trust Deed Fund, LLC (("FTDF"), and collectively the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2006 in the United States Bankruptcy Court for the District of Nevada ("Nevada Bankruptcy Court"), thereby commencing the above-captioned bankruptcy cases.  *See In re USA Commercial Mortgage Company*, Bankruptcy Case No. BK-S-06-10725-LBR, Docket no. 1.  By Order entered on May 9, 2006, the Court approved the joint administration of the Debtors' bankruptcy cases.  *See* Docket No. 184.

On January 8, 2007, the Court entered the [Proposed] Order Confirming The "Debtors' Third Amended Joint Plan of Reorganization," As Modified Herein ("Confirmation Order"), thereby confirming the Debtors' third amended joint plan of reorganization, as modified by the Confirmation Order ("Plan").  The Confirmation Order also approved certain documents filed in conjunction with the Plan and transactions contemplated therein.  *See* Docket No. 2376.  The Confirmation Order approved, *inter alia*, the Asset Purchase Agreement, dated December 8, 2006 ("APA") by and between USA Commercial Mortgage Company and USA Capital First Trust Deed Fund, LLC, as "Sellers," and USA Capital Diversified Trust Deed Fund, LLC, USA Capital Realty Advisors, LLC and USA Securities, LLC as "Acknowledging Parties," and Compass Partners, LLC ("Compass") as "Purchaser."  *See* Notice of Filing of Asset Purchase Agreement Dated December 8, 2006, Docket No. 2164.

The Plan and the APA set forth the terms and conditions of the Asset Sale Transaction, as defined in the Plan, pursuant to which Compass (or its designee) would acquire certain assets of the Debtors, as defined in the APA.  The Asset Sale Transaction to Compass closed on February

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

16, 2007 ("Closing").  As set forth in paragraph 14 of the Confirmation Order, the Assets (as defined in the APA) were conveyed to Compass free and clear of all liens, claims, interests, obligations and encumbrances, except as expressly permitted or otherwise specifically provided for in the APA or the Confirmation Order.  *See* Confirmation Order, Docket No. 2376, pages 5-6 of 29 (copy attached hereto as **Exhibit 1**).

The APA defined the term "Assets" to include FTDF Assets listed on Schedule 1 to the APA and USACM's interests in Servicing Agreements and Personal Property as set forth in Schedule 2 to the APA.  *See* Docket 2164-2, page 5 of 24 (copy attached hereto as **Exhibit 2**). Schedule 2 to the APA includes an Asset described as follows:

| Loan Name | Origination Date | 7/31/06 Loan Outstanding | FTDF Ownership | USMC Ownership |
|---|---|---|---|---|
| HFA-Windham | 11/15/2004 | 5,550,000 | 0.00% | 0.00% |

*See* Docket No. 2164-3, page 14 of 28 (copy attached hereto as **Exhibit 3**).  Schedule 1 to the APA contains no reference to any loan identified as "HFA-Windham.  *See* Docket No. 2164-3, pages 10 through 12 of 28 (copy attached hereto as **Exhibit 4**).[1]

In accordance with the Confirmation Order, and upon the Closing of the Asset Sale Transaction, the Debtors conveyed to Compass all right, title and claims with respect to the transfers made by USACM to HFAH Asylum, LLC and/or Homes for America Holdings, Inc., and referenced as the "HFA-Windham" loan in Schedule 2 to the APA ("HFA-Windham Loan"). This transfer included, without limitation, the right to collect and receive repayment (i.e. to service that loan).  *See* Confirmation Order, **Exhibit 1**; Plan, Docket No. 1799, page 51 of 92 (copy attached hereto as **Exhibit 5**).

Every party-in-interest, including, without limitation, the Debtors, the Debtors' successors in interest, and the Direct Lenders with respect to the HFA-Windham Loan, including the HFA-Windham Lenders listed in **Exhibit B** attached to **Exhibit 7** hereto, are barred from challenging the right of Compass, or its assignee, to collect and receive repayment of the HFA-Windham

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

---

[1]    Schedule 2 attached to the Plan references the HFA-Windham Loan as "HFA-Windham (HFAH Asylum, LLC)." *See* Docket No. 1799-3, page 4 of 18.  Schedule 3.3 attached to the Plan (concerning threatened litigation) references the HFA-Windham Loan and indicates the "borrowers" are "Homes For America Holdings, and affiliates, Homes For America Asylum, LLC." *See* Docket No. 1799-3, pages 9 and 10 of 18 (copies of the documents referenced in this footnote are attached hereto as **Exhibit 6**).

Loan, including the assertion of any "Surviving Section 3 Right", as that term is defined in Paragraph 14 of the Confirmation Order. *See* Confirmation Order, Docket No. 2376, pages 5 and 6 of 29 (copy attached hereto as **Exhibit 1**).

**B.**         *The HFA Windham Transactions and Litigation*

  *1.*         *The Enterprise Mortgage*

In 1994, the Town of Windham, Connecticut transferred certain parcels of real property located in that town at 322 Main Street and 118 Windham Road ("Windham Property") to Windham Mills Development Corporation ("Windham Mills"). On or about August 30, 1999, Windham Mills executed a Promissory Note in the principal amount of $4,800,000 ("Enterprise Note") in favor of Enterprise Capital, Inc., n/k/a Independence Bank ("Independence Bank"). The Enterprise Note was secured by an Open End Mortgage Deed, recorded in the Windham Land Records, pursuant to which Windham Mills granted a security interest in the Windham Property to Independence Bank ("Windham Mortgage"). The Enterprise Note was also recorded in the Windham Land Records as an exhibit to the Enterprise Mortgage. *See* **Exhibits E** and **F** to **Exhibit 7**.

Independence Bank subsequently commenced litigation in the Superior Court, Judicial District of New London, Connecticut entitled *Independence Bank, f/k/a Enterprise Capital, Inc. v. Windham Mills Development Corporation, et al.*, Case No. CV03-0071580 S, in which the Bank sought a judgment of strict foreclosure and sale with respect to the Windham Property ("Foreclosure Action"). Pursuant to an order dated June 28, 2004 ("Foreclosure Judgment"), the Superior Court, Judicial District of Windham at Putnam, entered a Judgment of Foreclosure by Sale in favor of Independence Bank and against Windham Mills and other defendants.

  *2.*         *Homes for America Holdings and the Collateral Assignment*

In 2004, Homes For America Holdings, Inc. ("HFA Holdings") expressed an interest in purchasing the Windham Property from Windham Mills.[2] To facilitate the acquisition of the Windham Property by HFA Holdings, USACM and/or USA Capital Diversified Trust Deed

---

[2] Certain of the assertions contained in this portion of the instant motion are derived from the "Platinum Complaint" referenced below. The Platinum Complaint (which is verified as true and correct pursuant to 28 U.S.C. § 1746) and certain of its Exhibits are attached hereto as **Exhibit 7**.

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

Fund, LLC agreed to find lenders willing to invest funds to make a loan (or loans) to HFA Holdings. Thereafter, USACM sent offering circulars and inquiries to potential individual lenders who would, collectively, lend the necessary funds to HFA Holdings to purchase the Windham Property. According to the offering circular used by USACM to solicit investments in this project, the loan proceeds were to be used to acquire and make improvements on the Windham Property and investors were to have a first trust deed on the Property. By November 2004, USACM had succeeded in raising over $5,000,000 from direct lenders, which funds were used to make a loan totaling $5,550,000 related to this transaction. There were a total of 74 direct investors in this loan ("HFA-Windham Lenders"), who are listed on **Exhibit B** to **Exhibit 7**. *See* **Exhibit 7**, ¶¶ 7-15; **Exhibit G** to **Exhibit 7** (Declaration(sworn under penalty of perjury) of Karim Chowdhury, CFO for HFA Holdings), ¶¶ 11-12.

On or about November 10, 2004, Independence Bank assigned all of its rights under and interest in the Enterprise Note and the Enterprise Mortgage to HFAH Asylum, Inc. ("Asylum"). This assignment was accomplished pursuant to a Note Allonge, dated November 10, 2004, an Assignment of Open-End Mortgage Deed, a Collateral Assignment of Leases and Rents ("Assignment of Mortgage"), and an Assignment of Promissory Note and Mortgage Deed and Loan Documents from Independence Bank in favor of Asylum. *See* **Exhibit 7**, ¶¶ 16-18; **Exhibit G** to **Exhibit 7**, ¶¶ 11-12.

On November 16, 2004, USACM wired an initial advance of $5,050,000 of funds raised from the HFA-Windham Lenders to HFA Asylum, a wholly-owned subsidiary of HFA Holdings. On January 3, 2006, another advance of HFA-Windham Lenders' money, totaling $500,000 was made by USACM to HFA Asylum. On or about November 16, 2004, HFA Asylum, with the knowledge and consent of HFA Holdings, executed a document entitled "Collateral Assignment (Security Agreement)" which provided the HFA-Windham Lenders with a security interest in the Enterprise Note and the Enterprise Mortgage, together with all right, title and interest of HFA Asylum therein, as well as all right, title and interest of HFA Asylum in all substitute collateral and proceeds along with all other documents that Windham Mills gave to the Independence Bank

1    in connection with the Enterprise Note and the Enterprise Mortgage ("Collateral Assignment").

2    *See* **Exhibit 7, ¶¶** 15-17.

3        Because the Enterprise Note and the Enterprise Mortgage were the subject of a pending

4    foreclosure action at the time they were assigned to HFA Asylum, the Collateral assignment

5    specifically granted the HFA-Windham Lenders the ability to prosecute the foreclosure action

6    against Windham Mills in the event of a default by HFA Asylum on the loan.  Because HFA

7    Holdings and HFA Asylum had changed the terms of the loan originally provided by the HFA

8    Lenders, the Collateral Assignment also required HFA Asylum to execute loan documents to

9    substantiate the loan between HFA Asylum and the HFA-Windham Lenders, and it required

10    HFA Holdings to execute and deliver a guarantee of the loan for the benefit of the HFA-

11    Windham Lenders.  *See* **Exhibit 7, ¶¶** 22-23; **Exhibit C** to **Exhibit 7**.  HFA Holdings and HFA

12    Asylum have, to date, failed to comply with these requirements.  *See* **Exhibit 7, ¶** 26.

13        Pursuant to the terms of the Collateral Assignment, USACM took possession of the

14    Enterprise Note and the Enterprise Mortgage to perfect the HFA-Windham Lenders' security

15    interest in those instruments.  USACM, however, lost the original Note and Mortgage.  *See*

16    **Exhibit 7, ¶¶** 24-25; **Exhibit D** to **Exhibit 7**.

17        *3.*    ***Windham Mills Bankruptcy***

18        On December 15, 2004, just prior to the scheduled sale pursuant to the Foreclosure

19    Judgment, Windham Mills filed a voluntary bankruptcy petition ("Windham Bankruptcy Case")

20    under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), in the United

21    States Bankruptcy Court for the District of Connecticut (Hartford Division) ("Connecticut

22    Bankruptcy Court"), thereby commencing a case entitled *In re Windham Mills Development*

23    *Corp.*, Bankruptcy Case Number 04-23619 (RLK).  *See* Docket Sheet (relevant portions),

24    attached as **Exhibit 8** hereto.  HFA Asylum timely filed a proof of claim in the Windham

25    Bankruptcy Case with respect to its claims under the Enterprise Note and the Enterprise

26    Mortgage, asserting a claim in the amount of ($5,255,332.80), plus accruing interest, fees and

27    costs.  *See* **Exhibit 9** hereto.  Pursuant to an order entered on July 3, 2007, the Connecticut

28

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

1    Bankruptcy Court appointed Louis Testa, Esq. ("Chapter 11 Trustee") as the Chapter 11 Trustee

2    in the Windham Bankruptcy Case. *See* **Exhibit 8**, Docket Entry No. 391.

3    ### 4.    *The HFA Recovery Lawsuit*

4        On June 7, 2007, an entity known as HFA Windham recovery, LLC ("HFA Recovery"),

5    which asserted that it was comprised of or represented approximately 80% of the HFA Lenders,

6    filed suit in the Supreme Court of the State of New York, County of New York, Case No.

7    601917/2007 ("New York Lawsuit"). In its complaint, HFA Recovery asserted claims against

8    defendants HFA Asylum, HFA Holdings, Compass Financial Partners, LLC, Compass USA SPE

9    LLC and Compass Partners LLC. On March 25, 2008, HFA Recovery filed a "Plaintiff's Notice

10   of motion to Discontinue Claims Against Defendants" ("Discontinuance Motion"). The

11   Discontinuance Motion remains pending. *See* **Exhibit H** to **Exhibit 7**, ¶¶ F through I.

12   ### 5.    *The Platinum Adversary Proceeding*

13       As noted above, Compass purchased certain assets from the USACM bankruptcy estates,

14   including USACM's loan servicing rights related to the HFA-Windham Loan. On December 13,

15   2007, Compass executed an Assignment and Assumption of Loan Servicing Agreements,

16   pursuant to which Compass transferred to Platinum ("Platinum Assignment") all of its right, title

17   and interest in certain loan servicing agreements, including the HFA-Windham Loan. *See*

18   **Exhibit H** to **Exhibit 7**. In connection with the Platinum Assignment, HFA Recovery agreed

19   to dismiss the New York Lawsuit. As a result of the Platinum Assignment, Platinum is the

20   current, authorized loan servicer in connection with the HFA Windham Loan. The HFA-

21   Windham Lenders have authorized Platinum to act on their behalf with respect to the HFA

22   Windham Loan and their rights pursuant to the Collateral Assignment.

23       On or about February 26, 2008, Platinum commenced an adversary proceeding in the

24   Windham Bankruptcy Case, Adversary Proceeding Number 08-02015 ("Platinum Adversary

25   Proceeding"), naming the Chapter 11 Trustee, Louis Testa, Esq., and HFA Asylum as

26   defendants. *See* **Exhibit 7**. The complaint in the Platinum Adversary Proceeding alleges that the

27   Trustee has been attempting to sell the Windham Property and that, because the debt

28   encumbering the property exceeds its value, he needs the secured creditor's consent to

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

consummate a sale. The complaint further alleges that, even though the HFA-Windham Lenders are the real parties in interest with respect to the HFA-Windham Mortgage, the Trustee is nevertheless dealing exclusively with HFA-Windham Asylum. The complaint seeks (a) declaratory relief regarding the validity of the HFA Lenders' claims relating to the Windham Property and their standing in that capacity; (b) a permanent injunction barring the Trustee from negotiating with the Trustee regarding the Windham Property; (c) imposition of a constructive trust on the Windham Property; (d) foreclosure of the HFA-Windham Lenders' security interests in the Enterprise Note and the Enterprise Mortgage; and (e) relief from the automatic stay.

The parties to the Platinum Adversary Proceeding have now entered into a settlement of that Proceeding. Pursuant to the settlement, HFA Asylum will assign to Platinum all of its right, title and interest in the Enterprise Note, the Enterprise Mortgage, and any other collateral securing the Enterprise Note. A condition to the proposed settlement, however, is that Platinum use its best efforts to obtain an order of the Nevada Bankruptcy Court making clear that Compass, as Platinum's predecessor in interest, had the sole right to service and collect the HFA-Windham Loan after the closing of the Asset Sale Transaction. Paragraph Two of the proposed settlement agreement states:

> 2. USA Capital Order. Within forty-five (45) days of the Effective Date of this Agreement, Platinum shall cause to be entered an Order (the "USA Capital Order") by the Nevada Bankruptcy Court in the USA Capital Bankruptcy Cases providing that pursuant to the USA Capital Confirmed Plan, Compass Partners, or its assignee(s) was the transferee of the right to receive re-payment of the funds transferred from USA Capital to HFAH or Asylum on November 16, 2004 ($5,050,000.00) and January 3, 2005 ($5,00,000.00). The USA Capital Order shall conform substantially to the form of proposed order attached hereto in Exhibit F. [The form of proposed order is attached to the instant Motion as **Exhibit 10**.]

### II. Legal Argument

Platinum seeks relief in this instant Motion pursuant to Bankruptcy Code sections 105(a) and 1142(b), Article VIII(D) of the Plan and the Confirmation Order. Section 105(a) provides, in relevant part: "The court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. §105(a). Section 1142(b) provides:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. §1142(b).  Read together, theses provisions grant to court substantial latitude to issue orders in aid of consummation and implementation of a confirmed chapter 11 plan.

Various provisions of the Plan and the Confirmation Order also establish that the Court has the power to grant the relief sought herein.  Section 10 of Article VIII(D) of the Plan provides that the Court retained jurisdiction to resolve issues and enter orders "as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan . . . ."  Section 11 of Article VIII(D) proves that the Court retained jurisdiction to hear and determine disputes "arising under agreements, documents or instruments executed in connection with the Plan . . . ."  Section 6 of the same Article of the Plan provides that the Court retained jurisdiction to hear and determine "all matters related to the transfer of the Acquired Assets."  And, pursuant to section 9 of Article VIII(D) of the Plan, the Court retained jurisdiction to hear and determine any and all contest or litigated matters "arising out of, arising under or related to the Chapter 11 Cases . . . ."  *See* Third Amended Joint Chapter 11 Plan of Reorganization, Docket No. 1799, pages 82 and 83 of 92 (copy attached hereto as **Exhibit 11**).

Paragraph 14 of the Confirmation Order governs the terms of Compass's acquisition of the Debtor's loan servicing agreements and provides that such acquisition is free and clear of all liens, claims and interests, subject to the potential exercise of "Surviving Article 3 Rights."  Paragraph 14 also contains restrictions on the ability of subsequent loan servicers to affect the rights of Compass to default interest, late charges and similar fees. and provides that the Court retained jurisdiction to determine issues relating to the exercise of Surviving Section 3 Rights.  *See* Confirmation Order, Docket No. 2376, pages 5 and 6 of 29 (*see* **Exhibit 1**).

Here, the relief sought falls within the parameters of the foregoing provisions.  Upon the closing of Compass's purchase of the Acquired Assets, Compass (or its designee) was the owner of all of USACM's rights under loan servicing agreements for the loans listed on APA Schedule

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

2, including the loan servicing rights relating to the HFA-Windham Loan. Compass subsequently assigned those rights to Platinum. Platinum undertook to enforce the rights of the HFA-Windham Direct Lenders by filing the Platinum Adversary Proceeding seeking relief from the Connecticut Bankruptcy Court enforcing the rights of the HFA-Windham Lenders in the Windham Property. The result of Platinum's efforts is a settlement pursuant to which the HFA-Windham Lenders' rights are completely vindicated. The only contingency is that Platinum is required to seek an order of this Court that (a) Compass (or its assignee) was, in fact, the servicer of the HFA-Windham Loan after the closing of the Asset Sale Transaction and, thus, had the right to collect the funds due in connection with that loan; and (b) that pursuant to the terms of the Plan and the Confirmation Order, other parties in interest are barred from challenging Compass's (and, thus, Platinum's) standing as the servicer of the HFA-Windham Loan.

The order sought herein is within the scope of Bankruptcy Code sections 105(a) and 1142(b) in that it is an order that is necessary to carry out the provisions of Title 11 and that is necessary to consummate the Plan. The Plan provisions governing retention of jurisdiction also make clear that the Court can and should issue the order sought here, which is necessary or appropriate to implement the Plan and which arises under agreements executed in connection with the Plan. The order sought here also relates to the transfer of the Acquired Assets as it deals directly with the rights to service the HFA-Windham Loan purchased by Compass pursuant to the Plan. Accordingly, Platinum moves the Court to enter an order as described above and in substantially the form attached hereto as **Exhibit 10**.

DATED this 8th day of May 2008.

BROWNSTEIN HYATT FARBER SCHRECK, P.C.

By: */s/ James D. Greene*
James D. Greene, Esq.
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

Attorneys for Platinum Properties 1, Inc.

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

# EXHIBIT 1

1   (together with USACM, the "Sellers") and DTDF, USA Realty and USA Securities, as

2   acknowledging parties, and Compass is hereby approved.

3        13.   The Debtors and Compass, as may be mutually agreed by such parties, are hereby

4   authorized to consummate the Asset Purchase Agreement at any time following ten (10) days after

5   entry of this Confirmation Order, which may occur prior to the Effective Date of the Plan.

6        14.   Except as expressly permitted or otherwise specifically provided for in the Asset

7   Purchase Agreement or this Confirmation Order, pursuant to sections 105(a), 1123, and 363(f) of

8   the Bankruptcy Code, the Acquired Assets shall be transferred to the Asset Purchaser on the terms

9   and conditions set forth in the Asset Purchase Agreement, and upon Closing shall be, free and

10  clear of all liens, claims, interests, obligations and encumbrances whatsoever, including, but not

11  limited to, (A) all monetary and non-monetary defaults and rights that purport to give to any party

12  a right or option to effect any forfeiture, modification, right of first refusal, or termination of the

13  Sellers' or the Asset Purchaser's interest in, or rights in or under, the Acquired Assets, or any

14  similar rights, based in any way on any action taken (or failed to be taken) by any of the Debtors

15  or any other matter or occurrence relating to the period prior to the Closing (other than any right

16  that existed and was matured and exercisable, as of the Petition Date, to effect a substitution of

17  USACM as loan servicer under Section 3 of any Loan Servicing Agreement, as well as any

18  defenses of the loan servicer thereto (a "Surviving Section 3 Right")); (B) taxes arising under or

19  out of, in connection with, or in any way relating to the existence, ownership, management or

20  servicing of the Acquired Assets prior to the Closing; and (C) (i) all mortgages, deeds of trust,

21  security interests, conditional sale or other title retention agreements, pledges, liens, judgments,

22  demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including,

23  but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of

24  any attributes of ownership and (ii) all debts arising in any way in connection with any

25  agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or

26  affiliates; all claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, rights

27  of recoupment or setoff, demands, guaranties, options, rights, restrictions, interest and matters of

28  any kind and nature in any way relating to the existence, ownership, management or servicing of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122



1  the Acquired Assets prior to Closing, whether known or unknown, contingent or otherwise,

2  whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11

3  of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or

4  otherwise, including but not limited to claims otherwise arising under doctrines of successor

5  liability (collectively, "Interests"); provided, however, that, in connection with any attempted post-

6  Closing exercise of a Surviving Section 3 Right: (a) the Direct Lenders must provide Compass at

7  least thirty (30) days prior written notice of the intended exercise of such right in accordance with

8  section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to challenge the

9  exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the

10  expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has

11  been properly and validly exercised (the "Compass Motion") and the Court shall retain jurisdiction

12  to adjudicate any such disputes, (c) in the event Compass timely files such Compass Motion, the

13  effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending

14  this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival

15  of such Surviving Section 3 Right shall not impair in any respect any rights or interests of

16  Compass under the Loan Servicing Agreements, including, without limitation, its rights under

17  Section 2(c)(iii) of the Loan Servicing Agreement.  In the event of a proper exercise of remedies

18  under Section 3 of the Loan Servicing Agreement, (i) neither the Direct Lenders nor any

19  replacement servicer selected by such Direct Lender shall have the right or ability to compromise,

20  subordinate, or impair, in any respect, any rights, claims or interests purchased by Compass from

21  the Estates for default interest, accrued servicing fees, late charges, success fees, or other amounts

22  under the Loan Servicing Agreement, and (ii) this Confirmation Order shall be binding upon such

23  replacement servicer regardless of whether such replacement servicer actually received such copy

24  of the Confirmation Order.

25      15.     Any and all such Interests whatsoever shall attach to the net proceeds of the Asset

26  Sale Transaction in the order of their priority, with the same validity, force and effect which they

27  now have as against the Acquired Assets, subject to any claims and defenses that the Sellers may

28  possess with respect thereto.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122



# EXHIBIT 2



"**Assets**" means, collectively, all First Trust Deed Fund Assets listed on Schedule 1 and the Commercial Mortgage Assets listed on Schedule 2, together with the Personal Property.

"**Auction**" means the auction scheduled by the Bankruptcy Court in connection with the Bid Procedures Motion.

"**Auction Date**" means December 7, 2006.

"**Bankruptcy Code**" means Title I of the Bankruptcy Reform Act of 1978, as amended, set forth in sections 101 et seq. of title 11 of the United States Code.

"**Bid Procedures Motion**" means a motion filed by the Debtors on or about September 22, 2006, seeking Bankruptcy Court approval of certain bidding procedures on terms that are acceptable to Purchaser.

"**Borrower**" means any obligor under a Loan.

"**Business Day**" means a day other than Saturday, Sunday or any day on which banks located in the State of Nevada are authorized or obligated to close.

"**Closing**" means the closing of the purchase and sale of the Assets on the Closing Date pursuant to the Sale Approval Order, and transfer of each of the Assets to Purchaser consistent with the terms hereof.

"**Closing Date**" means that date on which the Sale Approval Order becomes a Final Order, and each of the Assets actually is transferred to Purchaser consistent with the terms hereof, provided that in no event shall the Closing Date be later than the Outside Approval Date.

"**Commercial Mortgage**" means USA Commercial Mortgage Company.

"**Commercial Mortgage Assets**" means all Servicing Agreements and Personal Property for all of the Serviced Loans set forth in the Serviced Loan Schedule, including, without limitation, Default Rate Interest, Accrued Servicing Fees, Late Charges, Success Fees, other fees and sums due the loan servicer under any of the Servicing Agreements and all proceeds of all Serviced Loans and Serviced Loan participations and receivables related solely to these purchased Serviced Loans and Serviced Loan participations owed to Commercial Mortgage, to the extent of Commercial Mortgage's interest therein, as set forth in the Serviced Loan Schedule. Commercial Mortgage Assets excludes any other assets not specifically identified herein, including, (i) USACM's rights (including indemnification, insurance rights and claims and avoidance actions), claims and recoveries against third parties arising out of, or relating to, events prior to the Closing Date with respect to Commercial Mortgage Assets or arising at any time with respect to assets which are not Commercial Mortgage Assets, (ii) Prepaid Interest, (iii) IP Receivable, (iv) all cash, accounts receivable, notes receivable, interests in promissory notes which are not Mortgage Notes, Serviced Loans or Loans, tax refunds and other similar assets, (v) tangible or intangible assets of USACM which are not Personal Property and (vi) loans made to Placer Vineyards and Marquis Hotel, which shall not be included on the Serviced Loan Schedule.

# EXHIBIT 3

Case:  06-10725-lbr    Doc #:  2164-3    Filed:  12/18/2006    Page:  14 of 28

SCHEDULE 2

| Performance as of 7/31/06 | Loan Name | Origination Date | 7/31/06 Loan Oustanding | FTDF Ownership | | USCMC Ownership | |
|---|---|---|---|---|---|---|---|
| | | | | % | $ | % | $ |
| Performing | Goss Road | 11/2/2004 | 1,000,000 | 0.00% | - | 0.25% | 2,500 |
| Non-Performing | Gramercy Court Condos | 6/25/2004 | 34,884,500 | 13.10% | 4,570,500 | 0.00% | - |
| Non-Performing | Harbor Georgetown | 8/16/2004 | 8,800,000 | 5.80% | 510,000 | 0.00% | - |
| Performing | Hesperia II | 4/1/2005 | 4,250,000 | 0.00% | - | 0.00% | - |
| Non-Performing | HFA- Clear Lake | 1/6/2005 | 16,050,000 | 0.00% | - | 0.00% | - |
| Non-Performing | HFA- Windham | 11/15/2004 | 5,550,000 | 0.00% | - | 0.00% | - |
| Non-Performing | HFA-Clear Lake 2nd | 6/24/2005 | 2,750,000 | 0.00% | - | 0.29% | 8,000 |
| Non-Performing | HFAH/Monaco | 12/19/2003 | 4,000,000 | 100.00% | 4,000,000 | 0.00% | - |
| Non-Performing | Huntsville | 3/31/2004 | 10,475,000 | 4.77% | 500,000 | 0.00% | - |
| Performing | I-40 Gateway West | 1/11/2005 | 4,630,000 | 0.00% | - | 0.00% | - |
| Performing | I-40 Gateway West, LLC 2nd | 3/1/2006 | 1,065,000 | 0.00% | - | 0.00% | - |
| Non-Performing | Interstate Commerce Center Phase II | 8/11/2004 | 1,856,849 | 86.34% | 1,603,204 | 0.00% | - |
| Performing | La Hacienda Estate, LLC | 11/11/2004 | 6,255,000 | 0.00% | - | 0.80% | 50,000 |
| Non-Performing | Lake Helen Partners | 12/7/2004 | 3,159,704 | 28.77% | 908,908 | 0.94% | 29,723 |
| Non-Performing | Lerin Hills | 12/7/2005 | 10,350,000 | 0.00% | - | 0.00% | - |
| Non-Performing | Margarita Annex | 7/26/2004 | 12,000,000 | 24.42% | 2,930,000 | 0.00% | - |
| Non-Performing | Marlton Square | 8/11/2005 | 30,000,000 | 0.39% | 118,000 | 0.89% | 267,500 |
| Non-Performing | Marlton Square 2nd | 8/11/2005 | 6,000,000 | 0.00% | - | 0.00% | - |
| Performing | Mountain House Business Park | 6/10/2004 | 16,800,000 | 5.21% | 875,000 | 0.17% | 28,000 |
| Non-Performing | Oak Shores II | 8/8/2005 | 12,150,000 | 0.03% | 3,925 | 0.00% | - |
| Performing | Ocean Atlantic | 11/1/2005 | 2,700,000 | 0.00% | - | 0.00% | - |
| Non-Performing | Ocean Atlantic $9,425,000 | 1/23/2006 | 8,925,000 | 14.61% | 1,303,500 | 0.00% | - |
| Non-Performing | Palm Harbor One | 12/14/2005 | 28,460,000 | 5.60% | 1,594,000 | 0.00% | - |
| Non-Performing | Rio Rancho Executive Plaza, LLC | 1/17/2006 | 2,250,000 | 3.11% | 70,000 | 0.00% | - |
| Performing | Roam Development Group L.P. | 3/23/2005 | 25,601,735 | 2.37% | 606,686 | 0.00% | - |
| Non-Performing | Shamrock Tower, LP | 8/5/2004 | 10,500,000 | 31.43% | 3,300,000 | 0.00% | - |
| Non-Performing | Slade Development | 12/5/2005 | 3,825,000 | 0.00% | - | 1.42% | 60,000 |
| Performing | Southern California Land 2nd | 8/3/2005 | 2,800,000 | 0.00% | - | 1.25% | 35,000 |
| Non-Performing | Standard Property Development | 2/27/2006 | 9,640,000 | 6.96% | 671,000 | 0.00% | - |
| Performing | SVRB $4,500,000 | 4/27/2005 | 1,424,082 | 0.00% | - | 0.00% | - |
| Performing | SVRB 2nd $2,325,000 | 4/27/2005 | 2,325,000 | 0.00% | - | 0.00% | - |
| Non-Performing | Tapia Ranch | 9/28/2004 | 22,000,000 | 1.43% | 314,000 | 0.00% | - |
| Non-Performing | Ten-Ninety, Ltd/$4,150,000 | 12/30/2002 | 4,150,000 | 0.00% | - | 0.00% | - |
| Non-Performing | The Gardens Phase II | 3/31/2006 | 2,500,000 | 100.00% | 2,500,000 | 0.00% | - |
| Performing | The Gardens, LLC $2,425,000 | 8/15/2005 | 1,925,000 | 1.52% | 29,228 | 4.01% | 77,146 |

APA of 12/8/2006

# EXHIBIT 4

**SCHEDULE 1**

| Performance as of 7/31/06 | Loan Name | Origination Date | 7/31/06 Loan Oustanding | FTDF Ownership % | FTDF Ownership $ |
|---|---|---|---|---|---|
| Performing | Fiesta Development $6.6 | 11/14/2005 | $ 6,600,000 | 100.00% | $ 6,600,000 |
| Performing | University Estates | 4/11/2005 | 4,825,920 | 100.00% | 4,825,920 |
| Non-Performing | Gramercy Court Condos | 6/25/2004 | 34,884,500 | 13.10% | 4,570,500 |
| Non-Performing | Franklin - Stratford Investments, LLC | 3/30/2005 | 5,225,000 | 80.67% | 4,215,000 |
| Non-Performing | HFAH/Monaco | 12/19/2003 | 4,000,000 | 100.00% | 4,000,000 |
| Performing | Cloudbreak LV | 12/17/2003 | 3,800,000 | 99.31% | 3,773,675 |
| Non-Performing | Eagle Meadows Development | 10/19/2005 | 31,050,000 | 11.76% | 3,652,000 |
| Non-Performing | Shamrock Tower, LP | 8/5/2004 | 10,500,000 | 31.43% | 3,300,000 |
| Non-Performing | Margarita Annex | 7/26/2004 | 12,000,000 | 24.42% | 2,930,000 |
| Non-Performing | The Gardens Phase II | 3/31/2006 | 2,500,000 | 100.00% | 2,500,000 |
| Performing | Columbia Managing Partners | 9/1/2005 | 2,210,000 | 100.00% | 2,210,000 |
| Non-Performing | Brookmere/Matteson $27,050,000 | 10/29/2003 | 5,964,848 | 33.88% | 2,021,085 |
| Non-Performing | Anchor B, LLC | 5/31/2005 | 5,835,422 | 33.36% | 1,946,422 |
| Non-Performing | Interstate Commerce Center Phase II | 8/11/2004 | 1,856,849 | 86.34% | 1,603,204 |
| Non-Performing | Palm Harbor One | 12/14/2005 | 28,480,000 | 5.60% | 1,594,000 |
| Non-Performing | Ocean Atlantic $9,425,000 | 1/23/2006 | 8,925,000 | 14.61% | 1,303,500 |
| Non-Performing | Binford Medical Developers | 8/31/2005 | 7,450,000 | 17.25% | 1,285,000 |
| Performing | The Gardens, LLC Timeshare | 3/24/2004 | 3,902,274 | 31.03% | 1,211,050 |
| Performing | Cottonwood Hills, LLC | 6/14/2005 | 4,000,000 | 25.00% | 1,000,000 |
| Non-Performing | Lake Helen Partners | 12/7/2004 | 3,159,704 | 28.77% | 908,908 |
| Performing | Mountain House Business Park | 6/10/2004 | 16,800,000 | 5.21% | 875,000 |
| Non-Performing | ComVest Capital | 1/11/2006 | 4,125,000 | 17.82% | 735,000 |
| Non-Performing | 6425 Gess, LTD | 4/14/2005 | 26,500,000 | 2.63% | 696,000 |
| Non-Performing | Standard Property Development | 2/27/2006 | 9,640,000 | 6.96% | 671,000 |
| Performing | Roam Development Group L.P. | 3/23/2005 | 25,601,735 | 2.37% | 605,688 |
| Non-Performing | Harbor Georgetown | 8/16/2004 | 8,800,000 | 5.80% | 510,000 |
| Non-Performing | Huntsville | 3/31/2004 | 10,475,000 | 4.77% | 500,000 |

**SCHEDULE 1**

| Performance as of 7/31/06 | Loan Name | Origination Date | 7/31/06 Loan Oustanding | FTDF Ownership % | FTDF Ownership $ |
|---|---|---|---|---|---|
| Non-Performing | Castaic Partners II, LLC | 7/11/2005 | 5,600,000 | 7.59% | 425,000 |
| Non-Performing | Amesbury/Hatters Point | 12/16/2002 | 19,242,193 | 1.72% | 330,016 |
| Non-Performing | Tapia Ranch | 9/28/2004 | 22,000,000 | 1.43% | 314,000 |
| Performing | J. Jireh's Corporation | 9/2/2005 | 8,825,000 | 3.00% | 265,000 |
| Non-Performing | Wasco Investments | 11/23/2004 | 6,450,000 | 3.02% | 195,000 |
| Performing | Bay Pompano Beach | 6/20/2005 | 14,680,390 | 1.20% | 176,623 |
| Non-Performing | Del Valle - Livingston | 8/25/2005 | 19,250,000 | 0.67% | 129,000 |
| Non-Performing | Elizabeth May Real Estate | 2/24/2006 | 10,050,000 | 1.19% | 120,000 |
| Non-Performing | Marlton Square | 8/11/2005 | 30,000,000 | 0.39% | 118,000 |
| Non-Performing | Clear Creek Plantation | 3/15/2005 | 2,900,000 | 3.45% | 100,000 |
| Non-Performing | Gateway Stone | 11/18/2005 | 13,185,000 | 0.76% | 100,000 |
| Non-Performing | 3685 San Fernando Road Partners | 8/2/2005 | 7,350,000 | 1.12% | 82,000 |
| Non-Performing | Meadow Creek Partners, LLC | 2/23/2006 | 8,250,000 | 0.87% | 72,000 |
| Non-Performing | Rio Rancho Executive Plaza, LLC | 1/17/2006 | 2,250,000 | 3.11% | 70,000 |
| Non-Performing | Urban Housing Alliance - 435 Lofts | 7/13/2005 | 8,150,000 | 0.37% | 30,000 |
| Performing | The Gardens, LLC $2,425,000 | 8/15/2005 | 1,925,000 | 1.52% | 29,226 |
| Non-Performing | Castaic Partners III, LLC | 9/22/2005 | 4,675,000 | 0.53% | 25,000 |
| Non-Performing | Foxhill 216, LLC | 2/23/2006 | 25,980,000 | 0.10% | 25,000 |
| Non-Performing | Oak Shores II | 6/6/2005 | 12,150,000 | 0.03% | 3,925 |
| Performing | Fiesta Murrieta | 4/14/2005 | 6,500,000 | 0.00% | - |
| Non-Performing | Copper Sage Commerce Center Phase II | 3/1/2006 | 3,550,000 | 0.00% | - |
| Non-Performing | Slade Development | 12/5/2005 | 3,525,000 | 0.00% | - |
| Performing | La Hacienda Estate, LLC | 11/11/2004 | 6,255,000 | 0.00% | - |
| Performing | Southern California Land 2nd | 8/3/2005 | 2,800,000 | 0.00% | - |
| Non-Performing | Bundy Canyon $5,000,000 | 9/28/2005 | 4,250,000 | 0.00% | - |
| Non-Performing | BarUSA/$15,300,000 | 11/24/2003 | 15,300,000 | 0.00% | - |
| Non-Performing | Fiesta Oak Valley | 6/15/2004 | 20,500,000 | 0.00% | - |

## SCHEDULE 1

| Performance as of 7/31/06 | Loan Name | Origination Date | 7/31/06 Loan Oustanding | FTDF Ownership % | FTDF Ownership $ |
|---|---|---|---|---|---|
| Non-Performing | HFA-Clear Lake 2nd | 6/24/2005 | 2,750,000 | 0.00% | - |
| Performing | Cornman Toltec 160, LLC | 6/24/2005 | 6,375,000 | 0.00% | - |
| Performing | Preserve at Galleria, LLC | 10/6/2005 | 3,711,750 | 0.00% | - |
| Performing | Goss Road | 11/2/2004 | 1,000,000 | 0.00% | - |

Total    $    62,652,742

APA of 12/8/2006

Page 3 of 3

# EXHIBIT 5

1  **B.    No Substantive Consolidation Or Recharacterization Of Loans.**

2      On the Effective Date, all of the assets of each Debtor shall be sold, transferred, distributed

3  or retained by each of such Debtor's respective Estates, or the Post-Effective Date Entities created

4  for each such Debtor and its Estate under the Plan, with all proceeds of sold, transferred, or

5  liquidated assets of each Debtor being retained by the respective Debtor's Estate, or the Post-

6  Effective Date Entities created for each such Debtor and its Estate under the Plan. All Claims

7  against and Equity Interests in the Debtors and their respective Estates shall be retained by the

8  holders of Allowed Claims and Allowed Equity Interests against and in the respective Estates,

9  except as otherwise provided for under the Plan. The allowance, voting, treatment and

10  distributions on account of Allowed Claims and Allowed Equity Interests shall be as set forth in

11  the Plan on an individual Estate basis. Notwithstanding any inference to the contrary in this

12  section, Equity Interests in USACM, USA Realty and USA Securities shall be retained only until

13  the Effective Date, at which date, those Equity Interests shall be cancelled on an individual Estate

14  basis under the Plan.

15      Notwithstanding any provision of this Plan, nothing in this Plan shall constitute or effect a

16  recharacterization of any Loan or any interest in a Loan as giving rise to a Claim against or Equity

17  Interest in any of the Debtors. If any Entity believes that all or a portion of the Loans should be so

18  recharacterized, it must expressly raise this issue by Filing an objection to the Confirmation of the

19  Plan on this basis. Any Entity who fails to File such an objection to Confirmation of the Plan shall

20  be forever barred and estopped from arguing, asserting or claiming in any way that its Loan or its

21  interest in a Loan should be recharacterized as an Allowed Claim against or Allowed Equity

22  Interest in a Debtor.

23  **C.    Asset Sale Transaction.**

24      The Plan will be implemented in part by the Asset Sale Transaction. In implementation of

25  the Asset Sale Transaction, USACM and FTDF, as sellers, DTDF, USA Securities and USA

26  Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, have entered into the

27  Asset Purchase Agreement. The Asset Purchase Agreement and the Bid Procedures Order provide

28  that the Acquired Assets are sold to SPCP Group, LLC or, as part of the Auction, to a Third Party

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Bidder making a Higher and Better Offer. Pursuant to the Asset Sale Transaction, the Asset

Purchaser (either SPCP Group, LLC or a Third Party Bidder as determined by the Auction) will

purchase the following Acquired Assets:

      1.    FTDF's proportional interest in 44 different Loans for Cash consideration of $46

million, subject to certain adjustments; and

      2.    USACM's post-Closing rights to service Loans pursuant to the Loan Servicing

Agreements for the Loans and related personal property for Cash consideration based on the future

(A) collection of servicing fees, (B) collection of default rate interest, and (C) other payments and

obligations set forth in the Asset Purchase Agreement.

      Except as expressly agreed to otherwise by the Debtors and the Asset Purchaser, the

Acquired Assets will be sold free and clear of all liens, Claims, encumbrances, rights of third

parties and interests. The Confirmation Order shall constitute an Order pursuant to section 363(b)

and (f) of the Bankruptcy Code authorizing the sale of the Estates' interests in the Acquired Assets

to the Asset Purchaser. The Confirmation Order shall provide that the Asset Purchaser is a good

faith purchaser of assets within the meaning of section 363(m) of the Bankruptcy Code and has

paid fair consideration and reasonable equivalent value of the Acquired Assets that are purchased.

Except as set forth in the Asset Purchase Agreement and the Plan, the Asset Purchaser shall have

no liability for Claims or Equity Interests against the Debtors (whether or not currently known)

based on its purchase of Acquired Assets.

      After the Auction, the Asset Sale Transaction shall be approved in connection with

Confirmation of the Plan. The Allocated Net Sale Proceeds from the Asset Sale Transaction shall

be distributed to FTDF and USACM Trust, respectively, on the Effective Date of the Plan.

**D.**    **Post-Effective Date Entities.**

    **1.**    **The USACM Trust.**

      The USACM Trust shall be governed and created pursuant to the Plan and the USACM

Trust Agreement. A copy of the proposed USACM Trust Agreement shall be included in the Plan

Documents Supplement. The USACM Trust shall have the discretion, subject to review by the

USACM Trust Committee appointed in accordance with the USACM Trust Agreement, to retain

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    and compensate professionals, compensate the USACM Trustee, compensate the Debtors'

2    Professionals for any assistance of information requested of them by the USACM Trust, employ

3    staff or agents, object to Claims, realize assets, whether by suit, compromise, release or otherwise,

4    and take all actions reasonable to maximize the recovery to beneficiaries of the USACM Trust.

5    The USACM Trust Agreement shall provide for all expense reserves necessary for the USACM

6    Trust.

7        The USACM Committee will propose the Person to serve as the USACM Trustee, after

8    soliciting advice from and obtaining the consent of USACM and the other Committees, and will

9    provide all disclosures required respecting the Person pursuant to sections 1129(a)(4) and (a)(5) of

10   the Bankruptcy Code, not less than ten (10) days before the Confirmation Hearing. The USACM

11   Trustee shall be approved by the Court at the Confirmation Hearing.

12       The USACM Trust shall be funded with all assets of the USACM Estate not collected or

13   disposed of prior to the Effective Date, including Cash and noncash proceeds.  Assets of the

14   USACM Estate shall include the USACM Loans, the Prepaid Interest (including Prepaid Interest

15   collected by the Asset Purchaser post-Effective Date and including the DTDF Prepaid Interest,

16   subject to the objection of the DTDF Committee, which shall be determined by the Court if not

17   settled), the USACM Accounts (including USACM Estate's share of the IP $58 Million

18   Promissory Note), all USACM Litigation Claims, including without limitation the Non-Debtor

19   Insider Litigation, belonging to or assertable by the USACM Estate, the FTDF Litigation Claims

20   transferred to USACM pursuant to section E.2.j of Art. IV of the Plan, and all servicing and

21   related fees to be retained by USACM as set forth in the Asset Purchase Agreement and which

22   will be included in the Asset Sale Transaction to the Asset Purchaser.  The USACM Trust shall

23   receive its share of the Non-Debtor Insider Litigation of the USACM Estate and may, without

24   further order of the Court, enter into a joint prosecution or sharing agreement with Post-Effective

25   Date DTDF.  Pending Litigation shall be prosecuted or defended by the Asset Purchaser, as

26   appropriate, if the Asset Acquirer, in its sole discretion, agrees to do so in writing within ten (10)

27   Business Days of the Effective Date of the Plan.  If Asset Purchaser does not agree to prosecute or

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

48

# EXHIBIT 6

## SCHEDULE 2

| Performance | Loan Name | Origination Date | 7/31/06 Loan Outstanding | Funds Interest % | Funds Interest $ | Fees Accrued | Fees Paid | Net Unpaid |
|---|---|---|---|---|---|---|---|---|
| Non-Performing | Eagle Meadows Development | 10/19/05 | 31,050,000 | 11.76% | 3,652,000 | 211,600 | 131,009 | 80,591 |
| Non-Performing | Elizabeth May Real Estate, LLC | 2/24/06 | 10,050,000 | 1.19% | 120,000 | 33,755 | 10,374 | 23,381 |
| Performing | Fiesta Development $6.6 (Fiesta Development, Inc.) | 11/14/05 | 6,600,000 | 100.00% | 6,600,000 | 22,000 | 16,500 | 5,500 |
| Performing | Fiesta Murrieta (Fiesta Development, Inc.) | 4/14/05 | 6,500,000 | 1.46% | 95,039 | 78,722 | 73,722 | 5,000 |
| Non-Performing | Fiesta Oak Valley (Oak Mesa Investors, LLC) | 6/15/04 | 20,500,000 | 0.05% | 9,500 | 333,015 | - | 333,015 |
| Non-Performing | Fiesta USA/Stoneridge (Capital Land Investors, LLC) | 9/22/03 | 10,000,000 | 0.00% | - | 212,526 | - | 212,526 |
| Non-Performing | Foxhill 216, LLC | 2/23/06 | 25,980,000 | 0.10% | 25,000 | 112,047 | 52,122 | 59,926 |
| Non-Performing | Franklin - Stratford Investments, LLC | 3/30/05 | 5,225,000 | 100.00% | 5,225,000 | 29,222 | 25,845 | 3,377 |
| Non-Performing | Gateway Stone (Gateway Stone Associates, LLC) | 11/18/05 | 13,185,000 | 0.76% | 100,000 | 61,677 | 28,423 | 33,254 |
| Performing | Goss Road (Savannah Homes, LLC) | 11/2/04 | 1,000,000 | 0.25% | 2,500 | 3,333 | 3,333 | (0) |
| Non-Performing | Gramercy Court Condos (Gramercy Court, Ltd.) | 6/25/04 | 34,884,500 | 13.10% | 4,570,500 | 151,312 | 42,293 | 109,018 |
| Non-Performing | Harbor Georgetown, L.L.C. | 8/16/04 | 8,800,000 | 5.80% | 510,000 | 155,600 | 112,602 | 42,998 |
| Non-Performing | Hasley Canyon (Los Valles Land & Golf, LLC.) | 3/3/04 | 11,700,000 | 0.00% | - | 259,392 | 161,599 | 97,694 |
| Performing | Hesperia II (Southern California Land Development, LLC) | 4/1/05 | 4,250,000 | 0.00% | - | 47,312 | 47,312 | (0) |
| Non-Performing | HFA- Clear Lake LLC | 1/6/05 | 16,050,000 | 0.88% | 141,000 | 230,499 | - | 230,499 |
| Non-Performing | HFA- Windham (HFAH Asylum, LLC) | 11/15/04 | 5,550,000 | 0.00% | - | 86,636 | - | 86,636 |
| Non-Performing | HFA-Clear Lake 2nd (HFAH Clear Lake, LLC) | 6/24/05 | 2,750,000 | 0.29% | 8,000 | 27,014 | - | 27,014 |
| Non-Performing | HFAH/Monaco, LLC | 12/19/03 | 4,000,000 | 100.00% | 4,000,000 | 100,322 | - | 100,322 |
| Non-Performing | Huntsville (West Hills Park Joint Venture) | 3/31/04 | 10,475,000 | 10.73% | 1,124,000 | 159,961 | 95,827 | 64,133 |
| Performing | I-40 Gateway West, LLC | 1/11/05 | 4,530,000 | 0.00% | - | 15,100 | 15,100 | 0 |
| Performing | I-40 Gateway West, LLC 2nd | 3/1/06 | 1,065,000 | 0.00% | - | 3,493 | 830 | 2,663 |
| Non-Performing | Interstate Commerce Center Phase II (ISCC Phase II, LLC) | 8/11/04 | 1,856,849 | 100.00% | 1,856,849 | 6,757 | - | 6,757 |
| Performing | La Hacienda Estate, LLC | 11/11/04 | 6,255,000 | 0.80% | 50,000 | 20,390 | 20,311 | 79 |
| Non-Performing | Lake Helen Partners | 12/7/04 | 3,159,704 | 35.76% | 1,129,948 | 34,564 | 22,687 | 11,878 |
| Non-Performing | Lerin Hills, LTD | 12/7/05 | 10,350,000 | 0.00% | - | 34,284 | 25,545 | 8,738 |
| Non-Performing | Margarita Annex | 7/26/04 | 12,000,000 | 24.42% | 2,930,000 | 228,338 | 197,759 | 30,579 |
| Non-Performing | Marlton Square (MS Acquisition Company, LLC) | 8/11/05 | 30,000,000 | 1.29% | 385,500 | 266,255 | 166,673 | 99,582 |



STRICTLY CONFIDENTIAL

| Loan Name Listing: | Borrower: |
|---|---|
| HFA- Windham | Homes for America Holdings and affiliates, Homes For America Holdings Asylum, LLC |
| HFA- Riviera 2nd | Homes for America Holdings and affiliates, Riveria-Homes For America Holdings, LLC |
| Ocean Atlantic $9,425,000 | Ocean Atlantic Chicago, LLC |
| Palm Harbor One | Palm Harbor One, LLC |
| Bundy Canyon $5,000,000 | Bundy Canyon Land Development, LLC |
| Amesbury/Hatters Point | Amesburyport Corporation |
| Bundy Canyon $7,500,000 | Bundy Canyon Land Development, LLC |
| Columbia Managing Partners | Columbia Managing Partners, LLC and David Rentz |
| Binford Medical Developers | Binford Medical Developers, LLC |
| Franklin - Stratford Investments, LLC | Franklin/Stratford Investments, LLC |
| Elizabeth May Real Estate | Elizabeth May Real Estate, LLC |
| La Hacienda Estate, LLC | La Hacienda Estates, LLC |
| Huntsville | West Hills Park Joint Venture, Curtis Development, LLC, and J A Dev., LC |
| Gramercy Court Condos | Gramercy Court, Ltd. and Treetops Management, Inc. |
| Lerin Hills | Lerin Hills, Ltd. and Lerin Hills Development Company, LLC |
| Wasco Investments | Wasco Investments, LLC |
| Foxhill 216, LLC | Fox Hills 185, LLC, Fox Hills River East, LLC, Fox Hills 119, LLC, Fox Hills 62, LLC, Fox Hills 37, LLC and Fox Hills Fresno Slough, LLC and Kent Hoggan |
| Gateway Stone | Gateway Stone Associates, LLC |
| Brookmere/Matteson $27,050,000 | Brookmere LLC and Lord & Essex Matteson, LLC |
| Rio Rancho Executive Plaza, LLC | Rio Rancho Executive Plaza, LLC |
| Eagle Meadows Development | Eagle Meadows Development |
| The Gardens Phase II | The Gardens, LLC |
| Copper Sage Commerce Center Phase II | Copper Sage Commerce Center, LLC |
| Standard Property Development | Standard Property Development, LLC |
| Bundy Canyon $8,900,000 | Bundy Canyon Land Development, LLC |
| Meadow Creek Partners, LLC | Meadow Creek Partners, LLC |
| Ten-Ninety | Ten Ninety, Ltd. and William R. Luca and Dorothy Luca, Trustees of the Luca Family Trust |
| Saddleback | Saddleback |

896707v5

Schedule 3.4(f)

Litigation, Proceeding, Governmental Investigations,
Judicial Order, Injunction or Decree with respect to the Loans

Claims or potential claims of the Borrowers, their principals, or other obligors with
respect to the following Loans:

| Loan Name Listing: | Borrower: |
|---|---|
| 3685 San Fernando Road Partners | 3685 San Fernando Road Partners, L.P. |
| 5055 Collwood, LLC | 5055 Collwood, LLC |
| 60th Street Venture, LLC | 60th Street Venture, LLC |
| BySynergy, LLC $4,434,446 | BySynergy, LLC |
| Cabernet | Cabernet Highlands, LLC |
| Fiesta Oak Valley | Oak Mesa Investors, LLC, |
| Fiesta USA/Stoneridge | Capital Land Investors, LLC |
| Glendale Tower Partners | Glendale Tower Partners, L.P. |
| Hasley Canyon | Los Valles Land & Golf, LLC |
| Hesperia II | Southern California Land Development, LLC |
| SVRB $4,500,000 | SVRB Investments, LLC |
| SVRB 2nd $2,325,000 | SVRB Investments, LLC |
| Urban Housing Alliance - 435 Lofts | Urban Housing Alliance, LLC |
| Cornman Toltec 160, LLC | Cornman Toltec 160, LLC |
| Bundy Canyon $2,500,000 | Bundy Canyon Land Development, LLC |
| Southern California Land 2nd | Southern California Land Development, LLC |
| University Estates | University Estates, Inc. |
| Slade Development | Slade Development, Inc. |
| Castaic Partners III, LLC | Castaic Partners III, LLC |
| ComVest Capital | ComVest Capital Satellite Arms, Inc. |
| HFA- Windham | Homes for America Holdings and affiliates, Homes For America Holdings Asylum, LLC |
| HFA- Riviera 2nd | Homes for America Holdings and affiliates, Riveria- Homes For America Holdings, LLC |
| Ocean Atlantic $9,425,000 | Ocean Atlantic Chicago, LLC |
| Palm Harbor One | Palm Harbor One, LLC |
| Bundy Canyon $5,000,000 | Bundy Canyon Land Development, LLC |
| Amesbury/Hatters Point | Amesburyport Corporation |
| Bundy Canyon $7,500,000 | Bundy Canyon Land Development, LLC |
| Columbia Managing Partners | Columbia Managing Partners, LLC and David Rentz |
| Binford Medical Developers | Binford Medical Developers, LLC |
| Franklin - Stratford Investments, LLC | Franklin/Stratford Investments, LLC |
| Elizabeth May Real Estate | Elizabeth May Real Estate, LLC |
| La Hacienda Estate, LLC | La Hacienda Estates, LLC |
| Huntsville | West Hills Park Joint Venture, Curtis Development, LLC, and J A Dev., LC |
| Gramercy Court Condos | Gramercy Court, Ltd. and Treetops Management, Inc. |
| Lerin Hills | Lerin Hills, Ltd. and Lerin Hills Development Company, LLC |

