# EXHIBIT 7

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| WINDHAM MILLS DEVELOPMENT CORPORATION | : | Case No: 04- 23619 (RLK) |
| Debtor. | : | |
| | : | |
| PLATINUM PROPERTIES 1, INC. | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. _____ |
| vs. | : | |
| | : | Pre-Trial Order |
| LOUIS TESTA, ESQ., AS CHAPTER 11 TRUSTEE OF WINDHAM MILLS DEVELOPMENT CORPORATION and HFAH ASYLUM, LLC. | : | Due Date:_____ |
| Defendants. | : | |

## **ADVERSARY COMPLAINT**

Party-in-interest, Platinum Properties 1, Inc. ("Platinum") hereby files the following verified Adversary Complaint, seeking a determination as to the validity, priority or extent of a lien or other interest in property, an injunction or other equitable relief and a declaratory judgment relating to its rights in property of the above-captioned debtor's estate.

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

2.    This Adversary Complaint seeks relief as contemplated by Fed. R. Bank. P. 7001(2), (7) and (9) to (i) determine the validity, priority or extent of a lien or other interest in property, which effects property of the estate; (ii) an injunction precluding Louis Testa, Trustee of the debtor's estate from selling, transferring, or negotiating the sale of certain property without Platinum's consent; and (iii) a declaratory judgment relating to Platinum's rights in certain property of the above-captioned debtor.

3.    This controversy is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## II.    THE PARTIES

4.    Platinum is an Indiana corporation with its principal place of business in Greenwood, Indiana. Pursuant to an Assignment and Assumption of Loan Serving Agreements dated December 13, 2007, Platinum is the party in interest asserting rights on behalf of seventy four (74) individual lenders as more fully set forth below.

5.    Louis Testa, Esq. is the Chapter 11 Trustee appointed for the bankruptcy estate of Windham Mills Development Corporation (the "Trustee").

6.    HFAH Asylum, LLC ("HFAH Asylum") is a Connecticut limited liability company with its principal place of business in Yonkers, New York.

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

III.    **FACTUAL BACKGROUND**

      7.     In 2004, Homes For America Holdings, Inc. ("HFA Holdings") expressed an interest in purchasing 13.2 acres of land, with 299,969 square feet of commercial space in 9 buildings in Willimantic, Connecticut (the "Windham Property") from Windham Mills Development Corporation ("Windham Mills").

      8.     In order to do so, USA Capital Diversified Trust Deed Fund, LLC and/or USA Commercial Mortgage Company (collectively "USA Capital"), agreed to raise the capital needed by HFA Holdings to purchase the Windham Property.

      9.     HFA Holdings and its affiliates have received tens of millions in loans and other advances through USA Capital from 1998 through 2006. Many of the loans and advances to HFA Holdings and its affiliates were not fully documented.

      10.     With respect to the purchase of the Windham Property, USA Capital agreed to identify and "sign up" individual lenders who would collectively loan the necessary funds to HFA Holdings. USA Capital would then act as the servicer for the loan.

      11.     To raise the funds necessary for HFA Holdings to purchase the Windham Property, USA Capital sent circulars and inquiries to potential lenders. A copy of the offering circular is attached hereto as Exhibit A.

      12.     The circulars and inquiries stated that the funds raised would be used by HFA Holdings to purchase the Windham Property and that HFA Holdings would grant the lenders a

3

First Deed of Trust (in Connecticut, known as a mortgage) on the Windham Property as collateral for the loan.

13.    Seventy-four (74) individuals and entities (collectively, the "HFA Lenders"), provided funds to USA Capital to be loaned to HFA Holdings to facilitate its purchase of the Windham Property. A list of the individual HFA Lenders is attached hereto as Exhibit B.

14.    Platinum now represents the interests of the HFA Lenders by virtue of a duly executed assignment of loan serving agreements.

15.    On November 16, 2004, USA Capital wired an initial advance of $5,050,000.00 of funds raised from the HFA Lenders to HFAH Asylum, a wholly-owned subsidiary of HFA Holdings, and on January 3, 2006, advanced an additional $500,000.00 of HFA Lenders' money to HFAH Asylum, thereby, bringing the total principal amount of the HFA Lenders' loan to $5,550,00.00 (the "Loan").

16.    HFA Holdings failed to negotiate a purchase of the Windham Property.

17.    Despite HFA Holdings' knowledge that USA Capital represented to the HFA Lenders that monies advanced would be used to purchase the Windham Property, and that their loans would be secured by a first priority mortgage on that property, instead of purchasing the Windham Property, HFAH Asylum, using the HFA Lender's funds, purchased the existing first lien note on the Windham Property - a promissory note in the original principal amount of $4,800,000, made by Windham Mills as borrower, in favor of Enterprise Capital, Inc. n/k/a

4

Independence Bank as lender (the "Enterprise Note") secured by a mortgage on the Windham Property (the "Enterprise Mortgage") and further secured by a collateral assignment of leases and rents (the "Assignment of Rents").

18.     As such, the Enterprise Note, Enterprise Mortgage and Assignment of Rents were assigned by Independence Bank to HFAH Asylum on or about November 10, 2004 – on the eve of foreclosure.

19.     Because HFAH Asylum and HFA Holdings failed to provide the original collateral promised to the HFA Lenders, HFAH Asylum and HFA Holdings, together, executed a document entitled "Collateral Assignment (Security Agreement)" which provided a security interest in the Enterprise Note, Enterprise Mortgage, together with all right, title and interest of HFAH Asylum therein, and all right, title and interest of HFAH Asylum in all substitute collateral and proceeds, along with all other documents that Windham Mills gave to Independence Bank to obtain the Enterprise Note and Enterprise Mortgage to "those persons listed on Exhibit A" (the "Collateral Assignment").

20.     All parties to the Collateral Assignment understood that "those persons listed on Exhibit A" as set forth in the Collateral Assignment referred to the HFA Lenders.  A copy of the Collateral Assignment is attached as Exhibit C.

21.     Because the Enterprise Note and the Enterprise Mortgage were the subject of a pending foreclosure action commenced by Independence Bank at the time the Enterprise Note

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

and Enterprise Mortgage were assigned to HFAH Asylum, the Collateral Assignment gave the

HFA Lenders the ability to prosecute the foreclosure action against the Debtor in the event of a

default by HFAH Asylum on the Loan.  See Exhibit C § 4.

      22.     Because HFA Holdings and HFAH Asylum changed the terms of the loan

originally contemplated by the HFA Lenders, the Collateral Assignment required HFAH Asylum

to execute loan documents to document the Loan between HFAH Asylum and the HFA Lenders.

      23.     In addition, the Collateral Assignment provided that HFA Holdings would deliver

a Guaranty of the HFA Lenders' Loan for the benefit of the HFA Lenders.

      24.     In accordance with the terms of the Collateral Assignment, USA Capital took

possession of the Enterprise Note and Enterprise Mortgage to perfect the HFA Lenders' security

interest in said instruments.  A letter from James Young, counsel to HFAH Asylum, to USA

Commercial Mortgage Company transmitting the original Enterprise Note and Enterprise

Mortgage is attached hereto as Exhibit D.

      25.     After taking possession of the Enterprise Note and Enterprise Mortgage, USA

Capital lost the original documents.  Copies of the Enterprise Note and Enterprise Mortgage are

attached hereto as Exhibit E and Exhibit F, respectively.

      26.     Notwithstanding their express representations, HFAH Asylum failed to execute

the formal loan documents and HFA Holdings refused to execute or honor the Guaranty, despite

requests that they execute said documents.  The failure to execute loan documents or formalize

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

the lending agreement is consistent with the prior practices of HFA Holdings (and its affiliates) and USA Capital.

27.    On December 15, 2004, Windham Mills filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

28.    According to the Schedules filed by Windham Mills in its bankruptcy case, the Windham Property is currently "under water" – meaning the amount of the liens against the property exceeds its value.

29.    On April 13, 2006, USA Capital, along with its parent and sister entities, filed for bankruptcy protection in Nevada (the "USA Capital Bankruptcy").

30.    Karim Chowdhury, the Chief Financial Officer of HFA Holdings, stated under penalty of perjury in a declaration, dated July 20, 2006 (the "Declaration") filed in the USA Capital Bankruptcy, that HFAH Asylum owes $5,550,000.00, in principal, to the HFA Lenders and acknowledged that HFAH Asylum owed an additional $951,580.00 in accrued interest, fees and costs to the HFA Lenders as of July 20, 2006. A copy of the Karim Chowdhury declaration is attached hereto as Exhibit G.

31.    Karim Chowdhury's Declaration further acknowledged that the HFA Lenders' Loan matured on June 16, 2006. See Exhibit G at ¶ 12.

32.    Compass Financial Partners, LLC, Compass USA SPE LLC, and Compass Partners LLC (collectively "Compass") subsequently purchased the right to take over the

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

servicing duties on a number of loans managed by USA Capital, including the HFA Lenders'

Loan to HFAH Asylum from the USA Capital bankruptcy estate.

33.     On December 13, 2007, Compass executed an Assignment and Assumption of

Loan Servicing Agreements with Platinum.  A copy of the Assignment and Assumption of Loan

Serving Agreements is attached hereto as Exhibit H.

34.     Platinum is the current loan servicer for the HFA Lenders' Loan to HFAH

Asylum.

35.     The HFA Lenders have authorized Platinum to act on their behalf with respect to

the Loan and their rights pursuant to the Collateral Agreement.

36.     Despite the fact that: (a) HFAH Asylum has had the benefit of $5,550,000.00 of

the HFA Lenders' money for over two and one-half years; and (b) HFAH Asylum and USA

Capital have acknowledged the debt in court filings, HFAH Asylum refuses to take any steps to

document the Loan or pay amounts owed to the HFA Lenders under the Loan (amounts which

HFA Holdings admitted are due and payable to the HFA Lenders).

37.     Upon information and belief, HFAH Asylum attempted to resell the Enterprise

Note and Enterprise Mortgage without the HFA Lenders' consent.  In late April 2007, Todd

Hansen, Manager of Platinum, received a telephone call from an individual named Rob Walsh.

Mr. Walsh informed Mr. Hansen that he had spoken with HFAH Asylum about possibly

purchasing the Enterprise Note and Enterprise Mortgage from HFAH Asylum through Compass.

8

The HFA Lenders, who have a valid, duly perfected security interest in the Enterprise Note and Enterprise Mortgage, have never authorized the sale of the Enterprise Note and Enterprise Mortgage and were never advised of a prospective sale of the Enterprise Note and Enterprise Mortgage.

38.    On February 5, 2005, HFAH Asylum moved for relief from the automatic stay in the Windham Mills bankruptcy case seeking authority to proceed with the foreclosure of the Enterprise Mortgage.[1]

39.    In addition, upon information and belief, the Trustee is contemplating the sale of the Windham Property.  Because the property is under water, in order to facilitate a sale of the property, the Trustee needs the consent/assistance of the first lien holder on the property.  To that end, the Trustee, mistakenly, has been dealing with HFAH Asylum exclusively.

40.    HFAH Asylum and HFA Holdings are currently in default of the HFA Lenders' Loan and/or the HFA Lender's Loan has matured.  Therefore, pursuant to the Collateral Assignment, the HFA Lenders are entitled to foreclose upon their interests in the Enterprise Note, Enterprise Mortgage and Assignment of Rents.

41.    As such, the HFA Lenders are the real parties in interest with respect to the foreclosure and/or sale of the Windham Property.

---

[1] The Court has not yet ruled on HFAH Asylum's motion.

9

**Count One:    Declaratory Judgment**

      1 – 41.  Plaintiff repeats and realleges paragraphs 1 through 41, as if fully set forth herein.

      42.      The foregoing allegations are disputed as between Platinum, acting on behalf of the HFA Lenders, HFAH Asylum and the Trustee and, as such, necessitate a declaration by the Court that:

      a.      The HFA Lenders who are listed in <u>Exhibit B</u> attached hereto comprise the individuals and entities referred to as "those persons listed on Exhibit A attached hereto" in the Collateral Assignment;

      b.      HFAH Asylum is indebted to the HFA Lenders for repayment of the principal, interest, and other fees, costs and expenses incurred by the HFA Lenders in connection with the Loan made by the HFA Lenders to HFAH Asylum on or about November 2004, a loan in the aggregate principal amount of $5,550,000.00;

      c.      The Collateral Assignment is in full force and effect and the HFA Lenders have a valid, non-avoidable, duly-perfected, first priority lien on the Enterprise Note, Enterprise Mortgage and Assignment of Rents which secures the HFA Lenders' Loan.

      d.      The HFA Lenders' Loan to HFAH Asylum is in default and/or has matured;

10

e.  The HFA Lenders are entitled to possession of the originals of the Enterprise Note and Enterprise Mortgage;

f.  As a result of the default on the HFA Lenders' Loan and/or maturity of the HFA Lenders' Loan, the HFA Lenders are the current beneficiaries of the Enterprise Mortgage, holders of the original Enterprise Note and beneficiaries of the Assignment of Rents and, as such, are entitled to receive rents paid by tenants of the Windham Property;

g.  The HFA Lenders hold a secured claim against the Windham Mills Development Corporation in the amount due under the original Enterprise Note and such claim is secured by the Enterprise Mortgage and Assignment of Rents; or alternatively, the HFA Lenders seek a declaration as to the validity, priority and extent of their lien in the Windham Property; and

h.  As valid lien holders of the Enterprise Note, Enterprise Mortgage and Assignment of Rents, the HFA Lenders are entitled to foreclose their security interests in the same.

**Count Two:  Permanent Injunction**

1 – 42.  Plaintiff repeats and realleges paragraphs 1 through 42 of Count One, as if fully set forth herein.

11

43.    In accordance with the declaration sought in Count One, Plaintiff seeks an injunction barring the Trustee from selling or transferring the Windham Property without the consent of Platinum, acting on behalf of the HFA Lenders.

44.    In accordance with the declarations sought in Count One, Plaintiff seeks and injunction barring the Trustee from negotiating with HFAH Asylum and/or HFA Holdings with respect to any interest HFAH Asylum and/or HFA Holdings may claim to hold in the Windham Property.

45.    In accordance with the declaration sought in Count One, an injunction precluding HFA Asylum and the Trustee from receiving, collecting or accepting rents paid by the tenants of the Windham Property, absent a cash collateral Order providing adequate protection to the HFA Lenders.

**Count Three:  Imposition of a Constructive Trust**

1 – 42.  Plaintiff repeats and realleges paragraphs 1 through 42 of Count One, as if fully set forth herein.

43.    As set forth herein, HFAH Asylum, in contravention of prior representations known to have been made to the HFA Lenders, HFAH Asylum used the Loan to acquire the Enterprise Note and Enterprise Mortgage rather than acquire the Windham Property.

44.    After replacing the collateral promised to the HFA Lenders, with a security interest in the Enterprise Note, Enterprise Mortgage and Assignment of Rents by virtue of the

12

Collateral Assignment, HFAH Asylum failed to execute documents and/or take the steps

necessary to further document the Loan, as provided for by the Collateral Assignment.

45.    Despite the fact that HFAH Asylum has had the benefit of $5,550,000.00 of the

HFA Lenders' money for over two and one-half years and that the Loan is in default and/or has

matured, HFAH Asylum had refused to pay any amounts owed to the HFA Lenders under the

Loan or acknowledge HFA Lender's rights in the Enterprise Note and Enterprise Mortgage.

46.    HFAH Asylum also refuses to execute documents and/or take the steps necessary

to allow the HFA Lenders to foreclose upon their security interest in the Enterprise Note,

Enterprise Mortgage or Assignment of Rents, as provided for by the Collateral Assignment.

47.    By reason of the foregoing, it offends equity and good conscience for HFAH

Asylum to retain exclusive control over the Enterprise Note, Enterprise Mortgage and

Assignment of Rents to the exclusion of the HFA Lenders.

48.    By reason of the foregoing, HFAH Asylum has engaged in wrongful conduct

which has harmed the HFA Lenders.

49.    By reason of the foregoing, HFAH Asylum has been unjustly enriched to the

detriment of the HFA Lenders.

50.    As such, HFAH Asylum is holding the Enterprise Note, Enterprise Mortgage and

Assignment of Rents, and the rents collected from the Debtor, in a constructive trust for the

benefit of the HFA Lenders.

ZEISLER & ZEISLER, P.C.  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

**Count Four:   Foreclosure of Security Interests**

1 – 42. Plaintiff repeats and realleges paragraphs 1 through 42 of Count One, as if fully set forth herein.

43.     In accordance with the declarations sought in Count One, the HFA Lenders hold a valid, non-avoidable, duly-perfected, first priority lien on the Enterprise Note, Enterprise Mortgage and Assignment of Rents which secures the HFA Lenders' Loan (the "Collateral").

44.     The HFA Lenders' Loan is in default and/or has matured thereby entitling the HFA Lenders to possession and control of the Collateral.

**Count Five:   Relief from Stay**

1 – 42. Plaintiff repeats and realleges paragraphs 1 through 42 of Count One, as if fully set forth herein.

43.     As set forth on the Windham Mill's Schedule "A" filed with the bankruptcy court on January 13, 2005, the fair market value of the Windham Property was $5,200,000.

44.     Schedule "D" filed by Windham Mills with the bankruptcy court provides that, as of January 13, 2005, the Windham Property was encumbered by a lien in favor of the holder of the Enterprise Mortgage in the amount of $4,910,000.

45.     According to Schedule "A", the Windham Property is encumbered by liens which total in excess of $30 million.

46.     The Trustee has not provided adequate protection to the HFA Lenders concerning

ZEISLER & ZEISLER, P.C.  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

their interest in the Windham Property and cause exists to grant the relief sought herein pursuant to 11 U.S.C. 362(d)(1).

47.     The Debtor has no cognizable equity in the Windham Property, and there is no equity in the Windham Property that would be available for unsecured creditors of the Debtor's estate.

48.     The Windham Property is not necessary to an effective reorganization of the Debtor.

49.     Therefore, in accordance with the declarations sought in Count One and pursuant to 11 U.S.C. 362(d)(1) and (2), the automatic stay should be modified to allow Platinum, acting on behalf of the HFA Lenders, to foreclose the Enterprise Note and Enterprise Mortgage.

15

WHEREFORE, the Plaintiff prays for the following relief:

**As to Count One:**

 (i)  A declaratory judgment that:

  a.  The HFA Lenders who are listed in <u>Exhibit B</u> attached hereto comprise the individuals and entities referred to as "those persons listed on Exhibit A attached hereto" in the Collateral Assignment;

  b.  HFAH Asylum is indebted to the HFA Lenders for repayment of the principal, interest, and other fees, costs and expenses incurred by the HFA Lenders in connection with the Loan made by the HFA Lenders to HFAH Asylum on or about November 2004, a loan in the aggregate principal amount of $5,550,000.00;

  c.  The Collateral Assignment is in full force and effect and the HFA Lenders have a valid, non-avoidable, duly-perfected, first priority lien on the Enterprise Note and Enterprise Mortgage which secures the HFA Lenders' Loan.

  d.  The HFA Lenders' Loan to HFAH Asylum is in default and/or has matured;

  e.  The HFA Lenders are entitled to possession of the originals of the Enterprise Note and Enterprise Mortgage;

16

f.    As a result of the default on the HFA Lenders' Loan and/or maturity of the HFA Lenders' Loan, the HFA Lenders are the current beneficiaries of the Enterprise Mortgage, holders of the original Enterprise Note and beneficiaries of the Assignment of Rents and, as such, are entitled to receive rents paid by tenants of the Windham Property;

g.    The HFA Lenders hold a secured claim against the Windham Mills Development Corporation in the amount due under the original Enterprise Note and such claim is secured by the Enterprise Mortgage and Assignment of Rents;

h.    As valid lien holders of the Enterprise Note, Enterprise Mortgage and Assignment of Rents the HFA Lenders can foreclose their security interests in the same.

(ii)    In the strict alternative, the HFA Lenders seek a declaration as to the validity, priority and extent of their lien in the Windham Property.

(iii)    Such other legal and equitable relief as the Court may deem appropriate.

**As to Count Two:**

(i)    An injunction barring the Trustee from selling or transferring the Windham Property without the consent of Platinum, acting on behalf of the HFA Lenders;

(ii)    An injunction barring the Trustee from negotiating with HFAH Asylum and/or

17

HFA Holdings with respect to any interest HFAH Asylum and/or HFA Holdings may claim to hold in the Windham Property; and

   (iii) An injunction precluding HFA Asylum and the Trustee from receiving, collecting or accepting rents paid by the tenants of the Windham Property.

   (iv) Such other legal and equitable relief as the Court may deem appropriate.

**As to Counts Three:**

   (i) A declaratory judgment that HFAH Asylum holds the Enterprise Note, Enterprise Mortgage and Assignment of Rents in constructive trust for the benefit of the HFA Lenders; and

   (ii) Such other legal and equitable relief as the Court may deem appropriate.

**As to Count Four:**

   (i) Foreclosure of the HFA Lenders' security interest in the Enterprise Note, Enterprise Mortgage and Assignment of Rents.

   (ii) Such other legal and equitable relief as the Court may deem appropriate.

18

**As to Count Five:**

(i)     In accordance with the declarations sought in Count One, an order from the Court granting Platinum relief from stay to foreclose the Enterprise Note and Enterprise Mortgage; and

(ii)     Such other legal and equitable relief as the Court may deem appropriate.

Dated this 26th day of February, 2008.

PLAINTIFF, PLATINUM PROPERTIES 1, INC.

By:     /s/Lawrence S. Grossman
        Craig I. Lifland (ct00976)
        Lawrence S. Grossman (ct15790)
        Kellianne Baranowsky (ct26684)
        ZEISLER & ZEISLER, P.C.
        558 Clinton Avenue
        Bridgeport, CT  06605
        (203) 368-4234

19

Draft 2/19/08

## <u>VERIFICATION</u>

I, Todd Hansen, hereby verify, under penalty of perjury, pursuant to 28 U.S.C. §

1746, that I have reviewed the allegations in this Complaint.  Based upon my personal

knowledge and review of all relevant documents, I hereby declare, pursuant to 28 U.S.C.

§ 1746, under penalty of perjury, that the foregoing complaint is true and correct.

Todd Hansen
Manager, Platinum Properties 1, Inc.

# EXHIBIT A to EXHIBIT 7

# EXHIBIT

# A

# USA Capital

## First Trust Deed Investment

**Borrower:**   Homes for America Holdings
Homes for America, a real estate investment company specializing in the acquisition, construction, and rehabilitation of select low-income and special situation residential properties throughout the United States Homes for America, an SEC reporting company with nearly $45 million in assets and controlling approximately 1,400 apartment units primarily in Texas and Florida, with a cumulative annual NOI of approximately $6.6 million.

The company focuses on value-added acquisitions of multi-family properties and leverages its position with astute use of government financing programs such as FNMA, FHA, HUD, and tax-free debt instruments. In addition, Homes for America is involved in selected urban development projects in which it can provide value-added development in conjunction with government subsidies or tax breaks.

**Loan Amount:**   $6,000,000

**Rate:**   12% (net) paid monthly

**Term:**   12 months

**Collateral:**   First Deed of Trust on approximately 13.2 acres of land, with 299,969 square feet of commercial space in 9 buildings, in Willimantic, Connecticut, commonly known as Windham Mills.

**Use of Proceeds:**   The proceeds from this loan will be used for acquisition of the property, and property improvements.

**The Project:**   Windham Mills was first constructed in the early 1900's, is located one mile east of downtown Willimantic Connecticut, with views of the

**(775) 851-8180**
Licensed by the State of Nevada Division of Mortgage Lending
USA Commercial Mortgage Company 4484 S. Pecos Rd, Las Vegas NV 89121
License #MB 333
**Oliver Puhr**
Cell (775) 544-8715
Email: opuhr@usacapitalcorp.com
Money invested through a mortgage broker is not guaranteed to earn any interest or return and is not insured. Before investing investors must be provided applicable disclosure

# USA Capital

Willimantic River.   Windham Mills is an old thread mill that is built of solid granite exterior walls, wood columns, wood support joists and wood plank flooring.  The property consist of 9 buildings containing approximately 300,000 square feet of space.  Substantial renovation work on the project has already been completed.  Approximately 40% of the space is currently leased to commercial tenants generating approximately $750,000 of rental income annually.  Homes for America's plans for the property call for conversion of the balance of the space to residential uses.

**Loan-to-Value:**   Approximately 75% based on an appraisal by AMADON & Associates, Inc. dated 2-4-04.

**The Developer:**   The project is being developed by Homes for America Holdings, Inc. a prior borrower of USA Capital.  The company has been involved in the purchase, rehabilitation, and management of nearly 2,000 apartment units primarily in Texas and Florida.  Homes for America is currently working on the rehabilitation and stabilization of- the historic Colt Arms factory, or Coltsville Heritage Park, in downtown Hartford, Connecticut

**Guarantees:**   The loan will be guaranteed by Homes for America Holdings, Inc.  The company has an estimated market value of equity in their existing properties of approximately $23 million.

**Minimum:**   A minimum investment of $50,000 is required to participate.

**(775) 851-8180**
Licensed by the State of Nevada Division of Mortgage Lending
USA Commercial Mortgage Company 4484 S. Pecos Rd, Las Vegas NV 89121
License #MB 333
**Oliver Puhr**
**Cell (775) 544-8715**
**Email: opuhr@usacapitalcorp.com**
Money invested through a mortgage broker is not guaranteed to earn any interest or return and is not insured. Before investing investors must be provided applicable disclosure

# EXHIBIT B to EXHIBIT 7

# EXHIBIT

# B

EXHIBIT "A"

<u>LENDERS</u>

| | NAMES | AMOUNT |
|---|---|---|
| 1 | Elizabeth J. Annin Trustee of Annin Family Trust | $50,000 |
| 2 | Ruby Bell a married woman dealing with her sole & separate property | $50,000 |
| 3 | Hannah Brehmer an unmarried woman & Marti McAllister a married woman dealing with her sole & separate property as joint tenants with right of survivorship | $75,000 |
| 4 | Richard L. Cadieux & Clara M. Cadieux husband & wife as joint tenants with right of survivorship | $50,000 |
| 5 | Eugene W. Cady & Sandra L. Cady Trustees of the Eugene W. Cady & Sandra L. Cady Trust dated 9/24/85 | $50,000 |
| 6 | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 7 | Delbert C. Case a single man | $50,000 |
| 8 | Alta Bates Summit Foundation Trustee of the Paul G. Chelew Charitable Remainder Unitrust III | $250,000 |
| 9 | First Savings Bank Custodian For Anthony Christian IRA | $100,000 |
| 10 | Robert T. Chylak & Barbara M Chylak Trustees of the Robert T Chylak & Barbara M Chylak Family Trust dated 10/30/90 | $50,000 |
| 11 | James Cielen a married man dealing with his sole & separate property | $50,000 |
| 12 | De Vera Cline a single woman | $100,000 |
| 13 | Larry E. Colborn & Loretta A. Colborn Trustees for the Colborn Revocable Living Trust dated 8/6/90 | $50,000 |
| 14 | James A. Coy & Margaret G. Coy Trustees of the James A. Coy & Margaret G. Coy Revocable Trust dated 9/27/00 | $50,000 |
| 15 | First Savings Bank Custodian For Rena DeHart IRA | $50,000 |
| 16 | DeHart/Hooks LP a Nevada limited partnership | $60,000 |
| 17 | Gary Deppe A single man | $50,000 |
| 18 | James D. Dery & Ann R. Dery husband & wife | $100,000 |
| 19 | Robert Dollar & Barbara Dollar Trustees of The Dollar Family Trust dated 3/16/01 | $50,000 |
| 20 | Edward D. Earl a married man dealing with his sole and separate property | $100,000 |
| 21 | Robert D. Earp a married man dealing with his sole & separate property | $50,000 |
| 22 | Harold Epstein Trustee of the Harold Epstein Revocable Living Trust dated February 14 1991 | $50,000 |
| 23 | Frank J. Evangelho & Diana L. Evangelho Trustees of the Evangelho Family Revocable Trust dated 10/7/03 | $50,000 |

HPA-Asylum Windham Amend 1 ($5,550,000)

| | | |
|---|---|---|
| 24 | Sagrario T. Evers Trustee of the Sagrario T. Evers Living Trust dated 5/1/01 | $100,000 |
| 25 | Byrne E. Falke Sr. Trustee of the Byrne Falke Living Trust | $125,000 |
| 26 | Byrne E. Falke Sr. Trustee of the Village Hardware Pension Trust | $60,000 |
| 27 | David R. Fuller & Monica Fuller Trustees of the David R. Fuller & Monica D. Fuller Trust | $100,000 |
| 28 | Paul Ggem & Eve Sylvie Ggem Trustees of the Ggem Family Trust dated 1/23/03 | $50,000 |
| 29 | Jack Goldenthal & Sylvia Goldenthal husband & wife as joint tenants with right of survivorship | $200,000 |
| 30 | James Paul Goode an unmarried man | $50,000 |
| 31 | John A. M. Handal a single man | $250,000 |
| 32 | Kenneth L. Hansen & Donna J. Hansen Trustees of the Hansen Family Trust dated 6/6/89 | $50,000 |
| 33 | Terry L. Hansen Trustee of the Terry L. Hansen Revocable Living Trust dated 9/25/03 | $50,000 |
| 34 | Donald A. Herrmann & Nancy E. Herrmann husband & wife as joint tenants with right of survivorship | $100,000 |
| 35 | Maureen A. Hjelte & G. Craig Hjelte husband & wife as joint tenants with right of survivorship | $50,000 |
| 36 | Homfeld II LLC a Florida limited liability company | $50,000 |
| 37 | James F. Huthert & Elizabeth A. Huthert | $50,000 |
| 38 | Delbert T. Johnston Jr. & Rebecca J. Johnston Trustees of the Johnston Estate Revocable Trust dated 5/17/94 | $50,000 |
| 39 | First Savings Bank Custodian For Charles Kastler III IRA | $50,000 |
| 40 | Gregor Kloenne & Otilia M. Kloenne Trustees of the Kloenne Living Trust dated 3/11/87 | $100,000 |
| 41 | Anna Lacertosa a widow & Marie Lacertosa | $50,000 |
| 42 | Emily P. Lee an unmarried woman | $50,000 |
| 43 | Robert S. Louis and Rose M. Louis Trustees of The Robert S. Louis and Rose M. Louis Family Revocable Living Trust dated 4/22/05 | $50,000 |
| 44 | Philip Lyons & Dora Lyons Trustees of the Philip & Dora Lyons Trust UA 8/9/99 | $50,000 |
| 45 | Susan M. Mack an unmarried woman & Kelly Cooper an unmarried man as joint tenants with right of survivorship | $65,000 |
| 46 | Lou O. Maldonado Trustee for the benefit of Maldonado Trust under agreement dated 10/3/95 | $100,000 |
| 47 | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 48 | Michael J. McLaws a single man | $50,000 |
| 49 | Dale J. McMullan Trustee of the McMullan Living Trust dated 8/19/94 | $50,000 |
| 50 | Wayne S. Miller and Kathryn A. Miller husband and wife as joint tenants with the right of survivorship | $50,000 |

IGA-/aylum Windham Amend 1 ($5,550,000)

| | | |
|---|---|---:|
| 51 | Monighetti Inc. a Nevada corporation | $50,000 |
| 52 | Angela Mosinskis Trustee of the Angela G. Mosinskis Family Trust dated 11/18/02 | $100,000 |
| 53 | Carla D. Neilan Trustee of the Neilan Living Trust dated 01/02/04 | $60,000 |
| 54 | Robert L. Ogren Trustee for the benefit of the Robert L. Ogren Trust dated 6/30/92 | $100,000 |
| 55 | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $100,000 |
| 56 | Dennis Raggi a married man dealing with his sole & separate property | $100,000 |
| 57 | Ray Properties LLC a Nevada limited liability company | $50,000 |
| 58 | First Savings Bank Custodian For Thomas Rehn IRA | $90,000 |
| 59 | Marvin Rickling & Rosemary Rickling Trustees of the Rickling Family Trust | $50,000 |
| 60 | Duane B. Roberts a single man | $100,000 |
| 61 | Murlyn F. Ronk & Penny Ronk Trustees of the Ronk Trust dated 05/18/00 | $50,000 |
| 62 | Lee Rotchy Trustee of the Lee Rotchy Trust dated 12/5/00. | $50,000 |
| 63 | Thalia Nicholas Routsis Trustee of the Thalia Routsis Family Trust dated 7/24/90 | $50,000 |
| 64 | Charles H Small Trustee of the Charles Henry Small Revocable Living Trust | $50,000 |
| 65 | Richard Small & Jacqueline Small Trustees of the Small Family Trust | $50,000 |
| 66 | Bruce Sonnenberg & Rosemary Sonnenberg husband & wife as joint tenants with right of survivorship | $50,000 |
| 67 | David A. Souza & Elizabeth M. Souza husband & wife as joint tenants with right of survivorship | $250,000 |
| 68 | T. Dwight Sper & Bonnie J. Sper Trustees of the T.D.S. Revocable Family Trust dated 9/29/98 | $100,000 |
| 69 | Brian R. Stange & Amy M. Stange Trustees of The Stange Trust dated 8/8/02 | $65,000 |
| 70 | John M. Tripp Trustee of the Tripp Family Trust 1997 | $50,000 |
| 71 | William G. Warwick & Virginia B. Warwick husband & wife as joint tenants with right of survivorship | $50,000 |
| 72 | Albert Winemiller & Debra Winemiller husband & wife as joint tenants with right of survivorship | $75,000 |
| 73 | First Savings Bank Custodian For Rudolf Winkler IRA | $75,000 |
| 74 | Rudolf Winkler & Carmel Winkler Trustees for the benefit of Winkler Family Trust dated 3/13/86 | $100,000 |
| | TOTAL | $5,550,000 |

282401

BFA-Asylum Windham Amend 1 ($5,550,000)

# EXHIBIT C to EXHIBIT 7

# EXHIBIT

# C

## COLLATERAL ASSIGNMENT
### (Security Agreement)

THIS COLLATERAL ASSIGNMENT (Security Agreement) (ASecurity Agreement@) is made this 16th day of November, 2004, by HFAH Asylum, LLC, a Connecticut limited liability company (the AAssignor@), in favor of those persons listed on Exhibit AA@ attached hereto (as amended or assigned from time to time, "Assignee"), and Assignor hereby grants Assignee a security interest in and to the following security:

(i)   that certain Promissory Note dated August 30, 1999 (the ANote@), in the original principal amount of Four Million Eight Hundred Thousand Dollars ($4,800,000), made by Windham Mills Development Corporation (AWMDC@) as Borrower to the order of Enterprise Capital, Inc., a Rhode Island loan and investment company now know as AIndependence Bank", as Lender (the AHolder@), which Note is secured by that certain Open-End Mortgage Deed dated August 30, 1999 (the AMortgage@), made by Borrower for the benefit of Holder and recorded among the land records of Willimantic, Connecticut, on August 30, 1999, in Book 582 at pages 1 - 51, granting a first mortgage lien on the real property therein described (the AProperty@ or the AMortgaged Property@); and

(ii)  that certain Open-End Mortgage Deed dated August 30, 1999 (the AMortgage@), made by Borrower for the benefit of Holder and recorded among the land records of Willimantic, Connecticut, on August 30, 1999, in Book 582 at pages 1 - 51, granting a first mortgage lien on the real property therein described (the AProperty@ or the AMortgaged Property@).

The foregoing instruments, together with all right, title, and interest of the Assignor therein, including substitute collateral and proceeds, along with all other documents that WMDC gave to Holder to obtain the Note and Mortgage, is referred to herein as the ASecurity Property@.  This Agreement is based on the terms and conditions, and is predicated on the recitals set out below.

### RECITALS

A.    Assignor, as Borrower, and Assignee, as Lender, agree to make a Loan Agreement (the ALoan Agreement@) whereby Assignee shall lend to Assignor the sum of Five Million Fifty Thousand Dollars ($5,050,000) (the ALoan@), evidenced by a Promissory Note (the ANew Note@), along with such other sums as may be advanced pursuant to the Loan Agreement.

B.    Homes for America Holdings, Inc., a Nevada corporation (AHFAH@ or "Homes Holdings"), has agreed to further secure the Loan by delivery of its Guaranty for the benefit of the Lender, as evidenced by its acknowledgement of this Security Agreement.



C.    HFAH is the corporate parent and sole Managing Member of Assignor, and will benefit from Lender extending the Loan to Borrower.

D.    All terms capitalized herein without definition are used with the meanings assigned to them in the Loan Agreement.

E.    Holder has obtained a Judgment of Foreclosure with respect to the Note and Mortgage on June 28, 2004 from the Superior Court, Judicial District of Windham at Putnam, Docket No. CV-03-00715805, and will complete the foreclosure at the earliest date it can.

F.    Assignee is acquiring this Security Agreement in the Note, Mortgage, and all Security Property as additional security for its Loan.

## AGREEMENTS

1.    Assignor hereby grants to Assignee a security interest in the Security Property, to secure Assignor=s obligations under the Loan Documents.

2.    To perfect this security agreement, the Assignor shall deliver to USA Capital, as agent for Lender, the original Security Property; provided that upon request, to effect the foreclosure and acquisition of the Mortgaged Property, Lender and USA Capital shall provide the original Security Property to Assignor's counsel in trust for presentation and enforcement as required.

3.    USA Capital and Lender shall return this Agreement, and the original Loan Documents and instruments constituting Security Property, to Homes Holdings when the Loan is fully repaid.

4.    If Assignor defaults on the Loan, then after notice as required by applicable Nevada law and the Loan Documents, Lender, at its sole option, may foreclose on the Note and Mortgage in partial satisfaction of the Loan, at its sole option.

5.    Any language to the contrary herein notwithstanding, should Lender have to foreclose on the Note in partial payment of the Loan, Lender shall be deemed to have received, on account of the Note, only as much money as it actually receives either from selling it, or from collecting it.

6.    Assignor hereby represents and warrants that:

(A)    it has title to and has not previously assigned, sold, encumbered, hypothecated, conveyed, or in any manner transferred the Security Property, or any interest therein (except as such previous assignments have been satisfied and released and are of no effect on the date hereof);

(B)    it has power and authority to make this assignment of the Security Property without the consent of any third party and this Security Agreement does not and will not violate any rule, statute, judgment, decree, order, contract, or agreement to which it or

FROM :HOMES FOR AMERICA HOLDINGS, INC    FAX NO. :914-964-7034          Nov. 16 2004 12:51PM  P4/5

Collateral Assignment                                                    HFAH Asylum LLC
(Security Agreement)                                                Homes for America Holdings, Inc.

Homes Holdings is a party;

(C)    it is in good standing, has duly authorized this Security Agreement, and that the
person signing this agreement is duly authorized to sign it on the Assignor=s behalf;

(D)    it is familiar with Assignee=s form of loan documents for loans of this nature, and
that it will execute new loan documents in those forms with Assignee in the initial
amount of $5,050,000, which may be increased, at Lender=s discretion, to
$6,000,000; and

(E)    it will promptly execute the Loan Documents for the Loan.

IN WITNESS WHEREOF the parties have executed this Security Agreement as and for the
day and year first above written.

LENDER:                                      ASSIGNOR:

By: USA Capital Diversified Trust Deed,      HFAH Asylum, LLC
    Fund, LLC
By: USA Capital Realty Advisors, LLC, Manager    By:    Homes for America Holdings, Inc.
By: USA Investment Partners, LLC, its Manager    Its:    Managing Member
By: USA Commercial Mortgage Company, its
    Manager

By: _____            By: _____
        Joseph D. Milanowski                       Robert A. MacFarlane
Its:    President                        Its:    Chairman and CEO

3

Collateral Assignment                                          HFAH Asylum LLC
(Security Agreement)                                    Homes for America Holdings, Inc.

ACKNOWLEDGMENT BY HOMES HOLDINGS:

   The undersigned authorized representative of Homes for America Holdings, Inc.,
acknowledges the foregoing Security Agreement and the undertaking to provide on behalf of the
Assignor the requisite Guaranty in the customary form provided by USA Capital.

                          Homes for America Holdings, Inc.

                          By: _____

                                Robert A. MacFarlane
                          Its:    Chairman and CEO
                          Date: November 16, 2004

4