# EXHIBIT D to EXHIBIT 7

# EXHIBIT

# D

# Andrews, Young & Geraghty P.C.

ATTORNEYS AT LAW

LOIS G. ANDREWS
JAMES L. YOUNG, JR.
PAUL M. GERAGHTY

MICHAEL S. BONNANO

216 BROAD STREET, PO BOX 751
NEW LONDON, CONNECTICUT 06320
TELEPHONE (860) 444-2101
FAX (860) 440-2615
young@newlondonlegal.com

March 9, 2006

Ms. Maggie Stone
Legal Department
USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121

Sent via UPS

Re: HFAH – USA COMMERCIAL MORTGAGE

Dear Ms. Stone:

In accordance with your request to me per your e mail of March 1, 2006, I am sending to you herewith the following original instruments:

1. Promissory Note from Windham Mills Development Corporation to Enterprise Capital, Inc., in the face amount of $4,800,000.00, and an Allonge concerning said Note in favor of HFAH, ASYLUM, LLC;

2. Open End Mortgage Deed from Windham Mills Development Corporation to Enterprise Capital, Inc.dated August 30, 1999, recorded in the land records of the Town of Windham at Volume 582, Page 1.

Although not specifically requested by you, I am also enclosing the original Assignment of Promissory Note and Mortgage Deed and Loan Documents from Independence Bank (f/k/a Enterprise Capital, Inc.) in favor of HFAH ASYLUM, LLC, recorded in the Windham land records at Volume 832, Page 91, and the original Assignment of Open-End Mortgage Deed and Collateral Assignment of Leases and Rents recorded in the land records at Volume 832, Page 90, also from Independence Bank (f/k/a Enterprise Capital, Inc.) in favor of HFAH ASYLUM, LLC.

Your e mail also requests that I send to you the original note from HFAH ASYLUM, LLC in favor of USA for $5,050,000, but I must inform you that I do not have any such instrument in my possession.

By sending you these documents, I have discharged my obligations to USA under any escrow arrangements.

Very truly yours,

James L. Young, Jr., Esq.

cc: Ray Pring, Esq.
client

# EXHIBIT E to EXHIBIT 7

# EXHIBIT

# E

EXHIBIT A

PROMISSORY NOTE

$4,800,000.00

East Greenwich, Rhode Island

August 30, 1999

FOR VALUE RECEIVED, the undersigned, Windham Mills Development Corporation, a Connecticut corporation with a place of business at 322 Main Street, Willimantic, CT (Individually, and if more than one, collectively, the "Borrower"),unconditionally, jointly and severally promise to pay to ENTERPRISE CAPITAL, INC. ("Lender"), a Rhode Island loan and investment company, or order, at its offices at 1485 South County Trail, East Greenwich, Rhode Island, or at such other place as may be designated in writing by the holder hereof, the principal sum of Four Million Eight Hundred Thousand and 00/100 ($4,800,000) DOLLARS, or if less, the aggregate unpaid principal amounts of the construction advances made by Lender to Borrower pursuant to the terms of that certain Construction and Term Loan Agreement ("the Loan Agreement") of even date herewith by and between Lender and Borrower together with interest in arrears from the date hereof on the unpaid principal balances hereunder. Interest shall be calculated on the basis of actual number of days elapsed over a year of three hundred sixty five (365) days. Payments of principal and interest under the Note shall be made as follows:

(1) Interest: Interest on the Note shall be calculated as follows:

1.1 Interest shall be at a rate per annum equal to one and one-half percent (1.50%) greater than the prime rate of interest (the "Prime Rate") as published each business day in the Money Rate Section of the Wall Street Journal, Eastern Edition ("Journal"), defined as the "base rate on corporate loans at large U.S. Money Center Commercial Banks" (the "Rate"). If the Prime Rate is shown as a range of numbers, Lender will use the highest. If the designations described above in quotation marks are changed by the Journal, Lender can use designations used by the Journal which, in Lender's reasonable judgment, are comparable to the above designations.



1.2 The Rate shall be determined and shall change quarterly on the first business day of January, April, July, and October of each year during the term of this note (hereinafter referred to as the "Interest Adjustment Date") and which new interest rate shall be applicable to the payments starting the first day of January, April, July and October of each year.

1.3 On the date hereof, the Prime Rate is seven and three-quarters percent (7.75%) and the Rate on this note shall accordingly be nine and one-quarter percent (9.25%) per annum until said Prime Rate shall change.

(2) Payments:

2.1 Interest Only Payments

Until ninety (90) days after the date of this Note, interest only on unpaid principal advances shall be paid monthly in arrears on the first day of each month commencing on the first full succeeding month following the date of this Note.

2.2 Principal and Interest Payments

Payments of principal and interest under this note shall be as follows.

Monthly payments of principal and interest at the Rate shall be made in the sum of Forty One Thousand One Hundred Six and 33/100 Dollars ($41,106.44) commencing on the first day of the second full succeeding month following ninety (90) days after the date of closing and continuing on the same date of each and every month thereafter for three hundred (300) consecutive months (25 years). On each Interest Adjustment Date, the Payee shall change the monthly payment amount so as to cause the unpaid principal balance to be fully paid by the three hundredth (300th) installment of principal and interest, using for calculation the assumption that the interest rate and monthly payment amount in effect on each Interest Adjustment Date will remain in effect until the three hundredth (300th) installment of principal and interest.

3. Holder should give written notice to Borrower of each increase or decrease in the interest rate within thirty (30) days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given.

4. Borrower shall provide Lender with written notice of intent to prepay part or all of this loan at least three (3) weeks prior to the anticipated prepayment date. Any prepayments shall be subject to a prepayment premium on the principal amount prepaid as follows:

| Year of the Note | Prepayment Premium |
|---|---|
| 1 | 5% |
| 2 | 4% |

| | |
|---|---|
| 3 | 3% |
| 4 | 2% |
| 5 | 1% |

Thereafter, prepayment may be made without premium or penalty.

(5) Borrower shall pay a late charge equal to 5% of the payment amount due if such payment is not received within 10 days of the due date.

Provided, however, in no event shall the amount of interest payment hereunder, together with all amounts reserved, charged, or taken by the Lender as compensation for fees, services, expenses incidental in the making, negotiating or collection of the loan evidenced hereby exceed the maximum rate of interest on the unpaid principal balance hereof allowable by applicable law. In the event that any sum is collected, said sum shall be applied to reduce the principal in an inverse order of maturity.

**The Note is the Promissory Note referred to in, and is entitled to the benefits of, the Loan Agreement. The applicable terms and conditions of the Loan Agreement are incorporated herein by reference as if fully set forth herein. Each capitalized term used in the Note and not expressly defined in the Note shall have the meaning ascribed to such term in the Loan Agreement. The Loan Agreement is on file at Lender's office address first referenced above and is available for review.**

Each of the undersigned, any endorser hereof, any other party hereto and any guarantor hereof (collectively "Obligors"): (i) waives presentment, demand, notice of demand, protest, notice of protest and notice of nonpayment and any other notice required to be given under the law to any of Obligors in connection with the delivery, acceptance, performance, default or enforcement of the Note, any endorsement or guaranty of the Note or any document or instrument evidencing any security for payment of the Note; (ii) consents to any and all delays, extensions, renewals or other modifications of the Note or waivers of any term hereof or release or discharge by Lender of any of Obligors or release, substitution or exchange of any security for the payment hereof or the failure to act on the part of Lender or any other indulgence shown by



Lender from time to time and in one or more instances (without notice to or further assent from any of Obligors) and agrees that no such action, failure to act or failure to exercise any right or remedy on the part of Lender shall in any way affect or impair the obligations of any Obligor or be construed as a waiver by Lender of, or otherwise affect, any of Lender's rights under the Note, under any endorsement or guaranty of the Note or under any document or instrument evidencing any security for payment of the Note; and (iii) jointly and severally agrees to pay, on demand, all costs and expenses of collection of the Note or of any endorsement or any guaranty hereof and/or the enforcement of Lender's rights with respect to, or the administration, supervision, preservation, protection of, or realization upon, any property securing payment hereof, including reasonable attorney's fees, and agrees that Lender shall have the right to set off without notice any and all sums at any time owed by or due from Lender to any of Obligors, whether or not matured.

The Note is delivered in and shall be construed under the laws of the State of Rhode Island, without reference to its conflict of laws principles, and in any litigation in connection with, or enforcement of, the Note, or any endorsement or guaranty of the Note or any security given for payment hereof.

**Prejudgment Remedy and Other Waivers.** BORROWER ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND WAIVES BORROWER'S RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH HOLDER MAY DESIRE TO USE, and further waives diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, and notice of any renewals or extensions of this Note, and all rights under any statute of limitations. THE BORROWER ACKNOWLEDGED THAT BORROWER MAKES THESE WAIVERS KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER. THE BORROWER FURTHER ACKNOWLEDGES THAT THE LENDER HAS NOT AGREED WITH OR



REPRESENTED TO BORROWER OR ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

**Jury Waiver.** THE BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE IS A PART AND/OR THE ENFORCEMENT OF ANY OF YOUR RIGHTS AND REMEDIES INCLUDING WITHOUT LIMITATION, TORT CLAIMS. THE BORROWER ACKNOWLDGES THAT BORROWER MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER. THE BORROWER FURTHER ACKNOWLEDGES THAT THE LENDER HAS NOT AGREED WITH OR REPRESENTED TO BORROWER OR ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

**Joint and Several Liability.** References in this Note to the Borrower in the singular shall include the plural, and if Borrower consists of more than one person, the liability of each Borrower shall be joint and several.

**Acknowledgment of Copy, Use of Proceeds.** The Borrower acknowledges receipt of a copy of this Note and attests that the proceeds of this Note are to be used for general commercial purposes.

**Miscellaneous.** The provisions of this Note shall be binding upon the heirs, executors, administrators, successors and assigns and shall inure to the benefit of Holder, its successors and assigns. If any provision of this Note shall, to any extent, be held invalid or unenforceable, then only such provision shall be deemed ineffective and the remainder of this Note shall not be affected.

~~**Security.** This Note is secured inter alia by a mortgage on property located on 322 Main Street,~~ Willimantic, Connecticut.

The term "Lender" shall include Lender's successors, endorsees and assigns.

Windham Mills Development Corporation

By: [signature]
Jeffrey L. Vose, President

EXECUTED IN THE PRESENCE OF:

[signature]
(Witness)

EXHIBIT "B"

All those parcels of land with all the buildings and improvements thereon situated in "Willimantic", Town of Windham, County of Windham, and State of Connecticut, as shown on the plan entitled "Survey Plan Prepared For NORTHEAST CONNECTICUT ECONOMIC ALLIANCE, INC. - Main St. & South Main St. - "Willimantic"- Windham, Connecticut - Scale 1"=100' - 6/13/1994, Revised June 16, 1994 - Sheets 1 and 2 - KWP ASSOCIATES", said parcels being bounded and described as follows:

Parcel #1A

Beg[illegible] at a point at the intersection of the westerly line of South Main Street with the [illegible] edge of the Willimantic [illegible] at the southeast corner of the herein described Parcel #1A [illegible] northwesterly direction 55' more [illegible] to a point at the northwesterly corner [illegible] parapet wall; thence N 23 degrees 26' 10" W, 40.20' to a point; thence [illegible] 25 degrees 26' 10" W, [illegible] to a point; thence in a northwesterly direction 43.94' along a curve to the [illegible] having a radius of 61.00' to a point in the southerly line of [illegible], the last four (4) courses follow the westerly line of said South Main Street; thence [illegible] 74 degrees [illegible] 27" W, 77.26' to a point; thence [illegible] 13' 45" W, 107.96' to a point; thence [illegible] degrees 39' 03" W, 67.[illegible] to an iron pin in the southerly line of Main Street at a corner of land now or formerly of Robert F. Lilley, the last [illegible] (3) courses being along the southerly line of Main Street; thence S 29 degrees 54' 44" E, 33.75' to an [illegible] pin; thence S 3 degrees 07' 28" E, 13.12' to an iron pin; thence S 20 degrees 28' 30" W, 15.00' to a point, the last [illegible] (3) courses being bounded westerly by land now or formerly of said Lilley; thence in an easterly direction in part [illegible] the northerly edge of the Willimantic River and in part along the westerly and southerly sides of a stone building [illegible] as No. 1 [illegible] 520' more or less to a point in the westerly side of South Main Street and the point of beginning.

[illegible] 2.0 acres of land more or less.

Parcel # 1A deleted

Parcel #1B

Beginning at a point at the intersection of the northerly line of land of State of Connecticut with the southeasterly edge of the Willimantic River, thence in a southeasterly direction 900' more or less along a curve to the left having a radius of 1298.60' to a point, the last course being along the northerly line of land now or formerly of said State, thence northerly radial to said last described course 12' more or less to a point at the southerly edge of the Willimantic River; thence in a northwesterly and westerly direction 1, 100' more or less along the edge of said River to the point of beginning.

The above described Parcel #1B contains 1.5 acres of land more or less.

Parcel #1C

Beginning at a point at the intersection of the southerly line of land now or formerly of State of Connecticut with the southeasterly edge of the Willimantic River, thence in a westerly direction 800' more or less along the southerly edge of the Willimantic River to a point and to land now or formerly of Town of Windham; thence in a southwesterly direction 60' more or less; thence in a southerly direction more or less to a point at the northwesterly corner of land now or formerly of Robert T. Russo & Linda B. Russo, the last two (2) courses being bounded westerly by land now or formerly of the Town of Windham; thence in an easterly direction 180' more or less to a stone bound, the last described line being bounded southerly by said Russo and land now or formerly of Nikola Dancuk & Sofija Dancuk; thence S 77 degrees 18' 25" E, 49.45' to a point; thence S 65 degrees 02' 30" E, 128.27' to a point, the last two (2) courses being bounded southerly by land now or formerly of Hope D. Orkney; thence S. 77 degrees 06' 22" E, 104.10' in part along the face of a retaining wall to a point, the last course being bounded southerly by land now or formerly of Paulus E. Ingram and by land now or formerly of Cadace A. Lagasse; thence S 83 degrees 41' 52" E, 204.23' to an iron pin, the last

Vol 764 Pg 121

formerly of said Melaty.

The above described Parcel #2C contains 300 s.f. more or less.

Parcel #3

Beginning at an iron pin in the northerly line of Windham Road on the easterly side of a paved drive and at the southwesterly corner of land now or formerly of Alva P. Loiselle, thence N 25 degrees 19' 54" E, 337.05' in part along a retaining wall to an iron pin; thence S 60 degrees 23' 48" E, 184.11' along a stone wall to an iron pin and to land now or formerly of John D. Brennan & Rose B. Brennan, the last course being bounded southerly by land now or formerly of said Loiselle and land now or formerly of Susan Nasin Shuell; thence N 24 degrees 51' 10" E, 192.89' to an iron pin, the last course being bounded easterly by land now or formerly of said Brennan and land now or formerly of Margaret D. Carlsen; thence N 24 degrees 45' 38" E, 180.55' to an iron pin; thence continuing N 24 degrees 46' 38", 1.73' to a point in the southerly line of land now or formerly of State of Connecticut, the last two (2) courses being bounded easterly by land now or formerly of James Haggerty & Earl F. Sousa; thence S 85 degrees 00' 57" W, 64.58' to a point; thence S 77 degrees 04' 14" W, 133.00' to a point; thence S 73 degrees 30' 20" W, 65.31' to the southeast corner of a granite post at a corner of land now or formerly of Edward P. Hourihan & Martha M. Hourihan, the last three (3) courses being bounded northerly by land now or formerly of said State of Connecticut; thence S 24 degrees 30' 20" W, 203.39' to a point; thence S 24 degrees 18' 40" W, 335.29' to a point at the southeast corner of a retaining wall in the northerly line of Windham Road, the last two (2) courses being bounded westerly by land now or formerly of said Hourihan; thence S 60 degrees 36' 56" E, along the northerly line of Windham Road, 19.48' to an iron pin and the point of beginning.

The above described Parcel #3 contains 1.59 acres of land more or less.

Parcel #4

Beginning at a point at the intersection of the northerly line of land now or formerly of State of Connecticut with the southeasterly edge of the Willimantic River, thence in an easterly direction 320' more or less to a point at the beginning 649.73' along a curve to the right having a radius of 2496.30 to a point (the chord of said curve being N 80 degrees 58' 30" E, 647.90'); thence in an easterly direction 596.88' along a curve to the right having a radius of 2500.40' to an iron pin and a corner of land now or formerly of Keith J. Nasin & Mark E. Nasin (the chord of said curve being S 85 degrees 21' 27" E, 595.46'); thence N 00 degrees 37' 41" W, 778.13' to a point; thence N 31 degrees 45' 44" W, 10.00' to an iron pin; thence continuing S 31 degrees 45' 44" E, 20' more or less to the southeasterly edge of the Willimantic River, the last three (3) courses being bounded easterly by land now or formerly of said Nasin; thence in a northwesterly and southwesterly direction along the southerly and easterly edge of the Willimantic River 2,270' more or less to a point in the northerly line of land now or formerly of said State of Connecticut and the point of beginning.

The above described Parcel #4 contains 21 acres more or less of land.

Parcel #6

Appurtenant water rights as set forth in certain instruments recorded in Volume 40, Page 177; Volume 40, Page 221, Volume 40, Page 225 and Volume 284, Page 370 of the Windham Land Records, subject to the terms and provisions contained therein.

Parcel #7

Passage rights and easements as set forth in a deed from The American Thread Company to Nellie Ashton dated July 11, 1938 and recorded in Volume 126 at Page 410 of the Windham Land Records; a deed from The American Thread Company to Anna Czuplck dated July 19, 1938 and recorded in Volume 126 at Page 436 of the Windham Land Records and a deed from The American Thread Company to Gertrude A. Harris dated August 4, 1938 in Volume 130 at Page 82 of the Windham Land Records.

RECEIVED FOR RECORD Nov. 7, 2003
AT 10:20
ATTEST [signature] TOWN CLERK



course being bounded southerly by land now or formerly of Wallace Henderson & Joyce Henderson, by land now or formerly of John Kost & Krystana Kost and by land now or formerly of Joseph Schwed & Maria Schwed; thence N 55 degrees 09' 00", 80.48' to a point; thence S 79 degrees 12' 00" E, 138.07' to a point in the southerly line of land now or formerly of State of Connecticut, the last course being bounded southerly by land now or formerly of Wayne R. Dally et als, land now or formerly of James F. Thompson, Jr. & Jo-Ann Thompson, and land now or formerly of Thomas Pollitt, Jr. & Clair A. Pollitt; thence in a northwesterly direction along a curve to the right having a radius of 1422.35' along land now or formerly of said State of Connecticut, 95' more or less to a point at the southerly edge of the Willimantic River and the point of beginning;

The above described parcel #1C contains 0.9 acres more or less of land.

Parcels #2A & #2B

Beginning at an iron pin in the southeasterly line of Main Street at the northwest corner of land now or formerly of Est. of Bill Porter, thence S 50 degrees 47' 35" W, 792.94' along the southwesterly line of Main Street to a point; thence S 56 degrees 20' 07", 89.49' to a point; then S 63 degrees 27' 11" W, 206.10' to a point; thence S 67 degrees 06' 50" W, 182.55' to a point in the easterly line of South Main Street, the last four (4) courses are along the southerly line of Main Street; thence in a southwesterly direction 17.09' along a curve to the left having a radius of 10.00' to a point (the chord of said curve being S 13 degrees 14' 10" W, 15.08'); thence S 63 degrees 52' 29" W, 4.80' to a point; thence S 26 degrees 07' 31" E, 153.01' to a point; thence S 26 degrees 11' 19" E, 78.02' to an iron fence post; thence continuing S 26 degrees 11' 19" E, 25' more or less to a point at the face of a retaining wall on the northerly edge of the Willimantic River, the last five (5) courses being along the easterly line of South Main Street; thence in an easterly and northeasterly direction 3,500' more or less along the northerly edge of the Willimantic River to a point and to land now or formerly of Town of Windham thence N 69 degrees 33' 47" W, 25' more or less to a fence post; thence N 30 degrees 26' 17" E, 62.65 to a fence post; thence S 88 degrees 35' 06" W, 88.47' to a fence post; thence S 53 degrees 36' 50" W, 118.02' to a fence post; thence S 5 degrees 03' 49" W, 5.23' to a fence post; thence S 88 degrees 11' 55" W, 363.00' to a fence post; thence N 81 degrees 03' 18", 86.67' to an iron pin in the southeasterly line of Main Street, the last eight (8) courses follow the line of a fence and are bounded northerly by land now or formerly of said Town of Windham; thence S 58 degrees 07' 56" W, 158.69 to a point; thence S 50 degrees 46' 45" W, 287.73' to an iron pin at a corner of land now or formerly of Oliva D. Roy & Aline R. Roy, the last two (2) courses being along the southeasterly line of Main Street; thence S 18 degrees 38' 32" W, 133.72 to a fence post; thence S 40 degrees 06' 24" W, 246.44' to a fence post, the last course being bounded northwesterly by land now or formerly of said Roy, land now or formerly of John A. Rood & Robyn Rood, and land now or formerly of James C. Meraty & Doris L. Meraty; thence S 42 degrees, 09' 04" W, 65.90' to a fence post; thence N 38 degrees 36' 44" W, 41.61' to a fence post, the last two (2) courses being bounded northwesterly and northeasterly by land now or formerly of Nectalis G. Martinez & Carmen M Ramos; thence S 52 degrees 08' 19" W, 85.67' to a fence post; thence N 39 degrees 44' 27" W, 82.39' to an iron pin in the southeasterly line of Main Street and the point of beginning the last two (2) courses being bounded northwesterly and northeasterly by land now or formerly of Est. of Bill Porter, and the last six (6) courses follow the line of said fence.

The above described Parcels #2A and #2B contain a total area of land of 13.2 acres more or less.

Parcel #2C

Beginning at a point at the northerly corner of the herein described parcel, which point is located S 39 degrees 14' 01" E, 68.07' from an iron pin in the southeasterly line of Main Street, which iron pin marks the northwesterly corner of land now or formerly of James C. Meraty & Doris L. Meraty and the northeast corner of land now or formerly of Nectalis G. Martinez & Carmen M. Ramos, thence from the first mentioned point S. 50 degrees 45' 59" W, 20.00' to a point; thence S 39 degrees 14' 01" E, 15.00' to a point; thence N 50 degrees, 45' 59" E, 200.00' to a point in the southwest line of land now or formerly of said Meraty, the last three (3) courses being bounded northerly, westerly, and southerly by land now or formerly of said Martinez & Ramos; thence N 39 degrees 14' 01" W. 15.00' to the point of beginning, the last course being bounded northerly by land now or

