EXHIBIT F to EXHIBIT 7

# EXHIBIT

F



*/1*

**VOL 582 PAGE 1**

## OPEN-END
## MORTGAGE DEED

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, G R E E T I N G:

KNOW YE THAT Windham Mills Development Corporation , a Connecticut corporation with a place of business at 322 Main Street, Willimantic, CT , ("Grantor"), for the consideration of One and 00/100 Dollar ($1.00) and other valuable considerations received to its full satisfaction of ENTERPRISE CAPITAL, INC., a Rhode Island loan and investment company with an office at 1485 South County Trail, East Greenwich, Rhode Island 02818 ("Grantee"), does give, grant, bargain, sell and confirm unto the said Grantee, its successors and assigns forever, a certain parcel of land, with the buildings and improvements now or hereafter placed thereon, situated in the Town of Windham, CT, County of Windham being more particularly bounded and described on Exhibit A, attached hereto and made a part hereof ("Premises").

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, including, but not limited to, all mineral rights and income from removal of minerals and gravel therefrom;



Together with all right, title and interest of the Grantor, if any, in and to the land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the above-described Premises;

Together with all buildings and improvements now or hereafter placed on the Premises, all construction materials and equipment, all fixtures, appliances, machinery and equipment now or hereafter installed, and all the appurtenances thereto, thereon or therein: excluding, however, any such items of property which are owned by tenants and which according to the terms of any applicable lease may be removed by such tenants at the expiration of the lease;

Together with any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises as a result of (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any street; or (c) any other injury to, or decrease in, the value of the Premises, to the extent of all amounts which may be secured by this mortgage at the date of receipt of any such award or payment by the Grantee.

To have and to hold the above granted and bargained Premises, with the appurtenances thereof, unto it, the said Grantee, its successors and assigns forever, to it and their own proper use and behoof. And also, the said Grantor does, for itself, its successors and assigns, covenant with the said Grantee, its successors and assigns, that at and until the ensealing of these presents, it is well seized of the Premises as a

OCT 14 1999



VOL 582 PAGE 46

IN WITNESS WHEREOF, Lender and Borrower have each duly executed this Agreement under seal of the day and year first above written.

In the presence of:

_____
S. Paul DeFusco

Windham Mills Development Corporation

By: _____
Jeffrey L. Vose, President

ENTERPRISE CAPITAL, INC.

_____
Jean Vallone

By: _____
S. Paul DeFusco, Sr. Vice Pres.

29

vol 582 page 47                                        . 16

### Exhibit B

PROMISSORY NOTE

$4,800,000.00                                    East Greenwich, Rhode Island

August 30, 1999

FOR VALUE RECEIVED, the undersigned, Windham Mills Development Corporation, a Connecticut corporation with a place of business at 322 Main Street, Willimantic, CT (Individually, and if more than one, collectively, the "Borrower"),unconditionally, jointly and severally promise to pay to ENTERPRISE CAPITAL, INC. ("Lender"), a Rhode Island loan and investment company, or order, at its offices at 1485 South County Trail, East Greenwich, Rhode Island, or at such other place as may be designated in writing by the holder hereof, the principal sum of Four Million Eight Hundred Thousand and 00/100 ($4,800,000) DOLLARS, or if less, the aggregate unpaid principal amounts of the construction advances made by Lender to Borrower pursuant to the terms of that certain Construction and Term Loan Agreement ("the Loan Agreement") of even date herewith by and between Lender and Borrower together with interest in arrears from the date hereof on the unpaid principal balances hereunder.  Interest shall be calculated on the basis of actual number of days elapsed over a year of three hundred sixty five (365) days.  Payments of principal and interest under the Note shall be made as follows:

(1) Interest:  Interest on the Note shall be calculated as follows:

1.1  Interest shall be at a rate per annum equal to one and one-half percent (1.50%) greater than the prime rate of interest (the "Prime Rate") as published each business day in the Money Rate Section of the Wall Street Journal, Eastern Edition ("Journal"), defined as the "base rate on corporate loans at large U.S. Money Center Commercial Banks" (the "Rate"). If the Prime Rate is shown as a range of numbers, Lender will use the highest.  If the designations described above in quotation marks are changed by the Journal, Lender can use designations used by the Journal which, in Lender's reasonable judgment, are comparable to the above designations.

VOL 582 PAGE 48

1.2  The Rate shall be determined and shall change quarterly on the first business day of January, April, July, and October of each year during the term of this note (hereinafter referred to as the "Interest Adjustment Date") and which new interest rate shall be applicable to the payments starting the first day of January, April, July and October of each year.

1.3  On the date hereof, the Prime Rate is seven and three-quarters percent (7.75%) and the Rate on this note shall accordingly be nine and one-quarter percent (9.25%) per annum until said Prime Rate shall change.

(2)  Payments:

2.1  Interest Only Payments

Until ninety (90) days after the date of this Note, interest only on unpaid principal advances shall be paid monthly in arrears on the first day of each month commencing on the first full succeeding month following the date of this Note.

2.2  Principal and Interest Payments

Payments of principal and interest under this note shall be as follows.

Monthly payments of principal and interest at the Rate shall be made in the sum of Forty One Thousand One Hundred Six and 33/100 Dollars ($41,106.44) commencing on the first day of the second full succeeding month following ninety (90) days after the date of closing and continuing on the same date of each and every month thereafter for three hundred (300) consecutive months (25 years).  On each Interest Adjustment Date, the Payee shall change the monthly payment amount so as to cause the unpaid principal balance to be fully paid by the three hundredth (300th) installment of principal and interest, using for calculation the assumption that the interest rate and monthly payment amount in effect on each Interest Adjustment Date will remain in effect until the three hundredth (300th) installment of principal and interest.

3.  Holder should give written notice to Borrower of each increase or decrease in the interest rate within thirty (30) days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given.

4.  Borrower shall provide Lender with written notice of intent to prepay part or all of this loan at least three (3) weeks prior to the anticipated prepayment date.  Any prepayments shall be subject to a prepayment premium on the principal amount prepaid as follows:

| Year of the Note | Prepayment Premium |
|---|---|
| 1 | 5% |
| 2 | 4% |

2



VOL 582 PAGE 49

| | |
|---|---|
| 3 | 3% |
| 4 | 2% |
| 5 | 1% |

Thereafter, prepayment may be made without premium or penalty.

(5) Borrower shall pay a late charge equal to 5% of the payment amount due if such payment is not received within 10 days of the due date.

Provided, however, in no event shall the amount of interest payment hereunder, together with all amounts reserved, charged, or taken by the Lender as compensation for fees, services, expenses incidental in the making, negotiating or collection of the loan evidenced hereby exceed the maximum rate of interest on the unpaid principal balance hereof allowable by applicable law. In the event that any sum is collected, said sum shall be applied to reduce the principal in an inverse order of maturity.

The Note is the Promissory Note referred to in, and is entitled to the benefits of, the Loan Agreement. The applicable terms and conditions of the Loan Agreement are incorporated herein by reference as if fully set forth herein. Each capitalized term used in the Note and not expressly defined in the Note shall have the meaning ascribed to such term in the Loan Agreement. The Loan Agreement is on file at Lender's office address first referenced above and is available for review.

Each of the undersigned, any endorser hereof, any other party hereto and any guarantor hereof (collectively "Obligors"): (i) waives presentment, demand, notice of demand, protest, notice of protest and notice of nonpayment and any other notice required to be given under the law to any of Obligors in connection with the delivery, acceptance, performance, default or enforcement of the Note, any endorsement or guaranty of the Note or any document or instrument evidencing any security for payment of the Note; (ii) consents to any and all delays, extensions, renewals or other modifications of the Note or waivers of any term hereof or release or discharge by Lender of any of Obligors or release, substitution or exchange of any security for the payment hereof or the failure to act on the part of Lender or any other indulgence shown by

3

VOL 582 PAGE 50

Lender from time to time and in one or more instances (without notice to or further assent from any of Obligors) and agrees that no such action, failure to act or failure to exercise any right or remedy on the part of Lender shall in any way affect or impair the obligations of any Obligor or be construed as a waiver by Lender of, or otherwise affect, any of Lender's rights under the Note, under any endorsement or guaranty of the Note or under any document or instrument evidencing any security for payment of the Note; and (iii) jointly and severally agrees to pay, on demand, all costs and expenses of collection of the Note or of any endorsement or any guaranty hereof and/or the enforcement of Lender's rights with respect to, or the administration, supervision, preservation, protection of, or realization upon, any property securing payment hereof, including reasonable attorney's fees, and agrees that Lender shall have the right to set off without notice any and all sums at any time owed by or due from Lender to any of Obligors, whether or not matured.

The Note is delivered in and shall be construed under the laws of the State of Rhode Island, without reference to its conflict of laws principles, and in any litigation in connection with, or enforcement of, the Note, or any endorsement or guaranty of the Note or any security given for payment hereof.

**Prejudgment Remedy and Other Waivers.** B O R R O W E R ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND WAIVES BORROWER'S RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH HOLDER MAY DESIRE TO USE, and further waives diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, and notice of any renewals or extensions of this Note, and all rights under any statute of limitations. THE BORROWER ACKNOWLEDGED THAT BORROWER MAKES THESE WAIVERS KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER. THE BORROWER FURTHER ACKNOWLEDGES THAT THE LENDER HAS NOT AGREED WITH OR

4

VOL **582** PAGE **51**

REPRESENTED TO BORROWER OR ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

**Jury Waiver.** THE BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE IS A PART AND/OR THE ENFORCEMENT OF ANY OF YOUR RIGHTS AND REMEDIES INCLUDING WITHOUT LIMITATION, TORT CLAIMS.   THE BORROWER ACKNOWLDGES THAT BORROWER MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.   THE BORROWER FURTHER ACKNOWLEDGES THAT THE LENDER HAS NOT AGREED WITH OR REPRESENTED TO BORROWER OR ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

**Joint and Several Liability.**  References in this Note to the Borrower in the singular shall include the plural, and if Borrower consists of more than one person, the liability of each Borrower shall be joint and several.

**Acknowledgment of Copy, Use of Proceeds.**  The Borrower acknowledges receipt of a copy of this Note and attests that the proceeds of this Note are to be used for general commercial purposes.

**Miscellaneous.**   The provisions of this Note shall be binding upon the heirs, executors, administrators, successors and assigns and shall inure to the benefit of Holder, its successors and assigns.  If any provision of this Note shall, to any extent, be held invalid or unenforceable, then only such provision shall be deemed ineffective and the remainder of this Note shall not be affected.

Security.  This Note is secured inter alia by a mortgage on property located on 322 Main Street, Willimantic, Connecticut.

The term "Lender" shall include Lender's successors, endorsees and assigns.

Windham Mills Development Corporation

By: _____
        Jeffrey L. Yose, President

EXECUTED IN THE PRESENCE OF:

_____
        A. Paul Pettinee

(Witness)

RECEIVED FOR RECORD Aug. 30, 1999
at 2:25 PM                    Asst.
        Barbara J. Pittman TOWN CLERK

5

# EXHIBIT G to EXHIBIT 7



# EXHIBIT

## G





1  Annette W. Jarvis, Utah Bar No. 1649
   RAY QUINNEY & NEBEKER P.C.                    E-FILED ON JULY 20, 2006
2  36 South State Street, Suite 1400
   P.O. Box 45385
3  Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
4  Facsimile: (801) 532-7543
   Email: ajarvis@rqn.com
5
   and
6
   Lenard E. Schwartzer
7  Nevada Bar No. 0399
   Jeanette E. McPherson
8  Nevada Bar No. 5423
   Schwartzer & McPherson Law Firm
9  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada 89146-5308
10 Telephone: (702) 228-7590
   Facsimile: (702) 892-0122
11 E-Mail: bkfilings@s-mlaw.com
   Attorneys for Debtors
12

**SCHWARTZER & McPHERSON LAW FIRM**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

13                          UNITED STATES BANKRUPTCY COURT
                                    DISTRICT OF NEVADA
14  In re:                                    Case Nos. BK-S-06-10725 LBR
15  USA COMMERCIAL MORTGAGE COMPANY,          Case Nos. BK-S-06-10726 LBR
                                              Case Nos. BK-S-06-10727 LBR
16                                  Debtor.    Case Nos. BK-S-06-10728 LBR
    In re:                                     Case Nos. BK-S-06-10729 LBR
17  USA CAPITAL REALTY ADVISORS, LLC,
                                    Debtor.    Chapter 11
18  In re:
19  USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC
                                    Debtor.
20  In re:                                    DECLARATION OF KARIM
    USA CAPITAL FIRST TRUST DEED FUND, LLC,
21                                            CHOWDHURY IN SUPPORT OF
                                    Debtor.
22  In re:                                    APPLICATION BY DEBTOR AND
    USA SECURITIES, LLC,
23                                            DEBTOR-IN-POSSESSION FOR
                                    Debtor.
    Affects:                                  AUTHORIZATION TO FORBEAR ON
24  ☐ All Debtors
    ☒ USA Commercial Mortgage Company        FOUR HFA LOANS
25  ☐ USA Securities, LLC
    ☐ USA Capital Realty Advisors, LLC        Date: N/A
26  ☐ USA Capital Diversified Trust Deed Fund, LLC  Time:
    ☐ USA First Trust Deed Fund, LLC
27
28

KARIM CHOWDHURY states and declares as follows:

1.    I am the Chief Financial Officer of Homes for America Holdings, Inc. ("HFA") and state the following on personal knowledge.

### HFA Monaco Loan

2.    On December 19, 2003, Debtor Diversified Trust Deed Fund as a 100% Direct Lender entered into a loan (the "HFA Monaco Loan") to HFAH-Monaco, LLC, a Florida limited liability company ("HFA Monaco"). The HFA Monaco Loan is evidenced by a Loan Agreement (the "HFA Monaco Loan Agreement"), dated December 19, 2003 between HFA Monaco, as Borrower, and Debtor Diversified Trust Deed Fund, as Lender.

3.    The HFA Monaco Loan is secured by a first lien Trust Deed on real property and improvements, dated December 19, 2003 and recorded in Lee County, Florida (the "HFA Monaco Trust Deed").

4.    The maturity date of the HFA Monaco Loan was originally December 19, 2004. HFA Monaco and Debtor Diversified Trust Deed Fund entered into two Loan Extension Agreements in which the maturity date of the HFA Monaco Loan was extended to December 19, 2006. However, the HFA Monaco Loan is a Nonperforming Loan in that interest payments have not been made as required by the HFA Monaco Loan Agreement and are past due. The amount owed by HFA Monaco on the HFA Monaco Loan, according to the records of Debtor USACM, is the principal sum of $4,000,000, plus interest as of May 26, 2006 in the amount of $1,279,500, plus any other costs and fees that are due and owing.

### HFA Clear Lake Loan

5.    On January 6, 2005, Debtor USACM originated a loan (the "HFAH Clear Lake Loan") to HFAH Clear Lake, LLC, a Florida limited liability company ("HFAH Clear Lake"). The HFAH Clear Lake Loan is evidenced by a Loan Agreement (the "HFAH Clear Lake Loan Agreement"), dated January 6, 2005. There are 207 Direct Lenders for the HFAH Clear Lake Loan. The HFAH Clear Lake Loan is secured by a first

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax (702) 892-0122

1   lien Trust Deed on real property and improvements, dated January 6, 2005 and recorded in

2   Palm Beach County, Florida on January 21, 2005 (the "HFAH Clear Lake Trust Deed").

3       6.    The maturity date of the HFAH Clear Lake Loan was originally January 7,

4   2006. HFAH Clear Lake entered into a Loan Extension Agreement in which the maturity

5   date of the HFAH Clear Lake Loan was extended to January 7, 2007. However, the HFAH

6   Clear Lake Loan is a Nonperforming Loan in that interest payments have not been made as

7   required by the HFAH Clear Lake Loan Agreement and are past due.

8       7.    The amount owed by HFAH Clear Lake on the HFAH Clear Lake Loan,

9   according to the records of Debtor USACM, is the principal sum of $16,050,000, plus

10   interest as of May 26, 2006 in the amount of $2,642,136, plus any other costs and fees that

11   are due and owing.

HFA Clear Lake-2nd Loan

13       8.    On June 24, 2005, USACM originated a second loan (the "HFAH Clear

14   Lake 2nd Loan") to HFAH Clear Lake. The HFAH Clear Lake 2nd Loan is evidenced by a

15   Loan Agreement (the "HFAH Clear Lake 2nd Loan Agreement"), dated June 24, 2005.

16   There are 36 Direct Lenders for the HFAH Clear Lake 2nd Loan. The HFAH Clear Lake

17   2nd Loan is secured by a second lien Trust Deed on the same real property and

18   improvements that secures the HFAH Clear Lake Loan, as evidenced by a Mortgage

19   (Second Position) dated June 24, 2005 and recorded in Palm Beach County, Florida on

20   July 28, 2005 (the "HFAH Clear Lake 2nd Trust Deed").

21       9.    The HFAH Clear Lake 2nd Loan matures on July 1, 2006. However, the

22   HFAH Clear Lake 2nd Loan is a Nonperforming Loan in that interest payments have not

23   been made as required by the HFAH Clear Lake 2nd Loan Agreement and are past due.

24       10.    The amount owed by HFA Clear Lake on the HFAH Clear Lake 2nd Loan,

25   according to the records of Debtor USACM, is the principal sum of $2,750,000, plus

26   interest as of May 26, 2006 in the amount of $386,233, plus any other costs and fees that

27   are due and owing.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

### HFA Windham/Asylum Loan

11.    On August 30, 1999, Enterprise Capital, Inc., now known as Independence Bank, an entity unrelated to the Debtors, made a loan to Windham Mills Development Corporation ("Windham"), secured by a Mortgage on real property owned by Windham (the "Windham Loan"). On or about September 24, 2004, at a time when the Windham Loan was in default, Homes for America Holdings, Inc. ("HFAH") purchased all of the rights of Independence Bank in the Windham Loan, including all collateral documents. On or about November 15, 2004, USACM originated a loan (the "HFAH Windham/Asylum Loan") to enable HFAH to purchase the position of Independence Bank in the Windham Loan. The HFAH Loan was funded by 74 non-Debtor Direct Lenders (the "HFAH-Asylum Direct Lenders"). Although it was the intention of USACM and the HFAH-Asylum Direct Lenders to obtain collateral assignments of all of the rights of HFAH in the Windham Loan, the records of USACM on the HFAH Windham/Asylum Loans are incomplete.

12.    According to the records of Debtor USACM, the HFAH Windham/Asylum Loan matures on June 16, 2006. However, the HFAH Windham/Asylum Loan is a Nonperforming Loan in that interest payments have not been made and are past due. The amount owed by HFAH on the HFAH Windham/Asylum Loan, according to the records of USACM, is the principal sum of $5,550,000, plus interest as of May 26, 2006 in the amount of $951,580, plus any other costs and fees that are due and owing.

### Recent Repayment of Three Other HFA Loans

13.    USACM also originated three other loans to HFAH or its affiliates, which loans were funded by non-Debtor Direct Lenders and by First Trust Deed Fund. In May of 2006, these three HFA loans were paid in full by HFAH or its affiliates, prior to the stated maturity of these loans, and the loan repayment proceeds were delivered to USACM as Servicer. Specifically, HPA Riviera repaid in full a loan owed to 90 non-Debtor Direct Lenders by paying the principal sum of $5,000,000, plus interest in the amount of

$767,361. HFA North Yonkers (One Point Street, Inc.) repaid in full a loan owed to
Debtor First Trust Deed Fund as a Direct Lender and 298 other non-Debtor Direct Lenders
by paying the principal sum of $24,000,000, plus interest in the amount of $4,168,403.
HFA Riviera also repaid in full a loan owed to 99 non-Debtor Direct Lenders by paying
the principal sum of $8,000,000, plus interest in the amount of $2,698,080.

14.    In connection with the arrangements for HFA or its affiliates to make these
early payments in full, USACM as Servicer agreed, dependent upon approval of the Court
(if such action were deemed to not be an ordinary course of business transaction), to
forbear from declaring a default and to forbear from exercising remedies on the HFA
Monaco Loan, the HFAH Clear Lake, the HFAH Clear Lake 2nd Loan and the HFAH
Windham/Asylum Loan (the "Four HFA Loans"), until January 1, 2007, even though the
Four HFA Loans are Nonperforming Loans. No claims are being released or waived
against the Borrowers or any Guarantors of the Four HFA Loans.

15.    HFA and its affiliates requested this forbearance for the Four HFA Loans to
facilitate the refinancing of the Four HFA Loans or the sale of the collateral for the Four
HFA Loans to allow them to be repaid, which HFA hopes to have accomplished by the end
of 2006.

16.    HFA or its affiliates related to the Four HFA Loans have made applications
to and been engaged in negotiations with several new lenders in connection with the
refinancing of the Four HFA Loans. These lenders recognize that the project for each
subject real property for each of the Four HFA Loans, as being developed by HFA and its
affiliates, will be constructed as planned and would be a performing asset

17.    In the cases of HFA Clear Lake and HFA Monaco, the applicable HFA
affiliate has obtained project entitlements and other approvals, including a construction
loan commitment for HFA Clear Lake sufficient to commence construction after pre-sales
are complete and for HFA Monaco a tax-increment financing from the City of Fort Myers

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

to subsidize the project, which make the project as planned more valuable in the hands of HFA than if taken in foreclosure

18.    In the case of HFA Windham, the underlying asset is a real property subject to a bankruptcy reorganization for which the underlying value depends upon the undertakings made by HFA to take title to the site and developing it as planned. In the hands of USACM the collateral is less valuable inasmuch as USACM would need to undertake similar obligations to secure and realize the value of the collateral..

19.    Each new lender that HFA is making loan application to however is or would be unwilling to pursue a refinancing if the existing lenders retained the ability to declare an immediate default and proceed with related exercise of remedies, including potential foreclosure.

20.    This forbearance will facilitate the refinancing of the Four HFA Loans by permitting HFA or its affiliate to represent to the new lender that HFA or its affiliates is not in material breach under any of the Four HFA Loans. The absence of such forbearance would assure that USACM would be required to expend greater efforts, upon obtaining control, to realize the benefit from the collateral than HFA would, as the current developer of a pending development plan, and the lenders would take longer to realize the return of the lenders' principal than allowing the forbearance.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief.

DATED;  July _30_ , 2006.

_Karin Chowdhury_
(signature)

_KARIN CHOWDHURY_
(print name)

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

# EXHIBIT H to EXHIBIT 7

# EXHIBIT

# H

494-905 s

## ASSIGNMENT AND ASSUMPTION
## OF
## LOAN SERVICING AGREEMENTS

### DECEMBER 13, 2007 (the "**Effective Date**")

THIS ASSIGNMENT AND ASSUMPTION OF LOAN SERVICING AGREEMENTS (this "**Assignment**") is entered into by and between Compass Financial Partners LLC and Compass USA SPE LLC (collectively the "**Compass Defendants**" or "**Assignors**"), as assignors, and Platinum Properties 1, Inc. ("**Assignee**"), as assignee.

### Recitals

A.    HFA Windham Recovery LLC ("HFA Recovery") contends that on or about November 16, 2004, certain lenders, who are identified in the list attached hereto as Exhibit "A" (the "**HFA Lenders**"), collectively loaned to HFAH Asylum L.L.C. ("HFA Asylum") the amount of $5,050,000 (the "**HFA-Windham Loan**"); and

B.    HFA Recovery contends that in January 2006, the HFA Lenders provided an additional $500,000 to HFA Asylum bringing the total principal amount of the HFA-Windham Loan to $5,550,000; and

C.    USA Commercial Mortgage Company ("**USACM**") initially served as the loan servicer of the HFA-Windham Loan pursuant to various Loan Servicing Agreements by and between the HFA Lenders, individually, and USACM ("**Loan Servicing Agreements**"); and

D.    USACM and certain of its affiliates are Debtors and Debtors in Possession (the "Debtors") in cases pending under Chapter 11 of Title 11, U.S.C. being jointly administered under Case no. BK-S-10725 LBR (the "Chapter 11 Cases"); and

E.    On or about February 16, 2007, the Compass Defendants purchased certain assets from USACM including USACM's rights and obligations as loan servicer of the HFA-Windham Loan; and

F.    HFA Recovery contends it is comprised of approximately eighty percent (80%) of the HFA Lenders; and

G.    HFA Recovery filed suit against various entities in connection with the HFA-Windham Loan (the "**Lawsuit**"); and

H.    The Law suit is styled *HFA Windham Recovery L.L.C. v. HFAH Asylum L.L.C., Homes for America Holdings, Inc., Compass Financial Partners L.L.C., Compass USA SPE L.L.C., and Compass Partners, L.L.C.,* filed in the Supreme Court of the State of New York, County of New York, Index No. 601917/2007; and

I.    HFA Recovery has agreed to dismiss the Compass Defendants from the Lawsuit in consideration for, among other things, the Compass Defendants transferring and assigning all

of their rights as loan servicer for the HFA-Windham Loan to Assignee on an as is where is basis and, without representation or warranty of any kind or nature whatsoever, except as set forth in Section 5 hereof below; and

J. The Compass Defendants deny any liability to HFA Recovery in the Lawsuit or otherwise; and

K. Assignors desire to assign to Assignee all of the terms, provisions, rights, conditions and obligations contained within the Loan Servicing Agreements on an as is where is basis, without representation or warranty of any kind or nature whatsoever except as set forth in Section 5 below, and Assignee agrees to accept and assume the terms, provisions, rights, conditions and obligations contained within the Loan Servicing Agreements to the extent such obligations accrue from and after the Effective Date.

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein contained, the receipt and sufficiency of which are hereby acknowledged and confessed, Assignors and Assignee agree as follows:

### Assignment and Assumption

1. <u>Assignment of Agreement</u>. Assignors hereby assign to Assignee all right, title and interest Assignors currently possess in and to the terms and provisions contained within the Loan Servicing Agreements.

2. <u>Assumption and Agreement</u>. Assignee hereby agrees to accept the assignment contained within this Assignment and assume all of the terms, provisions, rights, obligations, liabilities, covenants and conditions within the Loan Servicing Agreements to the extent such obligations accrue from and after the Effective Date. Assignors do not assign, and Assignee does not accept or assume, any obligations or liabilities that existed prior to the Effective Date.

3. <u>Indemnity by Assignors</u>. Subject to the mutual releases contained in Section 5 of the Settlement Agreement dated as of the date hereof executed by and between Assignors and Assignee (the "Settlement Agreement"), the Assignors covenant to hold Assignee harmless from and indemnify Assignee for any loss, damage, cost or expense (including reasonable attorneys' fees) arising out of any failure of Assignors to perform any of their obligations under the Loan Servicing Agreements up to and including the Effective Date.

4. <u>Indemnity by Assignee</u>. Subject to the mutual releases contained in Section 5 of the Settlement Agreement, Assignee covenants to hold Assignors harmless from and indemnify Assignors for any loss, damage, cost or expense (including reasonable attorneys' fees) arising out of any failure of Assignee to perform any of its obligations under the Loan Servicing Agreements from and after the Effective Date.

5. <u>Representations and Warranties of Assignors</u>. Assignors hereby represent, warrant and covenant as follows:

(a)    Assignors believe that Assignors are in compliance and have been in compliance in all respects with the terms and conditions of the Loan Servicing Agreements, subsequent to February 16, 2007 (the "Closing Date").

(b)    Each of the Loan Serving Agreements executed by the HFA Lenders is substantially similar to the document attached here to as Exhibit "B" and has not been amended or modified in any manner subsequent to the Closing Date.

(c)    Assignors have full right and power to assign the Loan Servicing Agreements to Assignee.

(d)    Assignors' interest under the Loan Servicing Agreements now in effect is being transferred free and clear of all known liens, claims or interests of any party. Assignors have obtained all necessary consent in order to accomplish the transfer.

6.    Transfer of Loan Files/Documents. Upon receipt of the Compass Servicing Fee (as defined in the Settlement Agreement), the Assignors shall transfer to Assignee the original loan files related to the HFA-Windham Loan in the Assignors' possession, without representation or warranty of any kind or nature whatsoever. Those files shall include, to the extent any such documents exist and are in the Assignors' possession and/or control, any loan documents, notes, assignments, collateral assignments, correspondence with HFA Asylum (or related entities), correspondence with the HFA Lenders, payment schedules, drafts, etc. related to the HFA-Windham Loan. Assignors further agree to cooperate with Assignee to endorse any notes and assign any lien to Assignee on or before the Effective Date.

7.    No Loan Funds. Assignors hold no funds with respect to the HFA Windham Loan.

8.    Multiple Counterparts; Facsimile Signature. Facsimile signatures appearing hereon shall be deemed an original and this document may be executed simultaneously on two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute one (1) and the same instrument.

9.    Choice of Law. This Assignment shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of New York. The terms of this Assignment have been negotiated by the parties hereto, and any ambiguity in the language of the Assignment shall not be construed in favor of or against any particular party.

**ASSIGNORS**:

Compass Financial Partners LLC

By: _____
Printed Name: _David Blatt_
Title: _Manager_

Compass USA SPE LLC

By: _____
Printed Name: _David Blatt_
Title: _Manager_

**ASSIGNEE**:

Platinum Properties 1, Inc.

By: _____
Printed Name: _____
Title: _____

SECTION 5(a) CONSENTED TO
AND ACKNOWLEDGED BY:

Silar Advisors, L.P. ~~by~~

By: _____
Printed Name: _Robert Leeds_
Title: _____

31367479.2                       -4-

Compass USA SPE LLC

By:_____
Printed Name:_____
Title:_____

ASSIGNEE:

Platinum Properties 1, Inc.

By: _____
Printed Name:  Glen Shake
Title:  Manager

SECTION 5(a) CONSENTED TO
AND ACKNOWLEDGED BY:

Silar Advisors, L.P.

By:_____
Printed Name:_____
Title:_____

313674479.2                              -4-