# EXHIBIT C

1           (Court previously convened at 09:42:16 a.m.)
2           (Partial transcript at 09:48:45 a.m.)
3           THE COURT:  Oh, those are at 10:30.  Okay.  All
4   right.
5       Next, let's before we do this --
6           (Colloquy not on the record.)
7           THE COURT:  Well, these are all equally horrific, so
8   I guess we'll do the PBGC first.
9           THE CLERK:  Item No. 4.
10          THE COURT:  All right.  Appearances, please, in the
11  USA Commercial Mortgage case.
12          (Colloquy not on the record.)
13          MR. GOODMAN:  Good morning, your Honor.
14  Geoff Goodman, Foley & Lardner, special counsel to the
15  USACM Liquidating Trust for the PBGC matter.
16          MR. BARNES:  Good morning, your Honor.  Erika Barnes
17  representing Pension Benefit Guaranty Corporation.
18          MR. GARMAN:  Your Honor, Greg Garman for the estates
19  of USA Investments Partners and Investor VI.  The claim
20  trickles over and relates to us, also.
21          THE COURT:  Okay.  Anybody else wish to make their
22  appearance in the Commercial Mortgage matter since we're in the
23  case?  Okay.  I just need --
24          MR. EGGEMAN:  Good morning, your Honor.  Jim Eggeman
25  also on behalf of Pension Benefit Guaranty Corporation.

1        THE COURT:  Okay.  All right.  Just to clarify the
2  record here, the only claim remaining is 791, correct?
3        MR. GOODMAN:  That's correct, your Honor.  And,
4  actually, in a way, it's actually only a portion of that claim,
5  the portion that was resolved pursuant to stipulation and on
6  the 4th of April, but it's the termination-premium portion of
7  791.
8        THE COURT:  Okay.  So I'm just trying to clean up the
9  calendar for the clerk's purpose.
10        MR. GOODMAN:  Yes, your Honor.
11        THE COURT:  So Docket No. 4 can be taken off
12  calendar.  Docket No. 5 can be taken off calendar, and what
13  we're really hearing is the supplemental objection to 791,
14  correct?
15        MR. BARNES:  Yes, your Honor.
16        MR. GOODMAN:  That's correct.
17        THE COURT:  All right.  Go ahead.
18        MR. GOODMAN:  Thank you, your Honor.  Geoff Goodman
19  on behalf of USACM Liquidating Trust, special counsel.  As
20  your Honor mentioned, the only thing left -- we settled with
21  the PBGC on a substantial portion of that claim.
22      What's left is this termination-premium claim, and this
23  claim arises out of or has its genesis in the so-called
24  Deficit Reduction Act of -- I believe it's labelled as of 2005.
25      You know, the president didn't sign it until February of

1              THE COURT:  Thank you.  First of all, I want to thank
2   both of you for your briefs and your arguments.  A lot of
3   times -- you know, I always take oral argument.
4        But a lot of times oral argument isn't that helpful to me.
5   This time it was helpful to -- and for another reason to kind
6   of crystallize the thoughts in my mind and try and understand
7   this statute.  I mean, reading the -- my hat's off to you who
8   deal with this.
9        Reading the ERISA and PBGC's statutes is as obtuse to me
10  as people who do state court litigation trying to read the
11  bankruptcy code I'm sure, so I understand.
12       But I'm going to sustain the objection, and I think that
13  PBGC has argued well.  The point is -- I just -- the law's just
14  not on your side on this issue.
15       I appreciate your arguments, and I certainly fully
16  appreciate the goals of the PBGC, the work of the PBGC, but we
17  have the competing interest of the bankruptcy code, and we have
18  two statutes involved.
19       The 1306 amendment -- the amendments to 1306 by the DRA
20  (phonetic) of 2005 -- and I think we need to parse it and say
21  special rules or plans terminated in bankruptcy
22  reorganizations, but then it goes on to say in the case of a
23  single-employer plan terminated under -- in this case,
24  Section 1342 -- during pendency of any bankruptcy
25  reorganization proceeding under Chapter 11 of Title 11

1   United States Code, 11, USC, Section 1101, et seq.
2        While -- or -- okay, seminal law.  Subparagraph A, which
3   is the termination of premium "shall not apply to such plan
4   until the date of discharge or dismissal of such person in such
5   case."
6        So first of all, does that mean that it's only a
7   reorganization in the very limited sense of the term?  And I
8   find it does not.
9        I mean, Chapter 11 is called reorganization.  Chapter 11
10  allows liquidating plans.  Importantly, I think the statute
11  says any bankruptcy reorganization proceeding.  It didn't say a
12  bankruptcy reorganization, and it refers specifically to
13  Title 11.
14       I don't think it's illogical to read the statute that way
15  because congress could have wanted that reorganizations are --
16  that -- I don't think it's illogical to read it in that regard
17  because it wanted to cover everything in a Chapter 11.
18       In this case, while there's a liquidating plan, it wasn't
19  merely that the assets were taken and sold, there's more.  In
20  other words, the trust continues, the trust collects assets,
21  but there are no more employees.
22       And I don't think it's illogical -- now, we have sort of
23  like I guess it'd be the equivalent of the old springing
24  interest.  We purportedly have a premium, but then when's the
25  premium due?  Well, the premium's never due until there's a

1    discharge or a dismissal.
2         So one could say isn't that illogical that you have a
3    premium, but it never comes due?  Well, no.  Perhaps that was
4    congress' way of distinguishing.  We're only going to apply
5    this premium to new employers who take over -- who buy
6    companies out of bankruptcy, and that could be quite logical.
7         We've seen a lot of hedge funds, for example, buy
8    companies out of bankruptcy, proceed having terminated the
9    plan, dumping the employees.  Maybe it was congress' way of
10   saying wait a minute.  If you're going to do that, you got to
11   pay a termination premium.
12        And conversely, it would be illogical for congress to say,
13   well, if we're just liquidating, there's no sense for an
14   administrative priority.  There's no sense for a claim, the
15   employees have been terminated.
16        So I find that the PBGC doesn't have a claim for the
17   premium under that section.  Although, you know, again, it
18   seems to have a claim, but it never comes into being.
19        But, in any case, I don't find that even assuming that we
20   took the very narrow reading and reorganization meant coming
21   out with a new entity -- and I'm not sure how we even get to
22   that, I don't -- I find that it's a penalty because the point
23   is it is not applicable to single-employer plans -- it is only
24   applicable to single-employer plans who terminate under 1342
25   which is a hardship discharge or clause 2 or 3 of Section

1    1341(c)(2)(B).  (C)(2)(B) is distress terminations of
2    single-employer plans.
3         So clearly, it's meant to be a penalty or a deterrent from
4    termination of plans under distressed circumstances.  It bears
5    no relationship to what was owed.
6         And I think that as I sort of indicated to counsel, she
7    did a very good job trying to distinguish, but I think the
8    point is to suggest that just because -- because the money's
9    owed to the PBGC, because the PBGC does government work,
10   because PBGC gets taxpayers' funds, ergo, it's a tax, takes
11   that argument too far.  It means everything's a tax and
12   nothing's ever a penalty, and we know from the reorganized
13   CFI&R (sic) case that that's not the case.
14        Just an aside note, it is not my intent to publish at this
15   time.  I just have too many other irons in the fire.  I know
16   you all sort of want published decisions for various purposes.
17   That's not to say I won't, but I don't think I will.  I just --
18   as I said, I'm just too backed up, so these are my oral
19   findings and conclusions on the record.
20        Thank you, again, very much.
21             MR. GOODMAN:  Thank you, your Honor.
22             MS. BARNES:  Excuse me.
23             THE COURT:  All right.  What I'd like to do --
24             MR. EGGEMAN:  Your Honor --
25             THE COURT:  Sorry.  Um-h'm.  Oh, I'm sorry.

```
 1   (Indiscernible) comment.
 2           MS. BARNES:  Your Honor, we just ask for a
 3   clarification.
 4           THE COURT:  Sure.
 5           MR. EGGEMAN:  You said you find that there's no claim
 6   under --
 7           THE COURT RECORDER:  I'm sorry.  Could you speak into
 8   one of the microphones.
 9           MR. EGGEMAN:  I beg your pardon.
10           THE COURT RECORDER:  Thank you.
11           MR. EGGEMAN:  Your Honor, you were saying you find
12   that there's no claim under --
13           THE COURT:  Yeah.  I've got to admit I'm a little
14   conflicted on whether or not -- there's clearly no
15   administrative claim, and it would seem to me that you wouldn't
16   even have a claim, period, because of the way 1306 works, but
17   I'm unclear about -- maybe the point is it's just an unsecured
18   claim because it never comes into being, and I --
19           MR. EGGEMAN:  Well, you --
20           THE COURT:  I don't know.  I --
21           MR. EGGEMAN:  Your Honor --
22           THE COURT:  I think their point is there is no claim
23   as opposed to --
24           MR. GOODMAN:  Yes.  Under your Honor's reasoning of
25   the first point --
```

1        THE COURT:  Of the first point.
2        MR. GOODMAN:  -- there would be no claim because it's
3   not owed.
4        THE COURT:  Because it's not owed.  Right.
5        MR. EGGEMAN:  Under B, under 1307(a)(7)(B).
6        THE COURT:  Yes.  Let me clarify that.  1307 --
7        MS. BARNES:  1306.
8        THE COURT:  -- B, because --
9        MR. EGGEMAN:  I beg your pardon --
10       THE COURT:  -- while there is a termination premium,
11  it never becomes due, so the point is since it never becomes
12  due, it becomes a nullity I guess is the best way to explain
13  that.
14       MR. GOODMAN:  Essentially, your Honor, if I may --
15       THE COURT RECORDER:  I'm sorry.  Could you move
16  closer to the microphone --
17       THE COURT:  We need you by the microphone.
18       THE COURT RECORDER:  -- please.
19       MR. GOODMAN:  I apologize.
20       THE COURT RECORDER:  Thank you.
21       MR. GOODMAN:  Jeff Goodman on behalf USACM
22  Liquidating Trust.  I mentioned this.  You know, even if it
23  were a claim, it would have been a contingent claim.  To the
24  extent that it was, the contingency doesn't arise here, so,
25  therefore, if it would been estimated, it would have been

1  estimated at zero.
2          THE COURT: Okay. I don't know if I agree with that.
3  I'm not adopting that necessarily --
4          MR. GOODMAN: I understand that.
5          THE COURT: -- by finding.
6          MR. EGGEMAN: May I have --
7          THE COURT: Yes. Uh-huh.
8          MR. EGGEMAN: -- just another word, your Honor. It's
9  Jim Eggeman on behalf of PBGC. So you're saying that under B
10 no claim would arise in a liquidating 11, is that --
11         THE COURT: I --
12         MR. EGGEMAN: -- but in --
13         THE COURT: That's right. No. As long as it's a
14 Chapter 11 proceeding then it doesn't apply, there is no claim,
15 and I think that's the point because I think even the code
16 means, even -- let's assume that we had a reorganization. I
17 don't believe it's even a claim in the estate because it says
18 it doesn't apply until the date --
19         MR. EGGEMAN: Well, that's the argument --
20         THE COURT: -- of the confirmation.
21         MR. EGGEMAN: That's the argument we made in Oneida,
22 and Oneida found that there was a claim.
23         THE COURT: I appreciate that.
24         MR. EGGEMAN: Okay.
25         THE COURT: But that's -- I --

```
1           MR. EGGEMAN:  I --
2           THE COURT:  I have --
3           MR. EGGEMAN:  Off point.  I --
4           THE COURT:  -- great respect for that Judge, and I'm
5   not sure I disagree or I don't have that circumstance, but it
6   would seem to me that the logic would follow that you don't
7   even have a claim because it doesn't even arise until after the
8   confirmation.
9           MR. EGGEMAN:  We would agree with you, your Honor.
10          THE COURT:  So -- all right.  Thank you --
11          MR. EGGEMAN:  In --
12          THE COURT:  -- again.
13          MR. EGGEMAN:  In reorganization certainly.
14          THE COURT:  Thank you again for your arguments.
15          MR. EGGEMAN:  Thank you, your Honor.
16          MS. BARNES:  Thank you, your Honor.
17          THE COURT RECORDER:  Mr. Eggeman, could you spell
18  your last name for the record please.
19          MR. EGGEMAN:  E-g-g-e-m-a-n.
20          THE COURT RECORDER:  Thank you, sir.
21          THE COURT:  Okay.
22          MS. ITKIN:  Your Honor, regarding Hantges.  The
23  parties (indiscernible) --
24          THE COURT RECORDER:  I'm sorry.  Could you come to
25  the microphone please.
```

1    I certify that the foregoing is a correct transcript from
2    the electronic sound recording of the proceedings in the
3    above-entitled matter.
4
5
6    /s/ Michele Phelps                              04/25/08
     _____                _____
7    Michele Phelps, Transcriptionist                  Date
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25