E-filed: July ⎽⎽11⎽⎽, 2008

| | |
|---|---|
| Marc A. Levinson (California Bar No. 57613)<br>Jeffery D. Hermann (California Bar No. 90445)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>400 Capitol Mall, Suite 3000<br>Sacramento, California 95814-4497<br>Telephone: (916) 447-9200<br>Facsimile: (916) 329-4900<br>Email: malevinson@orrick.com<br>jhermann@orrick.com<br>sdon@orrick.com | Robert Kinas (Nevada Bar No. 6019)<br>Claire Dossier (Nevada Bar No. 10030)<br>SNELL & WILMER LLP<br>3883 Howard Hughes Parkway, Suite 1100<br>Las Vegas, Nevada 89169<br>Telephone: (702) 784-5200<br>Fax: (702) 784-5252<br>Email: rkinas@swlaw.com<br>cdossier@swlaw.com |

*ATTORNEYS FOR USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>USA SECURITIES, LLC,<br>　　　　　　　　　　　　　　　　Debtors | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter Number: 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| Affects:<br>☐　All Debtors<br>☐　USA Commercial Mortgage Company<br>☐　USA Securities, LLC<br>☐　USA Capital Realty Advisors, LLC<br>☒　USA Capital Diversified Trust Deed Fund, LLC<br>☐　USA First Trust Deed Fund, LLC | **USA CAPITAL DIVERSIFIED<br>TRUST DEED FUND, LLC<br>FOURTH QUARTERLY<br>REPORT** |

**POST-EFFECTIVE DATE USA CAPITAL DIVERSIFIED TRUST<br>DEED FUND, LLC's FOURTH REPORT OF ACTION TAKEN AND PROGRESS<br>TOWARDS CONSUMMATION OF CONFIRMED PLAN OF REORGANIZATION**

Post-Effective Date USA Capital Diversified Trust Deed Fund, LLC ("Diversified" or

"Revested Debtor"), a revested debtor in the above-captioned chapter 11 cases (the "Chapter 11

Cases"), by and through its counsel noted above, hereby submits this Fourth Report of Action

Taken and Progress Towards Consummation of Confirmed Plan of Reorganization (the "Fourth

Report"), pursuant to the Court's "Order Confirming the "Debtors' Third Amended Joint

Chapter 11 Plan of Reorganization,' as Modified Herein" [Docket No. 2376] (the "Confirmation

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

Order") entered January 8, 2007. *See* Confirmation Order, ¶ 74. The Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan") went effective on March 12, 2007 (the "Effective Date"). This Fourth Report is for the period from December 14, 2007 through March 13, 2008. This Fourth Report incorporates the requirements and structure of former Rule 3020(a) of the Court's Local Rules of Bankruptcy Practice, abrogated in May 2006, which were as follows:

**(A)    A schedule of personal property costing more than $5,000 and any real property acquired, sold or disposed of and the price paid for each:**

| | |
|---|---|
| Personal property costing more than $5,000: | None. |
| Real property acquired, sold or disposed of: | None. |
| Total: | $0.00 |

**(B)    A schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid:**

Due to the nature of its operations as an investment fund with contracted services through intercompany debtor entities and no employees, Diversified had only a relatively small number of claims filed against it in the Chapter 11 Cases. Such claims included general unsecured claims (many of which were misfiled as creditor claims by holders of equity interests in Diversified) and administrative expense claims related to professional fees accrued during the Chapter 11 Cases.

On or about December 27, 2007, Diversified made a distribution of approximately $3 million to its investors.

On or about February 19, 2008, Diversified made payment in full, totaling $59,688.00, to unsecured creditors.

**(C)    A schedule of executory contracts entered into:**

Pursuant to the Plan, Diversified entered into agreements, as of March 13, 2007, retaining professionals to provide legal and financial advisory services necessary to conduct Diversified's affairs. In addition to the professional services agreements

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

8571115.4

addressed in previous quarterly reports, Diversified retained Murtha Cullina LLP in July 2007 to act as local counsel in Connecticut to preserve Diversified's collection rights against Colt Gateway, LLC.  Diversified also retained Updike, Kelly & Spellacy, P.C. in September 2007 to pursue collections of the Colt Gateway loan.  Finally, Diversified retained KPMG to prepare Diversified's 2007 tax return, including the K-1's for individual members.

Diversified anticipates that other normal course services will be procured on a contractual, as-needed basis since Diversified has no employees.

**(D)    A statement listing each postpetition tax (i.e., income, payroll, property, sales), payee, and the amount actually paid:**

| | |
|---|---|
| Federal Unemployment taxes: | None. |
| Federal Payroll taxes: | None. |
| Nevada Unemployment taxes: | None. |
| Total: | $0.00 |

**(E)    Progress toward completion of the Plan and a list and status of any pending adversary proceedings or motions and resolutions expected:**

**1.    General Progress**

The major terms of the Plan with respect to Diversified have all been accomplished.  The Operating Agreement of Diversified has been amended, USA Capital First Trust Deed Fund, LLC has made certain payments and assignments to Diversified, and Diversified is operating in the post-confirmation realm.

On February 24, 2008, Chairman of the Board Robert Worthen issued a letter (the "February Letter") updating investors on Diversified's progress.  A copy of the February Letter is attached hereto as Exhibit A.  The February Letter details the actions taken by Diversified to recover assets (the "Collection Actions").  The Collection Actions include activity on: (1) the 10-90, Inc. loan; (2) the claims against Joseph D. Milanowski and Thomas A. Hantges, each chapter 11 debtors; (3) the Ashby real estate projects; (4) the Colt Gateway LLC loans; (5) the BySynergy obligation; (6) the Tree Moss Partners/EPIC

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    loan, i.e. the Marquis Villas loan; (7) the USA Investors VI loan, i.e. the Hotel Zoso loan;

2    (8) the HMA Sales, LLC litigation related to the sale of the Royal Hotel, and (9)

3    Diversified's claims against USA Commercial Mortgage.    The February Letter also

4    addresses the structure of Diversified's management, the first distribution to equity

5    holders, mailing of the K-1's to equity holders, communications with equity holders, and

6    accessing Diversified's website. *See* February Letter, Exhibit A.

### 2.    Nondischargeability Complaint – In re Thomas A. Hantges

8        On February 11, 2008, Diversified filed a nondischargeability complaint (the

9    "Hantges Dischargeability Complaint") in the Thomas A. Hantges bankruptcy

10    proceeding.  [Docket No. 527 in Bankruptcy Case No. 07-13163; Adversary Case No.

11    08-01041].  The Hantges Dischargeability Complaint alleges that Mr. Hantges' debts to

12    Diversified should not be discharged under 11 U.S.C. § 523 because Mr. Hantges (1)

13    obtained money and property from Diversified through false pretenses, false

14    representations, and/or actual fraud, (2) Mr. Hantges misappropriated Diversified's

15    money and property while acting in a fiduciary capacity towards Diversified, and (3)

16    Mr. Hantges obtained Diversified's money and property by means of willful and

17    malicious injury and/or reckless disregard to Diversified.  The Hantges Dischargeability

18    Complaint seeks a determination that all of Mr. Hantges' debts to Diversified are non-

19    dischargeable, and a judgment for Diversified in an amount not less than $149,555,735.

20    Mr. Hantges filed an Answer on March 31, 2008 [Docket No. 8 in Adversary Case No.

21    08-01041], and a Scheduling Conference is set for August 26, 2008 [Docket No. 3 in

22    Adversary Case No. 08-01041].

### 3.    Proofs of Claim Filed – In re Thomas A. Hantges, In re Joseph D. Milanowski, In re USA Investment Partners

25        On February 29, 2008, Diversified filed unsecured proofs of claim in the

26    Thomas A. Hantges bankruptcy proceeding [Bankruptcy Case No. 07-13163], the

27    Joseph D. Milanowski bankruptcy proceeding [Bankruptcy Case No. 07-13162], and the

28    USA Investment Partners bankruptcy proceeding [Bankruptcy Case No. 07-11821].

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

Diversified's proof of claim in the Hantges bankruptcy proceeding is for $182,411,014.40. *See* Proof of Claim No. 07-13163-729. Diversified's proof of claim in the Milanowski bankruptcy proceeding is for $182,411,014.40. *See* Proof of Claim No. 07-13162-700. Diversified's proof of claim in the USA Investment Partners bankruptcy proceeding is for $176,267,190.55. *See* Proof of Claim No. 07-11821-154.

### 4.    Successful Settlement with USA Commercial Mortgage Company

Diversified has reached a settlement agreement (the "Settlement Agreement") with USA Commercial Mortgage Company ("USACM"). The Settlement Agreement allows Diversified to pursue its litigation targets for a small fraction of the cost of professional fees, and allows Diversified to share in USACM claim recoveries from litigation targets Diversified may not have pursued on its own. The Settlement Agreement also eliminates future controversy regarding the allocation of claim recoveries and allows Diversified to receive proceeds from USACM litigation recoveries on a real time basis rather than waiting for USACM to make a distribution to its creditors.

On March 13, 2008, USACM filed a *Motion to Approve Settlement Agreement with USA Capital Diversified Trust Deed Fund, LLC* [Docket No. 5979] (the "Settlement Motion"). The Settlement Motion came on for hearing on March 25, 2008, and was approved in the form of an *Order Granting Motion to Approve Settlement with USA Capital Diversified Trust Deed Fund LLC* [Docket No. 6091] on April 1, 2008. A copy of the Settlement Agreement has been posted to Diversified's website, and is attached hereto as Exhibit B. In addition, a summary of the Settlement Agreement's terms, titled *"Positive Development – USACM and DTDF Settlement,"* has been posted to Diversified's website, and is attached hereto as Exhibit C.

### 5.    The McGimsey Adversary Proceeding

On September 24, 2007, Diversified filed an adversary proceeding [Docket No. 4864 in Bankruptcy Case No. 06-10725, Adversary Case No. 07-01165] (the "McGimsey Adversary") requesting subordination of the proof of claim filed by Jerry McGimsey and

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    other members of the McGimsey family (the "McGimsey Claimants") pursuant to 11

2    U.S.C. § 510(b). The McGimsey Claimants had appealed the Court's February 14, 2007

3    order disallowing their claims [Docket No. 2765] to the Ninth Circuit Court of Appeals

4    Bankruptcy Appellate Panel (the "BAP"). The BAP reversed the Court's disallowance of

5    the McGimsey Claimants' claims on August 15, 2008 [Docket No. 4726].    The

6    McGimsey Adversary will determine whether the McGimsey Claimants' proof of claim

7    must be subordinated. On December 14, 2007, the McGimsey Claimants and Diversified

8    appeared before the Court for a scheduling conference. Both parties have waived

9    discovery plan requirements, and filed a Joint Trial Statement on April 3, 2008 [Docket

10   No. 20 in Adversary Case No. 07-01165]. The McGimsey Adversary was set for trial on

11   May 8, 2007.

### 6.    Rule 2004 Examinations

13        Diversified has requested examination of various entities and individuals pursuant

14   to Federal Rule of Bankruptcy Procedure 2004. On March 11, 2008, the Court entered

15   orders permitting the Rule 2004 examinations of the following: Stein & Lubin, LLP

16   [Docket No. 5963]; Robert Russell [Docket No. 5960]; Russell AD Development Group,

17   LLC [Docket No. 5959]; Unser / Central Partners, LLP [Docket No. 5958]; Interstate

18   Commerce Center, LLC [Docket No. 5961], and AD Albuquerque Development LLC

19   [Docket No. 5962].

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

8571115.4

**(F)    A statement regarding the status of payment of UST quarterly fees:**

All UST fees have been paid in full through March 13, 2008, the final date

covered by this Fourth Report.

Dated this ___11th___ day of July, 2008.

SNELL & WILMER L.L.P.

By: _____
Robert R. Kinas (Nevada Bar No.6019)
Claire Y. Dossier (Nevada Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

And

ORRICK, HERRINGTON & SUTCLUFFE LLP
Marc A. Levinson
Jeffery D. Hermann
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497

*Attorneys for USA CAPITAL DIVERSIFIED TRUST
DEED FUND, LLC*

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

8571115.4

# EXHIBIT A

# EXHIBIT A

4128525.1

# USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC
Robert G. Worthen, Chairman of the Board

February 26, 2008

Dear USA Capital Diversified Trust Deed Fund, LLC Investor:

I again write on behalf of the Board of Directors of USA Capital Diversified Trust Deed Fund, LLC ("DTDF") to update you about DTDF's efforts to collect assets and to make distributions to investors. As described in more detail below, we continue to focus on recovering assets, with the goal of making a second distribution to investors later this year. As explained below, though, the recent national credit crunch and the collapse of the California new housing market will negatively impact both the speed with which future distributions may be made, and the amounts of such distributions.

## DTDF Management.

As you know from our prior letters to investors, DTDF emerged from chapter 11 on March 12, 2007. As of that date, Tom Allison's role for DTDF ceased, and Michael Tucker of FTI Consulting became DTDF's new manager. He answers to the Board of Directors, which is comprised of five DTDF investors: myself, as Chairman of the Board, Robert Hardy, Charles Nichols, Bob Fitzner and Richard Kreps. DTDF's counsel is Orrick, Herrington & Sutcliffe LLP, its Nevada counsel is Snell & Wilmer LLP, and its financial advisor is FTI Consulting.

## First Distribution To DTDF Members.

An initial distribution of $3 million was mailed to investors in late December, representing just over 2% of your investment. If you did not receive a distribution check, please contact us at the FTI address provided in the next section of this letter. As noted in our November 20th letter, the Board set the initial distribution at $3 million because much litigation and other recovery efforts remains in store for us, and we must maintain significant reserves in order to fund our recovery efforts. The first distribution had been delayed due to the late filing of a DTDF proof of claim asserting a creditor claim in excess of $4.9 million. As explained in our November 20th letter, under the terms of the confirmed plan, DTDF was unable to make a distribution to equity investors unless creditor claims had been paid or funds had been reserved to pay contested creditor claims. But in November, we filed an objection to the late filed claim, and, at the conclusion of a hearing on December 5th, Judge Riegle sustained the objection disallowing the claim, thus clearing the way for the distribution.

## Mailing of the K-1's to DTDF Members

KPMG prepared DTDF's 2006 tax return, and has been retained by DTDF to prepare the 2007 tax return that includes the K-1's for individual members. We have been told that the 2007 K-1's should be mailed to DTDF investors within the next few weeks, so you should receive your K-1 in the mail in mid-March.

Diversified Trust Deed Fund Investors
February 26, 2008
Page 2

**Communications With DTDF Members.**

We will send you another letter within the next three months. As it is very expensive to communicate with our professionals, who bill hourly fees, I am pleased to receive your phone calls and to answer questions about our status to the best of my ability. My personal cell phone number is (702) 239-4222.

Also, you may send us inquiries at diversifiedfund@orrick.com. For address changes, please send a written request with your legal vesting name and account number to DTDF at the following address:

> USA Capital Diversified Trust Deed Fund
> C/O FTI Consulting, Inc.
> Two North Central Avenue
> Suite 1200
> Phoenix, Arizona 85004

**Accessing The DTDF Website**

The website provides a convenient way to track the progress in this case. There, you can view an updated court docket, with links to recent pleadings and informative updates. Every letter to DTDF investors, including this one, is posted on the website. I urge you to visit our website on a regular basis. Here are two ways to access the DTDF Website:

- TYPING: Type http://usacapdtdf.bmcgroup.com/default.aspx into the browser screen at the top of your monitor.

- GOOGLE: If you type "USA Capital Diversified Information" in Google, the first resulting link should be the DTDF Website. Simply click on the link, and you will be at the DTDF Website.

**Actions To Collect Assets And The Non-Performing DTDF Loans.**

In our three previous letters to investors – each of which is posted on the DTDF website – we reported to you on our efforts to recover assets. In the following pages, we have updated the descriptions provided in the November 20th letter. As has been the case since the Effective Date, the status of many of these changes daily.

- Loans serviced by Compass
- 10-90, Inc. loan – owed by Investment Partners, a chapter 11 debtor
- Claims against Joe Milanowski and Tom Hantges, each a chapter 11 debtor
- Ashby real estate projects
- Colt Gateway LLC loans – The former Colt Armory located in Hartford, Connecticut

Diversified Trust Deed Fund Investors
February 26, 2008
Page 3

- • BySynergy obligation – The subject property located in Sedona, Arizona
- • Tree Moss Partners/EPIC Loan – The Marquis Villas in Palm Springs
- • USA Investors VI – The Hotel Zoso in Palm Springs
- • HMA litigation – Related to the sale of the Royal Hotel in Las Vegas
- • Claims against USA Commercial Mortgage ("USACM")
- • Claims against other third parties

**Information We Are Unable To Provide To DTDF Members.**

DTDF will provide you with information regarding your investment. Please contact us through the website using the email address given earlier in this letter. However, we are unable to provide you with individualized legal or financial advice because the DTDF professionals represent the company, not members individually. In other words, the Board and the DTDF professionals are looking out for the interests of DTDF and its members as a whole, and if you need personal legal or financial advice, you ought to retain your own attorney or financial advisor. Also, remember that while we want to provide meaningful information to DTDF members, details about litigation and settlement strategies are both confidential and privileged.

**Conclusion.**

We continue to ask for your patience, and want to assure you that the Board and the DTDF professionals are giving our best efforts to obtain the best recovery for you.

Best Regards,
Robert G. Worthen
Chairman of the Board

OHS West:260387594.2

Attachment to Letter of February 26, 2008
Page 1

Introduction.

Because our May 10, 2007, letter was the Board's first communication to DTDF investors, we went into great detail about each of DTDF's significant loans and claims. Thus, the attachment was five and a half pages of single-spaced text, all of it substantive. We updated that information in the August 20th and November 20th letters, and do so again in this attachment. The information provided below assumes that you have read the previous letters, but that you recall only the key details. After reviewing the following, you may want to re-read portions of the earlier letters.

- Loans Serviced By Compass.

Compass is the servicer of nine DTDF loans. As of December 31, 2007, the total outstanding amount due to DTDF for the nine loans approximated $6.8 million. The two largest DTDF loans serviced by Compass are the Amesbury/Hatters Point loan with $3.6 million owed to DTDF and the Ten-Ninety, LTD loan with $1.5 million owed to DTDF.

Compass is now providing monthly loan status updates for each loan on it's website at http://www.compassloans.net/currentloans . Provided below is a brief summary of the collection status for each of DTDF's loans serviced by Compass:

1. <u>Amesbury/Hatters Point</u> – Compass is moving forward to take possession of the collateral.
2. <u>Bay Pompano Beach</u> – A discounted payoff offer has been accepted that would pay the direct lenders approximately 77% of the principal and non-default interest owed. DTDF holds a .47% interest in this loan and is owed approximately $82,000. The discounted payoff is expected to close in February or March 2008, if that occurs DTDF would receive approximately $63,000.
3. <u>HFA – Clear Lake</u> – Compass is negotiating a payoff with the borrower.
4. <u>Huntsville</u> – Compass has foreclosed on the collateral and is in negotiations with potential buyers of the property.
5. <u>Lake Helen Partners</u> – Compass has filed a notice of default and is currently foreclosing on the collateral, however the borrower is contesting the foreclosure.
6. <u>Mountain House Business Park</u> – Compass is moving forward with the foreclosure of the collateral.
7. <u>Oak Shores II</u> – Compass is negotiating a payoff with the borrower.
8. <u>Ten-Ninety, LTD</u> – Compass foreclosed on the collateral and is pursuing the personal guarantors.
9. <u>The Gardens, LLC Timeshare</u> - Compass negotiated an extension and modification to The Gardens Timeshare loan and is awaiting consent/non-consent from the direct lenders.

Compass and the Lender Protection Group have various disputes between each other, primarily with respect to the servicing rights of the direct lender loans. Diversified is not directly involved in those disputes and has not been impacted by them.

OHS West:260387594.2

Attachment to Letter of February 26, 2008
Page 2

•    <u>Investment Partners, Its Chapter 11 Case And Trustee</u>. Investment Partners was a vehicle controlled by Hantges and Milanowski. Under the guise of a loan to 10-90, Inc., DTDF transferred in excess of $55 million of investor funds to 10-90, Inc./Investment Partners to enable Hantges and Milanowski to engage in speculative real estate activities ("10-90 Loan"). With interest, the amount owing on the 10-90 Loan exceeds $100 million. DTDF joined with other creditors of Investment Partners in the filing of an involuntary chapter 11 petition against that entity in early April 2007. Lisa Poulin of Corporate Revitalization Partners was selected by the office of the U.S. Trustee to serve as the interim Trustee of Investment Partners. Thereafter, Judge Riegle entered an order for relief, concluding that the bankruptcy was proper. Ms. Poulin has taken control of the assets of Investment Partners, and, along with her counsel, Gordon & Silver, continues to identify, understand and liquidate Investment Partners' assets for the benefit of creditors (of which DTDF is one of the largest). Both the amount of DTDF's recovery from the Investment Partners case and the timing of any payment to Diversified are unknown at this time, as Ms. Poulin and her team continue to work to unravel the web of deceit spun by Hantges and Milanowski.

•    <u>Hantges And Milanowski Personal Bankruptcy Cases</u>. DTDF and the USACM Trust orchestrated the filing of involuntary bankruptcy cases against Hantges and Milanowski in late May and the immediate appointment of interim trustees in early June. Michael Carmel is trustee in the Hantges case, and Ford Elsaesser is the permanent trustee in the Milanowski case. Largely because both Milanowski and Hantges personally guarantied the 10-90 Loan, DTDF is by far the largest creditor of the two estates. The two trustees and their counsel continue to investigate the activities and assets of Messrs. Milanowski and Hantges, with a focus on family trusts established by both of them. The cost to the two bankruptcy cases continues to be high, and the efforts of the trustees continue to be hampered by the fact that both Milanowski and Hantges regularly invoke their Constitutional rights against self-incrimination and refuse to answer even requests for basic information. Earlier this month, DTDF filed a complaint in the Hantges case, alleging that his obligations to DTDF should not be discharged (forgiven) in bankruptcy on account of fraud and other unlawful conduct. A number of other creditors, including USACM and the Pension Benefit Guaranty Corporation, filed similar complaints. The deadline by which such complaints must be filed against Milanowski has been extended, with his consent, to March 17, 2008.

•    <u>Ashby Real Estate Projects, Including Roripaugh Ranch</u>. The 10-90 Loan is secured by the assignment of membership interests in Ashby USA, LLC, Capital Land Investors, LLC and Random Developments, LLC. Investment Partners is the 50% owner of such entities, and as the trustee of Investment Partners, Ms. Poulin has worked with DTDF's professionals in attempting to maximize value for the equity interests and for creditors such as DTDF. Ms. Poulin, her counsel and DTDF professionals have met with Ashby representatives in Las Vegas, Los Angeles and at the individual projects, and have had numerous telephone conversations with them in an attempt to achieve maximum value from the Ashby properties. DTDF's opportunity to obtain substantial recoveries on account of Ashby-related real estate assets has become more challenging in light of the

Attachment to Letter of February 26, 2008
Page 3

current decline in the housing and land market and lending crisis that has threatened developers nationwide. Sadly, the Ashby entities are not immune, and lenders to the Ashby projects, (including Compass, as servicer of direct lender loans on the Oak Valley and Stoneridge projects), commenced foreclosure actions against the two projects in which DTDF, via its secured claim against Investment Partners, had an interest, namely Stoneridge and Oak Valley. The partnerships that own the Stoneridge and Oak Valley projects have commenced their own chapter 11 cases in Las Vegas. Furthermore, the partnership that owns the Roripaugh Ranch project – Ashby USA, Ltd. – faces lawsuits by its bonding company and its secured lenders. Bankruptcy or foreclosure are seemingly inevitable. DTDF and Investment Partners professionals are actively monitoring the situation, and, where appropriate, taking action. While the Ashby failures are disappointing, they are not surprising in light of the near collapse of the market for new homes in Riverside County, California, and the inability of homebuilders to obtain credit.

•    Colt Loans. DTDF and the two other direct lenders who are DTDF's co-beneficiaries of a promissory note secured by a first trust deed on certain parcels and buildings comprising a portion of the overall Colt project have, through Connecticut counsel hired by the three, initiated a foreclosure action. The case is working its way through the Connecticut courts, but justice moves slowly, and foreclosure is not on the near horizon. Despite the pendency of the lawsuit, however, DTDF continues to work with potential lenders to Colt in an attempt to obtain a payout on both the first trust deed loan and the three additional advances made by DTDF to Colt which are "undocumented," meaning that promissory notes and related security documentation were not formally signed by the parties involved. In late December, all of the various parties (including Colt) reached an agreement for the satisfaction of the various debts and other obligations. Unfortunately, the proposed new lender withdrew from the transaction for reasons unrelated to the Colt Gateway project. Negotiations are continuing with another lender, with DTDF playing a large role in trying to bring the parties together. In the meantime, though, the foreclosure action inches forward.

•    The BySynergy Obligation. The softening of the overall real estate market places into question whether BySynergy will have any equity in the subject project (currently partially developed land in Sedona, Arizona that eventually will be sold as 105 single-family-residential lots) with which to pay the DTDF/USACM Trust loan. The project is pledged for a first deed of trust loan to an unrelated bank lender, which commenced foreclosure earlier this month. DTDF may initiate litigation, but the financial viability of the project may ultimately determine whether such litigation is worthwhile.

•    Tree Moss Partners, LLC And The Marquis Villas. Lisa Poulin is chapter 11 trustee of Tree Moss. DTDF has a claim in excess of $20 million against Tree Moss arising out of the Epic Resorts loan made by DTDF and the February 2006 transfer to Tree Moss of the 63 Marquis Villas condominiums in Palm Springs, California formerly owned by DTDF. Ms. Poulin has been marketing the Tree Moss property, and on October 15th, the bankruptcy court approved her motion to sell the 63 Marquis Villas

Attachment to Letter of February 26, 2008
Page 4

condominium units for $10,829,625.00. No higher or better offers were made at the
hearing, but Sunterra Corporation, the owner of the remaining 38 condominium units at
the Marquis Villas, raised certain objections to the sale on the terms proposed by the
Trustee. Although many of those objections were resolved, the winning bidder ultimately
notified the trustee that the winning bidder did not intend to complete the purchase, even
though the winning bidder's earnest money deposit of $750,000 would be forfeited to
Tree Moss. Sale negotiations and discussions have continued, and Ms. Poulin recently
signed a Letter of Intent with a buyer. Ms. Poulin's goal is to file sale approval pleadings
in the near future, and to seek Judge Riegle's approval of the sale at a hearing on March
25th. If no sale transaction is consummated, however, litigation may ensue.

        •    USA Investors VI ("Investors VI"). Lisa Poulin also is the chapter 11
trustee of Investors VI, which owned the Hotel Zoso (which is located in Palm Springs
across the street from the Marquis Villas condominiums). DTDF has a large unsecured
claim against Investors VI on account of Milanowski/Hantges shenanigans relating to the
sale of the former Sheraton Hotel located at the Salt Lake City airport. In a sale that
closed in mid-November, the Hotel Zoso was sold for $25,117,500. No higher or better
offers were made at the hearing. The Hotel Zoso is encumbered by a direct lender loan
serviced by the USACM Trust. The balance on that loan is in excess of $20 million. An
additional $3 million in default interest is owing, but Ms. Poulin and the USACM Trustee
reached agreement to a reduced amount of default interest in connection with the
Investors VI plan of liquidation, which was confirmed by order entered on February 7,
2008. Such agreement should result in the distribution of the sales proceeds of the Hotel
Zoso, net of the direct lender loan, sales expenses and administrative claims in the
Investors VI case, to DTDF and other creditors in the late spring or early summer of
2008. We do not yet have the information as to the amount of money available to be
distributed to unsecured creditors such as DTDF, or the amount that DTDF can expect to
receive, but will provide that information in the next letter to investors if it is available at
that time.

        •    The HMA Chapter 11 Case Relating To The Royal Hotel. The prior
letters recount the extensive litigation with respect to this matter, and should be consulted
for any desired details. DTDF continues to work with Ms. Poulin and her counsel to
collect additional sums relating to the Royal Hotel. Recent activity involves the pursuit
of Alan Abolafia, who received in excess of $1,000,000 of the proceeds of the Royal
Hotel.

        •    Disputes Concerning DTDF's Claims Against USACM. DTDF asserts a
claim in excess of $100 million against USACM. In addition, the parties assert other
claims against one another. The various disputed claims are very complex. A mediation
session before a visiting bankruptcy judge in December 2006 proved fruitless.
Thereafter, rather than fight one another about the claims, the two former debtors
cooperated in the filing and prosecution of the involuntary bankruptcy cases of
Investment Partners, Milanowski and Hantges in an attempt to increase the pool of assets
available for both estates. Last November, the parties met for the better part of a day in
an attempt to work out their differences. The meeting did not produce an agreement, but

OHS West:260387594.2

Attachment to Letter of February 26, 2008
Page 5

both sides agree that progress was made. DTDF anticipates further discussions, but in the meantime, both the USACM Trust and DTDF have focused their efforts on collecting assets for their respective constituencies. Moreover, professionals employed by the USACM Trust have devoted a great deal of time to waves of objections to the hundreds of millions of dollars of claims filed against USACM by direct lenders. DTDF stands to gain by the success of such objections, which reduce the size of the creditor body and render the DTDF claim larger in relation to other claims. DTDF and USACM plan to resume settlement negotiations during the first week of March.

     •    <u>Litigation Against Third Parties</u>. DTDF professionals have worked with professionals employed by the USACM Trust to investigate claims that DTDF and the USACM Trust may have against third parties who, prior to the April 2006 chapter 11 filings, provided advice to DTDF and to USACM or had close relationships and engaged in numerous transactions with them. Potential targets include accountants, attorneys and others. Details of such investigations, of course, are highly confidential.

# EXHIBIT B

# EXHIBIT B

4128525.1



Rob Charles
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

Direct Dial: (702) 949-8320
Direct Fax: (702) 949-8321
RCharles@LRLaw.com
Admitted in: Arizona and Nevada

Our File Number:  47419-00001

March 13, 2008

Jeffery D. Hermann, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855

Re:    USACM Liquidating Trust –
       USA Capital Diversified Trust Deed Fund, LLC

Dear Jeff:

This letter, when signed by both parties and authorized as contemplated by paragraph 10
hereof, represents the sole memorialization of a settlement agreement between the
USACM Liquidating Trust (the *Trust*) and USA Capital Diversified Trust Deed Fund,
LLC (*DTDF*).

  1. **Prosecution of Causes of Action.**  DTDF will retain Diamond McCarthy,
LLP (*Diamond*) to prosecute DTDF Litigation Claims, which are those causes of action
not yet filed by DTDF against any of the potential litigation targets as has already been
identified by DTDF, the Trust, and Diamond McCarthy, and any other entities identified
by Diamond and agreed to by DTDF.

    a. **Exclusions.**  DTDF Litigation Claims do not include litigation
claims held by DTDF in connection with its efforts to collect on DTDF loans being
serviced by DTDF or by Compass Financial Partners, LLC including collection efforts
against  Joseph Milanowski, Thomas Hantges, USA Investment Partners, LLC, Tree
Moss Partners, LLC, HMA Sales, LLC, USA Investors VI, LLC, 10-90, Inc., Colt
Gateway, LLC, BySynergy, LLC, Twelve Horses, and Interstate Commerce Center, LLC,
proofs of claim filed by DTDF in the bankruptcy cases of any of the above, the
underlying DTDF loans, or any other asset of the DTDF estate not consisting of a
litigation claim, all of which excluded assets shall remain the property of DTDF.

    b. **Cooperation.**  DTDF and its professionals shall reasonably
cooperate with Diamond in the investigation and prosecution of DTDF Litigation Claims.

  2. **Conflict Waiver.**  The terms of Diamond's retention will be governed by
an agreement signed by Diamond and DTDF.  To the extent that a provision of this

235896.1



LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

general agreement conflicts with the engagement letter, the engagement letter shall prevail.

Without addressing all of the issues covered by the engagement letter, we recognize that Diamond has and continues to represent the Trust as special litigation counsel. DTDF has consulted with its counsel, Orrick, Herrington & Sutcliffe LLP, and agrees that Diamond may jointly represent the Trust and DTDF. The Trust similarly agrees that Diamond may represent both DTDF and the Trust. Both DTDF and the Trust will maintain the confidentiality of information shared by Diamond as their joint counsel. Neither DTDF nor the Trust may unilaterally waive their agreement of confidentiality but may do so jointly. In the event of a dispute between DTDF and the Trust, Diamond shall not represent either party.

DTDF recognizes that Diamond may continue prosecution of Trust proofs of claim and causes of action, including against USAIP, Hantges and Milanowski. DTDF waives any conflict caused by Diamond's prosecution of such claims and causes of action on behalf of the Trust.

If Lewis and Roca is identified as local counsel on a filing by Diamond on behalf of DTDF, the role shall be solely as local counsel for purposes of the Court's local rules, and Lewis and Roca shall not represent DTDF except in connection with filings on behalf of the clients jointly.

     3.    **Cost.** Diamond's representation of DTDF shall be on the same terms as its representation of the Trust. The Trust, and not DTDF, shall be solely responsible for Diamond's compensation and the reimbursement of costs and expenses incurred by Diamond, except as set forth in paragraph 4 below.

     4.    **Decision Making.** Michael A. Tucker, Manager of DTDF (*Manager*), or his successor, in consultation with Geoffrey L. Berman, as Trustee of the Trust (*Trustee*), or his successor, shall be solely responsible for making DTDF's decisions as Diamond's client, with respect to the management and settlement of DTDF Litigation Claims in particular. The Trustee shall direct Diamond's investigation and prosecution of all litigation claims of the Trust. If the Manager rejects a settlement of any DTDF Litigation Claim contrary to the recommendation of the Trustee and Diamond, then DTDF shall be solely responsible to pay Diamond (under the terms of the engagement letter between Diamond and the Trust) for the legal fees and expenses incurred by Diamond from that



point forward on such matter; but DTDF shall be reimbursed for the fees and expenses paid to Diamond from the gross proceeds of such claim.

5.      **DTDF Unsecured Claim.**  Although DTDF suffered significantly larger damages on account of the acts of numerous wrongdoers, as a compromise between DTDF and the Trust, DTDF shall be allowed a prepetition, unsecured claim of $128,000,000 against USA Commercial Mortgage Company (*USACM*), and accordingly will share pro rata in distributions as a beneficiary of the Trust without offset or subordination and, for the avoidance of doubt, DTDF shall share pro rata with other unsecured creditors in the Trust's share (50% up to $20,000,000 and 65% thereafter) of litigation recoveries dealt with in this agreement.  Only distributions from the Trust, will reduce the amount of DTDF's claim, and third party recoveries and recoveries on DTDF's loans will not reduce the amount of DTDF's claim.  Nothing herein shall impair or diminish DTDF's rights to receive distributions from the Trust as an unsecured creditor on account of the unsecured claim of the USA Capital First Trust Deed Fund, LLC ("FTDF"), which claim was transferred to DTDF pursuant to the Plan of Reorganization confirmed in January, 2007, by the Bankruptcy Court in the chapter 11 cases of, among others, USACM, DTDF and FTDF, and the $128,000,000 claim amount does not include the amount of such FTDF claim assigned to DTDF.

6.      **USACM Reserves and Related Disputes.**  USACM created reserves of $3,900,453.29 and $1,100,000 (approx.) on the Effective Date of the Joint Plan of Reorganization for amounts of interest and principal (respectively) paid to DTDF before the USACM bankruptcy filing when the underlying borrowers had not made such payments.  The Trust and DTDF jointly direct USACM to release these reserves, and interest earned thereon, 60% to the Trust and 40% to DTDF.

7.      **Releases.**  Except to the extent of DTDF's rights to participate in distributions from the Trust as an unsecured creditor of USACM, DTDF and the Trust mutually release each other from claims and causes of action of any kind, whether or not contingent, liquidated, known or otherwise, not resolved by confirmation of the Plan, including without limitation, concerning management, loan servicing and other fees charged before the Effective Date of the Plan, sharing of the allowed fees and expenses of Debtors' professionals, and reimbursement of sums advanced for litigation and other purposes after the Effective Date of the Plan.  To avoid doubt, this release shall not be construed in a manner that adversely affects any claim of the Trust or DTDF against any person or entity for conduct occurring before April 13, 2006, and no third party shall be a beneficiary of such release.



LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

8.    **USAIP Note.**  USA Investment Partners, LLC is the maker of that certain promissory note dated as of May 31, 2006, in the original principal amount of $58,374,918.81 in favor of USACM (as modified by the "Order Approving Agreement with Investment Partners" entered by the Court on July 24, 2006 [Docket No. 946]). DTDF and the Trust shall share all recoveries on account of this Note on a 50/50 basis.

9.    **Sharing of Trust Litigation Recoveries.**  The Trust shall pay to DTDF, when received, a percentage of gross recoveries on litigation commenced by the Trust after this date (but excluding preference actions), regardless of whether such recoveries are on account of the DTDF Litigation Claims described in paragraph 1 above or on account of other claims held by the Trust as to which litigation is commenced after this date, and regardless of whether any judgment or settlement characterizes or allocates such recoveries as belonging to DTDF or to the Trust, as follows: 50% of the first $20,000,000, and 35% of all recoveries thereafter.  This sharing shall not apply to the Trust's or DTDF's recovery on proofs of claim filed by DTDF, the Trust or USACM against Joseph Milanowski, Thomas Hantges, USA Investment Partners, LLC, Tree Moss Partners, LLC, HMA Sales, LLC, or USA Investors VI, LLC.  The Trust represents that it has commenced no litigation prior to this date that has not been specifically disclosed to DTDF.

10.    **Authority.**  DTDF's consent is contingent upon approval of its Oversight Board.  The Trust's consent is contingent upon Bankruptcy Court approval.  Both DTDF and the Trust will immediately seek such approval.

The impetus behind this settlement agreement is the need to eliminate issues between the Trust and DTDF and the desire to use one set of counsel to pursue the litigation claims of both the Trust and DTDF.  By agreeing to a tiered allocation of recoveries between the Trust and DTDF, the interests between DTDF and the Trust are aligned, which will facilitate efficient management of the claims contemplated herein.

We look forward to finalizing the agreement.

Sincerely,


Rob Charles
Attorneys for USACM Liquidating Trust

235896.1


LEWIS
AND
ROCA
— LLP —
L A W Y E R S

**Agreed:**

Orrick, Herrington & Sutcliffe LLP

Jeffery D. Hermann
Attorneys for USA Capital Diversified Trust Deed Fund, LLC

RC/
copy:  Geoffrey L. Berman, Trustee
       Michael A. Tucker, Manager
       Allan B. Diamond, Esq.
       William T. Reid, IV, Esq.
       Marc A. Levinson, Esq.
       Chas Harvick
       Susan M. Freeman, Esq.

235896.1

# EXHIBIT C

# EXHIBIT C

DTDF is pleased to report on a positive development. On April 1st, 2008 Judge Riegle approved a settlement agreement reached between USA Capital Diversified Trust Deed Fund ("DTDF") and USACM Trust ("USACM") regarding the following items:

1. USACM's right to recover from DTDF approximately $5m in prepaid interest and principal.
2. The Allowed Amount of the DTDF's general unsecured claim against USACM.
3. DTDF and USACM's allocated amount of litigation expenses incurred by USACM and DTDF prior to an agreement between DTDF and USACM to pursue joint litigation.
4. DTDF's payment of approximately $1.2m in post-petition management fees to USA Realty.
5. DTDF's payment of approximately $200k in post-petition servicing fees.
6. DTDF's payment of approximately $1.7m for professional fees and cost incurred by the debtors' professionals during the chapter 11 cases (i.e. Ray Quinney & Nebeker, Mesirow, Schwartzer & McPherson).
7. The Allocation of any payments received pursuant to the USAIP $58m Promissory Note and the Assignment of Collateral Pledged by USAIP for the 10-90, Inc. Loan and the USAIP Security Agreement.

In summary, DTDF's litigation (excluding loan collections) and USACM's litigation (excluding preference actions) will be viewed as one collective recovery source with Diamond McCarthy pursuing the claims for both USACM and DTDF. When claim recoveries are received, 50% of the first $20m in gross litigation recoveries will be paid to DTDF, and thereafter 35% of the gross litigation recoveries will be paid to DTDF. The litigation recovery costs (Diamond McCarthy, supporting experts if needed, document request/productions, etc.) will be paid out of USACM's share of recoveries with the exception of FTI Consulting, Snell and Wilmer and Orrick Herrington and Sutcliffe ("Orrick") fees incurred to support DTDF litigation efforts. In addition to DTDF receiving gross litigation recoveries DTDF doesn't have to pay USACM for any past professional fees or recovery costs including the cost of imaging documents that DTDF previously agreed to pay.

In addition:
- DTDF and USACM settled upon the amount of $128m as the amount of DTDF's claim in USACM's estate,
- DTDF will receive $2m of the $5m of DTDF's prepaid interest and principal held in escrow,
- any payments received pursuant to the USAIP $58m Promissory Note will be split 50/50 to DTDF and USACM , and
- DTDF agrees not to contest the amounts previously paid for post-petition management, servicing, and professional fees.

The DTDF professionals and the Board are pleased with the settlement reached with USACM. Pursuing the litigation claims jointly allows DTDF to share in USACM claim recoveries from litigation targets that DTDF may not have pursued and vica versa for USACM. The settlement also allows DTDF to pursue its litigation targets for a small fraction of the cost of professional fees. Having an agreement with USACM eliminates future controversy regarding the allocation of claim recoveries and allows DTDF to receive proceeds from USACM litigation recoveries on a real time basis rather than waiting for USACM to make a distribution to its creditors. Finally, the settlement will serve to reduce DTDF's ongoing attorney's fees as Orrick's role will be greatly reduced.