LEWIS
AND
ROCA
LLP
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

40 North Central Avenue, Suite 1900
Phoenix, Arizona  85004-4429
Facsimile (602) 734-3824
Telephone (602) 262-5756

**Susan M. Freeman** AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
**Rob Charles** NV State Bar No. 006593
Email:  rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 8/6/08

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA Commercial Mortgage Company,<br><br>USA Capital Realty Advisors, LLC,<br><br>USA Capital Diversified Trust Deed Fund, LLC,<br><br>USA Capital First Trust Deed Fund, LLC,[1]<br><br>USA Securities, LLC,[2]<br><br>          Debtors. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[1]<br>Case No. BK-S-06-10729-LBR[2]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**USACM Liquidating Trust Quarterly Report for Period Ending June 30, 2008.** |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

The USACM Liquidating Trust Quarterly Report by Geoffrey Berman, Trustee for period ending June, 2008, is attached hereto.  For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

---

[1] This bankruptcy case was closed on October 12, 2007.

[2] This bankruptcy case was closed on December 26, 2007.

1959443.1

LEWIS
AND
ROCA
LLP

L A W Y E R S

DATED:  August 6, 2008.

**LEWIS AND ROCA LLP**

By:  /s/ RC (#6593)
Rob Charles, NV 6593
*Counsel for USACM Liquidating Trust*

Proof of Service

Copy of the foregoing served via email on
Wednesday, August 06, 2008 to all parties
listed on the Post Effective Date Official
Service List on file with this Court

 /s/  Christine Laurel
Christine Laurel
Lewis and Roca LLP

1959443.1

# QUARTERLY POST-CONFIRMATION REPORT OF
# GEOFFREY L. BERMAN, TRUSTEE
# USACM LIQUIDATING TRUST

## July 2008

USACM Liquidating Trust
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
**Development Specialists, Inc.**
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

**Lewis and Roca LLP**
Rob Charles
Susan M. Freeman
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating
Trust

242818.2

# TABLE OF CONTENTS

**Page**

I.      TRUST ADMINISTRATION ................................................................................ 1

    A.      Website ....................................................................................................... 1

    B.      Oversight Committee................................................................................... 1

    C.      Trust Staff .................................................................................................. 2

    D.      BMC Access to Court Docket...................................................................... 2

II.     PLAN OF REORGANIZATION ISSUES ........................................................ 3

    A.      Confirmation Order Appeals ...................................................................... 3

III.    USACM ISSUES .............................................................................................. 3

IV.     INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST
        POTENTIAL TARGET DEFENDANTS ........................................................ 3

V.      PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
        OTHER BANKRUPTCY PROCEEDINGS .................................................... 6

    A.      USAIP Chapter 11 Case ............................................................................. 6

        1.      Receiver.......................................................................................... 6

        2.      Trustee............................................................................................ 6

        3.      Proofs of Claim............................................................................... 7

        4.      Hantges Insurance .......................................................................... 7

    B.      Insiders – Thomas Hantges and Joseph Milanowski.................................. 7

        1.      Hantges........................................................................................... 7

        2.      Milanowski..................................................................................... 8

    C.      HMA Sales, LLC......................................................................................... 9

    D.      Salvatore Reale........................................................................................... 9

    E.      JMK Investments......................................................................................... 9

242818.2

F.    Tree Moss Partners, LLC ................................................................ 9

VI.    COLLECTION OF TRUST ASSETS ................................................ 10

A.    Reserves ........................................................................................ 10

B.    Colt Loan ...................................................................................... 10

C.    Compass Escrows .......................................................................... 10

D.    Interpleader ................................................................................... 11

E.    Lee Suit ......................................................................................... 11

VII.    PROFESSIONAL FEE APPLICATION OBJECTIONS ............................. 11

VIII.    PROOFS OF CLAIM AND CLAIMS OBJECTIONS ........................... 12

A.    Overview ....................................................................................... 12

B.    Objections ..................................................................................... 12

C.    PBGC ........................................................................................... 13

D.    Contact Information ...................................................................... 14

E.    Objection Deadline ....................................................................... 15

F.    Claims For Stolen Principal .......................................................... 15

G.    Compass v. LPG ........................................................................... 16

H.    Disbursing Agent Agreement ....................................................... 17

IX.    LOAN SERVICING ISSUES .......................................................... 17

A.    USA Investors VI, LLC ................................................................ 17

B.    Trust Loan Servicing - Placer Vineyards ..................................... 18

C.    Compass Trust Loan Servicing – Collection of Prepaid Interest .... 20

D.    USACM Loan Servicing ............................................................... 21

X.    SETTLEMENT WITH DTDF .......................................................... 21

XI.    TRUST FINANCIAL STATEMENT ................................................ 22

242818.2

# REPORT OF GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

### July 2008

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during April 2008 through June 2008 on:

- administration of the Trust;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- investigation and prosecution of causes of action against potential recovery targets;

- collection of other assets;

- claims analysis and resolution of disputed claims; and

- loan servicing issues.

These and other topics are briefly described in this report, along with comments on the attached financial statement of the Trust as of June 30, 2008.[1]

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust's website address is:  http://usacmcucc.bmcgroup.com.  We invite your suggestions for content on the Trust's website.

### B.    Oversight Committee

The Trust functions with an Oversight Committee created by the Plan and the Trust Agreement.  Charles Hainsworth, Donald Walker, James Bonfiglio, Michael Tucker (in his capacity as Administrator of the USA Capital Diversified Trust Deed Fund, LLC ("FTDF")), and Suzanne Nounna, are the members of the Oversight Committee.  The Oversight Committee met on May 29, 2008 to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues[2]  Regular communication between the

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Oversight Committee.

[2] The Oversight Committee also met with the Trustee on July 21, 2008 in a regularly scheduled meeting.

1

Trust and the Oversight Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff

The Trustee is employed by Development Specialists, Inc. ("DSI").[3]  The Trustee uses DSI staff to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.

In addition, and as has previously been reported, the Trustee selected Rob Charles[4] and Susan M. Freeman[5] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel.  Other attorneys at that firm have been assisting the Trust as well, including John Hinderaker who has been directing claims litigation.[6]

Separate litigation counsel, Allan Diamond[7] and Bill Reid[8] of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

The Trust has retained Arthur Swicker, Swicker & Associates, Encino, California to prepare the Trust's annual tax return.

### D.    BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases.  While those dockets, and the associated claim information, are available to the public for a fee through PACER, the Trust believes that the Court and creditors are better served by the Trust bearing that expense, for the time being.

---

[3] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[4] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[5] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[6] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369.

[7] Information about Mr. Diamond is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/adiamond.html.

[8] Information about Mr. Reid is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/wreid.html.

242818.2

## II.    PLAN OF REORGANIZATION ISSUES

### A.    Confirmation Order Appeals

The sole remaining appeal (by Debt Acquisition Company of America V, LLC ("DACA")) from the Confirmation Order, which was affirmed by the United States District Court, District of Nevada, remains pending before the United States Court of Appeals for the Ninth Circuit at Case No. 07-16796.  The final brief was filed and served by April 29, 2008.  The parties await action by the Ninth Circuit.

## III.    USACM ISSUES

USACM continued to wind up its affairs and file monthly reports of those efforts with the bankruptcy court.  USACM has been dissolved under Nevada law, with Thomas Allison of Mesirow winding up its affairs.  USACM continues to hold certain reserves under the confirmed Plan, including amounts discussed in this report.

## IV.    INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

Diamond McCarthy as special litigation counsel has actively conducted formal and informal discovery of files, witnesses and transactions since its informal engagement in January 2007, which was formalized once the plan went effective in March 2007.  The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors.  In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to obtain payment for creditors.  Diamond McCarthy is coordinating those efforts with others, including DTDF, the USA Investment Partners, LLC ("USAIP") Trustee, and the Trustees for Hantges and Milanowski mentioned below.  Dozens of witnesses have been deposed or interviewed and many thousands of pages of documents have been reviewed. Further, Diamond McCarthy is coordinating efforts with various federal and state Governmental agencies, including the FBI, US Attorney's Office for Las Vegas, and the SEC.

The Trust had the benefit of a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing.  The two-year anniversary of the bankruptcy filing was April 13, 2008.  The Trust filed numerous causes of action before this deadline.  Lawsuits were filed against the following:

242818.2

| Case No. | Defendant |
|----------|-----------|
| 08-01114 | Shober Consulting, Inc. |
| 08-01115 | Bob Stupak |
| 08-01116 | Greenwald, Pauly, Foster & Miller |
| 08-01117 | David Rentz |
| 08-01118 | Jerry Cadeski |
| 08-01119 | Robert A. Russell; Deborah Russell; Russell A. Development Group, LLC; Freeway 101 Investors, LLC; Freeway 101 Loop RAR Investment, LLC; Boise/Gowen, LLC; BG/93 Investments, LLC; Copper Sage Commerce Center, LLC; Der NV Invesco, LLC; SVRB Investments, LLC |
| 08-01120 | Gentile De Palma Ltd. |
| 08-01121 | Fertitta Enterprises, Inc. |
| 08-01122 | J.M.K Investments, Ltd., John M. Keilly, Mountain West Mortgage LLC |
| 08-01123 | Fiesta Development, Inc., Asbusa, LLC, Random Developments, LLC, Richard K. Ashby |
| 08-01124 | Homes for America Holdings, Inc.; HFAH Clearlake, LLC; One Point Street Inc.; Mediterranee-HFAH, LLC |
| 08-01125 | Monaco Diversified Corporation; Anthony Monaco; Susan K. Monaco; Eagle Ranch Residential, LLC; Eagle Ranch, LLC; Willowbrook Residential, LLC; Brentwood 128, LLC; Ravenswood Apple Valley, LLC |
| 08-01126 | James Cioffi Architect Corporation |
| 08-01127 | Amesbury Port Corporation |
| 08-01128 | K&S Properties (Minden) |
| 08-01129 | Tanamera Resort Partners, LLC |
| 08-01130 | Phillips USA LLC |
| 08-01131 | Bingham McCuthcheon, LLP |

242818.2

| Case No. | Defendant |
|----------|-----------|
| 08-01132 | Stanley E. Fulton[9] |
| 08-01133 | Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99; Specialized Development Tahoe, LLC[10] |
| 08-01134 | Mary Petersen; Mary Petersen Family Trust dated 8/12/98; Michael D. Petersen; Michael D. Petersen Family Trust dated 8/12/98; Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99[11] |
| 08-01135 | Wells Fargo Bank, N.A.[12] |
| 08-01164 | Beedle, McBride, Evans & Reeves, LLP; Reeves, Evans, McBride & Zhang, LLP; TG McBride, CPA Ltd.; T. Garth McBride[13] |
| 08-0112-0 | David A. Fogg[14] |

Additionally, a complaint was filed in the United States District Court for the District of Nevada, as follows:

| Case No. | Plaintiffs | Defendants |
|----------|-----------|-----------|
| 2:08-CV-461 | Trust and DTDF | Deloitte & Touche, LLP; Victoria Loob |

These actions are being prosecuted in order to recover funds for the Trust beneficiaries and DTDF.

The Trust is also currently prosecuting an adversary proceeding against JMK Investments et al. as explained below.

The Trust and DTDF also entered into what are known as "tolling agreements" with a number of potential targets before the deadline for bringing action. In essence, a tolling agreement allows the Trust to take more time to investigate possible causes of action and hopefully negotiate settlement of any claims against the potential targets before filing suit. The relevant limitations period is tolled during the pendency of the tolling

---

[9] Plaintiff is DTDF.

[10] Plaintiff is DTDF.

[11] Plaintiffs are the Trust and DTDF.

[12] Plaintiffs are the Trust, DTDF and FTDF. This is not an avoidance action.

[13] Plaintiffs are the Trust and DTDF.

[14] Plaintiffs are the Trust and DTDF.

242818.2

agreement.  For confidentiality and other reasons, to encourage settlement and to protect potential targets about whom the Trust may not have sufficient information to bring an action at this time, the Trust is not disclosing the identity of the persons and entities with whom it has entered into tolling agreements except for a few such agreements filed with the Court.

## V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    USAIP Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 Million Note") to USACM for the benefit of creditors (including DTDF).  Repayment of the $58 Million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned or in part by USAIP.[15]  The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims.  USAIP is a debtor in a bankruptcy case pending in Nevada (case #07-11821-LBR).

### 1.    Receiver

The Trust and DTDF opposed the fee application by the Waverton Group as former receiver for USAIP.  On May 14, 2008, the Bankruptcy Court entered an Order on Waverton Group's Application for Fees and Expenses, which resolved the objection by the Trust and others to the fee and expense application of Waverton Group as former received for USAIP.  The Court ordered compensation for fees of $10,100 and $3,148.09 for expenses if Waverton supplemented its application.

### 2.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the bankruptcy court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP.  Lisa M. Poulin was appointed as interim trustee. She selected Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the Court's approval.

---

[15] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; and Buffalo Land Developments, LLC, a California limited liability company.

242818.2

3.      **Proofs of Claim**

On behalf of the Trust, Diamond McCarthy timely filed a proof of claim seeking $158,900,000 from the USAIP estate on behalf of the Trust.

As Lisa Poulin identified USAIP subsidiaries in need of bankruptcy protection, bankruptcy cases were filed, she was appointed trustee, and the cases were jointly administered.  These include: USAIP; USA Investors VI, LLC, Case No. 07-12377; Tree Moss Partners, LL, Case No. 06-13758; HMA Sales, LLC, Case No. 07-12694; Capital Land Investors, LLC, Case No. 07-18099; Oak Mesa Investors, LLC, Case No. 08-10397; and Buffalo Land Development Co., LLC, Case No. 08-10398.

4.      **Hantges Insurance**

On April 22, 2008, the USAIP Trustee sought and after a hearing obtained authority to settle with the Trust concerning the ownership of certain life insurance policies on the life Thomas A. Hantges as well as responsibility for the insurance premium payments.  The settlement agreement provides that the Trust will obtain ownership of the policies, which were improperly transferred to USAIP by Joseph Milanowski after the USACM Bankruptcy Court filing and without court approval.  The Trust has reimbursed USAIP for premiums advanced.

B.      **Insiders – Thomas Hantges and Joseph Milanowski**

1.      **Hantges**

Due to the actions of the Trust, and the Administrator of the DTDF and other creditors, Thomas A. Hantges is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13163-lbr.  Michael Carmel was appointed trustee in the Hantges bankruptcy.

The Trust timely filed a proof of claim against the estate of Thomas A. Hantges seeking the amount of $305,000,000.  Resolution of claims against the Hantges estate and the possibility of payment are months or years away.

On February 11, 2008, the Trust through Diamond McCarthy filed a complaint to determine non-dischargeability of debt against Hantges, assigned Adversary No. 08-01042-lbr.  Hantges has answered the complaint and the matter is in the early discovery stages.  Similar lawsuits were filed against Hantges by DTDF (No. 08-01041), the Kehl family (No. 08-01040), and the United States Pension Benefit Guaranty Corporation ("PBGC") (No. 08-01039).

The Trust had provided limited post-petition financing to the Hantges estate pursuant to a loan approved by the bankruptcy court.  In an amendment, the Trust agreed to increase the amount of the loan to $2,250,000.  The purpose of the loan is to enable the Hantges trustee to collect assets owed to the Hantges creditors, including the Trust.  The obligation continues to bear interest and be secured by a first priority lien on all

242818.2

unencumbered assets of the Hantges estate, and a junior lien on any encumbered assets, as well as a super-priority administrative claim. The amendment to the loan was approved by the Bankruptcy Court in its May 9, 2008 order.

During the quarter, the Hantges trustee objected to Hantges' claimed exemptions and prosecuted a complaint to recover funds transferred by Hantges to a family trust, Adversary No. 08-01002 pending in the bankruptcy court. The action includes other defendants who were sued for aiding fraudulent transfers and concealment of assets.

On May 7, 2008, Hantges filed a motion to dismiss in a chapter 11 case or an alternative motion to convert the case from chapter 11 to chapter 7. Hantges argued that prosecution of the case in chapter 11 was not in the best interests of creditors, and that a requirement of bankruptcy law applicable to individual chapter 11 bankruptcy cases could effectively impose unconstitutional involuntary servitude upon Hantges. Each of the Hantges trustee, the Trust and the Office of the United States Trustee have filed papers opposing Hantges' motion. That motion is set for hearing before the bankruptcy court on August 26, 2008.

### 2.    Milanowski

Similarly, due to the actions of the Trust and DTDF and other creditors, Joseph Milanowski is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13162-lbr. Again, the Trust, DTDF and others joined in bringing the involuntary petition against Milanowski. The Bankruptcy Court entered an order for relief against Milanowski and appointed Ford Elsaesser as the trustee in the Milanowski case. Milanowski has appealed the order for relief. The Milanowski appeal is in the United States District Court for the District of Nevada, Case No. 3:07-cv-404. This appeal was reassigned to Judge Brian E. Sandoval and eventually dismissed, on May 8, 2008.

The Trust filed a proof of claim through Diamond McCarthy against Milanowski for $305,000,000. The claim includes Milanowski's guarantees of the debts of Placer County Land Speculators, LLC to the Placer 1 and Placer 2 Direct Lenders on the loans that the Trust is servicing.

The Trust through Diamond McCarthy filed a complaint in the bankruptcy court, Adv. No. 08-01093-lbr, to determine the dischargeability of Milanowski's debts to the Trust. That complaint is in the early stages of discovery. A scheduling conference is set for August 27, 2008. Similar lawsuits were filed against Milanowski by DTDF (No. 07-13162), Aurora Investment L.P (No. 07-01212), the Kehl family (No. 08-01052), the PBGC (No. 08-01044), and BySynergy, LLC (No. 07-01209).

The Trust continues to cooperate with federal, state and local officials investigating USACM. On April 23, 2008, the SEC brought an action against Joseph Milanowski "in connection with a multi-million dollar fraud" seeking an order requiring Milanowski to disgorge sums obtained. The Trust is not prosecuting this action. The complaint was

filed with the United States District for the District of Nevada and is Case No. 2:08-CV-00511.

### C.    HMA Sales, LLC

The Trust, through Lewis and Roca, filed a proof of claim against the HMA Sales, LLC estate in the amount of $4,832,123.96.  The chapter 11 trustee for HMA Sales (Lisa Poulin) confirmed a chapter 11 plan of reorganization providing for orderly liquidation of the estate.  The effective date of the trustee's plan was March 3, 2008.  The trustee for HMA Sales and the Trust will work out the trustee's concerns concerning the proof of claim filed by the Trust.  In that regard, the Trust and the trustee for HMA Sales agreed that the deadline for objections to the Trust's proof of claim would be extended so that the trustee could investigate the necessity of an objection and to give the parties time to reach an agreement.

### D.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust.  The adversary proceeding is Adv. No. 06-01251 pending in the Bankruptcy Court.  On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint.  The Trust originally sought to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million.  After further investigation, the Trust narrowed its claims to avoid and recover a $4 million transfer to or for the benefit of Mr. Reale.

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Reale for $4 million, plus an award of the Trust's taxable costs.  The Trust filed a motion seeking pre- and post-judgment interest, which motion was granted by the Bankruptcy Court after a hearing on May 8, 2008.  The Trust obtained judgment on May 13, 2008.  The Trust will attempt to satisfy the judgment through post-judgment collection efforts against Reale's assets.

### E.    JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).  The Bankruptcy Court has directed discovery to be completed by September 3, 2008, and set the case for trial on November 4, 5, 6 and 7, 2008.

### F.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the

242818.2

condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.

The Trust filed a proof of unsecured claim for $1,075,799.91 in the case.

On April 1, 2008, the Bankruptcy Court granted the Motion of the Trustee for Tree Moss Partners, LLC for sale of substantially all of its property and releases with Diamond Resorts Corporation as buyer.

## VI.    COLLECTION OF TRUST ASSETS

### A.    Reserves

The Trust monitors certain reserves held by USACM through Mesirow Financial Interim Management, LLC ("MFIM").  These reserves are identified generally in Monthly Operating Reports filed by USACM, which are prepared by MFIM.  A portion of those reserves were recently released to the Trust in connection with the resolution of the substantial majority of the claims asserted by the Pension Benefit Guaranty Corporation ("PBGC") (see below for further information on the PBGC claims).

### B.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust as successor to USACM has continued to work with the lenders and borrower on the senior lien to obtain payment or a refinancing of the loan, payment of loan fees associated with the first loan, as well as payment of the $1 million second loan. Specific proposals have been exchanged, but no agreement reached to date.

### C.    Compass Escrows

In connection with the Closing of the Asset Purchase Agreement dated December 8, 2006 ("Compass APA") with Compass USA SPE, LLC ("Compass") on February 16, 2006, certain escrows were established.  The first escrow agreement is for $1,250,000 with respect to Compass' asserted right to invoke an Individual Asset MAC (as defined in the Compass APA) under § 9.1(i).  USACM and the Trust dispute Compass' assertions.

The second escrow for $903,000 was established with respect to Compass' asserted right to assert a dollar for dollar reduction of the Commercial Mortgage Price (as described in § 2.3(i) of the Compass APA).  The Trust must proceed to Court to demonstrate that Compass' rights to the Success Fees for the Franklin-Stratford Investments LLC and the I-40 Gateway West Loan were not impaired prior to the closing.

A third escrow of $412,666.45 was established and is self-liquidating either upon collections received by Compass or after the passage of time.

242818.2

Because the Trust and Compass were unable to resolve their disputes, and because the deadline for collections from the self-liquidating escrow was approaching and Compass would not stipulate to extend the deadline, the Trust sued Compass in the bankruptcy court on April 29, 2008, adversary no. 08-01066-lbr.  Republic Title Of Texas, Inc. was named as a defendant as escrow agent, but no responsive pleading has been requested from the title company at this point in time.  Compass filed an answer and counterclaim. The matter will be prosecuted in due course.

### D.    Interpleader

USACM had filed an interpleader, Adversary No. 06-1146, concerning sums held in the investors trust account before bankruptcy.  The Trust negotiated with parties having an interest in the account concerning final resolution of it, which was eventually filed with the Court as the Stipulation Re: Interest on Claims, Awarding Fees and Costs in Interpleader Action (filed in the adversary case).  As a result of the Stipulation, the Trust received the balance of the funds in the account, after payment to claimants, payment of the unclaimed funds into the clerk of the court for deposit in the registry account, specified amounts to the law firms of David W. Huston, PC and Schwartzer & McPherson.

The Bankruptcy Court asked the Trust's counsel, as a courtesy, to provide the Court with a status report on the unresolved claims in the interpleader action.  The Trust has done so and continues to assist the parties to the adversary proceeding in sorting out who is entitled to the amounts and loans at issue.

### E.    Lee Suit

One of the assets of the Trust was causes of action asserted against James J. Lee by USACM.  That matter resulted in an appeal to the Supreme Court of the State of Nevada, Case Nos. 46363 and 46781.  In an order filed March 28, 2008, the Supreme Court reversed and remanded summary judgment granted to USACM against Lee.  The Trust is handling this matter through a special counsel relationship with Lenard E. Schwartzer.

## VII.   PROFESSIONAL FEE APPLICATION OBJECTIONS

The Trust has received post-effective date billings from Mesirow, Ray, Quinney & Nebeker, Schwartzer & McPherson, and BMC Group as professionals previously retained by USACM but providing services on a post-effective date basis.  The Trust has privately expressed concerns with certain of these service providers with respect to the billings. Some of the concerns have been resolved by fee reductions.  To the extent such concerns are not resolved, any disputes will need to be brought to the Bankruptcy Court for resolution.

242818.2

## VIII.   PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.     Overview

To date there have been eight administrative claims filed totaling $2,813,675; 102 priority claims filed totaling $6,954,780; 1,676 secured claims filed totaling $297,026,533; 1,224 unsecured claims filed totaling $499,461,379; and 86 unknown claims filed totaling $389,631.  Additional claims were scheduled by Debtors.

### B.     Objections

To date, the Trust has filed:

- Objections to 1667 secured claims that have been sustained and reclassified as unsecured in aggregate of $296,134,459.

- Objections to 75 priority claims that have been sustained and reclassified as unsecured in aggregate of $4,325,067.

- One objection to the status of an administrative claim totaling $14,248 that has been sustained and reclassified as unsecured.

- Objections to 66 "Wrong Debtor" claims in the amount of $12,098,062. All but one of those objections were sustained or a stipulation withdrawing the subject claim was approved;

- Objections to three claims not enforceable against USACM in the amount of $75,503,580; one of these claims totaling $12,841,680 remains unresolved.

- Objections to 147 claims for lack of documentation in the amount of $19,708,808;  23 of these objections to claims totaling $1,920,750  were withdrawn due to claimants sending in sufficient supporting document and 124 objections were sustained totaling $17,788,058.

- Objections to 34 claims on miscellaneous grounds in the amount of $39,394,064.  Two of these objections were sustained totaling $3,502,383; 17 objections have stipulated withdrawals totaling $4,884,078; 5 claims totaling $6,416,532 have orders allowing the claim; and ten objections totaling $24,591,071 are unresolved.

- A total of 778 objections to Direct Lenders claims in the amount of $59,637,409, principally on loans paid in full by the borrowers.  The Court has sustained these objections or the claimants have agreed that they are not making a claim based upon the paid loan in question.

- A stipulation has been executed and an order signed which provides for the disallowance of the Spectrum and Weddell proofs of claim in the amount of $125,000,000.

The Trust continued to prosecute objections to claims, including the Loans known as Halsey Canyon; Fiesta Beaumont $2.4 million; Ashby Financial Company $7,200,000; Glendale Tower Partners, LLC; Golden State Investments II; 5252 Orange, LLC; Midvale Market Place, LLC; Urban Housing Alliance – 435 Lofts Loan; Boise/Gowen 93, LLC; LCG Gilroy, LLC; J Jireh's Corporation; One Point Street, LLC – HFA North Yonkers; Goss Road Loan; Elizabeth May Real Estate Loan; Slade Development; Wasco Investments, LLC; I-40 Gateway West, LLC 2nd; Cottonwood Hills, LLC; Standard Property Development, LLC; and Palm Springs Marquis Hotel.

Further, as the Trust has received information from claimants, it has entered into stipulations for the allowance and disallowance of priority and unsecured claims. Conversely, some claimants have stipulated to either withdraw their claims or have them reclassified as unsecured claims upon discussion with the USACM Trust's counsel.

The remaining direct lender claims relate to loans that (1) fully performed, but involve diverted principal; (2) partially performed; (3) are non-performing or still outstanding. The extent to which those loans perform and/or the direct lenders may be compensated from the sale of collateral securing the loans has a major impact on the amount of the claims. The Trustee is handling these claims on a loan by loan basis.

Not all of the claims objections can be resolved through motions. The Court has ordered that the Trust's objection to claim 1366 of Los Valles Land & Golf, LLC be consolidated with a related adversary proceeding filed by the Trust against Los Valles and its guarantor, Dan S. Palmer, Jr.

## C.    PBGC

The PBGC filed amended claim Nos. 791, 793 and 794. The amended claims are an administrative claim of $112,572 and other smaller amounts aggregating to $120,879 (Claim No. 791); an administrative claim of $1,211,242 under alternative theories (Claim No. 793); and an unsecured claim of $1,700,624 (Claim No. 794). The Trust hired special counsel at Foley & Lardner LLP to represent the interests of the Trust in the objections to these claims. The Trustee and the PBGC negotiated and reached a settlement agreement that was approved by the bankruptcy court on April 4, 2008. In substance, the settlement provided:

PBGC's Amended Claim No. 794 is allowed as an unsecured, non-priority claim against the estate of USACM in the amount of $1,000,000.00 (the "Allowed Unsecured Claim"). Other than the Allowed Unsecured Claim or as set forth below, the PBGC releases, waives and forever discharges any and all other unsecured claims that it may possess against USACM's estate.

13

PBGC's Amended Claim No. 793 is allowed as an administrative claim, pursuant to § 503(b) of the Bankruptcy Code, in the amount of $100,000.00 (the "Allowed Administrative Claim"). Other than the Allowed Administrative Claim or as set forth below, the PBGC releases, waives and forever discharges any and all other administrative or priority claims that it may possess against (a) USACM's estate, (b) the estate of any of the other four jointly administered Debtors identified in the caption above, and (c) any other estates of businesses related to USACM including, but not limited to, USA Investors VI, LLC ("Investors VI"), HMA Sales, LLC, USAIP, and Tree Moss Partners, LLC (collectively, the "USA Capital Estates"). This resulted in a distribution from the Investors VI estate to the Trust.

The parties did not resolve the claim pursuant to 29 U.S.C. § 1306(a)(7) (the "Termination Premium Claim"), which was included in PBGC's Amended Claim No. 791, pursuant to this Order. The PBGC's rights with respect to the Termination Premium Claim, including its rights to argue that the Termination Premium Claim is entitled to administrative or priority treatment, and the Trust's rights to oppose the amount or priority of the Termination Premium Claim are expressly preserved. The court heard oral argument on the Termination Premium Claim and sustained the Trustee's position.

USACM agreed to maintain a reserve of $150,000 for the Termination Premium Claim pending the court's decision on the allowance of disallowance of such claim. All other reserves for the Amended Claims have been released by USACM to the Trust. Any of the USA Capital Estates may also release any reserves created for claims asserted by the PBGC against such estates.

The order approving the stipulation shall have no impact on any claims that the PBGC has asserted or may possess against Hantges or Milanowski in their respective individual capacities, whether in their personal bankruptcy cases or otherwise.

The Bankruptcy Court entered an order on April 4, 2008 approving the stipulation, which resulted in release of over $1.7 million from the USACM claims escrow to the Trust.

The Bankruptcy Court indicated it would not allow the PBGC's remaining claim. The PBGC objected to the proposed form of order prepared by the Trust's counsel and a hearing was scheduled on June 24. The PBGC then withdrew its objection to the form of order and the final piece of the PBGC claim was resolved.

###    D.    Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

Sierra Consulting Group
Brant Fylling

242818.2

E-mail:  USACMTRUST@sierracgllc.com
Telephone 602-424-7020

 For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com.  You may send an e-mail on a general inquiry to: USAcommittee@lrlaw.com.

### E.    Objection Deadline

The Trust has filed numerous claims objections and succeeded to objections previously filed by USACM.  The Trust has from time to time sought extensions of the deadline to object to claims to further analyze them.  The current deadline for claims objections is October 10, 2008, and the Trust will seek a further extension.

As noted above, the Trust reviewed the thousands of proofs of claim filed with the Court to determine those which appeared to be filed by Direct Lenders.  In turn, each Direct Lender's claim was analyzed to see what direct loan or loans it arose out of.  The Trust's intention is to take each group of Direct Lender claims on a loan-by-loan basis, determine if the claims are valid, and in what amount, and then to advise all Direct Lenders who filed proofs of claim with respect to that loan of the Trust's recommendation.  This approach is consistent with the alternative dispute resolution mechanism implemented for Direct Lenders by confirmation of the Plan, which in general requires personal consultation by the Trust and the affected Direct Lenders who disagree with the Trust's position, as well as mediation.

Numerous claimants have called the Trust asking when the Trust will have concluded its examination of claims.  In general, the claims will not be resolved until the last direct loan has been paid or otherwise resolved.  This is because there are proofs of claim filed by Direct Lenders in all of the loans that USACM serviced.  However, as the pool of unresolved loans becomes smaller, it may be possible to estimate the claims that might be allowed with respect to the unresolved loans.  That process will, nevertheless, take many months.

### F.    Claims For Stolen Principal

Numerous Direct Lenders invested in loans where the pre-bankruptcy management of USACM diverted or stole the principal repaid by the borrower, rather than pay the Direct Lenders.  The sums owed to the Direct Lenders are scheduled and those amounts are deemed claims against the Trust.  Due to the frequency of Direct Lender inquiries as to the status of these loans, here again is the list of Loans where all or part of the principal was diverted, as determined by MFIM:

242818.2

|  | Dates Received | Principal Owed to Direct Lenders |
|---|---|---|
| Bay Pompano Beach | 12/1/05 - 3/20/06 | $ 7,875,857.57 |
| Beastar, LLC | 1/24/06 - 1/27/06 | 3,030,489.19 |
| Beau Rivage Homes/$8,000,000 | 9/14/2005 | 326,381.03 |
| Cabernet | 1/13/2006 | 900,000.00 |
| Copper Sage Commerce Center, LLC | 1/30/06 - 3/17/06 | 1,388,773.19 |
| Del Valle Isleton | 2/23/06 - 3/24/06 | 380,000.00 |
| Freeway 101 | 2/22/2006 | 3,741,777.16 |
| Lake Helen Partners | 2/17/2006 | 19,589.72 |
| Oak Shores II | 2/27/2006 | 3,000,000.00 |
| Roam Development Group | 2/13/06 - 3/16/06 | 634,028.28 |
| Universal Hawaii | 1/13/2006 | 5,062,942.85 |
| **TOTAL** |  | $ 26,359,838.99 |

### G.    Compass v. LPG

As indicated above, the Trust believes that the most efficient way to evaluate unsecured claims of Direct Lenders is after the applicable direct loan has been resolved, presumably through collection. A number of disputes are in litigation among the plaintiffs in lawsuits pending in the District Court, as well as the Lender Protection Group (the "LPG") and Donna Cangelosi ("Cangelosi") (collectively referred to as "LPG") and Compass USA SPE, LLC, Compass Partners, LLC, and Compass Financial Partners, LLC ("Compass"), which have expanded to include certain named Direct Lenders and Compass' officers and lender. That litigation is generally managed by the United States District Court for the District of Nevada under Case No. 2:07-cv-00892-RCJ-GWF. The Trust is not a party to that litigation. Nevertheless, the litigation does impact the Trust's ability to evaluate claims to the extent that the disputes between LPG and Compass concerning the right to collect direct loans, the willingness to compromise direct loans based upon short payoffs, and how proceeds should be distributed, have all contributed to delays in loan resolution. Those delays in turn will delay the Trust's evaluation of proofs of claim on those unresolved loans.

At a hearing on April 28, 2008, the District Court in the litigation between LPG and Compass directed that a continued hearing be held concerning the possibility of contempt sanctions, and ordered that the member interests of limited liability companies ("LLCs") formed by LPG be transferred back to the lenders. Later, a receiver was appointed for each of the LLCs. These orders have the possibility of accelerating the pace of collection of Loans, which had been held up, in part, by the dispute between Compass and LPG. A tentative settlement has been negotiated by the Receiver and Compass to resolve the litigation. Any settlement will be subject to Court approval.

16

242818.2

### H.    Disbursing Agent Agreement

The Trust and FTDF entered into a Stipulation Concerning Amended Disbursing Agent Agreement. The Court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF if there is a distribution on the $7 million FTDF unsecured claim, now that entity is liquidated. The bankruptcy court entered a final decree and order closing the FTDF case on October 12, 2007. The Trust was advised that the final distribution to the members of the Fund, along with their respective K-1's for 2006, was released to the members. In the transmittal to the Fund members, members were advised to address all further inquiries about the status of the Fund to the Trust. The Trust is attempting to answer these questions as best it can in light of not having prepared the distribution or K-1 information returns.

## IX.    LOAN SERVICING ISSUES

### A.    USA Investors VI, LLC

The owner of the Hotel Zoso f/k/a Hotel Marquis in Palm Springs – USA Investors VI, LLC ("Investors VI") – was controlled by USAIP, and is now under the control of Lisa Poulin, its trustee.

Pursuant to, among other things, a settlement with the Trust, USA Investors VI, LLC plan of reorganization filed by its chapter 11 trustee was confirmed on February 6, 2008 and Effective Date of the Plan was February 19, 2008.

Pursuant to the Plan of Reorganization confirmed by the Bankruptcy Court in *In re USA Investors VI, LLC*, Case No. 07-12377-lbr, the Trust received payment of the direct loan on Tuesday, February 19, 2008. The payoff was as follows:

> Principal due $13,500,000.00
> Interest due @ 2/19/08       7,318,168.32
> Total   $20,818,168.32

The payoff included an additional $2,000,000 as a compromise of the Trust's right to collect default interest, late charges and attorneys' fees as reflected in the Modification to Chapter 11 Trustee's Plan of Reorganization filed with the Bankruptcy Court at Docket No. 358 on December 26, 2007.

The Trust distributed the principal and interest due to Direct Lenders within a week of its receipt, pursuant to the applicable loan servicing agreements, the confirmed Plan of Reorganization, and the Bankruptcy Court's supplemental order in executing the Plan.

In addition, the Trust netted pre-paid interest due from Direct Lenders pursuant to the Plan. That collection substantially reduced the balance of pre-paid interest owed generally by Direct Lenders. Approximately $1,016,000 in pre-paid interest was netted.

242818.2

The Trust has agreed with the Trustee for USA Investors VI, LLC to an extension of the deadline for the Trustee to object to the Trust's remaining unsecured claim.  Given the relatively modest distribution available to unsecured creditors as well as the terms of the confirmed plan, the Trust does not expect the negotiation to involve any extensive delay or expense.

The Trust's settlement with the PBGC also resolved the PBGC's claim in the USA Investors VI, LLC as well as other estates.[16]

### B.    Trust Loan Servicing - Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust are as follows as of June 30, 2008:

|                       | Placer 1 | Placer 2 |
|-----------------------|----------------|----------------|
| Principal             | $31,500,000.00 | $6,500,000.00 |
| Interest              | 12,414,686.64 | 3,343,363.72 |
| Default Interest      | 7,469,009.18 | 838,068.26 |
| Late Fees on Interest | 620,734.33 | 167,168.19 |
| Late Fee on Principal | 1,575,000.00 | 325,000.00 |
| **Total**             | $ 53,579,430.15 | $ 11,173,600.16 |

The Trust, as servicer, reports monthly to the Direct Lenders.  Those reports are posted on the Trust's website.  After providing notice to the Direct Lenders on those loans, and with the responding Direct Lenders' consent, the Trust advanced $671,434.55 in July 2007 to pay the past due taxes secured by a lien on the Placer Vineyards property.  This advance protected the Direct Lenders' collateral, and although the Trust will be reimbursed with interest at the prime rate before the Direct Lenders receive payment, the advance reduces the interest rate payable on those taxes.

The Placer County Board of Supervisors approved a development template for the total project, including the Placer County Land Speculators property.  That approval allows the owners in the entire 5,230 acre project to continue development.  The development group is Placer Vineyards Development Group, LLC.  Ongoing development expense includes legal expense defending litigation brought against the development, engineering and other design, permitting and construction costs.  The borrower lacks the ability to fund these expenses.

On Wednesday, September 26, 2007, the Trust, through the Trustee along with counsel, conducted two conference calls with Direct Lenders in the Placer 1 and 2 Loans.  We advised the Direct Lenders that the Trust as servicer intended to negotiate with the

---

[16] The USAIP trustee has filed a claim objection to the PBGC claims filed in the various USAIP and related entities' estates.  No resolution of those objections has been obtained as of the filing of this Report.

Borrower through Lisa M. Poulin, Trustee of USAIP, as the majority member of the Borrower, for a bankruptcy filing by the Borrower and sale of the collateral at an auction. The most recent information available to the Trust was summarized in the call and suggests that the market value of the collateral may not exceed the principal and accrued (non-default) interest on the Placer 1 Loan.

The Borrower did not pay a capital call of $52,718.04 due to the developers for the first quarter of 2008. In addition, the Borrower is in default under a compromise agreement for prior capital calls.

The Trust hired Mark Gorton of McDonough, Holland & Allen P.C. in Sacramento, CA to represent the Trust in foreclosing the lien held by the Direct Lenders in the Placer 1 Loan. With Mr. Gorton's assistance, the Trustee retained Alliance Default Services, a division of Alliance Title, in Sacramento, California, to serve as the substitute trustee under the Placer 1 Deed of Trust. Significant expense was incurred in the foreclosure process. A Declaration of Default and Demand for Sale were recorded on December 3 and 4, 2007, the latter at Document No. 2007-0114236, Official Records of Placer County, California. Notice of the foreclosure sale was recorded and served, with the trustee's sale originally scheduled for April 9, 2008.

The foreclosure trustee requested copies of the loan servicing agreements for each of the more than 325 Direct Lenders in the Placer 1 loan. The USACM records provided to the Trust did not contain copies of all of those LSAs. The Trust requested written consent from each of the Lenders for whom it did not have a copy of a signed LSA to the foreclosure. As a result, the Trust directed the foreclosure sale be continued.

Shortly before the scheduled foreclosure sale, a group of Placer Direct Lenders notified the Trust and the substitute trustee under the Note that they denied consent to the foreclosure sale and disputed the Trust's authority to act on their behalf,[17] claiming that if the foreclosure sale resulted in title to the Property being held by the Lenders, in their own names, they could be disadvantaged, this despite the fact that that is how all of the Lenders acquired interests in the loans. Further, a number of the Direct Lenders in the Placer 2 Loan are trying to arrange a mechanism for Placer 2 Lenders to participate in the Property after foreclosure.

Roy Hibdon represented to the Trust that an entity called Placer Vineyards 1st, LLC, composed of five members – Roy H. Hibdon, Lindsey Kessler, Gail Gray, Sean Najarian and Donna Cangelosi, opposes the foreclosure. On April 1, Mr. Hibdon indicated that approximately 164 Direct Lenders with $12.062 million of the Placer 1 Loan were

---

[17] It should also be noted that a large number of the direct lenders who notified the Trust of their objection to the sale and claimed the Trust did not have the authority to act on their behalf had properly executed loan servicing agreements in favor of USACM (as servicer) and therefore the Trust, pursuant to the terms of the confirmed Plan of Reorganization.

242818.2

members of the LLC.  This is about one-half in number and somewhat more than one-third of the dollar amount of the Placer 1 Loan.

An entity called Placer Vineyards 2nd Lenders, LLC, a Nevada LLC, filed a chapter 11 bankruptcy petition on April 8, 2008.  Its counsel advised that this LLC holds interests in the Placer 2 Loan and that the bankruptcy filing was intended to stop the foreclosure sale scheduled for April 9, 2008.  The Trust reviewed the bankruptcy case and joined in a Motion to Dismiss the bankruptcy case filed by the Office of the United States Trustee. The bankruptcy case was dismissed by the bankruptcy court's May 16, 2008 order.

The Trust has consulted with the largest holders of the Placer 1 Loan.  Their consensus is that a lawsuit should be filed in order to obtain the appointment of a receiver under the jurisdiction of the California state court for the Property.  The receiver would be directed by the court to make recommendations concerning holding the Property in the name of the Lenders after foreclosure, whether to borrow money to pay carrying costs, whether to list the Property for sale, and if an acceptable offer is obtained, whether to sell the Property for the benefit of the Lenders.  The receiver would act only after notice to all Direct Lenders and with support of at least half.  The Trust and these Lenders believe that such a receivership action, in which each of the Direct Lenders would be a party, entitled to notice and an opportunity to make positions known to the court is a fair way to protect the Lenders' interests in seeing repayment of the Loan after foreclosure.

The Trust's counsel has asked the Direct Lenders to seek proposals for persons or companies who want to serve as the receiver.  Those proposals should be evaluated to be sure that the proposed receiver is competent, that any compensation is fair, and that decisions are made for the benefit of all Lenders, and not for the benefit of any particular Lender or groups of Lenders.  The selection of the receiver, like other decisions of the receiver, would have to be approved by the court, with notice.  The Trust is not seeking to act as the receiver for the Property.

The Trust continues to proceed with foreclosure of the Property as collateral for the Placer 1 Loan.  The Trust and Direct Lenders will file the lawsuit seeking the appointment of a receiver, ask you to accept service of that complaint so that you can be a participant in the lawsuit, and then turn over decision making for the Property after foreclosure to the receiver.

This will take a period of weeks or months.  We will update reports monthly in correspondence to the Direct Lenders involved in these Loans and as developments arise on the Trust's website at: http://usacmcucc.bmcgroup.com.

### C.    Compass Trust Loan Servicing – Collection of Prepaid Interest

The Trust continues to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007.  Further, Compass collects from Direct Lenders and remits Prepaid Interest to the Trust pursuant to the Plan, including $156,471.33 on

242818.2

May 11, 2007.  The Trust is aware of collections from Borrowers on several notes since Compass last remitted recouped prepaid interest to the Trust.  The Trust has requested an accounting of the collected monies from Compass and to date continues to await that accounting, or transmittal of any additional recouped monies.  As indicated above, the Trust has sued Compass to receive the monies that were to be collected and remitted pursuant to the terms of the confirmed Plan.

From a report prepared in August 2007, the maximum amount of uncollected Prepaid Interest was $5,292,567.59 (and again, this amount is before the collection of prepaid interest resulting from the payoff of the Hotel Zoso loan).  A number of investors have uncollected Prepaid Interest of only tens or a few hundreds of dollars.  It is not now possible for the Trust to estimate the likely collection of Prepaid Interest within the foreseeable future.

### D.    USACM Loan Servicing

The State of Nevada Department of Business in Industry, Division of Mortgage Lending ("MLD"), took post-Effective Date action with respect to licensing of USACM to service loans and the proposed application by Compass to service loans pursuant to the transaction approved by the court in the confirmed Plan.  The Trust worked with USACM with respect to the MLD's order terminating the USACM license.  The termination was not untoward, because USACM had ceased servicing any loans at that point.  The MLD's findings were factually and legally inaccurate in many respects, however.  The Trust worked directly with the MLD through the State of Nevada Attorney General's office to ensure that the MLD was not seeking to violate the Confirmation Order or the Plan.  Separately, the Trust was aware of and took no position with respect to the MLD orders concerning Compass.

Pursuant to an order of the Bankruptcy Court, the Trust is exempt from licensing in Nevada as a loan servicer or escrow agent.  The Trust nevertheless voluntarily reports to MLD with respect to its actions and has asked MLD to advise the Trust of any questions or concerns.

### X.    SETTLEMENT WITH DTDF

Confirmation of the Plan did not resolve numerous disputes between USACM and DTDF.  Principals of the Trust and DTDF have continued to negotiate disputes remaining between them.  After a meeting on March 5, 2008, the Trust and DTDF reached conceptual agreement as to an overall settlement.  On March 13, 2008, the Trust filed a motion to approve settlement agreement with DTDF in the bankruptcy court.  The proposed settlement was set forth in a letter agreement signed by the parties.

In summary, the parties' settlement provided:

- The Trust and DTDF split certain reserves held by USACM on a 60/40 basis;

242818.2

- DTDF is allowed a $128 million unsecured claim in the USACM Estate;

- DTDF hires Diamond McCarthy LLP to pursue certain DTDF Litigation Claims, that will generally be prosecuted jointly with similar claims asserted by the Trust through Diamond McCarthy;

- DTDF and the Trust will jointly share proceeds of litigation claims, including those DTDF Litigation Claims prosecuted by Diamond McCarthy, on a 50-50 basis for the first $20 million of recoveries, and then DTDF receiving 35% of all recoveries thereafter;

- DTDF, by reason of its allowed general unsecured claim, will share in recoveries from non-litigation claims and/or assets of the Trust on a pro-rata basis with all other allowed general unsecured creditor claims;

- DTDF and the Trust share proceeds of the $58 million note made by USAIP on an equal basis; and

- DTDF and the Trust release each other.

The compromise was the subject of notice to those parties entitled to post-confirmation notice and considered at a hearing on March 25, 2008. The Bankruptcy Court asked that additional notice be provided and that the deadline for objections be extended to March 31, 2008. No objections were received and on April 1, 2008, the bankruptcy court entered its Order Granting Motion to Approve Settlement Agreement with USA Capital Diversified Trust Deed Fund, LLC. Reserves of approximately $5 million were released by USACM – 60% to the Trust and 40% to DTDF. DTDF engaged Diamond McCarthy as its special counsel and Diamond McCarthy filed causes of action on behalf of DTDF before the expiration of the two-year tolling period on April 13, 2008.

In connection with the DTDF settlement, the Trust received $3,137,112.25 from sums held back on account of the DTDF dispute.

## XI.    TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of June 30, 2008, has been provided to the Oversight Committee.

242818.2