E-filed on 10/20/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | Judge Linda B. Riegle |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **APPLICATION TO COMPROMISE AND SETTLE CONTROVERSIES WITH BEADLE, MCBRIDE, EVANS & REEVES, LLP, ET AL.** |
| USACM LIQUIDATING TRUST; and<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC;<br><br>Plaintiffs,<br><br>v.<br><br>BEADLE, MCBRIDE, EVANS & REEVES, LLP, REEVES, EVANS, MCBRIDE & ZHANG, LLP, TG MCBRIDE CPA LTD., and T. GARTH MCBRIDE,<br><br>Defendants. | |

**APPLICATION TO COMPROMISE AND SETTLE CONTROVERSIES WITH
BEADLE, MCBRIDE, EVANS & REEVES, LLP, ET AL.**

Geoffrey Berman ("Berman" or the "Trustee"), Trustee of the USACM Liquidating Trust (the "USACM Trust") and Michael Tucker ("Tucker" or the "Manager"), Manager of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF") hereby files this *Application to Compromise and Settle Controversies with Beadle, McBride, Evans & Reeves, LLP, et al.* (the "Motion") and moves this Honorable Court for: (a) an order pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") approving the Settlement Agreement, Mutual Release, and Covenants (the "Settlement Agreement") between the Trustee, the USACM Trust, the Manager, DTDF, and the Defendants, Beadle, McBride, Evans & Reeves, LLP Reeves, Evans, McBride & Zhang, LLP, TG McBride CPA Ltd., and T. Garth McBride (collectively, "BMER") and (b) an order pursuant to Nevada Revised Statute § 17.225, et seq. barring claims against BMER for indemnity and/or contribution. A proposed form of order is attached hereto as Exhibit "A." Proposed findings of fact and conclusions of law are attached as Exhibit "B."

This Motion is made pursuant to Rule 9019 and Nevada Revised Statutes §17.225, et seq. and is based upon the points and authorities listed herein, the Declaration of Geoffrey Berman in Support of the Motion to Approve Settlement filed in support of this motion (the "Berman Declaration," hereto attached as Exhibit "C"), the Declaration of Michael Tucker in Support of the Motion to Approve Settlement filed in support of this motion (the "Tucker Declaration," hereto attached as Exhibit "D"), and any evidence and argument to be presented at the time of the hearing of the Motion.

## POINTS AND AUTHORITIES

## I.        JURISDICTION AND VENUE

1.        On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), DTDF, USA Capital First Trust Deed Fund, LLC ("FTDF"), USA Securities, LLC, and USA Capital Realty Advisors, LLC (collectively, the "USA Capital Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") which are jointly administered as Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case").

2.        On November 15, 2006, the USA Capital Debtors filed their First Amended Disclosure Statement [Docket #1798] (the "Disclosure Statement") for the USA Capital Debtors' Third Amended Joint Plan of Reorganization [Docket # 1799] (the "Plan"), which was confirmed by the Bankruptcy Court by Order dated January 8, 2007 [Docket #2376] (the "Confirmation Order") and the Findings of Fact and Conclusions of Law in Support of the "Order Confirming the Debtors' Third Amended Joint Plan of Reorganization, As Modified Herein" [Docket #2377] dated January 8, 2007.  The Plan became effective on March 12, 2007.  On December 8, 2006, the USACM Committee filed its Plan Documents Supplement and Disclosures [Docket # 2002] (the "USACM Disclosure Supplement".)  Also on December 8, 2006, the DTDF Committee filed its Plan Documents Supplement and Notice of Disclosures [Docket #2001] (the "DTDF Disclosure Supplement").

3.        The USACM Trust was created pursuant to the Plan and is governed by the provisions of the Liquidating Trust Agreement (the "USACM Trust Agreement") as described in the USACM Disclosure Supplement.  Berman serves as the trustee of the USACM Trust.  The Plan retained USACM's causes of action [Plan ¶ IV. D. 1] along with certain of FTDF's causes

1    of action [Plan ¶ IV. D. 1], for enforcement by the USACM Trust.  Pursuant to the USACM

2    Trust Agreement [USACM Trust Agreement ¶¶ 2.1. (a) and recital E], USACM Trust's

3    beneficiaries include the holders of all allowed general unsecured creditor claims against

4    USACM as defined in Plan ¶ II. C. 1. d.

5        4.    USACM Trust was vested, pursuant to the Plan, with all USACM Litigation

6    Claims as defined in Plan ¶¶ I. A. 95 and IV. D. 1.  Additionally, USACM Trust was vested,

7    pursuant to the Plan, with all assignable FTDF Litigation Claims as defined in Plan ¶¶ I. A. 95,

8    IV. D. 1, and IV. E. 2. j.  FTDF was dissolved on January 16, 2008, as required by Plan ¶ IV. A.

9    6. As such, the Trustee has the right to pursue, compromise, settle, release, or otherwise dispose

10   of all USACM Litigation Claims belonging to the USACM Trust and estate retained for

11   enforcement on behalf of the USACM Trust's beneficiaries, including claims and causes of

12   action against BMER.

13       5.    The Plan also expressly retained DTDF's causes of action [Plan ¶ IV. D. 2] for

14   enforcement by post-effective date DTDF, including the Litigation Claims as defined in Plan ¶¶

15   I. A. 95 and IV. D. 2.  Pursuant to the Plan and the Confirmation Order, Tucker serves as

16   manager of DTDF.  Pursuant to DTDF's Amended and Restated Operating Agreement (the

17   "DTDF Operating Agreement") included in the DTDF Disclosure Supplement, DTDF's

18   members are the beneficiaries any DTDF distributions [DTDF Operating Agreement ¶ 7.03].

19   DTDF Operating Agreement ¶ 1.21 defines DTDF's members as the holders of all allowed

20   DTDF equity interests described in Plan ¶ II. C. 3. e.    As such, the Manager has the right to

21   pursue, compromise, settle, release, or otherwise dispose of all Litigation Claims belonging to

22   DTDF retained for enforcement, including claims and causes of action against BMER.

23       6.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, as well as Section ¶ VIII. D. 21 of the Plan.  This is a core proceeding pursuant to 28

U.S.C. 157(b)(2).  Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409.  The relief

sought herein is authorized pursuant to Rule 9019.

## II.    BACKGROUND

### A.    <u>USACM, DTDF, and FTDF</u>

7.    USACM was formed in 1989 as mortgage broker and loan servicing company

whose primary business activities were: (a) "originating" short-term loans by direct lenders to

commercial real estate developers; and (b) servicing the loans that it originated by collecting

principal and interest from borrowers and distributing those payments to direct lenders. USACM

earned revenue by charging various fees for these services, including origination, servicing, and

extension fees. Between 1997 and 2006, USACM originated and serviced more than $2.6 billion

in loans to real estate developers. At the time of its bankruptcy filing in April 2006, $960 million

of these loans remained outstanding.

8.    DTDF was a real estate investment fund founded in 2000. DTDF offered

membership interests to Nevada investors (the "Investors"), many of whom were also USACM

direct lenders, and used these funds to purchase interests in loans originated and serviced by

USACM.  DTDF earned interest as a direct lender and distributed its profits to its Investors on a

periodic basis.

9.    FTDF was a real estate investment fund founded in 2001.  FTDF offered

membership interests to investors across the United States (the "Investors"), many of whom were

also USACM direct lenders, and used these funds to purchase interests in loans originated and

serviced by USACM.  DTDF earned interest as a direct lender and distributed its profits to its

Investors on a periodic basis.

10.     During their tenure, certain culpable insiders turned USACM's loan servicing operations into a massive fraudulent investment scheme, by misallocating and/or commingling available funds within the "USA Capital" group of companies. The culpable insiders also looted and otherwise misused DTDF funds to perpetuate their scheme. DTDF funds were used to make impermissible loans to entities owned or controlled by the Culpable Insiders and to fund interest and principal payments to other direct lenders in non-performing loans. The culpable insiders' wrongful acts were designed to allow the systematic looting of USACM, DTDF, and other related entities.

11.     In addition to their wrongdoing related to USACM and DTDF, the culpable insiders caused FTDF to violate many of its internal lending requirements, as set out in its prospectus. These violations led to eventual losses when these loans stopped performing.

12.     On April 13, 2006, USACM and a number of its related companies, including DTDF and FTDF, collapsed under the weight of this massive fraud perpetrated on them by the culpable insiders.

**B.     BMER**

13.     BMER is a professional corporation organized under Nevada law.

14.     BMER audited DTDF's financial statements for fiscal years ending December 31, 2000 through December 31, 2003. For the fiscal years 2001 through 2002, BMER issued unqualified audit opinions on DTDF's financial statements. BMER continued work on DTDF's 2003 financial statements through October of 2004, when it was informed DTDF no longer required audit services.

15.     BMER audited FTDF's financial statements for the period ending March 29, 2001 and the fiscal years ending December 31, 2001 through December 31, 2005. BMER issued

unqualified audit opinions on FTDF's March 29, 2001 through December 31, 2004 financial statements, but did not complete its 2005 audit due to FTDF's bankruptcy.

## C.    The Investigation and Ensuing Settlement Discussions

16.    Subsequent to the Petition Date, the USACM Trust and DTDF performed an extensive investigation of their claims surrounding and related to the bankruptcies.  Berman Declaration ¶ 3; Tucker Declaration ¶ 3.  As a result of this investigation, the Trustee and the Manager contacted BMER regarding a potential lawsuit and BMER's willingness to enter into pre-litigation settlement discussions.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  The Trustee and the Manager informed BMER that they were preparing to file suit against BMER for, inter alia, accounting malpractice/professional negligence and breach of contract arising from professional services provided by BMER to USACM.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  On May 16, 2008 the USACM Trust and DTDF filed a civil complaint against BMER in the United States Bankruptcy Court District of Nevada, Adversary No. 08-1164.  Berman Declaration ¶ 3; Tucker Declaration ¶ 3.

17.    In May 2008, the USACM Trust, DTDF, BMER, and the insurance carriers for BMER participated in a mediation conference.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  Since the mediation, the parties have continued informal settlement discussions in order to resolve the USACM Trust and DTDF's claims against BMER.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  As a result of these extensive discussions, meetings, mediation, and subsequent arms-length settlement negotiations, the parties reached a mutually acceptable agreement for the complete resolution of any and all claims against BMER in July 2008.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  The parties have memorialized this settlement by executing the Settlement Agreement.  Berman Declaration ¶ 4; Tucker Declaration ¶ 4.  The Trustee and the

1  Manager file this Application seeking the Court's approval of the Settlement Agreement.

2  ### III.    TERMS OF SETTLEMENT

3      18.    With a view toward maximizing the recoverable value of the USACM Trust and

4  DTDF's claims, in furtherance of broader efforts to facilitate the estates' distribution of funds,

5  and to otherwise avoid the time, expense, and uncertainty of further litigation, the USACM Trust

6  and DTDF—subject to this Court's approval under Rule 9019—have entered into the

7  confidential Settlement Agreement with BMER (hereto attached as Exhibit "E").  The essential

8  terms of the comprehensive settlement are as follows:

9          a.  The insurance carriers for BMER shall pay $1,500,000.00 (the "Settlement

10             Amount") to the USACM Trust to settle all claims available to the USACM Trust

11             and DTDF against BMER;

12         b.  Consistent with the agreement between the Debtors, DTDF will share in the

13             settlement as a beneficiary of the USACM Trust and as otherwise outlined in the

14             agreement between the USACM Trust and DTDF dated and filed with the Court

15             on March 13, 2008;

16         c.  Payment of the Settlement Amount is contingent upon the Court's approval of the

17             Settlement Agreement under Rule 9019; and

18         d.  Effective upon payment of the Settlement Amount, the parties to the Settlement

19             Agreement will exchange full mutual releases.

20

21

22

23

# IV.    ARGUMENT

## A.    The 9019 Order

### 1.    The Standard for Approval of Settlement Agreements

19.    Under the terms of the Settlement agreement, the Trustee and Manager are required to seek approval of the Settlement agreement under Rule 9019.    Compromise and settlement have long been an inherent component of the bankruptcy process.    *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1958) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).    Rule 9019 provides:

> (a) COMPROMISE.    On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the Court may direct.

Compromises are favored in bankruptcy and public policy favors compromise because litigation "can occupy a court's docket for years on end, depleting resources of the parties and the taxpayers while rendering meaningful relief elusive."    *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001) (quoting *Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996).    The decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sole discretion.    *See In re Stein*, 236 B.R. 34, 37 (Bankr. D. Or. 1999).    The Trustee and the Manager ask the Court to exercise its authority and discretion and, based upon the standards for the approval of compromises under Rule 9019, approve the Settlement Agreement.

20.    The Court, in order to approve a compromise and settlement, must find that it is fair and equitable.    *In re Arden*, 176 F.3d 1226, 1228 (9th Cir. 1999); *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986).    "In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) [t]he probability of success in the

litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A&C Properties*, 784 F.2d at 1381.  The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

21.    In conducting such an analysis, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994)(quoting In re Energy Coop, Inc., 886 F.2d 921, 927 (7th Cir. 1989)).  In In re Lion Capital Group, the court, interpreting the identical factors utilized in the Ninth Circuit, concluded that "the court is not finally to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

## 2.    *The Settlement Agreement is Fair and Equitable*

22.    The Trustee, the Manager, and Special Counsel have analyzed the claims against BMER and have found that Settlement Agreement is reasonable, fair, and equitable in light of all of the relevant factors.  Berman Declaration ¶ 5; Tucker Declaration ¶ 5.  The Trustee and Manager believe that the Settlement Agreement is in the best interest of DTDF, the USACM Trust and their beneficiaries.   Berman Declaration ¶ 5; Tucker Declaration ¶ 5.

a.    <u>Probability of Success in the Litigation</u>

23.    Considering the uncertainty and contingency involved in potential litigation against BMER, the Settlement Agreement properly considers the probability of success for the USACM Trust and DTDF in litigation.

24.    There is no guarantee that the USACM Trust and DTDF would succeed if the parties litigated the dispute that is the subject of the Settlement Agreement. The Trustee and the Manager believe that BMER failed to appropriately audit the financial statements of DTDF, thereby allowing certain insiders to perpetrate a financial fraud on USACM, DTDF, and other related entities that resulted in tens of millions of dollars in damages to the Debtors. Berman Declaration ¶ 3; Tucker Declaration ¶ 3. Furthermore, the Trustee and the Manager believe that BMER failed to appropriately audit the financial statements of FTDF, thereby causing the loss of substantial sums of money due to defaulting loans. Berman Declaration ¶ 3; Tucker Declaration ¶ 3. The Trustee and the Manager believe that: (1) BMER shares substantial responsibility for the Debtors' losses; (2) the claims they can assert against BMER have substantial merit and are supported by the evidence; and (3) litigation would lead to a favorable result. Berman Declaration ¶ 7; Tucker Declaration ¶ 7. However, BMER has consistently and vigorously denied all claims against it and has asserted numerous factual and legal defenses Berman Declaration ¶ 7; Tucker Declaration ¶ 7. BMER has maintained that it fulfilled all of its contractual and professional obligations with respect to its audits. Berman Declaration ¶ 7; Tucker Declaration ¶ 7.

25.    Should this matter proceed to litigation, there is no doubt that it would be expensive to litigate as all parties appear intent on vigorously backing their allegations. Furthermore, there is no guarantee or certainty that the USACM Trust and/or DTDF would be

1   successful in prosecuting their claims.  Therefore, the Trustee and the Manager have concluded

2   that accepting payment under the Settlement Agreement is fair, reasonable, and in the interest of

3   the USACM Trust and DTDF after weighing all relevant and material factors, including the

4   strengths of the asserted claims and defenses.  Berman Declaration ¶¶ 5&8; Tucker Declaration

5   ¶¶ 5&8.

6                                 b.          The Difficulties to Be Encountered in the Matter of Collection

7           26.     Even if the USACM Trust and DTDF were to prevail in litigation, they could

8   thereafter face a number of issues arising from collection of any judgment.  The Trustee and the

9   Manager are not convinced that BMER has the ability, through insurance or other means, to pay

10  any judgment the Trustee may obtain in excess of the Settlement Amount.  Berman Declaration,

11  ¶ 11; Tucker Declaration, ¶ 11.

12          27.     The USACM Trust and DTDF could conceivably face collection problems in

13  their claims against BMER.  If they were to prevail in litigation, the USACM Trust and DTDF

14  could not be certain that BMER would be able to pay a large judgment in favor of the debtors.

15  Berman Declaration ¶ 11; Tucker Declaration ¶ 11.  As such, the USACM Trust and DTDF must

16  look to BMER's insurance policy to fund any judgment against BMER.  The Settlement Amount

17  is significant compared to the total amount of insurance available to BMER, and nearly exhausts

18  BMER's insurance coverage.  Berman Declaration ¶ 11; Tucker Declaration ¶ 11.  In connection

19  with settlement negotiations, BMER's insurance carriers have strongly asserted to the Trustee

20  that there are meritorious coverage defenses under the relevant insurance policies that would

21  make some or all of such insurance policy proceeds unavailable to pay any judgment the

22  USACM Trust or DTDF may recover against BMER.  Berman Declaration, ¶ 11; Tucker

23  Declaration, ¶ 11.

28.     Finally, the real potential for an appeal of any litigated resolution of the disputes between the USAM Trust, DTDF, and BMER would make recovery difficult and protracted.

c.     The Complexity of the Litigation Involved and the Expense, Inconvenience, and Delay Necessarily Attending It.

29.     There is no doubt that any adversary proceeding against BMER would be a complex and costly piece of litigation.  Litigation against BMER will involve large discovery costs associated with millions of pages of document discovery, numerous depositions that could take days to complete, the retention of several expert witnesses at a high cost, and will involve multiple parties.  Berman Declaration ¶ 12; Tucker Declaration ¶ 12.  Each party will necessarily have to locate and present evidence to support or deny factual allegations, at great expense and delay to the Parties.  This case would be complex, expensive, and like any other litigation, the outcome is inherently uncertain.

30.     Actual litigation of the disputes resolved by the Settlement Agreement will naturally result in considerable expense to both the USACM Trust and DTDF.  The Settlement Agreement permits the parties to resolve this dispute and potential future litigation in a practical and timely manner with a predictable result that is not obtainable through litigation.

d.     The Paramount Interest of the Creditors

31.     The paramount interest of the creditor requires the Court to consider  whether a compromise generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time."  In re Marples, 266 B.R. 202, 207 (Bankr. D. Idaho 2001).  The Trustee and the Manager have thoroughly examined the Settlement Agreement, and believe it is in the best interest of the creditors.

32.     The Settlement Amount is substantial and would be a material contribution to

both the USACM Trust and DTDF's estates in light of the fact that it was reached prior to filing suit and given the complexity, expense, and the risks and uncertainty of litigation. Berman Declaration ¶ 13; Tucker Declaration ¶ 13. The possibility of achieving a better outcome through litigation is greatly outweighed by the risk that there will be no meaningful recovery by the USACM Trust and DTDF. The terms of the Settlement Agreement fall within the reasonable range of likely outcomes of litigation with BMER while eliminating litigation risks, costs, and delay associated with trial and a potential appeal, and provides an immediate and substantial recovery to DTDF, the USACM Trust, and their beneficiaries. Berman Declaration ¶ 13; Tucker Declaration ¶ 13.

33.    The Settlement Agreement will facilitate prompt and meaningful recoveries for the benefit of the creditors who have suffered loss as a result of the events leading to the Debtors bankruptcy. Berman Declaration ¶ 13; Tucker Declaration ¶ 13. Even if the USACM Trust and DTDF's prosecution of an adversary proceeding were successful, creditors would face a long wait for a recovery from the case. Any judgment would likely face protracted appeals and collection delays, particularly when considering the complexity of this case. Furthermore, settling these claims prior to filing suit achieves a meaningful recovery for creditors without expending considerable resources, as would be inevitable if the issues were litigated. Berman Declaration ¶¶ 11&13; Tucker Declaration ¶¶ 11&13.

34.    The payment to the USACM Trust and DTDF's distributive share of the Settlement Amount to be paid to the USACM Trust, coupled with other benefits (e.g., avoidance of all further litigation related costs incurred by DTDF and the USACM Trust), fall well above the low-point in the range of reasonableness necessary to support this Application. Consequently, the USACM Trust and DTDF's agreement with BMER meets the standards

required by applicable bankruptcy law.  The factors discussed above heavily weigh in favor of the settlement's approval as compromises, of course, are favored in bankruptcy. In re A&C Props., 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986); 9 Collier on Bankruptcy ¶ 9019.03[l] (15th Ed. 1990).

35.    After extensive arms-length negotiations, and weighing all relevant and material factors, including the Settlement Amount, the strengths of the asserted claims and defenses, the costs and burdens of litigation, expert witness costs, the effect on the USACM Trust and DTDF's litigation against other parties, the insurance policy limits and funds available to BMER, and the general uncertainty and risk of litigation, the Trustee and the Manager believe the Settlement Agreement with BMER is in the best interest of DTDF, the USACM Trust, and their beneficiaries.

**B.    <u>The Bar Order</u>**

36.    The USACM Trust and DTDF are contractually obligated to seek engage in good faith efforts to seek the entry of a Bar Order under Nevada Revised Statute 17.225, et seq.  The proposed Bar Order removes a serious obstacle to achieving a meaningful settlement.  It addresses the concern of BMER that it may later be faced with claims for indemnity, contribution, or other claims arising from the facts underlying this action.  Through an order entered under Nevada Revised Statutes §17.225, et seq., a settling party can extinguish liability and avoid future litigation, thus providing an incentive for settlement.

37.    This Court has authority to enter the Bar Order pursuant to Nevada Revised Statutes §17.225, et seq. when the settlement is made in "good faith."  See, e.g., Carpenter v. U.S., 710 F. Supp. 747, 752-53 (D. Nev. 1988); Velsicol Chemical Corp. v. Davidson, 811 P.2d 561 (Nev. 1991).  The legislative purpose of this statute is to foster and encourage settlements.

"The language of NRS 17.245 indicates an intent to allow plaintiffs to settle with one tortfeasor without losing the right to proceed against the rest, while at the same time preventing double recovery to the plaintiff."  Gen. Motors Corp. v. Reagle, 714 P.2d 176, 177 (Nev. 1986).

38.    The determination of good faith does not require the court to consider any specific factors, but rather "should be left to the discretion of the trial court based upon all relevant facts available."  Velsicol, 811 P.2d at 561 & 563; The Doctors Co. v. Vincent, 98 P.3d 681, 686-87 (Nev. 2004).  However, the court may consider factors such as "the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants."  The Doctors Co., 98 P.3d at 686.  As amply demonstrated in the Berman Declaration and the Tucker Declaration, and the discussion of the Settlement Agreement set out in the previous sections of this Motion, the Settlement is made in good faith.

39.    All of the factors considered by the Nevada Supreme Court in The Doctors Co. v. Vincent weigh in favor of a finding of good faith.  The Settlement Amount is substantial to both of the estates, and avoids costs associated with continued litigation.  Berman Declaration ¶ 13; Tucker Declaration ¶ 13.  The USACM Trust and DTDF will share in this settlement in accordance with a previously set out agreement that was approved by this Court.  Tucker Declaration ¶ 9.  BMER's insurance policy limits are largely exhausted by this settlement, and BMER is not capable of funding a judgment that is far in excess of a judgment against it.  Berman Declaration ¶ 11; Tucker Declaration ¶ 11.  Finally, this settlement was entered into based on arms-length negotiations, by independent parties, resulting in a fair settlement that was not aimed to injure the interests of any non-settling defendants.  Berman Declaration ¶¶ 4&13;

1    Tucker Declaration ¶¶ 4&13

2    **C.**    **Notice**

3    40.    Notice of this Motion has been provided to all of the above-titled estates, and to

4    USACM Trust and DTDF's creditors.  To date, no creditor of the above-titled Debtors has filed

5    suit against BMER.  Additionally, no party as asserted a claim for indemnification or

6    contribution against BMER.  However, the USACM Trust and DTDF have commenced

7    litigation against persons or entities that may have such claims.  Those persons and entities have

8    also been provided with notice of this Motion.

9                                        **CONCLUSION**

10    For the foregoing reasons, the Trustee and Manager respectfully requests that this

11    Honorable Court approve the Settlement Agreement on the terms set forth above, enter the Bar

12    Order pursuant to Nevada Revised Statutes §17.225, et seq., and provide such other and further

13    relief as the Court deems appropriate.

14

15    DATED this 20th day of October, 2008.

16

17

18                            *{Remainder of Page Intentionally Left Blank}*

19

20

21

22

23

Respectfully Submitted,

| | |
|---|---|
| **DIAMOND MCCARTHY LLP**<br><br>By:  _/s/ Allan B. Diamond_<br>Allan B. Diamond, TX 05801800 (pro hac vice)<br>J. Maxwell Beatty, TX 24051740 (pro hac vice)<br>909 Fannin, Suite 1500<br>Houston, Texas 77010<br>(713) 333-5100 (telephone)<br>(713) 333-5199 (facsimile)<br><br>_Special Litigation Counsel for USACM Liquidating Trust_ | **DIAMOND MCCARTHY LLP**<br><br>By:___ _/s/ Eric D. Madden_<br>William T. Reid, IV, TX 00788817 (pro hac vice)<br>Eric D. Madden, TX 24013079 (pro hac vice)<br>P. Jason Collins, TX 24040711 (pro hac vice pending)<br>6504 Bridge Point Parkway<br>Suite 400<br>Austin, Texas 78730<br>(512) 617-5200 (telephone)<br>(512) 617-5299 (facsimile)<br><br>_Special    Litigation    Counsel    for    USACM Liquidating Trust_ |
| **LEWIS AND ROCA LLP**<br><br>By:  _/s/ Rob Charles_<br>Susan M. Freeman, AZ 4199 (pro hac vice)<br>Rob Charles, NV 6593<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, Nevada  89169-5996<br>(702) 949-8321 (telephone)<br>(702) 949-8320 (facsimile)<br><br>_Counsel for USACM Liquidating Trust_ | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 20, 2008, a copy of the foregoing Motion was served either electronically or via first class mail: (a) all creditors, equity holders, and other parties in interest in the USA Capital Bankruptcy Case listed on the master mailing list associated with the case; (b) all existing and prospective defendants to any suits brought or to be brought by the USACM Trust and/or DTDF; and (c) all Direct Lenders (as defined in the Plan).

_/s/ William T. Reid, IV_

William T. Reid, IV

# EXHIBIT A

1

2

3

4

5

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

6

| | |
|---|---|
| 7  In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>8               Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |

| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>        Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |

9

10

| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND,<br>LLC,<br><br>        Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |

11

12

13

| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>        Debtor. | Judge Linda B. Riegle |

14

15

16

| In re:<br>USA SECURITIES, LLC,<br><br>        Debtor. | |

17

| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **ORDER APPROVING<br>SETTLEMENT WITH<br>BEADLE, MCBRIDE, EVANS &<br>REEVES, LLP, ET AL.AND<br>ORDER BARRING CERTAIN<br>CLAIMS UNDER NEVADA<br>REVISED STATUTE §17.225, et<br>seq.** |

18

19

20

21

22

23

**ORDER TO APPROVE SETTLEMENT AND ORDER TO**
**BAR CERTAIN CLAIMS**                                          **Page 1 of 3**

**EXHIBIT A**

USACM LIQUIDATING TRUST; and
USA CAPITAL DIVERSIFIED TRUST DEED FUND,
LLC;

             Plaintiffs,

      v.

BEADLE, MCBRIDE, EVANS & REEVES, LLP,
REEVES, EVANS, MCBRIDE & ZHANG, LLP, TG
MCBRIDE CPA LTD., and T. GARTH MCBRIDE,

           Defendants.

On November 18, 2008 this Court held a hearing on the *Application to Compromise and Settle Controversies with Beadle, McBride, Evans & Reeves, LLP, et al.* (the "Motion") filed by Geoffrey Berman ("Berman" or the "Trustee"), Trustee of the USACM Liquidating Trust (the "USACM Trust") and Michael Tucker ("Tucker" or the "Manager"), Manager of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF"). The Motion requested an Order Approving Settlement and for an Order pursuant to Nevada Revised Statute §17.225, et seq. barring claims against Beadle, McBride, Evans & Reeves, LLP Reeves, Evans, McBride & Zhang, LLP, TG McBride CPA Ltd., and T. Garth McBride (collectively, "BMER") for indemnity and/or contribution.

Pursuant to the Motion and as set forth in the separate Findings of Fact and Conclusions of Law entered pursuant to Bankruptcy Rules of Procedure 9014 and 7052, and Federal Rule of Civil Procedure 52, this Court makes the following order:

1.      The Settlement Agreement, Mutual Release, and Covenants dated July 18, 2008 between the Trustee, the USACM Trust, the Manager, DTDF, and BMER (the "Settlement Agreement") is approved.

2.      Pursuant to Nevada Revised Statute §17.245, all persons who have received notice of the Motion and who allegedly are jointly and severally liable with BMER as joint tortfeasors for injuries or

potential injuries described in the Settlement Agreement are barred from asserting any claims for contribution or indemnity against BMER.

3.        This Court shall retain jurisdiction to interpret and enforce the terms of the Settlement Agreement and this Order Approving Settlement.

###

EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING SETTLEMENT BEADLE, MCBRIDE, EVANS & REEVES, LLP, ET AL. AND ORDER BARRING CERTAIN CLAIMS UNDER NEVADA REVISED STATUTE §17.225, et seq.** |
| Affects:<br>☒All Debtors<br>☐USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

**FINDINGS OF FACT & CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING SETTLEMENT AND ORDER BARRING CERTAIN CLAIMS**    **1 of 4**

**EXHIBIT B**

1   USACM LIQUIDATING TRUST; and
    USA CAPITAL DIVERSIFIED TRUST DEED FUND,
2   LLC;

3                   Plaintiffs,

            v.
4
    BEADLE, MCBRIDE, EVANS & REEVES, LLP,
    REEVES, EVANS, MCBRIDE & ZHANG, LLP, TG
5   MCBRIDE CPA LTD., and T. GARTH MCBRIDE,

6
                    Defendants.

7           This Court, having considered the *Application to Compromise and Settle Controversies with*

8   *Beadle, McBride, Evans & Reeves, LLP, et al.* (the "Motion") and the Declarations of Geoffrey L.

9   Berman and Michael Tucker in support thereof and the arguments of counsel made at the hearing on

10  the Motion to Compromise held November 18, 2008; and

11          This Court having considered the Pleading in Support of the Motion to Compromise and the

12  arguments of counsel, now therefore makes the following findings of fact and conclusions of law under

13  Federal Rule of Civil Procedure 52 and Federal Rules of Bankruptcy Procedure 7052 and 9012.

14          1.      Notice of the Motion ("Notice") was properly served on all creditors of the above-titled

15  estates and all persons who may have claims for indemnification or contribution.

16          2.      The claims being settled are assets of the USACM Liquidating Trust (the "USACM

17  Trust").  Geoffrey L. Berman ("Berman" or the "Trustee") currently serves as a trustee of the USACM

18  Liquidating Trust.

19          3.      The claims being compromised also belong to USA Capital Diversified Trust Deed

20  Fund, LLC ("DTDF").  Michael Tucker (the "Manager") is the manager of DTDF.

21          4.      The beneficiaries of USACM Trust and DTDF are the creditors of USA Commercial

22  Mortgage Company ("USACM") and the interest holders in DTDF.

23

    **FINDINGS OF FACT & CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING**          **2 of 4**
    **SETTLEMENT AND ORDER BARRING CERTAIN CLAIMS**

5.      The claims being compromised herein arise from professional services rendered by Beadle, McBride, Evans & Reeves, LLP, Reeves, Evans, McBride & Zhang, LLP, TG McBride CPA Ltd., and T. Garth McBride (collectively, "BMER") to DTDF and FTDF.

6.      The USACM Trust and DTDF have investigated the merits of the claims against BMER and have conducted such investigation as they deemed reasonable into the merits of the claim.  In addition, the USACM Trust and DTDF have inquired into the complexity of proving the potential claims, the expense of prosecuting such claims, the duration of litigation or other means for prosecuting the claims, and have evaluated the difficulties of collection and the assets available for satisfying any potential judgment.

7.      Based upon this evaluation, the Trustee and the Manager have recommended this compromise as fair and equitable.

8.      The Compromise is fair and equitable to the USACM Trust and its beneficiaries.

9.      The Compromise is fair and equitable to DTDF and its interest holders.

10.      At the present time, no claims for indemnification or contribution have been asserted, although the USACM Trust and DTDF have commenced litigation against persons and entities that may have such claims.

11.      At the present time, no claims have been asserted by creditors of any of the above-titled estates against BMER.

12.      No USACM Trust beneficiary or DTDF interest holder has objected to this compromise and the entry of a Bar Order under Nevada Revised Statute 17.225 et seq.

13.      USACM Trust and DTDF are contractually obligated under the Settlement Agreement, Mutual Release, and Covenants between the Trustee, the USACM Trust, the Manager, and DTDF, and BMER (the "Settlement Agreement") to seek approval of this Bankruptcy Court for the compromise.

14.     The amount being paid by BMER pursuant to the Settlement Agreement is a material contribution to the USACM Trust and its beneficiaries and to DTDF and its interest holders.

## CONCLUSIONS OF LAW

1.     Notice has been given to all parties to the above-titled estates, including to persons and entities who might reasonably be anticipated to have claims for indemnification and/or contribution.

2.     USACM Trust and DTDF have standing to assert the claims being settled and have standing to bring this Motion.

3.     In light of the complexity of the potential claims, the expense of litigating these claims, the duration of such litigation and the difficulties of collection in the event the estates are successful, the settlement with BMER is fair and equitable and reasonable under the circumstances.

4.     The entry of an order barring claims for indemnification and contribution under Nevada Revised Statute §17.225, et seq. is fair and equitable and reasonable under the circumstances of this case.

5.     Having received notice of the prospective entry of this Court's Order Approving Settlement and Order pursuant to Nevada Revised Statute §17.225, any and all parties who have received such notice are hereby barred from asserting any claims against BMER for indemnification and/or contribution under Nevada Revised Statute §17.225, et seq., or otherwise.

# # #

EXHIBIT C

1

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

2

3

Allan B. Diamond, TX State Bar No. 05801800
Email:  adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email:  emadden@diamondmccarthy.com

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

4

Special Litigation Counsel for USACM Liquidating Trust

5

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

6

7
| In re: | Case Nos.: |
| USA COMMERCIAL MORTGAGE COMPANY, | BK-S-06-10725-LBR |
| | BK-S-06-10726-LBR |
| Debtor. | BK-S-06-10727-LBR |

8
In re:
USA CAPITAL REALTY ADVISORS, LLC,

BK-S-06-10728-LBR
BK-S-06-10729-LBR

9
Debtor.

10
In re:
USA CAPITAL DIVERSIFIED TRUST DEED FUND,
LLC,

JOINTLY ADMINISTERED
Chapter 11 Cases

11
Debtor.

12
In re:
USA CAPITAL FIRST TRUST DEED FUND, LLC,

Judge Linda B. Riegle

13
Debtor.

14
In re:
USA SECURITIES, LLC,

**DECLARTION OF GEOFFREY
L. BERMAN IN SUPPORT OF
MOTION TO APPROVE
SETTLEMENT - BMER**

15
Debtor.

16
Affects:
☒ All Debtors
☐ USA Commercial Mortgage Company

17
☐ USA Capital Realty Advisors, LLC
☐ USA Capital Diversified Trust Deed Fund, LLC

18
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

19
USACM LIQUIDATING TRUST; and
USA CAPITAL DIVERSIFIED TRUST DEED FUND,
LLC;

20
Plaintiffs,

21
v.

22
BEADLE, MCBRIDE, EVANS & REEVES, LLP,
REEVES, EVANS, MCBRIDE & ZHANG, LLP, TG
MCBRIDE CPA LTD., and T. GARTH MCBRIDE,

23

Defendants.

BERMAN DECLARATION IN SUPPORT OF
SETTLEMENT WITH BMER

Page 1 of 7

EXHIBIT C

**DECLARATION OF GEOFFREY BERMAN IN SUPPORT OF MOTION TO APPROVE SETTLEMENT – BMER**

Geoffrey L. Berman, Trustee of the USACM Liquidating Trust (the "USACM Trust"), hereby declares the following under penalty of perjury:

1.      I am the Trustee of the USACM Trust created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USA Commercial Mortgage Company ("USACM"), USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF"), and USA Securities, LLC (collectively, the "Debtors") on November 15, 2006.  The plan was confirmed by order of this Court on January 8, 2007 and became effective on March 12, 2007.

2.      Pursuant to the Joint Plan, the USACM Trust was vested with all of USACM's litigation claims and all of FTDF's assignable litigation claims.  This Court retained jurisdiction in Section VIII. D of the Joint Plan over numerous matters, including "[h]earing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor Insider Litigation" and "[a]pproving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the plan."

3.      After I was appointed as the Trustee of the USACM Trust, I authorized an extensive investigation as to the factual circumstances that led to USACM and FTDF's bankruptcies.  During the course of this investigation, facts were found that that gave rise to litigation claims against Beadle, McBride, Evans & Reeves, LLP Reeves, Evans, McBride & Zhang, LLP, TG McBride CPA Ltd., and T. Garth McBride (collectively, "BMER") related to its

1    audits of DTDF and FTDF's financial statements. Based on that investigation, I believe the

2    Trust has claims against BMER that it failed to conduct its audits of DTDF in accordance with

3    contractual and professional standards. This allowed certain insiders to perpetrate a financial

4    fraud on USACM, DTDF, and other related entities, thereby leading to the loss of tens of

5    millions of dollars. I also believe that the Trust has claims against BMER for failing to

6    appropriately audit the financial statements of FTDF, thereby causing the loss of substantial

7    sums of money due to defaulting loans. As a result of these findings, the USACM Trust and

8    DTDF filed a civil complaint against BMER in the United States Bankruptcy Court District of

9    Nevada, Adversary No. 08-1164 on May 16, 2008.

10         4.     The USACM Trust and BMER participated in informal settlement discussions in

11    May 2008 related to its claims, but it did not immediately result in a compromise of the USACM

12    Trust's claims against BMER. However, the USACM Trust and BMER continued to discuss

13    settlement for the period following that meeting. After extensive discussions, meetings, and

14    arms-length settlement negotiations, I ultimately arrived at a settlement agreement with BMER

15    in July 2008. This agreement was memorialized in the Settlement Agreement, Mutual Release,

16    and Covenants that was entered into between the USACM Trust, DTDF, and BMER (the

17    "Settlement Agreement").

18         5.     I, along with Special Litigation Counsel, have analyzed the USACM Trust's

19    claims against BMER and the Settlement Agreement. I believe the Settlement Agreement with

20    BMER and the proposed settlement set forth therein are fair, reasonable, and in the best interests

21    of the USACM Trust and its beneficiaries for the reasons set forth below. I have entered into the

22    settlement agreement with BMER in good faith after weighing what I believe to be all relevant

23    and material factors, including but not limited to the amount of the proposed settlement; the

1  strengths of the asserted claims and defenses; the costs and burdens of litigation of the claims to

2  judgment, including expert witness costs; the effect of such litigation on the Trustee's litigation

3  against other parties; the insurance policy limits and insurance funds available to BMER to pay

4  the claims now and in the future and other potential sources of payment by BMER of the claims

5  now and in the future; and the general uncertainty involved in litigation of the claims.

6                                    **BMER CLAIMS**

7          6.      The USACM Trust's claims are for accounting malpractice/professional

8  negligence and breach of contract related to services provided to DTDF and FTDF. BMER

9  audited DTDF's financial statements for the fiscal years ending in December 31, 2000 through

10  December 31, 2003. For the fiscal years 2001 through 2002, BMER issued unqualified audit

11  opinions on DTDF's financial statements. BMER continued work on DTDF's 2003 financial

12  statements through October of 2004, when it was informed DTDF no longer required audit

13  services. BMER issued unqualified audit opinions on FTDF's March 29, 2001 through

14  December 31, 2004 financial statements. BMER began audit work on FTDF's December 31,

15  2005 financial statements, but was unable to complete its services because FTDF filed for

16  bankruptcy protection during BMER's 2005 audit.

17          7.      I believe that the USACM Trust's claims against BMER have substantial merit

18  and that BMER bears substantial responsibility for USACM and FTDF's losses. BMER has

19  strongly denied the validity of any such claims and any potential liability to the Trust. In

20  assessing the appropriate settlement in this matter, I have taken into account BMER's assertions

21  that the problems encountered in the audit were caused by certain management and employees of

22  USACM, DTDF, and FTDF; and that the accuracy of the financial statements was the

23  responsibility of management and not BMER.

8.    The case filed against BMER is complex, and will be expensive for both the USACM Trust and BMER to litigate. I am also aware that the outcome of the case, like any other litigation outcome, is inherently uncertain and subject to risk.

9.    The USACM Trust's attorneys and BMER's attorneys agreed to informal settlement discussions in an effort to resolve the claims, with my full knowledge and consent. However, no resolution of the USACM Trust's claims was reached at the meeting in May 2008. Further discussion and negotiations between counsel for the USACM Trust and counsel for BMER ensued over the period that followed. The parties explored the merits of the claims and defenses, and the complexity, expense, and unpredictability of the litigation of the claims against BMER. The USACM Trust and BMER entered into a settlement with respect to the USACM Trust's claims against BMER. The terms and conditions of the proposed settlement are set forth in the Settlement Agreement.

10.    The proposed settlement agreement with BMER, in my judgment, is reasonable, fair, and in the interest of the USACM Trust. The amount of the settlement is substantial in light of the current stage of the case, the complexity, expense, and the risks and uncertainty of litigation, especially in light of the funds available for BMER to resolve the matter. I have entered into the proposed settlement in good faith, and there has been no collusion or other improper conduct in connection with this proposed settlement to my knowledge.

11.    In assessing the appropriate settlement in this matter, I have also taken into account that litigation against BMER at this time would present additional expense to the USACM Trust. I am not confident that BMER has the financial capability, through insurance or otherwise, to pay a judgment that the Trustee would be likely to recover against it on the relevant claims. In connection with the settlement negotiations, BMER's insurance carrier has strongly

1    asserted that there are meritorious coverage defenses under the relevant insurance policies that

2    may make all or some of the policy proceeds unavailable to pay any judgment the Trustee may

3    recover against BMER.  This settlement is significant relative to the total amount of coverage

4    BMER has available for USACM's claims.    Additionally, the settlement nearly exhausts

5    BMER's available insurance coverage, and in light of potential coverage defenses, I believe it to

6    be reasonable.

7         12.    In addition, continued litigation of the Trustee's claims against BMER would be

8    complex, expensive, time-consuming, and the outcome of any such litigation would inherently

9    be uncertain. Any litigation of this claim would involve substantial costs related to discovery

10   alone as there are millions of pages of documents related to this claim, many witnesses that

11   would need to be deposed, and the claims would require the retention of multiple expert

12   witnesses.

13        13.    There is a substantial benefit to the USACM Trust from resolving the claims

14   against BMER now, without the necessity of continued litigation.  I believe that the settlement

15   amount is within the reasonable range of likely outcomes from litigation in light of issues related

16   to the ultimate collectibility of any judgment against BMER.   In light of all of the relevant

17   factors, the proposed settlement with BMER is reasonable, fair and in the best interests of the

18   USACM Trust, and will facilitate a prompt and meaningful recovery to the USACM Trust and

19   its beneficiaries.

20        **PROTECTION AGAINST THIRD-PARTY CLAIMS**

21        14.    During the negotiations with BMER, the protection of BMER against the

22   possibility of claims for contribution or indemnity was a significant issue.  BMER wants

23   reasonable assurance that they will not be subject to such further claims and litigation arising

from many of the same events. Such claims for contribution or indemnity could conceivably be asserted by current defendants in other cases related to the Debtors' bankruptcy, although none have in fact been asserted to date.

15.    Entry of an appropriate order protecting BMER against the possibility of future claims for contribution or indemnity will be of benefit to the USACM Trust, and will serve the purposes of the Joint Plan by facilitating recoveries for the benefit of the beneficiaries of the USACM Trust who have suffered loss as a result of the events leading to the Debtors' bankruptcy.

I DECLARE under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 20, 2008.

Geoffrey L. Berman, Trustee

EXHIBIT D

Declaration of Michael Tucker

Will be Supplemented

Under Separate Filing

EXHIBIT E

## SETTLEMENT AGREEMENT, MUTUAL RELEASE, AND COVENANTS

This SETTLEMENT AGREEMENT, MUTUAL RELEASE, AND COVENANTS (this "Agreement") is made and entered into by the USACM LIQUIDATING TRUST ("USACM Trust"), USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC ("DTDF") and BEADLE, MCBRIDE, EVANS & REEVES, LLP, REEVES, EVANS, MCBRIDE & ZHANG, LLP, TG MCBRIDE CPA LTD., AND T. GARTH MCBRIDE (collectively, "BMER") (the USACM Trust, DTDF, and BMER are each individually referred to as a "Party" and collectively referred to as, the "Parties").

### Recitals

A.    On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), DTDF, USA Capital First Trust Deed Fund, LLC ("FTDF"), USA Securities, LLC, and USA Capital Realty Advisors, LLC (collectively, the "USA Capital Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") that are jointly administered as Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case").

B.    On November 15, 2006, the USA Capital Debtors filed their First Amended Disclosure Statement [Docket #1798] (the "Disclosure Statement") for the USA Capital Debtors' Third Amended Joint Plan of Reorganization [Docket # 1799] (the "Plan"), which was confirmed by the Bankruptcy Court by Order dated January 8, 2007 [Docket #2376] (the "Confirmation Order") and the Findings of Fact and Conclusions of Law in Support of the "Order Confirming the Debtors' Third Amended Joint Plan of Reorganization, As Modified Herein" [Docket #2377] dated January 8, 2007. On December 8, 2006, the USACM Committee filed its Plan Documents Supplement and Disclosures [Docket # 2002] (the "USACM Disclosure Supplement".) Also on December 8, 2006, the DTDF Committee filed its Plan Documents Supplement and Notice of Disclosures [Docket #2001] (the "DTDF Disclosure Supplement".) The Plan became effective on March 12, 2007.

C.    The USACM Trust was created pursuant to the Plan and is governed by the provisions of the Liquidating Trust Agreement (the "USACM Trust Agreement") as described in the USACM Disclosure Supplement. Geoffrey L. Berman serves as the trustee of the USACM Trust ("USACM Trustee"). The Plan retained USACM's causes of action [Plan ¶ IV. D. 1] along with certain of FTDF's causes of action [Plan ¶ IV. D. 1], for enforcement by the USACM Trust. Pursuant to the USACM Trust Agreement [USACM Trust Agreement ¶¶ 2.1. (a) and recital E], USACM Trust's beneficiaries include the holders of all allowed general unsecured creditor claims against USACM as defined in Plan ¶ II. C. 1. d.

D.    The USACM Trust was vested, pursuant to the Plan, with all USACM Litigation Claims as defined in Plan ¶¶ I. A. 95 and IV. D. 1. Additionally, the USACM Trust was vested, pursuant to the Plan, with all assignable FTDF Litigation Claims as defined in Plan ¶¶ I. A.

95, IV. D. 1, and IV. E. 2. j.  FTDF was dissolved on January 16, 2008, as required by Plan ¶ IV. A. 6.

        E.      The Plan also expressly retained DTDF's causes of action [Plan ¶ IV. D. 2] for enforcement by post-effective date DTDF, including the Litigation Claims as defined in Plan ¶¶ I. A. 95 and IV. D. 2.  Pursuant to the Plan and the Confirmation Order, Michael Tucker serves as manager of DTDF (the "DTDF Manager").  Pursuant to DTDF's Amended and Restated Operating Agreement (the "DTDF Operating Agreement") included in the DTDF Disclosure Supplement, DTDF's members are the beneficiaries of any DTDF distributions [DTDF Operating Agreement ¶ 7.03].  DTDF Operating Agreement ¶ 1.21 defines DTDF's members as the holders of all allowed DTDF equity interests described in Plan ¶ II. C. 3. e.

        F.      The USACM Trust and DTDF hold any and all potential claims and causes of action, whether arising pre-petition or post petition, that USACM, USACM Trust, and DTDF may have or may at any time have had against BMER.  Additionally, the USACM Trust holds any and all assignable claims and causes of action that were the property of or could be asserted by FTDF or its respective estate against BMER.

        G.      On May 16, 2008, USACM Trust, as the duly authorized successor-in-interest to USACM and to certain claims of FTDF, and DTDF, on behalf of itself and as the duly authorized successor-in-interest to certain claims of FTDF, filed a civil complaint against BMER in the United States Bankruptcy Court District of Nevada, Adversary No. 08-1164 ("the Action").

        H.      On July 3, 2008, BMER agreed to pay USACM Trust One Million Five Hundred Thousand Dollars And No Cents ($1,500,000.00) to settle the Action in exchange for a full release by USACM, USACM Trust, the USACM Trustee, FTDF, DTDF, and the DTDF Manager as respects any and all claims which were or could have been asserted by said entities in the Action or in any other proceeding, exclusive of any obligations under this Agreement.

<u>**Terms and Conditions**</u>

        NOW, THEREFORE, in consideration for the covenants, promises and releases set forth herein, and in full settlement of all such claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, insurers, and any other parties or persons claiming by, through or under any of the Parties hereto, as follows:

        1.      On or before the Payment Date defined in paragraph 6 of this Agreement, BMER shall pay the sum of One Million Five Hundred Thousand Dollars And No Cents ($1,500,000.00), by wire transfer to the following account:  USACM Trust, Account No. 304-923176, ABA No. 021000021, at JPMorgan Chase Bank, N.A., New York, NY (the "Settlement Payment").

        2.      Subject to the conditions set forth in paragraph 4 below, USACM Trust, as the duly authorized successor-in-interest to USACM and to certain claims of FTDF, and DTDF, on behalf of itself and as the duly authorized successor-in-interest to certain claims of FTDF, the

USACM Trustee, and the DTDF Manager (collectively the "Settling Debtors") fully release and discharge BMER, and all of its present and former principals, partners, directors, officers, employees, staff, agents, representatives, predecessors, successors, and assigns, and their respective attorneys, consultants, adjustors and insurers in their capacities as such (collectively, the "BMER Released Parties"), from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity of whatever kind, state or federal, known or unknown that the Settling Debtors ever had or now have or hereafter may acquire against the BMER Released Parties, arising out of, directly or indirectly, or in any way involving, relating to, based upon, or in connection with the Action, including but not limited to, claims in tort or contract, avoiding power claims under the Bankruptcy Code or any other statute, claims for professional malpractice, negligence, aiding and abetting, breaches of fiduciary duty, and breach of contract, and claims related in any manner to any professional engagement or services performed by BMER for or on behalf of the Settling Debtors, but excluding from the foregoing release any obligations under this Agreement. Settling Debtors acknowledge that they may have claims which they do not know or suspect to exist, or claims that they may not know or suspect to be assertable on behalf of other persons or entities who are not Settling Debtors (the "Settling Debtor Unknown Claims"). Settling Debtors acknowledge that the Settling Debtor Unknown Claims may be material and that the Settling Debtor Unknown Claims would, if known to Settling Debtors, materially affect their settlement with BMER. Settling Debtors waive any Settling Debtor Unknown Claims and any right to invalidate this Agreement based on any Settling Debtor Unknown Claims. Further, Settling Debtors waive their rights under any statute or common law rule providing that unknown claims are not compromised or released. The Settling Debtors agree that this Agreement be interpreted to effectuate the broadest discharge of BMER, to the maximum extent allowed by law and equity, of any and all claims which have been and might have been asserted by the Settling Debtors against BMER arising from any professional engagement or services by BMER for or on behalf of the Settling Debtors.

3.     Subject to the conditions set forth in paragraph 4 below, BMER, for themselves and on behalf of the BMER Released Parties, fully releases and discharges: (a) USACM, the USACM Trust, the USACM Trustee, and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such (collectively, the "USACM Trust Released Parties"), from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity of whatever kind, state or federal, known or unknown, which BMER or the BMER Released Parties ever had, now have, or hereafter may acquire against the USACM Trust Released Parties arising out of, directly or indirectly, or in any way involving, relating to, based upon, or in connection with the Action, including but not limited to, claims in tort or contract, avoiding power claims under the Bankruptcy Code or any other statute, claims for professional malpractice, negligence, aiding and abetting, breaches of fiduciary duty, and breach of contract, and claims related in any manner to any professional engagement or services performed by BMER for or on behalf of the Settling Debtors, but excluding from the foregoing release any obligations under this Agreement; and (b) DTDF, the DTDF Manager, and all of their present and former trustees, managers, employees, agents, attorneys, directors, and officers, and their respective insurers in their capacities as such

(collectively, the "DTDF Released Parties"), from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity of whatever kind, state or federal, known or unknown, which BMER or the BMER Released Parties ever had, now have, or hereafter may acquire against the DTDF Released Parties arising out of, directly or indirectly, or in any way involving, relating to, based upon, or in connection with the Action, including but not limited to, claims in tort or contract, avoiding power claims under the Bankruptcy Code or any other statute, claims for professional malpractice, negligence, aiding and abetting, breaches of fiduciary duty, and breach of contract, and claims related in any manner to any professional engagement or services performed by BMER for or on behalf of the Settling Debtors, but excluding from the foregoing release any obligations under this Agreement. BMER acknowledges that it may have claims which it does not know or suspect to exist, or claims that it may not know or suspect to be assertable on behalf of other persons or entities who are not BMER (the "BMER Unknown Claims"). BMER acknowledges that the BMER Unknown Claims may be material and that the BMER Unknown Claims would, if known to BMER, materially affect its settlement with the Settling Debtors. BMER waives any BMER Unknown Claims and any right to invalidate this Agreement based on any BMER Unknown Claims. Further, BMER waives its rights under any statute or common law rule providing that unknown claims are not compromised or released. This Agreement and BMER's release of the USACM Released Parties and the DTDF Released Parties shall not prohibit BMER from asserting the facts underlying the Released Claims as a bar, defense, affirmative defense, or otherwise in defense of any litigation; provided however, notwithstanding anything to the contrary, under all circumstances, BMER shall be barred from pursuing any claims or seeking any relief against the USACM and DTDF Released Parties with respect to the claims released herein.

4.    The releases set forth in paragraph 2 and 3 above shall become effective only when: (a) an order by the Bankruptcy Court approving this Agreement (the "Approval Order") becomes a Final Order; (b) the Settling Debtors irrevocably receive the Settlement Payment in good funds; and (c) BMER receives a file-endorsed copy of a stipulation of dismissal with prejudice of the Action.

5.    The term "Final Order" as used herein means (i) an Order of the Bankruptcy Court as to which the time to appeal, or move for re-argument or rehearing has expired, and as to which no appeal, or other proceedings for re-argument or rehearing shall then be pending; or (ii) in the event that an appeal, re-argument, or rehearing thereof has been sought, such order of the Bankruptcy Court has been affirmed in material respects by the highest court to which such order has been appealed, and the time to take any further appeal, move for re-argument, or rehearing shall have expired; provided however, notwithstanding the foregoing, an Order that is subject to appeal may be treated as a Final Order if no stay of the Order has been obtained and the Parties consent to treating such Order as a Final Order.

6.    The term "Payment Date" as used herein means the date that is ten (10) business days after the Approval Order becomes a Final Order.

7.      Within five (5) business days of receipt of the Settlement Payment, the Settling Debtors shall file a stipulation of dismissal with prejudice of the Action and provide to BMER file-endorsed copies of the filed stipulation of dismissal by facsimile and email.

8.      Except for the written warranties, representations, covenants, terms and conditions specifically set forth herein, in executing this Agreement, no Party has received nor relied upon any oral or written representation, statement or communication of any other Party or Party representative regarding any past or present fact, circumstance, condition, state of affairs, legal effect, or promise of future action.

9.      Each of the persons and entities constituting BMER agree to reasonably cooperate with the Settling Debtors and their counsel in connection with the investigation and pursuit of potential claims against other persons or entities.  Without limiting the foregoing, each of the BMER persons and entities agree to consult with, be interviewed by, provide documents and data (including electronically stored data) to, and provide truthful and accurate information to the Settling Debtors and/or their counsel as may be reasonably requested from time to time by the Settling Debtors or their counsel in Las Vegas, Nevada.  The BMER persons and entities further agree to make themselves available to testify at depositions, hearings, trials, or other proceedings as may be reasonably requested from time to time by the Settling Debtors or their counsel, in Las Vegas, Nevada. So long as the above time requests are not unreasonable, the BMER persons and entities shall not be entitled to compensation for anytime spent in connection with the foregoing but shall be entitled to reimbursement of actual out of pocket expenses reasonably incurred; provided that said reimbursable out of pocket expenses shall not include any costs or charges for internal time of any BMER person or entity or that of their employees, any contract or temporary employees, or the like.

10.     Notice of this Agreement and application for the Approval Order shall be given to: (a) all creditors, equity holders, and other parties in interest in the USA Capital Bankruptcy Case listed on the master mailing list associated with such case; (b) all existing and prospective defendants to any suits brought or to be brought by the USACM Trust and/or DTDF; and (c) all Direct Lenders (as defined in the Plan).

11.     Any notice in connection with this Agreement to each of the Parties shall be given, by facsimile and by certified mail, to the following individuals:

For the USACM Trust:

Geoffrey L. Berman, Trustee
c/o DEVELOPMENT SPECIALISTS, INC.
333 South Grand Avenue, Suite 4070
Los Angeles, California  90071-1544
Telephone: (213) 617-2717
Facsimile: (213) 617-2718

William T. Reid, IV, Esq.
DIAMOND MCCARTHY LLP
6504 Bridge Point Parkway, Suite 400
Austin, Texas  78730
Telephone:  (512) 617-5200
Facsimile:  (512) 617-5299

For DTDF:

Michael Tucker
c/o FTI CONSULTING
Two North Central Avenue, Suite 1200
Phoenix, Arizona  85004-2322
Telephone: (602) 744-7100
Facsimile: (602) 744-7110

Jeffery D. Hermann, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California  90017-5855
Telephone: (213) 612-2413
Facsimile: (213) 612-2499

For BMER:

Gary P. Sinkeldam
MAXIE RHEINHEIMER STEPHENS & VREVICH, LLP
618 South Seventh Street
Las Vegas, Nevada  89109
Telephone:  (702) 866-0089
Facsimile:  (702) 866-0093
Thomas W. Davis, II
HOWARD & HOWARD
3800 Howard Hughes Parkway, Suite 1400
Las Vegas, Nevada  89169
Telephone:  (702) 257-1483
Facsimile:  (702) 567-1568

Garth McBride
REEVES EVANS McBRIDE & ZHANG, LLP
2285 Renaissance Dr.
Las Vegas, Nevada 89119

Telephone:  (702) 597-0010
Facsimile:  (702) 597-2767

12.     The Parties agree to engage in good faith efforts to:  (a) seek entry of the Approval Order; (b) seek in the Approval Order a provision that specifically bars the assertion of any claims for contribution or indemnity against BMER by any non-settling defendants in connection with other claims asserted by the Settling Debtors; and (c) support this Agreement in all material ways including in its application and enforcement against any and all persons or entities seeking to prohibit approval of this Agreement or entry of the Approval Order.

13.     This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of any and all claims, disputes and causes of action among them.  By this settlement, no Party admits liability to any other Party in any respect, or makes any admission as to factual or legal contentions relating to the matters released herein.  The sole purpose of this Agreement is to avoid the hazards, uncertainties, and expenses of further litigation.

14.     All Parties have reviewed and revised, or had the opportunity to revise, this Agreement.  The Parties agree that any uncertainty or ambiguity will not be interpreted or construed against any Party under any rule of interpretation providing for interpretation against the Party who caused an uncertainty to exist or against the draftsman, and the Agreement shall be construed as if all Parties prepared it jointly.  This Agreement provides no rights to any third party except to the extent expressly set forth herein (if any).

15.     The Parties warrant and represent that they are the sole owners of the rights and claims each of them relinquish by this Agreement and, prior to entering into this Agreement, have not sold, transferred, or assigned any rights or obligations under  this Agreement or any insurance policy used or relied upon to fund the Settlement Payment.

16.     This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein.  No supplement, modification, amendment, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.  This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause or extent of injuries, or legal liability therefore, or any other representations of any type or nature except as set forth herein.  No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement.  THE PARTIES ALSO ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE USACM TRUST AND DTDF CLAIMS AND UNDERLYING DISPUTES AND STIPULATE THAT IN EXECUTING THIS AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION BY ANY OTHER PARTY OR ITS/HIS AGENTS, REPRESENTATIVES OR ATTORNEYS, WITH REGARD TO (1) FACTS UNDERLYING THE LAWSUIT, (2) THE SUBJECT MATTER OR EFFECT OF THIS AGREEMENT, AND (3) ANY OTHER FACTS OR ISSUES WHICH

MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS AGREEMENT, OTHER THAN AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

       17.    If any term or provision of this Agreement shall be determined to be unenforceable or invalid or illegal in any respect, the unenforceability, invalidity or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid or illegal term or provision had never been contained herein.

       18.    This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement.  The signatories executing this Agreement represent and warrant that they are authorized to execute this Agreement on behalf of the Parties and entities for whom they sign.  Signatures obtained by facsimile or email in PDF format shall be deemed to be an original signature.

       19.    Each Party agrees to bear its own fees and costs with respect to any duties required of the Party under this Agreement; in any matter involving, referring, or relating to the interpretation and enforcement of this Agreement; and in connection with any disputes between the Parties that may arise out of this Agreement.

       20.    This Agreement is to be governed by the law of the State of Nevada.  The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Bankruptcy Court for these purposes.

       21.    This Agreement is subject to approval by the Bankruptcy Court.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the last date written below on which a signatory sings the Agreement.

DATED: September __//__, 2008

USACM LIQUIDATING TRUST on behalf of itself and as the duly authorized successor-in-interest to USACM and to certain claims of FTDF

By: _Geoffrey L. Berman_
Geoffrey L. Berman
Trustee of the USACM Liquidating Trust

DATED: September __11__, 2008

_Geoffrey L. Berman_
GEOFFREY L. BERMAN, solely in his capacity as Trustee of the USACM Liquidating Trust

DATED: September ___, 2008

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC on behalf of itself and as the duly authorized successor-in-interest to certain claims of FTDF

By:_____
Michael Tucker
Manager of USA Capital Diversified Trust Deed Fund, LLC

DATED: September ___, 2008

_____
MICHAEL TUCKER, solely in his capacity as Manager of USA Capital Diversified Trust Deed Fund, LLC

DATED:  September ___, 2008          BEADLE, MCBRIDE, EVANS & REEVES,
                                     LLP


                                     By:_____


DATED:  September ___, 2008          REEVES, EVANS, MCBRIDE & ZHANG,
                                     LLP


                                     By:_____


DATED:  September ___, 2008          TG MCBRIDE CPA LTD.

                                     By:_____



DATED:  September ___, 2008          _____
                                     T. GARTH MCBRIDE