E-filed on 10/20/08

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email:  adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email:  emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | **APPLICATION TO COMPROMISE AND SETTLE CONTROVERSIES WITH PIERCY, BOWLER, TAYLOR & KERN, PC** |
| Affects:<br>☒All Debtors<br>☐USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

## APPLICATION TO COMPROMISE AND SETTLE CONTROVERSIES WITH PIERCY, BOWLER, TAYLOR & KERN, PC

Geoffrey Berman ("Berman" or the "Trustee"), Trustee of the USACM Liquidating Trust (the "USACM Trust") and Michael Tucker ("Tucker" or the "Manager"), Manager of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF") hereby file this *Application to Compromise and Settle Controversies with Piercy, Bowler, Taylor & Kern PC* (the "Motion")

and move this Honorable Court for: (a) an order pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") approving the *Settlement Agreement, Mutual Release, and Covenants* (the "Settlement Agreement") between the Trustee, DTDF, and Piercy, Bowler, Taylor & Kern, PC ("PBTK") (collectively, the "Parties"), the former auditor of USA Commercial Mortgage Company ("USACM"); and (b) an order pursuant to Nevada Revised Statute § 17.225, et seq. barring claims against PBTK for indemnity and/or contribution. A proposed form of order is attached hereto as Exhibit "A." Proposed findings of fact and conclusions of law are attached as Exhibit "B."

This Motion is made pursuant to Rule 9019 and Nevada Revised Statutes §17.225, et seq. and is based upon the points and authorities listed herein, the Declaration of Geoffrey Berman in Support of the Motion to Approve Settlement filed in support of this Motion (the "Berman Declaration," hereto attached as Exhibit "C"), the Declaration of Michael Tucker in Support of the Motion to Approve Settlement filed in support of this Motion (the "Tucker Declaration," hereto attached as Exhibit "D"), and any evidence and argument to be presented at the time of the hearing of the Motion.

## POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

1. On April 13, 2006 (the "Petition Date"), USACM, DTDF, USA Capital First Trust Deed Fund, LLC ("FTDF"), USA Securities, LLC, and USA Capital Realty Advisors, LLC (collectively, the "USA Capital Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") which are jointly administered as Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case").

2.      On November 15, 2006, the USA Capital Debtors filed their First Amended Disclosure Statement [Docket #1798] (the "Disclosure Statement") for the USA Capital Debtors' Third Amended Joint Plan of Reorganization [Docket # 1799] (the "Plan"), which was confirmed by the Bankruptcy Court by Order dated January 8, 2007 [Docket #2376] (the "Confirmation Order") and the Findings of Fact and Conclusions of Law in Support of the "Order Confirming the Debtors' Third Amended Joint Plan of Reorganization, As Modified Herein" [Docket #2377] dated January 8, 2007.  The Plan became effective on March 12, 2007.  On December 8, 2006, the USACM Committee filed its Plan Documents Supplement and Disclosures [Docket # 2002] (the "USACM Disclosure Supplement".)  Also on December 8, 2006, the DTDF Committee filed its Plan Documents Supplement and Notice of Disclosures [Docket #2001] (the "DTDF Disclosure Supplement").

3.      The USACM Trust was created pursuant to the Plan and is governed by the provisions of the Liquidating Trust Agreement (the "USACM Trust Agreement") as described in the USACM Disclosure Supplement.  Berman serves as the trustee of the USACM Trust ("USACM Trustee").  The Plan retained USACM's causes of action [Plan ¶ IV. D. 1] along with certain of FTDF's causes of action [Plan ¶ IV. D. 1], for enforcement by the USACM Trust. Pursuant to the USACM Trust Agreement [USACM Trust Agreement ¶¶ 2.1. (a) and recital E], USACM Trust's beneficiaries include the holders of all allowed general unsecured creditor claims against USACM as defined in Plan ¶ II. C. 1. d.

4.      USACM Trust was vested, pursuant to the Plan, with all USACM Litigation Claims as defined in Plan ¶¶ I. A. 95 and IV. D. 1.  Additionally, USACM Trust was vested, pursuant to the Plan, with all assignable FTDF Litigation Claims as defined in Plan ¶¶ I. A. 95, IV. D. 1, and IV. E. 2. j.  FTDF was dissolved on January 16, 2008, as required by Plan ¶ IV. A.

6. As such, the Trustee has the right to pursue, compromise, settle, release, or otherwise dispose of all USACM Litigation Claims belonging to the USACM Trust and estate retained for enforcement on behalf of the USACM Trust's beneficiaries, including claims and causes of action against PBTK.

5. The Plan also expressly retained DTDF's causes of action [Plan ¶ IV. D. 2] for enforcement by post-effective date DTDF, including the Litigation Claims as defined in Plan ¶¶ I. A. 95 and IV. D. 2. Pursuant to the Plan and the Confirmation Order, Tucker serves as manager of DTDF (the "DTDF Manager"). Pursuant to DTDF's Amended and Restated Operating Agreement (the "DTDF Operating Agreement") included in the DTDF Disclosure Supplement, DTDF's members are the beneficiaries any DTDF distributions [DTDF Operating Agreement ¶ 7.03]. DTDF Operating Agreement ¶ 1.21 defines DTDF's members as the holders of all allowed DTDF equity interests described in Plan ¶ II. C. 3. e. As such, the DTDF Manager has the right to pursue, compromise, settle, release, or otherwise dispose of all Litigation Claims belonging to DTDF retained for enforcement, including claims and causes of action against PBTK.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as Section ¶ VIII. D. 21 of the Plan. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2). Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409. The relief sought herein is authorized pursuant to Rule 9019.

## II.    BACKGROUND

### A.    **USACM and DTDF**

7. USACM was formed in 1989 as mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans by direct lenders to

commercial real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to direct lenders. USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees. Between 1997 and 2006, USACM originated and serviced more than $2.6 billion in loans to real estate developers. At the time of its bankruptcy filing in April 2006, $960 million of these loans remained outstanding.

8.      DTDF was a real estate investment fund founded in 2000. DTDF offered membership interests to Nevada investors (the "Investors"), many of whom were also USACM direct lenders, and used these funds to purchase interests in loans originated and serviced by USACM.  DTDF earned interest as a direct lender and distributed its profits to its Investors on a periodic basis.

9.      During their tenure, certain insiders turned USACM's loan servicing operations into a massive fraudulent investment scheme, by misallocating and/or commingling available funds within the "USA Capital" group of companies.  The insiders also looted and otherwise misused DTDF funds to perpetuate their scheme. DTDF funds were used to make impermissible loans to entities owned or controlled by the Culpable Insiders and to fund interest and principal payments to other direct lenders in non-performing loans.  The culpable insiders' wrongful acts were designed to allow the systematic looting of USACM, DTDF, and other related entities.

10.     On April 13, 2006, USACM and a number of its related companies, including DTDF, collapsed under the weight of this massive fraud perpetrated on them by the culpable insiders.

**B.      PBTK**

11.     PBTK is a professional corporation organized under Nevada law.  PBTK audited

USACM's financial statements for fiscal years ending December 31, 2002 through December 31, 2004, and was in the process of conducting the audit for fiscal year 2005 at the time that USACM filed for bankruptcy protection.  For the fiscal years 2002 through 2004, PBTK issued unqualified audit opinions on USACM's financial statements.  PBTK did not provide audit or other accounting services to DTDF or any other entity related to USACM.

**C.**    **The Investigation and Ensuing Settlement Discussions**

12.    Subsequent to the Petition Date, the USACM Trust and DTDF performed an extensive investigation of their claims surrounding and related to their bankruptcies.  Berman Declaration ¶3; Tucker Declaration ¶3.  As a result of this investigation, the Trustee and the Manager contacted PBTK in December 2007 regarding a potential lawsuit and PBTK's willingness to enter into pre-litigation settlement discussions.  Berman Declaration ¶4; Tucker Declaration ¶4.  The Trustee and the Manager informed PBTK that they were preparing to file suit against PBTK for, inter alia, accounting malpractice/professional negligence and breach of contract.  Berman Declaration ¶4; Tucker Declaration ¶4.

13.    Initially in February 2008, and again in April 2008, the USACM Trust, DTDF, PBTK, and the insurance carriers for PBTK participated in an informal settlement conference.  Berman Declaration ¶4; Tucker Declaration ¶4.  Since the conference, the parties have continued informal settlement discussions in order to resolve the USACM Trust and DTDF's claims against PBTK.  Berman Declaration ¶4; Tucker Declaration ¶4.  As a result of these extensive discussions, meetings, and subsequent arms-length settlement negotiations, the parties reached a mutually acceptable agreement for the complete resolution of any and all claims against PBTK in July 2008.  Berman Declaration ¶4; Tucker Declaration ¶4.  The parties have memorialized this settlement by executing the confidential Settlement Agreement.  Berman Declaration ¶4; Tucker

Declaration ¶4.  The Trustee and the Manager file this Application seeking the Court's approval of the USACM Trust and DTDF's entry into and execution of the Settlement Agreement.

### III.    TERMS OF SETTLEMENT

14.    With a view toward maximizing the recoverable value of the USACM Trust and DTDF's claims, in furtherance of broader efforts to facilitate the estates' distribution of funds, and to otherwise avoid the time, expense, and uncertainty of further litigation, the USACM Trust and DTDF—subject to this Court's approval under Rule 9019—have entered into the confidential Settlement Agreement with PBTK.  The Settlement Agreement is subject to confidentiality provisions by the terms of which the Settlement Agreement itself may not be filed as part of this Motion, absent a court order sealing it, but the parties invite the court to review the Settlement agreement via in camera inspection.  The essential terms of the comprehensive settlement are as follows:

    a.  The insurance carriers for PBTK shall pay a confidential settlement amount (the "Settlement Amount") to the USACM Trust to settle all claims available to the USACM Trust and DTDF against PBTK;

    b.  Consistent with the agreement between the Debtors, DTDF will share in the settlement as a beneficiary of the USACM Trust and as otherwise outlined in the agreement between the USACM Trust and DTDF dated and filed with the Court on March 13, 2008;

    c.  Payment of the Settlement Amount is contingent upon the Court's approval of the Settlement Agreement under Rule 9019 and entry of a Bar Order under Nevada Revised Statutes § 17.225, et seq.; and

d.  Effective upon payment of the Settlement Amount, the Parties will exchange full mutual releases.

## IV.    ARGUMENT

### A.    The 9019 Order

#### 1.    The Standard for Approval of Settlement Agreements

15.    Compromise and settlement have long been an inherent component of the bankruptcy process.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1958) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  Rule 9019 provides:

> (a) COMPROMISE.  On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the Court may direct.

Compromises are favored in bankruptcy and public policy favors compromise because litigation "can occupy a court's docket for years on end, depleting resources of the parties and the taxpayers while rendering meaningful relief elusive." *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001) (quoting *Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996).  The decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sole discretion. *See In re Stein*, 236 B.R. 34, 37 (Bankr. D. Or. 1999).  The Trustee and DTDF ask the Court to exercise its authority and discretion and, based upon the standards for the approval of compromises under Rule 9019, approve the Settlement Agreement.

16.    The Court, in order to approve a compromise and settlement, must find that it is fair and equitable. *In re Arden*, 176 F.3d 1226, 1228 (9th Cir. 1999); In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986).  "In determining the fairness, reasonableness and adequacy of a

proposed settlement agreement, the court must consider: (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." In re A&C Properties, 784 F.2d at 1381. The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. See In re Pac. Gas and Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

17.    In conducting such an analysis, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994)(quoting In re Energy Coop, Inc., 886 F.2d 921, 927 (7th Cir. 1989)). In In re Lion Capital Group, the court, interpreting the identical factors utilized in the Ninth Circuit, concluded that "the court is not finally to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

### 2.    *The Settlement Agreement is Fair and Equitable*

18.    The Trustee, the Manager, and Special Counsel have analyzed the claims against PBTK and have found that Settlement Agreement is reasonable and equitable in light of all of the relevant factors. Berman Declaration ¶ 5; Tucker Declaration ¶ 5. The Trustee and the Manager believe that the Settlement Agreement is in the best interest of DTDF, the USACM Trust, and their beneficiaries.  Berman Declaration ¶ 5; Tucker Declaration ¶ 5.

a.    Probability of Success in the Litigation

19.    Considering the uncertainty and contingency involved in potential litigation against PBTK, the Settlement Agreement properly considers the probability of success for the USACM Trust and DTDF in litigation.

20.    There is no guarantee that the USACM Trust and DTDF would succeed if the parties litigated the dispute that is the subject of the Settlement Agreement.  The Trustee and the Manager believe that PBTK failed to appropriately audit the financial statements of USACM, thereby allowing certain insiders to perpetrate a financial fraud on USACM, DTDF, and other related entities that resulted in tens of millions of dollars in damages to the Debtors.  Berman Declaration ¶ 3; Tucker Declaration ¶ 3.  The Trustee and the Manager believe that: (1) PBTK shares substantial responsibility for the Debtors' losses; (2) the claims they can assert against PBTK have substantial merit and are supported by the evidence; and (3) litigation would lead to a favorable result.  Berman Declaration ¶ 7; Tucker Declaration ¶ 7.  However, PBTK has consistently and vigorously denied all claims against it and has asserted numerous factual and legal defenses Berman Declaration ¶ 7; Tucker Declaration ¶7.  PBTK has maintained that it fulfilled all of its contractual and professional obligations with respect to its audits.  Berman Declaration ¶ 7; Tucker Declaration ¶ 7.

21.    Should this matter proceed to litigation, there is no doubt that it would be expensive to litigate as all parties appear intent on vigorously backing their allegations.  Furthermore, there is no guarantee or certainty that the USACM Trust and/or DTDF would be successful in prosecuting their claims.  Therefore, the Trustee and the Manager have concluded that accepting payment under the Settlement Agreement is fair, reasonable, and in the interest of the USACM Trust and DTDF after weighing all relevant and material factors, including the

strengths of the asserted claims and defenses.  Berman Declaration ¶¶ 5&8; Tucker Declaration ¶¶ 5&8.

b.    <u>The Difficulties to Be Encountered in the Matter of Collection</u>

22.    Even if the USACM Trust and DTDF were to prevail in litigation, they could thereafter face a number of issues arising from collection of any judgment.  The Trustee and the Manager are not convinced that PBTK has the ability, through insurance or other means, to pay any judgment the USACM Trust or DTDF may obtain in excess of the Settlement Amount. Berman Declaration, ¶ 11; Tucker Declaration ¶ 11.

23.    The USACM Trust and DTDF could conceivably face collection problems in their claims against PBTK.  If they were to prevail in litigation, the USACM Trust and DTDF could not be certain that PBTK would be able to pay a large judgment in favor of the debtors. Berman Declaration ¶ 11; Tucker Declaration ¶ 11.  As such, the Debtors must look to PBTK's insurance policy to fund any judgment against PBTK.  The Settlement Amount is significant compared to the total amount of insurance available to PBTK, and nearly exhausts PBTK's insurance coverage.  Berman Declaration ¶ 11; Tucker Declaration ¶ 11.  In connection with settlement negotiations, PBTK's insurance carriers have strongly asserted to the Trustee and the Manager that there are meritorious coverage defenses under the relevant insurance policies that would make some or all of such insurance policy proceeds unavailable to pay any judgment the Trustee may recover against PBTK.  Berman Declaration, ¶ 11; Tucker Declaration ¶ 11.

24.    Finally, the real potential for an appeal of any litigated resolution of the disputes between the USAM Trust, DTDF, and PBTK would make recovery difficult and protracted.

c.    The Complexity of the Litigation Involved and the Expense, Inconvenience, and Delay Necessarily Attending It.

25.    There is no doubt that any adversary proceeding against PBTK would be a complex and costly piece of litigation.  Litigation against PBTK will involve large discovery costs associated with millions of pages of document discovery, numerous depositions that could take days to complete, the retention of several expert witnesses at a high cost, and will involve multiple parties.  Berman Declaration ¶ 12; Tucker Declaration ¶ 12.  Each party will necessarily have to locate and present evidence to support or deny factual allegations, at great expense and delay to the Parties.  This case would be complex, expensive, and like any other litigation, the outcome is inherently uncertain.

26.    Actual litigation of the disputes resolved by the Settlement Agreement will naturally result in considerable expense to both the USACM Trust and DTDF.  The Settlement Agreement permits the Parties to resolve this dispute and potential future litigation in a practical and timely manner with a predictable result that is not obtainable through litigation.

d.    The Paramount Interest of the Creditors

27.    The paramount interest of the creditor requires the Court to consider  whether a compromise generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time."  In re Marples, 266 B.R. 202, 207 (Bankr. D. Idaho 2001).  The Trustee and the Manager have thoroughly examined the Settlement Agreement, and believe it is in the best interest of the creditors.

28.     The Settlement Amount is substantial and would be a material contribution to both the USACM Trust and DTDF's estates in light of the fact that it was reached prior to filing suit and given the complexity, expense, and the risks and uncertainty of litigation. Berman Declaration ¶ 13; Tucker Declaration ¶ 13. The possibility of achieving a better outcome through litigation is greatly outweighed by the risk that there will be no meaningful recovery by the USACM Trust and DTDF. The terms of the Settlement Agreement fall within the reasonable range of likely outcomes of litigation with PBTK while eliminating litigation risks, costs, and delay associated with trial and a potential appeal, and provides an immediate and substantial recovery to DTDF, the USACM Trust, and their beneficiaries. Berman Declaration ¶ 13; Tucker Declaration ¶ 13.

29.     The Settlement Agreement will facilitate prompt and meaningful recoveries for the benefit of the creditors who have suffered loss as a result of the events leading to the Debtors bankruptcy. Berman Declaration ¶ 13; Tucker Declaration ¶ 13. Even if the USACM Trust and DTDF's prosecution of an adversary proceeding were successful, creditors would face a long wait for a recovery from the case. Any judgment would likely face protracted appeals and collection delays, particularly when considering the complexity of this case. Furthermore, settling these claims prior to filing suit achieves a meaningful recovery for creditors without expending considerable resources, as would be inevitable if the issues were litigated. Berman Declaration ¶¶ 11&13; Tucker Declaration ¶¶ 11&13.

30.     The payment to the USACM Trust and DTDF's distributive share of the Settlement Amount to be paid to the USACM Trust, coupled with other benefits (e.g., avoidance of all further litigation related costs incurred by DTDF and the USACM Trust), fall well above the low-point in the range of reasonableness necessary to support this Application.

Consequently, the USACM Trust and DTDF's agreement with PBTK meets the standards required by applicable bankruptcy law.  The factors discussed above heavily weigh in favor of the settlement's approval as compromises, of course, are favored in bankruptcy. In re A&C Props., 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986); 9 Collier on Bankruptcy ¶ 9019.03[l] (15th Ed. 1990).

31.    After extensive arms-length negotiations, and weighing all relevant and material factors, including the Settlement Amount, the strengths of the asserted claims and defenses, the costs and burdens of litigation, expert witness costs, the effect on the Trustee's litigation against other parties, the insurance policy limits and funds available to PBTK, and the general uncertainty and risk of litigation, the Trustee and the Manager believe the Settlement Agreement with PBTK is in the best interests of DTDF, the USACM Trust, and their beneficiaries.

**b.    <u>The Bar Order</u>**

32.    By its terms, the Settlement Agreement is condition on the Bankruptcy Court's entry of the Bar Order.  The proposed Bar Order removes a serious obstacle to achieving a meaningful settlement.  It addresses the concern of PBTK that it may later be faced with claims for indemnity, contribution, or other claims arising from the facts underlying this action. Through an order entered under Nevada Revised Statutes §17.225, et seq., a settling party can extinguish liability and avoid future litigation, thus providing an incentive for settlement.

33.    This Court has authority to enter the Bar Order pursuant to Nevada Revised Statutes §17.225, et seq. when the settlement is made in "good faith."  See, e.g., Carpenter v. U.S., 710 F. Supp. 747, 752-53 (D. Nev. 1988); *Velsicol Chemical Corp. v. Davidson*, 811 P.2d 561 (Nev. 1991).  The legislative purpose of this statute is to foster and encourage settlements. "The language of NRS 17.245 indicates an intent to allow plaintiffs to settle with one tortfeasor

1   without losing the right to proceed against the rest, while at the same time preventing double

2   recovery to the plaintiff." *Gen. Motors Corp. v. Reagle*, 714 P.2d 176, 177 (Nev. 1986).

3       34.    The determination of good faith does not require the court to consider any specific

4   factors, but rather "should be left to the discretion of the trial court based upon all relevant facts

5   available." Velsicol, 811 P.2d at 561 & 563; The Doctors Co. v. Vincent, 98 P.3d 681, 686-87

6   (Nev. 2004). However, the court may consider factors such as "the amount paid in settlement,

7   the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling

8   defendants, the financial condition of settling defendants, and the existence of collusion, fraud or

9   tortious conduct aimed to injure the interests of non-settling defendants." The Doctors Co., 98

10   P.3d at 686. As amply demonstrated in the Berman Declaration and the Tucker Declaration, and

11   the discussion of the Settlement Agreement set out in the previous sections of this Motion, the

12   settlement is made in good faith.

13       35.    All of the factors considered by the Nevada Supreme Court in The Doctors Co. v.

14   Vincent weigh in favor of a finding of good faith. The Settlement Amount is substantial to both

15   of the estates, and avoids costs associated with continued litigation. Berman Declaration ¶ 13;

16   Tucker Declaration ¶ 13. The USACM Trust and DTDF will share in this settlement in

17   accordance with a previously set out agreement that was approved by this Court. Tucker

18   Declaration ¶ 9. PBTK's insurance policy limits are largely exhausted by this settlement, and the

19   USACM Trust and DTDF are not certain that PBTK is capable of funding a judgment that is far

20   in excess of such limits. Berman Declaration ¶ 11; Tucker Declaration ¶ 11. Finally, this

21   settlement was entered into based on arms-length negotiations, by independent parties, resulting

22   in a fair settlement that was not aimed to injure the interests of any non-settling defendants.

23   Berman Declaration ¶¶ 4&13; Tucker Declaration ¶¶ 4&13

**Application to Settle Controversies**                          **Page 15 of 17**
**with PBTK Under Rule 9019**

36.     In the absence of the granting of the requested Bar Order relief and approval of the Settlement Agreement, it is submitted that there would be an adverse impact on the administration of this bankruptcy estate.

**c.    Notice**

37.     Notice of this Motion has been provided to all of the above-titled estates, and to USACM Trust and DTDF's creditors.  To date, no creditor of the above-titled Debtors has filed suit against PBTK.  Additionally, no party as asserted a claim for indemnification or contribution against PBTK.    However, the USACM Trust and DTDF have commenced litigation against persons or entities that may have such claims.  Those persons and entities have also been provided with notice of this Motion.

## CONCLUSION

For the foregoing reasons, the Creditor Trustee respectfully requests that this Honorable Court approve the Settlement Agreement on the terms set forth above, enter the Bar Order pursuant to Nevada Revised Statutes §17.225, et seq., and provide such other and further relief as the Court deems appropriate.

DATED this 20th day of October, 2008.

*{Remainder of Page Intentionally Left Blank}*

**Application to Settle Controversies**                          **Page 16 of 17**
**with PBTK Under Rule 9019**

Respectfully Submitted,

| **DIAMOND MCCARTHY LLP** | **DIAMOND MCCARTHY LLP** |
|---|---|
| By:   */s/ Allan B. Diamond*<br>Allan B. Diamond, TX 05801800 (pro hac vice)<br>J. Maxwell Beatty, TX 24051740 (pro hac vice)<br>909 Fannin, Suite 1500<br>Houston, Texas 77010<br>(713) 333-5100 (telephone)<br>(713) 333-5199 (facsimile)<br><br>*Special Litigation Counsel for USACM Liquidating Trust* | By:    */s/ Eric D. Madden*<br>William T. Reid, IV, TX 00788817 (pro hac vice)<br>Eric D. Madden, TX 24013079 (pro hac vice)<br>P. Jason Collins, TX 24040711 (pro hac vice pending)<br>6504 Bridge Point Parkway<br>Suite 400<br>Austin, Texas 78730<br>(512) 617-5200 (telephone)<br>(512) 617-5299 (facsimile)<br><br>*Special Litigation Counsel for USACM Liquidating Trust* |
| **LEWIS AND ROCA LLP**<br><br>By:   */s/ Rob Charles*<br>Susan M. Freeman, AZ 4199 (pro hac vice)<br>Rob Charles, NV 6593<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, Nevada  89169-5996<br>(702) 949-8321 (telephone)<br>(702) 949-8320 (facsimile)<br><br>*Counsel for USACM Liquidating Trust* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 20, 2008, a copy of the foregoing Motion was served either electronically or via first class mail: (a) all creditors, equity holders, and other parties in interest in the USA Capital Bankruptcy Case listed on the master mailing list associated with the case; (b) all existing and prospective defendants to any suits brought or to be brought by the USACM Trust and/or DTDF; and (c) all Direct Lenders (as defined in the Plan).

        /s/ *William T. Reid, IV*
                William T. Reid, IV

# EXHIBIT A

1

2

3

4

5
## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

6

7   In re:                                          Case Nos.
    USA COMMERCIAL MORTGAGE COMPANY,               BK-S-06-10725 LBR
                                    Debtor.        BK-S-06-10726 LBR
8   In re:                                          BK-S-06-10727 LBR
    USA CAPITAL REALTY ADVISORS, LLC,              BK-S-06-10728 LBR
                                    Debtor.        BK-S-06-10729 LBR
9   In re:
    USA CAPITAL DIVERSIFIED TRUST DEED FUND,
10  LLC,                                           JOINTLY ADMINISTERED
                                    Debtor.        Chapter 11 Cases
11  In re:
    USA CAPITAL FIRST TRUST DEED FUND, LLC,
12                                  Debtor.        Judge Linda B. Riegle
    In re:
    USA SECURITIES, LLC,
13                                  Debtor.        **ORDER APPROVING SETTLEMENT WITH**
    Affects:                                       **PIERCY, BOWLER, TAYLOR & KERN, PC**
14      ☒  All Debtors                             **AND ORDER BARRING CERTAIN CLAIMS**
        ☐  USA Commercial Mortgage Company         **UNDER NEVADA REVISED STATUTE**
15      ☐  USA Capital Realty Advisors, LLC        **§17.225, et seq.**
        ☐  USA Capital Diversified Trust Deed Fund, LLC
        ☐  USA Capital First Trust Deed Fund, LLC
16      ☐  USA Securities, LLC

17

18          This matter came on for hearing on November 18, 2008 on the motion of Geoffrey

19  Berman ("Berman" or the "Trustee"), Trustee of the USACM Liquidating Trust (the "USACM

20  Trust") and Michael Tucker ("Tucker" or the "Manager"), Manager of the USA Capital

21  Diversified Trust Deed Fund, LLC ("DTDF") (collectively, the "Debtors") for an Order

22  Approving Settlement and for an Order pursuant to Nevada Revised Statute §17.225, et seq.

23

barring claims against Piercy, Bowler, Taylor & Kern, PC ("PBTK") for indemnity and/or contribution.

Pursuant to the Debtors' motion, and as set forth in the separate Findings of Fact and Conclusions of Law entered pursuant to Bankruptcy Rules of Procedure 9014 and 7052, and Federal Rule of Civil Procedure 52, this Court make the following order:

1.    The Settlement Agreement dated July 28, 2008 between the above Debtors and PBTK is approved.

2.    Pursuant to Nevada Revised Statute §17.245, all persons who have received notice of the *Application to Compromise and Settle Controversies with Piercy, Bowler, Taylor & Kern PC* and who allegedly are jointly and severally liable with PBTK as joint tortfeasors for injuries or potential injuries described in the Settlement Agreement, Mutual Release, and Covenants (the "Settlement Agreement") between the USACM Trust, DTDF, and PBTK are barred from asserting any claims for contribution or indemnity against PBTK.

3.    This Court shall retain jurisdiction to interpret and enforce the terms of the Settlement Agreement and this Order Approving the Settlement Agreement.

# # #

EXHIBIT B

1

2

3

4

5
**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

6

7   In re:
USA COMMERCIAL MORTGAGE COMPANY,
                                    Debtor.          Case Nos.

8   In re:                                           BK-S-06-10725 LBR
USA CAPITAL REALTY ADVISORS, LLC,                    BK-S-06-10726 LBR
                                    Debtor.          BK-S-06-10727 LBR

9   In re:                                           BK-S-06-10728 LBR
USA CAPITAL DIVERSIFIED TRUST DEED FUND,             BK-S-06-10729 LBR
10  LLC,
                                    Debtor.

11  In re:                                           JOINTLY ADMINISTERED
USA CAPITAL FIRST TRUST DEED FUND, LLC,              Chapter 11 Cases
                                    Debtor.

12  In re:
USA SECURITIES, LLC,

13                                  Debtor.           Judge Linda B. Riegle

Affects:
14  ☒ All Debtors
    ☐ USA Commercial Mortgage Company                **FINDINGS OF FACT AND CONCLUSIONS OF**
15  ☐ USA Capital Realty Advisors, LLC                **LAW IN SUPPORT OF ORDER APPROVING**
    ☐ USA Capital Diversified Trust Deed Fund, LLC    **SETTLEMENT WITH PIERCY, BOWLER,**
    ☐ USA Capital First Trust Deed Fund, LLC          **TAYLOR & KERN, PC AND ORDER**
16  ☐ USA Securities, LLC                             **BARRING CERTAIN CLAIMS UNDER**
                                                      **NEVADA REVISED STATUTE §17.225, et seq.**

17

18          This Court, having considered the *Application to Compromise and Settle Controversies with*

19  *Piercy, Bowler, Taylor & Kern PC* (the "Motion"), the Settlement Agreement, Mutual Release, and

20  Covenants (the "Settlement Agreement"), the Declarations of Geoffrey L. Berman and Michael

21  Tucker in support thereof and the arguments of counsel made at the hearing on the Motion to

22  Compromise held November 18, 2008; and

23

**FINDINGS OF FACT & CONCLUSIONS OF LAW IN SUPPORT OF ORDER**        **1 of 4**
**APPROVING SETTLEMENT AND ORDER BARRING CERTAIN CLAIMS**

**EXHIBIT B**

This Court having considered the Pleading in Support of the Motion and the arguments of counsel, now therefore makes the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 and Federal Rules of Bankruptcy Procedure 7052 and 9012.

1.     Notice of the Motion ("Notice") was properly served on all creditors of the above-titled estates and all persons who may have claims for indemnification or contribution.

2.     The claims being settled are assets of the USACM Liquidating Trust (the "USACM Trust"). Geoffrey L. Berman (the "Trustee") currently serves as a trustee of the USACM Trust.

3.     The claims being compromised also belong to USA Capital Diversified Trust Deed Fund, LLC ("DTDF").  Michael Tucker (the "Manager") is the manager of DTDF.

4.     The beneficiaries of USACM Trust and DTDF are the creditors of USA Commercial Mortgage Company ("USACM") and the interest holders in DTDF.

5.     The claims being compromised herein arise from professional services rendered by PBTK to USACM.

6.     The USACM Trust and DTDF have investigated the merits of the claims against PBTK and have conducted such investigation as they deemed reasonable into the merits of the claim.  In addition, the USACM Trust and DTDF have inquired into the complexity of proving the potential claims, the expense of prosecuting such claims, the duration of litigation or other means for prosecuting the claims, and have evaluated the difficulties of collection and the assets available for satisfying any potential judgment.

7.     Based upon this evaluation, the Trustee and the Manager have recommended this compromise as fair and equitable.

8.     The compromise is fair and equitable to the USACM Trust and its beneficiaries.

9.      The compromise is fair and equitable to DTDF and its interest holders.

10.      At the present time, no claims for indemnification or contribution have been asserted, although USACM and DTDF have commenced litigation against persons and entities that may have such claims.

11.      At the present time, no claims have been asserted by creditors of any of the above-titled estates against PBTK.

12.      No USACM Trust beneficiary or DTDF interest holder has objected to this compromise and the entry of a Bar Order under Nevada Revised Statute 17.225 et seq.

13.      USACM Trust and DTDF are contractually obligated under the Settlement Agreement to seek approval of this Bankruptcy Court for the compromise and to seek the entry of a Bar Order under Nevada Revised Statute 17.225 et seq.

14.      The amount being paid by PBTK pursuant to the Settlement Agreement is a material contribution to the USACM Trust and its beneficiaries and to DTDF and its interest holders.

## CONCLUSIONS OF LAW

1.      Notice has been given to all parties to the above-titled estates, including to persons and entities that might reasonably be anticipated to have claims for indemnification and/or contribution.

2.      USACM Trust and DTDF have standing to assert the claims being settled and have standing to bring the Motion.

3.      In light of the complexity of the potential claims, the expense of litigating these claims, the duration of such litigation and the difficulties of collection in the event the estates are

successful, the settlement with PBTK is fair and equitable and reasonable under the circumstances.

     4.    The entry of an order barring claims for indemnification and contribution under Nevada Revised Statute §17.225, et seq. is fair and equitable and reasonable under the circumstances of this case.

     5.    Having received notice of the prospective entry of this Court's Order of Compromise and Bar Order, any and all parties who have received such notice are hereby barred from asserting any claims against PBTK for indemnification and/or contribution under Nevada Revised Statute §17.225, et seq., or otherwise.

# # #

EXHIBIT C

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>        Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>        Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND,<br>LLC,<br><br>        Debtor. | Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>        Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>        Debtor. | **DECLARATION OF<br>GEOFFREY L. BERMAN IN<br>SUPPORT OF MOTION TO<br>APPROVE SETTLEMENT –<br>PBTK** |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

## DECLARATION OF GEOFFREY BERMAN IN SUPPORT OF MOTION TO APPROVE SETTLEMENT – PBTK

Geoffrey L. Berman, Trustee of the USACM Liquidating Trust (the "USACM Trust"),

hereby declares the following under penalty of perjury:

**DECLARATION OF GEOFFREY BERMAN**
**IN SUPPORT OF 9019 MOTION - PBTK**

**Page 1 of 7**

EXHIBIT C

1.    I am the Trustee of the USACM Trust created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF"), and USA Securities, LLC (collectively, the "Debtors") on November 15, 2006.  The plan was confirmed by order of this Court on January 8, 2007 and became effective on March 12, 2007.

2.    Pursuant to the Joint Plan, the USACM Trust was vested with all of USA Commercial Mortgage's ("USACM") litigation claims and all of FTDF's assignable litigation claims.  This Court retained jurisdiction in Section VIII. D of the Joint Plan over numerous matters, including "[h]earing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor Insider Litigation" and "[a]pproving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the plan."

3.    After I was appointed as the Trustee of the USACM Trust, I authorized an extensive investigation as to the factual circumstances that led to USACM's bankruptcy.  During the course of this investigation, I discovered facts that give rise to litigation claims against Piercy, Bowler, Taylor & Kern, PC ("PBTK").  I believe that PBTK failed to conduct its audits of USACM in accordance with contractual and professional standards.  This allowed certain insiders to perpetrate a financial fraud on USACM, DTDF, and other related entities, thereby leading to the loss of tens of millions of dollars.

4.    As a result of these findings, I instructed counsel to contact PBTK about pre-suit settlement discussions in December 2007.  PBTK was advised that counsel had been instructed

**DECLARATION OF GEOFFREY BERMAN**                    **Page 2 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

1    to and had in fact drafted a law suit against PBTK that included claims related to accounting

2    malpractice/professional negligence and breach of contract. The USACM Trust and PBTK

3    participated in informal settlement discussions initially in February 2008 and again in late April

4    2008 related to these claims. Those discussions did not immediately result in a resolution of the

5    USACM Trust's claims against PBTK. However, the USACM Trust and PBTK continued to

6    discuss settlement for the period following those meetings. After extensive discussions,

7    meetings, and arms-length settlement negotiations, I ultimately agreed to a tentative settlement

8    with PBTK in May 2008. This agreement was memorialized in the *Settlement Agreement,*

9    *Mutual Release, and Covenants* that was entered into by and between the USACM Trust, DTDF,

10    and PBTK (the "Settlement Agreement").

11        5.     I, along with Special Litigation Counsel, have analyzed the USACM Trust's

12    claims against PBTK and the Settlement Agreement. It is my considered judgment that the

13    Settlement Agreement with PBTK and the proposed settlement set forth therein are fair,

14    reasonable, and in the best interests of the USACM Trust and its beneficiaries for the reasons set

15    forth below. I have entered into the Settlement Agreement with PBTK in good faith after

16    weighing what I believe to be all relevant and material factors, including but not limited to the

17    amount of the proposed settlement; the strengths of the asserted claims and defenses; the costs

18    and burdens of litigation of the claims to judgment, including expert witness costs; the effect of

19    such litigation on the Trustee's litigation against other parties; the insurance policy limits and

20    insurance funds available to PBTK to pay the claims now and in the future and other potential

21    sources of payment by PBTK of the claims now and in the future; and the general uncertainty

22    involved in litigation of the claims.

23

**DECLARATION OF GEOFFREY BERMAN**          **Page 3 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

1

## PBTK CLAIMS

2      6.    The USACM Trust entered into a tolling agreement with PBTK for the purpose of

3  allowing the parties to continue discussions in an attempt to reach a compromise and settlement

4  on these claims outside of formal litigation. These claims are for, among other things,

5  accounting malpractice/professional negligence and breach of contract. The claims arise out of

6  accounting services provided in connection with the audit of USACM's financial statements for

7  the fiscal years ending in December 31, 2002 through December 31, 2005. For the years ending

8  December 31, 2002 through December 31, 2004, PBTK issued unqualified audit opinions on

9  USACM's financial statements. PBTK began audit work on the December 31, 2005 financial

10  statements, but was unable to complete its services because USACM filed for bankruptcy

11  protection during the pendency of the 2005 audit.

12      7.    I believe that the USACM Trust's claims against PBKT have substantial merit

13  and that PBTK bears substantial responsibility for USACM's losses. I have been advised that

14  counsel for PBTK has strongly denied the validity of any such claims and any potential liability

15  to the Trustee. In assessing the appropriate settlement in this matter, I have taken into account

16  PBTK's assertions that the problems encountered in the audit were caused by USACM

17  management and employees, and that the accuracy of the financial statements was the

18  responsibility of management and not PBTK.

19      8.    The USACM Trust has not filed suit against PBTK as of the date of this

20  Declaration. I recognize that the claims against PBKT are complex, and would be expensive for

21  both the USACM Trust and PBTK to litigate. I am also aware that the outcome of the case, like

22  any other litigation outcome, is inherently uncertain and subject to risk.

23

**DECLARATION OF GEOFFREY BERMAN**             **Page 4 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

9.    The USACM Trust's attorneys and PBTK's attorneys agreed to informal settlement discussions in an effort to resolve the claims, with my full knowledge and consent. Two in-person meetings were conducted, neither of which resulted in an agreement. Further discussion and negotiations between counsel for the USACM Trust and counsel for PBTK ensued over the weeks that followed. The parties explored the merits of the claims and defenses, and the complexity, expense, and unpredictability of the litigation of the claims against PBTK. The USACM Trust, DTDF, and PBTK reached a tentative agreement with respect to the USACM Trust's claims against PBTK. The Settlement Agreement was signed after additional months of dialog over the language in such agreement. The terms and conditions of the proposed settlement are set forth in the Settlement Agreement.

10.    The proposed settlement agreement with PBTK, in my judgment, is reasonable, fair, and in the interests of the USACM Trust. The amount of the settlement is substantial in light of the current stage of the case, the complexity, expense, and the risks and uncertainty of litigation. I have entered into the proposed settlement in good faith, and there has been no collusion or other improper conduct in connection with this proposed settlement to my knowledge.

11.    In assessing the appropriate settlement in this matter, I have also taken into account that litigation against PBTK at this time would present additional expense to the USACM Trust. I am not convinced that PBTK has the financial capability, through insurance or otherwise, to pay a judgment that the Trustee would be likely to recover against it on the relevant claims if in fact the USACM Trust were ultimately successful in litigating the PBTK claims through trial. In connection with the settlement negotiations, PBTK's insurance carrier has strongly asserted that there are meritorious coverage defenses under the relevant insurance

**DECLARATION OF GEOFFREY BERMAN**
**IN SUPPORT OF 9019 MOTION - PBTK**

**Page 5 of 7**

1    policies that may make all or some of the policy proceeds unavailable to pay any judgment the

2    Trustee may recover against PBTK.  This settlement is significant relative to the total amount of

3    coverage PBTK has available for USACM's claims.  Additionally, the settlement nearly exhausts

4    PBTK's available insurance coverage, and in light of potential coverage defenses, I believe it to

5    be reasonable.

6          12.    In addition, litigation of the USACM Trust's claims against PBTK would be

7    complex, expensive, time-consuming, and the outcome of any such litigation would inherently

8    be uncertain. Any litigation of this claim would involve substantial costs related to discovery

9    alone as there are millions of pages of documents related to this claim, many witnesses that

10   would need to be deposed, and the claims would require the retention of multiple expert

11   witnesses.

12         13.    There is a substantial benefit to the USACM Trust from resolving the claims

13   against PBTK now, without the necessity of lengthy litigation.  I believe that the settlement

14   amount is within the reasonable range of likely outcomes from litigation in light of issues related

15   to the ultimate collectibility of any judgment against PBTK.  In light of all of the relevant

16   factors, the proposed settlement with PBTK is reasonable, fair and in the best interests of the

17   USACM Trust, and will facilitate a prompt and meaningful recovery to the USACM Trust and

18   its beneficiaries.

19                    **PROTECTION AGAINST THIRD-PARTY CLAIMS**

20         14.    During the negotiations with PBTK, the protection of PBTK against the

21   possibility of claims for contribution or indemnity was a significant issue.  PBTK wants

22   reasonable assurance that they will not be subject to such further claims and litigation arising

23   from many of the same events. Such claims for contribution or indemnity could conceivably be

**DECLARATION OF GEOFFREY BERMAN**                              **Page 6 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

asserted by current defendants in other cases related to the Debtors' bankruptcy, although none have in fact been asserted to date.

15.    Entry of an appropriate order protecting PBTK against the possibility of future claims for contribution or indemnity will be of benefit to the USACM Trust, and will serve the purposes of the Joint Plan by facilitating recoveries for the benefit of the beneficiaries of the USACM Trust who have suffered loss as a result of the events leading to the Debtors' bankruptcy.

I DECLARE under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 20, 2008.

_Geoffrey L. Berman_

Geoffrey L. Berman, Trustee of the USACM Trust

**DECLARATION OF GEOFFREY BERMAN**
**IN SUPPORT OF 9019 MOTION - PBTK**

**Page 7 of 7**

EXHIBIT D

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | **DECLARATION OF MICHAEL TUCKER IN SUPPORT OF MOTION TO APPROVE SETTLEMENT – PBTK** |
| Affects:<br>☒All Debtors<br>☐USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

## DECLARATION OF MICHAEL TUCKER IN SUPPORT OF
## MOTION TO APPROVE SETTLEMENT – PBTK

Michael Tucker, Manager of USA Capital Diversified Trust Deed Fund, LLC ("DTDF"),

hereby declares the following under penalty of perjury:

**DECLARATION OF MICHAEL TUCKER
IN SUPPORT OF 9019 MOTION - PBTK**

**Page 1 of 7**

**EXHIBIT D**

1.     I am the Manager of DTDF pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by DTDF, USA Commercial Mortgage Company ("USACM"), USA Capital Realty Advisors,  USA Capital First Trust Deed Fund, LLC ("FTDF"), and USA Securities, LLC (collectively, the "Debtors").  The plan was confirmed by order of this Court on January 8, 2007 and became effective on March 12, 2007.

2.     Pursuant to the Joint Plan and Confirmation Order, post-effective date DTDF expressly retained DTDF's causes of action, including the Litigation Claims as defined in the Joint Plan.  This Court retained jurisdiction in Section VIII. D of the Joint Plan over numerous matters, including "[h]earing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor Insider Litigation" and "[a]pproving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the plan."

3.     After I was appointed as DTDF's Manager, I authorized an extensive investigation as to the factual circumstances that led to DTDF's bankruptcy.  During the course of this investigation, the DTDF professionals discovered facts that give rise to litigation claims against Piercy, Bowler, Taylor & Kern, PC ("PBTK").  I believe that PBTK failed to conduct its audits of USACM in accordance with contractual and professional standards.  This allowed certain insiders to perpetrate a financial fraud on USACM, DTDF, and other related entities, thereby leading to the loss of tens of millions of dollars.

4.     As a result of these findings, I instructed counsel to contact PBTK about pre-suit settlement discussions in December 2007.  PBTK was advised that counsel had been instructed to and had in fact drafted a lawsuit against PBTK that included claims related to the audit of

**DECLARATION OF MICHAEL TUCKER**
**IN SUPPORT OF 9019 MOTION - PBTK**                                        **Page** 2 **of** 7

USACM.  DTDF and PBTK participated in informal settlement discussions initially in February 2008 and again in late April 2008 related to these claims.  Those discussions did not immediately result in a resolution of DTDF's claims against PBTK.  However, DTDF and PBTK continued to discuss settlement for the period following those meetings.  After extensive discussions, meetings, and arms-length settlement negotiations, USACM, DTDF, and BMER ultimately agreed to a tentative settlement in May 2008.  This agreement was memorialized in the *Settlement Agreement, Mutual Release, and Covenants* that was entered into by and between the USACM Trust, DTDF, and PBTK (the "Settlement Agreement").

5.    I, along with special litigation counsel, have analyzed DTDF's claims against PBTK and the Settlement Agreement.  It is my considered judgment that the Settlement Agreement with PBTK and the proposed settlement set forth therein are fair, reasonable, and in the best interests of DTDF for the reasons set forth below.  On DTDF's behalf, I have entered into the Settlement Agreement with PBTK in good faith after weighing what I believe to be all relevant and material factors, including but not limited to the amount of the proposed settlement; the strengths of the asserted claims and defenses; the costs and burdens of litigation of the claims to judgment, including expert witness costs; the effect of such litigation on DTDF's litigation against other parties; the insurance policy limits and insurance funds available to PBTK to pay the claims now and in the future and other potential sources of payment by PBTK of the claims now and in the future; and the general uncertainty involved in litigation of the claims.

## PBTK CLAIMS

6.    DTDF entered into a tolling agreement with PBTK for the purpose of allowing the parties to continue discussions in an attempt to reach a compromise and settlement on these claims outside of formal litigation.  These claims are for aiding and abetting breaches of

**DECLARATION OF MICHAEL TUCKER**    **Page 3 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

1    fiduciary duty.  The claims arise out of accounting services provided in connection with the audit

2    of USACM's financial statements for the fiscal years ending in December 31, 2002 through

3    December 31, 2005.  For the years ending December 31, 2002 through December 31, 2004,

4    PBTK issued unqualified audit opinions on USACM's financial statements.  PBTK began audit

5    work on the December 31, 2005 financial statements, but was unable to complete its services

6    because USACM filed for bankruptcy protection during the pendency of the 2005 audit.

7            7.      I believe that DTDF's claims against PBTK have substantial merit and that PBTK

8    bears substantial responsibility for DTDF's losses.  I have been advised that counsel for PBTK

9    has strongly denied the validity of any such claims and any potential liability to DTDF. In

10   assessing the appropriate settlement in this matter, I have taken into account PBTK's assertions

11   that the problems encountered in the audit were caused by USACM management and employees,

12   and that the accuracy of the financial statements was the responsibility of management and not

13   PBTK.

14           8.      DTDF has not filed suit against PBTK as of the date of this Declaration.  I

15   recognize that the claims against PBKT are complex, and would be expensive for both DTDF

16   and PBTK to litigate.  I am also aware that the outcome of the case, like any other litigation

17   outcome, is inherently uncertain and subject to risk.

18           9.      DTDF's attorneys and PBTK's attorneys agreed to informal settlement

19   discussions in an effort to resolve the claims, with my full knowledge and consent.  Two in-

20   person meetings were conducted, neither of which resulted in an agreement.  Further discussion

21   and negotiations between counsel for DTDF and counsel for PBTK ensued over the weeks that

22   followed.  The parties explored the merits of the claims and defenses, and the complexity,

23   expense, and unpredictability of the litigation of the claims against PBTK.  The USACM Trust,

1   DTDF, and PBTK reached a tentative agreement with respect to DTDF's claims against PBTK.

2   The Settlement Agreement was signed after additional months of dialog over the language in

3   such agreement.   The terms and conditions of the proposed settlement are set forth in the

4   Settlement Agreement.   DTDF will share in this settlement as a beneficiary of the USACM

5   Liquidating Trust and as otherwise outlined in the agreement between the USACM Trust and

6   DTDF dated and filed with the Court on March 13, 2008.

7           10.     The proposed settlement agreement with PBTK, in my judgment, is reasonable,

8   fair, and in the interests of DTDF.  The amount of the settlement is substantial in light of the

9   current stage of the case, BMER's insurance policy limits, the complexity, expense, and the risks

10  and uncertainty of litigation.  I have entered into the proposed settlement in good faith, and there

11  has been no collusion or other improper conduct in connection with this proposed settlement to

12  my knowledge.

13          11.     In assessing the appropriate settlement in this matter, I have also taken into

14  account that litigation against PBTK at this time would present additional expense to DTDF. I

15  am not convinced that PBTK has the financial capability, through insurance or otherwise, to pay

16  a judgment that DTDF would be likely to recover against it on the relevant claims if in fact the

17  USACM Trust were ultimately successful in litigating the PBTK claims through trial.   In

18  connection with the settlement negotiations, PBTK's insurance carrier has strongly asserted that

19  there are meritorious coverage defenses under the relevant insurance policies that may make all

20  or some of the policy proceeds unavailable to pay any judgment DTDF may recover against

21  PBTK.   This settlement is significant relative to the total amount of coverage PBTK has

22  available for DTDF's claims.   Additionally, the settlement nearly exhausts PBTK's available

23  insurance coverage, and in light of potential coverage defenses, I believe it to be reasonable.

**DECLARATION OF MICHAEL TUCKER**                                    **Page 5 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

12.     In addition, litigation of DTDF's claims against PBTK would be complex, expensive, time-consuming, and the outcome of any such litigation would inherently be uncertain. Any litigation of this claim would involve substantial costs related to discovery alone as there are millions of pages of documents related to this claim, many witnesses that would need to be deposed, and the claims would require the retention of multiple expert witnesses.

13.     There is a substantial benefit to DTDF from resolving the claims against PBTK now, without the necessity of lengthy litigation.  I believe that the settlement amount is within the reasonable range of likely outcomes from litigation in light of issues related to the ultimate collectibility of any judgment against PBTK. In light of all of the relevant factors, the proposed settlement with PBTK is reasonable, fair and in the best interests of DTDF, and will facilitate a prompt and meaningful recovery to DTDF and its interest holders.  I have entered into the Settlement Agreement in good faith, and there has been no collusion or other improper conduct relating to the proposed settlement with PBTK to my knowledge.

## PROTECTION AGAINST THIRD-PARTY CLAIMS

14.     During the negotiations with PBTK, the protection of PBTK against the possibility of claims for contribution or indemnity was a significant issue.  PBTK wants reasonable assurance that they will not be subject to such further claims and litigation arising from many of the same events. Such claims for contribution or indemnity could conceivably be asserted by current defendants in other cases related to the Debtors' bankruptcy, although none have in fact been asserted to date.

15.     Entry of an appropriate order protecting PBTK against the possibility of future claims for contribution or indemnity will be of benefit to DTDF, and will serve the purposes of

**DECLARATION OF MICHAEL TUCKER**                                **Page 6 of 7**
**IN SUPPORT OF 9019 MOTION - PBTK**

the Joint Plan by facilitating a recovery from PBTK for the benefit of the beneficiaries of DTDF

who have suffered loss as a result of the events leading to the Debtors' bankruptcy.

I DECLARE under penalty of perjury that the foregoing is true and correct and that this

declaration was executed on October 20, 2008.

_Michael a Tucker_

Michael Tucker, Manager of USA Capital
Diversified Trust Deed Fund, LLC

**DECLARATION OF MICHAEL TUCKER**                    **Page** 7 of 7
**IN SUPPORT OF 9019 MOTION - PBTK**