# EXHIBIT "2"

Case: 06-01133-lbr    Doc #: 1    Filed: 04/12/2008    Page: 1 of 12

E-filed on 4/12/08

DIAMOND MCCARTHY LLP
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801500
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust and DTDF

LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone: (702) 949-8320
Facsimile: (702) 949-8321

Susan M. Freeman, AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

In re:
USA COMMERCIAL MORTGAGE COMPANY,

Debtor.

In re:
USA CAPITAL REALTY ADVISORS, LLC,

Debtor.

In re:
USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,

Debtor.

In re:
USA CAPITAL FIRST TRUST DEED FUND, LLC,

Debtor.

In re:
USA SECURITIES, LLC

Debtor.

Affects:
[ ] All Debtors
[ ] USA Commercial Mortgage Company
[ ] USA Capital Realty Advisors, LLC
[X] USA Capital Diversified Trust Deed Fund, LLC
[ ] USA Capital First Trust Deed Fund, LLC
[ ] USA Securities, LLC

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC

Plaintiff,

v.

KATHRYN L. PETERSEN, individually and as TRUSTEE of the KATHRYN L. PETERSEN LIVING TRUST and TRUSTEE of the KLP TRUST DTD 7/15/99 and SPECIALIZED DEVELOPMENT TAHOE, LLC,

Defendants.

Case Nos.:
BK-S-06-10725-LBR
BK-S-06-10726-LBR
BK-S-06-10727-LBR
BK-S-06-10728-LBR
BK-S-06-10729-LBR

JOINTLY ADMINISTERED
Chapter 11 Cases

Judge Linda B. Riegle

Adversary No. 08-01153-lbr

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC'S ORIGINAL COMPLAINT

Hearing Date: n/a
Hearing Time: n/a

DTDF'S ORIGINAL COMPLAINT                                    Page -- 1

Plaintiff USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), hereby complains as follows:

## I. NATURE OF THIS ACTION

1. In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders"). Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank", as well as other entities in which they stood to reap substantial personal profits.

2. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order: (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties. In this adversary proceeding, Plaintiff seeks to recover $700,000 that the Culpable Insiders misappropriated from DTDF and transferred to the Defendants in furtherance of their scheme.

## II. JURISDICTION / VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

5. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6. The Defendants are subject to personal jurisdiction in this Court.

7. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

## III. PARTIES

### A. PLAINTIFF

8. Plaintiff DTDF is a limited liability company organized under Nevada law on or about February 3, 2000. DTDF offered Nevada investors the opportunity to purchase membership interests in a fund and thereby invest in loans that USACM originated and serviced on behalf of DTDF. Upon confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Case No. 06-10725 (Docket No. 1799), the DTDF Amended Operating Agreement was enacted and became effective. The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007. The Joint Plan expressly retained DTDF's causes of action for enforcement by DTDF pursuant to 11 U.S.C. § 1123(b)(3)(B) upon the effective date of the Joint Plan.

### B. DEFENDANTS

9. Defendant, Kathryn L. Petersen, individually, as trustee of the Kathryn L. Petersen Living Trust, and as trustee of the KLP Trust DTD 7/15/99 ("Petersen") is an individual residing in the State of Nevada. Defendant can be served by personal service at 900 Granger Farm Way, Las Vegas, Nevada 89145 or wherever she may be found. The Kathryn L. Petersen Living Trust is a trust organized under the laws of the state of Nevada and can be served personal service on its trustee, Kathryn L. Petersen at the address listed above. The KLP Trust DTD 7/15/99 is a trust organized under the laws of the state of Nevada and can be served personal service on its trustee, Kathryn L. Petersen at the address listed above.

10. Defendant Specialized Development Tahoe, LLC ("Specialized Development") is a Nevada limited liability company with its principal place of business in Nevada. Defendant Specialized Development can be served through its registered agent, Kurt A. Johnson, esq. at 7881 W. Charleston Blvd., Suite 220, Las Vegas, Nevada 89117. Upon information and belief, Defendant Specialized Development was managed by Petersen.

11. Petersen and Specialized Development shall be referred to collectively herein as "Defendants."

## IV. FACTUAL ALLEGATIONS

### A. BACKGROUND OF USACM, DTDF, AND THEIR DEMISE

12. In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders. Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM and DTDF. As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001, if not earlier. Eventually USACM and DTDF (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

13. USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors. USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

14.     A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders. Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USAIP, including time-share hotels, real estate development entities, and technology companies. The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities. In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

15.     In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USA Commercial Mortgage Company Collection Trust Account ("Collections Account") and other funds to make regular interest and principal payments to investors in non-performing loans. These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities. In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

16.     Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers. USACM did

not receive any benefit from making these "pre-payments" of interest and principal. Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

17. To provide additional sources of funds to fuel this "Ponzi"-like scheme, the Culpable Insiders adopted a "fund" business model with the creation of DTDF and USA Capital First Trust Deed Fund, LLC ("FTDF") in February 2000 and February 2001, respectively. Under the "fund" model, investors purchased interests in DTDF and/or FTDF, which then acted as lenders in loans originated and serviced by USACM.

18. Beginning at least as early as 2002 and continuing until the Petition Date, the Culpable Insiders created liquidity in the Collections Account by failing to remit principal payments to DTDF when the loan(s) that it had invested in were repaid. In such situations, Victoria Loob ("Loob") took physical possession of checks payable to DTDF and simply stuffed them in her desk drawer. Internally, the Culpable Insiders referred to the unremitted principal to DTDF as the "held checks." As of the Petition Date, the outstanding balance of the held checks was at least $18.9 million.

19. The Culpable Insiders also transferred funds directly from DTDF to the Collections Account to cover shortfalls. For example, the Culpable Insiders transferred $11.425 million from DTDF into the Collections Trust in January 2003. These transfers were in direct violation of Nevada law and DTDF's Prospectus, dated June 2, 2003.[1]

---

[1] According to the DTDF Prospectus: (i) USACM had sold $121,524,500 worth of units in the Fund prior to June 2, 2003; (ii) investors were not offered a fixed rate of return but rather a "flow-through" of the profits generated by DTDF through DTDF acting as a Direct Lender ins loans generated by USACM; (iii) DTDF would only invest in loans secured by first deeds of trust upon real property; (iv) loan-to-value ratios for the loans in which DTDF would become a Direct Lender would not exceed 75% and may be as low as 60%; and (v) loan diversification restrictions would be imposed upon the loans invested by DTDF such that no loan would exceed $20 million, no loan would exceed 15% of all loans outstanding at any time, and no more than 25% of the loans outstanding at any time would be made to a single borrower or an affiliate of such borrower.

20. The Culpable Insiders also systematically used DTDF as a vehicle to take certain, preferred investors out of non-performing loans. In these situations, the Culpable Insiders caused DTDF to pay in cash the full face value of the preferred investors' beneficial interests in these distressed loans in exchange for assignments of the beneficial interests. In many cases, the beneficial interests DTDF received through these assignments were only worth pennies on the dollar. In countless examples, the preferred lenders recouped their entire investment while DTDF was left with nothing more than an interest in a worthless investment. The Culpable Insiders ultimately used DTDF to make tens of millions of dollars of such assignments, causing tens of millions of dollars in losses for DTDF.

21. In addition to abusing DTDF to fuel their "Ponzi"-like scheme, the Culpable Insiders regularly looted funds from DTDF to fund entities in which they held an indirect ownership interest through USAIP, including time-share hotels, real estate development entities, and technology companies. In addition, the Culpable Insiders looted DTDF to pay obligations that USAIP owed to third parties.

22. To conceal these abuses, the Culpable Insiders fabricated a sham loan to 10-90, Inc. ("10-90"). Although 10-90 was not even created until December 31, 2002, the Culpable Insiders booked much of their 2002 looting of DTDF as advances on the sham loan to 10-90. From January 2003 onward, the Culpable Insiders continued to loot tens of millions of dollars from DTDF, ultimately booking more than $55 million of looting as advances on the loan to 10-90.

B. TRANSFERS FROM DTDF TO DEFENDANTS

23. In order to provide additional liquidity to perpetuate their fraudulent scheme, the Culpable Insiders established a "short term note" program for investors to lend money directly to

USACM as the borrower. Upon information and belief, the short term notes typically matured in sixty to ninety days.

24. Defendant Petersen invested $700,000 in USACM's short term note program (the "Kathryn Petersen Note").

25. The Culpable Insiders caused DTDF to wire transfer $510,000 to Nevada Title Company to a depository escrow account "fbo: Kathy Petersen" on July 23, 2002 (the "Depository Escrow Transfer"). Upon information and belief, Nevada Title Company transferred the $510,000 to Defendant Petersen.

26. On the same day, the Culpable Insiders caused DTDF to wire transfer $190,000 to Specialized Development, "FBO Kathy Petersen" (the "Specialized Development Transfer"). Upon information and belief, Specialized Development transferred the $190,000 to Defendant Petersen or received such funds as some form of investment or capital contribution on her behalf.

27. The Depository Escrow Transfer and the Specialized Development Transfer shall be collectively referred to herein as the "Transfers."

28. The Culpable Insiders caused the Transfers to be made for the purpose of repaying USACM's obligation to Defendant on the Kathryn Petersen Note. DTDF had no obligation whatsoever to repay this obligation nor did it receive any benefit for doing so.

29. Petersen knew or should have known that DTDF had absolutely no obligation whatsoever to repay any portion of the Kathryn Petersen Note. Upon information and belief DTDF was not a party to any of the loan documents. Nor had DTDF guaranteed the loan or provided any other security in connection with the loan. Petersen knew or should have known that DTDF, an

entity that solely functioned as a lender, would not stand to benefit in any way from re-paying the Kathryn Petersen Note.

30. In addition, Petersen knew or should have known that the Transfers were made with the actual intent to defraud DTDF and its creditors. DTDF had no obligation to make these payments and did not receive any benefit from making the Transfers.

31. The Transfers were a blatant misuse of DTDF funds under the terms of the DTDF Prospectus. Upon information and belief, the Culpable Insiders caused the Transfers to be made with the actual intent to defraud, hinder, or delay DTDF and its creditors. Specifically, in an effort to conceal their egregious misconduct in causing the Transfers to be made, the Culpable Insiders booked the transfers in DTDF's accounting records as advances on the sham loan to 10-90.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(a))

32. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

33. The Transfers were of an interest of the Debtor in property.

34. The Transfers were made within the applicable four year period under NRS 112.180(1)(a).

35. On the date of the Transfers and the Petition Date, upon information and belief, there were creditors with allowable unsecured claims who could have avoided the Transfers pursuant to Nevada state law.

36. The Culpable Insiders caused the Debtor to make the Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

37. Accordingly, the Transfers (a) are fraudulent under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

38. Pursuant to 11 U.S.C. § 544(b), DTDF asks the Court to avoid the Transfers under applicable state law.

## SECOND CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

39. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

40. The Transfers are avoidable under 11 U.S.C. § 544 and NRS 112.180(1)(a).

41. DTDF may recover the value of the Depository Escrow Transfer directly from Defendant Petersen as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

42. DTDF may recover the value of the Specialized Development Transfer directly from Defendant Specialized Development as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

43. In the alternative, Defendant Specialized Development was merely a conduit through which DTDF transferred funds to Defendant Petersen. Upon information and belief, Defendant Specialized Development never had dominion over the Specialized Development Transfers. As such, DTDF may recover the value of the Specialized Development Transfers from Defendant Petersen as an initial transferee under 11 U.S.C. § 550(a)(1) and NRS 112.220. In the alternative, DTDF may recover the value of the Specialized Development Transfers from

Defendant Petersen as an immediate or mediate transferee who took such transfers without good faith, without giving value, and with knowledge of the voidability of the Specialized Development Transfers pursuant to § 550(a)(2) and NRS 112.220.

### THIRD CAUSE OF ACTION
#### (Unjust Enrichment)

44. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

45. By making the Transfers, DTDF conferred a benefit on Defendants.

46. Defendants appreciated the benefit in that they received the Transfers and knew or should have known that such Transfers were part of the Culpable Insiders fraudulent scheme.

47. Defendants retained the $700,000 they received from the Transfers under circumstances that make retention of the money inequitable. Specifically, the Transfers were part of the gross misconduct of the Culpable Insiders in looting DTDF for the benefit of themselves and their personal "piggy bank," USAIP.

### FOURTH CAUSE OF ACTION
#### (Money Had and Received)

48. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

49. Defendants received and/or possess $700,000 from the Transfers.

50. DTDF is rightfully entitled to the money. The Transfers were made for Defendants' benefit and were merely part of the Culpable Insiders' systematic abuse of DTDF.

51. In good conscience and equity, Defendants have no right to maintain the $700,000 they received in the Transfers. The Transfers were merely part of the gross misconduct of the

Culpable Insiders in looting DTDF for the benefit of themselves and their personal "piggy bank", USAIP.

## VI. PRAYER FOR RELIEF

WHEREFORE, DTDF respectfully request that the Court enter judgment as follows:

(a) Avoiding each of the Transfers;

(b) Directing Defendants (respectively) to repay the value of the Transfers to DTDF;

(c) Directing Defendants (respectively) to pay to DTDF all pre- and post-judgment interest on the Transfers at the maximum rate allowable by law and/or equity;

(d) Directing Defendants (respectively) to pay DTDF's costs of court;

(e) Awarding DTDF such other relief that this Court deems just and proper.

Dated: April 12, 2008.

DIAMOND MCCARTHY LLP

By: /s/ Erin E. Jones
Allan B. Diamond, TX 05801800 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)
Erin E. Jones, TX 24032478 (pro hac vice)
Michael J. Yoder, TX 24056572 (pro hac vice)
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel for
USACM Liquidating Trust and DTDF*

LEWIS AND ROCA LLP

By: /s/ Rob Charles
Susan M. Freeman, AZ 4199 (pro hac vice)
Rob Charles, NV 6593
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
(702) 949-8320 (telephone)
(702) 949-8321 (facsimile)

*Counsel for USACM Liquidating Trust*