# EXHIBIT "1"

E-filed on 4/11/08

| | |
|---|---|
| **DIAMOND MCCARTHY LLP**<br>909 Fannin, Suite 1500<br>Houston, Texas 77010<br>Telephone (713) 333-5100<br>Facsimile (713) 333-5199<br><br>Allan B. Diamond, TX State Bar No. 05801800<br>Email: adiamond@diamondmccarthy.com<br>Eric D. Madden, TX State Bar No. 24013079<br>Email: emadden@diamondmccarthy.com<br><br>Special Litigation Counsel for USACM Liquidating Trust and DTDF | **LEWIS AND ROCA LLP**<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, NV 89169-5996<br>Telephone (702) 949-8320<br>Facsimile (702) 949-8321<br><br>Susan M. Freeman, AZ State Bar No. 004199<br>Email: sfreeman@lrlaw.com<br>Rob Charles, NV State Bar No. 006593<br>Email: rcharles@lrlaw.com<br><br>Counsel for USACM Liquidating Trust |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>     Debtor.<br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>     Debtor.<br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>     Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>     Debtor.<br>In re:<br>USA SECURITIES, LLC,<br><br>     Debtor.<br>Affects:<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR<br><br>JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC<br><br>     Plaintiffs.<br>   v.<br>STANLEY E. FULTON<br><br>     Defendant. | Adversary No. 08-___<br><br>**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC'S ORIGINAL COMPLAINT**<br><br>Hearing Date: n/a<br>Hearing Time: n/a |

<u>**USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT**</u>   Page -- 1

Plaintiff USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), hereby complains as follows:

## I.   NATURE OF THIS ACTION

1.   In April 2006, USA Commercial Mortgage Company ("USACM"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities were forced to file for bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders"). Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank", as well as other entities in which they stood to reap substantial personal profits.

2.   In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order: (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties. In this adversary proceeding, Plaintiff seeks to recover $2 million that the Culpable Insiders misappropriated from DTDF and transferred to Defendant in furtherance of their scheme.

## II.   JURISDICTION / VENUE

3.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4.   This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

5.   This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6.   The Defendant is subject to personal jurisdiction in this Court.

7. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

## III. PARTIES

A. PLAINTIFF

8. Plaintiff DTDF is a limited liability company organized under Nevada law on or about February 3, 2000. DTDF offered Nevada investors the opportunity to purchase membership interests in a fund and thereby invest in loans that USACM originated and serviced on behalf of DTDF. Upon confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Case No. 06-10725 (Docket No. 1799), the DTDF Amended Operating Agreement was enacted and became effective. The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007. The Joint Plan expressly retained DTDF's causes of action for enforcement by DTDF pursuant to 11 U.S.C. § 1123(b)(3)(B) upon the effective date of the Joint Plan.

B. DEFENDANT

9. Defendant, Stanley E. Fulton ("Fulton"), is an individual residing in the State of Nevada. Defendant can be served by personal service at 5738 Hedgehaven Court, Las Vegas, Nevada 89120 or wherever he may be found.

## IV. FACTUAL ALLEGATIONS

A. BACKGROUND OF USACM, DTDF, AND THEIR DEMISE

10. In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders. Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM and DTDF. As a result of these wrongful activities, USACM was

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                Page -- 3

insolvent at least as early as December 31, 2001, if not earlier. Eventually USACM and DTDF (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

11.   USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors. USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

12.   A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders. Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate development entities, and technology companies. The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities. In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest. In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

13.   In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USA Commercial Mortgage Company Collection Trust Account ("Collections Account") and other funds to make

<u>USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT</u>                              Page -- 4

regular interest and principal payments to investors in non-performing loans. These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities. In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

14. Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers. USACM did not receive any benefit from making these "pre-payments" of interest and principal. Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

15. To provide additional sources of funds to fuel this "Ponzi"-like scheme, the Culpable Insiders adopted a "fund" business model with the creation of DTDF and USA Capital First Trust Deed Fund, LLC ("FTDF") in February 2000 and February 2001, respectively. Under the "fund" model, investors purchased interests in DTDF and/or FTDF, which then acted as lenders in loans originated and serviced by USACM.

16. Beginning at least as early as 2002 and continuing until the Petition Date, the Culpable Insiders created liquidity in the Collections Account by failing to remit principal payments to DTDF when the loan(s) that it had invested in were repaid. In such situations, Victoria Loob ("Loob") took physical possession of checks payable to DTDF and simply stuffed them in her desk drawer. Internally, the Culpable Insiders referred to the unremitted principal to DTDF as the "held checks." As of the Petition Date, the outstanding balance of the held checks was at least $18.9 million.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                                Page -- 5

17. The Culpable Insiders also transferred funds directly from DTDF to the Collections Account to cover shortfalls. For example, the Culpable Insiders transferred $11.425 million from DTDF into the Collections Trust in January 2003. These transfers were in direct violation of Nevada law and DTDF's Prospectus, dated June 2, 2003.[1]

18. The Culpable Insiders also systematically used DTDF as a vehicle to take certain, preferred investors out of non-performing loans. In these situations, the Culpable Insiders caused DTDF to pay in cash the full face value of the preferred investors' beneficial interests in these distressed loans in exchange for assignments of the beneficial interests. In many cases, the beneficial interests DTDF received through these assignments were only worth pennies on the dollar. In countless examples, the preferred lenders recouped their entire investment while DTDF was left with nothing more than an interest in worthless investment. The Culpable Insiders ultimately used DTDF to make tens of millions of dollars of such assignments, causing tens of millions of dollars in losses.

19. In addition to abusing DTDF to fuel their "Ponzi"-like scheme, the Culpable Insiders regularly looted funds from DTDF to fund entities in which they held an indirect ownership interest through USAIP, including time-share hotels, real estate development entities, and technology companies. In addition, the Culpable Insiders looted DTDF to pay obligations that USAIP owed to third parties.

---

[1] According to the DTDF Prospectus: (i) USACM had sold $121,524,500 worth of units in the Fund prior to June 2, 2003; (ii) investors were not offered a fixed rate of return but rather a "flow-through" of the profits generated by DTDF through DTDF acting as a Direct Lender ins loans generated by USACM; (iii) DTDF would only invest in loans secured by first deeds of trust upon real property; (iv) loan-to-value ratios for the loans in which DTDF would become a Direct Lender would not exceed 75% and may be as low as 60%; and (v) loan diversification restrictions would be imposed upon the loans invested by DTDF such that no loan would exceed $20 million, no loan would exceed 15% of all loans outstanding at any time, and no more than 25% of the loans outstanding at any time would be made to a single borrower or an affiliate of such borrower.

<u>USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT</u>                    Page -- 6

20. To conceal these abuses, the Culpable Insiders fabricated a sham loan to 10-90, Inc. ("10-90"). Although 10-90 was not even created until December 31, 2002, the Culpable Insiders booked much of their 2002 looting of DTDF as advances on the sham loan to 10-90. From January 2003 onward, the Culpable Insiders continued to loot tens of millions of dollars from DTDF, ultimately booking more than $55 million of looting as advances on the loan to 10-90.

B. **TRANSFERS FROM DTDF TO DEFENDANT**

21. In the late 1990s and early 2000s, Fulton conducted business with several different entities managed by the Culpable Insiders. First, he invested in loans originated by USACM. Second, he was a co-lender on several loans with DTDF. Finally, Fulton loaned money directly to USAIP.

22. As a result of Fulton's business sophistication and his dealings with USACM, DTDF, USAIP and other related entities, Fulton knew or should have known that DTDF was a distinct legal entity from USAIP. In turn, he knew or should have known that he was not entitled to receive several million dollars from DTDF in 2001 and 2002.

23. Fulton's initial exposure to USACM was as an investor in several loans originated by USACM, including the "Camino Al Norte," "Sheraton Hotel," "Double Diamond Ranch/Reno," "Mason Goodrich Land," and "Amblamo- The View" loans. As both an investor in these loans and as a sophisticated businessman, Fulton understood the risks involved in making these investments. In addition, Fulton knew or should have known that USACM was merely a mortgage broker, and that neither USACM nor any of its related entities had any obligation whatsoever to repay any of these loans if the borrower went into default.

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                Page -- 7

24. Fulton was initially exposed to DTDF when he invested in a loan that had previously been funded by DTDF. Specifically, USACM originated a $2.25 million loan from DTDF to American Realty Trust, Inc. ("American Realty") on December 29, 2000. On January 4, 2001, Fulton provided an additional $1.5 million advance to American Realty and the loan documents were amended to increase the principal amount to $3.75 million.

25. Based upon this experience as a co-lender with DTDF, Fulton knew or should have known that DTDF merely acted as a normal investor in loans originated by USACM. In turn, Fulton knew or should have known that DTDF, like Fulton or any other investor, would have absolutely no obligation whatsoever to make payments to other investors.

26. Shortly after Fulton invested $1.5 million in the loan to American Realty, the Culpable Insiders approached Fulton to obtain a working capital loan for USAIP. In February 2001, Fulton loaned $5 million to USAIP (the "Fulton-USAIP Loan"). The Fulton-USAIP Loan carried a fourteen percent (14%) interest rate and was evidenced by a Promissory Note dated February 13, 2001 and given by USAIP. The maturity date on the Fulton-USAIP Loan was February 13, 2002.

27. Meanwhile in late 2001, the "Sheraton Hotel" loan went into default, putting Fulton's earlier investment in this loan at risk. To ensure that Fulton was repaid, the Culpable Insiders caused DTDF to pay Fulton the face value of his investment in the loan in exchange for an assignment of his beneficial interest in the related deed of trust. On November 27, 2001, Fulton executed the assignment of his interest to DTDF. On November 28, 2001, the Culpable Insiders caused DTDF to write Fulton a check for $500,000, the amount of his initial investment in the loan. Fulton knew or should have known that DTDF had no obligation whatsoever to buy out his interest in this virtually worthless loan, especially at face value.

<u>USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT</u>    Page -- 8

28. Shortly thereafter, in February 2002, USAIP defaulted on the Fulton-USAIP Loan and Fulton's counsel sent a notice of default to USAIP on February 20, 2002. Subsequently, Fulton agreed to forbear from exercising his rights and remedies under the Fulton-USAIP Loan documents until July 15, 2002. Upon information and belief, Fulton executed a Forbearance Agreement in March 2002 (the "Fulton-USAIP Forbearance").

29. Upon information and belief, at the time the Fulton-USAIP Forbearance was executed, the "Double Diamond Ranch/Reno" loan was non-performing. In turn, on March 25, 2002, the Culpable Insiders caused DTDF to write Fulton a check for $640,732.63 to pay off the entire amount of outstanding principal and interest on Fulton's investment in the "Double Diamond Ranch/Reno" loan. Fulton knew or should have known that DTDF had no obligation whatsoever to buy out his interest in this non-performing loan, especially at face value.

30. Shortly thereafter, the Culpable Insiders caused DTDF to wire transfer $1 million to Fulton as an initial repayment on the Fulton-USAIP Loan on April 15, 2002. The Culpable Insiders caused DTDF to make an additional $1 million wire transfer to Fulton on May 15, 2002 (together with the April 15, 2002 wire transfer, the "DTDF Transfers") also as partial repayment on the Fulton-USAIP Loan.

31. Fulton received the remaining balance due on the Fulton-USAIP Loan from South Meadows Apartments, LLC ("South Meadows") and USACM, which repaid $2 million and $1 million, respectively. Thus, the Culpable Insiders caused $3 million of the Fulton-USAIP Loan to be repaid from two entities (South Meadows and DTDF) who received absolutely no benefit in return.

<u>USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT</u>    Page -- 9

32. Fulton knew or should have known that DTDF had absolutely no obligation whatsoever to repay any portion of the Fulton-USAIP Loan. DTDF was not a party to any of the loan documents or the Fulton-USAIP Forbearance. Nor had DTDF guaranteed the loan or provided any other security in connection with the loan. Finally, Fulton knew or should have known that DTDF, an entity that solely functioned as a lender, would not stand to benefit in any way from re-paying the Fulton-USAIP Loan.

33. In addition, Fulton knew or should have known that the DTDF Transfers were made with the actual intent to defraud DTDF and its creditors. First, DTDF had no obligation to make these payments and did not receive any benefit from making the DTDF Transfers. Second, the Culpable Insiders had previously caused DTDF to buy-out Fulton's interest, at face value, in non-performing loans to the detriment of DTDF and its creditors.

34. In fact, the Culpable Insiders caused DTDF to make the DTDF Transfers with the actual intent of defrauding DTDF and its creditors in order to benefit their personal "piggy bank", USAIP. Specifically, the DTDF Transfers were a blatant misuse of DTDF funds under the terms of the DTDF Prospectus. In an effort to conceal their egregious misconduct in causing the DTDF Transfers to be made, the Culpable Insiders eventually booked the transfers in DTDF's accounting records as advances on the sham loan to 10-90.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(11 U.S.C. § 544 and NRS 112.180(1)(a))

35. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

36. The DTDF Transfers were of an interest of the Debtor in property.

37. The DTDF Transfers were made within the applicable four year period under NRS 112.180(1)(a).

38. On the date of the DTDF Transfers and the Petition Date, upon information and belief, there were creditors with allowable unsecured claims who could have avoided the DTDF Transfers pursuant to Nevada state law.

39. The Culpable Insiders caused the Debtor to make the DTDF Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

40. Accordingly, the DTDF Transfers (a) are fraudulent under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

41. Pursuant to 11 U.S.C. § 544(b), DTDF asks the Court to avoid the DTDF Transfers under applicable state law.

### SECOND CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

42. The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

43. The DTDF Transfers are avoidable under 11 U.S.C. § 544 and NRS 112.180(1)(a).

44. The Trust may recover the value of the DTDF Transfers directly from Fulton as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

45. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

46. By making the DTDF Transfers, DTDF conferred a benefit on Fulton.

47. Fulton appreciated the benefit in that he: (i) received the DTDF Transfers; and (ii) knew or should have known that DTDF was making a payment on behalf of USAIP on the Fulton-USAIP Loan.

48. Fulton retained the $2 million he received in the DTDF Transfers under circumstances that make retention of the money inequitable. Specifically, the DTDF Transfers were part of the gross misconduct of the Culpable Insiders in looting DTDF for the benefit of themselves and their personal "piggy bank," USAIP. In addition, Fulton willfully accepted the DTDF Transfers, even though: (i) USAIP was unable to timely pay-off the balance of the Fulton-USAIP Loan; (ii) DTDF had absolutely no obligation to re-pay the Fulton-USAIP Loan and received no benefit from doing so; (iii) the Culpable Insiders had previously misappropriated DTDF funds to make payments to Fulton on obligations that DTDF did not owe; and (iv) Fulton knew or should have known that DTDF solely functioned as a lender.

### FOURTH CAUSE OF ACTION
(Money Had and Received)

49. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

50. Fulton has received and/or possesses $2 million from the DTDF Transfers.

51. DTDF is rightfully entitled to the money. The DTDF Transfers were made for USAIP's benefit and were merely part of the Culpable Insiders' systematic abuse of DTDF.

52. In good conscience and equity, Fulton has no right to maintain the $2 million he received in the DTDF Transfers. Fulton knew or should have known that he had loaned money to USAIP, not to DTDF. Yet after USAIP was unable to timely re-pay the Fulton-USAIP Loan, Fulton willfully accepted partial re-payment from DTDF, even though DTDF had absolutely no prior connection whatsoever with the Fulton-USAIP loan transaction, had no obligation to repay the loan, and did not benefit from the loan. Moreover, Fulton had previously received improper payments from DTDF. The DTDF Transfers were merely part of the gross misconduct of the Culpable Insiders in looting DTDF for the benefit of themselves and their personal slush fund, USAIP.

### FIFTH CAUSE OF ACTION
### (NRS 41.580)

53. DTDF re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

54. In causing the DTDF Transfers to be made, the Culpable Insiders took $2 million from DTDF by theft and/or other offense(s) constituting a crime against property.

55. Fulton received, possessed, and/or withheld the $2 million.

56. Fulton received, possessed, and/or withheld the $2 million: (i) knowing that the Culpable Insiders misappropriated the funds from DTDF by theft and/or other offense(s) that constitute a crime against property; or (ii) under such circumstances as should have caused a

reasonable person to know that the Culpable Insiders misappropriated the funds from DTDF by theft and/or other offense(s) that constitute a crime against property.

57. Accordingly, the Trust may recover treble damages from Fulton under NRS 41.580.

## VI. PRAYER FOR RELIEF

WHEREFORE, DTDF respectfully request that the Court enter judgment as follows:

(a) Avoiding each of the DTDF Transfers;

(b) Directing Fulton to repay the value of the DTDF Transfers to DTDF;

(c) Directing Fulton to pay to DTDF all pre- and post-judgment interest on the DTDF Transfers at the maximum rate allowable by law and/or equity;

(d) Directing Fulton to pay DTDF's costs of court;

(e) Directing Fulton to pay DTDF treble damages and reasonable attorney's fees in accordance with NRS 41.580; and

(f) Awarding DTDF such other relief that this Court deems just and proper.

Dated: April 11, 2008.

| DIAMOND MCCARTHY LLP | LEWIS AND ROCA LLP |
|---|---|
| By: /s/ Erin E. Jones | By: /s/ Rob Charles |
| Allan B. Diamond, TX 05801800 (pro hac vice) | Susan M. Freeman, AZ 4199 (pro hac vice) |
| Eric D. Madden, TX 24013079 (pro hac vice) | Rob Charles, NV 6593 |
| Erin E. Jones, TX 24032478 (pro hac vice) | 3993 Howard Hughes Parkway, Suite 600 |
| Michael J. Yoder, TX 24056572 (pro hac vice) | Las Vegas, Nevada 89169-5996 |
| 909 Fannin, Suite 1500 | (702) 949-8320 (telephone) |
| Houston, Texas 77010 | (702) 949-8321 (facsimile) |
| (713) 333-5100 (telephone) | |
| (713) 333-5199 (facsimile) | |
| *Special Litigation Counsel for* | *Counsel for USACM Liquidating Trust* |
| *USACM Liquidating Trust and DTDF* | |

USACM LIQUIDATING TRUST'S ORIGINAL COMPLAINT                          Page -- 14