# EXHIBIT "A"

Westlaw

421 F.3d 989                                                                 Page 1
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

▷

United States Court of Appeals, Ninth Circuit.
Gerald K. SMITH, as Plan Trustee for and on be-
half of the Estates of Boston Chicken, Inc., BC
Real Estate Investments, Inc., and all Boston
Chicken affiliates, Plaintiff-Appellee,
v.
ARTHUR ANDERSEN LLP, a limited liability
partnership, Defendant,
and
Merrill Lynch & Co., Inc., a corporation; Merrill
Lynch Pierce Fenner & Smith Inc., a corporation;
Deutsche Banc Securities, Inc., a corporation dba
Deutsche Banc Alex.Brown; Morgan Stanley &
Co., Inc., a corporation, Defendants-Appellants,
Bell, Boyd & Lloyd, a limited liability corporation;
Pedersen & Houpt, a professional corporation, De-
fendants-Appellees.
v.
Mark W. Stephens, Third-party-plaintiff-Appellee.
Gerald K. Smith, as Plan Trustee for and on behalf
of the Estates of Boston Chicken, Inc., BC Real Es-
tate Investments, Inc., and all Boston Chicken affil-
iates, Plaintiff-Appellee,
v.
Arthur Andersen LLP, a limited liability partner-
ship; Merrill Lynch & Co., Inc., a corporation;
Merrill Lynch Pierce Fenner & Smith Inc., a cor-
poration; Deutsche Banc Securities, Inc., a corpora-
tion dba Deutsche Banc Alex.Brown; Morgan Stan-
ley & Co., Inc., a corporation; Bell, Boyd & Lloyd,
a limited liability corporation; Pedersen & Houpt, a
professional corporation, Defendants,
and
Scott A. Beck, an individual, and the marital com-
munity of Scott A. Beck, and his spouse; Saad J.
Nadhir, an individual, and the marital community
of Saad J. Nadhir, and his spouse, Defendants-Ap-
pellants,
v.
Mark W. Stephens, Third-party-plaintiff.
Gerald K. Smith, as Plan Trustee for and on behalf

of the Estates of Boston Chicken, Inc., BC Real Es-
tate Investments, Inc., and all Boston Chicken affil-
iates, Plaintiff-Appellee,
v.
Arthur Andersen LLP, a limited liability partner-
ship; Merrill Lynch & Co., Inc., a corporation;
Merrill Lynch Pierce Fenner & Smith Inc., a cor-
poration; Deutsche Banc Securities, Inc., a corpora-
tion dba Deutsche Banc Alex.Brown; Morgan Stan-
ley & Co., Inc., a corporation; Pedersen & Houpt, a
professional corporation, Defendants,
and
Bell, Boyd & Lloyd, a limited liability corporation,
Defendant-Appellee,
Peer Pedersen, an individual and the marital com-
munity of Peer Pedersen and his spouse, Defendant-
Appellant,
v.
Mark W. Stephens, Third-party-plaintiff-Appellee.
**Nos. 03-16791, 03-16803, 03-16899.**

Argued and Submitted Feb. 8, 2005.
Filed Aug. 30, 2005.

**Background:** Plan trustee for Chapter 11 estate
sued debtor's former officers and directors, attor-
neys, auditors, and investment bankers, alleging,
inter alia, breach of fiduciary duty, breach of con-
tract, and professional malpractice. The United
States District Court for the District of Arizona,
Paul G. Rosenblatt, J., approved trustee's settle-
ments with three defendants. Nonsettling defend-
ants appealed.

**Holdings:** The Court of Appeals, Wallace, Senior
Circuit Judge, held that:
(1) appellate jurisdiction existed;
(2) nonsettling defendants had standing to chal-
lenge settlements;
(3) trustee had standing to assert claims against de-
fendants;
(4) trustee's action was not "covered class action"
under definition of that term applicable to single
lawsuits under Securities Litigation Uniform Stand-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                                           Page 2
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

ards Act (SLUSA); and

(5) several lawsuits that were consolidated in trust-
ee's action did not qualify as group of lawsuits con-
stituting a "covered class action" under SLUSA.

Affirmed.

West Headnotes

[1] **Bankruptcy 51** ⟶3768

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3766 Decisions Reviewable
        51k3768 k. Interlocutory Orders; Col-
lateral Order Doctrine. Most Cited Cases
Court of Appeals had jurisdiction over interlocutory
appeal from orders in which district court approved
settlements with several defendants and perman-
ently enjoined nonsettling defendants from assert-
ing certain claims against settling defendants. 28
U.S.C.A. § 1292(a)(1).

[2] **Bankruptcy 51** ⟶3779

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3779 k. Scope of Review in General.
Most Cited Cases
Review of issues respecting both trustee's standing
to sue Chapter 11 debtor's former officers and dir-
ectors, attorneys, auditors, and investment bankers
and district court's subject matter jurisdiction over
trustee's action, which called into question district
court's authority to rule on requests for injunctive
relief, was necessary to ensure meaningful review
of injunctions in which district court barred nonset-
tling defendants from asserting certain claims
against settling defendants, and therefore pendent
appellate jurisdiction existed over those issues on
interlocutory appeal from orders in which injunc-
tions were entered. 28 U.S.C.A. § 1292(a)(1).

[3] **Bankruptcy 51** ⟶3768

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3766 Decisions Reviewable
        51k3768 k. Interlocutory Orders; Col-
lateral Order Doctrine. Most Cited Cases

[4] **Bankruptcy 51** ⟶3779

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3779 k. Scope of Review in General.
Most Cited Cases
Court of Appeals may exercise interlocutory appel-
late jurisdiction over district court injunction and
pendent jurisdiction over any otherwise non-
appealable ruling that is inextricably intertwined
with or necessary to ensure meaningful review of
injunction order properly before court on inter-
locutory appeal. 28 U.S.C.A. § 1292(a)(1).

[4] **Compromise and Settlement 89** ⟶67

89 Compromise and Settlement
  89II Judicial Approval
    89k66 Proceedings
      89k67 k. Class, Existence and Determina-
tion; Parties. Most Cited Cases
Nonsettling defendant, in general, lacks standing to
object to a partial settlement.

[5] **Bankruptcy 51** ⟶3782

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3782 k. Conclusions of Law; De Novo
Review. Most Cited Cases
Issue of whether nonsettling party has standing to
object to partial settlement is reviewed de novo.

[6] **Compromise and Settlement 89** ⟶67

89 Compromise and Settlement
  89II Judicial Approval
    89k66 Proceedings

421 F.3d 989                                                                Page 3
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

89k67 k. Class, Existence and Determination; Parties. Most Cited Cases
Prejudice triggering formal legal prejudice exception to general rule that nonsettling defendant cannot object to partial settlement exists when settlement purports to strip nonsettling defendant of a legal claim or cause of action, such as an action for indemnity or contribution.

[7] **Bankruptcy 51** ☞3770

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3770 k. Presentation of Grounds for
Review. Most Cited Cases
Nonsettling defendants did not waive, for purpose of appeal, arguments that they were prejudiced by partial settlements in trustee's action, which were offered in support of contention that nonsettling defendants had standing to challenge settlements, given that counsel for one nonsettling defendant raised before district court argument that standing existed because settlements stripped nonsettling defendants of indemnity and contribution claims against settling defendants, and that, on appeal, nonsettling defendants could bolster such defense to settling defendants' challenge to their standing by arguing that judgment reduction credits provided for by settlements did not fully extinguish harm caused by settlements' associated bar orders.

[8] **Bankruptcy 51** ☞3770

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3770 k. Presentation of Grounds for
Review. Most Cited Cases
Although Court of Appeals usually does not consider issues raised for the first time on appeal, there are exceptions to that rule, including that court will consider such an issue when there are exceptional circumstances why the issue was not raised in the trial court.

[9] **Bankruptcy 51** ☞3770

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3770 k. Presentation of Grounds for
Review. Most Cited Cases
Exceptional circumstances existed warranting Court of Appeals' consideration, for first time on appeal, defenses asserted by nonsettling defendants to contention that they lacked standing to challenge settlements, given that settling parties did not cite general rule that nonsettling defendants lacked standing to challenge partial settlements until day of hearing on one settlement and one week after hearing on other two settlements, making it unsurprising that nonsettling defendants did not invoke formal legal prejudice exception to that rule earlier.

[10] **Bankruptcy 51** ☞3777

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error;
Briefs. Most Cited Cases
Court of Appeals may consider an issue not raised in the appellant's opening brief if it is raised in the appellee's brief.

[11] **Bankruptcy 51** ☞3032.1

51 Bankruptcy
    51IX Administration
        51IX(A) In General
            51k3032 Compromises
                51k3032.1 k. In General. Most Cited
Cases
Nonsettling defendants had standing to challenge partial settlements in trustee's action for, inter alia, breach of fiduciary duty and breach of contract against Chapter 11 debtor's former officers and directors, attorneys, auditors, and investment bankers, despite judgment reduction credit contained in settlements providing for reduction in any judgment against nonsettling defendants by proportion of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                      Page 4
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

fault attributable to settling defendants, given that nonsettling defendants were barred from asserting claims for "contribution, indemnity or otherwise" based on, arising out of, or related to released claims, and that credit, though possibly offsetting loss of potential contribution claims, did not clearly compensate nonsettling defendants for elimination of other types of claims.

**[12] Compromise and Settlement 89 ⟜67**

89 Compromise and Settlement
    89II Judicial Approval
        89k66 Proceedings
            89k67 k. Class; Existence and Determination; Parties. Most Cited Cases
Judgment reduction credit provision in partial settlement may divest nonsettling defendants of standing to challenge such settlement if it is written in such a way as to ameliorate any harm to nonsettling defendants caused by other provisions in settlement agreement.

**[13] Bankruptcy 51 ⟜3782**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases
Whether trustee had standing to assert claims against Chapter 11 debtor's former officers and directors, attorneys, auditors, and investment bankers for, inter alia, breach of fiduciary duty, breach of contract, and professional malpractice was issue subject to de novo review.

**[14] Bankruptcy 51 ⟜2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf of Trustee or Debtor
                51k2154.1 k. In General. Most Cited Cases

Trustee had standing to assert claims against Chapter 11 debtor's former officers and directors, attorneys, auditors, and investment bankers for, inter alia, breach of fiduciary duty, breach of contract, and professional malpractice, given allegations that defendants breached contracts with or duties owed to debtor and that debtor could have filed for bankruptcy protection more promptly had defendants not concealed debtor's financial condition from its outside directors and investing public, which qualified as requisite injury to debtor. 11 U.S.C.A. §§ 323, 541(a)(1), 704(1).

**[15] Bankruptcy 51 ⟜2553**

51 Bankruptcy
    51V The Estate
        51V(C) Property of Estate in General
            51V(C)2 Particular Items and Interests
                51k2552 Rights of Action; Contract Rights Generally
                    51k2553 k. In General. Most Cited Cases
"Property of the estate" includes debtor's causes of action. 11 U.S.C.A. § 541(a)(1).

**[16] Bankruptcy 51 ⟜2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf of Trustee or Debtor
                51k2154.1 k. In General. Most Cited Cases
Under the Bankruptcy Code, the trustee stands in the shoes of the debtor-corporation and has standing to bring any action that debtor could have instituted had it not petitioned for bankruptcy.

**[17] Bankruptcy 51 ⟜2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                    Page 5
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

of Trustee or Debtor
            51k2154.1 k. In General. Most Cited
Cases
Trustee has no standing generally. to sue third
parties on behalf of bankruptcy estate's creditors,
but may only assert claims held by debtor itself.

[18] **Bankruptcy 51** ☞**2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf
of Trustee or Debtor
                51k2154.1 k. In General. Most Cited
Cases
Although the line between claims of debtor that
trustee has statutory authority to assert and claims
of creditors that trustee is barred from pursuing is
not always clear, the focus of the inquiry is on
whether trustee is seeking to redress injuries to
debtor itself caused by defendants' alleged conduct;
if debtor suffered injury, trustee has standing to
pursue a claim seeking to rectify such injury, but
when third party has instead injured debtor's credit-
or, trustee cannot bring suit against third party.

[19] **Bankruptcy 51** ☞**2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf
of Trustee or Debtor
                51k2154.1 k. In General. Most Cited
Cases
For purposes of trustee's standing to sue, complaint
asserting claims against Chapter 11 debtor's former
officers and directors, attorneys, auditors, and in-
vestment bankers for, inter alia, breach of fiduciary
duty, breach of contract, and professional malprac-
tice stated requisite cognizable harm to debtor in al-
leging that defendants prolonged debtor's existence,
causing it to expend corporate assets that would not
have been spent had debtor been dissolved in a
timely manner, rather than kept afloat with spurious

debt.

[20] **Bankruptcy 51** ☞**2154.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf
of Trustee or Debtor
                51k2154.1 k. In General. Most Cited
Cases
Trustee has authority to bring actions against debt-
or's officers and directors for breach of duty or mis-
conduct.

[21] **Corporations 101** ☞**349**

101 Corporations
    101X Officers and Agents
        101X(D) Liability for Corporate Debts and
Acts
            101k349 k. Insolvency or Dissolution of
Corporation. Most Cited Cases

**Corporations 101** ☞**547(1)**

101 Corporations
    101XII Insolvency and Receivers
        101k547 Remedies of Creditors in General
            101k547(1) k. In General. Most Cited
Cases
State-law insolvency exception, under which direct-
ors of insolvent corporations owe fiduciary duties
to creditor, gives creditors of an insolvent corpora-
tion standing to assert that directors breached their
fiduciary duties by improperly harming corpora-
tion's economic value, to the detriment of the cred-
itors which had legitimate claims on its assets.

[22] **Bankruptcy 51** ☞**3782**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3782 k. Conclusions of Law; De Novo
Review. Most Cited Cases
Court of Appeals reviews the district court's inter-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                                        Page 6
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

pretation of a statute de novo.

[23] Securities Regulation 349B ⬡278

349B Securities Regulation
   349BII State Regulation
      349BII(A) In General
         349Bk278 k. Fraudulent or Other Prohibited Practices. Most Cited Cases

**States 360 ⬡18.77**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.77 k. Securities and Exchange
Regulations. Most Cited Cases
Securities Litigation Uniform Standards Act
(SLUSA) is a federal statute that preempts state-law
securities actions under certain circumstances. Securities Act of 1933, § 16, as amended, 15 U.S.C.A.
§ 77p; Securities Exchange Act of 1934, § 28, 15
U.S.C.A. § 78bb.

[24] Securities Regulation 349B ⬡278

349B Securities Regulation
   349BII State Regulation
      349BII(A) In General
         349Bk278 k. Fraudulent or Other Prohibited Practices. Most Cited Cases

**States 360 ⬡18.77**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.77 k. Securities and Exchange
Regulations. Most Cited Cases
Primary purpose of trustee for Chapter 11 plan was
not pursuing causes of action, and therefore trustee
was single person under definition of "person" in
Securities Litigation Uniform Standards Act
(SLUSA) and trustee's action against debtor's
former officers and directors, attorneys, auditors,
and investment bankers for, inter alia, breach of fiduciary duty, breach of contract, and professional

malpractice was not "covered class action" under
SLUSA's definition of that term for single lawsuits,
given that plan provided for trustee to act as estate
representative for all purposes, and made trustee responsible for such matters as controlling estate assets, monetizing retained assets, filing, prosecuting,
and settling claim objections, prosecuting and settling estate causes of action, and making distributions in accordance with plan terms. Securities Exchange Act of 1934, § 28(f)(5)(B)(i)(I), (D), 15
U.S.C.A. § 78bb(f)(5)(B)(i)(I), (D).

[25] Securities Regulation 349B ⬡278

349B Securities Regulation
   349BII State Regulation
      349BII(A) In General
         349Bk278 k. Fraudulent or Other Prohibited Practices. Most Cited Cases
An entity is not one person under definition of
"person" set forth in Securities Litigation Uniform
Standards Act (SLUSA) if entity's primary purpose
is to pursue causes of action. Securities Exchange
Act of 1934, § 28(f)(5)(D), 15 U.S.C.A. §
78bb(f)(5)(D).

[26] Securities Regulation 349B ⬡278

349B Securities Regulation
   349BII State Regulation
      349BII(A) In General
         349Bk278 k. Fraudulent or Other Prohibited Practices. Most Cited Cases

**States 360 ⬡18.77**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.77 k. Securities and Exchange
Regulations. Most Cited Cases
Securities class action that temporarily was consolidated for discovery and pretrial purposes with action brought against Chapter 11 debtor's former officers and directors, attorneys, auditors, and investment bankers by plan trustee could not be con-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                    Page 7
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

sidered in determining whether trustee's action came within definition of "covered class action" applicable to groups of lawsuits under Securities Litigation Uniform Standards Act (SLUSA), such that SLUSA barred trustee's action, given that SLUSA expressly did not apply to actions that were pending when SLUSA was enacted, which included class action, and which thus could not be dismissed as "covered class action" pursuant to SLUSA. Securities Exchange Act of 1934, § 28(f)(5)(B)(ii), 15 U.S.C.A. § 78bb(f)(5)(B)(ii).

[27] **Securities Regulation 349B** 278

349B Securities Regulation
  349BII State Regulation
    349BII(A) In General
      349Bk278 k. Fraudulent or Other Prohibited Practices. Most Cited Cases

**States 360** 18.77

360 States
  360I Political Status and Relations
    360I(B) Federal Supremacy; Preemption
      360k18.77 k. Securities and Exchange Regulations. Most Cited Cases

Several lawsuits that were consolidated in trustee's action brought against Chapter 11 debtor's former officers and directors, attorneys, auditors, and investment bankers for, inter alia, breach of fiduciary duty, breach of contract, and professional malpractice did not qualify as group of lawsuits constituting a "covered class action" under Securities Litigation Uniform Standards Act (SLUSA), which required that a group seek damages on behalf of more than 50 persons, whereas trustee was single person as defined by SLUSA. Securities Exchange Act of 1934, § 28(f)(5)(B)(ii)(I), 15 U.S.C.A. § 78bb(f)(5)(B)(ii)(I).

**\*994** Ronald L. Marmer, C. John Koch, Jenner & Block LLP, Chicago, IL, and Don Bivens, Paul L. Stoller, Meyer, Hendricks & Bivens, P.A., Phoenix, AZ, for defendant-appellant Saad J. Nadhir.
George B. Curtis, Gregory J. Kerwin, Gibson, Dunn

& Crutcher LLP, Denver, CO, and Martin Galbut, Galbut & Hunter, P.C., Phoenix, AZ, for defendant-appellants Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Banc Securities, Inc., and Morgan Stanley & Co., Inc.
C. Barry Montgomery and David E. Stevenson, Williams Montgomery & John Ltd., Chicago, IL, for defendant-appellant Peer Pedersen.
Leo R. Beus, Nicholas J. DiCarlo, and Christine R. Taradash, Beus Gilbert PLLC, Scottsdale, AZ, for plaintiff-appellee Gerald K. Smith.
Martin Glenn, O'Melveny & Meyers LLP, New York, NY, and Amy J. Longo, O'Melveny & Meyers LLP, Newport Beach, CA, for plaintiff-appellee Mark W. Stephens.
Mark C. Dangerfield and Michael K. Kennedy, Gallagher & Kennedy, LP, Phoenix, AZ, for defendant-appellee Pedersen & Houpt.
James R. Condo, Snell & Wilmer LLP, Phoenix, AZ, and Richard A. Derevan, Marc L. Turman, Snell & Wilmer LLP, Irvine, CA, for defendant-appellee Bell, Boyd & Lloyd.

Appeal from the United States District Court for the District of Arizona; Paul G. Rosenblatt, District Judge, Presiding. D.C. Nos. CV-01-00218-PGR, CV-01-00246-PGR, CV-02-01162-PGR, CV-02-01248-PGR.

Before: WALLACE, RAWLINSON, and BYBEE, Circuit Judges.

WALLACE, Senior Circuit Judge:
Gerald K. Smith, in his capacity as Plan Trustee for the Bankruptcy Estate of Boston Chicken, Inc. and various related entities (the Trustee) filed an action alleging a variety of claims. Later, the Trustee filed motions seeking district court approval of settlements reached with certain of the *995 defendants and requesting bar orders enjoining the non-settling defendants from asserting certain claims against the settling defendants. Over objection of some of the non-settling defendants, the district court granted the approval motions resulting in this appeal.

421 F.3d 989                                                                                                    Page 8
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

The district court had jurisdiction pursuant to 28 U.S.C. § 1334. We hold that we have appellate jurisdiction and affirm.

I.

The Trustee's 225-page Second Amended Complaint (complaint) asserts 45 separate claims under state and federal law against certain of Boston Chicken's former officers and directors, attorneys, auditors, and investment bankers. The complaint refers to Scott A. Beck, Saad J. Nadhir, and Mark W. Stephens, who were officers and/or directors of Boston Chicken, as the "Individual Defendants." Defendants Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Banc Securities, Inc., d/b/a Deutsche Banc Alex. Brown, and Morgan Stanley & Co., Inc. are the "Underwriter Defendants." The defendants other than the Individual Defendants and PricewaterhouseCoopers (which was Boston Chicken's post-bankruptcy auditor) are the "Professional Defendants."

The complaint alleges the following core facts. Boston Chicken was insolvent from its inception, which the defendants knew or should have known. Rather than acknowledge this fact and seek bankruptcy protection, the defendants sought to keep the firm afloat for various reasons (retaining their corporate positions, salaries and fees, preserving the value of their investments in Boston Chicken and related entities, etc.). This was accomplished by, among other things, misrepresenting (not necessarily intentionally) the firm's financial condition to its outside directors and investors who participated in the firm's various securities offerings. The Individual Defendants, as high-ranking corporate officials, had the authority to implement this plan; the Professional Defendants, as advisors to the firm and underwriters of its securities, provided the services and resources necessary to make it happen. Accordingly, the complaint alleges in part that the Individual Defendants breached the fiduciary duties they owed to Boston Chicken and made false and misleading misrepresentations to Boston Chicken's

Board of Directors. The complaint also alleges that the Professional Defendants are liable for breach of certain contracts with Boston Chicken, breach of fiduciary duties owed to Boston Chicken and professional malpractice.

Furthermore, the complaint charges that had these misrepresentations and breaches not occurred, the funds obtained through the capital markets might not have been forthcoming, and the outside directors might have chosen to enter bankruptcy at an earlier date. In that situation, Boston Chicken's assets would not have been squandered on an unviable business plan (or on the defendants' compensation and fees), and the firm would not have been encumbered with additional debt obligations that it had no realistic chance of repaying. In summary, the complaint alleges that the defendants engaged in a course of conduct that plunged Boston Chicken deeper and deeper into insolvency.

In October 1998, Boston Chicken and various related entities filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. In May 2000, the bankruptcy court confirmed Boston Chicken's Third Amended Plan (Debtor's Plan), under which certain of Boston Chicken's assets were sold to the McDonald's Corporation, Boston Chicken was dissolved, and *996 the Trustee was appointed as the representative of the bankruptcy estates. The Trustee commenced a number of lawsuits, all of which are now consolidated into one proceeding in the United States District Court for the District of Arizona (the Trustee's Action).

Before Boston Chicken had entered bankruptcy, over 20 securities class actions were filed in the United States District Court for the District of Colorado. The class actions, which alleged various claims under state and federal securities laws and were based largely on the same conduct at issue in the Trustee's Action, were later consolidated into one proceeding in Colorado (the Class Action). The Class Action was transferred to the United States District Court for the District of Arizona in November 2002 and consolidated with the Trustee's Action

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                 Page 9
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

"for discovery and pretrial purposes only" in March 2003. However, in May 2003 the consolidation order was vacated and the Class Action was transferred back to Colorado, while the Trustee's Action remained in Arizona. The Class Action remains in Colorado, and is not before us.

During 2003, the Trustee reached settlements with three of the defendants in the Trustee's Action (collectively, including the Trustee, the Settling Parties): Bell Boyd & Lloyd (BB & L) and Pedersen & Houpt (P & H), both of which served as counsel to Boston Chicken, and Stephens, one of the Individual Defendants. The Trustee filed joint motions with each of the settling defendants seeking district court approval of these three settlements (Approval Motions). The proposed orders submitted with the Approval Motions contained provisions enjoining the non-settling defendants from pursuing certain claims against the settling defendants (bar orders), as well as provisions reducing any future judgment rendered in the Trustee's Action against the non-settling defendants by the pro rata share of fault attributable to each settling defendant (judgment reduction credits).

Nadhir, Peer Pedersen (another of Boston Chicken's directors), and the Underwriter Defendants (collectively, the Non-Settling Defendants), as well as certain other parties, objected to the Approval Motions. Their objections generally were not, however, focused on the fairness of the settlements or the terms of the proposed orders. Rather, they objected principally because each Approval Motion sought "findings of fact, a bar order, and a permanent injunction" against the Non-Settling Defendants, even though, they asserted, the district court "lack[ed] jurisdiction to do anything more than to dismiss the plan trustee's claims."

The Non-Settling Defendants presented two arguments in support of this jurisdictional challenge. First, they contended that the Trustee was in effect asserting claims of Boston Chicken's creditors, which it lacked standing to do under *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92

S.Ct. 1678, 32 L.Ed.2d 195 (1972). This same argument had been presented to the district court in connection with a motion to dismiss an earlier version of the complaint, but was rejected. *See Smith ex rel. Estates of Boston Chicken v. Arthur Andersen LLP,* 175 F.Supp.2d 1180, 1203 (D.Ariz.2001). Second, they argued that the Securities Litigation Uniform Standards Act of 1998 (SLUSA) deprived the district court of subject matter jurisdiction over the Trustee's Action. This argument, too, had already been rejected by the court in several different contexts.

The district court held two hearings on the Approval Motions. The first, held on August 19, 2003, addressed the Trustee's settlements with BB & L and Stephens. **\*997** The district court approved the settlements and overruled the jurisdictional objections. Later, the district court entered an "Approval and Bar Order" with respect to the BB & L settlement in the form proposed in the BB & L Approval Motion. The district court did not enter an Approval and Bar Order regarding the Stephens settlement. However, the record contains a minute entry dated August 19, 2003 indicating that the Stephens Approval Motion was granted.

A hearing on the P & H settlement was set for August 26, 2003. On that day, P & H filed a reply in support of its Approval Motion, which argued that the objecting defendants themselves had no standing to challenge the proposed settlement because "a non-settling defendant, in general, lacks standing to object to a partial settlement." *Waller v. Fin. Corp. of Am.,* 828 F.2d 579, 582 (9th Cir.1987). This was the first time the Settling Parties had challenged the Non-Settling Defendants' standing on this ground. At the hearing, the district court ruled that the Non-Settling Defendants "have no standing to object" to the Approval Motion, overruled the Non-Settling Defendants' jurisdictional objections, and granted the Approval Motion. The court later entered an Approval and Bar Order regarding the P & H settlement.

The Non-Settling Defendants appealed from effect-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                      Page 10
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

ively all the orders of the district court related to the three settlements, and we consolidated their appeals.

## II.

The Non-Settling Defendants raise the same jurisdictional objections based upon *Caplin* and SLUSA that they raised in response to the Approval Motions. However, the Settling Parties argue that we may not reach the Non-Settling Defendants' objections because (1) appellate jurisdiction does not exist over this appeal and (2) the Non-Settling Defendants lack standing to object to the settlements. We first address our appellate jurisdiction, and then the Non-Settling Defendants' standing.

### A.

[1] 28 U.S.C. § 1292(a)(1) provides appellate jurisdiction over "[i]nterlocutory orders of the district courts ... granting ... injunctions." Each of the two Approval and Bar Orders entered by the district court permanently enjoins the Non-Settling Defendants from asserting certain claims against the settling defendants. Although no Approval and Bar Order was entered in relation to the Stephens settlement, a minute entry indicates that the Stephens Approval Motion, which sought entry of a bar order, was granted. Because the Non-Settling Defendants appeal from the specific entry of a requested injunction, we have jurisdiction pursuant to section 1292(a)(1). *Paige v. California*, 102 F.3d 1035, 1038 (9th Cir.1996); *see also FDIC v. Geldermann, Inc.*, 975 F.2d 695, 697 (10th Cir.1992) ("Because the district court's bar order expressly enjoins the Defendants from suing the Settlors for contribution or indemnity, it is an 'interlocutory order[ ] ... granting ... injunctions ...' under 28 U.S.C. § 1292(a)(1)" (alterations in original)).

[2] However, the Non-Settling Defendants do not directly challenge the injunctions. They do not argue, for example, that the district court abused its discretion by entering the bar order. *Cf. Resolution*

*Trust Corp. v. Rice (In re Consol. Pinnacle W. Sec. Litig./Resolution Trust Corp.-Merabank Litig.)*, 51 F.3d 194, 197 (9th Cir.1995). Rather, they are using this appeal from the injunctions to challenge the Trustee's standing and the district court's subject matter jurisdiction. The question **\*998** therefore arises whether we have "pendent appellate jurisdiction" over these issues.

[3] "Under 28 U.S.C. § 1292(a)(1), we may exercise interlocutory appellate jurisdiction over the district court's ... injunction and pendent jurisdiction over any 'otherwise non-appealable ruling [that] is 'inextricably intertwined' with or 'necessary to ensure meaningful review of' the order properly before us on interlocutory appeal.' " *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1134 (9th Cir.2005) (citations omitted) (alterations in original). As in *Hendricks*, we need not decide whether the Trustee standing and SLUSA issues are "inextricably intertwined" with the injunctions, "because we conclude that 'review of [these two defenses] is necessary to ensure meaningful review of' the district court's ... injunction." *Id.* (alterations in original), *quoting Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

We have stated that "[r]esolution of subject matter jurisdiction ... is 'necessary to ensure meaningful review of' the district court's interlocutory rulings because if appellate courts lack jurisdiction, they cannot review the merits of these properly appealed rulings." *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir.), *amended by* 326 F.3d 1030 (9th Cir.2003); *see also Hendricks*, 408 F.3d at 1134; *Wong v. INS*, 373 F.3d 952, 960-61 (9th Cir.2004). Here, the Non-Settling Defendants characterize their arguments based upon *Caplin* as challenges to the Trustee's Article III standing; those arguments therefore implicate the district court's subject matter jurisdiction. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court

421 F.3d 989                                                                    Page 11
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

therefore lacks subject matter jurisdiction over the suit"). Similarly, the Non-Settling Defendants' SLUSA arguments challenge the district court's subject matter jurisdiction over the state-law claims in the Trustee's Action. We therefore have pendent jurisdiction over both of these issues, which "call[ ] into question the district court's '*authority to rule on a party's motion for a [n] ... injunction.*' " *Hendricks,* 308 F.3d at 1134 (emphasis in *Hendricks* ) (*quoting Meredith,* 321 F.3d at 816.

### B.

[4][5] The Settling Parties argue that the Non-Settling Defendants do not have standing to challenge the settlements because "a non-settling defendant, in general, lacks standing to object to a partial settlement." *Waller,* 828 F.2d at 582 (citations omitted). We review this issue de novo. *See id.*

[6] In *Waller,* we explained that there is "a recognized exception to the general principle barring objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.* at 583 (citations omitted). It is well established that such prejudice exists where a settlement "purports to strip [a non-settling defendant] of a legal claim or cause of action, an action for indemnity or contribution for example." *Id.* (citations omitted); *see also Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.),* 262 F.3d 1089, 1102 (10th Cir.2001); *In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 31(D.C.Cir.2000); *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir.1995); *Agretti v. ANR Freight Sys., Inc.,* 982 F.2d 242, 247 (7th Cir.1992); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.,* 912 F.2d 996, 1002 (8th Cir.1990).

[7] The Non-Settling Defendants contend that they have suffered prejudice *999 because, among other reasons, they are enjoined from pursuing indemni-

fication, contribution, and certain other claims. Furthermore, they argue that the judgment reduction credits do not fully eliminate this prejudice.

In opposition, the Settling Parties contend that the Non-Settling Defendants waived these arguments by failing to raise them in the district court. We disagree with this contention for two reasons. First, Nadhir's counsel *did* argue at the August 26, 2003 hearing on the P & H settlement that the Non-Settling Defendants had standing because the settlement stripped them of indemnity and contribution claims. Although the Non-Settling Defendants did not make one of the particular arguments they advance here, i.e., that the judgment reduction credits do not fully extinguish any harm caused by the bar orders, we will not preclude them from bolstering their defense to the Settling Parties' challenge to their standing. *See Lake v. Lake,* 817 F.2d 1416, 1424 (9th Cir.1987) (where defendant raised issue of personal jurisdiction in district court and plaintiffs responded, defendant could not prevent plaintiffs from arguing that issue on appeal or "strengthening their argument").

[8][9] Second, although we usually do not consider issues raised for the first time on appeal, there are exceptions to this rule. For example, we will consider such an issue where "there are exceptional circumstances why the issue was not raised in the trial court." *United States v. Echavarria-Escobar,* 270 F.3d 1265, 1267-68 (9th Cir.2001); *see also United States v. Antonakeas,* 255 F.3d 714, 721 (9th Cir.2001). We conclude that exceptional circumstances exist in this case. The Settling Parties did not cite the general rule, stated in *Waller,* that nonsettling defendants lack standing to challenge partial settlements until August 26, 2003, which was the day of the hearing on the P & H settlement and one week after the hearing on the BB & L and Stephens settlements. It is therefore unsurprising that the Non-Settling Defendants did not invoke the "formal legal prejudice" exception to the general rule prior to that time. Given the Settling Parties' own torpor in challenging the Non-Settling Defend-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                                      Page 12
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

ants' standing, we will permit the Non-Settling Defendants to argue that the judgment reduction credits do not eliminate the prejudice caused by the bar orders. To hold otherwise would create an incentive for a party to withhold its challenges to its opponent's standing until the last possible moment and then contend that its opponent "waived" any response to those challenges by not anticipating and countering them in the district court.

[10] The Settling Parties also argue that the Non-Settling Defendants waived the argument that they have standing to challenge the settlements by not making that argument in their opening briefs. However, we may consider an issue not raised in the appellant's opening brief if it is raised in the appellee's brief. *See, e.g., Koerner v. Grigas,* 328 F.3d 1039, 1048(9th Cir.2003); *United States v. Franco-Lopez,* 312 F.3d 984, 993 n. 6 (9th Cir.2002). That is the case here. We therefore now proceed to consider the Non-Settling Defendants' arguments that they have standing.

[11] As explained above, one exception to the general rule that non-settling defendants lack standing to challenge settlements is that standing exists where the settlement purports to strip the non-settling defendant of a "legal claim or cause of action, an action for indemnity or contribution for example." *Waller,* 828 F.2d at 583 (citations omitted). The Settling Parties contend, in effect, that there is an exception to this exception, under which a **\*1000** non-settling defendant who is subject to a bar order will nonetheless lack standing if the settlement includes a "judgment reduction credit" reducing any subsequent judgment against the non-settling defendants by the proportion of fault attributable to the settling defendants. In support of this argument, the Settling Parties cite *Zupnick v. Fogel,* 989 F.2d 93 (2d Cir.1993) and *School District of Lancaster v. Lake Asbestos of Quebec Ltd. (In re School Asbestos Litigation),* 921 F.2d 1330, 1333 (3d Cir.1990).

[12] Neither *Zupnick* nor *School Asbestos Litigation* holds that a judgment reduction credit *always*

eliminates any formal legal prejudice caused by a bar order. Indeed, the same court that decided *School Asbestos Litigation* held in a later case that non-settling defendants *did* have standing to object to a settlement where the district court had imposed a bar order, *see Eichenholtz,* 52 F.3d at 482-83 & n. 8, even though the settlement agreement contained a "proportionate fault judgment reduction provision" similar to that involved here, *see id.* at 481. We interpret *Zupnick* and *School Asbestos Litigation* as standing for the proposition that a judgment reduction credit may divest non-settling defendants of standing if it is written in such a way as to ameliorate any harm caused by other provisions in the settlement agreement. *See Zupnick,* 989 F.2d at 99 & n. 3 (no standing where settlement agreement "fully protect[ed]" the non-settling defendants' contribution and indemnity rights by providing that "Plaintiffs and the Class agree to reduce or satisfy any judgment obtained either by settlement or after trial against Non-Settling Defendants, or any of them, to the extent necessary to extinguish any claims of such Non-Settling Defendants for indemnity or contribution from [the settling defendant], as may be determined by the Court or jury"); *Sch. Asbestos Litig.,* 921 F.2d at 1333 (similar). We will therefore examine the specific provisions at issue to decide whether the Non-Settling Defendants have standing.

The P & H Approval and Bar Order provides in part (emphasis added):

5. The non-settling parties are *permanently barred and enjoined* from asserting or continuing to prosecute, either directly or in any other capacity, any and all Claims (as defined in the Settlement Agreement) whether directly, indirectly, derivatively, representatively, or in any other capacity (excluding claims to enforce the terms of the Settlement Agreement), against P & H. The Released Claims are compromised, settled, and released as against P & H by virtue of this Approval and Bar Order.

6. By virtue of the "good faith" nature of the Set-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                Page 13
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

tlement Agreement approved by this Court, P &
H is discharged from all Released Claims for
contribution, indemnification or the like that have
been or may later be brought by or on behalf of
any of the non-settling parties based upon, relat-
ing to or arising out of the Released Claims as
defined in the Settlement Agreement. Accord-
ingly, the Other Defendants are *permanently
barred, enjoined and restrained* from asserting or
continuing to prosecute any such Claim, however
styled, *whether for contribution, indemnity or
otherwise,* and whether arising under state, feder-
al or common law against P & H, *based upon,
arising out of, or related to the Claims.*

7. With respect to any judgment that might be
entered on any cause of action or claim in this ac-
tion, or any pending future adversary proceeding,
contested matter or civil action in which the
Trustee is also a party, in which there is or may
be a determination of fault on the *1001 part of P
& H, including but not limited to a determination
of fault based on joint and several liability, the
non-settling parties shall receive a pro rata judg-
ment reduction credit. In recognition of the Set-
tlement Payment, and in light of the Parties' in-
tent to provide P & H with comprehensive, full
and complete finality with regard to any and all
claims that could be asserted against P & H as a
result of his conduct or prior dealings with the
Debtor or the Debtors' respective bankruptcy es-
tates, *any resulting judgment reduction credit
shall be applied so as to preclude recovery by
any party for any amount of pro rata fault attrib-
utable to P & H....*

Similar language is contained in the BB & L Ap-
proval and Bar Order and the proposed form of or-
der submitted by Stephens.

We conclude that the judgment reduction credit
does not eliminate the formal legal prejudice caused
by the bar orders. The Non-Settling Defendants are
enjoined from asserting any claim for "contribution,
indemnity or otherwise" that is "based upon, arising
out of, or related to" the released claims. Although

the judgment reduction credit, which is equal to
"any amount of pro rata fault attributable to" the
settling defendants, might offset the Non-Settling
Defendants' loss of potential contribution claims, it
is not clear that it would compensate them for the
elimination of "indemnity or other [ ]" claims.

That the Non-Settling Defendants have not articu-
lated the precise nature of the "indemnity or other[
]" claims they are barred from asserting does not
demonstrate a lack of formal legal prejudice. We
are not reviewing an order entering summary judg-
ment or dismissing a complaint, where a more
searching inquiry into the factual and legal basis of
a claim might be productive. Rather, we are de-
termining whether the Non-Settling Defendants
have standing, and we have stated that a non-
settling defendant has standing where a settlement
purports to strip it "of a legal claim or cause of ac-
tion." *Waller,* 828 F.2d at 583. The plain language
of the Approval and Bar Orders extends beyond
contribution claims, and we cannot conclude at this
stage that the language precluding "indemnity or
other[ ]" claims, which the Settling Parties reques-
ted the district court to include in the Approval and
Bar Orders, is of no practical effect. Moreover, the
Non-Settling Defendants have had little opportunity
to identify in concrete terms the exact ways in
which the bar orders prejudice them because the
Settling Parties did not assert challenges to the
Non-Settling Defendants' standing under *Waller* un-
til the day of the hearing on the P & H settlement.
We hold that the Non-Settling Defendants had
standing to object to the settlements.

III.

We turn now to the merits of the Non-Settling De-
fendants' challenges to the district court's jurisdic-
tion. We first address their attacks on the Trustee's
standing, and then consider their SLUSA argu-
ments.

A.

421 F.3d 989                                                                                    Page 14
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

[13] The Non-Settling Defendants contend that the Trustee lacks standing to assert the claims in the Trustee's Action pursuant to the Supreme Court's *Caplin* decision. We review this issue de novo. *See Williams v. Cal. 1st Bank*, 859 F.2d 664, 666 (9th Cir.1988).

We emphasize that the only issue before us is whether the district court had authority to grant the Approval Motions. The Non-Settling Defendants argue that such authority was absent because (1) *Caplin* **\*1002** divests the Trustee of standing; (2) *Caplin* and its progeny establish constitutional principles of standing and therefore implicate subject matter jurisdiction, *see City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197, 1199 (9th Cir.2004) (explaining that standing involves both Article III limitations and non-constitutional limitations, and that the "non-constitutional standing inquiry is not whether there is a 'case or controversy' under Article III, and thus does not go to our subject matter jurisdiction"); and (3) since the requirements of Article III have not been met, the district court not only lacked jurisdiction to adjudicate the Trustee's claims, but could not even grant the interlocutory Approval Motions.

We address first the issue of the Trustee's standing and then address the Non-Settling Defendants' principal objections.

### I.

[14][15][16] A bankruptcy trustee is the representative of the bankrupt estate, and has the capacity to sue and be sued. *See*11 U.S.C. § 323. Among the trustee's duties is the obligation to "collect and reduce to money the property of the estate." *Id.*§ 704(1). The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case,"*id.*§ 541(a)(1), including the debtor's "causes of action." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (internal quotation marks and citation omit-

ted). Thus, "[u]nder the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118(2d Cir.1991) (citations omitted).

[17] However, "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Id.* (citation omitted); *see also Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir.1994) ("[T]he trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor"). This principle derives from the Supreme Court's decision in *Caplin*,"in which the Court concluded that a reorganization trustee under Chapter X had no standing under the old Bankruptcy Act to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against a third party." *Williams*, 859 F.2d at 666; *see also Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 527 (9th Cir.1976) (stating that *Caplin* held that "a reorganization trustee has no standing to maintain [an] action on the part of any person or entity other than his debtor corporation"). As we explained in *Williams*, the holding of *Caplin* remains valid under the current version of the Bankruptcy Code, and is equally applicable to both reorganization and liquidation trustees. *See* 859 F.2d at 666-67.

[18] Although the line between "claims of the debtor," which a trustee has statutory authority to assert, and "claims of creditors," which *Caplin* bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct. *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir.1995) (explaining that a bankruptcy trustee may sue only to redress injuries to the debtor in bankruptcy). If the debtor suffered an injury, the trustee

421 F.3d 989                                                                                                    Page 15
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

has standing to pursue a claim seeking to rectify such injury. But, "[w]hen a third party has injured not the *1003 bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party." *Steinberg,* 40 F.3d at 893.

Here, the Trustee alleges that the defendants breached contracts with or duties owed to Boston Chicken, and that if they had not concealed Boston Chicken's financial condition from its outside directors and the investing public, the firm might have filed for bankruptcy more promptly. In that situation, additional assets might not have been spent on a failing business. This allegedly wrongful expenditure of corporate assets qualifies as an injury to the firm which is sufficient to confer standing upon the Trustee. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 350 (3d Cir.2001) ("[P]rolonging an insolvent corporation's life through bad debt may ... cause the dissipation of corporate assets. Th[is] harm[ ] can be averted, and the value within an insolvent corporation salvaged, if the corporation is dissolved in a timely manner, rather than kept afloat with spurious debt"). Therefore, we conclude that the Trustee has standing.

### 2.

Unpersuaded, the Non-Settling Defendants present a host of challenges to the Trustee's standing, all of which suffer from a common defect: a failure to refute the argument that the Trustee is seeking to redress injuries suffered by Boston Chicken as a result of the defendants' alleged conduct. We address their principal arguments in turn.

The Non-Settling Defendants first argue that our decision in *Williams* compels the conclusion that the Trustee lacks standing because the creditors are the "real parties in interest" in the Trustee's Action. In *Williams,* we held that a trustee lacked standing to assert claims that had been assigned to the trustee by the debtor's investors because, among other

reasons, "the assignments notwithstanding, the investors plainly remain[ed] the real parties in interest in[the trustee's] actions." *Williams,* 859 F.2d at 666. Here, in contrast, the Trustee is not attempting to assert claims that were assigned to him by Boston Chicken's creditors, but rather seeks to rectify injuries to Boston Chicken itself. Nothing in *Williams* suggests that creditors are the "real parties in interest" in an action pursuing compensation for injuries to the corporate debtor.

Second, the Non-Settling Defendants argue that "if [Boston Chicken] took on more debt than it could repay, it is [Boston Chicken's] creditors-the ones who actually lost that money by lending it to [Boston Chicken]-who were injured." In their view, the additional debt that Boston Chicken incurred and cannot now repay as a result of the defendants' alleged conduct does not establish a harm to Boston Chicken remediable by the Trustee. In response, the Trustee argues that he has alleged a cognizable harm to Boston Chicken. He invokes the "deepening insolvency" theory, exemplified by the Third Circuit's decision in *Lafferty,* under which an insolvent corporation is deemed to suffer a "distinct and compensable injury when it continues to operate and incur more debt." *Kittay v. Atl. Bank (In re Global Serv. Group LLC),* 316 B.R. 451, 457 (Bankr.S.D.N.Y.2004); *see also Lafferty,* 267 F.3d at 347 (stating that "deepening insolvency" refers to "an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life").

[19] We need not make any general pronouncements on the deepening insolvency theory, not least because it is difficult to grasp exactly what the theory entails.*1004 See Limor v. Buerger (In re Del-Met Corp.),* 322 B.R. 781, 807(Bankr.M.D.Tenn.2005) (pointing out the "lack of definition of the developing theory of deepening insolvency" and discussing cases and commentary). We do, however, agree with the Third Circuit's observation in *Lafferty* that "prolonging an insolvent corporation's life through bad debt may" dissipate

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                    Page 16
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

corporate assets and thereby harm the value of corporate property. 267 F.3d at 350. Thus, we agree that the complaint states a cognizable harm to Boston Chicken when it alleges that the defendants "prolonged" the firm's existence, causing it to expend corporate assets that would not have been spent "if the corporation [had been] dissolved in a timely manner, rather than kept afloat with spurious debt." *Id.* In so holding, we do not opine whether the incurrence of additional debt that cannot be repaid, in and of itself, constitutes a corporate injury remediable by a trustee. We rely only on the dissipation of assets in reaching the conclusion that Boston Chicken was harmed.

[20] It is, of course, true that the dissipation of assets limited the firm's ability to repay its debts in liquidation. Acknowledgment of this fact is not, however, a concession that only the creditors, and not Boston Chicken itself, have sustained any injury. Instead, it is a recognition of the economic reality that any injury to an insolvent firm is necessarily felt by its creditors. *See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.),* 208 B.R. 288, 300 (Bankr.D.Mass.1997) ("In complaining that directors authorized a transaction which unduly weakened Healthco, the Trustee is not asserting the claim of creditors. He alleges Healthco was the victim of poor management causing damage to the corporation which necessarily resulted in damage to its creditors by diminishing the value of its assets and increasing its liabilities"). Thus, for example, if corporate directors mismanage an insolvent firm and cause it injury, the creditors will feel that injury indirectly. *See Prod. Res. Group, LLC v. NCT Group, Inc.,* 863 A.2d 772, 776 (2004) (stating that even when acts of mismanagement "occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims"). The existence of such indirect injury to creditors notwithstanding, it is "axiomatic" that a trustee has authority to bring "actions against the debtor's officers and directors

for breach of duty or misconduct." *Koch Ref. v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1348 (7th Cir.1987), citing *Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *see also La. World Exposition v. Fed. Ins. Co.,* 858 F.2d 233, 246 (5th Cir.1988); *Mixon v. Anderson (In re Ozark Rest. Equip. Co.),* 816 F.2d 1222, 1225 (8th Cir.1987); *Delgado Oil Co. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986). Moreover, neither our own decision in *Williams,* nor any of the other decisions upon which the Non-Settling Defendants principally rely, *see Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.),* 336 F.3d 94 (2d Cir.2003); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085(2d Cir.1995); *E.F. Hutton & Co. v. Hadley,* 901 F.2d 979 (11th Cir.1990); *Mixon,* 816 F.2d 1222, are inconsistent with this analysis, as none of these decisions hold that conduct causing an insolvent debtor corporation to expend its assets injures only the creditors and not the corporation.

Third, the Non-Settling Defendants point out that if the Trustee succeeds in holding the defendants liable and distributes the recovery to Boston Chicken's *1005 creditors, some creditors might make out better than if they had brought their own direct fraud claims against the defendants, while others might fare worse. This may be true, but it is irrelevant to the question of the Trustee's standing. As Nadhir himself explains in his brief, this supposed disparity is simply a function of the reality that any recovery in the Trustee's Action would be distributed to creditors according to the priority schedule set forth in the Bankruptcy Code. This does not show that Boston Chicken itself was not injured by the defendants' conduct.

Fourth, the Underwriter Defendants argue that the Trustee is asserting claims barred by *Caplin* because the "Trustee's damage claim here is measured in terms of Boston Chicken's unpaid debt at the time of its bankruptcy filing, instead of any actual harm to the corporation." In response, the Trustee cites dicta in several cases suggesting that the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                                          Page 17
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

amount of debt incurred following a false represent-ation of solvency may be a valid measure of harm. *See Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n,* 274 F.3d 924, 935 (5th Cir.2001); *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Health-care, Inc.),* 269 B.R. 721, 728 (Bankr.S.D.Fla.2001). We need not and do not ex-press any opinion on the appropriate measure of damages in this case. The only question before us is whether the Trustee has sufficiently alleged an in-jury to Boston Chicken, as distinguished from the question of how to measure the extent of that in-jury. *See Schnelling v. Thomas (In re Agribiotech, Inc.),* 319 B.R. 216, 224 (D.Nev.2004)

("Whether damages to the creditors is a proper measure of damages to the debtor is a separate question from whether the Trustee has standing to assert claims that allege the defendant harmed the debtor"). Because Boston Chicken has allegedly suffered an injury, the Trustee has standing. Should the Trustee succeed in holding the defendants liable on any of the claims in the Trustee's Action, ques-tions regarding the proper measure of damages will be addressed by the district court at that time.

[21] Finally, the Non-Settling Defendants argue that any claims in the Trustee's Action alleging that the Individual Defendants breached their fiduciary duties while Boston Chicken was insolvent must be brought by the creditors to whom those duties were owed and not the Trustee. In advancing this argu-ment, the Non-Settling Defendants rely on the "insolvency exception," common to the corporate law of many states, under which directors of insolv-ent firms owe fiduciary duties to creditors. *See, e.g., Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d 784, 787 (Del.Ch.1992) ("[W]hen the insolvency excep-tion does arise, it creates fiduciary duties for direct-ors for the benefit of creditors"). This exception gives creditors of an insolvent firm standing to as-sert that directors "breached their fiduciary duties by improperly harming the economic value of the firm, to the detriment of the creditors who had le-gitimate claims on its assets." *Prod. Res. Group,*

863 A.2d at 792.

Although creditors may attain standing to assert fi-duciary duty claims upon a firm's insolvency as a matter of state corporate law, it does not follow that a trustee, who represents the debtor, lacks standing to assert such claims as a matter of federal bank-ruptcy law. Again, the ultimate question in deter-mining whether a trustee has standing is whether the debtor corporation has been injured. Even when a firm is insolvent, it may be injured by breaches of fiduciary duty. As the Delaware Court of Chancery has explained:

[E]ven in the case of an insolvent firm, poor de-cisions by directors that lead to a loss of corpor-ate assets and are alleged *1006 to be a breaches of equitable fiduciary duties remain harms to the corporate entity itself.... The firm's insolvency simply makes the creditors the principal constitu-ency injured by any fiduciary breaches that di-minish the firm's value and logically gives them standing to pursue these claims to rectify that in-jury. Put simply, when a director of an insolvent corporation, through a breach of fiduciary duty, injures the firm itself, the claim against the dir-ector is still one belonging to the corporation.

....

Whether a firm is solvent or insolvent, it-and not a constituency such as its stockholders or its creditors-owns a claim that a director has, by fail-ing to exercise sufficient care, mismanaged the firm and caused a diminution to its economic value.

*Id.* at 792-93 (footnotes omitted).

Thus, the Non-Settling Defendants might be correct that Boston Chicken's creditors could have asserted fiduciary duty claims outside the bankruptcy con-text similar to those pressed by the Trustee, but this does not prove that the Trustee is asserting "creditors' claims" within the meaning of *Caplin.* Rather, it is simply because state law often permits

421 F.3d 989                                                                                           Page 18
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

creditors to pursue derivative claims on an insolvent corporation's behalf when the corporation itself has been injured by breaches of fiduciary duty. Because such claims involve injury to the debtor, a bankruptcy trustee has standing to pursue them.

We stress that our ruling here is a narrow one. Because the only issue before us is whether the district court had jurisdiction, we hold only that the Trustee has standing to assert the claims alleged in the Trustee's Action and do not opine on any issues related to the merits of those claims. *See Cardenas v. Anzai,* 311 F.3d 929, 933-34 (9th Cir.2002) (citing *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) for the proposition that the "question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to hear the controversy, is separate from the question of whether a plaintiff has a cause of action"); *Loyd v. Paine Webber, Inc.,* 208 F.3d 755, 758 & n. 3 (9th Cir.2000) (per curiam) (holding that trustee had standing because his complaint sufficiently alleged that defendant law firm's conduct was a cause of injury to the debtor corporation, even though the complaint did not state a claim for legal malpractice, and explaining that "[w]hether [the law firm's] conduct rises to the level of legal malpractice goes to the merits of the lawsuit, not to the preliminary question of standing"). For example, although we hold that the dissipation of assets constitutes an injury to Boston Chicken, we express no opinion on whether the complaint states a valid claim for relief based on that injury, whether the Trustee must prove intentional or merely negligent conduct to succeed on any of his claims, or whether certain of the Trustee's fiduciary duty claims are affected by the business judgment rule. In addition, as stated above, we do not decide what measure of damages might be appropriate if the defendants are found liable on any claims. For present purposes, we need hold only that *Caplin* does not divest the Trustee of standing.

                                    B.

[22] We now turn to the Non-Settling Defendants' contentions based upon SLUSA. We review the district court's interpretation of a statute de novo. *SEC v. McCarthy,* 322 F.3d 650, 654 (9th Cir.2003).

[23] SLUSA is a "federal statute that preempts state-law securities actions" under certain circumstances. *1007*United Investors Life Ins. Co. v. Waddell & Reed Inc.,* 360 F.3d 960, 962 (9th Cir.2004). SLUSA amends both the Securities Act of 1933 and the Securities Exchange Act of 1934. The 1933 Act amendments are codified at 15 U.S.C. § 77p. The 1934 Act amendments, which are functionally identical, are codified at 15 U.S.C. § 78bb. We cite here only the 1934 Act codification. SLUSA provides in part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security[.]

15 U.S.C. § 78bb(f)(1)(A).

The Non-Settling Defendants argue that the Trustee's Action is a "covered class action" to which this provision applies. They contend that SLUSA does not merely provide an affirmative defense of preemption to the Trustee's state-law claims, but divests the district court of subject matter jurisdiction over those claims and required the court to dismiss the entire case at the moment SLUSA applied. They concede that no federal court has held that SLUSA applies this way, but argue that this result is required by the language of SLUSA itself-namely, its command that no "covered class action" that comes within its scope "may be maintained" in any federal or state court. We need not decide whether SLUSA is jurisdictional in this sense because even if it is, SLUSA did not require dismissal.

Under SLUSA, either a "single lawsuit" or "group

421 F.3d 989                                                                                           Page 19
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

of lawsuits" can qualify as a "covered class action." *Id.* § 78bb(f)(5)(B)(i)-(ii). The Non-Settling Defendants invoke both of these definitions in their challenge to the Trustee's Action, and we consider each in turn.

1.

[24] Under SLUSA, a "covered class action" includes a "single lawsuit" in which

damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members[.]

*Id.* § 78bb(f)(5)(B)(i)(I). The Non-Settling Defendants contend that the Trustee's Action is brought "on behalf of more than 50 persons or prospective class members," i.e., the beneficiaries of the plan trust, because the Trustee does not qualify as one "person" under the following definition:

For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

*Id.* § 78bb(f)(5)(D).

Thus, the issue is whether the Trustee was "established for the purpose of participating in the action"; if it was not, then the Trustee is a single "person," and the Trustee's Action is not a "covered class action" under the above definition.

[25] We are aware of no federal appellate decision interpreting SLUSA's definition of "person." However, one district court has suggested that an entity is not one person if its "primary purpose" is to pursue causes of action. *See Cape Ann Investors*

*LLC v. Lepone,* 296 F.Supp.2d 4, 10 (D.Mass.2003). We adopt this sensible definition. The Non-Settling Defendants' contrary interpretation, under which any ***1008** entity established "at least in part" for the purpose of pursuing litigation is not a "person," is inconsistent with the statute's plain language, which provides that an entity "shall be treated as one person" if the entity is not "established for *the* purpose of participating in the action."Moreover, that interpretation could potentially deprive many bankruptcy trustees of the ability to pursue state-law securities fraud claims on behalf of an estate. Nothing in SLUSA suggests that Congress intended to work such a radical change in the bankruptcy laws.

We agree with the Settling Parties that pursuing causes of action is not the Trustee's "primary" purpose. The Debtors' Plan, under which the Trustee was appointed, provides that the Trustee will "act as the Estates' representative for *all purposes,* and will be responsible for (i) controlling and managing the consideration received from [McDonald's] and all Retained Assets, (ii) monetizing Retained Assets, (iii) filing, prosecuting and settling claim objections, (iv) administering the disputed claim reserve, (v) prosecuting and settling Estate causes of action, (vi) making distributions in accordance with the terms of the Plan, and (vii) winding-up and closing the Estates" (emphasis added). Because the Trustee is to "act as the Estates' representative for all purposes," and not just for the purpose of pursuing causes of action, the Trustee is one person, and the Trustee's Action is not a "single lawsuit" barred by SLUSA.

2.

[26] The Non-Settling Defendants also rely on the provision in SLUSA defining "covered class action" to include

any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
**(Cite as: 421 F.3d 989)**

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)(ii). The Non-Settling Defendants advance a number of different arguments that rely on this definition. Chief among these is the assertion that, when the Trustee's Action was consolidated with the Class Action in Arizona for "discovery and pretrial purposes only" for several months in 2003, the two actions became a "group of lawsuits" covered by this definition. In the Non-Settling Defendants' view, the fact that the district court vacated the order consolidating the cases and transferred the Class Action back to Colorado is irrelevant, because the district court was powerless to do anything other than dismiss the Trustee's Action at the instant SLUSA applied.

The critical flaw in their argument, however, is its assumption that we may consider the Class Action in determining whether the Trustee's Action is part of a "group of lawsuits" barred by SLUSA. That assumption cannot be squared with the provision governing the applicability of SLUSA's amendments:

APPLICABILITY.-The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act.

Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105-353, § 101(c), 112 Stat. 3227, 3233 (1998).

As several courts have recognized, this language "amounts to an express proscription that forbids the application of SLUSA to any case pending on the day SLUSA came into force," which was November 3, 1998. W.R. Huff Asset Mgmt. Co. v. BT Sec. Corp., 190 F.Supp.2d 1273, 1276 (N.D.Ala.2001); see also *1009 W.R. Huff Asset Mgmt. Co. v. Kohlberg Kravis Roberts & Co., 234 F.Supp.2d 1218, 1222 (N.D.Ala.2002) ("This language certainly

qualifies as an 'express command' that prevents application of SLUSA to cases pending on the date of SLUSA's enactment"); In re BankAmerica Corp. Sec. Litig., 95 F.Supp.2d 1044, 1046 n. 2 (E.D.Mo.2000) (stating that SLUSA "does not apply to suits filed prior to November 3, 1998, the effective date of the Act"). The actions comprising the Class Action were filed and consolidated before November 3, 1998. Therefore, the applicability provision commands that SLUSA "shall not affect or apply" to the Class Action.

If the Non-Settling Defendants are correct that the Trustee's Action and Class Action are a "group of lawsuits" meeting the definition of a "covered class action" precluded by SLUSA, dismissal would be required not only of the Trustee's Action but of the Class Action as well. See 15 U.S.C. § 78bb(f)(1) (providing that "[n]o covered class action" meeting certain requirements "may be maintained in any State or Federal court"). This, of course, would violate SLUSA's applicability provision.

Therefore, we will not consider the Class Action in deciding whether the Trustee's Action is part of a "group of lawsuits" that qualify as a "covered class action." Since the Non-Settling Defendants have not argued that there is another lawsuit which, together with the Trustee's Action, is a "group of lawsuits" constituting a "covered class action," SLUSA does not bar the Trustee's Action.

In challenging this analysis, the Non-Settling Defendants cite decisions holding that SLUSA applies to conduct that occurred prior to SLUSA's enactment. See, e.g., Prof'l Mgmt Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 804 (8th Cir.2003) ("We thus conclude SLUSA applies to all actions commenced after its enactment, even if the challenged conduct predates SLUSA"). The question here is not, however, whether SLUSA can apply to conduct that occurred before November 3, 1998, but whether it can apply to an action that was filed before the effective date. That question is answered by SLUSA's applicability provision.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

421 F.3d 989                                                                                         Page 21
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45 Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05 Daily Journal
D.A.R. 10,623
(Cite as: 421 F.3d 989)

[27] It is not clear whether the Non-Settling De-
fendants argue that, even if the Class Action is dis-
regarded, the several lawsuits that were consolid-
ated into the Trustee's Action are themselves a
"group of lawsuits" which constitute a "covered
class action." Assuming they do make this argu-
ment, they are wrong. A group of lawsuits will not
constitute a covered class action if it does not seek
damages "on behalf of more than 50 persons." 15
U.S.C. § 78bb(f)(5)(B)(ii)(I). Because the Trustee
is a single person, *see* Part III.B.1, *supra,* the Trust-
ee's Action is not a group of lawsuits which quali-
fies as a covered class action. SLUSA does not re-
quire dismissal of the Trustee's Action.

**AFFIRMED.**

C.A.9 (Ariz.),2005.
Smith v. Arthur Andersen LLP
421 F.3d 989, Fed. Sec. L. Rep. P 93,341, 45
Bankr.Ct.Dec. 58, 05 Cal. Daily Op. Serv. 7832, 05
Daily Journal D.A.R. 10,623

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.