1          UNITED STATES BANKRUPTCY COURT

2               DISTRICT OF NEVADA

3                LAS VEGAS, NEVADA

4    In re:  USA COMMERCIAL MORTGAGE  )  E-Filed:  11/21/08
     COMPANY,                         )
5                                     )
              Debtor.                 )  Case No.
6                                     )  BK-S-06-10725-LBR
     _____)  Chapter 11
7

8

9

10

11            PARTIAL TRANSCRIPT OF PROCEEDINGS
                            OF
12   MOTION TO APPROVE COMPROMISE UNDER RULE 9019 APPLICATION
              TO COMPROMISE AND SETTLE CONTROVERSIES
13      WITH BEADLE, McBRIDE, EVANS & REEVES, LLP, ET AL.,
                           AND
14   MOTION TO APPROVE COMPROMISE UNDER RULE 9019 APPLICATION
              TO COMPROMISE AND SETTLE CONTROVERSIES
15       WITH PIERCY, BOWLER, TAYLOR & KERN, P.C.
                         VOLUME 1
16         BEFORE THE HONORABLE LINDA B. RIEGLE
              UNITED STATES BANKRUPTCY JUDGE
17

18           Tuesday, November 18, 2008

19                 9:30 a.m.

20

21

22

23   Court Recorder:      Helen C. Smith

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

2

```
1     APPEARANCES:

2     For the USACM           ALLAN B. DIAMOND, ESQ.
      Liquidating Trust:      Diamond McCarthy, LLP
3                             Two Houston Center
                              909 Fannin Street
4                             Fifteenth Floor
                              Houston, Texas 77010
5
                              JOHN C. HINDERAKER, ESQ.
6                             Lewis and Roca, LLP
                              One South Church Avenue
7                             Suite 700
                              Tucson, Arizona 85701
8
                              P. JASON COLLINS, ESQ.
9                             Diamond McCarthy, LLP
                              6504 Bridgepoint Parkway
10                            Suite 400
                              Austin, Texas 78730
11
      For Various Lender      DAVID A. COLVIN, ESQ.
12    Defendants:             Marquis & Aurbach
                              10001 Park Run Drive
13                            Las Vegas, Nevada 89145

14    For Fiesta Development, OGONNA M. ATAMOH, ESQ.
      Inc., Ashby USA, LLC,   Santoro, Driggs, Walch, Kearney,
15    Richard K. Ashby,         Holley & Thompson
      Random Developments,    400 South Fourth Street
16    LLC, and Ashby          Third Floor
      Development Company,    Las Vegas, Nevada 89101
17    Inc.:

18    For the Petersen        JOHN F. O'REILLY, ESQ.
      Family:                 TIMOTHY R. O'REILLY, ESQ.
19                            O'Reilly Law Group, LLC
                              325 South Maryland Parkway
20                            Las Vegas, Nevada 89101

21                            STEVEN J. KATZMAN, ESQ.
                              Bienert, Miller, Weitzel & Katzman, PLC
22                            115 Avenida Miramar
                              San Clemente, California 92672
23
      For Stan Fulton:        JOHN F. O'REILLY, ESQ.
24                            O'Reilly Law Group, LLC
                              325 South Maryland Parkway
25                            Las Vegas, Nevada 89101
```

3

```
 1    APPEARANCES (Cont.):

 2    For the United States  AUGUST B. LANDIS, ESQ.
      Trustee:               Office of the United States Trustee
 3                           300 Las Vegas Boulevard South
                             Suite 4300
 4                           Las Vegas, Nevada 89101

 5    For Beadle, McBride,   GARY P. SINKELDAM, ESQ.
      Evans & Reeves, LLP:   Law Office of Gary P. Sinkeldam
 6                           618 South Seventh Street
                             Las Vegas, Nevada 89101
 7
      For Piercy, Bowler,    VINCENT O'GARA, ESQ.
 8    Taylor & Kern, P.C.:   Murphy, Pearson, Bradley & Feeney, P.C.
                             88 Kearny Street
 9                           Tenth Floor
                             San Francisco, California 94108
10
      For USA Capital        P. JASON COLLINS, ESQ.
11    Diversified First      Diamond McCarthy, LLP
      Trust Deed Fund,       6504 Bridgepoint Parkway
12    LLC:                   Suite 400
                             Austin, Texas 78730
13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1              (Court previously convened at 09:39:05 a.m.)

2              (Partial transcript at 10:04:22 a.m.)

3              THE COURT:  All right.  Skipping to item No. --

4     that's a 10:30 matter.  Okay.  All right.

5         Next is the Docket No. 2 which is the Piercy, Bowler

6     motion to approve compromise.

7         (Colloquy not on the record.)

8              MR. COLLINS:  Good morning, your Honor.

9     Jason Collins on behalf of USACM Liquidating Trust.

10             THE COURT:  Was I provided --

11        (Colloquy not on the record.)

12             THE COURT:  -- with a copy of the settlement

13    agreement?

14             MR. COLLINS:  No, your Honor.  We have a copy of that

15    here that is available for your inspection in camera.

16             THE COURT:  Well, I'm not going to approve --

17             MR. COLLINS:  It's --

18             THE COURT:  -- this agreement today.  I mean, the

19    utter audacity of suggesting that I'm supposed to approve it

20    under 9019 which is a part of the demand and then approve a bar

21    order without even bothering to give me a copy of the

22    settlement agreement.

23             MR. COLLINS:  Your Honor, the condition of settlement

24    in this case and the only avenue that USACM Trust or

25    Diversified had in order to get the settling party to agree to

5

1    settlement was to agree to maintain the confidentiality of the

2    settlement amount itself.

3            THE COURT:  Well --

4            MR. COLLINS:  And so --

5            THE COURT:  -- let me just say this.  I think

6    Piercy, Bowler's attitude in this case -- and I'm sure it's

7    their insurance counsel -- is troubling to me.

8      It sort of reminds me of I guess attorneys who are

9    experienced attorneys, but who think they can get something in

10    one case, and, therefore, they have the right to get it in

11    every case regardless of whether or not the facts and the

12    circumstances fit it.

13      I am hard-pressed to understand why -- and this will be

14    discussed in the next case -- how a bar order would even be

15    appropriate in a case like this.

16      But, more importantly, the audacity of suggesting it has

17    to be confidential and demanding that this Court give you a

18    9019 ruling is absurd.

19            MR. COLLINS:  Well --

20            THE COURT:  So we can continue this or I can deny it.

21            MR. COLLINS:  Well, your Honor, we would respectfully

22    request that you would --

23            THE COURT:  I mean, I appreciate the efforts the

24    Funds --

25            MR. COLLINS:  Yeah.

6

1             THE COURT:  -- have made, and this is partly

2     insurance counsel this is coming from.

3             MR. COLLINS:  Well --

4             THE COURT:  And it's a nonsense insurance-counsel

5     approach.

6             MR. COLLINS:  Well, your Honor, as I've suggested on

7     our part on behalf of the Trust, I'm more than happy to get rid

8     of the confidentiality provision, but, obviously, that was a

9     condition of reaching the settlement, your Honor --

10             THE COURT:  Well, then --

11             MR. COLLINS:  -- based --

12             THE COURT:  And to even suggest -- I mean, not even

13     to provide me one under seal, I mean, what am I supposed to do

14     up here, Counsel?

15             MR. O'GARA:  I suspect that these remarks --

16             THE COURT RECORDER:  Your appearance again, please --

17             MR. O'GARA:  -- are being --

18             THE COURT RECORDER:  -- Counsel?

19             MR. O'GARA:  -- at me.  I'm Vincent O'Gara,

20     Murphy, Pearson, Bradley & Feeney, San Francisco.  I represent

21     Piercy, Bowler in connection with this settlement, your Honor.

22         First of all, your Honor, my understanding is that the

23     settlement agreement was going to be filed with this court

24     under seal, so that the Court would have a full and fair

25     opportunity to evaluate --

1          THE COURT:  Well --

2          MR. O'GARA:  -- the settlement.

3          THE COURT:  -- isn't that your job to do that since

4    it's your burden if you want the good-faith order?

5          MR. O'GARA:  Yeah.  I was relying upon the

6    Diamond McCarthy firm, your Honor.  That was part of the

7    expectation.

8          THE COURT:  Did you even check to see?  Did you

9    bother to do anything?

10         MR. O'GARA:  Yes, your Honor.  I've been looking at

11   the docket on a regular basis.  As a matter of fact, I looked

12   at it as recently as yesterday.

13         THE COURT:  Right.  And you didn't see any motion to

14   file anything under seal, did you?

15         MR. O'GARA:  I didn't.

16         THE COURT:  So didn't that cause you some concern?

17         MR. O'GARA:  No, I didn't, your Honor, because I am

18   not familiar with the procedures that have been followed in

19   this particular case.

20       Second of all --

21         THE COURT:  Well, it's a federal rule.  It's a

22   federal, and it's a local rule, and you didn't even bother to

23   familiarize yourself with it?  I mean --

24         MR. O'GARA:  Your --

25         THE COURT:  -- what --

1          MR. O'GARA:  Your --

2          THE COURT:  What was I supposed to do?  I mean --

3          MR. O'GARA:  Your Honor, I am surprised that this

4    wasn't done, your Honor.  The discussion throughout this entire

5    settlement matter, the procedure was it was going to be filed

6    under seal, and that parties were going to have the opportunity

7    to review it subject to a confidentiality agreement which was

8    the subject of extensive negotiations.

9          In all candor, your Honor, I'm surprised that this Court

10   hasn't seen this settlement agreement.  I think a continuance

11   here is clearly appropriate.

12         I'd like to address just if I could the more substantive

13   issue of why this procedure is being adopted.  It's not because

14   I'm some insurance counsel, your Honor.

15         It's because a client has a real interest in protecting

16   their reputation in this community where they continue to have

17   a professional practice.

18         And they are concerned that the substantive terms of this

19   settlement agreement will damage their reputation in their

20   community, and I think that's a legitimate concern, your Honor.

21         Now, I guess we're going to have to go back to the drawing

22   board and look at this again, but I think a continuance here is

23   certainly the way to go, and I apologize to your Honor.  We

24   certainly meant no offense to the Court.

25         It was my understanding that this was going to be handled

1    by the Diamond McCarthy firm.  Obviously, I was mistaken, and I

2    apologize.

3            THE COURT:  Okay.

4            MR. COLLINS:  Your Honor, just with all due respect,

5    I'd like to correct something in the record that's just been

6    presented.

7        The nature of the settlement negotiations in this case are

8    very long and hard-fought, and confidentiality was always a key

9    issue from the other side of achieving any settlement.

10       The method by which we were to seek that, we consistently

11   negotiated on behalf of the Trust to get procedures in place

12   that would allow parties interested in objecting or otherwise

13   reviewing an opportunity to do so.

14       We fought for those rights.  We achieved that through an

15   agreement from the other side.  The parties could have the

16   right to do that through a confidentiality agreement.

17       The parties had agreed in the original settlement itself

18   that the actual settlement agreement would be filed under

19   seal.

20       However, in ongoing discussions with counsel for

21   Piercy, Bowler, it was agreed that the method of presenting the

22   settlement agreement itself to this Court would be to provide

23   your Honor with an opportunity to review it under seal or

24   in camera.  I apologize.

25       And so we had brought it here today to comply with the

1   agreement we had with Piercy, Bowler's counsel on that front.

2   I understand --

3          THE COURT:  Well, but when was I supposed to read it?

4          MR. COLLINS:  Your Honor, I fully recognize that

5   having and maintaining the confidentiality of the settlement

6   amount in this case is something that, obviously, the Court

7   does not look fondly upon, and we would like nothing more than

8   to have the ability --

9          THE COURT:  No, no.  But when --

10          MR. COLLINS:  -- to broadcast that.

11          THE COURT:  -- were you going to file it?  Why didn't

12   you file it to file and a motion under seal?  Why didn't I get

13   that?

14          MR. COLLINS:  Your Honor, that was an agreement that

15   we had --

16          THE COURT:  That they --

17          MR. COLLINS:  -- with them.

18          THE COURT:  -- were supposed --

19          MR. COLLINS:  That --

20          THE COURT:  -- to do.

21          MR. COLLINS:  No.  That was an agreement that we

22   struck with counsel for Piercy, Bowler that it was something

23   that we were going to provide the Court for in camera

24   inspection at today's hearing.

25          THE COURT:  Well, why do I even bother sitting up

1    here?  What am I supposed to do, just look at it and say, okay,

2    here's an agreement?  Thank you very much?  How was I supposed

3    to exercise my discretion if that's the process?

4              MR. COLLINS:  We understand your concern, your Honor,

5    and we're --

6              THE COURT:  I mean --

7              MR. COLLINS:  We're --

8              THE COURT:  -- think about it.

9              MR. COLLINS:  We're happy --

10              THE COURT:  If a client --

11              MR. COLLINS:  -- to file it.

12              THE COURT:  -- gave you a document and says tell me

13    right now should I sign this, what are you going to say?

14              MR. COLLINS:  I'm going to want to take it under

15    advisement, your Honor.

16              THE COURT:  Exactly.  Now, if you don't insist on the

17    bar order, there is no need as far as I'm concerned for this

18    Court to approve it because the Liquidating Trust has the right

19    to settle agreements.

20         You know, I'm not sure why.  I mean, I understand

21    Mr. Berman is wanting me to bless things, but I'm a little

22    troubled by on one hand saying, all right, we have the absolute

23    right to just settle things -- and that's part of the Trust --

24    and then coming back in here and saying that I've got to do it,

25    but giving me no facts.

1       I have absolutely no information about what other

2   defendants could be liable for.  I have absolutely no

3   information about what the nature of the allegations were other

4   than a very kind of broad they did the accounting, nothing.

5       So you make a decision if you believe -- I don't think

6   that I need to under 9019 approve the settlement because the

7   trustee has that power without going through the Court.

8       If you want to give up the bar order, then you certainly

9   can maintain your confidentiality or you could put that in

10  there and just wait when somebody else sues you, and you raise

11  that as a defense I guess because I don't think there's any

12  need for a Court to make a good-faith ruling.  Obviously, a

13  good-faith ruling can be decided by the next Court that has

14  that issue, was it done in good faith.

15          MR. COLLINS:  Your Honor, the bar order itself and

16  the approval under Rule 9019 again are issues that were

17  conditions of the settlement of this matter, so --

18          THE COURT:  I understand.

19          MR. COLLINS:  Unlike the J.M.K. issue that you were

20  presented with earlier --

21          THE COURT:  But I understand that, and I'm telling

22  them now --

23          MR. COLLINS:  Um-h'm.

24          THE COURT:  -- you get your choice.

25          MR. COLLINS:  Understood.

1          THE COURT:  You tell me if you want to take it off or

2    continue it.

3          MR. COLLINS:  Yes, your Honor.  We request that

4    you --

5          THE COURT:  Okay.

6          MR. COLLINS:  -- continue this matter, so we can have

7    further discussions.

8          THE COURT:  Let me do this.  Let me continue it for a

9    very short -- I don't have a short time.

10          THE CLERK:  December 16th.

11          THE COURT:  All right.  December 16th.  You must let

12    me know, and I must have all information by December 5th, and I

13    want you to very carefully read the MGM case and the Vincent

14    case for all the information that I'm going to need to settle

15    this, to decide, whether or not it's a good-faith settlement.

16      And I understand that the Vincent case suggested that the

17    MGM case wasn't required -- I'm sorry -- yes, but then the

18    Velsicol case suggested the MGM case include the factors that

19    weren't necessary.

20      But I think the adopted Vincent case seemed to suggest

21    that, well, we didn't really mean that.  We really mean it's

22    the MGM case factors as well as these additional factors,

23    although I understand it's the Court's discretion, but I'm not

24    just here to be a little stamp.

25          MR. O'GARA:  No.  I understand, your Honor.  I --

1          THE COURT:  And I kind of resent the fact that you

2   march in here and think that I'm just some pretty face up

3   here -- ugly face up here -- who's going to stamp your document

4   because I'm under pressure because these people need to be

5   paid.

6          MR. O'GARA:  Your Honor, I fully appreciate the

7   responsibility of a bankruptcy court in evaluating a

8   settlement.

9       And from the beginning of the time that we started

10  serious settlement discussions, I have emphasized to USACM's

11  counsel --

12         THE COURT:  All right.

13         MR. O'GARA:  -- that we have to make a showing under

14  a very old case called Protective Committee versus Anderson

15  which is now encompassed in the A&C case.

16      That's how old I am and how long I've been practicing

17  bankruptcy law, your Honor.  We will make that showing when we

18  seek this Court's approval.

19         THE COURT:  I'm also going to need to know --

20         MR. O'GARA:  And I apologize.

21         THE COURT:  I have no information --

22         MR. O'GARA:  I --

23         THE COURT:  -- as to --

24         MR. O'GARA:  I --

25         THE COURT:  -- Piercy's financial ability to settle

1    at a settlement outside the insurance, none.

2              MR. O'GARA:  I appreciate that, your Honor, and I

3    apologize for the --

4              THE COURT:  And I really don't understand why you

5    insist on the bar order because I don't see how you're going to

6    get people.

7         I mean, you say that, oh, Mr. O'Reilly's firm or client

8    should have had no interest because their claim is for a

9    punitive damage.  Well, okay, fine, so they don't have a claim.

10        I mean, I just see it as -- again, it reminds me of

11   bankruptcy attorneys who march in here on the first day and say

12   I've got to have a cash-collateral order that does this even

13   though they don't.

14             MR. O'GARA:  Your Honor, I'm very sympathetic with

15   the problem.  The problem that we are attempting to address in

16   the settlement negotiations and in the settlement that we

17   entered into was from Piercy, Bowler's point the view to

18   prevent the gorilla warfare that goes on in these cases which

19   is you settle with the estate.

20        And in this case, the settlement will flow directly to the

21   people who are the creditors and who may have these types of

22   claims.

23        What we want out of this case, obviously, is peace to the

24   extent we can get it, and the way that we can try to get that

25   peace is by not having to fight gorilla warfare --

```
1              THE COURT:  But nobody else --

2              MR. O'GARA:  -- with --

3              THE COURT:  -- has made a claim against you.

4              MR. O'GARA:  I know, but the --

5              THE COURT:  And that time has passed.

6              MR. O'GARA:  Well, that may be the key because that's

7    been the subject of extensive discussions and negotiation about

8    when the time does pass.

9         If we are looking at the substantive claim, the time has

10   clearly passed under even my most conservative calculation of

11   the Statute of Limitations.

12        It's the indemnity and contribution claims that present

13   the problem because they might be asserted only at the

14   conclusion of other litigation.  That's the procedure in

15   California where I practice on a regular basis, your Honor.

16        Nevada practice is not as clear whether those claims can

17   be asserted at the end of litigation or they have to be

18   asserted within the Statute of Limitations for the underlying

19   claim, and it --

20             THE COURT:  Well, it's a --

21             MR. O'GARA:  And it --

22             THE COURT:  -- known universe of the people involved,

23   and that's the next problem I have.

24             MR. O'GARA:  That's why the notice was so broadly

25   given because it's my belief that due process and the
```

1     opportunity to be heard is served best by that broad notice.

2              THE COURT:  Well, no.

3              MR. O'GARA:  And so I'm --

4              THE COURT:  It's a known universe.

5              MR. O'GARA:  -- at least troubled --

6              THE COURT:  The only people that could possibly sue

7     you, right, for indemnity or contribution are those people who

8     are now named as defendants, correct, or of which there's an

9     open Statute of Limitations, right?

10             MR. O'GARA:  Yes, your Honor, and it's the second

11    part that's the troubling part, and it's is the indemnity and

12    contribution claim under Nevada law.  Does the Statute of

13    Limitations start at the conclusion of the underlying

14    litigation --

15             THE COURT:  No.  My point --

16             MR. O'GARA:  -- that we're not --

17             THE COURT:  -- is this.

18             MR. O'GARA:  -- a party to?

19             THE COURT:  The only people that -- and what I meant

20    to say was like you, entities for whom no suit was yet

21    commenced, but which there was a stipulation to extend the

22    statute --

23             MR. O'GARA:  Right.

24             THE COURT:  -- to bring the initial claim.  I hear

25    what you're saying --

1          MR. O'GARA:  Yeah.

2          THE COURT:  -- about when does it run as to them, but

3     I'm saying it's a known universe as to who could sue you for

4     indemnity or contribution.

5        It is only those people who have now been named as

6     defendants or who there is a stipulation to extend the time in

7     which to file a complaint against them.

8          MR. O'GARA:  Yes.  I think that's correct.

9          THE COURT:  Okay?  So my next question -- and it may

10    not be solved -- is I am not so sure that the -- I want to say

11    Seyance (sic) case of the Maryland case.  I'm not ready to

12    decide that, and we're going to deal with it --

13         MR. O'GARA:  Oh, the Seznec (phonetic) --

14         THE COURT:  -- in this next case.

15         MR. O'GARA:  -- case?

16         THE COURT:  Seznec, yes.

17         MR. O'GARA:  Seznec.

18         THE COURT:  It is not correct in the sense that

19    you're seeking injunctive relief.  You have a known universe of

20    people.  Why don't you have to bring them in as an adversary

21    or --

22         MR. O'GARA:  I --

23         THE COURT:  I --

24         MR. O'GARA:  Your --

25         THE COURT:  I'll --

19

1           MR. O'GARA:  Your Honor, I --

2           THE COURT:  I'll listen to further briefing --

3           MR. O'GARA:  I --

4           THE COURT:  -- on that.

5           MR. O'GARA:  This is a fascinating question, but I

6    think the Seznec case is right on its facts, but it doesn't

7    address the real issue, and the real issue is the res.

8        The Court has jurisdiction over the res which is the

9    claim, and that that claim consists of a whole bundle of

10   rights.

11       One of those rights and liabilities incident to that claim

12   are these indemnity and contribution claims, and that I think

13   that based upon that the Court has in rem jurisdiction over the

14   claim.

15       It may not have inpersonam jurisdiction because there are

16   other people out there, but I think with regard to the

17   jurisdiction of this Court because it has in rem jurisdiction

18   over that chose in action it has the ability --

19           THE COURT:  Well, it's the --

20           MR. O'GARA:  -- to enter a bar order.

21           THE COURT:  It's the personal jurisdiction I'm

22   concerned about.

23           MR. O'GARA:  That's right, and I don't think it does

24   have personal jurisdiction, but it does have in rem

25   jurisdiction, and I think that's the jurisdictional connection

1    between the bar order and the settlement.

2        (Cellular telephone ringing at 10:19:58 a.m.)

3            MR. O'GARA:  I --

4            THE COURT:  Okay.  Well --

5            MR. O'GARA:  I --

6            THE COURT:  All right.  So on this one, we're going

7    to continue it 'til December 16th, and I want additional points

8    and authorities, and I want all documents relevant.

9        I will authorize a motion to seal those documents subject

10   to at the hearing if I think something should be unsealed, then

11   I'll let you know, and you can argue it.

12        (Colloquy not on the record.)

13            MR. O'REILLY:  And for the record, John O'Reilly and

14   Steven Katzman and Tim O'Reilly appearing on behalf of the

15   Petersen Family and Mr. Stan Fulton.  Will we have an

16   opportunity to reply to whatever is submitted --

17            THE COURT:  Oh --

18            MR. O'REILLY:  -- by December the 5th --

19            THE COURT:  -- yes.

20            MR. O'REILLY:  -- your Honor?

21            THE COURT:  Good point.  Thank you.  Because you were

22   given the documents, so anything in your -- I'll allow you to

23   seal any pleadings that refer to the terms.

24        I guess it's easier if I allow you to seal your

25   supplemental pleadings in toto, rather than trying to piece and

1    part, but you must give Mr. O'Reilly a copy.

2              MR. O'GARA:  Yes, your Honor.

3              THE COURT:  And then they'll reply by the -- oh,

4    dear, that doesn't give me much time.  Is the 9th -- let's see.

5    Shoot.  All right.  Let me have you do yours by the 3rd, then,

6    and Mr. O'Reilly's by the 10th.

7              MR. O'GARA:  And, your Honor, will you authorize

8    electronic service by fax or E-mail --

9              THE COURT:  Yes.

10             MR. O'GARA:  -- because of the shortness of the time

11   in this matter?

12             THE COURT:  Yes.

13             MR. O'GARA:  Thank you, your Honor, and I'll --

14             THE COURT:  You don't need to notice all the rest of

15   the parties --

16             MR. O'GARA:  Well, they --

17             THE COURT:  -- just those --

18             MR. O'GARA:  It's continued.  It will be a continued

19   hearing, so the notices --

20             THE COURT:  I --

21             MR. O'GARA:  -- carries through that.

22             THE COURT:  I won't require you to send it on a

23   continued notice.

24             MR. O'GARA:  Well --

25             THE COURT:  I do want you to notice, though, all I

1    think -- it was unclear to me, but I believe all the defendants

2    in the litigation were noticed of this motion?

3                MR. O'GARA:  I believe --

4                MR. COLLINS:  Yes, your Honor.

5                MR. O'GARA:  -- they were, your Honor.

6                THE COURT:  Okay.  So do notice the defendants.

7    That's the only notice you need to give is of the continued

8    motion of the defendants.

9          And if Mr. Diamond (sic) would add to that or Mr. -- I'm

10   sorry.  If you would add to that anybody who is in the same

11   circumstance as the Piercy, Bowler firm was, entities who may

12   be defendants, but have not yet been served.

13               MR. COLLINS:  They will be noticed, your Honor.

14               THE COURT:  Okay.

15               MR. COLLINS:  Thank you.

16               MR. O'GARA:  Your Honor, just in terms of notice, I'm

17   aware of about six requests for copies of the settlement

18   agreement.

19          There was a procedure whereby they would get a copy of the

20   settlement agreement subject to the confidentiality agreement.

21   As far as I know, those have been going out on a regular basis.

22               THE COURT:  Okay.

23               MR. O'GARA:  The only hook on those thing is that at

24   the conclusion of this matter the person who is subject to that

25   confidentiality agreement is supposed to destroy the documents

1    and retain confidentiality with regard to the settlement

2    purposes.

3         And my client's concern is to put it very bluntly,

4    your Honor, they don't want this posted on the Internet.  I

5    mean, that's the nightmare that everybody has is, you know -- I

6    realize it's a practical problem, your Honor, but it's a

7    very --

8              THE COURT:  Well, I --

9              MR. O'GARA:  -- real-world problem.

10             THE COURT:  You know, by the same token, maybe they

11   shouldn't have engaged in the things they were alleged to have

12   engaged in.

13             MR. O'GARA:  I'm sorry?

14             THE COURT:  Maybe they shouldn't have, you know,

15   engaged in the things they were alleged to have engaged in.

16             MR. O'GARA:  Yeah.  Your Honor, I don't want to get

17   into the substance.  We'll get into those in the paper.  I

18   think it's best to address those in the pleadings.

19             THE COURT:  I mean, I understand that, but --

20             MR. O'GARA:  It does present an awkward situation,

21   your Honor.

22             THE COURT:  I understand.

23             MR. O'GARA:  And it --

24             THE COURT:  And, again --

25             MR. O'GARA:  And it's --

1          THE COURT:  -- if you hadn't --

2          MR. O'GARA:  I --

3          THE COURT:  If you --

4          MR. O'GARA:  I'm sympathetic to the --

5          THE COURT:  -- hadn't insisted on a 9019 on a bar

6     order --

7          MR. O'GARA:  Right.

8          THE COURT:  -- you would have had entire

9     confidentiality.  Now it's on the record.  It's a public

10    hearing.  It's on the Internet that there's a motion.

11         MR. O'GARA:  Well, that's not the problem.  The

12    problem -- and I, frankly, think it protects everyone to have

13    these kind of hearings.

14       But as I say and indicated, I've been practicing in the

15    bankruptcy courts in this area for many, many years, and I'm

16    troubled by lack of public disclosure of substance.

17         THE COURT:  Yeah.

18         MR. O'GARA:  And I --

19         THE COURT:  I --

20         MR. O'GARA:  And I --

21         THE COURT:  Philosophically, I agree with you.

22    Philosophically, I wish now that (indiscernible) trust

23    agreements didn't have that.  If I had thought about it, I

24    probably would have said no.  I appreciate what you're saying,

25    but I guess the converse of that is if it's not required --

1           MR. O'GARA:  I understand.

2           THE COURT:  -- then don't make me your scapegoat.

3           MR. O'GARA:  I'm not, your Honor.  I am sympathetic

4    to the Court's problem, and I'm not going to give you my speech

5    about liquidating trusts.

6           THE COURT:  Okay.

7           MR. O'GARA:  Thank you, your Honor.

8           THE COURT:  All right.  Thank you.

9           MR. O'REILLY:  Your Honor, just one final point if I

10   may?  Since the Court has discussed somewhat at length the

11   confidentiality of the settlement agreement, we were asked to

12   sign a confidentiality agreement, and we declined.

13       We did not want to taint our future ability to use the

14   settlement agreement or the terms in an evidentiary form or for

15   any purpose we thought was appropriate for our client.

16       So given the Court's comment, I simply just wanted to make

17   that known on the record, and we understand the Court may

18   address that further at the hearing on December 16th, and we

19   will reserve any comments for that time if it's appropriate

20   with the Court.

21           THE COURT:  Okay.

22           MR. O'REILLY:  So I think it's a whole separate issue

23   than what we're here for today.

24           THE COURT:  Okay.  All right.  So, next, we have the

25   Beadle, McBride.

1          (Colloquy not on the record.)

2          MR. COLLINS:  Yes, your Honor.  Jason Collins again

3     on behalf of USACM Liquidating Trust and also on behalf of

4     USA Capital Diversified First Trust Deed Fund.

5          And, your Honor, this is a motion for approval of the

6     settlement agreement reached between my two clients and

7     Beadle, McBride.

8          As the Court is aware and as we have set forth in a

9     declaration by the trustee of the USACM Liquidating Trust,

10    Mr. Berman, the plaintiffs filed suit against Beadle, McBride

11    on May 16th, 2008.

12         Beadle, McBride is the accounting firm that audited the

13    financial statements for the Diversified Trust from 2002/2003

14    without completing that final audit.

15         And, your Honor, the claims that were set forth in that

16    pleading included claims for accounting malpractice and also

17    for breach of contract with the principal allegations being

18    that they failed to conduct the audit in accordance with

19    Generally Accepted Auditing Standards and also issued false

20    audit opinions in that they year after year issued unqualified

21    opinions on those financial statements.

22         The parties after filing -- the suit was filed on May 16th

23    of 2008 -- engaged in settlement discussions that lasted for

24    several months, and the parties were able to reach a

25    settlement.

1      The settlement agreement was attached to the application

2   for approval of the settlement under Rule 9019, so the Court

3   does have a copy of that one.

4           THE COURT:  I do.

5           MR. COLLINS:  The principal terms of that have been

6   disclosed.  It is a 1.5-million-dollar settlement.  And

7   pursuant to the 9019 standard, we believe, your Honor, as set

8   forth again in the declaration of Geoff Berman that that is

9   fair and equitable under in re A&C Properties focus,

10  specifically, on the factors of measuring and trying to

11  ascertain the probability of success and, most importantly, for

12  this case collection issues.

13      This, your Honor, is a case against a professional-service

14  firm.  They generally are not capitalized to any great degree.

15  We're looking, primarily, at the insurance policy at issue --

16          THE COURT:  Well --

17          MR. COLLINS:  -- for this --

18          THE COURT:  -- I have no --

19          MR. COLLINS:  -- accounting firm.

20          THE COURT:  -- competent evidence to that.  I have

21  Mr. Berman's affidavit, but I have nothing from the firm, so,

22  obviously, his affidavit is based on -- when I mean competent,

23  my point is it's based on hearsay.

24          MR. COLLINS:  Your Honor, are you speaking directly

25  to the point about the fact that Mr. Berman considered the

1    insurance policy --

2            THE COURT:  Right.  No.

3            MR. COLLINS:  -- as part --

4            THE COURT:  And --

5            MR. COLLINS:  -- of his analysis?

6            THE COURT:  And that the collectability by -- let's

7    see.  Maybe it's Mr. Tucker's.  No.  Let's see.  Maybe it's

8    Mr. Tucker's.  Let's see.

9            MR. COLLINS:  The evidence we've presented before the

10   Court is that both Mr. Tucker and Mr. Berman approached this

11   litigation and carefully weighed the probability of success

12   along with --

13           THE COURT:  Here it is.  It's --

14           MR. COLLINS:  -- the collectability issues.

15           THE COURT:  If they prevail in litigation, "The Trust

16   and the Fund could not be certain that the firm would be able

17   to pay a large judgment in favor of the debtors," but how do

18   they know that?  I mean, that may well be true, but it's based

19   on hearsay.

20           MR. COLLINS:  Well, it's based upon their

21   investigation and the counsel --

22           THE COURT:  Why don't I have --

23           MR. COLLINS:  -- that they were seeking the law

24   firm --

25           THE COURT:  -- an affidavit by the defendant?

1          MR. COLLINS:  Your Honor, if you would you like to

2     have additional evidence in that regard, we'd be happy to

3     provide it.

4          THE COURT:  No.

5          MR. COLLINS:  We think that --

6          THE COURT:  It --

7          MR. COLLINS:  We think that the evidence that

8     Mr. Berman and Mr. Tucker carefully considered the nature and

9     probability of success and also the collectability issues that

10    are always an issue with respect to any suit --

11         THE COURT:  Right.

12         MR. COLLINS:  -- against an accounting firm.  We all

13    know that they carry audit malpractice.

14         We have set forth in his declaration that he considered

15    that insurance and the limit, importantly -- and this is an

16    overriding issue with this settlement -- the limit on the

17    policy itself being set at $2,000,000.

18         This settlement takes up the lion's share of the insurance

19    policy at issue and allows the Trust and the Diversified Trust

20    to settle this case in a very efficient manner without

21    incurring all of the costs that would come from further

22    litigation, hiring expert witnesses, doing all the expert work

23    involved.

24         This is a burning policy, and they're getting 75 percent

25    of that policy right now before incurring any of those costs

1    and also getting rid of the fact that we would have an

2    incredible delay associated with getting this money to the

3    people that it matters to whereas the settlement agreement

4    that's before the Court provides that the settlement payment is

5    going to be due ten days from the order of this Court approving

6    the settlement going final.

7            THE COURT:  And this --

8            MR. COLLINS:  So they get this money right now.

9            THE COURT:  And this settlement -- did this

10   settlement require a 9019 approval?  It did not, did it?

11           MR. COLLINS:  Yes, your Honor.  It was conditioned

12   upon both a 9019 approval and also a good-faith --

13           THE COURT:  The --

14           MR. COLLINS:  -- a good-faith effort on our part

15   pursuant to Section 17.245 of the Nevada Revised Statutes for

16   the Court to deem that the settlement was reached in good faith

17   thus giving rise to --

18           THE COURT:  But I don't --

19           MR. COLLINS:  -- the bar (indiscernible)

20   contributions.

21           THE COURT:  -- have to find such a bar order.  In

22   this case, all I need to -- I mean, in other words, you were

23   only required to seek the bar order --

24           MR. COLLINS:  Yes.  And we --

25           THE COURT:  -- in this case.

1          MR. COLLINS:  And we have sought the bar order, and

2     we are here today seeking --

3          THE COURT:  Right.

4          MR. COLLINS:  -- for the Court to find it.

5       And in that regard, we're not asking the Court to enter

6     into an injunction discharging the debts of a third party.

7     This is not something that the parties cooked up in this

8     regard.

9       We're asking the Court to look at this settlement,

10    determine as it does under Rule 9019 that it was reached in

11    good faith which we think is the only thing required.

12          THE COURT:  Well, they're different factors.

13          MR. COLLINS:  It's different factors.  But if we look

14    at those factors which are set forth in the Vincent case that

15    the Court's already referenced this morning, those factors

16    include reference to the settlement amount, the

17    insurance-policy limits, and the financial condition of the

18    defendant.

19       And as I've mentioned, the insurance policy is the

20    overriding factor that's at issue in the case against

21    Beadle, McBride.

22       We're looking at a settlement that achieves 75 percent of

23    the policy which is a burning policy that will continue to be

24    eroded as the case goes on, and we all incur additional costs.

25          And so if the Court could consider both the factors under

1    in re A&C Properties, we think the factors are very similar if

2    not the same in this context given the policy issue that the

3    Court could find that the settlement was reached in good faith,

4    that there was no collusion involved in reaching this

5    settlement.

6         And, thus, Section 17.245 of the Nevada Revised Statutes

7    will, in fact, apply by operation of law.  I think there has

8    been some confusion, and I'd --

9              THE COURT:  Well --

10             MR. COLLINS:  I noted for the --

11             THE COURT:  -- if it applies, then why do we even

12   bother asking for it?

13             MR. COLLINS:  Well, because the Court has to make the

14   determination that the settlement was reached in good faith.

15   That's a requirement --

16             THE COURT:  Well --

17             MR. COLLINS:  -- in the statute.

18             THE COURT:  -- this Court doesn't have to.

19             MR. COLLINS:  Well, I don't think, necessarily, this

20   Court has to, but I think this Court is in the best position to

21   do so and has the jurisdiction to do it for us.

22        The case was pending.  The Court obviously has

23   jurisdiction under 28, Title 28, 1334.  The case has been

24   pending here.

25        The Court is already reaching the determination that the

1    settlement was reached in good faith under in re A&C Properties

2    as part of the 9019.

3              THE COURT:  But aren't you really seeking to enjoin

4    them from a contribution?

5              MR. COLLINS:  Your Honor, we would submit that the

6    Nevada legislature is the one that enjoins joint tortfeasors

7    who are responsible for the same harm that Beadle, McBride is

8    responsible for as alleged in this lawsuit.

9         There is a statute that specifically says that joint

10   tortfeasors responsible for the same harm will be barred from

11   pursuing contribution or indemnity claims to the extent that a

12   settlement was reached with a settling party in good faith.

13        And what we're seeking for this Court to do is to make a

14   determination that, yes, this settlement was reached in good

15   faith, and, thus, this statute applies as it's worded and as

16   enacted --

17             THE COURT:  Well --

18             MR. COLLINS:  -- in the law --

19             THE COURT:  -- do you have any case that --

20             MR. COLLINS:  -- by the Nevada legislature.

21             THE COURT:  And you said you did, but I didn't see

22   that in the case.  Maybe I misread it.  I didn't see any case

23   in which the party who was being barred wasn't a party in that

24   action.

25             MR. COLLINS:  Your Honor, there is not very much law

1    with respect to it.  There's hardly any case law under

2    Section 17.245 in this context.  We have the Vincent case.  We

3    have several other cases if you're --

4                THE COURT:  So the --

5                MR. COLLINS:  We --

6                THE COURT:  -- answer's no.

7                MR. COLLINS:  We have looked at that.  We do not have

8    a case directly on point where the party being barred is

9    outside of the context of the case that's pending before the

10   Court.

11        However, the language of the statute --

12               THE COURT:  Then how --

13               MR. COLLINS:  -- itself --

14               THE COURT:  -- could they really be a joint

15   tortfeasor unless they are in the same litigation?

16               MR. COLLINS:  Well, your Honor, they would be a joint

17   tortfeasor to the extent that they're held now in another case

18   or, perhaps, one that hasn't even been brought which I don't

19   think is an issue that this Court has to contend with.

20               THE COURT:  So why don't you -- you have the ability

21   to consolidate all these actions if you really think they're

22   joint tortfeasors, so why don't you do that?

23               MR. COLLINS:  We don't think that, necessarily,

24   your Honor, would be the most efficient means to proceed

25   forward, and there's obviously very different issues that are

1    at stake in all of the various cases that we have.

2        However, the statute is only going to apply to someone who

3    is held to be a joint tortfeasor responsible for the same harm

4    that's at issue in the Beadle, McBride case.  That's not an

5    issue, though, that is before this Court.

6        This Court does not have to examine the universe, look at

7    all of the potential parties, and determine what they're

8    responsible for --

9            THE COURT:  Well, sure, they do.

10           MR. COLLINS:  -- and whether it's the same harm.  All

11   this Court has to do --

12           THE COURT:  The cases require me to look and see

13   about whether or not, for example, Beadle is paying more than

14   its aliquot share in the universe.  I don't even know what the

15   other claims are out there.

16           MR. COLLINS:  Your Honor --

17           THE COURT:  I don't even know what we're giving up.

18           MR. COLLINS:  Your Honor, we would submit that the

19   only determination that this Court has to make is to look at

20   the settlement and look at the issues that rest between my

21   clients and Beadle, McBride, the settlement itself, and

22   determine whether or not it was reached in good faith.

23       We submit that's the only thing that this Court has to do,

24   and that the statute itself then applies to bar contribution or

25   indemnity claims brought by other parties down the road against

1    this settling defendant to the extent that this settling

2    defendant in that case in that later proceeding can show that

3    it relates to the same harm, and that they were, in fact, a

4    joint tortfeasor.

5        So we don't think the Court has to go there.  We think the

6    Court has to look, essentially, at the same things it's looking

7    at pursuant to Rule 9019.

8                THE COURT:  Okay.  Thank you.

9                MR. COLLINS:  And, thus, we respectfully ask the

10   Court to approve this settlement allowing those funds to come

11   into the trust for the benefit of the creditors within ten days

12   of it going final.

13               THE COURT:  Okay.  Thank you.

14       Opposition.

15               MR. SINKELDAM:  Your Honor --

16               THE COURT:  Um-h'm.

17               MR. SINKELDAM:  -- can I be heard --

18               THE COURT:  Yes.

19               MR. SINKELDAM:  -- real quickly?

20               THE COURT:  Um-h'm.

21               THE COURT RECORDER:  Your appearance, please,

22   Counsel?

23               MR. SINKELDAM:  Gary Sinkeldam for Beadle, McBride.

24   The first point that I wanted to make is that there are cases I

25   -- there's no citable cases, but there's cases that I've been

1    involved in on multiple occasions where a good-faith settlement

2    is brought that bars parties that are not part of that

3    litigation at the time.

4         The important thing in this case, though, is that the

5    parties that would have a potential right against

6    Beadle, McBride have notice of this settlement.

7         And if there's an issue about a person that's not a party

8    to this litigation and not allowing the good-faith settlement

9    to bar a nonparty, it's really just a notice issue.

10        It's that they don't have notice of this claim, so how is

11   it fair to them to bar and dismiss their rights of contribution

12   or indemnity in a case that they didn't know about?

13        We don't have that issue here because all of the potential

14   parties that would have the ability to oppose this good-faith

15   settlement and make a claim for indemnity or contribution

16   against Beadle are aware of this settlement and now have the

17   opportunity to oppose it being found in good faith and having

18   their claims barred.

19        If the concern that you have is to give more information

20   as to Beadle's inability to satisfy a judgment personally aside

21   from the insurance money, then I would request the opportunity

22   to file additional documents to establish that basis.

23        The other point, however, though, is that notice of this

24   settlement was given, and that the only oppositions that were

25   filed were by Petersen and Fulton.

38

1        Under no circumstances will either of those defendants

2    ever be found to be a joint tortfeasor relating to the claims

3    against Beadle, McBride.

4        And if you look at the textbook restatement definition of

5    what a joint tortfeasor is, that means that two people whose

6    actions either together or independently have the same exposure

7    to a claim to a party.  Excuse me.

8        In the claims that were made against Beadle, McBride

9    relating to -- the claims that were made by the Trust relating

10   to Beadle, McBride are separate and independent claims and have

11   nothing to do with the claims --

12           THE COURT:  So why do you need a bar order?

13           MR. SINKELDAM:  Well, to prevent --

14           THE COURT:  If there's nobody out there, then why

15   bother?

16           MR. SINKELDAM:  Well, because there are other

17   potential people out there, your Honor, that have not opposed

18   this motion.

19        My position is is that if they've failed to oppose the

20   motion at this point in time, then they've waived their right

21   to object at a later point in time, but the bar order gives us

22   closure.  We make a decision.

23        I mean, my client came into this case and said, look, we

24   don't think we have any exposure.  We don't think we have

25   liability.

1       But it's going to cost so much money to get to that point

2    that let's see if we can resolve this case now and bring

3    closure, so we don't have to defend 30, 40, 50 separate

4    lawsuits where each of the other defendants have said, you know

5    what, we're going to sue Beadle, McBride for indemnity and

6    contribution.

7       By settling now and getting this bar order, we have that

8    protection, so that those other entities can't bring claims

9    against us.  If they bring that claim against us, and we don't

10   have the bar order, then we have to get involved in another

11   lawsuit.

12       (Thereupon, Lisa L. Cline concluded as transcriber,

13       and Rene' Hannah commenced as transcriber

14       at 10:39:41 a.m.)

15       THE COURT:  Well, now, wait.  The statute doesn't

16   require a bar order.  The statute says that he who, et cetera,

17   settles in good faith is relieved from contribution.

18       I know it's become the practice to get such an order, but

19   there is no requirement of a bar order, so there is absolutely

20   no reason why when sued you couldn't present the settlement and

21   said it was in good faith, right?

22       MR. SINKELDAM:  Well, you're right --

23       THE COURT:  It's doesn't --

24       MR. SINKELDAM:  -- your Honor.

25       THE COURT:  It's not like California that requires a

1    hearing.

2              MR. SINKELDAM:  Well, here's the problem is if I can

3    get a ruling from you now that, yes, this settlement is in good

4    faith pursuant to the Nevada Revised Statute 17.245, then that

5    prevents me from having to get involved in that subsequent

6    lawsuit.

7         If you don't give me that protection now, they sue me.  I

8    have to respond, then I have to bring a motion to dismiss based

9    upon a determination that my settlement was in good faith which

10   requires that Court to get involved in all of the details of my

11   settlement.

12        They have no information or understanding relating to that

13   settlement.  You, therefore, are in that best position to do

14   that.  You know the facts of this case.  You know --

15             THE COURT:  But I don't --

16             MR. SINKELDAM:  Okay.

17             THE COURT:  -- in the sense that nobody has bothered

18   to tell me who these other joint tortfeasors are.

19             MR. SINKELDAM:  Well, the other joint tortfeasors

20   would be the other defendants that would potentially have a

21   right of indemnity or contribution against Beadle, McBride.

22        And under the definition of indemnity in Nevada, I can't

23   see that there's any defendant out there that would have a

24   right of indemnity.

25             THE COURT:  Well, that's what I was thinking, too.

1          MR. SINKELDAM:  Okay.  They're --

2          THE COURT:  But you're insisting on it.

3          MR. SINKELDAM:  Well, that's because I don't want to

4     have to be in here again, your Honor.  I don't want to be in

5     other forums again having to do this over and over because then

6     to a large extent it defeats the whole purpose of paying the

7     money now to get my peace.

8          And, you know, if the technical issue of getting the bar

9     order is what's hanging you up, that language might not be

10    necessary.

11         If you make a determination that this settlement is in

12    good faith pursuant to the Nevada Revised Statutes, then I

13    think that gives me the protection I need for a subsequent

14    action.

15         THE COURT:  Okay.  Thank you.

16         MR. SINKELDAM:  Thank you, your Honor.

17         THE COURT:  All right.  Opposition.

18         MR. O'REILLY:  Your Honor, with the Court's

19    permission, Mr. Katzman will address --

20         THE COURT:  All right.

21         MR. O'REILLY:  -- the issues on behalf of the

22    Petersens.  And if necessary, I'll either join in or address it

23    further on behalf of Mr. Fulton.

24         THE COURT:  All right.

25         MR. O'REILLY:  And just for the record, though, we

1    would respectfully request the Court to take them up on their

2    offer to provide the additional financial-status affidavits and

3    also encourage the Court to get the other information regarding

4    purported joint tortfeasors to determine an aliquot share as a

5    part of this discussion process.

6        I think in summary the bar order is nothing more than a

7    release that they don't want to pay for is what their approach

8    is.

9            THE COURT:  Okay.

10           MR. KATZMAN:  Good morning, your Honor.

11           THE COURT RECORDER:  I'm sorry.  Before you start,

12   your Honor, may I ask that everybody turns off their cell

13   phones completely.  I've had a couple of interferences, and I'm

14   not sure if they're on silent, but they are interfering.

15       Thank you.

16           MR. KATZMAN:  I can represent mine is off,

17   your Honor.  I'm here for the Petersens.  I don't represent

18   Mr. Fulton.  Mr. O'Reilly's going to handle the Fultons.

19   First --

20           THE COURT RECORDER:  And your appearance?

21           MR. KATZMAN:  I'm here for Mary (phonetic), Michael,

22   and Kathryn Petersen (phonetic), and their respective trusts.

23           THE COURT RECORDER:  And your name?

24           MR. KATZMAN:  My name's Steven Katzman.  I apologize.

25           THE COURT RECORDER:  Thank you.

1        MR. KATZMAN:  Your Honor, first of all, they're

2    asking for more than a good-faith determination.  There are

3    conclusions of law in their proposed order that they submitted

4    to this Court are having you expressly find that all parties

5    receiving notice of this bar order are enjoined pursuant to the

6    Nevada statute from asserting any claims against

7    Beadle, McBride for indemnification and/or contribution, so

8    it's not just a good-faith finding that they're saying that

9    they're asking for.  Their papers ask for more.

10       This Court, your Honor, as we've established does not have

11   the parties before it, the over 300 parties that they've served

12   this bar order with before it, to make a determination that

13   indemnity and contribution claims can be enjoined against those

14   300 parties.

15       And if they wanted that and if they thought that we were

16   joint tortfeasors, and we were necessary, indispensable

17   parties, they should have availed themselves of their rights

18   under the bankruptcy rule to bring in a necessary party.

19       And, your Honor, Rule 7019 speaks directly to this issue.

20   A necessary party is, quote, "One who leaves an existing party

21   subject to a substantial risk of incurring double, multiple, or

22   otherwise inconsistent obligations because of the interest."

23       Now, to serve us and 300 other people with this bar order

24   who aren't parties to any litigation with them and then say,

25   oh, you have no claim, so you have no standing, is circular and

1    inconsistent logic.

2        Your Honor, we cited in their Ninth Circuit case we

3    cited -- and I don't know if the Court really takes serious the

4    issue of standing that they raise for us to assert an objection

5    here to this proposed bar order.

6            THE COURT:  No.  I believe you have standing.

7            MR. KATZMAN:  Okay.  Very well, because we did submit

8    some supplemental authority, your Honor, that clearly

9    establishes that we have standing.

10       We have standing even if we cannot articulate the nature

11   of indemnity or contribution at this point, and there's a fair

12   reason for that is because our litigation's ongoing.

13       We don't know what's going to happen at the end of the day

14   any more than all the other defendants in all the other

15   adversary actions that are not before this Court with the

16   Beadle, McBride litigation.

17       And this is just really an end round against what the

18   Ninth Circuit has repeatedly said this Court and all other

19   Courts in the Ninth Circuit can't do, and that is release third

20   parties from potential claims.

21       American Hardwoods and the Lonechilds (phonetic) case and

22   that long line of cases clearly speak to that issue, and I do

23   find it interesting, your Honor, that in their reply papers

24   they cited Mumford (phonetic), this Eleventh Circuit case, for

25   the proposition that you can use 7016 and 105 to issue this

1    order.

2        Well, first of all, 7016 applies for pretrial conferences

3    for parties before the Court.  It's an adversary proceeding

4    with parties before the Court on that adversary proceeding.

5        But, secondly, your Honor, it also flies in the face of

6    the fact that I just cited 7019 that shows we're a necessary,

7    indispensable party if you believe we have claims for

8    contribution and indemnification.

9        The fact is, your Honor, I Shepardized those cases, and

10   there were two fundamental issues with that Mumford case.

11   There's two fundamental issues with that case.

12       First of all, it cites not the authority of the

13   Ninth Circuit.  It cites the authority of other circuits that

14   allow under limited circumstances third-party releases.

15       And there's a case, your Honor, Arrowmill Development

16   Corporation, 211 B.R. 497, Bankruptcy Court in the District of

17   New Jersey, that precisely pointed that issue out.

18       The Ninth Circuit takes this position.  No third-party

19   releases allowed whereas the Eleventh Circuit at the time did

20   allow it, so, first of all, the Eleventh Circuit case is

21   fundamentally different for that purpose.

22       Secondly, the Mumford case, all the parties were before

23   the Court.  They were seeking to apply the bar order.  That was

24   all against codefendants in the same adversary proceeding, and

25   I Shepardize again Mumford.

1          I did it this morning, pulled that little yellow flag up,

2    and I found in re Covington Properties, 255 B.R. 77,

3    Bankruptcy District of Florida, a 2000 case, noted this

4    distinction, and refused to apply a bar order against creditors

5    who were not parties to the adversary proceeding.

6          So if they had Shepardized Mumford, they would find that

7    it is not on point, and, frankly, the Covington Properties case

8    and the other case I cited is more on point.

9          The fact of the matter, your Honor, is we didn't ask to

10   come to this party.  We were invited with their proposed bar

11   order.  We didn't come in here seeking to be difficult.

12         We're not objecting to the amount of the settlement.

13   We're not objecting.  We're objecting to the infringement of

14   our rights prematurely when we have rights that we can

15   zealously represent, but they are trying to take away merely by

16   throwing out a notice.

17         It is unfathomable that they could seek to circumvent

18   personal jurisdiction, subject-matter jurisdiction, due

19   process, and Ninth Circuit law to make this attempt to seek to

20   enjoin us on a bar order and then to add insult to injury to

21   tell us we don't have a claim for contribution and indemnity;

22   therefore, you can't object to this bar order that we're

23   seeking to assert against you?  It's really unfathomable,

24   your Honor.

25         The other point I want to raise is we don't know.  Even

1    though we're not required to show, they're saying that there is

2    no claim of contribution and indemnity.  How do they know that?

3    They have alleged more than just intentional fraud.

4        Are they willing to stipulate here to us today that your

5    only claim's of intentional fraud against your clients?  You

6    don't have claims of unjust enrichment, money having received?

7        I don't know what the basis of those claims are.  Those

8    are equitable claims.  They could be negligent theories.

9    They've certainly alleged fraudulent-conveyance theories.

10        And if it weren't enough, your Honor, they've objected to

11   a proof of claim of Michael Petersen, so, clearly, they have

12   alleged we're creditors of the past.  And so even there, we got

13   standing.

14        The point, your Honor, for all the reasons that we've set

15   forth in our papers, for all the reasons that they cannot

16   point to -- and with all due respect to counsel of

17   Beadle, McBride, I cannot respond to some argument of that,

18   your Honor, we've done this in other unnamed cases that I can't

19   bring before the Court today.

20        They have not cited one case, not just under Nevada law,

21   in the United States, that stand for the proposition that they

22   can seek to enjoin, enjoin, any claims against third parties

23   that are not before the Court in the adversary proceedings.

24        That alone should be telling enough.  And absent any

25   further questions, your Honor, I'll submit it on the

1    papers.

2              THE COURT:  All right.  Thank you.

3              MR. COLLINS:  Your Honor --

4              THE COURT:  Reply.

5              MR. COLLINS:  -- may I respond?

6              THE COURT:  Um-h'm.  Oh, did you want to anything,

7    Mr. --

8              MR. O'REILLY:  Just briefly, your Honor.

9              THE COURT:  -- O'Reilly?

10             MR. O'REILLY:  John O'Reilly for Mr. Stan Fulton,

11   your Honor.  Just for the record, we would join in the

12   arguments of Mr. Katzman and point out to the Court that the

13   issues we're dealing with here really are a by-product of this

14   scheme of multiple pleadings and multiple lawsuits that the

15   Court alluded to earlier.

16        Plaintiffs have chosen to file suits on basically the same

17   issues, same conduct against multiple parties here and in

18   district court.

19        And we believe that, you know, as you look at the lawsuits

20   that they filed against our clients who are investors as are

21   others such as the Fertitta, such as Wells Fargo, and others

22   that they've named with these allegations that are quite

23   serious that they've made, and, yet, they have come before this

24   Court and said it was really the accountants that were

25   responsible for this.

1      We think, your Honor, the division between the accountants

2  and others if there is a division is one that ought to be

3  clearly heard, not summarily resolved by notice to parties who

4  really aren't a party to the lawsuit, part of this adversary

5  proceeding.

6      We think that not only common sense and due process

7  require it, but the clear absence of not one case as

8  Mr. Katzman emphasized quite clearly and as the Court has

9  identified to support the course of action that they are

10  proposing is indicative of the validity of their request, and

11  we would request, your Honor, that it be summarily denied.

12          THE COURT:  Okay.

13          MR. COLLINS:  Your Honor, if I may briefly respond?

14          THE COURT:  Yes, please.

15          MR. COLLINS:  Your Honor, one thing I'd like to point

16  out is that in the arguments by the Petersens' family counsel

17  and also Mr. Fulton's counsel is really taking this whole

18  situation in a different manner than what's before the Court

19  and trying to basically argue that what we're attempting to do

20  is to get an injunction to discharge a third party.

21      And I think as I explained earlier I just want to say that

22  the case law that's being cited and the arguments that are

23  being made based upon cases in other districts or in the

24  Ninth Circuit, but out of California, none of those cases deal

25  with the statute that we have here in Nevada.

1      And so to the extent that the Court is looking at this

2   from the standpoint of do I have the power to enjoin somebody

3   or discharge a third party, all of those issues are irrelevant

4   in the context of Nevada Statute 17.245.

5      And, thus, I think the argument that the Petersen Family

6   and also Mr. Fulton have is really an argument that's to be

7   addressed to the legislators and to the capitol as opposed to

8   this Court and arguing that it is unjust that there would be a

9   bar of contribution and indemnity claims.  That's not something

10  that this Court is doing.  That's something the legislature

11  did.

12     And then, secondly, your Honor, I just want to say that

13  this is a motion that's before the Court with all of the

14  information about the progress that the parties made in a

15  tough, hard-fought litigation with respect to serious claims on

16  behalf of the Trust and also serious defendants on behalf of

17  the defendant that would provide the creditors of the estate

18  with money within ten days of this order going final, and so we

19  respectfully request that you approve the application.

20     Thank you.

21          THE COURT:  Okay.

22          MR. SINKELDAM:  Very briefly, your Honor?

23          THE COURT:  Um-h'm.

24          MR. SINKELDAM:  Gary Sinkeldam.  NRS 17.245(1),

25  Subsection B reads, "It discharges the tortfeasor to whom it is

1    given from all liability for contribution and for equitable

2    indemnity to any other tortfeasor."

3        It does not say any other party.  It does not say any

4    other entity that is a party to this lawsuit.  It is broad

5    enough to bar any and all tortfeasors, not those that are

6    specifically parties to this subject litigation, and I think

7    that's the intent of the statute is to give finality to the

8    settling party.

9        Thank you.

10        THE COURT:  Well, it says to -- well, first, it's

11    liable in the tort for the same injury, so that would mean

12    joint tortfeasor.

13        MR. SINKELDAM:  Right.  Joint tortfeasor, but it

14    doesn't mean that a joint tortfeasor that's a party to that

15    same litigation.  It doesn't specifically limit the protection

16    to parties.

17        THE COURT:  Okay.  I see what you're saying.  All

18    right.

19        Well, I'm going to approve the settlement under 9019

20    assuming -- I want an affidavit from the Beadle firm, and I'm

21    going to assume for the moment that the affidavit supplies the

22    information that Mr. Berman has reached in his investigation.

23    If it doesn't, I will let you know, and we'll put this back on

24    calendar.

25        (Colloquy not on the record.)

1         THE COURT:  And I'll go back to that in a second.

2      Now, under the A&C Properties case, I find that as between

3   the estate and this entity that assuming again that

4   Mr. Berman's affidavit which is submitted and may well be

5   sufficient evidence I just feel it's appropriate to have a

6   nonhearsay affidavit about their condition is that based upon

7   the condition and the allegations it's a fair settlement.

8      Now, vis-a-vis the bar order, though, I am not going to

9   enter an order which contains the language put in paragraph 2

10  of the proposed order nor will I enter an order which makes a

11  finding or a conclusion of law to that effect nor will I make a

12  finding -- oh, I'm trying to find the proposed findings.  What?

13  Here it is.

14     I will not make a conclusion of law, paragraph 5, "having

15  received notice to any and all parties are barred" nor -- and

16  that's the only -- you didn't have a factual finding in that

17  regard.  Well, paragraph 12.  Oh, no.  USM (sic) Trust

18  beneficiary.  Okay.  That's correct.

19     I would, however, make a finding of fact that the

20  settlement is in good faith insofar as the very limited

21  definition of good faith, and I unfortunately didn't bring

22  Vincent out here.

23     I think the language is arm's-length without coercion --

24  that language -- which is also a part of the 9019 test, but I

25  will not make a finding that someone is barred.

1        I think that that -- even assuming arguendo that I can do

2    this proceeding, I think that that is better left to if such an

3    action is brought.

4        I don't think that I have sufficient information nor could

5    I ever have sufficient information to suggest, to find, that

6    all the elements have been met.

7        That is weighing the various levels of contribution.  I

8    don't even know who the other people are, and I don't think

9    it's appropriate, and I sincerely doubt that I have the ability

10   to do this by motion practice.

11       I won't make that finding because the Piercy people might

12   want to convince me to the contrary, but I sincerely doubt it,

13   but I'm not prepared to make the finding that it is a bar under

14   17.245.

15       But by the same token, I am not ruling that it isn't.  In

16   other words, 17.245 is operative as it is.  It says, "When a

17   release is given in good faith to one or more persons, it

18   discharges a tortfeasor."  Nowhere in there is language that

19   says there is a bar or a Court enters a bar.  It's an operative

20   effect.

21       So what happens in just like all other litigation, if

22   you're given a discharge, that's a defense in the state court

23   litigation.  It's just like a discharge in bankruptcy can be

24   raised by a defense in litigation.  That's how it operates.

25       And I think this notion of a bar order has been practiced,

1    but I don't think this Court needs to give such an order nor

2    will I give such an order.

3        I do find that the estate has in good faith sought to seek

4    a bar order, so, therefore, the settlement is approved and is

5    effective.

6                MR. O'REILLY:  Your Honor, could counsel be

7    instructed to include some of these findings that you just

8    articulated concerning the fact there is no bar order in the

9    findings and the conclusions, so there's no doubt that in the

10   future as to what the Court has determined as opposed leaving

11   it --

12               THE COURT:  Well, you can do --

13               MR. O'REILLY:  -- unaddressed?

14               THE COURT:  -- one of two things.  We can do my oral

15   findings and conclusions on the record.  In which case, I'll go

16   through each one, and then let me articulate it a little

17   better, so if you want written, then I appreciate that fact.

18               MR. O'REILLY:  Yes, please, your Honor.

19               THE COURT:  Okay.  Does anybody have a copy of

20   Vincent handy because I do --

21               MR. SINKELDAM:  It's at --

22               THE COURT:  -- want to incorporate that language

23   about arm's-length, and --

24               MR. SINKELDAM:  I do, your Honor.

25               THE COURT:  We all know the need to use magic

1    language, so --

2            MR. SINKELDAM:  May I approach?

3        (Colloquy not on the record.)

4            THE COURT:  And that was a part of the MGM factors,

5    wasn't it, as opposed to the --

6            MR. SINKELDAM:  Yes, your Honor.  They were citing

7    the MGM factors.  It was citing the Tech-Bilt case from

8    California.

9            THE COURT:  All right.  Oh, here it is.

10           MR. O'REILLY:  Your Honor, would it be possible to do

11   these in a submittal to the Court --

12           THE COURT:  Oh, that's a good idea.

13           MR. O'REILLY:  -- so we can have a chance to object

14   to them, and this is, you know, a sort of process that we would

15   use in state court, normally --

16           THE COURT:  Sure.

17           MR. O'REILLY:  -- where we'd get --

18           THE COURT:  And you're right.

19           MR. O'REILLY:  -- a chance to see it.

20           THE COURT:  Let's do that.  That's fine.  I

21   appreciate that fact, so that we're clear on the issues, and so

22   then let me make my intent clear.

23       My intent in getting clear is that I would find that good

24   faith under -- here it is.  "That there has not been the

25   existence of collusion, fraud, or tortious conduct aimed to

1   injure the interest of nonsettling defendants."

2       I could make that finding, and I will make a finding as to

3   the financial condition of the settling defendant, the one who

4   settled, because that will be incorporated in the 9019.

5       But I am not going to make the finding as to whether good

6   faith has been evaluated as to the total amount paid and then

7   nor the factors as to the role of the liabilities between the

8   parties.

9       In other words, I make no finding as to the merits of

10  potential indemnity claims, and I make no finding as to whether

11  or not it's fair in relation to any other tortfeasors' chances

12  of success on a substantive implied-indemnity claim.

13      (Thereupon, Rene' Hannah concluded as transcriber,

14      and Lisa L. Cline commenced as transcriber

15      at 11:01:35 a.m.)

16      MR. O'REILLY:  Your Honor, in regard to your

17  financial finding, I presume that depends on the Beadle

18  affidavit?

19      THE COURT:  Yes.  And, you know, I could wait, and we

20  could continue this hearing.  Maybe we should have a special

21  hearing on this one, so we're not delaying things, but we get

22  it done quicker.

23      Does anybody have a problem with that or do you want to

24  wait?  I don't think we want to wait until December 16th, do

25  we?

```
1            MR. COLLINS:  No, your Honor.

2            THE COURT:  We want --

3            MR. COLLINS:  We think we could get --

4            THE COURT:  -- it sooner --

5            MR. COLLINS:  -- this done --

6            THE COURT:  -- than later.

7            MR. COLLINS:  -- pretty quick.

8            THE COURT:  Well, do you want a set a hearing like

9     the first week of December?  I would allow people to appear

10    telephonically on this one because it's just going to be --

11    well, you're going to be arguing about the findings.

12        Assuming that you reach an agreement on the findings, you

13    can all appear telephonically.  There we go.  That will get

14    people to agree.

15        (Colloquy not on the record.)

16            THE COURT:  And when can I have the Beadle affidavit,

17    by Monday?

18            MR. SINKELDAM:  Monday of next week, your Honor?

19            THE COURT:  Uh-huh.

20            MR. SINKELDAM:  That shouldn't be a problem.

21            THE COURT:  Okay.  In other words, I just want

22    them -- Mr. Berman has suggested that he's -- and/or -- well,

23    in addition -- well, it needs to be -- and then, again, I'm

24    looking at it from the A&C Properties angle for the most part,

25    in other words, relative culpability, so do I have in the
```

58

1    pleadings the alleged damages, the amount of alleged damages,

2    you were seeking?

3            MR. COLLINS:  No, your Honor.  We don't have that

4    specifically laid out.

5            THE COURT:  I'd like that in Mr. Berman's

6    affidavit --

7            MR. COLLINS:  Okay.

8            THE COURT:  -- understanding it's a range, et cetera,

9    because you can't really adjust, you know, what it is unless

10   you know what the damages are.

11           MR. COLLINS:  We can add an allegation to that

12   finding.

13           THE COURT:  Okay.

14           MR. SINKELDAM:  Your Honor, for a clarification, did

15   you make a finding that the Beadle settlement is in good faith

16   pursuant to NRS 17.245?

17           THE COURT:  No.  All I made it -- I did not.  I'm not

18   making a finding nor am I finding it's not in good faith.  I am

19   not -- as the term "good faith" is defined in 17.245, I do not

20   address the issue.

21           MR. SINKELDAM:  Okay.  And just so I'm clear, that's

22   not based upon the fact that you do not have enough information

23   before you today?

24           THE COURT:  Well, it's partly I don't nor can I.

25   It's you could not possibly supplement the information because

1    you don't know who's all out there.

2         MR. SINKELDAM:  Okay.  Thank you.

3         THE COURT:  So I am not ruling on whether or not it's

4    a good-faith settlement under 17.245.  I would make, however,

5    that one part of that finding, but I'm not ruling.

6         But that means I don't mean to suggest in any manner that

7    it's not a good-faith settlement.  I'm just not ruling on

8    whether within the meaning of 17.245 that this constitutes a

9    good-faith settlement.

10         MR. SINKELDAM:  Thank you.

11         THE COURT:  All right.  So we need to come back, so

12    how about December 2nd at -- how bad is my -- when am I through

13    with my 9:30s?

14         THE CLERK:  They should, probably, take --

15         THE COURT:  Are they bad?

16         THE CLERK:  -- about a half hour (indiscernible).

17         THE COURT:  Are there any 10:30s?  I just have the

18    9:30s?

19         THE CLERK:  You have a motion for relief

20    (indiscernible).

21         THE COURT:  Okay.  So 11:00 might be safe?  No.  It

22    starts at 10:30 now, doesn't it?

23         THE CLERK:  (Indiscernible).

24         THE COURT:  You said didn't I have a

25    motion-for-relief-stay calendar?

1          THE CLERK:  Yeah.  But it's at 9:30 that one.

2          THE COURT:  Oh, okay.

3          THE CLERK:  (Indiscernible) special day that we set.

4          THE COURT:  Okay.  Do I have anything on the 2nd now?

5   Oh, yeah.  I got 93 matters.

6       (Colloquy not on the record.)

7          THE COURT:  That's a light day.

8       We can do it at 1:30.  I just have to leave by -- no.

9   That's too late.  I have to leave by 2:00.  We could do it at

10  11:00.

11         MR. O'REILLY:  11:00 a.m. on the 2nd, your Honor?

12         THE COURT:  That's fine, uh-huh.  And if it's

13  resolved, you can appear telephonically.  If it's not, I would

14  like the counsel that's going to argue about the findings here.

15      Mr. Berman, I'd excuse your appearance, but whoever's

16  going to argue the findings if we're going to be argument.

17  It's just too hard to do over the phone, and I apologize for

18  that.

19         MR. O'REILLY:  Your Honor, just for a clarification,

20  in addition to the Beadle affidavit by November the 24th, would

21  it be possible to also order if there is a supplemental

22  affidavit from Mr. Berman that it be submitted at the same

23  time --

24         THE COURT:  Can you do that?

25         MR. O'REILLY:  -- as well as the proposed findings of

1    fact and conclusions of law --

2              THE COURT:  Can they --

3              MR. COLLINS:  Yes, your Honor.

4              THE COURT:  Okay.

5              MR. O'REILLY:  -- and judgment order?

6              THE COURT:  So if everybody can get -- I'll give you

7    'til the 25th.  Everybody get the proposed findings of fact and

8    conclusions -- oh, no.  With the holiday, it doesn't give you

9    any time, does it?  So let's make it the 24th.

10             MR. O'REILLY:  That would be to us as well as,

11   your Honor --

12             THE COURT:  Yes, if you could.

13             MR. O'REILLY:  -- as well as to the Court?

14             THE COURT:  Um-h'm.

15             MR. O'REILLY:  Thank you, your Honor.

16             THE COURT:  All right.  Thank you very much.

17             MR. COLLINS:  Thank you, your Honor.

18             THE COURT:  Okay.  Let's take a short recess before

19   we do our other matters.

20        (Colloquy not on the record.)

21             THE CLERK:  All rise.

22        (Recess at 11:06:27 a.m.)

23        (Thereupon, the portion requested to be transcribed

24        was concluded at 11:06:27 a.m.)

25

1     I certify that the foregoing is a correct transcript

2     from the electronic sound recording of the proceedings in

3     the above-entitled matter.

4

5

6     /s/ Lisa L. Cline                          11/20/08

7     _____          _____
      Lisa L. Cline, Transcriptionist             Date

8

9

10

11

12    /s/ Rene' Hannah                           11/20/08

13    _____          _____
      Rene' Hannah, Transcriptionist              Date

14

15

16

17

18

19

20

21

22

23

24

25