E-filed on 11/21/08

| | |
|---|---|
| **DIAMOND MCCARTHY LLP** | **LEWIS AND ROCA LLP** |
| 909 Fannin, Suite 1500 | 3993 Howard Hughes Parkway, Suite 600 |
| Houston, Texas 77010 | Las Vegas, NV 89169-5996 |
| Telephone (713) 333-5100 | Telephone (702) 949-8320 |
| Facsimile (713) 333-5199 | Facsimile (702) 949-8321 |
| | |
| Allan B. Diamond, TX State Bar No. 05801800 | Rob Charles, NV State Bar No. 006593 |
| Email: adiamond@diamondmccarthy.com | Email: rcharles@lrlaw.com |
| Eric D. Madden, TX State Bar No. 24013079 | |
| Email: emadden@diamondmccarthy.com | |
| | |
| Special Litigation Counsel for the | Counsel for the USACM Liquidating Trust |
| USACM Liquidating Trust | |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases<br><br>Judge Linda B. Riegle |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | **Adversary No. 08-01123-lbr** |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **USACM LIQUIDATING TRUST'S SECOND AMENDED COMPLAINT**<br><br>Hearing Date:   n/a<br>Hearing Time:  n/a |
| USACM LIQUIDATING TRUST<br><br>Plaintiff,<br><br>v.<br><br>FIESTA DEVELOPMENT, INC.; ASHBY USA, LLC; RICHARD K. ASHBY; RANDOM DEVELOPMENTS, LLC; ASHBY DEVELOPMENT COMPANY, INC.<br><br>Defendants. | |

USACM LIQUIDATING TRUST'S SECOND AMENDED COMPLAINT

Plaintiff USACM Liquidating Trust (the "Trust"), as successor to USA Commercial Mortgage Company ("USACM"), hereby complains as follows:

## I.    NATURE OF THIS ACTION

1.    In April 2006, USACM, USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), and certain related entities sought bankruptcy protection as a result of the gross misconduct by certain insiders, namely Thomas A. Hantges ("Hantges") and Joseph D. Milanowski ("Milanowski") (collectively, the "Culpable Insiders").   Among other wrongful conduct, the Culpable Insiders systematically looted USACM and DTDF to fund USA Investment Partners, LLC ("USAIP"), an entity that functioned as their personal "piggy bank," as well as other entities in which they stood to reap substantial personal profits.

2.    In the aggregate, the Culpable Insiders misappropriated tens of millions of dollars from USACM and DTDF in order:  (a) to fund the negative cash flow operations of USAIP and its vast network of affiliated entities; and (b) to pay USAIP's obligations to third parties.   In this adversary proceeding, Plaintiff seeks to recover approximately $4.9 million that the Culpable Insiders misappropriated from USACM and fraudulently transferred to Defendants as part of their scheme.

## II.    JURISDICTION / VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and/or relates to this bankruptcy case.

4.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

5.    This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6.       All of the Defendants are subject to personal jurisdiction in this Court.

7.       This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409(a).

### III.    PARTIES

**A.    PLAINTIFF**

8.       Plaintiff Trust was created pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") filed by USACM, DTDF, and three other debtors in Bankruptcy Case No. 06-10725 (Docket No. 1799).  The Joint Plan was confirmed by the Bankruptcy Court on January 8, 2007, and became effective on March 12, 2007.   The Joint Plan expressly retained USACM's causes of action for enforcement by the Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B). The Joint Plan also transferred certain causes of action belonging to USA Capital First Trust Deed Fund, LLC to the Trust.   The Trust, therefore, has standing to bring this action against the Defendants.   The Trust is a liquidating trust organized under Nevada law.   The Trust's beneficiaries are the holders of allowed unsecured claims against USACM.  Geoffrey L. Berman serves as the trustee of the Trust and may be served through undersigned counsel.

9.       In the time period since the plan became effective on March 12, 2007, the USACM Trust has conducted an investigation into the misconduct of the Culpable Insiders and the third-party wrongdoers that ultimately led to USACM's collapse in April 2006.  As a result of this investigation, the USACM Trust has learned of the fraudulent transfers and misconduct described herein.  Neither USACM's creditors nor the USACM Trust discovered or could have discovered the fraudulent transfers and misconduct prior to April 2006.

**B.    DEFENDANTS**

10.       Defendant Fiesta Development, Inc. ("Fiesta") is a California corporation with its principal place of business in the State of California at 470 E. Harrison Street, Corona, California

92879.  Defendant Fiesta can be served through its registered agent, Jeanne Deringer, at 470 E.

Harrison Street, Corona, California 92879.

11.    Defendant Ashby USA, LLC ("Ashby USA") is a California limited liability company with its principal place of business in the State of California at 470 E. Harrison Street, Corona, California 92879.  Defendant Ashby USA can be served through its registered agent, Justin K. Ashby, at 470 E. Harrison Street, Corona, California 92879.

12.    Defendant Random Developments, LLC ("Random Developments") is a California limited liability company with its principal place of business in the State of California at 470 E. Harrison Street, Corona, California 92879.  Defendant Random Developments can be served through its registered agent, John Kendrick, at 19800 MacArthur Blvd., Suite 270, Irvine, California 92715.

13.    Defendant Ashby Development Company, Inc. ("Ashby Development") is a California corporation with its principal place of business in the State of California at 470 E. Harrison Street, Corona, California 92879.  Defendant Ashby Development can be served through its registered agent, Jeanne Deringer, at 470 E. Harrison Street, Corona, California 92879.

14.    Defendant Richard K. Ashby ("Ashby") is an individual and upon information and belief is residing in the State of California at 3751 Nimble Circle, Huntington Beach, CA 92649. Defendant Ashby can be served by personal service at the address listed above or wherever he may be found.

15.    Fiesta, Ashby USA, Random Developments, Ashby Development, and Ashby shall be collectively referred to herein as the "Defendants."

## IV.    FACTUAL ALLEGATIONS

### A.    BACKGROUND OF USACM AND ITS DEMISE

16.    In April 2006, USACM and certain related companies collapsed due to the fraud perpetrated on them by Culpable Insiders.  Beginning as early as 1997, the Culpable Insiders employed a pervasive "Ponzi"-like scheme that enabled them to loot and/or misappropriate tens of millions of dollars from USACM.  As a result of these wrongful activities, USACM was insolvent at least as early as December 31, 2001, if not earlier.  Eventually USACM (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 (the "Petition Date").

17.    USACM was a mortgage broker and loan servicing company whose primary business activities were: (a) "originating" short-term loans from investors to real estate developers; and (b) servicing the loans that it originated by collecting principal and interest from borrowers and distributing those payments to the investors.  USACM earned revenue by charging various fees for these services, including origination, servicing, and extension fees, although these fees often went uncollected.

18.    A significant portion of the fee revenues that USACM actually received was subsequently misappropriated by the Culpable Insiders.  Specifically, the Culpable Insiders misappropriated USACM's money to fund entities in which they held an indirect ownership interest through USA Investment Partners, LLC ("USAIP"), including time-share hotels, real estate development entities, and technology companies.  The Culpable Insiders often earmarked USACM funds and used USAIP as a conduit for fraudulently transferring these funds to such entities.  In other instances, the Culpable Insiders caused USACM to directly transfer funds to entities in which USAIP and the Culpable Insiders had an interest.  In the aggregate, the Culpable

Insiders misappropriated tens of millions of dollars from USACM to fund their outside business ventures.

19.    It was completely adverse to USACM's interests for the Culpable Insiders to misappropriate USACM's funds for the benefit of USAIP.  USACM owed no obligation, and received no benefit for the money provided to USAIP and/or on its behalf. The Culpable Insiders did not charge and/or collect interest on any of these transfers of USACM's funds, thereby precluding USACM from using this money in legitimate investments.  In addition, the Culpable Insiders rarely repaid transfers of USACM's funds for USAIP's benefit.  In the aggregate, USACM transferred at least $58 million to USAIP to fund USAIP's investments and pay its obligations.[1]  Prior to the Petition Date, USAIP's obligation to repay USACM was undocumented and appeared only as an enormous intercompany receivable to USACM.  In at least some instances, the Bankruptcy Court has already found that USACM did not receive reasonably equivalent value when it transferred funds to USAIP in exchange for incremental increases to this intercompany receivable.  USAIP's failure to repay such transfers and its ultimate bankruptcy has prevented any possibility of USACM fully recovering on such obligations.

20.    Transfers to USAIP and similar transfers to other entities owned or controlled by the Culpable Insiders were recorded as intercompany receivables and investments in business ventures.  This gave the transactions the appearance of legitimacy, and disguised the true nature of the transactions from the perspective of regulatory authorities, direct lender investors, creditors, and USACM's innocent owners, directors, officers, and employees (collectively, the "Stakeholders").  In reality, the USAIP receivable and other receivables and "investment"

---

[1]  The $58 million obligation is in part or in whole reflected in the note between USACM and USAIP dated May 15, 2006. The Bankruptcy Court approved the note by order dated July 24, 2006.

accounts represented the misappropriation of USACM's assets.  Because of the Culpable Insiders' multi-faceted efforts to conceal their scheme, the true nature of these transfers was only discoverable through the detailed investigations performed by the Trustee subsequent to the Petition Date.

21.    In addition, the Culpable Insiders caused USACM to make scores of other payments for which it received no benefit and for which it had no underlying obligation. Routinely, the Culpable Insiders commingled USACM's operating funds with funds held in the USACM Collections Trust Account and other funds to make regular interest and principal payments to investors in non-performing loans.  These payments were made to conceal delinquent and defaulted loans from other USACM directors, officers, employees, shareholders, as well as the investors and regulatory authorities.  In turn, this induced existing investors to maintain or increase their investments with USACM and enticed new investors to entrust their money to USACM, thereby providing the Culpable Insiders with liquidity to fund their scheme, and thus, future sources of funds to loot from USACM.

22.    Ultimately, USACM lost millions of dollars by making principal and interest payments on loan obligations that it did not owe on behalf of defaulting borrowers.  USACM did not receive any benefit from making these "pre-payments" of interest and principal.  Rather, such payments were expressly forbidden by Nevada law, including NRS 645B.250.

23.    The Culpable Insiders also misappropriated USACM's funds directly for their personal benefit. USACM frequently made unsecured, interest-free "advances" directly to the Culpable Insiders.  In other instances, the Culpable Insiders misappropriated USACM funds to pay for professional services rendered solely for the benefit of the Culpable Insiders and/or one of their outside business ventures.

24.     Ultimately, USACM lost tens of millions of dollars through the myriad of ways in which the Culpable Insiders' systematically misappropriated USACM funds.[2]  Additionally, the Culpable Insiders also systematically looted DTDF to fund USAIP and its affiliated entities. Approximately $55 million was taken from DTDF and sent to USAIP and related entities, either directly or indirectly through two sham companies — 10-90, Inc. ("10-90") and Mountain Vista, Inc.

## B. FUNDS WITHIN THE USACM COLLECTIONS TRUST ACCOUNT ARE AN INTEREST OF THE DEBTOR IN PROPERTY

25.     The Culpable Insiders commingled funds within the USACM Collections Trust Account (the "Collections Account").  Specifically, principal and interest payments made by borrowers on performing loans were used in conjunction with USACM's servicing fees, USACM operating funds, funds due to USACM from assignments, and investor funds to make interest payments to investors on non-performing and defaulted loans and for other improper purposes.

26.     Where funds were taken from the Collections Account, it is practically, if not wholly, impossible to clearly identify the source of these funds or otherwise trace the funds. Accordingly, the Joint Plan provides that certain funds[3] transferred out of the Collections Account are property of the USACM estate.

## C. DEFENDANTS' DEALINGS WITH USACM AND USAIP

27.     Defendants and/or other entities affiliated with Defendants' principals, Richard Ashby ("Ashby") and Larry Redman ("Redman") (collectively, the "Ashby Affiliates"), first began to conduct business with USACM in the mid to late 1990s.  Over the course of the ensuing

---

[2] A more detailed discussion of the fraudulent scheme leading to USACM's demise and bankruptcy may be found in the USACM Liquidating Trust's Complaint Against Deloitte & Touche, LLP and Victoria Loob.  *See* Docket No. 1 in Cause No. 2:08-cv-00461-PMP-PAL, pending in the United States District Court, District of Nevada, Las Vegas Division.

[3] Specifically, the Joint Plan provides that "Prepaid Interest" is an asset of the USACM estate.

decade, USACM originated approximately a dozen loans totaling well over $50 million to Ashby Affiliates. At all relevant times, Milanowski was the primary relationship contact at USACM for the Ashby Affiliates.

28. Over the course of their relationship with USACM, USAIP, and Milanowski, the Ashby Affiliates knew or should have known that Milanowski regularly breached his fiduciary duties to USACM and its investors.

29. First, Milanowski did not always obtain appraisals before causing USACM to originate loans to Ashby Affiliates. In doing so, Milanowski breached duties to USACM by increasing USACM's risk of exposure to liability. Specifically, USACM could have potentially been liable to the investors who invested in these loans if the underlying collateral was insufficient to re-pay the investors in the event of default and foreclosure.

30. Second, Milanowski sometimes caused USACM to make unsecured loan advances and/or other unsecured advances to Ashby Affiliates. In some instances, Milanowski caused USACM to advance funds prior to the actual closing of the underlying loan transaction to Ashby Affiliates. These initial advances and/or other advances were unsecured (at least initially) as no deed of trust was recorded at the time the payments were made. Similarly, Milanowski caused USACM to make loan advances in excess of loan commitments to Ashby Affiliates. These excess advances were unsecured, as the deed of trust on the underlying collateral was only in the amount of the actual loan commitment.

31. Third, Milanowski caused USACM to automatically grant loan extensions on loans originated to the Ashby Affiliates. These loan extensions became routine, as the Ashby Affiliates typically did not pay off the loans by the maturity date listed in the original loan documents. Unlike the Ashby Affiliates' typical experience with other lenders, Milanowski caused USACM

to grant these extensions without asking for appraisals on the property and/or requesting applicable extension fees to be paid up front. In addition, several loan extension agreements were not executed until several months after the maturity date contained in the original loan documents or previous loan extension agreement(s). In such situations, Milanowski caused several of these loan extension agreements to be back-dated.

32. Fourth, Milanowski caused USACM to originate loans so that USAIP would become a joint venture partner with Ashby Affiliates in certain real estate projects via "equity kickers" in the borrower entities. Specifically, USAIP obtained a 50% membership interest in: Random Developments, LLC, Capital Land Investors, LLC, Oak Mesa Investors, LLC, and Buffalo Land Development, LLC in exchange for USACM originating loans to these entities. Capital Land Investors, LLC has filed for bankruptcy protection.

33. Fifth, Milanowski caused USACM to originate loans solely for the purpose of making capital contributions on USAIP's behalf to its joint ventures with Ashby Affiliates. For example, Milanowski caused USACM to originate a $4.15 million loan to Ten-Ninety, Ltd. (the "Ten-Ninety Loan"). The Ten-Ninety Loan was classified as a capital contribution made by USAIP in the joint venture for the "Stoneridge" development, a 640 acre project near Perris, California.[4] The Ten-Ninety Loan is currently in default.

34. Sixth, Milanowski caused USACM to originate loans to Ashby Affiliates in which distributions were paid to USAIP at closing. For example, in May 2004, USACM originated a $7.2 million loan to R & D Land Investors, LLC, which resulted in $2 million of the loan proceeds being disbursed to USAIP as an "other disbursement" at closing.

---

[4] USAIP held a 50% membership interest in Random Developments, LLC and also in Capital Land Investors, LLC ("Capital Land"). Random Developments and Capital land were involved in the Stoneridge joint venture between USAIP and the Ashby Affiliates.

35.    Finally, Milanowski repeatedly caused USACM to advance funds from its corporate operating account to the Ashby Affiliates in order to make capital contributions on USAIP's behalf.   Many of these transfers were disguised as legitimate intercompany loans, thereby serving to conceal the fraudulent nature of the transfers from USACM's innocent Stakeholders, including its creditors.   This practice began with the formation of Ashby USA in 2001.   Ashby USA was created for the purpose of taking over a pre-existing loan that USACM had originated to Butterfield Development Company, Inc. ("Butterfield") and the related real estate project known as the "Roripaugh Ranch."   At all relevant times, USAIP held a fifty percent (50%) membership interest in Ashby USA.   Ashby Development and/or Butterfield owned the remaining membership interest.

36.    USACM wired money to, or for the benefit of, Ashby USA beginning at least as early as February 13, 2001.   The Culpable Insiders directed USACM to make these transfers in order to fulfill USAIP's obligations and further their self-interests.   Although the Ashby Affiliates knew that the wire transfers were made from USACM rather than from USAIP, upon information and belief, they never questioned Milanowski or anyone else at USACM why USACM was sending these funds.   These transfers and other transfers that Milanowski caused USACM to make to Ashby Affiliates are discussed in more detail herein.

37.    In addition to their knowledge of Milanowski's repeated breaches of fiduciary duty and failure to observe corporate formalities, the Ashby Affiliates knew of USAIP's financial difficulties at least as early as January 2004.   Specifically, from the beginning of 2004 onward, USAIP struggled to make its required capital contributions to the joint ventures that it had with Ashby Affiliates.   During this time period, Milanowski's inability to timely fund the capital

contributions and general lack of responsiveness became a "running joke" among the Ashby Affiliates.

**D.    THE TRANSFERS TO DEFENDANTS**

### 1.  The Early Ashby USA Transfers

38.    In early 2001, Ashby and the Culpable Insiders formed Ashby USA.  Beginning at least as early as February of 2001, the Culpable Insiders caused USACM to make a series wire transfers from its operating account to, or for the benefit of, Ashby USA.  Upon information and belief, these transfers were made to fulfill USAIP's obligations.

39.    Ashby Development served as the managing member of Ashby USA after Ashby USA was legally incorporated as a limited liability company on March 8, 2001 (the "Organization Date").   However, upon information and belief, Ashby Development conducted business on Ashby USA's behalf prior to the Organization Date.  Because Ashby USA did not open a bank account until a number of weeks after the Organization Date, Ashby Development accepted funds on Ashby USA's behalf and expended those funds to further Ashby USA's interests.   The Culpable Insiders caused USACM to wire transfer the following amounts to Ashby Development for the benefit of Ashby USA (the "Ashby Development Transfers"):

| Date | Amount |
|------|--------|
| February 13, 2001 | $   215,000.00 |
| March 1, 2001 | $   300,000.00 |
| March 5, 2001 | $   115,000.00 |
|  | $   630,000.00 |

40.    Once Ashby USA opened a bank account, USACM made additional transfers directly to Ashby USA throughout 2001 (the "2001 Ashby USA Transfers"):

| Date | Amount |
|------|--------|
| July 26, 2001 | $ 50,000.00 |
| August 7, 2001 | $ 120,000.00 |
| September 10, 2001 | $ 50,000.00 |
| September 14, 2001 | $ 170,460.55 |
| September 21, 2001 | $ 250,000.00 |
| December 28, 2001 | $ 250,000.00 |
| | $ 890,460.55 |

41.      USACM received no benefit for making either the Ashby Development Transfers or the 2001 Ashby USA Transfers and had no obligations to make such transfers.   Upon information and belief: (1) these transfers were made in order to satisfy USAIP's lending and capital obligations to Ashby USA; and (2) the Culpable Insiders directed these transfers with the intention of benefiting only themselves.

### 2.  The 2002 Ashby USA Transfers

42.      During 2002, the Culpable Insiders continued to cause USACM to wire funds from its operating account to Ashby USA (collectively, the "2002 Ashby USA Transfers"):

| Date | Amount |
|------|--------|
| February 14, 2002 | $ 50,000.00 |
| May 3, 2002 | $ 200,000.00 |
| May 15, 2002 | $ 50,000.00 |
| June 3, 2002 | $ 125,000.00 |
| June 18, 2002 | $ 100,000.00 |
| September 24, 2002 | $ 100,000.00 |
| November 12, 2002 | $ 70,000.00 |
| December 10, 2002 | $ 275,000.00 |
| December 30, 2002 | $ 416,000.00 |
| | $ 1,386,000.00 |

43.      USACM received no benefit for making the 2002 Ashby USA Transfers and had no obligations to make such transfers.  Upon information and belief: (1) these transfers were made

in order to satisfy USAIP's lending and capital obligations to Ashby USA; and (2) the Culpable Insiders directed these transfers with the intention of benefiting only themselves.

44.    To conceal the true nature of the Ashby Development Transfers, the 2001 Ashby USA Transfers, and the 2002 Ashby USA Transfers, the Culpable Insiders caused those transfers to be removed from USACM's accounting records.  Specifically, at the end of 2001, the receivable from Ashby USA totaled almost $1.6 million, but the beginning balance in 2002 showed a zero balance.  Additionally, the balance due from Ashby USA from transfers made in 2002 were reclassified as due from USAIP.  This helped served to conceal the fraudulent nature of the transactions.

### 3. The Fiesta Transfer

45.    The Culpable Insiders caused: (a) USACM to wire transfer $300,000 from its operating account to USAIP on January 25, 2005; (b) USACM to wire transfer $500,000 from its operating account to USAIP on January 26, 2005 and (c) USAIP to transfer $125,000 of USACM's funds to Fiesta on January 26, 2005 (collectively the "Fiesta Transfer").  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $125,000 directly through USAIP to Fiesta.  Fiesta received these funds on January 27, 2005.  USACM had no obligation to transfer $125,000 to Fiesta, and USACM received no benefit in exchange for making the Fiesta Transfer.  Upon information and belief, the Culpable Insiders directed these transfers with the intention of benefiting only themselves.

### 4. The Early Random Developments Transfers

46.    In late 2004 and early 2005, the Culpable Insiders caused USACM to make two transfers through USAIP to Random Developments as described in the following paragraphs (collectively, the "Early Random Developments Transfers").

47.     The Culpable Insiders caused USACM to draft a check from its operating account payable to USAIP in the amount of $700,000 on October 21, 2004.  This check cleared on October 25, 2004.  The Culpable Insiders then caused USAIP to transfer $80,446.45 of USACM's funds to Random Developments on October 26, 2004.  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $80,446.45 directly through USAIP to Random Developments.

48.     The Culpable Insiders caused: (a) USACM to transfer $1.17 million from its operating account to USAIP on March 1, 2005; and (b) USAIP to transfer $483,359.49 of USACM's funds to Random Development on March 3, 2005.  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $483,359.49 directly through USAIP to Random Developments.  Random Developments received these funds on March 4, 2005.

49.     USACM received no benefit for making these transfers, as they were merely capital contributions that USACM made on behalf of USAIP.  Nor did USACM have any obligation to make the Early Random Developments Transfers.  Upon information and belief, the Culpable Insiders directed these transfers with the intention of benefiting only themselves.

**5.  The Late 2005 Random Developments Transfers**

50.     In late 2005, Milanowski caused USACM to make three transfers totaling $500,000 through USAIP to Random Developments as described in the following paragraphs (collectively, the "Late 2005 Random Developments Transfers").

51.     The Culpable Insiders caused: (a) USACM to wire transfer $350,000 from its operating account to USAIP on September 9, 2005; and (b) USAIP to wire transfer $150,000 of USACM's funds to Random Developments on September 13, 2005.  Upon information and belief,

the Culpable Insiders earmarked and wired these funds with the purpose of sending $150,000 directly through USAIP to Random Developments.

52.     The Culpable insiders caused: (a) USACM to wire transfer $950,000 from its operating account to USAIP on September 23, 2005; and (b) USAIP to wire transfer $150,000 of USACM's funds to Random Developments on September 26, 2005.  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $150,000 directly through USAIP to Random Developments.

53.     The Culpable Insiders caused: (a) USACM to wire transfer $1.5 million from its operating account to USAIP on November 4, 2005; and (b) USAIP to wire transfer $200,000 of USACM's funds to Random Developments on November 7, 2005.  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending $200,000 directly through USAIP to Random Developments.

54.     USACM received no benefit for making these transfers, as they were merely capital contributions that USACM made on behalf of USAIP.  Nor did USACM have any obligation to make the Random Developments Transfers. Upon information and belief, the Culpable Insiders directed these transfers with the intention of benefiting only themselves.

### 6.  The Richard Ashby Transfer

55.     The Culpable Insiders and Victoria Loob ("Loob") caused: (a) USACM to wire transfer $3,118,819.47 from its Collections Account to USAIP on November 2, 2004; and (b) USAIP to wire transfer $500,000 of USACM's funds to Ashby on November 8, 2004 (collectively the "Richard Ashby Transfer").  From the outset of this transaction, Milanowski and Loob had earmarked $500,000 of this transfer for Ashby.

56.     USACM received no benefit for making this transfer.  Nor did USACM have any obligation to make the Richard Ashby Transfer.   Upon information and belief, the Culpable Insiders directed this transfer with the intention of benefiting only themselves.

### 7. The Indirect Ashby USA Transfer

57.     The Culpable Insiders caused: (a) USACM to wire $300,000 from its operating account to USAIP on May 6, 2005; and (b) USAIP to promptly transfer that $300,000 (plus an additional $85,000) of USACM's funds to Ashby USA on the same day (collectively the "Indirect Ashby USA Transfer").  Upon information and belief, the Culpable Insiders earmarked and wired these funds with the purpose of sending the funds directly through USAIP to Ashby USA.

58.     USACM received no benefit for making this transfer, as it was merely a capital contribution that USACM made on behalf of USAIP.  Nor did USACM have any obligation to make the Indirect Ashby USA Transfer.  Upon information and belief, the Culpable Insiders directed this transfer with the intention of benefiting only themselves.

### V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (11 U.S.C. § 548(a)(1)(A))

59.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

60.     The Late 2005 Random Developments Transfers and the Indirect Ashby USA Transfer (collectively, the "Federal Lookback Transfers") were of an interest of the Debtor in property.

61.     The Federal Lookback Transfers were made within one year of the Petition Date.

62.     The Federal Lookback Transfers were made with the intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to on or after the date these transfers were made.

63.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trust asks this Court to avoid the Federal Lookback Transfers.

**SECOND CAUSE OF ACTION**
**(11 U.S.C. § 548(a)(1)(B))**

64.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

65.     The Federal Lookback Transfers were of an interest of the Debtor in property.

66.     The Federal Lookback Transfers were made within one year of the Petition Date.

67.     The Debtor received less than a reasonably equivalent value in exchange for the Federal Lookback Transfers.

68.     The Debtor was insolvent on the date the Federal Lookback Transfers were made or became insolvent as a result of these transfers.

69.     As a result of the Federal Lookback Transfers, the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

70.     As a result of the Federal Lookback Transfers, the Debtor intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

71.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trust asks this Court to avoid the Federal Lookback Transfers.

**THIRD CAUSE OF ACTION**
**(11 U.S.C. § 544 and NRS 112.180(1)(a))**

72.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

73.     The Ashby Development Transfers, 2001 Ashby USA Transfers, the 2002 Ashby USA Transfers, the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the Indirect Ashby USA Transfer were of an interest of the Debtor in property (collectively, the "Nevada Actual Intent Transfers").

74.     The Nevada Actual Intent Transfers were made within the applicable period as set out in NRS 112.230(1) and 11 U.S.C. § 108(a).

75.     On the date of the Nevada Actual Intent Transfers and the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Nevada Actual Intent Transfers pursuant to Nevada state law.  Furthermore, a creditor who extended credit to the Debtor at the Petition Date could have avoided the Nevada Actual Intent Transfers pursuant to Nevada state law.

76.     Prior to one year of the Petition Date, neither USACM nor its innocent Stakeholders, including its creditors, discovered nor could have reasonably discovered the fraudulent nature of the Nevada Actual Intent Transfers because of the Culpable Insiders' concealment of their fraudulent looting and self-dealing scheme.

77.     The Culpable Insiders caused the Debtor to make the Nevada Actual Intent Transfers with the actual intent to hinder, delay, or defraud creditors of the Debtor.

78.     Accordingly, the Nevada Actual Intent Transfers: (a) are fraudulent transfers under NRS 112.180(1)(a); and (b) may be recovered under NRS 112.220.

79.     Pursuant to 11 U.S.C. § 544(a)(2) & (b), the Trust asks the Court to avoid the Nevada Actual Intent Transfers under applicable state law.

### FOURTH CAUSE OF ACTION
### (11 U.S.C. § 544 and NRS 112.180(1)(b))

80.     The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

81.     The 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer (collectively, the "Nevada Reasonably Equivalent Value Transfers") were of an interest of the Debtor in property.

82.     The Nevada Reasonably Equivalent Value Transfers were made within the applicable period as set out in NRS 112.230(2) and 11 U.S.C. § 108(a).

83.     On the date of the Nevada Reasonably Equivalent Value Transfers and the Petition Date, there were creditors with allowable unsecured claims who could have avoided the Nevada Reasonably Equivalent Value Transfers pursuant to Nevada state law.

84.     The Debtor received less than a reasonably equivalent value in exchange for the Nevada Reasonably Equivalent Value Transfers.

85.     At the time of each of the Nevada Reasonably Equivalent Value Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or the transaction.

86.    At the time of each of the Nevada Reasonably Equivalent Value Transfers, the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital.

87.    At the time of each of the Nevada Reasonably Equivalent Value Transfers, the Debtor intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

88.    Accordingly, the Nevada Reasonably Equivalent Value Transfers (a) are fraudulent transfers under NRS 112.180(1)(b); and (b) may be recovered under NRS 112.220.

89.    Pursuant to 11 U.S.C. § 544(b), the Trust asks the Court to avoid the Nevada Reasonably Equivalent Value Transfers under applicable state law.

### FIFTH CAUSE OF ACTION
### (11 U.S.C. § 550(a) and NRS 112.220)

90.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

91.    The Federal Lookback Transfers are avoidable under 11 U.S.C. § 548(a)(1)(A) and/or § 548(a)(1)(B) .

92.    The Nevada Actual Intent Transfers are avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(a)).

93.    The Nevada Reasonably Equivalent Value Transfers are avoidable under 11 U.S.C. § 544 (through NRS 112.180(1)(b)).

94.    USAIP was merely a conduit through which USACM transferred funds to Defendants (respectively) through the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the

Indirect Ashby USA Transfer. USAIP had no dominion over the funds at issue in each of these transfers. Accordingly, the Trust may recover the value of the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the Indirect Ashby USA Transfer directly from Fiesta, Random Developments, Ashby, and Ashby USA, respectively, as initial transferees of these transfers pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

95.    In the alternative and in the event the Court finds that USAIP was the initial transferee of one or more of the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the Indirect Ashby USA Transfer, the Trust may recover the value of these transfers from Fiesta, Random Developments, Ashby, and Ashby USA, respectively, pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 as immediate or mediate transferees, who took such transfers without good faith, without giving value, and/or with knowledge of the voidability of the transfers.

96.    The Trust may recover the value of the Ashby Development Transfers directly from Ashby USA as an entity for whose benefit such transfer was made under 11 U.S.C. § 550(a)(1) or directly from Ashby Development as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

97.    The Trust may recover the value of the 2001 Ashby USA Transfers and the 2002 Ashby USA Transfers directly from Ashby USA as an initial transferee pursuant to 11 U.S.C. § 550(a)(1) and NRS 112.220.

98.    Fiesta received $413,359.49 of the Early Random Developments Transfer referenced in paragraphs 43-46 from Random Developments on March 4, 2005. These funds were transferred to Random Developments in order to satisfy obligations that USAIP owed to

Fiesta.   When USAIP did not fulfill funding requests from Random Developments, Fiesta provided the funding.  When Fiesta made such payments, USAIP became obligated to repay these amounts to Fiesta rather than Random Developments.  At least $413,359.49 of the Early Random Developments Transfer was made to Random Developments for the ultimate benefit of Fiesta, rather than for Random Developments' benefit.   Therefore, the Trust is entitled to collect $413,359.49 directly from Fiesta pursuant to 11 U.S.C. § 550(a)(1).

99.    In the alternative, the Trust may recover $413,359.49 from Fiesta as an immediate or mediate transferee who took $413,359.49 of the Early Random Developments Transfer without good faith, without giving value, and/or with knowledge of the voidability of the transfer pursuant to 11 U.S.C. § 550(a)(2) and NRS 112.220 .

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**

100.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

101.    By making the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer conferred a benefit on Defendants.

102.    Defendants appreciated the benefit in that they: (a) received the transfers described in paragraph 97 and; (b) upon information and belief, used the proceeds of those transfers to pay obligations, make investments, make member distributions, or in some other manner that conferred a benefit.

103.    Defendants retain the benefits that they received as a result of the Ashby Development Transfers, the 2001 Ashby USA Transfers, the 2002 Ashby USA Transfers, the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the Indirect Ashby USA Transfer under circumstances that make retention of these benefits inequitable.  Specifically, these transfers resulted from the gross misconduct of the Culpable Insiders in looting USACM for the benefit of themselves and using USACM as their personal "piggy bank."  Moreover, Defendants knew or should have known that: (a) Milanowski regularly breached the fiduciary duties he owed to USACM and its investors; (b) USAIP was experiencing financial difficulties at least as early as early 2004; and (c) Milanowski caused USACM to make contributions on USAIP's behalf even though USACM received no benefit for doing so, yet Defendants continued to conduct business with Milanowski through the Petition Date.

## SEVENTH CAUSE OF ACTION
### (Money Had and Received)

104.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

105.    Defendants received money from the Ashby Development Transfers, 2001 Ashby USA Transfers, the 2002 Ashby USA Transfers, the Fiesta Transfer, the Early Random Developments Transfers, the Late 2005 Random Developments Transfers, the Richard Ashby Transfer, and the Indirect Ashby USA Transfer.

106.    The Trust is rightfully entitled to the money.  The Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer,

and Indirect Ashby USA Transfer were made for USAIP's benefit and were merely part of the Culpable Insiders' systematic abuse of USACM.

107.    In good conscience and equity, Defendants have no right to maintain any money that they received in the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer.

## EIGHTH CAUSE OF ACTION
### (NRS 41.580)

108.    The Trust re-alleges and fully incorporates the allegations pleaded above as if fully set forth herein.

109.    In causing the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer to be made, the Culpable Insiders took approximately $4.9 million from USACM by theft and/or other offense(s) constituting a crime against property.

110.    Defendants received, possessed, and/or withheld all or a portion of the approximately $4.9 million taken from USACM.

111.    Upon information and belief, Defendants received, possessed, and/or withheld all or a portion of the approximately $4.9 million taken from USACM: (a) knowing that the Culpable Insiders misappropriated it from USACM by theft and/or other offense(s) that constitute a crime against property; or (b) under such circumstances as should have caused a reasonable person to know that the Culpable Insiders misappropriated it from USACM by theft and/or other offense(s) that constitute a crime against property.

112.    Accordingly, the Trust may recover treble damages and reasonable attorneys' fees from Defendants under NRS 41.580.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, the Trust respectfully requests that the Court enter judgment as follows:

(a)    Avoiding the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer;

(b)    Directing Ashby USA to repay the value of the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, and Indirect Ashby USA Transfer to the Trust;

(c)    Directing Ashby to repay the value of the Richard Ashby Transfer to the Trust;

(d)    Directing Fiesta to repay the value of the Fiesta Transfer and the $413,359.49 that it received from the Early Random Developments Transfer to the Trust;

(e)    Directing Random Developments to repay the value of the Early Random Developments Transfers and the Late 2005 Random Developments Transfers to the Trust;

(f)    Directing Defendants to pay to the Trust all pre- and post-judgment interest at the maximum rate allowable by law and/or equity;

(g)    Directing Defendants to pay the Trust's costs of court;

(h)    Directing Defendants to pay the Trust for all benefits that they unjustly received as a result of the Ashby Development Transfers, 2001 Ashby USA Transfers, 2002 Ashby USA Transfers, Fiesta Transfer, Early Random Developments Transfers, Late 2005 Random Developments Transfers, Richard Ashby Transfer, and Indirect Ashby USA Transfer;

(i)    Directing Defendants to pay to the Trust treble damages and reasonable attorney's fees in accordance with NRS 41.580; and

(j)    Awarding the Trust such other relief that this Court deems just and proper.

1    Dated:  November 21, 2008

2    **DIAMOND MCCARTHY LLP**                      **LEWIS AND ROCA LLP**

3

4    By:    _/s/ Stephen T. Loden_                 By:    _/s/ Rob Charles_
     Allan B. Diamond, TX 05801800 (pro hac vice)  Rob Charles, NV 6593
5    Eric D. Madden, TX 24013079 (pro hac vice)    3993 Howard Hughes Parkway, Suite 600
     Stephen T. Loden, TX 24002489 (pro hac vice)  Las Vegas, Nevada  89169-5996
6    Michael J. Yoder, TX 24056572                 (702) 949-8320 (telephone)
     J. Maxwell Beatty, TX 24051740 (pro hac vice) (702) 949-8321 (facsimile)
7    909 Fannin, Suite 1500
8    Houston, Texas 77010                          *Counsel for USACM Liquidating Trust*
     (713) 333-5100 (telephone)
9    (713) 333-5199 (facsimile)

10   *Special Litigation Counsel*
     *for USACM Liquidating Trust*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26