E-Filed On 01/15/09

| | |
|---|---|
| **DIAMOND MCCARTHY LLP**<br>909 Fanin, Suite 1500<br>Houston, Texas 77010<br>Telephone (713) 333-5100<br>Facsimile (713) 333-5199<br><br>Allan B. Diamond, TX State Bar No. 05801800<br>Email: adiamond@diamondmccarthy.com<br>Barbara Balliette.  TX State Bar No. 00788660<br>Email: bballiette@diamondmccarthy.com<br>Eric D. Madden, TX State Bar No. 24013079<br>Email: emadden@diamondmccarthy.com<br><br>Special Litigation Counsel for USACM Liquidating Trust | **LEWIS AND ROCA LLP**<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, NV 89169-5996<br>Telephone (702) 949-8320<br>Facsimile (702) 9490-8321<br><br>Rob Charles, NV State Bar No. 006593<br>Email: rcharles@lrlaw.com<br><br><br><br>Counsel for USACM Liquidating Trust |

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>USA SECURITIES, LLC,<br>          Debtors.<br><br>**Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR<br>Case No. BK-S-06-10729-LBR<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No.<br>BK-S-06-10725 LBR<br><br><br><br>MOTION SEEKING THE APPROVAL OF THE SETTLEMENT AGREEMENT BY AND BETWEEN THE USACM LIQUIDATING TRUST, USA INVESTMENT PARTNERS, LLC, TOBLAK, LLC, DDH FINANCIAL CORP., AND TANAMERA COMMERCIAL DEVELOPMENT, LLC<br><br>Hearing Date: February 20, 2009<br>Hearing Time: 9:30 a.m. |

Geoffrey L. Berman, the trustee for the USACM Liquidating Trust (the "USACM Trustee"), by and through his counsel, the law firms of Lewis and Roca LLP and Diamond McCarthy LLP, hereby submits his Motion Seeking The Approval Of The Settlement Agreement By And Between The USACM Liquidating Trust, USA Investment Partners, LLC, Toblak, LLC, DDH Financial Corp., And Tanamera Commercial Development, LLC (the "Motion"), thereby

156985/Settlement Motion.DOC

seeking entry of an order approving that certain Settlement Agreement And Release Of Claims (the "Settlement Agreement") by and between the USACM Liquidating Trust (the "USACM Trust"), USA Investment Partners, LLC ("USAIP"), Toblak, LLC ("Toblak"), DDH Financial Corp. ("DDH"), and Tanamera Commercial Development, LLC ("Tanamera").[1]

This Motion is made and based on the points and authorities listed herein, Rule[2] 9019, the <u>Declaration Of Geoffrey L. Berman In Support Of The Motion Seeking Approval Of The Settlement Agreement By And Between The USACM Liquidating Trust, USA Investment Partners, LLC, Toblak, LLC, DDH Financial Corp., And Tanamera Commercial Development, LLC</u> (the "Berman Declaration"), the <u>Declaration Of Lisa M. Poulin In Support Of The Motion Seeking Approval Of The Settlement Agreement By And Between The USACM Liquidating Trust, USA Investment Partners, LLC, Toblak, LLC, DDH Financial Corp., And Tanamera Commercial Development, LLC</u> (the "Poulin Declaration"), both filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

# I.
# **PERTINENT FACTS**

1. On April 13, 2006, USA Commercial Mortgage Company ("USACM") filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), which bankruptcy case was jointly administered with several related cases under bankruptcy case number BK-S-06-10725-LBR (the "USACM Bankruptcy Case"). See Berman Declaration ¶4. The Bankruptcy Court confirmed the <u>Third Amended Joint Chapter 11 Plan of Reorganization</u> (the "Joint Plan") pursuant to an order entered on January 8, 2007 (the "Confirmation Order") and the Joint Plan became effective on March 12, 2007. See id. The

---

[1] A substantially similar motion has also been filed in the USAIP Bankruptcy Case, as defined herein, and is scheduled to be heard at the same time as the Motion.

[2] Unless otherwise expressly stated herein, all references to Chapters or Sections shall refer to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and all Rule references shall refer to the Federal Rules of Bankruptcy Procedure, 1001-9036.

2

156985/Settlement Motion.DOC

1  USACM Trust was created pursuant to the Joint Plan and the Confirmation Order and Geoffrey L. Berman (the "USACM Trustee") serves as the trustee of the USACM Trust. See id. Pursuant to the terms of the Third Amended Joint Chapter 11 Plan of Reorganization and the Confirmation Order, the USACM Trust now holds any and all potential claims and causes of action, whether arising pre-petition or post-petition, that USACM and the USACM Trust may have or may at any time have had. See id.

2. On April 4, 2007 (the "USAIP Petition Date"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), the USACM Trust, and Alabruj Investments, LLC filed an involuntary Chapter 11 petition against USA Investment Partners, LLC ("USAIP"), thereby commencing bankruptcy case number BK-S-07-11821-LBR (the "USAIP Bankruptcy Case") also pending before this Court. See Poulin Declaration ¶ 3. Two days after the commencement of the USAIP Bankruptcy Case, on April 6, 2007, this Court appointed the USAIP Trustee as USAIP's interim Chapter 11 trustee. See id. Thereafter, on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case, with the USAIP Trustee becoming USAIP's permanent Chapter 11 trustee. See id.

3. USAIP is a limited liability company created to hold ownership interests in and manage the affairs of other companies, the majority of which are involved in the acquisition, construction, lease, and sale of real estate properties. Consistent therewith, USAIP is the sole member and manager of Toblak. See Poulin Declaration ¶ 4.

4. Prior to the USAIP Petition Date, on September 8, 1998, the Reno City Council approved an agreement (the "Parks Agreement") between the City of Reno (the "City"), Double Diamond Ranch, LLC ("Double Diamond"), and Double Diamond Ranch Master Association (the "Association") relating to the design, construction, and maintenance of five neighborhood/community parks in the South Meadows Properties Planned Unit Development, Phase III, also known as Double Diamond Ranch. Under the Parks Agreement, the City agreed to construct one park on what was defined as Park Parcel 34, and Double Diamond agreed to construct four additional parks on what were defined as Parcels 42, 43, 44, and Parcel B (collectively the "Park Sites"). See Poulin Declaration ¶ 5; Second Amended Park Development

3

156985/Settlement Motion.DOC

<u>Agreement Between Double Diamond Ranch, LLC, Toblak, LLC, Double Diamond Ranch Master Association, And The City of Reno</u> (the "Second Amended Parks Agreement"), at p. 1, attached as Exhibit "A" to the Poulin Declaration.

5. Thereafter, on or about April 13, 1999, the City and Double Diamond approved an amendment to the Parks Agreement (the "Amended Parks Agreement"), which allowed Double Diamond to also design and construct the park improvements on Parcel 34. <u>See id.</u> ¶ 6; Second Amended Parks Agreement, at p. 1.

6. On October 24, 2001, Double Diamond filed a petition for relief under Title 11 before the Bankruptcy Court, thereby commencing bankruptcy case number BK-N-01-33665-GWZ. <u>See</u> docket no. 1, in case no. 01-33665.

7. USACM and Lowe Enterprises Residential Investors, LLC ("Lowe") were creditors of Double Diamond and, on or about July 22, 2002, USACM, Lowe, and Double Diamond entered into a settlement agreement regarding various matters associated with Double Diamond's bankruptcy proceedings, including the assignment of the Amended Parks Agreement, which settlement agreement was approved by the Bankruptcy Court. <u>See</u> <u>Order Approving Compromise And Settlement</u>, docket no. 479, in case no. 01-33665.

8. USACM thereafter appealed an order from the Bankruptcy Court dated February 27, 2003 to the United States District Court for the District of Nevada (the "District Court"). The appealed order was regarding the assignment of the Amended Parks Agreement to Lowe instead of USACM, and the denial of USACM's request to transfer certain Park Sites to USACM pursuant to the above-stated settlement agreement. <u>See</u> <u>Order Re: Competing Motions On Assignment Of Parks Agreement</u>, docket no. 630; <u>Notice Of Appeal</u>, docket no. 636, in case no. 01-33665, both in case no. 01-3365.

9. On or about March 29, 2004, the District Court reversed the Bankruptcy Court's February 27, 2003 order and remanded the matter back to the Bankruptcy Court for further proceedings. <u>See</u> <u>Decision</u>, docket no. 677. Lowe thereafter appealed (the "Lowe Appeal") the District Court's decision to the Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). <u>See</u> docket no. 711, in case no. 01-33665.

156985/Settlement Motion.DOC

10. On or about May 18, 2004, the District Court entered a <u>Stipulation And Order For Limited Stay Pending Appeal</u> (the "Stipulation") which, pending the outcome of the Lowe Appeal, among other things, authorized USACM to form Toblak as an affiliated entity to take title to the remaining Park Sites, and to enter into an agreement with the City to dedicate these Park Sites to the City with or without their construction. <u>See</u> Berman Declaration ¶ 5; Poulin Declaration ¶ 7; Stipulation, attached to the Poulin Declaration as Exhibit "B."

11. The Stipulation further provided that any proceeds paid by the City upon dedication of the Park Sites were to be held in escrow with Ticor Title Company ("Ticor Title") pending the outcome of the Lowe Appeal, with such proceeds being distributed to the prevailing party after entry of an order from the Bankruptcy Court. <u>See</u> Berman Declaration ¶ 6; Poulin Declaration ¶ 8.

12. In anticipation of the pending Stipulation, on April 29, 2004, USAIP, rather than USACM, filed Toblak's Articles of Incorporation and formed said entity. As previously stated, Toblak is owned solely by USAIP and is therefore an asset of USAIP's estate in the USAIP Bankruptcy Case. <u>See</u> Poulin Declaration ¶ 9.

13. On or about December 7, 2004, Toblak, the City, Double Diamond, and the Association entered into the Second Amended Parks Agreement, which agreement related to the development of three (3) of the Park Sites, Parcels 42, 43, and 44 (the "Remaining Park Sites"), to be constructed, maintained, and conveyed to the City, in addition to certain other improvements. Beyond enumerating the rights and obligations related to the development, maintenance, and conveyance of the Remaining Park Sites, as well as certain additional improvements, through the Second Amended Parks Agreement, the City provided its consent to Double Diamond's assignment of the duties and obligations set forth in the Amended Parks Agreement to Toblak. Thus, the Second Amended Parks Agreement effectuated the transfer of Double Diamond's rights and obligations under the Amended Parks Agreement to Toblak, subject to the modifications set forth in the Second Amended Parks Agreement itself. <u>See</u> Poulin Declaration ¶ 10; Second Amended Parks Agreement, at p. 2.

156985/Settlement Motion.DOC

14. Subsequently, M.P. Tanamera, LLC, USACM, DDH, and USAIP entered into that certain Amended And Restated Pledge Agreement (the "Amended Pledge Agreement") effective January 1, 2006, which agreement provided in relevant part as follows:

> Toblak, LLC, an affiliate of Pledgee [USACM] entered into a Second Amended Double Diamond Ranch Parks Agreement ("Parks Agreement") with the City of Reno and Double Diamond Ranch, LLC which is expected to result in net profits to Toblak, LLC in excess of the legal fees outlined in Recital D above, indirectly benefiting Pledgee [USACM]. Pledgee [USACM] agrees that Kreg Rowe was instrumental in providing this opportunity to Pledgee and agrees that any profits stemming from the Parks Agreement will first be applied to any unreimbursed legal costs associated with obtaining the Parks Agreement, including the associated litigation and appeal, then to unreimbursed legal fees outlined in Recital D, third to any remaining balance under the Guaranteed Debt with any remaining amount split 50% with DDH and 50% with Pledgee [USACM] Pledgee [USACM] agrees to provide an accounting of the legal fees and application for reimbursement filed with the court along with a copy of the court's award with reasonable supporting information.

See Berman Declaration ¶ 7, Poulin Declaration ¶ 11, Amended Pledge Agreement attached as Exhibit "C" to the Poulin Declaration.

15. In January of 2006, the Lowe Appeal was resolved in favor of USACM. See Berman Declaration ¶ 8; Opinion on Appeal, attached as Exhibit "B" to the Berman Declaration.

16. Certain disputes have arisen by and between DDH and the USACM Trust regarding the proper distributions to be made pursuant to the above-stated provision of the Amended Pledge Agreement and the parties' respective liability related to Toblak's operations (the "Disputes"). See Berman Declaration ¶ 9.

17. In order to minimize the cost and expense of litigation, as well as the extensive time that must be dedicated to such a proceeding, and in view of the risk inherent in proceeding to trial, the parties have engaged in substantial settlement negotiations to resolve the Disputes. These settlement discussions, which have been at arms-length and in good faith, have culminated in the Settlement Agreement. See id. ¶ 10; Poulin Declaration ¶ 12; Settlement Agreement, attached as Exhibit "A" to the Berman Declaration.

18. Accordingly, by way of this Motion, approval of the Settlement Agreement is sought, which agreement provides in pertinent part as follows:

6

156985/Settlement Motion.DOC

A. The Park Sites have been developed and trail construction obligations satisfied. The City has received title to the Park Sites and has made payments for the development of the parks. These payments after development, property tax, and other expenses (the "Park Funds") are held in three separate accounts:

1. An escrow account held by Ticor Title in the amount of approximately $187,996.50 (the "Ticor Title Account");

2. A bank account held by DDH in the amount of approximately $163,645.69 (the "DDH Account"); and

3. A bank account held in the name of Toblak and under the control of Poulin in the amount of approximately $198,081.49 (the "UASIP Account").

B. Settlement Payments:

a. The USACM Trust and DDH have agreed to a 70/30 division of the Park Funds: The USACM Trust shall receive 70% of the Park Funds and DDH shall receive 30% of the Park Funds.

b. The USACM Trust shall receive the funds held in the Ticor Title Account (approximately $187,996.50) (the "Ticor Title Funds").

c. Upon the Effective Date of the Settlement Agreement, DDH shall pay itself $109,093.00 from the DDH Account. The remainder of the funds in the DDH Account (not less than $56,398.95) shall remain in the DDH Account and shall be held separately from any other DDH assets.

In the event that Toblak, USAIP, or the USACM Trust have received the Ticor Title Funds on or before the Effective Date, then DDH shall pay itself from the DDH Account, the balance of the funds held within the DDH Account (approximately $56,398.95).

d. Upon the Effective Date, Poulin shall transfer the balance held in the USAIP Account (approximately $198,081.49) to the USACM Trust. In addition, in the event the Ticor Title Funds are paid to Toblak or USAIP after the Effective Date of the Settlement Agreement, Poulin shall transfer 100% of the Ticor Title Funds to the USACM Trust within two (2) business days of their receipt.

e. In the event the Ticor Title Funds are distributed to the USACM Trust, Toblak, or USAIP after the Effective Date of the Settlement Agreement, then, within two (2) business days following receipt of the Ticor Title Funds, counsel for the Party receiving such funds shall notify DDH's

7

counsel, Kaaran Thomas, in writing, of the receipt of the Ticor Title Funds. Thereafter, DDH is authorized to pay itself the remainder of the funds held within the DDH Account (approximately $56,398.95).

In the unlikely event that the Bankruptcy Court in Case No. BK-N-01-33665-GWZ denies the USACM's Trust's motion seeking the release of the Ticor Title Funds to the USACM Trust (the "Ticor Title Motion"), the USACM Trust shall provide to DDH the Bankruptcy Court order denying the Ticor Title Motion, along with any pleadings related to the Ticor Title Motion. Within two (2) business days from receipt of the Bankruptcy Court order denying the Ticor Title Motion, DDH shall pay to the USACM Trust the remainder of the funds held within the DDH Account (not less than $56,398.95).

C.     Releases: The parties have agreed to release one another from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that the parties ever had or now has against one another relating to the Park Sites and/or the Park Funds, provided, however, that the parties do not release one another from any obligations under the Settlement Agreement. The releases are expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and do not provide any alternate release to the parties or any third-party.

See Settlement Agreement, attached as Exhibit "A" to the Berman Declaration.

## I.
## LEGAL ARGUMENT

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. See Protective Comm. for Index Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1958) (citing Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). The approval of compromises or settlements in bankruptcy proceedings is generally governed by Rule 9019(a), which provides the following:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

Pursuant to Rule 9019(a), compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or

8

156985/Settlement Motion.DOC

her sound discretion. See In re Stein, 236 B.R. 34, 37 (Bankr. D. Or. 1999). The law favors compromise "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise." In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). Public policy favors pretrial compromises because litigation "can occupy a court's docket for years on end, depleting resources of the parties and the taxpayers while rendering meaningful relief elusive." In re Grau, 267 B.R. 896, 899 (Bankr. S.D.Fla 2001), quoting Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).

The United States Supreme Court has expressed that a bankruptcy settlement must be fair and equitable. See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968). The Ninth Circuit Court of Appeals has enunciated that "in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." See In re Stein, 236 B.R. at 37; see also In re A&C Properties, 784 F.2d at 1381; Schmitt v. Ulrich, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997). The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. See In re Pacific Gas and Electric Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004); In re WCI Cable, Inc., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002).

However, the settlement does not have to be the best the debtor could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." See In re Adelphia Comm. Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979) ("Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful." Id.).

> There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies with that range.

9

156985/Settlement Motion.DOC

See id. (citing Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).  The bankruptcy court "need not conduct an independent investigation into the reasonableness of the settlement but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"  See id. (citing In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)); see also Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71-72 (1st Cir. 2004); In re Energy Cooperative, Inc., 886 F.2d 921, 929 (7th Cir. 1989); New Concept Housing, Inc. v. Poindexter et al. (In re New Concept Housing, Inc.), 951 F.2d 932, 938 (8th Cir. 1991).

It is evident that the Settlement Agreement surpasses this standard and is fair and reasonable and in the best interest of the estate's creditors.  See Berman Declaration ¶ 14. Foremost, both DDH and the USACM Trust have asserted substantially greater interests in the Park Funds than provided under the terms of the Settlement Agreement and have supported such assertions with reasoned interpretations of the pertinent documents.  See Berman Declaration ¶ 11.  Thus, neither DDH nor the USACM Trust's success is certain were this matter fully litigated. See id.  The Settlement Agreement therefore represents that culmination of arms-length negotiations undertaken with an appreciation of the extensive time and expense required to try the issues necessary for the Court to render a determination as to the proper distribution of the Park Funds under the terms of the Amended Pledge Agreement.  See id.  This is particularly true as the parties have reached this compromise prior to having commenced an adversary proceeding, having undertaken discovery, or having retained any experts.  See id.  The expense, inconvenience, and delay inherent in any adversary proceeding undertaken to resolve the Disputes weighs heavily in favor of approval of the Settlement Agreement.  See id.  Further, as an adversary proceeding has not yet been commenced, the prompt resolution of the Disputes through the contemplated Settlement Agreement is not only economically beneficial for the parties, but also judicially economical.  See id.

Second, the USACM Trust has asserted that the interests of USAIP in the proceeds from the development of the Park Sites were improperly obtained by USAIP rather than USACM when Toblak was created.  See Berman Declaration ¶ 12.  Thus, the prompt resolution of the Disputes also resolves the USACM Trust's alleged claim against USAIP arising therefrom and

10

156985/Settlement Motion.DOC

will permit USAIP to distribute Toblak's proceeds and wind-up and dissolve Toblak, thereby precluding any subsequently incurred liability from flowing-up to USAIP from Toblak. See id. USAIP and the USACM Trust will also receive an invaluable release from the parties with regard to any potential claims relating to the Park Sites and/or Park Funds that may be asserted against them. See Berman Declaration ¶ 12.

The paramount interest of creditors which the Court must consider in deciding whether to approve a proposed compromise generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time." In re Marples, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). The USACM Trustee contends that the probability of success is outweighed by the costs and inherent delays to be incurred in litigating the Disputes. See Berman Declaration ¶ 13. After a thorough evaluation of all available information, the USACM Trustee has determined that approval of the Settlement Agreement is fair and equitable and in the best interest of the USACM Trust's creditors. See Berman Declaration ¶ 14. Additionally, efficient resolution of the Disputes is in the best interest of the USACM Trust's creditors, because it efficiently alleviates an ongoing dispute and eliminates potential subsequent liability to the USACM Trust, Toblak, and/or USAIP. See id.

WHEREFORE, the USACM Trustee respectfully requests that this Court grant this Motion, thereby approving the Settlement Agreement and for such other and further relief as the Court deems just and proper.

DATED this 15th day of January 2009.

156985/Settlement Motion.DOC

| | |
|---|---|
| **DIAMOND MCCARTHY LLP** | **LEWIS AND ROCA LLP** |
| By:  */s/ Barbara Balliette* | By:  */s/ Rob Charles* |
| Allan B. Diamond, TX 05801800 (pro hac vice) | Rob Charles, NV 6593 |
| Barbara Balliette, TX 00788660 (pro hac vice) | 3993 Howard Hughes Parkway, Suite 600 |
| Eric D. Madden, TX 24013079 (pro hac vice) | Las Vegas, Nevada  89169-5996 |
| 909 Fannin, Suite 1500 | (702) 949-8320 (telephone) |
| Houston, Texas 77010 | (702) 949-8321 (facsimile) |
| (713) 333-5100 (telephone) | |
| (713) 333-5199 (facsimile) | *Counsel for USACM Liquidating Trust* |
| *Special Litigation Counsel for* | |
| *USACM Liquidating Trust* | |

12

156985/Settlement Motion.DOC

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of the law firm of DIAMOND MCCARTHY LLP, and that on the 15th day of January 2009, I served a true and correct copy of the foregoing **MOTION SEEKING THE APPROVAL OF THE SETTLEMENT AGREEMENT BY AND BETWEEN THE USACM LIQUIDATING TRUST, USA INVESTMENT PARTNERS, LLC, TOBLAK, LLC, DDH FINANCIAL CORP., AND TANAMERA COMMERCIA DEVELOPMENT, LLC** by electronic transmission to all parties on the Post Effective Date Service List and counsel for parties to the proposed settlement as set forth below:

| | |
|---|---|
| Talitaha B. Gray | Kaaren Thomas |
| Gordon Silver | McDonald Carano Wilson LLP |
| 3960 Howard Hughes Pkwy, 9th Floor | 100 W. Liberty Street, 10th Floor |
| Las Vegas, NV 89169 | Reno, NV 89501 |
| tbg@gordonsilver.com | kthomas@mcdonaldcarano.com |

 /s/ Catherine A. Burrow, CLA
Catherine A. Burrow, CLA
Diamond McCarthy LLP

13

156985/Settlement Motion.DOC