E-Filed On  01/15/09

**DIAMOND MCCARTHY LLP**
909 Fanin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Barbara Balliette, TX State Bar No. 00788660
Email: bballiette@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile (702) 9490-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| | Case No. BK-S-06-10726-LBR |
| USA COMMERCIAL MORTGAGE | Case No. BK-S-06-10727-LBR |
| COMPANY, | Case No. BK-S-06-10728-LBR |
| | Case No. BK-S-06-10729-LBR |
| USA CAPITAL REALTY ADVISORS, LLC, | |
| | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST | |
| DEED FUND, LLC, | Jointly Administered Under Case No. |
| | BK-S-06-10725-LBR |
| USA CAPITAL FIRST TRUST DEED | |
| FUND, LLC, | |
| | |
| USA SECURITIES, LLC, | |
| Debtors. | |

**Affects:**
☐ All Debtors
☒ USA Commercial Mortgage Company       Date:  February 20, 2009
☐ USA Capital Realty Advisors, LLC       Time:  9:30 a.m.
☐ USA Capital Diversified Trust Deed Fund, LLC
☐ USA Capital First Trust Deed Fund, LLC
☐ USA Securities, LLC

---

### DECLARATION OF GEOFFREY L. BERMAN IN SUPPORT OF THE MOTION SEEKING THE APPROVAL OF THE SETTLEMENT AGREEMENT BY AND BETWEEN THE USACM LIQUIDATING TRUST, USA INVESTMENT PARTNERS, LLC, TOBLAK, LLC, DDH FINANCIAL CORP., AND TANAMERA COMMERCIAL DEVELOPMENT, LLC

I, Geoffrey L. Berman, hereby declare as follows:

1.      I am over the age of eighteen (18) and am mentally competent.  I have personal

knowledge of the facts in this matter and if called upon to testify, could and would do so.

2.      I am the duly-appointed trustee for the USACM Liquidating Trust (the "USACM

1   Trustee"), and I make this declaration in support of the <u>Motion Seeking The Approval Of The</u>

2   <u>Settlement Agreement By And Between The USACM Liquidating Trust, USA Investment</u>

3   <u>Partners, LLC, Toblak, LLC, DDH Financial Corp., And Tanamera Commercial Development,</u>

4   <u>LLC</u> (the "Motion").[1]

5       3.      A true and correct copy of the Settlement Agreement is attached hereto as Exhibit

6   "A."

7       4.      On April 13, 2006, USA Commercial Mortgage Company ("USACM") filed a

8   voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Nevada

9   (the "Bankruptcy Court"), which bankruptcy case was jointly administered with several related

10  cases under bankruptcy case number BK-S-06-10725-LBR (the "USACM Bankruptcy Case").

11  The Bankruptcy Court confirmed the <u>Third Amended Joint Chapter 11 Plan of Reorganization</u>

12  (the "Joint Plan") pursuant to an order entered on January 8, 2007 (the "Confirmation Order")

13  and the Joint Plan became effective on March 12, 2007.  The USACM Trust was created

14  pursuant to the Joint Plan and the Confirmation Order and I serve as the trustee of the USACM

15  Trust.  Pursuant to the terms of the Third Amended Joint Chapter 11 Plan of Reorganization and

16  the Confirmation Order, the USACM Trust now holds any and all potential claims and causes of

17  action, whether arising pre-petition or post-petition, that USACM and the USACM Trust may

18  have or may at any time have had.

19      5.      On or about May 18, 2004, in Case No. the District Court entered a <u>Stipulation</u>

20  <u>And Order For Limited Stay Pending Appeal</u> (the "Stipulation") which, pending the outcome of

21  the Lowe Appeal, among other things, authorized USACM to form Toblak as an affiliated entity

22  to take title to the remaining Park Sites, and to enter into an agreement with the City to dedicate

23  these Park Sites to the City with or without their construction.

24      6.      The Stipulation further provided that any proceeds paid by the City upon

25  dedication of the Park Sites were to be held in escrow with Ticor Title Company ("Ticor Title")

26  pending the outcome of the Lowe Appeal, with such proceeds being distributed to the prevailing

27  ─────────────────────

28  [1] Unless otherwise expressly stated herein, all undefined, capitalized terms shall have the meaning ascribed to them
    in the Motion.

156986/USACM berman declaration in support of motion to approve toblak settlement (2).doc

1    party after entry of an order from the Bankruptcy Court.

2        7.    Upon information and belief, M.P. Tanamera, LLC, USACM, DDH, and USAIP

3    entered into that certain Amended And Restated Pledge Agreement (the "Amended Pledge

4    Agreement") effective January 1, 2006, which agreement provided in relevant part as follows:

5            Toblak, LLC, an affiliate of Pledgee [USACM] entered into a Second
             Amended Double Diamond Ranch Parks Agreement ("Parks Agreement")
6            with the City of Reno and Double Diamond Ranch, LLC which is
             expected to result in net profits to Toblak, LLC in excess of the legal fees
7            outlined in Recital D above, indirectly benefiting Pledgee [USACM].
             Pledgee [USACM] agrees that Kreg Rowe was instrumental in providing
8            this opportunity to Pledgee and agrees that any profits stemming from the
             Parks Agreement will first be applied to any unreimbursed legal costs
9            associated with obtaining the Parks Agreement, including the associated
             litigation and appeal, then to unreimbursed legal fees outlined in Recital
10           D, third to any remaining balance under the Guaranteed Debt with any
             remaining amount split 50% with DDH and 50% with Pledgee [USACM]
11           Pledgee [USACM] agrees to provide an accounting of the legal fees and
             application for reimbursement filed with the court along with a copy of the
12           court's award with reasonable supporting information.

13       8.    In January of 2006, the Lowe Appeal was resolved in favor of USACM.  A true

14   and correct copy of the opinion on the Appeal is attached hereto as Exhibit "B."

15       9.    Certain disputes have arisen by and between DDH and the USACM Trust

16   regarding the proper distributions to be made pursuant to the above-stated provision of the

17   Amended Pledge Agreement and the parties' respective liability related to Toblak's operations

18   (the "Disputes").

19       10.    In order to minimize the cost and expense of litigation, as well as the extensive

20   time that must be dedicated to such a proceeding, and in view of the risk inherent in proceeding

21   to trial, the parties have engaged in substantial settlement negotiations to resolve the Disputes.

22   These settlement discussions were at arms-length and have culminated in the Settlement

23   Agreement.

24       11.    Both DDH and the USACM Trust have asserted substantially greater interests in

25   the Park Funds than provided under the terms of the Settlement Agreement and have supported

26   such assertions with reasoned interpretations of the pertinent documents.  Thus, neither DDH nor

27   the USACM Trust's success is certain were this matter fully litigated.  The Settlement Agreement

28   therefore represents that culmination of arms-length negotiations undertaken with an

3

appreciation of the extensive time and expense required to try the issues necessary for the Court to render a determination as to the proper distribution of the Park Funds under the terms of the Amended Pledge Agreement.    This is particularly true as the parties have reached this compromise prior to having commenced an adversary proceeding, having undertaken discovery, or having retained any experts.    Further, as an adversary proceeding has not yet been commenced, the prompt resolution of the Disputes through the contemplated Settlement Agreement is economically beneficial for the parties.

12.    Second, the USACM Trust has asserted that the interests of USAIP in the proceeds from the development of the Park Sites were improperly obtained by USAIP rather than USACM when Toblak was created.  Thus, the prompt resolution of the Disputes also resolves the USACM Trust's alleged claim against USAIP arising therefrom and, I am advised,  will permit USAIP to distribute Toblak's proceeds and wind-up and dissolve Toblak, thereby precluding any subsequently incurred liability from flowing-up to USAIP from Toblak.  USAIP and the USACM Trust will also receive an invaluable release from the parties with regard to any potential claims relating to the Park Sites and/or Park Funds that may be asserted against them.

13.    I believe that the probability of success is outweighed by the costs and inherent delays to be incurred in litigating the Disputes.

14.    After a thorough evaluation of all available information, I have determined that approval of the Settlement Agreement is fair and equitable and in the best interest of USACM's creditors.

Dated this 9th day of January, 2009.

Geoffrey L. Berman, Trustee of the
USACM Liquidating Trust

156986/USACM berman declaration in support of motion to approve toblak settlement (2).doc

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is made and entered into by the USACM Liquidating Trust (the "USACM Trust"), as a successor to USA Commercial Mortgage Company, Lisa M. Poulin ("Poulin"), as the Chapter 11 Trustee for USA Investment Partners, LLC ("USAIP"), Toblak, LLC ("Toblak"), DDH Financial Corp. ("DDH"), and Tanamera Commercial Development, LLC ("Tanamera"). These entities are referred to collectively as the "Parties."

## I.

## RECITALS

A.     On April 13, 2006, USA Commercial Mortgage Company ("USACM") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), which bankruptcy case was jointly administered with several related cases under Bankruptcy Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case"). The Bankruptcy Court confirmed the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") pursuant to an order entered on January 8, 2007 (the "Confirmation Order"). The Joint Plan became effective on March 12, 2007. The USACM Trust was created pursuant to the Joint Plan and the Confirmation Order. Geoffrey L. Berman (the "USACM Trustee") serves as the trustee of the USACM Trust. The USACM Trust now holds any and all potential claims and causes of action, whether arising pre-petition or post-petition, that USACM and the USACM Trust may have or may at any time have had.

B.     On April 4, 2007, USA Capital Diversified Trust Deed Fund, LLC, the USACM Trust, and Alabruj Investments, LLC filed an involuntary petition under Chapter 11 of the Bankruptcy Code against USAIP, thereby commencing Bankruptcy Case No. BK-S-07-11821-LBR (the "USAIP Bankruptcy Case"), which case is pending before the Bankruptcy Court. On April 6, 2007, the Bankruptcy Court appointed Poulin as the interim trustee in the USAIP Bankruptcy Case and on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case, with Poulin remaining as the Chapter 11 trustee in the USAIP Bankruptcy Case.

C.     Double Diamond Ranch, LLC ("DDR") and the City of Reno, Nevada entered into agreements whereby DDR would construct 5 neighborhood park sites (the "Park Sites") in the South Meadows Properties Planned Unit Development, Phase III, also known as Double Diamond Ranch, and committed to completing certain improvements to the Double Diamond Ranch trail system as further described in the agreements.

D.     The Park Sites have been developed and trail construction obligations satisfied. The City of Reno has received title to the Park Sites and has made payments for the development of the parks. These payments after development, property tax and other expenses (the "Park Funds") are held in three separate accounts:

      1.     An escrow account held by Ticor Title in the amount of approximately $187,996.50 (the "Ticor Title Account");

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is made and entered into by the USACM Liquidating Trust (the "USACM Trust"), as a successor to USA Commercial Mortgage Company, Lisa M. Poulin ("Poulin"), as the Chapter 11 Trustee for USA Investment Partners, LLC ("USAIP"), Toblak, LLC ("Toblak"), DDH Financial Corp. ("DDH"), and Tanamera Commercial Development, LLC ("Tanamera"). These entities are referred to collectively as the "Parties."

### I.

### RECITALS

A.    On April 13, 2006, USA Commercial Mortgage Company ("USACM") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), which bankruptcy case was jointly administered with several related cases under Bankruptcy Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case"). The Bankruptcy Court confirmed the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") pursuant to an order entered on January 8, 2007 (the "Confirmation Order"). The Joint Plan became effective on March 12, 2007. The USACM Trust was created pursuant to the Joint Plan and the Confirmation Order. Geoffrey L. Berman (the "USACM Trustee") serves as the trustee of the USACM Trust. The USACM Trust now holds any and all potential claims and causes of action, whether arising pre-petition or post-petition, that USACM and the USACM Trust may have or may at any time have had.

B.    On April 4, 2007, USA Capital Diversified Trust Deed Fund, LLC, the USACM Trust, and Alabruj Investments, LLC filed an involuntary petition under Chapter 11 of the Bankruptcy Code against USAIP, thereby commencing Bankruptcy Case No. BK-S-07-11821-LBR (the "USAIP Bankruptcy Case"), which case is pending before the Bankruptcy Court. On April 6, 2007, the Bankruptcy Court appointed Poulin as the interim trustee in the USAIP Bankruptcy Case and on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case, with Poulin remaining as the Chapter 11 trustee in the USAIP Bankruptcy Case.

C.    Double Diamond Ranch, LLC ("DDR") and the City of Reno, Nevada entered into agreements whereby DDR would construct 5 neighborhood park sites (the "Park Sites") in the South Meadows Properties Planned Unit Development, Phase III, also known as Double Diamond Ranch, and committed to completing certain improvements to the Double Diamond Ranch trail system as further described in the agreements.

D.    The Park Sites have been developed and trail construction obligations satisfied. The City of Reno has received title to the Park Sites and has made payments for the development of the parks. These payments after development, property tax and other expenses (the "Park Funds") are held in three separate accounts:

1.    An escrow account held by Ticor Title in the amount of approximately $187,996.50 (the "Ticor Title Account");

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is made and entered into by the USACM Liquidating Trust (the "USACM Trust"), as a successor to USA Commercial Mortgage Company, Lisa M. Poulin ("Poulin"), as the Chapter 11 Trustee for USA Investment Partners, LLC ("USAIP"), Toblak, LLC ("Toblak"), DDH Financial Corp. ("DDH"), and Tanamera Commercial Development, LLC ("Tanamera"). These entities are referred to collectively as the "Parties."

### I.

### RECITALS

A.    On April 13, 2006, USA Commercial Mortgage Company ("USACM") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), which bankruptcy case was jointly administered with several related cases under Bankruptcy Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case"). The Bankruptcy Court confirmed the Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan") pursuant to an order entered on January 8, 2007 (the "Confirmation Order"). The Joint Plan became effective on March 12, 2007. The USACM Trust was created pursuant to the Joint Plan and the Confirmation Order. Geoffrey L. Berman (the "USACM Trustee") serves as the trustee of the USACM Trust. The USACM Trust now holds any and all potential claims and causes of action, whether arising pre-petition or post-petition, that USACM and the USACM Trust may have or may at any time have had.

B.    On April 4, 2007, USA Capital Diversified Trust Deed Fund, LLC, the USACM Trust, and Alabruj Investments, LLC filed an involuntary petition under Chapter 11 of the Bankruptcy Code against USAIP, thereby commencing Bankruptcy Case No. BK-S-07-11821-LBR (the "USAIP Bankruptcy Case"), which case is pending before the Bankruptcy Court. On April 6, 2007, the Bankruptcy Court appointed Poulin as the interim trustee in the USAIP Bankruptcy Case and on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case, with Poulin remaining as the Chapter 11 trustee in the USAIP Bankruptcy Case.

C.    Double Diamond Ranch, LLC ("DDR") and the City of Reno, Nevada entered into agreements whereby DDR would construct 5 neighborhood park sites (the "Park Sites") in the South Meadows Properties Planned Unit Development, Phase III, also known as Double Diamond Ranch, and committed to completing certain improvements to the Double Diamond Ranch trail system as further described in the agreements.

D.    The Park Sites have been developed and trail construction obligations satisfied. The City of Reno has received title to the Park Sites and has made payments for the development of the parks. These payments after development, property tax and other expenses (the "Park Funds") are held in three separate accounts:

1.    An escrow account held by Ticor Title in the amount of approximately $187,996.50 (the "Ticor Title Account");



2.    A bank account held by DDH in the amount of approximately $163,645.69 (the "DDH Account");

3.    A bank account held in the name of Toblak and under the control of Poulin in the amount of approximately $198,081.49 (the "USAIP Account").

E.    Pursuant to an Amended and Restated Pledge Agreement effective January 1, 2006 (the "Amended and Restated Pledge Agreement," attached hereto as Exhibit A), both USACM and DDH claim rights to the funds held in the three above-stated Accounts and have mutual disputes about the amount each should receive.

F.    In order to avoid the costs and uncertainty of litigation, the Parties have agreed to settle the dispute regarding distribution of the Park Funds and all related disputes and controversies between them regarding the Park Sites on the terms set forth in this Agreement without resort to litigation between them.

## II.

## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the covenants, promises and releases set forth herein, and in full settlement of all such claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, parents, insurers, and any other parties or persons claiming by, through or under any of the Parties hereto, as follows:

A.    **Settlement Consideration.**

1.    Settlement Payments:

a.    The USACM Trust and DDH have agreed to a 70/30 division of the Park Funds: The USACM Trust shall receive 70% of the Park Funds and DDH shall receive 30% of the Park Funds.

b.    The USACM Trust shall receive the funds held in the Ticor Title Account (approximately $187,996.50) (the "Ticor Title Funds").

c.    Upon the Effective Date of this Agreement, DDH shall pay itself $109,093 from the DDH Account. The remainder of the funds in the DDH Account (not less than $56,398.95) shall remain in the DDH Account and shall be held separately from any other DDH assets.

In the event that Toblak, USAIP or the USACM Trust have received the Ticor Title Funds on or before the Effective Date, then DDH shall pay itself from the DDH Account, the balance of the funds held within the DDH Account (approximately $56,398.95).

2.      A bank account held by DDH in the amount of approximately $163,645.69 (the "DDH Account");

3.      A bank account held in the name of Toblak and under the control of Poulin in the amount of approximately $198,081.49 (the "USAIP Account").

E.      Pursuant to an Amended and Restated Pledge Agreement effective January 1, 2006 (the "Amended and Restated Pledge Agreement," attached hereto as Exhibit A), both USACM and DDH claim rights to the funds held in the three above-stated Accounts and have mutual disputes about the amount each should receive.

F.      In order to avoid the costs and uncertainty of litigation, the Parties have agreed to settle the dispute regarding distribution of the Park Funds and all related disputes and controversies between them regarding the Park Sites on the terms set forth in this Agreement without resort to litigation between them.

## II.

## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the covenants, promises and releases set forth herein, and in full settlement of all such claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, parents, insurers, and any other parties or persons claiming by, through or under any of the Parties hereto, as follows:

A.      **Settlement Consideration.**

1.      Settlement Payments:

a.      The USACM Trust and DDH have agreed to a 70/30 division of the Park Funds: The USACM Trust shall receive 70% of the Park Funds and DDH shall receive 30% of the Park Funds.

b.      The USACM Trust shall receive the funds held in the Ticor Title Account (approximately $187,996.50) (the "Ticor Title Funds").

c.      Upon the Effective Date of this Agreement, DDH shall pay itself $109,093 from the DDH Account. The remainder of the funds in the DDH Account (not less than $56,398.95) shall remain in the DDH Account and shall be held separately from any other DDH assets.

In the event that Toblak, USAIP or the USACM Trust have received the Ticor Title Funds on or before the Effective Date, then DDH shall pay itself from the DDH Account, the balance of the funds held within the DDH Account (approximately $56,398.95).

2.   A bank account held by DDH in the amount of approximately $163,645.69 (the "DDH Account");

3.   A bank account held in the name of Toblak and under the control of Poulin in the amount of approximately $198,081.49 (the "USAIP Account").

E.    Pursuant to an Amended and Restated Pledge Agreement effective January 1, 2006 (the "Amended and Restated Pledge Agreement," attached hereto as Exhibit A), both USACM and DDH claim rights to the funds held in the three Accounts and have mutual disputes about the amount each should receive.

F.    In order to avoid the costs and uncertainty of litigation, the Parties have agreed to settle the dispute regarding distribution of the Park Funds and all related disputes and controversies between them regarding the Park Sites on the terms set forth in this Agreement without resort to litigation between them.

## II.
## <u>TERMS AND CONDITIONS</u>

NOW, THEREFORE, in consideration of the covenants, promises and releases set forth herein, and in full settlement of all such claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, parents, insurers, and any other parties or persons claiming by, through or under any of the Parties hereto, as follows:

A.    **Settlement Consideration.**

1.   <u>Settlement Payments</u>:

a.   The USACM Trust and DDH have agreed to a 70/30 division of the Park Funds:  The USACM Trust shall receive 70% of the Park Funds and DDH shall receive 30% of the Park Funds.

b.   The USACM Trust shall receive the funds held in the Ticor Title Account (approximately $187,996.50) (the "Ticor Title Funds");

c.   Upon the Effective Date of this Agreement, DDH shall pay itself $109,093 from the DDH Account.  The remainder of the funds in the DDH Account (not less than $56,398.95) shall remain in the DDH Account and shall be held separately from any other DDH assets.

In the event that Toblak, USAIP or the USACM Trust have received the Ticor Title Funds on or before the Effective Date, then DDH shall pay itself from the DDH Account, the balance of the funds held within the DDH Account (approximately $56,398.95);



d.    Upon the Effective Date, Poulin shall transfer the balance held in the USAIP Account (approximately $198,081.49) to the USACM Trust. In addition, in the event the Ticor Title Funds are paid to Toblak or USAIP after the Effective Date of this Agreement, Poulin shall transfer 100% of the Ticor Title Funds to the USACM Trust within two (2) business days of their receipt.

e.    In the event the Ticor Title Funds are distributed to the USACM Trust, Toblak, or USAIP after the Effective Date of this Agreement, then, within two (2) business days following receipt of the Ticor Title Funds, counsel for the Party receiving such funds shall notify DDH's counsel, Kaaran Thomas, in writing, of the receipt of the Ticor Title Funds. Thereafter, DDH is authorized to pay itself the remainder of the funds held within the DDH Account (approximately $56,398.95).

In the unlikely event that that the Bankruptcy Court in Case No. BK-N-01-33665-GWZ denies the USACM's Trust's motion seeking the release of the Ticor Title Funds to the USACM Trust (the "Ticor Title Motion"), the USACM Trust shall provide to DDH the Bankruptcy Court order denying the Ticor Title Motion, along with any pleadings related to the Ticor Title Motion. Within two (2) business days from receipt of the Bankruptcy Court order denying the Ticor Title Motion, DDH shall pay to the USACM Trust the remainder of funds held within the DDH Account (not less than $56,398.95).

2.    <u>Duty to Cooperate to Obtain Release of Funds</u>. Pursuant to a Stipulation and Order for Limited Stay Pending Appeal signed by the United States District Court for the District of Nevada (the "District Court") on May 17, 2004 in Cause No. 3:03-cv-00156-HDM-VPC to obtain release of the Ticor Title Funds, the Bankruptcy Court must enter an order in Bankruptcy Case No. BK-N-01-33665-GWZ directing Ticor Title to release the Ticor Title Funds. The Parties agree to sign and submit an order substantially in the form attached hereto as Exhibit B. All Parties agree to cooperate and provide all information and consents necessary to obtain a Bankruptcy Court order directing Ticor Title to release the Ticor Title Funds to the USACM Trust. In accordance with the Settlement Payment section A.1.b., above, the Ticor Title Funds will be paid to the USACM Trust.

B.    <u>Releases.</u>

1    <u>Release of Claims by the USACM Trust.</u>  Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, the USACM Trust fully releases and discharges DDH, Tanamera, Toblak, Poulin, and USAIP and all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that the USACM Trust

d.       Upon the Effective Date, Poulin shall transfer the balance held in the USAIP Account (approximately $198,081.49) to the USACM Trust.  In addition, in the event the Ticor Title Funds are paid to Toblak or USAIP after the Effective Date of this Agreement, Poulin shall transfer 100% of the Ticor Title Funds to the USACM Trust within two (2) business days of their receipt.

e.       In the event the Ticor Title Funds are distributed to the USACM Trust, Toblak, or USAIP after the Effective Date of this Agreement, then, within two (2) business days following receipt of the Ticor Title Funds, counsel for the Party receiving such funds shall notify DDH's counsel, Kaaran Thomas, in writing, of the receipt of the Ticor Title Funds.  Thereafter, DDH is authorized to pay itself the remainder of the funds held within the DDH Account (approximately $56,398.95).

In the unlikely event that that the Bankruptcy Court in Case No. BK-N-01-33665-GWZ denies the USACM's Trust's motion seeking the release of the Ticor Title Funds to the USACM Trust (the "Ticor Title Motion"), the USACM Trust shall provide to DDH the Bankruptcy Court order denying the Ticor Title Motion, along with any pleadings related to the Ticor Title Motion.  Within two (2) business days from receipt of the Bankruptcy Court order denying the Ticor Title Motion, DDH shall pay to the USACM Trust the remainder of funds held within the DDH Account (not less than $56,398.95).

2.     <u>Duty to Cooperate to Obtain Release of Funds</u>.  Pursuant to a Stipulation and Order for Limited Stay Pending Appeal signed by the United States District Court for the District of Nevada (the "District Court") on May 17, 2004 in Cause No. 3:03-cv-00156-HDM-VPC to obtain release of the Ticor Title Funds, the Bankruptcy Court must enter an order in Bankruptcy Case No. BK-N-01-33665-GWZ directing Ticor Title to release the Ticor Title Funds.  The Parties agree to sign and submit an order substantially in the form attached hereto as Exhibit B. All Parties agree to cooperate and provide all information and consents necessary to obtain a Bankruptcy Court order directing Ticor Title to release the Ticor Title Funds to the USACM Trust.  In accordance with the Settlement Payment section A.1.b., above, the Ticor Title Funds will be paid to the USACM Trust.

**B.     <u>Releases.</u>**

1     <u>Release of Claims by the USACM Trust.</u>  Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, the USACM Trust fully releases and discharges DDH, Tanamera, Toblak, Poulin, and USAIP and all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds.  This release includes all claims that the USACM Trust

d.    Upon the Effective Date, Poulin shall transfer the balance held in the USAIP Account (approximately $198,081.49) to the USACM Trust.. In addition, in the event the Ticor Title Funds are paid to Toblak or USAIP after the Effective Date of this Agreement, Poulin shall transfer 100% of the Ticor Title Funds to the USACM Trust within two (2) business days of their receipt.

e.    In the event the Ticor Title Funds are distributed to the USACM Trust, Toblak, or USAIP after the Effective Date of this Agreement, then, within two (2) business days following receipt of the Ticor Title Funds, counsel for the Party receiving such funds shall notify DDH's counsel, Kaaran Thomas, in writing, of the receipt of the Ticor Title Funds. Thereafter, DDH is authorized to pay itself the remainder of the funds held within the DDH Account (approximately $56,398.95).

In the unlikely event that that the Bankruptcy Court in Case No. BK-N-01-33665-GWZ denies the USACM's Trust's motion seeking the release of the Ticor Title Funds to the USACM Trust (the "Ticor Title Motion"), the USACM Trust shall provide to DDH the Bankruptcy Court order denying the Ticor Title Motion,, along with any pleadings related to the Ticor Title Motion. Within two (2) business days from receipt of the Bankruptcy Court order denying the Ticor Title Motion, DDH shall pay to the USACM Trust the remainder of funds held within the DDH Account (not less than $56,398.95).

2.    **Duty to Cooperate to Obtain Release of Funds.** Pursuant to a Stipulation and Order for Limited Stay Pending Appeal signed by the United States District Court for the District of Nevada (the "District Court") on May 17, 2004 in Cause No. 3:03-cv-00156-HDM-VPC to obtain release of the Ticor Title Funds, the Bankruptcy Court must enter an order in Bankruptcy Case No. BK-N-01-33665-GWZ directing Ticor Title to release the Ticor Title Funds. The Parties agree to sign and submit an order substantially in the form attached hereto as Exhibit B. All Parties agree to cooperate and provide all information and consents necessary to obtain a Bankruptcy Court order directing Ticor Title to release the Ticor Title Funds to the USACM Trust. In accordance with the Settlement Payment section A.1.b., above, the Ticor Title Funds will be paid to the USACM Trust.

B.    **Releases.**

1    **Release of Claims by the USACM Trust.** Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, the USACM Trust fully releases and discharges DDH, Tanamera, Toblak, Poulin, and USAIP and all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that the USACM Trust



ever had or now has against DDH, Tanamera, Toblak, Poulin, and USAIP relating to the Park Sites and/or the Park Funds, provided, however, that the USACM Trust does not release DDH, Tanamera, Toblak, Poulin, and USAIP from any obligations under this Agreement (collectively, the "USACM Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

2.      Release of Claims by DDH and Tanamera.  Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, DDH and Tanamera for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that DDH and/or Tanamera ever had or now has against the USACM, the USACM Trust, the USACM Trustee, Poulin, USAIP and Toblak relating to the Park Sites and/or the Park Funds, provided, however, that DDH and Tanamera do not release USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak from their obligations under this Agreement (collectively, the "DDH/Tanamera Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

3.      Release of Claims by Toblak and USAIP.  Upon the Effective Date and the and release of the Ticor Title Account funds and the USAIP Account funds, USAIP and Toblak for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds.  This release includes all claims that USAIP and/or Toblak ever had or now has against the USACM, the USACM Trust, the USACM Trustee, DDH and/or Tanamera relating to the Park Sites and/or the Park Funds, provided, however, that Toblak and USAIP do not release USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera from their obligations under this Agreement (collectively, the "USAIP/Toblak Released Claims").  This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.



ever had or now has against DDH, Tanamera, Toblak, Poulin, and USAIP relating to the Park Sites and/or the Park Funds, provided, however, that the USACM Trust does not release DDH, Tanamera, Toblak, Poulin, and USAIP from any obligations under this Agreement (collectively, the "USACM Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

       2.    <u>Release of Claims by DDH and Tanamera.</u>  Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, DDH and Tanamera for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that DDH and/or Tanamera ever had or now has against the USACM, the USACM Trust, the USACM Trustee, Poulin, USAIP and Toblak relating to the Park Sites and/or the Park Funds, provided, however, that DDH and Tanamera do not release USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak from their obligations under this Agreement (collectively, the "DDH/Tanamera Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

       3.    <u>Release of Claims by Toblak and USAIP.</u> Upon the Effective Date and the and release of the Ticor Title Account funds and the USAIP Account funds, USAIP and Toblak for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds.  This release includes all claims that USAIP and/or Toblak ever had or now has against the USACM, the USACM Trust, the USACM Trustee, DDH and/or Tanamera relating to the Park Sites and/or the Park Funds, provided, however, that Toblak and USAIP do not release USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera from their obligations under this Agreement (collectively, the "USAIP/Toblak Released Claims").  This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

ever had or now has against DDH, Tanamera, Toblak, Poulin, and USAIP relating to the Park Sites and/or the Park Funds, provided, however, that the USACM Trust does not release DDH, Tanamera, Toblak, Poulin, and USAIP from any obligations under this Agreement (collectively, the "USACM Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

2.    Release of Claims by DDH and Tanamera.  Upon the Effective Date and the release of the Ticor Title Account funds and the USAIP Account funds, DDH and Tanamera for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or related to the Park Sites and/or the Park Funds. This release includes all claims that DDH and/or Tanamera ever had or now has against the USACM, the USACM Trust, the USACM Trustee, Poulin, USAIP and Toblak relating to the Park Sites and/or the Park Funds, provided, however, that DDH and Tanamera do not release USACM, the USACM Trust, the USACM Trustee, USAIP, Poulin and Toblak from their obligations under this Agreement (collectively, the "DDH/Tanamera Released Claims"). This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.

3.    Release of Claims by Toblak and USAIP. Upon the Effective Date and the and release of the Ticor Title Account funds and the USAIP Account funds, USAIP and Toblak for themselves and on behalf of all of their present and former principals, employees, staff, predecessors and successors, and their respective attorneys, consultants, adjustors and insurers in their capacities as such, fully releases and discharges USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera and all of their present and former trustees, managers, employees, agents, consultants, attorneys, directors, and officers, and their respective insurers in their capacities as such from any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds.  This release includes all claims that USAIP and/or Toblak ever had or now has against the USACM, the USACM Trust, the USACM Trustee, DDH and/or Tanamera relating to the Park Sites and/or the Park Funds, provided, however, that Toblak and USAIP do not release USACM, the USACM Trust, the USACM Trustee, DDH and Tanamera from their obligations under this Agreement (collectively, the "USAIP/Toblak Released Claims").  This release is expressly limited to any and all claims, demands, damages, liabilities, actions, causes of action or suits at law or in equity arising out of or directly related to the Park Sites and/or the Park Funds and does not provide any alternate release to the Parties or any third-party.



**C.    General Terms and Provisions**

       1.    <u>Legal Costs and Expenses</u>.  Each Party agrees to pay its own legal costs and expenses incurred in connection with this Agreement.

       2.    <u>Effective Date.</u>  As used herein, "Effective Date" means the first business day which is eleven (11) days after entry of an order by the Bankruptcy Court in the USACM Bankruptcy Case authorizing the USACM Trust to enter into the Agreement, as well as entry of an order by the Bankruptcy Court in the USAIP Bankruptcy Court authorizing, pursuant to Fed.R.Bankr.P. 9019, USAIP to enter into the Agreement (collectively, the "Approval Orders"). Unless otherwise ordered by a court, the Effective Date will occur on the first business day which is more than ten (10) days after entry of the Approval Orders notwithstanding any pending appeal commenced by one of the Parties or any third-party.  If any stay is imposed as to the effectiveness of this Agreement as a result of an appeal, upon written notification to the other Parties, any Party may deem this agreement void and nonbinding on the Parties.

       3.    <u>Notice to the Parties.</u>  Any notices in connection with this Agreement to each of the Parties shall be given, by fax and by certified mail, to the following individuals:

      <u>For the USACM Trust:</u>
      Geoffrey L. Berman
      DEVELOPMENT SPECIALISTS, INC.
      333 South Grand Avenue, Suite 4070
      Los Angeles, California 90071-1544
      Telephone: (213) 617-2717
      Facsimile: (213) 617-2718

      Barbara Whiten Balliette
      DIAMOND MCCARTHY, LLP
      6504 Bridgepoint Pkwy
      Suite 500
      Austin, Texas  78730
      Telephone: (512) 617-5200
      Facsimile: (512) 617-5299

      <u>For DDH/Tanamera:</u>
      Kaaran Thomas
      MCDONALD CARANO WILSON LLP
      100 West Liberty
      10th Floor
      P.O. Box 2670
      Reno, Nevada 89505

      <u>For Toblak/USAIP</u>
      Lisa M. Poulin
      c/o Talitha B. Gray
      GORDON SILVER
      3960 Howard Hughes Pkwy
      9th Floor

C.      **General Terms and Provisions**

1.      Legal Costs and Expenses. Each Party agrees to pay its own legal costs and expenses incurred in connection with this Agreement.

2.      Effective Date. As used herein, "Effective Date" means the first business day which is eleven (11) days after entry of an order by the Bankruptcy Court in the USACM Bankruptcy Case authorizing the USACM Trust to enter into the Agreement, as well as entry of an order by the Bankruptcy Court in the USAIP Bankruptcy Court authorizing, pursuant to Fed.R.Bankr.P. 9019, USAIP to enter into the Agreement (collectively, the "Approval Orders"). Unless otherwise ordered by a court, the Effective Date will occur on the first business day which is more than ten (10) days after entry of the Approval Orders notwithstanding any pending appeal commenced by one of the Parties or any third-party. If any stay is imposed as to the effectiveness of this Agreement as a result of an appeal, upon written notification to the other Parties, any Party may deem this agreement void and nonbinding on the Parties.

3.      Notice to the Parties. Any notices in connection with this Agreement to each of the Parties shall be given, by fax and by certified mail, to the following individuals:

> For the USACM Trust:
> Geoffrey L. Berman
> DEVELOPMENT SPECIALISTS, INC.
> 333 South Grand Avenue, Suite 4070
> Los Angeles, California 90071-1544
> Telephone: (213) 617-2717
> Facsimile: (213) 617-2718
>
> Barbara Whiten Balliette
> DIAMOND MCCARTHY, LLP
> 6504 Bridgepoint Pkwy
> Suite 500
> Austin, Texas 78730
> Telephone: (512) 617-5200
> Facsimile: (512) 617-5299
>
> For DDH/Tanamera:
> Kaaran Thomas
> MCDONALD CARANO WILSON LLP
> 100 West Liberty
> 10th Floor
> P.O. Box 2670
> Reno, Nevada 89505
>
> For Toblak/USAIP
> Lisa M. Poulin
> c/o Talitha B. Gray
> GORDON SILVER
> 3960 Howard Hughes Pkwy
> 9th Floor

C.    **General Terms and Provisions**

       1.       <u>Legal Costs and Expenses</u>.  Each Party agrees to pay its own legal costs and expenses incurred in connection with this Agreement.

       2.       <u>Effective Date.</u>  As used herein, "Effective Date" means the first business day which is eleven (11) days after entry of an order by the Bankruptcy Court in the USACM Bankruptcy Case authorizing the USACM Trust to enter into the Agreement, as well as entry of an order by the Bankruptcy Court in the USAIP Bankruptcy Court authorizing, pursuant to Fed.R.Bankr.P. 9019, USAIP to enter into the Agreement (collectively, the "Approval Orders"). Unless otherwise ordered by a court, the Effective Date will occur on the first business day which is more than ten (10) days after entry of the Approval Orders notwithstanding any pending appeal commenced by one of the Parties or any third-party.  If any stay is imposed as to the effectiveness of this Agreement as a result of an appeal, upon written notification to the other Parties, any Party may deem this agreement void and nonbinding on the Parties.

       3.       <u>Notice to the Parties.</u>  Any notices in connection with this Agreement to each of the Parties shall be given, by fax and by certified mail, to the following individuals:

> <u>For the USACM Trust:</u>
> Geoffrey L. Berman
> DEVELOPMENT SPECIALISTS, INC.
> 333 South Grand Avenue, Suite 4070
> Los Angeles, California 90071-1544
> Telephone: (213) 617-2717
> Facsimile: (213) 617-2718
>
> Barbara Whiten Balliette
> DIAMOND MCCARTHY, LLP
> 6504 Bridgepoint Pkwy
> Suite 500
> Austin, Texas  78730
> Telephone: (512) 617-5200
> Facsimile: (512) 617-5299
>
> <u>For DDH/Tanamera:</u>
> Kaaran Thomas
> MCDONALD CARANO WILSON LLP
> 100 West Liberty
> 10th Floor
> P.O. Box 2670
> Reno, Nevada 89505
>
> <u>For Toblak/USAIP:</u>
> Lisa M. Poulin
> c/o Talitha B. Gray
> GORDON SILVER
> 3960 Howard Hughes Pkwy
> 9th Floor



SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
155084

Las Vegas, Nevada 89169

4.     Good Faith Compromise.  This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of the claims related to the Park Sites and Park Funds.  By this settlement, no Party admits liability to any other Party in any respect, or makes any admission as to factual or legal contentions relating to the matters settled herein.

5.     Plain Meaning.  The Parties acknowledge that they have had the opportunity to be represented by counsel during negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect.  The Parties agree that (a) the terms and provisions of this Agreement are not to be construed more strictly against any of the Parties; and (b) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

6.     Integration.  This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein.  This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause or extent of injuries, or legal liability therefore, or any other representations of any type or nature except as set forth herein. No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement.   THE PARTIES ALSO ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE DISPUTE REGARDING THE PARK FUNDS AND STIPULATE THAT IN EXECUTING THIS AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION BY ANY OTHER PARTY OR ITS/HIS AGENTS, REPRESENTATIVES OR ATTORNEYS, WITH REGARD TO (1) FACTS UNDERLYING THE LAWSUIT, (2) THE SUBJECT MATTER OR EFFECT OF THIS AGREEMENT, AND (3) ANY OTHER FACTS OR ISSUES WHICH MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS AGREEMENT, OTHER THAN AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

7.     Amendments.   This Agreement may be amended only by written agreement signed by each of the Parties, and any alleged breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver.  This Agreement and any such amendments or waivers of breach may be executed either directly by the Parties, or on their behalf by authorized counsel.

8.     Severability.   If any term or provision of this Agreement shall be determined to be unenforceable or invalid or illegal in any respect, the unenforceability, invalidity or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid or illegal term or provision had never been contained herein.

9.     Counterparts and Signatures.  This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement.  Signatures obtained by facsimile or email in .pdf format shall be deemed to be original signatures.

10.     Enforcement of the Agreement.  Each Party agrees to bear its own fees and costs with respect to any duties required of the Party under this Agreement; in any matter

Las Vegas, Nevada 89169

4.    Good Faith Compromise.  This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of the claims related to the Park Sites and Park Funds.  By this settlement, no Party admits liability to any other Party in any respect, or makes any admission as to factual or legal contentions relating to the matters settled herein.

5.    Plain Meaning.    The Parties acknowledge that they have had the opportunity to be represented by counsel during negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect.  The Parties agree that (a) the terms and provisions of this Agreement are not to be construed more strictly against any of the Parties; and (b) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

6.    Integration.  This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein.  This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause or extent of injuries, or legal liability therefore, or any other representations of any type or nature except as set forth herein. No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement.   THE PARTIES ALSO ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE DISPUTE REGARDING THE PARK FUNDS AND STIPULATE THAT IN EXECUTING THIS AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION BY ANY OTHER PARTY OR ITS/HIS AGENTS, REPRESENTATIVES OR ATTORNEYS, WITH REGARD TO (1) FACTS UNDERLYING THE LAWSUIT, (2) THE SUBJECT MATTER OR EFFECT OF THIS AGREEMENT, AND (3) ANY OTHER FACTS OR ISSUES WHICH MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS AGREEMENT, OTHER THAN AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

7.    Amendments.    This Agreement may be amended only by written agreement signed by each of the Parties, and any alleged breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver.  This Agreement and any such amendments or waivers of breach may be executed either directly by the Parties, or on their behalf by authorized counsel.

8.    Severability.    If any term or provision of this Agreement shall be determined to be unenforceable or invalid or illegal in any respect, the unenforceability, invalidity or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid or illegal term or provision had never been contained herein.

9.    Counterparts and Signatures.  This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement.  Signatures obtained by facsimile or email in .pdf format shall be deemed to be original signatures.

10.    Enforcement of the Agreement.  Each Party agrees to bear its own fees and costs with respect to any duties required of the Party under this Agreement; in any matter

Las Vegas, Nevada 89169

4.    <u>Good Faith Compromise.</u>  This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of the claims related to the Park Sites and Park Funds.  By this settlement, no Party admits liability to any other Party in any respect, or makes any admission as to factual or legal contentions relating to the matters settled herein.

5.    <u>Plain Meaning.</u>    The Parties acknowledge that they have had the opportunity to be represented by counsel during negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect.  The Parties agree that (a) the terms and provisions of this Agreement are not to be construed more strictly against any of the Parties; and (b) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

6.    <u>Integration.</u>  This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein.  This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause or extent of injuries, or legal liability therefore, or any other representations of any type or nature except as set forth herein.  No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement.  THE PARTIES ALSO ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE DISPUTE REGARDING THE PARK FUNDS AND STIPULATE THAT IN EXECUTING THIS AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION BY ANY OTHER PARTY OR ITS/HIS AGENTS, REPRESENTATIVES OR ATTORNEYS, WITH REGARD TO (1) FACTS UNDERLYING THE LAWSUIT, (2) THE SUBJECT MATTER OR EFFECT OF THIS AGREEMENT, AND (3) ANY OTHER FACTS OR ISSUES WHICH MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS AGREEMENT, OTHER THAN AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

7.    <u>Amendments.</u>    This Agreement may be amended only by written agreement signed by each of the Parties, and any alleged breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver.  This Agreement and any such amendments or waivers of breach may be executed either directly by the Parties, or on their behalf by authorized counsel.

8.    <u>Severability.</u>    If any term or provision of this Agreement shall be determined to be unenforceable or invalid or illegal in any respect, the unenforceability, invalidity or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid or illegal term or provision had never been contained herein.

9.    <u>Counterparts and Signatures.</u>  This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement.  Signatures obtained by facsimile or email in .pdf format shall be deemed to be original signatures.

10.    <u>Enforcement of the Agreement.</u>  Each Party agrees to bear its own fees and costs with respect to any duties required of the Party under this Agreement; in any matter



involving, referring, or relating to the interpretation and enforcement of this Agreement; and in connection with any disputes that may arise between the Parties relating to this Agreement.

11. <u>Construction</u>. This Agreement is to be governed by the law of the State of Nevada. The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Bankruptcy Court for these purposes.

12. <u>Representations</u>. Except as expressly stated herein, each Party warrants, represents and agrees that it (i) has not assigned, subrogated, pledged or transferred to any person, firm, partnership, corporation or other entity whatsoever any of the claims, counterclaims, actions, demands or causes of action to be released pursuant to the releases set forth in this Agreement and (ii) is fully authorized to enter into this Agreement without the consent of any third-parties. Specifically, each person signing the Agreement represents and warrants that upon obtaining entry of the Approval Orders, s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding obligations of the Party on whose behalf the person is signing.

13. <u>Inurement</u>. This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors and trustees.

DATED: January ___, 2009    **USACM LIQUIDATING TRUST**


By:_____
    Geoffrey L. Berman, in his capacity as
    Trustee of the USACM Liquidating Trust


DATED:  January ___, 2009    **DDH FINANCIAL CORP**


By:_____
    Kreg Rowe
    Title: _____


DATED: January ___, 2009    **TANAMERA COMMERCIAL DEVELOPMENT, LLC**


By:_____

involving, referring, or relating to the interpretation and enforcement of this Agreement; and in connection with any disputes that may arise between the Parties relating to this Agreement.

11.    Construction.  This Agreement is to be governed by the law of the State of Nevada. The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Bankruptcy Court for these purposes.

12.    Representations.  Except as expressly stated herein, each Party warrants, represents and agrees that it (i) has not assigned, subrogated, pledged or transferred to any person, firm, partnership, corporation or other entity whatsoever any of the claims, counterclaims, actions, demands or causes of action to be released pursuant to the releases set forth in this Agreement and (ii) is fully authorized to enter into this Agreement without the consent of any third-parties.  Specifically, each person signing the Agreement represents and warrants that upon obtaining entry of the Approval Orders, s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding obligations of the Party on whose behalf the person is signing.

13.    Inurement.  This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors and trustees.

DATED: January _9_, 2009                    **USACM LIQUIDATING TRUST**

By: _Geoffrey L. Berman_
Geoffrey L. Berman, in his capacity as
Trustee of the USACM Liquidating Trust

DATED:  January ___, 2009                   **DDH FINANCIAL CORP**

By:_____
Kreg Rowe
Title: _____

DATED:  January ___, 2009                   **TANAMERA COMMERCIAL DEVELOPMENT, LLC**

By:_____

involving, referring, or relating to the interpretation and enforcement of this Agreement; and in connection with any disputes that may arise between the Parties relating to this Agreement.

11.    Construction.  This Agreement is to be governed by the law of the State of Nevada.  The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Bankruptcy Court for these purposes.

12.    Representations.  Except as expressly stated herein, each Party warrants, represents and agrees that it (i) has not assigned, subrogated, pledged or transferred to any person, firm, partnership, corporation or other entity whatsoever any of the claims, counterclaims, actions, demands or causes of action to be released pursuant to the releases set forth in this Agreement and (ii) is fully authorized to enter into this Agreement without the consent of any third-parties.  Specifically, each person signing the Agreement represents and warrants that upon obtaining entry of the Approval Orders, s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding obligations of the Party on whose behalf the person is signing.

13.    Inurement.  This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors and trustees.

DATED: January ___, 2009            **USACM LIQUIDATING TRUST**

By:_____
        Geoffrey L. Berman, in his capacity as
        Trustee of the USACM Liquidating Trust

DATED:  January 9, 2009            **DDH FINANCIAL CORP**

By:_____
        Kreg Rowe
        Title: _President_

DATED: January 9, 2009            **TANAMERA COMMERCIAL
                                  DEVELOPMENT, LLC**

DDH FINANCIAL CORP, MANAGER

By:_____

Kreg Rowe

Title: _____

DATED:  January ___, 2009

**USA INVESTMENT PARTNERS, LLC**

By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC

DATED:  January ___, 2009

**TOBLAK, LLC**

By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC, the sole member and
manager of Toblak, LLC

Kreg Rowe

Title: _____

DATED:   January ___, 2009          **USA INVESTMENT PARTNERS, LLC**


By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC


DATED:   January ___, 2009          **TOBLAK, LLC**


By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC, the sole member and
manager of Toblak, LLC

Kreg Rowe_____
Title: _____*PRESIDENT*_____

DATED:  January ___, 2009            **USA INVESTMENT PARTNERS, LLC**


By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC


DATED:  January ___, 2009            **TOBLAK, LLC**


By: _____

Lisa M. Poulin, in her capacity as the
Chapter 11 Trustee of USA Investment
Partners, LLC, the sole member and
manager of Toblak, LLC

## AMENDED AND RESTATED PLEDGE AGREEMENT

This AMENDED AND RESTATED PLEDGE AGREEMENT ("Amended Pledge Agreement") effective January 1, 2006 amends and restates that certain Pledge Agreement dated as of the 1st day of August 2002 by and between M.P. Tanamera, LLC, a Nevada limited liability company and USA Commercial Mortgage Company, a Nevada corporation, ("Pledgee"), acting on behalf of and for the benefit of the Lenders, under each of the Loans described in Recital C Below and adds DDH Financial Corp, a Nevada corporation ("DDH") and USA Investment Partners, LLC, a Nevada limited liability company ("USA") as parties hereto, with reference to the following facts:

A.    M.P. Tanamera is a member holding a thirty-three and one-third percent (33 1/3%) membership interest in Tanamera Development, LLC a Nevada limited liability company owned in majority by USA or its affiliates. The Members of M.P. Tanamera are Emigh Investments (a Nevada limited liability company owned in majority by Linda A. Rowe) and as a minority Member, Greg Gough. Greg Gough is the Managing Member of M.P. Tanamera.

B.    Under an Agreement dated July 30, 2002 between DDH (a Nevada corporation owned by Kreg D. Rowe and Linda A. Rowe) and Tanamera Commercial Development, LLC ("TCD"), DDH was employed by TCD at a monthly consulting fee, which was initially set at $15,000 per month and was increased to $20,000 per month effective January 1, 2005. Kreg Rowe and Linda Rowe (hereinafter collectively "Rowe") are husband and wife. The consulting fees paid to DDH directly benefits Linda Rowe, which M.P. Tanamera acknowledges is adequate consideration for the initial Pledge Agreement and this Amended and Restated Pledge Agreement. DDH and M.P. Tanamera are hereinafter collectively referred to as "Pledgor".

C.    In the past, Rowe made numerous guarantees pursuant to loans with Pledgee, which have all been paid in full, with the exception of the following two loans ("Guaranteed Debt"):

| Date | Borrower | Original Amount |
|------|----------|-----------------|
| 7-21-00 | Double Diamond Ranch | $550,000 |
| 12-30-97 | Pioneer Village Investors, LLC | $4,000,000 |



EXHIBIT
A
to Settlement

D.    Additionally and separately, Rowe is still obligated under the terms of a loan to Double Diamond Ranch ("DDR") (that has since been repaid) to reimburse Pledgee for unreimbursed legal and court costs related to foreclosure proceedings and the subsequent filing for protection under bankruptcy by DDR on October 24, 2001. For purposes of this Agreement, while still an ongoing obligation of Rowe, this obligation is not part of the Guaranteed Debt outlined in Recital C above but will be repaid as discussed in Section 5 of this Agreement below. USA agrees to provide a reasonable accounting and summary of the amount due with copies of the legal bills and supporting documentation showing the amounts expended by USA on these matters with an appropriate deduction for the amount reimbursed by court order.

E.    Upon the sale of the assets underlying the notes outlined in Recital C above, the proceeds were not sufficient to repay the loans in full, thus rendering the guarantors liable.

F.    The parties agree and acknowledge that all other notes listed in the Pledge Agreement dated August 1, 2002 not outlined in Recital C and D above have been paid in full and Rowe, DDH and M.P. Tanamera shall have no further liability pursuant to these repaid notes.

G.    A portion of the Double Diamond Ranch note listed in Recital C above was advanced to Tanamera Homes, LLC, which company was subsequently merged into TCD on January 1, 2003. As of the date of the merger, TCD assumed a portion of the note owed by Tanamera Homes, LLC, which as of that date totaled $785,535.50 including accrued interest.

H.    DDH and Kreg Rowe have generated new business opportunities in Northern Nevada directly and indirectly benefiting Pledgee and its affiliates, including the projects being developed by Sparks Galleria Investors, LLC; Preserve at Galleria, LLC; Cabernet Highlands, LLC, Tanamera Corporate Center, LLC, Tanamera Commercial Development, LLC or its assignee (known as "La Hacienda") and Vineyard Professional Campus, LLC, each of which are entities not owned by Tanamera Resort Partners, LLC ("New Projects").

I.    USA is affiliated with Pledgee through common ownership and acknowledges good and valuable consideration has been received for the agreements included herein.

NOW THEREFORE, in consideration of the foregoing premises and recitals (which are true and correct) and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and with the intent to be legally bound, the parties hereto hereby agree as follows:

1.    The monthly consulting fees that have been paid and continue to be paid to DDH will be treated as a consulting expense to TCD rather than an advance against future distributions from TCD as originally agreed between the parties. Income allocable to the Members of TCD will be calculated after deduction for such expense. The Agreement

dated July 30th 2002 between the parties related to this consulting fee, is hereby rescinded retroactively and shall have no further force or effect.

2.    Pledgee and its affiliate, USA, agree to utilize a portion of any distributions out of the New Projects to match dollar for dollar any payments Pledgor, DDH, Rowe or any other entity owned by Rowe make from distributions from the New Projects on the Guaranteed Debt.  For example, if distributions are made from profits in Tanamera Corporate Center, LLC (by its parent Tanamera Properties, LLC) to USA and to DDH, and DDH uses such distribution to make a payment on the Guaranteed Debt outlined in Recital C above or the remaining Double Diamond Ranch obligation outlined in Recital D above, USA will match such payment up to the amount of the distribution. Notwithstanding the foregoing, any such payment made by USA or its affiliates for the benefit of Pledgor or Rowe, pursuant to the terms of this Section, will be made by way of a special allocation of profits to Rowe or DDH with a corresponding cash distribution, which will immediately be paid by Rowe or DDH to USA to be applied to the Guaranteed Debt outlined in Recital C or Double Diamond Ranch obligation outlined in Recital D, in order to avoid any tax liability for the benefit of USA or its affiliate.

3.    TCD will be solely responsible for payment of the portion of the Guaranteed Debt and associated interest that it assumed in its combination with Tanamera Homes, LLC as discussed in Recital G above (which totals approximately $1,063,000 including accrued interest as of 12-31-05).  This debt will be treated as an obligation of TCD and not of the Guarantors and hence the Guarantors shall have no further obligation pursuant to the repayment of this debt.  The portion of the Double Diamond Ranch note dated 7-21-2000 (approximately $275,000 including interest as of 12-31-05), that was not included in the obligation assumed by TCD will remain the responsibility of the Guarantors, subject to the terms outlined in Section 2 above.

4.    Under the original Pledge Agreement, M.P. Tanamera agreed to pledge any distributions it may otherwise be entitled to receive from Tanamera Development, LLC to the repayment of the Debt owed Pledgee or its Lenders until such debt was fully repaid.  The parties earlier modified the Pledge Agreement verbally requiring that only 50% of such distributions to M.P. Tanamera would be applied to such debt and the other 50% would be paid to M.P. Tanamera, LLC in cash in order for M.P. Tanamera, LLC to pay taxes on such distributions.  There now exists sufficient funding coming from the New Projects and from Toblak, LLC, as outlined in Section 5 below, to provide Pledgee with the comfort that the Guaranteed Debt and any outstanding legal expenses from DDR will be safely repaid and the parties hereby agree that M.P. Tanamera, LLC will hereafter be entitled to full payment of any distributions from Tanamera Development, LLC, without offset by Pledgee or its affiliates.

5    Toblak, LLC, an affiliate of Pledgee entered into a Second Amended Double Diamond Ranch Parks Agreement ("Parks Agreement") with the City of Reno and Double Diamond Ranch, LLC which is expected to result in net profits to Toblak, LLC in excess of the legal fees outlined in Recital D above, indirectly benefiting Pledgee. Pledgee agrees that Kreg Rowe was instrumental in providing this opportunity to Pledgee

and agrees that any profits stemming from the Parks Agreement will first be applied to any unreimbursed legal costs associated with obtaining the Parks Agreement, including the associated litigation and appeal, then to unreimbursed legal fees outlined in Recital D, third to any remaining balance under the Guaranteed Debt with any remaining amount split 50% with DDH and 50% with Pledgee. Pledgee agrees to provide an accounting of the legal fees and application for reimbursement filed with the court along with a copy of the court's award with reasonable supporting information.

6.    In connection with the merger of Tanamera Homes into TCD and the fact that the liabilities assumed exceeded assets received, DDH's equity account was debited $199,143. This transaction has resulted in the equity balances of USA and DDH differing from their ownership interests.    USA and DDH agree that equalizing distributions will be made in calendar years 2006 and 2007 to eliminate this difference with half of the difference eliminated through calendar year 2006 distributions made by TCD and the other half of the difference eliminated through distributions payable by TCD in calendar year 2007, such that the equity accounts for the members shall thereafter reflect their ownership percentages.

7.    Miscellaneous:

7.1    Partial Invalidity.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid, and shall be enforced to the fullest extent permitted by law.

7.2    Waivers.  No waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained.  No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act except those of the waiving party, which shall be extended by a period of time equal to the period of the delay.

7.3    Governing law:  This Agreement shall be construed in accordance with and governed by the laws of the State of Nevada.

7.4    Professional Fees.  If either party commences an action against the other to interpret or enforce any of the terms of this Agreement or because of the breach by the other party of any of the terms hereof, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs and expenses and court costs and other costs of action incurred in connection with the prosecution or defense of such action, whether or not the action is prosecuted to a final judgment.  For the purpose of this Agreement, the terms "attorneys' fees" or "attorneys' fees and costs" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostating, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an

attorney. The terms "attorneys' fees" or "attorneys' fees and costs" shall also include, without limitation, all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings, and whether or not any action or proceeding is brought with respect to the matter for which said fees and expenses were incurred. The term "attorney" shall have the same meaning as the term "counsel."

7.5     Time of Essence. The parties hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof and that failure to timely perform any of the terms, conditions, obligations or provisions hereof by any party shall constitute a material breach of and a non-curable (but waivable) default under this Agreement by the party so failing to perform.

This agreement supersedes and replaces the Pledge Agreement dated the 1st day of August 2002 and any other oral or written agreements pursuant to these matters between the parties.

PLEDGORS:

M.P. Tanamera, LLC                              Emigh Investments, LLC, Member
                                                of M.P. Tanamera, LLC

By: _____                   By: _____
    Greg Gough, Managing Member                     Greg Gough, Manager

DDH Financial Corp

By: _____
    Kreg Rowe, President

PLEDGEE:

USA Commercial Mortgage Company, Manager

By: _____
    Joseph Milanowski, President

OTHER BENEFICIARY HEREUNDER AND PARTY TO THIS AGREEMENT

USA Investment Partners, LLC

By: _____
    Joseph Milanowski, Manager

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

1
2
3
4
5

E-Filed on 1/13/09

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| 6 | In re: | Case No. BK-N-01-33665-GWZ |
|---|--------|----------------------------|

7      DOUBLE DIAMOND RANCH, LLC,       **CHAPTER 11**

8                                Debtor.   **UNOPPOSED EX PARTE MOTION**
9                                          **TO RE-OPEN CASE FOR LIMITED**
                                           **PURPOSE OF DIRECTING TICOR**
10                                         **TITLE TO RELEASE FUNDS HELD**
                                           **IN ESCROW**

11                                         [No hearing required]

12

13          USACM Liquidating Trust (the "USACM Trust"), as a successor to USA

14   Commercial Mortgage Company ("USACM"), requests that this Court re-open this

15   Bankruptcy Case to issue an order directing Ticor Title to release funds held in escrow

16   account 04004260 to the USACM Trust and, in support, shows the following:

17

18          1.      The USACM Trust is successor-in-interest to USACM pursuant to the Third

19   Amended Joint Chapter 11 Plan of Reorganization and Confirmation Order entered on

20   January 8, 2007 in Case No. BK-S-06-10725-LBR (the "USACM Bankruptcy Court"),

21   pursuant to, among other things, ¶¶ 10 & 28 of the Order Confirming The "Debtors' Third

22   Amended Joint Chapter 11 Plan Of Reorganization," As Modified Herein filed on January

23   7, 2007 and section D.1 of Art. IV of the Debtors' Third Amended Joint Chapter 11 Plan

24   of Reorganization. Geoffrey L. Berman (the "USACM Trustee") serves as the trustee of

25   the USACM Trust. Confirmation Order ¶ 30.

**EXHIBIT**
**B**
to settlement

2.     USACM was involved in an adversary proceeding against Lowe Enterprises Residential Investors, LLC ("Lowe Enterprises") in this bankruptcy case, Adversary No. BK-N-03-05. The case was appealed through to the Ninth Circuit Court of Appeals as Case 04-15855 (the "Lowe Appeal").

3.     USACM prevailed in the Lowe Appeal. *See* Exhibit A, Ninth Circuit Opinion in the Lowe Appeal.

4.     Pursuant to a Stipulation entered in Case No. CV-N-03-0156-HDM-VPC in the United States District Court for the District of Nevada ("Stipulation"), funds have been held in escrow with Ticor Title Company ("Ticor Title" and the "Ticor Funds")) pending the outcome of the Lowe Appeal. The Stipulation is attached hereto as Exhibit B.

5.     Pursuant to paragraph 6 of the Stipulation, if USACM prevailed in the Lowe Appeal, the Ticor Funds should be released to USACM; however, the release of the Ticor Funds requires this Court to enter an order directing Ticor Title to release the funds. Exhibit B, ¶ 6 ("If the decision on appeal by the Ninth Circuit is in favor of USACMC *and after entry of an appropriate Bankruptcy Court order* pursuant thereto to transfer the proceeds to USACMC, the clerk of the Bankruptcy Court or escrow agent shall transfer the proceeds to USACMC subject to any stay that may be entered by a court of competent jurisdiction.").

6.     As reflected in the Certificate of Conference, counsel for the USACM Trust has conferred with counsel for Lowe Enterprises who stated that Lowe Enterprises will not oppose the release of the Ticor Funds to the USACM Trust.

2

7.    In addition, right to possession of the Ticor Funds have been the subject of a dispute between the USACM Trust and DDH Financial, an affiliate of the original debtor in this bankruptcy case, Double Diamond Ranch. The USACM Trust and DDH Financial have settled their disputes regarding rights to the Ticor Funds and anticipate approval of the settlement by the USACM Bankruptcy Court.

8.    As successor-in-interest to USACM, the USACM Trust requests that this Court enter an order directing Ticor Title to release the funds to USACM when it is presented with an order from the USACM Bankruptcy Court directing release of the Ticor Funds to the USACM Trust.

WHEREFORE, the USACM Trust requests that this Court enter an order directing Ticor Title Company to release the funds held in escrow account 04004260 to the USACM Trust when presented with an order from the USACM Bankruptcy Court directing release of the Ticor Funds.

January 13, 2009.

**LEWIS AND ROCA LLP**

By: __/s/ Rob Charles_____
Rob Charles, NV 6593
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
(702) 949-8320 (telephone)
(702) 949-8321 (facsimile)

*Counsel for USACM Liquidating Trust*

3

## Certificate of Service

I certify that a copy of the foregoing, and a copy of the notice of electronic filing, were served via email, where an email address is listed, or by first class mail, postage prepaid, addressed as follows, on January 13, 2009:

Ralph H. Blakeney
Jones Day
3 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 553-7552
Facsimile: (949) 553-7539
Email Address: rblakeney@jonesday.com

Janet L. Chubb
jlc@jonesvargas.com
Jones Vargas
100 W. Liberty St., 12th Floor
P. O. Box 281
Reno, NV 89504-0281

Kaaran E. Thomas
kthomas@mcdonaldcarano.com
McDonald Carano Wilson LLP
100 West Liberty Street, 10th Floor
Reno, Nevada 89501

Talitha B. Gray
tgray@gordonsilver.com
Gordon Silver
3960 Howard Hughes Pkwy.
Ninth Floor
Las Vegas, NV 89169

/s/ Carrie Lawrence
Lewis and Roca LLP

## Certificate of Conference

I certify that Barbara Balliette, co-counsel for the USACM Liquidating Trust, conferred with counsel for Lowe Enterprises Residential Investors, LLC, Ralph H. Blakeney, and provided him with a draft of this request. Mr. Blakeney informed Ms. Balliette and me via email that Lowe Enterprises is not opposed to Ticor Title Company releasing the funds in escrow to the USACM Trust.

/s/ Rob Charles
Rob Charles
Counsel for USACM Liquidating Trust

4

# EXHIBIT B

RECEIVED

JAN 23 2006

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

JAN 18 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| **USA COMMERCIAL MORTGAGE COMPANY,** | No. 04-15855 |
| Appellee, | D.C. No. CV-03-00156-HDM |
| v. | **MEMORANDUM***|
| **LOWE ENTERPRISES RESIDENTIAL INVESTORS, LLC; BOHICA LLC, d/b/a DDR Devco, LLC; DOUBLE DIAMOND RANCH, LLC,** | |
| Appellants. | |



U.S. DISTRICT COURT
DISTRICT OF NEVADA
FILED

JAN 27 2006

CLERK, U.S. DISTRICT COURT

BY _____ DEPUTY

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted December 9, 2005
San Francisco, California

Before:  **KOZINSKI** and **W. FLETCHER**, Circuit Judges, and
**HOLLAND****,  District Judge.

---

\*    This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

\*\*    The Honorable H. Russel Holland, Senior United States District Judge for the District of Alaska, sitting by designation.


SCANNED

page 2

The district court correctly held that the bankruptcy court had no authority to modify the unambiguous terms of the settlement by extending the term of appellants' option without appellee's consent. The negotiated settlement specified consecutive thirty-day options to accept assignment of the Parks Agreement, and provided that modifications to the settlement agreement had to be approved by both parties. The bankruptcy court's extension of appellants' option period was a material modification of the settlement, and thus beyond the bankruptcy court's authority under Fed. R. Civ. P. 60(b) or Fed. R. Bank. P. 9006(b). The bankruptcy court did not utilize the procedures for modifying a confirmed plan. See 11 U.S.C. § 1127.

The district court also correctly held that the bankruptcy court could not equitably excuse appellants' failure to exercise their option on time. Option contracts are strictly construed, and "negligent failure to give the required written notice" is an insufficient reason to modify the terms of the options negotiated in the settlement agreement. Host Int'l, Inc. v. Summa Corp., 583 P.2d 1080, 1082 (Nev. 1978) (per curiam).

**AFFIRMED.**