LEWIS
AND
ROCA
——LLP——
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 1/27/09

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,[1]<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,[2]<br><br>USA SECURITIES, LLC,[3]<br><br>                         Debtors. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**Motion To Approve Settlement With Debt Acquisition Company Of America V, LLC**<br><br>Date:    February 20, 2009<br>Time:    9:30 a.m.<br>Place:   Foley Federal Building, 300 Las Vegas Boulevard South, Courtroom 1, Las Vegas, Nevada |
| **Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

     Geoffrey L. Berman as Trustee of the USACM Liquidating Trust (the "Trust")

moves this Court for an order pursuant to 11 U.S.C. § 105 and Rule 9019 of the Federal

Rules of Bankruptcy Procedure approving the settlement agreement between the Trust and

Debt Acquisition Company of America V, LLC ("DACA") attached hereto as **Exhibit 1**

---

[1] This bankruptcy case was closed on September 23, 2008.

[2] This bankruptcy case was closed on October 12, 2007.

[3] This bankruptcy case was closed on December 21, 2007.

2013715.1



(the "Agreement").  The Agreement resolves DACA's appeal of the confirmation order now pending before the Ninth Circuit Court of Appeals, No. 07-16796.  As a material term and condition of the settlement, the Agreement provides for a sale of the Trust's right to collect Prepaid Interest and related assets.

This Motion is supported by the following Memorandum of Points and Authorities and the record before this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Factual Background.**

1.      On April 13, 2006 ("Petition Date"), USA Commercial Mortgage Company ("USACM" or "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  USACM continued to operate its businesses  as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On January 8, 2007, this Court entered its Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Confirmation Order").

3.      *Prepaid Interest.*  The Court will recall that the confirmed Plan reserved in the Trust the right to collect Prepaid Interest.  The Trust believes that the uncollected balance of Prepaid Interest to date is slightly over $7.2 million.  That is comprised of slightly over $4.7 million in loans serviced by Compass, or its successors, and slightly over $2.4 million in Prepaid Interest in the Placer 1 and 2 Loans, being serviced by the Trust.

4.      The Trust sought and obtained the appointment of a Receiver for the Placer 1 Loan in December 2008.  Subsequently, the Receiver for the Placer 1 Loan completed the pending foreclosure of the Placer 1 lien, and took title back to the property, for a credit bid substantially less than the unpaid principal balance of the loan.  Therefore, the near term prospects of collecting Prepaid interest from the Placer 1 Loan by netting are slim, and non-existent with respect to the Placer 2 Loan.

2013715.1

LEWIS
AND
ROCA
———LLP———
L A W Y E R S

5.    Further, the stalemate in collecting loans serviced by Compass or its successors makes netting Prepaid Interest from those loans anytime soon problematic.

6.    The Trust brought suit against Compass seeking an accounting of the Prepaid Interest collections and a determination that Compass failed to collect certain sums owed.  The Court entered an order in adversary 08-01066 resolving a portion of this action.  In the course of informal discovery, the Trust believes that Compass failed to net at least $64,233.70 from Lenders, and instead paid those sums to Lenders.

7.    *Summary of Agreement – Prepaid Interest.*  The Agreement provides for DACA to purchase the following (the "Assets"):

i.    USACM and USACM Liquidating Trust's right to receive all Prepaid Interest[4] which is required under section IV E.1.(d)(ii) of the Plan to be collected by "any substitute or subsequent servicer" of a Loan and remitted to the USACM Liquidating Trust;

ii.    All causes of action to recover Prepaid Interest, subject to the tolling of limitations on such causes of action as provided for under the Plan; and

iii.    All payments to be collected on any Loan that would otherwise be payable to a Lender that received Prepaid Interest, but only to the extent of such advanced principal or interest payments.

8.    DACA will pay the USACM Liquidating Trust $1,200,000 for the Assets.

9.    The Plan tolled the limitations period to seek recovery of Prepaid Interest from Direct Lenders for 2 years.  Rather than leave Lenders open to such suits, DACA agrees not to sue any Lender for Prepaid Interest, unless such Lender received Prepaid Interest of at least $200,000.

---

[4] Capitalized terms not defined herein, or in the Agreement, shall have the same meaning as in the Debtor's confirmed Third Amended Joint Chapter 11 Plan of Reorganization.

2013715.1

10.     The Trust does not believe that it is required to seek higher bids for the uncollected Prepaid Interest, although the Trustee has made informal inquiries with respect to possible sale of the Prepaid Interest claims.  In the event that the Court requires bidding, the Trust has agreed to use its best efforts to obtain a procedural order requiring a minimum overbid of $200,000, subsequent bidding increments of $50,000, and an up to $50,000 expense reimbursement.

11.     *Confirmation Appeal.*  DACA objected to the confirmation of the Debtors Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan").  Its appeal was dismissed as moot by the United States District Court for the District of Nevada.  DACA appealed the District Court's ruling to the United States Court of Appeals for the Ninth Circuit, No. 07-16796 (the "Appeal").  DACA's pending Appeal is the only appeal of the Confirmation Order which remains pending.  The Appeal has been scheduled for argument on March 12, 2009.

12.     As a material term and condition of the settlement, DACA has agreed to dismiss the Appeal with predjudice.

13.     Bankruptcy Court approval is a condition precedent to the effective of the settlement, as set forth in the Agreement.  This condition was required by DACA in an abundance of caution for the following reasons:

a.  The Bankruptcy Court's reservation of jurisdiction in the Confirmation Order would extend, in DACA's view, to approval of settlements of any appeal of the Confirmation Order; and

b.      The right to recover Prepaid Interest from investors may be a "Litigation Claim" as defined in the Trust Agreement establishing the USACM Liquidating Trust.  The Trust Agreement was submitted to the Bankruptcy Court prior to confirmation of the Plan.   The Trust agreement provides in part:

4

2013715.1



4.4. Litigation Claims; etc.

 (a) Except as to any Litigation Claim released under the Plan, the Liquidating Trustee shall be the successor-in-interest to USACM with respect to any Claim, right or Litigation Claim that was or could have been commenced by USACM prior to the Effective Date, or thereafter arising in conjunction with the Trust Assets until the Liquidating Trust disposes of them. All such Litigation Claims and any and all other rights, Claims or interests constituting Trust Assets, including the right to subordinate Claims under Section 510 of the Bankruptcy Code, but excluding Litigation Claims released under the Plan, shall be retained and pursued and enforced by the Liquidating Trustee, including as the Trust Assets Estate Representative pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and the terms of the Plan.

 (b) The Liquidating Trustee shall have discretion to pursue or not to pursue any and all Claims, rights or Litigation Claims, as he determines to be in the best interests of the Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, provided, however, that the Liquidating Trustee may not agree to settle or otherwise dispose of any Claim, right or Litigation Claim valued by the party asserting such claim, right or Litigation Claim where the amount sought in the demand or complaint exceeds $100,000 without prior notice to the USACM Trust Committee and the approval of the Bankruptcy Court. With respect to any Litigation Claim, the Liquidating Trust and the Liquidating Trustee shall be bound by, and shall give effect to, any release, exculpation, waiver, estoppel or injunction provided by the Plan or the Confirmation Order.

 14. Pursuant to section D.VIII of the Plan and the corresponding provisions of the Confirmation Order, this Court retained "exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases, the assets and liabilities of the Estates and the Trust Estates, and the Plan to the fullest extent permitted by law." The Court further retained jurisdiction under paragraph D.VIII 10. of the Plan to enter "such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in

2013715.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

connection with the Plan, the Disclosure Statement or the Confirmation Order, including

USACM Trust Agreement and the DTDF Amended Operating Agreement."

15.     The attached Agreement has been accepted by the parties and, as recited in

that Agreement, the Trust has transmitted the required due diligence materials to DACA.

16.     The Plan provides that the limitations period on claims to recover Prepaid

Interest is tolled for two years.  The second anniversary of the Effective Date of the Plan is

March 12, 2009.  It is therefore possible that limitations might expire as to a portion of

these claims shortly after that date.  Also, the Appeal is set for  oral argument on March

12, 2009.  The Trust therefore seeks approval of this Court at the Omnibus Hearing on

February 20, 2009 and anticipates a closing not later than March 9, 2009.

## II.     Legal Authorities.

Here, the Trustee has made the decision to liquidate the Prepaid Interest causes of

action for a sum certain rather than considering the necessity of prosecuting avoidance

actions against Direct Lenders.  By the calculations of the Trust, there are over 900

Lenders that owe uncollected Prepaid Interest in amounts ranging from de minimis to a

handful with liability exceeding $100,000.  The logistics of attempting to bring numerous

avoidance actions in the appropriate venue, much less the discovery and prosecution of

such causes of action, are staggering.  The Trustee believes that a net recovery of

$1,200,000 is a fair result for the Trust without the necessity of bringing these actions.

Further, DACA has agreed not to sue Lenders for uncollected Prepaid Interest of

less than $200,000.  As indicated, this literally would remove the threat of Prepaid Interest

Litigation from all but a handful of Direct Lenders.

Finally, the sale is a material part of an agreement struck with DACA to settle the

pending Appeal.  Dismissal of the Appeal removes legal uncertainty that could affect

proceedings in the District Court involving the Direct Lenders and the successors in

interest to Compass.

2013715.1

LEWIS
AND
ROCA
LLP
L A W Y E R S

Under the circumstances, the Trustee believes that the proposed sale is an appropriate exercise of discretion and asks the Court to approve it.

As to the compromise, ordinarily, this Court has authority to enter into a debtor's proposed compromise and settlement agreements subject to bankruptcy court approval.[5] Although the Trust would then have the initial burden of proof with regard to the compromise of claims, the ultimate inquiry is whether the proposed action is reasonable or in the estate's best interest.[6]

"The bankruptcy court has great latitude in approving compromise agreements."[7] The seminal *A&C Properties* case and its progeny like *Woodson* make the decision to approve a compromise a matter of this Court's discretion, so long as the result is "fair and equitable."[8]

In making this determination, this Court must consider

> (a) the possibility of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[9]

Evaluating a proposed settlement "does not require the bankruptcy judge to hold a full evidentiary hearing or a 'mini-trial' before a compromise can be approved."[10]  Were that required, "there would be no point in compromising; the parties might as well go

---

[5] Fed. R. Bank. P. 9019; 11 U.S.C. § 105; *see also In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) (because "[t]he law favors a compromise and not litigation for its own sake," a debtor is empowered to compromise a controversy).

[6] *See United States v. Alaska Bank of the North (In the Matter of Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

[7] *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).

[8] *See Woodson*, 839 F.2d at 620; *A&C Properties*, 784 F.2d at 1381.

[9] *Id.* (quoting *In re Flight Transp. Corp. Sec. Litig*., 730 F.2d 1128, 1135 (8th Cir. 1984)).

[10] 10 COLLIER ON BANKRUPTCY, ¶ 9019.02 at 9019-5 (15th ed. 2002).

2013715.1

LEWIS
AND
ROCA
LLP
——
L A W Y E R S

1  ahead and try the case."[11]  Instead, the court is obliged only to "canvass the issues and see

2  whether the settlement falls below the lowest point in the range of reasonableness."[12]

3  Here, the Court is very familiar with the issues resolved by this Motion, and should

4  easily conclude that these settlements fall well above the "lowest point in the range of

5  reasonableness."  This settlement resolves contentious litigation which, if DACA is

6  successful, would involve the reversal of certain provisions of the Confirmation Order

7  which affect the Direct Lenders.  Thus, the Settlement Agreement is a reasonable and

8  prudent course of action and the USACM Trust believes is in the best interest of the estate,

9  and now the Trust.

10  Dated:  January 27, 2009

11  **LEWIS AND ROCA LLP**

12

13  By:  /s/ RC (#6593)

14       Susan M. Freeman, AZ 4199 (*pro hac vice*)
         Rob Charles, NV 6593

15  3993 Howard Hughes Parkway, Suite 600

16  Las Vegas, Nevada  89169-5996
    Facsimile (702) 949-8321

17  Telephone (702) 949-8320
    *Counsel for USACM Liquidating Trust*

18

19

20

21

22

23

24

25  _____

[11] *Id.*

26  [12] *Id.* (internal quotations omitted).

2013715.1