EXHIBIT 1

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is entered into as of January 14, 2009 (the "Effective Date") between USACM Liquidating Trust ("Trust"), and Debt Acquisition Company of America V, LLC ("DACA").

## RECITALS

DACA is willing to settle its objections to confirmation of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan") and to dismiss the appeal of the confirmation order now pending before the United States Court of Appeals for the 9th Circuit, No. 07-16796 (the "Appeal"). DACA, on the one hand, as appellant, and USA Commercial Mortgage Company ("USACM") and Trust, as appellees, are parties to the Appeal.

As a material term and condition of the settlement, DACA has agreed to purchase and Trust has agreed to sell, the following as to the Lenders identified in Exhibit A attached hereto on an "AS-IS, WHERE-IS" basis in accordance with the terms and conditions of this Agreement (the "Purchase Transaction"):

a. The right of Trust to receive all Prepaid Interest which is required under section IV E. 1. (d)(ii) of the Plan to be collected by "any substitute or subsequent servicer" of a Loan and remitted to Trust;

b. All causes of action to recover Prepaid Interest, subject to the tolling of limitations on such causes of action as provided for under the Plan; and

c. All payments to be collected on any Loan that would otherwise be payable to a Lender that received Prepaid Interest, but only to the extent of such advanced principal or interest payments (collectively, the "Assets").

## AGREEMENT

NOW THEREFORE, for and in consideration of the mutual covenants and agreements hereinafter set forth, the parties agree:

1. *Definitions*. The terms (i) "Loan", (ii) "Lender", (iii) "Petition Date", and (iv) "USACM" shall have the same meaning as under the definitions which are a part of the Plan. "Prepaid Interest" shall mean all advanced principal or interest payments from USACM to the applicable Lenders made before the Petition Date.

2. *Dismissal of Appeal*. Contingent upon closing of the Purchase Transaction, the Appeal shall be dismissed with prejudice by DACA. on the condition that the parties (including USACM) shall bear their own attorney fees and costs in relation to the Appeal. Trust will prepare and DACA, through its attorney of record,



will execute a stipulation to that effect for signature by counsel on behalf of DACA, Trust and USACM. If necessary, DACA will file a motion to dismiss the Appeal.

3. *Purchase and Sale of Assets*. Trust shall sell, assign, transfer, and convey the Assets to DACA, and DACA shall purchase, acquire and accept from Trust, all rights, title and interest in the Assets, free and clear of liens, claims and encumbrances.

4. *Limited Waiver of Right to Sue*. DACA agrees not to sue any Lender to recover Prepaid Interest, unless such Lender received Prepaid Interest in an aggregate amount of at least $200,000.

5. *Initial Deposit*. DACA has deposited $100,000 into a segregated account held by Trust (the "Initial Deposit").

6. *Purchase Price; Payment*. The purchase price ("Purchase Price") for the Assets shall be $1,200,000.

7. *Due Diligence Period*: A five business days Due Diligence Period shall commence on January 22, 2009 (the date the parties acknowledge receipt by DACA of all materials listed in paragraph 10.3). The Deposit shall be refundable for any reason during the Due Diligence Period. Upon the expiration of the Due Diligence Period and upon execution of the Purchase Agreement, the Deposit shall be increased by an additional $100,000.

8. *Bidding Procedures and Expense Reimbursement*. Trust shall seek Bankruptcy Court approval of the settlement, including the Purchase Transaction, without any requirement that the overbids be solicited. In the event that Bankruptcy Court, over the objection of Trust, requires overbidding, then:

8.1. Trust will use its best efforts to obtain an order of the Bankruptcy Court establishing bidding procedures which include a minimum overbid of $200,000 and subsequent bidding increments of $50,000; and

8.2. If neither DACA nor any affiliate of DACA is the successful bidder, then Trust will pay DACA up to $50,000 as reimbursement of DACA's reasonably incurred expenses, and Trust will not unreasonably oppose such request for reimbursement.

9. *Bankruptcy Court Approval*. The effectiveness of the settlement (including, as a component of the settlement, the obligation of DACA to complete the Purchase Transaction) shall be contingent upon the entry of an order of the Bankruptcy Court approving the Settlement, and expressly approving the Purchase Transaction as a part of the settlement (the "Approval Order").

9.1. The Approval Order shall be in form and substance acceptable to DACA and Trust.

9.2. Trust shall file at its own expense a motion seeking entry of the Approval Order.

9.3. Should the Bankruptcy Court fail to approve the Purchase Transaction on the grounds of lack of jurisdiction, Trust will submit an order so stating in form and substance acceptable to DACA (which order shall constitute the Approval Order) and the Parties in such case shall remain obligated to complete the Purchase Transaction.

10. *Closing*. The closing of the transaction contemplated under this Agreement (the "Closing") shall take place on or before March 9, 2009 (the "Closing Date") upon the satisfaction of the following Conditions to Closing.

11. *Conditions to Closing*. The Deposit shall be refunded to DACA if any of the following Conditions precedent are not met, as may be determined by DACA in its reasonable judgment. Conversely, the Closing shall occur one business day after the last to occur of any of the following:

11.1. Execution of this Agreement.

11.2. Eleven calendar days after the Bankruptcy Court's entry of the Approval Order, unless a stay pending appeal has been obtained.

11.3. Five business days after January 22, 2009 (which is the date that Trust provided written notice by Trust to DACA that it has delivered to DACA all of the following documents and information available to Trust using its best efforts).

11.3.1. All reports, statistics and information related to amounts due by Lenders for Prepaid Interest.

11.3.2. All communications between Lenders and USACM or Trust regarding the settlement of any individual Prepaid Interest liability.

11.3.3. All agreements between USACM or Trust and Lenders regarding Prepaid Interest.

11.3.4. All amounts collected and applied against the Prepaid Interest liability for the Marquis Hotel loan.

12. *Trust's Closing Deliveries*. At Closing, Trust shall deliver to DACA:

12.1. A duly executed bill of sale (the "Bill of Sale") in the form



attached hereto as Exhibit B, pursuant to which Trust shall transfer title to the Assets to DACA.

12.2. A stipulation to dismiss the Appeal with prejudice, each party to bear its own costs and attorneys' fees, executed by Trust's counsel of record.

13. *DACA's Closing Deliveries*. At Closing, DACA shall deliver to Trust:

13.1. The Purchase Price in immediately available funds, less any collections of Prepaid Interest after the Effective Date, and less the amount of the Deposit.

13.2. A stipulation to dismiss the Appeal with prejudice, each party to bear its own costs and attorneys' fees, executed by DACA's counsel of record.

14. *Disclaimer of Representations and Warranties*. TRUST MAKES NO REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, REGARDING THE ASSETS TO BE CONVEYED TO DACA PURSUANT TO THIS AGREEMENT. MORE SPECIFICALLY, TRUST MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, CONDITION, DESIGN, OPERATIONS OR FITNESS FOR A PARTICULAR PURPOSE OF THE ASSETS. ALL OF SUCH ASSETS ARE BEING SOLD AND TRANSFERRED ON AN "AS-IS, WHERE-IS" BASIS. DACA HEREBY ACKNOWLEDGES THAT DACA HAS HAD AN ADEQUATE OPPORTUNITY TO INSPECT THE ASSETS AND CONDUCT ANY OTHER INVESTIGATIONS AND INSPECTIONS DEEMED NECESSARY BY DACA IN CONNECTION WITH THE PURCHASE OF THE ASSETS AND THAT DACA ACCEPTS THE ASSETS IN THEIR CURRENT CONDITION WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY TRUST.

15. *Remedies*. The Parties acknowledge and agree that in the event of DACA's breach of this Agreement the resulting damages would be difficult or impossible to determine. The parties agree that the sum of $200,000 (the amount of the Deposit) is a reasonable and good faith estimate of those damages. In the event of DACA's breach of this Agreement, the Deposit may be retained by Trust as liquidated damages. In the event of a breach of this Agreement by Trust, the sole remedy of DACA shall be to obtain a decree of specific performance.

16. *Broker Commissions*. No broker solicited DACA's interest in the Assets, which resulted in this offer. Each party shall indemnify and hold the other harmless from any claim to a commission allegedly due to a broker or third party on account of that party's action.

17. *Confidentiality*. The existence and terms of this Agreement may be



disclosed by any party (i) in connection with the motion to be filed seeking Bankruptcy Court approval, (ii) by Trust to its Oversight Committee, the Office of the United States Trustee, or (iii) in Trust's reporting after a motion to approve this Agreement has been filed with the Bankruptcy Court. Otherwise, except as may be required by legal process, or at the express direction of the Bankruptcy Court, no party shall disclose this Agreement, or any prior Letter of Intent, drafts, offers, counteroffers or negotiations, to any third party, other than their respective financial, legal, and other professional advisors and their members, limited partners or other related persons, without the prior written consent of the other parties except as may be required by applicable law.

18. *Exclusivity.* Until the earlier of (a) the expiration of this Agreement pursuant to its terms or (b) the Closing, neither Trust nor any of its affiliates, employees, agents, attorneys, financial advisors, or other representatives will, directly or indirectly, (i) solicit any inquiries, discussions, or proposals regarding, (ii) continue, propose or enter into negotiations or discussions with respect to, or (iii) enter into any agreement or other understanding providing for, any Alternative Transaction. The term "Alternative Transaction" means any (A) direct or indirect acquisition or purchase or any of the Assets or (B) other transaction which would reasonably be expected to impede, interfere with, prevent or materially delay the Transaction. Trust agrees that irreparable damage to the DACA would occur in the event that the provisions of this Section 18 were not performed in accordance with their specific terms or otherwise were breached. Accordingly, Trust agrees that DACA shall be entitled to equitable relief to enjoin and prevent breaches of such provisions and to specifically enforce terms of such provisions without posting any bond or other security.

19. *Miscellaneous.*

19.1. *Entire Agreement.* This Agreement (including all exhibits and schedules hereto) contains the entire agreement between the parties with respect to the transactions contemplated hereby, and supersedes all written or oral negotiations, representations, warranties, commitments, offers, bids, bid solicitations and other understandings prior to the Effective Date.

19.2. *Severability.* If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction or as a result of future legislative action, such holding or action shall be strictly construed and shall not affect the validity or effect of any other provision hereof.

19.3. *Assignment.* This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto; provided, that, except as otherwise provided for herein, neither this Agreement nor any right hereunder shall be assignable by Trust or DACA, without prior written consent of the other party, which

may be withheld at either parties' sole and absolute discretion.

19.4. *Captions*. The captions of the various sections of this Agreement have been inserted only for convenience of reference, and shall not be deemed to modify, explain, enlarge or restrict any provision of this Agreement or affect the construction hereof.

19.5. *Governing Law*. The validity, interpretation and effect of this Agreement shall be governed by the laws of the State of Nevada, without giving effect to the conflict of laws provisions thereof.

19.6. *Counterparts*. This Agreement may be executed in two or more faxed or emailed counterparts, all of which taken together shall constitute a single agreement.

19.7. *Notices*. All notices that are required or permitted to be given under this Agreement shall be given in writing by U.S. Certified Mail, e-mail or facsimile to Trust or DACA at its address or facsimile number set forth below:

Trust:

Geoffrey L. Berman
Development Specialists, Inc.
333 South Grand Avenue, Suite 4070
Los Angeles, CA 90071-1544
Email: gberman@dsi.biz
Fax Number: (213) 617-2718

With a copy to:

Rob Charles
Lewis and Roca LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Email: rcharles@lrlaw.com
Fax Number: (702) 949-8321

DACA:

Howard J. Justus
Debt Acquisition Company of America V, LLC
1565 Hotel Circle South, Suite 310
San Diego, CA 92108
Email: hjustus@daca4.com
Fax Number: (619) 220-8112

With a copy to:

Dean T. Kirby, Jr.
Kirby & McGuinn, A.P.C.
707 Broadway, Suite 1750
San Diego, California 92101
Email: dkirby@kirbymac.com
Fax Number: 619.525.1651



Notices shall be effective when received by the recipient. A party may change its notice information by written notice.

Entered into as of the date set forth above.

**USACM Liquidating Trust**

By ______________________________
Geoffrey L. Berman, Trustee

**Debt Acquisition Company of America V, LLC**

By ______________________________
Howard J. Justus, Managing Member

Notices shall be effective when received by the recipient. A party may change its notice information by written notice.

Entered into as of the date set forth above.

**USACM Liquidating Trust**

By Geoffrey L. Berman
Geoffrey L. Berman, Trustee

**Debt Acquisition Company of America V, LLC**

By ___________________________________
Howard J. Justus, Managing Member