ORIGINAL

1   Carol Mortensen, Pro Per

2   Carol Mortensen Family Trust

3   4847 Damon Circle

4   Salt Lake City, UT  84117

5   Email: cmort5@gmail.com

6   (801) 277-3752

7

8            **UNITED STATES BANKRUPTCY COURT**

9                    **DISTRICT OF NEVADA**

10

11

| | |
|---|---|
| In Re: | Case No.  BK S -  06 -10725 - LBR |
| USA Commercial Mortgage Company | Case No.  BK S - 06 - 10726 - LBR |
| | Case No.  BK S - 06 - 10727 - LBR |
| | Case No.  BK S - 06 - 10728 - LBR |
| | Case No.  BK S - 06 - 10729 - LBR |

17                    **Opposition to Motion to Approve**

18                    **Settlement With   Debt Acquisition**

19                    **Company of America V, LLC**

20            Date:         February 20, 2009

21            Time:         9:30 a.m.

22            Place:        Foley Federal Bldg  Ctrm 1

23                          300 Las Vegas Blvd South

24                          Las Vegas, NV

1

1    Carol Mortensen, (pro per) Unsecured Creditor of the USA Liquidating Trust, moves this

2    Court for an order denying Motion to Approve Settlement with Debt Acquisition Company of

3    America V, LLC (the "Motion") filed as Docket # 6770 on January 27, 2009.  Movant received

4    no notice by the Bankruptcy Court or the Trust and only learned of this Motion through other

5    sources.

6                                    **FACTUAL BACKGROUND**

7        Debtor USACM filed Chapter 11 on April 13, 2006.  This Court entered a Confirmation

8    Order on January 8, 2007.  The Movant defers to the Points and Authorities, Factual Background

9    Sections 1-9, 11,14, contained in the Motion, (p.2-4). Curiously absent from the Trust's factual

10   background is that the $7.2 Million in outstanding prepaid interest will be used to satisfy the

11   Proof of Claims for the unsecured creditors (who have received no distributions now for 2 years).

12   A majority of the Trust's Proof of Claims belongs to the Direct Lenders who were victims of

13   diversion(s) of their principal.   It should also be noted that many Direct Lenders from whom

14   principal was stolen wore "two hats" in the Bankruptcy:  (1) Direct Lenders with outstanding

15   loan balances were called Direct Lenders;  (2) Direct Lenders from whom principal was stolen

16   were (also) called Unsecured Creditors.   The Trust has a duty to protect the property rights of

17   the Unsecured Creditors and particularly to prevent bankruptcy fraud.

18       The primary source to return the stolen and converted principal was through the Trust's

19   discharging its duty to collect prepaid interest, which has an estimated balance to date of about

20   $7.2 Million (comprised of $2.4+ Million from the Placer 1 and 2 loans formerly serviced by the

21   Trust and $4.7+ Million being serviced by Compass/Silar). The Trust now seeks to approve a

22   settlement with Debt Acquisition Company of America, LLC ("DACA") pursuant to the Trust's

23   Motion To Approve Settlement With Debt Acquisition Company of America V, LLC ("the

1    Motion"). The pretext for seeking approval of the settlement is to gain immediate cash for the

2    Liquidating Trust and settle the DACA appeal. Both proffer justifications are disingenuous. The

3    Trust's willingness to accept 17 cents on dollars appears to be an attempt to defraud the

4    unsecured creditors who are waiting to receive a return of their stolen and converted principal

5    from the Liquidating Trust.

6

7    **THERE IS NO NEED FOR THE LIQUIDATING TRUST TO SETTLE WITH DACA.**

8    The Trust alleges that this Court should allow it to liquidate some $7.2 Million in assets to

9    DACA for a mere $1.2 Million dollars to settle an appeal, that the Trust has admitted is moot and

10   is of no consequence or importance to the Trust. On January 20, 2009, Rob Charles, on behalf of

11   the USACM Liquidating Trust, appeared before the Federal District Court ( Case # 2:07 - CV –

12   892 – RCJ - GWF) to inform the Court that there was one pending appeal issue regarding the

13   confirmation plan and stated: *"as you can imagine given that we're now almost two years from*

14   *the effective date of the plan (it)* ***is as moot as an appeal could be.***" (See January 20, 2009

15   transcript p. 76, lns 2-4) Further, the Motion states: *"This settlement resolves contentious*

16   *litigation which, if DACA is successful, would involve the reversal of certain provisions of the*

17   *Confirmation Order which affect the* ***Direct Lenders***." (The Motion p 8, lns. 8-9) The Trust only

18   represents unsecured creditors, including Direct Lenders. Further, the Motion states "*Dismissal*

19   *of the Appeal removes legal uncertainty that could affect proceedings in the District Court*

20   *involving the* ***Direct Lenders*** *and the successors in interest to Compass.*" (The Motion p 6, lns.

21   24-26). The Trust has no interest in the District Court action[1], nor does it owe a duty to Direct

---

[1] on January 20, 2009, Judge Jones stated (p16 lines 25) "Compass is no longer here. Compass is defaulting." Therefore, any pending adversary issues sought by Compass in the Bankruptcy Court are void

1  Lenders as a class or to Compass and it's successors.   The motion  conflates Unsecured

2  Creditors (including some Direct Lenders) with the class of Direct Lenders only.

3      The Trust provides no explanation how the outstanding appeal  financially or legally impacts

4  the  Trust or the Unsecured Creditors whose interest it the Trust has a duty to protect.   Instead,

5  the  Trust seeks this Court's  approval to sell $7.2 Million in assets for 17 cents on a dollar, while

6  depriving the beneficiaries of  the right to collect  up to $6 Million more.

7

8      **THE SETTLEMENT AND ASSET PURCHASE AGREEMENT  DOES NOT MEET**

9          **ANY OF THE FOUR STANDARDS SET FORTH IN THE MOTION**

10      Based on the standards set forth in the Motion, (p.7, lns. 12- 16), this Court must deny this

11  Settlement and the attached DACA Asset Purchase Agreement (herein referred to as

12  Settlement/Sale);  Settlement/Sale approval in this instance is not an appropriate exercise of

13  discretion because the Settlement/Sale is not in the best interests of the estate and the

14  beneficiaries of the Trust.  Interestingly,  the Trust cites  but fails to analyze any of the four

15  factors  in their Motion from *In re Flight Transp. Corp. Sec. Litig.,* 730, F.2d 1128, 1135 (8th Cir.

16  1984). The Trust fails to analyze and explain how any of the four factors are met. That is because

17  in this anticipated Settlement/Sale none of the four factors can be met and any attempt at an

18  analysis favoring this Settlement/Sale would fail miserably.

19      The first factor requires: ***"(a) possibility of success in the litigation."***  In this case, the

20  DACA Appeal, by the Trust's own admission, is moot and has virtually no chance of success.

21  Even if the Appeal did succeed, it has absolutely no impact on the Trust.  That is because the

22  sole issue on appeal concerns the order in which Compass may collect its fees (AKA, the

23  Waterfall issue).  Rulings on this issue would only impact those matters pending in District Court

4

1   and have no effect on the Liquidating Trust.   Prepaid Interest has already been determined to be

2   a priority payment  by the Confirmation Order and is not subject to dispute.

3        The next factor requires the Court to consider: ***"(b) difficulties, if any, to be encountered in***

4   ***the matter of collection."*** This motion also fails this test because a substantial portion of the

5   "Prepaid Interest" **has already been collected** by DACA,  Silar/Compass and Pathfinder and **has**

6   **not been remitted** to the Trust.    These entities have already collected what is believed to be in

7   excess of $1.5 Million.

8        This Court will recall that DACA attempted to step into Compass' servicing shoes on a loan

9   called Fiesta Oak Valley, claiming they had bought or acquired sufficient interest or direct lender

10  permission to service that loan.  Even though DACA's attempt to acquire the servicing failed,

11  when DACA acquired interests of beneficial holders for that and other notes, DACA withheld

12  from their purchase price, **100 per cent** of each Direct Lender's outstanding prepaid interest

13  balance.  Upon information and belief, DACA never remitted that money (approximately

14  $800,000) to the Trust.   Attached hereto and incorporated as reference  is a declaration from

15  direct lender Don Hess verifying that DACA collected  his 100% of his prepaid interest in his

16  Fiesta Oak Valley sale and as of this date, has not remitted this money to the Trust.  DACA  will

17  now use Mr. Hess' and other Direct Lenders money as an offset against their $1.2 Million

18  purchase price, when this money should have been turned over to the Trust months or years ago,

19  when collected.

20       Similarly, Direct Lenders who sold their loan interest to Pathfinder had **100 per cent** of

21  their prepaid interest deducted from their payments by Pathfinder, which upon information and

22  belief, also has not been remitted to the Trust.  This balance is believed to be approximately

23  $150,000 or more.

5

1    Similarly, Compass/Silar withheld **100 per cent** prepaid interest from Direct Lenders when

2    they acquired for themselves, sufficient beneficial  interest in the Fiesta Oak Valley loan to

3    overcome DACA's 51% majority beneficial interest necessary to acquire the loan servicing

4    rights. Compass/Silar also withheld **100 per cent** of the prepaid interest on the collection of

5    several other loans they have settled.   This amount is believed to exceed $600,000.

6    The amounts currently being held by DACA/Compass/Silar/Pathfinder are estimated to be in

7    excess of **$1.5 million**  which exceeds the $1.2 Million sales price by more than $300,000!   The

8    remaining prepaid interest portion will be collected upon loan resolution.

9    The motion states: "*the Court is obligated to canvass the issues and see whether the*

10   *settlement falls below the lowest point in the range of reasonableness.*"  (motion, p. 8 lns 1,2)

11   This Settlement/Sale falls far below the lowest point in the range of reasonableness and is in fact

12   ridiculous.  DACA/Silar/Compass/Pathfinder  collected at least $1.5 Million and have failed to

13   remit that amount to the Trust to date.   Thus, this Court's approval of this absurd Settlement/Sale

14   proposal will have the effect of giving away the remaining uncollected prepaid interest and

15   handing DACA $300,000  in cash to the detriment of the unsecured creditors.

16   It is unclear why Rob Charles, attorney for the Liquidating Trust, has failed to take

17   appropriate steps to collect from DACA/Compass/Silar/Pathfinder the prepaid interest those

18   entities have collected but failed to remit to the Trust.  It appears that the Trust has filed no

19   motion for contempt or other demands for this Court's assistance to collect  this money.  Rather

20   than approving this Settlement/Sale, this Court should enforce its Confirmation Order and

21   compel  a full accounting and remittance of the money each of these entities have collected on

22   behalf of the Trust.

1    Factor three requires the Court to evaluate: *"(c) the complexity of the litigation involved,*

2    *and the expense, inconvenience and delay necessarily attending it."* In this case, the Trust can

3    and should take appropriate steps to collect over $1.5 Million from

4    DACA/Compass/Silar/Pathfinder today.   That amount alone exceeds by $300,000  the paltry

5    amount that DACA would pay for this valuable asset.  The Trust can then  quickly collect much

6    of the prepaid interest by making a discounted offer to those Direct Lenders.  Offering a discount

7    to the Direct Lenders, even higher than the $.17 on a dollar, will provide a huge incentive for

8    Direct Lenders to immediately pay off their debt.  This plan for maximizing the receivable for

9    the Trust also makes litigation against the parties owing such prepaid interest largely

10    unnecessary.  However, it is in the Unsecured Creditors' best interest to pursue any Direct

11    Lender owing over $200,000 in prepaid interest after March 12, 2009 as DACA surely will.

12    Moreover the right to collect any remaining unsettled balance can be sold via auction, or

13    collected at  100%  when any of the Direct Lender loans are settled, thereby maximizing the

14    value of this receivable.    It is disingenuous for the Trust to insert in its Motion that it is possible

15    that limitations might expire as to a portion of these claims shortly after March 12, 2009.

16    Obviously, DACA would not be interested in buying any claims on which it could not pursue

17    collections.  The Trust is fully aware that all it has to do to insure its collection is enforce the

18    Confirmation Order and wait until loans settle for the remaining portion.

19    It is appalling in light of the available options that the Trust is willing to pay DACA

20    $300,000 to take this  $7.2 Million asset.

21    The fourth factor weighs heavily against this Court accepting the settlement as fair and

22    reasonable: *"(d) the paramount interest of the creditors (those unsecured creditors entitled to*

23    *receive as much of their stolen principal as can be recovered) and a proper deference to their*

7

1   *reasonable views in the premises.*" Movant, as Unsecured Creditor, finds this maneuver by

2   DACA and the Trust outrageous and offensive. The fact that DACA would be given the

3   opportunity to essentially pay nothing for this asset, be given $300,000 or more in cash, and be

4   given the opportunity for a $6 Million windfall, while the aggrieved parties (the Direct Lenders

5   with stolen principal) will likely get nothing is contemptible.   The number of vultures picking

6   over the Direct Lender carcasses with court approval while lining their pockets with direct

7   lender assets in this USACM bankruptcy is disgusting and should no longer be tolerated,

8   especially by this Court.

9                                          **SUMMARY**

10          This Court should deny this motion and deny this Settlement/Sale proposal.

11  Characterizing the sale of the prepaid interest asset as a settlement is a sham because the pending

12  appeal is moot and represents no threat to the Trust or its Unsecured Creditors.

13  The Settlement/Sale is unreasonable. It fails to maximize the value of the prepaid interest asset.

14  The sale price is at least $300,000 less than the prepaid interest already collected yet unremitted

15  to the Trust; is unfair to the Direct Lenders who have paid their prepaid interest to DACA – it is

16  their money that is being used by DACA to acquire the right to collect up to $6 Million from

17  this Settlement/Sale; and it is unfair to the Direct Lenders who owe outstanding prepaid interest

18  as they are not being offered a discount to settle their debt.

19          Further, the Court should immediately compel a complete accounting and enforce its

20  Confirmation Order by demanding remittance of the collected prepaid interest by

21  DACA/Compass/Silar and Pathfinder.

22  Dated: February 12, 2009

1    Carol Mortensen

2    Pro Per

3

4    By: _____

5

6    This Opposition is filed according to Local Rules 9014(d) (1).   According to the instruction in

7    Docket # 6771, this Response/Opposition is required to be served on the person who notified me

8    of the Motion.   While I was not notified of the Motion,  I have served this Opposition by US

9    Mail or Email on this date to the Parties of Interest below.  All other parties of interest shall be

10   notified via Pacer.

11

12   _____               _____

13        Carol  Mortensen                               February 13, 2009

14

15   Lewis and Roca, Rob Charles:  rcharles@lrlaw.com

16   Jones Vargas, Janet Chubb:  tbw@jonesvargas.com

17

9

**DECLARATION of Donald Hess**                    Wednesday, February 11th, 2009

I hereby declare pursuant to 28 USC Section 1746 that the following is true and
correct, to the best of my knowledge and belief:

My name is Donald L. Hess.

I am more than 18 years old, and fully able and willing to testify if called to do so.

I swear, under penalty of perjury, that the following statements are true.

I am a Direct Lender in the USACM portfolio.   At the time of the bankruptcy
confirmation, I owed the USACM "Liquidation Trust" $8215.28 in "prepaid" interest, as
indicated in a statement from Compass Partners, dated August 1st, 2008.

On or about September 23rd, 2008, I sold my $50,000 interest, jointly held with rights of
survivorship with my deceased partner Kay J. Hart, in the loan Fiesta Oak Valley, to
Debt Acquisition Corp of America (DACA) for $35000, or $.70 on the dollar.

From my total payment for my interest, DACA deducted $8215.00. My understanding is
that they were collecting that sum on behalf of the Liquidation Trust. On September 30th,
2008, I received two checks; one for $24,285.00 and one for $2500.00, totaling
$26,785.00

Today, February 11th, 2009, Geoff Berman, Trustee of the Liquidation Trust, sent me an
e-mail telling me I still owe $ 8215.28; a true and correct copy is hereby attached.

I have to conclude that DACA has failed, in the intervening four months, to remit the
prepaid interest they collected from me to the Liquidating Trust .

Further, I am OUTRAGED that the Court would consider permitting DACA to use the
prepaid interest they collected from ME at 100%, and WITHELD from the Liquidating
Trust, as payment at 17 cents on the dollar for assets they intend to purchase through
the Asset Purchase Agreement they have set before the court as a Motion.

Donald L. Hess

RE: Balance of "Pre-paid" interest.
From: **Geoffrey Berman** (gberman@dsi.biz)
Sent: Wed 2/11/09 4:29 PM
To: Don Hess (dhmarina@msn.com)

Mr. Hess:

I am showing the unpaid "prepaid interest" as being $8,215.28.  Please let me know if you need anything else.

Geoff Berman


**From:** Don Hess [mailto:dhmarina@msn.com]
**Sent:** Tuesday, February 10, 2009 9:21 AM
**To:** Geoffrey Berman
**Subject:** Balance of "Pre-paid" interest.


Geoff,

Per my phone message to you Tuesday Feb.10th, I need a figure for the amount of "pre-paid" interest I still owe the estate.
Would you mind forwarding that figure to me by e-mail ASAP.

Many thanks,

Don Hess, lender

Fox Hills 216
Fiesta Oak Valley
Charlevoix Homes


Windows Live™: E-mail. Chat. Share. Get more ways to connect. Check it out.

DEBT ACQUISITION COMPANY OF AMERICA V, LLC                                    50342
1565 Hotel Circle South, #310
San Diego, California 92108
Telephone (800) 400-5033

IN RE: USA - Fiesta Oak Mesa
CASE NO:

Donald L. Hess,
ATTN:                                        $24,285.00
1818 Marina Drive
The Villages, FL 32159


This check, in the amount of $24,285.00, represents the settlement payment for the purchase of your claim in the above referred to
bankruptcy case. The individual named above approved this settlement on your company's behalf.

We appreciate being of assistance in helping you liquidate your receivable in this particular bankruptcy case. If you have other
receivables held against other entities that are also in bankruptcy, please do not hesitate to contact our office to discuss the
possible sale of these receivables.

Visit our website at: www.daca4.com


DEBT ACQUISITION COMPANY OF AMERICA V, L.L.C.

                                                                             18865

093008                          9/30/08        2,500.00                      2,500.00




9/30/08        18865        DONALD L HESS                                  $2,500.00

# COMPASS

P-5016
Donald Hess
1818 Madero Drive
The Villages, FL 32159

## Investor Remittance Statement
### For the period 7/1/2008 through 8/1/2008

8/1/2008

| Loan Name Loan ID | —Beginning— Principal Bal Net Int Bal | Svc Fee Rate Net Rate | Int Accrued This Period | Principal Paid Interest Paid | —Ending— Principal Bal Net Int Bal | Subtotal of Prin & Int | Servicer Advances | Prepaid Interest | Total Prin & Int |
|---|---|---|---|---|---|---|---|---|---|
| Fiesta Oak Valley L-195 | $50,000.00 $24,715.65 | 3.00000% 10.00000% | $688.10 | $0.00 $0.00 | $50,000.00 $25,403.75 | $75,403.75 | $355.32 | $8,215.28 | $66,833.15 |

This statement is provided for informational purposes only and is intended for the sole benefit of the named vested party.
This statement is not intended to represent a loan payoff quote. Compass reserves the right to update and supplement this statement.