**LEWIS AND ROCA LLP LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Susan M. Freeman AZ State Bar No. 004199
Email: sfreeman@lrlaw.com
Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 2/19/09

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,[1]<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,[2]<br><br>USA SECURITIES, LLC,[3]<br>                                                Debtors. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**Reply in Support of Motion To Approve Settlement With Debt Acquisition Company Of America V, LLC**<br><br>Date:     February 20, 2009<br>Time:    9:30 a.m.<br>Place:   Foley Federal Building, 300 Las Vegas Boulevard South, Courtroom 1, Las Vegas, Nevada |
| **Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | |

## Introduction

The USACM Liquidating Trust (the "Trust") hereby responds to the filed responses and objections to its Motion to Approve Settlement With Debt Acquisition Company of America V, LLC [DE 6770] (the "Motion").

---

[1] This bankruptcy case was closed on September 23, 2008.

[2] This bankruptcy case was closed on October 12, 2007.

[3] This bankruptcy case was closed on December 21, 2007.

251681.1

LEWIS
AND
ROCA
—LLP—
LAWYERS

Peggy N. Valley and Jay C. McLoughlin objected in a letter to the Court dated February 7, 2009 [DE 6793] without explanation.

USA Commercial Mortgage Company ("USACM"), in dissolution, filed a statement [DE 6815] indicating it does not object to the motion.

Curtis F. Clark [DE 6813] sent the Court a letter that purports to object to the Motion but appears in reality to be a hate-filled screed that should be ignored, if not stricken.

An objection to the Motion by Carol Mortensen [6818], and joinders[4] were filed by the Clerk. The Court will note that the "joinders" appear to have been generated via a public relations campaign to which the Trust is not a party. Each of the joinders appears to be in substantially similar form, and, in fact, the form nature of the joinder is reflected in the filing submitted on behalf of Connie Westbrook, who did not replace the place holder information at the top of the document with her typed in information, but rather handwrote the paper onto the form. Although the form implies that it was served on the undersigned by email, in fact, the papers were transmitted by the law office of Lisa Rasmussen, who represents Ms. Mortensen and several of the other objectors in the district court (as well as Donna Cangelosi).[5] Nor did Ms. Mortensen, the ostensible author of the objection, contact the Trust to suggest her concerns.

---

[4] Janice A. Lucas [DE 6819], Connie Westbrook [DE 6820], Kenneth E. Zawacki [DE 6821], Edward Schoonover [DE 6822], William R. Moreno [DE 6823], James W. McCollum [DE 6824], Arthur I. Kriss, Sr. [DE 6825], Daniel D. Newman [DE 6826], Donald L. Hess et al [DE 6827], and Tariq Chaudhry [DE6828].

[5] Notice of Appearance by attorney Lisa A Rasmussen on behalf of Counter Defendants Christina Knoles, Arthur Kriss, Charles Maraden, Daniel Newman, Respondents Carol Mortensen Family Trust dated May 9, 1990, KM Financials, LLC, a Utah corporation, *In re USA Commercial Mortgage Company*, 2:07-cv-00892-RCJ-GWF, DE 778, filed 1/15/2009; Notice of Appearance by attorney Lisa A Rasmussen on behalf of Counter Defendants Donna M. Cangelosi, Tito Castillo, Jonathan Eller, Robin Graham, Don Hess, Joe Lafayette, Janice Lucas, Carol Simon, Lawrence Tengan, Connie Westbrook, Ken Zawacki, Shoonover and Chaudhry, *In re USA Commercial Mortgage Company*, 2:07-cv-00892-RCJ-GWF, DE 778, filed 2/9/2009. The Trust asks the Court to take judicial notice of the filings in the District Court action.

251681.1

As best we can understand them, the objectors raise five issues. In response, the Trust would point out:

- The Motion was properly noticed.
- Dismissal of DACA's appeal of the Confirmation Order is a good thing.
- There are no easy sources of collection of Prepaid Interest.
- The prospects of collecting Prepaid Interest by netting are dim given delays in loan collection and the prospects of foreclosure rather than payment.
- The prospects of collecting Prepaid Interest by suing hundreds of Direct Lenders are dim in light of the expense, litigation risk, uncertainties of collection (and such a strategy would be anathema to the Lender community).

## Discussion

**1.    The Motion Was Properly Noticed.**

With respect to notice, notice of the hearing on the Motion was served on the post-confirmation service list as provided for in the confirmed plan of reorganization,[6] as well as upon each of the Direct Lenders that owes uncollected Prepaid Interest.[7] Nothing in the plan of reorganization, the confirmation order, the Bankruptcy Code or Rules requires service of notice of the Motion on unsecured creditors or parties in interest, although any person who is an electronic filer in the case would have received notification via ECF. Further, because the Trust makes every effort to keep creditors informed, the Motion and notice of hearing were posted on the free, public USACM Liquidating Trust website.

**2.    Dismissal Of DACA's Appeal Of The Confirmation Order Is A Good Thing;**

Ms. Mortensen asserts that the Trust, and by extension unsecured creditors, receive no benefit from dismissal of the DACA appeal of the confirmation order pending in the

---

[6] See Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization, § VIII.T.
[7] See Certificate of Service and exhibits, DE 6780, 6781.



Ninth Circuit. While it is true that the undersigned's opinion is that DACA's appeal is moot, and the briefs presented by the Trust say so, there is no guarantee that the appellate court will agree. Further, there would be some expense associated with participation in an oral argument before the Ninth Circuit, and unfortunately counsel for USACM in dissolution believes that they too must prepare for and attend the oral argument in San Francisco. So, resolving the appeal by dismissal removes potential legal issues (an order reversing the Confirmation Order would be a legal and practical nightmare), and saves perhaps tens of thousands of dollars of unnecessary legal expense. If DACA were to seek reconsideration of an adverse ruling by the Ninth Circuit *en banc* or by the United States Supreme Court on a writ of certiorari, the expense would be even greater.

**3.    There Are No Easy Sources Of Collection Of Prepaid Interest.**

As the Court is aware, there can be no dispute that Trust is entitled to obtain recouped Prepaid Interest from servicers of the USACM serviced Loans. When the servicing rights were sold to Compass, and the Plan became effective in March 2007, the Court likely anticipated (as did the Trust), that Compass would collect Loans and remit Prepaid Interest. Instead, and unfortunately from the perspective of everyone concerned, Compass accomplished little by way of loan collections. By way of explanation, the Court and creditors may be interested to read the analysis and report by Tom Grimmett, receiver, filed in the United States District Court for the District of Nevada, *In re USA Commercial Mortgage Company*, Case No. 2:07-CV-892-RCJ-GWF-BASE on November 14, 2009 at Docket 765. Whatever the cause, Compass did accomplish some loan collections and netted Prepaid Interest in March and April, 2007, and April 2008, as summarized on **Exhibit A** attached and incorporated here. The Trust received information from Silar concerning Compass' loan collection activities, and prepared the summary attached as **Exhibit A.** Based upon that data, the Trust can report to the Court that Compass netted approximately $572,640 in Prepaid Interest which was paid to the Trust.

251681.1



The Trust believes that Compass failed to net $65,233.70 from Lenders on the Shamrock Loan, and instead paid the Lenders.

The Trust netted $1,072,181.52 from the collection of the Hotel Marquis Loan.

There is approximately $2,441,506 in uncollected Prepaid Interest associated with the Placer 1 and 2 Loans serviced by the Trust, and $4,784,161.16 in Loans originally to be serviced by Compass.

Certain Lenders have asked whether the Trust believes Compass or Silar withheld Prepaid Interest from Lenders, and failed to remit it to the Trust.  The Trust has no proof of such withholding.

Ms. Mortensen suggests DACA has Prepaid Interest it is ready to pay to the Trust. DACA advises the Trust that in purchasing some Lender interests, a portion of the purchase price paid by DACA for those interests was set aside in an escrow because of the possibility that Prepaid Interest would be netted on a Lender-by-Lender basis rather than a Loan-by-Loan basis.  Under the escrow agreement, if Prepaid Interest was withheld by the servicer from payments otherwise due to DACA as assignee, then DACA would be entitled to the escrowed funds.  If the prepaid interest was withheld in relation to other Loans, or if the Lender was otherwise required to pay the Prepaid Interest, the Lender would be entitled to receive the escrowed funds.

The amount of uncollected Prepaid Interest on Loans purchased by DACA, according to the Trust's records, is $381,646.08.  Neither DACA, as assignee of Lenders, nor any Lender with uncollected Prepaid Interest, has agreed to pay a cent to the Trust. Without the affected Lenders' consent, DACA could not voluntarily pay the Trust (or DACA) out of the escrows.  To recover Prepaid Interest, the Trust's practical collection alternatives are netting from loan collections or suit, as discussed below.  There is simply no pot of DACA money available to the Trust without netting or suit.

251681.1

Ms. Mortensen further alleges that Pathfinder bought loans, as did Compass/Silar, and withheld Prepaid Interest from Lenders. These are unsupported assertions outside the knowledge of the Trust, and, in any event, are not funds available to the Trust absent netting or suit.

With respect to Lenders' willingness to voluntarily pay Prepaid Interest to the Trust, one wonders whether the objectors owe such. Donald Hess and another jointly owe a material sum, but do not offer payment in their joinder. Ms. Rasmussen's clients Maraden and Eller, owe material amounts of Prepaid Interest, but did not join in the objection.

**4. The Prospects Of Collecting Prepaid Interest By Netting Are Dim Given Delays In Loan Collection And The Prospects Of Foreclosure Rather Than Payment.**

The Mortensen response acknowledges that the Trust may wait for Loan collections to recover Prepaid Interest. Recovery by netting will take an unknown amount of time and is by no means certain.

As Exhibit A to this response indicates, $2.4 million of the uncollected Prepaid Interest relates to the Placer 1 and 2 Loans. The Placer 1 lien was foreclosed on December 22, 2008 by Elli M.A. Mills as receiver. The Placer 2 loan was extinguished by foreclosure of the Placer 1 Loan.[8] Based upon the fact that the credit bid at foreclosure was $8,404,030, and the Receiver's Report suggests he has only bills and no cash, it appears unlikely that the Receiver will be in a position to sell the Placer Vineyards property and recover cash, or that the Lenders will be sanguine about having millions of dollars taken from the proceeds by netting. Nor is it clear that the netting or recoupment theory of the confirmed Plan is applicable after foreclosure where the Lenders take title to the property as tenants in common.

---

[8] Verified Report Of Elli M.A. Mills, Receiver, Placer Vineyards Land Speculators [February 17, 2009], *USACM Liquidating Trust v. Placer County Land Speculators, LLC* et al, No. 2:08-cv-1276-KJD-RJJ, DE 444.

251681.1

With respect to the Compass-serviced loans, where $4.784 million of Prepaid Interest remains uncollected, and that amount may be greater if the netting was done on a Lender-by-Lender basis, no one reasonably suggests many Loans will be collected any time soon. To the contrary, a casual reading of the District Court docket in the LPG litigation reflects that Judge Jones recently denied a request by the Receiver in that case to approve a settlement that would have provided a path for servicing of the Loans (and payments to Compass/Silar, to which Lenders objected).[9] Since the settlement was not approved, the Receiver has sought to be discharged,[10] Silar has sought[11] and Lenders including Ms. Mortensen and Ms. Rasmussen's other clients oppose intervention by Silar as successor to Compass, parties are rapidly filing motions to intervene and to dismiss; Lenders seek to have the district court's preliminary injunction order entered November 6, 2007 vacated, and the cases generally appear headed for a litigation bloodbath, rather than resolution resulting in efficient loan servicing. So, the Trust has no confidence that netting Prepaid Interest by Loan collections will occur anytime soon, and the positions taken by Lenders, including Ms. Mortensen are delaying collections indefinitely (albeit for perhaps understandable reasons).

To the extent that the servicer on any Loan originally serviced by Compass obtains the underlying collateral by foreclosure, and title is taken either by the Lenders in their own name or through an investment vehicle, the prospects of collecting Prepaid Interest by recoupment or netting become problematic, as explained above.

---

[9] Minute Entry, *In re USA Commercial Mortgage Company*, 2:07-cv-00892-RCJ-GWF, DE 821, filed 2/4/2009.

[10] Emergency Petition for Discharge of Receiver, *In re USA Commercial Mortgage Company*, 2:07-cv-00892-RCJ-GWF, DE 847 filed 2/10/2009.

[11] Emergency Motion of Silar Advisors, LP, Silar Special Opportunities Fund LP and Asset Resolution LLC for Intervention by Asset Resolution LLC, , *In re USA Commercial Mortgage Company*, 2:07-cv-00892-RCJ-GWF, DE 836 filed 2/6/2009.

251681.1

**5.    The Prospects Of Collecting Prepaid Interest By Suing Perhaps 900 Direct Lenders Are Dim In Light Of The Expense, Litigation Risk, Uncertainties Of Collection (And Such A Strategy Would Be Anathema To The Lender Community).**

With respect to litigation, there are more than 900 Lenders owing uncollected Prepaid Interest, in amounts ranging from little or nothing to, in one case, more than $200,000.[12] A redacted list of Prepaid Interest Lenders sorted by Loan, with the Lenders' names redacted but showing the amount owed, is attached and incorporated here as **Exhibit B**, in order to give the Court a sense of the scope of the potential litigation.

The Trust's initial theory for recovery of Prepaid Interest was avoidance of fraudulent transfers under state and federal law. The time to bring such actions was tolled for two years from the Effective Date of the Plan, until March 2009. The Trust could not proceed to suit during the Tolling Period. Upon expiration of the tolling, if one assumes that the Trust would only sue Lenders owing $500 or more in uncollected Prepaid Interest, there are still more than 700 defendants. In evaluating the Trust's litigation alternative, if you assume that the marginal cost of suing 700 defendants in one action and serving each of them is $500 per defendant, the initial administrative expense is $350,000. If you assume that the fraudulent transfer case requires a trial, and that any significant number of defendants are involved, the administrative expense could easily exceed another $250,000. You then need to assess the collection risk for each Lender to predict an outcome for the Trust in litigation.

The Mortensen response asserts that the right to collect Prepaid Interest could be sold at auction. One of the important benefits DACA brings by its contract is its agreement not to sue Lenders for uncollected Prepaid Interest. The importance of this concession to Lenders should not be understated. The Trustee and counsel have spent

---

[12] The Trust believes that only one Lender owes more than $200,000 across its Loans. The other entities that are now shown as owing more than $200,000 are Loan buyers like DACA. Unless the Loan buyer assumed the obligation to repay Prepaid Interest, the litigation likely would have to be prosecuted against the applicable Lenders.

more than two years personally answering every call and communication from Lenders. All are victims of the USACM ponzi scheme. DACA's agreement not to sue anyone other than the less than an handful that owe more than $200,000 in uncollected Prepaid Interest seems a fair tradeoff to reduce anxiety and outrage over the USACM fraud while also saving significant litigation expense.

## Conclusion

The USACM Trust appreciates its obligations to maximize collections for unsecured creditors while minimizing the administrative expense and delay. The Motion meets those obligations. The Trust respectfully submits that the Motion should be granted.

Dated: February 19, 2009.

**LEWIS AND ROCA LLP**

By: /s/ RC (#6593)
Susan M. Freeman, AZ 4199 (*pro hac vice*)
Rob Charles, NV 6593
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320
*Counsel for USACM Liquidating Trust*

251681.1