Jeffrey A. Cogan, Esq.  
Nevada Bar No. 4569  
JEFFREY A. COGAN, ESQ., LTD.  
3990 Vegas Drive  
Las Vegas, Nevada 89108  
TEL: (702) 474-4220  
FAX: (702) 474-4228  
Attorney for Alfred Olsen, Jr.

*E-FILED MARCH 4, 2009*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | CASE NO. BK-S-06-10725 LBR<br>CASE NO. BK-S-06-10725 LBR<br>CASE NO. BK-S-06-10726 LBR<br>CASE NO. BK-S-06-10727 LBR<br>CASE NO. BK-S-06-10728 LBR<br>CASE NO. BK-S-06-10729 LBR |
| In re: USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re: USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re: USA CAPITAL FIRST TRUST DEED FUND, LLC<br><br>Debtor. | **MOTION TO INTERPRET THE USA CAPITAL REORGANIZATION PLAN WITH RESPECT TO PROFESSIONALS LIABILITY** |
| In re: USA SECURITIES, LLC,<br><br>Debtor. | Hearing Date: April 10, 2009<br>Hearing Time: 9:30 a.m. |

Comes now, Alfred Olsen, Jr., by and through his attorney Jeffrey Cogan Esq. and files this Motion to Interpret certain provisions of the USA Capital Plan of Reorganization with respect to the rights of the Creditors to pursue claims against various professionals, and in

/ / /

/ / /

particular, Mesirow Financial Services Inc. ("Mesirow")

DATED this 4th day of March, 2009.

JEFFREY A. COGAN, ESQ., LTD.

By /s/ Jeffrey A. Cogan
Jeffrey A. Cogan, Esq.
Nevada Bar No. 4569
3990 Vegas Drive
Las Vegas, Nevada 89146
Telephone: (702) 474-4220
Facsimile: (702) 474-4228
E-mail: jeffrey@jeffreycogan.com
Attorney for Alfred Olsen, Jr.

## POINTS AND AUTHORITIES

### I.

### STATEMENT OF ISSUE

Alfred Olsen, Jr. is a creditor in the USA Capital Bankruptcy and owns shares in Diversified Trust Deed Fund which currently has an approximate value of $ 186,000.00 excluding accrued interest. Mr. Olsen is seeking an interpretation from the Court on as to the meaning of certain Plan provisions as follows:

(A) Whether the Plan grants professionals employed by the estate, and in particular Mesirow Financial Services LLC, the former Chief Restructuring Officer, has **_absolute immunity_** from law suits filed by creditors of the estate.

(B) Whether the Plan absolutely prohibits law suits against Plan professionals, and in particular Mesirow, by creditors of the estate for negligence or lack of good faith pursuant to the injunction provisions of the Plan.

### II.

### FACTUAL BACKGROUND

On April 13, 2006, the USA Capital companies filed Chapter 11 Petitions in the United States Bankruptcy Court for the District of Nevada. Mesirow was appointed the Chief Restructuring Officer under the Plan, with Thomas Allison serving as its managing member.

The USA Capital bankruptcy was complex and involved thousands of creditors that were defrauded out of their investments by its two owners: Thomas Hantges ("Hantges") and Joseph Milanowski ("Milanowski"). During the bankruptcy, evidence was produced which showed the theft of millions of dollars of investors monies for the personal benefit of Hantges and Milanowski, years before the companies actually filed the bankruptcy. Additionally, USA Capital and its officers were being investigated by the Securities and Exchange Commission for financial improprieties just prior to the bankruptcy filing with sanctions being levied against its CEO, Hantges.

Because Mesirow was retained by USA Capital prior to the filing of the Chapter 11 Petitions, Mesirow presumably knew about the legal problems of USA and past investigations. Additionally, Mesirow had the opportunity to review USA Capital financial records before the bankruptcies were filed and presumably knew that the company was experiencing financial difficulties.

During the time Mesirow served as Chief Restructuring Officer, Mr. Allison, made various representations to the creditors, to wit:

a) That Hantges and Milanowski had *"diverted"* monies (instead of stolen from investors) and that he was *"optimistic that he could recover the principal and interest for the investors"*.

b) That Allison would *"restore the company to financial health, continue operations and bring it out of Chapter 11 bankruptcy as an ongoing concern"*.

c) That notwithstanding the state of Nevada, Department of Business and Industry, Division of Mortgage Lending stating that commingling of fund by USA principals, that *"brought to light some criminal things"*, Allison continued to work with Hantges and Milanowski by arranging a Fifty Eight Million Dollar ($58,000,000.00) loan repayment agreement of funds diverted by Milanowski and Hantges to their solely owned limited liability company, Investment Partners LLC. This loan was never repaid.

Mesirow knew that Hantges and Milanowski owned a company known as Investment

Partners LLC ("IP") and that funds from investors were used to fund approximately Three Hundred Million Dollars ($300,000,000.00) in real estate acquisitions for IP. Mr. Allison did not move to include the IP assets in the bankruptcy estate until Great White Investments forced the issued by filing a Five Million Dollar ($5,000,000.00) Complaint with a *lis pendens* against the Royal Hotel (as asset of IP, a subsidiary Hotel Sales, LLC in the Eight Judicial District Court).

As a result of the aforementioned actions and others, several creditors began questioning whether legal action should be taken against Mesirow for its negligent handling of the bankruptcy estate. Attached as *Exhibit A*, is a letter addressed to Jacques Massa, General Partner of the Jayem Family Limited Partnership dated December 22, 2007 wherein Mr. Massa is advised by the Lewis and Rocca law firm and in particular Rob Charles, Esq. that the Plan provides that Mesirow, Tom Allison and its agents *"would not be liable for their actions during the bankruptcy estate"*. Mr. Charles cited Section VIII.A and Section IV.H of the Plan in advising Mr. Massa that *"The Plan also contained injunctions that prohibit holders of claims against and equity interst in the Debtors from pursuing, among other things, property of the estate, the Debtors or their agents"* and that " *the confirmed plan of reorganization (the "Plan") contains releases in favor of MFIM and those releases were expressly approved by the Bankruptcy Court upon entry of the order confirming the Plan"*.

Section VIII.A 1. of the Plan is attached hereto as *Exhibit "B"* provides that:

> *"except as otherwise expressly provided in the Plan, on and after the Effective Date, none of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor any of their employees, officers, directors, agents, or representatives, nor any Professionals employed by any of them, shall have or incur any liability to any Entity for any authorized act taken or authorized omission made in good faith in connection with or related to the Chapter 11 Cases or the Estates..."*

It would seem under this provision that there is no absolute prohibition against liability for actions taken by professionals, if in fact, it is proven that such actions were not taken in good faith.

Section IV.H of the Plan is attached hereto as *Exhibit "C"*. With respect to the limitation

of liability, said Paragraph IV.H provides that:

> "Holders of an Claims against and Equity interest in the Debtors may not pursue (1) property of the Estate other than through Claims an Equity Interest allowance process; or (2) the Debtors or their agents". . ."Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability or Equity Interest against or in the Debtors that would be discharged upon confirmation of the Plan on the Effective Date but for the provisions of section 114(d)(3) of the Bankruptcy Code shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Equity Interest or right against assets or proceeds thereof that are to be distributed under the Plan, other than to enforce any right to a distribution with respect to such assets or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any assets to be distributed to creditors under the Plan, other than as permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets to be distributed under the Plan, other than as permitted by the Plan, provided that nothing contained herein shall limit the rights of any distributee under the Plan from taking any actions in respect of property distributed or to be distributed to it under the Plan."

## III.

## LEGAL ARGUMENT

Notwithstanding the representations of attorney Rob Charles, Esq. to Jacque Massa in his letter, attached as *Exhibit "A,"* the injunction provisions seem to relate only to assets to be collected and distributed to creditors under the Plan and assets of the estate. Certainly any judgment or award to a creditor under the Plan of a damage claim for negligence against Professionals, as defined in the Plan, would not be not be considered assets to be distributed under the Plan, as contemplated.

When considering the express language of the Plan it seems that there is no absolute liability protection for Professionals, including Mesirow, but that said liability is conditional on a the actions of Professionals being taken in "good faith" (good faith is not defined under the Plan, nor is it defined in the Bankruptcy Code). However, the issue of whether Mesirow acted in good

Page 5 of 7

faith is not dispositive or relevant to decide the instant motion; the issue for this Court to consider is whether any claimants or creditors of the estate have the legal ability to assert a claim against Mesirow based upon an allegation that Mesirow did not act in good faith. Further, if such actions were not taken in good faith, that Mesirow or other professionals could presumably be subject to liability for their actions if they were negligent in the administration of the bankruptcy estate. Section IV H of the Plan regarding injunctions, appears to create some confusion when viewed in light of Paragraph VIII A of the Plan. For instance, if the injunction language is strictly construed, why is it necessary to qualify the provisions of Paragraph VIII A by using the "good faith" standard?

Certainly, it would seem that confusion exists under the terms of the Plan regarding these paragraphs that have been cited by a bankruptcy estate attorney, Mr. Charles, for protecting Mesirow and others from liability. Therefore, we request the court issue an interpretative ruling on these provisions by responding to the following inquiries:

1. Are Professionals as defined in the Plan, absolutely exempt from liability for their actions in administrating the bankruptcy estate as to creditors of the estate?

2. Are all creditor claims against plan professionals barred by the injunction provisions of the Plan as contained in Paragraph IV H ?

This court has retained jurisdiction to consider to hear matters pertaining to matters arising under the Plan pursuant to Paragraph 5 D of the Plan. In light of the fact that Alfred Olsen, Jr. is considering suing Mesirow and perhaps other professionals for negligence, it is necessary that this Honorable Court determine the limitations of such actions or whether such actions are expressly

///
///
///
///
///

prohibited by the Plan so Mr. Olsen and others are assured that there actions do not violate Title 11.

DATED this 4th day of March, 2009.

JEFFREY A. COGAN, ESQ., LTD.

By  /s/ Jeffrey A. Cogan
Jeffrey A. Cogan, Esq.
Nevada Bar No. 4569
3990 Vegas Drive
Las Vegas, Nevada 89146
Telephone: (702) 474-4220
Facsimile: (702) 474-4228
E-mail: jeffrey@jeffreycogan.com
Attorney for Alfred Olsen, Jr.

**EXHIBIT "A"**



**LEWIS AND ROCA LLP — LAWYERS**

Rob Charles
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

Direct Dial: (520) 629-4427
Direct Fax: (520) 879-4705
RCharles@LRLaw.com
Admitted in: Arizona and Nevada

Our File Number: 47419-00001

*Revised 12/22/07*

December 10, 2007

Mr. Jacques Massa
Jayem Family Limited Partnership
Paradise Valley Court
Henderson, Nevada 89052

    Re:    Your letter of December 3, 2007

Dear Mr. Massa:

This letter responds to yours of December 3, 2007.

I am forwarding your letter to Brant Fylling at Sierra Consulting Group, LLC. They are pulling together the documentation backing up the proofs of claim so that we can analyze the claims on a loan-by-loan basis. If your claim arises out of diverted principal, that claim is already set forth in the Debtor's schedules.

Your letter attacks lawyers, Tom Allison and probably me, personally. With respect, I understand that you are angry and what happened to your investments as a result of the conduct of Hantges and Milanowski, which is unconscionable. However, neither this law firm as counsel for the USACM Liquidating Trust, nor Sierra assisting with the claims analysis, will respond to the statements that you make.

I agree with your point that we cannot determine the claims unequivocally until the loans are either paid off or extinguished by other means. That is why we asked Sierra to take all of the proofs of claim and break them out on a loan-by-loan basis. Then, as the loans are collected, or not collected, we know the loss that the investors have suffered, and can make a reasonable recommendation to the Trust as to whether that loss was caused by misconduct for which USA Commercial Mortgage Company is responsible, or other factors, such as market conditions. It is our general view that USACM did not guarantee the loans, but it is also true that USACM through its principals, engaged in misconduct. The Trust will provide the Court with its recommendations on allowance of the claims on a loan-by-loan basis.



LEWIS
AND
ROCA
—LLP—
LAWYERS

Mr. Jacques Massa
December 10, 2007
Page 2

As for the request the Trust sue Mesirow Financial Interim Management or Tom Allison, the Plan of Reorganization provided that Mesirow Interim Financial Management and its agents would not be liable for their actions during the bankruptcy case. The Lenders Protection Group was represented by counsel in connection with the confirmation hearing, and no objection to that provision of the Plan was made on behalf of the Lenders Protection Group. So, no, the Trust is not nor can it sue MFIM or Mr. Allison.

In conclusion, Mr. Fylling will respond to you with respect to the Trust's request for any additional information concerning your claims.

Sincerely,

Rob Charles

RC/bp
Copy: Mr. Geoffrey L. Berman, Trustee
      Mr. Brant Fylling
      Marilyn L. Schoenike
      Jennifer Cook, Esq.
      John Hinderaker, Esq.

230867.1

**EXHIBIT "B"**

Allowed Equity Interest shall be deemed timely made if made within five (5) Business Days of the Disputed Claim or Disputed Equity Interest or any portion thereof becoming an Allowed Claim or Allowed Equity Interest.

## VIII.
## MISCELLANEOUS PROVISIONS

A.   Limitation Of Liability And Releases.

1.   Limitation Of Liability.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, none of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor any of their employees, officers, directors, agents, or representatives, nor any Professionals employed by any of them, shall have or incur any liability to any Entity for any authorized act taken or authorized omission made in good faith in connection with or related to the Chapter 11 Cases or the Estates, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

Consistent with section 1125(e) of the Bankruptcy Code, the Entities that have solicited acceptances or rejections of the Plan and/or that have participated in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

2.   DTDF/FTDF Releases.

As of the Effective Date, in consideration for the obligations, subordination, modifications of rights and accommodations of FTDF, and the FTDF Estate, and except as otherwise expressly provided under the Plan, DTDF, the DTDF Estate and Post-Effective Date DTDF, on their own

**EXHIBIT "C"**

1  issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a
2  right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action,
3  defense, or counterclaim, in the Schedules, the Plan, the Disclosure Statement, or any other
4  document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the
5  Debtors or the Post-Effective Date Entities' rights to commence, prosecute, defend against, settle,
6  and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the
7  Debtors or the Estates has or may have as of the Confirmation Date. The Debtors or the Post-
8  Effective Date Entities may commence, prosecute, defend against, recover on account of, and
9  settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in
10  accordance with what is in the best interests, and for the benefit, of the Debtors or the Post-
11  Effective Date Entities.

12  **H.    Nondischarge Of Debtors And Injunction.**

13  This Plan provides for an injunction of certain actions against the Debtors. Holders
14  of Claims against and Equity Interest in the Debtors may not pursue (1) property of the
15  Estates other than through the Claims and Equity Interests allowance process; or (2) the
16  Debtors or their agents.

17  Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall
18  not discharge Claims against or Equity Interests in the Debtors. However, no holder of a
19  Claim or Equity Interest may receive any payment from or seek recourse against any assets
20  that are distributed or to be distributed under the Plan, except for those assets required to
21  be distributed to such holder as expressly provided for in the Plan. As of the Effective Date,
22  all Entities are precluded from asserting against any assets that are distributed or to be
23  distributed under the Plan any Claims, rights, causes of action, liabilities or interests based
24  upon any act or omission, transaction or other activity of any kind or nature that occurred
25  prior to the Effective Date, other than as expressly provided in the Plan or Confirmation
26  Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or
27  Equity Interest and regardless of whether such an Entity has voted to accept the Plan.
28

1   Except as otherwise provided in the Plan or the Confirmation Order, on and after the
2   Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other
3   liability or Equity Interest against or in the Debtors that would be discharged upon
4   confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of
5   the Bankruptcy Code shall be permanently enjoined from taking any of the following actions
6   on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or
7   continuing in any manner any action or other proceeding on account of such debt, Claim,
8   liability, Equity Interest or right against assets or proceeds thereof that are to be distributed
9   under the Plan, other than to enforce any right to a distribution with respect to such assets
10  or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or
11  recovering in any manner any judgment, award, decree, or order against any assets to be
12  distributed to creditors under the Plan, other than as permitted under subparagraph (A)
13  above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets
14  to be distributed under the Plan, other than as permitted by the Plan, provided that nothing
15  contained herein shall limit the rights of any distributee under the Plan from taking any
16  actions in respect of property distributed or to be distributed to it under the Plan.

## V.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption.

In the Schedule of Executory Contracts and Unexpired Leases Filed and served in accordance with section D of Art. I of the Plan, the Debtors that shall set forth the executory contracts and unexpired leases that are to be assumed or assumed and assigned effective upon the Effective Date, and shall specify the Cure Payment, if any, that the Debtors believe must be tendered on the Effective Date, in order to provide compensation in accordance with section 365(b)(1)(A) and (B) of the Bankruptcy Code.