Annette W. Jarvis, Utah Bar No. 1649
Peggy Hunt (Utah Bar No. 6060)
Steven C. Strong (Utah Bar No. 6340)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        strong.steven@dorsey.com

Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

*Attorneys for USA Commercial Mortgage Company*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **USA COMMERCIAL MORTGAGE COMPANY'S RESPONSE TO MOTION TO INTERPRET THE USA CAPITAL REORGANIZATION PLAN WITH RESPECT TO PROFESSIONAL LIABILITY** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC | |

1  Debtor USA Commercial Mortgage Company ("**USACM**"), by and through its counsel,
2  hereby responds to the "Motion to Interpret the USA Capital Reorganization Plan With Respect to
3  Professionals Liability" (the "**Motion**") filed by Alfred Olsen, Jr. ("**Olsen**").  In the Motion, Olsen
4  states that "the issue for the Court to consider is whether any claimants or creditors of the estate
5  have the legal ability to assert a claim" against "Mesirow Financial Services, Inc."[1] and/or other
6  entities for negligence or lack of good faith.  For the reasons set forth herein, it is respectfully
7  submitted that the Court should enter an Order barring Olsen from bringing any of the alleged
8  claims alluded to in the Motion because the claims are barred and Olsen is barred from bringing
9  them under express and binding provisions of the confirmed plan and final confirmation order.

## BACKGROUND

**The Chapter 11 Cases and Employment of MFIM**

1. On April 13, 2006 (the "**Petition Date**"), USACM, USA Capital Realty, LLC ("**USA Realty**"), USA Capital Diversified Trust Deed Fund, LLC ("**DTDF**"), USA Capital First Trust Deed Fund, LLC, and USA Securities, LLC ("**USA Securities**") (collectively, the "**Debtors**"), each filed a petition under chapter 11 of the Bankruptcy Code, thus commencing the above-captioned cases (the "**Chapter 11 Cases**").

2. According to Olsen, on the Petition Date, Olsen owned membership interests in DTDF.  *See* Motion at 2.

3. Prior to the Petition Date, USACM was managed by Thomas A. Hantges ("**Hantges**"), Joseph D. Milanowski ("**Milanowski**") and Paul S. Hamilton ("**Hamilton**") (either in their own names or through trusts they controlled); and the manager of DTDF was USA Realty. USA Realty, in turn, was owned by USA Investment Partners LLC ("**IP**"), whose sole managing member prior to the Petition Date was Milanowski.  Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Reorganization Dated November 6, 2006" [Docket No. 1798]

---

[1] It is unclear to whom Olsen is referring in his unsupported allegations against "Mesirow Financial Services, Inc." Motion at 2.  The Court approved the employment of Mesirow Financial Interim Management, LLC, which is a wholly owned subsidiary of Mesirow Financial Holdings, Inc.  *See* Declaration of Thomas J. Allison filed on April 14, 2006 [Docket No. 7].

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, Nevada 89146
Tel: (702) 228-7590 · Fax: (702) 892-0122

(the "**Disclosure Statement**") at 23-28.

4. On the Petition Date, just prior to the filing of the petitions, Thomas J. Allison of Mesirow Financial Interim Management, LLC ("**MFIM**") was appointed by the Board of Directors as President, Chief Executive Officer, and Chief Restructuring Officer of USACM, and as the Manager and Chief Restructuring Officer of the other four limited liability company Debtors, including DTDF. Neither Mr. Allison nor MFIM had any role in management of any of the Debtors prior to the Petition Date, and the Debtors' consultation with MFIM prior to the Petition Date was for the purpose of engagement in anticipation of the filing of the Chapter 11 Cases. *See* Declaration of Thomas J. Allison dated April 13, 2006 [Docket No. 7] (the "**Allison Declaration**"). After his Petition Date appointment, Mr. Allison's first act was to terminate the employment of Milanowski and Hantges as the principal officers and management of USACM. Disclosure Statement at 24 & 28. The Debtors, under Mr. Allison's direction, then immediately commenced an intensive review and investigation of the Debtors' books and records. *See* Disclosure Statement at 28-29 & 34-36. This independent postpetition investigation uncovered significant irregularities resulting from the acts and omissions of prepetition management, which are disclosed in the Disclosure Statement and other papers of record in the Chapter 11 Cases. *See* Disclosure Statement at 23-29 & 34-35.

5. MFIM's employment in the Chapter 11 Cases was approved by the Court. *See* Docket Nos. 6 (Motion Seeking Authorization to Employ); Docket Nos. 7 & 957 (Allison Declarations in support of Motion Seeking Authorization to Employ); Docket Nos. 26, 1137 and 1708 (Orders Authorizing Employment); Disclosure Statement at 30. Although notice of the Debtors' motion and all proceedings related to MFIM's employment was given to all parties in interest, including Olsen, Olsen never filed any objection to the Authorization Motion or to the employment of Mr. Allison or MFIM.

**The IP Promissory Note**

6. Under the direction of the new Court-approved postpetition management, the Debtors analyzed and attempted to unravel the problems that existed as a result of the irregular business practices of prepetition management.

7.  As part of this process, the Debtors discovered that USA Investment Partners, LLC ("**IP**"), an entity wholly-owned by Milanowski, Hantges and Hamilton, owed prepetition receivables and debts to USACM, but this debt, in excess of $58 million, had not been formally documented by IP and USACM prior to the Petition Date.  The Debtors, under Mr. Allison's direction and with full knowledge and input from all four of the Committees appointed to represent the various interests in the Chapter 11 Cases, including those of the DTDF investors (collectively, the "**Committees**"), negotiated with IP to obtain an acknowledgment of this debt.  Based on those negotiations, IP executed a promissory note to USACM in May 2006 (the "**IP Promissory Note**") in the principal sum of $58,374,918.81, documenting at least a portion of the existing outstanding receivables and debts owed to USACM.  Significantly, as a result of the postpetition negotiations, IP granted each of the Debtors a security interest in certain of its assets securing the repayment of the IP Promissory Note and other obligations described therein.

8.  This transaction with IP was fully disclosed by the Debtors to the Court and all parties in interest.  *See* Debtors' Motion for Order Approving Agreement With IP [Docket No. 575].  After notice and opportunity to be heard, the Court approved the transaction, finding that it was in the best interest of the Debtors and their estates.  Order Approving Agreement With IP [Docket No. 946] (the "**IP Note Order**").

**The Plan and Final Confirmation Order**

9.  On November 13, 2006, the Court entered an Order approving the Disclosure Statement as containing adequate information in accordance with section 1125(a) of the Bankruptcy Code [Docket No. 1800].

10.  On November 15, 2006, the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization Dated November 15, 2006" was filed (the "**Plan**").  The Plan was the result of extensive negotiations between the Debtors, through its Court-approved postpetition management, and the Committees, and was fully supported by the Committees.

11.  Article VI of the Plan, which governs its implementation, includes the following relevant provision (the "**Injunction**"):

/ / /

**H.    Nondischarge of Debtors and Injunction.**

**This Plan provides for an injunction of certain actions against the Debtors. Holders of Claims against and Equity Interest[s] in the Debtors may not pursue (1) property of the Estates other than through the Claims and Equity Interests allowance process; or (2) the Debtors or their agents.**

**Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity Interests in the Debtors. However, no holder of a Claim or Equity Interest may receive any payment from or seek recourse against any assets that are distributed or to be distributed under the Plan, except for those assets required to be distributed to such holder as expressly provided for in the Plan.  As of the Effective Date, all Entities are precluded from asserting against any assets that are distributed or to be distributed under the Plan any Claims, rights, causes of action, liabilities or interests based upon act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided in the Plan or Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity Interest and regardless of whether such an Entity has voted to accept the Plan.**

**Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability or Equity Interest against or in the Debtors that would be discharged upon confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code shall be permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Equity Interest or right against assets or proceeds thereof that are to be distributed under the Plan, other than to enforce any right to a distribution with respect to such assets or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any assets to be distributed to creditors under the Plan, other than as permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assts to be distributed under the Plan, other than as permitted by the Plan, provided that nothing contained herein shall limit the rights of any distributee under the Plan from taking any actions in respect of property distributed or to be distributed to it under the Plan.**

(bold in the original)

12.    Article VIII, Section A of the Plan, which governs limitations on liability and releases, contains the following relevant provision (the "**Liability Limitation Clause**"):

**1.    Limitation Of Liability.**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, none of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor any of their employees, officers, directors, agents, or

representatives, nor any Professional employed by any of them shall have or incur any liability to any Entity for any authorized act taken or authorized omission made in good faith in connection with or related to the Chapter 11 Cases or the Estates, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

Consistent with section 1125(e) of the Bankruptcy Code, the Entities that have solicited acceptances or rejections of the Plan and/or that have participated in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

13. In soliciting acceptances for and confirmation of the Plan, the Debtors fully disclosed the Injunction and the Liability Limitation Clause, and the binding nature of the Plan, should it be confirmed. *See* Notice of Confirmation Hearing and Related Deadlines and Procedures for Seeking Approval of and Objection to Confirmation of the Debtors' Third Amended Joint Plan of Reorganization (Affects All Debtors") ¶ 13; Disclosure Statement at 15, 74, & 78-79.

14. On January 8, 2007, after proper notice and hearing, the Court entered its "Order Confirming the 'Debtors' Third Amended Joint Chapter 11 Plan of Reorganization,' as Modified Herein" [Docket No. 2376] (the "**Confirmation Order**"), and Findings of Fact and Conclusions of Law in Support of the Confirmation Order [Docket No. 2377] (the "**Findings**").

15. In the Confirmation Order, the Court expressly approves the Injunction and the Liability Limitation Clause. The Injunction is set forth in bold at ¶¶ 50-51 of the Confirmation Order, and ¶ 64 of the Confirmation Order states: "As set forth in Article VIII, Section A. of the Plan, the limitation of liability and release provisions [*i.e.,* the Liability Limitation Clause] shall be effective and binding upon all applicable Persons and entities to the fullest extent provided in the Plan."

16. The Plan is binding upon the holders of Claims against and Equity Interests in the Debtors. Plan, Art. VIII, Sections E and M; Findings at ¶ W; Confirmation Order at ¶ 8.

17. The Confirmation Order is a final order. All three appeals of the Confirmation

1 Order have been dismissed.  *See Debt Acquisition Co. of America V., LLC, v. USA Commercial Mortg. Co.,* Case No. 07-16796 (9th Cir.) (Order Dismissing Appeal, entered March 19, 2009); *Lenders Protection Group v. USA Commercial Mortg. Co.*, Case No. 07-0072 (D. Nev.) (Order Granting Stipulated Dismissal of Appeal, entered July 11, 2007 (D. Ct. Docket No. 98) & Opinion and Order granting Motion to Dismiss Appeal as Moot entered Aug. 29, 2007 (D. Ct. Docket No. 102)); *USA Investment Partners, LLC v. USA Commercial Mortg. Co.,* Case No. 07-00138 (D. Nev.) (Amended Order Dismissing Appeal, entered March 21, 2007 (D. Ct. Docket No. 32)).

18.    No motion pursuant to section 1144 of the Bankruptcy Code was filed before 180 days of the entry of the Confirmation Order.

## DISCUSSION

**A.    Olsen's Alleged Claims Are Barred Under The Plan's Binding Liability Limitation Clause.**

The unfounded claims alleged by Olsen are barred under the express terms of the binding Liability Limitation Clause.  The Plan's Liability Limitation Clause, quoted above, bars claims against, among others, the Debtors, their employees, officers, directors, agents or representatives, and/or Professionals employed by the Debtors and Debtors in Possession.[2]  This Clause is binding on Olsen under section 1141(a)[3] as well as under the terms of the Plan, this Court's Findings and the final Confirmation Order.[4]  Indeed, in the Ninth Circuit, it is well-established that "'[o]nce a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.'"[5]  Thus, parties in interest who do

---

[2] *See* ¶ 12 *supra*.

[3] Section 1141(a) states: "[T]he provisions of a confirmed plan bind . . . any entity acquiring property under the plan, creditor, [or] equity security holder . . . whether or not the claim or interest of such creditor [or] equity security holder . . . is impaired under the plan and whether or not such creditor [or] equity security holder has accepted the plan." 11 U.S.C. § 1141(a).

[4] *See* ¶ 16 *supra*.

[5] *Stratosphere Litigation, L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) (quoting *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995)); *see In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999) (recognizing the finality of confirmation orders); *In the Matter of Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983) (collateral attacks of final confirmation order are prohibited).

1 not wish to grant a release contained in a plan must object to confirmation of the plan, and if they

2 fail to do so and the plan is confirmed, they are bound by that release.[6]

3 Olsen did not object to the Liability Limitation Clause and the Plan was confirmed.

4 Accordingly, he is bound by the Liability Limitation Clause, and under the express terms of the

5 final Confirmation Order, the Debtors are entitled to have the Liability Limitation Clause enforced

6 to "the fullest extent provided in the Plan."[7]

7 Olsen asserts that the Liability Limitation Clause may not apply to bar his alleged claims

8 because MFIM and, possibly some unidentified Professionals, acted negligently and not in good

9 faith.[8] This argument is without merit for three reasons.

10 First, negligence claims are expressly barred under the Liability Limitation Clause.

11 Second, under section 1144 of the Bankruptcy Code, Olsen is barred from asserting a lack

12 of good faith by the Debtors, their postpetition management or their Professionals because he

13 failed to raise it before 180 days after the date of the Confirmation Order.[9]

14 Finally, Olsen's unfounded allegations of lack of good faith are wholly contrary to the

15 record in this case, are made without any supporting evidence, and are barred in any event by the

16 Liability Limitation Clause. Although not clearly articulated, Olsen seems to argue (a) that

17 negligence is a lack of good faith,[10] and/or (b) that lack of good faith can be attributed to MFIM

18 and/or Mr. Allison due to their alleged prepetition retention by the Debtors which created a

19 supposed bias in favor of the Debtors' prepetition management. Olsen's argument is wholly

20 without merit as a matter of law and based on the record.

21 As pointed out above, negligence claims are clearly barred under the Liability Limitation

---

[6] *Stratosphere Litigation*, 298 F.3d at 1143.

[7] Confirmation Order ¶64.

[8] Motion at 2.

[9] *See generally, Orange Tree Assocs., Ltd.*, 961 F.2d 1445, 1447-1448 (9th Cir. 1992) (discussing section 1144, and holding that 180-day period is not tolled pending discovery); *Lauren Assocs. v. Reed (In re California Litfunding)*, 360 B.R. 310, (Bankr. C.D. Cal. 2007) (discussing section 1144 and bars to collateral attacks of confirmed plans).

[10] *See* Motion at 6.

Clause. Contrary to Olsen's argument, even if there were some conceivable basis for a negligence claim, negligence does not amount to lack of good faith.

In addition, a review of the Motion makes it quickly apparent that Olsen's perceived impression of bias[11] and resulting unsupported allegations of bad faith are based on a patently false premise—that MFIM and/or Mr. Allison were somehow part of or protective of the Debtors' prepetition management.[12] The record in these Chapter 11 Cases, however, unequivocally establishes that the postpetition management of USACM, under the direction of Mr. Allison, did not have any role in management of any of the Debtors prior to the Petition Date.[13] Mr. Allison terminated the employment of prepetition management immediately upon being appointed as Chief Restructuring Officer, in part, to permit an independent investigation of the acts and omissions of that prepetition management. It was through this investigation that the improper acts and omissions of prepetition management were uncovered.[14] In short, the record makes clear that Olsen's unsupported allegations of his meritless bad faith claim are incorrect and cannot be supported as a matter of record.

Thus, for all of the reasons stated, the claims that Olsen alleges are unfounded as a matter of record and are barred in any event under the binding Liability Limitation Clause.

---

[11] In support of his baseless allegations, Olsen provides several quotations allegedly made by Mr. Allison that attempt to show this supposed bias, and he points to the creation of the IP Promissory Note and the Debtors' failure to "move to include the IP assets in the bankruptcy estate." Motion at 3-4 & 6. Neither the alleged quotations cited by Olsen at page 3 of the Motion, which are without foundation, nor the creation of the IP Promissory Note establish any bias or bad faith. Indeed, as discussed above, the creation of the IP Promissory Note was done in consultation of the Committees, was fully disclosed to all parties in interest, and was authorized by the Court in the IP Note Order as being in the best interests of the Debtors and their estates. All rights related to the IP Promissory Note and against Milonowski, Hantges and Hamilton were expressly reserved and were not waived under the Confirmation Order. Confirmation Order at ¶¶ 71 & 81.

[12] Motion at 3. Olsen also incorrectly (and inconsistently) states that Mesirow "was appointed Chief Restructuring Officer under the Plan, with Mr. Allison serving as its managing member." Motion at 2. The record in the Chapter 11 Cases establishes that (a) Mesirow was not appointed Chief Restructuring Officer, (b) no appointment was made under the Plan, and (c) Mr. Allison was appointed on the Petition Date as the managing member of all of the Debtors, other than USACM (which is a corporation, not a limited liability company).

[13] See ¶¶ 3-5 supra.

[14] See ¶ 4 supra.

**B.   The Binding Injunction Bars Olsen From Bringing The Alleged Claims.**

Finally, even if the unsupported claims alleged by Olsen somehow existed **and** even if they could be asserted despite the binding Liability Limitation Clause, the Injunction set forth in the Plan and the final Confirmation Order[15] expressly enjoins Olsen from bringing such claims. For the same reasons discussed in conjunction with the Liability Limitation Clause, section 1141(a) of the Bankruptcy Code and the express terms of the Plan, this Court's Findings and the final Confirmation Order[16] make the Injunction binding on Olsen, and under principals of *res judicata,* Olsen is barred from pursuing any of the alleged claims for the benefit of himself or other creditors.

## CONCLUSION

For all of the reasons stated above, USACM respectfully requests that the Court enter an Order denying the Motion and barring Olsen from bringing any of the alleged claims alluded to in the Motion against the Debtors, the Debtors' employees, officers, directors, agents or representatives, or the Debtors' Professionals because such claims are barred under express and binding Liability Limitation Clause. In addition, even if the alleged claims somehow existed and could be brought despite the Liability Limitation Clause, the binding Injunction set forth in the Plan and the final Confirmation Order enjoins Olsen from bringing such claims.

DATED: March 23, 2009.          /s/ Lenard E. Schwartzer
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146

and

Annette W. Jarvis, Utah Bar No. 1649
Peggy M. Hunt, Utah Bar No. 6060
Steven C. Strong, Utah Bar No. 6340
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, Utah  84101

---

[15] Quoted in ¶ 11 *supra*.

[16] *See* ¶ 16 *supra*.