LEWIS AND ROCA LLP LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0961
Facsimile (702) 949-8321
Telephone (702) 949-8320

Rob Charles NV State Bar No. 0065934
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com

Attorneys for USACM Liquidating Trust

E-Filed on 3/30/09

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,[1]<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC,[2]<br><br>USA SECURITIES, LLC,[3]<br>          Debtors.<br><br>**Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**OBJECTION OF USACM LIQUIDATING TRUST TO CLAIMS OF KANTOR NEPHROLOGY CONSULTANTS, LTD. 401(K) PSP, DR. GARY KANTOR AND LYNN M. KANTOR**<br><br>Date of Hearing: April 30, 2009<br>Time of Hearing: 9:30 a.m. |

The USACM Liquidating Trust (the "USACM Trust") hereby submits its objection ("Objection") to the claims of Kantor Nephrology Consultants, Ltd. 401(k) PSP, Dr. Gary Kantor, and Lynn M. Kantor against USA Commercial Mortgage Co. (collectively, the "Kantor Claims"). The USACM Trust further moves this Court, pursuant to § 502 of title

---

[1] This bankruptcy case was closed on September 23, 2008.
[2] This bankruptcy case was closed on October 12, 2007.
[3] This bankruptcy case was closed on December 21, 2007.

220390.1

11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order disallowing the Kantor Claims against USA Commercial Mortgage Co. ("USACM"). This Objection is supported by the Court's record and explained in the following Memorandum.

## I. JURISDICTION

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. The statutory predicate for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## II. BACKGROUND

3. On April 13, 2006 ("Petition Date"), USACM, USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors, LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF"), USA Capital First Trust Deed Fund, LLC ("FTDF" and together with DTDF, the "Funds") (collectively the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses, if any, as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Post-petition management of the Debtors was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC ("Mesirow"), who serves as the Chief Restructuring Officer.

4. USACM is a Nevada Corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account.

5. This business included the solicitation of individual investors to purchase fractional interest in loans that USACM originated and then serviced. These investors,

totaling approximately 3,600 as of the Petition Date, are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

6. Although USACM serviced and sometimes originated the loans in which the Direct Lenders invested, USACM was not a borrower on these loans.

7. On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" [Docket No. 2376].

8. Under the Plan, the USACM Trust is the successor to USACM with respect to standing to seek allowance and disallowance of Claims.

9. The USACM Trust exists as of the Effective Date of the Plan, which was March 12, 2007. Geoffrey L. Berman is the Trustee.

10. Kantor Nephrology Consultants, Ltd. 401(k) PSP, Dr. Gary Kantor, and Lynn M. Kantor (collectively the "Kantors") invested funds with USA Capital Diversified Trust Deed Fund, LLC ("DTDF").

11. The Kantors filed no proof of claim against the DTDF bankruptcy estate.

12. The Kantors were among approximately 1,594 claimants that asserted claims against USACM. The Kantor Claims are listed as general, unsecured and unliquidated claims appearing as claim 1362 (Kantor Nephrology Consultants, Ltd., 401(k) Profit Sharing Plan); claim 1363 (Dr. Gary Kantor); and claim 1364 (Lynn M. Kantor). (DE #'s 1362, 1363, 1364).[4]

13. DTDF and the USACM Liquidating Trust entered into a settlement agreement dated March 13, 2008. The settlement agreement is attached hereto as Exhibit 1.

14. The settlement contains a release of claims by DTDF. Exh. 1, ¶ 7.

---

[4] The Kantors also filed "direct lender" claims against USACM concerning investments they made in the Gess, Marlton Square, Fiesta Murrieta, and Amesbury projects. Those claims, appearing as claim 2311 (Kantor Nephrology Consultants, Ltd., 401(k) Profit Sharing Plan); claim 2325 (Dr. Gary Kantor); and claim 2312 (Lynn M. Kantor), are not at issue here.

3

220390.1

15. The Court approved the DTDF settlement agreement by order dated April 1, 2008 [DE 6091].

### III. APPLICABLE AUTHORITY – PROOFS OF CLAIM

16. Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects. If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b).

17. The USACM Trust is entitled to object to proofs of claim under 11 U.S.C. § 502(a). This objection is timely.

18. A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f). However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim. *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996). The ultimate burden of proof as to the validity of a proof of claim "remains at all times upon the claimant." *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).

### IV. OBJECTIONS TO KANTOR CLAIMS

19. The USACM Trust seeks disallowance of the Kantor Claims against USACM in their entirety.

20. The Kantor Claims may be the subject of multiple objections herein for any of the reasons stated in this Objection. The Kantor Claims may also be subject to prior or subsequently filed objections, and this Objection is without prejudice to any other objection by any party in interest, including the USACM Trust.

220390.1

1  21.   The USACM Trust reserves the right to further object to the Kantor Claims, whether or not the subject of this Objection, for allowance and/or distribution purposes on any other grounds.  The USACM Trust further reserves the right to modify, supplement and/or amend this Objection as it pertains to any Claim or claimant herein.

**A.   Introduction.**

22.   The Kantors individually filed proofs of claims asserting common law torts of fraud, conspiracy, and a consumer fraud under N.R.S. 41.600(2)(c).[5]  They allege a conspiracy between all five Debtors (USACM, DTDF, FTDF, USA Realty & USA Securities), and claim that they, as well as DTDF, one of the purported co-conspirators, were harmed as a result of the conspiracy.  They seek unliquidated damages against USACM for the lost value of their investments in DTDF, which they further allege was caused by the actions, representations, and omissions of USACM and the other Debtors.  The claims are stated as direct, not derivative claims against USACM; i.e., the Kantors assert that the claims are not derived by, from, through, or under any entity.

23.   Whatever the asserted bases of the Kantor Claims, which USACM contends are legally and factually deficient, the claims belong to the trustee of the DTDF bankruptcy estate, not the Kantors individually.  Thus, the Kantor claims are, at most, derivative claims that the Kantors lack standing to pursue and should therefore be rejected.  Significantly, the DTDF Bankruptcy Estate gave the USACM Liquidating Trust a release of claims as part of the DTDF settlement agreement attached as Exh. 1.

**B.   The Kantor Claims are Derivative.**

24.   "Whether a claim properly belongs to the estate of a bankrupt corporation (i.e. is 'derivative') or to a shareholder individually (i.e. is 'direct') is a matter to be determined by State law." *Gaia Offshore Master Fund, Ltd. v. Hawkins*, 2004 WL 2496142 *3 (N.D. Cal. 2004) (citing *In re Van Dresser*, 128 F.3d 945, 947 (6th Cir. 1997)).

---

[5] The Kantor Claims are identical as to the substantive claims raised, differing only in amounts.

5

220390.1

25. Nevada courts have not discussed the question of when a suit may be brought derivatively or directly in great detail, but have historically looked to Delaware law in dealing with related issues. *See Brister v. Schlinger Foundation*, 469 F.Supp.2d 371, 374 (E.D. La. 2007) (applying Nevada law). Generally, the test whether a stockholder's claim is derivative or direct turns solely on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)." *Gaia Offshore*, 2004 WL 2496142 *3 (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). "An action is 'derivative' of the estate's rights, and thus not actionable as an independent or 'direct' claim by shareholders, if 'the gravaman of the complaint is injury to the corporation . . . or it seeks to recover assets for the corporation.'" *Id*. at *2 (quoting *In re Real Marketing Servs*, 309 B.R. 783, 788 (S.D. Cal. 2004) (internal citations omitted)). "The converse is also true: a claim that 'does not explicitly or implicitly allege harm to the debtor' is a 'direct' claim that is personal to shareholders or creditors and may be asserted only by those persons or entities." *Id*. (citing *Van Dresser*, 128 F.3d at 947). "'The proper inquiry in distinguishing between a direct and a derivative claim is what is the nature of the harm alleged and who is principally harmed: the corporation or the individual shareholders.'" *Brister*, 469 F.Supp.2d at 374 (quoting *Higgins v. NYSE*, 10 Misc. 3d 257, 266 (N.Y. Sup. 2005)).

26. Because Nevada typically follows Delaware's approach on these issues, this Court should apply the same analysis. *See Brister*, 469 F.Supp.2d at 374 ("A Nevada court would look to cases like *Tooley* and *Higgins* to distinguish between direct and derivative claims."); *see also Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 732 (Nev. 2003) ("derivative claim is one brought by shareholder on behalf of the corporation to recover for harm done to the corporation"); *Nelson v. Sierra Const. Corp.*, 364 P.2d 402, 405 (Nev. 1961) (derivative suit derives cause of action out of an invasion of the rights of the

corporation). As the Nevada Supreme Court has concluded, "if [an individual's complaint] seeks damages for wrongful conduct that caused harm to the corporation, it is derivative and should be dismissed." 62 P.3d at 732 (citing *Parnes v. Bally Entertainment*, 722 A.2d 1243, 1244-45 (Del. 1999)).

27. The Kantors essentially allege (1) that they were misled to invest and reinvest in DTDF by omissions or representations made to them and other DTDF investors by agents or representatives of DTDF and/or the other Debtors about how DTDF funds would be invested (Exhibit A to POC 1362, 1363, and 1364 at ¶¶ 20-31); and (2) that the Debtors misappropriated at least $11 million of DTDF money by transferring it to and for the benefit of USACM and/or the other Debtors other than DTDF (*Id.* at ¶ 32). The Kantors further contend that, as a result, they were damaged an "indeterminate amount equal to the extent of the loss in value of their investments in [DTDF] plus the amount of distributions [the Kantors] would have received had [DTDF] invested in the manner represented to [the Kantors]" (*Id.* at ¶ 39). In other words, the Kantors assert only lost investment value as damages.

28. Such a loss is insufficient to state a direct claim against or on behalf of a separate, corporate entity:

> The distinction between derivative and individual actions rests upon the party being *directly* injured by the alleged wrongdoing.
>
> . . . .
>
> . . . Thus, to have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation. *See Moran v. Household International, Inc*., Del. Ch., 490 A.2d 1059, 1070, aff'd, Del. Supr., 500 A.2d 1346 (1985) ("to set out an individual action, the plaintiff must allege either 'an injury which is separate and distinct from that suffered by other shareholders,' or a wrong involving a contractual right of a shareholder . . . which exists independently of any right of the corporation") (quoting FLETCHER'S CYCLOPEDIA CORPS., §

> 5921, at 451 (Perm. Ed., Rev. Vol. 1984) (citations omitted)). For a plaintiff to have standing to bring an individual action, he must be injured directly or independently of the corporation. *See Bokat v. Getty Oil Co.*, Del. Supr., 262 A.2d 246, 249 (1970).

*Kramer v. Western Pacific Industries*, 546 A.2d 348, 351 (Del. 1988)[6] (underline added). The Kantors state no separate, independent direct injury that they have suffered due to USACM's alleged actions. The only damages they claim are the reduced value of their investments, and as such, they state no direct claim against USACM.

29. Moreover, it does not matter how the Kantors choose to frame their claims. *Kramer*, 546 A.2d at 352 ([w]hether a cause of action is individual or derivative must be determined from the "nature of the wrong alleged" and the relief, if any, which could result if plaintiff were to prevail. In determining the nature of the wrong alleged, a court must look to "the body of the complaint, not to the plaintiff's designation or stated intention.") (internal citations omitted). Although presented as direct claims, the Kantor Claims are derivative. Each amounts to nothing more than an assertion that DTDF was harmed by mismanagement and/or allegedly fraudulent conduct of its manager or directors, officers or agents of the other alleged co-conspirators, and that DTDF's investments, including the Kantors, lost value as a result.

30. The Kantor Claims are an attempt to sue USACM derivatively on behalf of DTDF, which they have no standing or right to do. Thus, their claims should be disallowed consistent with the generally accepted rule that

> [a] stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike.

---

[6] *Kramer*, a Delaware case, is cited as authority in *Cohen*, 62 P.3d at 732 n.71.

*See*, Annotation, *Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporations' Right of Action for the Same Wrong*, 167 A.L.R. 279 (1947) (citing numerous cases including *Singers-Bigger v. Young*, 166 F. 82, 85 (8th Cir. 1908) (general rule is that corporation alone can maintain suit for damages occasioned to it by wrongful acts of its directors); *see also Shenberg v. De Garmo*, 143 P.2d 74, 76 (Cal. App. 1943) (same).

### C. Derivative Claims Belong to the DTDF Bankruptcy Estate.

31.   "When a company declares bankruptcy, a bankruptcy 'estate' is created that is comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case.'"  *Gaia Offshore*, 2004 WL 2496142 *2 (quoting 11 USC § 541(a)(1)); *see also Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986) ("filing of the bankruptcy petition instantly alters the rights of a corporation and its creditors").  Both USACM and DTDF, as Debtors, each have a bankruptcy estate that holds all of each debtor's legal and equitable interests as of the date of filing.  Among those interests are claims that all DTDF shareholders, Kantors included, could derivatively assert against DTDF or that DTDF might assert against USACM.[7]  Interests of the debtor in property include causes of action. *Van Dresser*, 128 F.3d at 947; *Delgado*, 785 F.2d at 860 (§ 541 estate includes "any right of action the debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director").  "A debtor's appointed trustee has the *exclusive* right to assert the debtor's claims," *Van Dresser*, 128 F.3d at 947 (emphasis in original), not shareholders in the debtor corporation.

32.   The fraud and conspiracy claims that the Kantors assert against USACM are, rightfully, claims of the DTDF estate, even presuming the allegations made by the Kantors that DTDF's officers or directors fraudulently induced the Kantors to invest in DTDF.  *See*

---

[7] Interests of the debtor in property include causes of action. *Van Dresser*, 128 F.3d at 947.

*Lewis v. Chiles*, 719 F.2d 1044, 1049 (9th Cir. 1983) (decrease in stock value because of breach of fiduciary duty of corporation's officers and directors does not give rise to direct cause of action in shareholder). As the Ninth Circuit has noted, "'the need for the derivative remedy is best illustrated when those in control of the corporation are the alleged wrongdoers.'" *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 615 (9th Cir. 1986) (quoting comment to Mont. Code. Ann. § 35-1-514). *See also Seitz v. Michel*, 181 N.W. 102, 105 (Minn. 1921) ("Whether the guilty officers were animated by hostility or greed, or where merely improvident, the result is the same and affects all the stockholders alike.").

### D. The Kantors Lack Standing to Pursue These Derivative Claims.

33. "Generally, a shareholder does not have standing to redress an injury to the corporation." *Shell Petroleum v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983). To have standing to maintain an action, a shareholder must assert more than personal economic injury that resulted from a wrong to the corporation; he must be injured directly and independently of the corporation. *Id*.

34. The Kantors invested with DTDF and are thus "shareholders" in DTDF. As damages, they claim their lost investment value in DTDF. As shareholders, they may not bring a direct action for recovery of the diminished investment value of their share unless "there is a special duty [] between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders." *See Federal Land Bank of Spokane v. Stiles*, 700 F.Supp.1060, 1066 (D. Mont. 1988) (quoting *Sax*, 809 F.2d at 614). Neither circumstance applies here.

35. Even assuming, as the Kantors allege, that USACM's directors and officers were motivated by malice or ill will toward the Kantors in particular and the wrongful act was intended to injure them as investors in DTDF, the general rule is that the stockholder/investor may not maintain an individual action for an injury to the

corporation. *U.S. Green v. Victor Talking Mach. Co.*, 24 F.2d 378, 381 (2nd Cir. 1928) (defendant's motive in interfering with company business may be material as to whether interference is tortuous or privileged, "but his motive will not of itself create an independent cause of action in favor of the shareholders, because only their derivative or corporate rights have been infringed"). A stockholder simply has no personal right of action against a third party for a wrong to the corporation that reduces the value of his stock. *Weiss and Auld v. Acceptance Corp.*, 546 P.2d 1065, 1069 (Or. 1976).

### 1. DTDF Is the Victim.

36. The damages, if any, that resulted from DTDF'S directors or officers investing funds differently than as allegedly represented to shareholders, including the Kantors, and the alleged diversion of DTDF funds to other Debtors were caused by injuries to DTDF as a whole and the investors only derivatively. *See Singers-Bigger*, 166 F. at 85-86. *Singers-Bigger* involved a director's suit against a co-director to recover damages for alleged malfeasance that resulted in loss of corporate assets. The court found that the right of action for alleged malfeasance belonged to the corporation, not the plaintiff personally. *Id.* at 86.

37. Likewise, here, the right to sue USACM for any alleged malfeasance of its officers or directors toward DTDF is a right in DTDF, not the Kantors personally. *See Shenberg*, 143 P.2d at 76 (the rights of creditors of the corporation are superior to shareholders' rights and would not be protected if shareholders could sue in their own right); *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) ("Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders."); *see also Seitz*, 181 N.W. at 105 ("The wrongs complained of are wrongs against the corporation. The funds diverted should be restored to the corporations. The right of action is in them.").

### 2. The Injuries and Damages the Kantors Assert Affected All Investors Equally.

38. "A well-recognized method for determining whether a claim belongs to the corporation, rather than its shareholders, is to inquire whether '[t]he injury to each stockholder is of the same character.'" *Arent v. Distribution Services, Inc.*, 975 F.2d 1370, 1372 (1992) (quoting *Seitz*, 181 N.W. at 105). Here, the Kantors' investments in DTDF were pooled with those of all other investors in DTDF. So, if the Kantors' investments lost value, then all investments in DTDF lost value, and their claim rightfully belongs to DTDF. *Cf. In re Ionosphere Clubs*, 17 F.3d 600, 604 (2nd Cir. 1994) ("Under Delaware law, the inquiry is whether other shareholders suffered the same injury *in their role as shareholders*.") (emphasis in original).

39. As the Minnesota Supreme Court reasoned in a comparable case involving the defendant managing officer of a corporation that had allegedly defrauded the plaintiff stockholder and caused his investment to lose value,

> The wrong done results in injury to the stockholders collectively. Money which might have been distributed among them as dividends has been wasted. The value of all the stock has been diminished. The injury to each stockholder is of the same character. Whether the guilty officers were animated by hostility towards a particular stockholder or by greed, or were merely improvident, the result is the same and affects all the shareholders alike. On principle and authority the individual stockholder cannot sue the officers for damages sustained by their wasteful expenditure of corporate funds.
>
> <u>It is a matter of no consequence</u> that the misconduct is charged against the defendant as an individual and not as an officer, or <u>that the wrongful acts alleged were done with the specific intent and fraudulent design of injuring plaintiff</u>.

*Seitz*, 181 N.W. at 105 (underline added; internal citations omitted). Similarly, it is of no moment that the Kantors claim to be victims of allegedly fraudulent representations of representatives of DTDF or USACM – the injury they suffered is the same that all investors suffered and their claims are derivative claims of DTDF.

LEWIS
AND
ROCA
LLP
LAWYERS

40.     The plaintiffs' claims in Arent are also comparable to the Kantors'.  There, the plaintiffs complained that fraudulent acts, omissions, and misrepresentations of a third party ("DSI") affected their investment decisions in the "LAN" company and that they had, therefore suffered a direct injury.  The court disagreed, stating,

> Plaintiffs do not allege that they suffered injury different than that suffered by other LAN shareholders.  Plaintiffs allege that DSI's non-disclosures deprived all LAN shareholders of negative information about the company, which affected their investment decisions.  This is like the claim in *Crocker v. FDIC*, 826 F.2d 347, 351 (5th Cir. 1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988), where minority shareholders alleged that if controlling shareholders had informed them of the company's poor financial situation, the would have disposed of their stock.  The court held that <u>this alleged "lost profit opportunity" was nothing more than a claim for diminution in the value of corporate stock, which may only be asserted derivatively</u>.  Therefore, the shareholders' individual claims were dismissed.
>
> Similarly, in *Cowin v. Bresler*, 741 F.2d 410, 416 (D.C. Cir. 1984), the shareholder plaintiffs alleged that management had issued "deceptive and incomplete reports" which deflated the market price of the company's stock and thereby harmed the shareholders.  The court concluded that any harm was shared by the stockholders proportionately to their holdings; <u>the fact that plaintiffs framed the harm as a direct fraud did not permit them to go forward on a claim that was, at its core, derivative</u>.

975 F.2d at 1372-73 (underline added).  The Kantors' lost profit opportunity here is the same – a derivative claim for an injury that affected all those who had invested in DTDF.

41.     As *Arent* aptly comments, "'the nub of the problem is that the investors' injury flows not from what happened to them . . . but from what happened to [the company].'"  *Id*. at 1373 (quoting *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir. 1990)).  The same is true here.  The Kantors' "lost investment value" injury, if any, derives not from alleged misrepresentations or omissions about the way DTDF funds

220390.1

would be invested, but from the damage done DTDF as a whole. As *Arent* further comments, "the difficulty with [plaintiffs'] position is that the deceit is not coupled with the injury." Even if the Kantors were victims of common law or statutory fraud, their only claimed loss is the value of their investment, the same damage all DTDF investors could claim.

### 3. Any Recovery Must Benefit All DTDF Investors Equally.

42. A general principle of corporate and bankruptcy law is "that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *In re American Wagering, Inc*., 465 F.3d 1048, 1051 (9th Cir. 2006). As such, "corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless." *Id*. Thus, a "primary purpose" of 11 U.S.C. § 510(b) of the Bankruptcy Code is "to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors." *Id*. Likewise, besides avoiding a multiplicity of lawsuits, creditor protection is another reason for the rule precluding shareholders from asserting a corporation's claims. *See Arent*, 975 F.2d at 1374.

43. USACM and DTDF are bankrupt. Permitting the Kantors to sue USACM individually would directly disadvantage USACM's creditors, and both DTDF's creditors and other investors. As the court in *Arent* notes, "'[r]ecovery by the corporation ensures that all of the participants-stockholders, trade creditors, employees, and others – recover according to their contractual and statutory priorities. Direct recovery outside of bankruptcy defeats those priorities.'" *Id*. (quoting *Kagan*, 907 F.2d at 692. The same principle applies here. To allow the Kantors to proceed with their claims against USACM would permit the Kantors to unfairly and unlawfully recover ahead of USACM's and DTDF's creditors, as well as other similarly situated DTDF shareholders.

### E. The Kantors Are Barred from Asserting Derivative Claims Because They Failed to Demand that DTDF Pursue a Claim Against USACM.

44. To assert a derivative claim, Nevada Rules of Civil Procedure 23.1 requires heightened pleading standards, including that "the complaint shall also state with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff requires from the directors or comparable authority, and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The Kantor Claims make no such averments. So even if the claims had been brought derivatively, they would be subject to dismissal for failure to state a claim under Rule 23.1. *See Shoen v. SAC*, 137 P.3d 1171, 2006 Nev. LEXIS 77, **22 (Nev. 2007) ("shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim").

### F. The Kantors' Conspiracy to Defraud and Fraud Claims Lack Factual and Legal Support.

45. The Kantors' conspiracy to defraud claims center on an allegation that the five Debtors had some common employees, were housed in the same facility, and had common investments. (Exhibit A to POC's 1362, 1363, 1364 at ¶ 19.) The Kantors otherwise merely allege that Hantges, Milanowski, and Hamilton were primary shareholders, officers, or directors of USACM. *Id.* at ¶ 6. The Kantors do not allege any act or omission specifically performed by USACM as a member of this purported conspiracy. This is insufficient to state a claim for conspiracy to defraud.

46. As the Ninth Circuit has explained, Rule 9(b) requires that allegations of fraud "'be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); see

15

also *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)) ("The spirit of Rule 9(b) aims to keep intact the concept of notice pleading, but with greater specificity, so that defendants have the opportunity to adequately answer what would otherwise amount to boundless, amorphous general allegations of 'fraud.'").

47. Further, the rule "'does not allow a complaint to merely lump defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations.'" *Id.* (quoting *Haskin*, 995 F.Supp. at 1439); *see also Orlando v. Carolina Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 22672 *27 (E.D. Cal. March 13, 2007) (citing *Swartz*, 476 F.3d at 764-65) ("In a fraud suit involving multiple defendants, 'a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'").

48. The Kantor Claims broadly allege that the "Debtor Conspirators" took various actions without specifying which of them did what. As in *Swartz*, the Kantors' conclusory allegations about the involvement of some of the alleged conspirators in the alleged fraud scheme are insufficient to state a claim. *Cf. id.* at 765.[8]

49. But even assuming the truth of the Kantor allegations, their conspiracy claim fails as a matter of law. Under Nevada law, an actionable conspiracy to defraud claim requires showing:

> (1) a conspiracy agreement, i.e., "'a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective <u>for the purpose of harming another</u>'"; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff.

---

[8] ("The complaint is shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to KPMG and B&W. Conclusory allegations that [other defendants] 'knew that [KPMG and B&W] were making . . . false statements to clients, including Swartz, and thus were acting in concert with [KPMG and B&W]' and were 'acting as agents [of KPMG and B&W]' and were 'active participants in the conspiracy' without any stated factual basis are insufficient as a matter of law").

220390.1

*Jordan v. State ex rel. Dep't of Motor Vehicles and Public Safety*, 110 P.3d 30, 51 (Nev. 2005) (underline added) (quoting *Consolidated Generator-Nevada v. Cummins Engine Co., Inc*., 971 P.2d 1251, 1256 (Nev. 1998)). The Kantors allege that all five Debtors conspired toward an unlawful objective. But the purpose of this alleged conspiracy, according to the Kantors, was to harm *DTDF* by misappropriating DTDF funds and causing $11 million of DTDF funds to be transferred to and used for the benefit of USACM and the other purported "Debtor Conspirators." (Exhibit A to POC's 1362, 1363, 1364 at ¶¶ 32.) In short, the conspiracy allegation makes no sense. DTDF cannot be a co-conspirator if the purpose of the conspiracy is to harm itself.

50. That flaw in the Kantors' argument reveals the essential problem with their claims. Even if the other Debtors, including USACM, conspired together to harm DTDF by gutting it of its profits through insider dealing, it is DTDF first and foremost that has been harmed and the investors only secondarily and derivatively (including the Kantors). Were DTDF to recover against USACM or the other Debtors for this alleged harm, the recovery would necessarily benefit DTDF's bankruptcy estate as a whole, not just the Kantors. To allow the Kantor Claims to leapfrog ahead of all other creditors in DTDF's bankruptcy estate would be unfair and improper.

**G.    The Kantors Are Bound By Third Amended Joint Chapter 11 Plan of Reorganization and DTDF's Release of Claims.**

51. Each of the Kantor claimants voted in favor of the Reorganization Plan [DE 2165]. They are therefore bound by the plan's resolution of their shareholder interests in DTDF. To permit them to recover against USACM here would sanction double recovery on their behalf to the detriment of USACM and DTDF's creditors and investors. *Cf. Van Dresser*, 128 F.3d at 949 (corporation and shareholder cannot both recover fully for one tortuous action; to permit claimant to recover both as a guarantor and creditor would result in double recovery).

LEWIS AND ROCA LLP
LAWYERS

1  By settlement agreement dated March 13, 2008, DTDF released its remaining claims against USACM. DTDF received significant consideration in exchange for this release. The Court approved the settlement. The Kantors are bound by the DTDF release. They are not allowed to now circumvent the DTDF settlement agreement to jump ahead of similarly situated creditors by taking a second bite at the apple. Their claim is barred.

## V. CONCLUSION

52. For the reasons discussed, the USACM Trust respectfully requests that the Court enter an order sustaining the USACM Trust's Objection, and disallowing the Kantor Claims in their entirety. The USACM Trust also requests such other and further relief as is just and proper.

Dated March 30, 2009.

**LEWIS AND ROCA LLP**

By /s/ John Hinderaker (#018024)
Rob Charles, NV 6593
John Hinderaker, AZ 018024, *pro hac vice*
*Attorneys for USA Commercial Mortgage Company Liquidating Trust*

Copy of the foregoing mailed by first class postage prepaid U.S. mail on March 30, 2009 to:

Michael M. Schmahl, Attorney
McGuireWoods LLP
77 W. Wacker Drive #4100
Chicago, IL 60601

 /s/ Carrie Lawrence
Carrie Lawrence

220390.1