**Entered on Docket**
**April 29, 2009**

_Bruce A. Markell_
_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: ) | Case No. BK-S-06-10725-LBR |
| ) | Case No. BK-S-06-10726-LBR (closed) |
| USA COMMERCIAL MORTGAGE ) | Case No. BK-S-06-10727-LBR |
| COMPANY, ) | Case No. BK-S-06-10728-LBR (closed) |
| ) | Case No. BK-S-06-10729-LBR (closed |
| USA CAPITAL REALTY ADVISORS, ) | |
| LLC, ) | |
| ) | CHAPTER 11 |
| USA CAPITAL DIVERSIFIED TRUST ) | |
| DEED FUND, LLC, ) | Jointly Administered Under Case No. |
| ) | BK-S-06-10725-LBR |
| USA CAPITAL FIRST TRUST DEED ) | |
| FUND, LLC, and ) | Date:        May 29, 2009 |
| ) | Time:       9:30 a.m. |
| USA SECURITIES, LLC, ) | Courtroom:   3 |
| ) | |
| Debtors. ) | |
| _____ ) | |

**ADDENDUM TO ORDER TO SHOW CAUSE**

On April 28, 2009, the Ninth Circuit Court of Appeals issued its decision in Price v.

Lehtinen (_In re_ Lehtinen), BAP No. NC-04-01534-BMaS.  That opinion is attached hereto as

Exhibit A.  The court invites all parties in interest to address the Price opinion in conjunction with

their responses to the order to show cause entered on April 7, 2009 (dkt. #7012), which is set for a

hearing on May 29, 2009 (see dkt. #7013).  The deadlines for filing responses to the order to show

cause remain as stated in the April 7th order.

IT IS SO ORDERED.

Copies sent to:

BNC Mailing Matrix

ROB CHARLES on behalf of Attorney LEWIS AND ROCA LLP
rcharles@lrlaw.com, cjordan@lrlaw.com

U.S. TRUSTEE - LV - 11 - USTPRegion17.lv.ecf@usdoj.gov

FTI CONSULTING, INC.
2 NORTH CENTRAL AVENUE, STE 1200
PHOENIX, AZ 85004

LEWIS AND ROCA LLP on behalf of Creditor Committee OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR USA COMMERCIAL MORTGAGE COMPANY
3993 HOWARD HUGHES PKWY, #600
LAS VEGAS, NV

MARVIN C. RUTH on behalf of Plaintiff USACM LIQUIDATING TRUST
LEWIS AND ROCA LLP
40 N. CENTRAL AVENUE, SUITE 1900
PHOENIX, AZ 85004

AUGUST B. LANDIS
300 LAS VEGAS BLVD. S., #4300
LAS VEGAS, NV 89101

CURTIS F. CLARK
1403 PUEBLO DRIVE
BOULDER CITY, NV 89005

# # #

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: PATRICIA ANN
LEHTINEN,

*Debtor,*

JIM G. PRICE

*Appellant,*

v.

PATRICIA ANN LEHTINEN; MARTHA
BRONITSKY, Chapter 13 Standing
Trustee; UNITED STATES TRUSTEE,

*Appellees.*

No. 05-17421

BAP No.
NC-04-01534-BMaS

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brandt, Marlar, and Smith, Bankruptcy Judges, Presiding

Submitted February 12, 2009*
San Francisco, California

Filed April 28, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge D.W. Nelson

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

4975

---

**COUNSEL**

Jim Price, Brentwood, California, for the appellant.

---

**OPINION**

D.W. NELSON, Circuit Judge:

Appellant Jim Price appeals the Bankruptcy Appellate Panel's ("BAP") decision affirming the bankruptcy court's order suspending him. We affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

In October or November 2003, debtor Patricia Lehtinen ("debtor") retained Jim Price to represent her in a chapter 13

proceeding. Debtor was primarily concerned with selling her house to repay certain debts.

Debtor's petition was filed before the U.S. Bankruptcy Court, Northern District of California. On February 19, 2004, debtor attended the 11 U.S.C. § 341 meeting of the creditors. Price did not attend this meeting and sent a contract attorney instead. Debtor alleges that Price failed to inform her that he would not attend.

Price also referred debtor to Rene Boisvert of Boulevard Equity Group so that debtor could obtain a loan to fix up her house. Boisvert told debtor that Boulevard would lend her the funds and pay off the first deed of trust on her house, and that Boulevard would be repaid from the proceeds of the sale, but only if debtor retained Price as a broker for the sale. Debtor never completed the loan documents, and sold her house through another realtor without informing Price.

The trustee served notice of a June 3, 2004, confirmation hearing on Price and debtor. Debtor called the trustee's office in April 2004, and was advised that she had until the confirmation hearing to either sell her home, refinance her home, or amend her plan. She was also advised that she was required to attend the hearing. According to debtor, this was the first time she had heard of the confirmation hearing because Price had failed to notify her.

Price did not appear at the June 3, 2004, confirmation hearing. At the request of another client, he had agreed to appear in another court even though he knew it conflicted with the confirmation hearing. He did not request a continuance of either hearing. Debtor attended the confirmation hearing alone, and informed the court that her house was pending sale. The court confirmed the plan with a 100% payout to unsecured creditors.

Without checking the outcome of the confirmation hearing, Price sent a letter to debtor on June 4, 2004, stating that her

case had been dismissed, that he could refile another case for her or help her to sell the house, and that the bank could proceed with the foreclosure on her house. Price admits that sending the letter was a "mistake." He assumed the case had been dismissed because he missed the hearing and because debtor was behind on her payments to the trustee. Price testified that he sent the letter "to urge . . . [debtor] to do something."

On June 10, 2004, the bankruptcy court issued an order to show cause why Price should not disgorge all or part of his $1,500 fee for failure to appear at the meeting of the creditors and the confirmation hearing (hereinafter "First OSC"). On July 7, 2004, the bankruptcy court held a hearing on these issues. On July 8, 2004, it entered an order resolving both absences by ordering Price to disgorge $300 of the $1,500 fee.

After the hearing, but before the issuance of the order, debtor sent a letter to the bankruptcy court stating: (1) that Price never informed her of the confirmation hearing date; (2) that she learned of the hearing date from the trustee; (3) that Price was a real estate broker and pressured debtor to list her house with his brokerage firm; and (4) that Price referred debtor to his friend for a home improvement loan, who had conditioned the loan on her engaging Price as her broker. Debtor also attached the June 4, 2004, letter from Price.

Based on debtor's letter, the bankruptcy court issued a second order to show cause "why . . . [Price] should not be sanctioned pursuant to this court's inherent sanction power . . . for bad faith conduct," and "why he should not be suspended or disbarred from practice in this court" (hereinafter "Second OSC"). The Second OSC identified four instances of alleged misconduct: (1) Price's failure to attend and to inform debtor of her confirmation hearing; (2) the pressuring of debtor to list her house for sale with his brokerage firm; (3) the lender's condition of retaining Price as the broker for the loan transaction; and (4) his letter to debtor falsely informing her that her

bankruptcy case had been dismissed and that a foreclosure sale was imminent. The Second OSC also stated that "the facts point to a clear conflict of interest between Mr. Price acting as the debtor's lawyer, soliciting the debtor to use his services as a real estate broker, and serving as a loan broker." Moreover, it described the evidence required regarding the sanctionable conduct. The Second OSC, however, did not identify applicable rules or sections.

The bankruptcy court held the Second OSC hearing on July 26, 2004. On October 22, 2004, it ordered Price to disgorge the balance of the $1,500 fee and suspended him from practicing before the bankruptcy court of the Northern District of California for three months. It concluded that Price violated several parts of the California Rules of Professional Conduct and the California Business & Professions Code.

On October 29, 2004, Price filed an appeal and obtained a stay of the suspension with the BAP. On October 11, 2005, the BAP concluded that the bankruptcy court "was within its authority in sanctioning Price, and afforded him due process," but vacated the suspension and remanded to the bankruptcy court for consideration of the American Bar Association Standards in disciplining Price. *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 417 (9th Cir. B.A.P. 2005).

On November 10, 2005, Price appealed to this court. No answering brief was filed.

## *JURISDICTION*

**[1]** We have jurisdiction over "final decisions" of the BAP under 28 U.S.C. § 158(d). Although there is some question as to the finality of the BAP's decision because the BAP vacated the portion of the bankruptcy court's order suspending Price and remanded for further proceedings, *see Foothill Capital Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1098 (9th Cir. 1997), we have

jurisdiction over a non-final order in a bankruptcy case where "the appeal concerns primarily a question of law," *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995); *accord Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 904 (9th Cir. 1993), *cert. granted,* 510 U.S. 1039 (1994), *dismissed as moot*, 513 U.S. 18, 29 (1994). This case concerns the bankruptcy court's power to sanction. Because this is a purely legal question, we have jurisdiction. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1187 (9th Cir. 2003).

[2] Although Price argues that the proceeding is non-core, the acts and events upon which his suspension was predicated occurred in the course of his representation of debtor in matters central to the administration of her case. As such, the disciplinary hearing fits well within the ambit of a core proceeding. 28 U.S.C. § 157(b)(2)(A).[1]

## STANDARD OF REVIEW

"This court independently reviews the bankruptcy court's rulings on appeal from the BAP." *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004). "This court reviews an award of sanctions for an abuse of discretion." *Id.* Due process challenges are reviewed de novo. *Willamette Waterfront, Ltd. v. Victoria Station Inc. (In re Victoria Station Inc.)*, 875 F.2d 1380, 1382 (9th Cir. 1989). A court's interpretation and application of a local rule is reviewed for abuse of discretion. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).

---

[1]Price relies on *Sheridan v. Michels (In re Sheridan)*, 362 F.3d 96 (1st Cir. 2004), but that case is distinguishable because the bankruptcy court there held an omnibus disciplinary hearing (concerning several of the attorney's unrelated cases, many of which were closed), and the First Circuit found that such a proceeding was non-core, *id.* at 107-08. The circumstances here are clearly different.

## DISCUSSION

Price argues the BAP's decision should be reversed because: (1) the bankruptcy court lacked the power to suspend him; (2) he was not accorded due process; and (3) the bankruptcy court abused its discretion by failing to follow N.D. Cal. Civ. R. 11-6. We address each argument in turn.

## I. The Bankruptcy Court's Inherent Power to Suspend Attorneys

**[3]** Bankruptcy courts generally have the power to sanction attorneys pursuant to (1) their civil contempt authority under 11 U.S.C. § 105(a); and (2) their inherent sanction authority. *Dyer*, 322 F.3d at 1192-93, 1196. The bankruptcy court sanctioned Price under its "inherent sanction powers."

**[4]** In *Chambers v. NASCO, Inc.*, the Supreme Court held that the inherent power of a federal court permits it, *inter alia*, "to control admission to its bar and to discipline attorneys who appear before it." 501 U.S. 32, 43 (1991). In *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, this court held that bankruptcy courts also "have the inherent power to sanction that *Chambers* recognized exists within Article III courts." 77 F.3d 278, 284 (9th Cir. 1996). Although a simple reading of both *Chambers* and *Caldwell* suggests that the bankruptcy court has the power to suspend attorneys, this court's subsequent cases have limited the scope of the bankruptcy court's inherent power, *see, e.g.*, *Dyer*, 322 F.3d at 1197, warranting further analysis.

A bankruptcy court's inherent power allows it to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. *Id.* at 1196. It also "allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *Id.* (citing *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001)).

The inherent sanction authority differs from the statutory civil contempt authority in at least two ways. First, with the inherent power, a bankruptcy court may sanction a "broad range" of conduct, unlike the "[c]ivil contempt authority[, which only] allows a court to remedy a violation of a specific order (including 'automatic' orders, such as the automatic stay or discharge injunction)." *Id.* Second, unlike the civil contempt authority, "[b]efore imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct." *Id.* (citing *Fink*, 239 F.3d at 992-93). "[B]ad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." *Id.* (citing *Fink*, 239 F.3d at 993-94).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Thus, like the bankruptcy court's civil contempt authority, the inherent sanction authority "does not authorize significant punitive damages." *Dyer*, 322 F.3d at 1197 (noting that this court has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority"). Punitive sanctions are prohibited, at least in part, because the bankruptcy court cannot provide the due process protections that a criminal defendant is ordinarily entitled to, such as a right to a jury trial. *Id.* at 1194; *cf. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001) ("[W]hen a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding.").

**[5]** The BAP has held that the bankruptcy court has the power to disbar or suspend an attorney under its inherent authority power. *Peugeot v. U.S. Trustee (In re Crayton)*, 192 B.R. 970, 976 (9th Cir. B.A.P. 1996). However, it is a question of first impression in this court whether the bankruptcy court has this power.

### A. Characteristics of civil and punitive sanctions

"Civil penalties must either be compensatory or designed to coerce compliance." *Dyer*, 322 F.3d at 1192 (citing *Hanshaw*, 244 F.3d at 1137-38). Although this court has never "develop[ed] . . . a precise definition of the term 'serious' punitive (criminal) sanctions," *id.* at 1193, it has stated that a penalty is criminal in nature "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance, and the fine is not compensatory," *id.* at 1192 (internal quotations omitted). It is also criminal if the sanction was intended "to vindicate the authority of the court." *Hanshaw*, 244 F.2d at 1138 (internal quotations omitted).

In the bankruptcy context, this court has found that a "sanctions award" between $50,000 and $200,000 that "was neither intended to coerce compliance nor intended to compensate . . . for actual damages" was a criminal contempt sanction. *Dyer*, 322 F.3d at 1192. Even "a flat unconditional fine totaling even as little as $50 could be criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (internal quotation marks omitted).

### B. Price's Suspension

**[6]** Price argues that his suspension was punitive in nature and therefore akin to criminal contempt. His suspension did not compensate debtor for losses sustained. *See Dyer*, 322 F.3d at 1192. Nor was Price able to reduce or avoid the sanction through compliance. *See id.* Instead, it appears that the suspension's purpose was to punish Price for his "egregious" conduct.

**[7]** In other contexts, however, this court has held that a lawyer disciplinary proceeding is not a criminal proceeding. Attorney suspension is "neither civil nor criminal, but an investigation in to the conduct of the lawyer-respondent." *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005)

(internal quotation marks omitted). "[D]isbarment proceed-
ings are not for the purpose of punishment but to maintain the
integrity of the courts and the profession." *Patterson v. Stand-
ing Comm. of Discipline to Bar of the U.S. Dist. Court of Or.
(In re Patterson)*, 176 F.2d 966, 968 n.1 (9th Cir. 1949).

## II.   Due Process

[8] A "lawyer subject to discipline is entitled to procedural
due process, including notice and an opportunity to be heard."[2]
*Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d
561, 564 (9th Cir. 1990) (citing *In re Ruffalo*, 390 U.S. 544,
550 (1968)); *Crayton*, 192 B.R. at 978. A suspension hearing
is not a criminal proceeding so the "normal protections
afforded a criminal defendant do not apply." *Rosenthal*, 910
F.2d at 564; *see also Ex Parte Wall*, 107 U.S. 265, 288-89
(1883) (holding that no jury trial right attaches in an attorney
disciplinary proceeding).

### A.   Notice

[9] "Ordinarily a court proposing to impose sanctions noti-
fies the person charged both of the particular alleged miscon-
duct and of the particular disciplinary authority under which
the court is planning to proceed." *DeVille*, 361 F.3d at 548.
The rule, however, is not absolute. *Id.* This court has held that
when using the inherent sanction power, due process is
accorded as long as the sanctionee is "provided with suffi-
cient, advance notice of exactly which conduct was alleged to

---

[2]Under California law, an attorney facing disbarment or suspension is
also entitled to present witnesses. *See Rosenthal*, 910 F.2d at 564. These
protections go beyond what is required under federal constitutional law.
*See id.*; *United States v. Engstrom*, 16 F.3d 1006, 1012 (9th Cir. 1994)
("Procedural due process does not encompass the right to present all
desired evidence."). Even if Price was entitled to call witnesses in this fed-
eral hearing, it appears he was able to do so. Although the only witnesses
at the hearing were Price and debtor, Price submitted declarations from his
other client and from Boisvert, the potential lender.

be sanctionable, and [was] furthermore aware that [he] stood accused of having acted in bad faith." *Id.* at 549 (internal quotations omitted).

Price argues that "he did not receive such advance notice of the particular alleged misconduct or the disciplinary rule the court intended to base its sanctions upon." The record belies his argument.

### 1.   Notice of Alleged Misconduct

**[10]** With respect to the "particular alleged misconduct," the Second OSC identified four instances of alleged misconduct, stated that "the facts point to a clear conflict of interest," and specified the evidence required regarding the sanctionable conduct. Accordingly, Price was fully aware of the conduct charged against him.

Price argues that he had no notice of the possibility of sanctions for his failure to appear at the meeting of creditors. In the Second OSC, the bankruptcy court stated that it had issued the First OSC based upon Price's failure to appear at the meeting of creditors and the confirmation hearing. It then stated that the "non-appearance issue" had been resolved by Price's excuse and a $300 deduction from Price's $1,500 flat rate. Although the Second OSC indicated that the bankruptcy court would again investigate Price's failure to appear at the confirmation hearing, it did not do so with respect to Price's failure to appear at the meeting of creditors. The bankruptcy court did not clarify if this deduction resolved both instances where Price failed to appear. Thus, Price argues that he could have reasonably relied upon the Second OSC indicating that it was no longer at issue. *See id.* at 550.

The BAP noted this but found that any error was harmless because the "other derelictions . . . support the sanction imposed." *Lehtinen*, 332 B.R. at 414. Although Price is entitled to a rebuttable presumption that the error was prejudicial,

*see Obrey v. Johnson*, 400 F.3d 691, 699-701 (9th Cir. 2005), based upon the record, it does appear that the bankruptcy court would have imposed the same sanctions even if it did not consider Price's failure to appear at the meeting of creditors. If anything, Price's other (mis)conduct, like the conflict of interest and the letter falsely stating that debtor's case had been dismissed, was far more egregious than his failure to appear at a § 341 meeting.

### 2.  *Notice of the Basis for Sanction Authority*

**[11]** Here, the bankruptcy court's Second OSC expressly stated that it was considering sanctions "pursuant to this court's inherent sanction powers (*In re DeVille*, 361 F.3d 539 (9th Cir. 2004) for bad faith conduct." The bankruptcy court also ordered Price to show cause "why he should not be suspended or disbarred from practice in this court." While it is true that the bankruptcy court's final order relied in part on specific provisions of the California Rules of Professional Conduct and California Business and Professions Code that it did not identify in the Second OSC, its invocation of its inherent power is sufficient to satisfy due process concerns. *See DeVille*, 361 F.3d at 548-50 (holding due process accorded even when the order to show cause stated Rule 9011 as basis for sanctions when attorney was ultimately sanctioned under inherent sanction authority because sanctionee was aware that he was accused of acting in bad faith). Furthermore, as just explained, the factual bases for the violations of the Rules and Codes were explicitly included in the Second OSC.

### B.  *Bad faith/willful misconduct*

**[12]** Furthermore, the bankruptcy court made the findings of "bad faith" and "willful misconduct" required for the use of the inherent sanction power. *See Dyer*, 322 F.3d at 1196. Although the bankruptcy court did not explicitly state that Price's conduct was performed in "bad faith" or was "willful," it impliedly did so by finding that his "conduct in this

case was outrageously improper, unprofessional and unethical under any reading of California's ethical standards for attorneys." *See Fink*, 239 F.3d at 994 ("[S]anctions are available if the court specifically finds bad faith *or conduct tantamount to bad faith*." (emphasis added)); *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985) (holding that explicit findings are not required where record supports a conclusion that the sanctioned attorney acted in bad faith).[3] Finally, the evidence adduced at the hearing (e.g., the five times Price solicited debtor to serve as a real estate broker for the sale of her house and the false letter), demonstrates "bad faith" and "willful misconduct."[4]

## III. N.D. Cal. Civ. R. 11-6

**[13]** Price argues that, pursuant to N.D. Cal. Civ. R. 11-6, the bankruptcy court should have referred the suspension action to a standing committee.

"In the federal system there is no uniform procedure for disciplinary proceedings. The individual judicial districts are free to define the rules to be followed and the grounds for punishment." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999) (internal quotations omitted). In the Northern District of California, the bankruptcy court is empowered to supervise and discipline attorneys pursuant to N.D. Cal. Bankr. R. 1001-2, which incorporates N.D. Cal.

---

[3]While *Dyer* notes that "[b]efore imposing sanctions under its inherent sanctioning authority, a court must make an *explicit* finding of bad faith or willful misconduct," 322 F.3d at 1196 (emphasis added), the *Dyer* court cited *Fink* for this proposition, and as explained above, *Fink* permits the imposition of sanctions without an explicit finding, 239 F.3d at 994.

[4]It is unclear "whether the bankruptcy court must find bad faith by clear and convincing evidence or under a preponderance of the evidence standard." *Dyer*, 322 F.3d at 1197 n.20 (noting that this "question [has] not yet [been] resolved in this circuit"). We need not decide this question today because here there is clear and convincing evidence of "bad faith" in this case.

Civ. R. 11-1 through 11-9. N.D. Cal. Civ. R. 11-6(a) (2004), titled "Discipline," provides:

> (a) General. In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following:

> (1) Initiate proceedings for civil or criminal contempt under Title 18 of the United States Code and Rule 42 of the Federal Rules of Criminal Procedure;

> (2) Impose other appropriate sanctions;

> (3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;

> (4) Refer the matter to the Court's Standing Committee on Professional Conduct; or

> (5) Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L.R. 11-7.

The bankruptcy court apparently imposed Price's suspension based on subsection (2), which authorizes "other appropriate sanctions." *See* N.D. Cal. Civ. R. 11-6(a)(2).

**[14]** Although the BAP recommends that matters involving attorney discipline be referred to the standing committee, *Crayton*, 192 B.R. at 978, Price's argument ignores the plain language of N.D. Cal. Civ. R. 11-6(a), which states that its procedures are discretionary. The Rule provides available measures the judge "may" take, not must take, if she has cause to believe an attorney has engaged in unprofessional conduct.

## CONCLUSION

**[15]** We conclude that because Price was accorded due process, the bankruptcy court possessed the inherent power to suspend him. The BAP's order is affirmed.

AFFIRMED.