**QUARTERLY POST-CONFIRMATION REPORT OF**
**GEOFFREY L. BERMAN, TRUSTEE**
**USACM LIQUIDATING TRUST**

**March 2009**

**USACM Liquidating Trust**
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
**Development Specialists, Inc.**
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

**Lewis and Roca LLP**
Rob Charles
Susan M. Freeman
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating
Trust

254241.2

# TABLE OF CONTENTS

**Page**

I.      TRUST ADMINISTRATION ............................................................................ 1

     A.      Website ........................................................................................... 1

     B.      Trust Committee............................................................................. 1

     C.      Trust Staff ...................................................................................... 2

     D.      BMC Access to Court Docket........................................................ 2

     E.      Creditor Inquiries .......................................................................... 3

II.     PLAN OF REORGANIZATION ISSUES ................................................... 3

III.    USACM ISSUES ............................................................................................. 3

IV.     INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST
     POTENTIAL TARGET DEFENDANTS .................................................. 4

     A.      Diamond McCarthy ........................................................................ 4

     B.      Pending Actions ............................................................................. 4

     C.      Tolling Agreements........................................................................ 9

     D.      Developments in Specific Cases and With Specific Targets............................. 10

          1.      Beadle McBride..................................................................... 10

          2.      Piercy Bowler ....................................................................... 10

          3.      Confidential Settlement......................................................... 10

          4.      Granatstein............................................................................ 11

V.      PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
     OTHER BANKRUPTCY PROCEEDINGS ............................................. 11

     A.      USAIP Chapter 11 Case ................................................................ 11

          1.      Trustee................................................................................... 12

          2.      Proofs of Claim..................................................................... 12

254241.2

**USACM Liquidating Trust**
**March 2009**

3.     USAIP Related Issues .................................................................. 12

B.     Insiders – Thomas Hantges and Joseph Milanowski .............................. 13

     1.     Hantges ........................................................................... 13

     2.     Milanowski ..................................................................... 14

C.     HMA Sales, LLC ................................................................................. 16

D.     Salvatore Reale ................................................................................... 16

E.     JMK Investments ................................................................................ 17

F.     Tree Moss Partners, LLC ................................................................... 17

VI.     COLLECTION OF TRUST ASSETS ........................................................... 18

A.     Reserves ............................................................................................. 18

B.     Colt Loan ........................................................................................... 18

C.     Compass Escrows ............................................................................... 18

D.     Interpleader ........................................................................................ 20

E.     Lee Suit ............................................................................................. 21

F.     BySynergy ......................................................................................... 21

G.     Lowe Enterprises ............................................................................... 21

VII.     PROFESSIONAL FEE APPLICATION OBJECTIONS ............................. 22

VIII.     PROOFS OF CLAIM AND CLAIMS OBJECTIONS ................................. 22

A.     Overview ............................................................................................ 22

B.     Objections .......................................................................................... 22

C.     PBGC ................................................................................................. 25

D.     Contact Information ........................................................................... 25

E.     Objection Deadline ............................................................................ 25

F.     Compass v. LPG ................................................................................ 26

G.     Disbursing Agent Agreement ............................................................ 27

254241.2

**USACM Liquidating Trust**
**March 2009**

H.    General Inquiries .................................................................................................. 27

IX.    LOAN SERVICING ISSUES .................................................................................. 28

A.    USA Investors VI, LLC ................................................................................. 28

B.    Trust Loan Servicing - Placer Vineyards........................................................ 28

C.    Compass Trust Loan Servicing – Collection of Pre-Paid Interest ...................... 30

X.    TRUST FINANCIAL STATEMENT ............................................................................ 31

## QUARTERLY POST-CONFIRMATION REPORT OF
## GEOFFREY L. BERMAN, TRUSTEE
## USACM LIQUIDATING TRUST

### March 2009

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during January through March 2009 on:

- administration of the Trust;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- investigation, prosecution and settlement of causes of action against potential recovery targets;

- collection of other assets;

- claims analysis and resolution of disputed claims; and

- Placer receivership issues.

These and other topics are briefly described in this report, along with comments on the financial statement of the Trust as of March 31, 2009.[1]

## I.      TRUST ADMINISTRATION

### A.      Website

The Trust's website address is:  http://usacmcucc.bmcgroup.com.  We invite your suggestions for content on the Trust's website.

### B.      Trust Committee

The Trust functions with a Trust Committee created by the Plan and the Trust Agreement.  The current members of the Trust Committee are Donald Walker, James Bonfiglio, Michael Tucker (in his capacity as Administrator of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF")), Suzanne Nounna, and Janet Chubb and Ken Bonnet, a client representative from the Kehl family (jointly).  The Trust Committee met in a regularly scheduled meeting on February 9, 2009 to discuss the status of the

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Committee.

1

254241.2

**USACM Liquidating Trust**
**March 2009**

Trust, the Trustee's prior quarterly reports, and other issues.[2]  Regular communication between the Trust and the Trust Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff

The Trustee is employed by Development Specialists, Inc. ("DSI").[3]  The Trustee uses DSI staff to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.

In addition, and as has previously been reported, the Trustee selected Rob Charles[4] and Susan M. Freeman[5] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel.  Other attorneys at that firm assist the Trust as well, including John Hinderaker, who directs claims and other Trust specific litigation.[6]

Separate litigation counsel, Allan Diamond[7] and Bill Reid[8] of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

### D.    BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases.  While those dockets, and the associated claim information, are available to the public for a fee through PACER, the

---

[2] The next Trust Committee meeting is April 29, 2009.

[3] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[4] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[5] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[6] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369.

[7] Information about Mr. Diamond is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/adiamond.html.

[8] Information about Mr. Reid is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/wreid.html.

2

Trust believes that the Court and creditors are better served by the Trust bearing that expense, for the time being.

### E.    Creditor Inquiries

Both the Trustee and the Trust's counsel receive periodic inquiries from direct lenders concerning servicing, tax issues, pre-paid interest and other questions.  Both the Trustee and the counsel have made every effort to respond to each such inquiry, although often the Trust is not in a position to provide a specific answer, since the Trust cannot provide lenders with legal or tax advice.

## II.    PLAN OF REORGANIZATION ISSUES

The sole remaining appeal (by Debt Acquisition Company of America V, LLC ("DACA")) from the Confirmation Order, which was affirmed by the United States District Court, District of Nevada, was pending before the United States Court of Appeals for the Ninth Circuit at Case No. 07-16796.  The final brief was filed and served by April 29, 2008.  The Ninth Circuit scheduled oral argument in the appeal, but that became moot due to a settlement with DACA described below, and the appeal has been dismissed.

The adversary proceeding brought by Compass USA SPE, LLC seeking to revoke confirmation of the plan was dismissed by the Bankruptcy Court's January 16, 2009 order.  As such, there are no remaining challenges to the Confirmation Order.

The Trust responded to the Motion to Interpret the USA Capital Reorganization Plan With Respect To Professionals Liability filed on behalf of Alpert Olson, Jr. on March 4, 2009.  The Motion sought the Court's determination of potential claims against professionals retained by the Debtor, including and particularly as to Mesirow.  The Trust opposed the Olson motion by its March 23, 2009 filing, because, among other things, the Plan of Reorganization extinguished the liability that Mr. Olson sought to enforce and the expense incurred by Debtor professionals in responding to such a motion would likely be asserted as an expense of administration.  The Bankruptcy Court heard the matter on April 10, 2009 and denied the motion.

## III.    USACM ISSUES

USACM continued to wind up its affairs and file monthly reports of those efforts with the bankruptcy court.  USACM has been dissolved under Nevada law, with Thomas Allison of MFIM responsible for winding up its affairs.

The Trust continued to monitor the liquidation of USACM under the direction of Mr. Allison and its pre-effective date counsel.  USACM files periodic operating reports disclosing its status of assets and liabilities, payments and obligations incurred.  USACM

**USACM Liquidating Trust**
**March 2009**

also holds reserves for certain unresolved claims as well as unresolved expenses of administration.  Any excess of the funds in escrow over the claims paid would be assets of the Trust.

## IV.    INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

### A.    Diamond McCarthy

Diamond McCarthy as special litigation counsel to the Trust has actively conducted formal and informal discovery of files, witnesses and transactions since its informal engagement in January 2007, which was formalized once the Plan went effective in March 2007.  The goals are to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors.  In addition, special litigation counsel has sought to identify assets diverted by insiders and their affiliates so that the assets can be recovered to generate payment for creditors.  Diamond McCarthy continues to coordinate those efforts with others, including DTDF, the USA Investment Partners, LLC ("USAIP") Trustee (Lisa Poulin), and the bankruptcy trustees for Hantges and Milanowski mentioned below.  Many witnesses have been deposed or interviewed and tens of thousands of pages of documents have been reviewed.  Further, Diamond McCarthy continues to coordinate efforts with various federal and state governmental agencies, including the FBI, U.S. Attorney's Office for Las Vegas, and the SEC.  Diamond McCarthy maintains a confidential work product database that has been instrumental in helping the Trust coordinate discovery requests and responses at lower cost.  Diamond McCarthy is lead counsel on the bulk of the Trust's litigation described below.

### B.    Pending Actions

The Trust had the benefit of a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing.  The two-year anniversary of the bankruptcy filing was April 13, 2008.  The Trust filed numerous causes of action before this deadline.  Lawsuits were filed against the following:

| Case No. | Defendant |
| --- | --- |
| 08-01114 | Shober Consulting, Inc.[9] |
| 08-01115 | Bob Stupak[10] |

---

[9] A Trust's adversary complaint against Shobert Consulting, Inc. is set for pretrial conference on July 28, 2009 and a trial scheduled for August 10, 2009.

254241.2

**USACM Liquidating Trust**
**March 2009**

| Case No. | Defendant |
|---|---|
| 08-01116 | Greenwald, Pauly, Foster & Miller[11] |
| 08-01117 | David Rentz[12] |
| 08-01118 | Jerry Cadeski[13] |
| 08-01119 | Robert A. Russell; Deborah Russell; Russell A. Development Group, LLC; Freeway 101 Investors, LLC; Freeway 101 Loop RAR Investment, LLC; Boise/Gowen, LLC; BG/93 Investments, LLC; Copper Sage Commerce Center, LLC; Der NV Invesco, LLC; SVRB Investments, LLC |
| 08-01120 | Gentile De Palma Ltd.[14] |
| 08-01121 | Fertitta Enterprises, Inc. |
| 08-01122 | J.M.K Investments, Ltd., John M. Keilly, Mountain West Mortgage LLC[15] |

---

[10] The adversary proceeding against Bob Stupak was dismissed with prejudice on the motion of the Trust filed on October 28, 2008.

[11] The Trustee entered into a settlement agreement and general release with Greenwald, Pauly, Foster & Miller of the causes of action asserted in adv. No. 08-01116-lbr. The defendant agreed to settle the case for payment of $13,000. That payment would result in dismissal of the adversary. The case was dismissed on December 23, 2008 after the defendant paid the settlement amount. The adversary proceeding against Greenwald, Pauly, Foster & Miller was closed on January 7, 2009.

[12] The adversary proceeding against David Rentz was dismissed on the Trust's stipulation on September 30, 2008.

[13] The Trust's lawsuit against Jerry Cadeski was dismissed on February 3, 2009.

[14] On August 5, 2008, the Trust amended its complaint. The Trust entered into a settlement agreement with Dominic P. Gentile, providing for an agreed obligation, deferred payments, backed up by a stipulated judgment if the payments were not timely made.

[15] In a separate adversary concerning J.M.K. Investments, Ltd. et al, the defendant John M. Keilly filed a motion for summary judgment as J.M.K. Investments on March 16, 2009. The Trust has opposed the motion, which is set for hearing on May 7, 2009. A settlement conference was conducted on April 21, 2009 and a status hearing scheduled for May 7, 2009. The claims in that case were resolved at that settlement conference, with JMK Investments paying the Trust in excess of $100,000 and Mountain West Mortgage paying an additional $20,000 to resolve the Trust's claims.

254241.2

**USACM Liquidating Trust**
**March 2009**

| Case No. | Defendant |
|---|---|
| 08-01123 | Fiesta Development, Inc.; Ashby USA, LLC; Richard K. Ashby; Random Developments, LLC; Ashby Development Company, Inc.[16] |
| 08-01124 | Homes for America Holdings, Inc.; HFAH Clearlake, LLC; One Point Street Inc.; Mediterranee-HFAH, LLC[17] |
| 08-01125 | Monaco Diversified Corporation; Anthony Monaco; Susan K. Monaco; Eagle Ranch Residential, LLC; Eagle Ranch, LLC; Willowbrook Residential, LLC; Brentwood 128, LLC; Ravenswood Apple Valley, LLC[18] |
| 08-01126 | James Cioffi Architect Corporation[19] |
| 08-01127 | Amesbury Port Corporation[20] |

---

[16] After prosecution of the litigation, and then extensive negotiations, on February 10, 2009, the Trust sought authority to enter into a compromise under Bankruptcy Rule 9019 with Fiesta Development, Inc., Ashby USA, LLC, Richard K. Ashby, Random Developments, LLC, and Ashby Development Company, Inc. The compromise provided for an immediate payment of $82,500 and a stipulated judgment of $4,980,266.49. The compromise was approved after a hearing on February 20, 2009. On March 5, 2009, the Court entered its order approving the settlement with Fiesta Development, Ashby USA, Richard Ashby, Random Developments and Ashby Development Company.

[17] In the adversary proceeding against Homes for America Holdings, Inc. et al, the Trust filed a first amended complaint on December 24, 2008, and thereafter requested a stay of discovery pending settlement discussions.

[18] In the adversary proceeding against Eagle Ranch, LLC et al, the Trust filed its second amended complaint on February 2, 2009. The parties filed a first amended joint discovery plan in anticipation of a status hearing on February 20, 2009. Counsel for the defendants filed a motion to recuse Judge Riegle. Counsel for the defendants also filed a motion to dismiss certain elements of the amended complaint, scheduled for hearing on April 30, 2009, to which the Trust responded. The Court scheduled a status hearing for April 10, 2009. Consideration of the motion to recuse or disqualify Judge Riegle will be by Judge Markell on April 30, 2009.

[19] On December 2, 2008, the Trust dismissed its claims against James Cioffi Architect Corporation and the adversary case was then closed.

[20] The Trust and defendant Amesburyport Corporation filed a stipulation to jointly stay discovery deadlines on January 16, 2009, and the Trust withdrew its motion to compel. The matter was set for status hearing on February 3, 2009. The status hearing was

254241.2

**USACM Liquidating Trust**
**March 2009**

| Case No. | Defendant |
|----------|-----------|
| 08-01128 | K&S Properties (Minden)[21] |
| 08-01129 | Tanamera Resort Partners, LLC[22] |
| 08-01130 | Phillips USA LLC[23] |
| 08-01131 | Bingham McCutcheon, LLP[24] |
| 08-01132 | Stanley E. Fulton[25] |

---

continued to March 6, 2009.  The matter was set for a pretrial conference on June 12, 2009 and a trial scheduled to begin on June 22, 2009.

[21] After investigation, the Trust sought dismissal of the adversary proceeding against K&S Properties, adversary No. 08-1128.  The stipulation for dismissal was filed in August 2008 and granted by the Court thereafter.

[22] In the Trust's litigation with Tanamera Resort Partners, L.L.C., the bankruptcy court directed the parties to participate in a settlement conference before the Honorable Randall Newsome and continued the matter to a status hearing on April 30, 2009.  Subsequently, the matter was scheduled for a settlement conference before the Honorable John L. Peterson on April 7, 2009.

[23] In the adversary proceeding against Philips USA LLC, the court entered its default judgment on December 24, 2008 for $425,000, together with pre- and post-judgment interest.  The Trust will seek to collect the judgment.

[24] The Trust's lawsuit against Bingham McCutcheon, LLP was scheduled for a scheduling conference on March 25, 2009 and thereafter a settlement conference was scheduled in April 2009, as was certain discovery.  The defendants filed a motion to exclude an expert report, to which the Trust responded, and which was scheduled for hearing on March 18, 2009.  The hearing was rescheduled to March 6, 2009.  A settlement conference was directed before the Hon. Randall Newsome, and was eventually scheduled for April 13, 2009.

[25] Plaintiff is DTDF.  The Trust and the defendant submitted a discovery plan, rescheduled their informal settlement conference and asked the court to approve the amended discovery plan.  The case was set for a status hearing on April 10, 2009 and a trial scheduled for June 29, 2009.  The defendant filed a motion to compel discovery from the plaintiff, which the Trust opposed.  The Trust sought leave to file a first amended complaint on March 16, 2009 and a hearing was scheduled on April 10, 2009.

254241.2

**USACM Liquidating Trust**
**March 2009**

| Case No. | Defendant |
|----------|-----------|
| 08-01133 | Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99; Specialized Development Tahoe, LLC[26] |
| 08-01134 | Mary Petersen; Mary Petersen Family Trust dated 8/12/98; Michael D. Petersen; Michael D. Petersen Family Trust dated 8/12/98; Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99[27] |
| 08-01135 | Wells Fargo Bank, N.A.[28] |
| 08-01164 | Beadle, McBride, Evans & Reeves, LLP; Reeves, Evans, McBride & Zhang, LLP; TG McBride, CPA Ltd.; T. Garth McBride[29] |
| 08-0112-0 | David A. Fogg[30] |

Additionally, a complaint was filed in the United States District Court for the District of Nevada, as follows:

---

[26] Plaintiff is DTDF. In the adversary proceeding, the defendants filed a motion for withdrawal of the reference from the Bankruptcy Court to the District Court on January 21, 2009, to which the Trust filed an opposition. The Court has directed the parties to participate in a settlement conference. The defendants filed a motion to compel discovery responses, which the Trust opposed.

[27] Plaintiffs are the Trust and DTDF. The defendants have sought withdrawal of the reference from the Bankruptcy Court to the District Court, as discussed above. The parties agreed to a stipulated protective order by their February 4, 2009 stipulation filed with the Court. The Trust filed a motion to strike the defendant Michael Peterson's jury demand, which the defendant opposed. The hearing on the motion to withdraw reference and a separate motion to consolidate case is scheduled for July 10, 2009 before the District Court. In response, the defendants filed a motion to withdraw the proofs of claim filed by Michael Peterson. The hearing on the motion to strike jury demand was consolidated with the hearing on the motion to withdraw proofs of claim and scheduled for March 20, 2009.

[28] Plaintiffs are the Trust, DTDF and FTDF. This is not an avoidance action.

[29] Plaintiffs are the Trust and DTDF. See below.

[30] Plaintiffs are the Trust and DTDF. In the adversary proceeding against David Fogg, the court scheduled a hearing on February 20, 2009 in order to schedule a settlement conference. A settlement conference was scheduled for April 21, 2009.

254241.2

**USACM Liquidating Trust**
**March 2009**

| Case No. | Plaintiffs | Defendants |
|---|---|---|
| 2:08-CV-461 | Trust and DTDF | Deloitte & Touche, LLP;[31] Victoria Loob[32] |

These actions are being prosecuted in order to recover funds for the Trust beneficiaries and DTDF.

### C.    Tolling Agreements

The Trust and DTDF also entered into what are known as "tolling agreements" with a number of potential targets before the deadline for bringing action.  In essence, a tolling agreement allows the Trust to take more time to investigate possible causes of action and hopefully negotiate settlement of any claims against the potential targets before filing suit.  The relevant limitations period is tolled during the pendency of the tolling agreement.  For confidentiality and other reasons, to encourage settlement and to protect potential targets about whom the Trust may not have sufficient information to bring an action at this time, the Trust is not disclosing the identity of the persons and entities with whom it has entered into tolling agreements except now in a few instances where the efforts of Diamond McCarthy, the Trust and DTDF, have resulted in settlement of the claims raised by the Trust and DTDF against those particular third parties and where bankruptcy court approval of the settlement is pending.

The Trustee's direction to counsel was to prosecute the actions described above in the most expeditious, cost-effective manner, while seeking reasonable settlement with our without the formal assistance of the court or other mediation.  This directive was not to eliminate the potential to take any given matter to trial, but rather to seek to prosecute the claims in the most effective manner possible for the benefit of the Trust's beneficiaries. This report will not detail the status of each of the pending litigation matters, but instead will report on those matters as they are concluded or significant events occur.

---

[31] The Trust and Deloitte & Touche, LLP entered into a stipulation re: confidentiality and proposed protective order on January 6, 2009.  The magistrate judge approved the order on January 9, 2009.  The matter was scheduled for a settlement conference on April 21, 2009.  Discovery is due to be completed by September 1, 2009; dispositive motions are due by October 1, 2009; and the parties are directed to submit a proposed joint pretrial order by November 2, 2009.

[32] The action has been dismissed against Ms. Loob.

9

254241.2

**USACM Liquidating Trust**
**March 2009**

**D.     Developments in Specific Cases and With Specific Targets**

**1.     Beadle McBride**

The Trust, as well the manager of DTDF, sought bankruptcy court approval to enter into a settlement agreement with a release among the Trust, DTDF, and Beadle McBride, Evans & Reeves, LLP, Reeves, Evans, McBride & Zhang, LLP, TG McBride CPA Ltd., and T. Garth McBride, collectively ("BMER"). In substance, the settlement provided for BMER's insurance carriers to pay $1,500,000 to settle all claims. DTDF shares in a portion of the collections in the agreement between the Trust and DTDF previously described in these reports. The payment from insurance settled complex causes of action and provided a greater recovery than the Trust, DTDF and counsel expected would be obtained if litigation were filed, judgment was entered, and collection efforts undertaken. The bankruptcy court entered its order approving the BMER settlement on December 9, 2008. The Trust's action against BMER was resolved by a stipulation for dismissal filed on January 21, 2009.

**2.     Piercy Bowler**

The Trust, through special litigation counsel, and DTDF, sought authority from the bankruptcy court to enter into a settlement agreement with Piercy, Bowler, Taylor & Kern PC ("PBTK"). PBTK were the former auditors of USACM. The Trust investigated and informally asserted causes of action on behalf of the Trust and DTDF against PBTK, which elected to settle after extensive negotiations. PBTK requested that the settlement amount to be paid by its insurance carriers be maintained as confidential. The settlement would be shared with DTDF pursuant to the agreement referenced above. The settlements were considered after notice to creditors and interested parties, including in the case of PBTK, all direct lenders.

Certain creditors opposed the settlement, some generally due to their frustration over the losses they had incurred in the USACM loans and others because of specific concerns with respect to the settlement.

After a hearing on December 23, 2008, the Bankruptcy Court approved the Trust's settlement with Piercy Bowler and overruled the objections. On January 13, 2009, the Bankruptcy Court entered its order, and separate findings of fact and conclusions of law in support of the order approving the settlement with PBTK. The settlement funds were received shortly after the order was entered.

**3.     Confidential Settlement**

After a settlement conference, the Trust reached agreement on a proposed settlement with another professional law firm and its insurance carriers. That firm requested and the

10

**USACM Liquidating Trust**
**March 2009**

Trust agreed to keep the name of the potential defendants confidential, as well as the amount of the settlement payment.

In the course of the discussions over settlements, one of the target's counsel raised the question whether the bankruptcy court's approval of the settlement is required. The Estate Administration and Liquidating Trust Agreement and Declaration of Trust by and Among USA Commercial Mortgage Company, Debtor, and Geoffrey L. Berman, as Liquidating Trustee, filed on April 4, 2007, contains language suggesting that compromises require bankruptcy court approval, despite the bankruptcy court's stated concerns in connection with hearings on settlements described above. In lieu of obtaining bankruptcy court approval for this particular, confidential, settlement, after consultation with the United States Trustee, the Trustee went to the Trust Committee and asked for unanimous consent for the proposed settlement. The Trustee has the right to amend the Trust Agreement with unanimous approval of the Trust Committee. Consequently, a settlement at variance with the bankruptcy court approval provisions of the Trust Agreement could be approved by the unanimous consent of the Trust Committee in lieu of an amendment to the agreement. The Trust Committee unanimously agreed with the Trustee to approve the settlement reached by the Trustee with the assistance of special litigation counsel in lieu of an amendment to the Trust Agreement.

The Trust will be free to identify the defendant and the amount paid after a period of time, however the Trust is bound by the terms of the settlement and is not able to divulge any additional details of this settlement at this time. Any reader of this report who has additional questions as to this settlement should direct their inquiry to William T. Reid, IV at Diamond McCarthy's Austin, TX office.

### 4.    Granatstein

The Trust settled the adversary proceeding brought against Donald Granatstein and International Resort Management, Inc. The Trust's action sought avoidance of a transfer of $17,750. The compromise was for a total payment of $10,000, payable $2,500 down and $2,500 monthly, secured by stipulated judgment for $17,750.

## V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    USAIP Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 Million Note") to USACM for the benefit of creditors (including DTDF). Repayment of the $58 Million Note and other obligations of USAIP are secured by liens on USAIP's interest in entities

11

owned or in part by USAIP.[33]  The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims.  USAIP is a debtor in a bankruptcy case pending in Nevada (case #07-11821-LBR).

### 1.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the bankruptcy court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP.  Lisa M. Poulin was appointed and continues to serve as trustee.  She selected Gordon Silver, fka Gordon & Silver, P.C. of Las Vegas, Nevada as her counsel, with the Court's approval.

### 2.    Proofs of Claim

On behalf of the Trust, Diamond McCarthy timely filed a proof of claim seeking $158,900,000 from the USAIP estate on behalf of the Trust.

As Lisa Poulin identified USAIP subsidiaries in need of bankruptcy protection, bankruptcy cases were filed, she was appointed trustee, and the cases were jointly administered.  These include: USAIP; USA Investors VI, LLC, Case No. 07-12377; Tree Moss Partners, LL, Case No. 06-13758; HMA Sales, LLC, Case No. 07-12694; Capital Land Investors, LLC, Case No. 07-18099; Oak Mesa Investors, LLC, Case No. 08-10397; and Buffalo Land Development Co., LLC, Case No. 08-10398.

USAIP sought and obtained approval to retain Foley & Lardner LLP as special counsel to deal with the claims of the Pension Benefit Guaranty Corporation ("PBGC"), in part as a result of the successful resolution of the objections of the USACM Liquidating Trust to the PBGC proofs of claim.  USAIP then objected to three proofs of claim filed by the PBGC in the aggregate amount of approximately $3 million.

### 3.    USAIP Related Issues

USA Commercial Mortgage Company as agent for USAIP filed a proof of claim for $4,055,706.65 in the chapter 7 bankruptcy case of American Enchantment II, LLC.  The

---

[33] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; and Buffalo Land Developments, LLC, a California limited liability company.

12

**USACM Liquidating Trust**
**March 2009**

chapter 7 trustee objected to the claim, which the Trust investigated and ultimately determined was properly dealt with by the USAIP Trustee.

The Trust continued to monitor the USAIP bankruptcy case, including reviewing its monthly operating reports.  The Trust also worked with the USAIP Trustee on cost-benefit considerations of the pursuit of assets and potential causes of action by the USAIP Trustee and the related post-confirmation estates.

### B.    Insiders – Thomas Hantges and Joseph Milanowski

#### 1.    Hantges

Due to the actions of the Trust, the Administrator of the DTDF and other creditors, Thomas A. Hantges is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13163-lbr.  Michael Carmel was appointed trustee in the Hantges bankruptcy.

The Trust timely filed a proof of claim against the Hantges estate seeking the amount of $305,000,000.  Resolution of claims against the Hantges estate and the possibility of payment are months or years away.

On February 11, 2008, the Trust through Diamond McCarthy filed a complaint to determine non-dischargeability of debt against Hantges, assigned Adversary No. 08-01042-lbr.  Hantges has answered the complaint and the matter is in the early discovery stages.  Similar lawsuits were filed against Hantges by DTDF (No. 08-01041), the Kehl family (No. 08-01040), and the United States Pension Benefit Guaranty Corporation ("PBGC") (No. 08-01039).

The Trust continues to prosecute the adversary complaints against Joseph Milanowski, Case No. 08-01093, and Thomas Hantges, Case No. 08-01042.  Discovery in the Hantges adversary proceedings were stayed pending settlement discussions by the court's October 24, 2008 order.

The Trust had provided limited post-petition financing to the Hantges estate pursuant to a loan approved by the bankruptcy court.  In an amendment, the Trust agreed to increase the amount of the loan to $2,250,000.  The purpose of the loan is to enable the Hantges trustee to collect assets owed to the Hantges creditors, including the Trust.  The obligation continues to bear interest and be secured by a first priority lien on all unencumbered assets of the Hantges estate, and a junior lien on any encumbered assets, as well as a super-priority administrative claim.  The amendment to the loan was approved by the Bankruptcy Court in its May 9, 2008 order.

The bankruptcy court's order denying Hantges' motion to dismiss or alternative motion to convert the bankruptcy case to chapter 7 was entered on the docket on November 14, 2008.  Without being unnecessarily, pejorative, Hantges, who claims he has no money,

13

**USACM Liquidating Trust**
**March 2009**

found the resources to have his attorneys file a notice of appeal on November 24, 2008. Hantges elected to have the appeal considered by the district court, and assigned district court number 08-cv-01665.

The Trust and the Trustee for the Hantges estate entered into an agreement for prosecution of claims by the Trust against Lucius Blanchard, the Blanchard Childrens' Trust, Palomino Partners and Thomas A. Hantges with respect to the transfers to and assets of the alleged Trust. The lawsuit was filed by the Trust on August 25, 2008 at Case No. 08-01268. The Hantges estate also retained the Trust's special litigation counsel – Diamond McCarthy – to prosecute certain actions on behalf of the Hantges estate. The Trustee sought approval of employment of Diamond McCarthy on September 3, 2008.

In the adversary proceeding brought by Mr. Carmel as trustee for the Hantges estate, No. 08-01002, Lucius Blanchard, individually and as trustee of the Hantges Children's Education Trust, filed a motion for summary judgment on November 3, 2008, seeking dismissal of certain of the causes of action. The motion was heard by Judge Nakagawa in March 2009 and the motion was denied. The Trust and Mr. Carmel have had one settlement meeting with Dr. Blanchard and his counsel (prior to the hearing on the motion for summary judgment). Information was exchanged with Dr. Blanchard but no progress has been made as of this date towards a consensual resolution of the claims. The Trust's litigation against Blanchard and other defendants is set for a continued status hearing on July 1, 2009.

The Trust continued to monitor the bankruptcy case of Thomas Hantges, Michael Carmel as Trustee. Of note was a continued status hearing in a variety of adversary proceedings, including by the Trust seeking a determination that the obligations of Hantges to the Trust are non-dischargeable, on March 20, 2009. The status hearing in the adversary complaints was then continued to August 14, 2009, with an expectation that discovery and potentially a mandatory settlement conference would occur in the interim.

## 2. Milanowski

Similarly, due to the actions of the Trust and DTDF and other creditors, Joseph Milanowski is a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13162-lbr. Again, the Trust, DTDF and others joined in bringing the involuntary petition against Milanowski. The Bankruptcy Court entered an order for relief against Milanowski and appointed Ford Elsaesser as the trustee in the Milanowski case.

Milanowski appealed the order for relief. The Milanowski appeal is in the United States District Court for the District of Nevada, Case No. 3:07-cv-404. The United States District Court for the District of Nevada, the Honorable Brian E. Sandoval, considered the status of Milanowski's appeal from the order for relief in his personal bankruptcy

254241.2

**USACM Liquidating Trust**
**March 2009**

case. After a status conference on November 24, 2008, the appeal was dismissed for lack of prosecution.

The Trust filed a proof of claim through Diamond McCarthy against Milanowski for $305,000,000. The claim includes Milanowski's guarantees of the debts of Placer County Land Speculators, LLC to the Placer 1 and Placer 2 Direct Lenders on the loans that the Trust is servicing.

The Trust through Diamond McCarthy filed a complaint in the bankruptcy court, Adv. No. 08-01093-lbr, to determine the dischargeability of Milanowski's debts to the Trust. That complaint is in the early stages of discovery. A scheduling conference is set for August 27, 2008. Similar lawsuits were filed against Milanowski by DTDF (No. 07-13162), Aurora Investment L.P (No. 07-01212), the Kehl family (No. 08-01052), the PBGC (No. 08-01044), and BySynergy, LLC (No. 07-01209).

As indicated above, the Trust continues to prosecute the adversary complaints against Joseph Milanowski, Case No. 08-01093, and Thomas Hantges, Case No. 08-01042.

The Trust continues to cooperate with federal, state and local officials investigating USACM. On April 23, 2008, the SEC brought an action against Joseph Milanowski "in connection with a multi-million dollar fraud" seeking an order requiring Milanowski to disgorge sums obtained. The Trust is not prosecuting this action. The complaint was filed with the United States District for the District of Nevada and is Case No. 2:08-CV-00511. The Trust continues to monitor the SEC's litigation.

The Trust continued to monitor the prosecution of the bankruptcy case of Joseph Milanowski by Ford Elsaesser, the court-appointed trustee. The Trustee, Mr. Milanowski, the Joseph D. Milanowski 1998 Trust, the Milanowski Family Trust, Cynthia Gunther Milanowski, and the Cynthia Gunther Milanowski 1998 Trust negotiated and entered into a settlement agreement, subject to bankruptcy court approval. The Trustee requested input from the Trust concerning the settlement and those discussions were informally obtained. Separately, the bankruptcy court scheduled a judicial settlement conference for January 20, 2009, was later vacated by the court, in the several adversary proceedings filed by the Trust and other creditors against Milanowski seeking a determination that Milanowski's debts were non-dischargeable. The parties advised the court of a potential settlement and requested a stay of discovery, which was granted and a status hearing scheduled for March 6, 2009. Settlement conversations continued among the several claimants and Milanowski with respect to the non-dischargeability actions.

Ford Elsaesser, Chapter 11 Trustee for the Estate of Joseph D. Milanowski, sought approval to enter into a settlement agreement and release with Joseph Milanowski, Cynthia Gunther Milanowski, and certain of their affiliates. The settlement proposed that in exchange for a $1 million payment, the Trustee would not seek to attack certain

15

254241.2

**USACM Liquidating Trust**
**March 2009**

Milanowski related trusts, retirement accounts and other investments that arguably were property of the Milanowski estate, but which also might be subject to claims of third parties. The hearing originally scheduled for February 3, 2009 was continued on the request of the Milanowski trustee to March 6, 2009, and then continued to April 10, 2009. Various adversary proceedings against Milanowski were continued to a status hearing on April 10, 2009, including the Trust's non-dischargeability complaint against Milanowski. Mr. Elsaesser, the Trustee, filed a motion for a determination that certain individual retirement accounts were not property of the bankruptcy estate. That motion was scheduled for hearing on April 10, 2009. We have now been informed that the Court tentatively approved the settlement subject to the Milanowski's warranting to the Court that they have disclosed all of their assets.

### C.    HMA Sales, LLC

The Trust filed a proof of claim in the HMA Sales, LLC bankruptcy case, where Lisa Poulin is the trustee. Claim No. 47 was in the sum of $4,832,123.96. Because of disputes as to liability, and more importantly, limited assets of the estate and competing claims, the Trust carefully negotiated a resolution of the proof of claim and the HMA Sales Trustee's objection. Ms. Poulin and the Trust reached an agreement which was reduced to writing and filed with the bankruptcy case in case No. 07-12694. The agreement approved by the bankruptcy court allowed the Trust's claim at $1,500,000, but provided for purposes of distribution that the Trust would receive only 50% of funds distributed to holders of unsecured claims until the allowed claim was paid in full. Thus, the relative size of the Trust's claim was reduced for distribution purposes. The stipulation was filed with the court on October 28, 2008 and approved by the court that same date.

Separately concerning HMA Sales, a stipulation and order to dismiss cross-claims against USA Commercial Real Estate Group, Inc. was filed in Adv. No. 06-01256, which helped bring about the resolution of that adversary proceeding, in which the Trust claimed no interest.

### D.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust. The adversary proceeding is Adv. No. 06-01251 pending in the Bankruptcy Court. On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint. The Trust originally sought to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million. After further investigation, the Trust narrowed its claims to avoid and recover a $4 million transfer to or for the benefit of Mr. Reale.

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Mr. Reale for $4

254241.2

**USACM Liquidating Trust**
**March 2009**

million, plus an award of the Trust's taxable costs.  The Trust filed a motion seeking pre- and post-judgment interest, which motion was granted by the Bankruptcy Court after a hearing on May 8, 2008.  The Trust obtained judgment on May 13, 2008.

The Trust continues to work on collection of the $4 million judgment against Salvatore Reale, including seeking post-judgment discovery, filing a motion to compel compliance with the discovery requests, and negotiating with Mr. Reale on a possible settlement. Efforts to recover on the judgment are complicated by a temporary restraining order against Mr. Reale in another matter, as well as an obligation to the Internal Revenue Service.

>    E.    **JMK Investments**

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).

The Trust worked through its special litigation counsel at Diamond McCarthy LLP and accomplished, through settlement, several significant payments for the Trust.  In connection with the adversary proceeding against JMK Investments, Ltd. et al, the Trust entered into a settlement agreement, subject to court approval, with JMK, Simon Family Trust, Steven Portnoff, JWB Investments, Inc., Brouwers Family LP, Larry C. Johns, Mary L. Johns, Paul Bolch Living Trust, Roni Amid, Robert M. Portnoff, Sarah Portnoff, Morningside Homes, Inc., Aurora Investments LP, Steven Janovitch, Linda Janovitch, First Savings Bank FBO Valliera McGuire, Marvin and Valliera Myers Trust, Larry J. Middleton, Jennifer Middleton, Alabruj Limited Partnership, and Francis Family Trust. Under the agreement, approved by the bankruptcy court after notice and an opportunity for hearing, Defendants will pay $2,750,000 to the Trust.  Payment by June 30, 2009 reduces the payment requirement to $2,250,000.  The JMK settlement was approved by the court's November 24, 2008 order.

In the adversary proceeding concerning J.M.K. Investments, Ltd., counsel for several of the defendants sought leave to withdraw and the matter was scheduled for hearing on February 20, 2009, and a status hearing was scheduled on March 20, 2009 at which the defendant Roni Amid was directed to appear personally.  Counsel was allowed to withdraw and the status hearing was conducted on April 10, 2009 as to Roni Amid.  A resolution as to Mr. Amid is expected shortly.

>    F.    **Tree Moss Partners, LLC**

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not

17

**USACM Liquidating Trust**
**March 2009**

pledged as collateral for the $58 million Note.  The Trust filed a proof of unsecured claim for $1,075,799.91 in the case, and continues to monitor progress of the case.

## VI.    COLLECTION OF TRUST ASSETS

### A.    Reserves

The Trust monitors certain reserves held by USACM through Mesirow Financial Interim Management, LLC ("MFIM").  These reserves are identified generally in Monthly Operating Reports filed by USACM, which are prepared by MFIM.

### B.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust continued to work with Michael A. Tucker, the administrator of DTDF, on collection of sums owed on the Colt loans.  Proposals have been received from Homes for America Holding, the developer of the project, for refinancing the project and addressing the outstanding debts, but no significant progress has been made in this regard.

The Trust continues to monitor collection of certain loans involving Colt in the Colt Gateway Campus Urban Revitalization Project in Hartford, Connecticut.  To date, those efforts have not resulted in resolution of the Trust's claims.  The Trust is working on an objection to the Colt's proof of claim.

### C.    Compass Escrows

In connection with the Closing of the Asset Purchase Agreement dated December 8, 2006 ("Compass APA") with Compass USA SPE, LLC ("Compass") on February 16, 2006, certain escrows were established.  The first escrow agreement is for $1,250,000 with respect to Compass' asserted right to invoke an Individual Asset MAC (as defined in the Compass APA) under § 9.1(i).  USACM and the Trust dispute Compass' assertions.

The second escrow for $903,000 was established with respect to Compass' asserted right to assert a dollar for dollar reduction of the Commercial Mortgage Price (as described in § 2.3(i) of the Compass APA) in connection with USACM's settlement of the Franklin-Stratford Investments LLC and the I-40 Gateway West Loan before the closing.

A third escrow of $412,666.45 was established and is self-liquidating either upon collections received by Compass or after the passage of time.

Because the Trust and Compass were unable to resolve their disputes, and because the deadline for collections from the self-liquidating escrow was approaching and Compass

254241.2

**USACM Liquidating Trust**
**March 2009**

would not stipulate to extend the deadline, the Trust sued Compass in the bankruptcy court on April 29, 2008, adversary no. 08-01066-lbr. Republic Title Of Texas, Inc. was named as a defendant as escrow agent, but no responsive pleading has been requested from the title company at this point in time. Compass filed an answer and counterclaim.

Further, Compass' lender, Silar Advisors, LLC, represents that Silar foreclosed on its loan to Compass on September 26, 2008, and that Asset Resolution, LLC was an entity created to continue the servicing process.

During the course of settlement negotiations with Silar as successor to Compass, the Trust asked Republic Title to verify the balance of escrows established by agreement between Compass and USACM on February 17, 2006. The escrow agent reported that neither USACM (managed by MFIM and represented by RQN) nor Compass requested that the funds be held in an interest-bearing escrow. The escrow agent requested tax payer identification information in order to establish interest-bearing escrows, but its request was ignored. MFIM prepares a monthly post-confirmation report filed by USACM that includes the escrow accounts as assets. There is no breakdown in this monthly report from which anyone other than MFIM could determine that interest was not being earned on the escrows.

The Trust verified with Republic Title the balance remaining in the escrow account was $2,099,067.79. That number became the basis for a settlement conversation with Silar, those discussions also included approximately $235,000 in sums collected on the Hotel Marquis loan and withheld from Compass in order to preserve the Trust's right of offset, $100,000 potentially at issue in the interpleader action, and Silar's going forward obligations with respect to Pre-Paid Interest. This last issue caused the Trust and Silar to spend significant effort attempting to reconcile the current unpaid balance of Pre-Paid Interest among the Direct Lenders. Silar and the Trust exchanged and each analyzed the other's accounting.

The Trust prepared for a settlement conference set before Judge Newsome in the adversary proceeding against Compass, Adv. No. 08-01066. In addition, the Trust filed a motion to have Silar joined as a party as either the successor to or joint reliable with Company. Judge Newsome eventually vacated the settlement conference.

Eventually, Compass claimed the $100,000 in the interpleader in Adv. No. 06-01146. Neither the Trust nor Silar claimed an interest in this particular asset. The Trust directed Compass to make its position a matter of record in the bankruptcy court since Compass' prior attorneys had withdrawn as counsel of record and also claim an interest in those funds.

The Trust and Silar entered into a Settlement Agreement, seeking court approval of the Agreement on December 17, 2008. The Agreement resolved a substantial portion of the issues raised in the adversary proceeding, including for an equal distribution of an escrow

254241.2

**USACM Liquidating Trust**
**March 2009**

with the remaining balance of $2,099,067.79. In addition, Silar agreed to comply with the obligations with respect to Pre-Paid Interest as asserted by the Trust on a going forward basis. Through the Settlement, the Trust resolved difficult issues with respect to escrow accounts as well as obtained acknowledgment by Silar of its obligations with respect to Pre-Paid Interest under the Plan.

The Trust's compromise of the escrow dispute with Compass and Silar resulted in a wire of $1,049, 533.90 by the escrow agent to the Trust in January 2009, after the court entered its order approving the compromise. The litigation is scheduled for status hearing on April 30, 2009.

In the course of working on claims, the Trust requested access to data maintained by Asset Resolution LLC as servicer on behalf of Silar Advisors LP. The Trust in turn is working with Silar to provide it with access to USACM documents that Asset Resolution needs in order to act as loan servicer. This will aid in the Trust's ability to resolve direct lender claims filed against USACM that are based on investments in loans where neither the Trust nor DTDF are acting as the servicer.

### D.    Interpleader

USACM had filed an interpleader, Adversary No. 06-1146, concerning sums held in the USACM investors trust account before bankruptcy. The Trust negotiated with parties having an interest in the account concerning final resolution of it, which was eventually filed with the Court as the Stipulation Re: Interest on Claims, Awarding Fees and Costs in Interpleader Action (filed in the adversary case). As a result of the Stipulation, the Trust received the balance of the funds in the account, after payment to claimants, payment of the unclaimed funds into the clerk of the court for deposit in the registry account, specified amounts to the law firms of David W. Huston, PC and Schwartzer & McPherson.

At the request of the Court, the Trust continues to provide status reports and attempts to facilitate resolution of the interpleader action captioned *USA Commercial Mortgage Company v. Robert J. Kehl et al*, Adv. No. 06-01167-lbr, and *USA Commercial Mortgage Company v. Wells Fargo Bank, N.A.*, Adv. No. 06-01146-lbr.

In connection with cleaning up pending adversaries, and in particular No. 06-01146, which was an interpleader, the Trust facilitated resolution of the claims to the funds in the interpleader account. Eventually, $100,000 was identified that was owed to the Bolino Trust concerning their interest in the Marquis Hotel and Wasco Loans. Later, Compass Partners asserted that it had bought the loan interests of Bolino Trust and was entitled to the $100,000 in the interpleader. The Trust directed Compass and Silar, to the extent Silar claimed an interest, to file appropriate papers with the bankruptcy court asserting their interest in the $100,000. The law firm of Milbank, Tweed, Hadley & McCloy asserted an interest in $100,000 otherwise payable to Compass. The court scheduled a

20

**USACM Liquidating Trust**
**March 2009**

hearing on April 30, 2009 on the Trust's motion to distribute remaining unclaimed funds to the Trust and thereafter to dismiss the adversary proceeding.

### E.    Lee Suit

One of the assets of the Trust was causes of action asserted against James J. Lee by USACM.  That matter resulted in an appeal to the Supreme Court of the State of Nevada, Case Nos. 46363 and 46781.  In an order filed March 28, 2008, the Supreme Court reversed and remanded summary judgment granted to USACM against Lee.  The Trust is handling this matter through a special counsel relationship with Lenard E. Schwartzer.

Mr. Lee filed a bankruptcy petition, Case No. 08-10969, with the United States Bankruptcy Court in Nevada on February 6, 2008.  The Trust continues to assert its interest in the Lee bankruptcy case.

### F.    BySynergy

BySynergy is an entity that is obligated to DTDF and the Trust.  It is a debtor in a bankruptcy case pending in the United States Bankruptcy Court for the District of Arizona, Case No. 2:08-bk-07680-RTB.  Counsel for DTDF is taking the lead on enforcing the claims of the post-confirmation entities against BySynergy.

### G.    Lowe Enterprises

In late December, 2008, the Trust began working with counsel concerning a stipulation to reopen the bankruptcy case of Lowe Enterprises Residential Investors, LLC, and to distribute sums held in escrow in case No. 3:03-cv-00156-HDM-VPC.  The escrow arose out of the Double Diamond Ranch Parks Agreement between Double Diamond Ranch, L.L.C., Double Diamond Ranch Master Association, and the City of Reno, Nevada.  The money was held in escrow by Ticor Title.  The Trust's position was undertaken after negotiations with DDH Financial concerning claims DDH might assert in the escrow.

In connection with a proposed settlement, the Trust asked the Bankruptcy Court in Reno, Nevada to reopen the bankruptcy case of Double Diamond Ranch, LLC, Case No. BK-N-01-33665-GWZ, in order to enter an order directing Ticor Title to release funds held in escrow account 04-004260 to the USACM Trust.  The escrow was established pursuant to a stipulation with Lowe Enterprises Residential Investors, LLC in an adversary proceeding.  Reopening the bankruptcy case was necessary in order to provide the escrow agent with a form of order.  After a hearing on notice, the Bankruptcy Court did, in fact, reopen the bankruptcy case.

Thereafter the Trust sought approval of a settlement agreement among the Trust, USA Investment Partners, LLC ("USAIP"), Toblak, LLC, DDH Financial Corp., and Tanamera Commercial Development, LLC.  Under the settlement, which was approved

21

**USACM Liquidating Trust**
**March 2009**

by the Bankruptcy Court after notice, which addressed the Ticor Title escrow account of $187,996.50, a DDH bankruptcy account, in the amount of $163,645.69 and a Toblak account in the control of USAIP's Trustee in the amount of $198,081.49, the parties agreed:

- The Trust would received 70% of the Park funds and DDH would receive 30%

- The Trust would received the Ticor Title account funds

- DDH would retain the funds in the DDH account

- The Trust would receive the funds held in the account under the USAIP Trustee's control, following approval of the USAIP bankruptcy court.

The Settlement Agreement with USAIP, Toblak, DDH and Tanamera was approved by the Bankruptcy Court's February 25, 2009 order and the Trust has received the monies due under the settlement.

## VII.   PROFESSIONAL FEE APPLICATION OBJECTIONS

With respect to professional fees, the Trustee carefully scrutinizes each month the fee statements presented by professionals for USACM (Ray Quinney Nebeker (now Dorsey & Whitney), Mesirow Financial Interim Management) ("MFIM"), the Trust (including Lewis and Roca and Diamond McCarthy), and other post-confirmation entities and bankruptcy trustees.  With respect to USACM's professionals, while the Trustee is not completely satisfied with the billings, the Trustee has elected not to expend creditor funds in disputing billings that have minor excesses.  With respect to the Trust's professionals, the Trustee deals directly with and receives complete satisfaction of his concerns from his lawyers and other professionals.

## VIII.   PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.   Overview

To date there have been seven administrative claims filed totaling $2,016,499.08; 103 priority claims filed totaling $7,751,955.91; 1,676 secured claims filed totaling $297,052,436.44; 1233 unsecured claims filed totaling $627,644,759.4; and 78 unknown claims filed totaling $389,390.57.  Additional claims were scheduled by the jointly administered Debtors.

### B.   Objections

To date, the Trust has filed:

254241.2

**USACM Liquidating Trust**
**March 2009**

- Objections to 1667 secured claims that have been sustained and reclassified as unsecured in aggregate of $296,160,363.

- Objections to 76 priority claims that have been sustained and reclassified as unsecured in aggregate of $5,122,367.

- Two objections to the status of an administrative claim totaling $62,496 that has been sustained and reclassified as unsecured.

- Objections to 81 "Wrong Debtor" claims in the amount of $13,584,227 have been filed to date.

- Objections to three claim not enforceable against USACM in the amount of $75,503,580; one of these claims totaling $12,841,680 remains unresolved.

- Objections to 147 claims for lack of documentation in the amount of $19,708,808; 23 of these objections to claims totaling $1,920,750 were withdrawn due to claimants sending in sufficient supporting document and 124 objections were sustained totaling $17,788,058.

- Objections to 39 claims on miscellaneous grounds in the amount of $65,094,987.  7 of these objections were sustained totaling $27,002,383; 8 objections have stipulated withdrawals totaling $7,496,447; 4 claims totaling $17,772,911 have orders allowing the claim; and 20 objections totaling $12,823,246 are unresolved.

- A total of 1164 objections to Direct Lenders claims in the amount of $84,728,167.74, principally on loans paid in full by the borrowers.  The court has sustained these objections or the claimants have agreed that they are not making a claim based upon the paid loan in question, with the exception of the Copper Sage Commerce I loan which will be heard on 4/30/09.

- A stipulation has been executed and an order signed which provides for the disallowance of the Spectrum and Weddell proofs of claim in the amount of $125,000,000.

- 32 proofs of claims based on the Palm Terrace lawsuit totaling $64,000,000 have been objected to, 31 claims have been disallowed in their entirety and one claim was deemed partially allowed in the amount of $50,000 with the remaining portion of the claim disallowed.

- 227 claims totaling $27,365,338 have been determined to be amended or duplicated by another proof of claim.

254241.2

**USACM Liquidating Trust**
**March 2009**

- An additional 69 claims totaling $27,001,959 have stipulated withdrawals.

The Trust continued to attempt to resolve claims on loans that had been resolved.  For example, the Trust filed omnibus objections with respect to proofs of claim based upon the loans known as Preserve at Galleria, LLC, Roam Development Group, LLC, Del Valle Homes, LLC Isleton, and Copper Sage Commerce Center, LLC.  In addition, the Trust began to review individual proofs of claim, including those filed against the wrong debtor, and duplicate proofs of claim.  The pace of objections will accelerate as Compass or its successor, Silar, or its successor, are successful in collecting direct loans.

Further, as the Trust has received information from claimants, it has entered into stipulations for the allowance and disallowance of priority and unsecured claims.  Conversely, some claimants have stipulated to either withdraw their claims or have them reclassified as unsecured claims upon discussion with the Trust's counsel.

The remaining direct lender claims relate to loans that (1) fully performed, but involve diverted principal; (2) partially performed; (3) are non-performing or still outstanding.  The extent to which those loans perform and/or the direct lenders may be compensated from the sale of collateral securing the loans has a major impact on the amount of the claims.  The Trustee is handling these claims on a loan by loan basis.

Not all of the claims objections can be resolved through motions.  The Court has ordered that the Trust's objection to claim 1366 of Los Valles Land & Golf, LLC be consolidated with a related adversary proceeding filed by the Trust against Los Valles and its guarantor, Dan S. Palmer, Jr.  The Trust filed an action against Los Valles Land & Golf, LLC, Dan S. Palmer Jr., Case No. 08-01058-lbr.  During the quarter, the Trust conducted some formal discovery and filed a motion for summary judgment on December 22, 2008.  The motion is set for hearing on April 10, 2009 before the bankruptcy court.

In general, with respect to claims of Direct Lenders, the Trust is waiting for information concerning collection of loans before turning to the unsecured claims of the direct lenders in the particular loan.  The inability of Compass or its successors to collect loans directly impacts the Trust's ability to work on proofs of claim.  Without loan collection, the Trust cannot know the actual damages incurred by the Lenders on account of alleged breaches by USACM.

The Trust periodically receives inquiry from lenders concerning their claims and how to report the claims on tax returns.  The Trust is, unfortunately, not in a position to offer tax advice to direct lenders.  This would include whether lenders may properly seek a bad debt deduction for the unpaid balance of particular loans.

The Trust is also working on claims by non-lenders, and for example objected to the claim of the Securities and Exchange Commission as well as claims of equipment lessors.  Other claims were withdrawn by agreement.

**USACM Liquidating Trust**
**March 2009**

### C.    PBGC

The PBGC claims against USACM were resolved, as described in prior reports by an Order of the Court entered on August 6, 2008.  All sums reserved for the PBGC claims have either been distributed to the PBGC or the Trust, as appropriate.

The PBGC filed substantially similar claims against USAIP and its affiliates.  Those entities have hired the Trust's counsel responsible for resolving the PBGC claims as special counsel.  Objections have been filed to the PBGC claims, and the PBGC has sought settlement conferences in each of the cases.

### D.    Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

Sierra Consulting Group
Brant Fylling
E-mail:  USACMTRUST@sierracgllc.com
Telephone 602-424-7020

 For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com.  You may send an e-mail on a general inquiry to: USAcommittee@lrlaw.com.

### E.    Objection Deadline

The Trust continued to investigate possible objections to proofs of claim.  The Trust sought and obtained an extension of the deadline to file objections to proofs of claim through June 10, 2009.  The Trust has since filed a motion for an additional extension of that deadline.

As noted above, the Trust reviewed the thousands of proofs of claim filed with the Court to determine those which appeared to be filed by Direct Lenders.  In turn, each Direct Lender's claim was analyzed to see what direct loan or loans it arose out of.  The Trust's intention is to take each group of Direct Lender claims on a loan-by-loan basis, determine if the claims are valid, and in what amount, and then to advise all Direct Lenders who filed proofs of claim with respect to that loan of the Trust's recommendation.  This approach is consistent with the alternative dispute resolution mechanism implemented for Direct Lenders by confirmation of the Plan, which in general requires personal consultation by the Trust and the affected Direct Lenders who disagree with the Trust's position, as well as mediation.

254241.2

**USACM Liquidating Trust**
**March 2009**

Numerous claimants have asked when the Trust will have concluded its examination of claims. In general, the claims will not be resolved until the last direct loan has been paid or otherwise resolved. This is because there are proofs of claim filed by Direct Lenders in all of the loans that USACM serviced. However, as the pool of unresolved loans becomes smaller, it may be possible to estimate the claims that might be allowed with respect to the unresolved loans. That process will, nevertheless, take many months.

### F.    Compass v. LPG

As indicated above, the Trust believes that the most efficient way to evaluate unsecured claims of Direct Lenders is after the applicable direct loan has been resolved, presumably through collection. A number of disputes are in litigation among the plaintiffs in lawsuits pending in the District Court, as well as the Lender Protection Group (the "LPG") and Donna Cangelosi ("Cangelosi") (collectively referred to as "LPG") and Compass USA SPE, LLC, Compass Partners, LLC, and Compass Financial Partners, LLC ("Compass"), which have expanded to include certain named Direct Lenders and Compass' officers and lender. That litigation is generally managed by the United States District Court for the District of Nevada under Case No. 2:07-cv-00892-RCJ-GWF. The Trust is not a party to that litigation. Nevertheless, the litigation does adversely impact the Trust's ability to evaluate claims.

The District Court appointed a Receiver for the LPG entities. The Trustee has monitored the litigation between Compass and the entities known as Lenders Protection Group and limited liability companies formed by that group, jointly administered in the United States District Court under its No. 2:07-cv-892. In general, after the district court appointed the Receiver for the LLCs, the receiver filed a report concerning the status of the litigation and the possibility of a settlement agreement. Silar Advisors, LP and Silar Special Opportunities Fund, LP reported that they had foreclosed out the interests of Compass as servicer. Compass' lawyers sought and were granted leave to withdraw as counsel. The district court entered an order on October 22, 2008 withdrawing the reference in an adversary proceeding brought by 3685 San Fernando Lenders, LLC et al against Compass and co-defendants, bankruptcy adversary No. 07-01076, so that the district court could have all of the Compass-related litigation within its control. Additional litigation was removed to the district court and transferred to Nevada with respect to loans concerns CCM Pathfinder Bay Pompano, LLC, and CCM Pathfinder Gramercy, LLC.

In the course of both settlement discussions between the Trust and Silar, as well as issues raised by the receiver's settlement proposal in the LPG litigation, direct lenders began to become concerned that the failure of Compass to collect loans was potentially exposing them to suit by the Trust for recovery of Pre-Paid Interest after the two-year tolling period from the Effective Date of the Plan (March 12, 2007). The Trust consistently

254241.2

explained to any inquiring party the facts as the Trust understood them, as well as the Trust's options.

The Trust continued to monitor the litigation involving Silar as successor to Compass Partners with respect to loan servicing and the claims with Lender Protection Group and other parties pending in the United States District Court for the District of Nevada. The Trust considered and responded to a proposed settlement, that was ultimately not approved by the District Court. Thereafter, the District Court continued to address the issues raised by the appointment of a receiver and the disputes among the lenders, Silar, the receiver and others concerning the loan servicing issues. This litigation continues to delay collection of loans and ultimately resolution of unsecured claims against the USACM Trust.

### G.    Disbursing Agent Agreement

The Trust and USA Capital First Trust Deed Fund, LLC ("FTDF") entered into a Stipulation Concerning Amended Disbursing Agent Agreement. The Court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF if there is a distribution on the $7 million FTDF unsecured claim, now that entity is liquidated. The bankruptcy court entered a final decree and order closing the FTDF case on October 12, 2007. The Trust was advised that the final distribution to the members of the Fund, along with their respective K-1's for 2006, was released to the members. In the transmittal to the Fund members, members were advised to address all further inquiries about the status of the Fund to the Trust. The Trust is attempting to answer these questions as best it can in light of not having prepared the distribution or K-1 information returns.

The Trust is the distribution agent for any additional distributions owed to members of FTDF. FTDF investors periodically request information from the Trust, which the Trust provides to the extent it has the information in its files as a result of turnover from FTDF, including the final FTDF tax return.

### H.    General Inquiries

The Trust periodically receives inquiry from lien creditors, borrowers or lenders on loans to be serviced by Compass or its successors. The Trust, as a courtesy, makes every effort to direct the inquiry to the appropriate person handling servicing of the loan. Similarly, the Trust periodically receives requests for production and other formal and informal discovery requests for review of the business records of USACM, some of which the Trust holds as successor to USACM. Again, the Trust cooperates with those discovery requests, at the requesting party's reasonable expense.

**USACM Liquidating Trust**
**March 2009**

During the quarter, the Trust's counsel worked with the bankruptcy court staff to identify and resolve a variety of motions and adversary proceedings that had been filed during the course of the USACM jointly administered bankruptcy cases.

## IX.    LOAN SERVICING ISSUES

### A.    USA Investors VI, LLC

The owner of the Hotel Zoso f/k/a Hotel Marquis in Palm Springs – USA Investors VI, LLC ("Investors VI") – was controlled by USAIP, and is now under the control of Lisa Poulin, its trustee.

Pursuant to, among other things, a settlement with the Trust, Investors VI plan of reorganization filed by its chapter 11 trustee was confirmed on February 6, 2008 and Effective Date of the Plan was February 19, 2008.

The Trust monitored the resolution of the Investors VI case, in which the Trust has a stipulated claim.  The resolution of the case includes claims objections, particularly resolution of the disputed claims of the Pension Benefit Guaranty Corporation. Eventually, US Investors VI, LLC agreed to a $10,000 distribution on the PBGC's allowed claims exceeding $2,100,000.

In November, USA Investors VI sought entry of a final decree closing its bankruptcy case.  The Trust received a distribution on its unsecured claim in November of $93,369.64.  The Investors VI bankruptcy case was closed and a final decree was entered on January 12, 2009.  In connection with the Hotel Marquis loan, the Trust provided year-end and final tax information to the lenders.

### B.    Trust Loan Servicing - Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust were as follows as of December 22 (the foreclosure date):

|                  | Placer 1        | Placer 2        |
| ---------------- | --------------- | --------------- |
| Principal        | $31,500,000.00  | $6,500,000.00   |
| Interest         | 15,183,487.95   | 4,134,138.22    |
| Default Interest | 9,111,393.85    | 1,035,761.89    |
| Late Fees        | 2,334,174.40    | 531,706.91      |
| **Total**        | $58,129,056.20  | $12,201,607.02  |

The Trust, as servicer, reports monthly to the Direct Lenders.  Those reports are posted on the Trust's website.  As previously reported in these reports, the Trust filed a complaint and a motion for appointment of a receiver for the Placer 1 Loan in the United

254241.2

**USACM Liquidating Trust**
**March 2009**

States District Court for the District of Nevada on September 24, 2008 and assigned case no. 2:08-cv-1276. The case was assigned to United States District Judge Kent J. Dawson and United States Magistrate Judge Robert L. Johnston.

The Trust continued to work with Placer 1 and Placer 2 Lenders who are named as defendants in the Trust's action for the appointment of a receiver. Literally, hundreds of waivers of service of process were obtained from Lender defendants and filed during the quarter represented by this report.

The receivership motion was heard by the Honorable Kent J. Dawson on December 3, 2008. At the hearing, Judge Dawson directed the appointment of Elli Mills as Receiver. The Trust thereafter worked with counsel for interested parties and Mr. Mills on entry of an appropriate order directing the appointment of a receiver. The District Court's order appointing the receiver was entered on December 16, 2008.

The Receiver subsequently investigated and made the decision to conclude the foreclosure sale, which had been continued to December 22, 2008. The Receiver directed a credit bid of $8,404,030 at the December 22, 2008 foreclosure sale.

Prior to the appointment of a receiver, the Trust continued to work with interested Direct Lenders on issues concerning the Loan and the Property, including whether to take an appeal of the valuation of the Property for real estate tax purposes.

During the quarter, the Trust received as a courtesy, reports from the Placer Vineyards Management group and of its periodic meetings, assessments and other information. That information was provided to certain direct lenders and has since been turned over to the Receiver.

One effect of the foreclosure was to extinguish the lien on the Property securing repayment of the Placer 2 Note. Accordingly, the sole potential source of recovery for the Placer 2 Lenders, in addition to any proofs of claim they may filed in the USACM bankruptcy case, is the proof of claim filed by the Trust as servicer on the personal guaranties of Thomas Hantges and Joseph Milanowski.

The foreclosure of the Placer 1 Loan was completed by the Court-appointed receiver on December 22, 2008. The Trust reported about the foreclosure to the Placer 1 and Placer 2 Lenders and continues to work with the Placer 1 receiver both with respect to the Trust's claims as servicer as well as in attempting to assist the receiver in the performance of his duties.

The litigation filed by the Trust concerning the Placer loan, in which the Receiver was obtained, remains pending before the District Court. The deadline to serve unserved defendants was continued to May 22, 2009. Because of the foreclosure, the Trust sought consent to dismissal of the Placer 2 Lenders as parties to the litigation. The Receiver

254241.2

**USACM Liquidating Trust**
**March 2009**

became responsible to deal with the Placer Vineyards Development Group, LLC with respect to development of the Property. The Trust ceased-reporting to the Lenders with respect to the Placer 1 and Placer 2 Loans after December, 2008, because the Placer 2 Loan no longer had collateral and the Placer 1 Loan was in the control of the Receiver, who is providing periodic reports. The Receiver's periodic reports are posted by the Trust on the Trust's website and there fore available to all of the Placer 1 (and Placer 2) Lenders.

### C.    Compass Trust Loan Servicing – Collection of Pre-Paid Interest

The Trust is entitled to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007. Further, Compass collects from Direct Lenders and remits Pre-Paid Interest to the Trust pursuant to the Plan, including $156,471.33 on May 11, 2007. The Trust was aware of collections from Borrowers on several notes since Compass last remitted recouped prepaid interest to the Trust. The Trust has requested an accounting of the collected monies from Compass and to date continues to await that accounting, or transmittal of any additional recouped monies. As indicated above, the Trust has sued Compass to receive the monies that were to be collected and remitted pursuant to the terms of the confirmed Plan.

In the lawsuit filed by the Trust against Compass USA SPE, LLC, Compass Partners, LLC Adv. No. 08-01066-lbr, concerning disputes over certain escrows, Compass' accounting and failure to collect and remit pre-paid interest, the settlement with Silar resolved certain disputes so that Pre-Paid Interest will be netted by Compass, Silar and their successors on a Lender by Lender basis from an agreed schedule. This agreement was approved by the bankruptcy court's December 23, 2008 order.

Debt Acquisition Company of America V, LLC ("DACA"), through its affiliate, Pacific Receivables LLC, made an offer to the Trust to purchase the uncollected balance of Pre-Paid Interest liability owed to the Trust by Direct Lenders. The Trust had earlier had informal discussions with Silar and other parties potentially interested in acquiring the right to collect Pre-Paid Interest. An agreement in principle was reached with DACA for the transfer of the right to collect Pre-Paid Interest from Lenders, subject to specific terms and limitations. DACA has requested that the Agreement be approved by the Bankruptcy Court. In January, the Trustee concluded the negotiations with DACA to approve the purchase by DACA of the uncollected causes of action for prepaid interest as well as for DACA to dismiss its appeal, then pending in the United States Court of Appeals for the Ninth Circuit, of the order confirming the USACM Plan of Reorganization. The motion to approve settlement was filed on January 27, 2009. After a hearing on February 20, 2009, and after incorporating comments from interested parties, and considering objections, the Court entered an order approving the settlement and purchase. Thereafter, the Trust and DACA discovered an error in the accounting of uncollected prepaid

254241.2

**USACM Liquidating Trust**
**March 2009**

interest, and renegotiated the purchase price, which was paid by DACA.  DACA's appeal of the confirmation order was dismissed on stipulation.

## X.    TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of March 31, 2009, has been provided to the Trust Committee.  The Trust continued to make interim payments to DTDF with respect to sums due under the parties' agreement to share certain causes of action, including a payment in January, 2009.

The Trust continued to monitor the USA Investment Partners, LLC bankruptcy case, Lisa M. Poulin as trustee.  In addition to the settlement described below concerning Toblak and Tanamera, the

254241.2