# EXHIBIT B

# Curtis F. Clark

1403 Pueblo Drive  
Boulder City  
Nevada   89005

Phone: (702) 293-4603  
FAX: (702) 293-7319  
cfclark@peoplepc.com

'07 APR -4 P1 :50

U.S. BANKRUPTCY COURT  
PATRICIA GRAY, CLERK

Monday     April 02, 2007

TO:     Lewis & Roca, LLP  
3993 Howard Hughes Parkway #600  
Las Vegas, Nevada    89169

Attention:    Susan M. Freeman

Reference    USACM Liquidating Trust  
Objection to Claim of Unsecured Status  
Huntsville - West park Hill Joint Venture  
Case #   BK-S-06-10725 LBR

    USACM Liquidating Trust is a successor to the bankrupt USA Commercial Mortgage ( Debtor ). As US Trustee August Landus attempted to show ; USACM has no qualified management or employees, has no business activity, has no income. The Debtor claims no assets.

    To reorganize USACM is a pathetic miscarriage of Justice. There is nothing to reorganize. There is no reason to continue Chapter 11.

    USACM repeatedly defrauded the Creditors for the past 3 years. USACM, and its successor, USACM Liquidating Trust can not be trusted to perform any service that will benefit the Creditors.

    This action is a brazen attempt by USACM Liquidating Trust to confiscate assets belonging to the Creditors for the sole purpose to pay the Debtor's operating expenses and legal fees.

    Why should the Creditors be forced to pay the Debtors operating expenses and legal fees when the Creditors have absolutely no reason to believe USACM Liquidating Trust will do any thing for the Creditor's best interest ?

    The original Note dated March 31, 2004 and the Second Amendment dated December 8, 2004 ; was between USA Commercial Mortgage ( Lender ) and West Park Hills Joint Venture ( Borrower ). USACM then sold partial interest in the Note to individual investors. The individual Investors became the Lenders.

The Lenders are secured by a 1st Deed of Trust which lists the collateral pledged by the Borrower to secure the Note. The individual Lenders are listed as Exhibit " A ".

Any and all assets recovered from the Borrower, either by negotiation or by foreclosure are assets that belong to the Lenders of the Note dated March 31, 2004 , and the Second Amendment dated December 08, 2004.

With the exception service fees, recovered assets are not the property of the Debtor nor its successors.

### Exhibit #1

Copy of <u>Promissory Note Secured by Deed of Trust</u> dated March 31, 2004

Page 2    Paragraph 6    Collateral
" This Note is secured by the Deed of Trust executed by Borrower. as trustor in favor of Lender "

Page 2    Paragraph 8    Late Charge
" 5 % of the amount so delinquent "

Page 3    Paragraph 9    Default Rate
" 20 % per annum "

Page 3    Paragraph 11    Costs of Collection
" Borrower agrees to pay all reasonable costs .... "

### Exhibit #2

Page #1 of the <u>Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing</u> dated March 15, 2004 .

Page 1
" and those persons listed on Exhibit " A "

### Exhibit #3

Copy of the <u>Second Amendment to Deed of Trust</u> dated December 08, 2004 .

Page 4    Exhibit " A "
Item 14    First Trust Company of Onaga For Curtis Clark IRA
Pages 5 -24    Exhibit " B "
lists the properties pledged by the Borrower as collateral
    Parcel #1    9 Lots    approx 44.36 Ac    Walker Co., TX
    Parcel #2    7 Lots    approx 49.98 Ac    Montgomery Co.,

Exhibit #4

Appraised Value of Referenced Properties  -    $ 20,870,000

As a " Lender " to the Note and the Second Amendment, and a secured " Beneficiary " of the Deed of Trust, I am entitled to my pro-rata share of all Principle, Late Fees, Default Interest, Collection Costs and all Assets obtained by foreclosure.

Furthermore , after April 13, 2006 , the management of Meserow Financial ( Tom Allison and Mark Olsen ) did willfully and with the intent to deceive the Investors, withheld vital information about the Note and the Borrower.  We now know, the Note had been in Default for 16 + months; and, the Borrower had already filed for bankruptcy.

USACM failed their fiduciary responsibility; they did nothing to protect the Lender's investments.  Why should USACM make the effort ?  Other than collecting service fees, **USACM had no financial interest in the Note. The Note was owned by the individual Lenders.**

Due to these intentional actions by the Debtor, and Meserow Financial, to defraud the Creditors, my original claim was under estimated by more than $ 10,000.  I request the opportunity to refile my claim, based on accurate information that was unavailable prior to the Claim deadline date.

*[signature]* for First Trust Company of Onaga fbo Curtis Clark - IRA Account # 41000767800

April 03, 2007
Date

Copy to :   Geoffry L. Berman, Trustee
            BMC Group
            Lenders Protection Group

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$9,000,000.00


COPY

Las Vegas, Nevada
March 31, 2004

This Promissory Note ("Note") is executed pursuant to the Construction Loan Agreement (the "Loan Agreement") dated as of March 31, 2004, ("Borrower"), and ("Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Nine Million Dollars ($9,000,000.00) (the "Note Amount"), as provided in the Loan Agreement, together with interest as provided herein. Pursuant to the Construction Loan Agreement of even date herewith, the loan amount shall be disbursed in installments as follows:

1. **Interest Rate.** Interest shall accrue on the full Note Amount, from the date the Deed of Trust is recorded until the date the Note Amount is paid in full, at the rate of twelve and one half percent (12.5%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. Accrued but unpaid interest shall be compounded monthly.

2. **Payments.** Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears. For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day. All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3. **Maturity Date.** The term of this Note shall be for a period of twelve (12) months from the date the Deed of Trust is recorded. If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on the Maturity Date.

4. **Application of Payments.** All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued interest then payable. This Note is entitled to all of the rights, benefits and privileges provided for in the Loan Agreement as it may from time to time be supplemented, modified or amended. The Loan Agreement, among other things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events.



5. <u>Prepayment</u>. Maker agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Maker may prepay this Note in part or in full without penalty.

6. <u>Collateral</u>. This Note is secured by (1) the Deed of Trust (the "Deed of Trust") executed by Borrower, as trustor, in favor of Lender, as beneficiary, covering certain real property located in the County of Walker, State of Texas (the "Property"), and (2) all other existing and future Security Documents.

7. <u>Defaults; Acceleration</u>. The occurrence of any Event of Default as defined in the Loan Agreement shall be a default hereunder. Upon the occurrence of an Event of Default, Lender may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Borrower hereunder and under the Loan Documents, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under the Note, the Deed of Trust or any other Loan Document shall become and be immediately due and payable, anything in this Note or in the Deed of Trust to the contrary notwithstanding.

8. <u>Late Charge</u>. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date or, if accelerated as permitted by this Note or any other Loan Document, by the payment date given in the acceleration notice, the holder hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the holder hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7, and without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including the timely payment of any accelerated amount.. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to collect such delinquent payments and

-2-

any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9. **Default Rate.** From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded. 

10. **Waivers.** Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note (other than notices expressly required by the terms of the Loan Agreement). Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11. **Costs of Collection.** Borrower agrees to pay all reasonable costs of collection when incurred and all costs incurred by the holder hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to reasonable attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12. **Sale or Other Encumbrances.**

    (a)    In order to induce Lender to make the loan secured hereby, Borrower agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold (except sales for which a partial release of the Deed of Trust shall be made pursuant to the Loan Agreement), assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Borrower whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare this Note and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower



shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Borrower shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Lender's security for the indebtedness secured hereby. Moreover, Lender has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Lender's security if junior financing, except as shall be permitted by Lender, or if other liens or encumbrances should attach to the Mortgaged Property.

(b)     Borrower may request Lender to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c)     In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Borrower, the Lender may deal with such successor or successors in interest with reference to this Note or the Deed of Trust in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of Borrower under this Note, the Deed of Trust or the other Loan Documents. No sale of Borrower's interest in the Mortgaged Property, no forbearance on the part of Lender, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under this Note, the Deed of Trust and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to the Deed of Trust. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 12(a).

13.     Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

- 4 -

14. <u>Notices</u>. Any and all notices, demands and/or communications described herein, or which may be necessary or appropriate hereunder, shall be given as provided in the Deed of Trust.

15. <u>Assignment By Lender</u>. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder; provided, however, that any such assignment shall in no way affect Lender's obligation to fund the Loan pursuant to the Loan Agreement and terms hereof.

16. <u>Multiple Parties</u>. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

17. <u>Construction</u>. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

18. <u>Partial Invalidity</u>. If any court of competent jurisdiction declares any section or provision of this Note invalid or unenforceable, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

19. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b) BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT,

ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 14 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)   BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

BORROWER:   West Hills Park Joint Venture

Curtis Devt., L.L.C., a Texas limited liability company, General Partner

By: _____
Tom Curtis, Manager

JA Development, L.C. a Texas limited liability company, General Partner

By: _____
Alvin L. Freeman, Manager

- 6 -

2004-036471

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
Return to:
WALKER COUNTY TITLE COMPANY
1109 UNIVERSITY AVENUE
HUNTSVILLE, TEXAS 77340
GF# 2403271

When Recorded, Return To:  USA Capital
4484 South Pecos Road
Las Vegas, NV 89121



COPY

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust"), made this 15th day of March, 2004, by and between West Hills Park Joint Venture, a Texas general partnership ("Trustor"), Scott K. McDonald, Esq., whose address is 2626 Cole Avenue, Suite 900, Dallas, Texas 75204 ("Trustee"), and those persons listed on Exhibit "A" hereto (collectively, "Beneficiary"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in that certain Loan Agreement ("Loan Agreement") of even date herewith between Trustor and Beneficiary.

## WITNESSETH:

That for good and valuable consideration, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, and for the purpose of securing, in such priority as Beneficiary may elect, each of the following:

1. The due, prompt and complete payment, observance, performance and discharge of each and every obligation, covenant and agreement contained in Trustor's promissory note of even date herewith in the initial principal amount of Nine Million Dollars ($9,000,000) (the "Note"), together with interest thereon specified therein, payable to the order of Beneficiary and any and all modifications, extensions or renewals thereof, whether hereafter evidenced by the Note or otherwise, and whether advanced now or in the future; and

2. The payment of all other sums, with interest thereon at the rate of interest provided for herein or in the Note, becoming due or payable under the provisions of this Deed of Trust, the Loan Agreement or any other instrument or instruments heretofore or hereafter executed by Trustor having reference to or arising out of or securing the indebtedness represented by the Note; and

3. The payment of such additional sums and interest thereof which Beneficiary may hereafter loan to Trustor, or to its successors or assigns, whether or not evidenced by a promissory note or notes which are secured by this Deed of Trust; and

1



Case 06-10725-gwz    Doc 7130-2    Entered 05/20/09 15:20:46    Page 12 of 18



Exhibit 3

Return to
WALKER COUNTY TITLE COMPANY
1109 UNIVERSITY AVENUE
HUNTSVILLE, TEXAS 77340
GF# 2403271A-1

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

COPY

2004-138283

## SECOND AMENDMENT TO DEED OF TRUST

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Trustor hereby agrees to the execution, delivery, and recording of this Amendment to that certain Deed of Trust, Assignments of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") dated March 15, 2004 executed by **West Hills Park Joint Venture** to Scott K. McDonald, Esq. as Trustee, in favor of those persons listed on Exhibit "A" as Beneficiaries. The Deed of Trust was recorded on April 7, 2004 as Document No. 2004-036471 in the Official Records of Montgomery County, Texas and on April 7, 2004 as Document No. 02831 in the Official Records of Walker County, Texas, and a First Amendment to Deed of Trust was recorded on September 3, 2004 as Document No. 2004-101650 in the Official Records of Montgomery County Texas and on September 9, 2004 as Document No. 07620 in the Official Records of Walker County, Texas.

Said Deed of Trust is hereby amended to increase the amount secured thereby from $9,250,000 to $10,000,000, to add a new Exhibit "A" (in the form attached hereto) thereto to reflect the present Beneficiaries.

Said Deed of Trust affects the real property described on Exhibit "B" hereto.

Dated this _8_ day of ~~November~~ December, 2004.

**TRUSTOR: West Hills Park Joint Venture**

Curtis Dev't., L.L.C., a Texas limited liability company, General Partner

By: _____
Tom Curtis, Manager

JA Development, L.C. a Texas limited liability company, General Partner

By: _____
Alvin L. Freeman, Manager

**BENEFICIARY:** USA Commercial Mortgage Company, Attorney-in-Fact

By: _____
Joseph D. Milanowski, President

1

00000075  Bk  OR  Vol  668

STATE OF NEVADA    )
                   ) ss
COUNTY OF CLARK    )

On __11/16__, 2004, before me, __LynDA Stewart__, a Notary Public in and for said State, personally appeared **Joseph Milanowski as President of USA Commercial Mortgage Company** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

__/s/ Lynda Stewart__
Signature

[Notary Seal: LYNDA STEWART, Notary Public, State of Nevada, Appointment No. 94-5332-1, My Appt. Expires Feb. 4, 2007]

STATE OF __Texas__   )
                     ) ss.
COUNTY OF __Walker__ )

On __Dec. 10__, 2004, before me, __Hurlene Savage__, a Notary Public in and for said State, personally appeared **Tom Curtis as Manager of Curtis Devt., LLC** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

__/s/ Hurlene Savage__
Signature

[Notary Seal: HURLENE SAVAGE, Notary Public, State of Texas, Expires 9-30-2005]

2

STATE OF TEXAS )
) ss.
COUNTY OF HARRIS )

On December 7, 2004, before me, Tina A. Hayden, a Notary Public in and for said State, personally appeared **Alvin L. Freeman as Manager of JA Development, LC** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Tina A. Hayden_
Signature

(Seal)
TINA A. HAYDEN
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 26, 2005

3

000000075  Bk OR  Vol 668  Pg 848

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

## EXHIBIT "A"

### LENDERS

| | Names | Amount |
|---|---|---|
| 1. | Kenneth Addes & Victoria Addes, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 2. | Philip Aldred & Hedwig J Aldred Trustees of the Aldred Living Trust 2002 U/A dated 10/18/02 | $100,000 |
| 3. | Gary K Ashworth, a married man dealing with his sole & separate property & Dan Schapiro, a married man dealing with his sole & separate property, as tenants in common | $50,000 |
| 4. | Harry N. Bergman & Jean E. Gray a/k/a Jeanne E. Pierce a/k/a Jeanne Greenfield Trustees of the Harry N. Bergman Amended & Restated Revocable Living Trust dated 9/29/04 | $25,000 |
| 5. | Virgil L. Birgen & La Donna F. Birgen Trustees of the Birgen Charitable Trust dated 8/1/90 | $100,000 |
| 6. | Wayne Dotson Co., a Nevada company | $50,000 |
| 7. | Janice W. Bradbury Trustee of Bradbury Family Trust dated 12/20/88 | $100,000 |
| 8. | Anita J. Calhoun, a married woman dealing with her sole & separate property | $50,000 |
| 9. | James Cameron & Kirsten Cameron, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 10. | Ralph F. Cameron Trustee of the Cameron Survivors Trust dated 12/22/97 for the benefit of his children John Cameron & Katherine Cameron-Hoffman | $100,000 |
| 11. | Maurice A. Cauchois & Jacqueline M. Cauchois Trustees of the M & J Cauchois Family Trust dated 2/25/93 | $50,000 |
| 12. | Tracy Cavin Trustee of the Tracy Cavin Family Trust UTD 11/10/03 | $60,000 |
| 13. | Billie R. Cislaghi Trustee of the Billie R. Cislaghi Trust | $100,000 |
| 14. | First Trust Company of Onaga Custodian For Curtis Clark IRA | $50,000 |
| 15. | L. Kanani Cohune | $50,000 |
| 16. | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | $50,000 |
| 17. | Rose M. Costa, a single woman | $50,000 |
| 18. | Sam Costanza Trustee of the Costanza 1987 Survivor's Trust dtd 3/12/87 | $50,000 |
| 19. | Dennis Dalton & Barbara Dalton, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 20. | Sam Dashosh & Ruth Dashosh Trustees for the Dashosh Family Trust | $85,000 |
| 21. | James D. Dery & Ann R. Dery, husband & wife | $50,000 |
| 22. | Eric C. Disbrow Trustee of the Eric C. Disbrow MD Inc. Profit Sharing Plan | $50,000 |
| 23. | Shirley Doerr, an unmarried woman | $50,000 |
| 24. | William A. Drago & Loraine A. Drago, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 25. | Edward D. Earl, an unmarried man | $50,000 |

4


Exhibit "4"

# COMMERCIAL REALTY ADVISORS, INC.
Real Estate Investment Services

October 23, 2003

San Felipe Mortgage Company
Continental Funding
Preston Ramsey
West Hills Park Joint Venture
Old Standard Life Insurance

Re:  Summation Letter of our Appraisal Reports of the various parcels within the West Hill commercial development located in the northwest quadrant of Interstate Highway 45 and State Highway 30, Huntsville, Walker County, Texas 77340.

Gentlemen:

Per your request, we have made an investigation and analysis of the referenced properties. This letter is meant to summarize the conclusions that are presented in the separate appraisal reports that have been completed on the various properties that we have appraised in the referenced development. This letter is not meant as a "stand alone" document and all data, analysis, and conclusions that are presented in the separate appraisal reports on the properties that are referenced in this letter are incorporated herein by reference.

The values of the various properties as set forth in the referenced appraisal reports are as follows:

| Property Designation | Acreage Size | Appraised Value |
|---|---|---|
| Parcel A | 7.585 | $ 3,300,000 |
| Parcel B | 4.042 | $ 2,110,000 |
| Parcel C | 4.049 | $ 2,120,000 |
| Parcel D | 5.814 | $ 2,530,000 |
| Parcel D Pad Sites | 2.000 | $ 1,060,000 |
| Reserve A | 3.533 | $ 2,310,000 |
| Reserve B | 0.987 | $   640,000 |
| Reserve E | 1.290 | $   790,000 |
| Reserve F | 0.820 | $   500,000 |
| Reserve G | 2.311 | $ 2,010,000 |
| Reserve H | 1.782 | $ 1,550,000 |
| Reserve K | 1.931 | $ 1,180,000 |
| Reserve L | 1.467 | $   770,000 |
| Gross Retail Sellout | 37.611 Ac | $20,870,000 |

$555,000/Ac

8260 Liberty Park, Suite 100

October 23, 2003
Page 2 of 2

The properties that were the subject of the referenced appraisal reports are part of a master planned development and derive a portion of their respective values from their location within the master planned development. A master planned development such the West Hill development allows the owner of the development to balance the various users with each other to enable each of the end users of the various parcels in the development to control the type and amount of competition that they will experience and this factor, therein, increases the value of the individual parcels in the development.

Please feel free to contact our office at your convenience should you have any questions concerning this letter.

Respectfully submitted,
COMMERCIAL REALTY ADVISORS, INC.


Robert J. Thompson, MAI
Inspecting Field Appraiser
State Certified, TX-1320267-G

RJT/bdm

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA
## PROOF OF CLAIM

**Name of Debtor:** USA Capital Mortgage

**Case Number:** BK-S-06-10725 LBR

NOTE: See Reverse for List of Debtors and Case Numbers.
This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor and Address:**
1st Trust of Omaga Pro
Curtis F. Clark - IRA

**Creditor Telephone Number** ( ) 702 293-4603

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court or BMC Group in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the court.

DO NOT FILE THIS PROOF OF CLAIM FOR A SECURED INTEREST IN A BORROWER THAT IS NOT ONE OF THE DEBTORS.

If you have already filed a proof of claim with the Bankruptcy Court or BMC, you do not need to file again.

**THIS SPACE IS FOR COURT USE ONLY**

Last four digits of account or other number by which creditor identifies debtor:

Check here ☒ replaces / ☐ amends a previously filed claim dated: Oct 6, 2006

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other (describe briefly) Theft of Assets
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #:
  Unpaid compensation for services performed from: ___ to ___
- ☐ Unremitted principal
- ☐ Other claims against servicer (not for loan balances)

**2. DATE DEBT WAS INCURRED:**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**UNSECURED NONPRIORITY CLAIM** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**UNSECURED PRIORITY CLAIM**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
Amount entitled to priority $ _____
Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,000)*, earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**SECURED CLAIM**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief description of collateral:
☒ Real Estate    ☐ Motor Vehicle    ☐ Other _____
Value of Collateral: $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 20,870,000

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( ___ ).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:** $ _____ (unsecured) $ 64,741 (secured) $ _____ (priority) $ 64,741 (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. DATE-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

The original of this completed proof of claim form must be sent by mail or hand delivered (FAXES NOT ACCEPTED) so that it is actually received on or before 5:00 pm, prevailing Pacific time, on November 13, 2006 for each person or entity (including Individuals, partnerships, corporations, joint ventures, trusts and governmental units).

**BY MAIL TO:**
BMC Group
Attn: USACM Claims Docketing Center
P. O. Box 911
El Segundo, CA 90245-0911

**BY HAND OR OVERNIGHT DELIVERY TO:**
BMC Group
Attn: USACM Claims Docketing Center
1330 East Franklin Avenue
El Segundo, CA 90245

**THIS SPACE FOR COURT USE ONLY**

**DATE** March 29, 2007

**SIGN** and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Curtis F. Clark - Trustee

Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571