EXHIBIT 1

1962760.1

UNITED STATES BANKRUPTCY COURT

   DISTRICT OF NEVADA

------------------------------x

| | |
|---|---|
| USA COMMERCIAL MORTGAGE | ) |
| COMPANY; USA CAPITAL REALTY | )Case Nos. |
| ADVISORS, LLC; USA CAPITAL | )BK-S-06-10725 LBR |
| DIVERSIFIED TRUST DEED FUND, | )BK-S-06-10726 LBR |
| LLC; USA CAPITAL FIRST TRUST | )BK-S-06-10727 LBR |
| DEED FUND, LLC; USA | )BK-S-06-10728 LBR |
| SECURITIES, LLC, | )BK-S-06-10729 LBR |
| Debtors.) | |

------------------------------x

                November 7, 2007

                9:58 a.m.

     Rule 2004 Examination of DANIEL GERALD HAYES, held at the law offices of Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York, pursuant to subpoena, before Donald R. DePew, an RPR, CRR and Notary Public within and for the State of New York.

```
 1
 2  A P P E A R A N C E S:
 3
 4  Attorneys for USA Commercial Mortgage
 5  Liquidating Trust
 6       DIAMOND McCARTHY LLP
 7       Two Houston Center
 8       909 Fannin, Suite 1500
 9       Houston, Texas 77010
10  BY:  MICHAEL J. YODER, ESQ.
11       STEPHEN T. LODEN, ESQ.
12
13  Attorneys for the Witness
14       MOSES & SINGER LLP
15       The Chrysler Building
16       405 Lexington Avenue
17       New York, New York 10174-1299
18  BY:  MARK N. PARRY, ESQ.
19       ERICA D. BUSCH, ESQ.
20
21  ALSO PRESENT:
22       MARGUERITE HOWELL, Videographer
23
24
25
```

```
            1              Daniel Gerald Hayes
12:26:03    2   "HFAH-Asylum."
12:26:08    3        A.   Uh-huh.
12:26:08    4        Q.   You said earlier that was not a loan?
12:26:10    5        A.   That's true.
12:26:13    6             MR. YODER:  I'll ask the court reporter
12:26:14    7   to mark this as Exhibit 5.
12:26:16    8             (Hayes Exhibit 5, Three-page document,
12:26:16    9   bearing Bates stamp Nos. HFAH 001749 through
12:26:16   10   HFAH 001751, marked for identification, as of
12:26:16   11   this date.)
12:26:35   12        Q.   Do you recognize the handwriting on the
12:26:37   13   first page?
12:26:40   14        A.   No.
12:26:44   15        Q.   Does that resemble the handwriting of
12:26:46   16   Joyce Timberlake?
12:26:49   17        A.   I actually don't know her handwriting
12:26:51   18   well enough.
12:26:53   19             Of the people who might have written
12:26:54   20   it in my office, it would have either have been
12:26:57   21   Joyce Timberlake or Jessica MacFarlane.
12:27:03   22        Q.   Just take a moment to read the e-mail
12:27:05   23   on the second page.
12:27:07   24        A.   Okay.
12:27:08   25             (Witness looks at document.)
```

dd988ed2-0907-407d-88c5-36406a2b1bff

```
              1              Daniel Gerald Hayes
12:27:26      2         A.   Uh-huh.
12:27:27      3         Q.   Do you see the first sentence, it says,
12:27:31      4    "Where HFAH Asylum LLC stands is it used USA
12:27:35      5    Capital funds to purchase the first and third
12:27:37      6    mortgages to perfect its lien rights in the
12:27:41      7    foreclosure or as a secured creditor in the
12:27:43      8    bankruptcy."
12:27:43      9         A.   Uh-huh.
12:27:44     10         Q.   Do you see that?
12:27:45     11         A.   Yeah.
12:27:47     12         Q.   And if you look down to the third
12:27:49     13    paragraph, the sentence that begins with "Since."
12:27:52     14              It says, "Since we have not repaid the
12:27:55     15    monies used to acquire that mortgage there is a
12:27:58     16    good chance that the beneficiary of that would be
12:27:59     17    the representatives of the providers of monies
12:28:01     18    through USA Capital."
12:28:05     19         A.   Uh-huh.
12:28:05     20         Q.   Earlier when you said that this
12:28:08     21    transaction was not a loan, was it not a loan
12:28:10     22    solely -- did you say it was not a loan solely
12:28:13     23    because there was no loan agreement executed?
12:28:15     24         A.   No, I did not say that.
12:28:17     25              I -- because clearly I could have a
```

Page 122

1                Daniel Gerald Hayes

```
12:28:19   2  loan without a loan agreement.  I can give you $10
12:28:21   3  and you and I could have an understanding that
12:28:23   4  you're going to pay it back to me.
12:28:25   5       Q.   Why did you say it wasn't a loan then?
12:28:28   6       A.   Because in this case $10 was given to
12:28:32   7  you and you and I have made clear under what basis
12:28:37   8  you have the $10.  It's clear that you haven't
12:28:41   9  returned it.  It's clear that whoever owns that
12:28:44  10  $10 might want it back.
12:28:52  11       Q.   Look back on the first page --
12:28:54  12       A.   Uh-huh.
12:28:55  13       Q.   -- where it says interest for
12:28:57  14  $1,343,160.
12:29:01  15       A.   Uh-huh.
12:29:01  16       Q.   Do you see that?
12:29:02  17       A.   Yeah.
12:29:03  18       Q.   Do you see below that it says loan fees
12:29:05  19  for $240,000?
12:29:07  20       A.   Uh-huh.
12:29:08  21       Q.   Do you know why Joyce Timberlake or
12:29:10  22  Jessica MacFarlane would have performed an
12:29:12  23  interest or loan fee calculation if there were no
12:29:16  24  loan?
12:29:17  25       A.   Well, I --
```

dd988ed2-0907-407d-88c5-36406a2b1bff

Page 123

```
                1           Daniel Gerald Hayes
12:29:18        2           Which question are you asking, the
12:29:20        3    interest or the loan fees?
12:29:21        4       Q.   Either one.
12:29:22        5       A.   Okay.  Interest, interest for the
12:29:28        6    monies that were advanced here was reported in our
12:29:32        7    accounting software, because whoever was directing
12:29:35        8    the accounting at the time that the advances were
12:29:39        9    made treated it as a loan and so they booked
12:29:45       10    interest.
12:29:45       11       Q.   How do you think they arrived upon an
12:29:48       12    interest rate?
12:29:49       13       A.   I don't know.
12:29:55       14       Q.   If you'll turn back to the second page,
12:29:59       15    the last paragraph.
12:30:01       16       A.   Yeah.
12:30:01       17       Q.   "We have a tremendous and uncertain
12:30:03       18    exposure inasmuch as no loan was ever negotiated
12:30:07       19    or documented although funds were conveyed in
12:30:10       20    2004."
12:30:11       21       A.   Uh-huh.
12:30:12       22       Q.   What did you mean there when you wrote
12:30:13       23    tremendous and uncertain exposure?
12:30:16       24       A.   Well, tremendous means what tremendous
12:30:20       25    means.  It means large.  The amount in controversy
```

dd988ed2-0907-407d-88c5-36406a2b1bff

```
                1         Daniel Gerald Hayes
12:30:23    2   here is $5 million.  For me $5 million is large.
12:30:29    3             Uncertain exposure means that clearly
12:30:34    4   if $5 million was advanced -- and there is really
12:30:37    5   no doubt in my mind that the $5 million was
12:30:40    6   advanced -- and it wasn't a gift, then it would be
12:30:47    7   nice to be able to characterize it.  And writing
12:30:51    8   the e-mail as I apparently did in 2007, but
12:30:54    9   knowing that the circumstances happened in 2004,
12:30:57   10   it's very difficult to close out my financial
12:31:01   11   statements for the year when the parties didn't
12:31:04   12   take the trouble to characterize a $5 million
12:31:08   13   transaction.
12:31:08   14             And at least on the books of Homes for
12:31:12   15   America Holdings $5 million is also -- maybe
12:31:17   16   tremendous is not the right word, it's clearly
12:31:19   17   very, very material, it clearly would require a
12:31:22   18   note.  And I just didn't need another note to the
12:31:24   19   financial statements that already had a lot of
12:31:26   20   notes.
12:31:26   21        Q.   So how did you handle this issue on the
12:31:29   22   financial statements?
12:31:30   23        A.   Ultimately we did not obtain audited
12:31:34   24   statements for the year.
12:31:40   25        Q.   As a result of some of the
```

```
               1         Daniel Gerald Hayes
12:31:42       2  documentation issues that you discussed earlier?
12:31:44       3       A.    It was a result of -- audited
12:31:49       4  statements were essentially not required by any of
12:31:52       5  the instruments that Homes for America Holdings is
12:31:56       6  tied to.  And since they're not required to be
12:32:00       7  delivered and since they, in fact, would once
12:32:05       8  prepared and delivered need to be produced, you
12:32:07       9  know, if someone asked for them.  And since they
12:32:09      10  would actually make it very difficult for us to
12:32:11      11  represent our financial condition and would raise
12:32:13      12  more problems than I liked, we didn't continue
12:32:19      13  with them.
12:32:22      14       Q.    When you say raise more problems than
12:32:24      15  you liked, what sorts of problems are you talking
12:32:27      16  about there?
12:32:28      17       A.    Audited statements that have a
12:32:30      18  financial statement note that flags a $5 million
12:32:35      19  uncharacterized transaction in the financial
12:32:38      20  statements indicates a problem with how you
12:32:40      21  conduct your business operations.
12:32:43      22       Q.    What sorts of other flags were there or
12:32:47      23  is this the only one?
12:32:48      24       A.    I don't recall at this time.
12:32:51      25       Q.    You don't recall?
```