```
 1                UNITED STATES BANKRUPTCY COURT

 2                     DISTRICT OF NEVADA

 3                      LAS VEGAS, NEVADA

 4   In re:  USA COMMERCIAL MORTGAGE  )  E-Filed:  06/01/09
     COMPANY,                         )
 5                                    )
                 Debtor.              )  Case No.
 6                                    )  BK-S-06-10725-LBR
     _____)  Chapter 11
 7

 8

 9

10

11            PARTIAL TRANSCRIPT OF PROCEEDINGS
                             OF
12                    JUDGE'S RULING
                             ON
13                  SHOW CAUSE HEARING
          WHY CURTIS F. CLARK HAS NOT VIOLATED
14    FEDERAL BANKRUPTCY RULES 9011 AND 9018, NO. 7109
                          VOLUME 1
15          BEFORE THE HONORABLE BRUCE A. MARKELL
                UNITED STATES BANKRUPTCY JUDGE
16
                   Friday, May 29, 2009
17
                         9:30 a.m.
18

19

20

21

22

23   Court Recorder:      Helen C. Smith

24

     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

Cline Transcription Services, Inc.  (702) 644-1123

```
 1   APPEARANCES:

 2   For Curtis F. Clark:      MATTHEW Q. CALLISTER, ESQ.
                               MATTHEW P. PAWLOWSKI, ESQ.
 3                             Callister & Reynolds
                               823 Las Vegas Boulevard South
 4                             Las Vegas, Nevada 89101

 5   For the USACM             ROB CHARLES, JR., ESQ.
     Liquidating Trust:        Lewis and Roca, LLP
 6                             3993 Howard Hughes Parkway
                               Suite 600
 7                             Las Vegas, Nevada 89169

 8   Also Present:             CURTIS F. CLARK

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     (Court previously convened at 09:34:09 a.m.)
2     (Partial transcript at 10:12:15 a.m.)
3         THE COURT:  All right.  All right.  Let me rule now.
4  These will constitute my findings of fact and conclusions of
5  law.  I do not intend to write anything further on this.
6     A couple of things, and then let me just kind of go in
7  order.  I think today there's a concession by Mr. Clark through
8  his attorney that what was submitted and what's been admitted
9  into evidence as Document 6183, Pleading 6183, did, in fact,
10 violate Rule 9011 and 9018.
11    Thus, the focus, really, of the hearing today for me was
12 whether or not there was sufficient cause to refer this to the
13 district court as I have to under Dyre (phonetic) for purposes
14 of conducting further investigations with respect to whether it
15 was criminal and, thus, would result in, presumably, a trial in
16 district court on that merit.
17    Let me start backwards because I think there are
18 violations of Rule 9011, 9018, and the possible criminal
19 referral, also potential violations under the inherent power of
20 the Court.
21    I have decided not to refer the matter as a criminal
22 matter.  I think and believe that it would be difficult to
23 establish the requisite criminal intent under United States
24 versus Kirk and United States versus Thoreen, 641 F .2d 684 and
25 653 F .2d 1332, and the more recent cases of U.S. versus Doe,

1     125 F .3d 1249, and Federal Trade Commission versus
2     American National Cellular, 868 F .2d 315.
3         Although their disagreement between my understanding of
4     the case isn't what counsel has put forward in the pleadings, I
5     do believe that Mr. Clark was animated by frustration.
6         That doesn't excuse it.  That simply indicates I think
7     the criminal intent, the mens rea, would be difficult to
8     prove.
9         And at that point, you know, further attention to this I
10    think magnifies and republishes if you will the scandalous and
11    horrid things that were said.  And at some point, it has to
12    come to an end.
13        There's a story about Mr. Justice Holmes who is actually
14    one of the first Supreme Court justices to actually use law
15    clerks that one day he and (indiscernible) used to have a habit
16    of walking at lunch.
17        That one day he was walking at lunch with one of his
18    clerks, and he came to a railroad trestle, one of those types
19    of things that indicates the end of the tracks, and he says,
20    son, salute that, and the clerk saluted first and asked later
21    why.
22        Mr. Justice Holmes said there are very few things in this
23    life that come to an end.  And when you see them, they're
24    deserving of respect.  I would like this to come to an end.
25        To that end, as I said, I do not think a criminal referral

1    is warranted under the facts, although there may have been
2    criminal contempt, but I don't think that it rises to the level
3    that I would send it to the district court.
4        That being said, I think the sanctions that flow civilly
5    are probably more than or somewhat more than what has been
6    indicated here.
7        First, let me start with some of the easy ones.  First, I
8    will order the pleading stricken -- that's Document No. 6183 --
9    and taken off the record of the court or taken off the docket
10   of the court.
11       Second, as a combined sanction both under Rule 9018 and
12   9011, I am going to adopt counsel's suggestion that Mr. Clark
13   vet through me instead of Judge Riegle any pleadings that he
14   intends to file in any of the USA Commercial Mortgage cases
15   which is pretty standard.  That vetting would be simply for the
16   language that is being used.
17       I do not want and will not censor in the sense of the
18   substantive statements that he wishes to make simply the
19   characterizations as we have talked about today, hyperbole or
20   what have you.
21       We're here I think not because Mr. Clark is upset with the
22   process, but we're here because Mr. Clark expressed that in
23   ways that are unacceptable in any civil society, so I will
24   simply vet that, and vet it at a pretty low standard.
25       That is to say I certainly do not want to squelch a desire

1    to indicate a displeasure with the process if appropriate or a
2    proposed action if appropriate, but I think as I said in my
3    order to show cause something that exceeds the bounds of
4    advocacy will not be permitted.
5             MR. CALLISTER:  I understand, your Honor.
6             THE COURT:  That also not only will extend to
7    Mr. Clark, but to any group or subgroup which purports to
8    represent the interest of Mr. Clark.
9        That is to say it would be too easy to evade the court
10   order by simply having the statements moved to someone else who
11   purports to represent him formally or informally.  Now this may
12   cause problems.
13       I understand that they're (indiscernible), and this is
14   prompted by the fact that in his declaration which I have taken
15   and read that he says he's a member of a very large group of
16   unsecured creditors and who have sought from the outset of this
17   case to recover any sums possible that to the extent that any
18   formal or informal grouping exists of which Mr. Clark is a
19   member.  As he states in his declaration, this prefiling
20   injunction will extend.
21       Now, if there's any question, obviously, they can say we
22   don't represent Mr. Clark.  And in which case, he doesn't pick
23   up the benefit of that representation, so much the better in
24   the sense of that would form a part of the sanction here.
25       You will not be able to join a member of the group if they

1  don't want to take on the disabilities that I am putting on him
2  here.
3       I also don't want to review everything that's filed in
4  USACM.  Although if they want to represent Mr. Clark under
5  those circumstances, I will be able to do so.
6       Also, I will add that there will be absolutely no
7  extensions of any time deadlines because of this requirement.
8  That means that it will have to be done in advance.
9            MR. CALLISTER:  I understand, your Honor.
10           THE COURT:  Mr. Charles.
11           MR. CHARLES:  We have not worked through almost
12 200,000,000 or -- no.  I'm sorry -- almost 400,000,000 of
13 claims.
14      I'm pretty sure Mr. Clark's secured claim is in a pot that
15 at some point we have to figure out, and we will work with
16 Mr. Clark if we object to the claim, so that he's not
17 prejudiced by that.
18      But I'm also not going to be in a situation where he
19 couldn't file a response to a claim objection because he gets
20 caught up in an omnibus, so we'll make every effort to avoid
21 any prejudice to Mr. Clark in that regard if that's all right
22 with you.
23           THE COURT:  How could I object to you not working so
24 as to avoid any prejudice to Mr. Clark?
25           MR. CHARLES:  I understand.

1          MR. CALLISTER:  I was waiting to see what the
2   objection was.
3          THE COURT:  All right.  So, point 1, strike the
4   pleading.  Point 2, the prevetting process.  Point 3 is one
5   that I'm going to add that has not been mentioned in the papers
6   thus far, and it links to point 2.
7       Within the next six months, I want Mr. Clark to take a
8   class in civil discourse.  This is prompted by paragraph 32 of
9   his declaration that says, "Declarant" -- meaning Mr. Clark --
10  "should be educated about his mistakes specifically as to what
11  language is and is not permitted in court-filed pleadings."
12       I would ask that as his attorney or whatever you submit to
13  me, you know, three potential courses he will take within the
14  next -- I'm looking for something that's at least an hour if
15  not more.
16         MR. CALLISTER:  Okay.
17         THE COURT:  As a former educator, I think education
18  does work.  And, in fact --
19         MR. CALLISTER:  And this was in civil discourse,
20  your Honor?
21         THE COURT:  Well, civil discourse or permitted
22  discourse if you will, civil as opposed to uncivil --
23         MR. CALLISTER:  I understand.
24         THE COURT:  -- discourse.  My own preliminary
25  research indicates that there are probably a number of such

1    programs out there that are available.
2        That's why I say, you know, within the next month I would
3    ask that you submit a list of three or more to me, and I'll
4    approve those, so that he knows that it's approved before he
5    attends.
6        And once that class is completed -- and I would ask him to
7    submit evidence of that.
8            MR. CALLISTER: Um-h'm.
9            THE COURT: And I would link that to point 2. That
10   is once that class is completed I will remove the restriction
11   with respect to prefiling pleadings.
12           MR. CALLISTER: We appreciate that.
13           THE COURT: I will also indicate that if, in fact,
14   that's removed and he resumes the activity here I would not
15   hesitate to immediately send out across the street for purposes
16   of criminal prosecution.
17           MR. CALLISTER: I understand, your Honor.
18           THE COURT: In essence, I take Mr. Clark as a gruff
19   person used to rougher discourse than we see in court
20   pleadings, and, I mean, I think what he did was objectionable,
21   more than objectionable.
22       I don't think it rises to the level of criminal because as
23   you have pointed out in your papers I'm very desirous of
24   protecting of the First Amendment.
25       But at the same point, there are limits. For example, as

1  I indicated when he first got on the stand, the First Amendment
2  doesn't protect you in court from perjury.
3       Similarly, if Mr. Clark did not like a particular
4  candidate in a political election, he couldn't spray-paint over
5  the person's name when he walked into the ballot box.
6       There are limitations on the ways in which people can
7  express their displeasure with the system but, yet, still work
8  within it, and I think the three items that I have proposed I
9  think actually put a significant restriction on Mr. Clark.
10      But, also, in the words of 9011, it is supposed to be a
11 sanction that not only acts as a deterrent to Mr. Clark's
12 future transgressions, but the people similarly situated.
13      And in this case, striking the pleading, putting a
14 prefiling requirement in until such time as some mandatory
15 education has been completed, hopefully, will send the message
16 that the bankruptcy court is a court that will listen to all
17 complaints, but the complaints have to be formed in a way in
18 which they're within the reasonable bounds of advocacy.
19      The fourth thing I would add -- and this is I think more
20 easy to comply with, but I think, hopefully, it is responsive
21 to some of Mr. Clark's concerns -- I would also like a report
22 within a month as to what steps he's taken to express his
23 displeasure at the system.
24      If, in fact, his comments indicate that he had concerns
25 with the actions of professionals or the Court, I take it today

1  that he felt that those were futile.  I don't think they are.
2  I hope they're not.
3       But I would like him to tell me what actions he's taken to
4  pursue his complaints in other forums because most of what he
5  complains about is, quite frankly, something, historically,
6  bankruptcy has always been the subject of.
7       You can go back to hearings in the 1930s and earlier in
8  terms of fees in professional cases.  Congress held hearings in
9  the '30s and in the early and mid '30s about how much money in
10 bankruptcy was going to the professionals and not to the
11 creditors.
12      It is, unfortunately, a bad circumstance in that sometimes
13 it takes a lot of money to figure out what's gone wrong.  I
14 understand it.  I think most of the professionals in the system
15 understand that, but, perhaps, Mr. Clark has not.
16      And if he pursues the other avenues that are available to
17 him, perhaps, he will come to a better understanding of the
18 system.
19      And it may be that I will never be able to change
20 Mr. Clark's mind on that, but I certainly think he should
21 pursue those avenues if he thinks he has been truly wronged.
22      And that's a measure of good faith on my part that what
23 has been done, his lashing out, was a measure of frustration at
24 the system and not a personal attack.  If that's true, pursue
25 those avenues.  Don't lash out again.

```
 1         So with those four things as sanctions for the violations
 2   of 9011 and 9018 with an indication I will not refer the matter
 3   for criminal proceedings, I believe I am ready to conclude the
 4   hearing, but I would appreciate it if you have any questions as
 5   to what Mr. Clark has to do.  I could answer --
 6             MR. CALLISTER:  Well, I think --
 7             THE COURT:  -- those now.
 8             MR. CALLISTER:  -- I understand, your Honor.  Is the
 9   Court going to craft or am I to do so based on the --
10             THE COURT:  Well, what I would propose to do is I
11   will order the transcript of today's hearing.
12             MR. CALLISTER:  Thank you.
13             THE COURT:  I will enter an order.  The Court will
14   enter an order that says for the reasons and stated on the
15   record the order on the record is a permanent order, and we'll
16   enter that, so --
17             MR. CALLISTER:  Thank you.
18             THE COURT:  So that no one has to kind of go back
19   because I understand that what I have done is somewhat vague in
20   some --
21             MR. CALLISTER:  Well, I --
22             THE COURT:  -- of the circumstances.
23             MR. CALLISTER:  I think I understand, your Honor.
24             THE COURT:  Well, it's intentionally vague because I
25   have no idea what type of educational class he will take, and I
```

```
 1   mean to leave that open in terms of -- I mean, and part of the
 2   sanction is having him think through what he really wants to
 3   do.
 4              MR. CALLISTER:  You bet.
 5              THE COURT:  And so I think we'll simply do it that
 6   way, and I'll enter an order on the transcript, and what I said
 7   is what I've said.
 8              MR. CALLISTER:  Thank you, your Honor.
 9              THE COURT:  All right.
10              MR. CALLISTER:  I have nothing further.
11              THE COURT:  Is there anything further from anyone?
12   All right.
13         Then we're adjourned.
14              MR. CALLISTER:  Thank you, your Honor.
15              THE CLERK:  All rise.
16              MR. CALLISTER:  Thank you for the Court's time.
17         (Court concluded at 10:28:13 a.m.)
18
19
20
21
22
23
24
25
```

```
1      I certify that the foregoing is a correct transcript
2   from the electronic sound recording of the proceedings in
3   the above-entitled matter.
4
5
6   /s/ Michele Phelps                              06/01/09
    _____                 _____
7   Michele Phelps, Transcriptionist                  Date
```