RANDOLPH L. HOWARD, ESQ., NV Bar No. 006688
PETER D. NAVARRO, ESQ., NV Bar No. 010168
**KOLESAR & LEATHAM, CHTD.**
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-mail: rhoward@klnevada.com
pnavarro@klnevada.com

KATHERINE M. WINDLER, CA BAR NO. 158899
**PRO HAC VICE APPLICATION PENDING**
**BRYAN CAVE LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
E-mail: katherine.windler@bryancave.com

Attorneys for Respondents

*Electronically Filed*
*October 7, 2009*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| USA Commercial Mortgage Company,<br><br>USA Capital Realty Advisors, LLC,[1]<br><br>USA Capital Diversified Trust Deed Fund, LLC<br><br>USA Capital First Trust Deed Fund, LLC[2]<br><br>USA Securities, LLC,[3]<br><br>                    Debtors.<br><br>**Affects:**<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**Response and Objection of Silar Advisors, LP, Silar Special Opportunities Fund, LP, and Asset Resolution LLC to USACM Liquidating Trust's Motion to Authorize First Interim Distribution to Unsecured Creditors** |

---

[1] This bankruptcy case was closed on September 23, 2008.

[2] This bankruptcy case was closed on October 12, 2007.

[3] This bankruptcy case was closed on December 21, 2007.

Silar Advisors, LP, Silar Special Opportunities Fund, LP, and Asset Resolution LLC (collectively, the "Respondents"), hereby object to the Motion to Authorize First Interim Distribution to Unsecured Creditors to the USACM Liquidating Trust (the "Distribution Motion")[DE 7486] filed by Geoffrey L. Berman as trustee (the "Trustee") and seek an order from the Court prohibiting the distribution proposed in the Distribution Motion on the grounds that the $20 million in USACM Trust funds are not free and clear of claims because Respondents have an administrative expense claim against the USACM Trust funds for damages for breach of contract.

## BACKGROUND

In 2007, Silar Advisors LP and Silar Special Opportunities Fund, LP (collectively, "Silar") agreed to provide the financing for Compass Partners LLC (together with its designees, "Purchaser" or "Compass") to buy a loan servicing portfolio from USACM and FTDF (collectively, "Sellers"), pursuant to an Asset Purchase Agreement dated December 8, 2006 (the "APA"). Pursuant to the APA, Compass purchased from FTDF ownership interests in the loan portfolio and from USACM the right to service those loans under various loan servicing agreements (the "LSAs"). As part of its purchase of the LSAs, Compass purchased the right to collect all amounts owed to the loan servicer under the LSAs, including the right to collect all accrued servicing fees, default rate interest, late charges, success fees, and all other fees and sums due the loan servicer under any of the LSAs. Compass paid Sellers $67 million for these collective rights in an unallocated § 363 asset sale (the "Sale") that was approved pursuant to the Debtors' Third Amended Joint Plan of Reorganization ("Plan") as confirmed by order of the Court on January 8, 2007 (the "Confirmation Order"). All parties involved in the negotiations for the Sale, including the Sellers, understood the nature of the assets being sold and that all amounts owed under the LSAs were part of the profits to be had by Compass.

The Debtors' Plan was confirmed over the objection and appeal of several direct lenders (the "Direct Lenders") who hold fractional interests in the commercial loans that were sold to Compass. After the closing of the Sale, some of these Direct Lenders engaged in a pattern of wrongful acts in violation of the APA, the Plan, and the Bankruptcy Code that rendered the

contracts conveyed to Purchaser in the Sale unenforceable as a matter of law. Namely, at every turn postconfirmation the Direct Lenders attempted to thwart Compass's ability to service the loans for the benefit of all interested parties, including impeding Compass' ability to collect amounts due on the loans, incessantly interfering in Compass' lending relationship with its borrowers, preventing Compass from maintaining and preserving its collateral, and generally impeding Compass from getting any benefit of its bargain under the APA and LSAs. Compass could not sustain these losses of its investment from the Sale, causing Compass to default on its loan obligations to Silar in mid-2008 and close its doors. Thereafter, Silar, through its special purpose entity Asset Resolution LLC (collectively referred to herein with Silar as "ARC") foreclosed on the collateral pledged by Compass' as security for its obligations to Silar, including Compass' interests under the APA.

Respondents continue to be plagued with roadblocks in collecting and servicing the loans that were conveyed in the Sale and have been prevented from recovering their investment as a result of the failure of the Sellers to convey to Purchaser valid and enforceable contracts. Respondents also continue to be immersed in costly litigation against the Direct Lenders and others in a related district court proceeding pending in the United States District Court for the District of Nevada, Case No. 07-CV-00892 (the "District Court Action"). In the District Court Action, the Direct Lenders have been successful in preventing Respondents from collecting sums that were expressly due pursuant to the APA. For example, in August 2009, the District Court approved the sale of an apartment complex to a joint venture made up of several Direct Lenders for $8.5 million, determining in conjunction therewith that ARC was only entitled to recover a base servicing fee of $94,000 instead of the approximately $2 million in servicing fees owed under the LSAs. Additionally, in September 2009, the District Court entered an order that ARC could not collect late charges and default interest before the Direct Lenders recovered the principal due pursuant to certain promissory notes that were foreclosed upon by ARC.

Respondents do not contest the rulings of the District Court herein; however, as a result of the District Court rulings, Sellers have materially breached the APA and Plan because they have not delivered to Respondents valid and enforceable loan servicing agreements, as set forth more

fully in the Complaint filed by Respondents contemporaneously herewith and incorporated herein by reference. Sellers' liability to Respondents as described in the Complaint should be entitled to a priority as a post-confirmation expense/liability of the Debtors' estates.

## RELIEF REQUESTED

By this Response, Respondents seek an order that no distributions from funds held in the USACM Trust be distributed to the trust beneficiaries until the obligations of the Trustee and his predecessor debtors to Respondents are determined and satisfied. The Trustee, as the successor in interest to the Sellers, is legally liable for the failure to deliver valid and enforceable loan servicing contracts payable in the scheduled amounts as promised in the APA. Therefore, the Trustee should not be permitted to distribute any assets of the USACM Trust at this time.

## ARGUMENT

The APA sets forth the terms of Purchaser's acquisition of the Sellers' assets, including liquidated amounts due and accruing on each loan and the servicing fees owed. These assets include the contractual right to service USACM's loan portfolio and the right to various accrued and future fees and sums due the loan servicer as defined under each of the applicable LSAs. Despite the fact that Respondents clearly bargained for these rights and fees and paid $67 million for them, Respondents have not been able to collect them. Instead, Respondents have been saddled with litigation expenses and tortious and contractual interference every step along the way without collecting the sums that were expressly made a part of the asset package conveyed to Respondents in the APA, through no fault of Respondents.

The APA expressly provides that, "all servicing fees due pursuant to the terms stated in the Servicing Agreements, and all interest due on the First Trust Deed Fund Assets, shall continue to be due and payable, and *Purchaser shall collect such servicing fees and interest for its sole benefit on and after the Closing Date.*" (APA, Section 7.3)(emphasis supplied). The Debtors Loan Servicing Fee Schedule that was included in the Direct Lender Supplement to the Debtors' Plan (the "Plan Supplement") [DE 1887] also sets forth the amount of the loan servicing fees applicable to each loan acquired by Purchaser accrued as of September 2006. These loan servicing fees totaling in excess of $11 million were approved by all accepting classes of the Plan, including the

Direct Lenders, and are owed to Respondents by operation of the APA, Plan, and Confirmation Order. Likewise, the letter agreement supplement to the APA dated December 8, 2006, by and between Sellers and Purchaser itemized the accrued default interest, loan servicing fees, late fees, extension fees, and origination fees applicable to each loan acquired by Purchaser as of December 2006 totaling in excess of $ 27 million.

However, Respondents have not been able to collect these amounts because the loan servicing agreements have been unenforceable as against the borrowers to the loan contracts and as against the Direct Lenders who have severely impeded Respondents' ability to obtain the benefit of its bargain. Accordingly, the Trustee's predecessors in interest, the Sellers, did not deliver to Purchaser value and enforceable agreements in the agreed amounts in material breach of the APA. The Trustee therefore remains obligated to the Respondents and it does not hold the trust assets free and clear of Respondents' administrative expense claim for breach of contract.

WHEREFORE, the Respondents respectfully request that the Court enter an order prohibiting the Trustee from making a distribution from the USACM Trust at this time and for such other relief as the Court deems just and proper.

Dated: October 7, 2009.

Respectfully submitted,

KOLESAR & LEATHAM, CHTD.

By: *Randolph d. Howard*
Randolph Howard

Attorneys for Respondents
**SILAR ADVISORS, LP AND SILAR SPECIAL OPPORTUNITIES FUND, LP AND ASSET RESOLUTION LLC**