RANDOLPH L. HOWARD, ESQ., NV Bar No. 006688
PETER D. NAVARRO, ESQ., NV Bar No. 010168
**KOLESAR & LEATHAM, CHTD.**
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-mail:  rhoward@klnevada.com
         pnavarro@klnevada.com

KATHERINE M. WINDLER, CA BAR NO. 158899
**BRYAN CAVE LLP**
**PRO HAC VICE APPLICATION PENDING**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
E-mail:  katherine.windler@bryancave.com

Attorneys for Plaintiffs

*Electronically Filed*
*October 7, 2009*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| USA Commercial Mortgage Company,<br><br>USA Capital Realty Advisors, LLC,[1]<br><br>USA Capital Diversified Trust Deed Fund, LLC<br><br>USA Capital First Trust Deed Fund, LLC[2]<br><br>USA Securities, LLC,[3]<br><br>                            Debtors.<br><br>**Affects:**<br>☐ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3]<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725 LBR<br><br>**Complaint for Breach of Contract and Unjust Enrichment** |

---

[1] This bankruptcy case was closed on September 23, 2008.

[2] This bankruptcy case was closed on October 12, 2007.

[3] This bankruptcy case was closed on December 21, 2007.

6021468                                                                                                               610448_2

Silar Advisors, LP

Silar Special Opportunities Fund, LP

Asset Resolution LLC,

                     Plaintiffs,

v.

USA Commercial Mortgage Company,

USA Capital First Trust Deed Fund, LLC, and

Geoffrey L. Berman, in his capacity as Trustee for the USACM Liquidating Trust, and not individually,

                     Defendants.

Adv. Proc. No. 09-_____-LBR

**COMPLAINT OF SILAR ADVISORS, LP, SILAR SPECIAL OPPORTUNITIES FUND, LP, AND ASSET RESOLUTION LLC FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT**

PLAINTIFFS SILAR ADVISORS, LP, SILAR SPECIAL OPPORTUNITIES FUND, LP, and ASSET RESOLUTION LLC (collectively, the "Plaintiffs"), hereby allege against USA COMMERCIAL MORTGAGE COMPANY, USA CAPITAL FIRST TRUST DEED FUND, LLC, and GEOFFREY L. BERMAN, solely in his capacity as the TRUSTEE FOR THE USACM LIQUIDATING TRUST and not individually (collectively, the "Defendants"), as follows:

### COMMON ALLEGATIONS

**A.   THE PARTIES**

1.   Plaintiff Silar Advisors, LP is, and at all times herein mentioned was, a limited partnership duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 7th Avenue, New York, New York 10001-5004 and within the jurisdiction of this Court.

2.   Plaintiff Silar Special Opportunities Fund, LP, is, and at all times herein mentioned was, a limited partnership duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 7th Avenue, New York, New York 10001-5004 and within the jurisdiction of this Court.

3.	Plaintiff Asset Resolution LLC ("ARC"), is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 333 7th Avenue, New York, New York 10001-5004 and within the jurisdiction of this Court.

4.	Prior to its dissolution, Defendant USA Commercial Mortgage Company ("USACM") was a corporation duly organized and existing under the laws of the State of Nevada. USACM is a named chapter 11 debtor together with certain affiliates in this bankruptcy case.

5.	Prior to its dissolution, Defendant USA Capital First Trust Deed Fund, LLC ("FTDF") was a corporation duly organized and existing under the laws of the State of Nevada. FTDF is a named chapter 11 debtor together with certain affiliates in this bankruptcy case.

6.	Defendant Geoffrey L. Berman (the "Trustee"), solely in his capacity as Trustee for the USACM Liquidating Trust (the, "USACM Trust") and not individually, is the successor in interest to the herein named chapter 11 debtors by operation of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

**B.	JURISDICTION AND VENUE**

7.	This matter is an adversary proceeding which arises in and relates to *In re USA Commercial Mortgage Company, et al.,* Case No. BK-S-06-10725-LBR pending in the United States Bankruptcy Court for the District of Nevada.

8.	This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9.	This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and by virtue of the Plan and APA as defined below.[4]

10.	Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

**C.	GENERAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

11.	On April 13, 2006, Defendants USACM and FTDF, together with certain affiliate debtors (collectively, the "Debtors"), filed voluntary chapter 11 bankruptcy petitions initiating these jointly administered chapter 11 cases.

---

[4] Section 11.11 of the APA, as defined in this Complaint, explicitly states that, [t]he United States Bankruptcy Court for the District of Nevada shall be the exclusive forum for the enforcement of the terms of this Agreement."

12. In 2007, Silar Advisors LP and Silar Special Opportunities Fund, LP (collectively, "Silar") agreed to provide the financing for Compass Partners LLC (together with its designees, "Purchaser" or "Compass") to buy a loan servicing portfolio from USACM and FTDF (collectively, "Sellers"), pursuant to an Asset Purchase Agreement dated December 8, 2006 (the "APA").

13. Pursuant to the APA, Compass purchased from FTDF its interests in certain commercial loans and from USACM its interests in certain loan servicing agreements and related contracts (the "LSAs"). As part of its purchase of the LSAs, Compass purchased the right to collect all amounts owed to the loan servicer under the LSAs, including the right to collect all interest, default interest, and servicing fees accrued thereunder.

14. Compass paid Sellers $67 million for these rights in an unallocated § 363 asset sale (the "Sale") that was consummated pursuant to the Debtors' confirmed Plan. Silar provided the financing to complete Compass's purchase under the APA and Plan, secured by all of Compass's right, title and interest in the LSAs and interests in various real property collateral.

15. The Sale was approved and the Plan was confirmed by final order of the Court on January 8, 2007 (the "Confirmation Order") over the objection of several direct lenders (the "Direct Lenders"[5]) who hold fractional interests in the commercial loans that were sold to Compass. The sale to Compass closed on February 16, 2007.

16. Immediately upon confirmation of the Plan and the closing of the Sale, a group of Direct Lenders calling themselves the "Lender Protection Group", which consisted largely of those whose objections to the Plan had been overruled, began a campaign to take over the loan servicing rights that had been conveyed to Compass in the APA and otherwise deprive Compass of the benefit of its bargain. First, the Lender Protection Group (the "LPG") purported to terminate Compass as the servicer of the loans, which severely hampered Compass' ability to collect on the loans at all. Next, the LPG, through its ring leader Donna Cangelosi, also an investor, formed approximately 50 domestic limited liability companies whose sole purpose was

---

[5] As defined in the Plan and as used herein, a Direct Lender is an "entity who is a beneficiary under a Loan, excluding USACM and the Funds, to the extent of their beneficial interests in a Loan." Plan, Art. I, § A.42.

to acquire interests from the Direct Lenders in exchange for LLC membership interests, to be managed indirectly by Cangelosi who used them as vehicles to disrupt Compass' ability to service the loans even further. Additionally, the LPG continued to incite the remaining Direct Lenders, counseling them to both reject the loan dispositions proposed by Compass in the face of a declining real estate market and to interfere with Compass' efforts to foreclose, which would have allowed Compass to hold title to and effectively manage the properties. Moreover, these Direct Lenders consistently and repeatedly impeded Compass' efforts to manage and liquidate the real property collateral in which both they and Compass shared an interest, which prevented Compass from preserving the value of the jointly held collateral for the benefit of all the parties.

17. On May 21, 2007, the LPG and its related LLCs (the "District Court Plaintiffs") brought a district court action (the "Reno District Court Action") against Compass and Silar for alleged breaches under the LSAs and for fraud and civil conspiracy, thereby demonizing the customary servicing compensation waterfall and lockbox that Silar used to perfect its security interest in the collateral pledged by Compass. The District Court Plaintiffs sought damages as well as a declaratory judgment that their termination of Compass as servicer was valid and proper and that all payments received from the USACM borrowers be applied first to principal and interest, notwithstanding the priorities for fees afforded in the LSAs and underlying loan documents that had been sold to Compass in the Sale. These allegations were in direct contradiction to the fee structure in the LSAs and underlying loan documents, for which Compass had paid a premium when it bought the Sellers' assets out of bankruptcy.

18. On May 25, 2007, the Reno District Court action was removed to bankruptcy court. At that same time, Compass also filed an emergency motion to enforce the Confirmation Order and for contempt (the "Enforcement Motion"), alleging that the LPG and Donna Cangelosi were in violation of the APA, the Plan, and the Confirmation Order. After issuing a temporary restraining order, on July 2, 2007, the bankruptcy court asked the district court to withdraw the reference on the entire dispute between the Direct Lenders and Compass. The District Court agreed with the bankruptcy court recommendation and withdrew the reference as to the various disputes.

19. The Direct Lenders have since embroiled Compass and its successors in litigation on multiple fronts. This, combined with the Direct Lenders pattern of efforts to undermine the Sale transaction and Compass' ability to collect on the loans and manage the properties, resulted in Compass sustaining an almost $30 million loss of capital, which caused Compass to default on its loan obligations to Silar in mid-2008 and close its doors.

20. Silar foreclosed on Compass in September 2008 through Plaintiff Asset Resolution LLC[6] when Compass' resources were completely drained, thereby becoming Compass' successor in interest to the rights acquired under the Plan and the APA. Thereafter, ARC immediately began to assemble a team to service, manage and administer the remaining collateral for the benefit of all interested parties, including the Direct Lenders and their constituencies. However, a growing number of Direct Lenders and the LPG realized that by rejecting ARC's proposals to sell off some of the real property collateral, they could force ARC to work for free while defending expensive and complex litigation instead of investing its money and time into managing and maintaining the Sale assets for the mutual benefit of all interested parties.

21. In August 2009, the District Court approved the sale of an 810 unit apartment complex known as the "Gess Property" to a joint venture in which some of the Direct Lenders elected to transfer their interests, for $8.5 million. ARC had previously obtained much higher offers for the Gess Property that were rejected by these same Direct Lenders. In conjunction with the Gess Property sale, the District Court determined that ARC was not entitled to recover base servicing fees, which totaled approximately $2 million when calculated according to the terms of the LSAs, and determined instead that ARC was only entitled to a base servicing fee of $94,000, which determination Plaintiffs are not seeking to alter by virtue of this Complaint.

22. On September 18, 2009, the District Court entered an order that ARC could not collect late charges and default interest before the Direct Lenders recovered the principal they were owed pursuant to certain promissory notes that were foreclosed upon by ARC as part of the

---

[6] Silar formed ARC to oversee the servicing and management of foreclosed-upon collateral.

collateral conveyed in the Sale, which determination Plaintiffs are not seeking to alter by virtue of this Complaint.

23. Plaintiffs do not contest the holdings of the District Court herein. However, as a direct result of these District Court rulings, ARC has lost a substantial benefit of its bargain with Sellers.

24. Additionally, ARC has not recovered the accrued default interest, loan servicing fees, late fees, extension fees, and origination fees that were expressly provided for in the agreements conveyed by Sellers to Purchaser in the APA.

### D. GENERAL ALLEGATIONS RELATING TO THE APA AND CONFIRMED PLAN

25. The APA sets forth the terms of Purchaser's acquisition of Sellers' assets, which assets include, but are no limited to, all accrued and future servicing fees, default rate interest, late charges, success fees, and all other fees and sums due the loan service under any of the LSAs (hereinafter, the "Assets").

26. The Debtors' Plan expressly approves the asset sale transaction contemplated by the APA, including Purchaser's right to service the loans and collect all fees due thereunder and to take the Assets free and clear of all claims of any third parties, including the Direct Lenders. (See, APA, IV(C), p. 47)("After the Auction, the Asset Sale Transaction shall be approved in connection with Confirmation of the Plan.").

27. All parties involved in the negotiations for the sale of the Assets understood the nature and extent of the Assets being conveyed and that all interest, fees, and proceeds stemming therefrom were part of the profits to be had by Purchaser.

28. Section 3.4 of the APA provides that, "USACM has the legal right and authority to sell, convey and transfer the Commercial Mortgage Assets to the Purchaser . . . "[s]ellers have taken no action that would render the Mortgage Notes or Mortgages or any of the other Loan Documents invalid or unenforceable. **All Mortgage Notes and Mortgages and the other Loan Documents are legal, valid and binding obligations of the maker thereof.** (APA, Section 3.4(a) and (d)) (emphasis supplied). Further, the APA expressly provides that, "**all servicing fees due pursuant to the terms stated in the Servicing Agreements, and all interest due on the**

**First Trust Deed Fund Assets, shall continue to be due and payable, and Purchaser shall collect such servicing fees and interest for its sole benefit on and after the Closing Date."** (APA, Section 7.3)(emphasis supplied).

29. The letter agreement supplement to the APA dated December 8, 2006 (collectively hereinafter incorporated into the definition of "APA" by reference), by and between Sellers and Purchaser itemized the accrued default interest, loan servicing fees, late fees, extension fees, and origination fees applicable to each loan acquired by Purchaser as of December 2006 totaling more than $27 million, as adjusted.

30. On November 29, 2006 the Debtors filed a Loan Servicing Fee Schedule included in the Direct Lender Supplement to the Debtors' Third Amended Joint Plan of Reorganization (collectively hereinafter incorporated into the definition of "Plan" by reference), which sets forth the amount of loan servicing fees accruing monthly on the loans for which Purchaser would provide servicing after closing of the Sale, totaling in excess of $11 million. The Loan Servicing Fee Schedule was served on the Direct Lenders in conjunction with confirmation of the Plan.

31. Purchaser has never received these amounts.

32. The APA and Plan were approved by operation of the Confirmation Order, which is now a final order.

33. Specifically, Paragraph 82 of the Confirmation Order contains the following provision affecting the loan servicing fees:

> Furthermore, for the avoidance of doubt, notwithstanding any other provision in the Asset Purchase Agreement, this Confirmation Order, or any order which may in the future be entered by the Bankruptcy Court, **all servicing fees due pursuant to the terms stated in the Loan Servicing Agreements, and all interest due on the First Trust Deed Fund Assets (as such term is defined in the Asset Purchase Agreement), shall continue to be due and payable, and Compass shall collect such servicing fees and interest for its sole benefit on and after the Closing Date."**

(Confirmation Order, page 27, lines 9-15)(emphasis supplied).

34. Pursuant to the clear mandates of the APA, the Plan, and the Confirmation Order, the Sellers made representations to Purchaser that Purchaser was acquiring valid and enforceable contracts to collect certain fees and interest.

35. However, since before the Sale to Purchaser was even closed, Purchaser has been unable to collects the amounts due or to obtain the benefit of its bargain.

36. As a result, Sellers are in material breach of the APA because they failed to deliver to Purchaser valid, enforceable agreements to collect the accrued and accruing fees and interest that were promised in the APA.

37. The material breach of Sellers have caused Purchaser to suffer damages in excess of $20 million, in a specific amount to be proven at trial.

38. Purchaser's damages claim against Sellers is entitled to priority over the claims of other unsecured creditors because it is a postpetition administrative expense of the Debtors. See 11 U.S.C. § 503(b).

39. Accordingly, the Trustee should not be permitted to distribute USACM Trust funds until such time as the Sellers' liability to Purchaser for failure to deliver valid and enforceable loan servicing contracts payable in the scheduled amounts is adjudicated by the Court.

## FIRST CAUSE OF ACTION

(Breach of Contract)

(Against All Defendants)

40. Plaintiffs reallege each and every allegation contained in Paragraphs 1 through 39 as though fully set forth herein.

41. The duties and obligations of the parties in the APA and Plan were confirmed by the Court in the Confirmation Order, which is a final judgment on the merits.

42. In the APA and Plan, Purchaser was promised certain fees in liquidated amounts and interest payments that they have not been able to collect since the closing of the Sale, including, without limitation, accrued default interest, late fees, extension fees, origination fees, and loan servicing fees collectively totaling in excess of $ 38 million.

43. Purchaser duly performed all terms, covenants, and conditions on its part to be performed under the APA and Plan, except those terms, covenants or conditions excused, frustrated or made impossible by the breaches of Defendants herein alleged.

44.   Plaintiffs have been prevented from collecting amounts owed to Purchaser under the APA because the contract provisions providing for such fees have been rendered unenforceable as against the borrowers and various Direct Lenders by reason of orders of the District Court.

45.   Sellers have failed to meet their obligations to Purchaser to deliver valid, enforceable agreements to collect the fees and interest as provided in the APA.

46.   Defendants are therefore in material breach of the APA and Plan.

47.   By reason of the Defendants' material breach and as a direct and proximate result thereof, Plaintiffs have incurred and will incur costs and expenses, and have suffered and will suffer direct, indirect, consequential, general, and special damages the exact amount of which is unknown to date, but which is estimated to be not less than $38 million, which amount will be proven at the time of trial.

48.   The liability of Defendants to Plaintiffs is entitled to administrative expense priority under the Bankruptcy Code.

49.   Therefore, no distributions from funds held in the USACM Trust should be distributed until the liability of Defendants to Plaintiffs as described herein has been adjudicated.

## SECOND CAUSE OF ACTION

(Unjust Enrichment)

(Against All Defendants)

50.   Plaintiffs reallege each and every allegation contained in Paragraph 1 through 49 as though fully set forth herein.

51.   Defendants received a benefit from Plaintiffs when Purchaser paid to Sellers the $67 million Total Asset Purchase Price, as adjusted pursuant to the APA. The consideration provided by Purchaser for the assets acquired in the Sale was for the direct benefit of Sellers.

52.   Defendants have been unjustly enriched because Sellers did not deliver to Purchasers valid, enforceable agreements to collect the interest and fees as provided in the APA, Plan, and ancillary documents.

53. As a result of Defendants' unjust enrichment, Defendants should be ordered to compensate Plaintiffs for said benefits, and the Trustee should not be permitted to distribute the $20 million in USACM Trust funds, until such time as Plaintiffs have been fully compensated for their enrichment of Defendants.

54. Plaintiffs should be awarded an administrative expense claim for all losses and damages it has suffered as a result of Defendants' wrongful conduct in an amount to be proven trial.

## PRAYER

WHEREFORE, Plaintiffs pray for a judgment against Defendants and each of them, as follows:

    (a) <u>On the First Cause of Action</u>

        1. For compensatory damages as alleged herein which are estimated to be not less than $37 million, and according to proof at the trial of this matter;

        2. Interest thereon at the maximum legal rate;

        3. For reasonable attorneys' fees and costs of suit; and

        4. For such other relief as the Court deems appropriate.

    (b) <u>On the Second Cause of Action</u>

        1. For compensatory damages as alleged herein which are estimated to be not less than $37 million, and according to proof at the trial of this matter;

        2. Interest thereon at the maximum legal rate;

        3. For reasonable attorneys' fees and costs of suit; and

. . .
. . .
. . .
. . .
. . .
. . .
. . .

4. For such other relief as the Court deems appropriate.

Dated: October 7, 2009.

Respectfully submitted,

**KOLESAR & LEATHAM, CHTD.**

By: /s/ Randolph L. Howard
Randolph Howard, Esq.
Peter D. Navarro, Esq.
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102

Attorneys for Defendants
**SILAR ADVISORS, LP AND SILAR SPECIAL OPPORTUNITIES FUND, LP AND ASSET RESOLUTION LLC**

6021468                              12                              610448_2
                                 COMPLAINT