LEWIS
AND
ROCA
——LLP——
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Efiled on October 12, 2009

**Rob Charles** NV State Bar No. 006593
Email: rcharles@lrlaw.com
**John Hinderaker** AZ State Bar No. 018024 (admitted pro hac vice)
Email: JHinderaker@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR[1]<br>Case No. BK-S-06-10727-LBR[2]<br>Case No. BK-S-06-10728-LBR[2]<br>Case No. BK-S-06-10729-LBR[3] |
| USA Commercial Mortgage Company, | |
| USA Capital Realty Advisors, LLC,[1] | |
| USA Capital Diversified Trust Deed Fund, LLC, | CHAPTER 11 |
| USA Capital First Trust Deed Fund, LLC,[2] | Jointly Administered Under Case No.<br>BK-S-06-10725 LBR |
| USA Securities, LLC,[3] | |
| Debtors. | **USACM Liquidating Trust's Reply<br>to Silar Advisors, LP, Silar Special<br>Opportunities Fund, LP, and Asset<br>Resolution LLC's Response and<br>Objection to Motion to Authorize<br>First Interim Distribution to<br>Unsecured Creditors** |
| **Affects:**<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | Hearing Date:    October 19, 2009<br>Time:    3:00 p.m. |

Silar Advisors, LP, Silar Special Opportunities Fund, LP, and Asset Resolutions,

LLC (collectively "Silar") have brought suit against the USACM Liquidating Trust

("USACM Trust" or the "Trust") in conjunction with Silar's objection to the Trust's

motion to authorize first interim distribution.[4]  Silar's adversary complaint alleges breach

---

[1] This bankruptcy case was closed on September 23, 2008.

[2] This bankruptcy case was closed on October 12, 2007.

[3] This bankruptcy case was closed on December 21, 2007.

[4] Administrative file docket entry ("DE") 7580.

260383.3



of contract and unjust enrichment.[5]  Silar also opposes the interim distribution motion, seeking to prevent distributions to unsecured creditors pending resolution of its complaint. Silar waited to file its complaint and to assert a claim against the Trust until:

- 34 months after the December 9, 2006 confirmation hearing,

- 33 months after the Court entered its January 8, 2007 order confirming the Debtor's Third Amended Joint Chapter 11 Plan of Reorganization As Modified,

- 31 months after the confirmed Plan became effective on March 12, 2007,

- 29 months after Compass Partners LLC[6] ("Compass") filed its Motion to Enforce Confirmation Order and for Order Determining No Surviving Section Three Rights Exist With Respect to Fiesta Oak Valley Loan,

- 27 months after Compass filed its Complaint for Conditional Revocation of Confirmation Order Under 11 U.S.C. § 1144 and Rescission of Asset Purchase Agreement, Adv. No. 07-01105, which was dismissed upon stipulation as to USA Capital First Trust Deed Fund, LLC, and dismissed for lack of prosecution against USA Commercial Mortgage Company ("USACM"),

- Several months after a series of adverse rulings in litigation commenced by Compass and against Compass in the United States District Court for the District of Nevada, consolidated under Case No. 2:07-CV-892,

- Nearly a month after the Trust filed its interim distribution motion.  The distribution became possible only because of the Trust's efforts both to

---

[5] DE 7582.

[6] Silar alleges that it foreclosed on Compass in September, thereby becoming Compass' successor in interest.  DE 7582, ¶ 20.

260383.3



1    recover monies on behalf of the creditor beneficiaries and to address the

2    thousands of claims filed in the case by direct lenders.

3    Silar's request comes too late, lacks an appropriate legal or factual basis, and

4    should be summarily denied.  To the extent that Silar seeks to restrain, on a prejudgment

5    basis, transfers by the Trust to its beneficiaries, Silar should be forced to provide the proof

6    required for such a temporary restraining order or prejudgment remedy, and should be

7    required to post a bond sufficient to protect the Trust and Trust beneficiaries against the

8    damages caused by Silar's request.  This reply is explained in the following memorandum

9    of points and authorities and is supported by the Court's record, the record of the United

10   States District Court[7] and the record in the adversary proceeding Silar filed on October 7,

11   2009.[8]

12                                **MEMORANDUM**

13                            **Factual Background**

14   After receiving a stalking horse bid from SPCP Group, LLC, consideration of

15   competing bids and an auction on December 7, 2006,[9] this Court selected Compass as the

16   successful purchaser of assets owned by USA Capital First Trust Deed Fund, LLC

17   ("FTDF") and USACM.  USACM and FTDF (together "Sellers") and Compass entered

18   into an Asset Purchase Agreement dated and effective as of December 8, 2006 (the

19   "APA").[10]  Compass agreed to pay FTDF $48 million as adjusted, USACM $8 million as

20   adjusted, and Sellers jointly $11 million.  The additional $11 million overbid was not

21   allocated between Sellers and Compass.[11]  Compass was represented by experienced

22   _____

23   [7] 2:07-CV-00072-RCJ.

     [8] 4:09-AP-01284-lbr.

24   [9] Transcript at DE 2593.

25   [10] DE 2164.

26   [11] After the Effective Date of the Plan, the USACM Liquidating Trust and FTDF compromised
     the dispute concerning the $11 million overbid, with this Court's approval.

                                          3



1 | national and local bankruptcy counsel, including George A. Davis of Weil, Gotshal &

2 | Manges LLP and Peter Bernhard of Bullivant Houser Bailey PC.[12]

3 | Article 3 of the APA contains certain statements by USACM about the USACM

4 | assets being sold, which are the Commercial Mortgage Assets as defined in the APA.

5 | These are essentially USACM's representations and warranties to Compass.

6 | Fundamentally, the Commercial Mortgage Assets were USACM's interest in loans as well

7 | as its rights related to servicing loans.  None of the USACM statements can be fairly read

8 | to suggest that USACM represented or warranted the nature of the servicing rights being

9 | purchased by Compass, much less attempted to represent or warrant that Compass would

10 | prevail in what were then growing disputes with direct lenders concerning, among other

11 | things, direct lenders' right to terminate the servicer and how servicing fees and other

12 | rights would be collected and paid under the so-called "waterfall provisions" of the

13 | applicable Loan Servicing Agreements ("LSAs"), or the amount of recoveries on such

14 | "waterfall provisions".

15 | After a hearing on December 19, 2006,[13] this Court entered its Order Confirming

16 | the "Debtor's Third Amended Joint Chapter 11 Plan of Reorganization," as Modified

17 | Herein, on January 11, 2007.[14]  The issues concerning disputes between direct lenders and

18 | Compass over Compass' rights under the LSAs had been specifically addressed at the

19 | auction, the confirmation hearing and in objections to confirmation.  The parties, including

20 | Compass, understood that USACM was transferring its rights under the LSAs and other

21 | applicable law, but that the APA and the Confirmation Order would not resolve the

22 | disputes as between the direct lenders and Compass.  Instead, whatever rights USACM

23 | had under the servicing agreements were being sold to Compass.

24 |

25 | [12] E.g., DE 2237, 2239.
   | [13] Minutes, DE 2208; transcript, DE 2368.

26 | [14] DE 2376 (the "Confirmation Order").

260383.3



**LEWIS**
**AND**
**ROCA**
**LLP**
L A W Y E R S

1  The sale to Compass authorized by the Plan[15] was consummated on February 16,

2  2007.[16]  Paragraph 54 of the Confirmation Order and the provisions of the Plan cited

3  therein required that any expense of administration be filed within 30 days after the

4  Effective Date of the Plan.[17]  Compass' counsel approved the form of confirmation order[18]

5  and were on the service list for the Notice of Effective Date.[19]  The Effective Date of the

6  Plan occurred on March 12, 2007.[20]  Compass never filed an expense of administration.

7  Certain direct lenders[21] and others[22] appealed the order confirming the plan.  The

8  order confirming the plan was affirmed on August 29, 2007 by the United States District

9  Court for the District of Nevada in an opinion signed by Judges Jones and Pro.[23]  In

10  response to DACA's argument that the Confirmation Order interprets the LSAs in favor of

11  Compass, the District Court's opinion holds in part:

12  
13  
14  
15  
16  
17  
> The potential conflict of interest between the loan servicer and the lender with which DACA is concerned is a matter of contractual language within the LSAs, not language in the confirmation order.  The Bankruptcy Court's confirmation order does not purport to interpret the LSAs to define Compass' contractual rights, or lack thereof, to accrued but uncollected default interest.  Resolution of potential, future disputes regarding Compass' rights under the LSAs are a matter of contract interpretation, are not ripe in this proceeding, and do not warrant modification of the Confirmation Order.[24]

18  
---

19  [15] Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization, DE 1799 (the "Plan").

20  [16] 2:07-CV-00072-RCJ, DE 102 at page 7.

[17] DE 2376 at ¶ 54, pp. 18-19.

21  [18] Confirmation Order at 28.

22  [19] DE 3083.

[20] Notice of Effective Date of Confirmed Plan, filed March 13, 2007, at DE 3083.  Compass did
23  not timely file such an administrative expense request.

24  [21] 2:07-CV-00072-RCJ.

[22] E.g. Debt Acquisition Company of America V, LLC, 2:07-CV-00160-RCJ.
25  
[23] 2:07-CV-00072-RCJ, DE 102.

26  [24] 2:07-CV-00072-RCJ, DE 102 at page 27.

260383.3



1   Under the APA, as approved by the Plan and the Confirmation Order, Compass was

2   merely substituted for USACM as the servicer, subject to the LSAs and applicable law.

3          Inevitably, as Compass failed to collect loans and took aggressive positions with

4   respect to its rights to collect servicing fees, disputes arose with the direct lenders who

5   were adversely affected by Compass' actions.  Compass' awareness of those disputes is

6   evidenced by, among other things, the Motion to Enforce Confirmation Order and for

7   Order Determining No Surviving Section 3 Right exists with respect to Fiesta Oak Valley

8   Loan, filed on March 30, 2007,[25] the removal by Compass to this Court of an action by

9   direct lenders in Adv. No. 07-01076 as evidenced by the notice of removal filed May 25,

10  2007,[26] the Motion to Enforce Confirmation Order and for Civil Contempt Sanctions

11  Pursuant to 11 U.S.C. §§ 105 and 1141 filed on May 25, 2007,[27] the Motion to Compel

12  Compliance with June 20, 2007 Ruling of the Bankruptcy Court filed on July 24, 2007,[28]

13  and the Complaint for Conditional Revocation of Confirmation Order under 11 U.S.C.

14  § 1144 and Rescission of Asset Purchase Agreement filed on July 7, 2007, at adversary

15  case no. 07-01105.[29]  The Section 1144 Complaint is instructive as Compass named

16  Debtors as well as Donna Cangelosi and numerous direct lenders as defendants.  Compass

17  complained that, among other things, the actions of the direct lenders improperly sought to

18  deprive Compass of its benefits under the sale by terminating Compass as loan servicer.

19

20

21  _____

22  [25] DE 3317.
    [26] DE 3772.
23  [27] DE 3773.
    [28] DE 4207.
24  [29] DE 4140.

25

26

6

260383.3



LEWIS
AND
ROCA
LLP
L A W Y E R S

1  Compass thereafter dismissed FTDF[30] and USACM[31] before the action was dismissed

2  entirely by this Court.[32]

3          Since May 2007 Compass has been engaged in litigation with direct lenders over its

4  rights under the LSAs.  A lawsuit was removed to this Court from the District Court[33] and

5  with other disputes between Compass and the direct lenders the reference was withdrawn

6  to the District Court.[34]  Silar asserts that it is the successor by assignment and enforcement

7  of security interests to Compass.[35]  In the District Court litigation, Silar has prevailed on

8  certain issues but also suffered adverse rulings by Judge Jones,[36] some of which Silar has

9  appealed.[37]

10                                    **Argument**

11  **1.      Silar's Claim Is Barred By The Plan Injunction**

12          Section IV(H) of the Plan states an injunction against a party such as Silar asserting

13  a claim arising out of the pre-Effective Date APA:

14          As of the Effective Date, all Entities are precluded from asserting against
          any assets that are distributed or to be distributed under the Plan any Claims,
15          rights, causes of action, liabilities or interests based upon any act or
          omission, transaction or other activity of any kind or nature that occurred
16

17  ---

[30] 4:07-ap-01105-lbr, DE 12.

18  [31] 4:07-ap-01105-lbr, DE 18.

19  [32] 4:07-ap-01105-lbr, DE 26.

[33] Adversary case 07-01076, Notice of Removal Filed by Compass USA SPE, LLC and Compass
20  Partners, LLC of US District Court Case of 3685 San Fernando Lenders, LLC against Compass
    Partners LLC.

21  [34] E.g. 2:07-cv-892-RCJ, filed July 11, 2007.

22  [35] DE 7582, ¶ 20.

23  [36] E.g., Order Approving The Sale Of The Gess Property To The Gess Joint Venture, 2:07-cv-892-
    RCJ, DE 1440; Order Granting in part and denying in part [1040] Motion for Partial Summary
24  Judgment; granting in part and denying in part [1085] Motion for Partial Summary Judgment,
    2:07-cv-892-RCJ, DE 1489; Order that the [908] Motion to Substitute Party is acknowledged, but
25  the alleged assignment of the contractual servicing rights is not approved, 2:07-cv-892-RCJ, DE
    1076.

26  [37] Amended Notice Of Appeal, 2:07-cv-892-RCJ, DE 1450.

260383.3



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1

2

prior to the Effective Date, other than as expressly provided in the Plan or Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity Interest and regardless of whether such an Entity has voted to accept the Plan.[38]

3

4

5

Compass was free to timely file an expense of administration. Compass chose not to file such expense of administration. Neither Compass nor Silar is free to sue the Trust now in lieu of complying with the Plan and Confirmation Order.

6

**2.    Silar's Claim Is Untimely**

7

8

9

10

11

Silar argues that no distribution should be made to unsecured creditors when Silar asserts an expense of administration. In addition to the patent lack of merit of Silar's position, its alleged administrative expense is asserted more than two years after the April 11, 2007 deadline for asserting an expense of administration under the Plan. The Plan clearly explains the impact of Silar's lack of a timely claim:

12

13

14

15

16

17

18

19

> All holders of Administrative Expense Claims (including without limitation, Professionals requesting compensation or reimbursement of expenses), except holders of Ordinary Course Administrative Expense Claims, are required to File a request for payment of such Claims in accordance with the Plan. Failure to File a request for payment of an Administrative Expense Claim prior to the Administrative Expense Claim Bar Date or the Professionals Administrative Expense Claim Bar Date, as applicable, shall forever bar the holder from asserting such Claims against the Debtors, the Estates, the Post-Effective Date Entities and any other Entity or any of their respective property, and the Debtors, the Estates and the Post-Effective Date Entities, to the extent applicable, shall be discharged of any obligation on such Claim or any other Claim related to the Administrative Expense Claim.[39]

20

21

22

23

Silar is effectively trying to modify the confirmed Plan, yet makes no effort to explain how it can obtain the sought after relief by modifying the Plan to create a new deadline or obtaining relief from the deadline under applicable law. Simply put, Silar's claim is untimely and barred by the Plan.

24

25

26

[38] Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization, DE 1799, at 59.

[39] Id. at 31.

8



**3.     The Trust Is Not Liable For Alleged Administrative Expenses of USACM**

The Trust was funded "with all assets of the USACM Estate not collected or disposed of prior to the Effective Date, including Cash and noncash proceeds."[40]  Nothing in the Plan makes the Trust liable for expenses of administration of USACM.  Rather, after the costs of administering the Trust are paid, the Trust assets are distributed to its beneficiaries, generally the unsecured creditors of USACM: "Each holder of an Allowed General Unsecured Claim shall receive a beneficial interest in the USACM Trust, and on account of the Allowed Claim may receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees, costs, and expenses of implementation of the USACM Plan and USACM Trust."[41]

Silar's naked assertion that the Trust is liable for alleged debts of USACM as the successor in interest to USACM is not supported by the Plan or the Confirmation Order.  The Plan does not make any reference to the Trust as being the "successor-in-interest" to USACM generally.  In those limited instances where the Trust is referenced as a "successor-in-interest" to USACM, the reference is specific as to the limited capacity of USACM's "successor-in-interest" right.  For example, the Trust is referenced in the Plan "as the legal successor [of] all rights of USACM and the USACM Estate (including the USACM Estate after the Confirmation Date) to exercise or waive any attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications as set forth in the Liquidating Trust Agreement. . . ."[42]  Similarly, there are two references to the Trust being the

---

[40] Id. at 48.

[41] Id. at 33.

[42] Id. at 12, ¶ 35, ll. 22-23.



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1    "successor-in-interest" in the Liquidating Trust Agreement.[43]  Neither of these references

2    is general in nature.[44]

3    **4.    USACM Did Not Breach the APA And It was Not Unjustly Enriched**

4            An interested reader would have expected Silar to quote the relevant

5    representations and warranties of the APA chapter and verse.  Since Silar made no effort

6    to identify a contractual basis for its claim, the Trust looked to Article 3 - Statements of

7    USACM, but found no representations or warranties that the direct lenders could not

8    terminate Compass as servicer or guaranteeing Compass that its interpretation of the LSAs

9    would prevail.  This Court, like every other participant in the confirmation hearing, is

10   keenly aware that Compass did not obtain such representations or warranties because the

11   direct lenders alleged a right to terminate Compass as servicer and vehemently disagreed

12   with Compass' position regarding servicing fees and how those fees would be paid to

13   Compass.

14           Silar's alternative unjust enrichment theory is no more availing.  Where parties

15   have negotiated and performed a specific written contract, there can be no cause of action

16   for "unjust enrichment" as a years later effort to renegotiate contractual provisions.  "An

17   action based on a theory of unjust enrichment is not available when there is an express,

18   written contract, because no agreement can be implied when there is an express

19   agreement."[45]

20

21

22

23   [43] Estate Administration And Liquidating Trust Agreement And Declaration Of Trust, DE
     2002 Ex. A, §§ 4.4(a) and  9.4.

24   [44] *Id.*

25   [45] *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 113 Nev. 747, 755,
     942 P.2d 182, 187 (1997); *see also Lipshie v. Tracy Investment Co.*, 93 Nev. 370, 379, 566 P.2d
     819, 824 (1977) ("To permit recovery by quasi-contract where a written agreement exists would
26   constitute a subversion of contractual principles.")



**5.    Silar Has Made No Effort To Justify Its Request For Prejudgment Relief**

Silar's motion effectively seeks to restrain transfers by the Trust to its beneficiaries based upon the adversary complaint recently filed with the Court.  Silar provides no state law or other authority for such a request for prejudgment relief.  Silar makes no effort to comply with Bankruptcy Rule 7065 in its papers and offers no security for the extraordinary relief sought.  Upon what basis would the Court entertain Silar's request? Further, USACM's creditors should not be deprived of their pro-rata share of the recoveries generated by the Trust and the now two plus years of effort on creditors' behalf, because Silar wants yet another opportunity to either rescind the Court approved APA or hold someone accountable for the disputes it, and its predecessor Compass, find themselves embroiled in since consummating the APA.

Conclusion

The Trust requests that Silar's response be overruled and the Trust authorized to proceed with the interim distribution as requested in the motion.[46]

Dated October 8, 2009.

**LEWIS AND ROCA LLP**

By: _John Hinderaker (AZ #18024)_____
        Rob Charles, NV 6593
        John Hinderaker, AZ 018024 (*pro hac vice*)
        *Counsel for USACM Liquidating Trust*

---

[46] Nothing in this response is a waiver of the Trust's rights or remedies with respect to the Silar adversary proceeding which is, plainly, legally and factually frivolous.  The Trust urges Silar to dismiss the adversary immediately before creditors incur needless expense that must be recovered from Silar and perhaps its counsel.

260383.3

LEWIS
AND
ROCA
LLP
L A W Y E R S

1
2
3

Copy of the foregoing served on October
12, 2009, via e-mail to all parties with e-
mail addresses on the Post Effective Date
Official Service List on file with this
Court and on and the persons listed
below:

4
5
6
7

Randolph L. Howard, Esq.
Peter D. Navarro, Esq.
Kolesar & Leatham, CHTD.
3320 West Sahara Avenue, Suite 380
Las Vegas, NV  89102
rhoward@klnevada.com
pnavarro@klnevada.com

8
9
10

Katherine M. Windler, Esq.
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Katherine.windler@bryancave.com

11
12
13

    /s/  Renee L. Creswell
Renee L. Creswell
Lewis and Roca LLP

14
15
16
17
18
19
20
21
22
23
24
25
26

12

260383.3