Improvement Costs in accordance with Section 2 and Exhibit B. Borrower agrees to deliver to Lender receipts, vouchers, statements, bills of sale and/or other evidence, satisfactory to Lender, of the actual payment of such Improvement Costs, upon the request of Lender at any time and from time to time. In particular, within thirty (30) days after each Land Loan Advance for the payment of Improvement Costs, Borrower shall deliver to Lender a receipt executed by the General Contractor for each payment made to the General Contractor and, upon request of Lender, receipts executed by each subcontractor for payments to them. Notwithstanding anything to the contrary contained in this Agreement, Lender shall not be obligated to advance more than the least of (I) the cost of the work or materials actually in place; (II) the value of the work completed, as determined by the Inspector; or (III) the percentage of work in place as approved for payment by Lender or the Inspector, based on Exhibit B (as Lender may revise in accordance with this Agreement), in each case subject to retainage as provided for above, and no funds will be advanced for materials to be stored on or off the Premises but not yet incorporated or installed, or for materials ordered to be fabricated and not yet delivered to the Premises, unless Borrower furnishes Lender satisfactory evidence that such materials are properly identified to the project, insured (under the insurance policies required pursuant to the Loan Documents), adequately stored and secured in a bonded yard or secure warehouse or factory, and subject to a security interest in favor of Lender. At Lender's request, Borrower shall provide a certification confirming that, upon payment, ownership of such stored material will vest in Borrower free of third party liens or claims, and that the seller or fabricator recognizes Lender's security interest in such stored materials.

Each Land Loan Advance shall be deemed to be an advance under the Land Note. Notwithstanding the foregoing, Lender may apply any amounts due Borrower under this Agreement toward the satisfaction of any one or more terms or conditions of this Agreement, and amounts so applied shall be part of the Loan, as determined by the Lender in its sole discretion if not otherwise provided for in this Agreement, shall bear interest as provided in the Land Note or in the L/C Note, as applicable, and shall be secured by the lien of the Deed of Trust.

### 10.    FINAL LAND LOAN ADVANCE.

When the Improvements have been fully installed, Borrower shall supply Lender with the following documents, in addition to satisfying all of the conditions, and supplying all of the documents, required under Section 8 above, before Lender need disburse the final Land Loan Advance or release the retainage described above:

A.    Certificates from the General Contractor, the Engineer and the Inspector attesting that the Improvements have been completely installed in accordance with the Improvement Plans, in a good and workmanlike manner, and in accordance with all laws, statutes, ordinances, rules and regulations of all governmental authorities having, asserting or exercising jurisdiction over the Premises;

B.    A certificate from Borrower stating the total actual Improvement Costs;

C.    Copies of all governmental certificates required by all governmental authorities having, asserting, or exercising jurisdiction over the Premises, certifying that the completed

459461_11.DOC

-34-

Exhibit 1

Improvements comply with all laws, statutes, ordinances and regulations applicable to the Premises;

D.      A certified survey of the A Land, acceptable to Lender and the Title Company, showing the Improvements as installed, and also showing easements, roads, and the other information required by Subsection 7.B. above;

E.      A General Contractor's and Owner's Final Affidavit (an "Affidavit") as to payment, and the release of liens, of all lienors named in the Affidavit, and a final release of construction liens, mechanic's liens, and/or similar liens, executed by the General Contractor and each subcontractor, laborer and materialman who or which gave notice of a right to a mechanic's lien, construction lien, or similar lien to the owner (Borrower), which final release must be satisfactory to Lender and the Title Company in form and substance; and

F.      All other instruments and/or documents, related to the Improvements and/or the Premises, which Lender may request.

    11.     RESERVED.

    14.     RESERVED.

    15.     RESERVED.

    16.     EXPENSES.

Borrower shall pay, as and when due, all fees and charges incurred by Lender for, or related to, the procuring, making, servicing, and/or administration of the Loan, including, without limitation, the fees, premiums, and charges of the Title Company (including all co-insurer) for examination of the title to the Premises and for the Title Policy insuring the Deed of Trust, the expenses of surveys, documentary stamp taxes, intangible taxes, recording expenses, appraisal and appraisal review fees and expenses, fees of the Inspector, Lender's Commitment and loan origination fees, all loan referral fees, if any, and the fees and expenses of all attorneys, accountants, engineers, architects, surveyors, contractors, inspectors and/or other consultants, professionals and independent contractors employed, retained or utilized by Lender, at any time, in connection with the Loan and all other costs, fees, charges or expenses incurred by Lender in connection with, or related to, the Loan. Moreover, Borrower shall pay, as and when due, all insurance premiums, taxes, assessments, water, sewer, and other utility charges, and impact fees, and liens and encumbrances upon the Premises, and all other amounts necessary for the payment of the actual cost of the Improvements and all other improvements to the Lots, if any. Borrower shall, upon demand, promptly pay, or reimburse Lender for the payment of, all fees, charges, costs, and expenses, if any, incurred by Lender in (A) collecting all indebtedness evidenced by the Land Note or the L/C Note, or due in accordance with the Loan Documents, including, without limitation, attorneys' fees in all trial, bankruptcy and appellate proceedings, and whether or not Lender institutes legal proceedings in connection with any claim by Lender under the Land Note, the L/C Note, or any other Loan Document, in any bankruptcy, reorganization, or receivership, or other proceedings affecting creditors' rights; and (B) protecting or preserving the security interest of Lender under this Agreement or any other Loan Document, or in any other proceeding whatsoever involving any Loan Document. All such amounts, unless sooner paid,
459461_11.DOC

-35-

Exhibit 1

shall be paid, by Borrower from time to time as Lender shall request, either to the Person to whom such payments are due or to Lender if Lender has paid the same, or Lender may, at its option, pay any such amounts, and all sums so paid by Lender shall be deemed Advances under this Agreement and the Land Note or the L/C Note, as applicable, and shall bear interest at the default rate stated in the applicable Note, and shall be secured by the Deed of Trust.

17.    WARRANTIES AND REPRESENTATIONS OF BORROWER.

Borrower represents and warrants to Lender as follows:

A.    Authority to Enter into Loan Documents.  Borrower has full power and authority to enter into, execute and deliver to Lender the Loan Documents, to consummate the transactions contemplated in this Agreement, and to perform Borrower's obligations under this Agreement, and the facts and matters expressed or implied in the opinions of Borrower's legal counsel are true and correct;

B.    Validity of Loan Documents.  The Loan Documents have been duly and validly executed and delivered to Lender, and are in all respects legal, valid, binding, and enforceable against Borrower in accordance with the terms of the respective Loan Document, subject only to bankruptcy, insolvency, moratorium and reorganization laws, and other laws affecting the enforcement of creditors' rights generally;

C.    Conflicting Transactions of Borrower.  Borrower's execution and delivery of the Loan Documents, and the consummation of the transactions contemplated thereby, do not, and Borrower's performance of its obligations under the Loan Documents will not: (I) conflict with, or result in a violation or breach of, or a default under: (a) the organizational documents of Borrower, including, without limitation, the partnership agreement or limited partnership agreement of any partnership Borrower, the articles of incorporation, bylaws, or code of regulations of any corporation Borrower, the trust agreement of any trust Borrower, or the operating agreement or articles of organization of any limited liability company Borrower; (b) any agreement, contract, lease, mortgage, indenture, or other document or instrument, to which Borrower is a party or by which Borrower or any of its property is bound; or (c) any law, statute, ordinance, rule or regulation, or any writ, order, judgment or decree, by which Borrower or any of its property is bound; nor (II) result in the creation or imposition of any lien, charge, or encumbrance, of any nature whatsoever, upon any property or asset of Borrower (other than the lien and security interests created by the Deed of Trust, the Financing Statements, and the other Loan Documents);

D.    Pending Litigation.  There are no actions, suits, restraining orders, injunctions, investigations, proceedings, or inquiries, at law or in equity, pending or threatened, by or before any judicial, quasi-judicial, legislative, executive, or administrative court, agency, or authority, or any arbitrator, nor any basis for any of the foregoing, in which a determination, ruling or finding could materially adversely affect the use, operation, or value of the Premises, the validity or enforceability of any Loan Document, or any transaction contemplated thereby, or the business, financial condition, or assets of Borrower;

459461_11.DOC

Exhibit 1

E.    Construction and Compliance with Laws.   All construction, if any, performed on the Premises before the date of this Agreement has been performed in accordance with the applicable Plans, as approved by Lender.  Moreover, if such construction includes one or more Improvements, there are no structural defects in the Improvements, and there exists no violation of any applicable zoning, building, fire, safety, health, environmental or other local, state or federal law, ordinance, or regulation with respect to such construction or the use or anticipated use of the Improvements.  Borrower has obtained all licenses, permits, and approvals required by all local, state and federal agencies regulating such construction and use, and Borrower is in compliance with all laws, regulations, ordinances, and orders of all governmental authorities having or asserting jurisdiction over all or any portion of the Premises;

F.    Financial Statements.   The financial statements of the Reporting Persons, and all other documents and information delivered to Lender by or on behalf of the Reporting Persons before the date of this Agreement, whether or not otherwise referenced in this Agreement, are true, correct and complete in all material respects.  In addition, all such financial statements were prepared in accordance with generally accepted accounting principles consistently applied, and fairly present the financial condition of the subject Reporting Person as of the date of the respective financial statement.  No material adverse change in the financial condition reflected in any such financial statement has occurred since the date of such financial statement, and no additional borrowings have been made by any Reporting Person since the date of the financial statement of the Reporting Person, except such borrowings as Lender may have approved in writing;

G.    Taxes.   Borrower has filed all Federal, State, county and municipal income and other tax returns which Borrower was required to file, and has paid all taxes for which Borrower is liable, whether pursuant to any such return or pursuant to any assessment that Borrower received, or otherwise.  Borrower knows of no basis for any additional assessment in respect of such taxes. If Borrower is a corporation, limited liability company, partnership, trust, or other entity, the provisions for reserves for taxes on its books are adequate, in Borrower's reasonable opinion and that of its independent certified public accountants, for all unaudited fiscal years and the current fiscal period of the Borrower;

H.    Availability of Utilities for Improvements.   All utility services necessary for the construction, installation, and operation of the Improvements and the completion, use and occupancy of one thousand one hundred two (1,102) single family residential dwelling units upon the Premises are available in appropriate and sufficient quantity and quality at the boundaries of the Premises, and upon completion of the Improvements will be available at the boundary of each individual Lot within the Premises, including, but not limited to, drinking water supplies, surface drainage facilities, sanitary sewage collection and disposal facilities, and electric, cable television, and telephone facilities.   Borrower has obtained all permits, permissions, approvals, licenses, and authorizations necessary for unrestricted access to, and use of, such services and facilities, and all impact fees, use fees, permit fees, and assessments related to the Premises have been paid in full or are included in the Lender-approved cost itemization for the Improvements;

I.    Special-Purpose Entity.   Borrower is and will continue to be a Special-Purpose Entity.

459461_11.DOC

-37-

Exhibit 1

J.    Condition of Premises.  No portion of the Premises is damaged or injured as the result of any fire, explosion, accident, flood, or other casualty, and there are no soil conditions that would interfere with the construction or installation of any Improvement, nor is any part of the Premises subject to any pending or threatened eminent domain or condemnation proceeding.

K.    Availability of Roads for Improvements.  The Premises have frontage upon, and adequate permanent access to, one or more paved and dedicated public roads.  Either all roads necessary for the full utilization of the Premises for their intended purposes have been completed, or the necessary rights of way for such roads have been acquired by the appropriate local authorities or have been dedicated to public use and accepted by such local authorities.  All necessary actions have been taken by Borrower and such local authorities to assure the complete construction and installation of such roads;

L.    Availability of Roads.  Either all roads necessary for the full utilization of each Lot for its intended purposes have been completed, or the necessary rights of way for such roads have been acquired by the appropriate local authorities or have been dedicated to public use and accepted by such local authorities, and all necessary actions have been taken by Borrower and such local authorities to assure the complete construction and installation of such roads;

M.    Construction Liens.  No work or materials have been furnished to, or for the benefit of, the Land before the recordation of the Deed of Trust except as disclosed to Lender and Title Company;

N.    Advertising.  Borrower has not used, and will not use, any promotional, advertising, or other material relating to the Premises, including, without limitation, the sale or leasing thereof, or relating to the transactions contemplated in this Agreement, which violates any law, ordinance, rule, or regulation of any governmental body or court of law;

O.    Compliance with Land Use and Environmental Laws.  The current and anticipated use and operation of the Premises is permitted by all applicable land use, building, environmental and zoning laws, statutes, regulations, resolutions and ordinances.  No asbestos and no toxic or hazardous waste, substances or materials, of any kind or nature (collectively referred to as "Toxins" in this Agreement), have been buried, or have accumulated, or are located, in, on, under, or about the Premises, or in any building, improvement or structure on the Premises.  Neither all, nor any part, of the Premises is contaminated by asbestos or any Toxin.  No mold (of any type or nature, including, without limitation, cladosporium, alternaria, eurotium, streptomyces, epicoccum, stachybotrys chartarum, penicillium, and aspergillius), is located in or on any building, improvement, or structure on the Premises.  No asbestos or Toxin is or will be stored at, or located in, on, under or about, the Premises which requires a permit from any governmental authority, or which requires that the Premises or any improvements thereon be modified or altered to accommodate such asbestos or Toxin or which would in any way materially limit the use or development of the Premises as contemplated by the Commitment or the Loan Documents.  No claims have been made against any present or former owner, occupant or user of the Premises relating to the use or storage at, or the location at, in, on or under, the Premises, of asbestos, any mold, or any Toxin;

459461_11.DOC

-38-

Exhibit 1

P.      Purposes of Loan. The Land Loan and the L/C Facility are made for business, commercial, investment or other similar purposes and not for personal, consumer, family, household, educational, agricultural or other similar purposes or uses, and such Loan will not be used for personal, consumer, family, educational, household, agricultural or other similar purposes or uses;

Q.      No Default. No default or Event of Default, or event which, with notice or lapse of time or both would constitute a default or an Event of Default, under any Loan Document, or under any other indebtedness or obligation of Borrower to Lender, or of Borrower to Bank of the West under the B Land First Deed of Trust Loan Documents has occurred;

R.      Legal Status. Borrower represents and warrants to Lender as follows: (i) Borrower's exact legal name is that indicated in the preamble hereof; (ii) Borrower is an organization of the type, and organized in the jurisdiction, set forth in the preamble hereof; (iii) Borrower's state issued organizational identification number is 200106710077; (iv) Borrower's place of business, or if more than one, its chief executive office as well as its mailing address, is accurately set forth in the preamble to the Deed of Trust; and (v) all other information set forth in the Loan Documents pertaining to Borrower is accurate and complete;

S.      Material Information. The financial information, about each Reporting Person that is referred to in this Agreement does not, nor does this Agreement or any other Loan Document or any written statement furnished to Lender by any Reporting Person, contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein or herein not misleading. Borrower and Guarantor have disclosed to Lender, in writing, all facts, if any, which materially adversely affect or, so far as Borrower and Guarantor can now foresee, will materially adversely affect the business, prospects, profits, or condition (financial or otherwise) of Borrower, Guarantor, or the Premises, or the ability of Borrower to perform all of its obligations under this Agreement, or the ability of any obligor under any Loan Document to perform its obligations under such Loan Document.

All statements contained in each certificate or other document or instrument, of any kind whatsoever, delivered by or on behalf of Borrower pursuant to this Agreement or any other Loan Document, or in connection with the transactions contemplated hereby or thereby, shall be construed as representations and warranties made by Borrower to Lender in this Agreement, and together with all representations and warranties in this Agreement and/or in the other Loan Documents, shall survive the execution and delivery thereof and of this Agreement and the other Loan Documents, the making of each Advance, and the making of any investigation by any Person at any time by or on behalf of Lender; and

T.      USA Patriot Act. Borrower warrants and represents to Lender that neither the Borrower, any Guarantor, nor any Affiliate, is identified in any list of known or suspected terrorists published by any United States government agency, (collectively, such lists, as they may be amended or supplemented from time to time, are referred to as the "Blocked Persons Lists") including, without limitation, (a) the annex to Executive Order 13224 issued on September 23, 2001, and (b) the Specially Designated Nationals List published by the Office of Foreign Assets Control.

459461_11.DOC

Exhibit 1

U.     B Land Collateral; C Land First Deed of Trust Loan Documents.   Borrower warrants and represents to Lender that Exhibit L attached is a true, correct and complete statement of the status of the B Land and statement of amounts committed, outstanding and available, respectively, from Bank of the West under the B Land First Deed of Trust Loan Documents.

18.     ADDITIONAL COVENANTS OF BORROWER.

Borrower further covenants and agrees with Lender as follows:

A.     Construction Liens.     Borrower will allow no work or construction to be commenced on the Land, or goods to be specially fabricated for incorporation into the Land, which have not been paid for in full before the recordation of the Deed of Trust. Borrower shall save and hold harmless Lender from the claims of every mechanic's, construction, materialman's, and equitable lien claimant, if any, and pay promptly, upon demand, all loss or losses that Lender may incur as a result of the filing of such liens, including, without limitation, the reasonable cost of defending against such liens and Lender's reasonable attorneys' fees (in all trial, bankruptcy and appellate proceedings, and whether or not legal proceedings are instituted) in connection with each such defense.

In addition, Borrower shall, at its sole cost and expense, cause every construction, mechanic's, materialman's, and/or equitable lien, which may be filed against any part of the Premises, or against undisbursed funds of the Loan, to be released or transferred to a bond ("bonded off") within sixty (60) days after the date of the filing of such lien, time being of the essence. Lender shall be under no obligation to make any further Advance while any such lien against the Premises or against such undisbursed Loan proceeds remains outstanding.

Borrower agrees to fully pay and discharge all claims for labor done and materials and services furnished in connection with the construction of the Improvements (and agrees that Loan proceeds, as applicable, are to be applied to such claims in accordance with the development budget), to diligently file or procure the filing of a Notice of Completion upon completion of construction of the Improvements, to diligently file or procure the filing of a Notice of Cessation upon a cessation of labor on the work of the Improvements for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against either the Premises, any part thereof or right or interest appurtenant thereto, or the Improvements and/or of claims or bonded stop notices filed against or served upon Borrower or Lender. Borrower acknowledges that no portion of the Loan proceeds shall be disbursed to or for the benefit of Borrower in the absence of satisfactory evidence that all such claims have been paid (or that the time for recording claims of liens has expired and no such claims have been recorded). Such "satisfactory evidence" shall include the unconditional release or removal of all mechanic's liens and bonded stop notices, the payment or satisfaction of which was covered by all prior disbursements of the Loan proceeds or Borrower's own funds during the term hereof, and the removal or release of all mechanics liens or bonded stop notices not yet paid, conditioned upon such payment.

Upon demand by Lender, Borrower shall make such demands or claims upon General Contractor and any laborers, material suppliers, subcontractors, sub-subcontractors, or other

459461_11.DOC

-40-

Exhibit 1

Persons who have furnished or claimed to have furnished labor, services, or materials in connection with construction of the Improvements which said demands or claims shall, under the laws of the State of California, require diligent assertion of lien claims and stop notice rights upon penalty of loss or waiver thereof. Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided, however, that Borrower shall, within ten (10) Business Days from the initiation of any contest: (a) record, in the Office of the County Recorder of the County in which the Premises are situated, a surety bond pursuant to the laws of the State of California sufficient to release said claim of lien, which bond shall satisfy the requirements of California Civil Code Sections 3138 and 3139, if applicable, or (b) with Lender's consent, provide Lender with proof of special title insurance coverage, in a form and substance satisfactory to Lender and its legal counsel, fully equivalent to the protection of Lender's security interest in the Premises and the Improvements, as would be provided under clause (a) of this provision. Borrower agrees, upon demand by Lender, to defend, indemnify and hold Lender harmless against any action filed or claim asserted against Lender for any reason in connection with any such lien claim.

        B.      Brokerage Commissions.    Other than with respect to Builder's Capital, a California corporation, Borrower has not engaged, and will not engage, in any activity or enter into any relationship that will give rise to any claim for any brokerage commission, finder's fee or similar compensation with regard to the Loan. Borrower will indemnify Lender from all claims for a brokerage commission, finder's fee or similar compensation related to or arising by reason of the Loan, the Commitment, any negotiations or communications related to the Loan or the Commitment, the execution of this Agreement, or the consummation of the transactions contemplated in this Agreement, asserted by any Person or Persons.

        C.      Correction of Defects and Satisfaction of Conditions.    Borrower will, upon the demand of Lender or the Inspector, correct each material defect in the Improvements, if any, any structural defects, if any, and each departure from the Plans not approved by Lender or otherwise permitted by this Agreement, if any, and perform each condition precedent to Lender's obligations under this Agreement which is not satisfied or no longer satisfied, if any. The Advance of any Loan proceeds shall not constitute a waiver of Lender's right to require compliance with this Section with respect to every such defect or departure from the Plans not actually known to Lender before such Advance, or with respect to Borrower's failure to satisfy or to continue to satisfy each condition under this Agreement, whether or not Lender previously required satisfaction of such condition.

        D.      Collection of Insurance Proceeds.    Borrower shall cooperate with Lender in obtaining for Lender the benefits of any insurance or other proceeds lawfully or equitably payable to Lender in connection with the transactions contemplated by this Agreement (including, without limitation, Borrower's payment of the expense of an independent appraisal of the Premises on behalf of Lender, if any casualty affects the Premises), which proceeds shall be applied as described in the Deed of Trust.

        E.      No Assignment.    This Agreement and the Loan are personal to Borrower. Borrower shall not assign the Loan, this Agreement, or any other Loan Document, or any interest

459461_11.DOC

-41-

Exhibit 1

in the Land Loan, the L/C Facility, this Agreement, or any other Loan Document, and any such attempted assignment shall be void and of no force or effect from its beginning.

F.    Advertising; Signs.  Borrower shall not use the name of or make any reference to Lender in any sign, brochure, publication, advertisement, literature, public relations or marketing materials or media, or otherwise, without the prior written consent of Lender.  Borrower shall provide Lender with appropriate recognition of the Loan on every sign erected at the Premises during development or construction, in a manner approved by Lender.

G.    Notices.  Borrower shall give prompt written notice to Lender of any action, event or condition, of any nature, known to Borrower and which constitutes a default or an Event of Default under any Loan Document, or which might have a material adverse effect upon the business, operations, properties, assets or condition (financial or otherwise) of Borrower or Guarantor, or upon the Loan, the Loan Documents, the Premises or the construction of the Improvements.

Borrower shall furnish to Lender a copy of every notice, claim or demand delivered by Borrower to, or received by Borrower from, the General Contractor or any contractor, subcontractor, laborer, materialman or supplier who or which provided labor and/or materials to the Premises, promptly upon the delivery or receipt of such notice, claim or demand, if such notice, claim or demand is material to (I) Borrower's performance under this Agreement or under any other Loan Document, (II) the performance of Borrower or the General Contractor under the General Contract, or under any contract or subcontract for the furnishing of materials or labor to the Premises, or (III) the acquisition or maintenance of any building or development license, permit, or similar matter required by any governmental authority in connection with the completion of the Improvements.

H.    General Contract.  Borrower shall not commit, cause or permit to exist any default, breach or violation of or under the General Contract, or do or fail to do any act that would relieve the General Contractor from its obligations under the General Contract, or waive any obligation of the General Contractor under the General Contract, or agree to any material modification or amendment to the General Contract.

I.    Indemnification.  Borrower will protect, indemnify and save harmless Lender and its officers, directors, stockholders, agents and employees, from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses in all trial, bankruptcy and appellate proceedings, and whether or not legal proceedings are instituted) imposed upon, incurred by, or asserted against Lender or any one or more of such Persons by reason of (I) the ownership of any interest in all or any part of the Premises, (II) any accident, or any injury to, or death of, one or more Persons, or any loss of or damage to property, which accident, injury, death, loss, and/or damage occurs on or about the Premises or the adjoining sidewalks, curbs, vaults or vault space, if any, or streets or ways, (III) any use, disuse or condition of all or any part of the Premises, or the adjoining sidewalks, curbs, vaults or vault space, if any, or any streets or ways, (IV) any failure on the part of Borrower to perform or comply with any term of this Agreement, or any inaccuracy in any representation or warranty made by Borrower in any Loan Document, (V) any defense of the right, title or interest conveyed by the Deed of Trust, (VI) the

459461_11.DOC

Exhibit 1

performance of any labor or services, or the furnishing of any materials or other property, for or
to the Premises, (VII) any subsidence or erosion of any part of the surface of the Premises,
including, without limitation, any shoreline or any bank of any river, stream, creek, canal, lake,
ocean or other water source, (VIII) the location or existence of asbestos or any Toxin on, at, in or
under all or any part of the Premises, (IX) the existence of any mold as described in Subsection
15.O. in or on any building, improvement, or structure on the Premises, or (X) any claim or
demand by any Person in connection with the Collateral Agreements. If any action, suit or
proceeding is brought against Lender, or any of its officers, directors, agents or employees, for
any such reason, Borrower, upon the request of such Person, will, at Borrower's expense, cause
such action, suit or proceeding to be resisted and defended by counsel satisfactory to Lender or
such Person. All amounts payable to an indemnified Person by Borrower under this Section that
are not paid within ten (10) days after the date of a written demand □herefore shall bear interest
at the Default Rate set forth in the Land Note, or, if the Land Note is paid in full, at the Default
Rate set forth in the L/C Note, from the date of such demand, and such amounts, together with
such interest, shall be indebtedness secured by the Deed of Trust. The obligations of Borrower
under this Section shall survive any defeasance of the Deed of Trust or termination of this
Agreement.

    J.    Subordination. All indebtedness, rights and claims of Borrower, Guarantor, and
each Affiliate to or against each other, and all rights and claims of Borrower, Guarantor, and
each Affiliate against the property of Borrower or the property of Guarantor, now or hereafter
existing (collectively, the "Subordinated Indebtedness"), shall be subordinate and subject in right
of payment to the prior payment in full of all obligations of Borrower and Guarantor to Lender.
Until such obligations to Lender have been paid in full and Borrower has performed all of its
obligations under this Agreement, Borrower, Guarantor and the Affiliates shall neither receive
nor collect, directly or indirectly, from Borrower, Guarantor, or any other Person, any payment
upon any Subordinated Indebtedness, nor seek to realize upon any collateral securing any
Subordinated Indebtedness. Notwithstanding the foregoing, if Borrower receives any such
payment, Borrower shall hold the same in trust for Lender, and shall have absolutely no rights in
or to such payments except to pay them promptly to Lender, which Borrower hereby covenants
to do. Borrower will assert no right to which it may be or become entitled, whether by
subrogation, contribution or otherwise, against Guarantor or any other obligor with respect to the
Loan or any part of the Loan, or against any property of Guarantor or of any such obligor, by
reason of Borrower's performance of its obligations under the Land Note, the L/C Note, this
Agreement or any other Loan Document, except after performance and payment in full of all of
the obligations of Borrower and Guarantor under the Land Note, the L/C Note, the Deed of
Trust, this Agreement, and all other Loan Documents. To the extent that Borrower and/or
Guarantor are indebted to any one or more Affiliates, each such Affiliate shall subordinate its
rights with respect to such indebtedness to the interests of Lender evidenced by the Loan
Documents, pursuant to a written subordination agreement satisfactory to Lender in form and
substance.

    K.    Governmental Requirements. Borrower shall not, without the prior written
consent of Lender, modify or agree to modify any development order or other governmental
approval or permit necessary for the completion of the Improvements, including, without
limitation, any modification that would (I) reduce the residential density of the Premises, (II)
prevent the development or use of the Premises in the manner contemplated by this Agreement

459461_11.DOC

-43-

Exhibit 1

and the Commitment, (III) materially and detrimentally change the overall nature of the Improvements, or (IV) have a material adverse impact upon the Premises in any manner, whether directly or indirectly. Borrower shall cause the development of the Premises to comply with all Governmental Requirements. If Borrower fails to comply with any Governmental Requirement, Lender shall have the right, but not the obligation, to enter upon the Premises to correct any such failure(s) of Borrower at the sole cost and expense of Borrower, and Borrower shall promptly reimburse Lender for any and all such costs and expenses that Lender incurs, with interest as provided in the Land Note, or, if the Land Note is paid in full, with interest as provided in the L/C Note. Notwithstanding the foregoing, Lender shall not correct any such failure if Borrower has commenced correcting the failure and diligently continues the same to completion within a reasonable time, so long as Lender reasonably determines that the foregoing will not result in the termination of any governmental approval related to the Premises.

L.    Final Map. Borrower shall cause the Final Map to have been approved by the City of Temecula and recorded in the Official Records of Riverside County, California within one hundred eighty (180) days after the date of this Agreement, legally subdividing the A Land.

Concurrently, Borrower shall diligently process a tentative tract map providing for the legal subdivision of the KB Option Land into approximately one thousand one hundred two (1,102) detached fully developed single-family residential building sites.

M.    Junior Liens. The Deed of Trust shall constitute a first priority lien and perfected security interest on the Land. The Deed of Trust shall encumber all buildings, structures, improvements, furnishings, fixtures, equipment and personal property now or hereafter located on the Land, free and clear of any and all other deeds of trust, mortgages, liens, claims and other encumbrances whatsoever, except such matters as Lender may approve in writing. Notwithstanding the foregoing, Lender will permit a second priority deed of trust on the Land held by GRC, a third in priority performance deed of trust on the A Land held by KB as security for Borrower's obligations under the KB Option Agreement, and a fourth priority deed of trust on the Land granted to USAIP (collectively, the "Junior Deeds of Trust"), provided the rights of each Junior Lender and the lien of each of the Junior Deeds of Trust shall be subordinated to the Loan and to the lien of the Deed of Trust by subordination agreements satisfactory to Lender in form and substance. Lender is not obligated to partially release any Lot(s) from the lien and operation of the Deed of Trust after the occurrence of an Event of Default or after the occurrence of an event which, with notice or the lapse of time or both would constitute an Event of Default, and if Lender, in its sole and absolute discretion, agrees to partially release any Lot(s) after the occurrence of an Event of Default or after the occurrence of an event which, with notice or the lapse of time or both would constitute an Event of Default, Lender may require additional release consideration, including, without limitation (and except as otherwise provided in the Intercreditor and Subordination Agreement among GRC, Borrower and Lender), all of the net sales proceeds accruing from the sale of such Lot(s).

N.    Changes in Legal Status. Borrower agrees as follows: (i) without providing at least thirty (30) days' prior written notice to Lender, Borrower will not change its name, its place of business or, if more than one, its chief executive office, its mailing address or its organizational identification number if it has one; (ii) if Borrower does not have an organizational identification number and later obtains one, Borrower shall immediately notify

459461_11.DOC

-44-

Exhibit 1

Lender of such organizational identification number; and (iii) Borrower will not change its type of organization, jurisdiction of organization or other legal structure.

O.  Earnest Money Deposits and Escrow Arrangements. Borrower shall handle all earnest money deposits paid by a prospective purchaser of a Lot or Planning Area in accordance with and strictly in compliance with applicable law. To the fullest extent permitted by applicable law, Borrower hereby grants to Lender a security interest in all of Borrower's right, title and interest in and to any escrow agreement between Borrower and an escrow agent handling earnest money deposits for the Lots and/or the Planning Areas, and its interest in such earnest money deposits, subject to all rights of the purchasers of Lots or Planning Areas under applicable law. At Lender's request, Borrower shall cause the escrow agent handling all such earnest money deposits to enter into a three party agreement with Lender confirming that Lender holds a lien on Borrower's right, title and interest in and to earnest money deposits and that no disbursement of any portion of earnest money deposits may be made to Borrower without Lender's prior written consent, and requiring such escrow agent to advise Lender in the event that any portion of the earnest money deposits are paid to a purchaser (for example, in the event of a default by the Borrower as seller under such purchase agreements).

P.  USA Patriot Act. Borrower covenants to Lender that if Borrower becomes aware that Borrower, any Guarantor, or any Affiliate is identified on any Blocked Persons List, the Borrower shall immediately notify the Lender in writing of such information. Borrower further agrees that in the event it or any Affiliate is at any time identified on any Blocked Persons List, such event shall be an Event of Default, and shall entitle Lender to exercise any and all remedies provided in any Loan Document or otherwise permitted by law. In addition, the Lender may immediately contact the Office of Foreign Assets Control and any other government agency the Lender deems appropriate in order to comply with its obligations under any law, regulation, order or decree regulating or relating to terrorism and international money laundering. Upon the occurrence of such Event of Default, Lender will forbear enforcement of its rights and remedies during such time as (1) the Person identified in a Blocked Persons List is contesting in good faith by appropriate legal proceedings such Person's inclusion in a Blocked Persons List and (2) the Lender determines, in its sole and absolute discretion, that such forbearance will not adversely affect title to, the condition or value of, or any lien in favor of the Lender and encumbering, any part of the Mortgaged Property (as defined in the Deed of Trust) or otherwise adversely impact the ability of any Person to perform such Person's obligations under or with respect to any Loan Document.

Q.  Stop Notice. Lender may withhold any Advance if as to the particular Advance in question, Lender believes that withholding such Advance, in whole or in part, is required by the California stop notice laws (and any such stop notice has not been bonded over), in which case the amount withheld by Lender shall be limited to the amount of the claim. In the event that any stop notice or claim is asserted against Lender by any Person furnishing labor, services, or materials to, or for the benefit of, the Land, Borrower shall, upon demand by Lender, take such action as Lender may require to release Lender from any obligation or liability with respect to such stop notice or claim, including, without limitation: (I) if the claim is being contested in good faith by appropriate proceedings, obtaining a bond or other security that is in form, substance, and amount satisfactory to Lender, or (II) payment of such claim. If Borrower fails to take such action, Lender may, in addition to its other rights hereunder, file an interpleader action requiring

459461_11.DOC

-45-

Exhibit 1

all claimants to interplead and litigate their respective claims, and in any such action Lender shall be released and discharged from all obligations with respect to any funds deposited in court. In addition, Lender may disburse Loan proceeds up to the amount set forth in such stop notice or claim into a non-interest bearing bank controlled account selected by Lender in its sole and absolute discretion, which account is hereby pledged to Lender as security for the Loan. Such funds may thereafter be used by Lender to make any disbursements required or demanded pursuant to the stop notice or claim, and to the extent that Lender is released from liability under the stop notice or claim, any balance of such funds may be disbursed in the manner provided herein for Advances or applied to the Loan, all in such order and manner as Lender may determine or, if the Loan has been repaid in full, released to Borrower.

        R.    Environmental Cleanup.  Borrower agrees that, upon the discovery, by Borrower, Lender, the Inspector, any governmental authority, or any other Person, at any time, of the burial, accumulation, and/or location, of any asbestos or Toxin, as described in Subsection 15.O.above, in, on, under, or about the Premises, whether or not in violation of any federal, state, or local law, statute, regulation, resolution, or ordinance, and/or any mold, as described in Subsection 15.O. above, in or on any building, improvement, or structure on the Premises, and/or that is the subject of any litigation, mediation, or arbitration between the Borrower and any other Person, the Borrower shall: (I) immediately notify Lender of the discovery of such asbestos, Toxin, and/or mold, (II) at Borrower's sole cost and expense, engage the services of a professionally licensed environmental remediation firm that has expertise in the cleanup of such asbestos, Toxin, and/or mold, which firm must be acceptable to Lender (the "Environmental Consultant"), to provide Borrower with an assessment report, a remediation plan, and a detailed cost estimate to clean up such asbestos, Toxin, or mold (the "Environmental Report"), (III) within 30 days after the discovery of such asbestos, Toxin, and/or mold, provide Lender with a copy of the Environmental Report, (IV) within 15 days after Borrower's receipt of such Environmental Report, at Borrower's sole cost and expense, implement the remediation plan as contained in the Environmental Report, (V) prosecute, with due diligence, the completion of such remediation plan, and obtain a post-remediation verification and closure report from the Environmental Consultant, (VI) provide Lender with a copy of such verification and closure report, (VII) if such asbestos, Toxin, and/or mold is covered under any insurance policy owned by Borrower and/or an Affiliate of Borrower, make a claim against such insurance company and assign the proceeds of such claim to Lender as additional collateral for the Loan, (VIII) within 15 days after Borrower's receipt of such Environmental Report, deposit cash in the amount of 110% of the estimated cost to clean up such asbestos, Toxin, and/or mold, as such cost estimate is contained in the Environmental Report, into a depository account maintained with, and pledged to, Lender, as additional collateral for the Loan, which funds shall be disbursed by Lender to pay for such cleanup costs on the same terms and conditions as for an Advance of Land Loan proceeds, and (IX) execute and deliver to Lender an assignment agreement and/or a pledge agreement, and such other documents as Lender may reasonably request, to enable Lender to perfect its security interest in such insurance proceeds and/or in the funds in the depository account described above. After the discovery of such asbestos, Toxin, and/or mold, and until Borrower has deposited 110% of the estimated cost to clean up such asbestos, Toxin, and/or mold, Lender shall have no obligation to Advance any Loan proceeds, and Borrower's failure to comply with any one or more of the above obligations shall be an Event of Default. At the cost and expense of the Borrower, the Borrower shall immediately cause such asbestos, Toxin, and/or mold to be removed from the Premises to the extent required to comply with all laws, statutes, regulations,

459461_11.DOC

-46-

Exhibit 1

resolutions, and ordinances, or to comply with any judgment, decree, or other resolution of the above-mentioned litigation, mediation, or arbitration, as applicable. The rights and remedies of the Lender, as described in this Section, are in addition to, and not in substitution of, all rights and remedies of the Lender set forth in the Deed of Trust and/or in the other Loan Documents, and at law and in equity.

S.     Fiesta Development Inc. Shares.  Richard Ashby shall not sell, assign, encumber, mortgage, or otherwise transfer any equity interest in Fiesta Development, Inc. owned or held by Richard Ashby, without the prior written consent of Lender, which consent Lender may deny in its sole discretion.

T.     Maintain SPE Status.  Borrower shall be maintained as a bankruptcy remote Special Purpose Entity in form acceptable to Lender, maintaining a Special Member pursuant to the terms of an Operating Agreement approved by Lender.

U.     KB Option Agreement Compliance.     Borrower shall timely perform all obligations required to be performed under the KB Option Agreement.

V.     · B Land Collateral.  Portions of the B Land are currently encumbered by a Deed of Trust made by Borrower in favor of Bank of the West, a California corporation dated June 10, 2003 and recorded July 3, 2003 as Instrument No. 03-497561, as the same may be modified or extended as authorized described below (the "B Land First Deed of Trust").  The B Land First Deed of Trust, and any other document or instrument that evidences and/or secures the indebtedness secured by the B Land First Deed of Trust, are collectively referred to as "B Land First Deed of Trust Loan Documents" in this Agreement.

(1)     Borrower shall not cause any portion of the B Land to be further encumbered, pledged, or assigned, or allow a lien to be recorded against the B Land other than the B Land First Deed of Trust, and shall perform all obligations owed to the holder of the B Land First Deed of Trust.

(2)     All transfers of the B Land shall be handled through an escrow arrangement with Orange Coast Title Company escrow department (attention Mary Antinora) ("OC Title").  Borrower shall advise Lender at least three (3) business days prior to the sale or transfer of any portion of the B Land and partial release therefrom of the B Land First Deed of Trust and the terms of sale, providing a preliminary settlement statement and identifying escrow information (each, a "Sales Escrow") to Lender.  All net proceeds (after payment of all demands in escrow other than any demand of Borrower or an Affiliate) from the Sales Escrows shall be paid to Bank of the West to pay off amounts secured by the B Land First Deed of Trust.  Prior to payment in full of all obligations secured by the B Land First Deed of Trust Loan Documents, Borrower shall provide Lender not less than thirty (30) calendar days notice prior to the estimated payment date, and Borrower and Lender shall enter into an agreement with OC Title to cause the net proceeds of each Sales Escrow otherwise payable to Borrower to be paid to a holding escrow (the "OSB Escrow") for the benefit of Lender, and promptly disbursed to Lender as provided herein.

459461_11.DOC

Exhibit 1

(3)    Borrower has advised Lender that it is negotiating with Bank of the West with respect to an extension of up to one (1) year (to September 5, 2006) and an additional loan advance (of approximately $3,900,000.00) of the Bank of the West loan described in the B Land First Deed of Trust Loan Documents, for a maximum outstanding amount not to exceed $20,728,091. Borrower covenants it will not otherwise modify, extend, collateralize with additional security or otherwise amend such loan or the B Land First Deed of Trust Loan Documents without the express, prior written consent of Lender, acting in its sole discretion.

(4)    Each Planning Area, and each Lot, owned by Borrower and located on the B Land, and encumbered by the B Land First Deed of Trust shall be encumbered by a new Deed of Trust in favor of Lender immediately upon the release of such Planning Area or Lot from the lien of the B Land First Deed of Trust. Borrower shall execute and deliver to Lender through OC Title such additional deeds of trust, such that each Planning Area, and each Lot, owned by Borrower and on the B Land may be encumbered by a first priority Deed of Trust and serve as security for the repayment of the Loan upon the release of any such Planning Area or Lot from the lien of the B Land First Deed of Trust, for recordation under the OSB Escrow arrangement with OC Title. Such new deeds of trust and any related modification agreements (collectively with the Escrow Assignment, Collateral Assignment and other security documents described in this Agreement, as applicable, the "B Land Security Documents") must be satisfactory to Lender in form and content, in the sole and absolute discretion of Lender.

(5)    On recordation of a new Deed of Trust in favor of Lender as the first lien against a Planning Area or Lot on the B Land, as described in clause (4) above, Borrower shall promptly cause to be issued to Lender an endorsement to Lender's policy of title insurance assuring the priority of such new Deed of Trust as a first in priority lien subject only to such exceptions as Lender may approve in writing. Borrower shall execute such other and further documents and provide such opinions of counsel as Lender may reasonably request to assure the authorization, execution and enforceability of the B Land Security Documents, and to carry out the purposes of this Paragraph, at Borrower's cost.

(6)    Upon the payment in full of the indebtedness secured by the B Land First Deed of Trust,

(a)    all proceeds of the sale of any B Land owned by Borrower shall be paid to Lender to apply to the unpaid balance of the Loan,

(b)    Borrower shall promptly cause to be delivered (if not previously delivered to Lender) a Collateral Assignment of Loan Documents and Allonge in form and substance acceptable to Lender assigning to Lender as security Borrower's interest in certain purchase notes and obligations made by purchasers of Lots within the B Land and related security agreements, including all contingent obligations in favor of Borrower (including, without limitation, the obligations of the payor under the Agreement of Purchase and Sale of Real Property and Escrow Instructions dated as of October 21, 2002 by Roripaugh Ranch, L.P., a California limited partnership as buyer and Borrower as seller, as amended by Amendment No. 1 dated as of October 26, 2002, as amended and assumed and related documents, all in form acceptable to the Lender and further including, but not limited to, any note payable to Borrower from Tanamera Homes; and

459461_11.DOC

-48-

Exhibit 1

(c)     Borrower shall promptly deliver to Lender an assignment of its entire interest in all then existing contracts for the sale of all, or any portion, of the B Land, including, without limitation, Planning Areas 1A, 3, 4A, 4B, 10, 11, 12, 33A and 33B. In such written assignment, Borrower shall assign to Lender, without limitation, all down payments, earnest money deposits, and sales proceeds, whenever paid, and interest on all of the foregoing (collectively, the "Escrowed Funds"), posted by the purchasers under such contracts (each, an "Escrow Assignment"). The Escrow Assignments shall include, without limitation, $3,320,438.00 being held by an escrow agent and consisting of the proceeds of the sale of Planning Area 1A of the B Land.

(7)     No deed of trust, mortgage, lien, claim, or other encumbrance whatsoever, other than the B Land First Deed of Trust, and security instruments in favor of Lender (after a partial release of the B Land First Deed of Trust, as explained above), may encumber any B Land owned by Borrower.

(8)     Borrower's failure to timely comply with any of its obligations under this subsection V. shall be an Event of Default.

W.     Fontana Tax Increment Assignment. Pursuant to the Fontana Redevelopment Agency Owner Participation Agreement and Composite Fontana Redevelopment Agency Owner Participation Agreement dated as of January 1, 1992 by and among the City of Fontana, a California municipal corporation, the Fontana Redevelopment Agency, a public body corporate and politic, and Ten-Ninety, Ltd., a California limited partnership, and related agreements, Ten-Ninety, Ltd. has certain rights to receive payments originating from the Fontana Redevelopment Agency (each, a "Fontana Tax Increment Payment"). Borrower has advised Lender that currently Bank of the West holds a security interest in the right of Ten-Ninety, Ltd. to receive Fontana Tax Increment Payments as additional security for a line of credit ("Bank of the West Line of Credit").

I.      On or before September 30, 2005, Borrower shall cause the outstanding balance under the Bank of the West Line of Credit to be reduced to $2,000,000.00 or less.

II.     Borrower covenants that it shall have caused the following to occur on or before January 3, 2006:

(a)     The Bank of the West Line of Credit shall have been paid in full and closed or refinanced with an institutional lender. If refinanced, it shall, following such refinance, no longer be secured by any pledge or security interest of or in the Fontana Tax Increment Payments and such institutional lender shall not have prohibited a first priority lien in the Fontana RFD Payments in favor of Lender;

(b)     A UCC-3 Termination Statement shall have been properly filed with respect to Bank of the West's interest in the Fontana Tax Increment Payment; and

(c)     Ten-Ninety, Ltd. and such other Persons as Lender may deem necessary or proper, shall have, promptly following such closing or refinance of

459461_11.DOC

-49-

Exhibit 1

the Bank of the West Line of Credit, authorized and directed City National Bank, and its successors and assigns ("City National"), as the payment agent of the Fontana Redevelopment Agency, to transfer, by wire, one third (1/3) of each annual Fontana Tax Increment Payment to the "Fontana Tax Increment Pledge Account" (defined below), as additional security for the performance and payment of all obligations of Borrower under the Loan Documents; such written authorization and direction (the "Fontana Tax Increment Payments Instruction") must be satisfactory to Lender in form and content, in the sole and absolute discretion of Lender, and must be irrevocable until all obligations of Borrower and Guarantors to Lender under the Loan Documents have been satisfied and paid in full. In addition, Richard Ashby and Ten-Ninety, Ltd. shall promptly assign to Lender, in writing, all of their respective rights, title and interest in (i) the Fontana Tax Increment Payment to Lender, pursuant to a written assignment (the "Fontana Tax Increment Assignment"), and (ii) in a deposit account (the "Fontana Tax Increment Pledge Account"), in each case executing such security agreements and other documents necessary to allow Lender to perfect its security interests in such collateral as additional security for the payment and performance of all obligations of Borrower and Guarantors to Lender under the Loan Documents. Such written assignment and security agreements must be satisfactory to Lender in form and content, in the sole and absolute discretion of Lender; and

(d)    Provided such opinions of counsel and such other documents as Lender reasonably requests.

III.    In the event Borrower has not caused the provisions of clause II preceding to have been satisfied on or before January 31, 2006, Lender may, at Lender's sole option, cause a line of credit facility to be made available to Fiesta Development, Inc., a California corporation and/or Creative Communities, a California corporation in an amount equal to the then balance of the Bank of the West Line of Credit (but not more than $2,000,000.00) to take out and replace the Bank of the West Line of Credit, which line of credit shall be fully guaranteed by Richard K. Ashby and by Larry Redman, and secured by assignment of two-thirds (2/3) of the annual Fontana Tax Increment Payments pursuant to pledge and security arrangements comparable to that described in clause II above (including the one-half (1/2) of such two-thirds (2/3) otherwise payable to Larry Redman and the remaining one-half (1/2) of such two thirds (2/3) otherwise payable to Richard Ashby); the one-half (1/2) of such two-thirds (2/3) (otherwise payable to Richard Ashby) shall also secure the Loan under this Agreement, as described above. If Lender does not make a line of credit available as described in this clause III and Borrower has not satisfied the conditions of clause II above on or before January 31, 2005, an Event of Default shall have occurred hereunder.

X.    Temecula CFD Bonds. Borrower has advised Lender that the Temecula CFD is expected to issue the Temecula CFD Bonds in the estimated aggregate amount of $52,000,000.00 for the payment of the mandated facilities improvements to the Roripaugh Ranch Master Plan, with the issuance date expected by Borrower to be no later than December 30, 2005.

459461_11.DOC

Exhibit 1

I.    On or before November 30, 2005, Borrower shall provide Lender verification, to Lender's satisfaction, that issuance of the Temecula CFD Bonds has been authorized, as evidenced by resolution, and deliver to Lender an opinion of counsel in form and content acceptable to Lender in its sole and absolute discretion that the Temecula CFD is authorized to issue and sell the CFD Bonds in accordance with the Temecula CFD Bond Documents.

II.    Prior to or concurrently with the issuance by the Temecula CFD of the Temecula CFD Bonds, pursuant to the Temecula CFD Bonds, and no later than December 30, 2005, Borrower shall cause the irrevocable instructions described in the Temecula CFD Assignment to be delivered to the Fiscal Agent pursuant to the Temecula CFD Bond Documents, and cause to be delivered to Lender a written legal opinion of counsel for Borrower in form and content satisfactory to Lender in the sole and absolute discretion of Lender, opining or evidencing to Lender, without limitation:

(a)    That Borrower is entitled to receive not less than $40,000,000.00 from the Temecula CFD following issuance and sale of the Temecula CFD Bonds pursuant to the Temecula CFD Bond Documents;

(b)    That Lender may enforce, against Borrower and the Temecula CFD, the Temecula CFD Assignment relating to right to reimbursement from the proceeds of Temecula CFD Bonds, and that the Temecula CFD formation and the Temecula CFD Bonds documentation comply with all applicable law; and

(c)    That the Temecula CFD will provide for the establishment of a sufficient reserve to pay interest payments on the Temecula CFD Bonds, if real estate tax revenues from the Temecula CFD are less than the real estate tax revenues projected by the Temecula CFD.

Each written legal opinion required by this Section 18.X. must be satisfactory to Lender in form and content, in the sole and absolute discretion of Lender. Any attorney providing such a written opinion to Lender, shall also provide to Lender, written evidence, satisfactory to Lender, that such attorney and his or her firm are protected by malpractice or professional liability insurance, which must cover such legal opinion for an amount equal to, or greater than, $10,000,000.00, per occurrence.

III.    Following such issuance and sale of the Temecula CFD Bonds, Borrower shall receive in reimbursement not less than the following amounts in reimbursement from the Temecula CFD by the following dates (such reimbursement amounts having then been applied to amounts due under the Loan pursuant to the Temecula CFD Assignment) provided that such Benchmark Dates shall be advanced one day for each day an extension is provided by the Temecula CFD for performance by Borrower of the obligations for which it receives reimbursement under the Temecula CFD Bonds due to the occurrence of a force majeure event):

459461_11.DOC

Exhibit 1

| Benchmark Date | Aggregate Principal Payment Requirement |
|---|---|
| 1/31/06 | $4,000,000 |
| 4/30/06 | $10,000,000 |
| 10/31/06 | $25,000,000 |
| 4/30/07 | $40,000,000 |

Y.    Modification of Other Borrower/Affiliate Loans.    In addition, on or before September 15, 2005, Lender shall cause such Persons as Lender may deem necessary or desirable, to execute modification agreements in form and content acceptable to Lender, in its sole discretion, of the following loans to Affiliates (collectively, the "Other Borrower/Affiliate Loans"):

| Borrower/Project | Loan Type | Commitment Amount |
|---|---|---|
| The Vineyard Investors, LLC | Land Loan | $ 23,000,000.00 |
| The Vineyard Investors, LLC | Revolving Loan | $ 15,000,000.00 |
| Willowbrook Residential, LLC | Revolving Loan | $  7,000,000.00 |
| Brentwood 128, LLC | Land Loan | $  5,376,000.00 |
| Brentwood 128, LLC | Revolving Loan | $ 17,000,000.00 |

Such modification agreements shall provide for an increase in the legal lending limitation, as set forth in the respective loan documents for each such Other Borrower/Affiliate Loan, to the lesser of the Statutory LTOB or the Internal LTOB (as such terms are defined in Section 7.LL of this Agreement).

Z.    Key-man Life Insurance.  Borrower agrees: (i) to cause to be maintained and paid promptly when due all premiums and other charges necessary to keep the Key-man Policy in full force until the Loan is paid in full; (ii) to promptly notify the Lender when the Insured dies or is no longer employed by, or otherwise associated with, the Borrower; (iii) that upon Lender's receipt of any and all amounts paid under the Key-man Policy, Lender may apply such amounts as a payment against the outstanding balance of the Loan, accrued interest, fees and late charges, and/or any costs and expenses incurred by Lender under the terms of this Agreement and/or the Deed of Trust, in any order as the Lender may determine in its sole and absolute discretion, without any obligation of the Lender to release any portion of the real property and/or other collateral securing the Loan; (iv) to promptly provide Lender with a copy of any and all notices it receives related to the Policy (including, without limitation, premium payment notices, past due notices, non-renewal notices and termination notices); (v) if Lender becomes aware of any non-renewal or termination of the Policy, Lender shall have the option, but not the obligation, to cure any breach causing such non-renewal or termination, or obtain a replacement life insurance policy in such amount and on such terms and conditions substantially similar to the Policy and the assignment thereof, and pay any and all amounts necessary to keep such Policy in force

459461_11.DOC

-52-

Exhibit 1

(including any reinstatement) or obtain such replacement policy, and any and all amounts paid by the Lender shall (A) be deemed Advances under this Agreement and the Land Note or the Unit Construction Note as the Lender may determine, (B) be immediately due and payable to Lender by the Borrower, (C) bear interest at the Default Rate until paid, and (D) be secured by the Deed of Trust; (vi) if Lender elects to obtain a replacement life insurance policy and the assignment thereof, Borrower shall cooperate with the Lender and shall obtain the cooperation of the Insured to enable Lender to obtain such replacement life insurance policy and assign such replacement life insurance policy to the Lender; and (vii) that Lender shall not be considered to be a fiduciary with respect to any amounts paid to or received by it pursuant to the terms of this Subsection.

## 19.    FINANCIAL STATEMENTS.

A.    Annual Financial Statements.  Within one hundred fifty (150) days after the end of each of the respective fiscal years of Borrower, and of its Affiliates Fiesta Development, Inc., Creative Communities, LLC, Ten Ninety Limited, Ashby Financial Company, Inc. and RD Land Investors (which Affiliates are collectively the "Affiliated Ashby Entities"), and of Ashby Development Company, Inc., a California corporation, its managing member (collectively, with Guarantors, as applicable, the "Reporting Persons" and singly, a "Reporting Person") from the date of this Agreement until the Loan is paid in full, Borrower shall provide to Lender for each such Reporting Person a financial statement dated as of the end of the most recent fiscal year of the subject Reporting Person, being as of and for the year then ended, prepared in accordance with generally accepted accounting principles consistently applied, certified by the subject Reporting Person to be true, correct and complete, and otherwise satisfactory to Lender in form and substance.  An independent certified public accounting firm must (I) audit, without qualification each annual financial statement of the Borrower, and review each annual financial year of the Affiliated Ashby Entities before its submission to Lender pursuant to this Section, and (II) note such review or audit on the face of each such statement.

B.    Content of Entity Statements.  Each financial statement furnished to Lender by a Reporting Person that is a corporation, limited liability company, trust or partnership shall consist of a statement of financial position or condition (balance sheet), a statement of income and expenses (operations), a statement of shareholders', members', beneficiaries' or partners' equity, as the case may be, and a statement of cash flow.  At Lender's request, financial statements shall also include information concerning the subject Reporting Person's other real estate holdings, including, without limitation, outstanding inventory, sales-to-date, average monthly absorption, profit margin to date, outstanding reserve, maturity date of outstanding loan(s), debt service requirements, and net cash flow.

C.    Semiannual Financial Statements of Guarantors.  Borrower shall cause to be delivered to Lender forty-five (45) days after the end of the second and fourth fiscal quarters of each of the Guarantors from the date of this Agreement until the Loan is paid in full financial statements for such semiannual periods, certified by each such Guarantor to have been prepared in accordance with generally accepted accounting principles, consistently applied, and to be true, correct and complete.

459461_11.DOC

-53-

Exhibit 1

D. <u>Quarterly Financial Statements of Borrower, Ashby Development Company, Inc., a California corporation and Affiliated Ashby Entities.</u> Borrower shall deliver to Lender, within forty-five (45) days after the end of each of the fiscal quarters of Borrower, Ashby Development Company, Inc., a California corporation, its managing member and each of the Affiliated Ashby Entities from the date of this Agreement until the Loan is paid in full, financial statements for such quarter, certified by their respective chief executive officer or chief financial officer to have been prepared in accordance with generally accepted accounting principles, consistently applied, and to be true, correct and complete.

E. <u>Sales Report and Construction Update.</u> Borrower shall deliver to Lender, within twenty (20) days after the end of each and every calendar quarter from the date of this Agreement until the Loan is paid in full, a quarterly Sales Report and Construction Update substantially similar to the form attached to this Agreement as <u>Exhibit J</u>.

F. <u>Tax Returns.</u> Borrower shall deliver to Lender, within twenty (20) days after filing but no later than April 15 of each year (or such later date to which an extension to file shall have been obtained), each federal income tax return filed by a Borrower, Ashby Development Company, Inc., a California corporation, its managing member and Guarantor during the term of this Agreement, certified by the chief executive officer or chief financial officer of such Reporting Person, if such Reporting Person is an entity as certified by such Reporting Person, if such Reporting Person is an individual, to be a true, correct and complete copy of the federal income tax return filed by such Reporting Person with the Internal Revenue Service.

20. DEFAULT.

Upon the occurrence of any one or more of the following events (each being an "Event of Default"), all of Lender's obligations to make any further Advance shall, at Lender's sole option, terminate, and Lender may, at its sole option, exercise any one or more of its remedies contained in this Agreement, and any one or more other rights or remedies available to Lender under the Loan Documents or at law or in equity. Notwithstanding the foregoing, Lender, in its sole discretion, may make one or more Advances or partial Advances after the happening of any Event of Default without thereby waiving the right to exercise such remedies and without becoming liable to make any further Advance:

A. <u>Failure to Pay.</u> Borrower fails to pay any installment of principal or interest, or any premium or other charge, under the Land Note and/or the L/C Note within ten (10) calendar days after the same is due and payable, or fails to pay any other indebtedness secured by the Deed of Trust as and when the same becomes due and payable, or fails to pay the entire indebtedness of the Land Note or the L/C Note upon their respective maturity dates;

B. <u>Failure to Perform.</u> Borrower or Guarantor fails to observe or perform any term, covenant, or agreement contained in this Agreement, in the Land Note, in the L/C Note, or in any other Loan Document, which must be observed or performed by Borrower or Guarantor, respectively, that is not otherwise specifically set forth in this Section. Notwithstanding the foregoing, if such failure (I) is other than the payment of money or the maintenance of insurance, (II) is not intentional or grossly negligent on the part of Borrower or a Guarantor, (III) does not involve a breach of Sections 12, 13, or 15 of the Deed of Trust, (IV) does not involve a breach of

459461_11.DOC

-54-

Exhibit 1

Section 16. R. of this Agreement, and (V) does not constitute an emergency in the sole opinion of Lender, such failure shall not constitute an Event of Default if: (a) Borrower or Guarantor institutes curative action and pursues such action to completion within thirty (30) days after Lender provides written notice of such failure to Borrower; or (b) the failure is of such a nature that it can be corrected but not within thirty (30) days after Lender provides written notice of such failure to Borrower, and Borrower or Guarantor has, within the aforesaid thirty (30) days, instituted curative action and diligently and continuously pursues such action to completion, but such failure shall become an Event of Default if not cured within ninety (90) days after the date of such written notice, in any event;

      C.    Insolvency.  Borrower and/or Guarantor:  (I) becomes insolvent, or generally does not pay, is unable to pay, or admits in writing the inability to pay, its debts generally as they become due; (II) commences a proceeding under any Federal or state bankruptcy, insolvency, reorganization, or other similar code or law, or such a proceeding is commenced against Borrower or Guarantor and an order of insolvency or reorganization is entered against Borrower or Guarantor, as applicable, or such proceeding remains pending for sixty (60) days; (III) makes an assignment for the benefit of its creditors; (IV) has a receiver, trustee or custodian appointed for Borrower or Guarantor, or for the whole or any substantial part of the property of the Borrower or Guarantor, or for all or any part of the Premises; or (V) adopts a plan of liquidation of its assets;

      D.    Change in Financial Condition.  At any time until the Loan is repaid in full, (I) as determined by Lender in its sole discretion, a material adverse change occurs in the financial condition of any one or more Reporting Persons, as disclosed on the financial statements of such Reporting Person or Reporting Persons provided to Lender pursuant to Section 19 above or pursuant to any other provision of the Loan Documents, from the financial condition disclosed in the financial statements of such Reporting Person or Reporting Persons previously presented to Lender, (II) Borrower or Guarantor, or any general partner or managing member of Borrower or Guarantor, ceases to exist or to be qualified to do or to transact business in the State of California, or is dissolved, or is a party to a merger or consolidation, or issues stock or other securities of any type or series, or sells all or substantially all of its assets, or (III) Borrower, if a natural Person, or Guarantor, if a natural Person, dies, becomes incapacitated, or is adjudged incompetent;

      E.    Transfer of Stock, Membership Interest, or Partnership Interest of Borrower or Affiliate.  Except as may be specifically permitted by the Deed of Trust, any share of stock of Borrower or (as to stock held by Richard K. Ashby) Fiesta Development, Inc., is issued, sold, transferred, conveyed, assigned, mortgaged, pledged, or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or any agreement for any of the foregoing is entered into; or, any general or limited partnership interest, or other equity interest, in Borrower or Guarantor, if a partnership, is sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or an agreement for any of the foregoing is entered into, or any membership, or other equity interest, in Borrower or Guarantor, if a limited liability company, is sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or an agreement for any of the foregoing is entered into;

459461_11.DOC

-55-

Exhibit 1

F.    Transfer of Partnership Interest, Stock, or Membership Interest of General Partner.    The issuance, sale, transfer, assignment, conveyance, mortgage, pledge, or other disposition, whether voluntarily or by operation of law, and with or without consideration of any share of stock of any corporation or any membership interest of any limited liability company that is (I) a general partner of Borrower or Guarantor, (II) a general partner of a partnership that is a general partner of Borrower or Guarantor, or (III) a managing member of a limited liability company that is a general partner of Borrower or Guarantor, (or any agreement for any of the foregoing is entered into, executed or delivered); or any general partnership interest in any partnership that is (a) itself a general partner or of Borrower or Guarantor, or (b) a managing member of a limited liability company that is a general partner of Borrower or Guarantor, is sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration (or any agreement for any of the foregoing is entered into, executed or delivered);

G.    False Statements.    At any time, Lender discovers that a statement or representation contained in the Loan application, in any financial statements, or in any other material which Borrower or Guarantor furnished to Lender before or after the closing of the Loan was false, incorrect or incomplete, in any material respect, at the time Borrower or Guarantor made such statement or representation;

H.    Default under Loan Documents.    A default or an event of default occurs under the Land Note, the L/C Note, the Deed of Trust, or any other Loan Document, however, any such default or event of default under the terms of any other Loan Document shall not be an Event of Default under this Agreement if there is an applicable cure period for such default or event of default, and the default or event of default is cured within the applicable cure period;

I.    Default under Other Loans.    A default or an event of default occurs under any other loan made by Lender to Borrower and/or Guarantor, however, any such default or event of default shall not be an Event of Default under this Agreement if there is an applicable cure period and the default or event of default is cured within the applicable cure period;

J.    Default by Third Persons.    Any issuer or obligor fails to perform its obligations under any surety bond or letter of credit issued to or for the benefit of Lender in connection with the Land Loan and/or the L/C Facility;

K.    Government Approvals.    Without Lender's prior written consent, the failure to maintain in full force and effect, or the cancellation of or material modification to, any Governmental Approval;

L.    Default under Collateral Agreements.    The occurrence of a breach, violation, failure to perform or other default by Borrower or Guarantor under any Collateral Agreement, but such breach, violation, failure to perform or other default shall not be an Event of Default under this Agreement if there is an applicable cure period and such breach, violation, failure to perform or other default is cured within the applicable cure period;

Exhibit 1

M.    Interference With or Termination of Rights.  Any breach, violation, failure to perform or other default or event of default by Borrower or Guarantor under any document or instrument burdening the Premises;

N.    Failure of Conditions.  Lender determines that one or more conditions to the making of an Advance are not satisfied and such situation continues for a period of thirty (30) days after the Advance was made;

O.    Orders and Decrees.  The issuance, at the request of any Person, of an order or decree in any court of competent jurisdiction, enjoining or delaying construction of the Improvements, or enjoining or prohibiting Borrower or Lender from carrying out the provisions of this Agreement;

P.    Assignment.  Borrower attempts to assign this Agreement, or the right to receive any Advance;

Q.    Tract Map.  Borrower fails to cause the Final Map legally subdividing the A Land into the Planning Areas, and otherwise satisfactory to Lender to be recorded in the Official Records of the County of Riverside, California within one hundred eighty (180) days after the date of this Agreement.

R.    Temecula CFD Bonds.  The Temecula CFD shall have failed to authorize and have issued and sold the Temecula CFD Bonds on or before December 30, 2005, or having issued and sold the Temecula CFD Bonds, shall have failed to reimburse Borrower in amounts not less than as set forth in Section 18.X above.

S.    Representations and Warranties.  Lender determines that any representation or warranty contained in this Agreement or in any other Loan Document is inaccurate or untrue in any material respect.

T.    Special Member.  Borrower shall attempt to amend its Operating Agreement except as approved by Lender, or fail to maintain a Special Member as provided therein, approved by Lender.

U.    Stop Notice.  Receipt by Lender of a stop notice under California stop notice law, that is not withdrawn, or bonded over to Lender's satisfaction, within thirty (30) days after Lender's receipt of such stop notice.

V.    Misappropriation of Loan Proceeds.   The conversion, misapplication, or misappropriation of any Loan proceeds, the existence of any collusion, fraud, dishonesty, or bad faith by or with the acquiescence of Borrower or any Guarantor, which in any way relates to or affects the Land Loan, the L/C Facility, the A Land, and/or the B Land.

W.    KB Option Agreement.  Borrower fails to perform its obligations under the KB Option Agreement, is in default thereunder, or allows an event to occur which with notice or the passage of time, or both, would constitute such a default including, but not limited to, any failure to complete the "Optionor Work" (as defined therein) on or before September 30, 2006 (or such other date as required in the KB Option Agreement).

459461_11.DOC

-57-

Exhibit 1

X.    Bank of the West Loan. Borrower modifies the B Land First Deed of Trust, or any document relating to the B Land First Deed of Trust (other than extension rights provided for under the B Land First Deed of Trust Loan Documents and modifications described in Section 18.V of this Agreement), further encumbers the B Land, or an event of default occurs under the B Land First Deed of Trust or any other B Land First Deed of Trust Loan Document, and continues past the applicable cure period, if any, thereunder, or Borrower fails to deliver the B Land Security Documents or otherwise fails to comply with Section 18.V of this Agreement.

Y.    Failure to Replace KB Letter of Credit. In the event KB exercises the "First Option Alternative" as defined in the KB Option Agreement, if KB then fails to replace the Deposit Letter of Credit (as defined therein) as required under Section 2.4.3 with cash and a replacement letter of credit, or if such replacement letter of credit is not transferred and assigned to Lender as beneficiary.

Z.    Reimbursement Obligations Under L/C Facility. Borrower fails to timely pay or satisfy its reimbursement or other obligations, with respect to any letter of credit issued under the L/C Facility, in violation of Section 2.F.II. of this Agreement above.

AA.    Temecula CFD Resolution. Borrower fails to cause the documents and opinion described in Section 18.X.I to be delivered to Lender on or before November 30, 2005.

BB.    Temecula CFD Documents. Borrower fails to cause the documents, opinions and instruments described in Section 18.X.II to be delivered concurrently with issuance of the Temecula CFD Bonds, and no later than December 30, 2005.

CC.    Fontana Tax Increment Payments. Borrower fails to cause to be delivered the Fontana Tax Increment Assignment or otherwise fails to timely comply with Section 18.W.I or 18.W.II of this Agreement.

DD.    Death of Insured. Prior to the full repayment of the Loan, the Insured dies or is no longer employed by, or associated with, the Borrower.

EE.    Key-Man Policy. The Key-man Policy is terminated prior to the full repayment of the Loan; provided, however, such termination shall not be an Event of Default if (i) the Borrower immediately pursues such action to have such Policy reinstated within thirty (30) days after such termination, (ii) Borrower causes such Policy to be reinstated within thirty (30) days of such original termination and said Policy is still subject to the Borrower's written assignment of such Policy to the Lender, and (iii) Lender is provided with written notice from the insurer indicating that such Policy has been reinstated and is still subject to the written assignment from Borrower to Lender. In the event that Borrower does not cause such Policy to be reinstated and the Lender exercises its option to reinstate such Policy or obtains a replacement life insurance policy pursuant to Subsection 16(O) above, then Borrower's failure to keep such Policy in full force until the Loan is paid in full shall be an Event of Default.

FF.    Other Borrower/Affiliate Loans. Borrower fails to cause the modification of Other Borrower/Affiliate Loans on or before September 15, 2005 in accordance with Section 18.Y.

459461_11.DOC

Exhibit 1

GG.    Other Events of Default.  The occurrence of any event not mentioned in this Section that is deemed to be an "Event of Default" in any part of this Agreement or any other Loan Document.

21.    REMEDIES OF LENDER.

Upon the occurrence of an Event of Default, Lender may, at its option:

A.    Terminate this Agreement without affecting Borrower's liability for any breach, violation or default occurring before such termination;

B.    Commence any appropriate legal and/or equitable action to enforce performance of this Agreement;

C.    Accelerate the payment of the Land Loan, the L/C Facility, and all other sums secured by the Deed of Trust, and commence any appropriate legal and/or equitable action to foreclose the Deed of Trust or exercise any available power of sale, and collect from Borrower and/or Guarantor all amounts due Lender, with interest on such amounts at the Default Rate stated in the Land Note or the L/C Note, as applicable;

D.    Employ security personnel to protect the Premises and any construction material stored on the Land, and add the cost of such security personnel to the Land Loan or the L/C Facility, as the Lender deems appropriate, with such cost to be secured by the Deed of Trust;

E.    Exercise the rights of the Lender as assignee of Borrower with respect to rents and leases related to the Premises, purchase agreements with respect to the Premises, the General Contract, subcontracts, the Plans, all permits, licenses or authorizations issued by a governmental authority or a utility, and any other rights assigned to Lender in this Agreement or in any other Loan Document;

F.    Draw under any letter of credit and/or surety or performance bond issued to or for the benefit of Lender; and/or

G.    Exercise any one or more other rights or remedies Lender may have under the Deed of Trust or the other Loan Documents, or which may be available by statute, at law, or in equity, against or with respect to Borrower and/or Guarantor, the Premises, or any other security or collateral for the Loan, either simultaneously or in such order and manner as Lender, in its sole discretion, may elect, in each instance without prejudice to or impairment of any of Lender's other rights or remedies.

Without limiting the foregoing, Lender may proceed, whether in the name of Lender or in the name of Borrower (Borrower hereby appoints Lender as its attorney-in-fact, which authority is coupled with an interest and is irrevocable by Borrower), as Lender shall elect, to complete, or cause to be completed, the Improvements in accordance with the respective Plans, at Borrower's cost and expense.  Without Borrower's written consent, Lender will make no change in the respective Plans that would increase the cost of the Improvements, but Borrower shall not unreasonably withhold or unduly delay such consent.  Borrower shall pay to Lender all amounts expended by Lender in connection with the completion of the Improvements, together with all

459461_11.DOC

-59-

Exhibit 1

costs, charges, and expenses incident to such completion. A written statement of such expenditures by an officer of Lender shall be *prima facie* evidence of such expenditures and their propriety, and Borrower shall have the burden of proving the contrary. Lender shall have the right to apply any Loan proceeds to cause the completion of the Improvements and to pay the costs of such completion.

The remedies described in this Agreement shall be in addition to, and not in substitution for, the rights and remedies otherwise available to Lender at law or in equity, and under the Land Note, the L/C Note, the Deed of Trust, and the other Loan Documents. Lender's delay or omission in exercising, or its failure to exercise, any of its rights or remedies in this Agreement or otherwise shall not preclude or impair Lender's subsequent resort to any such right or remedy, or Lender's concurrent or subsequent resort to any other right or remedy, nor shall the exercise or partial exercise of any right or remedy prevent or impair Lender's subsequent or concurrent resort to any other right or remedy. No delay or omission by Lender in exercising any right or remedy shall be construed as a waiver of any Event of Default or any right or remedy. Lender may exercise every right and remedy from time to time and as often as Lender shall deem expedient or advisable. Lender's waiver of any Event of Default shall not extend to or affect any other Event of Default.

## 22.   LENDER'S RIGHT TO CURE.

If Borrower fails to make any payment or perform any act which Borrower is required to make or perform under this Agreement, the Deed of Trust, or any other Loan Document, Lender, without demand upon Borrower or Guarantor, and without waiving or releasing any obligation, default or Event of Default, may (but shall be under no obligation to) make such payment or perform such act for the account, and at the expense, of Borrower, and may enter upon the A Land and/or the B Land for such purpose and take all such actions on the A Land and/or the B Land as, in Lender's sole opinion, may be necessary or appropriate, all without prejudice to any other rights or remedies available to Lender. All payments so made by Lender, and all costs, fees and expenses which Lender incurs in connection with such payments, or in connection with Lender's performance of any such act, together with interest thereon at the Default Rate, as described in the defaulted Land Note or L/C Note, as applicable, from the date of payment or incidence, shall constitute additional indebtedness secured by the Deed of Trust. Borrower shall pay such additional indebtedness to Lender on demand.

## 23.   GENERAL TERMS.

The following provisions shall be applicable throughout the period of this Agreement or thereafter as provided in this Agreement:

A.   Rights of Third Persons. All conditions contained in this Agreement are imposed solely and exclusively for the benefit of Lender and its successors and assigns, and no other Person shall have standing to require satisfaction of such conditions or be entitled to assume that Lender will make Advances either upon or in the absence of strict compliance with any or all of such conditions, and no other Person shall, under any circumstances, be deemed to be a beneficiary of this Agreement or of the other Loan Documents, any provisions of which Lender may freely waive in whole or in part at any time in its sole discretion. In particular, Lender

459461_11.DOC

-60-

Exhibit 1

makes no representations and assumes no duties or obligations as to third Persons concerning the quality of the construction of, or the absence of defects in, the Improvements.

B.     Rights of Subcontractors, Laborers and Materialmen. In no event shall this Agreement be construed to make Lender or any agent of Lender, or the Title Company, liable to the General Contractor or to any contractors, subcontractors, laborers, materialmen, craftsmen, suppliers, or others, for labor, materials or services delivered to the Premises or goods specially fabricated for incorporation in the Premises, or for debts or claims accruing to, or arising in favor of, such Persons against Borrower or the General Contractor. There is no relation of any type whatsoever, contractual or otherwise, either express or implied, between Lender and the General Contractor, or between Lender and any contractor, materialman, subcontractor, craftsman, laborer, supplier or other Person supplying any labor, materials, and/or services to the Premises or specially fabricating goods to be incorporated into the Premises, and none of them is intended to be a third party beneficiary of this Agreement or of any document or instrument related to the Loan, or to have any claim or claims in or to any undisbursed or retained Loan proceeds.

C.     Lender Not Obligated to Ensure Proper Disbursement of Funds to Third Persons. Nothing contained in this Agreement or in any other Loan Document shall impose upon Lender any obligation to oversee the proper use or application of any disbursements or Advances of Loan proceeds or any liability for the failure to do so.

D.     Borrower not Lender's Agent. Nothing in this Agreement, or in the Commitment, the Land Note, the L/C Note, the Deed of Trust, or any other Loan Document, shall be construed to make Borrower the Lender's agent for any purpose whatsoever, or to make Borrower and Lender partners, or joint or co-venturers, and the relationship of such parties shall at all times be that of debtor and creditor.

E.     Continuing Liability of Borrower for Underlying Obligations. Anything to the contrary in this Agreement notwithstanding, (I) Borrower shall remain liable under its contracts and agreements with respect to each Lot and/or Planning Area to the extent set forth therein to perform all of Borrower's duties and obligations under such contracts and agreements, while at the same time performing all of its obligations to Lender under this Agreement, (II) the exercise by Lender of any of the rights under this Agreement shall not release Borrower from any of its duties or obligations under its contracts and agreements with respect to any Lot or any Planning Area, and (III) Lender shall not have any obligation or liability under such contracts and agreements by reason of this Agreement, nor shall Lender be obligated to perform any of Borrower's obligations or duties under such contracts and agreements.

F.     Indemnification from Third Person Claims. Borrower shall indemnify Lender from and against any and all liability, losses, costs, damages, expense and claims resulting from ·the disbursement of the Loan proceeds or from the condition of the Premises and/or the B Land, whether related to the quality of construction or otherwise, and whether arising during or after the term of the Loan. The content of this Section shall survive the repayment of the Land Loan and the L/C Facility, and the termination of this Agreement, and shall continue in full force and effect thereafter.

459461_11.DOC

-61-

Exhibit 1

G.      Evidence of Satisfaction of Conditions.   Lender shall, at all times, be free independently to establish to its good faith and satisfaction, and in its absolute discretion, the existence or nonexistence of a fact or facts that are asserted in documents or other evidence required by the terms of this Agreement. Lender may (but shall not be obligated to) rely on, without further inquiry, any certificate or writing purporting to be signed and delivered on behalf of Borrower, Guarantor, the General Contractor, the Engineer, or the Inspector, or any agent or employee of the foregoing (including, without limitation, accountants and attorneys), or upon any legal opinion.

H.      Captions.    The captions, headings and titles of the sections, subsections, paragraphs and subdivisions of this Agreement are for convenience of reference only, and shall not limit or otherwise affect any of the terms of this Agreement.

I.      Severability.   If the performance of any provision of this Agreement, or the performance of any related transaction, is limited by law, the obligation to be performed shall be reduced accordingly. If a court of competent jurisdiction determines that any term or provision of this Agreement, or its operation, is invalid, illegal, or unenforceable, the validity of the remaining provisions of this Agreement, and their operation, shall in no way be affected by such determination, and such provisions and their operation shall be effective to the full extent permitted by law.

J.      Application of Interest to Reduce Principal Sums Due. If any charge, interest, or late charge under any Loan Document is above the maximum rate permitted by applicable law, Lender shall apply any amounts over the lawful rate to reduce the outstanding principal balance of the Land Loan or the L/C Facility, as applicable, or any other amounts due Lender under this Agreement, and, thereafter, Lender shall refund any excess to Borrower.

K.      Governing Law.    The laws of the State of California shall govern the interpretation and enforcement of this Agreement, but if any such law is pre-empted by a law of the United States of America, such law of the United States of America shall govern and control.

L.      Waiver.   If Lender or Borrower waives any provision of this Agreement or any other Loan Document, such waiver shall not be construed to be a continuing waiver and shall not be a waiver of any other term, provision or condition of this Agreement or of any other Loan Document; and Lender or Borrower, as the case may be, shall thereafter have the right to insist upon the enforcement of the same or any other term, condition or provision of this Agreement or of the other Loan Documents. Furthermore, no provision of this Agreement shall be amended, waived, modified, discharged, or terminated except by a written instrument signed by the parties to this Agreement.

M.      Notices. All notices required or permitted by any provision of this Agreement shall be in writing and sent by registered or certified U.S. mail, or by a nationally recognized overnight courier service that can provide written evidence of delivery, and addressed as follows:

459461_11.DOC

Exhibit 1

To Lender:        OHIO SAVINGS BANK

                    200 Ohio Savings Plaza
                    1801 East Ninth Street
                    Mail Code OH99-0204
                    Cleveland, Ohio 44114
                    Attention:   Senior Executive Vice President
                                       Commercial/Construction
                                       Lending Department

To Borrower:     Ashby USA, LLC
                    c/o Fiesta Development
                    470 East Harrison Street
                    Corona, California 92879

and such notices shall be effective at the earliest of 6:00 P.M. (in the time zone of the addressee of the notice) on the second Business Day after deposit in the U.S. Mail, first class postage prepaid, or when personally delivered, addressed as provided above, or when actually received. Each party to this Agreement may change its address by notice to the other party, as provided above.

N.     Successors and Assigns. This Agreement shall inure to the benefit of, and bind, Borrower, Guarantor, and Lender, and their respective heirs, legal representatives, successors, and assigns; but nothing in this Agreement shall authorize its assignment by Borrower or Guarantor, and any such attempted assignment by Borrower or Guarantor shall be void.

O.     Joint and Several Liability. Each Person named as a Borrower in this Agreement shall be jointly and severally liable for the performance of all of the obligations, covenants and agreements of Borrower contained in this Agreement.

P.     Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

Q.     No Presumption Against Drafter. Borrower agrees that, when any Person interprets this Agreement or any other Loan Document, there shall be no presumption against Lender on the basis that Lender drafted, or engaged another Person to draft, this Agreement or such other Loan Document.

R.     Reserved.

S.     Exhibits. All Exhibits attached to this Agreement are incorporated into this Agreement by this reference.

T.     Credit Verification. Each Person obligated on the Loan, whether as a Borrower, a general partner of Borrower, a Guarantor, or in any other capacity, hereby authorizes Lender to check any credit references, verify his/her employment and obtain credit reports from credit reporting agencies of Lender's choice in connection with any monitoring, collection or future

459461_11.DOC

-63-

Exhibit 1

transaction concerning the Loan, including any forbearance with respect to or modification, extension or renewal of the Loan.

U.    Waiver of Jury Trial.  THE UNDERSIGNED WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS AGREEMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION.    THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED, AND THE UNDERSIGNED ACKNOWLEDGE THAT NO ONE HAS MADE ANY REPRESENTATION OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE UNDERSIGNED FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED, IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS AGREEMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER, AND THAT THE UNDERSIGNED HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.    THE UNDERSIGNED FURTHER ACKNOWLEDGE THAT THEY HAVE READ, AND THAT THEY UNDERSTAND, THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

[SIGNATURES ON FOLLOWING PAGE]

459461_11.DOC

-64-

Exhibit 1

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement to be effective as of the date first above written.

BORROWER:

ASHBY USA, LLC,
a California limited liability company

By:   Ashby Development Company, Inc., a
      California corporation,
      Its Managing Member

By: _____  8-01-05
      Justin K. Ashby, President

LENDER:

OHIO SAVINGS BANK, a federal savings bank

By: _____
Name: _____
Title: _____

459461_11.DOC

-65-

Exhibit 1