### EXHIBIT A-2
### LEGAL DESCRIPTION
### (B LAND)

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE SATE OF CALIFORNIA, COUNTY OF RIVERSIDE AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

LOTS 1 THROUGH 6 AND LETTERED LOTS "H" AND "K" OF TRACT 29353-2, IN THE CITY OF TEMECULA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 342, PAGES 73 THROUGH 85, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL B:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGES 64 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION FO THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION, SOUTH 0°33'55" WEST, 1,270.24 FEET, TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 89°26'05" WEST, 597.63 FEET TO A POINT;

THENCE SOUTH 0°33'55" WEST, 182.22 FEET TO A POINT ON THE EASTERLY LINE OF PARCEL 13 OF SAID PARCEL MAP;

THENCE SOUTH 89°26'05" EAST, 597.63 FEET TO A POINT ON THE EAST LINE OF SAID SECTION 20 THAT IS 182.22 FEET SOUTH OF THE TRUE POINT OF BEGINNING;

THENCE NORTH 0°33'55" EAST, 182.22 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL C:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGES 44 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION OF THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BARNEARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, AS SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION, SOUTH 0°33'55" WEST, 1,902.46 FEET, TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 89°26'05" WEST, 597.63 FEET TO THE NORTHERLY PROLONGATION OF THE WEST LINE OF PARCEL 1, AS SHOWN ON THE AFORESAID PARCEL MAP;

THENCE ALONG SAID PROLONGATION SOUTH 0°33'55" WEST, 114.83 FEET TO THE NORTHWEST CORNER OF SAID PARCEL 1;

THENCE ALONG THE NORTH LINE OF SAID PARCEL SOUTH 89°26'05" EAST, 597.63 FEET TO THE EAST LINE OF SAID SECTION 20;

THENCE ALONG SAID EAST LINE NORTH 0°33'55" EAST, 114.83 FEET TO THE TRUE POINT OF BEGINNING.

*LEGAL DESCRIPTION CONTINUED*

459461_11.DOC

Exhibit 1

PARCEL D:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGE 44 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION OF THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, AS SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION SOUTH 0°33'55" WEST, 1,720.24 FEET;

THENCE NORTH 89°26'05" WEST 597.63 FEET TO THE TRUE POINT OF BEGINNING;

THENCE CONTINUING NORTH 89°26'05" WEST, 330 FEET, MORE OR LESS, TO AN INTERSECTION WITH THE EASTERLY LINE OF LAND CONVEYED TO THE METROPOLITAN WATER DISTRICT OF SOUHTERN CALIFORNIA BY DEED RECORDED APRIL 24, 1968 AS INSTRUMENT NUMBER 037774, OFFICIAL RECORDS;

THENCE ALONG SAID EASTERLY LINE SOUTH 12°32'02" WEST (RECORD SOUTH 12°24'14" WEST), 149 FEET, MORE OR LESS, TO THE NORTHWESTERLY CORNER OF PARCEL 13, AS SHOWN ON THE AFORESAID PARCEL MAP;

THENCE SOUTH 89°25'05" EAST, ALONG THE NORTH LINE OF SAID PARCEL 13, 362.81 FEET TO THE NORTHEAST CORNER THEREOF;

THENCE NORTH 0°33'55" EAST, 144.50 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL E:

SECTION 21, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF TEMECULA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION AS CONVEYED TO THE CITY OF TEMECULA, BY DEED RECORDED MAY 22, 2003, AS INSTRUMENT NO. 2003-371374, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ANY PORTION LYING WITHIN TRACT NO. 29353-2, AS PER MAP RECORDED IN BOOK 342, PAGES 73 THROUGH 85, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA.

Exhibit 1

## EXHIBIT A-3

### PLANNING AREAS OF A LAND

| Planning Area No. | Acreage | Estimated No. of Lots |
|---|---|---|
| 14 | 13.5 | 92 |
| 15 | 14.1 | 104 |
| 16 | 28.4 | 121 |
| 17 | 40.2 | 147 |
| 18 | 28.4 | 121 |
| 19 | 31.2 | 25 |
| 20 | 30.3 | 35 |
| 21 | 23.9 | 24 |
| 22 | 20.3 | 130 |
| 23 | 10.9 | 47 |
| 24 | 10.5 | 75 |
| 25 | 8.2 | Open Space |
| 26 | 22.1 | Open Space |
| 27 | 19.7 | Sports Park |
| 28 | 20.0 | School Site |
| 29 | 12.0 | School Site |
| 30 | 4.0 | Private Rec. Center |
| 31 | 24.6 | 181 |

459461_11.DOC

Exhibit 1

## EXHIBIT B
## ITEMIZED COST BREAKDOWN

Roripaugh Ranch
Temecula, CA

| Number of Lots | 1,122 | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Land A & D Costs: | Total | USA Capital | Equity Funds | Loan | Bank Midwest | Funds Remaining | Per Unit |
| Land Acquisition | 8,700,000 | 8,700,000 | | - | - | - | 7,895 |
| GRC Ext Fee (Deferred Equity) | 9,741,482 | | 9,741,482 | - | - | - | 8,840 |
| Bank Midwest Refinance Proceeds | 8,500,000 | | | 8,500,000 | 6,500,000 | - | 7,713 |
| Development Costs | - | | | | | - | - |
| Planing | 600,000 | 600,000 | | | | - | 544 |
| Engineering | 4,200,000 | 700,000 | | 3,500,000 | 2,609,015 | 890,985 | 3,811 |
| Environmental | 400,000 | | | 400,000 | 50,000 | 350,000 | 363 |
| Mass Grading | 15,200,000 | | | 15,200,000 | 11,700,000 | 3,500,000 | 13,733 |
| Rough Grading | 5,500,000 | | | 5,500,000 | | 5,500,000 | 4,991 |
| Recreation Facility | 6,400,000 | | | 6,400,000 | | 6,400,000 | 5,705 |
| N & S Loop Rd. (with Bridge) | 6,500,000 | | | 6,500,000 | 300,000 | 6,200,000 | 5,895 |
| School Frontage | 300,000 | | | 300,000 | 70,000 | 230,000 | 272 |
| Habitat Fencing | 300,000 | | | 300,000 | - | 300,000 | 272 |
| Monumentation | 300,000 | | | 300,000 | - | 300,000 | 272 |
| Multi-use Trail | 200,000 | | | 200,000 | - | 200,000 | 181 |
| Project Walls | 1,300,000 | | | 1,300,000 | - | 1,300,000 | 1,180 |
| Gated Entries | 800,000 | | | 800,000 | - | 800,000 | 726 |
| Secodary Entries | 200,000 | | | 200,000 | - | 200,000 | 181 |
| Pedestrian Bridge | 500,000 | | | 500,000 | - | 500,000 | 454 |
| Creek Slope | 600,000 | | | 600,000 | - | 600,000 | 544 |
| Utility Connection | 1,100,000 | | | 1,100,000 | - | 1,100,000 | 998 |
| Offsite Intersections | 700,000 | | | 700,000 | - | 700,000 | 633 |
| Mitigation | 1,200,000 | | | 1,200,000 | 300,000 | 900,000 | 1,080 |
| Fees Bonds & Permits | 3,700,000 | | | 3,700,000 | 1,405,973 | 2,294,027 | 3,358 |
| Taxes & Insurance | 5,000,000 | | | 5,000,000 | 1,654,000 | 3,346,000 | 4,537 |
| Soft Costs | 2,834,000 | | | 2,834,000 | 1,505,400 | 1,175,500 | 2,390 |
| Builders Capital Fee | 250,000 | | | 250,000 | | 250,000 | 227 |
| CFD Improvements | | | | | | - | - |
| Murrieta Hot Springs Rd. | 4,600,000 | | | 4,600,000 | 2,200,000 | 2,400,000 | 4,174 |
| Butterfield Stage Rd. | 21,400,000 | | | 21,400,000 | 1,200,000 | 20,200,000 | 19,419 |
| Nicolas Rd | 9,800,000 | | | 9,800,000 | | 9,800,000 | 8,893 |
| Calle Chapos | 200,000 | | | 200,000 | 25,000 | 175,000 | 181 |
| Long Valley Channel | 7,600,000 | | | 7,600,000 | | 7,600,000 | 6,867 |
| Santa Gertrudes Creek | 3,000,000 | | | 3,000,000 | | 3,000,000 | 2,722 |
| Environmental Mitigation | 1,000,000 | | | 1,000,000 | | 1,000,000 | 907 |
| Sports Park | 5,500,000 | | | 5,500,000 | | 5,500,000 | 5,062 |
| Fire Station Grading | 100,000 | | | 100,000 | | 100,000 | 91 |
| N. Loop Rd. | 2,100,000 | | | 2,100,000 | | 2,100,000 | 1,906 |
| S. Loop Rd | 600,000 | | | 600,000 | | 600,000 | 544 |
| Roripaugh Valley Rd | 1,700,000 | | | 1,700,000 | | 1,700,000 | 1,543 |
| Fiesta Ranch Rd | 1,100,000 | | | 1,100,000 | | 1,100,000 | 999 |
| Neighborhood Park | 1,500,000 | | | 1,500,000 | 300,000 | 1,200,000 | 1,361 |
| Fire Station Contribution | 3,100,000 | | | 3,100,000 | 2,000,000 | 1,100,000 | 2,813 |
| Payoff AD 161 | 600,000 | | | 600,000 | | 600,000 | 544 |
| Capital Contribution City of Temecula | 2,500,000 | | | 2,500,000 | | 2,500,000 | 2,268 |
| Contingency | 136,000 | | | 136,000 | | 136,000 | 123 |
| Appraisal | 10,000 | | | 10,000 | | 10,000 | 9 |
| Legal | 12,000 | | | 12,000 | | 12,000 | 11 |
| Title | 10,000 | | | 10,000 | | 10,000 | 9 |
| Inspections | 8,000 | | | 8,000 | | 8,000 | 7 |
| Loan Fee | 1,830,000 | | | 1,830,000 | | 1,830,000 | 1,801 |
| Land Loan Interest | 12,830,000 | | | 12,830,000 | 1,340,993 | 11,489,007 | 11,542 |
| Total Land A & D Costs | 166,141,482 | 10,000,000 | 9,741,482 | 146,400,000 | 35,180,381 | 111,299,619 | 150,764 |

Exhibit 1

## EXHIBIT C

## STANDBY LETTER OF CREDIT REQUEST FORM
(Roripaugh Ranch)
Ohio Savings Bank Loan No. _____

Account Party (Borrower): Ashby USA, LLC, a California limited liability company
Account Party's address: c/o Fiesta Development, 470 East Harrison Street, Corona, California
                  92879
Beneficiary (addressee): Community Facilities District 03-02 (Roripaugh Ranch)
Beneficiary's address:_____

Amount of letter of credit: $6,000,000.00

Requested issuance date: _____

Term of letter of credit:
  __X__ 12 months.
  _____ Less than 12 months until _____; provided that such date does not
       extend past five days prior to the Land Loan maturity date.

Purpose of the letter of credit:
  _____ Performance assurance for account party's installation of subdivision improvements (bond
       substitute)
  _____ Performance assurance for account party's purchase agreement obligations (deposit
       substitute)
  __X__ Other: Performance and assurance for payment of taxes and assessments

Letter of Credit loan structure: Note in the original principal amount of $6,000,000.00

Additional Security:
  __X__ Pledged account in the amount of not less than $3,000,000.00
  __X__ Other: Amount set aside under Land Loan

### Letter of Credit fees:

Each letter of credit is subject to an annual fee equal to the greater of (1) Two Hundred Fifty
Dollars ($250) or (2) one-half of one percent (.50%) per annum of the maximum amount
available under the LC, payable upon issuance of the LC with respect to the first twelve (12)
months and, thereafter, payable upon any renewal or extension thereof for each succeeding
period of twelve (12) months or less, or, if greater, the issuance fee charged by the issuer (if not
Lender) or the confirming bank, if applicable. Under normal circumstances, Ohio Savings Bank
will not prorate the annual fee for periods less than six (6) months, and under no circumstance
will any fee be less than Two Hundred Fifty Dollars ($250).

## FORM OF LETTER OF CREDIT ATTACHED HERETO.

### DEPOSIT LETTERS OF CREDIT

From:  Ohio Savings Bank

To:    Citibank, N.A., c/o Citicorp North America, inc., 3800 Citibank center, Building B, 3rd Floor, Tampa, Fl 33610.

Please advise the following Letter of Credit to the beneficiary, U.S. Bank National Association, adding your confirmation.

Ohio Savings Bank to-Citigroup Reimbursement Instructions:

WE AUTHORIZE YOU TO DEBIT OUR USD ACCOUNT NO. (INSERT NUMBER) THAT WE HOLD WITH CITIBANK N.A., NEW YORK IN THE EVENT OF A DRAWING, AND CHARGES, ALONG WITH YOUR TESTED TELEX/ SWIFT(S) STATING THAT DOCUMENTS ARE IN ORDER AND THAT THEY ARE BEING SENT VIA COURIER TO (PROVIDE ADDRESS WHERE PAYMENT DOCUMENTS SHOULD BE COURIER TO).

### (Form of Letter of Credit)

### IRREVOCABLE STANDBY LETTER OF CREDIT NO. ____

_____, 2005

U.S. Bank National Association
Corporate Trust Services
633 West Fifth Street, 24th Floor LM-CA-T247
Los Angeles, CA 90071

Dear Sirs:

We hereby establish, at the request and for the account of Ashby USA, LLC, a California limited liability company (the "Account Party") in your favor, as "Beneficiary" this irrevocable standby letter of credit no ____ ("Letter of Credit") in the amount of $_____ (the "Stated Amount"), effective immediately and expiring on _____ [insert date which is no more than one year following the Bond issuance date] (the "Stated Termination Date") at the office of Citibank, N.A., c/o Citicorp North America, Inc., 3800 Citibank Center, Building B, 3rd Floor, Tampa, Fl 33610 (the "Confirming Bank"). We have been advised by the Account Party that this letter of credit is issued to you as fiscal agent under that certain fiscal agent agreement (the "Fiscal Agent Agreement"), dated as of _____, by and between you and the Temecula Public Financing Authority (the "Authority"). We hereby irrevocably authorize you to draw on the Confirming Bank in an aggregate amount not to exceed the Stated Amount of this

459461_11.DOC

2

Exhibit 1

Letter of Credit set forth above and in accordance with the terms and conditions and subject to the reductions in Stated Amount as hereinafter set forth, (i) in one or more drawings by one or more of your drafts, each accompanied by your written and completed certificate signed by you in the form of Annex "1" attached hereto (any such draft accompanied by such certificate being your "Default Payment Draft"), or (ii) in a single drawing by your draft, accompanied by your written and completed certificate, signed by you, in the form of Annex "2" attached hereto (any such draft accompanied by such certificate being your "Downgrade Draft"), or (iii) in a single drawing by your draft, accompanied by your written and completed certificate, signed by you, in the form of Annex "3" attached hereto (any such draft accompanied by such certificate being your "Final Draft"). Draws may be presented by facsimile to the Confirming Bank at (813) 604-_____ followed by a mailed original, provided that receipt of such original is not condition for presentation and payment hereunder.

Funds under this Letter of Credit are available to you against (i) your Default Payment Draft referring thereon to the number of this Letter of Credit and accompanied by your written and completed certificate signed by you in the form of Annex "1" attached hereto, or (ii) your Downgrade Draft referring thereon to the number of this Letter of Credit and accompanied by your written and completed certificate signed by you in the form of Annex "2" attached hereto, or (iii) your Final Draft referring thereon to the number of this Letter of Credit and accompanied by your written and completed certificate signed by you in the form of Annex "3" attached hereto. Each such draft and certificate shall be dated the date of its presentation, and shall be presented at the office of the Confirming Bank stated above, Attn: Standby letter of Credit unit or at any other office in the continental U.S.A. , which may be designated by the Confirming Bank by written notice. If Confirming Bank receives any of your drafts and certificates at such office, all in strict conformity with the terms and conditions of this Letter of Credit, not later than 9:00 a.m. (New York, New York) on a banking day prior to the termination hereof, the Confirming Bank will honor the same on the next succeeding banking day in accordance with your payment instructions. If the Confirming Bank receives any of your drafts and certificates at such office, all in strict conformity with the terms and conditions of this Letter of Credit, after 9:00 a.m. (New York, New York time) on a banking day prior to the termination hereof, the confirming Bank will honor the same on the banking day following the next succeeding banking day in accordance with your payment instructions. The phrase "banking day" shall mean any day other than a Saturday, Sunday or a day which shall be in the State of New York a legal holiday or a day on which banks are authorized or obligated by law or executive order to close.

The Stated Amount of this Letter of Credit shall be decreased upon (1) payment of each Default Payment Draft, by an amount equal to each such payment, and (2) upon the Confirming Bank's receipt of your written and completed certificate signed by you in substantially the form of Annex "4" attached hereto to the new Stated Amount in said Certificate.

This Letter of Credit shall automatically terminate upon the earliest of (i) the Stated Termination Date, (ii) honoring of a Default Payment Draft which has the effect of reducing the Stated Amount to zero ($0.00), (iii) honoring of a Downgrade Draft or a Final Draft, (iv) the Confirming Bank's receipt of your written and completed Certificate signed by you in substantially the form of Annex "5" attached hereto (such Certificate being your "Termination Certificate"), or (v) the date on which the Confirming Bank receives written notice from you that

459461_11.DOC

3

Exhibit 1

an alternate letter of credit has been substituted for this Letter of Credit in accordance with the Fiscal Agent Agreement, accompanied by this original Letter of Credit and any subsequent amendments.

It is a condition of this letter of credit that it is transferable and may be transferred in its entirety, but not in part, and may be successively transferred by you only to a successor Fiscal Agent appointed pursuant to the terms of the Fiscal Agent Agreement. Transfer under this letter of credit to such transferee shall be effected by the Confirming Bank upon presentation of the original of this letter of credit and any amendments hereto accompanied by a request designating the transferee in the form of Annex 6 attached hereto, along with payment of 1/4 of one percent (minimum $100) as a transfer fee.

THIS LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR ·UNDERTAKING, AND SUCH UNDERTAKING SHALL NOT BE IN ANY· WAY MODIFIED, AMENDED OR AMPLIFIED BY REFERENCE TO ANY DOCUMENT, INSTRUMENT OR AGREEMENT REFERRED TO HEREIN OR IN WHICH THIS LETTER OF CREDIT IS REFERRED TO OR TO WHICH THIS LETTER OF CREDIT RELATES, ANY SUCH REFERENCE SHALL NOT BE DEEMED TO INCORPORATE HEREIN BY REFERENCE ANY DOCUMENT, INSTRUMENT OR AGREEMENT.

All payments hereunder shall be made from our own funds and not from funds of the Account Party.

This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (1993 Revision, International Chamber of Commerce Publication No. 500). All communications with respect to this Letter of Credit shall be in writing specifically referencing the designated Number   of   this   Letter   of   Credit   and   shall   be   addressed   to   us   at
_____, _____, Attn: _____.

Very truly yours,

Citibank, N.A.

By: _____

Annex "1"

## CERTIFICATE FOR DRAWING UPON ACCOUNTS PARTY'S DEFAULT IN PAYMENT OF SPECIAL TAXES

Irrevocable Standby Letter of Credit No. _____

Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

The undersigned, a duly authorized officer of the undersigned Beneficiary hereby certifies, with reference to Irrevocable Standby Letter of Credit No. _____ (the "Letter of Credit") issued by _____ (the "Bank") in favor of the Beneficiary, that:

(A)    The undersigned is the duly authorized officer of the Beneficiary for the purposes of submitting this Certificate.

(B)    As of the date of this Certificate, the Beneficiary has been advised by the Treasurer of the Authority that there has been a default in the payment of special taxes imposed on the property within the boundaries of the Temecula Public Financing Authority Community Facilities District No. 03-02 (Roripaugh Ranch) to which the Letter of Credit pertains, in the total amount of $_____ (the "Default Amount").

(C)    The Beneficiary hereby requests payment of the Default Amount and acknowledges that upon your payment of this draft the stated amount of the Letter of Credit shall be automatically reduced by the Default Amount to a new stated amount calculated as follows:

| | |
|---|---|
| Existing Stated Amount | $_____ |
| Default Amount | (_____) |
| New Stated Amount | $_____ |

(D)    The Beneficiary hereby certifies that all amounts drawn hereunder shall be deposited to the Special Tax Fund established under the Fiscal Agent Agreement.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of Credit.

459461_11.DOC

5

Exhibit 1

IN WITNESS WHEREOF, the Beneficiary has executed and delivered this Certificate as of the day of _____ day of _____, _____.

U.S. BANK NATIONAL ASSOCIATION

By: _____
    [Name and Title]

459461_11.DOC

6

Exhibit 1

Annex "2"

## CERTIFICATE FOR DRAWING UPON DOWNGRADE
## OF LETTER OF CREDIT PROVIDER

Irrevocable Standby Letter of Credit No. _____

Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

The undersigned, a duly authorized officer of the undersigned Beneficiary, hereby certifies,, with reference to the Irrevocable Standby Letter of Credit No. _____ (the "Letter of Credit") issued by _____ (the "Bank") in favor of the Beneficiary, that:

(A)    The undersigned is the duly authorized officer of the Beneficiary for the purposes of submitting this Certificate.

(B)    As of the date of this Certificate, the Beneficiary has actual knowledge that the rating of the Confirming Bank or of the Letter of Credit provider's unsecured debt obligations has been reduced to BBB (or its equivalent) or lower by Moody's or S&P (as such terms are defined in the Fiscal Agent Agreement).

(C)    The Beneficiary hereby requests payment of the entire Stated Amount of $_____ pursuant to Section 4.04(H)(ii)(b)(x) of the Fiscal Agent Agreement.

(D)    The Beneficiary hereby certifies that all amounts drawn hereunder shall be deposited to an account within the Reserve Fund established under the Fiscal Agent Agreement.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of Credit.

IN WITNESS WHEREOF, the Beneficiary has executed and delivered this Certificate as of the _____ day of _____, _____.

U.S. BANK NATIONAL ASSOCIATION

By: _____
        [Name and Title]

459461_11.DOC

7

Exhibit 1

Annex "3"

CERTIFICATE FOR FINAL DRAWING UPON
FAILURE OF ACCOUNT PARTY TO EXTEND

Irrevocable Standby Letter of Credit No. _____

[INSERT NAME AND ADDRESS
OF LETTER OF CREDIT PROVIDER]
Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

The undersigned, a duly authorized office' of the undersigned Beneficiary hereby certifies, with
reference to the Irrevocable Letter of Credit No. _____ (the "Letter of Credit") issued by
_____ (the "Bank") in favor of the Beneficiary, that:

(A)     The undersigned is the duly authorized officer of the Beneficiary for the purposes of
submitting this Certificate.

(B)     Account Party has failed to extend the Letter of Credit or provide a substitute letter of
credit prior to the Stated Termination Date of the Letter of Credit. The Stated Termination Date
of the Letter of Credit is _____, 20__.

(C)     The Beneficiary hereby requests payment of the entire Stated Amount of $_____
pursuant to Section 4.04(H)(ii)(b)(y) of the Fiscal Agent Agreement.

(D)     Beneficiary hereby certifies that all amounts drawn hereunder shall be deposited to an
account within the Reserve Fund established under the Fiscal Agent Agreement.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of
Credit.

IN WITNESS WHEREOF, the Beneficiary has executed and delivered this Certificate as of the
_____ day of _____, _____.

U.S. BANK NATIONAL ASSOCIATION

By: _____
        [Name and Title]

459461_11.DOC

8

Exhibit 1

Annex "4"

CERTIFICATE FOR REDUCTION OF AMOUNTS AVAILABLE UNDER
IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____
DATED _____, 20__

Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

The undersigned, a duly authorized office' of the undersigned Beneficiary, hereby certifies, with reference to the Irrevocable Standby Letter of Credit No. _____ (the "Letter of Credit") issued by _____ (the "Bank") in favor of the Beneficiary, that:

(A)     The undersigned is the duly authorized officer of the Beneficiary for the purposes of submitting this Certificate.

(B)     Either (i) the Authority has advised the undersigned that the Parcel Value is at least three times the Parcel Liens (as such terms are defined in the Fiscal Agent Agreement) with respect to certain parcels identified by the Account Party (the "Identified Parcels"), which Identified Parcels are owned by the Account Party or its affiliates in a designated planning area, and that the conditions precedent to the issuance of building permits for all of the units expected to be constructed in the planning area in which the Identified Parcels are located (as more specifically described in Section 4.04(H)(iii) of the Fiscal Agent Agreement) have been satisfied; or (ii) the Account Party has provided, or caused to be provided, a letter of credit in partial or full substitution for this Letter of Credit; or (iii) the conditions for the reduction of the Letter of Credit described in Section 4.04(H)(iv)(b) of the Fiscal Agent Agreement have been satisfied, and, in any such case has provided the Beneficiary with an approved recalculation of the Stated Amount of the Letter of Credit.

(C)     The Stated Amount of the Letter of Credit is automatically reduced upon receipt by the Confirming Bank of this Certificate to an amount equal to $_____.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of Credit.

459461_11.DOC                    9

Exhibit 1

IN WITNESS WHEREOF, the Beneficiary has executed and delivered this Certificate as of the
_____ day of _____, _____.

U.S. BANK NATIONAL ASSOCIATION

By: _____
      [Name and Title]

459461_11.DOC

10

Exhibit 1

Annex "5"

CERTIFICATE FOR TERMINATION OF
IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____
DATED _____, 19___

Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

The undersigned, a duly authorized officer of the undersigned Beneficiary, hereby certifies , with
reference to the Irrevocable Standby Letter of Credit No. _____ (the "Letter of Credit")
issued by _____ (the "Bank") in favor of the Beneficiary, that:

(A)    The undersigned is the duly authorized officer of the Beneficiary for the purposes of
submitting this Certificate.

(B)    The undersigned has received written directions from the Treasurer of the Temecula
Public Financing Authority to the effect that Account Party has met the terms for termination of
the Letter of Credit as set forth in Section 4.04(H)(iii) of the Fiscal Agent Agreement.

(C)    The Beneficiary hereby requests the Letter of Credit be automatically terminated upon
delivery of this Certificate to the Bank.

(D)    The original of this Letter of Credit and any subsequent amendments are attached hereto
and are hereby returned for immediate termination.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of
Credit.

IN WITNESS WHEREOF, the Beneficiary has executed and delivered this Certificate as of the
_____ day of _____, _____.

                              U.S. BANK NATIONAL ASSOCIATION


                              By: _____
                                      [Name and Title]


459461_11.DOC

                              11

Exhibit 1

Annex "6"

TRANSFER FORM

_____, 200__

Citibank, N.A.
c/o Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, Fl 33610

RE:     Irrevocable Standby Letter of Credit No. _____

We request you to transfer all of our rights as beneficiary under the Letter of Credit referenced above to the transferee named below:

_____

Name of Transferee

_____

Address

By this transfer, all our rights as the transferor, including all rights to make drawings under the Letter of Credit, go to the transferee. The transferee shall have sole rights as beneficiary, whether existing now or in the future, including sole rights to agree to any amendments, including increases or extensions or other changes. All amendments will be sent directly to the transferee without the necessity of consent by or notice to us.

We enclose the original Letter of Credit and any amendments. Please indicate your acceptance of.our request for the transfer by endorsing the Letter of Credit and sending it to the transferee with your customary notice of transfer.

You are hereby advised that the transferee named above has succeeded U.S. Bank National Association as Fiscal Agent, as defined in and pursuant to the terms of the Fiscal Agent Agreement.

The capitalized terms not otherwise defined herein are used herein as defined in the Letter of Credit.

_____

Name of Transferor

_____

Name of Authorized Signer and Title

459461_11.DOC

12

Exhibit 1

**EXHIBIT D**

**RESERVED**

459461_11.DOC

Exhibit 1

**EXHIBIT E**

**SURVEY CERTIFICATE**

The undersigned hereby certifies to Ohio Savings Bank, _____
_____ (the "Title Company"), and _____
_____ (the "Borrower"), that:

(1) This map or plat and the survey on which it is based were made in accordance with "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys," jointly established and adopted by ALTA, ACSM and NSPS in 1999 and includes Items 1 through 4, 6 through 11, and 13 through 16 of Table A thereof. Pursuant to the Accuracy Standards as adopted by ALTA, NSPS and ACSM and in effect on the date of this certification, the undersigned further certifies that [Surveyor to complete certificate with the appropriate ONE of the following three phrases] *[• the Positional Uncertainties resulting from the survey measurements made on the survey do not exceed the allowable Positional Tolerance] or *[• the survey measurements were made in accordance with the "Minimum Angle, Distance, and Closure Requirements for Survey Measurements Which Control Land Boundaries for ALTA/ACSM Land Title Surveys"] [most common] or *[• proper field procedures, instrumentation, and adequate survey personnel were employed in order to achieve results comparable to those outlined in the "Minimum Angle, Distance, and Closure Requirements for Survey Measurements Which Control Land Boundaries for ALTA/ACSM Land Title Surveys"];

(2) The drawing hereon is a correct representation of a true and accurate survey made by the undersigned as of the date shown hereon;

(3) The perimeter of the survey was established by accurate field measurements;

(4) There are no discrepancies between the boundary lines of the property as shown on this Survey map and as described in the legal description presented in title commitment no. _____, dated _____;

(5) The monuments were found or set as indicated hereon;

(6) All the property surveyed and described is contiguous along the entire boundary thereof, and is enclosed within the perimeter shown;

(7) Except as otherwise noted below, if the property consists of two or more parcels, there are no gaps or gores between said parcels;

(8) The boundary lines of the property are contiguous with the boundary lines of all adjoining streets, highways, rights of way and easements, public or private, as described in their most recent respective legal descriptions of record; and

459461_11.DOC

Exhibit 1

(9) The rights of way lines of _____
_____ and _____ are
adjacent to and contiguous to the property surveyed, and the property abuts upon and
has access to said publicly dedicated and physically open street(s) where ingress and
egress is permitted therefrom and thereto.


The undersigned further certifies that there are no encroachments, easements or gaps or
overlaps relating to the property surveyed other than as shown hereon.

                                        _____

Dated: _____, _____      By:_____
                                        Printed Name:
                                        Registered Surveyor and Mapper
                                        No:_____
                                        State of California

(SEAL)

459461_11.DOC

Exhibit 1

## SURVEY

Borrower shall deliver to Lender a current survey of the Premises, prepared and certified to Lender, Borrower, and the Title Company by a surveyor acceptable to Lender, meeting the requirements of an ALTA Land Title Survey, and showing the following:

(i) the location of the perimeter boundaries of the Land by courses and distances and perimeter footings in place, and by reference to township, range and section, or by reference to a recorded tract map, as the case may be;

(ii) the location, and the identification by reference to recording data, of all easements, rights-of-way, conditions and restrictions on, or appurtenant to, the Premises;

(iii) the location of all building setback lines as shown on the site plan;

(iv) the width and lines of the streets and public rights-of-way abutting the Premises;

(v) all encroachments, and the extent of each encroachment, in feet and inches, upon the Premises;

(vi) all buildings and the Improvements, to the extent installed, and the relation of the buildings and Improvements, by distances, to the perimeter of the Premises, the building setback lines, and the street lines;

(vii) a legend relating the survey of the Land to a map filed in the public records, if the Land is described as being on such a map;

(viii) the legal description of the Land, by metes and bounds, including the acreage, or a reference to a recorded tract map of the Land;

(ix) a certification from either the surveyor or the Engineer for the Improvements, stating whether all or any part of the Premises is located in an area identified by the Federal Emergency Management Agency ("FEMA") or any other governmental authority as having special flood hazards or defined as a "flood hazard," or any other federal, state, county, municipal or other statute, law, ordinance or regulation, and identifying by number the particular map(s) upon which such certification is based; and

(x) the availability of utility services, sanitary water supply, and storm sewer and sanitary sewer facilities to the lot line of the Premises, and satisfactory means of access, ingress and egress to the lot line of the Premises.

459461_11.DOC

Exhibit 1

## EXHIBIT F

## MAJOR SUBCONTRACTOR'S AGREEMENT

The undersigned, being a Major Subcontractor for the completion of the Improvements referenced in the Loan Agreement dated August 29, 2005 (the "Loan Agreement") by and among Ashby USA, LLC, a California limited liability company ("Borrower"), and Ohio Savings Bank ("Lender") and guaranteed by Richard K. Ashby and Justin Ashby (severally and collectively, if more than one, "Guarantor"), in consideration of Lender making the Loan (as defined in the Loan Agreement) available to Borrower, as provided in the Loan Agreement, hereby warrants, represents and agrees with Lender as follows:

1.    The Subcontract between the undersigned and Ashby Financial Company, Inc., a California corporation as General Contractor (the "Contract") constitutes the entire agreement between the Contract and Borrower regarding the subject matter of the Contract and has not been amended, modified, or supplemented except as follows:


(If no amendments, insert "None". The absence of any reference to any amendment, modification or supplement shall be a certification by the Major Subcontractor that none of the foregoing has occurred, and any recipient of this Agreement is authorized to so indicate in the space provided above.)

The Contract, as may have been amended, modified, or supplemented, as indicated above, is in full force and effect, and is the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms, and no default or event which, with notice or lapse of time or both, would constitute a default by either the General Contractor or the undersigned, has occurred under the Contract as of the date of this Agreement.

2.    There are no actions, suits, restraining orders, injunctions, investigations or inquiries pending or threatened against the undersigned, by or before any judicial, legislative or administrative court, agency or authority, or by any arbitrator, nor any basis for any of the foregoing, in which an unfavorable determination, ruling or finding would materially adversely affect the validity or enforceability of the Contract or the financial condition or operations of the undersigned.

3.    The undersigned hereby consents to the assignment by Borrower to Lender of the Contract between General Contractor and the undersigned, as set forth in the Loan Agreement.    All rights, liens and claims of the undersigned, as Major Subcontractor, are hereby subordinated to the operation and effect of the Deed of Trust in favor of Lender, as described in the Loan Agreement.

4.    At or before the time of each Land Loan Advance (as defined in the Loan Agreement), the undersigned will promptly furnish to Lender (or to the disbursing

459461_11.DOC

Exhibit 1

agent, if any) proof of paid construction costs, and releases of liens for such costs, equal to the total amount of the Land Loan Advances previously made, together with all other documents and things required to be performed, delivered or supplied by the General Contractor or the undersigned under Sections 8, 9, and 10 of the Loan Agreement, and, at the time of the request for the final Advance, will promptly furnish to Lender (or disbursing agent) full and complete lien waivers from all possible lien claimants, as well as a Contractor's Affidavit as required by Lender or applicable law.

5.     The undersigned agrees not to undertake or perform any extra work or furnish any extra materials, or change the construction from the final Improvement Plans (defined in the Loan Agreement) approved by Lender, or otherwise amend or modify the Contract or enter into change orders (except to the extent expressly permitted by the Loan Agreement), unless Lender approves the same in writing. The undersigned shall not transfer, assign or convey any or all of its rights or interest in and to, or obligations under, the Contract to any other individual or entity without the prior written approval of Lender, and any such attempted assignment without such approval shall be void.

6.     The undersigned agrees to perform all work and furnish all materials to complete the construction of the Improvements in accordance with the Improvement Plans and the Contract and, upon Lender's request, to continue to so perform, notwithstanding a Borrower or General Contractor default under the Contract, provided that the undersigned is thereafter paid for such work and materials in accordance with the Contract, and the undersigned hereby agrees to indemnify Lender against any and all loss, cost, damage, liability and expense incurred by Lender as a result of the failure of the undersigned to do so. The undersigned shall promptly notify Lender in writing of any default or claimed default on the part of Borrower or General Contractor under the Contract, and shall not stop or suspend its work, or exercise any other rights or remedies, under the Contract or otherwise, without first permitting Lender to cure such default within thirty (30) days after Lender's receipt of such notice. Notwithstanding the foregoing, if such default is of such a nature that it cannot be cured within such thirty (30) day period, Lender shall have such longer period as is reasonably necessary to cure such default, if Lender institutes curative action within said thirty (30) day period and proceeds diligently to complete such action. Neither the bankruptcy, insolvency nor receivership of Borrower, nor any change in Borrower's financial or business condition, nor the existence of any judgment against Borrower, shall entitle the undersigned to suspend or stop work or otherwise terminate the Contract or exercise any other right or remedy with respect to the Contract, if Lender has cured or commenced to cure all other defaults, as provided above. Lender has no obligation to cure any default by Borrower under the Contract. In no event shall Lender be liable for any act or omission of Borrower with respect to the General Contract.

7.     The undersigned covenants to, and agrees with, Lender that all monies disbursed by Lender to the undersigned on account of the Loan Agreement shall be utilized

459461_11.DOC

-2-

Exhibit 1

solely for the purposes set forth in the Itemization of Construction Costs attached to such Agreement, and not for any other purpose. There shall be no reallocation between cost categories without the express prior written approval of Lender.

8.    Simultaneously with its execution of this Major subcontractor's Agreement, the undersigned shall deliver to Lender a copy 'f all notices, requests or demands delivered by the undersigned to the General Contractor, Borrower and/or Guarantor, or received by the undersigned from the General Contractor, Borrower or Guarantor, relating to the Contract, and thereafter the undersigned shall deliver to Lender a copy of all notices, requests or demands delivered by the undersigned to General Contractor, Borrower and/or Guarantor, or received by the undersigned from the General Contractor, Borrower or Guarantor, relating to the Contract within 10 days after providing or receiving such notice  Such notices, requests, and demands, if any, shall be delivered to Lender by telecopy, by facsimile machine, by nationally recognized overnight courier service, or by U.S. first class mail, and shall be addressed to Lender at 1801 East Ninth Street, Suite 200, Mail Code OH99-0204, Cleveland, Ohio 44114, Attention: Senior Executive Vice President, Commercial/ Construction Lending Department.

9.    Each term that is capitalized, but not defined, in this Major Subcontractor's Agreement shall have the meaning given to such term in the Loan Agreement.

10.   This Major Subcontractor's Agreement shall be binding upon the undersigned and inure to the benefit of Lender or any individual or entity acquiring any right, title or interest in and to the Premises or the Contact by virtue of the Deed of Trust, and the successors and assigns of Lender.

Dated this ___ day of _____, 2005.

Witnesses:                            MAJOR SUBCONTRACTOR:

_____       _____,
                                      an _____


_____       By:_____
                                      Title:_____


                                      And:_____
                                      Title:_____

-3-

Exhibit 1

### EXHIBIT G

### ENGINEER'S AGREEMENT

The undersigned, being the Engineer for the completion of the Improvements referenced in the Loan Agreement dated August 29, 2005 (the "Loan Agreement") by and among Ashby USA, LLC, a California limited liability company ("Borrower"), and Ohio Savings Bank ("Lender") and guaranteed by Richard K. Ashby and Justin Ashby (severally and collectively, if more than one, "Guarantor"), in consideration of Lender making the Loan, as defined in the Loan Agreement, hereby agrees with Lender as follows:

1.      The agreement between Borrower and the undersigned for engineering services related to the Premises (as defined in the Loan Agreement) constitutes the entire agreement between the Engineer and Borrower regarding the subject matter of such agreement and has not been amended, modified, or supplemented, except as follows:

(If no amendments, insert "None." The absence of any reference to any amendment, modification or supplement shall be a certification by the Engineer that none of the foregoing has occurred, and any recipient of this Engineer's Agreement is authorized to so indicate in the space provided above.)

The agreement between the Engineer and Borrower, as may have been amended, modified, or supplemented, as indicated above, is in full force and effect, and is the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms, and no default or event which, with notice or lapse of time or both, would constitute a default by either the Engineer or Borrower, has occurred under such agreement as of the date of this Engineer's Agreement.

2.      All rights, liens and claims of the undersigned are hereby subordinated to the operation and effect of the Deed in Trust in favor of Lender.

3.      The undersigned agrees not to change, amend or modify the Improvement Plans (as defined in the Loan Agreement) as approved by Lender, except to the extent expressly permitted by the Loan Agreement, unless Lender approves the same in advance and in writing.

4.      The undersigned agrees to perform all work and furnish all services in accordance with the Improvement Plans and its agreement with Borrower, and, upon Lender's request, to continue to so perform, notwithstanding Borrower's default under such agreement or the Loan Agreement, if the undersigned is paid in accordance with such agreement for such work, services and materials thereafter provided. The undersigned hereby agrees to indemnify Lender against loss by reason of the undersigned's failure to so perform such work and furnish such services.

Exhibit 1

The undersigned hereby consents to the assignment by Borrower to Lender of the Improvement Plans and of the agreement between Borrower and the undersigned, and the undersigned will provide Lender with copies of all Improvement Plans at no cost other than the actual cost of making copies.

      5.      Each term that is capitalized, but not defined, in this Engineer's Agreement shall have the meaning given to such term in the Loan Agreement.

Dated this ___ day of _____, 2005.

Signed:_____

Printed Name:_____P.E.

Registered Engineer No._____

State of California

Exhibit 1

## EXHIBIT H

## MINIMUM RELEASE PRICE SCHEDULE
(Roripaugh Ranch)

**Ashby USA, LLC**
**Minimum Release**
**Price**

| Planning Area | Price | Release Price |
|---|---|---|
| Residential Lots "A" Land | | |
| 14 | $15,088,000.00 | $13,579,200.00 |
| 15 | $19,136,000.00 | $17,222,400.00 |
| 16 | $28,072,000.00 | $25,264,800.00 |
| 17 | $41,454,000.00 | $37,308,600.00 |
| 18 | $31,422,000.00 | $28,279,800.00 |
| 19 | $11,475,000.00 | $10,327,500.00 |
| 20 | $14,890,000.00 | $13,401,000.00 |
| 21 | $10,521,000.00 | $ 9,468,900.00 |
| 22 | $21,320,000.00 | $19,188,000.00 |
| 23 | $ 8,648,000.00 | $ 7,783,200.00 |
| 24 | $13,800,000.00 | $12,420,000.00 |
| 31 | $29,684,000.00 | $26,715,600.00 |
| School Sites | | |
| 28 | $22,000,000.00 | $19,800,000.00 |
| 29 | $13,200,000.00 | $11,880,000.00 |
| Residential Lots "B" Land | | |
| 10 | $2,296,000.00 | $2,066,400.00 |
| | $127,016,000.00 | $6,403,500.00 |
| 33 | $5,297,000.00 | $4,767,300.00 |

459461_11.DOC

Exhibit 1

## EXHIBIT I

### KB HOMES STANDBY LETTERS OF CREDIT

459461_11.DOC

Exhibit 1

## EXHIBIT J

## LOT SALES REPORT AND CONSTRUCTION UPDATE

Date:_____

Company Name:_____

Project Name:_____

For Period_____ to_____

Loan Number:_____

Project Development Completion Date:_____

Project Marketing/Selling Date_____

Estimated Sellout Date:_____

Projected Monthly Absorption Rate:_____

### LOT SALES

Total Number of Lots:_____

Lots Sold to Date:_____

Under Contract:_____

Closed (Released):_____          Sold:_____

                                                 Unsold:_____

459461_11.DOC

Exhibit 1

## EXHIBIT K

## SPECIAL PURPOSE ENTITY

*"Special-Purpose Entity"* means a corporation, limited partnership, or limited liability company which, at all times since its formation and thereafter:

        (i)     was and will be organized solely for the purpose of (x) owning and developing the Premises or (y) acting as the managing member of the limited liability company which owns the Premises or (z) acting as the general partner of a limited partnership which owns the Premises,

        (ii)    has not and will not engage in any business unrelated to the ownership, management, leasing, financing and operation of the Premises,

        (iii)   has not and will not own any asset or property other than the Premises and portions of the B Land, and incidental personal property necessary for the ownership, management, leasing, financing and operation of the Premises and such portions of the B Land,

        (iv)   to the fullest extent permitted by law, has not and will not engage in, seek or consent to any dissolution, winding up, liquidation, consolidation or merger, in whole or in part, and, except as otherwise expressly permitted by this Agreement, has not and will not engage in, seek or consent to any asset sale, transfer of partnership or membership or shareholder interests, or amendment of its limited partnership agreement, articles of incorporation, articles of organization, certificate of formation or operating agreement (as applicable),

        (v)     if such entity is a limited partnership, has and will have as its only general partners, general partners which are and will be Special-Purpose Entities which are corporations,

        (vi)   if such entity is a corporation, has and will have at least one Independent Director,

        (vii)   if such entity is a limited liability company, has and will have a Special Member,

        (viii)  the board of directors, or managers, and members of such entity, as applicable, have not taken and will not take any action requiring the unanimous affirmative vote of one hundred percent (100%) of the directors, or one hundred percent (100%) of the managers and one hundred percent (100%) of the members, as applicable, unless all of the directors, or all of the managers and all of the members, as applicable, including, without limitation, the Special Member, shall have voted affirmatively for such action,

        (ix)   has not and will not fail to correct any known misunderstanding regarding the separate identity of such entity,

459461_11.DOC

Exhibit 1

(x)    without the unanimous consent of all of the partners, directors or (if the entity is a limited liability company) managers and members (including, without limitation, the Special Member), as applicable, has not and will not with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest (w) file a bankruptcy, insolvency or reorganization petition or otherwise institute insolvency proceedings or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally; (x) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for such entity or all or any portion of such entity's properties; (y) make any assignment for the benefit of such entity's creditors; or (z) take any action that might cause such entity to become insolvent,

(xi)    has maintained and will maintain its books, records, financial statements, accounting records, bank accounts and other entity documents in its own name and separate from any other Person,

(xii)    has maintained and will maintain its books, records, resolutions and agreements as official records,

(xiii)    has not commingled and will not commingle its funds or other assets with those of any other Person,

(xiv)    has held and will hold its assets in its own name, and has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person,

(xv)    has conducted and will conduct its business in its name,

(xvi)    has filed and will file its own tax returns (to the extent required to file any tax returns) and has not and will not file a consolidated federal income tax return with any other Person;

(xvii)    is and will remain solvent, and has paid and will pay its own debts and liabilities out of its own funds and assets (to the extent of such funds and assets) as the same shall become due, and will give prompt written notice to Lender of the insolvency or bankruptcy filing of Borrower or any general partner, managing member or controlling shareholder of Borrower, or the death, insolvency or bankruptcy filing of any Guarantor;

(xviii)    has done or caused to be done, and will do or cause to be done, all things necessary to observe all partnership, corporate or limited liability company formalities (as applicable) and preserve its existence and good standing, and, has not, and without the prior written consent of Lender, will not, amend, modify or otherwise change any of the single purpose, separateness or bankruptcy remote provisions or requirements of the partnership certificate, partnership agreement, articles of incorporation and bylaws, articles of organization or operating agreement, trust or other organizational documents (except as required by law),

(xix)    has maintained and will maintain an arms-length relationship with its Affiliates,

459461_11.DOC

Exhibit 1

(xx)    has not and will not assume, guarantee, become obligated for or hold out its credit as being available to satisfy the debts or obligations of any other Person, or the decisions or actions respecting the daily business or affairs of any other Person,

(xxi)    has not acquired and will not acquire obligations or securities of its partners, members or shareholders or any other Person,

(xxii)    has allocated and will allocate fairly and reasonably shared expenses, including, without limitation, shared office space, and has maintained and utilized and will maintain and utilize separate stationery, invoices and checks bearing its own name,

(xxiii)    except as permitted under the Loan Documents or approved by Lender, has not and will not pledge its assets for the benefit of any other Person,

(xxiiii)    has held and identified itself and will hold itself out to the public as a legal entity separate and distinct from any other Person and under its own name,

(xxv)    has not made and will not make loans or advances to any Person,

(xxvi) except as permitted under the Loan Documents, has not entered and will not enter into any contract or agreement with its partners, members, shareholders or its Affiliates except in the ordinary course of its business and on terms which are intrinsically fair and are no less favorable to it than would be obtained in a comparable arms-length transaction with an unrelated third party and which are fully disclosed to Lender in writing in advance,

(xxvii) has paid and will pay the salaries of its own employees from its own funds (to the extent of such funds) and has maintained and will maintain a sufficient number of employees in light of its contemplated business operations,

(xxviii)has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations,

(xxix)  if such entity is a limited liability company or limited partnership, and such entity has one or more managing members or general partners, as applicable, then such entity shall continue (and not dissolve) for so long as a solvent managing member or general partner, as applicable, exists.

459461_11.DOC

Exhibit 1

## EXHIBIT "L"

### BANK OF THE WEST LOAN/COMMITTED AND AVAILABLE FUNDS

**B Land Collateral**
**As of:  8/1/2005**

| Planning Area | Number of Lots Units | Builder | Borrower Owned Land | Notes | Escrow | Closing Balance | Projected Sales Price | Total | Appraisal |
|---|---|---|---|---|---|---|---|---|---|
| 1A | 98 | Continental | Yes | | 3,320,435.00 | 3,260,257.00 | | 9,010,885.00 | 18,100,000.00 |
| 1B | Mini Park | N/A | No | | | | | - | - |
| 2 | 99 | Davidson - CLOSED | No | | | | | - | - |
| 3 | 98 | Shea | No | | | | | - | - |
| 4A | 100 | Tanamera - CLOSED | No | 4,524,315.19 / 528,201.41   Now 1 / Now 2 | | | | 4,524,315.19 / 528,201.41 | - |
| 4B | 113 | Meeker | No | 4,094,878.13 | | | | 4,094,878.13 | - |
| 6 | Rec. Center | N/A | No | | | | | | |
| 6 | Open Space | N/A | No | | | | | - | |
| 7A | Open Space | N/A | No | | | | | - | |
| 7B | Open Space | N/A | No | | | | | - | |
| 7C | Open Space | N/A | No | | | | | - | |
| 8 | Open Space | N/A | No | | | | | - | |
| 9A | Open Space | N/A | No | | | 4,605,000.00 | 2,285,000.00 / 6,100,000.00 | 6,902,000.00 / 6,100,000.00 | 3,155,000.00 / 6,100,000.00 |
| 9B | Open Space | N/A | No | | | | | | |
| 10 | 11 | N/A | No | | | | | | |
| 11 | Commercial | N/A | No | | | 7,115,000.00 | | 7,115,000.00 | 11,700,000.00 |
| 12 | 142 | KB Home | | | | 4,877,000.00 | | 4,877,000.00 | 5,410,000.00 |
| 13A, 13B | 16 | KB Home | | | | | | | |
| **Total** | | | | 9,138,194.73 | 3,320,435.00 | 19,838,257.00 | 9,396,000.00 | 40,742,886.73 | 45,465,000.00 |

**Bank of the West 1st Position Loan**

| Commitment | 16,620,061.00 |
|---|---|
| Loan Balance | 15,830,608.00 |
| Available to Draw | 1,197,483.00 |
| Loan Increase | 3,900,000.00 |
| Total Loan | 20,720,091.00 |

**OSB 2nd Position**

| Commitment | 16,620,061.00 |
|---|---|
| Total Sales Proceeds | 40,742,886.73 |
| Less: Bank of West | (20,720,091.00) |
| Less: Closing Costs | (15,000.00) |
| Less: GTC | (485,900.00) |
| Net to OSB | 19,513,895.73 |

B Land Collateral (082000)2.xls Sheet1
8/30/2005 11:04 AM

459461_11.DOC

Exhibit 1