# EXHIBIT "4"

(7)

RECORDING REQUSTED BY:

FIRST AMERICAN TITLE COMPANY NHS

WHEN RECORDED MAIL TO:

FREEMAN, FREEMAN AND SMILEY, LLC
ATT: JILL M. DRAFFIN
2 PARK PLAZA, SUITE 1245

1971947-29



DOC # 2005-0730194
09/02/2005 08:00A Fee:49.00
Page 1 of 15
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|-------|-----|-------|
| 1 |   |   | 15   |      |    |      |       |     | V6    |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

ASSIGNMENT OF RENTS AND LEASES AND
AGREEMENTS AFFECTING REAL ESTATE

49

T
VG

# THIS AREA FOR RECORDER'S USE ONLY

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

STC-SCSD 996a (Rev 8/97)

Exhibit 4

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

Freeman, Freeman and Smiley, LLP
Attn: Jill M. Draffin
2 Park Plaza, Suite 1245
Irvine, California 92614

(Space above for Recorder's use only)

## ASSIGNMENT OF RENTS AND LEASES AND AGREEMENTS
## AFFECTING REAL ESTATE
### (Roripaugh Ranch)

KNOW ALL PERSONS BY THESE PRESENTS: That

WHEREAS, the undersigned, ASHBY USA, LLC, a California limited liability company ("Assignor"), is the present owner of a fee simple estate in Premises known as Planning Areas 13 through 32, inclusive and more particularly described on Exhibit "A" attached hereto (the "A Land"), and of the land described in Exhibit "B" attached (the "B Land"), in the Roripaugh Ranch subdivision, located east of Butterfield Stage Road in Riverside County, California. The A Land and such portions of the B Land as are from time to time described in a deed of trust executed by Borrower in favor of Assignee are collectively referred to as the "Premises". OHIO SAVINGS BANK, a federal savings bank ("Assignee"), is the owner and holder of (i) a Revolving Deed of Trust Note of even date in the original principal amount of One Hundred Six Million Five Hundred Thousand and No/One-Hundredths Dollars ($106,500,000.00) executed and delivered by Assignor to Assignee evidencing a revolving line of credit, all or any part of which may be advanced to Assignor, repaid by Assignor, and readvanced to Assignor provided that the principal balance outstanding at any time shall not exceed the foregoing amount (the "Land Note"), (ii) a Deed of Trust Note of even date in the original principal amount of Six Million and No/One-hundredths Dollars ($6,000,000.00) executed and delivered by Assignor to Assignee (the "L/C Note" and, together with the Land Note, severally and collectively the "Note"), and (iii) a Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date executed and delivered by Assignor for the use and benefit of Assignee to secure the Note, which Deed of Trust was recorded in the Official Records of Riverside County, California (the "Deed of Trust");

WHEREAS, Assignee, as a condition to granting the loan evidenced by the aforesaid Note, has required the execution and delivery of this Assignment of Rents and Leases and Agreements Affecting Real Estate (the "Assignment");

NOW, THEREFORE, in consideration of the loan and to further secure the payment of the Note and Assignor's obligations under the Deed of Trust, and as an essential and integral part of the security therefor, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby immediately and absolutely sell, assign, transfer

459015_1.DOC

Exhibit 4

and set over unto Assignee, its successors and assigns, all right, title, and interest and all benefits and privileges which Assignor as owner and developer has and may have in, from or with respect to any and all of the Additional Collateral (hereinafter defined), including without limitation, all of the rents, issues, income, revenue and profits due and becoming due therefrom. This Assignment is an absolute assignment to Lender and not an assignment as security for the performance of the obligations under the Loan Documents (as defined in the Deed of Trust), or any other indebtedness.

1. Additional Collateral Defined. The items which shall be the subject of this Assignment, and which are sometimes collectively referred to as "Additional Collateral" are as follows:

(a) Permits and Licenses. All permits, licenses, approvals, orders, certificates and agreements with, from or issued by any board, agency, authority, department, governmental or otherwise (collectively the "Governmental Authorities"), relating directly or indirectly to the ownership, use, development, operation or maintenance of the Premises, or the construction of improvements on the Premises, whether heretofore or hereafter issued or executed, together with all letters of credit, certificates of deposit, bonds or other agreements securing or guaranteeing payment or performance thereunder (collectively, the "Permits").

(b) Contracts. All contracts, subcontracts, agreements, utility agreements, cleaning, servicing or maintenance agreements, management or marketing agreements, warranties and purchase orders which have heretofore been or will hereafter be executed by or on behalf of Assignor, or which have been or will be assigned to Assignor, in connection with the use, operation and maintenance of the Premises, or the construction, installation, repair or rehabilitation of improvements on the Premises together with any deposits, fees or advance payments thereunder (collectively, the "Contracts"). The parties with whom Contracts have been or will be entered into are hereinafter collectively referred to as the "Contractors."

(c) Reimbursements. All reimbursements, paid or payable to Assignor, that are (i) for utilities, marketing fees, or the like, and/or (ii) under an agreement for the sharing of the costs of all or part of the development of the Premises between Assignor and another individual or entity (collectively, the "Reimbursements"). The parties with whom Reimbursements have been or will be entered into are hereinafter collectively referred to as the "Reimbursers."

(d) Sales Agreements. All contracts and agreements which have heretofore been or are hereafter executed by or on behalf of Assignor in connection with the sale of any unit, lot or all or any portion of the Premises, and, without limiting the foregoing, any monies received by Assignor in connection therewith (collectively, the "Sales Agreements"). The parties with whom the Sales Agreements have been or are entered into are hereinafter collectively referred to as the "Purchasers."

(e) Leases. All written or verbal agreements for the leasing, letting, rental, use or occupancy of all or any portion of the Premises which have heretofore been or are hereafter executed by or entered into on behalf of Assignor (collectively, the "Leases"), together with the rents, issues and profits now due or which may hereafter become due thereunder and

any advance rent, security deposits or other payments made or to be made pursuant thereto (collectively, the "Rents"). The parties with whom the Leases have been or are entered into are hereinafter collectively referred to as the "Lessees."

(f) Homeowners Documents. All declarations of covenants or restrictions, condominium declarations or documents or articles of incorporation or bylaws of any property owners associations now or hereafter affecting any portion of the Premises (collectively, the "Homeowners Documents").

2. Assignor's Limited License. So long as no default or Event of Default, or event which with notice or lapse of time or both would constitute an Event of Default, by Assignor under the Note, Deed of Trust, or any Additional Collateral, has occurred, Assignor shall have the right under a license granted hereby (but limited as provided in this Assignment) to retain, use and enjoy the benefits and privileges of the Additional Collateral, including the right to collect upon, but not prior to, accrual all of the rents arising from or out of the Leases and the Premises or any part thereof. After the occurrence of any such Event of Default, or an event which with notice or lapse of time or both would constitute such an Event of Default, Assignee may enforce this Assignment, with or without order of any court and with or without appointment of a receiver, and any rents, issues, income, revenues or profits received by Assignor shall thereupon be held in trust as security for Assignor's obligations hereunder and under the Note and Deed of Trust.

3. Assignor's Representations and Warranties. Assignor warrants and represents that: (a) except for any Lease being a Permitted Encumbrance (as defined in the Deed of Trust), there are no leases or subleases of all or any portion of the Premises as of the date hereof; (b) except for those Permits which by their nature are not transferable, it has full right and title to assign the Additional Collateral as provided herein; (c) no other assignment, pledge, transfer or hypothecation of Assignor's interest in any of the Additional Collateral, or grant of any security interest therein, has been made; and (d) there are no defaults under the provisions of any existing Additional Collateral, and none of the Additional Collateral is subject to any defenses, set-offs or counterclaims.

4. Assignee's Rights; Limitation of Liability.

(a) Subject to the provisions of Section 2 above, Assignee shall have the right, power and authority to: (a) notify any person that the Leases have been assigned to Assignee and that all Rents are to be paid directly to Assignee, whether or not Assignee has commenced or completed foreclosure or taken possession of the Premises; (b) settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents or other obligations under the Leases; (c) enforce payment of Rents and other rights under the Leases, prosecute any action or proceeding, and defend against any claim with respect to Rents and Leases; (d) enter upon, take possession of and operate the Premises; (e) lease all or any part of the Premises; and/or (f) perform any and all obligations of Assignor under the Leases and exercise any and all rights of Assignor therein contained to the full extent of Assignor rights and obligations thereunder, with or without the bringing of any action or the appointment of a receiver. At Assignee's request, Assignor shall deliver a copy of this Assignment to each tenant under a Lease and to each manager and managing agent or operator of the Premises. Assignor

Exhibit 4

irrevocably directs any tenant, manager, managing agent, or operator of the Premises, without any requirement for notice to or consent by Assignor, to comply with all demands of Lender given in compliance with this Assignment and to turn over to Assignee on demand all Rents which it receives.

(b) Assignor hereby authorizes Assignee, by its employees or agents, at its option, after the occurrence of a default or an Event of Default, or event which with notice or lapse of time or both would constitute an Event of Default hereunder, under the Note, Deed of Trust, or any Permits, Contracts, Reimbursements, Sales Agreements, Leases or Homeowners Documents, without notice and without regard to the adequacy, value or condition of the security, and with or without court action, or by a receiver, to terminate the aforesaid license granted to Assignor, exercise any and all of Assignee's rights and remedies hereunder and with respect to the Additional Collateral, without any interference or objection from Assignor. In such event, Assignee may take over and enjoy the benefits of the Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents, exercise Assignor's rights under the Additional Collateral and perform all acts in the same manner and to the same extent as Assignor might do. In connection with any and all of the foregoing powers, and without limiting the same, Assignee may effect new Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents, cancel or surrender existing Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents, alter and amend the terms of and renew existing Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents, make concessions to Governmental Authorities, Contractors, Reimbursers, Purchasers, Lessees and others, bring or defend suits in connection with the Additional Collateral and its possession of the Premises in its own name or in Assignor's name, collect reimbursements, rents, income, issues, revenues and profits, enter upon the Premises and collect, sue for and receive in its own name or in Assignor's name, the rents accrued but unpaid and in arrears at the date of such default, as well as the rents thereafter accruing and becoming payable and do or not do any and all things Assignee deems desirable in its sole discretion. Assignor further agrees that it will facilitate in all reasonable ways Assignee's use and enjoyment of the benefits of the Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents and the collection of said reimbursements, rents, income, issues, revenues and profits, and will, upon request by Assignee, execute a written notice of this Assignment to each of the Governmental Authorities, Contractors, Reimbursers, Purchasers, Lessees and all other appropriate persons.

(c) Assignor also hereby authorizes Assignee upon such entry, at its option, to take over and assume the management, operation, repair, maintenance and improvement of the Premises and to perform such other acts in connection therewith as Assignee in its discretion may deem desirable, and to expend so much of the income of the Premises as may be needed in connection therewith, in the same manner and to the same extent as Assignor theretofore might do, including without limitation the right to employ and engage management agents, leasing agents, brokers, accountants and attorneys, the right to expend moneys for the repair, maintenance, renovation, rehabilitation, remodeling, improvement, replacement, refurbishment or other alteration (structural or non-structural) of the Premises.

(d) Assignee shall be under no obligation to take any action authorized herein and shall have no liability for failure to take any such action or for any action taken pursuant

Exhibit 4

hereto, except for its willful misconduct; and Assignor hereby waives and releases any and all claims against Assignee arising out of or in connection with such management, operation, repair and/or maintenance, alteration or other action or inaction, except for Assignee's willful misconduct, and excepting the liability of Assignee to account as hereinafter set forth.

(e)     All of the foregoing powers herein granted Assignee shall be liberally construed. Assignee need not expend its own funds in the exercise of such powers, but if it does, such amounts shall be considered as advances for and on behalf of Assignor evidenced by the Note and secured by this Assignment and the Deed of Trust. Any amounts so advanced shall bear interest at the Default Rate (as defined in the Deed of Trust).

(f)     Assignor shall indemnify Assignee against, and save it harmless from, any and all liability or claims arising from or in connection with any Permits, Contracts, Reimbursements, Sales Agreements, Leases or Homeowners Documents or this Assignment, and/or the control, care, operation, management or repair of the Premises. Assignee shall not be liable for any loss, cost, damage or expense sustained by Assignor or Governmental Authorities, Contractors, Reimbursers, Purchasers, Lessees or any other party resulting from any act or omission of Assignee, unless such loss is caused by the willful misconduct and bad faith of Assignee. Without limiting the generality of the foregoing, Assignee shall not be liable for any failure to lease all or any part of the Premises, or any failure to collect all or any part of any Reimbursement with respect to all or any part of the Premises, nor shall Assignee be obligated to perform or discharge, nor does Assignee hereby undertake to perform or discharge, any term, covenant, agreement, obligation, duty or liability under any Permit, Contract, Reimbursement, Sales Agreement, Lease or Homeowners Document or under or by reason of this Assignment, nor shall Assignee be responsible for the control, care, management or repair of the Premises or any part thereof; nor for the performance of any term, covenant or condition of any of the Permits, Contracts, Reimbursements, Sales Agreements, Leases or Homeowners Documents; nor for any waste committed on the Premises or any part thereof by any Lessee or by any other person, nor for any dangerous or defective condition of the Premises or any part thereof nor for any negligence in the management, upkeep, repair or control of the Premises or any part thereof resulting in loss or injury or death to any lessee, licensee, employee or other person, nor for any other loss, cost, damage or liability not caused directly by the intentional misconduct and bad faith of Assignee. Assignee shall not in any way be liable to Assignor for any action or inaction of Assignee, its employees or agents under this Assignment.

5.     Application of Income by Assignee. Assignee shall have the right, but not the obligation, to use and apply any Rents or other income received hereunder in such order and such manner as Lender may determine for:

(a) Enforcement or Defense. The payment of costs and expenses of enforcing or defending the terms of this Assignment or the rights of Assignee hereunder, and collecting any Rents;

(b) Loan Payments. Interest, principal or other amounts payable pursuant to Note or the other Loan Documents (as defined in the Deed of Trust);

459015_1.DOC                                    -5-

Exhibit 4

(c) <u>Operating Expenses</u>. Payment of costs and expenses of the operation and maintenance of the Premises, including (1) rentals and other charges payable by Assignor under any ground lease or other agreement affecting the Premises; (2) electricity, telephone, water and other utility costs, taxes, assessments, water charges and sewer rents and other utility and governmental charges levied, assessed or imposed against the Premises; (3) insurance premiums; (4) costs and expenses with respect to any litigation affecting the Premises, the Leases or the Rents; (5) wages and salaries of employees, commissions of agents and attorneys' fees and expenses; and (6) all other carrying costs, fees, charges, reserves, and expenses whatsoever relating to the Premises.

After the payment of all such costs and expenses and after Lender has established such reserves as it, in its sole discretion, deems necessary for the proper management of the Premises, Lender shall apply all remaining Rents and other income received by it to the reduction of the Loan.

6. <u>Assignor's Covenants</u>. Assignor agrees faithfully to observe and perform all of the obligations and agreements imposed upon Assignor under any of the Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents and to notify Assignee of any defaults, or claimed defaults, asserted with respect to Assignor under the Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents. Assignor will not: (a) collect any of the rents payable or accruing under any Lease in advance of the time when the same shall become due, other than as required to be paid in advance by the terms of such Lease, but in no event more than 30 days in advance; (b) pledge, transfer, Mortgage or otherwise encumber or assign any of Assignor's interest in any Permit, Contract, Reimbursement, Sales Agreement, Lease or Homeowners Document or any reimbursements, rents, issues, income, revenue or profits arising or accruing therefrom; (c) waive, excuse, condone, discount, set-off, compromise, or in any manner release or discharge any Governmental Authority, Contractor, Reimburser, Purchaser or Lessee thereunder of or from any of its obligations, covenants, conditions or agreements; (d) cancel, terminate or consent to any surrender of any Permit, Contract, Reimbursement, Sales Agreement or Lease, nor agree to modify, alter or change any of the terms thereof or of any Homeowners Document, in each case without the prior written consent of Assignee; (e) consent to any assignment of any Permits, Contracts, Reimbursements, Sales Agreement or Lease or any subletting under any Lease without the prior written consent of Assignee; or (f) enter into, execute or deliver any Permit, Contract, Reimbursement, Sales Agreement, Lease or Homeowners Document without the prior written consent of Assignee.

7. <u>Default</u>. Violation of any of the covenants, representations or provisions contained herein by Assignor shall be deemed a default and Event of Default under the terms of the Note and Deed of Trust. A violation, breach of or failure to comply with any of the terms or provisions of the Note or Deed of Trust or any Event of Default thereunder, shall be deemed a default or event of default hereunder.

8. <u>Insolvency</u>. If any Contractor under any Contract, Reimburser under any Reimbursement, Purchaser under any Sales Agreement or any Lessee under any Lease should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state, or local statute which provides for the possible termination or rejection of any Contract, Reimbursement, Sales Agreement or Lease assigned hereby, Assignor

Exhibit 4

agrees that, if any Contract, Reimbursement, Sales Agreement or Lease is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, and any check in payment of damages for termination or rejection of any such Contract, Reimbursement, Sales Agreement or Lease will be made payable to Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that, upon the request of Assignee, it will duly endorse to the order of Assignee any such check, the proceeds of which will be applied to the indebtedness secured by this Assignment in such order and manner as Assignee may determine in its sole discretion.

9. Status of Assignee. Nothing herein contained or any action taken pursuant hereto shall be construed as making Assignee a "mortgagee in possession" in contemplation of law, except at the option of Assignee, including, without limitation, an entry by Assignee upon the Premises, or as constituting a waiver or suspension by Assignee of its rights to enforce payment of the debts under the terms of the Note or Deed of Trust. Assignee is not the agent of or partner or joint venturer with Assignor or any of the Governmental Authorities, Contractors, Reimbursers, Purchasers or Lessees.

10. Copies of the Additional Collateral. Assignor shall, upon request of Assignee, furnish Assignee a complete list of all Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents. Further, if requested, Assignor shall deliver to Assignee executed or certified copies of all Permits, Contracts, Reimbursements, Sales Agreements, Leases and Homeowners Documents and other written agreements, correspondence and memoranda between Assignor (and its predecessors in title) and any Governmental Authority, Contractor, Reimburser, Purchaser or Lessee relating to the Premises. To the extent that Assignor does not have executed or certified copies of the foregoing in its possession, Assignor shall deliver copies of the foregoing in its possession, with a certification that, to the best of Assignor's knowledge and belief, each such copy is true, correct and complete and has not been amended, altered, superseded, supplemented or rescinded.

11. Successor Developer Status. Assignor covenants and agrees that, at Assignee's option, in the event of the foreclosure of the Deed of Trust or the granting of a deed in lieu thereof, Assignee and any subsequent purchaser of the Premises shall have the right to succeed to all of the right, title and interest of Assignor, as "Declarant" or "Developer" under any or all of the Homeowners Documents, by filing a Certificate in the public records of the County in which the Premises are located, setting forth that it has so elected, and such Certificate shall conclusively establish that Assignee or such subsequent purchaser of the Premises, and any person claiming by or through Assignee, is the "Declarant" or "Developer", as applicable. Such Certificate shall not require the consent, approval or joinder of Assignor, but Assignor hereby agrees to join in, consent to and approve such Certificate on request.

12. Governing Law; Separability; Time of Essence. This Assignment shall be governed by the laws of the State of California. Wherever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment or the operation thereof shall be prohibited by or invalid under such law, such provision and its operation shall be effective to the maximum extent permitted by law, without invalidating the remainder of such provision or the remaining

Exhibit 4

provisions of this Assignment or the operation thereof. Time is of the essence of this Assignment.

13. **Amendments; Interpretation.** Neither this Assignment nor any provision hereof may be amended, modified, waived, discharged or terminated except in a writing executed by Assignor and Assignee. The Section headings used herein are for convenience of reference only and shall not define or limit the provisions of this Assignment. In this Assignment, the singular shall include the plural and the plural shall include the singular and masculine, feminine, and neuter pronouns shall be fully interchangeable, where the context so requires. Capitalized terms not defined herein shall have the meanings set forth in the Deed of Trust.

14. **Other Security.** Assignee may take or release other security for the indebtedness secured hereby or by the Deed of Trust, may release any party primarily or secondarily liable therefor, and may apply any other security held by it to the satisfaction thereof, may exercise, fail to exercise or waive any other right or remedy available to it, and may grant extensions, renewals, forbearances or modifications with respect to such indebtedness, all without prejudice to any of its rights under this Assignment.

15. **Remedies Cumulative.** Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, Deed of Trust, this Assignment or any other instrument or by or pursuant to law or in equity, by statute or otherwise, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee. Accordingly, any failure on the part of Assignee promptly to exercise any option hereby given or reserved shall not prevent the exercise of any such option at any time thereafter. This Assignment may be enforced from time to time by Assignee at its discretion. Assignee may also at any time cease to enforce this Assignment. The right of Assignee to collect any and all indebtedness held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

16. **Notice.** Any notice which any party hereto may desire or may be required to give to any other party hereto shall be in writing, and shall be deemed effective at the earlier of the time when actually received, or at 6:00 P.M. (in the time zone of the addressee of the notice) on the second (2nd) Business Day after deposit of the same in U.S. first class mail, certified or registered, postage prepaid, addressed to a party at its address set forth below, or at such other place as such party may have designated to all other parties by notice in writing in accordance herewith:

    (a)    If to Assignor:

        Ashby USA, LLC
        c/o Fiesta Development
        470 East Harrison Street
        Corona, California 92879

    (b)    If to Assignee:

Exhibit 4

OHIO SAVINGS BANK
200 Ohio Savings Plaza
1801 East Ninth Street
Cleveland, Ohio 44114
Attention: Frank J. Bolognia, Senior Executive Vice President
Mail Code: OH99-0204

Except as otherwise specifically required herein, notice of the exercise of any right or option granted to Assignee by this Assignment is not required to be given.

17. <u>Binding Effect</u>. The provisions of this instrument shall be binding upon Assignor and its legal representatives, successors or assigns, and upon Assignee and its permitted successors or assigns, but shall not be assignable by Assignor.

18. <u>Partial Release</u>. To the extent, if any, that any provisions of the Deed of Trust may provide for the partial release thereof upon conditions therein stated, the Additional Collateral to the extent it relates to any portion of the Premises which may be released from the lien of said Deed of Trust pursuant to such provisions, and any rents, issues and profits thereafter accruing with respect thereto, shall ipso facto be immediately released from this Assignment without the necessity of further action or instrument; provided, however, nothing herein contained shall impair, alter or diminish the effect, lien and encumbrance of this Assignment with respect to the remaining portion of the Premises not so released and the Additional Collateral to the extent it relates to the unreleased portion of the Premises.

19. <u>Effectiveness; Termination</u>.

(a) No judgment or decree which may be entered on any debt secured or intended to be secured by this Assignment shall operate to abrogate or lessen the effect of this Assignment, but this Assignment shall continue in full force and effect until the payment, discharge and performance of any and all indebtedness and obligations evidenced by the Note or secured by the Deed of Trust, in whatever form, and until all costs and expenses incurred by virtue of the authority herein contained have been fully paid out of rents, income, issues and profits of the Premises, or by Assignor, or until such time as this Assignment may be voluntarily released. This Assignment shall also remain in full force and effect during the pendency of any foreclosure proceedings, both before and after sale, until the issuance of a deed or certificate of title pursuant to a foreclosure decree, unless all indebtedness evidenced or secured by the Deed of Trust is fully satisfied before the expiration of any period of redemption.

(b) Upon release and reconveyance of the Deed of Trust encumbering the Premises and payment in full of any costs or expenses payable to Assignee hereunder, this Assignment shall become and be void and of no effect, but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee stating that such Deed of Trust has not been discharged and satisfied, that any part of the principal, interest or premium on the Note or that any costs or expenses payable to Assignee thereunder, under the Deed of Trust or hereunder remain unpaid shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment, and any person is hereby authorized to rely thereon. Assignor hereby authorizes and directs all Governmental Authorities, Contractors, Reimbursers,

Exhibit 4

Purchasers, Lessees and other persons, upon receipt from Assignee of written notice to the effect that a default exists under this Assignment, the Note or Deed of Trust, to rely thereon as conclusive evidence of such default for purposes of dealing with Assignee in the exercise of any of Assignee's rights hereunder, and any Reimburser, Lessee or Purchaser is directed to pay over to Assignee all reimbursements, rents, issues, income, revenues and profits (including, without limitation, purchase prices), payable or accruing under the Reimbursements, Leases or Sales Agreements or from the Premises and to continue to do so until otherwise notified by Assignee. Assignee has not received any security deposit or earnest money deposit, down payment or other money with respect to any Reimbursement, Lease or Sales Agreement, and assumes no responsibility for any such security deposit, earnest money deposit, down payment or other money not actually received by Assignee.

20. **Conflict.** If any conflict or inconsistency exists between the absolute assignment of the Rents and the Leases in this Assignment and the assignment of the Rents and Leases as security in the Deed of Trust, the terms of this Assignment shall control.

21. **Counterparts.** This Assignment may be executed and recorded in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument as of August 29, 2005.

ASSIGNOR:

ASHBY USA, LLC,
a California limited liability company

By: Ashby Development Company, Inc., a
California corporation,
Its Managing Member

By: _____
Justin K. Ashby, President

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF Riverside        )

On 8-26, 2005, before me, Tracy M. Browne, a Notary Public in and for said State, personally appeared Justin K. Ashby, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Tracy M Browne*
Signature

TRACY M. BROWNE
Commission # 1394895
Notary Public - California
Riverside County
My Comm. Expires Jan 20, 2007

## EXHIBIT "A"

## LEGAL DESCRIPTION

Real property in the City of Temecula, County of Riverside, State of California, described as follows:

PARCEL A:

LOTS 7 THROUGH 11 AND LETTERED LOTS "I", "J" AND "L" OF TRACT 29353-2, IN THE CITY OF TEMECULA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 342 OF MAPS, PAGE(S) 73 THROUGH 85, INCLUSIVE, RECORDS OF SAID COUNTY.

APN: 958-260-013 THROUGH 017 AND 958-260-019 THROUGH 021

PARCEL B:

SECTION 21, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF TEMECULA ACCORDING TO THE OFFICIAL GOVERNMENT PLAT THEREOF.

ALSO EXCEPTING THEREFROM ALL THOSE PORTIONS CONVEYED TO THE CITY OF TEMECULA BY DEED RECORDED MAY 22, 2003 AS INSTRUMENT NO. 03-371374 OF OFFICIAL RECORDS RIVERSIDE COUNTY, CALIFORNIA.

ALSO EXCEPTING THEREFROM ALL OF TRACT 29353-2, AS PER MAP RECORDED IN BOOK 342 OF MAPS PAGES 73 THROUGH 85 INCLUSIVE RECORDS OF SAID COUNTY.

APN: 958-260-022 (PREVIOUSLY A PORTION OF 958-260-011)

459015_1.DOC

A Land

Exhibit 4

EXHIBIT "B"
LEGAL DESCRIPTION
========================

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE SATE OF CALIFORNIA, COUNTY OF RIVERSIDE AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

LOTS 1 THROUGH 6 AND LETTERED LOTS "H" AND "K" OF TRACT 29353-2, IN THE CITY OF TEMECULA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 342, PAGES 73 THROUGH 85, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL B:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGES 64 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION FO THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION, SOUTH 0°33'55" WEST, 1,270.24 FEET, TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 89°26'05" WEST, 597.63 FEET TO A POINT;

THENCE SOUTH 0°33'55" WEST, 182.22 FEET TO A POINT ON THE EASTERLY LINE OF PARCEL 13 OF SAID PARCEL MAP;

THENCE SOUTH 89°26'05" EAST, 597.63 FEET TO A POINT ON THE EAST LINE OF SAID SECTION 20 THAT IS 182.22 FEET SOUTH OF THE TRUE POINT OF BEGINNING;

THENCE NORTH 0°33'55" EAST, 182.22 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL C:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGES 44 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION OF THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BARNEARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, AS SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION, SOUTH 0°33'55" WEST, 1,902.46 FEET, TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 89°26'05" WEST, 597.63 FEET TO THE NORTHERLY PROLONGATION OF THE WEST LINE OF PARCEL 1, AS SHOWN ON THE AFORESAID PARCEL MAP;

THENCE ALONG SAID PROLONGATION SOUTH 0°33'55" WEST, 114.83 FEET TO THE NORTHWEST CORNER OF SAID PARCEL 1;

THENCE ALONG THE NORTH LINE OF SAID PARCEL SOUTH 89°26'05" EAST, 597.63 FEET TO THE EAST LINE OF SAID SECTION 20;

THENCE ALONG SAID EAST LINE NORTH 0°33'55" EAST, 114.83 FEET TO THE TRUE POINT OF BEGINNING.

*LEGAL DESCRIPTION CONTINUED*

459015_1.DOC

B Land

Exhibit 4

PARCEL D:

THAT PORTION OF THAT CERTAIN PARCEL OF LAND DELINEATED AND DESIGNATED "NOT A PART" ON MAP FILED IN BOOK 1, PAGE 44 OF PARCEL MAPS, RIVERSIDE COUNTY RECORDS, BEING A PORTION OF THE EAST HALF OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF SAID SECTION 20, AS SHOWN ON SAID PARCEL MAP IN BOOK 1, PAGE 44;

THENCE ALONG THE EAST LINE OF SAID SECTION SOUTH 0°33'55" WEST, 1,720.24 FEET;

THENCE NORTH 89°26'05" WEST 597.63 FEET TO THE TRUE POINT OF BEGINNING;

THENCE CONTINUING NORTH 89°26'05" WEST, 330 FEET, MORE OR LESS, TO AN INTERSECTION WITH THE EASTERLY LINE OF LAND CONVEYED TO THE METROPOLITAN WATER DISTRICT OF SOUHTERN CALIFORNIA BY DEED RECORDED APRIL 24, 1968 AS INSTRUMENT NUMBER 037774, OFFICIAL RECORDS;

THENCE ALONG SAID EASTERLY LINE SOUTH 12°32'02" WEST (RECORD SOUTH 12°24'14" WEST), 149 FEET, MORE OR LESS, TO THE NORTHWESTERLY CORNER OF PARCEL 13, AS SHOWN ON THE AFORESAID PARCEL MAP;

THENCE SOUTH 89°25'05" EAST, ALONG THE NORTH LINE OF SAID PARCEL 13, 362.81 FEET TO THE NORTHEAST CORNER THEREOF;

THENCE NORTH 0°33'55" EAST, 144.50 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL E:

SECTION 21, TOWNSHIP 7 SOUTH, RANGE 2 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF TEMECULA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION AS CONVEYED TO THE CITY OF TEMECULA, BY DEED RECORDED MAY 22, 2003, AS INSTRUMENT NO. 2003-371374, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ANY PORTION LYING WITHIN TRACT NO. 29353-2, AS PER MAP RECORDED IN BOOK 342, PAGES 73 THROUGH 85, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA.

Exhibit 4