# EXHIBIT "5"

## SECURITY AGREEMENT—PLEDGE

This **SECURITY AGREEMENT--PLEDGE**, dated as of August 29, 2005 ("**Security Agreement**"), is made by ASHBY USA, LLC, a California limited liability company, having an office at c/o Fiesta Development, 470 East Harrison Street, Corona, California 92879 ("**Debtor**") to OHIO SAVINGS BANK, a federal savings bank, having an office at 1801 East Ninth Street, Suite 200, Cleveland, Ohio 44114 ("**Lender**").

### PRELIMINARY STATEMENT

A.     Pursuant to a Loan Agreement of even date herewith (the "**Loan Agreement**"), Debtor and Lender have provided for loans to Debtor in the aggregate amount of $112,500,000.00 on the terms and conditions more particularly set forth in the Loan Agreement. All capitalized terms not otherwise defined in this Agreement have the meaning assigned by the Loan Agreement.

B.     Debtor is the owner of the "**Collateral**" (as defined below).   The Collateral includes a deposit account established with Lender.

C.     Debtor wishes to execute, acknowledge and deliver to Lender this Security Agreement in accordance with the Loan Agreement, granting Lender a security interest in the Collateral as additional security for the Loan.

**NOW, THEREFORE**, in consideration of the foregoing and in consideration of the mutual agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor hereby covenants and agrees with Lender to the foregoing and as follows

1.     **Definitions**.  For the purposes of this Security Agreement, the following terms shall have the meanings set forth below.  All capitalized terms not otherwise defined have the meaning specified in the Loan Agreement.

> "**Business Day**" shall mean any day of the year on which banks are not required or authorized to close in California.

> "**Collateral**" shall mean that certain non-interest bearing deposit Account No _____ with Ohio Savings Bank, a federal savings bank in the name of Debtor ("**Account**") together with all proceeds thereof and substitutions therefor, including but not limited to interest (if any) earned thereon, (all such terms shall have the meaning provided in the UCC).

> "**Event of Default**" shall have the meaning set forth in the Loan Agreement.

> "**Obligations**" shall mean any and all indebtedness and/or other liabilities, obligations, covenants or agreements of Debtor to

EXHIBIT 5

Lender, now or hereafter arising from, out of or relating to the Loan Agreement or this Security Agreement and whether direct, indirect, contingent or otherwise.

"**State of Formation**" means the State of California.

"**UCC**" shall mean the Uniform Commercial Code of the State of California or, if the creation, perfection and enforcement of any security interest herein granted is governed by the laws of a state other than California, then, as to the matter in question, the Uniform Commercial Code in effect in that state.

"**UCC-1s**" shall mean the UCC-1 Financing Statements filed pursuant to this Security Agreement naming Debtor as debtor and Lender as secured party, describing the Collateral.

## 2.    Grant of Security.

(a)    As security for the prompt and complete payment and performance of the Obligations, Debtor does hereby pledge, assign and hypothecate to Lender and grant to Lender a security interest in all of Debtor's right, title and interest in and to the Collateral.

(b)    The hypothecation, pledge and assignment made pursuant to this Security Agreement shall be in addition to, and shall in no way limit or impair, any rights of Lender in, to and under the Collateral pursuant to the Loan Agreement.

## 3.    Delivery of Pledged Collateral; Application of Funds.

(a)    To the extent that Lender's security interest in any Collateral can be perfected only by possession of such Collateral, such Collateral shall, at the Lender's sole option, be delivered by delivery of the Collateral and all other instruments constituting the Collateral or otherwise representing or evidencing such Collateral in suitable form for transfer by delivery or accompanied by duly executed instruments of transfer or assignment, undated and in blank, all in form and substance satisfactory to Lender in its sole and absolute discretion.

(b)    In addition to all other remedies set forth in the Loan Agreement or this Security Agreement, or otherwise available to Lender, in the event an Event of Default otherwise occurs under the Loan Agreement, Lender may, but is not obligated to, access all or a part of the funds in the Account and apply the funds to the amount due. Lender and Debtor have agreed that the Account shall not bear interest; however, if the Account is subsequently changed to an interest-bearing account by agreement of Debtor and Lender, in Lender's discretion, interest, if any, earned on the Account shall be added to the Account. No withdrawals may be made from the Account by Debtor without the express prior written consent of Lender, in its sole discretion.

EXHIBIT 5

(c)    If required pursuant to Section 2 of the Loan Agreement, funds may be deposited in the Account from proceeds of the Land Loan (as defined in the Loan Agreement) or other sources, and shall then be subject to all terms and conditions hereof.

4.    **Representations and Warranties**.  Debtor does hereby represent and warrant to Lender as follows:

(a)    Debtor is, and as to all Collateral acquired after the date hereof shall be the true, legal and lawful owner and holder of the Collateral, free and clear of any liens, pledges, security interests or encumbrances whatsoever, other than the security interest of Lender created by this Security Agreement.

(b)    Debtor is duly formed and validly existing under the laws of the State of Formation and has all requisite power and authority to conduct its business, to own its assets and properties, and to execute, deliver, and perform all of its obligations set forth in the Loan Agreement, and is qualified to do business in any other jurisdiction in which it conducts its business.  Debtor's exact legal name is as set forth in the opening paragraph of this Security Agreement.

(c)    Debtor has full power and lawful right to make the hypothecation, assignment and pledge contemplated in this Security Agreement and to vest in Lender the security interest created hereby, and the rights and interests assigned and pledged hereunder constitute valid and subsisting rights and interests of Debtor.

(d)    Upon the filing of proper financing statements and/or the delivery to Lender of the Collateral, this Security Agreement shall create a valid lien on and a perfected security interest in the Collateral, and is enforceable as such against the rights of creditors of and purchasers from Debtor.  The delivery of Collateral to Lender, which is being done in connection with the execution and delivery of this Agreement, will constitute all actions necessary to protect and perfect such lien on and security interest in each item of the Collateral.

(e)    This Security Agreement has been duly authorized, executed and delivered by Debtor and constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with its terms, subject to principles of equity and laws affecting creditors' rights.

(f)    The execution, delivery and performance by Debtor of this Security Agreement and the remedies in respect of the Collateral under this Security Agreement (i) have been duly authorized, (ii) do not require the approval of any governmental authority or other third party or require any action of, or filing with, any governmental authority or other third party to authorize same other than the UCC-1s (except as set forth in subparagraph (d) above); (iii) shall not, (A) violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority, (B) violate, result in the breach of or constitute a default under any indenture, mortgage, deed of trust, agreement or any other instrument to which Debtor is a party or by which any of Debtor's assets (including, without limitation, the Collateral) are bound,

459558_2.DOC                                        3

EXHIBIT 5

or (C) be in conflict with, any such indenture, mortgage, deed of trust, agreement or other instrument and (iv) shall not result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the properties or assets of Debtor except as contemplated by the provisions of this Security Agreement and the Loan Agreement.

(g)    There is not now pending or, to the best of Debtor's knowledge, threatened any action or proceeding at law or in equity or by or before any administrative agency which if adversely determined would impair or materially adversely affect Debtor's or Lender's interest in the Collateral or the value thereof or Debtor's ability to perform its obligations under the Loan Documents.

(h)    The financial statements furnished by Debtor in connection with this Security Agreement are true, correct and complete in all material respects and do not contain any omission or misstatement of fact which would make the statements contained therein false, misleading or incomplete in any material respect.

(i)    There is no financing statement (or similar statement or registration under the law of any jurisdiction) now on file or registered in any public office covering any interest of Debtor in the Collateral or intended so to be other than any in favor of Lender. There are no set offs, counterclaims or defenses with respect to the Collateral and no agreement has been made with any other person or party with respect thereto, except as described in the Loan Agreement.

(j)    Debtor has obtained all necessary consents to this Security Agreement and the pledge of the Collateral.

(k)    Debtor hereby restates and confirms all of the representations and warranties set forth under the Loan Agreement and all of the other terms and conditions of the Loan Agreement are hereby incorporated herein.

(l)    Borrower shall not change the location of its chief executive office outside of California or its State of Formation without Lender's prior consent (or if Borrower is an individual, change its principal residence outside of California without first notifying Lender of its intention to do so), or carry out any such changes without furnishing Lender with any UCC Financing Statements or amendments as may be requested by Lender or as are otherwise necessary or requested to assure perfection and continuation of perfection of Lender's security interests under this Security Agreement.

5.    **Financing Statements**. Debtor authorizes Lender to file a financing statement describing the Collateral. Upon the request of Lender, Debtor, at Debtor's sole cost and expense, shall execute and deliver all such further financing statements, continuation statements, assurances and assignments of the Collateral and consents with respect to the pledge of the Collateral and the execution of this Security Agreement, and shall execute and deliver such further instruments, agreements and other documents and do such further acts and things, as Lender may reasonably request in order to more fully effectuate the purposes of this Security Agreement and the assignment of the Collateral and obtain the full benefits of this Security

EXHIBIT 5

Agreement and the rights and powers herein created. Debtor shall pay the costs of, or incidental to, any recording or filing of any financing or continuation statements concerning any Collateral owned by it.

6.    **Covenants and Agreements**. In addition to any and all other covenants and agreements by Debtor under this Security Agreement, Debtor further covenants and agrees that:

(a)    Debtor shall defend the Collateral against the claims and demands of all persons whomsoever and Debtor shall likewise defend Lender's right, title and interest thereto and security interest therein against all claims and demands of any other person or party at any time claiming the same or any interest therein adverse to Lender.

(b)    Debtor shall not, directly or indirectly, sell, assign, pledge, license, transfer, exchange, grant any option or security interest with respect to, or otherwise dispose of or encumber, the Collateral or any beneficial or other interest therein, except as provided in the Loan Agreement.

(c)    Debtor shall be liable for and shall from time to time pay and discharge, all taxes, assessments and governmental charges imposed on the Collateral by any federal, state or local authority.

(d)    Debtor shall give Lender prompt notice of (i) the occurrence of any default under this Security Agreement about which Debtor has actual knowledge and (ii) any action or proceeding to which Debtor is a party, or affecting Debtor, an adverse determination of which would materially adversely affect Debtor's ability to perform its obligations under the Loan Documents, or would affect the Collateral in any material adverse manner.

(e)    Debtor shall deliver to Lender at its request any and all instruments evidencing the Collateral or evidence of the Collateral, the delivery and possession of which are necessary or desirable in order to create, maintain and/or perfect a security interest therein.

7.    **Indemnification**. Debtor shall and does hereby agree to indemnify Lender for and to hold Lender harmless from and against any and all loss, cost, damage, liability or expense (including without limitation attorneys' fees and costs) which in any way arises from, out of or with respect to (a) Debtor's failure to comply with any of its obligations hereunder and/or (b) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in this Security Agreement except for the consequences of its own gross negligence or willful misconduct. Should Lender incur any such liability, loss or damage arising out of, in connection with or in defense of any such claim or demands, the amount thereof, including costs, expenses and attorneys' fees, shall be deemed part of the Loan and secured hereby and Debtor shall reimburse Lender therefor promptly upon demand. This Security Agreement shall not operate to make Lender responsible or liable in any manner for any matter arising out of or in any way related to the Collateral, other than those arising out of Lender's gross negligence or willful misconduct.

459558_2.DOC                           5

EXHIBIT 5

8. **Events of Default and Remedies**. If any Event of Default shall have occurred (and be continuing after expiration of the applicable cure period), then Lender shall have the following rights and remedies:

(a)    Lender shall have all of the rights and remedies provided under this Security Agreement and to a secured party by the Uniform Commercial Code in effect in the State of California at that time;

(b)    Lender, except to the extent prohibited by law, without in any manner waiving such Event of Default, may, at its option, without further notice and without regard to the adequacy of any security for the Obligations, either in person or by agent, with or without bringing any action or proceeding, collect and receive all distributions, payments, income, principal, interest and earnings, if any, arising, accruing or becoming due to Debtor with respect to the Collateral;

(c)    Debtor understands that during the continuance of an Event of Default, in addition to all other rights of Lender under the Loan Agreement, Lender shall have the right to withdraw all or a part of the funds in the Account and apply them to the Obligations and the payment of the costs and expenses incurred in preserving and enforcing rights of Lender including but not limited to attorneys' fees, in such order and manner as Lender in its sole discretion determines. Lender shall account to Debtor for any surplus remaining thereafter, and shall pay such surplus to the party entitled thereto, including any junior secured party who has made proper demand upon Lender and has furnished proof to Lender as requested in the manner provided by law;

(d)    In the event that only a portion of the Collateral is applied to the Obligations and the Event of Default is cured, the balance of the withdrawn funds may be deposited, in Lender's discretion, in the same or another type of account with Lender, subject to this Security Agreement, and the term "Account" as used in this Security Agreement includes such substitute account.

(e)    If the Account is a time deposit account, Debtor understands that an early withdrawal fee or penalty may be charged to the Account in accordance with Lender's (or other depository bank's) then-existing policy and applicable law as a result of the an early withdrawal of all or part of the Account due to Lender's exercise of its rights and remedies under this Security Agreement following an Event of Default, and Debtor hereby consents to application of funds from the Account to payment of any applicable fees or penalties.

(f)    Lender, except to the extent prohibited by law, without the necessity for demand of performance or other demand, advertisement or notice of any kind of time and place of public or private sale to or upon any other person (all and each of which demands, advertisements and/or notices are expressly waived by Debtor) shall have the right to forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, transfer and register in its name or in the name of its nominee the whole or any part of the Collateral. In the event that notice is necessary, written notice mailed to Debtor at the address given below ten (10) Business Days prior to the date of public sale

6

EXHIBIT 5

of the Collateral subject to the lien and security interest created herein or prior to the date after which private sales or any other disposition of said Collateral will be made shall constitute reasonable notice, but notice given in any other reasonable manner or at any other reasonable time shall be sufficient;

(g)    Lender may, in its sole and absolute discretion, make any compromise or settlement deemed desirable by Lender and/or extend the time of payment or delivery, arrange for payment or delivery in installments, or otherwise modify the terms of, or release, any of the Collateral, and without otherwise discharging or affecting the Obligations, the Collateral or the security interest granted herein;

(h)    Upon notice to Debtor by Lender stating that an Event of Default has occurred under this Security Agreement and/or the Loan Agreement  (the "Notice of Default"), all rights of Debtor with respect to the Collateral shall thereupon become automatically and completely vested in Lender, which shall thereupon have the sole right and authority to exercise such rights for so long as the Event of Default continues;

(i)    All rights of Debtor to receive the payments which Debtor would otherwise be authorized to receive and retain pursuant to Paragraph 11 herein shall cease, and all such rights shall thereupon become vested in Lender, which shall thereupon have the sole right to receive and hold such payments as part of the Collateral;

(j)    All payments which are received by Debtor contrary to the provisions of subparagraph (i) of this Paragraph 8 shall be received in trust for the benefit of Lender and forthwith paid over to Lender as part of the Collateral in the form received (with any necessary endorsement); and

(k)    In order to permit Lender to exercise the rights which Lender may be entitled to exercise pursuant to subparagraphs (h), (i) and (j) of this Paragraph 8, and to receive all distributions, payments, income, principal, interest and earnings which Lender may be entitled to receive under subparagraphs (h), (i) and (j) of this Paragraph 8, Debtor shall, if necessary, upon written notice from Lender, from time to time, execute and deliver to Lender any instruments as Lender may reasonably request and in form reasonably satisfactory to Lender in all respects.

9.    **Payments**.  Payments in redemption of, or in exchange for, any of the Collateral shall be promptly delivered to Lender to hold as part of the Collateral and, if received by Debtor with Lender's consent, shall be received in trust for the benefit of the Lender, segregated from the other property or funds of Debtor, and forthwith delivered to Lender as part of the Collateral in the form received (with any necessary endorsement) on Lender's demand.

10.    **Lender's Settlement Rights**.  Lender may at any time, acting in each instance in Lender's sole and absolute discretion:

(a)    extend or change the time of payment and/or the manner, place or terms of payment of all or any of the Obligations; or

EXHIBIT 5

(b)    release and/or surrender all or any of the Collateral, by whomsoever deposited, which is now or may hereafter be held by Lender in connection with the Obligations.

**11.    Release; Early Termination.**

(a)    Lender may release or surrender at any time all or any of the Collateral or other security under the Loan, release any party primarily or secondarily liable thereon and may apply any other security held by it in satisfaction of the Loan without prejudice to its rights under this Security Agreement.

(b)    In the event that a letter of credit is issued to the City of Temecula under the L/C Facility and is returned to Lender by the beneficiary without having been drawn, in whole or in part, then so long as no Event of Default has occurred and is continuing, upon receipt of such undrawn letter of credit, Lender shall apply the balance of the Account, to a maximum amount of $3,000,000.00 to outstanding obligations of Debtor under the Loan Documents and terminate this Security Agreement so that Debtor shall then hold the remaining balance in the Account free and clear of a security interest in favor of Lender up to a maximum amount of $3,000,000.00 (any excess over such amounts shall be applied to amounts due under the Loan Documents).

**12.    Continuing Security Interest; Termination.**

(a)    Unless earlier terminated as described in Section 11, this Security Agreement shall create a continuing security interest in the Collateral and, unless terminated by operation of law, shall remain in full force and effect and be binding upon Debtor and the legal representatives, successors and assigns of Debtor until the payment and performance in full of the Obligations other than the obligations that survive payment of monetary liabilities (provided that there are no outstanding monetary obligations existing under the Loan Agreement) and the security interest in the Collateral shall be reinstated, as applicable, if at any time payment of such Obligations, or any part thereof, is rescinded or reduced in amount or must otherwise be restored or returned by any obligee of such Obligations all as through such payment or performance had not been made.

(b)    Upon the payment and performance in full of the Obligations (other than the obligations that survive payment of monetary liabilities provided that there are no outstanding money obligations existing under the Loan Agreement), the security interest in the Collateral shall terminate and all rights to the Collateral shall revert to Debtor. Upon any such termination, Lender will return to Debtor such of the Collateral in Lender's possession as shall not have not been sold or otherwise applied pursuant to the terms hereof. In addition, Lender will execute, acknowledge (where applicable) and deliver such satisfactions, releases and termination statements as Debtor shall reasonably request.

**13.    Notices.** All notices and other communications hereunder shall be in writing or confirmed in writing and delivered in accordance with the Loan Agreement.

EXHIBIT 5

14.   **Lender's Duty of Care**.  Lender shall exercise reasonable care in the custody of any Collateral in its possession and control but shall be deemed to have exercised reasonable care if such Collateral is accorded treatment substantially equal to that which Lender accords its own property or if Lender takes such action with respect to the Collateral as Debtor shall request, but no failure to comply with any such request nor any omission to do any such act requested by Debtor shall be deemed a failure to exercise reasonable care, nor shall Lender's failure to take necessary steps to preserve rights against any parties with respect to any Collateral in its possession be deemed a failure to exercise reasonable care.

15.   **Miscellaneous.**

(a)   <u>Severance</u>.  If any of the provisions of this Security Agreement, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Security Agreement or the application of such provision or provisions to persons or circumstances other than whom or which it is held invalid or unenforceable, shall not be affected thereby and every provision of this Security Agreement shall be valid and enforceable to the fullest extent permitted by law.

(b)   <u>Binding Agreement</u>.  This Security Agreement shall be binding upon the heirs, legal representatives, successors and assigns of Debtor and shall inure to the benefit of Lender and its successors and assigns.

(c)   <u>Amendment</u>.  No amendment of any provision of this Security Agreement shall be effective unless it is in writing and signed by Debtor and Lender, and no waiver of any provision of this Security Agreement, and no consent to any departure by Debtor therefrom, shall be effective unless it is in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(d)   <u>Captions</u>.  The title of this document and the captions used herein are inserted only as a matter of convenience and for reference and shall in no way define, limit or describe the scope or the intent of this Security Agreement or any of the provisions hereof.

(e)   <u>Venue</u>.  Debtor hereby irrevocably consents to the jurisdiction of the courts of the State of Ohio and the Federal Courts for the District of Ohio, in any and all actions and proceedings arising hereunder and under the Loan Agreement and irrevocably agrees to service of process by certified mail, return receipt requested, to the address of Debtor set forth herein.  Debtor waives and shall not interpose any objection of forum non conveniens, or to venue, and waives any right to seek to remove any proceedings commenced by Lender in Cleveland, California, to any other venue and waives any right to object to Lender seeking to remove to such county any proceeding commenced by Debtor in any other forum or venue.

(f)   <u>No Waiver</u>.  No delay on the part of Lender in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right hereunder or the failure to exercise same in any instance preclude

EXHIBIT 5

other or further exercise thereof or the exercise of any other power or right nor shall Lender be liable for exercising or failing, to exercise any such power or right.

(g)    Counterparts.  This Security Agreement may be executed simultaneously in one or more counterparts, each of which when so executed and delivered shall be deemed an original but all of which taken together shall constitute but one and the same original and it shall not be necessary in making proof of this Security Agreement to produce or account for more than one such counterpart.

(h)    Choice of Law.  The Account is located in Cleveland, Ohio, and all rights hereunder shall be governed by the laws of the State of Ohio, without regard to conflicts of laws principles, except to the extent that the UCC provides for application of the law of another state, as to Lender's security interest in and rights and remedies relating to the Collateral.

(i)    Other Remedies.  Nothing contained in this Security Agreement and no act done or omitted by Lender pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Lender of any rights and remedies possessed by Lender under the terms of the Loan.  The right of Lender to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to, any action taken by it hereunder.

(j)    Security Agreement.  This Security Agreement is intended to be and is a "security agreement" under the Uniform Commercial Codes of the States of California and Ohio.

(k)    Attorneys' Fees.  Debtor agrees to pay any and all costs and expenses incurred by Lender in enforcing any rights or remedies under this Security Agreement, including, without limitation, court costs, attorneys' fees and disbursements through and including appellate proceedings, regardless of whether any specific legal proceedings should be commenced or initiated.

(l)    No Duty.  Except as otherwise set forth in Section 14 above, the rights, powers, remedies and privileges conferred on Lender hereunder are solely to protect the interests of Lender in the Collateral and shall not impose any duty upon Lender to exercise any such rights, powers, remedies or privileges either before or after the occurrence of an Event of Default.

*[signatures on next page]*

459558_2.DOC

EXHIBIT 5

BORROWER:           ASHBY USA, LLC,
                    a California limited liability company

                    By:   Ashby Development Company, Inc., a
                          California corporation,
                          Its Managing Member

                          By: _____ 8-2
                              Justin K. Ashby, President

*[signatures continued on next page]*

EXHIBIT 5

**ACCEPTED AND AGREED:**

LENDER:

OHIO SAVINGS BANK, a federal savings bank

By:

Name: JEFFREY L MORGAN

Title: VICE PRESIDENT

EXHIBIT 5