# EXHIBIT "7"

**MODIFICATION AGREEMENT**
(Land Loan and Unit Construction Revolving Loan)
(Roripaugh Ranch)

**DATE**:     February 14, 2006

**PARTIES**:   Borrower:   ASHBY USA, LLC, a California limited liability company

              Lender:     OHIO SAVINGS BANK,
                          a federal savings bank

**RECITALS:**

A.   Lender has extended to Borrower a revolving line of credit loan ("Land Loan") in the original principal amount of $106,500,000.00 pursuant to the Loan Agreement dated August 29, 2005 ("Loan Agreement"), and evidenced by the Revolving Deed of Trust Note (Land Loan), dated August 29, 2005 ("Land Note"). The unpaid principal of the Land Loan as of December 1, 2005, was $57,273,471.25.

B.   Lender has extended to Borrower a loan ("L/C Loan") in the original principal amount of $6,000,000.00 pursuant to the Loan Agreement, and evidenced by the Deed of Trust Note (Letter of Credit), dated August 29, 2005 ("L/C Note"). The unpaid principal of the L/C Loan as of December 1, 2005, was $0.00.

C.   The Land Loan and the L/C Loan are sometimes severally and collectively referred to herein as the "Loan." The L/C Note and the Unit Construction Note are sometimes severally and collectively referred to herein as the "Note."

D.   The Loan is secured by, among other things, the following:

   (i)   Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Land Loan and Revolving Loan) (Roripaugh Ranch) dated August 29, 2005 ("Deed of Trust"), by Borrower, as trustor, for the benefit of Lender, as beneficiary, recorded on September 2, 2005, as Instrument No. 2005-0730193. Official Records of Riverside County, California;

   (ii)  Assignment of Rents and Leases and Agreements Affecting Real Estate (Roripaugh Ranch), dated August 29, 2005 ("Assignment of Rents"), by Borrower, as assignor, in favor of Lender, as assignee, and recorded on September 2, 2005, as Instrument No. 2005-0730194. Official Records of Riverside County, California;

501127.7
17810-977

1

Exhibit 7

(iii) Security Agreement Pledge dated August 29, 2005 executed by Borrower in favor of Lender (the "L/C Pledge Account").

All of the agreements, documents, and instruments securing the Loan and the Note are referred to individually and collectively as the "Security Documents."

E.    The Note, the Loan Agreement, the Security Documents, any environmental indemnity agreement, and all other agreements, documents, and instruments evidencing, securing, or otherwise relating to the Loan, are sometimes referred to individually and collectively as the "Loan Documents."

F.    An Unconditional and Continuing Guaranty and Indemnity Agreement of even date with the Loan Agreement, guaranteeing repayment of the Loan (the "Guarantee Agreement") was executed and delivered to Lender by Richard K. Ashby and Justin Ashby (severally and collectively, if more than one, "Guarantor"). Guarantor and Borrower also executed and delivered to Lender an Unsecured Environmental Indemnity Agreement of even date with the Loan Agreement (the "Indemnity Agreement").

G.    Borrower has requested that Lender modify the Loan and the Loan Documents to, among other things, (i) increase the amount of the L/C Loan and the Letter of Credit to $8,005,000.00, (ii) provide for release on a temporary basis of funds held in the L/C Pledge Account, (iii) extend the time frame for satisfaction of certain conditions, and (iv) impose an "exit fee".

## AGREEMENT:

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

**SECTION 1. ACCURACY OF RECITALS.**

Borrower acknowledges the accuracy of the Recitals.

**SECTION 2. MODIFICATION OF LOAN DOCUMENTS; OTHER AGREEMENTS.**

2.1    Definition of Temecula CFD Bonds. Section 1.PP of the Loan Agreement is amended to read as follows:

PP.    Temecula CFD Bonds. Bonds to be issued by the Temecula CFD, including the 2006 Special Tax Bonds anticipated to be in the face amount of not less than $52,000,000.00 and any Parity Bonds (as defined in the Temecula CFD Bond Documents).

2.2    Increase of L/C Note: The face amount of the L/C Note is hereby increased from $6,000,000.00 to up to $8,005,000.00 and the L/C Note is hereby amended, restated and replaced, all in accordance with the terms and provisions of that Replacement Deed of Trust Note (letter of credit) executed and delivered simultaneously with the execution of this Agreement ("Replacement L/C Note"). Hereinafter, each reference to the L/C Note herein and in the Loan Documents shall be a reference to the Replacement L/C Note.

2.3  **Limitation on Advances.** Section 2.E of the Loan Agreement is amended to add the following at the end of the Section:

"As of February 14, 2006, the principal amount of $59,820,225.19 has been advanced and is outstanding under the Land Loan. Further Advances under the Land Loan shall be limited to the following until the date the Temecula CFD Bonds shall have been formally authorized, issued, and sold and Lender shall have received and approved, on or before March 31, 2006, assurances acceptable to Lender, that the Temecula CFD was authorized to issue and sell the Temecula CFD Bonds and enter into the Acquisition Agreement with Borrower, and that Borrower has properly assigned its rights to reimbursement from the Temecula CFD Bond proceeds to Lender.

Notwithstanding any other term of this Agreement:

(a) Subject to all other terms and conditions of the Loan Agreement, between the date hereof to and including February 28, 2006, Advances in the aggregate amount of up to $5,000,000.00 shall be made for installation of the Improvements, pursuant to "Development Costs" line items set forth on Exhibit B to the Loan Agreement, of which $3,000,000.00 is currently held in the L/C Pledge Account and shall be released for such purposes by Lender as of the date hereof, and the balance, up to $2,000,000.00, shall be advanced from the Land Loan; and

(b) If, on or before February 28, 2006, the Temecula CFD Bonds shall have been formally authorized by resolution of the Temecula CFD in form and substance acceptable to Lender, further Advances in the aggregate amount of up to $5,000,000.00 (in addition to the advances described in clause (a) above) for installation of the Improvements, pursuant to the "Development Costs" line items set forth on Exhibit B to the Loan Agreement, which amounts are exclusive of the amounts to be disbursed from the Land Loan Debt Service Reserve to pay interest accrued under the B Land First Deed of Trust Loan Documents.

(c) An Event of Default shall occur if the Temecula CFD Bonds shall have not been formally authorized, issued, and sold on or before March 31, 2006, and/or if Lender shall have not received and approved, on or before March 31, 2006, assurances acceptable to Lender that the Temecula CFD was authorized to issue and sell the Temecula CFD Bonds and enter into the Acquisition Agreement with Borrower.

(d) Notwithstanding the clauses preceding, in the event the Temecula CFD issues Temecula CFD Bonds prior to March 31, 2006 but in an amount less than $52,000,000.00, Borrower may provide additional cash collateral or other collateral acceptable to Lender in its sole discretion to be pledged to Lender in an amount equal to not less than $40,000,000.00 less the net payments Borrower has demonstrated to Lender's satisfaction, Borrower is or will be (on completion of the Facilities, as described in the Temecula CFD Bond Documents) entitled to receive pursuant to the Temecula CFD Bond Documents, which collateral shall be held by Lender until sufficient additional CFD Bonds are issued. In such event, the foregoing conditions shall be deemed to have been satisfied as to issuance of the Temecula CFD Bonds."

2.4  **Letter of Credit.**

Exhibit 7

(a) The maximum amount of the Letter of Credit shall not exceed Eight Million Five Thousand and No/One-hundredths Dollars ($8,005,000.00) and all references in the Loan Agreement to the "L/C Facility" shall mean a letter of credit as otherwise described in the Loan Agreement in the maximum amount of $8,005,000.00.

(b) Section 2.F.IV of the Loan Agreement is amended to read as follows:

"IV. <u>Collateral</u>. As additional security for the payment of all obligations of Borrower to Lender under the L/C Facility, Borrower must deposit with, and pledge to, Lender $4,000,000.00 in additional Equity Funds (or, if the L/C Facility is less than $8,005,000.00, an amount equal to fifty percent (50%) of the L/C Facility) no later than the earlier of three (3) Business Days prior to issuance of a letter of credit under this Agreement, which shall be held by Lender in an interest bearing account at Lender (the "L/C Pledge Account"). Borrower shall pledge and assign the L/C Pledge Account, and all deposits in and to the L/C Pledge Account, to Lender, and interest earned on such deposits, in a written assignment that is satisfactory to Lender in form and content, in the sole and absolute discretion of Lender. If and when the City of Temecula, California shall have returned any letter of credit issued to the City of Temecula pursuant to the L/C Facility, to the issuer or confirmer (if any) of such letter of credit, without having drawn on such letter of credit, and released such issuer and confirmer (if any) from all liability under such letter of credit, and if the Loan is not then in default, Lender will then will turn over up to $4,000,000.00 of the balance of the L/C Pledge Account to Borrower (or such lesser amount as is originally deposited therein by Borrower) plus interest actually earned thereon, with Lender applying any remaining balance of the L/C Pledge Account to the outstanding balance of the Loan, as Lender deems appropriate.

In furtherance and extension, and not in limitation, of the specific provisions set forth above, the Borrower agrees that all obligations of the Borrower under, or with respect to, each letter of credit and/or this Agreement may be secured, from time to time, by one or more deposit accounts maintained by the Borrower with the Lender for such purpose including the L/C Pledge Account, and in connection therewith, the Borrower hereby pledges, assigns, grants a continuing security interest in, and lien upon, and transfers to the Lender, all right, title, and interest of the Borrower in and to such deposit account(s) and all substitutions for, replacements of, and additions to, said deposit account(s), together with all earnings thereon and the proceeds thereof (collectively referred to as the "Pledged Assets"). At any time and from time to time after any non-performance of any term, provision, condition, or agreement contained in this Agreement, the Lender is granted full power, in addition to all other rights and/or remedies that the Lender may have, to apply the Pledged Assets to Borrower's reimbursement obligations to Lender under the Loan Documents, in such order as the Lender, in its sole discretion, deems desirable, all without notice, presentment, demand, or dishonor, all of which are hereby expressly waived, and without regard to any other security, right or remedy to which the Lender may be entitled."

(c) The first reference in Section 11(b) of the L/C Pledge Agreement to $3,000,000.00 is amended to read "$4,005,000.00", and the second reference in Section 11(b) of the L/C Pledge Agreement is amended to read "up to $4,000,000.00, provided that if the L/C Facility is less than $8,005,000.00, such amounts shall be reduced proportionately."

2.5  Completion Date.  Borrower has advised Lender that KB and Borrower have provided for an amendment of the Option Agreement to extend the Completion Date from September 30, 2006 to January 30, 2007. The references in Section 3.A(b) and 20.W of the Loan Agreement to September 30, 2006 is hereby amended to read January 30, 2007.

2.6  Temecula CFD Bonds.  Section 18.X of the Loan Agreement is hereby amended to read as follows:

> "X.  Temecula CFD Bonds.  Borrower has advised Lender that the Temecula CFD is expected to issue the Temecula CFD Bonds in the estimated aggregate amount of $51,900,000.00 for the payment of the mandated facilities improvements to the Roripaugh Ranch Master Plan, with the issuance date expected by Borrower to be no later than March 31, 2006.
>
> I.  On or before February 28, 2006, issuance of the Temecula CFD Bonds shall have been authorized by resolution duly adopted by the Temecula CFD, a certified copy of which shall be delivered to Lender by Borrower as soon as it is available.
>
> II.  Prior to or concurrently with the issuance by the Temecula CFD of the Temecula CFD Bonds, pursuant to the Temecula CFD Bonds, and no later than March 31, 2006, Borrower shall (a) cause the CFD Assignment to be executed and delivered to Lender, (b) cause irrevocable instructions to be delivered to the Fiscal Agent and the Authority pursuant to the Temecula CFD Bond Documents instructing the Fiscal Agent and the Authority to pay to Lender amounts otherwise payable to Borrower, and (c) cause to be delivered to Lender a written legal opinion of counsel for Borrower in form and content satisfactory to Lender in the sole and absolute discretion of Lender, opining or evidencing to Lender, without limitation:
>
> (i)  That the Acquisition Agreement has been validly entered into and is enforceable according to its terms; and
>
> (ii)  That Lender may enforce the Temecula CFD Assignment against Borrower.
>
> Each written legal opinion required by this Section 18.X. must be satisfactory to Lender in form and content, in the sole and absolute discretion of Lender. Any attorney providing such a written opinion to Lender, shall also provide to Lender, written evidence, satisfactory to Lender, that such attorney (as a member of such firm) and his or her firm are protected by malpractice or professional liability

Exhibit 7

insurance, which must cover such legal opinion for an amount equal to, or greater than, $10,000,000.00, per occurrence.

III. Prior to or concurrently with issuance of the Temecula CFD Bonds, Borrower shall provide reasonable assurances to Lender that the Temecula CFD formation and the Temecula CFD Bonds documentation comply with all applicable law; and that the Temecula CFD will provide for the establishment of a sufficient reserve to pay interest payments on the Temecula CFD Bonds, if real estate tax revenues from the Temecula CFD are less than the real estate tax revenues projected by the Temecula CFD, as evidenced by a receipt issued by the Fiscal Agent for the Temecula CFD Bonds showing deposit of funds to the reserve fund for the Temecula CFD Bonds of not less than the least of ten percent (10%) the aggregate amount of bonds, the maximum annual debt service on the Temecula CFD Bonds, or other customary amount, and deposit of funds to the improvement fund for the Temecula CFD Bonds of not less than $40,000,000.00 net of any amounts payable from the improvement fund to third parties.

IV. Following such issuance and sale of the Temecula CFD Bonds, Borrower shall receive in reimbursement not less than the following amounts in reimbursement from the Temecula CFD by the following dates (such reimbursement amounts having then been applied to amounts due under the Loan pursuant to the Temecula CFD Assignment) provided that such Benchmark Dates shall be advanced one day for each day an extension is provided by the Temecula CFD for performance by Borrower of the obligations for which it receives reimbursement under the Temecula CFD Bonds due to the occurrence of a force majeure event) and provided further that the amounts below are not intended to be limitations on the maximum amount paid to Lender from such reimbursements, it being understood that during the term hereof, all such reimbursements under the Temecula CFD Bonds, including the Parity Bonds, are payable to Lender:

| Benchmark Date | Aggregate Principal Payment Requirement |
| --- | --- |
| 4/15/06 | $4,000,000 |
| 6/30/06 | $10,000,000 |
| 12/31/06 | $25,000,000 |
| 6/30/07 | $40,000,000" |

2.7  Conforming Amendments. Sections 20.R, 20.AA, and 20.BB of the Loan Agreement are amended to conform to the dates described in Section 2.6 above.

2.8  Exit Fee. As a condition to the final release of the lien of the Deed of Trust and in addition to all other amounts required to be paid pursuant to the Loan Agreement and the other Loan Documents, Borrower shall pay to Lender an exit fee of $265,000.00.

501127.7
17810-977

6

Exhibit 7

2.9 Letter of Credit Form. The letter of credit attached as Exhibit A to the Modification replaces the form attached to Exhibit C to the Loan Agreement.

2.10 Increase to Letter of Credit Facility; Terms. Each reference to the amount of the L/C Loan, the L/C Note, and the maximum amount of the Letter of Credit as $6,000,000.00 in any of the Loan Documents is hereby amended to be a reference to the amount of not more than $8,005,000.00. Each reference in any of the Loan Documents to the aggregate amount of the Loan as $112,500,000.00 is hereby amended to be a reference to the amount of not more than $114,505,000.00. Each reference in the Loan Documents to any of the Loan Documents is hereby amended to be a reference to such document as modified herein or replaced in accordance with the terms hereof or with the documents and instruments executed in connection herewith.

2.11 Compliance with Covenants. Each of the Loan Documents is modified to provide that it shall be a default or an event of default thereunder if Borrower shall fail to comply with any of the covenants of Borrower herein or if any representation or warranty by Borrower herein or by Guarantor in any related Consent and Agreement of Guarantor(s) is materially incomplete, incorrect, or misleading as of the date hereof.

2.12 Final Map. Sections 18.L and 20.Q of the Loan Agreement providing for recordation of the Final Map in Riverside County, California within 180 days of the date of the Loan Agreement are amended by replacing the references to "180 days" with "240 days".

### SECTION 3. **RATIFICATION OF LOAN DOCUMENTS AND COLLATERAL**.

The Loan Documents are ratified and affirmed by Borrower and shall remain in full force and effect as modified herein. Any property or rights to or interests in property granted as security in the Loan Documents shall remain as security for the Loan and the obligations of Borrower in the Loan Documents.

### SECTION 4. **BORROWER REPRESENTATIONS AND WARRANTIES**.

Borrower represents and warrants to Lender:

4.1 No default or event of default under any of the Documents as modified herein, nor any event, that, with the giving of notice or the passage of time or both, would be a default or an event of default under the Loan Documents as modified herein has occurred and is continuing.

4.2 There has been no material adverse change in the financial condition of Borrower or any other person whose financial statement has been delivered to Lender in connection with the Loan from the most recent financial statement received by Lender.

4.3 Each and all representations and warranties of Borrower in the Loan Documents are accurate on the date hereof.

4.4 Borrower has no claims, counterclaims, defenses, or set-offs with respect to the Loan or the Loan Documents as modified herein.

Exhibit 7

4.5     The Loan Documents as modified herein are the legal, valid, and binding obligation of Borrower, enforceable against Borrower in accordance with their terms.

4.6     Borrower is validly existing under the laws of the State of its formation or organization and has the requisite power and authority to execute and deliver this Agreement and to perform the Loan Documents as modified herein. The execution and delivery of this Agreement and the performance of the Loan Documents as modified herein have been duly authorized by all requisite action by or on behalf of Borrower. This Agreement has been duly executed and delivered on behalf of Borrower.

### SECTION 5. BORROWER COVENANTS.

Borrower covenants with Lender:

5.1     Borrower shall execute, deliver, and provide to Lender such additional agreements, documents, and instruments as reasonably required by Lender to effectuate the intent of this Agreement.

5.2     Borrower fully, finally, and absolutely and forever releases and discharges Lender and its present and former directors, shareholders, officers, employees, agents, representatives, successors and assigns, and their separate and respective heirs, personal representatives, successors and assigns, from any and all actions, causes of action, claims, debts, damages, demands, liabilities, obligations, and suits, of whatever kind or nature, in law or equity of Borrower, whether now known or unknown to Borrower, and whether contingent or matured, (i) in respect of the Loan, the Loan Documents, or the actions or omissions of Lender in respect of the Loan or the Loan Documents and (ii) arising from events occurring prior to the date of this Agreement.

### SECTION 6. CONDITIONS PRECEDENT.

The agreements of Lender and the modifications contained herein shall not be binding upon Lender until Lender has executed and delivered this Agreement and Lender has received, at Borrower's expense, all of the following, all of which shall be in form and content satisfactory to Lender and shall be subject to approval by Lender:

6.1     An original of this Agreement fully executed by Borrower and Guarantor;

6.2     An original Modification of Deed of Trust and Assignment of Rents (Land Loan and L/C Loan) executed by Borrower, USA, GRC and KB, together with such UCC Financing Statements as Lender may require;

6.3     An original Replacement L/C Note fully executed by Borrower;

6.4     If not sooner executed and delivered to Lender, the Fontana Tax Increment Assignment and related documents in compliance with Section 18.W of the Loan Agreement;

6.5     If required by Lender, original Certificates of No Material Adverse Change fully executed by Borrower, Guarantor and other affiliated persons;

6.6     If Borrower or Guarantor is a corporation, limited liability company, partnership or trust, such resolutions or authorizations and such other documents as Lender may require relating to the existence and good standing of that corporation, limited liability company, partnership or trust, and the authority of any person executing this Agreement or other documents on behalf of that corporation, limited liability company, partnership or trust;

6.7     A legal opinion of counsel for Borrower and Guarantor in form and substance reasonably satisfactory to Lender;

6.8     A commitment from the title insurance company that issued the lender's ALTA extended coverage title insurance policy in connection with the Loan (the "Title Policy") to issue an endorsement to the Title Policy or a replacement policy, with all endorsements included as part of the Title Policy, in form satisfactory to Lender, that: (i) increases the amount of the Title Policy to $114,505,000.00; (ii) defines the Deed of Trust as described in the Title Policy as modified by this Agreement and by the Modification of Deed of Trust and Assignment of Rents; (iii) changes the "Date of Policy" to the date of the recording of the Modification of Deed of Trust and Assignment of Rents; and (iv) insures that the Deed of Trust, as modified hereby and by the Modification of Deed of Trust and Assignment of Rents continues to be a first lien upon the real property described therein, as security for the Loan, as modified herein, subject only to those exceptions contained in the Title Policy and to such additional exceptions as Lender may specifically approve in writing;

6.9     Payment of all the internal and external costs and expenses incurred by Lender in connection with this Agreement (including, without limitation, inside and outside attorneys, appraisal, appraisal review, processing, title, filing, and recording costs, expenses, and fees);

6.10    Such other documents and instruments as Lender may reasonably require in connection with the transaction contemplated in this Agreement.

## SECTION 7. **INTEGRATION, ENTIRE AGREEMENT, CHANGE, DISCHARGE, TERMINATION, OR WAIVER.**

The Loan Documents as modified herein contain the complete understanding and agreement of Borrower and Lender in respect of the Loan and supersede all prior representations, warranties, agreements, arrangements, understandings, and negotiations. No provision of the Loan Documents as modified herein may be changed, discharged, supplemented, terminated, or waived except in a writing signed by the parties thereto.

## SECTION 8. **BINDING EFFECT.**

The Loan Documents as modified herein shall be binding upon and shall inure to the benefit of Borrower and Lender and their successors and assigns and the executors, legal administrators, personal representatives, heirs, devisees, and beneficiaries of Borrower, provided, however, Borrower may not assign any of its right or delegate any of its obligation under the Loan Documents and any purported assignment or delegation shall be void.

## SECTION 9. CHOICE OF LAW.

This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to conflicts of law principles.

## SECTION 10. COUNTERPART EXECUTION.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document. Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one document.

{signatures on following page}

DATED as of the date first above stated.

        ASHBY USA, LLC,
        a California limited liability company

        By:    Ashby Development Company, Inc.,
                a California corporation,
                Its Managing Member

                By: _____
                      Justin K. Ashby, President

                              **BORROWER**

OHIO SAVINGS BANK, a federal savings bank

By:_____
Name:_____
Title:_____

                              **LENDER**

501127.7
17810-977

11

Exhibit 7

DATED as of the date first above stated.

        ASHBY USA, LLC,
        a California limited liability company

        By:   Ashby Development Company, Inc.,
               a California corporation,
               Its Managing Member

               By:_____
                    Justin K. Ashby, President

                               **BORROWER**

OHIO SAVINGS BANK, a federal savings bank

By: *Victor P Bossette*
Name: *Victor P Bossette*
Title: *Vice President*

                               **LENDER**