# EXHIBIT D

## SETTLEMENT AGREEMENT, MUTUAL RELEASE, AND COVENANTS

This SETTLEMENT AGREEMENT, MUTUAL RELEASE, AND COVENANTS (this **"Agreement"**) is made and entered into by, on the one hand, USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC (**"DTDF"** or **"Plaintiff"**), and, on the other hand, STANLEY E. FULTON (**"Defendant"**). Plaintiff and Defendant collectively shall be referred to as the **"Parties."**

### I. Recitals

A.      On April 13, 2006 (the "DTDF **Petition Date**"), USA Commercial Mortgage Company (**"USACM"**), USA Securities, LLC, USA Commercial Realty Advisors, LLC, DTDF, and USA Capital First Trust Deed Fund, LLC (collectively, the **"USA Capital Debtors"**) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the **"Bankruptcy Court"**), which are jointly administered as Case No. BK-S-06-10725-LBR (the **"USA Capital Bankruptcy Case"**).

B.      The Bankruptcy Court confirmed the Third Amended Joint Chapter 11 Plan of Reorganization (the **"Joint Plan"**) pursuant to order entered on January 8, 2007 (the **"Confirmation Order"**). The Joint Plan became effective on March 12, 2007.

C.      Upon entry of the Confirmation Order, DTDF's Amended Operating Agreement became effective, and, as a result, Michael A. Tucker serves as the Manager for DTDF. The USACM Trust was created pursuant to the Joint Plan and the Confirmation Order, and Geoffrey L. Berman serves as the Trustee of the USACM Trust. The Joint Plan expressly retained DTDF's and USACM's causes of action for enforcement by DTDF and the USACM Trust, respectively, pursuant to 11 U.S.C. § 1123(b)(3)(B). Accordingly, DTDF and the USACM Trust now hold any and all potential claims and causes of action, whether arising pre-petition or post-petition, that DTDF and USACM, respectively, may have or may at any time have had against Defendant.

D.      On April 12, 2008, DTDF commenced adversary proceeding number 08-01132, entitled *USA Capital Diversified Trust Deed Fund, LLC v. Stanley E. Fulton,* in the Bankruptcy Court for the District of Nevada, which was subsequently removed to the United States District Court for the District of Nevada, Case No. 2:09-CV-1946-RLH-LRL, (the **"Fulton Adversary Action"**). The Fulton Adversary Action alleged claims for (i) fraudulent transfer Nevada Revised Statutes ("NRS") § 112.180 (the "Fraudulent Transfer Claim"); (ii) unjust enrichment; (iii) money had and received (the "Equitable Claims"); and (iv) Receipt of Stolen Property pursuant to NRS § 41.580 (the "Receipt of Stolen Property Claim"). In the aggregate, Plaintiff sought damages of $6,750,000.00, plus attorneys fees, pre and post judgment interest and costs.

E.      On December 11, 2009, the Bankruptcy Court made findings of fact and recommended entry of summary judgment in favor of Defendant on the Receipt of Stolen Property and for Defendant on his counter motion for partial summary judgment on the Fraudulent Transfer Claim (the "Findings & Recommendations"). A copy of the Findings & Recommendations is attached as Exhibit "A"

F.    On May 7, 2010, the District Court entered an order adopting the Findings & Recommendations and they became the law of the case. A copy of the order adopting the Findings & Recommendations is attached as Exhibit "B."

G.    Based on his investigation and analysis to date, Michael A. Tucker, solely in his capacity as Manager of DTDF (the "**DTDF Manager**"), has independently weighed the risks and potential benefits for his respective constituents in continuing to litigate the claims asserted in the Fulton Adversary Action, and has concluded that it is in the best interest of his constituents to compromise such claims on the terms set forth herein.

H.    The Parties have therefore agreed to settle all disputes and controversies between them on the terms set forth in this Agreement, without admitting any liability or wrongdoing and without resort to further litigation between them.

## II. Representations And Warranties

A.    The Plaintiff represents that it holds and has the exclusive power and authority to assert and to compromise any and all claims, demands, damages, liabilities, actions, causes of action, or suits at law, or in equity of whatever kind, whether state or federal, arising pre-petition or post-petition, known or unknown ("**Claims**"), that the Plaintiff ever had, now has, or may at any future time have against the Defendant and his employees, staff, respective attorneys, accountants, representatives, consultants, adjustors, agents and insurers in their capacities as such (collectively, the "**Fulton Released Parties**"). The Claims described in this paragraph shall hereinafter be referred to as the "**USA Capital Released Claims**."

B.    The Parties acknowledge that the Plaintiff intends to release all Claims that it has or may have the power to assert to the full extent of the law. Plaintiff warrants and represents that it is unaware of any claim by USACM, USA Investment Partners, LLC ("USAIP"), Reno South Meadows, South Meadows Associates, or any other USA Capital Debtors affiliate or USAIP affiliate.

C.    The Plaintiff further represents that it has obtained all necessary consents or approvals to enter into this Agreement, aside from Bankruptcy Court approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

D.    The Defendant represents that he holds and has the exclusive power and authority to assert and to compromise any and all claims, demands, damages, liabilities, actions, causes of action, or suits at law, or in equity of whatever kind, if any, whether state or federal, arising pre-petition or post-petition, known or unknown ("**Claims**"), that the Defendant ever had, now has, or may at any future time have against the Plaintiff and all of its present and former principals, employees, staff, predecessors, and successors, and its respective attorneys, accountants, representatives, trustees, advisors, consultants, adjustors, agents and insurers in their capacities as such (collectively, the "**USA Capital Released Parties**"). The Claims described in this paragraph shall hereinafter be referred to as the "**Fulton Released Claims**." The Parties

acknowledge that the Defendant intends to release all Claims that he has the power to assert to the full extent of the law.

### III. Terms and Conditions

NOW, THEREFORE, in consideration for the representations, warranties, covenants, promises, and releases set forth herein, and in full settlement of USA Capital Released Claims and Fulton Released Claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, and insurers, and any other parties or persons claiming by, through, or under any of the Parties hereto, as follows:

1.  Defendant, to avoid further incurrence of fees, costs and loss of time required to further litigate this matter, unconditionally agrees to and shall pay to the Plaintiff the sum of Three Hundred Thousand Dollars ($300,000.00) (the **"Fulton Settlement Payment"**) in accordance with the terms and conditions contained herein.

2.  The Parties settle the Fulton Adversary Action based upon the specific understanding that: (a) Defendant had not engaged in any wrongful or tortuous conduct of any nature with respect or related to USA Capital Debtors; (b) Defendant was unaware of any wrongful or tortuous conduct of any nature with respect or related to the USA Capital Debtors; (c) Defendant did not and reasonably could not have known, in the exercise of reasonable diligence, that the money he received was going to be alleged to be stolen, embezzled or otherwise constituted misappropriated property of another entity not obligated under the Fulton-USAIP Loan; and (d) To the extent there was any wrongful or tortuous conduct, it was the result of the acts perpetrated by others aside from Defendant, without his knowledge.    By execution of this Agreement, Plaintiff specifically acknowledges, concedes and admits to the provisions of this paragraph.

3.  Plaintiff agrees to execute the attached correspondence, on Plaintiff counsel's letterhead, in the format attached hereto as Exhibit "C" and provide the same to the Defendant.

4.  Prior to the filing of a motion to approve this settlement under Federal Rule of Bankruptcy Procedure 9019, and within six (6) business days after the execution of this Agreement by all Parties, the Defendant shall wire transfer or provide a check in the amount of the Settlement Payment which shall be deposited into the trust account of his counsel, O'Reilly Law Group, LLC. O'Reilly Law Group, LLC shall promptly thereafter provide to Plaintiff's counsel, Diamond McCarthy LLP, written confirmation signed by an attorney of O'Reilly Law Group, LLC, certifying that O'Reilly Law Group, LLC: (a) has received the Settlement Payment; and (b) will maintain the Settlement Payment in O'Reilly Law Group, LLC's trust account pending the transfer of such funds pursuant to paragraph 5 of this Agreement or, in the event this settlement is not approved by the Court, return such funds to the Defendant who provided the same.

5.  Upon receipt of the written confirmation set forth in paragraph 4 of this Agreement, the Plaintiff shall file with the Bankruptcy Court a motion to approve the settlement substantially in the form attached hereto as Exhibit "D" (the **"Rule 9019 Motion"**).

Plaintiff shall seek appropriate relief including approval of the Rule 9019 Motion on Order Shortening Time so that a final order approving the Rule 9019 Motion shall be entered prior to August 27, 2010. The Order approving the Rule 9019 Motion shall be substantially in the form attached hereto as Exhibit "E."

6.    Within two (2) business days after receipt of the written notice of entry of a Final Order by the Bankruptcy Court granting the Rule 9019 Motion and approving this Agreement, O'Reilly Law Group, LLC shall cause the Settlement Payment to be wire transferred into the trust account of Diamond McCarthy LLP, pursuant to the following wire instructions:

        TO:    Amergy Bank of Texas
               Houston, TX 77002
               ABA #113011258

        FBO:   Diamond McCarthy LLP
               IOLTA Client Trust Account
               Two Houston Center
               909 Fannin, Suite 1500
               Houston, TX 77010
               Account #0000166073

7.    Immediately upon Diamond McCarthy LLP's irrevocable receipt of the Settlement Payment, the Plaintiff shall file with the District Court an order dismissing the Fulton Adversary Action with prejudice, in the format attached hereto as Exhibit "F" ("Dismissal Order").

8.    Upon the entry of a Final Order by the District Court granting the Dismissal Order, Diamond McCarthy LLP shall cause the Settlement Payment to be transferred to the Plaintiff.

9.    The term "Final Order" as used herein means (a) an order of the Bankruptcy Court as to which the time to appeal, or move for re-argument or rehearing, has expired and as to which no appeal, or other proceedings for re-argument or rehearing, shall then be pending; or (b) in the event that an appeal, re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court has been affirmed in material respects by the highest court to which such order may be appealed, and the time to take any further appeal, move for re-argument or rehearing shall have expired; provided, however, an order that is subject to appeal may be treated as a Final Order if no stay of the order has been obtained and the Parties consent to treating such order as a Final Order.

10.    Subject to and upon receipt of the Settlement Payment by the Plaintiff as set forth in this Agreement and the entry of a Final Order and Dismissal Order, the Plaintiff, on behalf of itself and the USA Capital Released Parties, fully releases and discharges the Fulton Released Parties from any and all liability with respect to the USA Capital Released Claims.

11.     Upon receipt of the Settlement Payment by the Plaintiff as set forth in this Agreement, the Defendant, on behalf of himself and the Fulton Released Parties, fully releases and discharges the USA Capital Released Parties from any and all liability with respect to the Fulton Released Claims.

12.     The Parties each agree and acknowledge that the USA Capital Released Claims and the Fulton Released Claims may include Claims that they do not know or suspect to exist, or Claims that they may not know or suspect to be assertable on behalf of other persons or entities who are not Parties (the "**Unknown Claims**"). Each of the Parties acknowledges that the Unknown Claims may be material and that such Claims would, if known to them, materially affect their respective decisions to enter into this Agreement. Each of the Parties hereby expressly waives any Unknown Claims in its favor and any right to invalidate this Agreement based on any Unknown Claims. Further, each of the Parties expressly waives any rights that it may have under any statute or common-law rule providing that unknown claims are not compromised or released.

13.     Upon the releases becoming effective as set forth in paragraphs 10, 11, and 12 of this Agreement, the Parties each agree not to commence any litigation or assert any claims against one another with respect to the Fulton Released Claims and the USA Capital Released Claims.

14.     The Parties agree to engage in a reasonable, good-faith effort to support this Agreement in all material ways, including in its application and enforcement against any and all persons or entities seeking to avoid or limit the applicability or scope of the Agreement in any manner. Without limiting the foregoing, the Parties each agree to take such actions and execute such documents (and, where applicable, so instruct their counsel) as may be reasonably necessary to implement the terms of this Agreement, including, without limitation, obtaining approval of this Agreement by the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9019.

15.     The Parties agree to engage in a reasonable, good-faith effort: (a) to seek entry of a Final Order granting the 9019 Motion and approving this Agreement on or before August 27, 2010; and (b) to support this Agreement in all material ways including in its application and enforcement against any and all persons seeking to prohibit approval of this Agreement, entry of a Final Order granting the 9019 Motion, or to avoid or limit the applicability or scope of this Agreement in any manner. The Parties will jointly seek from the District Court an extension of time to secure entry of a Final Order on the Rule 9019 Motion to meet the August 27, 2010 deadline. Should the Bankruptcy Court not approve the Rule 9019 Motion on Order Shortening Time to meet the August 27, 2010 deadline, the Parties will attempt to secure a reasonable extension of time from the District Court to accommodate any undue delays resulting from obtaining Bankruptcy Court approval of the Rule 9019 Motion.

16.     Any notice in connection with this Agreement to each of the Parties shall be given, by facsimile and by certified mail, to the following individuals:

For Plaintiff:

> Michael A. Tucker
> FTI CONSULTING, INC.
> One Renaissance Square
> Two North Central Avenue, Suite 1200
> Phoenix, Arizona 85004
> Telephone:    (602) 744-7100
> Facsimile:    (602) 744-7110

> Eric D. Madden
> DIAMOND McCARTHY LLP
> 1201 Elm Street, Suite 3400
> Dallas, Texas 75270
> Telephone:    (214) 389-5300
> Facsimile:    (214) 389-5399

For Defendant:

> John F. O'Reilly
> O'REILLY LAW GROUP, LLC
> 325 South Maryland Parkway
> Las Vegas, Nevada 89101
> Telephone:    (702) 382-2500
> Facsimile:    (702) 384-6266

17.    This Agreement shall be treated as jointly drafted, and will not be construed against any Party as drafter.  This Agreement provides no rights to any third party except to the extent expressly set forth herein.

18.    This Agreement is entered into as a good-faith compromise between the Parties for purposes of N.R.S. § 17.245 for the complete and final settlement of any and all claims, disputes and causes of action among them.  By this settlement, no Party admits liability to any other Party in any respect, or makes any admission as to factual or legal contentions relating to the matters settled herein.

19.    The Parties acknowledge that they have had the opportunity to be represented by counsel during negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect.  The Parties agree that (a) the terms and provisions of this Agreement are not to be construed more strictly against either of the Parties; and (b) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

20.    This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein.  No supplement, modification, amendment, waiver, or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound

thereby. No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement. THE PARTIES ALSO ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE USA CAPITAL RELEASED CLAIMS AND UNDERLYING DISPUTES AND STIPULATE THAT IN EXECUTING THIS AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION OR STATEMENT BY ANY OTHER PARTY, OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS, WITH REGARD TO (a) FACTS UNDERLYING THE LAWSUIT, (b) THE SUBJECT MATTER OR EFFECT OF THIS AGREEMENT, AND (c) ANY OTHER FACTS OR ISSUES WHICH MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS AGREEMENT, OTHER THAN AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

21.   The terms and provisions of this Agreement are subject to approval by the Bankruptcy Court. If the Bankruptcy Court does not approve this Agreement, this Agreement shall be a nullity, the Parties shall be returned to their respective litigation positions, and the rights of the Parties shall otherwise be unaffected by this Agreement.

22.   If any term or provision of this Agreement shall be determined to be unenforceable, invalid, or illegal in any respect, the unenforceability, invalidity, or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid, or illegal term or provision had never been contained herein. Notwithstanding the foregoing, the release provisions are material provisions of this Agreement and not subject to the terms of this paragraph.

23.   This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute one and the same Agreement. The signatories executing this Agreement represent and warrant that they are authorized to execute this Agreement on behalf of the Parties and entities for whom they sign. Signatures obtained by facsimile or email in PDF format or other electronic transmission shall be deemed to be original signatures.

24.   Each Party agrees to bear its own fees and costs with respect to any duties required of the Party under this Agreement; in any matter involving, referring, or relating to the interpretation and enforcement of this Agreement; and in connection with any disputes that may arise between the Parties relating to this Agreement.

25.   This Agreement is to be governed by the laws of the State of Nevada. The United States District Court for the District of Nevada shall retain jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement; and the Parties consent to the exclusive jurisdiction of the United States District Court of Nevada for these purposes.

26.   Each Party warrants, represents and agrees that it (a) has not assigned, subrogated, pledged or transferred to any person, firm, partnership, corporation or other ·entity whatsoever any of the claims, counterclaims, actions, demands or causes of action to be

released pursuant to the releases set forth in this Agreement; and (b) is fully authorized to enter into this Agreement without the consent of any third parties. Specifically, each person signing the Agreement represents and warrants that s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and is a binding obligation of the Party on whose behalf the person is signing.

27.    This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors and trustees.

◆ ◆ ◆

DATED: July 28, 2010

**USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC**

By: _Michael A. Tucker_

Michael A. Tucker, solely in his capacity as Manager of USA Capital Diversified Trust Deed Fund, LLC

DATED: 27 July 2010

**STANLEY E. FULTON**

By: _____

Stanley E. Fulton, individually

## VERIFICATION

SUBSCRIBED AND SWORN TO BEFORE ME by Michael A. Tucker, solely in his capacity as Manager of USA Capital Diversified on this _28_ day of _July_ _2010_.

_Sandra L Smith_

Notary Public

State of _Arizona_

My commission expires:

_11|15|11_

OFFICIAL SEAL
Sandra L. Smith
Notary Public-Arizona
Maricopa County
My Commission Expires 11/15/2011

♦♦♦

## VERIFICATION

SUBSCRIBED AND SWORN TO BEFORE ME by Stanley E. Fulton, individually on this _27th_ day of _July_ _2010_.

_Susan A. Delzer_

Notary Public

State of _NEVADA_

My commission expires:

_1-17-2013_

Susan A. Delzer
Notary Public
State of Nevada
My Commission Expires: 1-17-2013
Certificate No: 89-0339-1

# EXHIBIT A

**Entered on Docket
December 11, 2009**

_____
Hon. Linda B. Riegle
United States Bankruptcy Judge

**O'REILLY LAW GROUP, LLC**
John F. O'Reilly, Esq.
Nevada Bar No. 1761
Timothy R. O'Reilly, Esq.
Nevada Bar No. 8866
325 S. Maryland Parkway
Las Vegas, Nevada 89101
Telephone: (702) 382-2500
Facsimile: (702) 384-6266
E-Mail: tor@oreillylawgroup.com

**BIENERT, MILLER, WEITZEL & KATZMAN**
Steven J. Katzman, Esq.
California Bar No. 132755
Luis A. Feldstein, Esq.
California Bar No. 184824
115 Avenida Miramar
San Clemente, California  92672
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
E-Mail: skatzman@bmwklaw.com

Attorneys for Defendant
STANLEY E. FULTON

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>___Debtor.___ | CASE NO.:    BK-S-06-10725 LBR<br>Chapter 11 |
| In Re:<br>USA CAPITAL REALTY ADVISORS, LLC<br>___Debtor.___ | BK-S-06-10725 LBR<br>BK-S-06-10726 LBR<br>BK-S-06-10727 LBR |
| In Re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC<br>___Debtor.___ | BK-S-06-10728 LBR<br>BK-S-06-10729 LBR<br>Jointly Administered |
| In Re:<br>USA CAPITAL FIRST TRUST DEED FUND,<br>LLC<br>___Debtor.___ | **Adversary No. 08-01132** |
| In Re:<br>USA SECURITIES, LLC<br>___Debtor.___ | |

/ / /

/ / /

/ / /

/ / /

1

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

1    Affects:                            )   **FINDINGS OF FACT, CONCLUSIONS OF**

2    □ All Debtors                 )   **LAW AND RECOMMENDATIONS**
    □ USA Commercial Mortgage Company    )   **REGARDING (1) DEFENDANT'S MOTION**

3    □ USA Capital Realty Advisors, LLC     )   **FOR SUMMARY JUDGMENT; (2)**
    ☒ USA Capital Diversified Trust Deed Fund, LLC   )   **PLAINTIFF'S MOTION FOR PARTIAL**

4    □ USA Capital First Trust Deed Fund, LLC   )   **SUMMARY JUDGMENT; AND (3)**
    □ USA Securities               )   **DEFENDANT'S COUNTERMOTION FOR**

5    _____ )   **SUMMARY JUDGMENT**
    USA CAPITAL DIVERSIFIED TRUST DEED   )

6    FUND, LLC,                    )
                                 )

7         Plaintiffs,            )
                                 )

8    vs.                       )
                                 )

9    STANLEY E. FULTON,         )
                                 )

10        Defendant.         )
    _____ )

11

12       Defendant Stanley E. Fulton's ("Defendant" or "Fulton") Motion for Summary Judgment,

13 Plaintiff USA Capital Diversified Trust Deed Fund, LLC's ("Plaintiff" or "DTDF") Motion for

14 Partial Summary Judgment, and Defendant Stanley E. Fulton's Countermotion to Plaintiff's

15 Motion for Partial Summary Judgment, (collectively the "Motions") came on for hearing on

16 September 3, 2009 at 9:30 a.m. Steven Katzman, John O'Reilly and Timothy O'Reilly appeared

17 on behalf of Defendant and Eric Madden and Michael Yoder appeared on behalf of Plaintiff.

18       This Court, having considered the Motions along with the Oppositions, Replies,

19 Declarations, exhibits and supporting documents submitted in support thereof, and having heard

20 the arguments counsel made at the hearing on September 3, 2009, now therefore makes the

21 following findings of fact, conclusions of law and recommendations under Federal Rule of Civil

22 Procedure 52 and Federal Rule of Bankruptcy Procedure 7052.

23                                   **FINDINGS OF FACT**

24

25       1.      In February, 2001, Fulton was solicited by Joseph D. Milanowski to loan USA

26 Investment Partners ("USAIP") five million dollars. At this time, USACM, DTDF, and USAIP

27 were commonly known to be operating collectively under the name USA Capital. Furthermore,

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING C CORPORATIONS
325 South Maryland Parkway ● Las Vegas, Nevada 89101
Telephone (702) 382-2500 ● Facsimile (702) 384-6266

USAIP was represented as the wholly owned subsidiary of USACM and USACM served as the exclusive loan servicer and loan originator for DTDF.  USACM, DTDF and USAIP had overlapping management.  Fulton testified in his Declaration on file with this Court that USAIP was a holding company owned by Tom Hantges and Joe Milanowski. Given the amount of the loan, Fulton retained, Lionel Sawyer & Collins ("LS&C"), to represent him and to assist in negotiating, reviewing and properly documenting the loan.

2.    On or about February 15, 2001, the loan was executed and Mr. Fulton loaned USAIP five million dollars (the "Fulton-USAIP Loan").

3.    The maturity date of the Fulton-USAIP Loan was February 13, 2002.

4.    The Fulton-USAIP Loan was guaranteed by USA Commercial Mortgage ("USACM") doing business as USA Capital ("USA Capital") and the principals of USAIP and USACM, Joseph Milanowski and Thomas Hantges (the "USA Capital Principals"). At the time of the Fulton-USAIP Loan, USAIP was represented in the prospectus of Diversified Trust Deed Fund ("DTDF") as the wholly owned subsidiary of USACM.  The Fulton-USAIP Loan was further secured by a collateral assignment of a 6 million dollar promissory note from USACM to Reno South Meadows, LLC ("RSM").  According to the income tax returns filed by South Meadows Associates, LLC ("SMA") and K-1 forms issued to the owners, over the relevant time frame, RSM was the largest equity holder in SMA, owning a 33.3% interest.  RSM was designated on the tax returns as the tax matters partner, authorized to act on behalf of SMA.

5.    As a result of the Fulton-USAIP Loan, a Uniform Commercial Code Financing Statement Form 1 was filed listing USACM and USAIP  as debtors.

6.    The wire transfer of funds in the amount of five million dollars, from Fulton, took place on February 16, 2001.  USAIP was the entity that received the $5 million transfer of funds from Fulton.

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CC CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

7.      On February 20, 2001, three of the five million dollars from the Fulton-USAIP Loan were transferred by USAIP to USACM. DTDF did not receive any of the proceeds for the Fulton-USAIP Loan.

8.      On or about November 28, 2001, Fulton assigned his $500,000 interest in a USACM-originated loan to DTDF in exchange for a $500,000 check from DTDF.  On or about February 20, 2002 Fulton assigned his $500,000 interest in another USACM-originated loan to DTDF in exchange for another $500,000 check from DTDF.

9.      The Fulton-USAIP Loan matured on February 13, 2002 and therefore the entire principal amount of the Fulton-USAIP Loan became due and owing on the same date.  On or about February 20, 2002 Fulton participated in a meeting with Milanowski after contacting Milanowski about repayment of the Fulton-USAIP Loan.  Fulton testified that the following occurred at this meeting:

> [I]n that meeting I said, "I want the money, this $5 million you owe me," and Joe had said…something like, "Well, you'll work with us or you'll have to chase us."  I think those were Joe's words.  And I believe I responded, "Well, I'm not going to do either one of those.  I'm going to have my money, get my money, or I'll have your business license."

10.     Soon thereafter, Fulton again retained the assistance of LS&C to negotiate and secure payment.  Counsel for USA Capital negotiated with LS&C terms of repayment, which required USACM to make five payments of $1 million each on the following dates: (a) March 11, 2002; (b) March 15, 2002; (c) April 15, 2002; (d) May 15, 2002; and (e) June 15, 2002.  As a result, LS&C forwarded to counsel for USACM wire transfer instructions.

11.     On or about March 11, 2002, Milanowski directed a $1million wire transfer from South Meadows Apartments, LLC ("SMA") to Fulton's brokerage account as the first payment on the Fulton-USAIP Loan.  This transfer was reflected on Fulton's account statements as originating

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-0266

from "SOUTH MEA." All previous wire transfers from USACM had appeared on Fulton's account statement as coming from "USA COMMERCIAL M."

12. On or about March 15, 2002, Milanowski directed another $1 million wire transfer from SMA to Fulton's brokerage account as the second payment on the Fulton-USAIP Loan. This transfer also was reflected on Fulton's account statements as originating from "SOUTH MEA." Fulton testified that he understood that these "SOUTH MEA" transfers came from one of the entities within the "vast group of companies," not from USACM itself.

13. On or about June 15, 2002, Milanowski directed a $1 million wire transfer from USACM to Fulton's brokerage account as the fifth payment on the Fulton-USAIP Loan. This transfer was reflected on Fulton's account statements as originating from "USA COMMERCIAL M."

14. Fulton demanded that USACM pay late fees and default interest in connection with the Fulton-USAIP Loan. Specifically, on July 10, 2002, LS&C sent a letter to USACM demanding payment of more than $650,000 in late fees and default interest.

15. On or about August 16, 2002, Milanowski directed a $250,000 wire transfer from DTDF to Fulton's brokerage account to pay the 5% late fee incurred by USAIP in connection with the Fulton-USAIP Loan. This transfer was reflected on Fulton's account statements as originating from "USA CAPITA."

16. Unbeknownst to Fulton, DTDF paid back $2.25 million of the USAIP-Fulton Loan on April 15, 2002, May 15, 2002 and August 13, 2002 (collectively, the "DTDF Transfers"). Each of the wire transfers constituting the DTDF Transfers reflected on Fulton's statement indicated that the DTDF Transfers came from "USA CAPITA."

17. Fulton did not make any further investments with USACM or USAIP after obtaining repayment of the Fulton-USAIP Loan.

18.     The fact that the money was designed as having come from "USA Capita" is not sufficient to make a reasonable person know that it could have been stolen property because "USA Capita" could have been "USA Capital."

19.     Due to the relationship between SMA and RSM the fact that payments are designated as coming from "SOUTH MEA" on March 11, 2002 and March 15, 2002 is not sufficient to make a reasonable person know that the DTDF Transfers could have been stolen funds and not coming from appropriate parties. Further, given the relationship between RSM and SMA as referenced in ¶ 4 above, it was reasonable to conclude that the payments had come from a party authorized to make such payment under the Fulton-USAIP Loan.

20.     Fulton provided value to USAIP as defined under NRS 112.220(1) for the DTDF payments.

21.     The Value that Mr. Fulton provided under NRS 112.220(1) was "reasonably equivalent" as Mr. Fulton lent five million dollars and received five million dollars in return, consistent with the terms of the Fulton-USAIP Loan.

22.     The Fulton-USAIP Loan was a commercial transaction and USA Commercial Mortgage, when operating, was charging large sums for late fees on, amongst other things, loans. As a result, reasonably equivalent value was tendered for the $250,000 late fee received by Mr. Fulton on August 13, 2002.

23.     Sufficient facts are not present in the record to date that create a genuine issue of material fact or to permit a reasonable jury to find that Fulton did give any indirect benefit, constituting value, to DTDF under the synergy theory.

24.     Although Fulton was the initial transferee of the DTDF Transfers, there is nothing in the record for summary judgment to demonstrate that Fulton knew the DTDF Transfers came from DTDF.

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway•Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

Case 06-10725-gwz Doc 8155-4 Entered 02/24/10 09:47:04 Page 18 of 51

25.     There is no evidence establishing that Fulton had any form of actual knowledge that the DTDF Transfers could have been stolen property.

26.     Under the facts of the case, there are no circumstances by which a reasonable person could have known or caused a reasonable person to know that the DTDF Transfers could have constituted stolen property pursuant to NRS 41.580 as:

> a.     Consistent with general business practice, USA Capital conducted business by and through a number of entities who have related affiliates and subsidiaries.  As to certain USA Capital entities, Diversified Trust Deed Fund had a prospectus and USA Commercial Mortgage was regulated by the State of Nevada;

> b.     As evident by the people who invested in the Diversified Trust Deed Funds through USA Capital, hundreds of people trusted Joseph Milanowski and Thomas Hantges;

> c.     Mr. Fulton also trusted Mr. Milanowski as he was a financial advisor with whom he had conducted ten million dollars in transactions;

> d.     Mr. Fulton had an attorney from a reputable firm, LS&C, who reviewed the records associated with the Fulton-USAIP loan;

> e.     At no time, prior to the filing of the lawsuit, was Mr. Fulton told that any of the DTDF Transfers came from DTDF;

> f.     The funds Mr. Fulton received to pay back the principal of the Fulton-USAIP loan were not designated as having come from DTDF;

> g.     The fact that the DTDF Transfers were designated as "USA Capita" in Mr. Fulton's financial statements is not sufficient to make a reasonable person know that it could have been stolen property because "USA Capita" could have been USA Capital;

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING C CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266
Law Offices

h.    A reasonable person who receives money from a business entity isn't required to examine the check or the transfer to see what account it was drawn on;

i.    USA Capital's rebooking of the DTDF Transfers to the 1090 Loan several months after the last payment to Mr. Fulton was unbeknownst to Fulton;

j.    The Waiver of Indictment, Criminal Information, or Criminal Docket for Case 2:09-cr-00291-RLH-PAL-1 of Mr. Joseph Milanowski (Doc.112) is not sufficient to prove Mr. Fulton knew anything and is not binding against Mr. Fulton; and

k.    It is not sufficient to make a reasonable person know that property could be stolen by the fact one is paid after he has made a demand for payment. If it was sufficient, then anybody who received money in this economy could be sued under NRS 41.580 for receiving stolen property if it just so happened not to have come from the legal entity with whom the agreement was originated.  There is no reason to make that assumption.  For example, one could legitimately presume the person borrowed the money.

27.    Plaintiff has not and will not be able to prove by clear and convincing evidence, the minimal applicable burden of proof, that Fulton withheld property under circumstances that make it a violation of Subsection 1 of NRS 205.275.

28.    The findings herein have no impact on whether Fulton acted in good faith as required for a good faith transferee defense, including the defense provided under NRS 112.220(1).  NRS 41.580 has a different standard than NRS 112.220(1).

///

///

///

# CONCLUSIONS OF LAW

## A.     Applicable to All Pending Motions for Summary Judgment

1.     The findings of fact are incorporated into the conclusions of law to the fullest extent possible as if they were fully set forth herein.

2.     Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (made applicable in this proceeding by Fed. R. Bankr. P. 7056).

3.     In assessing whether the non-moving party has raised a genuine issue, its competent evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "the mere existence of a scintilla of evidence is insufficient to create a genuine issue of material fact." *Id.* at 252.

4.     When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

5.     Where a claim or defense is factually implausible, the opposing party must present "more persuasive evidence than would otherwise be necessary in order to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1988).

6.     At the summary judgment stage, facts are viewed in the light favorable to the nonmoving party "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not genuine issue for trial." *Id.*

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

**B.** **Conclusions Regarding Reasonably Equivalent Value**

1.       Plaintiff has alleged a fraudulent transfer claim pursuant to NRS 112.180(1)(a), which sets forth that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay or defraud any creditor of the debtor.   Plaintiff has not alleged or claimed for avoidance of a constructively fraudulent transfer including those pursuant to NRS 112.180(1)(b) and NRS 112.190(1) .

2.       A constructively fraudulent transfer claim under NRS 112.180(1)(b) requires that the value be provided to the debtor. Specifically, NRS 112.180(1)(b) provides as follows: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation . . . "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation . . . ." NRS 112.180(1)(b) (emphasis added).

3.       Similarly, a constructively fraudulent transfer claim under NRS 112.190(1) requires that the value be provided to the debtor. NRS 112.190(1) provides as follows: "A transfer made or obligation incurred by the debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." NRS 112.190(1) (emphasis added).

4.       A defense to a claim under NRS 112.180(1)(a) is available pursuant to NRS 112.220(1), which provides: **"**A transfer or obligation is not voidable under paragraph (a) of

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266
Law Offices

subsection 1 of NRS 112.180 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

5.     NRS 112.170(1) defines Value being given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

6.     The plain language of NRS 112.220(1) and NRS 112.170(1) shows value to the debtor is not a prerequisite to the good-faith defense of §112.220(1).  In other words, the statutes do not require that the value must be provided to the debtor when an actual fraudulent transfer is alleged pursuant to NRS 112.180(1)(A) and 11 USC §544.  In determining whether the value tendered was reasonably equivalent, the purpose of the payments must be examined.  In the instant matter, Fulton was paid in accordance with the terms of the Fulton-USAIP Loan.

7.     Cases such as *In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995) and *S.E.C. v. Resource Development Int'l, LLC*, 487 F.3d 295 (5th Cir. 2007) are factually distinguishable and apply to cases involving a constructively fraudulent transfer.

8.     DTDF did not receive any direct or indirect value under NRS 112.220(1) from Fulton or otherwise in exchange for the DTDF Transfer.  Nor did DTDF receive any direct or indirect benefit from Fulton in exchange for the DTDF Transfers.

C.     **Conclusions Regarding Receipt of Stolen Property**

1.     NRS 41.580 provides that if property has been taken from its owner by larceny, robbery, burglary, embezzlement, theft or any other offense that is a crime against property and another person buys, receives, possesses or withholds the property under circumstances that make such conduct a violation of subsection 1 of NRS 205.275, the owner of the property may bring a civil action against the person who bought, received, possessed or withheld the property and may

1    recover treble the amount of any damage the owner has suffered, together with his costs in the

2    action and a reasonable attorney's fee.

3        2.    In Nevada, civil cases must be proven by clear and convincing evidence on

4    allegations of fraud and imposition of punitive damages. At the very least, a clear and convincing

5    standard would apply to a civil claim under NRS 41.580.

6

7        3.    NRS 205.275(1) provides that a person commits an offense involving stolen

8    property if the person, for his own gain or to prevent the owner from again possessing his property,

9    buys, receives, possesses or withholds property: (a) knowing that it is stolen property; or (b) under

10   such circumstances as should have caused a reasonable person to know that it is stolen property.

11       4.    As to the reasonable person standard as set forth in NRS 205.275(1)(b), it is not

12   under circumstances that should have caused a reasonable person to believe it was stolen property.

13   The standard is what should have caused a reasonable person to know that it was stolen property.

14   *See* NRS 205.275(1)(b).

15

16       5.    In examining these statutes, we must look at the Nevada Supreme Court's holding in

17   *Wiechers v. Sheriff, Washoe County,* 543 P.2d 1347 (Nev. 1975). In *Wiechers,* the Nevada

18   Supreme Court reversed a lower court's determination that probable cause existed to conclude the

19   defendant violated the Receipt of Stolen Property Criminal Statute. In *Wiechers v. Sheriff, Washoe*

20   *County,* 543 P.2d 1347 (Nev. 1975), the Court found that there was insufficient evidence

21   supporting the determination of probable cause that the defendant knowingly acquired stolen

22   engines, despite the testimony of two witnesses who stated that they stole automobiles, removed

23   the engines and sold stolen engines to defendant. The Court held that the "record is barren of any

24   inference or suggestion that [defendant] was implicated in any manner in, or with, the . . . theft

25   ring; and, in fact, it affirmatively shows that he had no knowledge that the engines had been stolen.

26   . . . *Furthermore, [defendant] paid for the stolen engines in the ordinary course of business with*

27

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

*his 'regular' business checks. Id.*  Similarly, Fulton performed the Fulton-USAIP commercial loan in his ordinary course of business and did nothing to hide the transaction.

6.      This Court, after evaluating all facts set forth herein, concludes there are insufficient facts to establish Mr. Fulton knew or should have caused a reasonable person to know the DTDF Transfers could have been stolen property.

## **RECOMMENDATIONS**

1.      Defendant's Motion for Summary Judgment (DE #72) should be granted. Specifically, summary judgment should be granted in favor of Fulton on the NRS 41.580 claim.

2.      Defendant's Countermotion for Partial Summary Judgment (DE #92) should be granted.  Specifically, summary judgment should be granted in favor of Fulton on the issue of whether reasonably equivalent value was given under NRS 112.220(1).

3.      Plaintiff's Motion for Partial Summary Judgment (DE #80) should be granted in part and denied in part.  Specifically,  summary judgment should be granted in favor of DTDF on the issues of whether:  (a) the DTDF Transfers involved property belonging to DTDF; and (b) Fulton was the initial transferee of the DTDF Transfers under 11 USC 550(a)(1).  Summary Judgment for DTDF should be denied on the issue of whether reasonably equivalent value was given under NRS 112.220(1).

4.      Given the Court's recommendation to grant Defendant's Motion for Summary Judgment based upon the findings and conclusions above, it is not necessary for this Court to determine whether Plaintiff's claim under NRS 41.590 is barred by the applicable limitations period, the doctrine of *pari delicto* or is unconstitutional.  These issues are preserved, if necessary, for the district court.

/ / /

/ / /

O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING C CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266
Law Offices

1   DATED this _____ day of December 2009.

2

3

4                                                    _____
                                                     UNITED STATES BANKRUPTCY COURT JUDGE
5

6   PREPARED AND SUBMITTED:

7   **O'REILLY LAW GROUP, LLC**                      **BIENERT, MILLER, WEITZEL & KATZMAN**

8
    By: /s/  Timothy R. O'Reilly_____              By:  /s/ Steven J. Katzman
9        John F. O'Reilly, Esq.                           Steven J. Katzman, Esq
         Nevada Bar No. 1761                              California Bar No. 132755
10       Timothy R. O'Reilly, Esq.                        Luis Feldstein, Esq.
         Nevada Bar No. 8866                              California Bar No. 184824
11       325 South Maryland Parkway                       115 Avenida Miramar
         Las Vegas, Nevada 89101                          San Clemente, California 92672
12       Telephone: (702) 382-2500                        Telephone: (949) 369-3700
         Facsimile: (702) 384-6266                        Facsimile:  (949) 369-3701
         E-Mail:  tor@oreillylawgroup.com                 E-Mail: skatzman@bmwklaw.com
13
    Attorneys for Defendant STANLEY E. FULTON
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone: (702) 382-2500 •Facsimile (702) 384-6266

**CERTIFICATION PURSUANT TO LOCAL RULE 9021**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

\_\_\_\_\_ The court has waived the requirement of approval under LR 9021

\_\_\_\_\_ No parties appeared or filed written objections, and there is no trustee appointed in the case.

\_\_\_x\_\_ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]

Approved:  John F. O'Reilly, Esq.          /s/ John F. O'Reilly_____

Approved:  Timothy R. O'Reilly, Esq.      /s/ Timothy R. O'Reilly_____

Approved:  Steven J. Katzman, Esq.        /s/ Steven J. Katzman_____

Approved:: Michael J. Yoder, Esq.         /s/ Michael J. Yoder_____

Approved:  Eric D. Madden, Esq.           /s/ Eric D. Madden_____

DATED: December 10, 2009.                 /s/ Timothy R. O'Reilly_____

                                          /s/ Steven J. Katzman_____

                                          Attorneys for Defendant
                                          STANLEY E. FULTON

# EXHIBIT B

1

2

3

4

5  **UNITED STATES DISTRICT COURT**

6  **DISTRICT OF NEVADA**

7  * * *

8

| | |
|---|---|
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, | 2:09-CV-1946-RLH-LRL |
| Plaintiff(s), | Bankruptcy No. BK-S-06-10725-LBR<br>Adversary No. 08-01132-LBR |
| vs. | **O R D E R** |
| STANLEY E. FULTON, | |
| Defendant(s). | |

15       Before this Court is the Findings and Recommendations of United States Bankruptcy

16  Judge (DE #149, entered on December 11, 2009, in Adversary No. 08-01132-lbr), entered by the

17  Honorable Linda B. Riegle, regarding Defendant Fulton's Motion for Summary Judgment (DE #72,

18  Plaintiff USA Capital Diversified Trust Deed Fund, LLC's ("DTDF") Motion for Partial Summary

19  Judgment (DE #80), and Defendant Fulton's Countermotion for Partial Summary Judgment (DE

20  #92).

21       Objections (#15) were filed by DTDF to Judge Riegle's Findings and Recommenda-

22  tions pursuant to 28 U.S.C. §157(c)(1). Defendant Fulton filed a Response (#22), and DTDF filed a

23  Reply (#24) thereto, and the matter was submitted for consideration.

24       The Court has conducted a *de novo* review of the record in this case in accordance

25  with 28 U.S.C. §157(c)(1) and determines that the Findings and Recommendations of Bankruptcy

26  Judge Riegle should be accepted and adopted.

1

1    In contradiction to DTDF's claim that Judge Riegle considered the record in

2    piecemeal fashion, this Court finds that Judge Riegle considered the evidence presented as a whole.

3    It is DTDF which only wishes the Court to consider isolated facts which DTDF construes (or

4    misconstrues) in its favor.

5    IT IS THEREFORE ORDERED that Bankruptcy Judge Riegle's Findings and

6    Recommendations (DE#149) are ACCEPTED and ADOPTED, as follows:

7    1.  Defendant Fulton's Motion for Summary Judgment (DE #72) is granted, specifically

8    summary judgment is granted in favor of Fulton on the NRS 41.580 claim.

9    2.  Defendant Fulton's Countermotion for Partial Summary Judgment (DE #92) is granted,

10   specifically summary judgment is granted in favor of Fulton on the issue of whether reasonably

11   equivalent value was given under NRS 112.220(1).

12   3.  Plaintiff DTDF's Motion for Partial Summary Judgment (DE #80) is granted in part and

13   denied in part.  Specifically, summary judgment is granted in favor of DTDF on the issue of whether

14   DTDF Transfers involved property belonging to DTDF; and whether Fulton was the initial

15   transferee of the DTDF Transfers under 11 U.S.C. §550(a)(1).  Summary judgment for DTDF is

16   denied on the issue of whether reasonably equivalent value was given under NRS 112.220(1).

17   Dated: May 7, 2010.

18

19   _____

20   **Roger L. Hunt**
     **Chief United States District Judge**

21

22

23

24

25

26

2

# EXHIBIT C

To Whom It May Concern:

We are counsel for USA Capital Diversified Trust Deed Fund ("DTDF"), Plaintiff in *USA Capital Diversified Trust Deed Fund, LLC v. Stanley E. Fulton* ("Mr. Fulton"), filed in the Bankruptcy Court for the District of Nevada as adversary proceeding 08-1132, which was subsequently removed to the United States District Court for the District of Nevada, Case No. 2:09-CV-1946-RLH-LRL, (the "Fulton Adversary Action").  On April 12, 2008, we commenced the Fulton Adversary Action alleging claims for (i) fraudulent transfer Nevada Revised Statutes (NRS § 112.180); (ii) unjust enrichment;  (iii) money had and received; and (iv) receipt of stolen property pursuant to NRS § 41.580.  In the aggregate, Plaintiff sought damages of $6,750,000.00, plus attorneys fees and pre and post judgment interest and costs.  Mr. Fulton agreed to settle this matter solely to avoid the further incurrence of fees, costs and loss of time required to further litigate this matter.

After further investigation and analysis, we have concluded that: (i) any wrongful conduct was the result of the acts perpetrated by others aside from Mr. Fulton; (ii)  Mr. Fulton had not engaged in any wrongful or tortious conduct of any nature with respect to or related to the allegations set forth in the Fulton Adversary Action; (iii) Mr. Fulton was unaware of any wrongful or tortious conduct of any nature with respect  to the allegations set forth in the Fulton Adversary Action; and (iv) Mr. Fulton did not and reasonably could not have known, in the exercise of reasonable diligence, that the money he received was going to be alleged to be stolen, embezzled or otherwise constituted misappropriated property of another entity not obligated under the Fulton-USAIP Loan.  As set forth in the Settlement Agreement, DTDF has specifically acknowledged, conceded and admitted the conclusions set forth in this paragraph.

Based upon the evidence and witnesses to be presented at trial and the status of the Fulton Adversary Action as of the date of the execution of this correspondence, evidenced in the outcome of a motion for summary judgment in favor of Mr. Fulton, certain motions in limine ruled upon in favor of Mr. Fulton and  Judge Roger Hunt's comments at the hearing for leave to file a second motion for summary judgment, we have concluded that Mr. Fulton would have been much more likely to have prevailed at trial.

Very truly yours,


Eric D. Madden

# EXHIBIT D

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199

Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

Special Litigation Counsel for USACM Liquidating Trust and
USA Capital Diversified Trust Deed Fund, LLC

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Telephone (702) 949-8320
Facsimile  (702) 949-8321

Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

Counsel for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR<br>BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | Judge Linda B. Riegle |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**<br><br>Hearing Date:    OST pending<br>Hearing Time:   OST pending |

The USACM Liquidating Trust (the "USACM Trust") and USA Capital Diversified

Trust Deed Fund, LLC ("DTDF") file this Motion for Approval of Settlement Pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"), seeking entry of an order

approving the Settlement Agreement, Mutual Release, and Covenants between DTDF, on the

1

one hand, and Stanley E. Fulton ("Fulton"), on the other hand.  A proposed form of order is attached hereto as Exhibit "A."

This Motion is made pursuant to Federal Rule of Bankruptcy Procedure 9019 and is based on the points and authorities listed herein, the Declaration of Michael A. Tucker in Support of the Motion for Approval of Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Tucker Declaration") attached hereto as Exhibit "B," the Declaration of Geoffrey L. Berman in Support of the Motion for Approval of Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Berman Declaration") attached hereto as Exhibit "C," the pleadings, papers, and other records on file with the clerk of the Court, judicial notice of which is hereby respectfully requested, and any argument or evidence to be presented at the time of the hearing of the Motion.

## BACKGROUND FACTS

### A.    The Bankruptcy Case

On April 13, 2006 (the "Petition Date"), USA Commercial Mortgage Company ("USACM"), DTDF, and certain affiliated companies and subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").  The Debtors' chapter 11 cases are being jointly administered under Bankruptcy Case No. BK-S-06-10725-LBR (the "USA Capital Bankruptcy Case").  On January 8, 2007, the Bankruptcy Court confirmed the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Joint Plan"), and on March 12, 2007, the Joint Plan became effective and the Debtors emerged from bankruptcy.

The Joint Plan expressly retained USACM's causes of action for enforcement by the USACM Trust, pursuant to 11 U.S.C. § 1123(b)(3)(B).  The Joint Plan expressly retained DTDF's causes of action for enforcement by DTDF, pursuant to 11 U.S.C. § 1123(b)(3)(B). Accordingly, the USACM Trust and DTDF now hold any and all potential claims and causes of action, whether arising pre-petition or post-petition, that USACM and DTDF, respectively, may

2

have or may at any time have had against Fulton.  Geoffrey L. Berman serves as the trustee of the USACM Trust (the "USACM Trustee").  Michael A. Tucker serves as the Manager of DTDF (the "DTDF Manager").

**B.    The Pending Adversary Proceeding**

On April 12, 2008, DTDF commenced adversary proceeding number 08-01132, entitled *USA Capital Diversified Trust Deed Fund, LLC v. Stanley E. Fulton* (the "Fulton Litigation"), seeking to recover approximately $2.25 million in DTDF funds that were transferred to Fulton prior to the Petition Date (collectively, the "DTDF Transfers").[1]  In the Fulton Litigation, DTDF asserted various claims related to the DTDF Transfers, including:  (1) fraudulent transfer claims pursuant to 11 U.S.C. §§ 544 and 550, and sections 112.180 and 112.220 of the Nevada Revised Statutes (the "Fraudulent Transfer Claims"); (2) a claim for receipt of stolen property under section 41.580 of the Nevada Revised Statutes (the "Receipt of Stolen Property Claim"); and (3) claims for unjust enrichment and money had and received (the "Equitable Claims").[2]  DTDF sought treble damages, plus attorney's fees, pre- and post-judgment interest, and costs in the Fulton Litigation.  Fulton had denied and continues to deny DTDF's allegations in the Fulton Litigation.

On December 11, 2009, this Court recommended entry of summary judgment in Fulton's favor on the Receipt of Stolen Property Claim and entry of partial summary judgment in Fulton's favor on the Fraudulent Transfer Claims.[3]  Specifically, the Court found that:  (1) there were no circumstances by which a reasonable person could have known or caused a reasonable person to know that the DTDF Transfers could have constituted stolen property pursuant to section 41.580 of the Nevada Revised Statutes; and (2) Fulton provided value to USA Investment Partners,

---

[1] Berman Declaration ¶ 4; Tucker Declaration ¶ 4.

[2] Berman Declaration ¶ 4; Tucker Declaration ¶ 4.

[3] Berman Declaration ¶ 5; Tucker Declaration ¶ 5; *see also* Findings of Fact, Conclusions of Law and Recommendations Regarding (1) Defendant's Motion for Summary Judgment; (2) Plaintiff's Motion for Partial Summary Judgment; and (3) Defendant's Countermotion for Summary Judgment (DE #149).

LLC, as defined under section 112.220(1) of the Nevada Revised Statutes, in exchange for the DTDF Transfers.[4]

This Court subsequently transferred the Fulton Litigation to the United States District Court for the District of Nevada (the "District Court") for a final ruling on summary judgment and for a jury trial.[5]  The Fulton Litigation was docketed in the District Court under case no. 2:09-CV-1946-RLH-LRL.  On May 7, 2010, the District Court entered an order adopting this Court's findings, conclusions, and recommendations regarding summary judgment.[6]

On June 16, 2010, the District Court considered and ruled upon various motions in limine filed by DTDF and Fulton.  The District Court, for example, ruled that the following evidence was unduly prejudicial and could not be presented by DTDF at trial:  (1) losses sustained by DTDF and its investors; (2) the outstanding balance of the loan to 10-90, Inc. or the various transfers that were booked to that loan other than the DTDF Transfers themselves; (3) the criminal plea agreement and sentencing of Joseph Milanowski; and (4) Fulton's wealth and power in the community.[7]  The trial for Fulton Litigation was scheduled to begin in the District Court on June 28, 2010.[8]

C.    **The Proposed Settlement Agreement**

DTDF and Fulton (collectively, the "Parties"), through their counsel, participated in an informal settlement conference in early January 2009.[9]  The Parties subsequently participated in mediation on May 6, 2009, before the Honorable William Maupin, the former Chief Justice of

---

[4] Berman Declaration ¶ 5; Tucker Declaration ¶ 5; *see also* Proposed Findings of Fact, Conclusions of Law and Recommendations Regarding (1) Defendant's Motion for Summary Judgment; (2) Plaintiff's Motion for Partial Summary Judgment; and (3) Defendant's Countermotion for Summary Judgment (DE #149).

[5] Berman Declaration ¶ 6; Tucker Declaration ¶ 6.

[6] Berman Declaration ¶ 6; Tucker Declaration ¶ 6; *see also* Order (DE #26).

[7] Berman Declaration ¶ 7; Tucker Declaration ¶ 7; *see also* Reporter's Transcript of Calendar Call (DE # 63).

[8] Berman Declaration ¶ 7; Tucker Declaration ¶ 7.

[9] Berman Declaration ¶ 8; Tucker Declaration ¶ 8.

4

the Nevada Supreme Court.[10]   The Parties were unable to reach a settlement at mediation. However, following the District Court's rulings regarding summary judgment and motions in limine, the Parties participated in additional settlement discussions in late June 2010, which resulted in an agreement to compromise and settle the Fulton Litigation subject to approval by this Court under Federal Rule of Bankruptcy Procedure 9019.[11]

The Parties have memorialized this settlement by executing the Settlement Agreement, Mutual Release, and Covenants (the "Proposed Settlement Agreement").[12]   The material terms of the Proposed Settlement Agreement are summarized below:[13]

a. **Settlement Payment.**   Fulton will pay $300,000 (the "Settlement Payment") to the USACM Trust to settle all claims in the Fulton Litigation.   DTDF will share in the settlement as a beneficiary of the USACM Trust and as otherwise outlined in the agreement between the USACM Trust and DTDF filed with the Court on March 13, 2008.

b. **Bankruptcy Court Approval.** The Proposed Settlement Agreement is contingent upon this Court's approval of the settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure.

c. **Mutual Release.**   Upon the Court's approval of the settlement and the irrevocable receipt of the Settlement Payment by the USACM Trust, the Parties will exchange full mutual releases as to all claims that they ever had, now have, or may at any future time have against each other.

d. **Regulatory Issues.**   DTDF will provide Fulton with the letter attached as Exhibit "C" to the Proposed Settlement Agreement.   Fulton has informed DTDF that he intends to provide this letter to federal, state, and/or local regulatory agencies and commissions in order to address any and all concerns resulting from the allegations in the Fulton Litigation.   With this understanding, DTDF has agreed to provide such a letter.

---

[10] Berman Declaration ¶ 8; Tucker Declaration ¶ 8.

[11] Berman Declaration ¶ 8; Tucker Declaration ¶ 8.

[12] A true and correct copy of the Proposed Settlement Agreement is attached as Exhibit "D."

[13] Berman Declaration ¶ 9; Tucker Declaration ¶ 9.  The information above is only a summary of the terms of the Proposed Settlement Agreement, and is not intended to contradict, alter, amend, modify, supplement, waive or otherwise change any portion of the written settlement agreement, the terms of which shall control in the event of any conflicts.

5

e.    **No Admissions.**  Fulton does not admit that he is liable to DTDF for the monies sought in the litigation.  DTDF does not admit that the claims brought against Fulton were improper.[14]

## ARGUMENT

A.    **The Standard for Approval of Settlement Agreements**

Compromise and settlement have long been an inherent component of the bankruptcy process.[15]  Federal Rule of Bankruptcy Procedure 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[16]  In order to approve a compromise and settlement, the Court must find that it is fair and equitable to the estate and, "[i]n determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:  (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."[17]

The USACM Trust and DTDF are not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement.[18]  In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim."[19]  Thus, rather than

---

[14] *See* Berman Declaration ¶ 9(a)-(e); Tucker Declaration ¶ 9(a)-(e).

[15] *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1958) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

[16] FED. R. BANKR. P. 9019.

[17] *Arden v. Motel Partners (In re Arden*), 156 F.3d 729 (9th Cir. 1999); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir. 1986).

[18] *See In re Pacific Gas & Electric Co.,* 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).

[19] *In re Telesphere Comm's, Inc.,* 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted).

6

determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."[20]

**B.    The Proposed Settlement Agreement Is Fair and Equitable**

The USACM Trust and DTDF respectfully submit that the Proposed Settlement Agreement satisfies each of the relevant factors.[21]  ***First***, the USACM Trust and DTDF believe that the claims in the Fulton Litigation have merit and evidentiary support, but the USACM Trust and DTDF recognize that there is no guarantee or certainty that DTDF would be successful in prosecuting its claims.[22]  ***Second***, the District Court's recent rulings regarding summary judgment and motions in limine make it substantially more difficult for DTDF to prevail at trial, particularly in a jury trial.  ***Third***, even though the USACM Trust and DTDF believe those rulings could be successfully challenged on appeal, it is likely that such an appeal would simply result in a second trial before the District Court.  ***Fourth***, even if DTDF were to prevail in either the first or second trial, it would face a number of obstacles in collecting any judgment, including potential for a lengthy and expensive appeal of the judgment by Fulton.[23]  ***Fifth***, there is no doubt that a trial would be complex and costly.  This trial would involve approximately ten witnesses, last approximately five days, and require substantial pretrial and post-trial briefing, let alone the costs of future appeals.[24]  ***Sixth***, the Proposed Settlement Agreement is in the paramount interest of the creditors and other beneficiaries of the USACM Trust, including DTDF.[25]  The Settlement Payment is appropriate given the substantial costs,

---

[20] *In re Lion Capital Group,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

[21] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.

[22] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.

[23] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.

[24] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.

[25] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.  This factor requires the Court to consider whether the settlement "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time." *In re Marples*, 266 B.R. 202, 207 (Bankr. D. Idaho 2001).

delays, and risks of further litigation, particularly given the District Court's recent rulings regarding summary judgment and motions in limine.[26]

In sum, the Proposed Settlement Agreement provides a prompt and meaningful recovery to the USACM Trust and DTDF for the benefit of their respective constituencies, while avoiding the substantial costs, delays, and risks of the Fulton Litigation.[27]  The Settlement Payment falls within the reasonable range of likely outcomes of the pending litigation with Fulton based on the District Court's ruling to date, but eliminates the expense and uncertainty associated with trial and potential appeals.[28]  The Proposed Settlement Agreement is also the product of arms-length bargaining, without fraud or collusion.[29]  Accordingly, the USACM Trustee and the DTDF Manager have concluded in the exercise of their reasonable business judgment that the time and expense that would necessarily be attendant with continued pursuit of the Fulton Litigation outweigh the benefits to be gained by resolving these matters on the terms set forth in the Proposed Settlement Agreement.[30]

## CONCLUSION

For the foregoing reasons, the USACM Trust and DTDF respectfully request that the Court approve the Proposed Settlement Agreement and provide such other and further relief as the Court deems appropriate.

---

[26] Berman Declaration ¶ 10; Tucker Declaration ¶ 10.

[27] Berman Declaration ¶ 11; Tucker Declaration ¶ 11.

[28] Berman Declaration ¶ 11; Tucker Declaration ¶ 11.

[29] Berman Declaration ¶ 11; Tucker Declaration ¶ 11.

[30] Berman Declaration ¶ 11; Tucker Declaration ¶ 11.

DATED:  August 26, 2010.

**DIAMOND MCCARTHY LLP**

By:  _/s/ Eric D. Madden_
Allan B. Diamond, TX 05801800 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)
Michael J. Yoder TX 24056572 (pro hac vice)
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

*Special Litigation Counsel for*
*USACM Liquidating Trust and*
*USA Capital Diversified Trust Deed Fund, LLC*

**LEWIS AND ROCA LLP**

By:  _/s/ Rob Charles_
Rob Charles, NV 6593
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
(702) 949-8320 (telephone)
(702) 949-8321 (facsimile)

*Counsel for USACM Liquidating Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2010, I caused to be served a true and correct copy of the foregoing **MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** by electronic transmission to the USACM Post-Confirmation Service List Dated March 31, 2009, and by electronic transmission and United States Mail to counsel for Defendant, Tim O'Reilly, O'Reilly Law Group, LLC, 325 South Maryland Parkway, Las Vegas, NV  89101-5300, tor@oreillylawgroup.com, and Steven J. Katzman, Bienert, Miller & Katzman, P.C., 903 Calle Amancecer, San Clemente, California 92673, skatzman@bmkattorneys.com.


  _/s/  Catherine A. Burrow_
Catherine A. Burrow
Senior Paralegal
Diamond McCarthy LLP

# EXHIBIT E

1

2

3

4

5

6 **UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

7

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case Nos.:<br>BK-S-06-10725-LBR<br>BK-S-06-10726-LBR<br>BK-S-06-10727-LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>Debtor. | BK-S-06-10728-LBR<br>BK-S-06-10729-LBR |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br><br>Debtor. | JOINTLY ADMINISTERED<br>Chapter 11 Cases Under<br>Case No. BK-S-06-10725-LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br><br>Debtor. | Judge Linda B. Riegle |
| In re:<br>USA SECURITIES, LLC,<br><br>Debtor. | |
| Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Capital Realty Advisors, LLC<br>☒ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA Capital First Trust Deed Fund, LLC<br>☐ USA Securities, LLC | **ORDER GRANTING<br>MOTION FOR APPROVAL OF<br>SETTLEMENT PURSUANT TO<br>RULE 9019 OF THE FEDERAL<br>RULES OF BANKRUPTCY<br>PROCEDURE** |

8

9

10

11

12

13

14

15

16

17

18

19

20

21        Upon consideration of the Motion for Approval of Settlement Pursuant to Rule 9019 of

22 the Federal Rules of Bankruptcy Procedure (the "<u>Motion</u>"), filed by the USACM Liquidating

23 Trust (the "<u>USACM Trust</u>") and USA Capital Diversified Trust Deed Fund, LLC ("<u>DTDF</u>"),

24 seeking approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, of the

25                                                        1

26

Settlement Agreement, Mutual Release, and Covenants (the "Proposed Settlement Agreement") between the DTDF, on the one hand, and Stanley E. Fulton ("Fulton"), on the other hand; the other papers and pleadings filed in these jointly administered bankruptcy cases and their related proceedings; and the arguments of counsel; the Court hereby finds and concludes that:

1.    Notice of the Motion was properly served on all creditors and parties-in-interest in the above-referenced bankruptcy cases under applicable law and procedure, including the Federal Rules of Bankruptcy Procedure and the local rules.

2.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(a), and this Motion presents a "core proceeding" under 28 U.S.C. § 157(b).

3.    The terms of the Proposed Settlement Agreement were negotiated at arms-length and in good faith by DTDF, the USACM Trust, and Fulton.

4.    The terms of the Proposed Settlement Agreement:  (a) are fair and equitable to the USACM Trust and DTDF; (b) are in the best interests of the USACM Trust, DTDF, and their respective creditors and beneficiaries; and (c) meet the requirements for court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.    The Motion should be granted, the Proposed Settlement should be approved, and the following order should be entered.

ACCORDINGLY, IT IS HEREBY:

ORDERED that the Motion is granted; and it is further

ORDERED that the Proposed Settlement Agreement is authorized and approved pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and it is further

ORDERED that Geoffrey L. Berman and Michael A. Tucker, in their capacities as the respective representatives of the USACM Trust and DTDF, are authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary to consummate the Proposed Settlement Agreement and perform any and all obligations contemplated therein on behalf of the USACM Trust and DTDF; and it is further

2

ORDERED that this Order shall be subject to a fourteen-day appeal period under the recently amended Federal Rule of Bankruptcy Procedure 8002 (the "Appeal Period"); and it is further

ORDERED that this Court shall retain jurisdiction over issues related to this Motion only, as, pursuant to the terms of the Proposed Settlement Agreement, the district court will retain jurisdiction over its enforcement.


PREPARED AND SUBMITTED BY:

DIAMOND MCCARTHY LLP

By:    /s/  Eric D. Madden
Allan B. Diamond, TX 05801800 (pro hac vice)
Eric D. Madden, TX 24013079 (pro hac vice)
Michael J. Yoder, TX 24056572 (pro hac vice)
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

Special Litigation Counsel for
USACM Liquidating Trust and
USA Capital Diversified Trust Deed Fund, LLC

<u>CERTIFICATION PURSUANT TO LOCAL RULE 9021</u>

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

☐　　　　The Court has waived the requirement of approval under LR 9021

☐　　　　No parties appeared or filed written objections, and there is no trustee appointed in the case.

☒　　　　I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document.]

<u>Tim O'Reilly</u>　　　<u>Approved</u>

DATED:  August 26, 2010

　　　　　　　　　　　<u>　/s/  Eric D. Madden　</u>
　　　　　　　　　　　Eric D. Madden

　　　　　　　　　　　# # #

4

# EXHIBIT F

**DIAMOND MCCARTHY LLP**
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone (713) 333-5100
Facsimile (713) 333-5199
Allan B. Diamond, TX State Bar No. 05801800
Email: adiamond@diamondmccarthy.com
Eric D. Madden, TX State Bar No. 24013079
Email: emadden@diamondmccarthy.com

*Special Litigation Counsel for USA Capital
Diversified Trust Deed Fund, LLC*

**LEWIS AND ROCA LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
Telephone (702) 949-8320
Facsimile (702) 949-8321
Rob Charles, NV State Bar No. 006593
Email: rcharles@lrlaw.com

*Counsel for USACM Liquidating Trust*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**STANLEY E. FULTON,**<br><br>**Defendant.** | **CASE NO. 2:09-CV-01946-RLH-LRL**<br><br>**Bankruptcy No. BK-S-06-01725-LBR**<br>**Adversary No. 08-011320LBR**<br><br><br>**STIPULATION TO DISMISS CASE WITH PREJUDICE** |

Plaintiff USA Capital Diversified Trust Deed Fund, LLC ("DTDF") and Defendant Stanley E. Fulton ("Fulton") hereby file this Stipulation to Dismiss Case with Prejudice, and state as follows:

1.      DTDF and Fulton (collectively, the "Parties") have entered into an agreement to settle this case.

2.      Accordingly, pursuant to Federal Rule of Civil Procedure 41(a)(1), the Parties hereby stipulate to the dismissal of all claims in this case with prejudice with each party to bear its own fees, costs, and expenses.

Dated: _____, 2010.

**DIAMOND MCCARTHY LLP**                      **LEWIS AND ROCA LLP**

By:    _/s/ Eric D. Madden_                          By:    _/s/ Rob Charles_
Allan B. Diamond, TX 05801800 (pro hac vice)         Rob Charles, NV 6593
Eric D. Madden, TX 24013079 (pro hac vice)           3993 Howard Hughes Parkway, Suite 600
Michael J. Yoder, TX 24056572 (pro hac vice)         Las Vegas, Nevada 89169-5996
909 Fannin, Suite 1500                               (702) 949-8320 (telephone)
Houston, Texas 77010                                 (702) 949-8321 (facsimile)
(713) 333-5100 (telephone)
(713) 333-5199 (facsimile)

_Special Litigation Counsel for_                     _Counsel for USACM Liquidating Trust_
_USACM Liquidating Trust and USA Capital_
_Diversified Trust Deed Fund, LLC_


**O'REILLY LAW GROUP, LLC**                    **BIENERT, MILLER, WEITZEL &**
                                               **KATZMAN**

By:    _/s/ Timothy R. O'Reilly_                     By:    _/s/ Steven J. Katzman_
John F. O'Reilly, NV 1761                            Steven J. Katzman, CA 132755
Timothy R. O'Reilly, NV 8866                         903 Calle Amanecer, Suite 350
325 South Maryland Parkway                           San Clemente, California 92673
Las Vegas, Nevada 89101                              (949) 369-3700 (telephone)
E-Mail: tor@oreillylawgroup.com                      (949) 369-3701 (facsimile)
                                                      Email: skatzman@bmkattorneys.com

_Attorneys for Stanley E. Fulton_                    _Attorneys for Stanley E. Fulton_

2

1

2

## <u>ORDER</u>

**IT IS HEREBY ORDERED** that, pursuant to Federal Rule of Civil Procedure 41(a)(1), all claims in this case are hereby dismissed with prejudice with each party to bear its own fees, costs, and expenses.

_____
Honorable Roger L. Hunt
Chief Judge, United States District Court
for the District of Nevada

###

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26