## ANSWER TO THE USACM LIQUIDATING TRUST OBJECTION TO PROOFS OF CLAIM IN THE HUNTSVILLE LOAN AKA WEST HILLS PARK LOAN

### (BK-S-06-10725 LBR)
### (Status Checks and Scheduling Hearing September 23, 2010)

My name is Edward W. Homfeld and I am the Managing Member of Homfeld II, LLC, a Florida Limited Liability company that invested in the Huntsville loan in December, 2004. In addition Homfeld II, LLC and I (as an individual) participated as a Direct Lender several other loans arranged and serviced by USA Commercial Mortgage Company (USACM). I am also the individual who prepared and filed the Proof of Claim in December 2006. An Objection to Homfeld II, LLC's claim was filed by the USACM Liquidating Trust on August 17, 2010. This Answer and Objection is in response to the USACM Liquidating Trust's Objection to the claim.

### OBJECTION TIMING

This answer to the objection is filed and copies provided less than 14 days prior to the September 23rd hearing. The USACM Liquidating Trust sent their Objection by regular mail. I was out of the country since early in July and only received the Objection when I returned home on September 9th.

### OVERVIEW

The USACM Liquidating Trust (USA) and Geoffrey L. Berman state that this claim should not be valid because, making this investment was taking a "...known and obvious risk..."

The USACM Liquidating Trust, directed by Mr. Berman, mischaracterizes USA's operation, and apparently ignores the obvious fraud and deceit perpetrated by the debtor. In my case, this fraud and deceit began with Homfeld II, LLC's first investment through USACM and continued (including the Huntsville loan) through my last investment arranged by USACM. Since USACM perpetrated this fraud and deceit, USACM was responsible for the loss and this claim IS valid.

Further, by glossing over facts and disregarding information contained in the Loan Servicing Agreement (LSA), the USACM and Mr. Berman and the USACM Liquidating Trust seek to mischaracterize the Huntsville loan as a "legitimate, arms-length transaction".

### FACTS OF FRAUD, DECEIPT AND BREACH OF FUDICIARY DUTY BY USACM

HOMFELD II, LLC WAS NEVER PROVIDED WITH, OR SIGNED A LOAN SERVICING AGREEMENT. THE ABSENCE OF A LOAN SERVICING AGREEMENT MADE THE HUNTSVILLE LOAN FRAUDULENT THEREFORE THIS CLAIM IS VALID

RECEIVED AND FILED
SEP    2010
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

At no time, for the Huntsville loan or any loan was Homfeld II, LLC (or later I as an individual) presented with a Loan Servicing Agreement (LSA) as required by Nevada Law. Had I been provided with an LSA, I would not have invested in any loan sponsored by USACM because the provisions of the LSA were (obviously) not conducive to conflict resolution, called for loan servicing fees that were not disclosed in the literature promoting the investment and, the very nature of the fees collected as USACM's revenue indicated that USACM was primarily in the business of originating loans and would not be financially encouraged to service a loan in distress.

2. USACM DID NOT SUPPLY REQUIRED REPORTING. THE ABSENCE OF PROPER REPORTING BY DECEIVED INVESTORS IN THE HUNSTVILLE LOAN THEREFORE THIS CLAIM IS VALID

Both Nevada Law and the LSAs call for USACM to provide regular statements regarding loan collections – USACM failed to provide loan collection reports.

According the USACM Liquidating Trust Objection the Huntsville Loan "became due on April 7, 2005 with the principal amount outstanding of $10,475,000 and interest due in the amount of $507,118.05 through April 30, 2005." (5-24)

As a 12% loan, the loan was therefore in default beginning in February 2005 (five months interest default). I was never notified of the default.

Without accurate monthly collection reports (and absent an LSA showing there should have been reports), Homfeld II, LLC and I relied on the monthly interest reports indicating interest collections were up to date. I continued to make investments in USACM sponsored loans (including the Huntsville loan) based on this belief. But, as it turned out the interest reports were prepared fraudulently, indicating loans as current that were actually in default.

These fraudulent reports not only encouraged further investment through USACM, but if they had been accurate, would have indicated that all my investment positions should have been sold.

3. THE LACK OF EXTENSION REQUESTS PROVIDED INVESTORS WITH FALSE SENSE OF SECURITY. USACM FAILED IN ITS FIDUCIARY DUTY TO REQUEST EXTENSION APPROVAL FROM LENDERS THEREFORE THIS CLAIM IS VALID

Both Nevada Law and the LSAs required that USA could not "extend the maturity date, without the Lender's prior consent". The LSA goes on to say "provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent".

USACM never requested my consent for any loan extension, including the Huntsville loan.

2

Had I been asked for my approval on the Huntsville loan extension and seeing the actual number of extensions USACM granted would have indicated that <u>all</u> my investment positions should have been sold.

4. **USACM FAILED TO TAKE ACTION ON LOANS IN DEFAULT, THEREBY HARMING THE LENDERS. THIS BREACH OF FIDUCIARY DUTY VALIDATES THIS CLAIM**

In the conclusion of its Objection, the USACM Liquidating Trust states "USACM was under no duty to foreclose on the collateral securing the Huntsville Loan or take any other action" (Objection 7-25).

Apparently Mr. Berman missed the section of the LSA that states "In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender and all Lenders in the loan." (2 (c) (ii))

According the USACM Liquidating Trust Objection the Huntsville Loan "became due on April 7, 2005 with the principal amount outstanding of $10,475,000 and interest due in the amount of $507,118.05 through April 30, 2005." (Objection 5-24)

As a 12% loan, the loan was therefore in default beginning in February 2005 (five months interest default). USACM took no action on the default, rather papered over it with an extension, not approved by the Lenders.

Had USACM acted decisively and foreclosed on the Huntsville loan, it is likely that the Lenders would have not suffered the losses of the 2008 real estate value decline.

## CONCLUSION

It is extremely clear that all the USACM sponsored loans were anything but, as Mr. Berman states, "a legitimate, arms-length transaction"; to the contrary, they were illegitimate and self-serving. Mr. Berman states that the investment in the Huntsville loan was taking a "known and obvious risk". Again, Mr. Berman is incorrect. Owing to the actions of USACM investing in the Huntsville was an *unknown* risk; an *unknown* risk owing solely to the actions and inactions of USACM.

Mr. Milanowski, the principal of USACM, is currently incarcerated for criminal acts surrounding USACM. While Mr. Milanowski may have pleaded guilty to charges related to the Diversified Fund, USACM and Mr. Milanowski also defrauded the Direct Lenders.

USACM was operating a confidence game. The LSA, in part, states "...USA derives the bulk of its revenues from charging loan fees ("Points") to the Borrower", and later the

3

LSA states "In the event an extension of a loan is negotiated, USA shall be entitled to charge a fee therefore from the Borrower…". (LSA 4(5))

It is obvious that USACM was in the business of originating loans – any loan that they could get Direct Lenders to fund. Obtaining a Direct Lender base required that potential Lenders have confidence in USACM. If a potential lender carefully read the LSA, they might not invest – so USACM didn't supply many Lenders with the LSA. Lenders wouldn't continue to lend if USACM sponsored loans were not performing – so USACM produced fraudulent payment summaries and didn't produce collection reports at all. If USACM had to admit a loan was in default, the stigma would reduce lender demand for USACM sponsored loans – so USACM extended loans without Direct Lender approval to keep the loans out of default status. Extending a loan also allowed USACM to collect another fee (a loan extension fee). USACM extended the Huntsville loan (and others) even though the proper course would be to foreclose.

The Huntsville loan claim and all my other claims are valid. My investments were based on the fraudulent representations of USACM and by USACM depriving me of information to fully analyze the USACM operation. These actions began with the first investment and continued through the bankruptcy filing.

Rather than blatantly attempting to invalidate this claim and those of others similarly situated, the Trustee should attempt to understand what really went on at USACM. If he were to do so he would recognize the estate's responsibility deal with these claims and waste less of the Court's, Estate's and the Lender's time and money on this type of Objection.

The Trustee "does not know the ultimate disposition of the Huntsville loan, the collateral securing the loan or whether the Direct Lenders were repaid in whole or in part." (Declaration 3-10). It's hard to understand how the Trustee can do his job if he doesn't know this information. The ONLY way this claim would be invalid would be if the loan were fully repaid. And for Mr. Berman's information, the Huntsville loan has not been repaid, in whole or in part.

Respectfully submitted,

Edward W. Homfeld
Managing Member
Homfeld II, LLC

4