# QUARTERLY POST-CONFIRMATION REPORT OF
# GEOFFREY L. BERMAN, TRUSTEE
# USACM LIQUIDATING TRUST

### October 2010

**USACM Liquidating Trust**
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
**Development Specialists, Inc.**
333 South Grand Avenue, Suite 4070
Los Angeles, CA 90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

**Lewis and Roca LLP**
Rob Charles
John Hinderaker
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating
Trust

275359.1

# TABLE OF CONTENTS

**Page**

I.  TRUST ADMINISTRATION ................................................................................ 1

    A.  Website ........................................................................................................... 1

    B.  Trust Committee .............................................................................................. 1

    C.  Trust Staff and Counsel .................................................................................. 2

    D.  BMC Access to Court Docket .......................................................................... 2

    E.  Creditor Inquiries ........................................................................................... 3

II.  PLAN OF REORGANIZATION ISSUES ...................................................................... 3

III.  USACM ISSUES ............................................................................................... 3

IV.  INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST
POTENTIAL TARGET DEFENDANTS ........................................................................ 4

    A.  Diamond McCarthy ......................................................................................... 4

    B.  Pending Actions .............................................................................................. 4

V.  PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN
OTHER BANKRUPTCY PROCEEDINGS ....................................................................... 8

    A.  USAIP Chapter 11 Case ................................................................................ 8

        1.  Trustee ................................................................................................ 9

        2.  Proofs of Claim .................................................................................. 9

        3.  USAIP Related Issues ........................................................................ 10

    B.  Insiders – Thomas Hantges and Joseph Milanowski ........................................ 10

        1.  Hantges ............................................................................................... 10

        2.  Milanowski ......................................................................................... 12

    C.  HMA Sales, LLC ............................................................................................. 14

    D.  Salvatore Reale ............................................................................................... 14

**USACM Liquidating Trust**
**October 2010**

| | | |
|---|---|---|
| | E. | JMK Investments ......................................................................... 15 |
| | F. | Tree Moss Partners, LLC ............................................................. 16 |
| VI. | | COLLECTION OF TRUST ASSETS .................................................... 16 |
| | A. | Reserves ......................................................................................... 16 |
| | B. | Colt Loan ........................................................................................ 16 |
| | C. | Compass Escrows ........................................................................... 17 |
| | D. | Lee Suit .......................................................................................... 17 |
| | E. | BySynergy ....................................................................................... 17 |
| VII. | | PROFESSIONAL FEES .......................................................................... 17 |
| VIII. | | PROOFS OF CLAIM AND CLAIMS OBJECTIONS ............................ 18 |
| | A. | Overview ......................................................................................... 18 |
| | B. | Objections ....................................................................................... 18 |
| | C. | Interim Distribution Motion ........................................................... 21 |
| | D. | PBGC .............................................................................................. 21 |
| | E. | Contact Information ........................................................................ 21 |
| | F. | Objection Deadline ......................................................................... 22 |
| | G. | Compass v. LPG ............................................................................. 22 |
| | H. | Asset Resolution LLC ..................................................................... 23 |
| | I. | Disbursing Agent Agreement .......................................................... 25 |
| | J. | General Inquiries ............................................................................ 25 |
| IX. | | LOAN SERVICING ISSUES ................................................................... 25 |
| | A. | Placer Vineyards ............................................................................ 25 |
| | B. | Compass Trust Loan Servicing – Collection of Pre-Paid Interest ........ 27 |
| X. | | TRUST FINANCIAL STATEMENT ....................................................... 28 |

**QUARTERLY POST-CONFIRMATION REPORT OF
GEOFFREY L. BERMAN, TRUSTEE
USACM LIQUIDATING TRUST**

**October 2010**

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during July 1, 2010 through September 30, 2010 on:

- administration of the Trust;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- investigation, prosecution and settlement of causes of action against potential recovery targets including the cooperation of Joe Milanowski with the pending litigation matters and his sentencing on wire fraud charges;

- collection of other assets;

- claims analysis and resolution of disputed claims;

- preparation for a second creditor distribution; and

- Placer receivership issues.

These and other topics are briefly described in this report, along with comments on the financial statement of the Trust as of August 2010.[1]

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust continues to use the following website address: http://usacmcucc.bmcgroup.com.  We invite your suggestions for content on the Trust's website.

### B.    Trust Committee

The Trust functions with a Trust Committee created by the Debtors' Third Amended Plan of Reorganization as modified and the Trust Agreement.  The current members of the Trust Committee are Donald Walker, James Bonfiglio, Michael Tucker (in his capacity as Administrator of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF")),

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Committee.

275359.2

**USACM Liquidating Trust**
**October 2010**

Suzanne Nounna, and Janet Chubb and Ken Bonnet, a client representative from the Kehl family (jointly). The Trust Committee met by telephone conference call in a regularly scheduled meeting on August 3, 2010 to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues. Regular communication between the Trust and the Trust Committee members is maintained by telephone calls and e-mails.

### C.    Trust Staff and Counsel

The Trustee is employed by Development Specialists, Inc. ("DSI").[2] The Trustee uses DSI staff to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.

In addition, and as has previously been reported, the Trustee selected Rob Charles[3] and Susan M. Freeman[4] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel. Other attorneys at that firm assist the Trust as well, including John Hinderaker, who directs claims and other Trust specific litigation.[5]

Separate litigation counsel, Allan Diamond[6] and Eric Madden[7] of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

### D.    BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases. While those dockets, and the associated claim information, are available to the public for a fee through PACER, the

---

[2] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[3] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[4] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[5] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369.

[6] Information about Mr. Diamond is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/adiamond.html.

[7] Information about Mr. Madden is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/emadden.html.

275359.2

**USACM Liquidating Trust**
**October 2010**

Trust continues to believe that the Court and creditors are better served by the Trust bearing that expense, for the time being.

### E.    Creditor Inquiries

Both the Trustee and the Trust's counsel receive periodic inquiries from direct lenders concerning servicing, tax issues, pre-paid interest and other questions.  Both the Trustee and the counsel have made every effort to respond to each such inquiry, although often the Trust is not in a position to provide a specific answer, since the Trust cannot provide lenders with legal or tax advice.  The Trustee and counsel also make every effort to respond on a timely basis to direct lenders and other creditors with questions related to objections to loans and claims as those objections are being processed.

## II.    PLAN OF REORGANIZATION ISSUES

There are no issues to be addressed as to appeals of the confirmed Plan of Reorganization.  Prior Quarterly Reports have addressed the few matters in this area in detail and no further activity has taken place since May 2009.

## III.    USACM ISSUES

USACM continued to wind up its affairs and file monthly reports of those efforts with the bankruptcy court.  USACM has been dissolved under Nevada law, with Thomas Allison of MFIM responsible for winding up its affairs.

The Trust continues to monitor the liquidation of USACM under the direction of Mr. Allison and its pre-effective date counsel.  USACM files periodic operating reports disclosing its status of assets and liabilities, payments and obligations incurred.  USACM also holds reserves for certain unresolved claims as well as unresolved expenses of administration.  Mr. Allison and Susan Smith of MFIM have been deposed in various litigation matters, which time and expense is billed to the remaining administrative reserve MFIM maintains for USACM.  Those expenses are likely to be incurred until the Trust and the Securities and Exchange Commission litigation matters have been completed.  Any excess of the funds in escrow over the claims paid would be assets of the Trust.  The Trust hopes to be in a position to have the significant portion of the remaining reserves released to the Trust in the near future.

Periodically creditors seek relief from the automatic stay caused by the USACM bankruptcy case for a variety of reasons.  The Trust generally responds to point out that the confirmation of the plan and vesting of USACM property in either the buyer or the Trust terminated the automatic stay.  The Trust will continue to work with creditors who need clarification of the automatic stay or other issues caused by the USACM bankruptcy filing and plan confirmation.

275359.2

**USACM Liquidating Trust**
**October 2010**

## IV.   INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

### A.   Diamond McCarthy

Diamond McCarthy as special litigation counsel to the Trust has actively conducted formal and informal discovery of files, witnesses and transactions since its informal engagement in January 2007, which was formalized once the Plan went effective in March 2007.  The goals were to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors.  In addition, special litigation counsel identified assets diverted by insiders and their affiliates so that the assets can be recovered to generate payment for creditors.  Diamond McCarthy continues to coordinate those efforts with others, including DTDF, the USA Investment Partners, LLC ("USAIP") Trustee (Lisa Poulin), and the bankruptcy trustees for Hantges and Milanowski mentioned below.  Many witnesses have been deposed or interviewed and tens of thousands of pages of documents have been reviewed.  Further, Diamond McCarthy continues to coordinate efforts with various federal and state governmental agencies, including the FBI, U.S. Attorney's Office for Las Vegas, and the SEC.  Diamond McCarthy maintains a confidential work product database that has been instrumental in helping the Trust coordinate discovery requests and responses at lower cost.  Diamond McCarthy is lead counsel on the bulk of the Trust's litigation described below.

Certain members of Diamond McCarthy left the firm in December 2009 forming Reid Davis LLP (now Reid Collins Tsai LLP).  Bill Reid and Lisa Tsai, along with others now at Reid Davis, were the primary attorneys on the Wells Fargo Bank litigation (see below).  The Trust, in conjunction with the Manager of DTDF, agreed that the continued involvement of the Reid Davis lawyers, with those remaining at Diamond McCarthy, was appropriate in light of the critical phase the Wells Fargo Bank litigation was in at the time of those lawyers' change of firms.  An agreement between Diamond McCarthy and Reid Davis was negotiated for the joint prosecution of the Wells Fargo Bank claim without additional expense to the Trust.

### B.   Pending Actions

The Trust had the benefit of a two-year tolling period under Bankruptcy Code § 108 to bring many claims and causes of action owned by USACM on the date of its bankruptcy filing.  The two-year anniversary of the bankruptcy filing was April 13, 2008.  The Trust filed numerous causes of action before this deadline.  Lawsuits were filed against the following:

4

**USACM Liquidating Trust**
**October 2010**

| Case No. | Defendant |
|---|---|
| 08-01114 | Shober Consulting, Inc.[8] |
| 08-01115 | Bob Stupak[9] |
| 08-01116 | Greenwald, Pauly, Foster & Miller[10] |
| 08-01117 | David Rentz[11] |
| 08-01118 | Jerry Cadeski[12] |
| 08-01119 | Robert A. Russell; Deborah Russell; Russell A. Development Group, LLC; Freeway 101 Investors, LLC; Freeway 101 Loop RAR Investment, LLC; Boise/Gowen, LLC; BG/93 Investments, LLC; Copper Sage Commerce Center, LLC; Der NV Invesco, LLC; SVRB Investments, LLC[13] |
| 08-01120 | Gentile De Palma Ltd.[14] |
| 08-01121 | Fertitta Enterprises, Inc.[15] |
| 08-01122 | J.M.K Investments, Ltd., John M. Keilly, Mountain West Mortgage LLC[16] |

---

[8] The Trust's adversary complaint against Shober Consulting, Inc. has been settled.

[9] The adversary proceeding against Bob Stupak was dismissed with prejudice on the motion of the Trust filed on October 28, 2008.

[10] The Trustee entered into a settlement agreement and general release with Greenwald, Pauly, Foster & Miller of the causes of action asserted in adv. No. 08-01116-lbr.

[11] The adversary proceeding against David Rentz was dismissed on the Trust's stipulation on September 30, 2008.

[12] The Trust's lawsuit against Jerry Cadeski was dismissed on February 3, 2009.

[13] The Trustee settled this cause of action.

[14] On August 5, 2008, the Trust amended its complaint. The Trust entered into a settlement agreement with Dominic P. Gentile, providing for an agreed obligation, deferred payments, backed up by a stipulated judgment if the payments were not timely made. The defendant has not performed as agreed under the settlement and the Trust is working with him to reach an appropriate resolution.

[15] The matter is settled, and is awaiting execution of the proposed form of settlement agreement .

[16] This matter was settled with Court approval.

5

**USACM Liquidating Trust**
**October 2010**

| Case No. | Defendant |
|---|---|
| 08-01123 | Fiesta Development, Inc.; Ashby USA, LLC; Richard K. Ashby; Random Developments, LLC; Ashby Development Company, Inc.[17] |
| 08-01124 | Homes for America Holdings, Inc.; HFAH Clearlake, LLC; One Point Street Inc.; Mediterranee-HFAH, LLC[18] |
| 08-01125 2:09-cv-01947 | Monaco Diversified Corporation; Anthony Monaco; Susan K. Monaco; Eagle Ranch Residential, LLC; Eagle Ranch, LLC; Willowbrook Residential, LLC; Brentwood 128, LLC; Ravenswood Apple Valley, LLC[19] |
| 08-01126 | James Cioffi Architect Corporation[20] |
| 08-01127 | Amesburyport Corporation[21] |
| 08-01128 | K&S Properties (Minden)[22] |

---

[17] After prosecution of the litigation, and then extensive negotiations, this case was settled and judgment was entered on June 30, 2009.

[18] In the adversary proceeding against Homes for America Holdings, Inc. et al, the parties reached agreement on a settlement after discovery. The settlement involves agreed Judgments in a joint and several amount of $2,900,000.00 (the "Agreed Judgments") which will be held in escrow as described below. The Responsible Defendants pay the USACM Trust $7,500.00 per month, for 12 months, and $60,000.00 in month 13. In consideration of these payments the USACM Trust agrees not to execute on the Agreed Judgments for 18 months. However, if the Responsible Defendants miss a payment the USACM Trust can execute on the Agreed Judgments immediately. The USACM Trust will execute limited releases of all Defendants that become effective upon full satisfaction of the Agreed Judgments.

[19] The Trust entered into a stipulated judgment with Anthony Monaco, Susan K. Monaco and Monaco Diversified Corporation.

[20] On December 2, 2008, the Trust dismissed its claims against James Cioffi Architect Corporation and the adversary case was then closed.

[21] On October 28, 2009, the Court approved the Trust's settlement with the defendant. The Trust and defendant Amesburyport Corporation filed a stipulation to entry of agreed judgment on December 30, 2009. The Trust obtained judgment for over $2.8 million against the defendant.

275359.2

**USACM Liquidating Trust**
**October 2010**

| Case No. | Defendant |
|---|---|
| 08-01129 | Tanamera Resort Partners, LLC[23] |
| 08-01130 | Phillips USA LLC[24] |
| 08-01131 | Bingham McCutcheon, LLP[25] |
| 08-01132<br>2:09-cv-01946 | Stanley E. Fulton[26] |
| 08-01133 | Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99; Specialized Development Tahoe, LLC[27] |
| 08-01134 | Mary Petersen; Mary Petersen Family Trust dated 8/12/98; Michael D. Petersen; Michael D. Petersen Family Trust dated 8/12/98; Kathryn L. Petersen; Kathryn L. Petersen Living Trust; KLP Trust dated 7/15/99[28] |

---

[22] After investigation, the Trust sought dismissal of the adversary proceeding against K&S Properties, adversary No. 08-1128. The stipulation for dismissal was filed in August 2008 and granted by the Court thereafter.

[23] In the Trust's litigation with Tanamera Resort Partners, L.L.C., the parties reached agreement on a settlement subject to court approval.

[24] In the adversary proceeding against Philips USA LLC, the court entered its default judgment on December 24, 2008 for $425,000, together with pre- and post-judgment interest. The Trust will seek to collect the judgment.

[25] The Trust's lawsuit resulted in the grant of summary judgment in favor of the Trust. The bankruptcy court concluded that USACM's wire transfer of $200,000 to Defendant, law firm Bingham McCutchen ("Bingham"), was a fraudulent and thus avoidable transfer under 11 U.S.C. § 548. Bingham appealed to the district court, now case 2:09-cv-01608-RLH-LRL. The district court affirmed the bankruptcy court on June 4, 2010 and Bingham has filed a notice of appeal to the Ninth Circuit.

[26] Plaintiff is DTDF. The bankruptcy court's findings of fact and conclusions of law were affirmed on appeal to the district court, case no. 2:09-cv-01946-RLH-LRL. The Stanley Fulton matter was settled in late June 2010 as a result of various pre-trial rulings that provided an opportunity for the parties to resolve the matter without the need for trial.

[27] Plaintiff is DTDF. In the adversary proceeding, the parties reached a settlement and the case was dismissed by stipulation.

275359.2

**USACM Liquidating Trust**
**October 2010**

| Case No. | Defendant |
|---|---|
| 08-01135 | Wells Fargo Bank, N.A.[29] |
| 08-01164 | Beadle, McBride, Evans & Reeves, LLP; Reeves, Evans, McBride & Zhang, LLP; TG McBride, CPA Ltd.; T. Garth McBride[30] |
| 08-0112 2:09-cv-02130 | David A. Fogg[31] |

Additionally, a complaint was filed in the United States District Court for the District of Nevada, as follows:

| Case No. | Plaintiffs | Defendants |
|---|---|---|
| 2:08-CV-461 | Trust and DTDF | Deloitte & Touche, LLP;[32] Victoria Loob[33] |

These actions were prosecuted in order to recover funds for the Trust beneficiaries and DTDF. Many of the above matters have been resolved through negotiated settlements.

## V.    PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A.    USAIP Chapter 11 Case

USAIP is the maker of a $58,374,918.81 promissory note (the "$58 Million Note") to USACM for the benefit of creditors (including DTDF). Repayment of the $58 Million

---

[28] Plaintiffs are the Trust and DTDF. In the adversary proceeding, the parties reached a settlement and the case was dismissed by stipulation.

[29] Plaintiffs are the Trust, DTDF and FTDF. This is not an avoidance action. The Wells Fargo Bank matter had a directed verdict in favor of the Bank issued in early August 2010 which is now before the District Court for ratification

[30] Plaintiffs are the Trust and DTDF. See below.

[31] Plaintiffs are the Trust and DTDF. Mr. Fogg has asserted a counterclaim. The matter was settled and placed in abeyance to allow the parties to document and perform the settlement.

[32] The action against Deloitte & Touche is awaiting a ruling on Deloitte's motions for summary judgment (having been submitted to the court after oral argument on August 30, 2010)

[33] The action has been dismissed against Ms. Loob.

275359.2

**USACM Liquidating Trust**
**October 2010**

Note and other obligations of USAIP are secured by liens on USAIP's interest in entities owned or in part by USAIP.[34]  The Trust may also claim equitable ownership rights in some assets titled in such entities and they may be a source of value to satisfy damages claims.  USAIP is a debtor in a bankruptcy case pending in Nevada (case #07-11821-LBR).

### 1.    Trustee

Over the objection of Hantges and Milanowski, through counsel, the bankruptcy court (Honorable Linda B. Riegle) entered an order directing the United States Trustee to appoint an interim trustee for USAIP.  Lisa M. Poulin was appointed and continues to serve as trustee.  She selected Gordon Silver of Las Vegas, Nevada as her counsel, with the Court's approval.

### 2.    Proofs of Claim

On behalf of the Trust, Diamond McCarthy timely filed a proof of claim seeking $158,900,000 from the USAIP estate on behalf of the Trust.

As Lisa Poulin identified USAIP subsidiaries in need of bankruptcy protection, bankruptcy cases were filed, she was appointed trustee, and the cases were jointly administered.  These include: USAIP; USA Investors VI, LLC, Case No. 07-12377; Tree Moss Partners, LL, Case No. 06-13758; HMA Sales, LLC, Case No. 07-12694; Capital Land Investors, LLC, Case No. 07-18099; Oak Mesa Investors, LLC, Case No. 08-10397; and Buffalo Land Development Co., LLC, Case No. 08-10398.

USAIP sought and obtained approval to retain Foley & Lardner LLP as special counsel to deal with the claims of the Pension Benefit Guaranty Corporation ("PBGC"), in part as a result of the successful resolution of the objections of the USACM Liquidating Trust to the PBGC proofs of claim.  USAIP then objected to three proofs of claim filed by the PBGC in the aggregate amount of approximately $3 million.  That objection is unresolved.

---

[34] Capital Land Investors, LLC, a California limited liability company; Ashby USA, LLC, a California limited liability company; Placer County Land Investors, LLC a California limited liability company (f/k/a Placer County Land Speculators, LLC); Oak Mesa Investors, LLC, a California limited liability company; HMA Sales, LLC, a Nevada limited liability company; Tanamera Properties, LLC; Random Developments, LLC, a California limited liability company; and Buffalo Land Developments, LLC, a California limited liability company.

275359.2

**USACM Liquidating Trust**
**October 2010**

In its last Monthly Operating Report, USAIP has reported that it has approximately $1.7 million in cash on hand with slightly more than $1.2 million in unpaid sums due for post-petition services, including professional fees.

### 3.        USAIP Related Issues

USA Commercial Mortgage Company as agent for USAIP filed a proof of claim for $4,055,706.65 in the chapter 7 bankruptcy case of American Enchantment II, LLC.  The chapter 7 trustee objected to the claim, which the Trust investigated and ultimately determined was properly dealt with by the USAIP Trustee.

The Trust continues to monitor the USAIP bankruptcy case, including reviewing its monthly operating reports, adversary proceedings and settlements.  The Trust also worked with the USAIP Trustee on cost-benefit considerations of the pursuit of assets and potential causes of action by the USAIP Trustee and the related post-confirmation estates.  The Trust entered into a tolling agreement with the USAIP Trustee to avoid unnecessary expense in terms of potential litigation between the estates.

### B.        Insiders – Thomas Hantges and Joseph Milanowski

### 1.        Hantges

Due to the actions of the Trust, the Administrator of the DTDF and other creditors, Thomas A. Hantges was a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13163-lbr.  Michael Carmel was appointed trustee in the Hantges bankruptcy.

The Trust timely filed a proof of claim against the Hantges estate seeking the amount of $305,000,000.  Resolution of claims against the Hantges estate and the possibility of payment are months or years away.

On February 11, 2008, the Trust through Diamond McCarthy filed a complaint to determine non-dischargeability of debt against Hantges, assigned Adversary No. 08-01042-lbr.  Hantges has answered the complaint and the matter is in the early discovery stages.  Similar lawsuits were filed against Hantges by DTDF (No. 08-01041), the Kehl family (No. 08-01040), and the United States Pension Benefit Guaranty Corporation ("PBGC") (No. 08-01039).

The Trust continues to prosecute the adversary complaints against Joseph Milanowski, Case No. 08-01093, and Thomas Hantges, Case No. 08-01042.  Discovery in the Hantges adversary proceedings were stayed pending settlement discussions.  A settlement conference was held in October 2010.  No settlement of the matters were reached.

The Trust had provided limited post-petition financing to the Hantges estate pursuant to a loan approved by the bankruptcy court.  In an amendment, the Trust agreed to increase

10

**USACM Liquidating Trust**
**October 2010**

the amount of the loan to $2,000,000. The purpose of the loan is to enable the Hantges trustee to collect assets owed to the Hantges creditors, including the Trust. The Trust received a significant pay-down on the post-petition financing as the result of the settlement of the Trust and the Hantges estate's claims against Lucius Blanchard (see below) and others. Interest was paid current to October 31, 2009. The obligation continues to bear interest and be secured by a first priority lien on all unencumbered assets of the Hantges estate, and a junior lien on any encumbered assets, as well as a super-priority administrative claim.

The bankruptcy court's order denying Hantges' motion to dismiss or alternative motion to convert the bankruptcy case to chapter 7 was entered on the docket on November 14, 2008. Without being unnecessarily, pejorative, Hantges, who claims he has no money, found the resources to have his attorneys file a notice of appeal on November 24, 2008. Hantges elected to have the appeal considered by the district court, and assigned district court number 08-cv-01665. The appeal was dismissed by the district court.

The Trust and the Trustee for the Hantges estate entered into an agreement for prosecution of claims by the Trust against Lucius Blanchard, the Blanchard Childrens' Trust, Palomino Partners and Thomas A. Hantges with respect to the transfers to and assets of the alleged Trust. The lawsuit was filed by the Trust on August 25, 2008 at Case No. 08-01268.[35] The Hantges estate also retained the Trust's special litigation counsel – Diamond McCarthy – to prosecute certain actions on behalf of the Hantges estate. The Trustee sought and obtained approval of employment of Diamond McCarthy.

In the adversary proceeding brought by Mr. Carmel as trustee for the Hantges estate, No. 08-01002, Lucius Blanchard, individually and as trustee of the Hantges Children's Education Trust, the parties engaged in discovery and negotiated a settlement for all causes of action in July 2009. The settlement of the actions, along with the allocation of the settlement proceeds between the estates, was approved by the Bankruptcy Court on October 5, 2009. As a result, the Hantges Trustee made a substantial pay down to the loan from the Trust from his estate's share of the settlement. Approximately $1.0 million remains outstanding however on the Trust's advance to the Hantges estate.

The Trust continues to monitor the bankruptcy case of Thomas Hantges. Michael Carmel as Trustee for the Hantges estate filed a motion to convert the chapter 11 case to Chapter 7 of the Bankruptcy Code. That motion was granted and the only remaining matter(s) in the chapter 11 case are the filing of final fee applications and the hearing on those applications. The Trust's post-petition financing was amended with Court approval on December 28, 2009. A new meeting of creditors and deadline to file proofs of claim was

---

[35] The bankruptcy court entered an order on October 14, 2009 approving settlement of the claims in this suit.

**USACM Liquidating Trust**
**October 2010**

set in the chapter 7 case, as was a new deadline for complaints objecting to the debtor's discharge or dischargeability of debts.

The Hantges estate's professionals, including the firm of Steptoe & Johnson, filed applications for approval of fee applications and reimbursement of expenses. Those applications were heard on June 15, 2010. The application of Steptoe & Johnson, as counsel to the estate, was objected to by the Office of the United States Trustee; the USACM Trust filed a "response" to that application but did not formally object. As a result of the arguments at the hearing, the Trust negotiated a significant reduction in the Steptoe & Johnson fee application. The reduced application was approved by the court, with the Trust obligated to and did fund $250,000 in available funds under the existing DIP financing. No monies over and above that additional advance will be made.

  **2. Milanowski**

Joseph Milanowski became a debtor in a chapter 11 bankruptcy case in Nevada, Case No. 07-13162-lbr, as a result of the Trust, DTDF and others joining in bringing an involuntary bankruptcy petition against Milanowski. The Court entered an order for relief against Milanowski and appointed Ford Elsaesser as the trustee in the Milanowski case.

The Trust filed a proof of claim through Diamond McCarthy against Milanowski for $305,000,000. The claim includes Milanowski's guarantees of the debts of Placer County Land Speculators, LLC to the Placer 1 and Placer 2 Direct Lenders on the loans that the Trust is servicing.

The Trust through Diamond McCarthy filed a complaint in the bankruptcy court, Adv. No. 08-01093-lbr, to determine the dischargeability of Milanowski's debts to the Trust. That complaint is in the early stages of discovery. Similar lawsuits were filed against Milanowski by DTDF (No. 07-13162), Aurora Investment L.P (No. 07-01212), the Kehl family (No. 08-01052), the PBGC (No. 08-01044), and BySynergy, LLC (No. 07-01209). The cases are set for a status hearing on November 13, 2009.

As indicated above, the Trust continues to prosecute the adversary complaints against Joseph Milanowski, Case No. 08-01093, and Thomas Hantges, Case No. 08-01042.

Efforts to negotiate a settlement of the claims against Mr. Milanowski have recently been renewed, in part based on Mr. Milanowski's cooperation with the remaining open litigation cases, and his pending report date to begin his sentence for wire fraud per the order of the District Court (see below). The Court has scheduled a mandatory settlement conference in both the Hantges and Milanowski bankruptcies to address the pending complaints for non-dischargeability of the Trust's claims against both individuals. The settlement conferences are to be conducted on October 21-22, 2010 in Las Vegas.

275359.2

**USACM Liquidating Trust**
**October 2010**

The Trust continues to cooperate with federal, state and local officials investigating USACM. On April 23, 2008, the SEC brought an action against Joseph Milanowski "in connection with a multi-million dollar fraud" seeking an order requiring Milanowski to disgorge sums obtained. The Trust is not prosecuting this action. The complaint was filed with the United States District for the District of Nevada and is Case No. 2:08-CV-00511. The Trust continues to monitor the SEC's litigation.

Mr. Milanowski entered into a plea agreement with the United States in a criminal case pending in Nevada, No. 2:07-CR-00291. Mr. Milanowski was scheduled to be sentenced on January 15, 2010. The sentencing was continued to April 9, 2010 by the presiding judge. Mr. Milanowski's plea agreement was accepted by the court and Mr. Milanowski was sentenced to twelve years incarceration, five years of supervised release post-incarceration; and as an additional condition of his sentence, Mr. Milanowski was ordered to continue to cooperate with the bankruptcy trustees and counsel in the prosecution of the remaining litigation matters. Failure to cooperate would be deemed a violation of Mr. Milanowski's supervised release and would subject him to imprisonment in addition to the twelve year sentence. Mr. Milanowski reported to the Department of Corrections to begin his sentence on August 6, 2010. There is also a restitution order requiring payment of $86.9 million to the victims of the wire fraud.

The Trust continued to monitor the prosecution of the bankruptcy case of Joseph Milanowski by Ford Elsaesser, the court-appointed trustee. The Trustee, Mr. Milanowski, the Joseph D. Milanowski 1998 Trust, the Milanowski Family Trust, Cynthia Gunther Milanowski, and the Cynthia Gunther Milanowski 1998 Trust negotiated and entered into a settlement agreement, subject to bankruptcy court approval. The Trustee requested input from the Trust concerning the settlement and those discussions were informally obtained.

Ford Elsaesser, Chapter 11 Trustee for the Estate of Joseph D. Milanowski, sought and obtained court approval to enter into a settlement agreement and release with Joseph Milanowski, Cynthia Gunther Milanowski, and certain of their affiliates. The settlement proposed that in exchange for a $1 million payment, the Trustee would not seek to attack certain Milanowski related trusts, retirement accounts and other investments that arguably were property of the Milanowski estate, but which also might be subject to claims of third parties. The Milanowski estate has now retired the Trust's loan. Various adversary proceedings against Milanowski were continued to a status hearing, including the Trust's non-dischargeability complaint against Milanowski.

Similar to the Hantges estate, Mr. Elsaesser filed a motion to convert the Chapter 11 case to Chapter 7. The Bankruptcy Court approved the motion and the case is now being administered as a Chapter 7 liquidation. A new meeting of creditors and deadline to file proofs of claim was set in the chapter 7 case, as was a new deadline for complaints objecting to the debtor's discharge or dischargeability of debts.

275359.2

**USACM Liquidating Trust**
**October 2010**

The United States Trustee filed a complaint objecting to Milanowski's discharge under Bankruptcy Code § 727.  The Trust is not a party to this action.  It would, however, render moot the Trust's complaint to have Milanowski's debts to the Trust determined nondischargeable.

###    C.    HMA Sales, LLC

The Trust filed a proof of claim in the HMA Sales, LLC bankruptcy case, where Lisa Poulin is the trustee.  Claim No. 47 was in the sum of $4,832,123.96.  Because of disputes as to liability, and more importantly, limited assets of the estate and competing claims, the Trust carefully negotiated a resolution of the proof of claim and the HMA Sales Trustee's objection.  Ms. Poulin and the Trust reached an agreement which was reduced to writing and filed with the bankruptcy case in case No. 07-12694.  The agreement approved by the bankruptcy court allowed the Trust's claim at $1,500,000, but provided for purposes of distribution that the Trust would receive only 50% of funds distributed to holders of unsecured claims until the allowed claim was paid in full.  Thus, the relative size of the Trust's claim was reduced for distribution purposes.  The stipulation was filed with the court on October 28, 2008 and approved by the court that same date.

The Trust continues to monitor resolution of the bankruptcy case by Ms. Poulin as trustee.

###    D.    Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust.  The adversary proceeding is Adv. No. 06-01251 pending in the Bankruptcy Court.  On May 25, 2007, the Trust's special litigation counsel (Diamond McCarthy) filed the Trust's Second Amended Complaint.  The Trust originally sought to avoid transfers to or for the benefit of Mr. Reale aggregating slightly less than $10 million.  After further investigation, the Trust narrowed its claims to avoid and recover a $4 million transfer to or for the benefit of Mr. Reale.

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Mr. Reale for $4 million, plus an award of the Trust's taxable costs.  The Trust filed a motion seeking pre- and post-judgment interest, which motion was granted by the Bankruptcy Court after a hearing on May 8, 2008.  The Trust obtained judgment on May 13, 2008.

The Trust continues to work on collection of the $4 million judgment against Salvatore Reale, including seeking post-judgment discovery, filing a motion to compel compliance with the discovery requests, and negotiating with Mr. Reale on a possible settlement. Efforts to recover on the judgment are complicated by a temporary restraining order against Mr. Reale in another matter, as well as an obligation to the Internal Revenue

14

**USACM Liquidating Trust**
**October 2010**

Service and the fact that one of the borrowers to whom Mr. Reale made a loan has subsequently filed their own chapter 7 bankruptcy. Mr. Reale has cooperated with the Trust in efforts to recover from this borrower's bankruptcy estate and thereby reduce the outstanding judgment due the Trust; no payments were received against Mr. Reale's judgment in the last quarter, nor has Mr. Reale been able to make any payments against the outstanding judgment since it was rendered.

### E. JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).

The Trust worked through its special litigation counsel at Diamond McCarthy LLP and accomplished, through settlement, several significant payments for the Trust. In connection with the adversary proceeding against JMK Investments, Ltd. et al, the Trust entered into a settlement agreement, subject to court approval, with JMK, Simon Family Trust, Steven Portnoff, JWB Investments, Inc., Brouwers Family LP, Larry C. Johns, Mary L. Johns, Paul Bolch Living Trust, Roni Amid, Robert M. Portnoff, Sarah Portnoff, Morningside Homes, Inc., Aurora Investments LP, Steven Janovitch, Linda Janovitch, First Savings Bank FBO Valliera McGuire, Marvin and Valliera Myers Trust, Larry J. Middleton, Jennifer Middleton, Alabruj Limited Partnership, and Francis Family Trust. Under the agreement, approved by the bankruptcy court after notice and an opportunity for hearing, Defendants will pay $2,750,000 to the Trust. Payment by June 30, 2009 reduces the payment requirement to $2,250,000. The JMK settlement was approved by the court's November 24, 2008 order.

In the adversary proceeding concerning J.M.K. Investments, Ltd., counsel for several of the defendants sought leave to withdraw and the matter was scheduled for hearing on February 20, 2009, and a status hearing was scheduled on March 20, 2009 at which the defendant Roni Amid was directed to appear personally. Counsel was allowed to withdraw and the status hearing was conducted on April 10, 2009 as to Roni Amid. Mr. Amid subsequently retained new counsel and after review of the settlement, has paid his pro-rate obligation under the settlement. A small number of the defendants chose not to pay the discounted amount and therefore had until September 30, 2009 to pay their respective obligations. None of those defendants made the required payments. The Trust obtained default judgments against each of the JMK Defendants that did not pay the discounted or full amount of the stipulated settlement payments.

Subsequently, the Trust filed a status report on February 19, 2010 indicating that the JMK Defendants made payment of $120,000.00 to the Trust prior to February 1, 2010 in accordance with their obligations under the Settlement Agreement. MWM did not pay

15

**USACM Liquidating Trust**
**October 2010**

the Trust per the terms of the Settlement Agreement prior to June 16, 2010, and efforts are underway to collect the debt.

### F.    Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.  Ms. Poulin filed a motion to approve a sale of the Tree Moss assets, however the proposed sale fell through and she has since filed a new motion for the sale of the Tree Moss assets, though at a reduced amount.  The Trust filed a proof of unsecured claim for $1,075,799.91 in the case, and continues to monitor progress of the case under Ms. Poulin's supervision as trustee.

## VI.    COLLECTION OF TRUST ASSETS

As reported in our last report, during the preceding quarter the Trust received distributions from the estate of Principle Centered, Inc., Case No. 01-11719-bam.  Those distributions that were assets of the Trust were retained and additional distributions were turned over to DTDF.

### A.    Reserves

The Trust monitors certain reserves held by USACM through Mesirow Financial Interim Management, LLC ("MFIM").  These reserves are identified generally in Monthly Operating Reports filed by USACM, which are prepared by MFIM.  Those reserves were held for certain claims, which have been resolved, as well as for the ongoing expenses of MFIM and Dorsey & Whitney on behalf of USACM in liquidation.  (*See* Section III above.)  Much of MFIM's and Dorsey & Whitney's recent time has been spent dealing with the Asset Resolution litigation (see below).  Currently, MFIM is reporting approximately $700,000 remains in the established reserve.

### B.    Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on that loan.  The Trust continued to work with Michael A. Tucker, the administrator of DTDF, on collection of sums owed on the Colt loans.  Proposals have been received from Homes for America Holding, the developer of the project, for refinancing the project and addressing the outstanding debts, but no significant progress has been made in this regard.

275359.2

The Trust continues to monitor collection of certain loans involving Colt in the Colt Gateway Campus Urban Revitalization Project in Hartford, Connecticut. To date, those efforts have not resulted in resolution of the Trust's claims. The Trust filed an objection to Colt Gateway, LLC's proof of claim.

### C. Compass Escrows

As a result of its compromise and purchase of the Trust's interest in Prepaid Interest causes of Action, Debt Acquisition Company of America V, LLC ("DACA") sought to and has now intervened as plaintiff in the Trust's adversary proceeding against Compass, adversary no. 08-01066-lbr, after Compass' answer and counterclaim were stricken by the court for lack of counsel. The Trust answered the complaint on October 26, 2009, but asserts no interest in the subject matter of the action. DACA has agreed it may not recover any affirmative relief against the Trust and DACA shall not recover taxable costs or attorney fees from the Trust. DACA continues to prosecute the action against Compass.

### D. Lee Suit

One of the assets of the Trust was causes of action asserted against James J. Lee by USACM. That matter resulted in an appeal to the Supreme Court of the State of Nevada, Case Nos. 46363 and 46781. In an order filed March 28, 2008, the Supreme Court reversed and remanded summary judgment granted to USACM against Lee. The Trust is handling this matter through a special counsel relationship with Lenard E. Schwartzer.

Mr. Lee filed a bankruptcy petition, Case No. 08-10969, with the United States Bankruptcy Court in Nevada on February 6, 2008. The Trust continues to monitor in the Lee bankruptcy case, which has been converted to chapter 7.

### E. BySynergy

BySynergy is an entity that is obligated to DTDF and the Trust. It is a debtor in a bankruptcy case pending in the United States Bankruptcy Court for the District of Arizona, Case No. 2:08-bk-07680-RTB. Counsel for DTDF is taking the lead on enforcing the claims of the post-confirmation entities against BySynergy.

## VII. PROFESSIONAL FEES

With respect to professional fees, the Trustee continues to carefully scrutinize each month the fee statements presented by professionals for USACM (Ray Quinney Nebeker (now Dorsey & Whitney), Mesirow Financial Interim Management) ("MFIM"), the Trust (including Lewis and Roca and Diamond McCarthy), and other post-confirmation entities and bankruptcy trustees. With respect to USACM's professionals, while the Trustee is not completely satisfied with the billings, the Trustee has elected not to expend creditor

**USACM Liquidating Trust**
**October 2010**

funds in disputing billings that have minor excesses.  With respect to the Trust's professionals, the Trustee deals directly with and receives complete satisfaction of his concerns from his lawyers and other professionals.  All professionals are current as to the invoices for services to the Trust.

## VIII.  PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.    Overview

To date there have been seven administrative claims filed totaling $2,016,499.08; 103 priority claims filed totaling $7,751,955.91; 1,676 secured claims filed totaling $297,052,436.44; 1233 unsecured claims filed totaling $627,644,759; and 78 unknown claims filed totaling $389,390.57.  Additional claims were scheduled by the jointly administered Debtors.

### B.    Objections

To date, the Trust has filed:

- Objections to 1667 secured claims that have been sustained and reclassified as unsecured in aggregate of $296,160,363.

- Objections to 76 priority claims that have been sustained and reclassified as unsecured in aggregate of $5,122,367.

- Two objections to the status of an administrative claim totaling $62,496 that has been sustained and reclassified as unsecured.

- Objections to 77 "Wrong Debtor" claims in the amount of $11,596,867.

- Objections to 158 claims for lack of documentation in the amount of $23,447,974.

- Objections to 40 claims based on miscellaneous grounds in the amount of $87,882,585.  $74,233,923 was deemed disallowed and the remaining $13,658,662 was deemed Allowed.

- Objections to Direct Lenders' claims in the amount of $117,758,850, principally on loans paid in full by the borrowers.  The court has sustained these objections or the claimants have agreed that they are not making a claim based upon the paid loan in question.

- Objections to 50 claims based on miscellaneous grounds in the amount of $91,846,803.  16 of these objections have been sustained totaling $31,200,122; 11 objections have stipulated withdrawals totaling

**USACM Liquidating Trust**
**October 2010**

$7,496,447; 3 claims totaling $14,270,528 have orders allowing the claims; 1 claim has been deemed partially allowed in the amount of $925,000 with the remaining $2,577,383 deemed disallowed; and 19 objections totaling $35,377,322 remain unresolved.

- A total of 1164 objections to Direct Lenders claims in the amount of $84,728,167.74, principally on loans paid in full by the borrowers. The court has sustained these objections or the claimants have agreed that they are not making a claim based upon the paid loan in question.

- A stipulation has been executed and an order signed which provides for the disallowance of the Spectrum and Weddell proofs of claim in the amount of $125,324,000.

- 32 objections to claims based on the Palm Terrace lawsuit totaling $64,000,000; 31 claims have been disallowed in their entirety and one claim was deemed partially allowed in the amount of $50,000 with the remaining portion of the claim disallowed.

- Objections to over 250 claims where the direct lender claimant made both a secured claim and an unsecured claim based upon the same investment. These claims were double-counted and the Trust obtained an order disallowing one-half of each claim, which resolved over $70,000,000 in direct lender claims.

In addition to the claims objections listed above:

- 258 claims totaling $35,031,487 have been amended or duplicated by another proof of claim.

- 83 claims totaling $37,858,441 withdrawn by stipulation.

- 8 claims totaling $1,245,885 were reclassified as a class A-7 subordinated claims.

The Trust continued to attempt to resolve claims on loans that had been resolved. For example, the Trust filed and prosecuted omnibus and other objections with respect to proofs of claim based upon the loans known as (or claims filed by) The Gramercy Court Loan, The 60th Street Venture, LLC Loan, Tobias Von Euw, I-40 Gateway West Loan, and Standard Property Development, LLC. Orders were entered during the quarter sustaining the Trust's objections, summarized above. In addition, the Trust continued reviewing individual proofs of claim, including those filed against the wrong debtor, and duplicate proofs of claim. The pace of objections will accelerate as loan servicers are

275359.2

**USACM Liquidating Trust**
**October 2010**

successful in collecting direct loans or taking action on behalf of the direct lenders in those respective loans.

Further, as the Trust has received information from claimants, it has entered into stipulations for the allowance and disallowance of priority and unsecured claims. Conversely, some claimants have stipulated to either withdraw their claims or have them reclassified as unsecured claims upon discussion with the Trust's counsel. The Trust has filed a series of additional objections to claims that were previously scheduled as "secured" as against USACM and which earlier in the bankruptcy were objected to on that (secured) basis. The claims register was then revised to reflect those "disallowed" secured claims as "unsecured". Many of those unsecured claims were duplicative of claims already filed by those direct lenders. Therefore, a round of objections eliminated the duplicative claims from the claims register, without impacting any direct lender's right to an allowed claim if their particular investment in any given loan might so warrant.

The remaining direct lender claims relate to loans that (1) fully performed, but involve diverted principal; (2) partially performed; (3) are non-performing or still outstanding. The extent to which those loans perform and/or the direct lenders may be compensated from the sale of collateral securing the loans has a major impact on the amount of the claims. The Trustee is handling these claims on a loan by loan basis.

In general, with respect to claims of Direct Lenders, the Trust is waiting for information concerning collection of loans before turning to the unsecured claims of the direct lenders in the particular loan. The inability of Compass or its successors to collect loans directly impacts the Trust's ability to work on proofs of claim. Without loan collection, the Trust cannot know the actual damages incurred by the Lenders on account of alleged breaches by USACM. The Trust periodically receives inquiries from lenders concerning their claims and how to report the claims on tax returns. The Trust is, unfortunately, not in a position to offer tax advice to direct lenders. This would include whether lenders may properly seek a bad debt deduction for the unpaid balance of particular loans.

The Trust is also working on claims by non-lenders, and for example objected to the claim of the Securities and Exchange Commission as well as claims of equipment lessors. Other claims were withdrawn by agreement. There are less than five claims by non-lenders that remain unresolved.

A stipulation was filed with and approved by the court allowing the unsecured claim of Del and Ernestine Bunch for $11,358,662.28.

The FTDF claim, in the amount of $7 million, is assigned to DTDF until DTDF equity holders have received 85% on their "claims". It appears that the state of the DTDF assets is such that it is highly unlikely that DTDF will ultimately distribute 85% to the members of the Fund, effectively leaving the allowed FTDF claim as being paid to DTDF.

275359.2

**USACM Liquidating Trust**
**October 2010**

Therefore, the effective DTDF unsecured claim is $135 million (the $128 million allowed claim plus the $7 million FTDF allowed claim).

The result of the Trust's efforts to resolve disputed claims has reduced the amount of the still unresolved claims to approximately $190 million.

### C.    Interim Distribution Motion

The Trust filed its Motion for an order authorizing the Trust's initial interim distribution to allowed beneficiaries,[36] which motion was heard by the Court on October 19, 2009. Silar Advisors LP and Asset Resolution LLC filed an objection to the motion and in conjunction therewith filed a complaint No. 09-01284-lbr in October 2009 against USACM and the Trust in an effort to block the release of the proceeds of the recovery efforts by the Trust.[37] The Court overruled Silar's objection and authorized the distribution. The Trust released the interim distribution in November 2009. That distribution equaled 4.92% of the allowed creditor claims. Reserves for unresolved and/or disputed claims have been established pursuant to the Trust's motion and the Court Order approving the Motion. The Trust continues to receive and answer inquiries from lenders and creditors on the distribution.

### D.    PBGC

The PBGC claims against USACM were resolved, as described in prior reports by an Order of the Court entered on August 6, 2008. All sums reserved for the PBGC claims have either been distributed to the PBGC or the Trust, as appropriate.

The PBGC filed substantially similar claims against USAIP and its affiliates. Those entities have hired the Trust's counsel responsible for resolving the PBGC claims as special counsel. USAIP filed a motion to approve a settlement of the PBGC claim, which was approved by the court on February 8, 2010.

### E.    Contact Information

For an inquiry on your proof of claim, or on an objection to a proof of claim, please contact:

---

[36] A copy of the motion is posted on the Trust's website.

[37] As discussed below, the complaint was dismissed in May 2010.

**USACM Liquidating Trust**
**October 2010**

Sierra Consulting Group
Brant Fylling
E-mail:  USACMTRUST@sierracgllc.com
Telephone 602-424-7020

 For additional information, please refer to the website of the USACM Liquidating Trust:
http://usacmcucc.bmcgroup.com.  You may send an e-mail on a general inquiry to:
USAcommittee@lrlaw.com.

### F.      Objection Deadline

The Trust continued to investigate possible objections to proofs of claim.  The Trust
sought and obtained an extension of the deadline to file objections to proofs of claim
through October 8, 2010.  The Trust filed a motion for an additional extension of that
deadline, and obtained a new deadline of February 7, 2011.

As noted above, the Trust reviewed the thousands of proofs of claim filed with the Court
to determine those those which appeared to be filed by Direct Lenders.  In turn, each Direct
Lender's claim was analyzed to see what direct loan or loans it arose out of.  The Trust's
intention is to take each group of Direct Lender claims on a loan-by-loan basis, determine
if the claims are valid, and in what amount, and then to advise all Direct Lenders who
filed proofs of claim with respect to that loan of the Trust's recommendation.  This
approach is consistent with the alternative dispute resolution mechanism implemented for
Direct Lenders by confirmation of the Plan, which in general requires personal
consultation by the Trust and the affected Direct Lenders who disagree with the Trust's
position, as well as mediation.  Meetings with certain direct lenders who have responded
to the Trust's objections have been scheduled for October and November 2010.

Numerous claimants have asked when the Trust will have concluded its examination of
claims.  In general, the claims will not be resolved until the last direct loan has been paid
or otherwise resolved.  This is because there are proofs of claim filed by Direct Lenders
in all of the loans that USACM serviced.  However, as the pool of unresolved loans
becomes smaller, it may be possible to estimate the claims that might be allowed with
respect to the unresolved loans.  That process will, nevertheless, still take many months.

### G.      Compass v. LPG

As indicated above, the Trust believes that the most efficient way to evaluate unsecured
claims of Direct Lenders is after the applicable direct loan has been resolved, presumably
through collection.  A number of disputes are in litigation among the plaintiffs in lawsuits
pending in the District Court, as well as the Lender Protection Group (the "LPG") and
other (collectively referred to as "LPG") and Compass USA SPE, LLC, Compass
Partners, LLC, and Compass Financial Partners, LLC ("Compass"), which have
expanded to include certain named Direct Lenders and Compass' officers and lender.

Asset Resolution, LLC and Silar Advisors, LP and Silar Special Opportunities, LP have succeeded to the economic interests of Compass, with disputes over the validity and effect of that transfer.  That litigation is generally managed by the United States District Court for the District of Nevada under Case No. 2:07-cv-00892-RCJ-GWF.  The Trust is not a party to that litigation.  Nevertheless, the litigation does adversely impact the Trust's ability to evaluate claims.

Silar and now Asset Resolution through its trustee are parties to additional litigation with direct lenders, including case no. 2:09-cv-01832-RCJ-GWF.  Judge Robert C. Jones ordered the action to be dismissed in favor of a counterclaim that may be filed in Case No. 2:07-cv-00892-RCJ-GWF.  In connection with the litigation, Asset Resolution requested documents from the Trust, which responded to counsel with objections and concerns.

The litigation was scheduled for a jury trial in May 2010, and that trial date was postponed to November 2010, although appeals are pending from several of the district court's orders.

### H.    Asset Resolution LLC

As noted above, Compass' lender Silar Advisors LP and Asset Resolution LLC filed suit against the Trust seeking to block the proposed distribution to allowed beneficiaries of the Trust.  That complaint No. 09-01284-lbr alleged in part that the direct lender litigation in the District Court has denied Compass (and Silar) "the benefit of the bargain" Compass sought when Compass purchased USACM and the FTDF interests in the loan portfolio, along with servicing rights, default interest and late fees.  Silar dismissed the complaint leaving Asset Resolution as the sole plaintiff.  The Trust believed the complaint lacked any merit.  The bankruptcy court denied Asset Resolution's request to delay of the proposed distribution to creditors with allowed claims at the October 19, 2009 hearing.  USACM (the former Debtor) filed a motion to dismiss the matter, which motion was to be heard on February 5, 2010.  The Trust filed a motion for summary judgment in the matter, which motion was fully briefed and ready for oral argument scheduled on April 1, 2010.  Due to the Asset Resolution bankruptcy described below, both motions were continued by the bankruptcy court until May 11, 2010 for a status hearing.  The trustee for Asset Resolution LLC sought a continuance but did not take a position in opposition to the motions.  At that hearing, confirmed thereafter with written orders, the bankruptcy court granted both the Trust's motion for summary judgment and USACM's motion to dismiss the complaint.  No appeal was taken.

Additionally, Asset Resolution LLC filed a voluntary chapter 11 bankruptcy case No. 09-16142 (AJG) in the United States Bankruptcy Court for the Southern District of New York on October 14, 2009.  Additional cases were filed by entities that had been created

**USACM Liquidating Trust**
**October 2010**

to hold assets after foreclosure of direct loans.[38]  The Trust joined in a motion to transfer the venue of the Asset Resolution LLC bankruptcy case to the District of Nevada, a motion that was supported by a separate filing by the Office of the United States Trustee. The case was ordered transferred to Nevada on November 24, 2009, and became case No. 09-32824-BAM.  Judge Markell heard certain interim or "first day" matters and entered interim orders.

Direct lenders sought relief from the stay to prosecute actions pending in the district court and sought withdrawal of the reference to the district court.  A request to convert the case to chapter 7 (liquidation) or alternative request for appointment of a trustee was also filed.  After a January 19, 2010 hearing, the United States District Court withdrew the reference of the Asset Resolution LLC case to the district court, under Judge Jones. Judge Jones converted the case to a case under Chapter 7 retroactively to January 19, 2010 and William A. Leonard, Jr. was appointed trustee.  The interim chapter 11 order for debtor in possession financing was revoked.  Notice of a creditors meeting was served and notice of a June 7, 2010 claims bar date provided.  These orders and others are on appeal to the United States Court of Appeals for the Ninth Circuit.

On December 31, 2009, Asset Resolution LLC filed suit in Nevada, case No. 09-01410-bam, against hundreds of direct lenders seeking a declaratory judgment of Asset Resolution LLC's rights as co-owner of loans and successor to USACM as loan servicer under a number of loans.  The district court has since terminated both Compass and Asset Resolution LLC as the servicer on the acquired loans pursuant to its Order entered January 21, 2010.  As to the 14 SPE debtors and the remaining loans, lenders were free to identify a replacement loan servicer by 51% vote.  Funds held by Asset Resolution LLC from disposition of loans were to be turned over to the trustee.  Appeals to the Ninth Circuit from these orders are pending.  The district court supervises the transition of loans to new servicers as well as efforts by the trustee for Asset Resolution LLC to liquidate its interests in loans and properties.  Trial in this suit is scheduled for November 2010.

The Trust continues to monitor these proceedings so as to be current with the status of the proceedings and any impact on the remaining outstanding loans where direct lenders that filed proofs of claim in the USACM bankruptcy may have an interest.

---

[38] Ocean Atlantic SPE LLC; CFP Anchor B SPE LLC; CFP Cornman Toltec SPE LLC; CFP Gess SPE LLC; Bundy 2.5 Million SPE LLC; Bundy Five Million SPE LLC; Fiesta Stoneridge LLC; Fox Hills SPE LLC; CFP Gramercy SPE LLC; Huntsville SPE LLC; Lake Helen Partners SPE LLC; 10 90 SPE LLC; Shamrock SPE LLC; and HFAH Monaco SPE LLC.

275359.2

**USACM Liquidating Trust**
**October 2010**

### I.    Disbursing Agent Agreement

The Trust and USA Capital First Trust Deed Fund, LLC ("FTDF") entered into a Stipulation Concerning Amended Disbursing Agent Agreement.  The Court approved the parties' stipulation on June 29, 2007, so that the Trust will act as the disbursing agent for equity holders of FTDF if there is a distribution on the $7 million FTDF unsecured claim, now that entity is liquidated.  The bankruptcy court entered a final decree and order closing the FTDF case on October 12, 2007.  The Trust was advised that the final distribution to the members of the Fund, along with their respective K-1's for 2006, was released to the members.  In the transmittal to the Fund members, members were advised to address all further inquiries about the status of the Fund to the Trust.  The Trust is attempting to answer these questions as best it can in light of not having prepared the distribution or K-1 information returns.

The Trust is the distribution agent for any additional distributions owed to members of FTDF.  FTDF investors periodically request information from the Trust, which the Trust provides to the extent it has the information in its files as a result of turnover from FTDF, including the final FTDF tax return.

### J.    General Inquiries

The Trust periodically receives inquiry from lien creditors, borrowers or lenders on loans to be serviced by Compass or its successors.  The Trust, as a courtesy, makes every effort to direct the inquiry to the appropriate person handling servicing of the loan.  Similarly, the Trust periodically receives subpoenas, requests for production and other formal and informal discovery requests for review of the business records of USACM, some of which the Trust holds as successor to USACM.  Again, the Trust cooperates with those discovery requests, at the requesting party's reasonable expense.

During the quarter, the Trust's counsel worked with the bankruptcy court staff to identify and resolve a variety of motions and adversary proceedings that had been filed during the course of the USACM jointly administered bankruptcy cases.

## IX.    LOAN SERVICING ISSUES

### A.    Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust were as follows as of December 22, 2008 (the foreclosure date):

**USACM Liquidating Trust**
**October 2010**

|  | Placer 1 | Placer 2 |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | 15,183,487.95 | 4,134,138.22 |
| Default Interest | 9,111,393.85 | 1,035,761.89 |
| Late Fees | 2,334,174.40 | 531,706.91 |
| **Total** | $58,129,056.20 | $12,201,607.02 |

The Trust, as servicer, reports monthly to the Direct Lenders. Those reports are posted on the Trust's website. As previously reported in these reports, the Trust filed a complaint and a motion for appointment of a receiver for the Placer 1 Loan in the United States District Court for the District of Nevada on September 24, 2008 and assigned case no. 2:08-cv-1276. The case was assigned to United States District Judge Kent J. Dawson and United States Magistrate Judge Robert L. Johnston.

The receivership motion was heard by the Honorable Kent J. Dawson on December 3, 2008. At the hearing, Judge Dawson directed the appointment of Elli Mills as Receiver. The Trust thereafter worked with counsel for interested parties and Mr. Mills on entry of an appropriate order directing the appointment of a receiver. The District Court's order appointing the receiver was entered on December 16, 2008.

The Receiver subsequently investigated and made the decision to conclude the foreclosure sale, which had been continued to December 22, 2008. The Receiver directed a credit bid of $8,404,030 at the December 22, 2008 foreclosure sale.

Prior to the appointment of a receiver, the Trust continued to work with interested Direct Lenders on issues concerning the Loan and the Property, including whether to take an appeal of the valuation of the Property for real estate tax purposes.

The Trust continues to work with the Placer 1 Receiver both with respect to the Trust's claims as servicer as well as in attempting to assist the receiver in the performance of his duties.

One effect of the foreclosure was to extinguish the lien on the Property securing repayment of the Placer 2 Note. Accordingly, the sole potential source of recovery for the Placer 2 Lenders, in addition to any proofs of claim they may filed in the USACM bankruptcy case, is the proof of claim filed by the Trust as servicer on the personal guaranties of Thomas Hantges and Joseph Milanowski.

The litigation filed by the Trust concerning the Placer loan, in which the Receiver was obtained, remains pending before the District Court. The deadline to serve unserved defendants was continued to May 22, 2009. Because of the foreclosure, the Trust sought consent to dismissal of the Placer 2 Lenders as parties to the litigation. The Receiver became responsible to deal with the Placer Vineyards Development Group, LLC with respect to development of the Property. The Trust ceased reporting to the Lenders with

USACM Liquidating Trust
October 2010

respect to the Placer 1 and Placer 2 Loans after December, 2008, because the Placer 2 Loan no longer had collateral and the Placer 1 Loan was in the control of the Receiver, who is providing periodic reports. The Receiver's periodic reports are posted by the Trust on the Trust's website and there fore available to all of the Placer 1 (and Placer 2) Lenders.

The Receiver sought authority from the receivership court to borrow up to $250,000 in interim financing to cover the expenses of the receivership. The Trust considered offering the funding in order to save expense for the receivership and to prevent concerns over having another lender looking to the property for repayment of a loan at a time when the Trust had made advances as servicer for property taxes and asserted a claim for unpaid servicing fees. Ultimately, although the receivership court approved the loan, the Trust Committee did not approve the Trust's service as interim lender. Accordingly, the Trustee did agree to extend $100,000 of interim financing to the Receiver on a bridge basis while the Receiver sought more permanent financing. The Receiver sought authority for a replacement loan and in September 2009 repaid the advance by the Trust, with interest. The Receiver recently sought approval to borrow additional monies from the replacement lender to the Trust. The Trust is monitoring those proceedings to protect the status of the Servicer Advance in 2007 described above.

The Trust has provided copies of the Receiver's monthly reports on the Trust's website as a courtesy to the Receiver and a convenience to the Placer lenders. There is a separate link to the Placer filings on the Trust's website. Those reports indicate that the Receiver obtained authority to list the Placer property for sale with a broker.

**B.    Compass Trust Loan Servicing – Collection of Pre-Paid Interest**

The Trust was entitled to collect sums from escrows established in the sale to Compass, including $157,704 on June 15, 2007. Further, Compass collected from Direct Lenders and was required to remit Pre-Paid Interest to the Trust pursuant to the Plan, including $156,471.33 on May 11, 2007. The Trust was aware of collections from Borrowers on several notes since Compass last remitted recouped prepaid interest to the Trust. The Trust requested an accounting of the collected monies from Compass and to date continues to await that accounting, or transmittal of any additional recouped monies. As indicated above, the Trust has sued Compass to receive the monies that were to be collected and remitted pursuant to the terms of the confirmed Plan.

In the lawsuit filed by the Trust against Compass USA SPE, LLC, Compass Partners, LLC Adv. No. 08-01066-lbr, concerning disputes over certain escrows, Compass' accounting and failure to collect and remit pre-paid interest, the settlement with Silar resolved certain disputes so that Pre-Paid Interest will be netted by Compass, Silar and their successors on a Lender by Lender basis from an agreed schedule. This agreement was approved by the bankruptcy court's December 23, 2008 order.

27

275359.2

**USACM Liquidating Trust**
**October 2010**

Debt Acquisition Company of America V, LLC ("DACA"), through its affiliate, Pacific Receivables LLC, made an offer to the Trust to purchase the uncollected balance of Pre-Paid Interest liability owed to the Trust by Direct Lenders.  The Trust had earlier had informal discussions with Silar and other parties potentially interested in acquiring the right to collect Pre-Paid Interest.  An agreement in principle was reached with DACA for the transfer of the right to collect Pre-Paid Interest from Lenders, subject to specific terms and limitations.  DACA has requested that the Agreement be approved by the Bankruptcy Court.  In January, the Trustee concluded the negotiations with DACA to approve the purchase by DACA of the uncollected causes of action for prepaid interest as well as for DACA to dismiss its appeal, then pending in the United States Court of Appeals for the Ninth Circuit, of the order confirming the USACM Plan of Reorganization.  The motion to approve settlement was filed on January 27, 2009.  After a hearing on February 20, 2009, and after incorporating comments from interested parties, and considering objections, the Court entered an order approving the settlement and purchase.  Thereafter, the Trust and DACA discovered an error in the accounting of uncollected prepaid interest, and renegotiated the purchase price, which was paid by DACA.  DACA's appeal of the confirmation order was dismissed on stipulation.

As a result of these events, DACA was substituted as the plaintiff in the Adv. No. 08-01066-lbr.  The Trust's interest in the lawsuit is limited to an amount otherwise payable to Compass now held by the Trust that is the subject of DACA's complaint.

## X.    TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of August 31, 2010, has been provided to the Trust Committee.

275359.2