```
Arthur I. Kriss
2398 West 1050 North
Hurricane, UT 84737
(435) 635-5466

Appearing Pro Se
```

RECEIVED
BANKRUPTCY COURT
A. SCHOTT, CLERK

# UNITED STATE BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| vs. | Case No.: BK-S-06-10725-lbr |
| USA Commercial Mortgage Company, | Chapter 11 |
| Debtor | RESPONSE TO SECOND OMBNIBUS OBJECTION TO PROOF OF CLAIMS BASED ENTIRELY UPON INVESTMENT IN THE TAPIA RANCH LOAN |
| | Date of Hearing July 26, 2011 |
| | Time of Hearing: 1:30 PM |

1. Arthur I. Kriss, Claimant, hereby files this response to the USACM Liquidating Trust Second Omnibus objection to Proof of Claims based entirely upon investments in the Tapia Ranch Loan. I further acknowledge the Trustees Statement of Background, Memorandum of Points and Authorities, and their discussion of the USACM Bankruptcy as generally valid (Doc 8523). I **OBJECT** to the conclusion drawn at Page 5, Lines 9 through 11 (8523), "During this bankruptcy case through the transfer of servicing to compass, USACM treated the direct Lenders with respect to any interim payments by the borrower in accordance with this Court's orders". It may be true that USA complied with the Court's Orders. However and more specifically, **USACM treated the Direct Lenders as non-entities in terms of compliance with the Loan Servicing Agreement (LSA)**. There was essentially no formal reporting to the Direct

- 1 -

1 Lenders as required by the LSA (Exhibit 1), Recitals C. 3. (d) "Provide
2 lender with regular statements regarding loan collections, but in no event
3 less frequently than quarterly." During the period beginning with the
4 bankruptcy petition until MIFM had completed what was reported as a complete
5 audit of accounting, little to no reporting was provided by either USACM or
6 MIFM. No reliable information was available as to loan status (performing or
7 in default) because USA appears to have been in violation of NRS-645B.175 and
8 NRS-645B.250.

10 **2. Re: Second omnibus objection, Page 7 (8523). "The Direct Lenders fail to**
11 **state a claim because USA does not appear to have breached the loan servicing**
12 **agreement with respect to collection of the Tapia Ranch Loan".**
13 **Response: USA / MIFM Breached the Loan Servicing Agreement:** Notwithstanding
14 the foregoing, neither did USACM or MIFM take any actions to comply with the
15 provisions of the LSA, Recitals C. 2. (b) and (c) (i) and (ii).
16    (1) USA / MIFM failed to proceed diligently to collect all payments
17        due under the terms of the note.
18    (2) USA / MIFM failed to take the steps necessary to protect the
19        Lenders rights under the terms of the Note; i.e., delivering
20        notice of default, commencing and pursuing foreclosure procedures,
21        obtaining legal representation for lenders in litigation, pursuing
22        the Guaranty of the Borrower, negotiation of forbearance or other
23        settlement terms.
24    (3) USA / MIFM in essence did nothing from the bankruptcy until the
25        sale to Compass was confirmed to resolve the loan.

(4) USA / MIFM / Mr. Allison had an absolute responsibility to pursue all legal options to protect the lenders interest in the note. His appointment by the Court reads "Allison shall have complete and exclusive charge of the management and operation of the business".

(5) The failure of USA / MIFM to act on the provisions / contractual requirements of the LSA to protect the lenders interest extended from the pre-petition period through the confirmation of sale to Compass; and I contend can only be attributed to deliberate negligence on the part of USA / MIFM, and showed complete disdain of the Direct lenders and their rights under the terms of the LSA.

(6) As a result of their absence of action in pursuing the various legal options contained in the LSA upon default, USA / MIFM is directly responsible for the decrease in value of the collateral.

3. Re: (8523) **"The direct Lenders took a known risk by investing is a promissory note secured by a lien on real property."**

**Response:** USACM was a well known Mortgage Broker with impeccable credentials in the brokerage and servicing business. They were properly licensed and regulated in the State of Nevada. Therefore, I believed the business to be in good standing when I made the investment. I made the investment on January 27, 2005, and received regular interest payments through February of 2006, and an irregular interest payment in March of 2006. There was no indication of risk and I believed the loan to be properly secured until the bankruptcy petition of USACM was filed on March 13, 2006. I cannot pin point the date when the borrower defaulted, but believe it was

1  about the time of the bankruptcy. Further, just because one takes a risk in
2  making an investment (most assume some risk with all investments) is no
3  reason to assume there should be no recourse for violations of Nevada
4  Statutes, Breach of Contract (LSA), Breach of fiduciary responsibility. I
5  contend that the loss of value in the collateral is largely attributable to
6  the actions/inactions of USA / MIFM as the bankruptcy was being prepared, and
7  post petition breaches.

9      4. Re: (8523) The **assertion that "USACM did not guarantee repayment"**.
10     **Response:** Of course, USACM did not guarantee repayment of the note. They
11 rarely did except in circumstances where they had an interest in the
12 collateral. It would be very unusual (foolish even) for anyone to guarantee
13 payment on a note in which they have no financial interest.
14     5. Re: **"Declarations of Geoffrey Berman (8529) and Edward M. Burr**
15        **(8530) in support of omnibus objections to proofs of claim.**
16 **Response:** Both Mr Berman and Mr. Burr appear to correctly state the facts
17 insofar as they go. However, both fail to make a case of any kind as to
18 why the claim should be rejected. Under the Bankruptcy Code, any Claim
19 for which a proof of claim has been filed will be allowed unless a party
20 in interest objects. 11 U.S.C.- 502(b) "A properly filed proof of claim
21 is presumed valid under Bankruptcy Rule 3001 (f)". Neither Mr. Berman nor
22 Mr. Burr's declarations object to the claim in a substantive way.
23 Further, Mr. Burr does not appear to be a "party in interest", except as
24 an employee of Mr. Berman; who likewise is probably not a "party in
25 interest", except as in his position as Trustee.

- 4

**Summary:** The bankruptcy of USACM came about as a result of fraud, self-interest insider actions, breach of contract, diversion of funds, and phony appraisals, along with many violations of State and Federal law relating to real estate brokerage and loan servicing. At least one of the guilty is serving time for his actions. But the investors have not been and never will be made whole. After more than 5 years of litigation, the bulk of the funds in the estate (more than $20,000,000.00) have been consumed by the "professionals", and the last to be paid "the victims/investors" will receive the dregs. Therefore, based upon the foregoing pleadings, I beg the court to approve the claim as filed, and provide such other and further relief as is just and proper.

By: *[signature]*

Arthur I. Kriss, Pro se

2398 West 1050 North

Hurricane, UT 84737

(435) 635-5466

Copies to: Lewis and Roca LLP

Mr. John Hinderaker & Robert M. Charles, Jr.

3993 Howard Hughes Parkway, Suite 600

Las Vegas, NV 89169

Mailed by prepaid 1st class US Mail

Client ID 148
Account ID 2148

Exhibit 1

# LOAN SERVICING AGREEMENT

This Loan Servicing Agreement ("Agreement") is made as of the ___3___ day of ___April___, 2003, between USA Commercial Mortgage Company ("USA") and ___First Savings Bank c/f Arthur I. Kriss, IRA___ ("Lender").

## RECITALS

A. USA is a mortgage broker and loan servicer in Clark County, Nevada.

B. Lender lends, or wishes to lend, money to various borrowers (the term "Borrower" includes single and married persons, corporations, trusts, partnerships and all other legal entities) from time to time, which loans are arranged by USA and are secured by interests in real and/or personal property.

C. Lender wishes to retain the services of USA in connection with making and servicing a
loan or loans (Loan" or "Loans" as the context requires), including all Loans heretofore or hereafter placed by Lender through USA, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Services in Connection with Arranging the Loans</u>. USA will perform the following services in connection with arranging each Loan:

    (a) Obtain a promissory note or notes secured by the trust deed referred to in Section 1(b) below, executed by Borrower in a form customarily used by USA and approved by USA's counsel.

    (b) Obtain a deed of trust, assignment of rents and security agreement executed by Borrower in form customarily used by USA and approved by USA's counsel, and cause the same to be properly recorded.

    (c) Obtain one or more personal or corporate guaranties, if applicable and as determined by USA to be necessary, executed by such guarantors, as USA shall deem appropriate, in form customarily used by USA.

    (d) If USA deems it appropriate or necessary, obtain, at Borrower's expense, an appraisal of the property to be encumbered, prepared and executed by an appraiser reasonably satisfactory to USA.

(e) Obtain from a reputable title insurance company, at Borrower's expense, a fully-paid ALTA lender's policy of title insurance, showing Lender as an insured, in an amount at least equal to the initial principal amount of the note and showing as exceptions only those items approved by USA and its counsel.

(f) Cause the Borrower to obtain, where applicable, casualty insurance policies in amounts at least equal to the principal amount of the note or the full insurable value of the improvements on the encumbered real property, whichever is less, containing a mortgage or loss payee clause naming Lender, or USA (as agent for Lender), as an additional insured or loss payee.

(g) Obtain from the Borrower and each guarantor such recent financial statements and information as USA shall deem appropriate.

(h) Obtain, with respect to any and all encumbrances of record to which Lender's deed of trust will be subject, documentation verifying the principal balance thereof within a reasonable time prior to the making of the Loan and specifying any then existing defaults thereunder.

(i) Obtain such other documents in connection with the Loan, as USA may deem appropriate in order to protect the Lender's interest.

(j) All documents which USA obtains from borrower in connection with arranging or servicing any Loan, so long as such Loan is outstanding, shall be kept on file in USA's corporate office and be available to Lender upon request. Notwithstanding the foregoing, USA shall have no obligation or responsibility to obtain any original documents in connection with any Loan serviced by USA, but not arranged or originated by USA.

(k) Prepare and deliver to escrow closing instructions to effectuate the Loan closing in accordance with the Loan Agreement and the Fee Agreement.

2. <u>Services of USA in Connection with Servicing the Loans</u>. Subject to and in accordance with the terms and conditions set forth in this Agreement, and all applicable laws, Lender instructs and authorizes USA to, and USA will perform the following services in connection with servicing each of the Loans:

(a) Verify, where applicable, that the property encumbered by Lender's deed of trust is insured (at the Borrower's expense) by a sufficient casualty insurance policy and that Borrower has sufficient liability insurance coverage. USA will hold for the Lender's account such policies and renewals thereof.

7

(b) Keep appropriate accounting records on each note and the sums collected thereon, which records will reflect the amounts collected as to principal, interest and late charges, and, if applicable, insurance, taxes and other specified amounts. Those records will be available for review by the Lender during regular business hours at USA's corporate office.

(c) Until the total amount due under each note is paid in full:

(i) Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

(ii) In the event the Borrower fails to make any payment to USA as required by the terms of the note, USA will take steps to collect the payment including but not limited to delivering default notices, commencing and pursuing foreclosure procedures, and obtaining representation for Lender in litigation and bankruptcy proceedings as deemed necessary or appropriate by USA in its business judgment to fully protect the interests of the Lender, and of all Lenders in the loan.

(iii) In its sole discretion, USA may pay off any Lender at any time by paying the then outstanding balance of Lender's interest in the principal of the Loan, plus all accrued interest and any prepayment penalty or fee, if applicable. Any Lender so paid off shall concurrently execute and deliver therewith to USA an assignment, in a form acceptable to USA, of all of such Lender's right, title, and interest in the Loan (including all documents evidencing the Loan) and in the deed of trust securing the Loan.

(iv) In its sole discretion, USA may waive late payment charges, assumption fees, charges for returned checks due to insufficient funds, or other fees which may be collected in the ordinary course of servicing the Loans.

(d) Provide the Lender with regular statements regarding loan collections, but in no event less frequently than quarterly.

(e) Without limiting the generality of anything contained herein, Lender hereby authorizes and empowers USA, on Lender's behalf, to: (1) execute and

3

deliver demands for payoff and beneficiary's / lender's statements of condition and the like; (2) execute and deliver any and all instruments if satisfaction or cancellation, or of partial or full release, discharge, or reconveyance, or authorizations in connection therewith, with respect to any Loans paid in full and with respect to the related real or personal property securing such Loans; (3) execute and deliver any and all other documents with respect to any Loans that are customary and consistent with loan servicing practices pertaining to such loans; (4) consent to modifications of the Loans if the effect of any such modification will not materially or adversely affect the security provided by the real or personal property in connection therewith; (5) institute foreclosure proceedings (judicial or non-judicial), obtain a deed-in-lieu thereof, engage in settlement discussions, and enter into forbearance and other settlement-related agreements (which agreements may contain provisions that release or waive claims against a Borrower or Guarantor); and (6) take title in the name of Lender (in proportion to its interest in the Loan) to any real property upon a foreclosure or delivery of a deed-in-lieu thereof. [REDACTED], change the outstanding principal amount, or extend the maturity date, without Lender's prior consent; provided, however, if Lender fails to grant or deny its consent within three (3) business days after notice from USA, Lender shall be deemed to have conclusively given its consent.

3. **Rights of Lender if USA Fails to Act.** Pursuant to NAC 645B.073, in the event of default, foreclosure, or other matters that require action, if for any reason USA fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of all such holders of beneficial interest of record. These actions may include, but are not limited to:

(a) the designation of the mortgage broker, servicing agent or other person to act on behalf of the holders of the beneficial interests in the loan; and

(b) the sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure.

4. **Legal Proceedings.** USA will assist the Lender in any necessary foreclosure proceedings to protect the Lender's interest in the note and deed of trust. Where necessary, in USA's business judgment, USA may retain attorneys on Lender's behalf. Any legal proceeding instituted by USA pursuant to this Agreement may be pursued in USA's name only or as agent for Lender. Upon demand by USA, Lender agrees to promptly pay, either in advance or to reimburse USA, for its pro rata portion of the out-of-pocket expenses incurred, including attorney's fees, trustee's fees and foreclosure costs. In the event that Lender fails to pay such sums to USA upon demand or request thereof, or if USA elects to advance such sums, USA may, in its discretion, advance such fees, including trustee's fees, attorney's fees, and costs of foreclosure;

provided, however, that any fees advanced by USA shall be paid back from the proceeds of the foreclosure (whether by reinstatement or sale), or from any other monies collected with respect to such Loan, before any payments are made to Lender. In the event of any litigation concerning the Loan, Lender hereby appoints USA as its agent to accept service of any summons and complaint, naming Lender as a party.

5. **Compensation to USA for Loan Servicing.** Lender authorizes USA to retain monthly, as compensation for services performed hereunder, (a) one-twelfth (1/12th) of its annual servicing fee, which shall not exceed one percent (1%) per annum of the maximum principal amount of each of the Loans, (b) ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ withstanding the foregoing, it is ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ the bulk of its revenues from charging loan fees ("points") to the Borrower. Certain Borrowers, however, may prefer to pay a higher rate of interest in exchange for a reduction in loan fees payable in advance to USA, the higher interest rate comprising a deferred loan fee. USA will notify Lender when such a case arises, and advise Lender of what portion of the interest is payable to USA as a deferred loan fee.

Should Lender desire to sell all or any part of its interest in the note and deed of trust, USA will assist Lender in finding potential buyers and completing the necessary documentation for the transaction. A fee of 5% of the remaining balance of Lender's undivided interest in the note amount will be deducted from the selling price and paid to USA on all such assignments for which USA locates the Assignee.

In the event an extension of a Loan is negotiated, USA shall be entitled to charge a fee therefor from the Borrower pursuant any separate fee agreement between USA and the Borrower.

6. **USA's Right to Delegate.** Notwithstanding anything contained herein, USA may in its sole discretion delegate specific loan arranging and servicing obligations to credit bureaus, real estate tax service companies, real estate brokers or agents, appraisers, attorneys, trustees, or others, provided that USA shall remain responsible for all action taken or not taken by such companies, agents, representatives, and others throughout the term of this Agreement.

7. **No Legal Advice.** Lender acknowledges that USA will not act as Lender's attorney or provide legal advice to Lender, and that Lender is encouraged to seek independent counsel in connection with any questions Lender may have concerning this agreement, any Loan, USA's form loan documents, or any other matter.

8. **Termination.** Lender may, by 30 days written notice to USA, terminate this agreement, and
the power of attorney granted, if one is granted, under Section 9 of this Agreement, if USA fails to perform its obligations hereunder.

9. **Lender's Registration.** Lender(s) name as listed in the first paragraph of this Agreement is the exact form for registration of Lender's interest and for reference to Lender in the Loan Documents.

10. **Integration Clause.** This Agreement contains the entire agreement between the parties hereto and cannot be modified except by a written amendment signed by both parties. The invalidity of any portion of this agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until Lender's interest in all notes and deeds of trust with respect to Loans arranged and/or serviced by USA is completely liquidated (unless sooner terminated in accordance with the terms hereof).

11. **Limited Power of Attorney.** With respect to each loan, Lender hereby agrees that USA shall have full power and authority, and Lender hereby appoints USA as its true and lawful attorney-in-fact to (a) hold the original note(s), and (b) to do all things and take all actions on behalf of Lender which are necessary or convenient to effectuate this Agreement and its intent and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan. Upon USA's request, Lender hereby agrees to execute and deliver, in the presence of a notary public, a "Declaration of Agency and Limited Power of Attorney", in a form consistent with Chapter 645B of the Nevada Revised Statutes, pursuant to which Lender shall further evidence the appointment of USA as Lender's true and lawful attorney-in-fact to undertake the duties of USA hereunder. No one shall be required to look beyond such Declaration of Agency and Limited Power of Attorney for evidence of USA's authority hereunder. All Declarations of Agency and Limited Powers of Attorney may include the language: This document may be executed with counterpart signature pages, and the document with all counterpart signature pages shall constitute one and the same instrument.

12. **Notices.** All notices, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) when personally delivered, or (ii) on receipt, when deposited with a recognized overnight courier service such as Federal Express or DHL, or (iii) three (3) business days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:

If to USA:   USA Commercial Mortgage Company
             4484 S. Pecos Road
             Las Vegas, Nevada 89121-5030
             Attention:

If to Lender:


             Attention:

6

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

13. **Governing Law.** This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws,

14. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

15. **Attorney's Fees.** In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the party against whom judgment is rendered in such action shall be liable to the other for reimbursement of its costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal,

16. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

17. **Headings.** Sections headings used in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement.

18. **Authority.** Each party represents and warrants to the other party that it is duly authorized to execute, deliver and perform this Agreement.

IN WITNESS WHEREOF, the parties hereto have signed, sealed, acknowledged and delivered this instrument the day and year first above written.

LENDER: First Savings Bank C/F Arthur I. Kriss, IRA

By: _Arthur J. Kriss_
Name: Arthur I. Kriss
Title:

By: _[signature] FSB C/F Arthur Kriss IRA_
Name: First Savings Bank
Title:

USA COMMERCIAL MORTGAGE COMPANY:

By: _[signature]_
Joseph D. Milanowski, President